#208

LEGAL DESCRIPTION
OF
SHOPPING CENTER

Those certain pieces, parcels or tracts of land situate, lying
and being in the City of West Palm Beach, County of Palm Beach
and State of Florida, more particularly described as follows:

Lots 3, 4 and 10, ADAMS SUBDIVISION, according to the Plat
thereof, as recorded in Plat Book 20, page 23, Public Records,
Palm Beach County, Florida.

EXCEPTING, HOWEVER, the North 17 feet of said Lots
3 and 10 for 45th Street right-of-way;

ALSO, EXCEPTING the South 30 feet of Lots 4 and 10
for a drainage right-of-way;

ALSO, EXCEPTING the East 3.0 feet of Lots 3 and 4
for Military Trail right-of-way.

Containing 16.85 acres, more or less.

**EXHIBIT A-2**
To Second Asset Purchase Agreement

### DESCRIPTION OF LEASES AND RELATED LAND

**WINN-DIXIE STORE #211**
1885 N, Pine Island Road, Plantation, Florida

**Lease:**    Lease dated July 27, 1984, between Plantation Square Associates, Ltd., a Florida limited partnership, by Harold S. Wenal and Zaremba Plantation Co., its sole general partners, as Landlord, and Winn-Dixie Stores, Inc. as Tenant

As evidenced by Short Form Lease dated July 27, 1984, recorded in Official Records Book 12255, page 849, Broward County, Florida

**Amendments:**
First Amendment to Lease dated January 5, 1985, between Landlord and Tenant

**Premises:**    That certain store building and related improvements located at 1885 N. Pine Island Road, Plantation, Broward County, Florida

**Legal Description:**    The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

**Sublease(s):**

None

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
BGFUAXN4183.1

*211*

LEGAL DESCRIPTION
OF
SHOPPING CENTER

That certain piece, parcel or tract of land situate, lying
and being in the City of Plantation, County of Broward
and State of Florida, more particularly described as follows:

Parcel 254 of Jacaranda Parcel 254 according to
the Plat thereof recorded in Plat Book 119, page
15, of the Public Records of Broward County,
Florida.

**EXHIBIT A-2**
**To Second Asset Purchase Agreement**

<u>**DESCRIPTION OF LEASES AND RELATED LAND**</u>

**WINN-DIXIE STORE #339**
**6431 Stirling Road, Davie, Florida**

<u>Lease</u>:      Lease dated October 17, 1977, between Louis A. Padula, as Trustee, as
           Landlord, and Winn-Dixie Stores, Inc. as Tenant

           As evidenced by Short Form Lease dated October 19, 1977, recorded in Book
           7740, page 174, public records of Broward County, Florida

<u>Amendments</u>:

           Assignment of Leases dated January 7, 1978 between Louis A. Padula and
           P&L Investments, as Assignor, and Stanley A. Cohen, Trustee, as Assignee

           First Amendment to Lease dated July 6, 1978, between City National Bank of
           Miami, as Trustee, as Landlord and Tenant

           Second Amendment to Lease dated June 8, 1979, between Landlord and
           Tenant

           Trustee's Deed dated January 15, 1981, from Landlord to Arolos N.V., a
           Netherlands Antilles corporation

           Third Amendment to Lease dated January 31, 1984, between Arolos N.V., as
           Landlord, and Tenant

           Assignment and Warranty Deed dated March 6, 1984 from Landlord to
           Edward J. Brenner and Audrey A. Brenner

           Fourth Amendment to Lease dated March 26, 1985 between Landlord and
           Tenant

<u>Premises</u>:    That certain store building and related improvements located at 6431 Stirling
           Road, Davie, Broward County, Florida

<u>Legal Description</u>:    The real property as more particularly described as follows:

           SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

           None

Exhibit A-2
Page 3 of 4

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. a/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
SGRJAX84183.1

#339

## LEGAL DESCRIPTION
## OF
## SHOPPING CENTER

That certain piece, parcel or tract of land situate, lying
and being in the City of Davie, County of Broward and
State of Florida, more particularly described as follows:

.The South 220 feet of the East one-half (E 1/2) of
Tract 16; and the East one-half (E 1/2) of Tract 17,
Davie Tract, EVERGLADES LAND SALES CO. SUBDIVISION
of Section 34, Township 50 South, Range 41 East,
according to the plat thereof, as recorded in Plat
Book 2, Page 34, of the Public Records of Dade County,
Florida, all less the West 120 feet thereof.

**EXHIBIT A-2**
To Second Asset Purchase Agreement

DESCRIPTION OF LEASES AND RELATED LAND

WINN-DIXIE STORE #372
15900 West State Road #84, Sunrise, Florida

Lease:          Lease dated January 4, 1984, between Radnor/Higler Partnership, by
                Radnor/Weston Corporation, Radnor/Southeast Corporation and Gerald
                Higler, as sole general partners, as Landlord, and Winn-Dixie Stores, Inc. as
                Tenant

                As evidenced by Short Form Lease dated January 4, 1984, recorded in Book
                11428, page 349, public records of Broward County, Florida

Amendments:
                Supplemental Lease Agreement dated December 13, 1984, between Landlord
                and Tenant

Premises:       That certain store building and related improvements located at 15900 West
                State Road #84, Sunrise, Broward County, Florida

Legal Description:    The real property as more particularly described as follows:

                SEE ATTACHED LEGAL DESCRIPTION

Sublease(s):

                None

Exhibit A-2
Page 4 of 4

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
SGRJAX\84193.1

# 372

## LEGAL DESCRIPTION
## OF
## SHOPPING CENTER

That certain piece, parcel or tract of land, being a portion of Parcel "C", NEW RIVER ESTATES SECTION SIX, according to the plat thereof, as recorded in Plat Book 116, page 37, of the Public Records of Broward County, Florida, more particularly described as follows:

BEGIN at the intersection of the northerly boundary of said Parcel "C" and the East right-of-way line of Weston Road Realignment as shown on said plat; said point being a point on the arc of a non-tangent curve (radial line through said point bears North 28° 46' 48" East); thence southeasterly along the arc of said curve, being concave to the Southwest having a radius of 7,565.44 feet, a delta of 00° 07' 14", an arc distance of 15.92 feet; thence tangent to said curve South 61° 05' 58" East, 1,725.90 feet (the last two (2) courses described being coincident with the northerly boundary of said Parcel "C"); thence South 28° 54' 02" West, 300.00 feet; thence North 61° 05' 58" West, 255.46 feet; thence North 72° 53' 49" West, 380.85 feet; thence South 76° 27' 28" West, 170.00 feet; thence North 83° 52' 56" West, 175.00 feet; thence North 72° 53' 49" West, 231.30 feet to a point on a line 18.70 feet East of and parallel with the westerly boundary of said Parcel "C"; thence North 17° 06' 11" East along said line, 75.00 feet; thence North 72° 53' 49" West along the southerly boundary of said Parcel "C" and the easterly extension thereof, 443.00 feet; thence North 17° 06' 11" East, 150.00 feet; thence North 72° 53' 49" West, 12.00 feet; thence North 17° 06' 11" East, 297.25 feet; thence North 14° 37' 50" East, 195.47 feet to the POINT OF BEGINNING (the last four (4) courses described being coincident with the easterly right-of-way line of Weston Road Realignment as shown on said Plat).

Said lands lying in the City of Sunrise, Broward County, Florida, containing 17.959 acres, more or less.

LESS AND EXCEPT the following two parcels, both being a portion of Parcel "C", NEW RIVER ESTATES SECTION SIX, according to the plat thereof as recorded in Plat Book 116, page 37, of the Public Records of Broward County, Florida, more particularly described as follows:

FIRST PARCEL: BEGIN at the intersection of the South right-of-way line of Interstate 75, State Road 84 and the East right-of-way line of Weston Road Realignment as shown on said plat; said point being a point on the arc of a non-tangent curve (radial line through said point bears North 28° 46' 48" East); thence southeasterly along the said South right-of-way line of Interstate 75, State Road 84 and along the arc of said curve, being concave to the Southwest having a radius of 7,565.44 feet, a delta of 00° 07' 14", an arc distance of 15.92 feet; thence continuing along said South right-of-way line of Interstate 75, State Road 84 and tangent to said curve South 61° 05' 58" East, 166.78 feet; thence leaving said South right-of-way line of Interstate 75 State Road 84, South 17° 06' 11" West, 173.28 feet; thence North 61° 05' 58" West, 175.00 feet to the said East right-of-way line of Weston Road Realignment; thence North 14° 37' 50" East along said East right-of-way line of Weston Road Realignment, 175.00 feet to the POINT OF BEGINNING.

Said lands lying in the City of Sunrise, Broward County, Florida, containing 0.695 acres, more or less.

SECOND PARCEL: COMMENCE at the intersection of the South right-of-way line of Interstate 75, State Road 84 and the East right-of-way line of Weston Road Realignment as shown

# 372

**LEGAL DESCRIPTION OF SHOPPING CENTER - continued**

on said plat; said point being a point on the arc of
a non-tangent curve (radial line through said point
bears North 28° 46' 48" East); thence southeasterly along
the said South right-of-way line of Interstate 75, State
Road 84 and along the arc of said curve, being concave to
the Southwest having a radius of 7,565.44 feet, a delta of
00° 07' 14", an arc distance of 15.92 feet; thence con-
tinuing along said South right-of-way line of Interstate
75, State Road 84 and tangent to said curve South 61° 05'
58" East, 165.78 feet to the POINT OF BEGINNING; thence
continue along said South right-of-way line of Interstate
75, State Road 84 South 61° 05' 58" East, 200.00 feet;
thence leaving said South right-of-way line of Interstate
75, State Road 84 South 17° 06' 11" West, 200.00 feet;
thence North 61° 05' 58" West, 200.00 feet (the last des-
cribed course being parallel with the said South right-of-
way line of Interstate 75, State Road 84); thence North
17° 06' 11" East, 200.00 feet to the POINT OF BEGINNING.

Said lands lying in the City of Sunrise, Broward County,
Florida, containing 0.899 acres, more or less.

TOGETHER WITH an easement in common with others similarly entitled,
over, on and across the following described parcel:

A portion of Parcel "C", NEW RIVER ESTATES SECTION SIX, accord-
ing to the plat thereof, as recorded in Plat Book 116, page 37,
of the Public Records of Broward County, Florida, more particularly
described as follows:

COMMENCE at the Northwest corner of said plat; thence along
the West boundary line of said plat South 14° 37' 50" West,
197.08 feet; thence South 17° 06' 11" West, 447.10 feet;
thence South 72° 53' 49" East, 462.00 feet; thence South
17° 06' 11" West, 75.00 feet; thence South 72° 53' 49" East,
231.30 feet; thence South 83° 52' 56" East, 169.51 feet
to the POINT OF BEGINNING; thence continue South 83° 52'
56" East, 5.49 feet; thence North 76° 27' 28" East, 66.25
feet to a point on the arc of a non-tangent curve (radial
line through said point bears North 39° 23' 03" West);
thence southwesterly along the arc of said curve, being
concave to the Southeast having a radius of 50.00 feet, a
delta of 42° 17' 29", an arc distance of 36.91 feet; thence
tangent to said curve South 08° 19' 28" West, 157.97 feet;
thence southeasterly along the arc of a tangent curve,
being concave to the Northeast having a radius of 25.00
feet, a delta of 48° 02' 15", an arc distance of 20.96 feet
to a point on an arc of a non-tangent curve (radial line
through said point bears North 01° 51' 24" East); said
point being on the North right-of-way line of North New
River Circle as recorded in Official Records Book 8520,
page 104, of the Public Records of Broward County, Florida,
as shown on said plat; thence westerly along the arc of said
curve, being concave to the South having a radius of 1,065.00
feet, a delta of 01° 58' 20", an arc distance of 36.66 feet
to a point on an arc of a non-tangent curve (radial line
through said point bears South 48° 32' 45" East); thence
northeasterly along the arc of said curve, being concave to
the Northwest having a radius of 25.00 feet, a delta of
33° 07' 47", an arc distance of 14.46 feet; thence tangent
to said curve North 08° 19' 28" East, 130.61 feet; thence
northwesterly along the arc of a tangent curve, being con-
cave to the Southwest having a radius of 50.00 feet, a
delta of 66° 21' 53", an arc distance of 57.91 feet to the
POINT OF BEGINNING.

Said lands lying in the City of Sunrise, Broward County,
Florida, containing 0.127 acres, more or less.

**EXHIBIT B**
**To Second Asset Purchase Agreement**

Allocation Schedule

| Store No. | Store Location | Purchase Price | Initial Deposit [1] | Second Deposit [2] |
|---|---|---|---|---|
| 208 | West Palm Beach, FL | $ 300,000.00 | $ 35,000.00 | $ 65,000.00 |
| 211 | Plantation, FL | 300,000.00 | 35,000.00 | 65,000.00 |
| 339 | Davie, FL | 1,050,000.00 | 105,000.00 | 210,000.00 |
| 372 | Sunrise, FL | 850,000.00 | 85,000.00 | 170,000.00 |
| TOTAL | | $ 2,500,000.00 | $ 260,000.00 | $ 510,000.00 |
| Credit | | | (105,000.00) | |
| Net Owed | | | $ 155,000.00 | |

[1]  The Initial Deposit for each Store shall be the greater of (i) $35,000 or (ii) 10% of the Purchase Price for such Store.

[2]  The Second Deposit for each Store shall be the greater of (i) $65,000, or (ii) 20% of the Purchase Price for such Store.

Exhibit B
Page 1 of 1

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
SGRJAX\84193.2

EXHIBIT C
To Second Asset Purchase Agreement

Form of Bill of Sale

**BILL OF SALE**

**WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective _____, 2006, among **SUNRISE PROPERTIES, LLC**, a Florida limited liability company ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Leases and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

This conveyance is made pursuant to the order of the Bankruptcy Court in *In re Winn-Dixie Stores, Inc., et al.*, Case No. 05-11063 (RDD)(Jointly Administered), United States Bankruptcy Court, Middle District of Florida, Jacksonville Division.

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2006.

"SELLER"

**WINN-DIXIE STORES, INC.**,
a Florida corporation

By: _____
Name: _____
Title: _____

Exhibit C
Page 1 of 1

**EXHIBIT D**
**To Second Asset Purchase Agreement**

Form of Closing Statement

(Excel Spreadsheet Schedule D.XLS)

(attached below)

Exhibit D
Page 1 of 1

**Exhibit D - Form of Closing Statement**

## CLOSING STATEMENT

**SELLER/ASSIGNOR:**      Winn-Dixie _____, Inc., a Florida corporation
**BUYER/ASSIGNEE:**
**TRANSACTION:**      Acquisition of Leasehold Interests and Related Assets
**PURCHASE PRICE:**

|                | Store #_____ | $ | - |
|                | Store #_____ | $ | - |

**TOTAL PURCHASE PRICE:**      $      -
**CLOSING DATE:** _____, 2006

### SELLER'S STATEMENT

**Purchase Price:**                                          $      -
**Total Purchase Price:**                                    $      -
**Less Adjustments:**

1. Seller's Prorated Share of Taxes and
   Other Charges Payable Under Leases (1)      $      -
   **Total Adjustments:**      $      -      $      -

**Plus Adjustments:**

1. Seller's Prorated Share of _____ 2006
   Rents, and Other Charges Paid in Advance
   Under Leases (2)      $      -
   **Total Adjustments:**      $      -      $      -

**Less Closing Costs to be Paid by Seller:**

1. Seller's Attorneys' Fees & Costs                P.O.C.
   (Smith, Gambrell & Russell, LLP)
2. Seller's Brokers Fees                           P.O.C.
   (The Food Partners)
3. Seller's Brokers Fees                           P.O.C.
   (DJM Asset Management, LLC)

   **Total Seller's Closing Costs:**      P.O.C.      P.O.C.

**TOTAL AMOUNT DUE TO SELLER:**                    $      -

### BUYER'S STATEMENT

| | | |
|---|---|---|
| **Purchase Price:** | | $     - |
| **Total Purchase Price:** | | $     - |
| **Less Adjustments:** | | |
| 1. Earnest Money Deposit with Escrow Agent | $    - | |
| 2. Seller's Prorated Share of Taxes and | $    - | |
|     Other Charges Payable Under Leases (1) | | |
|     **Total Adjustments:** | $    - | $     - |
| | | |
| **Plus Adjustments:** | | |
| 1. Seller's Prorated Share of _____ 2006 | | |
|     Rents, and Other Charges Paid in Advance | | |
|     Under Leases (3) | $    - | |
|     **Total Adjustments:** | $    - | $     - |
| | | |
| **Plus Closing Costs to be Paid by Buyer:** | | |
| 1. Buyer's Attorney's Fees & Costs | P.O.C. | |
| 2. Title Examination/Commitment Fees (3) | $    - | |
|     (First American Title Insurance Company) | | |
| 3. Title Insurance Premiums (Leasehold) (3) | $    - | |
|     (First American Title Insurance Company) | | |
| 4. Recording/Filing Fees | $    - | |
|     (First American Title Insurance Company) | | |
| 6. Surveyor's Fees (4) | $    - | |
|     (_____) | | |
| 7. Environmental Site Assessment Fees | $    - | |
|     (_____) | | |
| 8. Documentary/Transfer Taxes | $    - | |
|     (First American Title Insurance Company) | | |
|     **Total Buyer's Closing Costs:** | $    - | $     - |
| **AMOUNT DUE FROM BUYER:** | | $     - |
| **DEPOSIT DUE FROM ESCROW AGENT:** | | $     - |
| **TOTAL AMOUNT DUE AT CLOSING:** | | $     - |

The undersigned parties acknowledge and agree to the foregoing Closing Statement as of this _____ day of _____, 2006, and hereby authorize Smith, Gambrell & Russell, LLP, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER/ASSIGNOR:**

**WINN-DIXIE** _____, **INC.**, a Florida
corporation

By:_____

Name:_____

Title: _____ President

**BUYER/ASSIGNEE:**

_____

a _____ corporation

By:_____

Name:_____

Title: _____ President

60391

Exhibit I-1
3 of 6

Closing Statement
Winn-Dixie Stores, Inc. S/T_____
4/24/2006

**Notes:**

(1) <u>2006 Prorations - Amounts Not Yet Paid and Payable</u>. Prorations are based on (i) estimate of 2006 real estate taxes derived from actual 2005 amounts paid by Seller in arrears in accordance with leases; and (ii) estimate of 2006 common area maintenance charges derived from actual 2005 amounts paid by Seller in arrears in accordance with applicable leases. <u>All prorated amounts are hereby stipulated as final, and shall not be subject to readjustment after closing, notwithstanding that actual amounts when available may differ from the stipulated amounts herein.</u> Buyer shall be responsible for the payment of such charges accruing from and after the closing date and subsequent years. Prorations are as follows:

<u>Real Estate Taxes</u>

| <u>Store #</u> _____ | | | <u>Totals</u> | |
|---|---|---|---|---|
| - 2006 Real Estate Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| <u>Store #</u> _____ | | | | |
| - 2006 Real Estate Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| **Total Real Estate Taxes:** | | | $ | - |

<u>Personal Property Taxes</u>

| <u>Store #</u> _____ | | | | |
|---|---|---|---|---|
| - 2006 Personal Property Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| <u>Store #</u> _____ | | | | |
| - 2006 Personal Property Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| **Total Personal Property Taxes:** | | | $ | - |

<u>CAM Charges</u>

| <u>Store #</u> _____ | | | | |
|---|---|---|---|---|
| - 2006 CAM Charges | $ | - | | |
| - Per Diem Amount | $ | - | | |
| - Seller's Share of 2006 CAM Charges | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| <u>Store #</u> _____ | | | | |
| - 2006 CAM Charges | $ | - | | |
| - Per Diem Amount | $ | - | | |
| - Seller's Share of 2006 CAM Charges | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| **Total CAM Charges:** | | | $ | - |
| **Total Amount of Seller's Prorated Share of 2006 Prorations:** | | | $ | - |

(2) <u>2006 Prorations – Amounts Previously Paid by Seller</u>.  Prorations are based on _____, 2006 rents, insurance and other charges previously paid by Seller in accordance with applicable leases.  Buyer shall be responsible for the payment of such charges that become due and payable for _____, 2006 and thereafter.  Prorations are as follows:

<u>Rent</u>

| | | | | | <u>Totals</u> |
|---|---|---|---|---|---|
| <u>Store #_____</u> | | | | | |
| - Total _____, 2006 rent paid: | $ | - | | | |
| - Per diem rent: | $ | - | | | |
| - Buyer's prorated share | | | | | |
| (_/_/06 - _/_/06) (_____ days) | $_____ | - | $ | - | |
| <u>Store #_____</u> | | | | | |
| - Total _____, 2006 rent paid: | $ | - | | | |
| - Per diem rent: | $ | - | | | |
| - Buyer's prorated share | | | | | |
| (_/_/06 - _/_/06) (_____ days) | $_____ | - | $ | - | |
| **Total Amount of Buyer's Prorated Share of Prorations:** | | | $ | - | |

(3) <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

| | | | | | <u>Totals</u> |
|---|---|---|---|---|---|
| <u>Store #_____</u> | | | | | |
| - Title Search Fees and Costs | $ | - | | | |
| - Title Premium | $_____ | - | $ | - | |
| <u>Store #_____</u> | | | | | |
| - Title Search Fees and Costs | $ | - | | | |
| - Title Premium | $_____ | - | $ | - | |
| **Total Amount of Title Fees and Expenses:** | | | $ | - | |

(4) <u>Survey Fees</u>.  Survey fees are as follows:

| | | |
|---|---|---|
| Store #_____ | $ | - |
| Store #_____ | $ | - |
| **Total Survey Fees:** | $ | - |

(5) <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller directly by the respective utility companies.  Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof.  Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof.  The party responsible for each share of such utility charges shall pay such charges promptly and without demand therefor.  Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6) <u>Capitalized Terms</u>.  Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

60391

Exhibit I-1
5 of 6

Closing Statement
Winn-Dixie Stores, Inc. S/T_____
4/24/2006

## DISBURSEMENT SCHEDULE

RECEIPTS:

1. Deposit Due from Escrow Agent       $        -
2. Cash Due from Buyer                  $        -
TOTAL CASH RECEIVED:                    $        -        $        -

DISBURSEMENTS:

1. _____                        $        -
   (Survey Fees)
2. _____                        $        -
   (Environmental Site Assessment Fees)
3. First American Title Insurance Company          $        -
   (Title Premium & Costs, Taxes and Recdg.)
4. Winn-Dixie Stores, Inc.                         $        -
   (Seller's Proceeds)
TOTAL DISBURSEMENTS:                               $        -

Exhibit I-1
6 of 6

Winn-Dixie Stores, Inc. S/T

Closing Statement

4/24/2005

EXHIBIT E
To Second Asset Purchase Agreement

Form of Conveyance Instrument to be completed at closing

**ASSIGNMENT AND ASSUMPTION OF LEASE**
[Store # 208, #211, #339, #372]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of _____, 2006 (the "Effective Date"), by and between **WINN-DIXIE STORES, INC.** a Florida corporation ("Assignor"), and **SUNRISE PROPERTIES, LLC,** a Florida limited liability company ("Assignee").

**R E C I T A L S :**

A.    Assignor, as Seller, and Assignee, as Buyer, are parties to that certain Asset Purchase Agreement dated effective April 10, 2006, as amended from time to time (the "Agreement"), pursuant to which Assignor has agreed to sell and assign, and Assignee has agreed to purchase and assume, certain assets in connection with Assignor's retail supermarket store location described on attached Schedule A (the "Premises").

B.    Under the Agreement, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the Premises pursuant to that certain Lease, together with any and all amendments thereto, as described on the attached Schedule A (the "Lease"), and all of Assignor's right, title and interest, as sublandlord or sublessor, in and to the subleases, together with all amendments thereto, described on Schedule A, (the "Subleases"), if any; and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Subleases from and after the Effective Date, all subject to and in accordance with the terms of the Lease, the Subleases, the Agreement and this Assignment;

**NOW, THEREFORE,** in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **EFFECTIVE DATE.** This Assignment shall be effective as of the Effective Date.

2.    **ASSIGNMENT.**

(a)    Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

(b)    Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to

EXHIBIT E
Page 1 of 6

the Subleases and all the rights, benefits and privileges of the landlord or lessor thereunder.

3.  **ASSUMPTION; ACCEPTANCE OF PREMISES.**

(a)  Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b)  Assignee hereby accepts the aforesaid assignment of the Subleases and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Subleases from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the Subleases from and on or after the Effective Date.

(c)  Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate. Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations. Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor. Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4.  **NOTICES.**  All notices, requests, demands, offers and other communications required or permitted to be given pursuant to this Agreement will conform to the requirements of this paragraph 4 and will be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by facsimile transmission, when the facsimile is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next Business Day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iii) if delivered by United States Mail, 3 days after depositing

EXHIBIT E
Page 2 of 6

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
8GRJAX94183.1

with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (iv) if given by nationally recognized or reputable overnight delivery service, on the next Business Day after receipted deposit with same, addressed to Seller or Buyer at their respective addresses stated below:

If to Assignor:

Winn-Dixie Stores, Inc.; Re: Stores #208, #211, #339, #372
5050 Edgewood Court
Jacksonville, FL 32254-3699
Attn: Chief Financial Officer
Telefax No.: 904/783-5646

With a copy to:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254-3699
Attn: Office of General Counsel
Telefax No.: 904/783-5641

If to Assignee:

_____
_____
_____
Attn: _____
Telefax No. _____

With a copy to:

_____
_____
_____
Attn: _____
Telefax No. _____

or such other address as any party may from time to time specify by notice to the other.

5. **NOTICE OF ASSIGNMENT**.  Promptly following the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the existence of certain limitations on Assignee's rights under the Lease as set forth in this Assignment.

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
SGRJAX\64193.1

6.  **BINDING EFFECT.**  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7.  **FURTHER ASSURANCES.**  Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

8.  **ATTORNEYS' FEES.**  If Assignor becomes a party to any suit or proceeding affecting the Premises or involving this Assignment or Assignee's interest under this Assignment, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Assignment, or to enforce performance of any of the agreements, conditions, covenants, provisions, or stipulations of this Assignment, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand.  All references in this Assignment to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all post-judgment and appellate levels and in connection with bankruptcy proceedings.

9.  **WAIVER OF JURY TRIAL.**  Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Subleases makes a jury determination of any dispute arising out of this Assignment, the Premises, the Lease or the Subleases undesirable.  Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Subleases.

**IN WITNESS WHEREOF,** Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

By:_____
Name: _____
Title: _____

Name:_____

Name:_____

[CORPORATE SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

EXHIBIT E
Page 4 of 6

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
SGRJAX\54190.1

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

**SUNRISE PROPERTIES, LLC,** a Florida
limited liability company

Name:_____

By:_____
Name:_____
Title:_____

Name:_____

[SEAL]

[ADD ACKNOWLEDGMENT PER STATE-SPECIFIC REQUIREMENTS]

EXHIBIT E
Page 5 of 6

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 399 & 372
April 10, 2006
SGRJAX84193.1

Schedule A
To Assignment and Assumption of Leases

Description of Premises and Lease

STORE #:

STREET ADDRESS:

SHOPPING CENTER:

LEASE:

AMENDMENTS TO LEASE:

SUBLEASES:

AMENDMENTS TO SUBLEASES:

EXHIBIT E
Page 6 of 6

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
SGR/JAX/94193.1

**EXHIBIT F**
To Second Asset Purchase Agreement

**Confidentiality Agreement**

(attached below)

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
SGR/JAX\84198.1

03/02/2006 13:01 FAX  7185                                                        ☑002/007

EXHIBIT F



March 2, 2006

Mach Markets Inc. (the "Prospective Purchaser")
31 East Prospect Avenue
Mount Vernon, NY 10550

Attention: Esmail Mobarak

RE:    Winn-Dixie Stores, Inc./Project Panther 06 - Possible Transaction with Prospective Purchaser –
       Confidentiality Letter Agreement

Ladies and Gentlemen:

This letter sets forth specific terms with respect to information provided to the Prospective Purchaser, or
to be provided to the Prospective Purchaser, by Winn-Dixie Stores, Inc. or one or more of its direct or
indirect wholly-owned subsidiaries (collectively, the "Company"). The Prospective Purchaser is
considering a possible acquisition of certain assets of the Company as described on the Internet website
maintained by Merrill Corporation (the "Merrill Web Site") on behalf of the Company under the name
"Project Panther 06" (the "Assets"), by a sale of assets or otherwise (a "Transaction"). The Prospective
Purchaser has requested certain information concerning the Company and the Assets.

As a condition to the Company furnishing the Prospective Purchaser with such information, including
any Confidential Information Memorandum prepared by the Company, the Prospective Purchaser
agrees, in its entity capacity, and on behalf of its officers, directors, shareholders, partners, members,
managers and employees (collectively, the "Purchaser Parties") to consider and treat all Evaluation
Material as strictly confidential, in accordance with the provisions of this letter. The term "Evaluation
Material" shall mean:

(a)    any information concerning the Assets or the Company that is furnished to the Prospective
       Purchaser by or on behalf of the Company, whether furnished before or after the date of this
       letter and whether furnished on the Merrill Web Site, or otherwise in writing, orally,
       electronically, or by other means; and

(b)    any analyses, compilations, studies or other documents prepared by the Purchaser Parties or any
       of the Prospective Purchaser's contractors, agents or advisers (including, without limitation,
       attorneys, accountants, consultants, bankers, financial advisers and any representatives of your
       advisers) (collectively, the "Representatives") that contain or otherwise reflect such information;

(c)    but excluding, information that (a) was or becomes generally available to the public other than as
       a result of a disclosure by the Purchaser Parties or the Representatives or (b) was or becomes
       available to the Prospective Purchaser on a non-confidential basis from a source other than the
       Company or its advisers, provided that such source was not known by the Prospective Purchaser
       to be bound by any letter with the Company to keep such information confidential or to
       otherwise be prohibited from transmitting the information to the Prospective Purchaser by a
       contractual, legal or fiduciary obligation.

03/02/2006 13:01 FAX 7165431226        FOODTOWN        @ 006/007

Mach Markets Inc.
Confidentiality Letter Agreement
March 2, 2006
Page 2

The Prospective Purchaser hereby agrees that the Evaluation Material shall be used solely for the purpose of evaluating a possible Transaction between the Company and the Prospective Purchaser, and that such information shall be kept confidential by the Purchaser Parties and the Representatives, except to the extent that disclosure of such information (a) has been consented to in writing by the Company, (b) is required by law, regulation, supervisory authority or other applicable judicial or governmental order or (c) is made to the Representatives who need to know such information for the purpose of evaluating any such possible Transaction between the Company and the Prospective Purchaser (it being understood that the Representatives shall have been advised of this letter and shall have agreed to be bound by the provisions hereof). In any event, the Prospective Purchaser shall be responsible for any breach of this letter by any of the Purchaser Parties or the Representatives and the Prospective Purchaser agrees, at the Prospective Purchaser's sole expense, to take all reasonable measures (including but not limited to court proceedings) to restrain the Purchaser Parties and the Representatives from prohibited or unauthorized disclosure or use of the Evaluation Material.

In addition, without the prior written consent of the Company, the Prospective Purchaser shall not disclose, and shall direct the Purchaser Parties and the Representatives not to disclose, to any person:

(a)     that the Evaluation Material has been made available to the Purchaser Parties or the Representatives;

(b)     that discussions or negotiations are taking place concerning a possible Transaction between the Company and the Prospective Purchaser, or

(c)     any terms, conditions or other facts with respect to any such possible Transaction, including the status thereof or any announcement of the existence of a Transaction.

In the event that any of the Purchaser Parties or the Representatives are requested or required by law, regulation, supervisory authority or other applicable judicial or governmental order to disclose any Evaluation Material, the Prospective Purchaser shall provide the Company with prompt written notice of such request or requirement so that the Company may seek an appropriate protective order. If, failing the entry of a protective order, the Purchaser Parties or the Representatives are, in the written opinion of the Prospective Purchaser's counsel, compelled to disclose Evaluation Material, then the Prospective Purchaser may disclose that portion of the Evaluation Material that the Prospective Purchaser's legal counsel advises that the Purchaser Parties or the Representatives are compelled to disclose; provided, however, that in making such disclosure, the Prospective Purchaser shall exercise reasonable efforts to obtain assurance that confidential treatment shall be accorded to that portion of the Evaluation Material that is being disclosed. In any event, the Prospective Purchaser shall not oppose action by the Company to obtain an appropriate protective order or other reliable assurance that confidential treatment shall be accorded the Evaluation Material.

If any Purchaser Party or Representative is contacted, whether orally or in writing, by the United States Department of Justice or the Federal Trade Commission, or any similar state governmental authority, with respect to a Transaction that is the subject matter of this letter, then such party shall promptly notify the Company of such contact and describe the facts and circumstances thereof.

The Prospective Purchaser agrees that neither the Purchaser Parties nor any Representatives shall initiate or maintain contact with any third party in interest in the Assets or real and personal property related thereto, including any landlord, lender, subtenant, contractor or licensee, or (except for those contacts made in the ordinary course of business) with any officer, director or employee of the Company

Confidentiality Letter Agreement
Winn-Dixie Stores, Inc. - Project Pundict 06

03/02/2006 18:02 FAX 7185481226                FOODTOWN                                    ☒004/007

Mach Markets Inc.
Confidentiality Letter Agreement
March 2, 2006
Page 3

regarding the business, operation, prospects or finances of the Company or the Assets, except with the express permission of the Company or its legal counsel.

For one (1) year from the date hereof, the Purchaser Parties shall not directly or indirectly solicit for employment or employ any employee of the Company to whom the Purchaser Parties or the Representatives had been directly or indirectly introduced or otherwise became aware of as a result of the Prospective Purchaser's consideration of a Transaction, as long as such employees continue to be employed by the Company. Notwithstanding the foregoing, nothing herein shall restrict or preclude the Prospective Purchaser's ability to make generalized searches for employees by use of advertisements in any medium or to hire any individual responding to such advertisements.

The Prospective Purchaser hereby acknowledges that the Prospective Purchaser is aware and that the Prospective Purchaser shall advise the Purchaser Parties and the Representatives that federal and state securities laws prohibit any person who has material, non-public information about a company from purchasing or selling securities of such a company or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

All Evaluation Material disclosed by the Company shall be and shall remain the property of the Company. Within five (5) business days after being so requested by the Company, the Purchaser Parties and the Representatives shall return all tangible Evaluation Material furnished to the Prospective Purchaser by the Company. Except to the extent a party is advised in writing by counsel that such destruction is prohibited by law, following the Company's request, the Purchaser Parties and the Representatives shall destroy all other Evaluation Material, including written material, memoranda, notes, copies, excerpts and other writings or recordings whatsoever prepared by the Purchaser Parties or the Representatives. Any destruction of materials shall be confirmed by the Prospective Purchaser in writing to the Company, including an itemization of the specific materials destroyed, the medium in which such materials were recorded, and the method of such destruction. Any Evaluation Material that is not returned or destroyed, including without limitation any oral Evaluation Material, shall remain subject to the confidentiality obligations set forth in this letter.

You understand and acknowledge that any and all information contained in the Evaluation Material is being provided without any representation or warranty, express or implied, as to the accuracy or completeness of the Evaluation Material, on the part of the Company. You agree that none of the Company or any of its directors, officers, stockholders, owners, affiliates, agents, or representatives shall have any liability to you or any of your Representatives. It is understood that the scope of any representations and warranties to be given by the Company shall be negotiated along with other terms and conditions in arriving at a mutually acceptable form of definitive agreement should discussions between you and the Company progress to such a point.

The Prospective Purchaser agrees that unless and until a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser has been executed, neither the Company nor the Prospective Purchaser shall be under any legal obligation of any kind whatsoever with respect to such a Transaction by virtue of this letter except for the matters specifically agreed to herein. The Prospective Purchaser further acknowledges and agrees that the Company reserves the right, in its sole discretion, to reject any and all proposals made by the Purchaser Parties or the Representatives with regard to a Transaction between the Company and the Prospective Purchaser, and to terminate discussions and negotiations with the Prospective Purchaser at any time prior to entry into a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser.

Confidentiality Letter Agreement
Winn-Dixie Stores, Inc. – Project Panther 06

08/02/2006  13:02 FAX  7128431226              FOODTOWN                                    Ⓩ 006/007

Mach Markets Inc.
Confidentiality Letter Agreement
March 2, 2006
Page 4

The Prospective Purchaser acknowledges and agrees that, at any time prior to entry into a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser:

(a)     the Company shall be free to conduct any process with respect to a possible Transaction as the Company in its sole discretion shall determine (including, without limitation, by negotiating with any prospective party and entering into a definitive written agreement without prior notice to the Prospective Purchaser or any other person, and by making the Merrill Web Site and other Evaluation Materials available for review by others);

(b)     any procedures relating to such Transaction may be changed at any time without notice to the Prospective Purchaser or any other person; and

(c)     the Prospective Purchaser shall not have any claim whatsoever against the Company or any of its directors, officers, stockholders, owners, affiliates, agents or representatives, arising out of or relating to any possible or actual Transaction (other than those pursuant to this letter or as against parties to a definitive written agreement between the Company and the Prospective Purchaser in accordance with the terms thereof).

If the Company and the Prospective Purchaser enter into a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser, then the terms of this letter nonetheless shall be deemed continuing, and shall be incorporated into such definitive agreement by reference; provided, however, that to the extent the terms of this letter and the terms of the definitive agreement are in conflict or are inconsistent, the terms of the definitive agreement shall be controlling.

It is understood and agreed that money damages would not be a sufficient remedy for any breach of this letter and that, in the event of a breach of this letter by any of the Purchaser Parties or the Representatives, the Company shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach. The Prospective Purchaser further agrees to waive any requirement for the security or posting of any bond in connection with any such remedy available to the Company. Such remedy shall not be deemed to be the exclusive remedy for breach of this letter but shall be in addition to all other remedies available at law or equity to the Company.

In the event of litigation relating to this letter, if a court of competent jurisdiction determines in a final, non-appealable order that any Purchaser Party or Representative has breached this letter, then the Prospective Purchaser shall be jointly and severally liable with such breaching party and shall pay to the Company the reasonable legal fees and actual costs that the Company incurred in connection with such litigation, including any appeal therefrom.

All notices, requests, demands, offers and other communications required or permitted to be given pursuant to this letter shall conform to the requirements below and shall be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by facsimile transmission, when the facsimile is transmitted to the recipient's telefax number or by attachment to an e-mail transmission to the recipient's e-mail address and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient (iii) if given by e-mail transmission when confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iv) if delivered by United States Mail, three days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (v) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same, addressed to the Company

Mach Markets Inc.
Confidentiality Letter Agreement
March 2, 2006
Page 5

or the Prospective Purchaser at their respective addresses stated below:

If to the Company:

    Winn-Dixie Stores, Inc.
    c/o The Food Partners, LLC
    1250 Rye Street, NW, Suite 850
    Washington, DC 20005
    Attention: Matthew Morris, Principal
    Telefax No. 202 589 0458
    e-mail: mmorris@thefoodpartners.com

With a copy to:

    Winn-Dixie Stores, Inc.
    5050 Edgewood Court
    Jacksonville, Florida 32254-3699
    Attn: Office of General Counsel
    Telefax No. 904 783 5651
    e-mail: larrappel@winn-dixie.com

If to the Prospective Purchaser:

    Mach Markets Inc
    31 East Prospect Ave
    Mount Vernon, NY 10550
    Telefax No. 914-667-5015
    e-mail: smobarak@myfoodtown.com

With a copy to:

    _____
    _____
    _____
    Telefax No. _____
    e-mail: _____

or such other address as any party may from time to time specify by notice to the other.

This letter is for the benefit of the Company and is governed by the laws of the State of Florida without regard to conflict of laws principles. Any action brought in connection with this letter shall be brought in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, and the parties hereto hereby irrevocably consent to the jurisdiction of such court.

This letter may not be amended except in writing signed by both parties hereto. No failure or delay by the Company in exercising any right hereunder or any partial exercise thereof shall operate as a waiver thereof or preclude any other or further exercise of any right hereunder. The invalidity or unenforceability of any provision of this letter shall not affect the validity or enforceability of any other provisions of this letter, which shall remain in full force and effect.

Confidentiality Letter Agreement
Winn-Dixie Stores, Inc. – Project Panther 06

03/02/2006 18:08 FAX  7185431228          FOODTOWN                          ☒007/007

Mach Markets Inc.
Confidentiality Letter Agreement
March 2, 2006
Page 6

This letter may be executed in counterparts (including by means of telecopied signature pages). Please confirm that the foregoing is in accordance with your understanding of our letter by signing and returning a copy of this letter to The Food Partners, LLC. Your correspondence with The Food Partners, LLC, should be directed as follows:

> Winn-Dixie Stores, Inc. – Project Panther 06
> c/o The Food Partners, LLC
> 1250 Rye Street, NW, Suite 850
> Washington, DC 20005
> Attention: Matthew Morris, Principal
> Telefax No. 202 589 0453
> e-mail: _mmorris@thefoodpartners.com_

Upon your delivery of an acknowledged copy of this letter as provided above, this letter shall constitute the valid and binding agreement of the Company and the Prospective Purchaser, and referred to as the "Confidentiality Letter Agreement."

Sincerely,

THE COMPANY:

WINN-DIXIE STORES, INC.

By: _____
Name: Larry B. Appel
Title: Senior Vice President and General Counsel


ACKNOWLEDGED AND AGREED as of the date first set forth above

THE PROSPECTIVE PURCHASER:

Mach Markets Inc.
[Prospective Purchaser Name]
a New York
[state of formation, business entity type]

By: _____
Name: Esmail Mobarak
Title: President


Confidentiality Letter Agreement
Winn-Dixie Stores, Inc. – Project Panther 06

**EXHIBIT G**
**To Second Asset Purchase Agreement**

Schedule of Excluded Personal Property

(a)   Inventory;

(b)   packaging materials, and supplies not included in the term "Supplies";

(c)   store shelf tags and pricing cards;

(d)   leased or owned point-of-sale equipment, photo lab equipment and security equipment;

(e)   other leased equipment (including all other leased equipment described on attached Schedule G-1 to this Agreement with respect to each Store – See Excel Spreadsheet Schedule G-1.XLS);

(f)   sound intercom and music service equipment and contracts;

(g)   owned computers and routers, including Cisco 2651 routers, IBM 4029 (Pharmacy) servers, ACM BOSS (back office system servers), and 64k Frame circuits;

(h)   computer equipment that contains software subject to a license that restricts its transfer or imbedded data files that in either case is/are not easily and effectively deleted or removed;

(i)   equipment and other personal property that is neither owned nor leased by Seller, including by way of example but not as a limitation, third-party owned or supplied equipment such as payphones, vending machines, kiosks, blood pressure machines, sanitation chemical mixing equipment, copiers, Western Union equipment, money order equipment, coin rolling, sorting or counting equipment, ATM's, rug cleaners and equipment owned by product vendors;

(j)   shopping carts;

(k)   over-the-road motor vehicles;

(l)   computer software subject to a license that restricts its transfer or that resides on equipment comprising Excluded Personal Property;

(m)   data files, including pharmacy prescription records and files;

(n)   lottery equipment and tickets;

(o)   accounts receivable, bank accounts, cash and cash equivalents;

(p)   trademarks, trade names, private labels, logos and designs of Seller, Winn-Dixie or their Affiliates;

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
SGRUAX\54193.1

(q)    building signs and panels in all pole and pylon signs that advertise Seller's business in the Stores;

(r)    Intellectual property and rights relating to any of the foregoing;

(s)    service agreements;

(t)    leases of personal property;

(u)    contracts and warranties relating to Seller's possession and operation of the Stores;

NOTES:

1.    Any equipment transferred from a Store to another Seller location must be accounted for using the proper equipment transfer forms. Seller's "Store Maintenance" department will undertake this task for Seller. No equipment is to be removed from the Store unless it has been determined to constitute "Excluded Personal Property" and has been approved and the proper equipment transfer forms have been completed by Store Maintenance.

2.    For any and all computers to remain in a Store, the following procedures will be performed:

(a)    All computers left behind in a Store will have data and software removed to a point at which the computers can no longer "boot" off an internal drive. Buyer is responsible for reloading any and all computer systems with Buyer's own software so that it will work in a new environment.

(b)    Generic POS files will be provided upon request. Buyer will get the same file. It will consist of UPC, item description, pack size, and department code. Seller will not provide any electronic price information.

(c)    Seller's 64k Frame circuits will not be transferred.  Buyer will be responsible for installing its own frame, DSL, or VSAT data solution before the Store is transferred.

(d)    Any Verifone "Everest Plus" Pinpads left behind in the Store will have their encryption keys destroyed by the act of opening up the pinpad.  Seller will not provide additional pinpads.  Buyer is responsible for its own EPS solution.

(e)    Category 5 cabling will be left in place.

(f)    Seller will not train, assist, or otherwise help in the setup of Buyer's POS or back office environment.

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
#GRJAX\54185.1

## SCHEDULE G-1
### To Exhibit G

**Excluded Leased Equipment**

**(Excel Spreadsheet Schedule G-1.XLS)**

(attached below)

EXHIBIT G
Page 3 of 3
Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
SGRJAX\64193.2

EXHIBIT G-1

| Unit | Asset ID | Acq Date | DeptID | Descr | Location | Class | Serial ID |
|------|----------|----------|--------|-------|----------|-------|-----------|
| WDPOM | 03070960 | 2003-05-28 | 0208 | ENTERASYS ETHERNET SWITCH | 0208 | SWITCH | 030700296610B |
| WDPOM | 03070961 | 2003-05-28 | 0208 | ENTERASYS ETHERNET SWITCH | 0208 | SWITCH | 030701546110B |
| WDPOM | 03074261 | 2003-08-26 | 0208 | LEXMARK T630N | 0208 | PRINTER | 9915877 |
| WDPOM | 03074262 | 2003-08-26 | 0208 | LEXMARK T630N RX W/DIMM CHIP | 0208 | PRINTER | 9915BH7 |
| WDPOM | 03074263 | 2003-08-26 | 0208 | LEXMARK T630N RX W/DIMM CHIP | 0208 | PRINTER | 9915B6Z |
| WDPOM | 03074316 | 2003-09-05 | 0208 | OPTIPLEX SX260 | 0208 | PC | 9CP7B31 |
| WDPOM | 03074317 | 2003-09-05 | 0208 | OPTIPLEX SX260 | 0208 | PC | GCP7B31 |
| WDPOM | 03074318 | 2003-09-05 | 0208 | OPTIPLEX SX260 | 0208 | PC | GDP7B31 |
| WDPOM | 03074319 | 2003-09-05 | 0208 | OPTIPLEX SX260 | 0208 | PC | CP7B31 |
| WDPOM | 03074320 | 2003-09-05 | 0208 | OPTIPLEX SX260 | 0208 | PC | HP7B31 |
| WDPOM | 03074321 | 2003-09-05 | 0208 | OPTIPLEX SX260 | 0208 | PC | JP7B31 |
| WDPOM | 03074322 | 2003-09-05 | 0208 | OPTIPLEX SX260 | 0208 | PC | 3QT8B31 |
| WDPOM | 03074338 | 2003-09-16 | 0208 | LEXMARK T630N | 0208 | PRINTER | 9915B77 |
| WDPOM | 03074339 | 2003-09-16 | 0208 | LEXMARK T630N RX | 0208 | PRINTER | 9915BH7 |
| WDPOM | 03074340 | 2003-09-16 | 0208 | LEXMARK T630N RX | 0208 | PRINTER | 9915B6Z |
| WDPOM | 03086613 | 2005-01-17 | 0208 | PHARMACY OPTIPLEX GX270 | 0208 | PC | 4FPFY61 |
| WDPOM | 03087790 | 2005-06-15 | 0208 | IVR PHARMACY | 0208 | PHARMACY | 4FPFY51 |
| WDPOM | 03087807 | 2005-05-16 | 0208 | DDA SYSTEM | 0208 | PHARMACY | |
| WDPOM | 03088268 | 2005-06-29 | 0208 | Pharmcy Risc 6000 Server (IBM P615) | 0208 | SERVER | 0003973E |
| WDPOM | 03088319 | 2004-07-01 | 0208 | CISCO STORE ROUTERS $ MAINT. | 0208 | ROUTER | JMX8819L01L |
| WDPOM | 03088609 | 2005-05-16 | 0208 | DDA PROJECT SOFTWARE PHARMACY | 0208 | SOFTWARE | |

EXHIBIT G-1

| Unit | Asset ID | Acq Date | DeptID | Descr | Location | Class | Serial ID |
|------|----------|----------|--------|-------|----------|-------|-----------|
| WDPOM | 03070981 | 2003-05-28 | 0211 | ENTERASYS ETHERNET SWITCH | 0211 | SWITCH | 03130564610B |
| WDPOM | 03070982 | 2003-05-28 | 0211 | ENTERASYS ETHERNET SWITCH | 0211 | SWITCH | 0313176561108 |
| WDPOM | 03075664 | 2003-11-18 | 0211 | OPTIPLEX SX260 | 0211 | PC | 6GDGH31 |
| WDPOM | 03075665 | 2003-11-18 | 0211 | OPTIPLEX SX260 | 0211 | PC | 9GDGH31 |
| WDPOM | 03075666 | 2003-11-18 | 0211 | OPTIPLEX SX260 | 0211 | PC | DGDGH31 |
| WDPOM | 03075683 | 2003-11-18 | 0211 | OPTIPLEX SX260 | 0211 | PC | J8C2H31 |
| WDPOM | 03075684 | 2003-11-18 | 0211 | OPTIPLEX SX260 | 0211 | PC | 19C2H31 |
| WDPOM | 03075707 | 2003-09-11 | 0211 | LEXMARK T630N | 0211 | PRINTER | 9915B3X |
| WDPOM | 03080225 | 2004-08-10 | 0211 | ACM 502 SELF CHECKOUT LANE | 0211 | CKOUT LANE | |
| WDPOM | 03080226 | 2004-08-10 | 0211 | ACM 503 SELF CHECKOUT LANE | 0211 | CKOUT LANE | |
| WDPOM | 03088322 | 2004-07-01 | 0211 | CISCO STORE ROUTERS $ MAINT. | 0211 | ROUTER | JMX0819LOUZ |

EXHIBIT G-1

| Unit | Asset ID | Acq Date | DeptID | Descr | Location | Class | Serial ID |
|------|----------|----------|--------|-------|----------|-------|-----------|
| WDPOM | 030070878 | 2003-05-28 | 0339 | ENTERASYS ETHERNET SWITCH | 0339 | SWITCH | 0305100661OB |
| WDPOM | 030070879 | 2003-05-28 | 0339 | ENTERASYS ETHERNET SWITCH | 0339 | SWITCH | 0304382161OB |
| WDPOM | 03075522 | 2003-10-29 | 0339 | LEXMARK T630N | 0339 | PRINTER | 9915NC9 |
| WDPOM | 03075523 | 2003-10-29 | 0339 | LEXMARK T630N RX | 0339 | PRINTER | 9915NCP |
| WDPOM | 03075524 | 2003-10-29 | 0339 | LEXMARK T630N RX | 0339 | PRINTER | 9915NCM |
| WDPOM | 03075611 | 2003-11-18 | 0339 | OPTIPLEX SX260 | 0339 | PC | 9VDGH31 |
| WDPOM | 03075612 | 2003-11-18 | 0339 | OPTIPLEX SX260 | 0339 | PC | HVDGH31 |
| WDPOM | 03075613 | 2003-11-18 | 0339 | OPTIPLEX SX260 | 0339 | PC | 3WDGH31 |
| WDPOM | 03075614 | 2003-11-18 | 0339 | OPTIPLEX SX260 | 0339 | PC | 9L92H31 |
| WDPOM | 03075615 | 2003-11-18 | 0339 | OPTIPLEX SX260 | 0339 | PC | CL92H31 |
| WDPOM | 03075616 | 2003-11-18 | 0339 | OPTIPLEX SX260 | 0339 | PC | FL92H31 |
| WDPOM | 03084038 | 2004-12-16 | 0339 | ACM 502 RIGHT HAND LANE | 0339 | CKOUT LANE | |
| WDPOM | 03084039 | 2004-12-16 | 0339 | ACM 503 RIGHT HAND LANE | 0339 | CKOUT LANE | |
| WDPOM | 03084040 | 2004-12-16 | 0339 | ACM 502 LEFT HAND LANE | 0339 | CKOUT LANE | |
| WDPOM | 03084041 | 2004-12-16 | 0339 | ACM 503 LEFT HAND LANE | 0339 | CKOUT LANE | |
| WDPOM | 03088236 | 2004-07-01 | 0339 | PHARMACY - OPTIPLEX GX270 | 0339 | PC | 4707051 |
| WDPOM | 03087868 | 2005-05-16 | 0339 | DDA SYSTEM | 0339 | PHARMACY | |
| WDPOM | 03088265 | 2005-06-29 | 0339 | Pharmacy Risc 6000 Server (IBM P615) | 0339 | SERVER | 003976E |
| WDPOM | 03088409 | 2004-07-01 | 0339 | CISCO STORE ROUTERS $ MAINT. | 0339 | ROUTER | JMX0619L029 |

**EXHIBIT G-1**

| Unit | Asset ID | Acq Date | DeptID | Descr | Location | Class | Serial ID |
|---|---|---|---|---|---|---|---|
| WDPOM | 03070091B | 2003-05-28 | 0372 | ENTERASYS ETHERNET SWITCH | 0372 | SWITCH | 03050361610B |
| WDPOM | 03070091B | 2003-05-28 | 0372 | ENTERASYS ETHERNET SWITCH | 0372 | SWITCH | 030430661610B |
| WDPOM | 03075583 | 2003-11-18 | 0372 | OPTIPLEX SX260 | 0372 | PC | HJDGH31 |
| WDPOM | 03075584 | 2003-11-18 | 0372 | OPTIPLEX SX260 | 0372 | PC | 3KDGH31 |
| WDPOM | 03075585 | 2003-11-18 | 0372 | OPTIPLEX SX260 | 0372 | PC | 7KDGH31 |
| WDPOM | 03075607 | 2003-11-18 | 0372 | OPTIPLEX SX260 | 0372 | PC | 89C2H31 |
| WDPOM | 03075608 | 2003-11-18 | 0372 | OPTIPLEX SX260 | 0372 | PC | 99C2H31 |
| WDPOM | 03076155 | 2003-09-14 | 0372 | LEXMARK T630N | 0372 | PRINTER | 9916NCH |
| WDPOM | 03080741 | 2004-09-09 | 0372 | ACM 502 RIGHT CHECKOUT LANE | 0372 | CKOUT LANE | |
| WDPOM | 03080749 | 2004-09-09 | 0372 | ACM 503 RIGHT CHECKOUT LANE | 0372 | CKOUT LANE | |
| WDPOM | 03088429 | 2004-07-01 | 0372 | CISCO STORE ROUTERS $ MAINT. | 0372 | ROUTER | JMX0819L0U4 |

**EXHIBIT H**
To Second Asset Purchase Agreement

Schedule of Permitted Encumbrances

1.    Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2006 and subsequent years.

2.    All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.    Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4.    Rights of Landlords under the Leases, including the rights of any Landlord's mortgagee.

5.    Rights of Subtenants under the Subleases.

6.    All matters set forth as exceptions in the Title History or the site plans, other than Monetary Liens.

7.    All other matters not set forth in the Title History that are set forth as exceptions in the Title Commitments, other than Monetary Liens.

    **Note to Buyer:  Buyer has limited rights to object to certain matters set forth in the Title Commitments pursuant to paragraphs 4.2 and 4.4 of the Asset Purchase Agreement**

8.    All other restrictions, reservations, covenants, agreements, easements, limitations and other matters appearing of record as of the date of this Agreement, other than Monetary Liens, and which do not, individually or in the aggregate, interfere in a material and adverse way with the present use of or occupancy of the affected Store.

EXHIBIT H
Page 1 of 1

Exhibits to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. a/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 372
April 10, 2006
SGRJAX\84193.1

<u>Store Nos.</u>
208
211
339
2330

## <u>FIRST AMENDMENT TO SECOND ASSET PURCHASE AGREEMENT</u>
### [Sunrise Properties, LLC]

**THIS FIRST AMENDMENT TO SECOND ASSET PURCHASE AGREEMENT** (this "<u>Amendment</u>") is made effective as of April 10, 2006 by and between

**WINN-DIXIE STORES, INC.,** a Florida corporation ("<u>Seller</u>"), and

**SUNRISE PROPERTIES, LLC,** a Florida limited liability company, or its permitted assignee pursuant to <u>paragraph 17.5</u> of the Agreement (as defined in <u>paragraph A</u> below)("<u>Buyer</u>").

### RECITALS

A.    Seller and Buyer entered into that certain Second Asset Purchase Agreement (the "<u>Agreement</u>") dated April 10, 2006, concerning the purchase of certain Winn-Dixie Stores identified as #208, #211, #339 and #372.

B.    In accordance with <u>paragraph 17.6</u> of the Agreement, the parties desire to amend the Agreement to revise the stores for sale and purchase in accordance with the provisions of the Agreement and this Amendment.

### AGREEMENT

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    <u>Recitals</u>. Buyer and Seller confirm the accuracy of the foregoing Recitals.

2.    <u>Capitalized Terms</u>. All capitalized terms used and not otherwise defined herein will have the meaning ascribed to them in the Agreement.

3.    <u>Amendment to paragraph 3.1</u>. That portion of <u>paragraph 3.1</u> of the Agreement is hereby amended to change "...the fixed sum of Two Million Five Hundred Thousand ($2,500,000.00) Dollars..." to "...the fixed sum of Two Million Two Hundred Thousand ($2,200,000.00) Dollars...."

4.    <u>Amendment to Exhibits</u>. <u>Exhibit A-1</u>, <u>Exhibit A-2</u>, <u>Exhibit B</u>, and <u>Exhibit D</u> of the Agreement are hereby amended and replaced in their entirety by the exhibits attached hereto and identified by the same corresponding reference.

5.    <u>Scheduled Events</u>. With respect to Store 2330 only, the events identified in <u>paragraphs 1.73, 3.2, 4.2 and 4.3</u> of the Agreement that are scheduled to occur at a specified time subsequent to the Effective Date of the Agreement (April 10, 2006) will occur at said specified time subsequent to the 9th of May, 2006.

First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\84106.2

6.    <u>Miscellaneous</u>.  All other terms of the Agreement will remain in full force and effect consistent with the terms of this Amendment.  If any inconsistency should occur between the terms thereof, the terms of this Amendment will govern and prevail.

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Amendment as of the Effective Date of the Agreement.

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

By:
Name:    Bennett L. Nussbaum
Title:    SENIOR VICE PRESIDENT

Name:    SUSAN MAGADDINO

Name:    REBECCA L. SAWYER

LEGAL APPROVED
ATTY: _CBJ_
DATE: _5/5/__

Reviewed By

XRoads
Date:

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**BUYER:**

**SUNRISE PROPERTIES, LLC,**
a Florida limited liability company

Name: _____

By:
Name: _____
Title: _____

Name: _____

[NOTE: WITNESSES AND OTHER FORMALITIES OF EXECUTION
TO BE CONFORMED TO APPLICABLE STATE REQUIREMENTS, IF ANY]

First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\84106.2

2

6.    _Miscellaneous_.  All other terms of the Agreement will remain in full force and effect consistent with the terms of this Amendment.  If any inconsistency should occur between the terms thereof, the terms of this Amendment will govern and prevail.

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Amendment as of the Effective Date of the Agreement.

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

Name: _____

By: _____
Name: _____
Title: _____

Name: _____


Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**BUYER:**

**SUNRISE PROPERTIES, LLC,**
a Florida limited liability company

Name: _____

Name: _____

By: _____
Name: _ESMAIL  Mobarev_
Title: _PResident_

[NOTE: WITNESSES AND OTHER FORMALITIES OF EXECUTION
TO BE CONFORMED TO APPLICABLE STATE REQUIREMENTS, IF ANY]

First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\84106.2

2

Acknowledged and agreed this __18th__ day of May, 2006 for the limited purposes set forth in paragraph 18.0 of the Agreement:

**ESCROW AGENT:**

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
Name:  Douglas G. Stanford
Title:   Partner

First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\84106.2

3

<u>Store Nos.:</u>
208
211
339
2330

## LIST OF EXHIBITS

| | | |
|---|---|---|
| Exhibit A-1 | - | Schedule of Stores |
| Exhibit A-2 | - | Schedule of Leases; Property Descriptions |
| Exhibit B | - | Allocation Schedule |
| Exhibit D | - | Form of Closing Statement |

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 2330
April 10, 2006
SGR/JAX\95582.1

**EXHIBIT A-1**
**To Amendment to Second Asset Purchase Agreement**

**List of Stores**

| Store No. | Street Address | City | County | State |
|---|---|---|---|---|
| 208 | 5335 Military Trail, Bay 60 | West Palm Beach | Palm Beach | FL |
| 211 | 1885 N. Pine Island Road | Plantation | Broward | FL |
| 339 | 6431 Stirling Road | Davie | Broward | FL |
| 2330 | 1450 N. Courtenay Parkway | Merritt Island | Brevard | FL |

Exhibit A-1

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 2330
April 10, 2006
SGRJAX/65582.1

**EXHIBIT A-2**
To Amendment to Second Asset Purchase Agreement

<u>DESCRIPTION OF LEASES AND RELATED LAND</u>

WINN-DIXIE STORE # 208
West Palm Beach, Florida

<u>Lease</u>:    Lease dated February 26, 1986 between Sabra/SCA Properties, Joint Venture, a Florida general partnership, acting by and through all of its Partners:  Sabra Realty Corporation, a Florida corporation and 45th SC Associates, a Florida corporation, as Landlord, and Winn-Dixie Stores, Inc., as Tenant;

As evidenced by Short Form Lease dated February 26, 1986, recorded in Book 4983, page 1361, of the public records of Palm Beach County, Florida.

<u>Amendments</u>:

Supplemental Lease Agreement dated December 10, 1987, between Sabra/SCA Properties, Joint Venture, a Florida general partnership, acting by and through all of its Partners:  Sabra Realty Corporation, a Florida corporation and 45th SC Associates, a Florida corporation, as Landlord, and Winn-Dixie Stores, Inc., as Tenant;

<u>Premises</u>:    That certain store building and related improvements located at 5335 Military Trail, Bay 60, West Palm Beach, Palm Beach County, Florida.

<u>Legal Description</u>:    The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

<u>Sublease(s)</u>:

None

Exhibit A-2

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. a/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 2330
April 10, 2006
9GRJAX\65662.1

**EXHIBIT A-2 (Cont'd.)**

**LEGAL DESCRIPTION – STORE #208**

TRACTS A, B AND C, THE PLAT OF SOUTH WIND PLAZA, RECORDED IN PLAT BOOK 54, PAGE 108, BEING A REPLAT OF LOTS 3, 4 AND 10, EXCEPTING THE NORTH 17 FEET OF LOTS 3 AND 10 FOR 45TH STREET RIGHT-OF-WAY; THE SOUTH 30 FEET OF LOTS 4 AND 10 FOR DRAINAGE RIGHT-OF-WAY AND THE EAST 3.0 FEET OF LOTS 3 AND 4 FOR MILITARY TRAIL RIGHT-OF-WAY, ADAMS SUBDIVISION, RECORDED IN PLAT BOOK 20, PAGE 23, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

LESS AND EXCEPT THAT PORTION OF LAND FOR STATE ROAD 809 RIGHT-OF-WAY, AS SET FORTH BY STIPULATED ORDER OF TAKING AND FINAL JUDGMENT, FILED MARCH 13, 2001 AND RECORDED IN OFFICIAL RECORD BOOK 12374, PAGE 1971, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

LESS AND EXCEPT THAT PORTION OF LAND FOR STATE ROAD 809 RIGHT-OF-WAY, AS SET FORTH BY AGREED AMENDED ORDER OF TAKING, FILED JULY 13,, 2001 AND RECORDED IN OFFICIAL RECORD BOOK 12725, PAGE 1565, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

Exhibit A-2

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 2330
April 10, 2006
SGRJAX\66562.1

EXHIBIT A-2
To Second Asset Purchase Agreement

DESCRIPTION OF LEASES AND RELATED LAND

WINN-DIXIE STORE #211
1885 N. Pine Island Road, Plantation, Florida

Lease: Lease dated July 27, 1984, between Plantation Square Associates, Ltd., a Florida limited partnership, by Harold S. Wenal and Zaremba Plantation Co., its sole general partners, as Landlord, and Winn-Dixie Stores, Inc. as Tenant

As evidenced by Short Form Lease dated July 27, 1984, recorded in Official Records Book 12255, page 848, Broward County, Florida

Amendments: First Amendment to Lease dated January 5, 1985, between Landlord and Tenant

Premises: That certain store building and related improvements located at 1885 N. Pine Island Road, Plantation, Broward County, Florida

Legal Description: The real property as more particularly described as follows:

Parcel 254 of JACARANDA PARCEL 254, according to the Plat thereof, as recorded in Plat Book 119, page 16, of the Public Records of Broward County, Florida,

Sublease(s):

None

Exhibit A-2

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 2330
April 10, 2006
SGR\JAX\85662.1

EXHIBIT A-2
To Amendment to Second Asset Purchase Agreement

## DESCRIPTION OF LEASES AND RELATED LAND

**WINN-DIXIE STORE #339**
6431 Stirling Road, Davie, Florida

**Lease:**      Lease dated October 17, 1977, between Louis A. Padula, as Trustee, as Landlord, and Winn-Dixie Stores, Inc. as Tenant

As evidenced by Short Form Lease dated October 19, 1977, recorded in Book 7740, page 174, public records of Broward County, Florida

**Amendments:**

Assignment of Leases dated January 7, 1978 between Louis A. Padula and P&L Investments, as Assignor, and Stanley A. Cohen, Trustee, as Assignee

First Amendment to Lease dated July 6, 1978, between City National Bank of Miami, as Trustee, as Landlord and Tenant

Second Amendment to Lease dated June 8, 1979, between Landlord and Tenant

Trustee's Deed dated January 15, 1981, from Landlord to Arolos N.V., a Netherlands Antilles corporation

Third Amendment to Lease dated January 31, 1984, between Arolos N.V., as Landlord, and Tenant

Assignment and Warranty Deed dated March 6, 1984 from Landlord to Edward J. Brenner and Audrey A. Brenner

Fourth Amendment to Lease dated March 26, 1985 between Landlord and Tenant

**Premises:**    That certain store building and related improvements located at 6431 Stirling Road, Davie, Broward County, Florida

**Legal Description:**    The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

**Sublease(s):**

None

Exhibit A-2

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 206, 211, 339 & 2330
April 10, 2006
SGRJAX\85862.1

**EXHIBIT A-2 (Cont'd.)**
**LEGAL DESCRIPTION – STORE #339**

A portion of the following:

The South 220 feet of the East ½ of Tract 16, less the West 120 feet thereof, and the East ½ of Tract 17, less the West 120 feet thereof, of EVERGLADES LAND SALES COMPANY'S SUBDIVISION in Section 34, Township 50 South, Range 41 East, according to the Plat thereof, as recorded in Plat Book 2, Page 34, of the Public Records of Miami-Dade County, Florida, said land located, lying and situate in Broward County, Florida, less a portion thereof described as follows:

Commence at the Southeast corner of said Section 34, Township 50 South, Range 41 East; thence N 01°46'47" W along said Section line, a distance of 98.41 feet; thence S 88°13'13" W to the West right-of-way line of Davie Road Extension, a distance of 20.00 feet for the Point of Beginning; thence S 01°46'47" E along the West right-of-way line of Davie Road Extension, a distance of 78.75 feet; thence S 87°51'36" W along the North right-of-way line of S.R. 848 (Stirling Road), a distance of 520.11 feet; thence N 01°44'05" W, a distance of 35.98 feet; thence N 87°51'36" E, a distance of 481.86 feet; thence N 39°51'13" E, a distance of 57.54 feet to the Point of Beginning, which portion was taken pursuant to Eminent Domain Proceeding, under Civil Action No. 83-09665.

Exhibit A-2

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 2330
April 10, 2006
SGRJAX\55562.1

EXHIBIT A-2
To Second Asset Purchase Agreement

DESCRIPTION OF LEASES AND RELATED LAND

**WINN-DIXIE STORE #2330**
1450 N. Courtenay Parkway, Merritt Island, Florida

**Lease:**     Lease dated December 3, 1987, between On Site Winter Park, Inc., as Landlord, and Winn-Dixie Stores, Inc. as Tenant;

As evidenced by Short Form Lease dated December 3, 1987, recorded in Book 2865, page 988, public records of Brevard County, Florida.

**Amendments:**
Supplemental Lease Agreement dated March 22, 1989, between Landlord and Tenant;

First Amendment to Lease dated July 3, 1996, between EIC-Merritt Island, Limited Partnership, as Landlord and Tenant;

Second Amendment to Lease dated November 1, 1996, between Landlord and Tenant;

Second Supplemental Lease Agreement dated June 26, 2997, between Landlord and Tenant

**Premises:**    That certain store building and related improvements located at 1450 N. Courtenay Parkway, Merritt Island, Brevard County, Florida

**Legal Description:**    The real property as more particularly described as follows:

SEE ATTACHED LEGAL DESCRIPTION

**Sublease(s):**

None

Exhibit A-2

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 2330
April 10, 2006
SGR\JAX\95562.1

**EXHIBIT A-2 (Cont'd.)**
**LEGAL DESCRIPTION – STORE #2330**

THAT PORTION OF LOTS 7, 8, 11 AND 12, NEVIN'S SUBDIVISION, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 2, PAGE 98, PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA, LYING WEST OF DIANA SHORES, UNIT FOUR, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 21, PAGE 75, PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA, LYING NORTH OF ARTEMIS BOULEVARD, SOUTH OF DIANA BOULEVARD, AND EAST OF STATE ROAD #3 (NORTH COURTENAY PARKWAY), LESS AND EXCEPT THAT PROPERTY DESCRIBED IN OFFICIAL RECORDS BOOK 2644, PAGE 677 AND OFFICIAL RECORDS BOOK 1049, PAGE 638, BOTH IN THE PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

A PARCEL OF LAND LYING IN SECTION 23, TOWNSHIP 24 SOUTH, RANGE 36 EAST, BREVARD COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGIN AT THE NORTHWEST CORNER OF LOT 1, BLOCK D OF "DIANA SHORES UNIT NO. 1" AS RECORDED IN PLAT BOOK 20, PAGE 24 OF THE PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA; THENCE SOUTH 00°16'54" EAST, ALONG THE WEST LINE OF SAID BLOCK D OF "DIANA SHORES UNIT NO. 1" A DISTANCE OF 614.71 FEET TO A POINT ON THE WEST LINE OF BLOCK D, "DIANA SHORES UNIT NO. 4" AS RECORDED IN PLAT BOOK 21, PAGE 17, OF SAID PUBLIC RECORDS; THENCE ALONG SAID WEST LINE OF BLOCK D FOR THE NEXT THREE (3) COURSES TO WIT: SOUTH 89°49'12" WEST, A DISTANCE OF 2.21 FEET, SOUTH 08°03'04"WEST, A DISTANCE OF 192.22 FEET, SOUTH 00°21'06" EAST, A DISTANCE OF 439.91 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF ARTEMIS BOULEVARD PER SAID PLAT, THENCE ALONG SAID NORTHERLY RIGHT-OF-WAY LINE FOR THE NEXT THREE (3) COURSES TO WIT: SOUTH 89°44'15" WEST, A DISTANCE OF 350.15 FEET; NORTH 00°22'04" WEST, A DISTANCE OF 10.00 FEET; SOUTH 89°45'35" WEST, A DISTANCE OF 97.45 FEET; THENCE NORTH 02°27'48" WEST, A DISTANCE OF 207.82 FEET; THENCE SOUTH 87°32'12" WEST A DISTANCE OF 201.40 FEET TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF STATE ROAD NO. 3; THENCE NORTH 02°27'48" WEST, ALONG SAID EASTERLY RIGHT-OF-WAY LINE A DISTANCE OF 503.12 FEET; THENCE NORTH 87°32'12" EAST A DISTANCE OF 182.62 FEET; THENCE NORTH 02°27'48" WEST, A DISTANCE OF 150.94 FEET; THENCE NORTH 89°47'08" EAST, A DISTANCE OF 127.70 FEET; THENCE NORTH 02°27'48"WEST A DISTANCE OF 375.01 FEET TO A POINT ON THE SOUTHERLY RIGHT-OF-WAY LINE OF DIANA BOULEVARD PER THE AFORESAID PLAT OF "DIANA SHORES UNIT NO. 1"; THENCE NORTH 89°47'08" EAST, ALONG SAID SOUTHERLY RIGHT-OF-WAY LINE, A DISTANCE OF 415.53 FEET TO THE POINT-OF-BEGINNING.

Exhibit A-2

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 2330
April 10, 2005
SGRJAX\55582.1

**EXHIBIT B**
**To Amendment to Second Asset Purchase Agreement**

Allocation Schedule

| Store No. | Store Location | Purchase Price | Initial Deposit [1] | Second Deposit [2] |
|---|---|---|---|---|
| 208 | West Palm Beach, FL | $11,500.00 | $11,500.00 | $0.00 |
| 211 | Plantation, FL | $1,176,000.00 | $117,600.00 | $235,200.00 |
| 339 | Davie, FL | $1,001,000.00 | $100,100.00 | $200,200.00 |
| 2330 | Merritt Island, FL | $11,500.00 | $11,500.00 | $0.00 |
| | | | | |
| TOTAL | | $2,200,000.00 | $240,700.00 | $435,400.00 |
| Credit | | | ($260,000.00) | |
| Net Owed | | | ($19,300.00) | |

[1]  The Initial Deposit for each Store shall be the greater of (i) $35,000 or (ii) 10%
of the Purchase Price for such Store.

[2]  The Second Deposit for each Store shall be the greater of (i) $65,000, or (ii)
20% of the Purchase Price for such Store.

EXHIBIT B
Page 1 of 1

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 2330
April 10, 2006
SGR\JAX\05562.1

**EXHIBIT D**
**To Second Asset Purchase Agreement**

Form of Closing Statement

(Excel Spreadsheet Schedule D.XLS)

[ATTACHED BELOW]

Exhibits to First Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, LLC
Store Nos. 208, 211, 339 & 2330
April 10, 2006
SGRJAX65582.1

**Exhibit D – Form of Closing Statement**

## CLOSING STATEMENT

**SELLER/ASSIGNOR:** Winn-Dixie _____, Inc., a Florida corporation

**BUYER/ASSIGNEE:**

**TRANSACTION:** Acquisition of Leasehold Interests and Related Assets

**PURCHASE PRICE:**

| | | |
|---|---|---|
| Store # _____ | $ | - |
| Store # _____ | $ | - |

**TOTAL PURCHASE PRICE:** $ -

**CLOSING DATE:** _____, 2006

### SELLER'S STATEMENT

| | | |
|---|---|---|
| **Purchase Price:** | | $ - |
| **Total Purchase Price:** | | $ - |
| **Less Adjustments:** | | |
| 1. Seller's Prorated Share of Taxes and Other Charges Payable Under Leases (1) | $ - | |
| Total Adjustments: | $ - | $ - |
| | | |
| **Plus Adjustments:** | | |
| 1. Seller's Prorated Share of _____ 2006 Rents, and Other Charges Paid in Advance Under Leases (2) | $ - | |
| Total Adjustments: | $ - | $ - |
| **Less Closing Costs to be Paid by Seller:** | | |
| 1. Seller's Attorneys' Fees & Costs (Smith, Gambrell & Russell, LLP) | P.O.C. | |
| 2. Seller's Brokers Fees (The Food Partners) | P.O.C. | |
| 3. Seller's Brokers Fees (DJM Asset Management, LLC) | P.O.C. | |
| Total Seller's Closing Costs: | P.O.C. | P.O.C. |
| **TOTAL AMOUNT DUE TO SELLER:** | | $ - |

Exhibit I-1
1 of 6

60391

Closing Statement
Winn-Dixie Stores, Inc. S/T_____
5/13/2006

## BUYER'S STATEMENT

| | | |
|---|---|---|
| **Purchase Price:** | | $   - |
| **Total Purchase Price:** | | $   - |
| **Less Adjustments:** | | |
| 1.  Earnest Money Deposit with Escrow Agent | $   - | |
| 2.  Seller's Prorated Share of Taxes and | | |
|      Other Charges Payable Under Leases (1) | $   - | |
|        **Total Adjustments:** | $   - | $   - |

**Plus Adjustments:**

| | | |
|---|---|---|
| 1.  Seller's Prorated Share of _____ 2006 | | |
|      Rents, and Other Charges Paid in Advance | | |
|      Under Leases (3) | $   - | |
|        **Total Adjustments:** | $   - | $   - |

**Plus Closing Costs to be Paid by Buyer:**

| | | |
|---|---|---|
| 1.  Buyer's Attorney's Fees & Costs | P.O.C. | |
| 2.  Title Examination/Commitment Fees (3) | $   - | |
|      (First American Title Insurance Company) | | |
| 3.  Title Insurance Premiums (Leasehold) (3) | $   - | |
|      (First American Title Insurance Company) | | |
| 4.  Recording/Filing Fees | $   - | |
|      (First American Title Insurance Company) | | |
| 6.  Surveyor's Fees (4) | $   - | |
|      (_____) | | |
| 7.  Environmental Site Assessment Fees | $   - | |
|      (_____) | | |
| 8.  Documentary/Transfer Taxes | $   - , | |
|      (First American Title Insurance Company) | | |
|        **Total Buyer's Closing Costs:** | $   - | $   - |
| **AMOUNT DUE FROM BUYER:** | | $   - |
| **DEPOSIT DUE FROM ESCROW AGENT:** | | $   - |
| **TOTAL AMOUNT DUE AT CLOSING:** | | $   - |

The undersigned parties acknowledge and agree to the foregoing Closing Statement as of this _____ day of _____, 2006, and hereby authorize Smith, Gambrell & Russell, LLP, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER/ASSIGNOR:**

**WINN-DIXIE _____, INC.,** a Florida corporation

By:_____

Name:_____

Title: _____ President

**BUYER/ASSIGNEE:**

_____

a _____ corporation

By:_____

Name:_____

Title: _____ President

60391

Exhibit I-1
3 of 6

Closing Statement
Winn-Dixie Stores, Inc. S/T_____
5/13/2006

**Notes:**

(1) 2006 Prorations – Amounts Not Yet Paid and Payable.  Prorations are based on (i) estimate of 2006 real estate taxes derived from actual 2005 amounts paid by Seller in arrears in accordance with leases; and (ii) estimate of 2006 common area maintenance charges derived from actual 2005 amounts paid by Seller in arrears in accordance with applicable leases.  All prorated amounts are hereby stipulated as final, and shall not be subject to readjustment after closing, notwithstanding that actual amounts when available may differ from the stipulated amounts herein.  Buyer shall be responsible for the payment of such charges for 2006 and accruing from and after the closing date and subsequent years.  Prorations are as follows:

**Real Estate Taxes**

Store # _____                                                                          Totals
- 2006 Real Estate Taxes (estimate)          $          -
- Per Diem Tax Amount                         $          -
- Seller's Share of 2006 Taxes
   (__/__/06 - __/__/06) (_____ days)         $ _____ -    $          -
Store # _____
- 2006 Real Estate Taxes (estimate)          $          -
- Per Diem Tax Amount                         $          -
- Seller's Share of 2006 Taxes
   (__/__/06 - __/__/06) (_____ days)         $ _____ -    $          -
**Total Real Estate Taxes:**                                  $          -

**Personal Property Taxes**

Store # _____
- 2006 Personal Property Taxes (estimate)    $          -
- Per Diem Tax Amount                         $          -
- Seller's Share of 2006 Taxes
   (__/__/06 - __/__/06) (_____ days)         $ _____ -    $          -
Store # _____
- 2006 Personal Property Taxes (estimate)    $          -
- Per Diem Tax Amount                         $          -
- Seller's Share of 2006 Taxes
   (__/__/06 - __/__/06) (_____ days)         $ _____ -    $          -
**Total Personal Property Taxes:**                           $          -

**CAM Charges**

Store # _____
- 2006 CAM Charges                           $          -
- Per Diem Amount                            $          -
- Seller's Share of 2006 CAM Charges
   (__/__/06 - __/__/06) (_____ days)         $ _____ -    $          -
Store # _____
- 2006 CAM Charges                           $          -
- Per Diem Amount                            $          -
- Seller's Share of 2006 CAM Charges
   (__/__/06 - __/__/06) (_____ days)         $ _____ -    $          -

**Total CAM Charges:**                                       $          -

**Total Amount of Seller's Prorated Share
   of 2006 Prorations:**                                     $          -

(2) <u>2006 Prorations - Amounts Previously Paid by Seller</u>. Prorations are based on _____, 2006 rents, insurance and other charges previously paid by Seller in accordance with applicable leases.  Buyer shall be responsible for the payment of such charges that become due and payable for _____, 2006 and thereafter. Prorations are as follows:

**Rent**
Store # _____                                                                                      <u>Totals</u>
- Total _____, 2006 rent paid:            $ _____ -
- Per diem rent:                                          $ _____ -
- Buyer's prorated share
  (__/__/06 - __/__/06) (_____ days)          $ _____ -      $ _____ -
Store # _____
- Total _____, 2006 rent paid:            $ _____ -
- Per diem rent:                                          $ _____ -
- Buyer's prorated share
  (__/__/06 - __/__/06) (_____ days)          $ _____ -      $ _____ -
  **Total Amount of Buyer's Prorated Share of Prorations:**        $ _____ -

(3) <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

Store # _____                                                                                      <u>Totals</u>
- Title Search Fees and Costs                      $ _____ -
- Title Premium                                          $ _____ -      $ _____ -

Store # _____
- Title Search Fees and Costs                      $ _____ -
- Title Premium                                          $ _____ -      $ _____ -
  **Total Amount of Title Fees and Expenses:**                      $ _____ -

(4) <u>Survey Fees</u>.  Survey fees are as follows:
Store # _____                                           $ _____ -
Store # _____                                           $ _____ -
   **Total Survey Fees:**                                                 $ _____ -

(5) <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller directly by the respective utility companies.  Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof.  Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof.  The party responsible for each share of such utility charges shall pay such charges promptly and without demand therefor.  Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6) <u>Capitalized Terms</u>.  Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

RECEIPTS:

1. Deposit Due from Escrow Agent     $     -
2. Cash Due from Buyer     $     -

TOTAL CASH RECEIVED:     $     -     $     -

DISBURSEMENTS:

1. _____     $     -
   (Survey Fees)
2. _____     $     -
   (Environmental Site Assessment Fees)
3. First American Title Insurance Company     $     -
   (Title Premium & Costs, Taxes and Recdg.)
4. Winn-Dixie Stores, Inc.     $     -
   (Seller's Proceeds)

TOTAL DISBURSEMENTS:     $     -

Store Nos.
208
211
339
2330

## SECOND AMENDMENT TO SECOND ASSET PURCHASE AGREEMENT
[Sunrise Properties, LLC]

**THIS SECOND AMENDMENT TO SECOND ASSET PURCHASE AGREEMENT** (this "Amendment") is made effective as of April 10, 2006 by and between

**WINN-DIXIE STORES, INC.,** a Florida corporation ("Seller"), and

**SUNRISE PROPERTIES, LLC,** a Florida limited liability company, or its permitted assignee pursuant to paragraph 17.5 of the Agreement (as defined in paragraph A below)("Buyer").

### RECITALS

A.     Seller and Buyer entered into that certain Second Asset Purchase Agreement (the "Agreement") dated April 10, 2006, concerning the purchase of certain Winn-Dixie Stores identified as #208, #211, #339 and #372.

B.     Seller and Buyer entered into that certain First Amendment to Second Asset Purchase Agreement dated April 10, 2006 (the "First Amendment"), concerning the purchase of certain Winn-Dixie Stores identified as #208, #211, #339, and #2330.

C.     In accordance with paragraph 17.6 of the Agreement, the parties desire to amend the Agreement and the First Amendment to revise the Purchase Price and allocation thereof in accordance with the provisions of the Agreement, First Amendment, and this Amendment.

### AGREEMENT

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     Recitals.  Buyer and Seller confirm the accuracy of the foregoing Recitals.

2.     Capitalized Terms.  All capitalized terms used and not otherwise defined herein will have the meaning ascribed to them in the Agreement.

3.     Amendment to paragraph 3.1.  That portion of paragraph 3.1 of the Agreement is further amended to change "...the fixed sum of Two Million Two Hundred Thousand ($2,200,000.00) Dollars..." to "...the fixed sum of Two Million ($2,000,000.00) Dollars...."

4.     Amendment to Exhibits.  Exhibit B of the Agreement is hereby amended and replaced in its entirety by the exhibit attached hereto and identified by the same corresponding reference.

5.    <u>Miscellaneous</u>.  All other terms of the Agreement will remain in full force and effect consistent with the terms of this Amendment.  If any inconsistency should occur between the terms thereof, the terms of this Amendment will govern and prevail.

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Amendment as of the Effective Date of the Agreement.

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

Name:  SUSAN E. MAGADDINO

Name:  CATHERINE B. IBOLD

**SELLER:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

By:
Name:  LAURENCE B. APPEL
Title:  SENIOR VICE PRESIDENT

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

Name:  Marie Mills

Name:  Keyla Whitaker

**BUYER:**

**SUNRISE PROPERTIES, LLC,**
a Florida limited liability company

By:
Name:  Esmail Mobarak
Title:  Member

LEGAL APPROVED
ATTY: ___
DATE: 5/23/06

Reviewed By
___
XRoads
Date: _____

Second Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\86159.1

2

Acknowledged and agreed this _____ day of May, 2006 for the limited purposes set forth in paragraph 18.0 of the Agreement:

**ESCROW AGENT:**

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
Name: Douglas G. Stanford
Title:  Partner

### LIST OF EXHIBITS

Exhibit B      -      Allocation Schedule

Second Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\86159.1

3

**EXHIBIT B**
**To Second Amendment to Second Asset Purchase Agreement**

**Allocation Schedule**

| Store No. | Store Location | Purchase Price | Initial Deposit [1] | Second Deposit [2] |
|---|---|---|---|---|
| 208 | West Palm Beach, FL | $5,000.00 | $5,000.00 | $0.00 |
| 211 | Plantation, FL | $1,000,000.00 | $100,000.00 | $200,000.00 |
| 339 | Davie, FL | $990,000.00 | $99,000.00 | $198,000.00 |
| 2330 | Merritt Island, FL | $5,000.00 | $5,000.00 | $0.00 |
| | | | | |
| TOTAL | | $2,000,000.00 | $209,000.00 | $398,000.00 |
| Credit | | | ($260,000.00) | ($51,000.00) |
| Net Owed | | | ($51,000.00) | $347,000.00 |

[1]  The Initial Deposit for Stores #211 and #339 will be 10% of the Purchase Price for each Store and the Initial Deposit for Stores #208 and #2330 will be $5,000.00 for each Store.

[2]  The Second Deposit for Stores #211 and #339 will be 20% of the Purchase Price for such Store.

Second Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\86159.1

4

Store Nos.
208
211
339
2330

## THIRD AMENDMENT TO SECOND ASSET PURCHASE AGREEMENT
## AND OBJECTION RESOLUTION AGREEMENT
[Sunrise Properties, LLC]

**THIS THIRD AMENDMENT TO SECOND ASSET PURCHASE AGREEMENT AND OBJECTION RESOLUTION AGREEMENT** (this "Amendment") is made effective as of May 19, 2006, by and between the following parties (collectively referred to as the "Parties"):

**WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller");

**SUNRISE PROPERTIES, LLC**, a Florida limited liability company, or its permitted assignee pursuant to paragraph 17.5 of the Agreement (as defined in paragraph A below)("Buyer");

**GATOR JACARANDA, LTD.**, a Florida limited partnership ("Store 211 Landlord"); and

**GATOR CARRIAGE PARTNERS, LTD.**, a Florida limited partnership ("Store 339 Landlord") (Store 211 Landlord and Store 339 Landlord being collectively referred to as the "Landlords").

## RECITALS

A.      Seller and Buyer entered into that certain Second Asset Purchase Agreement dated April 10, 2006 (the "Agreement")concerning the purchase of certain former Winn-Dixie Stores identified as #208, #211, #339 and #372.

B.      Following the Auction, Seller determined that Buyer was the Successful Bidder for certain former Winn-Dixie Stores identified as #208, #211, #339, and #2330 (collectively, the "Sunrise Stores." and Seller and Buyer entered into that certain First Amendment to Second Asset Purchase Agreement effective as of April 10, 2006 (the "First Amendment") concerning the purchase of the Sunrise Stores.

C.      At the Sale Hearing on purchase of the Sunrise Stores by Buyer, Landlords objected (the "Objection") with respect of the sale to Buyer of the Assets related to Sunrise Stores #211 and #339.

D.      In order to preserve the majority of its agreement with Seller for the purchase of the Sunrise Stores, Buyer and Landlords reached an agreement to settle, resolve, and secure the withdrawal of the Objection (the "Resolution").

E.      As a first step in facilitating the Resolution, Seller and Buyer previously have entered into that certain Second Amendment to Second Asset Purchase Agreement dated as of April 10, 2006 (the "Second Amendment") concerning the reduction of the Purchase Price for the Sunrise Stores and the reallocation of such Purchase Price to the Sunrise Stores to be consistent with the Resolution.

F.      To further facilitate the Resolution, and in accordance with paragraph 17.6 of the Agreement, the Parties now desire to amend the Agreement, the First Amendment, and the Second Amendment (the "Controlling Documents") (i) to revise the terms of the Controlling Documents consistent and in accordance with the provisions of this Amendment as related to the sale of Sunrise Store #211, (ii) to recite the terms of the Resolution relating to the terms of the Sunrise Store #339 Lease to be reflected in a subsequent amendment thereto between Buyer and Store 339 Landlord and (iii) to otherwise document the Resolution.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Recitals. The Parties confirm that the foregoing Recitals are true and correct and incorporate them herein by reference.

2.      Capitalized Terms. All capitalized terms used and not otherwise defined herein will have the meaning ascribed to them in the Agreement.

3.      Assignment and Assumption – Sunrise Store #211.    Buyer agrees to, and does hereby, subject only to the terms of this Amendment and the entry of an order of the Bankruptcy Court approving the sale of the Sunrise Stores as reflected in the Controlling Documents as amended by this Amendment (the "Sunrise Sale Order Entry"), assign the right to purchase the Sunrise Store #211 Assets to a designee of the Store 211 Landlord. Seller, subject only to the terms of this Amendment and the Sunrise Sale Order Entry, consents to such assignment.

4.      Sunrise Store #211 Closing. The Parties agree that (i) all Conditions to the Closing of Sunrise Store #211 under paragraph 11.0 of the Agreement are waived, and (ii) Store 211 Landlord has confirmed in writing to Seller and Buyer the identity of its designee to receive assignment of the Sunrise Store #211 under paragraph 3 of this Amendment. The Parties agree that the Closing Date for Sunrise Store #211 will be Thursday, May 25, 2006.

5.      Lease Amendment - Sunrise Store #339 Lease. Following Closing of Buyer's purchase of Sunrise Store #339, Buyer and Store 339 Landlord agree to enter into an amendment of the Sunrise Store #339 Lease reflecting the terms set forth in the attached Exhibit A.

6.      Notice to Landlords. The provisions of paragraph 18.1 of the Agreement are hereby supplemented to provide the following addresses for the provision of notice to Landlords:

If to Landlords:

Gator Jacaranda Partners, Ltd./Gator Carriage Partners, Ltd.
1595 NE 163rd Street
North Miami Beach, Florida  33162-4717

Third Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\86235.6

2

Attn: James Goldsmith
Telefax No.: 305-948-6478
e-mail: *jag9488@aol.com*

With a copy to:

Frost Brown Todd LLC
220 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202-4182
Attn: Kyle R. Grubbs, Esquire
Telefax: 513-651-6981
e-mail: *kgrubbs@fbtlaw.com*

    7.    <u>Miscellaneous</u>.  All other terms of the Controlling Documents, which by this reference are deemed incorporated herein, will remain in full force and effect consistent with the terms of this Amendment.  If any inconsistency should occur between the terms thereof and the terms of this Amendment, the terms of this Amendment will govern and prevail.

[SIGNATURES FOLLOW BELOW]

Third Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\86235.6

3

**IN WITNESS WHEREOF**, the Parties have executed this Amendment to take effect as of the Effective Date above.

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

_____

By: _____

Name: _____

Name: _____

Title: _____

_____

Name: _____

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**BUYER:**

**SUNRISE PROPERTIES, LLC,**
a Florida limited liability company

_____

By: _____

Name: _____

Name: _____

Title: _____

_____

Name: _____

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**STORE 211 LANDLORD:**

**GATOR JACARANDA, LTD.,**
a Florida limited partnership

By:    GATOR JACARANDA SQUARE, INC.,
       a Florida corporation

_____

Name: _____

       By:    _____

_____

       Name: _____

Name: _____

       Title: _____

Signed, sealed and delivered
in the presence of the following
subscribing witnesses:

**STORE 339 LANDLORD:**

**GATOR CARRIAGE PARTNERS, LTD.,**
a Florida limited partnership

By:    GATOR CARRIAGE INVESTORS, INC.,
       a Florida corporation

_____

Name: _____

       By:    _____

_____

       Name: _____

Name: _____

       Title: _____

Third Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\86235.6

4

Acknowledged and agreed this 22nd day of May, 2006 for the limited purposes set forth in paragraph 18.0 of the Agreement:

**ESCROW AGENT:**

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
Name: Douglas G. Stanford
Title:   Partner

Third Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
SGRJAX\86235.6

5

**EXHIBIT "A"**

**TERMS FOR MODIFICATION OF STORE 339 LEASE**

1.  Lease in Full Force. Store 339 Landlord and World Market Place, LLC ("Tenant") agree that the SunriseStore 339 Lease (for the purpose of this Exhibit "A," the "Lease") remains in full force and effect, as specifically modified by this modification agreement. Store 339 Landlord consents to the assignment of the Lease to World Market Place LLC (a Sunrise Affiliate, and for the purposes of this Exhibit "A." "Tenant") and to Tenant's use of the leased premises as provided in the Lease. Except as expressly modified herein, the terms and conditions of the Lease shall remaining in full force and effect, without modification or amendment. In the event of any conflict between the terms of this modification agreement and the Lease, the terms of this modification agreement shall govern. Any capitialized terms not otherwise defined in this Exhibit "A" shall have the meanings ascribed to them in the Amendment to which this Exhibit "A" is attached.

2.  Exercise of Initial Extension Option. Tenant shall be deemed to have immediately exercised the initial five-year extension. Store 339 Landlord hereby accepts and acknowledges the proper exercise of the initial five-year extension to the term of the Lease.

3.  Cooperation Regarding Signs and Permits. Store 339 Landlord agrees to cooperate, reasonably and in good faith, in connection with the Tenant's efforts to obtain construction permits, sign permits and similar applications and governmental approvals in connection with the opening of the Sunrise Store 339 for a use provided in the Lease, including without limitation, promptly signing appropriate permit applications, provided that any and all of the same are without fee, cost, expense or liability to Store 339 Landlord, except as may otherwise be provided in the Lease.

4.  Roof Repairs. Store 339 Landlord, at Store 339 Landlord's sole expense, shall promptly repair the roof of Sunrise Store 339, including the interior ceiling tile. Store 339 Landlord shall proceed in good faith, in a commercially reasonable manner, in order to complete the repairs as quickly as commercially reasonable. Tenant will receive an abatement of rent until the roof and ceiling tiles are completely repaired or restored. Only upon completion of the roof repair, and proper inspection thereof, Tenant shall begin payment of rent.

5.  Consent to Professional and Retail Offices in Center. The Tenant agrees that any restrictions in the Lease on the amount of professional and retail office space permitted in the Carriage Hills Shopping Center ("Center") are hereby made null and void and without any further force or effect. For the purpose of avoiding confusion, this agreement does not permit Store 339 Landlord to undertake the building of a new office building at the Center.

6.  Development of Corner Outparcel. Store 339 Landlord shall have the right to construct and maintain improvements on the existing outparcel of the Center. Store 339 Landlord shall submit a site plan for such improvements to Tenant for Tenant's approval, which approval shall not be unreasonably delayed, conditioned or withheld. Reasonable reasons for withholding consent and approval are materially blocking the view of Store 339 from the road, the blocking of ingress and egress to the Center

Third Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
**Error! Unknown document property name.**

which materially and adversely impairs the Tenant's ability to conduct Tenant's business, as provided in the Lease, in the Sunrise Store 339, and the material loss of necessary parking spaces.

7.    <u>Personal Guaranty</u>.  Esmail Mobarak shall provide a personal guaranty of the Tenant's obligations under the Lease in form and content as attached to this modification.

8.    <u>Increase in Rent</u>.  The Monthly Minimum Guaranteed Rental (as defined in the Lease) is increased by ($5,600.00) per month to a total Monthly Minimum Guaranteed Rental of $18,678.42plus applicable sales tax, commencing June 1, 2006 and continuing throughout the term of the Lease, and all option, renewal and extension terms, if any.  In addition, on June 1 of each year of the Lease, the amount of the Monthly Minimum Guaranteed Rental shall be increased by the percentage increase of the Consumer Price Index (i.e., Bureau of Labor Statistics, or successor, CPI-U 1982-1984 = 100) for the most recent 12 month period available as of such June 1, applied to the sum of $5,600.00.  (To avoid any confusion, only the $5,600.00 amount of the Monthly Minimum Guaranteed Rental is subject to the Consumer Price Index adjustment, not the entire Monthly Minimum Guaranteed Rental.)  Such CPI increases shall also apply to any option, renewal or extension terms, if any.  As an example, if the CPI-U increased 3% from June 1, 2006 through May 31, 2007, the new Monthly Minimum Guaranteed Rental commencing June 1, 2007 would be the sum of $18,846.42.

9.    <u>Junior Lien on Equipment or Letter of Credit</u>.  The Tenant shall use reasonable, good faith efforts to obtain the consent of Tenant's bank or other primary, commercial lending institution (collectively, the "Bank"), for permission to grant Store 339 Landlord a junior security interest in the Tenant's equipment located on the leased premises in order to secure the Tenant's obligations to Store 339 Landlord pursuant to the Lease.  The parties understand that the lien granted to the Landlord shall be expressly junior and subordinate to the lien granted by the Tenant to the Bank from time to time.  Store 339 Landlord shall agree, from time to time, to execute a subordination agreement in favor of the Bank, in from and content reasonably satisfactory to the Bank.  If the Tenant is unable to obtain the consent of the Bank for such junior lien in favor of the Landlord, then, as an alternative, the Tenant shall post a standby letter of credit in the amount of  $220,000.00, to secure Tenant's obligations under the Lease.  The standby letter of credit shall remain in effect (or be renewed annually) for a period of the first five (5) years following the assignment of the Lease.  The letter of credit shall be in form and content and issued by a bank, reasonably acceptable to Store 339 Landlord.  The parties agree that in the event that the Tenant sells the store (including a sale of its assets) in connection with an assignment of the Lease, that Store 339 Landlord's junior lien on the equipment shall not interfere with Tenant's ability to sell the assets, provided that the purchaser, in connection with the assumption of the Lease, grants Store 339 Landlord a similar lien or provides a similar letter of credit.  This lien shall not restrict or interfere with the Tenant's ability to replace older equipment in the ordinary course of business and to use the proceeds from the sale or trade-in of old equipment to purchase new equipment.  This provision shall not restrict or interfere with the Tenant's ability, from time to time, to refinance its loans or change primary commercial lenders, with the new lender being treated as the Bank.

Third Amendment to Second Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Sunrise Properties, Inc.
Store Nos. 208, 211, 339, & 2330
April 10, 2006
**Error! Unknown document property name.**

2

## GUARANTY AGREEMENT

This Guaranty Agreement ("Guaranty") made and executed this _____ day of May, 2006, by Esmail Mobarak, individually (hereinafter referred as "Guarantor"),

### WITNESSETH:

WHEREAS, World Market Place, LLC, a Florida limited liability company (herein called the "Tenant"), and Gator Carriage Partners, Ltd., a Florida limited partnership (herein called the "Landlord") have succeeded to their respective positions of Tenant and Landlord pursuant to a certain Lease Agreement ("Original Lease") dated October 19, 1977, as amended, modified and extended; and

WHEREAS, Tenant and Landlord are contemporaneously entering into a modification to the Lease (the Original Lease as amended by the said modification of this date are herein collectively called the "Lease'); and

WHEREAS, in order to induce the Landlord to enter into the contemporaneous modification to the Lease, the Guarantor has agreed to guarantee the payment and performance of all Tenant's obligations under the Lease; and

WHEREAS, Guarantor directly or indirectly owns a majority of the legal and beneficial interests in Tenant;

NOW THEREFORE, in consideration of the execution and delivery of the said contemporaneous modification to Lease by the Landlord, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged the Guarantor hereby agrees as follows:

1.      The Guarantor does hereby unconditionally and irrevocably guarantee to the Landlord the due and punctual payment and performance by the Tenant of all of Tenant's obligations to Landlord under the Lease.

2.      This Guaranty shall be absolute, continuing and unlimited, and the Landlord shall not be required to take any proceedings against the Tenant, or give any notice to the undersigned before the Landlord has the right to demand payment of performance by the undersigned upon default by the Tenant. This Guaranty and the liability of the undersigned hereunder shall in no way be impaired or affected by any assignment which may be made of the Lease, or any subletting thereunder, or by any extension(s) of the payment of any rental or any other sums provided to be paid by Tenant, or by any forbearance or delay in enforcing any of the terns, conditions, covenants or provisions of the Lease or any amendment, modification of revision of the Lease.

3.      No action or proceeding brought or instituted under this Guaranty against the undersigned, and no recovery had in pursuance thereof shall be any bar or defense to any further action or proceeding which may be brought under this Guaranty by reason of any further default or defaults of Tenant.

4.      The Liability of the undersigned shall not be deemed to be waived, released, discharged, impaired or affected by reason of the release or discharge of the Tenant by any creditors, receivership, bankruptcy (or reorganization proceedings under the Bankruptcy Act) or other proceedings, or the rejection or disaffirmance of the Lease in any proceedings.

5.      There shall be no modification of the provisions of this Guaranty unless the same be made in writing and signed by the undersigned and the Landlord.

6.      All of the terms, agreements and conditions of the Guaranty shall extend to and be binding upon the Guarantor, his heirs, personal representatives, administrators, estate, successors and assigns, and shall inure to the benefit of the Landlord, its successors and assigns.

7.      <u>Attorney's Fees</u>. If Landlord takes any action or participates in any proceeding to enforce the Lease, this Guaranty, or to protect Landlord's rights hereunder or thereunder (including, but not limited to bankruptcy, appellate, and post judgment proceedings), the undersigned shall pay to Landlord all costs and expenses, including reasonable attorney's fees, incurred or expended by Landlord in connection therewith.

8.    <u>Satisfaction of Personalty Loans</u>.    In the event that Landlord takes possession of any of the furniture, furnishings, equipment or other personal property of Tenant, Guarantor shall forthwith pay off any loan secured by any of the same and remove by prompt and full payment any lien or possessory right on or in such personalty in favor of any party other than Landlord.

9.    <u>**Waiver of Jury Trial**</u>.    **As a further and material inducement to Landlord to modify the Lease, upon which Landlord has relied, and in consideration thereof, Guarantor hereby covenants and agrees that, except as prohibited by law, in any action, lawsuit, proceeding or counterclaim (collectively, "Litigation") brought or asserted by the Landlord, Tenant or Guarantor, or any combination of them, against any one or more of the others on any matter or matters arising out of, under, by virtue of or related to the premises demised by the Lease, or the use thereof, or the Lease, or this Guaranty of the Lease, or any agreement or instrument to be executed or delivered in conjunction with any term of any of them, or any relationship, course of conduct, course of dealing , statements ( whether verbal or written) or any actions of any party, the Guarantor shall and does hereby knowingly, voluntarily, intentionally, irrevocably and expressly waive any right to any trial by jury. If the subject matter of any such Litigation is one in which the waiver of a jury trial is prohibited, the Guarantor shall not present as a non-compulsory counterclaim in such Litigation, any claim arising out of, under, by virtue of, or related to the Premises, or the use thereof, the Lease, the aforedescribed contemporaneous modification of the Lease, or this Guaranty of the Lease, or any agreement to be executed in conjunction with, or any term of, any of them, or any course of conduct, course of dealing, statements (whether verbal or written) any actions of any party, or any term of any of them.    Furthermore, the Guarantor shall not seek to consolidate any such action, in which a jury trial has been waived, with any such action in which a jury trial cannot be waived. Guarantor hereby certifies that no representative, attorney or agent of the Landlord has represented expressly or otherwise, that the Landlord will not, in the event of such Litigation, seek to force this waiver of right to jury trial provision.    This section has been fully discussed by the Tenant, the Guarantor and Landlord, each of whom has been represented by counsel, and this section shall not be subject to any exceptions.**

10.    In the event that Tenant subsequently transfers and assigns Tenant's interest under the Lease in connection with the sale of the store, provided that no default or event of default exists at that time, Mr. Mobarak shall be released from his personal guaranty, provided that the new tenant provides the substitute personal guaranty of the new controlling shareholder of the assignee. Store 339 Landlord agrees to cooperate reasonably and in good faith in connection with the substitute of a replacement guaranty in connection with Tenant's sale and transfer of the Lease and business.

**[Signature of Guarantor, Esmail Mobarak, is on the following page]**

WITNESSES:                                          GUARANTOR: Esmail Mobarak, individually


_____                    _____
Printed Name:_____                              Esmail Mobarak, individually
                                                   Dated: _____


_____
Printed Name:_____                     Address:_____
                                                   _____