INDEX TO LEASE AGREEMENT

LANDLORD: THE MITCHELL COMPANY, INC.

TENANT: DELCHAMPS, INC.

SHOPPING CENTER: PASS CHRISTIAN VILLAGE

LOCATION: PASS CHRISTIAN, MISSISSIPPI

DATE OF LEASE: April 27, 1994

| Paragraph | | Page No. |
|---|---|---|
| 1. | Rent and Notices | 1 |
| 2. | Landlord's Construction and Commencement of Rent | 2 |
| 3. | Plans and Specifications | 3 |
| 4. | Shopping Center and Common Areas | 4 |
| 5. | Renewal Options | 5 |
| 6. | Landlord's Title | 5 |
| 7. | Assignment, Subletting and Concessions | 5 |
| 8. | Surrender | 6 |
| 9. | Repairs and Maintenance | 6 |
| 10. | Tenant's Equipment and Trade Fixtures | 6 |
| 11. | Landlord's Failure to Repair | 7 |
| 12. | Emergency Repairs | 7 |
| 13. | Tenant's Alterations | 8 |
| 14. | Utilities | 8 |
| 15. | Indemnity | 8 |
| 16. | Inspection Rights | 8 |
| 17. | Events of Casualty and Insurance | 8 |
| 18. | Waiver of Subrogation | 9 |
| 19. | Eminent Domain | 10 |
| 20. | Exclusive | 10 |
| 21. | Attorneys' Fees | 11 |
| 22. | Common Area Maintenance and Lighting | 11 |
| 23. | Default of Landlord | 12 |
| 24. | Default of Tenant | 13 |
| 25. | Operation of Tenant's Business | 14 |
| 26. | Merchants' Association | 14 |
| 27. | Tenant's Signs | 14 |
| 28. | Recordation of Lease | 15 |
| 29. | Subordination and Non-Disturbance | 15 |
| 30. | Trash Disposal Facilities | 15 |
| 31. | Trade Names | 15 |
| 32. | Successors and Assigns | 16 |
| 33. | Nonwaiver | 16 |
| 34. | Gender | 16 |
| 35. | Transfer of Landlord's Interest | 16 |
| 36. | Common Area Maintenance Contribution | 16 |
| 37. | Tax Contribution | 18 |
| 38. | Fire and Extended Coverage Insurance Premium Contribution | 19 |
| 39. | Additional Rent | 20 |
| 40. | Exculpation | 21 |
| 41. | Investment Tax Credit | 21 |
| 42. | Expansion of Demised Premises | 21 |
| 43. | Environmental Matters | 22 |

( 7/1/95 — 6/30/15 )

Exhibit "A"

STATE OF MISSISSIPPI

COUNTY OF HARRISON

THIS LEASE AGREEMENT, made and entered into as of the _22_ day of _____ April __, 1994, by and between THE MITCHELL COMPANY, INC., an Alabama corporation (hereinafter called "Landlord"), and DELCHAMPS, INC., an Alabama corporation (hereinafter called "Tenant");

## W I T N E S S E T H:

Landlord does hereby demise, lease and let unto Tenant, its successors and assigns, the following premises in the City of Pass Christian, County of Harrison, State of Mississippi, viz:

> Those premises consisting of approximately 45,490 square feet of ground area crosshatched in red and situated in a shopping center called Pass Christian Village (hereinafter sometimes called "Shopping Center"), said Shopping Center being outlined in red on the plot plan dated July 6, 1993, last revised April 21, 1994, marked Exhibit 1, and described on Exhibit A, signed by the parties, attached hereto and made a part hereof by reference, together with a store building to be constructed thereon by Landlord at its sole cost and expense in accordance with the plans and specifications to be approved as hereinafter provided (said premises, together with the store building to be constructed by Landlord, being herein sometimes called "Demised Premises"), together with all rights, privileges and appurtenances thereunto appertaining;

for use by Tenant (when so operated) as a supermarket principally for the sale of food and other items generally sold by a food supermarket, and for such other purposes as may be from time to time customarily conducted by Tenant in its business (including without limitation the operation of a prescription drug pharmacy), or for the conduct of any mercantile, retail or service business, for and during the term beginning, to wit: on the date that Tenant's obligation to pay rent commences, as provided in Paragraph 2 hereof, and ending at midnight on the twentieth (20th) anniversary of the last day of the calendar month in which such rental obligation commences, all subject to the terms, conditions and covenants herein contained, and Landlord covenants to keep Tenant in quiet and peaceable possession of the Demised Premises during said term (including any extensions thereof), provided that Tenant shall at all times fully and promptly comply with all and singular, the provisions of this lease to be performed by Tenant.

1.    Rent and Notices.

(a)    Tenant agrees to pay Landlord during the term hereof an annual rental of THREE HUNDRED EIGHTY-SIX THOUSAND SIX HUNDRED SIXTY-FIVE and 00/100 DOLLARS ($386,665.00), payable in equal monthly installments of THIRTY-TWO THOUSAND TWO HUNDRED TWENTY-TWO and 08/100 DOLLARS ($32,222.08), each due in advance on the first day of the calendar month and payable on or before the tenth (10th) day of each calendar month during the term of this lease. Said rental shall be payable to Landlord at Landlord's address as determined from time to time pursuant to the provisions hereof.

(b)    In the event that any governmental agency or authority shall impose any tax, assessment or other charge on or against the rentals required to be

paid to Landlord by Tenant hereunder, and if Landlord is required to collect such tax, assessment or charge from Tenant, Tenant agrees to pay same to Landlord, without demand, at such times as Landlord is required to collect same.

(c)    For purposes of notice or payment of all sums due hereunder, the address of Landlord until otherwise designated in writing is stated to be 9th Floor, Altus Bank Tower, P. O. Box 160306, Mobile, Alabama 36616-1306. For purposes of notice, the address of Tenant until otherwise designated in writing is stated to be Delchamps, Inc., Post Office Box 1668, Mobile, Alabama 36633-1668. Either Landlord or Tenant may designate a different address from time to time by written notice to the other.

2.    Landlord's Construction and Commencement of Rent.

(a)    Landlord agrees to have the store building included in the Demised Premises ready for Tenant to install its sales area fixtures and equipment by not later than March 15, 1995, in accordance with the installation schedule furnished by Landlord and approved by Tenant, and Tenant shall have and is hereby given a period of one hundred forty (140) days following such delivery within which to complete the installation thereof, subject, however, to such extension of time for completion of said installations by Tenant equal to any delay caused Landlord or Tenant, as the case may be, by windstorm, picketing, strikes, labor disputes, Acts of God, fire or other cause or casualty beyond such party's control. Landlord shall give Tenant at least thirty (30) days prior written notice of the date that the Demised Premises will be ready for Tenant to commence such installation.

(b)    For purposes of the preceding subparagraph, the store building shall be deemed ready for installation of Tenant's equipment when (i) the construction necessary for such installation has been completed, (ii) the truck well and paving of the service drives have been completed, and (iii) the building is completely secured, with all glass, exterior doors and roof openings in place and properly secured and weather tight. In the event that the store building is not ready for such installation on the date so specified in Landlord's written notice, so that Tenant is unable to commence such installation work, Landlord shall be liable to and shall pay Tenant the sum of Five Hundred And No/100 ($500.00) Dollars per day for each day following the date so specified until the store building is ready for such installation, excluding delays caused by windstorm, picketing, strikes, labor disputes, fire, Acts of God, or other cause beyond Landlord's control.

(c)    No later than thirty (30) days following the date specified in subparagraph (a) above, Landlord shall have completely finished construction of the sidewalks, paving, parking lot lighting and drainage facilities as required in the plans and specifications. In the event the sidewalks, paving, parking lot lighting, and drainage are not completed within the time specified, so that Tenant is unable to make final arrangements for opening of the store, Landlord shall be liable to and shall pay Tenant the sum of Five Hundred And No/100 ($500.00) Dollars per day for each day following the date provided herein until the sidewalks, paving, parking lot lighting, and drainage facilities are ready, excluding delays caused by windstorm, picketing, strikes, labor disputes, fire, Acts of God, or other cause beyond Landlord's control.

(d)    Landlord agrees that no rent shall commence hereunder until (i) thirty (30) days after the Demised Premises have been finally delivered to Tenant and completed by Landlord in accordance with the approved plans and specifications, and Landlord has completed construction of all buildings and all parking areas and other common areas shown on the plans and specifications (but in no event earlier than June 1, 1995, or the one hundred forty (140) day period allowed Tenant pursuant to subparagraph (a) above); or (ii) Tenant opens for business, whichever event shall first occur.

(e)    Tenant shall have and is hereby granted the right, but not the obligation, to open for business prior to the time Landlord has fully complied with all of its obligations hereunder, upon which opening by Tenant rent shall then commence. Should Tenant so open for business, Landlord agrees to exercise the utmost diligence in fully complying with all of its remaining obligations and Landlord agrees that Tenant shall not, by an earlier opening of its said business, waive compliance by Landlord of its obligations hereunder, or forfeit any rights granted to Tenant hereunder, including the right to cause such obligations to be complied with and to be reimbursed for any costs thereof as provided hereinafter.

(f)    Notwithstanding any provision to the contrary herein contained, Tenant shall not be required to open its store for business (and the term shall not commence nor shall rent accrue or be payable) between November 1st and the next succeeding February 1st, nor shall the Demised Premises be delivered to Tenant for fixturing purposes prior to January 12, 1995, unless Tenant agrees to accept same prior to such date.

(g)    The date of the commencement of the term of this lease shall be reduced to writing in recordable form when the same has been ascertained in accordance with the provisions hereof, and such writing shall be signed by Landlord and Tenant and shall thereafter constitute a part of this lease. Unless the term hereof shall have commenced within eighteen (18) months from date hereof, this lease shall be null and void, unless Tenant in its sole discretion elects to extend the time for such commencement, but in no event shall such extension be to a date that is more than thirty (30) months from date hereof.

3.    Plans and Specifications.

(a)    Prior to or upon execution of this lease, Tenant has provided Landlord with a set of prototype plans and specifications for Tenant's building. Landlord hereby acknowledges receipt of same, and agrees at its sole cost and expense to promptly prepare final plans and specifications for submission to Tenant for review and approval, all to the end that Landlord and Tenant shall approve final plans and specifications mutually satisfactory to both, and when so approved, the parties shall sign multiple sets and each party shall retain a set at its principal office. Landlord acknowledges that the construction of the parking area and driveways in the Shopping Center will require special surfacing as shown on the plans and specifications. Should the parties fail to reach mutual agreement within ninety (90) days from date hereof, either party shall have the option to cancel this lease by written notice to the other party, and if the plans and specifications are not agreed upon within one hundred twenty (120) days from the date of this lease, this lease shall be automatically terminated. Landlord agrees, at the sole cost and expense of Landlord to commence within thirty (30) days from date of approval of plans and specifications and to thereafter diligently and continuously pursue to completion, (i) the erection and completion of the store building upon the Demised Premises in accordance with the approved plans and specifications; (ii) the construction of the sidewalks, service drives, parking areas, entranceways, driveways, landscaping and related improvements (herein sometimes called "common areas") shown on Exhibit 1; and (iii) the grading and surfacing with top quality materials all paved portions of the common areas, and (iv) the other buildings shown on Exhibit 1, as well as proper and adequate utilities, water drainage and lighting systems for the Shopping Center.

(b)    Unless Landlord shall have completed the footings and foundations for the building on the Demised Premises within eight (8) months from date hereof, Tenant shall have the right to terminate this lease, or at Tenant's sole option, to extend Landlord additional time for the completion thereof.

- 3 -

4.    Shopping Center and Common Areas.

(a)    The arrangement and location of the store buildings, parking areas, driveways, entranceways and other common areas shall at all times during the term be kept and maintained as shown on Exhibit 1 and shall not be changed or altered without the prior written consent of Tenant, which consent shall not be unreasonably withheld. Landlord covenants that there has been established a minimum parking ratio requirement of five (5) automobile spaces for each 1,000 square feet of gross leasable area in the Shopping Center and Landlord covenants not to modify said requirements without Tenant's prior approval.

(b)    Landlord agrees not to erect, or permit to be erected, any buildings or structures on any area designated and reserved on Exhibit 1 for parking, sidewalks, driveways, service areas, entranceways and ways for ingress and egress except as designated on Exhibit 1, or unless prior written approval is obtained from Tenant. Landlord agrees to provide at all times adequate entranceways, ways for ingress and egress, and service areas, and further agrees that Tenant shall have uninterrupted use and enjoyment of the entranceways, ways for ingress and egress, the Demised Premises and the parking areas shown on Exhibit 1 without unnecessary interference with said use and enjoyment or conduct of Tenant's business in the Demised Premises by reason of further permitted construction on the areas shown on Exhibit 1, if any, or otherwise.

(c)    Tenant and its customers, employees and invitees shall have free of charge during the term of this lease, the nonexclusive use of the parking areas, sidewalks, entranceways, ways for ingress and egress, alleys and easements shown on Exhibit 1, and Landlord agrees not to block or otherwise interfere with the rights hereby granted Tenant. Landlord shall not grant or permit any parking or access rights in or to the Shopping Center to owners or occupants of adjacent property without in each instance obtaining the prior written consent of Tenant, and if required by Tenant, Landlord shall fence off or otherwise obstruct by appropriate barrier any unauthorized access or parking. Tenant shall have the right to install and maintain vending machines and pay telephones on exterior walls of the Demised Premises and on the sidewalks adjacent to its store. Tenant shall also have the right from time to time to use portions of the sidewalks and parking areas in front of the Demised Premises for the display and sale of seasonal and promotional merchandise. Any such sales shall be deemed made from the Demised Premises, and such activities shall be deemed to be conducted on the Demised Premises for the purposes of Tenant's indemnity as set forth in Paragraph 15. Tenant shall be responsible for repair of any damage to, and clean up of, the parking areas caused by such activities.

(d)    In the event any parcels are shown on Exhibit 1 as not being included in the Shopping Center, whether designated as "Out Parcel", or "Not Included" or "Other Owners" or similar designations, Landlord hereby expressly acknowledges that any restrictions which may be set forth on Exhibit 1 with respect to said parcels are binding thereon and shall be enforced by Landlord for the benefit of Tenant.

(e)    In no event shall Landlord permit the operation on any part of the Shopping Center of a so-called "game room" business featuring electronic coin-operated game machines; or dance hall or so-called "disco" or similar establishment; or bar, lounge or other business or similar establishment allowing consumption of alcoholic beverages on the premises (excluding however, a bar or lounge operated as an integral part of a restaurant); or a theater for the showing of motion pictures, closed-circuit television productions or similar telecasts, or for the presentation of dramatic theater, musical or similar productions. No "carnival" or "midway" or "flea market" or other similar activities shall be permitted on the parking areas without the prior written consent of Tenant, and in the event of a violation of this provision, in addition to any other remedy available to Tenant, all rent shall be abated during the existence of such activities.

- 4 -

(f)    Landlord agrees, at the request of Tenant, to designate an area in the parking area for vehicular parking of employees of the tenants in the Shopping Center, and to require all tenants to require their employees to use such area; provided such employee parking area shall not be located in the area in front of the Demised Premises used primarily by Tenant's customers. If such parking area is not so requested and designated, Landlord agrees to require the other tenants to prohibit their employees from using the aforesaid area except while patronizing Tenant's store on the Demised Premises.

5.    Renewal Options.

(a)    If Tenant be not then in default after notice and expiration of applicable curative periods, Tenant shall have the right and option to renew this lease for not exceeding four (4) successive terms of five (5) years each, upon the same terms and conditions and for the same rental provided for in the original term hereof, each renewal term to begin at the expiration of the then current term. In the event Tenant fails to notify Landlord prior to the last six (6) months of the then current term of Tenant's desire to terminate the lease at the expiration of the then current term, this lease shall automatically be renewed for an additional term (as may be limited as hereinafter provided) beginning at the expiration of the then current term, except there shall be no further renewal beyond the last renewal term. Wherever in this lease the word "term" is referred to, such reference shall mean the original term and any extensions thereof, unless the context requires a different meaning.

(b)    Tenant shall have the right at its option to specify the duration of each renewal term that may be extended on the following conditions: If Tenant elects to exercise an option for renewal term for a period less than five (5) years, Tenant shall give Landlord written notice of such election no later than six (6) months prior to the expiration of the then current term, which notice shall state the duration of the next ensuing renewal term which shall not be more than five (5) years nor less than one (1) year, and which expiration date shall be on an anniversary of the expiration date of the then current term. Subsequent renewal terms, if exercised, shall commence at the expiration of the prior term.

6.    Landlord's Title.

Landlord warrants and represents to Tenant that it is the owner in fee simple of the land comprising the Shopping Center, subject to no liens, easements or encumbrances prior to this lease, except for (a) the lien for current ad valorem taxes, (b) utility and drainage easements that serve the Shopping Center and do not interfere with the use of the Demised Premises or the service areas adjacent thereto, and (c) other matters, if any, which shall be disclosed by Landlord and as may be approved by Tenant in writing. No later than thirty (30) days subsequent to the date of this lease, Landlord will furnish Tenant a copy of Landlord's owner's policy of title insurance and/or other evidence satisfactory to Tenant that the warranties contained in this paragraph are true and correct. Landlord warrants and represents to Tenant that it has the complete and lawful right to lease the Demised Premises and that the same are properly zoned for a food supermarket of the type operated by Tenant, and that the Demised Premises are not located in an area where, by virtue of the location of the Shopping Center, the sale of liquor, wine or beer by Tenant for off-premises consumption is prohibited.

7.    Assignment, Subletting and Concessions.

Tenant shall have the right, at any time after the commencement of the term hereof, to assign this lease, to sublease the Demised Premises (or any part thereof), and to grant concessions therein, for such uses as are contemplated in the preamble hereof (including without limitations the operation of banking facilities, automated teller machines and the like). The making of any such assignment or sub-

- 5 -

letting or granting of any such concession shall in all other respects be subject to the terms of this lease and shall not relieve Tenant of its obligations hereunder; and Landlord agrees, in the event of default thereafter, to give Tenant the same notices and rights to cure given to any assignee, as provided hereinafter.

8.  Surrender.

Tenant agrees to permit no waste of the Demised Premises but on the contrary, to take good care of the same and upon termination of this lease, to surrender possession thereof without notice, in as good condition as at the delivery of same to Tenant for its installation work, reasonable wear and tear, damage by fire and other casualty or loss through eminent domain excepted. Tenant shall repair any damage to the Demised Premises caused solely by the removal of its fixtures and equipment, and will leave wiring, conduit and pipes closed and secured.

9.  Repairs and Maintenance.

(a)  Landlord agrees at its sole cost and expense to promptly repair (and replace when necessary) and at all times during the term hereof to maintain in good repair and condition the foundations, supporting walls, subfloors, exterior walls, exterior roofs, sewers, septic tanks (including periodic pumping and cleaning of septic tanks), sidewalks, exterior painting, the sprinkler and fire protection system and exterior plumbing (including plumbing requiring structural entry) and exterior fixtures (unless caused by Tenant's misuse thereof) of the building on the Demised Premises as well as the exterior parts of said building, whether included in the above enumeration or not, unless hereinafter made Tenant's responsibility.

(b)  Tenant agrees at its sole cost and expense to promptly repair (and replace when necessary) and at all times during the term hereof maintain in good repair and condition the interior of the Demised Premises, including the heating and air conditioning units and systems (whether located on the interior or exterior of the building), electrical fixtures and equipment, electrical installations, trash removal equipment, floors, store fixtures, interior paint or decorations, all doors and windows, interior and exterior, any sump pump(s) located in the truck well, and agrees to replace all broken glass or damaged glass on the Demised Premises, including window glass and plate glass; except when caused by settling of the building, or by causes covered by Landlord's fire and extended coverage insurance.

(c)  If any repairs, replacements or maintenance which Tenant is obligated to make to the Demised Premises become necessary because of the failure of Landlord to make any repairs, maintenance or replacements required of it, or because of poor workmanship or defective materials in the performance of such work by Landlord, then Landlord agrees to make such repairs at its expense.

(d)  If any repairs, replacements or maintenance which Landlord is obligated to make to the Demised Premises becomes necessary because of the failure of Tenant to make any repairs, maintenance or replacements required of it, or because of bad workmanship or defective materials in the making of such performance of such work by Tenant, then Tenant agrees to make such repairs at its expense.

10.  Tenant's Equipment and Trade Fixtures.

(a)  Tenant shall have the right at any time during the term of this lease, to install, use and operate in, upon and on the Demised Premises such furnishings, fixtures, equipment, machinery and appliances as it may consider necessary in the conduct of its business in, upon or on said premises. Furnishings, fixtures, equipment, machinery and appliances used in the Demised Premises which are owned solely by Tenant and which are supplied and installed at the sole cost and expense of Tenant shall at all times be and remain the property of Tenant and

- 6 -

Tenant shall have the right to remove the same from said premises at any time during the term hereof, provided Tenant shall not be in default hereunder after expiration of applicable grace periods.

(b)    Furnishings, fixtures, equipment, machinery and appliances used in on or upon the Demised Premises and which is/are leased or sold to Tenant by other parties under any lease agreement, conditional sales contract, security agreement or otherwise, shall be and remain the property of the party from whom Tenant may be leasing or purchasing the same, and such party shall have the right at any time, whether there be a default hereunder or not, to remove such furnishings, fixtures, equipment, machinery and appliances from the Demised Premises. Landlord hereby waives any Landlord's lien as to any such furnishings, fixtures, equipment, machinery and appliances mentioned in this paragraph and at any time located in, on or upon the Demised Premises, and agrees to confirm such waiver to any such lessor or conditional seller if requested by Tenant.

(c)    The rights of removal provided for in this paragraph shall extend for a period of thirty (30) days following the expiration of the term of this lease, and Tenant agrees to repair any damage to the Demised Premises caused by such removal.

11.    Landlord's Failure to Repair.

Landlord and Tenant agree that as to repairs (emergency excluded) required to be made by Landlord to the Demised Premises, Tenant shall give Landlord written notice of the need of such repairs and if within thirty (30) days from the date of the receipt of such written notice, Landlord has not commenced to make and complete such repairs, Tenant shall have the right (but not the obligation) to make such repairs and pay the costs thereof. If the circumstance requiring such repairs is such that the repairs cannot be completed in said thirty (30) day period, Landlord shall immediately advise Tenant of the additional time needed, and if Tenant agrees, Landlord shall have such additional time within which to make such repairs. Should Tenant make any such repairs after Landlord's failure to do so, it shall give Landlord immediate notice thereof and Landlord agrees to reimburse Tenant upon demand for the cost thereof. Should Landlord fail to reimburse Tenant, Tenant shall have the right to deduct the cost of such repairs from rent due or to become due hereunder and any such deductions by Tenant shall not be deemed to constitute a failure to pay rent or any other default hereunder even if it be later determined that such deductions, or any part thereof, were unauthorized, improper or illegal. Tenant agrees not to expend any sums under this Paragraph 11 without first (or simultaneously with the giving of notice to Landlord) giving written notice to any mortgagee of the Demised Premises (provided such mortgagee has in writing furnished Tenant its then proper mailing address), and allowing such mortgagee the same period of time within which to make such repairs, from receipt of such written notice, as is allowed in this paragraph to Landlord.

12.    Emergency Repairs.

In the event it becomes necessary to make any emergency repairs to the Demised Premises, Tenant may make the same itself and pay all costs and expenses in connection therewith. Tenant agrees to use its best effort to contact Landlord or Landlord's agent by telephone to advise of the need for said repairs prior to making same, but Tenant is authorized and empowered to make such repairs whether or not Landlord is actually contacted. If such repairs are otherwise the obligation of Landlord and Landlord fails to reimburse Tenant for the cost thereof within ten (10) days from the date Landlord is notified of the costs and demand is made for payment, Tenant may deduct such costs and expense from rent due and to become due hereunder and said deductions shall not be deemed to constitute a default hereunder or a failure to pay rent even if it be later determined that any such deductions or any part

- 7 -

thereof were unauthorized, improper or illegal. Tenant agrees to give simultaneous notice to any first mortgagee of the Demised Premises (whose name and address shall have been furnished Tenant) of Tenant's demand of Landlord for reimbursement. Emergency repairs shall be deemed those necessary for prevention of imminent injury or damage to persons or property.

13.    Tenant's Alterations.

Tenant may at its sole cost and expense alter or remodel the interior of the Demised Premises in any manner it may so elect (including relocation of exterior doors), provided the structural strength is not impaired and provided such alterations or remodeling are in accordance with the requirements of local authorities having jurisdiction thereof.

14.    Utilities.

Landlord shall without cost and expense to Tenant cause to be furnished, installed and maintained adequate utility lines and services to serve the Demised Premises. All such services shall be separately metered to the Demised Premises. Tenant agrees to pay all service charges for water, telephone, electricity, sanitary sewer charges, garbage disposal and gas used on or in the Demised Premises, and Tenant further agrees not to permit any lien or claim to be filed against Landlord by reason of nonpayment of any such charges.

15.    Indemnity.

Landlord agrees to indemnify, protect and save harmless Tenant from any loss, damage, cost or expense caused by injuries or death to persons or damage to property (provided such injuries, death or damage be not a proximate result of Tenant's negligence) while in, on or about the parking areas or other common areas shown on Exhibit 1, or that may be adjacent thereto and owned by Landlord (exclusive of the Demised Premises), or resulting from Landlord's failure to maintain in good repair the sidewalks. Tenant agrees to indemnify, protect and save harmless Landlord form any loss, cost, damage or expense caused by injuries or death to persons or damage to property while in or on the Demised Premises (provided such injuries, death or damage be not a proximate result of Landlord's negligence).

16.    Inspection Rights.

Landlord may, during regular business hours (and upon at least two (2) days' prior written notice), through its agents and representatives, enter the Demised Premises for the purpose of inspection thereof and making any repairs or replacements required of Landlord hereunder, provided same does not unnecessarily interfere with the operation of Tenant's business therein.

17.    Events of Casualty and Insurance.

(a)    Landlord agrees during the term of this lease at its sole cost and expense to keep the buildings in the Shopping Center, including the building on the Demised Premises, insured to their full insurable value against loss or damage by fire, lightning, windstorm, flood (if applicable), vandalism and malicious mischief, and the perils embraced in the term "extended coverage", with replacement cost endorsement. Evidence of said insurance coverage shall be furnished Tenant on a current basis, and all policies shall be for the benefit of Landlord's and Tenant's interests, and shall provide for at least twenty (20) days notice to Tenant of any change or cancellation thereof. If the Demised Premises or any part thereof be partially or substantially destroyed by fire or other casualty, then the Landlord agrees at its sole cost and expense (utilizing the proceeds of said insurance) to promptly rebuild or replace the same in as good condition as it was in immediately prior to such fire or

- 8 -

other casualty, and the parties agree that there shall be a just and proportionate abatement in the rent from the date of such damage or destruction until Landlord repairs or restores the building and delivers possession thereof to Tenant. If the Demised Premises are made untenantable in whole or in part by damage or destruction within the last three (3) years of the term of this lease (whether during the original term or an extension thereof) at the option of the Landlord or at the option of the Tenant, which said option shall be exercised by notice in writing given to Landlord or Tenant, as the case may be, within thirty (30) days after the occurrence of such damage or destruction, this lease shall terminate, and Landlord shall refund to Tenant all rent paid for the period subsequent to such damage or destruction.

(b)    Tenant agrees during the term of this lease to keep the personal property of Tenant (or the personal property of the party from whom Tenant may be buying or leasing the same), including trade fixtures, machinery, appliances and equipment, insured to its full insurable value against loss or damage by fire, lightning, windstorm, flood (if applicable), vandalism and malicious mischief, and the perils embraced in the term "extended coverage", with replacement cost endorsement. If Tenant's property or any part thereof be partially or substantially destroyed by fire or other casualty, then Tenant agrees to promptly restore or replace the same at its sole cost and expense in as good condition as it was in immediately prior to such fire or other casualty. If the Demised Premises are made untenantable in whole or in part by damage or destruction within the last three (3) years of the term of this lease (whether during the original term or an extension thereof), Tenant shall, provided the option of Landlord and Tenant to terminate this lease as provided in the preceding subparagraph is not exercised by either party, restore or replace said heating and air conditioning equipment at its own expense.

(c)    Landlord agrees to carry and maintain public liability insurance coverage on all common areas (including parking areas) of the Shopping Center with limits of liability of not less than $500,000 for an occurrence affecting one person, not less than $1,000,000 for an occurrence affecting more than one person, and not less than $250,000 property damage. Tenant agrees to carry and maintain public liability insurance coverage on the Demised Premises with limits of liability of not less than $500,000 for an occurrence affecting one person, not less than $1,000,000 for an occurrence affecting more than one person and not less than $250,000 property damage. Blanket policies maintained by Tenant or Landlord for not less than the amounts set out above shall be sufficient to comply with the provisions of this subparagraph. Said policies shall contain what is customarily known as "contractual liability" provisions, and each party shall furnish the other certificates of such coverage on a current basis.

18.    Waiver of Subrogation.

(a)    Landlord and Tenant agree that in the event of any loss or damage to the building included in the Demised Premises, or of the contents, improvements, fixtures and/or equipment of Tenant located therein, by fire or any other perils which each said party has obligated itself under this lease to insure against, regardless of the cause thereof, and whether or not the same be caused by the carelessness or negligence of Landlord or Tenant, their respective servants, employees, agents, invitees, visitors or licensees, neither Landlord nor Tenant, nor their respective insurance carriers shall have any right of subrogation over or against the other, their servants, employees, agents, invitees, visitors or licensees for any such damage or loss so sustained.

(b)    Landlord and Tenant shall each look solely to its own hazard insurance in the event of destruction of the property of either. Neither Landlord nor Tenant shall be under obligation to pay any amount to the other, its successors or assigns, or to the insurance company issuing the policy of insurance for the amount of insurance or damages even though the loss or damage is caused by the negligence

- 9 -

of the other, its agents, servants, invitees, employees, visitors or licensees. Landlord and Tenant shall each cause its respective insurance carriers to waive rights of subrogation in conformity with the terms of this Paragraph 18, and shall promptly furnish each other proper endorsements or appropriate evidence with respect thereto.

19.  Eminent Domain.

(a)  Landlord and Tenant agree that in the event any part of the Demised Premises shall be taken by federal, state, city, public utility or other public authority under the power of eminent domain, then the term of this lease shall cease on the part so taken from the day the possession of that part shall be required for such public purpose and the rent shall be paid up to that date, and from that day the monthly rental shall be reduced in proportion to the amount of the Demised Premises taken; provided, however, that in the event ten (10%) percent or more of the parking area is taken under the power of eminent domain, Landlord shall give Tenant and any mortgagee written notice thereof and Tenant shall have the option, to be exercised within sixty (60) days after receipt of such written notice, to cancel this lease and declare the same null and void, and Tenant shall notify Landlord and any mortgagee of the Demised Premises in writing of its election. In the event Tenant does not elect to cancel the lease, Landlord shall, at its sole cost, build on the new building line a wall, or front, similar to the one removed. Tenant, upon any taking, shall be entitled only to so much of the award as will compensate it for the cost of removal of stock, stock fixtures, equipment, machinery and appliances.

(b)  Notwithstanding anything to the contrary in this Paragraph 19 contained, in the event Landlord shall offer a comparable parking area to replace the stated percentage of the total parking area taken under the power of eminent domain, and in the event Tenant shall approve such replacement parking area so offered by Landlord, the lease shall remain in effect.

20.  Exclusive.

(a)  To the extent that the Landlord is not prohibited by any existing or future law, regulation, statute or court decision, Landlord hereby covenants and agrees with Tenant (and this covenant and agreement constitutes a material part of the consideration for the execution of this lease by Tenant) that so long as this lease is in effect, Landlord, its successors, assigns, representatives or heirs, will not lease, or permit to be leased, or rent or occupy, or permit to be occupied, any premises in the Shopping Center to be used or occupied for the purpose of operating a delicatessen, bakery, florist, grocery store or food supermarket, or any other store (regardless of its announced or perceived business purpose) that would carry twenty-five (25%) percent or more items of groceries, meat, seafood or produce; provided, however, that if Landlord is lawfully prohibited from performing this agreement by any law, regulation, statute or court decision of any federal, state or other governmental agency or authority or of any court, then Landlord shall not be required to perform the covenants and agreements of this paragraph and Landlord shall not be deemed to be in default under this lease agreement for failure to perform or abide by the covenants and agreements of this paragraph, nor shall it be responsible or liable for any damages or otherwise. Nothing herein contained shall constitute an admission that the covenants and agreements set forth in this paragraph are in violation of any law, regulation, statute or court decision. Should Landlord default under this paragraph of the lease, Tenant shall have the right to recover damages in an action at law, or injunctive relief in equity, or both.  Nothing in the foregoing, however, shall be construed to prohibit Landlord from using, leasing or occupying any other store in the Shopping Center for a traditional restaurant or "fast-food" type of restaurant, or for a yogurt shop or ice cream shop.

(b)  Notwithstanding any covenant or agreement to the contrary contained in this Paragraph 20, if Tenant ceases to operate or closes its business in

- 10 -

the Demised Premises for six (6) consecutive months, and such cessation of operations or closing of such business for said six (6) month period, or any part thereof, be not due to or caused by fire, windstorm, or other casualty, Acts of God, picketing, strikes, labor disputes or other cause beyond the control of Tenant, then the covenants of Landlord contained in this Paragraph 20 shall thereafter be of no further force or effect.

(c)    The operation by an assignee or a subtenant of Tenant (or anyone holding under Tenant) of a food supermarket on the Demised Premises shall, for the purposes of this Paragraph 20, constitute the operation of such a business by Tenant. The provisions of this Paragraph 20 in favor of Tenant shall apply to any assignee and to a subtenant of Tenant, or anyone holding under Tenant, to the same extent and with like force and effect as the same apply to Tenant.

21.    Attorneys' Fees.

In case either party hereto commences any litigation against the other involving this lease or any provisions thereof or any rights thereunder, the non-prevailing party to such litigation shall pay to the prevailing party the reasonable attorney's fees incurred by the prevailing party in such litigation.

22.    Common Area Maintenance and Lighting.

(a)    Landlord agrees during the term of this lease to properly maintain the parking areas, sidewalks and other common areas, to keep the parking areas, driveways and similar common areas hard-surfaced and in good repair and to resurface the same when the same is in need of resurfacing; to provide proper grade level and drainage for said parking areas; to maintain adequate lighting facilities; to promptly replace in the common area, including the parking areas, any burned out or broken bulbs or lights; to keep the parking areas lighted [except as provided in subparagraph (d) hereinafter], striped, clean and free from all debris, and available at all times as a free parking lot for Tenant and customers and invitees of Tenant and customers and invitees of the Shopping Center; to water, mow and otherwise maintain all grassy and landscaped areas of the Shopping Center and to keep all bushes and trees in a healthy condition; and to keep all other common areas lighted [except as provided in subparagraph (d) hereinafter] and in good repair. Landlord agrees to prepare and furnish to Tenant a schedule projecting the frequency and times that the parking lot will be cleaned, such schedule to be on an annual basis.

(b)    Landlord acknowledges and understands that the nature of Tenant's business requires that the common areas in front of the Demised Premises which are used primarily by Tenant's customers be maintained with an especially smooth surface in order to permit Tenant's customers to use Tenant's shopping carts thereon without excessive vibration; and accordingly, Landlord acknowledges that all or portions of the aforesaid areas may require resurfacing prior to the time that other portions of the common areas must be resurfaced, in order to maintain such smooth quality on a continuous basis. Landlord therefore agrees to resurface those portions of such common areas that Tenant may from time to time designate as requiring such work.

(c)    If Landlord fails to do anything required of it in subparagraphs (a) or (b) hereof, Tenant may give Landlord written notice specifying what Landlord has failed to do and if Landlord does not correct such condition within thirty (30) days from the date of receipt by Landlord of said written notice, then Tenant may itself correct such condition and deduct the cost thereof from any rental due or to become due under this lease. If the circumstance requiring such repairs is such that the repairs cannot be completed in said thirty (30) day period, Landlord shall immediately advise Tenant of the additional time needed, and if Tenant agrees, Landlord shall have such additional time within which to make such repairs. The deductions

- 11 -

by Tenant of any such rental shall not be deemed to constitute either a failure of Tenant to pay rent or any other default hereunder even if it be later determined that any such deductions, or any part thereof, were unauthorized, improper or illegal. Tenant agrees not to expend any sums under this Paragraph 22(c) without first (or simultaneously with the giving of notice to Landlord) giving written notice to any mortgagee of the Demised Premises (provided such mortgage has in writing furnished Tenant its then proper mailing address) and the same period of time shall be allowed such mortgagee within which to make such repairs from receipt of such written notice as is allowed Landlord in this subparagraph.

(d)    Landlord and Tenant acknowledge and agree that a portion of the lamps on the common area light standards will be directly connected to a switch and meter located in the Demised Premises, and that Tenant will have control over the hours of operation of those lamps and will also bear the cost of supplying energy to illuminate same. The location of these lamps will be determined in connection with the approval of the plans and specifications for the Demised Premises, and the lamps shall be shown and designated as such on a Site Electrical Plan of the Shopping Center, to be prepared and executed by the parties as a supplement to this lease. Those lamps connected to the Tenant's meter are referred to herein as "Tenant's Lamps" and all other lamps in the Shopping Center are referred to herein as "Landlord's Lamps". Notwithstanding that Tenant shall have control over the hours that Tenant's Lamps shall be lighted, Tenant does agree that:

(i)    so long as Tenant is conducting its business in the Demised Premises, Tenant agrees to keep the Tenant's Lamps lighted at least as late as the Landlord's Lamps are lighted; and

(ii)    in the event Tenant should cease the conduct of business in the Demised Premises for a definite or indefinite period of time, Tenant agrees, during the period of such business cessation, either (A) to continue to comply with the agreement contained in the preceding clause (i), or (B) to permit Landlord to have access to Tenant's lighting switch for the purpose of controlling the hours of operation of Tenant's Lamps in accordance with a schedule approved by Tenant, or (C) to cause Tenant's Lamps to be transferred and connected to the meter and switch which measures and controls the operation of Landlord's Lamps.

23.    Default of Landlord.

Failure of Landlord to comply with any term, condition, provision, agreement or undertaking contained in this lease shall constitute a default by Landlord hereunder.

(a)    Landlord and Tenant agree that in the event Landlord defaults in any obligation requiring the payment of money only, Tenant shall give Landlord written notice of such default by certified or registered mail, and Landlord shall have ten (10) days from the date of receipt of such written notice within which to correct the same. If Landlord fails to correct such default within said ten (10) day period Tenant may, at its option and after giving Landlord one additional ten (10) day written notice of its intention to terminate this lease, terminate same, if such default be not corrected within said ten (10) day period.

(b)    Landlord and Tenant agree that in the event of any default by Landlord in the performance of any other covenant or agreement contained in this lease (other than the payment of money), Tenant shall give Landlord written notice of such default by certified or registered mail. If at the expiration of twenty (20) days from receipt by Landlord of said written notice, such default continues to exist, or in case of a default which with due diligence cannot be cured within twenty (20) days and Landlord is not proceeding with due diligence to cure and correct the same, Tenant shall then give Landlord a second notice in writing by certified mail or

- 12 -

registered mail, and after the expiration of ten (10) days from receipt by Landlord of such second written notice, Tenant may at its option, provided such default has not been corrected, terminate this lease. In the event Landlord corrects or cures any default within the time provided or thereafter if prior to Tenant's notice of termination, then upon such correction or cure, the rights of Landlord hereunder shall be reestablished as though said default had not occurred and said notice had not been given by Tenant.

(c)    Tenant agrees, simultaneously with the giving of notice to Landlord, to send a copy of such written notice to any mortgagee of the Demised Premises (provided such mortgagee has in writing furnished Tenant its then proper mailing address) and allowing such mortgagee the same period of time within which to correct any default from receipt of such written notice as is allowed Landlord in this paragraph.

24.    Default of Tenant.

Failure of Tenant to comply with any term, condition, provision, agreement or undertaking contained in this lease shall constitute a default by Tenant hereunder.

(a)    Landlord and Tenant agree that in the event Tenant defaults in the payment of rental or any other sum due hereunder, Landlord shall give Tenant written notice of such default by certified or registered mail, and Tenant shall have ten (10) days from the date of receipt of such written notice within which to correct same. If Tenant fails to correct such default within said ten (10) day period, Landlord may, at its option and after giving Tenant one additional ten (10) day written notice of its intention to terminate this lease, and if such default is not corrected within the said ten (10) day period, terminate the same.

(b)    Landlord and Tenant agree that in the event of any default by Tenant in the performance of any other covenant or agreement herein contained (other than the payment of money), Landlord shall give Tenant written notice of such default by certified or by registered mail. If, at the expiration of twenty (20) days from receipt by Tenant of said written notice, such default continues to exist, or in case of a default which with due diligence cannot be cured within twenty (20) days and Tenant is not proceeding with due diligence to cure and correct the same, Landlord shall then give Tenant a second notice in writing by certified or registered mail, and after the expiration of ten (10) days from receipt by Tenant of such second notice, Landlord may, at its option and provided such default has not been corrected, terminate this lease. In the event Tenant corrects or cures any default within the time period provided, the rights of Tenant hereunder shall be reestablished as though the default had not occurred and such notice had not been given by Landlord.

(c)    If the Demised Premises shall be abandoned during the term or if Tenant shall be evicted from said premises by summary proceedings or otherwise, or in the event of the commencement of any bankruptcy proceedings by or against Tenant which are not discharged or dismissed within sixty (60) days, or upon the happening of any event of default as provided above, Landlord may at its election terminate this lease (in which event Landlord shall be entitled to recover damages for any such default), or Landlord may reenter the same by force or otherwise, without being liable for prosecution therefor, and may relet the Demised Premises at any time as agent of Tenant, applying any moneys collected first to costs, fees and expenses of collecting, then to the expense of obtaining possession, then to the payment of the rent and all other sums owing and to become owing Landlord and paying any surplus thereof to Tenant; and such reentry and reletting shall not discharge Tenant from liability for rent or from any other covenant of this lease by it to be kept and performed.

- 13 -

25.    Operation of Tenant's Business.

(a)    Tenant agrees to open its business in the Demised Premises on the commencement of the term hereof, and to operate therein for a period of at least six (6) months. Thereafter Tenant shall have the right in its sole and absolute discretion to discontinue the operation of its business on the Demised Premises at any time or from time to time. This lease shall never be construed to require Tenant to operate its business on the Demised Premises or to prevent its closing such business, except as otherwise provided in the first sentence of this paragraph. Landlord and Tenant agree, however, that if the operation of business in the Demised Premises is discontinued for a period of six (6) consecutive months and such discontinuance is not caused by or due in whole or in part to fire, windstorm or other casualty, Acts of God, picketing, strikes, labor disputes or other causes beyond the control of Tenant, or its successors or assigns, for a period of ninety (90) days after the expiration of said six (6) month period, Landlord shall have the right to terminate this lease and the parties' rights and liabilities hereunder by giving written notice thereof. On the date of such termination notice, this lease and the term hereof shall expire as though such date were the original expiration date set forth herein, and any rent paid for periods beyond said termination date shall be refunded to Tenant.

(b)    Any discontinuance of business on the Demised Premises shall not relieve Tenant from its obligations for payment of the rentals or any other sums due by Tenant to Landlord, or from its other obligations herein, unless Tenant is otherwise relieved therefrom by reason of any other provision of this lease.

26.    Merchants' Association.

Tenant shall have a right, but shall not be obligated, to join and maintain membership in any merchants' association on the same terms and conditions as the other members of said association.

27.    Tenant's Signs.

(a)    Tenant shall have the right from time to time to erect and display signs, lettering, advertisements and other projections on the exterior and interior of the Demised Premises (except that no signs shall be placed on the roof of the premises by any party), including without limitation, large business signs. Any damage to the building as a result of the removal of Tenant's signs (excluding mounting bracket holes and similar openings) shall be repaired at the expense of Tenant.

(b)    Landlord agrees to erect and to maintain in a first class condition throughout the term of this lease (i) a shopping center pylon in the location shown on Exhibit 1 and (ii) a sign situated on the pylon advertising and carrying the name of the Shopping Center. The pylon and sign shall be constructed and designed as provided in the plans and specifications. Tenant shall have the right to locate its sign on said pylon, and the sizes and positions of prominence of all tenants' signs located thereon shall be determined in accordance with the sizes of the respective tenants' premises in the Shopping Center. The cost of construction, installation, maintenance and energy expense of the pylon and Shopping Center sign located thereon shall be Landlord's responsibility, and Tenant shall be responsible for the cost of installation, maintenance and energy expense of its sign located thereon. A separate meter shall be installed to separate the cost of the energy expense for Tenant's sign. In no event shall any other pylon or sign be erected by or for any other tenant in the Shopping Center.

- 14 -