## CORPORATE GUARANTY OF LEASE OBLIGATIONS

**THIS CORPORATE GUARANTY OF LEASE OBLIGATIONS** (this "Guaranty") is given as of the date indicated below by **WINN-DIXIE STORES, INC.**, a Florida corporation ("Guarantor") to and in favor of **LEC PROPERTIES, INC. and PC PROPERTIES, INC.** ("Landlord") on behalf and for the account of **WINN-DIXIE LOUISIANA, INC.**, a Florida corporation ("Tenant").

### RECITALS:

A.   Pursuant to an Assignment and Assumption of Lease dated January 11, 2001 (the "Assignment"), Tenant was assigned all of the tenant's interest in, and assumed tenant's obligations accruing from and after the date of said Assignment under, that certain Lease, as amended from time to time, as described on attached Exhibit A (the "Lease") covering those certain premises known as Store #J333 in Pass Christian, Harrison County, MS, as more particularly described in the Lease (the "Premises").

B.   Landlord's leasing of the Premises to Tenant will, directly or indirectly, materially benefit Guarantor, and therefore, Guarantor has agreed to execute and deliver this Guaranty.

**NOW THEREFORE,** for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor jointly, severally, unconditionally and irrevocably guarantees the full and prompt payment, performance and observance of all the obligations, covenants, conditions and agreements in the Lease to be paid, performed and observed by Tenant and Tenant's successors, subtenants and assigns accruing from and after the date of said Assignment, and further agrees as follows:

1.   The foregoing recitals are true and correct and are incorporated herein.

2.   If Tenant fails, after notice and an opportunity to cure as provided in the Lease, to timely perform its obligations under the Lease, then Guarantor shall:

(a)   With respect to monetary defaults, following ten (10) days written notice from Landlord, cure such monetary default(s) of Tenant to the extent that Tenant does not have a right, under the Lease, to offset any amount due to Landlord because of any default by Landlord under the Lease;

(b)   With respect to non-monetary defaults, following twenty (20) days written notice from Landlord, cure such non-monetary default(s) of Tenant, provided, however, that if the nature of such non-monetary default is such that the default is not capable of a cure within twenty (20) days, then Guarantor's obligation under this Guaranty shall be to commence a cure and diligently prosecute the same to completion within a reasonable time after receipt of Landlord's notice.

Exhibit "C"

3.      (i) All amendments, modifications and extensions of the Lease shall be valid and enforceable against Guarantor so long as Guarantor owns or controls Tenant; (ii) all amendments, modifications and extensions of the Lease that do not increase or extend Guarantor's obligations under this Guaranty shall be valid and enforceable against Guarantor whether or not Guarantor owns or controls Tenant; and (iii) any renewal or extension exercised by Tenant, its successors, subtenants or assigns which is presently provided for under the Lease shall be valid and enforceable against Guarantor whether or not (a) the renewal or extension is automatic or (b) Guarantor owns or controls Tenant.

4.      Guarantor shall be bound by all choice of law and forum selection clauses provided in the Lease.

5.      It is agreed that the failure of Landlord to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants to the Lease or to exercise any right therein contained shall not be construed or deemed to be a waiver or relinquishment for the future of such term, provision, covenant or right, but the same shall continue and remain in full force and effect. Receipt by Landlord of rent with knowledge of the breach of any provision of the foregoing Lease shall not be deemed a wavier of such breach.

6.      Guarantor hereby waives (a) notice of acceptance of this Guaranty, (b) except with respect to notice and opportunity to cure monetary and non-monetary defaults as set forth in paragraph 2 above, any right to require Landlord to proceed against the Tenant or any other Guarantor or any security deposit or other security it may hold under the Lease, (c) except with respect to notice and opportunity to cure monetary and non-monetary defaults as set forth in paragraph 2 above, any right to require Landlord to proceed under any other remedy Landlord may have before proceeding against Guarantor, and (d) any right of subrogation.

7.      The obligations of Tenant under the Lease to execute and deliver estoppel statements and financial statements, as therein provided, shall be deemed to also require the Guarantor to do and provide the same relative to Guarantor.

8.      Except as set forth in paragraph 3 above, no subletting, assignment or other transfer of the Lease, or an interest therein, shall operate to extinguish or diminish the liability of the undersigned Guarantor under this Guaranty, and whenever reference is made to the liability of Tenant named in the Lease, such reference shall be deemed likewise to refer to the liability of any successor, subtenant or assign of Tenant or of the undersigned Guarantor.

9.      The obligations of Guarantor hereunder shall include payment to Landlord of all reasonable costs of any legal action by Landlord against Guarantor, including reasonable attorneys' fees.

10.     All notices required or permitted to be given under this Guaranty shall be in writing and sent to the address(es) or telecopy number(s) set forth below. All payments made under this Guaranty shall be sent to Landlord at the address below or at such other address as Landlord shall provide by written notice from time to time. Each communication shall be deemed duly given and received: (a) as of the date and time the same is personally delivered

with a receipted copy; (b) if given by telecopy, when the telecopy is transmitted to the recipient's telecopy number(s) and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (c) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (d) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit with same.

Landlord :

c/o The Mitchell Company, Inc.
P.O. Box 160306
Mobile, AL 36616

333

or at such other address as Landlord may direct from time to time.

Guarantor:  Winn-Dixie Stores, Inc.
Attn: Legal Department
5050 Edgewood Court
P.O. Box B
Jacksonville, FL 32203-0297
Telecopy: (904) 783-5138

or to such other address as Guarantor may direct in writing from time to time.

11. This Guaranty shall inure to the benefit of Landlord and its successors and assigns and shall bind Guarantor, its successors and assigns.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date indicated below.

WINN-DIXIE STORES, INC.

By: _____
Dennis M. Sheehan
Its: Senior Vice President
Date: January 11, 2001

Store #J333

## ACKNOWLEDGMENT OF GUARANTOR
(Corporate)

STATE OF ILLINOIS      )
                       ) ss.
COUNTY OF COOK         )

On this _10th_ day of January, 2001, before me, the undersigned, a Notary Public in and for the County and State aforesaid, came Dennis M. Sheehan, who is personally known to me to be the same person who executed the foregoing Corporate Guaranty of Lease Obligations as of said corporation, and said Dennis M. Sheehan duly acknowledged the execution of the same as an act of said corporation and for and on behalf of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year last above written.

*[signature]*
Notary Public, State of Illinois
My Commission Expires:

[NOTARIAL SEAL]

"OFFICIAL SEAL"
Mabra L. McCumber
Notary Public, State of Illinois
My Commission Expires Aug. 13, 2003

Store #J333