4219

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC , et al., | ) | *Chapter 11* |
| | ) | |
| Debtors | ) | Jointly Administered |

### ORDER APPROVING DEBTORS' LEASE TERMINATION
### AGREEMENT AND GRANTING RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc  and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in possession (collectively, the "Debtors"), for an order under 11 U S C  §§ 105(a), 363, 365 and 1146(c) and Fed  R  Bankr  P  6004 and 6006 (a) authorizing the Debtors to sell leasehold interests, equipment and inventory, and if the respective store contains a pharmacy, the pharmacy scripts, free and clear of liens, claims, interests and encumbrances, (b) determining that the sale is exempt from any stamp, transfer, recording or similar tax, (c) authorizing the Debtors to assume and assign all unexpired leases identified in the Purchase Agreement in connection with the sale, (d) fixing cure amounts for the Lease, and (e) granting relief (the "Motion")  By the Motion, the Debtors assert that no cure is required under the lease (and any amendments) for Store No  803 (the "Lease")  By the Motion, the affected landlord, FW NC-Shoppes of Kildaire, LLC a Delaware limited liability company (the "Landlord") had until July 14, 2005 to object to the proposed cure amount  The Landlord filed a timely objection asserting entitlement to real estate taxes accrued, CAM charges accrued, and other

Clean Order Approving Debtors' Lease Termination Agreement Store No  803 DOC 2

## Exhibit "B"

monetary sums, including rent, that have accrued, or will accrue, and which may not have, as of this date, been billed or reconciled, plus reasonable attorney's fees. The Landlord and the Debtors later determined that a total of $22,533 57 is due under the Lease postpetition (the "Postpetition Payable") The Court held a hearing on the Motion on November 4, 2005  The Court reviewed the Motion and heard the representations of counsel. Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:

   A      This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U S C  §§ 157 and 1334, and this matter is a core proceeding under 28 U S C  § 157(b)(2)(A) and (N)

   B      The Debtors solicited the highest or otherwise best offer for the Lease in accordance with bidding procedures approved by the Court by order (Docket No  1801) dated June 16, 2005 (the "Bidding Procedures")  The Debtors held an auction for the sale of assets, including the Lease on August 9, 2005 (the "Auction")  At the Auction, the Landlord submitted the final bid for termination of the Lease in the amount of $1 00, plus a waiver of lease rejection claims only, representing the highest or otherwise best offer received for the Lease

   C      The Debtors have provided interested parties (including all parties asserting claims or interests in the Lease, if any) with proper notice of the Motion, the sale hearing, Auction and the termination of the Lease, in accordance with 11 U S C §§ 102(1), 105(a), 363 and 365, Fed R  Bankr P  2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order and the Bidding Procedures Order

Clean Order Approving Debtors' Lease Termination Agreement Store No  803 DOC 2

D        The Debtors marketed the Lease and conducted the sale process in compliance with the Order approving the Bidding Procedures, the Bidding Procedures, the Bankruptcy Code and all other Orders entered in these cases. The bidding on the Lease and the Auction was conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Lease. In their sound business judgment, the Debtors determined that the bid submitted by the Purchaser represented the highest or otherwise best offer for the Lease.

E.       The Debtors (i) have full corporate power and authority to execute and consummate the Lease Termination Agreement attached as Exhibit A (the "Termination Agreement") and all related documents, and the termination of the Lease has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Termination Agreement, are required to consummate the transactions contemplated by the Termination Agreement.

F        The consideration the Landlord is providing to the Debtors for termination of the Targeted Lease (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value.

G        The Debtors' termination of the Lease pursuant to the Termination Agreement will be a legal, valid, and effective termination of the Lease. The termination is effective as of September 30, 2005 (the "Termination Date").

H        Notwithstanding the Termination Agreement or the Lease terms, the Debtors will have the right to remain in the premises up to the Termination Date to

discontinue its operations and to conduct a store closing sale in accordance with the Court's Order of July 27, 2005 (Docket No. 2537) (the "Store Closing Order")

     I       The Debtor shall pay the Postpetition Payable in the amount of $22,533 57 forthwith after entry of this Order  Additionally, until the Termination Date, the Debtors will pay all amounts and perform all obligations under the Lease in accordance with 11 U.S C §365(d)(3)

     J       The Debtors will cause the proceeds received in consideration for the Termination Agreement to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S C §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No  501), and the Loan Documents (as defined in the Final Financing Order)

     K       The Debtors' entry into the Termination Agreement is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors

     L       The Court's approval of the Termination Agreement is in the best interests of the Debtors, their estates and their creditors  Accordingly, it is

ORDERED AND ADJUDGED THAT:

     1       The Motion is granted

4

2       All objections to the entry of this order or to the relief granted and requested in the Motion, that have not been withdrawn, waived or settled at or before the hearing, are denied and overruled on the merits

3       The Termination Agreement is approved in all respects The Lease is terminated effective on the Termination Date

4       Pursuant to 11 U S C § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Termination Agreement, together with all additional instruments and documents that may be necessary to implement the Termination Agreement  The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Targeted Lease to the Purchaser

5       Notwithstanding the terms of the Lease, the Debtors are authorized to remain on the premises up to the Termination Date, to discontinue operations and to conduct store closing sales on the premises pursuant to the Store Closing Order

6       Any agreements, documents, or other instruments executed in connection with the Termination Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Termination Agreement without further order of the Court, provided that (i) the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates

7       The Debtors will cause the net proceeds from the Termination Agreement to be paid in accordance with the terms of the Final Financing Order and the Loan Documents

8       Effective upon entry of this Order, Landlord waives releases, and discharges the Debtors only from its lease rejection claims under Section 502 of the Bankruptcy Code.

9       This Court retains exclusive jurisdiction to (a) enforce and implement the Termination Agreement and any other agreements and instruments executed in connection with the Termination Agreement, and (b) interpret, implement and enforce the provisions of this Order

10      The terms and provisions of the Termination Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Landlord and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding

11      Within ten days after Closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f), Federal Rules of Bankruptcy Procedure

Dated this ⟦1 7⟧ day of November, 2005 in Jacksonville, Florida

Jerry A. Funk
United States Bankruptcy Judge

Clean Order Approving Debtors' Lease Termination Agreement Store No 803 DOC 2

6

Cynthia C Jackson is directed to
serve a copy of this Order on all parties
who received copies of the Motion

Clean Order Approving Debtors' Lease Termination Agreement Store No 803 DOC 2

**Exhibit A**

### LEASE TERMINATION AGREEMENT

THIS LEASE TERMINATION AGREEMENT (the "Agreement") made as of the 9th day of August, 2005, by and between FW NC SHOPPES OF KILDARE, LLC, a Delaware limited liability company ("Landlord"), and WINN-DIXIE RALEIGH, INC, a Florida corporation ("Tenant") and WINN-DIXIE STORES, INC, a Florida Corporation ("Guarantor")

### Recitals

A       Landlord and Tenant entered into a lease dated December 14, 1984 (as the same may have been amended supplemented or modified from time to time, and together with any and all other agreements, the "Lease") by which the Landlord leased to the Tenant property known as Winn Dixie's Store No 803, located at 1393 Kildaire Farm Road, Cary, Wake County, North Carolina, more fully described in the Lease (the "Premises")  Guarantor executed a guaranty dated January 4, 1985 (as the same may have been amended supplemented or modified from time to time, the "Guaranty") by which Guarantor guaranteed the obligations of Tenant under the Lease

B       On February 21, 2005, Guarantor, Tenant, and twenty-two of their affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U S C §§ 101 et seq , as amended (the "Bankruptcy Code")

C       On May 27, 2005, the Debtors filed a motion (the "Motion") for an order establishing bidding procedures for the sale of assets (the "Bidding Procedures")  The Bidding Procedures provide a mechanism for the Debtors to sell assets, including leasehold interests

D       On June 16, 2005, the Bankruptcy Court entered an Order approving the Motion and authorized the Debtors to implement the Bidding Procedures

E       On August 9, 2005, pursuant to the Bidding Procedures, the Debtors conducted an auction for the sale of assets, including the Lease, and the Landlord was the successful bidder for the Lease

F       The parties desire to terminate the Lease and the Guaranty, and end the Lease term effective as of the later of: (i) the date of Bankruptcy Court approval of the sale of the Lease; or (ii) the date of delivery of the Leased Premises by the Tenant to the Landlord after completion of the Tenant's store closing sale at the Premises, which shall be completed by September 30, 2005 (the "Termination Date")

NOW, THEREFORE, in consideration of the mutual covenants contained below and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1  **Termination Date.**   Subject to the provisions of this Agreement, the Lease and tenancy created by the Lease will remain in full force and effect until 11:59 p m , E T , on the Termination Date, at which time the Lease and the Lease term will end and terminate   Tenant

will continue to pay and remain liable for all rent and additional rent, including, without limitation, taxes, insurance, CAM charges, and any and all sums which may accrue, under the Lease after February 21, 2005, up to and including the Termination Date After the Termination Date, neither party will have any further rights or obligations under the Lease, except as may be otherwise provided therein. Subject to the provisions of this Agreement, at 11:59 p m , E T , on the Termination Date, the Guaranty will terminate

2    Surrender of Premises.  Tenant will vacate and surrender the Premises on or before the Termination Date and leave it in "Broom Clean" condition Landlord acknowledges and agrees that neither Tenant nor its employees, representatives or agents have made any express representations or warranties regarding the condition of the Premises Landlord further agrees that, notwithstanding any provision to the contrary contained in the Lease, the Tenant shall have no obligation under the Lease or this Agreement to restore the Premises to the condition that existed at the inception of the Lease, or to remove any additions or alterations to the Premises This provision will survive the termination of the Lease Notwithstanding the foregoing, the Tenant has the right, but not the obligation, to remove by sale or otherwise prior to the Termination Date any trade fixtures, signs and other personal property of Tenant including lighting systems, counters, modular wall units, shelving and other movable personal property, external signage and any other items that Tenant is permitted to remove under the Lease

3    Right to "Go Dark" and Conduct Store Closing Sale.  Notwithstanding anything to the contrary contained in the Lease, including any covenant requiring Tenant to continuously operate or not "go dark," Tenant may discontinue its operations at the Premises prior to the Termination Date Notwithstanding anything to the contrary contained in the Lease, Tenant has the right to conduct a store closing or similar sale at the Premises prior to the Termination Date in accordance with the Bankruptcy Court's Orders approving store closing sales entered July 27, 2005 (docket no 2537) and August 5, 2005 (docket no 2830)

4    Termination Fee.  On or before the Termination Date, the Landlord will pay the Tenant a fee of $1 00 as consideration for entering into this Agreement

5    Reimbursement of Prepaid Expenses.    Any prepaid rents, common area maintenance fees, association fees, real estate taxes, utility expenses or any other amounts the Tenant prepaid pursuant to the terms of the Lease or otherwise in connection with the Premises will be prorated and on or prior to the Termination Date, Landlord will reimburse Tenant for amounts allocable to the period of time after the Termination Date The Landlord will also return to the Tenant any security deposit made in connection with the Lease

6    Irrevocable Bid.  Landlord acknowledges that, in accordance with the Bidding Procedures, all bids made at auction or otherwise in accordance with the Bidding Procedures, including Landlord's bid, remain irrevocable until the earlier to occur of (i) 60 days after entry of an order by the Bankruptcy Court approving the sale of the Lease or (ii) closing of the sale of Lease with a party other than Landlord  Landlord acknowledges that it is bound by the terms and conditions of the Bidding Procedures  In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall govern

Lease Termination Agreement for store number 803

7. **Representations.** Landlord has not assigned, transferred, encumbered or otherwise disposed of Landlord's rights under the Lease, and no consent to this Agreement is required for Landlord to execute, deliver and fully perform its obligations under this Agreement Tenant has not assigned, transferred, or otherwise disposed of Tenant's rights under the Lease or any sublease, and no consent to this Agreement is required for Tenant to execute, deliver and fully perform its obligations under this Agreement

8. **Release – REJECTION CLAIMS.** As of the Termination Date, Landlord waives, releases and discharges Tenant, Guarantor, their successors and assigns, their estates, their affiliates and the Debtors only from claims from damages resulting from the termination of the Lease as described in Section 502 of the Bankruptcy Code To the extent Landlord has filed, or files, a proof of claim with respect to a claim released under this Agreement, Landlord consents to the disallowance and expungement of such claim, with prejudice

9. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and is binding upon and will inure to the benefit of the Landlord and Tenant and their respective heirs, executors, administrators successors and assigns. The provisions of this Agreement supersede all provisions of the Lease and Guaranty that are inconsistent. No modification, amendment, waiver or release of any provision of this Agreement is valid unless in writing and executed by the party against whom the same is sought to be enforced.

10 **Counterparts** This Agreement may be executed in one or more counterparts, each of which is deemed an original of this Agreement, but all of which constitute one and the same Agreement

11 **Severability.** Should any provision of this Agreement be declared invalid or unenforceable, all other provisions will be unaffected and will remain valid and enforceable

12 **Bankruptcy Court Approval.** The Tenant, Guarantor, and Landlord acknowledge that this Agreement is subject to approval by the Bankruptcy Court, and Landlord, Tenant, and Guarantor agree to cooperate in obtaining such approval

13 **Discharge of Memorandum.** If Landlord and Tenant have executed and recorded a memorandum of the Lease, upon Bankruptcy Court approval of the sale of the Lease to Landlord, Landlord and Tenant will execute and acknowledge a discharge of memorandum of lease within five days from receipt from Landlord of a form reasonably acceptable to Tenant Landlord, at its sole cost and expense, will have the right to file or record the discharge of memorandum in the applicable recorder's office.

14. **Jurisdiction.** The Bankruptcy Court will retain exclusive jurisdiction over any matter, claim, or dispute arising from or relating to this Agreement and Landlord consents to such exclusive jurisdiction

15 **Governing Law** This Agreement is governed by and construed in accordance with the laws of the state in which the Premises is located

3

Lease Termination Agreement for store number 803

IN WITNESS WHEREOF, the Landlord, Tenant, and Guarantor have executed this Agreement as of the day and year first above written

Tenant: Winn-Dixie Raleigh, Inc

Landlord:  FW NC Shoppes of Kildare, LLC

By: _____

By: _____

Name: _____

Name: _____

Its _____

Its _____

Guarantor:

By: _____

Name: _____

Its _____

4

Lease Termination Agreement for store number 803