UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In Re: | Chapter 11 |
| WINN-DIXIE STORES, INC. et al., | Case No. 05-03817-3F1 |
| Debtors. | (Jointly Administered) |

### RESPONSE OF CAPX REALTY, LLC TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO (A) NO LIABILITY CLAIMS, (B) NO LIABILITY MISCLASSIFIED CLAIMS AND (C) MISCLASSIFIED CLAIMS

COMES NOW CAPX REALTY, LLC, a Delaware limited liability company ("CAPX"), by and through its undersigned attorneys, and hereby files this Response of CAPX Realty, LLC to Debtors' Eleventh Omnibus Objection to (A) No Liability Claims, (B) No Liability Misclassified Claims and (C) Misclassified Claims (the "Response"), and states as follows:

1. On May 16, 2006, the Debtors filed Debtors' Eleventh Omnibus Objection to (A) No Liability Claims, (B) No Liability Misclassified Claims and (C) Misclassified Claims (the "11th Omnibus Objection").

2. The 11th Omnibus Objection seeks to eliminate certain claims because the Debtors' books and records do no reflect any liability to the claimant, the claims reflect post-petition claims or because certain claims that are contested by the Debtors on legal bases.

3. One of the claims to which the Debtors object is claim number 12284. This claim was filed by an entity known as Orlando 99-FL, LLC ("Orlando 99"). CAPX is the owner and holder of certain non-recourse notes with respect to a loan made to Orlando-99 (collectively

"Notes" [1]). The Notes are secured by that certain Open-End Mortgage, Security Agreement and Fixture Filing executed by Orlando 99, dated August 26, 1999 and recorded on September 13, 1999 in Official Records Book 3722, Page 1432, Public Records of Seminole County, Florida, and re-recorded in Official Records Book 3751, Page 331, Public Records of Seminole County, Florida (the "Mortgage"). The Notes are also secured by that certain Assignment of Lease and Agreement dated August 26, 1999, and recorded on September 13, 1999 in Official Records Book 3722, Page 1484, Public Records of Seminole County, Florida, and re-recorded in Official Records Book 3751, Page 382, Public Records of Seminole County, Florida (the "Assignment of Leases").

4. The Mortgage encumbers a parcel of real property which is located in Oviedo, Seminole County, Florida and which is owned by Orlando 99 (the "Subject Property"). CAPX recently obtained an Agreed Final Judgment of Foreclosure (the "Foreclosure Judgment") with respect to the Subject Property. A copy of the Foreclosure Judgment is attached hereto as Exhibit "A".

5. Winn-Dixie Store No. 2294 was operated on the Subject Property pursuant to a lease agreement between Winn-Dixie and Orlando 99 (the "Orlando 99 Lease"). The Orlando 99 Lease has been rejected. As a result of the rejection of the Orlando 99 Lease, both Orlando 99 and CAPX filed rejection claims. Orlando 99's claim number is 12284 (Claim No. 12284) and is in the amount of $1,054,916.00. CAPX filed a rejection claim on October 21, 2005 ("Claim No. 12211"), and more recently filed an amended rejection claim in the amount of $1,312,988.29 ("Claim No. 13004").

6. Orlando 99 filed Claim No. 12284 due to its status as the landlord with respect to the Orlando 99 Lease. CAPX filed Claim No. 12211 and Claim No. 13004 because the rejection claim

---

[1] The various documents referenced herein were attached to the claims at issue or have otherwise been filed with the Court, so they will not be attached hereto again. If any party in interest desires a copy of the documents, the undersigned will provide them upon request.

956791\1    2

is subject to the security interest provided by the Mortgage and Assignment of Leases, and the Assignment of Leases specifically gives CAPX the right to file and pursue such a claim.

7.  As the Debtors note with respect to Claim No. 12284 in the 11th Omnibus Objection, "claimant [(Orlando 99)] assigned its rights to its lender. Related claim also asserted by its lender." Therefore, the Debtors appear to recognize that CAPX is in fact the proper party to assert a claim with respect to the rejection of the Orlando 99 Lease. However, in an abundance of caution, CAPX is filing this Response to ensure that its rights with respect to the claim for the rejection of the Orlando 99 Lease are protected. Specifically, so long as the Order on the 11th Omnibus Objection does not prejudice CAPX's rights (or the rights of the purchaser of at the foreclosure sale scheduled by the Foreclosure Judgment) with respect to the assertion of a claim in connection with the rejection of Orlando 99 Lease, CAPX does not object to the objection to Claim No. 12284 being sustained.

WHEREFORE, CAPX respectfully requests that any Order entered with respect to the 11th Omnibus Objection is without not prejudice as to CAPX's rights (or the rights of the purchaser of at the foreclosure sale scheduled by the Foreclosure Judgment) with respect to the assertion of a claim in connection with the rejection of Orlando 99 Lease, and grant such other and further relief it deems appropriate.

/s/ Zachary J. Bancroft
Zachary J. Bancroft
Florida Bar No. 0145068
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
450 S. Orange Avenue, Suite 800 (32801)
Post Office Box 2809
Orlando, Florida 32802-2809
Telephone: (407) 843-4600
Facsimile: (407) 843-4444
Attorneys for CAPX REALTY, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Response of CAPX Realty, LLC to Debtors' Eleventh Omnibus Objection to (A) No Liability Claims, (B) No Liability Misclassified Claims and (C) Misclassified Claims has been served via the CM/ECF system, and also via U.S. Mail, and email (if an email address is indicated in connection with a party on the service list) this 5 day of June, 2006, to those parties listed on the service list below

_____
Zachary J. Bancroft

## SERVICE LIST

D.J. Baker
Sally McDonald Henry
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York  10036
Email:  djbaker@skadden.com

Stephen D. Busey
James H. Post
Cynthia C. Jackson
Smith, Hulsy & Busey
225 Water Street, Suite 1800
Jacksonville, Florida  32202
Email:  cjackson@smithhulsey.com

Kenneth C. Meeker
Assistant U.S. Trustree
135 West Central Blvd.
Room 620
Orlando, Florida  32801

956791\1                                           4

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT IN AND FOR SEMINOLE COUNTY, FLORIDA

CASE NO. 06-CA-278-17-K

CAPX REALTY, LLC, a Delaware limited
liability company,

       Plaintiff,

vs.

ORLANDO 99-FL, LLC, a Delaware limited
liability company; and WINN-DIXIE
STORES, INC., a Florida corporation,

       Defendants.
_____/

## AGREED FINAL JUDGMENT OF FORECLOSURE

THIS CAUSE came before this Court on the ___ day of _____, 2006, upon the Joint Stipulation and Motion for Entry of Agreed Final Judgment of Foreclosure by the Plaintiff, CAPX REALTY, LLC ("CAPX") and Defendant, ORLANDO 99-FL, LLC ("ORLANDO 99-FL") (the "Joint Motion"), and the Court, having considered the Joint Motion, the pleadings and proofs filed in this cause, having heard the arguments of counsel, and being otherwise fully advised in the premises, the Court hereby

FINDS, ORDERS and ADJUDGES as follows:

1.    The real property, improvements, fixtures and personal property which are the subject of this action are located in Seminole County, Florida.

2.    Pursuant to the Joint Motion, Defendant, ORLANDO 99-FL, has withdrawn its previously filed Motion to Dismiss and has stipulated to the entry of this Agreed Final Judgment of Foreclosure.

EXHIBIT "A"

3. Defendant, WINN-DIXIE STORES, INC. ("WINN-DIXIE"), has filed bankruptcy in the Middle District of Florida, Jacksonville Division Case In re: Winn-Dixie Stores, Inc., et al., Case No. 05-3817-3F1" (the "Winn-Dixie Bankruptcy). On January 3, 2006, CAPX's predecessor owner of the loan documents which are the subject of this action described in the Complaint (collectively the "Loan Documents") obtained relief from the automatic stay in the Winn-Dixie Bankruptcy pursuant to that certain Order Granting Motion of CAPX Bank for Relief from the Automatic Stay attached to CAPX's Complaint as Exhibit "J" (the "Order"). Pursuant to the Order, CAPX may name Winn-Dixie as a Defendant in this foreclosure lawsuit for the purpose of seeking *in rem* relief only. WINN-DIXIE was properly served with original service of process and on February 15, 2006, and the Clerk of the Court issued a default against WINN-DIXIE for failure to respond to the Complaint or file or serve any papers in this action on March 9, 2006. Said default is hereby ratified and confirmed.

4. This Court has jurisdiction of and over the Defendants to this action and over the subject matter of this action.

5. The Loan Documents evidence a valid debt and constitute a valid lien, security interest and encumbrance upon the real property, improvements, fixtures and personal property described therein (collectively the "Subject Property"). The Subject Property is described on Exhibit "A" attached hereto.

6. A monetary default exists under the Loan Documents, and as a result of said default, CAPX is entitled to foreclose its interest, lien, and encumbrance under the Loan Documents and is entitled to exercise and avail itself of all rights and remedies provided therein upon default, including the sale of the Subject Property encumbered thereby and to have the proceeds of such sale applied toward the sums due to CAPX under the Loan Documents.

7.  CAPX has retained counsel to represent it in this action and has agreed to pay said counsel a reasonable fee for their services. The Court finds that the attorneys' fee amount awarded in the paragraph below is a reasonable fee for the services rendered.

8.  The following amounts are due and owing to CAPX from ORLANDO 99-FL under the Loan Documents:

| | | |
|---|---|---|
| A. | Principal balance: | $4,435,718.86 |
| B. | Accrued interest:: | $ 271,538.76 |
| C. | Late Charges: | $ 0.00 |
| D. | Reasonable Attorneys' Fees: | $ 27,676.00 |
| E. | Costs: | $ 3,827.97 |
| | TOTAL AMOUNT DUE: | **$4,738,761.59** |

together with interest on the total amount due referenced above at the rate of nine percent (9%) per annum pursuant to § 55.03, Fla. Stat., and the Clerk's sale fee, the cost of publishing the Notice of Sale and any additional attorney's fees incurred by CAPX subsequent to the date hereof.

9.  For the payment of the total sum found to be due and owing to CAPX as set forth in the paragraph above, CAPX has a lien upon and security interest in the Subject Property, which lien and security interest are prior, paramount, and superior in dignity to the right, title, interest, claims, liens, encumbrances, and equities of the Defendants in this action, and all persons or entities claiming by, through, or under the Defendants in this action, and all persons or entities claiming any interest in the subject property subsequent to the filing of the Notice of Lis Pendens in this cause.

10. Unless Defendant, ORLANDO 99-FL, shall, at any time prior to the sale of the Subject Property, pay to CAPX or its attorneys the total sums found to be due to CAPX as hereinabove specified, then the Subject Property shall be sold by the Clerk of this Court to the highest bidder for cash at public sale, free and clear of all estate, right, title, interest, claim, lien, encumbrance, remainder, reversion, homestead, dower and equity of redemption whatsoever of

Defendants, and all persons or entities claiming by, through or under the Defendants, and all persons or entities claiming any interest in the Subject Property subsequent to the filing of the Notice of Lis Pendens herein.

11. Said sale shall be held by the Clerk of this Court at the Seminole County Courthouse, 301 North Park Avenue, Room S 201, Sanford, Seminole County, Florida, on June 15, 2006, at the hour of 11:00 A.M. (the "Sale") after the publication of notice thereof as required by § 45.031, Fla. Stat., and promptly after such sale the Clerk of this Court shall complete and file in this proceeding a Certificate of Sale as provided by law.

12. CAPX shall have and is hereby given leave to bid at the Sale and to apply against any bid made by it the amount found in this Agreed Final Judgment of Foreclosure. CAPX shall have the right to assign this Agreed Final Judgment of Foreclosure and the right to bid at the Sale and apply against any bid made the amount found to be due to CAPX in this Agreed Final Judgment of Foreclosure. In the event there is an assignment, CAPX shall file a Notice of Assignment with the Court that identifies the assignee, and the Clerk of Court shall recognize the assignee as the owner of this Agreed Final Judgment of Foreclosure with a right to credit bid the amount awarded herein without further order of this Court.

13. The Sale of the Subject Property shall not take place unless a representative of CAPX or its assignee is present at the Sale. If CAPX or its assignee's representative is not present at the Sale, the Clerk of the Court shall cancel the Sale. CAPX shall thereafter secure a new Sale date. If the Sale does take place without CAPX or its assignee's representative being present, the Sale shall be null and void and title to the Subject Property shall not pass to the purchaser at said Sale.

14. The proceeds derived from the Sale of the Subject Property ordered sold herein shall first be paid to CAPX to pay all sums due under or pursuant to this Agreed Final Judgment of Foreclosure, and if the Subject Property shall sell for more than enough to pay all sums due to

CAPX, the Clerk of the Court shall report any surplus of Sale proceeds to this Court and shall hold the same in the registry of this Court until further order of this Court. Any fee due to the Clerk of the Court as a result of funds being deposited into the Registry of the Court shall be due from the successful bidder and shall be paid to the Clerk of the Court, in addition to the successful bid amount, at the same time as the successful bid amount is due. Documentary stamp taxes shall not be paid from the proceeds of said Sale but shall be paid by the purchaser of the Subject Property prior to the recording of the Certificate of Title.

15. Upon the filing of the Certificate of Sale by the Clerk of the Court, the Defendants, all persons or entities claiming by, through, under or against the Defendants, and all persons or entities claiming any interest in the Subject Property subsequent to the filing of the Notice of Lis Pendens in this cause, shall be foreclosed of all estate, right, title, interest, claim, lien, encumbrance, remainder, reversion, homestead, dower and equity of redemption.

16. The Court retains jurisdiction of this action to grant such other and further relief as it deems just and proper, including, without limitation, issuing a Writ of Possession.

DONE AND ORDERED in Sanford, Seminole County, Florida, this __ day of _____, 2006.

/s/ DEBRA S. NELSON

Debra S. Nelson
Circuit Judge

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copy of the foregoing Agreed Final Judgment of Foreclosure has been furnished via U.S. Mail to: **Gary Soles, Esquire**, Lowndes, Drosdick, Doster, Kantor & Reed, P.A., P.O. Box 2809, Orlando, FL 32802-2809; **Robert D. Gatton, Esquire**, Broad and Cassel, Post Office Box 4961, Orlando, FL 32802-4961; **Winn Dixie Stores, Inc.**, c/o Corporate Service Company, Registered Agent, 1201 Hays Street, Tallahassee, FL 32301, this __ day of _____, 2006.

Judicial Assistant/Attorney

EXHIBIT "A"

That part of the West ½ of the Southeast ¼ of the Northeast ¼ lying South and East of State Road No. 426 (Aloma Avenue) and North and East of Dean Road, Section 31, Township 21 South, Range 31 East, Seminole County, Florida.
TOGETHER WITH: That part of the Northeast ¼ of the Southeast ¼ lying North of Oak Hollow Lane, as recorded in Official Record Book 2279, Page 35 of the Public Records of Seminole County, Florida and lying East of Dean Road, Section 31, Township 21 South, Range 31 East, Seminole County, Florida. Said lands being more particularly described as follows:
Commence at the southeast corner of the Southeast ¼ of the Northeast ¼ of Section 31, Township 21 South, Range 31 East, Seminole County, Florida. Thence run North 89°44'24" West along the South line of the Southeast ¼ of the Northeast ¼, a distance of 685.87 Feet to the Southeast corner of the West ½ of the Southeast ¼ of the Northeast ¼ of said Section 31; thence departing the South Line of the Southeast ¼ of the Northeast ¼ of said section 31, run North 00°07'31" East along the East line of the West ½ of the Southeast ¼ of the Northeast ¼, a distance of 19.81 feet to the point of beginning; said point lying on the northerly right of way of Oak Hollow Lane; Thence continue North 00° 07'31" East along said East line of the West ½ of the Southeast ¼ of the Northeast ¼, a distance of 1212.20 feet to a point on the Easterly right of way of State Road No. 426 (Aloma Avenue Per O.R. Book 3617 Page 1918): Thence Departing said East line of the West ½ of the Southeast ¼ of the Northeast ¼ run along said Easterly right of way of Aloma Avenue South 29°29'01" West, a distance of 285.81 feet; thence departing said Easterly right of way run South 60°31'59" east, a distance of 149.29 feet; thence run South 00°07'31" West a distance of 52.53 feet, thence run South 29°29'01" West a distance of 144.21 feet; thence run North 60°30'59" West a distance of 175.05 feet to the aforementioned Easterly right of way of Aloma Avenue; thence run along said Easterly right of way the following courses; South 29°29'01" West a distance of 298.44 feet to the point of curvature of a curve concave Northwesterly having the following elements: a central angle of 12°56'10", a radius of 1206.28 feet, a chord length of 271.77 feet and a chord bearing of South 35°57'06" West; thence from a tangent bearing of South 29°29'01" West run Southwesterly along the arch of said curve 272.35 feet to the end of said curve; said point also being the beginning of a non-tangent curve concave Easterly having the following elements: a central angle of 48°40'19", a radius of 217.44 feet; a chord length of 179.21 feet and a chord bearing of South 06°51'28" East; thence from a tangent bearing of North 42°25'11" East run Southeasterly along the arc of said curve 184.71 feet to the end of said non-tangent curve; said point lying on the Northeasterly right of way of Dean Road; Thence departing said curve run along said northeasterly right of way the following courses: South 54°08'20" East, a distance of 333.71 feet to the point of curvature of a curve concave Southwesterly having the following elements: a radius of 869.02 feet, a central angel of 02°08'31", a chord length of 32.49 feet and a chord bearing of South 53°04'05" East; thence run Southeasterly along the arc of said curve 32.49 feet to the point of reverse curvature of a curve concave Northerly having the following elements: a radius of 25.00 feet, a central angle of 08°07'09", a chord length of 32.18 feet and a chord bearing of North 87°56'37" East; thence departing said Northeasterly right of way of Dean Road from a tangent bearing of South 51°59'49" East, run Easterly along the arc of said curve 34.96 feet to a point of reverse curvature of a curve concave Southeasterly having the following elements: a radius of 285.00 feet, a central angle of 41°29'10", a chord length of 201.88 feet and a chord bearing of North 68°37'37" East; said point also lying on the Northerly right of way of Oak Hollow Lane; thence run Northeasterly along the arc of said curve and Northerly right of way line a distance of 206.36 feet to the point of beginning.

LESS:

That part of the West ½ of the Southeast ¼ of the Northeast ¼ lying South and East of State Road No. 426 (Aloma Avenue) and North and East of Dean Road, Section 31, Township 21 South, Range 31 East, Seminole County, Florida; being more particularly described as follows: Commence at the Southeast corner of the Southeast ¼ of the Northeast ¼ of Section 31, Township 21 South, Range 31 East, Seminole County, Florida; thence run North 89°44'24" West along the South line of the Southeast corner of the Northeast ¼ a distance of 685.87 feet to the Southeast corner of the West ½ of the Southeast ¼ of the Northeast ¼ of said Section 31; thence departing the south line of the Southeast ¼ of the Northeast ¼ of said section 31, run North 00°07'31" East along the East line of the West ½ of the Southeast ¼ of the Northeast ¼, a distance of 19.81 feet; said point lying on the Northerly right of way of Oak Hollow Lane; thence continue North 00°07'31 East along the said East line of the West ½ of the Southeast ¼ of the Northeast ¼, a distance of 332.79 feet; thence departing said East line of the West ½ of the Southeast ¼ of the Northeast ¼ run North 89°52'29" West, a distance of 347.50 feet to the point of beginning; thence continue North 89°52'29" West, a distance of 64.00 feet; thence run South 00°07'31" West, a distance of 137.00 feet; thence run South 89°52'29" East, a distance of 44.00 feet; thence run South 00°07'31" West, a distance of 28.67 feet; thence run South 89°52'29" East a distance of 20.00 feet; thence run North 00°07'31" East, a distance of 165.67 feet to the point of beginning.

TOGETHER WITH easements contained in Declaration of Reciprocal Easements and Restrictive Covenants recorded December 18, 1997, Recorded in Official Records Book 3342, page 1596, in the Public Records of Seminole County, Florida.
(the "Land Parcel")

**TOGETHER WITH:**

(all capitalized words and/or terms used hereinbelow shall have the meanings set forth in the Loan Documents and/or the Lease unless otherwise indicated)

The entire right, title and interest of CAPX and any other Owner in and to the Land Parcel, together with (a) all right, title and interest of CAPX and any other Owner in and to all buildings, structures and other improvements now standing or at any time hereafter constructed or placed upon the Land Parcel, including without limitation, all right, title and interest of CAPX and any other Owner in and to all building equipment and building fixtures of every kind and nature on the Land Parcel or in any such building, structure or other improvements, including Landlord's Equipment but excluding Tenant's Equipment (said buildings, structures, other improvements and building equipment, building fixtures and Landlord's Equipment being herein collectively called the "Improvements"); (b) all fixtures, fittings, appliances, apparatus, equipment, machinery and articles of personal property and replacements thereof now or at any time hereafter owned by CAPX and any other owner, now or at any time hereafter affixed to, attached to, placed upon or used in any way in connection with the complete and comfortable use, enjoyment, occupancy or operation of the Improvements on the Property including Landlord's Equipment but excluding Tenant's Equipment (c) all right, title and interest of CAPX and any other Owner in and to all and singular the tenements, hereditaments, easements, rights-of-way, rights, privileges and appurtenances in and to the Property, now or at any time hereafter belonging or in any way appertaining thereto, and all right, title and interest of CAPX and any

other Owner, in, to and under any streets, ways, alleys, vaults, gores or strips of land adjoining the Land Parcel; (d) all claims or demands of CAPX and any other Owner, in law of in equity in possession or expectance of, in and to the Property; and (e) all rents, income, revenues, issues, awards, proceeds and profits from and in respect of the property described in this Granting Clause First, all of which are hereby specifically assigned, transferred and set over to Orlando 99-FL it being the intention of the parties hereto that, so far as may be permitted by law, all property of the character hereinabove described which is now owned or held or is hereafter acquired by CAPX or any other Owner and is affixed, attached and annexed to the Property shall be and remain or become and constitute a portion of the Mortgaged Property (as defined in the Mortgage) and the security covered by and subject to the lien hereof. The Land Parcel, together with the improvements and Landlord's Equipment located and to be located thereon described in this Granting Clause First, are herein called the "Property".

The entire right, title and interest of CAPX and any other Owner in and to the Lease and the Guaranty, if any, including the right to all extensions and renewals of the term of the lease, including, without limitation, the present and continuing right (i) to make claim for, collect, receive and receipt for any and all of the rents, income, revenues, issues, awards, proceeds and profits and other sums of money payable or receivable by the lessor under the Lease or pursuant to the Guaranty, if any, whether payable as rent or otherwise, including, without limitation, sums of money receivable thereunder or pursuant thereto by virtue of paragraphs 7(f), 7(9) and 10 of the Lease, (ii) to accept or reject any offers made pursuant to the Lease to purchase any interest in the Property (iii) to bring actions and proceedings under the Lease or the Guaranty, if any, or for the enforcement thereof, (iv) to pursue and collect any claim in the bankruptcy or other insolvency proceeding of Lessee or Guarantor and (v) to do anything which CAPX and any other Owner or any Lessor is or may become entitled to do under the Lease or pursuant to the Guaranty, if any, provided that the assignment made by this Granting Clause Second shall not impair or diminish any obligation of CAPX or any other Owner under the Lease, the Assignment or the Guaranty, if any, nor shall any such obligation be imposed upon Orlando 99-FL.

Any and all moneys and other property which may from time to time become subject to the lien hereof or which may come into the possession or be subject to the control of Orlando 99-FL pursuant to the Mortgage, the Assignment, the Guaranty, if any, the Letter Agreement or any other instrument included in the Mortgaged Property, including, without limitation (but subject to the terms and provisions of the Lease), insurance proceeds and all awards which may at any time be made or assigned to CAPX and any other Owner for the taking by eminent domain of the whole or any part of the Property or any interest or easement therein, and other property, if any, delivered to Orlando 99-FL by or on behalf of CAPX and any other Owner, it being the intention of CAPX and any other Owner and it being hereby agreed that all property hereafter acquired by CAPX or any other Owner (including, without limitation all right, title and interest of CAPX or any other Owner in and to any Store Expansion) and required to be subject to the lien of the Mortgage or intended so to be shall forthwith upon the acquisition thereof by CAPX or any other Owner be subject to the lien of the Mortgage as if such property were now owned by CAPX or any such Owner and ere specifically described in the Mortgage and granted thereby or pursuant thereto.

All products, accessions, rents, issues, profits, returns, income and proceeds of and from any and all of the foregoing (including proceeds which constitute property of the types described in the three immediate paragraphs above).

All right, title and interest of CAPX or Owner in and to all improvements, alterations, substitutions, restorations and replacements of any and all additions and appurtenances to the property (including, without limitation, all Alterations or Store Expansion, hereafter acquired by or released to CAPX or Owner) immediately upon such acquisition or release and without any further Granting by CAPX or Owner shall become part of the Property and the Mortgaged Property and shall be subject to the lien of the Mortgage fully, completely and with the same effect as though now owned by CAPX or Owner and specifically described in the Granting Clauses of the Mortgage.

Any sum or sums in addition to those outstanding under the Notes advanced by the holder of the Notes to the CAPX and at any time within twenty (20) years from the date of the Mortgage, with interest thereon at the rate agreed upon at the time of each additional loan or advance. Each such additional loan or advance will be equally secured with and have the same priority as the original indebtedness secured by the Mortgage and be subject to all of the terms and provisions of the Mortgage, whether or not such additional loan or advance is evidenced by a promissory note of CAPX and whether or not identified by a recital that it is secured by the Mortgage, provided, however, that the aggregate amount of the principal indebtedness outstanding at any one time will not exceed an amount equal to two (2) times the original principal sum of the Notes secured by the Mortgage, and provided further that it is understood and agreed that the future advance provision of the Mortgage will not be construed to obligate Orlando 99-FL to make such additional loans or advances.

All of Orlando 99-FL's estate, right, title and interest in, to and under the Lease, together with all rights, powers, privileges, options and other benefits of Orlando 99-FL, as lessor under the Lease, including but not by way of limitation, (i) the immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, insurance proceeds, condemnation awards, moneys and security receivable by Orlando 99-FL under the Lease or pursuant to any of the provisions thereof, whether as rents or as the purchase price of Orlando 99-FL's interest in the Property or otherwise (except sums payable directly to any person other than the lessor thereunder), subject to the rights of Lessee under the Lease, (ii) the right to accept or reject any offer by Lessee to purchase the Property, or any part thereof, or any award payable to Orlando 99-FL in connection with a taking thereof, (iii) the right and power (which right and power are coupled with an interest) to execute and deliver, as agent and attorney-in-fact of Orlando 99-FL, an appropriate deed or other instrument necessary of convey to Lessee Orlando 99-FL's interest in the Property, any part thereof or any insurance proceeds or award payable to Orlando 99-FL in connection with a casualty or taking thereof if Lessee becomes obligated to purchase Orlando 99-FL's interest in the Property, any part thereof or any insurance proceeds or award payable to Orlando 99-FL in connection with a casualty or taking thereof or exercises its Substitution Option pursuant to paragraph 11 of the Lease, (iv) the right to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any substitution purchase and conveyance referred to in clause (iii) above, (v) the right to make all waivers and agreements, (vi) the right to give all notices, consents and releases, (vii) the right to give all notices of default and to take any legal action upon the happening of a default under the Lease, including the commencement, conduct and consummation of proceedings at law or in equity as shall be permitted under any provision of the Lease or by law or in equity (including, without limitation, the right to pursue and collect any claim in a bankruptcy or other insolvency proceeding involving Lessee) (viii) the right to do any and all other things whatsoever which Orlando 99-FL or any lessor is or may be entitled to, and (ix) all of Orlando 99-FL's right, title and interest in the

Proof of Claim, lease rejection damage claim, and any other paper filed by Orlando 99-FL in the Winn-Dixie Bankruptcy.