**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

WINN-DIXIE STORES, INC., et. al.                    Bankruptcy Case No. 3:05-bk-3817-JAF
                                                     Chapter 11

                        Debtor(s).                   Jointly Administered
_____/

**MOTION OF WOODLAND HARTFORD ASSOC. LLC FOR AN ORDER**
**GRANTING IT RELIEF FROM ORDER AUTHORIZING DEBTORS TO REJECT**
**LEASE AND GRANTING RELATED RELIEF**

        Woodland Hartford Assoc., LLC ("Woodland"), by and through its undersigned counsel,

Schuyler Stewart Smith and The Law Offices of Joel Shafferman, LLC, pursuant to F.R.B.P.

9024 and F.R.C.P. 60(b) move for the entry of an order granting it relief from an order

authorizing the Debtors to reject lease for store number 997 dated April 20, 2006 listed as docket

entry number 7342 and granting Woodland such other and further relief as this Court may deem

just and proper, respectfully represent as follows:

**BACKGROUND**

        1.      On or about November 21, 1997 Winn-Dixie Raleigh, Inc. ("WD Raleigh"), as

lessee, and Gem Cedar, L.L.C. ("Gem"), as lessor, entered into a lease for Store No. 997 (the

"Lease") which is located at Cedar Road and Las Gaviotas Boulevard, Chesapeake, Virginia (the

"Premises"). A copy of the Lease was attached to the Motion.

        2.      On or about September 15, 1998, Gem assigned its rights in the Lease to

Woodland.  (Annexed hereto as Exhibit "A" is a copy of the Assignment and Assumption

Agreement for the Lease.)  The Debtors were advised of this assignment and had numerous

written communications with representatives of Woodland (Attached hereto as Exhibit "B" are several written communications by and between representatives of Woodland and the Debtors.)

3.      On or about July 28, 2005 Woodland filed a proof of claim indicating the amount owed to it by the Debtor(s) was $45,415.70.

4.      On or about August 21, 2002, WD Raleigh subleased the Premises to Cornerstone Christian Church (the "Subtenant") (the "Sublease").    According to the Debtors' motion to reject  the Lease, dated April 6, 2006 (the "Motion"), a copy of which is attached hereto as Exhibit "C", the Subtenant was in default for failing to pay pre-petition rent and has not paid rent since the Debtors' commencement of these Chapter 11 cases, creating an arrears of $405,780. (Motion ¶6).  According to the Motion, based on the default, WD Raleigh notified the Subtenant of the default and terminated the Sublease effective March 14, 2006. (Motion ¶6).

5.      By the Motion, the Debtors sought authorization to terminate the Lease alleging that they have no further need for the Lease since they have "exited this market area" and "now have no subtenant in the store" (Motion ¶6).

6.      This Court granted the Motion and entered an order memorializing same on April 20, 2006 (the "Order"), a copy of which is attached hereto as Exhibit "D".  By this application, Woodland seeks relief from the Order, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, as made applicable to title 11 cases through Rule 9024 of the Federal Rules of Bankruptcy Procedure, since Woodland was never served with a copy of the Motion and the Debtors' representation in paragraph 6 of the Motion that the Debtors "have no subtenant in the store" is untrue.

7.      As stated above, Woodland was never served with a copy of the Motion. Woodland first learned that the Lease had been rejected by its receipt of a facsimile memo, a

copy of which is attached hereto as Exhibit "E", it on April 28, 2006 sent to it by Don Hess, an agent of the Debtors.

8.      During the early part of the first week of May, 2006, Joel M. Shafferman, Woodland's counsel in New York, New York, was advised of this development in the case and, after several attempts, was able to speak to Cynthia Jackson, one of the Debtors' counsels at Smith Hulsey & Busey.  Ms. Jackson thereafter informed Mr. Shafferman that the Motion was served on Gem[1] (the original landlord until September, 1998) at 207 Business Park, Suite 101, Virginia Beach, Virginia and the Subtenant.  Ms. Jackson has not yet provided Mr. Shafferman with a copy of an affidavit of service of the Motion nor has one been filed on this Court's electronic docket.

9.      The Debtors were required to serve Woodland with the Motion but failed to do so. The Debtors are aware of the assignment of the Lease to Woodland that occurred more than seven (7 and1/2) and one half years ago since the Debtors have consistently remitted lease payments to Wachovia Bank, the first mortgagee of the Premises, subsequent to the Assignment.

10.     In recent months, the Debtors have made these payment late, incurring late charges which Woodland is now obligated to pay.  Additionally, by not remitting the May, 2006 payment to Wachovia Bank, the Debtors have put the mortgage in default, which accelerated the interest and raised the rate by four (4%) percent, which increases Woodland's debt service by approximately $140,000 a year. Additionally, after the deadline for filing proofs of claim was set in these cases, the form proof of claim, a copy of which is attached hereto as Exhibit "F", was sent to Woodland at its Bronx, New York address and contained that address on the portion

---

[1] Members of Woodland have been advised that the Church was never served with either a notice of default of the Sublease or the Motion.

where the claimant's name and address is printed. Finally, the facsimile memo, described in paragraph 6 supra, was sent to Woodland, not Gem.

**GROUNDS EXISTS FOR WOODLAND TO OBTAIN RELIEF FROM THE ORDER**

11.      Under Federal Rule of Civil Procedure 60(b), a court may provide relief from a judgment based on such things as mistake, newly discovered evidence, fraud, a void or satisfied judgment or any other similar reason justifying relief.  In re Gomez, 250 B.R. 397, 400 (Bankr. M.D. Fla. Orlando Div. 1999).

12.      By this application, Woodland seeks an order granting it relief from the Order. This application should be granted since, as described in paragraphs 6-8, supra, Woodland was never served with the Motion and did not have an opportunity to respond to it. This, in and of itself, is grounds to grant Woodland relief from the Order.

13.      In addition to the Debtors' failure to serve Woodland, in the Motion the Debtors have mischaracterized certain material facts about the situation at the Premises which warrants this Court granting Woodland relief from the Motion.  Specifically, in the Motion the Debtors contend that "WD Raleigh terminated the Sublease effective March 14, 2006.  The Debtors have no subtenant in the store and have exited this market area." (Motion ¶6).

14.      The above-quoted statement in the Motion is not true.  The Subtenant is still in possession of the Premises and is still operating as a church.  (Attached hereto as "G" are certain pages printed from the Subtenant's website which demonstrate that the Subtenant is in possession of the Premises.)    Additionally, within the last week, agents of Woodland have spoken to Dr. Blanchard, the church's pastor, who confirmed that the church is fully operating.

15.      Additionally, the Debtors failed to disclose in the Motion that on March 31, 2006, the Subtenant commenced a civil action against the City of Chesapeake, Virginia entitled in the

United States District Court for the Eastern District of Virginia entitled <u>Corner Stone Christian</u> <u>Center, Inc. and Dr. Michael A. Blanchard v. City of Chesapeake, Robert Smalley, Patrick M.</u> <u>Hughes, James T. Davis and Gregory A. Orfield</u> (Index No. 06-cv-00186-JBF-FBS) seeking damages, in the amount of $8,000,000, for defendants' alleged violation of the section 1983 of the Civil Rights Act.  In this action, the Subtenant contends that the City of Chesapeake's denial of building and occupancy permits limited its use of the Premises and, therefore, violated its civil rights.  (Attached hereto as Exhibit "H" is a copy of the docket of this case as well as a newspaper article from the April 5, 2006 issue of The Virginian-Pilot discussing the commencement of this action.)

16.    As a result of the Order, Woodland finds itself in the untenable position of owning a property where the Debtors, the sole tenant, are not paying rent because the Lease was presumptively rejected and Woodland is unable to mitigate its damages by releasing the Premises because the Subtenant remains in possession, while not paying rent.  To exacerbate the situation, the Debtors have not paid real estate taxes for over a year, as was their obligation under the Lease, and Woodland is now liable for approximately $100,000 of outstanding real estate taxes to the City of Chesapeake. The City of Chesapeake has advised Woodland that it is about to commence an in rem foreclosure action due to the real property tax arrears (Attached hereto as Exhibit "I" is evidence of the real property tax arrears.)

17.    For all of the above described reasons, Woodland seeks an order granting it relief from the judgment pursuant to Rule 60(b).  The actual status of the situation surrounding the Lease and the Premises is momentously different from the picture painted by the Debtor in the Motion.  It would be inequitable and would cause extreme hardship for Woodland were it to be stuck with a rejected lease that is saddled with a holdover subtenant that is neither paying rent

nor real estate taxes.  Such a scenario is not what was envisioned by Congress when it enacted section 365 of the Bankruptcy Code.

18.    In the event that this Court determines that it will permit the Debtors to reject the Lease, then Woodland request that any modified order rejecting the Lease also deem the Sublease to be rejected and compel the Subtenant to immediately surrender the Premises to Woodland in a "broom clean" condition.  Woodland also requests that any modified rejection order require the Debtors to continue paying rent to Woodland until the Subtenant has vacated the Premises.

18.    The alternative relief requested by this application is consistent with section 365 of the Bankruptcy Code and its case law progeny.  The majority view is that rejection equals the termination of non-residential real property leases in which the debtor is the lessee. See, Sea Harvest Corp.v. Riviera Land Co., 868 F.2d 1077(9th Cir, 1989);  In re: 6177 Realty Associates, Inc., 142 B.R. 1017 (Bankr. S.D. Fla. 1992); In re Giles Associates, Ltd, 92 B.R. 695 (Bankr. W.D. Tex. 1988);  In re: Bernard, 69 B.R. 13 (Bankr. D. Haw. 1986); In re: Southwest Aircraft Services, Inc., 53 B.R. 805 (Bankr. C.D. Cal. 1985). "It is the surrender language in §365(d)(4) which renders rejection of a non-residential real property lease different from other executory contracts in which rejection may not equal termination." In re: 6177 Realty Associates, Inc., 142 B.R. at 1019. Section 365(d)(4) provides that if the Trustee does not assume an unexpired lease within 60 days of the filing date or within such time as the Court may have fixed, "then such lease is deemed rejected, and the Trustee shall immediately surrender such non-residential real property to the lessor." § 365(d)(4).

19.    Since rejection of a non-residential lease results in termination of the lease, once the underlying lease is rejected "sublessees retain no interest that can be pursued in bankruptcy

court or state court." In re: 6177 Realty Associates, Inc., 142 B.R. at 1019. Under the Supremacy Clause of the United States Constitution, section 365(d)(4) preempts or supersedes any state law rights that the sublessee or mortgagee could assert following a breach by the lessee. Id. at 1020.

20.     Based on the above–described case law and facts of this case, it is respectfully requested that if this Court determines that the Lease should be rejected, it should condition any rejection on the Subtenant surrendering the Premises to Woodland in a "broom clean" condition, and require the Debtors to continue paying rent to Woodland until such surrender occurs.

SCHUYLER·STEWART·SMITH

/s/ Wayne M. Singletary
/s/ Michael E. Cecil
_____
Wayne M. Singletary
Florida Bar # 144109
Michael E. Cecil
Florida Bar # 722855
Co-Counsel for Creditor
118 W. Adams St. #800
Jacksonville, FL 32202
Phone:   (904) 353-5884
TollFree: (866) 353-5884
Fax:       (904) 353-5994

THE LAW OFFICES OF
JOEL SHAFFERMAN, LLC

/s/ Joel Shafferman
_____
Joel Shafferman
Attorney for Creditor
80 Wall Street, Suite 910
New York, New York 10005
(212) 509-1802
New York Bar No.: 2035079

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that a copy has been furnished either by electronic or standard first class mail on June 7, 2006, to: Winn-Dixie Stores, Inc, Debtor, 5050 Edgewood Court, Jacksonville, FL 32254-3699; Adam Ravin, Esquire, Four Times Square, New York, NY 10036; Cynthia C .Jackson, Esquire, James H. Post, Esquire, Leanne McKnight Prendergast, Esquire, Stephen D. Busey, Esquire, 225 Water Street, Suite 1800, Jacksonville, FL 32201; Dennis F. Dunne, Esquire, 1 Chase Manhattan Plaza, New York, NY 10005; John B Macdonald, Esquire, Patrick P. Patangan, Esquire, 50 N. Laura Street, Suite 2500, Jacksonville, FL 32202; counsel for the Debtor's post-petition secured lenders; the other parties in interest named on the Master Service List maintained in these cases; and Corner Stone Christian Center, Subtenant, 215 Las Gaviotas Boulevard, Chesapeake, VA 23322.

SCHUYLER·STEWART·SMITH

/s/ Wayne M. Singletary
/s/ Michael E. Cecil
_____

Wayne M. Singletary,
Florida Bar # 144109
Michael E. Cecil,
Florida Bar # 722855
Co-Counsel for Creditor
118 W. Adams St. #800
Jacksonville, FL 32202
Phone:  (904) 353-5884
TollFree: (866) 353-5884
Fax:       (904) 353-5994

THE LAW OFFICES OF
JOEL SHAFFERMAN, LLC

/s/ Joel Shafferman

_____

Joel Shafferman
Attorney for Creditor
80 Wall Street, Suite 910

New York, New York 10005
(212) 509-1802
New York Bar No.: 2035079