Hearing Date: June 29, 2006, 1:00 p.m.
Objection Deadline: June 22, 2006, 4:00 p.m.

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

## APPLICATION FOR AUTHORITY TO RETAIN DELOITTE TAX LLP TO PROVIDE EMERGENCE-RELATED TAX SERVICES

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order under 11 U.S.C. § 327(a) approving the retention of Deloitte Tax LLP ("Deloitte Tax") effective as of May 9, 2006 to provide tax services related to the Debtors' plan of reorganization and emergence from chapter 11. In support of the Application, the Debtors state as follows:

### Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases.  An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005, was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4.      This Court has jurisdiction over the Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicate for the relief requested by this Application is section 327(a) of the Bankruptcy Code, and such relief is subject to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Relief Requested

6.      By this Application, the Debtors request an order pursuant to section 327(a) of the Bankruptcy Code, approving the retention of Deloitte Tax effective as of May 9, 2006 to provide tax services related to the Debtors' plan of reorganization and emergence from chapter 11 (the "Emergence Tax Services").  The Debtors request that Deloitte Tax be retained to provide such services on the terms provided in this Application and in the letter agreement between the Debtors and Deloitte Tax dated April 17, 2006 (the "Engagement Letter").  A copy of the Engagement Letter is attached as Exhibit A to this Application.

**Basis for Relief**

7.      The Debtors have made substantial progress in reorganizing their businesses and in establishing a platform from which to emerge from chapter 11.  In this vein, and notwithstanding significant open issues, the Debtors are in the process of developing and negotiating what they hope will be a consensual plan of reorganization.  The Debtors expect to file their proposed plan of reorganization on June 29, 2006 and expect to emerge from chapter 11 later this year.

8.      The Debtors anticipate that their plan of reorganization and emergence from chapter 11 will give rise to a host of state and federal tax issues for which the Debtors will require the special expertise of outside tax professionals, including the tax impact and reporting requirements resulting from the restructuring of the Debtors' businesses, tax issues related to the Debtors' fresh-start accounting, the tax treatment of post-petition interest and reorganization cost, and other issues under applicable federal and state tax law.  The Debtors wish to retain Deloitte Tax to provide the Emergence Tax Services described in the Engagement Letter to ensure that the Debtors are able to address their plan and emergence tax issues in a timely and successful manner.

9.      As described in the Engagement Letter, the Emergence Tax Services for which the Debtors propose to engage Deloitte Tax include the following:

> (a) Assisting the Debtors' tax department with its overall coordination and management of the bankruptcy emergence process including tax bankruptcy workplan evaluation, management and execution;

> (b) Providing tax consulting in connection with the Debtors' fresh start accounting and the Debtors' determination of the tax impacts and resulting tax reporting requirements of restructuring the business operations, settlement of pre-petition claims, treatment of intercompany balances, asset dispositions, damages relating to rejected leases or other contracts, pending litigation or disputed claims, reduction in tax attributes and resulting deferred taxes, determination of the availability, limitations, and preservation of tax attributes (such as net operating losses, tax credits and tax basis);

3

(c) Assisting the Debtors in determining the likely amount of cancellation of indebtedness income and assisting the Debtors in determining the effect of tax attribute reduction (for federal and state purposes) under the bankruptcy exclusion under section 108 of the Internal Revenue Code and applicable state tax laws giving consideration to various elections that may be beneficial for Winn-Dixie;

(d) Assisting the Debtors in determining whether an ownership change, within the meaning of section 382 of the Internal Revenue Code, will occur as a result of the proposed plan of reorganization and assisting the Debtors in determining whether the Debtors would potentially qualify for and benefit from the special bankruptcy exceptions contained in section 382(1)(5) and (1)(6) and applicable state tax laws;

(e) Assisting the Debtors in evaluating the tax basis in subsidiary stock under applicable consolidated return regulations and, if there is an excess loss account (i.e., negative tax basis) with respect to the stock of any subsidiary, providing tax consulting to the Debtors regarding methods it may employ to minimize the income recognition related thereto;

(f) Advising the Debtors in their efforts to determine the tax treatment of post-petition interest and reorganization costs; and

(g) Documenting, as appropriate, the tax analysis, opinions, recommendations, conclusions, and correspondence for any tax issue or other tax matter described above.

10.    The proposed retention of Deloitte Tax as contemplated by this Application is critical to ensure that the Debtors are able to address the tax-related issues that will arise in connection with their plan of reorganization and emergence from chapter 11.  As a result of a loss of key personnel in their tax department, the Debtors lack the internal expertise to address the many plan and emergence tax-related issues they will face without the advice of outside professionals. Deloitte Tax has substantial experience in providing plan and emergence tax advice to chapter 11 debtors and is well suited to providing the Emergence Tax Services required by the Debtors. Moreover, the Debtors have retained two affiliates of Deloitte Tax – Deloitte Financial Advisory Services LLP ("Deloitte FAS") and Deloitte Consulting LLP ("Deloitte Consulting") – to provide fresh-start accounting services in connection with the Debtors' emergence from chapter 11.

4

Although distinct from the fresh-start accounting services being provided by Deloitte FAS and

Deloitte Consulting, the Debtors believe that significant efficiencies will be gained by having Deloitte

Tax – as opposed to another tax professional firm – provide the Emergence Tax Services.

Accordingly, Deloitte Tax is uniquely positioned to provide the Emergence Tax Services in the most

efficient manner possible.

       11.    Furthermore, none of the Debtors' other professionals has provided

Emergence Tax Services.  As indicated, the Debtors have, pursuant to a separate engagement,

retained Deloitte FAS and Deloitte Consulting to provide fresh-start accounting services in

connection with the Debtors' emergence from chapter 11.  However, these fresh-start services are

limited to accounting services and do not encompass the Emergence Tax Services required by the

Debtors.  The Debtors have also, by separate engagements, retained (a) Deloitte Consulting to

provide in-store consulting services to assist the Debtors in developing and initiating in-store

operational initiatives and (b) Deloitte & Touche LLP to provide internal audit risk assessment,

quality assessment, and journal entry testing services.  These services are unrelated to the Emergence

Tax Services.  Finally, the Debtors have, by separate engagement, retained KPMG LLP ("KPMG")

as auditors and tax advisors.  KPMG's primary role in these cases has been as the Debtors' external

auditors.  Although KPMG has provided some tax services to the Debtors, these services have not

included the Emergence Tax Services to be provided by Deloitte Tax.  Instead, KPMG's tax

advisory services have been limited to ordinary course tax advisory services, selected tax modeling

for the effects of various plan of reorganization scenarios, and assistance with the filing of the

Debtors' 2005 tax return.  Moreover, KPMG may be precluded from providing aspects of the

Emergence Tax Services due to potential conflicts arising from KPMG's role as external auditor to

the Debtors.  The Debtors are seeking to retain the services of Deloitte Tax to avoid any such

conflicts and to ensure that the Emergence Tax Services are obtained in a timely fashion.  As an additional matter, the Debtors will coordinate with their professionals to ensure that there is no duplication of effort among Deloitte Tax and any of the Debtors' other professionals.

   12. Subject to the Court's approval of this Application, Deloitte Tax has indicated its willingness to provide the Emergence Tax Services required by the Debtors.

   13. To the best of the Debtors' knowledge, except as set forth in this Application and the declaration of Stephen J. Burke on behalf of Deloitte Tax attached as Exhibit B to this Application (the "Burke Declaration"): (a) Deloitte Tax does not hold or represent any interest adverse to the Debtors' estates; (b) Deloitte Tax has had no affiliation with the Debtors, their creditors or any party in interest, or to the Debtors' attorneys that are known to Deloitte Tax to be assisting the Debtors in these cases, and the personnel expected to provide services to the Debtors on behalf of Deloitte Tax pursuant to the Engagement Letter are not related to the United States Trustee assigned to these cases, any person employed in the office of such United States Trustee, or the Bankruptcy Judge presiding over these cases; and (c) Deloitte Tax is a "disinterested person" within the meaning of sections 101(14) and 327(a) of the Bankruptcy Code.[2]

   14. The Debtors have agreed to pay the following hourly rates for the Emergence Tax Services: (a) $485-$600 for partners, (b) $425-$500 for senior managers, (c) $325-$425 for managers, (d) $230-$325 for senior staff, (e) $190 to $230 for staff, and (f) $80-$125 for

---

[2] As previously indicated, the Debtors have retained under section 327(a) of the Bankruptcy Code Deloitte FAS, Deloitte Consulting, and Deloitte & Touche, affiliates of Deloitte Tax, to provide services that do not involve the Emergence Tax Services to be provided by Deloitte Tax.  As of the Petition Date, Deloitte Consulting was owed $209,411 for services provided to the Debtors and expenses incurred.  Subsequent to the Petition Date, but prior to May 16, 2005 (the date on which Deloitte Consulting was retained in these cases), Deloitte Consulting provided services to the Debtors totaling $95,842 and incurred $18,003 in expenses, each in support of certain initiatives relating to the Debtors' perishable trading network (such amounts and the $209,411 prepetition claim collectively, the "DC Pre-Engagement Claim").  In the interest of continuing its relationship with the Debtors and to meet the requirements of disinterestedness under the Bankruptcy Code in connection with its separate retention application (which was approved by an order of this Court dated June 16, 2005 and filed at Docket No. 1749), Deloitte Consulting agreed that it would not seek any recovery from the Debtors for the DC Pre-Engagement Claim.  No amounts were owing to Deloitte Tax as of the Petition Date.

paraprofessionals.  The Debtors have been advised that these are typical rates charged by Deloitte

Tax for similar services.  In addition, the Debtors have agreed to pay for reasonable and necessary

expenses incurred by Deloitte Tax in connection with this engagement, which expenses may include

travel, telephone costs, meals, and other necessary costs in providing services to the Debtors and that

may be incurred in considering or responding to any legal, regulatory, or other proceedings as a

result of this engagement, each in accordance with the customary reimbursement policies of Deloitte

Tax.

15.    Deloitte Tax will file fee applications with the Court in accordance with

applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules, and orders of this Court.

16.    The Engagement Letter also provides for (a) a limitation on any damages that

may be recoverable by the Debtors against Deloitte Tax, except to the extent any such damages

result from gross negligence, willful misconduct, bad faith, or self-dealing by Deloitte Tax or its

subcontractors, and (b) an indemnification from the Debtors in favor of Deloitte Tax against claims

of third parties, except to the extent any such claims result from gross negligence, willful misconduct,

bad faith, or self-dealing by Deloitte Tax or its subcontractors.

## Notice

17.    Notice of this Motion has been provided to (a) counsel to the United States

Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors

Committee, (d) the other parties in interest named on the Master Service List maintained in these

cases, and (e) Deloitte Tax.  No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the

Court (a) enter an order in the form of Exhibit C to this Application approving the retention of

Deloitte Tax effective as of May 9, 2006 to provide Emergence Tax Services and (b) grant such

other and further relief as the Court deems just and proper.

Dated:  June 9, 2006.

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By      *s/ D. J. Baker*                          By      *s/ Cynthia C. Jackson*
        D. J. Baker                                   Stephen D. Busey
        Sally McDonald Henry                          James H. Post
        Rosalie Walker Gray                           Cynthia C. Jackson,
        David M. Turetsky                             Florida Bar Number 498882
Four Times Square                          225 Water Street, Suite 1800
New York, New York 10036                   Jacksonville, Florida  32202
(212) 735-3000                             (904) 359-7700
(212) 735-2000 (facsimile)                 (904) 359-7708 (facsimile)
djbaker@skadden.com                        cjackson@smithhulsey.com

Co-Counsel for the Debtors                 Co-Counsel for the Debtors

**Exhibit A**

# Deloitte.

Deloitte Tax LLP
Suite 1500
191 Peachtree Street NE
Atlanta, GA 30303-1924
USA

Tel: +1 404 220 1500
www.deloitte.com

April 17, 2006

Mr. D. Michael Byrum
Chief Accounting Officer
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254

Dear Mike:

We are pleased to provide you with this proposal to perform federal and state tax consulting and restructuring services to Winn-Dixie Stores, Inc. ("Winn-Dixie") in connection with Winn-Dixie's reorganization under chapter 11 of the United States Bankruptcy Code. This letter, including the attached General Business Terms (collectively, the "Agreement"), sets forth the agreement between Winn-Dixie and related entities and Deloitte Tax LLP ("Deloitte Tax" or "we"), whereby Deloitte Tax will provide the below outlined services.

## Services

We expect that our tax consulting and restructuring services (collectively, the "Services") may include, but may not be limited to, the following:

(a)     assisting Winn-Dixie's tax department with its overall coordination and management of the bankruptcy emergence process including tax bankruptcy workplan evaluation, management and execution;

(b)     providing tax consulting in connection with Winn-Dixie's fresh start accounting and Winn-Dixie's determination of the tax impacts and resulting tax reporting requirements of restructuring the business operations, settlement of pre-petition claims, treatment of intercompany balances, asset dispositions, damages relating to rejected leases or other contracts, pending litigation or disputed claims, reduction in tax attributes and resulting deferred taxes, determination of the availability, limitations, and preservation of tax attributes (such as net operating losses, tax credits and tax basis);

(c)     assisting Winn-Dixie in its determination of the likely amount of cancellation of indebtedness income and assisting Winn-Dixie in its determination of the effect of tax attribute reduction (for federal and state purposes) under the bankruptcy exclusion under §108 of the Internal Revenue Code and applicable state tax laws giving consideration to various elections that may be beneficial for Winn-Dixie;

(d)     assisting Winn-Dixie in its determination of whether an ownership change, within the meaning of §382 of the Internal Revenue Code, will occur as a result of the proposed plan of reorganization and assisting Winn-Dixie in its determination of whether Winn-Dixie would potentially qualify for and benefit from the special bankruptcy exceptions contained in §382(1)(5) and (1)(6) and applicable state tax laws:

(e)     assisting Winn-Dixie in its evaluation of the tax basis in subsidiary stock under applicable consolidated return regulations and, if there is an excess loss account (i.e., negative tax basis) with respect to the stock of any subsidiary, providing tax consulting to Winn-Dixie regarding methods it may employ to minimize the income recognition related thereto;

(f)     advising Winn-Dixie in its effort to determine the tax treatment of post-petition interest and reorganization costs;

Mr. D. Michael Byrum
April 17, 2006
Page 2

(g)     documenting, as appropriate, the tax analysis, opinions, recommendations, conclusions, and
        correspondence for any tax issue or other tax matter described above.

The specific tax consulting and restructuring services to be performed by us will be established based
on discussions with you as the engagement progresses and additional information is obtained during
the course of the engagement. Our tax consulting and restructuring services may be changed or
modified by mutual agreement of the parties if, for example, unforeseen circumstances arise. We will
promptly discuss any such circumstances with you and, likewise, you agree to notify us promptly if
modifications to the Services are requested.

In addition, Winn-Dixie acknowledges and agrees that the Services and procedures that will be
performed by us pursuant to this agreement will be based solely upon:

- The representations, information, documents and other facts specifically made or
  submitted to Deloitte Tax by Winn-Dixie, its personnel and any representatives thereof;

- Deloitte Tax's assumption (without independent verification) that there will be timely
  execution, delivery, and performance as may be required by any representation or
  documents submitted by Winn-Dixie with respect to Deloitte Tax's tax assistance;

- Deloitte Tax's assumption (without independent verification) that the tax returns filed by
  Winn-Dixie are complete and accurate. We will generally assume that positions taken on
  such returns are correct unless instructed otherwise by you. In addition, we may
  determine that it is inappropriate to treat certain positions as correct for purposes of
  determining how to structure the Plan from a tax standpoint. Such a determination should
  not be taken as a judgment by Deloitte Tax as to the merits of the position or a prediction
  as to the ultimate determination of the position by a tax authority or court;

- The understanding that Deloitte Tax will only be responsible to provide tax assistance
  with respect to the specific matter, transaction or question actually presented by Winn-
  Dixie, including the type of tax and the taxing jurisdiction specifically identified by Winn-
  Dixie (e.g. federal, foreign, state, local, sales, excise, etc.);

- Winn-Dixie's understanding and agreement that the ultimate responsibility, with respect
  to the appropriate application and interpretation of any oral or written communications,
  rests with management of Winn-Dixie. Deloitte Tax will not be held liable for any
  misinterpretation or oral or written communications regarding the application of tax
  assistance;

- Winn-Dixie's understanding that any tax assistance provided pursuant hereto will be
  based upon the law, regulations, cases, rulings, and other tax authority in effect at the time
  specific tax assistance is provided. If there are subsequent changes in or to the foregoing
  tax authorities (for which Deloitte Tax shall have no specific responsibility to advise you),
  Winn-Dixie acknowledges that such changes may result in that tax assistance being
  rendered invalid or necessitate (upon Winn-Dixie's request) a reconsideration of that prior
  tax assistance;

- Winn-Dixie's understanding and agreement that the results of Deloitte Tax's tax
  assistance may be audited and challenged by the IRS and other tax authorities, who may

Mr. D. Michael Byrum
April 17, 2006
Page 3

not agree with our positions. In this regard, Winn-Dixie understands that the result of any tax assistance is not binding on the IRS, or other tax authorities or the courts and should never be considered a representation, warranty, or guarantee that the IRS or the courts will concur with our advice or opinion; and

- Deloitte Tax, as a result of providing such tax assistance, is under no obligation to represent Winn-Dixie with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax would generally be available to represent Winn-Dixie before the appropriate tax authorities, subject to a mutually agreed upon separate engagement letter.

The engagement will be performed in accordance with the Statements on Standards for Tax Services of the American Institute of Certified Public Accountants ("AICPA"), subject to the terms and conditions set forth herein. The Services will be established based on discussions with you as the Engagement progresses and additional information is obtained during the course of the engagement.

The IRS and some states have promulgated "tax shelter" rules that require taxpayers to disclose their participation in "reportable transactions" by attaching a disclosure form to their federal and/or state income tax returns and, when necessary, by filing a copy with the Internal Revenue Service and/or the applicable state agency. These rules impose significant requirements to disclose transactions and such disclosures may encompass many transactions entered into in the normal course of business. Failure to make such disclosures could result in substantial understatement penalties. Winn-Dixie is responsible for ensuring that it has properly disclosed all "reportable transactions". If specifically requested by Winn-Dixie we will assist in determining whether a transaction might be subject to these disclosure rules for a separate fee. Our analysis will be based upon a review of the various transactional documents, legal opinions and books and records relevant to the transaction during the tax year (collectively referred to as the "books and records") that are provided to us and the application of the tax shelter disclosure provisions to the facts of the transaction as set forth in such books and records. Deloitte Tax will rely on that information as accurate and complete. We cannot be responsible for any other transactions for which disclosure may have been required but which have not been brought to our attention. If engaged, Deloitte Tax will provide you with a separate memorandum detailing our conclusions and the rationale for such conclusions. Treasury regulations state that the receipt of an opinion regarding the tax consequences of a transaction is not relevant to the determination of whether the transaction is the same or substantially similar to an IRS "listed transaction." Please note that any disclosure required by or made pursuant to the tax shelter rules is separate and distinct from any other disclosure that Winn-Dixie might be required to or choose to make with its tax return (e.g. disclosure on federal Form 8275 or similar state disclosure). Unless specifically requested, this engagement letter does not cover such other disclosures. In no event will this engagement encompass analysis or advice with respect to any financial accounting matters.

The scope of our analysis is expressly limited to the tax shelter rules that are in effect for the transaction entered into as of the date that Winn-Dixie requests us to provide this tax shelter advice. The tax shelter rules are subject to change, and any such change may be retroactively effective. If so, our analysis may be adversely affected. However, we are under no obligation to inform Winn-Dixie of any changes in the law or regulations affecting the above analysis, nor are we under an obligation to monitor the status of the identified transactions to determine if any of the identified transactions become reportable subsequent to the date of this engagement. The Internal Revenue Service (and any state) is not bound by the analysis we provide in connection with any of the identified transactions,

Mr. D. Michael Byrum
April 17, 2006
Page 4

accordingly, no assurance can be given that the Internal Revenue Service (and any state taxing authorities) will not challenge any of our analysis.

Federal and certain state tax rules also require registration of certain "tax shelters" by those who organize or participate in the organization thereof, and tax advisors must maintain a list of taxpayers who acquire an interest in "potentially abusive tax shelters" or who receive tax advice with respect to certain other transactions. This list must be furnished to the Internal Revenue Service and/or the applicable state agency upon request. Deloitte Tax may provide a preliminary, non-binding assessment as to whether the registration or list maintenance rules may apply. However, the determination whether, when and to what extent Deloitte Tax is to comply with federal, state or other information reporting or registration requirements associated with its services for Winn-Dixie Client will be made exclusively by Deloitte Tax. Deloitte Tax is under no obligation to update our preliminary, nonbinding assessment.

## Fees

Many of the tax issues that will be involved in this engagement are complex and the law related thereto is not always very well developed. Additionally, the scope of each component of this engagement is fact specific. As such, the fee for this engagement will be a function of the time required and the experience level of our professionals assigned to this engagement at the following hourly rates:

| | |
|---|---|
| Partner | $485 - $600 |
| Senior Manager | $425 - $500 |
| Manager | $325 - $425 |
| Senior | $230 - $325 |
| Staff | $190 - $230 |
| Paraprofessionals | $80 - $125 |

Subject to any applicable bankruptcy court orders, rules or procedures, our fees, plus expenses, will be billed to you on a monthly basis as the Services are performed.

In addition, Deloitte Tax will be compensated for any time and expenses (including, without limitation, reasonable legal fees and expenses) that Deloitte Tax may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, arbitration, or other proceedings, including, without limitation, those other than as a result of or in connection with this engagement.

## Communications – Use and Distribution

Winn-Dixie should be aware that, pursuant to the *Internal Revenue Restructuring and Reform Act of 1998*, certain information discussed with members of Deloitte Tax who are Federally authorized tax practitioners or their agents for the purpose of obtaining our advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters before the IRS, if the United States is a party to the proceedings.

Winn-Dixie agrees that if it fails to inform Deloitte Tax of its intention to assert this privilege with respect to any communications that arise pursuant to this agreement, no obligation to maintain that privilege shall be imposed on Deloitte Tax.

Mr. D. Michael Byrum
April 17, 2006
Page 5

The nature of the Engagement will necessitate prompt communication to Winn-Dixie of our findings that result form performing the Services as those services are performed. Therefore, it will not be possible for all of our communications to be in the form of written reports. Accordingly, any information, documents, or other communications provided by Deloitte Tax, whether in writing or otherwise, including, without limitation, any reports or memoranda Deloitte Tax may issue, should be considered by Winn-Dixie in the context of the nature of the Services that Deloitte Tax has agreed to provide, subject to the limitations and conditions set forth in this letter.

**Miscellaneous**

The services will not constitute (1) a fairness or solvency opinion or (2) a compilation, examination, review, or audit of any entity's information, financial or otherwise, historical or prospective, as described in the pronouncements on professional standards issued by the American Institute or Certified Public Accountants. In addition, we will not make any predictions or provide any opinions or any other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. Additionally, we do not provide any legal advice; you will be responsible for all legal matters.

Winn-Dixie recognizes and acknowledges that by performing the Services, Deloitte Tax is not acting in any Winn-Dixie management capacity and that Winn-Dixie has not asked Deloitte Tax to make, nor has Deloitte Tax agreed to make, any business decisions on behalf of Winn-Dixie. All decisions concerning the execution of transactions with other entities and the establishment of terms for such transactions remain the sole responsibility of Winn-Dixie's management. By signing this letter, Winn-Dixie expressly acknowledges that Deloitte Tax does not guarantee, warrant, or otherwise provide any assurances that Winn-Dixie will restructure successfully.

In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte Tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Winn-Dixie in the case on the terms and conditions set forth in this letter, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before one hundred twenty (120) days from the date of this engagement letter on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court. In such event, Winn-Dixie hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the bankruptcy proceeding.

Bankruptcy Court shall mean the United States Bankruptcy Court for the Middle District of Florida.

This letter, together with Appendix A – General Business Terms and Acknowledgements attached hereto, constitutes the entire agreement of the parties hereto with respect to this engagement, supersedes all other oral or written representations, understandings or agreements relating to this engagement, and may not be amended except by written agreement signed by the parties.

If the above terms are acceptable to you and the Services outlined are in accordance with your understanding, please sign the copy of this letter in the space provided and return it to us.

Mr. D. Michael Byrum
April 17, 2006
Page 6


We appreciate the opportunity to serve you, and we look forward to a continuing relationship.

Very truly yours,                                  AGREED AND ACCEPTED:

Deloitte Tax LLP                                   Winn-Dixie Stores, Inc.


By: _____          By: _____
     Stephen J. Burke                                         Name
     Partner
                                                   S.V.P. & C.F.O.
                                                   _____
                                                   Title:                          LEGAL APPROVED
                                                                                    ATTY: _JFc____
                                                   Date: ___6/9/06_____        DATE: 6/9/06


Attachment

## Appendix A - DELOITTE TAX LLP GENERAL BUSINESS TERMS

**1.        Services.** It is understood and agreed that Deloitte Tax LLP's ("Deloitte Tax") services (the "Services") under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Winn-Dixie. For purposes of these terms and the Engagement Letter, the "Client" shall mean Winn-Dixie and its subsidiaries and/or affiliates.  Winn-Dixie represents and warrants that it has the power and authority to execute this agreement on behalf of, and to bind, itself and its subsidiaries and/or its affiliates.

**2.        Payment of Invoices.**  Subject to any applicable requirements of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court for the Middle District of Florida or order of the Bankruptcy Court, Deloitte Tax's invoices are due upon presentation.  Invoices upon which payment is not received within thirty (30) days of the invoice date shall accrue a late charge of the lesser of (i) 1½% per month or (ii) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law.  Without limiting its rights or remedies, Deloitte Tax shall have the right to halt or terminate the Services entirely if payment is not received within thirty (30) days of the invoice date.  Winn-Dixie shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte Tax's income taxes imposed on a net basis or by employment withholding, and other than taxes imposed on Deloitte Tax's property.

**3.        Term**.  Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services.  This engagement may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination, provided that, in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period.  Deloitte Tax may terminate this engagement upon written notice to Winn-Dixie if Deloitte Tax determines that (a) a governmental, regulatory, or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board, or the Securities and Exchange Commission), or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in ownership of Winn-Dixie or any of its affiliates) such that Deloitte Tax's performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules.  Upon termination of the engagement, Winn-Dixie will compensate Deloitte Tax under the terms of the Engagement Letter for the Services performed and expenses incurred through the effective date of termination.

**4.        Ownership of Deloitte Tax Property**.  To the extent that Deloitte Tax utilizes any of its property (whether tangible or intangible) in connection with this engagement, such property shall remain the property of Deloitte Tax, and Winn-Dixie shall not acquire any right or interest in such property. Deloitte Tax shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and Winn-Dixie shall not assert or cause to be asserted against Deloitte Tax or its personnel any prohibition or restraint from so doing.

**5.        Limitation on Warranties. THIS IS A SERVICES ENGAGEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE.  DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  WINN-DIXIE'S**

**EXCLUSIVE REMEDY FOR ANY BREACH OF THIS WARRANTY SHALL BE FOR DELOITTE TAX, UPON RECEIPT OF WRITTEN NOTICE, TO USE DILIGENT EFFORTS TO CURE SUCH BREACH, OR, FAILING ANY CURE IN A REASONABLE PERIOD OF TIME, THE RETURN OF PROFESSIONAL FEES PAID TO DELOITTE TAX HEREUNDER WITH RESPECT TO THE SERVICES GIVING RISE TO SUCH BREACH.**

**6.      Limitation on Damages and Indemnification.**

a.      Winn-Dixie agrees that Deloitte Tax, its subcontractors, and their respective personnel shall not be liable to Winn-Dixie for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by Winn-Dixie to Deloitte Tax pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the gross negligence, bad faith, willful misconduct or self-dealing of Deloitte Tax or its subcontractors. In no event shall Deloitte Tax, its subcontractors, or their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement.

b.      Winn-Dixie shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims relating to this engagement, except to the extent finally judicially determined to have resulted primarily from the gross negligence, bad faith, willful misconduct or self-dealing of Deloitte Tax or its subcontractors.

c.      In circumstances where all or any portion of the provisions of this paragraph are finally judicially determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors, and their respective personnel for any Claim shall not exceed an amount that is proportional to the relative fault that Deloitte Tax's conduct bears to all other conduct giving rise to such Claim.

d.      With respect to indemnification Claims arising during Winn-Dixie's chapter 11 cases, but prior to the effective date of a confirmed plan of reorganization in such cases, all requests for indemnity under the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Bankruptcy Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Deloitte Tax be indemnified in the case of its known gross negligence, bad faith, willful misconduct or self-dealing.

**7.      Client Responsibilities**.  Winn-Dixie shall cooperate with Deloitte Tax in the performance by Deloitte Tax of the Services, including, without limitation, providing Deloitte Tax with reasonable facilities and timely access to data, information and personnel of Winn-Dixie.  Winn-Dixie shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte Tax for purposes of the performance by Deloitte Tax of the Services.  Winn-Dixie acknowledges and agrees that Deloitte Tax's performance is dependent upon the timely and effective satisfaction of Winn-Dixie's responsibilities hereunder and timely decisions and approvals of Winn-Dixie in connection with the Services.  Deloitte Tax shall be entitled to rely on all decisions and approvals of Winn-Dixie.  Winn-Dixie shall be solely responsible for, among other things: (a) making all management decisions and performing all management functions; (b) designating a competent management member to oversee the Services; (c) evaluating the adequacy and results of the Services; (d) accepting responsibility for the results of the Services; and (e) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

**8.      Force Majeure.**  Except for the payment of money, neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

**9.     Limitation on Actions.**  No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the date of the last payment due to the party bringing such action.

**10.     Independent Contractor**.  It is understood and agreed that each party hereto is an independent contractor and that neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative.  Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, the other.

**11.     Confidentiality.**  To the extent that, in connection with this engagement, Deloitte Tax comes into possession of any tax return information, trade secrets or other proprietary or confidential information of Winn-Dixie, Deloitte Tax will not disclose such information to any third party without Winn-Dixie's consent.  Winn-Dixie hereby consents to Deloitte Tax disclosing such information (a) to any affiliate or related entity (including its partners, principals, and employees), to subcontractors, whether located within or outside of the United States, that are providing services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this paragraph 11; (b) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining hereto, or (c) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte Tax in breach hereof, (ii) is disclosed by Winn-Dixie to a third party without substantially the same restrictions as set forth herein, (iii) becomes available to Deloitte Tax on a nonconfidential basis from a source other than Winn-Dixie which Deloitte Tax believes is not prohibited from disclosing such information to Deloitte Tax by obligation to Winn-Dixie, (iv) is known by Deloitte Tax prior to its receipt from Winn-Dixie without any obligation of confidentiality with respect thereto, or (v) is developed by Deloitte Tax independently of any disclosures made by Winn-Dixie to Deloitte Tax of such information.  In satisfying its obligations under this paragraph, Deloitte Tax shall maintain Winn-Dixie's trade secrets and proprietary or confidential information in confidence using at least the same degree of care as it employs in maintaining in confidence its own trade secrets and proprietary or confidential information, but in no event less than a reasonable degree of care

**12.     Survival and Interpretation**.  The agreements and undertakings of Winn-Dixie contained in the Engagement Letter, together with all paragraphs herein relating to payment of invoices, ownership of Deloitte Tax property, limitation on damages, waiver of jury trial, information and data, confidentiality, survival and interpretation, assignment, governing law, indemnification, limitations on actions and limitations on warranties shall survive the expiration or termination of this engagement. For purposes of these terms Deloitte Tax shall mean Deloitte Tax LLP and for purposes of these terms shall also mean Deloitte Tax Products Company LLC, one of its subsidiaries. Winn-Dixie acknowledges and agrees that no affiliated or related entity of Deloitte Tax, whether or not acting as a subcontractor, shall have any liability hereunder to Winn-Dixie or any other person and Winn-Dixie will not bring any action against any such affiliated or related entity of Deloitte Tax in connection with this engagement. Without limiting the foregoing, affiliated and related entities of Deloitte Tax are intended third-party beneficiaries of these terms. Any affiliated or related entity of Deloitte Tax may in its own right enforce such terms, agreements and undertakings.   **The provisions of paragraphs 6, 12, 14, 15 and 17, hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**

**13.     Assignment and Subcontracting.**  Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) without the prior written consent of the other party.  Winn-Dixie hereby consents to Deloitte Tax assigning or subcontracting any of Deloitte Tax's rights or obligations hereunder to (a) any affiliate or related entity, whether located within or outside of the United States, or (b) any entity which acquires all or a substantial part of the assets or business of Deloitte Tax.  Services performed by Deloitte Tax

subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte Tax personnel, unless otherwise agreed.

**14.    Waiver of Jury Trial. DELOITTE TAX AND WINN-DIXIE HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.**

**15.    Governing Law and Severability.** These terms, the Engagement Letter, including exhibits and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of such terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

**16.    Information and Data.** Deloitte Tax shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that Winn-Dixie and its representatives provide to Deloitte Tax. All assumptions, representations, information and data to be supplied by Winn-Dixie and its representatives will be complete and accurate to the best of Winn-Dixie's knowledge. Deloitte Tax may use information and data furnished by others; however, Deloitte Tax shall not be responsible for, and Deloitte Tax shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to in writing, Deloitte Tax shall not provide advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. Winn-Dixie shall be responsible for all financial information and statements provided by or on behalf of Winn-Dixie with respect to any of the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law.

**17.    Third Parties and Internal Use.** Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on Winn-Dixie's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Engagement Letter. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Internal Revenue Code sections 6011 and 6111 and related Internal Revenue Service ("IRS") guidance. All Services shall be solely for Winn-Dixie's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than Winn-Dixie ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, Winn-Dixie agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

**18.    Certain Tax Disclosures and Reporting.** In accordance with IRC sections 6111 and 6112, Deloitte Tax may be required to report to the IRS or certain state tax authorities the Services including without limitation any related tax transaction(s) described in the Engagement Letter as well as Winn-Dixie's participation therein. In addition, separate and apart from any reporting by Deloitte Tax, Winn-Dixie, in accordance with IRC section 6011, may also be required to disclose to a taxing authority its participation in one or more transactions which are the subject of this Engagement Letter. The determination of whether, when and to what extent Deloitte Tax and Winn-Dixie should comply with their respective federal or state "tax shelter" reporting requirements will be made exclusively and respectively by Deloitte Tax and Winn-Dixie. Deloitte Tax and Winn-Dixie further agree that (i) any liability for fines or penalties or any other consequences resulting from non-compliance by one party with applicable tax disclosure or reporting rules will be borne or incurred exclusively by the non-compliant party, and (ii) any request by Winn-Dixie of Deloitte Tax for services in identifying or otherwise consulting on transactions subject to IRC section 6011 or corresponding state law and the reporting or disclosing thereof will be the subject of a separate engagement letter.

19.     **Accountant / Client Privilege – IRC §7525.**   Winn-Dixie should be aware that certain information discussed with personnel of Deloitte Tax who are Federally Authorized Tax Practitioners or their agents for the purpose of obtaining Deloitte Tax's advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the Internal Revenue Service and in non-criminal proceedings in Federal court that stem from matters before the Internal Revenue Service, if the United States is a party to the proceedings.  Winn-Dixie is solely responsible for managing the recognition, establishment and maintenance of the confidentiality privilege and Winn-Dixie must notify Deloitte Tax if Winn-Dixie wishes to invoke the confidentiality privilege and Deloitte Tax will cooperate with Winn-Dixie's reasonable instructions relating to the confidentiality privilege.  Circumstances may arise under which Winn-Dixie may wish to divulge or have Deloitte Tax divulge privileged information to other parties.  Winn-Dixie should be aware that such disclosure might result in a waiver of the confidentiality privilege.  Accordingly, if Winn-Dixie wishes Deloitte Tax to divulge such information, Deloitte Tax shall require Winn-Dixie to provide Deloitte Tax in advance with written authority to make such disclosures.  In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. federal income tax, Winn-Dixie should be aware that the confidentiality privilege under §7525 of the Internal Revenue Code will not apply to any communications between Winn-Dixie and Deloitte Tax.

In the event that Deloitte Tax receives a request from a third party (including a subpoena, summons or discovery demand in litigation) calling for the production of privileged information, Deloitte Tax will promptly notify Winn-Dixie and will follow Winn-Dixie's reasonable instructions regarding any third party requests or needs for such material before Deloitte Tax would disclose same as may be required under applicable law or rules.  Winn-Dixie agrees to hold Deloitte Tax harmless from and also assumes responsibility for any expenses (including attorney's fees, court costs, costs incurred by outside advisors and any other cost imposed whether by way of penalty or otherwise) incurred by Deloitte Tax as a result of Winn-Dixie's assertion of the confidentiality privilege or Winn-Dixie's direction to Deloitte Tax to assert the confidentiality privilege on behalf of Winn-Dixie.

**<u>Exhibit B</u>**

UNITED STATES BANKRUPTCY COURT

Middle District of Florida (Jacksonville)

|  |  |
|---|---|
| In re:<br><br>Winn-Dixie Stores, Inc.,<br><br>et al.,<br><br>                Debtors. | Chapter 11<br><br>Case No. 05-03840<br><br>Jointly Administered |

**DECLARATION OF STEPHEN J. BURKE IN SUPPORT OF APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF DELOITTE TAX LLP TO PERFORM EMERGENCE-RELATED TAX SERVICES FOR THE DEBTORS IN POSSESSION NUNC PRO TUNC TO MAY 9, 2006**

**Stephen J. Burke states under penalty of perjury:**

      1.      I am a partner of the firm of Deloitte Tax LLP ("Deloitte Tax"), which has an office located at 199 Peachtree Street, N.E, Suite 1500, Atlanta, Georgia 30303.  I make this declaration based on the affidavit of Anthony Forcum (the "Forcum Affidavit") (attached hereto as Exhibit A) filed in connection with the retention of Deloitte Consulting LLP ("Deloitte Consulting"), an affiliate of Deloitte Tax, and upon inquiries made by myself or on my behalf in support of the application (the "Retention Application") for an order  pursuant to section 327(a) of the Bankruptcy Code (as defined in the Retention Application) authorizing the approval of Deloitte Tax to provide certain plan and emergence tax services for the above-captioned debtors and debtors-in-possession (the "Debtors") nunc pro tunc to May 9, 2006.

1

2.      To my knowledge based on reasonable inquiry, (1) Deloitte Tax, Stephen Burke, a partner of Deloitte Tax and Bryan Collins, a partner of Deloitte Tax (the "Deloitte Tax Partners/Principals"), who are anticipated to provide services as part of the engagement team on the engagement for which Deloitte Tax is to be retained in these Chapter 11 cases (the "Winn-Dixie Engagement Team"), and the employees of Deloitte Tax who are anticipated to provide the services as part of the Winn-Dixie Engagement Team, do not hold or represent any interest adverse to any of the Debtors with respect to the matters on which Deloitte Tax is to be retained in these Chapter 11 cases, and (2) as set forth below and, to the best of my knowledge, information and belief, Deloitte Tax and the Deloitte Tax Partners/Principals have no relationship to any of the Debtors, any of the Debtors' significant creditors, other known parties-in-interest in these Chapter 11 cases (as identified by the Debtors), or to the Debtors' attorneys that are known to be assisting the Debtors in these Chapter 11 cases, except as described in the Forcum Affidavit, set forth on Exhibit A attached thereto or herein, (3) the personnel anticipated to provide services to the Debtors in connection herewith are not related to the United States Trustee assigned to these Chapter 11 cases, any persons employed in the office of such United States Trustee or the Bankruptcy Judge presiding over such cases and (4) Deloitte Tax and the Deloitte Tax Engagement Partners/Principals are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

3.      From time to time, Deloitte Tax or its affiliates have provided, currently provide or may currently provide services and likely will continue to provide services, to

2

certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to these Chapter 11 cases.

4.      As described below (and in the Forcum Affidavit), Deloitte Consulting undertook an internal search to determine whether it or its affiliates, including Deloitte Tax, are or have been employed by or had other relationships with any entities that were listed on a schedule provided to Deloitte Consulting by the Debtors in connection with these Chapter 11 cases.  As noted herein, certain of these creditors, other parties-in-interest, attorneys, or accountants have or may have provided goods or services to, currently provide or may currently provide goods or services to, and may in the future provide goods or services to Deloitte Tax and its affiliates and the Deloitte Tax Partners/Principals in matters unrelated to these Chapter 11 cases.

5.      To check upon and disclose possible relationships with parties-in-interest in these chapter 11 cases, Deloitte Consulting researched its client databases and performed reasonable due diligence to determine whether it or its affiliates, including Deloitte Tax, had any relationships with the entities that were listed on a schedule provided to Deloitte Consulting by the Debtors in connection with these Chapter 11 cases, which included the following:

- the Debtors and their affiliates;

- the Debtors' key personnel, including its current and former directors and officers;

- the Debtors' pre-petition senior secured lenders;

- the Debtors' top 50 unsecured trade creditors;

- the Indenture Trustee for the senior unsecured noteholders, the senior unsecured noteholders, and related funds and administrators;

3

- the publicly identified shareholders of the Debtors;

- parties with filed UCC financing statements;

- the Debtors' mortgage holder;

- the Debtors' material lessors of real property;

- the attorneys and other professionals that the Debtors have sought authority to employ in these Chapter 11 cases;

- the members of the Official Creditors' Committee and its attorneys; and

- other potential parties-in-interest as identified by the Debtors.

6.      Despite the efforts described above to identify and disclose Deloitte Tax's and its affiliates' connections with the parties-in-interest in these Chapter 11 cases, because Deloitte Tax and its affiliates are large firms with many personnel, and because the Debtors are a large enterprise, Deloitte Tax is unable to state with certainty that every client relationship or other connection with it or its affiliates has been disclosed.  In this regard, if Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

7.      The results of this internal search are set forth in the Forcum Affidavit which is incorporated herein by reference.

8.      Except as may be disclosed in the Forcum Affidavit, to the best of my knowledge, Deloitte Tax and the Deloitte Tax Partners/Principals do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Tax and the Deloitte Tax Partners/Principals are "disinterested persons" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

9.      As set forth in the Engagement Letter (as defined in the Application), the

4

nature and extent of the services that Deloitte Tax proposes to render, as may be

requested by the Debtors and as may be agreed to by Deloitte Tax, are:

(a) assisting the Debtors' tax department with its overall coordination and management of the bankruptcy emergence process including tax bankruptcy workplan evaluation, management and execution;

(b) providing tax consulting in connection with the Debtors' fresh start accounting and the Debtors' determination of the tax impacts and resulting tax reporting requirements of restructuring the business operations, settlement of pre-petition claims, treatment of intercompany balances, asset dispositions, damages relating to rejected leases or other contracts, pending litigation or disputed claims, reduction in tax attributes and resulting deferred taxes, determination of the availability, limitations, and preservation of tax attributes (such as net operating losses, tax credits and tax basis);

(c) assisting the Debtors in their determination of the likely amount of cancellation of indebtedness income and assisting Winn-Dixie in its determination of the effect of tax attribute reduction (for federal and state purposes) under the bankruptcy exclusion under §108 of the Internal Revenue Code and applicable state tax laws giving consideration to various elections that may be beneficial for the Debtors;

(d) assisting the Debtors in their determination of whether an ownership change, within the meaning of §382 of the Internal Revenue Code, will occur as a result of the proposed plan of reorganization and assisting the Debtors in their determination of whether the Debtors would potentially qualify for and benefit from the special bankruptcy exceptions contained in §382(1)(5) and (1)(6) and applicable state tax laws;

(e) assisting the Debtors in their evaluation of the tax basis in subsidiary stock under applicable consolidated return regulations and, if there is an excess loss account (i.e., negative tax basis) with respect to the stock of any subsidiary, providing tax consulting to the Debtors regarding methods they may employ to minimize the income recognition related thereto;

(f) advising the Debtors in their effort to determine the tax treatment of post-petition interest and reorganization costs; and

(g) documenting, as appropriate, the tax analysis, opinions, recommendations, conclusions, and correspondence for any tax issue or other tax matter described above.

10. Deloitte Tax has significant qualifications and experience in performing the

scope of work described above that is the subject of Deloitte Tax's retention to provide certain plan and emergence tax services to the Debtors. Subject to the Court's approval of Deloitte Tax's retention hereunder, the scope of post-petition services Deloitte Tax anticipates providing to the Debtors is limited to those services described above.

11.    Some services incidental to the tasks to be performed by Deloitte Tax in these Chapter 11 cases may be performed by personnel employed by or associated with affiliates of Deloitte Tax. The fees and expenses with respect to such services, if any, will be included in the fee applications of Deloitte Tax.

12.    Deloitte Tax understands that the Debtors have also employed the services of KPMG LLP, PricewaterhouseCoopers LLP and CFO Services in connection with various professional services. Deloitte Tax will consult with the Debtors and, as necessary, the Debtors' professionals throughout the pendency of these Chapter 11 cases to ensure that there will be no duplication of services provided to the Debtors.

13.    Deloitte Tax intends to apply to the Court for allowance of compensation and reimbursement of expenses consistent with the terms of the  Engagement Letter, the Retention Application and this declaration, the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court of the Middle District of Florida (Jacksonville), the United States Trustee's Guidelines and the Orders of this Court.

14.    Deloitte Tax will charge the hourly rates as specified in the Engagement Letter in performing the aforementioned services. For all services, the range of rates is as follows:

| *Staff Classification* | *Hourly Billing Rate* |
|---|---|
| Partner | $485 - $600 |
| Senior Manager | $425 - $500 |
| Manager | $325 - $425 |
| Senior Staff | $230 - $325 |
| Staff | $190 - $230 |
| Paraprofessionals | $80 - $125 |

15.     The professional fees charged for Deloitte Tax's services are calculated from the actual hours expended in providing the services multiplied by the hourly billing rates for the specific personnel involved.  In addition, reasonable expenses, including, without limitation, travel and delivery services will be included in the total amount billed.

16.     Deloitte Tax requests that it be permitted to submit monthly invoices for fees and expenses. Such invoices will contain reasonable detail consistent with any rules, guidelines, and/or administrative orders promulgated by the Court that apply to these Chapter 11 cases.  Deloitte Tax requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders, if any, that would apply to interim payments.

17.     As set forth in the Forcum Affidavit, Deloitte Consulting, Deloitte & Touche LLP ("Deloitte & Touche"), also an affiliate of Deloitte Tax, and/or certain of their affiliates did provide services to the Debtors prior to the inception of these Chapter 11 cases and continue to provide certain services to the Debtors during these Chapter 11 cases.

7

18.      As set forth in the Forcum Affidavit, Deloitte Consulting, an affiliate of Deloitte Tax, received $2,268,100 and D&T Tax Technologies received $18,100 from the Debtors within 90 days prior to the inception of these chapter 11 cases for the services described above. Deloitte Consulting was owed $209,411 by the Debtors as of the Petition Date. Deloitte Consulting will not seek any recovery with respect to such amounts. Subsequent to the Petition Date, but prior to May 16, 2005, Deloitte Consulting provided services to the Debtor totaling $95,842 and incurred $18,003 of expenses in support of the Debtors' initiatives related to implementation of the selected perishable trading network and pricing strategy capability described above. Deloitte Consulting will also not seek any recovery with respect to such amounts. As of the Petition Date, Deloitte Tax was not owed any fees in connection with any services provided to the Debtors.

19.    Deloitte Tax has received no promises regarding compensation in these Chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this declaration.  Deloitte Tax has no agreement to share its revenues from the services for which it is seeking to be retained hereunder with any nonaffiliated entity.

_____
Declarant: Stephen J. Burke
Title: Partner

19.      Deloitte Tax has received no promises regarding compensation in these Chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this declaration. Deloitte Tax has no agreement to share its revenues from the services for which it is seeking to be retained hereunder with any nonaffiliated entity.

Declarant: Stephen J. Burke
Title: Partner

**Exhibit A to Declaration of Stephen J. Burke**

UNITED STATES BANKRUPTCY COURT

Middle District of Florida (Jacksonville)

| | |
|---|---|
| In re: | Chapter 11 |
| Winn-Dixie Stores, Inc., | Case No. 05-03817-3F1 |
| et al., | Jointly Administered |
| Debtors. | |

**AFFIDAVIT OF ANTHONY D. FORCUM
IN SUPPORT OF APPLICATION FOR AUTHORITY TO RETAIN DELOITTE
CONSULTING LLP TO PROVIDE IN-STORE OPERATIONAL CONSULTING
SERVICES TO THE DEBTORS NUNC PRO TUNC TO MAY 16, 2005**

**Anthony D. Forcum, being duly sworn, deposes and says:**

1.       I am a principal of the firm of Deloitte Consulting LLP ("Deloitte

Consulting"), which has an office located at 6363 N. State Highway 161, Suite 800,

Irving, TX.  I make this affidavit based upon inquiries made by myself or on my behalf in

support of the application (the "Retention Application") for an order  pursuant to section

327(a) of the Bankruptcy Code (as defined in the Retention Application) authorizing the

retention of Deloitte Consulting to provide in-store operational consulting services for the

above-captioned debtors and debtors-in-possession (the "Debtors") nunc pro tunc to May

16, 2005.

2.       To the best of my knowledge information and belief formed after a

reasonable inquiry, (1) Deloitte Consulting, Anthony D. Forcum and Scott Bearse, who

are the Principal and Director, respectively, of Deloitte Consulting (the "Deloitte

1

Consulting Principals/Directors") that are anticipated to provide services as part of the engagement team on the engagement for which Deloitte Consulting is to be retained in these Chapter 11 cases (the "Winn-Dixie Engagement Team"), and the employees of Deloitte Consulting who are anticipated to provide the services as part of the Winn-Dixie Engagement Team, do not hold or represent any interest adverse to any of the Debtors with respect to the matters on which Deloitte Consulting is to be retained in these Chapter 11 cases, and (2) as set forth below and, to the best of my knowledge, information and belief, Deloitte Consulting and the Deloitte Consulting Principals/Directors have no relationship to any of the Debtors, any of the Debtors' significant creditors, other known parties-in-interest in these Chapter 11 cases (as identified by the Debtors), or to the Debtors' attorneys that are known to be assisting the Debtors in these Chapter 11 cases, except as described herein or as set forth on Attachment 1, attached hereto, and (3) Deloitte Consulting and the Deloitte Consulting Engagement Principals/Directors are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

3.      From time to time, Deloitte Consulting or its affiliates have provided, currently provide or may currently provide services and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to these Chapter 11 cases.

4.      As described below, Deloitte Consulting has undertaken an internal search to determine whether it or its affiliates are or have been employed by or had other relationships with any entities that were listed on a schedule provided to Deloitte Consulting by the Debtors in connection with these Chapter 11 cases.  As noted herein,

2

certain of these creditors, other parties-in-interest, attorneys, or accountants have or may have provided goods or services to, currently provide or may currently provide goods or services to, and may in the future provide goods or services to Deloitte Consulting and its affiliates and the Deloitte Consulting Principals/Directors in matters unrelated to these Chapter 11 cases.

5.      To check upon and disclose possible relationships with parties-in-interest in these Chapter 11 cases, Deloitte Consulting researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with the entities that were listed on a schedule provided to Deloitte Consulting by the Debtors in connection with these chapter 11 cases, which included the following:

- the Debtors and their affiliates;

- the Debtors' key personnel, including its current and former directors and officers;

- the Debtors' pre-petition senior secured lenders;

- the Debtors' top 50 unsecured trade creditors;

- the Indenture Trustee for the senior unsecured noteholders, the senior unsecured noteholders, and related funds and administrators;

- the publicly identified shareholders of the Debtors;

- parties with filed UCC financing statements;

- the Debtors' mortgage holder;

- the Debtors' material lessors of real property;

- the attorneys and other professionals that the Debtors have sought authority to employ in these chapter 11 cases;

- the members of the Official Creditors' Committee and its attorneys; and

- other potential parties-in-interest as identified by the Debtors.

6.      Despite the efforts described above to identify and disclose Deloitte

Consulting's and its affiliates' connections with the parties-in-interest in these Chapter 11

cases, because Deloitte Consulting is a large firm with many personnel, and because the

Debtors are a large enterprise, Deloitte Consulting is unable to state with certainty that

every client relationship or other connection with it or its affiliates has been disclosed.  In

this regard, if Deloitte Consulting discovers additional material information that it

determines requires disclosure, it will file a supplemental disclosure promptly with the

Court.

7.      From this internal search, Deloitte Consulting has determined that certain

relationships should be disclosed as follows.

(a)     Deloitte Consulting and/or its affiliates provides services in matters
        unrelated to these Chapter 11 cases to certain of the Debtors' parties in
        interest or certain affiliated entities listed on Attachment 1.  Deloitte
        Consulting will not provide services to these entities in connection with
        these Chapter 11 cases.

(b)     JPMorgan Chase (f/k/a BankOne), Sun Trust, Bank of America (f/k/a
        Fleet Retail Finance), Wachovia, Wells Fargo, and Credit Suisse First
        Boston have been identified by the Debtors as pre-petition bondholders or
        lenders to the Debtors.   These institutions and/or their affiliates are all
        lenders to Deloitte Consulting or its affiliates or to their respective
        members.

(e)     Deloitte Consulting has provided, may currently provide and may in the
        future provide services to Skadden, Arps, Slate, Meagher & Flom LLP,
        and King & Spalding LLP, counsel to the Debtor, in matters unrelated to
        these chapter 11 cases. Each of the law firms (including Skadden, Arps,
        Slate, Meagher & Flom LLP, and King & Spalding LLP) listed on
        Attachment 1 hereto may have provided, may currently provide or may in
        the future provide legal services to Deloitte Consulting or its affiliates in
        matters unrelated to these Chapter 11 cases

(f)     In the ordinary course of its business, Deloitte Consulting and/or its
        affiliates has business relationships in unrelated matters with its principal
        competitors, the other "Big Four" accounting firms, including KPMG and

PriceWaterhouseCoopers, which together with their affiliates, has been identified by the Debtors as potential parties-in-interest in these Chapter 11 cases. For example, from time to time, Deloitte Consulting and/or its affiliates and one or more of such entities may work jointly on assignments for the same client or may otherwise engage each other for various purposes.

(g)     Certain parties in interest identified on Attachment 1 may be adverse to and/or involved in litigation matters with Deloitte Consulting or its affiliates in connection with matters unrelated to these Chapter 11 cases.

8.      Except as may be disclosed herein, to the best of my knowledge, Deloitte Consulting and the Deloitte Consulting Principals/Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Consulting and the Deloitte Consulting Principals/Directors are "disinterested persons" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code. Moreover, the personnel anticipated to provide services to the Debtors under the Engagement Letter are not related to the United States Trustee, the employees thereof assigned to this case or the bankruptcy judge presiding in this case.

9.      As set forth in the Engagement Letter (as defined in the Application), the nature and extent of the services that Deloitte Consulting proposes to render, as may be requested by the Debtors and as may be agreed to by Deloitte Consulting, are focused on business performance improvement initiatives in its stores. The specific objectives of the services to be provided include assisting the Debtors in their efforts to improve store inventory ordering practices, enhance Direct Store Delivery ("DSD") merchandising and inventory controls,  increase sales and gross margin of "center store" items, reduce shelf stocking labor hours and related costs, reduce store-level inventories while increasing "in-stock" position on key items,  reduce "shrink" at store level, and align in-store cash office and other "front end" work practices and labor costs with customer service

objectives.

As further detailed in the attached Engagement Letter, a summary of specific

project activities include assisting the Debtors with the following:

- Implementing improved in-store shelf stocking practices, modified related staffing guidelines, and performance management techniques
- Revising backroom layout, organization and "pick list" priorities
- Implementing revised store inventory ordering practices and procedures
- Revising DSD receiving practices and procedures
- Developing and implementing a DSD Vendor Scorecard
- Designing and implementing a Shrink Accountability Program, Known Loss Program and enhanced Production Planning Methods in certain perishable departments
- Implementing practices to improve utilization of Front End service resources including cashiers, baggers, and in-store supervisors/managers
- Designing and implementing enhancements to selected customer service guidelines
- Developing and implementing modifications to the front-end scheduling processes leveraging the Tomax system
- Designing and implementing simplified cash office procedures
- Improved cashiering productivity and service measurement
- Revising performance and exception management processes using ShrinkTrax
- Performing overall project planning and program management activities

10.        Deloitte Consulting has significant qualifications and experience in

performing the scope of work described above that is the subject of Deloitte Consulting's

retention to provide post-petition services to the Debtors.  Subject to the Court's approval

of Deloitte Consulting's retention hereunder, the scope of post-petition services Deloitte

Consulting anticipates providing to the Debtors is limited to those services described in

the Engagement Letter.

11.   Some services incidental to the tasks to be performed by Deloitte Consulting

in these Chapter 11 cases may be performed by personnel employed by or associated with

affiliates of Deloitte Consulting, including Deloitte & Touche LLP.  The fees and

expenses with respect to such services, if any, will be included in the fee applications of Deloitte Consulting.

12.     Deloitte Consulting intends to apply to the Court for allowance of compensation and reimbursement of expenses consistent with the terms of the Engagement Letter, the Retention Application and this Affidavit, the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court of the Middle District of Florida (Jacksonville), the United States Trustee's Guidelines and the Orders of this Court.

13.     Deloitte Consulting will charge the hourly rates as specified in the Engagement Letter in performing the aforementioned services which are consistent with the rates charged for similar services.  For all services, the range of rates is as follows:

| *__Staff Classification__* | *__Hourly Billing Rate__* |
| --- | --- |
| Principals/Directors | $ 475-530 per hour |
| Senior Managers | $ 400-425 per hour |
| Managers | $ 360-380 per hour |
| Senior Consultants | $ 280-295 per hour |
| Staff | $ 175-210 per hour |

14.     The billing rates reflect, among other things, differences in experience levels within classifications, geographic differentials and differences between types of services being provided.  In the normal course of business, Deloitte Consulting revises its regular hourly rates to reflect changes in responsibilities, increased experience, and increased costs of doing business.  Accordingly, Deloitte Consulting requests that the aforementioned rates be revised to the hourly rates that will be in effect from time to time

subject to agreement between the Debtors and Deloitte Consulting.  Changes in regular

hourly rates will be noted on the invoices for the first time period in which the revised

rates became effective.

15.     The professional fees charged for Deloitte Consulting's services are

calculated from the actual hours expended in providing the services multiplied by the

hourly billing rates for the specific personnel involved.  In addition, reasonable expenses,

including, without limitation, travel and delivery services will be included in the total

amount billed.

16.     Deloitte Consulting requests that it be permitted to submit monthly

invoices for fees and expenses. Such invoices will be submitted in accordance with the

procedures outlined by, and will contain reasonable detail consistent with, any rules,

guidelines, and/or administrative orders promulgated by the Court that apply to these

Chapter 11 cases.  Deloitte Consulting requests that the invoices, after appropriate

review, be paid in a manner consistent with the payment of other retained professionals in

these cases, consistent with any administrative orders, if any, that would apply to interim

payments.

17.     Deloitte Consulting and/or certain of its affiliates did provide services

to the Debtors prior to the inception of these Chapter 11 cases.   Such services included:

(a)     Assistance with implementation of Winn-Dixie's Procurement Process

Redesign project.  Activities included guidance and assistance related

to the following:

(i)     organizational change management associated with the

transition of 400+ associates into a new Central Procurement

8

organization structure,

(ii)     process redesign with respect to financial analysis capabilities

within the Central Procurement function,

(iii)    process improvements and work-flow redesign related to

advertising and promotions processes,

(iv)     identification of tools, processes, and technologies to improve

item/store level forecasting,

(v)     enhanced processes related to assortment planning and

category analysis,

(vi)     development of a pricing strategy function,

(vii)    design and implementation of vendor management processes

and tools,

(viii)   evaluation of trading network  alternatives for perishables, and

(ix)     development of scorecards to track performance of individual

components of Winn-Dixie's Merchandising and Supply Chain

function;

(b)     Assistance with identification of opportunities to improve store

inventory ordering processes, Direct Store Delivery (DSD) functions

and "Front End operations" inside each of Winn-Dixie's stores;

(c)     Assistance to Winn-Dixie's Internal Audit Department related to scope

and approach to internal audits of purchasing and procurement

functions and fraud risk assessments (performed by Deloitte & Touche

LLP ("Deloitte & Touche"), an affiliate of Deloitte Consulting);

(d)         In addition, by an agreement effective on May 24, 2004, Deloitte &
Touche Tax Technologies LLC ("D&T Tax Technologies"), an
affiliate of Deloitte Consulting, licensed corporate sales tax software
for a term of one year to Winn-Dixie Stores, Inc. ("WDS"), a Debtor.
As of the Petition Date, no amounts were due under this license
agreement.  WDS may seek to extend the term of the license pursuant
to and, in accordance with, the terms of the license agreement in which
case further license payments would become due.  Subsequent to the
execution of the license agreement, D&T Tax Technologies and
Deloitte & Touche entered into an engagement letter to provide certain
services to WDS associated with the implementation of the licensed
software.  D&T Tax Technologies and Deloitte & Touche LLP were
paid for these services.

Deloitte Consulting and its affiliates received $2,286,200 (Deloitte Consulting
received $2,268,100 and D&T Tax Technologies received $18,100) from the Debtors
within 90 days prior to the inception of these Chapter 11 cases for the services described
above.  Deloitte Consulting was owed $209,411 by the Debtors as of the Petition Date.
Deloitte Consulting will not seek any recovery with respect to such amounts.  Subsequent
to the Petition Date, but prior to May 16, 2005, Deloitte Consulting provided services to
the Debtor totaling $95, 842 and incurred $18,003 of expenses in support of the Debtors'
initiatives related to implementation of the selected perishable trading network and
pricing strategy capability described above.  Deloitte Consulting will also not seek any

recovery with respect to such amounts.

18.     Deloitte Consulting has received no promises regarding compensation in these Chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Affidavit.  Deloitte Consulting has no agreement to share its revenues from the services for which it is seeking to be retained hereunder with any nonaffiliated entity.

Anthony D. Forcum
Principal

Sworn to and subscribed before me,
this _19_ th day of May, 2005.

PAT MYERS
MY COMMISSION EXPIRES
April 22, 2008

**<u>Exhibit C</u>**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

|  |  |
|---|---|
| In re: | )   Case No. 05-03817-3F1 |
|  | ) |
| WINN-DIXIE STORES, INC., et al., | )   Chapter 11 |
|  | ) |
| Debtors. | )   Jointly Administered |
|  | ) |

**ORDER AUTHORIZING DEBTORS TO RETAIN DELOITTE TAX LLP**
**TO PROVIDE EMERGENCE-RELATED TAX SERVICES**

These cases came before the Court for hearing on June 29, 2006, upon the application of Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned jointly-administered cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order authorizing the Debtors to retain Deloitte Tax LLP ("Deloitte Tax"), effective as of May 9, 2006, to provide tax services related to the Debtors' plan of reorganization and emergence from chapter 11 (the "Application").[1]  The Court has reviewed the Application, the engagement letter attached as Exhibit A to the Application (the "Engagement Letter"), and the supporting declaration of Stephen J. Burke (the "Burke Declaration").  The Court has also considered the representations of counsel.  Based upon the representations of counsel, after due deliberation and finding proper notice has been given, the Court determines that good cause exists to grant the relief requested in the Application and that granting such relief is in the best interest of these estates and creditors.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.    The Application is granted.

---

[1]    All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Application.

2.      The Debtors are authorized to retain Deloitte Tax, effective as of May 9, 2006, pursuant to section 327(a) of the Bankruptcy Code, to provide tax services related to the Debtors' plan of reorganization and emergence from chapter 11 on the terms set forth in the Application, the Engagement Letter, and the Burke Declaration.

3.      If any supplemental declarations or affidavits are filed and served after the entry of this Order, absent any objections filed within twenty (20) days after the filing and service of such supplemental declarations or affidavits, Deloitte Tax's employment shall continue as authorized pursuant to this Order.

4.      Deloitte Tax shall be compensated upon appropriate application in accordance with Sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules, and orders of this Court.

5.      With respect to indemnification claims based on acts occurring after the Petition Date but prior to the effective date of a confirmed plan of reorganization in the Debtors' chapter 11 cases, all requests for indemnity under the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Deloitte Tax be indemnified in the case of its own gross negligence, bad faith, willful misconduct, or self-dealing.

6.      No work performed by Deloitte Tax shall be duplicative of work performed by any other professional retained by the Debtors in these cases.

7.      The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated _____ ___, 2006 in Jacksonville, Florida.

_____

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties included
on the Master Service List.

3