**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

**DEBTORS' RESPONSE TO AND REQUEST TO ABATE THE AD HOC TRADE COMMITTEE'S MOTION TO CONSOLIDATE DEBTORS' ESTATES**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), respond to and request the Court to abate (the "Response") the Ad Hoc Trade Committee's Motion to Substantively Consolidate Debtors' Estates (Docket No. 7763 the "Consolidation Motion"). In support of this Response, the Debtors respectfully represent as follows:

**Background**

A.   <u>The Debtors' Chapter 11 Cases</u>.

1.   On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

---

[1]   In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Official Committee") to serve in these cases.

B.   The Ad Hoc Committee and Its Consolidation Motion.

3. In March, 2006, a group of claims traders, who had purchased trade claims, together with some trade creditors, formed what they called the ad hoc committee of trade creditors (the "AHTC") to investigate substantive consolidation issues. The AHTC retained legal and financial advisors. At the request of the AHTC, and pursuant to a confidentiality agreement, the Debtors provided the AHTC with voluminous information relevant to the issue of substantive consolidation. On May 11, 2006, the AHTC filed the Consolidation Motion asking the Court to substantively consolidate the Debtors' estates. The Debtors believe the Court should deny, or at least abate, the Consolidation Motion for the reasons set forth below.

C.   The Exclusivity Extension.

4. On March 31, 2006, the Debtors filed a motion to further extend their exclusive period to file a reorganization plan and solicit acceptances (the "Exclusivity Motion").[2] In the Exclusivity Motion, the Debtors explained that one of the most significant open issues remaining in reaching a consensual reorganization plan related to the question of whether the Debtors' estates should be substantively consolidated. The Debtors also stated that they and the Official Committee were working towards a compromise of the issue that the Debtors would propose as a

---

[2] See Debtors' Motion for Order Granting Fifth Extension of Exclusive Period for Filing Chapter 11 Plans and Obtaining Acceptances of Such Plans (Docket No. 6889).

part of the Debtors' plan of reorganization. The purpose of a substantive consolidation compromise is to avoid protracted litigation over the merits of substantive consolidation. Neither the AHTC[3] nor any other party objected to the Exclusivity Motion, which the Court granted allowing the Debtors until June 29, 2006 to file a reorganization plan and August 29, 2006 to solicit acceptances of the plan.[4]

D.   The Substantive Consolidation Settlement.

5.   During the past several months the Official Committee has developed a substantive consolidation compromise that the Official Committee members unanimously support. The Debtors have analyzed the appropriateness of consolidation and have independently assessed the merits and fairness of the Official Committee's proposed compromise

6.   In order to avoid protracted litigation over the merits of the issue, the Debtors intend to file a plan of reorganization and disclosure statement this month, within their exclusive period, that will contain the Official Committee's proposed compromise of substantive consolidation issues.

**Preliminary Statement**

7.   By moving for substantive consolidation at this time, independent of any plan of reorganization, the AHTC seeks to deprive the Debtors of their exclusive opportunity to file and solicit acceptances of a consensual reorganization plan. Setting the Consolidation Motion for hearing during the Debtors' exclusive period would compel the parties to engage in bitter and lengthy litigation over the issue of substantive consolidation and prevent the Debtors and the

---

[3]   See Response to the Debtors' Motion for an Order Granting a Fifth Extension of Exclusive Periods for Filing Chapter 11 Plans and Obtaining Acceptances of Such Plans filed by Ad Hoc Trade Committee (Docket No. 7097).
[4]   See Order Granting Motion for Fifth Extension of Exclusive Periods for Filing Chapter 11 Plans and Obtaining Acceptances of Such Plans (Docket No. 7348).

Official Committee from achieving, through a consensual plan of reorganization, the compromise of this issue that they have been working on for the past several months.

      8.      Permitting litigation over the merits of substantive consolidation to go forward on a path parallel to the confirmation of the Debtors' plan would have the effect of subjecting the estates to a contest over competing plans—wholly violative of the notion of exclusivity.

## Argument

A.      <u>Substantive Consolidation is plan determinative.</u>

      9.      Substantive consolidation is an equitable remedy that courts may grant in their discretion. <u>Eastgroup Props. v. Southern Motel Ass'n, Ltd.</u>, 935 F.2d 245, 248 (11th Cir. 1991). It involves pooling the assets and liabilities of the affected entities and treating them as one under a reorganization plan. <u>Id.</u> at 248. If substantive consolidation occurs, a consolidated entity's creditor has only one claim, which it must satisfy from the debtors' pooled assets. <u>Id</u>. This is true even if the creditor has claims against multiple debtors, including by way of guarantees. <u>Id</u>. For these reasons, consolidation greatly impacts plan formulation, creditor rights, the formation of creditor classes and, as a result, the ability to confirm a reorganization plan. A court order granting a motion to substantively consolidate these estates therefore would necessarily dictate substantial terms of any reorganization plan.

B.      <u>The Court should not grant the Consolidation Motion during the Debtor's Exclusivity Period.</u>

      10.      Bankruptcy Code section 1121 grants debtors the exclusive right to formulate a reorganization plan. <u>See</u> 11 U.S.C. § 1121(b) (2005). In addition, if a debtor proposes a plan within the exclusive period, it has the sole ability to solicit acceptances for its plan. During these exclusive periods, no other party may propose a plan. Congress created debtor exclusivity to

foster negotiations and increase the number of consensual reorganization plans filed.  See, e.g., In re Moonraker Assocs., Ltd., 200 B.R. 950, 951 (Bankr. N.D. Ga. 1996) (exclusivity is an "integral part of the Debtor's reorganization effort"); H.R. Rep. 95-595, 95th Cong., 1st Sess. 224 (1977) (indicating that negotiations among the parties should lead to a conclusion on how to distribute the debtor's assets).  In addition to the initial exclusivity period, a debtor may move for an exclusivity extension.  See 11 U.S.C. § 1121(d) (2005).  In these cases, the Court granted the Debtors an extension after recognizing, among other things, the Debtors' efforts to use exclusivity to negotiate a consensual plan that incorporates a settlement of substantive consolidation issues.

11.     In re DRW Prop. Co., 54 B.R. 489, 494 (Bankr. N.D. Tex. 1985), the United States Trustee opposed a substantive consolidation motion because it would "dictate certain terms of a future reorganization plan."  The court agreed, reasoning that consolidation outside of a plan would "deprive creditors of their right to vote on a plan involving a radical restructuring of their rights."  Id. at 498.  The court stated that granting substantive consolidation would "preclude the possibility of alternate methods of reorganization," and that

> if the Court were to grant the Debtors' Application for Substantive Consolidation, it would in effect, be dictating some of the terms of a future plan of reorganization which might not otherwise be approved by their creditors through the voting process.

54 B.R. at 498.

12.     Regardless of whether the Bankruptcy Code expressly contemplates substantive consolidation in §1123(a)(5)(c), which provides that a plan of reorganization may include "merger or consolidation" of debtors, or the power to consolidate stems a court's from general equitable power, according to DRW the effect consolidation has on the chapter 11 process is the

5

same. The DRW court observed that Congress contemplated that creditors should determine the chapter 11 plan process through a vote:

> Subchapter II of Chapter 11, 11 U.S.C. § 1121-1129, delineates the basic machinery which Congress had provided for creditor democracy within the debtor organization process. These sections allow creditors to vote on proposals which will affect substantive rights for which they have contractually bargained.

54 B.R. at 498.[5]

13. As in DRW, the effect of the AHTC's Consolidation Motion would be to "dictate the terms" of the Debtors' reorganization plan, in contravention of the Debtors' exclusivity entitlement. The Debtors, by Court order, maintain the exclusive right to propose a reorganization plan that they believe to be in the best interest of all creditors. As DRW warns, the Consolidation Motion is an attempt by a few creditors — mostly post-petition claims traders who bought into these cases to speculate on a windfall that might result from substantive consolidation — to dictate the terms of a reorganization plan and deprive the majority of creditors from casting a meaningful vote.

14. In In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983), the debtor sought approval to enter into a proposed settlement and compromise of all claims, counterclaims, and potential litigation among it and various creditors. Id. at 938. The transaction before that court also contemplated the transfer of cash and most of the debtors' property (real and personal) in return for future payments. It also required a significant restructuring of the rights of the debtor's creditors. See id. at 940. Objecting parties argued that section 363(b), which permits the use of estate property after notice and a hearing, should not permit the debtor to enter into such an all-

---

[5] Although DRW indicated that not all attempts to consolidate debtors prior to plan confirmation are impermissible, the moving party must demonstrate "compelling equitable considerations." See DRW, 54 B.R. at 498.

encompassing transaction. The court agreed, concluding that the transaction circumvented the requirements for plan confirmation "by establishing the terms of the plan *sub rosa* in connection with a sale of assets." See id. at 940.

15. The same concerns exist with respect to the Consolidation Motion because consolidation litigation—if successful—would establish the terms of creditor distribution, the settlement of inter-company claims, the effectiveness of any guarantees and the formation of creditor classes. The Consolidation Motion would circumvent the requirements for plan confirmation (most materially, voting by creditors) by allowing the AHTC to dictate the terms of a reorganization and impinge upon the substantive rights of the Debtors' other creditors.

16. Because the Consolidation Motion undermines the important bankruptcy policies of debtor exclusivity and democratic reorganization, the Court should follow DRW and abate the Consolidation Motion.[6]

17. Although the AHTC contends that its Consolidation Motion is appropriate at this juncture, the AHTC offers no precedent that addresses these arguments. For example, the Consolidation Motion argues that In re Stone & Webster, Inc., 286 B.R. 532 (Bankr. D. Del. 2002), supports the proposition that filing a substantive consolidation motion unrelated to a reorganization plan is appropriate. In Stone & Webster, however, the creditors committee filed a motion for consolidation *in connection with the committee's reorganization plan*. In fact, the committee of equity holders argued that "granting substantive consolidation . . . outside of a confirmable plan" would deprive parties in interest of a right to vote on a plan that would "radically restructure their substantive rights." Id. at 541. The court accepted their argument, but permitted the consolidation motion to go forward because the creditors' committee had filed

a plan proposing substantive consolidation, and was not "seeking an order . . . directing that [all plans filed] … must contain a substantive consolidation provision." Id. at 541-42 (emphasis added).

18.  Stone & Webster explained that the creditors committee merely sought permission to include substantive consolidation in its reorganization plan.  The court went on to state that its ruling did not: "(a) address the issue of whether the facts of these Chapter 11 cases warrant the use of the substantive consolidation provision as an appropriate means for implementing the plan . . . (b) deprive any claimant or interest holder of their right to vote for or against the [creditors committee plan] or to otherwise participate in the confirmation process; or (c) in any way preclude any other proponent of a different plan from seeking approval for such plan which does not contain a substantive consolidation provision . . ." or a variation thereof. See id. at 542; see also In re WorldCom, 2003 U.S. Dist. Lexis 11160, at *17 (S.D.N.Y. 2003) (consolidation is more properly addressed during plan confirmation because the parties may agree upon substantive consolidation and incorporate such settlement in the reorganization plan).

19.  The Consolidation Motion is therefore distinguishable from Stone & Webster. The Consolidation Motion is not related to any plan of reorganization.  The Consolidation Motion would require any plan, regardless of who sponsors it, to contain a full substantive consolidation provision and would preclude consideration of alternatives.  The Consolidation Motion therefore departs from the method of proposing consolidation articulated by Stone & Webster and is an impermissible attempt to abridge the substantive rights of other creditors.

---

[6] The AHTC had an opportunity to object to an extension of Debtor exclusivity, but instead supported the extension. Therefore, the Consolidation Motion is – effectively – an effort by the AHTC to reconsider the Court's order extending the Debtors' exclusivity.

20. The other cases cited by the AHTC are also distinguishable. In <u>In re Optical Techs., Inc.</u>, 221 B.R. 909 (Bankr. M.D. Fla. 1998), several affiliated debtors filed bankruptcy petitions months after the original debtors. The court had already substantively consolidated the estates of the original debtors. The original debtors sought to consolidate the new debtors and include them in their joint reorganization plan so they could demonstrate that their plan was feasible. Because the motion was made *in connection with the plan proposed by the original debtors during the exclusivity period* of the new debtors, that case has no relevance to the Debtors' cases. In fact, the <u>Optical Technologies</u> court went so far as to note the "very unusual and unorthodox setting" in which it had to consider the motion for consolidation. Similarly, <u>In re Palumbo Family Ltd. P'ship.</u>, 182 B.R. 447, 460 (Bankr. E.D. Va. 1995) it was the debtors who filed the motion for consolidation just prior to their plan of reorganization.

21. Furthermore, in <u>In re Alico Mining, Inc.</u>, 278 B.R. 586, 588 (Bankr. M.D. Fla. 2002) the court stated "it is important to point out the precise issue before this Court, which is whether or not a bankruptcy court has jurisdiction to substantively consolidate the estate of a debtor with the estate of a nondebtor; and not whether the estates should be substantively consolidated." In fact, in neither <u>Alico</u>, <u>Optical Technologies</u>, nor <u>Palumbo Family Ltd.</u> did any party ask the court to address consolidation's effect on debtor exclusivity and plan formulation. Therefore, the cases are of limited precedential value with respect to the issue raised by the Consolidation Motion. To the contrary, binding precedent in the Eleventh Circuit recognizes the disruptive effect a motion for consolidation has on plan formulation and voting. See <u>Eastgroup Props. v. Southern Motel Ass'n, Ltd.</u>, 935 F.2d 245, 248 (11th Cir. 1991).

22. Among the problems caused by the pendency of the Consolidation Motion is that it necessarily diverts the parties from negotiating the outstanding plan issues and instead requires

9

them to focus on litigation that is avoidable with a substantive consolidation compromise.  A substantive consolidation trial is extremely fact intensive and could take weeks to complete, only after intensive factual discovery.  As an example, one issue that needs resolution is the actual reliance of a creditor on the individual credit of a particular Debtor or on the Debtors' interrelatedness.  See Eastgroup, 935 F.2d at  251 (reliance inquiry must focus on the time the creditor extended credit to the debtor).  In a case such as this, where numerous claims are no longer held by the original creditors, the parties will have to establish the reliance of hundreds, or even thousands, of entities that are no longer involved with the case.  See In re Eagle Picher Indus., Inc., 192 B.R. 903, 908 (Bankr. S.D. Ohio 1996) (to establish reliance claims traders must offer evidence demonstrating their transferors' reliance).  Here, because claims from hundreds of different entities have been transferred since the inception of these cases, the required discovery prior to litigation will be extremely time consuming.

23. For these reasons the Court should use the discretion it enjoys over its docket to stay the Consolidation Motion until such time as it believes it is procedurally proper.  See, e.g., Smith v. Beal Acceptance Corp., 244 B.R. 487 (D.N. Ga. 2000) ("It is generally recognized that a court has wide discretion to control its docket and that decisions of the court concerning docket control matters are reviewed pursuant to the abuse of discretion standard.") (citing J.B. Pharm. Dist., Inc. v. Save-On Drugs & Cosmetics Corp., 893 F.2d 1201, 1209 (11th Cir. 1990)).

C. <u>The Consolidation Motion is an attempt to circumvent the provisions of Section 1121.</u>

24. The Consolidation Motion argues that section 105(a) is the basis for substantively consolidating the Debtors' estates.  While a bankruptcy court enjoys broad equitable powers, a court cannot use its section 105(a) powers to fashion substantive rights or issue orders that are contrary to express provisions of the Bankruptcy Code.  See, e.g., In re Aquatic Dev. Group,

10

Inc., 352 F.3d 671, 680 (2d Cir. 2003) ("the general grant of equitable power contained in section 105(a) cannot trump specific provisions of the Bankruptcy Code, but must instead be exercised within the parameters of the Code itself"); In re Perlman, 188 B.R. 704, 709 (Bankr. S.D. Fla. 1995) (noting that the "court's equitable power under [section] 105 cannot be used to 'protect' unsecured creditors where the relief requested would directly contravene specific provisions of the Bankruptcy Code …."). The same holds true when courts adjudicate consolidation motions. See also In re Davis, 1993 Bankr. Lexis 1383, at *5-6 (E.D. Penn. 1993) (indicating that courts cannot use section 105 powers to consolidate non-debtors because it violates the Bankruptcy Code's express provisions regarding the commencement of an involuntary bankruptcy petition).

25.     As indicated above, Bankruptcy Code section 1121 specifically sets forth "who may file a plan." See 11 U.S.C. § 1121 (2005). Section 1121 states that a creditor can only file a plan after the debtors' exclusivity period expires. The practical effect of the Consolidation Motion is to end debtor exclusivity and transform the Debtors' plan into the AHTC's plan. In essence, the Consolidation Motion is an attempt to side-step Congress' carefully crafted scheme for the filing and creditor approval of a reorganization plan (as the court observed in DRW, *supra*). The AHTC may move for consolidation in connection with its own reorganization plan only after it takes the steps mandated by Congress for ending Debtor exclusivity and filing an AHTC reorganization plan. The Consolidation Motion would impact several features of a reorganization plan: creditor recovery, the settlement of intercompany claims and interests, the consolidation of entities and the formation of creditor classes. As Bankruptcy Code section 1123 recognizes, these issues are reserved for a creditor approved reorganization plan. See 11 U.S.C. § 1123(a)(5) (2005).

D.   The Consolidation Motion is not ripe for adjudication.

26.   It is a fundamental precept of our legal system that courts may not adjudicate a dispute unless one of the parties has suffered a concrete injury.  Ultimately, the ripeness doctrine "prevents courts from entangling themselves in abstract disagreements" better solved through other avenues of redress.  Similarly, courts should not render rulings based on hypothetical scenarios as facts may develop that leave the parties without any harm and render the court's opinion of no legal effect.

27.   In Cheffer v. Reno, 55 F.3d 1517, 1524 (11th Cir. 1995), the Eleventh Circuit reaffirmed that the "ripeness doctrine raises both jurisdictional and prudential concerns."  Furthermore, "the purpose of the ripeness doctrine is 'to prevent the court, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  Id. (citing Abbott Labs. v. Gardiner, 387 U.S. 136, 149 (1967).  In Cheffer, the plaintiffs alleged that a statute, not yet enforced against them, violated their Eighth Amendment rights.  See Cheffer, 55 F.3d at 1524.  The court noted that the plaintiffs' allegations "amount[ed] to mere speculation about future events" as they only alleged that at some point the statute could cause them harm. Id.

28.   The AHTC members have not suffered any injury or the lack thereof with respect to substantive consolidation.  The Debtors have neither filed a motion to support or oppose substantive consolidation, nor have the Debtors filed a plan detailing creditor recoveries.  At this point, any injury is mere speculation, and there is no harm to be remedied at this juncture.  As in Cheffer, any injury is completely contingent on future events, and the Court should postpone any consideration on the merits until more is known with respect to any proposed reorganization plan.

29.     It is well recognized that the best method of resolving intercreditor disputes surrounding chapter 11 plan formulation is through negotiation.  Principal constituencies have reached a compromise of substantive consolidation, and the compromise forms the basis of the Debtors' plan that will be field this month.  The Consolidation Motion undermines the favored approach of compromise by asking the Court to permit litigation over substantive consolidation before the creditors have an opportunity to accept or reject the Debtors' plan.  Such a ruling would allow creditors to litigate a host of issues related to their recovery at any stage of the case based on their speculation as to future case outcomes.  Congress developed a carefully planned structure for permitting debtors to reorganize while simultaneously protecting creditors' rights.  The Consolidation Motion significantly disrupts this policy.  At this time, not only is there no "present need for the court to act," but Congress has in fact determined that the Court should not act by establishing the law allowing exclusivity periods.

30.     Courts have recognized that it is best to rule on consolidation motions only when the case is ready for confirmation.  In <u>In re Crown Mach. & Welding, Inc.</u>, 100 B.R. 25 (Bankr. D. Mont. 1989), two creditors filed a motion to consolidate the debtors early on in the debtors' cases, and the court held a hearing at that time.  <u>See id.</u> at 25.  Because the issue was not yet "ripe for a decision" the court withheld its ruling.  <u>See id</u>.  Rather, five months later, after the court had approved the debtors' disclosure statement and reorganization plan, it finally issued its ruling on consolidation.  <u>See id</u>.  Intuitively, the court recognized that there was no reason to address this issue on the merits until the debtors had filed their reorganization plans.

31.     Similarly, in <u>In re WorldCom</u>, 2003 U.S. Dist. Lexis 11160, at *17 (S.D.N.Y. 2003), a creditor appealed the court's order approving the debtors' disclosure statement claiming it was inadequate because it did not address substantive consolidation.  In dismissing the appeal,

the district court recognized that issues relating to consolidation are more properly addressed during plan confirmation because through the plan process parties may resolve issues related to substantive consolidation and incorporate their agreement into the reorganization plan. See id. Specifically, until the court rules on the plan "there is no way of knowing whether the allegedly inadequate disclosure prejudices anyone." See id. at *16 (quoting In re Perez, 30 F.3d 1209, 1216-17 (9th Cir. 1994)); see also In re Apex Oil Co., 101 B.R. 92, 94 (Bankr. E.D. Mo. 1989) (because debtors' plan called for consolidation court refused to rule on merits of consolidation before confirmation hearing). WorldCom is instructive because ultimately the parties settled consolidation through the preferred approach of negotiation. See In re WorldCom, Inc., 2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. 2003).

**Conclusion**

32. The Debtors respectfully request that the Court deny or abate the Consolidation Motion because it violates the Debtors' exclusive right to file a plan of reorganization.

Dated: June 13, 2006

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By *s/ D. J. Baker*
D. J. Baker
Sally McDonald Henry
Rosalie Walker Gray
Keith N. Sambur
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

Co-Counsel for the Debtors

SMITH HULSEY & BUSEY

By *s/ Stephen D. Busey*
Stephen D. Busey
James H. Post
Cynthia C. Jackson,
Florida Bar Number 117790
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)

Co-Counsel for the Debtors