EXHIBIT A-1
To Asset Purchase Agreement

List of Stores

| Store No. | Street Address | City | County | State |
|---|---|---|---|---|
| 217 | 1199 South Federal Highway | Pompano Beach | Broward | FL |

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT


DESCRIPTION OF LEASE AND RELATED LAND

WINN-DIXIE STORE # **217** - Pompano Beach, Florida

Lease:

Lease, dated May 10, 1988, between Pomp Commercial Corp., Landlord, and Winn-Dixie Stores, Inc., Tenant.

Short Form Lease, dated May 10, 1988, between Pomp Commercial Corp., Landlord, and Winn-Dixie Stores, Inc., Tenant, recorded in Book 15916, page 0135, public records of Broward County, Florida.

Amendments

First Amendment to Lease, dated August 1, 1990, between Pompano Marketplace Partners, Landlord, and Winn-Dixie Stores, Inc., Tenant.

Supplemental Lease Agreement, dated November 13, 1989, between Pomp Commercial Corp., Landlord, and Winn-Dixie Stores, Inc., Tenant.

Second Amendment to Lease, dated November 30, 1997, between SPV Real Estate Partners No.1 L.P., Landlord, and Winn-Dixie Stores, Inc., Tenant.

Second Supplemental Lease Agreement, made February 16, 2000, between TA/Western LLC, Landlord, and Winn-Dixie Stores, Inc., Tenant.

Subordination, Nondisturbance, and Attornment Agreement, made January 20, 1998, between Wells Fargo Bank, National Association, Lender, and Winn-Dixie Stores, Inc.

Letter Agreement, dated January 17, 1989, between Pomp Commercial Corp., Landlord, and Winn-Dixie Stores, Inc., Tenant.

Premises:

That certain store building and related improvements located at 1199 South Federal Highway, Pompano Beach, Broward County, Florida.

Legal Description:   The real property as more particularly described as follows:
SEE ATTACHED LEGAL DESCRIPTION

**EXHIBIT A-2**
**TO ASSET PURCHASE AGREEMENT**

<u>LEGAL DESCRIPTION – STORE #217</u>

A portion "A" of U.S. 1 SUBDIVISION, according to the Plat thereof as recorded in Plat Book 138, Page(s) 2, of the Public Records of Broward County, Florida.

Also described as:

[SEE FOLLOWING PAGE]

EXHIBIT "A"

LEGAL DESCRIPTION:

A portion of the SE 1/4 of Section 1, Township 49 South, Range 42 East and a portion of the SW 1/4 of Section 6, Township 49 South, Range 43 East lying West of the West right-of-way line of U.S. Highway No. 1, also being State Road (4) 5 as per State Road right-of-way map Section 86020-2102, all of the above lying and being in the City of Pompano Beach, Broward County, Florida, more particularly described as follows:

Commence at the Southeast corner of said Section 1; thence North 0°-04'-25" East along the East line of said Section 1, also being the West line of said Section 6 for a distance of 1237.99 feet to the Point of Beginning of the hereinafter described tract of land; thence North 13°-57'-09" East along the said West right-of-way line of U.S. Highway No. 1, also being State Road (4) 5 for a distance of 500.26 feet to a point of intersection with a line being 944.50 feet South of and parallel with the North line of the SW 1/4 of said Section 6; thence North 89°-07'-45" West along the said South line of the North 944.50 feet of the SW 1/4 of Section 6 for 120.12 feet to a Point of Intersection with the East line of said Section 1; thence North 0°-04'-25" East along said East line of Section 1 for a distance of 217.14 feet to a point being 60.00 feet South of the North line of the South 1/2 of the NE 1/4 of the SE 1/4 of said Section 1; thence North 90°-00'-00" West along a line, (also as described in Deed Book 3427-382, Public Records of Broward County, Florida) being 60.00 feet South of the North line of the South 1/2 of the NE 1/4 of the SE 1/4 of said Section 1 for a distance of 939.43 feet; thence South 0°-03'-30" East along a line (also as described in Deed Book 3427-382 Public Records of Broward County, Florida) being 60.00 feet East of the West line of the East 3/4 of the East 1/2 of the SE 1/4 of said Section 1 for a distance of 605.08 feet; thence South 89°-51'-38" East along the North line of the SE 1/4 of the SE 1/4 of said Section 1 for a distance of 272.68 feet to the Northeast corner of the NW 1/4 of the SE 1/4 of the SE 1/4 of said Section 1; thence South 0°-00'-52" East along the West line of the East 1/2 of the East 1/2 of the SE 1/4 of said Section 1 for a distance of 419.02 feet to a point being 86.15 feet South of and parallel with the South line of the NW 1/4 of the NE 1/4 of the SE 1/4 of said Section 1; thence South 89°-47'-27" East along a line 86.15 feet South of the said South line of the NW 1/4 of the NE 1/4 of the SE 1/4 of said Section 1 for a distance of 332.36 feet; thence North 0°-01'-45" East along the West line of the SE 1/4 of the NE 1/4 of the SE 1/4 of said Section 1 for a distance of 86.15 feet to the Northwest corner of the SE 1/4 of the NE 1/4 of the SE 1/4 of said Section 1; thence South 89°-47'-27" East along the North line of the South 3/4 of the SE 1/4 of the SE 1/4 of said Section 1 for a distance of 274.10 feet to a Point of Intersection with the West right-of-way line of said U.S. Highway No. 1, also being State Road (4) 5; thence North 13°-57'-09" East along said West right-of-way line of U.S. Highway No. 1, also being State Road (4) 5, for a distance of 243.54 feet to the POINT OF BEGINNING.

**EXHIBIT A-3**
**TO ASSET PURCHASE AGREEMENT**

<u>**EXCLUSIVE USE CLAUSES**</u>

None.

EXHIBIT A-4
TO ASSET PURCHASE AGREEMENT

LIST OF DOCUMENTS BINDING ON BUYER

**WINN-DIXIE STORE # 217**
Pompano Beach, Florida

Lease:        Lease, dated May 10, 1988, between Pomp Commercial Corp., Landlord, and
              Winn-Dixie Stores, Inc., Tenant.

              Short Form Lease, dated May 10, 1988, between Pomp Commercial Corp.,
              Landlord, and Winn-Dixie Stores, Inc., Tenant, recorded in Book 15916, page
              0135, public records of Broward County, Florida.

Amendments: First Amendment to Lease, dated August 1, 1990, between Pompano
              Marketplace Partners, Landlord, and Winn-Dixie Stores, Inc., Tenant.

              Supplemental Lease Agreement, dated November 13, 1989, between Pomp
              Commercial Corp., Landlord, and Winn-Dixie Stores, Inc., Tenant.

              Second Amendment to Lease, dated November 30, 1997, between SPV Real
              Estate Partners No.1 L.P., Landlord, and Winn-Dixie Stores, Inc., Tenant.

              Second Supplemental Lease Agreement, made February 16, 2000, between
              TA/Western LLC, Landlord, and Winn-Dixie Stores, Inc., Tenant.

              Subordination, Nondisturbance, and Attornment Agreement, made January
              20, 1998, between Wells Fargo Bank, National Association, Lender, and Winn-
              Dixie Stores, Inc.

              Letter Agreement, dated January 17, 1989, between Pomp Commercial Corp.,
              Landlord, and Winn-Dixie Stores, Inc., Tenant.

EXHIBIT B
To Asset Purchase Agreement

Form of Bill of Sale

**BILL OF SALE**

**WINN-DIXIE STORES, INC.,** a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective May 9, 2006, among **WAL-MART STORES, INC.** a Delaware corporation, or its permitted assignee pursuant to paragraph 17.5 of the Agreement (hereinafter defined) ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Lease or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store location as more particularly described on attached Schedule A.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

This conveyance is made pursuant to the order of the Bankruptcy Court in *In re Winn-Dixie Stores, Inc., et al.,* Case No. 05-11063 (RDD)(Jointly Administered), United States Bankruptcy Court, Middle District of Florida, Jacksonville Division.

**IN WITNESS WHEREOF,** Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2006.

<div style="margin-left:40%">

**SELLER:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

By: _____
Name: _____
Title:_____

</div>

EXHIBIT C
To Asset Purchase Agreement

**FORM OF CLOSING STATEMENT**

**CLOSING STATEMENT SUMMARY**

**BUYER:**                    Wal-Mart Stores, Inc., a Delaware corporation, or its
                              permitted assignee pursuant to paragraph 18.5 of the
                              Agreement

**SELLER:**                   Winn-Dixie Stores, Inc., a Florida corporation

**ESCROW    AGENT    and** _____
**SETTLEMENT AGENT:**

**PROPERTY**                  Store No. 217

**CLOSING DATE:**             _____, 2006

---

**SELLER'S STATEMENT**

**I.    PURCHASE PRICE:**

         Leasehold:                                    $_____

         FF&E:                                         $_____

         TOTAL PURCHASE PRICE:                         $_____

**II.**                                                $_____

**III.**                                               $_____

**A.    NET CREDIT/DEBIT TO SELLER:**    ($_____)    or $_____

**B.    TOTAL CLOSING COSTS PAYABLE BY   ($_____)
        SELLER:**

**AMOUNT DUE SELLER**                                  $_____

## BUYER'S STATEMENT

| | | | |
|---|---|---|---|
| **I.** | **TOTAL PURCHASE PRICE:** | | $_____ |
| **A.** | **NET CREDIT/DEBIT TO BUYER:** | ($_____) | **or** $_____ |
| **B.** | **TOTAL CLOSING COSTS PAYABLE BY BUYER:** | ($_____) | |
| **C** | **DEPOSIT** | ($_____) | |

**AMOUNT DUE FROM BUYER**                                    $_____

### TOTAL DISBURSEMENTS[1]

| | | |
|---|---|---|
| 1. | Deposit from Escrow Agent | $_____ |
| 2. | Amount Due From Buyer | $_____ |

**TOTAL RECEIPTS:**                                    $_____

| | | |
|---|---|---|
| 1. | Seller's Brokers Fees | ($_____) |
| 2. | Title Premiums, Title Examination Fees and related Costs, Recording and Escrow Fees | ($_____) |
| 3. | Seller's Cure Costs | ($_____) |
| 4. | Seller's Proceeds | _____ |
| [5.] | [Other] | ($_____) |

**TOTAL DISBURSEMENTS:**

### STIPULATIONS

1. Purchase Agreement. This transaction has been closed pursuant to the provisions set forth in that certain Asset Purchase Agreement between Seller and Buyer, dated effective as of May 9, 2006 (the "Purchase Agreement"). Attached hereto is an individual itemized closing statement for the Assets covered by the Purchase Agreement

---

[1] Refer to Individual Property Closing Statement for Itemization.

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Wal-Mart Stores, Inc.
Store No. 217
May 9, 2006
SGRJAX\85717.1

2. <u>Authorization to Disburse</u>.  By their signatures below, Seller and Buyer hereby (a) authorize and direct the closing agent to (i) make the disbursements included in this Closing Statement and (ii) to wire the AMOUNT DUE SELLER to the following account:

_____
_____
_____
_____

3. <u>Counterparts</u>.  This Closing Statement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.  To facilitate execution and delivery of this Closing Statement, the parties may execute and exchange counterparts of the signature pages hereof by telecopier or electronic mail, immediately followed by delivery of originals by overnight delivery services.

4. <u>Adjustments</u>.  Seller and Buyer acknowledge and agree that any amounts not determinable as of the Closing Date or reflected on this Closing Statement (including on the individual closing statements attached hereto) will be taken into account at the Closing based on good faith estimates with the actual amount to be calculated by Seller and Buyer as soon as practicable after the actual amounts are determinable with an appropriate adjustment to be paid by the appropriate party promptly after determination.  Seller and Buyer also acknowledge and agree to execute any documents necessary to correct any errors or omissions in the Closing Statement with an appropriate adjustment to be paid by the appropriate party promptly after determination.

The undersigned parties acknowledge and agree to the this Closing Statement as of this \_\_\_\_\_ day of _____, 2006, and hereby authorize _____ Title Insurance Company, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER:**                                    **BUYER:**

**WINN-DIXIE STORES, INC.,**          **WAL-MART STORES, INC.,**
a Florida corporation                    a Delaware corporation

By: _____          By: _____
Name: _____          Name: _____
Title: _____          Title: _____

**Exhibit C – Form of Closing Statement**

## CLOSING STATEMENT

**SELLER/ASSIGNOR:**    Winn-Dixie _____, Inc., a Florida corporation
**BUYER/ASSIGNEE:**
**TRANSACTION:**    Acquisition of Leasehold Interests and Related Assets
**PURCHASE PRICE:**

| | | |
|---|---|---|
| Store #_____ | $ | - |
| Store #_____ | $_____ | - |

**TOTAL PURCHASE PRICE:**    $    -
**CLOSING DATE:** _____, 2006

## SELLER'S STATEMENT

**Purchase Price:**    $_____    -
**Total Purchase Price:**    $    -
**Less Adjustments:**
  1. Seller's Prorated Share of Taxes and
     Other Charges Payable Under Leases (1)    $    -
       **Total Adjustments:**    $    -    $    -

**Plus Adjustments:**
  1. Seller's Prorated Share of _____ 2006
     Rents, and Other Charges Paid in Advance
     Under Leases (2)    $    -
       **Total Adjustments:**    $    -    $    -

**Less Closing Costs to be Paid by Seller:**
  1. Seller's Attorneys' Fees & Costs    P.O.C.
     (Smith, Gambrell & Russell, LLP)
  2. Seller's Brokers Fees    P.O.C.
     (The Food Partners)
  3. Seller's Brokers Fees    P.O.C.
     (DJM Asset Management, LLC)

       **Total Seller's Closing Costs:**    P.O.C.    P.O.C.

**TOTAL AMOUNT DUE TO SELLER:**    $    -

Exhibit C
1 of 6

Closing Statement
Winn-Dixie Stores, Inc. S/T_____

60391    5/18/2006

### BUYER'S STATEMENT

**Purchase Price:**              $ _____ -

**Total Purchase Price:**          $ _____ -

**Less Adjustments:**

1. Earnest Money Deposit with Escrow Agent    $ _____ -
2. Seller's Prorated Share of Taxes and
   Other Charges Payable Under Leases (1)    $ _____ -

     **Total Adjustments:**    $ _____ -    $ _____ -

**Plus Adjustments:**

1. Seller's Prorated Share of _____ 2006
   Rents, and Other Charges Paid in Advance
   Under Leases (3)    $ _____ -

     **Total Adjustments:**    $ _____ -    $ _____ -

**Plus Closing Costs to be Paid by Buyer:**

1. Buyer's Attorney's Fees & Costs    P.O.C.
2. Title Examination/Commitment Fees (3)    $ _____ -
   (First American Title Insurance Company)
3. Title Insurance Premiums (Leasehold) (3)    $ _____ -
   (First American Title Insurance Company)
4. Recording/Filing Fees    $ _____ -
   (First American Title Insurance Company)
6. Surveyor's Fees (4)    $ _____ -
   (_____)
7. Environmental Site Assessment Fees    $ _____ -
   (_____)
8. Documentary/Transfer Taxes    $ _____ -
   (First American Title Insurance Company)

     **Total Buyer's Closing Costs:**    $ _____ -    $ _____ -

**AMOUNT DUE FROM BUYER:**    $ _____ -

**DEPOSIT DUE FROM ESCROW AGENT:**    $ _____ -

**TOTAL AMOUNT DUE AT CLOSING:**    $ _____ -

Closing Statement
Exhibit C    Winn-Dixie Stores, Inc. S/T_____
60391    2 of 6    5/18/2006

The undersigned parties acknowledge and agree to the foregoing Closing Statement as of this
_____ day of _____, 2006, and hereby authorize Smith, Gambrell & Russell, LLP,
as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER/ASSIGNOR:**                    **BUYER/ASSIGNEE:**

**WINN-DIXIE** _____, **INC.**, a Florida    _____

corporation                             a _____ corporation

By:_____            By:_____

Name:_____            Name:_____

Title: _____ President          Title: _____ President

**Notes:**

(1) <u>2006 Prorations - Amounts Not Yet Paid and Payable</u>. Prorations are based on (i) estimate of 2006 real estate taxes derived from actual 2005 amounts paid by Seller in arrears in accordance with leases; and (ii) estimate of 2006 common area maintenance charges derived from actual 2005 amounts paid by Seller in arrears in accordance with applicable leases. <u>All prorated amounts are hereby stipulated as final, and shall not be subject to readjustment after closing, notwithstanding that actual amounts when available may differ from the stipulated amounts herein.</u> Buyer shall be responsible for the payment of such charges for 2006 and accruing from and after the closing date and subsequent years. Prorations are as follows:

**<u>Real Estate Taxes</u>**

| Store # _____ | | | <u>Totals</u> | |
|---|---|---|---|---|
| - 2006 Real Estate Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| Store # _____ | | | | |
| - 2006 Real Estate Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| **Total Real Estate Taxes:** | | | **$** | **-** |

**<u>Personal Property Taxes</u>**

| Store # _____ | | | | |
|---|---|---|---|---|
| - 2006 Personal Property Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| Store # _____ | | | | |
| - 2006 Personal Property Taxes (estimate) | $ | - | | |
| - Per Diem Tax Amount | $ | - | | |
| - Seller's Share of 2006 Taxes | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| **Total Personal Property Taxes:** | | | **$** | **-** |

**<u>CAM Charges</u>**

| Store # _____ | | | | |
|---|---|---|---|---|
| - 2006 CAM Charges | $ | - | | |
| - Per Diem Amount | $ | - | | |
| - Seller's Share of 2006 CAM Charges | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| Store # _____ | | | | |
| - 2006 CAM Charges | $ | - | | |
| - Per Diem Amount | $ | - | | |
| - Seller's Share of 2006 CAM Charges | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - |
| **Total CAM Charges:** | | | **$** | **-** |
| **Total Amount of Seller's Prorated Share of 2006 Prorations:** | | | **$** | **-** |

(2) <u>2006 Prorations - Amounts Previously Paid by Seller</u>. Prorations are based on _____, 2006 rents, insurance and other charges previously paid by Seller in accordance with applicable leases. Buyer shall be responsible for the payment of such charges that become due and payable for _____, 2006 and thereafter. Prorations are as follows:

**Rent**

Store # _____                                              <u>Totals</u>
- Total _____, 2006 rent paid:      $          -
- Per diem rent:                          $          -
- Buyer's prorated share
   (__/__/06 - __/__/06) (_____ days)    $          -     $          -

Store # _____
- Total _____, 2006 rent paid:      $          -
- Per diem rent:                          $          -
- Buyer's prorated share
   (__/__/06 - __/__/06) (_____ days)    $          -     $          -
      **Total Amount of Buyer's Prorated Share of Prorations:**      $          -

(3) <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

Store # _____                                              <u>Totals</u>
- Title Search Fees and Costs             $          -
- Title Premium                           $          -     $          -

Store # _____
- Title Search Fees and Costs             $          -
- Title Premium                           $          -     $          -
      **Total Amount of Title Fees and Expenses:**      $          -

(4) <u>Survey Fees</u>.  Survey fees are as follows:
Store #_____                             $          -
Store #_____                             $          -
      **Total Survey Fees:**                         $          -

(5) <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller directly by the respective utility companies.  Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof.  Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof.  The party responsible for each share of such utility charges shall pay such charges promptly and without demand therefor.  Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6) <u>Capitalized Terms</u>.  Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

RECEIPTS:

|   |   |   |   |   |
|---|---|---|---|---|
| 1. | Deposit Due from Escrow Agent | $ | - | |
| 2. | Cash Due from Buyer | $ | - | |
| **TOTAL CASH RECEIVED:** | | $ | - | $ | - |

DISBURSEMENTS:

|   |   |   |   |
|---|---|---|---|
| 1. | _____ | $ | - |
|   | (Survey Fees) | | |
| 2. | _____ | $ | - |
|   | (Environmental Site Assessment Fees) | | |
| 3. | First American Title Insurance Company | $ | - |
|   | (Title Premium & Costs, Taxes and Recdg.) | | |
| 4. | Winn-Dixie Stores, Inc. | $ | - |
|   | (Seller's Proceeds) | | |
| **TOTAL DISBURSEMENTS:** | | $ | - |

Exhibit C
6 of 6

Closing Statement
Winn-Dixie Stores, Inc. S/T_____
5/18/2006

60391

EXHIBIT D
To Asset Purchase Agreement

**<u>Permitted Encumbrances</u>**

The following items, to the extent the same are applicable to the tenant's interest under the terms of the Lease:

1.  Taxes and assessments of any taxing authority that are attributable to any period following Closing.

2.  All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.  Rights of Landlord under the Lease, including the rights of the Landlord's mortgagee.

4.  All other matters set forth as exceptions in the Title History, other than Monetary Liens.

5.  Subject to paragraph 4.2, all other matters set forth as exceptions in any Title Commitment, other than Monetary Liens.

EXHIBIT E

FORM OF SALE ORDER

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

## ORDER APPROVING DEBTORS' (A) SALE OF ASSETS FREE AND CLEAR OF LIENS, (B) ASSUMPTION AND ASSIGNMENT OF LEASE AND (C) RELATED RELIEF (STORE NO. 217)

This matter came before the Court on May 18, 2006 on the amended motion, dated April 26, 2006, of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order (Docket No. 7517) under 11 U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P. 3002, 6004 and 6006 (a) authorizing the Debtors to sell certain leasehold interests, including the assets described in the asset purchase agreement attached as Exhibit A (the "Purchase Agreement") between Winn-Dixie Stores, Inc. and Wal-Mart Stores, Inc. (the "Purchaser"), free and clear of liens, claims, interests and encumbrances, (b) authorizing the Debtors to assume and assign the unexpired lease identified in the Purchase Agreement (the "Lease") in connection with such sale, (c) fixing a cure amount for the applicable lease and (d) granting related relief (the "Motion").  By the Motion, the Debtors

asserted that the only cure required under the Lease for Store No. 217 was payment of $757.37 (the "Cure Amount"). By the Motion, landlords were given until April 25, 2006 to object to the Cure Amounts. The landlord for Store No. 217 filed a timely objection and unless resolved by the parties, the matter will be set for hearing before the Court at a future date. The Court held a hearing on the Motion on May 18, 2006 to approve the sale of the Assets[2] (the "Sale Hearing"). **Alternatives, depending on the circumstance:** [The Court has reviewed the Motion and heard the representations of counsel. Upon the representations of counsel and without objection by the United States Trustee or any other interested party, the Court makes the following findings of fact:] **or** [The Court has reviewed the Motion, [considered the evidence] and heard arguments of counsel. After due deliberation and good and sufficient cause existing, the Court makes the following findings of fact:]

     A.     This Court has jurisdiction over the Motion and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

     B.     The Debtors solicited the highest or otherwise best offer for the assets described in the Purchase Agreement (the "Assets"), in accordance with bidding procedures (the "Bidding Procedures") approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures Order"). Competing bids were received for the Assets, and the Debtors conducted an auction for the Assets on May 9, 2006 (the "Auction"). At the Auction,

---

[2]    All capitalized terms not otherwise defined in this Order have the same meaning provided to them in the Purchase Agreement.

the Purchaser submitted the final aggregate bid of $625,000 representing the highest or otherwise best offer received for the Assets.

C.    The Debtors have provided interested parties (including all parties asserting claims or interests in the Assets, if any) with proper notice of the Motion, the Sale Hearing, the Auction, the assumption and assignment of the Lease, and the fixing of any cure amount, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), Local Rule 2002-1, the Notice Procedures Order entered by the Court in these cases and the Bidding Procedures Order. Such notice was good and sufficient, appropriate under the circumstances and no other or further notice of the Motion, the Sale Hearing, the Auction, the assumption and assignment of the Lease, or the fixing of any cure amount is or shall be required. A reasonable opportunity to object or be heard on the relief requested was afforded to all parties in interest.

D.    The Debtors marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, the Bidding Procedures, the Bankruptcy Code and all other applicable Orders entered in these cases. The bidding on the Assets and the Auction were conducted in a non-collusive, fair and good faith manner. The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets. In their sound business judgment, the Debtors determined that the purchase price provided in the Purchase Agreement was the highest or otherwise best offer for the Assets.

E.    Following the Auction, in accordance with the Bidding Procedures, the Debtors provided notice of the Successful Bid (as defined in the Bidding Procedures), the Purchase Agreement, and the proposed terms of this Order to (i) the Committee's Professionals,

(ii) the DIP Lender Agent Representatives, (iii) the U.S. Trustee, (iv) all applicable taxing authorities and other governmental agencies, (v) all non-debtor parties to the Lease and (vi) all other relevant parties. Such notice was good and sufficient, appropriate under the circumstances and no other or further notice of the Successful Bid, the Purchase Agreement, or this Order is or shall be required. A reasonable opportunity to object or be heard on the relief requested was afforded to all parties in interest.

    F.  The Debtors (i) have full corporate power and authority to execute and consummate the Purchase Agreement attached as Exhibit A, the assumption and assignment agreement attached as Exhibit F to the Purchase Agreement (the "Assumption and Assignment Agreement"), and all related documents, and the sale of the Assets (the "Sale") and the assumption and assignment of the Lease, as described in the Purchase Agreement, has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

    G.  The Debtors have good business reasons to sell the Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b).

    H.  Neither the Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

    I.  The Debtors and the Purchaser proposed, negotiated and entered into the Purchase Agreement, without collusion, in good faith and at arms'-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

J.    The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the benefits and protections afforded by that section.

K.    The consideration the Purchaser is providing to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

L.    The Debtors' transfer of the Assets to the Purchaser pursuant to the Purchase Agreement, any related bills of sale or other applicable transfer agreements, including the Assumption and Assignment Agreement, will be a legal, valid, and effective transfer of the Assets. The Debtors' transfer of the Assets to the Purchaser vests the Purchaser with good and valid title in and to the Assets free and clear of any and all liens, claims, encumbrances, pledges, mortgages, security interests, charges, options, judgments or other interests of any kind or nature, including, but not limited to, that certain mortgage executed by Winn-Dixie Stores, Inc., a Florida corporation, in favor of Wachovia Bank, National Association, as Administrative Agent and Collateral Monitoring Agent, recorded June 27, 2005, in Book 39946, page 1255, of the public records of Broward County, Florida (collectively, the "Claims and/or Interests"), with the exception of the Permitted Encumbrances, if any, as defined in the Purchase Agreement. Any non-assumed Claims and/or Interests will attach to the proceeds of the sale of the Assets with the same validity, enforceability and priority they now have as against the Assets, subject to any rights, claims, defenses and objections of the Debtors, Wachovia Bank National Association, as Administrative Agent and Collateral Agent for itself ("Agent") and the other financial institutions from time to time parties to the Credit Agreement dated as of February 23, 2005, as

may be amended or modified (collectively, "Lenders" and together with Agent, collectively, the "DIP Lender") and all other interested parties with respect to such Claims and/or Interests.

      M.     The Debtors may sell and transfer the Assets in accordance with the terms and conditions of the Purchase Agreement free and clear of all Claims and/or Interests (except the Permitted Encumbrances) because any entity with any Claims and/or Interests in the Assets to be transferred (i) has consented to the Sale (including the assumption and assignment of the Lease) or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claims and/or Interests; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  Holders of Claims and/or Interests, if any, who did not object, or who withdrew their objections to the Motion are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2).

      N.     The Debtors will cause the net proceeds from the Sale to be paid in accordance with the terms of the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in full of all Claims of Debtors' Prepetition Secured Lenders, dated March 23, 2005 (the "Final Financing Order") (Docket No. 501), and the Loan Documents (as defined in the Final Financing Order).

O.    The Debtors' assumption and assignment of the Lease in connection with the Sale is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' estates and creditors.

P.    The Debtors have provided the landlord under the Lease with adequate assurance that they will promptly cure any defaults under the Lease pursuant to 11 U.S.C. § 365(b)(1).

Q.    The Court will determine whether any amounts are due by the Debtors under the Lease (if any, the "Cure Amount").  The Debtors will pay the Cure Amount, if any, upon entry of a final order of the Court establishing any such Cure Amount.  Upon payment of any such Cure Amount, all defaults, if any, under the Lease will be deemed cured.

R.    The Debtors and Purchaser have provided the landlord under the Lease with adequate assurance of its future performance under the Lease, and the assumption, assignment and sale of the Lease satisfies the requirements of 11 U.S.C. §§ 363, 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B), as applicable.

S.    No default of the type described in 11 U.S.C. § 365(b)(2)(D) exists under the Lease.

T.    Except as expressly set forth in the Purchase Agreement and the Assumption and Assignment Agreement, the Purchaser will have no responsibility for any liability, claim or other obligation of or against the Debtors related to the Assets or the Lease by virtue of the transfer of the Assets and the assumption and assignment of the Lease to the Purchaser.  The Purchaser will not be deemed, as a result of any action taken in connection with the purchase of the Assets or the assumption and assignment of the Lease, to (i) be a successor to

the Debtors (other than with respect to any obligations arising under the Lease from and after the Closing); or (ii) have, *de facto* or otherwise, merged with or into the Debtors. The Purchaser is not acquiring or assuming any liability, warranty, or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement.

U.   The Court's approval of the Purchase Agreement and the Assumption and Assignment Agreement is in the best interests of the Debtors, their estates and their creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.   The Motion is granted to the extent set forth in this Order.

2.   All objections to the entry of this order or to the relief granted and requested in the Motion with respect to the Purchase Agreement, the Lease, the sale of the Assets to the Purchaser or any related matter addressed in this Order that have not been withdrawn, waived or settled at or before the Sale Hearing, are denied and overruled on the merits.

3.   The Purchase Agreement and the Assignment and Assumption Agreement are each approved in all respects. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized (subject to applicable Closing conditions set forth in the Purchase Agreement), to consummate the Sale, including transferring and conveying the Assets to the Purchaser, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

4.   The Debtors are authorized, in accordance with 11 U.S.C. §§ 105(a), 363 and 365, to assume and assign the Lease to the Purchaser.

5.    The Debtors and the Purchaser have satisfied the requirements of 11 U.S.C. §§ 365(b)(1), (3) and 365(f)(2), including the provision of adequate assurance of future performance.  In particular, while the Court does not expressly decide the issue of whether the real property that is the subject of the Lease (the "Property") is part of a "shopping center" within the meaning of 11 U.S.C. § 365, all of the so-called "shopping center provisions" of the Bankruptcy Code with respect to the assumption of a shopping center lease have been satisfied in connection with the assumption and assignment of the Lease and the Purchaser's use of the premises in a manner consistent with its typical retail operations (including the operation of a pharmacy), as described in the Purchase Agreement.

6.    The Lease will be assumed and assigned to the Purchaser, in accordance with its terms.  The assigned Lease will remain in full force and effect notwithstanding any provision therein to the contrary (including provisions of the type described in 11 U.S.C. §§ 365(b)(2), (e)(1) and (f)(1)) which prohibit, restrict or condition such assignment or transfer).  The DIP Lender and all non-debtor parties to the Lease are deemed to have consented to the assignment, if consent was not otherwise obtained in accordance with the Purchase Agreement.

7.    Any rights contained in the Lease which purport to be personal only to the Debtors or to be exercisable only by the Debtors constitute unenforceable restrictions on assignment and may be freely exercised by the Purchaser, following Closing, to their full extent.

8.      Notwithstanding any provision in any lease, contract, reciprocal easement agreement ("REA") or applicable law, the Purchaser is authorized to allow the Leased Premises to remain dark for up to eighteen (18) months after Closing, notwithstanding any subsequent assignment or disposition of the Leased Premises in accordance with the terms of the Lease (unless the Lease or such contract, REA or local law would allow the Leased Premises to remain dark for a period in excess of eighteen (18) months following Closing, in which case such longer period shall apply). The fact that the Leased Premises remains dark for up to eighteen (18) months after Closing shall not result in the termination or forfeiture of any restrictions encumbering other parcels which benefit the Leased Premises.

9.      In connection with the opening and operating of a retail store at the Leased Premises, the Purchaser is authorized to perform alterations and remodeling to the extent necessary to conduct its typical retail operations, including alterations necessary to provide two prototypical truck loading dock/wells at the Leased Premises, and to replace and modify existing signage, notwithstanding any provision to the contrary in the Lease or any related document, including any provision requiring the consent of any non-Debtor party for such work.

10.      Provisions contained in the Lease which are or could have the effect of being provisions which restrict "going dark," alteration and recapture provisions contained in the Lease, provisions requiring consent or otherwise restricting the rights provided for in this Order (including "go-dark," alteration and remodeling rights), or clauses which impose a fee or a penalty or a profit sharing upon assignment or limit or

condition extension or renewal options, clauses which seek to increase the rent (including percentage rent clauses) or impose a penalty or to modify or terminate the Lease or terminate or otherwise impair any exclusive rights of the tenant under the Lease as a result of going dark or upon assignment, provisions which directly or indirectly limit or condition or prohibit assignment, continuous operating covenants, covenants that any user of the Debtors' premises operate under the name of "Winn-Dixie," and/or operate with a use similar to a "Winn-Dixie," and similar provisions contained in any other documents with respect to the Assets shall not restrict, limit, or prohibit the sale or assumption and assignment of the Assets to the Purchaser and such clauses are hereby deemed and found to be unenforceable anti-assignment clauses within the meaning of 11 U.S.C. § 365(f).

11.    Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and empowered to consummate and implement fully the Purchase Agreement and the Assignment and Assumption Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement. The Debtors are authorized to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets, including the Lease, to the Purchaser.

12.    Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties in accordance with the terms of the Purchase Agreement without further order of the Court, provided that (i) if necessary, the Debtors first obtain the prior written consent of (a) the DIP Lender and (b) the Creditors' Committee, which consent will not be

unreasonably withheld and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

13.     The Debtors will transfer the Assets to the Purchaser upon closing free and clear of all Claims and/or Interests pursuant to 11 U.S.C. §§ 105(a) and 363(f) (except for the Permitted Encumbrances). The only known Claims and/or Interests in the Assets are those of the landlord with respect to the Lease, the senior liens and superpriority administrative claims of the DIP Lender and any liens of the Broward County Tax Collector for unpaid taxes. The Claims and/or Interests of the landlord will be satisfied upon Closing by the Debtors' payment of the Cure Amount, if any, and the Debtors' and the Purchasers' demonstration of adequate assurance of future performance under 11 U.S.C. § 365. The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender, and any other liens, claims or interests with respect to the Assets, will attach to the proceeds of the Sale, in the case of the DIP Lender in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order). The liens, if any, of the Broward County Tax Collector on the Debtors' interest in the Leased Premises shall attach to the proceeds of the sale of the Lease to the Purchaser, and the claims, if any, related to such liens shall be treated and resolved in these cases.

14.     The Debtors will cause the net proceeds from the Sale to be paid, to the extent required, in accordance with the terms of the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

15.    The Purchaser provided the Debtors with reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia, without collusion. For that reason, the transfer may not be avoided under 11 U.S.C. § 363(n).

16.    All defaults, claims or other obligations of the Debtors arising or accruing under the Lease, if any, prior to assumption (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) will be cured by the Debtors by paying the Cure Amount, if any.  No other or further monetary amounts or obligations are due or existing under the Lease or any other Assigned Agreement by the Debtors, whether pursuant to 11 U.S.C. § 365(b)(1) or otherwise.

17.    An objection regarding a "cure issue" to the assumption and assignment of the Lease shall not affect the assumption and assignment of the Lease.  The Debtors will hold the Purchaser harmless from any failure by the Debtors to pay any applicable Cure Amount.

18.    The failure of any party to: (a) allege in these proceedings any pre-assumption and assignment default under the Lease, other than the Cure Amount; (b) identify any amendment, modification, sublease or other agreement relating to or affecting the Assets, other than those listed on Exhibit A-4 to the Purchase Agreement, (c) assert any material waiver, failure to act, or act or statement contrary to that presented in the Motion by the Debtors or (d) assert any objection or defense to the entry of this Order, shall forever bar and estop said party, its heirs, successors and assigns, and any predecessor in interest, of itself and anyone claiming by, through or under it or them,

from asserting any claims or attempting to enforce any rights based thereon in any subsequent cases, proceedings, or actions against the Debtors or the Purchaser (or parties claiming through the Purchaser), in law or in equity in this or before any other court or tribunal, and any such claim(s) shall be and are terminated, exonerated, barred and adjudicated against such person.  No party shall be entitled to enforce against the Purchaser any pre-closing document, instrument or agreement with respect to the Assets other than a document, instrument or agreement listed on Exhibit A-4 to the Purchase Agreement, and all parties shall be enjoined from attempting to enforce any such document, instrument or agreement against Purchaser or any of its affiliates, related parties, successors or assigns.

19.    Pursuant to 11 U.S.C. § 365(k), upon the assignment of the Lease to the Purchaser, (a) the Debtors and their estates are relieved from any and all liability for any breach of the Lease occurring after assignment to the Purchaser, and (b) subject to the terms of this Order, the Purchaser is responsible for any and all claims and obligations under the Lease occurring or arising after the assignment.

20.    Subject to the terms of this Order, the Purchase Agreement and the Assumption and Assignment Agreement, the Purchaser assumes all rights and obligations of the Debtors under the Lease on and after the Closing Date.

21.    All non-Debtor parties to the Lease are forever enjoined and estopped from contesting the Cure Amount (except as may be permitted by the Court) and from asserting any default against the Purchaser which existed prior to the Closing Date.

22.    Upon the Debtors' assignment of the Lease to the Purchaser, no default will exist under the Lease.  Upon entry of this Order and the assumption and assignment of the Lease, the Purchaser is deemed to be in compliance with all terms and provisions of the Lease.

23.    Subject to the terms and conditions of this Order, all entities that are presently, or upon Closing may be, in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors.  Prior to or upon the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims and/or Interests in the Assets (except for the Permitted Encumbrances), if any.  In the event any creditor fails to release its Claims and/or Interests in the Assets upon Closing, the Debtors are authorized to take any action necessary to do so including, to execute and file any statements, instruments, releases and other documents on such creditor's behalf.  The Purchaser is also authorized to file, register or otherwise record a certified copy of this Order upon Closing.  Once this Order is so filed, registered or otherwise recorded, the Order constitutes conclusive evidence of the release of all Claims and/or Interests against the Assets as of the Closing (except for the Permitted Encumbrances).

24.    The Purchaser acted in good faith, as that term is used in 11 U.S.C. § 363(m), in purchasing the Assets, including the Lease, under the Purchase Agreement.  For that reason, any reversal or modification of this Order on appeal will not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t Wal-Mart Stores, Inc.
Store No. 217
May 9, 2006
SGRJAX\85717.1

25.    The Debtors' transfer of the Assets to the Purchaser will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances) against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

26.    Other than the Permitted Encumbrances and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets, including the Lease.  The Debtors' transfer of the Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or the Assets by reason of such transfer under the laws of the United States or any state or territory.

27.    Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets, including the Lease, and a bill of sale transferring good and marketable title in the Assets to Purchaser.  Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

28.    This Order is effective as a determination that upon Closing any and all Claims and/or Interests (except for the Permitted Encumbrances), if any, will be, and are,

without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

29.    This Order is binding upon all entities who may be required to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to any of the Assets.

30.    The landlord under the Lease is directed to sign any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for purposes of obtaining any permits, approvals or other necessary documentation and/or action required for the alterations and remodeling permitted under this Order.

31.    This Court retains exclusive jurisdiction to (a) enforce and implement the Purchase Agreement, the Assumption and Assignment Agreement, and any other agreements and instruments executed in connection with the Purchase Agreement, (b) compel delivery of possession of the Assets to Purchaser, (c) resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement or the Assumption and Assignment Agreement, and (d) interpret, implement and enforce the provisions of this Order.

32.    The terms and provisions of the Purchase Agreement, the Assumption and Assignment Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their estates, the Purchaser and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent

appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

33.    Except with respect to Permitted Encumbrances, all persons who hold Claims and/or Interests against the Debtors are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the Sale.

34.    After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Claims and/or Interests or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

35.    To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the Purchase Agreement will control.

36.    Within ten days after Closing, the Debtors will file a statement with the Bankruptcy Court as required by and in accordance with Rule 6004(f) of the Federal Rules of Bankruptcy Procedure.

37.    Notwithstanding Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d), this Order will take effect immediately upon entry.

Dated this _____ day of May, 2006 in Jacksonville, Florida.

_____

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on counsel for the
Purchaser and all parties who received
copies of the Motion.

#85717-v1-SGRJAX-WD_Project_Panther_06_-_Wal-Mart_Exhibits_(5_15).DOC

EXHIBIT F
To Asset Purchase Agreement

Form of Assignment

**ASSIGNMENT AND ASSUMPTION OF LEASE**
Store #217

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of
_____, 2006 (the "Effective Date"), by and between **WINN-DIXIE STORES,
INC.** a Florida corporation (hereinafter referred to as "Assignor"), and **WAL-MART
STORES, INC.**, a Delaware corporation, or its permitted assignee pursuant to paragraph
17.5 of the Agreement (hereinafter defined) (hereinafter referred to as "Assignee");

**R E C I T A L S:**

A.    Assignor has agreed to convey to Assignee certain assets in connection with Assignor's retail
supermarket store location described on attached Exhibit A (the "Premises") as more
particularly described in the Asset Purchase Agreement dated effective May 9, 2006 by and
among Assignor, as seller, Assignee, as buyer, as amended from time to time (the
"Agreement").

B.    As part of the purchase and sale of Assignor's assets referenced above, Assignor has agreed
to assign to Assignee all of Assignor's right, title and interest, as tenant or lessee, in and to
the lease, together with any and all amendments thereto, as described on the attached
Exhibit A (the "Lease"), and Assignee has agreed to assume and perform Assignor's
liabilities and obligations arising under the Lease after the Effective Date, all subject to and
in accordance with the terms of the Lease, the Agreement and this Assignment;

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable
consideration, the receipt and sufficiency of which are hereby acknowledged, and intending
to be legally bound, the parties agree as follows:

1.    **EFFECTIVE DATE**. This Assignment shall be effective as of the Effective Date.

2.    **ASSIGNMENT**.

    (a)    Assignor hereby assigns, transfers, and conveys unto Assignee all of
Assignor's right, title, interest and obligation as tenant or lessee in and to the
Lease and all of the rights, benefits and privileges of the tenant or lessee
thereunder.

3.    **ASSUMPTION: ACCEPTANCE OF PREMISES**.

    (a)    Assignee hereby accepts the aforesaid assignment of the Lease and assumes
and agrees to pay and perform all liabilities and obligations of the tenant or
lessee that accrue under the Lease from and after the Effective Date, and
Assignee hereby indemnifies, and agrees to save, insure, defend and hold