harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

4. **NOTICES.** All notices, requests, demands, and other communications required or permitted to be given under this Assignment will be in writing and sent to the address(es) set forth below. Each communication will be deemed duly given and received: (1) as of the date and time the same is personally delivered with a receipted copy; (2) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested; (3) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same; or (4) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient.

| | |
|---|---|
| If to Assignor: | Winn-Dixie Stores, Inc.; Re: Store #217<br>5050 Edgewood Court<br>Jacksonville, FL 32254-3699<br>Attn: Chief Financial Officer<br>Telefax No.: 904/783-5646 |
| With a copy to: | Winn-Dixie Stores, Inc.<br>5050 Edgewood Court<br>Jacksonville, FL 32254-3699<br>Attn: Office of General Counsel<br>Telefax No.: 904/783-5641 |

or to such other address or telefax number as Assignor may direct from time to time.

| | |
|---|---|
| If to Assignee: | Wal-Mart Stores, Inc.<br>2001 S.E. Tenth Street<br>Bentonville, Arkansas 72712<br>Attn: Karen Roberts<br>Telefax No.: 479-277-5991<br>e-mail: *karen.roberts@walmartlegal.com* |
| With a copy to: | Willkie Farr & Gallagher LLP 787 Seventh Avenue<br>New York, New York 10019<br>Attn: John C. Longmire, Esq.<br>Telefax No.: 212-728-8111<br>e-mail: *jlongmire@willkie.com* |

or to such other address or Telefax number as Assignee may direct from time to time.

5. **NOTICE OF ASSIGNMENT.** On the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of

placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease.

6. **BINDING EFFECT.** This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7. **FURTHER ASSURANCES.** Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder.

8. **NO BROKERS.** The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Assignment other than that due by Assignor to Assignor's Brokers, if any, as defined on the attached Exhibit B, and that due by Assignee to Assignee's Brokers, if any, as described on the attached Exhibit B. Assignor agrees to pay all fees and commissions claimed by Assignor's Brokers arising out of this Assignment, and Assignee agrees to pay all fees and commissions, if any, claimed by Assignee's Brokers arising out of this Assignment. Except for Assignor's Brokers and Assignee's Brokers, respectively, neither Assignor nor Assignee has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with this Assignment, the Lease or the Premises. Assignor and Assignee hereby indemnify and agree to hold harmless each other from and against any claims by any other person or entity for brokerage fees, commissions or other similar costs related to this Assignment, the Lease or the Premises by reason of Assignor's or Assignee's own acts, said indemnifications by Assignor and Assignee to survive expiration or earlier termination of this Assignment.

9. **WAIVER OF JURY TRIAL.** Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises and the Lease makes a jury determination of any dispute arising out of this Assignment, the Premises or the Lease undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises or the Lease.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed and delivered  
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE STORES, INC.,**  
a Florida corporation

_____  
Name: _____

By: _____  
Name: _____  
Title: _____

_____  
Name: _____

[CORPORATE SEAL]

STATE OF FLORIDA  
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me under oath on this _____ day of _____, 2006 by _____, the _____ of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation, who is personally known to me.

_____  
Notary Public, State of Florida  
Seal:

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered  
in the presence of:

**ASSIGNEE:**

**WAL-MART STORES, INC.,**  
a Delaware corporation

_____  
Name: _____

By: _____  
Name: _____  
Title: _____  
[CORPORATE SEAL]

_____  
Name: _____

STATE OF ARKANSAS  
COUNTY OF BENTON

The foregoing instrument was acknowledged before me by _____, the _____ of WAL-MART STORES, INC., a Delaware corporation, on behalf of the corporation, who is personally known to me and who did not take an oath.

Given under my hand and official seal this _____ day of _____, 2006.

_____  
Notary Public, State of Arkansas  
My commission expires: _____

WINN-DIXIE STORE # **217** - Pompano Beach, Florida

Lease: Lease, dated May 10, 1988, between Pomp Commercial Corp., Landlord, and Winn-Dixie Stores, Inc., Tenant.

Short Form Lease, dated May 10, 1988, between Pomp Commercial Corp., Landlord, and Winn-Dixie Stores, Inc., Tenant, recorded in Book 15916, page 0135, public records of Broward County, Florida.

Amendments First Amendment to Lease, dated August 1, 1990, between Pompano Marketplace Partners, Landlord, and Winn-Dixie Stores, Inc., Tenant.

Supplemental Lease Agreement, dated November 13, 1989, between Pomp Commercial Corp., Landlord, and Winn-Dixie Stores, Inc., Tenant.

Second Amendment to Lease, dated November 30, 1997, between SPV Real Estate Partners No.1 L.P., Landlord, and Winn-Dixie Stores, Inc., Tenant.

Second Supplemental Lease Agreement, made February 16, 2000, between TA/Western LLC, Landlord, and Winn-Dixie Stores, Inc., Tenant.

Subordination, Nondisturbance, and Attornment Agreement, made January 20, 1998, between Wells Fargo Bank, National Association, Lender, and Winn-Dixie Stores, Inc.

Letter Agreement, dated January 17, 1989, between Pomp Commercial Corp., Landlord, and Winn-Dixie Stores, Inc., Tenant.

Premises: That certain store building and related improvements located at 1199 South Federal Highway, Pompano Beach, Broward County, Florida.

Legal Description: The real property as more particularly described as follows:
SEE ATTACHED LEGAL DESCRIPTION

## LEGAL DESCRIPTION – STORE #217

A portion "A" of U.S. 1 SUBDIVISION, according to the Plat thereof as recorded in Plat Book 138, Page(s) 2, of the Public Records of Broward County, Florida.

Also described as:

[SEE FOLLOWING PAGE]

LEGAL DESCRIPTION:   EXHIBIT "A"

A portion of the SE 1/4 of Section 1, Township 49 South, Range 42 East and a portion of the SW 1/4 of Section 6, Township 49 South, Range 43 East lying West of the West right-of-way line of U.S. Highway No. 1, also being State Road (4) 5 as per State Road right-of-way map Section 86020-2102, all of the above lying and being in the City of Pompano Beach, Broward County, Florida, more particularly described as follows:

Commence at the Southeast corner of said Section 1; thence North 0°-04'-25" East along the East line of said Section 1, also being the West line of said Section 6 for a distance of 1237.99 feet to the Point of Beginning of the hereinafter described tract of land; thence North 13°-57'-09" East along the said West right-of-way line of U.S. Highway No. 1, also being State Road (4) 5 for a distance of 500.26 feet to a point of intersection with a line being 944.50 feet South of and parallel with the North line of the SW 1/4 of said Section 6; thence North 89°-07'-45" West along the said South line of the North 944.50 feet of the SW 1/4 of Section 6 for 120.12 feet to a Point of Intersection with the East line of said Section 1; thence North 0°-04'-25" East along said East line of Section 1 for a distance of 217.14 feet to a point being 60.00 feet South of the North line of the South 1/2 of the NE 1/4 of the SE 1/4 of said Section 1; thence North 90°-00'-00" West along a line, (also as described in Deed Book 3427-382, Public Records of Broward County, Florida) being 60.00 feet South of the North line of the South 1/2 of the NE 1/4 of the SE 1/4 of said Section 1 for a distance of 939.43 feet; thence South 0°-03'-30" East along a line (also as described in Deed Book 3427-382 Public Records of Broward County, Florida) being 60.00 feet East of the West line of the East 3/4 of the East 1/2 of the SE 1/4 of said Section 1 for a distance of 605.08 feet; thence South 89°-51'-38" East along the North line of the SE 1/4 of the SE 1/4 of said Section 1 for a distance of 272.68 feet to the Northeast corner of the NW 1/4 of the SE 1/4 of the SE 1/4 of said Section 1; thence South 0°-00'-52" East along the West line of the East 1/2 of the East 1/2 of the SE 1/4 of Section 1 for a distance of 419.02 feet to a point being 86.15 feet South of and parallel with the South line of the NW 1/4 of the NE 1/4 of the SE 1/4 of the SE 1/4 of said Section 1; thence South 89°-47'-27" East along a line 86.15 feet South of the said South line of the NW 1/4 of the NE 1/4 of the SE 1/4 of the SE 1/4 of Section 1 for a distance of 332.36 feet; thence North 0°-01'-45" East along the West line of the SE 1/4 of the NE 1/4 of the SE 1/4 of the SE 1/4 of said Section 1 for a distance of 86.15 feet to the Northwest corner of the SE 1/4 of the NE 1/4 of the SE 1/4 of the SE 1/4 of said Section 1; thence South 89°-47'-27" East along the North line of the South 3/4 of the SE 1/4 of the SE 1/4 of said Section 1 for a distance of 274.10 feet to a Point of Intersection with the West right-of-way line of said U.S. Highway No. 1, also being State Road (4) 5; thence North 13°-57'-09" East along said West right-of-way line of U.S. Highway No. 1, also being State Road (4) 5, for a distance of 243.54 feet to the POINT OF BEGINNING.

Exhibit B

Schedule of Brokers

EXHIBIT B-1

**ASSIGNOR'S BROKERS**

    The Blackstone Group L.P.
    345 Park Avenue
    New York, New York 10154

    The Food Partners, LLC
    1250 Eye Street, NW
    Suite 850
    Washington, DC 20005

    DJM Asset Management, LLC
    445 Broad Hollow Road
    Suite 417
    Melville, New York 11747

EXHIBIT B-2

**ASSIGNEE'S BROKERS**

    None.

**EXHIBIT G**
**To Asset Purchase Agreement**

<u>**CONFIDENTIALITY AGREEMENT**</u>

[ATTACHED BELOW]

# WINN-DIXIE STORES, INC.

May 18, 2004

Wal-Mart Stores, Inc.
Sam M. Walton Development Complex
2001 Southeast 10th Street
Bentonville, AR 72712-6489
Attn: Eric Zorn

Ladies and Gentlemen:

This agreement (this "Agreement") sets forth specific terms with respect to information provided to you, or to be provided to you, by Winn-Dixie Stores, Inc., (the "Company") or one or more of its direct or indirect wholly-owned subsidiaries. In connection with your consideration of a possible acquisition by you of certain assets of the Company (the "Assets"), by a sale of assets or otherwise (a "Transaction"), you have requested information concerning the Company and the Assets.

As a condition to your being furnished with such information, including any Confidential Information Memorandum prepared by the Company, you agree to treat confidentially any information concerning the Assets that is furnished to you by or on behalf of the Company, whether furnished before or after the date of this Agreement, together with analyses, compilations, studies or other documents prepared by you or any of your directors, officers, employees, agents or advisers (including, without limitation, attorneys, accountants, consultants, bankers, financial advisers and any representatives of your advisers) (collectively, "Representatives") that contain or otherwise reflect such information (collectively referred to as the "Evaluation Material"), in accordance with the provisions of this Agreement. The term "Evaluation Material" does not include information that (a) was or becomes generally available to the public other than as a result of a disclosure by you or your Representatives in violation of this Agreement, (b) was or becomes available to you on a non-confidential basis from a source other than the Company or its advisers, provided that such source was not known by you to be bound by any agreement with the Company to keep such information confidential or to otherwise be prohibited from transmitting the information to you by a contractual, legal or fiduciary obligation, or (c) was or is developed for you by employees or agents who do not have access to the Evaluation Material.

You hereby agree that the Evaluation Material will be used solely for the purpose of evaluating a possible Transaction between the Company and you, and that, during the term of this Agreement, such information will be kept confidential by you and your Representatives, except to the extent that disclosure of such information (a) has been consented to in writing by the Company, (b) subject to the terms hereof, is requested or required by law, regulation, supervisory authority, order, subpoena, discovery request, interrogatory, question under oath, or similar process or (c) is made to your Representatives who need to know such information for the purpose of evaluating

any such possible Transaction between the Company and you (it being understood that such Representatives shall have been advised of this Agreement and shall have agreed to be bound by the provisions hereof). In any event, you shall be responsible for any breach of this Agreement by any of your Representatives.

In addition, without the prior written consent of the Company, during the term of this Agreement, you will not, and will direct your Representatives not to, disclose to any person (a) that the Evaluation Material has been made available to you or your Representatives, (b) that discussions or negotiations are taking place concerning a possible Transaction between the Company and you or (c) any terms, conditions or other facts with respect to any such possible Transaction, including the status thereof.

Notwithstanding the provisions of this Agreement, you and your Representatives may disclose to any and all taxing or regulatory authorities the tax treatment and tax structure of any Transaction and all materials of any kind related to the tax treatment of such Transaction (including tax opinions or other tax analyses) that are provided to you by, or on behalf of, the Company in connection with such Transaction; provided that this sentence shall not permit you or your Representatives to disclose the name of, or other information that would identify, any party to such Transaction or to disclose confidential commercial information regarding such Transaction. For this purpose, "tax treatment" is the purported or claimed Federal income tax treatment of a transaction and "tax structure" is limited to any fact that may be relevant to understanding the purported or claimed Federal income tax treatment of a transaction.

In the event that, during the term of this Agreement, you are requested or required by law, regulation, supervisory authority, order, subpoena, discovery request, interrogatory, question under oath or similar process to disclose any Evaluation Material, you will provide the Company with prompt written notice of such request or requirement so that the Company may seek an appropriate protective order. If, failing the entry of a protective order, you are advised by your counsel that disclosure of Evaluation Material is required to avoid contempt or other censure or penalty, you may disclose that portion of the Evaluation Material that your counsel advises that you are required to disclose; provided, however, that in making such disclosure, you will exercise reasonable efforts to obtain assurance that confidential treatment will be accorded to that portion of the Evaluation Material that is being disclosed. In any event, you will not oppose action by the Company to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Evaluation Material.

During the term of this Agreement, you agree not to initiate or maintain contact (except for those contacts made in the ordinary course of business) with any officer, director or employee of the Company or any direct or indirect subsidiary regarding the business, operation, prospects or finances of the Company or the Assets, except with the express permission of the Company.

During the term of this Agreement, you will not directly or indirectly solicit for employment any employee of the Company or any direct or indirect subsidiary thereof to whom you had been directly or indirectly introduced or otherwise became aware of as a result of your consideration of a Transaction, so long as they continue to be employed by their respective employer. Notwithstanding the foregoing, nothing herein shall restrict or preclude your rights (a) to make

generalized searches for employees by use of advertisements or general solicitations in any medium or to hire any individual responding to such advertisements or general solicitations and (b) to hire persons who approach you for employment or with whom you have not initiated contact.

You hereby acknowledge that you are aware and that you will advise your Representatives that the federal and state securities laws prohibit any person who has material, non-public information about a company from purchasing or selling securities of such a company or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

All Evaluation Material disclosed by the Company shall be and shall remain the property of the Company. Within ten (10) days after being so requested by the Company during the term of this Agreement, you shall, at your option, either return or destroy all tangible Evaluation Material furnished to you by the Company. Except to the extent you are advised by counsel that such destruction is prohibited by law, you will also, if so requested by the Company during the term of this Agreement, destroy all other Evaluation Material, including written material, memoranda, notes, copies, excerpts and other writings or recordings whatsoever prepared by you or your Representatives. Any destruction of materials shall, upon request by the Company, be confirmed by you in writing. Any Evaluation Material that is not returned or destroyed, including without limitation any oral Evaluation Material, shall remain subject to the confidentiality obligations set forth in this Agreement during the term hereof.

You understand and acknowledge that any and all information contained in the Evaluation Material is being provided without any representation or warranty, express or implied, as to the accuracy or completeness of the Evaluation Material, on the part of the Company or any direct or indirect subsidiary thereof. You agree that none of the Company or any direct or indirect subsidiary thereof or any of their respective directors, officers, stockholders, owners, affiliates, agents, or representatives shall have any liability to you or any of your Representatives with respect to the accuracy or completeness of the Evaluation Material, except as may be provided in any definitive agreement between you and the Company and/or such related parties. It is understood that the scope of any representations and warranties to be given by the Company will be negotiated along with other terms and conditions in arriving at a mutually acceptable form of definitive agreement should discussions between you and the Company progress to such a point.

You agree that unless and until a definitive agreement regarding a Transaction between the Company and you has been executed, neither the Company nor you will be under any legal obligation of any kind whatsoever with respect to such a Transaction by virtue of this Agreement, except for the matters specifically agreed to herein. You further acknowledge and agree that the Company reserves the right, in its sole discretion, to reject any and all proposals made by you or any of your Representatives with regard to a Transaction between the Company and you, and to terminate discussions and negotiations with you at any time.

You understand that, subject to the Company's compliance with applicable laws, regulations and judicial orders, (a) the Company shall be free to conduct any process with respect to a possible Transaction as the Company in its sole discretion shall determine (including, without limitation,

Page 4

by negotiating with any prospective party and entering into a definitive written agreement without prior notice to you or any other person), (b) any procedures relating to such Transaction may be changed at any time without notice to you or any other person and (c) you shall not have any claim whatsoever against the Company or any direct or indirect subsidiary thereof or any of their respective directors, officers, stockholders, owners, affiliates, agents or representatives, arising out of or relating to any possible or actual Transaction (other than those pursuant to this Agreement, under applicable law, or as against parties to a definitive written agreement with you in accordance with the terms thereof).

It is understood and agreed that money damages would not be a sufficient remedy for any breach of this Agreement and that the Company shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach and you further agree to waive any requirement for the security or posting of any bond in connection with such remedy. Such remedy shall not be deemed to be the exclusive remedy for breach of this Agreement but shall be in addition to all other remedies available at law or equity to the Company.

This Agreement is for the benefit of the Company and its direct and indirect subsidiaries, and is governed by the laws of the State of Florida without regard to conflict of laws principles. Any action brought in connection with this Agreement shall be brought in the federal or state courts located in the City of Jacksonville, and the parties hereto hereby irrevocably consent to the jurisdiction of such courts.

This Agreement may not be amended except in writing signed by both parties hereto. No failure or delay by the Company in exercising any right hereunder or any partial exercise thereof shall operate as a waiver thereof or preclude any other or further exercise of any right hereunder. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

Except as otherwise specifically provided herein, the term of this Agreement shall expire eighteen (18) months from the date hereof or, if earlier, on the date a Transaction between you and the Company is consummated.

This Agreement may be executed in counterparts (including by means of telecopied signature pages). Please confirm that the foregoing is in accordance with your understanding of our agreement by signing and returning to us a copy of this letter.

Very truly yours,

WINN-DIXIE STORES, INC.

By: _[signature]_

Accepted and agreed to as of
the date set forth above:

WAL-MART STORES, INC.

By: _____

25483523

Page 5

This Agreement may be executed in counterparts (including by means of telecopied signature pages). Please confirm that the foregoing is in accordance with your understanding of our agreement by signing and returning to us a copy of this letter.

Very truly yours,

WINN-DIXIE STORES, INC.

By:_____

Accepted and agreed to as of
the date set forth above:

WAL-MART STORES, INC.

By: _[signature]_

2548352.3

## MODIFICATION OF CONFIDENTIALITY AGREEMENT

This MODIFICATION OF CONFIDENTIALITY AGREEMENT ("Modification") is entered into this 11th day of July, 2005 between **Wal-Mart Stores, Inc.** ("Wal-Mart") and **Winn-Dixie Stores, Inc.** ("Winn-Dixie"). Wal-Mart and Winn-Dixie are hereinafter collectively referred to as "parties."

### RECITALS

A. The parties entered into a Confidential Agreement dated as of [May 18, 2004] (the "Confidentiality Agreement"); and

B. In connection with the disclosure of "Evaluation Material" (as defined in the Confidentiality Agreement) in conjunction herewith the parties desire to extend the term of the Confidentiality Agreement.

### AGREEMENT

Therefore, the parties agree as follows:

1. **Continuing Effectiveness of Confidentiality Agreement.** The parties acknowledge and agree that as of the date hereof the Confidentiality Agreement has not been terminated and continues in full force and effect.

2. **Term.** Notwithstanding anything to the contrary contained in the Confidentiality Agreement, the term of the Confidentiality Agreement, as provided in the penultimate paragraph thereof, shall remain in effect for a period of eighteen (18) months from the date of this Modification.

3. **Venue.** Notwithstanding the terms of the original Confidentiality Agreement, any action brought in connection with the Confidentiality Agreement, as modified by this Modification, shall be brought in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, and the parties hereby irrevocably consent to the jurisdiction of such court.

3. **Miscellaneous.** This Modification contains all of the representations, understandings and agreements of the parties with respect to the subject matter hereof. Except as amended hereby, the terms and provisions of the Confidentiality Agreement are unmodified and in full force and effect. In the event of any inconsistencies between the terms of the Confidentiality Agreement and the terms of this Modification, the terms of this Modification shall control. This Modification shall be binding upon and inure to the benefit of the parties and their respective heirs, successors and assigns. Each of the individuals who has executed this Modification represents and warrants that he or she is duly authorized to execute this Modification on behalf of the party for whom he or she has signed; that all corporate, partnership, trust or other action necessary for such party to execute and perform the terms of this Modification have been duly taken by such party; and that no other signature and/or authorization is necessary for such party to enter into and perform the terms of this Modification. This Modification may be executed in any number of counterparts, each of which shall be an original but all of which may be assembled into and will constitute one and the same instrument.

**WINN-DIXIE STORES, INC.**

BY: _____
Name: _____
Title: _____

**WAL-MART STORES, INC.**

BY: _____
Name: _____
Title: Vice President

7/11/05