Hearing Date: July 13, 2006, 1:00 p.m.
Objection Deadline: July 6, 2006, 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

**DEBTORS' MOTION FOR ORDER AUTHORIZING
REJECTION OF (I) THREE NON-RESIDENTIAL REAL PROPERTY
LEASES THAT WERE ASSIGNED PREPETITION AND
(II) THE RELATED ASSIGNMENT AGREEMENTS**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move for entry of an order under 11 U.S.C. § 365(a) authorizing the Debtors to reject (i) three non-residential real property leases that were assigned prepetition and (ii) the related assignment agreements (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

**Background**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie

2. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. On March 1, 2005, pursuant to Section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicate for the relief requested in the Motion is section 365(a) of the Bankruptcy Code.

### The Leases and the Assignments

6. Winn-Dixie Montgomery, Inc. ("Winn-Dixie Montgomery" or the "Assignor"), as successor in interest to Winn-Dixie Texas, Inc. (as tenant) and Richard Ball and Associates d/b/a Parker Plaza Shopping Center (as landlord) (the "Parker Plaza") are party to a lease dated October 6, 1992 for premises located in Parker County, Texas and referred to by the Debtors as Store Number 2435 (as amended, the "Store 2435

---

Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2

Lease").[2] Winn-Dixie Montgomery and Winn-Dixie Stores, Inc. (which was a guarantor under the Lease ) assigned the Lease to Brookshire Grocery Company ("Brookshire") pursuant to an assignment agreement dated June 21, 2002 (the "Brookshire Assignment Agreement"). Notably, the Brookshire Assignment Agreement provides in pertinent part:

> Minimum Guaranteed Rental. In addition to the obligations of Assignor under Section 2 of this Assignment, Assignor shall timely and properly pay (and Assignee shall not be responsible for) all minimum guaranteed rental ($27,500 per month) payable under the Lease through the end of the current term of the Lease which ends on November 30, 2014 (the "End of current Term"). During the period commencing on the Effective Date and continuing through the End of Current Term, as consideration for this Assignment, Assignee shall pay to Assignor (as Assignor's address set forth herein) the sum of $22,939 per month as fixed rent under this Assignment (with such rent for any partial month to be prorated). After the End of Current Term, Assignee shall timely and properly pay all minimum guaranteed rental due under the Lease directly to the landlord or lessor thereunder.

Assignment Agreement, Paragraph 4.

7. Additionally, Winn-Dixie Montgomery (as tenant through succession to the interest of Southern Jitney Jungle Company) and 1997 Properties (as landlord) are party to a lease dated May 2, 1998 for premises located in Petal, Mississippi and referred to by the Debtors as Store Number 1327 (the "Store 1327 Lease"). Winn-Dixie Montgomery assigned the Store 1327 Lease to Roberts Company, Inc. ("Roberts") pursuant to an assignment agreement dated January 27, 2005 (the "Roberts Assignment Agreement"). A Lease Assignment Rider of even date, in pertinent part, provides:

> RENTAL RATE SUBSIDY. Assignee has assumed Assignor's obligations under the Lease to pay Base Rent in the amount of $3.675 per square foot ($90,178.00 per year) during the current term of the Lease (the "Assumed Rental Rate"), but has not assumed Assignor's obligations under the Lease to pay Base Rent in excess of the Assumed Rental Rate during the current term of the Lease. Assignor will remain obligated, and hereby agrees to pay, as and when due under the Lease, that portion of Base Rent payable under the Lease in excess of the Assumed Rental Rate ($2.00 per

---

[2] Winn-Dixie Montgomery, Inc. is successor in interest to Winn-Dixie Louisiana, Inc. which, in turn, is a successor in interest to Winn-Dixie Texas, Inc., the entity named as the tenant under the Lease.

square food, or $49,072.00 per year), for the remainder of the current term of the Lease (the "<u>Rental Rate Subsidy</u>").

* * *

<u>RENT SUBSIDY PAYMENT OBLIGATIONS.</u> In fulfillment of Assignor's continuing obligations under the Lease to pay Base Rent in excess of the Assumed Rental Rate during the current term of the Lease, Assignor will pay directly to Landlord, on a monthly basis, on or before each Base Rent payment due date under the Lease, an amount equivalent to 1/12 of the annual Rental Rate Subsidy ($4,089.33 per month). Assignor's payment obligation will terminate following payment of the applicable portion of the Rental Rate Subsidy due on the last Base Rent payment date of the current term of the Lease.

Lease Assignment Rider at ¶¶ 1-2.

8.       Lastly, Winn-Dixie Montgomery (as tenant) and Folmar & Associates, LLP (as landlord) ("Folmar", and together with Parker Plaza and 1997 Properties, the "Landlords") are party to a lease dated March 27, 1986 for premises located in Bolivar County, Mississippi and referred to by the Debtors as Store Number 1371 (the "Store 1371 Lease" and together with the Store 2435 Lease and the Store 1327 Lease, the "Leases"). Winn-Dixie Montgomery assigned the Store 1371 Lease to Triple V, Inc. ("Triple V" and together with Brookshire and Roberts, the "Assignees") pursuant to an assignment agreement dated February 15, 2005 (the "Triple V Assignment Agreement" and together with the Brookshire Assignment Agreement and the Roberts Assignment Agreement, the "Assignment Agreements"). In pertinent part, the Triple V Assignment Agreement provides:

<u>Rent Subsidy.</u> In consideration of Triple V's agreement to assume the obligations of Tenant under the Lease, as set forth in this Agreement, Winn-Dixie agrees to pay Triple V, as and when rent is due under the Lease, the Sum of $1,250.00 per month (equaling an annual subsidy of $15,000.00 per year), up to a total amount of $30,000.00 . . . .

Triple V Assignment Agreement ¶ 2.F.

4

9.  Thus, as to all of the Leases, via the Assignment Agreements, Winn-Dixie Montgomery subsidizes a portion of the rental obligation under the respective Lease. Specifically, Winn-Dixie Montgomery subsidizes (a) $4,500 per month under the Store 2435 Lease, (b) $4,089.33 per month under Store 1327 Lease, and (c) $1,250 per month under the Store 1371 Lease, for a total subsidy of approximately $10,000 per month as to all three Leases.

### Relief Requested

10.  By this Motion, the Debtors seek entry of an order of the Court, pursuant to Section 365(a) of the Bankruptcy Code, (a) approving and authorizing the rejection of the Leases and the Assignment Agreements, effective as of the date of the Motion, (b) requiring each Landlord to file a claim for any rejection damages allegedly arising under either (i) the Leases, (ii) the Assignment Agreements or (iii) any related documents including any separate guarantee (collectively, the "Related Documents"), and (c) requiring the Assignees to file a claim for any damages allegedly stemming from the rejection of either the Leases or the Assignment Agreements.

### Basis for Relief

11.  The Leases, the Assignment Agreements, and the Related Documents provide no tangible benefit to the Debtors' estates or creditors. By rejecting the Leases and the Assignment Agreements, the Debtors will ensure (a) that any continuing obligations allegedly arising under the Leases, the Assignment Agreements or the Related Documents will cease and be treated as prepetition obligations, (b) that the Landlords will be obligated to assert any rejection damage claim they believe they may have under the Leases, the Assignment Agreements or the Related Documents, thus enabling the Debtors to address such claims through the claims reconciliation process, and (c) that the

Assignees will be obligated to assert any claim stemming from the rejection of the Leases or the Assignment Agreements, similarly enabling the Debtors to address such claims through the bankruptcy process. Additionally, the rejection of the Leases and the Assignment Agreements will serve to eliminate any continuing obligation for Winn-Dixie to subsidize approximately $10,000 per month – an obligation which yields no benefit for the Debtors.

### Applicable Authority

12. Pursuant to Sections 365(a) and 1107(a) of the Bankruptcy Code, a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor" 11 U.S.C. § 365(a). A debtor-in-possession's right to reject executory contracts and unexpired leases is a fundamental component of the bankruptcy process, as it provides a debtor with a mechanism to eliminate financial burdens to the estate. In re Wells, 227 B.R. 553, 564 (Bankr. M.D. Fla. 1998) (citations omitted); In re Hardie, 100 B.R. 284 (Bankr. E.D.N.C. 1989) (citation omitted); In re Gunter Hotel Assoc., 96 B.R. 696 (Bankr. W.D. Tex. 1988) (citation omitted).

13. The decision to reject an executory contract or unexpired lease is primarily administrative and should be given great deference by a court, subject only to review under the "business judgment" rule. See Byrd v. Gardinier, Inc., 831 F.2d 974, 975 n.2 (11th Cir. 1987); In re Surfside Resort & Suites, Inc., 325 B.R. 465, 469 (Bankr. M.D. Fla. 2005); In re Cent. Fla. Fuels, Inc., 89 B.R. 242, 245 (Bankr. M.D. Fla. 1988). The business judgment rule requires the debtor to establish that rejection of the agreement will likely benefit the estate. See In re Surfside Resort & Suites, Inc., 325 B.R. at 469; In re Cent. Fla. Fuels, Inc., 89 B.R. at 245; Sharon Steel Corp. v. Nat'l Fuel Gas Distrib'n Corp., 872 F.2d 36, 39-40 (3d Cir. 1989). Courts universally regard the business

6

judgment rule as a low standard to meet, and therefore, absent a finding of bad faith, will not disturb the decision to reject an executory contract or unexpired lease by substituting their own judgment for that of the debtor. See In re Surfside Resort & Suites, Inc., 325 B.R. at 469; In re III Enters., Inc. V, 163 B.R. 453, 469 (Bankr. E.D. Pa.), aff'd sub nom. Pueblo Chem., Inc. v. III Enters. Inc. V, 169 B.R. 551 (E.D. Pa. 1994); In re Hardie, 100 B.R. at 287 (citation omitted); see also BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.) No. 02-Civ. 6419, 2002 WL 31548723, at * 3 (S.D.N.Y. Nov 15, 2002) (recognizing that it is within court's equitable power to assign a retroactive rejection date under section 365(a) of the Bankruptcy Code).

14.   The Debtors have satisfied the "business judgment" standard for rejecting the Leases and the Assignment Agreements in the present case. The Leases are unnecessary to the Debtors' ongoing operations and are of no value for the Debtors' estates and creditors. Similarly, the subsidy obligations that exist under the Leases and the Assignment Agreements do not add value to the Debtors' estates and will not benefit the Debtors' future operations. Accordingly, the Debtors' determination that the Leases and the Assignment Agreements should be rejected reflects their exercise of sound business judgment.

### Rejection Damages Deadline

15.   The Debtors request that the Court order that (a) the Landlords' deadline for filing a proof of claim for rejection damages allegedly arising under the Leases or the Related Documents, and (b) the Assignees' deadline for filing a proof of claim for damages allegedly stemming from rejection of the Leases or the Assignment Agreements is 30 days after the date of entry of the order entered pursuant to this Motion.

## Notice

16. Notice of the Motion has been provided to (a) counsel to the Office of the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors' Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, (e) the Landlords, and (f) the Assignees. No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached as Exhibit A, (a) authorizing and approving the rejection of the Leases and the Assignment Agreements effective as of the date of the Motion, (b) requiring each Landlord to file any rejection damage claims allegedly arising under the Leases or the Related Documents within 30 days of entry of the order entered pursuant to this Motion, and (c) requiring the Assignees to file any claim for damages allegedly stemming from rejection of the Leases or the Assignment Agreements within 30 days of the entry of the Order entered pursuant to this Motion and (ii) grant such other and further relief as the Court deems just and proper.

Dated: June 23, 2006

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By  *s/ D. J. Baker*<br>  D. J. Baker<br>  Sally McDonald Henry<br>  Rosalie Walker Gray<br>  Adam S. Ravin<br>Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(212) 735-2000 (facsimile)<br>djbaker@skadden.com | By  *s/ Cynthia C. Jackson*<br>  Stephen D. Busey<br>  James H. Post<br>  Cynthia C. Jackson,<br>  Florida Bar Number 498882<br>225 Water Street, Suite 1800<br>Jacksonville, Florida 32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile)<br>cjackson@smithhulsey.com |
| Co-Counsel for Debtors | Co-Counsel for Debtors |

## **EXHIBIT A**

652454-New York Server 1A - MSW

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER AUTHORIZING REJECTION OF (I) THREE NON-RESIDENTIAL
REAL PROPERTY LEASES THAT WERE ASSIGNED PREPETITION AND
(II) THE RELATED ASSIGNMENT AGREEMENTS**

These cases came before the Court for hearing on July 13, 2006, upon the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors")[1], for entry of an order under 11 U.S.C. § 365 authorizing and approving the Debtors' rejection, effective as of June 23, 2006, of (i) three non-residential real property leases (the "Leases") that were assigned prepetition and (ii) the related assignment agreements (the "Assignment Agreements") (the "Motion"). The Court has read the Motion and considered the representations of counsel. Upon the representations of counsel and without objection from the United States Trustee or any other interested party, the Court determines that good cause exists to grant the relief requested by the Motion and granting the relief is in the best interest of these estates and creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted.

---

[1] All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

2.   The Debtors are authorized to reject the Leases and the Assignment Agreements pursuant to 11 U.S.C. § 365(a), and the Leases and the Assignment Agreements are deemed rejected effective as of June 23, 2006.

3.   Nothing in this Order constitutes a waiver of any claims the Debtors may have against any of the Landlords or the Assignees, whether or not related to the Leases or the Assignment Agreements.

4.   Claims by the Landlords for any rejection damages (a) resulting from the rejection of the Leases or (b) allegedly arising under the Related Documents, must be filed within 30 days after the date of entry of this Order.

5.   Claims by any of the Assignees stemming from the rejection of the Leases or the Assignment Agreements must be filed within 30 days after the date of entry of this Order.

6.   The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

7.   The Court retains jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated this _____ day of ____, 2006 in Jacksonville, Florida.

                                                          Jerry A. Funk
                                                          United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

2