UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In Re:

WINN-DIXIE RALEIGH, INC.,           Case No. 3:05-bk-03817-3F1
                                              Chapter 11 (Jointly Administered)
          Debtor.

_____/

**CATAMOUNT LS-KY, LLC'S MOTION FOR AUTHORITY
FOR PAYMENT BY WINN-DIXIE RALEIGH, INC., OF POSTPETITION
ADMINISTRATIVE CLAIM WITH RESPECT TO STORE NOS. 1673 AND 1676**

Catamount LS-KY, LLC, a Nevada limited liability company, as assignee of Helene Funk and Peter W. Merner, as nominee for John H. O. La Gatta, as successor to Flask Corporation ("LS-KY"), respectfully requests that the Court allow the payment of LS-KY's administrative claim from the estate of the debtor, Winn Dixie Raleigh, Inc. a/k/a Winn Dixie Charlotte, Inc. and a/k/a Winn Dixie Louisville, Inc. (collectively, "Debtor"), Case No. 3:05-bk-03839-3F1 (Bankr. M.D. Fla., Jacksonville Div.), in an amount not less than $266,363.25 (the "Administrative Claim"), and in support states as follows:

     1.      On February 21, 2005 (the "Petition Date"), the Debtor filed its voluntary Petition for Relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States District Court for the Southern District of New York ("New York Court"). By order dated April 13, 2005, the New York Court transferred venue of this case to this Court.

     2.      Pursuant to that certain February 10, 1984 Lease and Sublease Agreement, as amended by that certain October 10, 1986 First Lease Modification Agreement, and that certain January 30, 1992 Second Lease Modification Agreement (as amended, the "Louisville Lease"), by and between the Debtor and LS-KY for that certain real property and fixtures Debtor refers to as Store No. 1676 at 1148 South 4th Street (4th & Oak), Louisville, Kentucky (the "Louisville

Premises"), LS-KY leased the Louisville Premises to Debtor. Moreover, pursuant to that certain October 18, 2004 Assignment and Assumption of Lease Agreement, Debtor assigned its interest in the Louisville Lease (the "Louisville Assignment") to Buehler of Kentucky LLC ("BOK"). Copies of the Louisville Lease (consisting of the Lease and Sublease Agreement, the First Lease Modification Agreement, the Second Lease Modification Agreement, the Notice of Change of Nominee (related thereto)) and the Louisville Assignment are not attached hereto solely because of their voluminousness; rather, the foregoing description of them shall serve as their summary description as permitted by law, and copies of them will be provided upon request.

3.      Further, pursuant to that certain February 10, 1984 Lease and Sublease Agreement, as amended by that certain October 10, 1986 First Lease Modification Agreement, and that certain January 30, 1992 Second Lease Modification Agreement (as amended, the "Shelbyville Lease"), by and between the Debtor and LS-KY for that certain real property and fixtures Debtor refers to as Store No. 1673 at 120 Midland Boulevard, Shelbyville, Kentucky (the "Shelbyville Premises"), LS-KY leased the Shelbyville Premises to the Debtor. Moreover, pursuant to that certain October 18, 2004 Assignment and Assumption of Lease Agreement, Debtor assigned its interest in the Shelbyville Lease (the "Shelbyville Assignment")(the Louisville Lease and the Shelbyville Lease are collectively, the "Leases) to BOK. Copies of the Shelbyville Lease (consisting of the Lease and Sublease Agreement, the First Lease Modification Agreement, the Second Lease Modification Agreement, the Notice of Change of Nominee (related thereto)) and the Shelbyville Lease Assignment are not attached hereto solely because of their voluminousness; rather, the foregoing description of them shall serve as their summary description as permitted by law, and copies of them will be provided upon request.

4.  Pursuant to ¶¶ 6 and 19 of the Louisville Lease and the Shelbyville Lease, respectively, and as Debtor has acknowledged, *see*, *e.g.*, Debtors' November 11, 2005 Motion for Order Authorizing (I) Rejection of Leases and Subleases and (II) Abandonment of Related Personal Property, Debtor retained liability as a principal under each of these leases for all obligations thereunder, notwithstanding the Louisville Assignment and the Shelbyville Assignment. Moreover, pursuant to the Louisville Assignment and the Shelbyville Assignment, Debtor expressly remained responsible for all of its liabilities and obligations under each of the Louisville Lease and the Shelbyville Lease, respectively.

5.  On May 4, 2005, BOK filed its voluntary Petition for Relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Southern District of Indiana, Evansville Division, which case is being jointly administered as Case No. 05-70961-BHL-11 with those other Chapter 11 cases filed on the same date by BOK's affiliates, Buehler Foods, Inc., Buehler, LLC and Buehler of Carolinas, LLC.

6.  Pursuant to its September 1, 2005 Order (I) Authorizing Retroactive Rejection of Real Property Leases and (II) Abandonment of Related Personal Property, this Court authorized the rejection of the Louisville Lease effective September 1, 2005 (the "Louisville Rejection Date"). Pursuant to its December 15, 2005 Order Authorizing (I) Rejection of Real Property Leases and (II) Abandonment of Related Personal Property effective December 16, 2005, this Court authorized the rejection of the Shelbyville Lease effective December 16, 2005 (the "Shelbyville Rejection Date") (collectively with the Louisville Rejection Date, the "Rejection Dates").

7. Pursuant to 11 U.S.C. §365, the Debtor was obligated to make any payments due under the Leases from the Petition Date to and including the Rejection Dates, including, but not limited to, rent, percentage rent, maintenance, insurance, and taxes.

8. As a result of the Debtor's obligations to LS-KY under §365, pursuant to 11 U.S.C. §§ 365(d)(3), 503(b)(1) and 507(a), LS-KY has the following administrative claims, among others, against Debtor under the Louisville Lease:

   a. <u>Rent</u>: Debtor was obligated to pay rent for the period from February 21, 2005 up to and including the Louisville Rejection Date. BOK paid the rent for the Louisville Premises each month up to July, 2005. A payment in the amount of $39,684.66 for the basic rent under the Louisville Lease is due for the period from July 1, 2005 to August 31, 2005.

   b. <u>Percentage Rent</u>. Debtor is obligated to pay LS-KY, as an addition to the Basic Rent, amounts for Debtor's gross sales in the Louisville Premises (as defined in the Louisville Lease, "Percentage Rent") for the period from the Petition Date to and including the Louisville Rejection Date. Specifically, Debtor is obligated to pay LS-KY as Percentage Rent an amount equal to the amount, if any, by which 1% of all gross sales made at the Louisville Premises during Debtor's fiscal year exceeds the Basic Rent reserved under the Lease. Upon information and belief, BOK's sales at the Louisville Premises did not reach sufficient levels to invoke this percentage rent clause. In the event that LS-KY receives subsequent information to the contrary, LS-KY reserves the right to amend this application to assert such additional amounts due.

   c. <u>Maintenance and Repair</u>. Debtor was responsible for keeping the Louisville Premises in good condition, repair and appearance during Debtor's

postpetition use and occupancy thereof. After BOK vacated the Louisville Premises, LS-KY inspected the Louisville Premises via BTM Engineering, Inc., of Louisville, Kentucky ("BTM"), and identified damage in the amount of $72,198.50, as set forth in detail in Exhibit 1 attached hereto.

    d.    Insurance. Debtor also was required by the Louisville Lease to maintain policies of insurance pursuant to which LS-KY was named an additional insured, and to not cancel such insurance without prior written notice to LS-KY. To the best of LS-KY's knowledge, Debtor and/or BOK paid the insurance on the Louisville Premises during the period between the Petition Date and the Louisville Rejection Date.

    e.    Unpaid Taxes. Under the Louisville Lease, which is an absolutely net lease, Debtor has the obligation to pay all Impositions, including any taxes wherever or however assessed against the Louisville Premises, whether real estate, ad valorem or otherwise. As set forth in detail in Exhibit 2 attached hereto, LS-KY has paid the Jefferson County real estate taxes in the amount of $20,695.16 which were due in December, 2005 as well as a Jefferson County "weed control" tax in the amount of $248.00. Based upon the time between the Petition Date and the Louisville Rejection Date, the Debtor's share of the 2005 real estate taxes is $10,959.30.

9.    As a result of the Debtor's obligations to LS-KY under §365, pursuant to 11 U.S.C. §§ 365(d)(3), 503(b)(1) and 507(a), LS-KY has the following administrative claims, among others, against Debtor under the Shelbyville Lease:

    a.    Rent: Debtor was obligated to pay rent for the period from the Petition Date up to and including the Shelbyville Rejection Date. BOK paid the rent for the Shelbyville Premises for each month up to December, 2005. A payment in the amount of

$9,342.54 for the basic rent under the Shelbyville Lease is due for the period from December 5, 2005 to December 15, 2005.

  b. <u>Percentage Rent</u>. Debtor is obligated to pay LS-KY, as an addition to the Basic Rent, amounts for Debtor's gross sales in the Louisville Premises (as defined in the Shelbyville Lease, "Percentage Rent") for the period from the Petition Date to and including the Shelbyville Rejection Date. Specifically, Debtor is obligated to pay LS-KY as Percentage Rent an amount equal to the amount, if any, by which 1% of all gross sales made at the Shelbyville Premises during Debtor's fiscal year exceeds the Basic Rent reserved under the Lease. Upon information and belief, BOK's sales at the Shelbyville Premises did not reach sufficient levels to invoke this percentage rent clause. In the event that LS-KY receives subsequent information to the contrary, LS-KY reserves the right to amend this application to assert such additional amounts due.

  c. <u>Maintenance and Repair</u>. Debtor was responsible for keeping the Shelbyville Premises in good condition, repair and appearance during Debtor's postpetition use and occupancy thereof. After BOK vacated the Shelbyville Premises, LS-KY inspected the Shelbyville Premises via BTM, which identified the following damage in the amount of $11,110.00, as set forth in detail in <u>Exhibit 3</u> hereto.

  d. <u>Insurance</u>. Debtor also was required by the Shelbyville Lease to maintain policies of insurance pursuant to which LS-KY was named an additional insured, and to not cancel such insurance without prior written notice to LS-KY. To the best of LS-KY's knowledge, Debtor and/or BOK paid the insurance on the Shelbyville Premises during the period between the Petition Date and the Shelbyville Rejection Date.

    e. <u>Unpaid Taxes</u>. Under the Shelbyville Lease, which is an absolutely net lease, Debtor has the obligation to pay all Impositions, including any taxes wherever or however assessed against the Shelbyville Premises, whether real estate, ad valorem or otherwise. As set forth in detail in <u>Exhibit 4</u> attached hereto, LS-KY has paid the Shelby County real estate taxes in the amount of $30,085.05 which were due in October, 2005. Based upon the time between the Petition Date and the Shelbyville Rejection Date, the Debtor's share of the 2005 real estate taxes is <u>$24,480.16</u>.

10. By virtue of Debtor's default under the Leases, Debtor is liable to LS-KY for LS-KY's enforcement of its rights under the Leases, including but not limited to its attorneys' fees and costs. LS-KY has incurred <u>$98,588.09</u> in fees to date related to the exercise of its rights under the Leases. LS-KY has not attached copies of the statements for these fees in order to preserve the attorney-client and attorney work product privileges, but will submit redacted copies thereof upon request.

11. LS-KY reserves the right to amend and supplement this claim (including filing additional evidence in support of this claim) or to file additional claims, including, without limitation, all other claims at law or in equity arising on or after the Petition Date.

12. Case law supports LS-KY's request that the Administrative Claim be paid promptly. LS-KY is requesting that the Debtor pay LS-KY as an administrative claim for those charges that accrued prior to the Debtor's rejection of the Leases. The components of LS-KY's administrative claim are charges that accrued during the period between the Petition Date and the Louisville Rejection Date and/or Shelbyville Rejection Date (as the case may be), regardless of the date for payment of any of the charges.

13.  The Leases require the Debtor to maintain the Louisville Premises and the Shelbyville Premises good condition, repair and appearance, and to return both to LS-KY in like condition, reasonable wear and tear excepted. The Leases specifically state:

> Lessee shall peaceably surrender the Leased Premises to Lessor in the same condition in which they were received … except for ordinary wear and tear. Lessee shall remove from the Leased Premises on or prior to such termination all property not owned by Lessor, and, at its expense, shall, *prior to such termination*, repair any damage caused by such removal. … The … cost of repairing any damage caused by such removal shall be borne by Lessee.

Leases, Section 27 (emphasis added).

14.  In paragraph 22(c), each of the Leases provides that the Debtor is responsible for payment of LS-KY's attorneys' fees in the event of a breach of the Lease. Commonly, courts have found that a landlord may recover its costs in enforcing the terms of its lease provided that the lease agreement provides for such fees and the fees are reasonable. *See In re Child World, Inc,* 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); *In re Shangra-La, Inc.*, 167 F.3d 843, 849-50 (4th Cir. 1999), and *In re Crown Books Corp.*, 269 B.R. 12, 14-18 (Bankr. Del. 2001). As LS-KY has incurred attorneys' fees after the commencement of this case and after the commencement of BOK's case in connection with enforcing its rights under the Leases, LS-KY is entitled to a claim for its fees incurred during the Debtor's postpetition occupancy of the Premises.

15.  LS-KY further requests that the Court order the immediate payment of LS-KY's administrative claim. Section 365(d) of the Code states that "[t]he trustee shall <u>timely</u> perform all the obligations of the debtor … arising from and after the order for relief under any unexpired lease of nonresidential real property, *until such lease is assumed or rejected* …" 11 U.S.C. §365(d)(3)(emphasis added). Courts have interpreted "timely" to mean in accordance with the

terms of the lease between the parties. *See Ha-Lo Industries, Inc. v. Centerpoint Properties Trust,* 342 F.3d 794, 798 (7th Cir. 2003)("obligations under an unexpired lease that arise after an order for relief … are to be timely fulfilled under the terms of the lease"). As each of the obligations listed in this Administrative Claim is an obligation incurred during the Debtor's postpetition occupancy of the Premises, the Debtor should be required to pay those obligations in a timely fashion as directed by the Code. *See Trizechahn 1065 Avenue of the Americas, LLC v. Thomaston Mills, Inc.*, 273 B.R. 284, 289 (M.D. Ga. 2002)("in the event sufficient funds are not available to pay all administrative claims this payment is subject to the trustee's right to seek recovery of all or part of the payment").

WHEREFORE, LS-KY respectfully requests that the Court enter an order allowing LS-KY's Administrative Claim in an amount not less than $266,363.25, and directing the prompt payment of LS-KY's allowed Administrative Claim.

[Signature page follows]

I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. §1746(2) THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: June 27, 2006

By:_____
John H. O. La Gatta, Trustee of the La Gatta 1990 Trust, as Managing Member of Catamount KY-LS, LLC, a Nevada limited liability company

Respectfully submitted,

_____/s/ C. Daniel Motsinger_____.
C. Daniel Motsinger, FBN 0362875
IN Atty. No. 10122-49
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204-2079
Telephone: 317/636-4341; Fax: 317/636-1507
E-mail: cmotsinger@kdlegal.com

Attorneys for Catamount LS-KY, LLC, a Nevada limited liability company, as assignee of Helene Funk and Peter W. Merner, as nominee for John H. O. La Gatta, as successor to Flask Corporation

KD_IM-710036_5.DOC

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing has been served upon the parties by operation of the Court's electronic filing system on June 27, 2006, as indicated below:

                                                        /s/ C. Daniel Motsinger       .
                                                        C. Daniel Motsinger

| | |
|---|---|
| Adam Ravin<br>Skadden Arps Slate Meagher & Flom, LLP<br>Four Times Square<br>New York, NY 10036 | Dennis F. Dunne<br>Milbank Tweed & Hadley<br>1 Chase Manhattan Plaza<br>New York, NY 10005 |
| Elana L. Escamilla<br>Office of United States Trustee<br>135 W. Central Boulevard, Suite 620<br>Orlando, FL 32806 | John B. McDonald<br>Akerman Senterfitt<br>50 N. Laura Street, Suite 2500<br>Jacksonville, FL 32202 |
| Cynthia C. Jackson<br>Smith, Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, FL 32201 | |

KD_IM-710036_5.DOC