**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

---------------------------------------------------------)
In re:                                                                     )
                                                                                 )
WINN-DIXIE STORES, INC., et. al.          )          Bankruptcy Case No. 05-3817-3F1
                                                                                 )          Chapter 11
                                                                                 )
              Debtor.                                      )          Jointly Administered
---------------------------------------------------------)

**OBJECTION OF WOODLAND HARTFORD**
**ASSOC. LLC TO DEBTORS' SECOND MOTION FOR AUTHORIZATION TO**
**REJECT LEASE FOR STORE NUMBER 997 DATED JUNE, 6, 2006 (DOCKET NO.:**
**8695) AND CROSS MOTION SEEKING IMMEDIATE PAYMENT OF POST PETITION**
**RENT, REAL ESTATE TAXES AND INSURANCE**

TO:     THE HONORABLE JERRY A. FUNK,
            UNITED STATES BANKRUPTCY JUDGE:

Woodland Hartford Assoc., LLC ("Woodland"), by its attorneys, Schuyler·Stewart·Smith, and The Law Offices of Joel Shafferman, LLC, as and for its objection to the Debtors' motion authorizing them to reject lease for store number 997 (the "Motion") and its cross motion seeking immediate payment of post petition rent and real estate taxes, respectfully represent as follows:

**BACKGROUND**

1.    On or about November 21, 1997 Winn-Dixie Raleigh, Inc. ("WD Raleigh"), as lessee, and Gem Cedar, L.L.C. ("Gem"), as lessor, entered into a lease for Store No. 997 (the "Lease") which is located at Cedar Road and Las Gaviotas Boulevard, Chesapeake, Virginia (the "Premises").  Winn Dixie Stores, Inc. executed a corporate guaranty of the Lease on June 21, 1997.

2.    On or about September 15, 1998, Gem assigned its rights in the Lease to Woodland.

3.    On or about August 21, 2002, WD Raleigh subleased the Premises (the "Sublease") to Cornerstone Christian Church (the "Subtenant").  According to the Debtors' motion to reject the

Lease, dated April 6, 2006 (the "Initial Motion"), the Subtenant was in default for failing to pay pre petition rent and has not paid rent since the Debtors' commencement of these Chapter 11 cases, creating an arrears of $405,780. (Initial Motion ¶6). According to the Initial Motion, WD Raleigh notified the Subtenant of the default and terminated the Sublease effective March 14, 2006. (Initial Motion ¶6).

4. By the Initial Motion, the Debtors sought authorization to terminate the Lease alleging that they have no further need for the Lease since they have "exited this market area" and "now have no subtenant in the store" (Initial Motion ¶6).

5. This Court granted the Initial Motion and entered an order memorializing same on April 20, 2006 (the "Order").  By application filed on June 7, 2006, Woodland sought relief from the Order, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, as made applicable to title 11 cases through Rule 9024 of the Federal Rules of Bankruptcy Procedure ("Woodland's Rule 60(b) Motion"), arguing that it was never served with a copy of the Motion and that the Debtors' representation in paragraph 6 of the Motion that the Debtors "have no subtenant in the store" is untrue.

6. In the Debtor's Response in Opposition to Woodland Hartford Assoc., LLC's Motion For Relief From Order Authorizing Debtors to Reject Lease (the "Debtors' Response"), the Debtors have consented to the vacatur of the Initial Order, but object to Woodland's request that any order rejecting the Lease not only provide that the Lease be rejected, but also provide that the Sublease be rejected and that the Subtenant immediately surrender the Premises to Woodland in vacant condition, or until that condition occurs, the Debtors become, and remain, current in making all rental payments and real estate tax payments required under the Lease.

7. As described below, the above-requested conditions to rejection of the Lease are fair and reasonable considering the untenable position, described below, within which the Debtors have put Woodland.

8. Wachovia Bank ("Wachovia") holds a mortgage on the Premises (the "Mortgage"), and the Debtors have been required to remit the rental payments directly to Wachovia, which are then applied towards Woodland's monthly mortgage obligations to Wachovia.

9. At times during the first quarter of this year, the Debtors have remitted the rental/mortgage payments to Wachovia untimely, thus causing Woodland to incur late charges which it is now obligated to pay Wachovia. Additionally, by failing to remit the May and June 2006 rental/Mortgage payments to Wachovia Bank, the Debtors have put the Mortgage in default, which accelerated the interest and raised the rate by four (4%) percent, thereby increasing Woodland's debt service by approximately $140,000 a year.

10. Additionally, neither the Debtors nor the Subtenant have paid real estate taxes for over a year which is their obligation under the Lease. During the past year the Debtors have defaulted under the Lease and post petition obligations to pay real estate taxes. As a result of the Debtors' default, Woodland is now liable for $98,422.69 of outstanding real estate taxes to the City of Chesapeake, Virginia. The City of Chesapeake has advised Woodland that it is about to commence foreclose actions due to the real property tax arrears.

11. Not only have the Debtors failed to meet their obligations to pay rent and real estate taxes, but, upon information and belief, have failed to maintain insurance on the Premises, as of April, 2006. This violation of the Lease and breach of the Debtors fiduciary duties could give rise to significant administrative claims against the Debtors estates and is cause for the immediate conversion of these cases to Chapter 7.

12. The Debtors have also failed to disclose to this Court that the Subtenant is still in possession of the Premises and is still operating as a church. Either the Debtors or the Subtenants have altered the physical structure of the Premises by building a skating rink in addition to making other structural alterations, in violation of paragraph 28 of the Lease.

13. Additionally, the Debtors have also failed to disclose that on March 31, 2006, the Subtenant commenced a civil action against the City of Chesapeake, Virginia entitled in the United States District Court for the Eastern District of Virginia entitled <u>Corner Stone Christian Center, Inc. and Dr. Michael A. Blanchard v. City of Chesapeake, Robert Smalley, Patrick M. Hughes, James T. Davis and Gregory A. Orfield</u> (Index No. 06-cv-00186-JBF-FBS) seeking damages, in the amount of $8,000,000, for defendants' alleged violation of the section 1983 of the Civil Rights Action. In this action, the Subtenant contends that the City of Chesapeake's denial of building and occupancy permits limited its use of the Premises and, therefore, violated its civil rights.

14. The Debtors' and its Subtenant's defaults under the Lease have put Woodland, a completely "innocent bystander", in an untenable position where it is about to lose the Premises by foreclosure to either Wachovia or the City of Chesapeake. To exacerbate this situation, the Debtors are now asking this Court to permit them to reject the Lease and walk away, leaving Woodland "holding the bag" with the nonperforming Subtenant remaining in the Premises while Woodland forfeits the Premises in a foreclosure action. This would be a result that was not contemplated by Congress when it enacted section 365 of the Bankruptcy Code, since a rejection damage claim cannot compensate Woodland for the loses it imminently faces. The only remedy that would be fair and equitable to Woodland, and be consistent with the language and policy of section 365(d)(4), would be to condition the Debtors' rejection of the Lease on the Subtenant's immediately surrendering the Premises to Woodland in vacant and "broom clean" condition, or until that

condition occurs, the Debtors being required to become, and remain, current in remitting rental payments and real estate tax payments required under the Lease.

## ARGUMENT

### The Lease Should not Be Rejected Until the Premises are Delivered to Woodland Vacant and Free of any Interests of the Subtenant

15.     Section 365(a) of the Bankruptcy Code provides that "[e]xcept as provided in sections 765 and 766 of this title [11 USCS §§ 765 and 766] and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." The version of section 365(d)(4) that is applicable to these cases provides that a debtor has sixty (60) days to make a decision on whether to assume or reject a lease for nonresidential real property or must seek an extension of such election period within the sixty (60) day period. Section 365(d)(4) of the Bankruptcy Code provides specifically that upon rejection of a lease by a debtor, qua lessee, non-residential real property must be immediately surrendered to the lessor.

16.     During the course of these cases, the Debtors obtained the requisite extension of their time to assume or reject the Lease, and by their motions are now seeking to reject the Lease. Therefore, for the reason to be described below, in accordance with Section 365(d)(4) of the Bankruptcy Code, if the Lease and the Sublease are to be rejected, the Debtors and the Subtenant must "immediately surrender" the Premises to Woodland, vacant and "broom clean".

17.     The rejection of non-residential real property leases constitutes the termination of such lease where the debtor is the lessee. See, Sea Harvest Corp. v. Riviera Land Co., 868 F.2d 1077(9th Cir, 1989); In re: 6177 Realty Associates, Inc., 142 B.R. 1017 (Bankr. S.D. Fla. 1992); In re Giles Associates, Ltd, 92 B.R. 695 (Bankr. W.D. Tex. 1988); In re: Bernard, 69 B.R. 13 (Bankr. D. Haw. 1986); In re: Southwest Aircraft Services, Inc., 53 B.R. 805 (Bankr. C.D. Cal. 1985). "It is

5

the surrender language in §365(d)(4) which renders rejection of a non-residential real property lease different from other executory contracts in which rejection may not equal termination." <u>In re: 6177 Realty Associates, Inc.</u>, 142 B.R. at 1019.

18.     Since rejection of a non-residential real property lease results in termination of the lease, if a debtor/tenant has sublet real property, once the underlying lease is rejected "sublessees retain no interest that can be pursued in bankruptcy court or state court." <u>In re: 6177 Realty Associates, Inc.</u>, 142 B.R. at 1019. Thus, when a lease is rejected, any sublease under that primary lease must also be deemed rejected since the sublessee's rights in the property is extinguished along with those of the sublessor. <u>Chatlos Systems, Inc. v.</u> Kaplan, 147 B.R.96, (D. Del. 1992).  In such a scenario, since the debtor/tenant/sublessor is required to "immediately surrender" the property to the landlord under the primary lease, so must the subtenant immediately surrender possession of the property since it no longer has any possessory interest in the property.

19.     In <u>In re: 6177 Realty Associates, Inc.,</u> a case that involved this legal issue, Michael Papo ("Papo"),  a Chapter 7 debtor, was the lessee of certain nonresidential real property under a master lease from the landlord, Finch Apartment Corp. ("Finch"). <u>Id</u>. at 1018. Papo subleased the premises to Judy Papo, his wife, who was also a Chapter 7 debtor, in a case consolidated with. Papo's case. Daniel Bakst was the trustee ("Trustee") in the Papos' case. <u>Id</u>.

20.     Under a second sublease, the premise was subleased back to Papo. <u>Id.</u> The interest of 6177 Realty Associates, Inc. ("6177 Realty"), the debtor in the case, arose under a third sublease in which Papo was the sublessor/landlord and 6177 Realty was the tenant. Continental Realty Credit Corporation ("Continental") was this Debtor's largest creditor with a claim alleged to be in excess of $ 2.7 million. <u>Id</u>. Continental also claimed to hold a leasehold mortgage encumbering all interests in the property held by 6177 Realty and by the Papos individually. As part of a stipulation entered on

the record in the Papo case on February 11, 1992, the Trustee was granted an extension through February 21, 1992 of the time to assume the Papos' lease and sublease interests in the real property. The Trustee never sought assumption and, therefore, under section 365(d)(4), all leasehold and subleasehold interests of the Papos were deemed rejected and the Trustee and Papos were required to surrender possession. Id.

21. The 6177 Realty Court considered the issue of whether the rejection of the Papos' leasehold and subleasehold interests terminated the leases and subleases and thereby extinguished any rights 6177 Realty had in the property. Finch and Continental argued that the Trustee's rejection of Papo's interest in the master lease from Finch terminated the master lease and all subleases, including the third sublease from Papo to 6177 Realty. Id. 6177 Realty responded that rejection under section 365(d)(4) only determined Finch's rights with respect to the Papos and their estate, but did not resolve state law questions which may remain regarding the rights of 6177 as a sublessee. Id.

22. The 6177 Realty Court began its analysis of this issue by adopting the majority view that rejection constitutes the termination of non-residential real property leases in which the debtor is the lessee. Id at 1019 (citing Sea Harvest Corp.v. Riviera Land Co., 868 F.2d 1077(9th Cir, 1989); In re: 6177 Realty Associates, Inc., 142 B.R. 1017 (Bankr. S.D. Fla. 1992); In re Giles Associates, Ltd, 92 B.R. 695 (Bankr. W.D. Tex. 1988); In re: Bernard, 69 B.R. 13 (Bankr. D. Haw. 1986); In re: Southwest Aircraft Services, Inc., 53 B.R. 805 (Bankr. C.D. Cal. 1985). ("It is the surrender language in §365(d)(4) which renders rejection of a non-residential real property lease different from other executory contracts in which rejection may not equal termination.").

23. The 6177 Realty Court based its conclusion of the plain meaning of section 365(d)(4). "It is this surrender language in § 365(d) (4) which renders rejection of a non-residential

7

real property lease different from other executory contracts in which rejection may not equal termination. As explained by Judge Russell in In re: Southwest Aircraft, "by requiring that upon rejection under § 365(d)(4), 'the Trustee shall immediately surrender such non-residential real property to the lessor,' it is clear Congress intended that rejecting a lease terminates the lease". Id. (quoting In re Southwest Aircraft Services, Inc., 53 B.R. at 810.).

24.   Based upon the reasoning of the courts in the In re Giles Associates, Ltd, 92 B.R. 695 (Bankr. W.D. Tex. 1988) and In re: Bernard, 69 B.R. 13 (Bankr. D. Haw. 1986), and the federal policy embodied section 365(d)(4) of the Bankruptcy Code, the 6177 Realty Court opined that the significance of section 365(d)(4) is to treat rejection as a breach "that is so serious that immediate surrender is mandatory. 'The breach plus the surrender obligation can only be seen as termination of any of the Trustee's or Debtor's rights in the leasehold. Otherwise the face of the statute and its history are meaningless.'" In re: 6177 Realty Associates, Inc., 142 B.R. at 1019 (quoting In re Giles Associates, Ltd, 92 B.R. at 698.).  The 6177 Realty Court also quoted the court in In re: Bernard, wherein it stated that the legislative history and purpose of section 365(d)(4) requiring the "'immediate surrender of the premises upon rejection of the lease was to enable the lessors to once again rent the premises and to earn income from the demised premises.'" In re: 6177 Realty Associates, Inc., 142 B.R. at 1019 (quoting In re: Bernard, 69 B.R. at 14).

25.   Drawing upon the logic and rationale of In re Giles Associates, Ltd. and In re: Bernard, the 6177 Realty Court concluded that "[r]ejection of a non-residential lease results in termination of the lease. Once the underlying lease is terminated, leasehold mortgagees or sublessees retain no interest that can be pursued in bankruptcy court or state court." 142 B.R. at 1019.

26.   Based on its analysis, the 6177 Realty Associates, Inc Court determined that Finch (the landlord) was entitled to immediate surrender of the premises not only by the Papos, the lessee,

8

but also by 6177 Realty, the sublessee, and any other parties who claimed an interest in the property. Id. at 1020. (citing In re: Elm Inn, Inc., 942 F.2d 630 (9th Cir. 1991).

27. In Chatlos Systems, Inc. v. Kaplan, which is cited by the Debtors in their Response, similarly holds that when a lease is deemed rejected pursuant to § 365(d)(4), any subleases under that primary lease must also be deemed rejected since the sub-lessee's rights in the property extinguish with those of the sublessor. 147 B.R. at 100. The district court in Chatlos Systems, Inc. v. Kaplan reversed a bankruptcy court order which, in part, compelled Chatlos Systems, Inc, a debtor/tenant/sub-lessor ("Chatlos") to deliver to the landlord "physical possession of the premises…without adverse occupancy by either Chatlos or its sub-tenant." Id. at 97. The district court in Chatlos based its decision on the fact that the debtor surrendered the subject property to the landlord and that the primary lease was terminated when the landlord received notice from the bankruptcy court. Id. at 100. According to the district court, after the landlord received notice of the debtor's rejection of the primary lease, the debtor had already done everything possible to surrender the premises to its landlord. Id. However, the district court left open the possibility that the landlord could have looked to the bankruptcy court to regain possession of the property had it sought to do so. Id.

28. Based upon the above-discussed statutory and case law, it is submitted that any order providing for the Debtors' rejection of the Lease, also provide that the Sublease is rejected. The result of the rejection of the Lease and the Sublease is that the Subtenant would no longer have any right to remain in possession of the Premises. Based upon the facts of the case at bar and the analysis in In re: 6177 Realty Associates, Inc., Woodland requests that any order rejecting the Lease should provide that the Debtor, and by extension the Sublessee, immediately surrender the Premises to Woodland in accordance with section 365(d)(4) of the Bankruptcy Code. It is also requested that

9

any rejection order contain language requiring the Debtors to continue remitting rental payments and real estate tax payments until the Subtenant has surrendered the Premises vacant to Woodland.

29.     At minimum, Woodland's respectfully requests that this Court, in the exercise of its equitable powers, fashion a remedy which results in the immediate surrender of the Sublessee from the Premises, including this Court's retaining jurisdiction over any rejection order to enforce the Subtenant's surrender of the Premises to Woodland. This relief is consistent with the reasoning of the 6177 Realty Associates, Inc and Chatlos Courts, and furthers the policy behind section 365(d)(4), which seeks to balance the hardships befalling landlords like Woodland with the Debtors' rights to reject unprofitable leases.

### Woodland is Entitled to the Immediate Payment of Post Petition Rental Arrears, Outstanding Real Estate Taxes and Insurance

30.     Woodland also cross moves for the immediate payment of May and June, 2006 rental arrears and outstanding post-petition real estate taxes and pursuant to section 365(d)(3) of the Bankruptcy Code. The majority of courts interpreting Section 365 find that lessors of nonresidential real property are entitled to payment of rent due under an unexpired lease as an administrative claim for the period running from the filing of the petition until the rejection of the lease. In re: Kirsch, 242 B.R. 777, 779 (Bankr. M.D. Fla. 1991) "Until debtors reject leases for nonresidential real property, whether by their own action or by law, lessors are entitled to administrative expenses for unpaid rent accruing postpetition". Id. at 80. See also, In re: CHS Electornics, Inc., 265 B.R. 339, 341 (S.D.Fla. 2001)("nonresidential landlords are entitled to administrative expense priority for postpetition rent under an unexpired lease of nonresidential real property, without regard to §503(b)(1)")

31. Therefore, Woodland is entitled to an order requiring the Debtors to immediately pay it the outstanding post real taxes, in the amount of $98,422.69, the May and June, 2006 rental arrears, in the amount of approximately $83,000 and reinstate the insurance.

**Dated: June 28, 2006.**

SCHUYLER·STEWART·SMITH                    THE LAW OFFICES OF JOEL SHAFFERMAN, LLC

/s/ Wayne M. Singletary
/s/ Michael E. Cecil                                      /s/ Joel Shafferman

_____                         _____
Wayne M. Singletary                                   Joel Shafferman
Florida Bar # 144109                                   Co-Counsel for Creditor
Michael E. Cecil                                           80 Wall Street, Suite 910
Florida Bar # 722855                                   New York, New York 10005
Co-Counsel for Creditor                              (212) 509-1802
118 W. Adams St. #800                               New York Bar No.: 2035079
Jacksonville, FL 32202
Phone:    (904) 353-5884
Toll Free: (866) 353-5884
Fax:        (904) 353-5994

## **CERTIFICATE OF SERVICE**

I CERTIFY that a copy has been furnished either by electronic or standard first class mail on June 27, 2006, to: Winn-Dixie Stores, Inc, Debtor, 5050 Edgewood Court, Jacksonville, FL 32254-3699; Adam Ravin, Esquire, Four Times Square, New York, NY 10036; Cynthia C .Jackson, Esquire, James H. Post, Esquire, Leanne McKnight Prendergast, Esquire, Stephen D. Busey, Esquire, 225 Water Street, Suite 1800, Jacksonville, FL 32201; Dennis F. Dunne, Esquire, 1 Chase Manhattan Plaza, New York, NY 10005; John B Macdonald, Esquire, Patrick P. Patangan, Esquire, 50 N. Laura Street, Suite 2500, Jacksonville, FL 32202; counsel for the Debtor's post-petition secured lenders; the other parties in interest named on the Master Service List maintained in these cases; and Corner Stone Christian Center, Subtenant, 215 Las Gaviotas Boulevard, Chesapeake, VA 23322.

| SCHUYLER·STEWART·SMITH | THE LAW OFFICES OF JOEL SHAFFERMAN, LLC |
|---|---|
| /s/ Wayne M. Singletary /s/ Michael E. Cecil | /s/ Joel Shafferman |
| Wayne M. Singletary Florida Bar # 144109 Michael E. Cecil Florida Bar # 722855 Co-Counsel for Creditor 118 W. Adams St. #800 Jacksonville, FL 32202 Phone:     (904) 353-5884 Toll Free: (866) 353-5884 Fax:        (904) 353-5994 | Joel Shafferman Co-Counsel for Creditor 80 Wall Street, Suite 910 New York, New York 10005 (212) 509-1802 New York Bar No.: 2035079 |