UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

---------------------------------------------------------- x
:
In re:                                   :    Case No. 05-03817-3F1
                                         :
WINN-DIXIE STORES, INC., et al.,         :    Chapter 11
                                         :
        Debtors.                         :    (Jointly Administered)
                                         :
                                         :    Obj. Deadline: June 30, 2006 @ 4:00 p.m.
                                         :    Hrg. Date: TBD
                                         :
---------------------------------------------------------- x

**LIMITED OBJECTION OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA TO THE DEBTORS' OMNIBUS MOTION FOR AN ORDER TO (I) ASSUME NON-RESIDENTIAL REAL PROPERTY LEASES, (II) FIX CURE AMOUNTS, AND (III) GRANT RELATED RELIEF**

The Prudential Insurance Company of America (the "Landlord") hereby submits this Limited Objection (the "Limited Objection") to the Debtors' Omnibus Motion For An Order To (I) Assume Non-Residential Real Property Leases, (II) Fix Cure Amounts, And (III) Grant Related Relief (the "Motion"), and respectfully represents as follows:

I.    **INTRODUCTION**

The Motion requests authority to assume the Debtors leases at an, as yet, indeterminate date in the future, and without providing any evidence of adequate assurance of future performance as required by 11 U.S.C. § 365(b). Therefore, the proposed assumption date (as of the Effective Date[1] of a confirmed plan of reorganization) is wholly speculative. The Motion also requests a further extension of the Debtors time to assume, assume and assign, or reject their leases. The Debtors are not entitled to any further extension in light of the relief requested in the Motion, but to the extent that the Court grants any extension, it should be strictly limited to the earlier of August 19, 2006 and the confirmation of Debtors' plan of reorganization.

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

- 1 -

## II. BACKGROUND FACTS

1. Winn-Dixie Stores, Inc. and certain affiliated parties (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code on February 21, 2005. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2. Landlord is the owner or managing agent of the following three (3) shopping centers wherein Debtors remain tenants operating their store locations (the "Premises") pursuant to unexpired leases of nonresidential real property (the "Leases").

| The Prudential Insurance Company of America | |
| --- | --- |
| St. John's Commons | Jacksonville, FL |
| Park View Square | Miramar, FL |
| Lake City Shopping Center | Lake City, FL |

3. Each Lease is a "lease of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3rd Cir. 1990).

4. On or about May 19, 2006 the Debtors filed the Motion, seeking to assume their leases as of an unknown Effective Date, which may or may not occur sometime in the future. The Landlord does not object to the Debtors' reorganization, so long as they comply with the requirements of the Bankruptcy Code. The Motion, as drafted, is not consistent with the Bankruptcy Code or prevailing caselaw, and fails to address critical landlord concerns.

## III. ARGUMENT

### A. The Motion provides no evidence of adequate assurance of future performance, as required to assume the Leases under Section 365.

5. Through the Motion, the Debtors seek to assume the Leases without complying with Section 365 of the Bankruptcy Code. In fact, the Motion completely fails to address the Debtors' obligation to provide evidence of adequate assurance of future performance.

---

[2] Unless otherwise specified, all statutory reference to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code")

6.     The Debtors may not assume and assign the Leases unless there is adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C).[3] The Debtors bear the ultimate burden of persuasion under Section 365. *See* In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn 1990); *see also* Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985) Adequate assurance is determined by the existing factual conditions, and the Court may look to many factors in determining what is necessary to provide adequate assurance of future performance under Section 365(b), including, sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits or other similar forms of security or guarantee. In re Lafayette Radio Electronics Corp., 9 B.R. 993, 998 (Bankr. E.D.N.Y. 1981); In re Belize Airways, 5 B.R. 152 (Bankr. S.D. Fla. 1980) Courts also look to the operating experience of the proposed assignee In re Bygaph, Inc., 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986).

7.     More than adequate assurance of future performance of the Leases under Section 365(b)(1)(C) is required here because the Leases are shopping center leases In order to assume the Leases, the Debtors must satisfy the heightened requirements set forth in Sections 365(b)(3)(A) - (D). *See* Joshua Slocum, 922 F.2d at 1086; *see also* L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 291, 299 (3rd Cir. 2000). The Debtors must provide all adequate assurance information required by Section 365(b)(3), not simply such information the Debtors or their real estate consultants deems adequate for purposes of Section 365(b)(1)(C). Evidence of adequate assurance of future performance under Section 365(b)(3) includes:

---

[3] The Debtors must provide evidence of adequate assurance of future performance far enough in advance of any hearing to approve the Motion to allow the Landlord to review such evidence and determine whether it needs to object. If Landlord does not have sufficient information (or time) to make a determination, Landlord will need to object to the proposed assumption and prepare for a contested evidentiary hearing In preparation of such evidentiary hearing, the Landlord will need to conduct expedited discovery, arrange for expert testimony, and file supplemental objections based upon the information gleaned from such discovery. As a result, Landlord needs adequate time to digest evidence of adequate assurance of future performance, and the Motion should either provide such evidence or establish a schedule that provides an expedited discovery procedure in the event a landlord objects to the assumption.

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the Debtors and its guarantor(s), if any, as of the time the Debtors became the lessee. *See* 11 U.S.C. § 365(b)(3)(A);

- that any percentage rent due under the Leases will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);

- that assumption and assignment of the Leases are subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and

- that assumption and assignment of the Leases will not disrupt the tenant mix or balance in the shopping center. *See* 11 U.S.C. § 365(b)(3)(D).

8.    In connection with the heightened adequate assurance requirement for shopping center leases, courts require a specific factual showing through competent evidence to determine whether a debtor has provided adequate assurance of future performance. In the Matter of Haute Cuisine, Inc., 58 B.R. 390, 394 (Bankr. M.D. Fla. 1986)(even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented); In the Matter of CM Systems, Inc., 64 B.R. 363 (Bankr. M.D.Fla. 1986) (debtor's assertion that it could finish project on time was not supported by any reliable factual data, thus, court denied motion to assume), but *cf.*, Bygaph, Inc., 56 B.R. 596 (court granted motion to assume and assign based on assignee's capital contribution, personal financial resources, and expressed willingness to devote sufficient funding which gave new restaurant a strong likelihood of succeeding, coupled with assignee's experience as an owner/operator of a successful restaurant and his family's planned involvement in the day-to-day management).

9.    In order to satisfy the adequate assurance of future performance burden, the Debtors need to provide, at a minimum, the following information:

(i)    the proposed name under which the reorganized debtor intends to operate the stores (if there is any proposed change);
(ii)   audited financial statements and any supplemental schedules (or un-audited, if audited are not available) and annual reports for the past three (3) years, including all supplements or amendments thereto;
(iii)  the structure and management team of the reorganized debtor and officers;
(iv)   evidence of the capitalization and financial wherewithal of the reorganized debtor, including a balance sheet as of the effective date of the plan and information on sources of financing; and

    (v)    cash flow projections for reorganized debtor, and its most recent business plan, all cash flow projections for the Leases subject to assumption, and any financial projections, calculations and/or pro-formas prepared for the Leases.

10. The above list set forth a non-exclusive list of the minimum information a landlord will need to assess the reorganized debtor. Without this information, Debtors cannot carry their burden under Section 365 and Landlord cannot meaningfully assess the bona fides of the Motion. To date, however, the Debtors have failed to provide any adequate assurance of future performance information. As a result, the Court cannot approve the Motion as drafted.

**B.  The request to extend the time to assume or reject the Leases is improper under the Motion, and to the extent any extension is granted, it should be limited in scope.**

11. The Motion specifically requests a further extension of the time to assume, assume and assign, or reject the Debtors' leases. *See* Motion at ¶ 8. As in initial matter, there is no cause for any extension. The Debtors have moved to assume the Leases, and to the extent the Motion is granted, the assumption should take effect upon the entry of the order approving the Motion. That notwithstanding, to the extent the Court entertains the extension request, the Motion's is inconsistent with the previous extension orders of this Court.

12. Pursuant to the Order Granting Fourth Extension of Time To Assume or Reject Unexpired Leases of Nonresidential Real Property, entered on or about March 14, 2006, the Debtors were given an extension of time to assume or reject their leases through the earlier of: (i) the date upon which they begin soliciting votes on their plan; and (ii) May 19, 2006. Therefore, the Court previously limited the Debtors' request for an extension to sixty (60) days. In connection with the current Motion, the Debtors have not shown any cause to justify their extension request, and there is no justification for granting the Debtors any extension beyond sixty (60) days, especially to a date that may or may not occur. Therefore, to the extent that any extension is granted, the Court should specifically limit such extension to the earlier of: (i) August 19, 2006; and (ii) the date the Court confirms the Debtors' plan of reorganization.

i.  *Section 365(d)(4) is the result of Bankruptcy Code amendments aimed at providing greater protections to Landlord*

13. The operative version of Section 365(d)(4) at the time this case was filed requires a debtor to assume or reject unexpired leases of non-residential real property within sixty (60) days of the filing of the bankruptcy petition unless the Bankruptcy Court modifies such time for "cause." 11 U.S.C. § 365(d)(4). The legislative history behind the evolution of Section 365(d)(4) provides helpful insights into Congress' intent to provide protections to landlords.

14. Congress intended the original version of Section 365(d) to protect lessors "from being left in doubt concerning their status vis-à-vis the estate." H.R. Rep. No. 95-595, at 348 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6304; S. Rep. No. 95-989, at 59 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5845. Prior to 1984, however, Section 365(d)(2) permitted chapter 11 debtors to assume or reject unexpired leases, including leases of non-residential real property, "at any time before the confirmation of a plan." As a result, unexpired leases of nonresidential real property were treated the same as all other executory contracts and unexpired leases: the debtor in possession or trustee could assume or reject any executory contract or unexpired lease at any time until confirmation, with the lessor entitled to receive, upon rejection, an administrative claim for the debtor's use and occupancy of the premises.

15. In 1984, Congress enacted amendments which carved-out non-residential real property leases from Section 365(d)(2), and placed them in two newly-enacted subsections, Section 365(d)(3) and Section 365(d)(4).

16. The legislative comments surrounding the enactment of Section 365(d)(4) demonstrate the intent behind Section 365(d)(4), an excerpt of which provides as follows:

> In all but the most complicated reorganization cases sixty (60) days should be a sufficient period to make this determination [whether to assume or reject the leases]. <u>Even in large reorganization cases the Debtor presumably knows his own business and understands the value of his assets well enough to make such decisions in sixty (60) days</u>. Also, that Debtor is generally aware in advance that the bankruptcy may be necessary and can plan ahead to decide which leases should be retained. The Debtor should consequently be able to make this determination shortly after the petition is filed and certainly within sixty (60) days in all but the most complicated cases. Nonetheless, the Court has the authority to grant extensions for cause. [emphasis added]

130 Cong. Rec. §§ 891, 8894-95, Daily ed. June 29, 1984, Senator Orrin Hatch.

17. Congress also recognized that delays, partial use, or non-use of shopping center space will have particularly deleterious effects on a shopping center, its owner and the debtor's co-tenants. The Congressional Record reflects this concern:

> Approximately half of all U.S. retail is conducted in shopping centers. Retail merchants in shopping centers depend upon the operation of a carefully chosen mix of stores, all contributing to the success of the entire shopping center. If shopping center tenants, especially major tenants, are not paying charges necessary for the upkeep of the shopping center or are using their space in ways not provided for in the lease and which disrupt the tenant mix, the financial health of all of the other merchants and of the shopping center itself can be threatened. This bill will reduce the likelihood that provisions of the bankruptcy code will themselves add to the economic distress of retail merchants in shopping centers.

1984 U.S.C.C.A.N. 576, 600-01.

18. As a result, the 1984 amendments ushered in significant changes to Section 365(d) (specifically through the addition of Section 365(d)(4)) to better protect commercial landlords, and alleviate "the unfairness of placing the burden of persuasion on landlords" and correctly places "the burden on debtors-in-possession to show cause why the time to determine whether to assume or reject should be extended." In re Wedtech Corporation, 72 B.R. 464, 469 (Bankr. S.D.N.Y. 1987).

ii. *The Debtors request for an open-ended extension is contrary to Section 365(d)(4).*

19. The effect of the Motion is to create an open-ended extension of time to assume or reject the Leases. This is contrary to the intent of Section 365(d)(4). The purpose of Section 365(d)(4) is "to protect lessors (particularly shopping center operators) from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases." Sea Harvest Corp. v. Riviera Land Co. (In re Sea Harvest Corporation), 868 F.2d 1077, 1079 (9th Cir. 1988) (citations omitted); *see also* In the Matter of American Healthcare Management, Inc., 900 F.2d 827, 830 (5th Cir. 1990). The policy to compel a debtor to quickly make a decision on the disposition of its leases is integral to the 1984 amendments.

20. If the Court decides that some extension is appropriate is this case, such extension must reflect the policy behind Section 365(d)(4). An open-ended extension does not reflect this policy and is excessive. Even where the circumstances justify an extension, an overly long extension is "inconsistent with the spirit and intent of the Code." In re Service Merchandise Company, 256 B.R. 744, 749 (Bankr. M.D. Tenn. 2000). In this case, the Motion seeks to delay assumption until the Effective Date of the Debtors' plan. There is no certainty when, or if, such date will ever occur. Such an open-ended extension is contrary to the Bankruptcy Code and relevant case law.

iii. *Short, multiple extensions better reflect the intentions of the Bankruptcy Code.*

21. Instead of an open-ended extension, the Bankruptcy Code and prevailing case law favor multiple, short extensions that more equitably balance the rights of landlords and the debtors. In deliberating between one 120-day extension and two 60-day extensions, the Bankruptcy Appellate Panel for the Ninth Circuit said the following:

> the latter scenario [two 60-day extensions] is preferable because it requires the debtor to establish cause for any additional extensions and allows the Bankruptcy Court to insure the protection of lessors, which is the clear legislative purpose of 365(d)(4).

In re Victoria Station, Inc., 88 B.R. 231, 237 (9th Cir. BAP 1988), *aff'd* 875 F.2d 1380 (9th Cir. 1989); *see also* Tigr Restaurant, Inc. v. Rouse S.I. Shopping Center, Inc., 79 B.R. 954 (E.D.N.Y. 1987).

22. Similarly, in allowing a second extension of time to assume or reject, the Fifth Circuit cautioned:

> The granting of open ended extensions is likely to result in the type of delay and uncertainty Congress sought to eliminate in enacting section 365(d)(4) . . . To obtain additional extensions, lessees would have to return to court and again demonstrate cause justifying the extensions. This approach gives bankruptcy courts greater control over bankrupt lessees' actions and allows the courts to more closely monitor lessees' activities to ensure that they resolve the status of their leases in a diligent manner.

American Healthcare Management, 900 F.2d at 830.

23. A series of limited extensions provides this Court with the ability to fairly consider, on a regular basis, both the Debtors' progress and the Landlord's rights under Section 365(d)(4). Accordingly, the Debtors are not prejudiced, and the Landlord does not suffer undue and unnecessary hardship. Finally, this properly maintains the evidentiary burdens where Congress intended – with the Debtors. Therefore, to the extent that an extension is approved, the Court should limit the extension to the earlier of: (i) August 19, 2006; and (ii) the confirmation of the Plan. This properly maintains the burdens with the Debtors as Congress intended.

iv  *Any additional extension cannot extend beyond the confirmation of the Debtors' Plan of Reorganization*

24. The Debtors request an extension through the Effective Date. This is contrary to both the letter and spirit of the Bankruptcy Code. While prior alliterations of the Bankruptcy Code provide for extensions of time to assume and reject leases up to the confirmation of a plan (*see* 11 U.S.C. § 365(d)(2)), at no time has the Bankruptcy Code contemplated granting a debtor an extension of time to assume or reject beyond plan confirmation.

25. As set forth above, former Section 365(d)(2) allowed a debtor to assume or reject all unexpired leases, including leases of non-residential real property, "at any time before the confirmation of a plan." With respect to residential real property leases, Section 365(d)(2) still provides, in pertinent part, that "the trustee may assume or reject an executory contract . . . at any time before the confirmation of a plan." 11 U.S.C. § 365(d)(2) (emphasis added); *see also*, In re Nat'l Sugar Refining Co., 27 B.R. 565, 573 (S.D.N.Y. 1983) (stating that "the trustee may wait to assume or reject [an executory] contract until the confirmation of the plan"). There is no evidence in any of the legislative history that Congress intended to extend the time for a debtor to assume or reject its leases <u>beyond</u> the confirmation of the plan of reorganization.

26. Nowhere in the Bankruptcy Code is a debtor given the right to assume or reject leases post-confirmation. Rather, a debtor can assume a lease in accordance with Section 365, or under the terms of a plan. *See* In re Valley View Shopping Center, L.P., 260 B.R. 10, 39 (Bankr.

D. Kan. 2001). Congress specifically limited the time to assume or reject expired non-residential real property leases in Section 365(d)(4) to a greater extent than other leases. Allowing a debtor to extend the time to assume or reject a non-residential real property lease beyond the confirmation date circumvents the protections that Congress provided to commercial landlords through the Bankruptcy Code.

27. Moreover, the authority to assume or reject leases is limited by the express terms of Section 365(a) to a trustee, which includes a debtor-in-possession by virtue of Section 1107(a), but does not extend to reorganized debtors. *See* In re Grinstead, 75 B.R. 2, 3 (Bankr. D. Minn. 1985) ("There is no debtor in possession status of a debtor post-confirmation.")

28. The Debtors' proposal removes the role of the Court in approving any assumption or rejection of a lease. Section 365(a) requires that decision to assume or reject leases be "subject to Court approval". If the Debtors are free to make a decision on assumption or rejection after the Court confirms their plan, in addition to attempting to deprive the Court of jurisdiction, other parties will be deprived of the benefit of the Court's review of the Debtors' actions. Furthermore, postponing the decision until after confirmation permits the Debtors to hold landlords hostage with respect to cure claims by permitting the Debtors to threaten rejection of the Leases to seek a reduction in the Landlord's legitimate cure claims.

29. Finally, rejecting a lease creates the likelihood that a sizable unsecured claim will be created. 11 U.S.C. § 502(b)(6). Allowing Debtors to change their decision to assume or reject leases anytime after the deadline to vote on the Plan effectively disenfranchises landlords, blocking them from the voting process. Therefore, the Debtors' proposed extension jeopardizes a potentially large voting class by delaying rejection until the post-confirmation period.

v  *The Debtors must pay all post-petition balances owing under the Leases pursuant to Section 365(d)(3) during any period prior to the assumption of the Leases*

30. Where a debtor continues to occupy leased space after the filing of the bankruptcy petition, the Bankruptcy Code requires that the debtor "shall timely perform all the obligations of the debtor..." 11 U.S.C. § 365(d)(3). The plain language of the statute demonstrates that the

requirements of Section 365(d)(3) dictate that Debtors must timely perform all obligations arising under the Leases -- not simply the obligation to pay rent. In re Montgomery Ward Holding Corp., 242 B.R. 142 (D. Del. 1999); In re Cukierman, 242 B.R. 486, 490 (Bankr. 9th Cir. BAP 1999). Therefore, the debtor-tenant must timely perform all post-petition obligations due under the Leases pending assumption or rejection. In re Pacific-Atlantic Trading Co., 27 F.3d 401 (9th Cir. 1994); In re Twigland Fashions, Inc., 198 B.R. 199, 200 (W.D. Tex. 1996).

31.   This Court should condition any extension of time to assume or reject the Leases upon the Debtors' timely performance of all outstanding post-petition obligations and all future obligations as they come due under the Leases, until such time as they are assumed or rejected. In re Tandem Group, Inc., 60 B.R. 125, 127 (Bankr. C.D. Cal. 1986) (conditioning an extension of time to assume or reject an unexpired lease on timely performance under that lease, and ordering automatic rejection upon failure to timely perform under the lease).

C.   **The Debtors' proposed cure amounts do not provide for payment of all obligations due under the Leases.**

32.   The Debtors must cure all existing defaults and compensate Landlord for any actual pecuniary loss as a result of those defaults in order to assume the Leases under Section 365(b). See 11 U.S.C. § 365(b)(1)(A) and (B). This principle is well-recognized. *See* Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989). Upon Court approval of the Motion, these obligations are payable immediately by Debtors. Tandem Group, Inc., 60 B.R. at 127, *citing* In Matter of Condominium Administrative Services, Inc., 55 B.R. 792 (Bankr. M.D. Fla. 1985).

33.   Landlord's cure, as compared to the Debtors' cure is set forth below, and more fully detailed in Exhibits A, B-1 through B-3, and C, which attached hereto and incorporated herein by this reference:

| Center | Pre-Petition Post-Petition | Interest | Attorney Fees[4] | Landlord Cure | Debtors' Cure |
|---|---|---|---|---|---|
| St. John's Commons | $22,634.49 $5,011.98 | $322.24 $649.50 | $3,285.17 | **$31,903.38** | **$21,807** |
| Park View Square[5] | $22,002.71 $7,000.54 | $307.44 $60.19 | $2,884.67 | **$32,255.55** | **$0.00** |
| Lake City Shopping Center | $1,449.42 $8,781.78 | $0.00 $0.00 | $8,125.62 | **$18,256.82** | **$0.00** |

34. In determining what the Debtors must pay as cure pursuant to Section 365(b), the following must also be taken into consideration:

i   *Year-end Adjustments and Reconciliation*

35  In addition to rent, attorneys fees, costs, and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the Landlord's properties pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred by the property. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable. In some instances in this case, year-end reconciliations and adjustments for

---

[4]  Attorneys' fees are estimated through June 22, 2006 and do not include fees incurred from that date through the closing of any sale to assign the Leases. Landlord will provide such additional attorneys' fees when available.

[5]  There are three components to the lease charges due and owing under the Park View Square lease. These are provided separately in the attached cure breakdown as Exhibits B-1 through B-3.

previous years for the Debtors are not yet complete. In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.

36. Debtors continue to be responsible for all unbilled charges as they come due under the Leases. As a result, Landlord has not provided any estimates for these unbilled charges in its cure calculations and will simply bill the Debtors or their successor under each Lease in the ordinary course when those bills or credits are generated. That notwithstanding, any order approving any assignment of the Leases and the cure amount should provide that the Debtors or their successor under the Leases will remain liable for all unbilled charges, and Landlords specifically reserve the right to collect payment of all unbilled charges when billed from the Debtors or any successor.

ii. *Attorney Fees, Costs, and Interest*

37 The Leases contain provisions for the recovery of attorneys' fees, costs, and interest in the event the Landlord is required to take legal action to protect its interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlord for its actual pecuniary losses as a result of defaults under the Leases. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

38 In assuming and assigning the Leases, the Debtors take the Leases *cum onere*, that is, subject to existing burdens. The Debtors cannot, on the one hand, assume the favorable portions of the Leases and, on the other hand, reject the unfavorable provisions of the same Leases. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Bankr. E.D. Va 1993). If forced to continue in the performance of the Leases, the Landlord is entitled to the full benefit of the bargain under the Leases with the Debtors. *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation

than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%) Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition to assumption of the Leases. See In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D. N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlord for the Debtors' default under the Leases, and thus to properly assume the Leases. Additionally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001). Therefore, the Debtor must satisfy all interest accruing under the Leases through the date of any assumption of the Leases.

39   Attorneys' fees and costs are also proper components of a cure claim. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease must be paid as a condition of the assumption and assignment of the lease   Entertainment, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. at 154   The fact that a lessor uses bankruptcy procedures to enforce a lease should not preclude recovery of attorney fees and costs for such enforcement activity, particularly where the Bankruptcy Court is the exclusive forum where the lessor can obtain any relief, being foreclosed from state court relief by the automatic stay. Id., *see also*, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . .")

*iii*    *The reorganized debtor must assume any obligations to defend, reimburse, and/or indemnify the Landlord that may have accrued, but which may be unknown at this time.*

40.    The Leases provide for Debtors to defend, reimburse, hold harmless, and/or indemnify Landlord for various claims which may have accrued, but which have not become known to the Landlord. While such obligations do not give rise to a current monetary claim, the reorganized debtor must nonetheless assume these obligations in full as part of any cure and assumption of the Leases

41    As a practical matter at this juncture, the best the Landlord can do is provide the most accurate information presently available regarding the cure payable by the Debtors, but must reserve the unqualified right to unilaterally amend the cure amounts as necessary to include any additional sum of money for any reason, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations  There is no basis to impose upon the Landlord the equivalent of an administrative bar date without the ability to recover lease charges to which they are entitled under the Leases

**D.    Any extension of the time to assume or reject unexpired non-residential real property leases should provide for lease rejection upon a default by the debtor.**

42    Landlord should not unnecessarily shoulder the risk of the Debtors inability to reorganize. To ease the burden on Landlord, it should have the ability to quickly recapture the leased premises in the event Debtors fail to remain current on their Lease obligations. Therefore, any extension to assume or reject the Leases should provide Landlord expedited relief from the automatic stay in the event of a future default by the Debtors. In the event the Debtors default on any obligation under the Leases, or under the order entered on the Motion, such Lease should be deemed rejected at the Landlord's option (without affecting the Landlord's right to receive administrative rent) if the default thereunder is not cured within ten (10) days after receipt of written notice from the respective Landlord or its counsel, to the Debtors or their counsel.

**E.    Joinder and reservation of rights.**

43.    To the extent not inconsistent with the relief sought herein, Landlord joins in any opposition to the Motion. Additionally, due to the lack of information available, Landlord

reserves the right to raise all objections, including objections based upon adequate assurance of future performance, when additional information is provided by the Debtors.

## IV. CONCLUSION

Based on the foregoing, Landlord respectfully requests that the Court enter an Order:

    a. Requiring the Debtors to provide adequate assurance of future performance information as required by Section 365;

    b. Limiting any extension of time to assume or reject unexpired leases to sixty (60) days without an additional demonstration of cause;

    c. Denying any request to extend the time to assume, assume and assign, or reject the Leases beyond the confirmation date of a plan of reorganization;

    d. Requiring timely payment of all post-petition charges under the Leases pursuant to Section 365(d)(3) during any period of extension;

    e. Establishing the cure amounts (subject to adjustment by the Landlord) as set forth herein;

    f. Granting expedited relief in the event the Debtors default on their obligations under Leases; and

    g. For such other and further relief as the Court deems just and proper.

Dated: June 30, 2006

**HELD & ISRAEL**

By: _/s/_____
Kimberly Held Israel, Esquire
Florida Bar #47287
Adam N. Frisch, Esquire
Florida Bar #635308
1301 Riverplace Blvd., Suite 1916
Jacksonville, Florida 32207
(904) 398-7038 Telephone
(904) 398-4283 Facsimile

and

**KATTEN MUCHIN ROSENMAN LLP**
Attorneys for Capstone Advisors, Inc.
Thomas J. Leanse (TL-8802)
Dustin P. Branch (DB-3553)
2029 Century Park East, Suite 2600
Los Angeles, California 9006
Phone: (310) 788-4400
FAX: (310) 788-4471