IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CONCORD-FUND IV RETAIL, LP                Case No.

    Plaintiff,

                                                     06-04748 CC-25

v.

WINN DIXIE STORES, INC.

    Defendant.

_____/

## COMPLAINT FOR POSSESSION AND TENANT EVICTION

Plaintiff, CONCORD-FUND IV RETAIL, LP by and through its property manager and duly authorized agent, TERRANOVA CORP. (collectively, the "Landlord") sues Defendant, WINN DIXIE STORES, INC. ("Tenant") and alleges as follows:

1. This is an action brought by the Landlord under Florida Statute, Section 83.20(3) to remove the Tenant from the following described premises because Tenant holds over without permission after failing to timely cure a material breach of the lease between Landlord and Tenant:

Winn Dixie Store Number 254, 11242 S.W. 40th Street, Miami, FL 33165 (the "Premises").

2. Concord-Fund IV Retail, LP ("Concord") owns the Premises and has authorized its property manager and agent, Terranova Corporation ("Terranova") to bring this action on Concord's behalf.

### Tenant's Lease Obligations

3. Tenant is in possession of the premises under a written ground lease with

**Exhibit A**

Landlord, a copy, together with copies of amendments and assignments from the original lessee to Tenant, are attached as Exhibit "1" (the "Lease"). Under Sections 8(b), 9(a) and 13(a) of the Lease, Tenant is required to maintain its building and parking lot and other common areas of the Premises in good condition and repair, comply with all laws, ordinances, rules and regulations of governmental authorities and keep all of its common areas suitably lighted, including its parking lot.

### Background

4. The Landlord owns property adjacent to the Premises. On or prior to February 2004, the Landlord's electrician, Phoenix Electric Co., Inc. ("Phoenix Electric") was working to upgrade the lighting in the Landlord's property adjacent to the Premises. Phoenix Electric discovered dangerous electrical conditions in Tenant's parking lot and notified the Landlord of these conditions. Attached as Exhibit "2" is a copy of Phoenix Electric's notice to Landlord of the dangerous electrical condition in Tenant's parking lot. After receiving the notice, Landlord contacted Tenant concerning the dangerous condition on its Premises and asked that the condition be remedied. Attached as Exhibit "3" is a March 19, 2004 letter from Landlord to Tenant confirming the dangerous electrical condition and requesting that Tenant repair the condition.

5. On April 8, 2004, Miami-Dade County Building Department issued a summons to Landlord notifying it that the electrical permit pulled by Tenant electrical contractor for electrical work done at the Premises had not been properly closed, and therefore, there was no inspection of work done by Tenant's electrician. Attached as Exhibit "4" is the Summons. Thereafter,

Landlord and Tenant continued to have communications concerning the need of Tenant to maintain adequate lighting in its parking lot on the Premises and to correct the dangerous electrical condition.

6. On February 21, 2005, Tenant filed Chapter 11 bankruptcy. Thereafter, Landlord notified Tenant by letter dated March 30, 2005 that it was in default for failure to maintain adequate lighting in its parking lot and demanded that the default be cured within thirty days as required by the Lease. Attached as Exhibit "5" is a copy of the demand by Landlord. By letter dated April 28, 2005, a copy attached as Exhibit "6," Tenant refused to perform these repairs, maintaining that it was the Landlord's responsibility for completing repairs. Tenant is wrong.

7. After Tenant failed to correct the lighting and electrical problems at the Premises, Landlord filed its motion for relief from the bankruptcy automatic stay in Tenant's bankruptcy case. Thereafter, Tenant's bankruptcy counsel and general counsel began communications via e-mail with Landlord's counsel concerning the defaults.

### Dangerous Electric Condition of Tenant's Premises

8. Landlord's electrician, Phoenix Electric, inspected the Premises and by letter dated January 26, 2006, Landlord sent Tenant's attorneys a detailed description of Phoenix Electric's report of Tenant's defaults under the lease caused by dangerous electrical conditions in Tenant's parking lot and the fact that Tenant's electrical contractor's failure to have its work properly inspected by County authorities had caused a summons to be issued to Landlord because of the condition of the Premises. Landlord also demanded that Tenant cure these defaults. Attached as Exhibit "7" is a copy of the January 26, 2006 notice from Landlord to Tenant in care

of its bankruptcy counsel and general counsel. On February 9, 2006, the Bankruptcy Court granted Landlord relief from the bankruptcy automatic stay to pursue its remedies under the Lease in this Court. Attached as Exhibit "8" is a copy of the Stay Relief Order.

9. The dangerous electrical conditions of the Premises are described as follows:

   a. <u>Brooks Boxes</u>. Brooks Boxes are meter boxes sunk into the ground below the pavement surface and covered by a metal traffic cover. The Brooks Boxes are scattered throughout the parking lot in parking spaces, including locations where water pools after a rain. The Brooks Boxes are where underground wire connectors are located. Normally, the Brooks Boxes are insulated, sealed and grounded. The Winn Dixie parking lot Brooks Boxes are not sealed, grounded or insulated. As a result, they are filled with dirt and mud that engulfs the wires and connectors. The wires and connectors are either coated with mud or, in some instances, the insulation on the wires is worn through, exposing live copper wire. In addition to rewiring, the Brooks Boxes need weatherproof junction boxes filed with Chota.

   b. <u>Light Fixture Poles</u>. Rather than upgrade the lighting in the existing ballasts, Winn Dixie's electrician has "jerry-built" temporary spot lights to the top of the light poles. These temporary spot lights will not pass inspection; moreover, power is supplied to these temporary spot lights by running insufficiently rated cord from the existing light fixtures to the temporary spot lights.

   c. <u>Wire Connectors</u>. The Brooks Boxes contain the wrong wire connectors: wire nuts are used to connect "wires" in the Brooks Boxes instead of direct burial wire connectors. The former are to be used only for dry areas, whereas direct burial wire connectors must be used in exposed areas like Winn Dixie's parking lot.

   d. <u>Wire Color</u>. In numerous junction boxes at the base of the light poles, Winn Dixie's electrician used the wrong color wire. These fixtures now use NEC (National Electric Code) 120/208 volt wire colors black, red, blue, white and green. Instead, what should be used is NEC 277/480 volt wire colors brown, orange, yellow, gray and green. This condition poses a danger to any electrician coming behind Winn Dixie's electrician.

4

e.  <u>Structurally Unsound Light Poles</u>. While installing junction boxes at the base of the light poles, Winn Dixie's electrician drilled straight through several light poles. This is a violation of the South Florida Building Code and these light poles will not pass inspection. The light poles must be replaced.

f.  <u>Parking Lot Wiring</u>. The parking lot is wired in number 10 wire (up to 35 amps) but should be wired in number 6 wire (up to 65 amps) at minimum. Number 6 wire is needed for the volt drop in the lengths of the runs in the parking lot. All of the other areas of the parking lot use number 4 and 6 wire.

Attached as Exhibit "9" are photographs that show the conditions that correspond with subparagraphs a-d, above. Also included is a photo of a proper light fixture installed by Landlord in the adjacent parking lot; this photo is labeled "b" too. These photographs were given by Landlord to Tenant.

10. On February 8, 2006, Landlord's property manager and electrician met with Tenant's representatives at the Premises to review each of the dangerous conditions so that the problems could be remedied immediately. Attached as Exhibit "10" is memo sent from Landlord to Tenant prior to the February 8, 2006 site visit suggesting an agenda for the meeting of Landlord's and Tenant's representatives.

### Tenant's Failure to Cure Defaults

11. Under Section 23(a)(3) of the Lease, Tenant had thirty (30) days from the January 26, 2006 notice to repair the dangerous electrical conditions and correct the violations contained in the summons or proceed with all reasonable diligence to prosecute the curing of such events of default. Tenant has failed to remedy these events of default or proceed with all reasonable diligence to prosecute the curing of such events of default within the thirty (30) day period.

5

12.     Pursuant to Section 23(a)(3) of the Lease, on March 1, 2006, Landlord sent Tenant notice of termination of the Lease and gave Tenant through March 17, 2006 to vacate the Premises. A copy of Landlord's notice of termination is attached as Exhibit "11." Tenant has refused to vacate the Premises and Landlord is entitled to possession of the Premises under the Lease.

**WHEREFORE,** Plaintiff demands judgment for possession of the Premises and issuance of a writ of possession for the Premises.

**TEW CARDENAS LLP**
**Counsel for Plaintiff**
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, FL 33131
Tel. No. 305-536-1112
Fax No. 305-536-1116

By: _____
**THOMAS R. LEHMAN, P.A.**
**Florida Bar No. 351318**

@PFDesktop\::ODMA/MHODMA/DMS_NT;MIAMI;457333;1