KELLEY DRYE & WARREN LLP                    **Objection Deadline: June 30, 2006**
101 Park Avenue
New York, New York  10178
James S. Carr ( JC-1603)
Robert L. LeHane ( RL-9422)
Tel:  (212) 808-7800
Fax: (212) 808-7897

     -and-

HELD & ISRAEL
1301 Riverplace Blvd., Ste. 1916
Jacksonville, FL  32207-9024
Tel: (904) 398-7036
Fax:  (904) 398-4283

Attorneys for Developers Diversified Realty Corp., Weingarten Realty Investors,
RMC Property Group, Four Florida Shopping Centers,
Curry Ford LP, WRI/TEXLA, LLC,
and Palm Springs Mile Associates, Ltd.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

_____
In re:                                            )      Case No.  05-03817-3F1
                                                  )
WINN-DIXIE STORES, INC., et al.,                  )      Chapter 11
                                                  )
Debtors.                                          )      Jointly Administered
                                                  )
_____)

**OBJECTION OF DEVELOPERS DIVERSIFIED REALTY CORP., WEINGARTEN
REALTY INVESTORS, WRI/TEXLA, LLC, RMC PROPERTY GROUP, FOUR
FLORIDA SHOPPING CENTERS, CURRY FORD LP, AND PALM SPRINGS MILE
ASSOCIATES, LTD. TO DEBTORS' AMENDED OMNIBUS MOTION FOR ORDER
TO (I) ASSUME NON-RESIDENTIAL REAL PROPERTY LEASES, (II) FIX CURE
AMOUNTS, AND (III) GRANT RELATED RELIEF**

        Developers Diversified Realty Corporation, WRI/TEXLA, LLC, Weingarten Realty

Investors, RMC Property Group, Four Florida Shopping Centers, Curry Ford LP, and Palm

Springs Mile Associates, Ltd. (collectively, the "Landlords"), by and through their attorneys,

Kelley Drye & Warren LLP, and Held & Israel, submit this objection (the "Objection") to the

amended omnibus motion of Winn-Dixie Stores, Inc. *et al.* (collectively, the "Debtors"), dated

May 20, 2006, for an order to (i) assume non-residential real property leases, (ii) fix cure amounts, and (iii) grant related relief (the "Motion").  In support of the Objection, the Landlords respectfully state as follows:

<u>PRELIMINARY STATEMENT</u>

1.      The Landlords do not object to the Debtors' assumption of the Leases, but the Debtors proposed cure amounts are not correct and the Motion does not provide that the Debtors will promptly cure all outstanding defaults under the Leases as required by the Bankruptcy Code.  Rather, the Motion provides that cure will be paid  "promptly after the Effective Date."  The Debtors have not scheduled a hearing on the Motion.  The Landlords request that the Court set a date for hearing on the Motion, or enter an Order approving the assumption of the Leases (defined below) no later than August 1, 2006.  Having made the decision to assume the Leases, the Debtors should be required to pay the cure amounts within five days of the entry of an order approving the assumption of the Leases, or pay interest from the date of entry of order approving the assumption of the Leases until the cure amounts are paid.

2.      In addition, the Debtors' request for an extension of the time to assume or reject leases through the effective date of the Plan (defined below) should be denied because it is not authorized by any applicable case law and is inconsistent with section 365(a) of the Bankruptcy Code.  Moreover, the Debtors have failed to demonstrate any cause for an extension of the time to assume or reject the Leases. In fact, the request for authorization to assume the Leases demonstrates that cause does not exist to extend the Debtors' time to assume or reject the Leases because the Debtors have already decided to assume the Leases.

## BACKGROUND

3.      On or about February 21, 2005 (the "Petition Date"), the Debtors filed

voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

4.      The Debtors remain in possession of their properties and continue to

manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code.

## THE LEASES

5.      The Landlords are the owners, or managing agent for the owners, of

numerous shopping centers located throughout the United States.  The Debtors lease retail space

from the Landlords pursuant to written leases (collectively, the "Leases") at the locations (the

"Leased Premises") identified in the chart annexed hereto as Exhibit A.

6.      The Leased Premises are all located in shopping centers as that term is

used in section 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.,* 922 F.2d 1081

(3d Cir. 1990).

## PREVIOUS EXTENSIONS OF TIME TO ASSUME OR REJECT THE LEASES

7.      Pursuant to various Orders of the Court, the Debtors' time to assume or

reject leases was extended numerous times; most recently through and including the earlier of

May 19, 2006 and the date that the Debtors solicit votes on their plan of reorganization.

## THE MOTION

8.      The Motion seeks an Order (i) authorizing, but not directing, the Debtors

to assume the Leases as of the date that the Debtors' plan of reorganization (the "Plan") becomes

effective (the "Effective Date"); (ii) fixing cure amounts; and (iii) granting the Debtors a further

extension of time to assume or reject the Leases through the Effective Date. Motion, ¶ 8 at p. 3.

9.      According to the Motion, the Debtors state they will satisfy their

obligations under section 365(b) of the Bankruptcy Code by paying their proposed cure amounts (the "Debtors' Proposed Cure Amounts") promptly after the Effective Date, and provide adequate assurance of future performance by simply continuing their business operations.

      10.    According to the Motion, however, if the Debtors do not confirm the Plan, or the confirmed Plan does not become effective, the Leases will not be assumed.

**OBJECTION**

**I.    THE DEBTORS HAVE NOT PROVIDED ADEQUATE ASSURANCE OF PROMPT CURE AS REQUIRED BY THE BANKRUPTCY CODE**

    **A.    The Debtors Must Promptly Cure All Outstanding Defaults Under the Leases**

      11.    Section 365(b)(1) of the Bankruptcy Code requires the Debtors to promptly cure all outstanding defaults under the Leases.[1]  "What constitutes 'prompt' cure as required by section 365(b)(1)(A) depends on the facts or circumstances of each case."  *In re Valley View Shopping Center*, *L.P.*, 260 B.R. 10, 26 (Bankr. D. Kan. 2001).  Although the Debtors propose to cure all defaults promptly after the Effective Date, defaults in material monetary obligations must be cured prior to assumption of the Leases.  *In re Rachels Indus., Inc.*, 109 B.R. 797, 812-813 (motion to assume denied on the grounds that cure of default was not adequately proven).  Here, the Debtors' proposal to pay the cure amounts after the Effective Date

---

[1]    Section 365 of the Bankruptcy Code provides in relevant part:

    (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

        (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default;

        (B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party from such default; and

        (C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

of the Plan is not assurance of a prompt cure. *Bajardi v. Daugherty (In re Daugherty),* 102 B.R. 167, 168 (Bankr. E.D. Mo. 1989) (proposal to cure defaults more than one year after the commencement of the case is not prompt cure).

12.     Although the Motion requests authority for the Debtors to assume the Leases, it does not require assumption of the Leases.  Moreover, because the assumption of the Leases will be contingent upon the Plan becoming effective, the Motion leaves open the possibility that the Leases will not be assumed and cure amounts will never be paid.  The Court should not wait until the hearing on confirmation of the Plan to approve the assumption of the Leases.  Rather, the Court should enter an Order (the "Approval Order") no later than August 1, 2006 that requires the Debtors to assume the Leases and pay the Landlords the undisputed cure amounts immediately upon entry of the Approval Order.  In the alternative, the Debtors should be required to pay interest on the Cure Amounts until such time as the Cure Amounts are paid in full.

**B.     The Debtors' Proposed Cure Amounts Are Incorrect**

13.     The Debtors' Proposed Cure Amounts are incorrect.  Pursuant to the Leases, the Debtors are obligated to pay regular installments of fixed monthly rent as well as a pro rata share of common area maintenance costs, real estate taxes and insurance.  In conjunction with their duty to compensate the Landlords for all actual pecuniary loss, the Debtors are obligated to pay the Landlords' attorneys' fees.  *See* 11 U.S.C. § 365(b)(1)(B).  Attorneys' fees due under the Leases are compensable.  *See LJC Corp. v. Boyle,* 768 F.2d 1489, 1494-6 (D.C. Cir. 1985); *Andrew v. KMR Corp*., 17 B.R. 438, 439 (Bankr. 9th Cir. 1982); *In re BAB Enterprises, Inc.,* 100 B.R. 982 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.,* 59 B.R. 747, 752-4 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.,* 57 B.R. 319, 321 (Bankr. S.D.N.Y. 1986).  Accordingly, as part of their pecuniary loss, the Landlords are entitled

to such fees in connection with the Debtors' obligation to cure all monetary defaults under the Leases.

14.     The chart attached as Exhibit A sets forth the actual amounts that are due and owing to the Landlords under the Leases (collectively, the "Landlords' Cure Amounts"). The Landlords object to the Debtors' Proposed Cure Amounts and request that the Debtors be compelled to pay the Landlords' Cure Amounts as set forth on Exhibit A upon entry of an Approval Order.  The Landlords also request that the Debtors pay interest on their outstanding obligations under the Leases.  Even where the Leases do not contain requirements to pay interest on past due rent, the Landlords' are entitled to recover interest under the law of the state in which the property is located.  *In re Eagle Bus Mftg., Inc.,* 148 B.R. 481, 483 (Bankr. S.D. Tex. 1992); *Westview 74th St. Drug Corp.,* 59 B.R. at 757**.**  The Landlords, therefore, request that the Debtors be required to pay interest on the cure amounts set forth in Exhibit A as provided under the Leases or applicable state law.[2]

15.     To the extent that interest, rent, attorneys' fees, or other charges continue to accrue, and/or the Landlords suffer other pecuniary losses with respect to the Leases pending assumption, the Landlords hereby reserve their right to amend their cure amounts to reflect such additional amounts or to account for year-end adjustments, including without limitation, adjustments for the years 2005 and 2006 (the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Leases.  As such, the Debtors must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of

---

[2]     For stores located in Florida interest accrues at 7% per annum for 2005 and 9% per annum for 2006. *See* FLA. STAT. ANN. §83.06(2) (West 1995), FLA. STAT. ANN. §687.01 (West 1994), FLA. STAT. ANN. §55.03 (West 2003).  For stores located in Louisiana, interest accrues at 6% per annum for 2005 and 8% per annum for 2006.  *See* LA. CIV. CODE ANN. art. 2000 (1985), LA. REV. STAT. ANN. § 9:3500 (1998), LA. REV. STAT. ANN. § 13:4202 (1997).  For stores located in Kentucky, interest accrues at 6% per annum. *See* KY. REV. STAT. ANN. §383.010 (West 2003).

the Leases, regardless of when such Adjustment Amounts were incurred.

16.     In addition, the Landlords request that the Debtors be required to comply with all contractual obligations to indemnify and hold the Landlords harmless with regard to events which may have occurred pre-assumption but which were not known to either the Landlords or the Debtors as of the date of the assumption, including, but not limited to claims for personal injury which occurred at the Leased Premises, damage and destruction to the Leased Premises or property by Debtors or its agents, and environmental damage or environmental clean-up.

## II.    THE TIME TO ASSUME OR REJECT LEASES SHOULD NOT BE EXTENDED

### A.    Cause Does Not Exist to Extend the Debtors' Time to Assume or Reject the Leases

17.     Section 365(d)(4) of the Bankruptcy Code requires that a debtor establish "cause" to warrant an extension of the time within which to assume or reject leases of non-residential real property.  11 U.S.C. § 365(d)(4).[3]  The requirement to establish "cause" in section 365(d)(4) unequivocally places the burden of demonstrating the need to extend the time to assume or reject leases squarely on the debtor.  *See In re Wedtech Corp.*, 72 B.R. 464, 469 (Bankr.S.D.N.Y. 1987).  The Debtors have failed to carry their burden of establishing cause under section 365(d)(4) of the Bankruptcy Code for any extension of the time to assume or reject, let alone through and including the date upon which a confirmed plan of reorganization becomes effective.

---

[3]     Section 365(d)(4) of the Bankruptcy Code provides, in relevant part, that:

> in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4).

18.     Section 365(d)(4) of the Bankruptcy Code, which Congress added to section 365 pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Amendments"), provides that a lease of non-residential real property is deemed rejected if a debtor does not assume or reject the lease within sixty days after the order for relief has been entered, or within such additional time as the court fixes, upon a showing of cause.  11 U.S.C. § 365(d)(4).  Thus, with the addition of section 365(d)(4) to the Bankruptcy Code in 1984, Congress specifically sought to limit debtors' lengthy delays of the decision to assume or reject non-residential real property leases.[4]

19.     Subsequent court decisions recognize that section 365(d)(4) of the Bankruptcy Code was intended to shorten the time within which a debtor must make its election to assume or reject non-residential real property leases to a date prior to confirmation.  *See Legacy, Ltd. v. Channel Home Centers, Inc. (In re Channel Home Centers, Inc.),* 989 F.2d 682 (3d Cir. 1993); *Chapman Investment Assocs. v. American Healthcare Management, Inc. (In re American Healthcare Management, Inc.),* 900 F.2d 827, 830 (5th Cir. 1990); *In re Wedtech Corp.,* 72 B.R. 464, 470 (Bankr. S.D.N.Y. 1987).  As Congress noted in the legislative history of section 365(d)(4):

> section 365(d)(4)] reduces the severity of these problems [of a trustee taking an extended time to assume or reject an unexpired lease] by imposing a sixty-day limit on the trustee's decision to assume or reject a nonresidential lease in cases under any chapter of the code unless the court for cause extends the time.  In all but the most complicated reorganization cases, sixty days should be a sufficient time to make this determination.  Even in large reorganization cases, the debtor presumably knows his own business and understands the value of his assets well enough to make such decisions in sixty (60) days.  Also, the debtor is generally well aware in advance that a bankruptcy may be necessary and can plan ahead to decide which leases should be retained.  The debtor should consequently be able to make this determination shortly after the petition is filed and certainly within sixty (60) days in all but the most complicated cases.

---

[4]     Prior to the 1984 Amendments, section 365(d)(2) of the Bankruptcy Code permitted the assumption or rejection of non-residential real property leases "at any time before the confirmation of a plan."

130 Cong. Rec. S. 8891, S. 8894-95, (daily ed. June 29, 1984).

20.     Courts interpreting section 365(d)(4) of the Bankruptcy Code have consistently held that its intent "is to prevent trustees [and debtors-in-possession] from taking too much time at deciding whether to assume unexpired non-residential leases." *In re Channel Home Centers, Inc.*, 989 F.2d 682, 686 (3d Cir. 1993); *see also Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989) (the purpose of the Shopping Center Amendments "was to protect lessors (particularly shopping center operators) from delay and uncertainty by forcing a trustee or a debtor-in-possession to decide quickly whether to assume unexpired leases.")  As of the filing of the Motion, the Debtors had over 500 days from the Petition Date to decide whether to assume or reject the Leases.

21.     Although the term "cause" is not defined by the Bankruptcy Code, Congress surely intended the term to require some justification for an extension of time to assume or reject leases.  Here, the Motion is completely devoid of any explanation for the requested extension.  In fact, by the Motion, the Debtors state that they have decided to assume the Leases.  Because the Debtors have decided to assume the Leases, there is no basis for any further extension of the time to assume or reject the Leases.  As a result, the Debtors do not need any more time to consider the decision to assume or reject the Leases and the requested extension should be denied.

**C.     The Debtors' Are Not Entitled to an Extension of the
Time to Assume or Reject Beyond Confirmation of the Plan**

22.     The Debtors' request to extend the time to assume or reject the Leases should be denied because it would grant the Reorganized Debtors (a party other than a trustee or a debtor-in-possession) authority to assume or reject the Leases after confirmation of the Plan. The requested extension is not authorized by section 365(a) of the Bankruptcy Code, or applicable case law, and is contrary to the legislative intent of section 365(d)(4) of the

Bankruptcy Code and applicable case law.

23.     Section 365(a) of the Bankruptcy Code provides that the "trustee," subject to court approval, may assume or reject any executory contract or lease.  11 U.S.C. § 365(a). Section 1107(a) of the Bankruptcy Code provides that, with certain exceptions, a debtor-in-possession shall have all of the powers and perform all the functions and duties of a trustee.  11 U.S.C. § 1107(a).  Thus, the authority to assume or reject a lease under section 365 of the Bankruptcy Code lies only with a trustee or a debtor-in-possession, not with a reorganized debtor.  *See In re K-Mart Corporation et. al.*, Case No. 02-02474(SP), unpublished decision dated March 26, 2003 (holding that extension of time to assume or reject beyond confirmation is not authorized by the provisions of the Bankruptcy Code or any relevant case law, and is contrary to legislative intent of section 365(d)(4) of the Bankruptcy Code).  A copy of the transcript of the K-Mart decision is attached as Exhibit B.  *See also Hartford Underwriters Insurance Company v. Union Planters Bank N.A.*, 530 U.S. 1 (2000).

24.     Under the Bankruptcy Act, post-confirmation assumption or rejection of contracts was prohibited.  *Consolidated Gas Elec. Light & Power Co. v. United Rys. & Elec. Co.*, 85 F.2d 799 (4th Cir. 1936), *cert denied*, 300 U.S. 663 (1937).  With the original enactment of the Bankruptcy Code in 1978, Congress drew from the predecessor Bankruptcy Act in crafting sections 365(d)(1) and (2):

> (d)(1) In a case under Chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period fixes, then such contract or lease is deemed rejected.

> (2) In a case under Chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor *at any time before the confirmation of a plan* but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

S.R. 95-989, 95th Cong., 2d Sess. (1978) *(Emphasis added)*.

      25.    Although soon after the enactment of the Bankruptcy Code it became readily apparent that major deficiencies existed in section 365, it was always clear that debtors were required to assume or reject leases "before confirmation of the plan." *See, e.g., In the Matter of Whitcomb v. Keller Mortgage Co.*, 715 F.2d 375, 378-79 (7th Cir. 1983).

      26.    The Debtors' request for an extension of time to assume or reject the Leases until the Effective Date should be denied because the decision to assume or reject the Leases would be made not by the Debtors, but rather by the Reorganized Debtors, contrary to the Bankruptcy Code and applicable case law.

**[reminder of page intentionally left blank]**

**WHEREFORE**, the Landlords respectfully request that the Court enter an order

(i) approving the assumption of the Leases as set forth herein no later than August 1, 2006;

(ii) requiring the Debtors to pay the undisputed cure amounts as set forth on Exhibit A, plus

interest, and any additional pecuniary losses suffered by the Landlords, including reasonable

attorneys' fees, within five days after the entry of the Approval Order; (iii) requiring the Debtors

to continue to comply with the obligations under the Leases such as indemnification obligations

and accrued but not yet billed year-end adjustments in the regular course of business;

(iv) denying any extension of the Debtors' time to assume or reject the Leases; and (v) granting

such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          June 30, 2006

                              KELLEY DRYE & WARREN LLP

                              By: /s/ *James S. Carr*
                                  James S. Carr (JC-603)
                                  Robert L. LeHane (RL-9422)
                              101 Park Avenue
                              New York, New York 10178
                              Phone:  (212) 808-7800
                              Fax:  (212) 808-7897

                                  - and -

                              HELD & ISRAEL
                              1301 Riverplace Blvd., Ste. 1916
                              Jacksonville, FL  32207-9024
                              Phone: (904) 398-7036
                              Fax: (904) 398-4283

                              Attorneys for Developers Diversified Realty Corp.,
                              Weingarten Realty Investors, RMC Property Group,
                              Four Florida Shopping Centers, Curry Ford LP,
                              WRI/TEXLA, LLC, and Palm Springs Mile
                              Associates, Ltd.

# EXHIBIT A

| **Landlord** | **Store No.** | **Location Name** | **Debtors' Proposed Cure Amount** | **Landlord Proposed Cure Amount** |
|---|---|---|---|---|
| **Developers Diversified Realty Corp.** | 167 | Jackson Regional | $0 | $55,299.07 |
| | 631 | Highlands Plaza | $16,110.00 | $31,240.97 |
| | 1766 | Turfway Shopping Center | $0 | $31,869.26 |
| | | | | |
| **Weingarten Realty Investors** | 218 | Embassy Lakes Shopping Center | $57,383.00 | $88,595.75 |
| | 222 | Vizcaya Square | $71,770.00 | $132,564.36 |
| | 359 | TJ Maxx Plaza | $0 | $273,110.76 |
| | | | | |
| **WRI/TEXLA** | 1537 | Town & Country | $46,526.00 | $107,071.42 |
| | | | | |
| **RMC Property Group** | 777 | University East | $900.00 | $3,900.00 |
| | | | | |
| **Four Florida Shopping Centers** | 375 | Forest Hill Center | $14,839.00 | $19,339.00 |
| | 2211 | Oakbrook Plaza | $13,409.00 | $30,496.42 |
| | | | | |
| **Curry Ford LP** | 2267 | Curry Ford East Shopping Center | $5,442.00 | $15,330.64 |
| | | | | |
| **Palm Springs Mile Associates, Ltd.** | 243 | Palm Springs Mile Shopping Center | $1,500.00 | $4,500.00 |

**EXHIBIT B**

1       IN THE UNITED STATES BANKRUPTCY COURT

         NORTHERN DISTRICT OF ILLINOIS

2            EASTERN DIVISION

3

4   In re:                )

                       )  No. 02 B 02474

5   KMART CORPORATION, et al.,)  Chicago, Illinois

                       )  March 26, 2003

6           Debtors.   )  4:30 p.m.

7

8          TRANSCRIPT OF PROCEEDINGS

     BEFORE THE HONORABLE SUSAN PIERSON SONDERBY

9

10

   APPEARANCES:

11

   MR. VAN C. DURRER

12  on behalf of the debtors.

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  Calling Kmart, 02 2474.

2          THE COURT:  All right.  I'm going to read my

3   oral ruling into the record.

4                This matter comes before the court on

5   the motion of debtors for order pursuant to 11

6   U.S.C. Section 365(d)(4) further extending the

7   deadline to assume or reject unexpired leases of

8   nonresidential real property for certain closing

9   stores.

10               On January 22nd, 2002, Kmart and 37

11  affiliates, collectively referred to as Kmart, filed

12  voluntary petitions for reorganization under Chapter

13  11 of the Bankruptcy Code.  The cases are being

14  jointly administered.

15               On January 24th, 2003, Kmart filed a

16  joint plan of reorganization and related disclosure

17  statement.  On February 25th, 2002, the court

18  entered an order approving -- strike that.  That

19  should be February 25th, 2003, the court entered an

20  order approving the adequacy of the disclosure

21  statement with respect to first amended joint plan

22  of reorganization dated February 25th, 2003.

23               The hearing on confirmation of the plan

24  is scheduled for April 14th and 15th, 2003.

25               At the petition date, Kmart was

1    operating approximately 2,114 stores throughout the

2    United States and elsewhere.  A great number of

3    these stores are subject to leases with various

4    landlords.

5              Shortly after the petition date, Kmart

6    announced that it would close 283 stores.  On March

7    21, 2002, the court granted Kmart's motion for

8    authority to conduct closing stores -- strike that.

9    Closing sales at these stores.

10             The court entered an order on January

11   28th, 2003, authorizing the debtors to conduct a

12   second wave of store closing sales at approximately

13   300 more Kmart stores.  The court will refer to

14   those stores collectively as the "closing stores."

15   Kmart anticipates that the closing sales at the

16   closing stores will be completed by the end of April

17   2003.  At the end of those sales, it is anticipated

18   that all inventory will have been sold and vacant

19   nonoperating stores, some of which are located in

20   shopping centers, will remain.

21             Section 365(d)(4) of the Code provides

22   that any unexpired lease of nonresidential real

23   property that is not assumed or rejected within 60

24   days of the petition date is deemed rejected.  The

25   court previously extended that 60-day deadline in

1    the Kmart case, quote, "through and including the

2    date of confirmation of a plan of reorganization,

3    but no later than March 31, 2003," end the quote,

4    for some leases and, quote, "through and including

5    the date of confirmation of a plan of

6    reorganization, but no later than July 31, 2003,"

7    end of quote, for other leases.

8                On February 5th, 2003, the debtors

9    filed a motion to further extend the deadline to

10   assume or reject the unexpired leases for the

11   closing stores to 270 days after the effective date

12   of the plan.  At the initial hearing on the motion,

13   Kmart modified its request to extend the deadline

14   to the earlier of plan confirmation or November

15   25th, 2003, without prejudice to seeking a further

16   extension.  At the continued hearing on the motion,

17   Kmart modified its request again, seeking to extend

18   the deadline to November 25th, 2003, with no further

19   extensions and no reference to plan confirmation.

20               The stated goal of Kmart extending the

21   assumption/rejection deadline on the closing store

22   leases is to preserve, maximize and harvest the

23   value of those leases for the estate.  Two companion

24   motions were filed by Kmart:  A motion to approve

25   procedures for assuming or rejecting the closing

1    store leases, and a motion for authority to enter a

2    joint venture agreement with Kimco Realty

3    Corporation for the purpose of marketing the closing

4    store leases.

5              At least 54 landlords and other parties

6    in interest filed objections to the proposed

7    extension.  Kmart advises that these objections

8    covered 129 of the closing store leases.  At the

9    initial hearing on the motion on February 25th,

10   2003, the court continued the hearing to March 25th,

11   2003.  In the interim, the parties filed briefs in

12   support of and in opposition to the requested

13   relief.

14             Since the initial hearing, Kmart

15   advises that numerous resolutions were reached

16   between the landlords and Kmart.  Forty-four

17   objectors withdrew their objections.  There are six

18   stores where Kmart and the subject lessors will

19   enter into lease termination agreements, which will

20   moot the requested relief.  Finally, Kmart agreed to

21   withdraw its request for extension with respect to

22   16 of the closing store leases.  Taking these

23   resolutions into account, objections concerning 57

24   of the closing store leases remained when the

25   continued hearing began.

1              At the continued hearing, the court

2    heard testimony from three witnesses in support of

3    Kmart's request and four witnesses on behalf of

4    certain landlords.

5              After considering the testimony, the

6    pleadings and arguments of counsel, the court has

7    concluded that there are a number of reasons not to

8    grant the requested relief, which the court will

9    address in turn.

10             First, the court lacks authority to

11   extend the assumption/rejection deadline if that

12   extension is premised on someone other than the

13   trustee, or debtor-in-possession, having the right

14   to make the decision to assume or reject the closing

15   store leases.

16             Section 365(a) of the Code states,

17   quote, "Except as provided in Sections 765 and 766

18   of this title and subsections (b), (c) and (d) of

19   this section, the trustee, subject to the court's

20   approval, may assume or reject any executory

21   contract or unexpired lease of the debtor," end of

22   quote.  11 U.S.C. Section 365(a).

23             The United -- strike that.  The Supreme

24   Court has held that when a section of the Code

25   states that only the trustee, or

1   debtor-in-possession, is empowered to invoke the

2   provision of that section, no other party may do

3   so.   Citing Hartford Underwriters Insurance Company

4   versus Union Planters Bank N.A., 530 U.S. 1.

5   Granted, Hartford concerned the power to surcharge

6   collateral under Section 506(c) of the Code, but the

7   court's reasoning is persuasive with respect to

8   Section 365(a).

9            Extending the deadline beyond plan

10  confirmation is also contrary to legislative intent.

11            Prior to the enactment of the shopping

12  center amendments, the Code provided that a debtor

13  could assume or reject unexpired leases anytime

14  prior to plan confirmation.  See In re Bradlees

15  Stores, Inc., 95 B 42777 through 42784; In re

16  Grayson-Robinson Stores, Inc., 227 F.Supp. 609.  The

17  open-endedness of the time period encouraged a

18  practice that often resulted in lengthy delays in

19  making a decision on a lease.  Many commercial

20  lessors were prejudiced by the uncertainty caused by

21  the delay.

22            As explained by Judge Katz, the

23  shopping center amendments in 1984 were enacted to

24  remedy that delay by reducing the time for the

25  election.  Quote, "Under the Code as it existed

1    prior to the 1984 amendments, a Chapter 11 debtor

2    had until confirmation of a plan of reorganization

3    to elect to assume or reject an unexpired lease.  A

4    Chapter 11 trustee could wait almost indefinitely,

5    until confirmation of the plan, to decide to assume

6    the lease.  In the meantime, the landlord was left

7    in limbo.  If the debtor had vacated the premises,

8    for example, the landlord could not get a new tenant

9    because the trustee might later decide to assume the

10   lease.  This situation was especially serious in

11   shopping center scenarios where a vacancy in one

12   store hurt all the other tenants because of reduced

13   customer traffic in the center as a whole.  In fact,

14   Congress intended a remedy -- strike that.

15   "Intended to remedy the problems caused shopping

16   centers and their solvent tenants arising from the

17   administration of the Code by adopting what was

18   commonly referred to as the 'shopping center

19   bankruptcy amendments.'  Part of those adopted

20   amendments included Section 365(d)(4).  In adopting

21   Section 365(d)(4), Congress intended to shorten the

22   trustee's decision-making process," end of quote.

23   Citing Judge Katz' decision in In re Joseph C.

24   Spiess, 145 BR 597.

25                   Further, Senator Hatch stated the

1   rationale for adopting Section 365(d)(4) as

2   follows:  Quote, "In all but the most complicated

3   reorganization cases, 60 days should be a sufficient

4   period to make this determination to assume or

5   reject.  Even in large reorganization cases, the

6   debtor presumably knows his own business and

7   understands the value of his assets well enough to

8   make such decisions within 60 days.  Also, the

9   debtor is generally well aware in advance that a

10  bankruptcy may be necessary and can plan ahead to

11  decide which leases should be retained.  The debtor

12  should consequently be able to make this

13  determination shortly after the petition is filed

14  and certainly within 60 days in all but the most

15  complicated cases," end of quote.  130 Congressional

16  Record S8891 and S8894-95.

17           It is true that Section 365(d)(4) does

18  not expressly provide for an outside date for

19  assumption or rejection.  This omission of an

20  outside date for the decision, however, cannot be

21  interpreted to mean that leases can be assumed or

22  rejected post-confirmation, in light of pre-Code

23  practice and the clear legislative intent to protect

24  landlords.  See Bradlees Stores.

25           Kmart argues that despite the language

1    of Section 365(a), the extension can reach into the

2    post-confirmation time period because of Section

3    1123(b)(3) of the Code.   Section 1123(b)(3)

4    provides, subject to subsection (a) of this section,

5    a plan may, (3), provide for, (A), the settlement or

6    adjustment of any claim or interest belonging to the

7    debtor or to the estate; or, (B), the retention and

8    enforcement by the debtor, by the trustee, or by a

9    representative of the estate appointed for such

10   purpose, of any such claim or interest.   11 U.S.C.

11   Section 1123(b)(3).

12          This section has been used to appoint

13   plan trustees or representatives to settle or adjust

14   claims such as preference recovery actions -- strike

15   that.   Preference recovery claims.   See In re

16   Churchfield Management & Investment Corporation, 122

17   BR 76.   There is no similar Code provision, however,

18   expressly allowing a plan representative to exercise

19   the decision-making authority with respect to

20   leases.   In fact, a reading of Section 1123(b)(2)

21   mitigates against finding such authority.

22          Section 1123(b)(2) of the Code

23   provides, subject to subsection (a) of this section,

24   a plan may be subject to Section 365 of this title,

25   provide for the assumption, rejection, or assignment

1    of any executory contract or unexpired lease of the

2    debtor not previously rejected under such section.

3    Citing 11 U.S.C. Section 1123(b)(2).

4              Unlike subsection (b)(3), however,

5    there is nothing stated in subsection (b)(2) about

6    giving a plan representative the decision-making

7    authority on unexpired leases.  It would have been

8    easy for Congress to bifurcate 1123(b)(2) as it did

9    (b)(3), but it did not.  Kmart cannot rely on

10   1123(b)(3) and have the court ignore the language of

11   1123(b)(2), which more directly addresses the issue

12   of assumption and rejection of leases in a plan and

13   is expressly conditioned upon Section 365, which

14   addresses who can exercise the power to assume or

15   reject.  See In re Fesco Plastics Corp., Inc., 996

16   F.2d 152.

17             Kmart contends that Section 1123(b)(2)

18   is permissive, allowing for what a plan may provide,

19   not mandating a plan provision.  So a debtor can

20   either file a motion to assume or reject or include

21   a provision in its plan.  But if the debtor decides

22   to incorporate rejection and assumption of leases in

23   its plan, then it is mandatory that such permissive

24   use is subject to the requirements of Section 365.

25   Again, the language of Section 365 gives the

1    trustee, and no one else, authority to exercise the

2    decision-making authority on the leases.  That

3    requirement cannot be avoided by bringing a motion.

4                In another argument, Kmart, the

5    unsecured creditors committee and the financial

6    institutions committee rely on Section 1141(b) of

7    the Code and the cases In re Consolidated Pioneers

8    Mortgage Entities, 264 F.3d 803; In re Hillis

9    Motors, Inc., 997 F.2d 581; In re TSP Industries,

10   Inc., 117 BR 375; and In re Prince, 60 BR 270.  None

11   of these cases, however, are directly on point.  The

12   cases do lend support to the proposition that the

13   typical reversion of estate assets to the debtor

14   upon confirmation can be modified by a plan.  They

15   do, however, discuss whether interests in unexpired

16   unassumed leases are among those assets that can

17   vest in a plan representative in light of Sections

18   365(a) and 1123(b)(2).

19               Finally, there is a lack of meaningful

20   case law precedent to support an extension beyond

21   plan confirmation.  Most of the cases cited by Kmart

22   in its motion or brief in support of its request do

23   not directly involve the relief requested here.

24   Some of the cited opinions may involve cases where

25   plans contained similar extension provisions, but

1    there is no way for the court to tell whether the

2    issue was litigated, fully briefed, or even

3    considered.

4            In this matter, upon plan confirmation,

5    Kmart will cease to be a debtor-in-possession and

6    can no longer exercise the rights, powers and duties

7    of a trustee pursuant to Section 1107(c) of the

8    Code.  Kmart's goal is to obtain plan confirmation

9    in April of 2003.

10           November 25th, 2003, is past the

11   anticipated confirmation date.  For the portion of

12   the extension that occurs after confirmation, Kmart

13   proposes in its plan that the decision to assume or

14   reject the closing store leases will be made by a

15   responsible officer who will be appointed pursuant

16   to Section 1123(b)(3) of the Code to administer the

17   interests of Kmart in the closing store leases,

18   which will include making the decision to assume or

19   reject those leases.  Since, for the reasons already

20   stated, the election to assume or reject must be

21   made prior to plan confirmation by a trustee or

22   debtor-in-possession, any order granting an

23   extension would have to limit the extension to no

24   later than confirmation.

25           Moreover, even if there were no legal

1   impediments to the relief requested, Kmart has not

2   demonstrated cause for the further extension.

3                   The factors that courts can consider in

4   deciding to extend the assumption/rejection deadline

5   include whether the lease is the primary asset of

6   the debtor, whether the debtor has had time to

7   intelligently appraise its financial situation and

8   the potential value of its assets, whether the

9   lessors will be damaged beyond compensation

10  available under the Code due to the debtor's

11  continued occupation, whether the case is

12  exceptionally complex and involves a large number of

13  leases, whether the need exists for a judicial

14  determination that the lease is disguised as

15  security interest, whether the debtor has failed or

16  is unable to formulate a plan, or any other factors

17  bearing on whether the debtor has had a reasonable

18  amount of time in which to decide to assume or

19  reject the lease.  Citing In re Service Merchandise

20  Company, Inc., 256 BR 744.  The debtor has the

21  burden to demonstrate that an extension is

22  warranted.  Citing In re Wedtech Corp., 72 BR 464.

23                  Kmart has not met its burden.  The

24  leases subject to this motion are for stores that

25  are closing or have already closed.  Obviously the

1   reorganized Kmart will not be operating from those

2   stores.  The witnesses presented on behalf of Kmart

3   testified that the sole goal in the extension is to

4   have enough time to market the closing store leases

5   in order to eventually arrive at definitive purchase

6   agreements for those leases.  None of the witnesses

7   testified that the group of closing store leases

8   constitute a primary asset.

9              Mr. Hutchinson testified in response to

10  the questions of one landlord, Heritage Development,

11  that the plan would not, quote, "crumble," end of

12  quote, if Kmart did not have more time to decide

13  whether to assume or reject Heritage's three

14  leases.  There was no testimony that the plan would

15  quote, "crumble," end of quote, if Kmart did not

16  have additional time with respect to all of the

17  closing store leases.  In fact, Mr. Edwards of Kimco

18  admitted on cross-examination by another landlord,

19  Devon Lincoln Properties, that the closing store

20  leases were not integral to the reorganization.

21             At the most, the evidence only

22  indicates that it is, quote, "important," end of

23  quote, that Kmart have the ability to market the

24  closing store leases.  It is difficult to agree with

25  this assessment of importance, however, since none

1    of the witnesses were able to provide a reasonable

2    estimation of the net value that Kmart anticipates

3    receiving at the conclusion of the marketing

4    efforts.  There is a general estimate that Kmart

5    will receive a gross amount of proceeds of between

6    50 and $100 million from the closing store leases.

7    There is no evidence as to the carrying costs, such

8    as rent and utilities or marketing costs or other

9    costs that need to be deducted from that gross

10   estimate of proceeds.

11              This economic uncertainty cannot serve

12   as support for the proposition that the closing

13   store leases are primary assets of Kmart.  In this

14   regard, the court also notes that Kmart knew that

15   the harvest season on all of these leases may very

16   well end at plan confirmation.  If these closing

17   store leases were such primary assets, it seems that

18   Kmart would have timed the plan confirmation hearing

19   to avoid the risk that the assumption/rejection

20   deadline would not be extended beyond confirmation.

21              Kmart, with the help of numerous

22   advisers, including Rockwood Gemini, who was

23   retained shortly after the petition date, Abacus

24   Realty and Miller Buckfire, have had approximately

25   15 months to examine the closing store leases and

1    come to a decision on whether to assume or reject

2    those leases.   The prior extension of the deadline

3    was given in part to allow Kmart to gauge the

4    results of the 2002 Christmas holiday season, which

5    has now passed.

6              Kmart asserts that it needs additional

7    time so that Kimco, who just became involved with

8    respect to the closing stores approximately four

9    weeks ago and whose retention is in question, can

10   have more time to market.   The evidence adduced on

11   this point, however, does not demonstrate that the

12   15 months already allowed was insufficient to

13   complete an intelligent appraisal of Kmart's

14   financial situation and its lease portfolio.

15             On this point, there was some testimony

16   concerning the diversion of attention to other

17   matters generally in the case, as well as testimony

18   that Kmart could not finalize its lease decisions

19   without the results of the 2002 holiday season.   In

20   light of the fact that Kmart has had one year and

21   three months to complete its review, this testimony

22   does not adequately explain why the analysis is not

23   yet complete.

24             These cases are large and complex, and

25   that was a factor in granting the extension in the

1    first instance.  The circumstances have changed

2    since the initial extension, as the number of leases

3    that Kmart and its advisers have to consider has

4    dropped to approximately 300, and, as stated before,

5    the holiday season has passed.  So the complexity

6    and size of case have lesser impact on the analysis.

7              Kmart, to its credit, to its great

8    credit, has proposed a plan and is now poised to

9    proceed to plan confirmation.  There is no need to

10   postpone the assumption/rejection deadline to afford

11   Kmart additional time to formulate a plan.

12             In conclusion, even if the court had

13   authority to grant the requested relief, Kmart has

14   not demonstrated cause for a further extension.  It

15   is the court's understanding that certain landlords

16   who were subject to the March 31st deadline have

17   agreed to an extension to the earlier of plan

18   confirmation or May 31, 2003.  It is unclear whether

19   all landlords subject to the March 31st deadline

20   have so agreed.  To ensure that all landlords

21   subject to the March 31st deadline are treated the

22   same, the court will extend the existing deadline,

23   which is the earlier of March 31, 2003, or plan

24   confirmation, to the earlier of plan confirmation or

25   May 31, 2003.  The other deadline, which is the

1    earlier of plan confirmation or July 31, 2003, will

2    remain the same for all landlords subject to that

3    deadline.

4            Would you give me a minute order,

5    please, for reasons cited on the record denying the

6    relief requested.

7            I have two questions:  One is do you

8    know at this juncture how this ruling is going to

9    affect the store closing procedures and the Kimco

10   motions?

11       MR. DURRER:  Your Honor, Van Durrer on behalf

12   of Skadden, Arps, Slate, Meagher & Flom for Kmart

13   Corporation and the other debtors.

14           Your Honor, I don't think it would have

15   any impact on the Kimco motion.  Obviously we'll

16   assess the court's ruling and advise the court if

17   there is any change.  But as of right now, I don't

18   think there will be.

19           As to the rejection procedures, we had

20   planned to submit an order on that, and I don't

21   believe it's going to change that either.  We still

22   plan to act on any quick decisions to reject on that

23   ten-day notice period.

24       THE COURT:  All right.  Also, do you want

25   your exhibits returned?

1          MR. DURRER:  We would be happy to take them

2     back, your Honor.

3          THE COURT:  All right.  We'll be happy to get

4     rid of them.

5               Let me ask you this:  If you haven't

6     each signed in -- did everyone in the courtroom sign

7     in?

8          THE CLERK:  I think they did up there.

9          THE COURT:  Was there a sign-in sheet?  All

10    right.  We'll make that part of the record for

11    today's proceedings.  Is there anything else today?

12               (No response.)

13         THE COURT:  I wish you a good weekend.  Thank

14    you.

15         MR. DURRER:  Thank you, your Honor.

16               (Which were all the proceedings

                  had in the above-entitled cause,

17                March 26, 2003.)

18    I, GARY SCHNEIDER, C.S.R., R.P.R., DO HEREBY

      CERTIFY THE FOREGOING IS A TRUE AND

19    ACCURATE TRANSCRIPT OF PROCEEDINGS

      HAD IN THE ABOVE-ENTITLED CAUSE.

20

21

22

23

24

25

<u>**CERTIFICATE OF SERVICE**</u>

On June 30, 2006, I caused to be served the *Objection of Developers Diversified Realty Corp., Weingarten Realty Investors, RMC Property Group, Four Florida Shopping Centers, Curry Ford LP, WRI/TEXLA, LLC, and Palm Springs Mile Associates, Ltd. to Debtors' Amended Omnibus Motion for Order to (I) Assume Non-Residential Real Property Leases, (II) Fix Cure Amounts, and (III) Grant Related Relief,* upon the parties listed below via email, telecopier and United States First Class mail.

| | |
|---|---|
| David J. Baker, Esq.<br>Skadden Arps Slate Meagher & Flom, LLP<br>Four Times Square<br>New York, NY  10036<br>Fax: 212-735-2000<br>djbaker@skadden.com | Cynthia C. Jackson, Esq.<br>Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, Fl.  32201<br>Fax:  904-359-7708<br>cjackson@smithhulsey.com |
| Jonathan N. Helfat, Esq.<br>Daniel Fiorillo, Esq.<br>Otterbourg, Steindler, Houston & Rosen, P.C.<br>230 Park Avenue<br>New York, NY  10169<br>Fax:  212-682-6104 | Dennis F. Dunne, Esq.<br>Matthew Scott Barr, Esq.<br>Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, NY  10005<br>Fax:  212-530-5219 |

/*s*/ *Robert R. LeHane*

16