IN THE UNITED STATE BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re

**WINN-DIXIE STORES, INC.,** *et al.*

Debtors.

Chapter 11

Case No. 05-03817-3F1

Jointly Administered

## RESPONSE OF ESTATE OF H.C. PLUNKETT TO DEBTORS' THIRTEENTH OMNIBUS OBJECTION TO CLAIMS

The Estate of H.C. Plunkett ("Plunkett Estate"), by its undersigned counsel, files this Response (the "Response") to the Thirteenth Omnibus Objection to Claims (the "Objection") of the Debtors (as hereinafter defined), and states as follows:

1.      On or about June 13, 2006, Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries (collectively, the "Debtors") filed their objection to the proof of claim filed by the Estate of H.C. Plunkett (the "Plunkett Estate") in the amount of $1,104,476.18. The Debtors assert that the claim of the Plunkett Estate (Claim No. 12292) was an "overstated" claim and should be reduced by $854,313.32 to $250,162.86.

2.      The Debtors contend that the "reduced amount reflects removal of $39,425.72 for overstated rejection damages for Store Number 1346 and $814,887.60 asserted for Store Number 1306 as Claimant assigned its rights to, and related claim was filed by, its Lender."

3.      H.C. Plunkett was the landlord for two stores in Mississippi in which Winn-Dixie Louisiana, Inc. was the tenant[1]. These stores were Winn-Dixie Store Number 1306,

---

[1] With respect to both the Brandon Store and the Forest Store, the Debtor was the successor-in-interest to Jitney-Jungle Stores of America, Inc. ("Jitney"). Winn-Dixie Stores of Louisiana, Inc ("W-D LA") acquired both the Brandon Store Lease and the Forest Store Lease pursuant to that

located 5653 Highway 25, Brandon, MS (the "Brandon Store") and Winn-Dixie Store Number 1346, located 476 West 3rd Street, Forest, MS (the "Forest Store"). The Plunkett Estate is the representative of and successor to H.C Plunkett, who died in January 2005.

    4.    H. C. Plunkett, as Landlord, entered into a Lease dated June 15, 1995, with Jitney, as Tenant for the Brandon Store. A copy of the Lease for the Brandon Store is attached hereto as Exhibit "A" (the "Brandon Store Lease"). The Brandon Store Lease is a triple-net lease, in that the tenant was responsible for the payment of not only rent, but also real estate taxes, insurance and maintenance. Specifically, the Brandon Store Lease provided, in Paragraphs 12 and 13, as follows:

> 12    NET LEASE. Except as otherwise provided elsewhere in this Lease, it is understood and agreed that this is a net lease; that Tenant shall, during the term of this Lease and any renewal thereof, pay all costs of any kind and description levied against the Premises or the uses Tenant makes of it including, but not limited to, all real estate, personal property and other taxes and assessments, utility bills and governmental charges;

> 13.    INSURANCE. Tenant shall, during the term of this Lease and any renewal thereof, at Tenant's sole cost and expense, carry and maintain:

>> (a)    Fire and Extended Coverage and Difference in Condition Insurance covering the Premises in an amount equal to at least eighty percent (80%) of the insurable value thereof;
>> (b)    Public Liability and Property Damage Insurance covering the Premises with limits of not less than $1,000,000 Combined Single Limit Bodily Injury and Property Damage for a single accident or occurrence; and
>> (c)    Loss of Rents Insurance for the benefit of the Landlord in an amount equal to the annualized monthly rent payable by Tenant to Landlord pursuant to the terms of this Lease.

---

certain Assignment and Assumption of Lease Agreement dated January 11, 2001 between Jitney and W-D LA. Winn-Dixie, Inc. (the "Parent Debtor") guaranteed the obligations of W-D LA under the Brandon Store Lease and the Forest Store Lease pursuant to a Corporate Guaranty of Lease Obligations dated January 11, 2001 (the "Guaranty") for each store. W-D LA subsequently was merged into Winn-Dixie Montgomery, Inc ("W-D Montgomery") in 2004, so that W-D Montgomery is the surviving entity.

All such insurance shall name Landlord as an additional insured. . . .

5       Similarly, Plunkett, as Landlord, entered into a Lease dated April 23, 1992, with

Jitney, as Tenant for the Forest Store   A copy of the Lease for the Forest Store is attached

hereto as Exhibit "B" (the "Forest Store Lease").  The Forest Store Lease is also a triple-net

lease, in that the tenant was responsible for the payment of not only rent, but also real estate

taxes, insurance and maintenance   Specifically, the Forest Store Lease provided, in Paragraphs

12 and 13, as follows:

> 12.     NET LEASE.  Except as otherwise provided elsewhere in this Lease, it is
> understood and agreed that this is a net lease; that Tenant shall, during the term of
> this Lease and any renewal thereof, pay all costs of any kind and description
> levied against the Premises or the uses Tenant makes of it including, but not
> limited to, all real estate, personal property and other taxes and assessments,
> utility bills and governmental charges;   . .
>
> 13.     INSURANCE.  Tenant shall, during the term of this Lease and any
> renewal thereof, at Tenant's sole cost and expense, carry and maintain:
>
>> (a)     Fire and Extended Coverage and Difference in Condition
>> Insurance covering the Premises in an amount equal to at least eighty
>> percent (80%) of the insurable value thereof;
>> (b)     Public Liability and Property Damage Insurance covering the
>> Premises with limits of not less than $1,000,000 Combined Single Limit
>> Bodily Injury and Property Damage for a single accident or occurrence;
>> and
>> (c)     Loss of Rents Insurance for the benefit of the Landlord in an
>> amount equal to the annualized monthly rent payable by Tenant to
>> Landlord pursuant to the terms of this Lease.
>
> All such insurance shall name Landlord as an additional insured   . .

6.      On September 8, 2005, this Court entered an Order Granting the Debtors'

Motion (i) to Sell Leasehold Interests in Targeted Stores Free and Clear of Liens, Claims and

Interests and Exempt from Taxes, (ii) to Assume and Assign Leases, (iii) to Reject Targeted

Leases the Debtors are Unable to Sell, and (iv) Granting Related Relief (Docket No. 3405) ( the "Order").

7.      Pursuant to the Order, the Debtors served a Notice of Rejection of Unexpired Lease on the Plunkett Estate, giving notice that the Debtors intended to reject the Leases for both the Brandon Store and the Forest Store. The stated effective date of the lease rejection was September 24, 2005, but the Debtors did not deliver possession of or keys to the Brandon Store and the Forest Store until September 30, 2005.

8.      The Plunkett Estate calculated its claim for lease rejection damages in accordance with Section 502(b)(6) of the Bankruptcy Code, which governs the amount of allowable claims against a bankruptcy estate for a rejected lease. Subsection (b)(6) limits the amount of the claim of a landlord for damages resulting from the termination of a lease of real property to " . . . the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease . . ." 11 U.S.C. § 502(b)(6).

Rejection Damage Claim – Brandon Store (W-D Store No. 1306).

9.      The Lease on the Brandon Store, dated June 15, 1995, was for a 20-year term. The Lease required monthly rent during the primary term of $34,833.33, which computes to $417,999.96 per year, or $1,145.21 per day. In addition, the Lease calls for the Tenant to be responsible for the taxes and insurance for the Brandon Store. For 2004, ad valorem taxes were $61,753.51, or $169.19 per day. Annual insurance premiums are $72,774.84, or $199.38 per day. The total annual charges for rent, taxes and insurance for the Brandon Store are $552,528.31 or $1,513.78 per day.

10.     By its Order dated September 8, 2005, the Bankruptcy Court authorized the Debtor to reject the Lease, and the effective date of the rejection of the Lease was to have been September 24, 2005 (even though the Landlord did not receive possession of or keys to the Brandon Store until September 30, 2005) The remaining term of the Lease, therefore, was 9 years, 8 months, and 21 days, or a total of 3,550 days  Fifteen percent (15%) of the remaining term is 532.5 days, which is greater than one year. The total of the daily charges for rent, taxes and insurance of $1,513.78 times 532.5 days is $806,087.85, which is the amount of the Proof of Claim for lease rejection damages for the Brandon Store.

Rejection Damage Claim – Forest Store (W-D Store No. 1346)

11.     The Lease on the Forest Store, dated April 23, 1992, was for a 20-year term. According to the Agreement Supplementing Lease, dated January 21, 1993, the initial term of the Lease began on January 14, 1993 when the Forest Store opened for business. The Lease required monthly rent during the primary term of $13,866.66, which computes to $166,399.92 per year, or $455.89 per day. In addition, the Lease calls for the Tenant to be responsible for the taxes and insurance for the Forest Store  For 2004, ad valorem taxes were $11,866.92, or $32.51 per day. Annual insurance premiums are $72,774.84, or $199.38 per day  The total charges for rent, taxes and insurance for the Forest Store are $251,041.68 or $687.78 per day.

12     The Bankruptcy Court authorized the Debtor to reject the Lease on the Forest Store, and the effective date of the rejection of the Lease was to have been September 24, 2005 (even though the Landlord did not receive possession of or keys to the Forest Store until September 30, 2005). The remaining term of the Lease, therefore, was 7 years, 3 months, and 21 days, or a total of 2,669 days. Fifteen percent (15%) of the remaining term is 400.35 days, which is greater than one year  The total of the daily charges for rent, taxes and insurance of

$687.78 times 400.35 days is $275,352.72, which is the amount of the Proof of Claim for lease rejection damages for the Forest Store.

### Total Rejection Damage Claims

13.   The lease rejection damages for the Brandon Store are $806,087.85, and the lease rejection damages for the Forest Store are $275,352.72. The total lease rejection claim of the Estate of H.C. Plunkett is $1,081,440.57.

### Insurance is a Proper Element of Lease Rejection Damages

14.   The Debtors contend that insurance on the properties is not a proper element in of the lease rejection claim of the Plunkett Estate. Both the Brandon Store Lease and the Forest Store Lease, however, are triple-net leases where the tenant was responsible for the payment of not only rent, but also real estate taxes, insurance and maintenance.

15.   The case law relating to the damages properly charged under 11 U.S.C. § 502(b)(6) permit insurance as a proper element of damages. In *In re McSheridan*, 184 B.R. 91 (9th Cir. BAP 1995), the Court addressed the following issue: "Whether, in a triple-net lease, the phrase "rent reserved by such lease" of § 502(b)(6)(A) includes other expenses not designated as "rent" or "additional rent." The Court fashioned a three-part test, and held that for an additional charge to be included within a Section 502(b)(6) damage claim:

1)   The charge must: (a) be designated as "rent" or "additional rent" in the lease; or (b) be provided as the tenant's/lessee's obligation in the lease;

2)   The charge must be related to the value of the property or the lease thereon; and

3)   The charge must be properly classifiable as rent because it is a fixed, regular or periodic charge.

184 B.R. at 99-100. *See also Kuehner v Irving*, 299 U.S. 445, 57 S.Ct 298, 81 L.Ed 340 (1937), where the Supreme Court in *dicta* indicated that "rent reserved" must have some relationship to the value of the property and the value of the lease on the property and its use.

16. Other courts applying this standard have also found that a claim for insurance under a triple-net lease is a proper element in a Section 502(b)(6) claim For example, in *In re Crown Books*, 291 B.R. 623, 627 (Bankr. Del. 2003), Judge Walrath allowed inclusion of insurance premiums in a Section 502(b)(6) claim, after first finding:

> In this case, the base rent, CAM charges, insurance premiums, and property taxes are the Debtor's obligation under the Lease, are related to the value of the property, and are regular periodic charges.

17. In *In re Farley*, 146 B.R. 739 (Bankr. N.D. Ill 1992), the Court also found that insurance premiums were included within the meaning of "rent reserved" under Section 502(b)(6):

> "Rent reserved" under 11 U.S.C § 502(b)(6)(A) is any payment specifically denominated as rent It includes any payments that relate directly to or increase the value or worth of the property, and are fixed, regular payments. *See In re Heck's,* 123 B.R. 544, 546 (S.D.W.Va. 1991) (rent reserved includes minimum rent, real estate taxes, insurance and common area maintenance fees but did not include costs incurred when lease was terminated such as new keys, electrical repairs, and a new sign).
>
> The lease provides for a minimum annual rental payment of $3,725,000. However, rent reserved in a "triple" net lease, such as the one in this case, includes taxes and insurance premiums--$24,000 and $30,000 respectively. Thus, these items must be included in calculating "rent reserved".

146 B.R. at 746

18 In *In re Rose's Stores, Inc*, 179 B.R. 789 (Bank. E.D N.C. 1995), Judge Small set forth a two-part test for determining whether a particular charge was within the scope of Section 502(b)(6):

> First, the charge must be provided for in the lease as the tenant's obligation, though it need not be denominated as rent Second, the charge must be related to "the value of the property and the value of the lease thereon." *In re Heck's, Inc.,* 123 B.R. 544, 546

(Bankr.S.D.W.Va. 1991).   The purpose of the statutory cap is to fairly compensate the landlord for its loss due to the breach without allowing such large damages as to deprive other creditors of a reasonable recovery. *In re Farley,* 146 B.R. 739, 744-45 (Bankr. N.D. Ill. 1992) (citations and footnote omitted).   The two-part test adopted here will more equitably achieve this purpose than relying on the labels employed by a lease or than looking to the fixed and periodic method of payment used by other courts.

179 B.R. at 791.  Applying that two-part test to the lease before the Court, Judge Small found

that taxes and insurance were includable in the "rent reserved" of Section 502(b)(6) because

those charges clearly were the tenant's obligation in the lease and were related to the value of the

property and the lease, while general maintenance and utilities were the tenant's responsibility

under the lease and were the kind of charges generally related to the tenant's use of the premises

rather than to the value of the property or the leasehold estate and therefore should not be

included in the Section 502(b)(6) calculation.

      19.     In *In re Clements,* 185 B.R. 895 (Bankr. M.D. Fla. 1995), this Court also

addressed the issue of whether insurance under a net lease was properly included in a Section

502(b)(6) claim.  There, this Court noted:

> The code does speak in terms of the lessor's "damages," but when setting out the calculation to be used, simply uses the word "rent" and does not speak in terms of other damages.     However, the lease at issue in this case, specifically made the lessee responsible for paying the taxes, insurance, and maintenance on the property.   In fact, paragraph 8(d) of the lease states,
>
> > It is the intent of Lessor and Lessee that rent herein specified shall be absolutely net to the Lessor in each month during the term of this lease ...; that all taxes, charges, improvements and other assessments, and all costs, expenses and obligations of every kind relating to the demised premises as provided in the lease which may arise or become due during the term ... shall be paid by Lessee ... Lessee shall and will and does hereby expressly agree to pay all such sums as *"additional rent."* (Emphasis added) (Locomotion Exb. 3)
>
> This language makes it clear that the monthly payment of $5,416.67 was a net payment, and that all sums due for the other expenses were considered "additional rent."

185 B.R. at 902.

20.     Although the lease in *Clements* specifically denominated insurance as an element of "additional rent," that label only clarified the basis of the Court's decision – insurance was included as a proper element of a Section 502(b)(6) claim because the monthly rental payment was a net payment, the lease was a net lease, and the lessee was responsible for paying such payments as insurance.   As this Court noted:

> The legislative history of § 502(b)(6) is instructive because it states that the landlord's "allowed claim is for his *total damages*, as limited by this paragraph ..." H.R. 95-595 to accompany H.R. 8200, 95th Cong. 1st Sess. (1977) pp. 353-355.   (Emphasis added). Moreover, case law supports the idea that the landlord's claim is not limited to merely the rent under the lease.

*Id.*

21.     Applying these principles to the facts of this case, although the leases in question do not make a specific provision for insurance to be "additional rent," all three elements have undeniably been established:

(1)     the parties intended to enter into a triple-net lease, and insurance clearly was to be the tenant's/lessee's obligation in the lease;

(2)     the charge for the insurance relates to the value of the property and the lease; and

(3)     the charge for the insurance is a fixed, regular or periodic charge.

Therefore, the inclusion of insurance in the Proof of Claim filed by the Plunkett Estate should be permitted and the claim allowed in its entirety.

Assignment of Rents

22.     In connection with a financing of the Brandon Store in May 1996 with Jefferson-Pilot Life Insurance Company ("Lender"), H.C. Plunkett executed that certain Absolute Assignment of Rents and Profits and Collateral Assignment of Leases, dated as of May 13, 1996 (the "Assignment"), together with other a Deed of Trust, Security Agreement

and Fixture Filing ("Indenture") as security for the indebtedness evidenced by the promissory note (the "Note") for the loan   (The Note, the Indenture and the Assignment are hereinafter referred to as the "Loan Documents.")  The Loan Documents are attached hereto as Exhibit "C.

23      Paragraph 7(a) of the Assignment granted to the Landlord, so long as no Event of Default has occurred under the Assignment, a license

> to manage the Property, to collect, receive and use all Rents and Profits in accordance with the terms of the Leases; to let the Property and to take all actions which a reasonable and prudent landlord would take in enforcing the provisions of the Leases and Contracts; provided, however, that all amounts so collected shall be applied toward operating expenses, real estate taxes and insurance relating to the Property, capital repair items necessary to the operation of the Property, and the payment of sums due and owing under the Note, the Indenture and this Assignment prior to any other expenditure or distribution by Assignor.

24.      No Event of Default has occurred, and although the Plunkett Estate contends that it is entitled to distribution of the claim with respect to the Brandon Store, the Plunkett Estate and the Lender agree that any distribution on the Claim with respect to the Brandon Store should be paid jointly to the Plunkett Estate and to Jefferson-Pilot Life Insurance Company to address any concern of the Debtor concerning duplicate claims.

25.      Accordingly, the Plunkett Estate renews its request that its claim be allowed in full in the amount of $806,087.85 for the lease rejection damages for the Brandon Store and in the amount of $275,352.72 for the lease rejection damages for the Forest Store, for a total lease rejection claim in the amount of $1,081,440.57.

26.      Consequently, the total unsecured claim of the Estate of H.C. Plunkett for both

pre-petition damages and lease rejection damages in this bankruptcy case, as set forth in its Proof of Claim, is $1,104,476.18, and that claim should be allowed in its entirety

WHEREFORE, the Estate of H.C. Plunkett renews its request that its claim for $1,104,476.18 be allowed as a general unsecured claim.

THIS, the _____6_____ day of July, 2006

HELD & ISRAEL

By: _____

Kimberly Held Israel, Esquire
Florida Bar #47287
Adam N. Frisch, Esquire
Florida Bar #635308
1301 Riverplace Blvd , Suite 1916
Jacksonville, Florida 32207
(904) 398-7038 Telephone
(904) 398-4283 Facsimile

and

BUTLER, SNOW, O'MARA, STEVENS &
 CANNADA, PLLC
Stephen W. Rosenblatt, Esquire
MS Bar #5676
17th Floor, AmSouth Plaza
Post Office Box 22567
(601) 948-5771 Telephone