### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

### NOTICE OF FILING

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates, as debtors and debtors in possession, give notice of filing the attached Fourth Interim Application of The Blackstone Group L.P. as Financial Advisor to the Debtors for Allowance of Compensation for Actual and Necessary Services Rendered and Reimbursement of Actual and Necessary Out-of-Pocket Expenses Recognized During the Period of February 1, 2006 Through May 31, 2006.

Dated:  July 21, 2006.

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP


By ____*s/ D. J. Baker*_____
      D. J. Baker
      Sally McDonald Henry
      Rosalie Gray

Four Times Square
New York, New York 10036
(212) 735-3000
(917) 777-2150 (facsimile)
djbaker@skadden.com

Co-Counsel for Debtors

SMITH HULSEY & BUSEY


By ____*s/ Cynthia C. Jackson*_____
      Stephen D. Busey
      James H. Post
      Cynthia C. Jackson (FBN 498882)

225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Debtors

00525867

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

|  |  |
|---|---|
| In re: | **Case No. 05-03817-3F1** |
| **WINN-DIXIE STORES, INC., et al.,** | *Chapter 11* |
| Debtors. | **Jointly Administered** |

**FOURTH INTERIM APPLICATION OF THE BLACKSTONE GROUP L.P.**
**AS FINANCIAL ADVISOR TO THE DEBTORS FOR ALLOWANCE OF**
**COMPENSATION FOR ACTUAL AND NECESSARY SERVICES RENDERED AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY OUT-OF-POCKET EXPENSES**
**RECOGNIZED DURING THE PERIOD OF FEBRUARY 1, 2006 THROUGH MAY 31, 2006**

<u>**SUMMARY SHEET**</u>

| | |
|---|---|
| Name of Applicant: | The Blackstone Group L.P. |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention Order: | June 3, 2005 |
| Period for which Compensation and Reimbursement is Sought: | February 1, 2006 through May 31, 2006 |
| Total Amount of Compensation Sought as Actual, Reasonable, and Necessary, During these Cases: | $668,000.00 |
| Total Amount of Expenses Sought as Actual, Reasonable, and Necessary, During these Cases: | $55,758.98 |
| Cash Payment Sought: | $280,552.12 |

The total time expended for the preparation of this application was 12 hours and the corresponding compensation requested is $0.00.

This is a ___ monthly    <u>x</u>   interim    ____ final                                    application

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | *Chapter 11* |
| Debtors. | Jointly Administered |

**FOURTH INTERIM APPLICATION OF THE BLACKSTONE GROUP L.P.
AS FINANCIAL ADVISOR TO THE DEBTORS FOR ALLOWANCE OF
COMPENSATION FOR ACTUAL AND NECESSARY SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY OUT-OF-POCKET EXPENSES
RECOGNIZED DURING THE PERIOD OF FEBRUARY 1, 2006 THROUGH MAY 31, 2006**

**TO THE HONORABLE JERRY A. FUNK
UNITED STATES BANKRUPTCY JUDGE:**

### I. Background

The Blackstone Group L.P. ("Blackstone"), financial advisor to the above captioned debtors and debtors-in-possession (collectively, the "Debtors"), respectfully represents:

1.    On February 21, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code").

2.    The Debtors continue in possession of their property, and operate and manage their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.

3.    By order dated April 14, 2005, venue of these cases, having been commenced in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"), was transferred by such Court to the United States Bankruptcy Court for the Middle District of

Florida, Jacksonville Division.  Any orders entered by the New York Court remain in full force and effect before this Court, unless otherwise ordered by this Court.

4.    On February 21, 2005, the Debtors applied for an order authorizing the retention of Blackstone as financial advisor to the Debtors pursuant to an engagement agreement dated February 18, 2005.  The engagement agreement was later modified in June 2005 (the "Modified Engagement Agreement").[1]

5.    On March 4, 2005, the New York Court entered an interim order pursuant to 11 U.S.C. §§ 327(a) and 328 authorizing the employment and retention of Blackstone as financial advisor to the Debtors, effective as of the Petition Date.

6.    On March 15, 2005, the New York Court entered a final order pursuant to 11 U.S.C. §§ 105 and 331 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016, establishing procedures for interim compensation of professionals (the "Procedures").

7.    On June 3, 2005, this Court entered a final order pursuant to 11 U.S.C. §§ 327(a) and 328 authorizing the employment and retention of Blackstone as financial advisor to the Debtors (the "Final Retention Order"), effective as of the Petition Date.  A copy of the Final Retention Order is attached hereto as Appendix A.  A copy of the Modified Engagement Agreement is attached to the Final Retention Order as Exhibit A.

8.    On March 31, 2006, the Debtors applied for an order supplementing the terms of the Debtors' previously approved Retention Order to include the provision that Blackstone provide financial advisory services to the Debtors in connection with the disposition of the Debtors' interests in supermarket operations in the Bahamas.

---

[1] A copy of the Modified Engagement Agreement, which supersedes the engagement agreement dated February 18, 2005, is attached to the Final Retention Order as Exhibit A.

9.  On April 20, 2006, this Court entered an order (the "Supplemental Order") approving the Debtors' application supplementing the terms of the Debtors' previously approved Retention Order to include the provision that Blackstone shall provide financial advisory services to the Debtors in connection with the disposition of the Debtors' interests in supermarket operations in the Bahamas. A copy of the Supplemental Order is attached hereto as Appendix B.

10. This is the fourth interim fee application (the "Fourth Interim Application") of Blackstone for interim allowance of (i) compensation for financial advisory services rendered during the period of February 1, 2006 through May 31, 2006 (the "Fourth Interim Period"); and (ii) reimbursement of out-of-pocket expenses recognized during the Fourth Interim Period.

11. This Fourth Interim Application is made pursuant to the provisions of Sections 328(a), 330 and 331 of the Bankruptcy Code, the Final Retention Order, and the Administrative Order.

## II. The Blackstone Engagement

12. Blackstone was retained by the Debtors as financial advisor to provide the following financial advisory services in connection with a possible restructuring ("Restructuring")[2] of certain liabilities of the Debtors:

(a)    Actively and substantially assist in the evaluation of the Debtors' businesses and prospects;

(b)    Assist in the development of the Debtors' long-term business plan and related financial projections;

(c)    Assist in the development of financial data and presentations to the Debtors' Board of Directors, various creditors and other third parties;

(d)    Analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

---

[2] As used in the Modified Engagement Agreement, a Restructuring shall mean "any restructuring, reorganization plan and/or similar recapitalization of the Company affecting existing or potential debt obligations or other claims including, without limitation, senior debt, junior debt, trade claims, tax claims, general unsecured claims, etc."

(e)    Analyze various restructuring scenarios and the potential impact of these scenarios on recoveries of those stakeholders impacted by the Restructuring;

(f)    Provide strategic advice with regard to restructuring or refinancing the Debtors' obligations;

(g)    Evaluate the Debtors' debt capacity and alternative capital structures;

(h)    Participate in negotiations among the Debtors and its creditors, suppliers, lessors and other interested parties;

(i)    Value securities offered by the Debtors in connection with a Restructuring;

(j)    Advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k)    Assist in arranging debtor-in-possession ("DIP") financing and exit financing for the Debtors, as requested;

(l)    Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services;

(m)    Assist the Debtors in preparing marketing materials in conjunction with possible transactions;

(n)    Assist the Debtors in identifying potential buyers or parties in interest to transactions and assist in the due diligence process;

(o)    Assist and advise the Debtors concerning the terms, conditions and impact of any proposed transactions;

(p)    Assist in the development, evaluation and negotiation of any potential restructuring and/or plan of reorganization and disclosure statement;

(q)    Assist the Debtors in preparing for a chapter 11 filing; and

(r)    Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a restructuring and/or a transaction as requested and mutually agreed.

13.  Pursuant to the terms of the Modified Engagement Agreement as approved by the Final Retention Order, Blackstone is entitled to be compensated as follows:

(a)    A monthly advisory fee ("Monthly Fee") in the amount of $167,000.00 (as further defined in the Modified Engagement Agreement);

(b)    A Restructuring Fee equal to $4,000,000.00 (as further defined in the Modified Engagement Agreement);

(c)    A Transaction Fee(s) (as further defined in the Modified Engagement Agreement); and

(d)    Reimbursement of all reasonable out-of-pocket expenses (as further defined in the Modified Engagement Agreement).

### III. Services Provided By Blackstone During The Fourth Interim Period

14. During the Fourth Interim Period, Blackstone provided financial advisory services to the Debtors, and as provided for under the Modified Engagement Agreement, earned an advisory fee of $167,000.00 per month. The nature of the work performed by Blackstone during the Fourth Interim Period included the following:

**A. Advisory Services Rendered During the Month of February 2006**

- Participated in weekly update calls with management and its other advisors;

- Participated in a Board of Directors meeting;

- Served as liaison to the financial advisors to the Official Committee of Unsecured Creditors, including responding to specific information requests and updating advisors of important developments;

- Met with attorneys and financial advisors to the Official Committee of Unsecured Creditors to provide a business update and to discuss other matters;

- Analyzed inter-company accounts and entity asset and claim balances with respect to separate entity and substantive consolidation scenarios;

- Met with the financial advisors to the Official Committee of Unsecured Creditors to discuss illustrative analyses related to separate entity and substantive consolidation scenarios;

- Prepared a summary of employee incentive plans for the financial advisors to the Official Committee of Unsecured Creditors;

- Developed updated financial projections based on actual results and more recent estimates of business performance;

- Participated in several meetings with management and XRoads personnel to review updated financial projections;

- Analyzed the attributes of potential tax assets and discussed tax issues with KPMG personnel;

- Assisted management and XRoads personnel in the detailed analysis of claims estimates;

- Began the process of soliciting proposals for exit financing, including identifying potential exit financing lenders, assembling relevant materials and meeting with such lenders;

- Participated in discussions regarding the timeline for preparing disclosure documents; and

- Assisted in the management of external inquiries regarding the Debtors and their chapter 11 cases.

## B. Advisory Services Rendered During the Month of March 2006

- Participated in weekly update calls with management and its other advisors;

- Participated in Board of Directors meetings;

- Served as liaison to the financial advisors to the Official Committee of Unsecured Creditors, including responding to specific information requests and updating advisors of important developments;

- Participated in a conference call with the financial advisors to the Official Committee of Unsecured Creditors to discuss an analysis of inter-company balances prepared by Winn-Dixie personnel;

- Analyzed inter-company accounts and entity asset and claim balances with respect to separate entity and substantive consolidation scenarios;

- Developed updated financial projections based on actual results and more recent estimates of business performance;

- Participated in meetings with management and XRoads personnel to review updated financial projections;

- Analyzed the attributes of potential tax assets and discussed tax issues with KPMG and management;

- Contacted a number of potential exit financing lenders;

- Prepared and distributed information packages to potential exit financing lenders;

- Participated in meetings with potential exit financing lenders to assist in their due diligence;

- Facilitated due diligence regarding Bahamas Supermarkets Limited with potential buyers;

- Prepared presentations regarding the sale of W-D (Bahamas) Ltd.'s interest in Bahamas Supermarkets Limited;

- Assisted in negotiating definitive transaction documentation with legal advisors concerning the sale of Bahamas Supermarkets Limited;

- Provided comments to bankruptcy-related motions and press release issued in connection with Bahamas Supermarkets Limited transaction;

- Participated in discussions regarding the timeline for preparing plan of reorganization documents; and

- Assisted in the management of external inquiries regarding the Debtors and their chapter 11 cases.

## C. Advisory Services Rendered During the Month of April 2006

- Participated in weekly update calls with management and its other advisors;

- Participated in a Board of Directors meeting;

- Served as liaison to the financial advisors to the Official Committee of Unsecured Creditors, including responding to specific information requests and updating advisors of important developments;

- Participated in a meeting with XRoads, Skadden and FTI to discuss substantive consolidation issues;

- Participated in meetings with potential exit financing lenders to assist in their due diligence;

- Participated in meetings with management regarding hurricane mitigation plans;

- Prepared hurricane mitigation presentation outlining loss prevention tactics and attributes of potential insurance coverage;

- Developed updated financial projections based on actual results and more recent estimates of business performance;

- Participated in meetings with management and XRoads personnel to review updated financial projections;

- Analyzed the attributes of potential tax assets and discussed tax issues with KPMG and management;

- Contacted potential interested parties regarding the sale of W-D (Bahamas) Ltd.'s interest in Bahamas Supermarkets Limited;

- Facilitated due diligence regarding Bahamas Supermarkets Limited with potential buyers;

- Prepared presentations regarding the sale of W-D (Bahamas) Ltd.'s interest in Bahamas Supermarkets Limited;

- Coordinated efforts with Winn-Dixie and its advisors to review Bahamian regulatory process and relevance for bidder groups;

- Discussed developments and status of Bahamian operations auction with Winn-Dixie, the Official Committee of Unsecured Creditors, the DIP lenders and their respective advisors, consultants and counsel;

- Assisted in negotiating definitive transaction documentation with legal advisors concerning the sale of Bahamas Supermarkets Limited;

- Participated in discussions regarding Plan of Reorganization topics and the timeline for preparing disclosure documents; and

- Assisted in the management of external inquiries regarding the Debtors and their chapter 11 cases.

## D. Advisory Services Rendered During the Month of May 2006

- Participated in weekly update calls with management and its other advisors;

- Participated in meetings with management to review updated business plan and financial projections;

- Completed updated business plan and financial projections based on actual results and more recent estimates of business performance;

- Prepared operational and business plan presentations for, and participated in, a Board of Directors meeting;

- Met with the financial advisors to the Official Committee of Unsecured Creditors to present updated business plan;

- Participated in due diligence calls with the financial advisors to the Official Committee of Unsecured Creditors and Winn-Dixie management;

- Responded to a number of information requests related to the updated business plan and other matters from the financial advisors to the Official Committee of Unsecured Creditors;

- Participated in several drafting sessions and led the effort to prepare a business and case status update presentation to the Official Committee of Unsecured Creditors;

- Participated in calls with financial advisors to the Official Committee of Unsecured Creditors relating to claims;

- Participated in a meeting with counsel, management and the advisors to the Official Committee of Unsecured Creditors regarding substantive consolidation issues;

- Participated in meetings and held conference calls with potential exit financing lenders to assist in their due diligence;

- Prepared a comprehensive analysis of exit financing proposals to review with management;

- Prepared a presentation on behalf of management for the a meeting with a trade credit group;

- Discussed tax issues with KPMG and management;

- Facilitated due diligence regarding Bahamas Supermarkets Limited with potential buyers;

- Conducted an auction for Bahamas Supermarkets Limited;

- Discussed developments and status of auction with management, the Official Committee of Unsecured Creditors, the DIP lenders and their respective advisors, consultants and counsel;

- Participated in discussions regarding Plan of Reorganization topics and the timeline for preparing disclosure documents; and

- Assisted in the management of external inquiries regarding the debtors and their chapter 11 cases.

### IV. The Blackstone Team

15. The financial services set forth above were performed primarily by: Paul Huffard, Senior Managing Director; Erik Katz, Senior Managing Director; Christopher Boyle, Managing Director[3]; Ramesh Chakrapani, Vice President; Paul Schlaack, Vice President; Jamie O'Connell, Associate; Jason Costi, Analyst; and other professionals of Blackstone, as needed. Details of the background and experience of the professionals are provided in Appendix C.

### V. Blackstone's Request for Allowance of Compensation and Reimbursement of Expenses

16. In connection with the financial advisory services rendered by Blackstone on behalf of the Debtors, and set forth above, Blackstone earned Monthly Fees for such services totaling $668,000.00[4], and recognized actual and necessary out-of-expenses in the amount of $55,758.98 during the Fourth Interim Period.  As of the date of this Fourth Interim Application, Blackstone has received payment for fees earned and out-of pocket expenses recognized during the Fourth Interim Period in the amount of $400,800.00 and $40,802.71, respectively. Furthermore, and with respect to the out-of-pocket expenses recognized during the Fourth Interim Period, Blackstone agrees to reduce its reimbursement request in this Fourth Interim Application by $1,604.15 in response to Stuart Maue's review and analysis of Blackstone's second and third interim fee applications.

17. A summary of all fees and out-of-pocket expenses applied for and received to date is attached hereto as Appendix D.

18. Blackstone respectfully submits that the compensation sought in this Fourth Interim Period for services rendered by Blackstone to the Debtors during the Fourth Interim Period is

---

[3] Mr. Boyle is no longer employed at Blackstone.
[4] Amount consists of a Monthly Fee of $167,000.00 per month for the months of February, March, April and May 2006.

fully justified and reasonable based upon (a) the time and labor required, (b) the complexity of the issues presented, (c) the skill necessary to perform the financial advisory services properly, (d) the preclusion of other employment, (e) the customary fees charged to clients in non-bankruptcy situations for similar services rendered, (f) time constraints required by the exigencies of the case and (g) the experience, reputation and ability of the professionals rendering services.

19. Blackstone respectfully submits that the services it has rendered to the Debtors have been necessary and in the best interest of the Debtors and have furthered the goals of all parties in interest.  The effort expended by Blackstone in representing the Debtors, the complexity of the issues and the difficulty in negotiating these cases have been substantial.

20. Blackstone respectfully submits that under all of the criteria normally examined in chapter 11 reorganization cases, the compensation requested by Blackstone is reasonable in light of the work performed by Blackstone in these cases.

21. The amount of the fees and out-of-pocket expenses sought in this application and Blackstone's billing processes are consistent with market practices both in and out of a bankruptcy context.  Blackstone has never billed its clients based on the number of hours expended by its professionals. Accordingly, Blackstone does not have hourly rates for its professionals and, pursuant to the Final Retention Order, Blackstone's professionals have not maintained detailed time records of the work performed for the Debtors.

## VI. Blackstone's Application for Reimbursement of Actual and Necessary Out-Of-Pocket Expenses

22. Out-of-pocket expenses incurred by Blackstone are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client.  Blackstone does not factor general overhead expenses into disbursements

charged to its clients in connection with chapter 11 cases.  Blackstone has followed its general

internal policies with respect to out-of-pocket expenses billed to the Debtors as set forth below,

with any exceptions specifically explained:

(a)      Blackstone's general policy permits its professionals to charge in-office dinner meals to a client after 8:00 p.m. if the employee is required to provide services to the client during such dinnertime.  According to Blackstone general policy, meals charged to a client are capped at $25.00 per meal; however, for purposes of this Application, all in-office meals included herein have been capped at $20.00.

(b)      All airfare charges billed to the Debtors are based on coach rates.

(c)      The External Research category of expenses includes charges from outside computer/electronic service companies that supply, for a fee, research and/or financial documents to Blackstone.  The services provided by these companies primarily consist of the retrieval of financial documents from regulatory agencies and/or the retrieval of research that would not otherwise be available to Blackstone. The Internal Research category of expenses are the charges for time spent by Blackstone research staff in operating the computer/electronic terminals related to these computer/electronic service companies.

(d)      The Document Production category of expenses includes charges from outside service companies that provide, for a fee, high volume photocopying services on an expedited basis to Blackstone; and charges for internal photocopying services provided by Blackstone.  Blackstone bills internal Document Production charges at the rate of $.20 per page for black and white copies, and $.75 per page for color copies.

(e)      The Publishing Services category of expenses includes charges for the production of text-based publications such as reports and presentations, and printing and binding services.

(f)      With respect to local travel, Blackstone's general policy enables employees to travel by taxi or, in certain circumstances private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. Further, and primarily for safety reasons, employees are permitted to charge to a client the cost of transportation home if an employee is required to work past 9:00 p.m. on client specific matters.

(g)      Blackstone bills outgoing long-distance facsimile charges at a rate of $1.25 per page. Blackstone does not bill local or incoming facsimile charges to clients.

23. Blackstone respectfully submits that the out-of-pocket expenses recognized during the

Fourth Interim Period for which Blackstone seeks allowance, and reimbursement of, were

necessary and reasonable both in scope and amount.  Details of the expenses recognized during

the Fourth Interim Period are provided in Appendix E.

24. All services provided by Blackstone for which compensation is requested were

performed for and on behalf of the Debtors after the filing of these cases and were not rendered

on behalf of any other person.

## VII. <u>Requested Relief</u>

**WHEREFORE**, Blackstone requests the Court to:

(a) Approve the allowance of Blackstone's (i) Monthly Fees in the amount of $668,000.00, and (ii) the reimbursement of out-of-pocket expenses recognized in the amount of $55,758.98 for the Fourth Interim Period;

(b) Authorize and direct the Debtors to pay Blackstone's advisory fees and out-of-pocket expenses for the Fourth Interim Period as follows:

| | |
|---|---:|
| Total Monthly Fees | $668,000.00 |
| Total Out-Of-Pocket Expenses | 55,758.98 |
| Less: Expense Adjustment[5] | (1,604.15) |
| Less: Payments Received | (441,602.71) |
| **Amount Due Blackstone** | **$280,552.12** |

(c) Grant such other and further relief as this Court deems just and proper.

---

[5] Adjustment consists of amounts Blackstone agreed to reduce its reimbursement request by in this Fourth Interim Application in response to the Stuart Maue's review and analysis of Blackstone's second and third interim fee applications.

Dated: ___7/13___, 2006

The Blackstone Group L.P.
Financial Advisor to the Debtors

By: _____
Paul P. Huffard
Senior Managing Director
345 Park Avenue
New York, NY 10154

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) **Case No. 05-03817-3F1** |
| | ) |
| **WINN-DIXIE STORES, INC., et al.,** | ) *Chapter 11* |
| | ) |
| Debtors. | ) **Jointly Administered** |
| | ) |

**<u>AFFIDAVIT</u>**

**STATE OF NEW YORK** )
                                           ) ss.:
**COUNTY OF NEW YORK**)

Paul P. Huffard, being duly sworn, deposes and says:

1.  I am a Senior Managing Director of The Blackstone Group L.P. ("Blackstone"), which firm maintains offices for providing financial advisory services at 345 Park Avenue, New York, New York 10154.  Blackstone has acted as financial advisor to and rendered professional services on behalf of the above captioned debtors and debtors-in-possession, and its affiliates (collectively, the "Debtors").

2.  This affidavit is submitted pursuant to Bankruptcy Rule 2016 in connection with Blackstone's fourth interim fee application (the "Fourth Interim Application") for allowance of (i) compensation for advisory services rendered to the Debtors for the period of February 1, 2006 through May 31, 2006 (the "Fourth Interim Period") in the amount of $668,000.00; and (ii) and reimbursement of out-of-pocket expenses recognized during the Fourth Interim Period in the amount of $55,758.98.[1]

---

[1] Amount represents the gross amount of out-of-pocket expenses recognized by Blackstone during the Fourth Interim Period.

3.  All of the services provided by Blackstone for which compensation is sought were performed for and on behalf of the Debtors and not on behalf of any other person.

4.  No agreement or understanding exists between Blackstone and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with these cases.

_____
Paul P. Huffard
Senior Managing Director

Sworn to before me this 13ᵗʰ day of July 2006

JANE E GOLDSTONE
Notary Public - State of New York
NO. 01GO6093331
Qualified in Kings County
My Commission Expires 06/02/07

2563268

2

**APPENDIX A**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

|                                      |     |                         |
| ------------------------------------ | --- | ----------------------- |
| In re:                               | )   | Case No. 05-03817-3F1   |
|                                      | )   |                         |
| WINN-DIXIE STORES, INC., et al.,     | )   | *Chapter 11*            |
|                                      | )   |                         |
| Debtors.                             | )   | Jointly Administered    |
|                                      | )   |                         |

## FINAL ORDER AUTHORIZING DEBTORS TO EMPLOY
## THE BLACKSTONE GROUP, L.P. AS FINANCIAL ADVISORS

These cases came before the Court for hearing on June 2, 2005, upon the

application filed on February 21, 2005 by Winn-Dixie Stores, Inc. and its subsidiaries and

affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"), for entry of an order pursuant to Sections 327(a) and 328 of the Bankruptcy Code

authorizing the Debtors to employ The Blackstone Group, L.P., ("Blackstone") as their financial

advisors in these cases (the "Application").[1]  The Court has reviewed the Application, the

engagement letter attached to the Application, the supporting declaration of Paul P. Huffard (the

"Huffard Declaration"), and the interim order authorizing such retention entered on March 4,

2005 by the United States Bankruptcy Court for the Southern District of New York; the Court

has further reviewed the amended engagement letter attached as Exhibit A to this Order (the

"Revised Engagement Letter"); and the Court has considered the evidence and heard the

argument of counsel.  The Court has determined that the terms of compensation being sought by

Blackstone as described in the Revised Engagement Letter are reasonable.  After due

deliberation and finding proper notice has been given, the Court determines that good cause

---

[1]     All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them
in the Application or the Revised Engagement Letter.

exists to grant the relief and that granting the relief is in the best interest of these estates and creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.    The Application is granted as set forth in this Order.

2.    The Debtors are authorized to retain Blackstone as their financial advisors, pursuant to Sections 327(a) and 328 of the Bankruptcy Code, as of February 21, 2005 (the "Petition Date") on the terms set forth in the Application, the Revised Engagement Letter, and the Huffard Declaration.

3.    If any supplemental declarations are filed and served after the entry of this Order, absent any objections filed within twenty (20) days after the filing and service of such supplemental declarations, Blackstone's employment shall continue as authorized pursuant to this Order.

4.    The terms of compensation and reimbursement of expenses to be paid to Blackstone as set forth in the Application, the Revised Engagement Letter, the Huffard Declaration and this Order are "reasonable" as such term is used in Section 328(a) of the Bankruptcy Code, and Blackstone shall be compensated and reimbursed in accordance with the terms of the Application, the Revised Engagement Letter, the Huffard Declaration and this Order, but such compensation and reimbursement shall be subject to prior approval of this Court in accordance with the standards of and requirements under Section 328(a) of the Bankruptcy Code and any order of this Court establishing procedures for monthly compensation and reimbursement of expenses; provided that, notwithstanding the preceding clause, only the United States Trustee retains the right to object to Blackstone's Monthly Fee or Restructuring Fee (but not the Transaction Fee), as those terms are defined in the Revised Engagement Letter, on all

grounds, including but not limited to the reasonableness standard provided for in Section 330 of the Bankruptcy Code.

5.    Notwithstanding the previous paragraph, Blackstone shall not be required to maintain time records or receipts for expenses in amounts less than $75.

6.    All requests of Blackstone for payment of indemnity pursuant to the Revised Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Revised Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Blackstone be indemnified in the case of its own bad faith, self-dealing, gross negligence, or willful misconduct.

7.    In no event shall Blackstone be indemnified if a Debtor or a representative of the estate asserts a claim for, and a court determines by final order that such claim arose out of Blackstone's own bad faith, self-dealing, gross negligence, or willful misconduct.

8.    In the event Blackstone seeks reimbursement for attorneys' fees from the debtors pursuant to the Revised Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Blackstone's own applications (both interim and final), and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under Section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy Section 330(a)(3)(C) of the Bankruptcy Code.

9.      Notwithstanding any contrary provision in the Revised Engagement Letter, with respect to a Transaction Fee relating to stores sold during the enterprise phase of the Debtors' sale process, Blackstone shall be entitled to a Transaction Fee only in the event the winner bidder is a party listed on Exhibit B to Blackstone's Revised Engagement Letter. In such event, DJM Asset Management, LLC ("DJM") and The Food Partners, LLC ("TFP") (collectively, "DJM/TFP") shall receive from Blackstone a marketing fee equal to 50 basis points of the Transaction Fee. If, however, with respect to stores sold during the enterprise phase of the Debtors' sale process, the winner bidder is not a party listed on Exhibit B to Blackstone's Revised Engagement Letter, DJM/TFP shall be entitled to a transaction fee in accordance with their approved terms of retention, and Blackstone shall receive from DJM/TFP a marketing fee equal to 50 basis points of their transaction fee.

10.     To the extent this Order is inconsistent with the Revised Engagement Agreement, this Order shall govern.

11.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

12.     Blackstone shall serve upon all creditors of the Debtors a notice in a form approved by the United States Trustee that discloses the material terms of Blackstone's approved retention under Section 328 of the Bankruptcy Code and provides a thirty (30) day period within which any objections to such retention must be filed with the Court and served upon Blackstone; provided, however, that parties in interest who previously received notice of the Application and an opportunity to object and who failed to file an objection by the previously applicable objection deadline (the "Previously Noticed Creditors") shall not be entitled to file and serve objections or to have their objections heard. The Court shall consider any objections (other than

-4-

objections filed by Previously Noticed Creditors, which shall be denied) at the omnibus hearing next following the expiration of such thirty (30) day period.  This Order shall be final as to all creditors who do not file a timely objection and to all Previously Noticed Creditors.

Dated June 3, 2005 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties included
on the Master Service List.

**<u>EXHIBIT A</u>**



The Blackstone Group®

February 18June [ ], 2005

Mr. Peter Lynch
Chief Executive Officer
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254

Dear Peter:

This letter confirms the understanding and agreement (the "Agreement") between The Blackstone Group L.P. ("Blackstone") and Winn-Dixie Stores, Inc. (together with its subsidiaries, the "Company") regarding the retention of Blackstone on an exclusive basis by the Company effective as of December 15, 2004 as its financial advisor for the purposes set forth herein. This Agreement replaces and supersedes in all respects the agreements between Blackstone and the Company dated February 23, 2004, and May 10, 2004, and February 18, 2005 and the amendment to the February 23 agreement dated November 2, 2004.

Under this Agreement, Blackstone will provide financial advisory services to the Company in connection with a possible restructuring of certain liabilities of the Company (the "Restructuring") and a possible transaction or transactions involving the sale of assets of the Company (the "Transactions") and will assist the Company in analyzing, structuring, negotiating and effecting the Restructuring or Transaction pursuant to the terms and conditions of this Agreement. As used in this Agreement, the term Restructuring shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of the Company affecting existing or potential debt obligations or other claims, including, without limitation, senior debt, junior debt, trade claims, real property leases and general unsecured claims (collectively, the "Obligations"), and/or (ii) any complete or partial repurchase, refinancing, extension or repayment by the Company of any of the Obligations. As used in this Agreement, the term Transaction shall mean, as applicable, any transaction constituting, whether in one or a series of transactions, the sale, transfer or other disposition (including a disposition involving solely the sublease or assignment of a facility with no additional consideration received by the Company), directly or indirectly, of all or a portion of the Company's assets; provided, however, in the case of the sale of a portion of the Company's assets, the term Transaction shall refer only to the sale of the assets identified on Exhibit A attached hereto, which Exhibit may be updated from time to time by the parties hereto.

The financial advisory services to be rendered by Blackstone will include the following:

(a)  Actively and substantially assist in the evaluation of the Company's businesses and prospects;

(b)  Assist in the development of the Company's long-term business plan and related financial projections;

(c)  Assist in the development of financial data and presentations to the Company's Board of Directors, various creditors and other third parties;

(d)  Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(e)  Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(f)  Provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

(g)  Evaluate the Company's debt capacity and alternative capital structures;

(h)  Participate in discussions and negotiations among the Company and its creditors, suppliers, lessors and other interested parties;

(i)  Value securities offered by the Company in connection with a Restructuring;

(j)  Advise the Company and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k)  Assist in arranging possible debtor-in-possession ("DIP") financing and exit financing for the Company, as requested;

(l)  Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services;

(m)  Assist the Company in preparing marketing materials in conjunction with a possible Transaction;

(n)  Assist the Company in identifying potential buyers or parties in interest to a Transaction and assist in the due diligence process;

(o)  Assist and advise the Company concerning the terms, conditions and impact of any proposed Transaction;

(p)  Assist in the development, evaluation and negotiation of any potential Restructuring and/or plan of reorganization and disclosure statement;

(q)  Assist the Company in preparing for a possible Chapter 11 filing; and

(r)  Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring or a Transaction as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. Blackstone makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring. Blackstone is retained under this Agreement solely to provide advice regarding a Restructuring or a Transaction and is not being retained to provide "crisis management."

The Company will pay the following fees to Blackstone for its financial advisory services:

(i)     a monthly advisory fee (the "Monthly Fee") in the amount of $167,000 in cash, with the first Monthly Fee payable upon signing this Agreement and additional installments of such Monthly Fee payable in advance on 23rd day of each monthly thereafter. Any Monthly Fees paid after the first twelve Monthly Fees shall be credited against the Restructuring Fee (as defined below).

(ii)    an additional fee (the "Restructuring Fee") equal to $7~~4~~,000,000. Except as otherwise provided herein, a Restructuring shall be deemed to have been consummated upon the execution, confirmation and consummation of a Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring. The Restructuring Fee will be earned and payable upon consummation of the Restructuring.

(iii)   in addition to the Monthly Fees and the Restructuring Fees, upon the consummation of each Transaction for the sale of assets described on Exhibit A or for the sale of all or substantially all of the operating assets of the Company, a fee ("Transaction Fee") payable in cash directly out of the gross proceeds of each such Transaction in an amount equal to the following percentages of Consideration involved in such Transaction:

| Total Consideration | Percentage |
| --- | --- |
| On the first $25 million | 4% |
| Plus on the amount between $25 million and $50 million | 3% |
| Plus on the amount between $50 million and $100 million | 2% |
| Plus on the amount over $100 million | 1% |

The scale above will apply to ~~each~~ certain Transaction~~s on a standalone basis, except for those retail store transactions in which The Food Partners or ExcessSpace Retail Services, Inc. led the Transaction, in which case the Transaction Fee payable to Blackstone shall be in an amount equal to 2.0% and 0.5% of the Consideration, respectively.~~ clustered into the following three groupings: (a) retail grocery stores (provided that Blackstone shall only earn a fee for stores sold to those purchasers listed on Exhibit B); (b) dairy operations; and (c) bottled beverage operations.

The minimum Transaction Fee is $1 million for each of the groups listed in clauses (a), (b) and (c) above, provided that only one minimum Transaction Fee shall be earned with respect to each grouping and that there shall be no other minimums on Transaction Fees., except (1) for those retail store transactions in which The Food Partners or ExcessSpace Retail Services, Inc. led the Transaction and (2) a sale of all or substantially all of the operating assets of the Company in which case the minimum Transaction Fee shall be $7,000,000. The first $2,000,000 of Transaction Fees paid under this Agreement shall be credited against the Restructuring Fee.

In the circumstance where substantially all of the Company's operations are sold to a third party purchaser, Blackstone shall earn the greater of its Transaction Fee as calculated above or its Restructuring Fee but shall not earn both fees, provided that, with respect to a sale of substantially all of the Company's operations to a third party purchaser which was primarily developed by the Company's board of directors and which results in a full recovery in cash to the Company's unsecured creditors, Blackstone shall earn the Restructuring Fee and not a Transaction Fee. The timing of payment of such fee shall be governed by the timing contemplated by whichever fee is specified.

As used in this Agreement, Consideration means the gross value of all cash, securities and other properties paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with the Transaction or a transaction related thereto (including, without limitation, amounts paid (A) pursuant to covenants not to compete or similar arrangements and (B) to holders of any warrants, stock purchase rights, convertible securities or similar rights and to holders of any options or stock appreciation rights, whether or not vested). Consideration shall also include the face amount of any long-term liabilities (including the net present value of any open store operating leases or manufacturing facility leases assumed or assigned in a Transaction, calculated based on the remaining payments under the assumed lease discounted at 8.0%) or preferred stock (including indebtedness for borrowed money and the amount set forth in the Company's financial statements for any pension liabilities and guarantees) indirectly or directly assumed or acquired, or otherwise repaid or retired, in connection with or in anticipation of the Transaction. If the Transaction takes the form of a purchase of assets, Consideration shall also include (i) the value of any current assets not purchased, minus (ii) the value of any current operating liabilities not assumed, in either case as relates to the business(es) or operations being purchased. Consideration shall include all amounts paid into escrow and all contingent payments payable in connection with the Transaction, with fees on amounts paid into escrow to be payable upon the establishment of such escrow and fees on contingent payments to be payable when such

contingent payments are made. If the Consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such Consideration is paid.

In this Agreement, the value of any securities (whether debt or equity) or other property paid or payable as part of the Consideration shall be determined as follows: (1) the value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the public announcement of the Transaction; and (2) the value of securities that are not freely tradable or have no established public market or, if the Consideration utilized consists of property other than securities, the value of such other property shall be the fair market value thereof as mutually agreed by the parties hereto; and

(iv)     reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel (such fees and expenses not to exceed $25,000 without prior approval from the Company, which approval shall not be unreasonably withheld) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses. In connection therewith, the Company shall pay Blackstone and maintain thereafter a $50,000 expense advance for which Blackstone shall account upon termination of this Agreement.

In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, the Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (A) this Agreement, including the attached indemnification agreement, and (B) Blackstone's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall supply Blackstone with a draft of such application and any proposed order authorizing Blackstone's retention sufficiently in advance of the filing of such application and proposed order to enable Blackstone and its counsel to review and comment thereon. Blackstone shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Blackstone's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Blackstone in all respects. Blackstone acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Blackstone's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that Blackstone shall not be required to maintain time records

and, provided further, that Blackstone shall not be required to maintain receipts for expenses in amounts less than $75. In the event that the Company becomes a debtor under the Bankruptcy Code and Blackstone's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Blackstone hereunder as promptly as practicable in accordance with the terms hereof. Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to Blackstone in immediately available funds by wire transfer.

With respect to Blackstone's retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that Blackstone's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Blackstone's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Blackstone's services hereunder could not be measured merely by reference to the number of hours to be expended by Blackstone's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Blackstone and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Blackstone and that the actual time and commitment required of Blackstone and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which Blackstone may be required to address in the performance of its services hereunder, Blackstone's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Blackstone's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including the Monthly Fee, Restructuring Fee, and Transaction Fee) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of the Company, including the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth in this Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the appropriate party.

Except as contemplated by the terms hereof or as required by applicable law or legal process, Blackstone shall keep confidential all non-public information provided to it by or at the request of the Company, and shall not disclose such information to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with Blackstone's performance of its responsibilities hereunder and who are advised of the confidential nature of the information and who agree to keep such information confidential.

The Company will furnish or cause to be furnished to Blackstone such information as Blackstone believes appropriate to its assignment (all such information so furnished

being the "Information"). The Company recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

In the event that the Information belonging to the Company is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors or, if appropriate in the Company's judgment, in any filings in a Chapter 11 proceeding) without the prior written consent of Blackstone. All services, advice and information and reports provided by Blackstone to the Company in connection with this assignment shall be for the sole benefit of the Company and shall not be relied upon by any other person.

The Company acknowledges and agrees that Blackstone will provide its financial advice exclusively to the Company through the members of the Board of Directors and senior management of the Company and not to the Company's shareholders or other constituencies. The Board of Directors and senior management will make all decisions for the Company regarding whether and how the Company will pursue a Restructuring or Transaction and on what terms and by what process. In so doing, the Board of Directors and senior management will also obtain the advice of the Company's legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of a Restructuring or Transaction. The Company further acknowledges and agrees that Blackstone has been retained to act solely as financial advisor to the Company and does not in such capacity act as a fiduciary for the Company or any other person. Blackstone shall act as an independent contractor and any duties of Blackstone arising out of its engagement pursuant to this Agreement shall be owed solely to the Company.

In consideration of Blackstone's agreement to provide financial advisory services to the Company in connection with this Agreement, it is agreed that the Company will indemnify Blackstone and its agents, representatives, members and employees. A copy of our standard form of indemnification agreement is attached to this Agreement as Attachment A.

In the event that, as a result of or in connection with Blackstone's engagement for the Company, Blackstone becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will, so long as Blackstone is not a party to the proceeding in which the information is sought, reimburse Blackstone for the reasonable fees and expenses of its counsel incurred in responding to such a request.  Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate indemnification agreement attached hereto.

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by either the Company or Blackstone; termination for cause by either party will occur forthwith. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A  and (c) unless this Agreement is terminated for cause, Blackstone shall be entitled to the Restructuring Fee or Transaction Fee in the event that a Restructuring or Transaction, respectively, is consummated at any time prior to earlier of (i) 6 months following the consummation of a Plan of Reorganization and (ii) the expiration of 12 months following the termination of this Agreement.

The Company does not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is it a prohibited party according to other U.S. government regulatory or enforcement agencies.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this Agreement shall in any way limit the activities of Blackstone Group Holdings L.L.C. and its affiliates in their businesses distinct from the restructuring advisory business of The Blackstone Group L.P., provided that the Information is not made available to representatives of Blackstone Group Holdings L.L.C. and its affiliates who are not involved in the restructuring advisory business of The Blackstone Group L.P. and that appropriate "Chinese wall" measures are taken to insure confidentiality. Notwithstanding the immediately preceding sentence, neither Blackstone Group Holdings L.L.C. nor any of its affiliates shall purchase, advise any third party regarding a purchase or otherwise participate (alone or as part of a group) in the purchase of the Company's or any of its subsidiaries' stock, assets, claims or securities without the prior written consent of the Company.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, which will remain in full force and effect.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This

Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts executed in and to be performed in that state.

The Company hereby agrees that any action or proceeding brought by the Company against Blackstone based hereon or arising out of Blackstone's engagement hereunder, shall be brought and maintained by the Company exclusively in the courts of the State of Delaware; provided, if the Company commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case. The Company irrevocably submits to the jurisdiction of the courts of the State of Delaware and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of Blackstone's engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings. The Company hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

THE BLACKSTONE GROUP L.P.

By:_____

Name:  Paul P. Huffard
Title:  Senior Managing Director

Accepted and Agreed to as
of the date first written above:

WINN-DIXIE STORES, INC.

By:_____

Name:      Peter Lynch
Title:       Chief Executive Officer

Exhibit A

| FACILITY TYPE | LOCATION | KEY PRODUCT LINES |
|---|---|---|
| Beverage / Condiment (Chek Beverage / DeepSouth) | Fitzgerald, Georgia | Variety of Bottled Drinks and Condiments |
| Coffee, Tea and Spice (Astor) | Jacksonville, Florida | Spice, Coffee, Tea, Drink Mix, Gravy |
| Dairy (Greenville) [1] | Greenville, South Carolina | Fluid Milk |
| Dairy (Hammond) | Hammond, Louisiana | Fluid Milk |
| Dairy (High Point) | High Point, North Carolina | Fluid Milk, Cottage Cheese, Yogurt |
| Dairy (Miami) | Miami, Florida | Fluid Milk (Regular and Chocolate), Fruit Drinks |
| Dairy (Montgomery) | Montgomery, Alabama | Fluid Milk |
| Dairy (Plant City) | Plant City, Florida | Fluid Milk, Various Ice Creams |
| Pizza | Montgomery, Alabama | Variety of Pizzas and Toppings |
| Retail Stores[2] | Various Locations | — |

---

[1] To the extent the dairies on this Exhibit are sold together, this will be viewed as one Transaction.

[2] Represents the Company's retail stores deemed to be non-core.

Exhibit B

Blackstone Designated Store Purchasers

[Contains confidential information.  Detail has been provided on a confidential basis to the U.S. Trustee and counsels to the DIP Lenders and the Official Committee of Unsecured Creditors]

ATTACHMENT A

~~February 18~~June [ ], 2005

The Blackstone Group L.P.
345 Park Avenue
New York, NY 10154

**INDEMNIFICATION AGREEMENT**

Gentlemen:

This letter will confirm that we have engaged The Blackstone Group L.P. ("Blackstone") to advise and assist us in connection with the matters referred to in our letter of agreement dated as of ~~February 18~~June [ ], 2005 (the "Engagement Letter"). In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors and employees and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to or arising out of the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all reasonable expenses (including reasonable fees, expenses and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding related to or arising out of the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) to the extent finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of an Indemnified Party (in which event the Indemnified Party will promptly repay us any amounts previously reimbursed by us to such Indemnified Party with respect to the matter that is the subject of such final judicial determination). We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our affiliates for or in connection with the Engagement except for (i) any willful breach by Blackstone of any agreement with us or (ii) any such liability for losses, claims, damages or liabilities incurred by us to the extent finally judicially determined by a court of

competent jurisdiction to have resulted from the gross negligence or willful misconduct of such Indemnified Party.

If the indemnification provided for in the preceding paragraph is for any reason (other than the gross negligence or willful misconduct of an Indemnified Party as provided above) unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto) in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated to be received) by you, on the one hand, and us, on the other hand, from the Engagement but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For purposes of this agreement, the relative benefits to us and you to the Engagement shall be deemed to be in the same proportion as (a) the total value paid or received by us, our security holders and our creditors in the transaction or transactions that are subject to the Engagement bears to (b) the fees paid to Blackstone under the Engagement Letter (excluding any amounts paid as reimbursement of expenses).

No Indemnified Party will, without our prior written consent (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "Judgment"), whether or not we are an actual or potential party to such claim, action, suit or proceeding. In the event that we seek to settle or compromise or consent to the entry of any Judgment, we agree that such settlement, compromise or consent (i) shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding, (ii) shall not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of Blackstone or each other Indemnified Party, and (iii) shall not impose any continuing obligations or restrictions on Blackstone or each other Indemnified Party.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure substantively prejudices our rights. If we so elect or are requested by such Indemnified Party, we will assume the defense of such action or proceeding, including the employment of counsel and the payment of the fees and disbursements of such counsel.

In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if we fail to assume

the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any such action or proceeding and we will pay the fees and disbursements of such counsel; provided, however, that we will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of ours under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of ours and such Indemnified Party; provided that neither we nor any indemnified Party may assign any rights or obligations hereunder without the prior written consent of the other party.

The provisions of this agreement shall apply to the Engagement, as well as any additional engagement of Blackstone by us in connection with the matters which are the subject of the Engagement, and any modification of the Engagement or additional engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement and the Engagement Letter shall be governed by, and construed in accordance with, the laws of the state of Delaware applicable to contracts executed in and to be performed in that state.

Very truly yours,

**WINN-DIXIE STORES, INC.**

By:_____
    Name:

Accepted and Agreed to as of the date first written above:

**THE BLACKSTONE GROUP L.P.**

By:_____
    Name: Paul P. Huffard
          Senior Managing Director

**APPENDIX B**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER APPROVING SUPPLEMENT TO DEBTORS' RETENTION OF**
**THE BLACKSTONE GROUP, L.P. AS FINANCIAL ADVISORS**

These cases came before the Court for hearing on April 20, 2006, upon the application of Winn-Dixie Stores, Inc. and its twenty-three subsidiaries and affiliates in the above-captioned jointly-administered cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order supplementing the terms of the Debtors' previously approved retention under 11 U.S.C. §§ 327(a) and 328 of The Blackstone Group, L.P. ("Blackstone") to include the provision by Blackstone of financial advisory services to the Debtors in connection with the disposition of their interests in supermarket operations in the Bahamas (the "Bahamas Operations") (the "Supplemental Application").[1]  The Court has reviewed the Supplemental Application, the amended letter agreement between the Debtors and Blackstone dated March 16, 2006 and attached as Exhibit A to the Supplemental Application (the "Amended Engagement Letter"), the supporting supplemental declaration of Paul P. Huffard dated March 30, 2006 and attached as Exhibit B to the Supplemental Application, and the Court's Final Order Authorizing Debtors to Employ The Blackstone Group, L.P. as Financial Advisors dated June 3, 2005 and filed at Docket No. 1560 (the "Final Blackstone Order").  The Court has also considered the representations of counsel.  Based upon the representations of counsel, after due deliberation and

---

[1]     All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Supplemental Application.

finding proper notice has been given, the Court determines that good cause exists to grant the relief requested in the Supplemental Application and that granting such relief is in the best interest of these estates and creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.      The Supplemental Application is granted.

2.      The terms of the Debtors' previously approved retention of Blackstone are supplemented to include the provision by Blackstone of financial advisory services to the Debtors in connection with the disposition of their interests in the Bahamas Operations on the terms set forth in the Amended Engagement Letter.

3.      Except as supplemented by this Order, the terms of the Debtors' retention of Blackstone shall remain unchanged and shall be governed by the Final Blackstone Order.

4.      The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order and the Final Blackstone Order.

Dated _____, 2006 in Jacksonville, Florida.

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties included
on the Master Service List.

1099735-New York Server 7A - MSW

# APPENDIX C

**Biographies of Blackstone Professionals**

- **Paul P. Huffard.**  Paul Huffard is a Senior Managing Director in the Restructuring & Reorganization Advisory group. Since joining Blackstone in 1995, Mr. Huffard has worked on a variety of restructuring and reorganization assignments, for companies, creditor groups, corporate parents of troubled companies and acquirers of distressed assets. These assignments include Fleming Companies, New World Pasta, Legerity, Crown Pacific, Dade Behring, Inc., Alestra, Mattress Discounters, The LTV Corporation, Excite@Home, AT&T Canada, Harnischfeger Industries, Inc., Loehmann's Inc., Montgomery Ward Holding Corp., Levitz Furniture Inc., ContiFinancial Corporation, Camelot Music, Inc., Edison Brothers Stores, Inc., Stratosphere, Inc., Plaid Clothing Group Inc., Premium Standard Farms, Harrah's Jazz Company, Wherehouse Entertainment, Inc., Weiner's Stores, Inc., Ladish Co., Inc., Universal Medical Buildings, Grossman's Inc., R.H. Macy & Co. and Cherokee, Inc. Mr. Huffard has provided valuation and corporate finance advisory work for AmBase Corporation, the Federal Deposit Insurance Company and the Resolution Trust Corporation.

- **Erick S. Katz.**  Erik Katz is a Senior Managing Director in the Corporate Advisory Services group. Since joining Blackstone in 1992, Mr. Katz has worked on a variety of Advisory and Private Equity transactions. They have included several asset sales for Winn-Dixie Stores, the restructuring of Fleming Cos., the $13 billion merger of American Stores with Albertsons', the sale of Great Lakes Transportation to Canadian National Railway, the $5 billion merger of Autoliv with Morton International's airbag division, and the complete restructuring of PepsiCo's bottling network in Latin America. Mr. Katz also has responsibility for the firm's alliance with Enskilda Securities.

- **Ramesh Chakrapani.** Ramesh Chakrapani is a Vice President in the Corporate Advisory Services group.  Since joining Blackstone in 2001, Mr. Chakrapani has worked in the media/telecommunications and industrial sectors.  Before joining Blackstone, Mr. Chakrapani worked at Credit Suisse First Boston advising AT&T Corp. on its acquisition of Tele Communications Inc., Apollo Management with its acquisition of MTL Inc., and Asarco Inc. on its sale to Grupo Mexico S.A.

- **Paul Schlaack.**  Paul Schlaack is a Vice President in the Corporate Advisory Services group. Since joining Blackstone in 1999, Mr. Schlaack has been involved in advising Enron on the sale of its energy trading business to UBS; the Iowa Insurance Division and the New York State Insurance Department on the demutualization of Principal Financial; Williams Communications Canada on its sale to TELUS; ABN AMRO on its acquisition of ING Barings' U.S. investment banking and prime brokerage operations; Williams Communications Solutions on its sale to Platinum Equity; Alliance Capital on its acquisition of Sanford Bernstein; and Volpe Brown Whelan on its sale to Prudential Securities.

- **Jamie O'Connell.**  Jamie O'Connell is an Associate in the Restructuring & Reorganization Advisory group. Since joining Blackstone in 2004, Mr. O'Connell has assisted in advising debtors in various restructuring transactions. Before joining Blackstone, Mr. O'Connell was an Associate at Dolphin Equity Partners, a private investment firm in New York. Previously, he was in the corporate restructuring department of Arthur Andersen.

- **Jason Costi.**  Jason Costi is an Analyst in the Restructuring & Reorganization Advisory group. Since joining Blackstone in 2004, Mr. Costi has worked on various restructuring and advisory assignments. Before joining Blackstone, Mr. Costi worked at Bear, Stearns & Co. Inc., where he was an analyst in the Global Industries Investment Banking group. Mr. Costi received a BBA degree with a concentration in Finance from Emory University, where he graduated with distinction.

**APPENDIX D**

**WINN-DIXIE STORES, INC.**

**Summary of Fees Earned and Out-Of-Pocket Expenses Recognized by**
**The Blackstone Group L.P. During the Period of February 1, 2006 through May 31, 2006**

| Advisory Periods | A Fees | | B Less: 20% Holdback | | C = A - B Fees, Net of Holdback | | D Out-Of-Pocket Expenses | | E Payment(s) Received | F = (A + D) - E Amount(s) Due | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| February 1 - 28, 2006 | $ | 167,000.00 | $ | (33,400.00) | $ | 133,600.00 | $ | 12,775.89 | (146,375.89) | $ | 33,400.00 |
| March 1 - 31, 2006 | | 167,000.00 | | (33,400.00) | | 133,600.00 | | 13,508.50 | (147,108.50) | | 33,400.00 |
| April 1 - 30, 2006 | | 167,000.00 | | (33,400.00) | | 133,600.00 | | 14,518.32 | (148,118.32) | | 33,400.00 |
| **Subtotal** | | **501,000.00** | | **(100,200.00)** | | **400,800.00** | | **40,802.71** | **(441,602.71)** | | **100,200.00** |
| May 1 - 31, 2006 | | 167,000.00 | | - [1] | | 167,000.00 | | 14,956.27 | - | | 181,956.27 |
| Less: Expense Adjustment [2] | | - | | - | | - | | - | - | | (1,604.15) |
| **Total** | $ | **668,000.00** | $ | **(100,200.00)** | $ | **567,800.00** | $ | **55,758.98** | $ **(441,602.71)** | $ | **280,552.12** |

[1] No holdback shown since no payment was received in connection with the invoiced fee.

[2] Adjustment consists of amounts Blackstone agreed to reduce its reimbursement request by in its Fourth Interim Application in response to Stuart Maue's review and analysis of Blackstone's second and third interim fee applications.


The Blackstone Group®

**In re: Winn-Dixie Stores, Inc., et al.**
**A Chapter 11 Proceeding**
**Case No. 05-03817-3F1**

**APPENDIX E**

# The **Blackstone** Group®

July 10, 2006

Mr. Laurence Appel
Senior Vice President and General Counsel
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254

Monthly advisory fee for the period of February 1, 2006 through February 28, 2006:      $     167,000.00

Out-of-pocket expenses processed for the period through February 28, 2006:[1]

| | | |
|---|---:|---:|
| **Airfare** | $ 5,266.10 | |
| **Ground Transportation** | 2,617.84 | |
| **Communications** | 787.82 | |
| **Meals** | 1,832.28 | |
| **Lodging** | 1,575.12 | |
| **Document Production** | 42.90 | |
| **Research** | 515.58 | |
| **Publishing Services** | 138.25 | 12,775.89 |
| Subtotal | | 179,775.89 |
| Less: Payment Received | | (146,375.89) |
| **Total Amount Due** | | **$ 33,400.00** |

**Please wire transfer funds to:**

JP Morgan Chase Bank
One Chase Manhattan Plaza
New York, NY 10081
ABA# 021 000 021
Credit Account: The Blackstone Group L.P.
Account Receivable Dept. 14th Floor
Account # 066-287472

Invoice Number: 10683

---

[1] Expenses incurred, but not yet processed due to timing differences, will be billed at a later date.

**The Blackstone Group® L.P.**
345 Park Avenue
New York, NY 10154
212 583-5000

**Winn-Dixie Stores, Inc.**
**Summary of Expenses**
**Invoice No. 10683**

|  | GL Detail Feb-2006 | Total Expenses |
|---|---|---|
| Airfare | $ 5,266.10 | $ 5,266.10 |
| Ground Transportation - Car Service - Concord | 256.02 | 256.02 |
| Ground Transportation - Car Service - Elite | 1,159.64 | 1,159.64 |
| Ground Transportation - Local Travel | 639.00 | 639.00 |
| Ground Transportation - Out of Town Travel | 563.18 | 563.18 |
| Communications - Teleconferencing | 591.12 | 591.12 |
| Communications - Federal Express | 196.70 | 196.70 |
| Meals with Clients | 883.49 | 883.49 |
| Employee Meals | 948.79 | 948.79 |
| Lodging | 1,575.12 | 1,575.12 |
| Document Production | 42.90 | 42.90 |
| External Research - Securities Data | 495.58 | 495.58 |
| External Research - Online Database | 20.00 | 20.00 |
| Publishing Services | 138.25 | 138.25 |
| **Total Expenses** | **$ 12,775.89** | **$ 12,775.89** |

| | |
|---|---|
| **Airfare** | **$ 5,266.10** |
| **Ground Transportation** | **2,617.84** |
| **Communications** | **787.82** |
| **Meals** | **1,832.28** |
| **Lodging** | **1,575.12** |
| **Document Production** | **42.90** |
| **Research** | **515.58** |
| **Publishing Services** | **138.25** |
| **Total Expenses** | **$ 12,775.89** |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through February 28, 2006**
**Invoice No. 10683**

**Airfare**

| | | |
|---|---|---|
| Boyle (travel agency fee for booking of flight dated 10/19/05) | 10/19/05 | 20.00 |
| Boyle (one-way coach class flight to Newark, NJ from Jacksonville, FL) | 10/19/05 | 509.20 |
| Boyle (one-way coach class flight to Evansville, IN from Queens, NY) | 10/21/05 | 325.00 |
| Boyle (travel agency fee for booking of flight dated 10/28/05) | 10/27/05 | 20.00 |
| Boyle (one-way coach class flight to Jacksonville, FL from Queens, NY) | 10/28/05 | 507.70 |
| Boyle (travel agency fee for flight dated 11/01/05) | 10/28/05 | 20.00 |
| Boyle (one-way coach class flight to Jacksonville, FL from Queens, NY) | 11/01/05 | 507.70 |
| Boyle (travel agency fee for booking of one-way coach class flight dated 11/01/05) | 11/01/05 | 20.00 |
| Boyle (one-way coach class flight to Queens, NY from Jacksonville, FL) | 11/01/05 | 509.20 |
| Boyle (one-way coach class flight to Jacksonville, FL from Queens, NY) | 11/08/05 | 507.70 |
| Boyle (travel agency fee for booking of one-way coach class flight dated 11/09/05) | 11/09/05 | 20.00 |
| Boyle (one-way coach class flight to Newark, NJ from Jacksonville, FL) | 11/09/05 | 559.20 |
| Boyle (credit for unused airline ticket) | 11/25/05 | (509.20) |
| Boyle (travel agency fee for booking of flight dated 01/14/06) | 01/11/06 | 20.00 |
| Boyle (one-way coach class flight to Nassau, Bahamas from Newark, NJ) | 01/14/06 | 159.00 |
| Boyle (one-way coach class flight: Nassau, Bahamas to Miami, FL to Newark, NJ) | 01/17/06 | 587.50 |
| Boyle (travel agency fee for booking of flights dated 01/22/06) | 01/22/06 | 40.00 |
| Boyle (coach class flight to Miami, FL from Nassau, Bahamas) | 01/22/06 | 351.00 |
| Boyle (travel agency fee for one-way coach flight to Jacksonville, FL dated 01/25/06) | 01/25/06 | 20.00 |
| Boyle (one-way coach class flight to Queens, NY from Jacksonville, FL) | 01/25/06 | 514.30 |
| Boyle (round trip coach class flight to/from Jacksonville, FL from/to Newark, NJ) | 01/25/06 & 01/26/06 | 1,072.10 |
| Boyle (credit for unused airline ticket) | 02/10/06 | (514.30) |
| | **Subtotal - Airfare** | **$    5,266.10** |

**Ground Transportation - Car Service - Concord**

| | | |
|---|---|---|
| Publishing Services - Demery (late evening car to Blackstone from home) | 10/27/05 | 45.39 |
| Publishing Services - Glaraga (late evening car to Blackstone from home) | 11/06/05 | 62.22 |
| Publishing Services - Glaraga (late evening car to Blackstone from home) | 11/16/05 | 62.22 |
| Publishing Services - Mak (late evening car to Blackstone from home) | 10/30/05 | 45.39 |
| Publishing Services - Morin (car home from Blackstone after working late) | 11/15/05 | 40.80 |
| | **Subtotal - Ground Transportation - Car Service - Concord** | **256.02** |

**Ground Transportation - Car Service - Elite**

| | | |
|---|---|---|
| Boyle (car to JFK Airport in Queens, NY from home) | 10/19/05 | 56.36 |
| Boyle (car home from Newark Airport in Newark, NJ) | 10/19/05 | 72.57 |
| Boyle (car to JFK Airport in Queens, NY from home) | 10/28/05 | 56.36 |
| Boyle (car home from Newark Airport in Newark, NJ) | 10/28/05 | 86.55 |
| Boyle (car home from Blackstone after working late) | 10/31/05 | 47.69 |
| Boyle (car to JFK Airport in Queens, NY from home) | 11/01/05 | 56.36 |
| Boyle (car home from JFK Airport in Queens, NY) | 11/01/05 | 60.95 |
| Boyle (car to JFK Airport in Queens, NY from home) | 11/09/05 | 38.56 |
| Boyle (car home from Newark Airport in Newark, NJ) | 11/09/05 | 137.55 |
| Boyle (car to client meeting in New York, NY from Blackstone) | 11/30/05 | 23.41 |
| Chakrapani (car to JFK Airport in Queens, NY from home) | 11/24/05 | 60.44 |
| Costi (car home from Blackstone after working late) | 10/18/05 | 23.41 |
| Costi (late evening document delivery to C. Boyle's residence from Blackstone) | 10/19/05 | 35.45 |
| Costi (car home from Blackstone after working late) | 10/20/05 | 23.41 |
| Costi (car to Blackstone from LaGuardia Airport in Queens, NY) | 10/23/05 | 41.82 |
| Costi (late evening document delivery to C. Boyle's residence) | 10/27/05 | 35.45 |
| Costi (late evening document delivery to C. Boyle's residence) | 11/04/05 | 43.55 |
| Katz (early morning car to client meeting in New York, NY from home) | 11/09/05 | 102.26 |
| O'Connell (car to JFK Airport in Queens, NY from home) | 11/10/05 | 60.95 |
| O'Connell (car home from JFK Airport in Queens, NY) | 11/10/05 | 41.82 |
| Publishing Services - Hilton (car home from Blackstone after working late) | 11/30/05 | 54.72 |
| | **Subtotal - Ground Transportation - Car Service - Elite** | **1,159.64** |

**Ground Transportation - Local Travel**

| | | |
|---|---|---|
| Boyle (weeknight taxi home from Blackstone after working late) | 07/12/05 | 12.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 07/13/05 | 8.00 |
| Boyle (weekend taxi home from Blackstone) | 07/24/05 | 11.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 08/09/05 | 10.00 |
| Boyle (weekend taxi home from Blackstone) | 08/12/05 | 9.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 08/15/05 | 11.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 08/22/05 | 11.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 08/24/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 08/25/05 | 12.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 08/29/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 08/30/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 08/31/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 09/01/05 | 11.00 |
| Boyle (weekend taxi home from Blackstone) | 09/04/05 | 12.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 09/06/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 09/07/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 09/13/05 | 10.00 |
| Boyle (weekend taxi to Blackstone from home) | 09/17/05 | 10.00 |
| Boyle (weekend taxi home from Blackstone) | 09/17/05 | 11.00 |
| Boyle (weekend taxi to Blackstone from home) | 09/18/05 | 17.00 |
| Boyle (weekend taxi home from Blackstone) | 09/18/05 | 19.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 09/19/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 09/20/05 | 18.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 10/03/05 | 10.00 |
| Boyle (weekend taxi home from Blackstone) | 10/09/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 10/10/05 | 10.00 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through February 28, 2006**
**Invoice No. 10683**

| | | |
|---|---|---|
| Boyle (weekend taxi to Blackstone from home) | 10/16/05 | 10.00 |
| Boyle (weekend taxi home from Blackstone) | 10/16/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 10/17/05 | 11.00 |
| Boyle (fee for parking car while working @ Blackstone on weekend) | 10/23/05 | 41.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 10/26/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 11/02/05 | 11.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 11/07/05 | 12.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 11/28/05 | 11.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 11/29/05 | 11.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 11/30/05 | 11.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 12/05/05 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 12/06/05 | 7.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 12/07/05 | 8.00 |
| Boyle (fee for parking car while working late @ Blackstone) | 12/20/05 | 31.00 |
| Boyle (fee for parking car while working late @ Blackstone) | 12/21/05 | 31.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 01/03/06 | 11.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 01/19/06 | 12.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 01/27/06 | 7.00 |
| Boyle (weekend taxi to Blackstone from home) | 01/28/06 | 10.00 |
| Boyle (weekend taxi home from Blackstone) | 01/28/06 | 11.00 |
| Boyle (weekend taxi home from Blackstone) | 01/29/06 | 12.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 01/31/06 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 02/02/06 | 11.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 02/06/06 | 10.00 |
| Boyle (weeknight taxi home from Blackstone after working late) | 02/07/06 | 14.00 |
| Kovacs (weekend taxi home from Blackstone) | 12/10/05 | 5.00 |
| Kovacs (weeknight taxi home from Blackstone while working late) | 12/12/05 | 9.00 |
| **Subtotal - Ground Transportation - Local Travel** | | **639.00** |

**Ground Transportation - Out of Town Travel**

| | | |
|---|---|---|
| Boyle (Hertz car rental during stay in Jacksonville, FL) | 10/28/05 | 32.52 |
| Boyle (airport taxi to hotel from airport in Jacksonville, FL) | 11/09/05 | 35.00 |
| Boyle (taxi to airport from hotel in Jacksonville, FL) | 11/09/05 | 64.15 |
| Boyle (Hertz car rental during stay in Nassau, Bahamas) | 01/14/06 - 01/17/05 | 356.07 |
| Boyle (Hertz car rental during stay in Jacksonville, FL) | 01/25/06 | 75.44 |
| **Subtotal - Ground Transportation - Out of Town Travel** | | **563.18** |

**Communications  - Teleconferencing**

| | | |
|---|---|---|
| Boyle | 01/17/06 | 6.18 |
| Boyle | 01/26/06 | 2.50 |
| Boyle | 01/26/06 | 349.90 |
| Boyle | 01/30/06 | 156.19 |
| Katz | 12/12/05 | 29.66 |
| Katz | 12/15/05 | 0.22 |
| Katz | 12/16/05 | 15.50 |
| Katz | 12/18/05 | 22.83 |
| Schlaack | 12/06/05 | 8.14 |
| **Subtotal - Communications  - Teleconferencing** | | **591.12** |

**Communications - Federal Express**

| | | |
|---|---|---|
| de Almeida | 01/20/06 | 7.86 |
| de Almeida | 01/20/06 | 7.86 |
| de Almeida | 01/20/06 | 7.86 |
| de Almeida | 01/20/06 | 7.86 |
| de Almeida | 01/20/06 | 11.19 |
| de Almeida | 01/20/06 | 11.19 |
| de Almeida | 01/20/06 | 11.19 |
| de Almeida | 01/20/06 | 11.19 |
| de Almeida | 01/20/06 | 11.19 |
| de Almeida | 01/20/06 | 11.19 |
| de Almeida | 01/20/06 | 12.29 |
| de Almeida | 01/20/06 | 12.29 |
| Japlit | 01/18/06 | 14.39 |
| Lysle | 01/09/06 | 23.24 |
| Lysle | 02/01/06 | 35.91 |
| **Subtotal - Communications - Federal Express** | | **196.70** |

**Meals with Clients**

| | | |
|---|---|---|
| Boyle (working dinner meal R. Chakrapani (Blackstone) & M. Byrum, D. Young, K. Barnes & B. Knowles (Winn-Dixie)) | 01/10/06 | 133.28 |
| Boyle (working dinner meal R. Chakrapani (Blackstone) & M. Byrum, D. Young, K. Barnes & B. Knowles (Winn-Dixie)) | 01/17/06 | 204.99 |
| Boyle (working lunch meal @ hotel in Nassau, Bahamas with clients) | 01/23/06 | 141.20 |
| Boyle (working dinner meal @ hotel in Nassau, Bahamas with clients) | 01/23/06 | 353.40 |
| Huffard (catered meal for 6 people during client meeting held @ Blackstone) | 01/04/06 | 50.62 |
| **Subtotal - Meals with Clients** | | **883.49** |

**Employee Meals**

| | | |
|---|---|---|
| Boyle (meal while traveling in Jacksonville, FL) | 09/22/05 | 8.01 |
| Boyle (meal while traveling in Jacksonville, FL) | 10/06/05 | 8.17 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 10/07/05 | 20.00 |
| Boyle (weekend working lunch @ Blackstone) | 10/23/05 | 5.38 |
| Boyle (weekend working dinner meal @ Blackstone) | 10/23/05 | 19.24 |
| Boyle (weeknight working dinner meal @ Blackstone after working late) | 10/24/05 | 20.00 |
| Boyle (meal while traveling in Jacksonville, FL) | 11/01/05 | 10.82 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 11/02/05 | 20.00 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through February 28, 2006**
**Invoice No. 10683**

| | | |
|---|---|---|
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 11/03/05 | 10.67 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 11/29/05 | 19.24 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 12/01/05 | 20.00 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 12/08/05 | 20.00 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 12/20/05 | 10.67 |
| Boyle (in-room meal @ hotel in Nassau, Bahamas) | 01/16/06 | 5.72 |
| Boyle (in-room meal @ hotel in Nassau, Bahamas) | 01/17/06 | 8.05 |
| Boyle (in-room meal @ hotel in Nassau, Bahamas) | 01/23/06 | 11.73 |
| Boyle (weekend working meal @ Blackstone) | 01/28/06 | 10.67 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 10/17/05 | 19.75 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 10/21/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 10/26/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 11/04/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 11/06/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 11/14/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 11/18/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 12/01/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 12/21/05 | 19.28 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 12/22/05 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 12/24/05 | 20.00 |
| Costi (working lunch meal @ Blackstone on Holiday) | 12/26/05 | 13.96 |
| Costi (working dinner meal @ Blackstone on Holiday) | 12/26/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 12/27/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 12/28/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 12/29/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 12/30/05 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 12/31/05 | 13.96 |
| Costi (weekend working dinner meal @ Blackstone) | 12/31/05 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 01/03/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 01/04/06 | 12.98 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 01/05/06 | 18.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 01/06/06 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 01/07/06 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 01/08/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 01/09/06 | 19.73 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 01/10/06 | 10.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 01/11/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 01/12/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone after working late) | 01/13/06 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 01/14/06 | 7.04 |
| Costi (weekend working dinner meal @ Blackstone) | 01/15/06 | 20.00 |
| Costi (working dinner meal @ Blackstone on Holiday) | 01/16/06 | 20.00 |
| Huffard (meal while traveling) | 12/14/05 | 7.79 |
| O'Connell (weeknight working dinner meal @ Blackstone after working late) | 11/28/05 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone after working late) | 11/29/05 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone after working late) | 12/20/05 | 11.45 |
| O'Connell (weeknight working dinner meal @ Blackstone after working late) | 01/03/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone after working late) | 01/05/06 | 9.21 |
| O'Connell (weeknight working dinner meal @ Blackstone after working late) | 01/09/06 | 7.32 |
| O'Connell (weeknight working dinner meal @ Blackstone after working late) | 01/11/06 | 9.95 |
| **Subtotal - Employee Meals** | | **948.79** |

**Lodging**

| | | |
|---|---|---|
| Boyle (1 day hotel stay in Jacksonville, FL) | 11/08/05 - 11/09/05 | 171.76 |
| Boyle (3 day hotel stay in Nassau, Bahamas) | 01/14/06 - 01/17/06 | 293.87 |
| Boyle (2 day hotel stay in Nassau, Bahamas) | 01/22/06 - 01/24/06 | 541.40 |
| Boyle (1 day hotel stay in Jacksonville, FL) | 01/26/06 | 179.67 |
| Boyle (hotel service charge re: working lunch meal @ hotel in Nassau, Bahamas with clients | 01/26/06 | 4.00 |
| Boyle (hotel service charge re: working dinner meal @ hotel in Nassau, Bahamas with clients | 01/26/06 | 74.19 |
| Boyle (hotel stay in Nassau, Bahamas) | 02/01/06 | 310.23 |
| **Subtotal - Lodging** | | **1,575.12** |

**Document Production**

| | | |
|---|---|---|
| Kovacs | 01/16/06 - 02/12/06 | 42.75 |
| Lysle | 01/16/06 - 02/12/06 | 0.15 |
| **Subtotal - Document Production** | | **42.90** |

**External Research - Securities Data**

| | | |
|---|---|---|
| Galligan (online data research) | 12/14/05 | 432.25 |
| O'Connell (online data research) | 12/21/05 | 61.15 |
| O'Connell (online data research) | 12/21/05 | 2.18 |
| **Subtotal - External Research - Securities Data** | | **495.58** |

**External Research - Online Database**

| | | |
|---|---|---|
| Boyle (online data research @ hotel in Nassau, Bahamas) | 01/26/06 | 20.00 |
| **Subtotal - External Research - Online Database** | | **20.00** |

**Publishing Services**

| | | |
|---|---|---|
| Costi | 02/13/06 - 02/26/06 | 68.25 |
| Kovacs | 01/16/06 - 02/12/06 | 70.00 |
| **Subtotal - Publishing Services** | | **138.25** |

| | | |
|---|---|---|
| **Total Expenses** | | **$     12,775.89** |

## The **Blackstone** Group®

July 10, 2006

Mr. Laurence Appel
Senior Vice President and General Counsel
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254

Monthly advisory fee for the period of March 1, 2006 through March 31, 2006:         $         167,000.00

Out-of-pocket expenses processed for the period through March 31, 2006: [1]

| | | | |
|---|---|---:|---:|
| **Airfare** | $ | 2,578.30 | |
| **Ground Transportation** | | 3,645.34 | |
| **Communications** | | 478.46 | |
| **Meals** | | 1,044.85 | |
| **Lodging** | | 1,021.71 | |
| **Document Production** | | 4,723.28 | |
| **Research** | | 16.56 | 13,508.50 |
| | | | |
| Subtotal | | | 180,508.50 |
| | | | |
| Less: Payment Received | | | (147,108.50) |
| | | | |
| **Total Amount Due** | | $ | **33,400.00** |

**Please wire transfer funds to:**

JP Morgan Chase Bank
One Chase Manhattan Plaza
New York, NY 10081
ABA# 021 000 021
Credit Account: The Blackstone Group L.P.
Account Receivable Dept. 14th Floor
Account # 066-287472

Invoice Number: 10713

---

[1] Expenses incurred, but not yet processed due to timing differences, will be billed at a later date.

**The Blackstone Group® L.P.**
345 Park Avenue
New York, NY 10154
212 583-5000

**Winn-Dixie Stores, Inc.**
**Summary of Expenses**
**Invoice No. 10713**

|  | GL Detail Mar-2006 | Total Expenses |
|---|---|---|
| Airfare | $ 2,578.30 | $ 2,578.30 |
| Ground Transportation - Car Service - Concord | 967.99 | 967.99 |
| Ground Transportation - Car Service - Elite | 1,499.55 | 1,499.55 |
| Ground Transportation - Local Travel | 734.00 | 734.00 |
| Ground Transportation - Out of Town Travel | 443.80 | 443.80 |
| Communications - Teleconferencing | 233.76 | 233.76 |
| Communications - Facsimiles | 90.05 | 90.05 |
| Communications - Federal Express | 154.65 | 154.65 |
| Meals with Clients | 37.92 | 37.92 |
| Employee Meals | 1,006.93 | 1,006.93 |
| Lodging | 1,021.71 | 1,021.71 |
| Document Production | 4,723.28 | 4,723.28 |
| External Research - Online Database | 16.56 | 16.56 |
| **Total Expenses** | **$ 13,508.50** | **$ 13,508.50** |

| | |
|---|---|
| **Airfare** | **$ 2,578.30** |
| **Ground Transportation** | **3,645.34** |
| **Communications** | **478.46** |
| **Meals** | **1,044.85** |
| **Lodging** | **1,021.71** |
| **Document Production** | **4,723.28** |
| **Research** | **16.56** |
| **Total Expenses** | **$ 13,508.50** |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through March 31, 2006**
**Invoice No. 10713**

**Airfare**

| | | |
|---|---|---|
| Chakrapani (travel agency fee for booking of flight dated 01/15/06 & 01/17/06) | 01/15/06 | 40.00 |
| Chakrapani (roundtrip coach class flight to/from Nassau, Bahamas from/to Newark, NJ) | 01/15/06 & 01/17/06 | 979.50 |
| Chakrapani (travel agency fee for booking of roundtrip flight dated 01/22/06 & 01/24/06) | 01/20/06 | 40.00 |
| Chakrapani (roundtrip coach class flight to/from Nassau, Bahamas from/to Newark, NJ) | 01/22/06 & 01/24/06 | 841.00 |
| Chakrapani (ticket exchange fee) | 01/24/06 | 100.00 |
| Costi (travel agency fee for booking of flight dated 02/15/06) | 02/15/06 | 20.00 |
| Costi (one-way coach class flight to Jacksonville, FL from Queens, NY) | 02/15/06 | 557.80 |
| | Subtotal - Airfare | $ 2,578.30 |

**Ground Transportation - Car Service - Concord**

| | | |
|---|---|---|
| Huffard (car home from Blackstone after working late) | 10/24/05 | 132.35 |
| Huffard (car to LaGuardia Airport in Queens, NY from Blackstone) | 11/08/05 | 84.15 |
| Huffard (car to Blackstone from JFK Airport in Queens, NY) | 11/09/05 | 112.71 |
| Huffard (car to JFK Airport in Queens, NY from home) | 11/10/05 | 162.95 |
| Huffard (car to JFK Airport in Queens, NY from home) | 12/14/05 | 80.07 |
| Publishing Services - Busi (car home from Blackstone after working late) | 12/02/05 | 47.43 |
| Publishing Services - Glaraga (late evening car to Blackstone from home) | 12/12/05 | 60.18 |
| Publishing Services - Glaraga (late evening car to Blackstone from home) | 01/03/06 | 60.18 |
| Publishing Services - Hilton (car home from Blackstone after working late) | 11/30/05 | 32.64 |
| Publishing Services - Hilton (car home from Blackstone after working late) | 01/03/06 | 49.98 |
| Publishing Services - Mak (car home from Blackstone after working late) | 12/15/05 | 44.37 |
| Publishing Services - Marques (car home from Blackstone after working late) | 01/04/06 | 31.62 |
| Publishing Services - Marques (car home from Blackstone after working late) | 01/11/06 | 31.62 |
| Publishing Services - Morin (car home from Blackstone after working late) | 01/10/06 | 37.74 |
| | Subtotal - Ground Transportation - Car Service - Concord | 967.99 |

**Ground Transportation - Car Service - Elite**

| | | |
|---|---|---|
| Boyle (car to client meeting held in New York, NY from Blackstone) | 12/07/05 | 27.49 |
| Boyle (car to client meeting held in New York, NY from Blackstone) | 12/13/05 | 39.53 |
| Boyle (car home from Blackstone after working late) | 12/14/05 | 43.55 |
| Boyle (car to client meeting held in New York, NY from Blackstone) | 12/16/05 | 43.61 |
| Boyle (car to client meeting held in New York, NY from Blackstone) | 12/19/05 | 35.45 |
| Boyle (car home from Blackstone after working late) | 12/29/05 | 27.29 |
| Boyle (car home from Blackstone after working late) | 01/09/06 | 35.45 |
| Boyle (car to client meeting held in New York, NY from Blackstone) | 01/11/06 | 23.41 |
| Boyle (car to Newark Airport in Newark, NJ from home) | 01/14/06 | 70.23 |
| Boyle (car home from Newark Airport in Newark, NJ) | 01/17/06 | 80.43 |
| Boyle (car to LaGuardia Airport in Queens, NY from home) | 01/22/06 | 41.82 |
| Boyle (car home from LaGuardia Airport in Queens, NY) | 01/24/06 | 41.82 |
| Boyle (car to Newark Airport in Newark, NJ from home) | 01/25/06 | 72.27 |
| Chakrapani (car to Newark Airport in Newark, NJ from home) | 01/15/06 | 110.01 |
| Chakrapani (car home from Newark Airport in Newark, NJ) | 01/17/06 | 93.69 |
| Chakrapani (car to Newark Airport in Newark, NJ from home) | 01/22/06 | 95.73 |
| Chakrapani (car home from Newark Airport in Newark, NJ) | 01/24/06 | 73.29 |
| Chakrapani (car to LaGuardia Airport in Queens, NY from home) | 01/25/06 | 77.52 |
| Costi (late evening document delivery to J. O'Connell's residence) | 01/08/06 | 72.37 |
| Huffard (car to client meeting in New York, NY from Blackstone) | 01/11/06 | 23.41 |
| Huffard (car to Blackstone from client meeting held in New York, NY) | 01/11/06 | 27.49 |
| Publishing Services - John (car home from Blackstone after working late) | 11/30/05 | 51.51 |
| Publishing Services - John (car home from Blackstone after working late) | 12/09/05 | 53.40 |
| Publishing Services - Kisson (car home from Blackstone after working late) | 11/29/05 | 50.29 |
| Publishing Services - Riverso (car home from Blackstone after working late) | 11/29/05 | 53.19 |
| Schlaack (car to LaGuardia Airport in Queens, NY from Blackstone) | 12/12/05 | 54.57 |
| Schlaack (car home from Newark Airport in Newark, NJ) | 12/13/05 | 80.73 |
| | Subtotal - Ground Transportation - Car Service - Elite | 1,499.55 |

**Ground Transportation - Local Travel**

| | | |
|---|---|---|
| Katz (fee for parking car while working late @ Blackstone) | 02/07/06 | 39.00 |
| Katz (fee for parking car while working late @ Blackstone) | 02/10/06 | 21.00 |
| Katz (fee for parking car while working late @ Blackstone) | 02/15/06 | 39.00 |
| Katz (fee for parking car while working late @ Blackstone) | 02/16/06 | 39.00 |
| Kovacs (weeknight taxi home from Blackstone after working late) | 01/08/06 | 9.00 |
| Kovacs (weeknight taxi home from Blackstone after working late) | 01/13/06 | 5.00 |
| Kovacs (weeknight taxi home from Blackstone after working late) | 01/19/06 | 6.00 |
| Kovacs (weeknight taxi home from Blackstone after working late) | 01/20/06 | 7.00 |
| Kovacs (weeknight taxi home from Blackstone after working late) | 01/29/06 | 10.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 10/26/05 | 20.00 |
| O'Connell (weekend taxi home from Blackstone) | 10/29/05 | 16.00 |
| O'Connell (weekend taxi to Blackstone from home) | 10/30/05 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 11/01/05 | 16.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 11/02/05 | 16.00 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through March 31, 2006**
**Invoice No. 10713**

| | | |
|---|---|---|
| O'Connell (weeknight taxi home from Blackstone after working late) | 11/07/05 | 16.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 11/11/05 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 11/14/05 | 16.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 11/15/05 | 16.00 |
| O'Connell (weekend taxi to Blackstone from home) | 11/20/05 | 17.00 |
| O'Connell (weekend taxi home from Blackstone) | 11/20/05 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 11/21/05 | 18.00 |
| O'Connell (early morning taxi to Blackstone from home) | 11/22/05 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 11/22/05 | 17.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 11/28/05 | 17.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 12/12/05 | 17.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 12/20/05 | 19.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 01/04/06 | 16.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 01/10/06 | 16.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 01/13/06 | 15.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 01/17/06 | 16.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 01/19/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 01/23/06 | 16.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 01/24/06 | 19.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 01/27/06 | 16.00 |
| O'Connell (weekend taxi home from Blackstone) | 01/28/06 | 16.00 |
| O'Connell (weekend taxi to Blackstone from home) | 01/29/06 | 17.00 |
| O'Connell (weekend taxi home from Blackstone) | 01/29/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 01/30/06 | 16.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 02/01/06 | 17.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 02/02/06 | 16.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 02/17/06 | 16.00 |
| O'Connell (taxi home from Blackstone on holiday) | 02/20/06 | 18.00 |
| **Subtotal - Ground Transportation - Local Travel** | | **734.00** |
| | | |
| **Ground Transportation - Out of Town Travel** | | |
| Boyle (car to airport from hotel in Nassau, Bahamas) | 01/22/06 | 128.40 |
| Boyle (car to hotel from airport in Nassau, Bahamas) | 01/24/06 | 128.40 |
| Chakrapani (taxi to client meeting from hotel in Nassau, Bahamas) | 01/17/06 | 22.00 |
| Chakrapani (taxi to hotel from airport in Nassau, Bahamas) | 01/22/06 | 25.00 |
| Chakrapani (taxi to client meeting from hotel in Nassau, Bahamas) | 01/23/06 | 25.00 |
| Chakrapani (taxi to hotel from client meeting in Nassau, Bahamas) | 01/23/06 | 25.00 |
| Chakrapani (taxi to client meeting from hotel in Nassau, Bahamas) | 01/24/06 | 25.00 |
| Chakrapani (taxi to airport from client meeting in Nassau, Bahamas) | 01/24/06 | 25.00 |
| O'Connell (taxi to airport from hotel in Jacksonville, FL) | 02/15/06 | 40.00 |
| **Subtotal - Ground Transportation - Out of Town Travel** | | **443.80** |
| | | |
| **Communications  - Teleconferencing** | | |
| Boyle | 01/26/06 | 20.47 |
| Boyle | 01/27/06 | 97.23 |
| Boyle | 01/27/06 | 28.31 |
| Boyle | 01/27/06 | 24.95 |
| Boyle | 01/27/06 | 20.36 |
| Boyle | 01/27/06 | 15.23 |
| Chakrapani | 01/16/06 | 1.00 |
| Huffard | 01/27/06 | 9.93 |
| Huffard | 01/27/06 | 7.71 |
| Kovacs | 01/06/06 | 8.57 |
| **Subtotal - Communications  - Teleconferencing** | | **233.76** |
| | | |
| **Communications - Facsimiles** | | |
| Bolger | 02/01/06 - 02/28/06 | 21.25 |
| Chakrapani | 01/16/06 | 68.80 |
| **Subtotal - Communications  - Facsimiles** | | **90.05** |
| | | |
| **Communications - Federal Express** | | |
| de Almeida | 02/20/06 | 7.89 |
| de Almeida | 02/20/06 | 7.89 |
| de Almeida | 02/20/06 | 7.89 |
| de Almeida | 02/20/06 | 7.89 |
| de Almeida | 02/20/06 | 7.89 |
| de Almeida | 02/20/06 | 11.24 |
| de Almeida | 02/20/06 | 11.24 |
| de Almeida | 02/20/06 | 11.24 |
| de Almeida | 02/20/06 | 11.24 |
| de Almeida | 02/20/06 | 11.24 |
| de Almeida | 02/20/06 | 11.24 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through March 31, 2006**
**Invoice No. 10713**

| | | |
|---|---|---|
| de Almeida | 02/20/06 | 12.34 |
| de Almeida | 02/20/06 | 12.34 |
| Lysle | 02/01/06 | 23.08 |
| | **Subtotal - Communications - Federal Express** | **154.65** |

**Meals with Clients**

| | | |
|---|---|---|
| Chakrapani (meal with Byrum & Young of Winn-Dixie in Nassau, Bahamas) | 01/16/06 | 37.92 |
| | **Subtotal - Meals with Clients** | **37.92** |

**Employee Meals**

| | | |
|---|---|---|
| Boyle (weekend working dinner meal @ Blackstone) | 12/17/05 | 20.00 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 01/10/06 | 20.00 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 01/11/06 | 20.00 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 02/01/06 | 20.00 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 02/03/06 | 20.00 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 02/04/06 | 20.00 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 02/10/06 | 20.00 |
| Chakrapani (in-room dinner meal @ hotel in Nassau, Bahamas) | 01/16/06 | 48.59 |
| Chakrapani (dinner meal @ hotel in Nassau, Bahamas) | 01/22/06 | 36.25 |
| Chakrapani (lunch meal @ hotel in Nassau, Bahamas) | 01/23/06 | 17.48 |
| Chakrapani (weeknight working dinner meal @ Blackstone while working late) | 01/31/06 | 6.29 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 12/21/05 | 17.31 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/03/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/04/06 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 01/07/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/17/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/20/06 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 01/21/06 | 8.74 |
| Costi (weekend working lunch meal @ Blackstone) | 01/22/06 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 01/22/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/24/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/27/06 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 01/28/06 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 01/29/06 | 15.26 |
| Costi (weekend working dinner meal @ Blackstone) | 01/29/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/31/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/01/06 | 16.69 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/02/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/03/06 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 02/04/06 | 10.63 |
| Costi (weekend working dinner meal @ Blackstone) | 02/04/06 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 02/05/06 | 14.96 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/07/06 | 19.95 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/09/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/10/06 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 02/11/06 | 20.00 |
| Costi (weekend working breakfast meal @ Blackstone) | 02/12/06 | 16.40 |
| Costi (weekend working lunch meal @ Blackstone) | 02/12/06 | 15.00 |
| Costi (weekend working dinner meal @ Blackstone) | 02/12/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/14/06 | 20.00 |
| Costi (meal @ airport in Jacksonville, FL) | 02/15/06 | 5.55 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 02/23/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 12/21/05 | 17.31 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 01/10/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 01/11/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 01/17/06 | 20.00 |
| O'Connell (working dinner meal @ Blackstone while working late) | 01/27/06 | 11.60 |
| O'Connell (weekend working lunch meal @ Blackstone) | 01/28/06 | 8.93 |
| O'Connell (weekend working dinner meal @ Blackstone) | 01/28/06 | 20.00 |
| O'Connell (working dinner meal @ Blackstone while working late) | 01/30/06 | 19.99 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 02/01/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 02/02/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 02/03/06 | 20.00 |
| | **Subtotal - Employee Meals** | **1,006.93** |

**Lodging**

| | | |
|---|---|---|
| Chakrapani (3 day hotel stay in Nassau, Bahamas) | 01/15/06 - 01/17/06 | 478.31 |
| Chakrapani (2 day hotel stay in Nassau, Bahamas) | 01/22/06 - 01/24/06 | 543.40 |
| | **Subtotal - Lodging** | **1,021.71** |

**Document Production**

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through March 31, 2006**
**Invoice No. 10713**

| | | |
|---|---|---|
| Kovacs (B$^2$ service fee for printing, binding & stitching, and delivery of presentation materials) | 02/08/06 | 521.55 |
| Kovacs (B$^2$ service fee for printing, CD ROM duplication, and delivery) | 02/20/06 | 395.57 |
| Lysle (B$^2$ service fee for scans, prints and delivery of presentation materials) | 01/31/06 | 2,443.86 |
| O'Connell (9,082 b/w copies) | 02/27/06 - 03/05/06 | 1,362.30 |
| **Subtotal - Document Production** | | **4,723.28** |

**External Research - Online Database**

| | | |
|---|---|---|
| de Almeida (fee for retrievel of documents from Court docket via P.A.C.E.R.) | 10/11/05 | 2.40 |
| de Almeida (fee for retrievel of documents from Court docket via P.A.C.E.R.) | 11/07/05 | 2.40 |
| de Almeida (fee for retrievel of documents from Court docket via P.A.C.E.R.) | 11/11/05 | 2.56 |
| de Almeida (fee for retrievel of documents from Court docket via P.A.C.E.R.) | 11/16/05 | 2.80 |
| de Almeida (fee for retrievel of documents from Court docket via P.A.C.E.R.) | 12/19/05 | 3.60 |
| de Almeida (fee for retrievel of documents from Court docket via P.A.C.E.R.) | 12/28/05 | 2.80 |
| **Subtotal - External Research - Online Database** | | **16.56** |

| | | |
|---|---|---|
| **Total Expenses** | | **$  13,508.50** |



July 10, 2006

Mr. Laurence Appel
Senior Vice President and General Counsel
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254

Monthly advisory fee for the period of April 1, 2006 through April 30, 2006:     $     167,000.00

Out-of-pocket expenses processed for the period through April 30, 2006: [1]

| | | |
|---|---|---|
| **Airfare** | $ 4,788.40 | |
| **Ground Transportation** | 3,158.27 | |
| **Communications** | 893.48 | |
| **Meals** | 1,676.97 | |
| **Lodging** | 2,949.12 | |
| **Research** | 1,052.08 | 14,518.32 |

Subtotal                                                                      181,518.32

Less: Payment Received                                                        (148,118.32)

**Total Amount Due**                                                 $        **33,400.00**

**Please wire transfer funds to:**

JP Morgan Chase Bank
One Chase Manhattan Plaza
New York, NY 10081
ABA# 021 000 021
Credit Account: The Blackstone Group L.P.
Account Receivable Dept. 14th Floor
Account # 066-287472

Invoice Number: 11416

---

[1] Expenses incurred, but not yet processed due to timing differences, will be billed at a later date.

**The Blackstone Group® L.P.**
345 Park Avenue
New York, NY 10154
212 583-5000

**Winn-Dixie Stores, Inc.**
**Summary of Expenses**
**Invoice No. 11416**

|  | GL Detail Apr-2006 | Total Expenses |
|---|---|---|
| Airfare | $ 4,788.40 | $ 4,788.40 |
| Ground Transportation - Car Service - Concord | 771.67 | 771.67 |
| Ground Transportation - Car Service - Elite | 558.82 | 558.82 |
| Ground Transportation - Local Travel | 350.00 | 350.00 |
| Ground Transportation - Out of Town Travel | 1,477.78 | 1,477.78 |
| Communications - Teleconferencing | 24.48 | 24.48 |
| Communications - Federal Express | 454.55 | 454.55 |
| Communications - Messenger - EDM | 370.25 | 370.25 |
| Communications - Messenger - Other | 44.20 | 44.20 |
| Employee Meals | 1,676.97 | 1,676.97 |
| Lodging | 2,949.12 | 2,949.12 |
| External Research - Securities Data | 1,023.35 | 1,023.35 |
| External Research - Online Database | 28.73 | 28.73 |
| **Total Expenses** | **$ 14,518.32** | **$ 14,518.32** |

| | | |
|---|---|---|
| **Airfare** | $ | **4,788.40** |
| **Ground Transportation** | | **3,158.27** |
| **Communications** | | **893.48** |
| **Meals** | | **1,676.97** |
| **Lodging** | | **2,949.12** |
| **Research** | | **1,052.08** |
| **Total Expenses** | **$** | **14,518.32** |

Winn-Dixie Stores, Inc.
Expense Detail Processed
Through April 30, 2006
Invoice No. 11416

**Airfare**

| | | |
|---|---|---|
| Costi (travel agency fee for booking of flight dated 02/20/06) | 02/17/06 | 20.00 |
| Costi (one way coach class flight to Jacksonville, FL from Queens, NY) | 02/20/06 | 557.80 |
| Costi (travel agency fee for booking of flight dated 02/24/06) | 02/24/06 | 20.00 |
| Costi (one-way coach class flight to Queens, NY from Jacksonville, FL) | 02/24/06 | 609.30 |
| Costi (travel agency fee for booking of flight dated 02/27/06) | 02/27/06 | 20.00 |
| Costi (one-way coach class flight to Queens, NY from Jacksonville, FL) | 02/27/06 | 607.80 |
| Costi (travel agency fee for booking dated 03/03/06) | 03/03/06 | 20.00 |
| Costi (one-way coach class flight to Newark, NJ from Jacksonville, FL) | 03/03/06 | 514.30 |
| Costi (travel agency fee for booking of round trip flight dated 03/05 & 03/07/06) | 03/05/06 | 40.00 |
| Costi (round trip coach class flight to/from Jacksonville, FL from/to Queens, NY) | 03/05/06 & 03/07/06 | 1,217.10 |
| Costi (travel agency fee for booking of round trip flight dated 03/15/06) | 03/14/06 | 40.00 |
| Costi (round trip coach class flight: Queens, NY to Jacksonville, FL to Newark, NJ) | 03/15/06 | 1,122.10 |
| | **Subtotal - Airfare** | **$        4,788.40** |

**Ground Transportation - Car Service - Concord**

| | | |
|---|---|---|
| Huffard (car home from Blackstone after working late) | 04/26/05 | 181.05 |
| Huffard (car home from Blackstone after working late) | 01/04/06 | 127.25 |
| Katz (car to client meeting in New York, NY from Blackstone) | 01/10/06 | 58.34 |
| Publishing Services - Clarke (car home from Blackstone after working late) | 11/19/05 | 30.60 |
| Publishing Services - Glaraga (late night car to Blacktone from home) | 01/31/06 | 60.18 |
| Publishing Services - Hilton (car home from Blackstone after working late) | 11/16/05 | 54.06 |
| Publishing Services - Nguyen (car home from Blackstone after working late) | 11/15/05 | 53.13 |
| Publishing Services - Riverso (car home from Blackstone after working late) | 11/15/05 | 55.59 |
| Publishing Services - Riverso (car home from Blackstone after working late) | 11/16/05 | 50.49 |
| Publishing Services - Riverso (late night car to Blackstone from home) | 11/20/05 | 55.59 |
| Publishing Services - Wang (car home from Blackstone after working late) | 11/16/05 | 45.39 |
| | **Subtotal - Ground Transportation - Car Service - Concord** | **771.67** |

**Ground Transportation - Car Service - Elite**

| | | |
|---|---|---|
| Boyle (car home from LaGuardia Airport in Queens, NY) | 01/25/06 | 49.98 |
| Boyle (car home from Blackstone after working late) | 02/08/06 | 35.45 |
| Costi (car home from Blackstone after working late) | 02/09/06 | 23.41 |
| Costi (car LaGuardia Airport in Queens, NY from home) | 02/15/06 | 41.82 |
| Costi (car to JFK Airport in Queens, NY from Blackstone) | 02/20/06 | 69.11 |
| Costi (car home from LaGuardia Airport in Queens, NY) | 02/24/06 | 41.82 |
| Costi (car to LaGuardia Airport in Queens, NY from home) | 02/27/06 | 46.41 |
| O'Connell (car to JFK Airport in Queens, NY from Blackstone) | 02/15/06 | 69.11 |
| O'Connell (car home from Teterboro Airport in Teterboro, NJ) | 02/16/06 | 120.97 |
| Sutton (car home from Blackstone after working late) | 02/15/06 | 60.74 |
| | **Subtotal - Ground Transportation - Car Service - Elite** | **558.82** |

**Ground Transportation - Local Travel**

| | | |
|---|---|---|
| Eisner (taxi to client meeting in New York, NY from Blackstone) | 07/18/05 | 7.00 |
| Eisner (weeknight taxi home from Blackstone) | 07/25/05 | 8.00 |
| Eisner (early morning taxi home from Blackstone after returning to office) | 07/26/05 | 9.00 |
| Eisner (weeknight taxi home from Blackstone after working late) | 07/26/05 | 10.00 |
| Eisner (weekend taxi home from Blackstone) | 07/30/05 | 9.00 |
| Eisner (weekend taxi home from Blackstone) | 07/31/05 | 8.00 |
| Eisner (weeknight taxi home from Blackstone after working late) | 08/02/05 | 9.00 |
| Katz (fee for parking car while working late @ Blackstone) | 02/28/06 | 39.00 |
| Katz (fee for parking car while working late @ Blackstone) | 03/02/06 | 21.00 |
| Katz (fee for parking car while working late @ Blackstone) | 03/08/06 | 21.00 |
| Katz (fee for parking car while working late @ Blackstone) | 03/14/06 | 21.00 |
| Katz (fee for parking car while working late @ Blackstone) | 03/16/06 | 21.00 |
| Katz (fee for parking car while working late @ Blackstone) | 03/17/06 | 39.00 |
| Katz (fee for parking car while working late @ Blackstone) | 03/20/06 | 21.00 |
| Katz (fee for parking car while working late @ Blackstone) | 03/21/06 | 39.00 |
| Katz (fee for parking car while working late @ Blackstone) | 04/03/06 | 21.00 |
| Katz (fee for parking car while working late @ Blackstone) | 04/06/06 | 39.00 |
| Kovacs (weekend taxi home from Blackstone) | 02/12/06 | 8.00 |
| | **Subtotal - Ground Transportation - Local Travel** | **350.00** |

**Ground Transportation - Out of Town Travel**

| | | |
|---|---|---|
| Costi (taxi to hotel from airport in Jacksonville, FL) | 02/17/06 | 40.00 |
| Costi (taxi while traveling in Jacksonville, FL) | 02/18/06 | 18.00 |
| Costi (fee for parking car rental @ hotel during stay in Jacksonville, FL) | 02/20/06 | 15.00 |
| Costi (fee for parking car rental @ hotel during stay in Jacksonville, FL) | 02/21/06 | 15.00 |
| Costi (Hertz car rental during stay in Jacksonville, FL) | 02/20/06 - 02/24/06 | 591.10 |
| Costi (fee for parking car rental @ hotel during stay in Jacksonville, FL) | 02/27/06 | 15.00 |
| Costi (fee for parking car rental @ hotel during stay in Jacksonville, FL) | 02/28/06 | 15.00 |
| Costi (Hertz car rental during stay in Jacksonville, FL) | 02/27/06 - 03/03/06 | 375.49 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through April 30, 2006**
**Invoice No. 11416**

| | | |
|---|---|---|
| Costi (fee for parking car rental @ hotel during stay in Jacksonville, FL) | 03/01/06 | 15.00 |
| Costi (fee for parking car rental @ hotel during stay in Jacksonville, FL) | 03/02/06 | 15.00 |
| Costi (fee for parking car rental @ hotel during stay in Jacksonville, FL) | 03/07/06 | 15.00 |
| Costi (fee for parking car rental @ hotel during stay in Jacksonville, FL) | 03/07/06 | 15.00 |
| Costi (Hertz car rental during stay in Jacksonville, FL) | 03/05/06 - 03/07/05 | 158.94 |
| Costi (National car rental during stay in Jacksonville, FL) | 03/14/06 - 03/16/06 | 174.25 |
| | **Subtotal - Ground Transportation - Out of Town Travel** | **1,477.78** |

**Communications  - Teleconferencing**

| | | |
|---|---|---|
| Huffard | 03/30/06 | 24.48 |
| | **Subtotal - Communications  - Teleconferencing** | **24.48** |

**Communications - Federal Express**

| | | |
|---|---|---|
| Butler | 03/31/06 | 14.85 |
| de Almeida | 03/13/06 | 7.97 |
| de Almeida | 03/13/06 | 7.97 |
| de Almeida | 03/13/06 | 9.45 |
| de Almeida | 03/13/06 | 9.45 |
| de Almeida | 03/13/06 | 9.45 |
| de Almeida | 03/13/06 | 16.94 |
| de Almeida | 03/13/06 | 16.94 |
| de Almeida | 03/13/06 | 16.94 |
| de Almeida | 03/13/06 | 16.94 |
| de Almeida | 03/13/06 | 16.94 |
| de Almeida | 03/13/06 | 19.14 |
| de Almeida | 03/13/06 | 19.14 |
| de Almeida | 03/20/06 | 7.97 |
| de Almeida | 03/20/06 | 7.97 |
| de Almeida | 03/20/06 | 7.97 |
| de Almeida | 03/20/06 | 7.97 |
| de Almeida | 03/20/06 | 7.97 |
| de Almeida | 03/20/06 | 11.34 |
| de Almeida | 03/20/06 | 11.34 |
| de Almeida | 03/20/06 | 11.34 |
| de Almeida | 03/20/06 | 12.45 |
| de Almeida | 03/20/06 | 12.45 |
| de Almeida | 03/20/06 | 16.94 |
| de Almeida | 03/20/06 | 21.34 |
| Guterl | 03/06/06 | 28.25 |
| Guterl | 03/13/06 | 28.25 |
| Kovacs | 02/14/06 | 61.94 |
| | **Subtotal - Communications - Federal Express** | **454.55** |

**Communications - Messenger - EDM**

| | | |
|---|---|---|
| Cohen | 03/03/06 | 119.00 |
| O'Connell | 03/07/06 | 44.00 |
| O'Connell | 03/07/06 | 22.00 |
| O'Connell | 03/07/06 | 22.00 |
| O'Connell | 03/08/06 | 11.25 |
| O'Connell | 03/09/06 | 44.00 |
| O'Connell | 03/09/06 | 44.00 |
| O'Connell | 03/10/06 | 44.00 |
| O'Connell | 03/10/06 | 11.25 |
| O'Connell | 03/10/06 | 8.75 |
| | **Subtotal - Communications - Messenger - EDM** | **370.25** |

**Communications - Messenger - Other**

| | | |
|---|---|---|
| O'Connell | 03/08/06 | 12.95 |
| O'Connell | 03/17/06 | 31.25 |
| | **Subtotal - Communications - Messenger - Other** | **44.20** |

**Employee Meals**

| | | |
|---|---|---|
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 01/25/06 | 20.00 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 01/30/06 | 20.00 |
| Boyle (weeknight working dinner meal @ Blackstone while working late) | 02/06/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/17/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/23/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/30/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/07/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/11/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/13/06 | 20.00 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through April 30, 2006**
**Invoice No. 11416**

| | | |
|---|---|---|
| Costi (in-room meal @ hotel during stay in Jacksonville, FL) | 02/16/06 | 16.41 |
| Costi (weekend working lunch meal @ Blackstone) | 02/18/06 | 13.48 |
| Costi (weekend working dinner meal @ Blackstone) | 02/18/06 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 02/19/06 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 02/19/06 | 20.00 |
| Costi (meal while traveling to Jacksonville, FL) | 02/21/06 | 6.53 |
| Costi (meal while traveling to Jacksonville, FL) | 02/21/06 | 11.82 |
| Costi (in-room meal @ hotel during stay in Jacksonville, FL) | 02/21/06 | 2.89 |
| Costi (meal while traveling in Jacksonville, FL) | 02/22/06 | 3.42 |
| Costi (meal while traveling to Jacksonville, FL) | 02/23/06 | 13.42 |
| Costi (in-room dinner meal @ hotel during stay in Jacksonville, FL) | 02/23/06 | 29.01 |
| Costi (meal while traveling in Jacksonville, FL) | 02/24/06 | 3.74 |
| Costi (meal while traveling in Jacksonville, FL) | 02/24/06 | 15.42 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/24/06 | 20.00 |
| Costi (weekend working meal @ Blackstone) | 02/25/06 | 8.86 |
| Costi (weekend working lunch meal @ Blackstone) | 02/26/06 | 6.91 |
| Costi (weekend working dinner meal @ Blackstone) | 02/26/06 | 20.00 |
| Costi (in-room meal @ hotel during stay in Jacksonville, FL) | 02/28/06 | 2.89 |
| Costi (meal while traveling in Jacksonville, FL) | 02/28/06 | 13.42 |
| Costi (meal while traveling in Jacksonville, FL) | 02/28/06 | 16.76 |
| Costi (meal while traveling in Jacksonville, FL) | 03/01/06 | 13.42 |
| Costi (in-room dinner meal @ hotel during stay in Jacksonville, FL) | 03/01/06 | 51.16 |
| Costi (in-room meal @ hotel during stay in Jacksonville, FL) | 03/02/06 | 7.69 |
| Costi (meal while traveling in Jacksonville, FL) | 03/03/06 | 6.42 |
| Costi (meal while traveling in Jacksonville, FL) | 03/03/06 | 13.42 |
| Costi (meal while traveling in Jacksonville, FL) | 03/03/06 | 19.43 |
| Costi (weekend working lunch meal @ Blackstone) | 03/04/06 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 03/04/06 | 20.00 |
| Costi (meal while traveling) | 03/05/06 | 13.42 |
| Costi (weekend working meal @ Blackstone) | 03/05/06 | 18.42 |
| Costi (in-room dinner meal @ hotel during stay in Jacksonville, FL) | 03/05/06 | 36.00 |
| Costi (meal while traveling in Jacksonville, FL) | 03/06/06 | 7.81 |
| Costi (meal while traveling in Jacksonville, FL) | 03/07/06 | 3.20 |
| Costi (meal while traveling in Jacksonville, FL) | 03/07/06 | 13.42 |
| Costi (meal while traveling in Jacksonville, FL) | 03/07/06 | 15.70 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/08/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/09/06 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 03/11/06 | 12.11 |
| Costi (weekend working dinner meal @ Blackstone) | 03/11/06 | 20.00 |
| Costi (weekend working meal @ Blackstone) | 03/12/06 | 16.02 |
| Costi (weekend working meal @ Blackstone) | 03/12/06 | 20.00 |
| Costi (meal while traveling in Jacksonville, FL) | 03/13/06 | 14.83 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/14/06 | 20.00 |
| Costi (meal while traveling in Jacksonville, FL) | 03/15/06 | 8.59 |
| Costi (meal while traveling in Jacksonville, FL) | 03/15/06 | 26.00 |
| Costi (meal while traveling in Jacksonville, FL) | 03/15/06 | 13.42 |
| Costi (in-room meal @ hotel during stay in Jacksonville, FL) | 03/15/06 | 2.89 |
| Costi (in-room meal @ hotel during stay in Jacksonville, FL) | 03/15/06 | 13.37 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/16/06 | 14.96 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/17/06 | 20.00 |
| Costi (weekend working meal @ Blackstone) | 03/18/06 | 15.00 |
| Katz (weekday lunch meal during conference call) | 03/24/06 | 7.77 |
| Katz (weekday lunch meal during conference call) | 04/04/06 | 13.41 |
| Kovacs (weekend working lunch meal @ Blackstone) | 10/22/05 | 7.04 |
| Kovacs (weekend working dinner meal @ Blackstone) | 10/22/05 | 20.00 |
| Kovacs (weekend working lunch meal @ Blackstone) | 10/23/05 | 3.96 |
| Kovacs (weekend working dinner meal @ Blackstone) | 10/23/05 | 20.00 |
| Kovacs (weekend working dinner meal @ Blackstone) | 10/24/05 | 20.00 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 10/26/05 | 9.75 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 10/27/05 | 20.00 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 10/28/05 | 20.00 |
| Kovacs (weekend working dinner meal @ Blackstone) | 10/29/05 | 20.00 |
| Kovacs (weekend working dinner meal @ Blackstone) | 10/30/05 | 20.00 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 11/01/05 | 20.00 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 11/02/05 | 18.58 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 11/03/05 | 20.00 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 11/04/05 | 20.00 |
| Kovacs (weekend working lunch meal @ Blackstone) | 11/05/05 | 10.53 |
| Kovacs (weekend working dinner meal @ Blackstone) | 11/05/05 | 20.00 |
| Kovacs (weekend working dinner meal @ Blackstone) | 11/06/05 | 20.00 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 11/07/05 | 20.00 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 11/08/05 | 20.00 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through April 30, 2006**
**Invoice No. 11416**

| | | |
|---|---|---|
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 11/10/05 | 18.55 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 11/11/05 | 20.00 |
| Kovacs (weekend working dinner meal @ Blackstone) | 11/12/05 | 20.00 |
| Kovacs (weekend working lunch meal @ Blackstone) | 11/13/05 | 12.29 |
| Kovacs (weekend working dinner meal @ Blackstone) | 11/13/05 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 01/17/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 01/23/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 01/24/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 01/30/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 02/07/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 02/08/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 02/09/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 02/14/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 02/17/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 02/20/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 02/28/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 03/08/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while late) | 03/09/06 | 20.00 |
| Sutton (weekday lunch meal during conference call) | 03/24/06 | 13.41 |
| **Subtotal - Employee Meals** | | **1,676.97** |

**Lodging**

| | | |
|---|---|---|
| Costi (1 day hotel stay in Jacksonville, FL) | 02/15/06 - 02/16/06 | 224.87 |
| Costi (4 day hotel stay in Jacksonville, FL) | 02/20/06 - 02/23/06 | 899.48 |
| Costi (4 day hotel stay in Jacksonville, FL) | 02/27/06 - 03/03/06 | 929.50 |
| Costi (2 day hotel stay in Jacksonville, FL) | 03/05/06 - 03/07/06 | 472.34 |
| Costi (1 day hotel stay in Jacksonville, FL) | 03/14/06 - 03/15/06 | 236.17 |
| Schlaack (1 day hotel stay in Jacksonville, FL) | 12/12/05 - 12/13/05 | 186.76 |
| **Subtotal - Lodging** | | **2,949.12** |

**External Research - Securities Data**

| | | |
|---|---|---|
| Kovacs (online data research) | 02/22/06 | 142.59 |
| Kovacs (online data research) | 02/22/06 | 880.76 |
| **Subtotal - External Research - Securities Data** | | **1,023.35** |

**External Research - Online Database**

| | | |
|---|---|---|
| de Almeida (fee for the retrieval of document from Court website via P.A.C.E.R. | 03/19/06 | 4.80 |
| Kovacs (online data research) | 12/22/05 | 9.99 |
| Kovacs (online data research) | 12/27/05 | 3.95 |
| Kovacs (online data research) | 12/28/05 | 9.99 |
| **Subtotal - External Research - Online Database** | | **28.73** |

| | | |
|---|---|---|
| **Total Expenses** | **$** | **14,518.32** |

## The **Blackstone** Group®

July 10, 2006

Mr. Laurence Appel
Senior Vice President and General Counsel
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254

Monthly advisory fee for the period of May 1, 2006 through May 31, 2006:        $        167,000.00

Out-of-pocket expenses processed for the period through May 31, 2006: [1]

| | | |
|---|---:|---:|
| **Airfare** | $  5,712.50 | |
| **Ground Transportation** | 4,022.10 | |
| **Communications** | 226.50 | |
| **Meals** | 1,201.87 | |
| **Lodging** | 897.50 | |
| **Document Production** | 2,131.05 | |
| **Publishing Services** | 764.75 | 14,956.27 |
| **Total Amount Due** | | $    **181,956.27** |

**Please wire transfer funds to:**

JP Morgan Chase Bank
One Chase Manhattan Plaza
New York, NY 10081
ABA# 021 000 021
Credit Account: The Blackstone Group L.P.
Account Receivable Dept. 14th Floor
Account # 066-287472

Invoice Number: 11783

---

[1] Expenses incurred, but not yet processed due to timing differences, will be billed at a later date.

**The Blackstone Group® L.P.**
345 Park Avenue
New York, NY 10154
212 583-5000

**Winn-Dixie Stores, Inc.**
**Summary of Expenses**
**Invoice No. 11783**

|  | GL Detail May-2006 | Total Expenses |
|---|---|---|
| Airfare | $      5,712.50 | **5,712.50** |
| Ground Transportation - Car Service - Concord | 1,187.04 | **1,187.04** |
| Ground Transportation - Car Service - Elite | 837.66 | **837.66** |
| Ground Transportation - Local Travel | 1,304.00 | **1,304.00** |
| Ground Transportation - Out of Town Travel | 693.40 | **693.40** |
| Communications - Teleconferencing | 86.36 | **86.36** |
| Communications - Federal Express | 132.19 | **132.19** |
| Communications - Messenger | 7.95 | **7.95** |
| Meals with Clients | 50.62 | **50.62** |
| Employee Meals | 1,151.25 | **1,151.25** |
| Lodging | 897.50 | **897.50** |
| Document Production | 2,131.05 | **2,131.05** |
| Publishing Services | 764.75 | **764.75** |
| **Total Expenses** | **$     14,956.27** | **$     14,956.27** |

| | |
|---|---|
| **Airfare** | **$      5,712.50** |
| **Ground Transportation** | **4,022.10** |
| **Communications** | **226.50** |
| **Meals** | **1,201.87** |
| **Lodging** | **897.50** |
| **Document Production** | **2,131.05** |
| **Publishing Services** | **764.75** |
| **Total Expenses** | **$     14,956.27** |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through May 31, 2006**
**Invoice No. 11783**

**Airfare**

| | | | |
|---|---|---|---|
| Huffard (travel agency fee for booking of flight dated 02/24/06) | 02/24/06 | | 20.00 |
| Huffard (one-way coach class flight to Queens, NY from Jacksonville, FL) | 02/24/06 | | 709.00 |
| Huffard (travel agency fee for booking of flight to Jacksonville, FL dated 03/07/06) | 03/07/06 | | 20.00 |
| Huffard (one-way coach class flight to Jacksonville, FL from Newark, NJ) | 03/07/06 | | 557.80 |
| Huffard (travel agency fee for booking of flight to Queens, NY dated 03/07/06) | 03/07/06 | | 20.00 |
| Huffard (one-way coach class flight to Jacksonville, FL from Queens, NY) | 03/07/06 | | 609.30 |
| O'Connell (travel agency fee for booking of flight to Jacksonville, FL dated 02/15/06) | 02/15/06 | | 20.00 |
| O'Connell (one-way coach class flight to Jacksonville, FL from Queens, NY) | 02/15/06 | | 557.80 |
| O'Connell (travel agency fee for booking of flight to Jacksonville, FL dated 02/20/06) | 02/20/06 | | 20.00 |
| O'Connell (one-way coach class flight to Jacksonville, FL from Queens, NY) | 02/20/06 | | 557.80 |
| O'Connell (travel agency fee for booking of flight Queens, NY dated 02/22/06) | 02/22/06 | | 20.00 |
| O'Connell (one-way coach class flight to Queens, NY from Jacksonville, FL) | 02/22/06 | | 609.30 |
| O'Connell (travel agency fee for booking of flight to Jacksonville, FL dated 03/06/06) | 03/06/06 | | 20.00 |
| O'Connell (one-way coach class flight to Jacksonville, FL from Newark, NJ) | 03/06/06 | | 512.80 |
| O'Connell (travel agency fee for booking of flight to Queens, NY dated 03/06/06) | 03/06/06 | | 20.00 |
| O'Connell (one-way coach class flight to Queens, NY from Jacksonville, FL) | 03/06/06 | | 609.30 |
| O'Connell (travel agency fee for booking of round trip flight dated 04/19/06 & 04/20/06) | 04/18/06 | | 40.00 |
| O'Connell (round trip coach class flight to/from Jacksonville, FL from/to Queens, NY) | 04/19/06 & 04/20/06 | | 1,318.60 |
| Schlaack (credit issued by vendor) | 12/29/05 | | (20.00) |
| Schlaack (credit for unused airline ticket) | 12/29/05 | | (509.20) |
| | **Subtotal - Airfare** | $ | 5,712.50 |

**Ground Transportation - Car Service - Concord**

| | | |
|---|---|---|
| Huffard (car home from Blackstone after working late) | 02/08/06 | 132.35 |
| Huffard (car to Blackstone from client meeting in New York, NY) | 02/17/06 | 40.80 |
| Huffard (car to LaGuardia Airport in Queens, NY) | 02/24/06 | 147.65 |
| Huffard (car to Newark Airport in Newark, NY from home) | 03/07/06 | 240.72 |
| Huffard (car home from LaGuardia Airport in Queens, NY) | 03/07/06 | 147.65 |
| Katz (car to client meeting in New York, NY from Blackstone) | 02/07/06 | 54.06 |
| Katz (car to client meeting in New York, NY from Blackstone) | 02/28/06 | 54.06 |
| Katz (car to client meeting in New York, NY from Blackstone) | 03/14/06 | 45.90 |
| Katz (car to client meeting in New York, NY from Blackstone) | 03/21/06 | 62.22 |
| Katz (car to client meeting in New York, NY from Blackstone) | 03/28/06 | 45.90 |
| Katz (car to client meeting in New York, NY from Blackstone) | 04/04/06 | 45.90 |
| Katz (car home from Blackstone after working late) | 04/17/06 | 111.69 |
| Katz (car to client meeting in New York, NY from Blackstone) | 04/18/06 | 58.14 |
| **Subtotal - Ground Transportation - Car Service - Concord** | | 1,187.04 |

**Ground Transportation - Car Service - Elite**

| | | |
|---|---|---|
| Chakrapani (car to JFK Airport in Queens, NY from home) | 03/10/06 | 68.60 |
| Costi (car home from Newark Airport in Newark, NJ) | 03/03/06 | 113.07 |
| Costi (car to JFK Airport in Queens, NY from Blackstone) | 03/05/06 | 65.03 |
| Costi (car home from LaGuardia Airport in Queens, NY) | 03/07/06 | 46.41 |
| Costi (car to LaGuardia Airport in Queens, NY from home) | 03/14/06 | 41.82 |
| Costi (car home from Newark Airport in Newark, NJ) | 03/16/06 | 72.68 |
| Costi (late night document delivery to J. O'Connell's residence from Blackstone) | 03/19/06 | 35.45 |
| O'Connell (car to Newark Airport in Newark, NJ from home) | 03/07/06 | 70.23 |
| O'Connell (car home from LaGuardia Airport in Queens, NY) | 03/07/06 | 45.90 |
| Publishing Services - Freeman (car home from Blackstone after working late) | 04/06/06 | 47.63 |
| Publishing Services - Marques (car home from Blackstone after working late) | 04/13/06 | 35.04 |
| Publishing Services - Olaya (late evening car to Blackstone from home) | 04/06/06 | 48.35 |
| Publishing Services - Smith (car home from Blackstone after working late) | 04/07/06 | 40.60 |
| Publishing Services - Tillman (car home from Blackstone after working late) | 04/07/06 | 65.28 |
| Publishing Services - Wang (car home from Blackstone after working late) | 04/05/06 | 41.57 |
| **Subtotal - Ground Transportation - Car Service - Elite** | | 837.66 |

**Ground Transportation - Local Travel**

| | | |
|---|---|---|
| Costi (weeknight taxi home from Blackstone after working late) | 12/09/05 | 16.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 12/20/05 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 12/21/05 | 10.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 12/22/05 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 12/23/05 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 12/26/05 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 12/27/05 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 12/28/05 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 12/29/05 | 14.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 12/30/05 | 10.00 |
| Costi (weekend taxi home from Blackstone) | 12/31/05 | 8.00 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through May 31, 2006**
**Invoice No. 11783**

| | | |
|---|---|---|
| Costi (weeknight taxi home from Blackstone after working late) | 01/02/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/03/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/04/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/05/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/06/06 | 8.00 |
| Costi (weekend taxi home from Blackstone) | 01/07/06 | 8.00 |
| Costi (weekend taxi to Blackstone from home) | 01/08/06 | 6.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/09/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/10/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/11/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/12/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/13/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone) | 01/15/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/16/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/17/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/18/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/19/06 | 8.00 |
| Costi (weekend taxi home from Blackstone) | 01/22/06 | 9.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/23/06 | 14.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/24/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/25/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/26/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/27/06 | 8.00 |
| Costi (weekend taxi to Blackstone from home) | 01/28/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 01/28/06 | 8.00 |
| Costi (weekend taxi to Blackstone from home) | 01/29/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 01/29/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/30/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 01/31/06 | 9.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 02/01/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 02/02/06 | 13.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 02/03/06 | 12.00 |
| Costi (weekend taxi to Blackstone from home) | 02/04/06 | 6.00 |
| Costi (weekend taxi to Blackstone from home) | 02/05/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 02/05/06 | 13.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 02/06/06 | 11.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 02/07/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 02/09/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 02/10/06 | 13.00 |
| Costi (weekend taxi to Blackstone from home) | 02/11/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 02/11/06 | 9.00 |
| Costi (weekend taxi to Blackstone from home) | 02/12/06 | 8.00 |
| Costi (weekend taxi home from Blackstone) | 02/12/06 | 11.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 02/13/06 | 8.00 |
| Costi (taxi to airport in Queens, NY from Blackstone) | 02/14/06 | 21.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 02/17/06 | 12.00 |
| Costi (weekend taxi to Blackstone from home) | 02/18/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 02/18/06 | 8.00 |
| Costi (weekend taxi to Blackstone from home) | 02/19/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 02/19/06 | 9.00 |
| Costi (taxi to Blackstone on holiday) | 02/20/06 | 7.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 02/24/06 | 12.00 |
| Costi (weekend taxi to Blackstone from home) | 02/25/06 | 7.00 |
| Costi (weekend taxi home from Blackstone) | 02/25/06 | 15.00 |
| Costi (weekend taxi to Blackstone from home) | 02/26/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 02/26/06 | 11.00 |
| Costi (weekend taxi to Blackstone from home) | 03/04/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 03/04/06 | 8.00 |
| Costi (weekend taxi to Blackstone from home) | 03/05/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 03/08/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 03/09/06 | 14.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 03/10/06 | 8.00 |
| Costi (weekend taxi to Blackstone from home) | 03/11/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 03/11/06 | 12.00 |
| Costi (weekend taxi to Blackstone from home) | 03/12/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 03/12/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 03/13/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 03/14/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 03/16/06 | 8.00 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through May 31, 2006**
**Invoice No. 11783**

| | | |
|---|---|---|
| Costi (weeknight taxi home from Blackstone after working late) | 03/17/06 | 8.00 |
| Costi (weekend taxi to Blackstone from home) | 03/18/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 03/18/06 | 8.00 |
| Costi (weekend taxi to Blackstone from home) | 03/19/06 | 6.00 |
| Costi (weekend taxi home from Blackstone) | 03/19/06 | 8.00 |
| Costi (weeknight taxi home from Blackstone after working late) | 03/20/06 | 8.00 |
| Kovacs (weeknight taxi home from Blackstone after working late) | 02/17/06 | 10.00 |
| Kovacs (weekend taxi home from Blackstone) | 02/25/06 | 8.00 |
| Kovacs (weekend taxi home from Blackstone) | 03/04/06 | 11.00 |
| Kovacs (weekend taxi home from Blackstone after returning to office) | 03/04/06 | 9.00 |
| O'Connell (taxi home from LaGuardia Airport in Queens, NY) | 02/22/06 | 35.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 02/23/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 02/27/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 02/28/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 03/01/06 | 17.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 03/02/06 | 16.00 |
| O'Connell (weekend taxi to Blackstone from home) | 03/05/06 | 15.00 |
| O'Connell (weekend taxi home from Blackstone) | 03/05/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 03/06/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 03/08/06 | 15.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 03/09/06 | 19.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 03/15/06 | 19.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 03/20/06 | 19.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 03/28/06 | 19.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 04/03/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 04/04/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 04/05/06 | 20.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 04/12/06 | 19.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 04/14/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 04/18/06 | 18.00 |
| O'Connell (taxi to Blackstone from LaGuardia Airport in Queens, NY) | 04/20/06 | 35.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 04/20/06 | 18.00 |
| O'Connell (weeknight taxi home from Blackstone after working late) | 04/21/06 | 16.00 |
| O'Connell (weekend taxi to Blackstone from home) | 04/23/06 | 18.00 |
| O'Connell (weekend taxi home from Blackstone) | 04/23/06 | 17.00 |
| O'Connell (taxi to Blackstone from LaGuardia Airport in Queens, NY) | 05/03/06 | 35.00 |
| | **Subtotal - Ground Transportation - Local Travel** | **1,304.00** |

**Ground Transportation - Out of Town Travel**

| | | |
|---|---|---|
| Costi (taxi while traveling in Jacksonville, FL) | 02/15/06 | 18.00 |
| Huffard (Hertz car rental during stay in Jacksonville, FL) | 02/23/06 - 02/24/06 | 98.94 |
| Huffard (Hertz car rental during stay in Jacksonville, FL) | 03/07/06 | 55.24 |
| Kovacs (car to airport in Queens, NY from Blackstone) | 04/24/06 | 148.26 |
| Kovacs (car to Blackstone from airport in Queens, NY) | 04/25/06 | 274.96 |
| O'Connell (taxi to airport from client's offices in Jacksonville, FL ) | 02/22/06 | 43.00 |
| Huffard (fee for parking car rental @ hotel during stay in Jacksonville, FL) | 02/23/06 | 15.00 |
| O'Connell (taxi to client's offices from airport in Jacksonville, FL) | 04/19/06 | 40.00 |
| | **Subtotal - Ground Transportation - Out of Town Travel** | **693.40** |

**Communications  - Teleconferencing**

| | | |
|---|---|---|
| Huffard | 03/27/06 | 20.58 |
| Huffard | 03/27/06 | 0.67 |
| Huffard | 04/10/06 | 11.41 |
| Huffard | 04/11/06 | 28.76 |
| Huffard | 04/12/06 | 9.96 |
| Huffard | 04/17/06 | 14.98 |
| | **Subtotal - Communications  - Teleconferencing** | **86.36** |

**Communications - Federal Express**

| | | |
|---|---|---|
| de Almeida | 04/17/06 | 7.93 |
| de Almeida | 04/17/06 | 7.93 |
| de Almeida | 04/17/06 | 7.93 |
| de Almeida | 04/17/06 | 7.93 |
| de Almeida | 04/17/06 | 7.93 |
| de Almeida | 04/17/06 | 11.29 |
| de Almeida | 04/17/06 | 11.29 |
| de Almeida | 04/17/06 | 11.29 |
| de Almeida | 04/17/06 | 11.29 |
| de Almeida | 04/17/06 | 11.29 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through May 31, 2006**
**Invoice No. 11783**

| | | |
|---|---|---|
| de Almeida | 04/17/06 | 11.29 |
| de Almeida | 04/17/06 | 12.40 |
| de Almeida | 04/17/06 | 12.40 |
| | Subtotal - Communications - Federal Express | | **132.19** |

**Communications - Messenger**
| | | |
|---|---|---|
| O'Connell | 04/13/06 | 7.95 |
| | Subtotal - Communications - Messenger | | **7.95** |

**Meals with Clients**
| | | |
|---|---|---|
| Huffard (catered breakfast meal for 6 people during client meeting held at Blackstone) | 03/09/06 | 50.62 |
| | Subtotal - Meals with Clients | | **50.62** |

**Employee Meals**
| | | |
|---|---|---|
| Costi (weeknight working dinner meal @ Blackstone while working late) | 12/21/05 | 20.00 |
| Costi (weekend working meal @ Blackstone) | 01/07/06 | 6.45 |
| Costi (weekend working meal @ Blackstone) | 01/08/06 | 11.75 |
| Costi (weekend working meal @ Blackstone) | 01/15/06 | 13.45 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/20/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 01/31/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 02/16/06 | 20.00 |
| Costi (meal while traveling in Jacksonville, FL) | 02/21/06 | 8.33 |
| Costi (meal while traveling in Jacksonville, FL) | 02/22/06 | 9.00 |
| Costi (meal while traveling in Jacksonville, FL) | 02/23/06 | 9.00 |
| Costi (weekend working meal @ Blackstone) | 02/26/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/10/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/16/06 | 14.63 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/17/06 | 9.21 |
| Costi (weekend working lunch meal @ Blackstone) | 03/18/06 | 12.11 |
| Costi (weekend working dinner meal @ Blackstone) | 03/18/06 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 03/19/06 | 17.58 |
| Costi (weekend working dinner meal @ Blackstone) | 03/19/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/20/06 | 14.67 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/20/06 | 15.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/21/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/23/06 | 19.73 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/24/06 | 20.00 |
| Costi (weekend working meal @ Blackstone) | 03/25/06 | 15.16 |
| Costi (weekend working breakfast meal @ Blackstone) | 03/26/06 | 9.90 |
| Costi (weekend working lunch meal @ Blackstone) | 03/26/06 | 14.54 |
| Costi (weekend working dinner meal @ Blackstone) | 03/26/06 | 18.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/27/06 | 19.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/28/06 | 18.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/29/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/30/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 03/31/06 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 04/01/06 | 11.20 |
| Costi (weekend working dinner meal @ Blackstone) | 04/01/06 | 13.96 |
| Costi (weekend working meal @ Blackstone) | 04/02/06 | 11.22 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 04/03/06 | 7.33 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 04/04/06 | 18.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 04/05/06 | 18.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 04/06/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 04/07/06 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 04/08/06 | 20.00 |
| Costi (weekend working dinner meal @ Blackstone) | 04/08/06 | 20.00 |
| Costi (weekend working lunch meal @ Blackstone) | 04/09/06 | 15.00 |
| Costi (weekend working dinner meal @ Blackstone) | 04/09/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 04/10/06 | 20.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 04/11/06 | 18.00 |
| Costi (weeknight working dinner meal @ Blackstone while working late) | 04/17/06 | 20.00 |
| Huffard (meal while traveling in Jacksonville, FL) | 02/24/06 | 7.08 |
| Huffard (meal while traveling in Jacksonville, FL) | 02/24/06 | 46.59 |
| Huffard (meal while traveling in Jacksonville, FL) | 03/07/06 | 74.91 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 03/29/06 | 20.00 |
| Kovacs (weeknight working dinner meal @ Blackstone while working late) | 03/30/06 | 20.00 |
| O'Connell (working meal in Jacksonville, FL) | 02/15/06 | 32.70 |
| O'Connell (in-room meal @ hotel during stay in Jacksonville, FL) | 02/16/06 | 13.49 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 02/20/06 | 16.04 |

**Winn-Dixie Stores, Inc.**
**Expense Detail Processed**
**Through May 31, 2006**
**Invoice No. 11783**

| | | |
|---|---|---|
| O'Connell (in-room meal @ hotel during stay in Jacksonville, FL) | 02/21/06 | 4.49 |
| O'Connell (meal while traveling in Jacksonville, FL) | 02/22/06 | 6.95 |
| O'Connell (in-room meal @ hotel during stay in Jacksonville, FL) | 02/22/06 | 8.99 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 03/09/06 | 11.60 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 03/10/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 03/15/06 | 9.21 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 03/23/06 | 9.21 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 03/29/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 04/03/06 | 20.00 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 04/05/06 | 17.38 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 04/13/06 | 7.32 |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 04/17/06 | 7.32 |
| O'Connell (weekend working meal @ Blackstone) | 04/22/06 | 9.75 |
| **Subtotal - Employee Meals** | | **1,151.25** |

**Lodging**

| | | |
|---|---|---|
| Costi (hotel tips while traveling) | 02/20/06 - 02/24/06 | 15.00 |
| Costi (hotel tips while traveling) | 03/05/06 - 03/07/06 | 10.00 |
| Costi (hotel tips while traveling) | 03/14/06 - 03/15/06 | 18.00 |
| Huffard (1 day stay @ hotel in Jacksonville, FL ) | 02/23/06 - 02/24/06 | 224.87 |
| O'Connell (1 day stay @ hotel in Jacksonville, FL) | 02/15/06 - 02/16/06 | 224.87 |
| O'Connell (2 day stay @ hotel in Jacksonville, FL) | 02/20/06 - 02/22/06 | 404.76 |
| **Subtotal - Lodging** | | **897.50** |

**Document Production**

| | | |
|---|---|---|
| Costi | 04/03/06 - 04/23/06 | 98.55 |
| Costi | 05/08/06 - 05/14/06 | 36.75 |
| Costi | 05/08/06 - 05/14/06 | 297.15 |
| Kovacs | 04/03/06 - 04/23/06 | 1,530.00 |
| Kovacs | 04/24/06 - 04/30/06 | 28.50 |
| Kovacs | 05/08/06 - 05/14/06 | 74.10 |
| Kovacs | 05/15/06 - 05/21/06 | 27.60 |
| O'Connell | 04/03/06 - 04/23/06 | 38.40 |
| **Subtotal - Document Production** | | **2,131.05** |

**Publishing Services**

| | | |
|---|---|---|
| Costi | 04/03/06 - 04/23/06 | 17.50 |
| Costi | 04/03/06 - 04/23/06 | 92.75 |
| Costi | 04/03/06 - 04/23/06 | 143.50 |
| Costi | 05/01/06 - 05/07/06 | 101.50 |
| Costi | 05/08/06 - 05/14/06 | 22.75 |
| Kovacs | 05/08/06 - 05/14/06 | 43.75 |
| O'Connell | 04/03/06 - 04/23/06 | 94.50 |
| O'Connell | 04/03/06 - 04/23/06 | 248.50 |
| **Subtotal - Publishing Services** | | **764.75** |
| **Total Expenses** | | **$   14,956.27** |