UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | ) | Case No. 05-03817-3F1 |
| Debtors. | ) | Jointly Administered |

**FOURTH INTERIM APPLICATION OF ALVAREZ & MARSAL, LLC, OPERATIONS AND REAL ESTATE ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM FEBRUARY 1, 2006 THROUGH AND INCLUDING MAY 31, 2006**

| | |
|---|---|
| Name of Applicant | Alvarez & Marsal, LLC |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors of Winn-Dixie Stores, LLC, et al. |
| Date of Retention | Order entered on June 3, 2005 nunc pro tunc to March 4, 2005 |
| Period for which Interim Compensation and Reimbursement is sought | February 1, 2006 though and including May 31, 2006 |
| Amount of Interim Compensation sought as actual, reasonable and necessary | $400,000.00 |
| Amount of Interim Reimbursement sought as actual, reasonable and necessary | $9,740.18 |

This is an interim application

## Summary of Professional's Hours

| Professional | Title | 2/1/06 - 2/28/06 | 3/1/06 - 3/31/06 | 4/1/06 - 4/30/06 | 5/1/06 - 5/31/06 | Total |
|---|---|---|---|---|---|---|
| Martha Kopacz | Managing Director | 12.5 | 5.3 | - | - | 17.8 |
| William McGuire | Managing Director | 8.6 | 2.8 | 7.1 | - | 18.5 |
| Andrew Hede | Managing Director | 29.5 | 45.0 | 12.0 | 86.0 | 172.5 |
| Dirk Aulabaugh | Senior Director | 40.0 | 58.6 | 101.4 | 137.9 | 337.9 |
| Robert McEvoy | Director | - | - | - | 152.0 | 152.0 |
| Matthew Gavejian | Senior Associate | 47.0 | 105.5 | 73.0 | 148.0 | 373.5 |
| Chris Daniello | Analyst | - | - | - | 8.0 | 8.0 |
| **Total Hours** | | **137.6** | **217.2** | **193.5** | **531.9** | **1,080.2** |

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                          )    Chapter 11

WINN-DIXIE STORES, INC., et al., )    Case No. 05-03817-3F1

Debtors.                        )    Jointly Administered

**FOURTH INTERIM APPLICATION OF ALVAREZ & MARSAL, LLC, OPERATIONS AND REAL ESTATE ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM FEBRUARY 1, 2006 THROUGH AND INCLUDING MAY 31, 2006**

Alvarez & Marsal, LLC ("A&M"), operations and real estate advisor to the official committee of unsecured creditors (the "Committee") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors-in-possession appointed in the above-captioned cases (collectively, "Winn-Dixie" or the "Debtors"), hereby submits its application (the "Application"), pursuant to sections 328 and 331 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 328 effective January 30, 1996 (the "U.S. Trustee Guidelines"), and the Final Order Approving Interim Compensation Procedures for Professionals, dated March 15, 2005 (Docket No. 434) (the "Interim Compensation Order"), for the allowance of

interim compensation for professional services rendered from
February 1, 2006 through and including May 31, 2006 (the "Fourth
Interim Compensation Period"), and for reimbursement of expenses
incurred in connection with such services, and in support
thereof respectfully represents as follows:

## I. <u>INTRODUCTION</u>

### A. <u>Background</u>

1.    On February 21, 2005 (the "Petition Date"), the
Debtors each filed a voluntary petition for relief under chapter
11 of the Bankruptcy Code in the United States Bankruptcy Court
for the Southern District of New York (the "New York Bankruptcy
Court").

2.    On March 1, 2005, the United States Trustee duly
appointed the Committee.

3.    By order dated April 13, 2005, the New York
Bankruptcy Court transferred venue of these cases to this Court.
The Debtors' cases are being jointly administered for procedural
purposes only.  The Debtors continue to operate their businesses
and manage their properties as debtors in possession pursuant to
sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or
examiner has been appointed in these cases.

4.    This Court has jurisdiction over this Application
pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding
within the meaning of 28 U.S.C. § 157(b)(2).  Venue of the

2

Debtors' chapter 11 cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 328 and 331 of the Bankruptcy Code.

**B.    Retention of A&M and Billing History**

5.    On June 3, 2005, pursuant to the Order Under 11 U.S.C. § 1103 And Fed. R. Bankr. P. 2014 And 5002, Authorizing Retention And Employment Of Alvarez & Marsal, LLC As Committee's Operations and Real Estate Advisors (Docket No. 1557) (the "Retention Order"), the Committee's retention of A&M in these cases was authorized effective as of March 4, 2005.

6.    This Application is A&M's fourth interim application for approval and allowance of compensation and reimbursement of expenses.  A&M makes this interim application pursuant to sections 328 and 331 of the Bankruptcy Code.  A&M's first interim application for allowance of compensation and reimbursement of expenses for the period March 4, 2005 through May 31, 2005 was submitted on July 15, 2005.  A&M's second interim application for allowance of compensation and reimbursement of expenses for the period June 1, 2005 through September 30, 2005 was submitted on November 11, 2005.  A&M's third interim application for allowance of compensation and reimbursement of expenses for the period October 1, 2005 through January 31, 2006 was submitted on March 17, 2006.

3

7.    In accordance with the engagement letter between the Committee and A&M (dated March 4, 2005), A&M seeks reimbursement for its fixed fee of $100,000.00 per month.

8.    In accordance with the Interim Compensation Order, A&M submitted a monthly fee statement to, among others, the Debtors seeking interim compensation and reimbursement of expenses.  During the Fourth Interim Compensation Period, A&M submitted the following fee statements:

(a)    On February 22, 2006, pursuant to the Interim Compensation Order and the Notice of Approval of Retention Terms, A&M served its ninth fee statement which included the period from February 1, 2006 through and including February 28, 2006 (the "Ninth Fee Statement").  The Ninth Fee Statement sought an allowance of $100,000.00 for the period February 1, 2006 though February 28, 2006 (representing one month of services at a fixed fee of $100,000.00 per month) as compensation for services rendered.

(b)    On March 21, 2006, pursuant to the Interim Compensation Order and the Notice of Approval of Retention Terms, A&M served its tenth fee statement for the period from March 1, 2006 through and including March 1, 2006 (the "Tenth Fee Statement"). The Tenth Fee Statement sought an allowance of $100,000.00 (representing one month of services at a fixed fee of $100,000.00 per month) as compensation for services rendered and the reimbursement of $238.35 in expenses.

(c)  On April 12, 2006, pursuant to the Interim
     Compensation Order and the Notice of Approval of
     Retention Terms, A&M served its eleventh fee statement
     for the period from April 1, 2006 through and
     including April 30, 2006 (the "Eleventh Fee
     Statement").  The Eleventh Fee Statement sought an
     allowance of $100,000.00 (representing one month of
     services at a fixed fee of $100,000.00 per month) as
     compensation for services rendered and the
     reimbursement of $120.84 in expenses.

(d)  On May 12, 2006, pursuant to the Interim Compensation
     Order and the Notice of Approval of Retention Terms,
     A&M served its twelfth fee statement which included
     the period from May 1, 2006 through and including May
     31, 2006 (the "Twelfth Fee Statement").  The Twelfth
     Fee Statement sought an allowance of $100,000.00
     representing one month of services at a fixed fee of
     $100,000.00 per month) as compensation for services
     rendered and the reimbursement of $226.58 in expenses.

(e)  On June 30, 2006, pursuant to the Interim Compensation
     Order and the Notice of Approval of Retention Terms,
     A&M served its thirteenth fee statement which included
     expenses for the period from May 1, 2006 through and
     including May 31, 2006 (the "Thirteenth Fee
     Statement").  The Thirteenth Fee Statement sought the
     reimbursement of $9,398.09 in expenses.

(f)  Additionally, A&M is issuing an additional $243.68
     credit with this Fee Application to reverse the
     inadvertent double-billing of certain
     telecommunications and airfare charges.

     9.   As of the filing of this Application, A&M has

received payment in the amount of 80% of fees and 100% of

expenses with respect to the Ninth, Tenth, Eleventh and Twelfth

Interim Fee Statements, for a total of $320,585.77.

     10.  A&M has not entered into any agreement, express

or implied, with any other party for the purpose of fixing or

sharing fees or other compensation to be paid for professional services rendered in these cases.

11.    No promises have been received by A&M or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## II.    CASE STATUS

12.    The Debtors filed a disclosure statement and a plan of reorganization on June 29, 2006.

## III. APPLICATION

13.    By this Application, A&M is seeking full allowance of (a) compensation for professional services rendered by A&M, as operation and real estate advisor to the Committee, during the Fourth Interim Compensation Period and (b) reimbursement of expenses incurred by A&M in connection with such services during the Fourth Interim Compensation Period.

14.    In this Application, A&M seeks approval of the amount of $400,000.00 for advisory services rendered on behalf of the Committee during the Fourth Interim Compensation Period and the amount of $9,740.18 (net of the newly issued credit in the amount of $243.68) for reimbursement of expenses incurred in connection with the rendition of such services, for a total award of $409,740.18.

15.    Pursuant to the Interim Compensation Order, A&M, together with all other retained professionals, is entitled to eighty percent (80%) of its fees sought in A&M's Fourth Interim Compensation Period and reimbursement of one hundred percent (100%) of A&M's expenses.  As noted above, A&M has received to date 80% of fees and 100% of expenses for the Ninth, Tenth, Eleventh and Twelfth Fee Statements (totaling $320,585.77).  A&M is, therefore, seeking a total payment of $89,154.41 pursuant to this Application, representing the unpaid balance of 100% of fees and 100% of expenses for the Ninth, Tenth, Eleventh, and Twelfth Fee Statements, and 100% of expenses for the Thirteenth Fee Statement.

16.    The fees sought by this Application reflect an aggregate of 1,080.2 hours of professional time spent and recorded in performing services for the Committee during the Fourth Interim Compensation Period.

17.    A&M rendered to the Committee all services for which compensation is sought solely in connection with these cases in furtherance of the duties and functions of the Committee.

18.    A&M maintains electronic records of the time expended in the rendering of the professional services required by the Committee.  These records are maintained in the ordinary course of A&M's business.  For the convenience of the Court and

7

parties in interest, a billing summary for the Fourth Interim Compensation Period is attached as part of the cover sheet, setting forth the name of each professional for whose work on these cases compensation is sought, each professional's title and the amount of time expended by each such professional.

19.   Attached hereto as <u>Exhibit A</u> are time entry records broken down in halves of an hour by professional, based on guidelines from the Retention Order, setting forth a description of services performed by each professional on behalf of the Committee for the Fourth Interim Compensation Period.

20.   A&M also maintains electronic records of all expenses incurred in connection with the performance of professional services.  Details of the amounts and categories of expenses for which reimbursement is sought for the Fourth Interim Compensation Period is attached hereto as <u>Exhibit B</u>.

## IV.   <u>SUMMARY OF PROFESSIONAL SERVICES RENDERED</u>

21.   The following summary is intended to highlight the services rendered by A&M and segregate those services into categories where A&M has expended a number of hours on behalf of the Committee.  It is not meant to be a detailed description of all of the work performed; detailed descriptions of the day-to-day services provided by A&M during the Fourth Interim Compensation Period and the time expended performing such services are fully set forth in <u>Exhibit A</u> hereto.  Such detailed

descriptions show that A&M was heavily involved in the
performance of services for the Committee on a daily basis,
including night and weekend work, often under time constraints
to meet the needs of the Committee in these cases. Furthermore,
sixty-five percent (65%) of the time incurred by A&M
professionals, from February 1, 2006 through May 31, 2006, was
incurred by Managing Directors and Directors, the most
experienced professionals in the firm.

## A.    Retention/Fee Matters

22.   A&M participated in discussions with Committee
counsel, Debtors' professionals and representatives of Stuart
Maue (the "Fee Examiner"). A&M filed its Third Interim Fee
Application for the period October 1, 2005 through January 31,
2006 and subsequent monthly fee statements. Additionally, A&M
submitted its Third Interim Compensation period fee statements
in the required format to the Fee Examiner.  Additionally, A&M
prepared and submitted a response to the Fee Examiner's initial
report on A&M's First and Second Interim Fee Applications, in
coordination with the Fee Examiner.  A&M negotiated a revised
retention agreement with the Committee and reviewed revised
retention documents.

## B.    Business Plan Due Diligence

23.   A&M performed a financial and operational review
of the Debtor's May 2006 business plan (FY 2007 – FY 2011).  A&M

has participated in discussions with the Debtors' senior

management team regarding all elements of the business plan,

including operating initiatives to improve store performance,

industry benchmarking, historical operating practices, customer

survey data and forecast financial performance.  A&M submitted

several information request lists and monitored the status of

information flow from the Debtors and its advisors.

Additionally, A&M's due diligence included a tour of a

Jacksonville area store with Winn-Dixie management.  A&M

respectfully asserts that its operating experience is vital to

the proceedings as the Debtor's operating performance will help

maximize the distributions to the Debtors' unsecured creditors.

**C.**    **Case Management**

24.  A&M discussed case issues, case timeline and next

steps and has coordinated work product and work flow with other

advisors and Committee counsel.

**D.**    **Reclamation / Trade Program / Preferences**

25.  A&M participated in discussions to get vendors

involved in the trade program.  A&M reviewed and discussed

potential preference payments and appropriate waivers of these

claims with the Debtors' professionals.

**E.**    **Real Estate**

26.  A&M reviewed various property sale motions,

proposed lease rejections and assumptions, specific-store lease

agreements, real estate impacts of proposed store closures and leasing impacts of the revised footprint. A&M real estate professionals participated in discussions with landlords, Debtor's representatives and advisors as well as the Committee and its Counsel. Additionally, A&M reviewed bidding procedures and stalking horse bids for the 35 "bubble" stores and the Pompano distribution center and attended the auctions related to these sales. A&M prepared several memos to the Committee documenting its findings.

**F.    Executory Contracts**

27.   A&M reviewed proposed rejections and assumptions of executory contracts, and discussed same with the Debtors' advisors, to better understand the business purpose for rejection or assumption, potential damages, and potential realizable value from assignment of contracts in an effort to maximize creditor recovery. A&M prepared schedules detailing contracts to be rejected or assumed and presented its findings to the Committee. Additionally, A&M reviewed and evaluated the proposed retention of Debtors' professionals for services related to fresh-start accounting, information technology, tax appraisal and real estate sales, and reported its findings to the Committee.

G.   **Insurance Financing**

28.   A&M reviewed proposed insurance premium financings, collateral requirements, premium pricing levels, factors behind pricing increases, insurance coverage and factors behind the selection of insurance providers with Winn-Dixie's advisors and the Committee.

H.   **Insurance Claims**

29.   A&M reviewed supporting documentation and discussed with the Debtors and XRoads the Debtors' 2006/2007 property insurance coverage.  A&M reviewed historical claims and premiums and discussed the current property insurance environment with an independent third-party to understand the cause and reasonableness of the increased premiums.  A&M presented its findings, including the significant business impact of the new premiums, to the Committee.

I.   **Teleconference / Meetings**

30.   A&M team members participated in numerous in-person meetings and teleconferences with the Debtors, the Debtors' advisors and legal counsel, as well as Committee members and their counsel, on a variety of issues.

J.   **Closure of "Bubble" Stores**

31.   A&M reviewed and evaluated the Debtors' proposed closure of 35 "bubble" stores based on discussions with the Debtors and XRoads, a review of year-to-date and historical

store financial performance and review of store locations and
DMAs.  A&M developed and documented an understanding of the
Debtors' rationale and of the store selection process  A&M
prepared a presentation to detail its findings to the Committee.

**K.**   **Store / Company Financials**

32.  A&M updated its database of detailed store-by-
store financials including several revenue, operating and
profitability analyses.  A&M team members prepared informational
memoranda for the Committee, detailing store performance results
and analyzing such items as shrink, operating expenses and
revenue.

**L.**   **Business Plan Presentation**

33.  A&M prepared a presentation summarizing the
Debtors' May 2006 Business Plan and the pertinent impacts on the
Committee.  A&M prepared analyses and commentary, focusing on
the financial and operational aspects of the Business Plan
(including: historical financial performance by period and by
region, year-to-date results of management initiatives,
projected financial performance, forecast capital expenditures,
working capital, and historical and future asset sales) and
presented its findings on a call with the Committee.

**VI.**   **ALLOWANCE OF COMPENSATION**

34.  The professional services rendered by A&M,
particularly in light of A&M's specialized role as operations

and real estate advisor, have required a high degree of professional competence and expertise to address the numerous issues requiring evaluation and action by the Committee.  A&M respectfully submits that the services rendered to the Committee were performed efficiently, effectively and economically, and that the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditors as a whole and the Debtors' estates.

35.  The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> Any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

36.  With respect to the allowance of compensation, section 328(a) of the Bankruptcy Code provides that with Court approval:

> A committee . . . may employ or authorize the employment of a professional person . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis, compensation for actual, necessary services rendered.

11 U.S.C. § 328(a).

14

37.    The total time spent by A&M professionals during the Fourth Interim Compensation Period was 1,080.2 hours.  As shown by this Application and supporting exhibits, A&M's services were rendered economically, primarily by the most experienced  members of the team, and without unnecessary duplication of efforts.  In addition, the work involved, and thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.

## VII. <u>EXPENSES</u>

38.    A&M has incurred a total of $9,740.18 (net of the newly issued credit) in expenses in connection with representing the Committee during the Fourth Interim Compensation Period. A&M records all expenses incurred in connection with the performance of professional services.  A summary and a detailed listing of these expenses is annexed hereto as <u>Exhibit B</u>.

39.    In connection with the reimbursement of expenses, A&M's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients.  The expenses charged to A&M's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation

expenses, expenses for working meals and computerized research costs.

40.   A&M charges the Committee for these expenses at rates consistent with those charged to A&M's other bankruptcy clients, which rates are equal to or less than the rates charged by A&M's to its non-bankruptcy clients.

41.   Professionals at A&M have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of any air travel expenses in excess of coach fares, unless coach airfares were unavailable and travel could not be rescheduled.  Throughout the Fourth Interim Compensation Period, A&M has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

### VIII.  **NOTICE**

42.   Notice of this Motion has been given to counsel to the Debtors, counsel to the agent for the Debtor's DIP lender, the United States Trustee, the chair of the Committee, all other parties on the Debtors' Master Service List and all other parties not otherwise listed that have requested receipt of notices in these cases.  In light of the nature of the relief requested herein, the Committee requests that such notice be deemed adequate and sufficient.

## IX.   CONCLUSION

WHEREFORE, A&M respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit C, (a) allowing A&M (i) interim compensation for professional services rendered as advisor to the Committee during the Fourth Interim Compensation Period in the amount of $400,000.00 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $9,740.18, for a total award of $409,740.18; (b) authorizing and directing the Debtors to pay to A&M $89,154.41, which is the amount outstanding for services rendered and expenses incurred during the Fourth Interim Compensation Period; and (c) granting such further relief as is just.

Dated: July 18, 2006

                              **ALVAREZ & MARSAL, LLC**

                              By: /s/ Andrew Hede_____
                                  Andrew Hede
                                  600 Lexington Avenue
                                  Sixth Floor
                                  New York, New York 10022
                                  (212) 759-4433

                                  Operation and Real Estate
                                  Advisor to Official Committee
                                  of Unsecured Creditors of Winn-
                                  Dixie Stores, Inc., et al.

**EXHIBIT A**

### Winn-Dixie Stores, Inc., et al.

Time Reporting Summary: February 1, 2006 through May 31, 2006

| Professional | Title | 2/1/06 - 2/28/06 | 3/1/06 - 3/31/06 | 4/1/06 - 4/30/06 | 5/1/06 - 5/31/06 | Total |
|---|---|---|---|---|---|---|
| Martha Kopacz | Managing Director | 12.5 | 5.3 | - | - | 17.8 |
| William McGuire | Managing Director | 8.6 | 2.8 | 7.1 | - | 18.5 |
| Andrew Hede | Managing Director | 29.5 | 45.0 | 12.0 | 86.0 | 172.5 |
| Dirk Aulabaugh | Senior Director | 40.0 | 58.6 | 101.4 | 137.9 | 337.9 |
| Robert McEvoy | Director | - | - | - | 152.0 | 152.0 |
| Matthew Gavejian | Senior Associate | 47.0 | 105.5 | 73.0 | 148.0 | 373.5 |
| Chris Daniello | Analyst | - | - | - | 8.0 | 8.0 |
| **Total Hours** | | **137.6** | **217.2** | **193.5** | **531.9** | **1,080.2** |

**EXHIBIT A**

## Winn-Dixie Stores, Inc., et al.

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Martha Kopacz | 2/2/06 | 0.5 | Conference call with XRoads regarding committee questions on margin performance, bubble stores, etc. |
| Martha Kopacz | 2/10/06 | 2.0 | Review weekly results; preference waiver; Committee Conference call |
| Martha Kopacz | 2/15/06 | 1.5 | Review weekly results; review sub con info; review trade reclamation info from XRoads |
| Martha Kopacz | 2/16/06 | 8.0 | Review Milbank sub con memo and HLHZ draft presentation; conference call with XRoads regarding reclamation program update; committee conference call regarding substantive consolidation |
| Martha Kopacz | 2/27/06 | 0.5 | Telephone calls and emails with Company advisors regarding premature release of information regarding store closings |
| Martha Kopacz | 3/9/06 | 1.0 | Committee conference call; Bristol Myers and Novartis trade program |
| Martha Kopacz | 3/16/06 | 2.0 | Committee conference call; review weekly operating reports from Company; |
| Martha Kopacz | 3/21/06 | 0.8 | Teleconference with committee chair regarding status of substantive consolidation analysis and A&M staffing changes |
| Martha Kopacz | 3/30/06 | 1.5 | Review weekly operating reports; conference call with Committee |
| **Total** | | **17.8** | |
| William McGuire | 2/1/06 | 1.8 | Review sale motion and support |
| William McGuire | 2/2/06 | 2.2 | Review sale motion and support; Prepare memo to committee |
| William McGuire | 2/6/06 | 1.8 | Review lease assumption memo; Emails / calls to attorneys and company |
| William McGuire | 2/9/06 | 2.8 | Review support for lease assumption from company; Review memo and emails to / from attorneys |
| William McGuire | 3/16/06 | 1.6 | Review debtor information related to store #997 lease rejection |
| William McGuire | 3/16/06 | 1.2 | Review debtor information related to store #1096 lease rejection |
| William McGuire | 4/3/06 | 1.2 | Review information related to Store 997 rejection |
| William McGuire | 4/3/06 | 1.3 | Review spreadsheet related to store closings / sales |
| William McGuire | 4/3/06 | 0.8 | Review information related to Pompano sale |
| William McGuire | 4/5/06 | 0.9 | Review memo to committee on Store 997 rejection |
| William McGuire | 4/7/06 | 1.6 | Review information related to multiple lease rejections |
| William McGuire | 4/7/06 | 1.3 | Review terms for reduced claim / payout on Store 893 |
| **Total** | | **18.5** | |
| Andrew Hede | 2/1/06 | 1.0 | Period 4-6 Results Memo |
| Andrew Hede | 2/3/06 | 1.0 | Period 6 Store Results Memo |
| Andrew Hede | 2/6/06 | 1.0 | Period 6 Store Results Memo |
| Andrew Hede | 2/7/06 | 1.0 | Period 6 Store Results Memo |
| Andrew Hede | 2/9/06 | 1.5 | Committee Call; Period 6 Store Results Memo |
| Andrew Hede | 2/10/06 | 1.0 | Review lease rejection memo; Review departmental sales results |
| Andrew Hede | 2/14/06 | 1.5 | Analysis of sales and margin trends |
| Andrew Hede | 2/15/06 | 1.0 | Sales and margin analysis |
| Andrew Hede | 2/16/06 | 5.0 | Committee Meeting |
| Andrew Hede | 2/17/06 | 1.5 | Review of substantive consolidation analysis |
| Andrew Hede | 2/21/06 | 3.5 | Review of Assessment Technologies Retention, Review Milbank memo; Meeting: M Gavejian; Committee Call |
| Andrew Hede | 2/23/06 | 1.5 | Executory Contract rejection memo; Lease rejection memo |
| Andrew Hede | 2/24/06 | 2.0 | Business Plan Update review |
| Andrew Hede | 2/27/06 | 4.5 | Review substantive consolidation materials |
| Andrew Hede | 2/28/06 | 2.5 | Review 35 store closures |
| Andrew Hede | 3/1/06 | 2.5 | Respond to Capstone Information Request; Review of 35 store closures |
| Andrew Hede | 3/2/06 | 3.0 | Committee Call; Store Closure Analysis |
| Andrew Hede | 3/3/06 | 1.5 | Store Closure Review |
| Andrew Hede | 3/8/06 | 1.0 | Cisco Contract Rejection Memo |
| Andrew Hede | 3/9/06 | 1.5 | Committee Call |
| Andrew Hede | 3/10/06 | 1.0 | Conference call with XRoads and Winn-Dixie regarding proposed 35 store closures |
| Andrew Hede | 3/13/06 | 3.0 | Store Closure Report; Review draft Agent Agreement |
| Andrew Hede | 3/14/06 | 3.0 | Review Revised Agent Agreement; Store Closure Report; Periods 7 & 8 Consolidated and Store Results Memos |
| Andrew Hede | 3/15/06 | 4.0 | Store Closure Presentation; Call with M.Comerford (Milbank); Review Revised Agency Agreement |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Andrew Hede | 3/16/06 | 3.5 | Fee Application; Committee Call; Review of Revised Agency Agreement; Call with M.Comerford (Milbank) to discuss agency fee structure and agreement |
| Andrew Hede | 3/17/06 | 2.5 | Fee Application; Review of Revised Agency Agreement; Call with M.Comerford (Milbank) to discuss agency agreement |
| Andrew Hede | 3/20/06 | 2.5 | Draft / Review of Hilco / Gordon Brothers Memo retention memo; Periods 7 & 8 Results Memos |
| Andrew Hede | 3/21/06 | 1.0 | Review of substantive consolidation analysis |
| Andrew Hede | 3/22/06 | 2.0 | Review Konica contract rejection memo; Prepare for Committee Call |
| Andrew Hede | 3/23/06 | 1.5 | Prepared for and participated in Committee Call |
| Andrew Hede | 3/24/06 | 1.0 | Draft / Review: AT&T contract rejection memo |
| Andrew Hede | 3/27/06 | 3.0 | Call with Blackstone, XRoads and Winn Dixie (Business Plan and Insurance Renewals); Review Sales & Margin reports |
| Andrew Hede | 3/28/06 | 2.0 | Review of sales and margin trends; review GOB sale results |
| Andrew Hede | 3/29/06 | 2.5 | Email to Committee: Business Plan and Insurance Renewal Status; Call with McGriff (in order to discuss insurance market status) |
| Andrew Hede | 3/30/06 | 2.0 | Prepare for Committee Call; Committee Call |
| Andrew Hede | 3/31/06 | 1.0 | Review of Pompano DC sale process and status |
| Andrew Hede | 4/6/06 | 1.0 | Review of fee examiner reports |
| Andrew Hede | 4/6/06 | 1.0 | Conference call with Creditor Committee |
| Andrew Hede | 4/6/06 | 0.5 | Met with M.Gavejian to discuss fee examiner reports and A&M response |
| Andrew Hede | 4/7/06 | 1.0 | Review of sales and margin trends |
| Andrew Hede | 4/7/06 | 1.5 | Review substantive consolidation materials |
| Andrew Hede | 4/10/06 | 1.0 | Review lease termination memo |
| Andrew Hede | 4/10/06 | 0.5 | Review of sales and margin trends |
| Andrew Hede | 4/12/06 | 1.0 | Meeting with M.Gavejian (sales and margin trends) |
| Andrew Hede | 4/17/06 | 1.0 | Review substantive consolidation scenarios |
| Andrew Hede | 4/18/06 | 0.5 | Review borrowing base certificate; Review warehouse and retail inventory reports |
| Andrew Hede | 4/19/06 | 1.0 | Review sales and margin trends as of April 12, 2006 |
| Andrew Hede | 4/20/06 | 1.0 | Conference call with Creditor Committee |
| Andrew Hede | 4/21/06 | 0.5 | Meeting with M.Gavejian to discuss response to fee examiner |
| Andrew Hede | 4/21/06 | 0.5 | Call with L.Cooper (Stuart Maue) to discuss A&M's draft response to fee examiner report |
| Andrew Hede | 5/2/06 | 2.0 | Review of substantive consolidation scenario analysis |
| Andrew Hede | 5/4/06 | 0.5 | Review of GOB sales results for 35 stores |
| Andrew Hede | 5/4/06 | 0.5 | Review of Pompano distribution center sale status |
| Andrew Hede | 5/4/06 | 1.0 | Committee call |
| Andrew Hede | 5/5/06 | 0.5 | Review of Hallmark assumption memo |
| Andrew Hede | 5/5/06 | 0.5 | Call with M.Barr (Milbank) |
| Andrew Hede | 5/8/06 | 1.0 | Review/drafting of Hallmark assumption memo |
| Andrew Hede | 5/8/06 | 2.5 | Review of November Business and Presentation |
| Andrew Hede | 5/9/06 | 0.5 | Review of Hallmark assumption memo |
| Andrew Hede | 5/9/06 | 0.5 | Review Borrowing Base Certificate |
| Andrew Hede | 5/9/06 | 1.0 | Review 2006 insurance coverage renewals and premiums |
| Andrew Hede | 5/9/06 | 1.0 | Review Period 10 Financials |
| Andrew Hede | 5/9/06 | 1.0 | Discussed review of May 2006 business plan and case status with R.McEvoy |
| Andrew Hede | 5/10/06 | 2.0 | Meeting with Blackstone and HLHZ (May Business Plan) |
| Andrew Hede | 5/10/06 | 2.0 | Review of May Business Plan and Presentation |
| Andrew Hede | 5/11/06 | 1.5 | Committee Call |
| Andrew Hede | 5/11/06 | 1.0 | Review of May Business Plan |
| Andrew Hede | 5/12/06 | 1.0 | Review of May Business Plan |
| Andrew Hede | 5/12/06 | 1.0 | Review of Information Request List |
| Andrew Hede | 5/12/06 | 2.0 | Review 2006 insurance premiums and coverage |
| Andrew Hede | 5/15/06 | 0.5 | Review of A&M Amended Retention Motion |
| Andrew Hede | 5/15/06 | 0.5 | Review of insurance claim and premium history |
| Andrew Hede | 5/15/06 | 1.0 | Review of May Business Plan |
| Andrew Hede | 5/15/06 | 0.5 | Call with McGriff regarding 2006 insurance renewals |
| Andrew Hede | 5/15/06 | 0.5 | Call with L.Mandel (Milbank) regarding questions on insurance renewals |
| Andrew Hede | 5/15/06 | 0.5 | Call with M.Barr and M.Comerford (Milbank) regarding next steps for reporting status of insurance renewals to Committee |
| Andrew Hede | 5/15/06 | 0.5 | Call with M.Gavejian regarding 2006 insurance renewals |
| Andrew Hede | 5/16/06 | 1.5 | Review of Hurricane claim history and Company response to A&M questions |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Andrew Hede | 5/16/06 | 2.0 | Review of May Business Plan |
| Andrew Hede | 5/17/06 | 8.0 | Committee Meeting in Chicago to discuss substantive consolidation |
| Andrew Hede | 5/17/06 | 3.0 | Travel time (at 50%) for roundtrip from Newark to Chicago |
| Andrew Hede | 5/18/06 | 1.5 | Call with Winn-Dixie Management and Blackstone to discuss May 2006 business plan |
| Andrew Hede | 5/18/06 | 1.5 | Review of May Business Plan financials based on comments from the conference call |
| Andrew Hede | 5/19/06 | 4.0 | Review of May Business Plan and current draft of A&M Presentation |
| Andrew Hede | 5/22/06 | 1.0 | Review substantive consolidation motion, brief and FTI affidavit |
| Andrew Hede | 5/22/06 | 1.0 | Review of substantive consolidation materials |
| Andrew Hede | 5/22/06 | 1.5 | Preparation of outline for business plan presentation |
| Andrew Hede | 5/22/06 | 0.5 | Review information request list |
| Andrew Hede | 5/23/06 | 1.5 | Meeting with M.Gavejian and B.McEvoy (Business Plan Review) |
| Andrew Hede | 5/23/06 | 3.0 | Review of May Business Plan (revenue and insurance assumptions) |
| Andrew Hede | 5/24/06 | 3.5 | Reading of draft Business Plan Presentation and providing comments |
| Andrew Hede | 5/25/06 | 2.0 | Committee Call |
| Andrew Hede | 5/25/06 | 3.5 | Reviewed May Business Plan, 5-year financial forecast and provided questions to be discussed during management interviews |
| Andrew Hede | 5/26/06 | 2.0 | Reviewed and provided comments to latest draft of Business Plan Review presentation being prepared for the Committee |
| Andrew Hede | 5/30/06 | 1.5 | Reviewed and provided comments to updated draft of Business Plan Review presentation (based on previous comments and new information/analyses) being prepared for the Committee |
| Andrew Hede | 5/30/06 | 2.5 | Internal discussions on WD progress status with R.McEvoy and M.Gavejian |
| Andrew Hede | 5/30/06 | 2.5 | Travel time to Jacksonville (at 50%) for meetings with Management |
| Andrew Hede | 5/31/06 | 1.0 | Meeting with D.Henry (Winn-Dixie, Marketing) and H.Etlin (XRoads) to discuss marketing and branding efforts |
| Andrew Hede | 5/31/06 | 2.0 | Discussions with M.Gavejian and R.McEvoy regarding status of business plan review, open items and upcoming management interviews |
| Andrew Hede | 5/31/06 | 1.0 | Meeting with Scott Moore (Winn-Dixie, Customer Service) and J.Young (XRoads) to discuss customer service initiatives and results |
| Andrew Hede | 5/31/06 | 2.0 | Store tour and Meetings with F.Eckstein (Winn-Dixie, Operations), T.Robbins (Winn-Dixie, Merchandising), L.Appel (Winn-Dixie, General Counsel) and J.Young (XRoads) |
| Andrew Hede | 5/31/06 | 1.0 | Meeting with P.Pichulo (Winn-Dixie, Real Estate) and S.Karol (XRoads) regarding capital expenditure assumptions and new/remodeled stores |
| Andrew Hede | 5/31/06 | 1.5 | Phone call with M.Barr (Milbank) |
| Andrew Hede | 5/31/06 | 3.0 | Travel to New York (at 50% of time) |
| **Total** | | **172.5** | |
| | | | |
| Dirk Aulabaugh | 2/1/06 | 3.4 | Committee call with XRoads, and review of store 1857 an 1261 comments from XRoads |
| Dirk Aulabaugh | 2/6/06 | 4.2 | Discussions with XRoads and Milbank; review 1261 settlement motions |
| Dirk Aulabaugh | 2/7/06 | 5.2 | Revise Store 658; review 1857 motions; draft 1261 and 1857 memos |
| Dirk Aulabaugh | 2/8/06 | 2.6 | Continue drafting 1261 and 1857 memos |
| Dirk Aulabaugh | 2/9/06 | 2.3 | Revisions to store 658; 1261 and 1857 memos |
| Dirk Aulabaugh | 2/10/06 | 2.4 | Various memo updates; discussions with Milbank on memo protocol |
| Dirk Aulabaugh | 2/13/06 | 6.2 | Store 716 memo drafting; conversations with Milbank and XRoads |
| Dirk Aulabaugh | 2/14/06 | 2.7 | Discussions with Milbank; revisions to 1261 memo |
| Dirk Aulabaugh | 2/15/06 | 2.4 | Various memo revisions and discussions with XRoads and Milbank |
| Dirk Aulabaugh | 2/16/06 | 2.3 | Review of Miramar, Jackson and McComb Sales |
| Dirk Aulabaugh | 2/17/06 | 1.8 | Discussions with Milbank |
| Dirk Aulabaugh | 2/21/06 | 0.5 | Discussion with Jeff Milton at Milbank |
| Dirk Aulabaugh | 2/23/06 | 1.8 | Review Milbank memos; Discussion with Mike Comerford at Milbank |
| Dirk Aulabaugh | 2/24/06 | 1.0 | Finalize Store 1857 memo; discussions with Biff, et al about open items. |
| Dirk Aulabaugh | 2/27/06 | 1.2 | Milbank discussions on 1857 Memo |
| Dirk Aulabaugh | 3/2/06 | 1.5 | Conference call with the Committee; review debtor motion granting 4th extension time to reject |
| Dirk Aulabaugh | 3/7/06 | 1.3 | Reviewing proposed 35 store closures for lease issues and locations |
| Dirk Aulabaugh | 3/9/06 | 1.7 | Conference call with the Committee; review of locations for proposed 35 store closures |
| Dirk Aulabaugh | 3/10/06 | 2.5 | Conference call with XRoads and Winn-Dixie in order to discuss rationale behind 35 store closures; review of 35 store closure financial performance |
| Dirk Aulabaugh | 3/14/06 | 1.2 | Analyze store closings based on market |
| Dirk Aulabaugh | 3/15/06 | 2.4 | Additional analysis on store closings; review A&M report about closings |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Dirk Aulabaugh | 3/16/06 | 4.2 | Conference call with the Committee; review Houlihan substantive consolidation analysis |
| Dirk Aulabaugh | 3/17/06 | 5.3 | Review claim no. 12436; discuss with Milbank |
| Dirk Aulabaugh | 3/20/06 | 4.2 | Review stores 997 and 1096 rejections with XRoads; research and understand store 2661 claim amount vs. 502(b) claim |
| Dirk Aulabaugh | 3/21/06 | 6.2 | Review details of rejection claims, XRoads discussions on related rejections |
| Dirk Aulabaugh | 3/22/06 | 3.3 | Discuss claim 12436 with XRoads |
| Dirk Aulabaugh | 3/23/06 | 5.6 | Discuss stores 997, 2661 and 1096 with XRoads; investigate environmental claim at HQ; discussed environmental claim with M.Gavejian |
| Dirk Aulabaugh | 3/24/06 | 1.4 | Review of lease status of stores 997, 2661; research environmental claim at Winn-Dixie HQ |
| Dirk Aulabaugh | 3/27/06 | 3.2 | Draft memo for lease rejection of store 997 |
| Dirk Aulabaugh | 3/28/06 | 3.7 | Revisions to memo for store 997 |
| Dirk Aulabaugh | 3/29/06 | 4.7 | Conference call with XRoads on Artesia claim; revision of store 997 memo; review motion on lease termination; preliminary research on lease terminations |
| Dirk Aulabaugh | 3/30/06 | 2.7 | Conference call with the Committee; review lease terminations on several stores with XRoads |
| Dirk Aulabaugh | 3/31/06 | 3.5 | Write memo on Motion authorizing lease rejections |
| Dirk Aulabaugh | 4/3/06 | 1.4 | Various conference calls with XRoads and Milbank |
| Dirk Aulabaugh | 4/3/06 | 4.3 | Performed initial review and analyzed Debtors' motions on Store 997 and 35 stores to be closed |
| Dirk Aulabaugh | 4/4/06 | 1.2 | Various conference calls with XRoads and Milbank |
| Dirk Aulabaugh | 4/4/06 | 4.4 | Continue reviewing motions on store sales |
| Dirk Aulabaugh | 4/4/06 | 1.5 | Review and analyze current bids on 35 stores to be closed |
| Dirk Aulabaugh | 4/5/06 | 5.1 | Review Pompano Distribution Center bid and motion |
| Dirk Aulabaugh | 4/5/06 | 0.4 | Discuss lease terminations with XRoads |
| Dirk Aulabaugh | 4/5/06 | 0.7 | Revised Store 997 memo per comments from A&M |
| Dirk Aulabaugh | 4/6/06 | 1.0 | Conference call with Creditor Committee |
| Dirk Aulabaugh | 4/6/06 | 1.1 | Conference call with XRoads on Pompano Distribution Center and recent store lease rejection issues |
| Dirk Aulabaugh | 4/6/06 | 6.3 | Discussion and analysis on various motions with Milbank and XRoads |
| Dirk Aulabaugh | 4/7/06 | 3.1 | Reviewing of various motions for lease rejection and assumptions in preparation for memos |
| Dirk Aulabaugh | 4/7/06 | 2.5 | Reviewed Panther data site for information on upcoming assets sales (i.e., Pompano, 35 stores to be closed); pulling documentation of bids |
| Dirk Aulabaugh | 4/7/06 | 1.0 | Discussed information found on Panther site with XRoads |
| Dirk Aulabaugh | 4/10/06 | 2.6 | Review, revise, quality check and distribute Store 997 memo |
| Dirk Aulabaugh | 4/10/06 | 3.2 | Preparation of multiple lease termination agreement memo for Stores 264, 376, 714, 1270, 1341, 2462, 2491 |
| Dirk Aulabaugh | 4/10/06 | 1.6 | Reviewed various lease rejection motions and began initial review of asset purchase agreements for 35 stores to be closed |
| Dirk Aulabaugh | 4/11/06 | 6.0 | Continued review of asset purchase agreements for 35 stores to be closed; additional review of store bids |
| Dirk Aulabaugh | 4/11/06 | 1.2 | Discussed 35 store closures and recent lease rejections with XRoads |
| Dirk Aulabaugh | 4/12/06 | 0.9 | Conference call with XRoads real estate team |
| Dirk Aulabaugh | 4/12/06 | 3.6 | Reviewed Panther Data site for latest information of 35 stores to be closed |
| Dirk Aulabaugh | 4/12/06 | 2.3 | Reviewed motion on unexpired leases as of May 4, 2006 and discussed Store 893 with Milbank and XRoads |
| Dirk Aulabaugh | 4/13/06 | 2.2 | Further discussion of Store 893 with Milbank |
| Dirk Aulabaugh | 4/13/06 | 2.3 | Finalize open items on memos ready to be distributed based on review of information received from Debtors |
| Dirk Aulabaugh | 4/14/06 | 1.0 | Reviewed, revised and distributed Store 997 memo per comments from Milbank |
| Dirk Aulabaugh | 4/17/06 | 2.8 | Reviewed rejection motion and lease on Store 1335 |
| Dirk Aulabaugh | 4/17/06 | 0.5 | Discussed motion and lease for Store 1335 with Milbank |
| Dirk Aulabaugh | 4/18/06 | 2.2 | Discussion on store 1335 and inquire about bubble store update |
| Dirk Aulabaugh | 4/20/06 | 2.7 | Reviewed and analyzed Store 488 and 1419 lease rejection motions |
| Dirk Aulabaugh | 4/20/06 | 1.0 | Conference call with Creditor Committee |
| Dirk Aulabaugh | 4/20/06 | 0.8 | Discussed Committee conference call, next steps and coordinated work product with M.Gavejian |
| Dirk Aulabaugh | 4/24/06 | 1.6 | Review ground lease documents for Store 896 |
| Dirk Aulabaugh | 4/24/06 | 5.3 | Prepared initial drafts of memos on various store lease rejections for Stores 488, 896 and 1335 |
| Dirk Aulabaugh | 4/25/06 | 3.4 | Prepared initial draft of memo for Store 1419 |
| Dirk Aulabaugh | 4/25/06 | 2.7 | Further review of Panther data site for updates and more understanding of existing data |
| Dirk Aulabaugh | 4/26/06 | 3.4 | Continued revision of memos for Stores 1419, 488 and 1335 |
| Dirk Aulabaugh | 4/26/06 | 1.2 | Conference call with Milbank to discuss upcoming memos and lease motions |

**EXHIBIT A**

---

**Winn-Dixie Stores, Inc., et al.**

---

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Dirk Aulabaugh | 4/27/06 | 3.2 | Continued drafting and revision of memos on Stores 488 and 1335 based on comments from Milbank and information from the Debtors |
| Dirk Aulabaugh | 4/27/06 | 1.1 | Discussions with XRoads about certain lease rejections |
| Dirk Aulabaugh | 4/27/06 | 1.0 | Discussed recent memos with Milbank and received comments and questions |
| Dirk Aulabaugh | 4/27/06 | 1.3 | Reviewed motions to respond to Milbank questions and cross-check to memos |
| Dirk Aulabaugh | 4/28/06 | 1.2 | Conference call with Milbank to discuss bids on 35 stores to be closed |
| Dirk Aulabaugh | 4/28/06 | 2.2 | Review of the Debtors' proposed rejection of Store 1096 lease; discussion of sublease arrangement and settlement agreement with XRoads |
| Dirk Aulabaugh | 4/28/06 | 2.0 | Review Panther data site for updates to bid and store information |
| Dirk Aulabaugh | 4/28/06 | 0.9 | Discussed bids, timing and auction updates for 35 store to be closed with XRoads |
| Dirk Aulabaugh | 5/1/06 | 3.2 | Drafting memos to the Committee for motions related to Stores 1096 and 1335 |
| Dirk Aulabaugh | 5/2/06 | 1.3 | Various conference calls with XRoads relating to Stores 1096, 1335, 1419 and 488 |
| Dirk Aulabaugh | 5/2/06 | 2.6 | Drafting memos to the Committee for motions related to Stores 1418 and 488, emailing XRoads with related questions |
| Dirk Aulabaugh | 5/2/06 | 0.3 | Conference call with Milbank related to various store motions |
| Dirk Aulabaugh | 5/3/06 | 3.3 | Reviewed stalking horse bids and locations of 35 bubble store to be sold |
| Dirk Aulabaugh | 5/3/06 | 2.2 | Reviewed 35 store bid documentation on Panther |
| Dirk Aulabaugh | 5/3/06 | 1.4 | Review Pompano DC bids, including stalking horse bid |
| Dirk Aulabaugh | 5/4/06 | 0.6 | Conference call with Creditor Committee |
| Dirk Aulabaugh | 5/4/06 | 3.1 | Review comments from Milbank on memos related to Stores 1096, 1335, 1419 and 488 |
| Dirk Aulabaugh | 5/4/06 | 0.5 | Discussed auction and stalking horse bids with M.Gavejian |
| Dirk Aulabaugh | 5/5/06 | 1.5 | Discussions of store motions and next steps with XRoads |
| Dirk Aulabaugh | 5/5/06 | 2.2 | Review and revision of memos for Stores 1096 and 1335 |
| Dirk Aulabaugh | 5/8/06 | 0.2 | Call with Milbank to discuss motion for Store 1381 |
| Dirk Aulabaugh | 5/8/06 | 0.5 | Review and provided comments on Hallmark assumption memo |
| Dirk Aulabaugh | 5/8/06 | 0.9 | Searching Panther site for latest store motion and bid information |
| Dirk Aulabaugh | 5/8/06 | 1.5 | Reviewing offers and non-stalking horse bids for 35 bubble stores |
| Dirk Aulabaugh | 5/8/06 | 2.4 | Reviewing Store 1381 motion |
| Dirk Aulabaugh | 5/8/06 | 1.9 | Prepared initial draft of memo to the Committee regarding motion for Store 1381 |
| Dirk Aulabaugh | 5/9/06 | 2.6 | Reviewed asset purchase agreements for 35 bubble stores |
| Dirk Aulabaugh | 5/9/06 | 1.8 | Discuss various topics with XRoads |
| Dirk Aulabaugh | 5/9/06 | 1.6 | Reviewed bubble store bids via auction results |
| Dirk Aulabaugh | 5/9/06 | 0.7 | Discussions with Milbank regarding recent store motion memos |
| Dirk Aulabaugh | 5/10/06 | 0.8 | Discuss Store 1419 internally with Milbank |
| Dirk Aulabaugh | 5/10/06 | 1.3 | Conference calls with Milbank and XRoads |
| Dirk Aulabaugh | 5/11/06 | 1.5 | Conference call with Creditor Committee |
| Dirk Aulabaugh | 5/11/06 | 2.6 | Reviewed motion on Hollywood tract sale |
| Dirk Aulabaugh | 5/11/06 | 1.6 | Discussions with XRoads regarding the sale of the Hollywood, FL tract |
| Dirk Aulabaugh | 5/12/06 | 1.7 | Revised on memo regarding Store 1335 based on comments from Milbank |
| Dirk Aulabaugh | 5/12/06 | 0.5 | Additional review of Store 1381 motion |
| Dirk Aulabaugh | 5/12/06 | 0.8 | Research location and other data for Store 1381 |
| Dirk Aulabaugh | 5/12/06 | 3.4 | Research Hollywood land sale for reasonableness including calls to various brokers, review of information on DJM site |
| Dirk Aulabaugh | 5/15/06 | 2.0 | Revised memo on Store 488 based on comments from Milbank |
| Dirk Aulabaugh | 5/15/06 | 2.6 | Discussed motions for Stores 1335 and 488 with XRoads |
| Dirk Aulabaugh | 5/16/06 | 3.6 | Travel to auction (at 50%) |
| Dirk Aulabaugh | 5/16/06 | 5.0 | Completed diligence review on Pompano sales and Hollywood tract |
| Dirk Aulabaugh | 5/17/06 | 0.4 | Meeting with Milbank, Debtor's counsel and XRoads regarding hearing agenda and landlord negotiations |
| Dirk Aulabaugh | 5/17/06 | 2.9 | Meeting with Milbank, Debtors counsel, DJM and XRoads regarding landlord objections and preparation for hearing |
| Dirk Aulabaugh | 5/17/06 | 4.2 | Discussed strategy for auction and other recent asset sales with Milbank |
| Dirk Aulabaugh | 5/17/06 | 1.0 | Attended Pompano DC auction |
| Dirk Aulabaugh | 5/18/06 | 1.9 | Prepared for hearing to approve asset sales including strategy for objection responses |
| Dirk Aulabaugh | 5/18/06 | 2.3 | Attended hearing to approve asset sales |
| Dirk Aulabaugh | 5/18/06 | 3.4 | Meeting with J.Macinnis (Milbank) to discuss hearing and recap auction results; discussed sale process with DJM |
| Dirk Aulabaugh | 5/19/06 | 4.0 | Travel back from Jacksonville (at 50%) |
| Dirk Aulabaugh | 5/19/06 | 1.0 | Review hearing results |
| Dirk Aulabaugh | 5/19/06 | 3.4 | Reviewed in process memos for Stores 1096, 1335 and Hollywood land tracts |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Dirk Aulabaugh | 5/22/06 | 3.3 | Redrafted memo on Store 1096 due to change in the Debtors' motion and direction relative to the store |
| Dirk Aulabaugh | 5/22/06 | 0.4 | Discussions with Milbank about forthcoming memos and Store 1096 modification |
| Dirk Aulabaugh | 5/22/06 | 1.6 | Calls to XRoads |
| Dirk Aulabaugh | 5/23/06 | 3.3 | Finalize memos on Store 1096 and Hollywood tract |
| Dirk Aulabaugh | 5/23/06 | 0.6 | Discussions with Milbank about upcoming Committee meeting |
| Dirk Aulabaugh | 5/23/06 | 2.3 | Calls to XRoads about Store 1096 and Hollywood tract |
| Dirk Aulabaugh | 5/24/06 | 4.3 | Reviewed various motions relating to Alabama warehouse sale and lease termination of Store 276 |
| Dirk Aulabaugh | 5/24/06 | 2.4 | Revised memo on Store 1096 per comments from Milbank |
| Dirk Aulabaugh | 5/24/06 | 2.4 | Review motion to assume leases for 75 store and prepared an overview of the implication of lease assumption |
| Dirk Aulabaugh | 5/24/06 | 1.8 | Discussed status of Store 1096 negotiations with XRoads |
| Dirk Aulabaugh | 5/25/06 | 1.9 | Conference call with Creditors Committee |
| Dirk Aulabaugh | 5/25/06 | 2.2 | Researching outstanding questions on Hollywood tract per Milbank and A&M questions |
| Dirk Aulabaugh | 5/25/06 | 2.9 | Research Alabama Warehouse sale through reviewing Panther site and discussed sale with brokers |
| Dirk Aulabaugh | 5/25/06 | 1.8 | Initial drafting of memo regarding motion on Store 276 |
| Dirk Aulabaugh | 5/26/06 | 0.8 | Continued preparation of memo on Store 276 discussion with XRoads; finalize Hollywood tract |
| Dirk Aulabaugh | 5/26/06 | 1.0 | Discussed Store 276 motion with XRoads |
| Dirk Aulabaugh | 5/26/06 | 0.8 | Finalize memo on sale of Hollywood tract |
| Dirk Aulabaugh | 5/29/06 | 0.8 | Finalized Store 1335 memo for distribution per comments from Milbank |
| Dirk Aulabaugh | 5/30/06 | 3.6 | Research and finalize memo on Store 276 |
| Dirk Aulabaugh | 5/30/06 | 3.3 | Initial research on Alabama, Louisville, Miami and Stockbridge parcel/asset sales |
| Dirk Aulabaugh | 5/31/06 | 3.5 | Reviewed Alabama sale asset purchase agreement and researched Panther site for detail; Contacted XRoads for discussion with DJM |
| Dirk Aulabaugh | 5/31/06 | 2.3 | Reviewed motions and asset purchase agreements for Louisville, Stockbridge, Miami outparcels |
| Dirk Aulabaugh | 5/31/06 | 2.4 | Initial drafting of memos for outparcel sales in Louisville, Stockbridge and Miami |
| **Total** | | **337.9** | |
| Robert McEvoy | 5/7/06 | 2.5 | Review company's business plan and 5 year projections presented to the Unsecured Creditors' Committee in November 2005 |
| Robert McEvoy | 5/8/06 | 4.0 | Review company's business plan and 5 year projections presented to the Unsecured Creditors' Committee in November 2005 |
| Robert McEvoy | 5/8/06 | 2.0 | Reviewed joint A&M / HLHZ presentation and analysis of November 2005 Winn-Dixie business plan |
| Robert McEvoy | 5/9/06 | 4.0 | Reviewed historical financial statements and store performance for Winn-Dixie's current store footprint |
| Robert McEvoy | 5/9/06 | 3.0 | Reviewed joint A&M / HLHZ presentation and analysis of November 2005 Winn-Dixie business plan |
| Robert McEvoy | 5/9/06 | 1.0 | Discussed review of May 2006 business plan and case status with A.Hede |
| Robert McEvoy | 5/10/06 | 2.0 | Meeting with Blackstone and HLHZ (May Business Plan) |
| Robert McEvoy | 5/10/06 | 2.0 | Met with M.Gavejian to discuss questions and information requests relative to the business plan |
| Robert McEvoy | 5/10/06 | 2.5 | Review of company's May business plan and 5 year projections.  Preparation of report evaluating business plan |
| Robert McEvoy | 5/10/06 | 1.5 | Prepare request for additional data from Winn-Dixie and Blackstone |
| Robert McEvoy | 5/11/06 | 4.0 | Prepared rough outline of topics to be included in business plan review, including outlining of analyses and additions to previous presentations |
| Robert McEvoy | 5/11/06 | 1.0 | Prepared request for additional data from company |
| Robert McEvoy | 5/12/06 | 5.0 | Reviewed debt schedule, ABL availability and proposed exit financing structure by the Company (included in May business plan) and compared to structure included in previous plan |
| Robert McEvoy | 5/12/06 | 1.0 | Prepared follow up request for additional data from company |
| Robert McEvoy | 5/12/06 | 2.0 | Research supermarket industry trends (review industry reports, trade magazine articles, 10Q/10K documents filed by competitors) |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Robert McEvoy | 5/15/06 | 5.5 | Reviewed objectives and key metrics of the Debtors' Operating Jump Start program and prepared outlines for slides and analysis based on store data |
| Robert McEvoy | 5/15/06 | 1.0 | Work with internal A&M research personnel to obtain further industry reports/updates |
| Robert McEvoy | 5/15/06 | 1.5 | Internal WD discussion relating to data collection, synthesis and interpretation with M.Gavejian |
| Robert McEvoy | 5/16/06 | 3.0 | Completed detailed review of store by store P&L's from FY 2004 and FY 2005 to understand trending in sales and EBITDA |
| Robert McEvoy | 5/16/06 | 2.0 | Met with M.Gavejian to discuss status of analyses related to the Business Plan |
| Robert McEvoy | 5/16/06 | 3.0 | Review supermarket industry reports |
| Robert McEvoy | 5/16/06 | 1.0 | Met with M.Gavejian to discuss request lists |
| Robert McEvoy | 5/17/06 | 6.0 | Review of company's May business plan, 5 year projections, financial statements and other data |
| Robert McEvoy | 5/17/06 | 3.5 | Work with A&M internal research personnel to obtain industry reports.  Review reports. |
| Robert McEvoy | 5/18/06 | 1.5 | Call with Winn-Dixie management to discuss May 2006 Business Plan |
| Robert McEvoy | 5/18/06 | 1.5 | Follow up discussion with M.Gavejian regarding information received on call with management and impact on data requests and analysis of the business plan |
| Robert McEvoy | 5/18/06 | 1.0 | Review of May business plan based on information received on call with management, review of assumptions to determine in management's comment were accurate |
| Robert McEvoy | 5/18/06 | 3.0 | Review FMI food industry research reports |
| Robert McEvoy | 5/19/06 | 1.0 | Review new data supplied by company in response to data request |
| Robert McEvoy | 5/22/06 | 3.5 | Review market share, working capital and capital expenditures slides and analyses recently updated |
| Robert McEvoy | 5/22/06 | 1.5 | Review of new data provided by company |
| Robert McEvoy | 5/23/06 | 2.5 | Prepared text and commentary slides for P&L section of presentation and prepared a review of revenue growth assumptions included in the financial forecast. |
| Robert McEvoy | 5/23/06 | 1.5 | Meeting with A.Hede and M.Gavejian to discuss status of business plan review presentation and next steps |
| Robert McEvoy | 5/23/06 | 1.0 | Review of WD competitor (Publix, Wal*Mart, Albertson's others) data |
| Robert McEvoy | 5/23/06 | 2.0 | Review of new information provided by company |
| Robert McEvoy | 5/24/06 | 2.0 | Review of WD competitor (Publix, Wal*Mart, Albertson's others) data |
| Robert McEvoy | 5/24/06 | 2.0 | Reviewed revised slides for consistency of message and information |
| Robert McEvoy | 5/24/06 | 1.0 | Call with J.Costi (Blackstone) to discuss Bahamas store information excluded from 5-year financial forecast per the Business Plan |
| Robert McEvoy | 5/24/06 | 1.0 | Prepared templates for analyses of competitor data |
| Robert McEvoy | 5/24/06 | 1.0 | Reviewed and provided commentary on the revised initiatives slides |
| Robert McEvoy | 5/25/06 | 3.0 | Review of Winn-Dixie's forecasted balance sheet and cash flow, including cash usage at emergence; comparison to previous plan and recent historicals |
| Robert McEvoy | 5/25/06 | 1.0 | Review preliminary list of questions for management interviews |
| Robert McEvoy | 5/25/06 | 2.0 | Participate in Unsecured Creditor's Committee call |
| Robert McEvoy | 5/25/06 | 1.0 | Follow up internal discussion on WD with M.Gavejian |
| Robert McEvoy | 5/26/06 | 5.0 | Reviewed and provided commentary on the latest draft of the presentation to the Committee including analyses prepared and not yet included in the presentation |
| Robert McEvoy | 5/26/06 | 3.0 | Review of WD competitor (Publix, Wal*Mart, Albertson's others) data |
| Robert McEvoy | 5/27/06 | 6.0 | Review of various supermarket industry reports/case studies |
| Robert McEvoy | 5/27/06 | 4.0 | Review of WD competitor (Publix, Wal*Mart, Albertson's others) data |
| Robert McEvoy | 5/28/06 | 6.0 | Summarizing of competitor data and key industry statistical trends analyses based on competitor data and Winn-Dixie's business plan; prepared an outline of usage of this material in presentation to the Committee |
| Robert McEvoy | 5/28/06 | 2.0 | Prepare for meetings with WD management in Jacksonville including review of questions for management |
| Robert McEvoy | 5/28/06 | 0.5 | Review industry and competitor data relative to Winn-Dixie |
| Robert McEvoy | 5/29/06 | 5.0 | Continued outlining of analyses and commentary for presentation to the Committee; writing of slides and commentary |
| Robert McEvoy | 5/29/06 | 3.0 | Prepare for meetings with WD management in Jacksonville including review of previous management interviews and comments on various initiatives |
| Robert McEvoy | 5/30/06 | 6.0 | Review of draft presentation to the Committee regarding Winn-Dixie's May 2006 Business Plan; provided comments; reviewed analyses prepared to date for consistency with storyline |
| Robert McEvoy | 5/30/06 | 2.5 | Internal discussions on WD progress status with Hede and Gavejian.  Follow up review of our draft business plan evaluation |
| Robert McEvoy | 5/30/06 | 1.5 | Travel to Jacksonville for meetings with Management (at 50%) |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Robert McEvoy | 5/31/06 | 1.5 | Travel to New York (at 50%) |
| Robert McEvoy | 5/31/06 | 1.0 | Meeting with D.Henry (Winn-Dixie, Marketing) and H.Etlin (XRoads) to discuss marketing and branding efforts |
| Robert McEvoy | 5/31/06 | 2.0 | Discussions with A.Hede and M.Gavejian regarding status of business plan review, open items and upcoming management interviews |
| Robert McEvoy | 5/31/06 | 1.0 | Meeting with Scott Moore (Winn-Dixie, Customer Service) and J.Young (XRoads) to discuss customer service initiatives and results |
| Robert McEvoy | 5/31/06 | 2.0 | Store tour and Meetings with F.Eckstein (Winn-Dixie, Operations), T.Robbins (Winn-Dixie, Merchandising), L.Appel (Winn-Dixie, General Counsel) and J.Young (XRoads) |
| Robert McEvoy | 5/31/06 | 1.0 | Meeting with P.Pichulo (Winn-Dixie, Real Estate) and S.Karol (XRoads) regarding capital expenditure assumptions and new/remodeled stores |
| Robert McEvoy | 5/31/06 | 1.0 | Reviewed material received from Winn-Dixie management including customer service data and customer survey results |
| **Total** | | **152.0** | |
| Matthew Gavejian | 2/1/06 | 7.0 | Review of Debtors' initial substantive consolidation information; review of business case for ATECH services prepared by Debtors; documented questions for J.Young (XRoads) and reviewed response to questions; preparation and distribution of Period 6 Financial Statements memo; revisions per comments from Milbank |
| Matthew Gavejian | 2/2/06 | 2.0 | Substantive consolidation call with XRoads and the Debtors; review of substantive consolidation material from the Debtors |
| Matthew Gavejian | 2/3/06 | 1.5 | Review of ATECH services agreement; review of services to be provided; review of comments from J.Young (XRoads) |
| Matthew Gavejian | 2/6/06 | 1.5 | Reviewed comments to and revised the Period 6 store results memo to the Committee |
| Matthew Gavejian | 2/8/06 | 1.5 | Participated in auction of Oviedo, FL property; review of auction documents, stalking horse and other bids; written update to A&M team |
| Matthew Gavejian | 2/9/06 | 1.5 | Committee Call; Distributed initial draft of Period 6 Store Results Memo; revisions to memo per M.Comerford (Milbank) |
| Matthew Gavejian | 2/13/06 | 1.0 | Follow up with M.Dussinger (XRoads) regarding National In Store Marketing LLC settlement |
| Matthew Gavejian | 2/14/06 | 0.5 | Discussed National In Store Marketing LLC settlement with M.Dussinger (XRoads) and M.Comerford (Milbank) |
| Matthew Gavejian | 2/15/06 | 1.0 | Preparation of January and February 2006 invoices with December hours |
| Matthew Gavejian | 2/16/06 | 5.0 | Committee Meeting to discuss Substantive consolidation |
| Matthew Gavejian | 2/17/06 | 2.0 | Review of Miramar, Jackson and McComb sale documents for store locations and numbers; revised January and February 2006 invoice |
| Matthew Gavejian | 2/21/06 | 9.0 | Meeting with A.Hede; Committee Call; review of ATECH termination provision; review of listed contracts to be rejected; discussed Attach termination provision with J.MacInnis (Milbank); information calls regarding ATECH termination provision with J.Young (XRoads), J.Hausman( ATECH) and C.Colbert (ATECH); conference call with Committee and professionals regarding substantive consolidation |
| Matthew Gavejian | 2/22/06 | 6.0 | Discussed contracts to be rejected with E.Lane (XRoads); initial preparation of memo detailing rejected contracts and A&M recommendations; preparation of request list for update on the Debtors' Business Plan; finalized and distributed January and February 2006 invoice |
| Matthew Gavejian | 2/23/06 | 3.0 | Finalized and distributed rejected contracts memo to Milbank for review and distribution to the Committee; review of A&M real estate memo and comments to A&M team; review of reporting distributions from XRoads |
| Matthew Gavejian | 2/24/06 | 1.0 | Revision of rejected contracts memo to the Committee per comments from J.Milton (XRoads) |
| Matthew Gavejian | 2/28/06 | 3.5 | Requested analysis of 35 stores to be closed from R.Damore (XRoads); discussed data requests with M.Comerford (Milbank) and P.Chidyllo (HLHZ); prepared analysis of FY 2006 (Period 6) financial performance of stores to be closed |
| Matthew Gavejian | 3/1/06 | 5.0 | Discussed proposed store closures with R.Damore (XRoads); review of responses to Capstone information requests; review of internal Winn-Dixie management report (business case) regarding the decision making process on the assumption of the Cisco agreement and the financial impact of the same; discussed the business case and clarified open questions with J.Young (XRoads); review of recent asset sales memos to the Committee |

EXHIBIT A

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 3/2/06 | 8.0 | Initial review of Period 7 and Period 8 consolidated financials and store results; reformatted and analyzed store results data; UCC Call; compiled information request items responsive to Capstone request and distributed to Capstone for their review; e-mail to M.Dussinger (XRoads) requesting addresses of New Orleans stores; further review of Cisco agreement assumption documentation |
| Matthew Gavejian | 3/3/06 | 4.0 | Reviewed and distributed New Orleans store addresses received from XRoads; review of reclamation agreement with HP Hood; drafting of memo to the Committee regarding assumption of Cisco agreement and financial impact |
| Matthew Gavejian | 3/6/06 | 3.0 | Preparation of analysis of Period 6 YTD FY 2006 results to date for 35 stores to be closed; updated list with analysis of location and DMA |
| Matthew Gavejian | 3/7/06 | 5.0 | E-mails to XRoads to set up conference call to discuss store closure process and rationale; updating of analysis of Period 7 and Period 8 store results including charts and schedules highlighting sales, shrink, margin and EBITDA; preliminary drafting of memo on the same |
| Matthew Gavejian | 3/8/06 | 7.0 | Preparation of a list of stores to be discussed on March 10 conference call with XRoads; initial preparation of a presentation to the Committee outlining the performance of the 35 stores to be closed and the impact of the closure on the footprint of the Debtor; update of 35 store analysis for Period 8 YTD individual store data |
| Matthew Gavejian | 3/9/06 | 3.0 | Review and revise Cisco agreement assumption memo; prepared for and participated in UCC call; initial work on Third Interim Fee Application (1.0 hour) |
| Matthew Gavejian | 3/10/06 | 3.0 | Conference call with XRoads and Winn Dixie to discuss reasons behind store closures and stores selected to remain open; further revision to Cisco agreement assumption memo per comments from Milbank |
| Matthew Gavejian | 3/13/06 | 6.0 | Review and analysis of FY 2006 YTD Period 8 financial statements and data entry into reporting format; drafting of memo to Committee regarding FY 2006 YTD Period 8 financial statements; initial discussion of report on proposed 35 store closures; revision of Period 8 YTD store results memo |
| Matthew Gavejian | 3/14/06 | 8.5 | Drafting of report to the Committee regarding the proposed closure of 35 stores including analysis of the Debtors' store selection process and methodology, the pro forma financial impact of the closure of the 35 stores and discussion of negative EBITDA stores to be retained; revision of Period 7 and Period 8 store results memo; revision of Period 8 YTD consolidated financial statements memo |
| Matthew Gavejian | 3/15/06 | 10.0 | Review of proposed motion for assumption of AT&T agreement based on information received from XRoads; revision of 35 store closures report to the Committee; preparation of Third Interim Fee Application including compiling of hours and review of expense documentation (4.0 hours) |
| Matthew Gavejian | 3/16/06 | 8.0 | Prepared for and participated in UCC call; prepared and revised initial draft of fee structure summary for the Committee, discussion of fee structure with R.Damore (XRoads); continued preparation and revision of fee application (4.0 hours); highlighted inconsistencies in fee structure for XRoads |
| Matthew Gavejian | 3/17/06 | 4.0 | Clarified fee structure based on discussions with XRoads; reviewed fee example provided by XRoads; discussed understanding of fee structure and example with XRoads; finalized Third Interim Fee Application and prepared for distribution to Akerman for filing (1.0 hour) |
| Matthew Gavejian | 3/18/06 | 1.5 | Drafted memo to the Committee regarding fee structure for Liquidating Agent for 35 stores to be closed |
| Matthew Gavejian | 3/20/06 | 5.5 | Revision of fee structure memo per comments from Milbank; drafting of Period 7 and Period 8 store results memo; revisions to store results memo and final review and quality check before distribution to Committee counsel; review of PACA surety bond requirements and initial structure of agreement with RLI to post surety bond |
| Matthew Gavejian | 3/21/06 | 4.5 | Continued review of surety bond motion and agreement; e-mails to XRoads in order to obtain more information regarding the surety bond requirement; finalized and distribute February 2006 invoice (1.0 hour); discussions with K.Crail (Capstone) on store results memos and retail revenue; preparation of a listing of store square footage and New Orleans DMA store numbers; discussed Winn-Dixie's decision to reject Konica lease with R.Damore (XRoads) including discussion of segment performance and results |
| Matthew Gavejian | 3/22/06 | 3.0 | Drafted e-mail to the Committee regarding the Debtor's motion to reject its agreement with Konica, including detailed estimates of rejection damages, the financial impact of assuming the agreement and operating losses incurred by maintaining the contract; revisions to the memo based on comments from A&M and Milbank prior to final distribution to Milbank |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 3/23/06 | 3.0 | Discussed status of GOB sales on 35 stores with R.Damore (XRoads); e-mailed results to A&M team for purposes of discussion on UCC call; prepared for and participated in UCC call; discussed environmental claim issue with D.Aulabaugh |
| Matthew Gavejian | 3/24/06 | 4.0 | E-mails to D.Bitter (Winn-Dixie) and E.Lane (XRoads) regarding RLI surety bond agreement; discussed status of information on RLI with L.Mandel (Milbank); discussed the Debtor's motion to assume its AT&T agreement and the allowance of general unsecured claims, including the potential economic impacts of assumption with K.Fagerstrom (XRoads); drafted memo to the Committee regarding the AT&T agreement assumption |
| Matthew Gavejian | 3/27/06 | 2.0 | Conference call with HLHZ, A&M, Blackstone, XRoads and Winn-Dixie in order to discuss the timing of the business plan update and open items that are delaying the process (i.e., hurricane insurance renewal); revised AT&T agreement assumption memo per comments from Milbank; research of hurricane insurance market including articles from recent publications |
| Matthew Gavejian | 3/28/06 | 2.5 | Further revision of AT&T agreement memo based on additional comments from Milbank; compiled October 1, 2005 through February 28, 2006 time and expense information for purposes of reporting to the Fee Examiner (1.0 hour); updated Period 7 and Period 8 financial statement memo to the Committee |
| Matthew Gavejian | 3/29/06 | 2.0 | E-mails to Blackstone and XRoads to follow up on open items related to the sale of the Pompano distribution center; continued update of Period 7 and Period 8 financial statements memo to the Committee |
| Matthew Gavejian | 3/30/06 | 2.0 | Prepared for and participated in UCC call; reviewed GOB sales update received from R.Damore (XRoads); additional questions to Blackstone regarding sale of Pompano distribution center |
| Matthew Gavejian | 3/31/06 | 1.0 | Review of HLHZ substantive consolidation analysis for various scenarios of consolidation and detailing potential recovery for various creditor groups |
| Matthew Gavejian | 4/3/06 | 0.5 | Review the Debtor's motion to extend exclusivity |
| Matthew Gavejian | 4/3/06 | 0.5 | Review of the Debtors sales and margin reports for the week ended March 29, 2006 |
| Matthew Gavejian | 4/4/06 | 1.0 | Review of HLHZ flash memo and recent A&M Committee memos |
| Matthew Gavejian | 4/5/06 | 1.0 | Review of proposed order on Third Interim Fee Applications of Winn-Dixie professionals |
| Matthew Gavejian | 4/5/06 | 1.5 | Review of Store 997 memo; provided comments |
| Matthew Gavejian | 4/5/06 | 1.5 | Review of e-mail chain between Committee and Debtor counsel discussing upcoming insurance premium financing; e-mail to XRoads to coordinate on receipt of information |
| Matthew Gavejian | 4/6/06 | 1.0 | Conference call with Creditor Committee |
| Matthew Gavejian | 4/6/06 | 0.5 | Met with A.Hede to discuss fee examiner reports and A&M response |
| Matthew Gavejian | 4/7/06 | 1.0 | Review substantive consolidation materials prepared by HLHZ |
| Matthew Gavejian | 4/10/06 | 1.5 | Review of lease termination agreements memo and provided comments |
| Matthew Gavejian | 4/10/06 | 1.0 | Initial preparation of March 2006 invoice |
| Matthew Gavejian | 4/11/06 | 1.0 | Review of inventory liquidation report at 35 stores to be closed |
| Matthew Gavejian | 4/11/06 | 1.0 | Continued preparation of March 2006 invoice |
| Matthew Gavejian | 4/12/06 | 1.0 | Finalized and distributed March 2006 invoice |
| Matthew Gavejian | 4/12/06 | 1.0 | Prepared summary of inventory liquidation at 35 stores to be closed |
| Matthew Gavejian | 4/12/06 | 1.0 | Review of sales and margin reports as of March 29, 2006 |
| Matthew Gavejian | 4/12/06 | 1.0 | Meeting with A.Hede to discuss the Debtors sales and margin trend reporting and potential A&M reports |
| Matthew Gavejian | 4/13/06 | 1.5 | Prepared draft of summary of stalking horse buds for 8 of the 35 stores to be closed |
| Matthew Gavejian | 4/13/06 | 1.0 | Discussed First and Second Interim Fee Applications with L.Cooper (Stuart Maue) |
| Matthew Gavejian | 4/13/06 | 0.5 | Review of summary of contracts and unexpired leases to be rejected as prepared by the Debtors |
| Matthew Gavejian | 4/13/06 | 0.5 | Review of the Debtors sales and margin reports for the week ended April 5, 2006 |
| Matthew Gavejian | 4/13/06 | 0.5 | Pull motion and bid summary for 8 stalking horse bidders from Court filings |
| Matthew Gavejian | 4/17/06 | 2.5 | Prepared a memo summarizing stalking horse bids for the Committee |
| Matthew Gavejian | 4/17/06 | 2.0 | Prepared charts detailing weekly and cumulative ID sales trends based on the Debtors weekly reports |
| Matthew Gavejian | 4/17/06 | 2.5 | Drafted response to the fee examiner (Stuart Maue) based on discussions with L.Cooper |
| Matthew Gavejian | 4/18/06 | 2.5 | Refined written response to US Trustee; added discussion of items highlighted in First and Second report |
| Matthew Gavejian | 4/18/06 | 2.0 | Revised memo to the Committee discussing the auction and bids on the 35 stores to be closed |
| Matthew Gavejian | 4/19/06 | 0.5 | Finalized and revised auction and stalking horse bids memo per comments from Milbank |
| Matthew Gavejian | 4/19/06 | 0.5 | Discussed recent rejected contracts motion with E.Lane (XRoads) |
| Matthew Gavejian | 4/19/06 | 0.5 | Finalized written response to US Trustee |
| Matthew Gavejian | 4/19/06 | 1.0 | Prepared memo to the Committee summarizing impact of rejected contracts and unexpired leases, including schedules |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 4/19/06 | 0.5 | revised rejected contracts memo per comments from Milbank and distributed |
| Matthew Gavejian | 4/19/06 | 1.5 | Input of data received for FY 2006 Period 9 store results into A&M model |
| Matthew Gavejian | 4/20/06 | 2.5 | Revised schedules and charts for analysis of FY 2006 Period 9 store-by-store results |
| Matthew Gavejian | 4/20/06 | 1.0 | Conference call with the Creditor Committee |
| Matthew Gavejian | 4/20/06 | 0.8 | Discussed Committee conference call, next steps and coordinated work product with D.Aulabaugh |
| Matthew Gavejian | 4/20/06 | 0.7 | Prepared memo to the Committee regarding FY 2006 Period 9 store-by-store results |
| Matthew Gavejian | 4/21/06 | 0.5 | Revisions to FY 2006 Period 9 store-by-store results memo |
| Matthew Gavejian | 4/21/06 | 2.5 | Prepared an analysis of operating expense variances from Budget for inclusion in memo to the Committee |
| Matthew Gavejian | 4/21/06 | 0.5 | Meeting with A.Hede to discuss response to fee examiner |
| Matthew Gavejian | 4/21/06 | 0.5 | Call with L.Cooper (Stuart Maue) to discuss A&M's draft response to fee examiner report |
| Matthew Gavejian | 4/24/06 | 1.5 | Review of Debtors' Motion to Assume Agreement with Jacksonville Electric Authority and distributed questions to XRoads |
| Matthew Gavejian | 4/24/06 | 1.5 | Review of Debtors' Application to Retain Deloitte Consulting as Fresh Start Accounts and distributed questions to XRoads |
| Matthew Gavejian | 4/24/06 | 1.5 | Review of Debtors' Application to Retain PwC for information technology related services and distributed questions to XRoads |
| Matthew Gavejian | 4/24/06 | 0.5 | Discussed Jacksonville Electric Authority motion with J.Milton (XRoads) |
| Matthew Gavejian | 4/24/06 | 1.0 | Finalized (reviewed and quality-checked) Period 9 memo and sent to Milbank |
| Matthew Gavejian | 4/25/06 | 0.5 | Discussed proposed assumption of Jacksonville Electric Authority agreement with E.Lane (XRoads) |
| Matthew Gavejian | 4/25/06 | 2.5 | Reviewed the Debtors' Motion to Assume a modified agreement with Hallmark |
| Matthew Gavejian | 4/25/06 | 0.5 | Distributed e-mail request for information related to Hallmark agreement assumption motion |
| Matthew Gavejian | 4/25/06 | 0.5 | Discussed information request related to Deloitte and PwC retentions with K.Fagerstrom (XRoads) |
| Matthew Gavejian | 4/25/06 | 0.5 | Review of Jacksonville Electric Authority proof of claim |
| Matthew Gavejian | 4/25/06 | 0.5 | Review of weekly sales and margin reports for the week ended April 19, 2006 |
| Matthew Gavejian | 4/26/06 | 2.5 | Reviewed the Debtors' Motion to assume a modified agreement with Hallmark |
| Matthew Gavejian | 4/26/06 | 2.5 | Updated file with weekly sales and margin information and revised analyses based on new information |
| Matthew Gavejian | 4/27/06 | 1.0 | Discussed Hallmark assumption motion as well as the Deloitte and PwC retentions with H.Etlin (XRoads) |
| Matthew Gavejian | 4/27/06 | 1.0 | Discussed Hallmark assumption with J.Milton (XRoads) |
| Matthew Gavejian | 4/27/06 | 1.5 | Prepared explanatory e-mail relaying A&M's findings with regards to the Deloitte and PwC retentions to M.Comerford (Milbank) |
| Matthew Gavejian | 4/27/06 | 1.0 | Reviewed the Debtors' Ninth Omnibus objection and related changes to unsecured claims |
| Matthew Gavejian | 4/27/06 | 1.0 | Reviewed informational e-mail distributed by XRoads on Hallmark assumption |
| Matthew Gavejian | 4/27/06 | 0.5 | Cross-checked reclamation claims amounts included  in the Ninth Omnibus objection to amounts included in the Debtors' records |
| Matthew Gavejian | 4/28/06 | 0.5 | Drafted e-mail to M.Dussinger (XRoads) regarding errors in unsecured claims to be revised to priority reclamation claims per the Ninth Omnibus objection |
| Matthew Gavejian | 4/28/06 | 0.5 | Discussed key points of Deloitte and PwC retentions with M.Comerford (XRoads) |
| Matthew Gavejian | 4/28/06 | 3.0 | Prepared draft of memo detailing weekly and YTD sales and margin by department |
| Matthew Gavejian | 4/28/06 | 0.5 | Review hourly rates of PwC consultants to determine if levels are reasonable; discussed with internal personnel |
| Matthew Gavejian | 4/28/06 | 0.5 | Reviewed Milbank's memo regarding the Deloitte retention |
| Matthew Gavejian | 5/2/06 | 0.5 | Call with B.Gaston (XRoads) to discuss upcoming auctions of Pompano facility and 35 stores |
| Matthew Gavejian | 5/3/06 | 0.5 | Prepared summary of stalking horse and other bids on 35 stores |
| Matthew Gavejian | 5/3/06 | 0.5 | Prepared summary of financial performance of 35 stores and status of Going-Out-of-Business ("GOB") inventory liquidation for same stores |
| Matthew Gavejian | 5/4/06 | 0.5 | Discussed auction and stalking horse bids with D.Aulabaugh |
| Matthew Gavejian | 5/5/06 | 2.5 | Preparation of memo to the Committee regarding the assumption of the Hallmark agreement, including review of the motion for assumption and information provided by XRoads |
| Matthew Gavejian | 5/5/06 | 1.0 | Participated in conference call with the Committee |
| Matthew Gavejian | 5/8/06 | 1.0 | Completed revisions to Hallmark memo based on discussions with and comments from Milbank |
| Matthew Gavejian | 5/8/06 | 1.0 | Prepared summary list (with financial information and bid/bidder listings) for the 35 stores to be included in the May 9 auction |
| Matthew Gavejian | 5/8/06 | 0.5 | Call with M.Comerford and J.Milton (Milbank) to discuss auction of 35 stores |

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 5/8/06 | 2.0 | Input and reviewed Store-by-Store P&L data for Period 10 2006 |
| Matthew Gavejian | 5/8/06 | 2.5 | Travel to Jacksonville to attend auction (at 50% of time) |
| Matthew Gavejian | 5/9/06 | 1.5 | Participated in pre-auction meeting with XRoads, DJM Partners, Smith Hulsey and Milbank to discuss auction process, planning |
| Matthew Gavejian | 5/9/06 | 5.5 | Attended auction of 35 stores, participated in discussions with Debtors advisors throughout |
| Matthew Gavejian | 5/9/06 | 3.0 | Travel from Jacksonville to New York |
| Matthew Gavejian | 5/10/06 | 2.0 | Initial meeting with Blackstone, HLHZ and A&M to discuss the May 2006 Business Plan |
| Matthew Gavejian | 5/10/06 | 0.5 | Additional revision of Hallmark contract assumption memo |
| Matthew Gavejian | 5/10/06 | 0.5 | Review of summary of May 9 auction provided by XRoads |
| Matthew Gavejian | 5/10/06 | 2.0 | Review of Winn-Dixie's May 2006 Business Plan |
| Matthew Gavejian | 5/10/06 | 2.0 | Met with R.McEvoy to discuss questions and information requests relative to the business plan |
| Matthew Gavejian | 5/10/06 | 0.3 | Reviewed and made final revisions to Hallmark assumption memo |
| Matthew Gavejian | 5/10/06 | 0.8 | Prepared initial comments on the business plan for the UCC call |
| Matthew Gavejian | 5/11/06 | 1.5 | Prepared initial summary points for inclusion in business plan presentation |
| Matthew Gavejian | 5/11/06 | 1.0 | Compiled information and due diligence requests relative to the May 2006 Business Plan |
| Matthew Gavejian | 5/11/06 | 2.0 | Prepared for an participated in the UCC call, discussed various topics with the Committee |
| Matthew Gavejian | 5/11/06 | 1.5 | Revised and made additions to the information and due diligence request list |
| Matthew Gavejian | 5/11/06 | 1.5 | Prepared initial outline of presentation for review of business plan |
| Matthew Gavejian | 5/11/06 | 0.5 | Revised request list and review presentation outline based on requests from HLHZ |
| Matthew Gavejian | 5/11/06 | 1.0 | Prepared April 1 - April 30, 2006 invoice |
| Matthew Gavejian | 5/12/06 | 3.0 | Completed and distributed April invoice |
| Matthew Gavejian | 5/12/06 | 4.0 | Additional review of May 2006 business plan financials and initial preparation of analyses |
| Matthew Gavejian | 5/14/06 | 2.5 | Preparation of financial analyses including working capital and historical and projected P&L |
| Matthew Gavejian | 5/15/06 | 0.5 | Revised A&M retention document based on amended agreement with the Committee; distributed same to Milbank |
| Matthew Gavejian | 5/15/06 | 1.0 | Researched and reviewed Winn-Dixie historical insurance claims and premium (property insurance) |
| Matthew Gavejian | 5/15/06 | 2.0 | Prepared schedules and charts, based on data previously received from XRoads, for an analysis of the results of Winn-Dixie's Operation Jump Start |
| Matthew Gavejian | 5/15/06 | 1.5 | Discussed current Winn-Dixie data and information in our files, limitations and scope of data and potential information available from XRoads with R.McEvoy |
| Matthew Gavejian | 5/15/06 | 2.0 | Reviewed and updated schedules and analyses for working capital and P&L |
| Matthew Gavejian | 5/15/06 | 1.0 | Revised working capital analysis based on information received from Blackstone |
| Matthew Gavejian | 5/15/06 | 1.0 | Prepared an analysis of Winn-Dixie's revenue growth assumptions based on the 5-year financial forecast (Business Plan) |
| Matthew Gavejian | 5/15/06 | 0.5 | Call with A.Hede to discuss Winn-Dixie property insurance renewals |
| Matthew Gavejian | 5/16/06 | 1.5 | Prepared an analysis and schedules for forecast capital expenditures per the Business Plan |
| Matthew Gavejian | 5/16/06 | 1.5 | Prepared a summary of Winn-Dixie's property insurance (historical and current years) |
| Matthew Gavejian | 5/16/06 | 1.0 | Met with R.McEvoy to discuss request lists |
| Matthew Gavejian | 5/16/06 | 0.5 | Call with J.O'Connell (Blackstone) |
| Matthew Gavejian | 5/16/06 | 2.0 | Met with R.McEvoy to discuss status of analyses related to the Business Plan |
| Matthew Gavejian | 5/16/06 | 1.0 | Summarized insurance renewal and changes to coverage, premiums |
| Matthew Gavejian | 5/17/06 | 1.5 | Travel to Chicago for meeting with Committee and advisors (at 50% of time) |
| Matthew Gavejian | 5/17/06 | 8.0 | Participated in meetings/negotiations with the Committee |
| Matthew Gavejian | 5/18/06 | 1.5 | Travel to New York (at 50% of time) |
| Matthew Gavejian | 5/18/06 | 1.5 | Call with Winn-Dixie management to discuss May 2006 Business Plan |
| Matthew Gavejian | 5/18/06 | 1.5 | Follow up discussion with R.McEvoy regarding information received on call with management and impact on data requests and analysis of the business plan |
| Matthew Gavejian | 5/18/06 | 2.5 | Updated analyses and commentary included in presentation to the Committee based on information discussed with Winn-Dixie management on earlier call |
| Matthew Gavejian | 5/19/06 | 3.5 | Reviewed information and data, received from Blackstone, responsive to the initial data request |
| Matthew Gavejian | 5/19/06 | 1.5 | Updated request list based on clarification if information required and noted information received. Distributed list to Blackstone. |
| Matthew Gavejian | 5/19/06 | 3.0 | Updated analyses and commentary included in presentation to the Committee based on information received from Blackstone |
| Matthew Gavejian | 5/22/06 | 1.0 | Prepared analysis of free cash flow based on business plan |
| Matthew Gavejian | 5/22/06 | 1.0 | Prepared additional analysis of capital expenditures and updated presentation slides accordingly |

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 5/22/06 | 3.5 | Updated revenue growth analyses and slides in presentation |
| Matthew Gavejian | 5/22/06 | 0.5 | Prepared a graph and schedule detailing Winn-Dixie market share by DMA |
| Matthew Gavejian | 5/22/06 | 2.0 | Continued analysis of working capital, including various analyses and update of presentation slides |
| Matthew Gavejian | 5/22/06 | 1.5 | Updated information and due diligence request lists for new requests and required meetings with management |
| Matthew Gavejian | 5/23/06 | 1.5 | Review of November Business Plan presentation and charts/presentations included |
| Matthew Gavejian | 5/23/06 | 0.5 | Preparation of initial commentary on asset sales per the business plan |
| Matthew Gavejian | 5/23/06 | 0.5 | Discussed and coordinated schedule of meetings with management with Blackstone |
| Matthew Gavejian | 5/23/06 | 1.0 | Updated presentation with new logo and information received from Blackstone |
| Matthew Gavejian | 5/23/06 | 1.5 | Reviewed the NOAA Hurricane forecast for 2006 and actual results for 2005 and added information to presentation to the Committee |
| Matthew Gavejian | 5/23/06 | 1.0 | Added commentary to the presentation regarding the 2006 property insurance premiums to be paid |
| Matthew Gavejian | 5/23/06 | 1.5 | Meeting with A.Hede and R.McEvoy to discuss status of business plan review presentation and next steps |
| Matthew Gavejian | 5/23/06 | 4.0 | Modified slides and analyses in draft presentation to the Committee |
| Matthew Gavejian | 5/24/06 | 1.0 | Call with J.Costi (Blackstone) to discuss Bahamas store information excluded from 5-year financial forecast per the Business Plan |
| Matthew Gavejian | 5/24/06 | 1.0 | Revised slide summarizing operational and revenue building initiatives included in Winn-Dixie's Business Plan |
| Matthew Gavejian | 5/24/06 | 1.5 | Prepared a slide of market leaders and Winn-Dixie's relative position |
| Matthew Gavejian | 5/24/06 | 0.5 | Prepared an analysis of relative and calculated cumulative annual growth rates |
| Matthew Gavejian | 5/24/06 | 4.5 | Reviewed financial performance (on a YTD Period 10 basis including sales and 4-wall EBITDA) of the 75 stores with leases to be assumed |
| Matthew Gavejian | 5/25/06 | 2.5 | Prepared for and participated in call with the Committee regarding (among others) the 75 stores with leases to be assumed |
| Matthew Gavejian | 5/25/06 | 1.0 | Follow up internal discussion on WD with R.McEvoy |
| Matthew Gavejian | 5/25/06 | 1.0 | Preparation of a bridge analysis between the November 2005 Business Plan and the May 2006 Business Plan |
| Matthew Gavejian | 5/25/06 | 2.5 | Compiled and distributed a list of questions for Management interviews with Winn-Dixie including the SVP of Operations, SVP of Merchandising, SVP of Marketing, GVP of Real Estate and VP of Customer Service |
| Matthew Gavejian | 5/26/06 | 3.5 | Revised and updated presentation slides based on recently updated analysis and information received from Blackstone |
| Matthew Gavejian | 5/26/06 | 0.5 | Discussed list of questions for Management interviews with Blackstone |
| Matthew Gavejian | 5/30/06 | 2.5 | Discussions of Business Plan review and information request status with A.Hede and R.McEvoy |
| Matthew Gavejian | 5/30/06 | 2.5 | Prepared source material for Winn-Dixie sales per square foot analysis |
| Matthew Gavejian | 5/30/06 | 2.0 | Travel to Jacksonville to attend meetings with Management (at 50% of time) |
| Matthew Gavejian | 5/31/06 | 1.0 | Meeting with D.Henry (Winn-Dixie, Marketing) and H.Etlin (XRoads) to discuss marketing and branding efforts |
| Matthew Gavejian | 5/31/06 | 2.0 | Discussions with A.Hede and R.McEvoy regarding status of business plan review, open items and upcoming management interviews |
| Matthew Gavejian | 5/31/06 | 1.0 | Meeting with Scott Moore (Winn-Dixie, Customer Service) and J.Young (XRoads) to discuss customer service initiatives and results |
| Matthew Gavejian | 5/31/06 | 2.0 | Store tour and Meetings with F.Eckstein (Winn-Dixie, Operations), T.Robbins (Winn-Dixie, Merchandising), L.Appel (Winn-Dixie, General Counsel) and J.Young (XRoads) |
| Matthew Gavejian | 5/31/06 | 1.0 | Meeting with P.Pichulo (Winn-Dixie, Real Estate) and S.Karol (XRoads) regarding capital expenditure assumptions and new/remodeled stores |
| Matthew Gavejian | 5/31/06 | 1.0 | Preparation of an analysis of weekly sales by department |
| Matthew Gavejian | 5/31/06 | 2.0 | Travel to New York (at 50% of time) |
| **Total** | | **373.5** | |
| | | | |
| Chris Daniello | 5/30/06 | 3.0 | Sales per square foot analysis based on Winn-Dixie 5-year financial forecast material |
| Chris Daniello | 5/30/06 | 1.5 | Sales per square foot analysis for Winn-Dixie competitors, including a review of filed SEC documents (10Ks and 10Qs) |
| Chris Daniello | 5/31/06 | 1.5 | Prepared analysis of Winn-Dixie competitors based on information from Capital IQ (including summary of revenue, EBITDA, store base and other general information) |

EXHIBIT A

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Chris Daniello | 5/31/06 | 1.0 | Compiling data sources for Winn-Dixie competitor information |
| Chris Daniello | 5/31/06 | 1.0 | Revised sales per square foot analysis for Winn-Dixie competitors |
| **Total** | | **8.0** | |
| | | | |
| **Grand Total** | | **1,080.2** | |

**EXHIBIT B**

## Winn-Dixie Stores, Inc., et al.

Expense Summary: February 1, 2006 through May 31, 2006

| Professional | Title | Transportation | Business Meals | Lodging | Telecommunications | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Martha Kopacz | Managing Director | $          - | $          - | $          - | $   43.94 | $          - | $       43.94 |
| William McGuire | Managing Director | - | - | - | 25.16 | - | 25.16 |
| Andrew Hede | Managing Director | 2,833.81 | 9.84 | 258.77 | 299.27 | - | 3,401.69 |
| Dirk Aulabaugh | Senior Director | 1,441.05 | 286.26 | - | 184.95 | - | 1,912.26 |
| Gregory Ford | Director | - | - | - | 5.62 | - | 5.62 |
| Erin Scanlan | Senior Associate | - | - | - | 15.73 | - | 15.73 |
| Matthew Gavejian | Senior Associate | 3,795.80 | 7.28 | 509.73 | 126.10 | - | 4,438.91 |
| Ian McCready | Analyst | - | - | - | 1.67 | - | 1.67 |
| Corporate Charges | | - | - | - | - | 138.88 | 138.88 |
| Credit | | (200.00) | - | - | - | (43.68) | (243.68) |
| Total | | $   7,870.66 | $   303.38 | $   768.50 | $   702.44 | $   95.20 | $   9,740.18 |

| Category | Description |
|---|---|
| Transportation | Includes airfare for travel to Jacksonville (auctions, meetings, store visit) and Chicago (meeting), taxi transportation, car rental and parking. |
| Business Meals | Includes working meals where Winn-Dixie matters were discussed. |
| Lodging | Includes hotel charges in Jacksonville and Chicago. |
| Telecommunications | Includes fax, phone and connectivity charges. |
| Misc. | Includes postal charges, as necessary. |

EXHIBIT B

**Winn-Dixie Stores, Inc., et al.**

Expense Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Amount | Type | Description |
|---|---|---|---|---|
| Martha Kopacz | | 14.59 | Telecommunications allocation [1] | 10/23 - 11/22 Wireless Usage Charges |
| Martha Kopacz | | 19.81 | Telecommunications allocation [1] | 11/23 - 12/22 Wireless Usage Charges |
| Martha Kopacz | | 5.26 | Telecommunications allocation [1] | 12/23 - 1/22 Wireless Usage Charges |
| Martha Kopacz | | 2.86 | Telecommunications allocation [1] | 1/23 - 2/22 Wireless Usage Charges |
| Martha Kopacz | | 1.42 | Telecommunications allocation [1] | 2/23 - 3/22 Wireless Usage Charges |
| **Total** | | **43.94** | | |
| | | | | |
| William McGuire | | 1.54 | Telecommunications allocation [1] | 9/23 - 10/22 Wireless Usage Charges |
| William McGuire | | 4.18 | Telecommunications allocation [1] | 11/23 - 12/22 Wireless Usage Charges |
| William McGuire | | 2.98 | Telecommunications allocation [1] | 12/23 - 1/22 Wireless Usage Charges |
| William McGuire | | 6.93 | Telecommunications allocation [1] | 1/23 - 2/22 Wireless Usage Charges |
| William McGuire | | 1.99 | Telecommunications allocation [1] | 2/23 - 3/22 Wireless Usage Charges |
| William McGuire | | 7.54 | Telecommunications allocation [1] | 3/23 - 4/22 Wireless Usage Charges |
| **Total** | | **25.16** | | |
| | | | | |
| Andrew Hede | 1/19/06 | 46.00 | Telecommunications | Business cell phone usage (12/20/05 - 1/19/06) |
| Andrew Hede | 2/6/06 | 5.00 | Telecommunications | Fax service of documents to NY office |
| Andrew Hede | 2/19/06 | 53.32 | Telecommunications | Business cell phone usage (1/20/06 - 2/19/06) |
| Andrew Hede | 3/19/06 | 28.71 | Telecommunications | Business cell phone usage (2/20/06 - 3/19/06) |
| Andrew Hede | 3/23/06 | 16.00 | Telecommunications | Internet charge required for work on Winn-Dixie |
| Andrew Hede | 5/17/06 | 661.30 | Transportation | One-way flight from EWR to ORD for meeting with Committee |
| Andrew Hede | 5/17/06 | 659.30 | Transportation | One-way flight from ORD to LGA after meeting with Committee |
| Andrew Hede | 5/17/06 | 103.90 | Transportation | Car service from LGA to home |
| Andrew Hede | 5/19/06 | 40.93 | Telecommunications | Business cell phone usage (4/20/06 - 5/19/06) |
| Andrew Hede | 5/30/06 | 1,226.60 | Transportation | Roundtrip flight from EWR to JAX for meeting with Winn-Dixie |
| Andrew Hede | 5/30/06 | 18.00 | Transportation | Parking for car to airport |
| Andrew Hede | 5/31/06 | 258.77 | Lodging | 1 night stay at Omni Jacksonville for meeting with Winn-Dixie |
| Andrew Hede | 5/31/06 | 51.00 | Transportation | Parking (1 night) at EWR airport for trip to Jacksonville |
| Andrew Hede | 5/31/06 | 98.71 | Transportation | Rental car for 1 day for trip transportation to/from Winn-Dixie |
| Andrew Hede | 5/31/06 | 15.00 | Transportation | Parking for rental car at Omni Jacksonville |
| Andrew Hede | 5/31/06 | 9.84 | Business Meals | Breakfast for A&M team (A.Hede, R.McEvoy, M.Gavejian) |
| Andrew Hede | | 23.78 | Telecommunications allocation [1] | 10/23 - 11/22 Wireless Usage Charges |
| Andrew Hede | | 8.76 | Telecommunications allocation [1] | 11/23 - 12/22 Wireless Usage Charges |
| Andrew Hede | | 3.57 | Telecommunications allocation [1] | 12/23 - 1/22 Wireless Usage Charges |
| Andrew Hede | | 7.66 | Telecommunications allocation [1] | 1/23 - 2/22 Wireless Usage Charges |
| Andrew Hede | | 9.63 | Telecommunications allocation [1] | 2/23 - 3/22 Wireless Usage Charges |
| Andrew Hede | | 55.91 | Telecommunications allocation [1] | 3/23 - 4/22 Wireless Usage Charges |
| **Total** | | **3,401.69** | | |
| | | | | |
| Dirk Aulabaugh | 5/17/06 | 10.00 | Chargeable Parking/Tolls | Parking for car for transportation to LAX |
| Dirk Aulabaugh | 5/18/06 | 126.26 | Business Meals | Business meal with J.MacInnis (Milbank) to discuss auction, asset sales |
| Dirk Aulabaugh | 5/19/06 | 18.69 | Transportation | Reimburseable mileage for transportation to and from LAX |
| Dirk Aulabaugh | 5/19/06 | 241.36 | Transportation | Rental car for 3 days for trip transportation to/from Winn-Dixie, hearings and meetings |
| Dirk Aulabaugh | 5/19/06 | 1,171.00 | Transportation | Roundtrip flight from LAX to JAX |
| Dirk Aulabaugh | 5/19/06 | 150.00 | Business Meals | Business meal with J.MacInnis (Milbank) and B.Gaston (Xroads) to discuss auction, asset sales |
| Dirk Aulabaugh | 5/19/06 | 10.00 | Business Meals | Meal at airport while traveling |
| Dirk Aulabaugh | 5/19/06 | 19.98 | Telecommunications | Internet access and usage for Winn-Dixie work |
| Dirk Aulabaugh | | 20.46 | Telecommunications allocation [1] | 11/23 - 12/22 Wireless Usage Charges |
| Dirk Aulabaugh | | 5.91 | Telecommunications allocation [1] | 12/23 - 1/22 Wireless Usage Charges |
| Dirk Aulabaugh | | 44.25 | Telecommunications allocation [1] | 1/23 - 2/22 Wireless Usage Charges |
| Dirk Aulabaugh | | 24.30 | Telecommunications allocation [1] | 2/23 - 3/22 Wireless Usage Charges |
| Dirk Aulabaugh | | 70.05 | Telecommunications allocation [1] | 3/23 - 4/22 Wireless Usage Charges |

EXHIBIT B

**Winn-Dixie Stores, Inc., et al.**

Expense Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Amount | Type | Description |
|---|---|---|---|---|
| **Total** | | **1,912.26** | | |
| | | | | |
| Gregory Ford | | 1.15 | Telecommunications allocation [1] | 9/23 - 10/22 Wireless Usage Charges |
| Gregory Ford | | 4.47 | Telecommunications allocation [1] | 10/23 - 11/22 Wireless Usage Charges |
| **Total** | | **5.62** | | |
| | | | | |
| Erin Scanlan | | 6.30 | Telecommunications allocation [1] | 10/23 - 11/22 Wireless Usage Charges |
| Erin Scanlan | | 9.43 | Telecommunications allocation [1] | 11/23 - 12/22 Wireless Usage Charges |
| **Total** | | **15.73** | | |
| | | | | |
| Matthew Gavejian | 5/8/06 | 48.00 | Transportation | Taxi from JAX to hotels in Jacksonville (shared with M.Comerford of Milbank) |
| Matthew Gavejian | 5/8/06 | 516.30 | Transportation | One-way flight from EWR to JAX to attend store auction |
| Matthew Gavejian | 5/8/06 | 7.28 | Business Meals | Dinner at EWR prior to flight to JAX for store auction |
| Matthew Gavejian | 5/9/06 | 148.25 | Lodging | One night stay at Wyndham Jacksonville for store auction |
| Matthew Gavejian | 5/9/06 | 48.00 | Transportation | Taxi from Omni Jacksonville to JAX (shared with M.Comerford of Milbank) |
| Matthew Gavejian | 5/9/06 | 30.00 | Transportation | Taxi from LGA to home |
| Matthew Gavejian | 5/9/06 | 10.00 | Transportation | Delta booking fee for flight to LGA |
| Matthew Gavejian | 5/9/06 | 659.30 | Transportation | One-way flight from JAX to LGA after store auction |
| Matthew Gavejian | 5/10/06 | 9.00 | Transportation | Taxi from office to home (working late) |
| Matthew Gavejian | 5/17/06 | 30.00 | Transportation | Taxi from home to LGA airport for flight to ORD |
| Matthew Gavejian | 5/17/06 | 40.00 | Transportation | Taxi from ORD to Congress Plaza Hotel (after cancelled flight to LGA) |
| Matthew Gavejian | 5/18/06 | 102.71 | Lodging | One night stay at Congress Plaza Hotel in Chicago after cancelled flight to LGA |
| Matthew Gavejian | 5/18/06 | 25.00 | Transportation | Shuttle service from Congress Plaza Hotel to ORD for flight to LGA |
| Matthew Gavejian | 5/18/06 | 25.00 | Transportation | Taxi from LGA to New York office |
| Matthew Gavejian | 5/18/06 | 1,318.60 | Transportation | Roundtrip airfare from LGA to ORD for meeting with Committee |
| Matthew Gavejian | 5/31/06 | 258.77 | Lodging | One night stay at Omni Jacksonville for meeting with Winn-Dixie |
| Matthew Gavejian | 5/31/06 | 1,036.60 | Transportation | Roundtrip airfare from EWR to JAX for meeting with Winn-Dixie |
| Matthew Gavejian | | 5.69 | Telecommunications allocation [1] | 9/23 - 10/22 Wireless Usage Charges |
| Matthew Gavejian | | 19.73 | Telecommunications allocation [1] | 10/23 - 11/22 Wireless Usage Charges |
| Matthew Gavejian | | 20.35 | Telecommunications allocation [1] | 11/23 - 12/22 Wireless Usage Charges |
| Matthew Gavejian | | 7.72 | Telecommunications allocation [1] | 12/23 - 1/22 Wireless Usage Charges |
| Matthew Gavejian | | 23.00 | Telecommunications allocation [1] | 1/23 - 2/22 Wireless Usage Charges |
| Matthew Gavejian | | 32.15 | Telecommunications allocation [1] | 2/23 - 3/22 Wireless Usage Charges |
| Matthew Gavejian | | 17.46 | Telecommunications allocation [1] | 3/23 - 4/22 Wireless Usage Charges |
| **Total** | | **4,438.91** | | |
| | | | | |
| Ian McCready | | 1.67 | Telecommunications allocation [1] | 11/23 - 12/22 Wireless Usage Charges |
| **Total** | | **1.67** | | |
| | | | | |
| Corporate charges | | 51.52 | Miscellaneous | Federal express charges |
| Corporate charges | | 43.68 | Miscellaneous | Federal express charges |
| Corporate charges | | 43.68 | Miscellaneous | Federal express charges |
| **Total** | | **138.88** | | |
| | | | | |
| Credit | | (43.68) | Miscellaneous | Federal express charges |
| Credit | | (200.00) | Transportation | D.Aulabaugh airfare not to be billed |
| | | **(243.68)** | | |

**EXHIBIT B**

**Winn-Dixie Stores, Inc., et al.**

Expense Detail: February 1, 2006 through May 31, 2006

| Professional | Date | Amount | Type | Description |
|---|---|---|---|---|
| **Grand Total** | | **$ 9,740.18** | | |

---

[1] It is A&M policy to bill for certain telecommunications charges.  These charges are allocated based on total client hours.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | ) Case No. 05-03817-3F1 |
| Debtors. | ) Jointly Administered |

**ORDER APPROVING FOURTH INTERIM APPLICATION OF ALVAREZ & MARSAL, LLC, OPERATIONS AND REAL ESTATE ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM FEBRUARY 1, 2006 THROUGH AND INCLUDING MAY 31, 2006**

Upon the fourth interim application of Alvarez & Marsal, LLC ("A&M") for allowance of compensation for services rendered and reimbursement of expenses as operations and real estate advisor to the official committee of unsecured creditors (the "Committee") of Winn-Dixie Stores, Inc. et al., (the "Application"); and due and proper notice of the Application having been given under the circumstances; and it appearing that no further notice need be given; and after a hearing on August 10, 2006; and after statements provided in support of the Application; and the Court having determined that the factual and legal bases set forth in the Application establish just cause for the approval of compensation and reimbursement requested; and upon all the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore it is hereby

ORDERED ADJUDGED AND DECREED THAT:

1.  The Application is granted

2.  A&M is allowed (a) interim compensation for
    professional services rendered as operations and real
    estate advisor to the Committee during the Third
    Interim Compensation Period in the amount of
    $400,000.00 and (b) reimbursement of expenses incurred
    in connection with rendering such services in the
    amount of $9,740.18, for a total award of $409,740.18.

3.  The Debtors are authorized and directed to pay to A&M
    within 10 days from the date of entry of this Order
    $89,154.41, which is the total amount outstanding to
    A&M (net of newly issued credits) and unpaid by the
    Debtors pursuant to the Interim Compensation Order for
    professional services rendered and expenses incurred
    during the Fourth Interim Compensation Period.

4.  The relief granted in this Order is without prejudice
    to the rights of A&M to seek further allowance and
    payment of additional compensation and reimbursement of
    expenses, including any such amounts incurred during
    the Application Period for which approval has not
    previously been sought and denied, upon application to
    this Court.

2

5.   All interim fees and expenses are subject to review by
     the fee examiner to be appointed by the Court, parties
     in interest and this Court, and no determination is
     made at this time as to reasonableness.  Interim Fees
     and expenses awarded pursuant to this Order may be
     subject to disgorgement.


Dated this __ day of _____, 2006, in Jacksonville, Florida



                                    _____

                                    HONORABLE JERRY A. FUNK
                                    United States Bankruptcy Judge