Hearing Date: August 10, 2006, 1:00 p.m.
Objection Deadline: August 3, 2006, 4:00 p.m.

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

## MOTION FOR ORDER AUTHORIZING DEBTORS TO ENTER INTO SURETY CREDIT FACILITY WITH LIBERTY MUTUAL INSURANCE COMPANY AND GRANTING RELATED RELIEF

Winn-Dixie Stores, Inc. ("WD Stores") and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively with WD Stores, the "Debtors"), move the Court for entry of an order authorizing the Debtors to enter into a surety credit facility (the "Surety Credit Facility") with Liberty Mutual Insurance Company, its affiliates and co-sureties, if any ("Liberty"). In support of the Motion, the Debtors state as follows:

### Background

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2.     The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4.     This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.     The statutory predicates for the relief requested by this Motion are sections 105(a), 363, and 364 of the Bankruptcy Code, supported by Rules 4001 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

6.     On June 29, 2006, the Debtors filed the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan").

**Relief Requested**

7.     By this Motion, the Debtors seek entry of an order under Bankruptcy Code sections 105(a) and 363 authorizing and approving the Debtors' (i) entry into a term sheet with Liberty in substantially the form attached as Exhibit A (the "Term Sheet"), (ii) payment of the Facility Fee (as defined below) and reimbursement of reasonable attorneys' fees and expenses incurred by Liberty after June 30, 2006, (iii) assumption of the liabilities and obligations under

the prepetition General Agreement of Indemnity dated January 23, 2003, a copy of which is attached as Exhibit B (the "Prepetition Agreement"), and (iv) entry into the Surety Credit Facility. The Debtors respectfully submit that the decision to enter into the Term Sheet and the Surety Credit Facility was the product of arms' length, good faith negotiations and represents the sound exercise of the Debtors' business judgment.

### Basis for Relief

8.      To comply with various federal and state laws and regulations (as well as various utility provider requirements) the Debtors must post, or have a surety post, bonds or other forms of security including, by way of example, bonds (i) to comply with workers' compensation insurance regulations, (ii) to comply with governmental licensing, tax and other regulations, and (iii) to maintain or establish water, waste, telephone and electric utility accounts.

9.      Prior to the Petition Date, Liberty provided a surety facility for the Debtors. In that capacity, Liberty posted numerous bonds on the Debtors' behalf under the Prepetition Agreement by which the Debtors agreed to reimburse Liberty for any loss, damage or expense (including attorneys' fees) which it incurs by reason of any bonds issued on behalf of the Debtors.[2] As of the Petition Date, bonds in the approximate aggregate amount of $41 million remained outstanding. Subsequently, through transactions and settlements authorized by the Court, the aggregate sum of such bonds has been reduced to approximately $35 million. The

---

[2]      Paragraph 2 of the Prepetition Agreement provides that "[t]he Indemnitor [WD Stores] shall exonerate, indemnify and save harmless the Surety [Liberty] from and against any and all loss, damage or expense (including, but not limited to, interest, costs and attorney's fees) which the Surety shall at any time sustain or incur by reason of : the request to execute, procure, or deliver any Bonds; or the executing, procuring or delivering of any Bonds, whether already or hereafter executed; or the renewal or continuation thereof; or from making any investigation on account thereof; or any payment thereunder; or as a result of prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, or recovering or attempting to recover any salvage in connection therewith; or by reason of the failure of the Indemnitor to perform or comply with the terms of this Agreement; or in the enforcement of the terms of this Agreement."

Debtors' reimbursement obligation to Liberty is backed by a letter of credit in the amount of $19,999,793.42 (the "Letter of Credit"). Liberty filed secured proofs of claim against WD Stores and certain of its subsidiaries, alleging contingent claims of up to $41 million, plus attorneys' fees and expenses.

10.    Earlier in these cases, the Debtors were unable to reach an agreement with Liberty on terms favorable to the Debtors by which Liberty would post new surety bonds on the Debtors' behalf. The Debtors therefore sought and obtained permission to enter into a general surety indemnity agreement with RLI Insurance Company ("RLI").[3] Since that time, the Debtors and Liberty have entered into arms' length, good-faith negotiations and have reached an agreement on terms favorable to the Debtors that justifies the Debtors entering into the Surety Credit Facility despite the previous agreement with RLI.

11.    As described in more detail below, the Debtors and Liberty have agreed to enter into a $50 million,[4] 18 month Surety Credit Facility, the principal terms of which are set forth in the attached Term Sheet. The Surety Credit Facility is superior to the facility provided by RLI because: (i) the credit limit under the Surety Credit Facility is significantly higher than the credit limit under the RLI facility, (ii) Liberty Mutual has committed to issue bonds on the Debtors' behalf immediately following the closing of the transaction, while RLI is under no obligation to issue any bonds, and (iii) Liberty's collateral requirements and premium rates are lower and give the Debtors increased operational flexibility. Due to these differences, the Debtors seek

---

[3]    The Court approved the Debtors' Motion for Order Authorizing the Debtors to Enter into Surety Agreement with RLI Insurance Company and Granting Related Relief on April 20, 2006 (Dkt. No. 7340).

[4]    The aggregate amount of surety credit available under the Surety Credit Facility will be reduced by the aggregate penal sum of the bonds currently outstanding and the aggregate penal sum of those bonds listed on Exhibit B to the Term Sheet when issued immediately after closing of the Surety Credit Facility.

permission to enter into the Surety Credit Facility notwithstanding the previous agreement reached with RLI.

12.     As support for the Debtors' reimbursement obligations to Liberty under the Surety Credit Facility, Liberty will continue to hold the Letter of Credit as collateral for all bonded and indemnity obligations owed to Liberty by the Debtors.  For certain types of bonds to be determined on a bond-by-bond basis, Liberty may require special terms and conditions, including additional collateral.

13.     Although Liberty has the discretion whether to renew, cancel, replace or issue any bond under the Surety Credit Facility, Liberty has agreed to issue the additional bonds listed on Exhibit B to the Term Sheet in the aggregate sum of $6,320,000 million immediately following the closing of the transaction.

14.     The premium on the bonds issued or renewed under the Surety Credit Facility will be charged at a net rate[5] of $15.30 per $1,000 of the bond penal sum, provided that the minimum premium for the issuance of any single bond will be $100.

15.     In connection with providing the Surety Credit Facility, the Debtors will assume the liabilities and obligations under the Prepetition Agreement.  These liabilities and obligations are contingent in nature, the bulk of which are associated with approximately $27 million of bonds backing the Debtors' workers' compensation obligations which the Debtors are authorized by this Court to pay – and are paying – in the ordinary course of their business.

16.     Additionally, Liberty will receive a facility fee (the "Facility Fee") in the amount of $630,000.  The Debtors must pay the Facility Fee upon the closing of the Surety Credit

---

[5]     For purposes of the Term Sheet, "net rate" means the amount of premium actually received by Liberty after reduction on account of any compensation (whether in the form of commission or otherwise) due to any broker or other paid intermediary.

Facility.  In exchange for the Facility Fee, Liberty will (A) waive any claims for the reimbursement of professional fees and expenses through June 30, 2006 (which Liberty contends is recoverable immediately under the Letter of Credit) and (B) will, upon payment of the Facility Fee, withdraw all proofs of claims previously filed in the Debtors' cases (in the approximate claim amount of $41 million).

17.     As provided in the Term Sheet, the Debtors will reimburse Liberty for its reasonable attorneys' fees and expenses incurred after June 30, 2006 in the ordinary course, subject to receiving reasonable detailed invoices, with copies to the Creditors Committee, and a thirty-day period within which to object to such fees.

18.     The definitive documentation governing the Surety Credit Facility will contain indemnity provisions in favor of Liberty.  Liberty and the Debtors are continuing to negotiate such documentation.  The Debtors will file a copy of the documentation in substantially final form with the Court and serve such documentation on (a) counsel for the U.S. Trustee, (b) counsel for the Debtors' postpetition secured lenders, and (c) counsel for the Creditors Committee no less than ten (10) days before the hearing on this Motion.  Any other party in interest may request a copy of such filed documentation from Debtors' counsel.

## Applicable Authority

19.     Under Bankruptcy Code sections 105(a) 363(b), and 364, the Debtors seek authority to enter into the Term Sheet and Surety Credit Facility, assume the liabilities and obligations under the Prepetition Agreement, and pay the Facility Fee and reasonable attorneys' fees and expenses incurred by Liberty after June 30, 2006.  Bankruptcy Code section 363(b) serves as a basis to grant such relief.  After notice and a hearing, Bankruptcy Code section 363(b)(1) permits the Debtors to use property of the estate outside the ordinary course of

business. Because section 363 does not set forth a standard for determining what uses are appropriate, courts require evidence that the proposed use represents the exercise of the debtor's sound business judgment. See In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992) (holding that debtors may use estate assets when the evidence presented demonstrates good business judgment); In re Tropical Sportswear Int'l, 320 B.R. 15 (Bank. M.D. Fla. 2005) (sound business justification a factor in authorizing use of estate property); In re Southern Biotech, Inc., 37 B.R. 318 (Bankr. M.D. Fla. 1983) (debtors may purchase property if sound business judgment exists for use of estate property).

20.        Bankruptcy Rule 4001(c), which governs the procedures for obtaining post-petition credit, provides in relevant part:

> (2)    *Hearing.* The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15-day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c). Accordingly, this Court is authorized to permit the Debtors to obtain credit postpetition under the Surety Credit Facility for the purpose of obtaining bonds thereunder.

21.        Section 364(c) permits a debtor unable to obtain unsecured credit allowable in the ordinary course under section 364(a), to obtain credit (1) with priority over any or all administrative expenses specified in sections 503(b) or 507(b); (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien. The Debtors do not believe they can obtain surety bonding except on a secured basis. In addition, the only proposal which the Debtors have any opportunity for new bonding capacity without providing new or additional collateral on an immediate basis is

the Surety Credit Facility.  To the extent the issuance, renewal or replacement of any surety bond

or entry into the Surety Credit Facility is deemed a secured extension of credit, the Debtors

request authority to do so under section 364(c) of the Bankruptcy Code.

22.        Section 364(e) provides that the reversal or modification on appeal of an

authorization to obtain credit under section 364 does not affect the validity of the debt incurred or

any priority of a lien granted so long as the creditor extended the debtor credit in good faith.

Accordingly, approval of the Surety Credit Facility under section 364 of the Bankruptcy Code as

a postpetition extension of credit for the benefit of the Debtors, will allow for the issuance of

$6.3 million in surety bonds immediately after the closing of the transaction without the Debtors

being required to post additional collateral on account thereof and without requiring the Debtors

to await Plan confirmation or Plan effectiveness.

23.        Liberty has conditioned its agreement to provide the Surety Credit Facility on

the Debtors assumption of the liabilities and obligations under the Prepetition Agreement.  A

debtor may assume prepetition liabilities if sound business judgment exists for such assumption.

See In re Tropical Sportswear Int'l Corp., 320 B.R. 15 (Bankr. M.D. Fla. 2005).  In the exercise

of their business judgment, the Debtors believe that the assumption of the liabilities and

obligations under the Prepetition Agreement is reasonable.  The business judgment rule shields a

debtor's management from judicial second-guessing.  See Westship, Inc. v. Trident Shipworks,

Inc., 247 B.R. 856, 866 (M.D. Fla. 2000) (under the business judgment rule, once the debtors

demonstrate that an action will benefit the estate, "it is unnecessary to inquire whether another

alternative will yield a greater gain"); see also In re Integrated Resources, Inc., 147 B.R. 650, 656

(S.D.N.Y. 1992) ("[t]he business judgment rule 'is a presumption that in making a business

decision the directors of a corporation acted on an informed basis, in good faith and in the honest

belief that the action was in the best interests of the company.'") (quoting <u>Smith v. Van Gorkom</u>,

488 A.2d 858, 872 (Del. 1985). Thus, this Court should approve the assumption of the liabilities

and obligations under the Prepetition Agreement if the Debtors demonstrate sound business

justification. The Debtors assert that such justification exists.

24.    First, as noted above, the Debtors' liabilities under the Prepetition Agreement

are contingent in nature, the bulk of which are associated with approximately $27 million of

bonds backing the Debtors' workers' compensation obligations which the Debtors are authorized

by this Court to pay – and are paying – in the ordinary course of their business. In addition, the

Debtors' proposed Plan provides that the Debtors' will continue to be obligated to pay their

workers' compensation obligations post emergence, which will have the effect, subject to this

Court confirming the Plan and the Plan's effectiveness, of reducing their risk of liability to

Liberty under the Prepetition Agreement.[6] Second, such assumption is a condition precedent to

the issuance of any new bonds by Liberty, and, for the reasons set forth above, the Debtors

believe that absent new bonding capacity, the value of these estates will be negatively impacted.

25.    The proposed Surety Credit Facility will provide the Debtors increased

options, based on liquidity, collateral requirements and other business and financial

considerations, in determining how to comply with applicable laws and third-party deposit

requirements. The premium on bonds offered by Liberty is less than the rates offered by other

sureties. Additionally, Liberty's collateral requirement is 40% of the total amount of the Surety

Credit Facility – other sureties require that the Debtors post collateral, having a value equal to

100% of the face amount of the bonds issued. In addition, entry into the Surety Credit Facility

---

[6]    The Debtors' proposed Plan also provides for an unimpaired class of claims that are backed by surety bonds.
Thus, under the Debtors' proposed Plan, the Debtors will be paying , subject to this Court confirming the Plan and
the Plan's effectiveness, those claims that, if not paid, might result in a claim against a bond issued by Liberty and
thus, reducing their risk of liability under the Prepetition Agreement.

will permit the Debtors to work with a surety familiar with the Debtors' operations and needs

which will assist the reorganized Debtors greatly after they exit from bankruptcy.  For all of the

foregoing reasons, entry into the Term Sheet and Surety Credit Facility constitute sound business

judgment.

26.    The Facility Fee, which represents only a fraction of the amounts being committed

by Liberty, is reasonable because of the benefits the Debtors will derive from (i) their entering

into the Surety Credit Facility, (ii) Liberty's waiver of any claims for the reimbursement of

professional fees and expenses through June 30, 2006 which avoids a draw under the Letter of

Credit that would result in increased costs to the Debtors' estates under their postpetition

financing facility, and (iii) Liberty's withdrawal, upon the payment of the Facility Fee, of all

proofs of claims previously filed in the Debtors' cases which are filed against multiple debtors in

the approximate amount of $41 million.

27.    If the Court does not approve the Debtors entry into the Term Sheet and Surety

Credit Facility, the Debtors' estates will be subject to Liberty's claims and the Debtors will incur

additional costs to find a new surety or alternative credit enhancements and such surety or

provider of other credit enhancements may not offer terms as favorable to the Debtors.

28.    The Surety Credit Facility complements the exit financing the Debtors seek to

enter into in connection with the Plan and will benefit the Debtors during the course of these

cases and upon emergence from bankruptcy because it provides the Debtors with additional

liquidity and options to finance their operations.  The Debtors entry into the Term Sheet and

Surety Credit Facility provides all parties in interest with the added assurance that the Debtors

business will operate in the best possible manner going forward.  Based on the benefits to be

realized from entering into the Surety Credit Facility, together with the potential harm and injury

10

to the Debtors' estates if the relief requested is not granted, the Debtors respectfully request that the Court grant the motion.

### Notice

29.     Notice of this Motion has been provided to (a) counsel to the U.S. Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee, (d) the other parties in interest named on the Master Service List maintained in these cases and (e) counsel for Liberty.  No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit C authorizing the Debtors (i) entry into the Term Sheet with Liberty in substantially the form attached as Exhibit A, (ii) payment of the Facility Fee and reasonable attorneys' fees and expenses incurred by Liberty after June 30, 2006, (iii) assumption of the liabilities and obligations under the Prepetition Agreement, and (iv) entry into the Surety Credit Facility and for such further relief as the Court deems just.

Dated:  July 21, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By ___*s/ D. J. Baker*___
      D. J. Baker
      Sally McDonald Henry
      Rosalie Walker Gray
      Keith N. Sambur
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for the Debtors

SMITH HULSEY & BUSEY

By ___*s/ Cynthia C. Jackson*___
      Stephen D. Busey
      James H. Post
      Cynthia C. Jackson,
      Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for the Debtors

Exhibit A

**TERM SHEET**
**(FOR DISCUSSION PURPOSES ONLY)**

**SURETY CREDIT FACILITY**
**WINN-DIXIE STORES, INC.**

Dated as of July 21, 2006

Liberty Mutual Insurance Company, its affiliates and co-sureties, if any ("Liberty"), agree to make available to reorganized Winn-Dixie Stores, Inc., its subsidiaries and affiliates (collectively, "Winn-Dixie") surety credit upon the terms and conditions set forth in this Term Sheet.

**I.  Surety Credit Facility**

Liberty Agrees to provide Winn-Dixie with up to the aggregate sum of Fifty Million ($50,000,000) Dollars in Surety Credit, with the issuance of such bonds under the Surety Credit Facility (hereinafter sometimes the "Facility") being on the following terms and conditions:

1.      Existing Bonds.  Attached hereto as Exhibit A is a list of all the outstanding surety bonds as of the date hereof (hereinafter the "Existing Bonds") issued by Liberty for the benefit of Winn-Dixie.  Subject to the terms hereof, the Existing Bonds shown on Exhibit A will remain in full force and effect for the duration hereinbelow set forth.  Moreover, Liberty has reviewed the applications for those bonds described in Exhibit B hereto, and upon closing of the Facility agrees to issue such bonds effective as of the requested date. Winn-Dixie has pending with Liberty requests for reduction, modification or termination of certain of the Existing Bonds which will be handled in the ordinary course.  The aggregate amount of Surety Credit available under this Facility is reduced by the bonds listed on Exhibits A and B, with the difference between the total amount of all bonds listed thereon and the stated maximum amount of Fifty Million ($50,000,000) Dollars remaining available for the issuance of new bonds or increases in the penal sums of Existing Bonds.

2.      Duration of Surety Credit Facility.  The duration of the Facility shall be for a period of eighteen (18) months from the date of the closing of the Facility.  In the absence of a default by Winn-Dixie, Liberty will not terminate any bonds outstanding and in force upon the expiration and non-renewal of the Facility.  Expiration or termination of the term of this Facility will not, in and of itself, give rise to a right by Liberty to terminate any outstanding bond, but Liberty reserves all other rights of termination set forth in any bond, or as may be provided for by contract, statute, regulation, or common law.

3.      Premium.  Premium will be charged on all bonds at the net rate of $15.30 per $1,000 of bond penal sum, provided however, that the minimum premium for the issuance of any single bond shall be One Hundred ($100.00) Dollars. For purposes of this Term Sheet, "net rate" means: the amount of premium actually received by Liberty after reduction on account of any compensation (whether in the form of commission or otherwise) due to any broker or other paid intermediary.

4.     Facility Fee; Withdrawal of Proofs of Claim.  Upon the closing of this Facility, Winn-Dixie shall pay to Liberty a Facility Fee of Six Hundred Thirty Thousand ($630,000.00) Dollars, in exchange for which Liberty will waive any claims for the reimbursement of professional fees and expenses, through June 30, 2006, and will, upon receipt of payment, withdraw all Proofs of Claim previously filed with the Clerk of Court or Claims Agent in respect of any and all Proofs of Claim; provided, however, that the withdrawal of previously filed Proofs of Claim shall be without prejudice to Liberty filing an administrative claim within the time allowed for such filing(s) in the event that Surety Loss is incurred prior to the Effective Date under the Plan.

5.     Ongoing Fees and Expenses.  After June 30, 2006, Liberty will, in the ordinary course, incur attorneys' fees and expenses in connection with: (a) Winn-Dixie's Chapter 11 proceeding; (b) the adjustment, handling, settlement, or litigation of claims relating to the bonds; (c) issues arising in connection with the establishment and administration of the Surety Credit Facility; and, (d) if need be, the enforcement of the Surety Credit Documents.  Winn-Dixie shall reimburse Liberty for its reasonable attorneys' fees and expenses promptly upon presentation of reasonably detailed invoices to Winn-Dixie, with copies to counsel for the Official Unsecured Creditors Committee.  Winn-Dixie will have thirty (30) days within which to object to such attorneys' fees and expenses, failing in which same will be paid in the ordinary course within forty-five (45) days of submission.

6.     Type and Nature of Bonds.  All bonds issued by Liberty after closing will be consistent with the type of Existing Bonds.  Except as set forth in paragraphs one (1) and two (2) above, all bonds will be issued or renewed in the sole and absolute discretion of Liberty.  In the event that Liberty elects to issue bonds requested by Winn-Dixie, Liberty reserves the right to attach special terms or conditions to the issuance of particular bonds or classes of bonds (e.g. appeal or utility bonds).

7.     Discretion of Surety.  Applications for the issuance of bonds will be considered by Liberty on a case-by-case basis, and the renewal, non-renewal, cancellation, replacement or issuance or renewal of any bond shall be within the sole and absolute discretion of Liberty.  Except as set forth in paragraphs one (1) and two (2) above, Liberty shall have no obligation to issue any particular bonds, the issuance of any particular bond being within the sole and absolute discretion of Liberty.

8.     Letter of Credit.  Liberty currently holds a Letter of Credit Number SM207389W issued by Wachovia Bank, N.A., in the amount of Nineteen Million Nine Hundred Ninety-Nine Thousand Seven Hundred Ninety-Three 42/100 ($19,999,793.42) Dollars (the "Letter of Credit").  The Letter of Credit shall continue to be held by Liberty on a "spread of risk" basis securing the payment of all Surety Loss (hereinafter defined) until such time as all obligations bonded by Liberty have been fully paid or performed and all bonds issued by Liberty for the benefit of Winn-Dixie have been released, replaced, discharged or terminated without Surety Loss.

## II.  Surety Credit Documents

Winn-Dixie will be required to execute Surety Credit Documents in favor of Liberty, and in substance reasonably satisfactory to the parties.  This documentation will include, but not be limited to, the following:

1.    <u>Underwriting and Continuing Indemnity Agreement</u>.  This agreement will include the following basic sections:

- Definitions
- Underwriting and bond criteria;
- Conditions precedent;
- Indemnification of Surety for all Surety Loss as defined hereinbelow;
- Representations, Warranties, and Affirmative Covenants from Principal and Indemnitors regarding enforceability and other matters;
- Change in control provisions providing for protection for Liberty in the event of the sale or other disposition of any bonded Principal or the assets thereof;
- Rights of Surety (remedies in the event of default, including, but not limited to indemnification, exoneration, and *quia timet*);
- Bankruptcy planning provisions;
- Waiver of right to trial by jury; and
- Exclusive forum and venue.

2.    <u>Other Documents</u>.  Such other and further documents as Surety may require in its sole and absolute discretion.

For purposes of this Term Sheet, "Surety Loss" means:

(a)    All damages, loss, costs, attorneys', accountants', engineers', and consulting fees (including all allocated costs of in-house attorneys, accountants, engineers, and consultants), and all expenses incurred in connection therewith, and liabilities (including without limitation any unsatisfied liabilities under Bonds) which Surety may sustain, incur, or to which it is exposed by reason of executing or procuring the execution of any of the Bond(s), or renewal or continuation thereof; or which may be sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action in connection therewith, obtaining a release, recovering, or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the provisions of this Agreement, including, but not limited to:

(1)    money judgments, amounts paid in settlement or compromise, the full amount of reasonable attorney and other professional fees incurred or paid by Surety, including (without limitation allocated costs of in-house counsel, accountants, and engineers, court costs and fees, and interest at the maximum legal rate allowable on all sums due it from the date of Surety's demand for said sums, whether or not interest has been awarded by a court);

(2)   any loss which Surety may sustain or incur in connection with any Bonds, whether that Surety Loss results from any activity of any Principal individually or as part of a joint venture, partnership, or other entity which has been or may be formed;

(3)   any loss that Surety may sustain or incur as a result of any actions taken by Surety upon information provided by Indemnitors with respect to the Bonds;

(4)   all Reserves established with respect to the Bonds pursuant to Title XXII, Chapter 175 of the Massachusetts General laws Annotated, and/or pursuant to similar laws, statutes, codes, and/or regulations of any other state or jurisdiction applicable to Surety;

(5)   any amounts that have been paid to Surety to be applied to Surety Loss that a court of competent jurisdiction determines constitute "preferences," within the meaning of Section 547 of the Bankruptcy Code, and by reason thereof Surety actually disgorges said amounts paid; and

(6)   any amount paid by Surety as a result of any Obligee actually disgorging money or property transferred to such Obligee pursuant to §§547, 548, or 549 of the Bankruptcy Code.

(b)   legal, accounting, consulting and related fees and expenses in amounts reasonably incurred in connection with the Bonds, the Surety Credit Documents and/or any application or submission by any of Indemnitors for the issuance of any Bond or renewal of any Bond, whether or not Surety decides to issue said bond; and

(c)   legal, accounting, and consulting fees and related expenses incurred in connection with any bankruptcy proceeding filed, filed against, or involving Principal and related to the Bonds. (The foregoing limitation on fees and expenses will not limit Surety's right to such fees and expenses pursuant to any other agreement, at law, or in equity.) Principal has an obligation to reimburse Surety for reasonable legal, accounting, and consulting fees and reasonably related expenses incurred by Surety in connection with monitoring any bankruptcy proceeding filed, filed against, or involving Principal. In addition to the foregoing, Principal will reimburse Surety for its reasonable attorney's fees and reasonable expenses incurred in connection with the transactions contemplated by the Surety Credit Documents.

Any collective defined term and any defined term used in the plural will be taken to encompass all members of the relevant class. Any defined term used in the singular preceded by "any" will be taken to indicate any number of the members of the relevant class. Any defined term used in the singular and preceded by the word "each" will indicate all members of the relevant class, individually. Any accounting term not otherwise defined herein will be defined in accordance with GAAP.

### III.   Requisite Deliveries at Closing

At closing, Winn-Dixie shall deliver to Liberty:

1.   Evidence (in the form of a final Confirmation Order, the Approval Order or otherwise) of the effective and enforceable assumption by Reorganized Debtors of all pre-

4

petition and post-petition bonded obligations and indemnity obligations to Surety, including, without limitation, the obligations of Indemnitors under that certain General Agreement of Indemnity dated January 23, 2003.

2.       The Facility Fee.

3.       Such other assurances of performance and indemnity obligations as the parties may agree to provide or accept.

## IV.   Miscellaneous

1.       <u>Court Approval</u>.  Winn-Dixie's entry into this Term Sheet is expressly conditioned upon Winn-Dixie obtaining the permission of the Bankruptcy Court to do so. Accordingly, Winn-Dixie will file a Motion for order approving the transaction contemplated herein (the "Approval Order") and permitting: (a) execution of such documents as may be reasonably required by Liberty; and (b) payment of the Facility Fee, which Motion shall be heard as soon as the Court's schedule and the applicable Administrative Procedures Order allows.

2.       <u>Closing Date</u>.  Closing of the transactions contemplated by this Term Sheet shall occur as soon as practical after entry of the Approval Order at a time and place mutually agreed upon by the parties.

3.       <u>Reservation of Rights</u>.  Nothing herein shall be deemed an estoppel, waiver or modification of any party's rights or defenses and the parties hereby reserve all of their rights under the bond(s), the Indemnity Agreement, at law or in equity.

**THIS TERM SHEET IS FOR DISCUSSION PURPOSES ONLY, AND NOTHING CONTAINED HEREIN SHALL BE CONSTRUED AS AN OFFER TO PROVIDE SURETY CREDIT OR ASSISTANCE IN ANY FORM.**

567128-New York Server 5A - MSW

Principal:     Winn-Dixie Stores, Inc., *et. al.*
Surety:      Liberty Mutual Insurance Company

## EXHIBIT A TO TERM SHEET

| APPEAL BOND | | | | |
|---|---|---|---|---|
| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
| 016028926 | Winn-Dixie Stores, Inc. | 1,299,793<br><br>- 700,000 | David D Reddick, James A Stokes | Defendant Bond to Stay Execution of Judgment –<br><br>subsequently reduced by Agreed Order |
| | **TOTAL (1)** | **599,793** | | |

Principal:    Winn-Dixie Stores, Inc., *et. al.*
Surety:        Liberty Mutual Insurance Company

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| 016028723 | Save Rite Grocery Warehouse Inc. | 500,000 | Mississippi Workers' | WSCI |
| 016028724 | Winn-Dixie Stores, Inc. | 7,378,201 | Commonwealth of Kentucky | WSCI |
| 016028731 | Winn-Dixie Stores, Inc. | 150,000 | State of Oklahoma | Self-Insurer WC |
| 016028746 | Winn-Dixie Stores, Inc. | 5,000,000 | State of North Carolina | WC – Self-Insurer Utility Deposit – Store #3146 |
| 016028755 | Winn-Dixie Raleigh, Inc. | 500,000 | Indiana Workers Compensation Board | WC Self-Insurer |
| 016028756 | Winn-Dixie Stores, Inc. and its Wholly-owned Subsidiary | 9,180,000 | Georgia Self-Insurers Guaranty Trust Fund | Georgia Self-Insurers Guaranty Trust Fund |
| 016028885 | Winn-Dixie Stores, Inc. | 2,670,000 | Mass. Dept of Commerce and Insurance | WC – Self Insurer |
| 016028886 | Winn-Dixie Stores, Inc. | 1,500,000 | State of Virginia | WC |
| | **TOTAL (8)** | **26,878,201** | | |

Principal:      Winn-Dixie Stores, Inc., *et. al.*
Surety:         Liberty Mutual Insurance Company

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| 016028768 | Winn-Dixie Stores, Inc. | 100,000 | State of GA Office of Insurance & | GA Automobile Self-Insurer |
| | **TOTAL (1)** | **100,000** | | |

Principal:    Winn-Dixie Stores, Inc., *et. al.*
Surety:       Liberty Mutual Insurance Company

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| 016028725 | Winn-Dixie Stores, Inc. | 46,000 | City of Vero Beach, FL | Utility Deposit – Store #2357, 2365 |
| 016028728 | Winn-Dixie Montgomery Inc. | 17,000 | Walton Electric Membership Corp | Utility Deposit – Store #1872, 1858, 1815 |
| 016028729 | Winn-Dixie Raleigh Inc. | 27,000 | Walton Electric Membership Corp | Utility Deposit – Store #2735 |
| 016028730 | Winn-Dixie Montgomery Inc. | 68,000 | Utilities Board of City of | Utility Deposit – Store #596, 570 |
| 016028740 | Winn-Dixie Raleigh Inc. | 24,930 | Cinergy/ULH&P | Utility |
| 016028741 | Winn-Dixie Montgomery, Inc. | 308,841 | Entergy Mississippi | Utility |
| 016028742 | Winn-Dixie Montgomery, Inc. | 128,351 | Entergy Mississippi Inc. | Utility |
| 016028745 | Winn-Dixie Raleigh, Inc. | 24,000 | Bowling Green Municipal Utilities | Utility Deposit – Store #1698 |
| 016028758 | Winn-Dixie Stores, Inc. | 5,000 | Orlando Utilities Commission | Utility Deposit |
| 016028772 | Winn-Dixie Stores, Inc. #551 | 30,000 | Choctawhatchee Electric Co-op Inc. | Utility Deposit – Store #551 |
| 016028773 | Winn-Dixie Montgomery, Inc. | 39,230 | Lafayette Utilities System | Utility Deposit – Stores #1560, 1561, 1551 |
| 016028774 | Winn-Dixie Montgomery, Inc. | 10,000 | Coast Electric Power Association | Utility Deposit – Store #1477 |
| 016028776 | Winn-Dixie Montgomery, Inc. | 700 | Mobile Area Water & Sewer System | Utility Deposit – Store #473 (Acct No 331851) |
| 016028862 | Winn-Dixie Stores, Inc. | 7,125 | Hillsborough County, FL | Utility Deposit – Store #673 |
| 016028863 | Winn-Dixie Stores, Inc. | 24,000 | City of Green Cove Springs FL | Utility Deposit – Store #138 |
| 016028864 | Winn-Dixie Stores, Inc. | 31,000 | Sumter Electric Co-op Inc. | Utility Deposit – Store #2319, 2229 |
| 016028865 | Winn-Dixie Stores, Inc. | 26,000 | Florida Public Utilities Co | Utility Deposit |
| 016028866 | Winn-Dixie Stores, Inc. | 185,000 | City of Tallahassee | Utility Deposit – |
| 016028868 | Winn-Dixie Stores, Inc. | 16,000 | City of Bessemer Utilities Dept. | Utility Deposit – Store #494, 595 |
| 016028869 | Winn-Dixie Stores, Inc. | 160,000 | Lakeland Electric | Utility Deposit – Store #706, 664, 632, 631, 629 |
| 016028870 | Winn-Dixie Stores, Inc. | 40,000 | Fort Pierce Utilities Authority | Utility Deposit – |

Principal:     Winn-Dixie Stores, Inc., *et. al.*
Surety:        Liberty Mutual Insurance Company

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| 016028872 | Winn-Dixie Montgomery, Inc. | 20,000 | City of Opelika Light & Power | Utility Deposit – Store #437, 409 |
| 016028873 | Winn-Dixie Montgomery, Inc. | 1,000 | City of Opelika Water Works Board | Utility Deposit – Store #437, 409 |
| 016028877 | Winn-Dixie Stores, Inc. | 1,515 | City of Winter Park FL | Utility Deposit – Store #2383 |
| 016028878 | Winn-Dixie Stores, Inc. | 551,000 | Tampa Electric Co (TECO) | Utility Deposit |
| 016028881 | Winn-Dixie Montgomery Inc. | 5,652 | Volunteer Energy Co-op | Utility Deposit – Store #1944 |
| 016028883 | Winn-Dixie Stores, Inc. | 74,000 | Ocalo Elec Utility Customer Services Office | Utility Deposit – Store #2228, #2211 |
| 016028884 | Winn-Dixie Montgomery, Inc. | 36,000 | Miss. Public Service Commission | Utility Deposit – Store #1328, 1317, 1374 |
| 016028888 | Winn-Dixie Stores, Inc. | 239,780 | Mississippi Power Co | Utility Deposit |
| 016028889 | Winn-Dixie Stores, Inc. | 25,325 | New Smyrna Beach Utility Commission | Utility Deposit – Store #2304 |
| 016028891 | Winn-Dixie Stores, Inc. | 500 | Florida Public Utilities Co | Utility Deposit Store #2380 – Heathrow FL |
| 016028892 | Winn-Dixie Stores, Inc. | 4,440 | Manatee County Public Works | Utility Deposit – Store #660 – Bradenton FL |
| 016028894 | Winn-Dixie Stores, Inc. D/B/A/ Goodings Supermarkets | 875 | City of Altamonte Springs | Utility Deposit – Store #2384, #2388 – Altamonte Springs |
| 016028895 | Winn-Dixie Stores, Inc. | 60,000 | Utility Board of the City of Key West, Florida | Utility Deposit – Store #358, #317, #324 |
| 016028899 | Winn-Dixie Montgomery, Inc. | 96,762.24 | Central Louisiana Electric Co | Utility Deposit – Store #1564, 1448, 1547, 1504, 1544, 1353 |
| 016028904 | Winn-Dixie Montgomery, Inc. | 5,930 | Mississippi Valley Gas Co | Utility Deposit – Store #583, Meridian MS |
| 016028905 | Winn-Dixie Montgomery, Inc. | 56,930 | Mississippi Valley Gas Co | Utility Deposit |

LIBERTY DEPOSIT BONDS

384574

5

Principal:    Winn-Dixie Stores, Inc., *et. al.*
Surety:       Liberty Mutual Insurance Company

| UTILITY DEPOSIT BONDS | | | | |
| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
| --- | --- | --- | --- | --- |
| 016028906 | Save Rite Grocery Warehouse Inc. | 22,080 | Mississippi Valley Gas Co. | Utility Deposit – Store #2620, 2621, 2625, 2627 |
| 016028910 | Save Rite Grocery Warehouse Inc. | 6,000 | Vicksburg Water & Gas Admin | Utility Deposit – Store #2624, #2634 (fuel) |
| 016028911 | Save Rite Grocery Warehouse Inc. | 5,120 | Willmut Gas Co | Utility Deposit – Store #2623, #2626 |
| 016028912 | Winn-Dixie Montgomery, Inc. | 7,680 | Willmut Gas Co | Utility Deposit – Store #1316, 1334, 1360 |
| 016028925 | Winn-Dixie Stores, Inc. | 1,000,928 | AL Power Co | Utility Payment |
|  | **TOTAL (42)** | **3,439,694.24** |  |  |

Principal:     Winn-Dixie Stores, Inc., *et. al.*
Surety:        Liberty Mutual Insurance Company

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| | | **AGRICULTURE DEALER BONDS** | | |
| 016028913 | Winn-Dixie Stores, Inc. | 500,000 | State of GA | Dealer in Agricultural Producers – State of GA |
| 016028914 | Winn-Dixie Montgomery, Inc. | 225,000 | State of GA | Dealer in Agricultural Products – State of GA |
| 016028920 | Winn-Dixie Montgomery, Inc. | 1,000 | State of FL Dept. | Feed Dealers |
| 016028921 | Astor Products, Inc. | 1,000 | State of FL Dept. | Feed Dealers |
| 016028922 | Winn-Dixie Procurement, Inc. | 1,000 | State of FL Dept | Feed Dealers |
| | **TOTAL (5)** | **728,000** | | |

Principal:    Winn-Dixie Stores, Inc., *et. al.*
Surety:       Liberty Mutual Insurance Company

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| | | | LICENSE BONDS | |
| 016028902 | Leroy Ayo and Winn-Dixie Louisiana Inc. | 5,000 | City of Baton Rouge LA | License & Permit |
| | **TOTAL (1)** | **5,000** | | |

384574

8

Principal:     Winn-Dixie Stores, Inc., *et. al.*
Surety:      Liberty Mutual Insurance Company

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| 016028732 | Winn-Dixie Stores, Inc. | 1,295,000 | State of FL – Dept of | Cigar, Cigarette Tax Bond – 5 Locations in FL |
| 016028738 | Winn-Dixie Stores, Inc. | 76,000 | State of FL – Dept of | Tobacco Products – State of FL – 5 Locations |
| 016028927 | Winn-Dixie Montgomery, Inc. | 485,000 | State of LA | Tobacco Tax |
| | **TOTAL (3)** | **1,856,000** | | |

Principal:      Winn-Dixie Stores, Inc., *et. al.*
Surety:         Liberty Mutual Insurance Company

| FUEL TAX BONDS | | | | |
|---|---|---|---|---|
| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
| 016028748 | Winn-Dixie Stores, Inc. | 250,000 | Mississippi State Tax Commission | Petroleum Tax |
| 016028915 | Winn-Dixie Montgomery, Inc. | 5,000 | State of GA | Motor Fuel Distributor |
| | **TOTAL (2)** | **255,000** | | |

Principal:      Winn-Dixie Stores, Inc., *et. al.*
Surety:         Liberty Mutual Insurance Company

| | | PROPERTY BROKER ICC BOND | | | |
|---|---|---|---|---|---|
| BOND NUMBER | PRINCIPAL | | AMOUNT | OBLIGEE | DESCRIPTION |
| 016028754 | Winn-Dixie Stores, Inc. d/b/a Winn Dixie Logistics | | 10,000 | FHWA/OMC | Property Brokers BMC 84 |
| | **TOTAL (1)** | | **10,000** | | |

| SUMMARY OF BOND TYPES | | |
|---|---|---|
| BOND TYPE | NUMBER OF BONDS | AGGREGATE AMOUNT |
| Appeal | 1 | 599,793 |
| WCSI | 8 | 26,878,201 |
| Auto Self Ins. | 1 | 100,000 |
| Utility Deposit | 42 | 3,439,694.24 |
| Agriculture Dealer | 5 | 728,000 |
| License | 1 | 5,000 |
| Tobacco Tax | 3 | 1,856,000 |
| Fuel Tax | 2 | 255,000 |
| Property Broker ICC | 1 | 10,000 |
| **TOTALS ALL BONDS** | **64** | **33,871,688.24** |

384574

# EXHIBIT B TO TERM SHEET

## WINN-DIXIE STORES, INC.
## BOND SCHEDULE
### 7/20/2006

| Miscellaneous bonds | | | |
|---|---|---|---|
| Winn-Dixie Stores, Inc. | Perishable Ag commodities act(PACA) | Federal Ag | 6,000,000 |
| Winn-Dixie Stores, Inc. | FL Department of Agriculture & Consumer Services | Agricultural Products Dealer | 100,000 |
| Winn-Dixie Stores, Inc. | Florida Dept of Bus and Prof reg | Cigarette Tax | 100,000 |
| Winn-Dixie Stores, Inc. | GA Department of Revenue | Cigar & Cigarette Distrib Tax | 10,000 |
| Winn-Dixie Stores, Inc. | GA Department of Revenue | Tobacco Distrib Tax Stamp | 100,000 |
| Winn-Dixie Stores, Inc. | FL Department of Agriculture | Citrus Inspection Fees | 10,000 |
| | | total | 6,320,000 |

1

Exhibit B



**LIBERTY BOND SERVICES**

# GENERAL AGREEMENT OF INDEMNITY
## COMMERCIAL SURETY

WHEREAS, the undersigned (hereinafter called "INDEMNITOR"), desires one or more of Liberty Mutual Insurance Company, a Massachusetts corporation; LM Insurance Corporation, an Iowa corporation; The First Liberty Insurance Corporation, an Iowa corporation; Liberty Mutual Fire Insurance Company, a Massachusetts corporation; Liberty Insurance Corporation, a Vermont corporation; and any other company that is part of or added to the Liberty Mutual Group for which surety business is underwritten by Liberty Bond Services (collectively hereinafter called "SURETY") to execute or procure bonds, undertakings, recognizances, instruments of guarantee and other like obligations, including those which predate this Agreement (hereinafter called "BONDS") on its behalf; and on behalf of any majority-owned or controlled subsidiaries or any affiliates, whether present or future, and whether directly or indirectly held; and, upon the written request of the undersigned, any other corporation, partnership or person; and as to all of the foregoing, whether they act alone or in joint venture with others (collectively hereinafter called "PRINCIPAL"), or to renew or to refrain from canceling the BONDS;

NOW, THEREFORE, in consideration of the SURETY executing the BONDS, or renewing or refraining from canceling the BONDS, the INDEMNITOR hereby agrees that:

1.  BENEFICIAL INTEREST  -  The undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each of the BONDS.

2.  PREMIUMS  -  The INDEMNITOR shall pay to the SURETY all premiums and charges due for any BONDS in accordance with its rate filings, its manual of rates, or as otherwise established by the SURETY, until the PRINCIPAL or INDEMNITOR shall serve evidence satisfactory to the SURETY of its discharge or release from all liability under any BONDS.

3.  INDEMNITY  -  The INDEMNITOR shall exonerate, indemnify and save harmless the SURETY from and against any and all loss, damage or expense (including, but not limited to, interest, costs and attorney's fees) which the SURETY shall at any time sustain or incur by reason of:  the request to execute, procure, or deliver any BONDS; or the executing, procuring or delivering of any BONDS, whether already or hereafter executed; or the renewal or continuation thereof; or from making any investigation on account thereof; or any payment thereunder; or as a result of prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, or recovering or attempting to recover any salvage in connection therewith; or by reason of the failure of the INDEMNITOR to perform or comply with the terms of this Agreement; or in the enforcement of the terms of this Agreement. An itemized statement of loss and expense incurred by the SURETY, sworn to by an officer of the SURETY, shall be prima facie evidence of the fact and extent of the liability of the undersigned to the SURETY in any claim or suit by the SURETY against the undersigned.

4.  CLAIMS AND SETTLEMENTS  -  The SURETY shall have the exclusive right for itself and the undersigned to determine in good faith whether any claim or suit upon any BONDS shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed.  SURETY may incur such expenses, including reasonable attorney's fees, as SURETY deems necessary or advisable in the investigation, defense and payment of such claims.  It is the SURETY's exclusive right at its option and sole discretion to adjust, settle or compromise any claim, demand, suit or judgment upon the BONDS, unless the PRINCIPAL and the INDEMNITOR shall request the SURETY to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the SURETY, at the time of such request, cash or collateral satisfactory to the SURETY in kind and amount to be used in paying any award(s) or judgment(s) rendered or that may be rendered.  The SURETY shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation, and nothing contained herein shall be construed to waive or diminish any right, defense or remedy which the SURETY might have if this instrument were not executed.

5.  DISCHARGE/PLACE IN FUNDS  -  The INDEMNITOR will, within thirty (30) days after the SURETY's written demand, either: a) procure the discharge of the SURETY from any BONDS and all liability by reason thereof; or b) if unable to secure such discharge, the INDEMNITOR will place the SURETY in funds that are immediately available and sufficient to meet all of SURETY's liabilities or potential liabilities (including attorney's fees, costs and expenses) arising from any BONDS or request therefor (as may or may not be evidenced by the establishment of a reserve), as determined by the SURETY in its sole discretion, whether or not any payments have been made by the SURETY.  The SURETY shall send its written demand to the INDEMNITOR's last known address by registered or certified mail.  Alternatively, at the SURETY's sole discretion and election, INDEMNITOR and SURETY may make other provisions satisfactory to the SURETY for the funding of any bonded obligation(s).  The INDEMNITOR hereby acknowledges that if the INDEMNITOR breaches its obligations set forth in this paragraph, the SURETY will have no adequate remedy at law and shall be entitled to injunctive relief, including without limitation specific performance of the terms of this Agreement.

9. **UNIFORM COMMERCIAL CODE** - This Agreement shall constitute a Security Agreement to the SURETY and also a Financing Statement in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the SURETY without in any way abrogating, restricting or limiting the rights of the SURETY under this Agreement or under law, or in equity. A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

10. **SURETIES** - In the event the SURETY procures the execution of the BONDS by other sureties, or executes the BONDS with co-sureties, or reinsures any portion of the BONDS with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of any such other sureties, co-sureties and reinsurers, as their interests may appear.

11. **DECLINE EXECUTION** - The SURETY may decline to execute, renew or extend any BONDS, including final bonds, and may cancel any BONDS unless the BONDS state otherwise, and the PRINCIPAL and INDEMNITOR shall make no claim to the contrary. The PRINCIPAL and INDEMNITOR shall make no claim relating to the failure or refusal of any person or entity to accept any of the SURETY's BONDS or to award any contract to any PRINCIPAL.

12. **CHANGES, WAIVER OF NOTICE** - The SURETY is authorized and empowered, without notice to or knowledge of the INDEMNITOR or PRINCIPAL, to assent to changes in any BONDS, and/or in the contracts or obligations covered by any BONDS, or to refuse so to assent, it being expressly understood and agreed that the INDEMNITOR shall remain bound under the terms of this Agreement, even though any such assent by the SURETY does or might *substantially* increase the liability of the INDEMNITOR. The INDEMNITOR waives notice of: *the execution of the BONDS;* acceptance of this Agreement; any default; and/or any other acts which may give rise to a bond claim or liability of the SURETY under the BONDS.

13. **INVALIDITY** - Invalidity of any provision of this Agreement by reason of the laws of any jurisdiction shall not render the other provisions hereof invalid. In case the execution of this Agreement by the INDEMNITOR is defective or invalid for any reason, such defect or invalidity shall not affect the validity or enforceability of this Agreement or the liability hereunder of the INDEMNITOR executing the same.

14. **ENFORCEMENT** - Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by SURETY. The undersigned authorize SURETY to join any and all of the undersigned as parties defendant in any action, regardless of venue or forum, against SURETY on account of any BONDS, and to enforce the obligations hereunder directly against any of the undersigned without the necessity of first proceeding against the PRINCIPAL. All funds which shall become due from the INDEMNITOR to the SURETY under any of the terms of this Agreement shall bear prejudgment interest at the legal rate.

15. **GOVERNING LAW** - This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws principles thereof), except to the extent superseded by federal law.

16. **TERMINATION** - This Agreement may be terminated by the INDEMNITOR upon 30 days' written notice sent by registered or certified mail to SURETY at its home office at Liberty Bond Services, 600 West Germantown Pike, Suite 300, Plymouth Meeting, PA 19462, but any such notice of termination shall not operate to modify, bar, or discharge the INDEMNITOR as to the BONDS that may have been theretofore executed or approved, or renewed or extended. Such termination by any undersigned shall in no way affect the obligation of any other undersigned who has not given notice of termination as herein provided.

17. *JOINT/SEVERAL* - *The INDEMNITOR and its successors and assigns are jointly and severally bound by this Agreement.*

Executed this ___23 rd___ day of ___January___, in the year ___2003___.

Winn-Dixie Stores, Inc.
Jacksonville, Florida
(PRINCIPAL/INDEMNITOR name and address)

(CORPORATE SEAL)

By: _R. P. McCook_
(signature)
R. P. McCook - CFO & Sr. Vice President
(name and title)

Attest: _Judith W. Dixon_
(signature)
Judith W. Dixon - Corp Secretary
(name and title)

Exhibit C

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER AUTHORIZING DEBTORS TO ENTER INTO SURETY**
**CREDIT FACILITY WITH LIBERTY MUTUAL INSURANCE COMPANY**
**AND GRANTING RELATED RELIEF**

These cases came before the Court for hearing on August 10, 2006, upon the motion of

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned jointly-

administered cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry

of an order authorizing and approving the Debtors (i) entry into the Term Sheet[1] with Liberty,

(ii) payment of the Facility Fee and reimbursement of certain reasonable attorneys' and expenses

of Liberty in accordance with the Term Sheet, (iii) assumption of the liabilities and obligations

under the General Agreement of Indemnity dated January 23, 2003 (the "Prepetition

Agreement"), and (iv) entry into the Surety Credit Facility (the "Motion"). The Court has

reviewed the Motion and has considered the representations of counsel. Based upon the

representations of counsel and without objection by the United Sates Trustee or any other

interested parties, it is

ORDERED AND ADJUDGED THAT:

1.    The Motion is granted.

---

[1] All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Motion.

2.     The Debtors are authorized to enter into the Term Sheet in substantially the form attached to the Motion as Exhibit A.

3.     The Debtors are authorized to pay Liberty the Facility Fee and reimburse Liberty its reasonable attorneys' fees and expenses incurred after June 30, 2006, all in accordance with the Term Sheet.

4.     The Debtors' assumption of the liabilities and obligations under the Prepetition Agreement is approved, allowed and shall be effective upon the closing of the Surety Credit Facility.

5.     Liberty is authorized under Fed. R. Bankr. P. 3006, to withdraw its Proofs of Claims filed in these cases and, immediately following payment of the Facility Fee, directed to file with this Court or the Debtors' Claims Agent, as applicable, a notice of withdrawal of such Proofs of Claim.

6.     The Debtors are further authorized to enter into definitive documentation governing the Surety Credit Facility, substantially in the form of which was filed with the Court on _____ ____, 2006 (Dkt. No. _____) and served on (a) counsel for the U.S. Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee and (d) any other party in interest requesting a copy of the documentation.

7.     The Debtors are authorized to take such further action as is necessary or desirable to implement the Surety Credit Facility.

8.     The Court retains jurisdiction to hear and determine all matters arising from the implementation of this Order.

2

Dated _____ ___, 2006 in Jacksonville, Florida.


_____

Jerry A. Funk
United States Bankruptcy Judge


Cynthia C. Jackson is directed to serve
a copy of this Order on all parties included
on the Master Service List.

3