**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                  Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., et al.,        Chapter 11

       Debtors.                         Jointly Administered

_____/

**FOURTH APPLICATION OF MILBANK, TWEED, HADLEY & McCLOY LLP,**
**COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR**
**INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR**
**REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM**
**FEBRUARY 1, 2006 THROUGH AND INCLUDING MAY 31, 2006**

Name of Applicant:                  Milbank, Tweed, Hadley & McCloy LLP

Authorized to Provide
Professional Services to:           Official Committee of Unsecured
                                    Creditors

Date of Retention                   April 12, 2005 (effective as of
(Final Approval):                   March 1, 2005)

Period for which compensation
and reimbursement is sought:        February 1, 2006 – May 31, 2006

Amount of Compensation
requested:                          $1,552,033.00

Amount of Expense
Reimbursement requested:            $89,609.45

This is a(n): ___X___ interim   _____ final application.

This is the fourth interim fee application filed by Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP in these cases.

Prior Applications:

| Period Covered | Requested | | Awarded | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| March 1, 2005 – May 31, 2005 | 1,194,617.50 | 108,654.51 | 1,194,617.50 | 108,654.51 |
| June 1, 2005 – September 30, 2005 | 1,283,088.00 | 101,383.95 | 1,283,088.00 | 101,383.95 |
| October 1, 2005 – January 31, 2006 | 832,307.50 | 75,815.03 | 832,307.50 | 75,815.03 |

FOURTH INTERIM FEE APPLICATION OF MILBANK, TWEED,
HADLEY & McCLOY LLP: AS COUNSEL TO OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF WINN DIXIE STORES, INC., ET AL.
(FEBRUARY 1, 2006 – MAY 31, 2006)

| Name | Position; Experience | Hourly Rate | Total Hours | Total Compensation |
|------|----------------------|-------------|-------------|--------------------|
| Dennis Dunne | Financial Restructuring Partner for 9 years; admitted in 1991. | $850 | 204.50 | $173,825.00 |
| Michael Diamond | Litigation Partner for 28 years; admitted in 1971. | $825 | 76.90 | $63,442.50 |
| Robert Finkel | Global Corporate Partner for 6 years; admitted in 1988. | $750 | 4.70 | $3,525.00 |
| Matthew Barr | Financial Restructuring Partner for 2 years; admitted in 1997. | $675 $650 | 243.20 18.00 | $164,160.00 $11,700.00 |
| Robert Winter | Financial Restructuring Associate for 10 years; admitted in 1997. | $565 $555 | 37.60 40.70 | $21,244.00 $22,588.50 |
| Sabina Clorfeine | Litigation Associate for 6 years; admitted in 1997. | $535 $525 | 412.90 64.90 | $220,901.50 $34,072.50 |
| Lena Mandel | Financial Restructuring Senior Attorney for 16 years; admitted in 1990. | $550 | 80.10 | $44,055.00 |
| Abhilash Raval | Financial Restructuring Associate for 8 years; admitted in 1997. | $525 | 8.10 | $4,252.50 |

| James MacInnis | Financial Restructuring Associate for 6 years; admitted in 2001. | $515 $510 | 72.80 14.60 | $37,492.00 $7,446.00 |
| Jeffrey Milton | Financial Restructuring Associate for 6 years; admitted in 1999. | $515 $510 | 70.30 3.60 | $36,204.50 $1,836.00 |
| Ryan Katz | Global Corporate Associate for 5 years; admitted in 2001. | $500 | 6.90 | $3,450.00 |
| Derrick Talerico | Litigation Associate for 4 years; admitted in 2002. | $475 $470 | 609.40 48.40 | $289,465.00 $22,748.00 |
| Michael Comerford | Financial Restructuring Associate for 4 years; admitted in 2003. | $475 $470 | 430.80 83.20 | $204,630.00 $39,105.00 |
| James Bulger | Financial Restructuring Associate for 3 years; admitted in 2004. | $400 | 16.00 | $7,040.00 |
| Brian Kinney | Financial Restructuring Associate for 3 years; admitted in 2004. | $440 $435 | 9.80 8.70 | $4,312.00 $3,784.50 |
| Soham Naik | Financial Restructuring Associate for 3 years; admitted in 2004. | $440 $435 | 96.90 21.20 | $42,636.00 $9,222.00 |

| Jeffrey Goldman | Litigation Associate for 2 years; admitted in 2004. | $410 $400 | 24.40 20.80 | $10,004.00 $8,320.00 |
|---|---|---|---|---|
| Peter Newman | Financial Restructuring Associate for 2 years; admitted in 2005. | $410 | 4.50 | $1,845.00 |
| Catherine Yu | Financial Restructuring Associate for 2 months; admission pending. | $225 | 13.70 | $3,082.50 |
| Rena Ceron | Case Manager | $180 | 95.50 | $17,190.00 |
| Holly Erick | Legal Assistant | $160 | 52.70 | $8,432.00 |
| Scott McCabe | Legal Assistant | $150 | 8.90 | $1,335.00 |
| Sean Norton | Legal Assistant | $150 | 16.70 | $2,505.00 |
| Charmaine Thomas | Legal Assistant | $135 | 23.70 | $3,199.50 |
| Louisa Crespi | Legal Assistant | $145 | 106.60 | $15,457.00 |
| Jacqueline Brewster | Managing Attorney Clerk | $145 | 44.70 | $6,481.50 |
| Joshua Wallach | File Clerk | $120 | 8.70 | $1,044.00 |
| **Total** | | **$499.83[1]** | **3,105.10 hours** | **$1,552,033.00** |

---

[1] The blended rate <u>excluding</u> paraprofessionals is $544.46 per hour.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                    Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., et al.,          Chapter 11

          Debtors.                        Jointly Administered

_____/

**FOURTH APPLICATION OF MILBANK, TWEED, HADLEY & MᶜCLOY LLP, COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM FEBRUARY 1, 2006 THROUGH AND INCLUDING MAY 31, 2006**

Milbank, Tweed, Hadley & MᶜCloy LLP ("Milbank"), counsel to the official committee of unsecured creditors (the "Committee") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors-in-possession appointed in the above-captioned cases (collectively, "Winn-Dixie" or the "Debtors"), submits its application (the "Application"), pursuant to sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under Section 330 of the Bankruptcy Code effective January 30, 1996 (the "U.S. Trustee Guidelines") and the Final Order Approving Interim Compensation Procedures for

Professionals, dated March 15, 2005 (Docket No. 434) (the "Interim Compensation Order"), for the allowance of interim compensation for professional services rendered from February 1, 2006 through and including May 31, 2006 (the "Fourth Interim Compensation Period"), and for reimbursement of expenses incurred in connection with such services, and in support thereof respectfully represents as follows:

## I. INTRODUCTION

### A. Background

1.    Bankruptcy Filing.  On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

2.    Statutory Committees.  On March 1, 2005, the United States Trustee duly appointed the Committee (Docket No. 176).  On August 17, 2005, the United States Trustee appointed the Equity Security Holders' Committee (the "Equity Committee") (Docket No. 3027), which was disbanded on January 11, 2006 (Docket No. 5098).

3.    Venue Transfer.  By order dated April 13, 2005, the New York Bankruptcy Court transferred venue of these cases to this Court.  The Debtors' cases are being jointly administered for procedural purposes only.  The Debtors continue

to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

4.    Fee Examiner.  On August 10, 2005, this Court ordered the appointment of a fee examiner, pursuant to the Order Granting Motion To Appoint Fee Examiner (Docket No. 2933).

5.    Jurisdiction.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Debtors' chapter 11 cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.

## B.    Retention of Milbank and Billing History

6.    Authorization for Milbank's Retention.  On April 12, 2005, the Committee's retention of Milbank was authorized in these cases pursuant to the Order Under 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002, Authorizing Retention and Employment of Milbank, Tweed, Hadley & McCloy LLP as Counsel to

3

Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al. (Docket No. 702) (the "Retention Order").[1]

       7.   First Interim Fee Application.  On July 15, 2005, Milbank submitted the First Application of Milbank, Tweed, Hadley & M^cCloy LLP, Counsel to Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from March 1, 2005 Through and Including May 31, 2005 (the "First Interim Compensation Period," and such interim fee application being the "First Interim Fee Application") (Docket No. 2242).

       8.  In accordance with the Interim Compensation Order, Milbank submitted monthly fee statements to, among others, the Debtors seeking interim compensation and reimbursement of expenses.  During the First Interim Compensation Period, Milbank submitted the following fee statements:

---

[1]    On March 30, 2005, the New York Bankruptcy Court entered an order (Docket No. 607) approving Milbank's retention on an interim basis subject to final approval, which occurred pursuant to the Retention Order.

(a)  On May 4, 2005, pursuant to the Interim Compensation Order, Milbank served its first fee statement for the period from March 1, 2005 through and including March 31, 2005 (the "First Fee Statement").  The First Fee Statement sought an allowance of $447,752 as compensation for services rendered and reimbursement of $35,345.75 in expenses.

(b)  On May 25, 2005, pursuant to the Interim Compensation Order, Milbank served its second fee statement for the period from April 1, 2005 through and including April 30, 2005 (the "Second Fee Statement").  The Second Fee Statement sought an allowance of $362,756 as compensation for services rendered and reimbursement of $37,266.13 in expenses.

(c)  On June 30, 2005, pursuant to the Interim Compensation Order, Milbank served its third fee statement for the period from May 1, 2005 through and including May 31, 2005 (the "Third Fee Statement" and, together with the First Fee Statement and Second Fee Statement, collectively the "First Interim Fee Statements").  The Third Fee Statement sought an allowance of $384,109.50 as compensation for services rendered and reimbursement of $36,042.63 in expenses.

9.    On August 5, 2005, this Court granted the First Interim Fee Application and allowed Milbank's request for $1,194,617.50 in fees and $108,654.51 in expenses, for a total award of $1,303,272.01 (Docket No. 2811).

10.    Second Interim Fee Application.  On November 11, 2005, Milbank submitted the Second Application of Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, Counsel to Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from June 1, 2005 Through and Including September 30, 2005 (the "Second Interim Compensation Period," and such

interim fee application being the "Second Interim Fee

Application") (Docket No. 4151).

    11.  During the Second Interim Compensation Period,

Milbank submitted the following fee statements:

    (a)  On August 10, 2005, pursuant to the Interim
         Compensation Order, Milbank served its fourth fee
         statement for the period from June 1, 2005 through and
         including June 30, 2005 (the "Fourth Fee Statement").
         The Fourth Fee Statement sought an allowance of
         $441,629 as compensation for services rendered and
         reimbursement of $36,978.62 in expenses.

    (b)  On October 25, 2005, pursuant to the Interim
         Compensation Order, Milbank served its fifth fee
         statement for the period from July 1, 2005 through and
         including July 31, 2005 (the "Fifth Fee Statement").
         The Fifth Fee Statement sought an allowance of
         $340,372 as compensation for services rendered and
         reimbursement of $27,457.91 in expenses.

    (c)  On November 3, 2005, pursuant to the Interim
         Compensation Order, Milbank served its sixth fee
         statement for the period from August 1, 2005 through
         and including August 31, 2005 (the "Sixth Fee
         Statement").  The Sixth Fee Statement sought an
         allowance of $300,627.50 as compensation for services
         rendered and reimbursement of $19,618.06 in expenses.

    (d)  On November 4, 2005, pursuant to the Interim
         Compensation Order, Milbank served its seventh fee
         statement for the period from September 1, 2005
         through and including September 30, 2005 (the "Seventh
         Fee Statement" and, together with the Fourth Fee
         Statement, Fifth Fee Statement and Sixth Fee
         Statement, collectively the "Second Interim Fee
         Statements").  The Seventh Fee Statement sought an
         allowance of $200,459.50 as compensation for services
         rendered and reimbursement of $17,329.36 in expenses.

    12.  On December 1, 2005, this Court granted the

Second Interim Fee Application and allowed Milbank's request for

$1,283,088 in fees and $101,383.95 in expenses, for a total award of $1,384,447.95 (Docket No. 4421).

13.    <u>Third Interim Fee Application</u>.  On March 17, 2006, Milbank submitted the Third Application of Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, Counsel to Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from October 1, 2005 Through and Including January 31, 2006 (the "<u>Third Interim Compensation Period</u>," and such interim fee application being the "<u>Third Interim Fee Application</u>") (Docket No. 6547).

14.    During the Third Interim Compensation Period, Milbank submitted the following fee statements:

(a)    On December 6, 2005, pursuant to the Interim Compensation Order, Milbank served its eighth fee statement for the period from October 1, 2005 through and including October 31, 2005 (the "<u>Eighth Fee Statement</u>").  The Eighth Fee Statement sought an allowance of $192,014.50 as compensation for services rendered and reimbursement of $19,653.68 in expenses.

(b)    On January 17, 2006, pursuant to the Interim Compensation Order, Milbank served its ninth fee statement for the period from November 1, 2005 through and including November 30, 2005 (the "<u>Ninth Fee Statement</u>").  The Ninth Fee Statement sought an allowance of $172,860.50 as compensation for services rendered and reimbursement of $13,662.09 in expenses.

(c)    On February 7, 2006, pursuant to the Interim Compensation Order, Milbank served its tenth fee statement for the period from December 1, 2005 through and including December 31, 2005 (the "<u>Tenth Fee Statement</u>").  The Tenth Fee Statement sought an

allowance of $165,005.50 as compensation for services rendered and reimbursement of $17,985.81 in expenses.

(d)   On March 14, 2006, pursuant to the Interim Compensation Order, Milbank served its eleventh fee statement for the period from January 1, 2006 through and including January 31, 2006 (the "Eleventh Fee Statement" and, together with the Eighth Fee Statement, Ninth Fee Statement and Tenth Fee Statement, collectively the "Third Interim Fee Statements").  The Eleventh Fee Statement sought an allowance of $302,427 as compensation for services rendered and reimbursement of $24,513.45 in expenses.

15.   On April 6, 2006, this Court granted the Third Interim Fee Application and allowed Milbank's request for $832,307.50 in fees and $75,815.03 in expenses, for a total award of $908,122.53 (Docket No. 6955).

16.   Fourth Interim Fee Application.  This is Milbank's fourth interim Application for approval and allowance of compensation and reimbursement of expenses.  Milbank makes this Application pursuant to sections 330 and 331 of the Bankruptcy Code.  No prior application has been made to this or any other court for the relief requested herein.

17.   During the Fourth Interim Compensation Period, Milbank submitted the following fee statements:

(a)   On May 8, 2006, pursuant to the Interim Compensation Order, Milbank served its twelfth fee statement for the period from February 1, 2006 through and including February 28, 2006 (the "Twelfth Fee Statement").  The Twelfth Fee Statement sought an allowance of $433,958.50 as compensation for services rendered and reimbursement of $24,656.52 in expenses.

(b)  On May 25, 2006, pursuant to the Interim Compensation Order, Milbank served its thirteenth fee statement for the period from March 1, 2006 through and including March 31, 2006 (the "Thirteenth Fee Statement").  The Thirteenth Fee Statement sought an allowance of $391,211 as compensation for services rendered and reimbursement of $23,495.96 in expenses.

(c)  On July 12, 2006, pursuant to the Interim Compensation Order, Milbank served its fourteenth fee statement for the period from April 1, 2006 through and including April 30, 2006 (the "Fourteenth Fee Statement").  The Fourteenth Fee Statement sought an allowance of $327,376.50 as compensation for services rendered and reimbursement of $10,811.48 in expenses.

(d)  On July 13, 2006, pursuant to the Interim Compensation Order, Milbank served its fifteenth fee statement for the period from May 1, 2006 through and including May 31, 2006 (the "Fifteenth Fee Statement" and, together with the Twelfth Fee Statement, Thirteenth Fee Statement and Fourteenth Fee Statement, collectively the "Fourth Interim Fee Statements").  The Fifteenth Fee Statement sought an allowance of $399,487 as compensation for services rendered and reimbursement of $30,645.49 in expenses.

18.  As of the filing of this Application, Milbank has received one payment with respect to the Fourth Interim Fee Statements totaling $371,823.32.  Milbank has applied this payment to 80% of the fees and 100% of the expenses requested pursuant to the Twelfth Fee Statement.

19.  Milbank has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

20.   No promises have been received by Milbank or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## II.   CASE STATUS

21.   On June 29, 2006, the Debtors filed the First Proposed Disclosure Statement with Respect to Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (Docket No. 8854) and the First Proposed Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (Docket No. 8856).   A hearing seeking approval of the disclosure statement solicitation motion is scheduled for August 4, 2006.

## III. APPLICATION

22.   By this Application, Milbank is seeking full allowance of (a) compensation for professional services rendered by Milbank, as counsel for the Committee, during the Fourth Interim Compensation Period and (b) reimbursement of expenses incurred by Milbank in connection with such services during the Fourth Interim Compensation Period.

23.   In this Application, Milbank seeks approval of $1,552,033 for legal services rendered on behalf of the Committee during the Fourth Interim Compensation Period and $89,609.45 for reimbursement of expenses incurred in connection

with the rendition of such services, for a total award of $1,641,642.45.

Pursuant to the Interim Compensation Order, Milbank, absent objection within 20 days of submitting a fee statement, is entitled to 80% of the fees and 100% of the expenses sought in each of the Fourth Interim Fee Statements, prior to Court approval of such fees and expenses in connection with this Application.  However, even though there has been no objection to the Twelfth Fee Statement and the Thirteenth Fee Statement prior to the applicable deadlines[2], Milbank has only received one payment with respect to the Fourth Interim Fee Statements totaling $371,823.32.  Milbank has applied this payment to 80% of the fees and 100% of the expenses requested pursuant to the Twelfth Fee Statement.  Therefore, Milbank is seeking a total payment of $1,269,819.13 pursuant to this Application, representing the unpaid balance of 100% of fees and 100% of expenses for the Fourth Interim Compensation Period.[3]

     24.   The fees sought by this Application reflect an aggregate of 3,105.10 hours of attorney and paraprofessional

---

[2]    The deadline to object to the Fourteenth Fee Statement is August 1, 2006, and the deadline to object to the Fifteenth Fee Statement is August 2, 2006.

[3]    To the extent Milbank receives any payment for any of the Fourth Interim Fee Statements prior to the hearing on this Application, Milbank will advise the Court and amend its request accordingly.

time spent and recorded in performing services for the Committee during the Fourth Interim Compensation Period, at a blended average hourly rate of $499.83 for both professionals and paraprofessionals.

25.   Milbank rendered to the Committee all services for which compensation is sought solely in connection with these cases in furtherance of the duties and functions of the Committee.

26.   Milbank maintains computerized records of the time expended in rendering the professional services required by the Committee.   These records are maintained in the ordinary course of Milbank's business.   For the convenience of the Court and parties in interest, a billing summary for the Fourth Interim Compensation Period is attached as part of the cover sheet, setting forth the name of each attorney and paraprofessional for whose work on these cases compensation is sought, each attorney's year of bar admission, the aggregate amount of time expended by each attorney or paraprofessional, the hourly billing rate for each attorney or paraprofessional at Milbank's current billing rates and the individual amounts requested as part of the total amount of compensation requested. In addition, set forth in the billing summary is additional information indicating whether each attorney is a partner or associate, the number of years each attorney has held such

12

position, and each attorney's area of concentration.  The compensation requested by Milbank is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

27.  Attached hereto as Exhibit A are time entry records broken down in tenths of an hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description of services performed by each attorney and paraprofessional on behalf of the Committee for the Fourth Interim Compensation Period.

28.  Milbank also maintains computerized records of all expenses incurred in connection with the performance of professional services.  A summary of the amounts and categories of expenses for which reimbursement is sought for the Fourth Interim Compensation Period, as well as a breakdown of expenses by project category and detailed descriptions of these expenses, are attached hereto as Exhibit B.

### IV.   SUMMARY OF PROFESSIONAL SERVICES RENDERED

29.  To provide an orderly summary of the services rendered on behalf of the Committee by Milbank, and in accordance with the U.S. Trustee Guidelines, Milbank has established the following separate project billing categories in connection with these cases:

(a) Adequate Protection Issues and Litigation

```
(b)  Asset Sales
(c)  Automatic Stay Enforcement & Litigation
(d)  Business Plan Review and Analysis
(e)  Change of Control Transactions
(f)  Claims Analysis and Estimation
(g)  Committee Administration
(h)  Committee Meetings
(i)  Court Hearings
(j)  Customer Contracts & Programs
(k)  Debtor-in-Possession Meetings and Communications
(l)  DIP and Exit Financing
(m)  Disclosure Statement
(n)  Employee Issues
(o)  Environmental Issues
(p)  Equipment/Personal Property Leases
(q)  Exclusivity Issues
(r)  Executory Contracts
(s)  Fee Applications - Other
(t)  File, Docket and Calendar Maintenance
(u)  General Communications with Creditors
(v)  Insurance Matters
(w)  PACA
(x)  Pension Issues
(y)  Preparation of Milbank Fee Applications
(z)  Real Property Leases
(aa) Reclamation Issues
(bb) Regulatory Issues
(cc) Reorganization Plan
(dd) Reporting Requirements
(ee) Retention of Professionals
(ff) Rule 2004 Examinations
(gg) Secured Transactions
(hh) Substantive Consolidation
(ii) Tax Issues
(jj) Travel Time
(kk) Union Issues
(ll) Utilities Advice
(mm) Vendor Issues
(nn) Voidable Transfers and other potential claims
(oo) Venue Issues
(pp) Equity Committee
(qq) Examiner
```

30.   The following summary is intended to highlight a number of the services rendered by Milbank in the separate

project billing categories where Milbank has expended a
considerable number of hours on behalf of the Committee, and it
is not meant to be a detailed description of all of the work
performed.  Detailed descriptions of the day-to-day services
provided by Milbank during the Fourth Interim Compensation
Period and the time expended performing such services in each
project billing category are fully set forth in Exhibit A
hereto.  Such detailed descriptions show that Milbank was
heavily involved in the performance of services for the
Committee on a daily basis, including night and weekend work,
often under extreme time constraints to meet the needs of the
Committee in these cases.

## A.   Asset Sales

31.  During the Fourth Interim Compensation Period, on
behalf of the Committee, Milbank attorneys worked closely with
the Committee's financial advisors and the Debtors' legal and
financial advisors to negotiate enhanced asset sale values and
transaction terms for the Debtors' estates in connection with
sales of various store leases, warehouses, distribution centers
and other assets.  During the Fourth Interim Compensation
Period, Milbank attorneys (i) reviewed and analyzed the terms of
the sale of the Debtors' Pompano distribution center, (ii)
reviewed and analyzed the proposed sale of the Debtors'
interests in certain stores operated in the Bahamas and

participated in the auction of such stores among competing bidders, (iii) reviewed and analyzed the proposed sale of 35 additional grocery stores and participated in the auction of such stores, (iv) engaged in continual interaction with the Debtors regarding discrete asset sale issues that arose throughout the Fourth Interim Compensation Period through conference calls and other correspondence and (v) informed the Committee of pending asset sales, analyzed the proposed transactions and recommended courses of action for the Committee.

**B.    Automatic Stay Enforcement & Litigation**

32.    During the Fourth Interim Compensation Period, Milbank attorneys reviewed and analyzed numerous motions seeking relief from the automatic stay.  Milbank attorneys worked closely with the Debtors' legal counsel regarding the strategy with respect to dealing with the relief from stay motions.  This included evaluating whether such motions should be opposed because a movant had failed to comply with the Debtors' claims resolution procedures, which address prepetition litigation claims.

**C.    Claims Analysis & Estimation**

33.    During the Fourth Interim Compensation Period, Milbank attorneys reviewed and analyzed the Debtors' proposed resolution of prepetition litigation claims in connection with

the Debtors' court ordered claims resolution procedures.   In
addition, Milbank provided Committee members with updates
regarding the status of such settlements and compliance with the
claims resolution procedures.

34.   Furthermore, during the Fourth Interim
Compensation Period, Milbank attorneys reviewed various requests
to file late proofs of claim or motions to amend proofs of claim
by certain claimants in these cases.   Milbank attorneys worked
closely with Debtors' counsel to formulate appropriate responses
to such requests.   Milbank attorneys also reviewed the Debtors'
proposal for a special bar date for certain governmental
entities and provided Committee members with information
regarding such proposal.

**D.**   **Committee Administration**

35.   Milbank's attention to the Committee's
organizational needs enabled the Committee to promptly complete
the administrative matters that were necessary to the
Committee's effective participation in these cases.   Throughout
the Fourth Interim Compensation Period, Milbank attorneys
counseled and advised the Committee regarding its statutory and
fiduciary duties to the unsecured creditor body and the
fiduciary obligations of the other parties in interest in
general.

36.   Milbank prepared memoranda, and provided advice orally when time constraints so required, on the numerous pending issues arising in these cases.  Milbank analyzed issues and motions filed in the Debtors' cases and recommended action.

37.   Due to Milbank attorneys' experience in counseling various parties in interest in restructurings and bankruptcy cases, Milbank believes it provided and will continue to provide to the Committee a unique perspective and sophisticated understanding of all issues relating to the administration of the Debtors' cases.

E.   **Committee Meetings**

38.   Numerous issues arose during the Fourth Interim Compensation Period requiring meetings of the Committee. Committee meetings generally occur weekly via teleconference. Milbank organized the Committee meetings by drafting agendas that included topics from all of the Committee's professionals and by distributing certain other materials for Committee members to review.  Milbank discussed with the Committee all significant matters arising in these cases during the Fourth Interim Compensation Period and assisted the Committee in formulating positions on issues as they arose.

39.   Through Committee meetings and conference calls, and numerous other communications with members of the Committee, Milbank has assisted the Committee in (i) fulfilling its

obligations to unsecured creditors and (ii) making informed decisions regarding the numerous issues that have arisen in these cases.

F.   **Real Property Leases**

40.   During the Fourth Interim Compensation Period, Milbank attorneys reviewed, analyzed and negotiated the terms and conditions under which the Debtors sought to reject numerous real property leases.  Milbank attorneys engaged in extensive negotiations with counsel to the Debtors' over the terms and conditions of proposed lease rejections and worked with the Committee's financial advisors to prepare memoranda for the Committee regarding each set of lease rejections.

41.   In addition, Milbank attorneys reviewed and analyzed various motions for payment of administrative expenses by certain of the Debtors' real property lessors.  Milbank attorneys worked closely with the Debtors' legal counsel regarding the strategy with respect to dealing with administrative expense motions.

G.   **Reorganization Plan**

42.   During the Fourth Interim Compensation Period, Milbank attorneys worked with the Committee to investigate, among other things, whether any action or inaction by the Debtors' prepetition directors, officers, senior management, or professionals contributed to the filing of the chapter 11 case

19

and/or if the estates have any potentially viable claims against these parties worth pursuing (the "Committee Investigation"). The Investigation included, without limitation, meeting with the Debtors' current senior management and requesting documents relevant to the Investigation.  Milbank attorneys also conducted in-person and telephonic interviews of 24 persons, including current and former Winn-Dixie employees, officers and directors, and an Assistant United States Attorney in connection with the Investigation.  The Investigation also interviewed Debtors' former Chief Executive Officer Allan Rowland by written questionnaire and reviewed various documents from the Debtors, former employees and KPMG (the Debtors' external auditor). Milbank attorneys also drafted a report disclosing its findings from the Investigation, discussed its conclusions with the Committee and filed the report with the Court on June 29, 2006.

## H.   **Substantive Consolidation**

43.   During the Fourth Interim Compensation Period, Milbank attorneys regularly corresponded with and conferred in-person with the Debtors' legal and financial advisors and the Committee's financial advisors regarding substantive consolidation issues.  Milbank attorneys (i) conducted extensive research as to the legal and factual bases, if any, for the potential substantive consolidation of the Debtors' estates; (ii) reviewed thousands of pages of due diligence documents

relating to the potential consolidation of the Debtors' estates; (iii) interviewed numerous employees of the Debtors; (iv) reviewed internal financial, organizational and operational documents produced in response to specific document requests made as part of the substantive consolidation investigation; and (v) reviewed large quantities of publicly available information on the Debtors.  Milbank attorneys drafted detailed memoranda to the Committee regarding whether the Debtors' estates should be treated separately for purposes of distributions to unsecured creditors or whether substantive consolidation (in whole or in part) was warranted.

44.  After the foregoing extensive legal and factual analysis, Milbank worked with the members of the Committee (and certain of its professionals) to foster further discussions and negotiations amongst the Committee's members in an effort to resolve substantive consolidation issues. A resolution was reached within the Committee.  Subsequently, Milbank attorneys negotiated confidentiality agreements and/or common interest agreements with other constituencies, including the Debtors, to gain broad based support for the settlement in connection with incorporating it into the recently filed plan of reorganization.

## V.    FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

45.    The factors to be considered in awarding attorneys fees as enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been adopted by most courts.[4]  Milbank respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

(A)    The Time and Labor Required.  The professional services rendered by Milbank on behalf of the Committee have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

(B)    The Novelty and Difficulty of Questions.  Novel and complex issues have arisen in the course of these chapter 11 cases, and it can be anticipated that other such issues will be encountered.  In these cases, as in many others in which the firm is involved,

---

[4]    Grant v. Florida Power Corp. (In re American Fabricators, Inc.), 197 B.R. 987, 993-94 (Bankr. M.D. Fla. 1996) (adopting the First Colonial factors and noting that Fifth Circuit decisions before 1981 are binding precedent in the Eleventh Circuit).  The factors embraced by the Fifth Circuit in First Colonial were adopted by the Fifth Circuit's decision in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), except that First Colonial also included the "spirit of economy" as a factor which was expressly rejected by Congress in enacting section 330 of the Bankruptcy Code.  Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1403 (11th Cir. 1997).  The remaining First Colonial factors continue to apply to determine the reasonableness of fees awarded under the Bankruptcy Code.  3 Collier on Bankruptcy ¶ 330.04[3][c] (Lawrence P. King, et al., eds., 15th ed. 1997).  In addition, a majority of the First Colonial factors are now codified in section 330(a)(3).  Id.

Milbank's effective advocacy and creative approach to
problem solving have helped clarify and resolve
difficult issues and will continue to prove
beneficial.

(C)     The Skill Requisite to Perform the Legal Services
        Properly.  Milbank believes that its recognized
        expertise in the area of financial restructuring, its
        ability to draw from highly experienced professionals
        in other areas of its practice such as structured
        finance, mergers and acquisitions, litigation,
        environmental and regulatory law and its practical
        approach to the resolution of issues will help
        maximize distributions to the Debtors' unsecured
        creditors.

(D)     The Preclusion of Other Employment by Applicant Due to
        Acceptance of the Case.  Due to the size of Milbank's
        financial restructuring department and the firm as a
        whole, Milbank's representation of the Committee has
        not precluded the acceptance of new clients.  However,
        the number of matters needing attention on a
        continuous basis has required several of Milbank's
        attorneys to commit significant portions of their time
        to these cases.

(E)     The Customary Fee.  The compensation sought herein is
        based upon Milbank's normal hourly rates for services
        of this kind.  Milbank respectfully submits that the
        compensation sought herein is not unusual given the
        magnitude and complexity of these cases and the time
        dedicated to the representation of the Committee.
        Such compensation is commensurate with fees Milbank
        has been awarded in other cases, as well as with fees
        charged by other attorneys of comparable experience.

(F)     Whether the Fee is Fixed or Contingent.  Milbank
        charges customary hourly rates for the time expended
        by its attorneys and paraprofessionals in representing
        the Committee, and Milbank's fee is not outcome
        dependent.

(G)  <u>Time Limitations Imposed by Client or Other
     Circumstances</u>.  As stated above, Milbank has been
     required to attend to various issues as they have
     arisen in these cases.  Often, Milbank has had to
     perform these services under significant time
     constraints requiring attorneys and paraprofessionals
     assigned to these cases to work evenings and on
     weekends.

(H)  <u>The Amount Involved and Results Obtained</u>.  According
     to the Debtors, the Committee represents the interests
     of unsecured creditors holding unsecured claims
     estimated at well over $800 million dollars.  Through
     Milbank's efforts, the Committee has been an active
     participant in these chapter 11 cases.  The
     Committee's participation, with Milbank's counsel and
     guidance, has greatly contributed to the efficient
     administration and prospects for reorganization of
     these cases.

(I)  <u>The Experience, Reputation and Ability of the
     Attorneys</u>.  Milbank has a sophisticated and nationally
     recognized corporate reorganization and financial
     restructuring practice, and Milbank attorneys involved
     in this representation have played a major role in
     numerous complex restructurings including, for
     example, the chapter 11 cases of Enron Corp., Refco
     Inc., RCN Corp., Intermet Corp., Fruit of the Loom
     Inc., Adelphia Communications Corp., US Airways Group,
     Inc., Global Crossing Ltd., Fleming Companies, Inc.,
     Dairy Mart Convenience Stores, Inc., Lernout & Hauspie
     Speech Products N.V., Teligent, Inc., World Access,
     Inc., ORBCOMM Global, L.P., ICO Global Communications
     Inc., Safety-Kleen Corp., HomePlace Stores, Inc.,
     Hvide Marine, Inc., Sun TV and Appliances, Inc.,
     Seven-Up/RC Bottling Company of Southern California,
     Inc. and Ames Department Stores, Inc.  Milbank's
     experience enables it to perform the services
     described herein competently and expeditiously.

(J)  <u>The "Undesirability" of the Case</u>.  These cases are not
     undesirable but, as already indicated, have required a
     significant commitment of time from many of Milbank's
     attorneys.

(K)  <u>Nature and Length of Professional Relationship</u>.
     Milbank was selected as the Committee's counsel
     shortly after the Committee's formation, on March 1,

2005, and was retained effective as of that date pursuant to an order of the Court dated April 12, 2005. Milbank has been rendering services continuously to the Committee since the Committee was formed, and Milbank has rendered such services in a necessary and appropriate manner.

## VI.  ALLOWANCE OF COMPENSATION

46.  The professional services rendered by Milbank have required a high degree of professional competence and expertise to address, with skill and dispatch, the numerous issues requiring evaluation and action by the Committee. Milbank respectfully submits that the services rendered to the Committee were performed efficiently, effectively and economically, and that the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditors as a whole and the Debtors' estates.

47.  The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> Any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

48.  With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy Code provides, in

pertinent part, that the Court may award to a professional

person, "reasonable compensation for actual, necessary services

rendered."  Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable
> compensation to be awarded, the court shall
> consider the nature, the extent, and the value of
> such services, taking into account all relevant
> factors, including –
>
> (A)  the time spent on such services;
> (B)  the rates charged for such services;
> (C)  whether the services were necessary to
>      the administration of, or beneficial at
>      the time at which the service was
>      rendered toward the completion of, a
>      case under this title;
> (D)  whether the services were performed
>      within a reasonable amount of time
>      commensurate with the complexity,
>      importance, and nature of the problem,
>      issue, or task addressed; and
> (E)  whether the compensation is reasonable
>      based on the customary compensation
>      charged by comparably skilled
>      practitioners in cases other than cases
>      under this title.

11 U.S.C. § 330(a)(3)(A).

49.  The congressional policy expressed above provides

for adequate compensation in order to continue to attract

qualified and competent professionals to bankruptcy cases.  In

re Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("Congress

determined, it appears, that on average the gain to the estate

of employing able, experienced, expert counsel would outweigh

the expense to the estate of doing so, and that unless the

estate paid competitive [market] sums it could not retain such

counsel on a regular basis.") (citations and quotations omitted).

50.   The total time spent by Milbank attorneys and paraprofessionals during the Fourth Interim Compensation Period was 3,105.10 hours and has a fair market value of $1,552,033. As shown by this Application and supporting exhibits, Milbank's services were rendered economically and without unnecessary duplication of efforts.  In addition, the work involved, and thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.

## VII. <u>EXPENSES</u>

51.   Milbank has incurred a total of $89,609.45 in expenses in connection with representing the Committee during the Fourth Interim Compensation Period.  Milbank records all expenses incurred in connection with the performance of professional services.

52.   In connection with the reimbursement of expenses, Milbank's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients. The expenses charged to Milbank's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges,

photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research and transcription costs.

53. Milbank charges the Committee for these expenses at rates consistent with those charged to Milbank's other bankruptcy clients, which rates are equal to or less than the rates charged by Milbank to its non-bankruptcy clients.

54. In providing or obtaining from third parties services which are reimbursable by clients, Milbank does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

55. Milbank regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.

56. Attorneys at Milbank have not incurred expenses for luxury accommodations or deluxe meals. The Application does not seek reimbursement of any air travel expenses in excess of coach fares. Throughout the Fourth Interim Compensation Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII. <u>NOTICE</u>

57.   Pursuant to the Interim Compensation Order, notice of this Motion has been given to bankruptcy counsel to the Debtors, corporate counsel to the Debtors, counsel to the agent for the Debtor's post-petition secured lender, the United States Trustee, all other parties on the Debtors' Master Service List and all other parties not otherwise listed that have requested receipt of notices in these cases.   In light of the nature of the relief requested herein, the Committee requests that such notice be deemed adequate and sufficient.


[REMAINDER OF PAGE INTENTIONALLY BLANK]

## IX.  CONCLUSION

WHEREFORE, Milbank respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit C, (a) allowing Milbank (i) interim compensation for professional services rendered as counsel for the Committee during the Fourth Interim Compensation Period in the amount of $1,552,033 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $89,609.45, for a total award of $1,641,642.45; (b) authorizing and directing the Debtors to pay to Milbank $1,269,819.13, which is an amount equal to the unpaid balance of fees and expenses incurred during the Fourth Interim Compensation Period; and (c) granting such further relief as is just.

Dated: July 21, 2006

MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP

By: /s/ Matthew S. Barr
　　Matthew S. Barr (MB 9170)
　　Michael E. Comerford (MC 7049)
　　1 Chase Manhattan Plaza
　　New York, New York 10005
　　(212) 530-5000

　　Co-counsel for Official
　　Committee of Unsecured
　　Creditors of Winn-Dixie Stores,
　　Inc., et al.