# EXHIBIT A

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
D.J. Baker (DB 0085)

KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Sarah Robinson Borders

Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., <u>et al.</u>,** | : | **Case No. 05-11063** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

**APPLICATION FOR AUTHORITY TO RETAIN**
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AS**
**<u>LEAD RESTRUCTURING AND BANKRUPTCY COUNSEL TO THE DEBTORS</u>**

Winn-Dixie Stores, Inc. and its debtor affiliates,[1] as debtors and debtors-in-possession

(collectively, the "Debtors"), respectfully represent:

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**Background**

1.      The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

2.      The Debtors will continue in possession of their property and will operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in these cases.

4.      This Court has jurisdiction over this Application under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**A.      Company Background.**

5.      The Debtors are grocery and drug retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  According to published reports, the Debtors are the eighth-largest food retailer in the United States and one of the largest in the Southeast.  The Debtors' business was founded in 1925 with a single grocery store and has grown through acquisitions and internal expansion.  The Debtors currently operate more than 900 stores in the United States.  Substantially all of the Debtors' store locations are leased rather than owned.

6.      The Debtors employ nearly 79,000 associates, of whom approximately 33,000 are employed on a full-time basis and 46,000 on a part-time basis.

7.      The Debtors operate in a highly competitive supermarket industry that is generally characterized by intense competition and narrow profit margins.  The Debtors compete

directly with national, regional, and local supermarket chains and independent supermarkets, as well as with Wal-Mart, similar supercenters, and other non-traditional grocery retailers such as dollar discount stores, drug stores, convenience stores, warehouse club stores, and conventional department stores.

**B.    Capital Structure**

8.    The Debtors' primary secured obligations arise under a Second Amended and Restated Credit Agreement dated June 29, 2004, with Wachovia Bank, N.A., as administrative agent; GMAC Commercial Finance LLC, as syndication agent; Wells Fargo Foothill, LLC, General Electric Capital Corporation, and The CIT Group/Business Credit, Inc., as co-documentation agents; Wachovia Bank, N.A., as successor by merger to Congress Financial Corporation (Florida), as collateral monitoring agent; and the several lenders from time to time party thereto (as amended, the "Credit Agreement").

9.    The Debtors' maximum borrowing capacity under the Credit Agreement totals $600 million.  Beginning on September 22, 2004, the Debtors failed to meet a financial test under the Credit Agreement that limited the amount available for borrowings; however, the Debtors obtained a waiver of this financial test on February 9, 2005.  The waiver requires that the Debtors perfect the lenders' security interest in assets with a requisite value on or before March 31, 2005.  The waiver expires on June 29, 2005.

10.    The Credit Agreement provides for revolving loans and the issuance of letters of credit.  It is secured by substantially all of the personal property and owned real property of the Debtors that are parties thereto.  As of the Petition Date, the Debtors were liable for obligations under the Credit Agreement in the aggregate amount of approximately $427 million.  The

Debtors are seeking authority to refinance their obligations under the Credit Agreement pursuant to a debtor-in-possession financing facility provided by Wachovia Bank, N.A. and other lenders.

11.     Certain of the Debtors are parties to an Indenture with Wilmington Trust Company dated December 26, 2000 (as amended and supplemented, the "Indenture"). Pursuant to the Indenture, Debtor Winn-Dixie Stores, Inc. issued $300 million in principal amount of Senior Notes bearing interest at 8.875% per annum, and certain other Debtors guaranteed the Senior Notes. The Senior Notes mature in 2008 and require semi-annual interest-only payments until maturity. The Senior Notes are unsecured obligations that are *pari passu* with most of the Debtors' other unsecured obligations, which generally consist of trade debt, contract and lease obligations (including possible rejection damages), employee obligations, and litigation claims.

12.     Parent company Winn-Dixie Stores, Inc. is publicly owned, and its common stock has been traded on the New York Stock Exchange since 1952 under the ticker symbol WIN. All of the other Debtors are direct and indirect subsidiaries of Winn-Dixie Stores, Inc.

**C.      Events Leading to the Debtors' Chapter 11 Cases.**

13.     In January 2004, the Debtors announced a series of actions designed to improve their competitive position (the "Strategic Plan"). The Strategic Plan included (a) a review of business strategies and marketing programs, (b) an expense reduction plan designed to achieve a $100 million annual expense reduction, (c) a market positioning review through which markets will be identified as either core, and positioned for future investment and growth, or non-core, and evaluated for sale or closure, (d) an image makeover program targeting approximately 700 stores for facilities improvement, and (e) a process re-engineering initiative that is intended to enhance organizational effectiveness and company business initiatives.

14.     As part of the Strategic Plan, the Debtors committed to focus on a core base of stores across 36 designated marketing areas in the United States. The Debtors decided to exit 156 stores, exit three distribution centers, sell or close four manufacturing plants, and consolidate two dairy operations. Of these facilities, the Debtors exited 135 stores, three distribution centers, and three manufacturing plants between April 2004 and the Petition Date.

15.     Despite the implementation of the Strategic Plan, during the remainder of 2004, the Debtors continued to experience significant sales declines and market-share losses. The Debtors' financial performance was affected not only by operating losses but also by ongoing obligations relating to a significant number of store locations where the Debtors no longer operate. The Debtors are seeking authority to reject a substantial number of the leases relating to these stores, effective immediately.

16.     In part in anticipation of the 2004 holiday season, the Debtors increased their purchasing activities in October and November. When holiday sales were lower than expected, the Debtors experienced higher-than-anticipated inventory levels and lower-than-anticipated accounts payable, resulting in increased borrowings under the Credit Agreement and reduced liquidity.

17.     On February 10, 2005, the Debtors announced that during their first and second fiscal quarters ending on January 12, 2005, the Debtors incurred losses in the amount of $552.8 million, or $3.93 per share of common stock. The Debtors also announced that for their second fiscal quarter, identical-store sales declined by 4.9% as compared to the second quarter of the prior year.

18.     The Debtors' financial results and decrease in liquidity, coupled with downgrades by Moody's Investor Services and Standard & Poor's Rating Services, as well as negative press

coverage, led a number of the Debtors' trade creditors to demand shorter payment terms. Since

the announcement of the Debtors' financial results on February 10, 2005, the Debtors have

experienced a reduction in vendor and other credit by more than $130 million. As a result, the

Debtors have been forced to conclude, after consultation with their advisors, that their interests

and the interests of their creditors, employees, and customers will be best served by a

reorganization under Chapter 11 of the Bankruptcy Code.

19.    As part of their restructuring under Chapter 11, the Debtors, led by a chief

executive officer hired in December 2004, intend to implement further asset rationalization and

expense reduction plans and to utilize new sales initiatives to improve the Debtors' brand image

and competitive position, with the goal of improving their operations and financial performance

and strengthening their business for the benefit of creditors, customers, employees, and the

communities in which the Debtors operate.

### Relief Requested

20.    By this Application, the Debtors request entry of an order pursuant to Sections

327(a) and 329 of the Bankruptcy Code, approving the retention of Skadden, Arps, Slate,

Meagher & Flom LLP ("Skadden, Arps") as lead restructuring and bankruptcy counsel to the

Debtors during these cases. The Debtors request that Skadden, Arps be retained to perform the

services described in this Application on the terms set forth herein.

### Basis for Relief

**A.    Selection of Skadden, Arps.**

21.    As noted above, the Debtors have suffered from recent financial difficulties. In

recognition that these difficulties might require the filing of petitions for reorganization relief

under Chapter 11 of the Bankruptcy Code, the Debtors retained Skadden, Arps to provide legal

advice and to serve as lead restructuring and bankruptcy counsel in conjunction with the firm of

King & Spalding LLP ("King & Spalding"), the Debtors' proposed bankruptcy co-counsel and

general corporate counsel.   Skadden, Arps began providing restructuring and bankruptcy

services to the Debtors on February 2, 2005 and the Debtors believe that their continued

representation by Skadden, Arps in these cases is critical to the success of the Debtors'

reorganization efforts.

22.    The Debtors selected the firm of Skadden, Arps to serve as lead bankruptcy

counsel in these cases because of the firm's recognized expertise in the field of debtors' and

creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.  The

Debtors further desire to employ the firm of Skadden, Arps because of the resources it has

available to devote to the extensive legal services that will be required in connection with these

cases.

23.    The Debtors have also selected and are, by separate application, seeking to

employ King & Spalding to serve as bankruptcy co-counsel during these cases with respect to

specific matters as described in such application, as well as to continue to render non-bankruptcy

services in the areas of litigation, antitrust matters, environmental matters, general corporate

matters, ERISA and other employee benefits matters, securities law and SEC-related matters,

and finance and finance-related matters and transactions.  Skadden, Arps will advise and consult

with the Debtors through the pendency of these cases as to the division of responsibilities and the

coordination of efforts with King & Spalding to accomplish a speedy, successful, and cost-

effective reorganization, without unnecessary duplication of legal services.  Each of Skadden,

Arps and King & Spalding will have separate areas of responsibility that reflect their respective

roles in the Debtors' cases and that recognize, where appropriate, their historical knowledge of

the Debtors' affairs and their respective proximities to the Debtors, the Court, and significant

parties in interest in these cases.

**B.      Services to be Rendered.**

24.      The employment of Skadden, Arps under a general retainer is necessary to assist

the Debtors in executing faithfully their duties as debtors-in-possession and implementing the

reorganization of the Debtors' financial affairs.  Subject to further order of this Court, and

subject to an appropriate allocation of responsibilities between Skadden, Arps and King &

Spalding, as discussed above and as more particularly detailed in the separate application relating

to King & Spalding, Skadden, Arps will be required to render, among others, the following

services to the Debtors:

(a)      advise the Debtors with respect to their powers and duties as debtors and debtors-in-possession in the continued management and operation of their businesses and properties;

(b)      attend meetings and negotiate with representatives of creditors and other parties in interest and advise and consult on the conduct of these cases, including all of the legal and administrative requirements of operating in Chapter 11;

(c)      take all necessary actions to protect and preserve the Debtors' estates, including the prosecution of actions on their behalf, the defense of any actions commenced against their estates, negotiations concerning all litigation in which the Debtors may be involved and objections to claims filed against the estates;

(d)      prepare on behalf of the Debtors all motions, applications, answers, orders, reports and papers necessary to the administration of the estates;

(e)      negotiate and prepare on the Debtors' behalf plan(s) of reorganization, disclosure statement(s) and all related agreements and/or documents and take any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

(f)      advise the Debtors in connection with any sale of assets;

(g)      appear before this Court, any appellate courts, and the United States Trustee, and protect the interests of the Debtors' estates before such courts and the United States Trustee; and

(h)      perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with these Chapter 11 cases.

25.      Notwithstanding the generality of the foregoing, Skadden, Arps will not duplicate efforts with respect to the separate matters assigned to King & Spalding, which include, as more particularly detailed in the separate application for King & Spalding, customer issues, trust fund and consignment issues, professional compensation and retention issues, utilities issues, non-bankruptcy litigation issues, insurance and workers compensation issues, governmental tax, fee and fine issues, and environmental issues, unless specifically requested to do so by the Debtors because of a conflict on the part of King & Spalding that necessitates that Skadden, Arps act as conflicts counsel or other exigencies as determined by the Debtors.

26.      It is necessary and essential that the Debtors, as debtors-in-possession, employ attorneys under a general retainer to render the foregoing professional services.

27.      Subject to the Court's approval of this Application, Skadden, Arps has indicated a willingness to serve as the Debtors' counsel and to perform the services described above.

**C.      Disinterestedness of Professionals.**

28.      To the best of the Debtors' knowledge, except as set forth herein and in the Declaration of D. J. Baker and Disclosure of Compensation (the "Baker Declaration") attached hereto as Exhibit A, the members, counsel and associates of the firm of Skadden, Arps (a) do not have any connection with any of the Debtors, their affiliates, their creditors or any other party in interest, or their respective attorneys and accountants, the United States Trustee or any person employed thereby, (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and (c) do not hold or represent any interest adverse to the estates.

29.      As set forth in the Baker Declaration:

(a)      Neither Skadden, Arps nor any attorney at the firm holds or represents an interest adverse to the Debtors' estates.

-9-

(b)     Neither Skadden, Arps nor any attorney at the firm is or was a creditor, an equity security holder or an insider of the Debtors, except as disclosed in the Baker Declaration, and Skadden, Arps previously has rendered legal services to the Debtors for which it has been compensated.

(c)     Neither Skadden, Arps nor any attorney at the firm is or was an investment banker for any outstanding security of the Debtors.

(d)     Neither Skadden, Arps nor any attorney at the firm is or was, within three years before the Petition Date, an investment banker for a security of the Debtors, or an attorney for an investment banker in connection with the offer, sale or issuance of any security of the Debtors, except as disclosed in the Baker Declaration.

(e)     Neither Skadden, Arps nor any attorney at the firm is or was, within two years before the Petition Date, a director, officer or employee of the Debtors or of an investment banker of the Debtors, except as disclosed in the Baker Declaration.

(f)     Skadden, Arps does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or an investment banker specified in the foregoing paragraphs, or for any other reason.

30.     Skadden, Arps has informed the Debtors that Adlai S. Hardin III, an associate at the firm, is the son of Judge Adlai Hardin and that, to the best of the firm's knowledge, no other attorney at Skadden, Arps has any connection with (a) any United States District Judge or United States Bankruptcy Judge for the Southern District of New York or (b) the United States Trustee for such district or to any known employee in the office thereof.

**D.     Professional Fees and Expenses.**

31.     The Debtors' retention of Skadden, Arps is evidenced by an engagement agreement dated February 7, 2005 (the "Engagement Agreement"), which provides for the Debtors' representation by Skadden, Arps in connection with the Debtors' efforts to restructure their businesses.  The Engagement Agreement is included as Attachment 1 to the Baker Declaration.

32.     Skadden, Arps' fees for professional services are based upon its standard hourly rates, which are periodically adjusted.  Under the Engagement Agreement, Skadden, Arps and

the Debtors have agreed that Skadden, Arps' bundled rate structure will apply to these cases and, therefore, Skadden, Arps will not be seeking to be separately compensated for certain staff, clerical and resource charges. Presently, the hourly rates under the bundled rate structure range from $540 to $825 for partners, $535 to $640 for counsel, $265 to $495 for associates and $90 to $195 for legal assistants and support staff. The Debtors are advised that the hourly rates set forth above are subject to periodic increases in the normal course of the firm's business, often due to the increased experience of a particular professional.

33.    Consistent with the firm's policy with respect to its other clients, Skadden, Arps will continue to charge the Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees, and other fees related to trials and hearings. Charges and disbursements are invoiced pursuant to Skadden, Arps' Policy Statement Concerning Charges and Disbursements, which is included as an attachment to the Baker Declaration, except that copying costs will be charged at $0.10 per page, computerized research and telephone calls will be billed at provider cost without reference to Skadden, Arps' internal capital costs or overhead, and document production (including secretarial and word processing time), facsimile services, proofreading, overtime meals, and overtime travel allowances will not be charged for separately on an incurrence basis but are included within the bundled rate structure.

34.    Pursuant to the retainer provisions of the Engagement Agreement, the Debtors paid an initial retainer amount of $500,000 (the "Retainer") for professional services rendered or to be rendered and expenses incurred or to be incurred by Skadden, Arps on behalf of the

Debtors, with the understanding that any amount remaining after payment of prepetition fees and expenses would be held by Skadden, Arps as a postpetition retainer and applied to the final bill in these cases.

35.    As of the Petition Date, based upon prepetition fees and expenses that have been identified and accounted for or estimated as of the date hereof, and assuming application of all such fees and expenses against the Retainer, Skadden, Arps had approximately $500,000 remaining in the Retainer. Those remaining retainer funds will be applied by Skadden, Arps to pay prepetition fees and costs that are subsequently identified and accounted for. Any balance existing after all such applications will be treated as a postpetition retainer and applied to the final bill in these cases as allowed by the Court. In the event of a deficiency in the Retainer after application to prepetition fees and expenses, Skadden, Arps has agreed to waive any resulting prepetition claim against the Debtors.

36.    Skadden, Arps intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these Chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the Southern District of New York and the orders of this Court. Skadden, Arps will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors in these cases at the then-current standard rates charged for such services on non-bankruptcy matters as referenced above.

37.    Skadden, Arps has agreed to accept as compensation such sums as may be allowed by the Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of

-12-

the time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues or tasks addressed in these cases.

38.     Other than as set forth above and in the Baker Declaration, no arrangement is proposed between the Debtors and Skadden, Arps for compensation to be paid in these cases.

### Notice

39.     Notice of this Application has been provided to the Office of the United States Trustee, counsel for Wachovia Bank, N.A., as agent for the Debtors' secured lenders, the indenture trustee for the Debtors' noteholders, and the Debtors' fifty (50) largest unsecured creditors.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

### Waiver of Memorandum of Law

40.     Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Application.

WHEREFORE the Debtors respectfully request that this Court:

(a)      enter an order pursuant to Section 327(a) and 329 of the Bankruptcy Code

authorizing the Debtors to employ Skadden, Arps as their lead restructuring and

bankruptcy counsel during these cases; and

(b)      grant the Debtors such other and further relief as is just and proper.

Dated:  February 21, 2005
       New York, New York

                                Respectfully submitted,

                                WINN-DIXIE STORES, INC.
                                and its debtor affiliates

                          By: */s/ Bennett Nussbaum*_____
                                Bennett Nussbaum
                                Senior Vice President and
                                Chief Financial Officer

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **WINN-DIXIE STORES, INC., et al.,** | : | **Case No. 05-11063** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

## DECLARATION OF D. J. BAKER
## AND DISCLOSURE OF COMPENSATION

I, D. J. Baker, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to

the best of my knowledge, information and belief:

1.        I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP

("Skadden, Arps" or the "Firm"), which maintains offices, among others, for the practice of law

at Four Times Square, New York, New York 10036-6522. I submit this declaration and

statement pursuant to 11 U.S.C. §§ 327 and 329 and Fed. R. Bankr. P. 2014 and 2016 in support

of the Application for Authority to Retain Skadden, Arps, Slate, Meagher & Flom LLP as Lead

Restructuring and Bankruptcy Counsel to the Debtors (the "Application"), filed

contemporaneously herewith by Winn-Dixie Stores, Inc. and certain of its subsidiaries, the

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").

Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if

called as a witness, would testify competently thereto.[1]

---

[1]        Certain of the disclosures herein relate to matters within the knowledge of other attorneys
at Skadden, Arps and are based on information provided by them.

## Qualification of Professionals

2.    As of February 2, 2005, I and other attorneys at Skadden, Arps, began performing legal work for the Debtors in connection with their efforts to restructure their financial obligations and businesses.[2] Such legal work included preparations for, and the filing of, the Debtors' Chapter 11 petitions and various motions for necessary "first-day" operational and administrative relief.

3.    Skadden, Arps believes it has assembled a highly-qualified team of attorneys to service the Debtors during their reorganization efforts. I am a member of the Firm's corporate restructuring department. I will coordinate the firm's representation of the Debtors in these cases. I have over thirty years of experience in complex reorganization cases, including lead debtor representations in the Chapter 11 cases of, among others, Circle K, FiberMark, FoxMeyer, GenTek, Global Marine, MCorp, RCN, Safety-Kleen and Sterling Chemicals Holdings. Additionally, I have been identified as a leading restructuring attorney in each of "Chambers Global: The World's Leading Lawyers 2004-2005," Euromoney Publication's "Best of the Best 2004," and Legal Media Group's "2004 Guide to the World's Leading Insolvency and Restructuring Lawyers" and have been repeatedly listed in "The Best Lawyers in America" and named by "Turnarounds & Workouts" as one of the outstanding reorganization lawyers in America.

4.    Due to its work during the prepetition period, Skadden, Arps has become familiar with the Debtors' capital structure, financing documents and other material agreements.

---

[2]    Skadden, Arps has, in the past, provided legal services to Winn-Dixie Stores, Inc., one of the Debtors in these cases, in connection with certain matters.

Additionally, Skadden, Arps is familiar with the Debtors' business affairs and many of the potential legal issues that may arise in the context of the Debtors' Chapter 11 cases. I believe that Skadden, Arps is well positioned to provide the Debtors with the type of legal services they will require as debtors-in-possession.

### Services to be Rendered

5.     In addition to Skadden, Arps, the Debtors have also selected and are, by separate application, seeking to employ the firm of King & Spalding LLP ("King & Spalding") as their bankruptcy co-counsel during these cases with respect to specific matters as described in such application, as well as to continue to render non-bankruptcy services in the areas of litigation, antitrust matters, environmental matters, general corporate matters, ERISA and other employee benefits matters, securities law and SEC-related matters, and finance and finance-related matters and transactions. Skadden, Arps will advise and consult with the Debtors through the pendency of these cases as to the division of responsibilities and the coordination of efforts with King & Spalding to accomplish a speedy, successful, and cost-effective reorganization, without unnecessary duplication of legal services. Each of Skadden, Arps and King & Spalding will have separate areas of responsibility that reflect their respective roles in the Debtors' cases and that recognize, where appropriate, their historical knowledge of the Debtors' affairs and their respective proximities to the Debtors, the Court, and significant parties in interest in these cases.

6.     Subject to an allocation of responsibilities with King & Spalding, the Debtors' proposed bankruptcy co-counsel and general corporate counsel, as discussed above and as more particularly detailed in the separate application relating to King & Spalding, the Debtors have requested that Skadden, Arps render the following services in connection with these cases:

(a)  advise the Debtors with respect to their powers and duties as debtors and debtors-in-possession in the continued management and operation of their businesses and properties;

(b)  attend meetings and negotiate with representatives of creditors and other parties in interest and advise and consult on the conduct of these cases, including all of the legal and administrative requirements of operating in Chapter 11;

(c)  take all necessary actions to protect and preserve the Debtors' estates, including the prosecution of actions on their behalf, the defense of any actions commenced against their estates, negotiations concerning all litigation in which the Debtors may be involved and objections to claims filed against the estates;

(d)  prepare on behalf of the Debtors all motions, applications, answers, orders, reports and papers necessary to the administration of the estates;

(e)  negotiate and prepare on the Debtors' behalf plan(s) of reorganization, disclosure statement(s) and all related agreements and/or documents and take any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

(f)  advise the Debtors in connection with any sale of assets;

(g)  appear before this Court, any appellate courts, and the United States Trustee, and protect the interests of the Debtors' estates before such courts and the United States Trustee; and

(h)  perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with these Chapter 11 cases.

7.    Notwithstanding the generality of the foregoing, Skadden, Arps will not duplicate efforts with respect to the separate matters assigned to King & Spalding, which include, as more particularly detailed in the separate application for King & Spalding, customer issues, trust fund and consignment issues, professional compensation and retention issues, utilities issues, non-bankruptcy litigation issues, insurance and workers compensation issues, governmental tax, fee and fine issues, and environmental issues, unless specifically requested to do by the Debtors because of a conflict on the part of King & Spalding that necessitates that Skadden, Arps act as conflicts counsel or other exigencies as determined by the Debtors.

-4-

8.    Subject to this Court's approval of the Application, Skadden, Arps is willing to serve as the Debtors' counsel and to perform the services described above.

### Disinterestedness of Professionals

9.    To the best of my knowledge, and except as otherwise set forth herein, the members, counsel and associates of Skadden, Arps (a) do not have any connection with the Debtors, their affiliates, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee, (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and (c) do not hold or represent any interest adverse to the estates.

10.    Skadden, Arps has represented, currently represents and in the future likely will represent certain creditors of the Debtors and other parties in interest in matters unrelated to the Debtors, their reorganization cases or such parties' claims against or interests in the Debtors. Prior to the commencement of these cases, Skadden, Arps conducted a "conflict check" with respect to the following categories of entities or individuals (the "Identified Parties"), as identified by the Debtors or as ascertained from a review of available documents:[3]

    (a)    the Debtors;

    (b)    the Debtors' non-filing affiliates;

    (c)    the Debtors' directors and officers;

    (d)    professionals representing the Debtors;

    (e)    the Debtors' secured creditors;

    (f)    the indenture trustee, underwriter, and known holders of the Debtors' senior notes;

---

[3]    The identification and classification herein of various entities or individuals as falling within certain categories (e.g., "secured creditor," etc.) is not intended and should not be deemed to be an admission of the legal rights or status of any particular individual or entity.

-5-

(g)    the transfer agents for the Debtors and the Debtors' non-filing affiliates;

(h)    the Debtors' top 50 unsecured trade creditors identified as of February 17, 2005;

(i)    the Debtors' known shareholders;

(j)    the Debtors' lessors;

(k)    the Debtors' insurance providers;

(l)    banks at which the Debtors maintain accounts;

(m)    certain parties to litigation involving the Debtors;

(n)    parties that have filed UCC financing statements against the Debtors;

(o)    the Debtors' competitors;

(p)    the Debtors' closed store subtenants;

(q)    the Debtors' software providers;

(r)    certain parties to miscellaneous contracts and/or real and personal property leases with the Debtors;

(s)    certain identified entities possessing other relationships to the Debtors; and

(t)    the United States Trustee, the United States District Court Judges and the United States Bankruptcy Judges for this District.

11.    Skadden, Arps' "conflict check" with respect to the Identified Parties has revealed that it currently represents, or has represented, the following entities or individuals, or entities or individuals that are affiliates of the following entities or individuals, in matters unrelated to the Debtors, their reorganization cases or such entities' claims against or interests in the Debtors:

(a)    <u>Debtors' Professionals</u>: The Blackstone Group, L.P. and KPMG LLP.

(b)    <u>Debtors' Secured Creditors</u>: Amsouth Bank, a lender under the Debtors' prepetition credit agreement; Bank One a lender under the Debtors' prepetition credit agreement; the CIT Group/Business Credit, Inc., a co-documentation agent under the Debtors' prepetition credit agreement; Congress Financial Corporation (Florida), the collateral monitoring agent under the Debtors' prepetition credit agreement; Fleet Retail Group, a

lender under the Debtors' prepetition credit agreement; General Electric Capital Corporation, a co-documentation agent under the Debtors' prepetition credit agreement; GMAC Commercial Finance LLC, the syndication agent under the Debtors' prepetition credit agreement; Lutheran Brotherhood, the holder of a mortgage lien on that property located at 7840 W. Irlo Bronson Highway, Kissimmee, Florida; Merrill Lynch Capital, a lender under the Debtors' prepetition credit agreement; PNC Business Credit, a lender under the Debtors' prepetition credit agreement; Suntrust Bank, a lender under the Debtors' prepetition credit agreement; UBS AG, Stamford Branch, a lender under the Debtors' prepetition credit agreement; Wachovia Bank, National Association, the administrative agent, issuer, and swing line lender under the Debtors' prepetition credit agreement; Wachovia Capital Markets, LLC, the arranger under the Debtors' prepetition credit agreement; and Wells Fargo Foothill, LLC, a co-documentation agent under the Debtors' prepetition credit agreement.

(c)    Known Holders of Debtors' Senior Notes: American Funds; American Memorial Life Insurance Co.; Assurant Inc.; Capital Research and Management Company; Columbia Management Advisors; Credit Suisse Asset Management Ltd.; Credit Suisse FS High Yield Bond; Credit Suisse High Yield Bond Fund; First Fortis Life Insurance Company; Fortis Benefits Insurance Company; Fortis Group; Fortis Insurance Company; IMS Capital Management; IMS Strategic Income Fund; Liberty Funds Distributor, Inc.; Prudential Investments Fund Management LLC; Securities Management and Research, Inc.; and The Vanguard Group.

(d)    Debtors' Transfer Agents: Corporation Service Company

(e)    Debtors' Known Shareholders: Brandes Investment Partners, Inc.; Brandes Investment Partners, L.P.; and Brandes Worldwide Holdings, L.P.

(f)    Debtors' Top 50 Unsecured Trade Creditors Identified as of February 17, 2005: Alberto Culver USA; Bayer Corp.; Campbell Soup Co.; Clorox Sales Co.; Coca-Cola Bottling Co.; Coca-Cola Bottling Works; Del Monte Foods USA; Florida Coca-Cola Bottling; Florida Power & Light Co.; Frito Lay Inc.; General Electric Company; General Mills Inc.; Georgia-Pacific Corporation; Gerber Products Company; Gillette Company; Gulf Coast Coca-Cola Bottling Company; Keebler Company; Kellogg Sales Company; Kimberly Clark; Kraft General Foods Inc.; Kraft Pizza Company; Louisiana Coca-Cola; Nabisco Brands Inc.; Pepperidge Farm Inc.; Pepsico, Inc.; Quaker Oats Company; Ross Laboratories; Sara Lee Foods; Schering-Plough Health Care; Smith Kline Beecham; Unilever Best Foods; Unilever HPC USA; Warner Lambert Consumer Group; and Wyeth Consumer Healthcare.

(g) Debtors' Lessors: 51st Street & 8th Ave. Corporation; AG Edwards; Aegon USA Realty Advisors Inc.; Bank of New York; Conseco Mortgage Capital Inc.; First Union National Bank; First Union Wholesale Lockbox; General Electric Business Asset; General Electric Capital Business; Indianapolis Life Insurance Co.; JDN Realty Corporation; Kmart Corporation; L.J. Melody & Company; Life Insurance Co. of Georgia; Mellon Trust of California; Metro International Property; Midland Loan Services; Midwest Centers; Orix Capital Markets LLC; Orix Real Estate Capital Markets; PNC Bank Philadelphia; Principal Capital Management LP; Principal Life Insurance Co.; Royal & Son; Southtrust Bank; Swiss Re Investors Inc.; Teachers Retirement System; UrbanAmerica L.P.[4]; U.S. Bank Trust NA; Wachovia Securities; Westland Shopping Center LP; Windsor Place; and Windward Partners IV LP.

(h) Debtors' Insurance Providers: ACE American Insurance Co.; ACE Bermuda Insurance, Ltd.; ACE (Illinois Union); ACE USA; AIG Aviation, Inc.; American Guarantee Liability Insurance Company (Zurich); Axis Surplus Insurance Co.; Chubb & Son; Commonwealth Insurance Company; Employer's Insurance of Wausau; Federal Insurance Co.; Great American Assurance; Gulf Insurance Company Inc.; The Hartford; Illinois Union Insurance Co.; Lexington Insurance Co.; Liberty Mutual Insurance Company; Liberty Mutual Insurance Europe Ltd.; Marsh Inc.; Marsh USA Inc.; National Union Fire Insurance Co.; RLI Corp.; SR International Business Insurance Co. Ltd.; St. Paul (Bermuda) Ltd.; St. Paul Fire & Marine Insurance Company; St. Paul Mercury; Travelers Indemnity Co. of Illinois; XL Insurance America, Inc.; and Zurich American Insurance Co.

(i) Banks at which Debtors Maintain Accounts: Bank of Granite; Centura Bank; Citizens Bank; Compass Bank; Fifth Third Bank; Hibernia Bank; The Provident Bank; Union Planters Bank; and U.S. Bank.

(j) Parties Filing UCC Financing Statements: American Bank Note Company; Bank of America, N.A.; Cargill, Incorporated; Cisco Systems Capital Corporation; Cryovac, Inc.; Fleet Business Credit, LLC; Fleet Capital Leasing - Technology Finance; Fleet Leasing Corporation; IBM Credit Corporation; IBM Credit LLC; National City Bank of Michigan/Illinois; Storagetek Financial Services Corporation; U.S. Bancorp; and Wells Fargo Bank, N.A.

---

[4]    Joseph H. Flom, a member of Skadden, Arps, is a trustee and investor in UrbanAmerica L.P., a lessor with respect to two of the Debtors' stores. Mr. Flom will not partake in any discussion, access any documents or files, work on any matters related to, or otherwise be involved with the Debtors or these cases.

(k)    Debtors' Competitors: Ahold USA; Albertson's, Inc.; Bruno's Supermarkets, Inc. a/k/a Food World; Great A&P; SuperValu Inc.; and Wal-Mart Stores, Inc.

(l)    Debtors' Closed Store Subtenants: McDonald's Corporation; Nielsen Media Research; Office Depot Inc.; Payless Shoes; Rhodes, Inc.; and TCIM Services, Inc.

(m)    Software Providers: Aprisma Management Technologies; BEA Systems, Inc.; Deloitte & Touche; EMC Corporation; GEAC Enterprise Solutions; Getronics; Hummingbird Ltd.; IBM Corp.; Macro4 Inc.; Manigistics; Mercury Interactive Corporation; Microstrategy; NDC Health; Network Associates; Network General; Oracle Corporation; OutlookSoft Corporation; and Sterling Commerce, Inc.

(n)    Miscellaneous Contract/Lease Parties: Aetna, Inc.; Aetna Life Insurance Company; American Express Travel Related Services Company, Inc.; Canadian Imperial Bank of Commerce[5]; Discover Financial Services, Inc.; First Union Capital Markets; Integrated Payment Systems, Inc.; T. Rowe Price Retirement Services, Inc.; Telecheck Services, Inc.; Unum Life Insurance Company of America; Western Union Financial Services, Inc.; and Western Union North America.

(o)    Certain Other Identified Parties: New York Stock Exchange

12.    If Skadden, Arps should come into possession of information that would suggest the existence of a potential claim that the Debtors have or might have against one or more of Skadden, Arps' clients identified above, Skadden, Arps will advise the Debtors of such information and, to the extent necessary or appropriate, either seek a waiver from such Skadden, Arps' client or have the Debtors retain special counsel to investigate and pursue any such claim.

13.    In addition, and based upon inquiries made in the preparation of this Declaration, one or more partners, counsel, or associates of Skadden, Arps was formerly an employee of the Debtors.

---

[5]    Canadian Imperial Bank of Commerce ("CIBC"), a Skadden, Arps client, was party to a now terminated agreement whereby CIBC banking kiosks were placed in certain of the Debtors' stores. Skadden, Arps has not provided since the termination of such agreement, and will not

14.    Skadden, Arps has instituted and is carrying on further inquiries of its partners, counsel and associates with respect to the matters contained herein, including the circulation of a special "disinterestedness" questionnaire to each of the approximately 1,700 attorneys in the Firm's domestic and international offices.  Skadden, Arps will file supplemental declarations regarding its retention if any additional relevant information comes to its attention.

15.    I am not related to, and, except as set forth below, to the best of my knowledge, none of the members, counsel, and associates of Skadden, Arps are related to the United States Trustee for this District, any key person employed in the Office of such United States Trustee, any United States District Court Judge for this District or any United States Bankruptcy Court Judge for this District, except that Adlai S. Hardin III, an associate at the Firm, is the son of Judge Adlai S. Hardin.  Skadden, Arps will continue to review its records with respect to such persons, and shall promptly notify the Court by a supplemental affidavit if any such connection is discovered.

16.    Skadden, Arps is one of the largest law firms in the world and has a diverse client base.  For the one-year preceding the Petition Date, no single client of the firm represented more than 3.9036% of Skadden, Arps' total value of time billed to client matters for that period.  Of the entities referenced herein, only 3, or affiliates of only 3, accounted for 1% or more of Skadden, Arps' total value of time billed during that same period: (i) Credit Suisse First Boston LLC; (ii) Deloitte & Touche USA LLP and (iii) Marsh and McLennan Inc.

17.    To the best of my knowledge, neither Skadden, Arps nor any attorney at the firm holds or represents an interest adverse to the Debtors' estates.

---

provide in the future, legal services to CIBC in connection with any matter involving the Debtors.

18.     To the best of my knowledge, Skadden, Arps neither is nor was a creditor, an equity security holder or an insider of the Debtors, except that Skadden, Arps previously rendered legal services to the Debtors for which it was compensated.  One or more partners, counsel, or associates of Skadden, Arps may own or in the past have owned publicly issued equity or debt securities issued by the Debtors.

19.     To the best of my knowledge, neither Skadden, Arps nor any attorney at the firm represented an investment banker in connection with any outstanding security of the Debtors within three years before the Petition Date.

20.     To the best of my knowledge, neither Skadden, Arps nor any attorney at the firm is or was an investment banker for any security of the Debtors in connection with the offer, sale or issuance of any security of the Debtors.

21.     To the best of my knowledge, neither Skadden, Arps nor any attorney at the firm is or was a director, officer or employee of the Debtors or of an investment banker of the Debtors.

22.     To the best of my knowledge, Skadden, Arps does not have an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or an investment banker specified in the foregoing paragraphs, or for any other reason.

23.     In view of the foregoing, Skadden, Arps is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

### Professional Compensation

24.     Pursuant to an engagement letter dated February 7, 2005 (the "Engagement Letter"), a copy of which is attached hereto as Attachment 1, the Debtors retained Skadden, Arps

-11-

to, among other things, advise them in connection with the exploration of a potential financial restructuring and, in conjunction with King & Spalding, to represent them as debtors in possession if Chapter 11 cases were commenced. As provided by the terms of the Engagement Letter, and as described below, Skadden, Arps was entitled to be paid for services rendered and expenses incurred.

25.     Skadden, Arps and the Debtors have agreed that Skadden, Arps' bundled rate structure will apply to these cases and, therefore, Skadden, Arps will not be seeking to be separately compensated for certain staff, clerical and resource charges. For professional services, Skadden, Arps' fees are based on its standard hourly rates, which are periodically adjusted. Presently, the hourly rates under the bundled rate structure range from $540 to $825 for partners, $535 to $640 for counsel, $265 to $495 for associates and $90 to $195 for legal assistants and support staff. The Debtors are advised that the hourly rates set forth above are subject to periodic increases in the normal course of the firm's business, often due to the increased experience of a particular professional.

26.     Consistent with the firm's policy with respect to its other clients, Skadden, Arps will continue to charge the Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings. Charges and disbursements are invoiced pursuant to Skadden, Arps' Policy Statement Concerning Charges and Disbursements, which is included with Attachment 1, except that copying costs will be charged at $0.10 per page, computerized research and telephone calls will be billed at provider cost without reference to Skadden, Arps' internal capital costs or

overhead, and document production (including secretarial and word processing time), facsimile services, proofreading, overtime meals and overtime travel allowances will not be charged for separately on an incurrence basis but are included within the bundled rate structure.

27.    Pursuant to the retainer provisions of the Engagement Agreement, the Debtors paid an initial retainer amount of $500,000 (the "Retainer"), for professional services rendered or to be rendered and expenses incurred or to be incurred by Skadden, Arps on behalf of the Debtors, with the understanding that any amount remaining after payment of prepetition fees and expenses would be held by Skadden, Arps as a postpetition retainer and applied to the final bill in these cases.

28.    As of the Petition Date, based upon prepetition fees and expenses that have been identified and accounted for or estimated as of the date hereof, and assuming application of all such fees and expenses against the Retainer, Skadden, Arps had approximately $500,000 remaining in the Retainer. Those remaining funds will be applied by Skadden, Arps to pay prepetition fees and costs that are subsequently identified and accounted for. Any balance existing after all such applications will be treated as a postpetition retainer, and applied to the final bill in these cases as allowed by the Court. In the event of a deficiency in the Retainer after application to prepetition fees and expenses, Skadden, Arps has agreed to waive any resulting prepetition claim against the Debtors.

29.    Within the one-year period preceding the Petition Date, the total aggregate amount of fees earned and expenses incurred by Skadden, Arps on behalf of the Debtors, as identified and accounted for or estimated as of the date hereof, was approximately $563,757.66. Of that amount, $562,839.25 is attributable to prepetition fees and $918.41 is attributable to prepetition expenses. During the same period, the Debtors paid Skadden, Arps an aggregate

-13-

amount of $1,063,757.66, including payment of the Retainer.  The balance of $500,000 is the

amount of the remaining, unapplied Retainer funds referred to above. The Debtors understand

that not all of Skadden, Arps prepetition fees and expenses were identified and accounted for as

of the Petition Date or as of the date hereof.  As such amounts are posted, the amount of

prepetition fees and expenses will increase and the amount of the remaining Retainer funds will

decrease.

     30.     With respect to the payments described in the preceding paragraph, set forth

below is a summary of (a) invoices sent by Skadden, Arps to the Debtors both for retainers and

for services and expenses and (b) payments made by the Debtors to Skadden, Arps in response to

such invoices:

| | | | |
|---|---|---|---|
| (a) | 2/07/05 | Retainer Request | $500,000.00 |
| | 2/17/05 | Invoice (billed to 2/17/05) | $266,839.25 |
| | 2/17/05 | Invoice (estimated to 2/21/05) | $296,000.00 |
| (b) | 2/09/05 | Retainer Payment | $500,000.00 |
| | 2/18/05 | Invoice Payment | $563,757.66 |

     31.     Skadden, Arps intends to apply to the Court for allowance of compensation for

professional services rendered and reimbursement of charges and disbursements incurred in

these Chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court

for the Southern District of New York and the orders of this Court.  Skadden, Arps will seek

compensation for the services of each attorney and paraprofessional acting on behalf of the

Debtors in these cases at the then current rate charged for such services on non bankruptcy

matters.

     32.     Skadden, Arps has agreed to accept as compensation such sums as may be

allowed by the Court on the basis of the professional time spent, the rates charged for such

services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in these cases.

33.    Other than as set forth above, no arrangement is proposed between the Debtors and Skadden, Arps for compensation to be paid in these cases.

34.    Except for such sharing arrangements among Skadden, Arps, its affiliated law practice entities and their respective members, Skadden, Arps has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 21, 2005.

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

/s/  D. J. Baker
D. J. Baker

Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

-15-

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors.[1] | ) Jointly Administered |

### FIRST SUPPLEMENTAL DECLARATION OF D. J. BAKER

I, D. J. Baker, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information and belief:

1.      I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps" or the "Firm"), which maintains offices, among others, for the practice of law at Four Times Square, New York, New York 10036-6522.

2.      I submit this declaration and statement to supplement the disclosures set forth in my declaration dated February 21, 2005 (the "Initial Declaration"), in support of Skadden, Arps' retention as lead restructuring and bankruptcy counsel to Winn-Dixie Stores, Inc. ("Winn-Dixie") and certain of its subsidiaries, the debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors"). Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[2]

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

[2]      Certain of the disclosures herein relate to matters within the knowledge of other attorneys at Skadden, Arps and are based upon information provided by them.

3.      In connection with its retention as counsel for the Debtors, Skadden, Arps reviewed its records and, on February 21, 2005, filed the Initial Declaration disclosing identified connections with parties in interest in these cases.  In accordance with the representations made in the Initial Declaration, Skadden, Arps has continued to conduct further periodic checks with respect to known and newly-identified persons and parties in interest in these cases.

4.      As a result of such process, Skadden, Arps discloses that, in addition to the entities or individuals previously disclosed in the Initial Declaration, Skadden, Arps (a) currently represents or has represented and/or (b) has the indicated connections with, the following entities or individuals, or entities or individuals that are affiliates of the following entities or individuals, in matters unrelated (except as noted) to the Debtors, their reorganization cases or such entities' claims against or interests in the Debtors:

(a)      Debtors' Professionals: The Blackstone Group.[3]

(b)      Debtors' Top 50 Unsecured Trade Creditors: ConAgra Foods, Inc.; Hershey Chocolate USA.

(c)      Debtors' Lessors: Amberjack, Ltd.; Developers Diversified Realty; KB Properties Inc.; Robert D. Powers.[4]

(d)      Miscellaneous Contract/Lease Parties: ADT; AT&T; Kekst and Company; Panasonic Communications & Systems Company; Pitney Bowes; Safety-Kleen Corp.;[5] Xerox Capital Services, LLC.

---

[3]      As disclosed in the Initial Declaration, Skadden, Arps has represented The Blackstone Group and/or affiliates of The Blackstone Group in matters unrelated to the Debtors or these cases.  In addition to such representation, I have learned that Joseph H. Flom, a member of Skadden, Arps, is an investor in Blackstone Capital Partners III, an affiliate of The Blackstone Group.  As indicated in the Initial Declaration, Joseph Flom will not partake in any discussion, access any documents or files, work on any matters related to, or otherwise be involved with the Debtors or these cases.

[4]      One Robert D. Powers is an outside director of Alabama Power Company which is, or may be, a subsidiary of Southern Company, a Skadden, Arps client.

[5]      Skadden, Arps represented Safety-Kleen Corp. (together with its affiliates, "Safety-Kleen"), a service provider to the Debtors, in matters relating to Safety-Kleen's chapter 11 reorganization including, inter alia, a

(e)    Debtors' Utilities: Alabama Power Company; American Electric Power; BellSouth Corporation; Carolina Power & Light Company; Dominion North Carolina Power; Dominion Virginia Power; Duke Energy Corporation; Entergy Corporation; Entergy Gulf States, Inc.; Entergy Louisiana, Inc.; Entergy Mississippi, Inc.; Entergy New Orleans, Inc.; JEA; Progress Energy Carolinas; Progress Energy Florida; South Carolina Electric & Gas Company; Tampa Electric Company[6]; Virginia Electric and Power Company.

(f)    Litigation Parties: The Delaco Company (formerly, Thompson Medical Company Inc.).[7]

(f)    Members of the Creditors Committee: Amalgamated Gadget, LP and R[2] Investments, LDC; Deutsche Bank Trust Company Americas.

---

dispute between Safety-Kleen and Winn-Dixie. The parties settled their dispute by entering into a Mutual General Release and Agreement dated December 9, 2002 and the settlement was approved by order of the United States Bankruptcy Court for the District of Delaware dated April 3, 2003. See In re Safety-Kleen Corp., Case No. 00-2303 (PJW), Order Under 11 U.S.C. §§ 105 and 502 and Fed R. Bankr. P. 9019 (i) Authorizing Entry Into Mutual General Release and Agreement With Winn-Dixie Stores, Inc. and (ii) Deeming Proof of Claim Withdrawn (Bankr. D. Del. Apr. 3, 2003). Skadden, Arps has not provided since entry of the order approving the settlement, and will not provide in the future, legal services to Safety-Kleen in connection with Winn-Dixie or any of the other Debtors in these cases.

[6]    TECO Energy, Inc. ("Teco Energy"), an affiliate of Tampa Electric Company ("Tampa Electric") (TECO Energy and its affiliates – including Tampa Electric – collectively, "TECO"), is a Skadden, Arps client. Among the Skadden, Arps attorneys who have provided legal services to TECO Energy is Stephanie R. Feld, a counsel who is assisting with the representation of the Debtors in these cases. Because of Skadden, Arps' involvement with the Debtors' utility issues, Skadden, Arps obtained a waiver from TECO Energy allowing the Firm to represent the Debtors in matters in which the Debtors and TECO are adverse provided that: (a) Skadden, Arps adhere to its professional obligation to refrain from using confidential information learned as a result of its representation of TECO Energy to benefit the Debtors and (b) no Skadden, Arps attorney who is working on a matter for which the Firm is representing TECO Energy works on any matter for which Skadden, Arps is representing the Debtors vis-à-vis TECO. Accordingly, no Skadden, Arps attorney who is working on a matter for which the Firm is representing TECO Energy – including Ms. Feld – will work on any matter for which the Firm is representing the Debtors vis-à-vis TECO.

[7]    Skadden, Arps represents The Delaco Company (formerly, Thompson Medical Company Inc.) ("Delaco") in its chapter 11 reorganization and in a personal injury action against Delaco brought by Joan A. Stemen and James Stemen in the Circuit Court, Escambia County, Florida in which Winn-Dixie is named as a co-defendant. See Stemen v. The Delaco Co., 03-CA-420 (Fla. Cir. Ct. Feb. 21, 2003) (the "Stemen Action"). Neither Winn-Dixie nor any of its affiliates has filed a proof of claim against Delaco and, to the best of my knowledge, information, and belief, Delaco and the Debtors are not adverse to one another as a result of the Stemen Action except to the extent that the Debtors may hold an indemnification claim against Delaco for what are expected to be minor litigation costs. Skadden, Arps will not represent Delaco or the Debtors with respect to any claim asserted by Delaco against any of the Debtors in these cases (should any such claim be filed) and will not represent the Debtors or Delaco with respect to any claim asserted by the Debtors against Delaco.

3

(g)  <u>Creditors Committee Professionals</u>: Alvarez & Marsal, LLC; Houlihan
Lokey Howard & Zukin Capital.

(h)  <u>Certain Other Identified Parties</u>: BAL Global Finance, LLC; Bear Stearns
Investment Products, Inc.; BellSouth Business Systems, Inc.; BellSouth
Communications Systems, Inc.; BellSouth Long Distance, Inc.; BellSouth
Telecommunications, Inc.; Bottling Group LLC; Cardinal Health, Inc.;
Chevron Phillips Chemical Company, L.P.; Coca-Cola Company; Coca-
Cola Enterprises, Inc.; Criimi Mae Services Limited Partnership; Dell Inc.;
Dial Corporation; Federal Express Corporation; Hamilton Beach/Proctor-
Silex, Inc.; H.J. Heinz Company, L.P.; Interstate Bakeries Corp.[8]; Krispy
Kreme Doughnuts Corporation; Liberty Mutual Insurance Company;
Metro-Goldwyn-Mayer Home Entertainment LLC; Michael Foods, Inc.;
Pepsi Bottling Group; PepsiAmericas, Inc.; Public Service of North
Carolina; Quadrangle Group LLC; Qwest Communications Corporation;
Riviana Foods, Inc.; Scana Energy Marketing, Inc.; Simon Property
Group; South Carolina Electric & Gas Company; Specialty Brands, L.P.;
Tyson Foods Inc.

Skadden, Arps will not represent any of the parties identified herein in any matter involving the

Debtors.

5.      Skadden, Arps is one of the largest law firms in the world and has a

diverse client base.  Of the parties identified in paragraph 4, only Deutsche Bank Trust Company

Americas or affiliates of Deutsche Bank Trust Company Americas, accounted for 1% or more

(but less than 2%) of Skadden, Arps' total value of time billed during the last year.

6.      If Skadden, Arps should come into possession of information that would

suggest the existence of a potential claim that the Debtors have or might have against one or

more of the parties identified above, Skadden, Arps will advise the Debtors of such information

---

[8]      Interstate Bakeries Corp. is a vendor of the Debtors and has filed a reclamation claim (the "Interstate
Reclamation Claim") against the Debtors' in these cases.  Skadden, Arps represents Interstate Bakeries Corp. and
certain of its subsidiaries and affiliates (collectively, "Interstate Bakeries") in chapter 11 cases (the "Interstate
Chapter 11") that are currently pending before the United States Bankruptcy Court for the Western District of
Missouri.  However, Skadden, Arps does not represent Interstate Bakeries with respect to the Interstate Reclamation
Claim and no Skadden, Arps attorney who has performed substantial work with respect to the Interstate Chapter 11
will partake in any discussion, access any documents or files, work on any matters related to, or otherwise be
involved with the Debtors or these cases.

and, to the extent necessary or appropriate, either seek a waiver from such party or rely on other counsel retained by the Debtors to investigate and pursue any such claim.

7.    In the Initial Declaration, Skadden, Arps disclosed that Wachovia Bank, National Association ("Wachovia Bank") and certain affiliates are or have been clients of the firm. Upon request of the United States Trustee, Skadden, Arps reviewed its engagement letters with the Wachovia clients to determine the extent of any waiver. Such letters indicated that the Wachovia clients had agreed that Skadden, Arps could represent other clients that were adverse to them, including by bringing litigation against the Wachovia clients. Skadden, Arps confirmed with Wachovia Bank, through the law firm representing Wachovia Bank in the Debtors' cases, that Wachovia Bank agreed that Skadden, Arps on behalf of the Debtors could be adverse to Wachovia Bank, including by bringing litigation, in these cases. As of the date hereof, Skadden, Arps knows of no claim the Debtors have against Wachovia Bank that would necessitate any proceedings by the Debtors against Wachovia Bank.

8.    Since the filing of the Initial Declaration, the venue of these cases was transferred to this Court. I am not related to, and, to the best of my knowledge, none of the members, counsel, and associates of Skadden, Arps are related to the Office of the United States Trustee that has been assigned to these cases, any key person employed in the Office of such United States Trustee, any United States District Court Judge for the Jacksonville Division of this District or any United States Bankruptcy Court Judge for the Jacksonville Division of this District. Skadden, Arps will continue to review its records with respect to such persons, and shall promptly notify the Court by a supplemental declaration if any such connection is discovered.

9.    Since the filing of the Initial Declaration, the Debtors' have filed their statements of financial affairs and their schedules of assets, liabilities and contracts. As evidenced by those filings, the Debtors have historically operated all of their companies as a consolidated enterprise. As a result, there are several intercompany claims between and among the Debtors and their non-Debtor affiliates (the "Intercompany Claims"). The schedules reflect that the Intercompany Claims existing as of the filing date including the inter-Debtor unsecured claims listed in the following table:

| Debtor Against Whom Claim Is Held | Debtor Holding Claim | Claim Amount |
|---|---|---|
| Winn-Dixie Stores, Inc. | Crackin' Good Inc. | $7,950,267.17 |
| Winn-Dixie Stores, Inc. | Dixie Darling Bakers, Inc. | $54,914.69 |
| Winn-Dixie Stores, Inc. | Dixie Packers, Inc. | $910,048.55 |
| Winn-Dixie Stores, Inc. | Dixie Home Stores, Inc. | $50.00 |
| Winn-Dixie Stores, Inc. | Economy Wholesale Distributors, Inc. | $314,333.92 |
| Winn-Dixie Stores, Inc. | Kwik Chek Supermarkets, Inc. | $1,000.00 |
| Winn-Dixie Stores, Inc. | Sunbelt Products, Inc. | $1,000.00 |
| Winn-Dixie Stores, Inc. | Superior Food Company | $500.00 |
| Winn-Dixie Stores, Inc. | Table Supply Food Stores Co., Inc. | $500.00 |
| Winn-Dixie Stores, Inc. | Winn-Dixie Raleigh, Inc. | $97,638,705.42 |
| Astor Products, Inc. | Winn-Dixie Stores, Inc. | $1,824,005.85 |
| Deep South Products, Inc. | Winn-Dixie Stores, Inc. | $5,138,307.33 |
| Dixie Spirits, Inc. | Winn-Dixie Stores, Inc. | $118,387.19 |
| Winn-Dixie Logistics, Inc. | Winn-Dixie Stores, Inc. | $168,986,682.18 |
| Winn-Dixie Montgomery, Inc. | Winn-Dixie Stores, Inc. | $88,925,278.61 |
| Winn-Dixie Procurement, Inc. | Winn-Dixie Stores, Inc. | $20,298,144.46 |
| Winn-Dixie Supermarkets, Inc. | Winn-Dixie Stores, Inc. | $19,559,530.85 |

Nevertheless, the Debtors have advised Skadden, Arps that the Debtors' relationships to one another and to their non-debtor affiliates do not pose any conflict of interest because of the general unity of interest among the Debtors. Insofar as I have been able to ascertain, I believe the Debtors to be correct, and I know of no conflict of interest that would preclude joint representation of the Debtors in these cases.

10.    In addition to the above referenced inter-Debtor claims, the Intercompany Claims include an unsecured claim in the amount of $2,923,927.20 held by Win General

6

Insurance, a non-debtor affiliate of the Debtors, against Winn-Dixie Montgomery, Inc. Skadden, Arps does not represent Win General Insurance with respect to its claim. Moreover, as of the filing date, the Intercompany Claims included a trade receivable in the amount of $2,001,433.36 held by Winn-Dixie Procurement, Inc. against Bahamas Supermarkets Limited, a non-debtor affiliate of the Debtors. The amount fluctuates as Bahamas Supermarkets Limited purchases and pays for goods in the ordinary course. Skadden, Arps does not represent Bahamas Supermarkets Limited with respect to amounts owed to Winn-Dixie Procurement, Inc.

11.    Skadden, Arps is a large law firm employing approximately 1,700 attorneys. Given the size of the Firm, whenever Skadden, Arps represents a debtor in a large chapter 11 reorganization it is inevitable that at least some Skadden, Arps attorneys will have various kinds of relationships (including being related by blood or marriage) with individuals who are employed by entities that are or may become parties-in-interest in the reorganization. As part of its professional practice, the Firm takes measures to identify such relationships and to, the extent that such relationships give rise to potential conflicts, to ensure that no attorney works on a matter on which he or she possesses a potential conflict. Such measures include the circulation of a retention screening questionnaire to all attorneys and the establishment of screening procedures.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on May 18, 2005

D. J. Baker

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

8

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | ) *Chapter 11* |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

## SECOND SUPPLEMENTAL DECLARATION OF D. J. BAKER

I, D. J. Baker, pursuant to 28 U.S.C. § 1746, hereby declare that the following is

true to the best of my knowledge, information and belief:

1.    I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP

("Skadden, Arps" or the "Firm"), which maintains offices, among others, for the practice of law

at Four Times Square, New York, New York 10036-6522.

2.    I submit this declaration to supplement the disclosures set forth in my

declaration dated February 21, 2005 (the "Initial Declaration"), and my first supplemental

declaration dated May 18, 2005 (the "First Supplemental Declaration") (the Initial Declaration

and the First Supplemental Declaration collectively, the "Prior Declarations"), each in support of

Skadden, Arps' retention as lead restructuring and bankruptcy counsel to Winn-Dixie Stores, Inc.

("Winn-Dixie") and certain of its subsidiaries, the debtors and debtors-in-possession in the above

captioned cases (collectively, the "Debtors"). Except as otherwise indicated, I have personal

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[2]

3.    In connection with its retention as counsel for the Debtors, Skadden, Arps reviewed its records and filed the Prior Declarations disclosing identified connections with parties in interest in these cases. In accordance with the representations made in the Prior Declarations, Skadden, Arps has continued to conduct further periodic checks with respect to known and newly-identified persons and parties in interest in these cases, including parties that have submitted bids (the "Bidding Parties") in connection with the Debtors' contemplated sale of certain assets (the "Sale Process").

4.    As a result of such process, Skadden, Arps discloses that, in addition to the entities or individuals previously disclosed in the Prior Declarations, Skadden, Arps (a) currently represents or has represented and/or (b) has the indicated connections with, the following entities or individuals, or entities or individuals that are affiliates of the following entities or individuals, in matters unrelated to the Debtors, their reorganization cases or such entities' claims against or interests in the Debtors:

(a)    <u>Debtors' Professionals</u>: Gordon Brothers Retail Partners, LLC.[3]

(b)    <u>Miscellaneous Contract/Lease Parties</u>: Hallmark Marketing Corporation.

---

[2]    Certain of the disclosures herein relate to matters within the knowledge of other attorneys at Skadden, Arps and are based upon information provided by them.

[3]    Gordon Brothers Group is a Skadden, Arps client. Skadden, Arps advised Gordon Brothers Group with respect to a bid on assets in which DJM Asset Management, LLC was also involved on behalf of Gordon Brothers Group. The assets in question bore no relation to the Debtors or these cases. In connection with this bid, which was ultimately not accepted, the legal advice provided by Skadden, Arps to Gordon Brothers Group may have extended to DJM Asset Management, LLC, but DJM Asset Management, LLC is not separately identified as a client in Skadden, Arps' client data base.

(c)　Bidding Parties:[4] BI-LO, LLC; Eckerd Corporation; Rite Aid Corporation; SuperValu Inc.; Target Corporation; and Wal-Mart Stores, Inc.

(d)　Certain Other Identified Parties: Citicorp Vendor Finance, Inc.; CSX Transportation; Dean Foods Company; Gulf Power Company; Hobart Corporation; LaSalle Bank National Association; MeadWestvaco Corporation; Orion Investment and Management Ltd. Corp.; and Pfizer Inc.

Skadden, Arps will not represent any of the parties identified herein in any matter involving the Debtors.

5.　In addition to the Bidding Parties listed above, whose identity as Bidding Parties has been made public by the Debtors, Skadden, Arps may represent other Bidding Parties, or affiliates of such Bidding Parties, whose identities remain confidential as part of the Debtors' ongoing Sale Process (the "Confidential Bidding Clients").[5] Skadden, Arps will not represent any Confidential Bidding Client in any matter involving the Debtors. To the extent that it is appropriate to do so in the future, Skadden, Arps will file a supplemental declaration identifying the Confidential Bidding Clients.

6.　Skadden, Arps is one of the largest law firms in the world and has a diverse client base. Of the entities listed herein, none accounted for 1% or more of Skadden, Arps' total value of time billed during the last year. When coupled with their respective affiliates, one of the entities listed herein accounted for slightly more than 3% of Skadden, Arps' total value of time billed during the last year, while the other listed entities remained below 1%.

---

[4]　Skadden, Arps has previously disclosed relationships with certain of the following Bidding Parties in the Prior Declarations. However, such disclosures occurred prior to the commencement of the Sale Process and, accordingly, the disclosed entities were not identified as Bidding Parties.

[5]　Although Skadden, Arps has provided certain legal services to the Debtors in connection with the Sale Process when asked to do so, the law firms of King & Spalding LLP and Smith Hulsey & Busey have taken the lead in advising the Debtors with respect to the Sale Process.

7.      If Skadden, Arps should come into possession of information that would suggest the existence of a potential claim that the Debtors have or might have against one or more of the parties identified or referred to above, Skadden, Arps will advise the Debtors of such information and, to the extent necessary or appropriate, either seek a waiver from such party or rely on other counsel retained by the Debtors to investigate and pursue any such claim.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on August 2, 2005.

_____
D. J. Baker

SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

4

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

## THIRD SUPPLEMENTAL DECLARATION OF D. J. BAKER

I, D. J. Baker, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information and belief:

1.     I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps" or the "Firm"), which maintains offices, among others, for the practice of law at Four Times Square, New York, New York 10036-6522.

2.     I submit this declaration to supplement the disclosures set forth in my declaration dated February 21, 2005 (the "Initial Declaration"), my first supplemental declaration dated May 18, 2005 (the "First Supplemental Declaration"), and my second supplemental declaration dated August 2, 2005 (the "Second Supplemental Declaration") (the Initial Declaration, First Supplemental Declaration, and Second Supplemental Declaration collectively, the "Prior Declarations"), each in support of Skadden, Arps' retention as lead restructuring and bankruptcy counsel to Winn-Dixie Stores, Inc. ("Winn-Dixie") and certain of its subsidiaries, the debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors").

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[2]

      3.     In connection with its retention as counsel for the Debtors, Skadden, Arps reviewed its records and filed the Prior Declarations disclosing identified connections with parties in interest in these cases.  In accordance with the representations made in the Prior Declarations, Skadden, Arps has continued to conduct further periodic checks with respect to known and newly-identified persons and parties in interest in these cases, including parties that have been appointed by the Office of the United States Trustee to serve on the official committee of equity security holders (the "Equity Committee") established in these cases and the Equity Committee's proposed professionals.

      4.     As a result of such process, Skadden, Arps discloses that, in addition to the entities or individuals previously disclosed in the Prior Declarations, Skadden, Arps currently represents, or has represented, the following entities or individuals, or entities or individuals that are affiliates of the following entities or individuals, in matters unrelated to the Debtors, their reorganization cases or such entities' claims against or interests in the Debtors:

    (a)    <u>Miscellaneous Contract/Lease Parties</u>: Dolphin Capital Corp. and GlobalNetXchange, LLC

    (b)    <u>Equity Committee Members</u>: Brandes Investment Partners, L.P.[3]

    (c)    <u>Proposed Equity Committee Professionals</u>: Jefferies & Company, Inc. and Paul, Hastings, Janofsky & Walker LLP.

---

[2]     Certain of the disclosures herein relate to matters within the knowledge of other attorneys at Skadden, Arps and are based upon information provided by them.

[3]     Skadden, Arps has previously disclosed its relationship with Brandes Investment Partners, L.P. in the Initial Declaration.  However, such disclosure occurred prior to the appointment of the Equity Committee and, accordingly, Brandes Investment Partners, L.P. was not identified as a member of the Equity Committee.

      (d)    <u>Certain Other Identified Parties</u>: Ascential Software Corporation; eCAST Settlement Corporation; Lea & Perrins, Inc.; Novartis Consumer Health, Inc.; Southern Family Markets, LLC; S. Stephen Selig, III; and The Dannon Company.

Skadden, Arps will not represent any of the parties identified herein in any matter involving the Debtors.

      5.    Skadden, Arps is one of the largest law firms in the world and has a diverse client base. Of the parties identified in paragraph 4, none accounted for 1% or more of Skadden, Arps' total value of time billed during the last year.

      6.    If Skadden, Arps should come into possession of information that would suggest the existence of a potential claim that the Debtors have or might have against one or more of the parties identified or referred to above, Skadden, Arps will advise the Debtors of such information and, to the extent necessary or appropriate, either seek a waiver from such party or rely on other counsel retained by the Debtors to investigate and pursue any such claim.

      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on October 10, 2005.

                                     D. J. Baker

                                     SKADDEN, ARPS, SLATE,
                                       MEAGHER & FLOM LLP
                                     Four Times Square
                                     New York, New York 10036
                                     (212) 735-3000
                                     (212) 735-2000 (facsimile)

3

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

## FOURTH SUPPLEMENTAL DECLARATION OF D. J. BAKER

I, D. J. Baker, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information and belief:

1.      I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps" or the "Firm"), which maintains offices, among others, for the practice of law at Four Times Square, New York, New York 10036-6522.

2.      I submit this declaration to supplement the disclosures set forth in my declaration dated February 21, 2005 (the "Initial Declaration"), my first supplemental declaration dated May 18, 2005 (the "First Supplemental Declaration"), my second supplemental declaration dated August 2, 2005 (the "Second Supplemental Declaration"), and my third supplemental declaration dated October 10, 2005 ( the "Third Supplemental Declaration") (the Initial Declaration, First Supplemental Declaration, Second Supplemental Declaration, and Third Supplemental Declaration collectively, the "Prior Declarations"), each in support of Skadden, Arps' retention as lead restructuring and bankruptcy counsel to Winn-Dixie Stores, Inc. and

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

certain of its subsidiaries, the debtors and debtors-in-possession in the above captioned cases

(collectively, the "Debtors").  Except as otherwise indicated, I have personal knowledge of the

matters set forth herein and, if called as a witness, would testify competently thereto.[2]

        3.      In connection with its retention as counsel for the Debtors, Skadden, Arps

reviewed its records and filed the Prior Declarations disclosing identified connections with parties

in interest in these cases.  In accordance with the representations made in the Prior Declarations,

Skadden, Arps has continued to conduct further periodic checks with respect to known and

newly-identified persons and parties in interest in these cases.

        4.      As a result of such process, Skadden, Arps discloses that, in addition to the

entities or individuals previously disclosed in the Prior Declarations, Skadden, Arps currently

represents, or has represented, the following entities or individuals, or entities or individuals that

are affiliates of the following entities or individuals, in matters <u>unrelated</u> to the Debtors, their

reorganization cases or such entities' claims against or interests in the Debtors: Mead Westvaco

Package System; PricewaterhouseCoopers LLP; Wilmington Trust Company;[3] and Wipro

Limited.  Skadden, Arps will not represent any of the parties identified herein in any matter

involving the Debtors.

        5.      Skadden, Arps is one of the largest law firms in the world and has a diverse

client base.  None of the parties identified in paragraph 4 accounted for 1% or more of Skadden,

Arps' total value of time billed during the last year.

---

[2]      Certain of the disclosures herein relate to matters within the knowledge of other attorneys at Skadden, Arps and are based upon information provided by them.

[3]      Wilmington Trust Company, a member of the official committee of unsecured creditors appointed to serve in these cases, recently retained Skadden, Arps to provide certain legal services.  The services to be provided to Wilmington Trust Company are unrelated to the Debtors or these cases.  The Skadden, Arps client file for Wilmington Trust Company was opened on February 7, 2006.

6.     If Skadden, Arps should come into possession of information that would suggest the existence of a potential claim that the Debtors have or might have against one or more of the parties identified or referred to above, Skadden, Arps will advise the Debtors of such information and, to the extent necessary or appropriate, either seek a waiver from such party or rely on other counsel retained by the Debtors to investigate and pursue any such claim.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on February 23, 2006.

D. J. Baker

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

3

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

## FIFTH SUPPLEMENTAL DECLARATION OF D. J. BAKER

I, D. J. Baker, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information and belief:

1.     I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps" or the "Firm"), which maintains offices, among others, for the practice of law at Four Times Square, New York, New York 10036-6522.

2.     I submit this declaration to supplement the disclosures set forth in my declaration dated February 21, 2005, my first supplemental declaration dated May 18, 2005, my second supplemental declaration dated August 2, 2005, my third supplemental declaration dated October 10, 2005, and my fourth supplemental declaration dated February 23, 2006 (collectively, the "Prior Declarations"), each in support of Skadden, Arps' retention as lead restructuring and bankruptcy counsel to Winn-Dixie Stores, Inc. and certain of its subsidiaries, the debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors"). Except as

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[2]

3.    In connection with its retention as counsel for the Debtors, Skadden, Arps reviewed its records and filed the Prior Declarations disclosing identified connections with parties in interest in these cases.  In accordance with the representations made in the Prior Declarations, Skadden, Arps has continued to conduct further periodic checks with respect to known and newly-identified persons and parties in interest in these cases.

4.    As a result of such process, Skadden, Arps discloses that, in addition to the entities or individuals previously disclosed in the Prior Declarations, Skadden, Arps currently represents, or has represented, the following entities or individuals, or entities or individuals that are affiliates of the following entities or individuals, in matters unrelated to the Debtors, their reorganization cases or such entities' claims against or interests in the Debtors:  Conopco, Inc., FTI Consulting Inc., Ghirardelli Chocolate, Mantek, Six Flags, Inc., Seyfarth Shaw LLP, SPCP Group, LLC, and Sunrise Properties, LLC.  Skadden, Arps will not represent any of the parties identified herein in any matter involving the Debtors.

5.    Skadden, Arps is one of the largest law firms in the world and has a diverse client base.  None of the parties identified in paragraph 4 or their respective affiliates accounted for 1% or more of Skadden, Arps' total value of time billed during the last year.

6.    If Skadden, Arps should come into possession of information that would suggest the existence of a potential claim that the Debtors have or might have against one or more of the parties identified or referred to above, Skadden, Arps will advise the Debtors of such

---

[2]    Certain of the disclosures herein relate to matters within the knowledge of other attorneys at Skadden, Arps and are based upon information provided by them.

information and, to the extent necessary or appropriate, either seek a waiver from such party or

rely on other counsel retained by the Debtors to investigate and pursue any such claim.

I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge, information, and belief.

Executed on June 5, 2006.

D. J. Baker

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)