11/17/93

# DEED OF LEASE

THIS DEED OF LEASE (hereinafter called "Lease"), made this _27_ day of _DEC._, 19_93_,

between ___IRONBOUND MARKETPLACE PARTNERS, a Virginia limited liability company___

_____ ("Landlord")

and ___WINN-DIXIE RALEIGH, INC., a Florida corporation duly qualified to___

___transact business in the Commonwealth of Virginia,___ ("Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

WITNESSETH:

**PREMISES**

That the Landlord, in consideration of the rents herein reserved and the covenants of the Tenant, does hereby lease and demise unto Tenant, for the term hereinafter specified, the following described land and improvements thereon:

That certain store building, approximately __222__ feet in width by __231__ feet in depth, (containing approximately 51,282 square feet) together with a front vestibule, rear receiving room, and the land on which the same shall stand (hereinafter collectively called "demised premises"), which store building and related improvements are to be constructed by the Landlord according to plans and specifications to be approved by the parties as herein provided, and shall be in the location and the dimensions as outlined in red on the Plot Plan __entitled "Winn-Dixie Shopping Center", prepared by Langley and McDonald, P.C., last revised 11/16/93__ attached hereto marked Exhibit "A" and by reference made a part hereof.

The demised premises are located in a shopping center development (shown in detail on

TERM  FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens said premises for the transaction of its business as herein provided, for an initial term of <u>twenty</u> (20) years from said commencement date. Landlord and Tenant agree to execute a supplemental agreement fixing the commencement date when the same shall have been determined as herein provided.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

RENTAL  1.(a) The Tenant agrees to pay to the Landlord as rental for the demised premises during the term of this lease, and any extensions thereof, the sum of <u>Three Hundred Seventy-Six Thousand Nine Hundred Twenty-Three and NO/100</u> Dollars (<u>$376,923.00</u>) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of <u>Thirty-One Thousand Four Hundred Ten and 25/100</u> Dollars (<u>$31,410.25</u>) per month, which installments shall be due and payable in advance without demand on the first day of each and every calendar month of the lease term, and any extensions thereof. Rent for fractional years and fractional months at the beginning and end of the term shall be pro-rated on the basis of the annual rate. The first monthly payment of rent shall be due on the first day of the next succeeding calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month.

In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year of Tenant ending approximately June 30 during the term of this Lease and any extensions thereof in excess of the sum of Thirty-Seven Million Six Hundred Ninety-Two Thousand Three Hundred and NO/100 Dollars ($37,692,300.00).

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of the percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculation the percentage rental due hereunder, the Tenant's fiscal year shall be approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

DEFINITION OF "GROSS SALES"  1b. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold in or from the demised premises, both for cash and on credit. Such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines, banks and public telephones; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, lottery entries, money orders, government bonds or savings stamps or similar items; (7)

RECORD OF SALES

1c. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within one hundred eighty (180) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord. In the event such an audit uncovers an understatement by Tenant of its gross sales made by Tenant from the demised premises during the preceding fiscal year in excess of three percent (3%), then, in such event, Tenant shall pay the cost of such audit. Otherwise, Landlord shall bear the cost thereof.

USE

2. The demised premises may be used for the conduct of any mercantile, retail business (including discount businesses), or any other business as may be agreed by Landlord and Tenant.

CONSTRUCTION OF IMPROVEMENTS

3. The Landlord, at its sole cost and expense, shall diligently proceed to construct a store building, parking area, sidewalks, service area and other improvements for use and occupancy by Tenant in conformity with the plans and specifications to be approved by both Landlord and Tenant. Said plans and specifications will be initialed by the parties hereto and when initialled shall constitute a part of this lease. Said plans and specifications shall provide for a complete store building, commonly referred to as a "lock and key job".

The Landlord, at its sole cost and expense, shall grade and pave the parking areas, together with the sidewalks, driveways and service area, and shall provide proper and adequate water drainage and lighting system and operations therefor. These areas are henceforth called "common areas".

CONSTRUCTION PERIOD

4. The final plans and specifications for construction of Tenant's store building and other improvements provided for herein shall be approved by both parties on or before March 31, 1994 and in the event the parties shall not approve the final plans and specifications to be evidenced by their initials thereon within said period, this lease shall be and become null and void and of no further force and effect unless the parties hereto shall mutually agree in writing to extend the period for approval of said plans and specifications.

The Landlord covenants and agrees that the construction of the store building, parking area and other improvements (including the driveways described in Article 35 hereof) shall begin within thirty (30) days after the approval of the plans and specifications by the parties hereto and approval by the James City County Authorities and shall be completed and tendered to the tenant ready for occupancy within eleven (11) months from such date; that failing therein, the Tenant may, at its option, cancel and terminate this lease by delivering to the Landlord a writing evidencing its election to so terminate and the Tenant shall thereupon be relieved of and from all liability hereunder; provided, however, that if the Landlord's failure

UTILITIES  6.  Tenant agrees to pay all charges for telephone, gas, electricity, storm water fees, water and all other utilities used by Tenant on the premises, and the Landlord agrees to provide access to such utilities at all times during the term of this lease.

TENANT'S REPAIRS  7.  Upon completion of said construction by Landlord and acceptance of the premises by Tenant, Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs hereinafter made the responsibility of the Landlord or made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear.

Within the maintenance and repair responsibilities of Tenant shall be included: floor surfacing, interior exposed plumbing and wiring, automatic sliding doors, air conditioning and heating systems and equipment within the interior and exterior of the demised premises, and windows and plate glass (except such damage as is caused by faulty construction or settling of the building or such as is covered by Landlord's fire and extended coverage insurance, all of which shall be Landlord's responsibility). Landlord agrees to accord to Tenant the benefit of any and all warranties extended by the manufacturers or installers of such items of equipment for which Tenant has maintenance and repair responsibility.

LANDLORD'S REPAIRS  8.  The Landlord shall at its cost and expense, keep and maintain the parking area, sidewalks and service areas in good condition and repair, and shall maintain the exterior of the building, including roof, gutter, downspouts, exterior painting, masonry walls, the automatic sprinkler system (including central or alarm system therefor, if required by governmental authority), foundation and structural members, and the interior concealed and exterior plumbing (including septic tank, if any), interior concealed and exterior electrical wiring of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises. If any portion of the demised premises which is the responsibility of the Landlord hereunder shall at any time be in need of repairs, Landlord will proceed to repair same immediately upon receipt of written notice by Tenant to do so, except that the Landlord shall not be obligated to make or pay for any repairs to the demised premises rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, employees, agents, invitees, or customers, except in the case of damage by fire or the elements, or other casualty covered by Landlord's fire and extended coverage insurance.

If in order to protect the Tenant's property in the demised premises it shall be necessary to make emergency repairs to any portion of the demised premises which is the responsibility of the Landlord to repair, or if the Landlord after receipt of notice in writing as above provided fails or neglects to make with all due diligence other repairs which are the responsibility of the Landlord, within fifteen (15) days of said notification by Tenant, the Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred by it in making such repairs. Landlord further covenants that the demised premises will be so constructed and maintained at all times so as to structurally to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the exterior of the premises which may become necessary in order that the

Tenant may construct and build or install on and in said premises any and all signs, racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which signs, racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

In connection with such work performed by Tenant, Tenant shall indemnify Landlord and save it harmless from and against: all mechanics, materialmen's, subcontractors and similar liens; all claims and suits for damage to persons or property from defects in material or from the use of unskilled laborers; or from any negligence caused by Tenant, Tenant's contractors, subcontractors or by any of their employees, agents or servants during the progress of the work in any such construction or from any faulty construction thereof.

INDEMNIFICA-　　10.　　Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by
TION　　　　　　reason of an accident or damage to any person or property happening in the demised premises. Likewise, Landlord shall indemnify and save harmless the Tenant from any claim or loss (including costs of investigation, court costs and reasonable attorney's fees) by reason of an accident or damage to any person or property happening on or about all common areas (as defined in Article 3 hereof) of the shopping center, and Landlord further agrees to carry, at its expense, comprehensive general liability insurance coverage with Tenant named as an additional insured on all common areas (as defined in Article 3 hereof) of the shopping center, in a company qualified to transact business in the state where the premises are located, stipulating limits of liability of not less than $2,000,000.00. Certificate of such coverage from the insurer providing 30 days' notice to Tenant prior to cancellation or termination shall be furnished to Tenant.

FIRE　　　　　　11.　　In the event that the demised premises shall be totally destroyed or damaged to the extent of 75% of more of the value thereof by fire or other casualty, then either party may elect within thirty (30) days after such damage to terminate this lease by giving to the other a written notice of termination, and thereupon both parties shall stand released of and from all further liability under this lease. If the demised premises shall thereby suffer damage to any extent less than 75% of the value thereof, or if neither party has elected to terminate as aforesaid, then the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored.

If damage to Tenant's building in excess of fifty percent (50%) of the value thereof shall occur during the last ten (10) years of the initial term or of any extension thereof, the obligation of Landlord to restore the demised premises shall not arise unless Tenant shall give notice to Landlord within thirty (30) days after such damage of its desire to extend the term of this Lease for an additional period so as to expire ten (10) years from the date of completion by Landlord of restoration of such damage, and on the same conditions and for the same rentals. Upon such notice, Landlord agrees with all due diligence to repair and restore Tenant's building and the Lease shall continue and the remaining option periods, in any, shall be construed to follow upon the end of such extended term. Failing such notice to extend, Landlord at its option shall have the right to terminate this Lease or to restore the premises and the Lease shall continue for the remainder of the then unexpired term.

Landlord agrees to carry fire and extended coverage insurance on the demised premises in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives and and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or

demised store premises the same shall be fairly apportioned to determine Tenant's share thereof. Such apportionment shall be made in the ratio which the square footage of the ground floor of Tenant's store building bears to the total square footage of the ground floor of all buildings from time to time existing in the shopping center. The amount of premiums for which Tenant is to reimburse Landlord shall be less any available abatements, discounts or refunds thereon. Landlord shall at all times use its earnest and best efforts to obtain such fire and extended coverage insurance at the most reasonable rates available. Tenant shall be entitled to receive from the Landlord copies of the statements for such insurance premiums. Notwithstanding the above, it is agreed that Tenant's obligations to make the payments herein described is expressly conditioned upon receipt from Landlord of the written invoice for such insurance premiums no later than six (6) months after the due date thereof. Further, Tenant shall not be required to make the payments herein described unless and until Tenant is furnished with photocopies of the applicable insurance policy to include the declaration page.

SIGNS

12. The parties agree that Landlord will have erected a pylon sign in a location within the property described on Exhibit "A" at a site to be mutually agreed upon by Landlord and Tenant. Of the signage space approved by the appropriate James City County authorities, fifty percent (50%) thereof shall be allocated to Tenant's sign and fifty percent (50%) to Landlord's sign. Landlord and Tenant shall bear equally the cost of construction of such pylon sign but each shall bear the expense of its own sign panel mounted on the pylon sign. When Landlord completes construction of the pylon sign, it shall deliver a paid statement for such construction, whereupon, Tenant will forthwith reimburse Landlord fifty percent (50%) of the cost of such construction.

QUIET
ENJOYMENT

13. The Landlord covenants, warrants and represents that upon commencement of the lease term, the demised premises will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

The Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a mercantile business including parking in conjunction therewith, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting the Tenant from conducting a mercantile business, including parking in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

TAXES AND
LIENS

14. All taxes, assessments, and charges on land or improvements and obligations secured by mortgage or other lien upon the premises shall be promptly paid by Landlord when due. The Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at six per cent (6%) per annum.

available abatements, discounts or refunds thereon, whether or not taken by Landlord. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any increase in taxes is chargeable to Tenant and an "as built" survey of the shopping center, and such additional rental shall be payable by Tenant on demand after payment by Landlord. All taxes, other than ad valorem real estate taxes, including special assessments, improvement liens and the like shall remain the sole responsibility of the Landlord. However, Tenant shall remain responsible for sales taxes on rentals levied by law on lessees.

Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of the Landlord as the Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to the Landlord.

Notwithstanding the above, it is agreed that Tenant's obligation to make the payments herein described is expressly conditioned upon receipt from Landlord of a written statement for such ad valorem real estate tax increase contributions (as well as the other documents described herein if requested by Tenant) no later than December 31 of the calendar year following the year in which the taxes were due.

**CONDEMNATION**     15. If any part of the store building located on the demised premises to be taken for any public quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, or in the event that any portion in excess of __ten__ percent (10%) of the overall parking constructed for Tenant's use on the demised premises be so taken, or in the event that any portion of the demised premises (including parking area) be so taken so as to interfere materially or substantially with the conduct of Tenant's business in the demised premises, then in any such event, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease as above provided, or in the event of any taking which does not permit a termination by the Tenant, the Landlord shall promptly restore the premises to a condition comparable to the condition at the time of taking, and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable as shall be just and equitable under all circumstances. The right of Tenant to any condemnation proceeds shall extend only to such portion of the award as may be attributable by the court to Tenant's trade fixtures, equipment, the unamortized portion of Tenant's leasehold improvements and moving expenses, and Tenant shall not thereby be entitled to any portion of the award attributable to the land and buildings or to the value of the unexpired portion of Tenant's lease term.

**DEFAULT**     16. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of fifteen (15) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated, from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making

**CONSTRUCTION RISKS**

18. It is understood and agreed that nothing herein contained shall constitute the Landlord as the agent in any sense of the Tenant in constructing said improvements, and that the Tenant shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of the premises for the causes herein stated. The tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their sub-contractors, employees, agents or servants by reason of Landlord's constructing said improvements pursuant to the terms of this lease. Landlord shall indemnify and save Tenant harmless from and against all claims and suits for damages to persons or property from defects in material or from the use of unskilled labor or from any negligence caused by Landlord, Landlord's contractors or by any of their employees, agents or servants during the progress of the work in constructing said improvements, or from any faulty construction thereof.

**EXCLUSIVE SUPERMARKET**

19. As long as Tenant operates a supermarket in its demised premises, the Landlord agrees that, if it owns or controls any property located within One Thousand (1,000) feet of the demised premises, it will not, without the written permission of the Tenant, directly or indirectly, lease or rent such property to any person, firm or corporation to be used for or occupied by any business dealing in or which shall keep in stock or sell any staple or fancy groceries, meats, fish, fruits, vegetables, dairy products, bakery goods, or frozen foods; nor will the Landlord permit any tenant of any such property to sublet in any manner, directly or indirectly, any such property to any person, firm or corporation to be used for or occupied by any business dealing in or which shall keep in stock or sell any of the above listed items.

**NUISANCES**

20. The Tenant agrees that the leased demised premises or any portion thereof shall not be used for any illegal or unlawful purpose, and that the Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon. Tenant shall keep the interior and rear service area of its demised store building premises clean and free from all rubbish and dirt.

**EXTENSIONS**

21. It is further agreed that Tenant, at its option, shall be entitled to the privilege of __Five__ (_5_) successive extensions of this lease, each extension to be for a period of __Five__ (_5_) years and at the same rentals and upon the same terms and conditions as required herein for the initial term.

Such option privilege may be exercised by Tenant giving to the Landlord a notice in writing at least __Six (6) Months__ before the expiration of the initial term, and if extended, at least __Six (6) Months__ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

**NOTICES**

22. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail or delivery service with receipt to, and all rent payments shall be made to Landlord at __207 Business Park Drive, Suite 101__
__Virginia Beach, Virginia 23462__
with a copy to: __Commercial Associates, 11844 Rocklanding Drive, Suite B__
__Newport News, Virginia 23606__
or such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail or delivery service with receipt.

All notices required to be given to Tenant shall be sent by registered or certified mail to Tenant at _____
__P. O. Box 25511__
__Raleigh, North Carolina 27603__

or such other address from time to time by written notice forwarded to

substantial conformity with the plans and specifications approved by the parties, or as to whether either party has ground hereunder entitling it to terminate this lease, it is mutually agreed that such differences, if they cannot be satisfactorily adjusted between the parties hereto within thirty (30) days shall be submitted to a single arbitrator, if the parties hereto agree upon one; otherwise, to a board of three arbitrators, of whom one shall be selected by each party within ten (10) days after such 30-day period, and a third person shall be selected by these two; and the decision and award of such single arbitrator if only one is used, or any two of such board, if three are used, as the case may be, shall be final and binding upon the said parties and their successors and assigns respectively, and shall have the same force and effect as though such decision had been handed down by a court of final jurisdiction. Each of the parties hereto covenants to abide by any such arbitration decision.

**ASSIGNMENT AND SUBLEASING**

25. The Tenant may without the consent of the Landlord assign this lease, or sublease or vacate the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease.

In the event Tenant shall vacate the entire demised premises or cease selling merchandise therein for in excess of a period of six (6) months, while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant), Landlord shall have the continuing option thereafter for a period of sixty (60) days (unless Tenant shall have reoccupied the premises) to terminate and cancel this lease upon fifteen (15) days' written notice to Tenant of its election so to do, unless within such fifteen (15) day period Tenant shall advise Landlord that Tenant had, prior to receipt of such notice, in good faith committed to assign this lease or sublease the demised premises to a third party for occupancy within two (2) months, and such assignment or sublease agreement or letter of intent is fully executed and presented to Landlord within the fifteen (15) day period.

In connection with any subletting involving Tenant's subdividing its demised store building premises, Tenant agrees that Landlord shall have the right to approve any and all structural and mechanical system alterations, such approval not to be unreasonably withheld.

**SUBORDINATE**

26. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

**BENEFIT**

27. This lease and all of the covenants and provisions thereof shall inure to the benefit and be binding upon the heirs, legal representatives, successors and assigns of the parties.

HAZARDOUS
SUBSTANCES

31. Tenant shall indemnify and hold Landlord harmless from any and all claims, actions, judgments, criminal penalties and rulings of regulatory agencies in anywise resulting out of Tenant's having stored, used or sold hazardous substances (as the same are defined by federal and state statutes and regulation of governmental agencies having jurisdiction over the same) in the demised premises.

Similarly, Landlord shall indemnify and hold Tenant harmless from any and all claims, actions, judgments, criminal penalties and rulings of regulatory agencies in anywise resulting out of the fact that the shopping center and/or the demised premises were erected on ground that was or is polluted with hazardous substances as the same are defined by federal and state statutes and regulation of governmental agencies having jurisdiction over the same.

ADDITIONAL
BUILDINGS

32. It is understood that Landlord, with the consent of Tenant hereby evidenced, may agree to purchase property adjacent to the northerly boundary of the tract of land described on Exhibit "A" hereto and to construct additional buildings thereon in the location and of the dimensions shown on Exhibit "B" attached hereto and by this reference made a part hereof. In connection with such proposed construction, Landlord would agree that all such buildings will be of like structure and architectural quality as the building for Tenant. During any such construction work, Landlord agrees that Tenant shall have uninterrupted use and enjoyment of the demised premises and the entranceways, parking areas, service drives and sidewalks without unreasonable interference therewith by reason of such construction work.

EXPANSION
OPTION

33. It is understood that Landlord has an option to purchase the area labeled "grocery store expansion area 11,500 s.f." on Exhibit "A". This option is available to Landlord seven (7) years from the commencement date of this Lease and at five (5) year intervals thereafter. Tenant is hereby granted the option and privilege at any time during the term of this lease, or any extensions thereof, of enlarging its store building by incorporating therein the area to the (northeasterly) side thereof, such addition not to exceed 60 feet in width by an irregular depth. This option may be exercised only at the expiration of seven (7) years from the commencement date of this Lease and at five (5) year intervals thereafter. Should Tenant decide to exercise this expansion option, it shall give Landlord six (6) months prior written notice of its intent to exercise the option and upon Tenant's giving such written notice to Landlord of its exercise thereof, Landlord agrees to construct such addition, or prepare such enlargement area for occupancy by Tenant, in accordance with plans and specifications to be approved by the parties hereto, with the construction to be completed with all due diligence following the vacation of the necessary area by any other tenant, and the enlarged portion of the building to be of a like quality of construction as the original building for Tenant. Upon completion of such building addition, or tender of such additional space to Tenant, if there shall not at such date remain at least ten (10) years of the then term of this lease, such term shall be extended for such period of time as shall be necessary to provide a full ten (10) years from the expansion date. Thereafter, during such extended term, the annual minimum guaranteed rental (and the base for computation of percentage rental hereunder) shall be increased by the greater of: an amount equal to 12% of the cost of such building addition, cost of land (including any improvements thereon), and any necessary site work

extended Lease term (if necessary).

Nothing herein contained shall constitute any express or implied obligation on the part of the holder of a first mortgage encumbering the fee simple title to the demised premises or of any purchaser at a sale under foreclosure of such mortgage, to comply with the terms and provisions of this Article, it being the understanding of the parties that the obligation to cause such expansion is the sole obligation of the Landlord, its heirs, legal representatives, successors and assigns, but this paragraph shall not limit Tenant's right to construct the expansion at its own cost as provided herein.

In the event Landlord shall for any reason fail or refuse to construct the building addition contemplated hereunder after Tenant has properly exercised its option herein, the Tenant, at its option, shall have the right at its own expense to construct the building addition of the size and quality set forth above. If Tenant constructs the enlargement, Tenant agrees to cause any mechanics' liens incurred by and in connection with such expansion to be promptly discharged and agrees to indemnify and hold harmless the Landlord from any expense occasioned thereby. Upon completion of such building addition and occupancy thereof by Tenant, if there shall not at such date remain at least ten (10) years of the then term of this lease, the lease term shall be extended for such period of time as shall be necessary to provide a full ten (10) years from such date. Upon completion of the building addition and occupancy thereof by Tenant, during the remaining lease term and any extensions thereof, there shall be no additional minimum guaranteed annual rental payable by Tenant in respect of such addition, except for a sum equal to the rent being paid by any tenant occupying the area in which Tenant will build its addition."

COMMON AREAS    34.    Landlord agrees to operate and maintain all the common areas as defined below and provide therefore all such services as are reasonably required, including without limitation, safe-guarding, cleaning and sweeping at least three (3) times weekly, lighting, snow and ice removal if necessary, general repair and maintenance of all paved surfaces, repainting of parking area striping, and watering and maintenance of landscaped areas. If the Landlord, after fifteen (15) days following receipt of written notice from Tenant to do so, shall fail to make the repairs or perform the services described in this Article, the Tenant shall have the right to make such repairs or cause such services to be performed in its behalf and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred therein.

For such service, Tenant shall pay to Landlord at the end of each quarter year, as additional rental hereunder and as reimbursement for the annual cost thereof, the amount of Tenant's pro-rata share thereof, computed in the proportion which the square footage of Tenant's store building bears to the total square footage of all buildings (including additional floor levels) existing in the shopping center from time to time. Such amount shall be payable on a non-cumulative basis at the end of each quarter of each year for the expenses of the quarter year and within fifteen (15) days following the furnishing by Landlord to Tenant of a detailed statement of such costs, and Tenant shall have the right to audit at its own expense any such costs and expenses within six (6) months following submission of such statement.

**DRIVEWAY EASEMENTS**

35. It is a condition precedent to this Lease that Landlord obtain a grant of easement in the form attached hereto entitled "Deed of Easement" as Exhibit "C" and by this reference made a part hereof, and that Landlord pave with top quality paving materials the two (2) driveways labeled "road construction Phase 1" and "truck driveway easement" in the locations and of the dimensions shown on Exhibit "A" attached to the Deed of Easement (Exhibit "C" hereto). Landlord shall be required to obtain the grant of such easement and to complete such paving work before Tenant shall be required to open for business in its demised premises, the intent being that Landlord shall simultaneously undertake the grading and paving work in both easement areas simultaneously with construction of the demised premises and the common areas.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Witness

_____
As to Landlord

IRONBOUND MARKETPLACE PARTNERS,
a Virginia limited liability
company

By _____
   Its                    Member

By _____
   Its                    Member

**LANDLORD**

_____
Witness

_____
As to Tenant

WINN-DIXIE RALEIGH, INC.

By _____
   Its                    President

Attest _____
       Its                    Secretary

(CORPORATE SEAL)

**TENANT**

COMMONWEALTH OF VIRGINIA            )
                                    )
COUNTY CITY OF Virginia Beach       )

I, Elizabeth Dashiell, a Notary Public in and for the Commonwealth of Virginia and County City aforesaid, do certify that John L. Gibson, III and Douglas D. Ellis, whose names as _____ Member and _____ Member of IRONBOUND MARKETPLACE PARTNERS, a Virginia limited liability company, are signed to the writing above, bearing date on the 3rd day of December (3D), 1993, have acknowledged the same before me in my County aforesaid.

Given under my hand and official seal this 3rd day of December (3d), 1993.

_____
Notary Public
My commission expires: 2-28-95

(NOTARIAL SEAL)


STATE OF FLORIDA        )
                        )
COUNTY OF DUVAL         )

I, Jane Elizabeth DeWitte, a Notary Public in and for the State and County aforesaid, do certify that James Kufeldt and Wayne E. Ripley, Jr., whose names as Vice President and _____ Secretary of WINN-DIXIE RALEIGH, INC., are signed to the writing above, bearing date on the 27th day of December, 1993, have acknowledged the same before me in my County aforesaid.

Given under my hand and official seal this 27th day of December, 1993.

_____
Notary Public
My commission expires:

(NOTARIAL SEAL)

JANE ELIZABETH DeWITT
My Comm. Exp. May __
Comm. No. CC __ 960

## GUARANTY

In consideration of the sum of Ten Dollars ($10.00) paid by IRONBOUND MARKETPLACE PARTNERS, a Virginia limited liability company, hereinafter called "Landlord", to WINN-DIXIE STORES, INC., a Florida corporation with its principal office at 5050 Edgewood Court, Jacksonville, Florida 32205, hereinafter called "Guarantor", the receipt and sufficiency whereof are hereby acknowledged, Guarantor does hereby guarantee unto Landlord, its heirs, legal representatives, successors and assigns, the due performance and observance by WINN DIXIE RALEIGH, INC., a Florida corporation duly qualified to transact business in the Commonwealth of Virginia, hereinafter called "Tenant", of all the terms, covenants and conditions on the part of Tenant to be performed and observed including, without limitation, payment of rentals under the attached and foregoing lease agreement dated _December 27_, 1993, covering certain premises located in a shopping center development known as "IRONBOUND MARKETPLACE", situated at the southeasterly corner of the intersection of Ironbound Road and Virginia Route #5, James City County, Virginia.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed in its corporate name and its corporate seal to be hereunto affixed and attested by its officers thereunto duly authorized this _27th_ day of _December_, 1993.

Signed, sealed and delivered
in the presence of:

WINN-DIXIE STORES, INC.

STATE OF FLORIDA           )
                           )
COUNTY OF DUVAL            )

I, _____Jane Elizabeth DeWitte_____, a Notary Public in and for the State and County aforesaid, do certify that _____James Kufeldt_____ and _____Wayne E. Ripley, Jr._____, whose names as _____ President and _____ Secretary of WINN-DIXIE STORES, INC., are signed to the writing above, bearing date on the _8th_ day of _December_, 1993, have acknowledged the same before me in my County aforesaid.

Given under my hand and official seal this _27th_ day of _December_, 1993.

_____Jane Elizabeth DeWitte_____
Notary Public
My commission expires:

(NOTARIAL SEAL)

JANE ELIZABETH DEWITTE
My Comm. Exp. May 13, 1996
Comm. No. CC 201960

EXHIBIT "A"

All that certain tract or parcel of land located in James City County, Virginia, at the intersection of John Tyler Highway (State Route 5) and Ironbound Road (State Route 615), and being shown and designated as "PHASE I, 5.9442 ACRES" on that certain plat entitled, "PLAT OF GOVERNOR'S GREEN, BEING A SUBDIVISION OF PROPERTY OF IRONBOUND COMPANY, L.C., JAMES CITY COUNTY, VIRGINIA," dated February 18, 1994, revised March 14, 1994, made by Langley & McDonald, P.C., a copy of which plat is duly recorded in the Clerk's Office of the Circuit Court of James City County, Virginia (the "Clerk's Office"), as Document Number 940007433.

TOGETHER WITH those certain rights, privileges and easements as contained in the Reciprocal Declaration of Restrictions and Grant of Easements, dated April 28, 1994, between Ironbound Marketplace Partners, L.L.C., a Virginia limited liability company, and Ironbound Company, L.L.C., a Virginia limited liability company, recorded in the Clerk's Office prior hereto.

TOGETHER WITH a non-exclusive easement for ingress/egress as contained in the Deed of Easement, dated April 28, 1994, between Ironbound Company, L.L.C., a Virginia limited liability company, and Ironbound Marketplace Partners, L.L.C., a Virginia limited liability company, recorded in the Clerk's Office prior hereto.

TOGETHER with a perpetual, non-exclusive easement for drainage as contained in the Deed and Agreement of Easement, dated April 28, 1994, among Jamestown, Inc., a Virginia corporation, Ironbound Marketplace Partners, L.L.C., a Virginia limited liability company, CENIT Bank, F.S.B., and Independent Investors, Inc. a Virginia corporation, recorded in the Clerk's Office prior hereto.