UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                          CASE NO.: 3:05-bk-03817-JAF

                                CHAPTER 11

WINN-DIXIE STORES, INC., et. al.,

  Debtors.        Jointly Administered

_____

OBJECTIONS OF E&A FINANCING II, L.P.,
E&A SOUTHEAST, L.P., E&A ACQUISITION TWO, L.P,
SHIELDS PLAZA, INC., WOODBERRY PLAZA (E&A), LLC,
VILLA RICA RETAIL PROPERTIES, LLC, WEST RIDGE, LLC,
AND BANK OF AMERICA, AS TRUSTEE OF BETTY HOLLAND,
TO THE DEBTORS' DISCLOSURE STATEMENT

COME NOW E&A Financing II, L.P., E&A Southeast, L.P., Shields Plaza, Inc., Woodberry Plaza (E&A), LLC, Villa Rica Retail Properties, LLC, West Ridge, LLC, Bank of America, as Trustee of Betty Holland, and E&A Acquisition Two, L.P, (collectively the "Landlords"), and object to the Debtors' disclosure statement (the "Disclosure Statement")[1] and for grounds therefore state:

### I.  The Objecting Parties

E&A Financing II, L.P. is the owner of the Rockbridge Plaza shopping center in DeKalb County, Georgia (**Winn-Dixie Store No. 2723**). Winn-Dixie Montgomery, Inc. was the tenant under this lease when the lease was rejected. The lease was guaranteed by Winn-

---

[1] All terms defined in the Disclosure Statement are used herein as so defined. Page number references to the Disclosure Statement are shown herein as "DS p.____".

Dixie Stores, Inc. E&A Financing II, L.P. filed a proof of claim in the amount of **$405,539.06** against both Winn-Dixie Montgomery, Inc. and Winn-Dixie Stores, Inc.

E&A Southeast, L.P. is the owner of the Reservoir Square shopping center in Brandon, Mississippi (**Winn-Dixie Store Nos. 1347 (grocery) and 1381 (pump station)**), the McGee shopping center in McGee, Mississippi (**Winn-Dixie Store No. 1360**) and the Ellis Isle shopping center in Jackson, Mississippi (**Winn-Dixie Store No. 2620**).

Winn-Dixie Montgomery, Inc. was the tenant under two leases at Reservoir Square for Stores Nos. 1347 and 1381 at the time the Reservoir Leases were rejected. These leases were guaranteed by Winn-Dixie Stores, Inc. As to **Store No. 1347,** E&A Southeast, L.P. filed a proof of claim in the amount of **$271,434.57** against both Winn-Dixie Montgomery, Inc. and Winn-Dixie Stores, Inc. **As to Store No. 1381**, E&A Southeast, L.P. filed a proof of claim in the amount of **$9,000.00** against both Winn-Dixie Montgomery, Inc. and Winn-Dixie Stores, Inc.

Winn-Dixie Montgomery, Inc. was the tenant under the lease at McGee at the time this lease was rejected. This lease was guaranteed by Winn-Dixie Stores, Inc. As to **Store No. 1360**, E&A Southeast, L.P. filed a proof of claim in the amount of **$150,870.04** against both Winn-Dixie Montgomery, Inc. and Winn-Dixie Stores, Inc.

The lease at Ellis Isle **for Store No. 2620** was assigned to Save Rite Grocery Warehouse, Inc. and guaranteed by Winn-Dixie Stores, Inc. This lease expired. As to **Store No. 2620**, E&A Southeast, L.P. filed a proof of claim in the amount of **$8,971.23** against Winn-Dixie Stores, Inc.

E&A Acquisition Two, L.P. was the landlord of **Winn-Dixie Store No. 264** at Oakwood Square shopping center in Boynton Beach, Florida. Prior to the petition date, Winn-Dixie Stores, Inc. entered into a Lease Termination Agreement with E&A Acquisition Two, L.P. wherein Winn-Dixie Stores, Inc. agreed to make nine monthly payments of $25,300 in consideration of the landlord's agreement to terminate the lease. At the time the petition was filed, Winn-Dixie Stores, Inc. still owed six payments totaling $151,800.00. E&A Acquisition Two, L.P. filed a proof of claim against Winn-Dixie Stores, Inc. for **$151,800.00**.

Shields Plaza, Inc. is the owner of the Shield's Market Place shopping center in Madison County, Alabama (**Winn-Dixie Store No. 1912**). Winn-Dixie Montgomery, Inc. was the tenant under this lease when it was rejected. This lease was guaranteed by Winn-Dixie Stores, Inc. Shields Plaza, Inc. filed a proof of claim in the amount of **$596,736.07** against both Winn-Dixie Montgomery, Inc. and Winn-Dixie Stores, Inc.

Woodberry Plaza (E&A), LLC is the owner of the Woodberry Plaza shopping center in West Columbus, South Carolina (**Winn-Dixie Store No. 1233**). Winn-Dixie Raleigh, Inc. was the tenant under this

lease when it was rejected. This lease was guaranteed by Winn-Dixie Stores, Inc. Woodberry Plaza (E&A), LLC filed a proof of claim in the amount of **$434,028.35** against both Winn-Dixie Raleigh, Inc. and Winn-Dixie Stores, Inc.

Villa Rica Retail Properties, LLC ("Villa Rica") is the owner of the Villa Rica Crossings shopping center in Villa Rica, Georgia (**Winn-Dixie Store No. 2716**). Winn-Dixie Montgomery, Inc. was the tenant under this lease when it was rejected. This lease was guaranteed by Winn-Dixie Stores, Inc. Villa Rica filed a proof of claim in the amount of **$1,176,838.91** against both Winn-Dixie Montgomery, Inc. and Winn-Dixie Stores, Inc.

West Ridge, LLC, successor-in-interest to Halpern Enterprises, Inc., is the owner of the West Ridge shopping center in Atlanta, Georgia (**Winn-Dixie Store No. 1912**). Winn-Dixie Montgomery, Inc. was the tenant under this lease at the time it was rejected. This lease was guaranteed by Winn-Dixie Stores, Inc. West Ridge, LLC filed a proof of claim in the amount of **$1,372,241.82** against both Winn-Dixie Montgomery, Inc. and Winn-Dixie Stores, Inc.

Bank of America, as Trustee of Betty Holland, is the owner of the Collins Point Shopping Center in Cartersville, Georgia (**Winn-Dixie Store 2732**). Winn-Dixie Montgomery, Inc. was the tenant under this lease when it was rejected. This lease was guaranteed by Winn-Dixie Stores, Inc. Bank of America, as Trustee of Betty Holland, filed a proof of claim in the amount of **$321,761.91**

against both Winn-Dixie Montgomery, Inc. and Winn-Dixie Stores, Inc.

## II. LANDLORDS' OBJECTIONS TO THE DISCLOSURE STATEMENT

### A. Summary of Objections

The Disclosure Statement may not be approved unless the court finds that it contains "adequate information."

"Adequate information" is defined in 11 U.S.C. §1125(a) as:

> ...information of a kind, **and in sufficient detail**, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records...that would enable [the creditor]... to make an informed judgment about the plan.

(emphasis added)

The Disclosure Statement does not provide adequate information regarding the effect of substantive consolidation. Specifically, the Disclosure Statement does not provide specific available information regarding the difference in treatment that the various creditor groups would receive in the consolidated plan proposed by the Debtors, as opposed to a deconsolidated plan. The Disclosure Statement also fails to provide adequate information on the differences between the distribution proposed by the Debtors and the distribution that would occur under a court ordered substantive consolidation.

The Landlords submit that each creditor is entitled to a complete and detailed understanding of the effect of the proposed consolidation compromise on all creditors before being required to cast a vote to accept or reject the Plan.

### B. The Disclosure Statement Does Not Provide Adequate Information to the Landlords Regarding the Proposed "Deemed" Substantive Consolidation.

On page 48, the Disclosure Statement says that the "Debtors will be **deemed** substantially consolidated," but on page 50 acknowledges that the Plan will "not result in the merger or otherwise affect the separate legal existence of each Debtor."

The Debtors propose to distribute the New Winn-Dixie Stock in a modified version of substantive consolidation that will be effective "only for purposes of distribution." (DS p.49)

The proposed distribution, which is based on a modified version of substantive consolidation, includes concessions to some of the creditors that participated in the negotiations of the substantive consolidation settlement. For example, in addition to the changes to distribution brought about by the deemed substantive consolidation, the distribution to Retirees was increased. The Debtors and the Creditor's Committee also agreed to support a motion by the Ad Hoc Committee to be paid up to $1,300,000.00 in cash for the legal fees incurred by the Ad Hoc Committee in the negotiation of the Settlement. (DS p.49).

The recovery of the Note Holders under a court ordered consolidation would be 17% lower than in a "deconsolidated plan." (DS p.48). Yet, the Note Holders would be paid 95.6% of their claims in the Debtors' proposed modified version of consolidation. (DS p.9). Assuming the Note Holders would not have been entitled to a distribution of 112.6% under a deconsolidated plan, they too

appear to be receiving an enhanced distribution as a result of the settlement.

The Disclosure Statement is not clear whether the examples of special treatment to particular creditor groups are illustrative or comprehensive. The Landlords submit that **all** modifications bestowing special treatment on any creditor or group of creditors must be clearly and completely disclosed, and such disclosure must include the effect of the modification on the overall distribution as compared to a deconsolidated plan and a court ordered consolidated plan.

The Disclosure Statement states that the dispute over consolidation is "primarily an intercreditor issue." (DS p.44). This is because the Debtors are distributing 50 million shares of stock, representing all of the equity in the reorganized Debtors, to their creditors.

**Since the Debtors are distributing a fixed amount to all creditors, any increase in the distribution to one group of creditors will, by necessity, require an equal reduction in the distribution to another group or groups of creditors.**

Reading between the lines of the Disclosure Statement, the net effect of the deemed consolidation appears to be that a substantial portion of the distribution that would have gone to landlords under a deconsolidated plan will now go to the Vendor/Suppliers under the consolidated plan.

The Disclosure Statement reveals that the holders of claims, such as Landlord Claims, that "bargained for credit-enhancing guarantees from separate legal entities entitling the holders to allowed claims against multiple Debtors" would be harmed by substantive consolidation because "**these credit enhancing guarantees would likely become meaningless and the recoveries of these holders would be substantially lower.**" (Emphasis added)(DS p.48). The Debtors admit that the holders of such claims "have a strong interest in opposing any effort to substantively consolidate the Debtors." **After the substantial reduction of their claims**, landlords will receive New Winn-Dixie Stock worth 70.6% of their claims.

The Disclosure Statement says the majority of the claims of the Vendor/Suppliers **were against "the Debtors with high debt to asset ratios."** (DS p.48). This would suggest that the holders of the Vendor/Suppliers claims would have received substantially less than fifty cents on the dollar if the Debtors had proposed a deconsolidated plan. Under the Debtors' proposed consolidation, the Vendors/Suppliers that only had one claim against "Debtors with high debt to asset ratios" receive the same distribution as the Landlords, 70.6%. (DS p.9,10).

The Vendor/Suppliers have $218.9 million in total claims (DS p.9,10). As to the Vendor/Suppliers, the Disclosure Statement says that the consolidation "could greatly impact their recovery." (DS p.48). While the Disclosure Statement avoids saying how great this

-8-

impact is, an improvement from 30 cents on the dollar (a distribution consistent with a single claim against a Debtor with "a high debt to asset ratio") to 70 cents on the dollar for $218.9 million dollars in claims would involve $87.56 million dollars in additional value going to the Vendor/Suppliers, at the expense of other creditors. The real magnitude of the increase is not disclosed.

One explanation of why the Debtors agreed to increase the payment to the Vendor/Suppliers at the expense of other creditors is that "the Debtors believed that this group had the means and the desire to pursue a substantive consolidation even if it required protracted and costly litigation" and that the settlement would allow the Debtors to "avoid costly and time-consuming litigation that could hamper the Debtors' restructuring efforts." (DS p.48). In other words, the Vendor/Suppliers are being paid not to pursue the substantive consolidation motion. The problem is, the Debtors are (a) paying off the Vendor/Suppliers with money that would have gone to other creditors, and (b) not disclosing which creditors are having their distributions reduced, and by how much, to fund the compromise.

Because the Disclosure Statement is silent on the specifics but states that the claims of Landlords are "substantially lower" under a consolidated plan, the Landlords are not only concerned that the payoff to the Vendor/Suppliers is excessive, but also that they are being required to fund an unfair portion of the payoff.

If Landlords are to vote for a plan that (a) provides for a "deemed" substantive consolidation, (b) expunges some of their claims, (c) dilutes the claims that are being allowed, and (d) makes their recovery "substantially lower" than it would have been under a deconsolidated plan, they should at least be told specifically how much more or less they, and the other classes of creditors, are getting as a result of the deemed consolidation. If the reduction of the Landlords' total claims is reasonable and proportionate to the alleged benefits the Landlords are to receive as a result of the consolidation, the Landlords might elect to vote for the Plan and not object to it. On the other hand, if the enhancement being given to the Vendor/Suppliers is too generous, or if the Landlords' claims are being reduced disproportionately to the other creditors to finance the payoff to the Vendor/Suppliers, the Landlords may decide to vote against the Plan and object to it.

On pages 48 and 49 of the Disclosure Statement, the Debtors go into a detailed discussion of the Creditor's Committee's "extensive legal and financial analysis" regarding substantive consolidation. **Part of this analysis included "evaluating claim recovery scenarios on an entity by entity basis and a consolidated basis to sensitize the members of the Creditor's Committee to the financial impact of the substantive consolidation issues."**

Thus, an extensive financial analysis, including the comparison on a specific detailed "entity by entity" basis, of the treatment of all of the creditors under a consolidated versus a

deconsolidated plan, is available. This specific information would clearly enable the Landlords to "make an informed judgment about the Plan." If, as the Disclosure Statement says, the Creditor's Committee needed this information to evaluate and approve the compromise (DS p. 49), the Landlords need the same information in order to make a decision on whether to vote to accept or reject a plan that incorporates the compromise.

The Landlords therefore request that the Court withhold approval of the Disclosure Statement unless it is amended to include specific information showing the recovery that each group of creditors would receive under the following three scenarios: (a) the proposed substantive consolidation compromise, (b) a Court ordered substantive consolidation, and (c) a plan with no substantive consolidation. Included in the separate groups of creditors for which such disclosure should be made would be the following:

1. For each separate Winn-Dixie entity, the total amount of all such claims against that entity and what the holder of such a claim would receive under each scenario.

2. Creditors with claims against Winn-Dixie Montgomery, Inc. with a guarantee claim against Winn-Dixie Stores, Inc., the total amount of such claims and what the holders of such claims would receive under each scenario.

3. Creditors with claims against Winn-Dixie Raleigh, Inc. with a guarantee claim against Winn-Dixie Stores, Inc.,

the total amount of such claims and what the holders of such claims would receive under each scenario.

WHEREFORE, the Landlords pray that the motion to approve the Disclosure Statement be denied unless and until it is amended to disclose the additional information requested herein.

Dated this 24 day of July, 2006.

KITCHENS, KELLEY, GAYNES, P.C.

Mark A. Kelley, Esquire
11 Piedmont Center, Suite 900
Atlanta, Georgia 30305
(404) 467-7718 Telephone
(843) 364-0126 Facsimile

and

HELD & ISRAEL

By: _____
Kimberly Held Israel, Esquire
Florida Bar #47287
Adam N. Frisch, Esquire
Florida Bar #635308
1301 Riverplace Blvd., Suite 1916
Jacksonville, Florida 32207
(904) 398-7038 Telephone
(904) 398-4283 Facsimile