UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                CASE NO.:  3:05-bk-03817-JAF

                                      CHAPTER 11

WINN-DIXIE STORES, INC., et. al.,

    Debtors.     Jointly Administered

**LIMITED OBJECTION OF E&A FINANCING II, L.P.,
E&A SOUTHEAST, L.P., E&A ACQUISITION TWO, L.P,
SHIELDS PLAZA, INC., WOODBERRY PLAZA (E&A), LLC,
VILLA RICA RETAIL PROPERTIES, LLC, WEST RIDGE, LLC,
AND BANK OF AMERICA, AS TRUSTEE OF BETTY HOLLAND, TO THE
DEBTORS' MOTION FOR ORDER REGARDING SOLICITATION AND VOTING**

COME NOW E&A Financing II, L.P., E&A Southeast, L.P., Shields Plaza, Inc., Woodberry Plaza (E&A), LLC, Villa Rica Retail Properties, LLC, West Ridge, LLC, Bank of America, as Trustee of Betty Holland, and E&A Acquisition Two, L.P, (collectively the "Landlords") and object to the Debtors' Motion for Order Regarding Solicitation and Voting and for grounds therefore state:

### I. LANDLORDS' OBJECTIONS TO THE MOTION

**A. Summary of Objections.**

The Landlords object to (a) the proposed requirement that all communications among creditors in opposition to the plan be submitted to the Court for advance approval and (b) the proposal that the Landlords not be allowed to vote their claims on guarantees.

-1-

1.  **Creditors should be Able to Solicit Other Creditors to Reject the Plan without the Advance Approval of the Court.**

The Debtors seek to have all inter-creditor communications regarding whether the Plan should be confirmed, controlled by the Court through a process whereby proposed communications are submitted to the Court for approval by July 28, 2006 and may only be sent with the Plan. This procedure is allegedly sought in order to ensure "appropriate coordination and compliance with the Bankruptcy Code."

The Third Circuit, in <u>Century Glove, Inc. v First American Bank of New York</u>, 860 F.2d 94 (3rd. Cir. 1988), expressly rejected the Debtors' contention that Section 1125 of the Bankruptcy Code requires court approval of all communications among creditors soliciting the acceptance or rejection of a plan. The Third Circuit gave the following explanation of why, once the disclosure statement is issued, the court should not interfere with a creditor's effort to solicit other creditors to reject the plan:

> Century Glove's interpretation of the section cannot stand. Century Glove argues, and the bankruptcy court assumed, that only approved statements may be communicated to creditors. The statute, however, never limits the facts which a creditor may receive, but only the time when a creditor may be solicited. Congress was concerned not that creditors' votes were based on misinformation, but that they were based on no information at all. See H.R. 95-595, at pp. 225-25, 95th Cong., 2d Sess., 124 Cong. Rec.____, *reprinted in,* 1978 U.S.C.C.A.A.N. 5963, 6185 (House Report). Rather than limiting the information available to a creditor, §1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote. See S.R. 95-989, at pp. 121, 95th Cong., 2d Sess., 124 Cong.Rec.____, <u>reprinted in,</u> 1978 U.S.C.C.A.A.N. 5787, 5907 ("A plan is necessarily predicated on knowledge of the assets and liabilities being dealt with and on factually supported

expectations as to the future course of the business...")  (Senate Report). The provision sets a floor, not a ceiling. Thus, we find that Section 1125 does not on its face empower the bankruptcy court to require that all communications between creditors be approved by the court. **As the district court pointed out, allowing a bankruptcy court to regulate communications between creditors conflicts with the language of the statute.** A creditor may receive information from sources other than the disclosure statement. Section 1125 itself defines "typical investor" of a particular class in part, as one having "such ability to obtain such information from sources other than the disclosure required by this section..." 11 U.S.C. § 1125(a)(2)(C). In enacting the bankruptcy code, Congress contemplated that the creditors would be in active negotiations with the debtor over the plan. See infra, Part V. The necessity of "adequate information" was intended to help creditors in their negotiations. See In re Gulph Woods, 83 B.R. 339 (Bankr.E.D.Pa.1988). Allowing the bankruptcy court to regulate communications between creditors under the guise of "adequate information" undercuts the very purpose of the statutory requirement. Lastly, Century Glove's reading of §1125 creates procedural difficulties. Century Glove provides this court no means to distinguish predictably between mere interpretations of the approved information, and additional information requiring separate approvals. Therefore, to be safe, the creditor must seek prior court approval for every communication with another creditor (or refrain from communication), whether soliciting a rejection or an acceptance. **Congress can hardly have intended such a result.** It would multiply hearings, hence expense and delay, at a time when efficiency is greatly needed. We also note that, as expressed in the House Report, Congress evidently contemplated a single hearing on the adequacy of the disclosure statement. See House Report, 1978 U.S.C.C.A.A.N. at 6186.

(emphasis added)

The Debtors' proposed restriction on a creditor's ability to solicit another creditor to reject the plan is contrary to law and should be rejected by this Court.

**2. The Holders of Landlord Claims Against Multiple Debtors Based on a Lease and a Guarantee Should Receive Two Ballots and be Allowed to Vote Both Claims.**

On page 9 of the Motion, the Debtors state that in order to "avoid duplication and avoid expense" they propose that "voting creditors who have asserted guarantee or other multi-debtor claims for the same underlying liability that are classified in the same class, should be entitled to receive only one Solicitation Package and one ballot for voting their claims with respect to that class."

A claim against a tenant Debtor is a different claim than a claim against a guarantor Debtor. The claims are based on different contractual undertakings and are against different Debtors. The Debtors had the option of classifying the expunged claims in a separate class that would be deemed to have rejected the Plan under 11 U.S.C. §1126(g). The Debtors, however, elected to put these multi-Debtor claims into a single class that has the right to vote. If the Debtors elect to put the "to-be-expunged" claims into a voting class, the holders of such claims should be allowed to vote.

## II. Conclusion

The Court should not approve the proposed procedures unless (a) creditors are allowed, once the Disclosure Statement is approved, to solicit other creditors to vote for or against the

plan without having such solicitations approved by the court, and (b) all claims in a voting class are allowed to vote.

Dated this 24 day of July, 2006.

        KITCHENS, KELLEY, GAYNES, P.C.

        Mark A. Kelley, Esquire
        11 Piedmont Center, Suite 900
        Atlanta, Georgia 30305
        (404) 467-7718 Telephone
        (843) 364-0126 Facsimile

        and

        HELD & ISRAEL

        By: _____
        Kimberly Held Israel, Esquire
        Florida Bar #47287
        Adam N. Frisch, Esquire
        Florida Bar #635308
        1301 Riverplace Blvd., Suite 1916
        Jacksonville, Florida 32207
        (904) 398-7038 Telephone
        (904) 398-4283 Facsimile