**Hearing Date: August 24, 2006, 1:00 p.m.**
**Objection Deadline: August 14, 2006, 4:00 p.m.**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors.[1] | ) Jointly Administered |

### DEBTORS' FIFTH OMNIBUS OBJECTION TO TAX CLAIMS
### AND MOTION FOR ORDER DETERMINING TAX LIABILITIES

Pursuant to 11 U.S.C. §§ 105, 502, 505 and 506 and Fed. R. Bank. P. 3007, 7004 and 9014 and Rule 3007-1 of the Local Rules of Bankruptcy Procedure, Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") file this (i) omnibus objection to the proofs of claim (the "Tax Claims") identified on the attached Exhibit A (the "Objection")[2] and (ii) motion for an order of the Court (a) determining the Debtors' tax liabilities for the properties identified on the attached Exhibit B, (b) adopting the 2004 and 2005

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

[2]    By Order dated September 1, 2005, this Court approved notice and service procedures for omnibus claim objections (the "Claim Objection Procedures Order"). This Objection is filed pursuant to the Claim Objection Procedures Order.

revised assessed values listed on Exhibits A and B as the correct bases for calculating the Debtors' liabilities to the Tax Collectors for both claimed and unclaimed tax amounts, (c) determining that the Debtors' tax liabilities for unclaimed 2004 and 2005 taxes are the revised tax amounts set forth on Exhibit B, (d) determining that the market values reflected on Exhibit C are the correct values on which the Taxing Authorities should compute the Debtors' tax liabilities for the 2006 and/or 2007 tax year(s), (e) determining that the Adjusted Rate (as defined below) is the appropriate interest rate to be used to calculate accrued interest, if any, on the secured tax liabilities included in this Objection and Motion, (f) where these determinations result in the Debtors' net tax liability being less than what the Debtors have already paid the Tax Collectors for a particular account, authorizing the Debtors to offset the excess amount paid against the Debtors' liability on other accounts within the same jurisdiction and for the same or other tax years, and (g) extinguishing any liens relating to the Debtors' secured tax liabilities addressed in this Objection and Motion upon payment of the allowed Tax Claims and revised tax amounts as set forth on Exhibits A and B, respectively (collectively, the "Objection and Motion").  In support of this Objection and Motion, the Debtors respectfully represent as follows:

### **Background**

1.    On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of Title 11 of the

United States Code, 11 U.S.C. §101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.  An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Bankruptcy Code section 505.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested are Bankruptcy  Code sections 502, 505 and 506, supported by Fed. R. Bankr. P. 3007, 7004 and 9014.

5.       By order dated April 28, 2005 (the "Claims Bar Date Order"), this Court set August 1, 2005 as the last date for all parties who have prepetition claims against the Debtors to file and serve a proof of claim as is defined in 11 U.S.C. § 101(5).  The bar date applicable for governmental entities was August 22, 2005.

6.      The Debtors' notice agent, Logan & Company, provided notice of the bar date by mailing a notice approved by the Court (the "Bar Date Notice") and a

proof of claim form in accordance with the Claims Bar Date Order and the Bar Date Notice.

**Relief Requested**

7.     By this Objection and Motion, the Debtors seek relief against local property tax collectors, treasurers and tax collection offices and departments located in Louisiana (collectively, the "Tax Collectors").  Under applicable law, the Tax Collectors are each vested with the authority and responsibility for computing, billing and collecting ad valorem taxes assessed against the taxable properties within their respective jurisdictions.  Many of the Tax Collectors filed proofs of claims in these cases.  Other Tax Collectors have not filed proofs of claims but have asserted unpaid tax liabilities against the estate, and these liabilities are secured by statutory first liens against the Debtors' estate assets.  Not included in the category of "Tax Collectors" are the various county assessors, county auditors and their offices (collectively, the "County Appraisers") which are vested under state law with the duties and authority of developing tax approval and assessment rolls and the assessed values for taxable properties within their counties.

8.     By this Objection and Motion, the Debtors seek entry of an order pursuant to Bankruptcy Code sections 502, 505 and 506 and Fed. R. Bankr. P. 3007, 7014 and 9014, (a) sustaining the Objection and reducing and allowing the Tax Claims in the amounts and classes set forth on Exhibit A, (b) determining the Debtors' tax liabilities for the properties identified on the attached Exhibit B, (c) adopting the 2004 and 2005 revised assessed values listed on Exhibits A and B as

the correct bases for calculating the Debtors' liabilities to the Tax Collectors for both claimed and unclaimed tax amounts, (d) determining that the Debtors' tax liabilities for unclaimed 2004 and 2005 taxes are the revised tax amounts set forth on Exhibit B, (e) determining that the market values reflected on Exhibit C are the correct values on which the Taxing Authorities should compute the Debtors' tax liabilities for the 2006 and/or 2007 tax year(s), (f) determining that the Adjusted Rate (as defined below) is the appropriate interest rate to be used to calculate accrued interest, if any, on the secured tax liabilities included in this Objection and Motion, (g) where these determinations result in the Debtors' net tax liability being less than what the Debtors have already paid the Tax Collectors for a particular account, authorizing the Debtors to offset the excess amount paid against the Debtors' liability on other accounts within the same jurisdiction and for the same or other tax years, and (h) extinguishing any liens relating to the Debtors' secured tax liabilities addressed in this Objection and Motion, upon the Debtors' payment of the allowed Tax Claims and revised tax amounts as set forth on Exhibits A and B, respectively.

9.    The Court may grant this relief without any need for the County Appraisers to actually revise their tax rolls.  Accordingly, the Debtors seek no relief against the County Appraisers.

**A.    The Debtors' owned and leased real and personal property is overvalued.**

10.    Pursuant to an order of the Court dated February 23, 2006 (Docket No. 6039), the Debtors retained Assessment Technologies, Ltd. ("ATL") (i) to

analyze the ad valorem tax amounts assessed and claimed by or on behalf of the Tax Collectors against the Debtors' owned and leased property, (ii) identify instances where excessive taxes have been imposed, and (iii) assist the Debtors in seeking appropriate corrected reductions of those tax amounts.

11.     ATL's analysis included the state law tax valuation standards applicable to the taxes in Louisiana.  The standard in Louisiana is "fair market value."  The Louisiana standard is set out, together with the corresponding citations to the state statute, on the attached Exhibit D.

12.     ATL reviewed the tax amounts asserted by the Tax Collectors and the bases for those amounts, including the underlying values on which those computations were based.  A detailed description of ATL's review process is attached as Exhibit E.

13.     Based upon ATL's analysis, the Debtors have concluded that the 2004 and 2005 tax amounts imposed by the Tax Collectors are excessive based upon several considerations, including (a) appraisals provided by independent third-party appraisers; (b) the distressed business environment in which the Debtors operated in the years leading up to their chapter 11 cases; and (c) the value realized by the Debtors upon the sale of their assets both prior to and during the course of these chapter 11 cases, including sales of other similar assets.

14.     By applying the applicable state valuation standards and independent appraisal analyses, ATL ascertained the correct values for the real and personal property which are the subject of the Objection and Motion and from that process,

recalculated the amount of tax due under state law to determine the revised tax amounts reflected in the attached Exhibits A and B.

15.    This Court is authorized to determine the correct amount of the Tax Claims and the Debtors' tax liabilities for the properties identified in Exhibits A and B under Bankruptcy Code section 505, which provides, in relevant part:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of *any tax*, any fine or penalty relating to a tax, or any addition to tax, *whether or not previously assessed, whether or not paid, and whether or not contested* before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

Emphasis Added.

16.    This authority includes adopting the appropriate tax values to be used in calculating the correct tax amounts of the property in question. *See, e.g. In re MCORP Financial, Inc.*, 216 B.R. 596 (Bankr.S.D.Tex. 1996) ("the court has jurisdiction to determine the value of the property and the amount of tax due"). And this jurisdiction extends to a determination of the tax liability and tax values of property owned by non-debtors, where the liability affects the administration of the Debtors' estates. *See, e.g. In re Wolverine Radio, Co.*, 930 F.2d 1132 (6th Cir. 1991) (*cert. denied*) 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992). Here, a few of the tax liabilities at issue are for properties leased by the Debtors (rather than owned), because the Debtors are obligated to pay the taxes under the leases. For these reasons, the Debtors' leases generally allow the Debtors to contest the taxes assessed and any reduction will ultimately benefit the Debtors.

17.    There are only two exceptions to Section 505(a)(1)'s broad grant of authority to determine tax liabilities.  The first exception prevents the court from re-adjudicating tax claims that were already contested and finally adjudicated in a court of competent jurisdiction prior to the commencement of the case. 11 U.S.C. § 505(a)(2)(A).    None of the Tax Claims or assessments at issue have been adjudicated in such manner.

18.    The second exception provides that where a trustee or debtor-in-possession seeks a partial refund of paid taxes, the debtor must first request the refund from the Taxing Authority and grant them up to 120 days to review the request.  11 U.S.C. § 505(a)(2)(B).  The Debtors are not seeking tax refunds in this Objection and Motion.  The Debtors are however, seeking to offset amounts which were overpaid for prior years against liabilities on other present or future amounts due.  Where refunds are sought as an offset, a debtor need not first direct a refund request to the Taxing Authority under §505(a)(2)(B).  *See, United States of America v. Kearns*, 177 F.3d 706, 711 (8th Cir. 1999); *see also, In re Guardian Trust Co.*, 260 B.R. 404, 412 (S.D. Miss. 2000).

**B.    Adjustment to Interest Rate Calculation.**

19.    To the extent that any Tax Claims are secured by liens against the Debtors' property under state law and the value of such property is more than the amount of the tax claim, such claims are entitled to interest until paid pursuant to Bankruptcy Code Section 506(b).  The statutory interest rates imposed by the Taxing Authorities for such claims range from 8% and 18%.

20.     Although section 506(b) does not specify the rate at which interest should accrue, courts look to the statutory interest rate provided by the applicable Taxing Authority *if* it reflects a true interest rate rather than a penalty.  *See Galveston Indep. School Dist. v. Heartland Fed. Sav. & Loan Assoc.*, 159 B.R. 198, 204 (S.D. Tex. 1993) (holding that oversecured non-consensual creditors should be entitled to the statutory interest rate only if "the charge can be reasonably characterized as true interest rather than as a penalty"); *In re Davison*, 106 B.R. 1021, 1022 (Bankr. Neb. 1989) (holding that a debtor is obligated to pay interest at the statutory rate "unless the court determines that the statutory interest rate constitutes a penalty").

21.     If the Court determines that the statutory rate constitutes a penalty, the Court may modify the rate.  A true interest rate is distinguished from a penalty depending on whether "the charge denominated 'interest' . . . [is] 'interest eo nomine' – interest imposed as compensation for the detention of money – or simply another penalty for delinquency."  *Galveston Indep. School Dist.*, 159 B.R. at 204.

22.     Based upon the average one year LIBOR and prime lending rates, (3.61% and 5.68% respectively), the Debtors submit that the rates asserted by the Taxing Authorities (from 8% to 18%) contain a penalty and should be reduced.  The Debtors believe that 6.0% per annum (the "Adjusted Rate") is appropriate and any interest over the Adjusted Rate should be disallowed.  The proposed Adjusted Rate represents Prime plus one-half percent for the period the taxes remain unpaid, and

adequately accounts for the appropriate credit risk of the Debtors and the Taxing Authorities' secured status.

23.     Accordingly, the Debtors request that Court enter an order specifying that the Adjusted Rate is the appropriate interest rate to be used in calculating the accrued interest on any allowed Tax Claims during these Chapter 11 cases.

## Responses To Objections

24.     Pursuant to the Claim Objection Procedures Order, to contest the relief requested in this Objection and Motion, a claimant must file a response (a "Response") with the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division via the Court's electronic filing procedures (electronic filing is mandatory for all attorneys) or by delivery of a hard copy to the Clerk of the Court, United States Courthouse, 300 North Hogan Street, Suite 3-350, Jacksonville, FL 32202 no later than August 14, 2006, at 4:00 p.m. (Eastern Time) (the "Response Deadline").  In addition, a copy of the Response must be served on the following on or before the Response Deadline:  Cynthia C. Jackson, 225 Water Street, Suite 1800, Jacksonville, Florida 32202, (904) 359-7708 (facsimile), cjackson@smithhulsey.com

25.     If a Response is properly and timely filed and served in accordance with the above procedures, the Debtors will endeavor to reach a consensual resolution with the Claimant.  If no consensual resolution is reached, a hearing has been noticed for August 24, 2006, at 1:00 p.m. (Eastern Time).

26.    Only those Responses made in writing and timely filed and received will be considered by the Bankruptcy Court at any such hearing.

27.    If a Taxing Authority whose claim is subject to this Objection and Motion fails to file and serve a timely Response in compliance with the foregoing procedures, the Debtors will present to the Bankruptcy Court an appropriate order with respect to the claim without further notice to the Claimant.

## Contested Matter

28.    To the extent that a response is filed with respect to any claim and the Debtors are unable to resolve the response prior to the hearing on this Objection, each such Claim and the objection to such Claim asserted in this Omnibus Objection shall constitute a separate contested matter as contemplated by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

## Reservation of Rights

29.    The Debtors expressly reserve the right to amend, modify or supplement this Omnibus Objection and to file additional objections to the proofs of claim or any other claims which may be asserted against the Debtors.  Should one or more of the grounds of objection stated in this Omnibus Objection be dismissed, the Debtors reserve their right to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to seek further reduction of any claim to the extent that such claim has been paid.

## Notice

30.    The Debtors will serve this Objection and Motion by first-class, United States mail, postage prepaid, upon each of the Taxing Authorities whose claims or other liabilities are subject to the Objection and Motion.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit F (i) sustaining the Objection and reducing and allowing the Tax Claims in the amounts set forth on Exhibit A; (ii) determining the Debtors' tax liabilities for the property identified on the attached Exhibit B; (iii) adopting the 2004 and 2005 revised assessed values listed on Exhibits A and B as the correct bases for calculating the Debtors' liability to the Tax Collectors for both claimed and unclaimed tax amounts; (iv) determining the Debtors' tax liabilities for unclaimed 2004 and 2005 taxes are the revised tax amounts set forth on Exhibit B; (v) determining the market values reflected on Exhibit C are the correct values on which the Taxing Authorities should compute the Debtors tax liabilities for the 2006 and/or 2007 tax year; (vi) determining that the Adjusted Rate is the appropriate interest rate to be used to calculate accrued interest, if any, on the secured tax liabilities included in this Objection and Motion; (vii) where these determinations result in the Debtors' net tax liability being less than what the Debtors have already paid the Tax Collectors for a particular account, authorizing the Debtors to offset the excess amount paid against the Debtors' liability on other accounts within the same jurisdiction and for the same or other tax years; (viii) extinguishing any liens relating to the Debtors' secured tax liabilities

addressed with this Objection and Motion upon payment of the allowed Tax Claims

and revised tax amounts as set forth on Exhibits A and B; and (ix) granting such

other and further relief as is just and proper.

Dated: July 24, 2006

SKADDEN, ARPS, SLATE, MEAGHER   SMITH HULSEY & BUSEY
& FLOM LLP

By____*s/ D. J. Baker*_____        By____*s/ Cynthia C. Jackson*_____
      D. J. Baker                               Stephen D. Busey
      Sally McDonald Henry                       James H. Post
      Rosalie Walker Gray                        Cynthia C. Jackson, F.B.N. 498882

Four Times Square                          225 Water Street, Suite 1800
New York, New York 10036                   Jacksonville, Florida 32202
(212) 735-3000                             (904) 359-7700
(212) 735-2000 (facsimile)                 (904) 359-7708 (facsimile)
djbaker@skadden.com                        cjackson@smithhulsey.com

Co-Counsel for Debtors                     Co-Counsel for Debtors

00527640.14

13

**EXHIBIT A**

**Exhibit A**

*7/24/2006*

| Creditor Name | Location No. | Property Type * | Claim Class ** | Claim Filing Date | Claim # *** | Case Number | Total Claim Amount **** | Parcel Number | Tax Year | Taxing Authority's Assessed Value | Base Tax Asserted By Taxing Authority | Revised Assessed Value | Revised Tax Amount ***** | Basis for Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CITY OF HAMMOND | (County and State: TANGIPAHOA, LA) | | | | | | | | | | | | | |
| | 1537 | PP | | | | NIC | | 02471507 | 2004 | 242,674 | $4,622.01 | 91,239 | $1,737.75 | A |
| | 1537 | PP | | | | NIC | | 02471507 | 2005 | 232,879 | $4,434.02 | 91,917 | $1,750.10 | A |
| | HAM.WH | PP | | | | NIC | | 05366909 | 2004 | 4,748,713 | $90,417.00 | 2,181,943 | $41,544.89 | A |
| | HAM.WH | PP | Priority | 6/12/2006 | 13285 | | 05-03817-3F1 | $106,341.22 | 05366909 | 2005 | 5,315,512 | $101,207.35 | 2,630,250 | $50,574.79 | A |
| | HAM.MF.DA | PP | | | | NIC | | 06011705 | 2004 | 340,589 | $6,486.31 | 231,709 | $4,412.76 | A |
| | HAM.MF.DA | PP | | | | NIC | | 06011705 | 2005 | 376,571 | $7,171.41 | 262,767 | $5,004.12 | A |
| | HAM.WH | R | | | | NIC | | 7H 2082802 | 2004 | 10,252,925 | $197,203.36 | 4,752,746 | $92,789.69 | A |
| | HAM.WH | R | | | | NIC | | 7H 2082802 | 2005 | 10,252,925 | $197,203.36 | 4,752,746 | $92,789.69 | A |
| | | | | | | | | **Tax Subtotals** | | | **$608,744.82** | | **$290,603.80** | |

**Legend for Basis for Adjustment Codes:**   *A = Appraised Asset*      *M = Market*      *OK = No adjustment made*      *S = Sales*

**Legend for Case Number(s):**   *05-03817-3F1*      *Winn-Dixie Stores, Inc.*

**Footnotes:**   *\* PP in property type is a personal property account and R is a real property account*

   *\*\* Claim Class reflects allowed class.*

   *\*\*\* NIC in the Claim Number column indicates Tax Amounts were not included in a proof of claim.*

   *\*\*\*\* Claim amount is derived from proof of claim filed by creditor and may include additional contingencies, unliquidated amounts, interest, penalties, and/or fees.*

   *\*\*\*\*\* In many instances, the total Allowed Tax Claim will be offset by amounts previously paid by Debtor.  Accordingly, the total amount due a Taxing Authority may be less than the Revised Tax Amount.*

| Creditor Name | Location No. | Property Type * | Claim Class ** | Claim Filing Date | Claim # *** | Case Number | Total Claim Amount **** | Parcel Number | Tax Year | Taxing Authority's Assessed Value | Base Tax Asserted By Taxing Authority | Revised Assessed Value | Revised Tax Amount ***** | Basis for Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CITY OF PONCHATOULA TAX COLLECTOR | | | (County and State: TANGIPAHOA, LA) | | | | | | | | | | | |
| | 1540 | PP | | | NIC | | | 03508609 | 2004 | 192,756 | $3,184.33 | 81,500 | $1,346.38 | A |
| | 1540 | PP | Priority | 7/26/2005 | 7497 | 05-03817-3F1 | $3,186.33 | 03508609 | 2005 | 176,790 | $2,920.57 | 78,401 | $1,295.18 | A |
| | | | | | | | | | Tax Subtotals | | $6,104.90 | | $2,641.56 | |

**Legend  for Basis for Adjustment Codes:**  *A = Appraised Asset*      *M = Market*      *OK = No adjustment made*      *S = Sales*

**Legend for Case Number(s):**   *05-03817-3F1*          *Winn-Dixie Stores, Inc.*

**Footnotes:**  *\* PP in property type is a personal property account and R is a real property account*

*\*\* Claim Class reflects allowed class.*

*\*\*\* NIC in the Claim Number column indicates Tax Amounts were not included in a proof of claim.*

*\*\*\*\* Claim amount is derived from proof of claim filed by creditor and may include additional contingencies, unliquidated amounts, interest, penalties, and/or fees.*

*\*\*\*\*\* In many instances, the total Allowed Tax Claim will be offset by amounts previously paid by Debtor.  Accordingly, the total amount due a Taxing Authority may be less than the Revised Tax Amount.*

**EXHIBIT B**

## Exhibit B

### 7/24/2006

| Creditor Name | | Location No. | Property Type * | Parcel Number | Tax Year | Taxing Authority's Assessed Value | Base Tax Asserted By Taxing Authority | Revised Assessed Value | Revised Tax Amount** | Basis for Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|
| CITY OF NEW ORLEANS MUN 3 TAX COLLECTOR | (County and State: ORLEANS, LA) | | | | | | | | | |
| | | 1403 | PP | 39P119701 | 2004 | 211,190 | $36,174.73 | 92,664 | $15,872.38 | A |
| | | 1403 | PP | 39P119701 | 2005 | 190,130 | $32,598.20 | 81,012 | $13,876.62 | A |
| | | 1403 | PP | 39P119701 | 2006 | 182,860 | $34,439.85 | 77,534 | $14,602.84 | A |
| | | 1408 | PP | 39P131218 | 2004 | 369,030 | $87,999.35 | 125,946 | $30,033.22 | A |
| | | 1408 | PP | 39P131218 | 2005 | 377,500 | $75,395.87 | 120,432 | $24,053.13 | A |
| | | 1408 | PP | 39P131218 | 2006 | 347,660 | $65,478.28 | 112,693 | $21,224.58 | A |
| | | 1439 | PP | 39P133504 | 2004 | 228,770 | $39,186.02 | 111,721 | $19,136.75 | A |
| | | 1439 | PP | 39P133504 | 2005 | 235,370 | $40,316.53 | 110,083 | $18,856.08 | A |
| | | 1439 | PP | 39P133504 | 2006 | 229,460 | $43,216.50 | 103,357 | $19,466.21 | A |
| | | 1417 | PP | 39P204336 | 2004 | 224,860 | $38,516.27 | 105,842 | $18,129.64 | A |
| | | 1417 | PP | 39P204336 | 2005 | 221,160 | $37,882.50 | 102,097 | $17,488.23 | A |
| | | 1417 | PP | 39P204336 | 2006 | 207,720 | $39,121.98 | 97,928 | $18,443.81 | A |
| | | 1408 | R | 39W955316 | 2004 | 1,128,420 | $193,287.06 | 847,936 | $145,242.96 | A |
| | | 1408 | R | 39W955316 | 2005 | 1,128,420 | $225,372.71 | 847,936 | $169,353.29 | A |
| | | 1408 | R | 39W955316 | 2006 | 984,230 | $185,369.89 | 847,936 | $159,700.27 | A |
| | | | | | **Tax Subtotals** | | **$1,174,355.74** | | **$705,480.00** | |

Legend  for Basis for Adjustment Codes:    A = Appraised Asset        M = Market        OK = No adjustment made        S = Sales

Footnotes:        *  PP in property type is a personal property account and R is a real property account

**  In many instances, the total Allowed Tax Claim will be offset by amounts previously paid by Debtor.  Accordingly, the total amount due a Taxing Authority may be less than the Revised Tax Amount.

| Creditor Name | | Location No. | Property Type * | Parcel Number | Tax Year | Taxing Authority's Assessed Value | Base Tax Asserted By Taxing Authority | Revised Assessed Value | Revised Tax Amount ** | Basis for Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|
| CITY OF NEW ORLEANS MUN 4 TAX COLLECTOR | (County and State: ORLEANS, LA) | | | | | | | | | |
| | | 1437 | PP | 412112504 | 2004 | 454,850 | $77,911.27 | 114,246 | $19,569.21 | A |
| | | 1437 | PP | 412112504 | 2005 | 410,180 | $70,259.73 | 112,666 | $19,298.62 | A |
| | | 1437 | PP | 412112504 | 2006 | 339,150 | $63,875.51 | 101,795 | $17,436.46 | A |
| | | | | | Tax Subtotals | | $212,046.51 | | $56,304.29 | |

Legend  for Basis for Adjustment Codes:    A = Appraised Asset        M = Market        OK = No adjustment made        S = Sales

Footnotes:      * PP in property type is a personal property account and R is a real property account

** In many instances, the total Allowed Tax Claim will be offset by amounts previously paid by Debtor.  Accordingly, the total amount due a Taxing Authority may be less than the Revised Tax Amount.

| Creditor Name | | Location No. | Property Type * | Parcel Number | Tax Year | Taxing Authority's Assessed Value | Base Tax Asserted By Taxing Authority | Revised Assessed Value | Revised Tax Amount ** | Basis for Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|
| CITY OF NEW ORLEANS MUN 6 TAX COLLECTOR | (County and State: ORLEANS, LA) | | | | | | | | | |
| | | 1430 | PP | 614114401 | 2004 | 389,110 | $69,215.61 | 139,427 | $24,801.60 | A |
| | | 1430 | PP | 614114401 | 2005 | 379,710 | $65,040.53 | 133,234 | $22,821.64 | A |
| | | 1430 | PP | 614114401 | 2006 | 328,540 | $61,877.22 | 120,117 | $22,622.83 | A |
| | | | | | Tax Subtotals | | $196,133.36 | | $70,246.08 | |

Legend  for Basis for Adjustment Codes:    A = Appraised Asset        M = Market        OK = No adjustment made        S = Sales

Footnotes:     * PP in property type is a personal property account and R is a real property account

** In many instances, the total Allowed Tax Claim will be offset by amounts previously paid by Debtor.  Accordingly, the total amount due a Taxing Authority may be less than the Revised Tax Amount.

| Creditor Name | | Location No. | Property Type * | Parcel Number | Tax Year | Taxing Authority's Assessed Value | Base Tax Asserted By Taxing Authority | Revised Assessed Value | Revised Tax Amount ** | Basis for Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|
| TANGIPAHOA PARISH SHERIFF & TAX COLLECTOR | (County and State: TANGIPAHOA, LA) | | | | | | | | | |
| | | 1537 | PP | 2471507 | 2004 | 242,674 | $16,672.70 | 64,356 | $4,421.51 | A |
| | | 1537 | PP | 2471507 | 2005 | 232,879 | $15,807.84 | 67,507 | $4,582.35 | A |
| | | 1540 | PP | 3508609 | 2004 | 192,756 | $14,014.36 | 49,540 | $3,601.83 | A |
| | | 1540 | PP | 3508609 | 2005 | 176,790 | $12,884.46 | 49,964 | $3,641.41 | A |
| | | HAM.WH | PP | 5366909 | 2004 | 4,748,713 | $326,237.60 | 1,899,208 | $130,475.99 | A |
| | | HAM.WH | PP | 5366909 | 2005 | 5,315,512 | $360,816.97 | 2,348,527 | $159,418.02 | A |
| | | 1449 | PP | 5881501 | 2004 | 228,599 | $15,477.18 | 67,155 | $4,546.67 | A |
| | | 1449 | PP | 5881501 | 2005 | 220,177 | $14,945.62 | 68,798 | $4,670.04 | A |
| | | HAM.MF.DA | PP | 6011705 | 2004 | 340,589 | $23,399.49 | 27,261 | $1,872.90 | A |
| | | HAM.MF.DA | PP | 6011705 | 2005 | 376,571 | $25,562.64 | 28,253 | $1,917.82 | A |
| | | HAM.WH | R | 7H 2082802 | 2004 | 10,252,925 | $711,539.07 | 4,752,746 | $329,834.11 | A |
| | | HAM.WH | R | 7H 2082802 | 2005 | 10,252,925 | $703,046.21 | 4,752,746 | $325,897.27 | A |
| | | | | | **Tax Subtotals** | | **$2,240,404.14** | | **$974,879.92** | |

**Legend  for Basis for Adjustment Codes:**    *A = Appraised Asset*        *M = Market*        *OK = No adjustment made*        *S = Sales*

**Footnotes:**        *** PP in property type is a personal property account and R is a real property account*

              **** In many instances, the total Allowed Tax Claim will be offset by amounts previously paid by Debtor.  Accordingly, the total amount due a Taxing Authority may be less than the Revised Tax Amount.*

| Creditor Name | Location No. | Property Type * | Parcel Number | Tax Year | Taxing Authority's Assessed Value | Base Tax Asserted By Taxing Authority | Revised Assessed Value | Revised Tax Amount** | Basis for Adjustment |
|---|---|---|---|---|---|---|---|---|---|
| TOWN OF AMITE CITY PROPERTY TAX DIVISION    (County and State:  TANGIPAHOA, LA) | | | | | | | | | |
| | 1449 | PP | 05881501 | 2004 | 228,599 | $1,203.93 | 67,155 | $353.67 | A |
| | 1449 | PP | 05881501 | 2005 | 220,177 | $1,159.13 | 68,798 | $361.88 | A |
| | | | | Tax Subtotals | | $2,363.06 | | $715.55 | |

Legend  for Basis for Adjustment Codes:    *A = Appraised Asset*        *M = Market*        *OK = No adjustment made*        *S = Sales*

Footnotes:    * *PP in property type is a personal property account and R is a real property account*

** *In many instances, the total Allowed Tax Claim will be offset by amounts previously paid by Debtor.  Accordingly, the total amount due a Taxing Authority may be less than the Revised Tax Amount.*

**<u>EXHIBIT C</u>**

## *Exhibit C*

7/24/2006

| Jurisdiction | Parcel Number | Property Location | 2006 Market Value | *Basis for Adjustment* |
|---|---|---|---|---|
| CITY OF HAMMOND PROPERTY TAX DIVISION | 02471507 | 2302 W. THOMAS STREET, HAMMOND  LA  70401 | 612,779 | A |
| CITY OF HAMMOND PROPERTY TAX DIVISION | 05366909 | HWY 190 WEST, HAMMOND  LA  70401 | 17,535,002 | A |
| CITY OF HAMMOND PROPERTY TAX DIVISION | 06011705 | 3925 HIGHWAY 190 WEST, HAMMOND  LA  70401 | 1,751,779 | A |
| CITY OF HAMMOND PROPERTY TAX DIVISION | 7H 2082802 | HWY 190 WEST, HAMMOND  LA  70401 | 32,000,000 | A |
| CITY OF PONCHATOULA TAX COLLECTOR | 03508609 | 145 BERRYLAND SHOPPING CENTER, PONCHATOULA  LA  70454 | 522,677 | A |
| TANGIPAHOA PARISH SHERIFF & TAX COLLECTOR | 2471507 | 2302 W. THOMAS STREET, HAMMOND  LA  70401 | 612,779 | A |
| TANGIPAHOA PARISH SHERIFF & TAX COLLECTOR | 3508609 | 145 BERRYLAND SHOPPING CENTER, PONCHATOULA  LA  70454 | 522,677 | A |
| TANGIPAHOA PARISH SHERIFF & TAX COLLECTOR | 5366909 | HWY 190 WEST, HAMMOND  LA  70401 | 17,535,002 | A |
| TANGIPAHOA PARISH SHERIFF & TAX COLLECTOR | 5881501 | 804 W. OAK STREET, AMITE  LA  70422 | 663,807 | A |
| TANGIPAHOA PARISH SHERIFF & TAX COLLECTOR | 6011705 | 3925 HIGHWAY 190 WEST, HAMMOND  LA  70401 | 1,751,779 | A |
| TANGIPAHOA PARISH SHERIFF & TAX COLLECTOR | 7H 2082802 | HWY 190 WEST, HAMMOND  LA  70401 | 32,000,000 | A |
| TOWN OF AMITE CITY PROPERTY TAX DIVISION | 05881501 | 804 W. OAK STREET, AMITE  LA  70422 | 663,807 | A |

**Legend  for Basis for Adjustment Code:**    *A = Appraised Asset*

| Jurisdiction | Parcel Number | Property Location | 2007 Market Value | Basis for Adjustment |
|---|---|---|---|---|
| CITY OF NEW ORLEANS MUN 2 TAX COLLECTOR | 207100120 | 1501 SAINT LOUIS ST., NEW ORLEANS  LA  70112 | 168,395 | A |
| CITY OF NEW ORLEANS MUN 2 TAX COLLECTOR | 207101400 | 500 N. CARROLLTON AVE., NEW ORLEANS  LA  70119 | 6,600 | A |
| CITY OF NEW ORLEANS MUN 3 TAX COLLECTOR | 39P119701 | 3008 HOLIDAY DRIVE, NEW ORLEANS  LA  70131 | 205,730 | A |
| CITY OF NEW ORLEANS MUN 3 TAX COLLECTOR | 39P131218 | 4600 CHEF MENTEUR, NEW ORLEANS  LA  70126 | 206,260 | A |
| CITY OF NEW ORLEANS MUN 3 TAX COLLECTOR | 39P133504 | 9701 CHEF MENTEUR HIGHWAY, NEW ORLEANS  LA  70127 | 266,060 | A |
| CITY OF NEW ORLEANS MUN 3 TAX COLLECTOR | 39P204336 | 7135 BUNDY ROAD, NEW ORLEANS  LA  70127 | 16,225 | A |
| CITY OF NEW ORLEANS MUN 3 TAX COLLECTOR | 39W955316 | 4600 CHEF MENTEUR, NEW ORLEANS  LA  70126 | 6,071,506 | A |
| CITY OF NEW ORLEANS MUN 4 TAX COLLECTOR | 412112504 | 2841 S. CLAIBORNE AVENUE, NEW ORLEANS  LA  70125 | 14,450 | A |
| CITY OF NEW ORLEANS MUN 6 TAX COLLECTOR | 614114401 | 5400 TCHOUPITOULAS, NEW ORLEANS  LA  70115 | 230,130 | A |

**Legend  for Basis for Adjustment Code:**    *A = Appraised Asset*

**EXHIBIT D**

| STATE | BASIS FOR ASSESSMENT | DESCRIPTION |
|-------|---------------------|-------------|
| LA | Fair market value  (Sec. 18(f), Art. VII, 1994 La Const.) | "Fair market value" is the price of property agreed upon between a willing and informed buyer and seller under usual and ordinary circumstances (Sec. 47:2322, La R.S.). |

**<u>EXHIBIT E</u>**

## ATL REVIEW PROCESS.

In reviewing and analyzing the Debtor's tax liabilities, ATL considered the

Debtors' portfolio of tangible taxable property. The Debtor's portfolio consisted of

a number of different real and personal property asset types, including, without

limitation, the following:

i.  Personal Property.  Personal property included the Debtors' associated
equipment for the operation, distribution, manufacturing and transport of the
grocery store facilities.[1]

ii.  Real Property.  Real property included the Debtors' retail grocery stores,
office headquarters facility, warehouses and dairy facilities.

iii.  Inventory.  The Debtors' inventory included inventory utilized in the
preparation and manufacturing of the products developed by the Company as well
as the goods located at and sold in the grocery store facilities.

The Tax Assessments are based upon the Taxing Authorities'

determination of the taxable value of such property.  The appropriate measure of

the taxable value of the Debtors' property is a variation of fair market value analy-

sis.  It is ATL's conclusion that the Taxing Authorities have systematically over-

estimated the taxable value of the Debtors' real and personal property.

Accordingly,  the Taxing Authorities' improper valuation of the Debtors' property

has resulted in impermissible excessive taxation by the Taxing Authorities.

Generally, in determining the fair market value of a property, a taxing

authority should calculate the hypothetical arm's-length transaction price of the

---

[1]    Typically excluded from taxation are intellectual property, software, and other
forms of "intangible" assets.

property if such property were for sale in the open market with a reasonable time for the seller to find a purchaser, where (i) both the seller and purchaser know of all the uses and purposes to which the property is used and adapted, and (ii) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

The analysis on behalf of the Debtors revealed significant misapplication of a fair market value analysis in a number of historical assessments of both real property and business personal property tax accounts, based on several factors, including (i) the value derived from sales of similar assets in recent transactions, (ii) the market values derived from and indicated by independent appraisals of a substantial number of the subject properties and (iii) the sale of assets owned by the Debtors.

After concluding that certain Taxing Authorities improperly determined the taxable value of certain of the Debtors' real and personal property, ATL sought to retrospectively approximate the taxable value of such property as of the date the Tax Assessments were assessed.  As ATL frequently experiences on other restructuring engagements, third-party appraisals of the Debtors' personal and real property as of the Tax Assessment dates were not always readily available.

In this instance, ATL relied on several resources to arrive at a reasonable retrospective approximation of the value of the Debtors' personal and real property, including more recent appraisals, and data from sales prior to and during the Debtors' chapter 11 cases.  Additionally, ATL relied on certain representations

from the Debtors and other third-party appraisers and various other resources to arrive at, in ATL's professional judgment, a reasonable approximation of the value of the Debtors' property as of the date the Tax Assessments were assessed.  The valuations contemplated the definition of value of each of the respective states in which the properties were located as indicated on Exhibit D.

### Personal Property

In reviewing the Tax Assessments, ATL concluded that Taxing Authorities frequently over-appraised the value of the Debtors' personal property (the "Personal Property").  The Personal Property is typically owned by the Debtors and is located at the various warehouse, dairy and grocery store facilities located across the east and southeast portions of the United States.  Based upon appraisal analysis conducted by Appraisal Systems, Inc. ("ASI")[2] of the Personal Property assets, ATL believes that the Taxing Authorities' reliance on depreciation schedules to determine the value of the Debtors' personal property caused the Taxing Authorities to arrive at an inflated assessed value for the Personal Property.  ASI physically inspected a substantial number of the Debtor's facilities and inventoried the assets located at these various properties. ASI's valuation estimates are in some cases close to and in others considerably less than the assessed values derived by the Taxing Authorities.  It is ATL's understanding the Taxing Authorities only accounted for ordinary depreciation.  ATL believes that

---

[2]        ASI was engaged in 2005 to prepare an appraisal of Winn-Dixie Stores, Inc. personal property.

the appraisal conducted by ASI which provided a valuation based on the

respective statutory value definition of each taxing jurisdiction of the Debtors'

personal property assets - can be relied upon to retrospectively approximate the

value of the Personal Property as of the date the Tax Assessments were assessed.

In instances where ATL utilized ASI appraisals to determine the value of

the Personal Property the notation "A" is indicated in the "Basis for Adjustment"

column on Exhibits A and B.

## Real Property

The Debtors sold a number of pieces of real property both during and

prior to the course of the chapter 11 cases.  In addition, the Debtor collected market

data from sales of asset not owned by the Debtor. The asset sales considered

included dairies, warehouses, stores and vacant land. The assets sold by the Debtor

were chosen based on an overall revised business plan, which included reductions

in work force and consolidations and closings of stores, warehouses and dairies.

Such assets were listed for sale with third-party brokerage firms and exposed to the

market for reasonable marketing periods.  Offers for purchase of the real property

were reviewed and the highest possible sales price was achieved in each instance.

The sales prices, both on a price per square foot basis and on a total sales price

basis, were used as valuation tools in arriving at the fair market value of the subject

real property assets.

Asset sales from other non-bankruptcy transactions of similar type property were found, confirmed and compared to the sales of the Debtor's assets during the course of the bankruptcy.

In instances where previous sale prices of real property, both of Debtor assets and non-Debtor assets, were used to adjust the assessed value of the real property and where included, the code "M" is indicated in the "Basis for Adjustment" column on Exhibits A and B.

The Debtor's also engaged third-party appraisers in the valuation of real property. DJM Asset Management, LLC ("DJM") was engaged to assist the Debtor in determining various market indexes for numerous freestanding grocery store locations. DJM used local market resources such as real estate appraisers, brokers and consultants active in the locations of various grocery store locations. DJM collected this information and rated each location with regard to accessibility, ingress-egress, visibility, nearby competition, available local market space for retail type facilities and various other market factors inherent in the valuation of real estate.

From this analysis, DJM first concluded a fair market rent for each location. DJM then used the specific store data together with an analysis of the overall investment market for these types of assets to conclude an appropriate overall rate of return for these specific real estate assets. Local market expertise in the form of real estate brokers and consultants were also utilized in arriving at the

overall capitalization rates. From these market indexes, values were derived for various real property locations.

The Debtors also engaged Cushman and Wakefield to appraise specific locations in preparation of a sale of the assets of the Estate. These valuations considered not only the specific asset appraised, but also other assets of the estate for comparative purposes.

In instances where ATL utilized DJM and Cushman and Wakefield's valuation analysis to determine the value of the grocery store facilities, the notation "A" is indicated in the "Basis for Adjustment" column on Exhibits A and B.

Certain parcels of the Debtors' real property were sold during the Chapter 11 cases. The sales process contemplated by the Debtors considered an aggressive marketing program in which the asset was actively presented to numerous investors and users of such assets. The prices received, in many cases, exceeded initial projections by the Company. The parties entered into an agreement that outlined their respective requirements and each was closed under normal and reasonable transaction costs for such assets. In instances where an adjustment to the assessed value of the real property was pursuant to an actual sale of the subject asset, the code "S" is indicated in the "Basis for Adjustment" column on Exhibits A and B.

**EXHIBIT F**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | ) *Chapter 11* |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER ON DEBTORS' (I) FIFTH OMNIBUS OBJECTION**
**TO TAX CLAIMS AND (II) MOTION REQUESTING**
**DETERMINATION OF TAX VALUES AND LIABILITIES**

This matter having come before the Court under 11 U.S.C. §§ 105, 502, 505 and 506, Fed. R. Bank. P. 3007 and 9014 and Rule 3007-1 on the (i) Debtors' Fifth Omnibus Objection to Tax Claims (the "Objection") and (ii) Motion For Order Determining Tax Liabilities (the "Motion") (Docket No. _____), filed by Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"). [1] The Court has reviewed the Motion and the Objection and has considered the representations of counsel. Based upon the representations of counsel and without objection by the United States Trustee or any other interested parties, the Court makes the following findings of fact:

A.    This Court has jurisdiction over the Motion and Objection under 28 U.S.C. §§ 157 and 1334 and this is a core proceeding under 28 U.S.C. §157(b)(2).

B.    The Tax Claims listed on the attached Exhibit A are based on improper assessments and therefore are asserted in improper amounts.

C.    The adjustments to the Taxing Authorities' assessed values are appropriate for the reasons set forth in the Motion and Objection

---

[1] Unless otherwise defined, capitalized terms used in this Order have the same meaning ascribed to them in the Motion and the Objection.

D.     The amounts indicated in the "Revised Assessed Value" column on the attached Exhibits A and B reflect the correct taxable values for the properties identified on the Exhibits.

E.     The values indicated in the "Independent Appraiser's Market Values" column on the attached Exhibit C reflect the appropriate market value basis for computing assessed values for tax year (s) 2006 and/or 2007 for the property in question.

F.     The statutory interest rates imposed by the Taxing Authorities identified on the attached Exhibits A and B incorporate a penalty element and, therefore, should not be used in calculating the accrued interest on Tax Claims and other tax liabilities which are secured and entitled to interest.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted and the Objection is sustained.

2.     The tax values for the properties listed on Exhibit A and Exhibit B to this Order in the column titled "Revised Assessed Value" are correct and the Taxing Authorities are directed to use such tax values to compute the Debtors' tax liabilities for the 2004 and 2005 tax years.

3.     The Revised Tax Amounts listed on the attached Exhibits A and B are the correct amount of tax liabilities owed by the Debtors to the Taxing Authorities identified on such Exhibits.

4.     Tax Claims identified on Exhibit A are reduced and allowed in the amount reflected as the Revised Tax Amount.

5.     The "Independent Appraiser's Market Values" amounts listed on the attached Exhibit C are the appropriate valuation basis for which the Taxing Authorities are to compute assessed values and corresponding taxes for tax year(s) 2006 and/or 2007.

2

6.      Where applicable, pursuant to Section 506(b), the interest rate on Revised Tax Amount identified on the attached Exhibits A and B will be calculated using the Adjusted Rate of 6% per annum.

7.      Debtors is authorized to offset any excess amount paid against the Debtors' liability on other accounts within the same jurisdiction and for the same or other tax years, where these determinations result in the Debtors' net tax liability being less that what the Debtors have already paid the Tax Collectors for a particular account.

8.      Upon payment of the allowed tax claims and revised tax amounts as set forth on Exhibits A and B, respectively, any liens relating to the Debtors' secured tax liabilities addressed in this Objection and Motion are extinguished.  The Debtors' are authorized to file any documents necessary with the appropriate governmental body to reflect the release of such liens.

9.      This Order is without prejudice to the Debtors' right to object to any proof of claim filed by any Taxing Authorities in these Chapter 11 cases on any further or separate grounds.

10.     This Court retains jurisdiction over the Debtors and the Taxing Authorities whose Tax Claims and Liabilities are subject to the Motion and Objection with respect to any matters related to or arising from implementation of this Order.

Dated this _____ day of August, 2006 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge