IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,    Case No. 05-03817-3F1
                                     Chapter 11
        Debtors                      Jointly Administered
_____/

### UNITED STATES' OBJECTION TO DISCLOSURE STATEMENT

The United States, on behalf of the Internal Revenue Service, hereby objects to the Disclosure Statement With Respect To Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors ("disclosure statement"). As more fully set forth below, the disclosure statement does not contain adequate information to allow the IRS to make an informed judgment about the plan.

The Internal Revenue Service is a creditor of Winn-Dixie Stores, Inc. and 22 of its affiliated debtors ("the debtors"). The IRS claims range from approximately $82 to $84 million.[1] The IRS holds a secured claim, priority unsecured claim, and general unsecured claim against each of the debtors.[2]

---

[1]The majority of the IRS claims, approximately $81.8 million, arise from Winn-Dixie Stores, Inc.'s consolidated federal income tax liabilities. The 23 entities that are included on Winn-Dixie's consolidated federal income tax return are jointly and severally liable for those tax liabilities. Certain debtors also have liabilities for federal employment and/or excise taxes.

[2]The IRS holds an priority tax claim that is unclassified under the plan, a secured tax claim that is in Class 10 under the plan, and a general unsecured claim, the classification of which is unclear.

1822196.1

**I.     Standards for Disclosure Statement**

Section 1125 of the Bankruptcy Code requires that a disclosure statement contain adequate information.  Adequate information is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holder of claims or interests of the relevant class to make an informed judgment about the plan . . .

The adequacy of a disclosure statement is made on a case-by-case basis.  Several courts have utilized a non-exhaustive list of information that should be included in a disclosure statement:

1. The circumstances that gave rise to the filing of the bankruptcy petition;

2. A complete description of the available assets and their value;

3. The anticipated future of the debtor;

4. The source of the information provided in the disclosure statement;

5. A disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

6. The condition and performance of the debtor while in Chapter 11;

7. Information regarding claims against the estate;

8. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

9. The accounting and valuation methods used to produce the financial information in the disclosure statement;

10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

11. A summary of the plan of reorganization;

12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

13. The collectibility of any accounts receivable;

14. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

15. Information relevant to the risks being taken by the creditors and interest holders;

16. The actual or projected value that can be obtained from avoidable transfers;

17. The existence, likelihood and possible success of non-bankruptcy litigation;

18. The tax consequences of the plan;  and

19. The relationship of the debtor with affiliates.

*See e.g., Collier on Bankruptcy* ¶ 1125.02 (15th ed. rev. 2006); *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 171 (Bankr. S.D. Ohio 1988).  Further, the disclosure statement should contain factual support for any opinions stated therein.  *In re East Redley Corp.*, 16 B.R. 429, 430 (Bankr. E.D. Pa. 1982).

In addition, the debtors in these cases are seeking to substantively consolidate their estates, for distribution purposes, through their proposed plan.  Accordingly, the disclosure statement should include sufficient information to evaluate the proposed consolidation. Information required in a disclosure statement should be provided, not only on a consolidated

basis, but on an individual debtor-by-debtor basis to the extent necessary for creditors to determine if substantive consolidation is in the creditors' best interest.

## II.     The Disclosure Statement is not adequate.

In this case, the IRS does not have adequate information to determine whether it should object to certain provisions of the plan and the subsumed motion to approve the substantive consolidation compromise. The disclosure statement is deficient in a number of the areas set forth above, including the following:

- Complete description of assets and value
- Condition and performance of debtors while in Chapter 11
- Accounting and valuation methods used to produce the financial information in disclosure statement

In addition, the IRS cannot definitively determine the classification of its general unsecured claim based upon the disclosure statement.

### A.     *The disclosure statement does not contain a complete description of assets and value.*

As several courts have noted, a description of available assets and their value is a "vital element of necessary disclosure." *In re Ligon*, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985); *In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984). The debtors' disclosure statement contains virtually no information regarding available assets, and has no information regarding the value of those assets.

In the "Summary of Assets" (Disclosure Statement at p. 31), the debtors state that the Schedules filed with the Bankruptcy Court detail the assets owned by each debtor. But the debtors admit that the schedules list the value of these assets on a net book basis, which does not reflect actual value. The debtors also refer to their filings with the SEC, but those filings would

also reflect the value of assets on a book basis.  Further, the financial statements submitted with the SEC filings only disclose information about the debtors on a consolidated basis (including non-debtors) and do not contain any breakdown of the individual debtor's assets.  The disclosure statement contains no information regarding the actual value of the debtors' remaining assets.

A related concern is the lack of information regarding avoidable transfers and potential recovery in other litigation, including non-bankruptcy litigation, ("litigation rights") that could generate funds for the estates.  The disclosure statement generally describes some litigation rights, but gives no information regarding potential recovery.  Further, it states that the debtors may have additional claims, but fails to identify those potential litigation rights.  The disclosure statement lacks sufficient detail regarding the litigation rights.  *See In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567, 570-71 (Bankr. N.D. Ga. 1984)(debtor should discuss the amount of preferences in approximate terms and set forth what steps have been taken toward settling or litigating those claims); *In re Cardinal Congregate I*, 121 B.R. 760, 767 (Bankr. S.D. Ohio 1990).

B.   *The disclosure statement does not contain information regarding the condition and performance of the debtors while in bankruptcy.*

The disclosure statement contains no information regarding the condition and performance of the debtors while in bankruptcy.  While the debtors have filed monthly operating reports, "[i]t is not enough that the Disclosure Statement refers its reader to the monthly operating reports filed by the debtor with this Court; the Disclosure Statement should contain a detailed textual description of the debtor's postpetition performance." *In re Cardinal Congregate I*, 121 B.R. 760, 767 (Bankr. S.D. Ohio 1990).

**C.     *The disclosure statement does not set forth the methods or underlying data used to produce the financial information contained in the disclosure statement.***

The disclosure statement makes financial projections covering the operations of the reorganized debtors through 2011. The disclosure statement clearly states that the projections were not prepared in accordance with the standards for making projections set by the American Institute of Certified Public Accountants or in accordance with SEC guidelines regarding projections (Disclosure Statement at p. 89). But the disclosure statement contains no information regarding what methods or underlying data were used to make those projections. *See In re Cardinal Congregate I*, 121 B.R. 760, 767 (Bankr. S.D. Ohio 1990)(information regarding accounting methods used to prepare financial exhibits must be included in disclosure statement). Without this information, it is difficult to evaluate the projections.

Likewise, the liquidation analysis contains virtually no information. The disclosure statement includes a summary chart, and states that the analysis contains estimates of the net proceeds that would be received from a forced sale of assets as well as estimates of the amount of allowed claims. But the disclosure statement contains no information regarding how the debtors arrived at these estimates. The debtors' projections of the forced sale value of the assets is not provided on even a cumulative basis, much less on an individual asset basis. With respect to the estimate of allowed claims, no information is provided regarding the standards utilized by the debtors to predict which claims would be allowed.

**D.     *The IRS cannot determine the classification of its general unsecured claim because the disclosure statement contains unclear and overlapping definitions of classes.***

The IRS has asserted general unsecured claims against 23 of the debtors, in amounts ranging from approximately $10.1 to $11.3 million. These claims are generally penalties,

although the IRS also has a general unsecured claim against one debtor, Winn-Dixie Logistics, for a highway vehicle tax.

The disclosure statement and proposed plan contain definitions of two unsecured classes to which the IRS general unsecured claim may belong. Class 16, "Other Unsecured Claims" is defined as "an Unsecured Claim in an amount greater than $3,000, other than a Noteholder Claim, a Landlord Claim, a Vendor/Supplier Claim, or a Retirement Plan Claim." (Disclosure Statement at p. 12). The IRS general unsecured claim would appear to fall within this category because it is an unsecured claim in an amount greater than $3,000 and it does not fall within the definitions of the other named categories.

But at page 65 of the disclosure statement the debtors include the statement that, with respect to Class 20, "Non-Compensatory Damages Claims", that "Certain taxing authorities have asserted Claims for penalties that may constitute Non-Compensatory Damages Claims. In particular, the IRS has asserted a penalty of approximately $10 million." Class 20 is defined as:

> any Claim for any fine, penalty, or forfeiture, or multiple, exemplary, or punitive damages, to the extent such fine, penalty, forfeiture, or damage is not compensation for actual pecuniary loss suffered by the holder of such Claim, including any such claim based upon, arising from, or relating to any cause of action whatsoever (including, without limitation, violation of law, personal injury, or wrongful death . . .). However, Non-Compensatory Damages Claims do not include any Claim that might otherwise constitute a Non-Compensatory Damages Claim but for a Final Order allowing such Claim as an Administrative Claim, Priority Tax Claim, Other Priority Claim, Convenience Claim, Other Secured Claim, Unsecured Claim, or Subordinated Claim.

The IRS general unsecured claim does not appear to fall within this category because it is not a claim based upon, arising from, or relating to any cause of action. Even if the IRS claim could be construed to fall within the initial definition of Class 20, the class is then further defined to exclude any such claim to the extent it is allowed as a claim in a different category. This

definition is not clear, and raises numerous questions regarding whether a particular claim falls within that class.

The statements in the disclosure statement that the debtors believe the IRS general unsecured claim may fall within Class 20 appears to conflict with the definition of that Class and with the definition of Class 16. Because these classes are treated differently, the IRS needs clarification as to how the plan will classify its general unsecured claim.

### E.     *The disclosure statement does not contain adequate information to evaluate the proposed substantive consolidation.*

According to the disclosure statement, the debtors are proposing, through their proposed plan, a compromise to an anticipated dispute over whether to substantively consolidate the debtors' bankruptcy cases. The disclosure statement identifies many of the issues associated with substantive consolidations and contains a brief discussion of certain legal theories related to consolidation. The disclosure statement indicates that the Creditor's Committee reviewed the issue of substantive consolidation and ultimately determined, along with the debtors and "major creditor constituencies", that compromising the substantive consolidation issue was in the best interests of the debtors' estates.

The IRS is in the unique position of holding a joint and several claim, currently in excess of $81 million, against 23 of the debtors. Despite this fact, the IRS was not involved in the settlement negotiations, and was unaware that substantive consolidation was being considered until the Ad Hoc Trade Committee filed its motion to consolidate. Accordingly, the IRS has not seen or reviewed any of the information relied upon by the parties to the proposed settlement. The IRS requested that the debtors provide it the information submitted by the Ad Hoc Trade

Committee in support of its motion to consolidate, but the debtors failed to provide that information to the IRS.

The disclosure statement contains some summary information regarding what various classes of unsecured creditors would receive under the compromise, and the liquidation analysis also compares generally the recovery for those classes in a consolidated case versus deconsolidated cases. But nowhere does the disclosure statement contain any analysis of those unsecured claims that are not included in the noteholder, landlord, vendor/supplier, retirement plan, or other classes. Assuming that the debtors are not treating the IRS general unsecured claim as an "Other Unsecured" claim, then the disclosure statement provides no information to the IRS regarding what it would receive if the separate cases are maintained. Without this information, the IRS cannot determine if the substantive consolidation compromise is in its best interests.

### F.    *The information sought is reasonable under the circumstances.*

The debtors in these cases are large, sophisticated corporations, presumably with well-maintained books and records. The estates are spending millions of dollars on consultants and presumably have all of the information necessary to produce an adequate disclosure statement. For example, the disclosure statement indicates that the debtors' restructuring advisor, XRoads, prepared the liquidation analysis. XRoads would have necessarily drawn conclusions regarding the liquidation value of the debtors' assets, yet the disclosure statement does not provide any information regarding the conclusions or the methods and underlying facts used to reach those conclusions.

**Conclusion**

Without the information discussed, the IRS cannot make adequate judgments about the plan including whether the substantive consolidation compromise is in its best interest, whether the IRS would receive as much under the plan as it would in a Chapter 7 liquidation, and whether the plan appears feasible. Accordingly, the disclosure statement is not adequate, and should be amended to include sufficient information to enable the IRS to make informed judgments regarding the proposed plan, including the substantive consolidation.

PAUL I. PEREZ
United States Attorney

  s/ Deborah M. Morris
Deborah M. Morris
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-1758
Facsimile: (202) 514-9868
Email: Deborah.M.Morris@usdoj.gov

CERTIFICATE OF SERVICE

    IT IS HEREBY CERTIFIED that on July 25, 2006, the United States' Objection to Disclosure Statement was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the parties requesting service, and was further served on the following parties, via United States mail, postage prepaid, this 25th day of July 2006:

> Skadden Arps Slate Meagher & Flom, LLP
> Four Times Square
> New York, New York
>     Attn:   Rosalie Walker Gray
> (also via facsimile to 917-777-3214
> and email to rgray@skadden.com)
>
> Smith Hulsey & Busey
> 1800 Wachovia Tower
> 225 Water Street, Suite 1800
> Jacksonville, FL 32202
>     Attn:   Cynthia Jackson
> (also via facsimile to 904-359-7708
> and email to cjackson@smithhulsey.com)
>
> Office of the United States Trustee
> 135 W. Central Boulevard, Suite 620
> Orlando, FL 32801
>     Attn: Elena Escamilla
> (also via facsimile to 407-648-6323)
>
> Matthew Barr
> Milbank, Tweed, Hadley & McCloy
> 1 Chase Manhattan Plaza
> New York, NY 10005
> (also via facsimile to 212-822-5194
> and via email to mbarr@milbank.com)
>
>
>     /s/ Deborah M. Morris
> Trial Attorney, Tax Division
> U.S. Department of Justice
> Post Office Box 14198
> Ben Franklin Station
> Washington, D.C.  20044