UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| IN RE: ) | Case No. 05-03817 |
| ) | (Jointly Administered) |
| WINN-DIXIE STORES, INC., et al. ) | |
| ) | Chapter 11 |
| Debtors. ) | |

**LIMITED OBJECTION OF THE ACE COMPANIES TO DEBTORS' DISCLOSURE STATEMENT WITH RESPECT TO JOINT PLAN OF REORGANIZATION OF WINN-DIXIE STORES, INC. AND AFFILIATED DEBTORS**

ACE American Insurance Company ("ACE American"), Indemnity Insurance Company of North America ("IICNA"), Illinois Union Insurance Company ("IUIC", collectively with ACE American and IICNA and each of their respective affiliates, the "ACE Companies"), by its undersigned counsel, files this Limited Objection (the "Objection") to Debtors' Disclosure Statement With Respect To Joint Plan Of Reorganization Of Winn-Dixie Stores, Inc. And Affiliated Debtors.

## BACKGROUND

1.   On February 21, 2005 (the "Petition Date"), Winn-Dixie Stores, Inc. ("Winn-Dixie") and twenty-three of its subsidiaries and affiliates (collectively with Winn-Dixie, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "New York Court").

2.   On or about April 13, 2005, the New York Court transferred venue of the Debtors' cases to the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court").

3.   The Debtors' cases are being jointly administered.

DM3\381788.1

4. Upon information and belief, the Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5. On or about June 29, 2006, the Debtors filed the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan").

6. On or about June 29, 2006, the Debtors filed the Disclosure Statement With Respect to the Plan (the "Disclosure Statement").

## THE ACE INSURANCE PROGRAM

7. The ACE Companies have issued insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to certain of the Debtors, as the named insureds; and the ACE Companies and the Debtors have entered into various agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, including any exhibit or addenda thereto, the "Insurance Agreements").

8. Pursuant to the Policies and the Insurance Agreements (collectively, the "ACE Insurance Program"): the ACE Companies provide insurance coverage for Winn-Dixie and the other insureds under and subject to the terms of the Policies, for specified policy periods, for general liability (including product liability), workers' compensation, automobile liability, and other casualty and/or risk policies; and the insureds under the Policies are required to pay and reimburse the ACE Companies for certain obligations, all as more particularly described in the Policies and the Insurance Agreements.

## LIMITED OBJECTION

9. The ACE Companies object to the Disclosure Statement because it lacks adequate information that would enable the ACE Companies, as creditors, to understand and assess the Plan and its impact on their interests, as required by § 1125 of the Bankruptcy Code.

**A. The ACE Companies' Are Not Able To Determine How Their Claims And The ACE Insurance Program Will Be Treated.**

10. Section VI.F.10 of the Disclosure Statement[1] provides for the treatment of insurance policies, generally, as follows:

> The Plan further provides that, to the extent any insurance policy under which the insurer has a continuing obligation to pay the Debtors or a third party on behalf of the Debtors is held to be an executory contract and is not otherwise assumed in accordance with Section 7.3 of the Plan, such insurance policy will be treated as though it is an executory contract that is assumed pursuant to Section 365 of the Bankruptcy Code under the Plan.

11. The ACE Insurance Program includes not only Policies but also Insurance Agreements.

12. "It is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*.'" *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted). *See also In re Aneco Elec. Constr.*, 326 B.R. 197 (Bankr. M.D. Fla. 2005); *In re Morande Enters.*, 335 B.R. 188 (Bankr. M.D. Fla. 2005); *In re Harry C. Partridge, Jr. & Sons, Inc.*, 43 B.R. 669, 673 (Bankr. S.D.N.Y. 1984)

13. The Policies and the Insurance Agreements must be read, interpreted and enforced together. Accordingly, the ACE Insurance Program must be assumed in its entirety. *See Aneco*, 326 B.R. at 202.

---

[1] See also Section 7.10(d) of the Plan.

14. Further, the ACE Insurance Program must be assumed pursuant to § 365 of the Bankruptcy Code not just "deemed assumed" as proposed by the Plan. Specifically, the Debtors must comply with § 365 which requires that the Debtors: (a) cure any defaults, (b) compensate the ACE Companies for any actual pecuniary loss resulting from any defaults, and (c) provide adequate assurance of future performance (collectively, the "Assumption Requirements").

15. Accordingly, the Plan and Disclosure Statement should be modified to expressly provide that: (a) on or before the Effective Date, the Debtors shall satisfy the Assumption Requirements for all Policies and Insurance Agreements; (b) as of the Effective Date, the ACE Insurance Program shall be assumed in its entirety; and (c) the ACE Companies are specifically excepted from any requirement to file an application or motion for payment of an Administrative Claim[2] as the ACE Companies' claims arising under the Policies and Insurance Agreements are Allowed Administrative Claims incurred in and to be paid in the ordinary course of business.

**B.   The Disclosure Statement Should Be Revised To Adequately Describe The Parties' Rights and Obligations Under The ACE Insurance Program.**

16. Section VI.D.3 of the Disclosure Statement[3] provides that "nothing in Section 4.5 of the Plan is intended to, will or will be deemed to preclude any holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors in addition to any distribution such holder may receive under the Plan; *provided, however*, that the Debtors do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled."

17. The Disclosure Statement and Plan also should clarify that nothing in the Plan (i) precludes or limits, in any way, the rights of the insurers to contest and/or litigate with any party, including the Debtors, the existence, primacy and/or scope of available coverage under any alleged applicable policy; (ii) permits the holder of an Allowed Insured Claim to recover the

---

[2]   Terms not defined herein shall have the meaning attributed to them in the Plan.
[3]   See Section 4.5 of the Plan.

DM3\381788.1                                             4

same amounts from the insurers and the Debtors; or (iii) in any way, alters the ACE Companies' rights and obligations under the ACE Insurance Program or modifies the coverage provided thereunder.

18. The Plan provides that as a result of the Substantive Consolidation Compromise, and only for purposes of distributions under the Plan, *inter alia*, (i) the separate Chapter 11 Cases will be consolidated; (ii) all property of the Estate of each Debtor will be deemed to be property of the consolidated Estates; and (iii) all Claims against each Estate will be deemed to be Claims against the consolidated Estates; but that, the Plan will not result in the merger or otherwise affect the separate legal existence of each Debtor.

19. However, the Disclosure Statement fails to specify whether or to what extent the Substantive Consolidation Compromise may affect the Debtors' and Reorganized Debtors' obligations under the Policies or the Insurance Agreements. Specifically, the Disclosure Statement and the Plan do not provide that in regard to obligations where more than one Debtor or Reorganized Debtor is jointly and severally liable with another, those particular Debtors and Reorganized Debtors will continue, after the Effective Date, to remain jointly and severally liable.

20. The Disclosure Statement and Plan provide that the Debtors or Reorganized Debtors will retain and may enforce, sue on, settle or compromise all Litigation Rights, which are defined as all claims, rights of action, suits or proceedings, whether in law or equity, whether known or unknown, that the Debtors or their Estates may hold against any Person and which specifically include a coverage action against one of the Company's insurers. The Disclosure Statement and Plan also provide that the Bankruptcy Court will retain exclusive jurisdiction over contested or litigated matters arising out of, under or related to Litigation Rights.

21. Pursuant to § 365 of the Bankruptcy Code, the Debtors must assume the Policies and Insurance Agreements as they exist. The Debtors cannot expand their rights or modify their

obligations through assumption of the ACE Insurance Program. In other words, the terms and conditions of the Policies and Insurance Agreements must govern the relationship between the Reorganized Debtors and the ACE Companies including, but not limited to, (i) the rights of the ACE Companies thereunder, (ii) the respective liabilities of the Reorganized Debtors thereunder, and (iii) resolution of coverage issues arising thereunder.

22.     Accordingly, the Disclosure Statement and Plan should specifically provide that notwithstanding anything to the contrary, nothing in the Plan or Confirmation Order shall be construed as (i) altering or modifying any of the terms and conditions set forth in the Policies and Insurance Agreements or (ii) discharging, releasing or relieving the Debtors or the Debtors' successors from any liability under the Policies and Insurance Agreements.

**C.     Conclusion**

23.     The ACE Companies request that the following be added to the Disclosure Statement and Plan: "Notwithstanding anything in the Plan, Disclosure Statement or Confirmation Order to the contrary, as of the Effective Date, the Reorganized Debtors shall assume all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto that have been issued or entered into by ACE American Insurance Company, Indemnity Insurance Company of North America, Illinois Union Insurance Company (collectively, the "ACE Companies") to or with one or more of the Debtors, their respective predecessors and/or affiliates (collectively, the "ACE Insurance Program"); and in furtherance of the Debtors' assumption of the ACE Insurance Program, the Debtors shall on or before the Effective Date: (i) cure all defaults, if any (the "Cure Claim") under the ACE Insurance Program, (ii) compensate the ACE Companies for any actual pecuniary loss resulting from such defaults, and (iii) provide adequate assurance of future performance under the ACE Insurance Program. Any and all claims of the ACE Companies arising under or related to the ACE Insurance Program, including, but not limited to, the Cure Claim: (i) shall not be discharged, (ii) shall be

Allowed Administrative Claims, and (iii) shall be paid in full in the ordinary course of business of the Reorganized Debtors as set forth in Section 4.1(a) of the Plan (except for the Cure Claim which shall be paid in full on or before the Effective Date). Further, notwithstanding anything to the contrary, nothing in the Plan or Confirmation Order shall be construed as: (i) altering or modifying any of the terms and conditions set forth in the Policies and Insurance Agreements; or (ii) discharging, releasing or relieving the Debtors or their respective successors from any liability under the ACE Insurance Program."

WHEREFORE, for the foregoing reasons, the ACE Companies respectfully request that this Court direct the Debtors to modify the Disclosure Statement, as provided herein, and otherwise grant such relief as the Court deems appropriate

Dated: July 25, 2006

DUANE MORRIS LLP

By: /s/ Wendy M. Simkulak
Paul L. Orshan, Esquire
Florida Bar No. 776203
plorshan@duanemorris.com
200 S. Biscayne Blvd.
Suite 3400
Miami, FL 33131
Telephone: 305.960.2200
Facsimile: 305.960.2201

AND

Margery N. Reed, Esquire
Wendy M. Simkulak, Esquire
mreed@duanemorris.com
wmsimkulak@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1518/1547
Facsimile: (215) 979-1020

Counsel for The ACE Companies