**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

---------------------------------------------------- x
                        :

In re:                      :     **Case No. 05-03817-3F1**
                        :

**WINN-DIXIE STORES, INC., et al.,**  :     **Chapter 11**
                        :

        **Debtors.**        :     **(Jointly Administered)**
                        :

                        :     **Obj. Deadline: July 25, 2005 @ 4:00 p.m.**
                        :     **Hearing Date: August 4, 2005 @ 9:30 a.m.**
                        :
---------------------------------------------------- x

**LIMITED OBJECTION OF THE PRUDENTIAL INSURANCE COMPANY OF**
**AMERICA TO THE DISCLOSURE STATEMENT WITH RESPECT TO THE JOINT**
**PLAN OF REORGANIZATION OF WINN-DIXIE, INC. AND AFFILIATED DEBTORS**

The Prudential Insurance Company of America (the "Landlord") hereby submits this

Limited Objection (the "Limited Objection") to the Disclosure Statement With Respect To The

Joint Plan Of Reorganization Of Winn-Dixie, Inc. And Affiliated Debtors (the "Disclosure

Statement"), and respectfully represents as follows:

### I.    **INTRODUCTION**

Landlord does not oppose Debtors' reorganization efforts. In fact, Landlord is in favor of

an expeditious resolution of this case through a successful reorganization. The Disclosure

Statement, however, fails to disclose adequate information concerning the assumption of the

Debtors' leases and the full payment of cure. It also describes a plan that improperly seeks

authority to reject nonresidential real property leases after the voting deadline, potentially

impacting Landlord's recovery of cures and disenfranchising Landlord from the voting process.

– 1 –

## II.    BACKGROUND FACTS

1.    Winn-Dixie Stores, Inc. and certain affiliated parties (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code on February 21, 2005. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[1]

2.    Landlord is the owner or managing agent of the following three (3) shopping centers wherein Debtors remain tenants at retail locations (the "Premises") pursuant to unexpired leases of nonresidential real property (the "Leases").

| The Prudential Insurance Company of America | |
|---|---|
| St. John's Commons | Jacksonville, FL |
| Park View Square | Miramar, FL |
| Lake City Shopping Center | Lake City, FL |

3.    The Leases are "leases of real property in a shopping center" as that term is used in 11 U.S.C. § 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3rd Cir. 1990).

4.    On or about June 29, 2006, the Debtors filed the Disclosure Statement, and simultaneously filed the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan").

## III.    ARGUMENT

5.    Section 1125 requires that a disclosure statement contain "adequate information." 11 U.S.C. § 1125(a). Disclosure is the "pivotal" concept in chapter 11 reorganization. Westland Oil Development Corp. v. MCorp Management, 157 B.R. 100, 102 (Bankr. S.D. Tex., 1993);

---

[1] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

-2–

*citing* 5 Collier on Bankruptcy, ¶ 1125.03 (15th ed. 1992). The purpose behind the disclosure requirement is to prevent a debtor from seeking acceptance of its reorganization plan until it provides its creditors and other parties-in-interest with a disclosure statement that contains "adequate information" about the details of the debtor's plan and its prospects of success. 11 U.S.C. § 1125(b).

6.    Section 1125(a)(1) defines adequate information as "[i]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. . ." 11 U.S.C. § 1125(a)(1). The disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders could rely in making an informed judgment about a plan of reorganization. In re Scioto Valley Mortgage Co., 88 B.R. 168 (Bankr. S.D. Ohio 1988).

7.    Relevant factors in evaluating the adequacy of a disclosure statement include:

- the events which led to the filing of the bankruptcy petition;
- a description of the available assets and their value;
- the anticipated future of the company;
- the source of the information contained in the disclosure statement;
- a disclaimer;
- the present condition of the Debtors while in Chapter 11;
- the scheduled claims;
- the estimated return to creditors in a Chapter 7 liquidation;
- the accounting method utilized to produce financial information and the name of the accountants responsible for such information;
- the future management of the debtor;
- the Chapter 11 plan or a summary thereof;
- the estimated administrative expenses, including attorneys' and accountants' fees;
- the collectibility of accounts receivable;
- financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;
- information relevant to the risks posed to creditors under the plan;
- the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
- litigation likely to arise in a nonbankruptcy context;

- tax attributes of the debtor; and
- the relationship of the Debtors with affiliates.

In re Metrocraft Publishing Services, Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

8      The Disclosure Statement, as drafted, does not provide sufficient information for creditors to make an informed decision on the Plan or reorganization prospects, and does not satisfy Section 1125.

**A.      The Disclosure Statement and Plan do not provide adequate information on the disposition of Leases and the payment of cure claims.**

9.      The Disclosure Statement does not specify which of the Leases will be assumed. Although the Leases are included in the Debtors' Omnibus Motion For Order To (I) Assume Non-Residential Real Property Leases, (II) Fix Cure Amounts, And (III) Grant Related Relief (the "Assumption Motion"), the Disclosure Statement states that the Debtors will have the ability to reject any leases through the Effective Date[2] of the Plan. The disclosure of whether the Debtors intend to assume or reject their leases is critical to a landlord with an unexpired lease with the Debtors, and without it, it is not possible for Landlord to determine the impact of the Plan on its shopping centers.

10      Additionally, the Disclosure Statement does not adequately discuss the cure of outstanding obligations on Leases to be assumed. The Debtors must cure, or provide adequate assurances that they will promptly cure, outstanding lease obligations upon assumption. *See* 11 U.S.C. § 365(b)(1)(A). This requires the Debtors to compensate, or provide adequate assurances that they will promptly compensate, Landlord for any actual pecuniary loss resulting from any lease defaults. See 11 U.S.C. § 365(b)(1)(B). The "full benefit of the bargain" principle requires payment of all obligations under the Leases. In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted). The Debtors do not disclose that all such payments, including rent, attorney fees and costs[3] and interest,[4] will be paid as part of any

---

[2] Terms not otherwise defined herein shall have the meanings attributed to them in the Disclosure Statement and Plan.

[3] Attorney fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease must be paid as a condition of assumption of the lease. In re Entertainment, Inc., 223 B.R. at 152 (citation omitted).

cure. Landlord needs to know the amounts that Debtors propose to pay in connection with the assumption of the Leases so that they can adequately protect their rights to receive timely payment of all amounts due under the Lease. Landlord previously set forth its objection to the cure amounts proposed by Debtors in the Assumption Motion through its filing of the Limited Objection Of The Prudential Insurance Company Of America To The Debtors' Omnibus Motion For An Order To (I) Assume Non-Residential Real Property Leases, (II) Fix Cure Amounts, And (III) Grant Related Relief (the "Assumption Objection"). To date, the Landlord has received no response to the cure amounts set forth in the Assumption Objection, and Landlord reserves the right to supplement such amounts as and when necessary.

11. Debtors also need to adequately address the issue of unbilled year-end reconciliation payments. By way of example, the Debtors occupy space at shopping centers pursuant to (in certain circumstances) triple-net leases, where they typically pay rent and related lease charges in advance for each month. The Debtors may pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, and the like. Certain charges, such as CAM and property taxes, are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred by the property. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred by the center, the result is an additional amount (or debit) for which the tenant is liable. Year-end reconciliations and adjustments for the Debtors for 2005, and certainly for 2006, will likely not be completed prior to confirmation of the Plan for many locations. In other instances, certain

See also, Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the Debtors' other obligations that arise post petition  .")

[4] Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition to assumption of the Leases. See In re Skylark Travel, Inc., 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990).

-5-

charges (such as property taxes) may be paid in arrears or only billed annually. If the Leases are assumed (or assumed and assigned), the Debtors (or any assignee) must also assume all unbilled obligations under the Leases to fully compensate the Landlord.

12      The Disclosure Statement does not protect the Landlord's right to such payment because it describes a plan that seeks to release the Debtors from any claim or cause of action existing as of the Effective Date. Any attempt to limit the liability of either the Debtors, or a proposed assignee for any such charges, is contrary to the principles underlying Section 365, and cannot be allowed. The Disclosure Statement and Plan should specifically recognize the ongoing obligation to pay such year-end reconciliations and adjustments.

**B.      The Disclosure Statement describes a Plan that is potentially unconfirmable.**

13.      A bankruptcy court may address confirmability issues in advance of a hearing on confirmation, and should not approve a disclosure statement where the plan violates applicable provisions of the Bankruptcy Code and is unconfirmable on its face. *See, e g* , In re Pecht, 57 B.R. 137, 139 (Bankr. E.D. Va. 1985) ("If, on the face of the plan, the plan could not be confirmed, then the court will not subject the estate to the expense of soliciting votes and seeking confirmation "); In re Century Inv. Fund VIII Ltd. Partnership, 114 B.R. 1003 (Bankr. E.D. Wis. 1990); In re Beyond.com Corporation, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003); In re Main Street AC, Inc., 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999); In re Felicity Associates, Inc., 197 B.R. 12, 14 (Bankr. D. R.I. 1996). In this case, the Disclosure Statement describes a Plan that is potentially unconfirmable because it is contrary to the Bankruptcy Code in several respects.

*i.      The Disclosure Statement and Plan improperly seek authority to assume or reject leases beyond the confirmation date of the Plan.*

14.      Section VI.F.4 of the Disclosure Statement provides that the Debtors reserve the right to assume any unexpired lease at any time prior to the Effective Date of the Plan. Therefore, the Debtors may amend the schedule of leases to be assumed after the voting deadline, and beyond the confirmation of the Plan.

- 6 -

15.    In addition, the Disclosure Statement at Section VI.F.4. includes the following language that potentially prejudices Landlord:

> If there is a dispute regarding: (a) the nature or amount of any Cure; (b) the ability of any Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, Cure will occur following the entry of a Final Order by the Bankruptcy Court resolving the dispute and approving the assumption and assignment, as the case may be; provided, however, that the Reorganized Debtors will be authorized to reject any executory contract or unexpired lease to the extent the Reorganized Debtors, in the exercise of their sound business judgment, conclude that the amount of the Cure obligation, as determined by such Final Order, renders assumption of such executory contract or unexpired lease unfavorable to the Reorganized Debtors.

16.    While assumption of a debtor's unexpired leases of nonresidential real property can be effectuated though a Chapter 11 plan of reorganization (11 U.S.C. §1123(b)(2)), there is no authority for a reorganized debtor to assume or reject leases *following confirmation of a plan of reorganization.* Section 1123(b)(2) provides that "a plan may, *subject to Section 365* of this title, provide for the assumption, rejection or assignment of any executory contract or unexpired lease of the debtors not previously rejected under this section." (Emphasis added.) The authority to assume or reject leases is limited by the express terms of Section 365(a) to a trustee, which includes a debtor-in-possession by virtue of Section 1107(a), but does not extend to reorganized debtors. *See* In re Grinstead, 75 B.R. 2, 3 (Bankr. D. Minn. 1985) ("There is no debtor-in-possession status of a debtor post-confirmation.").

17.    Before the Bankruptcy Code was amended in 1984, Section 365(d)(2) provided that in Chapter 11, the trustee could assume or reject an executory contract or unexpired lease at any time before confirmation of a plan. *See* In re Grayson-Robinson Stores, Inc., 227 F.Supp. 609, 613-615 (S.D.N.Y. 1964) (pre-Code case where the Court refused to permit rejection of an executory contract after plan confirmation). It is widely accepted that the purpose of Section 365(d)(4), added as an integral part of what are commonly referred to as the 1984 "Shopping Center Amendments," was to prevent trustees and debtors-in-possession from taking too much

– 7 –

time in deciding whether to assume, assume and assign or reject unexpired nonresidential real property leases. *See* Sea Harvest Corp. v. Riviera Land Co., 868 F.2d 1077, 1079 (9th Cir. 1989); In re Channel Home Centers, Inc , 989 F.2d 682, 686 (3rd Cir. 1993); 3 Collier on Bankruptcy (15th Ed Rev. 2004) ¶ 365:04[3][a], p. 365-32.

18      Allowing the exercise of rights under Section 365 after confirmation of a Chapter 11 plan, is contrary to the legislative objective of advancing, rather than delaying, a trustee or debtor-in-possession's decision on unexpired nonresidential real property leases. There is nothing in the legislative history that evidences congressional intent to extend the assumption/assignment/rejection powers with respect to unexpired leases past the confirmation or effective date. This is contrary to the Bankruptcy Code, and the Court should not approve the Disclosure Statement until this provision is removed *See* 11 U.S.C. §1129(a)(1).

19      Allowing such post-confirmation rejection of leases would serve only to provide Debtors with undue leverage in seeking to force a reduction of Landlord's legitimate cure claims. This seems especially unnecessary where Landlord has already submitted estimated cure amounts in connection with the Assumption Objection  Additionally, the ability for a post-confirmation rejection exposes the Landlord to becoming a post-confirmation, interest-free involuntary lender. Such treatment is inconsistent with the treatment to which Landlord is entitled under the Bankruptcy Code.

20.      Finally, and as a practical matter, allowing Debtors to change their decision on the disposition of the Leases too close to, or beyond, the voting deadline effectively disenfranchises the Landlord  Debtors provide no discussion of this potential impact on a Landlord and no mechanism to preserve a Landlord's ability to vote its claims in such circumstance. A landlord might vote one way, believing its lease will be assumed, and vote differently if the lease is being rejected. Such uncertainty creates the very real possibility that the Landlord will be asked to vote on the Plan before it knows whether the Leases will be assumed, assumed and assigned, or rejected. Withholding such critical information can hardly be considered as providing "adequate information" to the Landlord. The Plan potentially destroys a large voting class.

- 8 –

*ii.*     *The injunction provisions.*

21.     The injunction provision referenced in Section 12.14 of the Plan is overbroad and should be revised. To the extent any claim objections or preference actions are prosecuted against the Landlord following Plan confirmation, or to the extent that the Reorganized Debtors breach an assumed lease following Plan confirmation, the Landlord should not be deprived of its right to assert setoffs or exercise recoupment. The Debtors fail to provide adequate authority for the Landlord being deprived of such rights. *See* <u>Carolco Television Inc. v. Nat'l Broadcasting Co. (In re De Laurentiis Entertainment Group Inc.)</u>, 963 F.2d 1269 (9th Cir. 1992), *cert. denied* 506 U.S. 918 (1992) (setoff rights survive plan confirmation); <u>In re Luongo</u>, 259 F.3d 323, 333 (5th Cir. 2001); *see also,* <u>Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV</u>, 209 F.3d 252, 257 - 261 (3rd Cir. 2000) (recoupment defense survives free and clear sale of debtor's assets).

**C.     Landlord joins in the objections of other creditors.**

22     To the extent not inconsistent with the objections raised herein, Landlord joins in any opposition to Disclosure Statement raised by other creditors or the Creditors' Committee. Landlord also reserves its rights to pursue these or any additional issues concerning the Plan, in connection with the hearing to confirm the Plan.

**IV.     CONCLUSION**

The Disclosure Statement should not be approved unless and until it provides adequate information as required by Section 1125 on the issues joined and raised here by the Landlord. Landlord requests that the Court require that Debtors amend the Disclosure Statement to provide adequate information for all creditors to make an informed judgment with respect to the Plan as

set forth herein, amend the Plan so that it is confirmable, and provide for such other and further

relief as the Court deems just and proper.

Dated:  July 25, 2006

**KATTEN MUCHIN ROSENMAN LLP**

Attorneys for Capstone Advisors, Inc.
Thomas J. Leanse (TL-8802)
Dustin P. Branch (DB-3553)
2029 Century Park East, Suite 2600
Los Angeles, California  9006
Phone: (310) 788-4400
FAX: (310) 788-4471

and

HELD & ISRAEL

By: _____
  Kimberly Held Israel, Esquire
  Florida Bar #47287
  Adam N. Frisch, Esquire
  Florida Bar #635308
  1301 Riverplace Blvd., Suite 1916
  Jacksonville, Florida 32207
  (904) 398-7038 Telephone
  (904) 398-4283 Facsimile

- 10 -