## SUBLEASE

THIS SUBLEASE, is made as of October __, 2000 between **GOODING'S SUPERMARKETS, INC.**, a Florida corporation ("Lessor"), and **WINN-DIXIE STORES, INC.**, a Florida corporation ("Lessee"). The terms "Lessor" and "Lessee" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

## WITNESSETH:

That Lessor, in consideration of the rents reserved herein and the covenants of Lessee, does hereby lease and demise unto Lessee for the term hereinafter specified, the following described property to-wit:

### PREMISES

This Sublease contemplates (i) a sublease of Lessor's interest in the "Premises" as defined in the Underlying Lease, as hereinafter defined (the "Leased Premises"); and (ii) a direct lease of Lessor's interest in the store building and related improvements constructed on the Premises (the "Subleased Premises") (collectively, the "Demised Premises") located in a shopping center development known as Gooding's Center (the "Shopping Center") with the following address 1024 E. Highway 436, Casselberry, Florida 32707. The legal description of the Shopping Center is set forth in the Underlying Lease.

Lessor and Lessee hereby mutually covenant and agree, each with the other, as follows:

### TERM

1.

(a) <u>Initial Term</u>. The term of this Sublease shall commence on the date hereof (the "Commencement Date") and shall be for an initial term of twenty (20) years (the "Initial Term").

(b) <u>Extension Term(s)</u>. Lessee, at its option, shall be entitled to the privilege of six (6) successive extensions of the Term of this Sublease, each extension to be for a period of five (5) years (each, an "Extension Term") at the same rent and upon the same terms and conditions as provided herein for the Initial Term (together with the Extension Terms elected by Lessee, the "Term"). Lessee shall extend the Term by giving to Lessor a notice in writing at least one hundred eighty (180) days before the expiration of the previously established Term, and thereupon the Term shall be extended without the execution of any other document. Failure to deliver such notice shall render the extension option and all future extensions null and void.

(c) Lessor and Lessee specifically acknowledge and agree that Lessee shall have no obligation hereunder to lease or sublease the Demised Premises for any portion of the term of the Underlying Lease beyond the Initial Term or any applicable Extension Term.

045106/74621.400719-4

**EXHIBIT "A"**

(d) <u>Demised Premises</u>. Lessee will yield up the Demised Premises and all additions thereto (except Lessee's trade fixtures) at the end of the Term in broom clean condition, reasonable wear and tear, damage by fire and other casualties and condemnation or appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that Lessor is obligated hereunder to repair or correct. Lessee shall not be required to restore the Demised Premises to its original state. Lessee shall not remove from or assert any rights in or to any conduits, fixtures, ducts or other apparatus not constituting Lessee's trade fixtures. Lessee shall surrender to Lessor all keys to or for the store building and shall inform Lessor of all combinations of locks, safes, and vaults, if any, in the store building.

## RENT

2. Lessee shall pay rent, in lawful money of the United States, without offset, reduction, or counterclaim as provided herein or as provided by law.

(a) <u>Basic Rent</u>. Beginning on the Commencement Date Lessee shall pay to Lessor as basic rent for the Demised Premises during the Term, the sum of $474,915.00 per annum ("Basic Rent"). The Basic Rent is inclusive of any and all rent payable in connection with the Underlying Lease. The Basic Rent shall be payable in twelve (12) equal monthly installments of $39,576.00, which installments shall be due and payable in advance on the first day of each and every calendar month of the Term, subject, however, to the provisions of <u>paragraph 2(c)</u> of this Sublease. In addition, Lessee shall pay any sales, use, excise, or similar tax levied or assessed on the Basic Rent and Additional Rent payable hereunder directly to the Florida Department of Revenue. Such tax shall be calculated based on the Basic Rent and Additional Rent payment made to Lessor. Default in payment of such tax shall constitute an event of default to the same extent as would a default in payment of Basic Rent. All Basic Rent shall be payable by Lessee without prior notice or demand.

(b) <u>Additional Rent</u>: Beginning on the Commencement Date and continuing throughout the Term, Lessee shall pay to Lessor as Additional Rent for the Demised Premises, any and all fees, taxes, assessments and utility charges as required to be paid by Lessor and as set forth in Article 3.6, and in Article 3.7(C)(6) and (7) of the Underlying Lease as the same become due, promptly and before delinquency ("Additional Rent"). Lessee shall also pay as Additional Rent any and all common area maintenance expenses as are required to be paid by Lessor as contemplated by the Underlying Lease. Lessee shall obtain all insurance required hereunder or under the Underlying Lease and in the event Lessee fails to comply with the provisions hereof or as set forth in the Underlying Lease regarding insurance then Lessor may obtain such insurance in order to comply with the Underlying Lease, and in such event, Lessor and Lessee acknowledge and agree that Lessor may include, as a common area maintenance expense, the cost of such insurance and a commercially reasonable fee to be agreed upon between Lessor and Lessee. Upon at least thirty (30) days' prior written notice that Additional Rent may be due under the relevant portions of the Underlying Lease as described above, Lessee shall pay such Additional Rent directly to the Landlord of the Underlying Lease. In accordance with the terms of the Underlying Lease, any adjustment in Additional Rent under the relevant portions of the

Underlying Lease as described above, made by the Landlord of the Underlying Lease which benefits or burdens Lessor shall be passed through to Lessee. Default in payment of the Additional Rent shall constitute an event of default to the same extent as would a default in payment of Basic Rent. In the case Lessee shall fail, refuse or neglect to make any of the payments required under the terms of this Sublease, then Lessor or Landlord under Underlying Lease as the case may be, may at its option, pay the same amount or amounts of money including reasonable attorneys fees and expenses which are incurred in connection with such payment, together with interest on all such amounts at the rate of eighteen percent (18%) per annum, which shall be repaid by the Lessee to the Lessor or to Landlord under the Underlying Lease as the case may be, upon demand and the payment thereof may be collected or enforced by the Lessor in the same manner as though said amount were an installment of rent specifically required by the terms of this Sublease. .

(c) <u>Setoffs Against Rent</u>: As specific consideration and express inducement for Lessee's entry into this Sublease, Lessee shall have the right to deduct from the amount of Basic Rent that may be due to Lessor from time to time under this Sublease the following amounts:

(i) any amount expended by Lessee as provided in <u>paragraph 8(b)</u> of this Sublease for the purpose of performing any obligation of Lessor (including, without limitation, the payment of basic rent thereunder) that Lessor fails to perform under the Underlying Lease, together with interest accrued on such amount; and

(ii) the face value of any gift certificates issued by Lessor prior to the Commencement Date tendered by the holder thereof to Lessee at the Demised Premises or any of the related store locations described on attached Exhibit "C" (the "Related Stores"), provided that Lessor has not reimbursed Lessee for such face value within 30 days following Lessee's delivery to Lessor of a statement specifying the gift certificate face value to be reimbursed together with such other supporting information as Lessor reasonably may request to verify the same.

If Lessee makes any permitted deduction against the amount of Basic Rent payable to Lessor from time to time under this Sublease pursuant to the foregoing, Lessee shall provide written notice of such deduction to Lessor on or before the due date for such Basic Rent payment. Such notice shall specify the basis for such deduction, and shall include an itemized statement of the amounts paid by Lessee under subparagraphs (i) or (ii) above, as the case may be, and a calculation of the balance, if any, due as Basic Rent on such due date after taking into account such deduction, which balance shall be paid by Lessee on or before the due date for such Basic Rent payment. To the extent that any deduction is greater than the amount of Basic Rent then due, Lessee shall have the right to carry over the deduction to any subsequent payment of Basic Rent as the same may become due and payable. The foregoing right to make a deduction against Basic Rent is in addition to, and not in substitution of, any rights and remedies that Lessee may have under this Sublease, and may be exercised independently or contemporaneously with such other rights and remedies, as Lessee may deem appropriate.

## UNDERLYING LEASE

3.  Lessor is in possession of the Premises by virtue of an Option and Ground Lease dated October 1, 1981 wherein Lessor herein is the lessee. A Memorandum of said Lease is recorded in Official Records Book 1433, Page 1005 of the public records of Seminole County, Florida. A true copy of such Lease and all amendments thereto has been reviewed and accepted by Lessee and is attached hereto and incorporated herein by this reference as Exhibit "B" (the "Underlying Lease"). Any and all references to "Landlord" hereunder shall be deemed to refer to the Landlord under the Underlying Lease. During the term of this Sublease, Lessee hereby assumes and agrees for the benefit of Lessor (which covenant may be enforced by Landlord) to comply with and be bound by all of the terms, covenants, and conditions of the Underlying Lease and to do and perform all the terms, covenants, and conditions of the Underlying Lease on the part of the lessee therein to be performed and observed during the Term. Notwithstanding anything contained herein to the contrary in this Sublease, all of the terms, covenants, and conditions of this Sublease are made expressly subject to the Underlying Lease.

Lessor covenants to do no act nor omit to take any action that would result in disturbance of the peaceful and quiet occupation and enjoyment of the Demised Premises by Lessee.

During the Term, Lessor shall not enter into any alteration, modification, amendment or change to the terms of the Underlying Lease without the prior written consent of Lessee, which consent may be granted or withheld in Lessee's sole discretion. Furthermore, Lessor shall not consent to any alteration, modification, amendment or change to the terms of any restrictive covenants, easements, conditions or restrictions affecting the Demised Premises without the prior written consent of Lessee, which consent will not be withheld unless Lessee determines Lessor's requests for consent are commercially unreasonable. Lessor and Lessee further agree to provide the appropriate party with notice of any defaults or alleged defaults by either the lessee or the Landlord under the Underlying Lease.

## REPAIRS

4.

(a) <u>Underlying Lessor Repairs</u>.  In the event any repairs are necessary or desirable which are the responsibility of the Landlord under the Underlying Lease, Lessee may give notice to both Lessor and the Landlord under the Underlying Lease of the need for such repairs with such supporting information as reasonably necessary to identify to the nature of the work to be done. Lessor shall assist Lessee in enforcing, at Lessee's expense, the rights of the Lessor as tenant under the Underlying Lease, and if Lessor fails to seek enforcement of its rights under the Underlying Lease, then Lessee may seek enforcement of such rights directly against the Landlord under the Underlying Lease, and Lessee indemnifies, and agrees to defend, save

(b) <u>Lessor Repairs</u>. Lessor shall, at its cost and expense, keep and maintain in good condition and repair, and replace as necessary, the exterior walls and structural portions of the store building (including painting of the exterior walls as needed), roof, gutter, downspouts, masonry walls, foundation and structural members of the Store, the exterior plumbing (including and from the water meter for the store building and including septic tank, if any), and the exterior wiring including and beyond the main disconnect or electrical panel of the store building.

If, in order to protect persons or property, it shall be necessary for Lessee to make emergency repairs (which shall include, but not be limited to, any roof repairs) or if Lessor after receipt of twenty (20) days written notice as provided for herein fails or neglects to perform services, maintenance or repairs required of it hereunder to the store building, Lessee shall have the right to do so provided Lessee shall simultaneously provide Lessor of notice of Lessee's action and failure of Lessor to reimburse Lessee for the reasonable out-of-pocket cost therefor within ten (10) days of receipt of a written statement therefor shall constitute a default under the terms of the Sublease; provided, however, Lessee shall not have the right to terminate this Sublease in accordance with <u>paragraph 8</u>. Lessee's sole remedy shall be to seek damages against Lessor for its failure to pay such amounts to Lessee.

(c) <u>Lessee Repairs</u>. Except as specifically set forth herein, Lessee shall, at its cost and expense, keep and maintain in good condition and repair the remainder of the store building.

(d) <u>Liens of Third Parties</u>. Lessor and Lessee each covenant and agree for the benefit of the other that neither party shall permit or suffer to be filed, placed or claimed, any mechanics', laborers', materialmen's or any other statutory liens upon the Demised Premises (or upon the estate of the Landlord under the Underlying Lease) and no person shall ever be or become entitled to any lien directly or indirectly claimed through or under either party or through or under any act or omission of either party. The estate or interest of Lessor in and to the Demised Premises shall not be subject to liens for improvements made or caused to be made by Lessee and such liability is hereby expressly prohibited. No person claiming by, through, or under Lessee or furnishing any labor or materials to Lessee or to the Demised Premises at Lessee's order, or at the order of any person dealing directly or indirectly with Lessee shall have any right to file, or place any labor or material, mechanics or other statutory liens whatsoever upon the Demised Premises, so as to encumber or affect the title of Lessor or of the Landlord under the Underlying Lease in and to the Demised Premises. The parties hereto agree that a Memorandum of this Sublease shall be executed and recorded which shall contain appropriate language notifying third parties of the foregoing prohibition against mechanics' liens. In the event that any mechanics' lien is filed against the Demised Premises, notwithstanding the foregoing prohibition, the party (Lessor or Lessee, as applicable) by, through, or under which such lien is claimed covenants and agrees that within twenty (20) days after such party has been notified of the filing thereof, or sooner if demanded by the other party or by the Landlord of the Underlying Lease in accordance with the terms of the Underlying Lease, such party will either pay or transfer to bond any mechanics' lien filed against the Demised Premises. If such liened party has not paid or transferred to bond any mechanics' lien filed against the Demised Premises within the applicable twenty (20) day time period, the other party shall have the ability but not the obligation, to pay or transfer to bond any mechanics' lien and shall be entitled to recover

pay or transfer to bond any mechanics' lien filed against the Demised Premises. If such liened party has not paid or transferred to bond any mechanics' lien filed against the Demised Premises within the applicable twenty (20) day time period, the other party shall have the ability but not the obligation, to pay or transfer to bond any mechanics' lien and shall be entitled to recover reimbursement therefor from the liened party within ten (10) days of receipt of written notice to the liened party from the other party setting forth the amount of the mechanics' lien and all reasonable out-of-pocket expenses associated with the removal of the same. Failure of the liened party to reimburse the other party within ten (10) days of receipt of a written statement therefor shall constitute a default under the terms of the Sublease; provided, however, neither party shall have the right to terminate this Sublease in accordance with paragraph 8. Each party's sole remedy against the other party for failure to reimburse for such costs shall be to seek damages against the defaulting party.

## USE

5. During the Term, in accordance with the terms of the Underlying Lease including but not limited to all of the provisions of Section 3.5 thereof, the Demised Premises shall be used for the conduct of any combination food and drug store containing approximately 46,000 square feet, which shall remain open and operating during normal business hours at least six (6) days a week. If Lessee desires to cease the continuous operation of a combination food and drug store, then Lessee will provide Lessor with not less than one hundred twenty (120) days prior written notice (the "Go Dark Notice"). The Go Dark Notice shall specify the date on which Lessee intends to cease operation of its business at the Premises (the "Go Dark Date"). Lessee shall continue to operate its business and otherwise comply with all terms and provisions of this Sublease through the Go Dark Date. Lessor acknowledges and agrees that upon Lessee's delivery of the Go Dark Notice, Lessor shall have the ability to immediately take steps to prevent and/or remedy a violation under the Underlying Lease as a result of Lessee's going dark including, but not limited to, having the right, but not the obligation, to find a replacement lessee to take possession on or after the Go Dark Date and/or to take possession of the Demised Premises and itself fulfill the obligations of the Underlying Lease and operate a combination food and drug store notwithstanding the provisions set forth in paragraph 10.6 of that certain Asset Purchase Agreement by and between Winn-Dixie Stores, Inc. and Gooding's Supermarkets, Inc. dated May 17, 2000, as amended. If Lessor exercises such right to retake or relet the Demised Premises, then Lessor shall give Lessee no less than sixty (60) days advance prior written notice which shall specify the date of such retaking (the "Retaking Date").

Upon the Go Dark Date, Lessee shall be obligated to continue to pay to Lessor a Basic Rent, Additional Rent and other sums due and owing under the appropriate term of the Sublease (the "Go Dark Rent") unless and until Lessor finds a replacement tenant and/or retains possession of the Premises for itself. If Lessor finds a replacement tenant, any rent paid to Lessor by such replacement tenant will be credited against the amount of Go Dark Rent due to Lessor from Lessee. Lessee shall be and remain obligated to pay to Lessor any and all out-of-pocket expenses, commissions, attorneys' fees, tenant finish, renovation and other costs associated with finding a replacement tenant and/or retaking possession of the Premises for itself not to exceed $100,000.00 in the aggregate. Notwithstanding the foregoing, upon Lessor's

before the Go Dark Date, then Lessor will have the right to acquire, as of the Termination Date or the Retaking Date as applicable, Lessee's trade fixtures and equipment located on the Demised Premises free and clear of liens and encumbrances, for a purchase price equivalent to the book value thereof, as determined in good faith by Lessor and Lessee. Lessor and Lessee agree to cooperate in good faith to establish an accurate and complete schedule of the trade fixtures and equipment subject to conveyance and the book value thereof. If for any reason, Lessor and Lessee are unable to agree on the price of such assets, or if Lessor fails to notify Lessee of its election to acquire such assets within the time period specified above, then Lessee shall have the ability to remove its trade fixtures and equipment from the Demised Premises on the earlier to occur of the Termination Date, or the Retaking Date, as applicable and the Go Dark Date. On the Termination Date, Lessee shall vacate the Demised Premises in accordance with the provisions of paragraph 1(c) of this Sublease, and all obligations of Lessor and Lessee under this Sublease shall cease thereafter and be of no further force or effect. Lessor also shall have the right, at any time following its timely election to terminate this Sublease, to immediately take steps to prevent and/or remedy any violation under the Underlying Lease including but not limited to having the right to find a replacement lessee to take possession of the Demised Premises as of the Termination Date.

Lessor and Lessee have agreed to the foregoing with the express understanding that such provisions are based on the existence of certain conditions and restrictions in Section 3.5 of the Underlying Lease. In the event that the Underlying Lease is amended to qualify or eliminate the relevant conditions and restrictions under the Underlying Lease, of this Sublease, then Lessor and Lessee agree to amend this Sublease as applicable to reflect the amendment to the Underlying Lease. For example, and not for purposes of limitation, if the Underlying Lease is amended to delete Section 3.5 of the Underlying Lease in its entirety, then this paragraph 5 will be deleted in its entirety. Similarly, if the Underlying Lease is amended to allow uses other than a combination food and drug store on the Demised Premises, then this paragraph 5 will be amended to allow such other uses. In the absence of any such amendment, all provisions of Section 3.5 of the Underlying Lease shall remain in full force and effect allowing Landlord thereunder to exercise its full rights and remedies under the Underlying Lease in the event of a violation of such provisions or discontinuance of exclusive operations of the food and drug store defined as the "Store" thereunder.

## COMPLIANCE WITH LAWS

6. Lessee shall at all times comply with all applicable current and future laws, ordinances, rules, codes, orders, and regulations of every lawful authority (collectively "Legal Requirements") having jurisdiction over the Demised Premises, as such shall relate to Lessee's operation of the Demised Premises for the Permitted Use.

Lessor shall at all times fully comply with all Legal Requirements applicable to the Demised Premises and to Lessor's obligations under this Sublease and, to the extent the same are within the control of Lessor, Lessor's obligations under the Underlying Lease.

## QUIET ENJOYMENT

7. Lessor hereby covenants that Lessee, upon complying with the provisions of this Sublease and the Underlying Lease, may quietly have and enjoy the Demised Premises during and throughout the Sublease Term, without any interruption by Lessor or any persons claiming by, through or under Lessor.

## DEFAULT

8. (a) <u>Lessee</u>. If any Basic Rent or Additional Rent payable hereunder shall be due and unpaid after its due date and shall remain unpaid for ten (10) days after Lessor shall have given Lessee written notice of such nonpayment; or if Lessee shall become bankrupt or insolvent, or if Lessee shall default in the performance of any of the covenants and agreements herein contained (except as to payment of Rent) on the part of Lessee to be kept and performed and such default shall have continued uncured for thirty (30) days after Lessor shall have given Lessee written notice of such default, then, and at any time thereafter, in any such event or events, Lessor may at its option, without any other or further notice, (a) terminate this Sublease and immediately retake possession of the Demised Premises, or (b) re-enter the Demised Premises by summary proceedings or as otherwise allowed by applicable law, and remove all property of Lessee, at Lessee's expense, and relet the Demised Premises. The enumeration of remedies herein shall in no way limit or restrict Lessor's right to pursue any and all other remedies provided by law or in equity. In the event of a default under the Underlying Lease that is the result of or caused by Lessee's failure to fulfill certain obligations thereunder, the foregoing remedies will include, without limitation, the right of Lessor to perform any unperformed obligation of Lessee and to seek recovery of the amount or cost thereof from Lessee, together with interest thereon accrued at an annual rate of 18 percent from the date due to the date reimbursed to Lessor; provided, however, that the exercise of Lessor's termination rights under <u>paragraph 5</u> above shall not entitle Lessor to exercise any of the foregoing remedies. However, if Lessor exercises the termination rights under paragraph 5, the remedies set forth in paragraph 5 will apply.

(b) <u>Lessor</u>. If Lessor shall become bankrupt or insolvent, or if Lessor shall default in the performance of any of the covenants and agreements contained herein or in the Underlying Lease (which default is not the result of or caused by Lessee's failure to fulfill such obligations) on the part of Lessor to be kept and performed and such default shall have continued uncured for ten (10) days for monetary defaults or for thirty (30) days for all other defaults after Lessee shall have given Lessor written notice of such default, then, and at any time thereafter, in any such event or events, Lessee may at its option, without any other or further notice, elect to terminate this Sublease or pursue any other remedies provided in law or equity. In the event of Lessor's default under the Underlying Lease (which default is not the result of or caused by Lessee's failure to fulfill such obligations), the foregoing remedies will include, without limitation, the right of Lessee to attorn to the Landlord under the Underlying Lease, to make payments of rent due under the Underlying Lease directly to the Landlord under the Underlying Lease upon

Lessor's failure to remit such rent to the Landlord under the Underlying Lease, to perform any other unperformed obligation of Lessor under the Underlying Lease, and to seek recovery of the amount or cost thereof from Lessor, together with interest thereon accrued at an annual rate of 18 percent from the date due to the date reimbursed to Lessee. Notwithstanding anything to the contrary contained in this Sublease, Lessor shall retain the residual value and term of the Underlying Lease and title to and the value of the Subleased Premises, following the expiration or termination of this Sublease. Nothing contained in this Paragraph 8 shall in any way be construed as a limitation of the rights and remedies of the Landlord under the terms of the Underlying Lease in the event of a default.

## ASSIGNMENT AND SUBLEASE

9. Lessee may assign this Sublease, or sublease or sub-sublease all or any part of the Demised Premises under this Sublease, only with Lessor's consent, which consent shall not be unreasonably withheld, conditioned or delayed, with sixty (60) business days' prior written notice to Lessor, provided, however, that any assignment or subletting with the consent of Lessor as hereinabove provided shall not release or relieve Lessee herein of any of the obligations, covenants and agreements herein contained and on the part of Lessee to be kept and performed, and further provided, that Lessee acknowledges that, under the terms of the Underlying Lease, Lessor must obtain the consent and approval of the Landlord under the Underlying Lease prior to granting Lessor's consent to Lessee's proposed assignment or sublease or sub-sublease of all or any portion of the Demised Premises, and that such Landlord's refusal to grant such consent shall be deemed reasonable grounds for Lessor to refuse to grant its consent. No such assignment, sublease or sub-sublease by either Lessor or Lessee hereunder shall be permitted or effective without obtaining the consent of the Landlord under the Underlying Lease. The terms, provisions and standards applicable to obtaining said Landlord's consent to any attempted assignment, sublease or sub-sublease shall be as set forth in the Underlying Lease, including but not limited to Section 3.18 thereof.

## NOTICES

10. All notices, requests, demands, and other communications required or permitted to be given under this Sublease shall be in writing and sent to the address(es) or telecopy number(s) set forth below. Each communication shall be deemed duly given (i) when mailed by United States Registered or Certified Mail, return receipt requested, with postage and charges prepaid thereon to carry it to its addressed destination, (ii) when sent by telefax, when the telefax is transmitted to the recipient's telecopy number(s) and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the day after the confirmation of complete receipt is received by the transmitting party if not during normal business hours for the recipient or (iii) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit of the same and said notice shall be addressed as follows:

Lessor: Gooding's Supermarkets, Inc.
Attn: Mr. Russell Doerk
2349 Apopka Blvd.
Apopka, FL 32703
Telefax: (407) 886-2159

With a copy to: Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
Attn: William T. Dymond, Jr., Esq.
215 North Eola Drive
P.O. Box 2809
Orlando, FL 32802
Telefax: (407) 843-4444

Lessee: Winn-Dixie Stores, Inc.
3015 Coastline Drive
Orlando, Florida
Telefax: (407) 294-4241

With a copy to: Winn-Dixie Stores, Inc.
Attn: General Counsel
5050 Edgewood Court
P.O. Box B
Jacksonville, FL 32203-0297
Telefax: (904) 783-5138

Underlying Lease Landlord: The Greater Construction Corp.
1105 Kensington Park Drive
Altamonte Springs, FL 32714
Attention: Cheryl Reift
Phone: (407) 331-8290
Telefax: _____

With a copy to: Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
Attention: John Lowndes, Esq.
215 North Eola Drive
P.O. Box 2809
Orlando, FL 32802
Telefax: (407) 843-4444

Either of the parties may change the place of which notice shall thereafter be given and addressed, but no such change shall be effective unless and until notice of the change has been given in the manner set forth above.

10

## CONSTRUCTION

11. Lessee, at its own expense, shall have the right from time to time during the Term to make any alterations, additions and improvements, in, to or about the Demised Premises which do not adversely affect its structural integrity ("Non-Structural Modifications"). Lessee may make any other alterations, additions, or improvements ("Lessee Modifications") provided Lessee has first obtained Lessor's written approval, which shall not unreasonably be withheld, conditioned, or delayed. If Lessor's consent is required in connection with any Lessee Modifications, Lessee shall provide to Lessor a reasonably detailed description of the proposed work prior to its commencement. Lessor's consent shall be deemed given if Lessor does not send written notice of its disapproval on or before thirty (30) days after the date of Lessee's request for Lessor's approval. Lessor shall cooperate with Lessee in obtaining any government approvals necessary or desirable in connection with any permitted and/or approved Lessee Modifications, provided that Lessor shall not be required to incur any out-of-pocket expense in connection therewith. Lessee shall make all Non-Structural Modifications or Lessee Modifications in a lien free, and good, workmanlike manner, and in accordance with all applicable building codes and all requirements of governmental authorities. Lessee must provide Lessor with evidence of adequate insurance coverage relating to such Non-Structural Modifications or Lessee Modifications in form and content reasonably acceptable to Lessor, and naming Lessor and Landlord of the Underlying Lease as an additional insured. Lessee Modifications shall belong to Lessor and become a part of the Demised Premises upon termination or expiration of the Term, and all other Non-Structural Modifications shall, at Lessor's option, either be removed, or shall remain in place at the end of the Term. Lessee indemnifies, and agrees to defend, save and hold harmless Lessor and Landlord of the Underlying Lease from and against all liability, costs, expenses, damages, claims or demands arising out of Non-Structural Modifications and Lessee Modifications.

Lessee shall be required to obtain the prior written consent of the Landlord under the Underlying Lease as to any Lessee Modifications and/or Non-Structural Modifications that would require the consent of the Landlord under the relevant provisions of the Underlying Lease. Lessor shall cooperate in good faith with Lessee in seeking the Landlord of the Underlying Lease's consent.

Lessee may construct and build or install within the Demised Premises any and all racks, counters, shelves, and other fixtures, personal property, and equipment of every kind and nature as may be necessary or desirable in Lessee's business ("Lessee's Trade Fixtures"), which shall at all times be and remain the property of Lessee. Provided that Lessee is not in default hereunder, Lessee shall have the right to and shall at the end of the Term remove all or any part of Lessee's Trade Fixtures at any time, subject to the provisions of paragraph 5 of this Sublease. Lessee shall repair, at its sole cost and expense, or reimburse Lessor for the reasonable out-of-pocket cost of repairing any and all damage to the Demised Premises resulting from the installation or removal of Lessee's Trade Fixtures or Lessee Modifications.

## INDEMNITY

12. Lessee shall indemnify, defend, insure, save and hold harmless Lessor under the Underlying Lease from any and all liability, costs, expenses, damages, penalties, claims or demands of whatsoever nature arising in or about the Demised Premises during the Term ("Claims"); provided, however, that the foregoing indemnity shall not apply to any Claims resulting directly from the actions or omissions of Lessor, or resulting outside the Term of this Sublease. Lessee shall indemnify, defend, insure, save and hold harmless Landlord under the Underlying Lease from any and all liability, costs, expenses, damages, penalties, claims or demands of any third party whatsoever nature arising in or about the Demised Premises during the Term ("Claims"); provided, however, that the foregoing indemnity shall not apply to any Claims resulting directly from the actions or omissions of Landlord, or resulting from actions or omissions of Landlord or resulting outside the Term.

## ENVIRONMENTAL CONDITION

13.

(a) <u>Lessor's Covenants and Indemnity</u>. Lessor represents and warrants to Lessee that it has not prior to the commencement of this Sublease, caused or to its knowledge permitted to be used, stored, generated, or disposed of any Hazardous Substance, as hereinafter defined, in, on, or about the Demised Premises except in accordance with applicable Legal Requirements. Lessor represents and warrants to Lessee that during the Term of this Sublease, Lessor will not use, store, generate or dispose of any Hazardous Substance, as hereinafter defined in, on, or about the Demised Premises except in accordance with applicable Legal Requirements. Lessor certifies to Lessee that to its knowledge no other party has caused or permitted to be used, stored, generated, or disposed of any Hazardous Substance, as hereinafter defined, in, on, or about the Demised Premises except in accordance with applicable Legal Requirements. Lessor further represents and warrants that to its knowledge no leak, spill, release, discharge, emission or disposal of any Hazardous Substance has occurred in, on or about the Demised Premises to date, and that the soil, groundwater and soil vapor on or under the Demised Premises is free of any Hazardous Substance. Lessor further represents and warrants that to its knowledge neither Lessor nor the Demised Premises is subject to any existing, pending or threatened investigation or inquiry by any governmental authority or agency, or subject to any remedial or other obligation under any Legal Requirement. Further there are no facts, conditions or circumstances known to Lessor which could result in any such investigation or inquiry if such facts and circumstance, if any, were fully disclosed to the applicable governmental authority.

"Hazardous Substance" is defined as any and all material or substances which are defined as "hazardous waste", "extremely hazardous waste" or a "hazardous substance" pursuant to Legal Requirements and any substance for which any Legal Requirements require a permit or special handling in its use, storage, treatment, or disposal. "Hazardous Substance" includes, but is not limited to, asbestos, polychlorobiphenyls ("PCB's"), chlorofluorocarbons, petroleum, toxic substances, wastes, solid wastes and biohazard wastes. "Environmental Violation" is defined as a violation of any Legal Requirement relating to Hazardous Substances.

Lessor shall, at its sole cost and expense, take such action as is reasonable, prudent, or required by Legal Requirements as a result of any breach of the foregoing representations and warranties and shall indemnify, protect, and save harmless Lessee, its officers, directors, shareholders, and employees, against and from any and all damages, losses, liabilities, obligations, penalties, claims, settlements, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses (including, without limitation, attorneys', consultants' and experts' reasonable fees and disbursements and any and all costs incurred due to any investigation of the site or any cleanup, removal, or restoration mandated by a federal, state, or local agency or political subdivision) of any kind or nature whatsoever which may at any time be imposed upon, incurred by, or asserted or awarded against Lessee and arising from or out of any breach of the foregoing representations and warranties.

Lessor shall provide to Lessee copies of any notices, letters, or requests for information concerning Hazardous Substances in connection with the Demised Premises which Lessor receives from any governmental unit or agency overseeing environmental matters and copies received by Lessor of any such notices, letters, or requests for information sent to the Landlord under the Underlying Lease

(b) <u>Lessee's Covenants and Indemnity</u>.  Lessee shall not cause or permit any Hazardous Substance to be used, stored, generated, or disposed on, in or about the Demised Premises except in accordance with applicable Legal Requirements without obtaining Lessor's prior written consent, which consent may be withheld in Lessor's sole discretion. Lessee shall, at its sole cost and expense, take such action as is reasonable, prudent, or required by Legal Requirements as a result of any breach of the foregoing representation and warranty and shall indemnify, protect, and save Lessor, its officers, directors, shareholders, and employees harmless against and from any and all damages, losses, liabilities, obligations, penalties, claims, settlements, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses (including, without limitation, attorneys', consultants' and experts' reasonable fees and disbursements and any and all costs incurred due to any investigation of the site or any cleanup, removal, or restoration mandated by a federal, state, or local agency or political subdivision) of any kind or nature whatsoever which may at any time be imposed upon, incurred by, or asserted or awarded against Lessor and arising from or out of any breach of the foregoing representation and warranty.  Without limitation of the foregoing, if Lessee causes the presence of any Hazardous Substance on, in or about the Demised Premises except in accordance with applicable Legal Requirements or with Lessor's consent and the same results in an Environmental Violation, Lessee, at its sole expense, shall promptly perform such remediation. Lessee shall first obtain Lessor's approval for any such remedial action, which approval shall not unreasonably be withheld, conditioned, or delayed.

Notwithstanding the foregoing, the indemnification in this subparagraph (b) shall only apply to contamination by Hazardous Substances resulting from *Lessee's use and operation of the Demised Premises* or that of its agents, employees or invitees. Nothing herein contained shall be held to indemnify Lessor from liability for Hazardous Substances contamination on, under or surrounding the Demised Premises resulting from Lessor's ownership, use or operation, or the use of operation by any third party not acting by, through, under or on behalf of Lessee.

13

Lessee shall provide to Lessor copies of any notices, letters, or requests for information concerning Hazardous Substances in connection with the Demised Premises which Lessee receives from any governmental unit or agency overseeing environmental matters.

(c) <u>Survival</u>. Notwithstanding anything to the contrary in this Sublease, the provisions of this entire <u>paragraph 13</u> shall survive the expiration or the termination of this Sublease and the transfer of Lessor's or Lessee's respective interests under this Sublease.

## LESSEE'S FINANCING

14. Lessee shall have the right to mortgage, pledge, encumber or grant a security interest in, or any part of, its leasehold interest in the Demised Premises without the consent of Lessor in connection with Lessee's financing ("Leasehold Financing"), provided, however, that the interest of the holder of any such Leasehold Financing shall at all times remain subordinate and inferior, and subject to, the interest of Lessor and the holders of mortgages encumbering Lessor's leasehold interest in the Demised Premises, and Lessee will provide or cause its lenders to provide such instruments evidencing or confirming such subordination as Lessor reasonably may request. Upon written notice delivered to Lessor by the holder of any Leasehold Financing specifying the name and address of such holder, Lessor agrees to deliver to the holder at the specified address written notice of Lessee's default under this Sublease contemporaneously with delivery of Lessor's notice of default to Lessee. Lessor agrees to execute and deliver, with Lessee and the holder of such Leasehold Financing, a non-disturbance and attornment agreement pursuant to which Lessor will, among other things, agree (i) to permit such holder, following a default by Lessee under this Sublease that is cured by such holder, to attorn to Lessor as successor tenant to Lessee under this Sublease and (ii) not to disturb the tenancy of such holder provided that such holder is not otherwise in default under this Sublease.

## ESTOPPEL CERTIFICATES

15. Within a reasonable time, but no less than fifteen (15) business days, after the written request of either Lessor or Lessee, the requested party agrees to execute and deliver to the requesting party an estoppel certificate setting forth, as applicable: (i) a description of this Sublease and all amendments thereto, (ii) a statement of the commencement date, term, expiration date, and renewal options available under this Sublease, (iii) a statement of the applicable rental rate, and the amount of rent then due, and whether any other amounts are due or claimed, or taken as a deduction or setoff against rent, (iv) a statement whether there are any known defaults under the Sublease by either party, and describing any defaults, as applicable, (v) a statement confirming the nature of the interest of the requested party under the Sublease, and whether any other parties have an interest in the Demised Premises, and (vi) any other matters that the requesting party reasonably may request. Notwithstanding the foregoing, neither party shall request, and neither party shall be required to deliver, more than two (2) such certificates per calendar year, unless the requesting party pays to the requested party, in advance, an administrative fee of $500.00 for each requested certificate.

14

## NO MERGER

16. There shall be no merger of this Sublease or of the leasehold estate hereby created by reason of the fact that the same person or entity may acquire or hold, directly or indirectly, this Sublease, the Underlying Lease or the leasehold estates thereby created or any interest in this Sublease or such leasehold estate.

## COMPLETE AGREEMENT

17. This written Sublease contains the complete agreement of the parties with reference to the leasing of the Demised Premises. No waiver of any breach of any covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

## FLORIDA DISCLOSURE

18. Lessor hereby advises that radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

## NO BROKERS

19. Except for the services provided by CFSE Business Services, Inc., the parties acknowledge that there were no brokers or agents involved in obtaining this Sublease and each agree to hold the other harmless from any claims for commission asserted through it Lessor and Lessee agree that Lessor will be responsible for all compensation due to CFSE Business Services, Inc.

## ENTRY

20. Lessee shall permit Lessor, the Landlord under the Underlying Lease, or their respective agents to enter upon the Demised Premises at all reasonable times for purposes of examining or for showing the same to prospective tenants or purchasers or for any other reasonable purpose.

21. TIME OF ESSENCE

22. Time is of the essence in regard to each provision of this Sublease.

**IN WITNESS WHEREOF**, the Lessor and Lessee have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

**LESSOR:**

GOODING'S SUPERMARKETS, INC.

By: _____
Russell Doerk, President

Date: October 12, 2000

**LESSEE:**

WINN-DIXIE STORES, INC.

By: _____
Dennis Sheehan,
Senior Vice President

Date: October 12, 2000

16

EXHIBIT "A"

## LEGAL DESCRIPTION: "Lease Parcel"

From the Northeast corner of the Southeast 1/4 of the Southwest 1/4 of Section 21, T21S, R30E, run N 00°05'11" E 842.81 feet to the Point of Beginning;

thence continue N 00°05'11" E 246.00 feet;

thence N 89°07'41" W 630.58 feet to a point on the easterly Right-of-Way line of Semoran Boulevard (S.R. 436), said point being a point on a curve concave easterly having a radius of 1738.67 feet, a central angle of 01°31'48", and a chord bearing of S 02°25'52" E;

thence along the arc of said curve 46.42 feet to a point on the easterly Right-of-Way line of Semoran Boulevard (S.R. 436) said point being a point on a curve concave westerly and having a radius of 2010.08 feet, a central angle of 05°57'13", and a chord bearing S 16°09'21" E;

thence along the arc of said curve 208.87 feet to a point on a curve;

thence S 89°07'41" E 570.13 feet to the Point of Beginning of the lands herein described, containing 3.4079 acres, more or less,

together with and subject to those certain non-exclusive perpetual easements for use, ingress and egress to, over, upon and across the common areas located on or to be located on the real property described on Exhibit "A" attached to that certain Declaration of Easements and Restrictions dated January 11, 1983 between Greater Construction Corp. and Gooding's Joint Venture and recorded in O.R. Book 1433, page 999, Public Records of Seminole County, Florida, as amended by Amendment to Declaration of Covenants and Restrictions dated November 22, 1983 and recorded under Clerk's Number 077174 of the Public Records of Seminole County, Florida.

## EXHIBIT C

| | | |
|---|---|---|
| Altamonte | Store #2384 | 1074 Montgomery Road<br>Altamonte Springs, FL  32714 |
| Formosa | Store #2379 | 7840 Irlo Bronson Highway<br>Kissimmee, FL  34747 |
| Hiawassee | Store #2602 | 1024 E. Highway 436<br>Casselberry, FL  32707 |
| Lake Mary | Store #2380 | 120 International Parkway<br>Heathrow, FL  32746 |
| Maitland | Store #2382 | 155 S. Orlando Avenue<br>Maitland, FL  32751 |
| Orlando/Dr. Phillips | Store #2386 | 7600 Dr. Phillips Blvd.<br>Orlando, Florida 32819 |
| Pershing | Store #2378 | 4520 S. Semoran Blvd (Hwy 436)<br>Orlando, FL  32822 |
| University | Store #2383 | 7580 University Blvd.<br>Winter Park, FL  32792 |