UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,

       Debtors.[1]

_____/

Case No.: 3-05-bk-03817-JAF
Chapter 11

Jointly Administered

**UNITED STATES TRUSTEE'S OBJECTION TO DISCLOSURE STATEMENT WITH RESPECT TO JOINT PLAN OF REORGANIZATION OF WINN-DIXIE STORES, INC. AND AFFILIATED DEBTORS**

COMES NOW, Felicia S. Turner, United States Trustee for Region 21, by and through her undersigned counsel, and objects to the Disclosure Statement With Respect to Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors, and states:

1.  Pursuant to 28 U.S.C. § 586, the United States Trustee is charged with the administrative oversight of cases commenced pursuant to Title 11, United States Code (the "Bankruptcy Code").

2.  On June 29, 2006, the Debtors filed their Disclosure Statement With Respect to Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (Docket No.: 8854) (the "Disclosure Statement"), and their Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (Docket No.: 8856) (the "Plan").

3.  Pursuant to 11 U.S.C. § 307, the United States Trustee has standing to be heard in the matter of this Court's consideration of the Debtors' Disclosure Statement.  Objections to the

---

[1]  In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc.,  Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montogomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixies Supermarkets, Inc.

Disclosure Statement were due on or before July 25, 2006; however, by agreement of Debtor's counsel, Stephen Busey, the United States Trustee was given an extension of time until July 27, 2006, to file her Objection to the Disclosure Statement. Accordingly, having been filed on the date below, this Objection is timely.

### *Standards for Disclosure Statement.*

4.  Section 1125 of the Bankruptcy Code requires that a disclosure statement contain "adequate information," defined as ". . . information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ."

5.  The adequacy of a disclosure statement is made on a case-by-case basis. Several courts have utilized a non-exhaustive list of information that should be included in a disclosure statement:

   a.  The circumstances that gave rise to the filing of the bankruptcy petition;

   b.  A complete description of the available assets and their value;

   c.  The anticipated future of the debtor;

   d.  The source of the information provided in the disclosure statement;

   e.  A disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

   f.  The condition and performance of the debtor while in Chapter 11;

   g.  Information regarding claims against the estate;

   h.  A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

    i.      The accounting and valuation methods used to produce the financial information in the disclosure statement;

    j.      Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

    k.      A summary of the plan of reorganization;

    l.      An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

    m.      The collectibility of any accounts receivable;

    n.      Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

    o.      Information relevant to the risks being taken by the creditors and interest holders;

    p.      The actual or projected value that can be obtained from avoidable transfers;

    q.      The existence, likelihood and possible success of non-bankruptcy litigation;

    r.      The tax consequences of the plan; and

    s.      The relationship of the debtor with affiliates.

*See e.g., In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 171 (Bankr. S.D. Ohio 1988). The disclosure statement also should contain factual support for opinions stated therein. *In re East Redley Corp.*, 16 B.R. 429, 430 (Bankr. E.D. Pa. 1982).

    6. The United States Trustee objects to the Debtors' Disclosure Statement because it fails to provide adequate information which would allow a claimholder to "make an informed judgement about the Plan." 11 U.S.C. § 1125(a)(1).

***The Disclosure Statement does not contain a complete description of assets and value.***

7.    "A description of available assets and their value is a vital element of necessary disclosure." *In re Ligon*, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985); *In re Metrocraft Publishing Services, Inc.*, 39 B.R. at 569 (noting that the debtor should give actual value of property originally scheduled or an explanation as to why such information has not been presented); *see also In re East Redley Corp.*, 16 B.R. at 430 (disapproving disclosure statement in part due to lack of factual support of valuations by debtor).  The Debtors' Disclosure Statement contains virtually no information regarding available assets, and has no information regarding the value of those assets.

8.  In the "Summary of Assets" (*see* Disclosure Statement at p. 31), the Debtors state that the Schedules filed with the Bankruptcy Court detail the assets owned by each Debtor, but the Debtors indicate that the Schedules list the value of these assets on a net book basis which does not reflect actual value.  The Debtors also refer to their filings with the Securities and Exchange Commission ("SEC"), but those filings also would reflect the value of assets on a book basis.  Further, the financial statements submitted with the SEC filings only disclose information about the Debtors on a consolidated basis (including non-debtors) and do not contain any breakdown of each individual Debtor's assets.  The Disclosure Statement contains no information regarding the actual value of the Debtors' remaining assets.

9.  A related concern is the lack of information in the Disclosure Statement regarding avoidable transfers and potential recovery in other litigation, including non-bankruptcy litigation, that could generate funds for the estates.  The Disclosure Statement generally describes some litigation but gives no information regarding potential recovery.  Further, the Disclosure Statement states that the Debtors may have additional claims, but it fails to identify those potential claims.

Accordingly, the Disclosure Statement lacks sufficient detail regarding these possible litigation rights. *See In re Metrocraft Publishing Services, Inc.*, 39 B.R. at 570-71 (finding that a debtor should discuss the amount of preferences in approximate terms and set forth what steps have been taken toward settling or litigating such claims); *In re Cardinal Congregate I*, 121 B.R. 760, 767 (Bankr. S.D. Ohio 1990).

### The Disclosure Statement does not contain information regarding the condition and performance of the Debtors while in bankruptcy.

10.    The Disclosure Statement contains no information regarding the condition and performance of the Debtors while in bankruptcy. While the Debtors have filed monthly operating reports, "[i]t is not enough that the Disclosure Statement refers its reader to the monthly operating reports filed by the debtor with this Court; the Disclosure Statement should contain a detailed textual description of the debtor's postpetition performance." *In re Cardinal Congregate I*, 121 B.R. at 767.

### The Disclosure Statement does not set forth the methods or underlying data used to produce the financial information contained therein.

11.    The Disclosure Statement makes financial projections covering the operations of the reorganized Debtors through 2011. The Disclosure Statement states that the projections were not prepared in accordance with the standards for making projections set by the American Institute of Certified Public Accountants or in accordance with SEC guidelines regarding projections (*see* Disclosure Statement at p. 89), but it contains no information regarding what methods or underlying data were used to make those projections. *See In re Cardinal Congregate I*, 121 B.R. at 767 (finding that information regarding accounting methods used to prepare financial exhibits must be included in disclosure statement). Without this information, it is difficult to evaluate the Debtors' projections.

12. Likewise, the Debtors' liquidation analysis contains virtually no information. The Disclosure Statement includes a summary chart and states that the analysis contains estimates of the net proceeds that would be received from a forced sale of assets as well as estimates of the amount of allowed claims, but the Disclosure Statement contains no information regarding how the Debtors arrived at those estimates. The Debtors' projections of the forced sale value of the assets is not provided on even a cumulative basis, much less on an individual asset basis. With respect to the estimate of allowed claims, no information is provided regarding the standards utilized by the Debtors to predict which claims would be allowed.

***The Disclosure Statement and Plan contain inadequate disclosures relating to each Debtor's independent obligation to pay quarterly fees to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and to continue reporting of disbursements post-confirmation.***

13. The Plan embodies a compromise and settlement of inter-creditor issues relating to whether or not the assets of the Debtors should be substantively consolidated for purposes of distribution. This compromise (hereinafter the "Substantive Consolidation Compromise"),[2] consolidates the separate Chapter 11 cases of the Debtors for purposes of distribution but does not result in a merger or otherwise affect the separate, legal existence of each Debtor.

14. The Plan and Disclosure Statement do not make it clear that notwithstanding the terms of the Substantive Consolidation Compromise, each unique Debtor has and will have a continuing independent obligation to pay quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) post-confirmation until such time as each of their respective cases is converted, dismissed or a final decree is entered.

---

[2]*See* Article II of the Plan.

15.  Further, with respect to each Debtor's continuing liability for the payment of quarterly fees, the Disclosure Statement and Plan should provide that the Debtors intend to commit themselves to closing the cases of merged or dissolved entities as quickly as is practicable following the Effective Date,[3] and providing notice thereof as each such event occurs.  In addition, in order to prevent confusion over quarterly fee liabilities pursuant to Section 6.12(b) of the Plan and in order to determine the appropriate amount of disbursements for quarterly fee purposes for each separate entity, the Disclosure Statement and Plan also should clearly provide that the reorganized Debtors will continue to submit proper reporting to the United States Trustee on disbursements post-confirmation until each of the Debtor's cases is closed by way of entry of a final decree or is dismissed or converted.

### The Disclosure Statement and Plan do not contain adequate disclosures relating to payments the Debtors intend to make to professionals whose employment was not authorized by the Court.

16.  The Substantive Consolidation Compromise outlined in the Plan provides that the Debtors will pay reasonable fees and expenses of professionals who represented the members of the Official Committee of Unsecured Creditors (the "Creditors Committee") in an aggregate amount not exceeding $1.4 Million.[4]  However, the Disclosure Statement fails to disclose that said fees are, in fact, for additional professionals whose employment was not authorized pursuant to 11 U.S.C. § 327.  The Disclosure Statement also fails to disclose the names of the subject professionals or the

---

[3]Any capitalized terms that are used but not specifically defined herein are ascribed the meanings provided in the Disclosure Statement and Plan.

[4]Debtors have also agreed to support applications for substantial contribution by the Ad Hoc Trade Creditor Committee and the Ad Hoc Retiree Committee in an amount not to exceed $1.3 Million and $50,000, respectively.

amounts the Debtors propose to pay to each.  In fact, the only real reference to these potential payments to unapproved professionals is found on page 49 of the Disclosure Statement, which states in part that "the Creditors Committee's members had in-house professionals or retained outside professionals to assist them in understanding the legal and financial analysis prepared by the Creditors Committee advisors."[5]

17.    The lack of information in the Disclosure Statement regarding these unapproved professionals also brings into question Section 12.4 of the Plan which provides for payment of Indenture Trustee Expenses[6] but fails to disclose what those expenses are or whether any of the Indenture Trustee's fees are encompassed in the $1.4 Million allotment referenced above.  By way of Section 12.4 of the Plan, the Debtors appear to be authorizing payment of all fees incurred by the Indenture Trustee prior to and subsequent to the date of filing of Debtors' bankruptcy petitions, but the Disclosure Statement and Plan do not provide any rationale for this allowance or any estimate of the fees to be paid.  As with the in-house professionals and unapproved professionals of the Creditors Committee, Section 12.4 of the Plan permits court review only to the extent of any disputed amount requested.

---

[5]Though perhaps not related specifically to the issue of disclosure, the United States Trustee notes and intends to raise in connection with confirmation that Section 12.3 of the Plan attempts to circumvent the requirements of the Bankruptcy Code by only requiring that the recipients of these fee payments serve reasonably substantiating documents in support of such fees and expenses to the Debtors.  Section 12.3 of the Plan does not require these additional and unapproved professionals to file an application seeking payment, instead permitting payment of the undisputed portion of each professional's fees, with court review coming at the discretion of each particular professional as to any disputed amounts.

[6]The authorization of the fees and expenses of the Indenture Trustee does not appear to be part of the Substantive Consolidation Compromise.

***The Disclosure Statement and Plan are misleading in that they improperly suggest some authorization under the Bankruptcy Code for multiple Debtors to be absolved of any and all liabilities as of the Effective Date of the Plan.***

18.    Pursuant to Section 6.12(a) of the Plan, the Debtors are permitted to terminate the existence of various corporate entities either by dissolution, merger into an affiliated company or other mechanism.  This provision allows fourteen (14) Debtors to be free from any and all liabilities as of the Effective Date and not be subject to any obligations imposed on the reorganized Debtors. The Bankruptcy Code does not permit the Debtors to absolve themselves of liability under a confirmed plan of reorganization and for other post-emergence liabilities in the manner proposed, and the Plan and Disclosure Statement fail to delineate any factual basis or legal authority for the actions contemplated under this provision.

***The Disclosure Statement and Plan do not contain adequate disclosures relating to the factual and legal bases for the Debtors' intention to grant broad releases of liability to various officers, professionals, insiders and similar parties.***

19.    The United States Trustee objects to the lack of information in the Disclosure Statement regarding the justification for, and consideration received by, the Debtors' intended release of liability of former directors, non-debtor subsidiaries, and professionals of the Debtors, Wachovia and its advisors, and the Creditors Committee, its members, and their advisors as contained in Section 12.12.    The Debtors' release of former directors, officers, directors, employees, lenders, professionals, and non-debtor subsidiaries is uncircumscribed and the released parties do not appear to have offered the Debtors any consideration in exchange for such a release.  *See, e.g., In re Genesis Health Ventures, Inc.,* 266 B.R. 591, 606-07 (Bankr. D.Del. 2001) (management functions do not constitute consideration for such releases).  Section 12.12, entitled "Releases and Related Matters," states as follows:

(a.)  Releases by Debtors

> As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors and any Person seeking to exercise the rights of the Debtors' estate, including, without limitation, any successor to the Debtors or any estate representative appointed or selected pursuant to Section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including claims or causes of action arising under Chapter 5 of the Bankruptcy Code), and liabilities whatsoever in connection with or related to the Debtors, the conduct of the Debtors' business, the Chapter 11 Case, or the Plan (other than the rights of the Debtors and the Reorganized Debtors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, the Reorganized Debtors, the Chapter 11 Case, or the Plan, and that may be asserted by or on behalf of the Debtors, the Estates, or the Reorganized Debtors against (i) any of the other Debtors and any of the Debtors' non-Debtor subsidiaries, (ii) any of the present or former directors, officers, or employees of any of the Debtors or any of the Debtors' non-Debtor subsidiaries, (iii) any Professionals of the Debtors, (iv) Wachovia and its advisors, and (v) the Creditors Committee, its members, and its and their advisors, respectively (but not its members in their individual capacities); provided, however, that nothing in this Section 12.12(a) shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities they may have against any employee (other than any director or officer) that is based upon an alleged breach of a confidentiality, noncompete, or any other contractual or fiduciary obligation owed to the Debtors or the Reorganized Debtors.

20.   The United States Trustee also objects to the lack of information contained in the Disclosure Statement regarding the justification for the releases contained in Section 12.12(b) which require the affirmative vote of claimants.  Section 12.2(b) of the Plan delineates releases that are encompassed by claimants affirmatively voting in favor of the Plan, and states:

> As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of a Claim that affirmatively votes in favor of the

Plan shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, rights, causes of action, and liabilities whatsoever against the present or former directors, officers, or employees of any of the Debtors (collectively, the "Releases"), in connection with or related to the Debtors, the conduct of the Debtors' business, the Chapter 11 Case, or the Plan (other than the rights under the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereunder arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, the Reorganized Debtors, the Chapter 11 Case, or the Plan.

21.  The Disclosure Statement should include the rationale for the requested releases in order to allow claimants to make an informed decision on whether or not to accept the Plan.

### *The Disclosure Statement and Plan do not contain adequate disclosures relating to the factual and legal bases for exculpation provisions intended to benefit various non-debtor entities.*

22.  In addition to the releases provided in Section 12.12 to officers, directors and the like, the Debtors seek by Section 12.15 of the Plan to provide for releases of various non-debtor entities. However, unlike with Section 12.12 which requires an affirmative vote, Section 12.15 is framed so that claimants are not required to affirmatively vote.  Section 12.15, entitled "Exculpation and Limitation of Liability," states:

(a) None of the Debtors, the Reorganized Debtors, their respective subsidiaries, Wachovia, or the Creditors Committee (as to itself or any of its members), or any of their respective present or former members, officers, directors, employees, advisors, Professionals, or agents, shall have or incur any liability to any holder of a Claim or an Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan.

(b) Notwithstanding any other provision of the Plan, no holder of a Claim or an Interest, no other party-in-interest, none of their respective agents, employees, representatives, advisors, attorneys, or affiliates, and none of their respective successors or assigns shall have any right of action against any of the Debtors, any of the Reorganized Debtors, any of the Debtors' or Reorganized Debtors' subsidiaries, Wachovia, or the Creditors Committee, or of their respective present or former members, officers, directors, employees, advisors, Professionals, or agents, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan.[7]

23.   The exculpation provisions in Section 12.15 exonerate the professionals and major participants involved in this case from liability that would otherwise arise under applicable non-bankruptcy law.  Such releases are not in the best interests of the Debtors' estate or their creditors, and the Debtors have not established that such provisions are essential to the implementation of the Plan.  The subject professionals have been paid generous sums for services rendered to the Debtors and the Debtors' estates and said professionals should be prepared to stand behind the quality of those services without the need for a release.

24.   Non-debtor releases have been struck down as conflicting with 11 U.S.C. § 524(e). *See, e.g., Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir. 1985) ("[t]he bankruptcy court has no power to discharge the liabilities of a nondebtor pursuant to the consent of creditors as part of a reorganization plan"); *Resorts Intl v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1401 (9[th]Cir.

---

[7]The Debtors and the Creditors Committee have informed the United States Trustee that additional language will be added to this Section which will limit the release provided in this provision such that the releases will not cover wilful misconduct or gross negligence but even with those anticipated changes, the Disclosure Statement should include the bases for and rationale behind the requested releases in order to allow claimants to make an informed decision on whether or not to accept the Plan.

1995) ("This court has repeatedly held, without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors."); *Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 760 (5ᵗʰ Cir. 1995); *In re Davis Broadcasting, Inc.,* 176 B.R. 290, 292 (M.D. Ga. 1994).

25.  Bankruptcy courts upholding non-debtor releases have invoked 11 U.S.C. § 105; however, that section has a limited scope and does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code.  Non-debtor releases are typically upheld on § 105(a) grounds only in extraordinary cases such as those involving mass tort litigation.  Unlike in those cases, this case presents no extraordinary mass tort litigation issues which must be dealt with in the Plan.  Accordingly, § 105(a) cannot be used to uphold the non-debtor releases contained in the Plan.

26.  Courts addressing the issue of non-debtor releases have weighed five important factors in determining whether such releases may be granted, including whether:

> a.  There is an identity of interest between the debtor and the third party such that a suit against the non-debtor is one against the debtor and will deplete the estate;

> b.  The non-debtor has contributed substantial assets to the reorganization;

> c.  The injunction is essential to the reorganization;

> d.  The affected classes have voted in favor of the plan; and

> e.  The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*See In re M.J.H. Leasing,* 328 B.R. 363, 369 (Bankr. D. Mass. 2005).

27.  Further, in *In re Transit Group*, 286 B.R. 811, 817 ( Bankr. M.D. Fla. 2002), Judge Jennemann, while ruling that some non-debtor releases may be appropriate, found that they should only be allowed if the debtor demonstrates that unusual circumstances exist, and that the non-debtor releases are fair and necessary.

28.  At present, the Disclosure Statement and Plan fail to articulate a basis for the non-debtor releases and fail to address any of the above factors in order to support the necessity for the extraordinary act of releasing non-debtors.  Without some explanation of why the Debtors believe the releases are a necessary and integral part of the Plan and a description of the factual and legal support for such a position, parties receiving the Disclosure Statement and Plan cannot make a fully informed judgment on whether to vote to accept or reject the Plan.

RESPECTFULLY SUBMITTED this July 27, 2006.

Felicia S. Turner
United States Trustee
Region 21


/s/ L. William Porter III
L. William Porter III, Trial Attorney
Florida Bar No. 0116882
Office of the United States Trustee
135 W. Central Blvd., Ste. 620
Orlando, FL 32801
Telephone: (407) 648-6369
Telefax: (407) 648-6323


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing, UNITED STATES TRUSTEE'S OBJECTION TO DISCLOSURE STATEMENT WITH RESPECT TO JOINT PLAN OF REORGANIZATION OF WINN-DIXIE STORES, INC. AND AFFILIATED DEBTORS, has been served this July 27, 2006, through CM/ECF on all parties having appeared electronically in the instant matter.


/s/ L. William Porter III
L. William Porter III, Trial Attorney