**EXHIBIT A – PART 6**

**TO**

**OBJECTION BY CASTO INVESTMENTS COMPANY, LTD., TO PROPOSED CURE AMOUNT SET FORTH IN DEBTORS' SECOND OMNIBUS MOTION FOR AUTHORITY TO (I) ASSUME NON-RESIDENTIAL REAL PROPERTY LEASES, (II) FIX CURE AMOUNTS, AND (III) GRANT RELATED RELIEF**

## Lease

THIS LEASE, made this **20th** day of **November**, 19**67**

between **CASTO DEVELOPMENT CORPORATION, a Florida corporation,**

_____ (hereinafter called "Landlord")

and **WINN-DIXIE STORES, INC., a Florida corporation,**

(hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

### WITNESSETH:

**PREMISES**

That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord, for the term hereinafter specified, the following described premises:

That certain store building, approximately **140** feet in width by **142** feet in depth, and the land on which the same shall stand (hereinafter collectively called "demised premises"), which store building and related improvements are to be constructed by Landlord according to plans and specifications to be approved by the parties as herein provided, and shall be in the location and of the dimensions as outlined in red on the Plot Plan **prepared by Fellman DiSilvestro Associates, Engineers & Architects, Miami, Florida, dated June 5, 1967, last revised/October 3, 1967**

attached hereto marked Exhibit "A" and by this reference made a part hereof.

The demised premises are located in a shopping center development (shown in detail on Exhibit "A"), known as **Southland Shopping Center** (hereinafter called "shopping center"), located **on the North side of State Road #84, between S.W. 9th Avenue, and S.W. 12th Avenue.**

in the City of **Fort Lauderdale,** County of **Broward**,
State of **Florida**, the legal description of the shopping center being as follows:

See Exhibit "B" attached hereto and by this reference made a part hereof for legal description of shopping center.

APPROVED AS TO FORM
DIVISION MGR.
LEGAL DEPT.
WINN-DIXIE STORES, INC.

WD 33-36—Revised 5/65

SHORT FORM LEASE

THIS SHORT FORM LEASE, made this 10th day of November, 1967 between CASTO DEVELOPMENT CORPORATION, a Florida corporation, (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include the successors and assigns of the respective parties;

WITNESSETH:

That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord, for the term hereinafter specified, the following described premises:

> That certain store building, approximately 140 feet in width by 142 feet in depth, and the land on which the same shall stand (hereinafter collectively called "demised premises"), which store building and related improvements are to be constructed by Landlord according to plans and specifications to be approved by the parties as herein provided, and shall be in the location and of the dimensions as outlined in red on the Plot Plan entitled "Southland Shopping Center" prepared by Fellman DiSilvestro Associates, Engineers & Architects, Miami, Florida, dated June 5, 1967, last revised Oct. 3, 1967, attached as Exhibit "A" to a certain collateral lease agreement executed by the parties hereto and of even date herewith.

> The demised premises are located in a shopping center development known as Southland Shopping Center (hereinafter called "shopping center"), located on the North side of State Road No. 84, between S.W. 9th Avenue, and S.W. 12th Avenue, in the City of Fort Lauderdale, County of Broward, State of Florida, the legal description of the shopping center being attached hereto as Exhibit "B" and by this reference made a part hereof.

FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens said premises for the transaction of its business as hereafter provided for an initial term of twenty (20) years from said commencement date.

It is further agreed that Tenant, at its option, shall be entitled to the privilege of five (5) successive extensions of this lease, each extension to be for a period of five (5) years and on the same terms and conditions and at the same rentals provided herein for the initial term.



LEASE BETWEEN WINN-DIXIE STORES,
INC. AND CASTO DEVELOPMENT CORP-
ORATION -- SOUTHLAND SHOPPING CENTER

| | |
|---|---|
| LEASE DATED: | November 20, 1967 |
| TERM: | 20 years, with five year options to renew. |
| COMMENCEMENT: | Supplement agreement to be executed to determine commencement date. |
| RENT: | $39,760. per year; $3,313.33 per month.<br>Maintenance: $1,988 per year; $165.67 per month.<br>TOTAL MONTHLY RENTAL: $3,479.00<br>(Plus overage rent when 1% of gross sales exceed $39,760.) |
| ASSIGNMENT: | Tenant may assign or sublet without consent of landlord; however, tenant shall remain liable. |

TENANT TO FURNISH:
1. Microphone & amplifiers
2. Trade fixtures
3. S gn
4. Increase in real estate taxes, to be deducted from percentages.

LANDLORD TO FURNISH:
1. Automatic doors, interior partitions
2. Plumbing and connection of fixtures of plumbing and electrical outlets
3. Air conditioning and heating systems
4. Manager's office
5. Grocery stockroom shelving
6. Storm shutters, vinyl abestis tile
7. Connect to all utilitiy services.
8. Exterior maintenance
9. Public liability insurance $200,000/500,000; $50,000 property damage. Fire and extended coverage of 80% replacement value.
10. Taxes, assessments, and charges on land.

## Lease

THIS LEASE, made this _20th_ day of _November_, 19_67_,

between _CASTO DEVELOPMENT CORPORATION, a Florida corporation,_

_____ (hereinafter called "Landlord")

and _WINN-DIXIE STORES, INC., a Florida corporation,_

(hereinafter called "Tenant"); _____

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

### WITNESSETH:

**PREMISES**   That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord, for the term hereinafter specified, the following described premises:

That certain store building, approximately _140_ feet in width by _142_ feet in depth, ~~_____~~ and the land on which the same shall stand (hereinafter collectively called "demised premises"), which store building and related improvements are to be constructed by Landlord according to plans and specifications to be approved by the parties as herein provided, and shall be in the location and of the dimensions as outlined in red on the Plot Plan _prepared by Fellman DiSilvestro Associates, Engineers & Architects, Miami, Florida, dated June 5, 1967, last revised/~~June 12, 1967~~ October 3, 1967_ ,

attached hereto marked Exhibit "A" and by this reference made a part hereof.

The demised premises are located in a shopping center development (shown in detail on Exhibit "A"), known as _Southland Shopping Center_ (hereinafter called "shopping center"), located _on the North side of State Road #84, between S.W. 9th Avenue, and S.W. 12th Avenue._ in the City of _Fort Lauderdale,_ County of _Broward_, State of _Florida_, the legal description of the shopping center being as follows:

> See Exhibit "B" attached hereto and by this reference made a part hereof for legal description of shopping center.



WD 33-36—Revised 5/65

TERM

FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens said premises for the transaction of its business as hereinafter provided for an initial term of _____ twenty (20) _____ years from said commencement date. The parties agree to execute a supplemental agreement fixing the commencement date when the same shall have been determined as herein provided.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

RENTAL

1. The Tenant agrees to pay to the Landlord as a minimum guaranteed rental for the demised premises during the term of this lease, and any extensions thereof, the sum of _____ Thirty-Nine Thousand Seven Hundred Sixty and no/100--------- Dollars ($ 39,760.00 ) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of Three Thousand Three Hundred Thirteen and 33/100------------------------------------------------------------- Dollars ($ 3,313.33 ) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof.

In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to amount, if any, by which _____-one-_____ per cent ( 1 %) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30th during the term of the lease, and any extensions thereof, exceeds Thirty-Nine Thousand Seven Hundred Sixty and no/100-------------------- Dollars ($ 39,760.00 ).

-2-

Any excess rent which may become due by reason of the percentage of sales, which shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

**DEFINITION OF "GROSS SALES"**

1a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) accommodation sales, such as sales of postage stamps, government bonds or savings stamps or similar items; (5) returns of merchandise to suppliers or manufacturers; (6) net amount of discounts allowed to any customer, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (7) merchandise or other things of value issued in redemption of trading stamps or as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

**RECORD OF SALES**

1b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

**USE**

2. The demised premises may be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products, or for the conduct of any general mercantile business; provided, however, the demised premises shall not be used, nor assigned or subleased under the terms of Paragraph 26 herein, for any use or business which shall be in direct competition with the primary use or business engaged in by any other than tenant in the shopping center to whom Landlord has granted a right of exclusive use of which Tenant has been given proper notice, and provided further,

Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of said premises, as such shall relate to the cleanliness and use of said premises and the character and manner of operation of the business conducted in or at said premises.

*the demised premises shall not be used for the sale of prescription drugs or drugs required to be dispensed by a licensed pharmacist, and so long as a variety store or junior department store shall be operated in the shopping center, neither shall the demised premises be used for the operation of a variety store or junior department store.

-3-

CONSTRUCTION OF SHOPPING CENTER

The Landlord, at its sole cost and expense, shall construct the shopping center, substantially as shown on Exhibit "A", consisting of all the buildings shown thereon, together with all sidewalks, streets, entranceways, malls, parking areas, service drives, driveways and related improvements, said improvements (excluding buildings) being sometimes hereinafter referred to as "common areas." The Landlord, at its sole cost and expense, shall grade and surface with high quality materials all paved portions of the common areas (including parking area), and shall provide proper and adequate water drainage and lighting system and operations therefor and shall operate and maintain the same in good repair and usable condition for use by the patrons of the shopping center and the tenants and their employees during the term of this lease and any extensions thereof. The arrangement and location of all store buildings and common areas (including parking area) within the shopping center shall at all times during the term of this lease, or any extensions thereof, be maintained as shown on Exhibit "A" and shall not be changed without the written consent of the Tenant. If not shown on Exhibit "A", Tenant expressly reserves the right to approve the finish elevations of all store buildings and common areas (including parking and service areas) within the shopping center which are to be constructed concurrently with Tenant's store building.

Notwithstanding the foregoing, it is understood that Landlord intends initially to construct only Tenant's building and the store buildings required under Articles 5 and 6 herein, together with all the common areas of the shopping center, including without limitation, all the sidewalks, drives, entranceways, service areas and parking areas to the limits of the initial paving as shown on Exhibit "A". Landlord reserves the right, but shall not be required, to construct additional buildings within the areas reserved therefor, either within the initial building outlines or in the area indicated for future development, as shown on Exhibit "A", with the depth and interior dimensioning of such buildings to be in Landlord's discretion; provided, however, such additional buildings shall be of like structural and architectural quality as the building for Tenant and shall front upon a setback line which is the interior sidewalk line of Tenant's building extended easterly and westerly. Throughout the shopping center, in conjunction with the construction of any additional buildings, at least the ratio of automobile parking area to gross building area as hereinafter required shall be maintained at all times, and Landlord shall grade and pave such additional parking area as is necessary and also shall provide such additional buildings with adequate service areas and drives. Landlord agrees that Tenant shall have uninterrupted use and enjoyment of the demised premises and the common areas during any such additional construction without unreasonable interference therewith by reason of such construction work.

Concurrently with the above construction, Landlord agrees at its sole cost and expense, to construct the store building for occupancy by Tenant in accordance with the plans and specifications to be approved by both Landlord and Tenant. Plans and specifications shall be approved when initialed by both parties, and when initialed shall constitute a part of this lease. Said plans and specifications shall provide for a completed store building, commonly referred to as a "lock and key job," and shall include, but without limitation the following: automatic doors, interior partitions, all plumbing and plumbing fixtures, drains, electrical wiring, lighting fixtures to Tenant's requirements, connection of Tenant's trade fixtures to plumbing and electrical outlets, air conditioning and heating systems and equipment including insulated ducts, music and P. A. systems (except microphones and amplifiers to be furnished by Tenant) manager's office, grocery stockroom shelving, storm shutters, floor surfacing of vinyl asbestos tile (color at Tenant's option) and connections to all utility services. Tenant at its own expense shall furnish its own trade fixtures. Any and all such equipment and fixtures furnished by Tenant shall remain its property and may be removed from the demised premises at any time.

COMPLETION DATE

4. Landlord covenants and agrees that the construction of the shopping center shall begin not later than ___April 1, 1968___ and shall be completed not later than ___January 1, 1969___; and if the same shall not be begun or completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and terminate this lease or may extend the Landlord additional time for the beginning or completion of construction; provided, however, that if after the beginning of construction the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than ___March 1, 1969___, said option to terminate shall not arise. If pursuant to this paragraph Tenant shall cancel or terminate this lease, Landlord agrees for a period of three (3) years after such cancellation or termination not to permit or consent to the use as a supermarket of the demised premises, or any portion of the shopping center, or any enlargement thereof.

-4-

COMMENCE-  5. The Tenant shall open its store for business within thirty (30) days following performance
MENT DATE     of the following:

    (a) Tenant's store building and other improvements constructed on the demised premises shall have been delivered to Tenant completed in accordance with the plans and specifications;

    (b) Construction of all of the common areas (including parking area hereinafter specifically required) shall have been completed substantially as shown on Exhibit "A";

    (c) Construction of at least ___485___ lineal feet of store frontage and __49,900__ sq. ft. of total building area (excluding Tenant's store building) shall have been completed as shown on Exhibit "A" and said area leased to other tenants and opened for business or readied for opening for business simultaneously with Tenant; and

    (d) The stores to be operated by each of the following tenants shall have been completed and opened for business or been readied for opening for business simultaneously with Tenant:

        Walgreen Drug Store

        National Chain Variety Store

        Firestone Stores, Inc.

        21,000 square feet of Retail and Service Shops

In the event that all the above requirements shall not have been met on or prior to ___March 1, 1969___, the Tenant at its sole option may cancel and terminate this lease.

Rent shall begin to accrue hereunder upon the date the Tenant opens its store for business, or upon the expiration of thirty (30) days following the performance of all the above requirements, whichever date shall sooner occur. No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications.

OFFICES  Landlord expressly agrees that no motion picture or legitimate
AND      theatre shall be permitted within the shopping center, or any
THEATRES enlargement thereof, except that one (1) theatre may be constructed
therein on the condition that the same shall not be constructed
nearer than 200 feet to Tenant's building; and Landlord agrees
that no office building shall be permitted within the shopping
center, or any enlargement thereof, provided, however, the opera-
tion of not in excess of 3,000 square feet of business and pro-
fessional offices within the shopping center, or any enlargement
thereof, shall not be deemed a violation hereof.

OTHER    6. As a condition and inducement to Tenant's entering into this lease, Landlord represents and
TENANTS     warrants that it has entered into firm commitments for leases with the tenants listed below for
the terms and for the amount of floor space indicated:

| Name | Term Years | Floor Area (sq. ft.) |
|---|---|---|
| Walgreen Drug Store | 15 | 10,000 |
| National Chain Variety Store | 20 | 12,000 |
| Firestone Stores, Inc. | 20 | 7,900 |
| Other Retail and Service Shops | Variable | 21,000 |

Landlord further warrants and represents that such tenants shall occupy the space in the shopping center in the locations indicated on Exhibit "A" and in the minimum amounts set opposite their respective names above; and Landlord agrees, on demand, to furnish evidence satisfactory to Tenant, prior to and as a further condition to the establishment of the commencement date of this lease, that Landlord has entered into non-cancellable leases, except for default, with such tenants.

-5-

PARKING
AND
COMMON
AREAS

7. Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees, a non-exclusive right at all times to use, free of charge, during the term of this lease, or any extensions thereof, all the common areas, including parking area, as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with other similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks.

Landlord shall at all times during the term of this lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A", and of sufficient area to provide:
(a) a minimum ratio of at least ___2.9___ square feet of automobile parking area to each square foot of gross building area (including additional floor levels) in the shopping center, and

within the initial phase of the shopping center,
(b) facilities for convenient parking of at least ___330___ automobiles;

and in event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details, the Tenant at its option shall have the right to terminate this lease, provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord curing the default within thirty (30) days after receipt of such notice of termination. All of the common areas (including parking area) shall be adequately lighted by Landlord at its expense during customary food store shopping hours, and Landlord further agrees that no signboards or other construction shall be erected in any of the common areas (including the parking area) shown on Exhibit "A" or so as to obstruct the view of the demised premises from the adjoining public streets.

SERVICE
AREA

8. Landlord further agrees to provide for the exclusive use of the Tenant at its grocery service entrances a parking space for one large trailer truck for continuous use and further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such space as may be reasonably needed by Tenant for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

UTILITIES

9. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities used by Tenant on the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities.

TENANT'S
REPAIRS

10. Upon completion of construction by Landlord and acceptance of the demised premises by Tenant, Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of the Landlord or which are made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear. Within such repair responsibility of Tenant shall be included the air conditioning and heating equipment (except duct work) provided, Landlord shall accord to Tenant the benefit of any warranties extended by the manufacturers or the installers of such equipment; the interior exposed plumbing and plumbing fixtures, including any stoppages thereof, except such as may be caused by structural defects or faulty construction; and the lighting fixtures and interior wiring extending to the main circuit breaker panels.