**EXHIBIT A – PART 7**

**TO**

**OBJECTION BY CASTO INVESTMENTS COMPANY, LTD., TO PROPOSED CURE AMOUNT SET FORTH IN DEBTORS' SECOND OMNIBUS MOTION FOR AUTHORITY TO (I) ASSUME NON-RESIDENTIAL REAL PROPERTY LEASES, (II) FIX CURE AMOUNTS, AND (III) GRANT RELATED RELIEF**

**LANDLORD'S REPAIRS**

11. The Landlord shall, at its cost and expense, keep and maintain the common areas (including parking area) in good condition and repair, and shall maintain the exterior of Tenant's store building, including the windows and plate glass, roof, gutter, downspouts, exterior painting, masonry walls, foundation and structural members, and the plumbing (including septic tank, if any), wiring, ⟨_____⟩ and floor surfacing of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises. If any portion of the common areas (including parking area) or any portion of the store building, which is the responsibility of the Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so, except that the Landlord shall not be obligated to make or pay for any repairs to Tenant's store building rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, agents or employees, except in the case of damage by fire or the elements, or other casualty covered by Landlord's fire and extended coverage insurance. Within such repair responsibility of Landlord shall be included: the repair of the wiring from and including the main circuit breaker panels extending to the public utility power source.

If in order to protect the Tenant's property in the store building it shall be necessary to make emergency repairs to any portion thereof which is the responsibility of the Landlord to repair, or if the Landlord after receipt of notice as above provided fails or neglects to make with all due diligence such other repairs to the store building or common areas (including parking area) which are the responsibility of the Landlord, the Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred by it in making such repairs. Landlord further covenants that the store building will be so constructed and maintained at all times so as structurally to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the premises which may become necessary in order that said premises may conform to such ordinances, statutes, rules or regulations now in force or which may be hereafter passed, adopted or promulgated, provided, however, that Landlord shall not be responsible therefor if such non-compliance shall be due to the act, fault or neglect of Tenant.

**SIGNS**

12/ With the consent of Landlord, which shall not be unreasonably withheld Tenant may place, erect and maintain any signs on the roof, walls, and any other place on or about the demised premises, which signs shall remain the property of Tenant and may be removed at any time during the term of this lease, or any extension thereof, provided Tenant shall repair or reimburse Landlord for the cost of any damage to the demised premises resulting from the installation or removal of such signs, it being contemplated that the initial signs (including large illuminated signs on the marquee or parapet walls of Tenant's store building) shall be incorporated in the plans and specifications to be approved by the parties, and any further signs shall be subject to the consent of Landlord, not unreasonably to be withheld, it being contemplated that such approval shall be accorded to signs usual in Tenant's business and in reasonable architectural harmony with the signs of other tenants.

**FIXTURES AND INTERIOR ALTERATIONS**

13. The Tenant, at its own expense, may from time to time during the term of this lease make any interior alterations, additions and improvements in and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease.

Tenant may construct and build or install in said premises any and all racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

**INDEMNIFI-**
**CATION**

14.  Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of an accident or damage to any person or property happening on or about the demised premises.

Likewise, Landlord shall indemnify and save harmless the Tenant from any claim or loss by reason of an accident or damage to any person or property happening on or about all common areas (including parking area) of the shopping center, and Landlord further agrees to carry, at its expense, public liability insurance coverage on all common areas (including parking area) of the shopping center, with a contractual liability endorsement on the policy, in a company qualified to transact business in the state in which the demised premises are located, stipulating limits of liability of not less than $200,000 for an accident affecting any one person; and not less than $500,000 for an accident affecting more than one person; and $50,000 property damage. Certificate of such coverage from the insuror providing 30 days' notice to Tenant prior to cancellation or termination shall be furnished to Tenant.

**CLEANLINESS**

15.  Tenant shall at all times keep the interior of the store building in a reasonably neat and orderly condition and shall keep the entryways and delivery areas adjoining the building reasonably clean and free from rubbish and dirt. Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon, and Tenant further agrees to permit the Landlord or its agent at all reasonable times to enter upon the premises for making repairs and for examining or showing the same to prospective purchasers.

**FIRE**

16.  In the event that Tenant's building shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty, then Tenant may elect within thirty (30) days after such damage, to terminate this lease by giving to the Landlord a written notice of termination, and thereupon both parties shall stand released of and from all further liability under this lease. If Tenant's building shall thereby suffer damage to any extent less than 75% of the value thereof, or if Tenant does not elect to terminate as aforesaid, then the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored. If at any time during the term

of this lease or any extensions thereof any of the buildings in the shopping center, exclusive of Tenant's store building, are damaged by fire or by the elements or otherwise, Landlord shall immediately commence and diligently prosecute to completion repair of all such damage and shall restore said improvements to their condition prior to such damage.

                    with not in excess of 80%
                           co-insurance
        Landlord agrees to carry fire and extended coverage insurance on Tenant's building and all other buildings within the shopping center in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees; and Tenant hereby expressly waives any and all claims against the Landlord for loss or damage to Tenant's merchandise, fixtures and equipment due to fire, explosion, windstorm or other casualty covered by standard fire and extended insurance policies, regardless of the cause of such damage, including, without limitation, damage resulting from the negligence of the Landlord, its agents, servants or employees.

        If, as a result of the preceding waiver provisions of this subparagraph and after diligent endeavor, either party is unable to obtain such fire and extended coverage insurance for its property, after fifteen (15) days' written notice thereof by the affected party to the other, the waiver provision given by the affected party shall be deemed inoperative.

                Subject to the provisions of Article 29 hereinafter,

**QUIET ENJOYMENT**    17. The Landlord covenants, warrants and represents that upon commencement of the lease term, the shopping center, including the demised premises, will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

        The Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a general mercantile business or use of common areas for parking purposes, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting Tenant from conducting a general mercantile business or using the common areas (including parking area) in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

                        prior to becoming delinquent.
**TAXES AND LIENS**    18. All taxes, assessments and charges on land or improvements and obligations secured by mortgage or other lien upon the demised premises or the shopping center shall be promptly paid by the Landlord. The Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at six per cent (6%) per annum.

**CONDEM-NATION**    19. If any part of the demised premises or more than twenty per cent (20%) of the buildings, exclusive of Tenant's building, within the shopping center, be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease as aforesaid, the Landlord shall immediately commence and diligently prosecute to completion the repair and restoration of the improvements, including Tenant's store building, within the shopping center to a condition comparable to their condition at the time of taking and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances.

-9-

**CONSTRUCTION RISKS**

22. It is understood and agreed that nothing herein contained shall constitute the Landlord as the agent in any sense of the Tenant in constructing said improvements, and that the Tenant shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of the Tenant's store building for the causes herein stated. The Tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their sub-contractors, employees, agents or servants by reason of Landlord's constructing said improvements pursuant to the terms of this lease. Landlord shall indemnify Tenant and save Tenant harmless from and against all claims and suits for damage to persons or property from defects in material or from the use of unskilled labor or from any negligence caused by Landlord, Landlord's contractors, sub-contractors or by any of their employees, agents or servants during the progress of the work in constructing said improvements or from any faulty construction thereof.

**NOTICES**

23. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail to, and all rent payments shall be made to Landlord at ___Suite 211, 1175 N. E.___

___125th Street, North Miami, Florida 33161___

or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail.

All notices required to be given to Tenant shall be sent by registered or certified mail to

Tenant at ___P. O. Box 352, Biscayne Annex, Miami, Florida 33152___

or to such other address as Tenant may direct from time to time by written notice forwarded to Landlord by registered or certified mail.

**END OF TENANCY**

24. The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct.

**ARBITRATION**

25. In the event there should arise any misunderstanding between the parties hereto as to the compliance with the terms and conditions of this lease upon the part of either of the parties hereto, or as to whether the Tenant's store building tendered by the Landlord has been improved in substantial conformity with the plans and specifications approved by the parties, or whether the common areas, including parking area, comply with the agreement of the parties hereto, or as to whether either party has ground hereunder entitling it to terminate this lease, it is mutually agreed that such differences, if they cannot be satisfactorily adjusted between the parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties hereto agree upon one; otherwise, to a board of three arbitrators, of whom one shall be selected by each party within ten (10) days after such 30-day period, and a third person shall be selected by these two; and the decision and award of such single arbitrator, if only one is used, or any two of such board, if three are used, as the case may be, shall be final and binding upon the said parties and their successors and assigns respectively, and shall have the same force and effect as though such decision had been handed down by a court of final jurisdiction. Each of the parties hereto covenants to abide by any such arbitration decision.

ASSIGNMENT
AND
SUBLEASING

26. The Tenant may without the consent of the Landlord assign this lease, or sublease or vacate the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease.



EXTENSIONS

27. It is further agreed that Tenant, at its option, shall be entitled to the privilege of ___five___ ( 5 ) successive extensions of this lease, each extension to be for a period of ___five___ ( 5 ) years and on the same terms and conditions and ___at the same rentals provided herein for___ ___the initial term.___

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least ___four (4) months___ before the expiration of the initial term, and if extended, at least ___four (4) months___ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

EXCLUSIVE
SUPERMARKET

28. Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods or frozen foods without written permission of the Tenant; except neither the sale of such items in not to exceed 400 square feet of sales area in any storeroom (except as to the Walgreen Drug Store, not to exceed 750 square feet of sales area*) within the shopping center, as an incidental to the conduct of another business, nor the sale by a restaurant type operation of prepared ready-to-eat foods for consumption off the premises, shall be deemed a violation hereof; and Landlord shall also be permitted within the shopping center to lease one storeroom for use as a bakery of not to exceed 1,000 square feet without on-premises baking facilities or 1,500 square feet with on-premises baking facilities.

In the event the demised premises are at any time subject to a first mortgage (provided Tenant has been notified in writing of the name and address of the holder thereof) and so long as said mortgage shall encumber the demised premises, and notwithstanding any provision herein to the contrary, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments because of a violation of terms of this exclusive provision as to property located within 1,000 feet of any exterior boundary of the shopping center, but nothing herein shall deprive Tenant of any rights of recourse against Landlord, its legal representatives, successors and assigns, by way of suit for damages or injunctive relief or as otherwise provided by law, in the event of any such violation.

* and except as to the McCrory store, not to exceed 1,000 square feet of sales are

SUBORDINATE   29. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

BENEFIT   30. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

SHORT FORM LEASE   31. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

MARGINAL TITLES   32. The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

COMPLETE AGREEMENT   33. This written lease contains the complete agreement of the parties with reference to the leasing of the demised premises, except plans and specifications for Tenant's store and related improvements to be formally approved by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

TAXES   34. During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of any increase in ad valorem real estate taxes levied against the demised premises in excess of the amount of such taxes levied thereon for the first (1st) full calendar year of the lease term in which both the value of the land and the buildings thereon shall be assessed for tax purposes; provided, however, any additional rental payable hereunder by Tenant may be credited against any and all percentage rental, if any, which may become due hereunder and provided further, such credit shall be cumulative, and in the event there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, the credit shall be accumulated and may be applied in any year in which percentage rentals shall become payable or shall have previously been paid; such credit shall be made at the time percentage rentals are payable, as herein provided, and the credit for fractional years and fractional months occurring at the beginning and end of the period in which Tenant is responsible for any such tax payments shall be prorated on the basis of the annual credit. Tenant shall be responsible only for its pro rata portion of such taxes for fractional years occurring at the beginning and expiration of the term of this lease.

If such taxes shall not be assessed separately, but shall be included with an assessment of the demised premises and others, said assessments shall be fairly apportioned to determine Tenant's share thereof. Such apportionment shall be made in the ratio which the square footage of Tenant's store building bears to the total square footage of all store buildings (including additional floor levels) from time to time existing in the shopping center. The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any abatements, discounts or refunds thereon. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any increase in taxes is chargeable to Tenant, and such additional rental shall be payable by Tenant on demand after payment by Landlord. All taxes, other than ad valorem real estate taxes, including special assessments, improvement liens and the like, shall remain the sole responsibility of the Landlord.

Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of the Landlord as the Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to the Landlord.

MMON AREA INTENANCE

35. Landlord agrees to operate and maintain all the common areas, as herein defined, and provide therefor all such services as are reasonably required, including, but without limitation, cleaning and sweeping, lighting, policing, if necessary, general repair and maintenance of all paved surfaces, repainting of parking area striping, watering and maintenance of landscaped areas. For such services, Tenant shall pay to Landlord, as additional rental hereunder and as reimbursement for the annual cost thereof, the sum of One Thousand Nine Hundred Eighty-eight and no/100 Dollars ($1,988.00) per year, payable in twelve (12) equal monthly installments of One Hundred Sixty-five and 67/100 Dollars ($165.67) in advance on the first day of each and every calendar month of the lease term, and any extensions thereof. Any additional rental paid under the terms of this paragraph by Tenant may be credited against any and all percentage rentals, if any, which may become due under the terms of this lease on a cumulative basis, and in the event there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, the credit shall be accumulated and may be applied in any year in which percentage rentals shall become payable or shall have previously been paid. Such credit shall be made at the time percentage rentals are payable, as herein provided, and the credit for fractional years and fractional months occurring at the beginning and end of the lease term or any extensions thereof, shall be prorated on the basis of the annual credit. If the Landlord after receipt of written notice from Tenant to do so shall fail to make the repairs or perform the services described in this Article, Tenant shall have the right to make such repairs or cause such services to be performed in its behalf and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse Tenant for the money expended or expense incurred therein.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____

_____
As to Landlord

CASTO DEVELOPMENT CORPORATION

By _____
Its                        President

Attest: _____
Its                        Secretary
LANDLORD
(CORPORATE SEAL)

WINN-DIXIE STORES, INC.

By _____
Its                        President

Attest: _____
Its                        Secretary
TENANT
(CORPORATE SEAL)

_____

_____
As to Tenant

Florida double corporate

STATE OF   FLORIDA         )
COUNTY OF  ~~BROWARD~~ _Dade_ )

I HEREBY CERTIFY that on this day, before me, an officer duly
authorized in the State and County aforesaid to take acknowledgments,
personally appeared _James E. Casto_ and _Bernard Schueffer_,
to me known to be the persons described in and who, respectively, as

_____ President and _____ Secretary of _CASTO DEVELOPMENT_

CORPORATION _____, a    Florida    _____ corporation, executed
the foregoing instrument on behalf of said corporation; and they
severally acknowledged before me that they executed said instrument as
such officers of said corporation in the name of and on behalf of said
corporation; that said _____ Secretary affixed and attested the
seal of said corporation to said instrument; that such acts were done
by authority of said corporation for the uses and purposes in said
instrument set forth; and that the foregoing instrument is the free act
and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed
my official seal this _20th_ day of _November_, 19 _67_, at
_Miami, Florida_, in said State and County.

_Irene Redman_
Notary Public, State and County
aforesaid.  My commission expires:
NOTARY PUBLIC, STATE of FLORIDA at LARGE
MY COMMISSION EXPIRES JUNE 21, 1970
BONDED THROUGH FRED W. DIESTELHORST

STATE OF   FLORIDA         )
COUNTY OF  DUVAL           )

I HEREBY CERTIFY that on this day, before me, an officer duly
authorized in the State and County aforesaid to take acknowledgments,

personally appeared _J. E. Adams_ and _Fred T. Singer, Jr._,
to me known to be the persons described in and who, respectively, as

_Executive_ President and _____ Secretary of _WINN-DIXIE STORES, INC._

_____, a    Florida    _____ corporation,
executed the foregoing instrument on behalf of said corporation; and
they severally acknowledged before me that they executed said instru-
ment as such officers of said corporation in the name of and on behalf
of said corporation; that said _____ Secretary affixed and attested
the seal of said corporation to said instrument; that such acts were
done by authority of said corporation for the uses and purposes in said
instrument set forth; and that the foregoing instrument is the free act
and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed
my official seal this _28th_ day of _November_, 19 _67_, at
_Jacksonville_, in said State and County.

_Carolyn B. Hinson_
Notary Public, State and County
aforesaid. My commission expires:
NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES OCTOBER 8, 1971

LEGAL DESCRIPTION
OF
SHOPPING CENTER

Those certain pieces, parcels or tracts of land situate, lying and being in the City of Fort Lauderdale, County of Broward and State of Florida, more particularly described as follows:

The West one-half (W½) of the Southwest one-quarter (SW¼) of the Southeast one-quarter (SE¼) of the Southeast one-quarter (SE¼) of Section 16, Township 50 South, Range 42 East, less the West 25 feet for street right-of-way; and that portion of the North one-half (N½) of the Northwest one-quarter (NW¼) of the Northeast one-quarter (NE¼) of the Northeast one-quarter (NE¼) of Section 21, Township 50 South, Range 42 East lying North of right-of-way of State Road No. 84, less the West 25 feet thereof for street right-of-way; and the East one-half (E½) of the Southwest one-quarter (SW¼) of the Southeast one-quarter (SE¼) of the Southeast one-quarter (SE¼) of Section 16, Township 50 South, Range 42 East, less the North 294 feet thereof; and the North one-half (N½) of the Southeast one-quarter (SE¼) of the Southeast one-quarter (SE¼) of the Southeast one-quarter (SE¼) of Section 16, Township 50 South, Range 42 East, less the North 294 feet thereof and less the East 35 feet for street right-of-way; and the South one-half (S½) of the Southeast one-quarter (SE¼) of the Southeast one-quarter (SE¼) of the Southeast one-quarter (SE¼) of Section 16, Township 50 South, Range 42 East, less the East 35 feet for street right-of-way and less right-of-way for State Road No. 84; and that portion of the North one-half (N½) of the Northeast one-quarter (NE¼) of the Northeast one-quarter (NE¼) of the Northeast one-quarter (NE¼) of Section 21, Township 50 South, Range 42 East, lying North of right-of-way of State Road No. 84,

ALL LESS the following described portion of the Northeast one-quarter (NE¼) of the Northeast one-quarter (NE¼) of said Section 21, commencing at the Northwest corner of said Northeast one-quarter (NE¼) of the Northeast one-quarter (NE¼) of Section 21; thence Easterly along the North line of said Section 21, a distance of 25 feet; thence Southerly along a line parallel to and 25 feet East of the West line of the said Northeast one-quarter (NE¼) of the Northeast one-quarter (NE¼) of Section 21, making an angle of 89°26'56", in the Southeast quadrant, a distance of 110.54 feet to the Point of Beginning; thence continuing Southerly along the said parallel line a distance of 150 feet to a point on the said North right-of-way line of State Road No. 84; thence Northeasterly, along the said North right-of-way line, making an included angle of 74°45'45", a distance of 150 feet; thence Northerly and parallel to the said West line of the Northeast one-quarter (NE¼) of the Northeast one-quarter (NE¼) of Section 21, making an included angle of 105°14'15", a distance of 150 feet; thence Southwesterly and parallel to the said North right-of-way line of State Road No. 84, making an included angle of 74°45'45", a distance of 150 feet to the Point of Beginning.

EXHIBIT "B"



SITE PLAN

APPROVED
AS TO FORM

DIVISION MGR.

EXHIBIT A
PLOT PLAN
DATE Nov 20, 1967
APPROVED BY:

LANDLORD

TENANT

SOUTHLAND SHOPPING CENTER
FT. LAUDERDALE              FLORIDA
FOR CLAYO DEVELOPERS

FELLMAN DI SILVESTRO ASSOCIATES
ENGINEERS   ARCHITECTS
2325 SOUTHWEST 1st STREET     MIAMI, FLORIDA 33135