**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

|  |  |  |
|---|---|---|
| IN RE | : | Chapter 11 |
|  | : |  |
| WINN-DIXIE STORES, INC., et al., | : | Case No. 05-03817-3F1 |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

## LIMITED OBJECTION OF KRG WATERFORD LAKES, LLC
## TO DEBTORS' SECOND OMNIBUS MOTION FOR AUTHORITY TO (I) ASSUME
## NON-RESIDENTIAL REAL PROPERTY LEASES, (II) FIX CURE AMOUNTS,
## AND (III) GRANT RELATED RELIEF [DOCKET NO. 8941]

KRG Waterford Lakes, LLC ("KRG Waterford"), hereby objects to the cure amount listed on Exhibit B to the *Second Omnibus Motion for Authority to (I) Assume Non-Residential Real Property Leases, (II) Fix Cure Amounts, and (III) Grant Related Relief* [Docket No. 8941]. In support of its Objection, KRG Waterford states as follows:

### I.     BACKGROUND

1.     On or about October 10, 1995, Faison Capital Development, Inc., as landlord, and Winn-Dixie Stores, Inc. (the "Debtor"), as tenant, entered into a lease agreement (the "Lease") covering certain real property and improvements located at a shopping center in Orlando, Florida (the "Premises"), which Lease is subject to a Short Form Lease entered into by the parties on October 10, 1995, First Amendment to Lease dated April 24, 1996, Second Amendment to Lease dated September 5, 1996, Amendment to Short Form Lease dated August 21, 1997, Third Amendment to Lease dated August 22, 1997, and Supplemental Lease Agreement executed on August 22, 1997. Through a series of subsequent transactions, the lease was assigned to KRG

Waterford, the landlord as of February 21, 2005. True and correct copies of the relevant documents are attached hereto as **Collective Exhibit A[1].**

2. The Lease provides for the Debtor, as tenant, to pay KRG Waterford, as landlord, additional rent for reimbursement of the pro-rata share for common area maintenance expenses ("CAM"), real property taxes, and shopping center insurance ("Additional Rent"). (*See* Lease, Section 3(c).)

3. Winn-Dixie Stores, Inc. and various affiliated debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005 (the "Petition Date").

4. On July 28, 2005, KRG Waterford filed its Proof of Claim (Claim No. 9591, a true and correct copy of which is attached hereto as **Exhibit B**) establishing that it is entitled to unpaid Additional Rent totaling $111,632.48, as of the Petition Date.

5. Upon further investigation of its books and records, KRG Waterford discovered that the Proof of Claim understated the 2004 CAM reconciliation by $16,480.92. Thus, the correct cure amount comes to $122,564.27.[2]

6. On March 7, 2006, the Debtor filed its *Sixth Omnibus Objection To No Liability Claims* [Docket No. 6389], asserting that KRG Waterford's claim should be reduced to zero (the cure amount set for the Second Omnibus Assumption Motion). In support of the requested reduction, the Debtor claims that "Claimant provides no documentation despite Debtor's repeated requests." To date, the Debtor has failed to produce any written evidence of the "repeated requests" and KRG Waterford has not located any despite a diligent review of its records.

---

[1] Due to the voluminous nature of the Exhibits, the Exhibits have only been served on those parties requesting electronic service pursuant to this Court's Order (A) Establishing *Notice Procedures on a Final Basis and (B) Continuing Hearing with Respect to Scheduling Omnibus Hearings.* Copies of the Exhibits will be made available upon request directed to Counsel for KRG Waterford.

[2] In addition, there are certain post-petition obligations due and owing that remain unpaid. KRG Waterford reserves the right to address these through a separate motion for administrative rent, at a later date, if need be.

7.   KRG Waterford and the Debtor agreed to indefinitely continue the hearing to allow an opportunity to resolve the objection. (*See* Order of 4/6/05, ¶ 6.) [Docket No. 6965]. Unfortunately, they have presently reached an impasse relating to CAM charges. None of the other components of the prepetition claim, including tax reconciliations totaling $82,029.55, appear to be in dispute.

8.   The zero amount set forth in Exhibit B to the Assumption Motion is unsupportable. KRG Waterford provided general ledgers evidencing the Debtor's pro-rata share for the 2004 CAM Reconciliation and tax statements supporting the 2004 Tax Reconciliation. This supporting documentation was made available to the Debtor well before it filed the Assumption Motion. Nevertheless, the Debtor steadfastly contends that it is entitled to back-up documents for each of the line items in the general ledgers. The Lease (which the Debtor drafted) fails to support the Debtor's position. At best, the right to detailed documentation must be made within 180 days (or approximately six months) after receiving KRG Waterford's itemized statement. This was not done. Moreover, the Debtor's tardiness has prejudiced KRG Waterford's ability to provide all of the documentation in question.

## II.   The Debtor Has Failed To Timely Request The Supporting Documentation

9.   While the Lease enables the Debtor to receive detailed documentation for CAM charges, the Debtor may not wait more than a year before requesting the documentation. No reasonable reading of the Lease clothes the Debtor with any such right.

10.   The relevant section of the Lease provides as follows:

With respect to all amounts charged to Tenant as Additional Rent under this Lease, Landlord shall maintain *for a period of one full calendar year from the last day of the year for which such rent is due*, complete books and records in accordance with generally accepted accounting principles, and all receipts, canceled checks, and other evidences of payment by Landlord (the "Payment Evidence"). On or before thirty (30) days after the end of each calendar year, Landlord shall provide to Tenant an itemized statement showing in reasonable detail the Additional Rent payable for the prior year. Tenant shall have the right, *within one hundred and eighty days of receiving Landlord's*

>    *statement of Additional Rent*, to receive copies of the Payment Evidence and to audit Landlord's records regarding Additional Rent.

(Lease, Section 3(c) (emphasis added).)

11. Any "right" of the Debtor to inspect and audit supporting invoices and other documentation (defined under the Lease as Payment Evidence) is not self-executing. The Lease employs markedly different language with regard to the Landlord's obligations in providing a statement of Additional Rent as compared with providing Payment Evidence in connection with the statement. As to the former, it relies upon the imperative phrase "shall provide." It would have been easy for the Debtor to say that the Landlord "shall provide" Payment Evidence, yet the Debtor elected not to do so. Thus, it would be unreasonable to impose an imperative where the Debtor (who drafted the Lease) did not provide for it and to expand the Debtor's rights under the Lease beyond the language the Debtor drafted.

12. This distinction in language tracks the realities of commercial practice. Tenants do not typically wish to see every shred of payment evidence for CAM expenses covering an entire year each year. The operational costs of wading through this sea of documentation would be an inefficient allocation of resources. Nevertheless, they do not wish to waive the ability to see back-up documentation relating to certain items upon request. This practical distinction is entirely consistent with the linguistic distinction contained in the Lease and contrary to the Debtor's asserted position.

13. Further, the Lease limits the ability of the Debtor to inspect the Payment Evidence to a specific time period. It must occur "within one hundred and eighty days after receiving the Landlord's statement of Additional Rent." Thus, the right to inspect Payment Evidence is limited in time and is lost to the extent that the Debtor elects not to exercise that right within the time period provided for in the Lease. Because the Debtor did not make any such request to KRG Waterford, it waived the right to receive the supporting documentation.

14. Under Florida law, a waiver is a voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right. *LaNeve v. Via South Florida, LLC*, 908 So.2d 530, 535 (Fla. Dist. Ct. App. 2005). By waiting until March 6, 2006 before insisting upon documentation, the Debtor waived any right that it may have had under the Lease. As the Florida Supreme Court has made clear, "when a party waives a right under a contract he cannot, without the consent of his adversary, reclaim it." *Thomas N. Carlton Estate, Inc. v. Keller*, 52 So.2d 131, 133 (Fla. 1951). The Debtor cannot now, at this late date, revive a right to supporting documentation that would have lapsed no later than on October 17, 2005.

15. At the very least, the language quoted above in paragraph 10 is ambiguous as to what entitles the Debtor to the detailed documentation it has suddenly now demanded. Under Florida law, any ambiguities must be interpreted against the Debtor as the drafter of the Lease. *Allstate Ins. Co. v. TIG Ins. Co.*, 711 So.2d 84, 85 (Fla. Dist. Ct. App. 1998); *Coastal Cassion Drill Co., Inc. v. Am. Casualty Co.*, 523 So.2d 791, 792 (Fla. Dist. Ct. App. 1988). Thus, in the alternative, the Court should conclude that the language regarding the right to inspect Payment Evidence is ambiguous as to the conditions that trigger that right. Under this recognized canon of construction, the Court should resolve that ambiguity against the Debtor as the drafter of the Lease.

### III.    KRG Has Been Prejudiced By The Debtor's Delay In Making The Request

16. KRG Waterford had no obligation to keep supporting documentation for CAM charges for more than "one full calendar year from the last day of the year for which such rent is due." (Lease, Section 3(c).)

17. Under the Lease, KRG Waterford did not have to keep the supporting documents beyond December 31, 2005 relating to the 2004 CAM and 2004 Real Estate Tax Reconciliations.

Currently, KRG Waterford has access to only a portion of the supporting documents for 2004. It has been prejudiced by the Debtor's delay in requesting the supporting documents.

18. As a matter of equity, the Court should not impose greater burdens upon KRG Waterford than those imposed under the Lease. Accordingly, the Court should deem the general ledgers sufficient proof of the Debtor's pro-rata share of the 2004 CAM Reconciliation.

WHEREFORE, KRG Waterford requests that the Court (i) set the Debtor's cure obligation related to Store 2270 in the amount of $122,564.27 and other amounts that will continue to accrue until the lease is assumed and the cure amount is paid; (ii) order the Debtor to pay the total cure amount to KRG Waterford at the time of assumption of the Lease and (iii) award KRG Waterford any additional and further relief to which it may be entitled.

DATED: July 28, 2006

Respectfully submitted,

BROAD AND CASSEL
Suite 1400
390 North Orange Avenue
Orlando, Florida  32801
P.O. Box 4961 (32802-4961)
Phone: (407) 839-4200
Fax: (407) 650-0927

By: _/s Roy S. Kobert_____
Roy S. Kobert, P.A.
Florida Bar #: 777153
rkobert@broadandcassel.com

Florida Counsel for KRG Faison-Waterford Lakes Village Limited Partnership

and

>ICE MILLER LLP
>
>Henry A. Efroymson
>Mark A. Bogdanowicz
>One American Square, Suite 3100
>Indianapolis, Indiana  46282-0200
>(317) 236-2100 Telephone
>(317) 236-2219 Facsimile
>henry.efroymson@icemiller.com
>mark.bogdanowicz@icemiller.com
>
>Counsel for KRG Faison-Waterford Lakes Village Limited Partnership

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the parties listed pursuant to this *Court's Order (A) Establishing Notice Procedures on a Final Basis and (B) Continuing Hearing with Respect to Scheduling Omnibus Hearings*, via electronic-mail and/or U.S. First-Class Mail this 28th day of July, 2006:

>By:   */s Roy S. Kobert*
>Roy S. Kobert, P.A.
>Florida Bar #: 777153
>rkobert@broadandcassel.com