UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

WINN-DIXIE STORES, INC., et al.

Debtors,

CHAPTER 11

Case #05-03817-3F1

(Jointly Administered)

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY, OR IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION

JOAN SCHELBLE ("Movant"), by and through her undersigned counsel, pursuant to § 362(d)(1) and (2) of the Bankruptcy Code, moves this Court for entry of an order modifying or lifting the automatic stay, or in the alternative, for adequate protection by allowing Movant to file a Proof of Claim, and in support thereof, states:

1) Movant holds an unsecured claim or interest in property owned and possessed by Debtor in the form of insurance policy benefits. Movant is a party in interest as that term is defined in the Bankruptcy Code.

2) Debtor has control of insurance benefits held by Sedgwick Claims Management Services who is the Third Party Administrator for Winn-Dixie Stores, Inc.

3)   Movant is the holder of a potential claim or interest in the aforementioned insurance policy benefits pursuant to a personal injury cause of action filed in the Circuit Court in and for Lake County, Florida.   See Movant's Complaint attached hereto as Exhibit "A" and by reference made a part hereof.

4)   Movant's claim or interest is unliquidated and the value is undetermined at this time as the personal injury cause of action is currently pending in Lake County, Florida.

5)   Movant does not intend to pursue an action for damages higher than the benefits held by Debtor via Debtor's insurance policy covered through Sedgwick Claims Management Service nor does Movant plan to attempt recovery of any other assets of Debtor, other than the benefits aforesaid.

6)   In the alternative, Movant further offers the attached Proof of Claim and would request that same be accepted by the Court as timely filed inasmuch as Movant did not anticipate having a claim prior to the bar date for filing Claims which expired August 1, 2005.  See Movant's Proof of Claim attached hereto as Exhibit "B" and by reference made a part hereof.

WHEREFORE, Movant requests that the Court enter an order modifying or lifting the automatic stay, to allow Movant to pursue remedies against the insurance benefits aforementioned, or in the alternative, for adequate protection, without further order of Court, and requests that the Court accept the Movant's Proof of Claim as timely filed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished to Allen C. Sang, Esquire, of Carman, Beauchamp & Sang, P.A., 1850 Lee Road, Suite 334, Winter Park, FL 32789, Attorney for Debtor, Winn-Dixie Stores, Inc., by regular U.S. Mail, on this 28th day of July, 2006.

BY: s/Kimberly R. Lambert
KIM R. LAMBERT, ESQUIRE
Florida Bar Number: 0014479
Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
316 South Baylen Street, Suite 600
Post Office Box 12308 (32591)
Pensacola, Florida 32502-5996
(850) 435-7056 (Lambert)
Attorneys for Movant



IN THE CIRCUIT COURT IN AND FOR LAKE COUNTY, FLORIDA

JOAN SCHELBLE

    Plaintiff,

vs.

CASE NO. _06 CA 697_

BRISTOL-MYERS SQUIBB COMPANY.
and WINN-DIXIE SUPERMARKETS,
INC.,

    Defendants.

CLERK OF CIRCUIT
AND COUNTY COURT
LAKE COUNTY
ARES FLORIDA

2006 MAY 22  PM 4:49

## COMPLAINT

COMES NOW Plaintiff, Joan Schelble, ("Plaintiff"), by and through her undersigned

counsel, and sets forth her Complaint for Damages against the Defendants as follows:

### NATURE OF THE ACTION

1.      This is an action to recover damages for personal injuries suffered by Plaintiff as

a direct and proximate result of the Defendants Bristol-Myers Squibb Company (hereinafter

referred to as "BMS") and Winn-Dixie Supermarkets, Inc., (hereinafter referred to as ("Winn-

Dixie") (collectively referred to as "Defendants") negligent and wrongful conduct in connection

with the design, development, manufacture, testing, packaging, advertising, promoting,

marketing, distribution, labeling, and/or sale of the antibiotic Tequin®.

2.      At all times material hereto, Defendants designed, developed, manufactured,

### EXHIBIT "A"

tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold Tequin® in the State of Florida.

## PARTIES

3.    This is an action for damages which exceed the jurisdictional limits of this Court. Further, at all times relevant, Plaintiff was a resident of Leesburg, Florida, in Lake County, is over 19 years of age, ingested Tequin, and was injured in the state of Florida as a result of Defendants' actions inside and/or outside the state of Florida.

4.    The Defendant, Bristol-Myers Squibb, Company, is a Delaware corporation with its principal place of business in New York. At all times material hereto, the Defendant was in the business of manufacturing, promoting, marketing, developing, supplying, labeling, testing, selling and/or distributing the antibiotic Gatifloxacin, also known as Tequin (hereinafter referred to as "Tequin") in the state of Florida.

5.    The Defendant, Winn-Dixie Supermarkets, Inc. is a Florida corporation with its principal place of business in Florida. At all times material hereto, this Defendant was in the business of marketing, promoting, selling and/or distributing the antibiotic Tequin in the state of Florida. In addition to its retail pharmacy business, at all times material hereto, Winn-Dixie was a licensed pharmaceutical distributor of Tequin within the state of Florida.

## GENERAL ALLEGATIONS

6.    Defendants, directly or indirectly, negligently and/or defectively made, created, manufactured, assembled, designed, sterilized, tested, labeled, supplied, packaged, distributed,

2

marketed, advertised, warned, and/or sold in the state of Florida, the antibiotic Tequin.

7.      Defendants had control of the design, assembly, packaging, marketing, advertising, manufacturing, labeling, testing, promoting, and/or sale of the antibiotic Tequin.

8.      At all times material hereto, the Defendants herein either knew or should have known that the drug was related to and associated with severe and life threatening complications and side effects including but not limited to, dysglycemic events, such as hyperglyaemia, hypoglycaemia, diabetic coma, diabetic hyperglycaemic coma, diabetic hyperosmolar coma, diabetic ketoacidosis, hypoglycaemic coma, and hyperosmolar state.

9.      Although Defendants knew or should have known that dangerous risks were associated with the use of Tequin, Defendants proceeded to or permitted the drug to be advertised, promoted and/or sold without adequate warnings of the serious side effects and dangerous risks.

10.     Tequin was approved by the Food and Drug Administration ("FDA") of the United States on December 17, 1999 and was subsequently introduced into the stream of commerce in the United States market.

11.     Tequin is an antibiotic in a class of at least seven fluorouquinolones used to treat a variety of infections, including, but not limited to, lung, sinus, skin and/or urinary tract infections and certain sexually transmitted diseases, such as gonorrhea and syphilis.

12.     Tequin offers no unique benefit over the other fluoroquinolones; however, it is associated with unique, severe, life-threatening risks that are not associated with other fluoroquinolones.

13.     Prior to the May 1, 2006 notice from BMS that it was to discontinue marketing

3

and selling the drug, Defendants initially represented to the public that Tequin was as effective as other fluoroquinolones. Defendants failed to make sufficient changes in these representations, labeling, or physician communications to distinguish Tequin from other quinolones and to alert health care providers and patients that Tequin had special or unique risks.

14.    In 2001, case reports of Tequin-associated dysglycemia in both diabetics and non-diabetis were being published in the medical literature. It was not until October 2002, that BMS changed the label to include, although inadequate, a warning describing the potential gatifloxacin-associated dysglycemia.

15. In 2003, in the      Canadian Adverse Reaction Newsletter, it was reported that after a review of Health Canada's database of spontaneous reports, from February 2001 to February 2003, there was an indication that hyperglycemia and hypoglycemia were reported more frequently with Tequin than with other quinolones. Specifically, there were 28 serious reports of abnormal glucose metabolism associated with Tequin, 19 hospitalizations, and two deaths.

16.    In 2003, the drug was contraindicated in Japan for diabetics, however, no such contraindication appeared in the United States label until February of 2006.

17.    Despite the data available to the Defendants, they failed to adequately alter the drug inserts and/or labeling and/or promoting to indicate the severe risks, and potentially fatal, dysglycemic reactions. While the aforementioned studies and data (dating back to 2002) indicated a strong correlation between Tequin patients with diabetes and the adverse reaction of severe hypoglycemia, the labeling change by BMS in January 2004 did not adequately address this serious adverse reaction.

18.    Defendant BMS revised it's package insert four times, however, at no time did the

4

insert adequately address and clarify the drug's tendency to cause severe dysglycemic reactions. It merely referred to the reaction as a "disturbance" in blood glucose, effectively deluding patients into thinking that Tequin was safe.

19.     As Frothingham reported in his Glucose Homeostasis Abnormalities Associated with Use of Gatifloxacin study in November of 2004, there was a 56 fold increase in severe glucose homeostasis abnormalities and gatifloxacin-associated dysglycemia.

20.     On February 15, 2006, Defendant BMS revised the labeling of Tequin contraindicating the drug for use in diabetic patients. Additionally, the Defendant strengthened the warning in reference to dsyglycemia and included other risk factors. However, as alleged in the Public Citizen petition filed May 1, 2006, this fourth label change was an insufficient remedial action for a drug that carries a unique risk without a unique clinical benefit as compared to the other flouroquinolones.

21.     On March 1, 2006, a study by Park-Wyllie, et al published in the New England Journal of Medicine showed that all patients (diabetic or non-diabetic) having received Tequin had approximately 17 times the odds of having a hyperglycemic episode and 4 times the odds of having a hypoglycemic episode compared with other antibiotics. Again, the data used in this study was available to Defendants as early as April 2002.

22.     On May 2, 2006, Defendant BMS quietly announced that it would no longer manufacture Tequin for economic reasons. However, this notice is grossly inadequate to protect the public's health given the data that is known and since there is no intention by the defendants to stop selling the drug already in the channels of commerce.

23.     The representations made by the Defendants were false and misleading and

5

allowed the continuation of treatment of patients with Tequin and subsequent harm to numerous patients, including Plaintiff.

24.     Plaintiff, Joan Schelble was prescribed and ingested the Tequin in February 2004 and experienced a severe hypoglycemic reaction after only one dose, which resulted in her admission to the hospital for treatment. Plaintiff is and was a diabetic patient at the time she was prescribed Tequin.

25.     As a direct and proximate result of defendants placing the drug into the stream of commerce, Plaintiff suffered severe and life-threatening injury.

26.     Plaintiff has also incurred significant medical, hospital, and/or pharmaceutical expenses, lost wages and/or other economic loss.

## COUNT 1
## STRICT PRODUCT LIABILITY
## DEFECTIVE DESIGN

27.     Plaintiff repeats, reiterates and realleges the allegations set forth in paragraphs1 through 26 above, with the same force and effect as if fully set forth herein.

28.     At all times material to this action, defendants engaged in the business of selling, distributing, supplying, manufacturing, marketing, promoting and/or selling the drug Tequin, which is defective and unreasonably dangerous to consumers, including Joan Schelble.

29.     At all times material to this action, Tequin was sold, distributed, supplied, manufactured, marketed and/or promoted by defendants was expected to reach, and did reach, consumers in the State of Florida, including Joan Schelble, without substantial change in the condition in which it was sold.

6

30.     At all times material to this action, Tequin was sold, marketed, distributed, supplied, manufactured and/or promoted by defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce.

31.     The product was defective and unreasonably dangerous, and was defectively designed, marketed and packaged when it left the possession of the defendants in that, among other ways:

> a.     It caused injury to the user far beyond any warned, noticed, expected or reasonable side effect or adverse reaction and when placed in the stream of commerce it contained unreasonably dangerous defects subjecting plaintiff to risks from expected or known usage, including bodily injury and death, which exceeded the benefits of the drug;
>
> b.     when placed in the stream of commerce it was defective in design and formulation making use of the drug more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the taking of equivalent antibiotics;
>
> c.     it contained insufficient and/or ineffective warnings to alert consumers and users to the risks of injury and death by hyperglycemia, hypoglycemia and other serious side effects or reactions;
>
> d.     the drug caused harmful side effects which outweighed its potential utiliy;
>
> e.     it was insufficiently tested;
>
> f.     there were insufficient instructions on the proper use of the drug;
>
> g.     there was misleading advertising and promotion concerning the safety and

7

benefits of using the drug;

h.    there were inadequate post-marketing warnings or instructions because, after these defendants knew or should have known of the significant risks previously described, the defendants failed to provide adequate warnings to users and consumers, and/or their physicians, and continued to promote the sale and use of the drug; and

i.    the aforesaid drug had not been materially altered or modified prior to the use of said drug by plaintiff.

j.    The drug was not accompanied by adequate instructions and/or warnings to apprize consumers, including Joan Schelble, of the full nature or extent of the risks and side effects associated with the use of Tequin, thereby rendering defendants liable to Joan Schelble, individually and collectively, pursuant to Section 402A of the Restatement 2nd of Torts; and

(f)    Defendants placed Tequin in the stream of commerce when it knew or should have known that Tequin would be prescribed in conjunction with other medications and drugs, and that substantial risk of harm was posed to consumers utilizing Tequin either alone or in conjunction with other medications.

32.    The Plaintiff used the drug for its intended purposes, i.e., to fight infection.

33.    Plaintiff could not have discovered any defect in the drug through the exercise of care.

34.    Defendant BMS failed to provide a reasonably safe alternative formulation of the

8

drug when defendants BMS knew or should have known that other antiboitics were available and existing in the market which could fight infection in patients without subjecting them to the risk to which Tequin subjected the patient.

35.     As a direct and proximate result of the defective condition of the drug, Plaintiff suffered severe and permanent physical injuries and endured substantial pain and suffering.   She incurred expenses for medical treatment, loss of capacity for the enjoyment of life, aggravations of pre-existing conditions and other losses and damages recognized by Florida law.   Plaintiff has been physically, emotionally, and economically injured and seeks all damages recoverable by law from Defendants, as alleged herein.

WHEREFORE, Plaintiff Joan Schelble demands judgment against Defendants for damages, costs, and a trial by jury.

## COUNT II
## STRICT PRODUCT LIABILITY
## (FAILURE TO WARN)

36.     Plaintiff repeats, reiterates and realleges the allegations set forth in paragraphs1 through 35 above, with the same force and effect as if fully set forth herein.

37.     The drug was defective and unreasonably dangerous when it left the possession of the Defendants in that they contained warnings insufficient to alert Plaintiff and/or her physicians to the severe and life threatening complications and side effects, including, but not limited to, dysglycemic events such as hyperglyaemia, hypoglycaemia, diabetic coma, diabetic hyperglycaemic coma, diabetic hyperosmolar coma, diabetic ketoacidosis, hypoglycaemic coma, and hyperosmolar state.

9

38.     Plaintiff used the drug for its intended purpose, i.e., to fight infection.

39.     Plaintiff could not have discovered any defect in the drug product through the exercise of care.

40.     The Defendant manufacturers, as manufacturers of a prescription device, are held to the level of knowledge of an expert in the field.

41.     The prescribing physician did not have substantially the same knowledge as an adequate warning from the manufacturer or distributor should have communicated to the prescribing physician.

42.     The warnings that were given by the Defendants to the prescribing physicians were not accurate, clear, and/or were ambiguous.

43.     The Defendants had a continuing duty to warn the Plaintiff and/or the prescribing physicians of the dangers associated with the drug.

44.     As a direct and proximate result of the defective condition of the drug, Plaintiff suffered severe and permanent physical injuries and endured substantial pain and suffering.  She incurred expenses for medical treatment, loss of capacity for the enjoyment of life, aggravations of pre-existing conditions and other losses and damages recognized by Florida law.  Plaintiff has been physically, emotionally, and economically injured and seeks all damages recoverable by law from Defendants, as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

10

## COUNT III
## NEGLIGENCE

45.     Plaintiff repeats, reiterates and realleges the allegations set forth in paragraphs1 through 44 above, with the same force and effect as if fully set forth herein.

46.     Defendants, directly or indirectly, negligently and/or defectively made, created, manufactured, assembled, designed, sterilized, tested, labeled, supplied, packaged, distributed, promoted, marketed, advertised, warned, and/or sold, in the state of Florida, the drug Tequin.

47.     At all times material hereto, Defendants had a duty to Plaintiff to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, testing, labeling, assembling, packaging, distribution, promotion, and sale of their respective drug.

48.     Defendants breached that duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff in the following ways:

> a.    Failed to include adequate warnings with the drug that would alert consumers and physicians to the potential risks and serious side affects of the drug;
>
> b.    Failed to adequately and properly test the drug before placing the drug on the market;
>
> c.    Failed to conduct sufficient testing on the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, severe dyglycemia;
>
> d.    Failed to adequately warn Plaintiff and the prescribing physician that use of the drug carried a risk of severe and life-threatening disability due to

11

dysglycemia;

e.     Failed to warn Plaintiff and the prescribing physician that use of the drug
       carried a risk that hospitalization may become necessary to correct the
       severe blood glucose disturbances;

f.     Failed to provide adequate post-marketing warnings or instructions after
       the Defendants knew or should have known of the significant risks of
       severe and life-threatening dysglycemia from the use of the drug;

g.     Failed to adequately warn the Plaintiff and the prescribing physician that
       the drug products should not be prescribed for people with diabetes;

h.     Failed to warn the Plaintiff and prescribing doctors that the drug product
       would create a serious and life-threatening risk of glucose homeostasis and
       have very little utility;

i.     Encouraged use while underplaying the side effects to doctors and the
       public in order to make a profit from sales;

49.    Defendants knew or should have known that the drug caused unreasonably
dangerous risks and serious side effects of which the Plaintiff and the prescribing physician
would not be aware. Defendants nevertheless advertised, marketed, sold and/or distributed the
drug knowing that there were safer methods and products to treat infection.

50.    As a direct and legal result of the negligence of Defendants, Plaintiff suffered
severe and permanent physical injuries and endured substantial pain and suffering. She incurred
expenses for medical treatment, loss of capacity for the enjoyment of life, aggravations of pre-
existing conditions and other losses and damages recognized by Florida law. Plaintiff has been

physically, emotionally, and economically injured and seeks all damages recoverable by law from Defendants, as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT IV
## BREACH OF IMPLIED WARRANTY

51.     Plaintiff repeats, reiterates and realleges the allegations set forth in paragraphs 1 through 50 above, with the same force and effect as if fully set forth herein.

52.     When Defendants placed the drug into the stream of commerce, they knew of the use for which the drug was intended and impliedly warranted the products to be of merchantable quality and safe and fit for such use.

53.     Plaintiff reasonably relied upon the expertise, skill, judgment and knowledge of Defendants and upon the implied warranty that the drug were of merchantable quality and fit for use for weight loss and weight control.

54.     The drug was not of merchantable quality and was not safe or fit for its intended use because the products were and are unreasonably dangerous and unfit for the ordinary purposes for which they were used.

55.     As a direct and legal result of the breach of warranty of Defendants, Plaintiff suffered severe and permanent physical injuries and endured substantial pain and suffering.  She incurred expenses for medical treatment, loss of capacity for the enjoyment of life, aggravations of pre-existing conditions and other losses and damages recognized by Florida law.  Plaintiff has

13

been physically, emotionally, and economically injured and seeks all damages recoverable by law from Defendants, as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT V
## FRAUD AND MISREPRESENTATION

56.    Plaintiff repeats, reiterates and realleges the allegations set forth in paragraphs1 through 55 above, with the same force and effect as if fully set forth herein.

57.    Defendants fraudulently, intentionally and/or negligently misrepresented to the Plaintiff, by and through her prescribing physician, and general public the safety and effectiveness of the drug and/or fraudulently, intentionally and/or negligently concealed material, adverse information regarding the safety and effectiveness of the drug.

58.    Defendants' misrepresentations were communicated to the prescribing physician with the intent that they reach the Plaintiff.

59.    Defendants either knew or should have known that the representations were false.

60.    Defendants made the misrepresentations and/or actively concealed this information with the intention and specific desire that the Plaintiff, the prescribing physician or other dispensing entities and the consuming public would rely on such in selecting the drug as treatment for infection.

61.    Defendants negligently diluted and/or concealed material, adverse information regarding the safety and effectiveness of their product.

14

62.     Defendants made these misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known, that their drug product had defects, dangers, and/or characteristics that were other than what the Defendants had represented to the prescribing doctors or other dispensing entities, the FDA and the consuming public, including the Plaintiff herein. Specifically, the Defendants misrepresented to and/or actively concealed from Plaintiff, her prescribing physicians or other dispensing entities, the FDA and the consuming public that:

a.     It was dangerous to prescribe the drug to patients with diabetes;

b.     The drug was as safe as other quinolones in its class;

c.     The drug, used alone and/or in combination, carried risks of serious adverse effects;

d.     After discontinuing use due to adverse effects, that treatment of initial infection would be delayed;

e.     There had been insufficient studies regarding the safety and efficacy of the drug for use in both diabetics and non-diabetics;

f.     Despite knowing that there had been insufficient or inadequate testing of the drug, the Defendants marketed, promoted and/or sold the drug as if they were fully and adequately tested;

g.     Failed to advise Plaintiff and others that prior studies, research, reports and/or testing had been conducted linking the use of the drug, to serious adverse reactions, including, but not limited to severe and life-threatening dyglycemia; and

15

h.    Misrepresented and/or actively concealed the fact that Defendants knew, or should have known of adverse event reports, animal studies, case reports and other studies associating events of dysglycemia and death to the drug.

63.    The misrepresentations of and/or active concealment by the Defendants were perpetuated directly and/or indirectly by the Defendant, BMS, its sales representatives, employees, distributors, agents and/or detail persons.

64.    The misrepresentations of and/or active concealment by the Defendants constitutes a continuing tort.

65.    Through Defendant manufacturers' product insert (s), the Defendant manufacturers continued to misrepresent the potential risks and complications associated with the Tequin.

66.    Defendants had a post-sale duty to warn Plaintiff about the potential risks and complications associated with Tequin in a timely manner.

67.    The Defendants misrepresented the safety and efficacy of the drug products in their labeling, advertising, product inserts, promotional materials, or other marketing efforts.

68.    Plaintiff and/or the prescribing physician or other dispensing entities justifiably relied on and/or were induced by the misrepresentations and/or active concealment of Defendants to Joan Schelble's detriment.

69.    As a direct and legal result of the negligent misrepresentations of Defendants, Plaintiff suffered severe and permanent physical injuries and endured substantial pain and suffering. She incurred expenses for medical treatment, loss of capacity for the enjoyment of

16

life, aggravations of pre-existing conditions and other losses and damages recognized by Florida

law. Plaintiff has been physically, emotionally, and economically injured and seeks all damages

recoverable by law from Defendants, as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, as well as

all costs of this action and a trial by jury of all issues to be tried.

### Plaintiff's Damages

70.     As a result of the combined and concurring negligence, fraud, misrepresentations,

and the sale, distribution and promotion of the defective product, each of the above-named

defendants have caused or contributed to cause the following injuries to the plaintiff:

> a.     plaintiff has been caused to suffer physical injury and pain and suffering,
> disability and impairment, lost capacity to enjoy life, and mental anguish;
>
> b.     plaintiff has been caused to incur medical expenses and will in the future
> incur medical expenses;
>
> c.     The said injuries, damages and losses are ongoing and permanent and will
> continue into the future.

17

WHEREFORE, plaintiffs demand judgment against each of these defendants, both separately and severally, of all kinds and nature as are allowed by law, for all of the counts and causes alleged above, for compensatory damages, in such an amount as may be awarded to each plaintiff by a jury.

**JURY TRIAL DEMANDED**

Respectfully submitted,

LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, P.A.

By: _____

PETER L. KAUFMAN, ESQ.
Florida Bar No. 548421
KIMBERLY R. LAMBERT, ESQ.
Florida Bar No. 0014479
F. JEROME TAPLEY, ESQ.
Florida Bar No. 22066
316 South Baylen (32501)
Pensacola, Florida 32581
(850) 435-7056
(850) 436-6056 (facsimile)
Attorneys for Plaintiff

18

**FORM B10** (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT _middle_ DISTRICT OF _Florida_ | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Winn-Dixie Stores, Inc. | Case Number<br>05-03817-3F1 | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Joan Schelble<br>Name and address where notices should be sent:<br>c/o Kimberly Lambert, Esq.<br>316 S. Baylen Street<br>Pensacola, FL 32502<br>Telephone number: (850) 435-7056 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☑ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

| Last four digits of account or other number by which creditor identifies debtor: 1199 | Check here ☐ replaces<br>if this claim ☐ amends   a previously filed claim, dated:_____ |
|---|---|

| 1.  Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☑ Personal injury/wrongful death<br>☐ Taxes<br>☐ Other _____ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br>from _____ to _____<br>(date)        (date) |
|---|---|

| 2.  Date debt was incurred:<br>February, 2006 | 3.   If court judgment, date obtained: |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case was filed. See reverse side for important explanations.

| Unsecured Nonpriority Claim $ unliquidated<br>☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | Secured Claim<br>☐ Check this box if your claim is secured by collateral (including a right of setoff).<br>Brief Description of Collateral:<br>☐ Real Estate   ☐ Motor Vehicle   ☐ Other_____<br>Value of Collateral:  $_____<br>Amount of arrearage and other charges at time case filed included in secured claim, if any:  $_____ |
|---|---|
| **Unsecured Priority Claim**<br>☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.<br>Amount entitled to priority  $_____<br>Specify the priority of the claim:<br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)<br>☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| 5.   Total Amount of Claim at Time Case Filed: | $ unliquidated | | | |
|---|---|---|---|---|
| | (unsecured) | (secured) | (priority) | (Total) |

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 6.   **Credits:**   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

7.   **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8.   **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br>7-28-06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>_Kimberly Lambert_ |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to     **EXHIBIT "B"**     18 U.S.C. §§ 152 and 3571.