UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| WINN-DIXIE STORES, INC., *et al.*, ) | CASE NO. 05-03817-3F1 |
| ) | |
| Debtors. ) | CHAPTER 11 |
| ) | JOINTLY ADMINISTERED |
| ) | |

**LIMITED OBJECTION OF DEUTSCHE BANK TRUST COMPANY AMERICAS, PASS-THROUGH TRUSTEE TO DEBTORS' SECOND OMNIBUS MOTION FOR ORDER TO (I) ASSUME NON-RESIDENTIAL REAL PROPERTY LEASES, (II) FIX CURE AMOUNTS AND (III) GRANT RELATED RELIEF**

TO THE HONORABLE, JERRY A. FUNK
UNITED STATES BANKRUPTCY JUDGE:

DEUTSCHE BANK TRUST COMPANY AMERICAS, PASS-THROUGH TRUSTEE ("Deutsche Bank") by their undersigned attorneys, make this Objection to Debtors' Second Omnibus Motion for Order to (I) Assume Non-Residential Real Property Leases, (II) Fix Cure Amounts and (III) Grant Related Relief (the "Motion") and in support thereof aver:

1. Deutsche Bank (formerly known as Bankers Trust Company) is acting as (i) Pass-Through Trustee under the Amended and Restated Pass-Through Trust Agreement (Winn-Dixie Pass-Through Certificates, Series 1999-1), dated as February 1, 2001, among Deutsche Bank, as Indenture Trustee, First Union National Bank (now known as Wachovia Bank, N.A.), as Servicer, and Deutsche Bank, as Pass-Through Trustee (the "Pass-Through Trust Agreement") and (ii) Indenture Trustee under fifteen Indentures ("Indentures", as that term is defined in the Pass-Through Trust Agreement) pursuant to which the secured notes described in paragraph 2 were issued.

10062611.1

2. In the transaction contemplated by the Pass-Through Trust Agreement, certain of the Debtors in this proceeding sponsored the issuance of over $402 million in securities denominated "Winn-Dixie Pass-Through Certificates, Series 1999-1" (the "Certificates") of which $301.4 million remains outstanding as of the date hereof. The Certificates represent undivided interests in a pool of notes issued pursuant to the Indentures which are secured, *inter alia*, by (a) mortgages on fifteen manufacturing, warehouse and office properties each owned by a special purpose entity and leased, under fifteen separate leases (the "Leases"), to Winn-Dixie Stores, Inc. or a wholly-owned subsidiary thereof and fully guaranteed by the parent corporation under a guaranty agreement ("the WD Stores Guaranty"), (b) assignments of such Leases and (c) a Residual Value Surety Bond (the "Residual Value Surety Bond") issued by Centre Reinsurance (U.S.) Limited (the "Surety") to assure the residual value of the leased premises at the end of the Lease terms. The Offering Memorandum for the Certificates, dated August 16, 1999, states that the leased facilities then had an aggregate appraised value of over $421 million. Six of the Leases (the "Deutsche Leases") are the subject of this Motion.[1] Those Deutsche Leases are:

| 5244 EDGEWOOD COURT | JACKSONVILLE | FL |
|---|---|---|
| US HWY 31/6080 MOBILE HWY | MONTGOMERY | AL |
| 3300 N.W. 123rd STREET | MIAMI | FL |
| 3015 COASTLINE DRIVE | ORLANDO | FL |
| HWY. 190 WEST | HAMMOND | LA |
| 255 JACKSONVILLE HIGHWAY | FITZGERALD | GA |

---

[1] Eight of the remaining leases in the financing were rejected and one was assumed and assigned by the Debtor.

## Background

3. The Debtors filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code on or about February 21, 2005 in the United States Bankruptcy Court for the Southern District of New York. The matter was subsequently transferred to this Court. The Debtors continue to operate their business as debtors-in-possession.

4. On or about May 19, 2006, Debtors filed their Omnibus Motion to assume non-residential real property leases, which Omnibus Motion was amended by this Motion. By this Motion, Debtors seek to assume additional leases including the Deutsche Leases, with said assumption to be effective as of the Effective Date of Debtors' Plan of Reorganization. With regard to the Deutsche Leases, Debtors maintain that no cure amounts are due. This is not correct.

## CURE AMOUNTS AND ADEQUATE ASSURANCE, AMONG OTHER THINGS, MUST BE ORDERED AS A CONDITION OF ASSUMPTION

5. In each of the Deutsche Leases sought to be assumed, there is a broad indemnity provision whereby Debtors agree to reimburse Deutsche, inter, alia, for all "Claims that [it] may have suffered…arising out of (i) the acquisition, ownership, leasing, subleasing, assignment transfer of title, sale, refinancing, renewal, return, disposition, operation, possession…of the Lease…, (2) the Operative Documents [which consist of all of the Certificate financing documents, including the Indentures and the Pass-Through Trust Agreement]" [A representative copy of Section 19.01 which section is contained in each of the subject Leases is annexed as Exhibit A].

### a) Legal and Related Fees must be paid.

6.  "Claims" in the Deutsche Leases is a defined term and is defined in Appendix A of each of the Deutsche Leases as follows:

> "Claims" shall mean Liens (including, without limitation, lien removal and bonding costs) liabilities, obligations, damages, losses, demands, penalties, assessments, payments, fines, claims, actions, suits, judgments, settlements, costs, expenses and disbursements (including, without limitation, reasonable, actually-incurred legal fees and expenses and costs of investigation) of any kind and nature whatsoever.

7.  In the course of these cases Deutsche Bank and the Servicer under the Pass-Through Certificates have expended and continue to expend substantial sums to protect the interests of the Certificate Holders and underlying properties and to administer the trusts created under the Indentures and the Pass-throught Trust Agreement. The amount of such fees accrued to date are still in the process of being compiled but are believed to total several hundred thousand dollars. Further substantiation of these amounts will be provided upon request. These amounts are appropriate cure amounts and must be paid as a condition of any assumption.

8.  Thus, as part of Debtors' obligations to cure, Debtors are obligated to pay the Deutsche Bank's and the other Indemnitees' (including the Servicer's) attorneys' and related fees. *See* 11 U.S.C.§ 365(b)(1)(B). Attorneys' fees due under the Leases are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1489, 1494-6 (D.C. Cir. 1985); *Andrew v. KMR Corp.*, 17 B.R. 438, 439 (Bankr. 9th Cir. 1982); *In re BAB Enterprises, Inc.*, 100 B.R. 982 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 752-4 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 321 (Bankr. S.D.N.Y. 1986). Accordingly, as part of its pecuniary loss, Deutsche Bank is entitled to such fees and they must be paid as a condition to assumption.

      **b)    Winn Dixie Stores, Inc. Guaranty must be reaffirmed and assumed.**

9. In addition to the legal and related fee issue, each of the Deutsche Leases under which Winn-Dixie Stores, Inc. ("WD Stores") is not the lessee are guaranteed by the an WD Stores' Guaranty Agreement (the "Guarnty"). This Guaranty is an integral part of the Deutsche Leases and must be reaffirmed and assumed with respect to the relevant Deutsche Leases as part of any assumption. Debtors motion is silent on this point and must be amended such that the Guaranty is reaffirmed and assumed if assumption is to be permitted.[2]

### c) Real Estate Taxes and Certain other Accrued and Accruing Cure Amounts.

10. Deutsche Bank believes that there may be additional amounts, not as yet known, may also be due with regard to the pre-petition and post-petition periods, such as year-end adjustments to various items including, but not limited to, real estate taxes and common area maintenance, as well as annual percentage rental. Section 365(b) requires that a debtor cure all defaults in conjunction with a lease assumption. Since certain accrued, unbilled items may not have been invoiced to date, there can be no default for the failure to pay same. In the case of the real estate taxes, among other obligations, Debtors are obligated to pay the taxing authorities directly. As such, Deutsche Bank does not have an accurate accounting of the amounts that may be owed. Nevertheless, Debtors must acknowledge, and any Order approving cure amounts and assumption of the Deutsche Leases should provide, that Debtors remain liable for the unbilled items, and other items such as real estate taxes, even though they may cover, wholly or partially, a pre-petition and/or post-petition period of time, and that payment of year end adjustments will be made when due pursuant to the terms of the Leases.

---

[2] Under Section 7.6 of the Debtor's [First Proposed] Plan of Reorganization and VI. F. 6. of the related Disclosure Statement, it is implied that the Guaranty, and guaranties on other leases, will be assumed in connection with the Plan. To date, however, no motion to assume such guaranties has been made and the Plan does not specifically provide for such assumption.

- 6 -

11.     Thus, in addition to the monetary obligations that Debtors must satisfy under Section 365 of the Bankruptcy Code, Debtors must indemnify and hold Deutsche Bank and the other Indemnitees harmless with regard to existing claims as well as with regard to events which may have occurred pre-assumption but which are not made known until some period post-assumption. Accordingly Debtors must be required to evidence, or obtain adequate insurance in order to guarantee, (by way of purchase of a "tail" or otherwise) that their indemnity responsibilities will be met. Claims for indemnity may include, but are not limited to, claims for unpaid taxes, personal injuries which occur at the leaseholds, damage and destruction to the property by Debtors or their agents, claims for environmental damage or environmental clean up, etc.

### Adequate Assurance of Future Performance

12.     Pursuant to Section 365(b)(1)(C) of the Code, Debtors may only assume the Deutsche Leases if they provide "adequate assurance of future performance ...."

13.     The burden of proof on adequate assurance issues is with the Debtors. *See, In re Lafayette Radio Electronics Corp.* 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991)

14.     Debtors have not provided any evidence of adequate assurance to date. Although we believe that Debtors can fulfill such obligations, Debtors must be required to at least make a *prima facie* showing of adequate assurance.

### Joinder in Other Objections

15.     Deutsche hereby joins in the objections filed by Debtors' other landlords, to the extent not inconsistent herewith.

**WHEREFORE**, Deutsche Bank prays that this Court set a date approximately thirty days following approval of the assumption of the Deutsche Leases as a status hearing with regard to any remaining disputed cure claims, and set a further date no later than sixty days

10062611.1

6

following the said approval date for a final hearing to determine any remaining disputed cure claims; and,

**WHEREFORE,** Deutsche Bank prays that Debtors shall be required to pay, as a part of the cure payments, the agreed upon attorneys' fees with regard to the Deutsche Leases within ten (10) days after agreement between Debtors and Deutsche Bank as to the amount of said attorneys' fees, and if no such agreement is reached, this Court hear the attorneys' fees dispute as part of the claims dispute on the dates scheduled for the Status Conference; and

**WHEREFORE,** Deutsche Bank prays that, as a condition to assumption, the WD Stores Guaranty is affirmed and assumed with respect to the relevant Deutsche Leases; and

**WHEREFORE,** Deutsche Bank joins in the objections of the other landlords who have filed objections and prays that Debtors be required to promptly proceed with the Motion and assume the Deutsche Leases within the next thirty (30) days; and

WHEREFORE, Deutsche Bank prays for such other and further relief as may be just and required under all of the circumstances.

DATED: July 31, 2006

NIXON PEABODY, LLP

BY:    /s/ Richard Bernard
Richard Bernard
Dennis J. Drebsky
Attorneys for Deutsche Bank
437 Madison Avenue
New York, New York 10022
(212) 940-3091

## CERTIFICATE OF SERVICE

I certify that service of the foregoing was made on July 31, 2006 via ECF Noticing and email upon the parties listed below.


/s/ Dennis J. Drebsky

| | |
|---|---|
| D.J. Baker, Esq.<br>Sally McDonald Henry, Esq.<br>Rosalie W. Gray, Esq.<br>Eric M. Davis, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, NY  10036<br>djbaker@skadden.com<br>Fax: 212-735-2000 | Stephen D. Busey, Esq.<br>James H. Post, Esq.<br>Cynthia C. Jackson, Esq.<br>Eric N. McKay, Esq.<br>Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, FL  32202<br>cjackson@smithhulsey.com<br>Fax: 904-359-7708 |
| Elena L. Escamilla, Esq.<br>U.S. Trustee<br>135 W. Central Boulevard<br>Room 620<br>Orlando, FL  32801<br>Elena.L.Escamilla@usdoj.gov<br>Fax: 407-648-6323 | Dennis F. Dunne, Esq.<br>Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, NY  10005<br>Attorneys for OCUC<br>ddunne@milbank.com<br>Fax: 212-530-5219 |
| John B. Macdonald, Esquire<br>Akerman Senterfitt<br>50 North Laura Street<br>Suite 2500<br>Jacksonville, FL  32202<br>johnmacdonald@akerman.com<br>Fax: 904-798-3730 | Winn-Dixie Stores, Inc.<br>Attn: Laurence B. Appel<br>5050 Edgewood Court<br>Jacksonville, FL  32801<br>larryappel@winn-dixie.com<br>Fax: 904-783-5059 |
| Jane M. Leamy, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>One Rodney Square<br>Wilmington, DE  19801<br>Jleamy@skadden.com | |

# EXHIBIT A

Case 3:05-bk-03817-JAF   Doc 9750   Filed 08/01/06   Page 11 of 14
- 9 -

## CERTIFICATE OF SERVICE

I certify that service of the foregoing was made on July 28, 2006 via ECF Noticing and email upon the parties listed below.

/s/ Dennis J. Drebsky

| | |
|---|---|
| D.J. Baker, Esq.<br>Sally McDonald Henry, Esq.<br>Rosalie W. Gray, Esq.<br>Eric M. Davis, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, NY 10036<br>djbaker@skadden.com<br>Fax: 212-735-2000 | Stephen D. Busey, Esq.<br>James H. Post, Esq.<br>Cynthia C. Jackson, Esq.<br>Eric N. McKay, Esq.<br>Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, FL 32202<br>cjackson@smithhulsey.com<br>Fax: 904-359-7708 |
| Elena L. Escamilla, Esq.<br>U.S. Trustee<br>135 W. Central Boulevard<br>Room 620<br>Orlando, FL 32801<br>Elena.L.Escamilla@usdoj.gov<br>Fax: 407-648-6323 | Dennis F. Dunne, Esq.<br>Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, NY 10005<br>Attorneys for OCUC<br>ddunne@milbank.com<br>Fax: 212-530-5219 |
| John B. Macdonald, Esquire<br>Akerman Senterfitt<br>50 North Laura Street<br>Suite 2500<br>Jacksonville, FL 32202<br>johnmacdonald@akerman.com<br>Fax: 904-798-3730 | Winn-Dixie Stores, Inc.<br>Attn: Laurence B. Appel<br>5050 Edgewood Court<br>Jacksonville, FL 32801<br>larryappel@winn-dixie.com<br>Fax: 904-783-5059 |
| Jane M. Leamy, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>One Rodney Square<br>Wilmington, DE 19801<br>Jleamy@skadden.com | |

10062611.1

9

Section 8.02 and/or Section 8.05, then, in addition to the rights above and at the cost of Lessee. (a) Lessor shall have the right to hire Persons (as selected by Lessor in its reasonable discretion) to cure such Lease Event of Default, and to take any and all other actions necessary to cure such Lease Event of Default, and (b) Lessee shall cooperate with Lessor, and the Persons hired by Lessor, in the performance of such cure, including, without limitation, (i) providing access to the subject Property at reasonable times every day of the week, (ii) making available water, electricity and other utilities existing at or on the subject Property, and (iii) restricting or closing the Property, but only if such restriction or closure is reasonably necessary for the performance of such cure and provided that such closure shall be done for and during a time period and in such manner that balances the need for the maintenance or repair of the Property (and doing so in a safe manner) and the continuing operations of the Property.

## ARTICLE 19

### INDEMNITIES

SECTION 19.01. *General Indemnification.* (a) Lessee agrees to assume liability for, and to indemnify, protect, defend, save and keep harmless each Indemnitee, on an After-Tax Basis, from and against any and all Claims that may be suffered, imposed on or asserted against any Indemnitee, arising out of (i) the acquisition, ownership, leasing, subleasing, assignment, transfer of title, sale, financing, refinancing, renewal, return, disposition, operation, possession, use, non-use, maintenance, modification, alteration, reconstruction, restoration, substitution, or replacement of the Property or the Lease, or from the granting by Lessor at Lessee's request of easements, licenses or any similar rights with respect to all or any part of the Property, or from the construction, design, purchase or condition of the Property (including any Claims arising, directly or indirectly, out of the actual or alleged presence, use, storage, generation, release or threat of release of any Hazardous Materials, and any Claims for patent, trademark or copyright infringement and latent or other defects, whether or not discoverable), including any liability under Applicable Laws (including, without limitation, any Claims arising directly or indirectly out of any actual or alleged violation, now or hereafter existing, of any Environmental Laws), (ii) the Operative Documents or any modification, amendment or supplement thereto, (iii) the non-compliance of the Property with Applicable Laws (including because of the existence of the Permitted Liens), (iv) any matter relating to the Property or any operations thereon, including matters relating to Environmental Laws or Hazardous Materials, the breach by Lessee of its representations, warranties, covenants and obligations in this Lease or any other Operative Documents whether or not such

Claim arises or accrues prior to the date of this Lease, (v) the business and activities of Lessee, (vi) the cost of assessment, containment and/or removal of any and all Hazardous Materials from all or any portion of the Property or any surrounding areas over which Lessee has responsibility, the cost of any actions taken in response to a release or threat of release of any Hazardous Materials on, in, under or affecting any portion of the Property or any surrounding areas over which Lessee has responsibility to prevent or minimize such release or threat of release so that it does not migrate or otherwise cause or threaten danger to present or future public health, safety, welfare or the environment, and costs incurred to comply with Environmental Laws in connection with all or any portion of the Property or any surrounding areas over which Lessee has responsibility, and (vii) a Lease Event of Default. Lessee acknowledges that the foregoing includes any costs incurred by Lessor, the Indenture Trustee, the Pass-Through Trustee or the Servicer in performing any inspections of any Property if such inspection reveals a violation by Lessee of Section 8.05. Lessee shall not be required to indemnify any Indemnitee under this Section 19.01 for any Claim to the extent resulting from the willful misconduct or gross negligence of such Indemnitee or a member of such Indemnitee's Group or for any amounts payable under the Debt Documents unless such amounts are payable by Lessee under this Lease or any other Lease Operative Document. Lessee shall be entitled to credit against any payments due under this Section 19.01 any insurance recoveries or other reimbursements received by the Indemnitee to be indemnified in respect of the related Claim under or from insurance paid for, directly or indirectly, by Lessee or assigned to Lessor by Lessee, to the extent such insurance recoveries exceed such Indemnitee's costs and expenses incurred in recouping such insurance recovery.

(b)  In case any Claim shall be made or brought against any Indemnitee, such Indemnitees shall give prompt notice thereof to Lessee, *provided* that failure to so notify Lessee shall not reduce Lessee's obligations to indemnify any Indemnitee hereunder unless and only to the extent such failure results in additional liability on Lessee's part. Lessee shall be entitled, at its expense, acting through counsel selected by Lessee (and reasonably satisfactory to such Indemnitee), to participate in, and, to the extent that Lessee desires to assume and control, in consultation with Indemnitee, the negotiation, litigation and/or settlement of any such Claim (subject to the provisions of the last sentence of subparagraph (c) of this Section 19.01). Such Indemnitee may (but shall not be obligated to) participate in a reasonable manner at its own expense (unless Lessee is not properly performing its obligations hereunder) and with its own counsel in any proceeding conducted by Lessee in accordance with the foregoing. If Lessee shall defend the Indemnitee in any such suit or proceeding, then, unless such Indemnitee shall determine (in its reasonable discretion) that a conflict of interest exists between Lessee and such Indemnitee, Lessee shall not be obligated to

reimburse the Indemnitee for the cost of such Indemnitee's attorneys' fees or expenses incurred in connection with such suit or proceeding.

(c) Each Indemnitee shall at Lessee's expense supply Lessee with such information and documents reasonably requested by Lessee in connection with any Claim for which Lessee may be required to indemnify any Indemnitee under this Section 19.01. No Indemnitee shall enter into any settlement or other compromise with respect to any Claim for which indemnification is required under this Section 19.01 without the prior written consent of Lessee. Lessee shall have the authority to settle or compromise any Claim against an Indemnitee hereunder, *provided* that no admission of wrongdoing shall be required of such Indemnitee and such Indemnitee shall be released of all liability in connection with any such Claim.

(d) Upon payment in full of any Claim by Lessee pursuant to this Section 19.01 to or on behalf of an Indemnitee, Lessee, without any further action, shall be subrogated to any and all claims that such Indemnitee may have relating thereto (other than claims in respect of insurance policies maintained by such Indemnitee at its own expense), and such Indemnitee shall execute such instruments of assignment and conveyance, evidence of claims and payment and such other documents, instruments and agreements as may be necessary to preserve any such claims and otherwise reasonably cooperate with Lessee to enable Lessee to pursue such claims.

(e) Prior to paying any amount otherwise payable to an Indemnitee pursuant to this Section 19.01, Lessee shall be entitled to receive from such Indemnitee (i) a written statement describing the amount so payable, (ii) a general release from Indemnitee upon such payment with respect to the claim made and (iii) such additional information as Lessee may reasonably request and which is reasonably available to such Indemnitee to properly substantiate the requested payment.

SECTION 19.02. *General Tax Indemnification.* (a) Except as provided in Section 19.02(b), Lessee agrees to indemnify each Tax Indemnitee against, and hold each Tax Indemnitee harmless from on an After-Tax Basis, and to pay in accordance with Section 19.02(f): (i) any and all Taxes of any United States federal taxing authority, state, or political subdivision or taxing authority, thereof or therein which are imposed or levied upon or assessed against or with respect to or in connection with (A) any such Tax Indemnitee, the Lessee, any tenant, the Secured Note and any amounts and expenses payable thereunder, any financing or refinancing, but only to the extent such Taxes arise in connection with the Operative Documents, Property or the transactions or activities contemplated by the Operative Documents, (B) the Property, or any part or interest therein, or any