# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors.[1] | ) | Jointly Administered |

## NOTICE OF FILING OF FORM OF
## UNDERWRITING AND CONTINUING INDEMNITY AGREEMENT

TO PARTIES IN INTEREST:

PLEASE TAKE NOTICE that on this 1st day of August, 2006, Winn-Dixie Stores, Inc. and its subsidiaries and affiliates in the above-captioned jointly-administered cases, as debtors and debtors-in-possession (collectively, the "Debtors") have filed the form of Underwriting and Continuing Indemnity Agreement, attached as Exhibit A (the "Form Agreement"), in connection with the Debtors' Motion for Order Authorizing Debtors to Enter into Surety Bond Facility with Liberty Mutual Insurance Company and Granting Related Relief (the "Motion").

PLEASE TAKE FURTHER NOTICE that the Debtors will serve a copy of the Form Agreement on (a) counsel for the U.S. Trustee, (b) counsel for the Debtors' postpetition secured lenders, and (c) counsel for the Creditors Committee. Any other party in interest may request a copy of the Form Agreement from Stephanie R. Feld at sfeld@skadden.com, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036.

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

PLEASE TAKE FURTHER NOTICE that a hearing is scheduled for **August 10, 2006 at 1:00 p.m. (prevailing Eastern Time)**, before the Honorable Jerry A. Funk, United States Bankruptcy Court for the Middle District of Florida, 300 North Hogan Street, Courtroom 4D, Jacksonville, Florida 32202, to consider the Motion.

Dated:   August 1, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By     *s/ D. J. Baker*
       D. J. Baker
       Sally McDonald Henry
       Rosalie Walker Gray
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for Debtors

SMITH HULSEY & BUSEY

By     *s/ Cynthia C. Jackson*
       Stephen D. Busey
       James H. Post
       Cynthia C. Jackson,
       Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Debtors

## EXHIBIT A

## UNDERWRITING AND CONTINUING INDEMNITY AGREEMENT

THIS UNDERWRITING AND CONTINUING INDEMNITY, AGREEMENT ("this Agreement"), dated as of the _____ day of August, 2006, between WINN-DIXIE STORES, INC., a Florida corporation, and certain of its Subsidiaries and Affiliates and their respective bankruptcy estates identified on Exhibit A (individually and collectively "Principal"); WINN-DIXIE STORES, INC., a Florida corporation, and certain of its Subsidiaries and Affiliates and their respective bankruptcy estates identified on Exhibit B, in their capacity as Indemnitors (individually and collectively "Indemnitors"); and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company, its Affiliates and Subsidiaries and their respective co-sureties and reinsurors, and their respective successors and permitted assigns (individually and collectively "Surety").  All capitalized terms will have the meanings set out in Section 1.

W I T N E S S E T H :

WHEREAS, Indemnitors heretofore executed an Indemnity Agreement in favor of Surety;

WHEREAS, Principal is engaged in business, among other things, as a food and drug retailer in the Southeastern – United States, and Principal, individually, jointly with others or on behalf of individuals, partnerships, or corporations, may desire or be required from time to time in connection with their respective businesses to give certain bonds;

WHEREAS, Indemnitors and certain of their Affiliates and Subsidiaries commenced Chapter 11 cases currently pending in the United States Bankruptcy Court, Middle District of Florida, styled In Re: Winn-Dixie Stores, Inc., et al., Case No. 3:05-03817-JAF;

WHEREAS, the Bankruptcy Court authorized Indemnitors to enter into this Agreement by entry of the Approval Order;

WHEREAS, upon the express condition that this Agreement be executed, Surety has executed or procured, or will execute or procure, the execution of certain Bonds, and Surety may continue or replace previously executed Bonds and may forbear cancellation of such Bonds;

WHEREAS, Indemnitors recognize that Bonds are a necessary and desirable adjunct to the business done and to be done by Principal and desires to accommodate the financial, security, indemnity, exoneration, and other requirements of Surety as an inducement to Surety to become surety upon obligations of Principal, and has therefore agreed to be bound by this Agreement and has agreed to exercise its best efforts to permit and require Principal to honor and perform all of the terms of this Agreement; and

WHEREAS, Surety has agreed to act as surety or procure surety bonds for Principal, subject to the understanding of the parties that, except as specifically provided in the first paragraph of Section 4, Surety is under no obligation to act as surety for any bond of Principal and that Principal is under no obligation to obtain bonds from Surety.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein, the execution or procurement of any Bond by Surety or the forbearance of cancellation of any Existing Bonds by Surety, and as an inducement to such execution, procurement, or forbearance, we, the undersigned Principal and Indemnitors, agree and bind ourselves, our bankruptcy estate, if any, our successors and assigns, jointly and severally, as follows:

1.    Definitions.  For the purposes of this Agreement, the following terms will have the meanings listed below:

"Affiliate" means, with respect to any Person, whether in bankruptcy, any other Person or group acting in concert with respect of the Person that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under the common control with such Person.  For purposes of this definition, "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any Person or group of Persons, will mean the possession, directly or indirectly, of the power to direct or cause the direction of management and policies of such Person, whether through the ownership of voting securities or by contract or otherwise.  Each Principal and Indemnitor is an Affiliate of each other.  Surety is not an Affiliate of any Principal or Indemnitor.

"Agreement" or "this Agreement" means this Underwriting and Continuing Indemnity Agreement (with all Exhibits) as hereafter amended, modified, or supplemented and will refer to this Agreement as the same may be in effect at the time such reference becomes operative.

"Approval Order" means that certain Order Authorizing Debtors to Enter into Surety Credit Facility with Liberty Mutual Insurance Company and Granting Relief dated August ___, 2006, entered by the Bankruptcy Court in the Bankruptcy Case.

"Bankruptcy Case" means the bankruptcy cases commenced by Indemnitors, currently pending in the Bankruptcy Court pursuant to the Bankruptcy Code.

"Bankruptcy Code" means Title 11 of the United States Code entitled "Bankruptcy," as now and hereafter in effect, or any successor statute.

"Bankruptcy Court" means the United States Bankruptcy Court Middle District of Florida, or such other court to which the Bankruptcy Case may be transferred.

"Bonds" means commercial bonds, appeal bonds, worker's compensation bonds, auto-self insurance bonds, waste water bonds, utility deposit bonds, lottery agent bonds, agriculture dealer bonds, license bonds, fuel tax bonds, tobacco tax bonds, Property Broker Interstate Commerce Commission bonds, and similar bonds, surety agreements, undertakings, and similar instruments of guarantee signed or procured by Surety on behalf of any Principal, executed before or after the date of this Agreement, including, but not limited to, the Existing Bonds and extension, modification renewals thereof, if any.

"Business Day" means any day excluding Saturday, Sunday, and any day which is a legal holiday under the laws of the State of New York or is a day on which banking institutions located in such state are authorized or required by law or other governmental action to close.  Notwithstanding

the foregoing, the reference to New York in this definition will be replaced with a reference to Florida when determining the Effective Date.

"Effective Date" means the Business Day on which all conditions to the consummation of the confirmed plan of reorganization for Indemnitors have been satisfied or waived.

"Event of Default" means any one or more of the following that occurs after the date of this Agreement:

(a)     Principal, Indemnitors, or any of them have failed to perform any obligation under this Agreement, as reasonably determined by Surety; or

(b)     Principal has failed to perform any obligation to Surety under the Indemnity Agreement, as reasonably determined by Surety; or

(c)     any Obligee has declared Principal in default under any Bond and Principal has failed to cure such default within any cure period provided under contact, statute, or other law.  It will be no defense to the enforcement of this Agreement by Surety that Principal asserts that it is not in default;  provided, however, in the event that Principal and Indemnitors, providing a reasonable legal basis therefor (as determined in Surety's sole and absolute discretion), request Surety to litigate such declaration of default, or to defend any related suit, or to appeal from any related judgment, and Indemnitors deposit with Surety, at the time of such request, cash or collateral satisfactory to Surety in kind and amount to be used in paying any award(s) or judgment(s) rendered or that may be rendered, then the occurrence of such declaration of default by such Obligee will not be an Event of Default under this item (c) (provided, that, no Event of Default has occurred, any additional collateral delivered by Indemnitors to Surety in accordance with the foregoing provision will be returned to Indemnitors, after the deduction of all legal fees and related expenses and other Surety Loss that may have been incurred by Surety, at such time as Surety has determined, in its sole and absolute discretion, that the default declared by such Obligee has been resolved in a matter satisfactory to Surety such that Surety does not have any outstanding exposure with respect to such default.); or

(d)     Principal has acknowledged in writing its default under any Bond; or

(e)     Surety receives notice or knowledge of facts, giving rise to a reasonable belief that it has sustained or incurred a Surety Loss (other than any Surety Loss arising on or before the Petition Date and Surety Loss described in items (b) and (c) of the definition of Surety Loss incurred in the ordinary course of business that are reimbursed to Surety by Indemnitors in accordance with the third paragraph of Section 5); or

(f)     any financial statement, representation or warranty, made or furnished by Indemnitors to Surety in connection with this Agreement or the Surety Credit Documents, or as an inducement to Surety to enter into this Agreement, or in any separate statement or document to be delivered hereunder to Surety was or proves to be false, incorrect, or incomplete in any material respect when made; or

(g)     any judgment or order for the payment of money individually or in the aggregate in excess of Ten Million Dollars ($10,000,000) (exclusive of any judgment or order rendered prior to the Petition Date and exclusive of any amounts fully covered by insurance (less any applicable deductible) and as to which the insurer has acknowledged its responsibility to cover such judgment or order) will be rendered against any Indemnitor and such judgment will not have been vacated or discharged or stayed or bonded pending appeal within thirty (30) days after the entry thereof or enforcement proceedings will have been commenced by any creditor upon such judgment or order; or

(h)     if Indemnitors violate, breach, or fail to adhere to any of the terms, conditions, or covenants of any of Surety Credit Documents; or

(i)     Indemnitors fail to give prompt notice to Surety of the knowledge of any pending proceeding or claim before any court or governmental agency or department which involves a reasonable material risk of having a Material Adverse Effect; or

(j)     the determination of Indemnitors, whether by vote of their board of directors or otherwise, to suspend the operation of Indemnitors' business, taken as a whole, in the ordinary course, liquidate all or substantially all of Indemnitors' assets, taken as a whole (the Inactive Entities will be excluded from "Indemnitors" for the purposes of this item (j)); or

(k)     Indemnitors endeavor to reduce or otherwise impair the face amount of the Letter of Credit without the consent of Surety; or

(l)     the commencement after the Effective Date of proceedings in bankruptcy, or for reorganization of any Principal or Indemnitors, or for the readjustment of the debt of any Principal or Indemnitors, in each case under the Bankruptcy Code, or any part thereof, or under any other laws, whether state or federal, for the relief of debtors, now or hereafter existing, by or against any Principal or Indemnitors and any such proceedings commenced against any Principal or Indemnitors are not dismissed, discharged, or stayed within ninety (90) days of filing; or

(m)     the appointment of a receiver or trustee for Indemnitors, taken as a whole, after the Effective Date, or for any substantial part of their assets, or the institution by a Person other than Indemnitors, taken as a whole, or any Person acting on their behalf of any proceedings for the dissolution or the full or partial liquidation of Indemnitors, taken as a whole, after the Effective Date and such proceedings are not dismissed, discharged, or stayed within ninety (90) days of filing, or Indemnitors, taken as a whole, will discontinue their business or materially change the nature of their business (the Inactive Entities will be excluded from "Indemnitors" for the purposes of this item (m)); or

(n)     the appointment of a receiver or trustee for any Principal after the Effective Date, or for any substantial part of its assets, or the institution by a Person other than any Principal or any Person acting on its behalf of any proceedings for the dissolution or the full or partial liquidation of any Principal after the Effective Date and such proceedings are not dismissed, discharged, or stayed within ninety (90) days of filing, or any of Principal will discontinue its business or materially change the nature of its business; provided, however, that if any Principal merged with, or transferred all or substantially all of its assets to, an Indemnitor, such merger or

transfer will not be an Event of Default under this item (n) (Astor Products, Inc. will be excluded from "Principal" for the purposes of this item (n)); or

(o)     any Indemnitor fails to comply with the terms of the Plan of Reorganization in any material respect after the Effective Date and such failure could reasonably be expected to have a material risk of adversely effecting Surety or give rise to Surety Loss.

Notwithstanding anything in any of the Surety Credit Documents to the contrary, no Event of Default will be deemed to have occurred solely as a result of the filing of the Bankruptcy Case.

"Existing Bonds" means the Bonds described on the attached Exhibit C, as such Bonds are modified, terminated, or expired.

"Facility Fee" means the Six Hundred Thirty Thousand Dollar ($630,000) facility fee referred to in Section 7.

"GAAP" is defined as generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board, consistently applied.

"Inactive Entities" means Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Stores, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., and Winn-Dixie Handyman, Inc.

"Indemnitors" means Winn-Dixie Stores, Inc. and its Affiliates and Subsidiaries listed on Exhibit B. In addition, any Subsidiaries and Affiliates of Indemnitors named as Principal on any Bond, their successors and assigns, will be deemed to be an Indemnitor under this Agreement. Thereafter, said Subsidiaries and Affiliates, their successors and assigns, will be deemed to be an Indemnitor hereunder as though they were original signatories hereto.

"Indemnity Agreement" means that certain General Agreement of Indemnity Commercial Surety dated January 23, 2003, executed by Winn-Dixie Stores, Inc., on its behalf and on behalf of any of its majority owned subsidiaries or any affiliates, whether present or future, and whether directly or indirectly held, in favor of Surety.

"Letter of Credit" means that certain Letter of Credit No. SM207389W issued by Wachovia Bank, N.A. in favor of Surety in the face amount of Nineteen Million Nine Hundred Ninety-Nine Thousand Seven Hundred Ninety-Three 42/100 Dollars ($19,999,793.42), and any substitute or replacement thereof.

"Material Adverse Effect" means, relative to any occurrence of whatever nature (including the adverse determination in any litigation, arbitration, or governmental investigation or proceeding), (a) a material adverse affect on the financial condition, or business operations of

Principal and their Subsidiaries taken as a whole or Indemnitors and their Subsidiaries taken as a whole, or (b) a material impairment of the collective ability of Principal and Indemnitors taken as a whole to satisfy their respective obligations to Surety under the Surety Credit Documents.

"Obligee" means any named party or parties appearing on any Bond(s) in whose favor the Bond(s) are issued, or such parties' successors and permitted assigns.

"Person" means any entity, whether an individual, trustee, corporation, partnership, joint stock company, unincorporated organization, business association or firm, joint venture, a government or any agent or instrumentality or political subdivision thereof.

"Petition Date" means February 21, 2005 (the date on which Indemnitors filed for bankruptcy protection pursuant to the Bankruptcy Code).

"Principal" means Indemnitors in their capacity as a named principal under any Bond. Any Subsidiaries and Affiliates of Indemnitors named as Principal on any Bond and their successors and assigns will be deemed to be a Principal under this Agreement. Thereafter, said respective Subsidiaries and Affiliates, their successors and assigns, will be deemed to be a Principal hereunder as though they were original signatories hereto.

"Reserve" means a sum of money set aside by Surety to pay present and future liabilities for Surety Loss under any Bonds. Such Reserve is established pursuant to Title XXII, Chapter 175 of the Massachusetts General Laws Annotated, and/or pursuant to similar laws, statutes, codes, and/or regulations of any other state or jurisdiction applicable to Surety.

"Subsidiaries" means any corporations, partnerships, or other entities wherein any Principal owns or acquires, directly or indirectly, more than fifty percent (50%) of the issued and outstanding voting stock, securities, or other equity interest of such corporation, partnership, or other entity, or any other corporation, partnership or other entity the management of which is otherwise controlled, directly or indirectly, through one or more intermediaries, or both, by any Principal.

"Surety" means Liberty Mutual Insurance Company, a Massachusetts corporation, its Affiliates and Subsidiaries and any other companies writing Bonds for which this Agreement is consideration (and other companies from whom Surety procures Bonds for Principal), and their co-sureties and reinsurors, and their respective successors and assigns.

"Surety Credit Documents" means (i) the Indemnity Agreement; (ii) the Bonds; (iii) this Agreement; and (iv) all other documents and instruments hereafter executed or delivered by or on behalf of Indemnitors in connection therewith, and any and all modifications, amendments, substitutions, or other documents related thereto, whether executed by Indemnitors.

"Surety Loss" means:

(a)     All damages, loss, costs, attorneys', accountants', engineers', and consulting fees (including all allocated costs of in-house attorneys, accountants, engineers, and consultants), and all expenses incurred in connection therewith, and liabilities (including without limitation any

against, or involving Principal incurred after June 30, 2006. In addition to the foregoing, in accordance with the third paragraph of Section 5, Principal will reimburse Surety for its reasonable attorneys' fees and reasonable expenses incurred in connection with the transactions contemplated by the Surety Credit Documents, to the extent such fees and expenses are incurred after June 30, 2006.

Any collective defined term and any defined term used in the plural will be taken to encompass all members of the relevant class. Any defined term used in the singular preceded by "any" will be taken to indicate any number of the members of the relevant class. Any defined term used in the singular and preceded by the word "each" will indicate all members of the relevant class, individually. Any accounting term not otherwise defined herein will be defined in accordance with GAAP.

2.    Conditions Precedent to this Agreement.    As conditions precedent to the effectiveness of this Agreement, Indemnitors will deliver to Surety each of the following, in form and substance satisfactory to Surety and its counsel:

(a)    the final non-appealable Approval Order.  This Approval Order will authorize and approve: (i) Indemnitors entry into this Agreement; (ii) the payment of the Facility Fee and reimbursement of certain reasonable attorneys' and expenses of Surety in accordance with this Agreement;  and (iii) the assumption of the liabilities and obligations under the Indemnity Agreement;

(b)    evidence of the good standing of each of Indemnitors in the jurisdiction in which such Indemnitor is formed; and

(c)    such other information and documents as may reasonably be required by Surety and Indemnitors agree to provide or accept.

It is also a condition precedent to the effectiveness of this Agreement that no orders will have been entered by the Bankruptcy Court which Surety reasonably determines will have a Material Adverse Effect.

3.    Plan of Reorganization.  Indemnitors will obtain an Order of the Bankruptcy Court in the Bankruptcy Case that confirms a Plan of Reorganization, the form and substance of said Plan and Order to be reasonably satisfactory to Surety.

4.    Bond Facility; Conditions Precedent to all Bonds.  Subject to the terms of this Agreement, the Existing Bonds will remain in full force and effect for the duration set forth in subparagraph (f) of this Section 4;  provided, however, notwithstanding the foregoing, in the Event of Default Surety will have the right to terminate any outstanding Bond, including any Existing Bond.  Surety will review, without additional underwriting consideration, Indemnitors' request to replace, continue or renew any Existing Bonds that have been terminated, canceled, or expired since the Petition Date.  Indemnitors have pending with Surety requests for reduction, modification, or termination of certain of the Existing Bonds which will be handled in the ordinary course of business.  Surety has reviewed the applications for the Bonds described on the attached Exhibit D and hereby agrees that upon the satisfaction of all conditions precedent set

unsatisfied liabilities under Bonds) which Surety may sustain, incur, or to which it is exposed by reason of executing or procuring the execution of any of the Bond(s), or renewal or continuation thereof; or which may be sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action in connection therewith, obtaining a release, recovering, or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the provisions of this Agreement, including, but not limited to:

(1)     money judgments, amounts paid in settlement or compromise, the full amount of reasonable attorney and other professional fees incurred or paid by Surety, including (without limitation allocated costs of in-house counsel, accountants, and engineers, court costs and fees, and interest at the maximum legal rate allowable on all sums due it from the date of Surety's demand for said sums, whether or not interest has been awarded by a court);

(2)     any loss which Surety may sustain or incur in connection with any Bonds, whether that Surety Loss results from any activity of any Principal individually or as part of a joint venture, partnership, or other entity which has been or may be formed;

(3)     any loss that Surety may sustain or incur as a result of any actions taken by Surety upon information provided by Indemnitors with respect to the Bonds;

(4)     all Reserves established with respect to the Bonds;

(5)     any amounts that have been paid to Surety to be applied to Surety Loss that a court of competent jurisdiction determines constitute "preferences," within the meaning of Section 547 of the Bankruptcy Code, and by reason thereof Surety actually disgorges said amounts paid; and

(6)     any amount paid by Surety as a result of any Obligee actually disgorging money or property transferred to such Obligee pursuant to Sections 547, 548, or 549 of the Bankruptcy Code.

(b)     legal, accounting, consulting and related fees and expenses reasonably incurred in connection with the Bonds, the Surety Credit Documents and/or any application or submission by any of Indemnitors for the issuance of any Bond or renewal of any Bond, whether or not Surety decides to issue said bond. Notwithstanding the foregoing, and provided that Indemnitors deliver and Surety is entitled to retain the Facility Fee, attorney fees and expenses incurred by Surety through June 30, 2006, will be excluded from the definition of "Surety Loss." All attorneys fees and expenses incurred by Surety after June 30, 2006, will be the responsibility of Indemnitors and will be paid in accordance with the third paragraph of Section 5, as a precondition to the issuance of any future Bonds; and

(c)     legal, accounting, and consulting fees and related expenses incurred in connection with any bankruptcy proceeding filed, filed against, or involving Principal and related to the Bonds. (The foregoing limitation on fees and expenses will not limit Surety's right to such fees and expenses pursuant to any other agreement, at law, or in equity.) Principal has an obligation to reimburse Surety for reasonable legal, accounting, and consulting fees and reasonably related expenses incurred by Surety in connection with monitoring any bankruptcy case filed, filed

forth in Section 2 and receipt of the Facility Fee and provided, that, no Event of Default exists, Surety will issue the Bonds described in the attached Exhibit D as of the requested date.

Except as specifically provided in the immediately preceding paragraph, Surety reserves the right to decline to execute any and all Bonds and to terminate any outstanding Bond in accordance with the terms and provisions of the applicable Bond, or as may be provided for by any contract, statute, regulation, or common law, and if Surety executes any Bond, Surety will not be obligated to execute any Bonds to renew or continue any such Bond. No claim will be made, nor any cause of action asserted against Surety, as a consequence of its failure to execute any bond(s) (exclusive of the bonds described on Exhibit D). No Bonds will be issued under the terms of this Agreement if any Surety Loss has been incurred (other than item (b) and (c) of the definition of Surety Loss); provided, however, this provision may be waived on a case-by-case basis in Surety's sole and absolute discretion. Except as specifically provided in the immediately preceding paragraph, whether to approve or disapprove any application of Principal for surety credit and issue bonds in response thereto will be determined on a case-by-case basis and is within Surety's sole and absolute discretion.

Without limiting the generality of the foregoing, the determination of Surety to issue any Bond will be subject to the further conditions precedent that on the date of such issuance:

(a)    The following statements will be true and, by its request for the issuance of such Bond, Principal will be deemed to have certified to Surety that as of the date of such issuance:

(i)    the representations and warranties of Principal and Indemnitors contained in this Agreement and the Surety Credit Documents are correct in all material respects on, and as of the date of, such issuance as though made on and as of such date (except to the extent that such representations and warranties relate to an earlier date and were true and correct as of such date); and

(ii)    no Event of Default has occurred and is continuing, or would result from the issuance of such Bond.

(b)    Surety will have received such other approvals, opinions, or documents as Surety may reasonably request.

(c)    The total aggregate penal amount of the Bonds will not exceed Fifty Million Dollars ($50,000,000). For purposes of determining the total aggregate penal amount of the foregoing line of surety credit that has been used by Principal, the following penal amounts of Bonds will be included (without duplication): (i) the aggregate penal amount of the Existing Bonds; (ii) the aggregate penal amount of the outstanding Bonds described on the attached Exhibit D, as such Bonds are modified, terminated, or expired; (iii) the aggregate penal amount of any Bonds issued after the date of this Agreement, as such Bonds are modified, terminated, or expired; and (iv) any increases or decreases as reflected on Surety's records in the penal amounts of any of the foregoing Bonds.

(d)    To the extent any Bond principal is not a signatory hereto, such Bond principal will be required to execute an Addendum to this Agreement acknowledging that it is a Principal

and Indemnitor hereunder. Nothwithstanding the foregoing, such Bond principal will be deemed to be a Principal and Indemnitor hereunder whether it has signed such Addendum upon issuance of such Bond.

(e)     The Bonds will be issued in a form acceptable to Surety in Surety's sole and absolute discretion. Surety may require that special terms or conditions be attached to the issuance of particular Bonds or classes of Bonds (*e.g.,* appeal or utility bonds). Expiration or termination of the bond facility established by this Agreement will not, in and of itself, give Surety the right to terminate any outstanding Bonds;  provided, however, Surety will have the right to terminate any outstanding Bond in accordance with the terms and provisions of the applicable Bond, or as may be provided for by any contract, statute, regulation, or common law.

(f)     Any request for issuance of any Bond must be made prior to:  the nineteenth (19th) month anniversary of the date of this Agreement, at which time the bond facility established by this Agreement will expire with this Agreement remaining in full force and effect as to any Bonds then outstanding.

(g)     No bonds will be requested on behalf of any of the Inactive Entities as the named principal.

5.     <u>Indemnity; Waiver of Claims</u>. Indemnitors that were a party to the Indemnity Agreement hereby reaffirm and acknowledge their liabilities and obligations to Surety under the terms of the Indemnity Agreement, which remains in full force and effect. Furthermore, Indemnitors that were not a party to the Indemnity Agreement hereby agree to be bound by the terms of the Indemnity Agreement as though they were an original signatory thereto. Indemnitors specifically agree to protect, indemnify, and hold harmless Surety and its attorney-in-fact against any and all Surety Loss that may in any way arise out of the exercise of the rights contained in this Agreement and the powers herein granted. Indemnitors agree to indemnify, and keep indemnified, and hold and save harmless Surety against all Surety Loss.

In addition, Indemnitors recognize and acknowledge the common law right of Surety to be exonerated by Principal. The duty of Indemnitors to indemnify Surety is a continuing duty, separate from the duty to exonerate, and survives any payments made in exoneration of Surety. Amounts due Surety (together with the maximum amount of legal interest) will be payable upon written demand. Furthermore, in the event Principal fails or refuses to exonerate Surety upon written demand, Indemnitors agree, upon demand by Surety, to exonerate Surety from Surety Loss, by satisfying Principal's obligations secured by the Bonds and obtaining either a withdrawal of all claims against Surety under the Bonds or a general release.

Indemnitors will, within thirty (30) days after Surety's written demand or within such shorter period required under any Bond, either: (i) procure the discharge of Surety from any Bonds and all liability by reason thereof; or (ii) if unable to secure such discharge, Indemnitors will place Surety in funds that are immediately available and sufficient to meet all of Surety's liabilities or potential liabilities in the aggregate amount of the penal sum of the Bonds for which discharge has been demanded (including attorney's fees, costs, and expenses) arising from any Bonds or requests therefor (as may or may not be evidenced by the establishment of a Reserve), as determined by Surety in its sole discretion, whether or not any payments have been made by

Surety; provided, however, Surety will not have the right to issue any such demand with respect to Existing Bonds prior to the nineteenth (19th) month anniversary of the date of this Agreement unless an Event of Default has occurred. In furtherance of the foregoing, if the terms of any outstanding Bond requires Surety to make payment to an Obligee under said Bond in less than thirty (30) days, then with respect to such Bonds, Surety may require that it be discharged or placed in funds pursuant to this paragraph within such shorter period under and subject to the foregoing provisions. Surety will send its written demand to Indemnitors. Alternatively, at Surety's sole discretion and election, Indemnitors and Surety may make other provisions satisfactory to Surety for the funding of any bonded obligations(s). Indemnitors hereby acknowledge that if Indemnitors breach their obligations set forth in this paragraph, Surety will have no adequate remedy at law and will be entitled to injunctive relief, including without limitation specific performance of the terms of this Agreement.

Surety will, in the ordinary course, incur attorneys' fees and expenses in connection with: (a) the Bankruptcy Case; (b) the adjustment, handling, settlement, or litigation of claims relating to the Bonds; (c) issues arising in connection with the establishment and administration of this Agreement; and (d) if need be, the enforcement of this Agreement and Indemnitors' liabilities and obligations under the Indemnity Agreement. Indemnitors will reimburse Surety for all its reasonable attorneys' fees and expenses promptly upon presentation of reasonably detailed invoices to Indemnitors, with a copy of same being provided to counsel for the official committee of unsecured creditors appointed in the Bankruptcy Case until such committee is no longer in existence. Indemnitors and such creditor's committee will have thirty (30) days within which to object to such attorneys' fees and expenses. If no objection is made, then such fees and expenses will be paid in the ordinary course within forty-five (45) days of submission without further leave or order of the Bankruptcy Court.

Indemnitors warrant that they are specifically and beneficially interested in obtaining the Bonds. Indemnitors acknowledge that the execution of this Agreement and the undertaking of indemnity were not made to Surety upon any representation concerning the responsibility of Indemnitors or concerning the competence of Principal to perform. Indemnitors agree to make no claim against Surety for any oral representations, promises, or statements made to any of them by Surety or any of its agents or brokers, or for the failure of Surety to disclose facts or information to Indemnitors. This Agreement has been negotiated by the parties and each party has had the benefit of counsel.

Indemnitors possess the duty to remain informed of all aspects of Principal's business and the business activities and financial affairs of Indemnitors. Indemnitors warrant that they are presently informed of the state of business activities and financial affairs of Principal and Indemnitors. Surety possesses no obligation to inform Indemnitors of any aspect of any Principal's business or the business activities and financial affairs of Indemnitors.

Indemnitors agree to sign, execute, file, and/or deliver to Surety all documents, pleadings, and/or instruments required to obtain and/or perfect any of Surety's rights under this Agreement or the Surety Credit Documents. To the maximum extent permitted by applicable laws, Indemnitors:

350919                                                    11

(a)     Waive: (i) protest of all commercial paper at any time held by Surety on which any Indemnitors are in any way liable; and (ii) except as otherwise expressly provided in this Agreement notice and opportunity to be heard before exercise by Surety of the remedies of self help, setoff, recoupment, or of other summary procedures permitted by any applicable laws or by any agreement with Indemnitors, and, except where required hereby or by any applicable laws, notice of any other action taken by Surety; and

(b)     hereby release Surety, its officers, directors, attorneys, employees, and agents from any and all claims, causes of action or liabilities of any nature whatsoever, fixed or contingent, liquidated or non-liquidated, caused by or related to any act of omission, negligence, or other violation of law or breach of contract or other duty on the part of any of them, occurring from the beginning of time to the date of this Agreement, whether known or unknown, and whether discovered or reasonably capable of being discovered, except for willful misconduct or gross negligence.

Notwithstanding the foregoing, the foregoing release provisions will not apply to any claims, causes of action, liabilities, or rights that Indemnitors may have with respect to any general liability or other insurance policy that is issued by Surety.  The release is intended to apply only to claims, causes of action, liabilities, and rights with respect to the bond program of Indemnitors; provided, however, that Surety's obligations under the Surety Credit Documents survive item (b).

6.     Premium Payment.  For the period beginning on the date of this Agreement and ending on the nineteenth (19th) month anniversary thereof, Surety agrees to charge premiums on all of the Bonds, at the net rate of Fifteen 30/100 Dollars ($15.30) per One Thousand Dollars ($1,000) of bond penal sum; provided, however, the minimum premium for the issuance of any single bond will be One Hundred Dollars ($100).  (For purposes of the foregoing, "net rate" is the amount of premium actually received by Surety after reduction on account of any compensation (whether in the form of commission or otherwise) due to any broker or other paid intermediary.)  Indemnitors agree to promptly pay all premiums due on the Bonds and any and all additional premiums due with respect to an increase in the penal sums of any Bond computed in accordance with said rate. The failure of Principal to pay the Bond premiums or the failure of Surety to receive premiums will not provide Indemnitors with any defense to an action under this Agreement.

7.     Facility Fee.  In addition to bond premium, upon the effectiveness of this Agreement, Indemnitors will pay to Surety a Facility Fee equal to Six Hundred Thirty Thousand Dollars ($630,000) in exchange for which Surety will waive any claim it may have in the Bankruptcy Case against Indemnitors and Principal for the reimbursement of professional fees and expenses through June 30, 2006, and will, upon receipt of payment of said Facility Fee, withdraw all Proofs of Claim previously filed with the Clerk of Court or Claims Agent; provided, however, that the withdrawal of previously filed Proofs of Claim will be without prejudice to the right of Surety to file an administrative claim within the time allowed for such filing(s) in the event that Surety Loss is incurred prior to the Effective Date.

8.     Letter of Credit.  Surety currently holds the Letter of Credit, and the Letter of Credit will continue to be held, to secure the payment and satisfaction of all obligations of

Indemnitors to Surety until such time as all obligations of Indemnitors to Surety have been satisfied and all obligations bonded by Surety have been fully paid or performed and all Bonds have been released, discharged, or terminated without Surety Loss.

9.     <u>Existence and Authority; Enforceability of this Agreement</u>.    Indemnitors are entities duly organized, validly existing, and in good standing under the laws of their respective states of formation or incorporation. Indemnitors (exclusive of the Inactive Entities) will maintain their corporate existence or legal status (in good standing where appropriate under state law) and remain or become duly qualified or licensed (and in good standing where appropriate under state law) as a foreign corporation or other business entity, as applicable, in each jurisdiction in which the conduct of their respective businesses requires such qualification or license except where the failure to be so qualified could not reasonably be expected to have a Material Adverse Effect. Indemnitors represent and warrant to Surety that their states of formation are correctly referenced on the attached Exhibit B.

The execution and performance of this Agreement will not violate the charter, bylaws, or other governing documents of Principal or Indemnitors, or violate any laws or result in a default under any contract, agreement, or instrument to which Principal or Indemnitors are a party or by which Principal or Indemnitors or their property is bound, except for such violations or defaults that would not have a Material Adverse Effect. Principal and Indemnitors have the power and authority to enter into and perform this Agreement and the Surety Credit Documents, and to incur the obligations herein and therein provided for, and have taken all corporate or other action necessary to authorize the execution, delivery, and performance of this Agreement and the Surety Credit Documents.

Upon the execution and delivery of this Agreement and the other Surety Credit Documents by Principal and Indemnitors and the effectiveness thereof, this Agreement and the Surety Credit Documents will be valid and binding against Indemnitors that are a party thereto enforceable against such parties in accordance with the terms thereof.  The execution and delivery of this Agreement and the other Surety Credit Documents, the fulfillment of the respective terms and conditions thereof, and the consummation of the respective transactions contemplated thereby will not violate any provisions of applicable law or any applicable order or regulation of any court or public governmental agency, and will not conflict with or constitute a breach of a default under the charter of incorporation or bylaws of Indemnitors, as amended, or any agreement, indenture, or other instrument to which Principal or any of Indemnitors is a party or by which any of Indemnitors are bound, or any law, ordinance, administrative regulation, or decree of court, that is applicable to Principal or Indemnitors.

10.     <u>Sales</u>.  Upon the sale or other disposition to a party that is not an Indemnitor of any assets or business entity with which a Bond is associated and in the absence of written consent from Surety, no substitution of the named principal under any such associated Bond(s) will be deemed or permitted.

11.     <u>Books and Records</u>.  Until Surety shall have been furnished with competent evidence of its discharge, without loss, from any and all Bonds, Surety will have the right to free access during the business hours of Indemnitors, with reasonable advance written notice, to the books, records and accounts of Indemnitors for the purpose of examining them. Each Indemnitor

hereby authorizes and requests any depositories in which funds of any Indemnitor may be deposited to furnish to Surety the amount of such deposits as of any date requested. Surety may furnish copies of any information which it now has or may hereafter obtain concerning any Indemnitor to other persons or companies for the purposes of procuring co-suretyship or reinsurance; complying with regulatory requirements; advising interested persons or companies; or enforcing Surety's rights under any Bond or related Agreement, including, without limitation, the Surety Credit Documents.

12.    Subsidiaries and Affiliates as Indemnitors.  Indemnitors will cause any and all of their Subsidiaries and Affiliates that are named as Principal on any Bond to execute this Agreement. Said Subsidiaries and Affiliates will be deemed to be a Principal and Indemnitors, as appropriate, hereunder as though they were original signatories hereto.

13.    Waiver of Notice.  Except as otherwise provided in this Agreement, Indemnitors waive notice of the execution, continuation, modification, renewal, enlargement, or amendment of any Bond and of any fact, act, or information concerning or affecting the rights or liabilities of Surety or Indemnitors including, but not limited to, any acts giving rise to any Surety Loss under the Bonds.

14.    Right of Surety to Settle Claims.  Surety will have the exclusive right for itself and for Indemnitors to determine in good faith, whether any claim or suit upon any Bonds shall, on the bases of liability, expediency or otherwise, be paid, compromised, defended, or appealed. Surety may incur such expenses, including reasonable attorney's fees, as Surety deems necessary or advisable in the investigation, defense, and payment of such claims. It is Surety's exclusive right at its option and sole discretion to adjust, settle, or compromise any claim, demand, suit, or judgment upon the Bonds, unless Principal and Indemnitors, providing a reasonable legal basis therefor (as determined in Surety's sole and absolute discretion), will request Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and will deposit with Surety, at the time of such request, cash or collateral satisfactory to Surety in kind and amount to be used in paying any award(s) or judgment(s) rendered or that may be rendered. Provided, that, no Event of Default has occurred, any additional collateral delivered by Indemnitors to Surety in accordance with the foregoing provision will be returned to Indemnitors, after the deduction of all legal fees and related expenses and other Surety Loss that may have been incurred by Surety, at such time as Surety has determined, in its sole and absolute discretion, that the claim, demand, suit, or judgment has been resolved in a matter satisfactory to Surety such that Surety does not have any outstanding exposure with respect to such claim, demand, suit, or judgment.  Surety will have every right, defense, or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation, and nothing contained herein will be construed to waive or diminish any right, defense or remedy which Surety might have if this Agreement were not executed.

15.    Authority of Surety to Amend Bond.  Surety will have the right, and is hereby authorized and empowered, but not required:  (a) to increase or decrease the penalty or penalties of any Bonds, to change Obligees thereon, to execute any continuation, enlargements, modifications, and renewals thereof or substitute therefor with the same or different conditions, provisions or Obligees, and with the same, larger, or smaller penalties, it being agreed that this Agreement will apply to and cover such new or changed Bonds or renewals even though the

consent of Surety may or does substantially increase the liability of Indemnitors and Principal; or (b) to take such steps as it may deem necessary or proper to obtain release from liability under the Bonds.

16.     Preservation of Surety's Rights.  Surety will have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from the suretyship, and nothing in this Agreement will waive, abridge, or diminish any right which Surety might have if this Agreement were not executed, including without limitation the right of equitable subrogation, which Indemnitors expressly recognize.  In furtherance of the foregoing, Indemnitors hereby assign to Surety:  (i) the proceeds of any insurance policy affording coverage for all or part of any bonded obligations;  and (ii) the contracts or the obligations that are the subject of the Bonds, or that grow in any manner out of the Bonds, including without limitation all proceeds thereof, whether such interest, title, and rights are accounts or general intangibles (as defined in the relevant Uniform Commercial Code).  No failure on the part of Surety to exercise, and no delay in exercising, any right, power, or remedy hereunder will operate as a waiver thereof, nor will any single or partial exercise of any such right, power, or remedy by Surety, preclude any other or further exercise thereof, or the exercise of any other right, power, or remedy.  All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

17.     Bankruptcy Provision.  Regardless of whether an Event of Default has occurred, Indemnitors agree that in the event of a filing after the Effective Date by or against any of Indemnitors of a proceeding under the Bankruptcy Code:

(a)     Surety is the holder of a "claim" and is a claimant within the meaning of Section 101(5) of the Bankruptcy Code and is a "party in interest" within the meaning of Sections 362(d) of the Bankruptcy Code. Surety has standing as a party in interest to be heard in all matters including, without limitation, the right to seek relief pursuant to Sections 361 and 365 of the Bankruptcy Code; and

(b)     an Event of Default will be deemed to continue to exist and will not be deemed to be cured notwithstanding the payment by Surety pursuant to the Bonds of claims, bills, or other Surety Loss.

18.     Authority of Surety to Elect Remedies.  Each right, remedy, and power of Surety provided in this Agreement, the Surety Credit Documents, or by law, equity, or statute will be cumulative, and the exercise by Surety of any right, remedy, or power will not preclude Surety's simultaneous or subsequent exercise of any or all other rights, powers, or remedies.  The failure or delay by Surety to exercise any right, power, or remedy will not waive any right, power, or remedy. Except as required herein, no notice or demand upon Surety by Indemnitors will limit or impair Surety's right to take any action under this Agreement or to exercise any right, power, or remedy.

19.     Jurisdiction for Suits Under this Agreement.  This Agreement will be deemed to be a contract under the laws of the State of New York and for all purposes will be governed by and construed and enforced in accordance with the laws of such State. Unless the jurisdictional prerequisites are not met, the parties hereto irrevocably consent to the exclusive jurisdiction of

the United States District Courts of Florida, for the purpose of any litigation concerning this Agreement and the parties irrevocably waive any claims of any action, suit, or proceeding brought in such court that have been brought in an inconvenient form and agree to submit to the exclusive jurisdiction of such courts. Notwithstanding the foregoing, in the event any action, suit, or proceeding is brought by either party with respect to this Agreement, the Surety Credit Documents, and the Approval Order, such action, suit, or proceeding must be brought in the Bankruptcy Court during the pendency of the Bankruptcy Case and all disputes regarding the enforcement or interpretations of the Plan of Reorganization will be heard and determined by the Bankruptcy Court.

20.   Miscellaneous.  Failure to execute, or defective execution, by any party will not affect the validity of this Agreement as to any other party executing the same and each other party will remain fully bound and liable hereunder.  Invalidity of any portion or provision of this Agreement by reason of the laws of any state or for any other reason will not render the other provisions or portions invalid.  Executions of any application or submission for any Bond by Principal, or of any other indemnity agreement by any Indemnitors for the Principal will not abrogate, waive, or diminish any rights of Surety under this Agreement.  Indemnitors agree to sign, execute, file, and/or deliver to Surety all documents, reports, papers, pleadings, and/or instruments required to obtain and/or perfect any of Surety's rights under this Agreement or the Surety Credit Documents.  Indemnitors will not be permitted to assign this Agreement or any interest herein.

21.   Oral Modifications Ineffective.  This Agreement may not be changed or modified orally.  No change or modification to this Agreement will be effective unless specifically agreed to in writing and executed by Surety and Indemnitors.

22.   Representations.  The representations and warranties of Indemnitors contained in this Agreement are true and correct in all material respects and complete on and as of the date of this Agreement (except to the extent that such representations and warranties relate to an earlier date and were true and correct as of such date).  Indemnitors hereby undertake the duty to notify Surety at the earliest practicable moment of the occurrence of any Event of Default or of any material change in any representation made in this Agreement or in any document or other communication made to Surety in connection with its obligations of suretyship.  Indemnitors acknowledge hereby that Surety has and will continue to rely upon such information in determining whether to issue any Bonds and in undertaking its obligations to third parties under said Bonds.

23.   Notices.  It is mutually agreed that any and all notices herein provided for must be given in writing and will be deemed given if and when delivered in person or duly deposited in the United States Mail, postage prepaid for regular or certified mail, properly addressed to the party to whom given at the address of such party shown in this Agreement, provided however, that any party may specify any other post office address in the United States by giving at least five (5) days written notice thereof to the other party.

Surety:                          Liberty Mutual Insurance Company
                                 Interchange Corporate Center
                                 450 Plymouth Road, Suite 400
                                 Plymouth Meeting, PA  19462-1644
                                 Attn:  Virginia Boyle

With a copy to:                  Manier & Herod
                                 One Nashville Place
                                 Suite 2200
                                 150 Fourth Avenue, North
                                 Nashville, TN  37219
                                 Attn.:  J. Michael Franks
                                         Mary Paty Lynn LeVan

Principal/Indemnitors:           Winn-Dixie Stores, Inc.
                                 5050 Edgewood Court
                                 Jacksonville, FL 32254-3699
                                 Attn:  Bennett L. Nussbaum, Sr. VP and CFO

With a copy to:                  Winn-Dixie Stores, Inc.
                                 5050 Edgewood Court
                                 Jacksonville, FL 32254
                                 Attn:  Dale Bitter

                                 Skadden, Arps, Slate, Meagher & Flom LLP
                                 Four Times Square
                                 New York, NY 10036
                                 Attn:  Sally McDonald Henry

Any such communication will be deemed received at the earliest to occur of: (i) personal receipt; (ii) the date of promised delivery of a regularly scheduled overnight air courier service; or (iii) five days after deposit in the United States mail.  Any of the foregoing addresses may be changed by means of a notice furnished in the manner provided herein.

24.  <u>Entire Agreement</u>.  This Agreement, the Approval Order, and the Surety Credit Documents represent the entire agreement between the parties concerning the subject matter hereof, and all oral discussions and prior agreements are merged herein.

25.  <u>No Contrary Action</u>.  Indemnitors will not apply to the Bankruptcy Court in the Bankruptcy Case for the authority to take any action that is prohibited by the terms of this Agreement or any of the other Surety Credit Documents or refrain from taking any action that is required to be taken by the terms of this Agreement or any of the other Surety Credit Documents.

26.  <u>Jury Waiver</u>.  TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW WHICH CANNOT BE WAIVED, EACH PARTY HERETO HEREBY WAIVES, AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT, OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF

ANY ISSUE, CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS AGREEMENT, ANY OTHER OF THE SURETY CREDIT DOCUMENTS, OR THE SUBJECT MATTER HEREOF, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR TORT OR OTHERWISE.    EACH PARTY HERETO ACKNOWLEDGES THAT IT HAS BEEN INFORMED THAT THE PROVISIONS OF THIS SECTION 26 CONSTITUTE A MATERIAL INDUCEMENT UPON WHICH THE OTHER PARTIES HAVE RELIED, ARE RELYING, AND WILL RELY IN ENTERING INTO THIS AGREEMENT.   THE PARTIES HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION 26 WITH ANY COURT A WRITTEN EVIDENCE OF THE CONSENT OF SUCH OTHER PARTY TO THE WAIVER OF ITS RIGHTS TO TRIAL BY JURY.

     27.   <u>Counterparts</u>.  This Agreement may be executed by the parties independently in any number of counterparts, all of which together will constitute one and the same instrument which is valid and effective as if all parties had executed the same counterpart.

     IN WITNESS WHEREOF, this Agreement is executed by the parties on the day and date first set forth above.

SURETY:

LIBERTY MUTUAL INSURANCE COMPANY


By: _____
Its: _____

PRINCIPAL/INDEMNITORS:
ASTOR PRODUCTS, INC.
CRACKIN' GOOD, INC.
DEEP SOUTH DISTRIBUTORS, INC.
DEEP SOUTH PRODUCTS, INC.
DIXIE DARLING BAKERS, INC.
DIXIE-HOME STORES, INC.
DIXIE PACKERS, INC.
DIXIE SPIRITS, INC.
DIXIE STORES, INC.
ECONOMY WHOLESALE DISTRIBUTORS, INC.
FOODWAY STORES, INC.
KWIK CHECK SUPERMARKETS, INC.
SUNBELT PRODUCTS, INC.
SUNDOWN SALES, INC.
SUPERIOR FOOD COMPANY
TABLE SUPPLY FOOD STORES CO., INC.
WD BRAND PRESTIGE STEAKS, INC.
WINN-DIXIE HANDYMAN, INC.
WINN-DIXIE LOGISTICS, INC.

WINN-DIXIE MONTGOMERY, INC.
WINN-DIXIE PROCUREMENT, INC.
WINN-DIXIE RALEIGH, INC.
WINN-DIXIE STORES, INC.
WINN-DIXIE SUPERMARKETS, INC.

By: _____

Its: _____

## AFFILIATES AS PRINCIPAL

Astor Products, Inc.
Crackin' Good, Inc.
Deep South Distributors, Inc.
Deep South Products, Inc.
Dixie Darling Bakers, Inc.
Dixie-Home Stores, Inc.
Dixie Packers, Inc.
Dixie Spirits, Inc.
Dixie Stores, Inc.
Economy Wholesale Distributors, Inc.
Foodway Stores, Inc.
Kwik Check Supermarkets, Inc.
Save Rite Grocery Warehouse Inc. (merged into Winn-Dixie Raleigh, Inc.)
Sunbelt Products, Inc.
Sundown Sales, Inc.
Superior Food Company,
Table Supply Food Stores Co., Inc.
WD Brand Prestige Steaks, Inc.
Winn-Dixie Charlotte, Inc. (merged into Winn-Dixie Raleigh, Inc.)
Winn-Dixie Handyman, Inc.
Winn-Dixie Logistics, Inc.
Winn-Dixie Louisiana, Inc. (merged into Winn-Dixie Montgomery, Inc.)
Winn-Dixie Montgomery, Inc.
Winn-Dixie Procurement, Inc.
Winn-Dixie Raleigh, Inc.
Winn-Dixie Stores, Inc.
Winn-Dixie Supermarkets, Inc.

350919

EXHIBIT A

## AFFILIATES AS INDEMNITORS

Astor Products, Inc., a Florida corporation
Crackin' Good, Inc., a Florida corporation
Deep South Distributors, Inc., a North Carolina corporation
Deep South Products, Inc., a Florida corporation
Dixie Darling Bakers, Inc., a Florida corporation
Dixie-Home Stores, Inc., a South Carolina corporation
Dixie Packers, Inc., a Florida corporation
Dixie Spirits, Inc., a Mississippi corporation
Dixie Stores, Inc., a New York corporation
Economy Wholesale Distributors, Inc., a Florida corporation
Foodway Stores, Inc., a Delaware corporation
Kwik Check Supermarkets, Inc., a Florida corporation
Save Rite Grocery Warehouse Inc. (merged into Winn-Dixie Raleigh, Inc.)
Sunbelt Products, Inc., a Florida corporation
Sundown Sales, Inc., a Texas corporation
Superior Food Company, , a Florida corporation
Table Supply Food Stores Co., Inc., a Florida corporation
WD Brand Prestige Steaks, Inc., a Florida corporation
Winn-Dixie Charlotte, Inc., a _____ corporation (merged into Winn-Dixie
Raleigh, Inc.)
Winn-Dixie Handyman, Inc., a Florida corporation
Winn-Dixie Louisiana, Inc. a _____ corporation (merged into Winn-Dixie
Montgomery, Inc.)
Winn-Dixie Logistics, Inc., a Florida corporation
Winn-Dixie Montgomery, Inc., a Florida corporation
Winn-Dixie Procurement, Inc., a Florida corporation
Winn-Dixie Raleigh, Inc., a Florida corporation
Winn-Dixie Stores, Inc., a Florida corporation
Winn-Dixie Supermarkets, Inc., a Florida corporation

350919

EXHIBIT B

# EXISTING BONDS

## APPEAL BONDS

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| 016028926 | Winn-Dixie Stores, Inc. | 1,299,793<br><br>-700,000 | David D Reddick, James A Stokes | Defendant Bond to Stay Execution of Judgment - subsequently reduced by Agreed Order |
| | **TOTAL (1)** | **599,793** | | |

## WCSI BONDS

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| 016028723 | Save Rite Grocery Warehouse Inc. (merged into Winn-Dixie Raleigh, Inc.) | 500,000 | Mississippi Workers' | WSCI |
| 016028724 | Winn-Dixie Stores, Inc. | 7,378,201 | Commonwealth of Kentucky | WSCI |
| 016028731 | Winn-Dixie Stores, Inc. | 150,000 | State of Oklahoma | Self-Insurer WC |
| 016028746 | Winn-Dixie Stores, Inc. | 5,000,000 | State of North Carolina | WC – Self-Insurer |
| 016028755 | Winn-Dixie Charlotte, Inc. (merged into Winn-Dixie Raleigh, Inc.) | 500,000 | Indiana Workers Compensation Board | WC Self-Insurer |
| 016028756 | Winn-Dixie Stores, Inc. and its Wholly-owned Subsidiary | 9,180,000 | Georgia Self-Insurers Guaranty Trust Fund | Georgia Self-Insurers Guaranty Trust Fund |
| 016028885 | Winn-Dixie Stores, Inc. | 2,670,000 | Mass. Dept of Commerce and Insurance | WC – Self Insurer |
| 016028886 | Winn-Dixie Stores, Inc. | 1,500,000 | State of Virginia | WC |
| | **TOTAL (8)** | **26,878,201** | | |

## AUTO SELF INS BOND

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| 016028768 | Winn-Dixie Stores, Inc. | 100,000 | State of GA Office of Insurance & | GA Automobile Self-Insurer |
| | **TOTAL (1)** | **100,000** | | |

350919

EXHIBIT C

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| 016028725 | Winn-Dixie Stores, Inc. | 46,000 | City of Vero Beach, FL | Utility Deposit – Store #2357, 2365 |
| 016028728 | Winn-Dixie Montgomery Inc. | 17,000 | Walton Electric Membership Corp | Utility Deposit – Store #1872, 1858, 1815 |
| 016028729 | Winn-Dixie Raleigh Inc. | 27,000 | Walton Electric Membership Corp | Utility Deposit – Store #2735 |
| 016028730 | Winn-Dixie Montgomery Inc. | 31,438 | Utilities Board of City of | Utility Deposit – Store #596, 570 |
| 016028740 | Winn-Dixie Raleigh Inc. | 24,930 | Cinergy/ULH&P | Utility |
| 016028741 | Winn-Dixie Montgomery Inc. | 308,841 | Entergy Mississippi | Utility |
| 016028742 | Winn-Dixie Montgomery Inc. | 128,351 | Entergy Mississippi Inc. | Utility |
| 016028745 | Winn-Dixie Raleigh, Inc. | 24,000 | Bowling Green Municipal Utilities | Utility Deposit – Store #1698 |
| 016028758 | Winn-Dixie Stores, Inc. | 5,000 | Orlando Utilities Commission | Utility Deposit |
| 016028772 | Winn-Dixie Stores, Inc. #551 (Indemnitors have advised Surety that the named principal on this bond should have been Winn-Dixie Stores, Inc) | 30,000 | Choctawhatchee Electric Co-op Inc. | Utility Deposit – Store #551 |
| 016028773 | Winn-Dixie Montgomery Inc. | 39,230 | Lafayette Utilities System | Utility Deposit – Stores #1560, 1561, 1551 |
| 016028774 | Winn-Dixie Montgomery Inc. | 10,000 | Coast Electric Power Association | Utility Deposit – Store #1477 |
| 016028776 | Winn-Dixie Montgomery, Inc. | 700 | Mobile Area Water & Sewer System | Utility Deposit – Store #473 (Acct No 331851) |
| 016028862 | Winn-Dixie Stores, Inc. | 7,125 | Hillsborough County, FL | Utility Deposit – Store #673 |
| 016028863 | Winn-Dixie Stores, Inc. | 24,000 | City of Green Cove Springs FL | Utility Deposit – Store #138 |
| 016028864 | Winn-Dixie Stores, Inc. | 31,000 | Sumter Electric Co-op Inc. | Utility Deposit – Store #2319, 2229 |
| 016028865 | Winn-Dixie Stores, Inc. | 26,000 | Florida Public Utilities Co | Utility Deposit |
| 016028866 | Winn-Dixie Stores, Inc. | 185,000 | City of Tallahassee | Utility Deposit – |
| 016028868 | Winn-Dixie Stores, Inc. | 16,000 | City of Bessemer Utilities Dept. | Utility Deposit – Store #494, 595 |
| 016028869 | Winn-Dixie Stores, Inc. | 160,000 | Lakeland Electric | Utility Deposit – Store #706, 664, 632, 631, 629 |
| 016028870 | Winn-Dixie Stores, Inc. | 40,000 | Fort Pierce Utilities Authority | Utility Deposit – |
| 016028872 | Winn-Dixie Montgomery | 20,000 | City of Opelika Light & Power | Utility Deposit – Store #437, 409 |

350919

2

| 016028873 | Winn-Dixie Montgomery | 1,000 | City of Opelika Water Works Board | Utility Deposit – Store #437, 409 |
|---|---|---|---|---|
| 016028877 | Winn-Dixie Stores, Inc. | 1,515 | City of Winter Park FL | Utility Deposit – Store #2383 |
| 016028878 | Winn-Dixie Stores, Inc. | 551,000 | Tampa Electric Co (TECO) | Utility Deposit |
| 016028881 | Winn-Dixie Montgomery Inc. | 5,652 | Volunteer Energy Co-op | Utility Deposit – Store #1944 |
| 016028883 | Winn-Dixie Stores, Inc. | 74,000 | Ocalo Elec Utility Customer Services Office | Utility Deposit – Store #2228, #2211 |
| 016028884 | Winn-Dixie Louisiana Inc. (merged into Winn-Dixie Montgomery, Inc.) | 36,000 | Miss. Public Service Commission | Utility Deposit – Store #1328, 1317, 1374 |
| 016028888 | Winn-Dixie Stores, Inc. | 239,780 | Mississippi Power Co | Utility Deposit |
| 016028889 | Winn-Dixie Stores, Inc. | 25,325 | New Smyrna Beach Utility Commission | Utility Deposit – Store #2304 |
| 016028891 | Winn-Dixie Stores, Inc. | 500 | Florida Public Utilities Co | Utility Deposit Store #2380 – Heathrow FL |
| 016028892 | Winn-Dixie Stores, Inc. | 4,440 | Manatee County Public Works | Utility Deposit – Store #660 – Bradenton FL |
| 016028894 | Winn-Dixie Stores, Inc. D/B/A/ Goodings Supermarkets | 875 | City of Altamonte Springs | Utility Deposit – Store #2384, #2388 – Altamonte Springs |
| 016028895 | Winn-Dixie Stores, Inc. | 60,000 | Utility Board of the City of Key West, Florida | Utility Deposit – Store #358, #317, #324 |
| 016028899 | Winn-DixieMontgomery, Inc. | 96,762.24 | Central Louisiana Electric Co | Utility Deposit – Store #1564, 1448, 1547, 1504, 1544, 1353 |
| 016028904 | Winn-Dixie Montgomery, Inc. | 5,930 | Mississippi Valley Gas Co | Utility Deposit – Store #583, Meridian MS |
| 016028905 | Winn-Dixie Louisiana, Inc. | 56,930 | Mississippi Valley Gas Co | Utility Deposit |
| 016028906 | Save Rite Grocery Warehouse Inc. (merged into Winn-Dixie Raleigh, Inc.) | 22,080 | Mississippi Valley Gas Co. | Utility Deposit – Store #2620, 2621, 2625, 2627 |

350919

3

| 016028910 | Save Rite Grocery Warehouse Inc. (merged into Winn-Dixie Raleigh, Inc.) | 6,000 | Vicksburg Water & Gas Admin | Utility Deposit – Store #2624, #2634 (fuel) |
|---|---|---|---|---|
| 016028911 | Save Rite Grocery Warehouse Inc. (merged into Winn-Dixie Raleigh, Inc.) | 5,120 | Willmut Gas Co | Utility Deposit – Store #2623, #2626 |
| 016028912 | Winn-Dixie Montgomery, Inc. | 7,680 | Willmut Gas Co | Utility Deposit – Store #1316, 1334, 1360 |
| 016028925 | Winn-Dixie Stores, Inc. | 1,000,928 | AL Power Co | Utility Payment |
| | **TOTAL (42)** | **3,403,132.24** | | |

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| | AGRICULTURE DEALER BONDS | | | |
| 016028913 | Winn-Dixie Stores, Inc. | 500,000 | State of GA | Dealer in Agricultural Producers – State of GA |
| 016028914 | Winn-Dixie Montgomery, Inc. | 225,000 | State of GA | Dealer in Agricultural Products – State of GA |
| 016028920 | Winn-Dixie Montgomery, Inc. | 1,000 | State of FL Dept. | Feed Dealers |
| 016028921 | Astor Products, Inc. | 1,000 | State of FL Dept. | Feed Dealers |
| 016028922 | Winn-Dixie Procurement, Inc. | 1,000 | State of FL Dept | Feed Dealers |
| | **TOTAL (5)** | **728,000** | | |

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| | LICENSE BONDS | | | |
| 016028902 | Leroy Ayo and Winn-Dixie Louisiana Inc. | 5,000 | City of Baton Rouge LA | License & Permit |
| | **TOTAL (1)** | **5,000** | | |

| BOND NUMBER | PRINCIPAL | AMOUNT | OBLIGEE | DESCRIPTION |
|---|---|---|---|---|
| | TOBACCO TAX BONDS | | | |
| 016028732 | Winn-Dixie Stores, Inc. | 1,295,000 | State of FL – Dept of | Cigar, Cigarette Tax Bond – 5 Locations in FL |
| 016028738 | Winn-Dixie Stores, Inc. | 76,000 | State of FL – Dept of | Tobacco Products – State of FL – 5 Locations |
| 016028927 | Winn-Dixie Montgomery, Inc. | 485,000 | State of LA | Tobacco Tax |
| | **TOTAL (3)** | **1,856,000** | | |

350919

### FUEL TAX BONDS

| Bond Number | Principal | Amount | Obligee | Description |
|---|---|---|---|---|
| 016028748 | Winn-Dixie Stores, Inc. | 250,000 | Mississippi State Tax Commission | Petroleum Tax |
| 016028915 | Winn-Dixie Montgomery, Inc. | 5,000 | State of GA | Motor Fuel Distributor |
| | **TOTAL (2)** | **255,000** | | |

### PROPERTY BROKER ICC BOND

| Bond Number | Principal | Amount | Obligee | Description |
|---|---|---|---|---|
| 016028754 | Winn-Dixie Stores, Inc. d/b/a Winn Dixie Logistics | 10,000 | FHWA/OMC | Property Brokers BMC 84 |
| | **TOTAL (1)** | **10,000** | | |

### SUMMARY OF BOND TYPES

| Bond Types | Number of Bonds | Aggregate Amount |
|---|---|---|
| Appeal | 1 | 599,793 |
| WCSI | 8 | 26,878,201 |
| Auto Self Ins. | 1 | 100,000 |
| Utility Deposit | 42 | 3,403,132.24 |
| Agriculture Dealer | 5 | 728,000 |
| License | 1 | 5,000 |
| Tobacco Tax | 3 | 1,856,000 |
| Fuel Tax | 2 | 255,000 |
| Property Broker, ICL | 1 | 10,000 |
| **TOTALS** | **64** | **33,835,126.24** |

350919

**BONDS TO BE ISSUED**

| | | | |
|---|---|---|---|
| Winn-Dixie Stores, Inc. | Perishable Ag Commodities Act (PACA) | Federal Ag | $6,000,000 |
| Winn-Dixie Stores, Inc. | FL Department of Agriculture & Consumer Services | Agricultural Products Dealer | $100,000 |
| Winn-Dixie Stores, Inc. | Florida Dept. of Bus. And Professional Registration | Cigarette Tax | 100,000 |
| Winn-Dixie Stores, Inc. | GA Department of Revenue | Cigar & Cigarette Distribution Tax | $10,000 |
| Winn-Dixie Stores, Inc. | GA Department of Revenue | Tobacco Distribution Tax Stamp | $100,000 |
| Winn-Dixie Stores, Inc. | FL Department of Agriculture | Citrus Inspection Fees | $10,000 |
| | | Total | $6,320,000 |

350919

EXHIBIT D