# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

In Re:

                              CASE NO. 05-03817-3F1

WINN-DIXIE STORES, INC., et. al.,      Chapter 11

        Debtors.    /      Jointly Administered

**RESPONSE OF CREDITOR HOLLY WALL (CREDITOR NO. WDX-391750-L4-55 CLAIM NO. 7798) TO DEBTORS' OMNIBUS OBJECTION TO UNRESOLVED LITIGATION CLAIMS AND REQUEST FOR LIFTING OF AUTOMATIC STAY**

    Creditor, HOLLY WALL, [hereinafter referred to as Creditor] by and through her undersigned counsel, hereby files this Response to Debtors' Omnibus Objection to Unresolved Litigation Claims, including the Claim of Holly Wall (Creditor No. WDX-391750-L4-55, Claim No. 7798) and states as follows:

1. Creditor's Proof of Claim was timely and properly filed on July 25, 2005.

2. This is an unsecured nonpriority claim stemming from a personal injury action against one of Debtor's Florida stores. The subject incident occurred October 18, 2001. The claim was subsequently the subject of a November 19, 2003 lawsuit pending but stayed in the Circuit Court in and for Martin, County, Florida. Prior to Debtors' Chapter 11 Bankruptcy Petition, the subject claim was actively prosecuted and defended in circuit court for more than a year. Numerous depositions and other discovery were concluded and the case was near trial readiness. Proposals for

        settlement had been exchanged between the parties and the parties were preparing to mediate the subject claim.

3. During the year and a half since the imposition of the subject bankruptcy, while the circuit court action has been stayed, Creditor has complied with this Court's claims resolution procedure and all Orders associated therewith.

4. The completed Questionnaire for Litigation Claims was timely received by Debtors' representative on November 1, 2005.

5. Additional communications have been exchanged with representatives for the Debtors as follows:

    a.    On November 8, 2005 Debtors' third party claims administrator (the same third party claims administrator that has handled the subject claim from its inception shortly after the October 18, 2001 incident and throughout the pendency of the subject lawsuit dating back to November 2003) furnished correspondence in which it stated that "We deny the amount you claimed in your proof of claim". This correspondence did not refer to the completed Questionnaire for Litigation Claims or the amount requested in response to the question "In what amount would you agree to settle your claim". Notably, the amount reflected in Creditor's response to this question in her completed questionnaire differed from the amount contained in the Proof of Claim. Further, the November 8, 2005 correspondence requested "written documentation from the [governmental entity (in this case TriCare)] which confirms that its claim or lien against

your possible settlement (i) has been waived or satisfied or (ii) will be satisfied in full upon payment of a fixed sum."

b.      On November 18, 2005 counsel for Creditor re-submitted a copy of the Tricare lien information to Debtors' representative together with another copy of the closest thing that Tricare will provide responsive to Debtors' representative's request for written confirmation from the lien holder that the lien "will be satisfied in full upon payment of a fixed sum". Such is the case, because until the instant claim is resolved with Debtors the lien continues to accumulate while Creditor receives ongoing medical treatment as a result of her significant injuries suffered in the underlying accident.  Creditor's injuries suffered in this accident necessitated several prior orthopedic surgeries, extensive hospitalization and rehabilitation as well as extensive follow-up treatment and care, which is ongoing and is expected to continue into the future.  Creditor's counsel's November 18, 2005 correspondence fully addressed these issues.

c.      On January 3, 2006 counsel for Creditor requested Debtors' belated Response Statement to the Completed Claims Questionnaire as required by paragraph 3B of this Court's Claims Resolution Procedure.

d.      On January 11, 2006 counsel for Creditor requested Mediation pursuant to paragraph 3C of this Court's Claims Resolution Procedure and Debtors' failure to timely serve its Response Statement.

e.      On January 20, 2006 and February 8, 2006 counsel for Creditor provided follow-up communications to Debtors' representative regarding

the status of the claims resolution process and Debtors' representative's prior representations regarding their willingness to participate in good faith in the claims resolution process which has simply not occurred to date.

f.     On or about February 13, 2006, counsel for Creditor received a Mediation Referral Notice stating that mediation would be coordinated within 45 days and that, "Pursuant to the Order Approving the Claims Resolution Procedure in the referenced case on September 1, 2005 (Docket No. 3326), the Debtors agree to the mediation of your claim."

g.     Debtors' representative's subsequent May 8, 2006 correspondence advised that "mediation is a prerequisite to the filing of motions for relief from the automatic stay in order to liquidate claims in other forums". The correspondence went on to state that a *deminimus* settlement, which would equate to a settlement of $5,000.00 in the context of this claim, might be available for the subject claim; otherwise the subject Omnibus Objection would be filed by Debtors "and the judge will be asked to disallow all claims that have not been settled"- the legal basis for which has yet to be provided.

h.     Since no mediation coordination had occurred by May 1, 2006 as promised, and left with these represented options (Creditor suggests a third more realistic option *supra*.), Creditor once again requested Debtors' coordination of the agreed upon mediation. In fact, immediately subsequent to receiving Debtors' representative's May 8, 2006

correspondence, counsel for Creditor made multiple telephone calls to "the Mediation Coordinator" referenced in the Mediation Referral Notice, Tana Copeland since Creditor had not been contacted "within the next 45 days to coordinate the scheduling of the Mediation Conference" as set forth in the Mediation Referral Notice. Counsel for Creditor was then advised on or about June 27, 2006 that the mediation would be coordinated for November 1,2, or 3 2006; however, coordination of the mediation for any of those proposed dates has still not been completed and appears unlikely. The requisite Mediation has not yet been coordinated despite Creditor's multiple requests for the same.

i. On June 27, 2006 Creditor's counsel likewise received the Notice of Debtors' Omnibus Objection To Unresolved Litigation Claims which indicates that "Debtors (a) contest the legal basis of each claim and (b) dispute the amount of each claim." The Omnibus Objection does not contain any specific objection relating to the instant claim other than these general liability and damage objections.

j. Finally, on July 28, 2006 Creditor's counsel received the Notice of Hearing on Debtors' Omnibus Objection To Unresolved Litigation Claims which indicates, under "Reason for Disallowance: "No liability—Disputed Claim; Insufficient Proof of Claim Documentation".

6. No previous objection had ever been raised concerning "insufficient proof of claim documentation". Moreover, as of the preparation and submission of the instant Response, Creditor has not been provided any specific

      details as to what proof of claim documentation is allegedly incomplete. Clearly, the burden is on the Debtors as the party seeking to disallow a timely filed Proof of Claim to specify the basis of any such contention. Merely stating in a hearing notice "Insufficient Proof of Claim Documentation" does not meet this requirement. It is quite frankly, impossible to respond to such a non-specific objection. Creditor timely filed her Proof of Claim.  Creditor has never been previously informed that Debtors were contending that the claim might be subject to disallowance due to "insufficient proof of claim documentation".  Most significantly, to the extent that more sufficient proof of claim documentation is required, a claim which Creditor disputes, Creditor has never been afforded any notice or opportunity to cure whatever defect Debtors are suddenly claiming exists regarding the proof of claim documentation.

7. With regard to the "no liability- disputed claim" objections, clearly disallowance of the instant claim on any of those bases would be inappropriate.  Respectfully, this is not the proper forum for a trial on the merits concerning liability or damages in this disputed personal injury claim.

8. Accordingly, the instant unresolved litigation claim ought to be promptly mediated pursuant to this Court's Amended Claims Resolution Procedure and if the subject claim remains unresolved than Creditor would respectfully request that this Court lift the automatic stay in order that the

underlying State circuit court action can proceed to trial so that the claim may be liquidated in an appropriate forum.

Based upon the foregoing, Creditor, HOLLY WALL, respectfully requests that this Court deny the Debtors' Objection to the Claim of Holly Wall (Creditor No. WDX-391750-L4-55 Claim No. 7798).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a correct copy of the foregoing has been furnished to Smith, Hulsey & Busey, Attn: Tana Copeland, 225 Water Street, Suite 1800, Jacksonville, Florida 32202 via U.S. Mail and via email at **tcopeland@smithhulsey.com** on this 8th day of August, 2006.

RUBIN & RUBIN

_____
Guy Bennett Rubin, Esquire
Florida Bar No.: 691305
P. O. Box 395
Stuart, Florida 34995
(772) 283-2004
(772) 283-2009 (facsimile)
Attorney for Creditor Holly Wall