44

1    full-blown liquidation analysis, 21-pages long

2    itself which is posted on the local website, and

3    we've added that to the disclosure statement in

4    response to these objections.

5         Financial information regarding the debtors

6    is voluminous and is available.

7         The monthly operating reports during the

8    entire case have been filed with the Court and

9    are available.

10        The projections which the plan is premised

11   on are contained in the plan and the disclosure

12   statement.

13        There is plenty of information that is

14   disclosed there.

15        The information that was -- the reason for

16   the ad hoc trade committee being under seal was

17   because it contained proprietary information

18   which would be harmful to the estate because of

19   competitive considerations, and it was

20   appropriately protected under federal law and

21   placed under seal by reason of that.  And it is

22   available to anybody who wants to sign a

23   confidentiality agreement.

24        We believe that the process has been

25   thorough, the disclosure has been adequate.

1    There's discovery available if anybody wants

2    additional information.

3        We ask the Court to approve the disclosure

4    statement and overrule the objection.

5        THE COURT:  U.S. Trustee's position?

6        MR. PORTER:  Thank you, Your Honor.  Bill

7    Porter on behalf of the United States Trustee.

8        We filed our objection a few days ago, last

9    week, and it raised about six issues.  And the

10   debtor -- I mean, they have been very diligent,

11   and they resolved all but basically two of

12   those.  And it relates to the summary of

13   financial performance during the case, which is

14   on Page 33 of the revision.

15       I mean, the case is all about numbers,

16   Judge, and all we were looking for was more in

17   the way of a summary of what the debtor has done

18   during the course of the case so that you could,

19   as a hypothetical creditor, sit back and say --

20   and it could have been in any form, chart form,

21   some sort of summary fashion or spreadsheet.

22       I don't think it's reasonable to say, in a

23   megacase:  Go look at SEC filings, go sit down

24   and look at all the monthly operating reports,

25   then take this 200-page document, then go to the

1       Logan website and look at that 21-page

2       liquidation analysis there, and then come to your

3       conclusion, creditor.

4            I mean, what's supposed to happen ideally is

5       the disclosure statement is supposed to have that

6       information.  A reference to the monthly

7       operating reports is not sufficient.

8            And all that would be required -- I mean, we

9       have millions of dollars going out to

10      accountants, lawyers, all kinds of

11      professionals.  I don't know why someone can't

12      give us numbers that show that.

13           As an example, let's say the projections

14      anticipate a five percent kind of increase in

15      profit or sales.  Well, you know, if the debtor

16      -- this would actually benefit the debtor.

17           If the debtor showed that kind of steady

18      increase in its performance during the case,

19      after all the store closings and everything else

20      it's done, then that would aid creditors in

21      deciding, well, hey, this is a plan that is

22      feasible.

23           And I understand that this issue will be

24      dealt with at confirmation, but just because it's

25      an issue of feasibility and will be raised at

1      confirmation doesn't mean it's not appropriate to

2      consider it now in terms of what they're

3      disclosing and whether it is feasible.

4           So that was really the only objection we

5      had, Judge, is that -- and we're not looking to

6      turn this into some 400-page document.   I

7      understand the practicalities of this case.

8           Our only concern was that it didn't say

9      enough in terms of what numbers we know against

10     the numbers that are projected.

11          In fact the only real meat of that provision

12     in the revised section says that, as of June 28,

13     2006, the debtors had no outstanding borrowings

14     on the revolving line available under the DIP

15     facility, and $40 million outstanding on the

16     debtors' fixed term loan.   That's helpful.

17     That's a number.

18          The rest of it, it's just general kind of

19     fluff boilerplate language, that the debtor has

20     shown improvement, and based upon improved store

21     execution and customer service.

22          Well, I mean, any retail debtor can put that

23     in a disclosure statement, but it doesn't really

24     aid the hypothetical creditor in determining

25     whether to vote to accept or reject the plan.

1          THE COURT:  Thank you, very much.

2          Yes, sir.

3          MR. FITZGERALD:  May it please the Court,

4     Brian Fitzgerald on behalf of the Florida Tax

5     Collectors.

6          We had filed a separate objection to the

7     disclosure statement primarily dealing with

8     treatment for postpetition ad valorem taxes

9     statewide for 2006 which will be administrative

10    expenses.

11         Subsequent to our objection, the debtors

12    have filed revisions to the proposed disclosure

13    statement, which address in part our objections

14    but not in full.

15         Specifically, we had raised the question of

16    what will treatment be of the 2004, 2005 and 2006

17    taxes.

18         I think Page 46 of the revised disclosure

19    statement does include a paragraph on tax claims

20    objection processes, and it's stated in there --

21    the debtors state that they intend to file

22    contest of the 2004, 2005 and 2006 taxes of the

23    Florida Tax Collectors statewide.  They also

24    reference -- I believe all the other states that

25    have Winn-Dixie property have already had

1       objections filed as to their ad valorem tax

2       claims.

3           As I said, that was filed subsequent to our

4       objection.  They advised us it would be put in

5       the revised disclosure statement.

6           But the disclosure statement still does not

7       -- it certainly tells us what their intent is as

8       far as the ad valorem taxes for '06, which are

9       postpetition admin expenses, but doesn't

10      specifically reference them or state that they

11      are admin expenses in the definitions as

12      contained within the disclosure statement.

13          On Page 5 of the disclosure statement where

14      they're actually talking about administrative

15      claims, on the class description portion of box 1

16      of that chart specifically excludes or doesn't

17      include any reference whatsoever to the

18      postpetition ad valorem tax claims of the Florida

19      Tax Collectors.

20          Other portions of the disclosure statement

21      do reference that the Court will retain

22      jurisdiction to hear objections to the tax

23      claims.  It's not delineated between '04 and '05

24      prepetition claims and '06 ad valorem

25      administrative expenses postpetition.

1          I would also note that a mere statement that

2      they're intending to contest the claims and the

3      amounts as shown in our proof of claim is

4      insufficient.

5          The fact is that for 2005 and for 2006, the

6      postpetition taxes, which have not yet been

7      determined at this point, there are sworn

8      returns, sworn tax returns, from Winn-Dixie from

9      the ad valorem tax department on which the

10     tangible taxes, at least, will be based once they

11     are determined.

12         In light of that, we'd submit the disclosure

13     statement with regard to tangible personal

14     property taxes, there's disclosure necessary

15     relative to the debtors' intention to determine

16     both ad valorem taxes on property that's been

17     sold that's no longer property of the estate.

18     There's a large amount of those type of taxes.

19         With respect to property of the estate,

20     disclosure is necessary relevant to the debtors'

21     intention to contest their own sworn tax returns

22     that have been filed.

23         And with regard to real property, there's

24     need for disclosure in regard to whether the

25     debtors are going to contest taxes on both leased

1       property and owned property or both.  None of

2       that is in there.

3            We'd submit that failure to include or

4       specifically exclude the postpetition ad valorem

5       2006 tax obligations as administrative claims as

6       defined in the disclosure statement is

7       insufficient.

8            Pursuant to the chart which I described on

9       Page 4, they're not included whatsoever.  The '06

10      taxes as administrative expenses are properly

11      expenses to be paid in the ordinary course of

12      business in accordance with 28 USC 959 and 960.

13           And there's been no -- again, no distinction

14      or delineation or disclosure as to '04 and '05

15      prepetition claims and taxes, which they are

16      clearly going to be challenging, and '06 post

17      petition administrative expenses, which we submit

18      there needs to be.

19           I think that the Kentucky Taxing Authorities

20      have also filed an objection which essentially

21      adopts the objection of the Florida Tax

22      Collectors and our arguments in that regard for

23      what is not in the disclosure statement would

24      carry over to other state taxing authorities as

25      well who have filed claims.

1          THE COURT:   Thank you very much.

2          Anybody else have any objection to the

3     disclosure statement?   Let me get them all out,

4     and then I'll let you have another opportunity.

5          You've already talked.   You're going to talk

6     twice?

7          MS. MORRIS:   I limited it to substantive

8     consolidation the first time, Your Honor.

9          THE COURT:   Okay.   Let me have everything

10    you've got.

11         MS. MORRIS:   I was trying to go in an

12    orderly fashion.

13         THE COURT:   I know, but I think it's better

14    just to get it all out on the table at this

15    point.

16         MS. MORRIS:   Your Honor, Deborah Morris

17    again on behalf of the United States.

18         We had, as I said before, filed an objection

19    to the disclosure statement, and we've resolved

20    some of those issues with the debtors through

21    their amendments.

22         We do have a couple of points in addition to

23    the substantive consolidation issues that I

24    raised previously.

25         One of our objections had been to the

1      adequacy of the assets held by the debtor and the

2      estimated value of those assets, including

3      litigation claims that are held by the debtor,

4      both bankruptcy claims such as preference actions

5      and nonbankruptcy claims or causes of actions

6      that they may have.

7          In response to that objection, the debtors

8      have added a statement at Page 89 of the amended

9      disclosure statement stating that they believe

10     there's no appreciable value from the bankruptcy

11     litigation claims.

12         They did not add a similar statement to non-

13     bankruptcy claims, and we just ask that they add

14     either a value or a statement that they also

15     believe there's no an appreciable value from

16     those potential assets.

17         On the liquidation analysis, Your Honor, we

18     had objected to the inadequacy of that, and

19     they've added the link -- or they've added the

20     complete liquidation analysis to the Logan and

21     Company website.

22         However, once we reviewed that, we saw that

23     we did have a problem with the liquidation

24     analysis in that the liquidation analysis goes

25     through the five classes of unsecured creditors:

54

1       the noteholder, landlord, vendor, retirement plan

2       and other unsecured, and discusses their

3       recovery.

4            There apparently has been no analysis done

5       for claims that do not fall -- general unsecured

6       claims that do not fall within those five

7       classes.

8            The IRS general unsecured claim for

9       penalties is being put in Class 20, and there's

10      been no -- or at least it's not stated anywhere

11      whether there's been any liquidation analysis

12      performed for those claims.  And so without that

13      we can't determine whether we would receive as

14      much under this plan as we would in a

15      liquidation.

16           And so we would like a statement either what

17      their estimated recovery would be for us in a

18      liquidation on that particular claim, or, if it's

19      zero, to say that somewhere in the disclosure

20      statement.

21           And, finally, we just had the objections to

22      the substantive consolidation that I referenced

23      earlier.

24           Thank you, Your Honor.

25           MS. SPECIE:  Good morning.  May it please

1      the Court, Your Honor, Karen Specie here on

2      behalf of Terranova Corporation on behalf of

3      certain landlords.  Specifically, we represent

4      five landlords in the South Florida area.

5          We filed a limited objection to the debtor's

6      disclosure statement.  It appears, based on

7      conversations with debtor's counsel and committee

8      counsel this morning, that our objection has been

9      addressed.  The gist of that is as follows:

10         First of all, we requested that the debtor

11     include information that sets forth the debtor's

12     opinion as to the cure amounts to landlords

13     subject to assumption motions vis-a-vis the

14     amounts that the landlords have now assessed are

15     asserted are due under their objections.  And so

16     it's my understanding that that will be included

17     now in the amendments to the disclosure

18     statement.

19         In addition to that, the debtor will be

20     addressing the fact that -- or disclosing the

21     fact that it has enough money on hand through its

22     exit financing to be able to pay the cure amounts

23     in full as asserted by the landlords if the Court

24     should eventually rule that all of those amounts

25     are due.

1          The debtor has made it clear that the debtor

2     is objecting to those amounts.  They are subject

3     to negotiation and litigation, but at least the

4     debtor is going to disclose that it will have

5     money on hand if necessary to pay those amounts

6     in full.

7          The disclosure statement as written provides

8     that the -- the debtor has filed assumption

9     motions, two of them.  Our clients are subject to

10    one, along with total of about 75 landlords.

11         Under the disclosure statement as written,

12    the provision for the landlords was that the cure

13    amounts didn't have the ability to vote because

14    they're administrative claims, which would be

15    true, they'd be payable on confirmation.

16         But it also reserves the right to the debtor

17    under the plan to, if the cure amount determined

18    for one of the landlords is too high in the

19    debtor's opinion, then the debtor would at that

20    point still have the right to decide:  No, I'm

21    not going to cure and assume, I want to reject.

22         The problem with the way the disclosure

23    statement and plan were written originally was

24    that, if that particular landlord wanted to try

25    to vote a rejection claim, it was going to have

1          to file a motion with the Court for leave to do

2          so rather than just be able to file a vote and

3          then have the vote not count if in fact the

4          rejection never occurred and the debtor was going

5          to assume the lease.

6               The debtor, it's my understanding, is

7          amending the disclosure statement to include

8          language that no longer requires the landlords to

9          a file a motion to vote, but does require them to

10         send a letter to the voting agent asking for a

11         ballot.

12              We understand that.  We don't have a problem

13         with that.  Procedurally, it makes sense from the

14         standpoint that the voting will probably be kept

15         better under control that way, but at least it

16         doesn't require the landlords to expend

17         significant attorneys fees in trying to get

18         permission to vote from this Court.

19              So it appears to me, Your Honor, that our

20         objections have really been handled.  We do have

21         some other issues with the plan, but those

22         address primarily confirmation and I won't go

23         into those today.

24              Thank you.

25              THE COURT:  Thank you very much.

1          Mr. Frisch, something new?

2          MR. FRISCH:  I just like the spotlight.

3          Adam Frisch again on behalf of Prudential

4     Insurance Company of America.  This is a whole

5     different issue.

6          Prudential filed an objection basically

7     along the lines of Ms. Specie's objection dealing

8     with the assumption of the leases and the

9     corresponding cure amounts.

10          Prudential has since discussed the issue

11     with debtor's counsel and, as Ms. Specie said,

12     the debtors have added language to the disclosure

13     statement that satisfies our objection.

14          However, Prudential reserves its rights with

15     respect to any objection it may have, and

16     reserves its right to raise such objections at

17     the assumption hearings that are going to take

18     place later on.

19          Prudential also objected to the injunction

20     provision in Section 12.14 of the plan.

21     Prudential believes that the language shouldn't

22     be eliminated from the plan.  However, we realize

23     this is more of an objection that goes to

24     confirmation of the plan.  The only reason we

25     object to it now is because the language was

1       included in the disclosure statement.

2           Prudential doesn't want to delay the

3       approval of the disclosure statement on this

4       issue alone.

5           Therefore, we withdraw our objection with

6       respect to the injunction provision; however, we

7       reserve the right to raise this objection again

8       at the confirmation hearing.

9           THE COURT:  Thank you.

10          MS. REAMS:  Good morning, Judge.  My name is

11      Rebecca Reams, and I'm speaking on behalf of my

12      father, William Box, may he rest in peace, and my

13      mother, Sarah Box.

14          I just want to make certain that it's clear

15      -- and I'm not sure if I'm going it at the right

16      time because I'm not an attorney, I'm not a

17      professional, but I want to make sure it's

18      understood that I object to the fact that the

19      shareholders are getting nothing.

20          I heard the gentleman say that the committee

21      of horse traders came up with this plan, but

22      usually in a horse trade somebody walks away --

23      both people walk away with a horse, even if it's

24      got a gimp leg.

25          So I just want to make sure this objection

1       is clear that I'm not happy, also known as we

2       object, to receiving no compensation.

3               THE COURT:  I understand that.  That's not

4       the purpose of this hearing.

5               MS. REAMS:  Okay, thank you.

6               THE COURT:  But if you come to confirmation,

7       that's when that will be material.

8               MS. REAMS:  Thank you.

9               THE COURT:  Is there anyone else that has an

10      objection to the revised disclosure statement?

11      Speak now.

12              (No response.)

13              THE COURT:  Mr. Busey.

14              MR. BUSEY:  Thank you, Your Honor.  The

15      debtors have agreed to make the changes Ms.

16      Specie identified, and we're going to put that in

17      the revise disclosure statement, and that should

18      satisfy the objections of Terranova and

19      Prudential.

20              With regard to the objection of the IRS

21      regarding our liquidation analysis for its Class

22      20 penalty claim, Class 20 is not compensatory

23      damages under the plan.  They're going to get

24      nothing because they're penalty damages.  The

25      plan says that, the disclosure statement says

1       that.

2              And the disclosure statement specifically

3       includes in response to the IRS's objection to

4       the fact that their penalties are included in the

5       amount of $11 million in Class 20, and we made

6       that disclosure as having recovered nothing under

7       the plan.  So we think we've addressed that issue

8       adequately.

9              With regard to the Florida Tax Collectors,

10      we have added language at Page 45 of the revised

11      disclosure statement to specifically address the

12      tax claims of the Florida Tax Collectors, by

13      name, for the years 2004, 2005, 2006, and that

14      they will be the subject of objections by the

15      debtors pursuant to Section 505 of the Bankruptcy

16      Code, and we've made that very clear in the

17      disclosure statement.

18             With regard to the United States Trustee,

19      the objection that you heard Mr. Porter address

20      was that the U.S. Trustee asked us to put a

21      summary of financial performance of the debtors

22      during the course of the proceedings.  We have

23      done that.

24             In response to that objection, we have added

25      a whole section at Page 33 of the revised

1     disclosure statement entitled "Summary of

2     financial performance during the Chapter 11

3     proceedings," and have described it.

4         His objection is that he doesn't think

5     that's enough, and he thinks that we should put

6     literally a summary of the monthly operating

7     reports in the disclosure statement for each

8     month during the course of the proceedings.

9         As I said at the beginning of this hearing,

10    Your Honor, the issue here really is to strike a

11    balance between providing adequate information

12    that would inform the creditors of how to vote

13    and what to do with regard to the plan, as

14    opposed to providing them a document that's going

15    to be unapproachable, unreadable and just

16    overwhelming.

17        We're already going to send them a ballot

18    together with 200 pages of information.  If we

19    did literally what the United States Trustee

20    suggested, we'd be talking about 300 or 400 pages

21    of information, and it just becomes not practical

22    and meaningless.

23        We think that we've struck an adequate

24    balance.  There's plenty of sources of

25    information for somebody that's not satisfied

1    with the 200 pages that are available on record

2    in this case and on the Logan website.

3        We ask the Court to approve the disclosure

4    statement with the changes that we suggested.

5        THE COURT:  The Court has reviewed the

6    disclosure statement and the revised disclosure

7    statement.  The Court has heard of all the

8    objections to the disclosure statement and has

9    considered the responses from the debtor and the

10   creditors committee.

11       The disclosure statement is to give the

12   creditors, affected creditors, enough information

13   to make a determination whether to vote for or

14   against the plan.

15       I don't believe that the disclosure

16   statement has to contain every bit of information

17   that the debtor has and every dollar and cent

18   that has come and gone through the accounts,

19   especially -- you need to take that on a case-by-

20   case basis, but this is not a case that that

21   information would serve any useful purpose to the

22   majority of the creditors in this case.

23       To the extent that the creditors committee

24   of the debtor has summaries of the proposals that

25   were referred to listing or estimating the

1    different scenarios that were considered by the

2    creditors committee in coming up with their

3    compromise, they should be furnished without

4    necessity of going through the court process,

5    unless there's a real dispute, at the reasonable

6    request of a creditor.

7        To matters that have been filed under seal,

8    the Court will consider any properly filed motion

9    and will have a hearing on that if somebody needs

10   to have the seal removed, but I'm not going to

11   rule on that issue at this point.

12       I find that the disclosure statement does

13   give enough adequate information, with the

14   proviso that the creditors committee and the

15   debtor furnish specific information as a

16   particular creditor group might request.  And if

17   it becomes an issue, I'll give a hearing on short

18   notice and we'll resolve it.

19       I think some of the objections raised by the

20   landlords certainly have merit, and I don't mean

21   to say they don't, but I don't feel that it's

22   necessary to include all that information in the

23   disclosure statement.

24       Accordingly, the Court will approve the

25   disclosure statement as revised and subject to

1        any additional revisions that have been

2        negotiated and not yet included, and will look to

3        the debtor to prepare the appropriate order.

4        We'll be dealing the orders and forms in just a

5        minute, I believe, on the next issue.

6              This matter is concluded.

7              MR. BUSEY:  Your Honor, I have a proposed

8        order on the disclosure statement.

9              THE COURT:  Oh, okay.

10             Obviously, you would like a consensual plan

11       and you would like everybody to vote for the plan

12       if at all possible, I would assume, and it would

13       make no sense for you not to cooperate with the

14       landlords, anything that will make them

15       comfortable marking accept on their ballots.

16             So I would assume they would furnish that

17       information; otherwise, they know they're going

18       to get a rejection and then a big argument at

19       confirmation.

20             That's just my editorial comment.

21             MR. BUSEY:  Noted, Your Honor.

22             THE COURT:  Order is signed.  This matter is

23       now concluded.

24             The Court will take a five-minute recess

25       prior to taking up the next matter.

1          (Brief recess.)

2          THE COURT:  We'll take up the motion of the

3     debtors for an order determining dates,

4     procedures, forms applicable to solicitation

5     process, et al.

6          Mr. Busey.

7          MR. BUSEY:  Thank you, Your Honor.

8          Your Honor, by this motion, the debtors

9     request the Court to enter an order, which we

10    refer to as the solicitation order, approving the

11    dates, procedures and forms applicable to the

12    plan solicitation, noticing and implementation

13    process, including confirming the authority of

14    the voting agent, establishing a voting record

15    date, setting a voting deadline, approving the

16    forms of ballots to be used by Classes 7 through

17    17, governing the use of solicitation letters to

18    be sent with the solicitation package, approving

19    the materials and rules applicable to voting by

20    holders of claims in Classes 7 through 17,

21    approving the notice procedures applicable to the

22    holders of contingent unliquidated disputed

23    claims, holders of claims that are not impaired

24    by the plan, and claims that are deemed to reject

25    the plan, approving procedures for disseminating

1    voting materials to the holders of public debt

2    claims in Class 12 and to public equity interest

3    in Class 21, approving vote tabulation

4    procedures, and establishing the deadline for

5    filing objections to the plan and scheduling the

6    hearing for the confirmation of the plan.

7        We provided this motion and notice to the

8    master service list.  We had an objection

9    deadline.  We received a number of objections.

10        Among the objections were the landlords E&A

11    and Terranova.

12        In response to those objections, we reached

13    an agreement which Ms. Specie referred to earlier

14    which provides for a different procedure for

15    balloting for the holders of contingent rejection

16    damage claims for leases that may have not been

17    assumed or rejected at the time of voting, which

18    changes the language in Paragraph 16 of the

19    proposed order we served with the motion, and I

20    just for everybody's benefit would like to read

21    that changed paragraph now in response to Ms.

22    Specie's objection.

23        I'll read it.

24        Parties to executory contracts or unexpired

25    leases that have not yet been assumed or

1        rejected, but if rejected would potentially give

2        rise to rejection damage claims, shall be

3        permitted to cast a contingent vote, which shall

4        be counted only if a motion to reject their

5        contract or lease is filed before the date of the

6        confirmation hearing, if they, (a), on or before

7        a date, which is blank right now, one week before

8        the voting deadline deliver to the voting agent,

9        Logan and Company, with a copy to the debtors'

10       counsel and the committee's counsel, a written

11       request for special ballot to vote a contingent

12       rejection damage claim specifying therein the

13       amount of the rejection damage claim and properly

14       completing and return the special ballot on or

15       before the voting deadline.

16            That's the language which meets Terranova's

17       objection, and we've agreed to make that change

18       in the ballot procedure for contingent rejection

19       damage claims.

20            With that, subject to whatever objections

21       that remain, I think we've met them all, but

22       subject to whatever objections are made this

23       morning, we ask the Court to enter the order.

24            And we have proposed dates.  The dates for

25       those matters, the voting deadline and the record

1     date and the confirmation hearing date are blank

2     in the proposed order we circulated, and we have

3     suggested dates for the Court when we get to that

4     point.

5          THE COURT:  Yes.  Objection?

6          MR. KELLEY:  Again I'm Mark Kelley, and this

7     objection was filed on behalf of the various E&A

8     landlords, Westridge and Villa Rica.

9          There were two objections made.  One

10    objection was made to the fact that the deadline

11    to submit -- well, there was actually an

12    objection made.  The way the voting procedures

13    motion was made, you couldn't have any

14    solicitation communication with any other

15    creditors unless it was submitted to the Court

16    and approved.

17         We objected to that, and I was advised by

18    the debtor that that was only to be limited to

19    information that was to be included in the

20    solicitation package that went out to creditors.

21         The problem is that the deadline to submit

22    this letter was July 28th.  We objected because

23    we thought we'd hoped, as we apparently have, to

24    have additional information.

25         We would ask that the landlords be able to

1    have five business days after they receive the

2    information that Your Honor said we could have to

3    draft a solicitation letter to be included in the

4    package regarding our possible opposition to it.

5        I want to read it before I decide that we

6    want to put one in.  But if it's as bad as I

7    think it might be, we might choose to put a

8    letter in the package encouraging landlords with

9    rejected leases who have guarantees to vote

10   against the plan.

11       So that's the first objection, is we want

12   some time after we get it to put a letter in the

13   package.

14       The second one has to do with voting.  This

15   is a -- I've never seen this before.  The debtor

16   defines the landlord class to include holders of

17   claims for leases or guarantees.

18       So my clients that have a lease that's been

19   rejected with one entity, that's a claim that's

20   in the class.  And the claim on the guarantee

21   against another entity, that's a claim within the

22   class.

23       But the plan provides that they're going to

24   expunge one of those claims and that the expunged

25   claim can't vote.

1          That seems awfully unfair to me.  You have a

2     plan that says we're going to wipe your claim

3     out, we'd like you to -- and all those people

4     that are really getting hurt can't vote.

5          It's their plan, they drafted it this way.

6     They made them separate claims and they put them

7     in a voting class, and I don't see how in the

8     world you can tell somebody that's in a class

9     where everybody else gets to vote that: Because

10    you're not going to get anything, even though

11    you're in the class, you don't get to vote both

12    of your claims.

13         So we object to the provision that claims

14    that are to be expunged cannot vote.

15         I would point out that they're not expunged

16    unless the plan is confirmed.

17         So at this point in time there's two claims,

18    they're both valid.  They're contract claims,

19    they're good under state law, they're in the

20    class.  And you're sort of putting the cart

21    before the horse if you say:  Because we think

22    it's going to be confirmed and you'll be wiped

23    out, you can't even vote on it.

24         My clients would like to be able to vote

25    both of their claims.  And if all the landlords

1          in this class -- and I point out to the Court

2          that there's different types of landlords.   There

3          are landlords that only have a lease with one

4          entity with no guarantee.   There's landlords that

5          have a guarantee that only filed one proof of

6          claim.   And then there's landlords that filed two

7          proofs of claim.

8               So it's not like there's no difference

9          whether you vote one or two.   There is a

10         difference.

11              So my clients both want to be able to vote

12         both of their claims.

13              Thank you.

14              THE COURT:   Thank you.

15              As to the solicitation issue, Mr. Busey.

16         There's a time problem with that, I know.

17              MR. BUSEY:   Yes, Your Honor.   We've drafted

18         the order, so we have to get this package out in

19         seven days, seven business days.   We're going to

20         start printing tonight.   We're talking about 200

21         pages of materials to 20,000 parties in

22         interest.

23              That's why we set the deadline in the motion

24         which we filed.   Nobody else has given us a

25         letter other than the committee and the debtors.

1        Mr. Kelley represents a landlord.  There are

2    approximately 100 landlords.  There's no sense in

3    holding up this mailing to 20,000 people because

4    of that.  He can separately send a solicitation

5    letter to whomever he pleases, or we can

6    certainly identify the 100 landlords if that's

7    who he wants to send it to, but we ask that you

8    not hold up this process.

9        THE COURT:  Mr. Kelley, I got to talk to

10    you.  How about if you could knock out a letter

11    to be included in the package that just says:  We

12    are investigating some things and we should have

13    that investigation done.  Any interested party

14    who wants to get that information, contact us.

15    And you can have it available so they could

16    either send you a self-addressed stamped

17    envelope, or you put on a website or something

18    and they would have it without -- I'm not going

19    to hold up the whole process.  This could take

20    two weeks to get all that.

21        MR. KELLEY:  A lot of people may vote by the

22    time -- if the bottom line is I can't communicate

23    this information to landlords until I get it, and

24    they've got the deadline running while I'm

25    waiting to get the information, I'm a little bit

1    concerned that the information may be slow in

2    coming.

3         THE COURT: 'They wouldn't do that.

4         MR. KELLEY:  They might.

5         I'm also concerned that when you send a

6    package to somebody and they go through it, that

7    they might go ahead and vote.  I think I'm in a

8    severe disadvantage if they've got the ballot for

9    two weeks before I can get my information to

10   them.

11        I don't know why -- if they get it to me --

12   what's today, Friday?  If they get it to me by

13   Tuesday, I'll have a letter to them by the end of

14   next week.

15        There's nothing in these -- nothing's been

16   done yet.  There's nothing in these -- they can't

17   call the printer up and say we're going to print

18   three days later.  If they're diligent in getting

19   me the information, I will be extremely diligent

20   in putting together a letter.  It's probably not

21   going to be more than two pages long.

22        But, I mean, I asked for this information on

23   the 25th.  If I'd had it, I wouldn't be making

24   this argument.  It's not my fault.

25        But I don't think my clients should be

1    disadvantaged in soliciting the fellow landlords

2    that are getting treated in a way I can't even

3    describe because I don't have the information.  I

4    should be given a reasonable amount of time to

5    put my letter in the package and have equal

6    dignity in my solicitation.

7        THE COURT:  Mr. Dunne, how fast can you get

8    the -- you don't know what information he wants

9    yet, do you?

10        MR. DUNNE:  That's what I was going to say,

11    Your Honor, I don't know what information he

12    wants.  As I said from the podium, this notion

13    that there are agreed-upon assumptions by the

14    committee is not correct.

15        The debtors request to go back through the

16    documents, and then we may be back in front of

17    Your Honor with privilege and other issues.

18        MR. KELLEY:  So they would do that.  So it

19    will be hard to get the information.

20        MR. DUNNE:  Your Honor, he's implying that

21    we're intentionally slowing it down.  We're not.

22        What I have a duty to is to my client and

23    not to waive privilege and create documents that

24    don't exist because he's at the podium.

25        THE COURT:  I don't expect anybody to create