1      documents.
2           MR. KELLEY:  My understanding is, from
3      reading what I've read, that there were reports
4      and summaries that had various scenarios that
5      were given to the committee members which they've
6      admitted they have reviewed.
7           That's basically what I'm looking for, is
8      the summaries and the projections that were given
9      to the committee members that they considered.
10     Those are actually described in the disclosure
11     statement.  They've got them.
12          THE COURT:  Mr. Dunne?
13          MR. DUNNE:  What I understand that request
14     to be is all work products prepared in connection
15     with the plan by Houlihan Lokey, because there
16     will be requests by individual committee members
17     for Houlihan to run an analysis this way or run
18     it that way, and that is privileged information
19     of the committee.
20          I certainly don't have the power now
21     standing here before Your Honor to say that we're
22     just going to send out every document that was
23     created in this case.
24          I've been involved in a lot of committee
25     meetings, Your Honor.  I've never, ever had to do

```
 1    that.
 2         I will go back and say there's a request and
 3    we'll see if we can come to an agreement on some
 4    document that compromises the estimates in the
 5    analysis.  But, as I said before, it doesn't
 6    really exist and we'd be creating something.
 7         MR. KELLEY:  I thought Your Honor had
 8    already resolved this issue.  If they're going to
 9    have this, then I would ask Your Honor to put it
10    in the order approving the disclosure statement
11    that they're going to provide the -- I think the
12    language that you used when you pronounced this
13    from the bench was fine with me.
14         MR. DUNNE:  It was fine with me, too, Your
15    Honor.  I think you said that, if there was a
16    dispute on it, we could come back to Your Honor.
17         THE COURT:  That's fine.  We'll leave it at
18    that.  I'm not going to try to micromanage this
19    issue.
20         I'm not going to put any restrictions on
21    this when they get the package out.  This case
22    has been handled very professionally through this
23    point.
24         They want your people to vote for the plan.
25    They're guaranteed a vote against the plan if
```

1  they don't give you some information, it seems to
2  me.  As a practical matter, I don't see where
3  that's a problem, but, if so, I'll give you a
4  hearing on short notice.
5        MR. KELLEY:  Okay.  What about voting?
6        THE COURT:  I haven't heard a response to
7  that issue yet.
8        MR. BUSEY:  Yes, Your Honor, I'll respond to
9  it.
10       The plan that has been proposed by the
11 debtors, as you've now heard at length,
12 incorporates a compromise on the substantive
13 consolidation issue which deems the case to be
14 treated for distribution purposes as
15 substantively consolidated, although it doesn't
16 actually merge entities and it provides for
17 disparate treatment among the different unsecured
18 classes depending on how well positioned they are
19 with things like guarantees or who they dealt
20 with.
21       The plan proposes that there will be a
22 single ballot by each holder of a claim, and that
23 includes landlords who may have a claim against
24 two different entities.
25       And, yes, we're only going to let them vote

1    once.  I know Mr. Kelley would like to vote
2    twice.
3        But the fact of the matter is we have a lot
4    of creditors who have filed claims against all 23
5    entities, and they're not going to get to vote 23
6    times.
7        We have $300 million worth of bondholders
8    who have claims against all of the principal
9    affiliates by reason of their guarantees which
10   give them the preferred status.  They're only
11   going to get to vote once, just like Mr. Kelley's
12   clients.
13       It would be completely impractical and
14   contrary to the terms of the plan that we're
15   proposing to permit multiple voting because we
16   have a number of affiliates here.
17       Each holder of a claim in interest gets to
18   vote once.  That's the proposal.  If he doesn't
19   like the plan, he can vote against it.
20       MR. KELLEY:  Well, if I was getting 95.6
21   percent of my claim paid like the bondholders are
22   on their guarantees, I probably would vote for
23   the plan, too, and wouldn't be raising this
24   objection.
25       The truth of the matter is, if somebody

```
 1      filed 23 claims and they don't have a guarantee,
 2      limiting them to one vote may be reasonable.
 3              They have actually put both of my claims,
 4      recognized them, claims on guarantees and claims
 5      on leases, in a class that is entitled to vote.
 6      The other people aren't objecting.  I am.
 7              We're not consolidated until there's a
 8      confirmation, and until then I have -- both of my
 9      claims have every right to participate and vote
10      in the plan.
11              You know, if they -- if our class -- if our
12      plan rejects it, it's going to be a cramdown
13      anyway.  The only difference is going to be
14      whether we're going to be accorded the right to
15      have the Court determine that we're being treated
16      fairly and equitably.
17              I just can't imagine having a creditor
18      that's going to be adversely impacted and say you
19      can't vote.  That's just outrageous to me.
20              THE COURT:  Thank you.
21              Ms. Specie.
22              MS. SPECIE:  Yes, Your Honor.  Karen Specie
23      on behalf of Terranova Corporation.
24              My only request, Your Honor, is to be
25      permitted to see the proposed order before the
```

```
 1          Court signs it.  The debtor and the committee
 2          have been diligent in responding since
 3          Terranova's objection by this procedure.
 4                The language that Mr. Busey read aloud just
 5          a few moments ago, I believe will address our
 6          objection, but I would like one opportunity to
 7          look at that language and compare it to the
 8          language in the plan and the disclosure statement
 9          that we've been dealing with to make sure there
10          are discrepancies between the two and nothing
11          that can be construed as confusing or problematic
12          down the line.
13                Thank you.
14                THE COURT:  Thank you.
15                Mr. Fitzgerald.
16                MR. FITZGERALD:  If it please the Court,
17          Brian Fitzgerald for the Florida Tax Collectors.
18                Florida Tax Collectors had originally filed
19          an objection based upon unilateral release
20          language contained in the ballot.
21                Since that objection that adversely filed
22          revisions to the proposed order which extensively
23          revised the release language and for purposes of
24          the hearing today, we'll accept those revisions
25          as sufficient.
```

1      We still disagree with the unilateral
2 release language going on the ballot at all, but
3 we'll reserve all arguments and objections on
4 that for confirmation.
5      THE COURT: Thank you.
6      Any other objections to the matters
7 contained in the motion?
8      (No response.)
9      THE COURT: One of the things contained in
10 the motion, Mr. Busey, you want the Court to
11 waive the local rule that requires fee
12 applications to be filed prior to confirmation?
13 I believe that's in there. And that fee apps
14 will be filed after the effective date of the
15 plan, I believe. I didn't mean to put you on the
16 spot.
17      MR. BUSEY: You're testing my memory, Your
18 Honor. I think you're right, we did ask you to
19 waive that rule.
20      THE COURT: Okay.
21      MR. BUSEY: Considering the volume --
22      THE COURT: I don't have a problem with it.
23 The problem is, I think, if it's not already
24 in the disclosure statement, I think you need to
25 have an estimate made of approximately what those

| | |
|---|---|
| 1 | fees will be.  You're not bound by that, but I |
| 2 | think there needs to be a disclosure prior to |
| 3 | confirmation that requested fees from the |
| 4 | appointed professionals should be in this |
| 5 | attachment or something.  It may already be in |
| 6 | there, but I didn't see. |
| 7 | MR. BUSEY:  My recollection is that it is in |
| 8 | there, but we can do that, Your Honor, because it |
| 9 | was a part of the estimate of the debtors as to |
| 10 | the administrative expense that have to be paid |
| 11 | at closing. |
| 12 | THE COURT:  Right.  I don't have a problem |
| 13 | with that part, but I know there has to be at |
| 14 | least put people on notice what those fees will |
| 15 | be approximately. |
| 16 | With all due respect to Mr. Kelley, I |
| 17 | appreciate your argument, I think it's a good |
| 18 | argument, but I'm going to overrule it. |
| 19 | I'm going to approve your objection and I'm |
| 20 | going to grant the motion subject to the |
| 21 | modifications agreed upon in open court. |
| 22 | MR. BUSEY:  Your Honor, with regard to the |
| 23 | blanks that were in the order we served, I would |
| 24 | suggest handing up to you the form of the order |
| 25 | that we'd ask you to sign, and let's go through |

| | |
|---|---|
| 1 | the blanks and talk about the dates. |
| 2 | THE COURT: Mr. Reddick has the dates that |
| 3 | we have available, if you will pass it up. |
| 4 | Matter of fact, Mr. Busey, I'm going to take |
| 5 | five minutes. You get together with Mr. Reddick, |
| 6 | he's got the dates we have available. If there's |
| 7 | a problem, let me know. We've already gone over |
| 8 | that. |
| 9 | MR. BUSEY: Can he sign it? |
| 10 | THE COURT: Well, he can't sign it, but I'll |
| 11 | let you -- we'll take a minute while I'm here on |
| 12 | the bench. Everybody can relax, mill around a |
| 13 | minute, and y'all work on those dates. |
| 14 | How long do you think the confirmation |
| 15 | hearing is going to last, if we get there, when |
| 16 | we get there? |
| 17 | MR. BUSEY: I'd say we should set aside a |
| 18 | full day. |
| 19 | THE COURT: You think that's all you're |
| 20 | going to need? |
| 21 | MR. BUSEY: Well, let me say let's put two |
| 22 | days. |
| 23 | THE COURT: Sometime after the first part of |
| 24 | October. September and October are rough months |
| 25 | around here. |

1      MR. BUSEY: The first date is in Paragraph 4
2  of the order, which is the deadline for ballots
3  to be cast.
4      THE COURT: Let's pick the confirmation
5  date, then let's go backwards.
6      MR. BUSEY: All right. Given the things
7  that have to have happen timewise, the
8  confirmation hearing cannot be before October 2.
9      THE COURT: I got no problem with that.
10     MR. BUSEY: You tell us when you're
11 available.
12     (Off-the-record discussion.)
13     THE COURT: We better do it Friday the 13th.
14     MR. BUSEY: Sounds great, Your Honor.
15     THE COURT: Hopefully we won't need to run
16 into Saturday. Actually we could come back
17 probably that Monday morning. Monday mornings
18 are usually available.
19     We'll do it Friday the 13th, starting at
20 9:00 a.m.
21     You need to back your other dates in there?
22     MR. BUSEY: Yes, Your Honor. In Paragraph 4
23 we have a voting deadline. We suggest September
24 25th.
25     THE COURT: Anybody in the courtroom want to

1    make any comments about that voting deadline
2    date?
3         (No response.)
4         THE COURT:  That's it.
5         MR. BUSEY:  And we have to have a deadline
6    for any Rule 3018 motions, which we suggest to be
7    a week before the voting deadline.  That is, any
8    motions to file -- any motions for a Rule 3018
9    allowance of disputed claims should be filed by
10   September 18th.
11        THE COURT:  Anybody object or have a problem
12   with that?
13        MR. BUSEY:  That's Paragraph 11 of the
14   order.
15        THE COURT:  What date was that then?
16        MR. BUSEY:  September 18th.
17        MS. DOWD:  Excuse me, Your Honor, could I be
18   heard briefly on that?
19        THE COURT:  On which?
20        MS. DOWD:  On the scheduling of the voting
21   for the plan.  Mary Dowd on behalf of two
22   landlords.
23        THE COURT:  Yes.
24        MS. DOWD:  There are pending motions to
25   assume landlord leases, and my understanding is

1  that a hearing is scheduled for August 10th, but
2  some or all, it's possible it will be continued
3  to a date in September.
4      I'm involved in a hearing on assumption on
5  September 21, so with respect to that particular
6  claim, if it's assumed, the landlord issues on
7  that lease will be resolved hopefully by
8  assumption, so it would be helpful to have the
9  already scheduled motions to assume leases heard
10 before the voting deadline.
11     MR. BUSEY:  We planned that, Your Honor.
12 There's two motions to assume or reject, two
13 hearing dates.  One is August 10th and one is
14 August 21.  So we deliberately set the voting
15 deadline August 25, after that.
16     MS. DOWD:  You mean September, not August.
17     MR. BUSEY:  September, excuse me.  All of
18 those are September.
19     MR. KELLEY:  Your Honor, Mark Kelley.
20     I have several landlords that had their
21 leases assumed in May.  There's a hearing set for
22 August 10th, which I was informed might moved
23 today.
24     We had filed an objection to the motion to
25 assume because they infinitely delayed the

1  payment of the cure amounts or the entry of the
2  order assuming the lease.  It's already three
3  months.  They've got the money.
4      We'd like to have, as to my clients, keep
5  that August 10th date, at least on the issue of
6  whether the leases are going to be assumed and
7  whether they should go ahead and pay the
8  undisputed portions of the cure claims.
9      There's just no reason for them to give
10 themselves a free continuation of the duty to pay
11 cure amounts by not scheduling a hearing.  Three
12 months.
13     THE COURT:  Is it on the calendar?
14     MR. KELLEY:  It was scheduled for August
15 10th, but I was informed today that they're
16 moving it.  But, you know, I'm the one that needs
17 to get paid, I really would like to have it stay
18 where it is.
19     THE COURT:  I always assume anything that's
20 moved is done by a stipulated deal, otherwise
21 it's on my calendar and I'm waiting to hear
22 argument.
23     MR. KELLEY:  Thank you, Your Honor.
24     THE COURT:  Does that solve your question
25 about the time to file?

1          MS. DOWD:  Yes, it does, Your Honor, as long
2     as the hearing goes forward August 10th.
3          THE COURT:  If not, if we continue the
4     hearing, we would have to have an order that says
5     your voting date would have to be extended or
6     something, if that were the case.
7          MR. BUSEY:  Your Honor, the procedure that
8     we entered into an agreement with Terranova, Ms.
9     Specie's client, we changed Paragraph 16 of the
10    order, provides for if there's any landlord whose
11    assumption or rejection is up in the air, the
12    voting deadline, for any reason, they can cast a
13    contingent rejection damage ballot and be
14    counted.  And that's what we put that paragraph
15    in there for.
16         THE COURT:  Yeah, but she's a little bit
17    after that motion, the ballot time and then the
18    hearing gets continued, she would have to know
19    before that, or you file it just in case.
20         MR. BUSEY:  She could file it in any event.
21         THE COURT:  Do you have your dates?
22         MR. BUSEY:  Yes, sir.
23         THE COURT:  You want to announce them again
24    for the record so I'll make sure -- they don't
25    really affect us other than the confirmation