2672L
071687

AMENDMENT TO LEASE

between

HARRY A. LEVY, TRUSTEE

and

XTRA SUPER FOOD CENTERS, INC.

Dated: as of July 31, 1987

THE CONCORD SHOPPING MALL
MIAMI, FLORIDA

EXHIBIT A

## AMENDMENT TO LEASE

THIS AGREEMENT, dated as of the 31st day of July, 1987, by and between HARRY A. LEVY, TRUSTEE (hereinafter referred to as "Landlord") and XTRA SUPER FOOD CENTERS, INC., formerly known as Pueblo Wholesale Company, Inc. (hereinafter referred to as "Tenant").

WHEREAS, Landlord and Pueblo Supermarkets, Inc. are parties to that certain lease agreement dated as of the 8th day of June, 1984, which lease was assigned to Pueblo Wholesale Company, Inc. (now known as XTRA Super Food Centers, Inc.) on February 11, 1985 and which lease was modified by the letter agreement dated June 13, 1984, the supplemental agreement dated September 13, 1984, the commencement agreement dated September 13, 1984 and the letter agreement dated February 6, 1985 (collectively, the "Lease"); and

WHEREAS, the Landlord and Tenant desire to further amend the Lease as more particularly set forth herein.

NOW, THEREFORE:

1. Tenant intends to construct up to 4,000 square feet of individual store space ("Individual Stores") under the canopy in front of its existing supermarket, generally as shown on the plan initialled by the parties, and to sublease the Individual Stores from time to time. Tenant shall pay to Landlord as additional rent 25% of Net Operating Income (as hereinafter defined) derived from the Individual Stores.

The term "Net Operating Income" shall mean, with respect to each Fiscal Year in the Term, all amounts received by Tenant on account of subletting Individual Stores with respect to such Year, less: (i) the expenses of Tenant incurred in connection with the subletting of the Individual Stores or the enforcement of such subleases (whether paid in such Year or prior thereto but not previously subtracted in computing Net Operating Income), including without limitation, brokerage commissions, if any, legal fees, advertising expenses, if any, alterations to the Individual Stores, and equipment and fixtures provided by Tenant; (ii) a management fee of 3% of the subtenants' rent; and (iii) the cost to Tenant of construction of the Individual Stores, including interest at a rate of 8% from the date the costs are incurred until recovered. Promptly after the final costs of construction have been determined, Tenant shall certify same to Landlord in reasonable detail.

Payments on account of Net Operating Income shall be made quarterly in arrears, not later than 45 days days after the end of each quarter, subject to adjustment at the end of the Fiscal Year. Not later than 90 days after the end of each Fiscal Year, Tenant shall furnish to Landlord a statement of Net Operating Income for the Year, certified as being true and correct to the best knowledge of a financial officer of Tenant, reconciled against the quarterly payments theretofore made on account thereof; payment of any amount of additional rent due as shown thereby shall accompany the statement, and any over-payment shall be credited against the quarterly payment next coming due. So long as Tenant shall have acted in good faith and in accordance with the terms hereof, Landlord shall have no claim against Tenant for making, amending, terminating, giving consent under, or otherwise dealing with any sublease,

or on account of any particular term thereof, for the collectibility of rents thereunder, or otherwise, Tenant's sole obligation being to pay over additional sums on account of Net Operating Income, if any, derived therefrom. There shall be excluded from the calculation of Net Operating Income any subleasing to any entity controlled by, controlling, or under common control with, Tenant while such control relationship exists (an "Affiliate").

2.  Landlord hereby waives the provisions of paragraphs (7) and (10) of Section 4 of the Lease with respect to the Individual Stores, to the extent they are occupied by persons other than Tenant or an Affiliate.

3.  Tenant acknowledges that the Lease obligates Tenant to observe certain exclusive rights of use which Landlord has granted or may grant with respect to the Shopping Center, and that Landlord reserves the right to object to any conflicting uses thereunder. Tenant agrees that with respect to any Individual Store to be occupied by a person other than Tenant or an Affiliate, Landlord's consent to the use to be made thereof shall be first obtained. Landlord hereby consents to the following uses of Individual Stores: travel agency, costume jewelry store, ceramic objects store, shoe repair store, key and locksmith store, AUTOMATIC TELLER MACHINE FOR A bank ~~or banking service store~~. Landlord agrees not to grant any exclusive which would prohibit the sale of such goods or services; provided, however, that the foregoing is not to be construed to prevent Landlord's making leases for such uses on a non-exclusive basis.

4.  Words used in this Amendment with capital letters and not defined herein shall have the meanings given to such words in the Lease.

Except as modified by this Amendment, the Lease remains unmodified and the parties hereby ratify and confirm the terms of the Lease as of the date first above written.

LANDLORD

_____
Harry A. Levy, Trustee

TENANT

XTRA SUPER FOOD CENTERS, INC.

By: _____
Robert Locke,
Senior Vice President