## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| WINN-DIXIE STORES, INC., ET AL., | § | CASE NO. 05-03817-3F1 |
| | § | |
| Debtors. | § | *Jointly Administered* |

## OBJECTION OF BUNDY NEW ORLEANS CO., LLC TO DEBTORS' SECOND MOTION FOR AUTHORITY TO (I) ASSUME NON-RESIDENTIAL REAL PROPERTY LEASES, (II) FIX CURE AMOUNTS, AND (III) GRANT RELATED RELIEF

### TO THE HONORABLE JERRY A. FUNK,
### UNITED STATES BANKRUPTCY JUDGE:

**COMES NOW,** Bundy New Orleans Co., LLC ("Bundy") and files this, its objection to the Debtors' Second Motion For Authority To (I) Assume Non-Residential Real Property Leases, (II) Fix Cure Amounts And (III) Grant Related Relief (the "Motion to Assume") filed herein by Winn-Dixie Stores, Inc. and its affiliated debtors ("Winn-Dixie") and respectfully represents as follows:

### Background

1.      Bundy is the lessor under a lease (the "Lease") with Winn-Dixie Louisiana, Inc. ("WD Louisiana") relating to store number 1417 located at 7135 Bundy Road, New Orleans, Louisiana (the "Property"). A true and correct copy of the Lease is attached hereto as Exhibit "A" and incorporated herein by reference. Upon information and belief, Winn-Dixie Montgomery, Inc. ("WD Montgomery") is a successor by merger to WD Louisiana.

2.      Under the Lease, WD Louisiana and/or WD Montgomery (collectively, the "Lessee") is obligated to pay monthly rentals, taxes and other charges and is specifically required to maintain insurance against loss or damage to the Property including flood insurance with a

limited deductible (the "Insurance Policy"). (Lease, at para. 14(a)(i), p. 33). The Lessee has advised that it has obtained an insurance policy that covers the Property.

3.     In certain situations where the Property has been damaged, the Lease requires the Lessee to restore the Property and contains certain requirements concerning the Lessee's filing and prosecution of a claim under the Insurance Policy and concerning the Lessee's use of any proceeds paid to the Lessee under the Insurance Policy. (Lease, at para. 14-15, pp. 33-45). In the event that the amount of Insurance Proceeds is insufficient to restore the Property, the Lessee is responsible for paying the deficiency (the "Insurance Deficiency"). (Lease, at para. 15(a)(vii), p. 44).

4.     On February 21, 2005 (the "Petition Date"), Winn-Dixie, including WD Montgomery, filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

5.     On the Petition Date, the Lessee owed Bundy $70,632.60 under the Lease in rental payments and taxes.

6.     On August 29, 2005, Hurricane Katrina struck the Gulf Coast and the Property suffered extensive damage.

7.     Following Hurricane Katrina and the damage to the Property, the Debtors have advised that they have submitted a claim under the Insurance Policy for the damage (the "Insurance Claim"). However, the Debtors have repeatedly failed and refused to identify the status of the Insurance Claim including, without limitation, the date of filing, the number of the Insurance Claim, the office processing the Insurance Claim, the persons designated to process the Insurance Claim, or any documents or communications relating to the Insurance Claim.

8.      On June 30, 2006, the Debtors filed the Motion to Assume wherein the Debtors seek authority to assume the Lease and seek an order establishing that the "cure amount" under the Lease is $63,851.02 (the "Proposed Cure Amount"). The Motion to Assume contains broad language that alleges, in the absence of objection, Bundy will have "waived all claims" under the Lease other than the claim for the Proposed Cure Amount.

9.      On August 14, 2006, after repeated attempts to obtain information from the Debtors, Bundy served a Notice Of Deposition *Duces Tecum* requesting a deposition under Fed. R. Civ. P. 30(b)(6) relating to the Insurance Claim and the Proposed Cure Amount.

### Objection to Proposed Cure Amount

10.      Bundy is not opposed to the Debtors' assumption of the Lease provided that the Debtors cure or provide adequate assurance of prompt cure of all monetary and non-monetary defaults under 11 U.S.C. § 365(b)(1)(A). The Proposed Cure Amount does not comply with the requirements of 11 U.S.C. § 365(b)(1)(A).

### Basis For Objection

When assuming an executory contract, a debtor must assume all of its obligation thereunder. *See In re Yates Dev., Inc.*, 241 B.R. 247, 252-53 (Bankr. M.D. Fla. 1999) (a debtor or trustee cannot choose to accept the benefits or desirable features of the contract and reject the burdens or undesirable aspects of the contract to the detriment of the other contracting party"), *aff'd, In re Yates Dev., Inc.* 256 F.3d 1285 (11th Cir. 2001). Additionally, pursuant to 11 U.S.C. § 365(b), a debtor is required to cure any defaults existing under the executory contract to be assumed.

On the Petition Date, the Lessee owed Bundy $70,632.60 in pre-petition rentals and taxes rather than the Proposed Cure Amount of $63,851.02. Upon information and belief, the Lessee

is current on all post-petition rentals and taxes. The Lessee has, however, defaulted under numerous other of its post-petition monetary and non-monetary obligations under the Lease. These include, *inter alia,*

    a.    the obligation to keep and maintain the Property in good repair and appearance and promptly make all repairs and replacements. (Lease, at para. 11, p. 22);

    b.    the obligation not to cause damage or injury to the Property. (Lease, at para. 4(c), p. 11);

    c.    the obligation to adjust, collect and compromise the Insurance Claim, subject to Bundy's approval (Lease, at para. 14(g), p. 39);

    d.    the obligation to commence and diligently continue to perform restoration of the Property. (Lease, at para. 14(g), p. 39); and

    e.    in the event that the insurance proceeds are insufficient to restore the Property, the obligation to pay the excess (Lease, at para. 15(a)(vii), p. 44).

There are numerous other similar post-petition defaults primarily arising from the damage from Hurricane Katrina.

It should also be noted that, notwithstanding any assumption of the Lease, these non-monetary and monetary defaults are administrative claims under 11 U.S.C. §§ 503(b), 507(a) since they occurred following the Petition Date. Bundy is presently undertaking discovery to identify and quantify these claims.

Payment of the Proposed Cure Amount of $63,851.02 is insufficient to cure these defaults and the Lessee has failed to provide adequate assurance that these defaults will be cured as required by 11 U.S.C. § 365(b)(1)(A).

**WHEREFORE PREMISES CONSIDERED,** Bundy New Orleans Co., LLC respectfully requests that the proposed cure amount for the Lease identified in the Motion to Assume be modified to reflect an amount sufficient to allow the Lessee to cure all monetary and non-monetary defaults 11 U.S.C. § 365(b)(1)(A), requiring that the Lessee cure such amounts, and granting such other relief to which Bundy is justly entitled.

HIERSCHE, HAYWARD, DRAKELEY
& URBACH, P.C

By:___/s/ Russell W. Mills_____
      Russell W. Mills
      Texas State Bar No. 00784609
      Jason M. Katz
      Texas State Bar No. 24038990

15303 Dallas Parkway, Suite 700
Addison, Texas 75001
Telephone:   (972) 701-7000
Facsimile:   (972) 701-8765

- and -

BLEDSOE, JACOBSON, SCHMIDT
& WRIGHT

By:___/s/ James A. Bledsoe, Jr._____
      James A. Bledsoe, Jr.
      Florida State Bar No. 0150646

1301 Riverplace Boulevard, Suite 1818
Jacksonville, Florida 32207
Telephone:   (904) 398-1818
Facsimile:   (904) 398-7073

ATTORNEYS FOR BUNDY
NEW ORLEANS CO., LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 17th day of August, 2006, a true and correct copy of the above and foregoing Objection was served *via* first class mail and/or via electronically on the following:

D. J. Baker
Adam Ravin
Rosalie Walker Gray
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036
**Counsel for Debtors**

Dennis F. Dunne
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

John B. Macdonald
Patrick P. Patangan
Akerman Senterfitt
50 North Laura Street, Suite 2500
Jacksonville, FL 32202
**Counsel for Official Committee of
Unsecured Creditors of Winn-Dixie
Stores, Inc., et al.**

Elena L Escamilla
Kenneth C Meeker
U.S. Trustee
United States Trustee - JAX
135 W. Central Blvd., Suite 620
Orlando, FL 32801
**Counsel for U.S. Trustee**

Allan E. Wulbern
Stephen D. Busey
James. H. Post
Cynthia C. Jackson
Smith, Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
**Counsel for Debtors**

David Jennis, Esq.
Jennis & Bowen, P.L.
400 North Ashley Drive, Suite 2540
Tampa, Florida 33602

Douglas D Chunn
One Independent Drive, Suite 3201
Jacksonville, FL 32202

Karol K. Denniston, Esq.
Paul, Hastings, Janofsky & Waler, LLP
600 Peachtree Street, Suite 2400
Atlanta, Georgia 30308
**Counsel for Official Committee of Equity
Security Holders**

_____/s/ Russell W. Mills_____
Russell W. Mills



## INDEX

INDEX ADDED AFTER LEASE EXECUTED

| Paragraph | Heading | Page |
|---|---|---|
| 1 | Demise of Premises | 1 |
| 2 | Certain Definitions | 2 |
| 3 | Title and Condition | 7 |
| 4 | Use of leased Premises; Quiet Enjoyment | 10 |
| 5 | Term | 11 |
| 6 | Rent | 13 |
| 7 | Net Lease; Non-Terminability | 15 |
| 8 | Payment of Impositions; Compliance with Legal Requirements and Insurance Requirements | 17 |
| 9 | Liens; Recording and Title | 19 |
| 10 | Indemnification | 20 |
| 11 | Maintenance and Repair | 22 |
| 12 | Alterations | 25 |
| 13 | Condemnation | 26 |
| 14 | Insurance | 33 |
| 15 | Restoration | 42 |
| 16 | Subordination to Financing | 45 |
| 17 | Assignment, Subleasing and Vacating | 49 |
| 18 | Permitted Contests | 51 |
| 19 | Conditional Limitation; Default Provision | 53 |
| 20 | Additional Rights of Landlord | 58 |
| 21 | Notices | 60 |
| 22 | Estoppel Certificates | 60 |
| 23 | Surrender and Holding Over | 61 |
| 24 | Risk of Loss | 63 |
| 25 | No Merger of Title | 63 |
| 26 | Definition of Landlord and NonRecourse | 64 |
| 27 | Expansion | 65 |
| 28 | Entry by Landlord | 66 |
| 29 | Annual Statements | 67 |
| 30 | No Usury | 67 |
| 31 | Arbitration | 67 |
| 32 | Broker | 68 |
| 33 | Separability | 68 |
| 34 | Completion of Construction of Improvements | 69 |
| 35 | Miscellaneous | 70 |

Exhibit A - Legal Description
Exhibit B - Machinery and Equipment
Exhibit C - Permitted Encumbrances
Exhibit D - Basic Rent Payments
Exhibit E - Condemnation Purchase Price



EXHIBIT

"A"

THIS LEASE AGREEMENT made as of this 16th day of December ,
1987, by and between ROBERT H. ARNOW, with an address c/o Swig,
Weiler & Arnow Management Co., Inc., 1114 Avenue of the Americas,
New York, New York 10036 ("Landlord") and WINN-DIXIE LOUISIANA,
INC., a Florida corporation with an address of P.O. Box 51059,
New Orleans, Louisiana 70151 ("Tenant").

In consideration of the rents and provisions herein stipu-
lated to be paid and performed, Landlord and Tenant hereby cove-
nant and agree as follows:

1.   Demise of Premises.  Landlord hereby demises and lets
to Tenant and Tenant hereby takes and leases from Landlord for
the term or terms and upon the provisions hereinafter specified
the following described property (collectively, the "Leased Prem-
ises"):  (i) the premises described in Exhibit "A" attached
hereto and made a part hereof together with the easements, rights
and appurtenances thereunto belonging or appertaining (collec-
tively the "Land"); (ii) the buildings, structures and other im-
provements constructed and to be constructed on the Land (collec-
tively, the "Improvements"); and (iii) the machinery and
equipment described in Exhibit "B" attached hereto and made a

-1-

part hereof and installed in and upon the Improvements, together with all additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease (collectively, the "Equipment") excepting therefrom Tenant's Trade Fixtures.

2.    Certain Definitions.

(a)  "Additional Rent" shall mean Additional Rent as defined in Paragraph 6.

(b)  "Adjoining Property" shall mean all sidewalks, curbs, gores and vault spaces adjoining any of the Leased Premises.

(c)  "Alteration" or "Alterations" shall mean any or all changes, additions, improvements, reconstructions or replacements of any of the Improvements or Equipment, both interior or exterior, and ordinary and extraordinary.

(d)  "Assignment" shall mean any Assignment of Rents and Lessor's Interest in Leases hereafter executed from Landlord to Lender.

(e)  "Basic Rent" shall mean Basic Rent as defined in Paragraph 6.

(f)  "Basic Rent Payment Dates" shall mean the Basic Rent Payment Dates as defined in Paragraph 6.

(g)  "Casualty Termination Date" shall mean the Casualty Termination Date as defined in paragraph 14(g).

-2-

(h)  "Commencement Date" shall mean the Commencement Date as defined in Paragraph 5.

(i)  "Condemnation" shall mean a Taking and/or a Requisition as defined in subdivisions (z) and (cc) respectively of this Paragraph 2.

(j)  "Default Rate" shall mean the Default Rate as defined in Paragraph 6(b).

(k)  "Event of Default" shall mean an Event of Default as defined in Paragraph 19(a).

(l)  "Guarantor" shall mean Winn-Dixie Stores, Inc., a Florida corporation.

(m)  "Impositions" shall mean the Impositions as defined in Paragraph 8.

(n)  "Insurance Requirement" or "Insurance Requirements" shall mean, as the case may be, any one or more of the terms of each insurance policy required to be carried by Tenant under this Lease and the requirements of the issuer of such policy, and whenever Tenant shall be engaged in making any Alteration or Alterations, repairs or construction Work of any kind (collectively "Work") the terms "Insurance Requirement" or "Insurance Requirements" shall be deemed to include a requirement that (i) all insurance policies shall contain an endorsement referring to such Work and (ii) Tenant shall obtain workmen's compensation insurance covering all persons employed in connection with the

-3-

Work, whether by Tenant, its contractors or subcontractors and with respect to whom death or bodily injury claims could be asserted against Landlord.

(o)  "Law" shall mean any constitution, statute or rule of law.

(p)  "Legal Requirement" or "Legal Requirements" shall mean, as the case may be, any one or more of all present and future laws, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements, even if unforeseen or extraordinary, of every duly constituted governmental authority or agency (but excluding those which by their terms are not applicable to and do not impose any obligation on Tenant, Landlord or the Leased Premises as a result of some grandfather clause or similar provision) and all covenants, restrictions and conditions now or hereafter of record which may be applicable to Tenant, to Landlord or to any of the Leased Premises, or to the use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of any of the Leased Premises, even if compliance therewith (i) necessitates structural changes or improvements or results in interference with the use or enjoyment of any of the Leased Premises or (ii) requires Tenant to carry insurance other than as required by the provisions of this Lease.

-4-

(q) "Lender" shall mean an entity which makes a Loan to Landlord, secured by a Mortgage and evidenced by a Note.

(r) "Loan" shall mean a loan made by a Lender to Landlord secured by a Mortgage and evidenced by a Note.

(s) "Mortgage" shall mean a mortgage or similar security instrument hereafter executed covering the Leased Premises from Landlord to Lender.

(t) "Net Award" shall mean the entire award payable to Landlord by reason of a Condemnation, less any expenses incurred by Landlord in collecting such award.

(u) "Net Proceeds" shall mean the entire proceeds of any insurance required under clauses (i), (iv), (v) or (vi) of Paragraph 14(a), less any expenses incurred by Landlord in collecting such proceeds.

(v) "Note" shall mean a Promissory Note hereafter executed from Landlord to Lender, which Note will be secured by a Mortgage and an Assignment.

(w) "Permitted Encumbrances" shall mean those covenants, restrictions, reservations, liens, conditions, encroachments, easements listed on Exhibit C attached hereto and any other matters of title existing on the Commencement Date.

(x) "Remaining Sum" shall mean the Remaining Sum as defined in Paragraph 15(b).

(y) "Replaced Equipment" or "Replacement Equipment" shall mean the Replaced Equipment and Replacement Equipment, respectively, as defined in Paragraph 11(d).

-5-

(z)  "Requisition" shall mean any temporary condemnation or confiscation of the use or occupancy of any of the Leased Premises by any governmental authority, civil or military, whether pursuant to an agreement with such governmental authority in settlement of or under threat of any such requisition or confiscation, or otherwise.

(aa) "Restoration" shall mean the Restoration as defined in Paragraph 13(c).

(bb) "State" shall mean the State or Commonwealth in which the Leased Premises are situate.

(cc) "Taking" shall mean any taking of any of the Leased Premises in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of any agreement with any condemnor in settlement of or under threat of any such condemnation or other eminent domain proceedings or by any other means, or any de facto condemnation.

(dd) "Term" shall mean the Term as defined in Paragraph 5.

(ee) "Termination Date" shall mean the Termination Date as defined in Paragraph 13(b).

(ff) "Trade Fixtures" shall mean all fixtures, equipment and other items of personal property which are owned by Tenant and used in the operation of the business conducted on the Leased Premises, excluding therefrom the Equipment.

-6-

3.    Title and Condition.

(a)    The Leased Premises are demised and let subject to (i) the rights of any parties in possession of any of the Leased Premises, (ii) the existing state of title of the Leased Premises, including the Permitted Encumbrances, as of the commencement of the Term, (iii) any state of facts which an accurate survey or physical inspection of the Leased Premises might show, (iv) all Legal Requirements, and Insurance Requirements, including any existing violation of any thereof, and (v) the condition of the Leased Premises as of the commencement of the Term, without representation or warranty by Landlord; it being understood and agreed, however, that the recital of the Permitted Encumbrances herein shall not be construed as a revival of any thereof which for any reason may have expired.

(b)    Tenant acknowledges that the Leased Premises are in good condition and repair at the inception of this Lease, having been constructed on behalf of Tenant by a contractor of its choice. LANDLORD HAS NOT MADE AND WILL NOT MAKE ANY INSPECTION OF ANY OF THE LEASED PREMISES, AND LANDLORD LEASES AND WILL LEASE AND TENANT TAKES AND WILL TAKE THE LEASED PREMISES AS IS, AND TENANT ACKNOWLEDGES THAT LANDLORD (WHETHER ACTING AS LANDLORD HEREUNDER OR IN ANY OTHER CAPACITY) HAS NOT MADE AND WILL NOT MAKE, NOR SHALL LANDLORD BE DEEMED TO HAVE MADE, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE

-7-

LEASED PREMISES, INCLUDING ANY WARRANTY OR REPRESENTATION AS TO
ITS FITNESS FOR USE OR PURPOSE, DESIGN OR CONDITION FOR ANY PAR-
TICULAR USE OR PURPOSE, AS TO THE QUALITY OF THE MATERIAL OR
WORKMANSHIP THEREIN, LATENT OR PATENT, AS TO LANDLORD'S TITLE
THERETO, OR AS TO VALUE, COMPLIANCE WITH SPECIFICATIONS, LOCA-
TION, USE, CONDITION, MERCHANTABILITY, QUALITY, DESCRIPTION, DU-
RABILITY OR OPERATION, IT BEING AGREED THAT ALL RISKS INCIDENT
THERETO ARE TO BE BORNE BY TENANT.  TENANT ACKNOWLEDGES THAT THE
LEASED PREMISES ARE OF ITS SELECTION AND TO ITS SPECIFICATIONS,
AND THAT THE LEASED PREMISES HAVE BEEN INSPECTED BY TENANT AND
ARE SATISFACTORY TO IT.  IN THE EVENT OF ANY DEFECT OR DEFICIENCY
IN ANY OF THE LEASED PREMISES OF ANY NATURE, WHETHER PATENT OR
LATENT, LANDLORD SHALL NOT HAVE ANY RESPONSIBILITY OR LIABILITY
WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAM-
AGES (INCLUDING STRICT LIABILITY IN TORT).  THE PROVISIONS OF
THIS PARAGRAPH 3(b) HAVE BEEN NEGOTIATED, AND THE FOREGOING PRO-
VISIONS ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF
ANY WARRANTIES BY LANDLORD, EXPRESS OR IMPLIED, WITH RESPECT TO
ANY OF THE LEASED PREMISES, ARISING PURSUANT TO THE UNIFORM COM-
MERCIAL CODE OR ANY OTHER LAW NOW OR HEREAFTER IN EFFECT OR OTH-
ERWISE.

     (c)  Tenant represents to Landlord that Tenant has ex-
amined the title to the Leased Premises prior to the execution
and delivery of this Lease and has found the same to be

-8-