provided by law or in equity, including the remedies of Paragraph 19(b).

24. <u>Risk of Loss</u>. The risk of loss or of decrease in the enjoyment and beneficial use of any of the Leased Premises in consequence of the damage or destruction thereof by fire, the elements, casualties, thefts, riots, wars or otherwise, or in consequence of foreclosure, attachments, levies or executions (other than by Landlord and those claiming from, through or under Landlord) is assumed by Tenant, and Landlord shall in no event be answerable or accountable therefor. Except as otherwise specifically provided in this Lease, none of the events mentioned in this Paragraph shall entitle Tenant to any abatement of Basic Rent or Additional Rent or otherwise affect any of the obligations of Tenant hereunder.

25. <u>No Merger of Title</u>. There shall be no merger of this Lease nor of the leasehold estate created by this Lease with the fee estate in or ownership of any of the Leased Premises by reason of the fact that the same person, corporation, firm or other entity may acquire or hold or own, directly or indirectly, (a) this Lease or the leasehold estate created by this Lease or any interest in this Lease or in such leasehold estate and (b) the fee estate or ownership of any of the Leased Premises or any interest in such fee estate or ownership. No such merger shall occur unless and until all persons, corporations, firms and

-63-

other entities having any interest in (i) this Lease or the leasehold estate created by this Lease and (ii) the fee estate in or ownership of the Leased Premises or any part thereof sought to be merged shall join in a written instrument effecting such merger and shall duly record the same.

26. <u>Definition of Landlord and NonRecourse</u>. Anything contained herein to the contrary notwithstanding, any claim based on or in respect of any liability of Landlord under this Lease shall be enforced only against the Leased Premises and not against any other assets, properties or funds of Landlord or any director, officer, general partner, limited partner, employee or agent of Landlord or any legal representative, heir, estate, successor or assign of any thereof.

The term "Landlord" as used in this Lease so far as covenants or obligations on the part of Landlord are concerned, shall be limited to mean and include only the owner or owners of the Leased Premises or holder of the Mortgage in possession at the time in question of the Leased Premises and in the event of any transfer or transfers of the title of the Leased Premises, the Landlord herein named (and in case of any subsequent transfers or conveyances, the then grantor) shall be automatically freed and relieved from and after the date of such transfer and conveyance of all personal liability as respects the performance of any covenants or obligations on the part of Landlord contained in this Lease thereafter to be performed.

27. <u>Expansion</u>.  It is understood that Tenant may at future times during the Term of this Lease or an extension thereof wish to enlarge the Improvements by contructing thereto one or more additions and that such enlarging may require purchase of space for additional parking.  Tenant shall have the sole responsibility for negotiating and providing for the purchase, renovation, and construction of such additional building and of parking lot area as necessary for its expansion plans if the adjacent property is not owned by Landlord.  If Tenant is able to obtain agreements for the purchase of such additional buildings and improvements and contracts for the renovation and enlargement thereof at a cost satisfactory to it, Tenant may then request that Landlord purchase such additional buildings and improvements and incorporate the same into this Lease upon terms and conditions negotiated by the parties.

In the event the parties are unable to agree, Tenant shall not have the right to cancel this Lease but shall have the right at its own expense to construct the building addition at its own expense and to make such changes as necessary as to make the entire enlarged building suitable for use and occupancy by it in the conduct of its business.  At end of the Term of this Lease, title to the additional improvements and land as necessary to meet any Legal Requirements shall pass to Landlord and Tenant shall execute additional documents as necessary to complete such transfer.

All such work for the enlargement and related work shall be carried out in accordance with plans and specifications therefor to be approved by Landlord, with Landlord's consent thereto not to be unreasonably withheld and with the work to be carried out in like structural quality and in architectural harmony with the existing store building, in accordance with good construction practices and in a good workmanlike fashion and in accordance with all of the provisions of this Lease, including but not limited to the provisions of Paragrah 12 hereof.

28. <u>Entry by Landlord</u>. Landlord and its authorized representatives shall have the right to enter the Leased Premises at all reasonable times (a) for the purpose of inspecting the same or for the purpose of doing any work under Paragraph 11(c), and may take all such action thereon as may be necessary or appropriate for any such purpose (but nothing contained in this Lease or otherwise shall create or imply any duty upon the part of Landlord to make any such inspection or do any such work), and (b) for the purpose of showing the Leased Premises to prospective purchasers and mortgagees and, at any time within 12 months prior to the expiration of the term of this Lease for the purpose of showing the same to prospective tenants. No such entry shall constitute an eviction of Tenant.

29. *Annual Statements*. If required by the holder of the Mortgage, Tenant shall, upon demand of Landlord, furnish to Landlord, in duplicate, an annual statement, certified by the chief financial officer of Tenant, itemizing the income and expenses of the Property.

30. *No Usury*. The intention of the parties being to conform strictly to the usury laws now in force in the State, whenever any provision herein provides for payment by Tenant to Landlord of interest at a rate in excess of the legal rate permitted to be charged, such rate herein provided to be paid shall be deemed reduced to such legal rate.

31. *Arbitration*. Whenever in this Lease it is provided that any question shall be determined by arbitration, such question shall be settled and finally determined by arbitration in the City of New Orleans, Louisiana in accordance with the rules then obtaining of the American Arbitration Association or its successor and the judgment upon the award rendered may be entered in any court having jurisdiction thereover.

If, at the time such arbitration is to be held the American Arbitration Association is not in existence and has no successor, the arbitrators shall be appointed by a judge of a court of competent jurisdiction situate in New Orleans, Louisiana upon application of Landlord or Tenant. The number of arbitrators to be appointed shall be three. It is agreed that the

arbitrators shall in no event have the right to modify or vary any of the terms or the provisions of this Lease which shall in all events prevail.

The parties to the arbitration, in addition to the rights granted under the rules of such Association, shall have the right to offer evidence and testify at the hearings, to be represented by counsel and to cross-examine witnesses, and the arbitrators may consider facts and data which they may discover by their independent investigation and inquiry outside of such hearings.

Whenever in this Lease it is provided that Landlord's consent or approval as to any matter will not be unreasonably withheld, or words of like import, and it is established by the arbitration or court proceeding that Landlord has been unreasonable, the only remedy of Tenant in such event shall be to proceed with the matter as if Landlord had given its consent or approval and in no event shall Landlord be liable to Tenant for any damages by reason thereof.

32. <u>Broker</u>.  Landlord and Tenant represent and warrant to each other that neither party negotiated with any broker in connection with this Lease and that this Lease was negotiated directly by Landlord and Tenant.

33. <u>Separability</u>.  Each and every covenant and agreement contained in this Lease is, and shall be construed to be, a separate and independent covenant and agreement, and the breach of any such covenant or agreement by Landlord shall not discharge or

relieve Tenant form its obligation to perform the same. If any term or provision of this Lease or the application thereof to any provison of this Lease or the application thereof to any person or circumstances shall to any extent be invalid and unenforceable, the remainder of this Lease, or the application of such term or provision to person or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and shall be enforced to the extent permitted by law.

34. Completion of Construction of Improvements. If on the Commencement Date (i) construction or alteration of the Improvements shall not have been completed, or (ii) the permanent Certificate of Occupancy or any other required governmental certificates or any other required certificates, permits or licenses, which will permit the Leased Premises to be legally occupied for its intended use, shall not have been issued, Tenant agrees promptly after the Commencement Date to complete such construction and alteration and to obtain the permanent Certificate of Occupancy and such certificates, permits and licenses, and to forward to Landlord copies thereof promptly after their receipt by Tenant. In addition, if any mechanic's, laborer's, materialman's, vendor's or other lien or chattel mortgage, conditional sale or other title retention agreement be filed against the Leased Premises after the Commencement Date, Tenant agrees to discharge such liens promptly after filing thereof.

35. <u>Miscellaneous</u>.  The paragraph headings in this Lease are used only for convenience in finding the subject matters and are not part of this Lease or to be used in determining the intent of the parties or otherwise interpreting this Lease. As used in this Lease the singular shall include the plural as the context requires, and the following words and phrases shall have the following meanings:  (a) "including" shall mean "including but not limited to"; (b) "provisions" shall mean "provisions, terms, agreements, covenants and/or conditions"; (c) "lien" shall mean "lien, charge, encumbrance, title retention agreement, pledge, security interest, mortgage and/or deed of trust"; (d) "obligation" shall mean "obligation, duty, agreement, liability, covenant or condition"; (e) "any of the Leased Premisese" shall mean "the Leased Premises or any part thereof or interest therein"; (f) "any of the Land" shall mean "the Land or any part thereof or interest therein"; (g) "any of the Improvements" shall mean "the Improvements or any part thereof or interest therein"; (h) "any of the Equipment" shall mean "the Equipment or any part thereof or interest therein"; and (i) "any of the Adjoining Property" shall mean "the Adjoining Property or any part thereof or interest therein".  Any act which Landlord is permitted to perform under this Lease may be performed at any time and from time to time by Landlord or any person or entity designated by Landlord.  Any act which Tenant is required to perform under this Lease shall be performed at Tenant's sole cost and expense.  Each appointment of Landlord as attorney-in-fact

-70-

for Tenant under this Lease is irrevocable and coupled with an interest. Landlord has the right to refuse to grant its consent whenever such consent is required under this Lease. This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought. The covenants of this Lease shall run with the Land and bind Tenant, the heirs, distributees, personal representatives, successors and permitted assigns of Tenant and all present and subsequent encumbrancers and subtenants of any of the Leased Premises, and shall inure to the benefit of and bind Landlord, its successors and assigns. In the event there is more than one Tenant, the obligation of each shall be joint and several. In the event any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Lease but this Lease shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. This Lease will be simultaneously executed in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes. This Lease shall

be governed by and construed according to the laws of the State.

IN WITNESS WHEREOF, Landlord and Tenant have caused this instrument to be executed as of the day and year first above written.

Signed sealed and delivered
in the presence of:

_Lene' Checchia_
_Virginia Vanderpool_
As to Landlord

_Betty L. Robinson_
_Rebecca L. _____
As to Tenant

0213520200

_____
Robert H. Arnow

LANDLORD

WINN-DIXIE LOUISIANA, INC.

By _____
   Its _____ President

Attest _____
       Its          Secretary

(Corporate Seal)

TENANT

-72-

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

    Be it known, That on this 16 day of the month of December, 1987, before me, the undersigned authority, personally came and appeared ROBERT H. ARNOW, to me personally known and known by me to be the person whose genuine signature is affixed to the foregoing document, who signed said document before me and in the presence of said witnesses, that he signed the above and foregoing document as his own free act and deed and for the uses and purposes therein set forth and apparent.

    In witness whereof, the said appearers have signed these presents and I have hereunto fixed my hand and seal, together with the said witnesses on the day and date first above written.

_____        _____
           Witness                                      Notary Public

_____        LLOYD STABINER
           Witness                                      Notary Public, State of New York
                                                                   No. 31-4806950
                                                                   Qualified in New York County
                                                          Commission Expires November 30, 1988

STATE OF FLORIDA    )
                    : SS.:
COUNTY OF DUVAL     )

   BEFORE ME, the undersigned Notary Public, duly commissioned, qualified and empowered to act in and for the County and State aforesaid, personally came and appeared:

*A. Dano Davis*

to me known, who declared and acknowledged before me, Notary, and the undersigned competent witnesses, that he is the       President of WINN-DIXIE LOUISIANA, INC., that as such duly authorized agent, by and with the authority of the Board of Directors of WINN-DIXIE LOUISIANA, INC., he signed and executed the foregoing instrument, as the free and voluntary act and deed of WINN-DIXIE LOUISIANA, INC., for and on behalf of WINN-DIXIE LOUISIANA, INC., and for the objects and purposes therein set forth.

   THUS DONE AND PASSED in the State and County aforesaid, on this 21st day of December, 1987, after due reading of the whole.

WITNESSES:

_Betty L. Robinson_                    _Laura E. Langino_
_Kathleen L. Sawyer_                        Notary Public

EXHIBIT "A"

ONE CERTAIN PARCEL OF GROUND, together with all the buildings and improvements thereon and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Third District of the City of New Orleans, State of Louisiana, in Section 23 of LaKratt Tract (formerly New Orleans Lakeshore Land Co. Subdivision) designated as Lot 2A-1C-F on a resubdivision plan by the Office of Engineering Concepts, Inc., Michael W. Flores, Land Surveyor, dated August 11, 1986, and approved by the City Planning Commission on August 26, 1986, filed in the Parish of Orleans under Notarial Archives Number 669628, registered in COB 806, folio 667 on August 27, 1986, and according to a plan of Michael W. Flores, Land Surveyor, dated August 11, 1987, said property is more particularly described as follows:

From the intersection of the southerly right of way line of Morrison Road and the easterly right of way line of Bundy Road proceed 200.39 feet along a rightward arc having a radius of 1462.52 feet (with a chord length of 200.23 feet and a chord bearing of South 20 degrees, 01 minutes, 54 seconds East) to the Point of Beginning; thence North 60 degrees 54 minutes 25 seconds East a distance of 296.48 feet; thence South 29 degrees 05 minutes 35 seconds East a distance of 654.37 feet; thence South 60 degrees 54 minutes 25 seconds West a distance of 220.00 feet; thence North 29 degrees 05 minutes 35 seconds West a distance of 604.37 feet; thence South 60 degrees 54 minutes 25 seconds West a distance of 88.94 feet thence 51.53 feet along a leftward arc having a radius of 1,462.52 feet (with a chord length of 51.33 feet and a chord bearing of North 15 degrees, 05 minutes, 49 seconds West) to the Point of Beginning; said Lot contains 3.400 acres.

Being the same property acquired by Winn-Dixie Louisiana, Inc. by act passed before Gary Miller, Notary Public, dated August 28, 1986, registered in COB 808, folio 648.