## EXHIBIT "B"

## MACHINERY AND EQUIPMENT

All machinery, apparatus, equipment, fittings, appliances and fixtures of every kind and nature whatsoever including all electrical, anti-pollution, heating, lighting, laundry, incinerating, power, air conditioning, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communication, garage and cooking systems, devices, machinery, apparatus, equipment, fittings, appliances, engines, pipes, pumps, tanks, motors, conduits, ducts, compressors and switchboards, and all storm doors and windows, dishwashers, attached cabinets and partitions and all articles of personal property of every kind and nature whatsoever to the extent that the foregoing items are now or hereafter affixed to, attached to, placed upon, used or usable in any way in connection with the use, enjoyment, occupancy or operation of the Leased Premises and Improvements' but excluding trade fixtures, inventory, furniture and other personalty belonging to Tenant not shown on the plans and specifications for the Improvements.

## EXHIBIT "C"

1.  Taxes for 1988 and all subsequent years not yet due or payable.

2.  Thirty (30') foot minimum building set-back line front-ing 51.53 feet on Bundy Road as shown on survey by En-gineering Concepts, Inc., Michael W. Flores, Land Sur-veyor, dated August 11, 1986.

3.  Twenty (20') foot servitude in favor of Sewerage and Water Board fronting 220 feet on Interstate Highway Side I-10 Service Road as shown on survey by Engineer-ing Concepts, Inc., Michael W. Flores, Land Surveyor, dated August 11, 1986.

4.  Title restrictions as contained in Ordinance of Commis-sion Council City of New Orleans #10-498 M.C.S., adopt-ed May 9, 1985.

5.  Cross Servitudes and Restrictive Covenants Agreement dated August 28, 1986 between Charles M. Gremillion, et al., and Winn-Dixie Louisiana, Inc., registered in Orleans Parish in COB 808H, folio 51-58, Notarial Ar-chives Number 670425, affecting Lots 2A-1C-F, 2A-1C-G and 2A-1C-E.

6.  Concrete driveway on the 20' Sewerage and Water Board Servitude along the southerly sideline of the property as shown on the survey of Michael W. Flores, Land Surveyor, dated August 11, 1987.

EXHIBIT "D"

BASIC RENT PAYMENTS

1.    **Basic Rent.** Subject to the adjustment provided for in Paragraph 2, Basic Rent shall be Three Hundred Forty Thousand One Hundred Seventy-Eight and 28/100 ($340,178.28) Dollars per annum, payable monthly in advance on the fifth day of each month in equal installments of Twenty-Eight Thousand Three Hundred Forty-Eight and 19/100 ($28,348.19) Dollars each, except that if the Commencement Date shall not occur on the fifth day of a calendar month, the installment of Basic Rent due on the Commencement Date shall be equal to the product of (a) the monthly rent installment and (b) the fraction whose numerator is the number of days from (and including) the Commencement Date through (and including) the fifth day of the calendar month next following the first Basic Rent Payment Date and whose denominator is thirty.

2.    **Gross Sales Adjustments to Basic Rent.** In addition to Basic Rent, Tenant shall pay one percent (1%) of the Gross Sales (as hereinafter defined) exceeding the Basic Rent for any of Tenant's fiscal years ending on or about June 30. (Such sum is hereafter called the "Percentage Rent") and is included in the term "Additional Rent" as used in this Lease. Percentage Rent shall be payable for the period from the Commencement Date to the end of Tenant's fiscal year ending June 30, 1988.

"Gross Sales" as used herein shall mean the aggregate gross sales of all merchandise sold, and gross charges for all services rendered in or from the Leased Premises both for cash and on credit whether by Tenant, or by any party occupying the Leased Premises or any part thereof as a subtenant, licensee, franchisee or assignee of Tenant and shall include the selling price for orders taken or received at the Leased Premises, whether such orders are filled from the Leased Premises or elsewhere; provided however such terms shall not include (1) any rental tax, or sales tax, gross receipts tax or similar tax by whatever name called, the amount of which is determined by the amount of sales made and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the Leased Premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines but payments received by Tenant or other occupant of the Leased Premises from the operator or vendor of the vending machines shall be included in Gross Sales; (6) accommodation check cashing fees and accommodation sales such as sales of postage stamps, lottery tickets, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of

trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the Leased Premises.

Tenant shall submit to Landlord on or before the sixtieth day following the end of each of Tenant's fiscal years for accounting purposes a statement signed by an executive officer of Tenant named herein or certified by an independent certified public accountant of any successor to Tenant named herein demonstrating in reasonable detail the amount of Gross Sales for the preceding Lease Year as set forth in Tenant's regularly maintained books and records. Any Percentage Rent due for that Lease Year shall be immediately payable within 60 days of the end of Tenant's fiscal year.

Tenant shall keep at all times during the Term of this Lease, at the Leased Premises or at the principal office of Tenant, full, complete and accurate books of account and records in accordance with generally accepted accounting practices consistently applied with respect to all operations of the business conducted in or from the Leased Premises for at least two years from the end of the fiscal year to which they are applicable, or, if any audit is required or a controversy should arise between the parties hereto regarding the Percentage Rent payable hereunder, until such audit or controversy is terminated. Such books and records shall at all reasonable times be open to the inspection of the Landlord or its duly authorized representatives, who shall have full and free access to such books and records, the right to audit such books and records, and the right to require of Tenant, its agents and employees, such information or explanation with respect to such books and records as may be necessary for a proper examination and/or audit thereof.

If the examination and/or audit referred to in the immediately preceding paragraph shall disclose a liability for payment of Percentage Rent to the extent of three percent or more in excess of the Percentage Rent theretofore computed and paid by Tenant for the period being examined, Tenant shall pay to Landlord the cost of such examination and/or audit in addition to the deficiency of Percentage Rent.

Any intention to create a joint venture or partnership relation between the parties is hereby expressly disclaimed, it being the intention of the parties that the provision for the payment by Tenant and the acceptance by Landlord of a percentage of Gross Sales is a reservation of Additional Rent for use of the Leased Premises.

021352020D

-2-

021352020E

## EXHIBIT E

The greater of:

(a) The unpaid principal of the Mortgage as of the Closing Date referred to in Paragraph 13(b), or

(b) The sum of Three Million Four Hundred Eighty-Nine Thousand and Eight ($3,489,008) Dollars less an amount equal to five (5%) percent of Two Million Two Hundred Forty-Three Thousand Four Hundred Fifty-Three ($2,243,453) Dollars by the number of years that shall have elapsed from the Commencement Date to said Closing Date, due apportionment to be made thereof for part of a year.