## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |
| | ) | |

### DEBTORS' OBJECTION TO REQUEST OF CONSOLIDATED BISCUIT COMPANY FOR PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), object to the Request of Consolidated Biscuit Company for Payment of an Administrative Expense Claim (Docket No. 8930) (the "Request"). In support of this objection, the Debtors respectfully represent as follows:

### Background

1.    On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of the United States Bankruptcy Code. The Debtors' cases are being jointly administered for procedural purposes only.

2.    Prior to the Petition Date, Winn-Dixie Stores, Inc. ("Winn-Dixie") and Consolidated Biscuit Company ("Consolidated") entered into an Asset Purchase Agreement for the sale of Winn-Dixie's manufacturing facility located in Valdosta, Georgia (the "Valdosta

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

Facility").  On January 18, 2005, Consolidated and Winn-Dixie entered into a Contract Packaging

Agreement (the "Packaging Agreement"), under which Consolidated would manufacture and

process, for sale to Winn-Dixie, bakery and snack products at the Valdosta Facility.  Consolidated

unilaterally terminated the Packaging Agreement as of December 16, 2005, by exercising the

Packaging Agreement's 120-day notice provision.  Upon information and belief, shortly

thereafter, Consolidated ceased all operations at the Valdosta Facility.

3.        On or about June 30, 2006, Consolidated filed the Request, seeking an

administrative expense claim in the amount of $885,975.47, alleging the right to charge the

Debtors' estates for $344,617.95 in leftover packaging materials, $463,488.07 in leftover

ingredients, and $77,869.45 in manufactured products on hand at the time of termination of the

Packaging Agreement.

<u>Objection</u>

4.        As set forth in detail below, the Request should be denied because:  (a) the

Debtors have no obligation to pay for the charges claimed by Consolidated under the terms of the

Packaging Agreement, (b) any obligation of the Debtors under the Packaging Agreement is a

prepetition obligation and Consolidated has not shown that the charges were actual and necessary

to the preservation of the Debtors' estates, and (c) Consolidated violated the automatic stay when

it terminated the Packaging Agreement and should not now be compensated for the consequences

of the termination.

A.        The Court Should Deny the Request Because the Packaging Agreement
<u>Does not Require Payment of the Amounts Sought by Consolidated.</u>

5.        The Debtors dispute the charges that Consolidated alleges are due as a result of

termination of the Packaging Agreement.  Consolidated has not demonstrated that the

requirements of the Packaging Agreement that could trigger an obligation to repurchase leftover packaging materials and ingredients have been satisfied.  Furthermore, the Packaging Agreement contains no requirement that Winn-Dixie must purchase any leftover finished products at termination.

6.    Packaging Materials.  Consolidated seeks to recover charges of $344,617.95 for leftover packaging materials that could have been resold or used by Consolidated in other aspects of its business.  At termination, the Packaging Agreement only requires repurchase of packaging materials dedicated to Winn-Dixie, but not more than a 13-week supply.  The Packaging Agreement provides in pertinent part that Winn-Dixie "agrees to repurchase from [Consolidated] any packaging inventory dedicated to [Winn-Dixie] that was not consumed in the production of Products during the term of this Agreement; provided, however, [Winn-Dixie] shall not be obligated to purchase more than 13 weeks supply of packaging materials unless [Winn-Dixie] has authorized [Consolidated] in writing to purchase quantities of packaging materials in excess of a 13 week supply." Packaging Agreement, ¶ 5 (emphasis added).

7.    Exhibit B to the Request contains a list of packaging materials that Consolidated allegedly had on hand at the time the Packaging Agreement was terminated.  Exhibit B contains no dates or other information that would enable the Debtors to determine if Consolidated is seeking to recover charges in excess of a 13-week supply.  Moreover, the Debtors dispute Consolidated's allegation that the "materials could not be resold by Consolidated or otherwise used." Request, ¶ 4.  Exhibit B lists numerous packaging materials that Consolidated could have resold or used for other customers, including, but not limited to, cardboard, aluminum pie crust pans, hot melt glue, mini pie overwrap and generic popcorn bags.  While Consolidated may have initially purchased these products for use in Winn-Dixie products, there was nothing in the

Packaging Agreement that prohibited Consolidated from reselling unused packaging or using it for other customers' products.  Moreover, it was Consolidated, and not Winn-Dixie, that made the decision to terminate the Packaging Agreement.  With the 120-day notice provision in the Packaging Agreement, Consolidated had ample opportunity to plan for reductions in inventory and alternative uses for the packaging.

8.    <u>Ingredients</u>.  Contrary to the terms of the Packaging Agreement, Consolidated seeks to recover charges for $463,488.07 in leftover ingredients that are not all unique to Winn-Dixie.  Paragraph 5 of the Packaging Agreement provides that "[a]ny ingredients inventory that [Consolidated] has on hand at the date of termination <u>that is unique to the Products</u> shall be sold to [Winn-Dixie] at [Consolidated]'s cost plus transportation costs."  Packaging Agreement,¶ 5 (emphasis added).  Winn-Dixie disputes Consolidated's allegation that "none of this material and ingredients was used or usable by Consolidated for any other purpose."  Request, ¶ 9.  Exhibit C to the Request lists numerous ingredients that were not unique to Winn-Dixie and that could have been used by Consolidated for other customers' products, such as chili powder, cinnamon, margarine, pulverized salt, cinnamon sugar, pecan halves, natural lard, egg yolk solids, kosher gelatin, corn syrup, soybean oil, semi sweet chocolate drops and vegetable oil, among others.  Consolidated has failed to demonstrate that the ingredients inventory for which it seeks a recovery were unique to Winn-Dixie or that the inventory could not be used for other purposes.  In any event, with its decision to terminate the Packaging Agreement, Consolidated had 120 days to plan for the wind-down of operations related to Winn-Dixie, so it is not clear why Consolidated had any, much less such a large, inventory of unused ingredients on hand at the time the Packaging Agreement was terminated.

9.    <u>Manufactured Products</u>.  Consolidated seeks payment of $77,869.45 for manufactured products on hand at termination.  These charges are not recoverable under the terms of the Packaging Agreement.  The Packaging Agreement has no requirement that Winn-Dixie pay for manufactured products on hand upon termination of the Packaging Agreement and for which no purchase order was issued.  While Consolidated may have had to maintain certain minimum production runs, given that it had 120 days to plan for the termination of the Packaging Agreement, Consolidated had ample opportunity to plan to avoid having excess finished products on hand.  In fact, the existence of any inventory of finished products is surprising, given that for several weeks preceding termination of the Packaging Agreement Consolidated was unable to fulfill purchase orders issued by Winn-Dixie.

10.    In light of the fact that Consolidated had substantial packaging, inventory and finished products on hand at termination, and yet was unable to meet Winn-Dixie's production demands during the weeks preceding termination, the Debtors can only surmise that Consolidated is seeking payment for all inventory it had on hand at the time it ceased operations at the Valdosta Facility, without regard to whether any of it was unique to Winn-Dixie or otherwise the responsibility of Winn-Dixie under the Packaging Agreement.

B.    Because Consolidated has Failed to Prove a Benefit to the Estates, its Request <u>for an Administrative Expense Claim Should be Denied.</u>

11.    Consolidated is not entitled to an administrative expense claim because any obligations of Winn-Dixie under the Packaging Agreement arose prior to the Petition Date and are not undertakings of Winn-Dixie's estate.  Moreover, Consolidated has not demonstrated that the charges it alleges are due as a result of the termination of the Packaging Agreement provided any benefit to Winn-Dixie's estates as required by Bankruptcy Code section 503 (b).  Under the

Bankruptcy Code, as the party filing an administrative claim, Consolidated bears the burden of proving that its claim is entitled to administrative priority. See e.g., In re Sports Shinko (Florida) Co., Ltd., 333 B.R. 483, 492 (Bankr. M.D. Fla. 2005). Consolidated has failed to meet this burden by failing to state that a benefit was provided, let alone setting forth facts sufficient to support this assertion.

12.    Bankruptcy Code section 503(b) provides in pertinent part that "[a]fter notice and a hearing, there shall be allowed administrative expenses, . . . including the actual, necessary costs and expenses of preserving the estate." To be accorded administrative expense status under Bankruptcy Code section 503(b), "an estate must actually make beneficial use of any value received in exchange for the incurring of the expense." In re Right Time Foods, Inc., 262 B.R. 882, 884 (Bankr. M.D. Fla. 2001). In Right Time Foods, the Court denied administrative expense treatment for charges incurred post-petition during a 45 day notice period required in order to terminate an HMO service contract, because the debtor had no employees during the notice period, and as a result, the charges did not benefit the debtor's estates. 262 B.R. at 885.

13.    Consolidated has not demonstrated that any value has been received by the Debtors in exchange for the expenses it seeks to charge to the Debtors' estates. The Debtors received no benefit from the excess inventory that remained at Consolidated at the time of termination of the Packaging Agreement; in fact, they suffered lost sales due to Consolidated's inability to meet the Debtors' production requirements. See e.g., In re Grand Union Co., 266 B.R. 621, 629 (Bankr. D. N.J. 2001) (holding that a repurchase obligation and shortfall requirement arising out of the termination and rejection of a warehouse agreement did not constitute administrative expenses because they did not arise from transactions with the debtor

and it was not "proven that the consideration supporting [the claimant's] right to payment was both supplied to and beneficial to Grand Union in the operation of its business.")

      C.      Consolidated's Termination of the Packaging Agreement Violated the Automatic <u>Stay and Should not be Rewarded with an Administrative Claim</u>.

      14.      Consolidated violated the automatic stay when it issued its notice of termination under the Packaging Agreement without having obtained prior relief from the Bankruptcy Court. As an executory contract, the Packaging Agreement was property of Winn-Dixie's estate, and its termination constituted an interference with property of the estate that is prohibited by Bankruptcy Code section 362.  <u>See</u> <u>In re National Hydro-Vac Industrial Services, L.L.C.</u>, 262 B.R. 781 (Bankr. E.D. Ark. 2001) (holding that a bank was precluded, pursuant to section 365, from terminating a bank services agreement containing an at-will termination provision); <u>In re Elder-Beerman Stores, Corp.</u>, 195 B.R. 1019 (Bankr. S.D. Ohio 1996) (holding that a furniture providers attempted termination violated the automatic stay); <u>In re Elder-Beerman Stores Corp.</u>, 195 B.R. 1012 (Bankr. S.D. Ohio 1996) (refusing to lift the automatic stay to allow furniture provider to terminate even though the terms of the contracts at issue provided for termination without cause); <u>In re O-Jay Foods, Inc.</u>, 110 B.R. 895, 897-898 (Bankr. D. Minn. 1989) (refusing to lift the stay to allow an equipment lessor to terminate its lease with the debtor and holding that the only remedy available to the lessor was to file a motion to compel assumption).  <u>See also</u> <u>In re Griffin</u>, 313 B.R. 757, 768 n.8 (Bankr. N.D. Ill. 2004) (noting in dicta that "[g]enerally, a party to an existing pre-petition contract with a debtor cannot take unilateral, affirmative action to terminate the contract, even if the trustee has not assumed it, unless he successfully seeks modification of the automatic stay").

15.     Although the termination cannot be undone at this time, having previously disregarded the jurisdiction of this Court, Consolidated should not now be permitted to seek the assistance of the Court to obtain payment for charges that only arose as a result of the termination.  Had Consolidated properly sought relief from the Court, the proceedings might have facilitated a managed termination under which the charges now at issue would not have been incurred by Consolidated.  Moreover, Winn-Dixie might not have suffered the product shortfalls that it experienced during the period leading up to the termination.  Winn-Dixie reserves the right to seek damages from Consolidated for the violation of the automatic stay and any loss of profits resulting from the termination.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (i) deny the Request and (ii) grant such other and further relief as the Court deems just and proper.

Dated: August 17, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By    *s/ D. J. Baker*
      D. J. Baker
      Sally McDonald Henry
      Rosalie Walker Gray
      Jane M. Leamy
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for the Debtors

SMITH HULSEY & BUSEY

By    *s/ Cynthia C. Jackson*
      Stephen D. Busey
      James H. Post
      Cynthia C. Jackson
      F.B.N. 498882
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for the Debtors