satisfactory for the purposes contemplated hereby and acknowl-
edges that title is in Landlord and that Tenant has only the
right of possession and use of the Leased Premises as provided in
this Lease.

(d)  Landlord hereby assigns, without recourse or war-
ranty whatsoever, to Tenant, all warranties, guaranties and
indemnities, express or implied, and similar rights which Land-
lord may have against any manufacturer, seller, engineer, con-
tractor or builder in respect of any of the Leased Premises,
including, but not limited to, any rights and remedies existing
under contract or pursuant to the Uniform Commercial Code.  Such
assignment shall remain in effect so long as no Event of Default
exists hereunder or until the termination of this Lease, whereup-
on Tenant shall reassign any interest so assigned hereunder to
Landlord.  Landlord shall also retain the right to enforce any
such warranty, guaranty, or indemnity assigned in the name of
Tenant.  Landlord hereby agrees to execute and deliver at Ten-
ant's expense such further documents, including powers of  attor-
ney, as Tenant may reasonably request (and which in the good
faith judgment of Landlord, do not adversely affect a substantial
general interest of Landlord), in order that Tenant may have the
full benefit of the assignment effected or intended to be ef-
fected by this Paragraph 3(d).

-9-

(e)  Landlord agrees to enter into with Tenant, at Tenant's expense, such easements, covenants or restrictions for utilities, parking or other matters as desirable for operation of the Leased Premises as requested by Tenant, subject to Landlord's approval of the form and substance thereof, not to be unreasonably withheld.

4.    Use of Leased Premises; Quiet Enjoyment.

(a)  The Leased Premises may be used, sublet or assigned, for any legal retail purpose, subject to the provisions of Paragraph 17 hereof.  In no event shall be Leased Premises be used for any purpose which shall otherwise violate any of the provisions of this Lease, including but not limited to, Legal Requirements, Insurance Requirements or other recorded covenants, restrictions or agreements applicable to the Leased Premises or to the shopping center of which the Leased Premises are a part.

(b)  Tenant shall not permit any unlawful occupation, business or trade to be conducted on any of the Leased Premises or any use to be made thereof contrary to applicable Legal Requirements or Insurance Requirements. Tenant shall not use, occupy or permit any of the Leased Premises to be used or occupied, nor do or permit anything to be done in or on any of the Leased Premises, in a manner which would (i) violate any certificate of occupancy or equivalent certificate affecting any of the Leased Premises, (ii) make void or voidable any insurance then in force

-10-

with respect to any of the Leased Premises, (iii) affect in any manner the ability of Tenant to obtain fire or other insurance which Tenant is required to furnish hereunder, (iv) cause any injury or damage to any of the Improvements, or (v) constitute a public or private nuisance or waste.

(c)  Subject to all of the provisions of this Lease, including but not limited to the provisions of Paragraphs 3 and 7(b), so long as no Event of Default exists hereunder, Landlord covenants to do no act to disturb the peaceful and quiet occupation and enjoyment of the Leased Premises by Tenant, provided that Landlord may enter upon and examine any of the Leased Premises at reasonable times and exercise any rights and privileges granted to Landlord under the provisions of this Lease or provided by law.

5.  Term.  Subject to the provisions hereof, Tenant shall have and hold the Leased Premises for an initial term (the "Term") commencing on DECEMBER 30, 1987 (the "Commencement Date") and ending on the fifth day of January, 2008. Provided the Lease shall not have been terminated pursuant any provision of this Lease including but not limited to Paragraph 19, the Tenant shall have the option to extend the Term for Six (6) renewal terms of five (5) years each, by giving written notice to Landlord in writing at least twelve (12) months prior to the expiration of the then current Term.  Any option granted to Tenant

-11-

to extend the Term hereunder for any of the six renewal terms of five (5) years each is on the condition that at the time of the exercise of the option and at the time of the Commencement Date of each such renewal term, no Event of Default shall exist. In the absence of giving of such notice to renew by Tenant to Landlord, the Term shall be automatically terminated at the end of the then current Term. Any such extension or renewal of the Term (also referred to as the "Term") shall be subject to and shall continue in full force and effect all the provisions of this Lease. In the event that Tenant does not exercise its option to renew or to further renew the Term as hereinabove provided, then Landlord shall have the right during the remainder of the Term then in effect to (i) advertise the availability of the Leased Premises for sale or for reletting and to erect upon the Leased Premises signs indicating such availability (provided that such signs do not unreasonably interfere with the use of the Leased Premises by Tenant), and (ii) show the Leased Premises to prospective purchasers, lenders or tenants at such reasonable times during normal business hours as Landlord may select. If Tenant shall fail to timely give such notice of its irrevocable election to exercise any renewal option then Tenant's right to exercise such option and all options with regard to subsequent extensions or renewals of the Term shall expire and be null and void.

-12-

6.    <u>Rent</u>.

(a)    Tenant shall pay to Landlord, as annual rent for the Leased Premises during the Term, the amounts determined in accordance with the schedule set forth in Exhibit "D" attached hereto and made a part hereof ("Basic Rent"), commencing on the fifth day of the first month next following the Commencement Date and continuing on the same day of each month thereafter during the Term (the said days being called the "Basic Rent Payment Dates"), and shall pay the same at Landlord's address set forth below, or at such other place or to such other person or persons (not exceeding four (4) in number) and in such proportions as Landlord from time to time may designate to Tenant in writing, in funds which at the time of such payment shall be legal tender for the payment of public or private debts in the United States of America.  Pro rata Basic Rent shall be due for the period from the Commencement Date through the fifth day of the month next following the Commencement Date computed as set forth in Exhibit D and shall be paid in advance on the Commencement Date, but if the Commencement Date shall occur on the fifth day of a calendar month, full monthly installment of Basic Rent shall be paid on the Commencement Date.

(b)    Tenant shall pay and discharge when the same shall become due, as additional rent, all other amounts and obligations which Tenant assumes or agrees to pay or discharge pursuant to

-13-

this Lease, together with every fine, penalty, interest and cost which may be added for nonpayment or late payment thereof. In the event of any failure by Tenant to pay or discharge any of the foregoing, Landlord shall have all rights, powers and remedies provided herein, by law or otherwise, in the event of nonpayment of Basic Rent. If any installment of Basic Rent is not paid within ten days after the due date thereof, Tenant shall pay to Landlord, as additional rent, an amount equal to four percent of the amount of such installment. Additionally, Tenant shall pay to Landlord on demand, as additional rent, interest, at the rate of fifteen percent (15%) per annum (the "Default Rate") on all overdue amounts of additional rent pursuant to the foregoing sentence, on all overdue installments of Basic Rent from the respective due dates thereof, and on all overdue amounts of additional rent relating to obligations which Landlord shall have paid on behalf of Tenant, from the date of payment thereof, until paid in full. All the foregoing additional rent referred to in this Paragraph 6(b) is herein sometimes called "Additional Rent". The requirements of Paragraph 19(e) regarding notice and grace periods need not be complied with prior to the imposition of the Additional Rent charges of this Paragraph 6(b) only with respect to the above-mentioned four percent late charge.

-14-

7.  Net Lease; Non-Terminability.

(a)  This is a net Lease and Basic Rent, Additional
Rent and all other sums payable hereunder by Tenant shall be paid
without notice or demand, and without setoff, counterclaim, re-
coupment, abatement, suspension, deferment, diminution, deduc-
tion, reduction or defense.

(b)  This Lease shall not terminate and Tenant shall
not have any right to terminate this Lease, during the Term (ex-
cept as otherwise expressly provided herein).  Tenant shall not
be entitled to any setoff, counterclaim, recoupment, abatement,
suspension, deferment, diminution, deduction, reduction or de-
fense of or to Basic Rent, Additional Rent or any other sums pay-
able under this Lease (except as otherwise expressly provided
herein), and the obligations of Tenant under this Lease shall not
be affected by any interference with Tenant's use of any of the
Leased Premises for any reason, including the following:  (i) any
damage to or destruction of any of the Leased Premises by any
cause whatsoever, (ii) any Condemnation, (iii) the prohibition,
limitation or restriction of Tenant's use of any of the Leased
Premises, (iv) any eviction by paramount title or otherwise,
(v) Tenant's acquisition of ownership of any of the Leased Prem-
ises other than pursuant to an express provision of this Lease,
(vi) any default on the part of Landlord hereunder or under any
other agreement, (vii) any latent or other defect in, or any

-15-

theft or loss of any of the Leased Premises, (viii) the breach of
any warranty of any seller or manufacturer of any of the Equip-
ment, (ix) any violation of Paragraph 4(c) by Landlord, or
(x) any other cause, whether similar or dissimilar to the forego-
ing, any present or future law to the constrary notwithstanding.
It is the intention of the parties hereto that the obligations of
Tenant hereunder shall be separate and independent covenants and
agreements, and that Basic Rent, Additional Rent and all other
sums payable by Tenant hereunder shall continue to be payable in
all events (or, in lieu thereof, Tenant shall pay amounts equal
thereto), and that the obligations of Tenant hereunder shall con-
tinue unaffected, unless the requirement to pay or perform the
same shall have been terminated pursuant to an express provision
of this Lease.

        (c)  Tenant agrees that it shall remain obligated under
this Lease in accordance with its provisions and that, except as
otherwise expressly provided herein, it shall not take any action
to terminate, rescind or avoid this Lease, notwithstanding
(i) the bankruptcy, insolvency, reorganization, composition, re-
adjustment, liquidation, dissolution, winding-up or other pro-
ceeding affecting Landlord, (ii) the exercise of any remedy,
including foreclosure, under the Mortgage, or (iii) any action
with respect to this Lease (including the disaffirmance hereof)
which may be taken by Landlord under the Federal Bankruptcy Code

-16-

or by any trustee, receiver or liquidator of Landlord or by any court under the Federal Bankruptcy Code or otherwise.

(d)  Tenant waives all rights which may now or hereafter be conferred by law (i) to quit, terminate or surrender this Lease or any of the Leased Premises, and (ii) to any setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease, except as otherwise expressly provided herein.

8.  Payment of Impositions; Compliance with Legal Requirements and Insurance Requirements.

(a)  Subject to the provisions of Paragraph 18 hereof relating to contests, Tenant shall, before interest or penalties are due thereon, pay and discharge all taxes of every kind and nature (including real, ad valorem and personal property, income, franchise, withholding, profits and gross receipts taxes), all charges and/or taxes for any easement or agreement maintained for the benefit of any of the Leased Premises, all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and other utility charges, all ground rents, and all other public charges and/or taxes whether of a like or different nature, even if unforseen or extraordinary, imposed upon or assessed, prior to or during the Term,  against Landlord, Tenant or any of the Leased Premises as a result of or

-17-

arising in respect of the acquisition, occupancy, leasing, use or possession thereof, or any activity conducted on the Leased Premises, or the Basic Rent or Additional Rent, including without limitation, any gross income tax, sales tax or excise tax levied by any governmental body on or with respect to such Basic Rent or Additional Rent (collectively the "Impositions").

Nothing herein shall obligate Tenant to pay Federal, State or local (i) franchise, capital stock or similar taxes, if any, of Landlord, (ii) income, excess profits or other taxes, if any, of Landlord, determined on the basis of its net income, or (iii) any estate, inheritance, succession, gift, capital levy or similar tax unless the taxes referred to in clauses (i) and (ii) above are in addition to or in lieu of or a substitute for any other tax or assessment upon or with respect to any of the Leased Premises which, if such other tax or assessment were in effect at the commencement of the term, would be payable by Tenant. In the event that any assessment against any of the Leased Premises may be paid in installments, Tenant shall have the option to pay such assessment in installments; and in such event, Tenant shall be liable only for those installments which become due and payable during the Term. Tenant shall prepare and file all tax reports required by governmental authorities which relate to the Impositions. Tenant shall deliver to Landlord, within twenty days of receipt thereof, copies of all settlements and notices pertaining

-18-

to the Impositions which may be issued by any governmental au-
thority and receipts for payments of all Impositions made during
each calendar year of the Term, within thirty days after payment.

(b)   Tenant shall promptly comply with and conform to
all of the Legal Requirements and Insurance Requirements, subject
to the provisions of Paragraph 18 hereof.

9.   Liens; Recording and Title.

(a)   Tenant shall not, directly or indirectly, create
or permit to be created or to remain, and shall promptly dis-
charge, any lien on any of the Leased Premises, on the Basic
Rent, Additional Rent or on any other sums payable by Tenant
under this Lease, other than the Mortgage, the Assignment, the
Permitted Encumbrances and any mortgage, lien, encumbrance or
other charge created by or resulting from any act or omission by
Landlord, not resulting from a default by Tenant hereunder. NO-
TICE IS HEREBY GIVEN THAT LANDLORD SHALL NOT BE LIABLE FOR ANY
LABOR, SERVICES OR MATERIALS FURNISHED OR TO BE FURNISHED TO TEN-
ANT, OR TO ANYONE HOLDING ANY OF THE LEASED PREMISES THROUGH OR
UNDER TENANT, AND THAT NO MECHANIC'S OR OTHER LIENS FOR ANY SUCH
LABOR, SERVICES OR MATERIALS SHALL ATTACH TO OR AFFECT THE INTER-
EST OF LANDLORD IN AND TO ANY OF THE LEASED PREMISES.

(b)   Tenant shall execute, deliver and record, file or
register from time to time all such instruments as may be re-
quired by any present or future law in order to evidence the

-19-

respective interest of Landlord and Tenant in any of the Leased
Premises, and shall cause a memorandum of this Lease, and any
supplement hereto or to such other instrument, if any, as may be
appropriate, to be recorded, filed or registered and re-recorded,
refiled or re-registered in such manner and in such places as may
be required by any present or future law in order to give public
notice and protect the validity of this Lease.  In the event of
any discrepancy between the provisions of said recorded memoran-
dum of this Lease or any other recorded instrument referring to
this Lease and the provisions of this Lease, the provisions of
this Lease shall prevail.

(c)  Nothing in this Lease and no action or inaction by
Landlord shall be deemed or construed to mean that Landlord has
granted to Tenant any right, power or permission to do any act or
to make any agreement which may create, give rise to, or be the
foundation for, any right, title, interest or lien in or upon the
estate of Landlord in any of the Leased Premises.

10.  Indemnification.  Tenant agrees to defend, pay, pro-
tect, indemnify, save and hold harmless Landlord from and against
any and all liabilities, losses, damages, penalties, costs,
expenses (including reasonable attorneys' fees and expenses),
causes of action, suits, claims, demands or judgments of any na-
ture whatsoever, howsoever caused, arising from (i) any of the
Leased Premises or Adjoining Property or the use, non-use,

-20-

occupancy, condition, design, construction, maintenance, repair or rebuilding of any of the Leased Premises or Adjoining Property, and any injury to or death of any person or persons or any loss of or damage to any property, real or personal, in any manner arising therefrom connected therewith or occurring thereon, whether or not Landlord has or should have knowledge or notice of the defect or conditions, if any, causing or contributing to said injury, death, loss, damage or other claim, (ii) any violation by Tenant of any provision of this Lease, of any contract or agreement to which Tenant is a party, including but not limited to any violation of any Insurance Requirement or Legal Requirement or Permitted Encumbrance, or (iii) any other cause not resulting from the negligence or wilful misconduct of Landlord or its employees.  In case any action or proceeding is brought against Landlord by reason of any such claim, Tenant covenants upon notice from Landlord to resist or defend Landlord in such action, with the expenses of such defense paid by Tenant, and Landlord will cooperate and assist in the defense of such action or proceeding if reasonably requested so to do by Tenant.

The obligations of Tenant under this Paragraph 10 shall survive any termination of this Lease.

-21-

11. <u>Maintenance and Repair</u>.

(a)  Tenant shall at all times, including any Requisi-
tion period, put, keep and maintain the Leased Premises,
including, without limitation, the roof, landscaping, walls and
structural components of the Leased Premises, and the Adjoining
Property, in good repair and appearance and, in the case of the
Equipment, in good mechanical condition, except for ordinary wear
and tear, and shall promptly make all repairs and replacements
(substantially equivalent in quality and workmanship to the orig-
inal work) of every kind and nature, whether foreseen or unfore-
seen, which may be required to  be made upon or in connection
with any of the Leased Premises in order to keep and maintain the
Leased Premises in as good repair and appearance as they were
originally, except for ordinary wear and tear.  Tenant shall do
or cause others to do all shoring of the Leased Premises or Ad-
joining Property or of foundations and walls of the Improvements
and every other act necessary or appropriate for preservation and
safety thereof, by reason of or in connection with any excavation
or other building operation upon any of the Leased Premises or
Adjoining Property, whether or not Landlord shall, by reason of
any Legal Requirements or Insurance Requirements, be required to
take such action or be liable for failure to do so.  Landlord
shall not be required to make any repair, whether foreseen or un-
foreseen, or to maintain any of the Leased Premises or Adjoining

-22-

Property in any way, and Tenant hereby expressly waives the right to make repairs at the expense of the Landlord, which right may be provided for in any law now or hereafter in effect. Tenant shall, in all events, make all repairs for which it is responsible hereunder promptly upon written notice from Landlord, and all repairs shall be in a good, proper and workmanlike manner.

(b) In the event that any Improvement now or hereafter constructed shall encroach upon any property, street or right-of-way adjoining any of the Leased Premises or Adjoining Property, shall violate any Legal Requirements, Insurance Requirements or the provisions of any restrictive covenant affecting any of the Leased Premises, shall hinder or obstruct any easement or right-of-way to which any of the Leased Premises is subject, or shall impair the rights of others in, to or under any of the foregoing, then, promptly after written request of Landlord, Tenant shall either (i) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation, hindrance, obstruction or impairment, whether the same shall affect Landlord, Tenant or both, or (ii) take such action as shall be necessary to remove such encroachment, violation, hindrance, obstruction or impairment including, if necessary, an Alteration. Any such repair or Alteration shall be made in conformity with the provisions of Paragraph 12.

-23-

(c)  If Tenant shall have violated or be in default under any of the provisions hereof, Landlord may do whatever is necessary to cure such violation or default for the account of and at the expense of Tenant.  All sums so paid by Landlord and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) so incurred, together with interest thereon at the Default Rate from the date of payment or incurring the expense, shall constitute Additional Rent payable by Tenant under this Lease and shall be paid by Tenant to Landlord on demand.

(d)  Tenant shall from time to time replace with other operational equipment or parts (the "Replacement Equipment") any of the Equipment (the "Replaced Equipment") which shall have become worn out, obsolete or unusable for the purpose for which it is intended, been taken by a Condemnation as provided in Paragraph 13(d), or been lost, stolen, damaged or destroyed as provided in Paragraph 14.  Tenant shall repair at its sole cost and expense all damage to the Leased Premises caused by the removal of Equipment or Replaced Equipment or other personal property of Tenant or the installation of Replacement Equipment.  All Replacement Equipment shall become the property of Landlord, shall be free and clear of all liens and rights of others and shall become a part of the Equipment as if originally demised herein.

-24-

12.  Alterations.  Except as otherwise provided in this
Paragraph, Tenant shall not make any Alterations which would tend
to impair the value of the Leased Premises, the usefulness or
structural integrity thereof, without Landlord's written consent,
not to be unreasonably withheld.  Notwithstanding the above, Ten-
ant may make non-structural Alterations without the prior written
consent of the Landlord.  In the event that Landlord gives its
prior written consent to any Alterations, or if such consent is
not required, Tenant agrees that in connection with any Altera-
tion (i) the value of the Leased Premises shall not be lessened
by any such Alteration, or its usefulness or structural integrity
impaired, (ii) the Alteration shall not change the general char-
acter of the Improvements, or reduce the gross cubic foot volume
of the Improvements, (iii) all such Alterations shall be per-
formed in a good and workmanlike manner, and shall be expedi-
tiously completed in compliance with all Legal Requirements,
(iv) all work done in connection with any such Alteration shall
comply with all Insurance Requirements, (v) Tenant shall promptly
pay all costs and expenses of any such Alteration, and shall dis-
charge all liens filed against any of the Leased Premises arising
out of the same, (vi) Tenant shall procure and pay for all per-
mits and licenses required in connection with any such Altera-
tion, (vii) all such Alterations, shall be the property of Land-
lord and shall be subject to this Lease, and (viii) all

-25-

Alterations shall be made in the case of any Alteration the esti-
mated cost of which in any one instance exceeds Fifty Thousand
($50,000) Dollars under the supervision of an architect or engi-
neer, reasonably satisfactory to Landlord, in accordance with de-
tailed plans and specifications approved by Landlord, not to be
unreasonably withheld.

    13.  Condemnation.

        (a)  Tenant, immediately upon obtaining knowledge of
the institution of any proceeding for Condemnation, shall notify
Landlord thereof and Landlord shall be entitled to participate in
any Condemnation proceeding at Tenant's expense.  Landlord imme-
diately upon obtaining knowledge of the institution of any pro-
ceeding for Condemnation, shall notify Tenant thereof.  Subject
to the provisions of this Paragraph 13 and Paragraph 15, Tenant
hereby irrevocably assigns to Landlord any award or payment to
which Tenant is or may be entitled by reason of any Condemnation,
whether the same shall be paid or payable for Tenant's leasehold
interest hereunder or otherwise, but nothing in this Lease shall
be deemed to (i)  assign to Landlord any award or payment on ac-
count of Tenant's Trade Fixtures, or other tangible personal
property, moving expenses and similar claims, if available, to
the extent Tenant shall have a right to make a separate claim
therefor against the condemnor or (ii) impair Tenant's right to
any such award or payment so long as such claim is not based upon

-26-

the value of Tenant's leasehold interest, it being agreed, however, that (x) Tenant shall in no event be entitled to any payment for the items specified in clauses (i) and (ii) of this subparagraph (a) if the same shall reduce in any manner the amount of the award which Landlord would have been entitled to receive as a result of such Condemnation had no such payment been made to Tenant and (y) any such amount payable to Tenant shall be subject and subordinate to the amount of the award payable to the holder of the Mortgage, whether or not this Lease shall be prior or subject to the Mortgage.

(b)  If (i) the entire Leased Premises or (ii) any substantial portion of the Leased Premises, the loss of which even after restoration would be substantially and materially adverse to the business operations of Tenant, shall be subject of Taking by a duly constituted authority or agency  having jurisdiction, then Tenant shall, not later than sixty days after Landlord gives Tenant notice that Landlord has received a notice of a Taking or Tenant receives notice of a Taking, give notice to Landlord ("Tenant's Termination Notice") of its intention to terminate this Lease on any Basic Rent Payment Date specified in such notice, which date (the "Termination Date") shall be the later of the first Basic Rent Payment Date after the actual date of the Taking or the effective date of the Taking under the Law of the State.  In the event Tenant shall give such notice to Landlord of

-27-

its intention to terminate this Lease on the Termination Date, Tenant shall, as part of such notice, offer to purchase the Leased Premises and the award or if no part of the Leased Premises shall remain, the entire award for the applicable price computed in accordance with the schedule annexed hereto and marked Exhibit E, plus the amount of the prepayment penalty, if any, that Landlord shall be obligated to pay in connection with the first Mortgage, if any, to which the Leased Premises may then be subject. If Landlord shall not elect to accept Tenant's said offer to purchase, Landlord shall give notice thereof to Tenant within 30 days after the giving of Tenant's Termination Notice. Should said offer to purchase not be accepted by Landlord, this Lease shall be terminated as above provided and the entire award made in the Condemnation proceeding shall be paid to Landlord.

In the event that Landlord shall accept Tenant's offer to purchase within said 30 days after the giving of Tenant's Termination Notice, title shall close and purchase price be paid as hereinafter provided and in such event Tenant shall be entitled to and shall receive any and all awards made in the Condemnation proceeding and Landlord shall assign to Tenant on the Closing Date such award as may be made.

In the event Landlord shall accept Tenant's offer to purchase title shall close thirty (30) days after the Termination Date (the "Closing Date"), at noon at the office of Shushan,

-28-

Meyer, Jackson, McPherson & Herzog in New Orleans, Louisiana, or
at such other time and place as the parties hereto may agree
upon, Tenant shall pay the Purchase Price by transferring immedi-
ately available federal funds to such account or accounts and in
such bank or banks as Landlord shall designate, upon delivery of
a grant deed conveying the Leased Premises and all other required
documents.  The grant deed shall convey a good and clear record
and marketable title, free from encumbrances other than (i) the
items specified in Paragraph 3(a), (ii) liens or encumbrances
created or suffered through or by Tenant failing to observe or
perform any of the terms, covenants or agreements herein provided
to be observed and performed by Tenant, (iii) any installments of
Imposition due and payable after the Closing Date, and (iv) this
Lease.  Such deed shall contain an agreement by grantee to ob-
serve and perform all of the covenants, conditions and restric-
tions contained in any instruments of record which were assumed
by Landlord or deemed to have been assumed by Landlord on its ac-
quisition of title.  The Purchase Price payable as hereinabove
provided shall be charged or credited, as the case may be, on the
Closing Date, to reflect adjustments of Basic Rent paid or pay-
able to the Closing Date, apportioned as of the Closing Date. If
on the Closing Date, there may be any liens or encumbrances which
Landlord is obligated to remove, Landlord shall use reasonable
efforts to remove the same, and the Closing Date shall be

-29-

extended for a reasonable period to permit Landlord to discharge such liens or encumbrances. If by said extended date such liens or encumbrances shall not be removed and such liens or encumbrances shall be subordinate to a Mortgage, Tenant shall purchase the Mortgage from the holder thereof and the Leased Premises shall be conveyed by Landlord to Tenant subject to the Mortgage and in such event the amount payable by Tenant to the holder of the Mortgage shall be deducted from the Purchase Price payable to Landlord. Landlord shall not be obligated to discharge any such lien or encumbrance if Tenant's title insurance company shall issue affirmative insurance to the effect that the same shall not be collected from or enforced against the insured premises. The acceptance of a deed by Tenant shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Landlord to be performed pursuant to the provisions hereof. Tenant shall pay all conveyance, transfer, sales and like taxes required in connection with the purchase. If there be any liens or encumbrances against the Property which Landlord is obligated to remove, upon request made a reasonable time before the Closing Date, Tenant shall provide at the Closing separate funds for the foregoing, payable to the holder of such lien or encumbrances.

(c) In the event of any other Condemnation of any of the Leased Premises which does not result in a termination of

-30-

this Lease,–the Term shall nevertheless continue and Basic Rent
under this Lease, commencing on the date that title shall vest by
reason of such Taking (the "Vesting Date") shall be reduced by an
amount which bears the same proportion to the Basic Rent payable
immediately prior to such Taking as the rental value of the part
of the Leased Premises so taken shall bear to the rental value of
the whole of the Leased Premises immediately prior to such Tak-
ing. In the event of a dispute as to the amount of such reduc-
tion, the issue shall be determined by arbitration in accordance
with the provisions of Paragraph 31 hereof. Until the reduced
Basic Rent is ascertained as aforesaid, Tenant shall pay the
Basic Rent at the rate payable immediately prior to the Taking.
Forthwith, after the reduced Basic Rent has been ascertained,
Landlord shall reimburse Tenant for the difference between the
reduced Basic Rent from the Vesting Date, and the actual Basic
Rent paid by Tenant from the Vesting Date, or Tenant, at its
election, may deduct such difference from the next or any suc-
ceeding installment of Basic Rent and Additional Rent. Subject
to the requirements of Paragraph 15, the Net Award of such Con-
demnation shall be retained by Landlord and, promptly after such
Condemnation, Tenant shall commence and diligently continue to
restore the Leased Premises as nearly as possible to their value,
condition and character immediately prior to such Condemnation,
in accordance with the provisions of this Lease, including but

-31-

not limited-to the provisions of Paragraphs 11(a) and 15 (the "Restoration").

Upon the final payment to Landlord of the Net Award of a Taking which falls within the provisions of this subparagraph (c), Landlord shall make that portion of the Net Award equal to the cost of Restoration, (the "Restoration Award") available to Tenant for Restoration, in accordance with the provisions of Paragraph 15, and the balance remaining shall be the property of Landlord. If Landlord and Tenant can not agree upon the cost of Restoration, the issue shall be determined by arbitration in accordance with the provisions of Paragraph 31 hereof.

In the event of a Requisition of any of the Leased Premises, Landlord shall apply the Net Award of such Requisition, to the extent available, to the installments of Basic Rent, Additional Rent or other sums payable by Tenant hereunder thereafter payable and Tenant shall pay any balance remaining thereafter. Upon the expiration of the Term, any portion of such Net Award which shall not have been previously credited to Tenant on account of the Basic Rent and Additional Rent shall be retained by Landlord.

(d)  Except with respect to an award or payment to which Tenant is entitled pursuant to the provisions of Paragraph 13(a), no agreement with any condemnor in settlement of or under threat of any Condemnation shall be made by either Landlord or Tenant without the written consent of the other.

14.  Insurance.

(a)  Tenant shall maintain at its sole cost and expense
the following insurance on the Leased Premises:

(i)  Insurance against loss or damage to the Im-
provements and Equipment under an All Risk Policy, which shall
include flood insurance and which may contain such exclusions as
may be reasonably acceptable to Landlord, in amounts to prevent
Landlord or Tenant from becoming a co-insurer under the applica-
ble policies, and in any event in amounts not less than the actu-
al replacement cost of the Improvements and Equipment (excluding
footings and foundations and other parts of the Improvements
which are not insurable) as determined from time to time but not
more frequently than once in any 12-month period, at Tenant's ex-
pense, by the insurer or insurers or by an appraiser approved by
Landlord.  Such policies shall contain a replacement cost en-
dorsement and not more than a Fifty Thousand ($50,000) Dollar de-
ductible provision.

(ii)  General public liability insurance against
claims for bodily injury, death or property damage occurring on,
in or about any of the Leased Premises or the Adjoining Property,
which insurance shall be written on a so-called "Occurrence
Basis", and shall provide minimum protection with a combined sin-
gle limit in an amount not less than the greater of (x) Thirty
Million ($30,000,000) Dollars (or in such increased limits from

-33-

time to time to reflect declines in the purchasing power of the dollar as Landlord may reasonably request) or (y) the aggregate amount of such insurance carried by Tenant and Guarantor, for bodily injury, death and property damage in any one occurrence. Policies for such insurance shall be for the mutual benefit of Landlord, Tenant and any Lender.

(iii)  Worker's compensation insurance covering all persons employed in connection with any work done on or about any of the Leased Premises for which claims for death or bodily injury could be asserted against Landlord, Tenant or the Leased Premises.

(iv)  During periods of war or national emergency, war risk insurance in an amount not less than the actual replacement cost of the Improvements and Equipment (excluding footings and foundations and other parts of the Improvements which are not insurable), when and to the extent obtainable from the United States Government or an agency thereof.

(v)  Insurance against loss or damage from explosion of any steam or pressure boilers or similar apparatus located in or about the Improvements in an amount not less than the actual replacement cost of the Improvements and Equipment (excluding footings and foundations and other parts of the Improvements which are not insurable);

-34-

_ (vi)  Such additional and/or other insurance with respect to the Improvements and in such amounts as at the time is customarily carried with respect to improvements similar in character, location and use and occupancy to the Improvements then comprising the Leased Premises or as may be required by the holder of the Mortgage with respect to the Improvements;

(b)  During such time as Tenant named herein holds the Tenant's interest in this Lease and is not in default hereunder, and, as determined in accordance with generally accepted accounting principles consistently applied, the Tangible Net Worth of Tenant or Guarantor shall be not less than Two Hundred Million ($200,000,000) Dollars and the Working Capital of Tenant or Guarantor shall be not less than One Hundred Million ($100,000,000) Dollars:

(i)  The insurance policies referred to in 14(a)(i) and 14(a)(v) may contain a deductible provision to the extent of Five Hundred Thousand ($500,000) Dollars,

(ii)  Tenant may self-insure the coverages referred to in 14(a)(ii) to the extent of the first Two Million ($2,000,000) Dollars thereof, and

-35-

- (iii)  Tenant may self-insure the coverage re-
ferred to in 14(a)(iii) to the extent of the first One
Million ($1,000,000) Dollars thereof,

provided that the self insurance program referred to in
subdivisions (i), (ii) and (iii) of this section (b) does not vi-
olate any Legal Requirements.  Tenant agrees to forward to Land-
lord, within 120 days after the end of each fiscal year of Guar-
antor, a copy of the annual financial statement of Guarantor, as
certified by an independent certified public accountant, showing
the Tangible Net Worth and Working Capital of Guarantor.

(c)  The insurance required by Paragraph 14(a) shall be
written by companies of recognized financial standing which are
approved by Landlord and are authorized to do an insurance busi-
ness in the State.  Sums due from Tenant in lieu of insurance pro-
ceeds because of such self-insurance programs or deductible pro-
visions shall be treated as insurance proceeds for all purposes
under this Lease.  The insurance policies (i) shall be for a term
of not less than one year, (ii) shall be in amounts sufficient at
all times to satisfy any coinsurance requirements thereof, and
(iii) shall (except for the worker's compensation insurance re-
ferred to in Paragraph 14(a)(iii) hereof) name Landlord, Tenant
and any Lender as insured parties, as their respective interests
may appear.  If said insurance or any part thereof shall expire,

-36-

be withdrawn, become void by breach of any condition thereof by Tenant or become void or unsafe by reason of the failure or impairment of the capital of any insurer, or if for any other reasonable cause said insurance shall become unsatisfactory to Landlord, Tenant shall immediately obtain new or additional insurance satisfactory to Landlord.

(d)  Each insurance policy referred to in clauses (i), (ii), (iv) and (v) of Paragraph 14(a) shall contain standard non-contributory mortagee clauses in favor of any Lender.  Each policy shall provide that it may not be cancelled except after 30 days prior notice to Landlord and any Lender.  Each policy shall also provide that any loss otherwise payable thereunder shall be payable notwithstanding (i) any act or omission of Landlord or Tenant which might, absent such provision, result in a forefeiture of all or a part of such insurance payment, (ii) the occupation or use of any of the Leased Premises for purposes more hazardous than permitted by the provisions of such policy, (iii) any foreclosure or other action or proceeding taken by any Lender pursuant to any provision of the Mortgage upon the happening of an event of default therein, or (iv) any change in title or ownership of any of the Leased Premises.

(e)  Tenant shall pay as they become due all premiums for the insurance required by this Paragraph 14, shall renew or replace each policy, and shall deliver to Landlord and Lender,

-37-

the existing policy and such renewal or replacement policy and
evidence of the payment of the full premium therefor at least
twenty days prior to the expiration date of each policy and if
any such policy be delivered to Lender, Tenant shall deliver to
Landlord a certificate of such policy.  In the event of Tenant's
failure to comply with any of the foregoing requirements of this
Paragraph 14, Landlord shall be entitled to procure such insur-
ance.  Any sums expended by Landlord in procuring such insurance
shall be Additional Rent and shall be repaid by Tenant, together
with interest thereon at the Default Rate, from the time of pay-
ment by Landlord until fully paid by Tenant immediately upon
written demand therefor by Landlord.

      (f) Anything in this Paragraph 14 to the contrary not-
withstanding, any insurance which Tenant is required to obtain
pursuant to Paragraph 14(a) may be the subject of self-insurance
as permitted herein or be carried under a "blanket" policy or
policies covering other properties or liabilities of Tenant, pro-
vided that such "blanket" policy or policies otherwise comply
with the provisions of this Paragraph 14.  In the event any such
insurance is carried under a blanket policy, Tenant shall deliver
to Landlord and Lender a certified copy of those provisions of
the blanket policy that pertain to the Leased Premises to evi-
dence the issuance and effectiveness of the policy, the amount
and character of the coverage with respect to the Leased Premises

-38-

and the presence in the policy of provisions of the character re-
quired in the above sections of this Paragraph 14.

(g)  In the event of any casualty loss, Tenant shall
give Landlord immediate notice thereof. Landlord is hereby au-
thorized to adjust, collect and compromise, in its name or in
Tenant's name, all claims under any of the insurance policies re-
quired by this Paragraph 14 (except the public liability and
worker's compensation insurance) and to execute and deliver on
behalf of Tenant all necessary proofs of loss, receipts, vouchers
and releases required by the insurers. Tenant agrees to sign,
upon request of Landlord, all such proofs of loss, receipts,
vouchers and releases. However, if Landlord so elects, Tenant
shall adjust, collect and compromise any and all such claims, and
Landlord shall have the right to join with Tenant therein. Any
adjustment, settlement or compromise of any such claim shall be
subject to the prior written approval of Landlord and any Lender,
and Landlord and any Lender shall have the right to prosecute or
contest, or to require Tenant to prosecute or contest, any such
claim, adjustment, settlement or compromise. All proceeds of any
insurance required under clauses (i), (iv) and (v) of Para-
graph 14(a) shall be payable to a trustee selected by Landlord
and Tenant and reasonably satisfactory to Lender.  If the Leased
Premises shall be covered by Mortgage, Lender, if it so desires,
shall be the trustee. Each insurer is hereby authorized and

-39-

directed to make payment under said policies, including return of
unearned premiums, directly to such trustee instead of to Land-
lord and Tenant jointly; and Tenant hereby appoints such trustee
as Tenant's attorney-in-fact to endorse any draft therefor.

In the event of any casualty (whether or not insured
against) resulting in damage to the Leased Premises or any part
thereof, the Term shall nevertheless continue and there shall be
no abatement or reduction of Basic Rent, Additional Rent or any
other sums payable by Tenant hereunder, except as hereinafter in
Paragraph 14(h) specifically provided.  The Net Proceeds of such
casualty shall be retained by the above-mentioned trustee and,
promptly after such casualty, Tenant, as required in Para-
graph 11(a), shall commence and diligently continue to perform
the Restoration to the Leased Premises  Upon the final payment to
the trustee of such Net Proceeds, the trustee shall make the Net
Proceeds available to Tenant for restoration, in accordance with
the provisions of Paragrah 15(a).  Tenant shall, whether or not
the Net Proceeds are sufficient for the purpose, promptly repair
or replace the Improvements and Equipment in accordance with the
provisions of Paragraph 11(a) and the Net Proceeds of such loss
shall thereupon be payable to Tenant, subject to the provisions
of Paragraph 15 hereof.

(h)  If the Leased Premises are damaged to the extent
of 50% or more of the value thereof within such time as less than

-40-

three (3) years remain in any Term, Tenant shall have no obliga-
tion to restore the Leased Premises if (i) it shall give notice
to Landlord of its intent not to so restore not later than ninety
(90) days after such casualty, and (ii) Tenant is not then in de-
fault in the observance or performance of any of the provisions
of this Lease on the part of Tenant to be observed or performed,
and in such event all Net Proceeds payable in connection with
such casualty, including the hereinafter defined "Tenant Insur-
ance Payment". shall be delivered to Landlord, and the Term of
this Lease shall terminate upon such payment and payment of all
sums otherwise due and payable by Tenant hereunder through the
Basic Rent Payment Date stated in Tenant's notice (the "Casualty
Termination Date").  In the event that any damage or destruction
shall be subject to the deductible and/or self insurance provi-
sions provided for in 14(a)(i), 14(b)(i), 14(b)(ii) and/or
14(b)(iii), Tenant shall pay to Landlord the amount of the pro-
ceeds that would have been payable had the policy or policies not
contained such deductible and/or self insurance provision (the
"Tenant Insurance Payment").  In the event that Landlord shall
dispute whether the damage is so extensive as to vest the afore-
said option to terminate this Lease, such dispute shall be deter-
mined by arbitration in accordance with the provisions of Para-
graph 31 hereof.  Any notice given by Tenant to Landlord under
this Paragraph 14(h) shall be of no force or effect if (x) any

-41-

Event of Default has occurred or (y) the cost of restoration of
such damage or destruction exceeds the aggregate of the Net Pro-
ceeds payable to Landlord under insurance policies required to be
carried by Tenant under the provisions of this Paragraph 14, and
Tenant Insurance Payment.

Notwithstanding anything to the contrary hereinabove
contained, if, prior to the Casualty Termination Date, Landlord
or the trustee shall not have received the full amount of Net
Proceeds and Tenant Insurance Payment payable by reason of the
Casualty, the Casualty Termination Date shall automatically be
extended to the first Basic Rent Payment Date after receipt by
Landlord of the full amount of the Net Proceeds and Tenant In-
surance Payment. Such extension shall occur regardless of the
reason for the failure of either trustee or Landlord to receive
the full amount of the Net Proceeds and Tenant Insurance Payment
prior to the originally stated Casualty Termination Date and
Landlord shall have the right to contest the amount of any Net
Proceeds and Tenant Insurance Payment.

15. Restoration.

(a) In the event that Net Proceeds or a Restoration
Award are made available by Landlord or Tenant for the Restora-
tion of any of the Leased Premises, the trustee shall disburse
such proceeds or award only in accordance with the following con-
ditions:

-42-

(i) Prior to commencement of the Restoration, the architects, contracts, contractors, plans and specifications for the Restoration shall have been approved by Landlord, which approval shall not be unreasonably withheld.

(ii) At the time of any disbursement, no Event of Default shall exist and no mechanics' or materialmen's liens shall have been filed and remain undischarged.

(iii) Disbursements shall be made from time to time in an amount not exceeding the cost of the work completed since the last disbursement upon receipt of (1) satisfactory evidence, including architects' certificates of the stage of completion, of the estimated cost of completion and of performance of the work to date in a good and workmanlike manner in accordance with the contracts, plans and specifications, (2) waivers of liens, (3) contractors' and subcontractors' sworn statements, (4) a satisfactory bring down of title insurance, and (5) other evidence of cost and payment so that Landlord can verify that the amounts disbursed from time to time are represented by work that is completed in place and free and clear of mechanics' lien claims.

(iv) Each request for disbursement shall be accompanied by a certificate of Tenant, signed by the President or any Vice President of Tenant, describing the work for which payment is requested, stating the cost incurred in connection

-43-

therewith and stating that Tenant has not previously received payment for such work and the certificate to be delivered by Tenant upon completion of the work shall, in addition, state that the work has been completed and complies with the applicable requirements of this Lease.

(v)  The trustee may retain ten percent of the restoration fund until the restoration is fully completed.

(vi)  The restoration fund shall be kept in a separate interest-bearing account by the trustee.

(vii)  At all times the undisbursed balance of the restoration fund held by trustee shall be not less than the cost of completing the Restoration, free and clear of all liens.

In addition, prior to commencement of Restoration and at any time during Restoration, if the estimated cost of Restoration, as reasonably determined by Landlord, exceeds the amount of the Net Proceeds or the Restoration Award available for such Restoration, the amount of such excess shall be paid by Tenant to the trustee to be added to the Restoration fund. Any sum in the Restoration fund added by Tenant which remains in the Restoration fund upon the completion of Restoration shall be returned to Tenant. For purposes of determining the source of funds with respect to the disposition of funds remaining after the completion of Restoration, the Net Proceeds or the Restoration Award shall be deemed to be disbursed prior to any amount added by Tenant.

-44-

(b)  In the event that there are funds not added by Tenant remaining undisbursed upon completion of restoration and full payment therefor (the "Remaining Sum") then such sum shall be credited to Basic and Additional Rent subsequently accruing hereunder.

16.  Subordination to Financing.

(a)  Tenant agrees that this Lease shall at all times be subject and subordinate to the lien of any Mortgage, and Tenant agrees, upon demand, without cost, to execute instruments as may be required to further effectuate or confirm such subordination.  So long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this Lease, Tenant's tenancy shall not be disturbed, nor shall this Lease be affected by any default under such Mortgage, and in the event of a foreclosure or other enforcement of any such Mortgage, or sale in lieu thereof, the purchaser at such foreclosure sale shall be bound to Tenant for the term of this Lease and any extensions thereof, the rights of Tenant hereunder shall expressly survive, and this Lease shall in all respects continue in full force and effect so long as Tenant fully performs all of its obligations hereunder.  Tenant shall not be named as a party defendant in any such foreclosure suit, except as may be required by law.

-45-

(b)  Notwithstanding the provisions of subdivision (a) of this Paragraph 16, the holder of the Mortgage to which this Lease is subject and subordinate, as provided in said sub-division (a), shall have the right, at its sole option, at any time, to subordinate and subject the Mortgage, in whole or in part, to this Lease by recording a unilateral declaration to such effect.

(c)  At any time prior to the expiration of the Term, Tenant agrees, at the election and upon demand of any owner of the Leased Premises, or of the holder of the Mortgage on the Leased Premises, to attorn, from time to time, to any such owner or holder, upon the then executory terms and conditions of this Lease, for the remainder of the term originally demised in this Lease and for any renewal term, provided that such owner or hold-er as the case may be, shall then be entitled to possession of the Leased Premises subject to the provisions of this Lease.  The provisions of this subdivision (c) shall enure to the benefit of any such owner or holder, shall apply notwithstanding that, as a matter of law, this Lease may terminate upon the foreclosure of the Mortgage, shall be self-operative upon any such demand, and no further instrument shall be required to give effect to said provisions.  Tenant however, upon demand of any such owner or holder agrees to execute, from time to time, instruments in con-firmation of the foregoing provisions of this subdivision (c),

-46-