**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**NOTICE OF FILING**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors in possession, give notice of filing the attached Response of Skadden, Arps, Slate, Meagher & Flom LLP to the Stuart, Maue, Mitchell & James, Ltd. Final Report of the Review and Analysis of First Interim Application of Skadden, Arps, Slate, Meagher & Flom LLP.

Dated:  August 18, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By    _s/ D. J. Baker_
        D. J. Baker
        Sally McDonald Henry
        Rosalie Gray

Four Times Square
New York, New York 10036
(212) 735-3000
(917) 777-2150 (facsimile)
djbaker@skadden.com

Co-Counsel for Debtors

SMITH HULSEY & BUSEY

By    _s/ Cynthia C. Jackson_
        Stephen D. Busey
        James H. Post
        Cynthia C. Jackson (FBN 498882)

225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Debtors

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

## RESPONSE OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP TO THE STUART, MAUE, MITCHELL & JAMES, LTD. FINAL REPORT OF THE REVIEW AND ANALYSIS OF FIRST INTERIM APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps"), bankruptcy

counsel for Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and

debtors-in-possession in the above captioned case (collectively, the "Debtors"), submits this

response ("Response") to the Stuart, Maue, Mitchell & James, Ltd. ("Stuart Maue") Final Report

of the Review and Analysis of First Interim Application ("First Application") of Skadden, Arps for

the period February 21, 2005, through April 30, 2005 (the "Report"). In support of this

Response, Skadden, Arps represents as follows:

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**Background**

A.    Chapter 11 Cases

1.    On February 21, 2005 (the "Petition Date"), the Debtors filed petitions under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2.    The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  The Debtors are operating their businesses and managing their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.

3.    The Debtors' bankruptcy cases were one of the 10 largest bankruptcy cases filed in 2005, with approximately $2.2 billion in assets as of the Petition Date.  Turnarounds & Workouts, vol. 20, no. 1, January 15, 2006.  Moreover, over 24,400 filed and scheduled claims were asserted against the Debtors in the aggregate amount of approximately $25 billion.

4.    By final order dated March 15, 2005, Skadden, Arps was authorized to provide services to the Debtors in these cases (the "Retention Order").  The Retention Order authorized Skadden, Arps to be compensated on the terms of its retention agreement, a copy of which is attached at Exhibit A.

5.    On June 29, 2006, the Debtors filed the Disclosure Statement with Respect to Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors as well as their Joint Plan of Reorganization, which were both subsequently amended and filed on August 2, 2006.  On August 4, 2006, this Court approved the Debtors' disclosure statement, as amended, and the Debtors are in the process of soliciting acceptance for their joint plan of reorganization.

B.      Interim Payment Procedures

6.      On March 15, 2005, the Final Order Approving Interim Compensation Procedures for Professionals was entered (the "Interim Payment Order").

7.      Under the Interim Payment Order, professionals may be paid up to 80% of fees earned and 100% of expenses incurred on monthly statements after submission of fee statements to certain parties, including the Debtors and their counsel, the U.S. Trustee, counsel for the creditors' committee and counsel for the Debtors' secured lenders, and after expiration of objection periods.  The remaining 20% of fees are payable, after court approval of interim fee applications.  Interim fee applications are to be submitted approximately every four to six months.

8.      The First Application covered the period from the Petition Date through April 30, 2005, and sought $3,012,628.00 in fees and $144,484.19 in expenses.  The First Application was approved by this Court on August 4, 2005.  The second interim fee application ("Second Application") covered the period from May 1, 2005, through September 30, 2005, and sought $4,158,012.50 in fees and $145,055.82 in expenses.  The Second Application was approved by this Court on December 1, 2005.  The third interim fee application ("Third Application") covered the period from October 1, 2005, through January 31, 2006, and sought $1,903,516.50 in fees and $39,986.18 in expenses.  The Third Application was approved by this Court on April 6, 2006.  The fourth interim fee application ("Fourth Application") covered the period from February 1, 2006, through May 31, 2006, and sought $3,154,861.00 in fees and $59,318.42 in expenses.  The Fourth Application was approved by this Court on August 10, 2006.[2]

---

[2]     The First Application, Second Application, Third Application, and Fourth Application are referred to collectively as the "Fee Applications."

9.      Skadden, Arps has received no objections to its monthly fee statements or to the Fee Applications.  Skadden, Arps has received all amounts under the Fee Applications, except as to the Fourth Application.  Amounts under the Fourth Application are due August 21, 2006.

**Stuart Maue**

10.      By order dated December 14, 2005, this Court approved the Debtors' application to employ and retain Stuart Maue as the fee examiner in these cases (the "Fee Examiner Order").  The Fee Examiner Order includes Stuart Maue's engagement letter and two appendices that set forth, among other things, procedures for professionals to (a) submit monthly statements and fee applications to Stuart Maue and (b) respond to Stuart Maue's written reports.

11.      In accordance with the Fee Examiner Order, Stuart Maue does not make determinations in its written reports as to either (a) the reasonableness or necessity of the requested fees and expenses or (b) the amount of fees and expenses to be allowed or disallowed. Fee Examiner Order ¶ 8.

12.      On March 29, 2006, Skadden, Arps received preliminary written fee reports on the First Application and the Second Application.  On April 28, 2006, Skadden, Arps submitted its written response to those preliminary reports.  On July 19, 2006, the Report was filed with this Court.  This Response addresses the Report on the First Application.

**Preliminary Statement**

13.     As set forth below, the issues raised by Stuart Maue do not preclude approval by this Court of the fees and expenses requested.  Skadden, Arps also notes the substantial voluntary reduction of more than $360,000.00 in fees and $55,000.00 in expenses during the first interim period, as reflected in the First Application.

14.     As an initial matter, Skadden, Arps notes that the Report has not analyzed the difficulty of these cases, the efforts by Skadden, Arps to achieve the Debtors' goals, and the effectiveness of Skadden, Arps' representation.  Skadden, Arps submits that the First Application should be reviewed in the overall context of these cases.

15.     During the period of their representation by Skadden, Arps, the Debtors have made significant progress in these cases.  Skadden, Arps assisted the Debtors in (a) obtaining debtor-in-possession financing for their cases, (b) resolving numerous reclamation claims, PACA claims, and other claims, resulting in savings of millions of dollars for the estates, (c) assisting with the sale of various assets, resulting in millions of dollars in proceeds for the Debtors' estates, and (d) obtaining approval of a disclosure statement and negotiating a reorganization plan.  The services rendered by Skadden, Arps are described in the First Application at 8-33, the Second Application at 7-33, the Third Application at 7-26, and the Fourth Application at 7-33, but not referenced in the Report.

16.     The standard for analyzing fee requests is whether the services rendered to the estates were reasonable and necessary, and not whether, in hindsight, some fee or expense may be questioned.  As one court has recognized:

> [I]t is important for a court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the

5

> professional representation.  It is easy to speculate in retrospect that the
> work could have been done in less time or with fewer attorneys or with an
> associate rather than a partner.  On the other hand, it is also possible that
> [the debtor] would not have enjoyed the success it did had its counsel
> managed matters differently.

In re Boston & Maine Corp., 776 F.2d 2, 10 (1st Cir. 1985) (internal citations and quotations

omitted).  Thus, although the Report, which places weight on statistical and computer-generated

analysis, is informative, the central inquiry is the reasonableness of fees and expenses incurred, in

light of the necessary services performed.  On that basis alone, Skadden, Arps submits that, given

its representation of the Debtors in these cases, no reduction in fees and expenses is warranted,

other than as set forth in this Response.  In support of its position that fee and expense reductions

are not warranted, Skadden, Arps sets forth below its responses to the issues raised by the

Report.

        17.     As indicated in the Report, Stuart Maue utilizes statistical and computer-

generated reports based on its own criteria and the United States Trustee Guidelines (the

"Guidelines"), which contain guidelines for facilitating the review of fee applications.  Skadden,

Arps respectfully submits that computer-generated analysis by its nature cannot determine

whether sufficient information exists to determine whether fees and expenses are reasonable in

light of the services rendered.

        18.     For example, Stuart Maue identifies, at times, certain entries that it states

do not follow technical billing guidelines.  Skadden, Arps notes that the purpose of the fee

application is "to enable the court to reach an informed decision – one necessarily grounded in

complete, coherent information – as to whether the requested compensation is justified."  In re

Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 845 (3d Cir. 1994).  Thus, even an allegedly

technically deficient entry should be approved so long as there is adequate information to permit

the Court to determine the reasonableness of the activity described.  Skadden, Arps submits that
its time entries meet this standard.

19.    In the preliminary report on the First Application, Skadden, Arps identified
many instances where one time entry with a corresponding fee amount was included in multiple
categories by Stuart Maue and subsequently included in the preliminary Report's identification of
fees at issue multiple times.  Skadden, Arps requested Stuart Maue to indicate at the beginning of
the Report the total amount of fees at issue without counting any single time entry more than
once.  Stuart Maue has included a chart in the Report's Summary of Findings titled "Adjustment
to Eliminate Overlap Between Categories."  Notwithstanding inclusion of this chart, the Report
still includes individual time entries in multiple categories, thereby double-counting numerous time
entries.

20.    Moreover, Stuart Maue has identified time entries in which the Skadden,
Arps timekeeper was attempting to preserve privileged or otherwise confidential information,
including case strategy.  Ordinarily in a non-bankruptcy context, attorney fee statements reflect
confidential communications from attorneys to their clients and may reveal the attorney's thought
processes and strategy in pending matters.  Because fee statements are a matter of public record
in a bankruptcy case, attorneys must sometimes draft fee statements in order to protect litigation
strategy, settlement communications, and other work product.  Skadden, Arps attempts to ensure
that its clients' privileged or confidential information and case strategy remain confidential.
Skadden, Arps should not be subject to fee reductions for time entries that are worded in order to
protect such information.

21.    Lastly, as indicated above, Stuart Maue submitted a preliminary report on
the First Application.  The initial report was similar in form and substance to the Report.

Skadden, Arps responded to the initial report and believes that the information submitted to Stuart Maue resolves substantially all of the issues raised in the Report.

**Report**

22.    The balance of this Response will track the substantive portions of the Report as to both fees and expenses.

**Fees**

A.    Recomputation of Fees and Expenses

23.    The Report reflects that the amount requested in the First Application was $5,593.75 less than the amounts computed by Stuart Maue.  Report at 4.  As indicated in the First Application, Skadden, Arps is not seeking compensation for the $5,593.75 identified by Stuart Maue.[3]

24.    The Report also acknowledges that Skadden, Arps voluntarily reduced fees relating to non-working travel time by $28,283.00.  Report at 4.  Such reduction is part of the $360,000.00 fee reduction previously described.

25.    The Report reflects that there was no difference between the amount of expenses requested by Skadden, Arps and the amount of expenses computed by Stuart Maue. Report at 4.

B.    Potential Inadvertent Double Billing/Duplicative Entries

26.    The Report identifies three timekeepers who may have inadvertently double billed three time entries.  See Report at 6; Report Exhibit B at 1.  The entries in question total 0.90 hours with $211.00 in associated fees.  Report at 6.

---

[3]    The First Application disclosed that Skadden, Arps discovered discrepancies in the time records after submission of monthly fee statements and that the firm was not seeking compensation for such services.  First Application at 7, n.12.

27.    Skadden, Arps reviewed the entries involved.  Two entries involved an inadvertent duplication.  The two entries total 0.40 hours with $166.00 in associated fees. Skadden, Arps will reduce its fees by an additional $166.00.

C.    <u>Missing Task Description</u>

28.    The Report identifies one time entry that does not contain a description. Report at 6-7.  As the Report suggests, the description for services rendered on April 28, 2005, for 0.20 hours, by T. Matz, was inadvertently omitted.  The omitted description of "Work on resolution of Ibertrade claim" is consistent with Mr. Matz's other time entries for work on reclamation matters.

D.    <u>Timekeepers and Positions</u>

29.    The Report (a) identifies 43 timekeepers for the interim period consisting of 7 partners, 4 counsel, 21 associates, and 11 paraprofessionals and (b) indicates that Skadden, Arps billed 6,882.85 hours for the first interim period.  Report at 7-8.  The following chart is contained in the Report:

| Job Class | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner | 1,139.55 | 17% | $  864,606.25 | 29% |
| Counsel | 1,193.60 | 17% | 638,576.00 | 21% |
| Associate | 3,587.95 | 52% | 1,403,118.75 | 46% |
| Paraprofessional | 961.75 | 14% | 111,920.75 | 4% |
| **TOTAL** | 6,882.85 | 100% | $ 3,018,221.75 | 100% |

<u>Id.</u> at 8.

30.    The Winn-Dixie cases are large, complex chapter 11 cases.  Indeed, the cases are the largest chapter 11 cases pending in this district, and among the largest filed in the United States in 2005.  As stated in the First Application, the cases involve "24 estates, thousands of creditors, shareholders and other parties in interest and billions of dollars in assets and claims." First Application at 29.  Skadden, Arps believes that all timekeepers for the interim period

9

performed necessary services.  Indeed, in these cases, the Debtors have approved more than 50

Skadden, Arps timekeepers to perform services for the estates.

31.     Skadden, Arps submits that these cases have been, and continue to be,

appropriately staffed.  As shown in the above chart, approximately two-thirds of the services in

the interim period were completed by associates and paraprofessionals.  The blended hourly rate

for Skadden, Arps' professionals is $438.51, as stated in the Report.  Report at 8.

32.     As explained in the First Application, Skadden, Arps' services have been

necessary for the Debtors and their estates.  First Application at 6.  Moreover, Skadden, Arps'

services during the interim period helped to generate millions of dollars in proceeds and savings

for the Debtors during the interim period.  For example, Skadden, Arps' services during the first

interim period assisted the Debtors in receiving over $32 million in proceeds from the sale of

assets.  Id. at 9.

E.     Hourly Rate Increases

33.     The Report identifies hourly rate increases for three timekeepers during the

interim period as follows:

| Name | Position | Minimum Rate | Maximum Rate | Percentage of Rate Increase | Hours Computed | Fees Computed | Fees at Minimum Rate | Fees Attributable to Rate Increase |
|---|---|---|---|---|---|---|---|---|
| Sambur, K. | Associate | $265.00 | $295.00 | 11% | 428.30 | $119,559.50 | $113,499.50 | $6,060.00 |
| Paoli, J. | Associate | $265.00 | $295.00 | 11% | 249.95 | $70,432.25 | $66,236.75 | $4,195.50 |
| Horwitz, M. | Associate | $265.00 | $295.00 | 11% | 203.50 | $56,228.50 | $53,927.50 | $2,301.00 |
| | | | | | | | Total | $12,556.50 |

Report at 9.

34.     Skadden, Arps' hourly rates are subject to periodic increases for all clients.

Hourly rate increases were disclosed to the Debtors and became public information in the

retention application of Skadden, Arps and the First Application.  See, e.g., First Application at v.

35.     As set forth in the First Application, hourly rates for first year associates increased on the later of April 1, 2005, or the date on which they passed the Bar examination. First Application at v.  All three attorneys noted above were first year associates during the interim period who passed the July 2004 Bar examination.  Accordingly, their hourly rates were increased on April 1, 2005.

36.     These rate increases are consistent with rate increases for Skadden, Arps' bankruptcy and non-bankruptcy clients.  Skadden, Arps believes the rate increases are reasonable.

F.      Time Increments

37.     Stuart Maue states that some of Skadden, Arps' time entries were billed in increments other than tenths of an hour.  Report at 10.  Stuart Maue asserts entries total 67.30 hours with $31,598.00 in associated fees.  Id.  With respect to these entries, Skadden, Arps believes that a fee reduction of $898.25 is appropriate for the reasons noted below.

38.     Section b(4)(v) of the Guidelines provides that time entries should be in time periods of tenths of an hour.  Substantially all of the time recorded for the interim period is billed in tenths of an hour.  The Report lists seven non-bankruptcy professionals who recorded time entries in increments other than tenths of an hour.  Report Exhibit D at 1.

39.     Certain of the time entries are recorded in more specific time increments than tenths of an hour.  For example, the Report identifies the following entries:

T/C WITH K. HARDEE RE LIBERTY MUTUAL L/C (.35)

T/C WITH B. WALSH AND S. FELD RE ENTERGY (.35)

COORDINATE UCC SEARCHES (.25)

MEETING WITH S. HENRY RE TAMPA ELECTRIC (.35)

Report Exhibit D at 3, 5.

40.     Skadden, Arps believes that its time entries are sufficiently detailed for purposes of analyzing the services rendered, but will round down the identified time entries to the nearest tenth of an hour.  The rounding down of the time entries will result in a fee reduction of $898.25.

G.     Vaguely Described Conferences

41.     The Report identifies conferences and meetings that either did not identify the participants or did not specify the subject matter or purpose of the communication.  Report at 11-12.  Stuart Maue asserts that such entries total 90.74 hours with $46,753.23 in associated fees. Id. at 12.

42.     In large cases, there are often days with numerous calls from various claimants and other parties in interest.  Considerable time is spent listening to messages, returning calls and otherwise trying to address inquiries raised by the calls.  Certain entries identified by Stuart Maue involve circumstances discussed above in which the timekeeper was responding to numerous creditor calls, and the timekeeper did not specifically identify each caller.  For example, L. Bonachea's time on March 14, 2005, reads:

> RESPOND TO VARIOUS PHONE CALLS RE:  FILING
> PROOFS OF CLAIMS (.3)

Report Exhibit E-1 at 6.  Ms. Bonachea, a paraprofessional, was responsible for responding to correspondence and telephone inquiries in these cases.  Skadden, Arps submits that it would be impracticable to record every participant of every call in these cases, or in any large, complex case where there are numerous creditors and parties in interest placing what are often very brief calls.

43.     While the time entries identified in the Report do not, at times, identify both the participants and the subject matter of the conference, this should not create an impediment to a meaningful review of Skadden, Arps' time.  In many instances, a review of the

complete entry makes it clear what was done.  For example, P. Neckles' time on March 2, 2005, reads:

> WORK ON ISSUES ASSOCIATED WITH DIP
> LEASEHOLD COLLATERAL;
> <u>CONFERENCES WITH J. HELFAT</u>;
> REVIEW CORRESPONDENCE

Report Exhibit E-1 at 3.  Mr. Neckles is a Skadden, Arps banking partner.  Mr. Neckles recorded time for his services in the Financing (DIP and Emergence) matter category.  The above entry shows that Mr. Neckles spent time working on leasehold collateral issues and speaking with Mr. Helfat, counsel for the Debtors' secured lender.  There would not appear to be a significant question that could be raised regarding this time entry.

44.     Further, the Report identifies certain entries as being vague that, in fact, appear to be reasonably detailed.  For example, a portion of T. Matz's time on March 11, 2005, reads:

> FOLLOW UP WORK ON PACA REQUEST (1.2);
> <u>CALLS WITH P. GRANNIS (.7)</u>
> AND L. MANDEL (.3) RE: SAME;

Report Exhibit E-1 at 5.  The underlined portion is identified as a flawed entry in the Report.  Mr. Matz's entry on March 11, 2005, reflects that Mr. Matz had separate calls with P. Grannis and L. Mandel regarding PACA issues.  Since the word "same" refers to "PACA," the entry should not be characterized as vague.

45.     Additionally, Stuart Maue identifies time entries (such as the one discussed above) that Skadden, Arps believes are proper when viewed in the context of the matter category in which they were entered.  Specifically, to facilitate the fee review process by the Court,

Skadden, Arps employed forty-one discrete matter categories.[4]  Skadden, Arps submits that many entries are not questionable when read in the context of matter categories.  Indeed, certain timekeepers performed services in only one of the forty-one categories, and the services are discussed in the First Application.

46.    Notwithstanding the above, Skadden, Arps has reviewed identified entries in Report Exhibit E-1.  Attached at Exhibit E-1 are revised task descriptions with additional detail.  Revised entries were provided to Stuart Maue in response to Stuart Maue's comments on the preliminary report on the First Application.

47.    In the Report, Stuart Maue states that the additional detail provided by Skadden, Arps "clarified most of the entries and those entries would no longer be considered vaguely described conferences."  Report at 12.

H.    Vaguely Described "Work On," "Attention to," and "Diligence" Activities

48.    The Report identifies entries that describe the activity performed with the phrases "work on," "attend to," "attention to," "diligence" or "follow up."[5]  Report at 12.  Stuart Maue asserts that such entries total 234.38 hours with $124,833.25 in associated fees.  Id. at 13.

49.    Stuart Maue states that the above phrases generally do not provide sufficient detail to determine the actual task that is being performed and that use of the word "issues" followed by the above phrases cause entries to become even less specific.  Id. at 12-13. The Guidelines, however, do not define any of the above terms as being either vague or noncompensable.

---

[4]    The forty-first matter category was implemented later in these cases for fee examiner matters.

[5]    The Report contains an additional identified term of "work."  See, e.g., Report Exhibit E-2 at 7.

50.    Most of the entries identified by Stuart Maue because of the use of the word "diligence" were made by one timekeeper.  If the timekeeper had used another term or omitted the term, Skadden, Arps believes the entry would not have been categorized as vague. For example, the time entry of D. Turetsky on March 10, 2005, reads:

> DILIGENCE RE:  HEARING REQUIREMENT WITH
> RESPECT TO OBJECTIONS FILED IN CONNECTION
> WITH LEASE REJECTION MOTION (0.1)

Report Exhibit E-2 at 12.  Had the entry read "research hearing requirement with respect to objections filed in connection with lease rejection motion (0.1)", it presumably would not have been included in the Report.  Accordingly, Skadden, Arps does not believe that the use of the term "diligence" rendered the entries vague.

51.    Likewise, in virtually all instances where a timekeeper used the term "work," "work on," "follow up" or "attend," the entry would not have been described as vague if a different verb had been utilized.

52.    Skadden, Arps does not believe that the entries identified in the Report create an impediment to a meaningful review of the services provided.  In addition, the narrative descriptions set out in the First Application provide a sufficient level of context for determining whether the services rendered were reasonable given the issues addressed and the amounts requested.

53.    Notwithstanding the above, Skadden, Arps has reviewed identified entries in Report Exhibit E-2.  Attached at Exhibit E-2 are revised task descriptions with additional detail.  Revised entries were provided to Stuart Maue in response to Stuart Maue's comments on the preliminary report on the First Application.

54.    In the Report, Stuart Maue states that the additional detail provided by Skadden, Arps "clarified most of the entries and those entries would no longer be considered vaguely described." Report at 14.

I.    Other Vaguely Described Activities

55.    The Report identifies certain other task entries that Stuart Maue believes are vague. See Report at 14-15. Stuart Maue asserts that such entries total 95.27 hours with $53,374.25 in associated fees. Id. at 15. Stuart Maue states:

> Activity descriptions for the review of documents and correspondence should identify the person or party who prepared the document or correspondence and its subject-matter. If the documents were not recently received or were previously reviewed, the description should also state the purpose of the review.
>
> Activity descriptions must also sufficiently describe the preparation of work product. A description of correspondence should identify the correspondent and the subject or purpose of the correspondence. Similarly, a description for preparation of pleadings should identify the pleading drafted or revised.
>
> Activity descriptions for legal research should include the issues researched and the purpose of the research. The activity description must be sufficiently detailed to allow a determination of whether the research is case-related, whether the research is presumably familiar to experienced professionals, or whether research is being performed by a professional with an appropriate experience level. A few of the Skadden Arps' activity descriptions for legal research stated only "reading case law."

Id. at 14-15.

56.    Nothing in the entries identified in the Report would prevent meaningful review of Skadden, Arps' services. The narrative descriptions set out in the First Application provide a sufficient level of context for determining whether the services rendered were reasonable given the issues addressed and the amounts requested – particularly when evaluated in the context of the facts and circumstances surrounding these chapter 11 cases and other time entries.

16

57.    Indeed, substantially all of the time entries in the First Application do, in fact, reasonably describe the activity performed.  The following entries, for example, are identified in the Report:

> ASSIST WITH NOTICE, SERVICE AND FILING
> ISSUES ON PROFESSIONAL RETENTION
> APPLICATIONS BEING FILED TODAY (0.2)
>
> FURTHER ASSIST WITH BAIN RETENTION ISSUES (0.3)
>
> ASSIST WITH SETOFF NOTE FOR SCHEDULE F (.2)

Report Exhibit E-3 at 15, 16, 22.  These entries reasonably describe the services rendered, particularly when read in context of the complete description for the timekeeper.  Report Exhibit E-3 included nearly forty entries that contain the word "assist," but Skadden, Arps believes that all of such entries are reasonably descriptive of the services rendered.

58.    Stuart Maue also described entries as vague where the entry contained the term "same."  The entries in question refer to the immediately preceding time entries of the timekeeper.  That fact, when considered with the identified entry, provides sufficient detail to allow an assessment of the services rendered.  For example, Stuart Maue identifies the following entries as vague:

> TELEPHONE CONFERENCE WITH L. MCPHERSON
> RE:  AFCO (.1);
> DRAFT CORRESPONDENCE TO AND REVIEW
> CORRESPONDENCE FROM L. MCPHERSON RE:
> SAME (.1);
> ADDRESS ISSUES RELATED TO SAME (.2);
> CONFERENCE WITH S. HENRY RE: SAME (.1);
> DRAFT CORRESPONDENCE TO M. BARR AND J.
> STERN RE: SAME (.1);
> ADDRESS ISSUES RE:  SAME (.1)

Report Exhibit E-3 at 29.  The underlined entries are the entries identified as being vague.  The

nature of the services can be ascertained, however, from reading the timekeeper's complete entry

for the day in issue, however.  See id.

59.    Additionally, had timekeepers omitted the term "issues" from their entries,

the entries would appear to be otherwise acceptable.  The following entries, for example, are

identified in the Report:

> ASSIST WITH MASTER SERVICE LIST ISSUES (0.1)
>
> ADDRESS ISSUES RELATED TO 502(B)(6) CAP ISSUES FOR
> STORE LOCATION 582 (.3)
>
> ADDRESS VENUE CHANGE ISSUES (.4)
>
> ADDRESS ISSUES RE:  ADJOURNMENT OF HEARING (.1)
>
> ADDRESS SERVICE ISSUES RELATED TO 365(D)(4) BRIDGE
> ORDER (.1)
>
> ASSIST WITH EXTRANET ISSUES (.1)
>
> ASSIST WITH NOTICING ISSUE ON AMERICAN KB MOTION (.1)
>
> ADDRESS CALENDARING ISSUES RE:  RECLAMATION
> DEADLINES (.1)

Report Exhibit E-3 at 2, 12, 20, 23, 27, 30, 31 and 33.  The above entries and other entries

identified in the Report reasonably describe the services performed.

60.    Notwithstanding the above, Skadden, Arps has reviewed identified entries

in Report Exhibit E-3.  Attached at Exhibit E-3 are revised task descriptions with additional

detail.  Revised entries were provided to Stuart Maue in response to Stuart Maue's comments on

the preliminary report on the First Application.

61.     In the Report, Stuart Maue states that the additional detail provided by Skadden, Arps "clarified most of the entries and those entries would no longer be considered vaguely described."  Report at 16.

J.     Blocked Entries

62.     The Report identifies entries that have a single time increment for more than one activity.  Report at 16.  Stuart Maue asserts that entries of this type total 435.65 hours with $221,549.25 in associated fees.  Id.

63.     Skadden, Arps has reviewed the time entries from the Report and believes that the reasonableness of substantially all of the entries identified in the Report can be ascertained.  For example, S. Toussi's time for March 16, 2005, reads:

> CONFERENCE CALL WITH PACA COUNSEL TO
> NEGOTIATE FINAL PACA ORDER, REVISE AND
> DISTRIBUTE PACA ORDER AS PER CONFERENCE
> CALL (1.5)

Report Exhibit F at 12.  Here, the timekeeper engaged in a conference call to negotiate the PACA Order, made revisions to the order, and then distributed the order in accordance with an agreement reached on the conference call.  This entry is sufficiently descriptive to determine the reasonableness of services provided, inasmuch as the entry describes the subject matter and nature of the timekeeper's work.  There are many other instances identified by Stuart Maue where the services rendered can be readily assessed from a review of the time entry.

64.     Further, the Report identifies as blocked entries certain tasks that by their nature take significant time to complete and may inherently include a sub-task.  For example, S. Henry's time for March 30, 2005, reads:

> ATTEND COURT HEARING, INCLUDING MEETINGS
> WITH MATT BARR, REPRESENTATIVES OF MOLINARO
> AND MAJESTIC; CONDUCT AUCTION; (1.4)

19

Report Exhibit F at 18.  As indicated in this time entry, Ms. Henry appeared at a court hearing in

connection with an auction and also engaged in discussions with other parties who were attending

the hearing and related auction.[6]  Had Ms. Henry written "attend court hearing on auction (1.4),"

this entry would not be in the Report.

65.     Skadden, Arps' time detail reflects other similar entries.  For instance, Mr.

Neckles' time on February 23, 2005, reads:

> PREPARE FOR HEARING ON INTERIM DIP
> FINANCING ORDER; REVIEW DOCUMENTS (2.5)

Report Exhibit F at 3.  If the time entry merely provided "review documents in preparation for

DIP hearing (2.5)," Skadden, Arps believes the time entry would be considered accurate and

would not have been identified as blocked billed.

66.     Attorneys should not be penalized for providing the Court with more detail

than required.  Otherwise, paradoxically, the more detailed the description, the less likely that the

services will be compensated.  The above time entries taken from Report Exhibit F are accurate

and provide the Court with more information than is required under any reasonable interpretation

of the Guidelines.

67.     Certain time entries in this category relate to one task and cannot readily be

broken down into subtasks.  For instance, Mr. Baker's time entry on March 21, 2005, reads:

> FINAL PREPARATION FOR MEETING WITH
> CREDITORS COMMITTEE, INCLUDING PRE-
> MEETING WITH MANAGEMENT AND REVIEW OF
> PRESENTATION TO BE MADE TO COMMITTEE (2.8)

Report Exhibit F at 13.  If the entry had provided "final preparation for meeting with creditors

committee (2.8)," Skadden, Arps believes the entry would not have been identified as containing

---

[6]     Over $15 million was realized from the sale of the airplane at the auction conducted by Ms. Henry.

blocked billing, even though the entry would then contain less information than the actual entry set forth. Here, Mr. Baker was preparing for a meeting with the creditors committee, and, in doing so, was meeting with members of management.

68.    Notwithstanding the above, Skadden, Arps has reviewed identified entries in Report Exhibit F. Attached at Exhibit F are revised task descriptions with additional detail. Revised entries were provided to Stuart Maue in response to Stuart Maue's comments on the preliminary report on the First Application.

69.    In the Report, Stuart Maue states that "revised task descriptions with the added time increments would no longer be considered blocked billing." Report at 17.

K.    Intraoffice Conferences

70.    The Report identifies entries that describe intraoffice conferences. Report at 17-18. Stuart Maue asserts that such entries total 202.68 hours with $107,334.00 in associated fees. Report at 18. According to Stuart Maue, of this amount, 46.17 hours with $27,324.00 in associated fees involved two or more Skadden, Arps timekeepers billing for the conference or meeting in issue. Id.

71.    Skadden, Arps timekeepers admittedly confer with one another in rendering services to the Debtors. It would be impossible to administer chapter 11 cases efficiently without intraoffice conferences. The Guidelines do not, however, prohibit compensation for intraoffice conferences. Instead, the Guidelines provide that conferences should identify the participants and the subject matters, and this has been done at Exhibit E-1.

72.    Bankruptcy courts have recognized the importance of multiple attorneys working together. See, e.g., In re Boston & Maine Corp., 776 F.2d 2, 7-8 (1st Cir. 1985) (holding that it is appropriate to have multiple attorneys working on large, complex tasks).

73.     Skadden, Arps respectfully submits that its level of intraoffice conferences was appropriate in view of the complexity of these cases and that, as a result, the requested compensation is reasonable.  The ability of professionals at Skadden, Arps to confer internally among themselves, often involving professionals from different practice areas (such as banking, corporate, employee, insurance, or litigation), has contributed to the expeditious resolution of numerous issues in these cases.  In turn, this has resulted in significant benefits for the Debtors' estates and their creditors.

L.     Nonfirm Conferences, Hearings, and Other Events

74.     The Report identifies instances where two or more Skadden, Arps professionals or paraprofessionals attended the same hearing, meeting or other event.  Report at 18.  Stuart Maue asserts that such entries total 420.14 hours with $250,192.04 in associated fees. Id. at 19.  According to Stuart Maue, of this amount, 255.36 hours with $134,833.79 in associated fees involved two or more Skadden, Arps timekeepers billing for the conference or meeting in issue.  Id.

75.     Cases as large and complex as these cases require the services of professionals in multidisciplinary areas, such as banking, corporate, employee, insurance, litigation and tax law.  See First Application at 30, Second Application at 30, Third Application at 24, and Fourth Application at 29-31.  Skadden, Arps bankruptcy and non-bankruptcy attorneys have knowledge and experience that have allowed them to address pressing matters typical of large cases in an efficient manner.  First Application at 30.

76.     The Report identifies nonfirm conferences, hearings and meetings that typically fall into the following categories:  (a) court hearings, (b) board meetings, (c) client

meetings, (d) creditors' committee meetings, (e) asset disposition meetings, (f) reclamation and PACA meetings, and (g) financing meetings.  See, e.g., Report Exhibit H.

77.    Skadden, Arps believes that the First Application discusses each of the above categories and indicates why, at times, the services of more than one Skadden, Arps professional were required.  The services performed (and the corresponding benefits received) would not have been possible without team work and coordination between different Skadden, Arps professionals.  Accordingly, Skadden, Arps submits that the compensation sought is reasonable and should not be denied.

78.    The Report identifies five timekeepers who attended the February 23, 2005 "first day" hearing, and seven timekeepers who attended the March 18, 2005 hearing.  See Report at 19.

79.    At the February 23, 2005 "first day" hearing, over 25 matters were scheduled to be heard.  The most significant "first day" matter related to the $800 million debtor-in-possession credit facility.  The attendance of the banking partner and the bankruptcy counsel who had jointly handled work relating to this matter was necessary to readily address and resolve banking and bankruptcy issues during the hearing.  Additionally, the senior bankruptcy partner's attendance at the hearing was necessary to address issues raised by the Court with respect to the order approving the DIP financing facility and to resolve any other issues that might have arisen that would impact the cases overall.

80.    Moreover, in the ordinary course of large chapter 11 cases, particularly at first-day hearings, it is not unusual to divide responsibility for the numerous motions to be heard so that one attorney can address the court with respect to a particular motion while other attorneys may seek to reach consensus on outstanding issues regarding other motions.  This case

was no different.  With over 25 motions scheduled to be heard by the Court, the attendance of

another bankruptcy attorney was necessary.  On that day, the second bankruptcy attorney

handled, among other things, the reclamation motion.  The final timekeeper was a

paraprofessional who coordinated documents and exhibits at the hearing.

81.    The March 15, 2005 hearing involved appearances by over 30 attorneys

representing creditors and other parties in interest.  This hearing involved, among other things, the

final DIP financing order, PACA, and reclamation matters.  Of the seven timekeepers, three

timekeepers were present for the financing order.  As stated in the First Application, approval of

the financing was highly contested.  There were over 20 objections to the entry of the final order

filed by different creditors and parties in interest.  As a result of the number of objections, the

presence at the hearing of the three attorneys primarily responsible for negotiating the financing

was appropriate.  Skadden, Arps' services regarding the debtor-in-possession financing are

described in detail in the First Application at 18-20.

82.    In addition, two attorneys were present for the PACA and reclamation

matters.[7]  Seventeen objections to the reclamation motion and five objections to the PACA

motion were filed.  The two attorneys who attended the hearing had been primarily responsible

for handling those matters.  Further, the senior partner working on these cases attended the

hearing to address and resolve any issues impacting the cases overall.  In addition, the final person

attending the hearing was a paraprofessional who coordinated documents and exhibits at the

hearing and dealt with post hearing submission of orders.

---

[7]    The Debtors received approximately 480 reclamation demands asserting aggregate claims of approximately
$125 million.  Moreover, approximately $36 million in PACA claims were asserted against the Debtors.

M.    Personnel Who Billed 10.00 or Fewer Hours

83.    The Report identifies five timekeepers who billed 10.00 or fewer hours during the interim period.  Stuart Maue asserts that their entries total 37.85 hours with $13,330.25 in associated fees.  Report at 20.  Stuart Maue states:

> A review of the fee entries of timekeepers who bill relatively few hours to a matter allows a determination of whether these timekeepers are duplicating the work of others, whether the use of these timekeepers increases the cost to the estate because of orientation or the "getting-up-to-speed" that may be required, or whether the small amount of the time billed contributed to the advancement of the case.

Id.

84.    Neither the Bankruptcy Code nor the Guidelines penalize a firm on the basis that a timekeeper has billed too few hours.  To the contrary, Skadden, Arps submits that the services performed were reasonable and necessary.  Below is a chart identifying the timekeepers and describing the work performed:

| NAME | HOURS | GENERAL DESCRIPTION OF MATTERS WORKED ON |
| --- | --- | --- |
| Dowd, A. | 9.30 | MS. DOWD, ASSOCIATE, EMPLOYEE BENEFITS, RETENTION AND SEVERANCE PROGRAMS. |
| Francis, L. | 5.75 | MS. FRANCIS, UCC SPECIALIST, UCC STATEMENTS. |
| Saldana, A. | 7.80 | MR. SALDANA, ASSOCIATE, MERGERS & ACQUISITIONS, SEC FILINGS AND PROVIDED CORPORATE ADVICE TO THE COMPANY. |
| Teicher, S. | 6.50 | MS. TEICHER, PARTNER, BANKING & INSTITUTIONAL INVESTING, FINANCING FACILITY. |
| Tung, T. | 8.50 | MS. TUNG, LEGAL ASSISTANT, LITIGATION, RECLAMATION MATTERS. |

Four of the five timekeepers above are non-bankruptcy specialists.  These timekeepers used their specialized knowledge to assist in the bankruptcy cases without the need for any orientation time to perform their services.  Moreover, the remaining timekeeper is a non-bankruptcy paraprofessional who assisted in an isolated reclamation matter.

N.      Long Billing Days

85.      The Report identifies nineteen timekeepers who billed more than 12.00 hours a day during the interim period.  Report Exhibit J-1 at 1.  Stuart Maue asserts that entries total 873.00 hours with $377,347.50 in associated fees.  Report at 21.  Stuart Maue states:

> Courts have generally held that billable time for professional services should include only those tasks that relate directly to work for the client. Professionals necessarily must spend some portion of each day on personal matters (such as meals and breaks) and frequently spend time on administrative matters, such as training or supervision of others. Professionals may periodically work extraordinarily long hours without many breaks because of the demands of the representation.  However, such long hours are generally related to identifiable circumstances such as court deadlines, travel, or event attendance.

Id.

86.      The Guidelines do not state or suggest, however, that billing in excess of 12.00 hours a day is not compensable.  Stuart Maue acknowledges that "[p]rofessionals may periodically work extraordinarily long hours without many breaks because of the demands of the representation."  Id.  That is the case here, as evidenced by the time detail in the First Application Exhibits C-1 through E-1 and Report Exhibits J-1 and J-2.

87.      The hours and charges calculated by Stuart Maue include all hours on all days whenever a timekeeper exceeded 12.00 hours (including a non-working travel time entry). Skadden, Arps submits that a more relevant calculation is the total number of hours exceeding 12.00 hours per day (without including any non-working travel time).  That calculation, shown in the chart below, is not particularly large in the context of these cases.

| TOTAL HOURS BILLED IN EXCESS OF 12.00 HOURS A DAY | TOTAL HOURS BILLED IN INTERIM PERIOD |
|---|---|
| 128.30 | 6,872.30[8] |

---

[8]      First Application at v.

88.    Likewise, the instances in which timekeepers billed in excess of 12.00 hours a day are relatively few, as shown by the chart below created from Report Exhibits J-1 and J-2.

| Timekeeper | Hours Billed in Excess of 12.00 Hours for Interim Period |
|---|---|
| Baker, J | 2.8 |
| Bonachea, L | 5.2 |
| Eichel, S | 5.7 |
| Feld, S | 1.4 |
| Gray, R | 2.4 |
| Henry, S | 5.4 |
| Horwitz, M | 4.5 |
| LaMaina, K | 15.7 |
| Leamy, J | 9.1 |
| Levinson, A | 3.5 |
| Liou, J | 3.8 |
| Mack III, W | 4.5 |
| Margolis, A | 15.4 |
| Paoli, J | 1.8 |
| Ravin, A | 5.6 |
| Sambur, K | 17.3 |
| Stuart, C | 8.0 |
| Turetsky, D | 3.4 |
| Ziegler, V | 12.8 |

89.    The hours billed by timekeepers in excess of 12.00 hours per day during the first interim period are minimal, especially given that (a) Skadden, Arps was retained approximately three weeks before the commencement of these cases, (b) there was no time to complete negotiation of the debtor-in-possession financing in advance of the bankruptcy filing, causing there to be significant litigation with respect to such financing, (c) there were numerous dispositions of assets, often on an expedited basis, and (d) many objections were filed with respect to the reclamation and PACA motions.  In light of these factors, the number of hours in question is not large.

90.    Skadden, Arps believes that the First Application reflects that it spent the time, as appropriate, to meet the needs of the client.

O.    Administrative/Clerical Activities

91.    The Report identifies activities considered by Stuart Maue to be administrative or clerical in nature.  Report at 22-24.  Stuart Maue states:

> Clerical activities include tasks that may be effectively performed by administrative assistants, secretaries, or support personnel.  The performance of clerical or secretarial tasks by attorneys, accountants, paralegals, and other paraprofessionals generally constitutes nonbillable time and should be delegated to nonbilling staff members.  Courts have held that time spent performing administrative or clerical activities such as filing, organizing and updating files, retrieving and distributing documents, checking the docket, calendaring events, photocopying, scanning documents, training and assignment of tasks to staff members, or "supervising" any of the foregoing is not compensable.

Id. at 22.

92.    The administrative and clerical activities were grouped by Stuart Maue into four categories as follows:

| ADMINISTRATIVE AND CLERICAL TASKS | | | |
| --- | --- | --- | --- |
| CATEGORY OF ACTIVITY | EXHIBIT | HOURS | FEES |
| CONFLICTS SCREENING | K-1 | 98.40 | $15,074.50 |
| EXTRANET RELATED ACTIVITIES | K-2 | 36.70 | $5,120.50 |
| ADMINISTRATIVE/CLERICAL ACTIVITIES BY PARAPROFESSIONALS | K-3 | 327.17 | $40,203.67 |
| ADMINISTRATIVE/CLERICAL ACTIVITIES BY PROFESSIONALS | K-4 | 16.50 | $6,095.50 |

Id. at 23.  Skadden, Arps has reviewed the activities contained in Report Exhibits K-1 through K-4 and responds below.

*Conflicts Screening*

93.    The Report identifies tasks relating to conflicts screening as an administrative and clerical task.  Id.  Stuart Maue asserts that entries total 98.40 hours with $15,074.50 in associated fees.  Id.  Of the 98.40 hours, 80.20 hours were rendered by paraprofessionals.  See Report Exhibit K-1.

28

94.     Conflicts screening work was performed by Skadden, Arps in connection with its continuing duty to make supplemental declarations. Under such circumstances, the services are compensable. The actual conflicts searches are performed by administrative staff whose time is not charged to the estates. After the searches have been performed, however, conflicts screening work is performed by professionals, whose time is appropriately charged to the estates.

95.     Skadden, Arps prepared a brief memorandum to Stuart Maue that discusses compensation for conflicts screening activities. This memorandum is attached at Appendix 1.

*Extranet Related Activities*

96.     The Report contains a category titled "Extranet Related Activities" and identifies entries contained within this category as administrative and clerical tasks. Report at 23. Stuart Maue asserts that entries in that category total 36.70 hours with $5,120.50 in associated fees. Id. Activities performed in this category were by five timekeepers. Of the 36.70 hours in question, 35.40 hours were rendered by paraprofessionals. See Report Exhibit K-2.

97.     The services performed were reasonable and necessary. The extranet is an informational website for parties in interest. The Bankruptcy Code envisions utilizing this type of communication tool for parties in interest in chapter 11 cases. See 11 U.S.C. § 1102(a)(3) (requiring committee to provide creditors with access to information).

*Administrative/Clerical Activities by Paraprofessionals*

98.     The Report identifies certain time entries of paraprofessionals as relating to administrative/clerical activities. Report at 23. Stuart Maue asserts that such entries total 327.17 hours with $40,203.67 in associated fees. Id.

29

99.     Items identified in Report Exhibit K-3 include services that should be rendered by a paraprofessional, including the following:  (a) service of motions and agenda letters, (b) research/retrieval of case documents, including pleadings from the docket, (c) notice preparation and filing, (d) preparation of case communication lists and documents, (e) revision of case calendar and working group lists, (f) preparation and filing of documents and certificates of service, and (g) preparation and distribution of media updates.  These services are necessary in the administration of chapter 11 cases.  It is more efficient and economical for a paraprofessional, rather than an attorney, to perform the needed services, and Skadden, Arps respectfully submits that the services are compensable.

100.     Paraprofessionals are trained to provide the above-listed services.  Such services require specialized skills of paraprofessionals and, accordingly, were appropriately assigned to paraprofessionals.  Especially since the advent of electronic case filing, docket searches and filings require specialized training, for which secretaries and clerical staff are not trained.  The majority of entries identified by Stuart Maue resulted from services of the primary paraprofessional on these cases.  The delegation of these services primarily to one paraprofessional confirms an effort to utilize efficient case management practices.

*Administrative/Clerical Activities by Professionals*

101.     The Report identifies certain time entries of professionals as administrative/clerical activities.  Report at 23.  Stuart Maue asserts that entries total 16.50 hours with $6,095.50 in associated fees.  Id.

102.     Skadden, Arps acknowledges that a limited number of time entries describe work faxing, printing and delivering documents.  A year after the fact, however, it is not possible to identify the exigencies of situations that might explain the necessity of performing these tasks.

30

The small percentage of such entries supports the fact that Skadden, Arps uses clerical and secretarial staff whenever possible.

103.    Even though Skadden, Arps believes that its services should be fully compensable, Skadden, Arps has attached at Exhibit K-4 revised entry descriptions with additional detail that were provided to Stuart Maue in response to Stuart Maue's comments on the preliminary report on the First Application.

P.    Legal Research

104.    Stuart Maue identifies activities describing legal research so that a determination may be made on whether the issues researched should be familiar to experienced attorneys, whether the research is performed by attorneys with the appropriate level of experience, and whether the fees billed for research are otherwise reasonable, necessary and relevant.  Report at 24.  Stuart Maue asserts that such entries total 895.37 hours with $347,738.40 in associated fees.  Id. at 25.

105.    Stuart Maue states that a limited number of entries referencing legal research were vague because they failed to include a description of the research and its purpose.  Id. at 24.  Stuart Maue further states that these entries are addressed in the Report under Vaguely Described Activities.  See id.  As previously indicated, entries considered vague by Stuart Maue were revised in response to Stuart Maue's comments.  See supra discussion of vague entries.

106.    The matter categories identified on Report Exhibit L as having the most research-related hours — Claims Admin. (Reclamation/Trust Funds), Financing (DIP and Emergence), Leases (Real Property) and Litigation (General) — contain time entries for heavily litigated matters.  The First Application discusses these matters in detail.  Further, as noted above, Skadden, Arps utilized forty-one discrete matter categories in these cases.  Legal research

services recorded in specific categories render the services identifiable. This, plus the fact that the First Application discusses the services performed, allows a court to determine the reasonableness of the services provided.

107.    Skadden, Arps submits that the legal research services performed were necessary and beneficial for the estates, creditors and other parties in interest in these cases and that the corresponding compensation, in light of the services performed, is reasonable.

Q.    Travel

108.    The Report acknowledges that Skadden, Arps voluntarily eliminated its fees for over 87 hours of travel time. Report at 25. These fees would otherwise have been compensable.

R.    Summary of Projects

109.    The Report confirms that Skadden, Arps categorized its services into twenty-nine billing categories (out of the forty-one possible categories) in the interim period, including Retention/Fee Matters (SASM&F) ("SASM&F") and Retention/Fees/Objections (Others) ("Others"). Report at 26.

110.    Stuart Maue states that some billing entries in categories other than SASM&F and Others appear to be related to either the SASM&F or the Others categories and, as a result, it reassigned these billing entries to the SASM&F or the Others categories, respectively. Id. Skadden, Arps has endeavored to record time performed for work in the appropriate matter category. Skadden, Arps, however, recognizes that there may be entries recorded in matters that may be appropriately also recorded in another category, because this case is large, and thousands of entries were recorded by various timekeepers. Skadden, Arps believes that services performed are identifiable and compensable in these cases, including services performed in the specifically mentioned categories, SASM&F and Others.

111.    Regarding the SASM&F category, attached as Appendix 1 is a brief memorandum provided to Stuart Maue that discusses compensation for services rendered in connection with fee applications and retention applications. Skadden, Arps respectfully submits that the services are compensable in accordance with the facts of these cases, the Bankruptcy Code and the Guidelines themselves.

112.    Regarding the Others category, chapter 11 cases, especially large, complex chapter 11 cases, often require the efforts of multiple firms. The Others category involves Skadden, Arps' services in connection with assisting the Debtors in retaining other firms and working with other firms to establish chapter 11 case procedures, including interim compensation procedures. These services are described in detail in the First Application at 25-26 and are compensable because of their necessity for the Debtors' cases.

113.    The Guidelines suggest that the services rendered in the SASM&F category and the Others category are compensable. For example, the Guidelines include the following as suggested project categories for bankruptcy cases:

Fee/Employment Applicants:  Preparation of employment and fee applications for self or others; motions to establish interim procedures.

Fee/Employment Objections:  Review of and objections to the employment and fee applications of others.

Guidelines Exhibit A. These categories and services are included in the SASM&F category and in the Others category in the First Application.

114.    The services performed during the interim period for all categories of services were necessary, and Skadden, Arps believes that the compensation requested, in light of the services provided, is reasonable.

**Expenses**

S.      Potential Double Billing

115.     The Report identifies several expense entries as being potentially double billed totaling $172.27.  Report at 30.  Skadden, Arps has reviewed the entries in question and determined that the entries relating to filing fees were not double billed.  See Exhibit O.  The charge related to Contracted Catering, however, for $122.27 is an inadvertent duplication.  Skadden, Arps will reduce its fees by an additional $122.27.

T.      Airfare

116.     The Report identifies air/rail travel charges of $11,324.27.  Report at 32.  Stuart Maue states that the descriptions of these expenses do not indicate the type of travel, the fare class, or the origination or destination.  Id.

117.     Skadden, Arps provided additional detail to Stuart Maue regarding the air/rail travel in response to Stuart Maue's comments, as stated in the Report.  See Exhibit P-1; Report at 33.  Additional information included "the timekeeper name, the origination and destination of the travel, and the fare class."  Report at 33.

118.     Skadden, Arps believes that the submitted information resolved any outstanding issues on this matter.

119.     The Report specifically identifies three air/rail travel entries that exceeded $1,000.00.  Id. at 32.  Skadden, Arps reviewed the expense entries and determined that each of the charges was for coach air travel.  Skadden, Arps also provided additional detail to Stuart Maue with respect to these travel entries.  Stuart Maue reviewed the submitted detail and states in the Report "it appears that all of the airfare was purchased at coach fares."  Id. at 33.

U.     Meals

120.    The Report identifies meal charges of $920.11.  Id.  Stuart Maue states that Skadden, Arps does not provide the location of the meals or the number of attendees.  Id.

121.    Skadden, Arps provided additional detail to Stuart Maue regarding the meal charges in response to Stuart Maue's comments, as stated in the Report.  See Exhibit P-2;[9] Report at 33-34.  Additional information included "the timekeeper name, the location of the meal, the date, and the number of attendees."  Report at 34.

122.    Skadden, Arps believes that the submitted information resolved any outstanding issues on this matter.

V.     Car Service

123.    The Report identified two charges of $200.03.  Report at 34.  The Report suggested that the charges were for limousine charges and stated that the descriptions for the charges did not include the origination or destination of the travel.  Id.

124.    Skadden, Arps clarified to Stuart Maue that the expense was not for limousine service, but rather for car service by a company titled "Eagle Limousine."  Eagle Limousine provides standard car/taxi service.  Under the terms of Skadden, Arps' retention, Skadden, Arps charges expenses related to business travel.  This charge is related to business travel.  In the identified instances, the charge involved car service to and from the airport for an attorney traveling on Winn-Dixie business.  See Exhibit P-3.

125.    Skadden, Arps believes that the submitted information resolved any outstanding issues on this matter.

---

[9]    Upon review of Report Exhibit P-2, Skadden, Arps determined that $64.19 was inadvertently billed to the Debtors' estates.  Skadden, Arps will reduce its fees by this amount.

W.    Parking

126.    The Report identifies one parking charge of $19.00.  Report at 35.  Under the terms of Skadden, Arps' retention, Skadden, Arps charges expenses related to business travel. Skadden, Arps submits that the charge is for business travel, but will reduce its fee request by $19.00.

X.    Other Travel Expenses

127.    The Report identifies "Out-of-Town Travel" charges of $8,777.51.  Id. Stuart Maue states that Skadden, Arps does not identify the character of the expenses but provided a date, amount and the timekeeper name.  Id.

128.    The "Out-of-Town Travel" expense category encompasses business-related travel and lodging expenses, which are reimbursable under the terms of Skadden, Arps' retention. In response to Stuart Maue's comments on the preliminary report, Skadden, Arps provided additional detail regarding the "Out-of-Town Travel" charges, including the character of the expenses submitted for reimbursement in response to Stuart Maue's comments.  See Report at 35-36.  Following submission of the additional detail, the Report indicates that certain entries do not provide information regarding the nature of the charge.  Id. at 36.  Exhibit P-5 provides additional information for all of the charges in question.

Y.    Photocopies

129.    The Report identifies photocopy charges of $22,326.40.  Report at 36. Stuart Maue asserts "[t]he Application stated that the requested rate for these internal photocopies was $0.10 per page."  Id.  Consistent with its retention agreement and as indicated in the First Application at 32, Skadden, Arps billed for photocopies at the rate of $0.10 per page. Additional detail on the photocopy charges was provided to Stuart Maue and is attached at Exhibit P-6.  A substantial amount of the charges relate to service of documents on parties in

interest, as well as providing documents to parties in interest at court hearings.  Skadden, Arps believes that the submitted information resolved any outstanding issues on this matter.

130.    Further, the Report identifies electronic document management charges of $2,659.07.  Report at 36.  Electronic document management includes scanning, printing and OCR processing.  Id.  Under the terms of Skadden, Arps' retention, Skadden, Arps is entitled to reimbursement for electronic document management.  Consistent with its retention agreement, costs related to electronic document management are billed by Skadden, Arps at rates comparable to those charged by outside vendors.  Additional detail on the electronic document management charges was provided to Stuart Maue and is attached at Exhibit P-6.  Skadden, Arps believes that the submitted information resolved any outstanding issues on this matter.

Z.    Computer-Assisted Legal Research

131.    The Report identifies Westlaw and LEXIS/NEXIS charges of $49,790.81. Report at 37.  Stuart Maue asserts that "[t]he Application stated that charges for on-line computerized research are billed at the actual amounts charged by vendors, which have been reduced by discounts the firm receives from vendors."  Id.  As discussed in the First Application and Skadden, Arps' retention agreement, computerized research is billed at provider cost.  First Application at 32.

AA.    Local Meals

132.    The Report identifies a charge as potential overhead titled "Contracted Catering-NY" of $2,494.11.  Report at 38.  Skadden, Arps does not, however, charge for overhead, and this charge is not related to overhead.  Under the terms of Skadden, Arps' retention, Skadden, Arps recharges clients for the costs of furnishing meal services during meetings.  See Exhibit A.  Here, the expenses were business related and at Skadden, Arps' cost.

133.    Stuart Maue states that Skadden, Arps does not include the purpose, location or number of attendees for catering charges.  Report at 38.  Skadden, Arps  provided additional detail to Stuart Maue in response to Stuart Maue's comments, as stated in the Report. See Exhibit R; Report at 38.  Additional information included the "timekeeper name, the number of attendees, and the type of meal (cold lunch or buffet lunch)."  Report at 38.[10]

134.    As indicated above, the expenses were all business related.  For instance, on February 22, 2005, numerous parties met at Skadden, Arps' office to negotiate outstanding financing, PACA and reclamation issues.  Lunch was served at that meeting.  Likewise, on April 27, 2005, the creditors' committee met with the Debtors at Skadden, Arps' offices.  Food services provided at these and the other meetings in question were recharged at Skadden, Arps' cost and are reimbursable.

135.    Stuart Maue identifies a meal charge of $765.68.  Report at 38.  This charge was for lunch for 25 people, not one person.  See Exhibit R.  Skadden, Arps believes that the submitted information resolved any outstanding issues on this matter.

BB.    Postage

136.    The Report identifies postage charges of $2,307.23.  Report at 39.  Under the terms of Skadden, Arps' retention, Skadden, Arps is entitled to reimbursement for postage.

CC.    Telephone Charges

137.    The Report identifies long-distance telephone charges of $139.21 and charges described as "Telephone Expenses" of $896.97.  Id.  Stuart Maue states:

> Stuart Maue is unable to determine if the charges described as "Telephone Expenses" are local telephone charges or additional cellular telephone charges, which are both, according to the U.S. Trustee Guidelines, considered to be part of the firm's overhead expenses.

---

[10]    With respect to Exhibit R, Skadden, Arps will reduce its fees by $122.27 for lunch charges on March 3, 2006.

Id.  The charges in question are all long-distance charges.  Skadden, Arps does not bill its clients for local telephone calls.

138.    Stuart Maue further identifies cellular telephone charges of $49.40. Regarding these charges, Skadden, Arps provided additional detail to Stuart Maue as stated in the Report.  The detail is contained at Exhibit S and reflects business telephone usage, rather than either personal use or use for incidental costs associated with maintaining a cellular telephone.

139.    Skadden, Arps provided additional information to Stuart Maue in response to its comments on the preliminary report and believes there are no outstanding issues on this matter.

**Conclusion**

140.    Skadden, Arps has performed substantial and necessary services in these cases.  Skadden, Arps believes that the fees and expenses billed to the Debtors were reasonable and necessary, subject to the reductions agreed to in this Response.

141.    Skadden, Arps believes that its time entries and the Fee Applications will allow the Court to determine the necessity and benefit of Skadden, Arps' services.

DATED:  August 18, 2006

SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP


/s/  *D. J. Baker*
D. J. Baker
Sally McDonald Henry
Rosalie Walker Gray
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

Attorneys for the Debtors

40

**EXHIBIT A**

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

DIRECT DIAL
(212) 735-2150
DIRECT FAX
(917) 777-2150
EMAIL ADDRESS
DJBAKER@SKADDEN.COM

FOUR TIMES SQUARE

NEW YORK 10036-6522
___

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
___
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
___
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 7, 2005

Laurence B. Appel, Esq.
Senior Vice President and General Counsel
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3699

RE:    Engagement Agreement with Skadden

Dear Larry:

We are pleased that Winn-Dixie Stores, Inc., for itself and each of its subsidiaries for which there is no disqualifying conflict and which Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden" or the "Firm") has agreed to represent (collectively, the "Company"), has decided to engage Skadden as special counsel in connection with the matters described below in the "Scope of Engagement" section of this Engagement Agreement and such other matters as are assigned to us in the future and that we agree to undertake (the "Engagement"). Accordingly, the Engagement is limited to those specific matters enumerated in and/or contemplated by this Engagement Agreement.

This letter sets forth the terms of our engagement arrangements for all matters (whether pending or prospective), including staffing, fees and waivers, the scope of our engagement, the basis on which the Firm will present its bills for fees, related charges and disbursements, and certain limitations on the Firm's services arising from potential conflicts of interest. Our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

## Scope of Engagement

We have agreed to represent the Company as special counsel in the Company's efforts to work out its present financial circumstances, which may include restructuring its financial affairs and capital structure, in addition to ongoing and future representation of the Company on matters for which Skadden is or in the future may be engaged by the Company not related to the Company's efforts to work out its present financial circumstances. The services to be provided by Skadden in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement which the Firm is requested and is able to provide and which are consistent with its ethical obligations. As legal counsel, we are not in a position to, and the

Company has not retained us to, provide financial advice. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services to be rendered by us and the scope of our engagement.

In addition to certain matters with respect to which we are providing legal services to the Company, in connection with the Company's restructuring activities (whether outside of court or in connection with the preparation for, commencement and prosecution of chapter 11 reorganization cases), the Engagement may involve advice as to corporate transactions and corporate governance, negotiations, out-of-court agreements with creditors, equity holders, prospective acquirers and investors, review of documents, preparation of agreements, review and preparation of pleadings, court appearances and such other actions as both of us deem necessary and desirable. The Engagement also will include advice to, and representation of the Company, as debtors and debtors-in-possession, should the Company seek relief pursuant to the provisions of the Bankruptcy Code subject to the approval of our retention by the Bankruptcy Court.

If the Company determines that reorganization cases under chapter 11 of the Bankruptcy Code are appropriate, we will prepare for the filing of the chapter 11 petitions, including review of documents and preparation of the petitions with supporting schedules and statements, subject to appropriate coordination with King & Spalding LLP, which has commenced such preparations, to avoid duplication of effort and expense. During the cases and subject to our ethical obligations discussed above, we will advise and consult on the conduct of the cases, including all of the legal and administrative requirements of operating in chapter 11; prepare such administrative and procedural applications and motions as may be required for the sound conduct of the cases; prosecute and defend litigation that may arise during the course of the cases; consult with you concerning and participate in the formulation, negotiation, preparation and filing of a plan or plans of reorganization and disclosure statement(s) to accompany the plan(s); review and object to claims; analyze, recommend, prepare, and bring any causes of action created under the Bankruptcy Code; take all steps necessary and appropriate to bring the cases to a conclusion; and perform the full range of services normally associated with matters such as this which the Firm is in a position to provide. With respect to the foregoing, we will allocate appropriate responsibilities to King & Spalding LLP in consultation with the Company, but in all such matters it is our understanding that the Company intends for us to act as the Company's principal bankruptcy counsel.

In the event that chapter 11 cases are commenced and our retention is authorized, our representation will include, as noted above, serving as principal bankruptcy counsel to the debtors-in-possession under a general retainer, subject to court approval. Such representation also will encompass all out-of-court planning and negotiations attendant to these tasks. Although it is hoped that litigation can be avoided, subject to ethical constraints regarding conflicts of interest, we also will be available to serve the Company in any litigation capacities that become necessary to the extent that any required court approval is obtained.

## Case Management and Coordination of Outside Counsel

The Company is presently using more than one law firm for representation of its interests on substantive matters. It is likely that more than one law firm may be needed for such representation, particularly to represent the Company in connection with the numerous labor-intensive day-to-day tasks associated with potential chapter 11 cases. Other than the general

representation of the Company by Skadden as principal restructuring counsel and in the cases (if filed) pursuant to this Engagement Agreement, the Company will continue to have discretion to assign specific tasks to co-counsel, adjunct counsel, or special counsel (collectively, "Other Counsel"), as the case may be. If, as outlined below, we are unable to obtain court approval for all matters in potential chapter 11 cases that you wish us (and we agree) to undertake, our representation would include as many of those matters as are approved. We are committed to working with the Company and in full cooperation with Other Counsel to manage the Engagement on a cost-efficient and productive basis. To the extent possible, given the nature and magnitude of the Engagement, steps have been taken and should continue to be taken by the Company to coordinate tasks and, when practical, to divide these tasks to avoid unnecessary duplication of effort between us and Other Counsel.

## Engagement Personnel

I will coordinate all Engagement matters on behalf of Skadden Arps. Additional lawyers, including those in other practice areas, will be added to the Engagement on an as needed basis.

## Fees, Charges and Disbursements

Our fees will be based primarily on the time involved in the Engagement and our bundled hourly time charges. A list of our current bundled hourly time charges using the Firm's bundled rate structure as of January 1, 2005 is attached as Exhibit A. As part of the Firm's ordinary business practices, hourly time charges are periodically reviewed and revised.

Our final fee statement to the Company normally would reflect a variety of factors. These factors include bundled hourly time charges, the significance of the Firm's role, the importance of the Firm's expertise, the complexity of the matter, the outcome of the matter, the Firm's contribution to the results obtained, the size and significance of the matter, the intensity and duration of the Firm's efforts, the amount of fees we have received in other comparable matters, and the views of our client. As to the latter factor, we consider it very important and would not submit a final statement for services rendered without having discussed our fee in advance with the Company based on the factors mentioned above and obtaining your concurrence.

As to billing, we will submit to the Company for payment a statement with respect to all matters for which we are responsible on not less than a monthly basis. At each matter's conclusion, we will submit a final statement for services rendered that will be based upon our bundled hourly time charges and, if appropriate, the factors outlined above, and that would credit all prior payments. Each statement submitted would be accompanied by a summary of attorney time showing the time worked by each lawyer working on an Engagement matter and the guideline hourly rate for each lawyer. In addition, our billing statements will include charges and disbursements incurred by us in the course of performing legal services in accordance with our standard practice as described in the summary attached as Exhibit B, which may be periodically updated.

Laurence B. Appel
February 7, 2005
Page 4

From time to time, the Company may request a fee range estimate for a particular Engagement matter. Any such estimate would be premised upon certain assumptions, including, but not limited to, completion of the matter by a particular target date, no unusual issues or problems arising, no litigation, counsel for the other parties sufficiently experienced and competent to perform such counsel's normal functions in this type of matter and so forth. In such situations, we will respond promptly to the Company's request in writing although it is agreed that such estimates shall not constitute a fee cap or amendment of this Engagement Agreement and all such discussions and written estimates would be handled through the undersigned in respect of the overall Engagement on behalf of the Firm.

### Fee Structure and Retainers

It is customary in matters of this nature for us to receive a reasonable retainer/on account payment and to be paid promptly for services rendered and charges and disbursements incurred on behalf of the Company, including payment for the services rendered and charges and disbursements incurred prior to the date hereof. Given the size and complexity of the Company's affairs, we have requested a payment in the amount of $500,000.00, representing a retainer/on account payment for professional services rendered and to be rendered and charges and disbursements incurred by us to the Company's account in connection with our representation of the Company including with respect to any consensual non-judicial restructuring as well as any initial preparation that you authorize for cases under chapter 11 of the Bankruptcy Code that may be filed by or against the Company (the "Initial Retainer"). We would appreciate your sending the Initial Retainer by wire transfer to:

CITIBANK, N.A.
460 West 33rd Street
NEW YORK, NEW YORK

ABA #021-000089
FOR CREDIT TO:
ACCOUNT # 3006-0143 of Skadden, Arps, Slate, Meagher & Flom LLP

The Company agrees to supplement the Initial Retainer from time to time during the course of the Engagement in such amounts as we mutually shall agree are reasonably necessary to maintain the Initial Retainer at a level that will be sufficient to fund Engagement fees, charges and disbursements to be incurred for time periods to be covered by the Initial Retainer. Should the Company subsequently decide to seek chapter 11 relief, we may also require an additional retainer/on account payment to supplement the Initial Retainer in order to cover Engagement fees, charges and disbursements to be incurred during the initial phase of the reorganization cases (the "Filing Retainer"). We will determine and discuss the amount of the Filing Retainer with you prior to the initiation of any chapter 11 case or at such earlier time as either we or the Company deems appropriate or desirable. Of course, the reasonableness of the Filing Retainer remains subject to review by the court in any ensuing cases.

In the future, we will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above. Each invoice constitutes a request for an interim payment against the reasonable fee to be determined

Laurence B. Appel
February 7, 2005
Page 5

at the conclusion of our representation. Upon transmittal of the invoice, the Firm shall draw upon the Initial Retainer (as may be supplemented from time to time by supplemental retainers or the Filing Retainer) in the amount of the invoice. The Company agrees upon submission of each such invoice, if so requested by the Firm, to wire the invoice amount to us as replenishment of the Initial Retainer (together with any supplemental amount to which the Firm reasonably requests), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice, up to the remaining balance, if any, of the Initial Retainer (as may be supplemented from time to time by supplemental retainers or the Filing Retainer) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

In the event that the Company subsequently determines to seek bankruptcy court protection and subject to the terms of any professional compensation order entered in the Company's chapter 11 cases, the issuance of our periodic invoice shall constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of the representation. Although the Company may pay us from time to time for services rendered in our capacity as special counsel for various matters, some fees, charges, and disbursements incurred before the filing of bankruptcy petitions (voluntary or involuntary) may remain unpaid as of the date of the bankruptcy filings. Any portion of the Initial Retainer (as may be supplemented from time to time by supplemental retainers or the Filing Retainer) not otherwise properly applied will be held by us for the payment of any such unpaid fees, charges and disbursements (whether or not billed).

If the Company determines to commence a chapter 11 case, the unused portion, if any, of the Initial Retainer (as may be supplemented from time to time by supplemental retainers or the Filing Retainer) will be applied to any unpaid prepetition invoices and unbilled fees, charges and disbursements, although any requisite court permission will be obtained in advance. Postpetition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court, it being agreed and understood that the unused portion, if any, of the Initial Retainer (as may be supplemented from time to time by supplemental retainers or the Filing Retainer) shall be held by us and applied against the final fee application filed and approved by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nonetheless remain liable for payment of court approved postpetition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503 (b)(1).

If a dispute develops about our fees, you may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than one thousand and less than fifty thousand dollars.

## Confidentiality and Related Matters

Confidential communications between a client and counsel are ordinarily privileged, but the commencement of a bankruptcy case may severely limit this attorney-client privilege. Specifically, if a trustee is appointed in any case concerning a corporate debtor or partnership, the trustee will be able to obtain from us or other counsel and disclose to others information communicated by the Company to counsel. Some courts also have held that an examiner may invade the attorney-client privilege.

Laurence B. Appel
February 7, 2005
Page 6

Because of the nature of the Firm's practice (involving more than 1,600 lawyers throughout the United States and in various international offices), from time to time we concurrently may represent one client in a particular matter and the adversary of that client in an unrelated matter. Thus, for example, while representing the Company, we may represent a third party who is adverse to the Company in a matter unrelated to the matters covered by this Engagement Agreement. In addition, while representing the Company, we may represent an account debtor of the Company as a debtor in a reorganization case or in connection with out-of-court negotiations with such entity's creditors concerning that entity's ability to pay its debts generally.

Despite any such concurrent representation, we strictly preserve all client confidences and zealously pursue the interests of each of our clients. The mutual understanding reflected in this Engagement Agreement, including the waivers set forth below, are, of course, premised on the Firm's adherence to its professional obligation not to disclose any confidential information or to use it for another party's benefit.

With respect to third parties and based on our initial discussions concerning the Company's capital structure and given the Company's business relationships, we have identified certain entities involved with the Company as our clients, or as affiliates of our clients, on matters unrelated to the Company including, but not limited to, bank group members Amsouth Bank, Bank One, The CIT Group/Business Credit, Inc., Congress Financial Corporation (Florida), Fleet Retail Group, Inc., General Electric Capital Corporation, GMAC Commercial Finance LLC, Merrill Lynch Capital, PNC Business Credit, Suntrust Bank, UBS AG, Wachovia Bank, National Association, Wachovia Capital Markets, LLC, and Wells Fargo Foothill, LLC, as well as other entities that are providing financial accommodations and services to the Company or have other material relationships. (In the event that chapter 11 cases are commenced, we will prepare a disclosure summary that will be publicly disclosed and will be updated periodically thereafter in connection with the filing of interim fee applications and as otherwise required.) Accordingly, while for purposes of this Engagement Agreement, the Company should assume that we represent a substantial number of the Company's creditors and stakeholders on matters unrelated to the Company, we will, at the Company's request, furnish you with a list of relevant clients when we receive updated information from the Company from time to time regarding its creditors and other stakeholders.

We do not provide certain kinds of opinion letters in connection with restructuring and bankruptcy reorganization cases to clients or to others who may wish to rely upon such letters. We do not alter this policy except under very unusual circumstances and then only upon further written agreement, as approved by a special committee of the Firm.

## Waivers and Related Matters

The Firm represents a broad base of clients on a variety of legal matters. Accordingly, absent an effective conflicts waiver, conflicts of interest may arise that could adversely affect your ability and the ability of other clients of the Firm to choose the Firm as its counsel and preclude the Firm from representing you or other clients of our Firm in pending or future matters. Given that possibility, we wish to be fair not only to you, but to our other clients as well. Accordingly, this letter will confirm our mutual agreement that the Firm may represent other present

or future parties on matters other than those for which it had been or then is engaged by the Company, whether or not on a basis adverse to the Company or any of its affiliates, including in litigation, legal or other proceedings or matters, which are referred to as "Permitted Other Representation." In furtherance of this mutual agreement, the Company agrees that it will not for itself or any other party assert the Firm's representation of the Company, either previously, in its then existing representation in the Engagement, or in any other matter in which the Company retains the Firm, as a basis for disqualifying the Firm from representing another party in any Permitted Other Representation and agrees that any Permitted Other Representation does not constitute a breach of duty. Permitted Other Representation would include, without limitation, representing a client over which the Company might be seeking to acquire influence or control, or from which the Company may wish to buy assets, or representing a client regarding its interest at the time in acquiring influence or control over an entity in which the Company then has a similar interest. Notwithstanding the foregoing waivers, the Firm agrees that, during the pendency of any chapter 11 reorganization cases involving the Company in which the Firm is acting as bankruptcy and restructuring counsel pursuant to a general retainer pursuant to 11 U.S.C. § 327 (a), the Firm will not represent present or future clients of the Firm on matters adverse to the Company in such chapter 11 reorganization cases.

Our representation of the Company is premised on the Firm's adherence to its professional obligation not to disclose any confidential information or to use it for another party's benefit without the Company's consent. Provided that the Firm acts in the manner set forth in this paragraph, the Company would not for itself or any other party assert that the Firm's possession of such information, even though it may relate to a matter for which the Firm is representing another client or may be known to someone at the Firm working on the matter, (a) is a basis for disqualifying the Firm from representing another of its clients in any matter in which the Company or any other party has an interest; or (b) constitutes a breach of any duty owed by the Firm.

With respect to parties affiliated with the Company generally, including parties owned by the Company and parties that hold direct or indirect interests in the Company, it is our understanding that the Firm is not being asked to provide, and will not be providing, legal advice to, or establishing an attorney-client relationship with, any such affiliated party or person in their individual capacity and will not be expected to do so unless the Firm has been asked and has specifically agreed to do so. Finally, it is our understanding that if the Firm acts as counsel for any other party as to which the Company then owns completely, directly or indirectly, all of the common stock or similar voting interest (other than directors' qualifying shares, if any), the mutual agreement reflected in this letter, including the waivers, would apply to that party as well.

\*       \*       \*

The provisions of this letter will continue in effect, including if the Firm's representation of the Company was ended at your election (which, of course, the Company would be free to do at any time) or by the Firm for Good Cause (which would be subject to ethical requirements). Good Cause includes the Company's breach of this agreement (including any material change in our engagement responsibilities without our consent or the failure to pay any payment when due under this Engagement Agreement), the Company's refusal or failure to cooperate with us or provide us with continuing access to the Board of Directors and senior management officers of the Company as appropriate, any fact or circumstance that would render our continuing representation unlawful or unethical, or, in our reasonable judgment, resignation of the engagement becomes

Laurence B. Appel
February 7, 2005
Page 8

necessary or appropriate. Any unused portion of the retainers we have received will be applied to our outstanding fees, charges and disbursements and the Company will promptly pay to us the remaining balance owed to us, if any. To the extent that the remaining amount of the retainers exceeds the amount of such fees, charges and disbursements, we will pay such amount to the Company. In addition, the provisions of this Engagement Letter will apply to future engagements of the Firm by the Company unless we mutually agree otherwise.

The Company agrees to make appropriate employees available to us to assist in factual inquiries and factual determinations, court hearings and appearances, transactions and dealings in relation to the subject matter with regard to which we have been retained.

This agreement shall be governed by and interpreted in accordance with the laws of the State of New York without regard to its conflicts of laws principles. For purposes of this letter, references to Skadden or the Firm include our affiliated law practice entities. There are no representations or promises other than as expressly set forth herein.

If the foregoing terms of our representation meet with your approval and accurately represent your understanding of the Company's retention agreement with us, we would appreciate your signing one copy of this Engagement Agreement and returning it to us.

Again, we very much appreciate the opportunity to work with Winn-Dixie Stores, Inc. and look forward to doing so.

With best regards,

Yours very truly,

D. J. Baker

Attachments

AGREED AND ACKNOWLEDGED:

Winn-Dixie Stores, Inc., for itself
and its subsidiaries

By: _____
Laurence B. Appel
Senior Vice President and General Counsel

Effective as of February 2, 2005

CONFIDENTIAL

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP & AFFILIATES

### STANDARD BUNDLED HOURLY TIME CHARGE SCHEDULE[*]

#### January 1, 2005

|  | Rate |
|---|---|
| **PARTNERS and OF COUNSEL:** | $540 - $825 |
| **COUNSEL/SPECIAL COUNSEL:** | $535 - $640 |
| **ASSOCIATES:** | |
| Level | |
| 9 | $495 |
| 8 | 495 |
| 7 | 480 |
| 6 | 460 |
| 5 | 430 |
| 4 | 395 |
| 3 | 375 |
| 2 | 335 |
| 1 | 265[**] |
| **LEGAL ASSISTANTS:** | $90 - $195 |

---

[*]     These are the Firm's standard hourly fee rates for most attorneys and legal assistants in the Firm's "bundled rate" structure for clients who are not billed separately for certain charges (e.g., **secretarial and word processing time preparing legal documents, proofreading, facsimile services, overtime meals and overtime travel allowances). In-house reproduction under the bundled rate structure is charged at $0.10 per page. Please note that in a limited number of cases or for specific types of work (e.g., M&A transactions, certain types of tax matters, etc.), individual rates may be higher or lower than those stated.**

[**]     First year associates will move to $295/hr. at the later of April 1st, 2005 or the date of passing bar exam.

### SKADDEN ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES
#### Policy Statement Concerning Charges and Disbursements
#### Under Standard Bundled Rate Structure
#### Effective 9/1/03

*Skadden Arps bills for reasonable charges and disbursements incurred in connection with an engagement. Clients are billed for external charges at the actual cost billed by the vendor except in a few cases noted below; charges for internal support services are billed at rates derived from internal cost analyses or at rates set at or below comparable outside vendor charges.*

**I. Research Services.** *Charges for on-line computerized research (LexisNexis, Westlaw and financial services) and use of outside research services and materials are billed at the actual amounts charged by vendors, which have been reduced by discounts the Firm receives from vendors.*

*SEC filings retrieved using the Disclosure system in our library are charged based on standard vendor rates derived from an internal cost analysis.*

*The State of Delaware Database provides computer access to a corporations database in Dover, Delaware. The charge for this service is $50 per transaction, which is the average amount charged by outside services.*

**II. Travel-Related Expenses.** *Out-of-town travel expenses are billed at actual cost and include air or rail travel, lodging, car rental, taxi or car service, tips and other reasonable miscellaneous items associated with travel. Corporate and/or negotiated discounted rates are passed on to the client. Specific Firm policies for expenditures relating to out-of-town travel include:*

* *Air Travel. Coach travel is used for all U.S. domestic flights unless upgrades are available at little additional cost or prior client approval is obtained for a different class. For international flights from the United States, business class is used. Travel by attorneys based outside the United States is consistent with these policies.*

* *Lodging. Overnight accommodations are generally booked with hotels with which the Firm has a corporate rate or, when this is not possible, with hotels suggested by the client.*

*Local travel charges include commercial transportation and, when a private car is used, mileage, tolls and parking. Specific policies govern how and when a client is charged for these expenses; these include:*

* *Fares for commercial transportation (e.g., car service, taxi or rail) are charged at the actual vendor invoice amount. The charge for private car usage is the IRS rate allowance per mile (or the equivalent outside the United States) plus the actual cost of tolls and parking.*

* *Round-trip transportation to the office is not charged separately for attorneys who work weekends or holidays, nor is transportation home on business days when an attorney works past a certain hour (typically 8:30 p.m.);*

* *Local travel for support staff is not charged when a staff member works after 8:00 p.m. specifically for the client.*

**III. Word Processing and Secretarial and other Special Task-Related Services.** *Routine secretarial tasks (correspondence, filing, travel and/or meeting arrangements, etc.) are not charged to clients. There is no separate charge for word processing and secretarial services associated with preparing legal documents.*

*Multi-function personnel, such as qualified secretaries and word processors, may also perform other specialized tasks (such as EDGAR filings or legal assistant services). Such work is recorded in the appropriate billing category (for example, legal assistant services are recorded as fee in "Legal Assistant Support" on bills).*

**IV. Reproduction and Electronic Document Management.** *Photocopying services (including copying, collating, tabbing and velo binding) performed in-house is charged at 10 cents per page, which represents the average internal cost per page. Color photocopies are charged at 50 cents per page (based on outside vendor rates). Photocopying projects performed by outside vendors are billed at the actual invoice amount. Special arrangements can be made for unusually large projects.*

*Electronic Data Management services (e.g., scanning, OCR processing, printing from scanned files, and conversions) performed by outside vendors are billed at the actual invoice amount and those performed in-house are billed at rates comparable to those charged by outside vendors.*

**V. Electronic Communications:** *Clients are charged for communications services as follows:*

* *Telephone Charges. There is no charge for local telephone calls or facsimile services. Long distance telephone calls made from the Firm are charged based on applicable rates in tariff tables and are allocated*

within a client based on the hours worked by attorneys on various matters for that client. Collect, credit card and third party calls are charged at the vendor rate plus applicable taxes and are assigned to the specific matter for which such charges were incurred.

- *Facsimile Charges.* There is no charge for outgoing or incoming facsimiles.

**VI. *Postage and Courier Services.*** Outside messenger and express carrier services are charged at the actual vendor invoice amount which frequently involves discounts negotiated by the Firm. Postage is charged at actual mail rates. On certain occasions, internal staff may be required to act as messengers; a standard rate is charged for their time.

**VII . *UCC Filing and Searches.*** Charges for filings and searches, in most instances, are based on standard amounts determined by the vendor. Unusual filings and searches will be charged based on vendor invoice.

**VIII. *Meals.*** Business meals with a client are charged at actual cost. Luncheon and dinner meetings with the client at the Firm are charged based on the costs developed by our food service vendor. Breakfast, beverage and snack services at the Firm's offices are not charged, except in unusual circumstances. Overtime meals are not charged separately to clients.

**IX. *Direct Payment by Clients of Other Disbursements.*** Other major disbursements incurred in connection with an engagement will be paid directly by the client. (Those which are incurred and paid by the Firm will be charged to the client at the actual vendor's invoice amount.) Examples of such major disbursements that clients will pay directly include:

- *Professional Fees (including disbursements for outside professional services such as local counsel, accountants, witness and other professional fees).*

- *Filing/Court Fees (including disbursements for agency fees for filing documents, standard witness fees, juror fees).*

- *Transcription Fees (including disbursements for outside transcribing agencies and courtroom stenographer transcripts).*

- *Other Disbursements (including any other required out-of-pocket expenses incurred for the successful completion of a matter).*

\* \* \* \* \*

2

## EXHIBIT E-1
## VAGUELY DESCRIBED CONFERENCES
## (FIRST INTERIM FEE APPLICATION)

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 02/22/05 | Margolis, A | 4.40 | NEGOTIATIONS WITH RESPECT TO MODIFICATIONS TO INTERIM ORDER | NEGOTIATIONS WITH COUNSEL FOR RECLAMATION CLAIMANTS WITH RESPECT TO OBJECTIONS TO DIP FINANCING MOTION |
| 02/23/05 | Baker, D | 0.60 | DISCUSSIONS WITH RESPECT TO COMPANY COMPLIANCE WITH SAME | CONF. CALL LARRY APPEL AND BENNETT NUSSBAUM REGARDING COMPANY COMPLIANCE WITH REQUIREMENTS OF DIP ORDER |
| 02/24/05 | Lam, S | 0.50 | T/C RE: COORDINATING RE MATTERS POST-CLOSING | NO FURTHER INFORMATION |
| 02/25/05 | Lam, S | 1.00 | T/C RE: COORDINATION OF POST-CLOSING RE MATTERS | NO FURTHER INFORMATION |
| 03/01/05 | Neckles, P | 0.50 | MEETING WITH J. BAKER | MEETING WITH J. BAKER RE DIP FINANCING |
| 03/01/05 | Stuart, C | 0.50 | CALL WITH REAL ESTATE TEAM RE CLOSING DELIVERIES | NO LONGER WITH THE FIRM |
| 03/02/05 | Neckles, P | 0.50 | CONFERENCES WITH J. HELFAT | CONFERENCES WITH J. HELFAT RE DIP LEASEHOLD COLLATERAL |
| 03/02/05 | Stuart, C | 0.70 | CONFERENCE CALL WITH REAL ESTATE TEAM | NO LONGER WITH THE FIRM |
| 03/03/05 | LaMaina, K | 8.10 | PREPARE FOR AND ATTEND CONFERENCE RE REPORTS AND SCHEDULES AND ASSIGNMENT OF DUTIES FOR PRODUCING AND REPORTING DOCUMENTS AND CLAIMS | PREPARE FOR MEETING WITH COMPANY RE REPORTS AND SCHEDULES AND ASSIGNMENT OF DUTIES FOR PRODUCING AND REPORTING DOCUMENTS AND CLAIMS (2.1); MEET WITH LOGAN REPRESENTATIVES RE: SCHEDULES (.5); MEET WITH WINN-DIXIE, LOGAN AND XROADS REPRESENTATIVES RE: SCHEDULES AND STATEMENTS (4.3); MEET WITH J. CASTLE RE: SCHEDULES AND STATEMENTS (.6); MEET WITH XROADS REPRESENTATIVES RE: SCHEDULES AND STATEMENTS (.6) |
| 03/04/05 | McDonald Henry, S | 0.40 | T/C JANICE DUBAN AND PREPARATIONS FOR CALL | T/C JANICE DUBAN RE: RECLAMATION ISSUES AND PREPARATIONS FOR CALL |
| 03/07/05 | LaMaina, K | 0.20 | CONFERENCE RE SAME | CONFERENCE WITH E. DAVIS ON ASSET MOTION (.2) |

1

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 03/07/05 | LaMaina, K | 0.40 | ATTEND 3 CONFERENCE CALLS WITH CATHERINE E.; M. CHLEBOVEC | ATTEND 3 CONFERENCE CALLS WITH C. IBOLD AND M. CHLEBOVEC ON ASSET DISPOSITIONS INCLUDING STRATEGY/STATUS ON DISPOSITIONS (.4) |
| 03/08/05 | Davis, E | 1.70 | PREP FOR AND PARTICIPATE IN CONF. CALL ON SAME | PREP FOR AND PARTICIPATE IN CONF. CALL WITH M. BARR AND ROGAN ON SAME |
| 03/08/05 | Neckles, P | 2.00 | MEETING WITH W. SCHWARTZ, S. TEICHER, S. LAM AND C. STUART | MEETING WITH W. SCHWARTZ, S. TEICHER, S. LAM AND C. STUART RE REAL ESTATE ISSUES IN CONNECTION WITH DIP FINANCING |
| 03/08/05 | Stuart, C | 1.50 | CONFERENCE CALL TO DISCUSS LEASEHOLD MORTGAGED PROPERTIES IN DEBTOR-IN-POSSESSION FINANCING | NO LONGER WITH THE FIRM |
| 03/09/05 | Neckles, P | 3.50 | CONFERENCES AND CORRESPONDENCE REGARDING REVIEW OF DRAFT OF FINAL DIP ORDER AND REAL ESTATE COLLATERAL PROJECT | CONFERENCES AND E-MAILS WITH A. MARGOLIS AND F. HUFFARD REGARDING REVIEW OF DRAFT OF FINAL DIP ORDER AND REAL ESTATE COLLATERAL PROJECT |
| 03/10/05 | LaMaina, K | 0.40 | CONFERENCE RE STORES SALES | CONFERENCE RE STORES SALES WITH M. CHLEBOVEC (.4) |
| 03/11/05 | LaMaina, K | 0.60 | ATTEND CONFERENCE CALL RE SAME | ATTEND CONFERENCE CALL WITH M. BARR ON PURCHASE AGREEMENT  (.6). |
| 03/11/05 | Matz, T | 0.70 | CALLS WITH P. GRANNIS | CALLS WITH P. GRANNIS RE: PACA ORDER |
| 03/12/05 | Neckles, P | 1.00 | CONFERENCES AND CORRESPONDENCE AT HOME | CONFERENCES AND E-MAILS WITH REPRESENTATIVES OF LANDLORDS AND LENDERS AT HOME |
| 03/13/05 | Stuart, C | 1.50 | CALLS AND E-MAILS RE LEASE ANALYSIS CHART IN PREPARATION FOR FINAL DIP FINANCING ORDER | NO LONGER WITH THE FIRM |
| 03/14/05 | Bonachea, L | 0.30 | RESPOND TO VARIOUS PHONE CALLS RE: FILING PROOFS OF CLAIMS | NO LONGER WITH THE FIRM |
| 03/14/05 | Gray, R | 0.90 | PARTICIPATE IN CONF CALL RE: RECLAMATION STRATEGY | PARTICIPATE IN CONF CALL LED W/ ATTORNEYS FOR RECLAMATION CLAIMANTS RE: RECLAMATION STRATEGY |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 03/14/05 | Neckles, P | 2.50 | CONFERENCES AND CORRESPONDENCE REGARDING ADJOURNMENT OF DIP HEARING | CONFERENCES AND E-MAILS WITH J. BAKER, T. MATZ, A. MARGOLIS, AND J. HELFAT REGARDING ADJOURNMENT OF DIP HEARING |
| 03/15/05 | Toussi, S | 0.50 | STATUS MEETING RE SAME | TEAM MEETING TO PREPARE FOR HEARING BEFORE JUDGE DRAIN (.5) |
| 03/16/05 | Paoli, J | 0.60 | T/C WITH G. BIANCHI AT K&S | T/C WITH G. BIANCHI AT K&S REGARDING TRANSITION OF UTILITIES MATTERS TO SKADDEN |
| 03/16/05 | Zimmerman, G | | MEETING W/ J. BAKER | NO FURTHER INFORMATION |
| 03/17/05 | Bonachea, L | 0.30 | RESPOND TO VARIOUS CALLS AND EMAILS RE: FILING PROOFS OF CLAIMS | NO LONGER WITH THE FIRM |
| 03/17/05 | Eichel, S | 0.40 | ATTEND TEL CONF RE LANDLORDS' COMMENTS TO DIP FINANCING | ATTEND TEL CONF RE LANDLORDS' COMMENTS TO DIP FINANCING IN CONNECTION WITH RESOLVING LANDLORDS' OBJECTIONS TO DIP FINANCING MOTION |
| 03/17/05 | LaMaina, K | 0.90 | ATTEND CONFERENCE CALL | ATTEND CONFERENCE CALL WITH M. CHLEBOVEC ON AIRPLANE DISPOSITION (.9) |
| 03/17/05 | Zimmerman, G | 0.50 | MEETING W/ K. MACHAN | NO FURTHER INFORMATION |
| 03/18/05 | Lam, S | 0.90 | T/C RE WACHOVIA COMMENTS TO CONTROL AGREEMENTS | NO FURTHER INFORMATION |
| 03/21/05 | Bonachea, L | 0.30 | RETURN VARIOUS CALLS RE: PROCEDURES FOR FILING PROOFS OF CLAIM | NO LONGER WITH THE FIRM |
| 03/22/05 | Zimmerman, G | | PHONE CALLS | NO FURTHER INFORMATION |
| 03/23/05 | Neckles, P | 1.50 | CONFERENCES AND CORRESPONDENCE REGARDING FINAL DIP ORDER | CONFERENCES AND E-MAILS WITH J. BAKER, A. MARGOLIS RE FINAL DIP ORDER |
| 03/26/05 | LaMaina, K | 0.20 | CONFERENCE RE AIRPLANE DISPOSITION AND | CONFERENCE RE AIRPLANE DISPOSITION WITH R. BEINE (.2) |
| 03/28/05 | Mack III, W | 1.00 | INTERNAL REVIEW AND DISCUSSION OF AMENDMENT | NO LONGER WITH THE FIRM |
| 03/28/05 | Paoli, J | 0.40 | MEETING RE UTILITIES REQUESTS FOR ADEQUATE ASSURANCE | MEETING WITH S.FELD RE REQUESTS RECEIVED BY VARIOUS UTILITIES FOR ADEQUATE ASSURANCE OF PAYMENT PURSUANT TO UTILITIES ORDER |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 03/29/05 | Davis, E | 1.20 | PREP FOR AND PARTICIPATE IN CONF. CALL RE AUCTION | PREP FOR AND PARTICIPATE IN CONF. CALL WITH GULIHUY AND CHLEBOVEC RE AUCTION |
| 03/29/05 | Mack III, W | 1.00 | CALLS RE: AMENDMENT | NO LONGER WITH THE FIRM |
| 03/29/05 | Paoli, J | 0.60 | MEETING RE UPDATES ON WD CASE DEVELOPMENTS | MEETING WITH WINN-DIXIE TEAM RE STATUS OF CASE AND CHANGE OF VENUE |
| 03/29/05 | Yeung, C | 0.20 | COORDINATE/ATTEND MEETING RE: COMMENTS TO LITIGATION SCHEDULES | NO LONGER WITH THE FIRM |
| 03/30/05 | Toussi, S | 0.50 | CALLS RE SAME | PHONE CALLS AND CORRESPONDENCE WITH PACA CLAIMANTS RESULTING FROM TEAM MEETING (.5) |
| 03/31/05 | Mack III, W | 1.30 | CALLS REGARDING SACAS | NO LONGER WITH THE FIRM |
| 04/01/05 | Toussi, S | 0.50 | DISCUSS CASE STATUS AND UPCOMING PROJECTS | TEAM MEETING TO DISCUSS STATUS OF VARIOUS PACA AND RECLAMATION MATTERS |
| 04/04/05 | Toussi, S | 0.30 | VARIOUS CALLS RE PACA RECONCILIATION | DISCUSS STATUS OF PACA RECONCILIATIONS WITH VARIOUS PACA VENDORS AND PROCEDURES FOR RESOLVING THE CLAIMS |
| 04/05/05 | Teicher, S | 0.50 | FOLLOW-UP CALLS/EMAILS RE POST-CLOSING ITEMS | FOLLOW-UP CALLS/EMAILS WITH S. LAM RE ACCOUNT NOTIFICATION LETTERS |
| 04/06/05 | McDonald Henry, S | 0.60 | WEEKLY UPDATE CONFERENCE CALL | PARTICIPATE IN WEEKLY CONFERENCE CALL WITH REPRESENTATIVES OF MANAGEMENT AND FINANCIAL ADVISORS RELATING TO BUSINESS AND REORGANIZATION DEVELOPMENTS |
| 04/07/05 | Schwartz, W | 0.20 | CONF. W/S. HENRY | CONF. W/S. HENRY RE: LOCAL COUNSEL ISSUES AND TRANSFER TAXES |
| 04/08/05 | Toussi, S | 0.50 | AND CONFERENCE CALL TO ADDRESS ISSUES REPORT | CONFERENCE CALL WITH XROADS AND INTERNAL TEAM MEMBERS TO DISCUSS RECLAMATION REPORTS PREPARED FOR RECLAMATION CLAIMANTS (.5) |
| 04/08/05 | Toussi, S | 0.50 | CONFERENCE CALLS RE SAME | CONFERENCE CALLS TO DISCUSS XROADS REPORT ON STATUS OF PACA CLAIMS AND PROCEDURES FOR FINAL RECONCILIATIONS (.5) |
| 04/11/05 | Dowd, A | 0.30 | DISCUSSION WITH R. OLSHAN | NO FURTHER INFORMATION |

4

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 04/12/05 | Bonachea, L | 0.30 | PARTICIPATE IN CONFERENCE CALL RE: UPDATE ON VENUE HEARING | NO LONGER WITH THE FIRM |
| 04/12/05 | Eichel, S | 0.10 | PARTICIPATE IN CONF. CALL RE: VENUE HEARING | PARTICIPATE IN CONF. CALL RE: UPDATING WINN-DIXIE TEAM WITH RESPECT TO OUTCOME OF MOTION TO TRANSFER VENUE HEARING |
| 04/12/05 | Feld, S | 0.30 | STATUS CALL RE: VENUE | PARTICIPATE IN CONFERENCE CALL W/ SKADDEN TEAM RE: STATUS UPDATE ON VENUE LITIGATION |
| 04/12/05 | LaMaina, K | 0.20 | DISCUSS BUSINESS REASONS FOR TRANSACTION AND | DISCUSS BUSINESS REASONS FOR TRANSACTION WITH FOOD LION WITH CREDITORS COMMITTEE AND FINANCIAL ADVISORS (.2) |
| 04/12/05 | LaMaina, K | 0.70 | ATTEND CONFERENCE CALL RE VENUE | ATTEND CONFERENCE CALL RE VENUE WITH LENDER (.7) |
| 04/12/05 | Teicher, S | 1.00 | REVIEW AND DISCUSS INSURANCE FINANCING MOTION AND DIP RESTRICTIONS | REVIEW AND DISCUSS INSURANCE FINANCING MOTION WITH S. HENRY AND RELATED RESTRICTIONS IN THE DIP FACILITY |
| 04/12/05 | Toussi, S | 1.00 | VARIOUS MEETINGS AND CORRESPONDENCE RE SAME | MEETINGS WITH TEAM MEMBERS AND CORRESPONDENCE WITH MEMBERS TO DISCUSS RECONCILIATIONS OF VARIOUS RECLAMATION VENDORS AND PROCEDURES FOR FINAL RECONCILIATIONS |
| 04/13/05 | Toussi, S | 1.00 | ADDRESS ISSUES RE KRAFT AND GENERAL MILLS, MEETINGS RE SAME | REVIEW KRAFT RECLAMATION DEMAND AND INVOICES, AND DISCUSS WITH TEAM MEMBERS ANALYSIS OF KRAFT CLAIM AND APPLICABLE DEFENSES |
| 04/14/05 | Teicher, S | 0.50 | TCS/EMAILS RE DIP FACILITY ISSUES | TELECONFERENCES/EMAILS WITH K. LAMAINA RE DIP FACILITY ISSUES RE ASSET SALE PROCEEDS |
| 04/14/05 | Toussi, S | 1.00 | VARIOUS CONFERENCE CALLS AND EMAIL CORRESPONDENCE RE SAME | ANALYZE AND RESEARCH ISSUES RAISED BY XROADS RE RECONCILIATIONS OF RECLAMATION CLAIMS AND DISCUSS ANALYSIS WITH XROADS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 04/14/05 | Toussi, S | 1.80 | VARIOUS CONFERENCE CALLS AND CORRESPONDENCE RE PACA ISSUES AND SETTLEMENT OFFERS RE PACA CLAIMS | DISCUSS WITH PACA CLAIMANTS STATUS OF PACA CLAIMS (1.0); NEGOTIATE SETTLEMENT OFFERS FROM SUCH CLAIMANTS (.8) |
| 04/15/05 | Barusch, R | 0.40 | RECEIVING ASSIGNMENT AND DISCUSSIONS | TELEPHONE CONFERENCE WITH J. BAKER REGARDING CASE |
| 04/15/05 | LaMaina, K | 0.20 | ATTEND CONFERENCE CALL RE HARAHAN DEAL | NO FURTHER INFORMATION |
| 04/15/05 | Teicher, S | 1.00 | TCS/EMAILS RE LEASEHOLD MTGES. AND OTHER POST-CLOSING MATTERS | TELECONFERENCES/EMAILS WITH C. STUART RE LEASEHOLD MORTGAGES |
| 04/18/05 | Davis, E | 2.10 | PREP FOR AND PARTICIPATE IN CONF. CALL ON SALE OF ENTERPRISE STORES | PREP FOR AND PARTICIPATE IN CONF. CALL WITH XROADS (S. KAROL, ETC.) ON SALE OF ENTERPRISE STORES |
| 04/18/05 | Dowd, A | 0.20 | DISCUSSION WITH R. GRAY | NO FURTHER INFORMATION |
| 04/18/05 | LaMaina, K | 2.70 | CORRESPONDENCE RE PHARMACY TRANSACTION AND CONFERENCE CALL RE SAME | REVIEW MEMORANDUM FROM COMPANY REGARDING PHARMACY DISPOSITION (M. LEBLANC) (1.8);  CONFERENCE CALL WITH COMPANY RE PHARMACY DISPOSITION (.9) |
| 04/18/05 | LaMaina, K | 3.20 | NEGOTIATIONS RE AIRPLANE 2 SALE AND ATTEND CONFERENCE CALL RE SAME | NEGOTIATIONS RE AIRPLANE 2 SALE WITH K. NARODICK (2.3); ATTEND CONFERENCE CALL WITH M. BARR ON PURCHASE AGREEMENT (.9) |
| 04/18/05 | LaMaina, K | 0.90 | CORRESPONDENCE RE FOOTPRINT AND ATTEND CONFERENCE CALL RE SAME | REVIEW CORRESPONDENCE FROM COMPANY ON FOOTPRINT (.6); ATTEND CONFERENCE CALL WITH COMPANY ON FOOTPRINT (.3) |
| 04/18/05 | Matz, T | 0.60 | CALL RE: STATUS REPORT | CALL WITH E. GORDON RE: RECLAMATION STATUS REPORT |
| 04/18/05 | Toussi, S | 1.00 | NEGOTIATE FEES AND INTEREST EXPENSES | NEGOTIATE WITH PACA CLAIMANTS THE APPLICABILITY OF ATTORNEY FEES AND INTEREST EXPENSES TO THE PACA CLAIMS |
| 04/19/05 | McDonald Henry, S | 1.60 | PARTICIPATE IN CONFERENCE CALL REGARDING CASE DEVELOPMENTS AND BUSINESS ISSUES RELEVANT TO THE CASE | PARTICIPATE IN WEEKLY CONFERENCE CALL REGARDING CASE DEVELOPMENTS AND BUSINESS ISSUES RELEVANT TO THE CASE WITH TOP WINN-DIXIE MANAGERS AND FINANCIAL ADVISORS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 04/19/05 | Toussi, S | 1.50 | VARIOUS INTERNAL CONFERENCE CALLS RE SETTLEMENT, INCLUDING STATUS MEETING, REVIEW PACA CHART RE STATUS OF CLAIMS IN PREPARATION FOR STATUS CALL | DISCUSS INTERNALLY WITH TEAM MEMBERS VARIOUS SETTLEMENT PROPOSALS FOR PACA VENDORS AND PREPARE CHART STATUS OF VARIOUS CLAIMS |
| 04/20/05 | Bonachea, L | 0.20 | RETURN CALLS RE: QUESTIONS REGARDING PROOFS OF CLAIM | NO LONGER WITH THE FIRM |
| 04/20/05 | Davis, E | 2.10 | PREP FOR AND PARTICIPATE IN CONF. CALL ON ENTERPRISE SALES, CONFI AGREEMENTS AND BID LETTERS | PREP FOR AND PARTICIPATE IN CONF. CALL LED BY SHEON KAROL ON ENTERPRISE SALES, CONFI AGREEMENTS AND BID LETTERS |
| 04/20/05 | Sambur, K | 0.80 | ATTEND CONFERENCE CALL WITH RESPECT TO THE SAME | ATTEND CONFERENCE CALL REGARDING VENDOR REBATE AND POTENTIAL SET-OFF WITH S. HENRY AND L. APPEL |
| 04/20/05 | Stuart, C | 0.50 | CALL RE TITLE INSURANCE ISSUE | NO LONGER WITH THE FIRM |
| 04/21/05 | Teicher, S | 0.50 | REVIEW AND DISCUSS EXTENSION LETTER | REVIEW AND DISCUSS EXTENSION LETTER FOR REAL ESTATE REQUIREMENTS WITH W. MACK |
| 04/22/05 | Teicher, S | 1.00 | CONF CALL RE DIP MATTERS | TELECONFERENCE RE DIP MATTERS RELATED TO REAL ESTATE WITH C. STUART, W. SCHWARTZ AND LENDERS COUNSEL |
| 04/22/05 | Toussi, S | 0.40 | CONFERENCE CALL RE SAME | CONFERENCE CALL WITH XROADS TO DISCUSS THE LATEST DRAFT OF THE RECLAMATION REPORT (.4) |
| 04/22/05 | Toussi, S | 1.00 | VARIOUS TEAM MEETINGS AND CONFERENCE CALL RE STATUS OF CLAIMS | TEAM MEETINGS TO DISCUSS THE STATUS OF THE PACA CLAIMS AND OUTSTANDING ISSUES NEEDED TO BE RESOLVED IN CONNECTION WITH FILING PACA REPORT WITH THE COURT |
| 04/25/05 | Neckles, P | 2.00 | CONFERENCES AND CORRESPONDENCE REGARDING REAL ESTATE COLLATERAL ISSUES | CONFERENCES AND E-MAILS WITH W. SCHWARTZ AND S. TEICHER RE REAL ESTATE COLLATERAL ISSUES |
| 04/25/05 | Teicher, S | 0.50 | CALLS/EMAILS RE DIP AGREEMENT | CALLS/EMAILS RE DIP AGREEMENT AND REAL ESTATE REQUIREMENTS WITH C. STUART AND W. SCHWARTZ |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 04/25/05 | Toussi, S | 0.80 | VARIOUS TEAM MEETINGS | TEAM MEETING TO DISCUSS STATUS OF PACA REPORT PRIOR TO FILING WITH THE COURT (.8) |
| 04/27/05 | Dowd, A | 0.30 | DISCUSSION WITH S. REISNER | NO FURTHER INFORMATION |
| 04/27/05 | Kaloudis, D | 0.20 | CONFER WITH S. FELD | CONFER WITH S. FELD RE: STATUS OF UTILITY COMPANIES' DEMANDS FOR ADEQUATE ASSURANCE AND BOND DEMANDS |
| 04/27/05 | Teicher, S | 0.50 | CALLS/EMAILS RE LEASHOLD TITLE POLICIES | TELECONFERENCES/EMAILS WITH C. STUART RE LEASEHOLD TITLE POLICIES |
| 04/27/05 | Toussi, S | 0.70 | CONFERENCE CALL RE SAME TO DISCUSS STATUS | CONFERENCE CALL TO DISCUSS THE STATUS OF THE PACA REPORT TO BE FILED WITH THE COURT (.7) |
| 04/28/05 | Neckles, P | 0.50 | CONFERENCES AND CORRESPONDENCE REGARDING REAL ESTATE FINANCING COLLATERAL ISSUES | CONFERENCES AND E-MAILS WITH S. LAM AND S. TEICHER RE REAL ESTATE FINANCING COLLATERAL ISSUES |
| 04/28/05 | Teicher, S | 0.20 | FOLLOW UP CALLS RE. REAL ESTATE | FOLLOW UP CALLS RE REAL ESTATE WITH C. STUART |
| 04/28/05 | Toussi, S | 0.40 | CONFERENCE CALL RE SAME TO DISCUSS STATUS | CONFERENCE CALL TO DISCUSS REMAINING OUTSTANDING ISSUES WITH PACA VENDORS WHOSE CLAIMS WERE NOT FINALLY RECONCILED IN THE PACA REPORT (.4) |

8

**EXHIBIT E-2**
**VAGUELY DESCRIBED "WORK ON," "ATTENTION TO,"**
**"DILIGENCE" ACTIVITIES**
**(FIRST INTERIM FEE APPLICATION)**

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 02/23/05 | Lam, S | 2.10 | ATTENTION TO OTHER ISSUES RE: CLOSING DATE DELIVERABLES | FINALIZE AND DELIVER OTHER CLOSING DATE DELIVERIES |
| 02/25/05 | Baker, D | 1.60 | CONTINUE WORK ON RECLAMATION ISSUES | CONTINUE REVIEW OF CLAIMS ASSERTED BY RECLAMATION CREDITORS TO ANALYSIS OF TREATMENT OF SAME |
| 02/25/05 | Baker, D | 1.00 | CONTINUE WORK ON PROFESSIONAL RETENTION ISSUES | FURTHER REVIEW OF ISSUES RELATED TO COURT-APPROVED RETENTIONS OF PROFESSIONAL FIRMS |
| 02/25/05 | Baker, D | 0.80 | CONTINUE WORK ON UTILITY ISSUES | REVIEW CLAIMS ASSERTED BY UTILITY PROVIDERS |
| 02/25/05 | Turetsky, D | 0.20 | DILIGENCE RE: SAME | REVIEW AND ANALYZE ISSUES REGARDING DEBTORS' RELATIONSHIP WITH CLEAR CHANNEL |
| 02/27/05 | Baker, D | 1.00 | CONTINUE WORK ON DIP ISSUES | ANALYZE OBJECTIONS RAISED TO DIP FINANCING BY LANDLORDS AND OTHER CREDITORS |
| 02/27/05 | Turetsky, D | 4.90 | ADDITIONAL DILIGENCE RE: ITEMS/EVENTS/DEADLINES FOR LISTING ON CASE CALENDAR | REVIEW OF CASE FILINGS AND OTHER MATERIALS IN CONNECTION WITH IDENTIFYING ITEMS/EVENTS/DEADLINES FOR INCLUSION ON CASE CALENDAR |
| 02/28/05 | Baker, D | 1.80 | CONTINUE WORK ON LEASE REJECTION ISSUES | FURTHER REVIEW OF LEASES TO BE REJECTED AND TIMETABLE FOR DOING SO |
| 02/28/05 | Lam, S | 0.50 | ATTENTION TO POST-CLOSING ISSUES RE: SECURITY AGREEMENT SCHEDULES | FINALIZE POST-CLOSING SECURITY AGREEMENT SCHEDULES |
| 02/28/05 | Lam, S | 2.50 | DIRECTION LETTERS AND AGREEMENTS AND OTHER DELIVERABLES | |
| 03/01/05 | Baker, D | 0.60 | CONTINUE WORK ON KERP ISSUES | ANALYZE DRAFT KERP PROPOSAL |
| 03/01/05 | Eichel, S | 0.30 | WORK ON SERVICE ISSUES | ANALYZE SERVICE ISSUES WITH RESPECT TO SERVICE OF RECLAMATION NOTICE |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/01/05 | Eichel, S | 0.60 | WORK ON ISSUES RE DATABASE FOR RECLAMATION CLAIMANTS | ANALYZE ISSUES WITH RESPECT TO PREPARING DATABASE FOR RECLAMATION CLAIMANTS IN CONNECTION WITH REVIEW AND ANALYSIS OF VENDORS' RECLAMATION CLAIMS |
| 03/01/05 | Lam, S | 0.60 | ATTENTION TO OTHER POST-CLOSING ISSUES RE: STOCK CERTIFICATES | FINALIZING OTHER POST-CLOSING ISSUES RE: STOCK CERTIFICATES AND CANCELLED CERTIFICATES TO BE RETURNED TO WD |
| 03/01/05 | Turetsky, D | 1.30 | DILIGENCE RE: INFORMATION REQUIRED TO BE INCLUDED IN SCHEDULES AND STATEMENTS | REVIEW OF DOCUMENTS RECEIVED FROM DEBTORS AND PUBLICLY FILED DOCUMENTS IN CONNECTION WITH IDENTIFYING INFORMATION REQUIRED TO BE INCLUDED IN SCHEDULES AND STATEMENTS |
| 03/01/05 | Turetsky, D | 0.30 | FURTHER DILIGENCE RE: SAME | REVIEW DOCUMENTS (INCLUDING FIRST DAY PLEADINGS) CONCERNING DEBTORS' CHAPTER 11 CASES TO ADDRESS INQUIRY RAISED BY E. HARRIS |
| 03/02/05 | Baker, D | 1.60 | CONTINUE WORK ON DIP ISSUES | CONTINUE REVIEW OF OBJECTIONS TO PROVISIONS OF PROPOSED DIP FINANCING |
| 03/02/05 | Gray, R | 0.10 | FOLLOWUP RE: PWC RETENTION ISSUES PER UST MEETING | REVIEW/COMMUNICATE W/ CLIENT RE: NEXT STEPS ON PWC RETENTION ISSUES PER MEETING WITH U.S. TRUSTEE |
| 03/02/05 | Lam, S | 1.00 | ATTENTION TO ISSUES RE: INSURANCE CERTIFICATE | OBTAIN INSURANCE CERTIFICATE |
| 03/02/05 | McDonald Henry, S | 0.60 | WORK ON PRESCRIPTION SALE ISSUES | ANALYSIS OF PRESCRIPTION SALE ISSUES |
| 03/02/05 | Neckles, P | 3.00 | WORK ON ISSUES ASSOCIATED WITH DIP LEASEHOLD COLLATERAL | REVIEW AND REVISE DIP LEASEHOLD COLLATERAL |
| 03/02/05 | Turetsky, D | 0.20 | DILIGENCE RE: SAME | ANALYSIS OF ISSUES RAISED BY LETTER FROM M. HELD |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/02/05 | Turetsky, D | 1.10 | ADDITIONAL DILIGENCE RE: POTENTIAL CONFLICT PARTIES FOR DISCLOSURE IN SKADDEN RETENTION AFFIDAVIT | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES IN CONNECTION WITH SKADDEN RETENTION DECLARATION |
| 03/03/05 | Lam, S | 0.90 | ATTENTION TO OTHER ISSUES RE: POST-CLOSING DELIVERIES | CONTINUED FINALIZING AND DELIVERING POST-CLOSING DELIVERIES |
| 03/03/05 | Turetsky, D | 1.20 | DILIGENCE RE: SERVICE REQUIREMENTS IN CONNECTION WITH MOTION TO DISPOSE OF CERTAIN PHARMACEUTICAL PROPERTY | RESEARCH RE: SERVICE REQUIREMENTS IN CONNECTION WITH MOTION TO DISPOSE OF CERTAIN PHARMACEUTICAL PROPERTY |
| 03/04/05 | Eichel, S | 1.20 | WORK ON RECLAMATION ISSUES | ANALYZE RECLAMATION ISSUES |
| 03/06/05 | Turetsky, D | 1.00 | DILIGENCE IN CONNECTION WITH CASE CALENDAR | REVIEW CASE CALENDAR AND CASE-RELATED DOCUMENTS TO IDENTIFY ADDITIONAL ITEMS TO INCLUDE IN CALENDAR |
| 03/07/05 | Baker, D | 0.70 | CONTINUE WORK ON DIP AVAILABILITY ISSUES | ANALYZE CONDITIONS FOR AVAILABILITY UNDER PROPOSED DIP FINANCING |
| 03/07/05 | Lam, S | 0.80 | ATTENTION TO ISSUES RE: POST CLOSING DELIVERY REQUIREMENTS (INSURANCE CERTIFICATE REVISIONS; COLLATERAL DOCUMENTS, ETC.) | FINALIZING AND DELIVERING POST CLOSING DELIVERY REQUIREMENTS INCLUDING INSURANCE CERTIFICATE REVISIONS, COLLATERAL DOCUMENTS, ETC. |
| 03/07/05 | Turetsky, D | 0.40 | DILIGENCE RE: SAME | REVIEW NOTICES SERVED IN CONNECTION WITH RESOLVING NOTICING ISSUES AND QUESTIONS ARISING FROM MEETING WITH S. HENRY, K. SAMBUR, AND J. PAOLI |
| 03/08/05 | Baker, D | 0.50 | WORK ON RETENTION ISSUES WITH RESPECT TO PROPOSED RETENTION OF AL TOGUT | ANALYZE TERMS OF PROPOSED RETENTION OF AL TOGUT AS CONFLICTS COUNSEL |
| 03/08/05 | Eichel, S | 0.90 | WORK ON ISSUES RE PACA ORDER | ANALYZE ISSUES RE: PACA ORDER |
| 03/08/05 | Eichel, S | 0.20 | WORK ON ISSUES RE: PAYMENT OF RECLAMATION AND PACA CLAIMS | ANALYZE ISSUES RE: PAYMENT OF RECLAMATION AND PACA CLAIMS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/08/05 | Eichel, S | 0.50 | WORK ON ISSUES RE TIMING OF PAYMENT OF PACA CLAIMS | ANALYZE ISSUES RE: TIMING OF PAYMENT OF PACA CLAIMS |
| 03/08/05 | Eichel, S | 0.20 | WORK ON SERVICE ISSUES | ANALYZE PACA SERVICE ISSUES |
| 03/08/05 | Eichel, S | 0.50 | WORK ON ISSUES RE: RETENTION OF ADDITIONAL ORDINARY COURSE PROFESSIONALS | ANALYZE ISSUES RE: RETENTION OF ADDITIONAL ORDINARY COURSE PROFESSIONALS |
| 03/08/05 | LaMaina, K | 4.20 | CONTINUED WORK RE ASSETS SALES INCLUDING AIRPLANE, OUTPARCEL SALE AND STORE DISPOSITIONS | REVIEW/REVISE AIRPLANE DISPOSITIONS (2.4); REVIEW OUTPARCEL SALE (.7); REVIEW STORE DISPOSITIONS (1.1) |
| 03/08/05 | Lam, S | 2.00 | ATTENTION TO OTHER POST CLOSING MATTERS | REVISING AND FINALIZING OTHER POST CLOSING MATTERS |
| 03/08/05 | Mack III, W | 1.00 | FOLLOWED UP ON THIRD PARTY CLAIMS | NO LONGER WITH THE FIRM |
| 03/08/05 | Matz, T | 0.90 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW OF OUTSTANDING PACA CLAIMS, MATTERS AND RESOLUTIONS THEREOF |
| 03/08/05 | Matz, T | 0.90 | AND FOLLOW UP WORK RE: SAME | CONTINUING REVIEW OF PREPETITION CLAIMS AND ADVERSARY COMPLAINT FILED BY M. GARDNER |
| 03/08/05 | Turetsky, D | 0.50 | DILIGENCE RE: TECHNOLOGY LEASES WITH CIT | REVIEW RE: TECHNOLOGY LEASES WITH CIT |
| 03/08/05 | Turetsky, D | 0.20 | DILIGENCE RE: SERVICE OF DIP INTERIM ORDER AND NOTICE OF FINAL HEARING | REVIEW SERVICE OF DIP INTERIM ORDER AND NOTICE OF FINAL HEARING IN CONNECTION WITH PREPARATIONS FOR FINAL HEARING ON DIP |
| 03/08/05 | Turetsky, D | 0.20 | DILIGENCE RE: SAME | REVIEW CASE DOCKET IN CONNECTION WITH ADDRESSING ISSUES RAISED ON CALL WITH MELINDA OF ROCKINGHAM COUNTY TAX DEPARTMENT |
| 03/09/05 | Davis, E | 0.70 | WORK ON ISSUES RE AIRPLANE DEAL INCL. FORM OF ORDER | ANALYZE ISSUES RE: SALE OF AIRPLANE DEAL AS SAME RELATE TO FORM OF ORDER |
| 03/09/05 | Eichel, S | 0.20 | WORK ON ISSUES RE: RECLAMATION DEMAND LETTERS | REVIEW RECLAMATION DEMAND LETTERS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 03/09/05 | Eichel, S | 0.30 | WORK AN ISSUES RE: DAIRY MART FINAL RECLAMATION ORDER | ANALYZE ISSUES RE: DAIRY MART FINAL RECLAMATION ORDER IN CONNECTION WITH RESPONDING TO RECLAMATION OBJECTIONS |
| 03/09/05 | Eichel, S | 0.20 | WORK ON RECLAMATION CLAIMS ISSUES | ANALYZE RECLAMATION CLAIMS ISSUES |
| 03/09/05 | Eichel, S | 0.40 | WORK ON ISSUES RE: RECLAMATION CLAIM OF SOUTHERN WINE AND SPIRITS | ANALYZE ISSUES RE: RECLAMATION CLAIM OF SOUTHERN WINE AND SPIRITS |
| 03/09/05 | Eichel, S | 0.30 | WORK ON PACA ISSUES | ANALYZE PACA ISSUES |
| 03/09/05 | Eichel, S | 0.10 | WORK ON ISSUES RE: RECLAMATION AND PACA EXCEL SPREADSHEETS | REVIEW EXCEL SPREADSHEETS RE: RECLAMATION AND PACA CLAIMS |
| 03/09/05 | Eichel, S | 0.20 | WORK ON ISSUES RE: ORDINARY COURSE PROFESSIONALS | ANALYZE ISSUES RE: RETENTION OF ORDINARY COURSE PROFESSIONALS |
| 03/09/05 | Eichel, S | 0.20 | WORK ON ISSUES RE: RETENTION OF XROADS | ANALYZE ISSUES RE: RETENTION OF XROADS |
| 03/09/05 | Lam, S | 0.50 | ATTENTION TO POST CLOSING ISSUES: RE: CONTROL AGREEMENT TERMINATION LETTERS | REVISING AND FINALIZING CONTROL AGREEMENT TERMINATION LETTERS |
| 03/09/05 | Lam, S | 1.50 | CREDIT CARD PROCESSOR LETTERS | REVISE CREDIT CARD PROCESSOR LETTERS |
| 03/09/05 | Lam, S | 2.2 | RE MATTERS AND OTHER ISSUES | REVISE CREDIT CARD PROCESSOR LETTERS |
| 03/09/05 | Margolis, A | 0.80 | WORK ON EQUITY ONE/DB NDA AND | DRAFT NON-DISCLOSURE AGREEMENTS FOR EQUITY ONE AND DEUTSCHE BANK WITH RESPECT TO SHARING CONFIDENTIAL BUSINESS INFORMATION |
| 03/09/05 | Matz, T | 0.40 | WORK AND BEER MERCHANTS PAYMENT MATTERS | CONTINUING REVIEW OF PAYMENTS MADE TO BEER VENDOR |
| 03/09/05 | Turetsky, D | 0.20 | DILIGENCE RE: SERVICE OF UTILITIES MOTION UPON UTILITIES | REVIEW SERVICE OF UTILITIES MOTION UPON UTILITIES IN CONNECTION WITH ADDRESSING INQUIRY RAISED BY S. HENRY RE: SAME |
| 03/10/05 | Baker, D | 1.30 | CONTINUE WORK ON EMPLOYEE ISSUES | CONTINUE TO REVIEW TERMS OF KERP PROPOSAL FOR EMPLOYEES |
| 03/10/05 | Baker, D | 1.80 | CONTINUE WORK WITH RESPECT TO DIP ISSUES RAISED BY COMMITTEE | FURTHER ANALYSIS OF OBJECTIONS TO TERMS OF DIP RAISED BY CREDITORS COMMITTEE |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/10/05 | Eichel, S | 0.60 | WORK ON ISSUES RE: RETENTION OF TOGUT LAW FIRM | ANALYZE ISSUES RE: RETENTION OF TOGUT, SEGAL & SEGAL LAW FIRM |
| 03/10/05 | Eichel, S | 0.40 | WORK ON ISSUES RE RETENTION OF XROADS | ANALYZE ISSUES RE: RETENTION OF XROADS |
| 03/10/05 | Lam, S | 4.20 | WORK ON POST CLOSING ISSUES | REVISING AND FINALIZING POST CLOSING ISSUES |
| 03/10/05 | Margolis, A | 0.30 | WORK ON ISSUES RE WESTERN UNION | REVIEW OF DRAFT AGENCY DEPOSIT ACCOUNT CONTROL AGREEMENT FROM WESTERN UNION AND ANALYZE ISSUES REGARDING WESTERN UNION MONEY ORDERS AND BANK ACCOUNTS ISSUES RELATED THERETO |
| 03/10/05 | Turetsky, D | 0.10 | DILIGENCE RE: HEARING REQUIREMENT WITH RESPECT TO OBJECTIONS FILED IN CONNECTION WITH LEASE REJECTION MOTION | RESEARCH RE: HEARING REQUIREMENT WITH RESPECT TO OBJECTIONS FILED IN CONNECTION WITH LEASE REJECTION MOTION |
| 03/10/05 | Turetsky, D | 0.20 | DILIGENCE RE: SAME | REVIEW MANAGEMENT SECURITY PLAN IN CONNECTION WITH ADDRESSING ISSUES RAISED BY TELEPHONE CALL WITH J. COLTIN |
| 03/11/05 | Baker, D | 0.40 | CONTINUE WORK ON ISSUES RELATED TO MEETING WITH CREDITORS COMMITTEE | PREPARE AGENDA FOR MEETING WITH CREDITORS COMMITTEE |
| 03/11/05 | Matz, T | 1.20 | FOLLOW UP WORK ON PACA REQUEST | CONTINUING REVIEW OF PACA TRUST REQUEST |
| 03/11/05 | Matz, T | 0.60 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW OF OTTERBOURG QUERY RE: DIP AND PACA CLAIMS PRIORITIES |
| 03/11/05 | McDonald Henry, S | 0.80 | WORK ON ISSUES RELATING TO BONDS | ANALYSIS OF ISSUES RELATING TO BONDS |
| 03/11/05 | Turetsky, D | 0.50 | DILIGENCE RE: LEASE WITH CIT TECHNOLOGY FINANCING SERVICES | FURTHER REVIEW RE: LEASE WITH CIT TECHNOLOGY FINANCING SERVICES IN CONNECTION WITH ADDRESSING INQUIRY FROM B. WOOD RE: SAME |
| 03/11/05 | Turetsky, D | 0.10 | DILIGENCE RE: COVER PLEADING FOR SUBMISSION OF RETENTION QUESTIONNAIRES FOR ORDINARY COURSE PROFESSIONALS | RESEARCH RE: OPEN ITEMS FOR COVER PLEADING FOR SUBMISSION OF RETENTION QUESTIONNAIRES FOR ORDINARY COURSE PROFESSIONALS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 03/11/05 | Turetsky, D | 0.40 | DILIGENCE RE: SAME | REVIEW DOCUMENTS PROVIDED BY DEBTORS IN CONNECTION WITH ADDRESSING INQUIRY CONCERNING ACCOUNT AT AMERICAN GATEWAY BANK |
| 03/12/05 | Eichel, S | 1.80 | WORK ON ISSUES RE REPLY TO RECLAMATION OBJECTIONS | ANALYZE RECLAMATION ISSUES IN CONNECTION WITH RESPONDING TO RECLAMATION OBJECTIONS |
| 03/12/05 | Eichel, S | 0.10 | WORK ON ISSUES RE OBJECTIONS TO DIP FINANCING | ANALYZE ISSUES RE: OBJECTIONS TO DIP FINANCING |
| 03/13/05 | Eichel, S | 0.30 | WORK ON SERVICE ISSUES | ANALYZE RECLAMATION SERVICE ISSUES |
| 03/13/05 | LaMaina, K | 5.20 | CONTINUE WORK RE ASSET SALE DISPOSITIONS RE STORES | REVISE ASSET DISPOSITION DOCUMENTS FOR FILING (5.2) |
| 03/13/05 | Turetsky, D | 5.80 | CONTINUE DILIGENCE IN CONNECTION WITH AGENDA RE: MARCH 15 HEARING | REVIEW AND COMMENT RE: AGENDA FOR MARCH 15 HEARING INCLUDING VERIFYING THAT COMPLETE BY REFERENCE TO ITEMS CONTAINED ON CASE DOCKET |
| 03/14/05 | Lam, S | 2.00 | WORK ON POST CLOSING ISSUES | REVISING AND FINALIZING POST CLOSING ISSUES |
| 03/14/05 | Roman, J | 1.10 | WORK RE: DISTRIBUTION OF AGENDA LETTER | REVIEW  DOCUMENTS RE: DISTRIBUTION OF AGENDA LETTER (.4); SERVE DOCUMENTS RE: SAME (.7) |
| 03/14/05 | Turetsky, D | 0.10 | DILIGENCE RE: SAME | REVIEW INTERNAL DOCUMENTS TO ADDRESS LEASE NOTES ISSUE ARISING FROM CALL WITH B. FRIEND |
| 03/15/05 | Eichel, S | 0.30 | WORK ON ISSUES RE AUTO INSURANCE MOTION | ANALYZE ISSUES RE: AUTO INSURANCE MOTION |
| 03/15/05 | Eichel, S | 0.80 | WORK ON ISSUES RE RETENTION OF PWC | ANALYZE ISSUES RE: RETENTION OF PWC |
| 03/15/05 | Eichel, S | 0.60 | WORK ON ISSUES RE RETENTION QUESTIONNAIRE | ANALYZE ISSUES RE: RETENTION QUESTIONNAIRE IN CONNECTION WITH RETENTION OF PROFESSIONALS |
| 03/15/05 | Eichel, S | 0.10 | WORK ON ISSUES RE RETENTION OF ORDINARY COURSE PROFESSIONALS | ANALYZE ISSUES RE: RETENTION OF ORDINARY COURSE PROFESSIONALS |
| 03/15/05 | Eichel, S | 0.30 | WORK ON ISSUES RE RETENTION OF OCPS | ANALYZE ISSUES RE: RETENTION OF OCPS |
| 03/15/05 | Eichel, S | 0.10 | WORK ON ISSUES RE RETENTION OF OCPS | ANALYZE ISSUES RE: RETENTION OF OCPS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/15/05 | Eichel, S | 0.30 | WORK ON NOTICE ISSUES | NO FURTHER INFORMATION |
| 03/15/05 | Lam, S | 4.30 | WORK ON POST CLOSING ISSUES | REVISING AND FINALIZING POST CLOSING ISSUES |
| 03/15/05 | Matz, T | 0.70 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW RE: PACA LOGGED CLAIMS TO DATE, PROCESS TIMELINE FOR REPORT AND PAYMENT |
| 03/15/05 | Toussi, S | 0.70 | FOLLOW UP WORK RE: SAME | FOLLOW UP WITH XROADS RE PACA RECONCILIATIONS AND LOGGED CLAIMS IN CONNECTION WITH SEGREGATION ISSUES AND TIMELINE |
| 03/15/05 | Turetsky, D | 0.50 | DILIGENCE RE: REQUEST FOR SHAREHOLDER LIST FROM KAYE SCHOLER | REVIEW FILED DOCUMENTS IN RESPONSE TO REQUEST FOR SHAREHOLDER LIST FROM KAYE SCHOLER TO DETERMINE ABILITY AND PROPRIETY TO ACCOMMODATE WITH REQUEST |
| 03/15/05 | Turetsky, D | 0.10 | DILIGENCE RE: PROOFS OF CLAIM FROM FLORIDA TAXING AUTHORITY | REVIEW PROOFS OF CLAIM FILED BY FLORIDA TAXING AUTHORITY IN CONNECTION WITH ADDRESSING ISSUES CONCERNING SAME |
| 03/16/05 | Eichel, S | 0.30 | WORK ON ISSUES RE RETENTION OF PWC AND CARLTON FIELDS | ANALYZE ISSUES RE: RETENTION OF PWC AND CARLTON FIELDS |
| 03/16/05 | Gray, R | 0.10 | ASSIST WITH WORK ON CARLTON FIELDS RETENTION APPLICATION | REVIEW ISSUES/COMMUNICATE W/ D. TURETSKY RE:  CARLTON FIELDS RETENTION APPLICATION |
| 03/16/05 | Turetsky, D | 0.40 | DILIGENCE RE: PWC RETENTION APPLICATION | REVIEW, ANALYSIS, AND RESEARCH RE: ISSUES CONCERNING AND INFORMATION REQUIRED IN CONNECTION WITH PWC RETENTION APPLICATION |
| 03/17/05 | Eichel, S | 0.10 | WORK ON SERVICE ISSUES | ANALYZE SERVICE ISSUES RE: REPLY TO DIP OBJECTIONS |
| 03/17/05 | Eichel, S | 0.30 | WORK ON ISSUES RE VENUE LITIGATION | ANALYZE ISSUES RE: MOTION TO TRANSFER VENUE LITIGATION |
| 03/17/05 | Eichel, S | 0.10 | WORK ON ISSUES RE PWC AND KPMG RETENTION | ANALYZE ISSUES RE: PWC AND KPMG RETENTION |
| 03/17/05 | Eichel, S | 0.30 | WORK ON OCP ISSUES | ANALYZE OCP ISSUES |
| 03/17/05 | Engelhardt, L | 0.20 | ATTEND TO SERVICE ISSUES | NO LONGER WITH FIRM |
| 03/17/05 | Lam, S | 0.40 | ATTENTION TO OTHER POST-CLOSING DIP ISSUES | FINALIZING OTHER POST-CLOSING DIP ISSUES |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/17/05 | Matz, T | 1.50 | FOLLOW UP RE: SAME | REVISIONS TO RESPONSE RE: PACA CLAIMS IN DIP BRIEF AND CONSENSUAL PACA ORDER |
| 03/17/05 | Toussi, S | 1.50 | FOLLOW UP RE: SAME | CALLS WITH PACA COUNSEL AND LEAD PLAINTIFF RE DEBTORS' RESPONSE TO PACA CLAIMANTS' OBJECTIONS TO DIP FINANCING ORDER |
| 03/17/05 | Turetsky, D | 0.40 | FURTHER DILIGENCE RE: PWC RETENTION APPLICATION | FURTHER REVIEW, ANALYSIS, AND RESEARCH RE: ISSUES IN CONNECTION WITH PWC RETENTION APPLICATION |
| 03/18/05 | Matz, T | 0.30 | FOLLOW UP RE: SEASONED POTATOES ISSUE UNDER PACA | CONTINUING REVIEW RE: SEASONED POTATOES ISSUE UNDER PACA |
| 03/18/05 | McDonald Henry, S | 0.40 | WORK REGARDING 365(D)(4) MOTION | ANALYSIS OF ISSUES RE: 365(D)(4) MOTION |
| 03/18/05 | McDonald Henry, S | 0.20 | WORK RE NORTH CAROLINA STORE AND REJECTION/ABANDONMENT ISSUES | ANALYSIS RE: NORTH CAROLINA STORE AND REJECTION/ABANDONMENT ISSUES |
| 03/21/05 | Eichel, S | 0.90 | WORK ON ISSUES RE AUTOMOBILE INSURANCE MOTION | ANALYZE ISSUES RE: AUTOMOBILE INSURANCE MOTION |
| 03/21/05 | McDonald Henry, S | 0.30 | WORK RE BILL OF SALE ISSUE AND ABANDONED PERSONALTY | ANALYSIS RE: BILL OF SALE ISSUE AND ABANDONED PERSONALTY |
| 03/21/05 | McDonald Henry, S | 0.10 | WORK RE CONDEMNATION ACTION IN KY | ANALYSIS RE: CONDEMNATION ISSUE IN KY |
| 03/21/05 | Turetsky, D | 0.40 | DILIGENCE RE: SAME | REVIEW AND ANALYSIS IN CONNECTION WITH PWC APPLICATION RE: DISTINCTIONS IN SARBANES-OXLEY SERVICES PROVIDED BY VARIOUS PROFESSIONALS |
| 03/22/05 | LaMaina, K | 4.30 | CONTINUE WORK RE SALE HEARING | PREPARE FOR SALE HEARING (4.3) |
| 03/22/05 | Matz, T | 0.40 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW RE: CALLS WITH E. GORDON & M. KRAGE RE: PACA CLAIMS LOG AND RECONCILIATION |
| 03/22/05 | Matz, T | 0.20 | FOLLOW UP RE: SAME | CONTINUING REVIEW WITH RESPECT TO CALL FROM C. ROY OF CHEVRON RE: CHEVRON RECLAMATION CLAIM AND ORDER |
| 03/22/05 | McDonald Henry, S | 0.70 | WORK ON ISSUES RE REVISED ORDER | ANALYZE ISSUE RE REVISED ORDER |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/22/05 | McDonald Henry, S | 1.20 | WORK ON NOTICE OF PRESENTMENT AND HEARING ISSUES REGARDING ORDER | ANALYSIS RE NOTICE OF PRESENTMENT AND HEARING ISSUES REGARDING ORDER |
| 03/22/05 | McDonald Henry, S | 0.10 | WORK RE AUTO INSURANCE MOTION | ANALYSIS RE AUTO INSURANCE MOTION |
| 03/23/05 | Eichel, S | 0.80 | WORK ON ISSUES RE AUTO INSURANCE MOTION | ANALYZE ISSUES RE: AUTO INSURANCE MOTION |
| 03/23/05 | Gray, R | 0.60 | FURTHER WORK ON BAIN RETENTION ISSUES IN VIEW OF ENGAGEMENT LETTER TERMS | REVIEW/ANALYZE RETENTION ISSUES IN VIEW OF BAIN ENGAGEMENT LETTER TERMS |
| 03/23/05 | Leamy, J | 0.20 | FOLLOW UP RE: CHRISTENSEN GROUP CONTRACT | NO FURTHER INFORMATION |
| 03/23/05 | McDonald Henry, S | 0.70 | WORK ON ISSUE RE NON-DISTURBANCE AGREEMENT ON PARTICULAR LEASE | ANALYSIS OF NON-DISTURBANCE AGREEMENT ON PARTICULAR LEASE |
| 03/23/05 | Turetsky, D | 2.00 | DILIGENCE IN CONNECTION WITH SAME | REVIEW, ANALYSIS, AND RESEARCH RE: IDENTIFYING AND RESOLVING OPEN ISSUES IN CONNECTION WITH BAIN RETENTION APPLICATION |
| 03/24/05 | Baker, D | 1.80 | CONTINUE WORK ON POSSIBLE RECLAMATION SETTLEMENT AND RELATED ISSUES | ANALYZE TERMS OF PROPOSED RECLAMATION SETTLEMENT |
| 03/24/05 | Eichel, S | 0.30 | WORK ON ISSUES RE RECLAMATION CLAIMS | ANALYZE ISSUES RE RECLAMATION CLAIMS |
| 03/24/05 | Turetsky, D | 0.30 | DILIGENCE RE: SAME | FURTHER REVIEW, ANALYSIS, AND RESEARCH RE: IDENTIFYING AND RESOLVING OPEN ISSUES IN CONNECTION WITH BAIN RETENTION APPLICATION |
| 03/25/05 | Baker, D | 1.70 | CONTINUE WORK ON KERP ISSUES | CONTINUE ANALYSIS OF TERMS OF PROPOSED KERP |
| 03/25/05 | Baker, D | 1.80 | CONTINUE WORK ON VENUE ISSUES | FURTHER REVIEW OF VENUE OBJECTIONS |
| 03/25/05 | Eichel, S | 0.30 | WORK ON ISSUES RE RETENTION QUESTIONNAIRES | ANALYZE ISSUES RE RETENTION QUESTIONNAIRES |
| 03/25/05 | Feld, S | 0.60 | FOLLOW UP ON RECLAMATION ISSUES | REVIEW PLEADINGS REGARDING RECLAMATION CLAIMS PROCEDURES |
| 03/25/05 | Feld, S | 1.10 | WORK ON UTILITY ISSUES | ANALYZE ADEQUATE ASSURANCE REQUESTS OF VARIOUS UTILITIES |
| 03/25/05 | Leamy, J | 0.20 | FOLLOW UP ON DIXON REALTY MATTERS | DETERMINE WHETHER INFORMATION RECEIVED ON DIXON REALTY TRUST PROPERTY IS ADEQUATE FOR SCHEDULES |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 03/25/05 | McDonald Henry, S | 0.80 | WORK ON ISSUES REGARDING PASS THROUGH CERTIFICATES | ANALYSIS OF ISSUES REGARDING PASS THROUGH CERTIFICATES |
| 03/25/05 | McDonald Henry, S | 0.40 | WORK ON LEASE REJECTION SERVICE ISSUES | ANALYSIS RE: LEASE REJECTION SERVICE ISSUES |
| 03/28/05 | Baker, D | 0.40 | WORK WITH RESPECT TO QUESTIONS POSED BY COMMITTEE | REVIEW QUESTIONS POSED BY CREDITORS COMMITTEE TO DEBTORS |
| 03/28/05 | Baker, D | 0.70 | WORK ON POSSIBLE RECLAMATION SETTLEMENT ISSUES | REVIEW LATEST RECLAMATION SETTLEMENT PROPOSAL |
| 03/28/05 | Davis, E | 0.40 | CONTINUE WORK ON WIRE ISSUES | CONTINUE TO ADDRESS ISSUES REGARDING WIRE TRANSFERS RELATING TO COMPETING BIDS ON FOOD LION STORE SALE |
| 03/28/05 | Eichel, S | 0.10 | WORK ON NOTICE ISSUES FOR AGENDA IN CONNECTION WITH SALE OF PLANE | REVIEW AND ANALYZE NOTICE ISSUES FOR AGENDA IN CONNECTION WITH SALE OF PLANE |
| 03/28/05 | Gray, R | 0.70 | WORK ON VENUE TRANSFER ISSUES AND ADMINISTRATIVE LOGISTICS | REVIEW/ANALYZE VENUE TRANSFER ISSUES AND STRATEGIZE RE: ADMINISTRATIVE LOGISTICS |
| 03/28/05 | Leamy, J | 2.90 | WORK ON MISCELLANEOUS ISSUES RE: SCHEDULES AND STATEMENTS | DETERMINE THE REMAINING INFORMATION NEEDED FOR PREPARATION OF SCHEDULES AND STATEMENTS AND WHAT NEEDS TO BE DONE TO OBTAIN SUCH INFORMATION |
| 03/28/05 | Neckles, P | 1.00 | WORK ON VARIOUS ISSUES IN CONNECTION WITH COLLATERAL FOR DIP FINANCING | REVIEW AND REVISE COLLATERAL FOR DIP FINANCING |
| 03/28/05 | Turetsky, D | 0.20 | DILIGENCE RE: TERMS OF SKADDEN RETENTION IN CONNECTION WITH INQUIRY FROM R. GRAY | RESEARCH AND REVIEW OF SKADDEN ENGAGEMENT LETTER AND RETENTION DOCUMENTS IN CONNECTION WITH INQUIRY FROM R. GRAY RE: TERMS OF SKADDEN RETENTION |
| 03/28/05 | Turetsky, D | 1.60 | DILIGENCE IN CONNECTION WITH POTENTIAL CONFLICT DISCLOSURES | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/28/05 | Turetsky, D | 1.50 | DILIGENCE IN CONNECTION WITH NOTICE OF REQUEST FOR 328 APPROVAL OF COMPENSATION IN CONNECTION WITH RETENTION OF BLACKSTONE AND XROADS | RESEARCH RE: OPEN ISSUES IN CONNECTION WITH PREPARING NOTICE OF REQUEST FOR 328 APPROVAL OF COMPENSATION IN CONNECTION WITH RETENTION OF BLACKSTONE AND XROADS |
| 03/28/05 | Turetsky, D | 0.90 | DILIGENCE RE: SAME | RESEARCH IN CONNECTION WITH RESOLVING INQUIRY FROM GAIL OF WASTE MANAGEMENT SYSTEMS RE: CERTAIN WINN-DIXIE ACCOUNTS WITH WASTE MANAGEMENT SYSTEMS |
| 03/29/05 | Baker, D | 1.30 | CONTINUE WORK ON RECLAMATION SETTLEMENT ISSUES | CONTINUE ANALYSIS OF LATEST RECLAMATION SETTLEMENT PROPOSAL |
| 03/29/05 | Eichel, S | 0.10 | WORK ON ISSUES RE PROPOSED RECLAMATION ORDER | REVIEW PROPOSED RECLAMATION ORDER |
| 03/29/05 | LaMaina, K | 0.30 | FOLLOW-UP RE WIRE | REVIEW WIRE PAYMENT ON SALE (.3) |
| 03/29/05 | Matz, T | 0.70 | WORK ON INTEREST, COST, FREIGHT, FEES AND OTHER CHARGES ISSUES | CONTINUING RESOLUTION OF INTEREST, COST, FREIGHT, FEES AND OTHER CHARGES ISSUES |
| 03/29/05 | Turetsky, D | 0.60 | DILIGENCE IN CONNECTION WITH POTENTIAL NON-DEBTOR STAY ISSUES IN RELATION TO LAWSUITS AGAINST WINN-DIXIE JOINING NON-DEBTOR PARTIES | RESEARCH RE: POTENTIAL NON-DEBTOR STAY ISSUES IN CONNECTION WITH LAWSUITS FILED AGAINST WINN-DIXIE AND JOINING NON-DEBTOR PARTIES |
| 03/29/05 | Turetsky, D | 2.80 | FURTHER DILIGENCE IN CONNECTION WITH POTENTIAL CONFLICT DISCLOSURES | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES IN CONNECTION WITH SKADDEN RETENTION DECLARATION |
| 03/29/05 | Turetsky, D | 0.40 | DILIGENCE IN CONNECTION WITH NOTICE OF HEARING RE: TOGUT RETENTION | REVIEW AND REVISE NOTICE OF HEARING RE: TOGUT RETENTION APPLICATION |
| 03/29/05 | Turetsky, D | 0.30 | DILIGENCE RE: SAME | ANALYSIS AND RESEARCH TO ADDRESS ISSUE RAISED CONCERNING ALLEGED CLAIM HELD BY MCKEE FOODS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/30/05 | Eichel, S | 0.60 | WORK ON ISSUES RE MOTION TO EXTEND AUTOMATIC STAY TO AI-TI E. PAN IN CONNECTION WITH HAMM LITIGATION | ANALYZE ISSUES RE: MOTION TO EXTEND AUTOMATIC STAY TO AI-TI E. PAN (COMPANY EMPLOYEE) IN CONNECTION WITH HAMM LITIGATION |
| 03/30/05 | Matz, T | 0.60 | WORK ON PACA MATTERS ATTORNEY'S FEE CLAIMS AND OTHER CHARGES | CONTINUING RESOLUTION OF PACA MATTERS - ATTORNEYS' FEE CLAIMS AND OTHER CHARGES |
| 03/30/05 | Roman, J | 2.50 | WORK RE: PREPARATION AND SERVICE OF VARIOUS MOTIONS AND RESPONSES | REVIEW DOCUMENTS FOR SERVICE RE: MOTIONS AND RESPONSES (1.1); REVISE MOTIONS WITH DISTRIBUTION MATERIALS RE: SAME (1.4) |
| 03/30/05 | Turetsky, D | 0.30 | DILIGENCE RE: GUARANTOR PARTIES TO INDENTURE IN CONNECTION WITH PREPARATION OF SCHEDULES | LOCATE AND REVIEW INDENTURE TO IDENTIFY GUARANTOR PARTIES IN CONNECTION WITH PREPARATION OF SCHEDULES |
| 03/31/05 | Baker, D | 1.40 | CONTINUE WORK ON RECLAMATION ISSUES | REVIEW RECLAMATION COUNTER-OFFER TO ANALYZE SAME |
| 03/31/05 | Eichel, S | 0.20 | WORK ON ISSUES RE: HAMM LITIGATION | ANALYZE ISSUES RE: MOTION TO EXTEND AUTOMATIC STAY TO COMPANY EMPLOYEE IN CONNECTION WITH HAMM LITIGATION |
| 03/31/05 | Feld, S | 0.70 | WORK ON RECLAMATION ISSUES | FINALIZE SUPPLEMENTAL MEMO RE: VALUING RECLAMATION CLAIMS |
| 03/31/05 | Feld, S | 2.30 | WORK ON ADEQUATE ASSURANCE ISSUES | CONTINUE TO ANALYZE ADEQUATE ASSURANCE REQUESTS OF UTILITIES |
| 03/31/05 | Matz, T | 0.40 | FOLLOW UP WORK RE: SAME | CONTINUING RESOLUTION OF P. GRANNIS POSITION RE: PAYMENT FOR ATTORNEY FEES |
| 03/31/05 | McDonald Henry, S | 0.30 | FOLLOW UP PROVISION OF ORDER TO JARED STERN | PROVIDE REVISED ORDER TO JARED STERN |
| 03/31/05 | McDonald Henry, S | 0.70 | FURTHER WORK REGARDING RECLAMATION ISSUES | FURTHER ANALYSIS REGARDING RECLAMATION ISSUES |
| 03/31/05 | Turetsky, D | 0.20 | DILIGENCE IN CONNECTION WITH SAME | RESEARCH IN CONNECTION WITH LEASES CONCERNING IKON FINANCIAL |

13

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/31/05 | Turetsky, D | 0.20 | DILIGENCE IN CONNECTION WITH INQUIRY REGARDING STATUS OF SLIP AND FALL LITIGATIONS | RESEARCH RE: STATUS OF SLIP AND FALL LITIGATION AGAINST THE DEBTORS IN CONNECTION WITH RESPONDING TO INQUIRY CONCERNING SAME |
| 04/01/05 | Baker, D | 1.20 | FURTHER WORK WITH RESPECT TO VENUE LITIGATION | ANALYZE VENUE ISSUES RAISED IN CONNECTION WITH MOTION TO CHANGE VENUE |
| 04/01/05 | Baker, D | 0.60 | WORK ON CONSIGNMENT CLAIM ISSUES | REVIEW CLAIMS ASSERTED BY CONSIGNMENT SELLERS |
| 04/01/05 | Feld, S | 1.40 | WORK ON RECLAMATION ISSUES | COMMENCE RESEARCH ON CASE LAW IN 11TH CIR. AND LOWER COURTS RE: RECLAMATION CLAIMS |
| 04/01/05 | Feld, S | 0.20 | WORK ON ISSUES RELATING TO BELLSOUTH | REVIEW ADEQUATE ASSURANCE REQUEST OF BELLSOUTH |
| 04/01/05 | Matz, T | 0.50 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW AND REVISIONS TO PACA CLAIMS, REPORT, RECONCILIATIONS AND POTENTIAL DISPUTES |
| 04/01/05 | McDonald Henry, S | 0.30 | WORK ON ISSUES RELATING TO PACA RECONCILIATION | ANALYSIS OF ISSUES RELATING TO PACA RECONCILIATION |
| 04/01/05 | McDonald Henry, S | 0.40 | WORK ON TIMING ISSUES RELATED TO SALE OF SECOND AIRPLANE | ANALYSIS OF TIMING ISSUES RELATED TO SALE OF SECOND AIRPLANE |
| 04/01/05 | McDonald Henry, S | 0.80 | WORK ON ISSUES RELATED TO DJM RETENTION | ANALYSIS OF ISSUES RELATED TO DJM RETENTION |
| 04/01/05 | McDonald Henry, S | 0.30 | WORK ON ISSUES RELATING TO UTILITY ORDER | ANALYSIS OF ISSUES RELATING TO UTILITY ORDER |
| 04/01/05 | Roman, J | 2.50 | WORK RE: PREPARATION AND SERVICE OF VARIOUS MOTIONS AND NOTICES | REVISE DOCUMENTS FOR SERVICE RE: NOTICES OF MOTIONS (1.2); REVIEW MOTIONS FOR SERVICE LIST RECIPIENTS RE: SAME (1.3) |
| 04/01/05 | Turetsky, D | 0.20 | DILIGENCE RE: SERVICE REQUIREMENT FOR SECOND SUPPLEMENTAL DECLARATION BY DENNIS SIMON | RESEARCH RE: SERVICE REQUIREMENTS FOR SECOND SUPPLEMENTAL DECLARATION BY DENNIS SIMON |
| 04/04/05 | Eichel, S | 0.40 | WORK ON ISSUES RE AUTO-INSURANCE MOTION | ANALYZE ISSUES RE: AUTO-INSURANCE MOTION |
| 04/04/05 | Feld, S | 0.70 | WORK ON RECLAMATION ISSUES | REVIEW AND ANALYZE RESEARCH ON CASE LAW IN 11TH CIR. AND LOWER COURTS RE: RECLAMATION CLAIMS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 04/04/05 | McDonald Henry, S | 0.30 | WORK ON ISSUES RELATING TO CANE RIVER OBJECTION | ANALYSIS OF ISSUES RELATING TO CANE RIVER OBJECTION TO PROPOSED 365(D)(4) ORDER |
| 04/04/05 | McDonald Henry, S | 0.20 | WORK RE 1146(C) ISSUE | ANALYSIS OF 1146(C) ISSUE AND USE OF 1146(C) IN CONNECTION WITH ASSET DISPOSITION |
| 04/05/05 | Eichel, S | 1.20 | WORK ON ISSUES RE HAMM LITIGATION, INCLUDING ISSUES RELATING TO PROPOSED COMPLAINT | ANALYZE ISSUES RE: HAMM LITIGATION, INCLUDING ISSUES RELATING TO PROPOSED COMPLAINT |
| 04/05/05 | Feld, S | 1.50 | WORK ON UTILITY ISSUES RE: CLOSED STORES | ANALYZE HOW CLOSED LOCATIONS AFFECT ADEQUATE ASSURANCE REQUESTS OF VARIOUS UTILITIES |
| 04/05/05 | Feld, S | 2.70 | CONTINUE TO WORK ON ADEQUATE ASSURANCE ISSUES | CONTINUE TO ANALYZE ADEQUATE ASSURANCE REQUESTS |
| 04/05/05 | Lam, S | 0.20 | ATTENTION TO OUTSTANDING POST-CLOSING DELIVERY REQUIREMENTS | FINALIZING OUTSTANDING POST-CLOSING DELIVERY REQUIREMENTS |
| 04/05/05 | McDonald Henry, S | 0.10 | WORK ON ISSUES RELATING TO DJM RETENTION | ANALYSIS OF ISSUES RELATING TO DJM RETENTION |
| 04/06/05 | Baker, D | 1.80 | CONTINUE WORK ON VENUE ISSUES | FURTHER ANALYSIS OF VENUE ISSUES |
| 04/06/05 | Baker, D | 1.20 | FURTHER WORK WITH RESPECT TO PROPOSED STORE FOOTPRINT | REVIEW CHANGES TO PROPOSED STORE FOOTPRINT |
| 04/06/05 | Eichel, S | 0.20 | WORK ON ISSUES RE INVOICE TERMS THAT MAY AFFECT RECLAMATION CLAIM | ANALYZE ISSUES RE: INVOICE TERMS THAT MAY AFFECT RECLAMATION CLAIM |
| 04/06/05 | Eichel, S | 0.10 | WORK ON ISSUE RE FILING OCP QUESTIONNAIRES | ANALYZE ISSUE RE FILING OCP QUESTIONNAIRES |
| 04/06/05 | Feld, S | 0.60 | WORK ON BOND ISSUES | REVIEW LIST OF OUTSTANDING SURETY BONDS |
| 04/06/05 | Feld, S | 2.80 | WORK ON UTILITY ISSUES | CONTINUE TO REVIEW AND ANALYZE ADEQUATE ASSURANCE REQUESTS OF VARIOUS UTILITIES |
| 04/07/05 | Baker, D | 2.20 | CONTINUE WORK ON VENUE ISSUES | CONTINUE REVIEW OF VENUE ISSUES |
| 04/07/05 | Feld, S | 1.30 | CONTINUE TO WORK ON UTILITY ISSUES | CONTINUE TO REVIEW AND ANALYZE ADEQUATE ASSURANCE REQUESTS OF VARIOUS UTILITIES |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|---------------------|---------------------|
| 04/07/05 | Matz, T | 0.60 | FOLLOW UP WORK AND CORRESPONDENCE RE: SAME | CONTINUING REVISIONS TO VARIOUS PACA CLAIM RECONCILIATIONS AS PER CALL WITH E. GORDON |
| 04/08/05 | Baker, D | 0.70 | WORK ON LEASE REJECTION DEADLINE ISSUES | REVIEW LEASE REJECTION DEADLINE ISSUES |
| 04/08/05 | Baker, D | 0.80 | WORK WITH RESPECT TO PROPOSED STORE SALES | ANALYZE PROPOSED PROCEDURES TO DEAL WITH SALES OF STORES TO BE CLOSED |
| 04/08/05 | Matz, T | 0.40 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW AND REVISIONS TO VARIOUS PACA CLAIM RECONCILIATIONS AS PER CALL WITH E. GORDON |
| 04/10/05 | Eichel, S | 0.30 | WORK ON ISSUES RE BURDEN OF PROOF IN CONNECTION WITH MOTION TO TRANSFER VENUE WHERE DEBTOR IS MOVANT | ANALYZE ISSUES RE BURDEN OF PROOF IN CONNECTION WITH MOTION TO TRANSFER VENUE WHERE DEBTOR IS MOVANT |
| 04/10/05 | Matz, T | 0.80 | FOLLOW UP WORK RE: SAME | CONTINUING ANALYSIS WITH E. GORDON ET AL. RE: RECLAMATION ANALYSIS |
| 04/11/05 | Bonachea, L | 0.20 | ATTEND TO FILING ISSUES RE: 365(D)(4) LEASE EXTENSION ORDER | NO LONGER WITH THE FIRM |
| 04/11/05 | Bonachea, L | 0.20 | ATTEND TO SERVICE ISSUES RE: 4/12 UPDATED AGENDA | NO LONGER WITH THE FIRM |
| 04/11/05 | Feld, S | 0.10 | WORK ON DEPT. OF AGRICULTURE BOND ISSUE | REVIEW CORRESPONDENCE DATED 4/7/05 FROM LIBERTY MUTUAL INSURANCE CO. RE: FLA AGRICULTURE PRODUCT DEALER BOND |
| 04/11/05 | Gray, R | 0.20 | WORK ON 328 NOTICE ISSUES | REVIEW/ANALYZE 328 NOTICE ISSUES AND NEXT STEPS |
| 04/11/05 | Gray, R | 0.10 | WORK ON 341 NOTICE ISSUES | REVIEW/ANALYZE 341 NOTICE ISSUES IN VIEW OF VENUE STATUS |
| 04/11/05 | Lam, S | 0.80 | ATTENTION TO POST-CLOSING OPEN ISSUES: RE: CONTROL AGREEMENTS AND UCCS | FINALIZING POST-CLOSING OPEN ISSUES RE: CONTROL AGREEMENTS AND UCCS |
| 04/11/05 | Matz, T | 0.80 | WORK ON RECLAMATION ISSUES | CONTINUING REVIEW OF VARIOUS RECLAMATION ISSUES |
| 04/11/05 | Matz, T | 0.20 | FOLLOW UP RE: PAYMENTS TO SUN CITY | VERIFYING PAYMENTS MADE TO SUN CITY |
| 04/11/05 | McDonald Henry, S | 0.70 | WORK REGARDING ISSUES RELATING TO DRAW ON FLORIDA AGRICULTURAL BOND | ANALYSIS OF ISSUES RE: DRAW ON FLORIDA AGRICULTURAL BOND |

16

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 04/11/05 | McDonald Henry, S | 0.60 | PULL ORDERS AND FOLLOW UP RE SAME | REVIEW AND ANALYZE ORDERS RELATING TO POSSIBLE DRAW ON FLORIDA AGRICULTURE BOND |
| 04/11/05 | McDonald Henry, S | 0.20 | WORK ON ISSUE RELATED TO MONTHLY OPERATING REPORT | ANALYSIS OF ISSUE RELATED TO MONTHLY OPERATING REPORT |
| 04/11/05 | McDonald Henry, S | 0.40 | FOLLOW UP RE ORDERS | REVIEW ORDERS FOR COMPLIANCE WITH PROVISIONS OF ORDERS |
| 04/11/05 | McDonald Henry, S | 0.10 | WORK RE MONTHLY OPERATING REPORTS | REVIEW RULES RELATING TO MONTHLY OPERATING REPORTS |
| 04/12/05 | Bonachea, L | 0.50 | ATTEND TO SERVICE ISSUES AND MASTER SERVICE LIST | NO LONGER WITH THE FIRM |
| 04/12/05 | Feld, S | 2.10 | WORK ON LIBERTY MUTUAL BOND ISSUES | ANALYZE DEMANDS BY UTILITIES AGAINST UTILITY BONDS ISSUED BY LIBERTY MUTUAL |
| 04/12/05 | Matz, T | 1.50 | WORK ON RECLAMATION ISSUE-LATE CLARIFICATION | CONTINUING REVIEW OF LATE CLARIFICATION OF RECLAMATION CLAIM ISSUE |
| 04/12/05 | Matz, T | 2.00 | FOLLOW UP WORK RE: KRAFT CLAIM, RECLAMATION STATUS, PROGRESS AND REPORT | CONTINUING ANALYSIS RE: KRAFT CLAIM, RECLAMATION STATUS, PROGRESS AND REPORT |
| 04/13/05 | Eichel, S | 0.20 | WORK ON ISSUES RE: STATUS OF RECLAMATION RECONCILIATION | REVIEW AND ANALYZE STATUS OF RECLAMATION RECONCILIATION |
| 04/13/05 | Eichel, S | 0.20 | WORK ON ISSUES RE LATE FILED RECLAMATION CLAIMS | ANALYZE ISSUES RE LATE FILED RECLAMATION CLAIMS |
| 04/13/05 | Eichel, S | 0.20 | WORK ON ISSUES RE: VENUE HEARING TRANSCRIPT | NO FURTHER INFORMATION |
| 04/13/05 | Eichel, S | 0.10 | WORK ON ISSUE RE RETENTION OF OCPS | ANALYZE ISSUE RE RETENTION OF OCPS |
| 04/13/05 | Feld, S | 0.30 | WORK ON DEPT. OF AGRICULTURE BOND ISSUES | REVIEW NOTICE OF FILING OF COMPLAINT BY HILLANDALE FARMS WITH FLA. COMMISSIONER OF AGRICULTURE |
| 04/13/05 | McDonald Henry, S | 0.10 | WORK ON SCHEDULE ISSUES RELATING TO OFFSETS AND VENDOR CLAIMS | ANALYSIS OF SCHEDULE ISSUES RELATING TO OFFSETS AND VENDOR CLAIMS |
| 04/14/05 | Eichel, S | 0.20 | WORK ON ISSUES RE INTERNAL DISTRIBUTION OF VENUE TRANSCRIPT | COORDINATE INTERNAL DISTRIBUTION OF VENUE HEARING TRANSCRIPT |
| 04/14/05 | Eichel, S | 0.30 | WORK ON ISSUES RE PRESS RELEASE | REVIEW AND ANALYZE PRESS RELEASE RE: VENUE TRANSFER HEARING |
| 04/14/05 | Eichel, S | 0.20 | WORK ON ISSUES RE HAMM LITIGATION | ANALYZE ISSUES RE HAMM LITIGATION |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 04/14/05 | Feld, S | 0.20 | WORK ON UTILITY ISSUE | CONTINUE TO REVIEW AND ANALYZE ADEQUATE ASSURANCE REQUESTS |
| 04/14/05 | Matz, T | 0.60 | WORK ON INTEREST AND FEE ISSUES | CONTINUING REVIEW OF INTEREST AND FEES WITH RESPECT TO PACA CLAIMS |
| 04/14/05 | McDonald Henry, S | 0.80 | WORK ON ISSUES RELATED TO RECLAMATION REPORT, INCLUDING DEADLINE AND COMPLIANCE WITH CT ORDER | ANALYSIS OF ISSUES RELATED TO RECLAMATION REPORT, INCLUDING DEADLINE AND COMPLIANCE WITH CT ORDER |
| 04/14/05 | McDonald Henry, S | 0.80 | WORK RE TIMING AND CONTENTS OF RECLAMATION STATEMENT | OUTLINE TIMING AND CONTENTS OF RECLAMATION STATEMENT |
| 04/14/05 | McDonald Henry, S | 3.50 | WORK ON ISSUES RELATING TO TRANSITION OF SPECIFIC MATTERS TO JACKSONVILLE FIRM | IDENTIFY ISSUES RELATING TO TRANSITION OF SPECIFIC MATTERS TO JACKSONVILLE FIRM |
| 04/15/05 | Eichel, S | 0.20 | WORK ON ISSUES RE RECLAMATION CLAIMS | ANALYZE RECLAMATION CLAIMS |
| 04/15/05 | Eichel, S | 0.10 | WORK ON ISSUES RE: OCP | ANALYZE ISSUES RE: RETENTION OF OCP |
| 04/15/05 | Gray, R | 1.60 | WORK ON PROCEDURAL/COORDINATION ISSUES RELATING TO TRANSFER | REVIEW ISSUES/PREPARE CHART RE: PROCEDURAL/COORDINATION MATTERS RELATING TO TRANSFER |
| 04/15/05 | Leamy, J | 0.40 | WORK ON BAR DATE PUBLICATION ISSUES | REVIEW AND ANALYSIS RE: LOCATION OF NEWSPAPERS IN WHICH BAR DATE NOTICE SHOULD BE PUBLISHED |
| 04/15/05 | Matz, T | 0.70 | WORK ON RECLAMATION VALUE MODEL MATTERS | REVISING RECLAMATION VALUE MODEL |
| 04/15/05 | Matz, T | 0.70 | FOLLOW UP WORK ON RECLAMATION REPORT AND CLAIMS ANALYSIS | REVISING RECLAMATION REPORT AND CLAIMS ANALYSIS |
| 04/15/05 | McDonald Henry, S | 0.20 | WORK ON SURETY ISSUES REGARDING LIBERTY MUTUAL | ANALYSIS OF SURETY ISSUES REGARDING LIBERTY MUTUAL |
| 04/15/05 | Turetsky, D | 0.90 | DILIGENCE RE: ELECTRONIC FILING PROCEDURES IN CONNECTION WITH INQUIRY FROM R. GRAY | RESEARCH RE: ELECTRONIC FILING PROCEDURES IN CONNECTION WITH INQUIRY FROM R. GRAY |
| 04/17/05 | Feld, S | 0.80 | WORK ON AGRICULTURE BOND ISSUES | REVIEW AGRICULTURAL PRODUCTS DEALER BOND AND FLA. STATUTES CITED THEREIN |
| 04/18/05 | Feld, S | 2.80 | WORK ON UTILITY ISSUES | RECONCILE ADEQUATE ASSURANCE REQUESTS OF VARIOUS UTILITIES WITH INFORMATION FROM WD |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 04/18/05 | Matz, T | 0.30 | FOLLOW UP CORRESPONDENCE RE: ADDITIONAL CLAIMS | CONTINUING REVIEW AND ANALYSIS OF ADDITIONAL RECLAMATION CLAIMS |
| 04/18/05 | Matz, T | 3.50 | WORK ON PACA RECONCILIATION ISSUES, FEES CLAIMED AND INTEREST RESOLUTIONS | CONTINUING ANALYSIS OF VARIOUS PACA RECONCILIATION ISSUES, FEES CLAIMED AND INTEREST CHARGES |
| 04/18/05 | Matz, T | 0.40 | FOLLOW UP WORK ON GEORGIA PRODUCE CLAIM | CONTINUING REVIEW RE: GEORGIA PRODUCE CLAIM |
| 04/18/05 | McDonald Henry, S | 0.70 | WORK ON ISSUE AND LANGUAGE RELATING TO EXTENSION OF FLORIDA BOND | ANALYSIS OF ISSUE AND LANGUAGE RELATING TO EXTENSION OF FLORIDA BOND |
| 04/18/05 | McDonald Henry, S | 0.60 | WORK ON SCRIPT SALE | WORK ON SCRIPT SALE: ANALYZE ISSUES RELATING TO PRESCRIPTION SALE |
| 04/19/05 | Feld, S | 1.10 | WORK ON AGRICULTURE BOND ISSUE | REVIEW COMPLAINT OF ZEPHYR EGG FILED WITH FLA DEPT OF AGRICULTURE BOND, POTENTIAL CLAIM THREATENED TO BE FILED BY SOUTHERN GOURMET FOODS WITH GA DEPT OF AGRICULTURE AND RELATED EMAILS |
| 04/19/05 | Matz, T | 0.60 | CORRESPONDENCE AND WORK ON INDEXING OF RECLAMATION CLAIMS AND | CORRESPONDENCE WITH XROADS RE: CREATING INDEX OF RECLAMATION CLAIMS AND REVIEW AND REVISE INDEX OF RECLAMATION CLAIMS |
| 04/20/05 | Baker, D | 0.30 | WORK WITH RESPECT TO SECTION 341 MEETING OF CREDITORS | REVIEW SPACE REQUIREMENTS FOR SECTION 341 MEETING OF CREDITORS |
| 04/20/05 | McDonald Henry, S | 0.30 | DIRECT FOLLOW UP WORK RE ISSUE | DRAFT OUTLINE RE: REBATE ISSUE |
| 04/21/05 | Feld, S | 0.10 | WORK ON BOND ISSUE | EMAIL TO D. BITTER RE CLECO'S UTILITY BOND |
| 04/21/05 | Lam, S | 0.30 | ATTENTION TO ISSUES RE: CONSENT TO EXTENSION OF TIME FOR POST-CLOSING DELIVERABLES | OBTAIN CONSENT TO EXTENSION OF TIME FOR POST-CLOSING DELIVERABLES |
| 04/21/05 | Lam, S | 0.50 | ATTENTION TO ISSUES RE: LENDER ASSIGNMENT | REVIEW DOCUMENTATION FOR LENDER ASSIGNMENT |
| 04/21/05 | Leamy, J | 0.40 | WORK ON MATTERS RE: 341 MEETING | ANALYSIS RE: 341 MEETING NOTICE |
| 04/21/05 | Matz, T | 0.60 | FOLLOW UP WORK RE: SAME | CONTINUING ANALYSIS OF STATUS OF PACA RECONCILIATIONS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 04/21/05 | Matz, T | 0.50 | FOLLOW UP RE: SAME | CONTINUING ANALYSIS RE: SOUTHERN GOURMET BOND PACA CLAIM AFTER CALLS WITH R. ADKINS |
| 04/21/05 | McDonald Henry, S | 0.10 | WORK ON TRM ISSUE | ANALYSIS OF TRM ISSUE |
| 04/21/05 | Turetsky, D | 0.20 | FOLLOW-UP DILIGENCE RE: SAME | REVIEW AND ANALYSIS OF LEASE REQUIREMENT TO PAY COMMON AREA MAINTENANCE IN CONNECTION WITH ISSUES RAISED BY INQUIRY FROM J. NGUYEN |
| 04/21/05 | Turetsky, D | 0.60 | DILIGENCE IN CONNECTION WITH CLAIM HELD BY BIRMINGHAM TOLEDO | REVIEW SCHEDULES AND ANALYSIS IN CONNECTION WITH CLAIM HELD BY BIRMINGHAM TOLEDO |
| 04/22/05 | Leamy, J | 1.20 | WORK ON CONTRACT REJECTION MATTERS | REVIEW CONTRACTS FOR UPCOMING REJECTION MOTION AND DETERMINE WHAT FURTHER INFORMATION IS NEEDED |
| 04/22/05 | Leamy, J | 1.50 | WORK ON PROOF OF CLAIM FORM AND NOTICING ISSUES | CONTINUE ANALYSIS RE: POTENTIAL CLAIM PARTIES TO RECEIVE BAR DATE NOTICE |
| 04/22/05 | McDonald Henry, S | 0.20 | FOLLOW UP ON ISSUE INVOLVING TRM | FURTHER ANALYSIS RE: ISSUE INVOLVING TRM |
| 04/24/05 | Turetsky, D | 0.20 | DILIGENCE IN CONNECTION WITH XROADS INDEMNIFICATION | RESEARCH IN CONNECTION WITH ISSUES CONCERNING INDEMNIFICATION OF XROADS UNDER DEBTORS' RETENTION OF SAME |
| 04/25/05 | Leamy, J | 0.40 | WORK ON MATTERS RE: REJECTION MOTION | REVIEW INFORMATION STILL NEEDED FOR REJECTION MOTION |
| 04/25/05 | Leamy, J | 0.30 | WORK ON MATTER RE: REMOVAL MOTION SERVICE PARTIES | SET UP PROCESS FOR OBTAINING LITIGATION PARTIES THAT NEED TO BE SERVED WITH MOTION TO EXTEND TIME TO REMOVE ACTIONS |
| 04/25/05 | Matz, T | 1.50 | WORK ON LEGAL ISSUES AND BACKGROUND FOR REPORT | PREPARATION OF LEGAL ISSUES AND BACKGROUND FOR RECLAMATION REPORT |
| 04/25/05 | Matz, T | 0.30 | FOLLOW UP RE: SAME | CONTINUING REVIEW AND ANALYSIS IN RESPECT OF CALL WITH E. GORDON RE: PREFERENCE ANALYSIS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 04/25/05 | Matz, T | 0.20 | FOLLOW UP RE: SAME | CONTINUING REVIEW AND ANALYSIS IN RESPECT OF CALL WITH B. KICHLER RE: PACA LICENSE AND RENEWAL |
| 04/25/05 | McDonald Henry, S | 0.10 | WORK RE BOUNCED CHECK | ANALYSIS OF ISSUES RE: BOUNCED CHECK |
| 04/25/05 | McDonald Henry, S | 0.20 | FURTHER WORK RE TRM ISSUES AND FOLLOW UP RE SAME | FURTHER ANALYSIS OF TRM ISSUES |
| 04/26/05 | Roman, J | 0.60 | WORK RE: SERVICE OF DECLARATION OF SARAH ROBINSON | REVIEW DOCUMENTS FOR DISTRIBUTION RE: DECLARATION OF SARAH ROBINSON (.2); SERVE DOCUMENTS RE: SAME (.4) |
| 04/27/05 | Davis, E | 0.80 | WORK ON PLANE #2 SALE | ANALYZE AND ADDRESS OPEN ISSUES ON REVISED PROVISIONS OF APA WITH RESPECT TO PLANE #2 SALE |
| 04/27/05 | Feld, S | 1.60 | WORK ON AGRICULTURE BOND ISSUES | STRATEGIZE W/R/T EXTENSION OF TIME FOR NEW BOND FOR FLA DEPT OF AGRICULTURE |
| 04/27/05 | Feld, S | 1.60 | WORK ON ADEQUATE ASSURANCE, DEPOSIT & UTILITY BOND ISSUES | CONTINUE TO ANALYZE ADEQUATE ASSURANCE REQUESTS AND DEMANDS ON SURETY BONDS BY VARIOUS UTILITIES |
| 04/27/05 | Matz, T | 0.60 | WORK ON KRAFT AND RUSSELL OIL CLAIMS | CONTINUING ANALYSIS OF KRAFT AND RUSSELL OIL RECLAMATION CLAIMS |
| 04/27/05 | McDonald Henry, S | 0.80 | WORK ON ISSUES RELATING TO TAMPA ELECTRIC | ANALYSIS OF ISSUES RE: TAMPA ELECTRIC |
| 04/27/05 | Turetsky, D | 0.10 | DILIGENCE RE: SAME | REVIEW AND ANALYSIS OF ISSUES CONCERNING CONTRACT WITH CATALINA MARKETING IN RESPONSE TO CALL FROM D. MEYERS RE: SAME |
| 04/27/05 | Turetsky, D | 0.70 | DILIGENCE RE: SAME | RESEARCH AND ANALYSIS RE: REQUIREMENTS FOR PRESENT VALUE CALCULATIONS IN CONNECTION WITH CLAIMS UNDER SUPPLEMENTAL RETIREMENT PLAN |
| 04/28/05 | Baker, D | 1.30 | CONTINUE WORK ON RECLAMATION SETTLEMENT ISSUES | REVIEW REVISIONS TO RECLAMATION SETTLEMENT PROPOSAL |
| 04/28/05 | Feld, S | 0.30 | WORK ON ALLTEL ISSUES | RESOLVED ALLTEL'S THREAT TO TERMINATE PHONE SERVICE |

21

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 04/29/05 | Feld, S | 0.30 | WORK ON DEPT. OF AGRICULTURE ISSUES | CONTINUE TO STRATEGIZE W/R/T EXTENSION OF TIME FOR NEW BOND FOR FLA DEPT OF AGRICULTURE |
| 04/29/05 | McDonald Henry, S | 1.00 | FOLLOW UP TO CALL | ANALYSIS OF RECLAMATION RECONCILIATION ISSUES  IN LIGHT OF CALL |
| 04/29/05 | McDonald Henry, S | 0.80 | WORK ON ISSUES RELATED TO AIRPLANE SALE | ANALYSIS OF ISSUES RELATING TO AIRPLANE SALE |
| 04/29/05 | McDonald Henry, S | 0.30 | WORK ON 328 ISSUE AND CORRESPONDENCE SMITH HULSEY RE SAME | ANALYSIS OF 328 ISSUE AND CORRESPONDENCE SMITH HULSEY RE: SAME |

22

**EXHIBIT E-3**
**OTHER VAGUELY DESCRIBED ACTIVITIES**
**(FIRST INTERIM FEE APPLICATION)**

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 02/26/05 | Margolis, A. | 0.10 | CORRESPONDENCE RE ISSUES PERTAINING TO DIP FINANCING | DRAFT AND REVIEW EMAIL CORRESPONDENCE WITH DIP FINANCING TEAM RE ISSUES PERTAINING TO DIP FINANCING (.1) |
| 03/01/05 | Gray, R | 0.20 | ASSIST WITH EQUITY SECURITY HOLDER LISTS | REVIEW/ADDRESS ISSUES RE: PREPARATION OF EQUITY SECURITY HOLDER LISTS FOR FILING |
| 03/01/05 | Margolis, A | 0.40 | AND STRATEGY RE MEMO THERETO | REVISE MEMO REGARDING POTENTIAL OBJECTIONS OF LANDLORDS, RECLAMATION CLAIMANTS TO DIP FINANCING |
| 03/01/05 | Margolis, A | 0.20 | CORRESPONDENCE RE SERVICE ISSUES AND PROPOSED FINAL ORDER | DRAFT AND REVIEW EMAIL CORRESPONDENCE RE DISTRIBUTION OF PROPOSED FINAL ORDER AND ISSUES RELATED THERETO |
| 03/02/05 | Gray, R | 0.10 | ASSIST WITH MASTER SERVICE LIST ISSUES | CONFER W/ L. BONACHEA RE: MASTER SERVICE LIST UPDATING/FILING |
| 03/02/05 | Gray, R | 0.10 | ASSIST WITH SERVICE ISSUES | CONFER W/ L. BONACHEA TO ADDRESS PLEADING SERVICE ISSUES |
| 03/02/05 | Neckles, P | 0.50 | REVIEW CORRESPONDENCE | REVIEW E-MAILS FROM OTTERBOURG STEINDLER |
| 03/03/05 | Bonachea, L | 0.50 | COORDINATE RE: RECLAMATION SERVICE | NO LONGER WITH THE FIRM |
| 03/03/05 | Bonachea, L | 0.40 | ADDRESS VARIOUS ISSUES RELATING TO THE EXTRANET | NO LONGER WITH THE FIRM |
| 03/03/05 | Gray, R | 0.10 | ASSIST WITH SERVICE ISSUES ON PHARMACY MOTION | CONFER W/ A. RAVIN RE: NECESSARY SERVICE PARTIES FOR PHARMACY MOTION |
| 03/03/05 | Gray, R | 0.10 | ASSIST WITH PRELIMINARY WORK ON ORDERS FOR HEARING TOMORROW | REVIEW/IDENTIFY NECESSARY REVISIONS TO CERTAIN ORDERS FOR HEARING TOMORROW |
| 03/05/05 | Zeigler (Taouchanova), V | 4.50 | REVIEW AND ANALYZE VARIOUS PLEADINGS | REVIEW AND ANALYZE PRECEDENTS FOR DIP FINANCING ORDERS AND BRIEFS IN SUPPORT OF DIP MOTIONS IN THE SECOND CIRCUIT WITH RESPECT TO PLEDGE OF LEASES |

1

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/07/05 | Gray, R | 0.10 | ASSIST WITH RESPONSE TO REAL ESTATE LEASE INQUIRY | REVIEW/STRATEGIZE RE: PROPER RESPONSE TO REAL ESTATE LEASE INQUIRY |
| 03/07/05 | Gray, R | 0.10 | COORDINATE RE: OCP LETTER AND QUESTIONNAIRE | EMAIL EXCHANGE W/ S. HENRY AND S. EICHEL RE: ISSUES ON OCP LETTER AND QUESTIONNAIRE |
| 03/07/05 | LaMaina, K | 0.50 | ASSET DISPOSITIONS AND REVIEW CORRESPONDENCE | REVIEW MY NOTES AND CORRESPONDENCE FROM M. CHLEBOVEC ON COMPANY DISPOSITIONS (.5) |
| 03/07/05 | Neckles, P | 0.50 | CORRESPONDENCE REGARDING LEASEHOLD MORTGAGE PROCESS | DRAFT E-MAILS REGARDING LEASEHOLD MORTGAGE PROCESS |
| 03/07/05 | Ravin, A | 0.40 | ADDRESS VARIOUS ISSUES RELATED TO SAME | ANALYZE PRESCRIPTION TRANSFER MOTION |
| 03/07/05 | Schwartz, W | 0.80 | REVIEW CORRESP. AND MATERIALS | REVIEW CORRESPONDENCE AND MATERIALS FROM SMITH, GAMBRELL RE LEASEHOLD MORTGAGES |
| 03/08/05 | Gray, R | 0.10 | COORDINATE RE: E-MAIL CONSENT FORM AND NOTICE LIST | CONFER W/ L. BONACHEA RE: E-MAIL CONSENT FORM AND NOTICE LIST |
| 03/08/05 | Gray, R | 0.10 | ASSIST WITH RESPONSE TO INQUIRY ON STORE | EMAIL EXCHANGE W/ A. RAVIN RE: ADDRESSING INQUIRY RELATING TO STORE 901 |
| 03/08/05 | Gray, R | 0.10 | ASSIST WITH UTILITY ORDER FOR HEARING | REVIEW/COMMENT ON UTILITY ORDER FOR HEARING |
| 03/08/05 | Gray, R | 0.20 | ASSIST WITH AGENDA LETTER | REVIEW/REVISE AGENDA LETTER |
| 03/08/05 | Ravin, A | 0.30 | ADDRESS ISSUES RELATED TO SAME | ANALYZE PASS THROUGH CERTIFICATES |
| 03/09/05 | Gray, R | 0.10 | ASSIST WITH PASS THROUGH CERTIFICATE ISSUE | REVIEW/STRATEGIZE RE: PASS THROUGH CERTIFICATE ISSUE |
| 03/09/05 | Ravin, A | 0.20 | ADDRESS SERVICE ISSUES RELATED TO LEASE REJECTION ORDER WITH SEVERAL STORES | COORDINATE AND MONITOR SERVICE MATTERS RELATED TO LEASE REJECTION ORDER AS TO SEVERAL STORES |
| 03/09/05 | Schwartz, W | 0.20 | CORRESP. RE LEASEHOLD INTERESTS TO BE MORTGAGED FOR DIP | CORRESPONDENCE WITH SMITH, GAMBRELL RE LEASEHOLD INTERESTS TO BE MORTGAGED FOR DIP FINANCING |
| 03/10/05 | Gray, R | 0.10 | ASSIST WITH SERVICE ISSUE ON REJECTION MOTION | REVIEW/EMAIL EXCHANGE PROVIDING DIRECTION RE: HANDLING SERVICE ISSUE ON REJECTION MOTION |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 03/10/05 | Ziegler (Taouchanova), V | 1.20 | VARIOUS EMAILS RE: DISTRIBUTION OF FINAL ORDER | DRAFT EMAIL TO D. STANFORD AND W. LITTLE RE: LANDLORDS OBJECTING TO PLEDGE OF LEASES AND ANALYSIS OF FINAL DIP ORDERS ENTERED IN THE SECOND CIRCUIT |
| 03/11/05 | Gray, R | 0.10 | COORDINATE RE: BLACKSTONE AND XROADS FINAL ORDER SCHEDULING ISSUES FOR AGENDA LETTER | REVIEW/OBTAIN AND PROVIDE INFORMATION RE: BLACKSTONE AND XROADS FINAL ORDER SCHEDULING ISSUES FOR AGENDA LETTER |
| 03/11/05 | Mack III, W | 1.00 | CORRESPONDENCE REGARDING WACHOVIA AFFIDAVIT | NO LONGER WITH THE FIRM |
| 03/11/05 | Schwartz, W | 0.20 | CORRESP. RE SAME | REVIEW CORRESPONDENCE FROM SMITH, GAMBRELL AND C. STUART RE LEASEHOLD MORTGAGES |
| 03/12/05 | Liou, J | 5.00 | ASSIST W/DUE DILIGENCE | NO LONGER WITH THE FIRM |
| 03/12/05 | Matz, T | 0.30 | CORRESPONDENCE RE: SAME | REVIEW AND RESPOND TO CORRESPONDENCE WITH H. ETLIN, ET AL. RE: LIQUIDITY MATERIALS |
| 03/14/05 | Schwartz, W | 0.20 | CORRESP. RE SAME | REVIEW CORRESPONDENCE FROM SMITH, GAMBRELL AND C. STUART RE LEASEHOLD MORTGAGES |
| 03/15/05 | Gray, R | 0.10 | ASSIST WITH ISSUES RE: EFFECT OF REJECTION ON SUBLEASE | REVIEW ISSUES/CONFER W/ A. RAVIN RE: EFFECT OF REJECTION OF LEASE ON SUBLEASE |
| 03/15/05 | Gray, R | 0.10 | ASSIST WITH MITIGATION ISSUES | REVIEW/STRATEGIZE RE: MITIGATION ISSUES ON STORE LEASE |
| 03/15/05 | Ravin, A | 0.30 | ADDRESS ISSUES RELATED TO 502(b)(6) CAP ISSUES FOR STORE LOCATION 582 | ANALYZE 502(B)(6) CAP AS IT PERTAINS TO STORE LOCATION 582 |
| 03/15/05 | Schwartz, W | 0.20 | CORRESP. RE SAME | REVIEW CORRESPONDENCE FROM SMITH, GAMBRELL AND C. STUART RE LEASEHOLD MORTGAGES |
| 03/15/05 | Toussi, S | 1.50 | ADDRESS ISSUES RE PACA REPLY BRIEF AND PROPOSED ORDER | RESEARCH IN CONNECTION WITH PREPARING REPLY BRIEF TO PACA VENDORS AND PROPOSED ORDER |
| 03/16/05 | Gray, R | 0.10 | ASSIST WITH SERVICE ISSUES ON DIP BRIEF | CONFER W/ A. MARGOLIS AND L. BONACHEA RE: SERVICE ISSUES ON DIP BRIEF |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 03/16/05 | Schwartz, W | 0.20 | CORRESP. RE SAME | REVIEW CORRESPONDENCE FROM SMITH, GAMBRELL AND C. STUART RE LEASEHOLD MORTGAGES |
| 03/17/05 | Gray, R | 0.10 | ASSIST WITH XROADS ORDER FOR HEARING TOMORROW | EMAIL EXCHANGE RE: STATUS OF XROADS AND PROVIDE COPY OF ORDER FOR HEARING TOMORROW |
| 03/17/05 | Schwartz, W | 0.20 | CORRESP. RE LEASES | REVIEW CORRESPONDENCE FROM SMITH, GAMBRELL AND C. STUART RE LEASEHOLD MORTGAGES |
| 03/17/05 | Toussi, S | 1.30 | ADDRESS ISSUES RE DIP OBJECTIONS, INCLUDING ISSUES RAISED BY PACA CLAIMANTS | RESEARCH ISSUES IN CONNECTION WITH ANALYZING PACA VENDORS' RESPONSE AND OBJECTIONS TO DIP ORDER |
| 03/17/05 | Toussi, S | 0.40 | ADDRESS ISSUES RE HEARING AND AGENDA ITEMS | REVIEW DRAFT PROPOSED AGENDA AND EDIT AND REVISE SAME |
| 03/18/05 | Eichel, S | 0.20 | RESPOND TO EMAILS RE VENUE | RESPOND TO EMAIL INQUIRIES RE VENUE LITIGATION |
| 03/18/05 | Toussi, S | 1.20 | ADDRESS ISSUES RE POTENTIAL PACA CLAIMS, INCLUDING ISSUES RE SEASONED POTATOES | RESEARCH ISSUES RELATED TO VALIDITY OF CERTAIN PACA CLAIMANTS, INCLUDING WHETHER SEASONED FRENCH FRIES CONSTITUTES PACA GOODS |
| 03/20/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO STORE LEASE | NO FURTHER INFORMATION |
| 03/21/05 | Gray, R | 0.10 | ADDRESS ISSUES RE: AMERICAN GATEWAY BANK | CONFER W/ COMPANY TREASURY PERSONNEL RE: CASH MANAGEMENT ISSUE INVOLVING AMERICAN GATEWAY BANK |
| 03/21/05 | Gray, R | 0.10 | FURTHER ASSISTANCE WITH KPMG RETENTION ISSUES | CONFER W/ D. TURETSKY TO ADDRESS ISSUES RELATING TO KPMG RETENTION |
| 03/21/05 | Gray, R | 0.20 | ASSIST WITH CARLTON FIELDS RETENTION ISSUES AND DOCUMENTS | REVIEW/CONFER W/ D. TURETSKY RE: CARLTON FIELDS RETENTION ISSUES AND DOCUMENTS |
| 03/21/05 | Gray, R | 0.20 | ASSIST WITH PWC RETENTION ISSUES AND DOCUMENTS | REVIEW/CONFER W/ D. TURETSKY RE: PWC RETENTION ISSUES AND DOCUMENTS |
| 03/21/05 | McDonald Henry S. | 0.20 | ABANDONMENT OF EQUIPMENT | ANALYSIS OF ISSUES RELATING TO ABANDONMENT OF EQUIPMENT |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/21/05 | McDonald Henry S. | 0.30 | CASH MANAGEMENT SYSTEM AND CONSOLIDATION ISSUES | ANALYSIS OF CASH MANAGEMENT AGREEMENT SYSTEM AS IT RELATES TO PLAN CONSOLIDATION ISSUES |
| 03/21/05 | Schwartz, W | 0.50 | REVIEW MATERIALS | REVIEW MATERIALS FROM LOCAL COUNSEL RE LEASEHOLD MORTGAGES |
| 03/21/05 | Zimmerman, G | 2.25 | REVIEWED CASE LAW | NO FURTHER INFORMATION |
| 03/21/05 | Zimmerman, G | 1.25 | ANALYSIS OF ISSUES | NO FURTHER INFORMATION |
| 03/22/05 | Bonachea, L | 0.70 | ADDRESS SERVICE ISSUES RE: DIP NOTICE | NO LONGER WITH THE FIRM |
| 03/22/05 | Gray, R | 0.20 | ASSIST WITH NOTICE, SERVICE AND FILING ISSUES ON PROFESSIONAL RETENTION APPLICATIONS BEING FILED TODAY | REVIEW/EMAIL EXCHANGE W/ D. TURETSKY AND L. BONACHEA RE: NOTICE, SERVICE AND FILING ISSUES ON PROFESSIONAL RETENTION APPLICATIONS BEING FILED TODAY |
| 03/22/05 | Gray, R | 0.10 | ASSIST WITH SERVICE ISSUES ON RECENT ORDERS AND FILINGS | REVIEW/EMAIL EXCHANGE W/ TEAM RE: SERVICE ISSUES ON RECENT ORDERS AND FILINGS |
| 03/22/05 | Zimmerman, G | | CASE REVIEW | NO FURTHER INFORMATION |
| 03/23/05 | Gray, R | 0.10 | ASSIST WITH RESPONSE TO HOUSE OF LADDERS RE: PREPETITION | RESPOND TO INQUIRY RE: ADDRESSING HOUSE OF LADDERS CALL RE: PREPETITION |
| 03/24/05 | Gray, R | 0.10 | ASSIST WITH ISSUES ON STORE INQUIRIES | EMAIL EXCHANGE W/ A. RAVIN RE: STORE 901 ISSUES |
| 03/24/05 | Gray, R | 0.30 | FURTHER ASSIST WITH BAIN RETENTION ISSUES | REVIEW EMAILS/STRATEGIZE RE: ADDRESSING ISSUES RAISED BY BAIN COUNSEL CONCERNING RETENTION |
| 03/24/05 | Ravin, A | 0.50 | ADDRESS VARIOUS LEASE ISSUES | NO FURTHER INFORMATION |
| 03/25/05 | Gray, R | 0.10 | ASSIST WITH NOTICE, FILING AND SERVICE ISSUES RE: BAIN APPLICATION | REVIEW/EMAIL EXCHANGE W/ D. TURETSKY AND L. BONACHEA RE: NOTICE, FILING AND SERVICE ISSUES RE: BAIN RETENTION APPLICATION |
| 03/25/05 | Ravin, A | 0.30 | ADDRESS ISSUES RELATED TO SAME | ANALYZE PASS THROUGH CERTIFICATES |
| 03/25/05 | Ravin, A | 0.40 | ADDRESS ISSUES RELATED TO BIDDING PROCEDURES | ANALYZE BIDDING PROCEDURES FOR AIRPLANE AUCTION |
| 03/26/05 | LaMaina, K | 1.40 | CORRESPONDENCE RE AIRPLANE SALE | REVIEW CLOSING DOCUMENTS REGARDING PLANE FROM K. NARODICK (1.4) |
| 03/28/05 | Neckles, P | 1.50 | CORRESPONDENCE REGARDING APPROVAL OF SAME | DRAFT E-MAILS REGARDING APPROVAL OF AMENDMENT NO. 1 TO DIP CREDIT AGREEMENT |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 03/28/05 | Ravin, A | 0.20 | ADDRESS VARIOUS LEASE ISSUES | NO FURTHER INFORMATION |
| 03/29/05 | Davis, E | 0.80 | COMMENTS RECEIVED AND REVIEWS FROM WEST COACHES | RECEIVE AND REVIEW COMMENTS RECEIVED FROM WEST COACHES ON APA |
| 03/29/05 | Gray, R | 0.10 | ASSIST WITH NOTICE AND SERVICE ISSUES ON LEASE REJECTION HEARING | EMAIL EXCHANGE W/ A. RAVIN AND L. BONACHEA RE: NOTICE AND SERVICE ISSUES ON LEASE REJECTION HEARING |
| 03/29/05 | Neckles, P | 0.50 | CORRESPONDENCE REGARDING THE SAME | DRAFT E-MAILS REGARDING AMENDMENT NO. 1 |
| 03/30/05 | Margolis, A | 0.20 | CORRESPONDENCE ON CALL RE DIP FINANCING AMENDMENT ETC | REVIEW AND DRAFT EMAIL CORRESPONDENCE FOLLOWING UP ON CALL WITH M. BARR, S. BURIAN AND S. TEICHER RE DIP FINANCING AMENDMENT, ETC. |
| 03/30/05 | McDonald Henry, S | 0.70 | REVIEW CORRESPONDENCE | ORGANIZE MEETING WITH VENDORS RE VENDOR LIEN PROGRAM AND OVERALL SETTLEMENT AND IN CONNECTION THEREWITH REVIEW CORRESPONDENCE RELATING TO MEETING |
| 03/31/05 | Margolis, A | 0.10 | CORRESPONDENCE ON TAX CLAIM | REVIEW AND DRAFT EMAIL CORRESPONDENCE ON TAX CLAIM |
| 03/31/05 | Ravin, A | 0.40 | ADDRESS VENUE CHANGE ISSUES | ANALYZE VENUE CHANGE ISSUES |
| 04/01/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO SAME | ANALYZE AIRPLANE SALE ORDER |
| 04/04/05 | Matz, T | 0.30 | CORRESPONDENCE RE: SAME | REVIEW AND RESPOND TO CORRESPONDENCE WITH XROADS RE: FLAVOR-PIC, CAVENDISH FARMS, AND YAKIMA-ROCHE CLAIMS RECONCILIATION |
| 04/04/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO AFCO REQUEST | ANALYZE AFCO REQUEST |
| 04/04/05 | Ravin, A | 0.20 | ADDRESS SERVICE ISSUES RE: COMMONWEALTH OF KY LIFT STAY MOTION | ANALYZE AND COORDINATE SERVICE ISSUES RE: COMMONWEALTH OF KY LIFT STAY MOTION INCLUDING VERIFICATION OF PROPER ADDRESS |
| 04/05/05 | Gray, R | 0.10 | ASSIST WITH RESPONSE TO BANK INQUIRY ON TIMING OF FINAL CASH MANAGEMENT ORDER | EMAIL EXCHANGE RE: TIMING OF FINAL CASH MANAGEMENT ORDER PER INQUIRY FROM WACHOVIA'S COUNSEL |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 04/05/05 | Gray, R | 1.20 | FURTHER ASSISTANCE WITH REVISED SCHEDULES AND STATEMENTS | FURTHER REVIEW/COMMENT ON REVISED SCHEDULES AND STATEMENTS |
| 04/05/05 | Toussi, S | 1.20 | ADDRESS AND RESOLVE RECLAMATION CLAIMS AND CORRESPONDENCE RE SAME | ANALYZE VALIDITY OF CERTAIN RECLAMATION CLAIMS IN CONNECTION WITH PREPARING RECLAMATION REPORT AND PREPARING GUIDELINES FOR THE RECONCILIATION OF ALL RECLAMATION CLAIMS |
| 04/05/05 | Toussi, S | 1.00 | VARIOUS CORRESPONDENCE RE SAME | DRAFT CORRESPONDENCE RE ANALYSIS OF PACA CLAIMS TO DATE AND PROCEDURES FOR RECONCILING REMAINING CLAIMS |
| 04/06/05 | Feld, S | 0.30 | REVIEW EMAILS RE: BONDS | REVIEW EMAILS RE: ISSUANCE OF NEW SURETY BONDS |
| 04/06/05 | Gray, R | 0.20 | ASSIST WITH SETOFF NOTE FOR SCHEDULE F | REVIEW/REVISE SETOFF NOTE FOR SCHEDULE F |
| 04/06/05 | LaMaina, K | 0.40 | INQUIRE RE CURE COSTS AND PARTIES SEEKING PAYMENTS ON SALE TRANSACTION | INQUIRE WITH XROADS RE CURE COSTS AND PARTIES SEEKING PAYMENTS ON SALE TRANSACTION (.4) |
| 04/06/05 | Ravin, A | 0.10 | ADDRESS ISSUES RE: ADJOURNMENT OF HEARING | COORDINATE ADJOURNMENT OF HEARING |
| 04/07/05 | Gray, R | 0.10 | ASSIST S. EICHEL WITH VENUE ISSUES | COMMUNICATE W/ S. EICHEL RE: VENUE ISSUES |
| 04/07/05 | Matz, T | 1.90 | ALL CORRESPONDENCE RE: VARIOUS PACA CLAIM RECONCILIATIONS | CORRESPONDENCE WITH XROADS RE: 35 PACA CLAIM RECONCILIATIONS |
| 04/07/05 | Ravin, A | 0.40 | ADDRESS VARIOUS ISSUES RELATED TO ADJOURNMENT REQUESTS | NO FURTHER INFORMATION |
| 04/07/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO SAME | NO FURTHER INFORMATION |
| 04/07/05 | Schwartz, W | 0.20 | CORRESP. RE DIP FINANCING POST-CLOSING DELIVERIES | REVIEW CORRESPONDENCE FROM LOCAL COUNSEL AND C. STUART RE DIP FINANCING POST-CLOSING DELIVERIES |
| 04/08/05 | Gray, R | 0.10 | ASSIST WITH ISSUES ON AMERICAN KB STIPULATION | CONFER W/ A. RAVIN RE: ISSUES ON AMERICAN KB STIPULATION |
| 04/08/05 | Gray, R | 0.10 | ASSIST WITH EXTRANET ISSUES | COMMUNICATE W/ J. MATHEW RE: EXTRANET DOCUMENTS/ACCESS ISSUES |
| 04/08/05 | Gray, R | 0.80 | ASSIST WITH FINAL AGENDA LETTER FOR FILING TODAY | REVIEW/REVISE FINAL AGENDA LETTER FOR FILING TODAY |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 04/08/05 | Ravin, A | 2.10 | ADDRESS ISSUES RELATED TO SAME | ANALYZE KB AMERICAN STIPULATION |
| 04/08/05 | Ravin, A | 0.20 | ADDRESS VARIOUS ISSUES RELATED TO AGENDA AND ADJOURNMENTS | NO FURTHER INFORMATION |
| 04/08/05 | Schwartz, W | 0.30 | CORRESP. RE FORM OF DIP MORTGAGE | REVIEW CORRESPONDENCE FROM LOCAL COUNSEL RE FORM OF DIP MORTGAGE |
| 04/08/05 | Toussi, S | 1.00 | ADDRESS ISSUES RE SAME | PREPARE QUESTIONS AND MARKUP OF XROADS DRAFT OF THE PACA REPORT CHARTS (1.0) |
| 04/09/05 | Schwartz, W | 0.30 | CORRESP. RE CONSENTS AND BRIDGE LOAN | REVIEW CORRESPONDENCE FROM LOCAL COUNSEL RE CONSENTS AND BRIDGE LOAN |
| 04/10/05 | Zimmerman, G | 3.00 | REVIEWED CASE LAW | NO FURTHER INFORMATION |
| 04/11/05 | McDonald Henry, S | 0.20 | EMAILS RE AGENDA | REVIEW EMAILS FROM R. GRAY RE: AGENDA |
| 04/11/05 | Ravin, A | 0.30 | ADDRESS ISSUES RE: SAME | NO FURTHER INFORMATION |
| 04/11/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO REVISED AGENDA | NO FURTHER INFORMATION |
| 04/11/05 | Schwartz, W | 0.20 | CORRESP. RE DIP FINANCING | REVIEW CORRESPONDENCE FROM LOCAL COUNSEL RE DIP FINANCING |
| 04/11/05 | Schwartz, W | 0.20 | CORRESP. RE MORTGAGE | REVIEW CORRESPONDENCE FROM LOCAL COUNSEL RE MORTGAGE FORM |
| 04/12/05 | Barusch, R | 0.40 | EMAIL ON OPERATING STATEMENT | PREPARE EMAIL TO WORKING GROUP REGARDING OPERATING STATEMENT |
| 04/12/05 | Matz, T | 0.20 | CORRESPONDENCE RE: CHEBOT'S PACA CLAIMS | REVIEW AND RESPOND TO CORRESPONDENCE WITH XROADS RE: CHEBOT'S PACA CLAIMS |
| 04/12/05 | Ravin, A | 0.20 | ADDRESS ISSUES RE: OTTERBOURG'S PROPOSED LANGUAGE | ANALYZE OTTERBOURG'S PROPOSED LANGUAGE TO AFCO ORDER |
| 04/12/05 | Ravin, A | 0.10 | ADDRESS SERVICE ISSUES RELATED TO 365(D)(4) BRIDGE ORDER | ANALYZE SERVICE ISSUES RELATED TO 365(D)(4) BRIDGE ORDER AND COORDINATE EFFORTS RE: ADDRESSING SAME |
| 04/12/05 | Ravin, A | 0.10 | ADDRESS ISSUES RELATED TO VENUE | ANALYZE ISSUES RELATED TO VENUE |
| 04/12/05 | Toussi, S | 1.00 | ADDRESS ISSUES RE KRAFT AND GENERAL MILLS RECLAMATION CLAIMS | RESEARCH DEFENSE TO RECLAMATION CLAIM BASED ON FAILURE TO IDENTIFY GOODS THAT ARE THE SUBJECT OF RECLAMATION DEMAND |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 04/13/05 | Barusch, R | 0.80 | 8-K ON OPERATING STATEMENT | REVIEW 8-K OPERATING STATEMENT |
| 04/13/05 | Barusch, R | 1.60 | COMMENTS | PREPARE COMMENTS ON 8-K OPERATING STATEMENT |
| 04/13/05 | Gray, R | 0.10 | ADDRESS POTENTIAL SCHEDULE AMENDMENTS ISSUES RAISED PER EMAILS FROM A. RAVIN AND J. LEAMY | REVIEW/ANALYZE POTENTIAL SCHEDULE AMENDMENT ISSUES AND EMAIL EXCHANGE W/ A. RAVIN AND J. LEAMY RE: SAME |
| 04/13/05 | Gray, R | 0.10 | ASSIST WITH ISSUES ON ALABAMA CITY TAX PER LETTER RECEIVED | REVIEW/ANALYZE ISSUES ON ALABAMA CITY TAX PER LETTER RECEIVED |
| 04/13/05 | McDonald Henry, S | 0.10 | RESERVATION RE SAME | WORK ON LANGUAGE REGARDING RESERVATION OF RIGHTS RE SETOFFS |
| 04/13/05 | Toussi, S | 0.80 | ADDRESS ISSUES RE RECONCILING RECLAMATION CLAIMS | ANALYZE CERTAIN DEFENSES TO APPLY TO THE RECLAMATION DEMANDS |
| 04/13/05 | Toussi, S | 1.20 | VARIOUS SETTLEMENT PROPOSALS AND CORRESPONDENCE RE SAME | DRAFT AND REVISE VARIOUS SETTLEMENT PROPOSALS FOR CERTAIN PACA VENDORS IN CONNECTION WITH RESOLVING OUTSTANDING ISSUES |
| 04/14/05 | Neckles, P | 0.50 | CORRESPONDENCE REGARDING THE SAME | DRAFT E-MAILS REGARDING MILBANK LETTER |
| 04/14/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO SAME | ANALYZE CORRESPONDENCE FROM L. MCPHERSON RE: AFCO |
| 04/14/05 | Ravin, A | 0.10 | ADDRESS ISSUES RE: SAME | NO FURTHER INFORMATION |
| 04/14/05 | Ravin, A | 0.10 | ADDRESS ISSUES RE: SAME | ANALYZE KB AMERICAN STIPULATION |
| 04/14/05 | Schwartz, W | 0.30 | CORRESP. RE SUBLEASES | REVIEW CORRESPONDENCE FROM LOCAL COUNSEL RE SUBLEASES |
| 04/15/05 | Gray, R | 0.10 | ASSIST WITH PWC BILLING ISSUES IN VIEW OF STATUS OF ORDER | RESPOND TO INQUIRY FROM D. TURETSKY RE: ADDRESSING PWC BILLING ISSUES IN VIEW OF STATUS OF RETENTION ORDER |
| 04/15/05 | Gray, R | 0.10 | ASSIST WITH EXTRANET ISSUES | COMMUNICATE W/ J. MATHEW RE: DOCUMENTS TO BE INCLUDED/ACCESS TO BE GIVEN TO EXTRANET |
| 04/15/05 | Ravin, A | 0.10 | ADDRESS ISSUES RE: AMERICAN KB STIP REVISIONS | REVIEW AND ANALYZE AMERICAN KB STIPULATION |
| 04/15/05 | Schwartz, W | 0.10 | CORRESP. RE TITLE INSURANCE | REVIEW CORRESPONDENCE FROM C. STUART RE TITLE INSURANCE FOR DIP FINANCING |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 04/18/05 | Barusch, R | 1.30 | SHAREHOLDER MEETING ISSUES AND ANALYSIS | ANALYZE SHAREHOLDER MEETING ISSUES LIST |
| 04/18/05 | Barusch, R | 0.80 | LITIGATION FOR 10-Q | ANALYZE 10-Q LITIGATION |
| 04/18/05 | Gray, R | 0.10 | COORDINATE RE: CONTINUED MATTERS FOR HEARING AGENDA | EMAIL EXCHANGE W/ SKADDEN TEAM AND C. JACKSON RE: CONTINUED MATTERS FOR HEARING AGENDA |
| 04/18/05 | Schwartz, W | 0.40 | CHART RE SUBLEASES | REVIEW CHART RE STORES THAT ARE SUBLEASED |
| 04/18/05 | Schwartz, W | 0.20 | CORRESP. | CORRESPONDENCE WITH S. HENRY RE SUBLEASE ISSUES |
| 04/18/05 | Toussi, S | 1.20 | ADDRESS AND RESOLVE ISSUES RE VARIOUS RECLAMATION ISSUES | RESEARCH VARIOUS DEFENSES TO RECLAMATION DEMANDS AND WORK ON PREPARING SUMMARY DEFENSES |
| 04/19/05 | Barusch, R | 1.70 | SHAREHOLDER MEETING ISSUES | REVIEW SHAREHOLDER MEETING ISSUES LIST |
| 04/19/05 | Feld, S | 0.20 | EMAILS RE: APCO | REVIEWED AND PREPARED EMAILS RE: RECONCILING ALABAMA POWER CO. OUTSTANDING PREPETITION AMOUNT |
| 04/19/05 | Gray, R | 0.10 | ASSIST WITH NOTICING ISSUE ON AMERICAN KB MOTION | EMAIL EXCHANGE W/ A. RAVIN AND L. BONACHEA RE: NOTICING ISSUE ON AMERICAN KB MOTION |
| 04/19/05 | McDonald Henry, S | 0.10 | EMAIL RE SAME | REVIEW EMAIL RE SAME |
| 04/19/05 | Toussi, S | 1.40 | ADDRESS AND RESOLVE ISSUES RE RECLAMATION CLAIMS | RESEARCH VARIOUS DEFENSES TO RECLAMATION DEMANDS AND WORK ON PREPARING SUMMARY DEFENSES |
| 04/20/05 | Barusch, R | 0.70 | MDSA ISSUE | ANALYZE MDSA |
| 04/20/05 | McDonald Henry, S | 2.60 | READING CASE LAW | READING CASE LAW RELEVANT TO VENDOR REBATES AND TRADE ALLOWANCES |
| 04/20/05 | Ravin, A | 0.30 | ADDRESS ISSUES RELATED TO AFCO MOTION | ANALYZE AFCO MOTION IN LIGHT OF TELEPHONE CONFERENCES WITH K. ROMEO AND K. STUBBS |
| 04/20/05 | Ravin, A | 0.20 | ADDRESS VARIOUS ISSUES RE: PHARMACY PRESCRIPTION MOTION | ANALYZE PHARMACY PRESCRIPTION MOTION |
| 04/20/05 | Toussi, S | 0.30 | VARIOUS CORRESPONDENCE AND TELECONFERENCE RE SAME | VARIOUS CORRESPONDENCE AND TELECONFERENCES WITH VARIOUS PACA CLIENTS RE SETTLEMENT PROPOSALS (.3) |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 04/21/05 | Feld, S | 0.20 | ADDRESS RECLAMATION AND OVER SECURED LIEN ISSUE | REVIEW MEMO RE: VALUING RECLAMATION CLAIMS W/R/T OVER SECURED LIENS |
| 04/21/05 | Gray, R | 0.10 | ADDRESS FOOD LION MOTION NOTICING ISSUE | EMAIL EXCHANGE W/ C. JACKSON ET AL. RE: FOOD LION MOTION NOTICING ISSUE |
| 04/21/05 | Gray, R | 0.10 | ADDRESS CALENDARING ISSUE RE: RECLAMATION DEADLINES | EMAIL EXCHANGE W/ L. BONACHEA AND RECLAMATION TEAM RE: CALENDARING OF RECLAMATION DEADLINES |
| 04/21/05 | Ravin, A | 0.70 | ADDRESS ISSUES RE: SAME | ANALYZE PHARMACY PRESCRIPTION MOTION IN LIGHT OF MEMOS RECEIVED FROM E. DAVIS, K. LAMAINA AND M. CHLEBOVEC |
| 04/21/05 | Toussi, S | 1.00 | DRAFT AND REVIEW CORRESPONDENCE RE SAME | PREPARE SETTLEMENT PROPOSALS TO VARIOUS PACA CLIENTS AND RESPOND TO SAME |
| 04/22/05 | Barusch, R | 1.30 | 10-Q LITIGATION DISCLOSURE | TELEPHONE CONFERENCE WITH R. GRAY REGARDING 10-Q LITIGATION DISCLOSURE |
| 04/22/05 | Feld, S | 0.30 | PREPETITION AMOUNTS AND DOMINION | ANALYZE DOMINION VIRGINIA AND NC'S PREPETITION AMOUNT CLAIMS |
| 04/22/05 | Gray, R | 0.10 | ASSIST K. SAMBUR WITH ISSUES ON MOTION TO SHORTEN FOR ESCROW MOTION | TC W/ K. SAMBUR RE: ISSUES ON MOTION TO SHORTEN FOR ESCROW MOTION |
| 04/22/05 | Toussi, S | 0.80 | CORRESPONDENCE RE STATUS OF PACA CLAIMS | DRAFT CORRESPONDENCE TO VARIOUS PACA CLAIMANTS RE STATUS OF CLAIM RECONCILIATIONS |
| 04/22/05 | Toussi, S | 1.00 | DRAFT AND REVIEW CORRESPONDENCE RE SAME | DRAFT EMAILS TO PACA CLAIMANTS RE STATUS OF RECONCILIATIONS AND BACKUP INFORMATION RE RECONCILIATION TO DATE |
| 04/25/05 | Schwartz, W | 0.20 | CORRESP. RE DIP FINANCING ISSUES | REVIEW CORRESPONDENCE FROM CLIENT AND LOCAL COUNSEL RE DIP FINANCING ISSUES |
| 04/25/05 | Toussi, S | 1.00 | ADDRESS ISSUES RE VALUATION OF RECLAMATION CLAIMS | RESEARCH ISSUES RE VALUING RECLAMATION CLAIMS (1.0) |
| 04/25/05 | Toussi, S | 1.20 | DRAFT AND REVIEW CORRESPONDENCE RE SAME | PREPARE EMAILS BASED ON ANALYSIS OF PACA REPORT CHARTS AND STATUS OF RECONCILIATIONS FOR PACA VENDORS TO RESOLVE OUTSTANDING ISSUES |

11

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 04/26/05 | Schwartz, W | 0.50 | CLOSING DOCUMENTS | REVIEW CLOSING DOCUMENTS RE DIP FINANCING |
| 04/27/05 | Feld, S | 0.40 | RESPOND TO EMAILS RE: UTILITIES | RESPOND TO EMAILS RE: RECONCILIATION OF OUTSTANDING PREPETITION AMOUNTS TO UTILITIES |
| 04/27/05 | Ravin, A | 0.60 | ADDRESS FINAL ISSUES RE: FINALIZING AFCO MOTION AND PROPOSED FORM OF ORDER | FINALIZE AFCO MOTION AND PROPOSED FORM OF ORDER FOR FILING |
| 04/27/05 | Ravin, A | 0.80 | ADDRESS ISSUES RE: SAME | CONTINUE TO REVIEW AND ANALYZE BT MARIETTA RESPONSE |
| 04/27/05 | Ravin, A | 0.40 | ADDRESS ISSUES RE: SAME | ANALYZE AIRPLANE SALE MOTION IN LIGHT OF CORRESPONDENCE FROM K. NARODICK |
| 04/28/05 | Bonachea, L | 0.20 | ADDRESS FOOD LION MOTION SERVICE ISSUES | NO LONGER WITH THE FIRM |
| 04/28/05 | Ravin, A | 0.70 | ADDRESS VARIOUS ISSUES RE: SAME | ANALYZE AFCO AGREEMENT AND PLEADINGS IN LIGHT OF CORRESPONDENCE FROM B. GASTON |
| 04/28/05 | Ravin, A | 0.30 | ADDRESS ISSUES RE: SAME | ANALYZE LEASE REJECTION MOTION |
| 04/28/05 | Ravin, A | 0.40 | ADDRESS ISSUES RE: SAME | ANALYZE AIRPLANE SALE MOTION |
| 04/28/05 | Toussi, S | 1.00 | ADDRESS AND RESOLVE ISSUES RE SPECIFIC RECLAMATION CLAIMS | ANALYZE WHICH DEFENSES APPLY TO RECLAMATION VENDORS' CLAIMS (1.0) |
| 04/28/05 | Toussi, S | 0.50 | ADDRESS ISSUES RE RECENTLY FILED CLAIMS AND VALIDITY OF CLAIM | REVIEW AND ANALYZE RECENTLY FILED PACA VENDOR CLAIMS AND VALIDITY OF SAME |
| 04/29/05 | Gray, R | 0.10 | ASSIST WITH NOTICE FOR REMOVAL MOTION | REVIEW/REVISE NOTICE OF REMOVAL MOTION |
| 04/29/05 | Ravin, A | 0.20 | ADDRESS VARIOUS ISSUES RELATED TO SAME | ANALYZE ISSUES RELATED TO SIMON PROPERTIES BASED UPON CORRESPONDENCE RECEIVED FROM R. TUCKER |
| 04/29/05 | Schwartz, W | 0.40 | CORRESP. RE DIP FINANCING REQUIREMENTS | REVIEW CORRESPONDENCE FROM LOCAL COUNSEL AND CLIENT RE REQUIREMENTS FOR DIP FINANCING |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 04/30/05 | Feld, S | 2.90 | PREPARE AND RESPOND TO VARIOUS EMAILS RE: UTILITIES | PREPARE AND RESPOND TO VARIOUS EMAILS RE: PROPOSED RESOLUTIONS OF ADEQUATE ASSURANCE REQUESTS AND RECONCILIATION OF UTILITIES' OUTSTANDING PREPETITION AMOUNTS |

13

**EXHIBIT F**
**BLOCKED ENTRIES**
**(FIRST INTERIM FEE APPLICATION)**

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 02/22/05 | Lam, S | 8.50 | PREPARE FOR CLOSING (ATTENTION TO OPEN ISSUES RE: LEGAL OPINIONS; ANCILLARY SECURITY DOCUMENTS, DISCLOSURE SCHEDULES); ATTEND FIRST DAY HEARINGS | PREPARE FOR CLOSING (ATTENTION TO OPEN ISSUES RE: LEGAL OPINIONS, ANCILLARY SECURITY DOCUMENTS, AND DISCLOSURE SCHEDULES) (4.5); ATTEND FIRST DAY HEARINGS (4.0) |
| 02/22/05 | Margolis, A | 9.40 | ATTEND FIRST DAY HEARING, WORK ON PREPARATIONS FOR DIP FINANCING HEARING AND ISSUES THERETO; NEGOTIATIONS WITH RESPECT TO MODIFICATIONS TO INTERIM ORDER; WORK ON MODIFICATIONS TO ORDER | ATTEND FIRST DAY HEARING (5.0); REVISE PROPOSED INTERIM ORDER TO RESOLVE OBJECTIONS (4.4) |
| 02/22/05 | Neckles, P | 8.00 | MEETINGS AND CONFERENCES FOLLOWING COURT HEARING TO REVISE DIP FINANCING ORDER IN ACCORDANCE WITH SUGGESTION OF THE COURT; CONFERENCES WITH VARIOUS PARTIES INCLUDING BONDHOLDERS, TRADE CREDITORS, AND REPRESENTATIVES OF DIP LENDERS | ATTEND FIRST-DAY HEARINGS (1.0); CONFERENCES AND NEGOTIATIONS WITH REPRESENTATIVES OF TRADE CREDITORS, BONDHOLDERS, AND COUNSEL FOR DIP LENDERS (3.0); MEETING WITH CREDITOR REPRESENTATIVES AND DIP LENDER REPRESENTATIVES AND CONFERENCES WITH CREDITOR REPRESENTATIVES FOLLOWING COURT HEARING TO REVISE DIP FINANCING ORDER IN ACCORDANCE WITH SUGGESTION OF THE COURT (3.0); CONFERENCES WITH VARIOUS PARTIES INCLUDING BONDHOLDERS, TRADE CREDITORS, AND REPRESENTATIVES OF DIP LENDERS (1.0) |
| 02/23/05 | Baker, D | 1.10 | REVIEW FINAL LANGUAGE IN DIP ORDER, AND DISCUSSIONS WITH RESPECT TO COMPANY COMPLIANCE WITH SAME (1.1) | REVIEW FINAL LANGUAGE IN DIP ORDER (0.5); CONF. CALL LARRY APPEL AND BENNETT NUSSBAUM REGARDING COMPANY COMPLIANCE WITH REQUIREMENTS OF DIP ORDER (0.6) |

1

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 02/23/05 | Lam, S | 10.10 | PREPARE FOR CLOSING (FINALIZE REMAINING OPEN ISSUES IN CREDIT AGREEMENT); FINALIZE PAYOFF LETTERS AND FEE LETTERS; REVIEW OF FINAL SECURITY DOCUMENTS; REVISE SASM&F OPINION; ATTENTION TO OTHER ISSUES RE: CLOSING DATE DELIVERABLES | PREPARE FOR CLOSING (FINALIZE REMAINING OPEN ISSUES IN CREDIT AGREEMENT) (1.0); FINALIZE PAYOFF LETTERS AND FEE LETTERS (2.5); REVIEW OF FINAL SECURITY DOCUMENTS (2.0); REVISE SASM&F OPINION (2.5); ATTENTION TO OTHER ISSUES RE: CLOSING DATE DELIVERABLES (2.1) |
| 02/23/05 | Margolis, A | 7.10 | WORK ON REVISIONS TO INTERIM ORDER AND STRATEGY W/D FIORELLO THERETO; ATTEND DIP FINANCING HEARING AND WORK ON CLOSING; REVISE 8K DISCLOSURE RE DIP FINANCING | CONTINUE REVISION OF PROPOSED INTERIM ORDER TO INCORPORATE CHANGES RESOLVING OBJECTIONS (2.5); ATTEND DIP FINANCING HEARING (3.8); REVISE 8K DISCLOSURE RE DIP FINANCING (.8) |
| 02/23/05 | Neckles, P | 2.50 | PREPARE FOR HEARING ON INTERIM DIP FINANCING ORDER; REVIEW DOCUMENTS (2.5) | REVIEW DOCUMENTS IN PREPARATION FOR DIP HEARING (2.5) |
| 02/24/05 | Lam, S | 4.90 | ATTENTION TO POST-CLOSING ISSUES RE: FINALIZE ANCILLARY DOCUMENTS; ATTENTION TO ISSUES RE: DISCLOSURE SCHEDULES; T/C RE: COORDINATING RE MATTERS POST-CLOSING; ATTENTION TO ISSUES RE: REVIEW OF 8-K FILING | ATTENTION TO POST-CLOSING ISSUES RE: FINALIZE ANCILLARY DOCUMENTS (2.5); ATTENTION TO ISSUES RE: DISCLOSURE SCHEDULES (.5); T/C RE: COORDINATING MATTERS POST-CLOSING (.5); ATTENTION TO ISSUES RE: REVIEW OF 8-K FILING (1.4) |
| 02/24/05 | Mack III, W | 3.00 | PREPARED FOR AND MADE PHYSICAL DELIVERY OF CLOSING DOCUMENTS (3.0) | NO LONGER WITH THE FIRM |
| 02/25/05 | Lam, S | 5.60 | PREPARE DRAFT OF POST-CLOSING CHECKLIST; REVIEW OF INSURANCE CERTIFICATE; ATTENTION TO OTHER ISSUES RE: POST-CLOSING MATTERS (REVISED DISCLOSURE SCHEDULES); T/C RE: COORDINATION OF POST-CLOSING RE MATTERS | PREPARE DRAFT OF POST-CLOSING CHECKLIST (2.0); REVIEW OF INSURANCE CERTIFICATE (.5); ATTENTION TO OTHER ISSUES RE: POST-CLOSING MATTERS (REVISED DISCLOSURE SCHEDULES) (2.1); T/C RE: COORDINATION OF POST-CLOSING MATTERS (1.0) |
| 02/25/05 | Margolis, A | 1.20 | WORK ON ISSUES PERTAINING TO DIP FINANCING AND STRATEGY W/S LAM THERETO; TC W/DYESS RE FINAL ORDER/PACA CLAIMS; TC W/D | DEVELOP STRATEGY RE ISSUES PERTAINING TO DIP FINANCING (.4); TC W/DYESS RE FINAL ORDER/PACA CLAIMS (.1); TC W/D |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | O'DONNELL RE DUE DILIGENCE REVIEW, REQUEST FOR DOCUMENTS; REVIEW OF CERTAIN FIRST DAY MOTIONS/ORDERS RE DIP FINANCING ISSUES; STRATEGY W/S BIRBROWER RE RESEARCH THERETO AND REVIEW CASE LAW | O'DONNELL RE DUE DILIGENCE REVIEW, REQUEST FOR DOCUMENTS (.2); REVIEW OF CERTAIN FIRST DAY MOTIONS/ORDERS RE DIP FINANCING ISSUES (.2); REVIEW CASE LAW RE DIP FINANCING ISSUES (.3) |
| 02/26/05 | Margolis, A | 0.90 | CORRESPONDENCE RE ISSUES PERTAINING TO DIP FINANCING; REVIEW OF CASE LAW RE ISSUES/POTENTIAL OBJECTIONS THERETO | DRAFT AND REVIEW EMAIL CORRESPONDENCE WITH DIP FINANCING TEAM RE ISSUES PERTAINING TO DIP FINANCING (.1); REVIEW OF CASE LAW RE DIP FINANCING ISSUES AND POTENTIAL OBJECTIONS THERETO (.8) |
| 02/26/05 | Margolis, A | 1.80 | DRAFT AMENDMENT TO CA RE ASSET TRANSACTION AND STRATEGY W/DJ BAKER THERETO | DRAFT AMENDMENT TO CONFIDENTIALITY AGREEMENT RE ASSET TRANSACTION (1.8) |
| 02/28/05 | Lam, S | 8.20 | ATTENTION TO POST-CLOSING ISSUES RE: SECURITY AGREEMENT SCHEDULES; DIRECTION LETTERS AND AGREEMENTS AND OTHER DELIVERABLES; REVISE POST-CLOSING CHECKLIST; PREPARE FOR MTG. WITH L. APPEL.  MTG WITH L. APPEL REL REVIEW OF POST CLOSING DIP ISSUES | ATTENTION TO POST-CLOSING ISSUES RE: SECURITY AGREEMENT SCHEDULES (.5); FINALIZING DIRECTION LETTERS, CONTROL AGREEMENTS AND OTHER DELIVERABLES (2.5); REVISE POST-CLOSING CHECKLIST (3.0); PREPARE FOR MTG. WITH L. APPEL (1.0);  MTG WITH L. APPEL RE REVIEW OF POST- CLOSING DIP ISSUES (1.2) |
| 02/28/05 | Neckles, P | 3.00 | PARTICIPATE IN (3.00) MEETINGS TO DISCUSS STATUS OF POST-CLOSING ITEMS UNDER DIP FINANCING WITH S. LAM, W. SCHWARTZ, C. STUART, W. MACK, AND A. MARGOLIS; FOLLOW-UP MEETING WITH L. APPEL, K. CORBETT, K. KIRSHNER, AND ABOVE SKADDEN TEAM TO REVIEW POST-CLOSING ITEMS MEMORANDUM AND ASSIGNED RESPONSIBILITIES | PARTICIPATE IN MEETINGS TO DISCUSS STATUS OF POST-CLOSING ITEMS UNDER DIP FINANCING WITH S. LAM, W. SCHWARTZ, C. STUART, W. MACK AND A. MARGOLIS (2.0); FOLLOW-UP MEETING WITH L. APPEL, K. CORBETT, K. KIRSHNER, S. LAM, W. SCHWARTZ, W. MACK AND A. MARGOLIS TO REVIEW POST-CLOSING ITEMS MEMORANDUM AND ASSIGNED RESPONSIBILITIES (1.0) |
| 03/01/05 | Lam, S | 3.70 | REVIEW OF DRAFT DIRECTION LETTER, COLLATERAL ACCESS AGREEMENT AND OTHER POST- | REVIEW OF DRAFT DIRECTION LETTER, COLLATERAL ACCESS |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | CLOSING ANCILLARY DOCUMENTS; T/C WITH OSHR RE: COMMENTS TO DOCUMENTS; DISCUSS ISSUES IN CREDIT CARD PROCESS LETTERS WITH K. CORBETT; ATTENTION TO OTHER POST-CLOSING ISSUES RE: STOCK CERTIFICATES | AGREEMENT AND OTHER POST-CLOSING ANCILLARY DOCUMENTS (2.0); T/C WITH OSHR RE: COMMENTS TO DOCUMENTS (.5); DISCUSS ISSUES IN CREDIT CARD PROCESS LETTERS WITH K. CORBETT (.6); FINALIZING OTHER POST-CLOSING ISSUES RE: STOCK CERTIFICATES AND CANCELLED CERTIFICATES TO BE RETURNED TO WD (.6) |
| 03/01/05 | Neckles, P | 2.50 | ATTENTION TO POST-CLOSING MATTERS IN CONNECTION WITH DIP FINANCING INCLUDING SEQUENCING OF REAL ESTATE LEASEHOLD MORTGAGES; CONFERENCES AND CORRESPONDENCE WITH COUNSEL FOR DIP LENDERS; CONFERENCES WITH A. MARGOLIS REGARDING LEGAL MEMORANDUM; MEETING WITH J. BAKER | ATTENTION TO POST-CLOSING MATTERS IN CONNECTION WITH DIP FINANCING INCLUDING SEQUENCING OF REAL ESTATE LEASEHOLD MORTGAGES (1.0); CONFERENCES AND E-MAILS WITH COUNSEL FOR DIP LENDERS (.5); CONFERENCES WITH A. MARGOLIS REGARDING LEGAL MEMORANDUM (.5); MEETING WITH J. BAKER RE: DIP FINANCING (.5) |
| 03/01/05 | Yeung, C | 1.90 | REVIEW/ REVISE THE UCC AMENDMENTS; PREPARE DISTRIBUTION OF LIEN SEARCH RESULTS AND CLOSING SETS; OBTAIN INFORMATION RE: OUTSTANDING ORIGINAL SIGNATURE PAGES TO SECRETARY'S CERTIFICATES | REVIEW/ REVISE THE UCC AMENDMENTS (1.0); PREPARE DISTRIBUTION OF LIEN SEARCH RESULTS AND CLOSING SETS (.4); OBTAIN INFORMATION RE: OUTSTANDING ORIGINAL SIGNATURE PAGES TO SECRETARY'S CERTIFICATES (.5) |
| 03/02/05 | Bonachea, L | 0.80 | ADDRESS VARIOUS RECLAMATION SERVICE ISSUES AND CORRESPOND WITH K. SAMBUR AND S. EICHEL RE: SAME (.8) | NO LONGER WITH THE FIRM |
| 03/02/05 | Lam, S | 6.90 | FINALIZE FORMS OF AMSOUTH BLOCKED ACCOUNT AGREEMENT, DIRECTION LETTERS, COLLATERAL ACCESS AGREEMENTS WITH OSHR AND W-D; ATTENTION TO ISSUES RE: INSURANCE CERTIFICATE; T/C WITH OSHR RE: REAL ESTATE MORTGAGE ISSUES | FINALIZE FORMS OF AMSOUTH BLOCKED ACCOUNT AGREEMENT, DIRECTION LETTERS, COLLATERAL ACCESS AGREEMENTS WITH OSHR AND W-D (4.9); OBTAIN INSURANCE CERTIFICATE (1.0); T/C WITH OSHR RE: REAL ESTATE MORTGAGE ISSUES (1.0) |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-------|---------------------|---------------------|
| 03/02/05 | McDonald Henry, S | 0.90 | WORK ON RESCHEDULING OF FRIDAY'S HEARINGS; WORK ON SCHEDULING FOR OMNIBUS HEARINGS | WORK ON RESCHEDULING OF FRIDAY'S HEARINGS (.7); WORK ON SCHEDULING FOR OMNIBUS HEARINGS (.2) |
| 03/02/05 | Neckles, P | 4.00 | WORK ON ISSUES ASSOCIATED WITH DIP LEASEHOLD COLLATERAL; CONFERENCES WITH J. HELFAT; REVIEW CORRESPONDENCE | REVIEW AND REVISE DIP LEASEHOLD COLLATERAL (3.0); CONFERENCES WITH J. HELFAT RE: DIP LEASEHOLD COLLATERAL (.5); REVIEW E-MAILS FROM OTTERBOURG STEINDLER (.5) |
| 03/03/05 | Lam, S | 2.10 | T/C WITH OSHR RE: ISSUES WITH INSURANCE CERTIFICATE; REVISE STATUS CHART; ATTENTION TO OTHER ISSUES RE: POST-CLOSING DELIVERIES | T/C WITH OSHR RE: ISSUES WITH INSURANCE CERTIFICATE (.5); REVISE STATUS CHART (.7); CONTINUED FINALIZING AND DELIVERING POST-CLOSING DELIVERIES (.9) |
| 03/03/05 | Neckles,  P | 2.00 | CONFERENCES REGARDING LEASEHOLD COLLATERAL AND LANDLORD LIENS WITH S. TEICHER AND OTTERBOURG STEINDLER; CORRESPONDENCE REGARDING THE SAME WITH D. STAMFORD, K. KIRSHNER, AND D. MORSE, OF OTTERBOURG STEINDLER | CONFERENCES REGARDING LEASEHOLD COLLATERAL AND LANDLORD LIENS WITH S. TEICHER AND OTTERBOURG STEINDLER (1.0); DRAFT E-MAILS REGARDING LEASEHOLD COLLATERAL AND LANDLORD LIENS WITH D. STAMFORD, K. KIRSHNER AND D. MORSE OF OTTERBOURG STEINDLER (1.0) |
| 03/04/05 | Lam, S | 2.90 | REVISE STATUS CHART; ATTENTION TO POST CLOSING ISSUES RE: INSURANCE CERTIFICATE; TERMINATIONS OF EXISTING SECURITY INTERESTS AND OTHER ISSUES | REVISE STATUS CHART (.5); ATTENTION TO POST CLOSING ISSUES RE: INSURANCE CERTIFICATE (.4); TERMINATIONS OF EXISTING SECURITY INTERESTS AND OTHER ISSUES (2.0) |
| 03/07/05 | LaMaina, K | 2.50 | REVISE DRAFT ASSET MOTION AND CONFERENCE RE SAME (1.6); ATTEND 3 CONFERENCE CALLS WITH CATHERINE E.; M. CHLEBOVEC; ASSET DISPOSITIONS AND REVIEW CORRESPONDENCE (.9) | REVISE DRAFT ASSET MOTION (1.4); CONFERENCE WITH E. DAVIS ON ASSET MOTION (.2); ATTEND 3 CONFERENCE CALLS WITH C. IBOLD AND M. CHLEBOVEC ON ASSET DISPOSITIONS INCLUDING STRATEGY/STATUS ON DISPOSITIONS (.4); REVIEW MY NOTES AND CORRESPONDENCE FROM M. CHLEBOVEC ON COMPANY DISPOSITIONS (.5) |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-------|----------------------|---------------------|
| 03/07/05 | Lam, S | 3.50 | REVISE POST CLOSING CHECKLIST SUMMARY; ATTENTION TO ISSUES RE: POST CLOSING DELIVERY REQUIREMENTS (INSURANCE CERTIFICATE REVISIONS; COLLATERAL DOCUMENTS, ETC.); ATTENTION TO ISSUES RE: SCHEDULING CALL TO COORDINATE RE MORTGAGE ISSUES | REVISE POST CLOSING CHECKLIST SUMMARY (1.5); FINALIZING AND DELIVERING POST CLOSING DELIVERY REQUIREMENTS INCLUDING INSURANCE CERTIFICATE REVISIONS, COLLATERAL DOCUMENTS, ETC. (.8); ATTENTION TO ISSUES RE: SCHEDULING CALL TO COORDINATE MORTGAGE ISSUES (1.2). |
| 03/07/05 | Mack III, W | 1.00 | DISTRIBUTED AMSOUTH AGREEMENT; SENT OUT FINAL BATCH OF STOCK POWERS FOR EXECUTION | NO LONGER WITH THE FIRM |
| 03/07/05 | Neckles, P | 4.00 | WORK ON DIP FINANCING; CORRESPONDENCE REGARDING LEASEHOLD MORTGAGE  PROCESS; REVIEW BANK SYNDICATION MEMORANDUM; REVIEW COMMENTS ON DRAFT FINAL DIP ORDER; REVIEW POST-CLOSING CHECKLIST | REVIEW DIP FINANCING (.5); DRAFT E-MAILS REGARDING LEASEHOLD MORTGAGE PROCESS (.5); REVIEW BANK SYNDICATION MEMORANDUM (1.0); REVIEW COMMENTS ON DRAFT FINAL DIP ORDER (1.0); REVIEW POST-CLOSING CHECKLIST (1.0) |
| 03/07/05 | Yeung, C | 1.50 | REVIEW/ REVISE THE CLOSING DOCUMENT INDEX; OBTAIN INFORMATION RE: MISDIRECTED PACKAGE WITH ORIGINAL SIGNATURE PAGES | REVIEW/ REVISE THE CLOSING DOCUMENT INDEX (.5); OBTAIN INFORMATION RE: MISDIRECTED PACKAGE WITH ORIGINAL SIGNATURE PAGES (1.0) |
| 03/08/05 | Lam, S | 6.50 | PREPARATION FOR CALL WITH SGR, K&L RE: REAL ESTATE MATTERS; FOLLOW UP WITH K. CORBETT RE: PROCESSOR LETTERS AND CONTROL AGREEMENTS; ATTENTION TO OTHER POST CLOSING MATTERS | PREPARATION FOR CALL WITH SGR, K&L RE: REAL ESTATE MATTERS (3.5); FOLLOW UP WITH K. CORBETT RE: PROCESSOR LETTERS AND CONTROL AGREEMENTS (1.0); REVISING AND FINALIZING OTHER POST CLOSING MATTERS (2.0) |
| 03/08/05 | Neckles, P | 5.50 | TELEPHONE CALLS WITH K. HARDEE AND B. NUSSBAUM REGARDING SYNDICATION OF DIP LOAN; REVIEW POST-CLOSING MEMORANDA; MEETING WITH W. SCHWARTZ, S. TEICHER, S. LAM AND C. STUART; CONFERENCE CALL WITH K. KIRSHNER AND D. STAMFORD TO REVIEW REAL ESTATE COLLATERAL PROCESS FOR DIP FINANCING; | TELEPHONE CALLS WITH K. HARDEE AND B. NUSSBAUM REGARDING SYNDICATION OF DIP LOAN (1.0); REVIEW POST-CLOSING MEMORANDA (.5); MEETING WITH W. SCHWARTZ, S. TEICHER, S. LAM, AND C. STUART RE: REAL ESTATE ISSUES IN CONNECTION WITH DIP FINANCING (2.0); CONFERENCE CALL WITH K. |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | CORRESPONDENCE IN CONNECTION WITH THE FOREGOING AND DIP FINANCING | KIRSHNER AND D. STAMFORD TO REVIEW REAL ESTATE COLLATERAL PROCESS FOR DIP FINANCING (1.0); DRAFT E-MAILS IN CONNECTION WITH THE FOREGOING AND DIP FINANCING (1.0) |
| 03/08/05 | Paoli, J | 6.00 | PREPARED A BINDER WITH UTILITIES MOTION, PROPOSED ORDER AND OBJECTIONS; READ THROUGH UTILITIES MOTION, ORDER, AND OBJECTIONS; DRAFTED PROFFER OF TESTIMONY FOR USE IN UTILITIES HEARING; PREPARED DOCUMENTS FOR UTILITIES HEARING | PREPARED BINDER WITH UTILITIES MOTION, PROPOSED ORDER AND OBJECTIONS (.8); READ THROUGH UTILITIES MOTION, ORDER, AND OBJECTIONS (1.6); DRAFTED PROFFER OF TESTIMONY FOR USE IN UTILITIES HEARING (.6); PREPARED DOCUMENTS FOR UTILITIES HEARING (3.0) |
| 03/08/05 | Yeung, C | 1.00 | PREPARE DISTRIBUTION OF SIGNATURE PAGES PACKAGE FOR POST-CLOSING DOCUMENTS; REVIEW/ REVISE THE GOOD STANDING FOREIGN QUALIFICATIONS | PREPARE DISTRIBUTION OF SIGNATURE PAGES PACKAGE FOR POST-CLOSING DOCUMENTS (.5); REVIEW/ REVISE THE GOOD STANDING FOREIGN QUALIFICATIONS (.5) |
| 03/09/05 | Lam, S | 6.80 | ATTENTION TO POST CLOSING ISSUES: RE: CONTROL AGREEMENT TERMINATION LETTERS; CREDIT CARD PROCESSOR LETTERS; RE MATTERS AND OTHER ISSUES; T/C WITH R. JEWELL RE: PREPARATION OF CREDIT CARD PROCESSOR LETTERS; DRAFT CONFIDENTIALITY LETTER | REVISING AND FINALIZING CONTROL AGREEMENT TERMINATION LETTERS (.5); REVISE CREDIT CARD PROCESSOR LETTERS (3.7); T/C WITH R. JEWELL RE: PREPARATION OF CREDIT CARD PROCESSOR LETTERS (.6); DRAFT CONFIDENTIALITY LETTER (2.0) |
| 03/09/05 | Margolis, A | 12.00 | WORK ON DIP FINANCING BRIEF AND RESEARCH/ANALYSIS THERETO (9); WORK ON REVISIONS TO FINAL ORDER AND STRATEGY W/D FIORILLO THERETO (3) | DRAFT BRIEF IN SUPPORT OF DIP FINANCING (9.0); REVISE PROPOSED FINAL ORDER (3.0) |
| 03/09/05 | Neckles, P | 4.50 | CONFERENCES AND CORRESPONDENCE REGARDING REVIEW OF DRAFT OF FINAL DIP ORDER AND REAL ESTATE COLLATERAL PROJECT; CONFERENCES WITH A. MARGOLIS REGARDING FINAL DIP ORDER; CONFERENCES WITH F. HUFFARD REGARDING FINAL DIP ORDER | CONFERENCES AND E-MAILS WITH A. MARGOLIS AND F. HUFFARD REGARDING REVIEW OF DRAFT OF FINAL DIP ORDER AND REAL ESTATE COLLATERAL PROJECT (3.5); CONFERENCES WITH A. MARGOLIS REGARDING FINAL DIP ORDER (.5); |

7

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-------|----------------------|---------------------|
| | | | | CONFERENCES WITH F. HUFFARD REGARDING FINAL DIP ORDER (.5) |
| 03/09/05 | Paoli, J | 2.50 | ATTENDED MEETING WITH MIKE BYRUM AT THE COMPANY IN PREPARATION FOR HEARING; ATTENDED UTILITIES HEARING; PROCURE CERTIFICATES OF SERVICE OF UTILITIES MOTION TO BE SENT TO COURT | ATTENDED MEETING WITH M. BYRUM AT THE COMPANY IN PREPARATION FOR HEARING (1.1); ATTENDED UTILITIES HEARING (.6); PROCURE CERTIFICATES OF SERVICE OF UTILITIES MOTION TO BE SENT TO COURT (.8) |
| 03/09/05 | Paoli, J | 2.40 | BEGAN MAKING CHANGES TO PRE-PETITION TAXES ORDER; BEGAN MAKING CHANGES TO INSURANCE ORDER; ADDED NEW LANGUAGE TO INSURANCE ORDER | BEGAN MAKING CHANGES TO PRE-PETITION TAXES ORDER (.8); BEGAN MAKING CHANGES TO INSURANCE ORDER (.8); ADDED NEW LANGUAGE TO INSURANCE ORDER (.8) |
| 03/09/05 | Yeung, C | 1.30 | PREPARE DISTRIBUTION OF PACKET OF SIGNATURE PAGES OF POST-CLOSING DOCUMENTS FOR COMPANY TO EXECUTE; OBTAIN INFORMATION RE: ORIGINAL SIGNATURE PAGES TO FOUR SECRETARY'S CERTIFICATES; PREPARE DISTRIBUTION OF STOCK CERTIFICATES, STOCK POWERS, SECRETARY'S CERTIFICATES, AND BOARD RESOLUTIONS | PREPARE DISTRIBUTION OF PACKET OF SIGNATURE PAGES OF POST-CLOSING DOCUMENTS FOR COMPANY TO EXECUTE (.5); OBTAIN INFORMATION RE: ORIGINAL SIGNATURE PAGES TO FOUR SECRETARY'S CERTIFICATES (.3); PREPARE DISTRIBUTION OF STOCK CERTIFICATES, STOCK POWERS, SECRETARY'S CERTIFICATES, AND BOARD RESOLUTIONS (.5) |
| 03/10/05 | Neckles, P | 6.50 | REVIEW REVISED DRAFT OF FINAL DIP ORDER; CONFERENCES AND CORRESPONDENCE REGARDING THE SAME WITH W. SCHWARTZ, A. MARGOLIS, AND V. TAOUCHANOVA; NEGOTIATIONS WITH REPRESENTATIVES OF DIP LENDER AT OTTERBOURG, STEINDLER AND REPRESENTATIVES OF RECLAMATION CLAIMANTS AND LANDLORDS | REVIEW REVISED DRAFT OF FINAL DIP ORDER (.5); CONFERENCES AND E-MAILS REGARDING FINAL DIP ORDER WITH W. SCHWARTZ, A. MARGOLIS AND V. TAOUCHANOVA (1.0); NEGOTIATIONS WITH REPRESENTATIVES OF DIP LENDER AT OTTERBOURG, STEINDLER AND REPRESENTATIVES OF RECLAMATION CLAIMANTS AND LANDLORDS (5.0) |
| 03/10/05 | Paoli, J | 3.90 | MET WITH SALLY HENRY TO DISCUSS SEVERAL DOCUMENTS THAT NEEDED TO BE DRAFTED IN CONNECTION WITH THE RETENTION OF CONFLICTS COUNSEL; MET | MET WITH SALLY HENRY TO DISCUSS SEVERAL DOCUMENTS THAT NEEDED TO BE DRAFTED IN CONNECTION WITH THE RETENTION OF CONFLICTS |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | WITH STEVE EICHEL TO GET PRECEDENT FOR RETENTION APPLICATION; BEGAN DRAFTING RETENTION APPLICATION; BEGAN DRAFTING RETENTION ORDER | COUNSEL (.3); MET WITH S. EICHEL TO GET PRECEDENT FOR RETENTION APPLICATION (.3); BEGAN DRAFTING RETENTION APPLICATION (2.1); BEGAN DRAFTING RETENTION ORDER (1.2) |
| 03/10/05 | Yeung, C | 3.60 | REVIEW/ REVISE THE UCC/LIEN SEARCH RESULTS AND COLLATERAL DESCRIPTIONS; REVIEW/ REVISE THE DOCUMENT INDEX; PREPARE DISTRIBUTION OF RETURNED ORIGINAL STOCK CERTIFICATES AND POWERS FROM WACHOVIA TO COMPANY; PREPARE DISTRIBUTION OF PROPERTY INSURANCE POLICY AND UCC/LIEN SEARCH RESULTS TO OSHR; OBTAIN INFORMATION RE: AMSOUTH BANK UCC FILINGS | REVIEW/ REVISE THE UCC/LIEN SEARCH RESULTS AND COLLATERAL DESCRIPTIONS (2.0); REVIEW/ REVISE THE DOCUMENT INDEX (.5); PREPARE DISTRIBUTION OF RETURNED ORIGINAL STOCK CERTIFICATES AND POWERS FROM WACHOVIA TO COMPANY (.3); PREPARE DISTRIBUTION OF PROPERTY INSURANCE POLICY AND UCC/LIEN SEARCH RESULTS TO OSHR (.4); OBTAIN INFORMATION RE: AMSOUTH BANK UCC FILINGS (.4) |
| 03/11/05 | LaMaina, K | 3.10 | CORRESPONDENCE WITH R. BEINE RE ASSET DISPOSITION; REVIEW PRECEDENT MATERIALS RE LEASES AND BEGIN DRAFT MOTION (3.1) | CORRESPONDENCE WITH R. BEINE RE ASSET DISPOSITION (.9); REVIEW PRECEDENT MATERIALS RE LEASES (.9); BEGIN DRAFT MOTION (1.3) |
| 03/11/05 | LaMaina, K | 4.30 | DRAFT ORDER RE SAME; RESEARCH DECLARATION ISSUES; DRAFT NOTICE PROVISIONS AND PARTIES AND RESEARCH NOTICE PROCEDURES ORDER AND ISSUE RE NOTICE AND ATTEND CONFERENCE RE SAME (4.3) | DRAFT ORDER RE MOTION (.7); RESEARCH DECLARATION ISSUES FOR MOTION (.9); DRAFT NOTICE PROVISIONS AND PARTIES (1.1); RESEARCH NOTICE PROCEDURES ORDER (.3); RESEARCH NOTICE REQUIREMENTS (1.0); ATTEND CONFERENCE WITH M. CHLEBOVEC ON PLANE SALE (.3) |
| 03/11/05 | Margolis, A | 1.30 | WORK ON BRIEF AND STRATEGY W/V TAOUCHANOVA THERETO (1.3) | CONTINUE DRAFTING BRIEF IN SUPPORT OF DIP FINANCING (1.3) |
| 03/11/05 | Neckles, P | 7.00 | REVIEW, REVISE AND NEGOTIATE DRAFT OF FINAL DIP ORDER; CONFERENCES WITH J. HELFAT, D. FIORILLO, A. MARGOLIS, W. SCHWARTZ, B. LAHANE AND OTHER REPRESENTATIVES OF | REVIEW, REVISE AND NEGOTIATE DRAFT OF FINAL DIP ORDER (.5); CONFERENCES AND NEGOTIATIONS WITH J. HELFAT, D. FIORILLO, A. MARGOLIS, W. SCHWARTZ, |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-------|----------------------|---------------------|
| | | | LANDLORDS | B. LAHANE AND OTHER REPRESENTATIVES OF LANDLORDS (6.5) |
| 03/12/05 | LaMaina, K | 2.50 | REVIEW PRECEDENT SALE ASSET DISPOSITION DOCUMENTS RELATING TO LEASEHOLD INT., EQUIPMENT, AND INVENTORY TRANSFERS; REVIEW SECTION 365 ISSUE | REVIEW PRECEDENT SALE ASSET DISPOSITION DOCUMENTS RELATING TO LEASEHOLD INT., EQUIPMENT, AND INVENTORY TRANSFERS (.9); REVIEW SECTION 365 ISSUE (1.6) |
| 03/12/05 | Margolis, A | 1.80 | REVIEW OBJECTIONS AND STRATEGY W/P NECKLES, V TAOUCHANOVA RE RESPONSES THERETO AND BRIEF IN SUPPORT OF DIP FINANCING | REVIEW OBJECTIONS TO DIP FINANCING MOTION (1.0); CONTINUE DRAFTING BRIEF IN SUPPORT OF DIP FINANCING (.8) |
| 03/12/05 | Neckles, P | 2.00 | REVIEW REVISED DRAFT OF FINAL ORDER; CONFERENCES AND CORRESPONDENCE AT HOME | REVIEW REVISED DRAFT OF FINAL ORDER (1.0); CONFERENCES AND E-MAILS WITH REPRESENTATIVES OF LANDLORDS AND LENDERS AT HOME (1.0) |
| 03/12/05 | Ziegler (Taouchanova), V | 15.20 | RESEARCH AND DEVELOP ARGUMENTS WITH RESPECT TO LANDLORDS' OBJECTION TO THE LENDER'S RIGHT TO EXERCISE ITS REMEDY TO FORECLOSE ON THE COLLATERAL IN AN EVENT OF DEFAULT | LEGAL RESEARCH RE: LENDER'S RIGHT TO EXERCISE ITS REMEDY TO FORECLOSE ON COLLATERAL IN EVENT OF DEFAULT (7.1); DRAFT RESPONSE TO OBJECTIONS TO DIP MOTION (8.1) |
| 3/14/05 | Eichel, S | 7.50 | WORK ON REPLY TO OBJECTIONS TO DIP MOTION RELATING TO RECLAMATION, INCLUDING RESEARCH IN CONNECTION THEREWITH | REVIEW AND REVISE REPLY TO OBJECTIONS TO DIP MOTION RELATING TO RECLAMATION (6.8); RESEARCH IN CONNECTION WITH REPLY TO OBJECTION TO DIP MOTION (.7) |
| 03/14/05 | Lam, S | 4.50 | WORK ON POST CLOSING ISSUES; COORDINATING DUE DILIGENCE REVIEW; T/C WITH W. MACK RE: UPDATE OF STATUS OF POST CLOSING ISSUES | REVISING AND FINALIZING POST CLOSING ISSUES (2.0); COORDINATING DUE DILIGENCE REVIEW (1.5); T/C WITH W. MACK RE: UPDATE OF STATUS OF POST CLOSING ISSUES (1.0) |
| 3/14/05 | Liou, J | 2.10 | REVIEW/ REVISE THE WINN-DIXIE STORE LIST; COORDINATE/ ATTEND MEETING RE: DUE DILIGENCE AT WINN-DIXIE CORPORATE HEADQUARTERS WITH IN-HOUSE COUNSEL | REVIEW/ REVISE THE WINN-DIXIE STORE LIST (.3); COORDINATE/ ATTEND MEETING RE: DUE DILIGENCE AT WINN-DIXIE CORPORATE HEADQUARTERS WITH IN-HOUSE COUNSEL (1.8) |
| 03/14/05 | Margolis, A | 3.70 | STRATEGY W/DJ BAKER AND | CONF CALL W/CLIENTS ON |

10

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | CONF CALL W/CLIENTS ON OBJECTIONS (1.2); ANALYSIS OF LANDLORD OBJECTIONS & STRATEGY W/P NECKLES THERETO (2.5) | OBJECTIONS TO DIP FINANCING MOTION (1.2); DEVELOP STRATEGY TO ADDRESS LANDLORD OBJECTIONS (2.5) |
| 03/14/05 | Neckles, P | 8.50 | REVIEW DIP OBJECTIONS; CONFERENCES TO DISCUSS STRATEGY WITH J. BAKER, S. HENRY, A. MARGOLIS, T. MATZ, J. HELFAT, AND D. FIORILLO; CONFERENCES AND CORRESPONDENCE REGARDING ADJOURNMENT OF DIP HEARING | REVIEW DIP OBJECTIONS (1.0); MEETINGS WITH J. BAKER, S. HENRY, A. MARGOLIS, T. MATZ, J. HELFAT, AND D. FIORILLO TO DISCUSS STRATEGY (5.0); CONFERENCES AND E-MAILS WITH J. BAKER, T. MATZ, A. MARGOLIS, AND J. HELFAT REGARDING ADJOURNMENT OF DIP HEARING (2.5) |
| 03/14/05 | Paoli, J | 4.70 | CONFERENCE WITH K. SAMBUR RE REVISION OF ORDERS; REVISE PRE-PETION TAX ORDER, RETENTION ORDERS, AND INSURANCE ORDER; RUN BLACKLINES OF ALL REVISED ORDERS AND DISTRIBUTE; FURTHER REVISE INTERIM COMPENSATION RETENTION, INSURANCE AND TAX ORDERS | CONFERENCE WITH K. SAMBUR RE REVISION OF ORDERS (.6); REVISE PRE-PETITION TAX ORDER, RETENTION ORDERS, AND INSURANCE ORDER (2.1); RUN BLACKLINES OF ALL REVISED ORDERS AND DISTRIBUTE (.4); FURTHER REVISE INTERIM COMPENSATION RETENTION, INSURANCE AND TAX ORDERS (1.6) |
| 03/15/05 | Liou, J | 13.50 | ASSIST W/ DUE DILIGENCE; ASSEMBLE FOR ATTORNEY REVIEW THE WINN-DIXIE MASTER CHART; ORGANIZE WINN-DIXIE LEASES AND LEASE COPIES | ASSIST W/ DUE DILIGENCE (10.8); ASSEMBLE FOR ATTORNEY REVIEW THE WINN-DIXIE MASTER CHART (1.5); ORGANIZE WINN-DIXIE LEASES AND LEASE COPIES (1.2) |
| 03/15/05 | Margolis, A | 3.60 | CONF CALL W/LANDLORD COUNSEL RE NEGOTIATIONS TO RESOLVE OBJECTIONS AND MEETING W/OTTERBOURG, P NECKLES THERETO (3.6) | CONF CALL NEGOTIATIONS WITH VARIOUS LANDLORD COUNSEL TO RESOLVE DIP FINANCING OBJECTIONS (2.3); DEVELOP STRATEGY W/OTTERBOURG, P NECKLES TO ADDRESS LANDLORD OBJECTIONS (1.3) |
| 03/15/05 | Sambur, K | 3.40 | ASSIST IN PREPARATION OF ELECTRONIC FILING FOR 3/15 HEARING AND ATTEND HEARINGS (3.4) | ASSIST IN PREPARATION OF ELECTRONIC FILING FOR 3/15 HEARINGS (1.1); ATTEND 3/15 HEARINGS (2.3) |
| 03/15/05 | Stuart, C | 13.50 | REVIEW OF LEASEHOLD PROPERTY FILES AND SUPERVISE DILIGENCE TEAM IN | NO LONGER WITH THE FIRM |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | CREATION OF ASSIGNMENT AND RESTRICTIVE COVENANTS CHART | |
| 03/15/05 | Toussi, S | 0.70 | ADDRESS ISSUES RE OBJECTIONS TO DIP ORDER BY PACA CLAIMANTS, RESEARCH ISSUES RE SAME (.7) | RESEARCH ISSUES RAISED BY PACA CLAIMANTS' OBJECTIONS TO DIP ORDER (.5); ORGANIZE RESEARCH RESULTS IN MEMO (.2) |
| 03/15/05 | Toussi, S | 1.10 | STATUS MEETING RE SAME, EDIT AND REVISE OUTLINE (1.1) | TEAM MEETING TO PREPARE FOR HEARING BEFORE JUDGE DRAIN (.5); EDIT AND REVISE OUTLINE RE SAME (.6) |
| 03/16/05 | Liou, J | 7.80 | ASSIST W/ DUE DILIGENCE; OBTAIN INFORMATION RE: MISSING STORE LEASES; ABSTRACT WINN-DIXIE STORE LEASES; ORGANIZE WINN-DIXIE LEASES AND LEASE COPIES | ASSIST W/ DUE DILIGENCE (4.8); OBTAIN INFORMATION RE: MISSING STORE LEASES (.5); ABSTRACT WINN-DIXIE STORE LEASES (1.5); ORGANIZE WINN-DIXIE LEASES AND LEASE COPIES (1.0) |
| 03/16/05 | Toussi, S | 1.50 | CONFERENCE CALL WITH PACA COUNSEL TO NEGOTIATE FINAL PACA ORDER, REVISE AND DISTRIBUTE PACA ORDER AS PER CONFERENCE CALL (1.5) | CONFERENCE CALL WITH PACA COUNSEL TO NEGOTIATE FINAL PACA ORDER (.8); REVISE AND DISTRIBUTE PACA ORDER AS PER CONFERENCE CALL (.7) |
| 03/16/05 | Zimmerman, G | 3.70 | MEETING W/ J. BAKER; REVIEWED VENUE PAPERS; REVIEWED MEMO. RE VENUE; REVIEWED ENRON DECISION; ANALYSIS OF ISSUES RE VENUE MOTION | NO FURTHER INFORMATION |
| 03/17/05 | Lam, S | 1.40 | MTG. WITH W. MACK RE: REVIEW OF CERTAIN POST CLOSING ISSUES RE: CONTROL AGREEMENTS; UCC STATEMENTS AND PROCESSOR LETTERS; ATTENTION TO OTHER POST-CLOSING DIP ISSUES | MTG. WITH W. MACK RE: REVIEW OF CERTAIN POST-CLOSING ISSUES RE: CONTROL AGREEMENTS (.7); UCC STATEMENTS AND PROCESSOR LETTERS (.3); FINALIZING OTHER POST-CLOSING DIP ISSUES (.4) |
| 03/17/05 | Paoli, J | 2.00 | REVISE RECLAMATION ORDER; CREATE CHART LISTING CHANGES TO RECLAMATION ORDER | REVISE RECLAMATION ORDER (.8); CREATE CHART LISTING CHANGES TO RECLAMATION ORDER (1.2) |
| 03/18/05 | Lam, S | 6.10 | MTG WITH S. TEICHER AND W. MACK RE: UPDATE AND REVIEW OF STATUS OF POST CLOSING OPEN ITEMS; UPDATE POST CLOSING CHECKLIST AND DISTRIBUTION TO ALL; T/C RE WACHOVIA COMMENTS TO CONTROL AGREEMENTS; T/C | MTG WITH S. TEICHER AND W. MACK RE: UPDATE AND REVIEW OF STATUS OF POST CLOSING OPEN ITEMS (1.0); UPDATE POST CLOSING CHECKLIST AND DISTRIBUTION TO ALL (2.0); T/C RE WACHOVIA |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | WITH K. CORBETT RE: REVISE PROCESSOR LETTERS; REVIEW OF DRAFT LENDER CONSENT TO EXTENSION OF TIME | COMMENTS TO CONTROL AGREEMENTS (.9); T/C WITH K. CORBETT RE: REVISE PROCESSOR LETTERS (.7); REVIEW OF DRAFT LENDER CONSENT TO EXTENSION OF TIME (1.5) |
| 03/18/05 | McDonald Henry, S | 7.00 | MEETING WITH BENNETT NUSSBAUM, JONATHAN HELFAT, DENNIS DUNNE ET AL REGARDING OUTSTANDING ISSUES RE: DIP AND RECLAMATION ORDER IN PREPARATION FOR HEARING; ATTENDANCE AT COURT HEARING IN CONNECTION WITH XROADS RETENTION, PACA, RECLAMATION AND DIP MOTIONS IN CONNECTION THEREWITH NEGOTIATIONS AND DISCUSSIONS WITH MORRISSEY, GWYNE, FRIEDMAN, NUSSBAUM, BARR, ET. AL | MEETING WITH BENNETT NUSSBAUM, JONATHAN HELFAT, DENNIS DUNNE ET AL. REGARDING OUTSTANDING ISSUES RE: DIP AND RECLAMATION ORDER IN PREPARATION FOR HEARING (1.6); ATTENDANCE AT COURT HEARING IN CONNECTION WITH XROADS RETENTION, PACA, RECLAMATION AND DIP MOTIONS IN CONNECTION THEREWITH - NEGOTIATIONS AND DISCUSSIONS WITH MORRISSEY, GWYNE, FRIEDMAN, NUSSBAUM, BARR, ET AL. (5.4) |
| 03/21/05 | Baker, D | 2.80 | FINAL PREPARATION FOR MEETING WITH CREDITORS COMMITTEE, INCLUDING PRE-MEETING WITH MANAGEMENT AND REVIEW OF PRESENTATION TO BE MADE TO COMMITTEE (2.8) | MEET WITH SENIOR MANAGEMENT OF COMPANY TO REVIEW DRAFT PRESENTATION TO BE MADE TO CREDITORS COMMITTEE AT MEETING (2.8) |
| 03/21/05 | Feld, S | 12.50 | CONTINUE TO WORK ON RECLAMATION MEMO; ANALYZE AND SUMMARIZE RECENT RECLAMATION CASES | CONTINUE TO DRAFT RECLAMATION MEMO (6.2); ANALYZE AND SUMMARIZE RECENT RECLAMATION CASES (6.3) |
| 03/21/05 | McDonald Henry, S | 1.70 | ATTENDANCE AT CREDITORS COMMITTEE MEETING; PREPARATIONS THEREFORE AND FOLLOW UP WITH VARIOUS COMPANY PARTICIPANTS RE LOGISTICS | ATTENDANCE AT CREDITORS COMMITTEE MEETING INCLUDING PREPARATIONS THEREFOR AND FOLLOW UP WITH VARIOUS COMPANY PARTICIPANTS IN COMMITTEE MEETING RE LOGISTICS (1.7) |
| 03/21/05 | Neckles, P | 7.50 | WORK ON REVISIONS TO FINAL DIP ORDER; CONFERENCES AND CONFERENCE CALLS WITH OTTERBOURG, STEINDLER | REVIEW AND REVISE FINAL DIP ORDER (5.0); CONFERENCE AND CONFERENCES CALLS WITH OTTERBOURG, STEINDLER (2.5) |
| 03/21/05 | Toussi, S | 1.80 | FOLLOWUP WORK ON PACA | FOLLOWUP WORK ON PACA |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-------|----------------------|---------------------|
| | | | RECONCILIATION AND PROPOSED ORDER, VARIOUS CORRESPONDENCE WITH PACA CLAIMANTS (1.8) | RECONCILIATION AND PROPOSED ORDER (1.5); VARIOUS CORRESPONDENCE WITH PACA CLAIMANTS (.3) |
| 03/22/05 | Davis, E | 0.70 | CALL WITH K. NARODICK ON SAME; REVIEW AND COMMENT ON MOTION TO SELL FL STORES (.7) | CALL WITH K. NARODICK ON SAME (.2); REVIEW AND COMMENT ON MOTION TO SELL FL STORES (.5) |
| 03/22/05 | Feld, S | 1.40 | REVIEW BINDER OF EMAILS RE UTILITIES; CONFERENCE CALL WITH C. COX AND M. JENKINS RE UTILITY ISSUES | REVIEW BINDER OF EMAILS RE UTILITIES (.4); CONFERENCE CALL WITH C. COX AND M. JENKINS RE UTILITY ISSUES (1.0) |
| 03/22/05 | LaMaina, K | 1.30 | CONFERENCE CALL RE SALE OF ASSETS AND PROCEDURES THEREON WITH CREDITORS' COMMITTEE AND XROADS AND FOLLOW-UP WORK AFTER CALL (1.3) | CONFERENCE CALL RE SALE OF ASSETS AND PROCEDURES THEREON WITH CREDITORS' COMMITTEE AND XROADS (1.1); REVIEW POST CALL WITH COMMITTEE ON ASSET AGREEMENT (.2) |
| 03/22/05 | Neckles, P | 6.50 | REVIEW, REVISE, AND SUBMIT COMMENTS TO FINAL DIP ORDER; CONFERENCES WITH OTTERBOURG, STEINDLER | REVIEW, REVISE, AND SUBMIT COMMENTS TO FINAL DIP ORDER (5.5); CONFERENCES WITH OTTERBOURG, STEINDLER (1.0) |
| 03/22/05 | Yeung, C | 3.50 | REVIEW/ REVISE THE UCC ASSIGNMENTS; REVIEW/ REVISE THE DISCLOSURE SCHEDULE I ITEM 6.25 (B) AND 6.30; REVIEW/ REVISE THE BLOCKED ACCOUNT TERMINATION LETTERS | REVIEW/ REVISE THE UCC ASSIGNMENTS (1.0); REVIEW/ REVISE THE DISCLOSURE SCHEDULE I ITEM 6.25 (B) AND 6.30 (1.0); REVIEW/ REVISE THE BLOCKED ACCOUNT TERMINATION LETTERS (1.5) |
| 03/22/05 | Zimmerman, G | 2.20 | STRATEGY ANALYSIS; PHONE CALLS; CASE REVIEW | NO FURTHER INFORMATION |
| 03/23/05 | Margolis, A | 1.80 | REVIEW OF COUNTERORDER AND CORRESPONDENCE, TC'S W/OTTERBOURG, MILBANK THERETO (1.8) | REVIEW OF COUNTERORDER ON DIP FINANCING (1.0); TC'S W/D. FIORELLO (OTTERBOURG) (.5), MILBANK THERETO (.3) |
| 03/24/05 | Ravin, A | 1.80 | REVIEW AND REVISE LENGTHY CORRESPONDENCE TO D. KATZ RE: SAME, ADDRESS ISSUES RELATED TO SAME INCLUDING LEGAL RESEARCH OF RETROACTIVE RELIEF (1.8) | REVIEW AND REVISE LENGTHY CORRESPONDENCE TO D. KATZ RE: SAME (.5); ANALYZE CANE RIVER OBJECTION AND CONDUCT LEGAL RESEARCH RE: RETROACTIVE RELIEF RE: REJECTION OF LEASE (1.3) |
| 03/24/05 | Zimmerman, G | 3.50 | ANALYSIS OF VARIOUS STRATEGY ISSUES; CONF. CALL | NO FURTHER INFORMATION |

14

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-------|----------------------|---------------------|
| | | | W/ CLIENT, J. BAKER; REVIEWED MEMO RE VENUE ANALYSIS | |
| 03/26/05 | LaMaina, K | 3.70 | ATTEND CONFERENCE CALL WITH J.CASTLE RE FOOD LION DEAL AND REVIEW AND REVISE SALE PAPERS (2.3); CONFERENCE RE AIRPLANE DISPOSITION AND PREPARE AND DISTRIBUTE INFORMATION RE SAME (1.4) | ATTEND CONFERENCE CALL WITH J.CASTLE RE FOOD LION DEAL (.2); REVIEW AND REVISE SALE PAPERS (2.1); CONFERENCE RE AIRPLANE DISPOSITION WITH R. BEINE (.2); PREPARE AND DISTRIBUTE PLANE SALE DOCUMENTS TO COMPANY (1.2) |
| 03/28/05 | McDonald Henry, S | 1.10 | ANALYSIS OF ISSUES REGARDING PASS THROUGH CERTIFICATES; T/C ALEX STEVENSON REGARDING NC WAREHOUSE LEASE, GOB SALES | ANALYSIS OF ISSUES REGARDING PASS THROUGH CERTIFICATES (.9); T/C ALEX STEVENSON REGARDING NC WAREHOUSE LEASE, GOB SALES, PRICING OF LEASE DISPOSITIONS (.2) |
| 03/28/05 | Neckles, P | 4.00 | REVIEW AMENDMENT NO. 1 TO DIP CREDIT AGREEMENT; CORRESPONDENCE REGARDING APPROVAL OF SAME; WORK ON VARIOUS ISSUES IN CONNECTION WITH COLLATERAL FOR DIP FINANCING | REVIEW AMENDMENT NO. 1 TO DIP AGREEMENT (1.5); DRAFT E-MAILS REGARDING APPROVAL OF AMENDMENT NO. 1 TO DIP CREDIT AGREEMENTS (1.5); REVIEW AND REVISE COLLATERAL FOR DIP FINANCING (1.0) |
| 03/29/05 | LaMaina, K | 7.30 | CIRCULATE ORDER FOR REVIEW AND COMMENT AGAIN AND RESPOND TO REQUESTS FOR INFORMATION FROM THE COMMITTEE AND MAJESTIC REALTY CO. AND EDIT SALE DOCUMENTS AND RUN BLACKLINES AND DISTRIBUTE FOR COMMENT AND EDITS TO ALL INTERESTED PARTIES (7.3) | CIRCULATE ORDER FOR REVIEW AND COMMENT AGAIN TO CREDITORS' COMMITTEE AND PURCHASER (.6); RESPOND TO REQUESTS FOR INFORMATION FROM THE COMMITTEE AND MAJESTIC REALTY CO. (3.2); EDIT SALE DOCUMENTS (2.9); RUN BLACKLINES AND DISTRIBUTE FOR COMMENT AND EDITS TO ALL INTERESTED PARTIES (.6) |
| 03/29/05 | LaMaina, K | 3.20 | CORRESPOND WITH WITNESSES FOR 3/30 HEARING AND REVISE HEARING DOCUMENTS TO REFLECT TURN OF EVENTS RE SALE INTEREST INCLUDING HEARING SUMMARIES AND FOLLOW-UP WITH WITNESSES RE ARRIVAL STATUS (3.2) | CORRESPOND WITH WITNESSES FOR 3/30 HEARING (1.0); REVISE HEARING DOCUMENTS TO REFLECT TURN OF EVENTS RE SALE INTEREST INCLUDING HEARING SUMMARIES (1.7); LOGISTICS WITH WITNESSES RE SALE HEARING (.5) |
| 03/29/05 | Neckles, P | 1.00 | REVIEW FIRST AMENDMENT; CORRESPONDENCE | REVIEW AMENDMENT NO. 1 (.5); DRAFT E-MAILS |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-------|----------------------|---------------------|
| | | | REGARDING THE SAME | REGARDING AMENDMENT NO. 1 (.5) |
| 03/29/05 | Yeung, C | 2.20 | REVIEW/ REVISE THE LITIGATION SCHEDULES; COORDINATE/ ATTEND MEETING RE: COMMENTS TO LITIGATION SCHEDULES | REVIEW/ REVISE THE LITIGATION SCHEDULES (2.0); COORDINATE/ ATTEND MEETING RE: COMMENTS TO LITIGATION SCHEDULES (.2) |
| 03/30/05 | Margolis, A | 1.30 | REVIEW REVISED AMENDMENTS TO CREDIT AGREEMENT, DISTRIBUTE TO COMMITTEE COUNSEL, US TRUSTEE, AND STRATEGY W/S TEICHER THERETO; CALL W/M BARR, S BURIAN, S TEICHER THERETO; REVIEW & FORWARD TO COMMITTEE COUNSEL, UST REVISED AMENDMENTS AND TC W/M BARR, S BURIAN, S TEICHER THERETO | REVIEW REVISED AMENDMENTS TO CREDIT AGREEMENT (.3); DISTRIBUTE REVISED AMENDMENTS TO CREDIT AGREEMENT TO COMMITTEE COUNSEL, U.S. TRUSTEE (.2); DEVELOP STRATEGY RE AMENDMENTS TO CREDIT AGREEMENT (.4); CALL W/M BARR (COMMITTEE COUNSEL), S BURIAN (COMMITTEE ADVISOR), S TEICHER RE CREDIT AGREEMENT AMENDMENTS (.4) |
| 03/30/05 | McDonald Henry, S | 1.40 | ATTEND COURT HEARING, INCLUDING MEETINGS WITH MATT BARR, REPRESENTATIVES OF MOLINARO AND MAJESTIC; CONDUCT AUCTION (1.4) | ATTEND MEETINGS WITH MATT BARR, REPRESENTATIVES OF MOLINARO AND MAJESTIC, CONDUCT AUCTION WHEN HEARING WAS ONGOING (1.4) |
| 03/30/05 | McDonald Henry, S | 0.70 | WORK RE SETTING UP MEETING WITH VENDORS RE VENDOR LIEN PROGRAM AND OVERALL SETTLEMENT; REVIEW CORRESPONDENCE | ORGANIZE MEETING WITH VENDORS RE VENDOR LIEN PROGRAM AND OVERALL SETTLEMENT AND IN CONNECTION THEREWITH REVIEW CORRESPONDENCE RELATING TO MEETING (.7) |
| 03/30/05 | Toussi, S | 1.10 | REVIEW XROADS RECONCILIATION CHART RE PACA CLAIMS, ADDRESS ISSUES RE SAME, CALLS RE SAME (1.1) | REVIEW XROADS RECONCILIATION CHART RE PACA CLAIMS (.2); ADDRESS ISSUES RE SAME (.4); PHONE CALLS AND CORRESPONDENCE WITH PACA CLAIMANTS RESULTING FROM TEAM MEETING (.5) |
| 03/31/05 | McDonald Henry, S | 2.10 | TELEPHONE CALL W K&S, JAY CASTLE, LARRY APPEL, ROSALIE GRAY REGARDING PENDING LITIGATION AGAINST FORMER AND CURRENT EMPLOYEES AND RESPONSES | TELEPHONE CALL W K&S, JAY CASTLE, LARRY APPEL, ROSALIE GRAY REGARDING PENDING LITIGATION AGAINST FORMER AND CURRENT EMPLOYEES AND |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | THERETO; REVIEW CASES REGARDING EXTENSION OF AUTOMATIC STAY | RESPONSES THERETO (1.2); REVIEW CASES REGARDING EXTENSION OF AUTOMATIC STAY (.9) |
| 03/31/05 | Yeung, C | 2.20 | REVIEW/ REVISE THE AMOUNTS ON THE REVOLVING NOTES AND TERM NOTES; PREPARE DISTRIBUTION OF REVOLVING AND TERM NOTES WITH SIGNATURE PAGES; REVIEW/ REVISE THE CLOSING SETS | REVIEW/ REVISE THE AMOUNTS ON THE REVOLVING NOTES AND TERM NOTES (.5); PREPARE DISTRIBUTION OF REVOLVING AND TERM NOTES WITH SIGNATURE PAGES (.7); REVIEW/ REVISE THE CLOSING SETS (1.0) |
| 04/01/05 | Toussi, S | 1.50 | ADDRESS AND RESOLVE RECLAMATION ISSUES WITH ELLEN GORDON, REVIEW DRAFT MEMO ON RECLAMATION PROCEDURES | ADDRESS AND RESOLVE RECLAMATION ISSUES WITH ELLEN GORDON (1.2); REVIEW DRAFT MEMO ON RECLAMATION PROCEDURES (.3) |
| 04/05/05 | Sambur, K | 0.80 | PREPARE 5TH SUPPLEMENTAL ORDINARY COURSE PROFESSIONAL SUBMISSION AND ASSIST IN FILING 4TH AMENDED SUBMISSION | PREPARE 5TH SUPPLEMENTAL ORDINARY COURSE PROFESSIONAL SUBMISSION (.6); ASSIST IN FILING 4TH AMENDED SUBMISSION (.2) |
| 04/06/05 | Feld, S | 0.90 | REVIEW EMAILS RE: BONDS; WORK ON BOND ISSUES | REVIEW EMAILS RE: ISSUANCE OF NEW SURETY BONDS (.3); REVIEW LIST OF OUTSTANDING SURETY BONDS (.6) |
| 04/06/05 | Toussi, S | 1.30 | ADDRESS AND RESOLVE ISSUES RE PACA PROCEDURES, RESEARCH ISSUES RE SAME (1.3) | ADDRESS AND RESOLVE ISSUES RE PACA PROCEDURES (.7); RESEARCH ISSUES RE SAME (.6) |
| 04/08/05 | Toussi, S | 1.50 | ADDRESS ISSUES RE SAME AND CONFERENCE CALL TO ADDRESS ISSUES REPORT (1.5) | PREPARE QUESTIONS AND MARKUP OF XROADS DRAFT OF THE PACA REPORT CHARTS (1.0); CONFERENCE CALL WITH XROADS AND INTERNAL TEAM MEMBERS TO DISCUSS RECLAMATION REPORTS PREPARED FOR RECLAMATION CLAIMANTS (.5) |
| 04/08/05 | Toussi, S | 1.50 | REVIEW XROADS REPORTS ON STATUS OF PACA CLAIMS, CONFERENCE CALLS RE SAME (1.5) | REVIEW XROADS REPORTS ON STATUS OF PACA CLAIMS (1.0); CONFERENCE CALL TO DISCUSS XROADS REPORT ON STATUS OF PACA CLAIMS AND PROCEDURES FOR FINAL RECONCILIATIONS (.5) |
| 04/10/05 | Toussi, S | 1.50 | RESEARCH BACKGROUND | RESEARCH BACKGROUND |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-------|----------------------|---------------------|
| | | | MATERIALS RE VALIDITY OF PACA CLAIMS, PREPARE FOR TRIP TO JACKSONVILLE (1.5) | MATERIALS RE VALIDITY OF PACA CLAIMS (.8); PREPARE FOR TRIP TO JACKSONVILLE (.7) |
| 04/11/05 | Eichel, S | 6.80 | WORK ON PREPARING FOR HEARING, INCLUDING REVIEW OF DEPOSITION TRANSCRIPT AND DRAFTING, REVIEWING AND REVISING PROPOSED STIPULATION OF FACTS  OF STIPULATION OF FACTS, AND CONTINUATION OF RESEARCH IN CONNECTION WITH MOTION (6.8) | PREPARE FOR HEARING ON MOTION TO TRANSFER VENUE (6.2); CONTINUE RESEARCH IN CONNECTION WITH VENUE MOTION (.6) |
| 04/12/05 | LaMaina, K | 5.50 | RESEARCH AMENDMENTS TO APA AND REVIEW INFORMATION AND CORRESPOND WITH D.STANDFORD AND K.DAW RE SAME; (1.3) IMPLEMENT AND PREPARE FOR CONFERENCE CALL RE FOOD LION MOTION WITH CREDITORS' COMMITTEE AND FINANCIAL ADVISORS AND DISCUSS BUSINESS REASONS FOR TRANSACTION AND CONDUCT FOLLOW-UP WORK RE CALL (4.2) | RESEARCH AMENDMENTS TO APA (1.0); REVIEW PURCHASE AGREEMENT AND CORRESPOND WITH D. STANFORD AND K.DAW RE PURCHASE AGREEMENT (.3); PREPARE FOR CONFERENCE CALL RE FOOD LION MOTION WITH CREDITORS' COMMITTEE AND FINANCIAL ADVISORS (1.0); DISCUSS BUSINESS REASONS FOR TRANSACTION WITH FOOD LION WITH CREDITORS' COMMITTEE AND FINANCIAL ADVISORS (.2); RESEARCH INQUIRIES RAISED BY FOOD LION TRANSACTION ON CALL EARLIER WITH D. STANFORD REGARDING STORE BUSINESS AND PURCHASE AGREEMENT (3.0) |
| 04/14/05 | Toussi, S | 1.80 | VARIOUS CONFERENCE CALLS AND CORRESPONDENCE RE PACA ISSUES AND SETTLEMENT OFFERS RE PACA CLAIMS (1.8) | DISCUSS WITH PACA CLAIMANTS STATUS OF PACA CLAIMS (1.0); NEGOTIATE SETTLEMENT OFFERS FROM SUCH CLAIMANTS (.8) |
| 04/15/05 | LaMaina, K | 3.20 | ATTEND CONFERENCE CALL RE HARAHAN DEAL AND CONDUCT FOLLOW-UP WORK RE MOTION INFORMATION AND REVIEW OF APA (3.2) | ATTEND CONFERENCE CALL RE HARAHAN DEAL (.2); REVIEW HARAHAN MOTION/PURCHASE AGREEMENT (3.0) |
| 04/15/05 | Toussi, S | 1.50 | REVIEW RECONCILIATIONS WITH VARIOUS VENDORS, NEGOTIATE SETTLEMENTS AND PREPARE | REVIEW RECONCILIATIONS WITH VARIOUS VENDORS (.7); NEGOTIATE SETTLEMENTS AND |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | CORRESPONDENCE RE SAME (1.5) | PREPARE CORRESPONDENCE RE SAME (.8) |
| 04/20/05 | Toussi, S | 1.00 | WORK ON SETTLEMENT NEGOTIATIONS WITH OTHER PACA VENDORS INCLUDING FLAVOR PIC AND SUNKIST, VARIOUS CORRESPONDENCE AND TELECONFERENCES RE SAME (1.0) | WORK ON SETTLEMENT NEGOTIATIONS WITH OTHER PACA VENDORS INCLUDING FLAVOR PIC AND SUNKIST (.7); VARIOUS CORRESPONDENCE AND TELECONFERENCES WITH VARIOUS PACA CLIENTS RE SETTLEMENT PROPOSALS (.3) |
| 04/22/05 | McDonald Henry, S | 0.90 | ANALYSIS OF ISSUES RELATING TO SECURITIES LITIGATION AND NOTICING ISSUES REGARDING SAME: CONFERENCES WITH GRAY AND BAKER RE STRATEGY | ANALYSIS OF ISSUES RELATING TO SECURITIES LITIGATION AND NOTICING ISSUES REGARDING SAME AND, AS PART OF THAT ANALYSIS, CONFERENCES WITH GRAY AND BAKER RE STRATEGY (.9) |
| 04/22/05 | Toussi, S | 1.20 | REVIEW LATEST DRAFT OF RECLAMATION REPORT, CONFERENCE CALL RE SAME (1.2) | REVIEW AND ANALYZE LATEST DRAFT OF RECLAMATION REPORT FROM XROADS (.8); CONFERENCE CALL WITH XROADS TO DISCUSS THE LATEST DRAFT OF THE RECLAMATION REPORT (.4) |
| 04/24/05 | Toussi, S | 1.20 | DRAFT AND REVISE SETTLEMENT OFFERS, RESEARCH ISSUES RE SAME (1.2) | DRAFT AND REVISE SETTLEMENT OFFERS (.4); RESEARCH ISSUES RE SAME (.8) |
| 04/25/05 | Toussi, S | 1.50 | ADDRESS ISSUES RE VALUATION OF RECLAMATION CLAIMS, MEET WITH WD EMPLOYEES TO DISCUSS SAME (1.5) | RESEARCH ISSUES RE VALUING RECLAMATION CLAIMS (1.0); MEET WITH WD EMPLOYEES TO DISCUSS VALUATION METHODOLOGY (.5) |
| 04/25/05 | Toussi, S | 2.80 | WORK ON ADDRESSING AND RESOLVING PACA CLAIMS FILED BY VARIOUS VENDORS, INCLUDING NEGOTIATIONS WITH ATTORNEYS FOR VENDORS (1.6); VARIOUS TEAM MEETINGS AND CONFERENCE CALL RE STATUS OF CLAIMS (1.2) | WORK ON ADDRESSING AND RESOLVING PACA CLAIMS FILED BY VARIOUS VENDORS, INCLUDING NEGOTIATIONS WITH ATTORNEYS FOR VENDORS (1.6); TEAM MEETING TO DISCUSS STATUS OF PACA REPORT PRIOR TO FILING WITH THE COURT (.8); CONFERENCE CALL RE STATUS OF CLAIMS (.4) |
| 04/27/05 | Toussi, S | 1.50 | REVIEW PACA REPORT AND UPDATE BY XROADS IN ANTICIPATION OF | REVIEW PACA REPORT AND UPDATE BY XROADS IN ANTICIPATION OF |

| DATE | NAME | HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-------|---------------------|---------------------|
| | | | CONFERENCE CALL, CONFERENCE CALL RE SAME TO DISCUSS STATUS (1.5) | CONFERENCE CALL (.8); CONFERENCE CALL TO DISCUSS THE STATUS OF THE PACA REPORT TO BE FILED WITH THE COURT (.7) |
| 04/28/05 | Gray, R | 1.20 | WORK ON FINALIZING 341 NOTICE AND BAR DATE NOTICE, INCLUDING MULTIPLE TCS AND EMAILS WITH C. JACKSON, K. LOGAN AND J. LEAMY  (1.2) | FINAL REVIEW/REVISION OF 341 NOTICE (.3); SAME REGARDING BAR DATE NOTICE (.3); MULTIPLE TCS AND EMAILS W/ C. JACKSON (.2); K. LOGAN (.2); AND J. LEAMY (.2) |
| 04/28/05 | LaMaina, K | 2.20 | REVIEW APA ON PLANE 2 TRANSACTION AND REVIEW AND COMMENT ON PURCHASER CHANGES AND SET-UP CONFERENCE CALL AND PROVIDE DOCUMENTATION AND INFORMATION TO K.NARODICK ON BEHALF OF THE DEBTORS (2.2) | REVIEW APA ON PLANE 2 TRANSACTION (.4);  REVIEW AND COMMENT ON PURCHASER CHANGES (1.6); LOGISTICS FOR CONFERENCE CALL AND PROVIDE DOCUMENTATION AND INFORMATION TO K.NARODICK ON BEHALF OF THE DEBTORS (.2) |
| 04/28/05 | Toussi, S. | 1.50 | ADDRESS AND RESOLVE ISSUES RE SPECIFIC RECLAMATION CLAIMS, RESEARCH CASE LAW RE SAME | ANALYZE WHICH DEFENSES APPLY TO RECLAMATION VENDORS' CLAIMS (1.0); RESEARCH CASE LAW RE SAME (.5) |
| 04/28/05 | Toussi, S | 2.70 | REVIEW PACA REPORT AND UPDATE BY XROADS IN ANTICIPATION OF CONFERENCE CALL, CONFERENCE CALL RE SAME TO DISCUSS STATUS (1.2); NEGOTIATE SETTLEMENT PROPOSALS FOR VARIOUS PACA VENDORS, DRAFT AND PREPARE DOCUMENTATION RE SAME (1.5) | REVIEW PACA REPORT AND UPDATE BY XROADS IN ANTICIPATION OF CONFERENCE CALL (.8); CONFERENCE CALL TO DISCUSS REMAINING OUTSTANDING ISSUES WITH PACA VENDORS WHOSE CLAIMS WERE NOT FINALLY RECONCILED IN THE PACA REPORT (.4); NEGOTIATE SETTLEMENT PROPOSALS FOR VARIOUS PACA VENDORS (.7); DRAFT AND PREPARE DOCUMENTATION RE SAME (.8) |
| 04/29/05 | Matz, T | 1.20 | FOLLOW UP CORRESPONDENCE AND DISCUSSIONS WITH XROADS  AND BLACKSTONE RE: SAME (1.2) | NO FURTHER INFORMATION |

**EXHIBIT K-4**
**ADMINISTRATION/CLERICAL ACTIVITIES BY PROFESSIONALS**
**(FIRST INTERIM FEE APPLICATION)**

| DATE | NAME | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|
| 02/22/05 | Gray, R | ATTEND TO INTERNAL ORGANIZATION MATTERS (0.9) | REVIEW, ORGANIZE, PRIORITIZE AND COORDINATE HANDLING OF PENDING AND UPCOMING MATTERS AND CASE ADMINISTRATION RESPONSIBILITIES (0.9) |
| 02/25/05 | Gray, R | ASSIST WITH INITIAL CASE CALENDAR (0.2) | PROVIDE LEGAL ASSISTANT WITH DATES AND DEADLINES FOR INITIAL CASE CALENDAR (0.2) |
| 02/25/05 | Gray, R | ASSIST WITH INITIAL CASE CALENDAR (0.3) | REVIEW DRAFT AND PROVIDE LEGAL ASSISTANT WITH ADDITIONAL INFORMATION/GUIDANCE ON INITIAL CASE CALENDAR (0.3) |
| 03/12/05 | Gray, R | WORK ON UPDATES TO CASE CALENDAR AND DRAFT MEMO TO TEAM RE: SAME (0.2) | REVIEW AND PROVIDE LEGAL ASSISTANT WITH UPDATING INFORMATION FOR WEEKLY CASE CALENDAR AND DRAFT MEMO TO TEAM RE: RESPONSIBILITY FOR KEEPING CALENDAR UPDATED (0.2) |
| 03/21/05 | Gray, R | REVIEW AND UPDATE CASE CALENDAR (0.3) | REVIEW AND PROVIDE LEGAL ASSISTANT WITH UPDATING INFORMATION FOR WEEKLY CASE CALENDAR (0.3) |
| 03/29/05 | Gray, R | ARRANGE FOR WORD PROCESSING TO PRINT SCHEDULES FOR REVIEW (0.1) | RECEIVE MULTIPLE EMAILS FROM LOGAN & COMPANY WITH SCHEDULE DRAFTS FOR REVIEW AND DRAFT MEMOS FORWARDING SAME TO WORD PROCESSING FOR PRINTING TO FACILITATE REVIEW (0.1) |
| 03/23/05 | Horwitz, M | COORDINATE CITE CHECKING OF MEMO (.8) | NO LONGER WITH THE FIRM |
| 04/19/05 | Horwitz, M | ASSEMBLE AND FORWARD RECLAMATION DOCUMENTS TO D.J. BAKER (.2) | NO LONGER WITH THE FIRM |
| 04/06/05 | Kaloudis, D | PRINT RESEARCH MATERIALS (.6) | ANALYZE RESEARCH MATERIALS (.6) |
| 04/11/05 | LaMaina, K | PREPARE ALL DOCUMENTS FOR FILING AGAIN (3.2) | REVISE FOOD LION MOTION/ORDER/PURCHASE AGREEMENT IN ACCORDANCE WITH COMMENTS RECEIVED FROM COUNSEL FOR CREDITORS' COMMITTEE BEFORE TIME TO FILE (3.2) |
| 03/14/05 | Levinson, A | MAKE TRAVEL ARRANGEMENTS (.4) | NO LONGER WITH THE FIRM |
| 02/24/05 | Mack III, W | MADE PHYSICAL DELIVERY OF CLOSING DOCUMENTS (3.0) | NO LONGER WITH THE FIRM |

| DATE | NAME | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|
| 02/25/05 | Mack III, W | DOWNLOADED AND SAVED DOCUMENTS FROM K&E SITE (1.5) | NO LONGER WITH THE FIRM |
| 03/02/05 | Mack III, W | SUPERVISED DELIVERY OF AFFIDAVIT (1.0) | NO LONGER WITH THE FIRM |
| 03/30/05 | Mack III, W | HAD SCHEDULES RESCANNED FOR QUALITY (.5) | NO LONGER WITH THE FIRM |
| 03/30/05 | Mack III, W | SENT OUT FINAL SCHEDULES (.5) | NO LONGER WITH THE FIRM |
| 03/31/05 | Mack III, W | FAXES TO OSH&R (.2) | NO LONGER WITH THE FIRM |
| 03/23/05 | Paoli, J | RESERVE CONFERENCE ROOM (.2) | PREPARE FOR CONFERENCE WITH S. HENRY AND B. NUSSBAUM RE LEASES MOTION (.2) |
| 04/28/05 | Paoli, J | SEND COPY OF UTILITIES ORDER (.4) | ORGANIZE DOCUMENTS AND DRAFT EMAIL TO UTILITY COMPANY TRANSMITTING SAME FOR CONFERENCE CALL (.4) |
| 04/29/05 | Paoli, J | SEND PROPOSAL TO TAMPA IN ANTICIPATION OF T/C (.2) | ORGANIZE DOCUMENTS AND DRAFT EMAIL TO TAMPA UTILITY TRANSMITTING SAME FOR CONFERENCE CALL (.2) |
| 04/29/05 | Paoli, J | SEND MOTION AND ORDER TO C. JACKSON FOR REVIEW (.2) | DRAFT EMAIL TO C. JACKSON RE: REVIEW OF MOTION AND ORDER |
| 04/29/05 | Paoli, J | SEND MOTION TO CREDITOR'S COMMITTEE COUNSEL (.2) | DRAFT EMAIL TO CREDITORS COMMITTEE COUNSEL TRANSMITTING MOTION |
| 04/29/05 | Paoli, J | SEND PLEADINGS TO C. JACKSON FOR FILING (.3) | DRAFT EMAIL TO C. JACKSON RE: FILING OF PLEADINGS |
| 03/02/05 | Sambur, K | OBTAIN COPY OF PACA STATUE (.2) | PERFORM ELECTRONIC LEGAL SEARCH FOR PACA STATUTE (.2) |
| 04/05/05 | Sambur, K | ASSIST IN FILING 4TH AMENDED SUBMISSION | ASSIST IN FILING 4TH AMENDED SUBMISSION (.2) |
| 03/10/05 | Toussi, S | DISTRIBUTE SAME (.3) | DISTRIBUTE PACA REPORT TO ALL NOTICE PARTIES AND PACA CLAIMANTS |
| 03/16/05 | Toussi, S | INTERNAL DISTRIBUTION OF DRAFT RESERVE LANGUAGE (.2) | DRAFT EMAIL TO SKADDEN TEAM RE: LANGUAGE PRESERVING DEBTORS' RIGHTS AND DEFENSES |
| 02/22/05 | Turetsky, D | DELIVER FIRST DAY BINDER AND ATTEND TO PAYMENT OF FILING AND RELATED FEES (1.0) | MEET WITH COURT PERSONNEL RE: BINDER OF FIRST DAY PLEADINGS AND PAYMENT OF FILING AND RELATED FEES |
| 04/21/05 | Turetsky, D | ASSEMBLE SETS OF BLACKSTONE; XROADS, HOULIHAN, AND ALVAREZ RETENTION DOCUMENTS IN CONNECTION WITH POSTING OF 328 RETENTION NOTICE (.5) | LOCATE/ORGANIZE SETS OF BLACKSTONE, XROADS, HOULIHAN AND ALVAREZ RETENTION DOCUMENTS TO SATISFY POSTING REQUIREMENTS IN CONNECTION WITH 328 RETENTION NOTICE |

**EXHIBIT O**

**FLIK Int'l Food Service @**
**Skadden**

**Winn-Dixie Stores, Inc**
**(DIP) (Atty: Kim LaMaina)**

---

**Wednesday, March 30, 2005**
Status: Confirmed
Confirm Date:03/29/2005

**Function Name:  Meeting  # 205371**
Funct Post As:

Post As:Henry, Sally McDonald

---

| Customer: Henry, Sally McDonald | Phone: 2560 | | Fax: 917-777-2560 |
|---|---|---|---|
| Address: | | | |
| Contact: | Phone: | | E-mail: |
| On-Site Contact:  None | | | Salesperson:  Alicia Christofi |
| Setup Style: | | | Booking Mgr: |
| Start Time:  08:00 am | End Time:  03:30 pm | | |
| # Expected:  0 | # Guaranteed:  6 | | Room(s), Section(s): |
| | | | 38-220     S12/M, 37 & 38 CC |

Function Notes:  None

---

| Service Time | Item | | Qty | Charge |
|---|---|---|---|---|
| 08:00 am - 09:30 am | Continental Breakfast | | 6 | $2.95 |
| | Coffee, Decaf and Tea | | | |
| | Muffins, Bagels | | | |
| | CreamCheese, Butter and Jelly | *Firm paid* | | |
| 12:00 pm - 01:30 pm | Snack Service | | 6 | $2.42 |
| | Beverages Based on 8 People | | | |
| | 3 Coke, 2 Diet Coke | | | |
| | 2 Seltzer, 1 Ginger Ale | | | |
| | Coffee, Tea, and Decaf | | | |
| | Pitcher of Iced Tea with Lemon | | | |
| | 2 Pitchers of Water with Lemon | | | |
| | Cookies | | | |
| 01:00 pm - 02:00 pm | Buffet Standard | | 4 | $28.14 |



DOSBCCSCB
02/17/05

NEW YORK STATE DEPARTMENT OF STATE
DIVISION OF CORPORATIONS
SERVICE COMPANY BILLING - CERTIFICATES AND COPIES
02/17/05

PAGE    1

SERVICE COMPANY: SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP - 86

ORGANIZATION NAME
DIXIE STORES, INC.

CASH NUM
050217-0131

FEES
TYPE: RMT CERT SEAL
REQUEST:    25.00
HANDLING:    25.00

TOTAL:    50.00

PAID
CASH:     0.00
CHECK:     0.00
CHARGE:     0.00
DRAWDOWN:    50.00
REFUND:     0.00
TOTAL:    50.00



DOSBCCSCB
02/23/05

NEW YORK STATE DEPARTMENT OF STATE
DIVISION OF CORPORATIONS
SERVICE COMPANY BILLING - CERTIFICATES AND COPIES
02/23/05

PAGE    1

SERVICE COMPANY: SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP - 86

ORGANIZATION NAME
BLACKROCK, INC.

DIXIE STORES, INC.

050223-0323        TYPE: RMT CERT SEAL
                   REQUEST:   25.00
                   HANDLING:  25.00

CASH:       0.00
CHECK:      0.00
CHARGE:     0.00
DRAWDOWN:  50.00
REFUND:     0.00
TOTAL:     50.00

BILLED

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-1**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 2/1/2005 | Baker DJ | $ 379.20 | 1057292 | VENDOR: BAKER DJ INVOICE#: ER031805 DATE: 3/18/2005   DEPARTING AIRPORT OR STATION: JACKSONVILLE, FLORIDA; ARRIVAL AIRPORT OR STATION: KENNEDY, NYC; CARRIER: DELTA; CLASS OF SERVICE: ECONOMY; *** RELATING TO TRIP FROM: JACKSONVILLE, FLORIDA; DEPARTURE DATE: 02/01/05; TO: NEW YORK CITY; RETURN DATE: 02/02/05 *** |
| 2/25/2005 | Baker DJ | $ 379.20 | 1057292 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: JFK NEW YORK NY-KENNEDY CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| 3/2/2005 | LaMaina KA | $ 323.40 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: PHL PHILADELPHIA PA-WILM'T-INTL TO: JAX JACKSONVILLE FL-INTL CARRIER: US USAIR CLASS: L COACH; FROM: JAX JACKSONVILLE FL-INTL TO: PHL PHILADELPHIA PA-WILM'T-INTL CARRIER: US USAIR CLASS: L COACH. NAME: LAMAINA, KIMBERLY A. |
| 3/2/2005 | Leamy JM | $ 323.40 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: PHL PHILADELPHIA PA-WILM'T-INTL TO: JAX JACKSONVILLE FL-INTL CARRIER: US USAIR CLASS: L COACH; FROM: JAX JACKSONVILLE FL-INTL TO: PHL PHILADELPHIA PA-WILM'T-INTL CARRIER: US USAIR CLASS: L COACH. NAME: LEAMY, JANE M. |
| 3/6/2005 | Baker DJ | $ 536.34 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: N COACH; FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: N COACH. NAME: BAKER, DAVID JANSING. |
| 3/14/2005 | Levinson AR | $ 522.77 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: LEVINSON, ANDREW R. |
| 3/14/2005 | Liou J | $ (395.06) | 1055381 | AGENCY: NAVIGANT TRAVEL.. NAME: LIOU, JASPER. |
| 3/14/2005 | Liou J | $ 827.60 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: JFK NEW YORK NY-KENNEDY TO: JAX JACKSONVILLE FL-INTL CARRIER: DL DELTA AIR LINES CLASS: Y COACH; FROM: JAX JACKSONVILLE FL-INTL TO: ATL ATLANTA GA-HARTSFIE CARRIER: DL DELTA AIR LINES CLASS: Y COACH; FROM: ATL ATLANTA GA-HARTSFIE TO: JFK NEW YORK NY-KENNEDY CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: LIOU, JASPER. |
| 3/14/2005 | Mack III WB | $ (395.06) | 1055381 | AGENCY: NAVIGANT TRAVEL.. NAME: MACK, WILLIAM B. |
| 3/14/2005 | Mack III WB | $ 827.60 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: JFK NEW YORK NY-KENNEDY TO: JAX JACKSONVILLE FL-INTL CARRIER: DL DELTA AIR LINES CLASS: Y COACH; FROM: JAX JACKSONVILLE FL-INTL TO: ATL ATLANTA GA-HARTSFIE CARRIER: DL DELTA AIR LINES CLASS: Y COACH; FROM: ATL ATLANTA GA-HARTSFIE TO: JFK NEW YORK NY-KENNEDY CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: MACK, WILLIAM B. |
| 3/14/2005 | Stuart CW | $ (395.06) | 1055381 | AGENCY: NAVIGANT TRAVEL.. NAME: STUART, CHRISTOPHER W. |
| 3/14/2005 | Stuart CW | $ 827.60 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: JFK NEW YORK NY-KENNEDY TO: JAX JACKSONVILLE FL-INTL CARRIER: DL DELTA AIR LINES CLASS: Y COACH; FROM: JAX JACKSONVILLE FL-INTL TO: ATL ATLANTA GA-HARTSFIE CARRIER: DL DELTA AIR LINES CLASS: Y COACH; FROM: ATL ATLANTA GA-HARTSFIE TO: JFK NEW YORK NY-KENNEDY CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: STUART, CHRISTOPHER W. |
| 3/16/2005 | Levinson AR | $ 479.27 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: LEVINSON, ANDREW R. |
| 3/16/2005 | Levinson AR | $ 389.20 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: LGA NEW YORK NY-LA GUARDIA CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: LEVINSON, ANDREW R. |
| 3/16/2005 | Levinson AR | $ (389.20) | 1055381 | AGENCY: NAVIGANT TRAVEL.. NAME: LEVINSON, ANDREW R. |
| 3/16/2005 | Liou J | $ 479.27 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: LIOU, JASPER. |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-1**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 3/16/2005 | Mack III WB | $ 479.27 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: MACK, WILLIAM B. |
| 3/16/2005 | Stuart CW | $ 479.27 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: STUART, CHRISTOPHER W. |
| 3/23/2005 | Baker DJ | $ 616.76 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| 3/29/2005 | Leamy JM | $ 573.40 | 1055381 | AGENCY: NAVIGANT TRAVEL. FROM: PHL PHILADELPHIA PA-WILM'T-INTL TO: JAX JACKSONVILLE FL-INTL CARRIER: US USAIR CLASS: L COACH; FROM: JAX JACKSONVILLE FL-INTL TO: PHL PHILADELPHIA PA-WILM'T-INTL CARRIER: US USAIR CLASS: N COACH. NAME: LEAMY, JANE M. |
| 4/1/2005 | Leamy JM | $ 8.70 | 1061625 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: CLT CHARLOTTE NC CARRIER: US USAIR CLASS: N COACH; FROM: CLT CHARLOTTE NC TO: PHL PHILADELPHIA PA-WILM'T-INTL CARRIER: US USAIR CLASS: N COACH. NAME: LEAMY, JANE M. |
| 4/4/2005 | Leamy JM | $ 323.40 | 1061625 | AGENCY: NAVIGANT TRAVEL. FROM: PHL PHILADELPHIA PA-WILM'T-INTL TO: JAX JACKSONVILLE FL-INTL CARRIER: US USAIR CLASS: L COACH; FROM: JAX JACKSONVILLE FL-INTL TO: PHL PHILADELPHIA PA-WILM'T-INTL CARRIER: US USAIR CLASS: L COACH. NAME: LEAMY, JANE M. |
| 4/6/2005 | Baker DJ | $ 522.77 | 1061625 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: BAKER, DAVID JANSING. |
| 4/7/2005 | Baker DJ | $ 479.27 | 1061625 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: BAKER, DAVID JANSING. |
| 4/7/2005 | Baker DJ | $ 399.20 | 1061625 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: JFK NEW YORK NY-KENNEDY CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| 4/7/2005 | Baker DJ | $ (399.20) | 1061625 | AGENCY: NAVIGANT TRAVEL.. NAME: BAKER, DAVID JANSING. |
| 4/8/2005 | Toussi S | $ 1,116.90 | 1061625 | VENDOR: TOUSSI S; INVOICE#: ER042605A; DATE: 4/29/2005 |
| 4/24/2005 | Baker DJ | $ 1,002.03 | 1061625 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH; FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: BAKER, DAVID JANSING. |
| 4/24/2005 | Henry S | $ 1,002.03 | 1061625 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH; FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: HENRY, SALLY M. |
| 4/25/2005 | Henry S | $ 404.20 | 1061625 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: JFK NEW YORK NY-KENNEDY CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: HENRY, SALLY M. |
| 4/25/2005 | Henry S | $ (404.20) | 1061625 | AGENCY: NAVIGANT TRAVEL.. NAME: HENRY, SALLY M. |
| TOTAL | | $ 11,324.27 | | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-2**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 2/1/2005 | Baker DJ | $ 54.05 | 1057292 | VENDOR: BAKER DJ INVOICE#: ER031805 DATE: 3/18/2005 PLACE: PONTE VEDRA ROOM SERVICE; ATTENDEES: 1; NAME: D. J. (JAN) BAKER; TITLE: PARTNER; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: JACKSONVILLE, FLORIDA; DEPARTURE DATE: 02/01/05; TO: NEW YORK CITY; RETURN DATE: 02/02/05 *** |
| 3/7/2005 | Baker DJ | $ 18.00 | 1055381 | VENDOR: BAKER DJ INVOICE#: ER031805 DATE: 3/18/2005 PLACE: PLAYERS SPORTS BAR; ATTENDEES: 1; NAME: D. J. (JAN) BAKER; TITLE: PARTNER; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 03/06/05; TO: NEW YORK CITY;RETURN DATE: 03/09/05 *** |
| 3/7/2005 | Baker DJ | $ 25.83 | 1055381 | VENDOR: BAKER DJ INVOICE#: ER031805 DATE: 3/18/2005 PLACE: JULIETTE'S RESTAURANT (OMNI HO; ATTENDEES: 1; NAME: D. J. (JAN) BAKER; TITLE: PARTNER; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 03/06/05; TO: NEW YORK CITY; RETURN DATE: 03/09/05 *** |
| 3/7/2005 | Baker DJ | $ 29.45 | 1055381 | VENDOR: BAKER DJ INVOICE#: ER031805 DATE: 3/18/2005 PLACE: RIVERFRONT CAFE AT THE ADAM'S ; ATTENDEES: 1; NAME: D. J. (JAN) BAKER; TITLE: PARTNER; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 03/06/05; TO: NEW YORK CITY; RETURN DATE: 03/09/05 *** |
| 3/8/2005 | Baker DJ | $ 64.19 | 1055381 | VENDOR: BAKER DJ INVOICE#: ER031805 DATE: 3/18/2005 PLACE: ADAM'S MARK HOTEL ROOM SERVICE; ATTENDEES: 1; NAME: D. J. (JAN) BAKER; TITLE: PARTNER; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 01/26/05; TO: BURLINGTON, VT; RETURN DATE: 01/27/05 *** |
| 3/14/2005 | Levinson AR | $ 8.19 | 1055381 | VENDOR: LEVINSON AR INVOICE#: ER031805 DATE: 3/18/2005 PLACE: AMERICAN GRILL; ATTENDEES: 1; NAME: ANDREW LEVINSON; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK CITY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURNDATE: 03/16/05 *** |
| 3/14/2005 | Liou J | $ 8.00 | 1055381 | VENDOR: LIOU J INVOICE#: ER031805 DATE: 3/18/2005   PLACE: JOHN F. KENNEDY AIRPORT.; ATTENDEES: 1; NAME: JASPER LIOU; TITLE: L/A M&A G; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK CITY, NY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/14/2005 | Liou J | $ 8.00 | 1055381 | VENDOR: LIOU J INVOICE#: ER031805 DATE: 3/18/2005   PLACE: JACKSONVILLE, FL.; ATTENDEES: 1; NAME: JASPER LIOU; TITLE: L/A M&A G; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK CITY, NY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/15/2005 | Levinson AR | $ 1.88 | 1055381 | VENDOR: LEVINSON AR INVOICE#: ER031805 DATE: 3/18/2005 PLACE: SODEXHO WINN DIXIE; ATTENDEES: 1; NAME: ANDREW LEVINSON; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK CITY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/15/2005 | Levinson AR | $ 5.61 | 1055381 | VENDOR: LEVINSON AR INVOICE#: ER031805 DATE: 3/18/2005 PLACE: SODEXHO WINN DIXIE; ATTENDEES: 1; NAME: ANDREW LEVINSON; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK CITY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-2**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|-----------|-----------------|---------------|-------------|-----------|
| 3/15/2005 | Liou J | $ 8.00 | 1055381 | VENDOR: LIOU J INVOICE#: ER031805 DATE: 3/18/2005   PLACE: WINN-DIXIE CORPORATE HEADQUART; ATTENDEES: 1; NAME: JASPER LIOU; TITLE: L/A M&A G; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK CITY, NY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE,FL; RETURN DATE: 03/16/05 *** |
| 3/15/2005 | Liou J | $ 8.00 | 1055381 | VENDOR: LIOU J INVOICE#: ER031805 DATE: 3/18/2005   PLACE: WINN-DIXIE CORPORATE HEADQUART; ATTENDEES: 1; NAME: JASPER LIOU; TITLE: L/A M&A G; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK CITY, NY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE,FL; RETURN DATE: 03/16/05 *** |
| 3/15/2005 | Stuart CW | $ 6.11 | 1055381 | VENDOR: STUART CW INVOICE#: ER032505 DATE: 3/25/2005 PLACE: SODEXHO; ATTENDEES: 1; NAME: CHRISTOPHER STUART; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/15/2005 | Stuart CW | $ 14.24 | 1055381 | VENDOR: STUART CW INVOICE#: ER032505 DATE: 3/25/2005 PLACE: HILTON JACKSONVILLE RIVERFRONT; ATTENDEES: 1; NAME: CHRISTOPHER STUART; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/15/2005 | Stuart CW | $ 91.89 | 1055381 | VENDOR: STUART CW INVOICE#: ER032505 DATE: 3/25/2005 PLACE: CROSS CREEK; ATTENDEES: 4; NAME: CHRISTOPHER STUART; TITLE: ASSOCIATE; COMPANY: SKADDEN; NAME: WILLIAM MACK III; TITLE: ASSOCIATE; COMPANY: SKADDEN; NAME: ANDREW LEVINSON; TITLE: ASSOCIATE; COMPANY: SKADDEN; NAME: JASPER LIOU; TITLE: L/A M&A G; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/16/2005 | Levinson AR | $ 1.39 | 1055381 | VENDOR: LEVINSON AR INVOICE#: ER031805 DATE: 3/18/2005 PLACE: SODEXHO WINN DIXIE; ATTENDEES: 1; NAME: ANDREW LEVINSON; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK CITY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/16/2005 | Liou J | $ 8.00 | 1055381 | VENDOR: LIOU J INVOICE#: ER031805 DATE: 3/18/2005   PLACE: JACKSONVILLE, FL.; ATTENDEES: 1; NAME: JASPER LIOU; TITLE: L/A M&A G; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK CITY, NY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/16/2005 | Stuart CW | $ 14.24 | 1055381 | VENDOR: STUART CW INVOICE#: ER032505 DATE: 3/25/2005 PLACE: HILTON JACKSONVILLE; ATTENDEES: 1; NAME: CHRISTOPHER STUART; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/21/2005 | Mack III WB | $ 13.00 | 1055381 | VENDOR: MACK III WB INVOICE#: ER032505 DATE: 3/25/2005 PLACE: HILTON JACKSONVILLE; ATTENDEES: 1; NAME: WILLIAM MACK III; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 4/10/2005 | Toussi S | $ 38.38 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: FANNY'S; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-2**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 4/11/2005 | Toussi S | $ 8.69 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: SODEXHO WINN DIXIE; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/11/2005 | Toussi S | $ 16.38 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: AMERICAN GRILL; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/12/2005 | Toussi S | $ 5.90 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: SODEXHO WINN DIXIE; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/12/2005 | Toussi S | $ 14.74 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: AMERICAN GRILL; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/12/2005 | Toussi S | $ 26.57 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: ROOM SERVICE; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/12/2005 | Toussi S | $ 32.03 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: FANNY'S; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/13/2005 | Toussi S | $ 3.32 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: AMERICAN GRILL; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/14/2005 | Toussi S | $ 7.57 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: SODEXHO WINN DIXIE; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/14/2005 | Toussi S | $ 16.38 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: AMERICAN GRILL; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/14/2005 | Toussi S | $ 55.00 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: RUTH'S CHRIS STEAK HOUSE; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE:04/29/05 *** |
| 4/15/2005 | Toussi S | $ 42.30 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: ROOM SERVICE; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/17/2005 | Toussi S | $ 47.00 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: THE NOISY OYSTER; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-2**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 4/17/2005 | Toussi S | $ 56.66 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005 PLACE: FANNY'S; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/18/2005 | Toussi S | $ 12.00 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005   *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/19/2005 | Toussi S | $ 5.39 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005 PLACE: SODEXHO WINN DIXIE; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/19/2005 | Toussi S | $ 30.03 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005 PLACE: FANNY'S; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/19/2005 | Toussi S | $ 44.19 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005 PLACE: ROOM SERVICE; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/20/2005 | Toussi S | $ 16.38 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005 PLACE: AMERICAN GRILL; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/20/2005 | Toussi S | $ 16.51 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005 PLACE: FANNY'S; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/20/2005 | Toussi S | $ 23.62 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005 PLACE: AMERICAN GRILL; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/21/2005 | Toussi S | $ 13.00 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005 PLACE: FANNY'S; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| TOTAL | | $ 920.11 | | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-3**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 3/4/2005 | LaMaina KA | $ 116.39 | 1055381 | VENDOR: EAGLE LIMOUSINE; INVOICE#: 7071; DATE: 3/4/2005 - OUT OF TOWN TRAVEL - WILMINGTON - 2/24 - 3/2/05 |
| 3/11/2005 | LaMaina KA | $ 83.64 | 1055381 | VENDOR: EAGLE LIMOUSINE; INVOICE#: 7138; DATE: 3/11/2005 - OUT OF TOWN TRAVEL 3/4/05 - 3/9/05 |
| TOTAL | | $ 200.03 | | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-5**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 2/1/2005 | Baker DJ | $ 208.19 | 1057292 | VENDOR: BAKER DJ INVOICE#: ER031805 DATE: 3/18/2005   LODGING: PONTE VEDRA BEACH RESORTS; NUMBER OF NIGHTS: 1; START DATE: 02/01/05; *** RELATING TO TRIP FROM: JACKSONVILLE, FLORIDA; DEPARTURE DATE: 02/01/05; TO: NEW YORK CITY; RETURN DATE: 02/02/05*** |
| 2/15/2005 | Baker DJ | $ 583.77 | 1061625 | VENDOR: BAKER DJ INVOICE#: ER022505 DATE: 2/25/2005   ENTERPRISE CAR RENTAL; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 02/15/05; TO: JACKSONVILLE, FLORIDA; RETURN DATE: 02/20/05 *** |
| 2/15/2005 | Baker DJ | $ 1,056.93 | 1061625 | VENDOR: BAKER DJ INVOICE#: ER022505 DATE: 2/25/2005   LODGING: OMNI JACKSONVILLE HOTEL; NUMBER OF NIGHTS: 5; START DATE: 02/15/05; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 02/15/05; TO: JACKSONVILLE, FLORIDA; RETURN DATE: 02/20/05 *** |
| 2/23/2005 | Baker DJ | $ 414.55 | 1061625 | VENDOR: BAKER DJ INVOICE#: ER022505 DATE: 2/25/2005   LODGING: OMNI JACKSONVILLE HOTEL; NUMBER OF NIGHTS: 2; START DATE: 02/23/05; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 02/15/05; TO: JACKSONVILLE, FLORIDA; RETURN DATE: 02/20/05 *** |
| 3/4/2005 | Leamy JM | $ 18.00 | 1055381 | VENDOR: LEAMY JM INVOICE#: ER030405 DATE: 3/4/2005   PARKING - PHL AIRPORT; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/02/05; TO: JACKSONVILLE; RETURN DATE: 03/04/05 *** |
| 3/4/2005 | Leamy JM | $ 115.43 | 1055381 | VENDOR: LEAMY JM INVOICE#: ER030405 DATE: 3/4/2005   AVIS RENTAL CAR; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/02/05; TO: JACKSONVILLE; RETURN DATE: 03/04/05 *** |
| 3/4/2005 | Leamy JM | $ 201.14 | 1055381 | VENDOR: LEAMY JM INVOICE#: ER030405 DATE: 3/4/2005   LODGING: FAIRFIELD INN; NUMBER OF NIGHTS: 2; START DATE: 03/02/05; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/02/05; TO: JACKSONVILLE; RETURN DATE: 03/04/05 *** |
| 3/6/2005 | Baker DJ | $ 190.97 | 1055381 | VENDOR: BAKER DJ INVOICE#: ER031805 DATE: 3/18/2005   LODGING: OMNI HOTELS; NUMBER OF NIGHTS: 2; START DATE: 03/06/05; *** RELATING TO TRIP FROM: NEWARK AIRPORT; DEPARTURE DATE: 02/26/05; TO: NEW YORK CITY; RETURN DATE: 02/28/05 *** |
| 3/7/2005 | Baker DJ | $ 431.12 | 1055381 | VENDOR: BAKER DJ INVOICE#: ER031805 DATE: 3/18/2005   LODGING: ADAM'S MARK HOTEL; NUMBER OF NIGHTS: 2; START DATE: 03/07/05; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 03/06/05; TO: NEW YORK CITY; RETURN DATE: 03/09/05 *** |
| 3/7/2005 | Baker DJ | $ 182.57 | 1055381 | VENDOR: BAKER DJ INVOICE#: ER031805 DATE: 3/18/2005   HERTZ CAR RENTAL; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 03/06/05; TO: NEW YORK CITY; RETURN DATE: 03/09/05 *** |
| 3/14/2005 | Levinson AR | $ 314.14 | 1055381 | VENDOR: LEVINSON AR INVOICE#: ER031805 DATE: 3/18/2005   LODGING: HILTON JACKSONVILLE RIVERFRONT; NUMBER OF NIGHTS: 2; START DATE: 03/14/05; *** RELATING TO TRIP FROM: NEW YORK CITY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/14/2005 | Levinson AR | $ 36.00 | 1055381 | VENDOR: LEVINSON AR INVOICE#: ER031805 DATE: 3/18/2005   TAXI; *** RELATING TO TRIP FROM: NEW YORK CITY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/14/2005 | Mack III WB | $ 394.84 | 1055381 | VENDOR: MACK III WB INVOICE#: ER032505 DATE: 3/25/2005   LODGING: HILTON JACKSONVILLE RIVERFRONT; NUMBER OF NIGHTS: 2; START DATE: 03/14/05; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 03/14/05; TO: JACKSON; RETURN DATE: 03/16/05 *** |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-5**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 3/14/2005 | Stuart CW | $ 229.29 | 1055381 | VENDOR: STUART CW INVOICE#: ER032505 DATE: 3/25/2005   AVIS RENTAL CAR; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/14/2005 | Stuart CW | $ 314.14 | 1055381 | VENDOR: STUART CW INVOICE#: ER032505 DATE: 3/25/2005   LODGING: HILTON; NUMBER OF NIGHTS: 2; START DATE: 03/14/05; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 3/16/2005 | Liou J | $ 314.14 | 1055381 | VENDOR: LIOU J INVOICE#: ER031805 DATE: 3/18/2005   LODGING: JACKSONVILLE HILTON; NUMBER OF NIGHTS: 2; START DATE: 03/14/05; *** RELATING TO TRIP FROM: NEW YORK CITY, NY; DEPARTURE DATE: 03/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 03/16/05 *** |
| 4/1/2005 | Leamy JM | $ 10.70 | 1061625 | VENDOR: LEAMY JM INVOICE#: ER040805 DATE: 4/8/2005   FUEL - RENTAL CAR; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/29/05; TO: JACKSONVILLE; RETURN DATE: 04/02/05 *** |
| 4/1/2005 | Leamy JM | $ 152.80 | 1061625 | VENDOR: LEAMY JM INVOICE#: ER040805 DATE: 4/8/2005   AVIS RENTAL CAR; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/29/05; TO: JACKSONVILLE; RETURN DATE: 04/02/05 *** |
| 4/1/2005 | Leamy JM | $ 505.11 | 1061625 | VENDOR: LEAMY JM INVOICE#: ER040805 DATE: 4/8/2005   RADISSON HOTEL; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/29/05; TO: JACKSONVILLE; RETURN DATE: 04/02/05 *** |
| 4/2/2005 | Leamy JM | $ 42.00 | 1061625 | VENDOR: LEAMY JM INVOICE#: ER040805 DATE: 4/8/2005   PARKING - PHL AIRPORT; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/29/05; TO: JACKSONVILLE; RETURN DATE: 04/02/05 *** |
| 4/8/2005 | Leamy JM | $ 40.00 | 1061625 | VENDOR: LEAMY JM INVOICE#: ER041505 DATE: 4/15/2005   PARKING - PHL AIRPORT; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 04/04/05; TO: JACKSONVILLE; RETURN DATE: 04/08/05 *** |
| 4/8/2005 | Leamy JM | $ 223.37 | 1061625 | VENDOR: LEAMY JM INVOICE#: ER041505 DATE: 4/15/2005   AVIS RENTAL CAR; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 04/04/05; TO: JACKSONVILLE; RETURN DATE: 04/08/05 *** |
| 4/8/2005 | Leamy JM | $ 628.28 | 1061625 | VENDOR: LEAMY JM INVOICE#: ER041505 DATE: 4/15/2005   LODGING: RADISSON; NUMBER OF NIGHTS: 4; START DATE: 04/04/05; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 04/04/05; TO: JACKSONVILLE; RETURN DATE: 04/08/05 *** |
| 4/10/2005 | Toussi S | $ 728.85 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005   LODGING: HILTON; NUMBER OF NIGHTS: 6; START DATE: 04/10/05; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/10/2005 | Toussi S | $ 14.94 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005   HILTON - ROOM CHARGE HOTEL; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/10/2005 | Toussi S | $ 32.56 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005   FUEL - RENTAL CAR; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/14/2005 | Toussi S | $ 26.70 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005   HILTON - LAUNDRY SERVICE HOTEL; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/15/2005 | Toussi S | $ 35.00 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005   HILTON HOTEL - HOUSEKEEPING AND VALET TIPS; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-5**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 4/15/2005 | Toussi S | $ 12.00 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER042905 DATE: 4/29/2005   PARKING - JACKSONVILLE; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 04/29/05 *** |
| 4/17/2005 | Toussi S | $ 14.71 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005   HILTON HOTEL - FAX; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/17/2005 | Toussi S | $ 14.94 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005   HILTON HOTEL - ROOM CHARGE; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/18/2005 | Toussi S | $ 28.35 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005   HILTON HOTEL - LAUNDRY SERVICE; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/18/2005 | Toussi S | $ 95.76 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005   HILTON HOTEL - FAX; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/19/2005 | Toussi S | $ 16.09 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005   HILTON HOTEL - ROOM CHARGE; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/21/2005 | Toussi S | $ 33.30 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005   HILTON HOTEL - LAUNDRY SERVICE; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/22/2005 | Toussi S | $ 728.85 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005   LODGING: HILTON; NUMBER OF NIGHTS: 5; START DATE: 04/17/05; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/22/2005 | Toussi S | $ 35.00 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER050605 DATE: 5/6/2005   HILTON HOTEL - HOUSEKEEPING AND VALET TIPS; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/22/2005 | Toussi S | $ 34.00 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005   PARKING - JACKSONVILLE; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/22/2005 | Toussi S | $ 40.00 | 1061625 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005   HILTON HOTEL - PARKING; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 4/24/2005 | Baker DJ | $ 171.76 | 1061625 | VENDOR: BAKER DJ INVOICE#: ER042905 DATE: 4/29/2005   LODGING: OMNI JACKSONVILLE HOTEL; NUMBER OF NIGHTS: 1; START DATE: 02/24/05; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 04/24/05; TO: NEW YORK CITY; RETURN DATE: 04/25/05 *** |
| 4/24/2005 | Baker DJ | $ 107.22 | 1061625 | VENDOR: BAKER DJ INVOICE#: ER042905 DATE: 4/29/2005   HERTZ CAR RENTAL; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 04/24/05; TO: NEW YORK CITY; RETURN DATE: 04/25/05 *** |
| **TOTAL** | | **$ 8,777.51** | | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-6**

| TRAN DATE | NAME | DISBURSEMENT TYPE | BILLED AMOUNT | QUANTITY | PER PAGE CHARGE | BILL NUMBER |
|---|---|---|---|---|---|---|
| 2/22/2005 | Copy Center, D | In-House Reproduction | $ 1,043.50 | 10,435 | $ 0.10 | 1061625 |
| 2/25/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1057292 |
| 2/25/2005 | Copy Center, D | In-House Reproduction | $ 0.50 | 5 | $ 0.10 | 1057292 |
| 2/25/2005 | Copy Center, D | In-House Reproduction | $ 23.00 | 230 | $ 0.10 | 1057292 |
| 2/25/2005 | Copy Center, D | In-House Reproduction | $ 3,607.80 | 36,078 | $ 0.10 | 1061625 |
| 3/1/2005 | Copy Center, D | In-House Reproduction | $ 4.00 | 40 | $ 0.10 | 1055381 |
| 3/1/2005 | Copy Center, D | In-House Reproduction | $ 348.00 | 3,480 | $ 0.10 | 1055381 |
| 3/1/2005 | Copy Center, D | In-House Reproduction | $ 460.90 | 4,609 | $ 0.10 | 1055381 |
| 3/1/2005 | Copy Center, D | In-House Reproduction | $ 1,202.80 | 12,028 | $ 0.10 | 1061625 |
| 3/4/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1055381 |
| 3/4/2005 | Copy Center, D | In-House Reproduction | $ 3.30 | 33 | $ 0.10 | 1055381 |
| 3/4/2005 | Copy Center, D | In-House Reproduction | $ 11.70 | 117 | $ 0.10 | 1055381 |
| 3/4/2005 | Copy Center, D | In-House Reproduction | $ 12.00 | 120 | $ 0.10 | 1055381 |
| 3/4/2005 | Copy Center, D | In-House Reproduction | $ 46.60 | 466 | $ 0.10 | 1055381 |
| 3/4/2005 | Copy Center, D | In-House Reproduction | $ 220.40 | 2,204 | $ 0.10 | 1061625 |
| 3/4/2005 | Copy Center, D | In-House Reproduction | $ 477.70 | 4,777 | $ 0.10 | 1055381 |
| 3/4/2005 | Copy Center, D | In-House Reproduction | $ 1,009.80 | 10,098 | $ 0.10 | 1055381 |
| 3/8/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1055381 |
| 3/8/2005 | Copy Center, D | In-House Reproduction | $ 5.70 | 57 | $ 0.10 | 1055381 |
| 3/8/2005 | Copy Center, D | In-House Reproduction | $ 8.00 | 80 | $ 0.10 | 1055381 |
| 3/8/2005 | Copy Center, D | In-House Reproduction | $ 57.90 | 579 | $ 0.10 | 1061625 |
| 3/8/2005 | Copy Center, D | In-House Reproduction | $ 465.10 | 4,651 | $ 0.10 | 1055381 |
| 3/11/2005 | Copy Center, D | In-House Reproduction | $ 0.90 | 9 | $ 0.10 | 1055381 |
| 3/11/2005 | Copy Center, D | In-House Reproduction | $ 38.90 | 389 | $ 0.10 | 1055381 |
| 3/11/2005 | Copy Center, D | In-House Reproduction | $ 56.00 | 560 | $ 0.10 | 1061625 |
| 3/11/2005 | Copy Center, D | In-House Reproduction | $ 58.90 | 589 | $ 0.10 | 1055381 |
| 3/11/2005 | Copy Center, D | In-House Reproduction | $ 118.40 | 1,184 | $ 0.10 | 1055381 |
| 3/11/2005 | Copy Center, D | In-House Reproduction | $ 493.70 | 4,937 | $ 0.10 | 1055381 |
| 3/15/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1061625 |
| 3/15/2005 | Copy Center, D | In-House Reproduction | $ 0.60 | 6 | $ 0.10 | 1055381 |
| 3/15/2005 | Copy Center, D | In-House Reproduction | $ 1.30 | 13 | $ 0.10 | 1055381 |
| 3/15/2005 | Copy Center, D | In-House Reproduction | $ 3.20 | 32 | $ 0.10 | 1055381 |
| 3/15/2005 | Copy Center, D | In-House Reproduction | $ 36.50 | 365 | $ 0.10 | 1055381 |
| 3/15/2005 | Copy Center, D | In-House Reproduction | $ 40.40 | 404 | $ 0.10 | 1055381 |
| 3/15/2005 | Copy Center, D | In-House Reproduction | $ 64.70 | 647 | $ 0.10 | 1055381 |
| 3/15/2005 | Copy Center, D | In-House Reproduction | $ 77.60 | 776 | $ 0.10 | 1055381 |
| 3/15/2005 | Copy Center, D | In-House Reproduction | $ 230.70 | 2,307 | $ 0.10 | 1055381 |
| 3/15/2005 | Copy Center, D | In-House Reproduction | $ 691.50 | 6,915 | $ 0.10 | 1055381 |
| 3/18/2005 | Copy Center, D | In-House Reproduction | $ 0.60 | 6 | $ 0.10 | 1055381 |
| 3/18/2005 | Copy Center, D | In-House Reproduction | $ 1.20 | 12 | $ 0.10 | 1055381 |
| 3/18/2005 | Copy Center, D | In-House Reproduction | $ 2.90 | 29 | $ 0.10 | 1055381 |
| 3/18/2005 | Copy Center, D | In-House Reproduction | $ 4.00 | 40 | $ 0.10 | 1055381 |
| 3/18/2005 | Copy Center, D | In-House Reproduction | $ 5.00 | 50 | $ 0.10 | 1055381 |
| 3/18/2005 | Copy Center, D | In-House Reproduction | $ 16.20 | 162 | $ 0.10 | 1055381 |
| 3/18/2005 | Copy Center, D | In-House Reproduction | $ 39.80 | 398 | $ 0.10 | 1055381 |
| 3/18/2005 | Copy Center, D | In-House Reproduction | $ 135.60 | 1,356 | $ 0.10 | 1055381 |
| 3/18/2005 | Copy Center, D | In-House Reproduction | $ 638.00 | 6,380 | $ 0.10 | 1055381 |
| 3/18/2005 | Copy Center, D | In-House Reproduction | $ 1,251.80 | 12,518 | $ 0.10 | 1055381 |
| 3/22/2005 | Copy Center, D | In-House Reproduction | $ 0.20 | 2 | $ 0.10 | 1055381 |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-6**

| TRAN DATE | NAME | DISBURSEMENT TYPE | BILLED AMOUNT | QUANTITY | PER PAGE CHARGE | BILL NUMBER |
|---|---|---|---|---|---|---|
| 3/22/2005 | Copy Center, D | In-House Reproduction | $ 0.40 | 4 | $ 0.10 | 1055381 |
| 3/22/2005 | Copy Center, D | In-House Reproduction | $ 4.40 | 44 | $ 0.10 | 1055381 |
| 3/22/2005 | Copy Center, D | In-House Reproduction | $ 4.60 | 46 | $ 0.10 | 1055381 |
| 3/22/2005 | Copy Center, D | In-House Reproduction | $ 8.40 | 84 | $ 0.10 | 1055381 |
| 3/22/2005 | Copy Center, D | In-House Reproduction | $ 84.50 | 845 | $ 0.10 | 1055381 |
| 3/22/2005 | Copy Center, D | In-House Reproduction | $ 441.50 | 4,415 | $ 0.10 | 1055381 |
| 3/23/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1055381 |
| 3/25/2005 | Copy Center, D | In-House Reproduction | $ 0.20 | 2 | $ 0.10 | 1055381 |
| 3/25/2005 | Copy Center, D | In-House Reproduction | $ 0.40 | 4 | $ 0.10 | 1061625 |
| 3/25/2005 | Copy Center, D | In-House Reproduction | $ 0.90 | 9 | $ 0.10 | 1055381 |
| 3/25/2005 | Copy Center, D | In-House Reproduction | $ 0.90 | 9 | $ 0.10 | 1055381 |
| 3/25/2005 | Copy Center, D | In-House Reproduction | $ 1.00 | 10 | $ 0.10 | 1055381 |
| 3/25/2005 | Copy Center, D | In-House Reproduction | $ 2.00 | 20 | $ 0.10 | 1055381 |
| 3/25/2005 | Copy Center, D | In-House Reproduction | $ 8.00 | 80 | $ 0.10 | 1055381 |
| 3/25/2005 | Copy Center, D | In-House Reproduction | $ 16.10 | 161 | $ 0.10 | 1055381 |
| 3/25/2005 | Copy Center, D | In-House Reproduction | $ 351.70 | 3,517 | $ 0.10 | 1055381 |
| 3/25/2005 | Copy Center, D | In-House Reproduction | $ 2,278.20 | 22,782 | $ 0.10 | 1055381 |
| 3/29/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1061625 |
| 3/29/2005 | Copy Center, D | In-House Reproduction | $ 0.80 | 8 | $ 0.10 | 1055381 |
| 3/29/2005 | Copy Center, D | In-House Reproduction | $ 1.40 | 14 | $ 0.10 | 1055381 |
| 3/29/2005 | Copy Center, D | In-House Reproduction | $ 5.50 | 55 | $ 0.10 | 1055381 |
| 3/29/2005 | Copy Center, D | In-House Reproduction | $ 6.40 | 64 | $ 0.10 | 1055381 |
| 3/29/2005 | Copy Center, D | In-House Reproduction | $ 321.70 | 3,217 | $ 0.10 | 1055381 |
| 4/1/2005 | Copy Center, D | In-House Reproduction | $ 0.20 | 2 | $ 0.10 | 1061625 |
| 4/1/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1061625 |
| 4/1/2005 | Copy Center, D | In-House Reproduction | $ 1.50 | 15 | $ 0.10 | 1061625 |
| 4/1/2005 | Copy Center, D | In-House Reproduction | $ 7.00 | 70 | $ 0.10 | 1061625 |
| 4/1/2005 | Copy Center, D | In-House Reproduction | $ 13.10 | 131 | $ 0.10 | 1061625 |
| 4/5/2005 | Copy Center, D | In-House Reproduction | $ 2.00 | 20 | $ 0.10 | 1061625 |
| 4/5/2005 | Copy Center, D | In-House Reproduction | $ 4.70 | 47 | $ 0.10 | 1061625 |
| 4/5/2005 | Copy Center, D | In-House Reproduction | $ 428.70 | 4,287 | $ 0.10 | 1061625 |
| 4/8/2005 | Copy Center, D | In-House Reproduction | $ 0.70 | 7 | $ 0.10 | 1061625 |
| 4/8/2005 | Copy Center, D | In-House Reproduction | $ 6.40 | 64 | $ 0.10 | 1061625 |
| 4/8/2005 | Copy Center, D | In-House Reproduction | $ 8.50 | 85 | $ 0.10 | 1061625 |
| 4/8/2005 | Copy Center, D | In-House Reproduction | $ 20.80 | 208 | $ 0.10 | 1061625 |
| 4/8/2005 | Copy Center, D | In-House Reproduction | $ 39.50 | 395 | $ 0.10 | 1061625 |
| 4/12/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1061625 |
| 4/12/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1061625 |
| 4/12/2005 | Copy Center, D | In-House Reproduction | $ 0.20 | 2 | $ 0.10 | 1061625 |
| 4/12/2005 | Copy Center, D | In-House Reproduction | $ 3.70 | 37 | $ 0.10 | 1061625 |
| 4/12/2005 | Copy Center, D | In-House Reproduction | $ 14.20 | 142 | $ 0.10 | 1061625 |
| 4/12/2005 | Copy Center, D | In-House Reproduction | $ 91.70 | 917 | $ 0.10 | 1061625 |
| 4/12/2005 | Copy Center, D | In-House Reproduction | $ 301.10 | 3,011 | $ 0.10 | 1061625 |
| 4/15/2005 | Copy Center, D | In-House Reproduction | $ 0.20 | 2 | $ 0.10 | 1061625 |
| 4/15/2005 | Copy Center, D | In-House Reproduction | $ 2.10 | 21 | $ 0.10 | 1061625 |
| 4/15/2005 | Copy Center, D | In-House Reproduction | $ 3.40 | 34 | $ 0.10 | 1061625 |
| 4/15/2005 | Copy Center, D | In-House Reproduction | $ 5.80 | 58 | $ 0.10 | 1061625 |
| 4/15/2005 | Copy Center, D | In-House Reproduction | $ 19.20 | 192 | $ 0.10 | 1061625 |
| 4/15/2005 | Copy Center, D | In-House Reproduction | $ 30.90 | 309 | $ 0.10 | 1061625 |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit P-6**

| TRAN DATE | NAME | DISBURSEMENT TYPE | BILLED AMOUNT | QUANTITY | PER PAGE CHARGE | BILL NUMBER |
|---|---|---|---|---|---|---|
| 4/15/2005 | Copy Center, D | In-House Reproduction | $ 48.20 | 482 | $ 0.10 | 1061625 |
| 4/19/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1061625 |
| 4/19/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1061625 |
| 4/19/2005 | Copy Center, D | In-House Reproduction | $ 0.70 | 7 | $ 0.10 | 1061625 |
| 4/19/2005 | Copy Center, D | In-House Reproduction | $ 3.40 | 34 | $ 0.10 | 1061625 |
| 4/19/2005 | Copy Center, D | In-House Reproduction | $ 36.40 | 364 | $ 0.10 | 1061625 |
| 4/19/2005 | Copy Center, D | In-House Reproduction | $ 44.80 | 448 | $ 0.10 | 1061625 |
| 4/21/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1061625 |
| 4/22/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1061625 |
| 4/22/2005 | Copy Center, D | In-House Reproduction | $ 15.50 | 155 | $ 0.10 | 1061625 |
| 4/22/2005 | Copy Center, D | In-House Reproduction | $ 57.20 | 572 | $ 0.10 | 1061625 |
| 4/22/2005 | Copy Center, D | In-House Reproduction | $ 1,381.70 | 13,817 | $ 0.10 | 1061625 |
| 4/22/2005 | Copy Center, D | In-House Reproduction | $ 2,415.70 | 24,157 | $ 0.10 | 1061625 |
| 4/29/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1061625 |
| 4/29/2005 | Copy Center, D | In-House Reproduction | $ 6.80 | 68 | $ 0.10 | 1061625 |
| 4/29/2005 | Copy Center, D | In-House Reproduction | $ 63.50 | 635 | $ 0.10 | 1061625 |
| 4/29/2005 | Copy Center, D | In-House Reproduction | $ 688.60 | 6,886 | $ 0.10 | 1061625 |
| **TOTAL In-House Reproduction** | | | **$ 22,326.40** | **223,264** | | |
| 4/1/2005 | Copy Center, D | Reproduction - color | $ 6.50 | 13 | $ 0.50 | 1061625 |
| 4/5/2005 | Copy Center, D | Reproduction - color | $ 2.50 | 5 | $ 0.50 | 1061625 |
| 4/21/2005 | Copy Center, D | Reproduction - color | $ 12.50 | 25 | $ 0.50 | 1061625 |
| **TOTAL Reproduction - color** | | | **$ 21.50** | **43** | | |
| 2/24/2005 | Scott-Bonnick S | Internal Scanning | $ 13.64 | 124 | $ 0.11 | 1061625 |
| 2/24/2005 | Scott-Bonnick S | Internal Scanning | $ 83.05 | 755 | $ 0.11 | 1061625 |
| 3/1/2005 | Scott-Bonnick S | Internal Scanning | $ 90.09 | 819 | $ 0.11 | 1061625 |
| 3/2/2005 | Scott-Bonnick S | Internal Scanning | $ 33.88 | 308 | $ 0.11 | 1061625 |
| 3/2/2005 | Scott-Bonnick S | Internal Scanning | $ 82.83 | 753 | $ 0.11 | 1061625 |
| 4/1/2005 | Scott-Bonnick S | Internal Scanning | $ 294.03 | 2,673 | $ 0.11 | 1061625 |
| 4/5/2005 | Scott-Bonnick S | Internal Scanning | $ 34.21 | 311 | $ 0.11 | 1061625 |
| 4/8/2005 | Scott-Bonnick S | Internal Scanning | $ 2.97 | 27 | $ 0.11 | 1061625 |
| 4/14/2005 | Scott-Bonnick S | Internal Scanning | $ 17.60 | 160 | $ 0.11 | 1061625 |
| 4/20/2005 | Scott-Bonnick S | Internal Scanning | $ 0.44 | 4 | $ 0.11 | 1061625 |
| 4/22/2005 | Scott-Bonnick S | Internal Scanning | $ 2.42 | 22 | $ 0.11 | 1061625 |
| 4/26/2005 | Scott-Bonnick S | Internal Scanning | $ 8.91 | 81 | $ 0.11 | 1061625 |
| 4/28/2005 | Scott-Bonnick S | Internal Scanning | $ 0.66 | 6 | $ 0.11 | 1061625 |
| 3/18/2005 | Davis M | OCR Scanning | $ 410.65 | 8,213 | $ 0.05 | 1055381 |
| 4/19/2005 | Poon MY | OCR Scanning | $ 339.85 | 6,797 | $ 0.05 | 1061625 |
| 3/2/2005 | Copy Center, D | Printing out of ImageBase | $ 3.44 | 43 | $ 0.08 | 1055381 |
| 3/23/2005 | Copy Center, D | Printing out of ImageBase | $ 104.00 | 1,300 | $ 0.08 | 1055381 |
| 3/29/2005 | Copy Center, D | Printing out of ImageBase | $ 28.80 | 360 | $ 0.08 | 1055381 |
| 3/29/2005 | Copy Center, D | Printing out of ImageBase | $ 239.60 | 2,995 | $ 0.08 | 1055381 |
| 3/29/2005 | Copy Center, D | Printing out of ImageBase | $ 547.20 | 6,840 | $ 0.08 | 1055381 |
| 3/30/2005 | Copy Center, D | Printing out of ImageBase | $ 40.80 | 510 | $ 0.08 | 1055381 |
| 4/6/2005 | Copy Center, D | Printing out of ImageBase | $ 280.00 | 3,500 | $ 0.08 | 1061625 |
| **TOTAL Electronic Document Management** | | | **$ 2,659.07** | | | |
| **GRAND TOTAL** | | | **$ 25,006.97** | | | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**First Interim Response**
**Exhibit R**

| TRAN DATE | NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 2/22/2005 | Baker DJ | $ 611.34 | 1061625 | ROOM:38-132 06:00 AM - 11:00 PM; BUFFET LUNCH FOR 20 ATTENDEES $611.34;  TOTAL:$611.34 |
| 2/22/2005 | Teicher SL | $ 152.84 | 1061625 | ROOM:38-210 06:00 AM - 11:00 PM; BUFFET LUNCH FOR 5 ATTENDEES $152.84;  TOTAL:$152.84 |
| 2/23/2005 | Baker DJ | $ 122.27 | 1061625 | ROOM:38-414 08:30 AM - 05:00 PM; BUFFET LUNCH FOR 4 ATTENDEES $122.27;  TOTAL:$122.27 |
| 3/15/2005 | Liou J | $ 46.73 | 1055381 | ROOM:41-125 06:00 AM - 11:00 PM; COLD LUNCH FOR 6 ATTENDEES $46.73;  TOTAL:$46.73 |
| 3/30/2005 | Henry S | $ 122.27 | 1055381 | ROOM:38-220 08:00 AM - 03:30 PM; BUFFET LUNCH FOR 4 ATTENDEES $122.27;  TOTAL:$122.27 |
| 3/30/2005 | Henry S | $ 122.27 | 1055381 | ROOM:38-220 08:00 AM - 03:30 PM; BUFFET LUNCH FOR 4 ATTENDEES $122.27;  TOTAL:$122.27 |
| 4/1/2005 | Eichel S | $ 152.84 | 1061625 | ROOM:38-306 12:00 PM - 03:00 PM; BUFFET LUNCH FOR 5 ATTENDEES $152.84;  TOTAL:$152.84 |
| 4/11/2005 | Baker DJ | $ 397.87 | 1061625 | ROOM:38-300 09:00 AM - 04:00 PM; BUFFET LUNCH FOR 13 ATTENDEES $397.87;  TOTAL:$397.87 |
| 4/27/2005 | Baker DJ | $ 765.68 | 1061625 | ROOM:38-100/102 12:00 PM - 11:00 PM; BUFFET LUNCH FOR 25 ATTENDEES $765.68;  TOTAL:$765.68 |
| TOTAL | | $ 2,494.11 | | |

**EXHIBIT S**

Travel, Meals & Other Business Expenses

Skadden

Employee: Ronald Barusch ID: 33 Position: Partner                    Status: Final 04/06/2005

Off/Dept: Washington D.C./M&A                               Expense Report Week Ending: 04/01/2005

Expense Report #: 122999                    Currency of Report: U.S. Dollar    Prepared By: Fay Iuli

| Date | Client | Matter | Disbursement | Reimburse | Business Purpose/Details | Hrs/Day |
|------|--------|--------|--------------|-----------|--------------------------|---------|
| 03/18/05 | 0915770 Winn-Dixie | Winn-Dixi General Corporate | T-Mobile Wireless - Mobile/Co | 39.25 | Business Purpose: Calls made from cell phone between 2/19-3/18 | .00 |
| | | | | | | .00 |
| | | | | | | .00 |
| | | | | | | .00 |

2) I am a Partner/Counsel/Associate and wish to be reimbursed on a per minute basis. The total number of minutes incurred for all calls divided into the total invoiced dollar amount equals a per minute rate. I will identify those number of minutes, by client/matter number(s) multiplied by the per minute rate.

2005 APR -7 AM 6: 42

RECEIVED APR 0 8 2005

April 6, 2005 3:54 PM P- 1

 **Sprint.**

## Account Summary

www.sprintpcs.com

| Customer | Account Number | Invoice Period | Invoice Date | Page |
|---|---|---|---|---|
| RONALD C BARUSCH | | Feb. 19 - Mar. 18 | Mar. 19, 2005 | 2 of 17 |

| Summary of Individual Charges (Individual Usage Summaries begin on page 3) | | | | | | |
|---|---|---|---|---|---|---|
| Individual Information | Monthly Service Charges | Additional Usage Charges & Purchases | Other Charges | Promotions/ Credits/ Adjustments | Taxes / Surcharges & Fees | Total |
| RONALD C BARUSCH | 115.00 | 11.37 | 0.00 | -5.75 | 8.81 | 129.43 |

$129.43 \div 520$ min. $= \$.25$ /min.

See breakdown of calls on pp. 5-13.

Summary:

091970/1          9.25

RECEIVED APR 0 8 2005

 **Sprint.**

## Individual Charges

www.sprintpcs.com

| Customer | Account Number | Invoice Period | Invoice Date | Page |
|---|---|---|---|---|
| **RONALD C BARUSCH** | | Feb. 19 - Mar. 18 | Mar. 19, 2005 | 7 of 17 |

 Individual Charges for **RONALD C BARUSCH (continued)**

### Voice Call Detail

| | Date | Time | Phone Number | Call Destination | Rate/ Type | Minutes Used | Airtime Charges | LD/ Additional Charges | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 5 | 2/19 | 12:45 P M | Incoming | | *09970/i* | 1.0 | included | 0.00 | 0.00 |
| 6 | 2/19 | 1:05 P M | 301-922-5826 | Silver Spg, MD | *09970/i* | 5.0 | included | 0.00 | 0.00 |
| 7 | | | | | | | | | |
| 8 | | | | | | | | | |
| 9 | | | | | | | | | |
| 10 | | | | | | | | | |
| 11 | | | | | | | | | |
| 12 | | | | | | | | | |
| 13 | 2/20 | 10:01 A M | 301-922-5826 | Silver Spg, MD | *09970/i* | 9.0 | included | 0.00 | 0.00 |
| 14 | 2/20 | 11:25 A M | 202-371-7300 | Washington, DC | *09970/i* | 1.0 | included | 0.00 | 0.00 |
| 15 | 2/20 | 12:03 P M | Incoming | | *09970/i* | 8.0 | included | 0.00 | 0.00 |
| 16 | 2/20 | 12:52 P M | 202-371-7300 | Washington, DC | *09970/i* | 1.0 | included | 0.00 | 0.00 |
| 17 | 2/20 | 2:39 P M | Incoming | | *09970/i* | 2.0 | included | 0.00 | 0.00 |
| 18 | | | | | | | | | |
| 19 | | | | | | | | | |
| 20 | | | | | | | | | |
| 21 | | | | | | | | | |
| 22 | | | | | | | | | |
| 23 | | | | | | | | | |
| 24 | | | | | | | | | |
| 25 | | | | | | | | | |
| 26 | 2/21 | 9:33 A M | 212-735-3240 | New York, NY | *09970/i* | 2.0 | included | 0.00 | 0.00 |
| 27 | | | | | | | | | |
| 28 | | | | | | | | | |
| 29 | | | | | | | | | |
| 30 | | | | | | | | | |
| 31 | | | | | | | | | |
| 32 | | | | | | | | | |
| 33 | | | | | | | | | |
| 34 | | | | | | | | | |
| 35 | | | | | | | | | .00 | 0.00 | 0.00 |
| 36 | | | | | | | | | |
| 37 | | | | | | | | | |
| 38 | | | | | 202-371-7300 | Washington | | | | |
| 39 | 2/22 | 10:01 A M | 904-783-5427 | Jacksonvl, FL | *09970/n* | 1.0 | included | 0.00 | 0.00 |
| 40 | 2/22 | 10:02 A M | 212-735-3000 | New York, NY | *09970/i* | 1.0 | included | 0.00 | 0.00 |
| 41 | | | | | | | | | |
| 42 | | | | | | | | | |
| 43 | | | | | | | | | |
| 44 | | | | | | | | | |
| 45 | | | | | | | | | |
| 46 | | | | | | | | | |
| 47 | | | | | | | | | |
| 48 | | | | | | | | | |

**11** = PCS to PCS Calling

*09970/i    29 min. x .25 = 7.25*



## Individual Charges

| Customer | Account Number | Invoice Period | Invoice Date | Page |
|---|---|---|---|---|
| RONALD C BARUSCH | | Feb. 19 - Mar. 18 | Mar. 19, 2005 | 8 of 17 |

  Individual Charges for    **RONALD C BARUSCH** (continued)

### Voice Call Detail

| Date | Time | Phone Number | Call Destination | Rate/ Type | Minutes Used | Airtime Charges | LO/ Additional Charges | Total Charges |
|---|---|---|---|---|---|---|---|---|
| 2/24 | 7:45 AM | 202-371-7000 | Washington, DC | | 4.0 | included | 0.00 | 0.00 |
| 2/24 | 7:50 AM | 202-371-7991 | Washington, DC | | | included | 0.00 | 0.00 |
| 2/24 | 8:07 AM | 202-371-7380 | Washington, DC | | | included | 0.00 | 0.00 |

**‖** = PCS to PCS Callin

*091970 /1  - 8 min. x .25 = 2.00*

RECEIVED APR 0 5 2005

**Skadden**

**Travel, Meals & Other Business Expenses**

Employee: Thomas Matz ID: 20223 Position: Counsel

Off/Dept: New York/Corporate Restructuring

Expense Report #: 122863

Currency of Report: U.S. Dollar

Status: Final 04/11/2005

Expense Report Week Ending: 04/08/2005

Prepared By: Ingrid Karg-Ross

| Date | Client | Matter | Disbursement | Reimburse | Business Purpose/Details | Hrs/Day |
|------|--------|--------|--------------|-----------|--------------------------|---------|
| 03/31/05 | 093970 Winn-Dixie-Winn-Dixi | 40 Disbursements | 8328 Wireless - Mobile/Ce | $13.15 | Business Purpose: Cell phone calls made to and on behalf of client | .00 |

**Usage detail continued . . .**

**In Your Home Area**

O= W-Dixie

## Outside Your Home Area (Roaming)

| | Date | Time | Minutes | Origination+ | Phone number | Destination | | Usage type | Call type | Airtime charges | Long distance and other charges | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 03/03 | 10:04P | 2 | Malton /B | ON | (000)000-0086 | Voice Mail | CL | R | | $1.38 | $.00 | $1.38 |
| | | | | | | | | | | | ... | ... | |
| 3 | 03/03 | 10:10P | 1 | Etobicok/B | ON | (917)533-3973 | Incoming | CL | | | .69 | .00 | .69 |
| | | | | | | | Taxes and Surcharges | | | | .02 | .00 | |
| 5 | 03/04 | 08:54P | 2 | Toronto /B | ON | (000)000-0086 | Voice Mail | CL | R | | 1.38 | .00 | 1.40 |
| | | | | | | | Taxes and Surcharges | | | | .02 | .00 | |
| | | | | | | | Taxes and Surcharges | | | | ... | ... | |
| 7 | 03/04 | 09:31P | 1 | Toronto /B | ON | (000)000-0086 | Voice Mail | CL | R | | .69 | .00 | .71 |
| | | | | | | | Taxes and Surcharges | | | | .02 | .00 | |
| | | | | | | | Taxes and Surcharges | | | | .09 | .00 | |
| 9 | 03/05 | 09:26A | 4 | Toronto /B | ON | (917)533-3973 | Incoming | CL | | | 2.76 | .00 | 2.76 |
| 10 | 03/05 | 10:06A | 1 | Toronto /B | ON | (917)533-3973 | Incoming | CL | | | .69 | .00 | .69 |
| 11 | 03/05 | 12:51P | 2 | Toronto /B | ON | (000)000-0086 | Voice Mail | CL | R | | 1.38 | .00 | 1.38 |
| 12 | 03/05 | 12:53P | 4 | Toronto /B | ON | (000)000-0086 | Voice Mail | CL | R | | 2.76 | .00 | 2.76 |
| | | | | | | | Taxes and Surcharges | | | | ... | ... | |
| 14 | 03/05 | 05:32P | 2 | Toronto /B | ON | (917)533-3973 | Incoming | CL | | | 1.38 | .00 | 1.38 |

~'m

**Skadden**

Employee: Thomas Matz ID: 20223 Position: Counsel

Status: Final 05/05/2005

Off/Dept: New York/Corporate Restructuring

Expense Report Week Ending: 05/06/2005

Expense Report #: 129264

Currency of Report: U.S. Dollar

Prepared By: Ingrid Karg-Ross

## Travel, Meals & Other Business Expenses

| Date | Client | Matter | Disbursement | Reimburse | Business Purpose/Details | Hrs/Day |
|------|--------|--------|--------------|-----------|--------------------------|---------|
| 04/25/05 | 091970<br>Winn-Dixie-Winn-Dixi | 40<br>Disbursements | 6128<br>Wireless - Mobile/Ce | $27.00 | Business Purpose:<br>Cell phone calls made to and behalf of client | .00 |

**Employee/Partner Approval: I have reviewed all the details of this Expense Report and it is true and correct in accordance with Firm policy.**

Employee/Partner Signature (Required)          Date: 5/5/05

Reviewed By: _____  Date: _____

Reviewer Signature          Date: 5/4/05

Print Reviewer Name

Processed in Accounting By: _____

***ATTACH RECEIPTS FOR ALL EXPENSES TOTAL:  $137.80***

RECEIVED MAY 0 6 2005

May 5, 2005 4:27 PM P-2



(Sina P on mail) Winn-Dixie
Knowledgebase

Bill date      **April 25, 2005**                           Page 9 of 11
Account number     106280226
Invoice number     3116336975

**Usage detail continued . . .**

**In Your Home Area**

*Ben Pickering, Client Development*

| | Date | Time | Rate | Minutes | Origination+ | Phone number | Destination | | Usage type | Call type | Airtime charges | Long distance and other charges | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 256 | 04/20 | 07:12P | P | 2 | Home Area | (917)533-3973 | Incoming | CL | MN | | Included | .00 | .00 |
| 257 | 04/20 | 07:22P | P | 3 | Home Area | (917)533-3973 | Incoming | CL | MN | | Included | .00 | .00 |
| 258 | 04/20 | 07:43P | P | 2 | Home Area | (917)533-3973 | Incoming | CL | MN | | Included | .00 | .00 |
| 259 | 04/20 | 08:36P | P | 1 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 260 | 04/20 | 08:36P | P | 3 | Home Area | (905)984-5582 | Stctnsthld | ON | A | | Included | .00 | .00 |
| 261 | 04/20 | 10:38P | O | 1 | Home Area | (917)533-3973 | Incoming | CL | W | | Included | .00 | .00 |
| 262 | 04/21 | 10:27A | P | 3 | Home Area | (212)954-7220 | New York | NY | A | | Included | .00 | .00 |
| 263 | 04/21 | 10:41A | P | 1 | Home Area | (212)735-2040 | New York | NY | A | | Included | .00 | .00 |
| 264 | 04/21 | 10:42A | P | 3 | Home Area | (212)735-2040 | New York | NY | A | | Included | .00 | .00 |
| 265 | 04/21 | 10:44A | P | 3 | Home Area | (212)756-2207 | New York | NY | A | | Included | .00 | .00 |
| 266 | 04/21 | 10:47A | P | 3 | Home Area | (212)357-7378 | New York | NY | A | | Included | .00 | .00 |
| 267 | 04/21 | 11:09A | P | 7 | Home Area | (786)853-6289 | Miami | FL | A | | Included | .00 | .00 |
| 268 | 04/21 | 11:18A | P | 6 | Home Area | (646)522-6006 | Mobile | | MN | | Included | .00 | .00 |
| 269 | 04/21 | 11:24A | P | 4 | Home Area | (212)735-7074 | New York | NY | A | | Included | .00 | .00 |
| 270 | 04/21 | 11:46A | P | 2 | Home Area | (786)853-6289 | Miami | FL | A | | Included | .00 | .00 |
| 271 | 04/21 | 12:00P | P | 3 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 272 | 04/21 | 12:05P | P | 2 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 273 | 04/21 | 12:24P | P | 1 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 274 | 04/21 | 12:35P | P | 2 | Home Area | (786)853-6289 | Miami | FL | A | | Included | .00 | .00 |
| 275 | 04/21 | 01:03P | P | 4 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 276 | 04/21 | 01:07P | P | 8 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 277 | 04/21 | 03:01P | P | 3 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 278 | 04/21 | 03:06P | P | 6 | Home Area | (212)735-7074 | New York | NY | A | | Included | .00 | .00 |
| 279 | 04/21 | 03:11P | P | 5 | Home Area | (212)735-2040 | New York | NY | A | | Included | .00 | .00 |
| 280 | 04/21 | 03:17P | P | 2 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 281 | 04/21 | 03:18P | P | 2 | Home Area | (212)735-7074 | New York | NY | A | | Included | .00 | .00 |
| 282 | 04/21 | 03:21P | P | 1 | Home Area | (917)701-3611 | New York | NY | A | | Included | .00 | .00 |
| 283 | 04/21 | 03:22P | P | 1 | Home Area | (917)533-3973 | Incoming | CL | CA | | Included | .00 | .00 |
| 284 | 04/21 | 03:23P | P | 1 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 285 | 04/21 | 03:23P | P | 3 | Home Area | (212)735-7074 | New York | NY | A | | Included | .00 | .00 |
| 286 | 04/21 | 03:29P | P | 1 | Home Area | (212)735-2040 | New York | NY | A | | Included | .00 | .00 |
| 287 | 04/21 | 03:46P | P | 6 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 288 | 04/21 | 03:52P | P | 2 | Home Area | (646)522-6006 | Mobile | | MN | | Included | .00 | .00 |
| 289 | 04/21 | 04:15P | P | 2 | Home Area | (917)207-4684 | New York | NY | A | | Included | .00 | .00 |
| 290 | 04/21 | 05:02P | P | 2 | Home Area | (917)533-3973 | Incoming | CL | A | | Included | .00 | .00 |
| 291 | 04/21 | 05:02P | P | 1 | Home Area | (917)533-3973 | Incoming | CL | CMN | | Included | .00 | .00 |
| 292 | 04/21 | 05:04P | P | 1 | Home Area | (212)735-7025 | New York | NY | A | | Included | .00 | .00 |
| 293 | 04/21 | 05:04P | P | 2 | Home Area | (786)853-6289 | Miami | FL | A | | Included | .00 | .00 |
| 294 | 04/21 | 05:07P | P | 18 | Home Area | (212)735-7025 | New York | NY | A | | Included | .00 | .00 |
| 295 | 04/21 | 05:24P | P | 4 | Home Area | (917)701-3611 | New York | NY | A | | | 1.80 | .00 | 1.80 |
| 296 | 04/21 | 05:28P | P | 11 | Home Area | (212)735-0400 | New York | NY | A | | .05 | | |
| 297 | 04/21 | 07:09P | P | 1 | Home Area | (860)648-0403 | Manchester | CT | A | | .45 | .00 | .45 |
| 298 | 04/21 | 07:32P | P | 3 | Home Area | (917)701-3611 | New York | NY | A | | 1.35 | .00 | 1.35 |
| 299 | 04/21 | 08:21P | P | 1 | Home Area | (904)783-5000 | Jacksonvl | FL | A | | .45 | .00 | .45 |
| 300 | 04/21 | 09:27P | O | 2 | Home Area | (917)533-3973 | Incoming | CL | W | | Included | .00 | .00 |
| 301 | 04/21 | 10:12P | O | 1 | Home Area | (646)522-6006 | Mobile | | MW | | Included | .00 | .00 |
| 302 | 04/21 | 10:31P | O | 2 | Home Area | (917)533-3973 | Incoming | CL | MW | | Included | .00 | .00 |
| 303 | 04/21 | 10:36P | O | 11 | Home Area | (917)533-3973 | Incoming | CL | W | | Included | .00 | .00 |
| 304 | 04/21 | 11:20P | O | 2 | Home Area | (917)533-3973 | Incoming | CL | MW | | Included | .00 | .00 |
| 305 | 04/22 | 08:10A | P | 1 | Home Area | (212)600-1432 | NWYRCYZN02Y | | | | .45 | .00 | .45 |
| 306 | 04/22 | 08:36A | P | 4 | Home Area | (646)522-6006 | Mobile | | MN | | Included | .00 | .00 |
| 307 | 04/22 | 09:09A | P | 4 | Home Area | (917)843-4695 | New York | NY | A | | Included | .00 | .00 |

Bill date      April 25, 2005
Account number  106280226
Invoice number  3116336975

## Usage detail continued . . .

**In Your Home Area**

| | Date | Time | Rate | Minutes | Origination+ | Phone number | Destination | Usage type | Call type | Airtime charges | Long distance and other charges | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 308 | 04/22 | 09:13A | P | 1 | Home Area | (917)533-3973 | Incoming | CL | CMN | Included | .00 | .00 |
| 309 | 04/22 | 09:13A | P | 5 | Home Area | (917)843-4695 | Mobile | | MN | Included | .00 | .00 |
| 310 | 04/22 | 09:25A | P | 20 | Home Area | (917)701-3611 | New York | NY | | 9.00 | .00 | 9.00 |
| 311 | 04/22 | 09:48A | P | 4 | Home Area | (212)735-2556 | New York | NY | | 1.80 | .00 | 1.80 |
| 312 | 04/22 | 09:51A | P | 1 | Home Area | (917)533-3973 | Incoming | CL | CMN | Included | .00 | .00 |
| 313 | 04/22 | 10:26A | P | 5 | Home Area | (917)533-3973 | Incoming | CL | | 2.25 | .00 | 2.25 |
| 314 | 04/22 | 10:51A | P | 6 | Home Area | (917)533-3973 | Incoming | CL | | 2.70 | .00 | 2.70 |
| 315 | 04/22 | 05:57P | P | 5 | Home Area | (212)735-2040 | New York | NY | | 2.25 | .00 | 2.25 |
| 316 | 04/22 | 06:04P | P | 3 | Home Area | (917)701-3611 | New York | NY | | 1.35 | .00 | 1.35 |
| 317 | 04/22 | 06:10P | P | 2 | Home Area | (917)533-3973 | Incoming | CL | | .90 | .00 | .90 |
| 318 | 04/23 | 02:26P | O | 2 | Home Area | (000)000-0086 | Voice Mail | CL | RW | Included | .00 | .00 |
| 319 | 04/23 | 04:29P | O | 4 | Home Area | (917)207-7582 | New York | NY | W | Included | .00 | .00 |
| 320 | 04/23 | 04:33P | O | 2 | Home Area | (646)522-6006 | Mobile | | MW | Included | .00 | .00 |
| 321 | 04/23 | 04:35P | O | 1 | Home Area | (212)735-2040 | New York | NY | W | Included | .00 | .00 |
| 322 | 04/23 | 04:35P | O | 2 | Home Area | (646)246-7872 | New York | NY | W | Included | .00 | .00 |
| 323 | 04/23 | 05:00P | O | 14 | Home Area | (917)533-3973 | Incoming | CL | W | Included | .00 | .00 |
| 324 | 04/24 | 11:34A | O | 2 | Home Area | (000)000-0086 | Voice Mail | CL | RW | Included | .00 | .00 |
| 325 | 04/24 | 12:26P | O | 2 | Home Area | (646)246-7872 | New York | NY | W | Included | .00 | .00 |
| 326 | 04/24 | 02:15P | O | 8 | Home Area | (905)632-5752 | Burlington | ON | W | Included | .00 | .00 |
| 327 | 04/24 | 03:02P | O | 1 | Home Area | (646)522-6006 | Mobile | | MW | Included | .00 | .00 |
| 328 | 04/24 | 03:03P | O | 2 | Home Area | (786)853-6289 | Miami | FL | W | Included | .00 | .00 |
| 329 | 04/24 | 03:37P | O | 5 | Home Area | (905)632-5752 | Burlington | ON | W | Included | .00 | .00 |
| 330 | 04/24 | 03:42P | O | 16 | Home Area | (917)533-3973 | Incoming | CL | CW | Included | .00 | .00 |
| 331 | 04/24 | 03:57P | O | 1 | Home Area | (917)533-3973 | Incoming | CL | CW | Included | .00 | .00 |
| 332 | 04/24 | 04:48P | O | 2 | Home Area | (917)533-3973 | Incoming | CL | W | Included | .00 | .00 |
| 333 | 04/24 | 04:51P | O | 9 | Home Area | (519)745-3899 | Kitchewtrl | ON | W | Included | .00 | .00 |
| 334 | 04/24 | 05:18P | O | 1 | Home Area | (917)533-3973 | Incoming | CL | W | Included | .00 | .00 |
| 335 | 04/25 | 03:04P | P | 1 | Home Area | (000)000-0086 | Voice Mail | CL | R | .45 | .00 | .45 |
| 336 | 04/25 | 03:09P | P | 1 | Home Area | (000)000-0086 | Voice Mail | CL | R | .45 | .00 | .45 |
| 337 | 04/25 | 04:00P | P | 1 | Home Area | (917)533-3973 | Incoming | CL | | .45 | .00 | .45 |
| 338 | 04/25 | 04:18P | P | 2 | Home Area | (917)533-3973 | Incoming | CL | | .90 | .00 | .90 |
| 339 | 04/25 | 08:15P | P | 13 | Home Area | (905)430-0504 | Whitby | ON | | 5.85 | .00 | 5.85 |
| 340 | 04/25 | 08:28P | P | 2 | Home Area | (786)853-6289 | Miami | FL | | .90 | .00 | .90 |
| 341 | 04/25 | 08:58P | P | 2 | Home Area | (917)533-3973 | Incoming | CL | | .90 | .00 | .90 |
| 342 | 04/25 | 11:30P | O | 8 | Home Area | (646)522-6006 | Mobile | | MW | Included | .00 | .00 |

+Designates the location, city and state, of the cell tower or switching center which processed the call.

| Legends: | | | |
|---|---|---|---|
| **Rate Period** | O = Off-Peak | P = Peak | * = Span Rate |
| **Usage Type** | A = Price Plan Allowance | M = IN-Calling | R = Voice Mail Retrieval |
| | C = Call Waiting | N = IN-Calling Allowance | W = Wknd/Nght Feature Mins |

## Verizon Wireless surcharges

| | |
|---|---|
| Fed Universal Service Charge | $1.68 |
| Regulatory Charge | .05 |
| Subtotal | 1.73 |
| **Total Verizon Wireless surcharges** | **$1.73** |

**APPENDIX 1**

<u>M E M O R A N D U M</u>

TO:        Stuart, Maue, Mitchell & James, Ltd.

FROM:    Skadden, Arps, Slate, Meagher & Flom LLP

RE:    Winn-Dixie Bankruptcy Cases and Compensation for
Preparation, Filing and Defending Retention and Fee
<u>Applications and Bankruptcy Rule 2014 Investigations</u>

## Questions Presented

1. Can a bankruptcy court award a debtor's attorney its reasonable fees for preparing, filing and defending its fee application?

2. Can a bankruptcy court award a debtor's attorney its reasonable fees for preparing, filing, performing ongoing investigations associated with and defending its retention application?

## Brief Answers

1. Yes. The Bankruptcy Code authorizes bankruptcy courts to award a debtor's attorney its reasonable fees for preparing, filing and defending its fee application.

2. Yes. The Bankruptcy Code and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorize courts to award a debtor's attorney its reasonable fees for preparing, filing, performing ongoing investigations associated with and defending its retention application.

## Compensation for Preparing, Filing, and Defending Fee Applications

Bankruptcy Code section 330(a)(6) specifically provides that a court may award compensation to a debtor's properly retained attorney for the preparation of a fee application after notice and a hearing. The court should award compensation based on the level and skill reasonably required to complete the fee application. Section 330(a)(6) codified an extensive body of case law holding that it was inequitable to require professionals to file fee applications without awarding the professional reasonable compensation for the task. In re Nucorp Energy, Inc., 764 F.2d 655, 659 (9th Cir. 1985) (allowing compensation for time spent preparing fee applications because it is "fundamentally inequitable to impose substantial

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

requirements on bankruptcy counsel as prerequisites to their obtaining compensation while simultaneously denying compensation for the efforts necessary to comply with those requirements"); In re Braswell Motor Freight Lines, 630 F.2d 348, 351 (5th Cir. 1980) ("It was an abuse of discretion to deny a reasonable fee for preparation of the fee application.").

Pursuant to section 330(a)(3)(C), a court may compensate attorneys for necessary case administration services. Arguably, by enacting the more specific section 330(a)(6), Congress recognized that fee applications by their very nature were necessary to the administration of the case and removed fee applications from the section 330(a)(3) rubric. Nevertheless, it is clear from case law that fee applications are necessary to case administration and the court may award reasonable compensation for preparation of the fee application.

In addition, due to the public nature of bankruptcy fee applications, attorneys must carefully review time records to ensure that confidential information and other sensitive information is not publicized. Therefore, it takes a significant amount of time and skill to prepare a fee application and Skadden, Arps, Slate, Meagher and Flom LLP ("Skadden, Arps") prepares its fee applications with a great deal of professionalism.

As indicated above, the bankruptcy court may award compensation for fee applications only after notice and a hearing. Bankruptcy Code section 102(1) defines "after notice and a hearing" to include contested matters before the bankruptcy court. Since Congress contemplated awarding reasonable compensation for fee applications only after parties in interest and the United States Trustee receive notice of the application and have an opportunity to object, it is only logical to conclude that professionals can receive compensation for filing and mandated defenses of fee applications.

Since bankruptcy courts may award reasonable compensation for the preparation of a fee application only after notice and a hearing, Skadden Arps may receive compensation for preparing, filing and defending its fee applications.

2

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

## **Compensation for Preparing, Filing and Defending Retention Applications**

Under Bankruptcy Code section 327, a court may authorize a debtor to employ an attorney so long as the attorney is "disinterested" and does not "hold or represent an interest adverse to the estate." Furthermore, under Bankruptcy Rule 2014, an attorney's application for employment under section 327 must set forth and explain all of the attorney's "previous connections with a creditor, any party in interest, . . . their accountants" and any person employed by the United States trustee. Because parties in interest and creditors change throughout the course of a case, attorneys must periodically review their records to ensure no improper relationship inadvertently arises. Finally, after internally verifying that the Bankruptcy Code permits their retention, attorneys must prepare a report of any relationships and file these reports with the bankruptcy court. Undoubtedly, these section 327 and Bankruptcy Rule 2014 investigations are more exhaustive and time consuming than any conflicts check that ethical rules require outside of bankruptcy. [1]

As indicated above, Bankruptcy Code section 330(a)(3) states that a court may award professionals compensation for necessary case administration services. The retention of professionals, such as attorneys, is an essential and necessary part of case administration. Moreover, the Office of the United States Trustee's fee guidelines for fee applications indicate that professionals may receive compensation for preparing retention applications. See 11 U.S.C. § 330 (28 C.F.R. Pt. 58, App. A).

Similarly, because Bankruptcy Rule 2014 requires attorneys to review and disclose initially and periodically their relationships with creditors and other parties to remain employed by a debtor, compensation for these investigations is also appropriate. See In re Sterling Chemicals Holdings, Inc., 293 B.R. 701, 704 (Bankr. S.D. Tex. 2003) (court held that it will "allow compensation for all reasonable and necessary efforts to comply with the disclosure requirements of Fed. R. Bankr. P. 2014(a)").

In addition, failure to comply strictly with Bankruptcy Rule 2014 may result in severe consequences to the estate, such as disqualification of the professional. Disqualification could have a sever impact on a debtor because of the delay and disruption of having to obtain and integrate new professionals. Therefore, it is in the estate's best interest for its professionals to review carefully their records to ensure that any proposed and continued employment is appropriate under the Bankruptcy Code and Bankruptcy Rules.

---

[1]    See, e.g., American Bar Association Model Rules of Professional Conduct, Model Rule 1.7(a) (an attorney "shall not represent a client if the representation of that client will be directly adverse to another client unless the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and each client consents after consultation") (internal subsection references omitted).

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

        Finally, as noted above, bankruptcy courts may award compensation for professionals only after notice and a hearing. Because Congress requires professionals to provide notice and a hearing before receiving compensation for its retention application, it logically follows that professionals should receive reasonable compensation for filing and defending their retention application.

## Conclusion

        In conclusion, the Bankruptcy Code and Bankruptcy Rules required Skadden, Arps to prepare a retention application and to perform a diligent and time consuming search of its records for any connections it may have to the debtors, creditors and other parties in interest. Furthermore, Skadden, Arps had to update these searches during the cases so that it could continue to provide necessary services to the estate. Therefore, a bankruptcy court should award Skadden, Arps its reasonable fees for preparing, filing and defending its retention application and Bankruptcy Rule 2014 investigation, as applicable.