## LEASE

THIS IS A LEASE dated _June 6_ , 1984, by and between HCMAC, a Mississippi general partnership (herein called "Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation (herein called "Tenant").

1. **LEASE.** Landlord, for and in consideration of Ten and No/100 Dollars ($10.00) cash in hand paid by Tenant, and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, and in consideration of the covenants, conditions and agreements herein contained on the part of Tenant to be paid, kept and performed, does hereby lease and demise to Tenant, and Tenant does hereby take and lease from Landlord, that certain parcel of land situated at the northeast corner of Old Canton Road and Northtown Drive in the City of Jackson, County of Hinds, State of Mississippi being more particularly described in EXHIBIT A attached hereto and made a part hereof, together with all easements, rights, privileges and appurtenances thereto, and all of Landlord's buildings, improvements, equipment and other property now or hereafter located thereon (herein, with the land, collectively called "Premises"), all of which are shown on the plot plan attached hereto as EXHIBIT B and made a part hereof, with the Premises being outlined in red thereon.

2. **TERM.** The term of this Lease shall commence on the date hereof and shall end on the last day of the month following the twenty-fifth (25th) anniversary of such commencement date.

3. **RENEWAL OPTIONS.** Tenant shall be entitled to four (4) successive renewals hereof, each for a term of five (5) years, upon the same terms and conditions as herein set forth, except as to term and number of renewals. Unless Tenant shall notify Landlord not less than ninety (90) days prior to the expiration of the initial Term, or any renewal thereof, of its intention to terminate this Lease, it shall be deemed to have exercised its option to renew this Lease for the next ensuing term and shall not be required to give any further notice of its intention to avail itself of such renewal term. In the event Tenant should give notice of its intention not to exercise its right to renew this Lease, all succeeding renewals shall thereupon terminate.

4. **RENT.** Tenant shall pay as rent for the Premises:
   (a) During the initial term of this Lease, the sum of Twenty Three Thousand Seven Hundred Forty Five and 58/100 Dollars ($23,745.58) per month; and
   (b) During each renewal option period, the sum of Twenty Three Thousand Seven Hundred Forty Five and 58/100 Dollars ($23,745.58) per month plus one-twelfth (1/12th) of seventy five percent (75%) of the average percentage payment made by Tenant pursuant to paragraph 5 hereof during the sixteenth (16th) through the twenty fifth (25th) lease years.
   Each monthly installment of rent shall be payable in advance on the first day of the month. Rent for any period less than a calendar month shall be prorated.

5. **PERCENTAGE PAYMENT** Tenant agrees to make as an additional payment to Landlord a sum of money computed and payable as follows: within sixty (60) days of the end of each lease year, and also within sixty (60) days of the termination of this Lease, Tenant agrees to deliver to the Landlord a full, true and correct statement by one of its officers, showing the gross sales (as herein defined) made in or from the Premises during the preceding lease year. Tenant shall pay to Landlord, at the time such statement is delivered, an amount, if any, by which one percent (1%) of gross sales made by Tenant during the preceding lease year exceeds the total of the annual rent and payments made by Tenant for real estate ad valorem taxes and assessments and fire and extended coverage insurance pursuant to the terms of this Lease during such period.
   The term "gross sales" as used herein, shall mean the total amount of all sales made in or from the Premises after deducting therefrom: rebates, refunds, cash discounts, and allowances to customers; sales and excise taxes imposed by any governmental authority; sales of prescription drugs and motor vehicle fuels; cost of trading stamps; receipts from sales of lottery tickets, money orders, postal services, U. S. Postage Stamps, insurance, or vending machines or similar receipts, income or sales. The term "lease year" shall mean a period of twelve (12) successive calendar months. The first lease year shall begin on the commencement date of this Lease and shall end on the last day of the month following the first (1st) anniversary of the commencement date.
   In the event the Premises are ever occupied under a month-to-month tenancy, the percentage payment hereunder shall either be calculated on an annual basis, if the Premises are occupied for a full year, or if not occupied for a full year, shall be calculated on the basis of the sales made in or from the Premises during the proportionate part of the year in which rent is paid for the Premises by Tenant. Payment in such case shall be made within sixty (60) days after the end of each year of such tenancy or other earlier termination of such tenancy.
   Nothing herein contained shall be construed to indicate that percentage payments are rentals and Tenant shall at no time be liable for any percentage payments except those specified herein resulting from actual sales (as herein described) by Tenant.

6. **USE OF PREMISES.** Tenant shall have the right, at Tenant's expense: to use the Premises for any lawful purpose; to construct and install on the Premises any buildings, improvements, fixtures and equipment, including advertising signs and billboards, that Tenant may desire; and to make any alterations that Tenant may desire to the Premises and buildings, improvements, fixtures and equipment at any time located thereon, and Landlord hereby consents thereto. Major structural changes to the Premises shall be made only with Landlord's written consent, which consent shall not be unreasonably withheld. Tenant shall be under no obligation to restore or remove any such alterations or additions at the expiration hereof.

7. **TENANT'S FIXTURES.** All trade fixtures and equipment, signs and accessories installed or located upon the Premises by Tenant, regardless of how same are so affixed, shall remain the property of Tenant, may be removed from the Premises by Tenant at any time, and shall never become part of the Realty.

8. **MAINTENANCE-REPAIRS.** Tenant shall, during the term of this Lease, and any renewal thereof, at Tenant's sole cost and expense, keep the Premises in good order and condition and shall make or cause to be made repairs, alterations and/or replacements thereof, structural and non-structural, reasonable wear and tear excepted, which Tenant considers appropriate. Landlord shall have no responsibility whatsoever with respect to such maintenance and repair, it ~~being intended that Tenant shall have full responsibility~~ therefor.

EXHIBIT "B"

9.  **INSURANCE.**  Tenant shall during the term of this Lease and any renewal thereof, at Tenant's sole cost and expense, carry and maintain:

(a)  Fire and extended coverage insurance covering the Premises in an amount equal to at least eighty percent (80%) of the insurable value thereof; and

(b)  Public liability and property damage insurance covering the Premises with limits of not less than $300,000/$300,000/$100,000 for a single accident, occurrence, and property damage, respectively.

All such insurance shall name Landlord as an additional insured.  Blanket policies maintained by Tenant for not less than the amounts set forth above shall be sufficient to comply with the provisions hereof.

10.  **DAMAGE-DESTRUCTION.**  In the event the Premises shall be damaged or destroyed, in whole or in part, by fire or other casualty, Tenant shall promptly restore the Premises to substantially the same condition as they were immediately prior to such damage or destruction and, until restored, there shall be an abatement or a proportionate reduction of the rent, and all proceeds of insurance, required to be carried and maintained by Tenant hereunder, including any amounts paid to Landlord for its interest therein, shall be applied to such restoration, provided that, during the last two (2) years of the initial term, and during any renewal term, said proceeds may, at the option of Tenant, in lieu of restoring the Premises, be applied as follows:

(a)  To the satisfaction in full of any first mortgage or deed of trust placed on the demised premises; and

(b)  To Landlord.

11.  **CONDEMNATION.**  In the event that, during the term of this Lease or any renewal thereof, the entire Premises, is taken by any governmental or quasi-governmental authority by exercise of the power of eminent domain, Tenant may terminate this Lease by reason of such taking at the time possession is surrendered to such authority.  In the event that only such portion of the Premises is acquired by such authority by the exercise of such power as will leave the remaining Premises, after alterations and repairs, in a condition suitable for use by Tenant in its business, Landlord agrees to make promptly, at Landlord's expense, all necessary alterations and repairs which shall be required, because of such partial acquisition by eminent domain, to restore the Premises to proper tenantable condition.  Until the Premises are restored to proper tenantable condition, rent shall abate.  Thereafter the rent shall be reduced in proportion to the area of the Premises lost.  For the purposes of this paragraph, acquisition of all or part of the Premises by governmental or quasi-governmental authority by means of voluntary negotiations or contract shall be deemed to be acquisition by exercise of the power of eminent domain.  If any street or right of way adjoining the Premises is obstructed or blocked for repairs, reconstruction or otherwise, to the extent the operation of Tenant's business is adversely affected, a proportionate reduction of rent shall be made.  If customer access to Tenant's store is blocked, rent shall abate.

12.  **RESTRICTIVE COVENANT.**  Landlord covenants and agrees, from and after the date hereof and so long as this Lease shall be in effect, not to lease, rent, occupy, or suffer or permit to be occupied, any other premises owned or controlled, directly or indirectly, either by Landlord, its successors, heirs, or assigns, or Landlord's principal owners, partners, stockholders, directors, or officers, or their assignees (herein called "Owners"), which are within one (1) mile of the Premises for the purpose of conducting therein, or for use as, a food store or a food department, or for the storage or sale for off-premises consumption of groceries, meats, produce, dairy products, bakery products, or any of them; and further, that if Landlord or Owners own any land, or hereinafter during the term of this Lease, Landlord or Owners acquire any land within such distance of the Premises, neither will convey the same without imposing thereon a restriction to secure compliance with the terms of this Lease; provided, however, that if the initial first Mortgagee shall become the owner of the Premises, this paragraph shall not be applicable to any property, other than the Premises, which such Mortgagee may then or thereafter own.  If Tenant shall have received notice of assignment of its Lease to such Mortgagee, Tenant shall notify both Landlord and Mortgagee in writing of any current violation hereof, and shall allow within sixty (60) days after the date of such notice for rectification of such violation prior to exercising other rights provided hereunder.  This covenant shall run with the land.  Landlord acknowledges that in the event of any breach hereof Tenant's remedies at law would be inadequate and therefore, in such event, Tenant shall be entitled to cancel this Lease or to relief by injunction, or otherwise, at Tenant's option, and Tenant's remedies shall be cumulative rather than exclusive.

13.  **LANDLORD'S WARRANTIES.**  Landlord covenants that Landlord has or will acquire good and marketable fee simple title to the Premises and the right to make this Lease for the term aforesaid and upon the conditions herein set forth, and that Landlord hereby puts Tenant into complete and exclusive possession of the Premises, free from all orders, restrictions and notices of any public or quasi-public authority, and that if Tenant shall pay the rental and perform all of the covenants and provisions of this Lease to be performed by Tenant, Tenant shall, during the term demised, freely, peaceably and quietly occupy and enjoy the full possession of the Premises, and the tenements, hereditaments and appurtenances thereto belonging and the rights and privileges granted without molestation or hindrance, lawful or otherwise, and if at any time during the term demised the title of the Landlord shall fail or for any reason it shall appear that Landlord is unable to make this Lease for the term or on the conditions set forth, Tenant shall have the option, at Landlord's expense, to correct any default or cancel this Lease.

14.  **DEFAULT BY LANDLORD.**  Should Landlord default in the performance of any of Landlord's obligations under this Lease, and such default continued to exist for more than sixty (60) days after notice of such default is given by Tenant to Landlord, Tenant, in addition to any and all other remedies herein provided, shall be entitled to pursue any and all remedies afforded it by law or in equity, including, but not limited to, the right to have this Lease specifically enforced.  In the event of such default, Landlord shall be liable for all attorney's fees and disbursements (including court costs and/or other expenses of legal proceedings) which Tenant may incur or pay out by reason of such default.

15.  **DEFAULT BY TENANT.**  Should Tenant default in the payment of rent and such default continues to exist for more than fifteen (15) days after notice of such default is given by Landlord to Tenant, or should Tenant default in the performance of any of Tenant's other obligations under this Lease, and such default continues to exist for more than sixty (60) days after notice of such default is given by Landlord to Tenant, Landlord, in addition to any and all remedies herein provided, shall be entitled to pursue any and all remedies afforded it by law or in equity, including, but not limited to, the right to enter upon and take possession of the Premises and/or terminate this Lease; provided, however, that:

(a)  If such default (other than the payment of rent) cannot be cured within such sixty (60) day period, Tenant shall be entitled to as long a period of time to cure such default as may be required by Tenant in the exercise of due diligence to cure such default, provided Tenant shall have commenced the curing of such default within said sixty (60) day period; and

(b)  Landlord may not enter upon and take possession of said Premises nor terminate this Lease nor exercise any other remedy provided herein or by law unless Landlord first gives the holder of any leasehold mortgage on the Premises notice of Tenant's default and an equivalent period of time to cure or begin to cure such default.  In the event of such default, Tenant shall be liable for all attorney's fees and disbursements (including court costs and/or other expenses of legal proceedings) which Landlord may incur or pay out by reason of such default.

2

16. **SURRENDER.** At the expiration or any prior termination of the initial term of this Lease, or any renewal thereof, Tenant will surrender possession of the Premises to Landlord, together with all buildings and improvements thereon, subject, however, to Tenant's rights under paragraph 6 hereof. Failure by Tenant to surrender the Premises and any holding over by Tenant shall not operate, except by express mutual agreement between the parties hereto, to extend or renew this Lease, and in the absence of such agreement, either party may thereafter terminate such occupancy at the end of any calendar month by first giving to the other party at least thirty (30) days notice of the intention to so terminate. Surrender of the Premises by Tenant shall likewise include surrender of the Premises by any subtenant(s) holding over through Tenant.

17. **PURCHASE REFUSAL.** If at any time during the term of this Lease or any renewal thereof, or any tenancy thereafter, Landlord receives from a ready, willing and able purchaser (other than a member of Landlord's immediate family or a corporation whose stock is wholly owned by Landlord and/or members of such family) an acceptable bona fide offer to purchase, or makes a bona fide offer to sell to such purchaser, the Premises; Landlord shall give Tenant notice, specifying the name and address of the purchaser and the price and terms of the offer, accompanied by Landlord's affidavit that the proposed sale is in good faith. Tenant shall thereupon have the prior option to purchase the Premises, at the price and on the terms of the offer which option Tenant may exercise by giving Landlord notice within thirty (30) days after Tenant's receipt of Landlord's notice of the offer. Tenant's failure, at any time, to exercise its option hereunder shall not affect this Lease or the continuance of Tenant's rights and options under this paragraph. Any sale of the Premises shall be subject to the terms of this Lease.

18. **NET LEASE.** It is understood and agreed this is a net lease; that Tenant shall, during the term hereof, pay all costs of any kind and description levied against the Premises or the uses Tenant makes of it, including, without limitation, all real estate, personal property and other taxes and assessments, utility bills and governmental charges; provided, however, Tenant shall not be required to pay any inheritance, estate, succession or transfer taxes that may be payable by reason of the devolution by descent or testamentary provisions of the Landlord's estate in the Premises, and Tenant shall not be required to pay any income, gift or capital levy or excess profits tax that may be payable by Landlord. Landlord agrees to participate with Tenant in seeking adjustments in real estate tax increases during the term of this Lease or any renewal thereof. Real estate taxes, whether or not then due or payable, shall be prorated at both the commencement and ending dates of the term hereof. At the close of each tax year, Tenant agrees to furnish Landlord a paid receipt reflecting the payment of all real estate taxes and assessments, or other appropriate evidence of payment.

19. **ASSIGNMENT-SUBLEASING.** Tenant may assign this Lease, in whole or in part, and/or may sublease, in whole or in part, the Premises, without Landlord's consent, but in the event of such assignment and/or subleasing, Tenant will still remain liable to Landlord for the performance of all of the terms and conditions of this Lease.

20. **TENANT'S CERTIFICATION.** Tenant agrees, at any time and from time to time, upon not less than fifteen (15) days prior notice by Landlord, to execute, acknowledge and deliver, without charge, to Landlord, or to any person designated by Landlord, a statement in writing certifying that this Lease is unmodified (or, if there have been modifications, identifying the same by the date thereof and specifying the nature thereof), that no notice of default has been served on Landlord (or if Tenant has served such notice, that the same has been revoked, if such be the case), that Tenant has no claims, defenses or offsets against Landlord hereunder (or, if Tenant has any such claims, defenses or offsets specifying the same), the date to which any rentals or other amounts payable by Tenant hereunder have been paid by Tenant, and the current addresses to which notices hereunder should be sent.

21. **FORCE MAJEURE.** Anything in this Lease to the contrary notwithstanding, neither Landlord nor Tenant shall be deemed in default with respect to the performance of any of the terms, conditions or covenants of this Lease to be performed by either of them if such failure or performance shall be due to any strike, labor dispute, picketing, inability to obtain necessary materials, Act of God, or due to any other similar cause whatever beyond the control of either party, and the time for performing by Landlord and/or Tenant shall be extended by the period of delay resulting from or due to any of said causes.

22. **RECORDING.** A Memorandum of Lease, for recording only, shall be executed simultaneously with this Lease and shall be recorded prior to the recording of any mortgage, deed of trust, lease or other lien or encumbrance against the Premises so that said mortgage, deed of trust, lease or other lien or encumbrance shall be subject and subordinate to this Lease. Landlord and Tenant agree that only the Memorandum of Lease shall be recorded.

23. **SUBORDINATION.** Tenant agrees that this Lease may be made subject and subordinate to the lien of any first mortgage or deed of trust that may be placed on the demised premises by Landlord, provided, however, as a condition to such subordination, Landlord shall obtain from any such mortgagee or trustee a subordination, non-disturbance and attornment agreement in a form acceptable to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and that this Lease shall not be affected by any default under any such mortgage or deed of trust, and that in the event of foreclosure or any enforcement of any such mortgage or deed of trust, the rights of Tenant hereunder shall expressly survive, and this Lease shall in all respects continue in full force and effect.

24. **NOTICES.** All notices required under this Lease shall be in writing and shall be deemed properly served if delivered personally, or sent certified mail, return receipt requested, to Landlord at:

453 North Mill Street
P. O. Box 3409
Jackson, MS  39207

or to Tenant at:

453 North Mill Street
P. O. Box 3409
Jackson, MS 39207

or to any subsequent address which either may designate by notice to the other for such purpose. Date of service of any notice shall be the date of delivery thereof to the intended party.

25. **NO PARTNERSHIP.** Landlord shall not be construed or held to be a partner or associate of Tenant in the conduct of Tenant's business, it being expressly understood and agreed that the relationship between the parties hereto is, and shall at all time remain during the term of this Lease, that of Landlord and Tenant.

26.  **GENERAL PROVISIONS.**  Time is of the essence of this Lease, but no delay or failure of either party to exercise any right hereunder or to insist upon strict compliance with the terms and provisions hereof shall constitute a waiver of any right hereunder or a waiver of the right thereafter to insist upon strict compliance with the terms and provisions hereof.

The headings in this Lease are for convenience only and are not part of this Lease and do not in any way limit or amplify the terms and provisions hereof.

This is a Mississippi contract and is to be construed in accordance with, and governed by, the laws of the State of Mississippi.

Personal pronouns shall include male and female, singular and plural, corporation, partnership or individual, as may fit particular parties and the context.

27.  **ENTIRETY-EXECUTION-SUCCESSION.**  This Lease merges and supersedes all prior representations and agreement, and constitutes the entire contract between Landlord and Tenant concerning the leasing of the Premises and the consideration therefor.  Neither this Lease nor any agreement amending, supplementing or terminating this Lease shall be binding on Tenant unless and until it is signed in Tenant's behalf by a representative duly authorized by its Board of Directors.  This Lease and all options herein shall bind and inure to the benefit of Landlord's heirs, administrators, executors, successors and assigns and Tenant's successors and assigns.

EXECUTED as of the date first herein specified.


LANDLORD:

HOMAC

By: _____
        W. B. McCarty, Jr., Managing Partner

By: _____
        W. H. Holman, Jr., Managing Partner



TENANT:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _____
        W. H. Holman, Jr., President

By: _____
        Roger P. Friou, Secretary

4

## EXHIBIT A

A certain parcel of land being a part of Lot 2, Northtown Village, according to the map or plat thereof, on file and of record in the office of the Chancery Clerk of Hinds County at Jackson, Mississippi in Plat Book 29 at Page 33; said parcel further being situated in the South 1/2 of Section 5, T6N-R2E, Hinds County, Mississippi, containing 215,798.83 square feet or 4.9541 acres, more or less and being more particularly described as follows:

BEGINNING at an iron pin marking the Southeast corner of Lot 7 of the aforesaid Northtown Village, said point also being on the North right-of-way line of Northtown Drive (as now laid out and improved, April, 1984); run thence north 30 degrees 04 minutes East along the East boundary of Lots 7, 6 and 5 of said Northtown Village for a distance of 518.00 feet to the Northeast corner of said Lot 5; run thence South 59 degrees 56 minutes East for a distance of 450.0 feet to an iron pin; run thence South 30 degrees 04 minutes West and parallel to said East boundary of Lots 5, 6 and 7 for a distance of 380.16 feet to an iron pin on the North right-of-way line of Northtown Drive; run thence North 89 degrees 44 minutes 44 seconds West along said North right-of-way line of Northtown Drive for a distance of 185.25 feet to the Point of Curvature of a 16.5789 degree curve to the right, having a central angle of 29 degrees 49 minutes and a radius of 345.61 feet; run thence along said North right-of-way line of Northtown Drive and the arc of said 16.5789 degree curve having a chord bearing of North 74 degrees 50 minutes    22 seconds West and a chord distance of 177.83 feet to the Point of Tangency of said curve; run thence North 59 degrees 56 minutes West along said North right-of-way line of Northtown Drive for a distance of 117.42 feet to the POINT OF BEGINNING.

Also dedicated herewith is a forty foot (40') wide easement adjacent to the North boundary of the land described above for the purpose of ingress and egress, being more particularly described as follows:

Commence at an iron pin marking the Southwest corner of Lot 7 of the aforesaid Northtown Village, said point also being the intersection of the East right-of-way line of Old Canton Road with the North right-of-way line of Northtown Drive (as both are now laid out and improved, April, 1984); run thence North 30 degrees 04 minutes East along the East right-of-way line of said Old Canton Road and the West boundary of Lots 7, 6 and 5 of said Northtown Village for a distance of 518.0 feet to the Northwest corner of said Lot 5; said point further being the POINT OF BEGINNING of the easement herein described; leaving said East right-of-way line of Old Canton Road, run thence South 59 degrees 56 minutes East along the North boundary of said Lot 5 and said line extended for a distance of 590.0 feet to an iron pin; run thence North 30 degrees 04 minutes East for a distance of 40.0 feet; run thence North 59 degrees 56 minutes West for a distance of 590.0   feet to a point on the East right-of way line of said Old Canton Road; run thence South 30 degrees 04 minutes West for a distance of 40.0 feet to the POINT OF BEGINNING.



STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. B. McCarty, Jr., and W. H. Holman, Jr., who acknowledged that they are the duly constituted and acting as Managing Partners of HOMAC, a Mississippi general partnership and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said partnership having first been duly authorized so to do.

Given under my hand and seal of office, this the 6 day of June , 1984.

My commission expires:

My Commission Expires Sept. 23, 1986

_____
NOTARY PUBLIC

STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. H. Holman, Jr., and Roger P. Friou, who acknowledged that they are the duly constituted and acting President and Secretary, respectively, of Jitney-Jungle Stores of America, a Mississippi corporation, and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said Corporation, having first been duly authorized so to do.

Given under my hand and seal of office, this the 6 day of June , 1984.

My commission expires:

My Commission Expires Sept 23, 1986

_____
NOTARY PUBLIC



3448

BOOK 3000 PAGE 270

## MEMORANDUM OF LEASE

THIS IS A LEASE dated _June 6_, 1984, by and between HOMAC, a Mississippi general partnership (herein called "Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation (herein called "Tenant").

LANDLORD has leased and hereby leases to Tenant that certain parcel of land situated at the northeast corner of Old Canton Road and Northtown Drive in the City of Jackson, County of Hinds, State of Mississippi, more particularly described in EXHIBIT A attached hereto and made a part hereof, together with all easements, rights and appurtenances thereto, all of Landlord's buildings, improvements, equipment and other property now or hereafter located thereon (herein, with the land, collectively called "Premises") for a term commencing on the date hereof and ending on the last day of the month following the twenty fifth (25th) anniversary of such date; with options in Tenant to extend the Lease for four (4) additional periods of five (5) years each; with the right in Tenant of first refusal to purchase the Premises; with a restrictive covenant for the benefit of Tenant against competing businesses; and upon all other covenants and conditions of the Lease between Landlord and Tenant of even date herewith which is, by this reference, incorporated herein and made a part hereof.

EXECUTED as of the date first herein specified.

LANDLORD:

HOMAC

By: _____
    W. B. McCarty, Jr., Managing Partner

By: _____
    W. H. Holman, Jr., Managing Partner

TENANT:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _____
    W. H. Holman, Jr., President

By: _____
    Roger P. Friou, Secretary

BOOK 3000 PAGE 271

STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. B. McCarty, Jr. and W. H. Holman, Jr. who acknowledged that they are the duly constituted and acting as Managing Partners of HOMAC, a Mississippi general partnership and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said partnership having first been duly authorized so to do.

Given under my hand and seal of office, this the 6 day of June, 1984.

My commission expires:

My Commission Expires Sept. 23, 1986

_Delores H. Thornton_
NOTARY PUBLIC

STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. H. Holman, Jr. and Roger P. Friou, who acknowledged that they are the duly constituted and acting President and Secretary, respectively, of Jitney-Jungle Stores of America, a Mississippi corporation, and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said Corporation, having first been duly authorized so to do.

Given under my hand and seal of office, this the 6 day of June, 1984.

My commission expires:

My Commission Expires Sept. 23, 1986

_Delores H. Thornton_
NOTARY PUBLIC

BOOK 3000 PAGE 272

### EXHIBIT A

A certain parcel of land being a part of Lot 2, Northtown Village, according to the map or plat thereof, on file and of record in the office of the Chancery Clerk of Hinds County at Jackson, Mississippi in Plat Book 29 at Page 33; said parcel further being situated in the South 1/2 of Section 5, T6N-R2E, Hinds County, Mississippi, containing 215,798.83 square feet or 4.9541 acres, more or less and being more particularly described as follows:

BEGINNING at an iron pin marking the Southeast corner of Lot 7 of the aforesaid Northtown Village, said point also being on the North right-of-way line of Northtown Drive (as now laid out and improved, April, 1984); run thence north 30 degrees 04 minutes East along the East boundary of Lots 7, 6 and 5 of said Northtown Village for a distance of 518.00 feet to the Northeast corner of said Lot 5; run thence South 59 degrees 56 minutes East for a distance of 450.0 feet to an iron pin; run thence South 30 degrees 04 minutes West and parallel to said East boundary of Lots 5, 6 and 7 for a distance of 380.16 feet to an iron pin on the North right-of-way line of Northtown Drive; run thence North 89 degrees 44 minutes 44 seconds West along said North right-of-way line of Northtown Drive for a distance of 185.25 feet to the Point of Curvature of a 16.5789 degree curve to the right, having a central angle of 29 degrees 49 minutes and a radius of 345.61 feet; run thence along said North right-of-way line of Northtown Drive and the arc of said 16.5789 degree curve having a chord bearing of North 74 degrees 50 minutes 22 seconds West and a chord distance of 177.83 feet to the Point of Tangency of said curve; run thence North 59 degrees 56 minutes West along said North right-of-way line of Northtown Drive for a distance of 117.42 feet to the POINT OF BEGINNING.

Also dedicated herewith is a forty foot (40') wide easement adjacent to the North boundary of the land described above for the purpose of ingress and egress, being more particularly described as follows:

Commence at an iron pin marking the Southwest corner of Lot 7 of the aforesaid Northtown Village, said point also being the intersection of the East right-of-way line of Old Canton Road with the North right-of-way line of Northtown Drive (as both are now laid out and improved, April, 1984); run thence North 30 degrees 04 minutes East along the East right-of-way line of said Old Canton Road and the West boundary of Lots 7, 6 and 5 of said Northtown Village for a distance of 518.0 feet to the Northwest corner of said Lot 5; said point further being the POINT OF BEGINNING of the easement herein described; leaving said East right-of-way line of Old Canton Road, run thence South 59 degrees 56 minutes East along the North boundary of said Lot 5 and said line extended for a distance of 590.0 feet to an iron pin; run thence North 30 degrees 04 minutes East for a distance of 40.0 feet; run thence North 59 degrees 56 minutes West for a distance of 590.0 feet to a point on the East right-of way line of said Old Canton Road; run thence South 30 degrees 04 minutes West for a distance of 40.0 feet to the POINT OF BEGINNING.

STATE OF MISSISSIPPI, County of Hinds:

I, Pete McGee, Clerk of the Chancery Court of said County, certify that the within instrument was filed for record in my office this _____7_____ day of _____JUNE_____ 1984 at __10:25__ o'clock __A.__ M., and was duly recorded on the _____8_____ day of _____JUNE_____ 1984 Book No. __3000__ Page No. __270__ in my office.

Witness my hand and seal of office, this the _____8_____ day of _____JUNE_____, 1984

PETE McGEE, Clerk

By _____ D.C.





Book 3004, Page 281

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

THIS AGREEMENT made this 6th day of June, 1984, between Security-Connecticut Life Insurance Company, a Connecticut corporation, (hereinafter called "Lender"), Jitney-Jungle Stores of America, Inc., a Mississippi corporation, (hereinafter called "Tenant"), and HOMAC, a Mississippi General Partnership, (hereinafter called "Landlord"),

### RECITALS:

The following recitals are true and correct and are a part of this Agreement:

A. Landlord, for the purposes of securing a loan (the "Loan") from Lender, has executed or will execute (and deliver) a Promissory Note in the original principal amount of One Million Nine Hundred Thousand and No/100 Dollars ($1,900,000.00) (the "Note"), bearing interest as therein specified, and payable to the order of Lender as therein provided, and for the purpose of securing the Note, Landlord has executed or will execute (and deliver) a Deed of Trust and Security Agreement creating or which will create a first and superior lien upon the real property situated in Hinds County, Mississippi, described in Exhibit "A" which is attached hereto (the "Deed of Trust");

B. Tenant is the holder of a lease agreement, as amended, (hereinafter called the "Lease") dated as of June 6, 1984, entered into by Tenant and Landlord covering the real property (the "Demised Premises") described in Exhibit "A,";

C. Paragraph 17 of the Lease contains a prior option to purchase in favor of Tenant and the Lease was recorded prior to the Deed of Trust;

D. The Lease (and the assignment thereof from Landlord to Lender) are material considerations to Lender in making the Loan and Lender will not agree to termination of said Lease (which termination will occur if Tenant purchases the Demised Premises) unless Tenant affirmatively assumes the Loan and agrees to become fully liable on the debt evidenced by the Note and Deed of Trust; and

E. Landlord, Tenant, and Lender desire to confirm their understanding with respect to the Lease and the Deed of Trust and to subordinate the Lease (including the prior option to purchase) to the Deed of Trust;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and to induce Lender to proceed with the closing of the Loan, Landlord, Tenant and Lender hereby agree and covenant as follows:

1. Tenant agrees that the Lease (and its estate created thereunder) as well as all of its rights and options thereunder (including but not limited to the prior option to purchase set forth in Paragraph 17 of the Lease) shall be subject and subordinate to the lien of the Deed of Trust.

2. With further regard to the aforesaid prior option to purchase appearing in Paragraph 17 of the Lease, Tenant agrees that as a condition precedent to its exercising its right to purchase the Demised Premises, it (Tenant) will:

    (a) promptly give Lender (i) copies of all notices which Tenant receives from Landlord pursuant to Paragraph 17 and (ii) copies of any notices which Tenant in turn gives to Landlord concerning Tenant's election to exercise said prior option which will be sent to Lender at the same time that Tenant gives such notice to Landlord, and

    (b) after giving Lender copies of the notices referred to in Paragraph 2(a) hereof, Tenant will keep Lender fully advised regarding the impending purchase of the Demised Premises by Tenant, including the complete name and address of the title

company (hereinafter referred to as the "Escrow Agent") that will handle the sale and purchase and with whom all pertinent documents will be placed in escrow pending consummation of the sale, and

(c) Simultaneous with its purchase of the Demised Premises, Tenant will affirmatively assume the Loan and agrees to become fully liable on the debt evidenced by the Note and Deed of Trust, such assumption to be accomplished by its execution of assumption documents prepared by Lender and deposited in escrow by Lender with Escrow Agent.

Landlord agrees to all matters contained in this instrument insofar as same affect its interests, and also agrees to furnish Lender with copies of all notices which either Tenant or Landlord send to each other. Landlord further agrees (in the event Tenant exercises its prior option to purchase) that it will not consummate said sale unless (i) Tenant does in fact affirmatively assume the Loan and agrees to become fully liable on the debt evidenced by the Note and Deed of Trust in a manner satisfactory to Lender and in full compliance with Lender's escrow instructions to Escrow Agent or (ii) the Loan is paid off in full at time of the closing of the sale to Tenant.

3. If the Demised Premises are purchased by Tenant and if for any reason Tenant fails to affirmatively assume the Loan as provided herein, then and in that event the Loan shall be paid off in full, together with any applicable prepayment penalty, at the closing of the sale to Tenant.

4. So long as Tenant is not in default (beyond any period given Tenant to cure such default) in the payment of basic rent or percentage rent or in the performance of any of the terms, covenants or conditions of the Lease on Tenant's part to be performed, (i) Tenant's possession of the Demised Premises and Tenant's rights and privileges under the Lease, or any extensions or renewals thereof shall not be diminished or interfered with by Lender in the exercise of any of its rights under the Deed of Trust, (ii) Tenant's occupancy of the Demised Premises or any such additional space shall not be disturbed by Lender in the exercise of any of its rights under the Deed of Trust during the term of the Lease or any such extensions or renewals thereof, and (iii) Lender will not join Tenant as a party defendant in any action or proceeding for the purpose of terminating Tenant's interest and estate under the Lease because of any default under the Deed of Trust.

5. In the event any proceedings are brought for the foreclosure of the Deed of Trust or if the Demised Premises are conveyed to the Lender by deed in lieu of foreclosure, Tenant shall attorn to Lender or the purchaser upon any such conveyance or foreclosure sale or trustee's sale and shall recognize Lender or such purchaser as landlord (lessor) under the Lease. Such attornment shall be effective and self-operative without the execution of any further instrument on the part of any of the parties hereto. Tenant agrees, however, to execute and deliver at any time and from time to time, upon the request of Landlord or Lender or any such purchaser (1) any instrument or certificate which, in the reasonable judgment of Landlord or Lender or such purchaser, may be necessary or appropriate in any such foreclosure proceeding or otherwise to evidence such attornment, and (2) an instrument or certificate regarding the status of the Lease, consisting of statements, if true, (i) that the Lease is in full force and effect, (ii) the date through which rentals have been paid, (iii) the date of the commencement of the term of the Lease, (iv) the nature of any amendments or modifications to the Lease, (v) that no default, or state of facts, which with the passage of time or notice would constitute a default, exists on the part of either party to the Lease, and (vi) the dates on which payments of percentage rentals are due under the terms of the Lease.

6. If Lender shall succeed to the interest of Landlord under the Lease in any manner, or if any purchaser acquires the Demised Premises upon any foreclosure of the Deed of Trust or any trustee's sale under the Deed of Trust, Lender or such purchaser, as the case

may be, in the event of attornment shall have the same remedies by entry, action or otherwise in the event of any default by Tenant (beyond any period given Tenant to cure such default) in the payment of rent or additional rent or in the performance of any of the terms, covenants and conditions of the Lease on Tenant's part to be performed that Landlord had or would have had if Lender or such purchaser had not succeeded to the interest of Landlord. From and after any such attornment, Lender or such purchaser shall be bound to Tenant under all the terms, covenants and conditions of the Lease, and Tenant shall, from and after the succession to the interest of Landlord under the Lease by Lender or such purchaser have the same remedies against Lender or such purchaser for the breach of an agreement contained in the Lease that Tenant might have had under the Lease against the Landlord if Lender or such purchaser had not succeeded to the interest of Landlord; provided further, however, that Lender or such purchaser shall not be

    (a)  liable for any action or omission of any prior landlord or lessor (including Landlord); or

    (b)  bound by any rent which Tenant might have paid for more than the current month to any prior landlord (including Landlord); or

    (c)  bound by any amendment or modification of the Lease made without its written consent, which consent shall not be unreasonably withheld; or

    (d)  subject to any offsets or deficiencies which the Tenant might be entitled to assert against the Landlord.

7.    Nothing herein contained is intended, nor shall it be construed, to abridge or adversely affect any right or remedy of Landlord under the Lease in the event of any default by Tenant (beyond any period given Tenant to cure such default) in the payment of any rent or in the performance of any of the terms, covenants or conditions of the Lease on Tenant's part to be performed.

8.    Any notice or communication required or permitted hereunder shall be given in writing, sent by United States mail, postage prepaid, registered or certified mail, or by prepaid telegram (provided that such telegram is confirmed by mail in the manner previously described), addressed as follows:

    To Lender:        Security-Connecticut Life Insurance Company
                        c/o 1300 South Clinton Street
                        P. O. Box 1110
                        Fort Wayne, Indiana  46801
                        Attention:  Mortgage Loan Department

    To Tenant:        Jitney-Jungle Stores of America, Inc.
                        453 North Mill Street
                        P. O. Box 3409
                        Jackson, Mississippi 39207

    To Landlord:      HOMAC
                        453 North Mill Street
                        P.O. Box 3409
                        Jackson, Mississippi 39207

or to such other address or in care of such other person as hereafter shall be designated in writing by the applicable party and shall be deemed to have been given as of the date of receipt.

9.    This Agreement may not be modified orally or in any manner other than by an agreement in writing signed by the parties hereto or their respective successors in interest. This Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns, and any purchaser or purchasers at foreclosure of the Demised Premises, and their respective heirs, personal representatives, successors and assigns.

3

IN WITNESS WHEREOF, the parties hereto have hereunto caused this Agreement to be duly executed as of the day and year first above written.

"LENDER":

SECURITY-CONNECTICUT LIFE
INSURANCE COMPANY

BY: LINCOLN NATIONAL INVESTMENT
MANAGEMENT COMPANY
Attorney in Fact

By: _____
Alex Jokay, Executive Vice President

Attest: _____
Patricia A. Adams, Assistant Secretary

"TENANT":

JITNEY-JUNGLE STORES OF
AMERICA, INC.

BY: _____
President

ATTEST: _____
Secretary

"LANDLORD":

HOMAC
a Mississippi General Partnership

By: _____
W. B. McCarty, Jr.,
Managing Partner

By: _____
W. H. Holman, Jr.,
Managing Partner

STATE OF INDIANA )
                 ) SS:
COUNTY OF ALLEN )

On this 31st day of May , 1984, before me personally came Alex Jokay , to me personally known and known to me to be the person who executed the foregoing instrument as Executive Vice President of LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY, who, being by me first duly sworn, did depose and say that he is Executive Vice President of LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY; that LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY is the attorney in fact of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, duly appointed by resolution adopted by the Board of Directors of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, which resolution is now in full force and effect; that said instrument was signed by him in the name of and on behalf of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY by LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY as its attorney in fact; that such execution thereof was duly authorized by said SECURITY-CONNECTICUT LIFE INSURANCE COMPANY by authority of its Board of Directors; and the said Alex Jokay acknowledged said instrument to be the free act and deed of LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY in its capacity as attorney in fact of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY.

My Commission Expires:

_____
_____      Notary Public

JOAN L. KENDALL
Notary Public
Resident of Huntington County Indiana

4

STATE OF MISSISSIPPI       )
                           ) SS:
COUNTY OF HINDS            )

Before me, *Delores N. Thornton*, on this day personally appeared *W H. Holman, Jr.*, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed as *President* of Jitney-Jungle Stores of America, Inc., a Mississippi corporation, and as the free act and deed of said corporation.

Given under my hand and official seal this *6th* day of *June*, 1984.

My Commission expires:

My Commission Expires Sept. 23, 1935

                                    *Delores N. Thornton*
                                    Notary Public


STATE OF MISSISSIPPI       )
                           ) SS:
COUNTY OF HINDS            )

Before me, *Delores N. Thornton*, on this day personally appeared W. H. Holman, Jr., known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed as Managing Partner of HOMAC, a Mississippi general partnership.

Given under my hand and official seal this *6th* day of *June*, 1984.

My Commission expires:

My Commission Expires Sept. 23, 1935

                                    *Delores N. Thornton*
                                    Notary Public


STATE OF MISSISSIPPI       )
                           ) SS:
COUNTY OF HINDS            )

Before me, *Delores N. Thornton*, on this day personally appeared W. B. McCarty, Jr., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed as Managing Partner of HOMAC, a Mississippi general partnership.

Given under my hand and official seal this *6th* day of *June*, 1984.

My Commission expires:

My Commission Expires Sept. 23, 1935

                                    *Delores N. Thornton*
                                    Notary Public


THIS INSTRUMENT was prepared by John R. Zern, Senior Counsel for Lincoln National Corporation, Fort Wayne, Indiana.

5

EXHIBIT A

A certain parcel of land being a part of Lot 2, Northtown Village, according to the map or plat thereof, on file and of record in the office of the Chancery Clerk of Hinds County at Jackson, Mississippi, in Plat Book 29 at Page 33; said parcel further being situated in the South 1/2 of Section 5, T6N-R2E, Hinds County, Mississippi, containing 215,798.83 square feet or 4.9541 acres, more or less and being more particularly described as follows:

Beginning at an iron pin marking the Southeast corner of Lot 7 of the aforesaid Northtown Village, said point also being on the North right-of-way line of Northtown Drive (as now laid out and improved, April, 1984); run thence North 30 degrees 04 minutes East along the East boundary of Lots 7, 6 and 5 of said Northtown Village for a distance of 518.00 feet to the Northeast corner of said Lot 5; run thence South 59 degrees 56 minutes East for a distance of 450.0 feet to an iron pin; run thence South 30 degrees 04 minutes West and parallel to said East boundary of Lots 5, 6 and 7 for a distance of 380.16 feet to an iron pin on the North right-of-way line of said Northtown Drive; run thence North 89 degrees 44 minutes 44 seconds West along said North right-of-way line of Northtown Drive for a distance of 185.25 feet to the Point of Curvature of a 16.5789 degree curve to the right, having a central angle of 29 degrees 49 minutes and a radius of 345.61 feet; run thence along said North right-of-way line of Northtown Drive and the arc of said 16.5789 degree curve having a chord bearing of North 74 degrees 50 minutes 22 seconds West and a chord distance of 177.83 feet to the Point of Tangency of said curve; run thence North 59 degrees 56 minutes West along said North right-of-way line of Northtown Drive for a distance of 117.42 feet to the POINT OF BEGINNING.

TOGETHER WITH a forty foot (40') wide easement adjacent to the North boundary of the land described above for the purpose of ingress and egress, being more particularly described as follows:

Commence at an iron pin marking the Southwest corner of Lot 7 of the aforesaid Northtown Village, said point also being the intersection of the East right-of-way line of Old Canton Road with the North right-of-way line of Northtown Drive (as both are now laid out and improved, April, 1984); run thence North 30 degrees 04 minutes East along the East right-of-way line of said Old Canton Road and the West boundary of Lots 7, 6 and 5 of said Northtown Village for a distance of 518.0 feet to the Northwest corner of said Lot 5; said point further being the POINT OF BEGINNING of the easement herein described; leaving said East right-of-way line of Old Canton Road, run thence South 59 degrees 56 minutes East along the North boundary of said Lot 5 and said line extended for a distance of 590.0 feet to an iron pin; run thence North 30 degrees 04 minutes East for a distance of 40.0 feet; run thence North 59 degrees 56 minutes West for a distance of 590.0 feet to a point on the East right-of-way line of said Old Canton Road; run thence South 30 degrees 04 minutes West for a distance of 40.0 feet to the POINT OF BEGINNING.

STATE OF MISSISSIPPI, County of Hinds:

I, Pete McGee, Clerk of the Chancery Court of said County certify that the within instrument was filed for record in my office this _____ day of _____ JUNE _____ 1984 at 10:25 o'clock A.M. and was duly recorded on the ___8___ day of _____ JUNE _____ 1984 Book No. 3004 Page No. 281

Witness my hand and seal of office this the ___8___ day of ____ JUNE ____ 1984

PETE McGEE Clerk

By _____ D.C.

SHOPPING CENTER LEASE AGREEMENT

THIS LEASE AGREEMENT (the "Lease"), is made and entered into this 27th day of February, 1990, by and between HOMAC, a general partnership, (as "Landlord"), and BILL'S DOLLAR STORES INC., a Delaware corporation, (as "Tenant").

That for and in consideration of the premises, the rents reserved, and the agreements and covenants herein contained, Landlord does hereby lease and demise unto Tenant, and Tenant does hereby hire and take from Landlord, the Leased Premises as defined herein:

1. **Definitions:** The following terms as used in this Lease shall have the meanings ascribed to them by this paragraph except where the context and subject matter require otherwise:

(a) "Landlord" means HOMAC.

(b) "Tenant" means Bill's Dollar Stores Inc.

(c) "Parties" means the Landlord and Tenant.

(d) "Shopping Center" means the Shopping Center located in the City of Jackson, County of Hinds, State of Mississippi, known as the Jitney Super Shopping Center. A plot plan of the Shopping Center drawn to scale and showing an accurate location of the premises is attached to this Lease as Exhibit "A" and the legal description of the Shopping Center is attached to this Lease as Exhibit "B", both of which are incorporated into this Lease by reference and made a part hereof.

(e) "Premises" means that certain building with exterior dimensions of approximately 110' x 120', containing 13,200 sq. ft., to be constructed thereon by Landlord according to the plans and specifications attached to this Lease as Exhibit "C" at the location in the Shopping Center identified on Exhibit "A". Exhibit "C" is incorporated in this Lease by reference and made a part hereof.

(f) "Commencement Date" means the date when the term of this Lease begins, and is the date rental begins accruing for the benefit of the Landlord under the terms and conditions of this Lease. Subject to the provisions of Paragraph 2, said Commencement Date shall be established as thirty (30) days following Completion of Improvements, as herein defined, or the Tenant's first day open for Tenant's normal business, whichever occurs first. After Completion of Improvements, the parties hereto shall execute a written declaration in recordable form specifying an exact Commencement Date of the primary term, and the exact ending date of the primary term, hereof.

(g) "Gross Sales" shall include:

(1) The entire amount of the actual sales price, whether wholly or partly for cash or credit, or otherwise, for all goods, wares and merchandise sold, leased, licensed, or delivered, and all charges for services sold or performed in, at, upon, or from any part of, or through the substantial use of the Premises by Tenant or any person, firm, or corporation, or by means of any electrical, mechanical or other vending device;

(2) All gross income of Tenant or any other person, firm, or corporation from any operation in, at, upon, or from the Premises which are neither included nor excluded from gross sales by other provisions of this Lease, but without duplication;

(3) All orders secured or received in the Premises by telephone, mail, house-to-house, or other canvassing by personnel operating from, reporting to, or under supervision of any employee, agent, or representative located at or operating out of the Premises or which Tenant, in the normal and customary course of its operations, would credit or attribute to its business in the Premises, or by other means, whether or not filled elsewhere. No deduction shall be allowed for uncollected credit accounts;

(4) All deposits not refunded to purchasers.

(h) "Gross Sales" shall not include:

(1) The net amount of cash or credit refunds in fact made upon sales from the Premises, where the merchandise sold or some part of it is returned by the purchaser to and accepted by Tenant (but not exceeding the selling price of item in question);

(2) Exchanges or transfers of merchandise between stores of Tenant, where such exchanges or transfers are made solely for the convenient operation of Tenant's business and do not have the effect of consummating a sale which has been made in, at, upon, or from the Premises or of depriving Landlord of the benefit of a sale which otherwise would have been made in, at, or from the Premises;

(3) Returns to shipper or manufacturer;

(4) Sales of fixtures after their substantial use in the conduct of Tenant's business in the Premises;

(5) "Bulk Transfer" of inventory as that term is defined by the Uniform Commercial Code;

(6) The amount of any city, county, state, or federal sales, luxury, or excise taxes on sales from the Premises where such taxes are both added to the selling price (or absorbed therein) and paid to the taxing authority by Tenant (but not by any vendor of Tenant).

(i) "Lease Term" means the entire period during which this Lease is in effect, including the primary term and any extended or renewal term.

(j) "Lease Year" means the twelve month period following the Commencement Date, plus any partial month if the Commencement Date is other than the first day of a calendar month. Each Lease Year thereafter shall be a successive period of twelve (12) calendar months.

(k) "Completion of Improvements" means that time when Landlord's work, as required to be constructed pursuant to the Construction Exhibits and this Lease, has been substantially completed and Tenant's building has been delivered to Tenant for Tenant's occupancy. The opening by Tenant of its business in the Leased Premises shall not constitute a forfeiture or waiver by the Tenant of any rights granted to it hereunder. In

1

the event Tenant opens for business prior to the time Landlord has fully complied with all of its obligations hereunder, Landlord will exercise the utmost diligence in fully complying with all of its remaining obligations.

(1) **Principal Tenant"** means Jitney Jungle Stores of America, Inc. operating a supermarket at the location designated on Exhibit "A".

**2.    Construction of Premises.**  At its sole cost and expense, Landlord shall construct the Premises, including all the buildings and common areas, substantially as shown on Exhibit "A". Landlord shall grade and surface any unpaved portions of the common areas with top quality materials and will provide proper and adequate water drainage and lighting systems therefor. Landlord covenants that the ratio of automobile parking area to gross leasable area in the Shopping Center will not be less than one parking space for each 250 square feet of leasable building area. If construction of the premises is not completed by April 1, 1990, Tenant shall not be required to accept the premises until July 1, 1990, nor in such case shall the term commence until July 1, 1990. Additionally, if construction of the premises has not been completed by September 1, 1990, Tenant shall not be required to accept the Premises until February 1, 1991, nor in such case shall the term commence until February 1, 1991.

**3.    Expansion of Shopping Center and Premises:**  Landlord reserves the right from time to time to expand the Shopping Center by constructing additional store buildings in or adjacent to the Shopping Center. Any such expansion shall conform to nd be consistent with the front building set-back line for the Shopping Center as originally constructed and according to Exhibit "A", and shall not result in the obstruction of the view of the Premises from any public street adjacent to the Shopping Center. Landlord covenants that after any such expansion, the ratio of automobile parking area to gross leasable area in the Shopping Center will not be less than one parking space for each 250 square feet of leasable building area, that the ratio of automobile parking area directly in front of the Premises will not be less than one parking space for each 250 square feet of leasable building area, entrance ways, ways for ingress and egress, and service areas will be adequate for Tenant's business needs.  Landlord further covenants that any expansion or other future construction in or adjacent to the Shopping Center will not interrupt or interfere with Tenant's use and enjoyment of the original and any such future parking areas, entrance ways, ways for ingress and egress, service areas, or other common areas, or interrupt or interfere with the conduct of Tenant's business in the Premises.

**4.    Landlord's Covenants of Title:**  Landlord warrants and represents that it has the full right, power, and authority to enter into this Lease for the Lease Term granted.  Landlord agrees to furnish Tenant a certificate of title certified by a licensed attorney within ninety (90) days from the date this Agreement is executed showing that Landlord has the full right, power and authority to enter into this Lease for the Lease Term granted and showing no encumbrances which would prevent Landlord from fulfilling all conditions of this Lease or which would allow Landlord or its successors in interest to evict Tenant as long as Tenant is not in default under this Lease.  If Landlord fails timely to furnish Tenant with such a certificate of title, Tenant at its option may cancel this Lease at any time that Landlord remains in default under this provision.  Landlord warrants and represents to Tenant that the Premises are zoned for the type of business permitted under this Lease, and that it will tender the Premises to Tenant in accordance with all the requirements of local authorities having jurisdiction thereof, including a certificate of occupancy, if required.

**5.    Contingency:**  This Lease is expressly contingent upon receipt by Landlord of a release from Security Commercial Life Insurance Company on the property described in Exhibit "B" attached hereto and made a part hereof by reference.

**6.    Term:**  Landlord leases and Tenant rents the Leased Premises for a term commencing 30 days after Completion of Improvements or Tenant's first day open for business, whichever occurs first, and terminating on the last day of the calendar month during which the tenth (10th) anniversary of the Commencement Date occurs.

Notwithstanding the above, the primary term of this Lease shall not commence until the following have occurred:

(i)  The Premises have been delivered to Tenant completed, including all "punch list" items, in accordance with Exhibit "C";

(ii)  Landlord has completed construction of all of the parking and other common areas shown on Exhibit "A" and as otherwise provided in this Lease;

(iii)  Plumbing, heating, air conditioning, gas and electrical facilities have been substantially completed to such extent that the appropriate services to be rendered through such facilities can be supplied;

(iv)  Landlord has made the Premises available to Tenant.

**7.    Fixed Minimum Rent:**  Tenant shall pay to Landlord, without prior demand therefor, and as fixed minimum rent, the sum of Sixty-Four Thousand Twenty & no/100 Dollars ($64,020.00) annually, payable monthly, in advance, in the amount of Five Thousand Three Hundred Thirty-Five & no/100 Dollars ($5,335.00) on, or before the first day of each calendar month.

Upon commencement of the Lease term, a one time payment of Eight Thousand and no/100 Dollars ($8,000.00) shall be made by Tenant to Landlord.

All monies due to Landlord by Tenant under the terms and conditions of this Lease shall be paid in. lawful money of the United States of America.  Rents for any partial rent period shall be prorated.  Until changed by notice, rent checks shall be paid and mailed to Landlord at the address set forth herein.

**8.    Percentage Rent:**  In addition to the fixed minimum rent hereinabove set forth, Tenant shall pay to Landlord at the time and in the manner herein specified as percentage rent hereunder three percent (3%) of the gross sales in excess of Two Million One Hundred Thirty-Four Thousand & no/100 Dollars ($2,134,000.00) made during any Lease year.

On or before thirty (30) days after the end of each Lease Year, Tenant shall furnish to Landlord a complete statement certified by Tenant's chief financial officer, showing the gross sales made in the premises during the preceding full or part calendar year. and Tenant shall accompany such statement with payment of any percentage rent due.

Tenant shall keep and shall require its subtenants, concessionaires, and licensees, if any, to keep at the premises or at such other place as Landlord may approve in writing full true and accurate records and accounts, in accordance with approved accounting practice, for all the gross sales made and all business carried on at, in or from the premises during each day of the Lease term, all of which records and accounts including without limitation all supporting records and copies of reports to governmental authorities for the purpose of

2

any excise tax, sales tax, business and occupation tax, and gross income tax reports; and such pertinent records and accounts will be kept, retained and preserved for at least three (3) years after the expiration of each calendar year or portion thereof, of the lease term and for so long thereafter as may be required for Landlord to complete any audit or examination within such period, and shall be open for inspection by Landlord, or duly authorized agents of Landlord, at all reasonable times during ordinary business hours. Any failure or refusal by Tenant to permit Landlord's agents to verify said reports or any material misrepresentation by Tenant in furnishing such reports shall constitute a default hereunder which shall entitle Landlord, at its option, to terminate this Lease by giving Tenant ten (10) days written notice of its intent so to do, and at the expiration of said period of ten (10) days, this Lease and the term hereby granted shall wholly cease and expire, whereupon Landlord shall be entitled to repossession and all other remedies provided elsewhere herein in the event of default by Tenant

9. **Confidentiality of Information:** Landlord agrees to hold in confidence all sales and related information furnished by Tenant except in any litigation between the parties and except further that Landlord may divulge such information to a prospective buyer or encumbrancer of the Premises.

10. **Options for Renewal:** Landlord grants to Tenant, provided that Tenant is not in default under any provision of this Lease, the right to renew this Lease on the same terms and conditions except rent and length of term for two additional terms of five (5) years each beginning from and after the expiration of the primary term or a prior renewal term. Tenant shall exercise its renewal option by giving Landlord notice within one hundred twenty (120) days of the expiration of the primary or any extended term. Should Tenant fail to send notice to Landlord, it is agreed that Landlord will notify Tenant in writing that Tenant's option has not been exercised and that the option to renew shall expire thirty (30) days after receipt of such notice from Landlord. If Tenant does not send written notice of the exercise of such option to Landlord within said thirty (30) day period, Tenant's option to renew shall thereafter terminate. If the thirtieth (30th) day following Tenant's receipt of Landlord's notice is after the date on which the current term is due to expire, Tenant's right to occupy the premises and elect to extend shall continue until such thirtieth (30th) day. If Tenant elects to extend within such time, the election shall be retroactive to the date on which the preceding term expired.

11. **Renewal Rents:** Fixed minimum rent during each renewal option period shall be as follows:
(a) Throughout the first option term, Tenant agrees to pay Landlord an annual rent of Seventy Thousand Four Hundred Twenty-Two & no/100 Dollars ($70,422.00) in equal monthly installments of Five Thousand Eight Hundred Sixty-Eight & 50/100 Dollars ($5,868.50) each, plus percentage rent at the rate of three percent (3%) of sales over Two Million Three Hundred Forty-Seven Thousand Four Hundred and no/100 Dollars ($2,347,400.00) during any Lease Year.

(b) Throughout the second option term, Tenant agrees to pay Landlord an annual rent of Seventy-Seven Thousand Four Hundred Sixty & no/100 Dollars ($77,460.00) in equal monthly installments of Six Thousand Four Hundred Fifty-Five & no/100 Dollars ($6,455.00) each, plus percentage rent at the rate of three percent (3%) of sales over Two Million Five Hundred Eighty-Two Thousand and no/100 Dollars ($2,582,000.00) during any Lease Year.

12. **Holdover:** Any holdover after the expiration of the term, with the consent of Landlord, shall be construed to be a tenancy from month to month and shall otherwise be on the terms and conditions herein specified so far as applicable.

13. **Use and Trade Name:** Tenant's use of the premises will be limited to use as a Bill's Dollar Store or other general merchandise store as the business of Tenant may from time to time evolve, and for no other or different use or purpose. The premises shall not be used or occupied for any unlawful business, use, or purpose, nor for any business use or purpose deemed hazardous, nor for any purpose which is in violation of any present or future governmental laws or regulations. At no time shall Tenant operate a pharmacy or sell prescription drugs in or on any part of the Premises. In addition, Tenant covenants not to use, occupy, or permit to be occupied, any part of the Premises for the purpose of conducting a food store or department, or for the storage or sale of off-premises consumption of groceries, meats, produce, dairy products, or bakery products, or any of them, provided, however that Tenant may store and sell such products as an incidental part of its principal business so long as the total number of square feet devoted by Tenant to the storage and display for sale of such products does not exceed five percent (5%) of the total number of square feet of building area leased by Tenant or five hundred (500) square feet (including, in either such case, one-half (1/2) of the aisle space adjacent to any storage or display area), whichever is the smaller.

14. **Closing of Store:** It is expressly understood and agreed that, notwithstanding anything to the contrary contained in this Lease, Tenant may, upon at least thirty (30) days prior written notice to Landlord, close its store. Such closing shall not release Tenant from any of its obligations provided herein provided, however, that in the event Tenant closes its store, Landlord may, at its option, terminate this Lease at any time while the store remains vacant and upon termination by Landlord, Tenant shall be relieved of all further liability under this Lease.

15. **Tenant's Exclusive:** During the lease term, Landlord shall not lease, sell or permit to be leased or sold to any other party, any business, or other building in the Shopping Center, or any property or building which is now owned, or may hereafter be owned by Landlord and which is located within a two (2) mile radius of the Shopping Center, to be used or occupied by any party for the purpose of operating a variety store, discount store, dollar store, general merchandise store, or any other store that would carry fifty percent (50%) or more items of a kind, style, or classification that would be similar to or identical to the kind, style, or classification carried by Tenant.

16. **Ordinances and Regulations:** Tenant will, at its cost, promptly comply with and carry out all orders, requirements or conditions now or hereafter imposed upon it by the ordinances, laws, and/or regulations of the municipality in which the Premises are located, or by any of its various departments, whether required of Landlord or other, to be done or performed during the term of this agreement, insofar as they are occasioned by or required in the conduct of the business of Tenant. Tenant also covenants not to perform or allow to be performed, or carry on any practices on the premises which would injure the building. Tenant will not create or allow any nuisance to exist on said Premises, and agrees to abate any nuisance that may arise promptly and free of expense to Landlord.

17. **Absence of Principal Tenant:** If at any time during the Lease Term the Principal Tenant, its successors, or assigns discontinues operation of its business in the specified location, Landlord shall have six (6) months from the date of discontinuance in which to provide for a similar operation of a similar business in that location  If Landlord is unable to secure such a replacement for said operation, Tenant may, at any

3

time thereafter during which the space is vacant, cancel this Lease by a sixty (60) day written notice to Landlord.

18. **Utilities:** Tenant shall pay his own utilities, gas, water, electricity, sewer and trash removal either through separate metering or billing.

19. **Signs and Exterior Alteration:** Tenant shall place no signs, flags, posters or other advertising or promotional materials in the Shopping Center on the exterior of the Leased Premises without having obtained Landlord's prior written consent. Tenant may place a sign, the size and design of which must be approved in writing by Landlord, on the exterior of the Premises. Window signage shall be limited to fifteen percent (15%) of the window opening. Tenant will not alter in any way the exterior of the Premises without the written consent of Landlord. Tenant further agrees that any improvements made with Landlord's approval shall become the property of Landlord and shall remain upon the Premises, unless Landlord shall require the restoration of the Premises to their original condition. In that event, Tenant shall comply with the requirement of Landlord prior to the expiration or other termination of this Lease.

20. **Interior Alteration:** At its sole cost and expense, Tenant may alter or remodel the interior of the Premises in any manner it may elect, provided that the alteration or remodeling does not alter the structure of the building or diminish the value of the Premises, and provided that the alteration or remodeling is in accordance with the requirements of local authorities having jurisdiction thereof.

21. **Mechanic's Lien:** Tenant shall not encumber or subject the interest of the Landlord in the Premises to any mechanics', materialmen's or other liens of any nature whatsoever and shall cure any such claim immediately. Tenant shall indemnify Landlord against any such lien or claim filed or claimed by reason of transactions made by Tenant. If Tenant shall elect to contest any such claim or lien, it shall furnish Landlord a bond of a reasonable corporate surety in the amount claimed, conditioned upon the discharge of said claim or lien.

22. **Tenant's Repairs, Alterations:** Tenant agrees, at Tenant's expense, to keep the entire Leased Premises in a clean, orderly and sanitary condition and in a good state of repair except for the matters required of Landlord herein; and that upon expiration of the term herein or renewal hereof, Tenant will have the Leased Premises in as good condition and repair, except for ordinary wear and tear and damage resulting from fire or other casualty, as when Premises were received. All repairs are to be made by the Tenant in a workmanlike manner and of a quality not less than the original construction. Said Tenant repairs (including replacement of parts and equipment if necessary) shall include, but not be limited to, the exterior doors and windows, all plumbing and sewage facilities within the Leased Premises (including free flow up to the main sewer line), fixtures, heating and air conditioning equipment, electrical systems, sprinkler system, interior walls, floors and ceilings. Tenant further agrees that if, during the last month of the term of this Lease or any renewal or extension of the said term, Tenant shall have removed all or substantially all of the Tenant's property from the Premises, and provided Tenant has not exercised an option to renew the term of the Lease, Landlord may, prior to the expiration or termination of the term of the Lease, without releasing Tenant from any obligations to repair or restore the Premises or to pay Basic Rent and Additional Rent in full, and without any elimination or abatement thereof, immediately enter upon and alter, renovate, and redecorate the Premises.

23. **Landlord's Repairs:** At its sole cost and expense, Landlord shall promptly repair and maintain in good repair and condition the foundation, supporting walls, sub-floors, exterior walls, roof, gutters and downspouts, sewers, sidewalks, and exterior painting, including damage from latent defects, as well as all other exterior and structural parts of the building, whether included in the above enumeration or not, and the parking area, unless such repairs are occasioned by neglect of Tenant, in which case Tenant shall promptly make such repairs without cost to Landlord. In the event entry is required by Landlord in furtherance of this repair and maintenance obligation, Tenant shall grant such entry. If Landlord's performance of its obligation to repair and maintain set forth above results in Tenant's loss of use of the Premises, there shall be an equitable abatement of rent reflecting Tenant's loss of use of the Premises.

If at any time Landlord is in default of its obligation to repair or maintain, Tenant may give Landlord written notice of the need of such repairs or maintenance. If Landlord does not commence to make such repairs within thirty (30) days from the date of such notice or does not continue with due diligence until the repairs are completed, Tenant may make the needed repairs at its own expense. Should Tenant make any repairs pursuant to this paragraph, Tenant shall give Landlord immediate notice of its action and, on demand, Landlord shall reimburse Tenant for the cost of such repairs. Should Landlord fail to reimburse Tenant, Tenant may deduct such sums from rent due or to become due.

24. **Inspections:** Tenant will allow Landlord or his agent to have access to said Premises at any time in the case of an emergency, or, if not an emergency, during Tenant's normal business hours for the purpose of inspection, or in the event of fire or other property damage, or for the purpose of making any repairs Landlord considers necessary or desirable.

25. **Defect Notices:** Tenant will give Landlord prompt notice in writing of any defects or breakage in the structure, equipment, or fixtures of the Premises for which Landlord is responsible hereunder.

26. **Personal Property:** All personal property in the Premises shall be and remain at Tenant's sole risk, and Landlord shall not be liable for any damage to, or loss of such personal property arising from any acts of negligence of any other persons nor from the leaking of roof, or from the bursting, leaking, or overflowing of water, sewer, or steam pipes, or from heating or plumbing fixtures, or from electric wires or fixtures, or from any other cause whatsoever, nor shall the Landlord be liable for any injury to the person of the Tenant or other persons in said Premises; the Tenant expressly agreeing to save Landlord harmless in all cases except for the Landlord's negligent repairs.

27. **Insurance Coverage:** Landlord and Tenant shall each carry liability insurance during the full term of this Lease with carriers authorized to do business in the State of Mississippi with a combined single limit not less than Five Hundred Thousand & no/100 Dollars ($500,000.00) affecting one or more persons.

The insurance coverages shall include contractual liability endorsements to insure the covenants of indemnity set forth herein. Each will furnish the other with a certificate of such insurance form time to time upon request

28. **Casualty Insurance for the Shopping Center:** Landlord shall keep the Premises insured on a replacement cost basis against loss or damage by fire, lightning or windstorm with extended perils coverage.

4

29. **Indemnification:** Tenant, during the term of this Lease, agrees to indemnify Landlord against and save Landlord harmless from all demands, claims, causes of action or judgments, and all reasonable expenses incurred in investigating or resisting the same, for injury to persons or to property occurring in the interior or doorways of the leased Premises. Landlord agrees to indemnify Tenant against and save Tenant harmless from all demands, claims, causes of action or judgments, and all reasonable expenses incurred in investigating or resisting the same, for injury to person or property occurring in the Shopping Center and/or the Common Area (as defined in Paragraph 33 hereof) or its adjoining streets and sidewalks, except those occurring in the interior or doorways of Tenant's building. Further, the parties hereto agree that each party does hereby waive and release any and all claims, demands, and causes of action which such party might otherwise have against the other for damage to or loss of any part of the Premises and any adjoining Premises belonging to Landlord or any of the contents therein belonging to Tenant, arising from perils insured against, ordinarily, under standard fire and extended coverage insurance policies issued in the state where the Premises are located regardless of the cause, and that all policies of insurance written to insure such buildings, improvements, and contents shall contain a proper provision, by endorsement or otherwise, whereby the insurance carriers issuing the same shall acknowledge that the insured has so waived and released its right of recovery against the other party hereto and shall waive the right of subrogation which such carrier might otherwise have had against any such party, all without impairment or invalidation of such insurance.

30. **Destruction:** If all or any part of the Premises is damaged or made untenable by destruction or other casualty, Landlord, at its sole cost and expense, shall rebuild or restore the Premises in as good a condition as they were in immediately prior to such fire or other casualty. Such rebuilding or restoring shall be completed within nine (9) months of the date of the damage or destruction. In such event there shall be a just and proportionate abatement in the rent from the date of such damage or destruction until the earlier of (a) ninety (90) days after Landlord rebuilds or restores the Premises or the untenable portion thereof as the case may be, and delivers possession thereof to Tenant, or (b) Tenant reopens for business in the Premises or the untenable portion thereof as the case may be. Notwithstanding Landlord's obligation to restore as set forth hereinabove, if the Premises are made wholly or substantially untenable by damage or destruction within the last three (3) years of the then current term of this Lease, at the option of Landlord or at the option of Tenant, this Lease shall terminate and no rent shall be paid by Tenant for the period subsequent to the date of such damage or destruction. The exercise of this option by Landlord or by Tenant shall be by notice in writing given to the other within thirty (30) days after the occurrence of such damage or destruction. Notwithstanding the above, if at the time of such damage or destruction there remains an unexecuted option to extend the Lease, which if executed would provide a Lease term of at least five (5) years, Tenant may nullify Landlord's election to cancel this Lease by exercising its option to extend within thirty (30) days after receipt of Landlord's notice to terminate. In such event Landlord shall rebuild or restore the Premises as first provided in this paragraph and this Lease shall continue.

31. **Insurance Hazards:** Tenant will not permit anything to be or remain upon or about the Premises, nor carry on or permit upon the Premises any trade or occupation or suffer to be done anything which may render an increased or extra premium payable for the insurance of the Premises against fire, or other perils included under policies for fire and extended coverage insurance without the Landlord's prior written consent.

32. **Fire Extinguishers:** Tenant agrees to supply and maintain at its own expenses any fire extinguishers, or other fire prevention equipment required by law, rules, orders, ordinances, and regulations of any city, county, or state in which the Premises are located, and/or required by any underwriters association, bureau, or any other similar body having jurisdiction involving said Premises.

33. **Rules and Regulations:** Tenant agrees as follows:

(a) Tenant shall not use the public or common areas in the Shopping Center for business purposes;
(b) Tenant shall not place, suffer or permit displays or decorations on the sidewalk in front of the Demised Premises or on or upon any of the common areas of the Shopping Center.
(c) Tenants and their employees shall park their cars only in those portions of the parking area designated by Landlord as employee parking.
(d) The doors from the premises to the sidewalk are to be kept closed and are not to be propped open.

34. **Common Areas:** Common Area, sometimes also referred to herein as Common Facilities, shall include all automobile parking areas, driveways, entrances and exits thereto, and other facilities furnished by Landlord in or near the Shopping Center, including employee parking areas, the truck way or ways, loading docks, exterior surface of exterior walls and canopy, pedestrian sidewalks and ramps, landscaped for the general use, in common, of Tenants, their officers, agents, employees, and customers. These facilities shall at all times be subject to the exclusive control and management of the Landlord, and Landlord shall have the right from time to time to establish, modify, and enforce reasonable rules and regulations with respect to all facilities mentioned. Landlord shall have the right to construct, maintain, and operate lighting equipment on all said areas and improvements; from time to time to change the area, level, location and arrangement of parking areas and other facilities hereinabove referred to; to restrict parking by Tenants, their officers, agents, and employee parking areas; to close all or any portion of said facilities to such extent as may, in the opinion of Landlord's counsel, be legally sufficient to prevent a dedication thereof or the accrual of any rights to any person or the public therein; to close temporarily all or any portion of the parking facilities; to discourage non-customer parking; and to do and perform such other acts in and to said areas and improvements as, in the use of good business judgment, the Landlord shall determine to be advisable with a view to the improvement of the convenience and use thereof by Tenants, their officers, agents, employees, and customers. Landlord will operate and maintain the Common Area in such manner as Landlord, in its sole discretion, shall determine from time-to-time. Without limiting the scope of such discretion, Landlord shall have the full right and authority to employ all personnel and to make all rules and regulations pertaining to and necessary for the proper operation and maintenance of the Common Area.

35. **Real Estate Taxes:** Tenant agrees to pay to Landlord, as additional rent, a pro rata share of any increase in real estate taxes over the base year, which shall be the first year following completion of the Premises. Tenant's pro rata share shall be based on Tenant's leased square footage as a proportion of the total square footage leased or held for lease within the Shopping Center. Said sum shall be payable within thirty (30) days of receipt of a statement from Landlord for same. Real estate taxes for the purpose of this paragraph shall include the property taxes and assessments imposed upon the building and upon the land on which it stands, including special assessments.

5

36. **Other Taxes:** Tenant shall pay, before delinquency, any and all taxes, assessments, license fees, and public charges levied, or imposed and which become payable during the Lease term upon Tenant's fixtures, furniture, appliances, and personal property installed or located on the Leased Premises. If Tenant's fixtures, furniture, appliances, or personal property are assessed by the real property assessor as part of the Shopping Center and included in the property tax bill for the Shopping Center, Tenant, upon furnishing of proper proof of payment by Landlord, shall reimburse Landlord that portion of said tax bill which represents a fair and equitable allocation of the tax burden resulting from such an assessment.

37. **Tenant's Fixtures:** Tenant may install in the Leased Premises any new fixtures Tenant deems desirable and they shall remain Tenant's property. Tenant may remove these fixtures at any time, but shall repair any damage caused by removal. No fixtures shall be installed which affect the structural integrity or external appearance of the Leased Premises without Landlord's prior written consent. Any fixtures or other property of Tenant remaining on the Leased Premises after termination of this Lease shall become the property of Landlord. Tenant may enter upon the Leased Premises prior to the commencement of the term for the purpose of installing trade fixtures, furniture, furnishings, equipment, stock in trade and otherwise preparing the Leased Premises for the opening of business, but shall not interfere with Landlord's construction in such entry. If Tenant enters the Leased Premises prior to commencement of the term, Tenant will schedule such entry with Landlord and will immediately leave Premises when Landlord requests so that construction may continue. Tenant realizes that Premises are in a dangerous condition while under construction. Tenant agrees that prior to commencement of the term is simply an accommodation to Tenant and of no benefit to Landlord; therefor, Tenant agrees to indemnify Landlord from any claim by, or liability to, Tenant or any third person on account of, or damage to, property or personal injury arising from such entry, except damages or injury caused by negligence of Landlord.

38. **Assignment and Subletting:** Tenant shall not assign this Lease, transfer ownership of its business on the Premises, or sublet all or any part of the Premises; provided, however, Tenant shall have the right to assign this Lease to any corporation into which or with which Tenant merges or consolidates and to any parent, subsidiary or affiliated corporation, or to the purchaser of a majority of the outstanding capital stock of Tenant, provided such assignee shall deliver to Landlord a document, in a form satisfactory to Landlord, wherein such assignee agrees to assume and perform all of the terms, covenants and conditions of this Lease on the part of Tenant to be observed and performed from and after the date of such assignment.

39. **Landlord Default:** Should Landlord default in the performance of any of Landlord's obligations under this Lease, and such default continues to exist for more than sixty (60) days after notice of such default is given by Tenant to Landlord, Tenant, in addition to any and all other remedies herein provided, shall be entitled to pursue any and all remedies afforded it by law or in equity, including, but not limited to, the right to have this Lease specifically enforced. In the event of such default, Landlord shall be liable for all attorney's fees and disbursements (including court costs and/or other expenses of legal proceedings) which Tenant may incur or pay out by reason of such default.

40. **Tenant Default:** Any of the following shall constitute default by Tenant:

(a) Failure to pay all or any portion of any sum due from Tenant by the due date, or within ten (10) days of notice from Landlord;

(b) Failure to cease all conduct prohibited by this Lease within ten (10) days of receipt of written notice from Landlord;

(c) Any act in violation of this Lease which Landlord has previously notified Tenant to cease more than twice in any year;

(d) Either the appointment of a receiver to take possession of all or substantially all of the assets of Tenant, a general assignment by Tenant for the benefit of creditors, or any action taken or suffered by Tenant under any insolvency or bankruptcy act;

(e) Failure to comply or begin compliance with any other covenant in this Lease in accordance within ten (10) days of written notice from Landlord;

(f) Filing of a petition for reorganization.

41. **Remedies of Landlord on Default:** In the event of breach or default by Tenant, Landlord may at its option and without further notice to Tenant, terminate Tenant's right to possession of the Premises and without terminating this Lease re-enter and resume possession of the Premises and/or declare this Lease terminated, and may thereupon in either event remove all persons and property from the Premises, with or without resort to process of any court, either by force or otherwise. Notwithstanding such re-entry by Landlord, Tenant hereby indemnifies and holds Landlord harmless from any and all loss or damage which Tenant may incur by reason of the termination of this Lease and/or Tenant's right to possession hereunder. In no event shall Landlord's termination of this Lease and/or Tenant's right to possession of the Premises abrogate Tenant's agreement to pay rent and additional charges due hereunder for the full term hereof. Following re-entry of the premises by Landlord, Tenant shall continue to pay all such rent and additional charges as same become due under the terms of this Lease, together with all other expenses incurred by Landlord in regaining possession until such time, if any, as Landlord relets same and the Premises are occupied by such successor: Upon reletting, any sums received from such new lessee by Landlord shall be applied first to payment of costs incident to reletting; any excess shall then be applied to any indebtedness to Landlord from Tenant other than for Fixed Minimum and Percentage Rent; and any excess shall then be applied to the payment of Fixed Minimum and Percentage Rent due and unpaid. The balance, if any, shall be applied against the remaining difference between all amounts received hereunder and sums to be received by Landlord on reletting, which deficiency Tenant shall pay to Landlord in full, within ten (10) days of notice of same from Landlord. Tenant shall have no right to any proceeds of reletting that remain following application of same in the manner set forth herein.

42. **Quiet Possession:** It is further understood and agreed, that subject to the terms of this Lease, that Tenant, paying the rent hereby reserved, and performing and observing the several covenants hereof, may peacefully hold and enjoy the said Premises throughout the duration of this Lease without any interruptions by the Landlord, his heirs, or assigns, or any person lawfully claiming through him.

43. **Subordination, Non-Disturbance and Attornment:** Upon written notice delivered by Landlord to Tenant, this Lease shall be and become subject and subordinate to any and all mortgages and deeds of trust now existing on which may in the future be executed covering the Premises, for the full amount of all advances made or to be made thereunder and without regard to the time or character of the advances, together with interest, and subject to all the terms and provisions of the mortgage or deed of trust. Tenant agrees upon request to execute, acknowledge and deliver any documents or instruments requested by Landlord and necessary or proper to insure the subordination of this Lease to the mortgages or deeds of trust. Notwithstanding the above, this Lease will not be subject and sub-ordinate to any mortgage or deed of trust unless the owner or holder of the

6

mortgage or deed of trust executes with Tenant a non-disturbance and attornment agreement under which the owner or holder agrees to accept the attornment of Tenant upon the foreclosure of the mortgage or deed of trust if Tenant is not then in default under this Lease. Tenant hereby attorns and agrees to attorn to any person, firm or corporation purchasing or otherwise acquiring the Premises at any sale or other proceeding or pursuant to the exercise of any other rights, powers, or remedies under the mortgage or deeds of trust, as if the person, firm or corporation had been named as Landlord under this Lease.

**44.  Eminent Domain:**  In the event that more than fifteen percent (15%) of the floor area of the Leased Premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, then and in that event the term of this Lease shall cease and terminate by the Tenant giving notice thereof to Landlord not more than ninety (90) days after the date on which title vests in such authority, and Tenant shall have no claims against Landlord for the value of any unexpired term of said Lease from the date of title vesting in such proceeding.  In the event that less than fifteen percent (15%) of the floor area of the Leased Premises be taken in any such condemnation, or shall be acquired for any public or quasi-public purposes, Landlord shall restore the Leased Premises for use and the rent shall be adjusted pro rata based on the then remaining area of the altered Leased Premises. Upon any such taking, Tenant may make application to the condemning authorities and shall be entitled to collect from said authorities so much of the condemnation award as is permitted by law.

**45.  Attorneys' Fees:**  If as a result of any breach or default in the performance of any of the provisions of this Lease, or in order to enforce its rights hereunder, Landlord uses the services of an attorney in a nonjudicial action, at trial, or upon an appeal, to secure compliance with such provisions or recover damages therefor, to exercise such rights or to terminate this Lease or evict Tenant, Tenant shall reimburse Landlord upon demand for Landlord's reasonable attorneys' fees and expenses so incurred by Landlord. If Tenant shall be the prevailing party in any legal action brought by Landlord against Tenant, Tenant shall be entitled to recover attorneys' fees in such amount as the court may adjudge reasonable.

**46.  Notices:**  For the purpose of notice or payment of rental the address of Landlord, unless otherwise designated in writing is:  Attention: Director of Real Estate, P. O. Box 3409, Jackson, MS 39207; and the address for Tenant, unless otherwise designated in writing is:  Attention: Director of Real Estate, P. O. Box 9407, Jackson, MS 39206. Either Landlord or Tenant may designate a different address from time to time by written notice to the other.  Any notice required under this Lease shall be in writing and shall be deemed property served if hand delivered, or sent Express Mail, U. S. Postal Service or similar courier with acknowledgement or certified receipt, postage or fee prepaid.

**47.  Limitation of Recourse:**  The term Landlord as used in this Lease means only the owner or the mortgagee in possession of the land and building, or the owner of the Lease of the building, or of the land and building of which the Premises form a part so that in the event of any sale or sales of said land and buildings or of said Lease, or in the event of a Lease of said building, or of the land and building, said current Landlord shall be and hereby is entirely freed and relieved of all covenants and obligations of Landlord hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest or between the parties and the Purchaser at any such sale or the leasing of the building or of the land and building, that the Purchaser or the Lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Landlord hereunder.

**48.  Landlord Not a Partner:**  It is expressly understood that the Landlord shall not be construed or held to be a partner or associate of the Tenant in the conduct of his business; it being expressly understood that the relationship between the parties hereto is and shall remain at all times that of Landlord and Tenant.

**49.  Section Titles:**  The section titles appearing in this Lease are for purposes of easy reference and shall not be considered a part of this Lease or in any way to modify, amend, or affect the provisions thereof.

**50.  Entire Agreement:**  It is further understood and agreed, that this instrument contains the entire agreement between the parties hereto and shall not be modified in any manner except by an instrument in writing executed by the parties hereto, and that the conditions and agreements herein are binding on, and may be legally enforced by the parties hereto, their heirs, executors, administrators, successors and assigns, respectively, and that no waiver of any breach or any condition or agreement contained herein shall be construed to be a waiver of that condition or agreement of any subsequent breach thereof, or of this agreement.  Feminine or neuter pronouns shall be substituted for those of the masculine form, and the plural shall be substituted for the singular number in any place herein, in which the context may require such substitution.

**51.  Authority:**  Each person executing this Lease represents and warrants that he or she is a party or an agent of a party hereto duly authorized to execute this Lease on behalf of such party, and to bind that party to the performance of such party's obligation hereunder.

**IN WITNESS WHEREOF,** this Lease Agreement has been duly executed as of the day and year first above written.

LANDLORD:

RCMAC

By: _____
W. B. McCarty, Jr
Managing Partner

By: _____
W. H. Holman, Jr.
Managing Partner

TENANT:

BILL'S DOLLAR STORES, INC.

By: _____
Paul Long
Its Vice President of Real Estate

Attest:

By: _____
James Lander         ADMINISTRATION
It's Vice President of ~~Management~~

7

STATE OF MISSISSIPPI
COUNTY OF HINDS

Personally appeared before me, the undersigned authority at law in and for the jurisdiction aforesaid, the within named W. B. McCarty, Jr. and W. R. Bolman, Jr., who acknowledged themselves to be the Managing Partners of NOMAC, a general partnership, and that they signed, executed and delivered the above and foregoing instrument for and on behalf of said partnership on the day and year therein set forth, having first been duly authorized to do so.

Given under my hand and seal of office this the 27th day of February, 1990.

My Commission Expires:

My Commission Expires March 11, 1991

Nancy M. Lane
Notary Public


STATE OF MISSISSIPPI
COUNTY OF HINDS

Personally appeared before me, the undersigned authority at law in and for the jurisdiction aforesaid, the within named Paul Long, who acknowledged himself to be Vice President of Real Estate of Bill's Dollar Stores Inc., and that he signed and delivered the above and foregoing instrument for and on behalf of said corporation on the day and year therein set forth, having first been duly authorized to do so.

Given under my hand and seal of office this the 27th day of February, 1990.

My Commission Expires:

My Commission Expires Apr. 2, 1993

Thomas D. Furrace
Notary Public

8

ADDENDUM

to Shopping Center Lease Agreement ("Lease") dated February 27, 1990 by and between HOMAC, a General Partnership, as Landlord, and Bill's Dollar Stores, Inc., a Delaware Corporation, as Tenant, for the lease of space in Jitney Super Shopping Center, Jackson, Mississippi.

The referenced Lease is hereby amplified, clarified and/or modified as follows:

1. Tenant's rental obligations under the terms of the Lease commenced on November 1, 1990.

2. The initial term as detailed in Paragraph 6, therein, began on November 23, 1990 and said term shall end at twelve midnight on November 30, 2000.

3. The Lease is in full force and effect and is hereby ratified and confirmed.

Witness our signatures this _10th_ day of _December_, 1990.

Landlord:

HOMAC,
a General Partnership

By: _W. B. McCarty, Jr._
   W. B. McCarty, Jr.,
   Managing Partner

By: _W. H. Holman, Jr._
   W. H. Holman, Jr.,
   Managing Partner

Tenant:

Bill's Dollar Stores, Inc.
a Delaware Corporation

By: _Paul Long_
   Paul Long,
   Its Vice President
   of Real Estate

Attest:

By: _James Lander_
   James Lander,
   Sr. Vice President

3

BOOK 3000 PAGE 270

## MEMORANDUM OF LEASE

THIS IS A LEASE dated _June 6_ , 1984, by and between HOMAC, a Mississippi general partnership (herein called "Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation (herein called "Tenant").

LANDLORD has leased and hereby leases to Tenant that certain parcel of land situated at the northeast corner of Old Canton Road and Northtown Drive in the City of Jackson, County of Hinds, State of Mississippi, more particularly described in EXHIBIT A attached hereto and made a part hereof, together with all easements, rights and appurtenances thereto, all of Landlord's buildings, improvements, equipment and other property now or hereafter located thereon (herein, with the land, collectively called "Premises") for a term commencing on the date hereof and ending on the last day of the month following the twenty fifth (25th) anniversary of such date; with options in Tenant to extend the Lease for four (4) additional periods of five (5) years each; with the right in Tenant of first refusal to purchase the Premises; with a restrictive covenant for the benefit of Tenant against competing businesses; and upon all other covenants and conditions of the Lease between Landlord and Tenant of even date herewith which is, by this reference, incorporated herein and made a part hereof.

EXECUTED as of the date first herein specified.

LANDLORD:

HOMAC

By: _____
    W. B. McCarty, Jr., Managing Partner

By: _____
    W. H. Holman, Jr., Managing Partner

TENANT:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _____
    W. H. Holman, Jr., President

By: _____
    Roger P. Friou, Secretary

BOOK 3000 PAGE 271

STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. B. McCarty, Jr. and W. H. Holman, Jr. who acknowledged that they are the duly constituted and acting as Managing Partners of HOMAC, a Mississippi general partnership and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said partnership having first been duly authorized so to do.

Given under my hand and seal of office, this the 6 day of June, 1984.

My commission expires:

My Commission Expires Sept. 23, 1986

_Delores H. Thornton_
NOTARY PUBLIC


STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. H. Holman, Jr. and Roger P. Friou, who acknowledged that they are the duly constituted and acting President and Secretary, respectively, of Jitney-Jungle Stores of America, a Mississippi corporation, and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said Corporation, having first been duly authorized so to do.

Given under my hand and seal of office, this the 6 day of June, 1984.

My commission expires:

My Commission Expires Sept. 23, 1986

_Delores H. Thornton_
NOTARY PUBLIC

BOOK 3000 PAGE 272

### EXHIBIT A

A certain parcel of land being a part of Lot 2, Northtown Village, according to the map or plat thereof, on file and of record in the office of the Chancery Clerk of Hinds County at Jackson, Mississippi in Plat Book 29 at Page 33; said parcel further being situated in the South 1/2 of Section 3, T6N-R2E, Hinds County, Mississippi, containing 215,798.83 square feet or 4.9541 acres, more or less and being more particularly described as follows:

BEGINNING at an iron pin marking the Southeast corner of Lot 7 of the aforesaid Northtown Village, said point also being on the North right-of-way line of Northtown Drive (as now laid out and improved, April, 1984); run thence north 30 degrees 04 minutes East along the East boundary of Lots 7, 6 and 5 of said Northtown Village for a distance of 518.00 feet to the Northeast corner of said Lot 5; run thence South 59 degrees 56 minutes East for a distance of 450.0 feet to an iron pin; run thence South 30 degrees 04 minutes West and parallel to said East boundary of Lots 5, 6 and 7 for a distance of 380.16 feet to an iron pin on the North right-of-way line of said Northtown Drive; run thence North 89 degrees 44 minutes 44 seconds West along said North right-of-way line of Northtown Drive for a distance of 165.25 feet to the Point of Curvature of a 16.5789 degree curve to the right, having a central angle of 29 degrees 49 minutes and a radius of 345.51 feet; run thence along said North right-of-way line of Northtown Drive and the arc of said 16.5789 degree curve having a chord bearing of North 74 degrees 50 minutes 22 seconds West and a chord distance of 177.83 feet to the Point of Tangency of said curve; run thence North 59 degrees 56 minutes West along said North right-of-way line of Northtown Drive for a distance of 117.42 feet to the POINT OF BEGINNING.

Also dedicated herewith is a forty foot (40') wide easement adjacent to the North boundary of the land described above for the purpose of ingress and egress, being more particularly described as follows:

Commence at an iron pin marking the Southwest corner of Lot 7 of the aforesaid Northtown Village, said point also being the intersection of the East right-of-way line of Old Canton Road with the North right-of-way line of Northtown Drive (as both are now laid out and improved, April, 1984); run thence North 30 degrees 04 minutes East along the East right-of-way line of said Old Canton Road and the West boundary of Lots 7, 6 and 5 of said Northtown Village for a distance of 518.0 feet to the Northwest corner of said Lot 5; said point further being the POINT OF BEGINNING of the easement herein described; leaving said East right-of-way line of Old Canton Road, run thence South 59 degrees 56 minutes East along the North boundary of said Lot 5 and said line extended for a distance of 590.0 feet to an iron pin; run thence North 30 degrees 04 minutes East for a distance of 40.0 feet; run thence North 59 degrees 56 minutes West for a distance of 590.0 feet to a point on the East right-of-way line of said Old Canton Road; run thence South 30 degrees 04 minutes West for a distance of 40.0 feet to the POINT OF BEGINNING.

STATE OF MISSISSIPPI, County of Hinds:

I, Pete McGee, Clerk of the Chancery Court of said County, certify that the within instrument was filed for record in my office this _____ day of __JUNE__, 1984, at _10:25_ o'clock _A_. M., and was duly recorded on the _8_ day of __JUNE__, 1984, Book No. _3000_ Page No. _270_ in my office.

Witness my hand and seal of office, this the _8_ day of __JUNE__, 1984.

PETE McGEE, Clerk

By _____ D.C.

INITIAL

BOOK 3000 PAGE 279

Assignor further agrees that hereafter he will not amend, modify, cancel or accept surrender of the said lease nor attempt to do so, nor will he enter into, or attempt to enter into, any new lease with the Lessee above named, nor will he give his consent that the Lessee may make alterations or improvements or that the Lessee may assign, without, in each case, first obtaining the express written consent of the Assignee.

The terms, covenants, stipulations and conditions set forth in the written Assignment of Rents and Profits, dated *June 6*, 1984, and executed by Assignor to Assignee shall not affect this Assignment of Lease.

Rentals and other sums (if any) paid to and received by the Assignee shall be held, without allowance of interest, and shall be applied by it for the following purposes, the priority and application of such funds being within the sole discretion of the Assignee:

    (1)   to the payment of principal and interest installments on the mortgage loan as and when the same become due and payable;

    (2)   to the making of any required deposits in an escrow fund for the future payment of taxes, assessments and insurance premiums;

    (3)   to the payment to Assignee of all other sums due it under its said note and mortgage or under this assignment;

    (4)   any amount not applied as above provided and remaining in the hands of the Assignee may, at its option, on the first day of July of each year; be applied by the Assignee to one or both of the following:

        (a)   to the prepayment of principal in inverse order of its maturity; or

        (b)   be refunded to the Assignor.

If the Lessee exercises its prior option to purchase right granted it under paragraph 17 of the Lease, the Assignor shall have the right, pursuant to the provisions of the Lease, to sell to the Lessee the property provided the conditions of the Subordination, Non-Disturbance and Attornment Agreement of even date are fully complied with to the satisfaction of Assignee. Assignee is to be promptly furnished with copies of all notices (including but not limited to offers, acceptance or rejection thereof, etc.) which either Lessor or Lessee send to each other. If Lessee purchases the property but fails to affirmatively assume this loan in a manner satisfactory to Assignee, then Assignor agrees that the purchase price payable by the Lessee to Lessor under the provisions of the Lease (to the extent necessary to pay in full all principal, interest, and any prepayment penalty) shall be paid to Assignee and the same shall be applied to pay off the loan in full

Executed as of this *6th* day of *June*, 1984.

HOMAC, a Mississippi general partnership

BY: *W. H. Holman*
    W. H. Holman, Jr., Managing Partner

BY: *W. B. McCarty Jr.*
    W. B. McCarty, Jr., Managing Partner

BOOK 3000 PAGE 280

STATE OF MISSISSIPPI     )
                      ) SS:
COUNTY OF HINDS      )

Before me, *Delores H. Thurston*, on this day personally appeared W. H. Holman, Jr., known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed as Managing Partner of HOMAC, a Mississippi general partnership.

Given under my hand and official seal this 6th day of June, 1984.

My Commission expires:

My Commission Expires Sept. 23, 1986

*Delores H. Thurston*
Notary Public

STATE OF MISSISSIPPI     )
                      ) SS:
COUNTY OF HINDS      )

Before me, *Delores H. Thurston*, on this day personally appeared W. B. McCarty, Jr., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed as Managing Partner of HOMAC, a Mississippi general partnership.

Given under my hand and official seal this 6th day of June, 1984.

My Commission expires:

My Commission Expires Sept. 23, 1986

*Delores H. Thurston*
Notary Public

THIS INSTRUMENT was prepared by John R. Zern, Senior Counsel for Lincoln National Corporation, Fort Wayne, Indiana.

3

STATE OF MISSISSIPPI, County of Hinds:

I, PETE McGEE, Clerk of the Chancery Court of said County, certify that the within instrument was filed for record in my office this ____ day of JUNE 1984 at 10:25 o'clock A M, and was duly recorded on the 8 day of JUNE 1984 Book No. 3000 Page No. 278

Witness my hand and seal of office, this the 8 day of JUNE 1984.

PETE McGEE, Clerk

By _____ D.C.

*Su vai...*
*B—l 3794, Page 344*
*that 12-19-94,*
*Pate M= Des, any ell*
*By: a L Moge S.c.*

*#21*

BOOK **3000** PAGE **278**

Loan No. 023503

ASSIGNMENT OF LEASE

In consideration of the sum of One Dollar and other good and valuable considerations, receipt of which is hereby acknowledged, HOMAC, a Mississippi general partnership (hereinafter called Assignor) hereby assign(s) to SECURITY-CONNECTICUT LIFE INSURANCE COMPANY (hereinafter called Assignee), a Connecticut corporation, whose address is c/o Lincoln National Investment Management Company, 1300 South Clinton Street, P. O. Box 1110, Fort Wayne, Indiana 46801, and to its successors and assigns, all right, title and interest of the Assignor in, to and under that certain lease dated _June 6_ , 1984, executed by Assignor, as Lessor or Landlord, and by JITNEY-JUNGLE STORES OF AMERICA, INC., as Lessee or Tenant, together with all rents and other sums, including any penalty, security deposit, if any, any bonus and any amount to be paid upon exercise of any option to purchase, due and becoming due thereunder, with full right and authority to collect such amounts and to give receipt and acquittance therefor, which lease covers all or a portion of certain real estate situated in or near the City of Jackson, County of Hinds, State of Mississippi, commonly known as NEC Old Canton Road and Northtown Drive, Jackson, Mississippi. The complete legal description of said real estate is contained in the mortgage hereinafter mentioned.

This assignment shall cover and apply to any existing or future amendment, supplement, modification, or replacement of the aforesaid lease and to any short or memorandum form of said lease executed for recording purposes, which are identified as follows: Memorandum of Lease dated _June 6_ , 1984 recorded _June 6, 1984_ ; and Agreement Amending Lease dated _June 6, 1984_ .

This assignment is given as security for performance of all obligations of Lessor and as security for payment of a mortgage loan of ONE MILLION NINE HUNDRED THOUSAND AND NO/100 DOLLARS ($1,900,000.00), made to Assignor, represented by one note and a mortgage (or security deed or deed of trust) securing the same, each of which is dated _June 6 1984_, 1984, covering the leased real estate and improvements. Acceptance of this assignment shall not impair, affect, or modify any of the terms and conditions of said note or the mortgage securing same.

This assignment is absolute and is effective immediately and includes any extensions or renewals of the said lease. However, notwithstanding that this assignment is effective immediately, still, until notified by the Assignee in writing that a default has occurred under the terms and conditions of the above described note or mortgage, Lessee shall continue to pay to the Assignor the rentals coming due under said lease as and when they accrue according to the lease terms, it being understood, however, that in no event shall Assignor collect rent for more than 30 days in advance.

Assignee shall not be liable for failure to collect rentals or failure to enforce performance by the Lessee.

Assignee may, at its option, although it shall not be obligated so to do, perform any lease covenant for and on behalf of the Assignor and may recover any money advanced for any such purpose from Assignor on demand, with interest at the maximum rate set out in the said note from date of advancement, and may reimburse itself for amounts so advanced, with interest, from any rents collected and if not so repaid, then any balance shall be added to said mortgage debt and shall be secured by said mortgage. Likewise Assignee may, at its option, exercise any option or election for and on behalf of Assignor.

Assignor represents that the said lease is in full force and effect according to its terms; that it has not been amended or modified except by the instruments hereinabove identified; that Assignor is not in default thereunder; that Assignor has not sold, assigned, pledged, or encumbered the said lease or rentals; that Assignor has not heretofore given his consent that the Lessee may make alterations or improvements or his consent to an assignment of the lease by the Lessee; that Assignor holds no deposit or other security for performance by Lessee; and that rent has not been paid for more than 30 days in advance.

1

## AGREEMENT AMENDING LEASE

THIS IS AN AGREEMENT dated _June 6_, 1984 by and between HOMAC, a Mississippi general partnership (herein called "Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation (herein called "Tenant");

AMENDING the Lease dated _June 6_, 1984 between Landlord and Tenant covering premises located at the northeast corner of Old Canton Road and Northtown Drive in the City of Jackson, County of Hinds, State of Mississippi.

EFFECTIVE as of the date hereof:

1.   The following is hereby added as the third and final paragraph of Paragraph 9:

"If the Landlord mortgages the demised premises or any part thereof or the premises of which the demised premises are a part and the holder of the indebtedness secured by the first mortgage or first deed of trust or other similar security instrument (herein called "mortgage") so requires, then each hazard insurance policy shall be endorsed with a standard mortgagee rider, or contain a standard mortgagee provision, in favor of such holder, but only if the mortgage provides by its terms, or such holder agrees by separate written instrument, that so long as this Lease remains in effect such holder will, upon the written request of the Landlord or the Tenant, release insurance proceeds for repair or restoration as in this Lease provided. Tenant agrees that the term "insurable value" as used in Paragraph 9(a) above shall mean "actual replacement cost". Such holder shall be furnished with the original of each insurance policy and renewal policy, together with annual proof of premium payment."

2.   The following is hereby added as the second and final paragraph of Paragraph 14:

"Notwithstanding anything to the contrary herein, if the demised premises or any part thereof or the premises of which the demised premises are a part are at any time subject to a first mortgage or a first deed of trust or other similar security instrument and this Lease or the rentals are assigned to such mortgagee, trustee or beneficiary and the Tenant is given written notice thereof, including the post office address of such assignee, then the Tenant shall not terminate this Lease or abate rentals for any default on the part of the Landlord without first giving written notice by certified or registered mail, return receipt requested, to such assignee, Attention:  Mortgage Loan Department, specifying the default in reasonable detail, and affording such assignee a reasonable opportunity to make performance, at its election, for and on behalf of the Landlord."

3.   The following are hereby added as the last two paragraphs of Paragraph 17:

"If the Premises are at any time subject to a first mortgage or a first deed of trust or other similar security instrument (herein called "mortgage"), notwithstanding the provisions of this section, Tenant's right of first refusal to purchase the Premises shall not apply to a purchase at a foreclosure sale or similar proceeding or to a conveyance in lieu thereof by the mortgage holder but shall survive such sale or conveyance and thereafter apply to any subsequent bona fide offer to purchase received by and acceptable to the successor landlord.

In order for Tenant to exercise its right to purchase the Premises contained in this Paragraph 17, Tenant agrees either, at the sole option of the Tenant: (a) to pay off the outstanding indebtedness, including principal and interest and any prepayment penalty, of the first mortgage or (b) to take title subject to the first mortgage and expressly agrees to become fully liable on the promissory note or other evidence of indebtedness. In the event Tenant exercises such right to purchase the Premises, Tenant agrees to notify the holder of the mortgage simultaneously when notifying Landlord of its election. Tenant further agrees to execute any and all instruments which may be required by such holder to make this provision fully operative. Tenant agrees to accept any deed or any other instrument of conveyance of the Premises which is executed by Landlord."

4.   Paragraph 19 is hereby amended to read and provide, in its entirety, as follows:

"19.   ASSIGNMENT—SUBLEASING—BUSINESS OPERATION. Tenant may assign this Lease, in whole or in part, and/or may sublease, in whole or in part, the Premises, without Landlord's consent, but in the event of such assignment and/or subleasing, Tenant will still remain liable to Landlord for the performance of all of the terms and conditions of this Lease.

Landlord shall have the right to terminate this Lease by notice to Tenant if Tenant or any assignee or sublessee ceases to operate its business in or from the Premises for a period in excess of six (6) consecutive months, unless: (a) such cessation of business is due to remodeling, repair or restoration of the Premises, or any of the causes provided in Paragraphs 11 or 21 hereof, which by exercise of due diligence are unavoidable; and (b) provided that, as soon as the cause or matter so preventing said business operations are removed or cease to exist, such business operations are resumed. Sporadic business operations in or from Premises shall not be considered as interruptions of such six (6) month periods, unless such business operations constitute bona fide efforts to resume business operations on a full time basis."

5.   The Lease, as hereby amended, is ratified, confirmed and continued.

6.   This Agreement shall bind and benefit Landlord's heirs, executors, administrators, successors and assigns, and Tenant's successors and assigns.

EXECUTED as of the date first herein specified.

LANDLORD:

HOMAC

By: _____
    W. B. McBerty, Jr., Managing Partner

By: _____
    W. H. Holman, Jr., Managing Partner

TENANT:

JITNEY-JUNGLE STORES OF AMERICA, INC..

By: _____
    W. H. Holman, Jr., President

By: _____

STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. B. McCarty, Jr. and W. H. Holman, Jr. who acknowledged that they are the duly constituted and acting as Managing Partners of HOMAC, a Mississippi general partnership and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said partnership having first been duly authorized so to do.

Given under my hand and seat of office, this the 6 day of June, 1984.

My commission expires:

My Commission Expires Sept. 23, 1986

Delores H. Thornton
NOTARY PUBLIC


STATE OF MISSISSIPPI

COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. H. Holman, Jr. and Roger P. Friou, who acknowledged that they are the duly constituted and acting President and Secretary, respectively, of Jitney-Jungle Stores of America, a Mississippi corporation, and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said Corporation, having first been duly authorized so to do.

Given under my hand and seat of office, this the 6 day of June, 1984.

My commission expires:

My Commission Expires Sept. 23, 1986

Delores H. Thornton
NOTARY PUBLIC

4

BOOK 3722 PAGE 519

AGREEMENT AND LEASE AMENDMENT

This Agreement and Lease Amendment entered into on this _1ST_ day of _March_, 1990, by and between HOMAC, a Mississippi General Partnership, hereinafter referred to as "Owner", and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation, hereinafter referred to as "Tenant", and SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, a Connecticut corporation, hereinafter referred to as "Mortgagee",

W I T N E S S E T H:

WHEREAS, Owner is the owner of certain premises situated in the First Judicial District of Hinds County, State of Mississippi, which are (i) subject to a certain Deed of Trust and Security Agreement dated June 6, 1984 (hereinafter referred to as "Deed of Trust") in favor of Mortgagee; and (ii) leased to Tenant by Lease dated June 6, 1984, as amended by "Agreement Amending Lease" dated June 6, 1984 (hereinafter referred to as "Lease");

WHEREAS, Owner has requested Mortgagee to release a 33,496.98 square foot tract from the lien of said Deed of Trust, which tract is described in Exhibit "A" attached hereto and made a part hereof as if copied herein in words and figures, so as to allow construction of a building adjacent to the south wall of the building situated on said premises; and

WHEREAS, Tenant has been asked to modify and amend its Lease so as to remove and release the 33,496.98 sq. ft. from its Lease and demised premises and to consent to construction adjacent to the south wall of the leased and demised building;

NOW, THEREFORE, for and in consideration of the mutual benefits accruing to the parties it is agreed as follows, to-wit:

1. Owner, in consideration of the Partial Release by Mortgagee and modification and amendment of the Lease by Tenant,

BOOK 3722 PAGE 520

agrees (i) to construct a building occupying 14,550 square feet
on the land described in Exhibit "A" using the south wall of the
present building as a party wall; (ii) to pave all the remaining
area described in Exhibit "A" which is not covered by buildings,
which area is to be used solely for parking for customers of both
Tenant and tenants in the new small shops.

2.  Tenant, in consideration of the Partial Release by Mort-
gagee and the construction and leasing of the small shops by
Owner, hereby (i) modifies and amends its Lease to remove and
release the 33,496.98 square foot area described in Exhibit "A"
from the area leased to Tenant by Owner, without changing any
other terms of its said Lease with Owner; (ii) consents to the
use by Owner of the south wall of the building leased to Tenant
as a party wall for construction of a building south of said
building leased to Tenant to be leased to small shops; (iii) con-
sents to the uses that the Tenants of the small shops will make
of the spaces to be leased to them within the released area; and
(iv) approves the parking facilities that will exist after comple-
tion of the small shops.

3.  Mortgagee, in consideration of the acts of the Owner and
Tenant set out hereinabove, agrees to execute and deliver a Par-
tial Release of Deed of Trust and Security Agreement with Reserva-
tion of Easements which will release the land described in Ex-
hibit "A" from the terms of its Deed of Trust, but Mortgagee will
reserve to itself and except from said Partial Release the non-
exclusive easement rights to be used in common with others, for
the purpose of ingress, egress and parking, and for the passage
of pedestrians and vehicular traffic in, on, or over those por-
tions of the tract described in Exhibit "A" which are not occupied
by buildings.

EXECUTED on the day and date first set out hereinabove.

HOMAC, A Mississippi
General Partnership

By _____
        W. H. Holman, Jr.,
        Managing Partner

- 2 -

BOOK 3722 PAGE 521

By _W. B. McCarty Jr._

W. B. McCarty, Jr.,
Managing Partner

JITNEY-JUNGLE STORES OF
AMERICA, INC., A Mississippi
Corporation

By _W. H. Holman_

W. H. Holman, Jr.,
President

Attest:

_Roger P. Friou_

Roger P. Friou, Secretary

SECURITY-CONNECTICUT LIFE INSURANCE
COMPANY

By: LINCOLN NATIONAL INVESTMENT
MANAGEMENT COMPANY, Attorney
in Fact

By: _Michael E. McRath_

Senior Vice President
Michael E. McRath

Attest: _O. Douglas Worthington_

Assistant Secretary
O. Douglas Worthington

STATE OF MISSISSIPPI
COUNTY OF HINDS

Personally came and appeared before me, the undersigned authority in and for said jurisdiction, the within named W. H. HOLMAN, JR., and W. B. McCARTY, JR., personally known to me to be the Managing Partners of the within named HOMAC, a Mississippi General Partnership, who acknowledged to and before me that they signed and delivered the above and foregoing Agreement on the day and for the purposes therein stated, for and in behalf of said Partnership, as its own act and deed, they having been duly authorized so to do.

WITNESS my signature and official seal of office, this the 5th day of ___March___, 1990.

_Nancy M. ___

NOTARY PUBLIC

My Commission Expires:
My Commission Expires March 11, 1991

STATE OF MISSISSIPPI
COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the said County and State, within my jurisdiction, the within named W. H. HOLMAN, JR., and ROGER P. FRIOU, who acknowledged that they are the President and Secretary, respectively, of JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation, and that for and on behalf of the said corporation, and as its act and deed, they signed, sealed and delivered the above and

- 3 -

BOOK 3722 PAGE 522

foregoing Agreement for the purposes mentioned on the day and year therein mentioned, after first having been duly authorized by said corporation so to do.

GIVEN under my hand and official seal this the __5th__ day of __March__, 1990.

My Commission Expires:

My Commission Expires March 11, 1991

_Nancy M Lane_
NOTARY PUBLIC

STATE OF INDIANA
COUNTY OF ALLEN

On this __1st__ day of __March__, 1990, within my jurisdiction, before me personally came __Michael E. McMath__, to me personally known and known to me to be the person who executed the foregoing instrument as __Senior__ Vice President of LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY, who, being by me first duly sworn, did depose and say that he is __Senior__ Vice President of LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY; that LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY is the attorney in fact of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, duly appointed by resolution adopted by the board of directors of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, which resolution is now in full force and effect; that said instrument was signed by him in the name of and on behalf of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY by LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY as its attorney in fact; that such execution thereof was duly authorized by said SECURITY-CONNECTICUT LIFE INSURANCE COMPANY by authority of its board of directors; and the said __Michael E. McMath__ acknowledged said instrument to be the free act and deed of LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY in its capacity as attorney in fact of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY.

_Barbara Ann Hinton_
NOTARY PUBLIC    Barbara Ann Hinton

My Commission Expires:

BARBARA ANN HINTON
Notary
Resident Of
My Commission

THIS INSTRUMENT WAS PREPARED BY ROLAND D. MARBLE FOR SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, AVON CONNECTICUT.

- 4 -

EXHIBIT "A"

BOOK 3722 PAGE 523

The following described land situated in the City of Jackson,

Hinds County, Mississippi, more particularly described as follows:

*130)*

A certain parcel of land being a part of Lot 2, Northtown Village, a subdivision according to the map or plat thereof, on file and of record in the office of the Chancery Clerk of Hinds County at Jackson, Mississippi, as now recorded in Plat Book 29 at Page 33; said parcel of land further being situated in the South 1/2 of Section 5, T6N-R2E, Hinds County, Mississippi, and being more particularly described as follows:

*S ½*
*5-6-2E*

Commencing at an iron pin marking the Southeast corner of Lot 7 of the aforesaid Northtown Village; said point also being on the North right-of-way line of Northtown Drive (as now laid out and improved); run thence South 59 degrees 56 minutes East along said North right-of-way line of Northtown Drive for a distance of 117.42 feet to the Point of Curvature of a 16.5789 degree curve to the left having a central angle of 29 degrees 49 minutes and a radius of 345.61 feet; run thence along said North right-of-way line of Northtown Drive and the arc of said 16.5789 degree curve for a chord bearing of South 67 degrees 05 minutes 55 seconds East and a chord distance of 86.22 feet to a point in said 16.5789 degree curve; said point being the POINT OF BEGINNING of the parcel of land herein described; leaving said North right-of-way line of Northtown Drive, run thence North 30 degrees 04 minutes 56 seconds East for a distance of 207.74 feet to the southerly line and the extension thereof of an existing building; run thence South 59 degrees 55 minutes 04 seconds East along the southerly line of said existing building and the extension thereof for a distance of 209.08 feet to the Southeast corner of said building; run thence South 30 degrees 04 minutes 56 seconds West for a distance of 102.32 feet to the North right-of-way line of said Northtown Drive; run thence North 89 degrees 44 minutes 44 seconds West along said North right-of-way line of Northtown Drive for a distance of 141.54 feet to a point in the aforesaid 16.5789 degree curve; run thence along said North right-of-way line of Northtown Drive and the arc of said 16.5789 degree curve for a chord bearing of North 82 degrees 00 minutes 09 seconds West and a chord distance of 93.13 feet to the POINT OF BEGINNING, containing 33,496.98 square feet or 0.7690 acres, more or less.



STATE OF MISSISSIPPI, County of Hinds:

I certify that the within instrument was filed for record in my office this _____28_____ day of March, 1990, at _____10:10_____ o'clock _____A_____ M., and was duly recorded on the _____29_____ day of March 1990 Book No _____3722_____ Page _____519_____

PETE MCGEE  CHANCERY CLERK    By_____ D C

BOOK3705 PAGE550

STATE OF MISSISSIPPI

COUNTY OF HINDS

PARTIAL RELEASE OF DEED OF TRUST AND SECURITY
AGREEMENT WITH RESERVATION OF EASEMENTS

That for and in consideration of the sum of One Dollar ($1.00) and other valuable consideration, receipt whereof is hereby acknowledged, SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, the owner and the holder of that certain Deed of Trust and Security Agreement (hereinafter referred to as "Deed of Trust") and of the Promissory Note thereby secured, does, subject to the conditions hereinafter stated, hereby release, from the lien of said Deed of Trust from HOMAC to SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, which was executed on June 6, 1984, filed for record on June 7, 1984, and recorded in the land records of the First Judicial District of Hinds County, Mississippi, at Jackson, Mississippi, in Book 3004 at Page 253, the following, and ONLY the following, described real estate, to-wit:

The legal description of the real estate is fully set out in Exhibit "A" attached hereto and made a part hereof.

This release is given pursuant to the request of HOMAC, a Mississippi General Partnership, the current owner of the real estate which remains subject to the lien of said Deed of Trust, and is given subject to the following terms and conditions:

1. That it is expressly agreed and understood that this is a PARTIAL RELEASE only and that the same shall in no wise release, affect or impair said lien against any other property described in said Deed of Trust.

2. That the undersigned, however, hereby saves unto itself and its successors and assigns and EXPRESSLY RESERVES AND EXCEPTS FROM THIS RELEASE, as it affects and pertains to the 33,496.98 square foot parcel of real estate described in Exhibit "A", non-exclusive easement rights (which are and shall be appurtenant to the remaining real estate covered and encumbered by the undersigned's Deed of Trust) to be used in common with others, which easements are for purposes of ingress, egress and parking and for the passage of pedestrian and/or vehicular traffic, on, over and through all common areas such as walks, walkways, passages, malls, streets, roads, lanes, service areas, and parking areas which are now or may in the future be situated or located on or within said above described parcel.

3. That the 33,496.98 square foot parcel described in Exhibit "A" is being released on the express condition that same be used only for the construction of a new building to house small shops which will adjoin the existing building, that the size of the new building will not exceed 14,550 square feet, and that 18,946.98 square feet, the portion of said parcel not occupied by the shops are to be paved and improved for parking and to be used for no other purpose.

PROVIDED, HOWEVER, that the security of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY as described in the aforesaid Deed of Trust shall in all respects, except as to the premises described in

BOOK 3705 PAGE 551

Exhibit "A", be preserved and protected and that the lien of said Deed of Trust, except as hereby released and discharged, shall remain in full force and effect and the terms, conditions and covenants thereof and of the Promissory Note thereby secured shall remain unchanged.

EXECUTED this __1ST__ day of __MARCH__, 1990.

SECURITY-CONNECTICUT LIFE INSURANCE COMPANY

By:  LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY, Attorney in Fact

By: _____
Senior Vice President
Michael E. McMath

Attest: _____
Assistant Secretary
O. Douglas Worthington

STATE OF INDIANA
COUNTY OF ALLEN

On this _____ day of ___March___, 1990, within my jurisdiction, before me personally came __Michael E. McMath__, to me personally known and known to me to be the person who executed the foregoing instrument as __Senior__ Vice President of LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY, who, being by me first duly sworn, did depose and say that he is __Senior__ Vice President of LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY; that LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY is the attorney in fact of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, duly appointed by resolution adopted by the board of directors of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, which resolution is now in full force and effect; that said instrument was signed by him in the name of and on behalf of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY by LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY as its attorney in fact; that such execution thereof was duly authorized by said SECURITY-CONNECTICUT LIFE INSURANCE COMPANY by authority of its board of directors; and the said __Michael E. McMath__ acknowledged said instrument to be the free act and deed of LINCOLN NATIONAL INVESTMENT MANAGEMENT COMPANY in its capacity as attorney in fact of SECURITY-CONNECTICUT LIFE INSURANCE COMPANY.

_____
NOTARY PUBLIC  Barbara Ann Hinton

My Commission Expires:
BARBARA ANN HINTON
Notary Public
Resident Of Allen County, Indiana
My Commission Expires May 31, 1991

THIS INSTRUMENT WAS PREPARED BY ROLAND D. MARBLE FOR SECURITY-CONNECTICUT LIFE INSURANCE COMPANY, AVON, CONNECTICUT.

- 2 -

BOOK 3705 PAGE 552

EXHIBIT "A"

The following described land situated in the City of Jackson,

Hinds County, Mississippi, more particularly described as follows:

*1-301*

A certain parcel of land being a part of Lot 2, Northtown Village, a subdivision according to the map or plat thereof, on file and of record in the office of the Chancery Clerk of Hinds County at Jackson, Mississippi, as now recorded in Plat Book 29 at Page 33; said parcel of land further being situated in the South 1/2 of Section 5, T6N-R2E, Hinds County, Mississippi, and being more particularly described as follows:

*S½*
*5-6-2E*

Commencing at an iron pin marking the Southeast corner of Lot 7 of the aforesaid Northtown Village; said point also being on the North right-of-way line of Northtown Drive (as now laid out and improved); run thence South 59 degrees 56 minutes East along said North right-of-way line of Northtown Drive for a distance of 117.42 feet to the Point of Curvature of a 16.5789 degree curve to the left having a central angle of 29 degrees 49 minutes and a radius of 345.61 feet; run thence along said North right-of-way line of Northtown Drive and the arc of said 16.5789 degree curve for a chord bearing of South 67 degrees 05 minutes 55 seconds East and a chord distance of 86.22 feet to a point in said 16.5789 degree curve; said point being the POINT OF BEGINNING of the parcel of land herein described; leaving said North right-of-way line of Northtown Drive, run thence North 30 degrees 04 minutes 56 seconds East for a distance of 207.74 feet to the southerly line and the extension thereof of an existing building; run thence South 59 degrees 55 minutes 04 seconds East along the southerly line of said existing building and the extension thereof for a distance of 209.08 feet to the Southeast corner of said building; run thence South 30 degrees 04 minutes 56 seconds West for a distance of 102.32 feet to the North right-of-way line of said Northtown Drive; run thence North 89 degrees 44 minutes 44 seconds West along said North right-of-way line of Northtown Drive for a distance of 141.54 feet to a point in the aforesaid 16.5789 degree curve; run thence along said North right-of-way line of Northtown Drive and the arc of said 16.5789 degree curve for a chord bearing of North 82 degrees 00 minutes 09 seconds West and a chord distance of 93.13 feet to the POINT OF BEGINNING; containing 33,496.98 square feet or 0.7690 acres, more or less.



STATE OF MISSISSIPPI, County of Hinds:

I certify that the within instrument was filed for record in my office this _____ 16 _____ day of
April, 1990, at ____ 3:05 ____ o'clock ____ P ____ M., and was duly recorded on the
_____ 17 _____ day of April, 1990. Book No ____ 3705 ____ Page ____ 550 ____

PETE MCGEE. CHANCERY CLERK      By: _____ D.C.

## AGREEMENT CONSOLIDATING AND AMENDING LEASE

THIS IS AN AGREEMENT ("Agreement") dated _____JUNE 11_____, 1992, by and between HCMAC, a Mississippi general partnership ("Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation ("Tenant").

WHEREAS, on June 6, 1984, Landlord entered into a lease with Tenant ("Jitney Lease"), covering the land and building known as Jitney Jungle #50, 6240 Old Canton Road in the City of Jackson, County of Hinds, and State of Mississippi ("Jitney Premises"), a Memorandum of which Jitney Lease is recorded in Book 3000 at Page 270 in the Office of the Chancery Clerk of said County; and

WHEREAS, the Jitney Lease was subsequently amended by an Agreement Amending Lease dated June 4, 1984 and by an Agreement and Lease Amendment dated March 1, 1990; and

WHEREAS, on February 27, 1990, Landlord entered into a shopping center lease agreement with Bill's Dollar Stores, Inc., a Delaware corporation ("Bill's Lease"), covering a storeroom and its appurtenances known as Bill's Dollar Store #155, 6226 Old Canton Road in the City of Jackson, County of Hinds, and State of Mississippi ("Bill's Premises"), which Bill's Premises are more fully described in the Bill's Lease; and

WHEREAS, Tenant desires to enlarge the Jitney Premises by incorporating the Bill's Premises therein ("Enlarged Premises"), and to consolidate the terms, covenants, conditions and agreements of the Bill's Lease and the Jitney Lease; and

WHEREAS, Landlord is willing to permit Tenant to enlarge the Jitney Premises by incorporating the Bill's Premises therein, and to consolidate the terms, covenants, conditions and agreements of the Bill's Lease and the Jitney Lease;

NOW, THEREFORE, in consideration of the terms, covenants, conditions and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of all of which are hereby acknowledged, Landlord and Tenant covenant and agree as follows:

1. Within thirty (30) days after the date of this Agreement, Tenant shall, at Tenant's sole cost and expense, prepare, or cause to be prepared, and shall submit to Landlord, the plans and specifications for the alterations, additions, and improvements to the Bill's Premises required to incorporate the same into the Jitney Premises ("Plans and Specifications"). Landlord shall have five (5) working days following receipt of said Plans and Specifications to review and approve or disapprove same by notice to Tenant, which approval shall not be unreasonably withheld or delayed. Within sixty (60) days after the Effective Date (as hereinafter defined), Tenant shall commence, and thereafter diligently pursue, the construction of all of the alterations, additions, and improvements required to incorporate the Bill's Premises into the Jitney Premises in accordance with the Plans and Specifications (the "Work"). It shall be the responsibility of Tenant to insure that the Enlarged Premises, when completed, satisfy the requirements set forth in the Plans and Specifications. All of the Work shall be completed in a good and workmanlike manner using materials and equipment of quality equivalent to that used in the original construction of the Jitney Premises and the Bill's Premises, and in accordance with all applicable federal, state and local laws, regulations and ordinances. Tenant shall not encumber or subject the interest of Landlord in the Enlarged Premises to any mechanic's, materialmen's or other liens of any nature whatsoever and shall promptly discharge any such liens which are filed as a result of any work performed by or through Tenant.

2. Effective as of July 15, 1992 ("Effective Date"):

A. Landlord and Tenant agree that the terms, covenants, conditions and agreements of the Bill's Lease and the Jitney Lease shall be consolidated, and that the terms, covenants, conditions and agreements of the Jitney Lease, as heretofore and hereby amended ("Lease"), shall control the demise of the Enlarged Premises.

B. The dimensions of the Enlarged Premises shall be as shown on EXHIBIT A attached hereto and made a part hereof, which Enlarged Premises are outlined in red therein.

C. The overall size of the Enlarged Premises for the purposes of the Lease shall be conclusively deemed to be 57,276 square feet.

D. Tenant shall pay to Landlord as rent for the Enlarged Premises, the sum of Twenty Nine Thousand Eighty and 58/100 Dollars ($29,080.58) per month.

E. For the purposes of the Lease, unless the context requires otherwise, the term "Premises" as used in therein shall be deemed to mean and refer to the Enlarged Premises.

3. The Lease, as heretofore and hereby amended, is ratified, confirmed and continued.

4. This Agreement shall bind and benefit Landlord, their heirs, administrators, executors, successors and assigns, and Tenant, its successors and assigns.

EXECUTED as of the date first herein specified.

LANDLORD:

HCMAC

By: _____
W. B. McCarty, Jr.,
Managing Partner

By: _____
W. H. Holman, Jr.,
Managing Partner

TENANT:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _____
W. H. Holman, Jr., President

Attest: _____
Roger P. Friou, Secretary

1

STATE OF MISSISSIPPI
COUNTY OF HINDS·

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. B. McCarty, Jr., and W. H. Holman, Jr., who acknowledged that they are the duly constituted and acting as Managing Partners of HCMAC, a Mississippi general partnership and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said partnership having first been duly authorized so to do.

Given under my hand and seal of office, this _19th_ day of _June_, 1992.

My commission expires:

My Commission Expires March 11, 1995

_Nancy M. Lane_
Notary Public


STATE OF MISSISSIPPI
COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. H. Holman, Jr., and Roger P. Friou, who acknowledged that they are the duly constituted and acting President and Secretary, respectively, of Jitney-Jungle Stores of America, Inc., a Mississippi corporation, and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said corporation, having first been duly authorized so to do.

Given under my hand and seal of office, this _11th_ day of _June_, 1992.

My commission expires:

MY COMMISSION EXPIRES 5/30/94

_Sandra Sierra_
Notary Public

2

## ASSIGNMENT OF LEASE AND ASSUMPTION AGREEMENT

THIS IS AN ASSIGNMENT OF LEASE AND ASSUMPTION AGREEMENT ("Assignment") dated _____ JUNE 2 , 1992, by and between BILL'S DOLLAR STORES, INC., a Delaware corporation ("Assignor"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation ("Assignee").

WHEREAS, Assignor is tenant under that certain Lease Agreement by and between KOMAC, a Mississippi general partnership, as landlord, and Assignor, as tenant ("Lease"), a full and complete copy of which Lease is attached hereto as EXHIBIT A and made a part hereof, covering premises known as Bill's #155, 6226 Old Canton Road, in the City of Jackson, County of Hinds, and State of Mississippi ("Premises"); and

WHEREAS, Assignor desires to assign Assignor's interest in said Lease to Assignee, and Assignee desires to have Assignor's interest in said Lease assigned to Assignee and to assume all of Assignor's rights and obligations under said Lease;

NOW THEREFORE, in consideration of the covenants, agreements and premises hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of all of which is hereby acknowledged, the parties hereto agree as follows:

EFFECTIVE as of July 15, 1992:

1. **ASSIGNOR'S WARRANTIES.** Assignor represents and warrants that: (a) the Lease is valid, subsisting, in full force and effect and free of all liens and encumbrances; (b) Assignor has good right to assign the same; (c) all rents presently due and payable thereunder have been paid; and (d) all of the covenants and conditions under the Lease which are obligations of the tenant have been fully performed and observed.

2. **ASSIGNMENT OF LEASEHOLD INTEREST.** Assignor hereby assigns, transfers and conveys to Assignee all of Assignor's right, title, estate and interest in, to and under the Lease.

3. **ASSUMPTION OF OBLIGATION.** Assignee hereby: (a) accepts this Assignment; and (b) covenants and agrees to perform and observe all of the terms and conditions of the Lease on the part of the tenant to be performed and observed, including the payment of rent, and all of the terms and conditions of this Assignment.

4. **INDEMNIFICATION OF ASSIGNEE.** Assignor covenants and agrees to indemnify and hold Assignee harmless from any and all claims, demands, actions, causes of action, losses, damages, injuries, liability and expense including, but not limited to, reasonable attorney fees: (a) arising from or in connection with the Lease or this Assignment; (b) arising out of Assignor's act or failure to act; or (c) resulting from any default of Assignor under, or failure of Assignor to comply with, the terms and conditions of the Lease or of this Assignment. The indemnification of Assignee by Assignor set forth herein shall be applicable only with respect to matters arising before the effective date of this Assignment.

5. **CONDITION OF PREMISES.** Assignee hereby accepts the Premises "AS IS", subject to all ordinances, laws and regulations of governmental or quasi-governmental authorities and all matters of record affecting the Premises, including those matters which would be revealed by a physical inspection or survey of the Premises.

6. **GOVERNING LAW.** This Assignment shall be construed and enforced in accordance with the laws of the State of Mississippi.

7. **SUCCESSORS AND ASSIGNS.** This Assignment shall bind and benefit the parties hereto, their successors and assigns.

8. **AUTHORITY.** Each party executing this Assignment represents and warrants that he or she is a party hereto, or an agent of a party hereto duly authorized to execute this Assignment on behalf of such party and to bind that party to the performance of such party's obligation hereunder.

EXECUTED as of the date first herein specified.

ASSIGNOR:

BILL'S DOLLAR STORES, INC.

By: _____
      Paul Long,
      Vice-President of Real Estate

Attest: _____
      James Lander,
      Sr. Vice-President

ASSIGNEE:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _____
      W. H. Holman, Jr., President

Attest: _____
      Roger P. Friou, Secretary

1

STATE OF MISSISSIPPI
COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named Paul Long and James Lander, who acknowledged that they are the duly constituted and acting Vice-President of Real Estate and Sr. Vice-President, respectively, of Bill's Dollar Stores, Inc., a Delaware corporation, and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said corporation, having first been duly authorized so to do.

Given under my hand and seal of office, this 2nd day of JUNE, 1992.

*Elmma D. Furnace*
Notary Public

My commission expires:

My Commission Expires April 2. 1993


STATE OF MISSISSIPPI
COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. H. Holman, Jr. and Roger P. Friou, who acknowledged that they are the duly constituted and acting President and Secretary, respectively, of Jitney-Jungle Stores of America, Inc., a Mississippi corporation, and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said corporation, having first been duly authorized so to do.

Given under my hand and seal of office, this 11th day of June, 1992.

*Sandra Vieure*
Notary Public

My commission expires:

MY COMMISSION EXPIRES 5/30/94

2

## LANDLORD'S CONSENT AND AGREEMENT

THE UNDERSIGNED, being the owner of the landlord's estate in the Lease described in the foregoing Assignment, hereby: (1) consents to that Assignment with the specific understanding that the liability accruing to Assignor under the Lease during the primary term thereof is a continuing obligation of Assignor in the event of default by Assignee; (2) agrees to give written notice to Assignor of any default by Assignee under the Lease and to give Assignor the opportunity to cure any such default prior to exercising any right or remedy thereunder or provided by law; and (3) acknowledges that all of the covenants and conditions of the Lease on the part of Assignor to be performed and observed, prior to the effective date of the Assignment, have been fully performed and observed.

EXECUTED this _14th_ day of _June_, 1992.

LANDLORD:

HOMAC,
a Mississippi general partnership

By: _____
W. B. McCarty, Jr.,
Managing Partner

By: _____
W. H. Holman, Jr.,
Managing Partner

STATE OF MISSISSIPPI
COUNTY OF HINDS

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named W. B. McCarty, Jr., and W. H. Holman, Jr., who acknowledged that they are the duly constituted and acting as Managing Partners of HOMAC, a Mississippi general partnership, and who acknowledged further that in such capacity they signed, executed and delivered the above and foregoing instrument for and on behalf of said partnership having first been duly authorized so to do.

Given under my hand and seal of office, this _14th_ day of _June_, 1992.

_____
Notary Public

My commission expires:

My Commission Expires March 11, 1995

3