STATE OF GEORGIA

COUNTY OF FULTON

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual Release and Settlement Agreement (hereinafter the "Agreement") is made and entered into this 2nd day of July *August*, 2005, by and between **John H. O. La Gatta** ("La Gatta"), **Flask Corporation** ("Flask"), **Catamount Atlanta, LLC** and **Duval Funding Corporation** ("Duval") (collectively the "La Gatta Parties"), on one hand, and **Ackerman Midtown Associates, Ltd.** ("Ackerman"), on the other hand, (collectively the "Parties").

## WITNESSETH:

WHEREAS, on or about June 30, 1983, Ackerman, as Lessor, entered into a Ground Sub-Lease Agreement (the "Ground Lease") with Winn-Dixie Atlanta, Inc. ("Winn-Dixie Atlanta"), as Lessee, for Winn-Dixie Atlanta's lease of certain commercial property in the Midtown Promenade Shopping Center located at 931 Monroe Drive, Atlanta, Georgia and more particularly described in Exhibit A (the "Leased Premises");

WHEREAS, subsequently, as part of a sale/leaseback transaction, Winn-Dixie Atlanta assigned all of its interests in the Ground Lease and conveyed the improvements located on the Leased Premises to Flask;

WHEREAS, on or about February 10, 1984, Flask, as Lessor, entered into a Lease and Sublease Agreement (the "Sublease") with Winn-Dixie Atlanta, as Lessee, for Winn-Dixie's lease of the Leased Premises;

WHEREAS, Ackerman expressly consented to the sale/leaseback transaction, including, without limitation, Winn-Dixie Atlanta's assignment of its interests in the Ground Lease and conveyance of the improvements located on the Leased Premises to Flask, and Flask's subsequent Sublease with Winn-Dixie Atlanta;

WHEREAS, Duval acted as lender/mortgagee to Flask in connection with the Leased Premises, as permitted under the Ground Lease;

WHEREAS, on or about October 10, 1986, Flask assigned its interests in the Sublease to La Gatta;

WHEREAS, in January of 2005, Ackerman purported to terminate the Ground Lease with the La Gatta Parties, for the reason that, according to Ackerman, in September of 2004, Winn-Dixie Atlanta had ceased doing business in and thereafter had vacated the Leased Premises for more than four (4) months in violation of the Ground Lease;

Cce/13558.029
072605/settlement agreement cce v2



EXHIBIT
1

WHEREAS, a dispute arose between and among the La Gatta Parties, Ackerman, and Winn-Dixie Atlanta, which is not a party to this Agreement but was involved in the transactions at issue, concerning, among other things, Ackerman's purported termination of the Ground Lease and the La Gatta parties' obligations to Ackerman under the Ground Lease (the "Dispute");

WHEREAS, at all times, the Parties have denied any and all liability to one another in connection with the Dispute;

WHEREAS, the Parties have reached a settlement and compromise of any and all existing and potential claims related to the Dispute, including all existing and potential claims between and/or among the La Gatta Parties on the one hand and Ackerman on the other hand;

WHEREAS, the Parties intend this Agreement, including, without limitation, the Exhibits attached hereto, and any other documents necessary to consummate and memorialize the Agreement, to evidence the terms and conditions of the settlement and compromise to which the Parties have agreed in order to resolve any and all disputes between them, including the Dispute;

NOW, THEREFORE, in good consideration of the mutual promises, obligations, agreements, covenants and releases contained herein, and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    **Settlement Consideration from the La Gatta Parties to Ackerman AND Release of Ackerman by the La Gatta Parties:** For and in consideration of the promises, obligations, agreements, covenants and releases contained herein, and for other good and valuable consideration as further stated in this Agreement, the receipt, adequacy and sufficiency of which are hereby acknowledged, the La Gatta Parties hereby agree as follows:

    (a)    *Unconditional Payment from the La Gatta Parties to Ackerman:* The La Gatta Parties hereby agree to pay to Ackerman the total sum of $50,000.00 (the "Settlement Sum"), upon the execution of this Agreement.

    (b)    *Conditional Payment from the La Gatta Parties to Ackerman:* In the event (and only in the event) that the La Gatta Parties recover amounts from Winn-Dixie Atlanta in excess of $150,000.00 plus attorneys' fees and legal expenses incurred in connection with such recovery (the "Excess Recovery"), the La Gatta Parties agree to pay to Ackerman an amount equal to 50% of the Excess Recovery (the "Conditional Payment") in addition to the Settlement Sum. If the La Gatta Parties recover an amount less than $150,000.00 plus attorneys' fees and legal expenses incurred in connection with such recovery, the Parties agree that no payment except the Settlement Sum is to be paid by the La Gatta Parties to Ackerman.

    (c)    *RELEASE of Ackerman by the La Gatta Parties:* The La Gatta Parties, and each of them, irrevocably and unconditionally release, settle, compromise,

- 2 -

reach accord and satisfaction and forever discharge and acquit Ackerman, and its owners, members, managers, parties, stockholders, predecessors, successors, assigns and/or other representatives (and all persons or entities acting by, through, under or in concert with any of them), from any and all charges, complaints, liabilities, obligations, promises, claims, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses that the La Gatta Parties had, now have or may have, known or unknown, suspected or unsuspected, arising out of, relating to and/or in any manner connected with (1) the Dispute; (2) the Ground Lease; (3) the Sublease; and (4) any other matter or claim existing or occurring on or before the date of the execution of this Agreement, whether based in tort, contract or otherwise, and whether equitable or legal in nature.

2.    **Settlement Consideration from Ackerman to the La Gatta Parties AND Release of the La Gatta Parties by Ackerman:** For and in consideration of the promises, obligations, agreements, covenants and releases contained herein, and for other good and valuable consideration as further stated in this Agreement, the receipt, adequacy and sufficiency of which are hereby acknowledged, Ackerman hereby agrees as follows:

   (a)    *Assignment of Claims and Right to Sue:* Ackerman hereby assigns to the La Gatta Parties, and each of them, all charges, complaints, claims, controversies, actions, causes of action, suits, rights and demands that it has or may have against Winn-Dixie Atlanta, and its owners, members, managers, partners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, attorneys, direct and indirect parent companies, divisions, subsidiaries, affiliates, related companies and/or other representatives (and all persons or entities acting by, through, under or in concert with any of them), arising out of, relating to and/or in any manner connected with (1) the Dispute; (2) the Ground Lease; and/or (3) the Sublease (collectively the "Assigned Claims"), including, without limitation, all rights to collect damages or monies payable to Ackerman arising out of, relating to and/or in any manner connected with the Assigned Claims.  In connection with this assignment, Ackerman irrevocably appoints the La Gatta Parties, and each of them, as attorneys-in-fact, with full power of substitution for it, but for the sole use and benefit of the La Gatta Parties, and each of them, to demand, sue for, submit claims for, compromise, settle and collect the Assigned Claims.

   (b)    *Agreement to Cooperate and Assist in Pursuing Assigned Claims against Winn-Dixie Atlanta:* Ackerman agrees to provide and/or execute any reasonable documentation requested by the La Gatta Parties, or any assignee of any or all of them, concerning Ackerman's assignment of the Assigned Claims and/or the Assigned Claims and to cooperate with the La

- 3 -

Gatta Parties, or any assignee of any or all of them, in any pending or future matters concerning the Assigned Claims, including, but not limited to, any action, suit, negotiation, arbitration, mediation or other proceeding relating to the Assigned Claims. Ackerman shall be reimbursed its actual out-of-pocket expenses, if any, and actual costs incurred, if any, in connection with any actions undertaken in fulfillment of its duty to cooperate in the prosecution of the Assigned Claims.

    (c)    *RELEASE of the La Gatta Parties by Ackerman:* Ackerman irrevocably and unconditionally releases, settles, compromises, reaches accord and satisfaction and forever discharges and acquits La Gatta, Flask and Duval, and each of them, and their respective and collective owners, members, managers, partners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, attorneys, direct and indirect parent companies, divisions, subsidiaries, affiliates, related companies and/or other representatives (and all persons or entities acting by, through, under or in concert with any of them) from any and all charges, complaints, liabilities, obligations, promises, claims, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses that Ackerman had, now has or may have, known or unknown, suspected or unsuspected, arising out of, relating to and/or in any manner connected with (1) the Dispute; (2) the Ground Lease; (3) the Sublease; and (4) any other matter or claim existing or occurring on or before the date of the execution of this Agreement, whether based in tort, contract or otherwise, and whether equitable or legal in nature.

    (d)    *Agreement to Termination of Ground Lease:* Contemporaneously with the execution of this Agreement, the Parties agree to the termination of the Ground Lease and will execute the Ground Lease Termination Agreement in substantially the form attached hereto as Exhibit B.

3.    **Binding Effect:** This Settlement Agreement shall be binding upon any and all transferees, successors and assigns of the La Gatta Parties, and each of them, and any transferees, successors and assigns of Ackerman.

4.    **Assignment by La Gatta Parties:** Ackerman acknowledges and agrees that the La Gatta Parties, and each of them, have assigned or may assign any or all of their collective or respective rights and obligations under this Agreement to a third party known as Catamount Atlanta, LLC, a Nevada limited liability company. Notwithstanding such assignments, however, the La Gatta parties shall remain fully liable to Ackerman for the performance and fulfillment of such obligations as may be assigned to Catamount.

5.    **No Release from Obligations of this Agreement:** Notwithstanding anything

- 4 -

contained in this Agreement to the contrary, the provisions of this Agreement are not intended to nor do they release the Parties, or any of them, from any and all obligations contained in this Agreement.

6.    **No Admission of Liability by the Parties:** This Agreement will not in any way be construed as an admission of liability by any of the Parties.

7.    **Attorneys' Fees and Costs:** The Parties shall each bear their respective attorneys' fees and costs associated with the Dispute and the negotiation and drafting of this Agreement.

8.    **Governing Law:** This Agreement shall be deemed to have been made and entered into in the state of Georgia and shall, in all respects, be interpreted, enforced and governed under the laws of the state of Georgia.

9.    **Headings:** The headings that have been used to designate the various sections of this Agreement are solely for convenience in reading and for ease of reference and shall not be construed in any event or manner as interpretive of this Agreement.

10.    **Representation by Independent Legal Counsel:** The Parties, and each of them, independently represent and warrant that they are represented by counsel in connection with the Dispute and the execution of this Agreement, that they fully understand their rights and obligations under this Agreement, that they have discussed such rights and obligations with their respective attorneys and that they have carefully read and understand all provisions of this Agreement.

11.    **Final Agreement—No Oral Modification:** This Agreement sets forth the entire understanding between the Parties hereto and supersedes any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof. This Agreement may not be changed, amended or modified unless such change, amendment or modification is made in writing and signed by all Parties hereto.

12.    **Counterparts:** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original.

Executed and delivered this 2nd day of ~~July,~~ August 2005.

Ackerman Midtown Associates, Ltd.        John H. O. La Gatta

By: _Charles A Ackerman_        _____

- 5 -

Its:_____

Catamount Atlanta, LLC

By:_____

Its:_____*Manager*_____

Flask Corporation

By:_____

Its:_____*President*_____

Duval Funding Corporation

By:_____

Its:_____*President*_____

- 6 -

## EXHIBIT A

### PROPERTY DESCRIPTION

ALL THAT TRACT or parcel of land lying and being in Land Lot 53 of
the 17th District of Fulton County, Georgia and being more particularly
described as follows:

To find the true point of beginning, begin at the intersection of the easterly
right-of-way of Monroe Drive and the north line of Land Lot 48 of the 14th
District, said line also being the south line of Land Lot 54 of the 17th
District; thence proceed south 89°33'09" east, 414.71 feet to the TRUE
POINT OF BEGINNING; thence north 00°26'51" east, 180.84 feet;
thence south 89°39'51" east, 251.22 feet to a point on the westerly right-
of-way of Southern Railroad; thence along said right-of-way south
33°08'22" east, 72.31 feet; thence following the curvative of said right-of-
way for an arc distance of 143.39 feet, said arc having a radius of 3400.37
feet and being subtended by a chord extending south 31°55'53" east,
143.38 feet; thence leaving said right-of-way, north 89°33'09" west, 368.0
feet to the TRUE POINT OF BEGINNING, said parcel of land containing
1.29 acres and being more particularly described and delineated on that
certain As-Built Survey of Midtown Shopping Center, dated November 6,
1984, and prepared for Ackerman & Co. by Hill-Fister Engineers, Inc.,
Randy L. Tibbitts, Georgia Registered Land Surveyor.

**EXHIBIT B**

[Ground Lease Termination Agreement]

- 8 -