UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In Re:

WINN-DIXIE STORES, INC.,            Case No. 3:05-bk-03817-3F1
                                              Chapter 11 (Jointly Administered)
        Debtor.

_____/

**RESPONSE OF CATAMOUNT LS-KY, LLC TO
DEBTORS' SIXTEENTH OMNIBUS OBJECTON TO (A) MISCLASSIFIED CLAIMS,
(B) OVERSTATED CLAIMS AND (C) OVERSTATED MISCLASSIFIED CLAIMS**

      Claimant, Catamount LS-KY, LLC, a Nevada limited liability company, as assignee of Helene Funk and Peter W. Merner, as nominee for John H. O. La Gatta, as successor to Flask Corporation ("LS-KY"), hereby responds to Debtors' Sixteenth Omnibus Objection to (A) Misclassified Claims, (B) Overstated Claims and (C) Overstated Misclassified Claims (the "16th Objection") as follows:

      1.    Winn-Dixie Stores, Inc. ("Winn-Dixie"), Winn-Dixie Raleigh, Inc. a/k/a Winn Dixie Charlotte, Inc. and a/k/a Winn Dixie Louisville, Inc. ("WD Raleigh") and affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") on or about February 21, 2005 (the "Petition Date").

      2.    Prior to the Petition Date, pursuant to that certain February 10, 1984 Lease and Sublease Agreement, as amended by that certain October 10, 1986 First Lease Modification Agreement, and that certain January 30, 1992 Second Lease Modification Agreement (as amended, the "Louisville Lease"), by and between the Debtor and LS-KY for that certain real property and fixtures Debtor refers to as Store No. 1676 at 1148 South 4th Street (4th & Oak), Louisville, Kentucky (the "Louisville Premises"), LS-KY leased the Louisville Premises to

Debtor. Moreover, pursuant to that certain October 18, 2004 Assignment and Assumption of Lease Agreement, Debtor assigned its interest in the Louisville Lease (the "Louisville Assignment") to Buehler of Kentucky LLC ("BOK").

3. Further, prior to the Petition Date, pursuant to that certain February 10, 1984 Lease and Sublease Agreement, as amended by that certain October 10, 1986 First Lease Modification Agreement, and that certain January 30, 1992 Second Lease Modification Agreement (as amended, the "Shelbyville Lease"), by and between the Debtor and LS-KY for that certain real property and fixtures Debtor refers to as Store No. 1673 at 120 Midland Boulevard, Shelbyville, Kentucky (the 'Shelbyville Premises"), LS-KY leased the Shelbyville Premises to the Debtor. Moreover, pursuant to that certain October 18, 2004 Assignment and Assumption of Lease Agreement, Debtor assigned its interest in the Shelbyville Lease (the "Shelbyville Assignment")(the Louisville Lease and the Shelbyville Lease are collectively, the "Leases) to BOK.

4. Pursuant to ¶¶ 6 and 19 of the Louisville Lease and the Shelbyville Lease, respectively, and as Debtor has acknowledged, *see*, *e.g.*, Debtors' November 11, 2005 Motion for Order Authorizing (I) Rejection of Leases and Subleases and (II) Abandonment of Related Personal Property, Debtor retained liability as a principal under each of these leases for all obligations thereunder, notwithstanding the Louisville Assignment and the Shelbyville Assignment. Moreover, pursuant to the Louisville Assignment and the Shelbyville Assignment, Debtor expressly remained responsible for all of its liabilities and obligations under each of the Louisville Lease and the Shelbyville Lease, respectively.

5. On May 4, 2005, BOK filed its voluntary Petition for Relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for

2

the Southern District of Indiana, Evansville Division, which case is being jointly administered as Case No. 05-70961-BHL-11 with those other Chapter 11 cases filed on the same date by BOK's affiliates, Buehler Foods, Inc., Buehler, LLC and Buehler of Carolinas, LLC.

6. The Debtors rejected the Louisville Lease effective September 1, 2005, and the Debtors rejected the Shelbyville Lease effective December 16, 2005.

7. LS-KY timely filed a proof of claim on September 27, 2005 related to the rejection of the Louisville Lease. After the rejection of the Shelbyville Lease, LS-KY amended its proof of claim on January 13, 2006, by filing Claim No. 12859 in the total amount of $594,892.21 related to its pre-petition claims under both Leases (the "LS-KY Claim").

8. The LS-KY Claim includes one year's rent for both the Louisville Premises and the Shelbyville Premises as statutory damages relating to the Debtors' rejection of the Leases. The LS-KY Claim also includes LS-KY's claims for repair and maintenance to the Louisville Premises and the Shelbyville Premises, as well as unpaid real estate taxes for both locations.

9. On or about July 31, 2006, the Debtors filed their 16th Objection in which the Debtors object to the LS-KY Claim and assert that the proper amount of the LS-KY Claim is $551,346.00. The Debtors assert that the LS-KY Claim overstates the amount of the taxes paid and fails to provide documentation for the rejection damages.

10. The 16th Objection makes no mention of the fact that LS-KY also has filed Claim No. 11851 against Winn Dixie on September 27, 2005, based upon Winn-Dixie's guaranty of WD Raleigh's liabilities under the Leases (the "LS-KY Guaranty Claim"). The LS-KY Guaranty Claim has not been updated to include the damages related to rejection of the Shelbyville Lease at this time.

11. It is established that where, as here, LS-KY "properly filed a proof of claim in accord with the Bankruptcy Rules, that proof of claim constitutes prima facie evidence of the validity and amount of that claim" unless a party in interest objects. In re Chapman, 132 B.R. 132, 143 (Bankr. N.D. Ill. 1991) (citations omitted); 11 U.S.C. §502(a); Bankruptcy Rule 3001(f). Because a valid proof of claim is *prima facie* evidence of its validity, where, as here, a party objects, the burden is on the objector to introduce evidence rebutting the presumption. Id. Merely filing an objection to the LS-KY Claim, without more, is insufficient to challenge the presumption of the LS-KY Claim's validity. Id.; In re Frederes, 98 B.R. 165, 166-67 (Bankr. W.D.N.Y. 1989); In re Glenn, 100 B.R. 763, 766 (Bankr. W.D. Pa. 1989); Matter of Fisher Holding Co., Inc., 12 B.R. 191, 192 (Bankr. S.D. Ind. 1981).

12. LS-KY accepts the Debtors' calculation of the rejection damage claim and the taxes due; however, LS-KY has additional claims against the Debtor, the right to file which LS-KY expressly reserved as part of the LS-KY Claim.

13. The Debtors were responsible for keeping the Louisville Premises in good condition, repair and appearance during Debtors' postpetition use and occupancy thereof. After BOK vacated the Louisville Premises, LS-KY inspected the Louisville Premises via BTM Engineering, Inc., of Louisville, Kentucky ("BTM"), which identified damages in the amount of $49,560.50, as set forth in detail in Exhibit A attached hereto. LS-KY has included those damages, which occurred prior to the Petition Date, as part of its LS-KY Claim and reserves its right to amend its previously-filed administrative claim to request payment of those damages to the Louisville Premises which occurred after the Petition Date but prior to the Debtors' rejection of the Louisville Lease.

14. The Debtors also were responsible for keeping the Shelbyville Premises in good condition, repair and appearance during Debtors' postpetition use and occupancy thereof. After BOK vacated the Shelbyville Premises, LS-KY inspected the Shelbyville Premises via BTM, which identified damages in the amount of $9,900.00, as set forth in detail in Exhibit B attached hereto. Should LS-KY learn that any of the damages to Shelbyville occurred after the Petition Date, LS-KY Claim reserves its right to amend its previously filed administrative claim to request payment of those damages to the Shelbyville Premises which occurred after the Petition Date, but prior to the Debtors' rejection of the Shelbyville Lease.

15. As noted in the LS-KY Claim and the LS-KY Guaranty Claim, by virtue of the Debtors' default under the Leases, Debtors are liable to LS-KY for LS-KY's enforcement of its rights under the Leases, including but not limited to attorneys' fees and costs. Courts have allowed the recovery of attorney fees when executory contracts or leases have been rejected. *See* In re Shangra-La, Inc., 167 F.3d 843, 849-50 (4th Cir. 1999); *see also* In re Crown Brooks Corp., 269 B.R. 12, 14-18 (Bankr. Del. 2001); In re Narragansett Clothing Co., 119 B.R. 388, 392 (Bankr. D.R.I. 1990). For example, in In re Child World, Inc., 161 B.R. 349 (Bankr. S.D.N.Y. 1993), the lease provided that the debtor was responsible for payment of attorneys' fees in the event of a breach of the lease. "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." Id. at 353; *See also* In re Best Prod. Co., 148 B.R. 413, 414 (Bankr. S.D.N.Y. 1992); In re Hillsborough Holdings Corp., 126 B.R. 895 (Bankr. M.D. Fla. 1991); In re Westview 74th St. Drug Corp., 59 B.R. 747 (Bankr. S.D.N.Y. 1986). Courts have awarded attorneys' fees as an administrative claim for those attorneys' fees that were incurred *prior* to the rejection date. In re Macomb Occupational Health Care, LLC,

300 B.R. 270, 297 (Bankr. E.D. Mich. 2003) ("[O]nly the portion of that amount [attorneys' fees] which was incurred before the August 27, 1999 rejection of the Carini [one of Debtor's lessors] lease agreement would be allowed as a Chapter 11 administrative claim"). Claims for attorney fees that are incurred post-petition and post-rejection of the lease are considered pre-petition unsecured claims. *See generally* In re Dena Corp., 312 B.R. 162, 172 (Bankr. N.D. Ill. 2004); In re Macomb Occupational Health Care, LLC, 300 B.R. at 297 ("Any such [attorney] fees incurred after the rejection of the Carini lease agreement would "relate back" as part of Carini's damage claim against Debtor and be treated as a pre-petition non-priority claim").

16.   LS-KY has incurred attorneys' fees and costs both prior to the rejection of the Leases and thereafter.  For purposes of this response, LS-KY has adopted the pro-ration approach espoused by several of the cases listed above.  LS-KY has calculated the attorneys' fees incurred after rejection of the Louisville Lease at $65,813.29.[1]  LS-KY has calculated the attorneys' fees incurred to date after rejection of the Shelbyville Lease at $31,519.82.  LS-KY has not attached copies of the statements for these fees in order to preserve the attorney-client and attorney work product privileges, but will submit redacted copies thereof upon request. LS-KY reserves the right to further amend its claims herein as it continues to incur further attorneys' fees and costs.

17.   LS-KY asserts that the correct amount of the LS-KY Claim (and the correct amount of the LS-KY Guaranty Claim) is as follows:

| | |
|---|---:|
| Rejection damage claim and pro-rated taxes on the Louisville Premises and the Shelbyville Premises: | $ 551,346.00 |
| Repairs to Louisville Premises: | 49,560.50 |
| Repairs to Shelbyville Premises: | 9,900.00 |
| Attorneys' Fees and Costs: | 97,333.11 |
| Total | $ 708,139.61 |

---

[1] LS-KY has incurred fees in both this case and the case filed by BOK.

LS-KY requests that the Court deem this response to be an amendment of the LS-KY Claim and the LS-KY Guaranty Claim, respectively, to reflect these updated amounts.

18.     Under the terms of the Debtors' proposed Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan"), the Debtors classify the LS-KY Claim as a Class 13 Claim. The LS-KY Guaranty Claim also fits within the definition of Class 13 Claims. LS-KY requests that the Court determine that both the LS-KY Claim and the LS-KY Guaranty Claim, as amended hereby, should be treated as allowed Class 13 Claims under the Debtors' proposed Plan.

WHEREFORE, LS-KY respectfully requests that the Court deny Debtors' request to disallow the LS-KY Claim, that the Court establish and liquidate the LS-KY Claim and the LS-KY Guaranty Claim as set forth above without prejudice to LS-KY's ability to file an administrative claim for any rent, taxes or other amounts due or that accrued after the Petition Date, that the Court determine that the LS-KY Claim and the LS-KY Guaranty Claim, as amended hereby, be treated as allowed Class 13 Claims under the Debtors' proposed Plan, and that the Court grant LS-KY all other relief just and proper.

Date: August 21, 2006                             Respectfully submitted,

  /s/ C. Daniel Motsinger
C. Daniel Motsinger, FBN 0362875
Indiana Atty. No. 10122-49
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204-2079
Telephone: 317/636-4341; Fax: 317/636-1507
E-mail: cmotsinger@kdlegal.com

-and-

Adam N. Frisch
Florida Bar No. 635308
Held & Israel
1301 Riverplace Blvd., Suite 1916
Jacksonville, FL 32207
(904) 398-7038; Fax: (904) 398-4283
E-mail: afrisch@hilawfirm.com

Attorneys for Catamount LS-KY, LLC, a Nevada limited liability company, as assignee of Helene Funk and Peter W. Merner, as nominee for John H. O. La Gatta, as successor to Flask Corporation

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served upon the parties by operation of the Court's electronic filing system on August 21, 2006, as indicated below:

/s/ C. Daniel Motsinger
C. Daniel Motsinger

Adam Ravin
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036

Elana L. Escamilla
Office of United States Trustee
135 W. Central Boulevard, Suite 620
Orlando, FL 32806

Cynthia C. Jackson
Smith, Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32201

Dennis F. Dunne
Milbank Tweed & Hadley
1 Chase Manhattan Plaza
New York, NY 10005

John B. McDonald
Akerman Senterfitt
50 N. Laura Street, Suite 2500
Jacksonville, FL 32202

KD_IM-726717_1.DOC