**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**NOTICE OF FILING**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors in possession, give notice of filing the attached Response of Skadden, Arps, Slate, Meagher & Flom LLP to the Stuart, Maue, Mitchell & James, Ltd. Final Report of the Review and Analysis of Second Interim Application of Skadden, Arps, Slate, Meagher & Flom LLP.

Dated:  August 21, 2006

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP


By     *s/ D. J. Baker*                          By     *s/ Cynthia C. Jackson*
       D. J. Baker                                      Stephen D. Busey
       Sally McDonald Henry                             James H. Post
       Rosalie Gray                                     Cynthia C. Jackson (FBN 498882)

Four Times Square                            225 Water Street, Suite 1800
New York, New York 10036                     Jacksonville, Florida  32202
(212) 735-3000                               (904) 359-7700
(917) 777-2150 (facsimile)                   (904) 359-7708 (facsimile)
djbaker@skadden.com                          cjackson@smithhulsey.com

Co-Counsel for Debtors                       Co-Counsel for Debtors

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**RESPONSE OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**TO THE STUART, MAUE, MITCHELL & JAMES, LTD. FINAL REPORT OF**
**THE REVIEW AND ANALYSIS OF SECOND INTERIM APPLICATION OF**
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

       Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps"), bankruptcy

counsel for Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and

debtors-in-possession in the above captioned case (collectively, the "Debtors"), submits this

response ("Response") to the Stuart, Maue, Mitchell & James, Ltd. ("Stuart Maue") Final Report

of the Review and Analysis of Second Interim Application ("Second Application") of Skadden,

Arps for the period May 1, 2005, through September 30, 2005 (the "Report").  In support of this

Response, Skadden, Arps represents as follows:

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases:  Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

**Background**

A.    <u>Chapter 11 Cases</u>

1.    On February 21, 2005 (the "Petition Date"), the Debtors filed petitions under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2.    The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  The Debtors are operating their businesses and managing their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.

3.    The Debtors' bankruptcy cases were one of the 10 largest bankruptcy cases filed in 2005, with approximately $2.2 billion in assets as of the Petition Date.  <u>Turnarounds & Workouts</u>, vol. 20, no. 1, January 15, 2006.  Moreover, over 24,400 filed and scheduled claims were asserted against the Debtors in the aggregate amount of approximately $25 billion.

4.    By final order dated March 15, 2005, Skadden, Arps was authorized to provide services to the Debtors in these cases (the "Retention Order").  The Retention Order authorized Skadden, Arps to be compensated on the terms of its retention agreement, a copy of which is attached at Exhibit A.

5.    On June 29, 2006, the Debtors filed the Disclosure Statement with Respect to Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors as well as their Joint Plan of Reorganization, which were both subsequently amended and filed on August 2, 2006. On August 4, 2006, this Court approved the Debtors' disclosure statement, as amended, and the Debtors are in the process of soliciting acceptance for their joint plan of reorganization.

B.      Interim Payment Procedures

      6.      On March 15, 2005, the Final Order Approving Interim Compensation Procedures for Professionals was entered (the "Interim Payment Order").

      7.      Under the Interim Payment Order, professionals may be paid up to 80% of fees earned and 100% of expenses incurred on monthly statements after submission of fee statements to certain parties, including the Debtors and their counsel, the U.S. Trustee, counsel for the creditors' committee and counsel for the Debtors' secured lenders and after expiration of objection periods.  The remaining 20% of fees are payable, after court approval of interim fee applications.  Interim fee applications are to be submitted approximately every four to six months.

      8.      The first interim fee application ("First Application") covered the period from the Petition Date through April 30, 2005, and sought $3,012,628.00 in fees and $144,484.19 in expenses.  The First Application was approved by this Court on August 4, 2005.  The Second Application covered the period from May 1, 2005, through September 30, 2005, and sought $4,158,012.50 in fees and $145,055.82 in expenses.  The Second Application was approved by this Court on December 1, 2005.  The third interim fee application ("Third Application") covered the period from October 1, 2005, through January 31, 2006, and sought $1,903,516.50 in fees and $39,986.18 in expenses.  The Third Application was approved by this Court on April 6, 2006.  The fourth interim fee application ("Fourth Application") covered the period from February 1, 2006, through May 31, 2006, and sought $3,154,861.00 in fees and $59,318.42 in expenses.  The Fourth Application was approved by this Court on August 10, 2006.[2]

---

[2]      The First Application, Second Application, Third Application, and Fourth Application are referred to collectively as the "Fee Applications."

9.      Skadden, Arps has received no objections to its monthly fee statements or to the Fee Applications.  Skadden, Arps has received all amounts under the Fee Applications, except as to the Fourth Application.  Amounts under the Fourth Application are scheduled to be paid August 21, 2006.

### Stuart Maue

10.      By order dated December 14, 2005, this Court approved the Debtors' application to employ and retain Stuart Maue as the fee examiner in these cases (the "Fee Examiner Order").  The Fee Examiner Order includes Stuart Maue's engagement letter and two appendices that set forth, among other things, procedures for professionals to (a) submit monthly statements and fee applications to Stuart Maue and (b) respond to Stuart Maue's written reports.

11.      In accordance with the Fee Examiner Order, Stuart Maue does not make determinations in its written reports as to either (a) the reasonableness or necessity of the requested fees and expenses or (b) the amount of fees and expenses to be allowed or disallowed. Fee Examiner Order ¶ 8.

12.      On March 29, 2006, Skadden, Arps received preliminary written fee reports on the First Application and the Second Application.  On April 28, 2006, Skadden, Arps submitted its written response to those preliminary reports.  On July 20, 2006, the Report was filed with this Court.  This Response addresses the Report on the Second Application.

### Preliminary Statement

13.      As set forth below, the issues raised by Stuart Maue do not preclude approval by this Court of the fees and expenses requested.  Skadden, Arps also notes the substantial voluntary reduction of more than $200,000.00 in fees and $44,000.00 in expenses during the second interim period, as reflected in the Second Application.

14.     As an initial matter, Skadden, Arps notes that the Report has not analyzed the difficulty of these cases, the efforts by Skadden, Arps to achieve the Debtors' goals, and the effectiveness of Skadden, Arps' representation.  Skadden, Arps submits that the Second Application should be reviewed in the overall context of these cases.

15.     During the period of their representation by Skadden, Arps, the Debtors have made significant progress in these cases.  Skadden, Arps assisted the Debtors in (a) obtaining debtor-in-possession financing for their cases, (b) resolving numerous reclamation claims, PACA claims, and other claims, resulting in savings of millions of dollars for the estates, (c) assisting with the sale of various assets, resulting in millions of dollars in proceeds for the Debtors' estates, and (d) obtaining approval of a disclosure statement and negotiating a reorganization plan.  The services rendered by Skadden, Arps are described in the First Application at 8-33, the Second Application at 7-33, the Third Application at 7-26, and the Fourth Application at 7-33, but not referenced in the Report.

16.     The standard for analyzing fee requests is whether the services rendered to the estates were reasonable and necessary, and not whether, in hindsight, some fee or expense may be questioned.  As one court has recognized:

> [I]t is important for a court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation.  It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner.  On the other hand, it is also possible that [the debtor] would not have enjoyed the success it did had its counsel managed matters differently.

In re Boston & Maine Corp., 776 F.2d 2, 10 (1st Cir. 1985) (internal citations and quotations omitted).  Thus, although the Report, which places weight on statistical and computer-generated analysis, is informative, the central inquiry is the reasonableness of fees and expenses incurred, in

light of the services performed.  On that basis alone, Skadden, Arps submits that, given its

representation of the Debtors in these cases, no reduction in fees and expenses is warranted, other

than as set forth in this Response.  In support of its position that fee and expense reductions are

not warranted, Skadden, Arps sets forth below its responses to the issues raised by the Report.

17.     As indicated in the Report, Stuart Maue utilizes statistical and computer-

generated reports based on its own criteria and the United States Trustee Guidelines (the

"Guidelines"), which contain guidelines for facilitating the review of fee applications.  Skadden,

Arps respectfully submits that computer-generated analysis by its nature cannot determine

whether sufficient information exists to determine whether fees and expenses are reasonable in

light of the services rendered.

18.     For example, Stuart Maue identifies, at times, certain entries that it states

do not follow technical billing guidelines.  Skadden, Arps notes that the purpose of the fee

application is "to enable the court to reach an informed decision – one necessarily grounded in

complete, coherent information – as to whether the requested compensation is justified."  In re

Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 845 (3d Cir. 1994).  Thus, even an allegedly

technically deficient entry should be approved so long as adequate information exists to permit the

Court to determine the activity described.  Skadden, Arps submits that its time entries meet this

standard.

19.     Moreover, the preliminary report on the Second Application, Skadden,

Arps identified many instances where one time entry with a corresponding fee amount was

included in multiple categories by Stuart Maue and subsequently included in the preliminary

Report's identification of fees at issue multiple times.  Skadden, Arps requested Stuart Maue to

indicate at the beginning of the Report the total amount of fees at issue without counting any

single time entry more than once.  Stuart Maue has included a chart in the Report's Summary of Findings titled "Adjustment to Eliminate Overlap Between Categories."  Notwithstanding inclusion of this chart, the Report still includes individual time entries in multiple categories, thereby double-counting numerous time entries.

20.     In addition, Stuart Maue has identified time entries in which the Skadden, Arps timekeeper was attempting to preserve privileged or otherwise confidential information, including case strategy.  Ordinarily in a non-bankruptcy context, attorney fee statements reflect confidential communications from attorneys to their clients and may reveal the attorney's thought processes and strategy in pending matters.  Because fee statements are a matter of public record in a bankruptcy case, attorneys must sometimes draft fee statements in order to protect litigation strategy, settlement communications, and other work product.  Skadden, Arps attempts to ensure that its clients' privileged or confidential information and case strategy remain confidential. Skadden, Arps should not be subject to fee reductions for time entries that are worded in order to protect such information.

21.     Lastly, as indicated above, Stuart Maue submitted a preliminary report on the Second Application.  The initial report was similar in form and substance to the Report. Skadden, Arps responded to the initial report and believes that the information submitted to Stuart Maue resolves substantially all of the issues raised in the Report.

## Report

22.     The balance of this Response will track the substantive portions of the Report as to both fees and expenses.

**Fees**

A.    Recomputation of Fees and Expenses

23.    The Report reflects that the amount requested in the Second Application was $679.50 less than the amounts computed by Stuart Maue.  Report at 4.  Skadden, Arps is not seeking compensation for the $679.50 identified by Stuart Maue.

24.    The Report reflects that there was no difference between the amount of expenses requested by Skadden, Arps and the amount of expenses computed by Stuart Maue.  Id.

B.    Potential Inadvertent Double Billing/Duplicative Entries

25.    The Report identifies three timekeepers who may have inadvertently double billed three time entries.  Id. at 5.  The entries in question total 0.90 hours with $382.00 in associated fees.  Id.

26.    Skadden, Arps reviewed the entries involved.  Two entries involved an inadvertent duplication.  The two entries total 0.40 hours with $166.00 in associated fees. Skadden, Arps will reduce its fees by an additional $166.00.

C.    Timekeepers and Positions

27.    The Report (a) identifies 47 timekeepers for the interim period consisting of 8 partners, 3 counsel, 23 associates, and 13 paraprofessionals and (b) indicates that Skadden, Arps billed 9,165.40 hours for the second interim period.  Id. at 6.  The following chart is contained in the Report:

| Job Class | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner | 1,348.50 | 15% | $1,000,678.00 | 24% |
| Counsel | 1,592.00 | 17% | 855,240.00 | 20% |
| Associate | 4,934.60 | 54% | 2,145,075.00 | 52% |
| Paraprofessional | 1,290.30 | 14% | 157,699.00 | 4% |
| TOTAL | 9,165.40 | 100% | $4,158,692.00 | 100% |

Id. at 6-7.

28.     The Winn-Dixie cases are large, complex chapter 11 cases.  Indeed, the cases are the largest chapter 11 cases pending in this district, and among the largest filed in the United States in 2005.  As stated in the Second Application, the cases "involve 24 estates, thousands of creditors, shareholders and other parties in interest and billions of dollars in assets and claims."  Second Application at 30.  Skadden, Arps believes that all timekeepers for the interim period performed necessary services.  Indeed, in these cases, the Debtors have approved more than 50 Skadden, Arps timekeepers to perform services for the estates.

29.     Skadden, Arps submits that these cases have been, and continue to be, appropriately staffed.  As shown in the above chart, approximately two-thirds of the services in the interim period were completed by associates and paraprofessionals.  The blended hourly rate for Skadden, Arps professionals is $453.74, as noted in the Report.  Report at 7.

30.     As explained in the Second Application, Skadden, Arps' services have been necessary for the Debtors and their estates.  Second Application at 5.  Moreover, Skadden, Arps' services during the interim period helped to generate millions of dollars in proceeds and savings for Debtors during the interim period.  For example, Skadden, Arps' services during the second interim period assisted the Debtors in receiving nearly $80 million in proceeds from the sale of assets.  Second Application at 8.

D.     Hourly Rate Increases

31.     Stuart Maue states that Skadden, Arps increased the hourly rates of 17 timekeepers during the second interim period.  Report at 7.  These rate increases are consistent with rate increases for Skadden, Arps' bankruptcy and non-bankruptcy clients.  Skadden, Arps believes the rate increases are reasonable.

E.    Time Increments

        32.    Stuart Maue states that all billing entries in the Second Application contained a time allotment and were billed in increments of tenths of an hour.  Report at 9.

F.    Vaguely Described Conferences

        33.    The Report identifies conferences and meetings that either did not identify the participants or specify the subject matter or purpose of the communication.  Id.  Stuart Maue asserts that such entries total 79.85 hours with $40,014.50 in associated fees.  Id.

        34.    In large cases, there are often days with numerous calls from various claimants and other parties in interest.  Considerable time is spent listening to messages, returning calls and otherwise trying to address inquiries raised by the calls.  Certain entries identified by Stuart Maue involve circumstances discussed above in which the timekeeper was responding to numerous creditor calls, and the timekeeper did not specifically identify each caller.  For example, L. Bonachea's time on July 22, 2005, reads:

           TCS RE NOTICE OF APPROVAL OF BLACKSTONE
           (.3)

Report Exhibit D-1 at 24.  Ms. Bonachea, a paraprofessional, was responsible for responding to correspondence and telephone inquiries in these cases.  Skadden, Arps submits that it would be impracticable to record every participant of every call in these cases, or in any large, complex case where there are numerous creditors and parties in interest involved placing what are often very brief calls.

        35.    While the time entries identified in the Report do not, at times, identify both the participants and the subject matter of the conference, this should not create an impediment to a meaningful review of Skadden, Arps' time.  In many instances, a review of the

complete time entry makes it clear what was done.  For example, S. Henry's time on August 5,

2005, reads:

> T/C HOOD LAWYER (.3)

Report Exhibit D-1 at 26.  This entry is not vague when considered with Ms. Henry's time entries

for the day and that are contained immediately above and below the identified entry:

> REVIEW ISSUES AND CORRESPONDENCE FROM
> HOOD STIPULATION (1.5);
> T/C HOOD LAWYER (.3);
> DIRECT RESEARCH RE:  ISSUES (.4);
> REVIEW DRAFT RE:  CONSENT TO STIPULATION
> (.1)

Id.  Ms. Henry reviewed the Hood stipulation and then called counsel for Hood.  Following the

teleconference with counsel for Hood, Ms. Henry directed research on issues and reviewed a draft

consent to stipulation.  The teleconference with counsel for Hood concerned the Hood stipulation.

There would not appear to be a significant question that could be raised regarding this time entry.

36.     A further example is as follows from the entry of S. Toussi on August 4,

2005:

> ADDRESS OUTSTANDING RECLAMATION VENDOR
> CLAIMS (.3);
> RETURN PHONE CALLS RE:  SAME (.2)

Id.  Here, through a complete review of the entry in the reclamation claims' matter, one can tell

that Mr. Toussi performed services of addressing outstanding reclamation vendor claims and then

returned calls of reclamation claimants to address their outstanding claims.  Skadden, Arps does

not believe the above entry or similar entries contained in the Report are vague.

37.     Additionally, Stuart Maue identifies time entries that Skadden, Arps

believes are proper, when viewed in the context of the matter category in which they were entered.

Specifically, to facilitate the fee review process by the Court, Skadden, Arps employed forty-one discrete matter categories.[3]

38.    Notwithstanding the above, Skadden, Arps has reviewed identified entries in Report Exhibit D-1.  Attached at Exhibit D-1 are revised task descriptions with additional detail. Revised entries were provided to Stuart Maue in response to Stuart Maue's comments on the preliminary report on the Second Application.

39.    In the Report, Stuart Maue states that the additional detail provided by Skadden, Arps "clarified most of the entries and those entries would no longer be considered vaguely described conferences."  Report at 10.

G.    Vaguely Described "Work On," " Attend to," "Attention to," and "Diligence" Activities

40.    The Report identifies entries that describe the activity performed with the phrases "work on," "attend to," "attention to," "diligence" or "follow up."[4]  Report at 10.  Stuart Maue asserts that such entries total 243.95 hours with $121,376.75 in associated fees.  Id. at 11.

41.    Stuart Maue states that the above phrases generally do not provide sufficient detail to determine the actual task that is being performed and that use of the word "issues" followed by the above phrases cause entries to become even less specific.  Id. at 10-11. The Guidelines, however, do not define any of the above terms as being either vague or noncompensable.

42.    Most of the entries identified by Stuart Maue because of the word "diligence," were made by one timekeeper.  If the timekeeper had used another term or omitted

---

[3]    The forty-first matter category was implemented later in these cases for fee examiner matters.

[4]    An additional term identified in the Report by Stuart Maue is "work."  See, e.g., Report Exhibit D-2 at 2.

the term, Skadden, Arps believes that the entry would not have been categorized as vague.  For example, the time entry of D. Turetsky on March August 8, 2005, reads:

> DILIGENCE IN RESPONDING TO DUE DILIGENCE
> REQUEST IN CONNECTION WITH EXIT FACILITY
> (0.2)

Report Exhibit D-2 at 40.  Had the entry read "respond to due diligence request in connection with exit facility (0.2)", it presumably would not have been included in the Report.  Accordingly, Skadden, Arps does not believe that the use of the term "diligence" rendered the entries vague.

43.	Likewise, in virtually all instances where a timekeeper used the term "work," "work on," "follow up" or "attend," the entry would not have been described as vague if a different verb had been utilized.

44.	Skadden, Arps does not believe that the entries identified in the Report create an impediment to a meaningful review of the services provided.  In addition, the narrative descriptions set out in the Applications provide a sufficient level of context for judging whether the services rendered were reasonable given the issues addressed and the amounts requested.

45.	Notwithstanding the above, Skadden, Arps has reviewed identified entries in Report Exhibit D-2.  Attached at Exhibit D-2 are revised task descriptions with additional detail.  Revised entries were provided to Stuart Maue in response to Stuart Maue's comments on the preliminary report on the Second Application.

46.	In the Report, Stuart Maue states that the additional detail provided by Skadden, Arps "clarified most of the entries and those entries would no longer be considered vaguely described."  Report at 12.

H.    Other Vaguely Described Activities

47.    The Report identifies certain other task entries that Stuart Maue believes are vague.  See Report at 12.  Stuart Maue asserts that such entries total 148.05 hours with $76,024.00 in associated fees.  Id. at 13.  Stuart Maue states:

> Activity descriptions for the review of documents and correspondence should identify the person or party who prepared the document or correspondence and its subject-matter.  If the documents were not recently received or were previously reviewed, the description should also state the purpose of the review.
>
> Activity descriptions must also sufficiently describe the preparation of work product.  A description of correspondence should identify the correspondent and the subject or purpose of the correspondence.  Similarly, a description for preparation of pleadings should identify the pleading drafted or revised.
>
> Activity descriptions for legal research should include the issues researched and the purpose of the research.  The activity description must be sufficiently detailed to allow a determination of whether the research is case-related, whether the research is presumably familiar to experienced professionals, or whether research is being performed by a professional with an appropriate experience level.

Id. at 12-13.

48.    Nothing in the entries identified in the Report prevent a meaningful review of Skadden, Arps' services.  The narrative descriptions set out in the Second Application provide a sufficient level of context for determining whether the services rendered were reasonable given the issues addressed and the amounts requested – particularly when evaluated in the context of the facts and circumstances surrounding these chapter 11 cases and other time entries.

49.    Indeed, substantially all of the time entries in the Second Application do, in fact, reasonably describe the activity performed.  The following entries, for example, are identified in the Report:

14

REVIEW CORRESPONDENCE RE TRUSTEE
OBJECTION TO PLANE SALE MOTION (.2)

REVIEW CORRESPONDENCE RE FOOD LION
ORDER (.1)

ANALYSIS RE: CLC (.5)

CONTINUE CLAIM PROCEDURES MOTION (2.5)

Report Exhibit D-3 at 9, 39, 41.  These entries reasonably describe the services rendered.

50.    Stuart Maue also described entries as vague when the entry contained the term "same."  In all instances, however, the entries in question refer to the immediately preceding time entries of the timekeeper in question.  That fact, when considered with the identified entry, provides sufficient detail to allow an assessment of the services rendered.

51.    Stuart Maue further identified entries in Report Exhibit D-3 that contain the word "issues."  Had timekeepers omitted the term "issues" from their entries, the entries would appear to be otherwise acceptable.

52.    Report Exhibit D-3 contains many entries that contain the word "address," or "assist," but all of such entries are reasonably descriptive of the services rendered.  If the timekeeper had used other terms, the entries would not be included in the Report.[5]

53.    Notwithstanding the above, Skadden Arps has reviewed identified entries in Report Exhibit D-3.  Attached at Exhibit D-3 are revised task descriptions with additional detail.  Revised entries were provided to Stuart Maue in response to Stuart Maue's comments on the preliminary report on the Second Application.

---

[5]    Stuart Maue does not consider the term "review" vague.  Report at 10.  Had timekeepers used the term "review" instead of the term "address," then most, if not all, entries identified by "address" would not be reflected in the Report.  Skadden, Arps should not be penalized for use of the term "address."

54.     In the Report, Stuart Maue states that the additional detail provided by Skadden, Arps "clarified most of the entries and those entries would no longer be considered vaguely described." Report at 14.

I.     Blocked Entries

55.     The Report identifies entries that have a single time increment for more than one activity. Id. Stuart Maue asserts that entries of this type total 67.30 hours with $28,721.50 in associated fees. Id.

56.     Skadden, Arps has reviewed the time entries from the Report and believes that the reasonableness of the entries identified in the Report can be ascertained. For example, E. Davis's time for May 10, 2005, reads:

> FOOD LION – REVIEW AND ASSESS PROPOSED
> CHANGES BY S. HULSEY TO ORDER AND CALL
> WITH C. JACKSON ON SAME (.9)

Report Exhibit E at 3. The practical interpretation of the entry is the timekeeper's review of proposed changes to the Food Lion order and then a call with C. Jackson about the changes to the order. This entry is sufficiently descriptive to determine the reasonableness of services provided.

57.     Or, as another example, J. Mathew's time for June 6, 2005, reads:

> REVIEW REVISED RECLAMATION INFORMATION
> SENT BY XROADS AND UPDATE FILES (1.6)

Id. This entry leaves no doubt as to the timekeeper's activities. Here, Mr. Mathew reviewed the reclamation information provided by XRoads and added that information to the appropriate records. Skadden, Arps believes that this entry is sufficient to determine the nature of the services provided. There are many other instances identified by Stuart Maue where the services rendered can be  readily assessed from a review of the time entry.

16

58.     Further, the Report identifies as blocked entries certain tasks that by their

nature take significant time to complete and may inherently include a subtask.  For example,

S. Henry's time for May 23, 2005, reads:

> LEGAL ANALYSIS OF ISSUES RAISED REGARDING
> ASSET DISPOSITIONS AND RELATED LETTERS OF
> CREDIT; REVIEW MEMOS RE SAME AND DIRECT
> FOLLOW UP RESEARCH AND STRATEGIZE
> REGARDING LCS HELD IN EXCESS OF ACTUARIAL
> VALUE OF CLAIMS GOING FORWARD (2.9)

Id.  Had Ms. Henry written "analyze letters of credit in light of asset dispositions (2.9)," the entry

would not have been identified as containing blocked billing.  Skadden, Arps' time detail reflects

other similar entries.  For instance, S. Toussi's time for 1.5 hours on May 9, 2005, reads:

> REVIEW XROADS RECLAMATION REPORT AND
> ADDRESS ISSUES AND CORRESPONDENCE RE
> SAME

Report Exhibit E at 2.  If the entry merely provided "review reclamation report," the time entry

would be considered accurate and would not have been identified as blocked billed.  Attorneys

should not be penalized for providing the Court with more detail than required.  Otherwise,

paradoxically, the more detailed the description, the less likely that the services will be

compensated.  The above time entries taken from Report Exhibit E are accurate and provide the

Court with more information than is required under any reasonable interpretation of the

Guidelines.

59.     Notwithstanding the above, Skadden Arps has reviewed identified entries

in Report Exhibit E.  Attached at Exhibit E are revised task descriptions with additional detail.

Revised entries were provided to Stuart Maue in response to Stuart Maue's comments on the

preliminary report on the Second Application.

60.     In the Report, Stuart Maue states that "revised task descriptions with the added time increments would no longer be considered blocked billing." Report at 15.

J.      Intraoffice Conferences

61.     The Report identifies entries that describe intraoffice conferences. Report at 15-16. Stuart Maue asserts that such entries total 342.54 hours with $162,625.20 in associated fees. Id. at 16. According to Stuart Maue, of this amount, 110.95 hours with $57,762.25 in associated fees involved two or more Skadden, Arps timekeepers billing for the conference or meeting in issue. Id.

62.     Skadden, Arps timekeepers admittedly confer with one another in rendering services to the Debtors. It would be impossible to administer chapter 11 cases efficiently without intraoffice conferences. The Guidelines do not, however, prohibit compensation for intraoffice conferences. Instead, the Guidelines provide that conferences should identify the participants and the subject matters, and this has been done at Exhibit D-1.

63.     Bankruptcy courts have recognized the importance of multiple attorneys working together. See, e.g., In re Boston & Maine Corp., 776 F.2d 2, 10 (1st Cir. 1985) (holding that it is appropriate to have multiple attorneys working on large, complex tasks).

64.     Skadden, Arps' level of intraoffice conferences was appropriate in view of the complexity of these cases and, as a result, the requested compensation is reasonable. The ability of professionals at Skadden, Arps to confer internally among themselves, often involving professionals from different practice areas (such as banking, corporate, employee, insurance, or litigation), has contributed to the expeditious resolution of numerous issues in these cases. In turn, this has resulted in significant benefits for the Debtors' estates and their creditors.

K.    Nonfirm Conferences, Hearings, and Other Events

65.    The Report identifies instances where two or more Skadden, Arps professionals or paraprofessionals attended the same hearing, meeting or other event.  Report at 16-17.  Stuart Maue asserts that such entries total 287.15 hours with $162,323.25 in associated fees.  Id. at 17.  According to Stuart Maue, of this amount, 156.00 hours with $74,302.00 in associated fees involved two or more Skadden, Arps timekeepers billing for the conference or meeting in issue.  Id.

66.    Cases as large and complex as these cases require the services of professionals in multidisciplinary areas, such as banking, corporate, insurance and tax law.  First Application at 30, Second Application at 30, Third Application at 24 and Fourth Application at 29-31.  Skadden, Arps bankruptcy and non-bankruptcy attorneys have knowledge and experience that have allowed them to address pressing matters typical of large cases in an efficient manner.  See Second Application at 30.

67.    The Report identifies nonfirm conferences, hearings and meetings that typically fall into the following categories:  (a) utility meetings, (b) board meetings, (c) client meetings, (d) creditors' committee meetings, (e) asset disposition/lease meetings, (f) reclamation and PACA meetings, and (g) financing meetings.  See Report Exhibit G.

68.    Skadden, Arps' Second Application discusses each of the above categories and indicates why, at times, the services of more than one Skadden, Arps professional were required.  The services performed (and the corresponding benefits received) would not have been possible without team work and coordination between different Skadden, Arps professionals.  Accordingly, Skadden, Arps submits that the compensation sought is reasonable and should not be denied.

L.      Personnel Who Billed 10.00 or Fewer Hours

69.     The Report identifies fifteen timekeepers who billed 10.00 or fewer hours.

Report at 18.  Stuart Maue asserts that their entries total 74.70 hours with $25,843.00 in

associated fees.  Id.  Stuart Maue states:

> A review of the fee entries of timekeepers who bill relatively few hours to a
> matter allows a determination of whether these timekeepers are duplicating
> the work of others, whether the use of these timekeepers increases the cost
> to the estate because of orientation or the "getting-up-to-speed" that may
> be required, or whether the small amount of the time billed contributed to
> the advancement of the case.

Id.

70.     Neither the Bankruptcy Code nor the Guidelines penalize a firm on the

basis that a timekeeper has billed too few hours.  To the contrary, Skadden, Arps submits that the

services performed were reasonable and necessary.  Below is a chart identifying the timekeepers

and describing the work performed:

| NAME | HOURS | GENERAL DESCRIPTION OF MATTERS WORKED ON |
|---|---|---|
| Amalu, N. | 7.00 | MS. AMALU, LEGAL ASSISTANT, CLOSING. |
| Burgos, B. | 6.20 | MS. BURGOS, LEGAL ASSISTANT, DANNON'S SETOFF MOTION. |
| Engelhardt, L. | 2.50 | MS. ENGELHARDT, ASSOCIATE, CORPORATE RESTRUCTURING, FINANCING FACILITY AND INTERIM COMPENSATION. |
| Mack III, W. | 2.40 | MR. MACK, ASSOCIATE, BANKING & INSTITUTIONAL INVESTING, FINANCING FACILITY. |
| Olshan, R. | 9.70 | MS. OLSHAN, PARTNER, EMPLOYEE BENEFITS, RETENTION AND SEVERANCE PROGRAMS. |
| Reaves, K. | 6.50 | MS. REAVES, UCC SPECIALIST, UCC SEARCHES. |
| Reshtick, A. | 5.50 | MR. RESHTICK, ASSOCIATE, TAX, STATE AND LOCAL TAX ISSUES. |
| Sambur, K. | 5.00 | MR. SAMBUR, ASSOCIATE, CORPORATE-RESTRUCTURING, ORDINARY COURSE PROFESSIONALS. |
| Schwartz, W. | 1.70 | MR. SCHWARTZ, PARTNER, REAL ESTATE, INSURANCE AND LEASES. |
| Stuart, C. | 7.50 | MR. STUART, ASSOCIATE, REAL ESTATE, LEASEHOLD MORTGAGES. |
| Teicher, S. | 3.00 | MS. TEICHER, PARTNER, BANKING AND INSTITUTIONAL INVESTING, FINANCING FACILITY. |
| Tung, T. | 5.00 | MS. TUNG, LITIGATION LEGAL ASSISTANT, |

| NAME | HOURS | GENERAL DESCRIPTION OF MATTERS WORKED ON |
|---|---|---|
| | | EXCLUSIVITY. |
| Wharton, J. | 7.20 | MR. WHARTON, ASSOCIATE, CORPORATE RESTRUCTURING, KEY EMPLOYEE RETENTION PROGRAM. |
| Wilson, J. | 5.00 | MS. WILSON, ASSOCIATE, REAL ESTATE, REAL PROPERTY LEASES. |
| Yeung, C. | 0.50 | MS. YEUNG, LEGAL ASSISTANT, BRIEFS. |

Eight of the fifteen timekeepers are non-bankruptcy specialists.  These timekeepers used their specialized knowledge to assist in the bankruptcy cases without the need for any orientation time to perform their services.  Of the remaining timekeepers, four are non-bankruptcy paraprofessionals who assisted in isolated matters and did not require knowledge of the bankruptcy cases to perform their services.  Lastly, three timekeepers are bankruptcy professionals, whose time similarly did not result in increased costs to the estates.  Both Ms. Engelhardt and Mr. Sambur worked many hours performing substantial services for the estates in the first interim period.  In the second interim period, these associates performed isolated tasks. Mr. Wharton was involved in an isolated research project.

M.    Long Billing Days

71.    The Report identifies thirteen timekeepers who billed more than 12.00 hours a day during the interim period.  Report Exhibits I-1, I-2.  Stuart Maue asserts that entries total 872.80 hours with $369,037.50 in associated fees.  Report at 20.  Stuart Maue states:

> Courts have generally held that billable time for professional services should include only those tasks that relate directly to work for the client. Professionals necessarily must spend some portion of each day on personal matters (such as meals and breaks) and frequently spend time on administrative matters, such as training or supervision of others. Professionals may periodically work extraordinarily long hours without many breaks because of the demands of the representation.  However, such long hours are generally related to identifiable circumstances such as court deadlines, travel, or event attendance.

Id. at 19-20.

72.     The Guidelines do not state or suggest, however, that billing in excess of 12.00 hours a day is not compensable.  Stuart Maue acknowledges that "[p]rofessionals may periodically work extraordinarily long hours without many breaks because of the demands of the representation."  Id. at 19.  That is the case here, as evidenced by the Second Application Exhibits C-1 through G-1 and Fee Report Exhibits I-1 and I-2.

73.     The hours and charges calculated by Stuart Maue include all hours on all days whenever a timekeeper exceeded 12.00 hours (including a non-working travel time entry).  Skadden, Arps submits that a more relevant calculation is the total number of hours exceeding 12.00 hours per day (without including any non-working travel time).  That calculation, shown in the chart below, is not particularly large in the context of these cases.

| TOTAL HOURS BILLED IN EXCESS OF 12.00 HOURS A DAY | TOTAL HOURS BILLED IN INTERIM PERIOD |
|---|---|
| 116.80 | 9,163.00[6] |

74.     Likewise, the instances in which timekeepers billed in excess of 12.00 hours a day are relatively few, as shown by the chart below created from Report Exhibits I-1 and I-2:

| Timekeeper | Hours Billed in Excess of 12.00 Hours for Interim Period |
|---|---|
| Bonachea, L | 1.7 |
| Eichel, S | 15.2 |
| Feld, S | 1.8 |
| Horwitz, M | 1.4 |
| Kaloudis, D | 8.3 |
| LaMaina, K | 34.6 |
| Mathew, J | 12.7 |

---

[6]     Second Application at v.

22

| Timekeeper | Hours Billed in Excess of 12.00 Hours for Interim Period |
|---|---|
| McDonald Henry, S | 5.8 |
| Matz, T | 8.2 |
| Ravin, A | 3.5 |
| Roman, J | 2.0 |
| Toussi, S | 3.9 |
| Turetsky, D | 17.7 |

75.    The hours billed by timekeepers in excess of 12.00 hours per day during the five-month interim period are minimal, especially given that (a) Skadden, Arps had limited time to review and revise the reclamation analysis of approximately 480 reclamation demands (asserting aggregate claims of approximately $125 million) in connection with preparing the Statement of Reclamation, (b) the firm assisted the Debtors in addressing numerous utility company demands requiring the immediate attention of Skadden, Arps professionals, (c) significant time was needed to review and analyze the Debtors' leases in connection with their expedited footprint analysis, (d) there were numerous dispositions of assets, often on an expedited basis, (e) the firm assisted the Debtors in rapidly developing the Debtors' chapter 11 key employee retention plan, and (f) Skadden, Arps advised the Debtors with respect to numerous pressing issues related to the appointment of the equity committee and efforts to appoint a retiree committee.  In light of these factors, the number of hours in question is not large.

76.    In sum, the Second Application reflects that Skadden, Arps spent the time, as appropriate, to meet the needs of the client.

N.    Administrative/Clerical Activities

77.    The Report identifies activities considered by Stuart Maue to be administrative or clerical in nature.  Stuart Maue states:

> Clerical activities include tasks that may be effectively performed by administrative assistants, secretaries, or support personnel.  The performance of clerical or secretarial tasks by attorneys, accountants, paralegals, and other paraprofessionals generally constitutes nonbillable

time and should be delegated to nonbilling staff members.  Courts have held that time spent performing administrative or clerical activities such as filing, organizing and updating files, retrieving and distributing documents, checking the docket, calendaring events, photocopying, scanning documents, training and assignment of tasks to staff members, or "supervising" any of the foregoing is not compensable.

Report at 20-21.

78.    The administrative and clerical activities were grouped by Stuart Maue as follows:

| ADMINISTRATIVE AND CLERICAL TASKS | | | |
|---|---|---|---|
| CATEGORY OF ACTIVITY | EXHIBIT | HOURS | FEES |
| CONFLICTS SCREENING | J-1 | 12.80 | $2,626.50 |
| EXTRANET RELATED ACTIVITIES | J-2 | 37.60 | $5,848.00 |
| ADMINISTRATIVE/CLERICAL ACTIVITIES BY PARAPROFESSIONALS | J-3 | 482.30 | $62,371.00 |
| ADMINISTRATIVE/CLERICAL ACTIVITIES BY PROFESSIONALS | J-4 | 11.90 | $4,817.50 |

*Conflicts Screening*

79.    The Report identifies tasks relating to conflicts screening as an administrative and clerical task.  Stuart Maue asserts that entries total 12.80 hours with $2,626.50 in associated fees.  Report at 21.  Of the 12.8 hours, 8.8 hours were rendered by paraprofessionals.

80.    Conflicts screening work was performed by Skadden, Arps in connection with its continuing duty to make supplemental declarations.  Under such circumstances, the services are compensable.  The actual conflicts searches are performed by administrative staff whose time is not charged to the estates.  After the searches have been performed, however, conflicts screening work is performed by professionals, whose time is appropriately charged to the estates.

81.     Skadden, Arps prepared a brief memorandum to Stuart Maue that discusses compensation for conflicts screening activities.  This memorandum is attached at Appendix 1.

*Extranet Related Activities*

82.     The Report contains a category titled "Extranet Related Activities" and identifies entries contained within this category as administrative and clerical tasks.  Report at 21. Stuart Maue asserts that entries in that category total 37.60 hours with $5,848.00 in associated fees.  Id.  Activities performed in this category were by four timekeepers.  Of the 37.60 hours in question, 37.50 hours were rendered by paraprofessionals.

83.     The services performed were necessary.  The extranet is an informational website for parties in interest.  The Bankruptcy Code envisions utilizing this type of communication tool for parties in interest in chapter 11 cases.  See 11 U.S.C. § 1102(a)(3) (requiring committee to provide creditors with access to information).

*Administrative/Clerical Activities by Paraprofessionals*

84.     The Report identifies certain time entries of paraprofessionals as relating to administrative/clerical activities.  Report at 21.  Stuart Maue asserts that such entries total 482.30 hours with $62,371.00 in associated fees.  Id.

85.     Items identified in Report Exhibit J-3 include services that should be rendered by a paraprofessional, including the following:  (a) service of motions and notices, (b) research/retrieval of case documents, including pleadings from the docket, (c) preparation of case communication lists and documents, (d) revision of case calendar and working group lists, (e) preparation and filing of documents, and (f) preparation and distribution of media updates.

25

These services are necessary in the administration of chapter 11 cases. It is more efficient and economical for a paraprofessional, rather than an attorney, to perform the needed services, and Skadden, Arps respectfully submits that the services are compensable.

86.    Paraprofessionals are trained to provide the above-listed services. Such services require specialized skills of paraprofessionals and, accordingly, were appropriately assigned to paraprofessionals. Especially since the advent of electronic case filing, docket searches and filings require specialized training, for which secretaries and clerical staff are not trained. The majority of entries identified by Stuart Maue resulted from services of the primary paraprofessional on these cases. The delegation of these services primarily to one paraprofessional confirms an effort to utilize efficient case management practices.

*Administrative/Clerical Activities by Professionals*

87.    The Report identifies certain time entries of professionals as administrative/clerical activities. Report at 21. Stuart Maue asserts that entries total 5.20 hours with $2,001.00 in associated fees. Id.

88.    Skadden, Arps acknowledges that a limited number of time entries describe work faxing and mailing documents. A year after the fact, however, it is not possible to identify the exigencies of situations that might explain the necessity of performing these tasks. The small percentage of such entries supports the fact that Skadden, Arps uses clerical and secretarial staff whenever possible.

89.    Even though Skadden, Arps believes that its services should be fully compensable, Skadden, Arps has attached at Exhibit J-4 revised entry descriptions with additional detail that were provided to Stuart Maue in response to Stuart Maue's comments on the preliminary report on the Second Application.

26

O.    Legal Research

90.    Stuart Maue identifies activities describing legal research so that a determination may be made on whether the issues researched should be familiar to experienced attorneys, whether the research is performed by attorneys with the appropriate level of experience, and whether the fees billed for research are otherwise reasonable, necessary and relevant. Report at 23. Stuart Maue asserts that such entries total 576.70 hours with $240,139.00 in associated fees.

91.    The matter categories identified on Report Exhibit K as having the most research-related hours — Claims. Admin. (Reclamation/Trust Funds), Creditor Meeting/Statutory Committees, Executory Contracts (Personalty) and Lease (Real Property) — contain time entries for heavily litigated matters. The Second Application discusses these matters in detail.

92.    Further, as noted above, Skadden, Arps utilized forty-one discrete matter categories in these cases. Legal research services recorded in specific categories render the services identifiable. This, plus the fact that the Second Application discusses the services performed, allows a court to determine the reasonableness of the services provided.

93.    The legal research services performed were necessary and beneficial for the estates, creditors and other parties in interest in these cases and the corresponding compensation, in light of the services performed, is reasonable.

P.    Travel

94.    The Report acknowledges that Skadden, Arps voluntarily eliminated its fees for over 34 hours of travel time. Report at 24. These fees would otherwise have been compensable. The Report further acknowledges that billed travel entries total only 7.30 hours with associated fees of $4,394.00. Id.

95.    As stated in the Second Application, "Skadden, Arps did not charge for non-working travel time through July 2005 . . . As of August 2005, hours billed for non-working travel time represent 50% of the actual time spent traveling." Second Application at v. Stuart Maue acknowledges that non-working travel time after July 2005 was billed at 50% of the actual travel time. Report at 24.

Q.    Summary of Projects

96.    The Report confirms that Skadden, Arps categorized its services into twenty-nine billing categories (out of the forty-one possible categories) in the interim period, including Retention/Fee Matters (SASM&F) ("SASM&F") and Retention/Fees/Objections (Others) ("Others"). Report at 25.

97.    Stuart Maue states that some billing entries in categories other than SASM&F and Others appear to be related to either the SASM&F or the Others categories and, as a result, it reassigned these billing entries to the SASM&F or the Others categories, respectively. Id. Skadden, Arps has endeavored to record time performed for work in the appropriate matter category. Skadden, Arps, however, recognizes that there may be entries recorded in matters that may be appropriately also recorded in another category, because this case is large, and thousands of entries were recorded by various timekeepers. Skadden, Arps believes that services performed are identifiable and compensable in these cases, including services performed in the specifically mentioned categories, SASM&F and Others.

98.    Regarding the SASM&F category, attached as Appendix 1 is a brief memorandum provided to Stuart Maue that discusses compensation for services rendered in connection with fee applications and retention applications. These services are compensable in accordance with the facts of these cases, the Bankruptcy Code and the Guidelines themselves.

28

99.     Regarding the Others category, chapter 11 cases, especially large, complex chapter 11 cases, often require the efforts of multiple firms.  The Others category involves Skadden, Arps' services in connection with assisting the Debtors in retaining other firms and working with other firms to manage these cases effectively.  These services are described in detail in the Second Application 25-26 and are compensable because of their necessity for the Debtors' cases.

100.     The Guidelines suggest that the services rendered in the SASM&F category and the Others category are compensable.  For example, the Guidelines include the following as suggested project categories for bankruptcy cases:

> Fee/Employment Applicants:  Preparation of employment and fee applications for self or others; motions to establish interim procedures.
>
> Fee/Employment Objections:  Review of and objections to the employment and fee applications of others.

Guidelines Exhibit A.  These categories and services are included in the SASM&F category and in the Others category in the Second Application.

101.     The services performed during the interim period for all categories of services were necessary, and the compensation requested, in light of the services provided, is reasonable.

## Expenses

A.     Billing Discrepancies

102.     Stuart Maue reviewed the expense items for apparent irregularities such as double billing, wrong case billing, or missing expense descriptions.  Report at 29.  "No technical billing discrepancies were identified in the Application."  Id.

B.    Airfare

103.    The Report identifies air/rail travel charges of $13,643.14.  Report at 30.

Stuart Maue states that the descriptions of these expenses do not indicate the type of travel, the

fare class, or the origination or destination.  Id.

104.    Skadden, Arps provided additional information to Stuart Maue regarding

the air/rail travel in response to Stuart Maue's comments, as stated in the Report.  See Exhibit N-1;

Report at 30-31.  Additional information included the "timekeeper name, the origination and

destination of the travel, and the fare class,"  Report at 31.  Per Exhibit N-1, the air travel charges

are coach charges.  See Report at 31.

105.    The submitted information resolved any outstanding issues on this matter.

C.    Meals

106.    The Report identifies meal charges of $1,272.99.  Report at 31.  Stuart

Maue states that Skadden, Arps does not provide the location of the meals or the number of

attendees.  Id.

107.    Skadden, Arps provided additional information to Stuart Maue regarding

the meal charges in response to Stuart Maue's comments, as stated in the Report  See Exhibit N-2;

Report at 31.  Additional information included "the timekeeper name, the location of the meal, the

dates of the trip, and the number of attendees."  Report at 31.  Following the submission of the

additional detail, Stuart Maue identifies in the Report a charge of $44.39.  Report at 32.  Skadden,

Arps has provided additional detail on the charge at Exhibit N-2.  Skadden, Arps believes that the

submitted information resolves any outstanding issues on this matter.

D.    Car Service

108.    The Report identifies car service charges of $648.67.  Report at 32.  Stuart Maue states that the descriptions do not include the origination or destination of the travel.  Id.

109.    Skadden, Arps provided additional information to Stuart Maue regarding the car services charges in response to Stuart Maue's comments, as stated in the Report.  See Exhibit N-3;[7] Report at 32.  Additional information included "the timekeeper name, the location of the car service charge, and the dates of the trip."  Report at 32.

110.    Skadden, Arps believes that the submitted information resolved any outstanding issues on this matter.

E.    Other Travel Expenses

111.    The Report identifies "Out of Town Travel" charges of $9,429.62.  Report at 33.  Stuart Maue states that Skadden, Arps does not identify the character of the expenses but provided a date, amount and the timekeeper name.  Id.

112.    The "Out-of-Town Travel" expense category encompasses business-related travel and lodging expenses, which are reimbursable under the terms of Skadden, Arps' retention.  In response to Stuart Maue's comments on the preliminary report, Skadden, Arps provided additional information regarding the "Out-of-Town Travel" charges.  Report at 33.  Following submission of the additional detail, the Report indicates that certain entries do not provide information regarding the nature of the charge.  Id. at 33-34.

113.    Skadden, Arps provides at Exhibit N-4 additional information for all charges and believes that the submitted information resolves any outstanding issues on this matter.

---

[7]    Upon the review of Exhibit N-3, Skadden, Arps determined that $23.05 of the car service charge is overhead under the Debtors' bundled rate structure.  Skadden, Arps will reduce its fees in this amount.

31

F.    Photocopies

114.    The Report identifies photocopy charges of $16,110.70.  Report at 34.
Stuart Maue asserts "[t]he Application stated that the requested rate for these internal
photocopies was $0.10 per page."  Id.  Consistent with its retention agreement and as indicated in
the Second Application at 32, Skadden, Arps billed for photocopies at the rate of $0.10 per page.
Additional detail on the photocopy charges was provided to Stuart Maue and is attached at
Exhibit N-5.  Skadden, Arps believes that the submitted information resolved any outstanding
issues on this matter.

115.    Further, the Report identifies electronic document management charges of
$1,011.02.  Report at 34.  Electronic document management includes scanning, printing and OCR
processing.  Id.  Under the terms of Skadden, Arps' retention, it is entitled to reimbursement for
electronic document management.  Consistent with its retention agreement, costs related to
electronic document management are billed by Skadden, Arps at rates comparable to those
charged by outside vendors.  Additional detail on the electronic document management charges
was provided to Stuart Maue and is attached at Exhibit N-5.  Skadden, Arps believes that the
submitted information resolved any outstanding issues on this matter.

116.    The Report also identifies an outside reproduction charge of $8,558.62.
Report at 34.  Outside reproduction is used when photocopy reproductions are either too large or
Skadden, Arps' internal copy center is unable to process the job because of the constraints of the
job.  When Skadden, Arps is unable to process the work internally, it uses the services of outside
vendors.  Additional detail on the outside reproduction charge was provided to Stuart Maue and
is attached at Exhibit N-5.  Skadden, Arps believes that the submitted information resolved any
outstanding issues on this matter.

G.      Computer-Assisted Legal Research

117.    The Report identifies Westlaw and LEXIS/NEXIS charges of $58,398.69. Report at 34. Stuart Maue asserts "[t]he Application stated that charges for on-line computerized research are billed at the actual amounts charged by vendors, which have been reduced by discounts the firm receives from vendors." Id. As discussed in the Second Application and Skadden, Arps' retention agreement, computerized research is billed at provider cost. Second Application at 32.

H.      Local Meals

118.    The Report identifies a charge as potential overhead titled "Contracted Catering-NY" of $4,217.63. Report at 34-35. Skadden, Arps does not, however, charge for overhead, and this charge is not related to overhead. Under the terms of Skadden, Arps' retention, Skadden, Arps recharges clients for the costs of furnishing meal services during meetings. See Exhibit A. Here, the expenses were business related and at Skadden, Arps' cost.

119.    Stuart Maue states that Skadden, Arps does not include the purpose, location or number of attendees for catering charges. Report at 35. Skadden, Arps provided additional information to Stuart Maue in response to Stuart Maue's comments, as stated in the Report. See Exhibit P; Report at 36. Additional information included "the timekeeper name, the number of attendees, and the type of meal (delivery or buffet lunch)." Id. at 36. As indicated above, the expenses were all business related.

I.      Postage

120.    The Report identifies postage charges of $4,152.02. Report at 36. Under the terms of Skadden, Arps' retention, Skadden, Arps is entitled to reimbursement for postage.

J.     Telephone Charges

121.    The Report identifies long-distance telephone charges of $120.00 and "charges described only as 'Telephone Expense'" of $1,248.62.  Report at 36-37.  Stuart Maue states:

> Stuart Maue is unable to determine if the charges described as "Telephone Expense" are local telephone charges or cellular telephone charges, which are both, according to the U.S. Trustee Guidelines, considered to be part of the firm's overhead expenses.

Id.  The charges in question are all long-distance charges.  Skadden, Arps does not bill its clients for local telephone calls.  Further, the Second Application contains no cellular charges.

122.    Skadden, Arps provided additional information to Stuart Maue in response to its comments on the preliminary report and believes that there are no outstanding issues on this matter.

K.     Seminar/Conferences

123.    The Report identifies (a) "Business Dev Seminars/Conf – Marriott International" charge of $7,000.00 and (b) "Rentals-Office Equipment" charge of $2,209.60.  Report at 37.

124.    Stuart Maue states in the Report "[b]ased on a review of the fee entries, these charges appeared to relate to the auction held on July 18, 2005."  Id.  In response to Stuart Maue's comments on the preliminary report on the Second Application, Skadden, Arps provided additional detail to Stuart Maue on the charges that is attached at Exhibit R.  As stated in the Report, Skadden, Arps confirmed that the charges were incurred in connection with the main auction of numerous Winn-Dixie leaseholds.  Id. at 37-38.  This auction required Skadden, Arps to rent a number of rooms at a convention hotel to hold the large crowd that attended the auction.  Moreover, equipment, food and beverage expenses were also necessary for the all-day gathering.

34

In short, the expenses were necessary.  Skadden, Arps believes that the submitted information resolved any outstanding issues on this matter.

L.        Vaguely Described Expenses

125.    The Report identifies two charges titled "Miscellaneous Expense" of $276.34.  Report at 38.  Stuart Maue states that it is unable to determine what is included in these charges.  Id.  In response to Stuart Maue's comments on the preliminary report, Skadden, Arps provided additional information on these charges, as stated in the Report.  The $251.34 amount represents a charge incurred by S. Henry on May 9, 2005.  Ms. Henry rented a compact car in Jacksonville, Florida to travel to the Debtors' headquarters.  The $25.00 amount represents a charge incurred by A. Ravin on May 11, 2005 for M. Chlebovec of Winn-Dixie for a business trip lodging charge.  The additional information that was provided is attached at Exhibit S.  Skadden, Arps believes that the submitted information resolved any outstanding issues on this matter.

**Conclusion**

126.    Skadden, Arps has performed substantial and necessary services in these cases.  Skadden, Arps believes that the fees and expenses billed to the Debtors were reasonable and necessary, subject to the reductions agreed to in this Response.

127.    Skadden, Arps believes that its time entries and the Fee Applications will allow the Court to determine the necessity and benefit of Skadden, Arps' services.

DATED:  August 21, 2006

SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP

/s/  *Sally McDonald Henry*
D. J. Baker
Sally McDonald Henry
Rosalie Walker Gray
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

Attorneys for the Debtors

36

**EXHIBIT A**

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

DIRECT DIAL
(212) 735-2150
DIRECT FAX
(917) 777-2150
EMAIL ADDRESS
DJBAKER@SKADDEN.COM

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

February 7, 2005

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

Laurence B. Appel, Esq.
Senior Vice President and General Counsel
Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3699

RE:    Engagement Agreement with Skadden

Dear Larry:

We are pleased that Winn-Dixie Stores, Inc., for itself and each of its subsidiaries for which there is no disqualifying conflict and which Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden" or the "Firm") has agreed to represent (collectively, the "Company"), has decided to engage Skadden as special counsel in connection with the matters described below in the "Scope of Engagement" section of this Engagement Agreement and such other matters as are assigned to us in the future and that we agree to undertake (the "Engagement"). Accordingly, the Engagement is limited to those specific matters enumerated in and/or contemplated by this Engagement Agreement.

This letter sets forth the terms of our engagement arrangements for all matters (whether pending or prospective), including staffing, fees and waivers, the scope of our engagement, the basis on which the Firm will present its bills for fees, related charges and disbursements, and certain limitations on the Firm's services arising from potential conflicts of interest. Our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

## Scope of Engagement

We have agreed to represent the Company as special counsel in the Company's efforts to work out its present financial circumstances, which may include restructuring its financial affairs and capital structure, in addition to ongoing and future representation of the Company on matters for which Skadden is or in the future may be engaged by the Company not related to the Company's efforts to work out its present financial circumstances. The services to be provided by Skadden in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement which the Firm is requested and is able to provide and which are consistent with its ethical obligations. As legal counsel, we are not in a position to, and the

Laurence B. Appel
February 7, 2005
Page 2

Company has not retained us to, provide financial advice. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services to be rendered by us and the scope of our engagement.

In addition to certain matters with respect to which we are providing legal services to the Company, in connection with the Company's restructuring activities (whether outside of court or in connection with the preparation for, commencement and prosecution of chapter 11 reorganization cases), the Engagement may involve advice as to corporate transactions and corporate governance, negotiations, out-of-court agreements with creditors, equity holders, prospective acquirers and investors, review of documents, preparation of agreements, review and preparation of pleadings, court appearances and such other actions as both of us deem necessary and desirable. The Engagement also will include advice to, and representation of the Company, as debtors and debtors-in-possession, should the Company seek relief pursuant to the provisions of the Bankruptcy Code subject to the approval of our retention by the Bankruptcy Court.

If the Company determines that reorganization cases under chapter 11 of the Bankruptcy Code are appropriate, we will prepare for the filing of the chapter 11 petitions, including review of documents and preparation of the petitions with supporting schedules and statements, subject to appropriate coordination with King & Spalding LLP, which has commenced such preparations, to avoid duplication of effort and expense. During the cases and subject to our ethical obligations discussed above, we will advise and consult on the conduct of the cases, including all of the legal and administrative requirements of operating in chapter 11; prepare such administrative and procedural applications and motions as may be required for the sound conduct of the cases; prosecute and defend litigation that may arise during the course of the cases; consult with you concerning and participate in the formulation, negotiation, preparation and filing of a plan or plans of reorganization and disclosure statement(s) to accompany the plan(s); review and object to claims; analyze, recommend, prepare, and bring any causes of action created under the Bankruptcy Code; take all steps necessary and appropriate to bring the cases to a conclusion; and perform the full range of services normally associated with matters such as this which the Firm is in a position to provide. With respect to the foregoing, we will allocate appropriate responsibilities to King & Spalding LLP in consultation with the Company, but in all such matters it is our understanding that the Company intends for us to act as the Company's principal bankruptcy counsel.

In the event that chapter 11 cases are commenced and our retention is authorized, our representation will include, as noted above, serving as principal bankruptcy counsel to the debtors-in-possession under a general retainer, subject to court approval. Such representation also will encompass all out-of-court planning and negotiations attendant to these tasks. Although it is hoped that litigation can be avoided, subject to ethical constraints regarding conflicts of interest, we also will be available to serve the Company in any litigation capacities that become necessary to the extent that any required court approval is obtained.

## Case Management and Coordination of Outside Counsel

The Company is presently using more than one law firm for representation of its interests on substantive matters. It is likely that more than one law firm may be needed for such representation, particularly to represent the Company in connection with the numerous labor-intensive day-to-day tasks associated with potential chapter 11 cases. Other than the general

· Laurence B. Appel
February 7, 2005
Page 3

representation of the Company by Skadden as principal restructuring counsel and in the cases (if filed) pursuant to this Engagement Agreement, the Company will continue to have discretion to assign specific tasks to co-counsel, adjunct counsel, or special counsel (collectively, "Other Counsel"), as the case may be. If, as outlined below, we are unable to obtain court approval for all matters in potential chapter 11 cases that you wish us (and we agree) to undertake, our representation would include as many of those matters as are approved. We are committed to working with the Company and in full cooperation with Other Counsel to manage the Engagement on a cost-efficient and productive basis. To the extent possible, given the nature and magnitude of the Engagement, steps have been taken and should continue to be taken by the Company to coordinate tasks and, when practical, to divide these tasks to avoid unnecessary duplication of effort between us and Other Counsel.

## Engagement Personnel

I will coordinate all Engagement matters on behalf of Skadden Arps. Additional lawyers, including those in other practice areas, will be added to the Engagement on an as needed basis.

## Fees, Charges and Disbursements

Our fees will be based primarily on the time involved in the Engagement and our bundled hourly time charges. A list of our current bundled hourly time charges using the Firm's bundled rate structure as of January 1, 2005 is attached as Exhibit A. As part of the Firm's ordinary business practices, hourly time charges are periodically reviewed and revised.

Our final fee statement to the Company normally would reflect a variety of factors. These factors include bundled hourly time charges, the significance of the Firm's role, the importance of the Firm's expertise, the complexity of the matter, the outcome of the matter, the Firm's contribution to the results obtained, the size and significance of the matter, the intensity and duration of the Firm's efforts, the amount of fees we have received in other comparable matters, and the views of our client. As to the latter factor, we consider it very important and would not submit a final statement for services rendered without having discussed our fee in advance with the Company based on the factors mentioned above and obtaining your concurrence.

As to billing, we will submit to the Company for payment a statement with respect to all matters for which we are responsible on not less than a monthly basis. At each matter's conclusion, we will submit a final statement for services rendered that will be based upon our bundled hourly time charges and, if appropriate, the factors outlined above, and that would credit all prior payments. Each statement submitted would be accompanied by a summary of attorney time showing the time worked by each lawyer working on an Engagement matter and the guideline hourly rate for each lawyer. In addition, our billing statements will include charges and disbursements incurred by us in the course of performing legal services in accordance with our standard practice as described in the summary attached as Exhibit B, which may be periodically updated.

Laurence B. Appel
February 7, 2005
Page 4

From time to time, the Company may request a fee range estimate for a particular Engagement matter. Any such estimate would be premised upon certain assumptions, including, but not limited to, completion of the matter by a particular target date, no unusual issues or problems arising, no litigation, counsel for the other parties sufficiently experienced and competent to perform such counsel's normal functions in this type of matter and so forth. In such situations, we will respond promptly to the Company's request in writing although it is agreed that such estimates shall not constitute a fee cap or amendment of this Engagement Agreement and all such discussions and written estimates would be handled through the undersigned in respect of the overall Engagement on behalf of the Firm.

### Fee Structure and Retainers

It is customary in matters of this nature for us to receive a reasonable retainer/on account payment and to be paid promptly for services rendered and charges and disbursements incurred on behalf of the Company, including payment for the services rendered and charges and disbursements incurred prior to the date hereof. Given the size and complexity of the Company's affairs, we have requested a payment in the amount of $500,000.00, representing a retainer/on account payment for professional services rendered and to be rendered and charges and disbursements incurred by us to the Company's account in connection with our representation of the Company including with respect to any consensual non-judicial restructuring as well as any initial preparation that you authorize for cases under chapter 11 of the Bankruptcy Code that may be filed by or against the Company (the "Initial Retainer"). We would appreciate your sending the Initial Retainer by wire transfer to:

CITIBANK, N.A.
460 West 33rd Street
NEW YORK, NEW YORK

ABA #021-000089
FOR CREDIT TO:
ACCOUNT # 3006-0143 of Skadden, Arps, Slate, Meagher & Flom LLP

The Company agrees to supplement the Initial Retainer from time to time during the course of the Engagement in such amounts as we mutually shall agree are reasonably necessary to maintain the Initial Retainer at a level that will be sufficient to fund Engagement fees, charges and disbursements to be incurred for time periods to be covered by the Initial Retainer. Should the Company subsequently decide to seek chapter 11 relief, we may also require an additional retainer/on account payment to supplement the Initial Retainer in order to cover Engagement fees, charges and disbursements to be incurred during the initial phase of the reorganization cases (the "Filing Retainer"). We will determine and discuss the amount of the Filing Retainer with you prior to the initiation of any chapter 11 case or at such earlier time as either we or the Company deems appropriate or desirable. Of course, the reasonableness of the Filing Retainer remains subject to review by the court in any ensuing cases.

In the future, we will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above. Each invoice constitutes a request for an interim payment against the reasonable fee to be determined

Laurence B. Appel
February 7, 2005
Page 5

at the conclusion of our representation. Upon transmittal of the invoice, the Firm shall draw upon the Initial Retainer (as may be supplemented from time to time by supplemental retainers or the Filing Retainer) in the amount of the invoice. The Company agrees upon submission of each such invoice, if so requested by the Firm, to wire the invoice amount to us as replenishment of the Initial Retainer (together with any supplemental amount to which the Firm reasonably requests), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice, up to the remaining balance, if any, of the Initial Retainer (as may be supplemented from time to time by supplemental retainers or the Filing Retainer) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

In the event that the Company subsequently determines to seek bankruptcy court protection and subject to the terms of any professional compensation order entered in the Company's chapter 11 cases, the issuance of our periodic invoice shall constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of the representation. Although the Company may pay us from time to time for services rendered in our capacity as special counsel for various matters, some fees, charges, and disbursements incurred before the filing of bankruptcy petitions (voluntary or involuntary) may remain unpaid as of the date of the bankruptcy filings. Any portion of the Initial Retainer (as may be supplemented from time to time by supplemental retainers or the Filing Retainer) not otherwise properly applied will be held by us for the payment of any such unpaid fees, charges and disbursements (whether or not billed).

If the Company determines to commence a chapter 11 case, the unused portion, if any, of the Initial Retainer (as may be supplemented from time to time by supplemental retainers or the Filing Retainer) will be applied to any unpaid prepetition invoices and unbilled fees, charges and disbursements, although any requisite court permission will be obtained in advance. Postpetition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court, it being agreed and understood that the unused portion, if any, of the Initial Retainer (as may be supplemented from time to time by supplemental retainers or the Filing Retainer) shall be held by us and applied against the final fee application filed and approved by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nonetheless remain liable for payment of court approved postpetition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503 (b)(1).

If a dispute develops about our fees, you may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than one thousand and less than fifty thousand dollars.

## Confidentiality and Related Matters

Confidential communications between a client and counsel are ordinarily privileged, but the commencement of a bankruptcy case may severely limit this attorney-client privilege. Specifically, if a trustee is appointed in any case concerning a corporate debtor or partnership, the trustee will be able to obtain from us or other counsel and disclose to others information communicated by the Company to counsel. Some courts also have held that an examiner may invade the attorney-client privilege.

Because of the nature of the Firm's practice (involving more than 1,600 lawyers throughout the United States and in various international offices), from time to time we concurrently may represent one client in a particular matter and the adversary of that client in an unrelated matter. Thus, for example, while representing the Company, we may represent a third party who is adverse to the Company in a matter unrelated to the matters covered by this Engagement Agreement. In addition, while representing the Company, we may represent an account debtor of the Company as a debtor in a reorganization case or in connection with out-of-court negotiations with such entity's creditors concerning that entity's ability to pay its debts generally.

Despite any such concurrent representation, we strictly preserve all client confidences and zealously pursue the interests of each of our clients. The mutual understanding reflected in this Engagement Agreement, including the waivers set forth below, are, of course, premised on the Firm's adherence to its professional obligation not to disclose any confidential information or to use it for another party's benefit.

With respect to third parties and based on our initial discussions concerning the Company's capital structure and given the Company's business relationships, we have identified certain entities involved with the Company as our clients, or as affiliates of our clients, on matters unrelated to the Company including, but not limited to, bank group members Amsouth Bank, Bank One, The CIT Group/Business Credit, Inc., Congress Financial Corporation (Florida), Fleet Retail Group, Inc., General Electric Capital Corporation, GMAC Commercial Finance LLC, Merrill Lynch Capital, PNC Business Credit, Suntrust Bank, UBS AG, Wachovia Bank, National Association, Wachovia Capital Markets, LLC, and Wells Fargo Foothill, LLC, as well as other entities that are providing financial accommodations and services to the Company or have other material relationships. (In the event that chapter 11 cases are commenced, we will prepare a disclosure summary that will be publicly disclosed and will be updated periodically thereafter in connection with the filing of interim fee applications and as otherwise required.) Accordingly, while for purposes of this Engagement Agreement, the Company should assume that we represent a substantial number of the Company's creditors and stakeholders on matters unrelated to the Company, we will, at the Company's request, furnish you with a list of relevant clients when we receive updated information from the Company from time to time regarding its creditors and other stakeholders.

We do not provide certain kinds of opinion letters in connection with restructuring and bankruptcy reorganization cases to clients or to others who may wish to rely upon such letters. We do not alter this policy except under very unusual circumstances and then only upon further written agreement, as approved by a special committee of the Firm.

## Waivers and Related Matters

The Firm represents a broad base of clients on a variety of legal matters. Accordingly, absent an effective conflicts waiver, conflicts of interest may arise that could adversely affect your ability and the ability of other clients of the Firm to choose the Firm as its counsel and preclude the Firm from representing you or other clients of our Firm in pending or future matters. Given that possibility, we wish to be fair not only to you, but to our other clients as well. Accordingly, this letter will confirm our mutual agreement that the Firm may represent other present

Laurence B. Appel
February 7, 2005
Page 7

or future parties on matters other than those for which it had been or then is engaged by the Company, whether or not on a basis adverse to the Company or any of its affiliates, including in litigation, legal or other proceedings or matters, which are referred to as "Permitted Other Representation." In furtherance of this mutual agreement, the Company agrees that it will not for itself or any other party assert the Firm's representation of the Company, either previously, in its then existing representation in the Engagement, or in any other matter in which the Company retains the Firm, as a basis for disqualifying the Firm from representing another party in any Permitted Other Representation and agrees that any Permitted Other Representation does not constitute a breach of duty. Permitted Other Representation would include, without limitation, representing a client over which the Company might be seeking to acquire influence or control, or from which the Company may wish to buy assets, or representing a client regarding its interest at the time in acquiring influence or control over an entity in which the Company then has a similar interest. Notwithstanding the foregoing waivers, the Firm agrees that, during the pendency of any chapter 11 reorganization cases involving the Company in which the Firm is acting as bankruptcy and restructuring counsel pursuant to a general retainer pursuant to 11 U.S.C. § 327 (a), the Firm will not represent present or future clients of the Firm on matters adverse to the Company in such chapter 11 reorganization cases.

Our representation of the Company is premised on the Firm's adherence to its professional obligation not to disclose any confidential information or to use it for another party's benefit without the Company's consent. Provided that the Firm acts in the manner set forth in this paragraph, the Company would not for itself or any other party assert that the Firm's possession of such information, even though it may relate to a matter for which the Firm is representing another client or may be known to someone at the Firm working on the matter, (a) is a basis for disqualifying the Firm from representing another of its clients in any matter in which the Company or any other party has an interest; or (b) constitutes a breach of any duty owed by the Firm.

With respect to parties affiliated with the Company generally, including parties owned by the Company and parties that hold direct or indirect interests in the Company, it is our understanding that the Firm is not being asked to provide, and will not be providing, legal advice to, or establishing an attorney-client relationship with, any such affiliated party or person in their individual capacity and will not be expected to do so unless the Firm has been asked and has specifically agreed to do so. Finally, it is our understanding that if the Firm acts as counsel for any other party as to which the Company then owns completely, directly or indirectly, all of the common stock or similar voting interest (other than directors' qualifying shares, if any), the mutual agreement reflected in this letter, including the waivers, would apply to that party as well.

*    *    *

The provisions of this letter will continue in effect, including if the Firm's representation of the Company was ended at your election (which, of course, the Company would be free to do at any time) or by the Firm for Good Cause (which would be subject to ethical requirements). Good Cause includes the Company's breach of this agreement (including any material change in our engagement responsibilities without our consent or the failure to pay any payment when due under this Engagement Agreement), the Company's refusal or failure to cooperate with us or provide us with continuing access to the Board of Directors and senior management officers of the Company as appropriate, any fact or circumstance that would render our continuing representation unlawful or unethical, or, in our reasonable judgment, resignation of the engagement becomes

Laurence B. Appel
February 7, 2005
Page 8

necessary or appropriate. Any unused portion of the retainers we have received will be applied to our outstanding fees, charges and disbursements and the Company will promptly pay to us the remaining balance owed to us, if any. To the extent that the remaining amount of the retainers exceeds the amount of such fees, charges and disbursements, we will pay such amount to the Company. In addition, the provisions of this Engagement Letter will apply to future engagements of the Firm by the Company unless we mutually agree otherwise.

The Company agrees to make appropriate employees available to us to assist in factual inquiries and factual determinations, court hearings and appearances, transactions and dealings in relation to the subject matter with regard to which we have been retained.

This agreement shall be governed by and interpreted in accordance with the laws of the State of New York without regard to its conflicts of laws principles. For purposes of this letter, references to Skadden or the Firm include our affiliated law practice entities. There are no representations or promises other than as expressly set forth herein.

If the foregoing terms of our representation meet with your approval and accurately represent your understanding of the Company's retention agreement with us, we would appreciate your signing one copy of this Engagement Agreement and returning it to us.

Again, we very much appreciate the opportunity to work with Winn-Dixie Stores, Inc. and look forward to doing so.

With best regards,

Yours very truly,

D. J. Baker

Attachments

AGREED AND ACKNOWLEDGED:

Winn-Dixie Stores, Inc., for itself
and its subsidiaries

By: _____
Laurence B. Appel
Senior Vice President and General Counsel

Effective as of February 2, 2005

CONFIDENTIAL

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP & AFFILIATES

### STANDARD BUNDLED HOURLY TIME CHARGE SCHEDULE[*]

#### January 1, 2005

|  | Rate |
|---|---|
| **PARTNERS and OF COUNSEL**: | $540 - $825 |
| **COUNSEL/SPECIAL COUNSEL**: | $535 - $640 |
| **ASSOCIATES**: | |
| Level | |
| 9 | $495 |
| 8 | 495 |
| 7 | 480 |
| 6 | 460 |
| 5 | 430 |
| 4 | 395 |
| 3 | 375 |
| 2 | 335 |
| 1 | 265[**] |
| **LEGAL ASSISTANTS**: | $90 - $195 |

---

[*]    These are the Firm's standard hourly fee rates for most attorneys and legal assistants in the Firm's "bundled rate" structure for clients who are not billed separately for certain charges (e.g., **secretarial and word processing time preparing legal documents, proofreading, facsimile services, overtime meals and overtime travel allowances). In-house reproduction under the bundled rate structure is charged at $0.10 per page. Please note that in a limited number of cases or for specific types of work (e.g., M&A transactions, certain types of tax matters, etc.), individual rates may be higher or lower than those stated.**

[**]    First year associates will move to $295/hr. at the later of April 1st, 2005 or the date of passing bar exam.

### SKADDEN ARPS, SLATE, MEAGHER& FLOM LLP AND AFFILIATES
#### Policy Statement Concerning Charges and Disbursements
#### Under Standard Bundled Rate Structure
#### Effective 9/1/03

*Skadden Arps bills for reasonable charges and disbursements incurred in connection with an engagement. Clients are billed for external charges at the actual cost billed by the vendor except in a few cases noted below; charges for internal support services are billed at rates derived from internal cost analyses or at rates set at or below comparable outside vendor charges.*

**I. Research Services.** *Charges for on-line computerized research (LexisNexis, Westlaw and financial services) and use of outside research services and materials are billed at the actual amounts charged by vendors, which have been reduced by discounts the Firm receives from vendors.*

*SEC filings retrieved using the Disclosure system in our library are charged based on standard vendor rates derived from an internal cost analysis.*

*The State of Delaware Database provides computer access to a corporations database in Dover, Delaware. The charge for this service is $50 per transaction, which is the average amount charged by outside services.*

**II. Travel-Related Expenses.** *Out-of-town travel expenses are billed at actual cost and include air or rail travel, lodging, car rental, taxi or car service, tips and other reasonable miscellaneous items associated with travel. Corporate and/or negotiated discounted rates are passed on to the client. Specific Firm policies for expenditures relating to out-of-town travel include:*

- *Air Travel. Coach travel is used for all U.S. domestic flights unless upgrades are available at little additional cost or prior client approval is obtained for a different class. For international flights from the United States, business class is used. Travel by attorneys based outside the United States is consistent with these policies.*

- *Lodging. Overnight accommodations are generally booked with hotels with which the Firm has a corporate rate or, when this is not possible, with hotels suggested by the client.*

*Local travel charges include commercial transportation and, when a private car is used, mileage, tolls and parking. Specific policies govern how and when a client is charged for these expenses; these include:*

- *Fares for commercial transportation (e.g., car service, taxi or rail) are charged at the actual vendor invoice amount. The charge for private car usage is the IRS rate allowance per mile (or the equivalent outside the United States) plus the actual cost of tolls and parking.*

- *Round-trip transportation to the office is not charged separately for attorneys who work weekends or holidays, nor is transportation home on business days when an attorney works past a certain hour (typically 8:30 p.m.):.*

- *Local travel for support staff is not charged when a staff member works after 8:00 p.m. specifically for the client.*

**III. Word Processing and Secretarial and other Special Task-Related Services.** *Routine secretarial tasks (correspondence, filing, travel and/or meeting arrangements, etc.) are not charged to clients. There is no separate charge for word processing and secretarial services associated with preparing legal documents.*

*Multi-function personnel, such as qualified secretaries and word processors, may also perform other specialized tasks (such as EDGAR filings or legal assistant services). Such work is recorded in the appropriate billing category (for example, legal assistant services are recorded as fee in "Legal Assistant Support" on bills).*

**IV. Reproduction and Electronic Document Management.** *Photocopying services (including copying, collating, tabbing and velo binding) performed in-house is charged at 10 cents per page, which represents the average internal cost per page. Color photocopies are charged at 50 cents per page (based on outside vendor rates). Photocopying projects performed by outside vendors are billed at the actual invoice amount. Special arrangements can be made for unusually large projects.*

*Electronic Data Management services (e.g., scanning, OCR processing, printing from scanned files, and conversions) performed by outside vendors are billed at the actual invoice amount and those performed in-house are billed at rates comparable to those charged by outside vendors.*

**V. Electronic Communications:** *Clients are charged for communications services as follows:*

- *Telephone Charges. There is no charge for local telephone calls or facsimile services. Long distance telephone calls made from the Firm are charged based on applicable rates in tariff tables and are allocated*

within a client based on the hours worked by attorneys on various matters for that client. Collect, credit card and third party calls are charged at the vendor rate plus applicable taxes and are assigned to the specific matter for which such charges were incurred.

* *Facsimile Charges.* There is no charge for outgoing or incoming facsimiles.

**VI. *Postage and Courier Services.*** Outside messenger and express carrier services are charged at the actual vendor invoice amount which frequently involves discounts negotiated by the Firm. Postage is charged at actual mail rates. On certain occasions, internal staff may be required to act as messengers; a standard rate is charged for their time.

**VII . *UCC Filing and Searches.*** Charges for filings and searches, in most instances, are based on standard amounts determined by the vendor. Unusual filings and searches will be charged based on vendor invoice.

**VIII. *Meals.*** Business meals with a client are charged at actual cost. Luncheon and dinner meetings with the client at the Firm are charged based on the costs developed by our food service vendor. Breakfast, beverage and snack services at the Firm's offices are not charged, except in unusual circumstances. Overtime meals are not charged separately to clients.

**IX. *Direct Payment by Clients of Other Disbursements.*** Other major disbursements incurred in connection with an engagement will be paid directly by the client. (Those which are incurred and paid by the Firm will be charged to the client at the actual vendor's invoice amount.) Examples of such major disbursements that clients will pay directly include:

* *Professional Fees (including disbursements for outside professional services such as local counsel, accountants, witness and other professional fees).*

* *Filing/Court Fees (including disbursements for agency fees for filing documents, standard witness fees, juror fees).*

* *Transcription Fees (including disbursements for outside transcribing agencies and courtroom stenographer transcripts).*

* *Other Disbursements (including any other required out-of-pocket expenses incurred for the successful completion of a matter).*

\* \* \* \* \*

2

**EXHIBIT D-1**
**VAGUELY DESCRIBED CONFERENCES**
**(SECOND INTERIM FEE APPLICATION)**

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 05/02/05 | Feld, S | 0.80 | CONFERENCE CALL WITH B. KICHLER | CONFERENCE CALL WITH B. KICHLER RE: PROPOSED ADEQUATE ASSURANCE REQUEST RESOLUTIONS |
| 05/03/05 | Dowd, A | 0.20 | DISCUSSION WITH R. GRAY | DISCUSSION WITH R. GRAY RE SEVERANCE OBLIGATIONS UNDER THE KERP |
| 05/03/05 | Kaloudis, D | 1.30 | TELEPHONE CONFERENCE RE: SETTLEMENT PROPOSALS AND OTHER UTILITIES ISSUES | TELEPHONE CONFERENCE WITH S. FELD, J. PAOLI, AND B. KICHLER RE: SETTLEMENT PROPOSALS AND OTHER UTILITIES ISSUES |
| 05/03/05 | Kaloudis, D | 0.30 | CONFER WITH S. FELDMAN AND J. PAOLI | CONFER WITH S. FELD AND J. PAOLI RE: REQUESTS FOR ADEQUATE ASSURANCE AND BOND DEMANDS |
| 05/03/05 | Matz, T | 1.60 | WORK ON AND DISCUSSIONS RE: PACA REPORT FOR THE COURT | REVIEW AND REVISE PACA REPORT FOR COURT AND DISCUSSIONS RE: PACA REPORT |
| 05/04/05 | Davis, E | 0.90 | PLANE SALE – INTERNAL CALLS AND EMAIL REGARDING PROCEDURES FOR POTENTIAL AUCTION PRIOR TO HEARING ON SALE | PLANE SALE – INTERNAL CALLS WITH K. LAMAINA AND EMAIL TO K. LAMAINA AND S. HENRY REGARDING PROCEDURES FOR POTENTIAL AUCTION PRIOR TO HEARING ON SALE |
| 05/04/05 | Dowd, A | 0.40 | DISCUSSION WITH R. OLSHAN AND J. BAKER | DISCUSSION WITH R. GRAY RE SEVERANCE OBLIGATIONS UNDER THE KERP |
| 05/04/05 | Matz, T | 0.60 | LOCAL COUNSEL | CALL WITH GARDNER AND LOCAL COUNSEL RE: STATUS OF GARDNER ADVERSARY COMPLAINT |
| 05/05/05 | Kaloudis, D | 0.40 | CONFER WITH S. FELD | CONFER WITH S. FELD RE: UTILITY BOND CHART |
| 05/09/05 | Kaloudis, D | 0.20 | CONFER WITH S. HENRY | CONFER WITH S. HENRY RE: MOTION TO EXTEND DEADLINE |
| 05/10/05 | Feld, S | 1.10 | CONFERENCE CALL WITH B. KICHLER, M. JENKINS, K. ROMEO | CONFERENCE CALL WITH B. KICHLER, M. JENKINS, K. ROMEO RE: PROPOSED ADEQUATE ASSURANCE REQUEST RESOLUTIONS |
| 05/10/05 | Feld, S | 0.20 | TEL. CONF. AND EMAIL RE: CITY OF INVERNESS | TEL. CONF. AND EMAIL RE: THREATENED TERMINATION OF UTILITY SERVICE BY CITY OF INVERNESS |

1

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 05/10/05 | Kaloudis, D | 0.80 | CALLS WITH UTILITY COMPANY | CALLS WITH UTILITY COMPANY RE: PREPETITION OUTSTANDING CHARGES |
| 05/10/05 | Kaloudis, D | 1.00 | CONFERENCE CALL WITH M. JENKINS, S. FELD, J. PAOLI, B. KICHLER, K. ROMEO, C. SILCOX | CONFERENCE CALL WITH M. JENKINS, S. FELD, J. PAOLI, B. KICHLER, K. ROMEO, C. SILCOX RE: INFORMATION NEEDED FOR MOTION FOR DETERMINATION OF ADEQUATE ASSURANCE |
| 05/10/05 | Kaloudis, D | 0.20 | CALL MIAMI DADE UTILITY COMPANY | CALL MIAMI DADE UTILITY COMPANY RE: PREPETITION SERVICE CHARGES |
| 05/10/05 | LaMaina, K | 0.20 | T/C TO BLACKSTONE | T/C TO BLACKSTONE REGARDING BROKER APPROVAL (.2) |
| 05/10/05 | LaMaina, K | 0.40 | DISCUSS LOGISTICS RE PLANE 2 HEARING | DISCUSS LOGISTICS RE PLANE 2 HEARING WITH E. DAVIS (.4) |
| 05/11/05 | Bristor, K | 0.50 | TELEPHONE CONFERENCE WITH LEON CALVERT OF WINN-DIXIE | TELEPHONE CALL WITH LEON CALVERT OF WINN-DIXIE REGARDING NET OPERATING LOSSES |
| 05/11/05 | Dowd, A | 0.30 | DISCUSSION WITH R. OLSHAN | DISCUSSION WITH R. OLSHAN RE SEVERANCE PLAN AND ITS STATUS UNDER ERISA AND APPLICABLE TAX LAWS |
| 05/11/05 | Kaloudis, D | 1.50 | TELEPHONE CONFERENCE CALL WITH COMPANY, M. JENKINS, S. FELD, B. KICHLER, C. SILCOX, K. ROMEO | TELEPHONE CONFERENCE CALL WITH COMPANY, M. JENKINS, S. FELD, B. KICHLER, C. SILCOX, K. ROMEO RE: MOTION FOR DETERMINATION |
| 05/11/05 | Kaloudis, D | 0.30 | CONFERENCE CALL WITH M. JENKINS | CONFERENCE CALL WITH M. JENKINS RE: UTILITY DATE FOR MOTION FOR DETERMINATION OF ADEQUATE ASSURANCE |
| 05/12/05 | Kaloudis, D | 0.20 | CALL WITH B. KICHLER | CALL WITH B. KICHLER RE: MOTION FOR DETERMINATION OF ADEQUATE ASSURANCE |
| 05/13/05 | Kaloudis, D | 0.30 | CONFER WITH S. FELD | CONFER WITH S. FELD RE: MOTION FOR DETERMINATION |
| 05/13/05 | Kaloudis, D | 0.30 | CONFER WITH M. RE: UTILITY DATA | CONFER WITH M. JENKINS RE: UTILITY DATA MOTION FOR DETERMINATION |
| 05/13/05 | Leamy, J | 0.20 | TC W/ J. DINOFF RE: | TC W/ J. DINOFF RE: SPRINT CONTRACT |
| 05/13/05 | Leamy, J | 0.20 | TC W/ C. BOUCHER RE: | TC W/ C. BOUCHER RE: PANASONIC LEASES |
| 05/16/05 | Dowd, A | 0.40 | DISCUSSION WITH D. TURETSKY | DISCUSSION WITH R. OLSHAN RE SEVERANCE PLAN AND ITS STATUS UNDER ERISA AND APPLICABLE TAX LAWS |

2

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 05/16/05 | Feld, S | 0.20 | TEL. CONF. WITH T. PENNINGTON | TEL. CONF. WITH T. PENNINGTON RE: STATUS OF RESOLUTION OF DEMANDS ON UTILITY BONDS ISSUED BY LIBERTY MUTUAL INS. CO. |
| 05/16/05 | Feld, S | 0.10 | TEL. CONF. WITH G. HAMBERG | TEL. CONF. WITH G. HAMBERG RE: RECONCILIATION OF OUTSTANDING PREPETITION AMOUNT TO CHELCO |
| 05/16/05 | LaMaina, K | 0.90 | PREPARE, ATTEND CONFERENCE CALL RE PLANE | PREPARE FOR CONFERENCE CALL ON PLAN WITH R. BEINE BY REVIEWING STATUS OF DEAL (.5); ATTEND CONFERENCE CALL RE PLANE WITH R. BEINE (.4) |
| 05/18/05 | Kaloudis, D | 0.10 | CALL TO M. MALCOLM | CALL TO M. MALCOLM RE: UTILITIES MOTION |
| 05/19/05 | Matz, T | 1.20 | DISCUSSION WITH GROUP RE: VARIOUS DEFENSES RE: SAME | REVIEWING VARIOUS DEFENSES FOR 15 OUTSTANDING RECLAMATION CLAIMS |
| 05/20/05 | LaMaina, K | 0.30 | T/C TO C. JACKSON | T/C TO C. JACKSON RE: PLANE ORDER (.3) |
| 05/23/05 | LaMaina, K | 0.20 | T/C TO K. WARD | T/C TO K. WARD RE: MISC. ASSET MOTION |
| 05/24/05 | Matz, T | 0.80 | 3 CALLS AND CORRESPONDENCE RE: FILED RECLAMATION CLAIMS | REVIEWING AND RESPONDING TO EMAILED CORRESPONDENCE FROM XROADS RE: FILED RECLAMATION CLAIMS |
| 05/25/05 | LaMaina, K | 0.10 | T/C TO C. JACKSON | T/C TO C. JACKSON RE: PHARMACY DEAL |
| 05/25/05 | LaMaina, K | 0.10 | T/C TO A. BURNETT AT LANEPOWELL | T/C TO A. BURNETT AT LANEPOWELL RE: PLANE |
| 05/31/05 | Matz, T | 2.00 | CORRESPONDENCE AND 2 CALLS RE: ADDITIONAL INFORMATION FOR 19 OUTSTANDING CLAIMS | REVIEWING AND RESPONDING TO EMAILED CORRESPONDENCE FROM XROADS RE: ADDITIONAL INFORMATION FOR 19 OUTSTANDING RECLAMATION CLAIMS AND 2 CALLS WITH XROADS RE: ADDITIONAL INFORMATION FOR 19 OUTSTANDING CLAIMS |
| 06/01/05 | Davis, E | 1.10 | CALLS RE FOOD LION ISSUES | MULTIPLE CALLS RE FOOD LION ISSUES WITH S. KUHN |
| 06/01/05 | McDonald Henry, S | 0.10 | T/C COMERFORD | TC MIKE COMERFORD RE: VENDOR CASES |
| 06/02/05 | Barusch, R | 0.30 | AND RELATED TELEPHONE CONFERENCES | TELEPHONE CONFERENCE WITH L. APPEL REGARDING DISCLOSURES (.3) |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 06/03/05 | LaMaina, K | 0.30 | DISCUSS CLAIM ISSUE RE: LITIGATION | REVIEW CREDITOR (BUGGS CLAIM) (.1); CONFERENCE J. LEAMY RE: BUGGS CLAIM (.2) |
| 06/07/05 | Kaloudis, D | 0.20 | CALL TO BOWLING GREEN | TELEPHONE CALL TO CONTACT AT BOWLING GREEN RE: DEMAND ON BOND |
| 06/07/05 | Ravin, A | 0.20 | TELEPHONE CONFERENCE RE: BUHELER LEASE FOR STORE 1686 | NO FURTHER INFORMATION |
| 06/08/05 | LaMaina, K | 0.20 | DISCUSS ISSUE RE: ESCROW PROCEEDS | DISCUSS ISSUE RE: ESCROW PROCEEDS WITH P. DAVIS (NARODICK FIRM) (.2) |
| 06/09/05 | LaMaina, K | 0.30 | ATTEND CONFERENCE CALL RE: SAME | CONFERENCE CALL HARAHAN DEAL WITH K. KIRSCHNER (.3) |
| 06/13/05 | Bonachea, L | 0.10 | TC RE: SERVICE OF AMERICAN KB RESPONSE | NO LONGER WITH THE FIRM |
| 06/14/05 | Bonachea, L | 0.20 | TCS RE: REQUESTED BROKERAGE AGREEMENTS | NO LONGER WITH THE FIRM |
| 06/14/05 | Kaloudis, D | 0.60 | CALL TO COMPANY | CALL TO COMPANY RE: MOTION FOR DETERMINATION |
| 06/15/05 | Bonachea, L | 0.80 | TCS AND EMAILS RE: FIRST INTERIM FEE APPLICATION | NO LONGER WITH THE FIRM |
| 06/15/05 | LaMaina, K | 0.30 | DISCUSS ISSUE RE: BROKER AGREEMENTS | NO FURTHER INFORMATION. |
| 06/16/05 | Bonachea, L | 0.50 | TCS AND EMAILS RE: FIRST INTERIM FEE APPLICATION | NO LONGER WITH THE FIRM |
| 06/16/05 | Bonachea, L | 0.20 | TC RE: FILING OF PROOF OF CLAIM | NO LONGER WITH THE FIRM |
| 06/16/05 | Mathew, J | 0.40 | DISCUSS INFORMATION WITH ATTORNEY | NO LONGER WITH THE FIRM |
| 06/21/05 | Baker, D | 0.60 | PARTICIPATE IN CONFERENCE CALL REGARDING RESTRUCTURING | CONFERENCE CALL WITH SENIOR MANAGEMENT MEMBERS OF WINN-DIXIE AND ALL OUTSIDE RESTRUCTURING ADVISORS, TO DISCUSS OPERATIONS |
| 06/21/05 | Bristor, K | 0.10 | TCS | TELEPHONE CALL WITH LEON CALVERT OF WINN-DIXIE REGARDING NET OPERATING LOSSES |
| 06/21/05 | McDonald Henry, S | 0.70 | CONFERENCE CALL RE: BUSINESS AND CASE DEVELOPMENTS | CONFERENCE CALL RE: BUSINESS AND CASE DEVELOPMENTS WITH COMPANY REPRESENTATIVES AND FINANCIAL ADVISORS TO DEVELOP EXIT STRATEGY |
| 06/22/05 | Bonachea, L | 0.30 | TCS RE NOTICE OF HEARING FOR FIRST INTERIM FEE APPLICATION | NO LONGER WITH THE FIRM |
| 06/24/05 | Bonachea, L | 0.80 | MEETING RE: RECLAMATION STATEMENT | NO LONGER WITH THE FIRM |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 06/27/05 | Bonachea, L | 0.10 | TC RE ELECTRONIC NOTICES OF FILING | NO LONGER WITH THE FIRM |
| 06/27/05 | LaMaina, K | 0.40 | ATTEND CONFERENCE CALL | ATTEND CONFERENCE COUNSEL WITH ACE COUNSEL ON INSURANCE POLICIES (.4) |
| 06/28/05 | Bonachea, L | 0.40 | MEETING RE: FILING OF RECLAMATION STATEMENT | NO LONGER WITH THE FIRM |
| 06/28/05 | Dowd, A | 0.30 | DISCUSSION WITH R. GRAY | NO FURTHER INFORMATION |
| 06/28/05 | McDonald Henry, S | 0.80 | PARTICIPATE IN CONFERENCE CALL | PARTICIPATE IN CONFERENCE CALL WITH ADVISORS RE: SUBSTANTIVE CONSOLIDATION ISSUES |
| 06/29/05 | Bonachea, L | 0.20 | TCS AND EMAILS RE: UTILITIES OBJECTION AND HEARING DATES | NO LONGER WITH THE FIRM |
| 06/30/05 | Barusch, R | 0.20 | TELEPHONE CONFERENCE | TELEPHONE CONFERENCE WITH R. GRAY REGARDING SHAREHOLDER LIST ISSUES |
| 06/30/05 | Feld, S | 0.50 | CONFERENCE CALL RE: MOTION FOR DETERMINATION | CONFERENCE CALL W/ C. BOUCHER, C. JACKSON, S. BUSEY, H. ETLIN RE: MOTION FOR DETERMINATION OF ADEQUATE ASSURANCE REQUESTS |
| 07/06/05 | Toussi, S | 0.50 | DISCUSS MOTION WITH LOCAL COUNSEL | DISCUSS MOTION WITH LOCAL COUNSEL OPPOSING OLD DIXIE'S PACA CLAIM AND STRATEGIES FOR DEFENSE |
| 07/07/05 | Bonachea, L | 0.50 | TCS AND EMAILS RE SERVICE OF OBJECTION TO HERITAGE MINT MOTION | NO LONGER WITH THE FIRM |
| 07/08/05 | Bonachea, L | 0.40 | TCS AND EMAILS RE SERVICE OF SAME AND SEND STATEMENTS | NO LONGER WITH THE FIRM |
| 07/11/05 | Bonachea, L | 1.40 | RESPOND TO TCS AND EMAILS RE NOTICE OF APPROVAL OF RETENTION OF BLACKSTONE, XROADS, HOULIHAN AND ALVAREZ | NO LONGER WITH THE FIRM |
| 07/12/05 | Bonachea, L | 0.10 | TC AND EMAILS RE: STATUS OF RECLAMATION STATEMENTS | NO LONGER WITH THE FIRM |
| 07/12/05 | Dowd, A | 0.20 | DISCUSSION WITH R. GRAY | NO FURTHER INFORMATION |
| 07/12/05 | Matz, T | 0.50 | CONFERENCE WITH ATTORNEYS RE: CONSUMPTION RATE AND PREFERENCES | CORRESPONDENCE AND CALLS WITH COUNSEL FOR SAMPCO, INC. RE: CONSUMPTION RATE AND PREFERENCES |
| 07/12/05 | Matz, T | 0.40 | CALLS AND CORRESPONDENCE RE: EDYS CLAIM | CALLS AND CORRESPONDENCE WITH COUNSEL TO EDYS ICE CREAM RE: EDYS RECLAMATION CLAIM |

5

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 07/13/05 | Matz, T | 0.30 | CALL WITH COUNSEL FOR GONNELLA | CALL WITH COUNSEL FOR GONNELLA RE: RECLAIMING VENDOR INQUIRIES |
| 07/14/05 | Bonachea, L | 0.30 | TCS AND EMAILS RE SERVICE AND FILING OF FIRST INTERIM FEE APPLICATION | NO LONGER WITH THE FIRM |
| 07/14/05 | Bonachea, L | 0.20 | TCS RE TELEPHONIC ACCESS TO HEARINGS | NO LONGER WITH THE FIRM |
| 07/14/05 | Kaloudis, D | 0.30 | CONFIRM PAYMENT TO TAMPA | RESEARCH PAYMENT TO TAMPA ELECTRIC DUE UNDER STIPULATION BETWEEN WINN-DIXIE AND TAMPA ELECTRIC |
| 07/15/05 | Kaloudis, D | 0.30 | MULTIPLE CALLS WITH ATTORNEYS RE: PENMAN PLAZA | CALL WITH WINN-DIXIE RE: PENMAN PLAZA (.1); CALL WITH COUNSEL TO PENMAN PLAZA RE: PENMAN PLAZA (.2) |
| 07/18/05 | Bonachea, L | 0.40 | TCS RE NOTICE OF APPROVAL OF RETENTION OF BLACKSTONE ET AL | NO LONGER WITH THE FIRM |
| 07/18/05 | Kaloudis, D | 0.20 | CALL WITH S. FELD | CALL WITH S. FELD RE: BOND DEMANDS |
| 07/18/05 | Kaloudis, D | 1.40 | MEETING WITH S. FELD | MEETING WITH S. FELD RE: BOND DEMANDS |
| 07/18/05 | Kaloudis, D | 0.40 | CALL TO SHELL | CALL TO SHELL RE: PREPETITION CHARGES |
| 07/19/05 | Dowd, A | 0.70 | CONFERENCE CALL RE CONTINGENT CASH PAYMENT PLAN AND REVIEW PLAN DOCUMENTS | CONFERENCE CALL RE CONTINGENT CASH PAYMENT PLAN AND REVIEW PLAN DOCUMENTS TO DETERMINE PARTICIPANT'S RIGHTS TO RELATED PAYMENTS AN COMPANY'S OBLIGATIONS TO MAKE THESE PAYMENTS |
| 07/20/05 | Baker, D | 1.00 | PARTICIPATE IN CONFERENCE CALL REGARDING OPERATIONS AT WINN-DIXIE | CONFERENCE CALL PETER LYNCH, LARRY APPEL, BENNETT NUSSBAUM, AND FLIP HUFFARD REGARDING BUSINESS OPERATIONS AT WINN-DIXIE |
| 07/21/05 | Bonachea, L | 0.40 | TCS RE NOTICE OF APPROVAL OF RETENTION OF BLACKSTONE | NO LONGER WITH THE FIRM |
| 07/22/05 | Bonachea, L | 0.30 | TCS RE NOTICE OF APPROVAL OF RETENTION OF BLACKSTONE | NO LONGER WITH THE FIRM |
| 07/25/05 | McDonald Henry, S | 0.80 | MEET WITH S. EICHEL | MEET WITH S. EICHEL RE: RECLAMATION SETTLEMENTS |
| 07/26/05 | Bonachea, L | 0.20 | TCS RE NOTICE OF APPROVAL OF RETENTION OF BLACKSTONE | NO LONGER WITH THE FIRM |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 07/26/05 | McDonald Henry, S | 0.30 | T/C F. HUFFARD | T/C F. HUFFARD RE: RESOLUTION OF OBJECTIONS TO RECLAMATION SETTLEMENT |
| 07/26/05 | McDonald Henry, S | 0.90 | MEET WITH S. EICHEL | MEET WITH S. EICHEL TO FURTHER REFINE STRATEGY TO ADDRESS OBJECTIONS TO RECLAMATION SETTLEMENT |
| 07/27/05 | Matz, T | 3.10 | CALLS AND CORRESPONDENCE RE: RESOLUTION OF 6 CLAIMS | CALLS AND CORRESPONDENCE WITH XROADS RE: RESOLUTION OF MORTON SALT CLAIMS (.2); CALLS AND CORRESPONDENCE WITH XROADS RE: RESOLUTION OF GEORGIA PACIFIC CLAIMS (1.2); CALLS AND CORRESPONDENCE WITH XROADS RE: RESOLUTION OF BROWN BOTTLING GROUP CLAIMS (.5); CALLS AND CORRESPONDENCE WITH XROADS RE: RESOLUTION OF CROWN, CORK & SEAL CLAIMS (.6); CALLS AND CORRESPONDENCE WITH XROADS RE: RESOLUTION OF MASTERFOODS CLAIMS (.3); CALLS AND CORRESPONDENCE WITH XROADS RE: RESOLUTION OF KRISPY KREME CLAIMS (.3) |
| 07/28/05 | LaMaina, K | 0.40 | DISCUSS PROFFER AND HEARING SUMMARY AND REVIEW INFORMATION RE SAME | DISCUSS WITH D. BITTER PROFFER AND HEARING SUMMARY AND REVIEW INFORMATION RE SAME (.4) |
| 07/28/05 | Matz, T | 2.50 | ANSWER QUESTIONS RE: RECLAMATION STIPULATION AND RE: 7/29 COURT HEARING TO APPROVE SAME AND JUNIOR LIEN | REVIEWING AND RESPONDING TO VARIOUS QUESTIONS RE: RECLAMATION STIPULATION AND THE JULY 29 COURT HEARING TO APPROVE RECLAMATION STIPULATION AND PROPOSED JUNIOR LIEN |
| 07/28/05 | Matz, T | 2.10 | CALLS AND CORRESPONDENCE RE RECONCILIATION OF 6 CLAIMS | ANSWER QUESTIONS TELEPHONICALLY OF GEORGIA PACIFIC RE: RECONCILIATION OF CLAIMS (.6); ANSWER QUESTIONS TELEPHONICALLY OF G. PONTOW RE: RECONCILIATION OF CLAIMS (.4) ANSWER QUESTIONS TELEPHONICALLY OF S. FRIEDMAN OF CROWN, CORK & SEAL RE: RECONCILIATION OF CLAIMS (.3), ANSWER |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| | | | | QUESTIONS TELEPHONICALLY OF D. FARRELL OF BUNGEE NORTH AMERICA RE: RECONCILIATION OF CLAIMS (.4), ANSWER QUESTIONS TELEPHONICALLY OF S. YONATE OF KRISPY KREME RE: RECONCILIATION OF CLAIMS (.4) |
| 07/28/05 | Toussi, S | 0.70 | VARIOUS TELECONFERENCES RE SAME | TELECONFERENCE WITH BLACKSTONE TO DISCUSS HUFF DECLARATION IN SUPPORT OF STIPULATION ON RECLAMATION |
| 07/29/05 | LaMaina, K | 0.70 | ATTEND CONFERENCE CALL AND PREPARE MEMO RE OUTSTANDING ISSUES | ATTEND CONFERENCE CALL WITH ACE COUNSEL ON INSURANCE FOR COMPANY (.3); PREPARE MEMO TO COMPANY, D. BITTER ON OUTSTANDING ISSUES/NEXT STEPS (.4) |
| 08/01/05 | Baker, D | 0.60 | RESPOND TO TELEPHONE INQUIRIES REGARDING BAR DATE | RESPOND TO APPROXIMATELY 6 SEPARATE TELEPHONE CALLS FROM CREDITORS RAISING QUESTIONS ABOUT BAR DATE NOTICE AND EFFECT OF SAME ON CREDITORS (0.6) |
| 08/02/05 | McDonald Henry, S | 0.20 | T/C SOLOCHECK | T/C SOLOCHECK RE: CLAIM FOR GOODS SOLD |
| 08/03/05 | Teicher, S | 0.50 | REVIEW AND DISCUSS DIP AGMT | REVIEW AND DISCUSS DIP AGREEMENT ASSET SALE RESTRICTIONS WITH K. LAMAINA |
| 08/03/05 | Teicher, S | 0.50 | REVIEW AND DISCUSS APPRECIATION OF SALE PROCEEDS | REVIEW AND DISCUSS APPRECIATION OF SALE PROCEEDS AND USE OF PROCEEDS WITH WINN-DIXIE AND FLORIDA COUNSEL |
| 08/04/05 | Toussi, S | 0.20 | RETURN PHONE CALLS RE: SAME | RETURN PHONE CALLS TO RECLAMATION VENDORS TO DISCUSS STATUS OF RECLAMATION CLAIMS |
| 08/05/05 | McDonald Henry, S | 0.30 | T/C HOOD LAWYER | T/C COUNSEL |
| 08/05/05 | Toussi, S | 0.50 | DISCUSS STATUS OF CERTAIN VENDORS AND STIPULATIONS | TELECONFERENCE WITH RECLAMATION VENDORS TO DISCUSS STATUS OF STATEMENTS OF RECLAMATION AND PROCEDURES VENDORS NEED TO FOLLOW TO RESOLVE SAME UNDER THE ORDER |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/11/05 | Kaloudis, D | 1.50 | MEETING WITH S. FELD | MEETING WITH S. FELD RE: BOND DEMANDS |
| 08/11/05 | Matz, T | 2.00 | CALLS RE: TRADE CREDIT AND DISPUTES TO JULY 29TH ORDER | CONFERENCE CALL WITH XROADS, COMPANY AND CLAIMANTS RE: TRADE CREDIT AND DISPUTES TO JULY 29TH ORDER |
| 08/11/05 | Toussi, S | 0.80 | ADDRESS VENDOR ISSUES AND FOLLOW-UP PHONE CALLS RE: STIPULATION AND ISSUES | RESEARCH ISSUES RE VARIOUS RECLAMATION VENDOR CLAIMS AND AVAILABLE DEFENSES TO SAME (.4); DISCUSS STIPULATION WITH VARIOUS RECLAMATION VENDORS (.4) |
| 08/12/05 | Toussi, S | 0.50 | VARIOUS DISCUSSIONS RE: SAME | TELEPHONE CONFERENCE RE STATUS OF RECONCILING CLAIM |
| 08/18/05 | Bristor, K | 0.10 | TELEPHONE CONFERENCE RE: SECTION 505 PROCEDURE | TELEPHONE CONFERENCE RE: SECTION 505 PROCEDURE. PARTICIPANTS: R. GRAY, J. CASTLE, J. POST AND A. RESHTICK |
| 08/18/05 | LaMaina, K | 0.20 | REVIEW GUIDELINES AND ADVISE RE: SAME | REVIEW EXAMEN/WINN-DIXIE GUIDELINES AND ADVISE ACCOUNTING DEPT. (N. RICARDO) ON SAME FOR COMPLIANCE (.2) |
| 08/19/05 | Toussi, S | 0.20 | VARIOUS TELEPHONE CONVERSATIONS RE: SAME | TELEPHONE CONFERENCE RE STATUS OF RECONCILING CLAIM |
| 08/19/05 | Ulery, C | 0.90 | INTERNAL MEETINGS RE: SAME | INTERNAL MEETING WITH R. BARUSCH RE: TRANSACTION TIMELINE |
| 08/22/05 | Kaloudis, D | 0.40 | CALL TO GRAYBAR | CALL TO GRAYBAR RE: PREPETITION SERVICE CHARGES |
| 08/23/05 | Reshtick, A | 1.80 | CONFERENCE CALL RE: TAX CLAIMS BY THE INTERNAL REVENUE SERVICE | CONFERENCE CALL RE: TAX CLAIMS BY THE INTERNAL REVENUE SERVICE. PARTICIPANTS: R. GRAY, K. BRISTOR AND M. RICHARD |
| 08/25/05 | Matz, T | 0.20 | CALL RE: HUNTAMERICAS CLAIM | CALL WITH HUHTAMAKI, AMERICAS' COUNSEL RE: HUHTAMAKI AMERICAS' CLAIM |
| 08/25/05 | McDonald Henry, S | 0.10 | RESPOND TO CALL REGARDING STATUS OF PROPOSAL FOR POSTPETITION SURETY FACILITY | ANALYSIS AND FACTUAL ORGANIZATION TO RESPOND TO CALL REGARDING STATUS OF PROPOSAL FOR POSTPETITION SURETY FACILITY |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/26/05 | Matz, T | 0.40 | CALLS RE: 2 CLAIMS OPTING IN TO SETTLEMENT PROGRAM | CALLS WITH COMPANY RE: 2 VENDORS' CLAIMS AND OPTING IN TO SETTLEMENT PROGRAM |
| 08/26/05 | Matz, T | 0.20 | CALLS FROM COUNSEL RE: STIPULATION | CALL FROM RECLAIMING VENDOR'S COUNSEL RE: STIPULATION |
| 08/29/05 | Ravin, A | 0.20 | REVIEW CORRESPONDENCE RE: BUEHLERS, DISCUSS ISSUES RE: SAME WITH SAME | NO FURTHER INFORMATION |
| 08/30/05 | McDonald Henry, S | 0.60 | PARTICIPATE IN CONFERENCE CALL RE: BUSINESS STRATEGIES AND REORGANIZATION ISSUES | PARTICIPATE IN WEEKLY CONFERENCE CALL RE: BUSINESS STRATEGIES AND REORGANIZATION ISSUE WITH COMPANY REPRESENTATIVES AND FINANCIAL ADVISORS |
| 08/30/05 | Teicher, S | 0.20 | CALLS/EMAILS RE: COLLATERAL REQTS | CALLS/EMAILS RE: COLLATERAL REQUIREMENTS IN DIP AGREEMENT WITH FLORIDA COUNSEL |
| 08/31/05 | Kaloudis, D | 0.10 | CALL TO M. CHLEBOVEC | CALL TO M. CHLEBOVEC RE: OMNIBUS MOTION TO REJECT LEASES |
| 08/31/05 | Kaloudis, D | 0.10 | CALL TO CATHERINE IBOLD | CALL TO CATHERINE IBOLD RE: OMNIBUS MOTION TO REJECT LEASES |
| 09/02/05 | Bonachea, L | 0.20 | EMAILS AND TELECONFERENCES RE: SALES MOTION AND ORDERS | NO LONGER WITH THE FIRM |
| 09/06/05 | Bonachea, L | 0.10 | TELECONFERENCE RE: AUGUST 4 HEARING TRANSCRIPT WITH ATTORNEY | NO LONGER WITH THE FIRM |
| 09/06/05 | Bonachea, L | 0.20 | TELECONFERENCE RE: PACA CLAIM STATUS | NO LONGER WITH THE FIRM |
| 09/08/05 | Ulery, C | 1.10 | PARTICIPATE IN PORTION OF TELEPHONE CONFERENCE RE: MATTERS RELATING TO PLAN OF REORGANIZATION | PARTICIPATE IN PORTION OF TELEPHONE CONFERENCE WITH D.J. BAKER AND R. BARUSCH RE: MATTERS RELATING TO UPDATE ON THE STATUS OF THE PLAN OF REORGANIZATION |
| 09/09/05 | Bonachea, L | 0.10 | TELECONFERENCE RE: STATUS OF CLAIM | NO LONGER WITH THE FIRM |
| 09/12/05 | Baker, D | 0.70 | DISCOVERY CONFERENCE ON EQUITY COMMITTEE | CONTINUE PREPARATION FOR DISCOVERY CONFERENCE ON ISSUES RAISED BY EQUITY COMMITTEE (0.7) |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 09/16/05 | Barusch, R | 0.20 | TELECONFERENCE RE: SAME | TELEPHONE CONFERENCE WITH L. APPEL REGARDING PRESS RELEASE |
| 09/19/05 | Kaloudis, D | 0.20 | TELECONFERENCE RE: FILING OF PROOF OF CLAIMS | TELECONFERENCE WITH A. RAVIN RE: FILING OF PROOF OF CLAIMS |
| 09/20/05 | Barusch, R | 3.20 | TELECONFERENCE WITH ATTORNEYS RE 10-K COMMENTS | TELEPHONE CONFERENCE WITH R. GRAY AND A. SALDANA REGARDING REVISIONS TO 10-K |
| 09/21/05 | Barusch, R | 3.40 | TELECONFERENCE WITH ATTORNEYS RE: 10-K REVISIONS AND DISCLOSURES | TELEPHONE CONFERENCE WITH ERNST & YOUNG REGARDING 10-K REVISIONS AND DISCLOSURES |
| 09/21/05 | Kaloudis, D | 0.10 | TELECONFERENCE WITH B. KICHLER AND S. FELD | TELECONFERENCE WITH B. KICHLER AND S. FELD RE: STATUS OF UTILITY REQUESTS |
| 09/22/05 | Kaloudis, D | 0.20 | TELECONFERENCE RE: STORES 416, 2707, 529 AND 1807 | TELECONFERENCE WITH MANAGEMENT COMPANY RE: STORES 416, 2707, 529 AND 1807 CAM CHARGES |
| 09/26/05 | Kaloudis, D | 0.10 | TELECONFERENCE WITH CHATTANOOGA | TELECONFERENCE WITH T. GREEN OF CHATTANOOGA RE: CHATTANOOGA BOND DEMAND |
| 09/27/05 | Kaloudis, D | 0.20 | TELECONFERENCE WITH CHATTANOOGA | TELECONFERENCE WITH T. GREEN OF CHATTANOOGA RE: CHATTANOOGA BOND DEMAND |
| 09/27/05 | Neckles, P | 1.50 | CONFERENCES, CORRESPONDENCE, AND TELECONFERENCES IN CONNECTION WITH DIP CREDIT AGREEMENT | CONFERENCES WITH D. SQUASONI AND T. BOYDELL RE DIP CREDIT AGREEMENT (.5); CORRESPONDENCE WITH D. FIORELLO AND K. HARDEE RE DIP CREDIT AGREEMENT (.5); TELECONFERENCES WITH D. SQUASONI, T. BOYDELL, K. HARDEE, AND D. FIORELLO IN CONNECTION WITH DIP CREDIT AGREEMENT (.5) |
| 09/29/05 | Kaloudis, D | 0.20 | TELECONFERENCE WITH CHATTANOOGA | TELECONFERENCE WITH T. GREEN OF CHATTANOOGA RE: CHATTANOOGA BOND DEMAND |
| 09/29/05 | Ravin, A | 0.10 | FOLLOW UP TELECONFERENCE (VOICEMAIL) RE: SAME | FOLLOW UP TELECONFERENCE (VOICEMAIL) FROM N. TUCKER RE: SAME |

11

**EXHIBIT D-2**
**VAGUELY DESCRIBED "WORK ON," "ATTENTION TO,"**
**"DILIGENCE" ACTIVITIES**
**(SECOND INTERIM FEE APPLICATION)**

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 05/01/05 | Matz, T | 0.50 | AND FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO E. GORDON'S CALL RE: RECLAMATION, DILIGENCE, AND CONSUMPTION MODEL |
| 05/02/05 | Feld, S | 0.30 | WORK ON JEA CONTRACT ISSUE | REVIEW JEA CONTRACT |
| 05/02/05 | Feld, S | 0.20 | WORK ON PROGRESS ISSUES | REVIEW OUTSTANDING PREPETITION AMOUNTS FOR PROGRESS FLORIDA /CAROLINAS |
| 05/02/05 | Feld, S | 0.70 | WORK ON APCO STIPULATION | REVIEW AND EDIT APCO STIPULATION |
| 05/02/05 | McDonald Henry, S | 0.70 | WORK ON ISSUES RELATING TO FINAL PACA REPORT | ANALYSIS OF ISSUES FOR FINAL PACA REPORT |
| 05/02/05 | McDonald Henry, S | 0.80 | AND WORK RE CLAIM | ANALYSIS RE: CLAIM |
| 05/03/05 | Leamy, J | 0.10 | WORK ON ISSUES RE: SOFA 3A | ANALYSIS RE: SOFA 3A |
| 05/03/05 | McDonald Henry, S | 0.70 | WORK ON ISSUES RELATING TO FOOD LION SALE | ANALYSIS OF ISSUES RE: FOOD LION SALE |
| 05/04/05 | Gray, R | 0.20 | WORK ON SEVERANCE RESEARCH ISSUES | RESEARCH SEVERANCE ISSUES |
| 05/04/05 | Matz, T | 0.60 | FOLLOW UP WORK AND CORRESPONDENCE RE: SAME | CONTINUING REVIEW WITH RESPECT TO KIK INTERNATIONAL'S CALL RE: RECLAMATION DEMAND |
| 05/04/05 | Turetsky, D | 0.50 | FURTHER DILIGENCE RE: ISSUES SURROUNDING DEBTORS' CONTRACT WITH CATALINA MARKETING | FURTHER REVIEW, RESEARCH, AND ANALYSIS IN CONNECTION WITH ISSUES CONCERNING DEBTORS' CONTRACT WITH CATALINA MARKETING |
| 05/06/05 | Baker, D | 0.60 | WORK ON RETIREE CLAIM ISSUES | REVIEW CLAIMS ASSERTED BY RETIREES UNDER SRP/MSP PROGRAMS |
| 05/06/05 | Feld, S | 1.00 | WORK ON UTILITY ISSUE RE: DADE CO. | RESOLVE THREATENED TERMINATION BY DADE CO. OF UTILITY SERVICE |
| 05/06/05 | Feld, S. | 0.20 | WORK ON ISSUES RE: APCO CONTRACTS | BEGIN ANALYZING REQUEST TO ASSUME APCO'S CONTRACTS W/ WD |

1

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 05/08/05 | Toussi, S | 1.00 | ADDRESS FOLLOW-UP ISSUES RE PACA CLAIMS | DRAFT CORRESPONDENCE RE STATUS OF PACA REPORT AND REASONS WHY CERTAIN PACA CLAIMS REMAINED UNRESOLVED (1.0) |
| 05/09/05 | Feld, S | 2.40 | WORK ON ISSUES RELATING TO AEP, DUKE, JEA | ANALYZE ADEQUATE ASSURANCE REQUESTS BY AEP, DUKE, JEA |
| 05/10/05 | Feld, S | 0.10 | WORK ON CHELCO ISSUES | REVIEW ISSUE OF PENALTY CHARGED BY CHELCO |
| 05/10/05 | Matz, T | 3.00 | DILIGENCE ON FACTUAL AND LEGAL ISSUES ON SAMPLE GROUP OF 13 CLAIMS | ANALYZE DILIGENCE OF FACTUAL AND LEGAL ISSUES OF A SAMPLE GROUP OF 13 PIPER RUDNICK REPRESENTED CLAIMS |
| 05/10/05 | Toussi, S | 2.00 | DILIGENCE ON FACTUAL AND LEGAL ISSUES ON SAMPLE GROUP OF 13 PIPER RUDNICK CLAIMS | REVIEW AND ANALYZE THE RECLAMATION DEMANDS OF THE SAMPLE GROUP OF RECLAMATION CLAIMANTS (13 PIPER RUDNICK CLIENTS) IN CONNECTION WITH PREPARING GUIDELINES FOR RECONCILING RECLAMATION DEMANDS |
| 05/10/05 | Turetsky, D | 0.30 | FURTHER DILIGENCE IN CONNECTION WITH MOTION FOR APPOINTMENT OF RETIREE COMMITTEE | FURTHER ANALYSIS IN CONNECTION WITH OPEN ISSUES RAISED BY MOTION FOR APPOINTMENT OF RETIREE COMMITTEE |
| 05/10/05 | Turetsky, D | 1.40 | FURTHER DILIGENCE IN CONNECTION WITH ISSUES ARISING UNDER MASTER LEASE | FURTHER RESEARCH AND ANALYSIS IN CONNECTION WITH ISSUES ARISING UNDER IBM MASTER LEASE |
| 05/10/05 | Turetsky, D | 0.30 | DILIGENCE RE: SAME | FURTHER ANALYSIS AND RESEARCH IN CONNECTION WITH RESOLVING OPEN ISSUES RELATED TO BAIN RETENTION APPLICATION |
| 05/11/05 | Leamy, J | 0.20 | WORK ON MATTERS RE: CIT LEASES | ANALYSIS RE: CIT LEASES |
| 05/11/05 | Matz, T | 0.40 | FOLLOW UP RE: SERVICE MATTERS | CONTINUING REVIEW WITH RESPECT TO CALLS WITH E. GORDON AND XROADS RE: SERVICE MATTERS |
| 05/11/05 | Turetsky, D | 0.30 | DILIGENCE IN CONNECTION WITH LETTER FROM U.S. TRUSTEE RE: REQUEST FOR APPOINTMENT OF AN EQUITY COMMITTEE | RESEARCH IN CONNECTION WITH ISSUES RAISED BY LETTER TO U.S. TRUSTEE REQUESTING APPOINTMENT OF EQUITY COMMITTEE |
| 05/11/05 | Turetsky, D | 0.30 | FURTHER DILIGENCE RE: ISSUES CONCERNING LEASE WITH CLC | FURTHER REVIEW AND ANALYSIS RE: ISSUES CONCERNING LEASE WITH CLC |

2

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 05/11/05 | Turetsky, D | 0.40 | ADDITIONAL DILIGENCE RE: WHETHER CERTAIN LEASES ARE SEPARATE FOR ASSUMPTION/REJECTION PURPOSES | ADDITIONAL RESEARCH AND ANALYSIS RE: WHETHER CERTAIN OF THE DEBTORS' LEASES ARE SEPARATE FOR ASSUMPTION/REJECTION PURPOSES |
| 05/11/05 | Turetsky, D | 0.70 | ADDITIONAL DILIGENCE RE: ISSUES CONCERNING LEASES WITH ANOTHER ENTITY | FURTHER RESEARCH RE: ISSUES RELATING TO POTENTIAL DISPOSITION OF CERTAIN OF DEBTORS' EQUIPMENT LEASES |
| 05/11/05 | Turetsky, D | 0.10 | DILIGENCE IN CONNECTION WITH SAME | FURTHER ANALYSIS AND RESEARCH IN CONNECTION WITH RESOLVING OPEN ISSUES RELATED TO BAIN RETENTION APPLICATION |
| 05/12/05 | Matz, T | 1.50 | FOLLOW UP WORK RE: LEGAL DEFENSES | CONTINUING REVIEW WITH RESPECT TO CALLS WITH E. GORDON, T. WUERTZ AND WORKING GROUP RE: LEGAL DEFENSES FOR RECLAMATION CLAIMS |
| 05/12/05 | McDonald Henry, S | 0.90 | DIRECT WORK ON PROTOCOLS | REVIEW PROTOCOL DRAFTS |
| 05/12/05 | Toussi, S | 1.50 | FOLLOW UP WORK RE: LEGAL DEFENSES | ANALYZE LIST OF POTENTIAL DEFENSES TO RECLAMATION DEMANDS |
| 05/12/05 | Turetsky, D | 0.60 | DILIGENCE RE: PROPOSED KERP AND SEVERANCE PLAN | RESEARCH AND ANALYSIS RE: POTENTIAL ISSUES IN CONNECTION WITH PROPOSED KERP AND SEVERANCE PLANS |
| 05/12/05 | Turetsky, D | 0.30 | DILIGENCE FOR A. RAVIN RE: NON-DEBTOR WINN-DIXIE AFFILIATES | RESEARCH PUBLIC FILINGS AND DOCUMENTS RECEIVED FROM DEBTORS TO IDENTIFY DEBTORS' NON-DEBTOR AFFILIATES IN CONNECTION WITH INQUIRY FROM A. RAVIN |
| 05/13/05 | Davis, E | 0.40 | WORK ON HARAHAN SALE | REVIEW APA CHANGES WITH RESPECT TO HARAHAN SALE |
| 05/13/05 | Feld, S | 1.90 | WORK ON ISSUES RELATING TO AEP, DUKE, JEA, OUC HEARING | PREPARE FOR HEARING ON OBJECTIONS TO UTILITY MOTION AND ADEQUATE ASSURANCE REQUESTS FILED BY AEP, DUKE, JEA, AND OUC |
| 05/13/05 | Gray, R | 0.20 | WORK ON PLAN TIMETABLE | DRAFT TIMETABLE FOR PLAN PROCESS |
| 05/13/05 | Turetsky, D | 0.30 | FURTHER DILIGENCE RE: RETENTION AND SEVERANCE PLANS PROPOSED BY DEBTORS | FURTHER RESEARCH RE: POTENTIAL ISSUES IN CONNECTION WITH PROPOSED KERP AND SEVERANCE PLANS |

3

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 05/13/05 | Turetsky, D | 0.20 | DILIGENCE RE: SAME | FURTHER ANALYSIS RE: POTENTIAL ISSUES IN CONNECTION WITH PROPOSED KERP AND SEVERANCE PLANS |
| 05/13/05 | Turetsky, D | 0.80 | DILIGENCE RE: ISSUES CONCERNING DEBTORS' PROPOSED RETENTION OF DELOITTE | ANALYSIS AND RESEARCH IN CONNECTION WITH RESOLVING OPEN ISSUES RELATED TO DELOITTE APPLICATION |
| 05/16/05 | Baker, D | 0.70 | WORK WITH RESPECT TO EMPLOYEE COMMUNICATIONS | REVIEW AND REVISE COMMUNICATION MATERIALS TO BE DISTRIBUTED TO EMPLOYEES WITH RESPECT TO THEIR POSSIBLE CLAIMS AGAINST WINN-DIXIE |
| 05/17/05 | Feld, S | 0.20 | WORK ON PASCO SOLID WASTE ISSUE | RESOLVED THREATENED TERMINATION OF SERVICE BY PASCO SOLID WASTE |
| 05/17/05 | Turetsky, D | 1.00 | DILIGENCE RE: ISSUES ARISING IN CONNECTION WITH DELOITTE APPLICATION | ANALYSIS AND RESEARCH IN CONNECTION WITH RESOLVING OPEN ISSUES RELATED TO DELOITTE APPLICATION |
| 05/17/05 | Turetsky, D | 0.30 | FURTHER DILIGENCE RE: DEBTORS' ACCOUNTS WITH ADT | REVIEW SCHEDULES AND ANALYSIS IN CONNECTION WITH ADT ACCOUNTS IN CONNECTION WITH RESPONDING TO VOICEMAIL FROM L. O'BANION |
| 05/18/05 | Baker, D | 0.50 | WORK REGARDING SAME | CONTINUE REVIEW AND REVISION OF DRAFT EMPLOYEE COMMUNICATION MATERIALS |
| 05/18/05 | Baker, D | 0.40 | CONTINUE WORK ON RETIREE COMMITTEE ISSUE | REVIEW STANDARDS FOR CREATION OF EQUITY COMMITTEE |
| 05/18/05 | Feld, S | 0.50 | WORK ON ISSUES RE: GEORGIA POWER & GULF POWER | REVIEW EMAIL RE GEORGIA POWER AND GULF POWER AND ATTACHED CHART OF SERVICE ACCOUNTS AND BILLED AMOUNTS FOR GULF POWER |
| 05/18/05 | Matz, T | 0.70 | FOLLOW UP RE: SAME IN RECLAMATION CONTEXT | CONTINUING REVIEW WITH RESPECT TO CALLS WITH E. GORDON RE: RECLAMATION OFFSETS AND PREFERENCES |
| 05/18/05 | Turetsky, D | 0.50 | DILIGENCE RE: SAME | FURTHER ANALYSIS AND RESEARCH IN CONNECTION WITH RESOLVING OPEN ISSUES RELATED TO DELOITTE APPLICATION |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 05/20/05 | Feld, S | 0.60 | WORK ON VARIOUS UTILITY ISSUES | CONTINUE TO ANALYZE AND RESOLVE ADEQUATE ASSURANCE REQUESTS OF VARIOUS UTILITIES |
| 05/20/05 | Matz, T | 1.50 | WORK ON AND FOLLOW UP RE: OUTSTANDING ITEMS FOR RECONCILED CLAIMS | CONTINUING REVIEW OF OUTSTANDING ITEMS RE: RECONCILED CLAIMS |
| 05/20/05 | McDonald Henry, S | 0.40 | WORK ON ISSUES RE LEASE CURE AMOUNT | ANALYSIS OF ISSUES RE: LEASE CURE AMOUNTS |
| 05/20/05 | Turetsky, D | 0.20 | DILIGENCE IN CONNECTION WITH SAME | FURTHER REVIEW AND ANALYSIS RE: OPEN ISSUES IN CONNECTION WITH DELOITTE APPLICATION |
| 05/22/05 | Turetsky, D | 3.30 | FURTHER DILIGENCE RE: TYPES OF BENEFITS OFFERED UNDER DEBTORS' NON-QUALIFIED PLANS AND IMPACT OF FIRST DAY ORDER AUTHORIZING PAYMENT OF SAME IN CONNECTION WITH DEBTORS' RESPONSE TO MOTION FOR APPOINTMENT OF RETIREE COMMITTEE | FURTHER RESEARCH AND ANALYSIS RE: TYPES OF BENEFITS OFFERED UNDER DEBTORS' NON-QUALIFIED PLANS AND IMPACT OF FIRST DAY ORDER AUTHORIZING PAYMENT OF SAME IN CONNECTION WITH DEBTORS' RESPONSE TO MOTION FOR APPOINTMENT OF RETIREE COMMITTEE |
| 05/23/05 | LaMaina, K | 0.40 | FOLLOW-UP WORK RE PLANE 2 SALE | REVIEW STATUS OF PLANE 2 SALE TO PREPARE FOR CONFERENCE CALL WITH K. NARODICK (.4) |
| 05/23/05 | Matz, T | 0.40 | FOLLOW UP WORK AND CORRESPONDENCE RE: SAME | CONTINUING REVIEW WITH RESPECT TO CALL WITH LISA OF WINN-DIXIE RE: SLOTTING CONTRACTS |
| 05/23/05 | McDonald Henry, S | 0.80 | WORK ON ISSUES RELATING TO FORECLOSURE AND LEASEHOLD INTEREST | ANALYSIS OF ISSUES RELATING TO FORECLOSURE AND LEASEHOLD INTERESTS |
| 05/23/05 | Turetsky, D | 1.90 | DILIGENCE IN CONNECTION WITH INQUIRY FROM U.S. TRUSTEE RE: "DEATH BENEFITS" OFFERED UNDER NON-QUALIFIED PLANS | REVIEW AND ANALYZE BENEFITS UNDER NON-QUALIFIED PLANS IN CONNECTION WITH INQUIRY FROM U.S. TRUSTEE RE: "DEATH BENEFITS" OFFERED UNDER NON-QUALIFIED PLANS |
| 05/24/05 | Feld, S | 0.20 | WORK ON GULF POWER ISSUES | PREPARE AND RESPOND TO EMAILS RE FORMAT OF GULF POWER CHART OF SERVICE ACCOUNTS AND BILLED AMOUNTS |
| 05/24/05 | Feld, S | 0.60 | WORK ON ISSUES RE: APCO & OCALA | REVIEW AND EDIT ADEQUATE ASSURANCE STIPULATION WITH OCALA, REVIEW COMMITTEE COMMENTS ON APCO'S ADEQUATE ASSURANCE STIPULATION |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 05/24/05 | Feld, S | 0.30 | WORK ON ISSUES RE: CITY OF KEY WEST AND WALTERBORO | DEAL WITH INQUIRIES RE OUTSTANDING CHARGES FOR UTILITY SERVICES FOR CITY OF KEY WEST AND WALTERBORO |
| 05/24/05 | Matz, T | 1.50 | FOLLOW UP RE: RESOLUTIONS OF VARIOUS ITEMS | CONTINUING REVIEW OF CORRESPONDENCE FROM XROADS RE: OVERALL STATUS MATTERS AND RECONCILED CLAIMS |
| 05/24/05 | McDonald Henry, S | 0.60 | CONTINUED DILIGENCE RE: WORKMAN'S COMPENSATION OBLIGATIONS | REVIEW OF DOCUMENTS RE: WORKMAN'S COMPENSATION OBLIGATIONS |
| 05/24/05 | Turetsky, D | 1.50 | DILIGENCE IN CONNECTION WITH FINALIZING ENGAGEMENT LETTER WITH DELOITTE AND RELATED OPEN ISSUES IN CONNECTION WITH DELOITTE RETENTION APPLICATION | FURTHER REVIEW AND ANALYSIS OF DELOITTE ENGAGEMENT LETTER IN CONNECTION WITH FINALIZING SAME AND RESOLVING OTHER OPEN ISSUES RELATED TO DELOITTE RETENTION APPLICATION |
| 05/25/05 | Eichel, S | 0.30 | WORK ON ISSUES RE THIRD SUPPLEMENT TO OCP LIST | NO FURTHER INFORMATION |
| 05/25/05 | Feld, S | 0.10 | WORK ON ISSUES RE: CITY OF KEY WEST | TC K. HOYES RE: CITY OF KEY WEST POSTPETITION SEWER CHARGES |
| 05/25/05 | Feld, S | 0.60 | WORK ON ISSUES RE: CITY OF DEFUNIAK | ANALYZE BILLING HISTORY RE: CITY OF DEFUNIAK |
| 05/25/05 | Matz, T | 0.80 | WORK ON RECLAMATION ISSUES | REVIEW SET OFF AND SLOTTING CONTRACT MATTERS |
| 05/25/05 | Turetsky, D | 3.10 | ATTEND TO OPEN ISSUES RE: SAME | ADDITIONAL RESEARCH AND ANALYSIS RE: OPEN ISSUES IN CONNECTION WITH OBJECTION TO MOTION FOR RETIREE COMMITTEE |
| 05/26/05 | McDonald Henry, S | 0.70 | WORK ON RESOLUTION OF ISSUES AND CORRESPONDENCE RE SALE | ANALYSIS OF ISSUES RE: SALE |
| 05/26/05 | Roman, J | 2.10 | CONTINUED WORK ON REVIEW | REVIEW RECLAMATION CORRESPONDENCE WITH SUPPORTING DOCUMENTS |
| 05/26/05 | Turetsky, D | 3.00 | ATTEND TO OPEN ISSUES RE: SAME | FURTHER RESEARCH AND ANALYSIS RE: OPEN ISSUES IN CONNECTION WITH OBJECTION TO MOTION FOR RETIREE COMMITTEE |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 05/27/05 | Baker, D | 1.10 | CONTINUE WORK ON BUSINESS PLAN ISSUES | ANALYZE TIMING OF COMPLETION OF BUSINESS PLAN AND IMPACT OF SAME ON PLAN CONFIRMATION TIMING |
| 05/27/05 | Turetsky, D | 0.10 | DILIGENCE RE: SAME | FURTHER ANALYSIS RE: OPEN ISSUES CONCERNING OBJECTION TO MOTION FOR RETIREE COMMITTEE RAISED BY COMMENT FROM B. KICHLER |
| 05/31/05 | Feld, S | 0.60 | WORK ON FPL ISSUES | REVIEW AND EDIT DRAFT ADEQUATE ASSURANCE STIP. RE: FPL |
| 05/31/05 | Feld, S | 0.50 | WORK ON APCO ISSUES | REVIEW APCO CONTRACTS |
| 05/31/05 | Matz, T | 2.00 | FOLLOW UP WORK RE: SAME AND POSSIBLE CONSIGNMENTS | CONTINUING REVIEW RE: COMMINGLING ISSUES AND POSSIBLE CONSIGNMENTS |
| 05/31/05 | Turetsky, D | 2.40 | ADDITIONAL DILIGENCE IN CONNECTION WITH MEMORANDUM RE: PAYMENTS UNDER NON-QUALIFIED PLANS | FURTHER REVIEW AND ANALYSIS OF NON-QUALIFIED PLANS IN CONNECTION WITH MEMORANDUM RE: PAYMENTS UNDER NON-QUALIFIED PLANS |
| 06/01/05 | Kaloudis, D | 4.20 | ATTEND TO UTILITIES FILES | REVIEW REQUESTS FOR ADEQUATE ASSURANCE AND BOND DEMANDS TO DETERMINE STATUS OF EACH REQUEST, I.E., WHETHER ADDITIONAL INFORMATION IS NEEDED FROM UTILITY COMPANY |
| 06/01/05 | McDonald Henry, S | 0.70 | FOLLOW UP RE: UTILITY ISSUES | REVIEW DOCUMENTS RE: COMPLIANCE WITH UTILITY ORDER |
| 06/02/05 | Baker, D | 3.80 | CONTINUE WORK ON RECLAMATION SETTLEMENT ISSUES | REVIEW ISSUES RAISED BY RECLAMATION CREDITORS IN CONNECTION WITH EFFORTS BY WINN-DIXIE TO SETTLE RECLAMATION CLAIMS |
| 06/02/05 | Kaloudis, D | 3.40 | ATTEND TO FILES | REVIEW REQUESTS FOR ADEQUATE ASSURANCE AND BOND DEMANDS TO DETERMINE STATUS OF EACH REQUEST, I.E., WHETHER ADDITIONAL INFORMATION IS NEEDED FROM UTILITY COMPANY |
| 06/02/05 | Turetsky, D | 0.30 | DILIGENCE RE: WINN-DIXIE SEVERANCE PRACTICES IN CONNECTION WITH ISSUES RAISED IN VOICEMAIL OF J. MCDONALD | ANALYSIS RE: WINN-DIXIE SEVERANCE PRACTICES IN CONNECTION WITH ISSUES RAISED IN VOICEMAIL OF J. MCDONALD |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 06/03/05 | Feld, S | 0.50 | WORK ON FPL ISSUES | REVIEW EMAIL FROM B. WHITE RE FPL'S ADEQUATE ASSURANCE STIP. AND STRATEGIZE RE PROCEDURE FOR APPROVAL OF FPL'S ADEQUATE ASSURANCE STIPULATION |
| 06/03/05 | McDonald Henry, S | 0.40 | WORK RE: LEASE BUYOUT AGREEMENT ISSUES | ANALYSIS OF LEASE BUYOUT AGREEMENT ISSUES |
| 06/03/05 | McDonald Henry, S | 0.30 | WORK ON RUSSELL STOVER MATTER | ANALYSIS OF FACTS RE: RUSSELL STOVER MATTERS |
| 06/03/05 | Turetsky, D | 0.30 | FURTHER DILIGENCE RE: DEATH BENEFITS OFFERED UNDER NON-QUALIFIED PLANS IN PREPARATION FOR CONFERENCE CALL CONCERNING SAME | FURTHER REVIEW AND ANALYZE DEATH BENEFITS OFFERED UNDER NON-QUALIFIED PLANS IN PREPARATION FOR CONFERENCE CALL CONCERNING SAME |
| 06/03/05 | Turetsky, D | 0.40 | DILIGENCE IN CONNECTION WITH MONTHLY STATEMENTS OF WORKED PERFORMED BY PWC | REVIEW AND ANALYZE MONTHLY STATEMENTS OF WORKED PERFORMED BY PWC TO ADDRESS INQUIRY RECEIVED FROM J. STERN RE: SAME |
| 06/06/05 | Feld, S | 0.20 | WORK ON FPL ISSUES | REVIEW MARKUP OF ADEQUATE ASSURANCE STIPULATION, FORWARD SAME VIA EMAIL TO WD UTILITY TEAM |
| 06/06/05 | Leamy, J | 1.40 | WORK ON ADDITIONAL NOTICE PARTY MATTERS | ANALYSIS RE: ADDITIONAL CATEGORIES OF PARTIES TO BE SERVED WITH BAR DATE NOTICE |
| 06/06/05 | Turetsky, D | 0.70 | DILIGENCE RE: ISSUES RELATING TO KERP | FURTHER ANALYSIS RE: OPEN ISSUES RELATED TO KERP IN CONNECTION WITH COMMUNICATION FROM J. MCDONALD RE: SAME |
| 06/06/05 | Turetsky, D | 0.30 | DILIGENCE RE: SAME | REVIEW SCHEDULES AND ANALYSIS RE: ISSUES CONCERNING DBK CONCEPTS CLAIM RAISED IN CALL WITH D. KATZ |
| 06/07/05 | Baker, D | 1.40 | CONTINUE WORK ON MSP/SRP ISSUES | CONTINUE ANALYSIS OF EMPLOYEE CLAIMS ASSERTED PURSUANT TO SRP/MSP |
| 06/07/05 | Feld, S | 0.50 | WORK ON JEA ISSUES | REVIEW AND PREPARE EMAILS RE THREATENED TERMINATION OF SERVICE BY JEA |

8

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 06/07/05 | Leamy, J | 0.40 | WORK ON MATTERS RE: ADDITIONAL NOTICE PARTIES | CONTINUE REVIEW OF ADDITIONAL CATEGORIES OF PARTIES TO BE SERVED WITH BAR DATE NOTICE |
| 06/07/05 | Turetsky, D | 0.70 | DILIGENCE RE: OPEN ISSUES CONCERNING KEY EMPLOYEE RETENTION AND SEVERANCE PLANS | FURTHER ANALYSIS RE: OPEN ISSUES RELATED TO KERP IN CONNECTION WITH COMMUNICATION FROM J. MCDONALD AND D. DOGAN RE: SAME |
| 06/07/05 | Turetsky, D | 0.30 | DILIGENCE IN CONNECTION WITH COMMENTS FROM U.S. TRUSTEE CONCERNING DELOITTE RETENTION APPLICATION | REVIEW AND ANALYZE COMMENTS FROM U.S. TRUSTEE CONCERNING DELOITTE RETENTION APPLICATION |
| 06/07/05 | Turetsky, D | 0.10 | FURTHER DILIGENCE RE: CLAIM HELD BY DBK CONCEPTS | FURTHER ANALYSIS RE: ISSUES CONCERNING DBK CONCEPTS CLAIM RAISED BY D. KATZ |
| 06/08/05 | Turetsky, D | 0.20 | DILIGENCE IN CONNECTION WITH INQUIRY FROM S. LABOURDETTE RE: CERTAIN PERSONAL INJURY ACTIONS | RESEARCH AND ANALYSIS RE: ISSUES RAISED BY VOICEMAIL INQUIRY FROM S. LABOURDETTE CONCERNING CERTAIN PERSONAL INJURY ACTIONS |
| 06/08/05 | Turetsky, D | 0.60 | FURTHER DILIGENCE IN CONNECTION WITH POTENTIAL CONFLICT PARTIES REQUIRING DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 06/08/05 | Turetsky, D | 0.10 | DILIGENCE IN CONNECTION WITH SAME | FURTHER ANALYSIS RE: OPEN ISSUES IN CONNECTION WITH DELOITTE APPLICATION |
| 06/09/05 | Feld, S | 1.10 | WORK ON AGRICULTURAL BOND ISSUES | RESPONSE TO, PREPARE AND REVIEW EMAILS RE STRATEGY W/R/T FLA DEPT OF AGR HEARING ON AGRICULTURAL BOND |
| 06/09/05 | Feld, S | 0.40 | WORK ON APCO ISSUES | REVIEW AND PREPARE EMAILS RE ALLEGED UNPAID APCO INVOICES |
| 06/09/05 | LaMaina, K | 1.10 | WORK ON CLOSING ISSUES | ANALYZE PLANE 2 CLOSING NEXT STEPS TO GET DEAL DONE (1.1) |
| 06/09/05 | Matz, T | 0.80 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO TWO CALLS WITH XROADS RE: OUTSTANDING INFORMATION REQUESTS AND REMAINING RECLAMATION CLAIMS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 06/09/05 | Turetsky, d | 2.10 | FURTHER DILIGENCE RE: OPEN ISSUES IN CONNECTION WITH KEY EMPLOYEE RETENTION AND SEVERANCE PLANS | FURTHER ANALYSIS RE: OPEN ISSUES RELATED TO KERP AND SEVERANCE PLAN IN CONNECTION WITH NOTICE OF CLARIFICATION/COMPROMISE |
| 06/09/05 | Turetsky, D | 0.10 | DILIGENCE IN CONNECTION WITH WORK PERFORMED RE: KEY EMPLOYEE RETENTION AND SEVERANCE PLANS | REVIEW WORK PERFORMED BY WATSON WYATT RE: KEY EMPLOYEE RETENTION AND SEVERANCE PLANS |
| 06/10/05 | Turetsky, D | 1.00 | FURTHER DILIGENCE IN CONNECTION WITH ISSUES RAISED BY U.S. TRUSTEE RE: KEY EMPLOYEE RETENTION PLAN | ANALYSIS AND RESEARCH RE: INQUIRIES AND ISSUES RAISED BY U.S. TRUSTEE IN CONNECTION WITH KERP AND SEVERANCE PLANS |
| 06/13/05 | Turetsky, D | 2.70 | FURTHER DILIGENCE IN CONNECTION WITH OPEN ISSUES RE: KERP | FURTHER ANALYSIS AND RESEARCH RE: OPEN ISSUES RELATED TO KERP AND SEVERANCE PLAN IN CONNECTION WITH NOTICE OF CLARIFICATION/COMPROMISE |
| 06/13/05 | Turetsky, D | 0.10 | DILIGENCE IN CONNECTION WITH SAME | REVIEW AND ANALYSIS RE: ISSUES CONCERNING SKADDEN FEE APPLICATION RAISED BY K. LAMAINA |
| 06/14/05 | Feld, S | 0.70 | WORK ON APCO ISSUES | REVIEW AND RESPOND TO EMAIL FROM E. RAY RE APCO TERMINATION NOTICE, REVIEW AND ANALYZE APCO'S INVOICES |
| 06/14/05 | Turetsky, D | 1.90 | FURTHER DILIGENCE RE: KERP ISSUES AND FINALIZING NOTICE OF COMPROMISE | FURTHER ANALYSIS AND RESEARCH RE: OPEN ISSUES RELATED TO KERP AND SEVERANCE PLAN IN CONNECTION WITH FINALIZING NOTICE OF CLARIFICATION/COMPROMISE |
| 06/15/05 | Baker, D | 0.30 | WORK ON ISSUES RAISED BY H. ETLIN AND S. KAROL RELATING TO SALE ISSUES | REVISE STAFFING FOR SALE PROCESS  IN LIGHT OF ISSUES RAISED BY HOLLY ETLIN AND SHEON KAROL |
| 06/15/05 | Feld, S | 0.80 | WORK ON ISSUES RE: COAST | FINALIZE ADEQUATE ASSURANCE STIPULATION W/ COAST ELECTRIC AND FORWARD VIA EMAIL TO J. MCKAY FOR SIGNATURE |
| 06/15/05 | Turetsky, D | 1.10 | DILIGENCE RE: SAME | RESEARCH AND ANALYSIS CONCERNING KERP AND SEVERANCE PLAN IN CONNECTION WITH RESPONDING TO INQUIRIES AND ISSUES RAISED BY U.S. TRUSTEE |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 06/15/05 | Turetsky, D | 2.70 | FURTHER DILIGENCE AND PREPARATION IN CONNECTION WITH KERP HEARING | FURTHER IDENTIFICATION AND ANALYSIS OF POTENTIAL ISSUES RELATED TO KERP AND SEVERANCE PLAN IN CONNECTION WITH PREPARING FOR HEARING RE: MOTION TO APPROVE SAME |
| 06/16/05 | Baker, D | 2.10 | CONTINUE WORK ON ACE/WORKERS' COMPENSATION ISSUES AND RESOLUTION OF SAME | CONTINUE ANALYSIS OF ACE/WORKERS COMPENSATION ISSUES FOR POSSIBLE RESOLUTION OF SAME |
| 06/16/05 | Leamy, J | 0.60 | WORK ON TRM CORPORATION | REVIEW AND ANALYSIS RE: TRM CORPORATION CONTRACT |
| 06/17/05 | Baker, D | 2.10 | CONTINUE WORK ON RECLAMATION SETTLEMENT ISSUES | CONTINUE ANALYSIS OF ISSUES RAISED BY RECLAMATION CREDITORS IN CONNECTION WITH ON-GOING SETTLEMENT EFFORTS BY WINN-DIXIE |
| 06/20/05 | Baker, D | 0.70 | WORK ON PHARMACY EXECUTORY CONTRACT ISSUES | ANALYZE ISSUES RELATED TO EXECUTORY CONTRACTS UNDER WHICH PHARMACY SERVICES ARE PROVIDED TO WINN-DIXIE CUSTOMERS |
| 06/20/05 | Feld, S | 0.40 | WORK ON FPL ISSUES | REVIEW AND EDIT DRAFT ADEQUATE ASSURANCE STIPULATION W/ FPL AND FORWARD REVISED DRAFT VIA EMAIL TO B. WHITE |
| 06/22/05 | Baker, D | 1.70 | CONTINUE WORK ON ISSUES RELATED TO SALE OF THE STORES | CONTINUE TO ANALYZE STORE SALE ISSUES IDENTIFIED BY SHEON KAROL |
| 06/23/05 | Feld, S | 0.60 | WORK ON FPL ISSUES | FINALIZE OUTSTANDING ISSUES ON DRAFT ADEQUATE ASSURANCE STIP W/ FPL |
| 06/24/05 | Lam, S | 0.70 | ATTENTION TO QUESTION RE: PROPOSED ASSET PURCHASE | REVIEW OF DIP AGREEMENT RE: QUESTIONS FROM WD RE: PROPOSED ASSET PURCHASE |
| 06/24/05 | Leamy, J | 0.20 | WORK ON ISSUES RE: ENVIRONMENTAL CLAIM NOTICING | ANALYSIS RE: WERE ENVIRONMENTAL ENTITIES PROPERLY NOTICED WITH BAR DATE |
| 06/25/05 | Eichel, S | 0.80 | WORK ON ISSUES RE: DEFENSES | ANALYZE ISSUES RE: INSUFFICIENT IDENTIFICATION DEFENSE IN CONNECTION WITH REVIEWING RECLAMATION CLAIMS |
| 06/27/05 | Baker, D | 0.70 | AND CONTINUE WORK ON SETTLEMENT ISSUES FOR RECLAMATION MATTERS | REVIEW REVISED RECLAMATION SETTLEMENT PROPOSAL |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 06/27/05 | Baker, D | 1.10 | WORK ON EMPLOYEE CONTINGENT CASH ISSUES | ANALYZE ISSUES RELATED TO EMPLOYEE CONTINGENT CASH PAYMENTS |
| 06/27/05 | Feld, S | 0.40 | WORK ON APCO ISSUES | COORDINATE DELIVERIES UNDER STIPULATION W/ APCO RE REDUCTION IN BOND AMOUNT |
| 06/27/05 | Feld, S | 0.10 | WORK ON ISSUES RE: ST. LUCIE | REVIEW EMAIL FROM L. HEETER RE CHARGES OWING TO ST. LUCIE COUNTY FOR UTILITY SERVICES |
| 06/27/05 | Gray, R | 0.10 | FOLLOWUP RE: BAR DATE NOTICE FOR BROKERS | CONFER W/ LOGAN & COMPANY RE: BAR DATE NOTICE FOR BROKERS |
| 06/27/05 | Liou, J | 0.80 | ASSIST W/ DUE DILIGENCE | NO LONGER WITH THE FIRM |
| 06/27/05 | Turetsky, D | 2.30 | ADDITIONAL DILIGENCE IN CONNECTION WITH IDENTIFYING POTENTIAL CONFLICT PARTIES REQUIRING DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 06/27/05 | Turetsky, D | 0.20 | DILIGENCE IN CONNECTION WITH CARLTON FIELDS FEE STATEMENT | REVIEW AND ANALYZE MONTHLY STATEMENTS OF WORKED PERFORMED BY CARLTON FIELDS TO ADDRESS INQUIRY RECEIVED FROM J. STERN RE: SAME |
| 06/28/05 | Baker, D | 0.50 | FURTHER WORK ON CONTINGENT CASH ISSUES IN CONNECTION WITH EMPLOYEES | CONTINUE REVIEW AND ANALYSIS OF EMPLOYEE CONTINGENT CASH ISSUES |
| 06/28/05 | Eichel, S | 0.90 | WORK ON OCP ISSUES | ANALYZE ISSUES RELATING TO THE RETENTION OF ORDINARY COURSE PROFESSIONALS |
| 06/28/05 | Leamy, J | 0.30 | WORK ON NOTICING MATTERS | ANALYSIS RE: ADDITIONAL ENTITIES TO RECEIVE BAR DATE NOTICE |
| 06/28/05 | Turetsky, D | 0.60 | ADDITIONAL DILIGENCE TO IDENTIFY POTENTIAL CONNECTIONS WITH PARTIES IN INTEREST WHICH WOULD REQUIRE DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 06/28/05 | Turetsky, D | 1.70 | DILIGENCE IN CONNECTION WITH ISSUES CONCERNING SAME | REVIEW, ANALYZE, AND RESOLVE OPEN ISSUES RELATED TO NOTICE OF 328 RETENTION |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 06/28/05 | Turetsky, D | 0.20 | DILIGENCE IN CONNECTION WITH SAME | ANALYZE ISSUES RAISED BY M. EVANS IN CONNECTION WITH DIGITAL 1 STOP CLAIM |
| 06/29/05 | Baker, D | 1.30 | WORK ON BOARD ISSUES RAISED BY MR. SKELTON | ANALYZE BOARD ISSUES IDENTIFIED BY MR. SKELTON |
| 06/29/05 | Baker, D | 0.70 | WORK ON U.S. TRUSTEE ISSUES | REVIEW ISSUES RAISED BY U.S. TRUSTEE |
| 06/29/05 | Leamy, J | 0.40 | WORK ON ISSUES RE:  SAME | PREPARE AMENDED SCHEDULES FOR FILING |
| 06/29/05 | Turetsky, D | 0.10 | DILIGENCE IN CONNECTION WITH SAME | REVIEW "JAGS CONTRACT" IN CONNECTION WITH RESOLVING ISSUES RAISED BY J. LEAMY CONCERNING SAME |
| 06/29/05 | Turetsky, D | 0.70 | FURTHER DILIGENCE IN CONNECTION WITH ISSUES RELATED TO NOTICE OF 328 RETENTION | REVIEW, ANALYZE, AND RESOLVE OPEN ISSUES RELATED TO NOTICE OF 328 RETENTION |
| 06/30/05 | Feld, S | 0.10 | WORK ON FPL ISSUES | REVIEW EMAIL FROM B. WHITE RE ADEQUATE ASSURANCE STIP W/ FPL |
| 06/30/05 | Leamy, J | 0.40 | WORK ON SAME RE: WAIVER OF UPLOADING OF CREDITOR LISTS | REVIEW  OF LOCAL RULE RE: UPLOADING OF CREDITOR LISTS AND DETERMINE THAT WAIVER REQUEST IN INSTANT CASE IS APPROPRIATE |
| 07/01/05 | McDonald Henry, S | 2.30 | WORK RE RESOLUTION RE SAME | FURTHER ANALYSIS RE: SAME |
| 07/01/05 | Toussi, S | 2.50 | ADDRESS FOLLOW-UP ISSUES RE STATEMENTS OF RECLAMATION | RESEARCH OUTSTANDING ISSUES RE POTENTIAL DEFENSES IN STATEMENTS OF RECLAMATION |
| 07/01/05 | Turetsky, D | 0.40 | DILIGENCE IN CONNECTION WITH ISSUES ARISING UNDER LEASES | RESEARCH RE: ISSUES ARISING UNDER CLC LEASES |
| 07/04/05 | Turetsky, D | 1.00 | DILIGENCE IN CONNECTION WITH RETENTION DOCUMENTS TO WHICH BLACKSTONE, XROADS, HOULIHAN, AND ALVAREZ ARE SUBJECT | RESEARCH RE: RETENTION DOCUMENTS TO WHICH BLACKSTONE, XROADS, HOULIHAN, AND ALVAREZ ARE SUBJECT IN CONNECTION WITH ADDRESSING INQUIRY FROM K. LOGAN RE: SAME |
| 07/05/05 | Feld, S | 0.50 | WORK ON HUNTSVILLE ISSUES | REVIEW FILE RE CANCELLATION OF INSURANCE COVERAGE BY CAPITOL INDEMNITY W/R/T HUNTSVILLE UTILITY |
| 07/05/05 | Feld, S | 0.40 | FOLLOW RE:  COAST STIPULATION | COORDINATE ADEQUATE ASSURANCE PAYMENT TO COAST ELECTRIC UNDER STIP |
| 07/05/05 | Feld, S | 0.20 | WORK ON FLORIDA KEYS ISSUES | FINALIZE ADEQUATE ASSURANCE PROPOSAL TO FLORIDA KEYS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 07/05/05 | Turetsky, D | 0.30 | DILIGENCE RE:  SAME | RESEARCH IN CONNECTION WITH INQUIRY BY C. JACKSON CONCERNING ISSUES RELATED TO PROJECT ASSISTANTS MOTION |
| 07/06/05 | Matz, T | 2.00 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO CALLS AND CORRESPONDENCE WITH XROADS RE: RESPONSES TO RECLAMATION VENDORS |
| 07/06/05 | Turetsky, D | 0.10 | DILIGENCE IN CONNECTION WITH REQUEST FROM IRS RE:  LIMITED EXTENSION OF GOVERNMENT BAR DATE | REVIEW REQUEST FROM IRS RE: LIMITED EXTENSION OF GOVERNMENT BAR DATE |
| 07/07/05 | Matz, T | 0.70 | FOLLOW UP WORK ON SAME | CONTINUING REVIEW WITH RESPECT TO CALL WITH XROADS RE: INFORMATION FOR VENDORS, INCLUDING SARGENTO, RALCORP AND GEORGIA PACIFIC |
| 07/07/05 | Turetsky, D | 0.40 | DILIGENCE RE:  INQUIRY FROM GE CAPITAL CONCERNING COPIER LEASE | REVIEW AND ANALYZE INQUIRY FROM GE CAPITAL CONCERNING COPIER LEASE |
| 07/07/05 | Turetsky, D | 0.20 | DILIGENCE RE: REQUIREMENTS CONCERNING FILING OF AMENDMENTS TO SUBSIDIARY SCHEDULES IN CONNECTION WITH INQUIRY TO K. WARD FROM FLORIDA COURT CLERK | REVIEW AND RESEARCH RE: REQUIREMENTS CONCERNING FILING OF AMENDMENTS TO SUBSIDIARY SCHEDULES IN CONNECTION WITH INQUIRY TO K. WARD FROM FLORIDA COURT CLERK |
| 07/08/05 | Feld, S | 0.10 | WORK ON APCO ISSUES | PREPARE EMAIL TO C. LEO RE APCO'S ADMINISTRATIVE CHARGES |
| 07/08/05 | Matz, T | 1.20 | FOLLOW UP WORK ON LATE-FILED AND SUPPLEMENTARY CLAIMS | CONTINUING REVIEW RE: LATE-FILED AND SUPPLEMENTARY CLAIMS |
| 07/08/05 | Matz, T | 0.50 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO CALLS WITH XROADS RE: PREFERENCE ISSUES FOR RECLAMATION STIPULATION, DISCLOSURE AND SCHEDULING |
| 07/08/05 | Turetsky, D | 0.30 | DILIGENCE RE:  FEE APPLICATION PROCEDURES IN CONNECTION WITH INQUIRY FROM R. GILBERT | REVIEW  FEE APPLICATION PROCEDURES IN CONNECTION WITH INQUIRY FROM R. GILBERT |
| 07/11/05 | Feld, S | 0.10 | WORK ON ISSUE RE: HERNANDO VALLEY | REVIEW CORRESPONDENCE DATED 6/30/05 BY K. WEISSENGER, HERNANDO COUNTY ATTORNEY, SENT UNDER EMAIL DATED 7/11/05 |

14

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 07/11/05 | Feld, S | 0.30 | WORK ON ISSUES RE:  NEW SMYRNA | REVIEW INDEMNITY BOND HELD BY NEW SMYRNA, PREPARE EMAIL TO D. BITTER RE STATUS OF ADEQUATE ASSURANCE PROPOSAL |
| 07/11/05 | Feld, S | 0.50 | WORK ON ISSUE RE: CONSTELLATION NEW ENERGY | REVIEW AND PREPARE EMAILS RE CONSTELLATION'S DRAW ON L/C |
| 07/11/05 | Matz, T | 0.90 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO CORRESPONDENCE WITH E. GORDON RE: PREFERENCE/RECLAMATION AND NOTICING PROJECT FOR 7/15 |
| 07/12/05 | Matz, T | 0.80 | FOLLOW UP WORK ON PREFERENCE MATERIAL REQUIRED BY RECLAMATION STIPULATION | CONTINUING REVIEW RE: PREFERENCE MATERIAL REQUIRED BY RECLAMATION STIPULATION |
| 07/12/05 | McDonald Henry, S | 1.60 | FOLLOW UP RE SURETY BOND ISSUE | FURTHER ANALYSIS RE: SURETY BOND ISSUE |
| 07/12/05 | Turetsky, D | 0.10 | DILIGENCE RE: SAME | REVIEW MOTION TO APPROVE STIPULATION CONCERNING RECONCILIATION AND TREATMENT OF TRADE VENDOR RECLAMATION CLAIMS IN CONNECTION WITH INQUIRY FROM M. HAGGERTY RE: SAME |
| 07/12/05 | Turetsky, D | 0.20 | DILIGENCE IN CONNECTION WITH CLAIM HELD BY DIGITAL 1 | ANALYZE ISSUES RAISED BY VOICEMAIL FROM M. EVANS IN CONNECTION WITH DIGITAL 1 STOP CLAIM |
| 07/13/05 | Baker, D | 1.10 | WORK ON CONTINGENT CASH ISSUES AND RELATED EMPLOYEE MATTERS | CONTINUE REVIEW OF CONTINGENT CASH PAYMENT SCHEDULED TO BE MADE TO EMPLOYEES |
| 07/13/05 | Feld, S | 0.70 | WORK ON UTILITY ISSUES | REVIEW STATUS OF OUTSTANDING PROPOSALS RE ADEQUATE ASSURANCE AND BOND DEMANDS |
| 07/13/05 | Matz, T | 0.50 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO CALL WITH XROADS RE: COLE'S QUALITY FOODS, STORE FIXTURES MATTER, AND GONNELLA FROZEN PRODUCTS |
| 07/13/05 | McDonald Henry, S | 0.90 | FOLLOW UP ISSUE WITH RESPECT TO ACE MOTION | FURTHER ANALYSIS OF FACTS AND LAW RELEVANT TO ACE MOTION |

15

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|--------------------|
| 07/13/05 | Turetsky, D | 1.80 | ADDITIONAL DILIGENCE RE: PARTIES REQUIRING DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 07/14/05 | Turetsky, D | 0.40 | DILIGENCE IN CONNECTION WITH SAME | REVIEW PLEADINGS CONCERNING AUCTION PROCESS IN CONNECTION WITH RESPONDING TO INQUIRY FROM J. SCHELL CONCERNING SAME |
| 07/14/05 | Turetsky, D | 0.40 | DILIGENCE IN CONNECTION WITH LETTER RECEIVED FROM D. SALFIRE:  C. MARSHBURN | REVIEW AND ANALYZE ISSUES RAISED BY LETTER RECEIVED FROM D. SALFIRE:  C. MARSHBURN |
| 07/15/05 | Toussi, S | 0.40 | FOLLOW-UP ISSUES RE SAME | FOLLOWUP WITH RECLAMATION VENDORS TO DISCUSS STATUS OF RECLAMATION CLAIMS |
| 07/15/05 | Turetsky, D | 0.20 | FURTHER DILIGENCE IN CONNECTION WITH ISSUES RELATING TO SKADDEN FEE APPLICATION | ANALYZE ISSUES RAISED BY K. LAMAINA IN CONNECTION WITH SKADDEN FEE APPLICATION |
| 07/18/05 | Matz, T | 0.30 | FOLLOW UP RE: PREFERENCE, CREDITS | CONTINUING REVIEW WITH RESPECT TO CALL WITH M. FORNARI RE: PREFERENCE CREDIT |
| 07/20/05 | Matz, T | 0.40 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO A CALL WITH C. ROY OF CHEVRON RE: AMENDMENTS TO STIPULATION |
| 07/21/05 | Matz, T | 0.80 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO CALLS AND CORRESPONDENCE WITH M. K. SHAVER RE: COLE'S QUALITY FOODS CLAIM AND DISPUTE |
| 07/21/05 | Turetsky, D | 0.20 | DILIGENCE RE:  SAME | REVIEW PROCEDURES FOR SUBMITTING MONTHLY STATEMENTS IN CONNECTION WITH RESOLVING ISSUES RAISED BY J. PETERSON OF DELOITTE RE: SAME |
| 07/22/05 | Turetsky, D | 0.30 | DILIGENCE IN CONNECTION WITH INQUIRY FROM L. APPEL RE:  DEATH BENEFITS UNDER MSP | REVIEW AND ANALYSIS OF MSP IN CONNECTION WITH RESPONDING TO INQUIRY FROM L. APPEL RE: DEATH BENEFITS OFFERED UNDER MSP |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 07/24/05 | Turetsky, D | 1.30 | FURTHER DILIGENCE IN CONNECTION WITH PARTIES REQUIRING DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 07/25/05 | Matz, T | 0.80 | FOLLOW UP WORK RE: JUNIOR LIEN PROGRAM & SECURITY | CONTINUING REVIEW RE: JUNIOR LIEN PROGRAM & SECURITY |
| 07/25/05 | Matz, T | 0.80 | CORRESPONDENCE & FOLLOW UP WORK RE: MADIX CLAIM, DATE COUNTING INQUIRY, AMENDMENTS TO CLAIM | CONTINUING REVIEW OF CORRESPONDENCE TO MADIX COUNSEL RE:  MADIX CLAIM, DATE COUNTING INQUIRY, AMENDMENTS TO CLAIM |
| 07/25/05 | Matz, T | 0.50 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO MADIX CLAIM, AND AMENDMENTS THERETO |
| 07/25/05 | Ravin, A | 1.30 | WORK ON ISSUES RE 365(D)(4) | CONTINUE TO REVIEW AND REVISE 365(D)(4) MOTION |
| 07/25/05 | Turetsky, D | 2.00 | FURTHER DILIGENCE IN CONNECTION WITH PARTIES REQUIRING DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS AND CASE FILINGS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 07/26/05 | Feld, S | 0.10 | WORK ON ISSUE RE: STARKVILLE | REVIEW EMAIL FROM C. SILCOX  RE  OUTSTANDING PREPETITION AMOUNT FOR STARKVILLE |
| 07/26/05 | Matz, T | 0.30 | FOLLOW UP RE:  MADIX ADDITIONAL INFORMATION | CONTINUING REVIEW RE: MADIX ADDITIONAL INFORMATION RE: RECLAMATION CLAIM |
| 07/26/05 | Matz, T | 0.80 | FOLLOW UP QUESTIONS RE: JUNIOR LIEN SECURITY | CONTINUING REVIEW WITH RESPECT TO CALL WITH C. JOHNSON RE: JUNIOR LIEN SECURITY |
| 07/26/05 | Turetsky, D | 0.60 | ADDITIONAL DILIGENCE IN CONNECTION WITH PARTIES REQUIRING DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 07/26/05 | Turetsky, D | 0.20 | DILIGENCE IN CONNECTION WITH FEE RELATED INQUIRY OF J. PETERSON OF DELOITTE | REVIEW FEE APPLICATION PROCEDURES IN CONNECTION WITH RESPONDING TO INQUIRY FROM J. PETERSON RE: SAME |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|--------------------|
| 07/27/05 | Gray, R | 1.20 | WORK ON HALLMARK ISSUES | REVIEW/ANALYZE HALLMARK CONTRACT ISSUES |
| 07/27/05 | Gray, R | 1.80 | FURTHER WORK ON HALLMARK ISSUES | FURTHER REVIEW/ANALYZE HALLMARK CONTRACT ISSUES FOLLOWING CALL W/ COMPANY |
| 07/27/05 | Turetsky, D | 2.00 | FURTHER DILIGENCE IN CONNECTION WITH PARTIES REQUIRING DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 07/28/05 | Turetsky, D | 0.90 | FURTHER DILIGENCE IN CONNECTION WITH PARTIES REQUIRING DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 07/29/05 | Leamy, J | 2.90 | WORK ON ISSUES RE INFORMATION RESOURCES CONTRACTS | DRAFT MOTION TO REJECT INFORMATION RESOURCES CONTRACTS |
| 07/29/05 | Toussi, S | 0.80 | FOLLOW-UP ISSUES RE HUFF TESTIMONY AND PROFFER | DISCUSS WITH HUFF TESTIMONY RE STIPULATION ON RECLAMATION DEMANDS (.5); RESEARCH RE SAME (.3) |
| 07/29/05 | Turetsky, D | 0.60 | FURTHER DILIGENCE IN CONNECTION WITH SAME | FURTHER RESEARCH RE: STATUS OF PREPETITION SEVERANCE CLAIMS |
| 08/01/05 | Turetsky, D | 0.50 | ADDITIONAL DILIGENCE RE: SAME | ADDITIONAL ANALYSIS IN CONNECTION WITH OPEN ISSUES RELATED TO SECOND SUPPLEMENTAL DECLARATION OF D. J. BAKER |
| 08/02/05 | Turetsky, D | 0.20 | DILIGENCE IN RESPONDING TO DUE DILIGENCE REQUEST IN CONNECTION WITH EXIT FACILITY | NO FURTHER INFORMATION. INADVERTENTLY BILLED TO WRONG CLIENT.  SKADDEN, ARPS WILL REDUCE FEE REQUEST BY ASSOCIATED AMOUNT, $75. |
| 08/02/05 | Turetsky, D | 0.20 | FURTHER DILIGENCE IN CONNECTION WITH SAME | ADDITIONAL ANALYSIS IN CONNECTION WITH OPEN ISSUES RELATED TO SECOND SUPPLEMENTAL DECLARATION OF D. J. BAKER |
| 08/03/05 | Matz, T | 0.60 | FOLLOW UP RE:  TRADE TERMS QUESTIONS & NOTICING | CONTINUING REVIEW RE: TRADE TERMS GOING FORWARD AND NOTICING MATTERS |

18

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/03/05 | Turetsky, D | 1.90 | DILIGENCE IN CONNECTION WITH CONTEMPLATED PURCHASING CARD AGREEMENT | REVIEW ANALYZE BACKGROUND DOCUMENTS AND MATERIALS IN CONNECTION WITH CONTEMPLATED PURCHASING CARD AGREEMENT |
| 08/03/05 | Turetsky, D | 0.60 | ADDITIONAL DILIGENCE RE: POTENTIAL PARTIES REQUIRING DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 08/04/05 | Baker, D | 0.60 | WORK ON ISSUES WITH RESPECT TO PLAN EXCLUSIVITY | ANALYZE PLAN EXCLUSIVITY OPTIONS AVAILABLE TO WINN-DIXIE |
| 08/04/05 | Matz, T | 0.40 | FOLLOW UP WORK RE: DREYER'S ADDITIONAL INVOICES | CONTINUING REVIEW WITH RESPECT TO DREYER'S GRAND ADDITIONAL INVOICES RE: RECLAMATION CLAIM |
| 08/04/05 | Turetsky, D | 1.00 | FURTHER DILIGENCE IN CONNECTION WITH ISSUES RELATING TO CORPORATE CARD AGREEMENT | FURTHER ANALYSIS AND REVIEW OF BACKGROUND DOCUMENTS IN CONNECTION WITH RESOLVING OPEN ISSUES RELATED TO CORPORATE CARD AGREEMENT |
| 08/04/05 | Turetsky, D | 0.60 | FURTHER DILIGENCE IN CONNECTION WITH POTENTIAL PARTIES REQUIRING DISCLOSURE | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 08/05/05 | Matz, T | 0.40 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO S. WEITZEL OF DREYER'S GRAND ICE CREAM'S QUESTIONS RE: RECLAMATION WINDOW |
| 08/05/05 | Turetsky, D | 0.50 | DILIGENCE IN CONNECTION WITH ISSUES RELATED TO SAME | FURTHER ANALYSIS AND REVIEW OF BACKGROUND DOCUMENTS IN CONNECTION WITH RESOLVING OPEN ISSUES RELATED TO CORPORATE CARD AGREEMENT |
| 08/08/05 | Matz, T | 0.30 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO CALLS WITH XROADS RE: VARIATIONS TO STIPULATION AND JULY 29TH ORDER |

19

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/08/05 | Turetsky, D | 0.60 | FURTHER DILIGENCE IN CONNECTION WITH ISSUES RELATED TO AGREEMENT | FURTHER ANALYSIS AND REVIEW OF BACKGROUND DOCUMENTS IN CONNECTION WITH RESOLVING OPEN ISSUES RELATED TO CORPORATE CARD AGREEMENT |
| 08/09/05 | Feld, S | 0.20 | WORK ON LAKELAND ISSUE | REVIEW STATUS OF LAKELAND'S BOND RESCISSION LETTER, PREPARE EMAIL TO C. MICHAEL RE REQUEST COPY OF RESCISSION LETTER |
| 08/09/05 | Feld, S | 0.60 | WORK ON ISSUES RE: CITY OF ATLAMONTE, CITY OF OXFORD, SUMTER | REVIEW AND COMMENT ON DRAFT LETTER TO SUMTER RE ADEQUATE ASSURANCE PROPOSAL, REVIEW DRAFT EMAIL TO CITY OF OXFORD RE ADEQUATE ASSURANCE STIPULATION, REVIEW EMAIL FROM B. KICHLER RE COMMENTS OF CITY OF ALTAMONTE PROPOSED RESCISSION LETTER; RECONCILE ALTAMONTE PREPETITION AMOUNT |
| 08/09/05 | Matz, T | 0.20 | FOLLOW UP WORK RE: SAME | CONTINUING REVIEW WITH RESPECT TO CORRESPONDENCE WITH P. HOFFMAN OF HUHTAMAKI AMERICAS RE: CLAIM ISSUES |
| 08/09/05 | Matz, T | 0.50 | FOLLOW UP RE: SILVER SPRINGS BOTTLED WATER AND PEPSI CLAIMS | CONTINUING REVIEW RE: SILVER SPRINGS BOTTLED WATER AND PEPSI CLAIMS |
| 08/09/05 | Matz, T | 0.30 | FOLLOW UP CORRESPONDENCE TO VENDORS RE: SAME | CORRESPONDENCE WITH VENDORS RE: HUHTAMAKI AMERICAS CLAIM |
| 08/10/05 | Feld, S | 0.20 | WORK ON ISSUES RE: FLORIDA POWER CORP. | PREPARE EMAIL TO R. JOHNSON RE ADEQUATE ASSURANCE STIPULATION W/ FLORIDA POWER |
| 08/10/05 | Feld, S | 0.80 | WORK ON ISSUES RE: CITY OF FLORENCE & ELECTRIC BOARD OF CHATTANOOGA | REVIEW STATUS OF PROPOSALS TO ELECTRIC BOARD OF CHATTANOOGA AND CITY OF FLORENCE, REVIEW DRAFT EMAIL RE STORES SUBJECT TO SALE SERVICED BY FOREGOING UTILITIES |
| 08/10/05 | Matz, T | 0.30 | FOLLOW UP WORK RE: PERDUE CLAIM | CONTINUING REVIEW RE: PERDUE CLAIM |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/10/05 | Turetsky, D | 0.20 | FURTHER DILIGENCE RE: ISSUES RELATED TO PROPOSED CORPORATE CARD AGREEMENT | FURTHER ANALYSIS AND REVIEW OF BACKGROUND DOCUMENTS IN CONNECTION WITH RESOLVING OPEN ISSUES RELATED TO CORPORATE CARD AGREEMENT |
| 08/11/05 | Gray, R | 0.10 | FOLLOWUP RE:  KENTUCKY MEDICAID PROVIDER AGREEMENT | CONTACT COMPANY TO OBTAIN INFORMATION RE: KENTUCKY MEDICAID PROVIDER AGREEMENT |
| 08/11/05 | Turetsky, D | 0.60 | FURTHER DILIGENCE IN CONNECTION WITH ISSUES RELATED TO PROPOSED CORPORATE CARD AGREEMENT | FURTHER ANALYSIS AND REVIEW OF BACKGROUND DOCUMENTS IN CONNECTION WITH RESOLVING OPEN ISSUES RELATED TO CORPORATE CARD AGREEMENT |
| 08/12/05 | Feld, S | 0.90 | WORK ON ISSUES RE:  CITY OF FLORENCE AND CHATTANOOGA | CONTINUE TO ANALYZE STATUS OF ACCOUNTS AND LOCATIONS SERVICED BY CITY OF FLORENCE AND CHATTANOOGA |
| 08/12/05 | Feld, S | 0.50 | WORK ON ISSUE RE: SUMTER | ANALYZE STATUS OF ACCOUNTS AND LOCATIONS SERVICED BY SUMTER, REVIEW EMAILS RE  STATUS OF LOCATION SERVICE BY SUMTER |
| 08/15/05 | Baker, D | 1.40 | WORK ON EMPLOYEE SEVERANCE ISSUES | ANALYZE ENTITLEMENT OF SEVERED EMPLOYEE TO SEVERANCE UNDER APPLICABLE COURT ORDERS |
| 08/15/05 | Eichel, S | 0.20 | WORK ON ISSUE RE: CARDINAL HEALTH | ANALYZE ISSUE RE: CARDINAL HEALTH RECLAMATION CLAIM |
| 08/15/05 | Turetsky, D | 0.60 | DILIGENCE RE:  ISSUES ARISING CONCERNING DELOITTE RETENTION | REVIEW AND ANALYSIS RE: ISSUES ARISING IN CONNECTION WITH PROPOSED RETENTION OF DELOITTE & TOUCHE |
| 08/16/05 | Turetsky, D | 0.50 | FURTHER DILIGENCE IN CONNECTION WITH ISSUES ARISING UNDER WINN-DIXIE CORPORATE SEVERANCE PROGRAM | FURTHER REVIEW, RESEARCH, AND ANALYSIS OF CORPORATE SEVERANCE PROGRAM IN CONNECTION WITH RESOLVING ISSUES CONCERNING SAME |
| 08/16/05 | Turetsky, D | 0.30 | FURTHER DILIGENCE IN CONNECTION WITH POTENTIAL DISCLOSURE PARTIES | FURTHER REVIEW, RESEARCH, AND ANALYSIS OF CORPORATE SEVERANCE PROGRAM IN CONNECTION WITH RESOLVING ISSUES CONCERNING SAME |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/16/05 | Turetsky, D | 0.10 | DILIGENCE RE:  SAME | REVIEW CLAIM HELD BY R. JENKINS IN CONNECTION WITH RESPONDING TO INQUIRY FROM SAME |
| 08/17/05 | Feld, S | 0.30 | WORK ON CITY OF OXFORD ISSUES | REVIEW FILE IN PREPARATION OF CALL WITH P. MALLETTE |
| 08/17/05 | Gray, R | 0.40 | WORK ON PLAN TIMELINE ISSUES | REVIEW/REVISE PLAN PROCESS TIMETABLE IN CONTEXT OF ALTERNATIVE EMERGENCE STRATEGIES |
| 08/17/05 | Turetsky, D | 0.20 | DILIGENCE RE:  OLD MISSION RECLAMATION CLAIM | REVIEW BACKGROUND DOCUMENTS RE: OLD MISSION RECLAMATION CLAIM IN CONNECTION WITH INQUIRY RECEIVED |
| 08/17/05 | Turetsky, D | 0.10 | DILIGENCE RE:  ISSUES CONCERNING PENMAN PLAZA LEASE | REVIEW FILES FOR PENMAN PLAZA LEASE IN CONNECTION WITH ADDRESSING INQUIRY CONCERNING SAME |
| 08/18/05 | Turetsky, D | 0.10 | FURTHER DILIGENCE RE: ISSUES RELATING TO POSTPETITION SEVERANCE PLAN | FURTHER REVIEW AND ANALYSIS OF POSTPETITION SEVERANCE PLAN IN CONNECTION WITH RESOLVING ISSUES RELATING TO SAME |
| 08/18/05 | Turetsky, D | 1.00 | FURTHER DILIGENCE IN CONNECTION WITH POTENTIAL DISCLOSURE PARTIES | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 08/18/05 | Turetsky, D | 0.10 | DILIGENCE RE:  SAME | ANALYSIS RE: INQUIRY FROM A. SIEG |
| 08/19/05 | Turetsky, D | 1.40 | ADDITIONAL DILIGENCE IN CONNECTION WITH POTENTIAL DISCLOSURE PARTIES | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 08/19/05 | Turetsky, D | 0.30 | DILIGENCE RE:  SAME | REVIEW AND ANALYSIS RE: OPEN ISSUES RELATED TO RETENTION OF DELOITTE & TOUCHE |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/22/05 | Turetsky, D | 0.90 | DILIGENCE RE: ISSUES ARISING IN CONNECTION WITH PROPOSED RETENTION OF ASSESSMENT TECHNOLOGIES | REVIEW AND ANALYSIS RE: BACKGROUND DOCUMENTS IN CONNECTION WITH RESOLVING ISSUES CONCERNING PROPOSED RETENTION OF ASSESSMENT TECHNOLOGIES |
| 08/23/05 | Ravin, A | 0.20 | ADDRESS FOLLOW UP ISSUES RE: SAME | ANALYZE BANKRUPTCY IMPLICATIONS OF BOND LEASES |
| 08/23/05 | Turetsky, D | 0.30 | DILIGENCE RE: TIME ENTRY INQUIRY FROM K. LAMAINA | REVIEW TIME RECORDS IN CONNECTION WITH INQUIRY FROM K. LAMAINA |
| 08/24/05 | Feld, S | 1.60 | WORK ON PLAN ISSUE | ANALYZE SUBSTANTIVE CONSOLIDATION FACTORS RE REORGANIZATION PLAN |
| 08/24/05 | Leamy, J | 0.20 | FOLLOW UP RE: CLAIM OBJECTION PROCEDURES AND UST RESPONSE | ANALYSIS WHETHER CHANGES NECESSARY TO PROPOSED OMNIBUS CLAIM OBJECTION PROCEDURES ORDER BASED ON US TRUSTEE INFORMAL RESPONSE TO MOTION |
| 08/24/05 | Matz, T | 0.80 | FOLLOW UP WORK RE: RESOLUTION OF 4 CLAIMS | REVIEW AND COMMENT ON 4 ADDITIONAL STATEMENTS OF RECLAMATION |
| 08/24/05 | Matz, T | 0.40 | FOLLOW UP WORK RE: OVERALL STATUS OF STATEMENTS OF RECLAMATION AND OPT-IN ARGUMENTS | CONTINUING REVIEW OF OVERALL STATUS OF STATEMENTS OF RECLAMATION AND OPT-IN ARGUMENTS |
| 08/25/05 | Feld, S | 0.80 | WORK ON ISSUES RE: PLAQUEMINE | REVIEW AND PREPARE EMAILS RE POTENTIAL SETTLEMENT OF PLAQUEMINE MOTION FOR ADEQUATE ASSURANCE, PREPARE FOR HEARING ON PLAQUEMINE MOTION |
| 08/25/05 | Matz, T | 0.40 | FOLLOW UP WORK RE: SUMMARY OF STATUS OF ALL CLAIMS | CONTINUING REVIEW OF SUMMARY OF STATUS OF ALL CLAIMS |
| 08/29/05 | Feld, S | 0.40 | FOLLOW-UP RE: PLAQUEMINE ISSUES | REVIEW EMAILS RE POTENTIAL SETTLEMENT OR ADJOURNMENT OF HEARING ON PLAQUEMINE'S MOTION, PREPARE FOR HEARING ON PLAQUEMINE MOTION |
| 08/29/05 | Feld, S | 0.20 | WORK ON ISSUE RE: CHATTANOOGA STORES | RECONCILE LIST OF STORES SERVICED BY CHATTANOOGA |
| 08/29/05 | Matz, T | 0.60 | FOLLOW UP WORK RE: RESOLUTION OF D.L. LEE CLAIM, STATUS REPORT AND PERIODIC PAYMENTS | CONTINUING REVIEW OF RESOLUTION OF D.L. LEE CLAIM, STATUS REPORT AND PERIODIC PAYMENTS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|--------------------|
| 08/29/05 | Turetsky, D | 0.10 | DILIGENCE IN CONNECTION WITH ISSUES CONCERNING SKADDEN'S RETENTION BY WINN-DIXIE | REVIEW SKADDEN APPLICATION AND RETENTION PLEADINGS IN CONNECTION WITH RESOLVING ISSUES CONCERNING SKADDEN'S RETENTION BY WINN-DIXIE |
| 08/29/05 | Turetsky, D | 1.10 | FURTHER DILIGENCE IN CONNECTION WITH POTENTIAL DISCLOSURE PARTIES | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 08/30/05 | Eichel, S | 0.20 | WORK ON ISSUES RE: CARDINAL HEALTH | ANALYZE ISSUES RE: CARDINAL HEALTH PREFERENCE ANALYSIS IN CONNECTION WITH CARDINAL HEALTH POTENTIALLY OPTING INTO TRADE LIEN PROGRAM |
| 08/30/05 | Turetsky, D | 1.20 | DILIGENCE RE:  ISSUES CONCERNING SAME | FURTHER RESEARCH AND ANALYSIS RE: OPEN ISSUES CONCERNING MOTION TO FILE DISBANDMENT PLEADINGS UNDER SEAL |
| 08/31/05 | Feld, S | 0.20 | FOLLOW UP ON PLAN ISSUE ANALYSIS | CONTINUE TO REVIEW SUBSTANTIVE CONSOLIDATION FACTORS |
| 08/31/05 | Matz, T | 0.10 | FOLLOW UP RE:  SAME | CONTINUING REVIEW RE: COURT DECISION RE: OLD DIXIE PACA CLAIM |
| 08/31/05 | Turetsky, D | 2.80 | FURTHER DILIGENCE RE: ISSUES IN CONNECTION WITH MOTION TO FILE UNDER SEAL PLEADINGS RELATING TO APPOINTMENT OF EQUITY COMMITTEE | FURTHER RESEARCH AND ANALYSIS RE: OPEN ISSUES CONCERNING MOTION TO FILE DISBANDMENT PLEADINGS UNDER SEAL |
| 08/31/05 | Turetsky, D | 0.10 | FURTHER DILIGENCE RE: PROPOSED RETENTION OF ASSESSMENT TECHNOLOGIES | REVIEW AND ANALYZE BACKGROUND DOCUMENTS IN CONNECTION WITH RESOLVING ISSUE CONCERNING PROPOSED RETENTION OF ASSESSMENT TECHNOLOGY |
| 09/01/05 | Turetsky, D | 0.50 | DILIGENCE RE:  SAME | ANALYSIS RE: ISSUES CONCERNING SERVICE OF DISBANDMENT MOTION IN CONNECTION WITH ISSUES RAISED BY R. WINTER RE: SAME |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|--------------------|
| 09/01/05 | Turetsky, D | 0.40 | FURTHER DILIGENCE RE: POTENTIAL DISCLOSURE PARTIES | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 09/02/05 | Leamy, J | 1.10 | WORK ON SPECIAL BAR DATE ISSUES | REVIEW PARTIES TO RECEIVE SPECIAL BAR DATE NOTICE |
| 09/02/05 | Turetsky, D | 1.80 | FURTHER DILIGENCE RE: ISSUES CONCERNING FILING UNDER SEAL OF PLEADINGS CONCERNING EQUITY COMMITTEE | FURTHER ANALYSIS AND REVIEW RE: ISSUES CONCERNING FILING UNDER SEAL OF PLEADINGS CONCERNING EQUITY COMMITTEE |
| 09/06/05 | Eichel, S | 0.20 | WORK ON ISSUES RE: SYLVANIA LIGHTING SERVICES, INC. | ANALYZE ISSUES RE: SYLVANIA LIGHTING SERVICES, INC. RECLAMATION DEMAND |
| 09/06/05 | Turetsky, D | 3.00 | FURTHER DILIGENCE RE: ISSUES CONCERNING DEBTORS' MOTION TO SEAL PLEADINGS RELATING TO EQUITY COMMITTEE | FURTHER ANALYSIS AND REVIEW OF OPEN ISSUES CONCERNING DEBTORS' MOTION TO SEAL PLEADINGS RELATED TO EQUITY COMMITTEE |
| 09/06/05 | Turetsky, D | 0.40 | DILIGENCE IN CONNECTION WITH SAME | RESEARCH RE: ISSUES CONCERNING DEBTORS' MOTION FOR SECOND EXTENSION OF EXCLUSIVITY |
| 09/07/05 | Leamy, J | 1.60 | WORK ON MISCELLANEOUS SPECIAL BAR DATE MATTERS | REVIEW AND ANALYSIS RE: TASKS TO BE COMPLETED IN CONJUNCTION WITH SPECIAL BAR DATE |
| 09/07/05 | Turetsky, D | 2.40 | FURTHER DILIGENCE RE: ISSUES CONCERNING MOTION TO SEAL PLEADINGS CONCERNING EQUITY COMMITTEE | FURTHER RESEARCH RE: ISSUES CONCERNING MOTION TO SEAL PLEADINGS CONCERNING EQUITY COMMITTEE |
| 09/08/05 | Feld, S | 0.10 | FOLLOW UP ON FLORIDA POWER | PREPARE EMAIL TO R. JOHNSON RE  ADEQUATE ASSURANCE STIPULATION W/ FLORIDA POWER |
| 09/08/05 | Feld, S | 0.20 | WORK ON ISSUE RE:  CITY OF FAYETTE | REVIEW EMAIL FROM C. LEO RE CONTRACT WITH CITY OF FAYETTE, REVIEW CONTRACT AND FORWARD TO J. LEAMY |
| 09/08/05 | Kaloudis, D | 0.20 | FOLLOW UP ON ISSUE RE: STORE 1852 | REVIEW LEASE FILE OF STORE 1852 RE: STORE 1852 |
| 09/08/05 | Leamy, J | 1.00 | WORK ON MISCELLANEOUS SPECIAL BAR DATE ISSUES | CONTINUE REVIEW AND ANALYSIS RE: MATTERS TO BE COMPLETED IN CONJUNCTION WITH SPECIAL BAR DATE |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 09/08/05 | Turetsky, D | 0.20 | ADDITIONAL DILIGENCE RE: ISSUES CONCERNING MOTION TO SEAL PLEADINGS CONCERNING EQUITY COMMITTEE | ADDITIONAL RESEARCH RE: ISSUES CONCERNING MOTION TO SEAL PLEADINGS CONCERNING EQUITY COMMITTEE |
| 09/09/05 | Leamy, J | 1.50 | WORK ON MISCELLANEOUS SPECIAL BAR DATE MATTERS | CONTINUE REVIEW AND ANALYSIS RE: MATTERS TO BE COMPLETED IN CONJUNCTION WITH SPECIAL BAR DATE |
| 09/09/05 | Turetsky, D | 0.30 | FURTHER DILIGENCE RE: ISSUES CONCERNING MOTION BY CREDITORS COMMITTEE TO DISBAND EQUITY COMMITTEE | ANALYSIS RE: ISSUES CONCERNING MOTION BY CREDITORS COMMITTEE TO DISBAND EQUITY COMMITTEE IN CONNECTION WITH INQUIRY RECEIVED FROM J. MCCONNELL |
| 09/12/05 | Gray, R | 0.10 | FOLLOW UP RE:  RETENTION DISCLOSURE UPDATES | REVIEW STATUS/COMMUNICATE NEXT STEPS RE: RETENTION DISCLOSURE UPDATES |
| 09/12/05 | Leamy, J | 0.10 | WORK RE:  CLC MOTION | TC W/ CREDITOR COMMITTEE COUNSEL RE: CLC MOTION |
| 09/12/05 | Turetsky, D | 1.70 | DILIGENCE RE:  ISSUES RELATED TO CONFIDENTIALITY AGREEMENTS IN CONNECTION WITH MOTION TO DISBAND EQUITY COMMITTEE | REVIEW AND ANALYZE ISSUES RELATED TO CONFIDENTIALITY AGREEMENTS IN CONNECTION WITH MOTION TO DISBAND EQUITY COMMITTEE |
| 09/12/05 | Turetsky, D | 0.10 | DILIGENCE RE:  SAME | REVIEW COMMUNICATION FROM S. ROSS AND ANALYSIS RE: EQUIPMENT AT NORTH CAROLINA STORE |
| 09/12/05 | Turetsky, D | 0.20 | FURTHER DILIGENCE RE: POTENTIAL DISCLOSURE PARTIES | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |
| 09/13/05 | Kaloudis, D | 0.20 | FOLLOW UP ON WASTE MANAGEMENT ISSUE | CALL WASTE MANAGEMENT COMPANY RE: PREPETITION CLAIMS |
| 09/13/05 | McDonald Henry, S | 0.70 | FOLLOW UP RE:  SAME | ANALYSIS OF ISSUES RELATING TO REJECTION ISSUE |
| 09/13/05 | McDonald Henry, S | 0.30 | FOLLOW-UP RE:  ISSUE | ANALYSIS OF ISSUES RELATING TO SUBSTANTIVE CONSOLIDATION |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 09/14/05 | Turetsky, D | 1.10 | FURTHER DILIGENCE RE: ISSUES CONCERNING SEALING OF PLEADINGS RELATING TO REQUESTED DISBANDMENT OF EQUITY COMMITTEE | FURTHER RESEARCH RE: ISSUES CONCERNING SEALING OF PLEADINGS RELATING TO REQUESTED DISBANDMENT OF EQUITY COMMITTEE |
| 09/15/05 | Gray, R | 0.10 | FOLLOW UP RE: LOGAN RESPONSE TO ATECH REQUEST | COMMUNICATE W/ LOGAN PERSONNEL RE: RESPONSE TO ATECH REQUEST |
| 09/15/05 | Kaloudis, D | 0.20 | FOLLOW UP ON ISSUES RE: STORE 1328 | FOLLOW UP ON OUTSTANDING LEASE RELATED CHARGES RE: WINN-DIXIE STORE 1328 |
| 09/16/05 | Barusch, R | 2.00 | WORK ON PRESS RELEASE ISSUES | REVIEW AND REVISE PRESS RELEASE |
| 09/16/05 | Bonachea, L | 0.20 | FOLLOW-UP RE: ON EQUITY COMMITTEE PLEADINGS | NO LONGER WITH THE FIRM |
| 09/16/05 | Feld, S | 0.60 | FOLLOW UP RE: MISSISSIPPI VALLEY AND HILLSBOROUGH | PREPARE EMAIL TO B. FITZGERALD AND J PERRYMAN RE PROPOSED STIPULATIONS W/ MISSISSIPPI VALLEY AND HILLSBOROUGH |
| 09/16/05 | Turetsky, D | 0.80 | FURTHER DILIGENCE RE: SAME | FURTHER REVIEW AND ANALYSIS RE: ISSUES ARISING IN CONNECTION WITH DISBANDMENT MOTION |
| 09/19/05 | McDonald Henry, S | 0.80 | WORK ON 365 ISSUE | ANALYSIS OF CONFIDENTIAL 365 ISSUE |
| 09/19/05 | McDonald Henry, S | 0.70 | WORK ON ADMINISTRATIVE/502 ISSUES | ANALYSIS OF CONFIDENTIAL 502 ISSUE |
| 09/19/05 | Turetsky, D | 0.50 | FURTHER DILIGENCE RE: ISSUES ARISING IN CONNECTION WITH CREDITORS COMMITTEE MOTION TO DISBAND EQUITY COMMITTEE | FURTHER RESEARCH IN CONNECTION WITH ISSUES RELATED TO DISBANDMENT MOTION |
| 09/20/05 | Feld, S | 0.10 | FOLLOW UP LIFE INSURANCE ISSUE | REVIEW  REQUEST FOR SURRENDER OF LIFE INSURANCE POLICY |
| 09/20/05 | Feld, S | 0.30 | FOLLOW UP RE: FLORIDA POWER  CORP., FLORIDA KEYS | REVIEW EMAIL FROM B. COLLINS RE PAYMENT TO FLORIDA KEYS, PREPARE EMAIL TO R. JOHNSON RE ADEQUATE ASSURANCE STIPULATION W/ FLORIDA POWER |
| 09/20/05 | Turetsky, D | 0.20 | FURTHER DILIGENCE RE: SAME | FURTHER RESEARCH IN CONNECTION WITH ISSUES RELATED TO DISBANDMENT MOTION |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 09/21/05 | Feld, S | 0.20 | FOLLOW UP ON TOBACCO BOND ISSUES | REVIEW AND PREPARE EMAILS RE POTENTIAL TERMINATION OF TOBACCO BOND BY LIBERTY MUTUAL |
| 09/22/05 | Feld, S | 0.10 | FOLLOW UP RE: TOBACCO BOND ISSUE | REVIEW EMAILS RE STATUS OF POTENTIAL TERMINATION OF TOBACCO BOND |
| 09/23/05 | Kaloudis, D | 2.00 | FOLLOW UP ON ISSUES REGARDING BUEHLER'S PROOF OF CLAIMS | REVISE PROOFS OF CLAIM FOR FILING IN BUHLER FOODS INC, ET AL. BANKRUPTCY CASES |
| 09/26/05 | Ravin, A | 0.20 | ADDRESS FOLLOW UP ISSUES RE:  SAME | ANALYZE E.W. JAMES AGREEMENT BASED UPON TELEPHONE CONFERENCE WITH J. MILTON |
| 09/27/05 | Bonachea, L | 0.10 | WORK RE:  SUBLEASE AGREEMENT | NO LONGER WITH THE FIRM |
| 09/27/05 | Gray, R | 0.10 | FOLLOW UP RE:  KONICA STATUS | REVIEW FILES/COMMUNICATE NEXT STEPS RE: KONICA ISSUES |
| 09/27/05 | Kaloudis, D | 0.10 | FOLLOW UP ON ESCROW ISSUE RE:  SAME | ANALYZE ESCROW UNDER ORIGINAL LEASE RE:  EW JAMES |
| 09/27/05 | Kaloudis, D | 0.30 | FOLLOW UP ON LOUISIANA ISSUES | ANALYZE STATUS OF CLECO BOND DEMAND |
| 09/28/05 | Kaloudis, D | 0.40 | FOLLOW UP ON ISSUE RE: STORES 416 AND 2707 | RESEARCH ALLEGED OUTSTANDING RENT AND RELATED AMOUNTS RE: STORES 416 AND 2707 |
| 09/28/05 | Kaloudis, D | 0.20 | FOLLOW UP ON BUEHLERS CALCULATION ISSUE | CALL WITH M. CHLEBOVIC RE: BUEHLER PROOFS OF CLAIM |
| 09/28/05 | Kaloudis, D | 0.80 | FOLLOW UP ON BUEHLERS PROOF OF CLAIM CDS | RESEARCH WHETHER BUEHLER PROOFS OF CLAIM WERE DOCKETED CORRECTLY ON ECF |
| 09/28/05 | Turetsky, D | 6.40 | FURTHER DILIGENCE RE: ISSUES CONCERNING MOTION RE:  CREDITORS COMMITTEE'S MOTION TO DISBAND EQUITY COMMITTEE | FURTHER REVIEW AND ANALYZE ISSUES RELATED TO DISBANDMENT MOTION IN CONNECTION WITH DRAFTING DEBTORS' MOTION FOR SUMMARY JUDGMENT |
| 09/29/05 | Kaloudis, D | 1.10 | FOLLOW UP ON ISSUES RE: BUEHLERS PROOF OF CLAIM | PREPARE  BUEHLER PROOFS OF CLAIM PACKAGE FOR SUBMISSION TO COURT |
| 09/30/05 | Turetsky, D | 0.40 | DILIGENCE RE:  ISSUES CONCERNING SAME | RESEARCH RE: ISSUES RAISED BY DDI REQUEST FOR ACCESS TO DISBANDMENT MOTION |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 09/30/05 | Turetsky, D | 1.00 | FURTHER DILIGENCE RE: POTENTIAL DISCLOSURE PARTIES | ADDITIONAL REVIEW AND ANALYSIS OF DOCUMENTS RECEIVED FROM DEBTORS, CASE FILINGS, AND SKADDEN CONNECTIONS SEARCH RESULTS TO IDENTIFY POTENTIAL DISCLOSURE PARTIES |

29

# EXHIBIT D-3
## OTHER VAGUELY DESCRIBED ACTIVITIES
### (SECOND INTERIM FEE APPLICATION)

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 05/02/05 | LaMaina, K | 0.80 | CORRESPONDENCE RE ASSET SALE MOTIONS WITH LOCAL COUNSEL | CORRESPONDENCE RE ASSET SALE MOTIONS WITH LOCAL COUNSEL, SMITH HULSEY (C. JACKSON) TO GET DEALS DONE (.8) |
| 05/02/05 | LaMaina, K | 0.80 | CORRESPONDENCE RE PHARMACY MOTION, OBJECTION DEADLINE, AND STATUS ON ASSETS | CORRESPONDENCE RE PHARMACY MOTION, OBJECTION DEADLINE, AND STATUS ON ASSETS WITH M. LEBLANC (.8) |
| 05/03/05 | Barusch, R | 1.30 | DISCLOSURE ISSUES | REVIEW DISCLOSURE ISSUES LIST |
| 05/03/05 | LaMaina, K | 0.40 | REVIEW CORRESPONDENCE RE ENVIRONMENTAL SURVEYS | ANALYZE HARAHAN SALE AGREEMENT REGARDING ENVIRONMENTAL SURVEYS (.4) |
| 05/03/05 | LaMaina, K | 1.00 | CORRESPONDENCE RE FRIDAY HEARING | PREPARE FOR FRIDAY HEARING RE ASSET DISPOSITIONS (1.0) |
| 05/03/05 | Matz, T | 0.30 | CORRESPONDENCE RE: SAME | REVIEWING CORRESPONDENCE RE: EXTENSION OF ADVERSARY STATUS HEARING |
| 05/03/05 | Ravin, A | 0.10 | ADDRESS ISSUES RE: SAME | CONTINUE TO ANALYZE 365(D)(4) OBJECTIONS |
| 05/04/05 | Feld, S | 0.20 | REVIEW CORRESPONDENCE RE: UTILITIES | REVIEW CORRESPONDENCE REC'D 5/3/05 FROM S. SCHRANK, PEACE RIVER ELECTRIC COOP AND FORWARD VIA EMAIL TO D. KALOUDIS |
| 05/04/05 | LaMaina, K | 0.30 | CONFIRM CORRESPONDENCE RE CURE COSTS | CORRESPONDENCE WITH XROADS, B. GASTON ON CURE COSTS TO CONFIRM NUMBERS (.3) |
| 05/04/05 | LaMaina, K | 0.40 | CORRESPONDENCE RE INDEMNIFICATION AND EXECUTED SALE AGREEMENT | REVIEW INDEMNIFICATION ON SALE AGREEMENT (.4) |
| 05/04/05 | LaMaina, K | 1.60 | CORRESPONDENCE RE VA TAX AND 1146(C) TAXES | PREPARE MEMO TO TEAM TO ADDRESS ISSUE ON POST CLOSING TAXES ON TAXING AUTHORITY (1.6) |
| 05/04/05 | Toussi, S | 0.60 | FOLLOW-UP WORK  AND CORRESPONDENCE RE SAME | CORRESPONDENCE WITH XROADS RE STATUS OF RECLAMATION CLAIMS AND PROPOSED RESOLUTIONS (.6) |

1

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 05/05/05 | Gray, R | 0.10 | ASSIST WITH ISSUES RAISED BY ZEPHYR EGG | TC W/ REPRESENTATIVE OF ZEPHYR EGG AND DRAFT EMAIL TO PACA TEAM RE: ISSUES RAISED |
| 05/05/05 | LaMaina, K | 0.20 | REVIEW CORRESPONDENCE RE SAME | REVIEW EMAIL FROM LOGAN ON BAR DATE (.2) |
| 05/05/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO SAME | CONTINUE TO ANALYZE PROPOSED 365(D)(4) ORDER |
| 05/05/05 | Toussi, S | 0.80 | ADDRESS ISSUES RE EXTENSION OF PROCEEDINGS, CORRESPONDENCE RE SAME | RESEARCH ISSUES RELATED TO EXTENDING TIME TO RESPOND TO OLD DIXIE'S MOTION UNDER BANKRUPTCY RULES (.6); DRAFT CORRESPONDENCE RE RESULTS OF RESEARCH (.2) |
| 05/06/05 | LaMaina, K | 0.50 | CORRESPONDENCE RE FOOD LION SALE AGREEMENT | CONFERENCE E. DAVIS ON FOOD LION TRANSACTION (.5) |
| 05/06/05 | LaMaina, K | 0.30 | REVIEW CORRESPONDENCE RE PLANE 2 | REVIEW STATUS ON PLANE 2 TO KEEP MOVING ALONG (.3) |
| 05/06/05 | McDonald Henry, S | 0.30 | CORRESPONDENCE REGARDING SAME | DRAFT CORRESPONDENCE TO S. TOUSSI REGARDING CIRCULATION OF PACA REPORT |
| 05/06/05 | Ravin, A | 0.10 | ADDRESS ISSUES RE: SAME | CONTINUE TO ANALYZE AFCO ORDER IN LIGHT OF MEMO FROM P. NECKLES |
| 05/08/05 | Ravin, A | 0.10 | ADDRESS ISSUES RE: SAME | ANALYZE ISSUES RE: MORTGAGEE'S INTEREST IN AFCO MOTION IN LIGHT OF MEMOS FROM AND INFORMATION PROVIDED BY P. NECKLES |
| 05/08/05 | Toussi, S | 0.30 | CORRESPONDENCE RE SAME | DRAFT CORRESPONDENCE RE STATUS OF PACA REPORT AND REASONS WHY CERTAIN PACA CLAIMS REMAINED UNRESOLVED |
| 05/08/05 | Toussi, S | 0.50 | REVIEW CORRESPONDENCE RE SAME | REVIEW RECENT CORRESPONDENCE FROM SEVERAL UNRESOLVED PACA CLAIMANTS AND INCORPORATE CORRESPONDENCE INTO PACA REPORT (.5) |
| 05/09/05 | Ravin, A | 0.70 | ADDRESS VARIOUS ISSUES RELATED TO SAME | ANALYZE VARIOUS ISSUES RE: DIP'S INTERPLAY WITH AFCO MOTION AND MORTGAGEE'S INTEREST IN AFCO MOTION |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 05/09/05 | Toussi, S | 0.70 | AND ADDRESS ISSUES AND CORRESPONDENCE RE SAME | REVIEW CORRESPONDENCE BY RECLAMATION VENDORS IN CONNECTION WITH THEIR RECLAMATION DEMANDS (.5); DRAFT EMAILS TO XROADS RE CERTAIN CLAIMS AND PROPOSED RESOLUTION FOR RECLAMATION REPORTS (.2) |
| 05/10/05 | Ravin, A | 0.10 | ADDRESS ISSUES RELATED TO SAME | ANALYZE LEASE FOR STORE 2019 AND INFORMATION DISCUSSED WITH J. VINCEQUERRA |
| 05/10/05 | Ravin, A | 0.10 | ADDRESS ISSUES RELATED TO SAME | ANALYZE LOGISTICS FOR AIRPLANE AUCTION BASED UPON TELEPHONE CONFERENCE WITH R. BEINE |
| 05/10/05 | Ravin, A | 0.10 | ADDRESS ISSUES RELATED TO SAME | ANALYZE EXCLUSIVITY MOTION |
| 05/11/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE RE: LEASE REJECTION ISSUES AND BUEHLER'S CASE | REVIEW CORRESPONDENCE FROM A. RAVIN REGARDING LEASE REJECTION ISSUES |
| 05/12/05 | LaMaina, K | 0.20 | REVIEW CORRESPONDENCE RE TRUSTEE OBJECTION TO PLANE SALE MOTION | REVIEW CORRESPONDENCE FROM C. JACKSON RE TRUSTEE OBJECTION TO PLANE SALE MOTION (.2) |
| 05/12/05 | LaMaina, K | 0.30 | REVIEW CORRESPONDENCE RE HARAHAN SALE | REVIEW HARAHAN SALE STATUS (.3) |
| 05/12/05 | LaMaina, K | 0.10 | REVIEW CORRESPONDENCE RE FOOD LION ORDER | REVIEW CORRESPONDENCE RE FOOD LION ORDER FROM C. JACKSON (.1) |
| 05/12/05 | LaMaina, K | 0.30 | CORRESPONDENCE RE SAME | PREPARE MEMO TO L. BONACHEA ON ORDINARY COURSE PROFESSIONALS TO GET UPDATED INFORMATION ON PROFESSIONALS (.3) |
| 05/12/05 | LaMaina, K | 0.40 | REVIEW CORRESPONDENCE RE RETENTION OF CONSULTANTS | REVIEW MEMORANDUM FROM SALE TEAM ON RETENTION OF CONSULTANTS (.4) |
| 05/12/05 | McDonald Henry, S | 0.60 | REVIEW CORRESPONDENCE REGARDING THE SAME | REVIEW CORRESPONDENCE FROM M. FRIEDMAN REGARDING RECLAMATION CLAIMS |
| 05/16/05 | LaMaina, K | 3.20 | REVIEW CORRESPONDENCE RE SAME THAT INCLUDES CASES CITED THEREIN | REVIEW CORRESPONDENCE FROM OPPOSING COUNSEL ON LEASE PAYMENTS (3.2) |
| 05/16/05 | Ravin, A | 0.10 | DRAFT CORRESPONDENCE RE: SAME TO PARTIES IN INTEREST | DRAFT CORRESPONDENCE RE: SAME TO PARTIES IN INTEREST INCLUDING M. BARR AND D. FIORILLO |
| 05/16/05 | Ravin, A | 0.10 | REVIEW CORRESPONDENCE RE: TERMINATION OF LEASE | NO FURTHER INFORMATION |

3

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 05/16/05 | Ravin, A | 0.20 | ADDRESS ISSUES RE: SAME | ANALYZE 365(D)(4) OBJECTION IN LIGHT OF CORRESPONDENCE FROM M. BAKST |
| 05/17/05 | Gray, R | 0.20 | ASSIST WITH ISSUES ON RESPONSE TO RETIREE COMMITTEE MOTION | STRATEGIZE W/ D. TURETSKY RE: ISSUES TO BE ADDRESSED IN RESPONSE TO RETIREE COMMITTEE MOTION |
| 05/17/05 | Gray, R | 0.20 | ASSIST WITH ISSUES ON KERP MOTION | CONF W/ D. TURETSKY RE: ADDRESSING KERP MOTION ISSUES |
| 05/17/05 | LaMaina, K | 0.40 | REVIEW CORRESPONDENCE RE AUCTION | REVIEW EMAIL FROM PLANE COUNSEL ON AUCTION STATUS ON LEASE (.4) |
| 05/17/05 | Neckles, P | 1.00 | CORRESPONDENCE REGARDING ISSUES ASSOCIATED WITH MOTION | DRAFT E-MAIL REGARDING ISSUES ASSOCIATED WITH MOTION |
| 05/17/05 | Toussi, S | 0.40 | VARIOUS CORRESPONDENCE RE SAME | CORRESPOND WITH XROADS RE CERTAIN RECLAMATION CLAIMS AND PROPOSED RESOLUTION FOR RECLAMATION REPORTS |
| 05/18/05 | LaMaina, K | 0.40 | REVIEW CORRESPONDENCE RE AUCTION UP-DATES | PREPARE FOR HEARING BY REVIEWING CORRESPONDENCE FROM INTERESTED PARTIES ON PLANE STATUS (.4) |
| 05/19/05 | LaMaina, K | 1.30 | ASSIST WITH HEARING ISSUES | REVIEW/REVISE SALE ORDER/PLANE TRANSACTION DOCUMENTS FOR HEARING (1.3) |
| 05/19/05 | LaMaina, K | 0.20 | PREPARE AND DISSEMINATE INFORMATION | PREPARE TRANSACTION DOCUMENTS ON PLANE SALE AND DISTRIBUTE SAME (.2) |
| 05/19/05 | LaMaina, K | 0.70 | PROVIDE INFORMATION ON SAME | RESPOND TO PARTIES IN INTEREST QUESTIONS (PLANE COUNSEL, PURCHASE) ON PLANE STATUS (.7) |
| 05/19/05 | Matz, T | 0.20 | CORRESPONDENCE RE: SAME | REVIEWING CORRESPONDENCE RE: STORE SALES' INVOICING QUESTIONS |
| 05/19/05 | Matz, T | 0.90 | CORRESPONDENCE RE: OUTSTANDING ITEMS ON 15 RECLAMATION CLAIMS | REVIEWING CORRESPONDENCE RE: OUTSTANDING ITEMS REGARDING 15 VENDORS' RECLAMATION CLAIMS |
| 05/19/05 | Ravin, A | 0.20 | ADDRESS ISSUES RE: SAME | ANALYZE LEASE FOR STORE 328 AND MATTERS DISCUSSED WITH M. PUYANIC |

4

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 05/19/05 | Toussi, S | 0.50 | REVIEW CORRESPONDENCE RE RECLAMATION CLAIMS | REVIEW RECLAMATION DEMANDS BY VARIOUS RECLAMATION VENDORS AND ANALYZE SAME IN CONNECTION WITH PREPARING RECLAMATION REPORT |
| 05/20/05 | Matz, T | 0.20 | CORRESPONDENCE RE: OUTSTANDING PACA CLAIMS | REVIEWING CORRESPONDENCE REGARDING PACA CLAIMS |
| 05/20/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO SAME | ANALYZE AIRPLANE SALE ORDER |
| 05/23/05 | Ravin, A | 0.20 | REVIEW MULTIPLE CORRESPONDENCE RE: STORE NO. 1408 PROPERTY TAX/MAY RENT SETOFF ISSUES | NO FURTHER INFORMATION |
| 05/24/05 | LaMaina, K | 1.60 | REVIEW CORRESPONDENCE RE HARAHAN SALE: LATEST APA | REVIEW LATEST HARAHAN APA (1.6) |
| 05/24/05 | LaMaina, K | 0.20 | REVIEW CORRESPONDENCE RE MISC. ASSET SALE MOTION | REVIEW CORRESPONDENCE FROM SMITH HULSEY ON MISC. ASSET SALE MOTION (.2) |
| 05/24/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO EXCLUSIVITY MOTION | ANALYZE EXCLUSIVITY MOTION |
| 05/26/05 | Toussi, S | 0.50 | VARIOUS CORRESPONDENCE RE SAME | NEGOTIATE CLAIM AMOUNT, ATTORNEY FEES, AND INTEREST EXPENSES WITH VARIOUS PACA VENDORS WHOSE CLAIMS REMAIN OUTSTANDING |
| 05/27/05 | LaMaina, K | 0.40 | CORRESPONDENCE RE PLANE 072 SALE CLOSING | TELEPHONE CALLS TO PARTIES IN INTEREST ON PLANE TO MOVE STATUS ALONG (.4) |
| 05/27/05 | Toussi, S | 0.60 | ADDRESS ISSUES RE OUTSTANDING PACA CLAIMS | ANALYZE PACA CLAIM AMOUNTS FOR VARIOUS PACA VENDORS WHOSE CLAIMS REMAIN OUTSTANDING |
| 05/31/05 | LaMaina, K | 0.30 | REVIEW CORRESPONDENCE RE STATUS OF CLOSING ON SALE 072 | REVIEW MEMORANDA FROM K. NARODICK FIRM (PLANE COUNSEL) ON CLOSING STATUS, NEXT STEPS (.3) |
| 05/31/05 | LaMaina, K | 0.40 | REVIEW CORRESPONDENCE RE FOOD LION TRANSACTION AND PREPARE MEMO RE SAME | REVIEW MEMORANDUM FROM OPPOSING COUNSEL ON DEADLINE FOR DEAL AND PREPARE MEMORANDUM ON SAME FOR FILE (.4) |
| 05/31/05 | Matz, T | 0.80 | CORRESPONDENCE RE:  J. AUSTIN, CAMPBELL'S, ACME MC GARY CLAIMS | REVIEWING CORRESPONDENCE RE:  J. AUSTIN, CAMPBELL'S, ACME MC CRARY CLAIMS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 05/31/05 | Matz, T | 0.70 | CORRESPONDENCE RE: COMMINGLING ISSUES | REVIEWING CORRESPONDENCE RE: COMMINGLING ISSUES |
| 06/01/05 | LaMaina, K | 0.30 | REVIEW CORRESPONDENCE RE: SAME | REVIEW COMPANY CORRESPONDENCE ON FOOD LION DEAL CLOSING ISSUES (.3) |
| 06/01/05 | Leamy, J | 0.20 | ANALYSIS RE: CONTRACT | ANALYSIS RE: SPRINT CONTRACT |
| 06/01/05 | Leamy, J | 1.50 | ANALYSIS RE: CONTRACTS | ANALYSIS RE: WHETHER IBM AND CLC CONTRACTS ARE TRUE LEASES OR FINANCINGS |
| 06/01/05 | Leamy, J | 0.40 | ANALYSIS RE: ADDITIONAL ISSUES RAISED ON CALL | ANALYSIS RE: SCHEDULES TO BE AMENDED PER CALL W/ XROADS AND LOGAN PERSONNEL |
| 06/01/05 | Toussi, S | 0.40 | REVIEW VARIOUS CORRESPONDENCE RE: SAME | ANALYZE HEINZ'S PACA CLAIM AND WHETHER CERTAIN PRODUCTS QUALIFY AS PACA PRODUCTS |
| 06/02/05 | Barusch, R | 1.00 | DISCLOSURE ISSUES | ANALYZE DISCLOSURE POINTS (1.0) |
| 06/02/05 | Kaloudis, D | 0.60 | REVIEW CORRESPONDENCE RE: CITY OF SMYRNA AND CLECO | REVIEW CORRESPONDENCE FROM THE CITY OF SMYRNA RE: CITY OF SMYRNA'S REQUEST FOR ADEQUATE ASSURANCE (.3); REVIEW CORRESPONDENCE FROM CLECO RE: CLECO'S REQUEST FOR ADEQUATE ASSURANCE AND BOND DEMAND (.3) |
| 06/02/05 | Leamy, J | 2.30 | ANALYSIS RE: REJECTIONS | ANALYSIS RE: POTENTIAL DAMAGES IF CLC CONTRACT REJECTED |
| 06/02/05 | Leamy, J | 1.80 | ANALYSIS OF CONTRACTS | ANALYSIS RE: WHETHER IBM CONTRACT IS TRUE LEASE |
| 06/02/05 | Ravin, A | 0.10 | REVIEW CORRESPONDENCE RE: STORE 2409 | NO FURTHER INFORMATION |
| 06/02/05 | Toussi, S | 0.40 | REVIEW VARIOUS CORRESPONDENCE RE: CLAIMS AND STATUS | ANALYZE CERTAIN RECLAMATION DEMANDS AND CORRESPONDENCE AND PREPARE PROPOSED RESOLUTION FOR RECLAMATION REPORT |
| 06/03/05 | Toussi, S | 1.20 | ADDRESS ISSUES RE: OUTSTANDING PACA CLAIMS BY LEASA INDUSTRIES, DOLE FRUIT, AND AMENDOLA'S CLIENTS | REVIEW AND ANALYZE THE PACA CLAIMS THAT REMAIN OUTSTANDING WITH LEASA INDUSTRIES, DOLE FRUIT, AND AMENDOLA'S CLIENTS (DEL MONTE, MARBERG) AND PREPARE PROPOSED RESOLUTION OF CLAIMS FOR XROADS TO REVIEW |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|----------------------|---------------------|
| 06/06/05 | Leamy, J | 0.90 | ANALYSIS RE: CONTRACTS | CONTINUED ANALYSIS RE: WHETHER CLC AND IBM CONTRACTS ARE LEASES OR FINANCINGS |
| 06/06/05 | Toussi, S | 0.80 | ADDRESS ISSUES RE: LEASA INDUSTRIES AND REMAINING OUTSTANDING PACA CLAIMS | REVIEW AND ANALYZE THE PACA CLAIMS THAT REMAIN OUTSTANDING WITH LEASA INDUSTRIES, AND REMAINING PACA CLAIMANTS WHO HAVE NOT PROVIDED SUPPORTING DOCUMENTATION |
| 06/07/05 | Ravin, A | 0.10 | ADDRESS ISSUES RELATED TO BUEHLERS CONFLICTS | ANALYZE POTENTIAL BUEHLERS CONFLICTS |
| 06/07/05 | Ravin, A | 0.40 | ADDRESS VARIOUS ISSUES RELATED TO SAME | ANALYZE OMNIBUS LEASE REJECTION MOTION |
| 06/08/05 | Dowd, A | 0.30 | REVIEW PREVIOUS CORRESPONDENCE RELATING TO TREATMENT OF ONGOING VESTING OF RESTRICTED STOCK | REVIEW PREVIOUS CORRESPONDENCE RELATING TO TREATMENT OF ONGOING VESTING OF RESTRICTED STOCK TO DETERMINE PARTICIPANT'S RIGHTS TO RELATED PAYMENTS |
| 06/08/05 | LaMaina, K | 0.20 | REVIEW CORRESPONDENCE RE: HARAHAN | REVIEW STATUS OF HARAHAN (.2) |
| 06/08/05 | Ravin, A | 0.10 | ADDRESS VARIOUS ISSUES RELATED TO BUHELERS LEASES | ANALYZE BUEHLERS LEASES |
| 06/09/05 | LaMaina, K | 0.10 | REVIEW CORRESPONDENCE RE: CLOSING | REVIEW MEMORANDUM FROM PURCHASE COUNSEL ON PLANE 2 RE PROCEEDS (.1) |
| 06/09/05 | LaMaina, K | 0.10 | REVIEW CORRESPONDENCE RE: HARAHAN | REVIEW MEMORANDUM FROM K. KIRSCHNER ON HARAHAN (.1) |
| 06/09/05 | Ravin, A | 0.80 | ADDRESS VARIOUS LEASE ISSUES INCLUDING ISSUES RELATED TO STORES 817, 1908, AND 1764 | ANALYZE LEASES FOR STORES 817, 1908, AND 1764 |
| 06/09/05 | Toussi, S | 0.40 | ADDRESS ISSUES RE: RECONCILIATION INFORMATION | WORK ON RECONCILING RECLAMATION DEMANDS WITH WINN-DIXIE RECORDS IN CONNECTION WITH PREPARING RECLAMATION STATEMENTS |
| 06/10/05 | LaMaina, K | 0.20 | ADDRESS CORRESPONDENCE RE: SALE 072 PROCEEDS | PREPARE MEMORANDUM TO PLANE COUNSEL, BANK, COMPANY ON PLANE 2 PROCEEDS (.2) |
| 06/10/05 | Ravin, A | 0.10 | ADDRESS ISSUES RELATED TO SAME | ANALYZE PENMAN PLAZA MOTION TO COMPEL |
| 06/10/05 | Ravin, A | 0.80 | ADDRESS VARIOUS LEASE RELATED ISSUES | NO FURTHER INFORMATION |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 06/13/05 | Eichel, S | 0.20 | REVIEW CORRESPONDENCE RE:  CHARTS PREPARED FOR COMPANY AND WORK ON ISSUES RELATED THERETO | REVIEW AND ANALYZE CORRESPONDENCE RE: CHARTS PREPARED FOR COMPANY IN CONNECTION WITH STATEMENT OF PAYMENTS MADE TO OCPS |
| 06/13/05 | LaMaina, K | 0.40 | REVIEW CORRESPONDENCE RE:  LEASES | REVIEW MEMORANDUM FROM A. RAVIN ON LEASES (.4) |
| 06/13/05 | LaMaina, K | 0.30 | CORRESPONDENCE RE: INSURANCE | PREPARE MEMORANDUM ON INSURANCE STATUS IN CASES (.3) |
| 06/13/05 | LaMaina, K | 0.40 | CORRESPONDENCE RE: LITIGATION AND VENUE | PREPARE MEMORANDUM ON LITIGATION AND VENUE  (.4) |
| 06/13/05 | LaMaina, K | 0.50 | CORRESPONDENCE RE: GENERAL AND SECURED CLAIMS AND EXECUTORY CONTRACTS | PREPARE MEMORANDUM TO J. LEAMY ON GENERAL AND SECURED CLAIMS AND EXECUTORY CONTRACTS (.5) |
| 06/13/05 | LaMaina, K | 0.30 | CORRESPONDENCE RE: UTILITIES AND PACA ISSUES | PREPARE MEMORANDUM TO S. FELD ON UTILITIES AND PACA ISSUES |
| 06/13/05 | McDonald Henry, S | 0.70 | CORRESPONDENCE RE: SAME | EMAILS TO PROFESSIONALS RE: SCHEDULING FEE HEARINGS |
| 06/13/05 | Toussi, S | 0.20 | ADDRESS ISSUES RE:  LEASA | ANALYZE LEASA'S PACA CLAIM AND COMPARE TO COMPANY RECORDS FOR OUTSTANDING INVOICES |
| 06/14/05 | Toussi, S | 0.70 | FOLLOW UP ISSUES RE: RECLAMATION STATEMENTS, REVIEW CORRESPONDENCE RE: SAME | ANALYZE RECLAMATION DEMANDS OF VARIOUS RECLAMATION VENDORS AND COMPARE WITH COMPANY RECORDS IN PREPARING STATEMENTS OF RECLAMATION |
| 06/16/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE RE:  SAME | REVIEW CORRESPONDENCE FROM D. BITTER RE: INSURER'S REQUIREMENTS |
| 06/17/05 | Eichel, S | 0.10 | REVIEW CORRESPONDENCE RE:  SAME | REVIEW CORRESPONDENCE RE: FILING 5TH SUPPLEMENT TO EXHIBIT A TO OCP MOTION AND 5TH SUBMISSION OF COMPLETED QUESTIONNAIRE |
| 06/20/05 | McDonald Henry, S | 0.40 | REVIEW CORRESPONDENCE RE:  ACE REQUEST WITH RESPECT TO ASSUMPTION OF PREPETITION CONTRACT | REVIEW CORRESPONDENCE FROM D. BITTER RE:  ACE REQUEST WITH RESPECT TO ASSUMPTION OF PREPETITION CONTRACT |
| 06/20/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE RE:  POTENTIAL REJECTION | REVIEW CORRESPONDENCE FROM A. RAVIN RE: POTENTIAL REJECTION OF REAL ESTATE LEASE |

8

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 06/20/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE RE: SAME AND FOLLOW UP | REVIEW CORRESPONDENCE FROM K. LAMAINA RE: FEE HEARING AND ANALYZE RESPONSE |
| 06/20/05 | McDonald Henry, S | 0.40 | CORRESPONDENCE RE: HERITAGE MINT MOTION, TIMING, AND RETURNS AND REVIEW OF SAME | REVIEW CORRESPONDENCE FROM S. EICHEL RE: HERITAGE MINT MOTION |
| 06/20/05 | McDonald Henry, S | 0.10 | REVIEW CORRESPONDENCE RE: GORTON SITUATION | REVIEW CORRESPONDENCE FROM XROADS RE: GORTON SITUATION |
| 06/21/05 | LaMaina, K | 0.20 | REVIEW CORRESPONDENCE RE: STORE SALES | REVIEW COMPANY MEMORANDUM ON STORE SALES (FOOTPRINT) (.2) |
| 06/22/05 | Gray, R | 0.20 | ASSIST WITH 8-K ISSUES RELATING TO KERP | REVIEW/ANALYZE DRAFT 8-K AND TIMING ISSUES |
| 06/22/05 | McDonald Henry, S | 0.30 | REVIEW CORRESPONDENCE RE: SAME INCLUDING ALLOCATION OF PROMOTIONS ISSUE | REVIEW CORRESPONDENCE FROM XROADS RE: RECLAMATION SETTLEMENT INCLUDING ALLOCATION OF PROMOTIONS ISSUE |
| 06/23/05 | Toussi, S | 1.50 | RESEARCH ISSUES IN CONNECTION WITH PREPARING SUMMARY OF RECLAMATION DEFENSES | RESEARCH AVAILABLE DEFENSES TO WINN-DIXIE IN RESPONSE TO RECLAMATION DEMANDS UNDER BANKRUPTCY CODE |
| 06/24/05 | Bonachea, L | 0.20 | ADDRESS VARIOUS ISSUES RE: SAME | NO LONGER WITH THE FIRM |
| 06/24/05 | Eichel, S | 0.20 | REVIEW CORRESPONDENCE RE STATEMENTS OF RECLAMATION | REVIEW CORRESPONDENCE IN CONNECTION WITH REVIEWING AND REVISING STATEMENTS OF RECLAMATION |
| 06/27/05 | Eichel, S | 0.10 | REVIEW CORRESPONDENCE RE: ORDINARY COURSE PROFESSIONAL | REVIEW CORRESPONDENCE RE: RETENTION OF RICHARD BEINE AS ORDINARY COURSE PROFESSIONAL |
| 06/27/05 | McDonald Henry, S | 0.10 | REVIEW CORRESPONDENCE RE: SAME AND WORK RE: RESPONSE | REVIEW CORRESPONDENCE FROM J. PAOLI RE: TAMPA ELECTRIC AND WORK RE: RESPONSE |
| 06/27/05 | Ravin, A | 0.40 | ADDRESS VARIOUS ISSUES RELATED TO AFCO | ANALYZE AFCO AGREEMENT BASED UPON (A) CORRESPONDENCE RECEIVED FROM D. BITTER AND K. ROMEO AND (B) TELEPHONE CONVERSATIONS WITH B. RATNER |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|------------|----------------------|---------------------|
| 06/27/05 | Ravin, A | 0.10 | REVIEW CORRESPONDENCE RE: LEASE, DRAFT CORRESPONDENCE TO M. CHLEBOVEC RE: SAME | REVIEW CORRESPONDENCE FROM AND DRAFT CORRESPONDENCE TO M. CHLEBOVEC RE: NON-RESIDENTIAL REAL PROPERTY LEASES |
| 06/27/05 | Toussi, S | 0.60 | VARIOUS CORRESPONDENCE RE SAME | DRAFT CORRESPONDENCE FOR XROADS AND TEAM MEMBERS RE AVAILABLE DEFENSES TO RECLAMATION DEMANDS |
| 06/28/05 | LaMaina, K | 0.20 | ADDRESS ISSUE RE ADMINISTRATIVE CLAIMS | ANALYZE ADMINISTRATIVE CLAIM BAR DATE WITH LOGAN ON CREDITOR CLAIM (.2) |
| 06/28/05 | Toussi, S | 1.20 | ADDRESS ISSUES RE VENDORS | ANALYZE SPECIFIC RECLAMATION DEMANDS AND AVAILABLE DEFENSES WITH REGARD TO SEVERAL VENDORS |
| 06/28/05 | Toussi, S | 2.00 | ADDRESS ISSUES RE PARTICULAR VENDORS | REVIEW AND ANALYZE THE RECLAMATION DEMAND OF SEVERAL VENDORS AND PREPARE LISTS OF DEFENSES TO SUCH CLAIMS |
| 06/29/05 | McDonald Henry, S | 0.70 | CORRESPONDENCE RE TIME TO REVIEW AND REVISE | DRAFT CORRESPONDENCE TO XROADS TEAM RE TIME TO REVIEW AND REVISE RECLAMATION REPORTS |
| 06/29/05 | Toussi, S | 1.00 | ADDRESS ISSUES RE IDENTIFICATION AND SECOND DEMAND LETTERS | ADDRESS ISSUE OF WHETHER SUBSEQUENT RECLAMATION DEMANDS BY RECLAMATION VENDORS PROPERLY IDENTIFIED GOODS THAT ARE SUBJECT TO THE DEMAND OR WHETHER THE COMPANY HAS A VALID DEFENSE OF FAILURE TO IDENTIFY GOODS |
| 06/29/05 | Toussi, S | 1.20 | ADDRESS ISSUES RE SETOFF | ADDRESS WHETHER RECLAMATION DEMAND IS ALSO SUBJECT TO A CLAIM OF SETOFF OR RECOUPMENT |
| 06/29/05 | Toussi, S | 1.50 | ADDRESS ISSUES WITH RESPECT TO INDIVIDUAL VENDORS SUCH AS HERSHEY, COCO COLA AND 22 SAMPLE GROUP MEMBERS | ANALYZE THE RECLAMATION DEMANDS OF THE SAMPLE GROUP OF 22 RECLAMATION VENDORS AND DETERMINE AVAILABLE DEFENSES TO EACH OF THE DEMANDS |
| 06/30/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE RE SAME | REVIEW CORRESPONDENCE FROM H. ETLIN RE: RECLAMATION SETTLEMENT |
| 06/30/05 | Ravin, A | 0.30 | ADDRESS ISSUES RE: SAME | ANALYZE OMNIBUS LEASE REJECTION MOTION BASED UPON CORRESPONDENCE RECEIVED FROM C. JACKSON |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 07/01/05 | Toussi, S | 1.20 | ADDRESS SERVICE ISSUES | RESEARCH ISSUES OF HOW TO PROPERLY SERVE THE STATEMENTS OF RECLAMATION AND BACK UP INFORMATION |
| 07/01/05 | Toussi, S | 2.00 | ADDRESS ISSUES RE SERVING MOTION TO APPROVE STIPULATION AND RELATED DOCUMENTS | RESEARCH ISSUES RELATED TO PROPERLY SERVING MOTION TO APPROVE STIPULATION AND RELATED DOCUMENTS TO THE RECLAMATION VENDORS |
| 07/05/05 | Baker, D | 1.20 | ADDRESS CONTINGENT CASH ISSUES | REVIEW ISSUES RELATED TO PAYMENT OF CONTINGENT CASH AWARDS TO EMPLOYEES |
| 07/05/05 | Toussi, S | 1.10 | ADDRESS STATEMENT OF RECLAMATION ISSUES FOR VARIOUS VENDORS | ANALYZE AND PREPARE STATEMENTS OF RECLAMATION FOR INDIVIDUAL RECLAMATION VENDORS |
| 07/05/05 | Toussi, S | 1.00 | ADDRESS ISSUES RE TIMING AND SERVICE | ANALYZE ISSUES RELATED TO TIMING OF DEBTORS' RESPONSE TO OLD DIXIE'S OBJECTIONS TO THE PACA REPORT AND PROPERLY SERVING SUPPORTING MATERIALS |
| 07/06/05 | McDonald Henry, S | 0.10 | REVIEW CORRESPONDENCE RE MT. EVEREST AND LEASE REJECTION/TERMINATION ISSUES | REVIEW A. RAVIN CORRESPONDENCE RE MT. EVEREST AND LEASE REJECTION/TERMINATION ISSUES |
| 07/06/05 | Toussi, S | 1.20 | ADDRESS QUESTIONS AND ISSUES RAISED BY RECLAMATION VENDORS TO STATEMENTS OF RECLAMATION | PREPARE RESPONSES TO QUESTIONS RAISED BY RECLAMATION VENDORS TO THE DEBTORS' STATEMENTS OF RECLAMATION AND REQUIRED PROCEDURES TO RESOLVING SAME |
| 07/07/05 | Toussi, S | 1.50 | ADDRESS QUESTIONS AND ISSUES RAISED BY RECLAMATION VENDORS TO STATEMENTS OF RECLAMATION | RESPOND TO QUESTIONS RAISED BY RECLAMATION VENDORS TO THE DEBTORS' STATEMENTS OF RECLAMATION |
| 07/08/05 | Eichel, S | 0.30 | REVIEW CORRESPONDENCE RE RESPONDING TO RECLAMATION CLAIMANTS INQUIRIES | REVIEW CORRESPONDENCE RE RESPONDING TO SEVERAL RECLAMATION CLAIMANTS' INQUIRIES REGARDING THEIR RESPECTIVE RECLAMATION CLAIMS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 07/08/05 | Matz, T | 0.30 | CNS | CALLS AND CORRESPONDENCE WITH CNS, INC. LOCAL COUNSEL RE: LATE-FILED CLAIMS AND SUPPLEMENTARY CLAIMS |
| 07/08/05 | Ravin, A | 0.10 | ADDRESS ISSUES RE: STORE 292 AND PRORATION | ANALYZE STORE 292 LEASE AND AMOUNTS OWED UNDER PRORATED APPROACH |
| 07/11/05 | Kaloudis, D | 0.30 | REVIEW CORRESPONDENCE RE: MISSISSIPPI POWER BOND DEMAND | REVIEW CORRESPONDENCE FROM MISSISSIPPI POWER RE: SUPPLEMENTAL INFORMATION FOR MISSISSIPPI POWER BOND DEMAND |
| 07/11/05 | LaMaina, K | 0.20 | REVIEW CORRESPONDENCE RE SAME | REVIEW STATUS ON UTILITY COMPANIES IN CASE (.2) |
| 07/11/05 | Ravin, A | 0.40 | ADDRESS VARIOUS LEASE RELATED ISSUES | NO FURTHER INFORMATION |
| 07/12/05 | Gray, R | 0.10 | ADDRESS ISSUES RE: AMENDED SCHEDULES | REVIEW DOCKET ENTRY RE: STRIKING OF AMENDED SCHEDULES AND CONFER W/ J. LEAMY RE: RECTIFYING ISSUES |
| 07/12/05 | Leamy, J | 0.50 | ANALYSIS RE: CLC | CONTINUE ANALYSIS RE: WHETHER CLC CONTRACT IS TRUE LEASE |
| 07/12/05 | Matz, T | 0.20 | CORRESPONDENCE RE: HERITAGE MINT MOTION | REVIEWING CORRESPONDENCE RE: HERITAGE MINT MOTION |
| 07/13/05 | Leamy, J | 0.70 | ANALYSIS RE: PROJECT ASSISTANTS | ANALYSIS RE: WHETHER PROJECT ASSISTANTS ENTITLED TO ADMINISTRATIVE CLAIM |
| 07/13/05 | Leamy, J | 0.50 | ANALYSIS RE: CLC | CONTINUE ANALYSIS RE: CLC CONTRACT |
| 07/13/05 | Toussi, S | 0.70 | REVIEW CORRESPONDENCE RE SAME | REVIEW AND ANALYZE CORRESPONDENCE RELATED TO RECLAMATION DEMANDS AND PREFERENCE CLAIMS |
| 07/13/05 | Toussi, S | 1.20 | ADDRESS OUTSTANDING PACA CLAIMS TO FINALIZE REPORT | CONTACT OUTSTANDING PACA VENDORS TO FINALIZE AND NEGOTIATE RESOLUTIONS TO OUTSTANDING PACA CLAIMS |
| 07/14/05 | Toussi, S | 1.20 | ADDRESS OUTSTANDING ISSUES RELATED TO STATEMENTS OF RECLAMATION AND STIPULATION | WORK ON OUTSTANDING ISSUES RELATED TO STATEMENT OF RECLAMATIONS AND AVAILABLE DEFENSES OF THE DEBTORS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 07/19/05 | Leamy, J | 0.50 | ADDRESS MATTERS RE: SPECIAL BAR DATE | REVIEW CLAIMANT CATEGORIES TO BE RESEARCHED BY WINN-DIXIE IN CONJUNCTION WITH SPECIAL BAR DATE |
| 07/20/05 | Bonachea, L | 0.40 | ADDRESS ISSUES RE PREFERENCE CLAIMS NOTICE | NO LONGER WITH THE FIRM |
| 07/21/05 | Eichel, S | 0.10 | REVIEW CORRESPONDENCE RE: REVISED STATEMENT OF PAYMENTS TO ORDINARY COURSE PROFESSIONALS | REVIEW COMPANY CORRESPONDENCE RE: REVISED STATEMENT OF PAYMENTS MADE TO ORDINARY COURSE PROFESSIONALS |
| 07/22/05 | LaMaina, K | 0.30 | REVIEW CORRESPONDENCE RE: COMPANY REQUEST TO D. J. BAKER RE: CASE HISTORY | REVIEW CORRESPONDENCE FROM L. APPEL TO D. J. BAKER RE: CASE ADMINISTRATION (.3) |
| 07/25/05 | Leamy, J | 2.50 | CONTINUE CLAIM PROCEDURES MOTION | CONTINUE TO DRAFT MOTION TO ESTABLISH OMNIBUS CLAIM OBJECTION PROCEDURES |
| 07/26/05 | Bonachea, L | 0.10 | ADDRESS ISSUES RE ORDINARY COURSE PROFESSIONALS' SUBMISSIONS | NO LONGER WITH THE FIRM |
| 07/26/05 | Bonachea, L | 0.20 | FURTHER ADDRESS ISSUES RE SAME | NO LONGER WITH THE FIRM |
| 07/26/05 | Davis, E | 0.90 | CONTINUE TO REVIEW AND RESPOND TO ISSUES RE KEMPER AND DISCOVER | CONTINUE TO REVIEW AND RESPOND TO ISSUES RAISED BY WD REGARDING LIQUIDATION OF KEMPER AND DISCOVERY RE AND WAY TO COME TO GLOBAL SETTLEMENT AND RECOVERY OF OVERFUNDED COLLATERAL OF WORKERS COMP PROGRAMS |
| 07/26/05 | Lam, S | 1.70 | ADDRESS DRAFT AMENDMENT NO. 2 ISSUES | REVIEW DRAFT AMENDMENT NO. 2 TO DIP AGREEMENT (1.0 ); ANALYZE AMENDMENTS REGARDING ASSET SALES (.7) |
| 07/26/05 | Ravin, A | 0.30 | ADDRESS ISSUES RE: SAME | ANALYZE OBJECTION TO TRANSAMERICA MOTION BASED UPON LEGAL RESEARCH AND CORRESPONDENCE FROM T. TINSLEY |
| 07/27/05 | Bonachea, L | 0.20 | ADDRESS ISSUES RE WINN-DIXIE GREENVILLE | NO LONGER WITH THE FIRM |
| 07/27/05 | Leamy, J | 0.80 | ANALYSIS RE: CLC | CONTINUED ANALYSIS RE: CLC CONTRACT |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 07/27/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO FRANKFORD DALLAS | ANALYZE ISSUES RELATED TO FRANKFORD DALLAS |
| 08/01/05 | Gray, R | 0.10 | COORDINATE RE: INFORMATION FOR EXCLUSIVITY MOTION | LOCATE/FORWARD TO A. RAVIN BACKGROUND INFORMATION FOR EXCLUSIVITY MOTION |
| 08/01/05 | Matz, T | 0.50 | INQUIRE RE: OUTSTANDING INFORMATION REQUEST | CONTINUING INQUIRIES TO XROADS RE: OUTSTANDING INFORMATION REQUEST |
| 08/02/05 | Matz, T | 2.00 | ADDRESS RECLAMATION DISPUTE WITH BRACH'S CONFECTIONS | CONTINUING REVIEW AND COMMENT ON RECLAMATION DISPUTE WITH BRACH'S CONFECTIONS |
| 08/02/05 | McDonald Henry, S | 0.40 | REVIEW CORRESPONDENCE REGARDING FACILITY | REVIEW CORRESPONDENCE FROM D. BITTER RE: SURETY FACILITY |
| 08/03/05 | Gray, R | 0.80 | ADDRESS SETOFF LETTER | DRAFT FORM OF SETOFF LETTER REQUESTED BY J. CASTLE |
| 08/03/05 | Leamy, J | 0.50 | ADDRESS NOTICING ISSUES | REVIEW ISSUES RE: BAR DATE NOTICING |
| 08/04/05 | Gray, R | 0.20 | FURTHER ASSISTANCE WITH AMERICAN EXPRESS ISSUES | REVIEW/ANALYZE AMERICAN EXPRESS ISSUES AND OPTIONS |
| 08/04/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE REGARDING LEASE REJECTION ISSUES | REVIEW CORRESPONDENCE FROM A. RAVIN RE: LEASE REJECTION ISSUES |
| 08/05/05 | Leamy, J | 0.70 | ANALYSIS RE: PROJECT ASSISTANTS | CONTINUED ANALYSIS RE: WHETHER PROJECT ASSISTANTS ENTITLED TO ADMINISTRATIVE EXPENSE CLAIM |
| 08/05/05 | McDonald Henry, S | 0.30 | REVIEW CORRESPONDENCE REGARDING LEASE REJECTION ISSUE | REVIEW CORRESPONDENCE FROM A. RAVIN RE: LEASE REJECTION ISSUE |
| 08/05/05 | Zsoldos, A | 6.50 | REVIEW ORGANIZATIONAL ISSUES RELATED TO STATEMENTS OF RECLAMATION | ORGANIZE, COPY, FILE, AND DISTRIBUTE NEWLY RECEIVED STATEMENTS OF RECLAMATION, RECONCILIATION, AND OTHER CORRESPONDENCE |
| 08/08/05 | Bonachea, L | 0.40 | ADDRESS ISSUES RE: ELECTRONIC SERVICE REQUIREMENT AND NEW NOTICE PARTIES | NO LONGER WITH THE FIRM |
| 08/08/05 | Leamy, J | 2.70 | CONTINUE CLAIM OBJECTION PROCEDURES MOTION | CONTINUE TO DRAFT MOTION TO ESTABLISH PROCEDURES FOR OMNIBUS CLAIM OBJECTIONS |
| 08/09/05 | Feld, S | 0.10 | REVIEW CORRESPONDENCE RE: APCO | REVIEW CORRESPONDENCE REC'D 8/9/05 FROM E. RAY RE: APCO/TERMINATION OF AN ACCOUNT |

14

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/09/05 | Leamy, J | 0.40 | ANALYSIS RE: PROJECT ASSISTANTS POSITION | FURTHER ANALYSIS RE: WHETHER PROJECT ASSISTANTS ENTITLED TO ADMINISTRATIVE EXPENSE CLAIM |
| 08/09/05 | McDonald Henry, S | 0.50 | ADDRESS ON KEMPER CLAIM AND REDUCING SECURITY FOR UPDATE CALL | ANALYZE ISSUES RE: KEMPER CLAIM AND REDUCING SECURITY FOR UPDATE CALL |
| 08/09/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE RE: LEASE 365(D)(4) ISSUES | REVIEW CORRESPONDENCE FROM A. RAVIN RE: LEASE 365(D)(4) ISSUES |
| 08/09/05 | Ravin, A | 0.50 | ADDRESS VARIOUS ISSUES RELATED TO SAME | ANALYZE 365(D)(4) MOTION |
| 08/09/05 | Ravin, A | 0.30 | ADDRESS ISSUES RELATED TO SAME | ANALYZE RHODES FURNITURE BANKRUPTCY CLAIMS FILINGS |
| 08/09/05 | Ravin, A | 0.50 | ADDRESS ISSUES RELATED TO PENMAN | ANALYZE PENMAN PLAZA MOTION |
| 08/09/05 | Ravin, A | 0.40 | ADDRESS ISSUES RELATED TO RHODES | ANALYZE PLEADINGS FILED IN RHODES BANKRUPTCY CASE |
| 08/09/05 | Ravin, A | 0.30 | ADDRESS ISSUES RELATED TO SAME | ANALYZE EXCLUSIVITY MOTION BASED UPON CORRESPONDENCE FROM C. JACKSON |
| 08/10/05 | Feld, S | 0.10 | REVIEW CORRESPONDENCE RE: ENTERGY | REVIEW CORRESPONDENCE FROM L. BALLON REC'D 8/2/05 RE UTILITY BOND RIDER |
| 08/11/05 | Baker, D | 0.80 | CONTINUE TO ADDRESS SEVERANCE PLAN ISSUES | ANALYZE TERMS AND CONDITIONS OF SEVERANCE PLAN PROPOSED TO BE ADOPTED |
| 08/11/05 | Eichel, S | 0.20 | REVIEW CORRESPONDENCE RE: RETENTION OF ORDINARY COURSE PROFESSIONALS | NO FURTHER INFORMATION |
| 08/11/05 | Leamy, J | 0.40 | ADDRESS MSP/SRP CLAIMS | ANALYSIS RE: MAILINGS TO MSP/SRP CLAIMANTS |
| 08/11/05 | Matz, T | 0.40 | CORRESPONDENCE RE: 2 ADDITIONAL CLAIMS | CORRESPONDENCE WITH XROADS AND COMPANY RE: TWO ADDITIONAL RECLAMATION CLAIMS |
| 08/11/05 | McDonald Henry, S | 0.10 | REVIEW CORRESPONDENCE RE: DANNON LIFT STAY MOTION | REVIEW CORRESPONDENCE FROM S. EICHEL RE: DANNON LIFT STAY MOTION |
| 08/11/05 | Ravin, A | 0.50 | ADDRESS ISSUES RELATED TO RHODES | ANALYZE PLEADINGS/CLAIMS RELATED TO RHODES BANKRUPTCY CASE |
| 08/11/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO SAME | ANALYZE PRORATION APPROACH WITH RESPECT TO SEVERAL LEASES |
| 08/12/05 | Leamy, J | 0.50 | ADDRESS POTENTIAL AMENDMENT ISSUES | ANALYSIS RE: POTENTIAL SCHEDULE AMENDMENTS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 08/12/05 | Leamy, J | 0.90 | ADDRESS SPECIAL BAR DATE CONCERNS | REVIEW MATTERS RE: SPECIAL BAR DATE |
| 08/12/05 | Toussi, S | 0.90 | ADDRESS ISSUES RE: RECLAMATION | ADDRESS OUTSTANDING LEGAL ISSUES RE STATEMENTS OF RECLAMATION |
| 08/12/05 | Toussi, S | 0.60 | ADDRESS ISSUES RE: UNRESOLVED PACA VENDORS | CONTACT AND NEGOTIATE WITH PACA VENDORS WHOSE CLAIMS REMAIN UNRESOLVED |
| 08/15/05 | Eichel, S. | 0.10 | REVIEW CORRESPONDENCE RE: OUTSTANDING RECLAMATION CLAIMS | REVIEW CORRESPONDENCE FROM XROADS RE: OUTSTANDING RECLAMATION CLAIMS |
| 08/15/05 | Eichel, S | 0.20 | REVIEW CORRESPONDENCE RE: DANNON LITIGATION AND STRATEGY AND WITNESSES FOR HEARING | NO FURTHER INFORMATION |
| 08/15/05 | Ravin, A | 0.10 | ADDRESS ISSUES RE: PLEADINGS FILED | NO FURTHER INFORMATION |
| 08/17/05 | Leamy, J | 0.50 | LEASE BUYOUT | ANALYSIS RE: PROPOSED CLC LEASE BUYOUT |
| 08/17/05 | Ravin, A | 0.10 | ADDRESS ISSUES RELATED TO SAME | ANALYZE ISSUES RELATED TO PENMAN PLAZA |
| 08/18/05 | McDonald Henry, S | 0.30 | REVIEW CORRESPONDENCE RE: STIPULATION | REVIEW CORRESPONDENCE FROM S. EICHEL RE: STIPULATION |
| 08/18/05 | McDonald Henry, S | 0.10 | REVIEW CORRESPONDENCE RE: PACA CLAIM | REVIEW CORRESPONDENCE FROM S. TOUSSI RE: PACA CLAIM |
| 08/18/05 | McDonald Henry, S | 0.20 | CORRESPONDENCE REGARDING NEGOTIATIONS WITH VENDOR | REVIEW CORRESPONDENCE FROM S. EICHEL RE: NEGOTIATIONS WITH VENDOR |
| 08/18/05 | Ravin, A | 0.10 | ADDRESS ISSUES RELATED TO SAME | NO FURTHER INFORMATION |
| 08/19/05 | Eichel, S | 0.20 | REVIEW CORRESPONDENCE RE: RECLAMATION CLAIMS | REVIEW S. HENRY'S CORRESPONDENCE RE: RECLAMATION CLAIMS |
| 08/19/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE REGARDING SALE/LEASE ISSUES | REVIEW CORRESPONDENCE FROM A. RAVIN RE: SALE/LEASE ISSUES |
| 08/19/05 | McDonald Henry, S | 0.10 | RESPOND TO CORRESPONDENCE REGARDING APPOINTMENT OF EXAMINER | RESPOND TO CORRESPONDENCE RE: APPOINTMENT OF EXAMINER AS REQUESTED BY BRACH'S |
| 08/19/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE REGARDING CONSIGNMENT ISSUE | REVIEW CORRESPONDENCE FROM S. EICHEL RE: MANAGEMENT ISSUE |
| 08/19/05 | McDonald Henry, S | 0.40 | REVIEW CORRESPONDENCE REGARDING BRACH'S | REVIEW CORRESPONDENCE FROM COMPANY RE: BRACH'S |
| 08/19/05 | Toussi, S | 0.60 | ADDRESS RECLAMATION VENDOR ISSUES | ANALYZE OUTSTANDING ISSUES WITH RECLAMATION VENDORS |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/21/05 | McDonald Henry, S | 0.10 | REVIEW CORRESPONDENCE REGARDING COMMITTEE PROTOCOLS ON SIGN OFF RELATING TO PREFERENCE WAIVERS | REVIEW CORRESPONDENCE FROM S. EICHEL RE: COMMITTEE PROTOCOLS ON SIGN-OFF |
| 08/21/05 | McDonald Henry, S | 0.10 | FOLLOW UP CORRESPONDENCE RE: SUBMISSION OF STATEMENTS TO EXAMEN | REVIEW AND FOLLOW UP CORRESPONDENCE FROM K. LAMAINA RE: SUBMISSION OF STATEMENTS TO EXAMEN |
| 08/21/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE REGARDING 505 ISSUE | REVIEW CORRESPONDENCE FROM R. GRAY RE: 505 ISSUE |
| 08/21/05 | McDonald Henry, S | 0.20 | RESPOND TO CORRESPONDENCE RELATING TO SECTION 505 ISSUE | RESPONSE TO CORRESPONDENCE FROM R. GRAY RE: 505 ISSUE |
| 08/22/05 | Kaloudis, D | 0.30 | ANALYZE SERVICE ISSUES RE: SAME | ANALYZE SERVICE ISSUES RE: MOTIONS FOR DETERMINATION |
| 08/22/05 | McDonald Henry, S | 0.10 | DRAFT CORRESPONDENCE REGARDING STIPULATION ISSUE | DRAFT CORRESPONDENCE TO S. EICHEL RE: STIPULATION ISSUE |
| 08/22/05 | McDonald Henry, S | 0.10 | DRAFT CORRESPONDENCE RE: PROPOSED STIPULATION | DRAFT CORRESPONDENCE TO S. EICHEL RE: PROPOSED STIPULATION |
| 08/23/05 | Eichel, S | 0.10 | REVIEW CORRESPONDENCE RE: CLAIM OF SILVER SPRINGS BOTTLED WATER | REVIEW CORRESPONDENCE FROM XROADS RE: RECLAMATION CLAIM OF SILVER SPRINGS BOTTLED WATER |
| 08/23/05 | McDonald Henry, S | 0.10 | REVIEW CORRESPONDENCE REGARDING BOND DEALS | REVIEW CORRESPONDENCE FROM A. RAVIN RE: BOND DEALS |
| 08/23/05 | Ravin, A | 0.10 | ADDRESS ISSUES RELATED TO SAME | ANALYZE CORRESPONDENCE FROM J. AROGETTI RELATED TO LEASE FOR STORE 1838 |
| 08/23/05 | Toussi, S | 0.40 | ADDRESS ISSUES WITH RECLAMATION VENDORS | ANALYZE OUTSTANDING ISSUES WITH RECLAMATION VENDORS |
| 08/24/05 | Eichel, S | 0.10 | REVIEW CORRESPONDENCE RE: RESOLUTION OF CLAIM OF CERTIFIED FOODS | REVIEW CORRESPONDENCE FROM T. WUERTZ (XROADS) RE: RESOLUTION OF CLAIM OF CERTIFIED FOODS |
| 08/24/05 | Gray, R | 0.20 | ADDRESS SUBPLAN CREDITING ISSUES | REVIEW/ANALYZE SUBPLAN CREDITING ISSUES RAISED BY T. WILLIAMS |
| 08/24/05 | Leamy, J | 0.60 | ANALYSIS RE: PROJECT ASSISTANTS | FURTHER ANALYSIS WHETHER PROJECT ASSISTANTS ENTITLED TO ADMINISTRATIVE EXPENSE CLAIM |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/24/05 | McDonald Henry, S | 0.10 | REVIEW CORRESPONDENCE RE: MEETING WITH REPRESENTATIVES REGARDING GOING FORWARD FACILITIES | REVIEW CORRESPONDENCE FROM D. BITTER RE: MEETING WITH AON REPRESENTATIVES REGARDING GOING FORWARD FACILITIES |
| 08/24/05 | McDonald Henry, S | 0.30 | REVIEW CORRESPONDENCE RE: PAYMENT OF VENDOR | REVIEW CORRESPONDENCE FROM S. EICHEL RE: PAYMENT OF VENDOR |
| 08/24/05 | Ravin, A | 0.20 | ADDRESS ISSUES RELATED TO SAME | ANALYZE 365(D)(4) MOTION |
| 08/25/05 | McDonald Henry, S | 0.40 | REVIEW CORRESPONDENCE RE: IMPLEMENTATION OF STIPULATION | REVIEW CORRESPONDENCE FROM S. EICHEL RE: IMPLEMENTATION OF STIPULATION |
| 08/26/05 | Ravin, A | 0.10 | ADDRESS CLEAN UP ISSUES RE: STORE 1860 | ANALYZE CLEAN UP OBLIGATIONS RELATED TO STORE 1860 |
| 08/26/05 | Ravin, A | 0.60 | ADDRESS VARIOUS LEASE-RELATED ISSUES | NO FURTHER INFORMATION |
| 08/29/05 | Feld, S | 0.10 | REVIEW CORRESPONDENCE RE: GREEN COVE | REVIEW CORRESPONDENCE FAXED ON 8/29/05 FROM A. COHEN RE CITY OF GREEN COVE SPRINGS UTILITY BOND |
| 08/29/05 | Kaloudis, D | 0.30 | ANALYZE ISSUES RE: FRANKFORD DALLAS | ANALYZE 502(B) ISSUE RE: FRANKFORD DALLAS CLAIM |
| 08/30/05 | Gray, R | 0.10 | COORDINATE RE: GEARING UP FOR SPECIAL BAR DATE | DRAFT EMAILS TO K. LOGAN, J. LEAMY ET AL. RE: ARRANGEMENTS TO NOTICE SPECIAL BAR DATE |
| 08/30/05 | Leamy, J | 0.50 | ADDRESS SPECIAL BAR DATE MATTERS | ANALYSIS RE: MATTERS TO BE COMPLETED IN CONJUNCTION WITH SETTING SPECIAL BAR DATE |
| 08/31/05 | Baker, D | 1.60 | ADDRESS EQUITY COMMITTEE ISSUE | ANALYZE ISSUES RELATED TO APPOINTMENT OF EQUITY COMMITTEE |
| 08/31/05 | Baker, D | 0.80 | CONTINUE ADDRESSING LITIGATION SETTLEMENT ISSUES | REVIEW PROPOSAL DESIGNED TO ALLOW COMPANY TO SETTLE PERSONAL INJURY LITIGATION CLAIMS |
| 08/31/05 | Gray, R | 0.30 | FURTHER ADDRESS E. BARKER ISSUES ON OMNIBUS PROCEDURES ORDER AND NOTICES | FURTHER REVIEW/ANALYZE AND EMAIL TO J. LEAMY CONCERNING ADDRESSING E. BARKER ISSUES ON OMNIBUS PROCEDURES ORDER AND NOTICES |
| 08/31/05 | McDonald Henry, S | 0.70 | REVIEW CORRESPONDENCE REGARDING IMPLEMENTATION WITH VIEW TO ENSURING CONSISTENCY AND COMPLIANCE | REVIEW CORRESPONDENCE FROM S. EICHEL RE: IMPLEMENTATION WITH VIEW TO ENSURING CONSISTENCY AND COMPLIANCE |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 08/31/05 | McDonald Henry, S | 0.20 | REVIEW CORRESPONDENCE RE: SAME | REVIEW CORRESPONDENCE FROM T. PENNINGTON RE: LIBERTY STRATEGY |
| 08/31/05 | Toussi, S | 0.30 | ADDRESS RECLAMATION ISSUES | ANALYZE OUTSTANDING ISSUES WITH RECLAMATION VENDORS |
| 08/31/05 | Toussi, S | 0.40 | ADDRESS PACA ISSUES RE: BOYD | ANALYZE BOYD PACA DEMAND AND NEGOTIATE RESOLUTION WITH PACA VENDOR |
| 09/01/05 | Gray, R | 0.20 | ASSIST WITH CONFIDENTIALITY ISSUES ON DISBANDMENT MOTION | REVIEW/STRATEGIZE RE: HANDLING CONFIDENTIALITY ISSUES ON DISBANDMENT MOTION |
| 09/01/05 | Kaloudis, D | 0.50 | ANALYZE OUTSTANDING ISSUES | ANALYZE OUTSTANDING ISSUES RE: 365(D)(4) MOTION |
| 09/06/05 | Baker, D | 1.20 | REVIEW MATERIALS RELATED TO PLAN OF REORGANIZATION ISSUES | REVIEW OUTLINE OF ISSUES TO BE ADDRESSED THROUGH PLAN OF REORGANIZATION |
| 09/06/05 | Kaloudis, D | 0.50 | ANALYZE E-MAIL CORRESPONDENCE RE: SAME | ANALYZE E-MAIL CORRESPONDENCE FROM CROSS ROADS RE: 365(D)(4) MOTION |
| 09/06/05 | McDonald Henry, S | 0.10 | REVIEW CORRESPONDENCE RE: RESOLUTION OF OBJECTIONS | REVIEW CORRESPONDENCE FROM S. EICHEL RE: RESOLUTION OF OBJECTIONS |
| 09/06/05 | McDonald Henry, S | 1.80 | REVIEW CORRESPONDENCE RE: SAME | REVIEW CORRESPONDENCE BETWEEN COUNSEL FOR COMMITTEE AND COUNSEL FOR DEBTORS REGARDING PLAN ISSUE |
| 09/06/05 | McDonald Henry, S | 0.70 | REVIEW CORRESPONDENCE RE: SAME | REVIEW EMAIL FROM COMMITTEE RE: ASSET ALLOCATIONS |
| 09/08/05 | McDonald Henry, S | 0.20 | CORRESPONDENCE RE: SAME | REVIEW CORRESPONDENCE RE: APPOINTMENT OF FEE EXAMINER |
| 09/09/05 | Baker, D | 1.30 | CONTINUE RESOLVING EQUITY COMMITTEE ISSUES | FURTHER ANALYSIS OF ISSUES RELATED TO SCOPE AND DUTIES OF EQUITY COMMITTEE |
| 09/09/05 | Kaloudis, D | 0.20 | READ ADDITIONAL CORRESPONDENCE RE: SAME | READ ADDITIONAL CORRESPONDENCE RE: LEASE REJECTION MOTION |
| 09/09/05 | Kaloudis, D | 0.60 | ANALYZE ISSUES RE: CITY OF CLEARWATER | ANALYZE BOND DEMAND MADE BY CITY OF CLEARWATER RE: CITY OF CLEARWATER UTILITY COMPANY |
| 09/12/05 | LaMaina, K | 0.10 | REVIEW CORRESPONDENCE RE: SAME | REVIEW MEMORANDUM FROM N. RICARDO ON COMPANY EXAMEN (.1) |

19

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 09/13/05 | Baker, D | 0.80 | ADDRESS ISSUES RAISED BY TELECONFERENCE | NO FURTHER INFORMATION |
| 09/13/05 | McDonald Henry, S | 0.80 | REVIEW CORRESPONDENCE RE: REJECTION ISSUE | REVIEW CORRESPONDENCE FROM D. KALOUDIS RE: REJECTION ISSUE |
| 09/13/05 | Neckles, P | 0.20 | REVIEW CORRESPONDENCE REGARDING CASH MANAGEMENT ORDER AND SALE OF STORES AND SECOND LIEN | REVIEW E-MAILS FROM S. HENRY REGARDING CASH MANAGEMENT ORDER AND SALE OF STORES AND SECOND LIEN |
| 09/19/05 | Leamy, J | 2.50 | ADDRESS SPECIAL BAR DATE TASKS | ANALYSIS RE: TASKS TO BE COMPLETED IN CONJUNCTION WITH DETERMINING PARTIES TO BE NOTICED WITH SPECIAL BAR DATE |
| 09/19/05 | McDonald Henry, S | 0.90 | REVIEW CORRESPONDENCE RE: SAME | REVIEW CORRESPONDENCE FROM D. KALOUDIS RE: SAME |
| 09/20/05 | Leamy, J | 0.20 | ADDRESS RECLAMATION AND PACA PROOF OF CLAIMS | ANALYSIS RE: ENSURING THAT RECLAMATION AND PACA PROOF OF CLAIMS ARE COMPARED TO RECLAMATION AND PACA LETTER DEMANDS |
| 09/21/05 | Kaloudis, D | 0.20 | REVIEW CORRESPONDENCE RE: SETTLEMENT AND REPLY | REVIEW CORRESPONDENCE FROM WINN-DIXIE RE: SETTLEMENT AND REPLY |
| 09/21/05 | Leamy, J | 0.50 | ADDRESS SPECIAL BAR DATE TASK LIST | REVIEW AND REVISE SPECIAL BAR DATE TASK LIST |
| 09/22/05 | Kaloudis, D | 0.20 | REVIEW CORRESPONDENCE RE: STORE 1612 | REVIEW CORRESPONDENCE FROM WINN-DIXIE RE: WINN-DIXIE STORE 1612 |
| 09/22/05 | Ravin, A | 0.50 | ADDRESS ISSUES RELATED TO BUEHLERS' CLAIMS | ANALYZE BUEHLERS CLAIMS |
| 09/22/05 | Ravin, A | 0.60 | ADDRESS VARIOUS ISSUES RELATED TO BUEHLERS' PROOFS OF CLAIM | ANALYZE BUEHLERS PROOFS OF CLAIM |
| 09/24/05 | Kaloudis, D | 2.00 | FINALIZE ISSUES RE: FILING OF PROOFS OF CLAIM | FINALIZE PROOF OF CLAIM FORMS RE: FILING OF WINN-DIXIE PROOFS OF CLAIM IN BUEHLERS BANKRUPTCY CASES |
| 09/24/05 | Ravin, A | 0.30 | ADDRESS ISSUES RELATED TO BUEHLERS' PROOF OF CLAIM | ANALYZE BUEHLERS' PROOF OF CLAIM |
| 09/26/05 | Baker, D | 0.60 | FURTHER ADDRESS BUSINESS STRATEGY ISSUES | CONTINUE TO REVIEW ISSUES RAISED BY MANAGEMENT DURING BUSINESS STRATEGY CALL (0.6) |
| 09/26/05 | Kaloudis, D | 0.20 | READ CORRESPONDENCE RE: STORE 811 | READ CORRESPONDENCE FROM MANAGEMENT COMPANY RE: WINN-DIXIE STORE 811 |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 09/27/05 | Kaloudis, D | 0.30 | ADDRESS ISSUE RE: LEASE AGREEMENT | ADDRESS POSSIBILITIES OF GUARANTEES RE: LEASE AGREEMENT |
| 09/27/05 | McDonald Henry, S | 0.30 | REVIEW CORRESPONDENCE RE: SAME | REVIEW CORRESPONDENCE FROM S. EICHEL RE: RECLAMATION OBJECTIONS |
| 09/27/05 | McDonald Henry, S | 0.30 | REVIEW CORRESPONDENCE RE: SAME | REVIEW CORRESPONDENCE FROM COMPANY RE: CARDINAL HEALTH SETTLEMENT |
| 09/27/05 | Ravin, A | 0.30 | ADDRESS AND ANALYZE ISSUES RE: SAME | ANALYZE CORRESPONDENCE FROM B. GASTON RE: E.W. JAMES AND ANALYZE STRATEGY DISCUSSED WITH S. HENRY RE: SAME |
| 09/28/05 | Neckles, P | 4.5 | AND CORRESPONDENCE IN CONNECTION WITH CREDIT AGREEMENT | CONFERENCES AND E-MAILS WITH D. SQUASONI AND R. BARUSCH IN CONNECTION WITH PROPOSED WAIVER OF FINANCIAL REPORTING COVENANTS UNDER DIP CREDIT AGREEMENT (4.5) |
| 09/29/05 | McDonald Henry, S | 0.70 | REVIEW CORRESPONDENCE REGARDING SAME | REVIEW CORRESPONDENCE FROM WOODS RE: IMPLEMENTATION OF RECLAMATION STIPULATION |
| 09/29/05 | McDonald Henry, S | 0.30 | REVIEW CORRESPONDENCE RE: FILING | REVIEW CORRESPONDENCE FROM S. EICHEL RE: FILING |

21

**EXHIBIT E**
**BLOCKED ACTIVITIES**
**(SECOND INTERIM FEE APPLICATION)**

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|------|------|-----------|---------------------|---------------------|
| 05/02/05 | Toussi, S | 1.20 | REVIEW PACA REPORT AND UPDATE BY XROADS IN CONNECTION WITH CONFERENCE CALL, DISCUSS ISSUES WITH XROADS (1.2) | REVIEW PACA REPORT AND UPDATE BY XROADS IN CONNECTION WITH CONFERENCE CALL (.8); DISCUSS ISSUES WITH XROADS (.4) |
| 05/04/05 | Toussi, S | 0.90 | DISCUSS RECLAMATION ISSUES WITH XROADS, FOLLOW-UP WORK AND CORRESPONDENCE RE SAME | RESEARCH ISSUES RELATED TO RECLAMATION CLAIMS (.3); CORRESPONDENCE WITH XROADS RE STATUS OF RECLAMATION CLAIMS AND PROPOSED RESOLUTIONS (.6) |
| 05/04/05 | Toussi, S | 2.50 | EDIT AND REVISE PACA REPORT AND EXHIBITS RELATED THERETO, VARIOUS DISCUSSION WITH XROADS RE SAME (2.5) | EDIT AND REVISE PACA REPORT AND EXHIBITS RELATED THERETO (2.0); VARIOUS DISCUSSION WITH XROADS RE:  SAME (.5) |
| 05/08/05 | Toussi, S | 1.50 | ADDRESS FOLLOW-UP ISSUES RE PACA CLAIMS, REVIEW CORRESPONDENCE RE SAME (1.5) | DRAFT CORRESPONDENCE RE STATUS OF PACA REPORT AND REASONS WHY CERTAIN PACA CLAIMS REMAINED UNRESOLVED (1.0); REVIEW RECENT CORRESPONDENCE FROM SEVERAL UNRESOLVED PACA CLAIMANTS AND INCORPORATE CORRESPONDENCE INTO PACA REPORT (.5) |
| 05/09/05 | Toussi, S | 1.50 | REVIEW XROADS RECLAMATION REPORT AND ADDRESS ISSUES AND CORRESPONDENCE RE SAME (1.5) | REVIEW XROADS RECLAMATION REPORT (. 8); REVIEW CORRESPONDENCE BY RECLAMATION VENDORS IN CONNECTION WITH THEIR RECLAMATION DEMANDS (.5); DRAFT EMAILS TO XROADS RE CERTAIN CLAIMS AND PROPOSED RESOLUTION FOR RECLAMATION REPORTS (.2) |
| 05/10/05 | Davis, E | 0.90 | FOOD LION – REVIEW AND ASSESS PROPOSED CHANGES BY S. HUSLEY TO ORDER AND CALL WITH C. JACKSON ON SAME (.9) | FOOD LION – REVIEW AND ASSESS PROPOSED CHANGES BY S. HULSEY TO ORDER (.6); CALL WITH C. JACKSON ON SAME (.3) |
| 05/23/05 | McDonald Henry, S | 2.90 | LEGAL ANALYSIS OF ISSUES RAISED REGARDING ASSET DISPOSITIONS AND RELATED LETTERS OF CREDIT; REVIEW MEMOS RE | LEGAL ANALYSIS OF ISSUES RAISED REGARDING ASSET DISPOSITIONS AND RELATED LETTERS OF CREDIT AND IN CONDUCTING SUCH ANALYSIS |

1

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | SAME AND DIRECT FOLLOW UP RESEARCH AND STRATEGIZE REGARDING LCS HELD IN EXCESS OF ACTUARIAL VALUE OF CLAIMS GOING FORWARD | REVIEW MEMOS RE:  SAME AND DIRECT FOLLOW UP RESEARCH AND STRATEGIZE REGARDING LCS HELD IN EXCESS OF ACTUARIAL VALUE OF CLAIMS GOING FORWARD |
| 05/26/05 | Toussi, S | 2.50 | WORK ON RECONCILING RECLAMATION CLAIMS BY VARIOUS RECLAMATION VENDORS:  REVIEW AND DRAFT CORRESPONDENCE RE SAME; ADDRESS ISSUES RE OBJECTIONS FILED TO PACA REPORT | REVIEW AND DRAFT CORRESPONDENCE RE: RECONCILING RECLAMATION CLAIMS BY VARIOUS RECLAMATION VENDORS (1.8); ADDRESS ISSUES RE: OBJECTIONS FILED TO PACA REPORT (.7) |
| 06/02/05 | Barusch, R | 1.30 | DISCLOSURE ISSUES AND RELATED TELEPHONE CONFERENCES | ANALYZE DISCLOSURE POINTS (1.0); TELEPHONE CONFERENCE WITH L. APPEL REGARDING DISCLOSURES (.3) |
| 06/06/05 | Mathew, J | 1.60 | REVIEW REVISED RECLAMATION INFORMATION SENT BY XROADS AND UPDATE FILES | NO LONGER WITH THE FIRM |
| 06/07/05 | Roman, J | 1.70 | RETRIEVE DOCUMENTS FROM S. EICHEL FOR REVIEW AND DATA BASE. CONTINUED WORK ON REVIEW AND ASSEMBLY OF DOCUMENTS RE: RECLAMATIONS (1.7) | RETRIEVE DOCUMENTS FROM S. EICHEL FOR REVIEW RE: RECLAMATION STATEMENTS (.9); REVIEW AND ASSEMBLY OF DOCUMENTS RE: RECLAMATION STATEMENTS (.8) |
| 06/09/05 | Bonachea, L | 1.70 | REVIEW AND REVISE DRAFT FIRST INTERIM FEE APPLICATION AND CHART RE:  VARIOUS MATTERS AND TC WITH K. LAMAINA RE:  SAME (1.7) | NO LONGER WITH THE FIRM |
| 06/13/05 | Bonachea, L | 1.40 | SEARCH CASES RE:  KERP AND UPDATE BINDER (1.4) | NO LONGER WITH THE FIRM |
| 06/15/05 | Mathew, J | 2.70 | REVIEW FILES AND UPDATE LIST (2.7) | NO LONGER WITH THE FIRM |
| 06/23/05 | Mathew, J | 0.80 | COORDINATE WITH XROADS AND ATTORNEYS REGARDING CLAIMS FOR PEPSI BOTTLING VENTURES, HILLANDALE FARMS, AND SYSCO FOOD SERVICES JACKSONVILLE AND UPDATE FILES WITH NEW INFORMATION (.8) | NO LONGER WITH THE FIRM |
| 06/27/05 | Bonachea, L | 5.50 | PREPARE SERVICE OF RECLAMATION STATEMENT AND UPDATE EMAIL SERVICE LIST | NO LONGER WITH THE FIRM |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| 07/06/05 | Toussi, S | 2.00 | DISCUSS MOTION WITH LOCAL COUNSEL, MAKE FURTHER EDITS BASED ON LOCAL COUNSEL'S COMMENTS (2.0) | DISCUSS MOTION OPPOSING OLD DIXIE'S PACA CLAIM AND STRATEGIES FOR DEFENSE (.5); MAKE FURTHER EDITS BASED ON LOCAL COUNSEL'S COMMENTS (1.5) |
| 07/15/05 | Ravin, A | 7.70 | ADDRESS VARIOUS ISSUES RELATED TO LEASE AUCTION LOGISTICS INCLUDING DRAFTING CORRESPONDENCE TO H. ETLIN AND OTHERS RE: SAME, CONFERENCE WITH K. LAMAINA RE: SAME, MULTIPLE CONFERENCES WITH CONFERENCE SERVICE DEPARTMENT RE: SAME AND RE MOVING AUCTION TO HOTEL, TELEPHONE CONFERENCE WITH EMILIO OF DJM RE: SAME, TELEPHONE CONFERENCES WITH S. KAROL RE: SAME (7.7) | COORDINATE ALL LOGISTICS FOR MULTIPLE LEASE AUCTION (6.3); DRAFT CORRESPONDENCE TO H. ETLIN AND OTHERS RE: SAME (.2); CONFERENCE WITH K. LAMAINA RE: SAME (.1); MULTIPLE CONFERENCES WITH CONFERENCE SERVICE DEPARTMENT RE: SAME AND RE: MOVING AUCTION TO HOTEL (.8); TELEPHONE CONFERENCE WITH EMILIO OF DJM RE: SAME (.1); TELEPHONE CONFERENCES WITH S. KAROL RE: SAME (.2) |
| 07/18/05 | Kaloudis, D | 7.40 | REVISE OBJECTION TO THE MOTION TO COMPEL PAYMENT; RESEARCH AND READ CASES RE: SHOPPING CENTER LEASES AND 365(B)(3)(C) ON WHETHER SECTION 365 APPLIES TO NON DEBTOR LEASES | REVISE OBJECTION TO THE MOTION TO COMPEL PAYMENT (4.5); RESEARCH AND READ CASES RE: SHOPPING CENTER LEASES AND 365(B)(3)(C) ON WHETHER SECTION 365 APPLIES TO NON-DEBTOR LEASES (2.9) |
| 07/18/05 | LaMaina, K | 3.10 | FINALIZE AUCTION PREPARATIONS WITH MARRIOTT AND SKADDEN TECH SERVICES AND CONFERENCE RE SAME WITH A. RAVIN (3.1) | REVIEW AUCTION PROCEDURES/BIDDING PROCEDURES WHILE WORKING WITH MARRIOTT AND SKADDEN TECH SERVICES AUCTION PROTOCOL (2.3); CONFERENCE WITH A. RAVIN ON AUCTION (.8) |
| 07/29/05 | Kaloudis, D | 2.50 | UPDATE UTILITY CHARTS AND REVIEW FILES (2.5) | UPDATE UTILITY CHARTS (1.9); REVIEW UTILITY FILES (.6) |
| 08/02/05 | Mathew, J | 0.70 | COORDINATE WITH XROADS REGARDING TREATMENTS OF AGREEMENTS TO STIPULATION AND SCAN AND SEND RELEVANT DOCUMENTS TO XROADS (.7) | NO LONGER WITH THE FIRM |
| 08/11/05 | LaMaina, K | 1.30 | MULTIPLE CORRESPONDENCE WITH K. WINTERS RE: MAY BILL AND REVIEW EXAMEN | MULTIPLE CORRESPONDENCE WITH K. WINTERS RE: MAY BILL (.8); REVIEW EXAMEN PROCEDURES WITH N. |

| DATE | NAME | TASK HOURS | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|---|
| | | | PROCEDURES WITH N.RICARDO AND REVIEW CORRESPONDENCE WITH C.PUSEY (1.3) | RICARDO (.3); REVIEW CORRESPONDENCE (EMAILS) INVOLVING EXAMEN AND C. PUSEY (.2) |
| 08/25/05 | Ravin, A | 5.10 | DRAFT EMERGENCY MOTION AND PROPOSED ORDER RE:  ENFORCING AUTOMATIC STAY, ADDRESS ISSUES RE:  SAME, LEGAL RESEARCH RE: SAME, CONFERENCES WITH D. KALOUDIS RE:  SAME (5.1) | DRAFT EMERGENCY MOTION AND PROPOSED ORDER RE: ENFORCING AUTOMATIC STAY, LEGAL RESEARCH RE: 11TH CIRCUIT CASE LAW RE: SAME (4.6); CONFERENCES WITH D. KALOUDIS RE:  SAME (.5) |
| 09/06/05 | Barusch, R | 2.40 | REVIEW MATERIALS IN CONNECTION WITH INITIAL CONSIDERATION OF PLAN OF REORGANIZATION ISSUES AND TELECONFERENCE WITH COMPANY AND ADVISORS ON PLAN OF REORGANIZATION ISSUES (2.4) | REVIEW MATERIALS IN CONNECTION WITH INITIAL CONSIDERATION OF PLAN OF REORGANIZATION (1.0); TELEPHONE CONFERENCE WITH COMPANY AND ADVISORS REGARDING PLAN OF REORGANIZATION (1.4) |
| 09/28/05 | Neckles, P | 4.50 | CONFERENCES AND CORRESPONDENCE IN CONNECTION WITH CREDIT AGREEMENT (4.5) | CONFERENCES AND E-MAILS WITH D. SQUASONI AND R. BARUSCH IN CONNECTION WITH PROPOSED WAIVER OF FINANCIAL REPORTING COVENANTS UNDER DIP CREDIT AGREEMENT (4.5) |

4

**EXHIBIT J-4**
**ADMINISTRATION/CLERICAL ACTIVITIES BY PROFESSIONALS**
**(SECOND INTERIM FEE APPLICATION)**

| DATE | NAME | ORIGINAL DESCRIPTION | REVISED DESCRIPTION |
|---|---|---|---|
| 05/31/05 | Feld, S | COORDINATE UTILITY ASSIGNMENTS (.3) | DIRECT AND PROVIDE INSTRUCTION TO UTILITY TEAM RE ADEQUATE ASSURANCE REQUESTS AND BOND DEMAND (.3) |
| 08/31/05 | Feld, S | REVIEW MEDIA REPORTS AND CASE UPDATE | REVIEW MEDIA REPORTS ON WINN-DIXIE AND UPDATED CASE CALENDAR RE UTILITY HEARINGS |
| 09/22/05 | Feld, S | UPDATE WORKING GROUP LIST (.2) | CORRECT UPDATED WORKING GROUP LIST (.2) |
| 05/04/05 | Kaloudis, D | FAX LETTER AND ORDER TO UTILITY COMPANY (.3) | DRAFT CORRESPONDENCE TO UTILITY COMPANY RE: UTILITY ORDERS (.3) |
| 05/04/05 | Kaloudis, D | UPDATE UTILITIES FILES (2.4) | REVIEW STATUS OF UTILITY FILES RE: REQUESTS FOR ADEQUATE ASSURANCE AND BOND DEMANDS (2.4) |
| 07/14/05 | Kaloudis, D | CONFIRM PACKAGE WAS SENT TO HUNTSVILLE WITH L. BONACHEA (.3) | REVIEW PACKAGE OF DOCUMENTS SENT TO HUNTSVILLE RE: VIOLATION OF STAY LETTER AND UTILITY ORDERS |
| 06/16/05 | LaMaina, K | REQUEST TIME INFORMATION FOR MAY (.3) | PREPARE INTERIM FEE APPLICATION FOR INCLUSION ON MAY TIME BY REVISING DOCUMENT AND TELECONFERENCE WITH P. BROWN ON NECESSARY MAY TIME (.3) |
| 05/25/05 | Paoli, J | COORDINATE WITH L. BONACHEA RE MAILING OF LETTERS (.4) | MEETING WITH L. BONACHEA RE MAILING OF LETTERS TO UTILITY COMPANIES |
| 05/26/05 | Paoli, J | FAX AND MAIL LETTER (.3) | NO FURTHER INFORMATION |
| 06/06/05 | Paoli, J | SEND BOND FOLDER FOR COPYING (.3) | REVIEW AND PREPARE UTILITY FILES FOR DISTRIBUTION TO D. KALOUDIS |
| 06/20/05 | Paoli, J | FAX LETTER FROM ST. LUCIE COUNTY FOR DISTRIBUTION (.1) | NO FURTHER INFORMATION |

1

**Skadden, Arps, Slate, Meagher & Flom LLP**
**Second Interim Response**
**Exhibit N-1**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 5/4/2005 | Baker DJ | $ 359.68 | 1069609 | AGENCY: NAVIGANT TRAVEL. FROM: LGA NEW YORK NY-LA GUARDIA TO: ORD CHICAGO ILLINOIS-O'HARE CARRIER: AA AMERICAN AIRLINES CLASS: K COACH. NAME: BAKER, DAVID JANSING. |
| 5/5/2005 | Baker DJ | $ 322.82 | 1069609 | AGENCY: NAVIGANT TRAVEL. FROM: ORD CHICAGO ILLINOIS-O'HARE TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: K COACH. NAME: BAKER, DAVID JANSING. |
| 5/5/2005 | Henry S | $ 322.82 | 1069609 | AGENCY: NAVIGANT TRAVEL. FROM: ORD CHICAGO ILLINOIS-O'HARE TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: K COACH. NAME: HENRY, SALLY M. |
| 5/5/2005 | Henry S | $ 359.68 | 1069609 | AGENCY: NAVIGANT TRAVEL. FROM: LGA NEW YORK NY-LA GUARDIA TO: ORD CHICAGO ILLINOIS-O'HARE CARRIER: AA AMERICAN AIRLINES CLASS: K COACH. NAME: HENRY, SALLY M. |
| 5/9/2005 | Henry S | $ 861.89 | 1069609 | AGENCY: NAVIGANT TRAVEL. FROM: LGA NEW YORK NY-LA GUARDIA TO: JAX JACKSONVILLE FL-INTL CARRIER: DL DELTA AIR LINES CLASS: Y COACH; FROM: JAX JACKSONVILLE FL-INTL TO: LGA NEW YORK NY-LA GUARDIA CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: HENRY,SALLY M. |
| 5/10/2005 | Matz TJ | $ (1,096.03) | 1069609 | AGENCY: NAVIGANT TRAVEL.. NAME: MATZ, THOMAS J. |
| 5/10/2005 | Matz TJ | $ 1,096.03 | 1069609 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: D COACH; FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: D COACH. NAME: MATZ, THOMAS J. |
| 5/10/2005 | Toussi S | $ (1,096.03) | 1069609 | AGENCY: NAVIGANT TRAVEL.. NAME: TOUSSI, SINA. |
| 5/10/2005 | Toussi S | $ 1,096.03 | 1069609 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: D COACH; FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: D COACH. NAME: TOUSSI, SINA. |
| 5/11/2005 | Baker DJ | $ 1,002.03 | 1069609 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH; FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: BAKER, DAVID JANSING. |
| 5/16/2005 | LaMaina KA | $ 60.00 | 1073264 | VENDOR: LAMAINA KA INVOICE#: ER052005 DATE: 5/20/2005 DEPARTING AIRPORT OR STATION: 03/02/05; ARRIVAL AIRPORT OR STATION: WILMINGTON; CARRIER: AMTRAK; CLASS OF SERVICE: ECONOMY; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/02/05; TO: JACKSONVILLE; RETURN DATE: 03/04/05 *** |
| 5/17/2005 | LaMaina KA | $ 87.00 | 1073264 | VENDOR: LAMAINA KA INVOICE#: ER052005 DATE: 5/20/2005 DEPARTING AIRPORT OR STATION: PHILADELPHIA; ARRIVAL AIRPORT OR STATION: JACKSONVILLE; CARRIER: AMTRAK; CLASS OF SERVICE: ECONOMY; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/02/05; TO: JACKSONVILLE; RETURN DATE: 03/04/05 *** |
| 5/18/2005 | Matz TJ | $ (1,002.03) | 1069609 | AGENCY: NAVIGANT TRAVEL.. NAME: MATZ, THOMAS J. |
| 5/18/2005 | Matz TJ | $ 1,002.03 | 1069609 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH; FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: MATZ, THOMAS J. |
| 5/18/2005 | Toussi S | $ (1,002.03) | 1069609 | AGENCY: NAVIGANT TRAVEL.. NAME: TOUSSI, SINA. |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**Second Interim Response**
**Exhibit N-1**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 5/18/2005 | Toussi S | $ 1,002.03 | 1069609 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH; FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: TOUSSI, SINA. |
| 6/1/2005 | Baker DJ | $ 524.76 | 1064633 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| 6/2/2005 | Baker DJ | $ 416.20 | 1064633 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: LGA NEW YORK NY-LA GUARDIA CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| 6/7/2005 | Baker DJ | $ (434.26) | 1064633 | AGENCY: NAVIGANT TRAVEL.. NAME: BAKER, DAVID JANSING. |
| 6/7/2005 | Baker DJ | $ 957.03 | 1064633 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH; FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: BAKER, DAVID JANSING. |
| 6/10/2005 | Baker DJ | $ 479.27 | 1064633 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: BAKER, DAVID JANSING. |
| 6/13/2005 | Baker DJ | $ 1,096.03 | 1064633 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH; FROM: JAX JACKSONVILLE FL-INTL TO: EWR NEWARK NJ CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: BAKER, DAVID JANSING. |
| 6/14/2005 | Turetsky DM | $ 522.77 | 1064633 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: TURETSKY, DAVID M. |
| 6/16/2005 | Turetsky DM | $ 411.20 | 1064633 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: JFK NEW YORK NY-KENNEDY CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: TURETSKY, DAVID M. |
| 6/17/2005 | Turetsky DM | $ (937.00) | 1064633 | AGENCY: NAVIGANT TRAVEL.. NAME: TURETSKY, DAVID M. |
| 6/17/2005 | Turetsky DM | $ 937.00 | 1064633 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: IAD WASHINGTON DC-DULLES CARRIER: UA UNITED AIRLINES CLASS: M COACH; FROM: IAD WASHINGTON DC-DULLES TO: YUL MONTREAL QU CAN-DORVAL CARRIER: UA UNITED AIRLINES CLASS: M COACH. NAME: TURETSKY, DAVID M. |
| 7/17/2005 | LaMaina KA | $ 126.00 | 1068316 | AGENCY: NAVIGANT TRAVEL. FROM: PHL PHILADELPHIA PA TO: NYP NEW YORK-PENN STATION NY UNK=2V CLASS: J BUSINESS. NAME: LAMAINA, KIMBERLY A. |
| 7/24/2005 | Baker DJ | $ 569.76 | 1068316 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| 7/25/2005 | Leamy JM | $ 473.39 | 1068316 | AGENCY: NAVIGANT TRAVEL. FROM: PHL PHILADELPHIA PA-WILM'T-INTL TO: JAX JACKSONVILLE FL-INTL CARRIER: US USAIR CLASS: Q COACH; FROM: JAX JACKSONVILLE FL-INTL TO: PHL PHILADELPHIA PA-WILM'T-INTL CARRIER: US USAIR CLASS: L COACH. NAME: LEAMY, JANE M. |
| 7/26/2005 | Baker DJ | $ (479.20) | 1068316 | AGENCY: NAVIGANT TRAVEL.. NAME: BAKER, DAVID JANSING. |
| 7/26/2005 | Baker DJ | $ 479.20 | 1068316 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: LGA NEW YORK NY-LA GUARDIA CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**Second Interim Response**
**Exhibit N-1**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 7/26/2005 | Baker DJ | $ 479.20 | 1068316 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: LGA NEW YORK NY-LA GUARDIA CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| 7/28/2005 | Henry S | $ 1,001.90 | 1068316 | AGENCY: NAVIGANT TRAVEL. FROM: LGA NEW YORK NY-LA GUARDIA TO: JAX JACKSONVILLE FL-INTL CARRIER: DL DELTA AIR LINES CLASS: Y COACH; FROM: JAX JACKSONVILLE FL-INTL TO: LGA NEW YORK NY-LA GUARDIA CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: HENRY,SALLY M. |
| 7/29/2005 | Henry S | $ 524.20 | 1068316 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: JFK NEW YORK NY-KENNEDY CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: HENRY, SALLY M. |
| 8/3/2005 | Henry S | $ 1,001.90 | 1073264 | AGENCY: NAVIGANT TRAVEL. FROM: LGA NEW YORK NY-LA GUARDIA TO: JAX JACKSONVILLE FL-INTL CARRIER: DL DELTA AIR LINES CLASS: Y COACH; FROM: JAX JACKSONVILLE FL-INTL TO: LGA NEW YORK NY-LA GUARDIA CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: HENRY,SALLY M. |
| 8/8/2005 | LaMaina KA | $ 89.00 | 1073264 | AGENCY: NAVIGANT TRAVEL. FROM: WIL WILMINGTON DE TO: NYP NEW YORK-PENN STATION NY UNK=2V CLASS: C BUSINESS. NAME: LAMAINA, KIMBERLY A. |
| 8/10/2005 | Baker DJ | $ (477.77) | 1073264 | AGENCY: NAVIGANT TRAVEL.. NAME: BAKER, DAVID JANSING. |
| 8/10/2005 | Baker DJ | $ 477.77 | 1073264 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: BAKER, DAVID JANSING. |
| 8/10/2005 | Baker DJ | $ 522.77 | 1073264 | AGENCY: NAVIGANT TRAVEL. FROM: EWR NEWARK NJ TO: JAX JACKSONVILLE FL-INTL CARRIER: CO CONTINENTAL AIRLINES CLASS: H COACH. NAME: BAKER, DAVID JANSING. |
| 8/11/2005 | Baker DJ | $ 479.20 | 1073264 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: LGA NEW YORK NY-LA GUARDIA CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| 8/31/2005 | Baker DJ | $ (487.70) | 1073264 | AGENCY: NAVIGANT TRAVEL.. NAME: BAKER, DAVID JANSING. |
| 8/31/2005 | Baker DJ | $ 492.70 | 1073264 | AGENCY: NAVIGANT TRAVEL. FROM: JFK NEW YORK NY-KENNEDY TO: JAX JACKSONVILLE FL-INTL CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| 8/31/2005 | Baker DJ | $ 532.70 | 1073264 | AGENCY: NAVIGANT TRAVEL. FROM: JFK NEW YORK NY-KENNEDY TO: JAX JACKSONVILLE FL-INTL CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| 9/1/2005 | Baker DJ | $ 489.20 | 1076965 | AGENCY: NAVIGANT TRAVEL. FROM: JAX JACKSONVILLE FL-INTL TO: LGA NEW YORK NY-LA GUARDIA CARRIER: DL DELTA AIR LINES CLASS: Y COACH. NAME: BAKER, DAVID JANSING. |
| **TOTAL** | | **$ 13,643.14** | | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**Second Interim Response**
**Exhibit N-2**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 5/1/2005 | Toussi S | $ 34.88 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005   PLACE: SEAFOOD KITCHEN; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05*** |
| 5/2/2005 | Toussi S | $ 106.23 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005   PLACE: CHART HOUSE; ATTENDEES: 2; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; NAME: APHAY LIU; TITLE: *; COMPANY: XROADS SOLUTIONS LLC; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/4/2005 | Toussi S | $ 60.00 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005   PLACE: CHART HOUSE; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/5/2005 | Baker DJ | $ 15.84 | 1069609 | VENDOR: BAKER DJ INVOICE#: ER052705 DATE: 5/27/2005   PLACE: RENAISSANCE CHICAGO HOTEL; ATTENDEES: 1; NAME: D. J. (JAN) BAKER; TITLE: PARTNER; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 05/04/05; TO: CHICAGO, O'HARE; RETURN DATE: 05/05/05 *** |
| 5/6/2005 | Toussi S | $ 44.39 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005   PLACE: HILTON HOTEL GIFT SHOP - MEALS/SNACKS/BEVERAGES; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/6/2005 | Toussi S | $ 434.19 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005   PLACE: HOTEL MEALS; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/6/2005 | Toussi S | $ 28.64 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005   PLACE: SHIPYARD BREW PUB; ATTENDEES: 1; NAME: SINA TOUSSI; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/11/2005 | Baker DJ | $ 30.91 | 1069609 | VENDOR: BAKER DJ INVOICE#: ER052705 DATE: 5/27/2005   PLACE: OMNI HOTEL; ATTENDEES: 1; NAME: D. J. (JAN) BAKER; TITLE: PARTNER; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 05/04/05; TO: CHICAGO, O'HARE; RETURN DATE: 05/05/05 *** |
| 6/13/2005 | Baker DJ | $ 373.63 | 1064633 | VENDOR: BAKER DJ INVOICE#: ER070105 DATE: 7/1/2005   PLACE: JULIETTE'S RESTAURANT & ROOM S; ATTENDEES: 1; NAME: D. J. (JAN) BAKER; TITLE: PARTNER; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEWARK INT'L.; DEPARTURE DATE: 06/13/05; TO: JACKSONVILLE, FL; RETURN DATE: 06/23/05 *** |
| 7/17/2005 | LaMaina KA | $ 30.83 | 1068316 | VENDOR: LAMAINA KA INVOICE#: ER072205 DATE: 7/22/2005   PLACE: BROADWAY LOUNGE; ATTENDEES: 1; NAME: KIMBERLY LAMAINA; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: WILMINGTON; DEPARTURE DATE: 07/17/05; TO: NEW YORK; RETURN DATE: 07/19/05 *** |
| 7/18/2005 | LaMaina KA | $ 36.83 | 1068316 | VENDOR: LAMAINA KA INVOICE#: ER072905 DATE: 7/29/2005   PLACE: MARRIOT; ATTENDEES: 1; NAME: KIMBERLY LAMAINA; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: WILMINGTON; DEPARTURE DATE: 07/17/05; TO: NEW YORK; RETURN DATE: 07/19/05 *** |
| 7/24/2005 | Baker DJ | $ 63.89 | 1073264 | VENDOR: BAKER DJ INVOICE#: ER081205 DATE: 8/12/2005   PLACE: JULIETTE'S RESTAURANT; ATTENDEES: 1; NAME: D. J. (JAN) BAKER; TITLE: PARTNER; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: NEWARK, NJ; DEPARTURE DATE: 07/24/05; TO: JACKSONVILLE, FL; RETURN DATE: 07/26/05 *** |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**Second Interim Response**
**Exhibit N-2**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 8/8/2005 | LaMaina KA | $ 10.73 | 1073264 | VENDOR: LAMAINA KA INVOICE#: ER081905 DATE: 8/19/2005   PLACE: SKADDEN AND AMTRAK; ATTENDEES: 1; NAME: KIMBERLY LAMAINA; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: WILMINGTON; DEPARTURE DATE: 08/04/05; TO: CAMBRIDGE; RETURN DATE:08/06/05 *** |
| 8/9/2005 | LaMaina KA | $ 2.00 | 1073264 | VENDOR: LAMAINA KA INVOICE#: ER081905 DATE: 8/19/2005   PLACE: AMTRAK; ATTENDEES: 1; NAME: KIMBERLY LAMAINA; TITLE: ASSOCIATE; COMPANY: SKADDEN; *** RELATING TO TRIP FROM: WILMINGTON; DEPARTURE DATE: 08/08/05; TO: NEW YORK; RETURN DATE: 08/09/05 *** |
| TOTAL | | $ 1,272.99 | | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**Second Interim Response**
**Exhibit N-3**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 5/5/2005 | Baker DJ | $ 117.14 | 1069609 | CO: DIALCAR DATE: 05-05-2005 TIME: 10:21 P.M. FROM: NWK MEET& GREET N NJ 1008P S TO: 60TH-COL & 112TH-RSD BASE: $56.84 SERVICE: $10.30 WAITING: $4.00 STOPS: $22.00 TOLLS: $14.00 MISC: $ |
| 5/9/2005 | Horwitz MD | $ 23.05 | 1069609 | CO: DIALCAR DATE: 05-09-2005 TIME: 05:20 A.M. FROM: TIMES-ON43 SQ 4 MH 011 SK TO: 12 E. 22ND ST. BASE: $19.60 SERVICE: $3.45 |
| 5/11/2005 | Baker DJ | $ 71.95 | 1069609 | CO: DIALCAR DATE: 05-11-2005 TIME: 05:08 P.M. FROM: TIMES-ON43 SQ 4 MH 5PM SK TO: NWK A-P BASE: $56.84 SERVICE: $6.41 TOLLS: $8.70 |
| 5/13/2005 | Baker DJ | $ 156.20 | 1069609 | CO: DIALCAR DATE: 05-13-2005 TIME: 04:45 P.M. FROM: NWK MEET& GREET N NJ 418P TO: 3 STOPS MH 4 T.SQ,W60,GRAND C BASE: $56.84 SERVICE: $11.06 WAITING: $36.00 STOPS: $28.00 TOLLS: $14.30 |
| 5/16/2005 | Baker DJ | $ 91.64 | 1069609 | CO: DIALCAR DATE: 05-16-2005 TIME: 01:12 P.M. FROM: NWK CONTINENTAL N NJ 011 SK TO: 4 TIMES W-S @ 45 W 60 ST BASE: $56.84 SERVICE: $4.80 WAITING: $15.00 STOPS: $7.00 TOLLS: $8.00 |
| 5/17/2005 | Henry S | $ 46.68 | 1069609 | CO: DIALCAR DATE: 05-17-2005 TIME: 00:09 P.M. FROM: TIMES-ON43 SQ 4 MH 12P SK TO: LAG AP BASE: $36.26 SERVICE: $5.92 TOLLS: $4.50 |
| 5/17/2005 | LaMaina KA | $22.05 | 1069609 | CO: DIALCAR DATE: 05-17-2005 TIME: 07:42 P.M. FROM: TIMES-ON43 SQ 4 MH 11 SK TO: PENN STA MH BASE: $18.62 SERVICE: $3.43 |
| 5/17/2005 | Ravin AS | $ 73.28 | 1069609 | CO: DIALCAR DATE: 05-17-2005 TIME: 06:36 P.M. FROM: TIMES-ON43 SQ 4 MH 011 SK TO: MARRIOT HOTEL AT NWK BASE: $56.84 SERVICE: $4.44 TOLLS: $12.00 |
| 5/18/2005 | Ravin AS | $ 46.68 | 1069609 | CO: DIALCAR DATE: 05-18-2005 TIME: 07:21 A.M. FROM: 7TH AV 71 MH 730AM SK TO: LAG AP BASE: $36.26 SERVICE: $5.92 TOLLS: $4.50 |
| **TOTAL** | | **$ 648.67** | | |

**Skadden, Arps, Slate, Meagher Flom LLP**
**Second Interim Response**
**Exhibit N-4**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 3/4/2005 | LaMaina KA | $ 201.14 | 1073264 | VENDOR: LAMAINA KA INVOICE#: ER052005 DATE: 5/20/2005  LODGING: FAIRFIELD INN MARRIOTT; NUMBER OF NIGHTS: 2; START DATE: 03/02/05; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/02/05; TO: JACKSONVILLE; RETURN DATE: 03/04/05 *** |
| 5/3/2005 | Toussi S | $ 43.00 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005  TAXI; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/4/2005 | Baker DJ | $ 385.70 | 1069609 | VENDOR: BAKER DJ INVOICE#: ER052705 DATE: 5/27/2005  LODGING: RENAISSANCE CHICAGO HOTEL; NUMBER OF NIGHTS: 1; START DATE: 05/04/05; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 05/04/05; TO: CHICAGO, O'HARE; RETURN DATE: 05/05/05 *** |
| 5/4/2005 | Baker DJ | $ 45.00 | 1069609 | VENDOR: BAKER DJ INVOICE#: ER052705 DATE: 5/27/2005  TAXI; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 05/04/05; TO: CHICAGO, O'HARE; RETURN DATE: 05/05/05 *** |
| 5/5/2005 | Baker DJ | $ 6.00 | 1069609 | VENDOR: BAKER DJ INVOICE#: ER052705 DATE: 5/27/2005  SUBWAY FARE; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 05/04/05; TO: CHICAGO, O'HARE; RETURN DATE: 05/05/05 *** |
| 5/6/2005 | Toussi S | $ 67.05 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005  HILTON HOTEL - LAUNDRY; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/6/2005 | Toussi S | $1,080.13 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005  AVIS CAR RENTAL; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/6/2005 | Toussi S | $ 35.00 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005  HILTON HOTEL - HOUSEKEEPING AND VALET TIPS; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/6/2005 | Toussi S | $1,613.64 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005  LODGING: HILTON; NUMBER OF NIGHTS: 12; START DATE: 04/24/05; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/6/2005 | Toussi S | $ 150.00 | 1069609 | VENDOR: TOUSSI S INVOICE#: ER051305 DATE: 5/13/2005  HILTON HOTEL - PARKING; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/6/2005 | Toussi S | $ 18.00 | 1064633 | VENDOR: TOUSSI S INVOICE#: ER061005 DATE: 6/10/2005  TAXI; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/08/05 *** |
| 5/6/2005 | Toussi S | $ 199.80 | 1073264 | VENDOR: TOUSSI S INVOICE#: ER072905 DATE: 7/29/2005  AVIS CAR RENTAL; *** RELATING TO TRIP FROM: NEW YORK; DEPARTURE DATE: 04/10/05; TO: JACKSONVILLE; RETURN DATE: 05/06/05 *** |
| 5/11/2005 | Baker DJ | $ 343.52 | 1069609 | VENDOR: BAKER DJ INVOICE#: ER052705 DATE: 5/27/2005  OMNI HOTEL - MEETING ROOMS; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 05/04/05; TO: CHICAGO, O'HARE; RETURN DATE: 05/05/05 *** |
| 5/11/2005 | Baker DJ | $ 12.00 | 1069609 | VENDOR: BAKER DJ INVOICE#: ER052705 DATE: 5/27/2005  PARKING - JACKSONVILLE; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 05/04/05; TO: CHICAGO, O'HARE; RETURN DATE: 05/05/05 *** |
| 5/11/2005 | Baker DJ | $ 121.55 | 1069609 | VENDOR: BAKER DJ INVOICE#: ER052705 DATE: 5/27/2005  HERTZ CAR RENTAL; *** RELATING TO TRIP FROM: NEWARK, LIBERTY INT'L.; DEPARTURE DATE: 05/04/05; TO: CHICAGO, O'HARE; RETURN DATE: 05/05/05 *** |
| 5/17/2005 | LaMaina KA | $ 9.00 | 1073264 | VENDOR: LAMAINA KA INVOICE#: ER052005 DATE: 5/20/2005  TAXI; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 03/02/05; TO: JACKSONVILLE; RETURN DATE: 03/04/05 *** |

**Skadden, Arps, Slate, Meagher Flom LLP**
**Second Interim Response**
**Exhibit N-4**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 6/7/2005 | Baker DJ | $ 85.59 | 1073264 | VENDOR: BAKER DJ INVOICE#: ER081205 DATE: 8/12/2005   LODGING: OMNI HOTEL; NUMBER OF NIGHTS: 3; START DATE: 06/07/05; *** RELATING TO TRIP FROM: NEWARK; DEPARTURE DATE: 06/07/05; TO: JACKSONVILLE, FLORIDA; RETURN DATE: 06/10/05 *** |
| 6/7/2005 | Baker DJ | $ 631.40 | 1073264 | VENDOR: BAKER DJ INVOICE#: ER081205 DATE: 8/12/2005   LODGING: OMNI HOTELS; NUMBER OF NIGHTS: 3; START DATE: 06/07/05; *** RELATING TO TRIP FROM: NEWARK; DEPARTURE DATE: 06/07/05; TO: JACKSONVILLE, FLORIDA; RETURN DATE: 06/10/05 *** |
| 6/13/2005 | Baker DJ | $1,365.38 | 1064633 | VENDOR: BAKER DJ INVOICE#: ER070105 DATE: 7/1/2005   LODGING: OMNI HOTELS; NUMBER OF NIGHTS: 10; START DATE: 06/13/05; *** RELATING TO TRIP FROM: NEWARK INT'L.; DEPARTURE DATE: 06/13/05; TO: JACKSONVILLE, FL; RETURN DATE: 06/23/05 *** |
| 6/13/2005 | Baker DJ | $ 635.14 | 1064633 | VENDOR: BAKER DJ INVOICE#: ER070105 DATE: 7/1/2005  HERTZ CAR RENTAL; *** RELATING TO TRIP FROM: NEWARK INT'L; DEPARTURE DATE: 06/13/05; TO: JACKSONVILLE, FL; RETURN DATE: 06/23/05 *** |
| 6/14/2005 | Turetsky DM | $ 20.50 | 1068316 | VENDOR: TURETSKY DM INVOICE#: ER071505 DATE: 7/15/2005   TAXI; *** RELATING TO TRIP FROM: NEW YORK, NY; DEPARTURE DATE: 06/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 06/16/05 *** |
| 6/16/2005 | Turetsky DM | $ 20.00 | 1068316 | VENDOR: TURETSKY DM INVOICE#: ER071505 DATE: 7/15/2005   MEAL - JAX AIRPORT *** RELATING TO TRIP FROM: NEW YORK, NY; DEPARTURE DATE: 06/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 06/16/05 *** |
| 6/16/2005 | Turetsky DM | $ 282.50 | 1068316 | VENDOR: TURETSKY DM INVOICE#: ER071505 DATE: 7/15/2005 LODGING: OMNI HOTEL, JACKSONVILLE, FL; NUMBER OF NIGHTS: 2; START DATE: 06/14/05; *** RELATING TO TRIP FROM: NEW YORK, NY; DEPARTURE DATE: 06/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 06/16/05*** |
| 6/16/2005 | Turetsky DM | $ 20.88 | 1068316 | VENDOR: TURETSKY DM INVOICE#: ER071505 DATE: 7/15/2005   OMNI HOTEL - INTERNET CONNECTION FEE; *** RELATING TO TRIP FROM: NEW YORK, NY; DEPARTURE DATE: 06/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 06/16/05 *** |
| 6/16/2005 | Turetsky DM | $ 30.00 | 1068316 | VENDOR: TURETSKY DM INVOICE#: ER071505 DATE: 7/15/2005   TAXI; *** RELATING TO TRIP FROM: NEW YORK, NY; DEPARTURE DATE: 06/14/05; TO: JACKSONVILLE, FL; RETURN DATE: 06/16/05 *** |
| 7/19/2005 | LaMaina KA | $ 753.00 | 1068316 | VENDOR: LAMAINA KA INVOICE#: ER072905 DATE: 7/29/2005   LODGING: MARRIOTT MARQUIS NEW YORK; NUMBER OF NIGHTS: 2; START DATE: 07/17/05; *** RELATING TO TRIP FROM: WILMINGTON; DEPARTURE DATE: 07/17/05; TO: NEW YORK; RETURN DATE: 07/19/05 *** |
| 7/19/2005 | Ravin AS | $ 6.00 | 1068316 | VENDOR: RAVIN AS INVOICE#: ER072205 DATE: 7/22/2005   TAXI; *** RELATING TO TRIP FROM: LGA AIRPORT; DEPARTURE DATE: 07/19/05; TO: NY; RETURN DATE: 07/19/05 *** |
| 7/24/2005 | Baker DJ | $ 334.20 | 1073264 | VENDOR: BAKER DJ INVOICE#: ER081205 DATE: 8/12/2005   LODGING: OMNI JACKSONVILLE HOTEL; NUMBER OF NIGHTS: 2; START DATE: 07/24/05; *** RELATING TO TRIP FROM: NEWARK; DEPARTURE DATE: 06/07/05; TO: JACKSONVILLE, FLORIDA; RETURN DATE: 06/10/05 *** |
| 7/24/2005 | Baker DJ | $ 132.53 | 1073264 | VENDOR: BAKER DJ INVOICE#: ER081205 DATE: 8/12/2005   HERTZ CAR RENTAL; *** RELATING TO TRIP FROM: NEWARK, NJ; DEPARTURE DATE: 07/24/05; TO: JACKSONVILLE, FL; RETURN DATE: 07/26/05 *** |
| 7/26/2005 | Leamy JM | $ 24.00 | 1068316 | VENDOR: LEAMY JM INVOICE#: ER072905 DATE: 7/29/2005   PARKING - PHL AIRPORT; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 07/25/05; TO: JACKSONVILLE; RETURN DATE: 07/26/05 *** |
| 7/26/2005 | Leamy JM | $ 52.36 | 1068316 | VENDOR: LEAMY JM INVOICE#: ER072905 DATE: 7/29/2005   AVIS CAR RENTAL; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 07/25/05; TO: JACKSONVILLE; RETURN DATE: 07/26/05 *** |

**Skadden, Arps, Slate, Meagher Flom LLP**
**Second Interim Response**
**Exhibit N-4**

| TRAN DATE | TIMEKEEPER NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 7/26/2005 | Leamy JM | $ 106.22 | 1068316 | VENDOR: LEAMY JM INVOICE#: ER072905 DATE: 7/29/2005   LODGING: FAIRFIELD INN JACKSONVILLE; NUMBER OF NIGHTS: 1; START DATE: 07/25/05; *** RELATING TO TRIP FROM: PHILADELPHIA; DEPARTURE DATE: 07/25/05; TO: JACKSONVILLE; RETURN DATE: 07/26/05 *** |
| 8/9/2005 | LaMaina KA | $ 300.54 | 1073264 | VENDOR: LAMAINA KA INVOICE#: ER081905 DATE: 8/19/2005   LODGING: THE WESTIN NEW YORK; NUMBER OF NIGHTS: 1; START DATE: 08/08/05; *** RELATING TO TRIP FROM: WILMINGTON; DEPARTURE DATE: 08/08/05; TO: NEW YORK; RETURN DATE: 08/09/05 *** |
| 8/10/2005 | Baker DJ | $ 82.93 | 1073264 | VENDOR: BAKER DJ INVOICE#: ER081205 DATE: 8/12/2005   HERTZ CAR RENTAL; *** RELATING TO TRIP FROM: NEWARK, NJ; DEPARTURE DATE: 07/24/05; TO: JACKSONVILLE, FL; RETURN DATE: 07/26/05 *** |
| 8/10/2005 | Baker DJ | $ 186.45 | 1073264 | VENDOR: BAKER DJ INVOICE#: ER081205 DATE: 8/12/2005   LODGING: OMNI HOTEL; NUMBER OF NIGHTS: 1; START DATE: 08/10/05; *** RELATING TO TRIP FROM: NEWARK, NJ; DEPARTURE DATE: 07/24/05; TO: JACKSONVILLE, FL; RETURN DATE: 07/26/05 *** |
| 8/10/2005 | Baker DJ | $ 29.47 | 1073264 | VENDOR: BAKER DJ INVOICE#: ER081205 DATE: 8/12/2005   MEAL - OMNI HOTEL; *** RELATING TO TRIP FROM: NEWARK, NJ; DEPARTURE DATE: 07/24/05; TO: JACKSONVILLE, FL; RETURN DATE: 07/26/05 *** |
| TOTAL | | $ 9,429.62 | | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**Second Interim Response**
**Exhibit N-5**

| TRAN DATE | NAME | DISBURSEMENT TYPE | BILLED AMOUNT | QUANTITY | PER PAGE CHARGE | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|---|---|---|
| 5/3/2005 | Copy Center, D | In-House Reproduction | $ 1.60 | 16 | $ 0.10 | 1069609 | |
| 5/3/2005 | Copy Center, D | In-House Reproduction | $ 30.60 | 306 | $ 0.10 | 1069609 | |
| 5/3/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1069609 | |
| 5/3/2005 | Copy Center, D | In-House Reproduction | $ 6.20 | 62 | $ 0.10 | 1069609 | |
| 5/3/2005 | Copy Center, D | In-House Reproduction | $ 125.90 | 1,259 | $ 0.10 | 1069609 | |
| 5/6/2005 | Copy Center, D | In-House Reproduction | $ 18.20 | 182 | $ 0.10 | 1069609 | |
| 5/6/2005 | Copy Center, D | In-House Reproduction | $ 0.50 | 5 | $ 0.10 | 1069609 | |
| 5/6/2005 | Copy Center, D | In-House Reproduction | $ 0.40 | 4 | $ 0.10 | 1069609 | |
| 5/6/2005 | Copy Center, D | In-House Reproduction | $ 45.70 | 457 | $ 0.10 | 1069609 | |
| 5/6/2005 | Copy Center, D | In-House Reproduction | $ 4.90 | 49 | $ 0.10 | 1069609 | |
| 5/6/2005 | Copy Center, D | In-House Reproduction | $ 3.90 | 39 | $ 0.10 | 1069609 | |
| 5/6/2005 | Copy Center, D | In-House Reproduction | $ 430.20 | 4,302 | $ 0.10 | 1069609 | |
| 5/6/2005 | Copy Center, D | In-House Reproduction | $ 3.60 | 36 | $ 0.10 | 1069609 | |
| 5/10/2005 | Copy Center, D | In-House Reproduction | $ 53.10 | 531 | $ 0.10 | 1069609 | |
| 5/10/2005 | Copy Center, D | In-House Reproduction | $ 0.80 | 8 | $ 0.10 | 1069609 | |
| 5/10/2005 | Copy Center, D | In-House Reproduction | $ 7.10 | 71 | $ 0.10 | 1069609 | |
| 5/10/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1069609 | |
| 5/10/2005 | Copy Center, D | In-House Reproduction | $ 0.80 | 8 | $ 0.10 | 1069609 | |
| 5/10/2005 | Copy Center, D | In-House Reproduction | $ 318.70 | 3,187 | $ 0.10 | 1069609 | |
| 5/13/2005 | Copy Center, D | In-House Reproduction | $ 0.40 | 4 | $ 0.10 | 1069609 | |
| 5/13/2005 | Copy Center, D | In-House Reproduction | $ 2.30 | 23 | $ 0.10 | 1069609 | |
| 5/13/2005 | Copy Center, D | In-House Reproduction | $ 20.20 | 202 | $ 0.10 | 1069609 | |
| 5/13/2005 | Copy Center, D | In-House Reproduction | $ 12.70 | 127 | $ 0.10 | 1069609 | |
| 5/13/2005 | Copy Center, D | In-House Reproduction | $ 1,936.80 | 19,368 | $ 0.10 | 1069609 | |
| 5/13/2005 | Copy Center, D | In-House Reproduction | $ 41.00 | 410 | $ 0.10 | 1069609 | |
| 5/13/2005 | Copy Center, D | In-House Reproduction | $ 1.80 | 18 | $ 0.10 | 1069609 | |
| 5/13/2005 | Copy Center, D | In-House Reproduction | $ 7.20 | 72 | $ 0.10 | 1069609 | |
| 5/13/2005 | Copy Center, D | In-House Reproduction | $ 200.00 | 2,000 | $ 0.10 | 1069609 | |
| 5/17/2005 | Copy Center, D | In-House Reproduction | $ 514.50 | 5,145 | $ 0.10 | 1069609 | |
| 5/17/2005 | Copy Center, D | In-House Reproduction | $ 53.20 | 532 | $ 0.10 | 1069609 | |
| 5/17/2005 | Copy Center, D | In-House Reproduction | $ 0.40 | 4 | $ 0.10 | 1069609 | |
| 5/17/2005 | Copy Center, D | In-House Reproduction | $ 0.40 | 4 | $ 0.10 | 1069609 | |
| 5/17/2005 | Copy Center, D | In-House Reproduction | $ 553.70 | 5,537 | $ 0.10 | 1069609 | |
| 5/20/2005 | Copy Center, D | In-House Reproduction | $ 310.90 | 3,109 | $ 0.10 | 1069609 | |
| 5/20/2005 | Copy Center, D | In-House Reproduction | $ 127.80 | 1,278 | $ 0.10 | 1069609 | |
| 5/20/2005 | Copy Center, D | In-House Reproduction | $ 253.30 | 2,533 | $ 0.10 | 1069609 | |
| 5/24/2005 | Copy Center, D | In-House Reproduction | $ 1.00 | 10 | $ 0.10 | 1069609 | |
| 5/24/2005 | Copy Center, D | In-House Reproduction | $ 1.90 | 19 | $ 0.10 | 1069609 | |
| 5/24/2005 | Copy Center, D | In-House Reproduction | $ 387.60 | 3,876 | $ 0.10 | 1069609 | |
| 5/24/2005 | Copy Center, D | In-House Reproduction | $ 291.70 | 2,917 | $ 0.10 | 1069609 | |
| 5/27/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1069609 | |
| 5/27/2005 | Copy Center, D | In-House Reproduction | $ 600.80 | 6,008 | $ 0.10 | 1069609 | |
| 5/27/2005 | Copy Center, D | In-House Reproduction | $ 45.70 | 457 | $ 0.10 | 1069609 | |
| 6/3/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1064633 | |
| 6/3/2005 | Copy Center, D | In-House Reproduction | $ 3.20 | 32 | $ 0.10 | 1064633 | |
| 6/3/2005 | Copy Center, D | In-House Reproduction | $ 16.90 | 169 | $ 0.10 | 1064633 | |
| 6/3/2005 | Copy Center, D | In-House Reproduction | $ 0.90 | 9 | $ 0.10 | 1064633 | |
| 6/7/2005 | Copy Center, D | In-House Reproduction | $ 0.20 | 2 | $ 0.10 | 1064633 | |
| 6/7/2005 | Copy Center, D | In-House Reproduction | $ 2.90 | 29 | $ 0.10 | 1064633 | |
| 6/10/2005 | Copy Center, D | In-House Reproduction | $ 3.80 | 38 | $ 0.10 | 1064633 | |
| 6/10/2005 | Copy Center, D | In-House Reproduction | $ 58.30 | 583 | $ 0.10 | 1064633 | |
| 6/10/2005 | Copy Center, D | In-House Reproduction | $ 110.70 | 1,107 | $ 0.10 | 1064633 | |
| 6/10/2005 | Copy Center, D | In-House Reproduction | $ 7.00 | 70 | $ 0.10 | 1064633 | |
| 6/10/2005 | Copy Center, D | In-House Reproduction | $ 1.10 | 11 | $ 0.10 | 1064633 | |
| 6/10/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1064633 | |
| 6/10/2005 | Copy Center, D | In-House Reproduction | $ 28.80 | 288 | $ 0.10 | 1064633 | |
| 6/10/2005 | Copy Center, D | In-House Reproduction | $ 788.50 | 7,885 | $ 0.10 | 1064633 | |
| 6/14/2005 | Copy Center, D | In-House Reproduction | $ 5.10 | 51 | $ 0.10 | 1064633 | |
| 6/14/2005 | Copy Center, D | In-House Reproduction | $ 8.60 | 86 | $ 0.10 | 1064633 | |
| 6/17/2005 | Copy Center, D | In-House Reproduction | $ 56.80 | 568 | $ 0.10 | 1064633 | |
| 6/17/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1064633 | |
| 6/17/2005 | Copy Center, D | In-House Reproduction | $ 0.60 | 6 | $ 0.10 | 1064633 | |
| 6/17/2005 | Copy Center, D | In-House Reproduction | $ 0.90 | 9 | $ 0.10 | 1064633 | |
| 6/17/2005 | Copy Center, D | In-House Reproduction | $ 1.60 | 16 | $ 0.10 | 1064633 | |
| 6/17/2005 | Copy Center, D | In-House Reproduction | $ 30.80 | 308 | $ 0.10 | 1064633 | |
| 6/21/2005 | Copy Center, D | In-House Reproduction | $ 82.30 | 823 | $ 0.10 | 1064633 | |
| 6/21/2005 | Copy Center, D | In-House Reproduction | $ 3.10 | 31 | $ 0.10 | 1064633 | |
| 6/21/2005 | Copy Center, D | In-House Reproduction | $ 11.10 | 111 | $ 0.10 | 1064633 | |
| 6/24/2005 | Copy Center, D | In-House Reproduction | $ 0.10 | 1 | $ 0.10 | 1064633 | |
| 6/24/2005 | Copy Center, D | In-House Reproduction | $ 29.40 | 294 | $ 0.10 | 1064633 | |
| 6/24/2005 | Copy Center, D | In-House Reproduction | $ 4.90 | 49 | $ 0.10 | 1064633 | |
| 6/24/2005 | Copy Center, D | In-House Reproduction | $ 8.70 | 87 | $ 0.10 | 1064633 | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**Second Interim Response**
**Exhibit N-5**

| TRAN DATE | NAME | DISBURSEMENT TYPE | BILLED AMOUNT | QUANTITY | PER PAGE CHARGE | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|---|---|---|
| 6/27/2005 | Copy Center, D | In-House Reproduction | $ 23.00 | 230 | $ 0.10 | 1064633 | |
| 6/28/2005 | Copy Center, D | In-House Reproduction | $ 5.60 | 56 | $ 0.10 | 1064633 | |
| 6/28/2005 | Copy Center, D | In-House Reproduction | $ 15.20 | 152 | $ 0.10 | 1064633 | |
| 6/28/2005 | Copy Center, D | In-House Reproduction | $ 6.40 | 64 | $ 0.10 | 1064633 | |
| 6/28/2005 | Copy Center, D | In-House Reproduction | $ 24.00 | 240 | $ 0.10 | 1064633 | |
| 6/28/2005 | Copy Center, D | In-House Reproduction | $ 8.00 | 80 | $ 0.10 | 1064633 | |
| 7/1/2005 | Copy Center, D | In-House Reproduction | $ 56.20 | 562 | $ 0.10 | 1068316 | |
| 7/1/2005 | Copy Center, D | In-House Reproduction | $ 122.70 | 1,227 | $ 0.10 | 1068316 | |
| 7/1/2005 | Copy Center, D | In-House Reproduction | $ 0.40 | 4 | $ 0.10 | 1068316 | |
| 7/1/2005 | Copy Center, D | In-House Reproduction | $ 714.30 | 7,143 | $ 0.10 | 1068316 | |
| 7/1/2005 | Copy Center, D | In-House Reproduction | $ 530.70 | 5,307 | $ 0.10 | 1068316 | |
| 7/1/2005 | Copy Center, D | In-House Reproduction | $ 3.50 | 35 | $ 0.10 | 1068316 | |
| 7/5/2005 | Copy Center, D | In-House Reproduction | $ 0.70 | 7 | $ 0.10 | 1068316 | |
| 7/5/2005 | Copy Center, D | In-House Reproduction | $ 0.20 | 2 | $ 0.10 | 1068316 | |
| 7/5/2005 | Copy Center, D | In-House Reproduction | $ 10.40 | 104 | $ 0.10 | 1068316 | |
| 7/8/2005 | Copy Center, D | In-House Reproduction | $ 2.90 | 29 | $ 0.10 | 1068316 | |
| 7/8/2005 | Copy Center, D | In-House Reproduction | $ 666.30 | 6,663 | $ 0.10 | 1068316 | |
| 7/8/2005 | Copy Center, D | In-House Reproduction | $ 2.20 | 22 | $ 0.10 | 1068316 | |
| 7/8/2005 | Copy Center, D | In-House Reproduction | $ 19.60 | 196 | $ 0.10 | 1068316 | |
| 7/8/2005 | Copy Center, D | In-House Reproduction | $ 293.10 | 2,931 | $ 0.10 | 1068316 | |
| 7/12/2005 | Copy Center, D | In-House Reproduction | $ 5.10 | 51 | $ 0.10 | 1068316 | |
| 7/12/2005 | Copy Center, D | In-House Reproduction | $ 0.60 | 6 | $ 0.10 | 1068316 | |
| 7/12/2005 | Copy Center, D | In-House Reproduction | $ 1,075.00 | 10,750 | $ 0.10 | 1068316 | |
| 7/15/2005 | Copy Center, D | In-House Reproduction | $ 90.40 | 904 | $ 0.10 | 1068316 | |
| 7/15/2005 | Copy Center, D | In-House Reproduction | $ 2.40 | 24 | $ 0.10 | 1068316 | |
| 7/15/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1068316 | |
| 7/19/2005 | Copy Center, D | In-House Reproduction | $ 20.00 | 200 | $ 0.10 | 1068316 | |
| 7/19/2005 | Copy Center, D | In-House Reproduction | $ 1.50 | 15 | $ 0.10 | 1068316 | |
| 7/19/2005 | Copy Center, D | In-House Reproduction | $ 1.70 | 17 | $ 0.10 | 1068316 | |
| 7/19/2005 | Copy Center, D | In-House Reproduction | $ 1.20 | 12 | $ 0.10 | 1068316 | |
| 7/19/2005 | Copy Center, D | In-House Reproduction | $ 3.60 | 36 | $ 0.10 | 1068316 | |
| 7/19/2005 | Copy Center, D | In-House Reproduction | $ 195.90 | 1,959 | $ 0.10 | 1068316 | |
| 7/22/2005 | Copy Center, D | In-House Reproduction | $ 10.20 | 102 | $ 0.10 | 1068316 | |
| 7/22/2005 | Copy Center, D | In-House Reproduction | $ 3.50 | 35 | $ 0.10 | 1068316 | |
| 7/22/2005 | Copy Center, D | In-House Reproduction | $ 50.20 | 502 | $ 0.10 | 1068316 | |
| 7/26/2005 | Copy Center, D | In-House Reproduction | $ 93.40 | 934 | $ 0.10 | 1068316 | |
| 7/26/2005 | Copy Center, D | In-House Reproduction | $ 6.70 | 67 | $ 0.10 | 1068316 | |
| 7/26/2005 | Copy Center, D | In-House Reproduction | $ 2.90 | 29 | $ 0.10 | 1068316 | |
| 7/29/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1068316 | |
| 7/29/2005 | Copy Center, D | In-House Reproduction | $ 1.50 | 15 | $ 0.10 | 1068316 | |
| 7/29/2005 | Copy Center, D | In-House Reproduction | $ 65.10 | 651 | $ 0.10 | 1068316 | |
| 7/29/2005 | Copy Center, D | In-House Reproduction | $ 21.90 | 219 | $ 0.10 | 1068316 | |
| 8/2/2005 | Copy Center, D | In-House Reproduction | $ 86.50 | 865 | $ 0.10 | 1073264 | |
| 8/2/2005 | Copy Center, D | In-House Reproduction | $ 10.00 | 100 | $ 0.10 | 1073264 | |
| 8/2/2005 | Copy Center, D | In-House Reproduction | $ 51.20 | 512 | $ 0.10 | 1073264 | |
| 8/5/2005 | Copy Center, D | In-House Reproduction | $ 5.40 | 54 | $ 0.10 | 1073264 | |
| 8/5/2005 | Copy Center, D | In-House Reproduction | $ 0.20 | 2 | $ 0.10 | 1073264 | |
| 8/5/2005 | Copy Center, D | In-House Reproduction | $ 4.50 | 45 | $ 0.10 | 1073264 | |
| 8/5/2005 | Copy Center, D | In-House Reproduction | $ 1.90 | 19 | $ 0.10 | 1073264 | |
| 8/5/2005 | Copy Center, D | In-House Reproduction | $ 77.10 | 771 | $ 0.10 | 1073264 | |
| 8/9/2005 | Copy Center, D | In-House Reproduction | $ 40.00 | 400 | $ 0.10 | 1073264 | |
| 8/9/2005 | Copy Center, D | In-House Reproduction | $ 329.90 | 3,299 | $ 0.10 | 1073264 | |
| 8/9/2005 | Copy Center, D | In-House Reproduction | $ 7.80 | 78 | $ 0.10 | 1073264 | |
| 8/9/2005 | Copy Center, D | In-House Reproduction | $ 28.40 | 284 | $ 0.10 | 1073264 | |
| 8/9/2005 | Copy Center, D | In-House Reproduction | $ 825.00 | 8,250 | $ 0.10 | 1073264 | |
| 8/9/2005 | Copy Center, D | In-House Reproduction | $ 2.00 | 20 | $ 0.10 | 1073264 | |
| 8/12/2005 | Copy Center, D | In-House Reproduction | $ 71.30 | 713 | $ 0.10 | 1073264 | |
| 8/12/2005 | Copy Center, D | In-House Reproduction | $ 42.50 | 425 | $ 0.10 | 1073264 | |
| 8/12/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1073264 | |
| 8/12/2005 | Copy Center, D | In-House Reproduction | $ 8.90 | 89 | $ 0.10 | 1073264 | |
| 8/12/2005 | Copy Center, D | In-House Reproduction | $ 163.40 | 1,634 | $ 0.10 | 1073264 | |
| 8/15/2005 | Copy Center, D | In-House Reproduction | $ 32.30 | 323 | $ 0.10 | 1073264 | |
| 8/16/2005 | Copy Center, D | In-House Reproduction | $ 15.40 | 154 | $ 0.10 | 1073264 | |
| 8/16/2005 | Copy Center, D | In-House Reproduction | $ 3.60 | 36 | $ 0.10 | 1073264 | |
| 8/16/2005 | Copy Center, D | In-House Reproduction | $ 160.40 | 1,604 | $ 0.10 | 1073264 | |
| 8/19/2005 | Copy Center, D | In-House Reproduction | $ 33.80 | 338 | $ 0.10 | 1073264 | |
| 8/19/2005 | Copy Center, D | In-House Reproduction | $ 5.60 | 56 | $ 0.10 | 1073264 | |
| 8/19/2005 | Copy Center, D | In-House Reproduction | $ 5.40 | 54 | $ 0.10 | 1073264 | |
| 8/23/2005 | Copy Center, D | In-House Reproduction | $ 2.00 | 20 | $ 0.10 | 1073264 | |
| 8/23/2005 | Copy Center, D | In-House Reproduction | $ 2.20 | 22 | $ 0.10 | 1073264 | |
| 8/23/2005 | Copy Center, D | In-House Reproduction | $ 175.00 | 1,750 | $ 0.10 | 1073264 | |
| 8/23/2005 | Copy Center, D | In-House Reproduction | $ 59.50 | 595 | $ 0.10 | 1073264 | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**Second Interim Response**
**Exhibit N-5**

| TRAN DATE | NAME | DISBURSEMENT TYPE | BILLED AMOUNT | QUANTITY | PER PAGE CHARGE | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|---|---|---|
| 8/23/2005 | Copy Center, D | In-House Reproduction | $ 1.20 | 12 | $ 0.10 | 1073264 | |
| 8/23/2005 | Copy Center, D | In-House Reproduction | $ 2.10 | 21 | $ 0.10 | 1073264 | |
| 8/23/2005 | Copy Center, D | In-House Reproduction | $ 43.80 | 438 | $ 0.10 | 1073264 | |
| 8/23/2005 | Copy Center, D | In-House Reproduction | $ 315.70 | 3,157 | $ 0.10 | 1073264 | |
| 8/26/2005 | Copy Center, D | In-House Reproduction | $ 1.00 | 10 | $ 0.10 | 1073264 | |
| 8/26/2005 | Copy Center, D | In-House Reproduction | $ 1.30 | 13 | $ 0.10 | 1073264 | |
| 8/26/2005 | Copy Center, D | In-House Reproduction | $ 15.80 | 158 | $ 0.10 | 1073264 | |
| 8/26/2005 | Copy Center, D | In-House Reproduction | $ 8.60 | 86 | $ 0.10 | 1073264 | |
| 8/30/2005 | Copy Center, D | In-House Reproduction | $ 3.00 | 30 | $ 0.10 | 1073264 | |
| 9/2/2005 | Copy Center, D | In-House Reproduction | $ 12.90 | 129 | $ 0.10 | 1076965 | |
| 9/2/2005 | Copy Center, D | In-House Reproduction | $ 0.80 | 8 | $ 0.10 | 1076965 | |
| 9/2/2005 | Copy Center, D | In-House Reproduction | $ 11.40 | 114 | $ 0.10 | 1076965 | |
| 9/2/2005 | Copy Center, D | In-House Reproduction | $ 3.00 | 30 | $ 0.10 | 1076965 | |
| 9/2/2005 | Copy Center, D | In-House Reproduction | $ 11.70 | 117 | $ 0.10 | 1076965 | |
| 9/9/2005 | Copy Center, D | In-House Reproduction | $ 0.20 | 2 | $ 0.10 | 1076965 | |
| 9/9/2005 | Copy Center, D | In-House Reproduction | $ 1.60 | 16 | $ 0.10 | 1076965 | |
| 9/13/2005 | Copy Center, D | In-House Reproduction | $ 16.20 | 162 | $ 0.10 | 1076965 | |
| 9/13/2005 | Copy Center, D | In-House Reproduction | $ 0.60 | 6 | $ 0.10 | 1076965 | |
| 9/13/2005 | Copy Center, D | In-House Reproduction | $ 60.40 | 604 | $ 0.10 | 1076965 | |
| 9/16/2005 | Copy Center, D | In-House Reproduction | $ 162.50 | 1,625 | $ 0.10 | 1076965 | |
| 9/16/2005 | Copy Center, D | In-House Reproduction | $ 2.00 | 20 | $ 0.10 | 1076965 | |
| 9/16/2005 | Copy Center, D | In-House Reproduction | $ 11.60 | 116 | $ 0.10 | 1076965 | |
| 9/16/2005 | Copy Center, D | In-House Reproduction | $ 318.80 | 3,188 | $ 0.10 | 1076965 | |
| 9/20/2005 | Copy Center, D | In-House Reproduction | $ 0.80 | 8 | $ 0.10 | 1076965 | |
| 9/20/2005 | Copy Center, D | In-House Reproduction | $ 1.20 | 12 | $ 0.10 | 1076965 | |
| 9/20/2005 | Copy Center, D | In-House Reproduction | $ 0.30 | 3 | $ 0.10 | 1076965 | |
| 9/20/2005 | Copy Center, D | In-House Reproduction | $ 49.30 | 493 | $ 0.10 | 1076965 | |
| 9/23/2005 | Copy Center, D | In-House Reproduction | $ 1.40 | 14 | $ 0.10 | 1076965 | |
| 9/23/2005 | Copy Center, D | In-House Reproduction | $ 9.70 | 97 | $ 0.10 | 1076965 | |
| 9/23/2005 | Copy Center, D | In-House Reproduction | $ 19.90 | 199 | $ 0.10 | 1076965 | |
| 9/23/2005 | Copy Center, D | In-House Reproduction | $ 128.20 | 1,282 | $ 0.10 | 1076965 | |
| 9/23/2005 | Copy Center, D | In-House Reproduction | $ 14.00 | 140 | $ 0.10 | 1076965 | |
| 9/23/2005 | Copy Center, D | In-House Reproduction | $ 8.00 | 80 | $ 0.10 | 1076965 | |
| 9/27/2005 | Copy Center, D | In-House Reproduction | $ 0.90 | 9 | $ 0.10 | 1076965 | |
| 9/27/2005 | Copy Center, D | In-House Reproduction | $ 6.10 | 61 | $ 0.10 | 1076965 | |
| 9/27/2005 | Copy Center, D | In-House Reproduction | $ 383.10 | 3,831 | $ 0.10 | 1076965 | |
| 9/27/2005 | Copy Center, D | In-House Reproduction | $ 354.50 | 3,545 | $ 0.10 | 1076965 | |
| 9/27/2005 | Copy Center, D | In-House Reproduction | $ 8.80 | 88 | $ 0.10 | 1076965 | |
| 9/30/2005 | Copy Center, D | In-House Reproduction | $ 4.20 | 42 | $ 0.10 | 1076965 | |
| 9/30/2005 | Copy Center, D | In-House Reproduction | $ 1.60 | 16 | $ 0.10 | 1076965 | |
| 9/30/2005 | Copy Center, D | In-House Reproduction | $ 15.00 | 150 | $ 0.10 | 1076965 | |
| 9/30/2005 | Copy Center, D | In-House Reproduction | $ 2.00 | 20 | $ 0.10 | 1076965 | |
| **TOTAL IN-HOUSE REPRODUCTION** | | | **$ 16,110.70** | **161,107** | | | |
| 5/11/2005 | Roman JJ | Non-standard & Outside Repr | $ 35.50 | | | 1068316 | VENDOR: ROMAN JJ INVOICE#: ER051305 DATE: 5/13/2005 |
| 7/18/2005 | Corporate Restru | Non-standard & Outside Repr | $ 526.54 | | | 1068316 | VENDOR: IKON OFFICE SOLUTIONS; INVOICE#: WIL05070154; DATE: 7/18/2005 - OUTSIDE REPRODUCTION |
| 5/17/2005 | Litigation-Genera | Scanning Services | $ 7,996.58 | | | 1069609 | VENDOR: WORLD COPY INC.; INVOICE#: 39016; DATE: 5/17/2005 |
| **TOTAL OUTSIDE REPRODUCTION & BINDING** | | | **$ 8,558.62** | | | | |
| 7/8/2005 | Copy Center, D | Reproduction - Color | $ 527.50 | 1,055 | $ 0.50 | 1068316 | |
| 7/18/2005 | Copy Center, D | Reproduction - Color | $ 1.00 | 2 | $ 0.50 | 1068316 | |
| 7/22/2005 | Copy Center, D | Reproduction - Color | $ 3.00 | 6 | $ 0.50 | 1068316 | |
| **TOTAL REPRODUCTION - COLOR** | | | **$ 531.50** | **1,063** | | | |
| 5/17/2005 | Scott-Bonnick S | Internal Scanning | $ 140.25 | 1,275 | $ 0.11 | 1069609 | |
| 5/6/2005 | Paternostro M | OCR Scanning | $ 5.65 | 113 | $ 0.05 | 1069609 | |
| 6/28/2005 | Copy Center, D | Printing out of ImageBase | $ 144.00 | 1,800 | $ 0.08 | 1064633 | |
| 6/30/2005 | Copy Center, D | Printing out of ImageBase | $ 96.00 | 1,200 | $ 0.08 | 1064633 | |
| 8/5/2005 | Copy Center, D | Printing out of ImageBase | $ 612.00 | 7,650 | $ 0.08 | 1073264 | |
| 9/24/2005 | Copy Center, D | Printing out of ImageBase | $ 13.12 | 164 | $ 0.08 | 1076965 | |
| **TOTAL ELECTRONIC DOCUMENT MANAGEMENT** | | | **$ 1,011.02** | | | | |
| **GRAND TOTAL** | | | **$ 26,211.84** | | | | |

**Skadden, Arps, Slate, Meagher Flom LLP**
**Second Interim Response**
**Exhibit P**

| TRAN DATE | NAME | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|---|
| 6/1/2005 | Baker DJ | $ 65.07 | 1064633 | ROOM:38-308 11:00 AM - 11:00 PM; AM/PM DELIVERIES FOR 2 ATTENDEES $4.07; BUFFET LUNCH FOR 2 ATTENDEES $60.99; TOTAL:$65.07 |
| 6/7/2005 | Baker DJ | $ 41.88 | 1064633 | ROOM:38-306 08:00 AM - 01:00 PM; AM/PM DELIVERIES FOR 8 ATTENDEES $25.58; AM/PM DELIVERIES FOR 8 ATTENDEES $16.30;  TOTAL:$41.88 |
| 6/7/2005 | Baker DJ | $ 160.88 | 1064633 | ROOM:38-210 08:00 AM - 04:00 PM; AM/PM DELIVERIES FOR 5 ATTENDEES $8.40; BUFFET LUNCH FOR 5 ATTENDEES $152.48; TOTAL:$160.88 |
| 6/22/2005 | Feld SR | $ 31.97 | 1064633 | ROOM:38-132 09:30 AM - 02:00 PM; AM/PM DELIVERIES FOR 10 ATTENDEES $31.97;  TOTAL:$31.97 |
| 6/22/2005 | Feld SR | $ 38.36 | 1064633 | ROOM:38-220 06:00 AM - 02:00 PM; AM/PM DELIVERIES FOR 12 ATTENDEES $38.36;  TOTAL:$38.36 |
| 6/29/2005 | Matz TJ | $ 331.19 | 1064633 | ROOM:38-210 12:00 PM - 11:00 PM; BUFFET LUNCH FOR 10 ATTENDEES $304.97; AM/PM DELIVERIES FOR 10 ATTENDEES $26.23;  TOTAL:$331.19 |
| 7/11/2005 | Henry S | $ 457.45 | 1068316 | ROOM:38-414 06:00 AM - 11:00 PM; BUFFET LUNCH FOR 15 ATTENDEES $457.45;  TOTAL:$457.45 |
| 7/19/2005 | Baker DJ | $ 38.36 | 1068316 | ROOM:38-210 09:00 AM - 07:00 PM; AM/PM DELIVERIES FOR 12 ATTENDEES $38.36;  TOTAL:$38.36 |
| 7/19/2005 | Baker DJ | $ 847.46 | 1068316 | ROOM:38-300 09:00 AM - 07:00 PM; BUFFET LUNCH FOR 25 ATTENDEES $762.42; AM/PM DELIVERIES FOR 25 ATTENDEES $50.94; AM/PM DELIVERIES FOR 25 ATTENDEES $21.68; AM/PM DELIVERIES FOR 25 ATTENDEES $12.43;  TOTAL:$847.46 |
| 7/19/2005 | Baker DJ | $ 6.11 | 1068316 | ROOM:38-426C 09:00 AM - 06:00 PM; AM/PM DELIVERIES FOR 3 ATTENDEES $6.11;  TOTAL:$6.11 |
| 7/18/2005 | Baker DJ | $ 29.26 | 1068316 | ROOM:OFFSITE NO SECTION 06:00 AM - 11:00 PM; SPECIAL FUNCTIONS FOR 2 ATTENDEES $29.26;  TOTAL:$29.26 |
| 8/9/2005 | Henry S | $ 6.11 | 1073264 | ROOM:38-306 06:00 AM - 03:00 PM; AM/PM DELIVERIES FOR 3 ATTENDEES $6.11;  TOTAL:$6.11 |
| 8/9/2005 | Henry S | $ 47.96 | 1073264 | ROOM:38-226 06:00 AM - 12:00 PM; AM/PM DELIVERIES FOR 15 ATTENDEES $47.96;  TOTAL:$47.96 |
| 8/9/2005 | Henry S | $ 505.41 | 1073264 | ROOM:38-132 11:00 AM - 11:00 PM; AM/PM DELIVERIES FOR 15 ATTENDEES $47.96; BUFFET LUNCH FOR 15 ATTENDEES $457.45;  TOTAL:$505.41 |
| 8/9/2005 | Henry S | $ 966.43 | 1073264 | ROOM:38-100/102 06:00 AM - 01:00 PM; AM/PM DELIVERIES FOR 25 ATTENDEES $79.93; AM/PM DELIVERIES FOR 25 ATTENDEES $65.57; SPECIAL FUNCTIONS FOR 25 ATTENDEES $58.52; BUFFET LUNCH FOR 25 ATTENDEES $762.42;  TOTAL:$966.43 |
| 8/12/2005 | Baker DJ | $ 152.48 | 1073264 | ROOM:38-210 12:00 PM - 02:00 PM; BUFFET LUNCH FOR 5 ATTENDEES $152.48;  TOTAL:$152.48 |
| 8/15/2005 | Baker DJ | $ 8.23 | 1073264 | ROOM:38-308 09:00 AM - 12:00 PM; AM/PM DELIVERIES FOR 4 ATTENDEES $8.23;  TOTAL:$8.23 |
| 9/21/2005 | Baker DJ | $ 152.48 | 1076965 | ROOM:38-202C 01:00 PM - 02:30 PM; BUFFET LUNCH FOR 5 ATTENDEES $152.48;  TOTAL:$152.48 |
| 9/16/2005 | Baker DJ | $ 330.54 | 1076965 | ROOM:38-414 09:00 AM - 05:00 PM; AM/PM DELIVERIES FOR 8 ATTENDEES $25.58; BUFFET LUNCH FOR 10 ATTENDEES $304.97;  TOTAL:$330.54 |
| **TOTAL** | | **$ 4,217.63** | | |

**Skadden, Arps, Slate, Meagher & Flom LLP**
**Second Interim Response**
**Exhibit R**

| TRAN DATE | BILLED AMOUNT | BILL NUMBER | NARRATIVE |
|---|---|---|---|
| 7/26/2005 | $ 2,209.60 | 1068316 | VENDOR: MARRIOTT INTERNATIONAL; INVOICE#: 7/26/05; DATE: 7/26/2005 - THIS IS THE FINAL BILL FOR THE WINN-DIXIE AUCTION MEETING (HOSTED BY JAN BAKER) AT THE MARRIOTT HOTEL ON 7/18/05 AND 7/19/0, INCLUDING CATERING SERVICES, AUDIO VISUAL, ROOM RENTAL, ETC.... |
| 7/26/2005 | $ 7,000.00 | 1068316 | VENDOR: MARRIOTT INTERNATIONAL; INVOICE#: 7/26/05; DATE: 7/26/2005 - THIS IS THE FINAL BILL FOR THE WINN-DIXIE AUCTION MEETING (HOSTED BY JAN BAKER) AT THE MARRIOTT HOTEL ON 7/18/05 AND 7/19/05, INCLUDING CATERING SERVICES, AUDIO VISUAL, ROOM RENTAL, ETC.... |
| TOTAL | $ 9,209.60 | | |

# EXHIBIT S

**Skadden**

**Name: Sally McDonald Henry ID: 301  Position: Partner**

**Off/Dept: New York/Corporate Restructuring**

**Expense Report #: 162954**

**Travel, Meals & Other Business Expenses**

Status: Final 09/29/2005

Expense Report Week Ending: 09/23/2005

**Currency of Report: U.S. Dollar**

Prepared By: Maria Cipriano

| Date | Client | Master | Disbursement | Reimburs. | Business Purpose/Details | Hrs/Day |
|------|--------|--------|--------------|-----------|--------------------------|---------|
| 05/09/05 | 091970 Winn-Dixie-Winn-Dixi | 28 Nonworking Travel | 012.1 Miscellaneous Expens | 235.13 $335.70 | Business Purpose: Car Rental in Jacksonville Florida to go to Winn-Dixie Headquarters | 8.70 |

10/5/05

**Alamo**

RA O 310813444

SALLY KENRY

NEW YORK NY 10025

RATE RULES AND QUALIFICATIONS
VOICE RES DAILY

RENTAL LOCATION
JACKSONVILLE INTL ARPT
JACKSONVILLE INTL ARPT
P.O BOX 18384
JACKSONVILLE FL 32229
904 741 3110

RENTAL DATE
09-MAY-2005
RENTAL TIME
01:45 PM

RETURN LOCATION
JACKSONVILLE INTL ARPT
JACKSONVILLE INTL ARPT
P.O BOX 18384
JACKSONVILLE FL 32229
904 741 3110

RETURN DATE
13-MAY-2005
RETURN TIME
01:45 PM

VEHICLE INFORMATION
RESERVED   CCAR Compact 2/4 Door Car
DRIVEN     CCAR Compact 2/4 Door Car
CHARGED    CCAR Compact 2/4 Door Car
MAKE       CHEVROLET
MODEL      CAVALIER
COLOR      SILVER       ODOMETER 16789
W9DILF     FL VEHICLE # 57207580

| CHARGES | UNIT | PRICE/UNIT | | CURR | CHARGE | PAYMENTS | |
|---------|------|-----------|---|------|--------|----------|---|
| RENTER'S RESPONSIBILITY | | | | | | MASTERCARD 1960  Auth 0 | 395.30 |
| TIME & DISTANCE | WEEK | 301.76 | | | 0.00 | | |
| TIME & DISTANCE | Day | 43.11 x | 4 | | 172.44 | | |
| OVERSTAY FEES | Day | 10.99 | | | 0.00 | | |
| TIME & DISTANCE | Hour | 14.37 | | | 0.00 | | |
| UNLIMITED MILES/KM-TIME & | M/KM | 0.00 | | | 0.00 | | |
| CON | Day | 20.99 x | 4 | | 83.96 | | |
| FUEL SERVICE OPTION | Rental | 33.56 x | 1 | | 33.56 | | |
| CONCESSION RECOUP FEE 11.11 PCT @ 11.11% | | | | | 19.14 | | |
| FL SCHNG/TIRE BAT FEE 2.05 USD/DY | | | | | 8.20 | | |
| AIRPORT SECURITY FEE 2.00USD/RNTL | | | | | 2.00 | | |
| LICENSE RECOUPMENT FEE .49 USD/DY | | | | | 1.96 | | |
| SALES TAX 7.00% | | | | | 14.12 | | |

TOTAL CHARGES                                                    395.30

I ACCEPT OPTIONAL COLLISION DAMAGE WAIVER AT $20.99 PER DAY. _____

I DECLINE OPTIONAL ALAMO PROTECTION PLUS (APP) AS OF 09-MAY-2005 01:45 PM _____

I DECLINE OPTIONAL EXTENDED PROTECTION (EP)
I DECLINE OPTIONAL CAREFREE PERSONAL PROTECTION COVERAGE (PERSPRO)

'OVERSTAY' IS THE RATE PER DAY OVERSTAY FEE.& IF I VIOLATE THE RENTAL AGREEMENT BY FAILING TO RETURN THE CAR AS STATED, I UNDERSTAND THAT THE RENTAL RATE MAY INCREASE AND I WILL BE ASSESSED AN OVERSTAY FEE OF 10.99 PER DAY IN ADDITION TO MY OTHER CHARGES.&

RA O 310813444
PAGE    1 OF 2

## Alamo

RA © 310813444
SALLY HENRY
NEW YORK NY 10025

I CHOOSE OPTIONAL FUEL PURCHASE AT START OF RENTAL, AT 3.39 PER GALLON (NO REFUND FOR UNUSED FUEL). THE TOTAL FUEL CHARGE
REFLECTED HERE IS AN ESTIMATE BASED ON THE MAXIMUM TANK SIZE FOR THE CAR CLASS CHARGED. I UNDERSTAND MY TOTAL FUEL CHARGE MAY
CHANGE BASED ON THE ACTUAL CAR I DRIVE._____

THE VALID AND COLLECTIBLE LIABILITY INSURANCE AND PERSONAL INJURY PROTECTION INSURANCE OF ANY AUTHORIZED RENTAL OR LEASING
DRIVER IS PRIMARY FOR THE LIMITS OF LIABILITY AND PERSONAL INJURY PROTECTION COVERAGE REQUIRED BY SS. 324.021(7) AND 627.736,
FLORIDA STATUTES.

O ADDITIONAL DRIVERS ARE AUTHORIZED TO DRIVE THE VEHICLE WITH
NE EXCEPTION OF THE DRIVERS LISTED BELOW.

I AGREE TO ALL TERMS ON THE FRONT AND BACK OF THIS AGREEMENT. I
ACKNOWLEDGE RECEIPT OF AND AGREE TO THE TERMS OF ALAMO'S RENTAL
AGREEMENT JACKET. I UNDERSTAND THAT IF I DO NOT COMPLY WITH THE
TERMS OF ANY APPLICABLE COMMERCIAL ACCOUNT AGREEMENT AND THE
TERMS OF THIS RENTAL AGREEMENT AND THE JACKET, ALL LIABILITY AND
UNINSURED/UNDERINSURED MOTORIST BENEFITS, IF ANY, ARE WITHDRAWN
AND WILL NOT BE PROVIDED.
RENTER : _____

Thank you for renting from Alamo Rent A Car in
Jacksonville, FL

RA © 310813444
PAGE    2 OF 2

**Skadden**

Travel, Meals & Other Business Expenses

Employee: Adam Ravin ID: 19782  Position: Associate

Off/Dept: New York/Corporate Restructuring

Expense Report #: 130683

Status: Final 05/20/2005

Expense Report Week Ending: 05/13/2005

Prepared By: Ingrid Karg-Ross

Currency of Report: U.S. Dollar

| Date | Client | Matter | Disbursement | Reimburse | Business Purpose/Details | Hrs/Day |
|------|--------|--------|--------------|-----------|--------------------------|---------|
| 05/11/05 | 091970, Winn-Dixie-Winn-Dixi | 40, Disbursements | 0162, Miscellaneous Expens | $25.00 | Business Purpose: Hotel room for Michael Chelbovec (employee of Winn-Dixie, (BTI travel could not obtain a room for this night) reservation cancellation. Client was able to obtain a better room for himself. | 10.00 |

May 20, 2005 4:02 PM P- 2

**Ingrid Karg-Ross - WWTE/JetBlue cancellation confirmed for RICHARD BEINE - New York, NY, May 16, 2005 - (Itin # 1375560695)**

| | |
|---|---|
| **From:** | travel@jetblue.wwte1.com |
| **To:** | <aravin@skadden.com> |
| **Date:** | 5/12/2005 10:27 AM |
| **Subject:** | WWTE/JetBlue cancellation confirmed for RICHARD BEINE - New York, NY, May 16, 2005 - (Itin # 1375560695) |

# Cancellation confirmed

Your reservation has been successfully canceled.

**Itinerary number:** 1375560695

## ☐1☐ Here is your cancellation information

| **Hotel canceled** |
|---|
| Your reservation at Paramount, New York, NY 10036 from 16-May-05 to 17-May-05 has been canceled. |

**WWTE/JetBlue booking ID:** 26075381

# Refund details

**Lodging**
Amount charged:        $367.80
Cancellation penalty:    $25.00

**Total refund:**        $342.80    (Please allow 7 days to process credit due.)

## ☐2☐ Additional information

- If you have any questions, please fill out our Itinerary Assistance Form to send us e-mail, or call 1-888-724-7927.

**Thank you for choosing WWTE/JetBlue for your travel reservations. We look forward to serving you again!**

**APPENDIX 1**

<u>M E M O R A N D U M</u>

TO:       Stuart, Maue, Mitchell & James, Ltd.

FROM:   Skadden, Arps, Slate, Meagher & Flom LLP

          RE:    Winn-Dixie Bankruptcy Cases and Compensation for
                 Preparation, Filing and Defending Retention and Fee
                 <u>Applications and Bankruptcy Rule 2014 Investigations</u>

## <u>Questions Presented</u>

1.  Can a bankruptcy court award a debtor's attorney its reasonable fees for preparing, filing and defending its fee application?

2.  Can a bankruptcy court award a debtor's attorney its reasonable fees for preparing, filing, performing ongoing investigations associated with and defending its retention application?

## <u>Brief Answers</u>

1.  Yes.  The Bankruptcy Code authorizes bankruptcy courts to award a debtor's attorney its reasonable fees for preparing, filing and defending its fee application.

2.  Yes.  The Bankruptcy Code and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorize courts to award a debtor's attorney its reasonable fees for preparing, filing, performing ongoing investigations associated with and defending its retention application.

## <u>Compensation for Preparing, Filing, and Defending Fee Applications</u>

Bankruptcy Code section 330(a)(6) specifically provides that a court may award compensation to a debtor's properly retained attorney for the preparation of a fee application after notice and a hearing.  The court should award compensation based on the level and skill reasonably required to complete the fee application. Section 330(a)(6) codified an extensive body of case law holding that it was inequitable to require professionals to file fee applications without awarding the professional reasonable compensation for the task.  <u>In re Nucorp Energy, Inc.</u>, 764 F.2d 655, 659 (9th Cir. 1985) (allowing compensation for time spent preparing fee applications because it is "fundamentally inequitable to impose substantial

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

requirements on bankruptcy counsel as prerequisites to their obtaining compensation while simultaneously denying compensation for the efforts necessary to comply with those requirements"); In re Braswell Motor Freight Lines, 630 F.2d 348, 351 (5th Cir. 1980) ("It was an abuse of discretion to deny a reasonable fee for preparation of the fee application.").

Pursuant to section 330(a)(3)(C), a court may compensate attorneys for necessary case administration services. Arguably, by enacting the more specific section 330(a)(6), Congress recognized that fee applications by their very nature were necessary to the administration of the case and removed fee applications from the section 330(a)(3) rubric. Nevertheless, it is clear from case law that fee applications are necessary to case administration and the court may award reasonable compensation for preparation of the fee application.

In addition, due to the public nature of bankruptcy fee applications, attorneys must carefully review time records to ensure that confidential information and other sensitive information is not publicized. Therefore, it takes a significant amount of time and skill to prepare a fee application and Skadden, Arps, Slate, Meagher and Flom LLP ("Skadden, Arps") prepares its fee applications with a great deal of professionalism.

As indicated above, the bankruptcy court may award compensation for fee applications only after notice and a hearing. Bankruptcy Code section 102(1) defines "after notice and a hearing" to include contested matters before the bankruptcy court. Since Congress contemplated awarding reasonable compensation for fee applications only after parties in interest and the United States Trustee receive notice of the application and have an opportunity to object, it is only logical to conclude that professionals can receive compensation for filing and mandated defenses of fee applications.

Since bankruptcy courts may award reasonable compensation for the preparation of a fee application only after notice and a hearing, Skadden Arps may receive compensation for preparing, filing and defending its fee applications.

2

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

## **Compensation for Preparing, Filing and Defending Retention Applications**

Under Bankruptcy Code section 327, a court may authorize a debtor to employ an attorney so long as the attorney is "disinterested" and does not "hold or represent an interest adverse to the estate." Furthermore, under Bankruptcy Rule 2014, an attorney's application for employment under section 327 must set forth and explain all of the attorney's "previous connections with a creditor, any party in interest, . . . their accountants" and any person employed by the United States trustee. Because parties in interest and creditors change throughout the course of a case, attorneys must periodically review their records to ensure no improper relationship inadvertently arises. Finally, after internally verifying that the Bankruptcy Code permits their retention, attorneys must prepare a report of any relationships and file these reports with the bankruptcy court. Undoubtedly, these section 327 and Bankruptcy Rule 2014 investigations are more exhaustive and time consuming than any conflicts check that ethical rules require outside of bankruptcy. [1]

As indicated above, Bankruptcy Code section 330(a)(3) states that a court may award professionals compensation for necessary case administration services. The retention of professionals, such as attorneys, is an essential and necessary part of case administration. Moreover, the Office of the United States Trustee's fee guidelines for fee applications indicate that professionals may receive compensation for preparing retention applications. See 11 U.S.C. § 330 (28 C.F.R. Pt. 58, App. A).

Similarly, because Bankruptcy Rule 2014 requires attorneys to review and disclose initially and periodically their relationships with creditors and other parties to remain employed by a debtor, compensation for these investigations is also appropriate. See In re Sterling Chemicals Holdings, Inc., 293 B.R. 701, 704 (Bankr. S.D. Tex. 2003) (court held that it will "allow compensation for all reasonable and necessary efforts to comply with the disclosure requirements of Fed. R. Bankr. P. 2014(a)").

In addition, failure to comply strictly with Bankruptcy Rule 2014 may result in severe consequences to the estate, such as disqualification of the professional. Disqualification could have a sever impact on a debtor because of the delay and disruption of having to obtain and integrate new professionals. Therefore, it is in the estate's best interest for its professionals to review carefully their records to ensure that any proposed and continued employment is appropriate under the Bankruptcy Code and Bankruptcy Rules.

---

[1]  See, e.g., American Bar Association Model Rules of Professional Conduct, Model Rule 1.7(a) (an attorney "shall not represent a client if the representation of that client will be directly adverse to another client unless the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and each client consents after consultation") (internal subsection references omitted).

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Finally, as noted above, bankruptcy courts may award compensation for professionals only after notice and a hearing.  Because Congress requires professionals to provide notice and a hearing before receiving compensation for its retention application, it logically follows that professionals should receive reasonable compensation for filing and defending their retention application.

**Conclusion**

In conclusion, the Bankruptcy Code and Bankruptcy Rules required Skadden, Arps to prepare a retention application and to perform a diligent and time consuming search of its records for any connections it may have to the debtors, creditors and other parties in interest.  Furthermore, Skadden, Arps had to update these searches during the cases so that it could continue to provide necessary services to the estate.  Therefore, a bankruptcy court should award Skadden, Arps its reasonable fees for preparing, filing and defending its retention application and Bankruptcy Rule 2014 investigation, as applicable.