DGM-SC (12/03)

## LEASE

**THIS LEASE**, entered into the 18th day of November 2005, by and between Daniel G. Kamin Clarksville Crossing, LLC, a limited liability company, Lessor, and Dolgencorp, Inc., a Kentucky corporation, with its principal office and place of business in Goodlettsville, Tennessee, Lessee.

## WITNESSETH

1. **PREMISES.** Lessor represents and warrants that it owns lawful fee simple title to the shopping center premises in which the Demised Premises are located and which are more particularly described on the legal description attached hereto and made a part hereof as Exhibit "A" (the "Shopping Center"). Lessor does hereby lease to Lessee those certain premises consisting of a storeroom with area outside dimensions of approximately 26,000 square feet (the "Demised Premises"), located in and a part of Clarksville Crossing Shopping Center, which entire Shopping Center is described on Exhibit "A" and is shown on the Plot Plan attached hereto as Exhibit "B" and made a part hereof, with the Demised Premises being cross-hatched thereon together with each and every appurtenance thereto, which Shopping Center is located at _____ NEC US Hwy 58 and Virginia S.R. 15, in the City of Clarksville, County of Mecklenburg, and Commonwealth of Virginia 23927.

2. **TERM.** A. **COMMENCEMENT.** To have and to hold the Demised Premises with the appurtenances, unto Lessee for the term provided hereafter upon the covenants and agreements herein set forth, the term of this Lease shall commence upon: (1) that date one hundred twenty

(120) days after the Lessor has given possession of the Demised Premises to Lessee; or (2) the date on which Lessee shall open the Demised Premises for business to the public, whichever of said date shall first occur, such date being hereinafter referred to as "Commencement Date", subject, however, to the provisions of Paragraph 2-C hereof. Provided it shall not be in default hereunder, Lessee shall be entitled to extend the term of this Lease for four (4) successive periods of five (5) years each, upon the same terms and conditions as herein set forth, except as to term, rent and number of renewals. Lessee may extend this Lease by giving Lessor written notice as provided herein not less than one hundred eighty (180) days prior to the expiration of the original term, or of any renewal thereof. In the event Lessee does not give notice of exercising its right to renew this Lease, all succeeding renewals shall terminate. It is agreed between Lessor and Lessee that the Demised Premises shall be used by Lessee for any legal retail purposes except those which conflict with any exclusive listed on Exhibit "G". Retail purposes shall include but not be limited to the maintenance and operation of a retail store for the sale of general merchandise, including, but not limited to and among other merchandise categories, the unrestricted sale of grocery and food items. The sale of general merchandise and the sale of grocery items shall hereinafter be referred to Lessee's "Primary Use". Lessee represents, warrants and covenants to Lessor that Lessee's Primary Use will not violate any current use exclusives contained in other leases in the Shopping Center of which the Demised Premises is a part and which are attached hereto as Exhibit "G", and Lessee agrees to indemnify the Lessor against any action taken by one of the named tenants on Exhibit "G", if that tenant claims a violation of its exclusive. Lessor represents, warrants and covenants to Lessee that Lessee's Primary Use will not violate any current use exclusives contained in other leases which may not be listed on Exhibit "G" or any future tenant's exclusive in the Shopping Center of which the Demised Premises is a part. In the event that any action, claim or suit is brought by any party (including, without limitation, any other tenant of the Shopping Center) against Lessee alleging that Lessee's operations in the Demised Premises are in violation of any use exclusive or restriction contained in any Shopping Center lease or other instrument not listed on Exhibit "G", Lessor agrees to defend (by counsel reasonably satisfactory to Lessee), indemnify, and hold harmless from any damages, loss or costs (including, without limitation, attorneys' fees and costs) suffered by Lessee thereby, or from the enforcement of said restrictions or exclusive against Lessee. Said indemnification shall be one of first defense and payment, not of reimbursement or surety. In addition, in the event a final

adjudication by a court of competent jurisdiction shall hold that Lessee's operations in the Demised Premises are in violation of any such use restriction or exclusive (including, without limitation, any other tenant's exclusive use restriction), Lessee shall, at its option, have the right to terminate its obligations under this Lease with no further liability thereunder and to vacate the Demised Premises upon thirty (30) days written notice delivered to Lessor.

B. TERM. The initial term of this Lease shall end on the last day of the tenth (10th) consecutive full Lease Year, thereafter, as said term "Lease Year" is defined in Paragraph 2-C hereof, unless sooner terminated as provided or permitted herein. Lessor and Lessee shall enter into a Lease Modification Agreement to establish the Commencement Date and expiration date of this Lease within thirty (30) days of the Commencement Date. It is expressly agreed that such action by Lessee shall not constitute acceptance of such Demised Premises as being completed as required herein.

C. LEASE YEAR DEFINED. The term "Lease Year" as used herein shall mean each twelve (12) full calendar months during the term hereof. The first Lease Year shall begin on the Commencement Date if the Commencement Date shall occur on the first (1st) day of the month; otherwise, then the first Lease Year shall commence on the first day of the first full month next following. The period prior to the Commencement Date shall be a partial month.

3. RENT. The rental during the initial term shall be twelve thousand five hundred and 00/100 ($12,500.00) dollars per calendar month payable in advance on or before the first day of each month without offset or demand, except as otherwise provided herein.

The rental during the first option period shall be thirteen thousand seven hundred fifty and 00/100 ($13,750.00) dollars per calendar month payable in advance on or before the first day of each month without offset or demand, except as otherwise provided herein.

The rental during the second option period shall be fourteen thousand four hundred thirty seven and 50/100 ($14,437.50) dollars per calendar month payable in advance on or before the first day of each month without offset or demand, except as otherwise provided herein.

The rental during the third option period shall be fifteen thousand one hundred fifty nine and 38/100 ($15,159.38) dollars per calendar month payable in advance on or before the first day of each month without offset or demand, except as otherwise provided herein.

The rental during the fourth option period shall be fifteen thousand nine hundred seventeen and 35/100 ($15,917.35) dollars per calendar month payable in advance on or before the first day of each month without offset or demand, except as otherwise provided herein.

The effective and binding date of this Lease shall be the date of the full execution, but that payment of the rent provided in this Lease shall commence on the Commencement Date as defined in Paragraph 2A, above,.

LESSOR REPRESENTS AND WARRANTS SUBJECT TO THE NEXT PARAGRAPH OF THIS PARAGRAPH 3, AND PARAGRAPH 35 BELOW, THAT IT SHALL COMPLETE (A) ALL OF ITS WORK AND RENOVATION OF THE SHOPPING CENTER OR DEMISED PREMISES AS DESCRIBED IN EXHIBIT "C", ON OR BEFORE THE LATER OF:  (a) JANUARY 31, 2006; OR (b) THE DATE LESSEE OPENS FOR BUSINESS AND (B) CONNECT ALL UTILITIES IN THE DEMISED PREMISES WITHIN THIRTY (30) DAYS AFTER FINAL LEASE EXECUTION (the "Lessee Possession Date").  IN THE EVENT LESSOR BREACHES THIS REPRESENTATION AND WARRANTY BY DELIVERING THE DEMISED PREMISES AFTER THE DATES SET FORTH ABOVE, LESSEE SHALL DEDUCT FROM THE RENT THREE HUNDRED ($300.00) DOLLARS PER DAY FOR EACH DAY IT IS DELAYED BEYOND SAID DATES.

ANY ITEM OF LESSOR'S WORK ON EXHIBIT "C" PERTAINING TO THE SURFACE OF THE PARKING LOT, WALKWAYS, OR LANDSCAPING, MAY BE COMPLETED BY LESSOR ON OR BEFORE JUNE 30, 2006 WITHOUT INCURRING ANY PENALTY OR WITHOUT CAUSING LESSOR TO BE IN DEFAULT UNDER THIS LEASE.

4.  SCOPE OF WORK.  See Exhibit "C".  (A) Lessee and Lessor, at their sole cost and expense, shall perform, or cause to be performed, all of the design, permitting, alterations and construction of the improvements to be installed in the Demised Premises as shown on Exhibit "C", in a good, workmanlike and lien-free manner, in accordance with all valid requirements of municipal and other governmental authorities.  Each party shall be responsible for any construction defects arising from their work.  Lessor and Lessee agree to cooperate promptly, if necessary, with any applications for building permits, and any other governmental licenses, approvals and/or permits as may be necessary for the completion of the Scope of Work and to open for business to the public on the Demised Premises.

4

(B) Lessee shall indemnify Lessor against any claim by a contractor, sub-contractor, materialman or other third party on account of or related to any improvement made to the Demised Premises authorized by Lessee.

5. <u>**EXCLUSIVE USE COVENANT**</u>.  (A) Excluding existing tenants, their assigns and sub-tenants and, so long as Lessee or Lessee's assignee or sub-tenant is open and operating as its Primary Use, Lessor covenants and agrees, as long as Lessee is not in default beyond the applicable cure period, not to lease, rent, occupy, or allow to be occupied, any part of the Shopping Center premises for a store whose primary purpose is: (a) a variety or general merchandise store; a dollar or bargain store; a close out or odd lot store; or, any store which sells substantially the same type merchandise as sold by a Dollar General Store, including, but not limited to, a Family Dollar Store, Bill's Dollar Store, Fred's Dollar Tree, Dollar Zone, Bonus Dollar, Maxway, Super Ten, McCory's, McCory's Dollar, Planet Dollar, Big Lots, Odd Lots, Ninety-nine Cents Only Store and Deals; and (b) a grocery store or a food store or food department or for the sale for off-premises consumption of groceries, meats, produce, dairy products, bakery products or any of them; provided, however, that nothing contained in this Lease shall prevent any tenant in the Shopping Center from selling such products as an incidental part of its other and principal business so long as the total number of square feet devoted by such tenant to the display for sale of such products does not exceed five percent (5%) of the total number of square feet of building area leased by such tenant in the Shopping Center (including one-half (½) of the aisle space adjacent to any display area).

If property contiguous to the Shopping Center premises is developed by Lessor for commercial purposes or if the Lessor grants cross access easements with an adjacent Development, the provisions of this exclusive use covenant shall apply to the contiguous property. This covenant shall run with the land.

Lessor acknowledges that in the event of any breach hereof, and Lessor's failure to cure such breach after receipt of a sixty (60) day written notice, Lessee's remedies at law would be inadequate and therefore, and in that event, Lessee, at Lessee's option, shall be entitled to cancel this Lease upon thirty (30) days written notice thereof to Lessor or to relief by injunction, or otherwise, as Lessee may elect in its sole discretion. Lessee's remedies, in any event, shall be cumulative rather than exclusive.

(B) The terms and provisions of Section 5, of this Lease, to the contrary notwithstanding, occupants of the Shopping Center shall not be prohibited from engaging in the operation of: (i) a restaurant offering prepared ready-to-eat food items for consumption either on or off the premises provided that the total square footage of the sales floor does not exceed 2,500; (ii) a sandwich shop type restaurant offering prepared ready-to-eat food items for consumption either on or off the premises, provided that the total square footage of the sales floor does not exceed 2,500; and (iii) a health food store or nutrition center, ice cream parlor or frozen yogurt store, franchise doughnut shop (equivalent to a Dunkin' Donut or Krispy Kreme operation), bagel shop, candy store, or a pizza pickup or delivery outlet, all of which may offer the sale of food items for consumption on or off the premises, provided that the total square footage of the sales floor does not exceed 2,500.

6. **COMMON AREA.**  The entire tract of land on which Lessor has constructed the Shopping Center is shown on the Plot Plan attached hereto as Exhibit "B" and made a part hereof.  Such plot plan designates the location and size of all buildings constructed, store sizes, parking area, which shall be a minimum of 4.0 parking spaces per 1000sf of building area, customer parcel pickup facilities, and Lessee's delivery service areas.  All that portion of the Shopping Center not covered by buildings is to be common area (the "Common Area") for the joint use of all tenants, customers, invities, and employees.  Lessor agrees that it will not erect or construct, or cause to be erected or constructed, a Kiosk or any other structure on the Common Area which would materially adversely impede or interfere with visibility, parking and pedestrian and vehicular passage across the Common Area, nor will it materially adversely alter, reconfigure or relocate the access entrances, driveways, walkways, delivery lanes, parking spaces and curb cuts to adjacent public streets and highways as presently located on the Shopping Center premises without the prior written consent of Lessee which consent shall not be unreasonably be withheld or delayed.  Lessor agrees, at its own expense subject to the common area reimbursement in Section 39, to maintain all Common Areas in good repair, to keep such area clean, to promptly remove snow and ice therefrom, to keep such area lighted during hours of darkness when the Demised Premises are open for business (but Lessor shall not be required to light the Common Area later then 10:00 p.m.), to keep the parking area paved and properly stripped to assist in the orderly parking of cars, to provide any required lawn mowing and landscaping maintenance and to provide adequate security.  Unless caused by the negligence of Lessee, its agents, employees,

6

or contractors, any claims, causes of actions, or judgments for damage to property and any claim, cause of action, or judgment arising from or out of the injury or death of any person while on the Common Area shall be the responsibility of Lessor, and Lessor agrees to indemnify and hold Lessee harmless from such claims, causes of actions or judgments. Lessor's indemnification of Lessee is one of first defense and payment, not of reimbursement or surety. Lessor's indemnification of Lessee includes any reasonable and necessary expense and reasonable and necessary attorneys' fees which the Lessee may incur in defending any such claims. Lessor's indemnification of Lessee shall in no way be limited by or to Lessor's insurance. Lessor's indemnification of Lessee shall survive expiration or termination of this Lease as to those claims or causes of actions arising prior to said expiration or termination. Lessor agrees to carry comprehensive general liability insurance, including contractual liability and property damage insurance, on the Common Area, with a combined single limit for bodily injury and property damage in an amount sufficient to protect Lessor and Lessee, but in no event will such insurance be in an amount less that a combined single limit of $2,000,000 per occurrence. Lessor shall provide Lessee with a certificate of insurance evidencing such coverage within seven (7) days of the date of this Agreement. Lessor's insurance shall contain a clause stating that there shall be no reduction, cancellation, or non-renewal of coverage without giving Lessee thirty (30) days prior written notice. Such insurance shall also be endorsed to provide that the insurance shall be primary to and not contributory to any similar insurance carried by Lessee, and shall contain a severability of interest clause.

7. **MAINTENANCE.** Lessor represents and warrants that the Demised Premises and the entire Shopping Center are well built, properly constructed and structurally safe and sound, and that the entire Common Area of the Shopping Center and the Demised Premises conform (or shall conform after notice from the appropriate governing authority within the applicable cure period, if any) to all applicable requirements of the American's with Disabilities Act of 1990, as amended, Pub. L 101-336, 42 U.S.C. 12101 *et. seq.*, and the administrative regulations promulgated thereunder. Lessor shall maintain at its cost and expense in good condition and shall perform all necessary maintenance, repair, and replacement to the exterior of the Demised Premises including, but not limited to, the roof, all paved areas, foundation, structural floors, exterior and load-bearing walls, all exterior utility lines and pipes, and all other structural portions of the building during the term of this Lease and any renewal periods. Lessee assumes liability for

damage to plate glass windows and doors. Lessee shall maintain the interior of the Demised Premises during the term of this Lease and any renewal periods and shall return the building to Lessor thereafter in the condition of the Demised Premises at the completion of Lessee's Work outlined on Exhibit "C", ordinary wear and tear and damage by fire and the elements excepted. Lessor has the right and responsibility to enter the Demised Premises periodically, at any reasonable time, to inspect the condition of the Demised Premises and to make repairs. All repairs, restorations, or payments which are obligations of Lessor, shall be completed or made within a reasonable time. Should Lessor neglect or refuse to make or commence such repairs, restorations, or payments within thirty (30) days after notice has been given by Lessee (no notice is required, however, in emergency situations when property loss or injury to persons is threatened), Lessee, without liability or forfeiture of its term or terms herein, may make or perform such construction, repairs, restorations, maintenance, cleaning, or payments, and deduct the reasonable cost thereof and the cost of damage to Lessee's property from the rent or other monies thereafter payable. Any such deductions shall not constitute a default by Lessee unless Lessee shall fail to pay the amount of such deduction to Lessor within thirty (30) days after a final adjudication by a court of competent jurisdiction that such amount is owing to Lessor. Any repairs or other work done by Lessor shall be performed so as to cause the least interference possible with Lessee's operation.

8. **FIXTURES AND EQUIPMENT.** Provided Lessee (a) performs its work on Exhibit "C" in a first class manner; (b) obtains all customary warranties and guarantees associated with Lessee's Work; and (c) maintains the heating and air conditioning equipment as outlined in Section 37, Lessor shall at all times furnish heating, plumbing, and air conditioning equipment in the Demised Premises and shall be responsible for the entire cost of major repairs and replacement of all such equipment. Lessee shall be responsible for the entire cost of minor repairs and routine maintenance. Minor repairs are defined as any repairs costing less than five thousand and 00/100 ($5,000.00) dollars per occurrence, and major repairs are defined as any repairs costing five thousand and 00/100 ($5,000.00) dollars or more per occurrence. Lessor warrants to Lessee that upon delivery of possession of the Demised Premises to Lessee, all plumbing and sewage facilities and electrical lines leading to the Demised Premises, will be operative and mechanically sound. "Lessee's Equipment" shall mean all fixtures, furniture, refrigeration units, equipment and furnishing installed for use in connection with Lessee's business on the Demised Premises. Lessee will be totally responsible for all repairs of Lessee Equipment. Lessee's

Equipment shall not be a part of the Demised Premises even if affixed to the Demised Premises. Lessee shall at all times have the right to remove any of Lessee's Equipment installed by it in the Demised Premises, provided, however, it repairs any damage which may be caused by such removal. Lessee shall also have the right to utilize and maintain a 25-foot by 25-foot area within the Common Area at the rear of the Demised Premises for portable compressors for said refrigeration units, if needed.

9. **ENTRANCES.** Lessee shall have unrestricted use and access to all entrances, passways, and delivery lanes to the Demised Premises and easements adjacent thereto.

10. **UTILITIES.** Lessor shall connect all utilities (except for phone service) in the Demised Premises prior to the date set forth in Paragraph 3 above. Lessor shall provide Lessee with the account and meter information on Exhibit "E", Utility Information Sheet, attached hereto and made a part hereof, and Lessee will transfer utilities into Lessee's name and will be responsible for the payment of same as of the date set forth in Paragraph 3 above. Lessee will reimburse Lessor for any utilities charged to Lessor for the Demised Premises following the Lessee Possession Date upon receipt of an invoice from Lessor. Lessee shall have the right to select or change its utility service providers, and shall pay for all utilities used by it in the Demised Premises during the term of this Lease and any renewal periods thereof.

11. **TAXES AND ASSESSMENTS.** Lessor shall pay at its cost and expense all taxes, assessments (including special assessments), and charges of a similar nature which may be levied by any governmental entity with respect to the Shopping Center (including the Demised Premises). Lessee shall pay at its cost and expense all personal property taxes and assessments which may be levied by any governmental entity with respect to Lessee's merchandise inventory, trade fixtures or business operation.

12. **ASSIGNMENT AND SUBLETTING.** Except as provided below, Lessee may assign or sublet the Demised Premises or any part thereof without the prior written consent of the Lessor. In the event such assignee or subtenant changes the Primary Use referenced in Section 2A, Lessee shall obtain prior written consent from Lessor before said assignment or subletting. Following any subletting or assignment the Lessee shall not be relieved from any of the terms and conditions of this Lease. After such subletting or assignment, the word Lessee as used herein shall mean any such subtenant or assignee.

13. **SIGNS.** Lessor agrees that Lessee shall have the right to place its standard yellow, red and black internally illuminated 7' x 33' Market box sign(s) as shown on Exhibit "D" attached hereto and made a part hereof, on the exterior of the Demised Premises. Lessee shall erect and maintain such signs at its sole cost and expense. If in compliance with local ordinances, Lessee shall have the right to install its standard yellow, red and black 7' x 14' sign on the existing pole, previously used by Winn Dixie, and as shown on Exhibit "D-1", attached hereto and made a part hereof. In the event Lessee's standard size sign is not in compliance, Lessee shall install a custom size sign with the same dimensions as the sign previously used by Winn Dixie in its standard yellow, red and black colors .Lessor agrees that it will not allow another tenant in the shopping enter to have a yellow sign on the pylon.

14. **SATELLITE COMMUNICATIONS SYSTEM.** Lessor agrees that at any time during the term of this Lease, Lessee shall have the right to install at or on the Demised Premises a satellite communications antenna and related equipment and/or substitutes which are a technological evolution of the foregoing items (the "Equipment"). If Lessee shall install such Equipment, Lessee shall do so at its own cost and expense and in accordance with all applicable laws, rules and regulations. Additionally, Lessee shall defend, indemnify, and hold Lessor harmless from and against any claims, costs, or expenses incurred by Lessor as a result of such installation by Lessee. If Lessee shall install the Equipment, Lessee shall be responsible for the maintenance and repair thereof, at Lessee's sole cost. The Equipment shall at all times remain the property of Lessee, and may be removed by Lessee, provided that Lessee shall repair any damage caused by such removal.

Lessor acknowledges that the satellite communications system is an important and integral part of Lessee's business, and is required to be operational when Lessee is open for business. Lessor agrees to promptly cooperate and take all reasonable steps necessary for the timely approval of Lessee's specific satellite antenna installation plan, if such approval is required by any governmental authority or agency.

15. **LESSEE'S BUSINESS OPERATION.** Lessor and Lessee agree that nothing in this Lease shall be construed to imply that Lessee is required to conduct its business in any particular manner or for any specified number of hours per day or week, or to limit the number of hours per day or week that Lessee may operate in the Demised Premises, or as creating an implied or expressed obligation upon Lessee to continuously occupy or operate a business in the Demised Premises. If Lessee intentionally closes its business operation in the Demised Premises to the public for at least

10

ninety (90) consecutive days, Lessor shall have the right to terminate this Lease within sixty (60) days thereafter by giving thirty (30) days prior written notice to Lessee. For the purpose of this Section, Lessee shall not be deemed to have ceased operating its business in the Demised Premises if Lessee is closed temporarily for remodeling or due to any fire or casualty, or if Lessee is closed due to strike, lockout, inability to obtain merchandise or any other cause beyond the reasonable control of Lessee.

16. **LESSEE'S INSURANCE**. At all times Lessee occupies the Demised Premises, Lessee shall, at its sole cost, carry and maintain comprehensive general liability insurance insuring Lessee against claims for injury, wrongful death, or property damage occurring in the Demised Premises with combined minimum policy limits of $2,000,000 per occurrence. Lessor shall be named as an additional insured under Lessee's insurance subject to the provisions of this Lease. Lessee may provide the insurance herein required in any blanket policy or policies which it carries. Upon written request, Lessee shall provide Lessor with a photocopy of the certificate of insurance as evidence of such coverage. All policies shall contain a clause stating that there shall be no reduction, cancellation, or non-renewal of coverage without giving Lessor thirty (30) days prior written notice.

17. **ALTERATIONS**. Lessee shall have the right, at its sole cost and expense, to make alterations, additions and improvements to the Demised Premises from time to time, and all of such alterations, additions and improvements constructed by Lessee during the term of this Lease and any extension thereof, shall be and remain the property of Lessee at all times during the terms of this Lease and any extensions or renewals thereof. Alterations shall be made in a good and workmanlike manner, in compliance with applicable local laws and ordinances. At the expiration or earlier termination of the Lease, Lessee shall remove all non-structural alterations which were made in the Demised Premises by the Lessee and return the Premises to Lessor in then "as is-broom clean" condition, ordinary wear and tear and damage by fire and the elements excepted. Lessee shall repair any damage caused by removal of the alterations. Lessee shall provide Lessor with plans and specifications for any structural alterations performed in the Demised Premises.

18. **MECHANICS LIENS**. Lessee shall not allow, and Lessor shall not be responsible for any mechanics liens filed against the Demised Premises or Shopping Center arising from work performed, or materials supplied to the Demised Premises or Shopping Center by Lessee or

11

Lessee's agents, employees, contractors, subcontractors or materialmen. Lessee agrees to fully indemnify and hold harmless Lessor from and against such claims and liens and Lessee shall immediately pay and discharge the same. Lessee shall indemnify Lessor against any claim by a contractor, sub-contractor, materialmnn or other third party on account of or related to any improvement made to the Demised Premises.

19. **DAMAGE TO BUILDING.** If all or any portion of the Demised Premises shall be condemned by lawful authority as unsafe or unfit for use, or if they become partially or wholly destroyed or damaged by fire or other casualty such as to render them untenantable, this Lease shall, at the option of either party, terminate unless the Demised Premises can be repaired or restored within one hundred eighty (180) days. During any such reconstruction period the Lease shall be continued but the rent shall be abated during the period of time while the premises cannot be occupied. Should the Demised Premises be damaged but remain tenantable, Lessor shall immediately repair the damage, and there shall be an equitable abatement of rent during the period of repair or restoration.

20. **RENT PAYMENT.** Lessee's rent checks shall be made payable to Daniel G. Kamin Clarksville Crossing, LLC and mailed to the following address: C/O Daniel G. Kamin, Kamin Realty Company, P.O. Box 10234, Pittsburg, PA 15232, Tax ID #25-1815378.

21. **COMPLIANCE WITH LAWS.** Lessor shall, at Lessor's sole cost and expense, comply with all codes and requirements of all county, municipal, state and federal laws and regulations, now in force, or which may hereafter be in force, which pertain to the physical, structural, or environmental condition of the Shopping Center or the Demised Premises including, without limitation, laws and regulations pertaining to disabled persons, asbestos, toxic mold, radon and hazardous substances. In the event asbestos or any other materials deemed hazardous by a governing authority (provided such hazardous material has not been introduced by Lessee) is required by law to be removed from the Demised Premises, Lessor shall perform such removal at its own cost and expense, unless introduced onto the Demised Premises by Lessee, its agents, employees, contractors or representatives. Lessee shall, at Lessee's sole cost and expense, comply with all codes and requirements of all county, municipal, state and federal laws and regulations, now in force, or which may hereafter be in force, which pertain to Lessee's specific use of the Demised Premises.

12

**22. CONDEMNATION.** In the event 25% or more of the Demised Premises are taken in condemnation proceedings, Lessee may cancel the Lease without further liability on the part of Lessee. In the event any material part of the buildings of the Shopping Center, or Common Area, or rights-of-way adjoining, or approaches to the Shopping Center are taken in condemnation proceedings so that in the reasonable judgment of Lessee the Demised Premises remaining would be unsatisfactory for Lessee's business operation, Lessee may cancel this Lease, or, at its sole option and discretion, retain the Demised Premises, in which event Lessor will restore the entire remaining Shopping Center to proper tenantable condition forthwith. Until the Shopping Center and the Demised Premises are restored to proper tenantable condition, rental shall totally abate, in the event Lessee is closed for business. If Lessee remains open for business, rental shall be reduced in proportion to the amount of building area lost. For the purpose of this paragraph, the term "condemnation proceedings" shall include conveyances and grants made in anticipation of or in lieu of condemnation proceedings. Nothing herein contained shall constitute a waiver of Lessee's right to damages for compensation for moving expenses, which shall be the sole compensation to which Lessee shall be entitled.

**23. DEFAULT.** A. LESSEE'S DEFAULT. I. If Lessee defaults in the performance of any obligation under this Lease, Lessor may give notice to Lessee specifying the nature of the default. If Lessee does not, within thirty (30) days after receipt of the notice, cure the default, other than a default in the payment of rent or other charges, or, if the default is of a nature that it cannot reasonably be cured within a period of thirty (30) days, and Lessee does not commence and proceed with reasonable diligence and in good faith to cure the default, then after the expiration of the thirty (30) day period (or longer period for certain defaults) Lessor shall have the right to seek damages or an injunction. If Lessee does not, within ten (10) days after receipt of the notice, cure a default in the payment of rent or other charges, then after the expiration of the ten (10) day period Lessor shall give a second notice to Lessee, and if Lessee does not, within five (5) days after receipt of the second notice, cure the default, then after the expiration of the second five (5) day period Lessor may exercise any or all remedies available at law or equity as to the default and/or serve notice of termination upon Lessee, but only during the continuance of the default, stating the date of termination, which shall be at least thirty (30) days after the date on which the notice of termination is received by Lessee, and upon the date specified in the notice this Lease and the term hereof shall cease and expire (provided the default shall not have been cured by that date) and

Lessee shall then quit and surrender the Demised Premises, but Lessee shall remain liable as hereinafter provided.

II. If pursuant to an order, judgment or decree entered by any court of competent jurisdiction (1) a receiver, trustee or liquidator of Lessee, or of all or substantially all of the assets of Lessee, shall be appointed, or (2) Lessee shall be adjudicated bankrupt or insolvent, or (3) a petition seeking reorganization of Lessee or an arrangement with creditors or to take advantage of any insolvency law shall be approved, and as a result of the happening of any contingencies, the obligation of Lessee to pay any rent shall be modified or abrogated, Lessor may serve notice of termination of this Lease upon Lessee, stating the date of termination, which date of termination shall be at least ten (10) days after the date on which the notice is served, and upon the date specified in the notice this Lease and the term hereof shall cease and expire, and Lessee shall then quit and surrender the Demised Premises, but Lessee shall remain liable as hereinafter provided.

III. If this Lease and the term hereof shall cease and expire pursuant to subsection I or subsection II of this Lease Section, Lessor may dispossess or remove Lessee or any other occupant of the Demised Premises by summary proceedings or otherwise, remove their effects and hold the Demised Premises as if this Lease had not been made, except that after the dispossession or removal, (1) the fixed monthly rent and other charges shall be paid up to the date of the dispossession or removal, (2) Lessor may relet the Demised Premises or any part or parts thereof in the name of Lessor for a term or terms which may, at the option of Lessor, be less than or exceed the period which would otherwise have constituted the balance of the term of this Lease and (3) Lessee shall pay to Lessor, as liquidated damages, any deficiency between the fixed monthly rent and other charges due hereunder and the amount, if any, of the rents collected on account of the new lease or leases of the Demised Premises for each month of the period which would otherwise have constituted the balance of the term of this Lease (not including any extension periods the commencement of which shall not have occurred prior to the dispossession or removal). In computing liquidated damages, there shall be added to the deficiency the reasonable expenses which Lessor incurs in connection with reletting the Demised Premises, for reasonable attorneys' fees, reasonable brokerage fees and for keeping the Demised Premises in good order for reletting (but not renovation costs). The liquidated damages shall be paid by Lessee in monthly installments on the dates specified in this Lease for payment of fixed monthly rent, and any suit brought to collect the amount of the deficiency for any month or months shall not prejudice in any way the

14

rights of Lessor to collect the deficiency for any subsequent month or months by a similar proceeding. Lessor shall not be liable for failure to re-let, for failure to collect the rent under the re-letting, unless Lessor shall not have used reasonable efforts to promptly re-let the Demised Premises for the reasonable rental value thereof and to collect the rent under the re-letting.

B. LESSOR'S DEFAULT. I. If Lessor shall be in default hereunder, Lessee, after thirty (30) days notice that Lessee intends to cure the default (or without notice if in Lessee's reasonable judgment an emergency shall exist) shall have the right, but not the obligation, to cure the default, and Lessor shall pay to Lessee upon demand the reasonable cost thereof, and Lessee may deduct same from any payments for rent or additional rent. Except when in Lessee's reasonable judgment an emergency shall exist, Lessee shall not commence to cure any default of a nature that could not reasonably be cured within a period of thirty (30) days, provided Lessor shall have commenced to cure the default within the cure period and so long as Lessor proceeds with reasonable diligence and in good faith to cure the default. Should any default of Lessor continue beyond any applicable cure period, Lessee may, at its option if the default occurs with less than one (1) year remaining in the term or option period and the cost to make repairs would exceed the remaining rent due, serve notice of termination upon Lessor stating the date of termination, which date of termination shall be at least thirty (30) days after the date on which the notice is served, and upon the date specified in the notice this Lease and the term hereof shall cease and expire, and Lessee shall then quit and surrender the Demised Premises and shall have no further liability therefore.

II. If pursuant to an order, judgment or decree entered by any court of competent jurisdiction (1) a receiver, trustee or liquidator of Lessor, or of all or substantially all of the assets of Lessor, shall be appointed, or (2) Lessor shall be adjudicated a bankrupt or insolvent, or (3) a petition seeking reorganization of Lessor or an arrangement with creditors or a petition to take advantage of any insolvency law shall be approved, and upon the happening of any of these contingencies, the trustee of Lessor shall fail to assume affirmatively this Lease or any covenant therein within the statutory period allotted therefore, as same may be extended by order of court, or if this Lease be deemed rejected after an order is entered directing that a trustee be not appointed, and as a result of the happening of any of these contingencies, the fixed monthly rent or other charges herein reserved, or the Lessee's rights or obligations hereunder, or the Lessor's obligations hereunder shall be modified or abrogated, then Lessee shall have the right, at its option, to terminate this Lease, by the service upon Lessor and the Trustee (if appointed) of a notice of termination of this Lease,

15

stating the date of termination which date shall be at least thirty (30) days after the date on which the notice is served, and upon the date specified in the notice this Lease and the term hereof shall automatically cease and expire, and Lessee shall then quit and surrender the Demised Premises, but Lessee shall be entitled to a refund of any fixed monthly rent or other charges paid in advance for any period beyond the date of termination and to assert any claim it may have for the loss of its leasehold.

24. **MUTUAL RELEASE.**  Except as otherwise provided herein, Lessee hereby releases Lessor from all liability resulting from loss or damage caused by fire or other hazards to Lessee's contents in the Demised Premises even if such fire or other hazards shall be brought about by the negligent act or omission of the Lessor, its agents, or employees.  Lessor hereby releases the Lessee from any and all liability for any loss or damage caused by fire or other hazards to the Demised Premises even if such fire or other casualty shall be brought about by the negligent act or omission of the Lessee, its agents, or employees.  Lessor and Lessee agree that all insurance policies shall include a clause waiving rights of subrogation and recovery against the other.

25. **QUIET POSSESSION.**  Lessor covenants that it will put Lessee into complete and exclusive possession of the Demised Premises, free from all orders, restrictions and notices of any public, quasi-public authority or otherwise including, but not limited to, acts or omissions of Lessor, and that if Lessee shall pay the rental and perform all the covenants and provisions of this Lease to be performed by Lessee, the Lessee shall during the term demised and any renewal periods, freely, peaceably and quietly occupy and enjoy the full possession of the Demised Premises, and the tenements and appurtenances thereto belonging, and the rights and privileges granted without hindrance.  In addition, Lessor agrees to indemnify, defend, and hold Lessee harmless from any and all claims seeking to prevent Lessee from quiet and complete possession of the Demised Premises.  If at any time during the term demised the title of the Lessor shall fail or for any reason it shall appear that Lessor is unable to make this Lease for the term or on the conditions set forth, the Lessee shall, in addition to all remedies available at law or in equity, have the right at Lessor's expense to correct any default or terminate this Lease.

26. **HOLD HARMLESS.**  Lessor agrees to hold Lessee harmless from any and all claims which may arise from, on, in or about the Demised Premises when such claims arise out of or are caused in whole or in part by a defective, dangerous, or unsafe condition of the premises, equipment, fixtures, or appurtenances required by law or the terms hereof to be maintained by Lessor.  Lessee

agrees to hold Lessor harmless from any and all claims which may arise in the Demised Premises when such claims arise out of or are caused in whole or in part by a defective, dangerous, or unsafe condition of the premises, equipment, fixtures, or appurtenances required by law or the terms hereof to be maintained by Lessee.

27. **HOLDING OVER.**  Any holding over by Lessee beyond the original term of this Lease or any renewal period thereof shall be on the same terms and conditions as contained herein, and shall be a periodic tenancy terminable by either party upon ninety (90) days prior written notice to the other party, except that the rent shall be one hundred fifty percent (150%) of that immediately before the expiration of the term.

28. **NOTICES.**  All notices required under this Lease shall be given and deemed to have been properly served if delivered in writing personally, by certified mail, by a nationally recognized overnight courier providing signed proof of delivery, or via facsimile with proof of transmission to Lessor at, Kamin Realty Company, 490 S. Highland Avenue, Ground Floor, Ptittsburgh, PA 15206, and to Lessee at 100 Mission Ridge, Goodlettsville, Tennessee 37072, Attention: Director of Real Estate, with a copy to Attention:  General Counsel ,or such other place or places as either of them may designate in writing to the other from time to time. Date of service of a notice served by mail shall be the date on which such notice is deposited in a post office of the United States Post Office Department.  Date of service by any other method shall be the date of receipt. Final execution and delivery of this Lease is in the State of Tennessee and shall be construed in accordance with the laws of the Commonwealth of Virginia, notwithstanding its conflict of laws provisions.

29. **ESTOPPEL CERTIFICATES.**  Upon the reasonable request of either party, Lessor and Lessee agree to execute and deliver to the other within ten (10) days after receipt of the request, a written instrument, (a) certifying that this Lease has not been modified and is in full force and effect or, if there has been a modification of this Lease, that this Lease is in full force and effect as modified, stating such modifications; (b) stating that the fixed monthly rent has not been paid more than thirty (30) days in advance, or if so, the date to which it has been paid; (c) stating whether or not, to the knowledge of the party executing the instrument, the other party hereto is in default and, if the party is in default, stating the nature of the default; (d) stating the date of this Lease; and (e) such other reasonable information that the party requests.

30. <u>SUBORDINATION, NON-DISTURBANCE, AND ATTORNMENT</u>. If at the time of the effective date of this Lease, Lessor has entered into any mortgage or deed of trust encumbering the Demised Premises, Lessor agrees to join Lessee in obtaining an acceptable non -disturbance and attornment agreement between Lessor and Lessee and the holder of said mortgage or deed of trust in a form similar to the form attached hereto as Exhibit "F" or in such form as the Lender may reasonably require. Lessee agrees that should Lessor after the effective date of this Lease place a first mortgage or deed of trust upon the Demised Premises, if requested by Lessor or the holder of said mortgage or deed of trust, Lessee will enter into an acceptable subordination, non - disturbance and attornment agreement between said parties.

The non-disturbance agreement shall be an agreement in recordable form between Lessee, Lessor, and the holder of the mortgage or deed of trust, binding on the holder and on future holders, and shall provide, among other things, that, so long as this Lease shall be in full force and effect neither the holder or any other holder of a mortgage or deed of trust encumbering the Shopping Center shall name or join Lessee as a party-defendant or otherwise in any suit, action or proceeding to enforce the mortgage or deed of trust, nor will this Lease be terminated (except as permitted by the provisions of the Lease) or otherwise affect the possession of the Demised Premises by Lessee by the enforcement of any rights given to the mortgagee or holder of the deed of trust.

31. <u>ENTIRE AGREEMENT</u>. This Lease and its attachments, if any, contain the entire agreement between the parties and there are no covenants, express or implied, except as contained herein. No statement, promise or inducement made by either party or agent of either party that is not contained in this written agreement shall be valid or binding. No waiver of any condition or covenant of this Lease by either party shall be deemed to imply or constitute a further waiver of the same or any other condition or covenant of the Lease.

32. <u>CAPTIONS</u>. All captions and headings are for convenience of reference only and in no way shall be used to construe or modify the provisions set forth in this Lease.

33. <u>INVALIDITY OF CERTAIN PROVISIONS</u>. If any provisions of this Lease shall be invalid or unenforceable, the remainder of the provisions of this Lease shall not be affected and every other provision of this Lease shall be enforceable to the fullest extent permitted by law.

34. <u>NO WAIVER</u>. The failure of the Lessor or Lessee to insist upon the strict performance of any provisions of this Lease, or the failure of Lessor or Lessee to exercise any right, option or

remedy contained in this Lease shall not be construed as a waiver for the future of any such provision, right, option, or remedy, or as a waiver of any subsequent breach. No provision of this Lease shall be deemed to have been waived unless such waiver shall be in writing signed by the party to be charged.

35. **FORCE MAJEURE**. If either party shall be prevented or delayed from punctually performing any obligation or satisfying any condition under this Lease by any strike, lockout, labor dispute, inability to obtain labor or materials, Act of God, governmental restriction, regulation or control, enemy or hostile governmental action, civil commotion, insurrection, sabotage, fire or other casualty, or any other condition beyond the reasonable control of the responsible party, then the time to perform the obligation or satisfy the condition shall be extended for a period of time equal in length to the length of the event.

36. **BINDING EFFECT**. This Lease shall bind and inure to the benefit of the parties hereto, their heirs, successors, executors, administrators, and assigns.

37. **HVAC PREVENTATIVE MAINTENANCE**. Lessee shall keep in force during the term hereof and any renewal periods a maintenance contract covering the heating, ventilating and air conditioning system. The contract shall provide for quarterly servicing of all such equipment and shall be with a contractor reasonably acceptable to Lessor. Lessee shall provide Lessor with a copy of the maintenance contract at any time Lessor may request.

38. **SHORT FORM LEASE**. Lessor agrees to execute a short form lease in recordable form, to record same at Lessor's sole cost and expense in the appropriate recording office, and to deliver the original recorded document to Lessee along with the executed Lease. Lessee shall prepare the short form lease at its sole cost and expense. The short form lease may contain any provision of this Lease, including, without limitation, any or all of the exclusive uses granted Lessee in Section 6 hereof, except that it shall not contain all or any part of Section 3 of this Lease.

39. **COMMON AREA MAINTENANCE**. Lessee agrees to pay Lessor its proportionate share of Lessor's actual cost of care and maintenance on the Common Area. Care and maintenance shall include lighting, cleaning (three (3) times per week, unless otherwise notified by Lessee), policing and providing security, repairs to paved areas, curbs and walkways, landscaping, removal of snow, ice and debris, and striping, maintenance, repairs and replacements of signs, displays and decorations but shall not include capital repairs. Lessee's proportionate share shall be in the ratio

which the number of square feet of the Demised Premises bears to the total number of square feet of all rentable area included in the buildings comprising the complete Shopping Center.

Lessee will pay Lessor six hundred six and 67/100 ($606.67) dollars per month with the monthly rent. Within ninety (90) days after the end of each annual Lease year, Lessor will furnish Lessee with an itemized statement of total common area expenses along with the Lessee's proportionate share of such costs. If the sum of Lessee's annual monthly payments exceeds its proportionate share of common area maintenance costs, Lessor shall include its check to reimburse Lessee in the amount of the overpayment along with the itemized statement. If Lessee's obligation exceeds the sum of its monthly contributions for that Lease year, Lessee shall make the additional payment to Lessor within thirty (30) days of receipt of the annual statement. The monthly payment in any year after the first year shall be adjusted according to the actual expenses for any prior year.

Lessee shall not be obligated to the Lessor for more than the minimum monthly payments under this Clause until Lessee receives from Lessor an itemized statement of total common area expenses along with the computation of Lessee's proportionate share of such costs. Lessor's failure to submit to Lessee the annual statement within twelve (12) months after the end of the annual Lease year shall nullify Lessor's right to collect additional reimbursements from Lessee for that particular Lease year.

**40. REAL ESTATE TAXES.** Lessee shall pay a proportionate share of any general real estate taxes (excluding special assessments) paid by Lessor for the complete Shopping Center which were incurred during the actual year of Lessee's tenancy, being a tax period beginning with the date Lessee accepts possession of the Demised Premises through the termination or expiration date of this Lease. Lessee's proportionate share shall be in the ratio which the number of square feet of the Demised Premises bears to the total number of square feet of all rentable area included in the buildings comprising the complete Shopping Center.

Lessee will pay Lessor six hundred ninety three and 33/100 ($693.33) dollars per month with the monthly rent. Within ninety (90) days after the end of each annual lease year, Lessor will furnish Lessee photostatic copies of all tax bills paid by Lessor during the annual lease year, along with computations showing Lessee's proportionate share of such costs. If the sum of Lessee's annual

monthly payments exceeds its proportionate share of real estate taxes, Lessor shall include its check to reimburse Lessee in the amount of the overpayment along with the itemized annual statement. If Lessee's obligation exceeds the sum of its monthly contributions for the lease year, Lessee shall make the additional payment to Lessor within thirty (30) days of receipt of the annual statement. The monthly payment in any year after the first year shall be adjusted according to the actual expeses for any prior year.

Lessee shall not be obligated to Lessor for more than the minimum monthly payments under this clause until Lessee receives from Lessor photocopies of paid tax bills along with the computation of Lessee's proportionate share of such costs. Lessor's failure to submit to Lessee the annual statement within twelve (12) months after the end of the annual lease year shall nullify Lessor's right to collect additional reimbursement from Lessee for that particular lease year.

41. **INSURANCE.**  Lessor agrees to carry comprehensive general liability insurance on the Shopping Center premises with a combined single limit for bodily injury, personal injury, and property damage of not less than $2,000,000 per occurrence. Lessor further agrees to maintain fire, casualty and extended coverage insurance on the Shopping Center buildings in an amount equal to at least 80% of the insurable value of the property. The insurer(s) shall have an A.M. Best rating of at least A-VIII or, if not Best rated, be of an equivalent financial size and underwriting reputation. Lessee shall be named an additional insured in the policies and Lessor shall furnish to Lessee current certificates of insurance evidencing such insurance and the policies shall contain a provision that there will be no cancellation, reduction or non-renewal in coverage without first giving Lessee thirty (30) days prior written notice.

Lessee will pay Lessor one thousand one hundred seventy 0%00 ($1,170.00) dollars per month with the monthly rent. Within ninety (90) days after the end of each annual Lease year, Lessor will furnish Lessee with an itemized statement of total Insurance premiums paid along with the Lessee's proportionate share of such costs. Lessee's proportionate share shall be in the ratio which the number of square feet of the Demised Premises bears to the total number of square feet of all rentable area included in the buildings comprising the complete Shopping Center. If the sum of Lessee's annual monthly payments exceeds its proportionate share of insurance premium payments, Lessor shall include its check to reimburse Lessee in the amount of the overpayment along with the itemized statement. If

21

Lessee's obligation exceeds the sum of its monthly contributions for that Lease year, Lessee shall make the additional payment to Lessor within thirty (30) days of receipt of the annual statement. Lessor's failure to submit to Lessee the annual statement within twelve (12) months after the end of the annual lease year shall nullify Lessor's right to collect additional reimbursement from Lessee for that particular lease year. The monthly payment in any year after the first year shall be adjusted according to the actual expeses for any prior year.

Lessor shall use due diligence and good faith to obtain the insurance at a rate favorable to Lessee and upon Lessee's request, Lessor shall obtain competitive quotations from at least three insurance companies. If requested by Lessee, Lessor shall promptly furnish Lessee documentation of Lessor's efforts to obtain favorable insurance rates and copies of competitive quotations.

42. **MISCELLANEOUS**.    Lessor or any successor in interest shall not be subject to personal liability in respect to any of the covenants or conditions of this Lease. Tenant shall look solely to Lessor's equity interest in the Shopping Center and the rents, issues and profits derived therefrom for the satisfaction of the remedies of Tenant in the event of a breach by Lessor.

43. **CAPITAL CONTRIBUTION**. As a contribution toward Lessee's capital improvements, Lessor shall provide to Lessee $550,000.00. The contribution of $550,000.00 shall be provided to the Lessee upon:   1) Lessee opening for business to the public at the Demised Premises, and 2) Completion of said work as outlined in Exhibit "C", 3) Lessor's receipt of lien waivers from the Lessee's general contractor and all sub-contractors, and 4) issuance of an receipt by Lessor of all other permits and approvals necessary for the Lessee to conduct its business in the Demised Premises. Lessee shall provide Lessor with an itemized invoice stating the actual cost of Lessee's improvements after completion of said work along with satisfactory proof of Lessee's fulfillment of the above conditions and Lessor shall reimburse Lessee within 30 days of receipt. Should Lessor fail to pay Lessee within 30 days, Lessee may deduct from the monthly rent due and payable to Lessor, all that which is due and payable to Lessee, plus interest accruing at the maximum rate of which judgments accrue interest in the State of Pennsylvania, until such time as Lessee has been fully reimbursed for said contribution.

IN WITNESS WHEREOF, the parties have executed this Lease in duplicate on the dates

hereafter indicated to be effective on the date first above written.


Witness to Lessor:              LESSOR:      DANIEL G. KAMIN
                                             CLARKSVILLE CROSSING, LLC

                                BY:          DANIEL G. KAMIN
                                             CLARKSVILLE CROSSING CORPORATION
                                             MANAGING MEMBER

                                       BY:   _____
                                             Daniel G. Kamin
                                             President



Witness for Lessee:             LESSEE:      DOLGENCORP, INC.

                                       BY:   _____
                                             Kathleen Guion
                                             Executive Vice President

23

## LESSOR AS A LIMITED LIAIBITY CORPORATION

STATE OF <u>PENNSYLVANIA</u>  )
                             )  SS
COUNTY OF <u>ALLEGHENY</u>   )

On this the 12 day of November, 2005, before me, the undersigned, personally appeared Daniel G. Kamin, who acknowledged himself/herself/themselves to be the President of Daniel G. Kamin Clarksville Crossing Corporation, a corporation, and that he, as such officer(s), being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as President.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: Dec 2 2007

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kathleen Ruth Cochran, Notary Public
City Of Lower Burrell, Westmoreland County
My Commission Expires Dec. 2, 2007
Member, Pennsylvania Association Of Notaries

### LESSEE

STATE OF TENNESSEE     )
                       )  SS
COUNTY OF DAVIDSON     )

On this the 1st day of December, 2005, before me, the undersigned, personally appeared Kathleen Guion of Dolgencorp, Inc., and that he as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of corporation by himself as Executive Vice President.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: 9.30.06

BOOK 556 PAGE 383

347109-848

Exhibit A
(Legal Description)

Clarksville Crossing Shopping Center
Russell Street, Buffalo Road
and U.S. Highway 58
Clarksville, VA

All that certain tract or parcel of real property, with all improvements thereon and appurtenances thereunto belonging, situate, lying and being in the Town of Clarksville, Mecklenburg County, Virginia, containing 6.837 acres, (the "Property"), as shown on that certain plat of survey prepared by Crutchfield & Associates, Inc. dated December 17, 1991, revised 5-27-92; 7-23-98; 8-27-98, bearing the caption: "As Built Survey" Clarksville Crossing Shopping Center, Town of Clarksville, Mecklenburg County, VA (the "Plat"). The Property is more particularly described according to the Plat as: beginning at a point "A" near the north right-of-way of U.S. Highway 58 at the intersection of Russell Street and U.S. Highway 58, corner with property now or formerly James V. Massingill and Richard Burton Sydnor, Jr. and from the point of beginning as determined thence,

North 44° 00' 56" West 31.37 feet to an iron pin in place; thence

North 78° 39' 44" West 5.66 feet to a point adjoining property conveyed to Boddie-Noell at Deed Book 327, Page 206; continuing with Boddie-Noell,

North 07° 42' 50" West 31.49 feet to a point: turning and continuing along a 24 foot access drive,

North 48° 42' 49" East 120.06 feet to a point:

continuing along a curved line to the left Delta=38° 05' 15", Radius=109.00 feet, Arc=72.46 feet, Chord Bearing North 29° 4' 11" East 71.13 feet to a point; continuing,

North 10° 37' 34" East 12.22 feet to a point; turning and continuing,

North 66° 09' 44" West 239.67 feet to a point; continuing,

South 23° 50' 16" West 7.00 feet;

continuing along a curved line to the left Delta=115° 23' 09", Radius=22.50 feet, Arc=45.31 feet, Chord Bearing South 56° 08' 41" West 38.03 feet to a point; continuing,

South 88° 27' 06" West 8.49 feet to a point adjoining the East line of Russell Street;

20043980v1
9/10/98, 2:39 pm

BOOK 556 PAGE 384

continuing with the East line of Russell Street along a curved line to the right, Delta=22° 48' 50", Radius=235.108 feet, Arc=93.61 feet, Chord Bearing North 09° 51' 34" East 93.00 feet to a point; continuing,

North 21° 15' 59" East 80.18 feet to a point; continuing along a curved line to the left Delta=02° 19' 52", Radius=1370.367 feet, Arc=55.76 feet, Chord Bearing North 20° 03' 45" East 55.75 feet to a point on the eastern right-of-way of Russell Street and the eastern right-of-way of the Southern Railway,

continuing along said railway right-of-way along a curve to the right Delta=00° 20' 49", Radius=3343.019 feet, Arc=20.24 feet, Chord Bearing North 39° 58' 37" East 20.24 feet; thence,

North 40° 08' 52" East 550.59 feet to a corner, an iron pin in place at the intersection of the southern right-of-way of said railway and the western right-of-way of State Route T-750, (Buffalo Road);

continuing with Buffalo Road along a curve to the left Delta=11° 42' 10", Radius=478.918 feet, Arc=97.82 feet, Chord Bearing South 73° 58' 16" East 97.65 feet to a corner, an iron pin in place; thence with property now or formerly belonging to Young Men's Christian Association of Clarksville, Va., Inc.,

South 09° 00' 37" East 300.00 feet to the property of the Town of Clarksville; thence,

South 81° 35' 21" West 70.62 feet to a point; thence,

South 08° 24' 39" East 64.50 feet to a point; thence,

South 81° 35' 21" West 32.00 feet to a point; continuing,

South 08° 24' 39" East 91.01 feet to a point continuing,

South 81° 35' 21" West 30.23 feet to a point; continuing,

South 08° 24' 39" East 97.00 feet to a point; continuing,

South 81° 35' 21" West 17.35 feet to a point; thence,

South 08° 24' 39" East 114.46 feet to a point; continuing,

South 81° 35' 21" East 17.35 feet to a point;

continuing along a curve to the right Delta=46° 04' 26", Radius=205.00 feet, Arc=164.85 feet, Chord Bearing South 60° 34' 34" East 160.44 feet to a point; continuing,

20043980v1
9/10/98, 2:59 pm

BOOK 556 PAGE 385

North 80° 59' 23" East 11.00 feet to an iron pin in place, in the line of Mary Emily Moore and others; continuing with property now or formerly belonging to Mary Emily Moore and others,

South 09° 00' 37" East 126.64 feet to a corner at the intersection with the northern right-of-way of U.S. Highway 58, an iron pin in place, continuing along the north right-of-way of U.S. Highway 58,

South 83° 00' 16" West 47.00 feet to a point, on the line of the Town of Clarksville; continuing with property belonging to the Town of Clarksville,

North 06° 59' 44" West 22.00 feet to a point, continuing along a curve to the left Delta=90° 00' 00", Radius=145.00 feet, Arc=227.77 feet, Chord Bearing North 51° 59' 44" West 205.06 feet to a point,

continuing along a curve to the left Delta=90° 00' 00". Radius=110.00 feet, Arc=172.79 feet, Chord Bearing South 38° 00' 16" West 155.56 feet to a point, continuing,

South 06° 59' 44" East 23.76 feet to a point, continuing along Blue Creek,

North 83° 04' 21" East 38.84 feet to a point; continuing,

South 76° 15' 21" East 43.54 feet to a point; continuing,

South 58° 40' 59" East 28.68 feet to a point on the northerly right-of-way of U.S. Highway 58;

continuing along the northern right-of-way of U.S. Highway 58 South 83° 00' 16" West 86.20 feet to a point; continuing,

South 88° 42' 54" West 82.80 feet to a corner, continuing with property now or formerly belonging to James V. Massingill and Richard Burton Sydnor, Jr.,

North 35° 29' 44" West 72.04 feet to a point in Blue Creek continuing along Blue Creek,

South 52° 38' 56" West 10.20 feet to a point; continuing,

South 72° 04' 08" West 29.18 feet to a point; continuing,

North 71° 08' 39" West 22.75 feet to a point; continuing,

South 14° 22' 24" West 26.58 feet to a point; continuing,

South 65° 10' 00" West 29.80 feet to a point, the place of beginning and containing 6.837 acres, more or less.

200439920v1
9/10/98, 2:39 pm



CLARKSVILLE CROSSING
CLARKSVILLE, VIRGINIA

KAMIN REALTY CO. (412) 661-5233

RUSSELL STREET

US RT 58

US RT 15

## Dollar General Market Store
## SCOPE OF WORK - CLARKSVILLE VA.
### Revised 11/18/05
### NEC U.S. Hwy. 58 & VA. S.R. 15
### Clarksville Va.

Lessor shall complete, at its own expense, all of the items listed below that are designated as Lessor's responsibility and/or as further described in Lessee's Prototype Design Package attached hereto for reference; should Lessor's work require architectural or engineered plans, Lessor shall be responsible for such plans at its own expense. All work must meet or exceed specifications contained herein, specifications included in the Lessee's Prototype Design Package and requirements of all applicable codes, such as Fire, Building, ADA, Health etc. All systems, equipment etc. provided by Lessor must be fully functional, in good working order and in compliance with all applicable codes. Lessor must meet all conditions herein prior to the Demised Premises being considered as delivered to Lessee.

All work performed by Lessor and/or Lessee, or on the behalf of the same, must be performed at least to the minimum standards of the area with commercial grade materials or better, and all work must be performed to the requirements of all ruling codes, laws, advisories and regulations. Lessor warrants that the Demised Premises is in compliance with all federal, state and local codes, laws, advisories and regulations at the time of lessees position. Lessor warrants that no materials are present that are considered hazardous, harmful to man, or environmentally unsafe.

|  | Section |  | Description |
|---|---|---|---|
| Lessor | 01- | 1 | Roof and Building Exterior |
| Lessor | 01- | 2 | Repair and Warrant that the roof is waterproof and in good condition. |
| Lessor | 01- | 3 | Warrant that the demised premises is waterproof, including all doors and windows. |
| Lessor | 01- | 4 | Provide asbestos free certification and remediation if required |
| Lessor | 01- | 5 | Replace all damaged or missing gutters and downspouts. |
| Lessor | 01- | 6 | Warrant that the exterior walls and sidewalks are in good repair and free of graffiti. |
| Lessor | 01- | 7 | Seal and finish all roof and exterior wall penetrations to match the building interior and exterior. |
| Lessor | 01- | 8 | Sidewalk to be in good repair with ADA-compliant handicap ramps and access, per all applicable codes. Repair all cracks/holes from chrome rail, and restain sidewalk concrete |
| Lessor | 02- | 1 | Parking |
| Lessor | 02- | 2 | Provide adequate parking; spaces properly striped with a minimum of three handicap spaces properly marked and signed, if required, additional handicap spaces are to be provided to meet ADA and any other applicable codes. |
| Lessor | 02- | 3 | Clear all trash and vegetation from paved areas of parking lot, drives and sidewalk. |
| Lessor | 02- | 4 | Repair parking lot cracks, pot holes, and ensure all manholes/access covers are flush with surface and do not create tripping hazards. Any cracks and or holes to be repaired by April 30th, 2006. |
| Lessor | 02- | 5 | Reseal parking lot surface and ensure that all manholes/access covers are flush with surface and do not present a tripping hazard. Reseal Parking Lot by April 30th, 2006. |
| Lessor | 02- | 6 | Re-stripe parking lot, including light pole bases, curbs, bollards, handicap ramps and signs bases |
| Lessor | 02- | 7 | Install handicap signs and bollards as directed by Lessee and applicable codes. |
| Lessor | 02- | 8 | Provide adequate site lighting, pole and/or wall lights, for safe night vision around the entry, parking, receiving and dumpster areas. Light measurement minimums are three(3) foot candles within a 75' radius of entry doors and two(2) foot candles on the remainder of the paved area. Add two (2)additional light poles, with 4 box lights to match existing lights in parking area in front of the store. Poles to be centered in the two remaining parking rows between the existing poles, and in line with the existing poles. All four(4) poles will also have two(2) 1000 watt directional heads installed directed at the store front, store entrances and drive lane |

Revised 2/3/05

| | Section | | Description |
|---|---|---|---|
| Lessor | 02- | 9 | Repair all existing site lighting, pole, canopy and/or wall lights to operational condition. |
| Lessor | 02- | 11 | Provide easy access for Lessee's trucks and customers with a sufficient turning radius to allow for a 75'+ tractor-trailer delivery to stockroom receiving area. |
| Lessor | 02- | 12 | Parking lot and area around demised premises to be well-drained and in good condition. |
| Lessor | 02- | 13 | Provide space for pad for Lessee's dumpster to be a minimum size of 18' x 18' to be easily accessible by trash collection trucks. |
| Lessor | 02- | 15 | Repair and resurface existing truck drive area located in the rear of the shopping center at narrow point between light pole and shopping center buildings. Approximately 400 square feet of area that is cracked, broken, notched and washed out. |
| Lessor | 02- | 16 | Provide/install bollards to protect exterior rails, utilities, etc |
| Lessor | 03- | 1 | Freight Doors, Delivery Doors and all other exits |
| Lessor | 03- | 2 | Building to be ADA and fire code compliant, per all applicable codes. |
| Lessor | 05- | 1 | Water and Gas Service |
| Lessor | 05- | 2 | Services to be dedicated to the demised premises only. |
| Lessor | 05- | 3 | One-metered service to be complete to demised premises and operational. |
| Lessor | 05- | 4 | Services to be in good working order for 90 days after possession of premises by Lessee. |
| Lessor | 05- | 5 | Services to be in compliance with all applicable codes. |
| Lessor | 06- | 1 | Restrooms and Plumbing |
| Lessor | 06- | 2 | Water and sewer services to be dedicated to the demised premises only. |
| Lessor | 06- | 3 | Services to be in good working order for 90 days after possession of premises by Lessee. |
| Lessor | 06- | 4 | Services to be in compliance with all applicable codes. |
| Lessor | 06- | 5 | Scope and video existing sewer lines to determine all lines are clear of obstructions (if problem is incurred). |
| Lessor | 07- | 1 | HVAC |
| Lessor | 07- | 2 | Dedicated to the demised premises only. |
| Lessor | 07- | 3 | One metered service |
| Lessor | 07- | 8 | Provide asbestos free certification and remediation if required |
| Lessor | 08- | 1 | Electrical Service and Wiring |
| Lessor | 08- | 2 | Provide minimum 1,200 amp electrical service, larger if required by HVAC load or applicable codes. |
| Lessor | 08- | 3 | Service and wiring to be in compliance with all applicable codes. Any interior wiring modifications made by Lesse would be responsibility of Lessee to comply with applicable codes. |
| Lessor | 08- | 4 | One-metered service complete to demised premises, operational and in good condition. |
| Lessor | 08- | 5 | Dedicated to demised premises only. |
| Lessor | 08- | 6 | Repair/replace exterior wall pack lighting to operational |
| Lessor | 11- | 1 | Floors |
| Lessor | 11- | 2 | Provide asbestos free certification and remediation if required |
| Lessor | 12- | 1 | Sprinkler System |
| Lessor | 12- | 2 | Existing system in good working order, and adequate to service demised space per all applicable codes.  Provide copies of current passing inspection report |
| Lessor | 12- | 3 | Sprinkler alarm and fire alarm systems are to be provided in good working order and in compliance with all applicable codes.  Lessor will be required to  monitor and maintain these systems when they serve multiple demised premises. |

Revised 2/3/05

| | Section | | Description |
|---|---|---|---|
| Lessee | 02- | 14 | Provide dumpster enclosure if required by applicable codes |
| Lessee | 05- | 6 | All excess gas and plumbing lines to be sealed and removed from the surface of all walls, ceilings and floors. |
| Lessee | 07- | 4 | To be in compliance with all codes. |
| Lessee | 07- | 5 | To be operational and in a good state of repair, including wiring, belts, filters etc, for 90 days after possession of the demised premises by Lessee. |
| Lessee | 08- | 8 | Provide conduit from panel to pole sign, 10/2 with ground wire size, and 20 amp breaker at panel. |
| Lessee | 01- | 1 | Roof and Building Exterior |
| Lessee | 01- | 10 | Modify existing storefront canopy as per Lessee plans and elevations to receive Lessee's prototype storefront sign per size and weight specifications. |
| Lessee | 01- | 11 | Modify existing facades as per Lessee plans and elevations, replace all metal in lessee canpoy and continuning at least to brick pilaster at the beginning of CVS space. |
| Lessee | 01- | 12 | Paint storefront to color scheme as directed by Lessee elevation drawings. |
| Lessee | 01- | 13 | Replace storefront soffits with new white metal soffits panels. |
| Lessee | 01- | 14 | Paint exterior side and rear walls of building to match existing colors |
| Lessee | 01- | 15 | Remove all vending in front of lessee space and remove one surface mounted conduit. |
| Lessee | 01- | 16 | |
| Lessee | 01- | 17 | |
| Lessee | 02 | | Parking |
| Lessee | 02- | 17 | Rear of bldg. in north west corner repair pavement where old cooler previously located, and remove old guard rail. |
| Lessee | 02- | 18 | |
| Lessee | 02- | 19 | |
| Lessee | 03 | | Freight Doors, Delivery Doors and all other exits |
| Lessee | 03- | 3 | Replace three (3) existing single fire exit doors.  Enlarge one single fire exit door to a 6'-0" x 7'-0" double door and widen ADA ramp to match new width. Ensure doors are operational, water-tight, rust-free and rodent-proof with seals and sweeps. |
| Lessee | 03- | 4 | Provide Von Duprin single door panic hardware, Gardex series 2670.  Order through Bass Securities at 800-523-1422 ext 208 for Dollar General National Account Pricing |
| Lessee | 03- | 5 | Install Von Duprin single door panic hardware, Gardex series 2670. |
| Lessee | 03- | 6 | Provide Von Duprin double door panic hardware.  Gardex series 2670. And (2) Dtext DDH-2250 Double door holders.  Order through Bass Securities at 800-523-1422 ext 208 for |
| Lessee | 03- | 7 | Install Von Duprin double door panic hardware.  Gardex series 2670. And (2) Dtext DDH-2250 Double door holders. |
| Lessee | 03- | 8 | Provide and install new exterior fire doors, ramps and rails as required by applicable codes, and approved by Lessee's Construction Department |
| Lessee | 03- | 9 | Install new pit and pit dock levelers with seals and sweeps |
| Lessee | 03- | 10 | Install new dock seals |
| Lessee | 03- | 11 | Install new dock bumpers |
| Lessee | 03- | 12 | Install new 8' wide X 10' high roll up overhead dock door(s) with seals and sweeps |
| Lessee | 03- | 13 | Remove any existing exterior doors as noted on Lessee's drawings and seal openings and finish to match existing surfaces. |

Revised 2/3/05

|  | Section | | Description |
|---|---|---|---|
| Lessee | 03- | 14 | Install new enclosed dock with truck well, drain, sump pump, and railing as per Lessee's plans and applicable codes. |
| Lessee | 03- | 15 | Relocate any utilities as required with truck dock addition.  Coordinate utilitiy relocation with Lessee's Construction Project Manager |
| Lessee | 03- | 16 | Remove one existing double man door at rear of building.  Fill opening with masonry block to match existing wall and paint interior and exterior to match existing. |
| Lessee | 03- | 17 | |
| Lessee | 03- | 18 | |
| Lessee | 04- | 1 | Storefront |
| Lessee | 04- | 2 | Windows to be free of cracks, water and wind-tight.  Replace all cracked, Broken or missing glass to match existing |
| Lessee | 04- | 3 | Provide and install new Stanley dark bronze ( trifold/telesscopic) automatic sliding doors electronic sensors, seals and sweeps.  (Contact Art Bullman @ 636-391-1508 for Dollar General National Account turnkey pricing.) |
| Lessee | 04- | 4 | Provide and install new Stanley dark bronze transom above new entry doors.  (Contact Art Bullman @ 636-391-1508) |
| Lessee | 04- | 5 | Provide and install glass in new Stanley doors and/or transom.  (Contact Art Bullman @ 636-391-1508) |
| Lessee | 04- | 6 | Store front signage and pole signage will be furnished and installed by Lessee subcontractor. |
| Lessee | 04- | 7 | |
| Lessee | 04- | 8 | |
| Lessee | 04- | 9 | |
| Lessee | 05- | 1 | Water and Gas Service |
| Lessee | 05- | 7 | |
| Lessee | 05- | 8 | |
| Lessee | 06- | 1 | Restrooms and Plumbing |
| Lessee | 06- | 6 | Demo existing restrooms including walls, ceilings, lights and restroom fixtures, removing and capping all existing plumbing and electrical that will not be utilized. (do not include dumpsters) |
| Lessee | 06- | 7 | Provide and install new restrooms to be in compliance with all applicable codes, ADA requirements and Lessee's plans.  Include all plumbing, plumbing fixtures, 30 gallon minimum water heater, hand rails, mirrors, door closers, etc.  (Do not include walls, ceilings, electrical, floors, floor slab work) |
| Lessee | 06- | 8 | Provide and install new restroom partitions |
| Lessee | 06- | 9 | Pump out existing grease trap |
| Lessee | 06- | 10 | Furnish and install grease trap as required by codes. |
| Lessee | 06- | 11 | Provide and install High/Low water fountain per applicable codes |
| Lessee | 06- | 12 | Install mop sink, provided by Dollar General.  (Do not include floor work for drain lines) |
| Lessee | 06- | 13 | Install mop holders above mop sink positioned to allow mops to drip into sink; holders to be provided by DG. |
| Lessee | 06- | 14 | Install diaper changing station in the female and male restrooms with adequate wall blocking; stations to be provided by DG. |
| Lessee | 06- | 15 | Install paper towel holders in restrooms and food preparation areas with wall blocking; to be provided by DG. |

Revised 2/3/05

|  | Section | | Description |
|---|---|---|---|
| Lessee | 06- | 16 | Install three-compartment sink in produce area; installation to be in compliance with all applicable codes; sink to be provided by DG |
| Lessee | 06- | 17 | Install hands free hand sink in produce area; sink to be provided by DG. (Do not include floor work for drain lines) |
| Lessee | 06- | 18 | Provide hose bibs at mop sink and food prep for chemical stations |
| Lessee | 06- | 19 | Install eye wash station and water line (provided by DG) |
| Lessee | 06- | 20 | Provide and install freeze proof wall hydrant for wash down at delivery door |
| Lessee | 06- | 21 | |
| Lessee | 06- | 22 | |
| Lessee | 06- | 23 | |
| Lessee | 06- | 24 | |
| Lessee | 06- | 25 | |
| Lessee | 07- | 1 | HVAC |
| Lessee | 07- | 6 | Provide and install new Carrier HVAC equipment of one ton per 400 sf.  HVAC system to be sufficient to heat and cool demised premises, as determined Carrier Corporation technician and Carrier new equipment report recommendation and Lessee requirements considering the wall and ceiling insulation and coolers contribution to the HVAC system. Equipment furnished shall be as per Lessee's specifications. No equipment shall be installed without the specific approval and direction of Lessee's construction Department. **(Carrier reports available from Dollar Generals project manager)  Order through Carrier National accounts for Dollar General Corporate pricing.  The Dollar General Carrier National Accounts phone number is 800-690-1081, Lorraine Smith** |
| Lessee | 07- | 7 | Remove and dispose of excess HVAC equipment (includes roof repair) |
| Lessee | 07- | 9 | Return air ducts and plenums to be located as directed by Lessee's construction department. |
| Lessee | 07- | 10 | Modify existing ductwork and remove existing unused ductwork as required by Lessee's floor plan modifications.  Diffuser locations must be approved by Lessee's construction department. |
| Lessee | 07- | 11 | Install new ductwork to include new security, office, restrooms and/or vestibule . |
| Lessee | 07- | 12 | Install four-wire, low flow, duct smoke detectors, if required for alarm/monitoring system and/or codes |
| Lessee | 07- | 13 | Clean and paint HVAC grills |
| Lessee | 07- | 14 | Provide and install new HVAC grills |
| Lessee | 07- | 15 | Ductwork and diffusers to be operational and in good state of repair. |
| Lessee | 07- | 16 | Provide and install new small HVAC unit in the new loading dock addition |
| Lessee | 07- | 17 | Install AC/DC duct detectors.  Detectors to be DC wired to Einstein unit by others. |
| Lessee | 07- | 18 | |
| Lessee | 08- | 1 | Electrical Service and Wiring |
| Lessee | 08- | 7 | Install new exterior dock lighting above receiving doors, and exit doors where none exist. |
| Lessee | 08- | 9 | Provide conduit from panel to canopy sign, 10/2 with ground wire size, and 20 amp breaker at panel. |
| Lessee | 08- | 10 | Demolish and cap all old, unsafe, excess and unused electrical wiring, floor plugs, timers and panel boxes. |

Revised 2/3/05

| | Section | | Description |
|---|---|---|---|
| Lessee | 08- | 11 | Demo existing light fixtures |
| Lessee | 08- | 12 | Replace existing lights to including the replacement of ballasts and lamps. |
| Lessee | 08- | 13 | Install contactor panel for store lights. Panel and contactors provided by Lesse. GC to contact Pete Sevens (770-331-2023) at CPC 7 days prior to date panel is required on site. |
| Lessee | 08- | 14 | Provide and install new T8 lighting with 4' bulbs, under new soffit at Lessees space, and continuing on at least to the Brick column where CVS space begins. Use Sylvania 3100 bulbs |
| Lessee | 08- | 15 | Provide new custom 4' light fixtures with Sylvania 3100 bulbs (Order T8 one tube fixture from CED Electric @ 800-599-1233) |
| Lessee | 08- | 16 | Provide new custom 8' light fixtures with Sylvania 3100 bulbs (Order T8 two tube fixture from CED Electric @ 800-599-1233) |
| Lessee | 08- | 17 | Install new 4' & 8' T8 light fixtures in sales area |
| Lessee | 08- | 18 | Install new 4' and 8' T8 light fixtures in stock room area |
| Lessee | 08- | 19 | Install new 4' and 8'  T8 light fixtures in office and rest room areas |
| Lessee | 08- | 20 | Provide new Emergency lights (Order fixtures from CED Electric @ 800-599-1233) |
| Lessee | 08- | 21 | Install new Emergency lights |
| Lessee | 08- | 22 | Provide new Emergency Exit/light Combo units (Order fixtures from CED Electric @ 800-599-1233) |
| Lessee | 08- | 23 | Install new Emergency/Exit light Combo units |
| Lessee | 08- | 24 | Provide new Emergency Exit sign (Order fixtures from CED Electric @ 800-599-1233) |
| Lessee | 08- | 25 | Install new Emergency Exit signs |
| Lessee | 08- | 26 | Provide new Double strut dock lights  (Order fixtures from CED Electric @ 800-599-1233) |
| Lessee | 08- | 27 | Install new double strut dock lights |
| Lessee | 08- | 28 | Provide new electrical circuits for double strut dock lights if none exist |
| Lessee | 08- | 29 | Provide and install buzzer at receiving door. |
| Lessee | 08- | 30 | Provide (6) Wire Mold plug steps, 5' with outlets 6" o/c. (2 for office and 2 for food prep area and 2 fore lamps) #V20GB506 (Order wire mold from CED Electric @ 800-599- |
| Lessee | 08- | 31 | Install hard wired wire mold plug strips.  (1 dedicated circuit and 2 plug strips for office and 1 circuit and 2 plug strips for food prep area, and 1 circuit and 2 plug mold strips on lamp gondola) |
| Lessee | 08- | 32 | Provide and install one dedicated circuit with one electrical receptacle in the office for CCTV system as per Lessees plans |
| Lessee | 08- | 33 | Provide and install one dedicated circuit with one electrical receptacle in the office for the cash register computer system; as per lessees plans |
| Lessee | 08- | 34 | Provide and install one dedicated circuit with one electrical receptacle in the office for the burglar alarm panel; as per lessees plans |
| Lessee | 08- | 35 | Provide and install one dedicated circuit to be hard wired to the fire alarm panel; as per lessees plans |
| Lessee | 08- | 36 | Provide and install one dedicated electrical receptacle for ice merchandiser; location as shown on plan. |

Revised 2/3/05

| | Section | | Description |
|---|---|---|---|
| Lessee | 08- | 37 | Provide and install (5) 24 ga, four-pair, Cat 5 phone wire home runs with RJ-11 phone jacks (note: office requires a double RJ11 Jack), from the Demarc location to the office, receiving area, produce prep, and checkout, and to the fire alarm panel box (hardwired). Blue and Blue & White for "Main" phone line. Orange and orange & White for "security 1 line" (Fire primary), and green and green & White for "security 2 line" Frire secondary). Lable all ends at Demarc. |
| Lessee | 08- | 38 | Provide and install one dedicated electrical circuit for phone Demarc mounted on a 4' X4' plywood surface where Dmarc will be installed in building |
| Lessee | 08- | 39 | Provide and install one dedicated electrical circuit for power pallet jack charging station. |
| Lessee | 08- | 40 | Provide and install bulb protectors in produce food preparation area. |
| Lessee | 08- | 41 | Provide and install one dedicated circuit and receptacle for floor scrubber and burnisher. |
| Lessee | 08- | 42 | Provide and install dedicated circuit for EZ Cart charger. |
| Lessee | 08- | 43 | Provide and install bath fan. |
| Lessee | 08- | 44 | Provide and install ceiling receptacle for CCTV monitor at lobby entry area. |
| Lessee | 08- | 45 | Provide electrical to bath fans in new rest rooms |
| Lessee | 08- | 46 | Provide and install (3) dedicated electrical circuits with painted conduit dropped to back of grocery end cap and receptacle face flush mounted to peg board 24" AFF. Final locations to be provided on Lessee's floor plans |
| Lessee | 08- | 47 | Provide and install switch to lights in new office or rest room |
| Lessee | 08- | 48 | Provide and install (2) dedicated electrical circuits with outlets located o the front wall of the produce area |
| Lessee | 08- | 49 | Electrical panels are to be labeled correctly and in legible print |
| Lessee | 08- | 50 | Provide and install (2) electrical receptacles for fly catchers |
| Lessee | 08- | 51 | Provide and install dedicated electrical circuit to new Stanley Automatic doors |
| Lessee | 08- | 52 | Provide and install dedicated circuit and outlet for exterior soda machine. Recess outlet in wall for flush mount at 48" AFF |
| Lessee | 08- | 53 | Provide & install 8 dedicated circuits with dedicated ground, and 4 standard dedicated circuits to the power poles. |
| Lessee | 08- | 54 | Install eight power poles for checkouts; power poles and the locations to be provided by DG. |
| Lessee | 08- | 55 | Provide and install one 80 amp 3ph breaker for 72" baler in the electrical panel. |
| Lessee | 08- | 56 | |
| Lessee | 08- | 57 | |
| Lessee | 08- | 58 | |
| Lessee | 09- | 1 | Ceilings |
| Lessee | 09- | 2 | Ceiling height to remain "as is." |
| Lessee | 09- | 3 | Demo existing ceiling tile (sf) |
| Lessee | 09- | 4 | Demo existing ceiling grid (sf) |
| Lessee | 09- | 6 | Install new ceiling grid or patch back damaged and demo grid areas (sf) |
| Lessee | 09- | 9 | Provide new ceiling tile for sales area, offices etc (sf) |
| Lessee | 09- | 10 | Install new ceiling tile (sf) |
| Lessee | 09- | 11 | Provide new washable ceiling tile in restrooms (sf) |
| Lessee | 09- | 12 | Reuse existing ceiling insulation above ceiling tile |
| Lessee | 09- | 13 | Paint open ceiling deck, ducts, joist, wiring etc (sf) |
| Lessee | 09- | 14 | |

Revised 2/3/05

| | Section | | Description |
|---|---|---|---|
| Lessee | 09- | 15 | |
| Lessee | 10- | | Interior Walls |
| Lessee | 10- | 2 | Demo interior walls per Lessees floor plan drawings |
| Lessee | 10- | 3 | Construct interior demising walls to the roof deck per all applicable codes, and per Lessees floor plan drawings. |
| Lessee | 10- | 4 | Provide sales floor in good condition, free of signs and graffiti. |
| Lessee | 10- | 5 | Construct interior walls with one layer of sheet rock both sides up to 12' height |
| Lessee | 10- | 6 | Construct interior fur out wall with one layer of sheet rock one sides up to 16' ceiling height |
| Lessee | 10- | 7 | Construct interior walls with one layer of sheet rock both sides up to 16' height |
| Lessee | 10- | 8 | Construct interior walls with one layer of sheet rock both sides up to 20' height |
| Lessee | 10- | 9 | Construct interior walls with one layer of sheet rock both sides over 20' height |
| Lessee | 10- | 10 | Additional layer of sheet rock required for fire rating for any of above walls (per sf) |
| Lessee | 10- | 11 | Construct interior fur-down wall on sales floor side of coolers from cooler face to ceiling/deck, and construct fur down above gravity feed rack as per Lessee's floor plan drawings and dimensions. (per lf up to 20' roof deck) |
| Lessee | 10- | 12 | Provide and install metal uprites and wire fencing from top of cooler to roof deck with two lockable gates, per LF |
| Lessee | 10- | 13 | Provide and install one-way security glass in 12"w X 12" h window in office door. |
| Lessee | 10- | 14 | Provide and install 25" counters with back splash in office as noted on Lessee plans |
| Lessee | 10- | 15 | Provide and install 3' X 16' of painted pegboard startign 8" above back splash in office as per Lessees plans |
| Lessee | 10- | 16 | Provide and install 3' 1' of painted shelf 7" above back splash in office as per Lessees plans for PA system |
| Lessee | 10- | 17 | Install stock room impact doors with steel door frames and frame reinforcing. Doors and frames provided by DG |
| Lessee | 10- | 18 | Provide and install new steel doors and frames for new office, rest rooms and other interior locations |
| Lessee | 10- | 19 | Construct 20" x 20" x ceiling height" box corners as per Lessee's floor plan drawings. |
| Lessee | 10- | 20 | Paint all doors and trim Sherwin Williams SW 200, SW 6115 Totally Tan - semi-gloss. (2 coats) per sf |
| Lessee | 10- | 21 | Paint sales floor side and rear walls and office from floor to ceiling With Sherwin Williams SW6148 Pro Mar 200 Wool Skein - semi-gloss finish. Paint upper sales floor front wall with the same above, and paint the lower 4' (wainscot) SW 6115 Totally Tan - semi-gloss finish. (2 coats ) per sf |
| Lessee | 10- | 22 | Paint sales floor columns from floor to ceiling With Sherwin Williams #6148 Pro Mar 200 Wool Skein - semi-gloss finish. (3 coats total including primer and paint) |
| Lessee | 10- | 23 | Paint stockroom walls from floor to ceiling with Sherwin Williams masonry semi-gloss paint, ProMar Wool Skein, gloss finish. 2 coats. Per sf |
| Lessee | 10- | 24 | Provide and install FRP panels on adjacent mop sink walls 8' high x 4' wide panels to match Sherwin Williams ProMar Wool Skein (per lf) |
| Lessee | 10- | 25 | Provide and install FRP panels 8' height in food prep area colored to match Sherwin Williams ProMar Wool Skein. per lf) |

Revised 2/3/05

| | Section | | Description |
|---|---|---|---|
| Lessee | 10- | 26 | Provide and install FRP panels full height in restrooms. FRP color to match Sherwin Williams ProMar Wool Skein. (per lf) |
| Lessee | 10- | 27 | Provide and install FRP panels full height in restroom hall. FRP color to match Sherwin Williams ProMar Wool Skein.  (per lf) |
| Lessee | 10- | 28 | Provide and install 2" x 12" board (painted black) at base of coolers as directed by DG. |
| Lessee | 10- | 29 | Install 2x12 on wall behind pallet racking at second tier level only at non-masonry wall locations. |
| Lessee | 10- | 30 | Provide and install 1/2" plywood on exposed cooler walls in stockroom area up to 4' high. (per LF) |
| Lessee | 10- | 31 | Provide and install diamond plate wall protection to 4' height on sales floor side of corridors and halls as per plans. |
| Lessee | 10- | 32 | Provide and Install (Black) Rigid 1/2 Moon # 2 McCue Wall Cart Bumpers as per Lessee's drawings. Order at Dollar General National account pricing - 800-_____ |
| Lessee | 10- | 33 | Provide and Install (Black) Rigid 2" Corner trim McCue where required. Order at Dollar General National account pricing - 800-_____ |
| Lessee | 10- | 34 | |
| Lessee | 10- | 35 | |
| Lessee | 11- | 2 | Floors |
| Lessee | 11- | 3 | Demo existing floor covering (per sf) |
| Lessee | 11- | 4 | Major floor repairs, ceramic tile, trench back fill and leveling (do not include standard floor prep and sanding)   Quarry tile removal |
| Lessee | 11- | 5 | Trench floors and back fill for floor drains as noted on plans for mop sink, floor scrubber area, food preparation area, condensation lines, coolers and produce cases; installations to be in compliance with all applicable codes |
| Lessee | 11- | 6 | Trench floors and back fill for floor drains for new or modified restrooms; installations to be in compliance with all applicable codes |
| Lessee | 11- | 7 | Cut floor slab and install insulated slab for coolers as per Lessee's drawings and dimensions. |
| Lessee | 11- | 8 | Prep floor for tile insulation. Fill, patch, level and sand floor |
| Lessee | 11- | 9 | Provide 1/8" floor tile , Armstrong Sand Drift # 51858. ( order at Dollar General /Armstrong National account 1800-442-4212) |
| Lessee | 11- | 10 | Install Armstrong floor tile. Per sf |
| Lessee | 11- | 11 | Provide and install black cove base in office, break room, restrooms, vestibule and exposed areas of sales floor. Per lf |
| Lessee | 11- | 12 | Furnish and install transition strips at doorways from tile to concrete surfaces. Per lf |
| Lessee | 11- | 13 | Clean and seal concrete floor in stockroom with Sherwin Williams silk chocolate epoxy and cooler area with Sherwin Williams 4026 slate gray epoxy. |
| Lessee | 11- | 14 | Provide 6' X 10' walk off mat.  Order through Mats Inc @ 301-424-9552 - or through Matworks, Larry Schwartz @ 603-429-2800 for Dollar General National account pricing - $700 includes trim pieces, tax, freight and handling |
| Lessee | 11- | 15 | Install walk of mat as shown on Lessee's floor plans.  Per installation |
| Lessee | 11- | 16 | Provide carpet tile as shown on Lessee's floor plans.  Order through Mats Inc @ 301-424-9552 or through Matworks, Larry Schwartz @ 603-429-2800 for Dollar General National account pricing $2.00 per SF includes carpet tiles plus trim, tax, freight and handling |
| Lessee | 11- | 17 | Install carpet tile as shown on Lessee's floor plans.  Per sf |

Revised 2/3/05

| | Section | | Description |
|---|---|---|---|
| Lessee | 11- | 18 | Provide/install bollards with floor flange to protect interior utilities etc. |
| Lessee | 11- | 19 | |
| Lessee | 11- | 20 | |
| Lessee | 12- | 1 | Sprinkler System |
| Lessee | 12- | 4 | Coordinate installation of monitored fire alarm system with DG and as required by all applicable codes. |
| Lessee | 12- | 5 | Modify existing sprinklers as required by all applicable codes. |
| Lessee | 12- | 6 | Provide, install and caulk sprinklers in coolers as required by all applicable codes. |
| Lessee | 12- | 7 | |
| Lessee | 12- | 8 | |
| Lessee | 13- | 1 | Coolers/freezers |
| Lessee | 13- | 2 | Furnish and install three 1/4" X 8' long X 4" C Channel for additional condenser support on roof. Contact DG refirgeration for installation directions. |
| Lessee | 13- | 3 | Verify existing compressor room fan vent and louver are in good operational order. |
| Lessee | 13- | 4 | Use existing electrical panel with thirty (30) 20amp breakers for cooler lighting and fans |
| Lessee | 13- | 5 | Use existing electrical fused disconnect in the mechanical room for cooler compressor rack |
| Lessee | 13- | 6 | |
| Lessee | 13- | 7 | |
| Lessee | 14- | 1 | Miscellaneous |
| Lessee | 14- | 2 | Contractor site visit |
| Lessee | 14- | 3 | Architectural fees. - actual cost |
| Lessee | 14- | 4 | Permitting fees. - actual cost |
| Lessee | 14- | 5 | Construction debris dumpsters - actual cost (demo, construction, and old fixtures) |
| Lessee | 14- | 5 | Construction debris dumpsters - actual cost (demo, construction, and old fixtures) |
| Lessee | 14- | 6 | Provide and install fire extinguishers in compliance with codes. |
| Lessee | 14- | 7 | Install pallet racking per plans, 10 " from the exterior wall, with shelves at 6' and 14' to bottom of structural tubing. (per section) |
| Lessee | 14- | 8 | Provide two copies of construction manual with completed project information, equipment information and sub-contractor information. |
| Lessee | 14- | 9 | General clean-up of premises, int/ext to be broom clean at turnover |
| Lessee | 14- | 10 | Provide and install 96" x 12" HD battery charging shelf above floor scrubbers. |
| Lessee | 14- | 11 | Install shopping cart railing in cart storage area as per plans; railing to be provided by DG. |
| Lessee | 14- | 12 | Provide, paint and Install Shopping Cart Floor angle side rails as per DG drawings. |
| Lessee | 14- | 13 | Install Coiled Steel End Cart Bumpers furnished by DG. |
| Lessee | 14- | 14 | Install corner guards as per plans and where required for condensation line protection; guards to be provided by DG |
| Lessee | 14- | 15 | Final Certificate of Occupancy |
| Lessee | 14- | 16 | Expense |
| Lessee | 14- | 17 | Lift Rental |
| | | | |
| | | | Prime walls |

Revised 2/3/05

|  | Section |  | Description |
|--|---------|--|-------------|
|  |  |  | Extra cost for doors |
|  |  |  | **Lessor Sub-Total** (does not include contractor OH&P) |
|  |  |  | **Lessee Sub-Total**  (does not include contractor OH&P) |
|  |  |  | **Grand Total**  (does not include contractor OH&P) |

Revised 2/3/05

LOCATION: _Clarksville Crossing, Clarksville, Va_



**DOLLAR GENERAL Market**

7'-0 1/2" X 14'-0" Cabinet • Pan Formed and Embossed Solar Grade Lexan™ Face

- Scale: 1/2 inch = 1 foot
- Cabinet Size 7'-0 1/2" X 14'-0"
- V.O.I.-6' X 10'-7 1/2"

- Molding: 2 1/4" Molding Painted "Dollar General" Red
- Sign Face: Solar Grade Lexan™
- Embossing: Dollar General Standard 3/4" Market all Faces, Standard 1/2"

- Dimensions: Black Solar General® red "Market" with black outline, black "TM" on coated yellow background
- Color Specs: Black = Red: 7745 195  Yellow Lexan® B 914 Yellow (#414)
- Illumination: Must Be Lied With Lamps

**LANDLORD APPROVAL**

Date: _11/29/05_

Signature: _Kamin Realty Co._

LOCATION: _Clarksville Crossing, Clarksville, Va._

Sign Weight: 2,000 lbs.
AMPS: 11.4 (Electronic)

**DOLLAR GENERAL Market**

7'-0" X 33'-6" Cabinet • Pan Formed and Embossed Solar Grade™ Faces



11 3/4" FL.

35'-6"

9'-6"

24'-0"

7'-0"

• Scale: 1/2 inch = 1 foot

• Cabinet Size: 7 feet 0 inch X 33 feet 6 inch (78 inch deep)

• Trim Size: 6 feet 10 1/4 inches X 33 feet 5 1/4 inch and 8 feet 10 1/4 inches X 24 feet 0 5/8 inch

• Wide: 8 feet 6 inches X 33 feet 2 inch

• Molding: 1F • Molding 2" overall
Painted "Dollar General" Red

• Sign Faces: Two (2) Solar Grade Lexan™
Faces Bolt Jointed at front

• Embossing: Dollar General standard 1/2"
blasted red letters, standard 1/2"

• Description: Black "Dollar General®", red "Market" with black outline, black T.M. on overall yellow background.

• Color Specs:   Black:
Red: PMS 185
Yellow: Lamp # 814 Yellow (0414)

• Illumination: Must Be Cool White Lamps

## LANDLORD APPROVAL

Date: _11/29/05_

Signature: _Paul Kamin Realty Co._

 **Dollar General Corporation**

# UTILITY INFORMATION SHEET

Per your Lease, this Exhibit E is to be completed and submitted before execution of the Lease or the Lessee Possession Date (new construction). We will contact the utility companies and request the accounts/meters to be transferred into Lessee's name once Lessee accepts possession of the Demised Premise AND receives this completed Exhibit E. Please list below which utility companies, account numbers and meter numbers service the address of the new or existing store.

**Utilities will not be transferred without the submission and completion of this Exhibit E.**

If Lessor is not providing a demised meter, please indicate. Lessee will only transfer demised meters into Lessee's name.

Date:_____     Store #_____

Landlord Contact Name: _____ LL Phone #: _____

LL FAX#:_____   Whose name is currently on this account? _____

If different, what is the name of the previous tenant at this location?:
_____

Address of Store (as complete as possible -- 911 verified if possible):

_____

City: _____ State: _____
Zip:_____

|  | Meter # DG should get placed in our name | Account # that should be placed in DG's name | Name of utility company that services this location | Utility's Phone # |
|---|---|---|---|---|
| **Electric:** |  |  |  | (\_\_\_) \_\_\_-\_ |
| **Gas:** (when app ~ if _not_ serviced by gas, _please_ indicate.): |  |  |  | (\_\_\_) \_\_\_-\_ |
| **Water/Sewer:** |  |  |  | (\_\_\_) \_\_\_-\_ |

- Explain why utility meter/account number is blank -- (example ~ not installed yet)

If Demised Premises is an existing building, this exhibit must be completed and attached to the Lease prior to execution. If the utility meters will be changing, please list that on the form (example – no gas but it will be added before possession date).

If Demised Premises is new construction, this exhibit must be completed prior to the Lessee Possession Date and faxed to 615/855-4635.

Completion of this form helps ensure that utilities are properly placed in Dollar General's name and out of the landlord's name (except billed by center) or the previous tenant's name.

EXHIBIT "E"

25

LASALLE BANK NATIONAL ASSOCIATION, IN ITS CAPACITY AS TRUSTEE FOR
THE REGISTERED HOLDERS OF LB COMMERCIAL MORTGAGE TRUST 1998-C4,
COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1998-C4
(Lender)

and

DOLGENCORP, INC.
(Tenant)

SUBORDINATION, NON-DISTURBANCE AND
ATTORNMENT AGREEMENT

Dated: _____, 2005

Location:  916 Virginia Avenue, Clarksville, Virginia  23927

UPON RECORDATION
RETURN TO:

Merri H. McCoy, Esq.
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201

014728.0027 WEST 5832319 v2

## SUBORDINATION, NONDISTURBANCE AND ATTORNMENT AGREEMENT

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT (the "Agreement") is made as of the ____ day _____, 2005, by and between **LASALLE BANK NATIONAL ASSOCIATION, IN ITS CAPACITY AS TRUSTEE FOR THE REGISTERED HOLDERS OF LB COMMERCIAL MORTGAGE TRUST 1998-C4, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1998-C4,** having an address c/o Wachovia Bank, N.A., Real Estate & Financial Services Investment Banking, 8739 Research Drive, URP4 NC 1075, Charlotte, North Carolina 28262-1075 ("Lender") and **DOLGENCORP, INC.,** a _____ corporation, having an address at 100 Mission Ridge, Goodlettsville, Tennessee 37072 ("Tenant").

RECITALS:

A.      Tenant is the holder of a leasehold estate in a portion of the property known as Clarksville Crossing, located at 916 Virginia Avenue, Clarksville, Virginia 23927, as more particularly described on Exhibit A (the "Property") under and pursuant to the provisions of a certain lease dated as of November 18, 2005 between Daniel G. Kamin Clarksville Crossing, LLC, a limited liability company, as landlord ("Landlord") and Tenant (as amended through the date hereof, the "Lease").

B.      The Property is encumbered by a Deed of Trust and Security Agreement (the "Security Instrument") from Landlord in favor of Lender's predecessor-in-interest, Holliday Fenoglio Fowler, L.P. ("Original Lender"), and is recorded in Book 556, Page 343, of the official public records of Mecklenburg County, Virginia.

C.      Lender is the current holder and owner of the loan secured by the Security Instrument.

D.      Tenant has agreed to subordinate the Lease to the Security Instrument and to the lien thereof and Lender has agreed to grant non-disturbance to Tenant under the Lease on the terms and conditions hereinafter set forth.

AGREEMENT:

NOW, THEREFORE, the parties hereto mutually agree as follows:

1.      Subordination. The Lease shall be subject and subordinate in all respects to the lien and terms of the Security Instrument, to any and all advances to be made thereunder and to all renewals, modifications, consolidations, replacements and extensions thereof.

2.      Nondisturbance. So long as Tenant pays all rents and other charges as specified in the Lease and is not otherwise in default (beyond applicable notice and cure periods) of any of its obligations and covenants pursuant to the Lease, Lender agrees for itself and its successors in interest and for any other person acquiring title to the Property through a foreclosure (an "Acquiring Party"), that Tenant's possession of the premises as described in the Lease will not be disturbed during the term of the Lease, as said term may be extended pursuant to the terms of the Lease or as said premises may be expanded as specified in the Lease, by reason of a

014728.0027 WEST 5832319 v2                                    2

foreclosure. For purposes of this agreement, a "foreclosure" shall include (but not be limited to) a sheriff's or trustee's sale under the power of sale contained' in the Security Instrument, the termination of any superior lease of the Property and any other transfer of the Landlord's interest in the Property under peril of foreclosure, including, without limitation to the generality of the foregoing, an assignment or sale in lieu of foreclosure.

3.    <u>Attornment</u>.  Tenant agrees to attorn to, accept and recognize any Acquiring Party as the landlord under the Lease pursuant to the provisions expressly set forth therein for the then remaining balance of the term of the Lease, and any extensions thereof as made pursuant to the Lease. The foregoing provision shall be self-operative and shall not require the execution of any further instrument or agreement by Tenant as a condition to its effectiveness.  Tenant agrees, however, to execute and deliver, at any time and from time to time, upon the request of the Lender or any Acquiring Party any reasonable instrument which may be necessary or appropriate to evidence such attornment

4.    <u>No Liability</u>.  Notwithstanding anything to the contrary contained herein or in the Lease, it is specifically understood and agreed that neither the Lender, any receiver nor any Acquiring Party shall be:

(a)    liable for any act, omission, negligence or default of any prior landlord (other than to cure defaults of a continuing nature with respect to the maintenance or repair of the demised premises or the Property); provided, however, that any Acquiring Party shall be liable and responsible for the performance of all covenants and obligations of landlord under the Lease accruing from and after the date that it takes title to the Property; or

(b)    except as set forth in (a), above, liable for any failure of any prior landlord to construct any improvements;

(c)    subject to any offsets, credits, claims or defenses which Tenant might have against any prior landlord; or

(d)    bound by any rent or additional rent which is payable on a monthly basis and which Tenant might have paid for more than one (1) month in advance to any prior landlord; or

(e)    be liable to Tenant hereunder or under the terms of the Lease beyond its interest in the Property.

Notwithstanding the foregoing, Tenant reserves its rights to any and all claims or causes of action against such prior landlord for prior losses or damages and against the successor landlord for all losses or damages arising from and after the date that such successor landlord takes title to the Property.

5.    <u>Rent</u>.  Tenant has notice that the Lease and the rents and all other sums due thereunder have been assigned to Lender as security for the loan secured by the Security Instrument. In the event Lender notifies Tenant of the occurrence of a default under the Security Instrument and demands that Tenant pay its rents and all other sums due or to become due under the Lease directly to Lender, Tenant shall honor such demand and pay its rent and all other sums

due under the Lease directly to Lender or as otherwise authorized in writing by Lender. Landlord hereby irrevocably authorizes Tenant to make the foregoing payments to Lender upon such notice and demand.

6.    Lender to Receive Notices.    Tenant shall notify Lender of any default by Landlord under the Lease which would entitle Tenant to cancel the Lease, and agrees that, notwithstanding any provisions of the Lease to the contrary, no notice of cancellation thereof shall be effective unless Lender shall have received notice of default giving rise to such cancellation and shall have failed within sixty (60) days after receipt of such notice to cure such default, or if such default cannot be cured within sixty (60) days, shall have failed within sixty (60) days after receipt of such notice to commence and thereafter diligently pursue any action necessary to cure such default.

7.    NOTICES.    All notices or other written communications hereunder shall be deemed to have been properly given (i) upon delivery, if delivered in person with receipt acknowledged by the recipient thereof; (ii) one (1) Business Day (hereinafter defined) after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, addressed to the receiving party at its address set forth above, and:

| | |
|---|---|
| if to Tenant, to: | Dolgencorp, Inc.<br>100 Mission Ridge<br>Goodlettsville, TN  37072<br>Attn:  Real Estate Director |
| with a copy to: | Dolgencorp, Inc.<br>100 Mission Ridge<br>Goodlettsville, TN  37072<br>Attn:  General Counsel |
| if to Lender: | LaSalle Bank National Association, in its capacity as Trustee for the Registered Holders of LB Commercial Mortgage Trust 1998-C4, Commercial Mortgage Pass-Through Certificates, Series 1998-C4<br>c/o Wachovia Bank N.A.<br>Real Estate & Financial Services Investment Banking<br>8739 Research Drive<br>URP4 NC 1075<br>Charlotte, North Carolina<br>Ref. Loan No. M180000657 |

or addressed as such party may from time to time designate by written notice to the other parties. For purposes of this Paragraph 7, the term "Business Day " shall mean any day other than Saturday, Sunday or any other day on which banks are required or authorized to close in New York, New York.

014728.0027 WEST 5832319 v2                                    4

Either party by notice to the other may designate additional or different addresses for subsequent notices or communications.

      8.    <u>Successors</u>.  The obligations and rights of the parties pursuant to this Agreement shall bind and inure to the benefit of the successors, assigns, heirs and legal representatives of the respective parties.  In addition, Tenant acknowledges that all references herein to Landlord shall mean the owner of the landlord's interest in the Lease, even if said owner shall be different than the Landlord named in the Recitals.

      9.    <u>Duplicate Originals; Counterparts</u>.  This Agreement may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original.  This Agreement may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Agreement.  The failure of any party hereto to execute this Agreement, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

**(The balance of this page is blank.)**

014728.0027 WEST 5832319 v2                5

IN WITNESS WHEREOF, Lender and Tenant have duly executed this Agreement as of the date first above written.

LENDER:

**LASALLE BANK NATIONAL ASSOCIATION, IN ITS CAPACITY AS TRUSTEE FOR THE REGISTERED HOLDERS OF LB COMMERCIAL MORTGAGE TRUST 1998-C4, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1998-C4**

By: _____

Name:
Title:

STATE OF FLORIDA           §
                                     §

COUNTY OF MIAMI-DADE      §

BEFORE ME, a Notary Public in and for said County and State, on the date below, personally appeared _____, as _____ of LNR Partners, Inc., a Florida corporation, as Special Servicer of **LASALLE BANK NATIONAL ASSOCIATION, IN ITS CAPACITY AS TRUSTEE FOR THE REGISTERED HOLDERS OF LB COMMERCIAL MORTGAGE TRUST 1998-C4, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1998-C4**, acting on behalf of the corporation and acknowledged that he/she executed the foregoing instrument on behalf of said corporation.

Said person ( ) is personally known to me or ( ) has produced a driver's license issued by _____, a State of the United States, which is either current or has been issued within the past five (5) years and bears a serial or other identifying number.

IN WITNESS WHEREOF, I have affixed my notary seal this _____ day of _____, 2005.

_____

Signature of Notary Public

_____

Printed Name of Notary Public

[Notary Seal]

My Commission expires:_____

014728.0027 WEST 5832319 v2

TENANT:

DOLGENCORP, INC.

By: _____
    Name:
    Title:

STATE OF TENNESSEE    )
                      ) SS
COUNTY OF DAVIDSON    )

On this the ____ day of _____, 2005, before me, the undersigned, personally appeared _____ of Dolgencorp, Inc., and that he as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of corporation by himself as Executive Vice President.

IN WITNESS WHEREOF, I hereunto have set my hand and official seal.

_____
Notary Public

My Commission Expires:_____

014728.0027 WEST 5832319 v2

CVS

<table>
<tr><td>RESTRICTIVE<br>COVENANT</td><td>ARTICLE 19. Landlord warrants and represents to Tenant that:</td></tr>
</table>

(i)   Landlord has not leased any space in the shopping center to any other person, corporation, partnership or business entity for use as a drug store, health and beauty aid store or for the operation of a pharmacy;

(ii)  Landlord will not hereafter lease any space in the shopping center for use as a drugstore, health and beauty aid store or operation of a pharmacy; and

(iii) Landlord will not permit any tenant or occupant in the shopping center to operate a drugstore, health and beauty aid store or pharmacy.

Tenant shall have the right to enforce the provisions of this Article by cancellation of this Lease or appropriate injunctive or other equitable relief in addition to any and all remedies at law.

EXHIBIT G

SUBWAY
SECTION THIRTY
COMPETITION

        Excluding existing Tenant's, Landlord agrees not to sell, lease,
let, use or permit to be used, any property owned or controlled by it
within the center now or at any time during the period of this Lease or
any extension to any restaurant having a menu consisting of more than
33% of sub-style sandwiches.  Further, Landlord agrees that the
aforementioned restrictive covenant shall apply to any and all existing
Tenants' menu modifications, unless such Tenant's have use clauses that
allow such activity.

EXHIBIT G