UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| WINN-DIXIE STORES, INC. et al., | : | Case No. 05-03817-3F1 |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**LIMITED OBJECTION OF WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION AND VAL T. ORTON, AS TRUSTEES, TO DEBTORS' MOTION FOR ORDER (A) AUTHORIZING THE SALE OF ADDITIONAL STORES AND RELATED EQUIPMENT FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF LEASES OR ALTERNATIVELY, THE REJECTION OF LEASES AND ESTABLISHING A CLAIMS BAR DATE AND (C) GRANTING RELATED RELIEF**
**(the "Store 124 Lease").**

COMES NOW WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, successor by merger to First Security Bank, National Association, and VAL T. ORTON, as Trustees under that certain Indenture dated August 26, 2006 (collectively referred to as the "Trustee"), by and through its undersigned attorneys, and hereby files this Limited Objection Of Wells Fargo Bank Northwest, National Association and Val T. Orton, as Trustees, to Debtors' Motion For Order (A) Authorizing the Sale of Additional Stores and Related Equipment Free and Clear of Liens, Claims and Interests (B) Authorizing the Assumption and Assignment of Leases or Alternatively, the Rejection of Leases and Establishing a Claims Bar Date and (C) Granting Related Relief (the "Limited Objection"), and states as follows:

**Background and Standing to Assert Limited Objection**

1.      On August 3, 2006, the Debtors filed Debtors' Motion For Order (A) Authorizing the Sale of Additional Stores and Related Equipment Free and Clear of Liens, Claims and

Interests (B) Authorizing the Assumption and Assignment of Leases or Alternatively, the Rejection of Leases and Establishing a Claims Bar Date and (C) Granting Related Relief (the "Additional Store Sale Motion").

2.      The Additional Store Sale Motion seeks approval to sell certain of the Debtors' assets, and in connection therewith, to assume and assign certain commercial leases between the Debtors and various landlords, including a lease between Winn-Dixie Stores, Inc. ("WD"), as tenant, and Tallahassee FL-99, LLC ("Tallahassee 99"), as landlord, pursuant to which WD currently operates Winn-Dixie Store No. 124 in Tallahassee, Leon County, Florida (the "Store 124 Lease").

3.      The Trustee holds that certain Assignment of Lease and Agreement dated August 26, 1999, in which Tallahassee 99 assigns the Store 124 Lease to the Trustee (the "Assignment of Lease"). A true and correct copy of the Assignment of Leases is attached hereto as Exhibit "A". The Assignment of Lease provides, among other things, that the Trustee has the power to "do any an all things whatsoever which Assignor or and lessor is or may be entitled to do."

4.      Pursuant to the Assignment of Lease, the Trustee has standing to assert this Limited Objection. Additionally, as of the date of this Limited Objection, Tallahassee 99 has not filed an objection to the Additional Store Sale Motion, and it is necessary for the Trustee to do so to protect and maintain its security interests.

## The Limited Objection

5.      The Sale Motion recites that "[l]landlords who dispute the cure amount for their lease are required to file with the Court and serve on the Debtors an objection to this Motion on or before August 23, 2006." Because the cure claim asserted with respect to the Store 124 Lease is understated in the Additional Store Sale Motion, the Trustee is filing this Limited Objection.

6.      Prior to the assumption and assignment of the Store 124 Lease, the pro-rated portion of real estate taxes owed for the calendar year 2006 as of the assumption and assignment date should be paid to the Trustee pursuant to its security interest in the same.  Alternatively, the purchaser of the lease should be required to assume the obligation to pay all accrued obligations under the Store 124 Lease, including the 2006 calendar year taxes.

7.      Finally, although base rent has been paid through August 30, 2006, any other amounts owing as of the assumption and assignment date have to be paid prior to the assumption and assignment of the Store 124 Lease.

WHEREFORE, the Trustee respectfully requests that the Court conduct a hearing with respect to the proper cure claim amount with respect to the Store 124 Lease, sustain this Limited Objection in full, and grant such other and further relief it deems appropriate.

_____
Zachary J. Bancroft
Florida Bar No. 0145068
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
450 S. Orange Avenue, Suite 800 (32801)
Post Office Box 2809
Orlando, Florida 32802-2809
Telephone:  (407) 843-4600
Facsimile:  (407) 843-4444
Attorneys for the Trustee

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing has been served via the CM/ECF system, and also via U.S. Mail, and email (if an email address is indicated in connection with a party on the service list) this __**23**__ day of August, 2006, to those parties listed on the service list below

Zachary J. Bancroft

<u>SERVICE LIST</u>

D.J. Baker
Sally McDonald Henry
Rosalie Walker Gray
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York  10036
Email:  djbaker@skadden.com

Stephen D. Busey
James H. Post
Cynthia C. Jackson
Smith, Hulsy & Busey
225 Water Street, Suite 1800
Jacksonville, Florida  32202
Email:  cjackson@smithhulsey.com

Kenneth C. Meeker
Assistant U.S. Trustree
135 West Central Blvd.
Room 620
Orlando, Florida  32801

979193\2                                          4

ASSIGNMENT OF LEASE AND AGREEMENT, dated as of August 26, 1999 (as amended, modified or supplemented from time to time, this "Agreement"), from TALLAHASSEE 99-FL, LLC, a Delaware limited liability company ("Assignor"), having an address at c/o Principal Net Lease Investors, L.L.C., 711 High Street, Des Moines, Iowa 50392-0301, Attention: Gary Lines to FIRST SECURITY BANK, NATIONAL ASSOCIATION and VAL T. ORTON, individually (together being referred to herein, together with their respective successors and assigns, as "Assignee"), as trustees, each having an address at 79 South Main Street, Salt Lake City, Utah 84111.

To finance a portion of the cost to Assignor of acquiring a fee simple interest in the parcel of land described in Schedule A hereto (the "Land Parcel"), together with the improvements located thereon (the Land Parcel, together with the improvements located and to be located thereon, being referred to herein as the "Property"), Assignor, simultaneously with the execution and delivery hereof, is borrowing certain funds, such borrowing being evidenced by its 7.57% Secured Notes due June 1, 2019 (together with Expansion Notes (as defined in the Mortgage referred to below), issued by Assignor and any note or notes issued in exchange or replacement therefor pursuant to the Indenture referred to below, the "Notes"). The Notes are secured by a mortgage, deed of trust, or deed to secure debt, dated as of the date hereof (the "Mortgage"), from Assignor to Assignee, as trustee under the Indenture, dated as of the date hereof (the "Indenture"), between Owner and such trustee, for the benefit of the registered owners of the Notes (the "Note Holders"). The Mortgage creates a lien on Assignor's interest in the Property. The Property has been leased by Assignor to WINN-DIXIE STORES, INC., a Florida corporation ("Lessee"), under a Lease, dated as of the date hereof (together with all supplements and amendments thereto, and any memorandum or short form thereof entered into for the purpose of recording, registration or filing, the "Lease"), between Assignor, as lessor, and Lessee, as lessee. As additional security for the Notes, and in order to induce the purchasers of the Notes to purchase the Notes and to induce Assignee to accept the Mortgage, Assignor is entering into the undertakings herein set forth with Assignee and is assigning the Lease to Assignee.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor agrees as follows:

1.    Assignor, in furtherance of the covenants of the Mortgage and as security for the payment of the principal of, Make Whole Amount (as defined in the Mortgage), and interest and all other sums payable on the Notes, and of all other sums payable under the Mortgage and under the Indenture, and as security for the performance and observance of the provisions thereof, has assigned, transferred, conveyed and set over, and by these presents does assign, transfer, convey and set over to Assignee, all of Assignor's estate, right, title and interest in, to and under the Lease, together with all rights, powers, privileges, options and other benefits of Assignor as lessor under the Lease, including, but not by way of limitation, (i) the immediate and continuing right to receive and collect all

Store #0124, Tallahassee,
Leon, County, Florida

EXHIBIT
"A"

tabbies

rents, income, revenues, issues, profits, insurance proceeds, condemnation awards, moneys and security receivable by Assignor under the Lease or pursuant to any of the provisions thereof, whether as rents or as the purchase price of Assignor's interest in the Property or otherwise (except sums payable directly to any person other than the lessor thereunder), subject to the rights of Lessee under the Lease, (ii) the right to accept or reject any offer by Lessee to purchase the Property, or any part thereof, or any award payable to Assignor in connection with a taking thereof, (iii) the right and power (which right and power are coupled with an interest) to execute and deliver, as agent and attorney-in-fact of Assignor, an appropriate deed or other instrument necessary to convey to Lessee Assignor's interest in the Property, any part thereof or any insurance proceeds or award payable to Assignor in connection with a casualty or taking thereof if Lessee becomes obligated to purchase Assignor's interest in the Property, any part thereof or any insurance proceeds or award payable to Assignor in connection with a casualty or taking thereof or exercises its Substitution Option pursuant to paragraph 11 of the Lease, (iv) the right to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any substitution purchase and conveyance referred to in clause (iii) above, (v) the right to make all waivers and agreements, (vi) the right to give all notices, consents and releases, (vii) the right to give all notices of default and to take any legal action upon the happening of a default under the Lease, including the commencement, conduct and consummation of proceedings at law or in equity as shall be permitted under any provision of the Lease or by law or in equity (including, without limitation, the right to pursue and collect any claim in a bankruptcy or other insolvency proceeding involving Lessee) and (viii) the right to do any and all other things whatsoever which Assignor or any lessor is or may be entitled to do under the Lease.

2.      While the assignment made in this Agreement is present, direct, exclusive and continuing, it has been made for the purpose of providing security to Assignee for the performance of Assignor's obligations under the Notes, the Mortgage and the Indenture and the execution and delivery hereof shall not in any way impair or diminish the obligations of Assignor under the provisions of the Lease nor shall any of the obligations contained in the Lease be imposed upon Assignee. Upon the due payment of the principal of and Make Whole Amount, if any, and all accrued interest on the Notes and of all other sums payable under the Mortgage and the Indenture, said assignment and all rights herein assigned to Assignee shall cease and terminate and all the estate, right, title and interest of Assignor in and to the above-described assigned property shall revert to Assignor, and Assignee shall, at the request and expense of Assignor, deliver to Assignor an instrument in recordable form canceling this Agreement and reassigning to Assignor the above-described assigned property.

3.      Assignor hereby designates Assignee to receive all payments of Rent and Additional Monetary Obligations (as each such term is defined in the Lease), purchase prices and other sums payable to the lessor under the Lease (except sums payable directly to any person other than the lessor thereunder) and to receive duplicate original copies of all notices, undertakings, demands, statements, documents, financial statements and other

communications which Lessee is required or permitted to give, make, deliver to or serve upon the lessor under the Lease. Assignor hereby directs Lessee to deliver to Assignee, at its address set forth above or at such other address as Assignee shall designate, (a) all such payments and sums and (b) duplicate original copies of all such notices, undertakings, demands, statements, documents and other communications. No delivery of the items referred to in clause (b) above by Lessee shall be of any force or effect unless made to Assignor and also made to Assignee, as herein provided.

4.    Assignor represents and warrants to Assignee that Assignor has not executed any other assignment of the subject matter of this Assignment other than the Mortgage and the Indenture and that the Lease is in full effect and that no event of default has occurred thereunder and that Assignor has no knowledge of the occurrence of any default thereunder.

5.    Assignor agrees that the assignment made herein and the designation and direction to Lessee hereinabove set forth are irrevocable, and that it will not take any action as lessor under the Lease or otherwise which is inconsistent with said assignment, or make any other assignment, designation or direction inconsistent therewith, and that any assignment, designation or direction inconsistent therewith shall be void. Assignor will, from time to time upon the request of Assignee execute all instruments of further assurance and all such supplemental instruments with respect to this Agreement as Assignee may reasonably specify.

6.    Assignor hereby agrees, and hereby undertakes to obtain the agreements of Lessee to the following matters (capitalized terms used in this paragraph and not previously defined shall have the meanings specified in paragraph 6(h)), which undertaking shall be deemed satisfied by Lessee's execution and delivery of the consent form at the foot of this Agreement:

(a)    Lessee consents to the provisions of this Agreement, acknowledges that the indemnities provided for in Sections 20 and 21 of the Lease run for the benefit of Assignee as well as Assignor. Lessee agrees to pay and deliver to Assignee all rentals and other sums assigned to Assignee pursuant to this Agreement, without offset, deduction, defense, deferment, abatement or diminution, subject to the provisions of the Lease, and will not, for any reason whatsoever, seek to recover from Assignee any moneys paid to Assignee by virtue of this Agreement. Lessee certifies to Assignee that Lessee's obligations to pay rent under the Lease are in effect, that Lessee has no defenses to the payment of rent under the Lease, and that Lessee has an obligation to pay rent under the Lease. Assignor hereby instructs Lessee to pay, and Lessee acknowledges such instruction and agrees that it shall pay, all sums due and payable under the Lease directly to Assignee in lawful money of the United States by bank wire transfer of immediately available funds on each date on which such sums are due and payable, in accordance with the following Funds transfer instructions, accompanied by sufficient information to identify the source and application of such funds, or in accordance with such other instructions as

may be specified by Assignee by written notice received by Lessee at the address and in the manner provided in the Lease, at least three (3) Business Days prior to the date on which such instructions are to become effective:

First Security Bank, National Association
Attn: Corporate Trust Services
Reference: Winn-Dixie 1999 Spinoff-A Transaction
ABA # 124-000-012
Acct. # 0510922115

Lessee further agrees to deliver to Assignee duplicate original copies of all notices, financial statements and other instruments which it may deliver pursuant to the Lease. No payment made by Lessee or delivery of a copy of any such notice or instrument shall be of any force or effect unless actually received by Assignee.

(b)     Assignor and Lessee will not enter into any agreement subordinating, amending, modifying or terminating (except as provided in the Lease and permitted by the terms of the Mortgage) the Lease without the consent thereto in writing of Assignee and any such attempted subordination, amendment, modification or termination without such consent shall be void; provided, however, that Lessee will be entitled to subordinate its interest in the Lease to the interest of assignees of the Mortgage pursuant to paragraphs 8(f) or 28(e) of the Lease, and Assignee will consent to the subordination as provided in paragraph 8(f) of the Lease. In the event that the Lease shall be amended as herein permitted, the Lease as so amended shall continue to be subject to the provisions of this Agreement without the necessity of any further act by any of the parties hereto. Lessee will remain obligated under the Lease in accordance with its terms, and will not take any action to terminate (except as expressly permitted by the Lease), rescind or avoid the Lease, notwithstanding any action with respect to the Lease which may be taken by an assignee or receiver of Assignor or of any such assignee or by any court in any such proceeding. Upon any rejection of the Lease by a debtor or by a trustee in bankruptcy (or other similar official) of any debtor owning the interest of lessor under the Lease, Lessee agrees that it will, to the extent it lawfully may, affirmatively elect to continue the Lease, and will execute and deliver to Assignee any instrument or agreement required therefor, and Lessee hereby, to the extent it lawfully may, waives any and all rights it may have under the U.S. Bankruptcy Code to treat the Lease as terminated following any such rejection.

(c)     If, pursuant to the Lease, Lessee shall offer to purchase the Property (or any insurance proceeds or award payable in connection with a casualty or taking thereof), notice of acceptance or rejection of any such offer shall be deemed validly given for all purposes if given by Assignee as permitted by paragraph 1(ii) hereof and notice by Assignor of rejection of any such offer shall be void unless accompanied by the written consent of Assignee and no such offer shall be deemed rejected by Assignor without the written consent of Assignee. If Lessee shall become obligated to purchase the Property (or any insurance proceeds or award payable in connection with a casualty or taking

thereof) pursuant to any provision of the Lease, Lessee will promptly upon tender of delivery thereof, accept a deed and other instruments conveying and transferring the Property (or any insurance proceeds or award payable in connection with a casualty or taking thereof) or exercise a Substitution Option which are executed and delivered by Assignee as attorney-in-fact of Assignor as being in compliance with the provisions of the Lease, provided that said deed and other instruments shall otherwise be in compliance with the provisions of the Lease. If it should become necessary for Assignee or any other party to institute any foreclosure or other judicial proceeding in order that title to the Property (or any insurance proceeds or award payable in connection with a casualty or taking thereof) may be conveyed to Lessee, the time within which delivery of the deed or other instruments relating to such conveyance may be made shall be extended to the extent necessary to permit Assignee or such other party to institute and conclude such foreclosure or other judicial proceeding, and the Lease shall not terminate, but shall continue in full effect until the conveyance and purchase shall have been consummated.

    (d)    Lessee shall deliver to Assignee:

    1.    within 45 days after the end of each of the first three fiscal quarters, a copy of Form 10Q as filed with the Securities and Exchange Commission (the "SEC") for such quarter for Lessee and its consolidated Subsidiaries;

    2.    (A) within 90 days after the end of Lessee's fiscal year, a copy of the annual report on Form 10K for Lessee and its consolidated Subsidiaries as filed with the SEC for such fiscal year; and

    3.    with reasonable promptness, such additional information regarding the business affairs and financial condition of Lessee as Assignee or any Note Holder may reasonably request.

    If Lessee is not required to file quarterly or annual reports with the SEC, then Lessee (a) on a quarterly basis, within 45 days after the end of each fiscal quarter of Lessee, deliver to Landlord a balance sheet, income statement and statement of cash flows; and (b) on an annual basis, within 90 days after the end of Lessee's fiscal year, deliver to Landlord an annual audit and audit report prepared by nationally recognized independent auditors.

    (e)    All financial statements shall be accompanied by a certificate signed by the chief financial officer, controller or assistant chief financial officer of Lessee (a duplicate original of which shall be sent concurrently to Assignor) stating that (i) no default or Event of Default under the Lease has occurred and is continuing or, if any default or

Event of Default under the Lease has occurred, specifying the nature and the period of existence thereof and what action Lessee has taken or is taking with respect thereto; (ii) no default or Event of Default under the Lease has occurred since the delivery of the immediately preceding certificate of Lessee delivered pursuant to this paragraph or, if any default or Event of Default under the Lease has occurred, specifying the nature and the period of existence thereof and what action Lessee has taken or is taking with respect thereto, and (iii) except as otherwise stated, that Lessee has fulfilled all its obligations under the Lease.

(f)    Lessee will (i) keep adequate records and books of account reflecting all its financial transactions and in accordance with generally accepted accounting principles and (ii) permit Assignee and Note Holders, by their agents, accountants and attorneys (at Lessee's expense if an Event of Default under the Lease or a default under Section 6 of this Assignment has occurred and is continuing) to visit the Property (on reasonable advance notice) and to examine Lessee's records and books of account relating to the Property and to discuss its affairs, finances and accounts relating to the Property with its officers and accountants at such reasonable times as may be requested by Assignee or such Note Holder.

(g)    Promptly upon becoming aware of it, Lessee will notify Assignee of the occurrence of any Event of Default under the Lease or this Assignment, or of any offer by Lessee to purchase the Property pursuant to the Lease.

(h)    "Subsidiary" of a person means a corporation in which such person or such person and one or more of its Subsidiaries directly or indirectly owns voting stock of such corporation and which, under generally accepted accounting principles would be consolidated with such person for financial reporting purposes.

(i)    Lessee covenants that it will pay or cause to be paid, and save Assignee and each Note Holder (and each person for whom such Note Holder is a nominee or designee) harmless from and against any and all liability and loss with respect to or resulting from (x) any claim for or on account of the fees of any investment banker, broker, finder, advisor or consultant engaged or allegedly engaged by Lessee (including, without limitation, the investment banking fee of Price & Marshall, Inc., but excluding such firm's debt placement fee with respect to the Notes) with respect to the transactions contemplated by this Agreement, the Lease or the Mortgage, or (y) the nonpayment or delayed payment of any and all stamp and other similar taxes, fees and excises (except income or franchise taxes and any taxes occasioned by any sale or transfer of its Notes), if any, including any interest and penalties, which may be, or be determined to be, payable in connection with the transactions contemplated by this Agreement, the Lease or the Mortgage.

7.    This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Agreement may be executed in

two or more counterparts and shall be deemed to have become effective when and only when one or more of such counterparts shall have been signed by or on behalf of each of the parties hereto, although it shall not be necessary that any single counterpart be signed by or on behalf of each of the parties hereto, and all such counterparts shall be deemed to constitute but one and the same instrument.  This Agreement shall be governed by the laws of the State in which the Property is located.

      8.      In the event that the Property is conveyed pursuant to a foreclosure sale under the Mortgage (or pursuant to a deed in lieu of foreclosure), Lessee agrees that (a) the Lease shall remain in full force and effect and (b) Lessee shall attorn to and accept the foreclosure purchaser (or the grantee under the deed in lieu of foreclosure) as the lessor under the Lease.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

JX 133633.5 00130 02052

8

Store #0124, Tallahassee,
Leon, County, Florida

IN WITNESS WHEREOF, Assignor has caused this Assignment of Lease and Agreement to be signed as of the date first above written.

Witnesses:

TALLAHASSEE 99-FL, LLC, a Delaware limited liability company

By:   PRINCIPAL NET LEASE INVESTORS, L.L.C., a Delaware limited liability company , its sole member

By:  PRINCIPAL LIFE INSURANCE COMPANY, an Iowa corporation, its sole member

Name: Helen L. Boles

Name: Julia L. McDonald

By:
Name: CLARE TANUE
Its: COUNSEL

Name: Helen L. Boles

Name: Julia L. McDonald

By: Karen A Pearston
Name: KAREN A. PEARSTON
Its: COUNSEL

[CORPORATE SEAL]

STATE OF _Iowa_
COUNTY OF _POLK_

The foregoing instrument was acknowledged before me this _11th_ day of _August_, 1999, by _CLARE TANDE_, the _COUNSEL_ of PRINCIPAL LIFE INSURANCE COMPANY, an Iowa corporation, sole member of PRINCIPAL NET LEASE INVESTORS, L.L.C., a Delaware limited liability company, sole member of TALLAHASSEE 99-FL, LLC, a Delaware limited liability company, on behalf of the company, who either ___X___ is personally known to me or _____ has produced identification in the form of _____ driver's license.

_Barbara M. Seamands_
Print Name: _BARBARA M. SEAMANDS_
Notary Public, State of _Iowa_
Commission No. _157881_
My Commission Expires: _9/27/99_

BARBARA M. SEAMANDS
MY COMMISSION EXPIRES
September 27, 1999

[SEAL]

STATE OF _Iowa_
COUNTY OF _POLK_

The foregoing instrument was acknowledged before me this _11th_ day of _August_, 1999, by _KAREN A. PEARSTON_, the _COUNSEL_ of PRINCIPAL LIFE INSURANCE COMPANY, an Iowa corporation, sole member of PRINCIPAL NET LEASE INVESTORS, L.L.C., a Delaware limited liability company, sole member of TALLAHASSEE 99-FL, LLC, a Delaware limited liability company, on behalf of the company, who either ___X___ is personally known to me or _____ has produced identification in the form of _____ driver's license.

_Barbara M. Seamands_
Print Name: _BARBARA M. SEAMANDS_
Notary Public, State of _Iowa_
Commission No. _157881_
My Commission Expires: _9/27/99_

BARBARA M. SEAMANDS
MY COMMISSION EXPIRES
September 27, 1999

[SEAL]

Store #0124, Tallahassee,
Leon, County, Florida

JR 123037.2 00130 02051
8/4/99 2:33 PM

WINN-DIXIE STORES, INC. hereby consents to the foregoing Assignment of Lease and Agreement including without limitation paragraph 3 thereof and hereby accepts and agrees to each of the provisions set forth in paragraph 6 thereof.

WITNESS:                                    WINN-DIXIE STORES, INC., a Florida
                                            corporation

_____            By: _____
Print Name: Dennis K. Long                  Name: _____D. D. McCook_____
                                            Title: _____VICE PRESIDENT_____

_____
Print Name: R.D. Peterson                   [CORPORATE SEAL]


STATE OF FLORIDA
COUNTY OF DUVAL

        The foregoing instrument was acknowledged before me this __5th__ day of August, 1999, by __R. P. McCook__, the __Vice__ President of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation, who either __√__ is personally known to me or _____ has produced identification in the form of _____ driver's license.

                        _____
                        Print Name: _____
                        Notary Public, State of __FL_____
                        Commission No. _____
                        My Commission Expires: _____

                [SEAL]          Mary Kay Vega
                                MY COMMISSION # CC577749 EXPIRES
                                    September 29, 2000
                                BONDED THRU TROY FAIN INSURANCE, INC.


This document was prepared by Alan C. Sheppard, Jr., Esq. of LeBoeuf, Lamb, Greene & MacRae, L.L.P., 50 North Laura Street, Suite 2800, Jacksonville, Florida 32202.

Store #0124, Tallahassee,
Leon, County, Florida

EXHIBIT A

## TALLAHASSEE (KERRY), FLORIDA, CONT'D.

### TALLAHASSEE (KERRY), FLORIDA

A TRACT OF LAND LYING IN SECTION 27, TOWNSHIP 2 NORTH, RANGE 1 EAST, LEON COUNTY, FLORIDA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCE AT A CONCRETE MONUMENT MARKING THE NORTHWEST CORNER OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 27 AND RUN NORTH 89 DEGREES 55 MINUTES 47 SECONDS WEST ALONG THE NORTH BOUNDARY OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 27, A DISTANCE OF 792.95 FEET TO A CONCRETE MONUMENT, THENCE NORTH 00 DEGREES 39 MINUTES 35 SECONDS WEST 84.02 FEET TO A CONCRETE MONUMENT MARKING THE SOUTHEAST CORNER OF PROPERTY DESCRIBED IN DEED BOOK 87, PAGE 49 OF THE PUBLIC RECORDS OF LEON COUNTY, FLORIDA, THENCE NORTH 84 DEGREES 25 MINUTES 00 SECONDS WEST ALONG THE SOUTHERLY BOUNDARY OF SAID PROPERTY 90.43 FEET, THENCE SOUTH 23 DEGREES 47 MINUTES 24 SECONDS WEST ALONG A LINE 400 FEET EASTERLY OF AND PARALLEL WITH THE EASTERLY RIGHT OF WAY BOUNDARY OF THOMASVILLE ROAD (STATE ROAD NO. 61) A DISTANCE OF 210.38 FEET TO A CONCRETE MONUMENT, THENCE SOUTH 66 DEGREES 08 MINUTES 13 SECONDS EAST 508.12 FEET, THENCE SOUTH 66 DEGREES 31 MINUTES 41 SECONDS EAST 94.96 FEET TO THE POINT OF BEGINNING. FROM SAID POINT OF BEGINNING THENCE RUN SOUTH 66 DEGREES 07 MINUTES 57 SECONDS EAST 104.62 FEET TO A CONCRETE MONUMENT, THENCE SOUTH 15 DEGREES 13 MINUTES 08 SECONDS WEST 164.47 FEET, THENCE SOUTH 74 DEGREES 17 MINUTES 26 SECONDS WEST 69.33 FEET TO A BUILDING CORNER, THENCE SOUTH 74 DEGREES 23 MINUTES 31 SECONDS WEST ALONG A WALL 206.02 FEET TO A BUILDING CORNER, THENCE SOUTH 69 DEGREES 49 MINUTES 15 SECONDS WEST 117.07 FEET, THENCE SOUTH 20 DEGREES 57 MINUTES 00 SECONDS EAST 119.51 FEET, THENCE SOUTH 23 DEGREES 50 MINUTES 07 SECONDS WEST 208.60 FEET TO A POINT ON A CURVE CONCAVE TO THE NORTHEAST, SAID POINT ALSO BEING ON THE NORTHERLY RIGHT OF WAY OF KERRY FOREST PARKWAY (100 FOOT RIGHT OF WAY), THENCE NORTHWESTERLY ALONG SAID RIGHT OF WAY AND CURVE WITH A RADIUS OF 1661.71 FEET THROUGH A CENTRAL ANGLE OF 02 DEGREES 50 MINUTES 11 SECONDS FOR AN ARC DISTANCE OF 82.26 FEET (THE CHORD OF SAID ARC BEARS NORTH 56 DEGREES 26 MINUTES 18 SECONDS WEST 82.25 FEET), THENCE NORTH 55 DEGREES 03 MINUTES 10 SECONDS WEST 151.60 FEET TO A POINT OF CURVE CONCAVE SOUTHWESTERLY, THENCE NORTHWESTERLY ALONG SAID CURVE WITH A RADIUS OF 2624.88 FEET THROUGH A CENTRAL ANGLE OF 01 DEGREES 17 MINUTES 08 SECONDS FOR AN ARC DISTANCE OF 58.89 FEET (CHORD BEARING NORTH 55 DEGREES 43 MINUTES 53 SECONDS WEST 58.89 FEET), THENCE LEAVING SAID NORTHERLY RIGHT OF WAY NORTH 23 DEGREES 51 MINUTES 16 SECONDS EAST 353.58 FEET, THENCE NORTH 74 DEGREES 21 MINUTES 19 SECONDS EAST 201.53 FEET

**TALLAHASSEE (KERRY), FLORIDA, CONT'D.**

TO A BUILDING CORNER, THENCE NORTH 74 DEGREES 23 MINUTES 53 SECONDS EAST ALONG A WALL 205.93 FEET TO A BUILDING CORNER, THENCE NORTH 74 DEGREES 30 MINUTES 25 SECONDS EAST 72.82 FEET TO THE POINT OF BEGINNING.

TOGETHER WITH EASEMENTS CONTAINED IN THAT CERTAIN INDENTURE OF ESTABLISHMENT OF PROTECTIVE COVENANTS, CONDITIONS AND RESTRICTIONS AND GRANTS OF EASEMENTS DATED AUGUST 31, 1990, BETWEEN BRUNO'S INC. AND TWIN ACTION PROPERTIES, INC., RECORDED IN OFFICIAL RECORDS BOOK 1454, PAGE 441, OF THE PUBLIC RECORDS OF LEON COUNTY, FLORIDA.