5.2.3 <u>Financial Condition</u>. Buyer represents, warrants and covenants that as of the Effective Date and continuing through the Closing Date, Buyer has or will have the sufficient funds on hand to perform its obligations under this Agreement, including payment of the Purchase Price at Closing.

6.    **<u>Survival of Warranties</u>.** The respective warranties of Buyer and Seller above will not survive the Closing but will merge into the Act of Sale, and will have no further force or effect after the Closing. Therefore, the Buyer waives all rights in the nature of redhibition which might create a cause of action by Buyer against Seller based on any type of defect in the property, and the liability of Seller under or with respect to the warranties will be limited to the express remedies of Buyer set forth in this Agreement and the Act of Sale.

7.    **<u>Closing Conditions</u>.**

   7.1   <u>Approval Condition</u>.

      7.1.1 <u>Chapter 11 Cases</u>. Winn-Dixie Stores, Inc. and certain of its affiliated companies, including Seller, filed voluntary petitions for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, U.S.C. §101 <u>et seq.</u>, as amended (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "<u>Filing Date</u>") and have operated its businesses as debtors-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date (the "<u>Bankruptcy Cases</u>"). By order entered on April 13, 2005, the Bankruptcy Cases were transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "<u>Bankruptcy Court</u>") where they are being jointly administered under Case No. 05-03817-3F1.

      7.1.2 <u>Competitive Bid Process</u>. By Order dated June 20, 2005, the Bankruptcy Court approved bidding procedures and bid protections for use in the sale of assets in the Bankruptcy Cases (the "<u>Bidding Procedures</u>"). This Agreement is subject to the competitive bid process described in the Bidding Procedures. Promptly following the Effective Date, Seller will file a motion with the Bankruptcy Court seeking approval of the transactions contemplated by this Agreement, subject to higher or better offers, and the transfer of the Property free and clear of all claims and liens including the Credit Liens and the Other Liens, other than Permitted Encumbrances, pursuant, <u>inter alia</u>, to 11 U.S.C. Sections 105, 363 and 1146(c) (the "<u>Sale Motion</u>"). The Bankruptcy Court will set a date for hearing on the Sale Motion and to consider entry of the Sale Order relating to the successful bid (the "<u>Sale Hearing</u>"). Prior to the Sale Hearing, the debtors will conduct an Auction pursuant to the Bidding Procedures.

Facility Purchase Agreement
Winn-Dixie Logistics, Inc. S/T Ackel Real Estate, LLC
Harahan Warehouse Facility – New Orleans, Louisiana
July 31, 2006
SGRJAX\90510.2

7.1.3 <u>Overbid Protection</u>. As authorized by the Bidding Procedures, and as an inducement to Buyer to enter into this Agreement to acquire the Property at an effective purchase price of $6,750,000, Seller agrees that it will not accept any initial minimum bid that represents an effective purchase price of less than $6,952,500.

7.1.4 <u>Sale Order Approving Agreement</u>. It will be a condition to the Closing of the transaction contemplated by this Agreement that the Bankruptcy Court will have issued the Sale Order approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, and such Sale Order either will have become final and non-appealable, or the Sale Order will contain a waiver of the stay set forth in Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "<u>Approval Condition</u>").

7.1.5 <u>Continuing Effectiveness of Agreement</u>. Notwithstanding that Buyer may not be the successful bidder following the Bidding Procedures, this Agreement, as modified by Buyer's last bid made during the Bidding Procedures, will remain in effect in accordance with, and will remain subject to, the Bidding Procedures. If the Approval Condition is not otherwise satisfied by the Outside Date through no fault of Buyer, or if the sale of the Property closes with another successful bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other. Furthermore, following satisfaction of the Approval Condition, if Seller nonetheless refuses to close the transaction contemplated herein and Buyer otherwise is ready, willing and able to close, then this Agreement automatically will terminate, subject, however, to Buyer's remedies for Seller's default as provided in <u>paragraph 11.1</u> below.

7.2 <u>Conditions Precedent to Seller's Obligations</u>. The obligations of Seller under this Agreement are subject to the Approval Condition and satisfaction on or before the Closing Date, or such other date as herein provided, of all conditions contained in this Agreement, including each of the following (any of which may be waived by Seller in its sole discretion, unless otherwise stated herein):

7.2.1 Buyer will have performed in all material respects all of its covenants contained in this Agreement which are not qualified by reference to a materiality standard; and Buyer will have performed in all respects all of its covenants contained in this Agreement which are qualified by reference to a materiality standard. All of Buyer's representations and warranties contained in this Agreement will be true and accurate in all material respects as of the Effective Date and the Closing Date.

7.2.2 No order, injunction or decree issued by any applicable governmental authority or other legal restraint or prohibition preventing the consummation of the transactions contemplated by this Agreement with respect to such Store will be in effect

10

7.2.3   As of the Closing, there shall have been no material adverse change in any of the items reviewed by Buyer during the Inspection Period. No later than one Business Day prior to the Closing Date (or such earlier date as provided herein), Seller shall have tendered all deliveries to be made at Closing.

If any of the foregoing conditions has not been satisfied on or before the Outside Date, then Seller will have the right to terminate this Agreement; provided, however, that if any of the foregoing conditions has not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations will be determined in accordance with paragraph 11 of this Agreement.

8.  **Casualty; Condemnation**.  If, prior to Seller's legal delivery of the Act of Sale and Buyer's delivery of the Purchase Price, the Assets or any portion thereof are destroyed or materially damaged, or made the subject of a condemnation action, then either party will have the right, exercisable by giving notice of such decision to the other within five (5) business days after receiving written notice of such damage, destruction or threatened condemnation, to terminate this Agreement, and thereafter neither of the parties will have any further rights or obligations hereunder; provided, however, that Buyer will be entitled to the return from Escrow Agent of the Deposit. If neither party exercises its right of termination and the Assets are sold to Buyer pursuant to the terms of this Agreement, then as Buyer's sole remedies, Seller will assign to Buyer any assignable rights it may have to recover insurance or condemnation proceeds and will promptly pay over and deliver to Buyer any such proceeds received by it.

9.  **Closing.**

9.1   The consummation of the transactions contemplated herein by Buyer and Seller (the "Closing") will be held on or before September 1, 2006, subject to earlier satisfaction of the Approval Condition (the "Closing Date"), at a time and place mutually acceptable to the parties, but if none is agreed to, at the offices of Closing Agent in Jacksonville, Florida. Closing may be conducted by use of mail-away procedures including escrow and Closing disbursement and delivery of documents and funds administered by Closing Agent.

9.2   Possession of the Assets will be delivered to Buyer on the Closing Date free and clear of all Claims and Interests and rights of third parties whatsoever, subject only to the Permitted Encumbrances.

9.3   At the Closing, Seller will deliver to Buyer or Buyer's designee the following:

(i)    The Act of Sale;

(ii)   The Bill of Sale;

(iii)  An Affidavit of Seller in recordable form, setting forth the specific terms of the Sale Order;

(iv)   The Closing Statement;

Facility Purchase Agreement
Winn-Dixie Logistics, Inc. S/T Ackel Real Estate, LLC
Harahan Warehouse Facility – New Orleans, Louisiana
July 31, 2006
SGRJAX\90510.2

    (v)    Any other documents, instruments or agreements called for hereunder for delivery by Seller that have not previously been delivered;

    (vi)    All keys and codes for the Property; and

    (vii)    Any other documentation required of Seller under local law.

Buyer may waive compliance by Seller as to any of the foregoing items by an instrument in writing.

9.4    At the Closing, Buyer will execute and deliver to Seller the following:

    (i)    The Purchase Price;

    (ii)    The Closing Statement;

    (iii)    Any other document, instruments or agreements called for hereunder for delivery by Buyer that have not previously been delivered; and

    (iv)    Any other documentation required of Buyer under local law.

Seller may waive compliance by Buyer as to any of the foregoing items by an instrument in writing.

9.5    On the Closing Date, Seller and Buyer will each deposit such other instruments with Closing Agent as are reasonably required by the Title Insurer to consummate the conveyance of the Property to Buyer in accordance with the terms hereof.

9.6    All ad valorem taxes for the year in which the Closing occurs will be prorated between Seller and Buyer as of midnight immediately preceding the Closing Date. The proration will be based upon the latest available tax figures with known changes (based on earliest payment discount, if any). The tax proration at Closing may be based on an estimate using the previous year's tax amount. Buyer agrees to notify the taxing authority promptly after Closing of the transfer and assignment of Seller's interest in the Assets to Buyer for purposes of proper tax assessment notifications.

9.7    Any matter specified in paragraph 9.6 of this Agreement that cannot reasonably be determined and apportioned between Seller and Buyer on the Closing Date will be specified by Buyer and Seller in writing at Closing, and will be subject to settlement at such time as such matter is finally determined (but in no event later than ninety (90) days after the Closing Date). Additionally, any apportionments, prorations or adjustments that are miscalculated (through mathematical error) at Closing will be subject to recalculation and final settlement at such time as such miscalculation is discovered (but in no event later than ninety (90) days after the Closing Date). Such apportionments will be effective as of the Closing Date.

Facility Purchase Agreement
Winn-Dixie Logistics, Inc. S/T Ackel Real Estate, LLC
Harahan Warehouse Facility – New Orleans, Louisiana
July 31, 2006
SGRJAX\90510.2

9.8     At or prior to Closing, Seller will pay the cost of the commission payable to Seller's Broker as disclosed in paragraph 10, and Seller's attorneys' fees and costs ("Seller's Closing Costs"). At or prior to Closing, Buyer will pay the cost of the transfer taxes on the Act of Sale, the cost of the title commitment and insurance policy to be issued pursuant to the Commitment in the amount of the Purchase Price, the cost of the Survey, the cost of its due diligence investigations of the Property, all recording fees, all financing costs of Buyer incurred to purchase the Property including simultaneous issue mortgagee title insurance and related endorsements, Buyer's attorneys' fees and costs and all other fees, costs and expenses incurred by the Buyer in connection herewith ("Buyer's Closing Costs"). If this transaction fails to close for any reason, and without waiving any right or remedy that either party may have against the other in the event of a default hereunder, Seller promptly will pay Seller's Closing Costs, and Buyer promptly will pay Buyer's Closing Costs.

10.     **Brokers; Commissions**. Seller and Buyer warrant each to the other (and it is agreed that this warranty will survive delivery of the Act of Sale) that no broker or agent has been employed with respect to the sale of the Property, other than Seller's broker, DJM Asset Management, LLC ("Seller's Broker"), pursuant to Order Authorizing Debtors to Retain DJM Asset Management, LLC as Special Real Estate Consultants to the Debtors, issued by the Bankruptcy Court on June 10, 2005 (the "Retention Order"). Seller will be responsible for payment of commission due to Seller's Broker pursuant to the Retention Order. Each party indemnifies and agrees to hold harmless the other from any claim made by any other broker or agent who claims to act for the party sought to be charged for a commission, compensation, brokerage fees, or similar payment in connection with this transaction and against any and all expense or liability arising out of any such claim, and said indemnifications by Seller and Buyer will survive the Closing of this transaction or earlier termination of this Agreement.

11.     **Default; Remedies**.

11.1    Seller's Default. If Seller fails to materially comply with or perform any of the covenants, agreements or obligations to be performed by Seller under this Agreement, then Buyer will be entitled to terminate this Agreement by written notice to Seller and promptly following such termination, without any other action being necessary, Escrow Agent will return the Deposit to Buyer. Buyer waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided in paragraph 10 above, which indemnification will survive separately from the termination of this Agreement.   Buyer waives all other remedies it may have at law or in equity.

11.2    Buyer's Default. If Buyer fails to make the Deposit when due or to comply with or perform any of the covenants, agreements, or obligations to be performed by Buyer under the terms and provisions of this Agreement, then the Deposit will be paid to Seller as reasonable liquidated damages. Seller waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided under paragraph 4.2.4 and

Facility Purchase Agreement
Winn-Dixie Logistics, Inc. S/T Ackel Real Estate, LLC
Harahan Warehouse Facility – New Orleans, Louisiana
July 31, 2006
SGRJAX\90510.2

paragraph 10 above, which indemnifications will survive separately from the termination of this Agreement.

11.3    Break-up Fee.  If Buyer is not the Successful Bidder and Buyer has not breached this Agreement, upon Closing of the sale of the Property to the Successful Bidder, Seller shall pay to Buyer the sum of $50,000 as an agreed-upon fee for Buyer's costs and expenses related to entering into this Agreement.

11.4    Remedies Cumulative.  The foregoing remedies are in addition to any rights afforded either of the parties pursuant to Seller's Indemnity under paragraph 10, and Buyer's indemnities under paragraphs 4.6.3 and 10.

## 12.    **Miscellaneous**

12.1    Attorneys' Fees.  If either party commences an action against the other to enforce any of the terms hereof or because of the breach by either party of any of the covenants, terms or conditions hereof, the substantially nonprevailing party will pay to the substantially prevailing party its reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution or defense of such action.

12.2    Notices.  All notices, requests, demands, offers and other communications required or permitted to be given pursuant to this Agreement will be in writing and will be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iii) if delivered by United States Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (iv) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same, addressed to Seller or Buyer at their respective addresses stated below:

If to Seller:

> Winn-Dixie Logistics, Inc.
> 5050 Edgewood Court
> Jacksonville, Florida 32254-3699
> Attn:  Catherine Ibold
> Telefax No. (904) 783-5138

With a copy to:

> Smith, Gambrell & Russell, LLP
> 50 N. Laura Street, Suite 2600
> Jacksonville, Florida 32202
> Attention: Douglas Stanford
> Telefax No.: (904) 598-6226

14

If to Buyer:

        George Ackel
        1000 Veterans Boulevard
        Suite 304
        Metairie, Louisiana 70005
        Telefax No. (504)  455-4357

If to Escrow Agent or Closing Agent:

        Smith, Gambrell & Russell, LLP
        50 N. Laura Street, Suite 2600
        Jacksonville, Florida  32202
        Attention: Douglas Stanford
        Telefax No.: (904) 598-6226

or such other address as any of the foregoing parties may from time to time specify by notice to the others.

12.3    <u>Successors And Assigns; Assignment Of Agreement</u>. All terms of this Agreement will be binding upon, and will inure to the benefit of and be enforceable by the parties hereto and their respective legal representatives, heirs, successors and assigns.  Except as set forth below, this Agreement may not be assigned by either party without the express written consent of the other.  Buyer may assign its rights and obligations under this Agreement to an affiliate of Buyer, provided, however, that Buyer shall remain fully liable for performance of the obligations, including indemnifications, of the "Buyer" hereunder.

12.4    <u>Exchange Provision</u>.  Buyer and Seller acknowledge that either or both of them may desire to structure the sale contemplated hereby as a tax-deferred exchange pursuant to section 1031 of the Internal Revenue Code, as amended.  Accordingly, Buyer and Seller agree that they shall cooperate with and assist one another in accomplishing any such exchange provided that (a) the consummation of the transactions contemplated hereby is not thereby delayed, and (b) no party hereto shall be obligated to incur any expense or liability (actual or potential) beyond that which it is otherwise obligated to incur hereunder, and (c) in no event shall Seller be obligated to contract for the purchase of or to take title to any so-called "replacement property".

12.5    <u>Changes And Modifications; Prior Agreements</u>. This Agreement may not be orally changed, modified or terminated; it supersedes any and all prior understandings and/or letter agreements; other matters of similar nature will be deemed to be of no force or effect in the interpretation of this Agreement, it being intended that this Agreement represents the entire understanding of the parties.  No waiver of any provision hereof will be valid unless in writing and signed by a party against whom it is to be enforced.

Facility Purchase Agreement
Winn-Dixie Logistics, Inc. S/T Ackel Real Estate, LLC
Harahan Warehouse Facility – New Orleans, Louisiana
July 31, 2006
SGRJAX\90510.2

14.    **Escrow Agent.**

14.1    Duties. By signing a copy of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent. Escrow Agent agrees to promptly deposit the Deposit, upon receipt thereof, in an interest bearing account, to hold the same in escrow, and disburse the same in accordance with this Agreement. Although interest accrued on the Deposit will be payable to the party entitled to the Deposit at such time as the Deposit it paid, interest accrual will be deemed to belong to Buyer for federal and state income tax purposes. Escrow Agent will release the Deposit only as expressly provided in this Agreement.

14.2    Limitations of Liability. Escrow Agent will not be liable to any party except for claims resulting from the negligence or willful misconduct of Escrow Agent.

14.3    Role as Counsel. The parties acknowledge that Escrow Agent also serves as special real estate counsel to Seller. In the event of a dispute between Seller and Buyer concerning this Agreement to the Property, Escrow Agent may continue to serve both in its capacity as counsel to Seller and in its capacity as Escrow Agent, it being understood that Escrow Agent's duties and obligations as Escrow Agent are purely ministerial in nature.

14.4    Withdrawal. No party will have the right to withdraw any monies or documents deposited by it with Escrow Agent prior to the Closing or termination of this Agreement except in accordance with the terms of this Agreement.

14.5    Dispute. If a written objection is filed within the time allowed or if Escrow Agent is in doubt as to its duties, Escrow Agent may continue to hold the escrowed funds and interest accrued thereon until the matter is resolved either by joint written direction from the parties or by the court having jurisdiction of the dispute or Escrow Agent may interplead the same in such court and be relieved of any and all liability therefore. In any action or proceeding regarding the escrowed funds or interest accrued thereon brought by Escrow Agent or to which Escrow Agent is made a party, the Escrow Agent will be entitled to recover its reasonable costs and attorneys' fees (through appeal).

**[Signature Page follows]**

17

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

Signed, sealed and delivered in the presence of:

**SELLER:**

**WINN-DIXIE LOGISTICS, INC.,** a Florida corporation

Name: SUSAN MAGADDINO

By: _____
Name: Bennett L. Nussbaum
Title: Vice President

Name: JACQUES NICOLASON

[Corporate Seal]

Signed, sealed and delivered in the presence of:

**BUYER:**

**ACKEL REAL ESTATE, L.L.C.,** a Louisiana limited liability company

Name:_____

By: _____
Name: _____
Title: _____

Name:_____

[Seal]

Name:_____

_____ [SEAL]
**JOHN GEORGES**, Individually

Name:_____

Reviewed By
_____SK_____
**XRoads**
Date: 8/2/06

LEGAL APPROVED
ATTY: CBF
DATE: 8/2/06

18

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

Signed, sealed and delivered in
the presence of:

**SELLER:**

**WINN-DIXIE LOGISTICS, INC.,** a Florida
corporation

Name:_____

By: _____
Name: _____
Title: Vice President

Name:_____

[Corporate Seal]

Signed, sealed and delivered in
the presence of:

**BUYER:**

**ACKEL REAL ESTATE, L.L.C.,** a Louisiana
limited liability company

Name:_____

Name: Sharon Daigle

By: _____
Name: MEMBER GEORGE ACKEL
Title: _____

[Seal]

Name:_____

Name: Sharon Daigle

_____ [SEAL]
JOHN GEORGES, Individually



Facility Purchase Agreement
Winn-Dixie Logistics, Inc. S/T Ackel Real Estate, LLC
Harahan Warehouse Facility – New Orleans, Louisiana
July 31, 2006
SGRJAX\90510.2

AUG-02-2006 WED 11:18 AM TITLE DEPOT          FAX NO. 504 455 4357          P. 19

SCHEDULE OF EXHIBITS

| | | |
|---|---|---|
| Exhibit A | - | Legal Description of Land |
| Exhibit B | - | Schedule of Excluded Personal Property |
| Exhibit C | - | Schedule of Permitted Encumbrances |
| Exhibit D | - | Form of Act of Sale |
| Exhibit E | - | Facility Site Plan |
| Exhibit F | - | Schedule of Underground Storage Tanks |
| Exhibit G | - | Description of Restricted Area |

Facility Purchase Agreement
Winn-Dixie Logistics, Inc. S/T Ackel Real Estate, LLC
Harahan Warehouse Facility – New Orleans, Louisiana
July 31, 2006
SGRJAX\90510.2

The undersigned, Escrow Agent, hereby consents and joins in the execution of this Facility Purchase Agreement for the limited purposes stated herein.

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
Name: Douglas G. Stanford
Title: Partner

Dated: August ___, 2006

20

## EXHIBIT A

LEGAL DESCRIPTION OF PROPERTY

A tract of land which is a portion of LAFRENIERE PLANTATION, located in Section 41, T13S, RIOE, Jefferson Parish, Louisiana.

THAT PORTION *OF* GROUND, together with all the buildings and improvements thereon, situated in the Parish of Jefferson, State of Louisiana, being a portion of a larger tract of land known as LAFRENIERE PLANTATION and located in Section 41, Township 13 South, Range 10 East of the Saint Helena Meridian, east of the Town of Harahan and north of the Jefferson Highway bounded and described as follows:

Beginning at a point in a line which is 56 feet southwesterly from the centerline of a northwesterly and southeasterly concrete roadway, measured at a right angle thereto, which point has coordinates based upon the La. Geodetic Survey of X = 2,361,591.55 East and Y = 468,827.28 North; thence South 71 degrees, 46 minutes, 19 seconds West, a distance of 1288.83 feet, to a point 50 feet northeasterly from the center line of the Illinois Central Railroad Company's lead track; thence South 18 degrees, 08 minutes, 29 seconds East, parallel with and 50 feet perpendicularly distant northeasterly from said center line of lead tract, a distance of 1140.33 feet, to a point 25 feet northeasterly from the center line of said railroad company's spur tract; thence South 45 degrees, 15 minutes, 29 seconds East, a distance of 75.27 feet; thence North 42 degrees, 01 minutes, 50 seconds East a distance of 1361.97 feet; thence North 71 degrees, 44 minutes, 19 seconds East, a distance of74.1 feet; thence North 18 degrees, 15 minutes, 41 seconds West, a distance of 531.69 feet, to the point of beginning.

That portion of ground hereinabove described is more fully shown on plan prepared by F. C. Gandolfo, *Jr.*, Surveyor, New Orleans, Louisiana, dated February 14, 1957, a print of which is annexed to act before A. *J.* Waechter, *Jr.*, N.P., dated September 4, 1957, recertified May 25, 1971, showing improvements and showing this property located in Section 41, all as more fully shown on a plan of survey made by John E. Walker, R.L.S. dated May 7, 1984, last recertified March 29, 1993 and recorded as instrument number 93-33888.

## **EXHIBIT B**

SCHEDULE OF EXCLUDED PERSONAL PROPERTY

All furniture, furnishings, trade fixtures and movable equipment and all other tangible and intangible personal property.

**EXHIBIT C**

SCHEDULE OF PERMITTED ENCUMBRANCES

1.  Taxes for 2006 and subsequent years not yet due and payable.

2.  Servitude granted by Illinois Central Railroad Company to Sewerage District No.2 of the Parish of Jefferson, State of Louisiana per act passed before Henry M. Hunley, Jr., N.P., dated June 22, 1954, filed June 25, 1954, registered in COB 359, folio 478, affecting servitude area only.

3.  Servitude granted by Illinois Central Railroad Company to Louisiana Power and Light Company, per act passed before B. F. Sullivan, dated May 4, 1956, filed May 9, 1956, registered in COB 400, folio 489, affecting the servitude area only.

4.  Rights of the railroad company servicing the railroad siding and/or spur track located on the land in and to the ties, rails and properties constituting said railroad siding and/or spur track and to the use thereof, and also rights of others, if any, thereto entitled to the use thereof as shown on the survey of John E. Walker dated May 7, 1984, last recertified on March 29, 1993.

5.  Apparent servitude of drain, as evidenced by the culverts and other drain facilities lying within the property lines of the land, as shown on plat of survey made by John E. Walker, RL.S., of the office of John E. Walker, Inc., dated May 7,1984, last recertified March 29,1993.

6.  Encroachment upon property adjoining on the ICRR Yard side by the fence appurtenant to the land, as shown on plan of survey made by John E. Walker, R.L.S., of the office of John E. Walker, Inc., dated May 7, 1984, last recertified March 29, 1993.

7.  Encroachment upon "G" Street by the fence and concrete appurtenant to the land, as shown on the plan of survey made by John E. Walker, RL.S., of the office of John E. Walker, Inc., dated May 7, 1984, last recertified March 29, 1993.

8.  Encroachment upon the Sewerage District No.2 servitude registered in COB 359, folio 478, and upon the Louisiana Power & Light Company servitude registered in COB 400, folio 489, by the concrete appurtenant to the land, as shown on the plat of survey made by John E. Walker, R.L.S. of the office of John E. Walker, Inc., dated May 7, 1984, last recertified March 29,1993.

9.  The following matters shown on the map by Steven M. Runnebaum, RPLS of Landmark Surveying, Inc. dated March 20, 2001, Job #01-0155 certified to Winn Dixie Stores, Inc., et al: (1) encroachments along the Illinois Central Railroad Yard (westerly) sideline; (2) encroachments upon G Street side, including particularly the guard shack, and 13 parking spaces; (3) encroachments upon the Sewer District No.2 and the Louisiana Power and Light Company servitudes; (4) encroachment of parking spaces unto the unpaved portion of the right of way of Edwards Avenue; (5) encroachment of fence unto the Edwards Avenue Commerce Center, LLC property; and (6) apparent drainage, sewer and water servitudes because of the various culverts, ditches, drain lines, sewer drain holes, water valves, etc., as shown on the survey.

## EXHIBIT D

FORM OF ACT OF SALE

STATE OF FLORIDA   )
COUNTY OF DUVAL   )

## ACT OF SALE

On the dates and places set forth below, before the undersigned Notaries Public, and in the presence of the undersigned witnesses, personally appeared:

**WINN-DIXIE LOGISTICS, INC.,** taxpayer identification number 59-3652949, a Florida corporation, having its principal place of business at 5050 Edgewood Court, Jacksonville, Florida 32254-3699, being represented herein by and through Bennett Nussbaum, its Vice President (referred to herein as "Seller");

Who declared that for the price of Six Million Seven Hundred Fifty Thousand Dollars ($6,750,000.00) Dollars, cash in hand paid, receipt of which is hereby acknowledged, Seller hereby grants, bargains, sells, delivers, transfers, assigns, sets over, and abandons without any warranty except as to Seller's own acts and deeds, but with full substitution and subrogation in and to all rights and actions of warranty against preceding owners and vendors other than Seller, unto:

_____, taxpayer identification number _____, a _____, being represented herein by and through _____, its _____, having    its    principal    place    of    business    at _____ (referred to herein as "Buyer");

here present, accepting and purchasing for itself, its successors and assigns, the Property, more fully described on **Schedule A** attached hereto, together with all servitudes, rights and appurtenances, all buildings and improvements now located on the property, and all of Seller's right, title and interest in all public ways adjoining the property, the possession and delivery of which Buyer acknowledges (the "Property").

The sale and purchase of the Property is made and accepted without any warranties of any kind whatsoever as to the condition, operability, safety, or fitness for intended purpose or use of the Property or the absence of apparent or hidden defects in the Property. Buyer hereby waives (i) the warranty against hidden defects or redhibitory vices in the Property otherwise imposed by Article 2476 of the Louisiana Civil Code (the "Civil Code") or other applicable law, and (ii) any rights it may otherwise have in redhibition or for reduction of the purchase price pursuant to Articles 2520 through 2548 of the Civil Code or other applicable law, and releases Seller from any liability which may otherwise arise out of such warranty and rights, in connection with the sale of the Property. Buyer then declared and acknowledged that such waivers and release of liability constitute a material part of the consideration for the sale of the Property and that such waivers and release of liability and the legal effect thereof have been explained in detail and Buyer voluntarily and knowingly has agreed thereto.

All ad valorem taxes for the year in which the Closing occurs will be prorated between Seller and Buyer as of midnight immediately preceding the Closing Date. The proration will be based upon the latest available tax figures with known changes (based on earliest payment discount, if any). The tax proration at Closing may be based on an estimate using the previous year's tax amount. All parties signing the this contract have declared themselves to be of full legal capacity.

All agreements and stipulations herein, and all the obligations herein assumed shall inure to the benefit of and be binding upon the heirs, successors, and assigns of the respective parties, and the Buyer, its heirs, and assigns shall have and hold the described Property in full ownership forever.

This agreement may be executed in counterparts and all counterparts taken as a whole will constitute the entire agreement.

Signed this _____ day of _____, 2006, in Jacksonville, Florida, in the presence of the undersigned witness and Notary Public duly qualified in the County of Duval, State of Florida.

**Witnesses:**

**SELLER:**

**WINN-DIXIE LOGISTICS, INC.,**
a Florida corporation

_____
Print Name:_____

By:_____
Name: Bennett Nussbaum
Title: Vice President

_____
Print Name:_____

Print Name:_____
**Notary Public**

My Commission Expires:_____
Commission No.:_____

**Witnesses:**                          **BUYER:**

                                        _____, a
                                        _____

_____            By:_____
Print Name:_____            Name: _____
                                        Its: _____

_____
Print Name:_____


                    Print Name:_____
                    **Notary Public**

                    My Commission Expires:_____
                    Commission No.:_____

                                        Facility Purchase Agreement
                    Winn-Dixie Logistics, Inc. S/T Ackel Real Estate, LLC
                    Harahan Warehouse Facility – New Orleans, Louisiana
                                        July 31, 2006
                                        SGRJAX\90510.2

**<u>EXHIBIT E</u>**

FACILITY SITE PLAN

[ATTACHMENT]

Facility Purchase Agreement
Winn-Dixie Logistics, Inc. S/T Ackel Real Estate, LLC
Harahan Warehouse Facility – New Orleans, Louisiana
July 31, 2006
SGRJAX\90510.2



## **EXHIBIT F**

SCHEDULE OF UNDERGROUND STORAGE TANKS

All Underground Storage Tanks have been removed.

There were a total of six 12,000 gallon UST's and one 8,000 gallon UST associated with the Property.  The UST's were located south of the southern portion of the perishable storage facility at the location shown on Figure 2 (attached).

**EXHIBIT G**

DESCRIPTION OF RESTRICTED AREA

The description of the Restricted Area is as set forth in the attached Conveyance Notification, as approved by the Louisiana Department of Environmental Quality and recorded in the Jefferson County Parish Public Records.

## CONVEYANCE NOTIFICATION

Winn-Dixie Logistics, Inc., (property owner) hereby notifies the public that the following described Area of Investigation (AOI), Louisiana Department of Environmental Quality (LDEQ) Agency Interest Number (AI No. 6896), was closed with contaminant levels present that are acceptable for industrial/commercial use of the property, as defined in LDEQ'S Risk Evaluation/Corrective Action Program (RECAP), October 20, 2003, Section 2.9. In accordance with LAC 33:I., Chapter 13, if land use changes from industrial to non-industrial, the responsible party shall notify the LDEQ within 30 days and the AOI shall be re-evaluated to determine if conditions are appropriate for the proposed land use.

This site was closed in accordance with the Louisiana Administrative Code, Title 33:I., Chapter 13. Information regarding this site is available in the LDEQ public record and may be obtained by contacting the LDEQ Records Manager at (225) 219-3168. Inquiries regarding the contents of this site may be directed to the General Counsel of Winn-Dixie Logistics, Inc. at 5050 Edgewood Court, Jacksonville, FL 32254-3699, and may be contacted at phone number (904) 783-5000.

AOI Description:

The legal description of the subject property is as follows:

The Winn-Dixie Distribution Center facility is located at 600 Edwards Avenue, Jefferson Parish, Harahan, Louisiana. That portion of ground, together with all the buildings and improvements thereon, situated in the Parish of Jefferson, State of Louisiana, being a portion of a larger tract of land known as LAFRENIERE PLANTATION and located in Section 41, Township 13 South, Range 10 East of the Saint Helena Meridian, east of the Town of Harahan and north of the Jefferson Highway bounded and described as follows:

Beginning at a point in a line which is 56 feet southwesterly from the centerline of a northwesterly and southeasterly concrete roadway, measured at a right angle thereto, which point has coordinates based upon the La. Geodetic Survey of X = 2,361,591.55 East and Y = 468,827.28 North; thence South 71 degrees, 46 minutes, 10 seconds West, a distance of 1288.83 feet, to a point 50 feet northeasterly from the center line of the Illinois Central Railroad Company's land track; thence South 18 degrees, 08 minutes, 29 seconds East, parallel with and 50 feet perpendicularly distant northeasterly from said center line of land track, a distance of 1140.33 feet, to a point 25 feet northeasterly from the center line of said railroad company's spur tract; thence South 45 degrees, 15 minutes, 29 seconds East, a distance of 75.27 feet; thence North 42 degrees, 01 minutes, 50 seconds East, a distance of 1361.97 feet; thence North 71 degrees, 44 minutes, 19 seconds West, a distance of 74.1 feet; thence North 18 degrees, 15 minutes, 41 seconds West, a distance of 531.69 feet, to the point of beginning.

That portion of ground hereinabove described is more fully shown on plan prepared By F.C. Gandolfo, Jr., Surveyor, New Orleans, Louisiana, dated February 14, 1957, a print of which is annexed to act before A.J. Waechter, Jr., N.P., dated September 4, 1957, recertified May 25, 1971, showing improvements and showing this property located in Section 41, all as more fully shown on a plan of survey made by John E. Walker, R.L.S. dated May 7, 1984, last recertified March 29, 1993 and recorded as instrument number 93-33688.

1

Constituents of Concern (COCs) that remain at the site and the RECAP standard that the COCs were compared to are shown in Table 1, Remaining COCs in Soil. Figure 1, Area Map (Attachment A, Figures) shows the site and adjacent properties. Figure 2, TPH-Diesel Concentrations Remaining On Site shows the COC concentrations remaining in the site soil.

## TABLE 1
## REMAINING COCs IN SOIL

| Constituents of Concern | Soil RECAP Standard (mg/kg) | Highest Historical Exposure/Source Soil Concentration (mg/kg) |
|---|---|---|
| TPH-D | 510 | 440 [2] |

[1] Soil RECAP standards are based on Soil subsurface screening standards.
[2] Soil concentrations at the site from samples collected on December 20, 2004.
TPH-D - Total Petroleum Hydrocarbons - Diesel Range Organics

WINN-DIXIE LOGISTICS, INC., a Florida corporation

By:_____
Signature of Person Filing Parish Record
Bennett L. Nussbaum
Vice President

_____
Typed Name and Title of Person Filing Parish Record

8-23-05
_____
Date

LEGAL APPROVED
ATTY XHJ
DATE: 8-23-05

Reviewed by
XH0408
Date: 8-23-05

2

**ATTACHMENT A**

**FIGURES**



