Hearing Date:  September 21, 2006, 1:00 p.m. (ET)
Objection Deadline:  September 14, 2006, 4:00 p.m. (ET)

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors.[1] | ) | Jointly Administered |

## MOTION FOR AN ORDER (A) AUTHORIZING THE DEBTORS TO SELL LEESBURG OUTPARCEL AND RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS AND (B) GRANTING RELATED RELIEF

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 6004: (a) authorizing Winn-Dixie Stores, Inc. ("Winn-Dixie") to sell its one-half fee simple interest in a tract of land located in Leesburg, Florida, more particularly described on Exhibit A attached to this Motion (the "Leesburg Outparcel"), together with all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments, to the State of Florida Department of Transportation (the "Purchaser"), free and clear of liens, claims and interests and

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

(b) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

## Background

1.  On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered for procedural purposes only.

2.  The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3.  The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.

4.  Winn-Dixie owns a one-half fee simple interest in the Leesburg Outparcel, which the Debtors have no plans to develop.

5.  The Debtors have marketed the Leesburg Outparcel extensively through DJM Asset Management, Inc. ("DJM").  DJM sent approximately 700 notices of sale to potential purchasers.  Through DJM's efforts, the Debtors have received 2 offers for the Leesburg Outparcel, including the offer by the Purchaser

for $354,500.   After reviewing all offers, including all terms of all offers, the Debtors have determined that the Purchaser's offer is the highest and best offer for the Leesburg Outparcel.

## Relief Requested

6.  By this Motion, the Winn-Dixie requests authority to sell its one-half fee simple title interest in the Leesburg Outparcel[2] and all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments (collectively, the "Assets"), free and clear of liens, claims and interests, and subject to higher or better offers.  The Assets are more fully described in the Real Estate Purchase Agreement (defined below).

## The Real Estate Purchase Agreement

7.  On August 18, 2006, Winn-Dixie and Huber Investments (collectively, the "Sellers") entered into the Real Estate Purchase Agreement, attached to this Motion as  Exhibit A (the "Purchase Agreement") with the State of Florida Department of Transportation (the "Purchaser").

8.  A summary of the material terms of the transaction with the Purchaser, subject to this Court's approval, are as follows:[3]

      (a)    <u>Assets</u>.  The assets to be sold and transferred to the Purchaser are sold "As Is, Where Is" and include:

---

[2]  Winn-Dixie and Huber Investments each own one-half of the fee simple title in the Leesburg Outparcel.

[3]  This summary of the Purchase Agreement is provided as a convenience only.  To the extent that this summary differs in any way from the terms of the Purchase Agreement, the terms of the Purchase Agreement control.

(i)     The Sellers' fee simple title interest in the Leesburg Outparcel; and

(ii)    The Sellers' interest in all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments.

(b)    Purchase Price.  On the terms and subject to the conditions set forth in the Purchase Agreement, the net aggregate purchase price for the Assets is $354,500, of which the Debtors will receive $177,250 (the "Purchase Price").

(c)    Exclusive Uses.  The Purchase Agreement provides that neither the Purchaser, nor its tenants, subtenants, licensees or concessionaires, or successors and assigns, will engage directly or indirectly, in any of the following uses within the Assets:

(i)     supermarket, grocery, bakery or delicatessen;

(ii)    sale of meat, seafood, vegetables/fruit/produce, dairy products or frozen foods for off-premises consumption;

(iii)   sale of pet products, paper products and cleaning products;

(iv)    pharmacy or prescription drug concession;

(v)     sale of beer and wine for off-premises consumption;

(vi)    sale of liquor and spirits for off-premises consumption;

(vii)   photo lab or film development business.

(d)    Use Restrictions.  The Purchase Agreement provides that neither the Purchaser, nor its tenants, subtenants, licensees or concessionaires, or successors and assigns, will engage directly or indirectly, in any of the following uses within the Assets:

i.      discount general stores, dollar stores, dime stores, thrift shops, and consignment shops, such as Dollar

4

General, Big Lots, Goodwill, Family Dollar, and other similar businesses;

    ii.    convenience stores, whether stand-alone or adjunct to a gas station or restaurant use.

(e)    <u>Brokerage Fees</u>.   The Purchase Agreement provides that Winn-Dixie is responsible for payment of the brokerage commission due to Winn-Dixie's brokers.

(f)    <u>Sale Free and Clear</u>. The Purchase Agreement provides that the Assets are to be transferred free and clear of any liens, claims, interests and encumbrances other than the Permitted Encumbrances, as defined in the Purchase Agreement.

9.  The Debtors move for authority to consummate the sale of the Assets to the Purchaser.

<u>**Applicable Authority**</u>

**A.**    **Bankruptcy Code Section 363(b) Authorizes the Sale.**

10. Bankruptcy Code section 363(b)(1) provides:  "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Bankruptcy Code section 1107 (a) gives the Debtors, as debtors-in-possession, the same authority as a trustee to use, sell or lease property under section 363(b)(1).  *See* 11 U.S.C. § 1107(a).

11. A Debtors' sale under section 363(b)(1) should be approved when supported by a sound business reason.  *See In re B.D.K. Health Mgmt., Inc.* ("B.D.K. Health Mgmt."), Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where sale serves a sound business purpose); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp.* (In re Chateaugay Corp.),

973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented before him a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *Fulton State Bank v. Schipper* (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of all a chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action"); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).

12. Once a court is satisfied that a sound business reason for the sale exists, the Court must also consider whether (a) the sale price is fair and reasonable, (b) the purchaser is proceeding in good faith, and (c) the Debtor has provided interested parties with adequate and reasonable notice. *Delaware & Hudson*, 124 B.R. at 175-176.

13. The Debtors have a sound business reason for the sale of the Assets. The Debtors have no use for the Leesburg Outparcel and the sale of the Leesburg Outparcel will generate cash for the Debtors.

14. If required, the Debtors are prepared to present further evidence of good faith during the course of the Sale Hearing that the Debtors believe will satisfy this Court and the mandates of Bankruptcy Code section 363(m).

15. In accordance with Local Rule 2002-1, the Debtors will serve notice of the Motion on the following parties: (a) each taxing authority known to the

Debtors to have a potential interest in the Assets; (b) all parties that expressed interest in purchasing the Assets; (c) the Purchaser; (d) counsel for the DIP Lenders; (e) counsel for the Creditors' Committee; (f) counsel for the Equity Committee; (g) all known holders of Interests and Claims (as defined below) in the Assets; (h) all entities having requested notices pursuant to Fed. R. Bankr. P. 2002; and (i) the Office of United States Trustee.

**B.      Bankruptcy Code Section 363(f) Authorizes the Sale Free and Clear of Liens and Other Claims.**

16. The Debtors request that Winn-Dixie's sale of the Assets be approved free and clear of any liens, claims or interests.  Pursuant to Bankruptcy Code section 363(f), a debtor may sell property of the estate free and clear of all liens, claims and interests after notice and hearing.  *See In re Parrish*, 171 B.R. 138 (Bankr. M.D. Fla. 1994).

17. The Debtors believe that with the exception of the Permitted Encumbrances (as defined in the Purchase Agreement), there are no interests in or claims against the Assets other than the interest of Wachovia Bank, National Association, as Administrative Agent and Collateral Agent (collectively, the "DIP Lender").  The interest of the DIP Lender will be satisfied because the Debtors will cause the proceeds from the sale to be paid in accordance with the terms of the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a

Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in Full of All Claims of Debtors' Pre-Petition Secured Lenders dated March 23, 2005 (Docket No. 501) (the "Final Financing Order") and the Loan Documents (as defined in the Final Financing Order).

**C.      Good Faith Purchaser**

18. The Debtors request that the Court find that the Purchaser, acted in good faith within the meaning of Bankruptcy Code section 363(m).

19. Bankruptcy Code section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m)

20. The Bankruptcy Code does not define the term "good faith."  Courts, however, indicate that a party would have to show fraud or collusion between the purchaser and the debtor-in-possession or trustee in order to demonstrate a lack of good faith.

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a purchaser's good faith status at a

> judicial sale involves fraud, collusion between the
> purchaser and other bidders or the trustee, or an
> attempt to take grossly unfair advantage of other
> bidders.

*In re Apex Oil Co.*, 2 B.R. 847, 865 (Bankr. E.D. Mo. 1988). *Accord Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.* (In re Colony Hill Assocs.), 111 F.3d 269, 276 (2d Cir. 1997).  No such misconduct exists here.

21. The Debtors assert that:  (a) the proposed sale is the subject of arm's length negotiations with the Purchaser and is made in good faith; (b) the Purchaser has no affiliation with the Debtors; (c) the Assets were marketed extensively and the purchase price is fair and reasonable; (d) to the best of the Debtors' knowledge, the Purchaser has taken no action to chill or otherwise collude with any other party to restrict bidding on the Assets; and (e) the marketing process that occurred and the notice of the Sale Hearing ensure that the Purchaser has not exerted undue influence over the Debtors.  Accordingly, the Debtors request that the Court find that the Purchaser, acted in good faith within the meaning of Bankruptcy Code section 363(m).  *See B.D.K. Health_Mgmt.*, 1998 WL, at *4 (finding that the purchaser is entitled to the protections of Bankruptcy Code section 363(m) because the sale was negotiated at arms-length, proposed in good faith and the consideration for the assets was fair and reasonable).

**D.      Elimination of 10-Day Stay Under Rule 6004(g)**

22. Pursuant to Rule 6004(g), Fed. R. Bankr. P., unless the Court orders otherwise, all orders authorizing the sale of property outside of the ordinary course of business pursuant to Bankruptcy Code section 363 are automatically stayed for ten days after entry of the order.   Given the requirements of the Purchase Agreement and the need to close the sale as promptly as possible, the Debtors request that the Court waive the 10-day stay period.

**E.      Objection Deadline**

23. Only objections filed and served on Sally McDonald Henry at shenry@skadden.com, Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square, New York, New York 10036 and on Cynthia C. Jackson at cjackson@smithhulsey.com, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202 so as to be received by September 14, 2006 at 4:00 p.m. (E.T.) will be considered by the Bankruptcy Court at the Hearing.

## Conclusion

For the foregoing reasons, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit B (a) granting the Motion and authorizing the sale of the Assets to the Purchaser in accordance with the Purchase Agreement; (b) authorizing the Debtors to take all actions reasonably necessary to effectuate the sale of the Assets in accordance with the Purchase Agreement; and (c) granting such other and further relief as the Court deems just and proper.


Dated: August 31, 2006

SKADDEN, ARPS, SLATE, MEAGHER      SMITH HULSEY & BUSEY
& FLOM LLP

By    /s/ D. J. Baker                           By    /s/ Cynthia C. Jackson
      D. J. Baker                                      Stephen D. Busey
      Sally McDonald Henry                             James H. Post
      Rosalie W. Gray                                  Cynthia C. Jackson  (F.B.N. 498882)

Four Times Square                          225 Water Street, Suite 1800
New York, New York 10036                   Jacksonville, Florida  32202
(212) 735-3000                             (904) 359-7700
(212) 735-2000 (facsimile)                 (904) 359-7708 (facsimile)
djbaker@skadden.com                        cjackson@smithhulsey.com

Co-Counsel for Debtors                     Co-Counsel for Debtors

00542100

**EXHIBIT A**

## REAL ESTATE PURCHASE AGREEMENT
[Leesburg Outparcel]

**THIS REAL ESTATE PURCHASE AGREEMENT** (this "Agreement") is made as of August _18_, 2006 (the "Effective Date"), among

**STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION**, a component agency of the State of Florida ("Buyer"), and

**WINN-DIXIE STORES, INC.**, a Florida corporation ("Winn-Dixie"), and

**HUBER INVESTMENTS**, a Florida general partnership ("Huber").

Winn-Dixie and Huber sometimes together are referred to as "Seller".

1.   SALE AND PURCHASE. Seller agrees to sell, assign, transfer and convey to Buyer, and Buyer agrees to purchase from Seller, that certain tract of land situated in Lake County, Florida, as more particularly described on attached Exhibit A, together with all appurtenances, rights, easements, rights-of-way, tenements and hereditaments incident thereto (collectively, the "Property").

2.   PURCHASE PRICE AND PAYMENT. In consideration of the conveyance of the Property to Buyer, Buyer will pay to Seller the sum of $354,500 (the "Purchase Price") at Closing. The Purchase Price will be due and payable in cash (as adjusted by prorations and payment of expenses as herein provided) and delivered to Closing Agent (as hereinafter defined).

3.   PROPERTY CONDITION AND INVESTIGATION.

   (a)   Property Conveyed AS IS. BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING, SELLER WILL SELL AND CONVEY TO BUYER AND BUYER WILL ACCEPT THE PROPERTY "**AS IS, WHERE IS**," WITH ALL FAULTS, AND THERE ARE NO ORAL AGREEMENTS, WARRANTIES OR REPRESENTATIONS COLLATERAL TO OR AFFECTING THE PROPERTY BY SELLER OR ANY THIRD PARTY. THE TERMS AND CONDITIONS OF THIS PARAGRAPH WILL EXPRESSLY SURVIVE THE CLOSING AND NOT MERGE THEREIN.

   (b)   Use Restrictions. Buyer acknowledges that the Declaration contains restrictive covenants prohibiting or limiting certain enumerated uses on the Property, which are for the purpose of protecting Seller's continuing commercial interests within the Shopping Center. Seller intends to supplement the Declaration, if necessary, solely to ensure that Seller will have the following exclusive use rights within the Shopping Center, and that no portion of the Property may be used for the following purposes (the "Use Restrictions"):

      (i)   Seller's Exclusive Uses. Neither Buyer, its tenants, subtenants, licensees or concessionaires, or successors and assigns, will engage, directly or indirectly, in any of the following uses within the Property, which will be exclusive to Seller within the Shopping Center:

(a)     supermarket, grocery, bakery, or delicatessen;

(b)     sale of meat, seafood, vegetables/fruit/produce, dairy products or frozen foods for off-premises consumption;

(c)     sale of pet products, paper products and cleaning products;

(d)     pharmacy or prescription drug concession;

(e)     sale of beer and wine for off-premises consumption;

(f)     sale of liquor and spirits for off-premises consumption; and

(g)     photo lab or film development business.

(ii)    <u>Property Use Restrictions</u>.  Neither Buyer, its tenants, subtenants, licensees or concessionaires, or successors and assigns, will engage, directly or indirectly, in any of the following uses within the Property, which are to be prohibited within the Shopping Center:

(a)     Discount general stores, dollar stores, dime stores, thrift shops, and consignment shops, such as Dollar General, Big Lots, Goodwill, Family Dollar, and other similar businesses.

(b)     Convenience Stores, whether stand-alone or adjunct to a gas station or restaurant use.

At Seller's election, Seller may either modify the Declaration at or prior to Closing, or incorporate restrictive covenants into the Deed at Closing, as hereinafter defined, for the purpose of establishing the foregoing Use Restrictions, and Buyer hereby consents to such action as Permitted Encumbrances, as more particularly describe on attached <u>Exhibit B</u>, as covenants running with the land on the same basis as existing restrictive covenants contained in the Declaration.  Seller has no objection to the Property being used for any purpose not inconsistent with the Property Use Restrictions noted in the Declaration as modified pursuant to the foregoing provisions.

(c)     <u>Investigation Period</u>.  Buyer has inspected the Property and has determined that the same is satisfactory to Buyer.

4.      <u>TITLE AND SURVEY MATTERS</u>.

(a)     <u>Title Commitment</u>.  Buyer has obtained a title examination or title insurance commitment for the Property and has determined that the same is satisfactory to Buyer.   Buyer's title review identifies all exceptions and conditions to title, including, without limitation, those encumbrances created pursuant to the Credit Agreement dated as of February 23, 2005, as amended, between Seller and certain banks and financial institutions, and certain documents executed by Winn-Dixie Stores, Inc. or Seller in connection with such Credit Agreement (the "<u>Credit Agreement Liens</u>"), any other liens

2

and encumbrances affecting the Property ("<u>Other Liens</u>"), the Permitted Exceptions, and all other easements, restrictions, covenants,reservations and other encumbrances (collectively, the "<u>Exceptions</u>").

(b)  <u>Boundary Survey</u>. Buyer has examined a survey of the Property (the "<u>Survey</u>") and has determined that the same is satisfactory to Buyer.

5.  <u>WARRANTIES OF SELLER AND BUYER</u>.

(a)  <u>Winn-Dixie's Warranties</u>. Winn-Dixie warrants to Buyer as follows:

(i)  <u>Corporate Existence and Authority</u>. Winn-Dixie is a Florida corporation and its status is active. Subject to the satisfaction of the Approval Condition pursuant to <u>paragraph 6</u> below, Winn-Dixie has the corporate power and authority to enter this Agreement and to consummate the transactions contemplated herein.

(ii)  <u>Title to Property</u>. Winn-Dixie owns an undivided 50% fee simple title interest in the Property as tenant in common with Huber, subject to the Permitted Encumbrances and the Credit Agreement Liens.

(iii)  <u>Power to Convey</u>. To the best of Winn-Dixie's knowledge, and subject to satisfaction of the Approval Condition pursuant to <u>paragraph 6</u> below, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Winn-Dixie of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To the best of Winn-Dixie's knowledge, other than the Bankruptcy Cases, as defined in <u>paragraph 6</u> below, there is no action, suit, proceeding or investigation pending which would prevent Winn-Dixie's performance of the transactions contemplated by this Agreement or which would become a cloud on the title to Winn-Dixie's interest in the Property or any portion thereof or which questions the validity or enforceability of Winn-Dixie's performance of the transactions contemplated by this Agreement or any action taken pursuant hereto.

(b)  <u>Huber's Warranties</u>. Huber warrants to Buyer as follows:

(i)  <u>Existence and Authority</u>. Huber is a Florida general partnership that continues in existence, and has the power and authority to enter this Agreement and to consummate the transactions contemplated herein.

(ii)  <u>Title to Property</u>. Huber owns an undivided 50% fee simple title interest in the Property as tenant in common with Winn-Dixie, subject to the Permitted Encumbrances.

(iii)  <u>Power to Convey</u>. To the best of Huber's knowledge, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Huber of any agreement, judgment,

3

order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To the best of Huber's knowledge, there is no action, suit, proceeding or investigation pending which would prevent Huber's performance of the transactions contemplated by this Agreement or which would become a cloud on the title to Huber's interest in the Property or any portion thereof or which questions the validity or enforceability of Huber's performance of the transactions contemplated by this Agreement or any action taken pursuant hereto.

(c)     Buyer's Warranties. Buyer warrants to Seller as follows:

(i)     Existence and Authority. Buyer, or its permitted assigns, has full power and authority to enter this Agreement and to consummate the transactions contemplated herein, and if Buyer's assign is a business entity, such entity is duly authorized, validly existing and active in the state of its formation.

(ii)    Power to Acquire. To the best of Buyer's knowledge, and subject to satisfaction of the Approval Condition and Agency Acceptance Condition pursuant to paragraph 6 below, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Buyer of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To the best of Buyer's knowledge, other than the Bankruptcy Cases, there is no action, suit, proceeding or investigation pending which would prevent the transactions contemplated by this Agreement or which questions the validity or enforceability of the transactions contemplated by this Agreement or any action taken pursuant hereto.

(d)     Survival of Warranties. The respective warranties of Buyer and Seller above will not survive the Closing but will merge into the conveyance instruments, and will have no further force or effect after the Closing, and the liability of Seller under or with respect to the warranties will be limited to the express remedies of Buyer set forth in this Agreement.

6.      CLOSING CONDITIONS.

(a)     Approval Condition.

(i)     Chapter 11 Cases. Winn-Dixie Stores, Inc. and certain of its affiliated companies filed voluntary petitions for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, U.S.C. §101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "Filing Date") and have operated its businesses as debtors-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date (the "Bankruptcy Cases"). By order

4

entered on April 13, 2005, the Bankruptcy Cases were transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court") where they are being jointly administered under Case No. 05-03817-3F1.

(ii)     Court Approval Process. Promptly following execution of this Agreement, Seller will file a motion with the Bankruptcy Court seeking approval of the transactions contemplated by this Agreement, and the transfer of the Property free and clear of all claims and liens including the Credit Liens, other than Permitted Encumbrances, pursuant, inter alia, to 11 U.S.C. Sections 105, 363 and 1146(c) (the "Sale Motion"). The Bankruptcy Court will set a date for hearing on the Sale Motion and consider entry of the Sale Order (the "Sale Hearing"). Seller will submit to the Bankruptcy Court at the Sale Hearing, for entry of a Sale Order with respect to the Property by the Bankruptcy Court, approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby.

(iii)    Sale Order Approving Agreement. It will be a condition to the Closing of the transaction contemplated by this Agreement that the Bankruptcy Court will have issued the Sale Order approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, and such Sale Order either will have become final and non-appealable, or the Sale Order will contain a waiver of the stay set forth in Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "Approval Condition").

(iv)    Continuing Effectiveness of Agreement. If the Approval Condition is not otherwise satisfied by September 30, 2006 (the "Outside Date") through no fault of Buyer, then this Agreement automatically will terminate and the parties will have no further obligations to the other.

(b)    Agency Acceptance Condition.

(i)     Final Agency Acceptance.     Seller and Buyer acknowledge that, pursuant to Section 119.0711(2), Florida Statutes, this Agreement is subject to final acceptance by Buyer ("Final Agency Acceptance"). Closing will not occur prior to 30 days from the Effective Date to allow public review of this Agreement. Final Agency Acceptance will not be withheld by Buyer absent evidence of fraud, coercion, or undue influence involving this Agreement. Final Agency Acceptance will be evidenced by the Final Agency Acceptance appended hereto as duly executed by Buyer's representative (the "Agency Acceptance Condition").

(ii)    Continuing Effectiveness of Agreement. If the Agency Acceptance Condition is not otherwise satisfied the Outside Date through no fault of Buyer, then this Agreement automatically will terminate and the parties will have no further obligations to the other.

5

(c) <u>Conditions Precedent to Winn-Dixie's Obligations</u>. The obligations of Seller under this Agreement are subject to the Approval Condition and satisfaction on or before the Closing Date, or such other date as herein provided, of all conditions contained in this Agreement, including each of the following (any of which may be waived by Seller in its sole discretion, unless otherwise stated herein):

(i) Buyer will have performed in all material respects all of its covenants contained in this Agreement which are not qualified by reference to a materiality standard; and Buyer will have performed in all respects all of its covenants contained in this Agreement which are qualified by reference to a materiality standard. All of Buyer's representations and warranties contained in this Agreement will be true and accurate in all material respects as of the Effective Date and the Closing Date.

(ii) No order, injunction or decree issued by any applicable governmental authority or other legal restraint or prohibition preventing the consummation of the transactions contemplated by this Agreement with respect to the Property will be in effect, and Buyer will have satisfied the Agency Acceptance Condition.

If any of the foregoing conditions has not been satisfied on or before the Outside Date, then Seller will have the right to terminate this Agreement; provided, however, that if any of the foregoing conditions has not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations will be determined in accordance with <u>paragraph 13</u> of this Agreement.

7. <u>LOSS BY FIRE OR OTHER CASUALTY</u>. If, prior to each Seller's legal delivery of its respective Deeds and Buyer's delivery of the Purchase Price, the Property or any material part thereof, are destroyed or materially damaged, then either party will have the right, exercisable by giving notice of such decision to the other within 5 business days after receiving written notice of such damage or destruction, to terminate this Agreement, and thereafter none of the parties will have any further rights or obligations hereunder. If neither party exercises its right of termination the Property will be sold to Buyer pursuant to the terms of this Agreement, and as Buyer's sole remedies, Seller will assign to Buyer any rights it may have, and is entitled to assign, to recover insurance proceeds and will promptly pay over and deliver to Buyer any such proceeds received by it.

8. <u>CLOSING AND CLOSING DATE</u>. The consummation of the transactions contemplated herein by Buyer and Seller (the "Closing") will be held on or before that date which is 10 days following satisfaction of the latter of the Approval Condition and the Agency Approval Condition (the "Closing Date"), at a time and place mutually acceptable to the parties, but if none is agreed to, at the offices of Buyer, as closing agent ("Closing Agent"). Closing may be conducted by use of mail-away procedures including escrow and Closing disbursement and delivery of documents and funds administered by Closing Agent.

9. <u>CLOSING DELIVERIES</u>. On the Closing Date, Winn-Dixie and Huber each will execute and deliver its respective Deed to Buyer as will be required to convey title to the

6

Property to Buyer subject to the Permitted Encumbrances and in accordance with this Agreement. Additionally, on the Closing Date, Winn-Dixie and Huber each will execute and deliver the title affidavit as to its interest in the Proprty, as required by the Title Insurer to allow the issuance of the title insurance policy without the standard exceptions other than for taxes for the year of Closing, those standard exceptions required under the laws of the state in which the Property is located, and for specific matters disclosed by the Survey, and a non-foreign affidavit as required under the Internal Revenue Code. At Closing, Buyer and Seller will execute and deliver a closing statement setting forth the disbursement of the Purchase Price and closing costs associated with the transactions contemplated herein. On the Closing Date, Seller will turn over exclusive physical possession of the Property to Buyer upon confirmation to Seller by Closing Agent, that it has received and holds the entire Purchase Price for disbursement without further condition.

10.    CLOSING COSTS.  At or prior to Closing, Seller will pay the commission payable to Seller's brokers as disclosed in paragraph 12, and Seller's attorneys' fees and costs ("Seller's Closing Costs").  At or prior to Closing, Buyer will pay the cost of the title commitment and insurance policy to be issued pursuant to the Commitment in the amount of the Purchase price if Buyer chooses to so purchase a title insurance commitment or policy, the cost of the Survey if Buyer chooses to so purchase a Survey, the cost of its due diligence investigations of the Property, recording fees, all financing costs of Buyer incurred to purchase or develop the Property including simultaneous issue mortgagee title insurance and related endorsements, Buyer's attorneys' fees and costs and all other fees, costs and expenses incurred by the Buyer in connection herewith ("Buyer's Closing Costs").  Pursuant to Section 12B-4.013(4) of the Florida Statutes, conveyances of realty made to a governmental entity under threat of condemnation are not subject to documentary stamp taxes.  If this transaction fails to close for any reason, and without waiving any right or remedy that either party may have against the other in the event of a default hereunder, Seller promptly will pay Seller's Closing Costs, and Buyer promptly will pay Buyer's Closing Costs.

11.    PRORATIONS.  Seller is responsible for all taxes due on the Property up to, but not including, the day of closing.

12.    BROKERAGE.  Winn-Dixie has retained DJM Asset Management, LLC pursuant to Order Authorizing Debtors to Retain DJM Asset Management, LLC as Special Real Estate Consultants to the Debtors, issued by the Bankruptcy Court on June 10, 2005 (the "Retention Order").    Winn-Dixie will be responsible for payment of any commission or fee payable pursuant to the Retention Order.  Each party indemnifies and agrees to hold harmless the other from any claim made by any other broker or agent who claims to act for the party sought to be charged for a commission, compensation, brokerage fees, or similar payment in connection with this transaction and against any and all expense or liability arising out of any such claim.

13.    REMEDIES.

        (a)    Seller's Default.  In the event that Seller defaults in the performance of its obligations under this Agreement, and such default is not cured on or before the Closing Date, Buyer will be entitled to terminate this Agreement upon written notice to Seller and Closing Agent.  Buyer waives all other remedies it

Real Estate Purchase Agreement
Leesburg Outparcel – Florida
Winn-Dixie Stores, Inc. S/T FDOT
August 4, 2006
SGRJAX\77165.3

may have at law or in equity, except with respect to the indemnifications provided in <u>paragraph 12</u> above, which indemnification will survive separately from the termination of this Agreement.

(b)    Buyer's Default. If Buyer fails to comply with or perform any of the covenants, agreements, or obligations to be performed by Buyer under the terms and provisions of this Agreement, then Seller will be entitled to terminate this Agreement upon written notice to Buyer and Closing Agent, and Seller will be entitled to recover its reasonable damages incurred in negotiating and performing its obligations under this Agreement.    Seller waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided under <u>paragraph 3(c)(ii)</u> and <u>paragraph 12</u> above, which indemnifications will survive separately from the termination of this Agreement.

14.    [INTENTIONALLY OMITTED].

15.    NOTICES. All notices, demands, requests and other communications hereunder will be in writing and will be deemed to have been given (i) on the same business day if delivered personally, (ii) 3 business days following mailing by registered or certified mail, return receipt requested, postage prepaid, or (iii) on the same business day if sent by telefax, to Buyer, Seller or Closing Agent at its respective address set forth below:

| | |
|---|---|
| If to Winn-Dixie: | Winn-Dixie Stores, Inc. |
| | 5050 Edgewood Court |
| | Jacksonville, Florida  32254 |
| | Attention: Catherine Ibold |
| | Telefax No.: 904 783 5138 |
| with a copy to: | Smith, Gambrell & Russell, LLP |
| | 50 N. Laura Street, Suite 2600 |
| | Jacksonville, Florida  32202 |
| | Attention: Douglas Stanford |
| | Telefax No.: 904 598 6126 |
| If to Huber: | Huber Investments |
| | 625 Main Street, Suite 27 |
| | Windermere, Florida 34786 |
| | Attention: Don Huber |
| | Telefax No.: _____ |
| If to Buyer: | State of Florida Department of Transportation |
| | 719 S. Woodland Blvd. |
| | Deland, Florida 32720 |
| | Attention: James L. Clark |
| | Telefax No.: _____ |

or at such other address as the party may specify from time to time by written notice to the other party.

8

16.   MISCELLANEOUS PROVISIONS.

(a)   Successors And Assigns; Assignment Of Agreement. All terms of this Agreement will be binding upon, and will inure to the benefit of and be enforceable by the parties hereto and their respective legal representatives, heirs, successors and assigns. Except as set forth below, this Agreement may not be assigned by either party without the express written consent of the other. Notwithstanding the foregoing to the contrary, Buyer may freely assign its rights under this Agreement, without Seller's consent, as long as Buyer remains liable under this Agreement, and Buyer and its assignee have executed a written instrument pursuant to which such assignee expressly assumes Buyer's obligations hereunder, and a copy of such written assignment is delivered to Seller.

(b)   Governing Law. This Agreement will be governed and construed in accordance with the laws of the State of Florida. Any dispute arising out of or under this Agreement will be litigated in the Bankruptcy Court.

(c)   Captions. The captions of this Agreement are inserted for convenience or reference only and not to define, describe or limit the scope or the intent of this Agreement or any term hereof.

(d)   Counterparts. This Agreement may be executed in any number of counterparts, each of which will be deemed to be an original but all of which together will constitute one and the same instrument.

(e)   Changes And Modifications; Prior Agreements. This Agreement may not be orally changed, modified or terminated; it supersedes any and all prior understandings and/or letter agreements; other matters of similar nature will be deemed to be of no force or effect in the interpretation of this Agreement, it being intended that this Agreement represents the entire understanding of the parties. No waiver of any provision hereof will be valid unless in writing and signed by a party against whom it is to be enforced.

(f)   Waiver. No failure of either party to exercise any power given hereunder or to insist upon strict compliance with any obligations specified herein, and no custom or practice at variance with the terms hereof, will constitute a waiver of any party's right to demand exact compliance with the terms hereof; provided, however, that any party may, at its sole option, waive any requirement, covenant or condition herein established for the benefit of such party without affecting any of the other provisions of this Agreement.

(g)   Further Assurances; Cooperation. Seller and Buyer each agree to execute and deliver to the other such further documents and instruments as may be reasonable and necessary in furtherance of and to effectuate the intent of the parties as expressed by the terms and conditions hereof.

(h)   Attorneys' Fees. If either party commences an action against the other to enforce any of the terms hereof or because of the breach by either party of any of the covenants, terms or conditions hereof, the losing or defaulting party will pay to the prevailing party reasonable attorneys' fees, costs and

9

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Agreement as of the Effective Date.

**WINN-DIXIE:**

Signed, sealed and delivered
In the presence of:

**WINN-DIXIE STORES, INC.**, a Florida corporation

Name: REBECCA L. SAWYER

By: _____
Name: Bennett L. Nussbaum
Title: Senior Vice President

Name: LAURA L. ANDREWS

[Corporate Seal]

LEGAL APPROVED
ATTY: _____
DATE: 8/10/06

**HUBER:**

Signed, sealed and delivered
In the presence of:

**HUBER INVESTMENTS**, a Florida general partnership

Name: _____

By: _____
Name: _____
Title: _____

Name: _____

**BUYER:**

Signed, sealed and delivered
In the presence of:

**STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION**, a component agency of the State of Florida

Name: _____

By: _____
Name: _____
Title: FDOT Right of Way Agent

Name: _____

[Seal]

LEGAL APPROVED
ATTY: _____
DATE: _____

Reviewed By
XRoads
Date: _____

11

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Agreement as of the Effective Date.

**WINN-DIXIE:**

Signed, sealed and delivered
In the presence of:

**WINN-DIXIE STORES, INC.**, a Florida corporation

Name: _____

By: _____
Name: _____
Title: Senior Vice President

Name: _____

[Corporate Seal]


**HUBER:**

Signed, sealed and delivered
In the presence of:

**HUBER INVESTMENTS**, a Florida general partnership

Name: DORIS BIRKINBINE

By: _____
Name: Donald M. Huber
Title: President

Name: Kenneth M. Champion


**BUYER:**

Signed, sealed and delivered
In the presence of:

**STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION**, a component agency of the State of Florida

Name: _____

By: _____
Name: _____
Title: FDOT Right of Way Agent

Name: _____

[Seal]


11

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Agreement as of the Effective Date.

**WINN-DIXIE:**

Signed, sealed and delivered
In the presence of:

**WINN-DIXIE STORES, INC.,** a Florida corporation

By: _____

Name: _____          Name: _____

                                           Title: Senior Vice President

Name: _____          [Corporate Seal]

**HUBER:**

Signed, sealed and delivered
In the presence of;

**HUBER INVESTMENTS,** a Florida general partnership

Name: DORIS BIRKINBINE          By: _Donald M. Hub_____

                                Name: Donald M. Huber_____

Name: Kenneth M Champion        Title: President_____

**BUYER:**

Signed, sealed and delivered
In the presence of:

**STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION,** a component agency of the State of Florida

Name: James L. Clark            By: _Shirley Martin_____

                                Name: SHIRLEY W MARTIN_____

Name: Anissa J. Bolton          Title: FDOT Right of Way Agent  8-18-06

                                [Seal]

11

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Agreement as of the Effective Date.

**WINN-DIXIE:**

Signed, sealed and delivered
In the presence of:

**WINN-DIXIE STORES, INC.,** a Florida corporation

By: _____
Name: Bennett L. Nussbaum
Title: Senior Vice President

Name: REBECCA L. SAWYER

Name: LAURA L. ANDREWS

[Corporate Seal]

LEGAL APPROVED
ATTY: _____
DATE: 8/10/06

**HUBER:**

Signed, sealed and delivered
In the presence of:

**HUBER INVESTMENTS,** a Florida general partnership

Name: _____

By: _____
Name: _____
Title: _____

Name: _____

**BUYER:**

Signed, sealed and delivered
In the presence of:

**STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION,** a component agency of the State of Florida

By: _____
Name: 8-18-06 SHIRLEY J. MARTIN
Title: FDOT Right of Way Agent

Name: James L. Clark

Name: Anissa J. Bolton

[Seal]

LEGAL APPROVED
ATTY: _____
DATE: 8/18/06

Reviewed By
XRoads
Date: _____

11

Real Estate Purchase Agreement
Leesburg Outparcel – Florida
Winn-Dixie Stores, Inc. S/T FDOT
August 4, 2006
SGRJAX\77165.3

SCHEDULE OF ATTACHMENTS:

Final Agency Acceptance
Exhibit A - Legal Description of Property
Exhibit B – Schedule of Permitted Encumbrances

12

## FINAL AGENCY ACCEPTANCE

Buyer has granted Final Agency Acceptance this _____ day of _____, 2006.

### STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION

By: _____

Name: _____

Dated: _____ _____, 2006

13

## EXHIBIT A

### LEGAL DESCRIPTION OF PROPERTY

A part of Lot 8, N. C. Lee Estates, according to the plat hereof as recorded in Plat Book 1, Page 75, Public Records of Lake County, Florida, also being a part of Government Lot 5, in Section 23, Township 19, South, Range 24 East, Lake County, Florida, more particularly described as follows:

From the Northwest corner of Government Lot 5, in Section 23, Township 19, South, Range 24 East, Lake County, Florida, run Easterly along the North line of Government Lot 5 a distance of 199.30 feet to the Southwesterly right-of-way line of North Boulevard (U.S. Highway No. 441); thence South 37 degrees 14 minutes 30 seconds East along said Southwesterly right-of-way line of North boulevard a distance of 100.00 feet to a Point of Beginning; thence continue South 37 degrees 14 minutes 30 seconds East along said Southwesterly right-of-way line of North Boulevard a distance of 115.00 feet; thence South 53 degrees 20 minutes 01 seconds West a distance of 137.00 feet; thence North 37 degrees 14 minutes 30 seconds West a distance of 115.00 feet; thence North 53 degrees 20 minutes 01 seconds East a distance of 137.00 feet to the Point of Beginning.

## **EXHIBIT B**

SCHEDULE OF PERMITTED ENCUMBRANCES

1.  All assessments and taxes for the year 2006 and all subsequent years, which are not yet due and payable.

2.  Declaration of Restrictions and Grant of Easements in Regard to Leesburg Shopping Center, recorded April 28, 1987, in Official Records Book 917, Page 1047, Public Records of Lake County, Florida.

3.  Easement Deed, by and between Patrick T. Christiansen, individually and as Trustee, and The City of Leesburg, a political subdivision, dated March 27, 1987, recorded April 29. 1987, in Official Records Book 917, Page 1488, Public Records of Lake County, Florida.

All official records book and page references are to public records of Lake County, Florida.

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors. | ) | Jointly Administered |

**ORDER (A) AUTHORIZING THE DEBTORS
TO SELL LEESBURG OUTPARCEL AND RELATED
ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
AND INTERESTS, AND (B) GRANTING RELATED RELIEF**

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363 and Fed. R. Bankr. P. 6004: (a) authorizing Winn-Dixie Stores, Inc., a Florida corporation ("Winn-Dixie"), to sell its one-half fee simple interest in a tract of land located in Leesburg, Florida, as more particularly described on Exhibit A attached to the Motion (the "Leesburg Outparcel"), together with all related personal property and all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments (the "Assets"), to State of Florida Department of Transportation (the "Purchaser"), free and clear of liens, claims, interests and encumbrances and (b) granting related relief (the "Motion").[1]  A hearing on the Motion was held by the Court on September 21, 2006 (the "Sale Hearing").  The Court has read the Motion and considered the representations of

---

[1]     All capitalized terms not otherwise defined by this Order will have the meaning ascribed to them in the Motion or the Purchase Agreement.

counsel.  Upon the representations of counsel and without objection from the United States Trustee or any other interested party, the Court makes the following findings of fact:

A.     This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

B.     Winn-Dixie has provided interested parties (including all parties asserting claims on interests of the Assets, if any) with proper notice of the Motion and the Sale Hearing and the transactions contemplated by the Sale pursuant to 11 U.S.C. §§ 102(1), 105(a), 363 and Fed. R. Bankr. P. 2002 and 6004 and Local Rule 2002-1, the Bidding Procedures Order and the Notice Procedures Order.

C.     A reasonable opportunity to object or be heard with respect to the Motion and the sale of the Assets has been afforded to all parties in interest (including all third parties asserting Interests or Claims (as such terms are defined below) in, to or against the Assets, if any).

D.     Winn-Dixie (i) has full corporate power and authority to execute and consummate the purchase agreement attached as Exhibit A to this Order (the "Purchase Agreement") and all related documents, and the sale of the Assets has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

E.     Under the Purchase Agreement Winn-Dixie is required to pay its brokers' fees.

F.      Winn-Dixie has good business reasons to sell its interest in the Assets prior to filing a plan or reorganization pursuant to 11 U.S.C. § 363(b).

G.      The Purchaser is not an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

H.      The Purchase Agreement was proposed, negotiated and entered into by Winn-Dixie, Huber Investments and the Purchaser without collusion, in good faith and at arms'-length bargaining positions.  Neither Winn-Dixie nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

I.      The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m).

J.      The consideration being provided by the Purchaser to Winn-Dixie for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value and fair consideration for the Assets.

K.      Winn-Dixie's transfer of the Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with good and valid title in and to the Assets free and clear of any lien, interest or encumbrance of any kind or nature (collectively, the "Interests") and claim (as such term is defined in 11 U.S.C. § 101(5)) ("Claims") with the exception of the Permitted Encumbrances, as defined in the Purchase Agreement.

L.      Winn-Dixie may sell and transfer the Assets free and clear of all Interests and Claims (other than the Permitted Encumbrances) because any entity with

3

any Interests or Claims, if any, in the Assets to be transferred (i) has consented to the sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  Holders of Interests and Claims, if any, who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

M.     The Court's approval of the Purchase Agreement and the sale of the Assets to the Purchaser, or its designee, are in the best interests of the Debtors, their estates, their creditors and other parties in interest.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted.

2.     Any objections to the entry of this Order or to the relief granted and requested in the Motion that have not been withdrawn, waived or settled are denied and overruled on the merits.

3.     The terms and conditions of the Purchase Agreement are approved. Pursuant to 11 U.S.C. §§ 105(a), 363(b) and this Order, Winn-Dixie is authorized to consummate the Sale in accordance with the terms and conditions of the Purchase Agreement.

4.     Winn-Dixie is authorized to consummate and implement fully the Purchase Agreement, including the payment of its brokers' fees, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement, and Winn-Dixie is authorized to take all further actions as may reasonably be

necessary or appropriate for the purpose of conveying the Assets to the Purchaser, or its designee, or as may be necessary or appropriate to the performance of the Debtors' obligations under the Purchase Agreement.

5.      Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties without further order of the Court; provided, however, that, (a) the Debtors will first obtain the prior written consent of (i) the DIP Lender, and (ii) the Creditors' Committee, which consent will not be unreasonably withheld and (b) any such modification, amendment or supplement does not have a materially adverse effect on the Debtors' estates.

6.      Winn-Dixie will transfer the Assets to the Purchaser, or its designee, upon Closing free and clear of all Interests and Claims (except for the Permitted Encumbrances).    The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender and any other valid and enforceable liens, if any, will attach to the proceeds of the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

7.      Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, is a legal, valid, and effective transfer of the Assets and will vest the Purchaser, or its designee, with all right, title and interest of Winn-Dixie in and to the Assets, free and clear of all Interests and Claims (except for the Permitted Encumbrances).

8.      The consideration provided by the Purchaser, or its designee, for the Assets constitutes reasonably equivalent value and fair and reasonable consideration

5

under the Bankruptcy Code and applicable non-bankruptcy law, and may not be avoided under 11 U.S.C. § 363(n).

9.       Upon Closing of the Sale in accordance with the Purchase Agreement and this Order, the Purchaser is deemed to have acted in good faith in purchasing the Assets, as that term is used in 11 U.S.C § 363(m).   Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Assets will not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

10.       All entities that are presently in possession of some or all of the Assets are directed to surrender possession of the Assets to Winn-Dixie.  Each of Winn-Dixie's creditors is authorized and directed to execute any and all documents and take all other actions as may be necessary to release its Interests in and Claims against the Assets (except for the Permitted Encumbrances) (provided that the taking of such actions will not require such creditor to incur any material costs) as such Interests and Claims may have been recorded or may otherwise exist.  In the event any creditor fails to release its Interests in or Claims against the Assets, Winn-Dixie is authorized to file or record a copy of this Order.   Once filed, registered or otherwise recorded, this Order will constitute conclusive evidence of the release of all Interests in and Claims against the Assets (except for the Permitted encumbrances).

11.       Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances or Assumed Liabilities) against Winn-

Dixie or against an insider of the Debtors or (b) the Purchaser having any liability to Winn-Dixie except as expressly stated in the Purchase Agreement and this Order.

12.    Other than the Permitted Encumbrances, the Assumed Liabilities and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser and its designee, (and its affiliates, successors or assigns) will have no responsibility for any liability of Winn-Dixie arising under or related to the Assets. Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or the Assets by reason of such transfer under the laws of the United States or any state or territory.

13.    This Order is and will be effective as a determination that any and all Interests or Claims are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

14.    Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and marketable title in the Assets to the Purchaser, or its designee.  Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

15.    This Order is binding in all respects upon, and inures to the benefit of the Debtors and their estates and creditors, the Purchaser and its designee, successors and assigns, and this Order is binding in all respects upon all persons asserting an Interest

in or Claim against the Debtors and their estates or the Assets.  The sale is enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any chapter 7 or chapter 11 trustee of the Debtors and their estates.

16.    During the pendency of the Debtors' jointly administered cases, this Court will retain exclusive jurisdiction (a) to enforce and implement the Purchase Agreement and any agreements and instruments executed in connection with the Purchase Agreement, (b) to compel delivery of possession of the Assets to the Purchaser, (c) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement and (d) to interpret, implement, and enforce the provisions of this Order.

17.    All persons and entities that hold Interests in or Claims against Winn-Dixie or the Assets are forever barred, estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, or it successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale of the Assets.

18.    Nothing contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or any order of this Court confirming such a plan, or any other order entered in these chapter 11 cases or in any subsequent chapter 7 cases will conflict with or derogate from the terms of this Order.

19.    The failure specifically to include any particular provision of the Purchase Agreement in this Order will not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

8

20.    After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Interests or Claims or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

21.    To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the this Order will control.

22.    Notwithstanding Fed. R. Bankr. P. 6004(g), this Order will take effect immediately upon entry.

Dated this ____ day of September, 2006 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed
to serve a copy of this Order
on all persons served with
the Motion.

00541980.2

9