Hearing Date:  September 21, 2006, 1:00 p.m. (ET)
Objection Deadline:  September 14, 2006, 4:00 p.m. (ET)

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors.[1] | ) | Jointly Administered |

### AMENDED MOTION FOR AN ORDER (A) AUTHORIZING THE DEBTORS TO SELL EDGEWOOD OUTPARCEL AND RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS AND (B) GRANTING RELATED RELIEF

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 6004: (a) authorizing Winn-Dixie Stores, Inc. ("Winn-Dixie") to sell a tract of land located in Jacksonville, Florida, more particularly described on Exhibit A attached to this Motion (the "Edgewood Outparcel"), together with all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments to AJDC, LLC, a Georgia limited liability company (the "Purchaser"), or to a party submitting a higher or better offer, free and clear of liens, claims and interests and

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

(b) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

## Background

1.    On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered for procedural purposes only.

2.    The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner.  On March 1, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases pursuant to Bankruptcy Code sections 1102 and 1103.

3.    The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.

4.    The Debtors have no plans to develop the Edgewood Outparcel.

5.    The Debtors have marketed the Edgewood Outparcel extensively through DJM Asset Management, Inc. ("DJM").  DJM sent over 2,500 notices of sale to potential purchasers.  Through DJM's efforts, the Debtors have received 3

offers for the Edgewood Outparcel, including the offer by the Purchaser for $480,000. After reviewing all offers, including all terms of all offers, the Debtors have determined that the Purchaser's offer is the highest and best offer for the Edgewood Outparcel.

## Relief Requested

6.      By this Motion, the Debtors request authority to sell Winn-Dixie's fee simple title interest in the Edgewood Outparcel and all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments (collectively, the "Assets"), free and clear of liens, claims and interests, and subject to higher or better offers. The Assets are more fully described in the Real Estate Purchase Agreement (defined below).

## The Real Estate Purchase Agreement

7.      On March 16, 2006, the Debtors and the Purchaser entered into the Real Estate Purchase Agreement and seven amendments to the Real Estate Purchase Agreement, attached to this Motion as Exhibit A (collectively, the "Purchase Agreement").

8.      A summary of the material terms of the transaction with the Purchaser, subject to this Court's approval, are as follows:[2]

        (a)      Assets. The assets to be sold and transferred to the Purchaser are sold "As Is, Where Is" and include:

---

[2]      This summary of the Purchase Agreement is provided as a convenience only. To the extent that this summary differs in any way from the terms of the Purchase Agreement, the terms of the Purchase Agreement control.

(i)     Winn-Dixie's fee simple title interest in the Edgewood Outparcel; and

(ii)    Winn-Dixie's interest in all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments.

(b)     <u>Purchase Price</u>.  On the terms and subject to the conditions set forth in the Purchase Agreement, the net aggregate purchase price for the Assets is $480,000 (the "Purchase Price"). Buyer has deposited an initial earnest money deposit of $10,000 and a second deposit of $25,000 with the escrow agent.  At Closing, the combined deposits will be credited against the Purchase Price and the unpaid balance of the Purchase Price will be due and payable in cash.

(c)     <u>Exclusive Uses</u>.   The Purchase Agreement provides that neither the Purchaser, nor its tenants, subtenants, licensees or concessionaires, or successors and assigns, will engage directly or indirectly, in any of the following uses within the Assets:

(i)     supermarket, grocery, bakery or delicatessen;

(ii)    sale of meat, seafood, vegetables/fruit/produce, dairy products or frozen foods for off-premises consumption;

(iii)   sale of pet products, paper products and cleaning products;

(iv)    pharmacy or prescription drug concession;

(v)     sale of beer and wine for off-premises consumption;

(vi)    sale of liquor and spirits for off-premises consumption;

(vii)   photo lab or film development business.

(d)     <u>Use Restrictions</u>.   The Purchase Agreement provides that neither the Purchaser, nor its tenants, subtenants, licensees or concessionaires, or successors and assigns, will engage

directly or indirectly, in any of the following uses within the Assets:

    i.    discount general stores, dollar stores, dime stores, thrift shops, and consignment shops, such as Dollar General, Big Lots, Goodwill, Family Dollar, and other similar businesses;

    ii.    convenience stores, whether stand-alone or adjunct to a gas station or restaurant use.

(e)    <u>Automotive Uses</u>.  Winn-Dixie intends to permit the Purchaser to use the Assets for the display, storage and sale of new auto parts, accessories, supplies and maintenance items from a retail store building, but the Purchaser will not be permitted to use the Assets for any other automotive use, including auto service bays or part yards.  The Purchaser will not be permitted to perform fluid changes of any kind.

(f)    <u>Break-up Fee</u>.    Winn-Dixie has agreed to pay the Purchaser a termination fee of $20,000 for Purchaser's expenses incurred in the event Purchaser is not the successful bidder at the Auction for the Assets.

(g)    <u>Brokerage Fees</u>.   The Purchase Agreement provides that Winn-Dixie is responsible for payment of the brokerage commission due to Purchaser's Broker, only if the transaction is consummated at the date and time of Closing, in the amount of 3% of the Purchase Price.

(h)    <u>Sale Free and Clear</u>. The Purchase Agreement provides that the Assets are to be transferred free and clear of any liens, claims, interests and encumbrances other than the Permitted Encumbrances, as defined in the Purchase Agreement.

9.    The Debtors move for authority to consummate the sale of the Assets to the Purchaser or, alternatively, to the party submitting a higher or better offer for the Assets.

## Solicitation of Higher and Better Offers

10.     Notwithstanding that the Assets have been sufficiently marketed, the Debtors are soliciting higher and better bids for the Assets.  Any person or entity interested in submitting a higher and better bid for the Assets must submit such bid so that it is received by James Avallone at DJM, 445 Broadhollow Road, Suite 417, Melville, NY 11747, with a copy to undersigned counsel for the Debtors no later than 12:00 p.m. (prevailing Eastern Time) on September 18, 2006.  All bids must comply with the bidding procedures approved by order of the Bankruptcy Court dated June 21, 2005 (Docket No. 1801).  To qualify as a competing bid, the offer must net the Debtors' estates at least $480,000 and be accompanied by a wire or certified check made out to Winn-Dixie Stores, Inc. in an amount equal to 10% of the competing bid.

11.     If the Debtors receive a higher or better offer for the Assets, they will conduct an auction (the "Auction") for the Assets in accordance with the Bidding Procedures Order.  The Auction will take place at 10:00 a.m. (prevailing Eastern Time) at the offices of Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida on Wednesday, September 20, 2006 (the "Auction Date").  The Debtors will conduct the Auction in consultation with the Creditors' Committee and the DIP Lender and on terms the Debtors determine to be in the best interests of their estates and their creditors.

## Applicable Authority

**A.    Bankruptcy Code Section 363(b) Authorizes the Sale.**

12.    Bankruptcy Code section 363(b)(1) provides:    "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."    11 U.S.C. § 363(b)(1).    Bankruptcy Code section 1107(a) gives the Debtors, as debtors-in-possession, the same authority as a trustee to use, sell or lease property under section 363(b)(1).    *See* 11 U.S.C. § 1107(a).

13.    A Debtors' sale under section 363(b)(1) should be approved when supported by a sound business reason.    *See In re B.D.K. Health Mgmt., Inc.* ("B.D.K. Health Mgmt."), Case Nos. 98-00609-6B1, 1998 WL 34188241, at *5 (Bankr. M.D. Fla. November 16, 1998) (approving sale on expedited basis where sale serves a sound business purpose); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp.* (In re Chateaugay Corp.), 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented before him a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp.* (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *Fulton State Bank v. Schipper* (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of all a chapter 11 debtor's assets under

§ 363(b)(1) when a sound business purpose dictates such action"); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).

14.     Once a court is satisfied that a sound business reason for the sale exists, the Court must also consider whether (a) the sale price is fair and reasonable, (b) the purchaser is proceeding in good faith, and (c) the Debtor has provided interested parties with adequate and reasonable notice.  *Delaware & Hudson*, 124 B.R. at 175-176.

15.     The Debtors have a sound business reason for the sale of the Assets. The Debtors have no use for the Edgewood Outparcel and the sale of the Edgewood Outparcel will generate cash for the Debtors.

16.     The Debtors' sale of the Assets to the Purchaser is subject to competing bids, ensuring that the Debtors will receive the highest or best value for the Assets.  Thus, the fairness and reasonableness of the consideration to be received for the Assets ultimately will be demonstrated by a "market check" and auction process -- the best means for establishing whether a fair and reasonable price is being paid.

17.     If required, the Debtors are prepared to present further evidence of good faith during the course of the Sale Hearing that the Debtors believe will satisfy this Court and the mandates of Bankruptcy Code section 363(m).

18.     In accordance with Local Rule 2002-1, the Debtors will serve notice of the Motion on the following parties: (a) each taxing authority known to the

Debtors to have a potential interest in the Assets; (b) all parties that expressed interest in purchasing the Assets; (c) the Purchaser; (d) counsel for the DIP Lenders; (e) counsel for the Creditors' Committee; (f) counsel for the Equity Committee; (g) all known holders of Interests and Claims (as defined below) in the Assets; (h) all entities having requested notices pursuant to Fed. R. Bankr. P. 2002; and (i) the Office of United States Trustee.

**B.      Bankruptcy Code Section 363(f) Authorizes the Sale Free and Clear of Liens and Other Claims.**

19.      The Debtors request that their sale of the Assets be approved free and clear of any liens, claims or interests.  Pursuant to Bankruptcy Code section 363(f), a debtor may sell property of the estate free and clear of all liens, claims and interests after notice and hearing.  *See In re Parrish*, 171 B.R. 138 (Bankr. M.D. Fla. 1994).

20.      The Debtors believe that with the exception of the Permitted Encumbrances (as defined in the Purchase Agreement), there are no interests in or claims against the Assets other than the interest of Wachovia Bank, National Association, as Administrative Agent and Collateral Agent (collectively, the "DIP Lender").  The interest of the DIP Lender will be satisfied because the Debtors will cause the proceeds from the sale to be paid in accordance with the terms of the Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on a Superpriority Priming Lien Basis and Modifying the Automatic Stay, (II) Authorizing Debtors to Use Pre-Petition Secured Lenders' Cash Collateral and Granting Adequate Protection, and (III) Authorizing the Repayment in Full of All Claims of Debtors' Pre-Petition Secured Lenders dated March 23, 2005 (Docket No. 501) (the "Final Financing Order") and the Loan Documents (as defined in the Final Financing Order).

## C.    Good Faith Purchaser

21.    The Debtors request that the Court find that the Purchaser, or the party who ultimately submits the highest or best offer for the Assets, acted in good faith within the meaning of Bankruptcy Code section 363(m).

22.    Bankruptcy Code section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m)

23.    The Bankruptcy Code does not define the term "good faith."  Courts, however, indicate that a party would have to show fraud or collusion between the purchaser and the debtor-in-possession or trustee in order to demonstrate a lack of good faith.

10

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

> *In re Apex Oil Co.*, 2 B.R. 847, 865
> (Bankr. E.D. Mo. 1988)

*Accord Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.* (In re Colony Hill Assocs.), 111 F.3d 269, 276 (2d Cir. 1997). No such facts exist here.

24. The Debtors assert that: (a) the proposed sale is the subject of arm's length negotiations with the Purchaser and is made in good faith; (b) the Purchaser has no affiliation with the Debtors; (c) the Assets were marketed extensively and the purchase price is fair and reasonable; (d) to the best of the Debtors' knowledge, the Purchaser has taken no action to chill or otherwise collude with any other party to restrict bidding on the Assets; and (e) the marketing process that occurred and the notice of the Sale Hearing ensure that the Purchaser has not exerted undue influence over the Debtors. Accordingly, the Debtors request that the Court find that the Purchaser, or the party submitting a higher or better offer, acted in good faith within the meaning of Bankruptcy Code section 363(m). *See B.D.K. Health Mgmt.*, 1998 WL, at *4 (finding that the purchaser is entitled to the protections of Bankruptcy Code section 363(m) because the sale was negotiated at arms-length, proposed in good faith and the consideration for the assets was fair and reasonable).

**D.     Elimination of 10-Day Stay Under Rule 6004(g)**

25.     Pursuant to Rule 6004(g), Fed. R. Bankr. P., unless the Court orders otherwise, all orders authorizing the sale of property outside of the ordinary course of business pursuant to Bankruptcy Code section 363 are automatically stayed for ten days after entry of the order.   Given the requirements of the Purchase Agreement and the need to close the sale as promptly as possible, the Debtors request that the Court waive the 10-day stay period.

**E.     Objection Deadline**

26.     Only objections filed and served on Sally McDonald Henry at shenry@skadden.com, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 and on Cynthia C. Jackson at cjackson@smithhulsey.com, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202 so as to be received by September 14, 2006 at 4:00 p.m. (E.T.) will be considered by the Bankruptcy Court at the Hearing.

## **Conclusion**

For the foregoing reasons, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit B (a) granting the Motion and authorizing the sale of the Assets to the Purchaser in accordance with the Purchase Agreement, or to the party submitting a higher or otherwise better offer for the Assets; (b) authorizing the Debtors to take all actions reasonably necessary to effectuate the sale of the Assets in accordance with the Purchase Agreement; and (c) granting such other and further relief as the Court deems just and proper.

Dated: September 5, 2006.

SKADDEN, ARPS, SLATE, MEAGHER        SMITH HULSEY & BUSEY
& FLOM LLP

By    _/s/ D. J. Baker_                By    _/s/ Cynthia C. Jackson_
    D. J. Baker                    Stephen D. Busey
    Sally McDonald Henry                James H. Post
    Rosalie W. Gray                    Cynthia C. Jackson  (F.B.N. 498882)

Four Times Square                225 Water Street, Suite 1800
New York, New York 10036            Jacksonville, Florida  32202
(212) 735-3000                (904) 359-7700
(212) 735-2000 (facsimile)            (904) 359-7708 (facsimile)
djbaker@skadden.com                cjackson@smithhulsey.com

Co-Counsel for Debtors                Co-Counsel for Debtors

00541561

**EXHIBIT A**

DRAFT 3/1/06

## REAL ESTATE PURCHASE AGREEMENT
[Edgewood Outparcel]

**THIS REAL ESTATE PURCHASE AGREEMENT** (this "Agreement") is made as of March ____, 2006 (the "Effective Date"), between

**AJDC, LLC**, a Georgia limited liability company ("Buyer"), and

**WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller").

1.  SALE AND PURCHASE. Seller agrees to sell, assign, transfer and convey to Buyer, and Buyer agrees to purchase from Seller, that certain tract of land identified as Edgewood Outparcel, situated in Duval County, Florida, as more particularly described on attached Exhibit A, together with all appurtenances, rights, easements, rights-of-way, tenements and hereditaments incident thereto (the "Property"). The Property is located within a retail shopping center (the "Shopping Center"), as shown on the site plan as attached Exhibit B. The actual legal description of the Property will be determined by reference to the Survey, as defined below.

2.  PURCHASE PRICE AND PAYMENT. In consideration of the conveyance of the Property to Buyer, Buyer will pay to Seller the sum of $480,000 (the "Purchase Price"), payable as follows:

    (a)  An initial earnest money deposit of $10,000 (the "Initial Deposit") will be due and payable to Smith, Gambrell & Russell, LLP, through its Jacksonville, Florida office, as escrow agent ("Escrow Agent") under the provisions of paragraph 14 within 3 days after the Effective Date, and will be refundable to Buyer only as expressly provided in this Agreement.

    (b)  If Buyer does not timely terminate this Agreement prior to expiration of the Investigation Period, then a second earnest money deposit of $25,000 (the "Second Deposit") will be due and payable to Escrow Agent within 3 days after the expiration of the Investigation Period, as hereinafter defined. The Second Deposit will be refundable to Buyer only as expressly provided in this Agreement. The Initial Deposit by itself, and together with the Second Deposit if required to be delivered pursuant to this paragraph, will be referred to herein as the "Deposit."

    (c)  At Closing, the Deposit will be credited against the Purchase Price, and the unpaid balance of the Purchase Price will be due and payable in cash (as adjusted by prorations and payment of expenses as herein provided).

3.    PROPERTY CONDITION AND INVESTIGATION.

(a)    Property Conveyed AS IS. BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING, SELLER WILL SELL AND CONVEY TO BUYER AND BUYER WILL ACCEPT THE PROPERTY "**AS IS, WHERE IS,**" WITH ALL FAULTS, AND THERE ARE NO ORAL AGREEMENTS, WARRANTIES OR REPRESENTATIONS COLLATERAL TO OR AFFECTING THE PROPERTY BY SELLER OR ANY THIRD PARTY. THE TERMS AND CONDITIONS OF THIS PARAGRAPH WILL EXPRESSLY SURVIVE THE CLOSING AND NOT MERGE THEREIN.

(b)    Use Restrictions. Buyer acknowledges that the Deed contains restrictive covenants prohibiting or limiting certain enumerated uses on the Property, which are for the purpose of protecting Seller's continuing commercial interests within the Shopping Center. Seller intends to supplement the Deed, if necessary, to ensure that Seller will have the following exclusive use rights within the Shopping Center, and that no portion of the Property may be used for the following purposes (the "Use Restrictions"):

(i)    Seller's Exclusive Uses. Neither Buyer, its tenants, subtenants, licensees or concessionaires, or successors and assigns, will engage, directly or indirectly, in any of the following uses within the Property:

(a)    supermarket, grocery, bakery, or delicatessen;

(b)    sale of meat, seafood, vegetables/fruit/produce, dairy products or frozen foods for off-premises consumption;

(c)    sale of pet products, paper products and cleaning products;

(d)    pharmacy or prescription drug concession;

(e)    sale of beer and wine for off-premises consumption;

(f)    sale of liquor and spirits for off-premises consumption; and

(g)    photo lab or film development business.

(ii)    Property Use Restrictions. Neither Buyer, its tenants, subtenants, licensees or concessionaires, or successors and assigns, will engage, directly or indirectly, in any of the following uses within the Property:

(a)    Discount general stores, dollar stores, dime stores, thrift shops, and consignment shops, such as Dollar General, Big Lots, Goodwill, Family Dollar, and other similar businesses.

(b)    Convenience Stores, whether stand-alone or adjunct to a gas station or restaurant use, however Buyer will be permitted to sell snack foods and soft drinks from a sales floor area no larger than 50 square feet as an incidental use associated with a primary use as an auto parts store.

2

(iii)    <u>Automotive Uses</u>. Seller intends to permit Buyer to use the Property for the display, storage and sale of new auto parts, accessories, supplies and maintenance items from a retail store building, but Buyer will not be permitted to use the Property for any other automotive use, including auto service bays or part yards (such permitted use being referenced to as the "<u>Permitted Automotive Use</u>"). The Permitted Automotive Use will not preclude the conduct of the business of removal or installation of batteries, windshield wiper blades, and other non-hazardous, complimentary installations to automobiles. However, Buyer will not be permitted to perform fluid changes of any kind.

Seller intends to incorporate restrictive covenants into the Deed at Closing, as hereinafter defined, for the purpose of establishing the foregoing Use Restrictions and Permitted Automotive Use. The Use Restrictions will be individual Permitted Encumbrances as covenants running with the land on the same basis as existing restrictive covenants contained in the Deed.

(c)    <u>Investigation Period</u>.

(i)    Buyer will have a period commencing on the Effective Date and expiring at 5:00 p.m. on that date which is 30 days after the Effective Date, in which to investigate and inspect the Property to determine whether or not the same is satisfactory to Buyer, as determined in the sole discretion of Buyer (the "<u>Investigation Period</u>"). During the Investigation Period, Buyer will be provided access to the Property to inspect the physical condition thereof, including engineering and environmental studies, verify zoning, conduct appraisals, feasibility studies, obtain any financing desired by Buyer, make soil tests, determine allowable uses under zoning or the applicable comprehensive land use plan, test for hazardous materials, and to determine the availability of water, sewer and other utilities. All such investigations, tests, verifications, copies and examinations will be made by Buyer at Buyer's sole expense.

(ii)    Buyer indemnifies and agrees to defend and hold harmless Seller from and against any loss, damages or liability arising out of Buyer's investigation of the Property, including reasonable attorneys' fees. Buyer further indemnifies and agrees to defend and hold harmless Seller from and against all claims or liens against Seller or the Property filed by contractors, materialmen or laborers performing work and tests for Buyer. If this sale does not close, or if Buyer otherwise elects to terminate this Agreement as provided herein, Buyer will restore the Property to its original condition prior to such termination.

(iii)    Within 5 days after the Effective Date, Seller will deliver to Buyer, to the extent in the possession of Seller or its legal counsel, copies of all documents listed as Permitted Encumbrances, a copy of Seller's most recent available boundary survey or site plan, environmental site assessment report, and engineering reports, if any, relating to the Property (collectively, the "<u>Property Reports</u>"). Buyer acknowledges that the Property Reports are provided for informational purposes only, are not warranted by Seller for accuracy, completeness, or fitness for

3

a particular purpose, and are not a substitute for Buyer's own investigation and inspection of the Property using its own due diligence service providers.  If Buyer fails to close for any reason, all materials provided by Seller to Buyer (including without limitation, the Property Reports), all materials relating to the Property obtained by Buyer, and all copies of any such materials, will be delivered to Seller promptly, and in any event not later than 10 business days following such termination.

(iv)    Buyer agrees to accept the transfer and conveyance of the Property by Seller without any warranty or representation concerning the quantity, quality, or condition of the Property, the availability of water, sewer, utilities or necessary governmental authorizations, or any other matter not expressed in this Agreement.  Buyer is accepting the Property "AS IS" with all faults.  Seller has no obligation to make any independent investigation or verification of the condition of the Property.  THERE ARE NO EXPRESS OR IMPLIED WARRANTIES GIVEN TO BUYER IN CONNECTION WITH THE SALE OF THE SUBJECT PROPERTY (other than the warranties set forth in the Deed to be delivered by Seller to Buyer at Closing).

(v)     If Buyer determines, in accordance with the terms specified herein, that Buyer does not wish to proceed with the acquisition of the Property, then Buyer may, by written notice to Seller and Escrow Agent given not later than the expiration of the Investigation Period, terminate this Agreement and thereupon Buyer will have no further obligations hereunder except with respect to the indemnifications and restoration obligations given by Buyer to Seller as provided in this paragraph 3.    Upon such termination notice timely given, Escrow Agent will refund the Deposit to Buyer. In the event Buyer fails to terminate this Agreement prior to expiration of the Investigation Period, then Buyer will be deemed to have elected to proceed with the acquisition of the Property, and thereupon, the Second Deposit will be due and payable to Escrow Agent, and the Deposit will be nonrefundable to Buyer except in the event of: (A) a material default by Seller under this Agreement that is not cured by Seller on or before the Closing Date; (B) Seller's inability to deliver title pursuant to paragraph 4; (C) failure of the Approval Condition pursuant to paragraph 6 if such failure is not a result of a default by Buyer hereunder;  or  (D) a loss or condemnation event pursuant to paragraph 7 as a result of which Buyer timely elects not to acquire the Property. In the event that Buyer timely elects to terminate this Agreement, Seller agrees to promptly execute and deliver to Escrow Agent all releases and documentation required to refund the Deposit to Buyer.

4.    TITLE AND SURVEY MATTERS.

(a)    Title Commitment. Not later than 10 days after the Effective Date, Seller will obtain and deliver to Buyer a title insurance commitment (the "Commitment") from Fidelity National Title Insurance Company (the "Title Insurer") committing to insure Buyer's fee simple title to the Property for the amount of

4

the Purchase Price, and stating all exceptions and conditions to such title, including, without limitation, those encumbrances created pursuant to the Credit Agreement dated as of February 23, 2005, as amended, between Winn-Dixie Stores, Inc. and certain banks and financial institutions, and certain documents executed by Winn-Dixie Stores, Inc. or Seller in connection with such Credit Agreement (the "Credit Agreement Liens"), any other liens and encumbrances affecting the Property ("Other Liens"), the additional encumbrances as more fully described on the Schedule of Permitted Encumbrances attached as Exhibit C (the "Permitted Encumbrances"), and all other easements, restrictions, covenants, reservations, and other encumbrances affecting title that are accepted by Buyer (collectively, the "Exceptions"). The Commitment delivered to Buyer will include copies of all Exceptions. Buyer will have 5 days after receiving both the Commitment and the Survey, as hereinafter defined (the "Review Deadline"), to examine the Commitment. It is a condition of Buyer's obligation to close and pay to Seller the Purchase Price that title to the Property is marketable or insurable subject only to the Permitted Encumbrances and those other Exceptions that are reasonably acceptable to Buyer. If Buyer reasonably determines that any matter (other than Permitted Encumbrances) renders Seller's title to the Property unmarketable, Buyer will notify Seller in writing on or before the Review Deadline of Buyer's objections (the "Objection Notice").

(b)     Boundary Survey. Not later than 20 days after the Effective Date, Buyer will obtain and deliver to Seller and Title Insurer a current boundary survey of the Property (the "Survey"), prepared by a licensed surveyor in accordance with the minimum technical standards for surveys under the laws of the state in which the Property is located, showing a metes and bounds legal description for the Property (the "Legal Description"). Buyer will have until the Review Deadline to review the Survey and to deliver in the Objection Notice its objections to any matters that render Seller's title to the Property unmarketable (other than Permitted Encumbrances) disclosed by such Survey, including, without limitation, objections as to the accuracy or consistency with the Commitment or the Legal Descriptions.

(c)     Seller's Cure of Objections. If Buyer timely delivers the Objection Notice to Seller, Seller will have until the end of the Investigation Period to attempt to cure such objections, it being understood, however, that the Credit Agreement Liens and Other Liens will not be cured until issuance of the Sale Order and Closing. If Seller is unable or unwilling to cure any objections other than the Credit Agreement Liens and Other Liens prior to the end of the Investigation Period, then Buyer will have until the expiration of the Investigation Period to elect, by written notice to Seller, whether to (i) waive the unsatisfied objections and complete the purchase of the Property subject to the objectionable matters, or (ii) terminate this Agreement and cause the Deposit to be refunded to Buyer.

5

5.    WARRANTIES OF SELLER AND BUYER.

(a)    Seller's Warranties. Seller warrants to Buyer as follows:

(i)    Corporate Existence and Authority. Seller is a Florida corporation and its status is active.    Subject to the satisfaction of the Approval Condition pursuant to paragraph 6 below, Seller has the corporate power and authority to enter this Agreement and to consummate the transactions contemplated herein.

(ii)    Title to Property. Seller owns fee simple title to the Property, subject to the Permitted Encumbrances and the Credit Agreement Liens.

(iii)    Power to Convey. To Seller's knowledge, and subject to satisfaction of the Approval Condition pursuant to paragraph 6 below, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Seller of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To Seller's knowledge, other than the Bankruptcy Cases, as defined in paragraph 6 below, there is no action, suit, proceeding or investigation pending which would prevent the transactions contemplated by this Agreement or which would become a cloud on the title to the Property or any portion thereof or which questions the validity or enforceability of the transactions contemplated by this Agreement or any action taken pursuant hereto.

(b)    Buyer's Warranties. Buyer warrants to Seller as follows:

(i)    Existence and Authority. Buyer, or its permitted assigns, has full power and authority to enter this Agreement and to consummate the transactions contemplated herein, and if Buyer's assign is a business entity, such entity is duly authorized, validly existing and active in the state of its formation.

(ii)    Power to Acquire. To Buyer's knowledge, and subject to satisfaction of the Approval Condition pursuant to paragraph 6 below, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Buyer of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To Buyer's knowledge, other than the Bankruptcy Cases, there is no action, suit, proceeding or investigation pending which would prevent the transactions contemplated by this Agreement or which questions the validity or enforceability of the transactions contemplated by this Agreement or any action taken pursuant hereto.

6

        (iii)    <u>Financial Condition</u>.  Buyer represents, warrants and covenants that as of the Effective Date and continuing through the Closing Date, Buyer has and will have the sufficient funds on hand to perform its obligations under this Agreement, including payment of the Purchase Price at Closing.

   (c)    <u>Survival of Warranties</u>.  The respective warranties of Buyer and Seller above will not survive the Closing but will merge into the Deed, and will have no further force or effect after the Closing, and the liability of Seller under or with respect to the warranties will be limited to the express remedies of Buyer set forth in this Agreement.

6.    <u>CLOSING CONDITIONS</u>.

   (a)    <u>Approval Condition</u>.

        (i)    <u>Chapter 11 Cases</u>.  Seller (Winn-Dixie Stores, Inc. and certain of its affiliated companies) filed voluntary petitions for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, U.S.C. §101 <u>et seq.</u>, as amended (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "<u>Filing Date</u>") and have operated its businesses as debtors-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date (the "<u>Bankruptcy Cases</u>").  By order entered on April 13, 2005, the Bankruptcy Cases were transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "<u>Bankruptcy Court</u>") where they are being jointly administered under Case No. 05-03817-3F1.

        (ii)    <u>Competitive Bid Process</u>.  By Order dated June 20, 2005, the Bankruptcy Court approved bidding procedures and bid protections for use in the sale of assets in the Bankruptcy Cases (the "<u>Bidding Procedures</u>").  This Agreement is subject to the competitive bid process described in the Bidding Procedures. Promptly following the expiration of the Investigation Period, Seller will file a motion with the Bankruptcy Court seeking approval of the transactions contemplated by this Agreement, subject to higher or better offers, and the transfer of the Property free and clear of all claims and liens including the Credit Liens, other than Permitted Encumbrances, pursuant, <u>inter alia</u>, to 11 U.S.C. Sections 105, 363 and 1146(c) (the "<u>Sale Motion</u>").  The Bankruptcy Court will set a date for hearing on the Sale Motion and to consider entry of the Sale Order relating to the successful bid (the "<u>Sale Hearing</u>").  Prior to the Sale Hearing, the debtors will conduct an auction pursuant to the Bidding Procedures (the "<u>Auction</u>").  The Bidding Procedures allow Seller to accept competitive bids on the Property.  The party submitting the successful bid for the Property as selected by Seller is referred to as the "Successful Bidder".  Buyer may participate in the Auction, and may submit purchase terms different from those set forth in this Agreement as Buyer may deem appropriate in seeking to become the Successful Bidder.  Prior to the Sale Hearing, upon consultation with the Creditors' Committee and DIP Lender,

7

Seller will select the highest or otherwise best offer to purchase the Property, as determined by Seller in its sole discretion in accordance with the Bidding Procedures, as the Successful Bid (as defined in the Bidding Procedures). Seller will submit the Successful Bid to the Bankruptcy Court at the Sale Hearing, for entry of a Sale Order with respect to the Property by the Bankruptcy Court, either (a) approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, if Buyer is the Successful Bidder under the terms of this Agreement (or as modified during the Auction) or (b) approving the more favorable terms of purchase and sale offered by the Successful Bidder, whether Buyer or otherwise (the "Sale Order").

(iii)    Sale Order Approving Agreement. It will be a condition to the Closing of the transaction contemplated by this Agreement that the Bankruptcy Court will have issued the Sale Order approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, and such Sale Order either will have become final and non-appealable, or the Sale Order will contain a waiver of the stay set forth in Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "Approval Condition").

(iv)    Continuing Effectiveness of Agreement. Notwithstanding that Buyer may not be the Successful Bidder following the Bidding Procedures, this Agreement, as modified by Buyer's last bid made during the Bidding Procedures, will remain in effect in accordance with, and will remain subject to, the Bidding Procedures. If the Approval Condition is not otherwise satisfied by May 31, 2006 (the "Outside Date") through no fault of Buyer or if the sale of the Property closes with another Successful Bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other.

(b)    Conditions Precedent to Seller's Obligations. The obligations of Seller under this Agreement are subject to the Approval Condition and satisfaction on or before the Closing Date, or such other date as herein provided, of all conditions contained in this Agreement, including each of the following (any of which may be waived by Seller in its sole discretion, unless otherwise stated herein):

(i)    Buyer will have performed in all material respects all of its covenants contained in this Agreement which are not qualified by reference to a materiality standard; and Buyer will have performed in all respects all of its covenants contained in this Agreement which are qualified by reference to a materiality standard. All of Buyer's representations and warranties contained in this Agreement will be true and accurate in all material respects as of the Effective Date and the Closing Date.

8

(ii)     No order, injunction or decree issued by any applicable governmental authority or other legal restraint or prohibition preventing the consummation of the transactions contemplated by this Agreement with respect to such Store will be in effect.

If any of the foregoing conditions has not been satisfied on or before the Outside Date, then Seller will have the right to terminate this Agreement; provided, however, that if any of the foregoing conditions have not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations will be determined in accordance with paragraph 13 of this Agreement.

7.     LOSS BY FIRE OR OTHER CASUALTY; CONDEMNATION.  If, prior to Seller's legal delivery of the Deed and Buyer's delivery of the Purchase Price, the Property or any material part thereof is destroyed or materially damaged, or made the subject of a condemnation action, then either party will have the right, exercisable by giving notice of such decision to the other within 5 business days after receiving written notice of such damage, destruction or threatened condemnation, to terminate this Agreement, and thereafter neither of the parties will have any further rights or obligations hereunder; provided, however, that Buyer will be entitled to refund of the Deposit.  If neither party exercises its right of termination and the Property is sold to Buyer pursuant to the terms of this Agreement, then as Buyer's sole remedies, Seller will assign to Buyer any assignable rights it may have to recover insurance or condemnation proceeds and will promptly pay over and deliver to Buyer any such proceeds received by it.

8.     CLOSING AND CLOSING DATE.  The consummation of the transactions contemplated herein by Buyer and Seller (the "Closing") will be held on or before the 10th business day following the satisfaction of the Approval Condition (the "Closing Date"), at a time and place mutually acceptable to the parties, but if none is agreed to, at the offices of Escrow Agent in Jacksonville, Florida.  Closing may be conducted by use of mail-away procedures including escrow and Closing disbursement and delivery of documents and funds administered by Escrow Agent, as closing agent.

9.     CLOSING DELIVERIES.  On the Closing Date, Seller will execute and deliver a special warranty deed (the "Deed") to Buyer as will be required to convey title to the Property to Buyer subject to the Permitted Encumbrances and in accordance with this Agreement.  The Deed will be in form and substance reasonably satisfactory to Seller and Buyer and in proper form for recording.  Additionally, on the Closing Date, Seller will execute and deliver the title affidavit as required by the Title Insurer to allow the issuance of the title insurance policy without the standard exceptions other than for taxes for the year of Closing, those standard exceptions required under the laws of the state in which the Property is located, and for specific matters disclosed by the Survey, and a non-foreign affidavit as required under the Internal Revenue Code.  At Closing, Buyer and Seller will execute and deliver a closing statement setting forth the disbursement of the Purchase Price and closing costs associated with the transactions contemplated herein.  On the Closing Date, Seller will turn over exclusive physical possession of the Property to Buyer upon confirmation to Seller by the Escrow Agent that Escrow Agent has received and holds the entire Purchase Price for disbursement without further condition.

9

10. CLOSING COSTS. At or prior to Closing, Seller will pay the cost of documentary stamp taxes on the Deed (if required to be paid), the commission payable to Buyer's Broker and Seller's Broker as disclosed in paragraph 12, and Seller's attorneys' fees and costs ("Seller's Closing Costs"). At or prior to Closing, Buyer will pay the cost of the title commitment and insurance policy to be issued pursuant to the Commitment in the amount of the Purchase price, the cost of the Survey, its due diligence investigations of the Property, recording fees, all financing costs of Buyer incurred to purchase or develop the Property including simultaneous issue mortgagee title insurance and related endorsements, Buyer's attorneys' fees and costs and all other fees, costs and expenses incurred by the Buyer in connection herewith ("Buyer's Closing Costs"). If this transaction fails to close for any reason, and without waiving any right or remedy that either party may have against the other in the event of a default hereunder, Seller promptly will pay Seller's Closing Costs, and Buyer promptly will pay Buyer's Closing Costs.

11. PRORATIONS. All ad valorem taxes for the year in which the Closing occurs will be prorated between Seller and Buyer as of midnight immediately preceding the Closing Date. The tax proration at Closing may be based on an estimate using the previous year's tax amount.

12. BROKERAGE. Seller and Buyer acknowledge that Buyer has employed Colliers Dickinson ("Buyer's Broker") with respect to the sale of the Property, and Seller has retained DJM Asset Management, LLC ("Seller's Broker") pursuant to Order Authorizing Debtors to Retain DJM Asset Management, LLC as Special Real Estate Consultants to the Debtors, issued by the Bankruptcy Court on June 10, 2005 (the "Retention Order"). Seller will be responsible for payment of the brokerage commission due to Buyer's Broker only if the transaction is consummated at the date and time of Closing, in the amount of three percent (3%) of the Purchase Price. Seller will also be responsible for payment of the Seller's Broker pursuant to the Retention Order. Each party indemnifies and agrees to hold harmless the other from any claim made by any other broker or agent who claims to act for the party sought to be charged for a commission, compensation, brokerage fees, or similar payment in connection with this transaction and against any and all expense or liability arising out of any such claim.

13. REMEDIES.

   (a) Seller's Default. In the event that Seller defaults in the performance of its obligations under this Agreement, and such default is not cured on or before the Closing Date, then Buyer will be entitled to terminate this Agreement upon written notice to Seller and Escrow Agent and obtain a refund of the Deposit. Additionally, following satisfaction of the Approval Condition, if Seller's default is Seller's refusal to close the transaction contemplated herein, and Buyer otherwise is ready, willing and able to close, then Buyer further will be entitled to recover from Seller Buyer's actual documented out-of-pocket expenses, including reasonable attorneys' fees and costs, incurred in negotiating this Agreement, investigating the feasibility of acquiring the Property, and preparation for closing, up to a maximum amount of $10,000. Buyer waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided in paragraph 12 above, which indemnification will survive separately from the termination of this Agreement.

10

(b)     Buyer's Default. If Buyer fails to make the Deposit when due or to comply with or perform any of the covenants, agreements, or obligations to be performed by Buyer under the terms and provisions of this Agreement, then Seller will be entitled to terminate this Agreement upon written notice to Buyer and Escrow Agent, and the Deposit will be paid to Seller as reasonable liquidated damages. Seller waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided under paragraph 3(c)(ii) and paragraph 12 above, which indemnifications will survive separately from the termination of this Agreement.

14.   ESCROW AGENT.

(a)     Duties. By joining in the execution of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent. Upon receipt, Escrow Agent will hold the Deposit in trust, to be disposed of in accordance with the provisions of this Agreement.

(b)     Disclaimer. Escrow Agent will not be liable to either party except for claims resulting from the negligence or willful misconduct of Escrow Agent.

(c)     Role as Counsel. The parties acknowledge that Escrow Agent also serves as special real estate counsel to Seller. In the event of a dispute between Seller and Buyer concerning this Agreement to the Property, Escrow Agent may continue to serve both in its capacity as counsel to Seller and in its capacity as Escrow Agent, it being understood that Escrow Agent's duties and obligations as Escrow Agent are purely ministerial in nature.

(d)     Withdrawal. No party will have the right to withdraw any monies or documents deposited by it with Escrow Agent prior to the Closing or termination of this Agreement except in accordance with the terms of this Agreement.

(e)     Written Objection. If a written objection is filed with Escrow Agent, or Escrow Agent otherwise is in doubt as to its duties, Escrow Agent may continue to hold the funds in escrow until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court having jurisdiction of the dispute or the Escrow Agent may interplead the same in the Circuit Court and be relieved of any and all liability therefor. In any action or proceeding regarding the Deposit brought by Escrow Agent or to which Escrow Agent is made a party Escrow Agent will be entitled to recover its reasonable costs and attorney's fees (through appeal).

15.   NOTICES. All notices, demands, requests and other communications hereunder will be in writing and will be deemed to have been given (i) on the same business day if delivered personally, (ii) 3 business days following mailing by registered or certified mail, return receipt requested, postage prepaid, or (iii) on the same business day if sent by telefax, to Buyer, Seller or Escrow Agent at its respective address set forth below:

11

| If to Seller: | Winn-Dixie Stores, Inc. |
| | 5050 Edgewood Court |
| | Jacksonville, Florida  32254 |
| | Attention: Catherine Ibold |
| | Telefax No.: 904 783 5138 |

with a copy to:                     Smith, Gambrell & Russell, LLP
                                    50 N. Laura Street, Suite 2600
                                    Jacksonville, Florida  32202
                                    Attention: Douglas G. Stanford
                                    Telefax No.: 904 598 6226

If to Buyer:                        Hardage Real Estate
                                    507 Canal Street
                                    New Smyrna Beach, Florida  32168
                                    Attention: Joe Hardage
                                    Telefax No.: 386 428 4236

with a copy to:                     The Taylor Law Firm, P.C.
                                    3340 Peachtree Road, N.E.
                                    Suite 1800/Tower Place 100
                                    Atlanta, Georgia  30326
                                    Attention: Bradley J. Taylor
                                    Telefax No.: 404 795 9135

If to Escrow Agent:                 Smith, Gambrell & Russell, LLP
                                    50 N. Laura Street, Suite 2600
                                    Jacksonville, Florida  32202
                                    Attention: Douglas G. Stanford
                                    Telefax No.: 904 598 6226

or at such other address as the party may specify from time to time by written notice to the other party.

16.    MISCELLANEOUS PROVISIONS.

(a)    Successors And Assigns; Assignment Of Agreement. All terms of this Agreement will be binding upon, and will inure to the benefit of and be enforceable by the parties hereto and their respective legal representatives, heirs, successors and assigns.  Except as set forth below, this Agreement may not be assigned by either party without the express written consent of the other.  Buyer may assign its rights and obligations under this Agreement to an Affiliate as the "Buyer" hereunder, to AJDC Development, LLC, or to Discount Auto Parts, Inc., provided, however, that Buyer shall remain fully liable for performance of the obligations, including indemnifications, of the "Buyer" hereunder.  For purposes of the foregoing, "Affiliate" will mean a Person that (either directly or indirectly, through one or more intermediaries) controls, is in common control with or is controlled by, another Person, and any Person that is a director, trustee, officer, employee, agent, partner, shareholder, subsidiary or attorney of any of the foregoing, and will include,

12

without limitation, any limited liability company, partnership or corporation directly or indirectly controlled by, or in common control with, Buyer or Seller.

(b)     Governing Law. This Agreement will be governed and construed in accordance with the laws of the State of Florida. Any dispute arising out of or under this Agreement will be litigated in the Bankruptcy Court.

(c)     Captions. The captions of this Agreement are inserted for convenience or reference only and not to define, describe or limit the scope or the intent of this Agreement or any term hereof.

(d)     Counterparts. This Agreement may be executed in any number of counterparts, each of which will be deemed to be an original but all of which together will constitute one and the same instrument.

(e)     Changes And Modifications; Prior Agreements. This Agreement may not be orally changed, modified or terminated; it supersedes any and all prior understandings and/or letter agreements; other matters of similar nature will be deemed to be of no force or effect in the interpretation of this Agreement, it being intended that this Agreement represents the entire understanding of the parties. No waiver of any provision hereof will be valid unless in writing and signed by a party against whom it is to be enforced.

(f)     Waiver. No failure of either party to exercise any power given hereunder or to insist upon strict compliance with any obligations specified herein, and no custom or practice at variance with the terms hereof, will constitute a waiver of any party's right to demand exact compliance with the terms hereof; provided, however, that any party may, at its sole option, waive any requirement, covenant or condition herein established for the benefit of such party without affecting any of the other provisions of this Agreement.

(g)     Further Assurances. Seller and Buyer each agree to execute and deliver to the other such further documents and instruments as may be reasonable and necessary in furtherance of and to effectuate the intent of the parties as expressed by the terms and conditions hereof.

(h)     Attorneys' Fees. If either party commences an action against the other to enforce any of the terms hereof or because of the breach by either party of any of the covenants, terms or conditions hereof, the losing or defaulting party will pay to the prevailing party reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution and defense of such action.

(i)     Time Of Essence. Time is of the essence of each party's performance of this Agreement.

(j)     Business Day. Whenever a date specified herein will fall on a Saturday, Sunday or legal holiday, the date will be extended to the next succeeding Business Day. For purposes of the foregoing, "Business Day" will mean any day, other than a Saturday, Sunday or legal holiday.

13

(k)     WAIVER OF TRIAL BY JURY. BUYER AND SELLER EACH AGREE THAT THE NATURE OF THIS AGREEMENT MAKES A JURY DETERMINATION OF ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR THE PROPERTY UNDESIRABLE. ACCORDINGLY, BUYER AND SELLER EACH SPECIFICALLY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT EITHER OF THEM MAY HAVE IN ANY COURT WITH RESPECT TO ANY ACTION RELATING TO THIS AGREEMENT OR THE PROPERTY. THE FOREGOING WAIVER IS MADE KNOWINGLY, VOLUNTARILY AND INTENTIONALLY BY BOTH BUYER AND SELLER.

(l)     CONSENT TO JURISDICTION OF BANKRUPTCY COURT. THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

(m)     Radon Gas. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in paragraph 15 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

**[SIGNATURE PAGE FOLLOWS]**

14

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Agreement as of the Effective Date.

**SELLER:**

Signed, sealed and delivered
In the presence of:

**WINN-DIXIE STORES, INC.**, a Florida corporation

_____
Name: _____

By: _____
Name: _____
Title: Senior Vice President

_____
Name: _____

[Corporate Seal]


**BUYER:**

Signed, sealed and delivered
In the presence of:

**AJDC, LLC**, a Georgia limited liability company

_____
Name: _____

By: _____
Name: _____
Title: _____

_____
Name: _____

[Seal]

15

SCHEDULE OF EXHIBITS:

Exhibit A - Legal Description of Property
Exhibit B – Site Plan
Exhibit C - Schedule of Permitted Encumbrances

The undersigned, Escrow Agent, hereby consents and joins in the execution of this Real Estate Purchase Agreement for the limited purposes stated herein.

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
Name: Douglas G. Stanford
Title: Partner

Dated: March ____, 2006

## EXHIBIT A

### LEGAL DESCRIPTION OF PROPERTY

A PART OF THE SOUTHEAST 1/4 OF SECTION 7, TOWNSHIP 2 SOUTH, RANGE 26 EAST, DUVAL COUNTY, FLORIDA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

FOR A POINT OF REFERENCE, COMMENCE AT THE INTERSECTION OF THE NORTHERLY RIGHT OF WAY LINE OF COMMONWEALTH AVENUE (A 60 FOOT RIGHT OF WAY AS NOW ESTABLISHED) WITH THE WESTERLY RIGHT OF WAY LINE OF EDGEWOOD AVENUE (A 100 FOOT RIGHT OF WAY AS NOW ESTABLISHED); THENCE NORTH 00°07'54" EAST ALONG SAID WESTERLY RIGHT OF WAY LINE OF EDGEWOOD AVENUE, A DISTANCE OF 204.01 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 88°00'00" WEST LEAVING SAID RIGHT OF WAY LINE, A DISTANCE OF 397.59 FEET; THENCE NORTH 02°00'00" WEST, A DISTANCE OF 171.33 FEET; THENCE SOUTH 89°52'06" EAST, A DISTANCE OF 213.69 FEET; THENCE SOUTH 00°07'54" WEST, A DISTANCE OF 10.65 FEET; THENCE SOUTH 89°52'06" EAST, A DISTANCE OF 190.00 FEET TO THE AFORESAID RIGHT OF WAY LINE OF EDGEWOOD AVENUE; THENCE SOUTH 00°07'54" WEST, A DISTANCE OF 145.78 FEET TO THE POINT OF BEGINNING.

**EXHIBIT B**

**SITE PLAN**



## EXHIBIT C

## SCHEDULE OF PERMITTED ENCUMBRANCES

1.   All assessments and taxes for the year 2006 and all subsequent years, which are not yet due and payable.

2.   Terms and Conditions of Easement Agreement as recorded in <u>Official Records Book 1845, page 581</u>, of the public records of Duval County, Florida.

3.   Construction, Operation and Reciprocal Easement Agreement as recorded in <u>Official Records Book 5678, page 652</u>, amended by Amendment and Supplemental Agreement recorded in <u>Official Records Book 5678, page 694</u>, and by the Amendment and Supplemental recorded in <u>Official Records Book 7130, page 1963</u> of the public records of Duval County, Florida.

4.   Terms and Conditions of Easement Agreement as recorded in <u>Official Records Book 5807, page 1125</u> of the public records of Duval County, Florida.

5.   Terms and Conditions of Easement Agreement as recorded in <u>Official Records Book 5905, page 1390</u> of the public records of Duval County, Florida.

6.   Terms and Conditions of Easement Agreement as recorded in <u>Official Records Book 5912, page 463</u> of the public records of Duval County, Florida.

7.   Terms and Conditions of Easement Agreement as recorded in <u>Official Records Book 5936, page 1324</u> of the public records of Duval County, Florida.

8.   Terms and Conditions of Easement Agreement as recorded in <u>Official Records Book 5936, page 1341</u> of the public records of Duval County, Florida.

9.   Restrictions as contained in instrument recorded in <u>Official Records Book 5936, page 1348</u> of the public records of Duval County, Florida.

10.  Jacksonville Electric Authority Easement as recorded in <u>Official Records Book 11666, page 312</u> of the public records of Duval County, Florida.

**AMENDMENT TO**
**REAL ESTATE PURCHASE AGREEMENT**

**THIS AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "Amendment") is made effective as of April 14, 2006, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller") and **AJDC, LLC**, a Georgia limited liability company ("Buyer").

**RECITALS:**

A.    Seller and Buyer are parties to that certain Real Estate Purchase Agreement dated effective March 16, 2006 (the "Agreement"), pursuant to which Seller has agreed to sell to Buyer the Property described therein located in Duval County, Florida.

B.    The Agreement provided Buyer with a period expiring on April 14, 2006 (the "Investigation Period"), in which to investigate and inspect the Property to determine whether the same is satisfactory to Buyer.

C.    Buyer has requested an extension of the Investigation Period to May 1, 2006, and Seller has agreed to grant that extension.

D.    Seller and Buyer desire to amend the Agreement and enter into this Amendment for the purpose of evidencing such extension.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    Amendment of Agreement. Seller and Buyer hereby amend the first sentence of paragraph 3(c)(i) of the Agreement as follows:

"Buyer will have a period commencing on the Effective Date and expiring at 5:00 p.m. on May 1, 2006, in which to investigate and inspect the Property to determine whether or not the same is satisfactory to Buyer (the "Investigation Period")."

2.    Miscellaneous.  Except as expressly provided in this Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Amendment and the Agreement, the provisions of this Amendment shall be controlling.  Capitalized terms used in this Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.**, a
Florida corporation

Name: REBECCA L. SAWYER

By:_____
Name: Bennett L. Nussbaum
Title: Senior Vice-President

Name: SUSAN MAGADDINO

[CORPORATE SEAL]

CBI
4/13/06

Reviewed By
XRoads
Date: 4/13/06

**BUYER:**

**AJDC, LLC**, a Georgia limited liability
company

Name:_____

By:_____
Name:_____
Title:_____

Name:_____

[CORPORATE SEAL]

**IN WITNESS WHEREOF,** Seller and Buyer have executed this Amendment as of the date first above written.

Witnesses:

    **SELLER:**

    **WINN-DIXIE STORES, INC.,** a
    Florida corporation

_____

Name:_____

    By:_____
    Name:_____
    Title:_____

_____

Name:_____

    [CORPORATE SEAL]

    **BUYER:**

    **AJDC, LLC,** a Georgia limited liability
    company

Name: _Deborah Huskey_

Name: _DIANA Freeman_

    By: _Joseph C. Ha_
    Name: _Joseph C. Hardage_
    Title: _Member_

    [CORPORATE SEAL]

The undersigned, Escrow Agent, hereby acknowledges the foregoing Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____

Name: Douglas G. Stanford
Title: Partner
Dated: April _____, 2006

**SECOND AMENDMENT TO
REAL ESTATE PURCHASE AGREEMENT**

**THIS SECOND AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "Second Amendment") is made effective as of May 1, 2006, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller") and **AJDC, LLC**, a Georgia limited liability company ("Buyer").

**RECITALS:**

A.   Seller and Buyer are parties to that certain Real Estate Purchase Agreement dated effective March 16, 2006, as amended April 14, 2006 (the "Agreement"), pursuant to which Seller has agreed to sell to Buyer the Property described therein located in Duval County, Florida.

B.   The Agreement provided Buyer with a period expiring on May 1, 2006 (the "Investigation Period"), in which to investigate and inspect the Property to determine whether the same is satisfactory to Buyer.

C.   Buyer has requested an extension of the Investigation Period to May 17, 2006, and Seller has agreed to grant that extension.

D.   Seller and Buyer desire to amend the Agreement and enter into this Second Amendment for the purpose of evidencing such extension.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.   Amendment of Agreement. Seller and Buyer hereby amend the first sentence of paragraph 3(c)(i) of the Agreement as follows:

"Buyer will have a period commencing on the Effective Date and expiring at 5:00 p.m. on May 17, 2006, in which to investigate and inspect the Property to determine whether or not the same is satisfactory to Buyer (the "Investigation Period")."

2.   Miscellaneous.   Except as expressly provided in this Second Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Second Amendment and the Agreement, the provisions of this Second Amendment shall be controlling. Capitalized terms used in this Second Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Second Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.**, a Florida corporation

By: _____
Name: LAURENCE B. APPEL
Title: Senior Vice President

Name: REBECCA L. SAWYER

Name: SUSAN MAGADDINO

[CORPORATE SEAL]

Reviewed By

XRoads

LEGAL APPROVED
ATTY: _____
DATE: 3/11/06

Date: _____

**BUYER:**

**AJDC, LLC**, a Georgia limited liability company

By: _____
Name: _____
Title: _____

Name: _____

Name: _____

[SEAL]

The undersigned, Escrow Agent, hereby acknowledges the foregoing Second Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____

Name: Douglas G. Stanford
Title: Partner
Dated: May __, 2006

**THIRD AMENDMENT TO**
**REAL ESTATE PURCHASE AGREEMENT**

**THIS THIRD AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "Third Amendment") is made effective as of May 17, 2006, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller") and **AJDC, LLC**, a Georgia limited liability company ("Buyer").

**RECITALS:**

A.    Seller and Buyer are parties to that certain Real Estate Purchase Agreement dated effective March 16, 2006, as amended from time to time (the "Agreement"), pursuant to which Seller has agreed to sell to Buyer the Property described therein located in Duval County, Florida.

B.    The Agreement provided Buyer with a period expiring on May 17, 2006 (the "Investigation Period"), in which to investigate and inspect the Property to determine whether the same is satisfactory to Buyer.

C.    Seller and Buyer have opted to extend the Investigation Period to June 8, 2006.

D.    Seller and Buyer desire to amend the Agreement and enter into this Third Amendment for the purpose of evidencing such extension.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    Amendment of Agreement. Seller and Buyer hereby amend the first sentence of paragraph 3(c)(i) of the Agreement as follows:

"Buyer will have a period commencing on the Effective Date and expiring at 5:00 p.m. on June 8, 2006, in which to investigate and inspect the Property to determine whether or not the same is satisfactory to Buyer (the "Investigation Period")."

2.    Extension of Outside Date.   Seller and Buyer hereby amend the last sentence of paragraph 6(a)(v) of the Agreement to state as follows:

"If the Approval Condition is not otherwise satisfied by July 31, 2006 (the "Outside Date") through no fault of Buyer or if the sale of the Property closes with another Successful Bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other."

3.    Miscellaneous.    Except as expressly provided in this Third Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Third Amendment and the Agreement, the provisions of this Third Amendment shall be controlling. Capitalized terms used in this Third Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Third Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.**, a
Florida corporation

_____
Name:_____

By:_____
Name:_____
Title:_____

_____
Name:_____

[CORPORATE SEAL]

**BUYER:**

**AJDC, LLC**, a Georgia limited liability company

_____
Name:_____

By:_____
Name:_____
Title:_____

_____
Name:_____

[SEAL]

The undersigned, Escrow Agent, hereby acknowledges the foregoing Third Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

**SMITH, GAMBRELL & RUSSELL, LLP**


By: _____


Name: Douglas G. Stanford
Title: Partner
Dated: May ____, 2006

**FOURTH AMENDMENT TO**
**REAL ESTATE PURCHASE AGREEMENT**

**THIS FOURTH AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "Fourth Amendment") is made effective as of June 8, 2006, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller") and **AJDC, LLC**, a Georgia limited liability company ("Buyer").

**RECITALS:**

A.    Seller and Buyer are parties to that certain Real Estate Purchase Agreement dated effective March 16, 2006, as amended from time to time (the "Agreement"), pursuant to which Seller has agreed to sell to Buyer the Property described therein located in Duval County, Florida.

B.    The Agreement provided Buyer with a period expiring on June 8, 2006 (the "Investigation Period"), in which to investigate and inspect the Property to determine whether the same is satisfactory to Buyer.

C.    Seller and Buyer have opted to extend the Investigation Period to June 22, 2006.

D.    Seller and Buyer desire to amend the Agreement and enter into this Fourth Amendment for the purpose of evidencing such extension.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    Amendment of Agreement. Seller and Buyer hereby amend the first sentence of paragraph 3(c)(i) of the Agreement as follows:

"Buyer will have a period commencing on the Effective Date and expiring at 5:00 p.m. on June 22, 2006, in which to investigate and inspect the Property to determine whether or not the same is satisfactory to Buyer (the "Investigation Period")."

2.    Extension of Outside Date.   Seller and Buyer hereby amend the last sentence of paragraph 6(a)(v) of the Agreement to state as follows:

"If the Approval Condition is not otherwise satisfied by August 31, 2006 (the "Outside Date") through no fault of Buyer or if the sale of the Property closes with another Successful Bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other."

3.    Miscellaneous.   Except as expressly provided in this Fourth Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Fourth Amendment and the Agreement, the provisions of this Fourth Amendment shall be controlling. Capitalized terms used in this Fourth Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Fourth Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.**, a
Florida corporation

_____
Name:_____

By:_____
Name:_____
Title:_____

_____
Name:_____

[CORPORATE SEAL]

**BUYER:**

**AJDC, LLC**, a Georgia limited liability
company

_____
Name:_____

By:_____
Name:_____
Title:_____

_____
Name:_____

[SEAL]

The undersigned, Escrow Agent, hereby acknowledges the foregoing Fourth Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

**SMITH, GAMBRELL & RUSSELL, LLP**


By: _____


Name: Douglas G. Stanford
Title: Partner
Dated: June ____, 2006

## FIFTH AMENDMENT TO
## REAL ESTATE PURCHASE AGREEMENT

**THIS FIFTH AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "Fifth Amendment") is made effective as of June 22, 2006, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller") and **AJDC, LLC**, a Georgia limited liability company ("Buyer").

### RECITALS:

A.    Seller and Buyer are parties to that certain Real Estate Purchase Agreement dated effective March 16, 2006, as amended from time to time (the "Agreement"), pursuant to which Seller has agreed to sell to Buyer the Property described therein located in Duval County, Florida.

B.    The Agreement provided Buyer with a period expiring on June 22, 2006 (the "Investigation Period"), in which to investigate and inspect the Property to determine whether the same is satisfactory to Buyer.

C.    Seller and Buyer have opted to extend the Investigation Period to August 3, 2006.

D.    Seller and Buyer desire to amend the Agreement and enter into this Fifth Amendment for the purpose of evidencing such extension.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    Amendment of Agreement. Seller and Buyer hereby amend the first sentence of paragraph 3(c)(i) of the Agreement as follows:

"Buyer will have a period commencing on the Effective Date and expiring at 5:00 p.m. on August 3, 2006, in which to investigate and inspect the Property to determine whether or not the same is satisfactory to Buyer (the "Investigation Period")."

2.    Extension of Outside Date.  Seller and Buyer hereby amend the last sentence of paragraph 6(a)(v) of the Agreement to state as follows:

"If the Approval Condition is not otherwise satisfied by September 15, 2006 (the "Outside Date") through no fault of Buyer or if the sale of the Property closes with another Successful Bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other."

3.    Miscellaneous.    Except as expressly provided in this Fifth Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Fifth Amendment and the Agreement, the provisions of this Fifth Amendment shall be controlling. Capitalized terms used in this Fifth Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Fifth Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.**, a
Florida corporation

By:_____
Name: Bennett L. Nussbaum
Title: Senior Vice President

Name:_____

Name:_____

[CORPORATE SEAL]

**BUYER:**

**AJDC, LLC**, a Georgia limited liability
company

By:_____
Name:_____
Title:_____

Name:_____

Name:_____

[SEAL]

Reviewed By
_____
XRoads
Date:_____

LEGAL APPROVED
ATTY:_____
DATE:_____

2    Real Estate Purchase Agreement – Fifth Amendment
Edgewood Outparcel
Winn-Dixie Stores, Inc. S/T AJDC, LLC
July 18, 2006
SGRJAX\89760.1

**IN WITNESS WHEREOF,** Seller and Buyer have executed this Fifth Amendment as of the date first above written.

**SELLER:**

Witnesses:

**WINN-DIXIE STORES, INC.,** a
Florida corporation

_____        By:_____
Name:_____        Name:_____
                                       Title:_____

_____
Name:_____                [CORPORATE SEAL]


**BUYER:**

**AJDC, LLC,** a Georgia limited liability
company

Name: Jennifer T. McCrary             By:_____
                                       Name:____Joseph C. Hardage_____
Name: L. D. HARDAGE                    Title:_____Member_____

                                               [SEAL]

The undersigned, Escrow Agent, hereby acknowledges the foregoing Fifth Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____

Name: Douglas S. Stanford
Title: Partner
Dated: July 24, 2006

## SIXTH AMENDMENT TO
## <u>REAL ESTATE PURCHASE AGREEMENT</u>

**THIS SIXTH AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "<u>Sixth Amendment</u>") is made effective as of August 3, 2006, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("<u>Seller</u>") and **AJDC, LLC**, a Georgia limited liability company ("<u>Buyer</u>").

### <u>RECITALS:</u>

A.    Seller and Buyer are parties to that certain Real Estate Purchase Agreement dated effective March 16, 2006, as amended from time to time (the "<u>Agreement</u>"), pursuant to which Seller has agreed to sell to Buyer the Property described therein located in Duval County, Florida.

B.    The Agreement provided Buyer with a period expiring on August 3, 2006 (the "<u>Investigation Period</u>"), in which to investigate and inspect the Property to determine whether the same is satisfactory to Buyer.

C.    Seller and Buyer have opted to extend the Investigation Period to August 15, 2006.

D.    Seller and Buyer desire to amend the Agreement and enter into this Sixth Amendment for the purpose of evidencing such extension.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    <u>Amendment of Agreement</u>. Seller and Buyer hereby amend the first sentence of <u>paragraph 3(c)(i)</u> of the Agreement as follows:

"Buyer will have a period commencing on the Effective Date and expiring at 5:00 p.m. on August 15, 2006, in which to investigate and inspect the Property to determine whether or not the same is satisfactory to Buyer (the "<u>Investigation Period</u>")."

2.    <u>Extension of Outside Date</u>.   Seller and Buyer hereby amend the last sentence of paragraph 6(a)(v) of the Agreement to state as follows:

"If the Approval Condition is not otherwise satisfied by September 30, 2006 (the "<u>Outside Date</u>") through no fault of Buyer or if the sale of the Property closes with another Successful Bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other."

3.    <u>Miscellaneous</u>.   Except as expressly provided in this Sixth Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Sixth Amendment and the Agreement, the provisions of this Sixth Amendment shall be controlling.  Capitalized terms used in this Sixth Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Sixth Amendment as of the date first above written.

**SELLER:**

Witnesses:

**WINN-DIXIE STORES, INC.**, a
Florida corporation

_____

Name:_____

By:_____

Name:_____

Title:_____

_____

Name:_____

[CORPORATE SEAL]

**BUYER:**

**AJDC, LLC**, a Georgia limited liability
company

_____

Name:_____

By:_____

Name:_____

Title:_____

_____

Name:_____

[SEAL]

The undersigned, Escrow Agent, hereby acknowledges the foregoing Sixth Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

**SMITH, GAMBRELL & RUSSELL, LLP**


By: _____


Name: Douglas G. Stanford
Title: Partner
Dated: August ____, 2006

**SEVENTH AMENDMENT TO**
**REAL ESTATE PURCHASE AGREEMENT**

**THIS SEVENTH AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "Seventh Amendment") is made effective as of August 11, 2006, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller") and **AJDC, LLC**, a Georgia limited liability company ("Buyer").

**RECITALS:**

A.     Seller and Buyer are parties to that certain Real Estate Purchase Agreement dated effective March 16, 2006, as amended from time to time (the "Agreement"), pursuant to which Seller has agreed to sell to Buyer the Property described therein located in Duval County, Florida.

B.     Seller and Buyer desire to amend the Agreement and enter into this Seventh Amendment as hereinafter provided.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.     Amendment of Agreement. Seller and Buyer hereby amend the Agreement to include the following additional provision as new paragraph 6(c):

"Break-up Fee.  If Buyer is not the Successful Bidder and Buyer has not breached this Agreement, upon Closing of the sale of the Property to the Successful Bidder, Seller shall pay to Buyer the sum of $20,000 as an agreed-upon fee for Buyer's costs and expenses related to entering into this Agreement (the "Break-up Fee")."

2.     Inclusion of Declaration.  Seller and Buyer hereby amend the Agreement to include the Declaration of Restrictive Covenants (the "Declaration") as Exhibit C to the Agreement.  Prior to Closing, Seller will impose certain restrictions on the property as set forth in the Declaration.  Seller and Buyer agree that the Declaration will be recorded prior to the Deed and will be a Permitted Encumbrance.

3.     Miscellaneous.   Except as expressly provided in this Seventh Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Seventh Amendment and the Agreement, the provisions of this Seventh Amendment shall be controlling. Capitalized terms used in this Seventh Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Seventh Amendment as of the date first above written.

Witnesses:

                        **SELLER:**

                        **WINN-DIXIE STORES, INC.**, a
Florida corporation

_____    By:_____
Name:_____    Name:_____
                                Title:_____

_____
Name:_____                [CORPORATE SEAL]

                        **BUYER:**

                        **AJDC, LLC**, a Georgia limited liability company

_____    By:_____
Name:_____    Name:_____
                                Title:_____

_____
Name:_____                      [SEAL]

The undersigned, Escrow Agent, hereby acknowledges the foregoing Seventh Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

**SMITH, GAMBRELL & RUSSELL, LLP**


By: _____


Name:  Douglas G. Stanford
Title:  Partner
Dated: August ____, 2006

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors. | ) | Jointly Administered |

**ORDER (A) AUTHORIZING THE DEBTORS**
**TO SELL EDGEWOOD OUTPARCEL AND RELATED**
**ASSETS FREE AND CLEAR OF LIENS, CLAIMS,**
**AND INTERESTS, AND (B) GRANTING RELATED RELIEF**

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363 and Fed. R. Bankr. P. 6004: (a) authorizing Winn-Dixie Stores, Inc., a Florida corporation ("Winn-Dixie"), to sell a tract of land located in Jacksonville, Florida, as more particularly described on Exhibit A attached to the Motion (the "Edgewood Outparcel"), together with all related personal property and all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments to AJDC, LLC (the "Purchaser"), or to a party submitting a higher or better offer, free and clear of liens, claims, interests and encumbrances and (b) granting related relief (the "Motion").[1]  A hearing on the Motion was held by the Court on September 21, 2006 (the "Sale Hearing").  The Court has read the Motion and considered the representations of counsel.  Upon the

---

[1]    All capitalized terms not otherwise defined by this Order will have the meaning ascribed to them in the Motion or the Purchase Agreement.

representations of counsel and without objection from the United States Trustee or any other interested party, the Court makes the following findings of fact:

A.      This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

B.      The Debtors solicited the highest or otherwise best offer for the Assets described in the Purchase Agreement (the "Assets") in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures").

C.      The Debtors have provided interested parties (including all parties asserting claims on interests of the Assets, if any) with proper notice of the Motion, the Auction, the Sale Hearing and the transactions contemplated by the Sale pursuant to 11 U.S.C. §§ 102(1), 105(a), 363 and Fed. R. Bankr. P. 2002 and 6004 and Local Rule 2002-1, the Bidding Procedures Order and the Notice Procedures Order.

D.      A reasonable opportunity to object or be heard with respect to the Motion and the sale of the Assets has been afforded to all parties in interest (including all third parties asserting Interests or Claims (as such terms are defined below) in, to or against the Assets, if any).

E.      The Debtors marketed the Assets and conducted the Sale process in compliance with the Bidding Procedures Order.  Through the Debtors' marketing efforts, the Debtors afforded all interested parties a reasonable opportunity to make higher or better offers to purchase the Assets.

F.      Winn-Dixie (i) has full corporate power and authority to execute and consummate the purchase agreement attached as Exhibit A to this Order (the

2

"Purchase Agreement") and all related documents, and the sale of the Assets has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

G.      Under the Purchase Agreement Winn-Dixie is required to pay Purchaser's Broker fees of 3% of the Purchase Price if the closing timely occurs.

H.      Winn-Dixie has good business reasons to sell the Assets prior to filing a plan or reorganization pursuant to 11 U.S.C. § 363(b).

I.      Neither Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

J.      The Purchase Agreement was proposed, negotiated and entered into by Winn-Dixie and the Purchaser without collusion, in good faith and at arms'-length bargaining positions.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

K.      The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m).

L.      The consideration being provided by the Purchaser to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value and fair consideration for the Assets.

M.     Winn-Dixie's transfer of the Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with good and valid title in and to the Assets free and clear of any lien, interest or encumbrance of any kind or nature (collectively, the "Interests") and claim (as such term is defined in 11 U.S.C. § 101(5)) ("Claims") with the exception of the Permitted Encumbrances, as defined in the Purchase Agreement.

N.     Winn-Dixie may sell and transfer the Assets free and clear of all Interests and Claims (other than the Permitted Encumbrances) because any entity with any Interests or Claims, if any, in the Assets to be transferred (i) has consented to the sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  Holders of Interests and Claims, if any, who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

O.     The Court's approval of the Purchase Agreement and the sale of the Assets to the Purchaser, or its designee, are in the best interests of the Debtors, their estates, their creditors and other parties in interest.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted.

2.     Any objections to the entry of this Order or to the relief granted and requested in the Motion that have not been withdrawn, waived or settled are denied and overruled on the merits.

3.      The terms and conditions of the Purchase Agreement are approved. Pursuant to 11 U.S.C. §§ 105(a), 363(b) and this Order, the Debtors are authorized to consummate the Sale in accordance with the terms and conditions of the Purchase Agreement.

4.      Winn-Dixie is authorized to consummate and implement fully the Purchase Agreement, including the payment of Purchaser's Brokerage fees, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement, and the Debtors are authorized to take all further actions as may reasonably be necessary or appropriate for the purpose of conveying the Assets to the Purchaser, or its designee, or as may be necessary or appropriate to the performance of the Debtors' obligations under the Purchase Agreement.

5.      Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties without further order of the Court; provided, however, that, (a) the Debtors will first obtain the prior written consent of (i) the DIP Lender, and (ii) the Creditors' Committee, which consent will not be unreasonably withheld and (b) any such modification, amendment or supplement does not have a materially adverse effect on the Debtors' estates.

6.      Winn-Dixie will transfer the Assets to the Purchaser, or its designee, upon Closing free and clear of all Interests and Claims (except for the Permitted Encumbrances).    The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender and any other valid and enforceable liens, if any, will

attach to the proceeds of the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

7.      Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, is a legal, valid, and effective transfer of the Assets and will vest the Purchaser, or its designee, with all right, title and interest of the Debtors in and to the Assets, free and clear of all Interests and Claims (except for the Permitted Encumbrances).

8.      The consideration provided by the Purchaser, or its designee, for the Assets constitutes reasonably equivalent value and fair and reasonable consideration under the Bankruptcy Code and applicable non-bankruptcy law, and may not be avoided under 11 U.S.C. § 363(n).

9.      Upon Closing of the Sale in accordance with the Purchase Agreement and this Order, the Purchaser is deemed to have acted in good faith in purchasing the Assets, as that term is used in 11 U.S.C § 363(m).  Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Assets will not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

10.      All entities that are presently in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors.  Each of the Debtors' creditors is authorized and directed to execute any and all documents and take all other actions as may be necessary to release its Interests in and Claims against the Assets (except for the Permitted Encumbrances) (provided that the taking of such actions will not require such creditor to incur any material costs) as such Interests and Claims may have been recorded or may otherwise exist.  In the event any creditor fails to release

its Interests in or Claims against the Assets, the Debtors are authorized to file or record a copy of this Order. Once filed, registered or otherwise recorded, this Order will constitute conclusive evidence of the release of all Interests in and Claims against the Assets (except for the Permitted encumbrances).

11.     Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances or Assumed Liabilities) against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

12.     Other than the Permitted Encumbrances, the Assumed Liabilities and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser and its designee, (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets. The Debtors' transfer of the Assets to the Purchaser, or its designee, does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or the Assets by reason of such transfer under the laws of the United States or any state or territory.

13.     This Order is and will be effective as a determination that any and all Interests or Claims are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

14.     Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and

marketable title in the Assets to the Purchaser, or its designee. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

15.    This Order is binding in all respects upon, and inures to the benefit of, the Debtors, their estates and creditors, the Purchaser and its designee, and its respective affiliates, successors and assigns, and this Order is binding in all respects upon all persons asserting an Interest in or Claim against the Debtors' estates or the Assets. The sale is enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any chapter 7 or chapter 11 trustee of the Debtors and their estates.

16.    During the pendency of the Debtors' jointly administered cases, this Court will retain exclusive jurisdiction (a) to enforce and implement the Purchase Agreement and any agreements and instruments executed in connection with the Purchase Agreement, (b) to compel delivery of possession of the Assets to the Purchaser, (c) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement and (d) to interpret, implement, and enforce the provisions of this Order.

17.    All persons and entities that hold Interests in or Claims against the Debtors or the Assets are forever barred, estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale of the Assets.

8

18.     Nothing contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or any order of this Court confirming such a plan, or any other order entered in these chapter 11 cases or in any subsequent chapter 7 cases will conflict with or derogate from the terms of this Order.

19.     The failure specifically to include any particular provision of the Purchase Agreement in this Order will not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

20.     After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Interests or Claims or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

21.     To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the this Order will control.

22.     Notwithstanding Fed. R. Bankr. P. 6004(g), this Order will take effect immediately upon entry.

Dated this ____ day of September, 2006 in Jacksonville, Florida.

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed
to serve a copy of this Order
on all persons served with
the Motion.

00542083