


# SUBLEASE AGREEMENT

**THIS SUBLEASE AGREEMENT** (this "Sublease") is made effective as of July 7, 2004, between **WINN-DIXIE CHARLOTTE, INC.**, a Florida corporation ("Sublandlord") and **REMKE MARKETS, INC.**, a Kentucky corporation ("Subtenant").

## RECITALS:

A. Sublandlord holds a leasehold interest in the real property located in Florence, Kentucky, as particularly described on attached Exhibit A (the "Leased Premises"), pursuant to Lease Agreement dated as of December 2, 1996 between Chester Dix Florence Corp., as landlord ("Landlord") and Winn-Dixie Midwest, Inc., as tenant, as particularly described on attached Exhibit B (the "Base Lease").

B. Subtenant desires to sublease the Leased Premises from Sublandlord, and Sublandlord desires to sublease the Leased Premises to Subtenant, according to the terms, covenants, and conditions set forth in this Sublease.

**NOW, THEREFORE**, in consideration of the premises and the mutual agreements contained in this Sublease, Sublandlord and Subtenant agree as follows:

1. Leased Premises. Subject to and upon the terms and conditions hereinafter set forth, Sublandlord does hereby lease and demise unto Subtenant, and Subtenant hereby leases from Sublandlord, the Leased Premises, together with the easements and other rights covered by and leased to Sublandlord under the Base Lease. This Sublease shall be subject and subordinate to the provisions of the Base Lease.

2. Term. The term of this Sublease shall begin on the date hereof and shall terminate on December 30, 2016 (the "Term"). It is agreed, however, that the Term shall be subject to the term of the Base Lease, and shall end upon the termination of the Base Lease by whatever cause or for whatever reason.

3. Rental. Except as provided in the next sentence, during the Term Subtenant agrees to pay to Sublandlord as rental for the Leased Premises base rental at a rate of $365,850 per year, payable in equal quarterly installments of $91,462.50, together with applicable state and local sales tax, if any (the "Base Rent") on the first day of January, April, July and October of each calendar year during the Term. Sublandlord waives Base Rent payable for the first 9 months of the Term, with the first payment of Base Rent due and payable on April 1, 2005. In addition to Base Rent, commencing on the first day of the Term and on each rent payment date thereafter during the Term, Subtenant shall pay to Sublandlord any Additional Rent as provided under the Base Lease, including pass-through charges for taxes, common area maintenance expenses and insurance, as may be payable by Sublandlord under the terms of the Base Lease. Sublandlord will

be obligated to pay to Landlord, as and when the same become due and payable, all amounts payable by Subtenant under the Base Lease, including any differential between such amounts payable under the Base Lease and the amounts payable by Subtenant hereunder.

4. Compliance With Base Lease. Except as may be otherwise provided in this Sublease, all of the terms, covenants, conditions and provisions of the Base Lease are hereby incorporated in and made a part of this Sublease, it being intended that all rights, obligations and duties contained in the Base Lease are hereby imposed upon and granted to the respective parties to this Sublease, the Sublandlord herein being substituted for the Landlord in the Base Lease, and the Subtenant herein being substituted for the Tenant in the Base Lease; provided, however, that Sublandlord shall not be liable for any defaults by Landlord under the Base Lease, it being understood and agreed that Sublandlord's obligations hereunder shall be subject to and conditioned upon the performance by Landlord under the Base Lease of the obligations therein imposed upon such Landlord. Notwithstanding the foregoing, Subtenant's obligations with regard to Base Rent shall be governed exclusively by the terms of Section 3 of this Sublease. In no event shall Sublandlord's obligations with regard to Basic Rent under the terms of the Base Lease by imposed on Subtenant by the terms of this Section.

5. Equipment. Sublandlord and Subtenant acknowledge that Subtenant has purchased from Sublandlord all of Sublandlord's fixtures, furnishings and equipment located in the Leased Premises as of the date hereof. Subtenant may maintain in the Leased Premises all such fixtures, furnishings and equipment, and the same shall remain the property of Subtenant. Upon the expiration or termination of this Sublease, Subtenant shall (i) have the right to remove such fixtures, furnishings and equipment as well as any other fixtures and equipment installed by Subtenant in the Leased Premises, and, unless Subtenant exercises its option provided in Subparagraph 10 below, Subtenant shall remove its customary building and other signs from the Leased Premises; provided, however, Subtenant shall repair any and all damage to the Leased Premises resulting from or caused by such removal; and (ii) cap all plumbing and wires insofar as reasonably appropriate to protect and maintain the facilities while vacant.

6. Rights Under Base Lease. Except as otherwise provided in this Sublease, it is agreed that Subtenant shall have all of the rights and privileges that Sublandlord has as tenant under the Base Lease, except that any permission, consent or approval required under the Base Lease to be obtained from Landlord must also be obtained from Sublandlord, which permission, consent or approval shall not be unreasonably withheld, conditioned or delayed. Sublandlord may exercise all of the rights and privileges held by Landlord under the Base Lease. This Sublease is made by Sublandlord and accepted by Subtenant subject to all of the terms and provisions of the Base Lease.

7. Acceptance and Surrender of Leased Premises. Subtenant acknowledges that it has examined the Leased Premises prior to the execution of this Sublease and hereby accepts the same in their existing condition with no representations or warranties, either express or implied, by Sublandlord. Subject to any limitation contained in the Base Lease and to the provisions of Paragraph 6 above, Subtenant shall have the right to make such alterations, additions and improvements in and to the Leased Premises which may be permitted under the terms of the Base Lease. Without limiting the foregoing, Subtenant shall have the right, subject to the provisions of the Base Lease and to the provisions of Paragraph 6 above, to erect and maintain its customary building and other signs on the Leased Premises. Subtenant's obligations under this Sublease are expressly subject to Landlord's approval of Subtenant's signs and to any requirements of law. Such approval, if and when obtained, shall be deemed the approval of Sublandlord, notwithstanding anything to the contrary contained elsewhere in this Sublease. Subtenant agrees upon the expiration or earlier termination of this Sublease to surrender and deliver the Leased Premises to Sublandlord in accordance with the provisions of the Base Lease and this Sublease with respect to surrender of the Leased Premises, subject to the exercise of Subtenant's option pursuant to Paragraph 10 below.

8. Indemnity By Subtenant. Subtenant hereby agrees to indemnify and hold Sublandlord, its shareholders, directors, officers, employees, agents and contractors harmless from and against any and all claims, demands, obligations, liabilities, and expenses (including, without limitation, reasonable attorneys' fees and court costs) incurred by or claimed against Sublandlord or any of the foregoing parties as a result of (i) Subtenant's failure to fulfill any obligations, conditions, covenants, liabilities, duties, and/or obligations of the tenant under the Base Lease or of Subtenant hereunder accruing after the date hereof or (ii) Subtenant's or Subtenant's employees', agents', contractors' or invitees' negligence or willful misconduct. This indemnity shall survive the expiration or earlier termination of this Sublease. Subtenant agrees that Sublandlord shall not be liable to Subtenant, its agents, employees or customers or to any other persons, for any injury or death to persons, damage to property or for any other loss of any kind in any way related to the Leased Premises or the business conducted therein, regardless of the cause of said injury, damage or loss, except any losses occasioned by the negligent acts (but not omissions) or willful misconduct of Sublandlord. Subtenant further agrees to indemnify and hold Sublandlord harmless from any and all claims, demands, damages, liabilities, costs and expenses (including reasonable attorney's fees) which may be incurred by or claimed against Sublandlord and arising out of or in any way related to Subtenant's occupancy of the Leased Premises or its business conducted thereon. The foregoing indemnities expressly shall survive termination of this Sublease.

9. Default. Any act or omission of Subtenant which constitutes a default of the tenant under the Base Lease shall constitute a default on the part of Subtenant hereunder, and all remedies afforded the Landlord in the event of default under

the Base Lease are also afforded Sublandlord under this Sublease. Subtenant shall be entitled to receive from Sublandlord the same notices of default and opportunities to cure as provided to the tenant under the Base Lease. Subtenant shall have the right (but not the obligation) to cure any defaults by Sublandlord under the Base Lease, and Sublandlord agrees to deliver to Subtenant a copy of any notice (of default or otherwise) given by Landlord under or pursuant to the Base Lease to Sublandlord promptly following receipt thereof by Sublandlord. Likewise, Sublandlord shall have the right (but not the obligation) to cure any defaults by Subtenant under this Sublease to avoid a default by Sublandlord under the Base Lease.

10. Assignment of Base Lease. Subtenant shall have no right to exercise any Extended Term under the Base Lease. However, Subtenant shall have the option to elect to take an assignment of Sublandlord's leasehold interest under the Base Lease, subject to the following conditions:

(i) this Sublease shall be in full force and effect as of the date of such election and as of the Assignment Date, as defined below;

(ii) no default or event which with the passage of any applicable cure period would constitute a default by Subtenant under this Sublease shall exist as of the date of such election and as of the Assignment Date;

(iii) Subtenant shall notify Sublandlord, in writing, not later than 7 months prior to expiration of the Term, of Subtenant's election to acquire Sublandlord's leasehold interest under the Base Lease as of December 31, 2016 (the "Assignment Date");

(iv) Subtenant shall have obtained Landlord's consent to (A) Subtenant's acquisition of Sublandlord's leasehold interest under the Base Lease, (B) the assumption of Sublandlord's obligations thereunder, (C) the release of Sublandlord and its guarantor(s) from their respective obligations thereunder and under any guaranties of the Base Lease, accruing from and after the Assignment Date, and (D) the extension of the term of the Base Lease for the first Extended Term, as provided therein;

(v) On the Assignment Date, Sublandlord and Subtenant shall execute and deliver an assignment and assumption of lease, in form and content reasonably acceptable to Sublandlord and Subtenant, pursuant to which Sublandlord shall assign to Subtenant, and Subtenant shall accept and assume, all of Sublandlord's leasehold interest, rights and obligations under the Base Lease accruing from and after the Assignment Date, and thereupon, this Sublease will terminate and Sublandlord thereupon will have no further rights or obligations under the Lease or this Sublease;

(vi) On the Assignment Date, Landlord shall execute and deliver to Sublandlord a consent and release, pursuant to which Landlord consents

to the assignment of Sublandlord's leasehold interest to Subtenant, and releases Sublandlord and its guarantor(s) from their respective obligations under the Lease and any guaranties of the Lease, accruing from and after the Assignment Date.

If Subtenant fails to notify Sublandlord in the manner and within the time provided above, or if any of the foregoing conditions shall not be satisfied, then it shall be conclusively deemed that Subtenant has waived the option granted in this paragraph 10, in which event this Sublease shall expire by its terms upon the expiration of the Term.

11. Notices. All notices, requests, demands, offers and other communications required or permitted to be given pursuant to this Sublease will be in writing and will be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by telefax, when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iii) if delivered by United States Mail, 3 days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (iv) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same, addressed to Sublandlord or Subtenant at their respective addresses stated below:

If to Sublandlord:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3699
Attn: Chief Development Officer
Telefax No. 904 370 6748

With a copy to:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3699
Attn: Legal Department
Telefax No. 904 783 5138

and

Kirschner & Legler, P.A.
300A Wharfside Way
Jacksonville, Florida 32207
Attn: Kenneth M. Kirschner
Telefax No. 904 346 3299

If to Subtenant:

Remke Markets, Inc.
1299 Cox Avenue
Erlanger, Kentucky 41018
Attn: Dennis J. Francis

With a copy to:

Joseph A. Cleves, Jr.
Deters, Benzinger & LaVelle, PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017

12. Binding Effect. This Sublease shall be binding upon and shall inure to the benefit of Sublandlord and Subtenant and their respective successors and assigns.

13. Modification of Sublease. This Sublease may only be modified by a written instrument or instruments executed by the party against which enforcement of the modification or termination is asserted. Any alleged modification that is not in writing and signed by the party against which enforcement is sought shall not be effective as to any party.

14. Modification of Base Lease. Sublandlord shall not modify or amend the Base Lease during the Term, which shall include but not be limited to any exercise by Sublandlord of its Substitution Option under Section 10 of the Base Lease, without the prior written consent of Subtenant, which consent may be granted or withheld by Subtenant in its sole and absolute discretion. In the event Subtenant desires a modification of amendment of the Base Lease, Sublandlord agrees to cooperate with Subtenant to obtain such modification from the Landlord provided such modification does not increase the rental or other charges payable under or with respect to the Base Lease, impose other obligations or risks on Sublandlord (as tenant under the Base Lease or otherwise) that in Sublandlord's good faith judgment are not immaterial, or increase the Term thereof.

15. Certain Rights of Tenant under Base Lease. Notwithstanding anything contained in this Sublease to the contrary, the following rights of Sublandlord, as tenant under the Base Lease, may not be exercised by Subtenant without the express prior written consent of Sublandlord, which may be granted or withheld in Sublandlord's sole discretion:

a. Tenant's Right of First Refusal, as set forth in paragraph 9 of the Base Lease;

b. Tenant's Substitution Option, as set forth in paragraph 10 of the Base Lease;

c. Termination and entitlement to Net Proceeds in event of Loss, as set forth in paragraph 13 of the Base Lease;

d. Termination and entitlement to Net Proceeds in event of Total or Substantial Condemnation, as set forth in paragraph 14 of the Base Lease;

e. Economic Abandonment, as set forth in paragraph 15 of the Base Lease; and

f. Alteration and Expansion, as set forth in paragraph 28 of the Base Lease, that (i) is structural in nature, or (ii) will have an aggregate "hard construction cost" of more than $750,000 (exclusive of costs of design and engineering, and installation of trade fixtures and equipment).

Additionally, notwithstanding anything contained in this Sublease to the contrary, the following rights of Sublandlord, as tenant under the Base Lease, may not be exercised by Subtenant without the express prior written consent of Sublandlord, which will not be unreasonably conditioned, withheld or delayed, as provided below:

a. Assignment and Subleasing, as set forth in paragraph 17 of the Base Lease, as long as (i) the assignee or sublessee shall have a net worth not less than Subtenant's net worth as of the date of this Sublease, (ii) the assignee or sublessee shall have business experience in the particular proposed use of the Leased Premises, (iii) the particular proposed use of the Leased Premises shall be lawful, and shall comply with all applicable use restrictions, (iv) the Leased Premises shall be suitable for the particular proposed use by the assignee or sublessee, and (v) Subtenant will not be released from its obligations under this Sublease notwithstanding any such assignment or sublease.

b. Alteration and Expansion, as set forth in paragraph 28 of the Base Lease, that (i) is non-structural in nature, and (ii) will have an aggregate "hard construction cost" of $750,000 or less (exclusive of costs of design and engineering, and installation of trade fixtures and equipment).

c. Notwithstanding the foregoing, Subtenant shall be permitted to sublease portions of the Leased Premises without Sublandlord's written consent to one or more concessionaires, sublessees or licensees space within the

Leased Premises of not more than 2,000 square feet per sub-subtenant, and not more than 10,000 square feet in the aggregate, as incidential or complementary to Subtenant's ongoing store operations within the Leased Premises. Additionally, Subtenant shall be permitted to sublease a portion of the Leased Premises without Sublandlord's written consent to a single user of not more than 15,000 square feet, in an unrelated business to Subtenant's business. One additional entrance may be constructed in the Leased Premises as a separate entrance for such subleased space.

Furthermore, notwithstanding the foregoing, the following Alterations shall be permitted without Sublandlord's written consent:

a. Installation of one drive-through facility with overhead canopy, for branch banking or pharmacy purposes;

b. Installation of signage and rooftop communications equipment, roof and exterior repairs not constituting capital improvements or replacements; non-structural installation of replacement HVAC equipment of equal or better quality and condition than that presently in place on the Leased Premises.

c. Interior and exterior painting, replacement of floor tiles, replacement of drop ceiling tiles and lighting fixtures, and doors, not involving structural changes.

The provisions of this paragraph 15 shall in all respects be subject to the terms and conditions of the Base Lease, notwithstanding that Sublandlord may provide its consent or approval to a particular proposed action by Subtenant as contemplated above.

16. Landlord's Lien. Sublandlord hereby waives any statutory or other liens in favor of Sublandlord against all property of Subtenant located, or to be located in, on or about the Leased Premises.

17. Quiet Enjoyment. Sublandlord covenants and agrees that so long as Subtenant pays the rent due hereunder and performs all other obligations to be performed by Subtenant hereunder, Subtenant shall peaceably and quietly enjoy the Leased Premises subject to the terms hereof and the Base Lease. Sublandlord, at its sole cost and expense, shall defend and indemnify Subtenant from and against any party claiming, by, through, or under Sublandlord, but none other, any rights superior to Subtenant with respect to the Leased Premises, except the Landlord pursuant to the Base Lease.

18. Entire Agreement. This Sublease constitutes the entire understanding and agreement between Sublandlord and Subtenant with respect to the sublease by Subtenant of the Leased Premises and supersedes all prior written or oral under-

standings and agreements between Sublandlord and Subtenant with respect thereto.

19. Multiple Counterparts. This Sublease may be executed in one or more counterparts, each of which shall constitute an original, but all of which taken together shall be considered one and the same document.

20. Short Form Sublease. Contemporaneously with the execution and delivery of this Sublease, Sublandlord and Subtenant shall execute and deliver a short form Sublease (the "Short Form Sublease") for purposes of placing third parties on record notice of Subtenant's subleasehold interest in the Leased Premises under this Sublease, subject to the Base Lease, and of Subtenant's option to acquire Sublandlord's leasehold interest under the Base Lease. Sublandlord promptly thereafter shall record the Short Form Sublease in the public records of Boone County, Kentucky. The Short Form Sublease shall be deemed terminated as a matter of record upon the first to occur of (a) recordation of the Assignment or notice thereof as contemplated in paragraph 10 above, (b) recordation of a written affidavit of an officer of Sublandlord certifying that this Sublease has terminated pursuant to its terms prior to expiration of the Term, or (c) expiration of the Term.

21. Time of the Essence. Time is of the essence in the performance of the respective rights and obligations of Sublandlord and Subtenant under this Sublease.

22. Governing Law. The interpretation, validity, and enforcement of this Sublease shall be governed by and construed under the laws of the State of Kentucky.

[END OF PAGE]

**IN WITNESS WHEREOF**, the parties hereto have executed this Sublease as of the dates given for their respective signatures below.

Signed, sealed and delivered
in the presence of:

**SUBLANDLORD:**

**WINN-DIXIE CHARLOTTE, INC.**, a Florida corporation

By:________________________
Name: Larry Appel
Title: Vice President

[CORPORATE SEAL]

Name: **JAMES B. PORTER**

Name: Janice Long

STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this 6th day of June, 2004, by Larry Appel, the Vice President of **WINN-DIXIE CHARLOTTE, INC.**, a Florida corporation, on behalf of the corporation. He/she either [✓] is personally known to me or [ ] has produced ____________________ as identification.

________________________
Notary Public Signature

________________________
(Name typed, printed or stamped)
Notary Public, State of ____________
Commission No.: ____________
My Commission Expires: ____________

**[NOTARIAL SEAL]**

JANICE R. LONG
MY COMMISSION # DD 080687
EXPIRES: December 26, 2005
Bonded Thru Notary Public Underwriters

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Signed, sealed and delivered
in the presence of:

Name: Dennis J. Franey

For Joseph A. Cleves
Name: Joseph A. Cleves, JR

**SUBTENANT:**

**REMKE MARKETS, INC.**, a Kentucky corporation

By: William R. Remke
Name: William R. Remke
Title: Chairman & Chief Executive Officer

[CORPORATE SEAL]

STATE OF Kentucky )
COUNTY OF Kenton )

The foregoing instrument was acknowledged before me this 7th day of July, 2004, by William R. Remke, the Chairman and Chief Executive Officer of **REMKE MARKETS, INC.**, a Kentucky corporation, on behalf of the corporation. He/she either [✓] is personally known to me or [ ] has produced ____________ as identification.

Joseph A. Cleves
Notary Public Signature

Joseph A. Cleves, JR
(Name typed, printed or stamped)
Notary Public, State of KY
Commission No.: NA
My Commission Expires: 9/7/07

[NOTARIAL SEAL]

38519.1



SGRJAX/53547.1