## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

## NOTICE OF FILING

1.      Debtors' Motion for Order (A) Authorizing the Sale of Additional Stores and Related Equipment Free and Clear of Liens, Claims and Interests, (B) Authorizing the Assumption and Assignment or Alternatively, the Rejection of Leases and Establishing a Claims Bar Date and (C) Granting Related Relief, filed with the Court on August 3, 2006 (the "Motion") (Docket No. 9886), Winn-Dixie, Inc. and its subsidiaries and affiliates as debtors and debtors-in-possession (collectively, the "Debtors"), provide notice of their intent to enter into an agreement with Fine Foods Gourmet Markets Inc. in substantially the form attached, for Debtors' leases of store numbers 202 (West Palm Beach, Florida) and 380 (Pembroke Pines, Florida) for $1,035,000.00 (the "Sale").

## NOTICE OF HEARING

2.      A hearing to approve the Sale is scheduled for **September 21, 2006 at 1:00 p.m. E.T.** before the Honorable Jerry A. Funk, United States Bankruptcy Judge for the Middle District of Florida, 300 North Hogan Street, Courtroom 4D, Jacksonville, Florida 32202.

Dated:  September 8, 2006.

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By    *s/ D. J. Baker* | By    *s/ Cynthia C. Jackson* |
| D. J. Baker | Stephen D. Busey |
| Sally McDonald Henry | James H. Post |
| Rosalie Gray | Cynthia C. Jackson (FBN 498882) |
| Four Times Square | 225 Water Street, Suite 1800 |
| New York, New York 10036 | Jacksonville, Florida  32202 |
| (212) 735-3000 | (904) 359-7700 |
| (917) 777-2150 (facsimile) | (904) 359-7708 (facsimile) |
| djbaker@skadden.com | cjackson@smithhulsey.com |
| Co-Counsel for Debtors | Co-Counsel for Debtors |

00542793

<u>Store Nos.</u>:
202
380

## ASSET PURCHASE AGREEMENT
[Fine Foods Gourmet Markets Inc.]

**THIS ASSET PURCHASE AGREEMENT** (this "<u>Agreement</u>") is made effective as of August 29, 2006 (the "<u>Effective Date</u>"), by and between

**WINN-DIXIE STORES, INC.,** a Florida corporation ("<u>Seller</u>"), and

**FINE FOODS GOURMET MARKETS INC.,** a Florida corporation, or its permitted assignee pursuant to <u>paragraph 17.5</u> of this Agreement ("<u>Buyer</u>").

### R E C I T A L S :

A.    Seller is the tenant of two (2) supermarket stores listed on <u>Exhibit A-1</u> to this Agreement by Seller's designated Store number and street address (the "<u>Stores</u>"), under the respective leases, including amendments thereto described on <u>Exhibit A-2</u> to this Agreement (the "<u>Leases</u>"). The Stores occupy the respective leased premises as described in each Lease (the "<u>Leased Premises</u>"), within the respective parcels of real property described on <u>Exhibit A-2</u> to this Agreement associated with each Lease. Seller's leasehold interest in each Leased Premises pursuant to each Lease, together with those additional items described in <u>paragraph 2.0</u> of this Agreement relating to such Leased Premises, hereinafter collectively are referred to as the "<u>Assets</u>".

B.    Seller desires to transfer and sell and Buyer has agreed to acquire and purchase the Assets, subject to the terms and conditions contained in this Agreement.

C.    Seller (Winn-Dixie Stores, Inc. and its affiliated debtors) filed voluntary petitions for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 <u>et seq.</u>, as amended (the "<u>Bankruptcy Code</u>") on February 21, 2005 (the "<u>Petition Date</u>") and has operated its business as debtor-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Petition Date (the "<u>Bankruptcy Cases</u>"). The Bankruptcy Cases are being jointly administered in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "<u>Bankruptcy Court</u>"), under Case No. 05-03817-3F1.

**IN CONSIDERATION OF $10.00** and other good and valuable consideration and of the mutual undertakings of the parties hereto, Buyer and Seller agree as follows:

1.0    **Defined Terms.** Capitalized terms not otherwise defined in this Agreement will have the meanings assigned to such terms below.

      1.1    "<u>Adequate Assurance Information</u>" will mean financial and other information as may be requested by Seller to demonstrate to the Bankruptcy Court that Landlords and Subtenants are adequately assured of Buyer's future performance under the Leases, as required by Section 365(f) of the Bankruptcy Code, including if appropriate, a Replacement Guaranty of Buyer's

obligations under the Leases and (where applicable) the Subleases by an Affiliate of Buyer with sufficient assets to provide adequate assurance of future performance.

1.2   "Affiliate" will have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1.3   "Agreement" will mean this Asset Purchase Agreement dated as of the Effective Date including all Exhibits hereto.

1.4   "Allocation Schedule" will mean the allocation of the Purchase Price and the Deposit among the Stores as provided on Exhibit B to this Agreement.

1.5   "Approval Condition" will have the meaning assigned in paragraph 5.2 of this Agreement.

1.6   "Assets" will have the meaning assigned in paragraph A of the Recitals to this Agreement.

1.7   "Auction" will have the meaning assigned in paragraph 5.1 of this Agreement.

1.8   "Bankruptcy Cases" will have the meaning assigned in paragraph C of the Recitals to this Agreement.

1.9   "Bankruptcy Code" will have the meaning assigned in paragraph C of the Recitals to this Agreement.

1.10  "Bankruptcy Court" will have the meaning assigned in paragraph C of the Recitals to this Agreement.

1.11  "Bidding Procedures" will mean the bidding procedures and bid protections for use in the sale of assets in the Bankruptcy Cases as approved by the Bankruptcy Court by Order dated June 20, 2005.

1.12  "Bill of Sale" will mean a bill of sale substantially in the form of Exhibit C to this Agreement, pursuant to which Seller will sell and convey to Buyer at each Closing the Equipment and other tangible and intangible personal property constituting a portion of the Assets relating to the one or more Stores being transferred at such Closing.

1.13  "Buildings" will have the meaning assigned in paragraph 2.2 of this Agreement.

1.14  "Business Day" will mean any day, other than Saturday, Sunday or any federal holiday recognized by businesses generally in Jacksonville, Florida.

1.15  "Buyer" will have the meaning assigned in the introductory paragraph of this Agreement.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

2

1.16    "Buyer's Closing Costs" will mean: (a) fees and costs of Buyer's counsel relating to the subject transaction; (b) fees and costs incurred by Buyer to conduct Buyer's due diligence investigations of the Assets; (c) title insurance fees and costs, including title examination fees and title insurance premiums for the Title Policies (and the cost of any simultaneous issue mortgagee title insurance policies and any loan-related title insurance endorsements thereon); (d) documentary stamp tax or transfer tax, if any, payable in connection with the execution and delivery of the Conveyance Instrument(s); (e) recording fees payable in connection with recording the Conveyance Instrument(s) in the appropriate public records; (f) cost of the Environmental Reports, including any supplements or updates; (g) any loan closing costs incurred by Buyer, including costs of the lender's legal counsel, loan commitment fees, documentary stamp tax and intangible tax on the notes and mortgages; and (h) sales taxes, if any, payable in connection with the purchase and sale of the Equipment.

1.17    "Buyer's Closing Direction" will have the meaning assigned in paragraph 14.6 of this Agreement.

1.18    "Buyer's Escrowed Items" will have the meaning assigned in paragraph 14.3 of this Agreement.

1.19    "Closing" with respect to one or more Stores will mean the consummation of the assignment, assumption, sale and purchase of the Assets relating to such Store or Stores pursuant to this Agreement, as provided in paragraph 14.0 of this Agreement.

1.20    "Closing Date" will have the meaning assigned in paragraph 14.1 of this Agreement.

1.21    "Closing Escrow Date" with respect to one or more Stores will mean the date that is 2 Business Days prior to the Closing Date for such Store or Stores or such earlier date after satisfaction of the Approval Condition as Buyer and Seller may designate.

1.22    "Closing Statement" will mean a statement in the form of Exhibit D to this Agreement (or in such other form as is prepared by Seller and reasonably acceptable to Buyer) reflecting the net amount due to Seller at each Closing, after making the adjustments described in paragraphs 3.4.2 3.4.3 of this Agreement and in other provisions of this Agreement.

1.23    [Intentionally deleted]

1.24    "Confidentiality Agreement" will mean the Confidentiality Letter Agreement dated effective March 6, 2006, between Winn-Dixie and Buyer, a complete and correct copy of which is attached as Exhibit F to this Agreement, regarding, among other things, confidentiality relating to the subject matter of this Agreement.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

3

1.25   "Conveyance Instrument" will mean the Assignment and Assumption of Lease substantially in the form of Exhibit E to this Agreement, pursuant to which Seller will assign and convey, and Buyer will assume, Seller's leasehold interest, as tenant, under the Lease as to each Store or Stores, together with Seller's interest in any Improvements.

1.26   "Credit Agreement Liens" will mean liens and encumbrances created by Seller or Winn-Dixie pursuant to (i) the Credit Agreement, dated February 23, 2005, as amended, between Winn-Dixie and the DIP Lender, as the same has been or may hereafter be amended, and (ii) documents executed by Winn-Dixie or Seller in connection with such Credit Agreement.

1.27   "Cure Costs" will mean amounts (if any) payable by Seller pursuant to Section 365(b) of the Bankruptcy Code upon Seller's assumption of the Leases and the Subleases.

1.28   "Damages" will have the meaning assigned in paragraph 16.5 of this Agreement.

1.29   "Deposit" will have the meaning assigned in paragraph 3.2 of this Agreement.

1.30   "DIP Lender" will have the meaning assigned in paragraph 5.1 of this Agreement.

1.31   "Due Diligence Materials" will mean, collectively, (i) the Leases and the Subleases (if any), (ii) the Title Reports, (iii) the Environmental Reports, (iv) all other documents and materials provided or made available to Buyer for review (pursuant to the Confidentiality Agreement or otherwise) in hard copy, in electronic format, at the Stores, on the Merrill Website, or otherwise and (v) all documents and materials prepared by or for Buyer in connection with Buyer's investigations with respect to the Assets.

1.32   "Effective Date" will have the meaning assigned in the introductory paragraph of this Agreement.

1.33   "Environmental Report" will have the meaning assigned in paragraph 4.3 of this Agreement.

1.34   "Equipment" will have the meaning assigned in paragraph 2.2 of this Agreement.

1.35   "Escrow Agent" will mean Smith, Gambrell & Russell, LLC, Jacksonville office, acting as escrow and closing agent.

1.36   "Excluded Personal Property" will mean the items or categories of items identified on Exhibit G to this Agreement, which are expressly excluded from the Assets to be sold to Buyer under this Agreement.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

4

1.37    "HSR Act" will mean the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended.

1.38    "HSR Filing" will mean the filings, if any, required under the HSR Act related to this transaction.

1.39    "Improvements" will have the meaning assigned in paragraph 2.2 of this Agreement.

1.40    "Initial Deposit" will have the meaning assigned in paragraph 3.2 of this Agreement.

1.41    "Inventory" will mean all inventories of goods and merchandise within the Stores and owned by Seller and held for resale in the ordinary course of business of Seller conducted at the Stores to retail customers.

1.42    "Knowledge" will mean (i) in the case of Seller, the actual knowledge of Larry Appel, Senior Vice President and General Counsel, without any requirement of investigation or inquiry, and (ii) in the case of Buyer, the actual knowledge of all senior officers of Buyer and its Affiliates having responsibility for legal affairs, without any requirement of investigation or inquiry.

1.43    "Landlords" will mean the lessors under the Leases.

1.44    "Leased Premises" will have the meaning assigned in paragraph A of the Recitals to this Agreement, and will include the elements thereof as described in paragraph 2.0 of this Agreement.

1.45    "Leases" will have the meaning assigned in paragraph A of the Recitals to this Agreement.

1.46    "Liquidated Deposit" will have the meaning assigned in paragraph 16.1 of this Agreement.

1.47    "Material Adverse Effect" will mean, with respect to any fact, circumstance, change or event, that such fact, circumstance, change or event would individually or in the aggregate have a material adverse effect on Seller's or Buyer's ability to consummate the transactions contemplated herein, or on the continued operation any or all of the Stores for their current use, taken individually or as a whole, except to the extent that fact, circumstance change or event results from or relates to: (a) general economic or market conditions or conditions generally affecting the retail, grocery or pharmacy industries that, in either case, do not disproportionately adversely affect the Assets; (b) the announcement of the transactions contemplated hereby; (c) the execution of, compliance with the terms of, or the taking of any action required by this Agreement or the consummation of the transactions contemplated hereby; (d) any change in accounting requirements or principles or any change in applicable laws or the interpretation thereof; (e) the filing of the Bankruptcy

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

5

Cases; (f) the conversion or dismissal of any or all of the Bankruptcy Cases; (g) the appointment of a Chapter 11 trustee or examiner in the Bankruptcy Cases; or (h) the Wind-up Procedures; provided, however, that a Material Adverse Effect with respect to any Store, or any group of Stores, will not be deemed to have or constitute a Material Adverse Effect with respect to any or all of the other Stores.

1.48    "Merrill Website" will mean the internet website maintained by Merrill Corporation on behalf of Seller and certain Affiliates of Seller under the name "Project Panther 06 Kitty Subfile" with respect to the disposition of the Stores and other properties.

1.49    "Monetary Liens" will mean (i) any Credit Agreement Liens; and (ii) any of the following which arise by, through or under Seller: (A) mortgages on any of Seller's leasehold interests or on any other Assets; (B) past due ad valorem taxes and assessments of any kind constituting a lien against any of the Assets to the extent such taxes and assessments are the responsibility of Seller and can be cured by the payment of money; (C) construction liens that have attached to and become a lien against Seller's interest under any of the Leases or on any other Assets; and (D) judgments that have attached to and become a lien against Seller's interest under any of the Leases or on any other Assets.

1.50    "Ordinary course of business" means the ordinary course of business of Seller after the Filing Date, subject to the Wind-up Procedures.

1.51    "Outside Date" means September 30, 2006, as such date may be extended by the written agreement of Seller and Buyer.

1.52    "Permit" will have the meaning assigned in paragraph 7.2 of this Agreement.

1.53    "Permitted Encumbrances" will mean (i) all matters listed on Exhibit H to this Agreement, (ii) all other matters set forth as exceptions in the Title History, other than Monetary Liens, and (iii) subject to the provisions of paragraph 4.2 of this Agreement, all other matters set forth as exceptions in the Title Commitments, other than Monetary Liens.

1.54    "Person" will mean an individual, corporation, partnership, joint venture, association, joint-stock company, trust, limited liability company, non-incorporated organization or government or any agency or political subdivision thereof.

1.55    "Purchase Price" will mean the amount set forth in paragraph 3.1 of this Agreement.

1.56    "Real Property" will mean the Leased Premises and the Improvements together.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

6

1.57 "Replacement Guaranty" will mean any guaranty of Buyer's payment and performance obligations under a Lease or Sublease with respect to any Store, given by a parent Affiliate of Buyer as may be required either to obtain Landlord's approval of the Adequate Assurance Information or to obtain Landlord's consent to the release of Winn-Dixie as a guarantor under the Lease or Sublease, as the case may be.

1.58 "Sale Hearing" will have the meaning assigned in paragraph 5.1 of this Agreement.

1.59 "Sale Motion" will have the meaning assigned in paragraph 5.1 of this Agreement.

1.60 "Sale Order" will have the meaning assigned in paragraph 5.1 of this Agreement.

1.61 "Second Deposit" will have the meaning assigned in paragraph 3.2 of this Agreement.

1.62 "Seller" will have the meaning assigned in the introductory paragraph of this Agreement.

1.63 "Seller's Closing Direction" will have the meaning assigned in paragraph 14.6 of this Agreement.

1.64 "Seller's Brokers" will mean one or more of DJM Asset Management, LLC, The Food Partners, LLC, and The Blackstone Group, L.P.

1.65 "Seller's Closing Costs" will mean: (a) fees and costs of Seller's counsel relating to the subject transaction; (b) commissions payable to Seller's Brokers as provided in paragraph 17.3 of this Agreement; and (c) the Cure Costs.

1.66 "Seller's Escrowed Items" will have the meaning assigned in paragraph 14.2 of this Agreement.

1.67 "Stores" will have the meaning assigned in paragraph A of the Recitals to this Agreement and, when followed by "#" and a number will refer to the particular Store with the indicated number listed on Exhibit A-1 to this Agreement, including if applicable any associated gas station, liquor store, pharmacy or other specialty department operated by Seller at the Leased Premises.

1.68 "Sublease" will mean, with respect to each Store, each sublease of a portion of the Leased Premises listed on Exhibit A-2 to this Agreement (if any), including amendments.  If no sublease is listed on Exhibit A-2 to this Agreement with respect to a Store, then each reference in this Agreement and the Conveyance Instrument to any Sublease at such Store will be disregarded.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

7

1.69    "<u>Subtenant</u>" will mean, with respect to each Store, the subtenant or sublessee under each Sublease.  If no sublease is listed on <u>Exhibit A-2</u> to this Agreement with respect to a Store, then each reference in this Agreement and the Conveyance Instrument to any Subtenant at such Store will be disregarded.

1.70    "<u>Successful Bid</u>" will have the meaning assigned to such term in the Bidding Procedures, and as otherwise contemplated in <u>paragraph 5.1</u> of this Agreement, as determined by Seller in its sole discretion in accordance with the Bidding Procedures, to be submitted to the Bankruptcy Court at the Approval Hearing.

1.71    "<u>Successful Bidder</u>" will have the meaning assigned in <u>paragraph 5.1</u> of this Agreement.

1.72    "<u>Supplies</u>" will mean all supplies relating to the operation and maintenance of the Equipment, located within the Stores and owned by Seller on the Closing Date, <u>excluding</u>, <u>however</u>, all packaging materials and supplies relating to the preparation or merchandising of Inventory, or any other supplies that contain trademarks, trade names, private labels, logos or designs of Seller, Winn-Dixie or any of their Affiliates.

1.73    "<u>Terminated Store</u>" will mean any Store that is removed and withdrawn from the Assets that are subject to transfer pursuant to this Agreement, pursuant to any provision of this Agreement that provides for the termination of this Agreement as to any one or more Stores but not all of the Stores.

1.74    "<u>Title Commitments</u>" will mean those current leasehold title insurance commitments obtained by Seller from Title Insurer, committing to insure Buyer's leasehold interest in the Real Property upon Closing, as made available to Buyer for review on the Merrill Website within 10 days following the Effective Date.

1.75    "<u>Title History</u>" will mean those materials evidencing the state of title to the Real Property, including existing title reports, title abstracts, title insurance policies and/or title insurance commitments, if any, with respect to the Stores, that Seller has made available to Buyer for review on the Merrill Website prior to the Effective Date.  Buyer understands that the Title History may include previously issued title insurance policies or commitments covering property in addition to the Real Property, insuring the interests of parties other than Seller, or reflecting Seller's or an Affiliate's ownership of a fee simple estate no longer owned by Seller.

1.76    "<u>Title Insurer</u>" will mean First American Title Insurance Company, either itself or by and through its authorized agents, or any other nationally recognized title insurance company as designated by Seller.

1.77    "<u>Title Policies</u>" will have the meaning assigned in <u>paragraph 4.2</u> of this Agreement.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

8

1.78 "Title Reports" will mean, collectively, (i) the Title History and (ii) the Title Commitments.

1.79 "Wind-up Procedures" will mean any pre-Closing actions and procedures as Seller or Winn-Dixie may consider necessary or appropriate to prepare for the anticipated assignment and transfer of the Assets to Buyer at Closing, including sell-down, liquidation or removal of Inventory, removal of Excluded Personal Property, and related marketing, promotions and advertising at the relevant Store or Stores, and closing of the relevant Stores.

1.80 "Winn-Dixie" will mean Winn-Dixie Stores, Inc., a Florida corporation.

2.0 **Property Included in Sale.**  Seller agrees to assign, transfer, sell and convey the Assets to Buyer, and Buyer agrees to assume and purchase the Assets from Seller. The Assets are comprised of the following:

2.1 Seller's leasehold interest, as tenant, under the Leases, and Seller's interest in any leasehold improvements, including release of Winn-Dixie from any guaranty of Seller's payment and performance obligations under the Leases, which Buyer acknowledges may require delivery of a Replacement Guaranty by a parent Affiliate of Buyer;

2.2 Seller's interest in all fixtures and all equipment located in the store buildings now existing on the Leased Premises (the "Buildings"), including but not limited to Seller's interest in (i) heating and air conditioning systems, facilities used to provide any utility services, or other similar services to the Buildings, elevators, docks, lifts, doors, storefronts, ceilings, walls, partitions, lighting fixtures, and flooring (collectively, the "Improvements"), (ii) Seller's trade fixtures and equipment located in the Buildings (the "Equipment"); and the Supplies;

2.3 Seller's interest, as sublessor, in the Subleases (if any).

Excluded Personal Property is expressly excluded from the Assets to be assigned and transferred by Seller to Buyer under this Agreement.

3.0 **Purchase Price.**

3.1 Amount.  The purchase price to be paid by Buyer to Seller for the Assets will be the fixed sum of One Million, Thirty-Five Thousand and No/100 Dollars ($1,035,000.00)(the "Purchase Price").  The Purchase Price will be allocated to each Store as set forth on the Allocation Schedule.  If this Agreement is terminated in accordance with its terms as to one or more, but not all, of the Stores, then (i) the aggregate Purchase Price will be adjusted based on the Allocation Schedule to exclude the Terminated Stores; and (ii) the Assets associated with such Terminated Stores likewise will be deemed excluded from the Assets remaining subject to this Agreement.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

9

3.2    <u>Contract Consideration and Deposit</u>.  As specific consideration for Seller's agreement to sell the Assets to Buyer in accordance with the terms and conditions of this Agreement, Buyer will deliver to Escrow Agent, no later than 3 Business Days after the Effective Date, an initial earnest money deposit with respect to each Store in the amount set forth in the Allocation Schedule (the "<u>Initial Deposit</u>").  Furthermore, within 1 Business Day after satisfaction of the Approval Condition, Buyer will deliver to Escrow Agent an additional earnest money deposit with respect to each Store in the amount set forth in the Allocation Schedule (the "<u>Second Deposit</u>").  The Initial Deposit by itself, and together with the Second Deposit if required to be delivered pursuant to this paragraph, will be referred to herein as the "<u>Deposit</u>".  Buyer will make the Initial Deposit and the Second Deposit by wire transfer to an account designated in writing by Escrow Agent.  The Initial Deposit will be subject to refund to Buyer to the extent and in the circumstances described in <u>paragraphs 4.4, 13.0, 15.0, 16.0 and 22.0</u>.  Upon delivery of the Second Deposit, the Deposit will be non-refundable to Buyer except pursuant to <u>paragraph 16.2</u>.  The applicable portion of the Deposit will be credited against the Purchase Price at the relevant Closing and will be held in a non-interest bearing escrow account maintained by Escrow Agent prior to the relevant Closing.

3.3    <u>Competitive Bidding Procedures</u>.  Buyer acknowledges that Seller's obligations under this Agreement are subject to the Bidding Procedures and the Bankruptcy Approval Procedures as described in <u>paragraph 5.0</u> below. Accordingly, the purchase and sale of the Assets may become involved in a competitive bidding process which will entitle Seller, in its sole discretion, to select a higher or otherwise better offer for the Assets than the Purchase Price and other terms and conditions set forth in this Agreement.

3.4    <u>Payment</u>.  The Purchase Price will be paid in the following manner:

    3.4.1  <u>*Purchase Price*</u>.  On the Closing Escrow Date, Buyer will deliver to Escrow Agent the Purchase Price with respect to such Store or Stores, net of the Deposit, and as adjusted as provided under the Closing Statement.  Such funds will be transferred by wire transfer to an account designated in writing by Escrow Agent.  Subject to the conditions set forth in <u>paragraph 10</u> of this Agreement, on the Closing Date, Seller and Buyer will instruct Escrow Agent to deliver the escrowed funds with respect to such Store or Stores in payment of the Purchase Price and disbursement of same in accordance with the Closing Statement.

    3.4.2  <u>*Certain Transaction Costs*</u>.  All relevant rent, taxes (including real and personal property taxes), utilities, and other payments regarding the Assets will be prorated (based on actual days within the relevant annual, quarterly or monthly period, as appropriate) between the parties as of midnight of the date preceding each Closing Date and will be a credit or debit, as the case may be, against the Purchase Price payable at such Closing to the extent thereof.  Following any proration

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

10

of annual real and personal property taxes resulting in a credit to Buyer, Buyer will be responsible for payment of such taxes to the appropriate taxing authorities or Landlord, as and when due, as appropriate. Any amounts not determinable as of the Closing Date or reflected on the Closing Statement will be stipulated at the Closing based on good faith estimates reasonably acceptable to Buyer and Seller. There will be no post-Closing reproration or adjustment of prorated items. Following Closing, Buyer will timely make all required notifications to taxing authorities to effect the change in party responsible for taxes. The provisions of this paragraph 3.4.2 that apply to the period after the Closing for any Store will survive such Closing.

3.4.3 *Sales Tax*.   Sales taxes, if any, resulting from the transfer of the Assets, or any particular category thereof, to the extent permitted by law, will be paid by Buyer, unless such transfer is subject to an available exemption therefrom.

3.5    Allocation of Purchase Price Among Assets at each Store.   Buyer will have the right to allocate the Purchase Price for each Store, for tax purposes and all other purposes, among the Assets at such Store; provided, however, that such allocation will not be binding upon Seller or determinative with respect to any allocation made by Seller of the Purchase Price in accordance with the Bankruptcy Code or in any motion or pleading filed by Seller in the Bankruptcy Cases. The allocation contemplated in the immediately preceding sentence will be set forth with respect to the Assets at each Store on the applicable Closing Statement.

## 4.0    **Buyer's Due Diligence.**

4.1    Acknowledgment; Access to Premises.

4.1.1  In deciding to acquire the Assets pursuant to this Agreement, Buyer acknowledges that it has had the opportunity to conduct due diligence regarding the Stores and the Assets and that Buyer has had the opportunity to consult with Buyer's legal, financial and tax advisors with respect to the transactions contemplated by this Agreement. Buyer confirms and acknowledges that Seller has given Buyer and its representatives the opportunity for access to the Merrill Website and the opportunity to ask and have answered questions of representatives of Seller with respect to the Stores and the Assets and to acquire such additional information about the Stores and the Assets as Buyer has reasonably requested. Physical access to the Stores will be permitted for Buyer's site visits and inspections, provided that Buyer arranges such access in advance with Seller.

4.1.2  Direct contact with any members of management, employees or stakeholders of Seller or visits to any Store are not permitted, except upon prior arrangement with Seller's agent, The Food Partners. To

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

11

arrange for access to a Store for inspection or to interview Seller's employees, Buyer must contact Seller's representative at The Food Partners:   Doug Herman at telephone 202-589-0438, or at email dherman@thefoodpartners.com.  Such pre-arranged site access will be subject to the following conditions: (a) Buyer will have given Seller at last 24 hours' notice of Buyer's proposed entry into a Store or interview of Employees, (b) such entry or interviews will be conducted during normal business hours, (c) Buyer will be accompanied by Seller's representative during such entry and interviews, (d) Buyer's entry will not include any invasive testing or measurements, and (e) Buyer will conduct such investigations and interviews in such a manner so as to avoid disruption of the Seller's business operations in the Store.  Furthermore, any such access will comply in all respects with Confidentiality Agreement, except as otherwise may be provided in this paragraph 4.1.

4.2     **Title.**   Buyer confirms and acknowledges that Seller has made the Title History available to Buyer through the Merrill Website prior to the Effective Date.  Seller will deliver the Title Commitments to Buyer within 10 days after the Effective Date.  Buyer may request Title Insurer to provide title insurance covering Buyer's leasehold interest in each Lease (the "Title Policies") at Closing, based on the Title Commitments.

4.2.1    If any matter set forth in a Title Commitment for a particular Store would have a Material Adverse Effect upon the present use or occupancy of such Store, then Buyer may object to such matter by delivery of written notice of objection to Seller given not later than 3 Business Days after the Title Commitment either is delivered to Buyer or is posted on the Merrill Website. To be effective, any such notice of objection must be directed to Seller using email address catherineibold@winn-dixie.com, with a copy using email address dstanford@sgrlaw.com, and must include a subject matter line in capital letters: "BUYER TITLE OBJECTION NOTICE - WINN-DIXIE STORE #____" (with the appropriate Store number set forth accordingly).

4.2.2    If Buyer timely notifies Seller of any valid objection to any matter set forth in the Title Commitment for any Store, then Seller will have a period of 3 Business Days after such notice in which to notify Buyer in writing either that: (i) Seller declines or is unable to cure such objection (other than Monetary Liens, which Seller will be obligated to cure at or prior to Closing), or (ii) Seller intends to cure or resolve such objection at or prior to Closing.  If written notice is given by Seller pursuant to clause (i) above, then Buyer may elect, within 3 Business Days after Seller's notice, either to terminate this Agreement with respect to such Store, with no liability to Buyer or Seller, or to waive such objection and proceed with the transactions hereunder, and in the latter event, then Buyer will be deemed to have waived any

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

12

objection made under this paragraph 4.2 to any matter and such matter will constitute a Permitted Encumbrance.

4.3   Environmental Reports.  Seller has, (i) to the extent of available information, posted historical environmental reports on the Merrill Website covering the Real Property relating to each Store, and (ii) posted on the Merrill Website current phase I environmental site assessment reports for each Store, prepared by an environmental consultant or engineer selected by Seller and, if applicable, licensed in the state where such Store is located (each, an "Environmental Report").

4.3.1   If Buyer determines that any matter set forth in an Environmental Report for a particular Store would have a Material Adverse Effect upon the present use or occupancy of such Store, then Buyer may object to such matter by delivery of written notice of objection to Seller given not later than 5 Business Days after the Effective Date. To be effective, any such notice of objection must be directed to Seller using email address catherineibold@winn-dixie.com, with a copy to email address dstanford@sgrlaw.com, and must include a subject matter line in capital letters: "ENVIRONMENTAL REPORT OBJECTION NOTICE - WINN-DIXIE STORE #____" (with the appropriate Store number set forth accordingly).

4.3.2   If Buyer timely notifies Seller of any valid objection to any matter set forth in the Environmental Report for any Store, then Seller will have a period of 3 Business Days after such notice in which to notify in writing Buyer either that: (i) Seller declines or is unable to cure such objection, or (ii) Seller intends to cure or resolve such objection at or prior to Closing.  If written notice is given by Seller pursuant to clause (i) above, then this Agreement will be deemed terminated automatically with respect to such Store, with no liability to Buyer or Seller.  If the Environmental Report discloses any condition that affects the Real Property or other Assets that is of a nature that requires reporting to applicable governmental agencies, then Buyer or its consultants will promptly notify Seller in writing of such condition and, unless required by applicable law, Buyer will not contact or report to such agencies with respect to such condition without Seller's prior written consent; provided, however, that in no event will Buyer or its representatives contact such agencies without providing Seller with prior notice of Buyer's intention to make such contact or report, and providing Seller the opportunity to make such contact or report itself in lieu of Buyer.

4.4   Termination Rights.  In the event that Buyer provides timely written notice of its election to terminate this Agreement as to any Store or all of the Stores pursuant to paragraphs 4.2.2 or 4.3.2 above, then this Agreement will be deemed terminated as to the Terminates Store(s), and thereafter neither of the parties will have any further rights or obligations hereunder as to such Terminated Store(s); provided, however, that this Agreement will be a

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

13

continuing obligation of the parties as to the Stores not affected by such termination and provided further, however, that, if Buyer is not in breach of this Agreement, then Buyer will be entitled to the return from the Escrow Agent of the Deposit attributable to the Terminated Store(s).

4.5     Return of Reports and Documents.  If this Agreement is terminated with respect to any Store or Stores for any reason, then, as to the Terminated Stores, all materials provided by Seller to Buyer and all materials relating to the relevant Assets obtained by Buyer and all copies of any such materials will be delivered to Seller within 5 Business Days following termination.  This paragraph will not in any way limit Buyer's duties to Seller or Winn-Dixie under the Confidentiality Agreement.

## 5.0     Bankruptcy Approval Procedures.

5.1     Competitive Bid Process.  This Agreement is subject to the competitive bid process described in the Bidding Procedures.  Promptly following the expiration of the Review Period, if this Agreement has not otherwise terminated in accordance with its terms as to all of the Assets, then Seller will file a motion with the Bankruptcy Court seeking approval of the transactions contemplated by this Agreement, subject to higher or better offers, and the transfer of the Assets free and clear of all claims and liens including the Credit Liens, other than Permitted Encumbrances, pursuant, inter alia, to 11 U.S.C. Sections 105 and 363 (the "Sale Motion").  The Bankruptcy Court will set a date for hearing on the Sale Motion (the "Sale Hearing") and to consider entry of the Sale Order relating to the Successful Bid, as defined in the Bidding Procedures.  The Bidding Procedures allow Seller to accept competitive bids on the Assets. If an acceptable competitive bid is received, Seller may conduct an auction prior to the Sale Hearing pursuant to the Bidding Procedures (the "Auction"). The party submitting the Successful Bid for the Assets as selected by Seller is referred to as the "Successful Bidder." Buyer may participate in the Auction, and may submit purchase terms different from those set forth in this Agreement as Buyer may deem appropriate in seeking to become the Successful Bidder. Prior to the Sale Hearing, upon consultation with the Creditors' Committee and the lender holding the Credit Agreement Liens (the "DIP Lender"), Seller will select the highest or otherwise best offer to purchase the Assets, as determined by Seller in its sole discretion in accordance with the Bidding Procedures, as the Successful Bid. Seller will submit the Successful Bid to the Bankruptcy Court at the Sale Hearing, for entry of a Sale Order with respect to the Assets by the Bankruptcy Court, either (a) approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, if Buyer is the Successful Bidder under the terms of this Agreement (or as modified during the Auction) or (b) approving the more favorable terms of purchase and sale offered by the Successful Bidder, whether Buyer or otherwise (the "Sale Order").

5.2     Sale Order Approving Agreement. It will be a condition to the Closing of the transaction contemplated by this Agreement that the Bankruptcy Court will

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

14

have issued the Sale Order approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, and such Sale Order either will have become final and non-appealable, or the Sale Order will contain a waiver of the stay set forth in Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "Approval Condition").

5.3    Continuing Effectiveness of Agreement. Notwithstanding that Buyer may not be the Successful Bidder following the Bidding Procedures, this Agreement, as modified by Buyer's last bid made during the Bidding Procedures, will remain in effect in accordance with, and will remain subject to, the Bidding Procedures. If the Approval Condition is not otherwise satisfied by the Outside Date through no fault of Buyer or if the sale of the Assets closes with another Successful Bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other.

6.0    **Representations and Warranties of Seller Relating to the Assets.** To induce Buyer to purchase the Assets as provided above, Seller represents and warrants to Buyer that, except as disclosed to the contrary in this Agreement or in the Due Diligence Materials:

6.1    On or prior to the Effective Date, Seller has delivered to Buyer or made available to Buyer for review, in hard copy, in electronic format or on the Merrill Website: (i) copies of each of the Leases (including amendments with respect thereto) as in effect on the Effective Date, and (ii) the following materials, to the extent such items currently exist and are in the possession or control of Seller:

(a)    copies of the Title History for the Stores;

(b)    copies of environmental history for the Stores;

(c)    copies of the site plans or boundary surveys for the Stores;

(d)    copies of the fixture plans for the Stores; and

(e)    a list of Equipment (other than Excluded Personal Property) with respect to each Store as reflected in Seller's current records;

it being understood that the materials described in this paragraph 6.1 have been provided for informational purposes only with no representations or warranties by Seller as to accuracy, completeness or otherwise.

6.2    At Closing, subject to Bankruptcy Court Approval, Seller will own and convey the Assets free and clear of all Monetary Liens and other encumbrances other than the Permitted Encumbrances, to the extent provided under Section 363 of the Bankruptcy Code.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

15

**7.0**    **General Representations and Warranties of Seller.**  In order to induce Buyer to purchase the Assets as provided above, Seller represents and warrants to Buyer that, except as disclosed to the contrary in this Agreement or in the Due Diligence Materials:

7.1    Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Florida and, subject to satisfaction of the Approval Condition, has the power and authority to consummate the transaction contemplated hereunder.  This Agreement and each of the closing documents to which Seller is or is to become a party, and the transactions contemplated by this Agreement and such closing documents, have, subject to satisfaction of the Approval Condition, been duly authorized by all required corporate action on behalf of Seller.

7.2    No consent, license, approval or authorization of, or filing, registration or declaration with, or exemption or other action by, any governmental authority or third party ("Permit") is or will be required in connection with the execution, delivery or performance by Seller of this Agreement or any closing document to which Seller is or is to become a party or the transactions herein or therein contemplated other than (i) those that have been obtained and are in full force and effect, (ii) approvals, if any, required under the HSR Act, and (iii) Bankruptcy Court approvals issued in satisfaction of the Approval Condition.

7.3    Subject to satisfaction of the Approval Condition, this Agreement and each of the closing documents to which Seller is or is to become a party constitute, or will upon the execution and delivery thereof constitute, the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with the respective terms thereof except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

7.4    To Seller's Knowledge, other than the Bankruptcy Case and related proceedings, there is no action, suit or proceeding pending against Seller before or by any governmental authority (a) that questions the validity or enforceability of this Agreement or any closing document to which Seller is or is to become a party or (b) that, individually or in the aggregate, could (if adversely decided against Seller) have a Material Adverse Effect on the ability of Seller to perform its obligations under this Agreement or the closing documents to which Seller is or is to become a party.

7.5    None of the employees employed by Seller in the Stores is covered by a union contract, collective bargaining agreement or other labor agreement.

7.6    Seller has not engaged any brokers in connection with the transactions contemplated by this Agreement, except Seller's Brokers.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

16

8.0 **Buyer's Representations and Warranties.** In order to induce Seller to enter into this Agreement and to sell, assign and convey the Assets to Buyer as provided herein, Buyer represents and warrants to Seller as follows:

8.1 Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of Florida, and is licensed to transact business in the State(s) in which the Assets are located, and has the power and authority to consummate the transaction contemplated hereunder. This Agreement and each of the closing documents to which Buyer is or is to become a party, and the transactions contemplated by this Agreement and such closing documents, have been duly authorized by all required corporate action on behalf of Buyer.

8.2 No Permit is or will be required in connection with the execution, delivery or performance by Buyer of this Agreement or any closing document to which Buyer is or is to become a party or the transactions herein or therein contemplated, other than (i) those that have been obtained and are in full force and effect, (ii) approvals, if any, required under the HSR Act, and (iii) Bankruptcy Court approvals issued in satisfaction of the Approval Condition.

8.3 This Agreement and each of the closing documents to which Buyer is or is to become a party constitute, or will upon the execution and delivery thereof constitute, the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with the respective terms thereof except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

8.4 There is no action, suit or proceeding pending or, to the Knowledge of Buyer, threatened against or affecting Buyer before or by any governmental authority (a) that questions the validity or enforceability of this Agreement or any closing document to which Buyer is or is to become a party or (b) that, individually or in the aggregate, could (if adversely decided against Buyer) have a Material Adverse Effect on the ability of Buyer to perform its obligations under this Agreement or the closing documents to which Buyer is or is to become a party.

8.5 Entry into this Agreement or any of the closing documents to which Buyer is or is to become a party by Buyer will neither constitute, nor with the giving of notice or lapse of time or both constitute, an event of default or a default by Buyer under any indenture, mortgage, loan agreement, lease, order, decree, charter, bylaws, or other material agreement to which Buyer is a party or by which it or any of its properties may be bound or subject that individually or in the aggregate could have a Material Adverse Effect on the ability of Buyer to perform its obligations under this Agreement or any of the closing documents to which Buyer is or is to become a party.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

17

8.6 As of the Effective Date and at all times through and including the Closing Date, Buyer has and will have sufficient cash, available lines of credit or other sources of immediately available funds to enable it to make payment of the Purchase Price and any other amounts to be paid by it hereunder.

9.0 **Covenants of Seller.** Seller hereby covenants for the benefit of Buyer as follows:

9.1 Subject to the Wind-up Procedures, Seller will maintain the Stores in their present condition, reasonable wear and tear, casualty loss and condemnation impacts excepted.

9.2 Subject to the Wind-up Procedures, Seller will not sell, dispose of, abandon or remove from any Store any of the Assets or agree to do so except in the ordinary course of business.

9.3 During implementation of the Wind-up Procedures, Seller will use commercially reasonable efforts to remove all Excluded Personal Property from the Stores on or before the relevant Closing Date, except that Buyer will remove and dispose of Seller's signs and panels that are part of the Excluded Personal Property as more fully provided in paragraph 10.2 of this Agreement.

9.4 Following satisfaction of the Approval Condition, Seller will release to Buyer a schedule of Seller's current employees at the relevant Store or Stores, and will permit Buyer, at reasonable times during normal business hours and with minimum impact on Seller's business, to arrange for personal interviews with Store managers and other Store employees, at times and places mutually agreeable to both Seller and Buyer, and to arrange for those relevant employees of Seller, who are interested in potential employment with Buyer, to interview with Buyer.

9.5 Seller will transfer or terminate all of its employees working at each Store on or before the relevant Closing Date, except to the extent otherwise required by the Family Medical Leave Act.

9.6 Seller will cooperate reasonably with Buyer, upon written request, with respect to Buyer's performance of its covenants under paragraph 10.0 of this Agreement.

The covenants set forth in this paragraph 9.0 that relate to any period after Closing for a Store or Stores will survive such Closing.

10.0 **Covenants of Buyer.** Buyer hereby covenants for the benefit of Seller as follows:

10.1 Buyer will use commercially reasonable efforts to obtain all Permits required to perform the obligations of Buyer under this Agreement and each of the closing documents to which Buyer is or is to become a party and to attain the fulfillment of the conditions set forth in paragraph 11.0 of this Agreement.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

18

10.2    Within 48 hours after the Closing Date for a Store or Stores, Buyer will, at Buyer's sole cost and expense, remove from such Stores, destroy and lawfully dispose of all signs and panels that are part of the Excluded Personal Property. Without limitation, Buyer acknowledges that Buyer's indemnification of Seller under paragraph 16.5 of this Agreement will encompass any breach by Buyer of this paragraph 10.2.

10.3    Buyer will use commercially reasonable efforts to take or cause to be taken all actions and to do, or cause to be done, and to assist and cooperate with Seller in doing, all things necessary or appropriate to consummate and make effective, in the most expeditious manner practicable, the transactions contemplated by this Agreement.

10.4    Buyer will provide the Adequate Assurance Information to Seller, the Bankruptcy Court, Landlords and Subtenants as reasonably may be requested.

The covenants set forth in this paragraph 10.0 that relate to any period after Closing for a Store or Stores will survive such Closing.

11.0    **Conditions Precedent to Buyer's Obligations.**  The obligations of Buyer under this Agreement as to each Store are subject to satisfaction of the Approval Condition, and satisfaction on or before the Closing Date, or such other date as herein provided, of all conditions contained in this Agreement, including, without limitation, each of the following (any of which may be waived by Buyer in Buyer's sole discretion, unless otherwise stated herein):

11.1    Seller will have performed in all material respects all of its covenants contained in this Agreement which are not qualified by reference to a materiality standard, except where the failure to do so would not reasonably be expected to have a Material Adverse Effect; and Seller will have performed in all respects all of its covenants contained in this Agreement which are qualified by reference to a materiality standard, except where the failure to do so would not reasonably be expected to have a Material Adverse Effect. Subject to any limitations set forth in this Agreement (including, without limitation, the last sentence of paragraph 6.1 of this Agreement), all of Seller's representations and warranties contained in this Agreement which are not qualified by reference to a materiality standard will be true and accurate in all material respects on the Effective Date and as of the Closing Date, except where the failure to be so would not reasonably be expected to have a Material Adverse Effect; and all of Seller's representations and warranties contained in this Agreement which are qualified by reference to a materiality standard will be true and accurate in all respects on the Effective Date and as of the Closing Date, except where the failure to be so would not reasonably be expected to have a Material Adverse Effect.

11.2    No order, injunction or decree issued by any applicable governmental authority or other legal restraint or prohibition preventing the consummation of the transactions contemplated by this Agreement with respect to such

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

19

Store will be in effect, and, if the transactions contemplated herein are determined to be subject to regulatory review and approval under the HSR Act, then such approval or clearance will have been obtained.

11.3   The stays imposed by Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d) will have been waived by the Bankruptcy Court or will have expired.

If any of the foregoing conditions has not been satisfied on or before the Outside Date, then Buyer will have the right to terminate this Agreement pursuant to paragraph 15.1.4 of this Agreement; provided, however, that if any of the foregoing conditions has not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations, including any right of termination, will be determined in accordance with paragraph 16.0 of this Agreement rather than pursuant to paragraph 15.1.4.

12.0   **Conditions Precedent to Seller's Obligations.**   The obligations of Seller under this Agreement as to each Store are subject to satisfaction of the Approval Condition and satisfaction on or before the Closing Date, or such other date as herein provided, of all conditions contained in this Agreement, including, without limitation, each of the following (any of which may be waived by Seller in its sole discretion, unless otherwise stated herein):

12.1   Buyer will have performed in all material respects all of its covenants contained in this Agreement which are not qualified by reference to a materiality standard, except where the failure to do so would not reasonably be expected to have a Material Adverse Effect; and Buyer will have performed in all respects all of its covenants contained in this Agreement which are qualified by reference to a materiality standard, except where the failure to do so would not reasonably be expected to have a Material Adverse Effect. All of Buyer's representations and warranties contained in this Agreement which are not qualified by reference to a materiality standard will be true and accurate in all material respects as of the Effective Date and the Closing Date, except where the failure to be so would not reasonably be expected to have a Material Adverse Effect; and all of Buyer's representations and warranties contained in this Agreement which are qualified by reference to a materiality standard will be true and accurate in all respects as of the Effective Date and the Closing Date, except where the failure to be so would not reasonably be expected to have a Material Adverse Effect.

12.2   No order, injunction or decree issued by any applicable governmental authority or other legal restraint or prohibition preventing the consummation of the transactions contemplated by this Agreement with respect to such Store will be in effect, and, if the transactions contemplated herein are determined to be subject to regulatory review and approval under the HSR Act, then such approval or clearance will have been obtained.

12.3   The stays imposed by Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d) will have been waived by the Bankruptcy Court or will have expired.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

If any of the foregoing conditions has not been satisfied on or before the Outside Date, then Seller will have the right to terminate this Agreement pursuant to paragraph 15.1.5 of this Agreement; provided, however, that if any of the foregoing conditions has not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations, including any right of termination, will be determined in accordance with paragraph 16.0 of this Agreement rather than pursuant to paragraph 15.1.5.

13.0 **Loss by Fire or Other Casualty; Condemnation.**  Prior to the Closing, if any Store, or any material part thereof, is destroyed or materially damaged, or if condemnation proceedings are commenced against any material part of the Real Property associated with any Store, then either Buyer or Seller will have the right, exercisable by giving notice of such decision to the other within 5 Business Days after receiving written notice of such damage, destruction or condemnation proceedings, to terminate this Agreement as to the Store affected by such loss, and thereafter neither of the parties will have any further rights or obligations hereunder as to such Store; provided, however, that this Agreement will be a continuing obligation of the parties as to the Stores not affected by such termination and provided further, however, that, if Buyer is not in breach of this Agreement, then Buyer will be entitled to the return from the Escrow Agent of the Deposit attributable to such Store or Stores so affected.  If neither party exercises its right of termination with respect to any Store affected by such casualty or proceeding and the Store is sold to Buyer pursuant to the terms of this Agreement, then, as Buyer's sole remedies, Seller will assign to Buyer any rights it may have, and is entitled to assign, to recover insurance proceeds or to receive condemnation compensation and will promptly pay over and deliver to Buyer any such proceeds or compensation received by it.

14.0 **Closing Date and Closing.**

14.1 Closing Date; Procedures.  Promptly following satisfaction of the Approval Condition, Seller will designate a Business Day reasonably acceptable to Buyer that falls on or before the Outside Date as the closing date for each Store or group of Stores.  Such designated closing date for any particular Store or group of Stores is referred to herein as a "Closing Date".  Seller may designate multiple Closing Dates for multiple Store locations, as necessary to facilitate the timely and orderly conduct of Closing procedures.  The Closings will be conducted by use of escrows administered by Escrow Agent, including delivery of documents and funding into escrow and subsequent release and legal delivery of the same from escrow following authorization given by Buyer and Seller based on satisfaction of the terms and conditions of this Agreement.

14.2 Seller's Closing Deliveries.  Subject to the conditions contained in paragraph 12.0 of this Agreement, on or before the Closing Escrow Date as determined based on the designated Closing Date for each Store or group of Stores, Seller will deliver the following ("Seller's Escrowed Items") into escrow with Escrow Agent:

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

21

(i)    Two counterparts of the relevant Conveyance Instrument(s), executed by Seller;

(ii)    The relevant Bill(s) of Sale, executed by Seller;

(iii)    Two counterparts of the relevant Closing Statement(s), executed by Seller;

(iv)    Such other instruments as are reasonably required by the Title Insurer in accordance with the terms hereof; provided, however, that in no event will Seller be required to indemnify the Title Insurer, Buyer, or any other party pursuant to any such instrument, or undertake any other material liability not expressly contemplated in this Agreement, unless Seller elects to do so in its sole discretion; and

(v)    Any other documents, instruments or agreements called for hereunder for delivery by Seller with respect to such Store that have not previously been delivered.

Buyer may waive Seller's compliance as to any of the foregoing items in a manner permitted by paragraph 17.6 of this Agreement. Seller's delivery of all of Seller's Escrowed Items (other than those waived by Buyer) to Escrow Agent, will not be deemed to be an acknowledgement by Seller that the conditions of paragraph 12.0 of this Agreement have been fulfilled or waived until Seller's Closing Direction is delivered.

14.3    Buyer's Closing Deliveries. Subject to the conditions contained in paragraph 11.0 of this Agreement, on or before the Closing Escrow Date as determined based on the designated Closing Date for each Store or group of Stores, Buyer will deliver the following ("Buyer's Escrowed Items") into escrow with Escrow Agent:

(i)    Two counterparts of the relevant Conveyance Instrument(s), executed by Buyer;

(ii)    Two counterparts of the relevant Replacement Guaranty(ies), if required, executed by the requisite parent Affiliate of Buyer;

(iii)    Two counterparts of the relevant Closing Statement(s), executed by Buyer;

(iv)    Such other instruments as are reasonably required by the Title Insurer in accordance with the terms hereof;

(v)    Any other document, instrument or agreement called for hereunder for delivery by Buyer that has not previously been delivered; and

(vi)    All funds required to be transferred and delivered by Buyer to Escrow Agent pursuant to paragraph 3.0 of this Agreement.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

22

Seller may waive compliance by Buyer as to any of the foregoing items in a manner permitted by paragraph 17.6 of this Agreement. Buyer's delivery of all of Buyer's Escrowed Items (other than those waived by Seller) to Escrow Agent will not be deemed to be an acknowledgement by Buyer that the conditions of paragraph 11.0 of this Agreement have been fulfilled or waived until Buyer's Closing Direction is delivered.

14.4   Title Insurer Requirements.  On each Closing Date, Seller and Buyer will each deposit with Escrow Agent such other instruments as are reasonably required by the Title Insurer or otherwise required to consummate the purchase of the relevant Assets in accordance with the terms hereof; provided, however, that in no event will Seller be required to indemnify the Title Insurer, Buyer, or any other party pursuant to any such instrument, or undertake any other material liability not expressly contemplated in this Agreement, unless Seller elects to do so in its sole discretion.

14.5   Payment of Closing Costs.  Except as provided in paragraph 16.0 of this Agreement, at or before Closing for each Store or Stores, or if Closing does not occur due to earlier termination of this Agreement in accordance with its terms with respect to any Store or Stores, (i) Seller will pay Seller's Closing Costs relating to such Store or Stores; and (ii) Buyer will pay Buyer's Closing Costs relating to such Store or Stores.

14.6   Closing Direction.  On the Closing Date, Escrow Agent will notify Buyer and Seller, if this be the case, that Escrow Agent is in possession of all of Seller's Escrowed Items and all of Buyer's Escrowed Items, and is prepared to release such items for legal delivery subject only to receipt of (i) written notice from Seller or Seller's counsel to Escrow Agent and Buyer confirming that Seller is prepared to proceed to closing and that all of the conditions of paragraph 12.0 of this Agreement have been fulfilled or otherwise waived ("Seller's Closing Direction"), and (ii) written notice from Buyer or Buyer's counsel to Escrow Agent and Seller confirming that Buyer is prepared to proceed to closing and that all of the conditions of paragraph 11.0 of this Agreement have been fulfilled or otherwise waived ("Buyer's Closing Direction"). Upon receipt of Buyer's Closing Direction and Seller's Closing Direction, Escrow Agent will be deemed authorized and directed to release and disburse, as appropriate, the Seller's Escrowed Items and the Buyer's Escrowed Items without further condition, on the Closing Date.

14.7   Closing Turnover.  Contemporaneously with delivery of the latter of Seller's Closing Direction and Buyer's Closing Direction to Escrow Agent, all right, title and interest of Seller in and to the Assets will pass to Buyer, and Seller thereafter will have no further right, title, interest or obligation with respect to the Store or the Assets, except as may be expressly provided in this Agreement.  Promptly following Closing, Seller will turn over to Buyer exclusive physical possession of each Store and the Assets associated therewith (including, to the extent in Seller's possession, control or custody) all keys, combinations to safes, security codes and passwords, and Buyer may

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

23

commence preparation for opening of such Store as a Buyer's store including, without limitation, disconnecting items of equipment that are included in Excluded Personal Property and moving such items aside, and commencing electrical and wiring work required in order to install Buyer's point of sale and other equipment, signage, and similar items.

14.8    Closing Deliveries and Disbursements.    Subject to satisfaction of the requirements set forth in paragraph 14.6 above, at the commencement of business on the Closing Date, Escrow Agent will release and disburse, as appropriate, the Buyer's Escrowed Items and the Seller's Escrowed Items, with disbursements of Buyer's Closing Costs, Seller's Closing Costs, and the Purchase Price, as provided in the Closing Statement.

## 15.0   **Termination**.

15.1    Termination. This Agreement may be terminated, and the transactions contemplated hereby abandoned, as to any or all Stores not the subject of a completed Closing, only as follows:

15.1.1    by written consent of Seller and Buyer, in which case the applicable Deposit will be disbursed as provided in such written consent (but if such written consent does not provide for the disbursement of the applicable Deposit, then Escrow Agent will pay over the applicable Deposit to Seller as consideration for Seller's agreement to terminate this Agreement with respect to such Store or Stores);

15.1.2    at the election of Seller if and to the extent permitted under paragraph 16.1 of this Agreement, in which case the applicable Deposit will be disbursed as provided in such paragraph 16.1;

15.1.3    at the election of Buyer if and to the extent permitted under paragraph 16.2 of this Agreement, in which case the applicable Deposit will be disbursed as provided in such paragraph 16.2;

15.1.4    at the election of Buyer if any of the conditions set forth in paragraph 11.0 of this Agreement has not been satisfied or waived by Buyer on or before the Outside Date, in which case Seller will direct Escrow Agent to return the applicable Deposit to Buyer; provided, however, that if any of such conditions has not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations, including any right of termination, will be determined in accordance with paragraph 16.0 of this Agreement rather than pursuant to this paragraph 15.1.4;

15.1.5    at the election of Seller if any of the conditions set forth in paragraph 12.0 of this Agreement has not been satisfied or waived by Seller on or before the Outside Date, in which case Seller will direct Escrow Agent to return the applicable Deposit to Buyer;

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

provided, however, that if any of such conditions has not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations, including any right of termination, will be determined in accordance with paragraph 16.0 of this Agreement rather than pursuant to this paragraph 15.1.5;

15.1.6  at the election of Buyer or Seller as provided in paragraphs 4.4, 13.0, or 22.0 of this Agreement, in which case Seller will direct Escrow Agent to return the applicable Deposit to Buyer; provided, however, that if at the time any such election is made, Buyer is in breach of this Agreement, then Buyer's and Seller's respective rights, remedies and obligations (including any right of termination) will be determined in accordance with paragraph 15.2 of this Agreement rather than pursuant to this paragraph 15.1.6;

15.1.7  at the election of Seller, with respect to any one or more of the Stores remaining under this Agreement, if this Agreement is terminated by Buyer with respect to any Store or Stores for any reason (including, without limitation, because of Seller's breach of this Agreement), in which case Seller will direct Escrow Agent to return the applicable Deposit to Buyer; provided, however, that if at the time any such election is made, Buyer is in breach of this Agreement, then Buyer's and Seller's respective rights, remedies and obligations (including any right of termination) will be determined in accordance with paragraph 15.2 of this Agreement rather than pursuant to this paragraph 15.1.7;

15.1.8  at the election of Seller with respect to any particular Store or Stores (A) if this Agreement is not the Successful Bid with respect to such Store or Stores or (B) if the Approval Condition is not satisfied with respect to such Store or Stores or (C) if this Agreement is terminated by Seller with respect to any other Store or Stores for any reason other than as provided in paragraph 15.1.9 below, in which case Seller will direct Escrow Agent to return the applicable Deposit to Buyer; provided, however, that if at the time any such election is made, Buyer is in breach of this Agreement, then Buyer's and Seller's respective rights, remedies and obligations (including any right of termination) will be determined in accordance with paragraph 15.2 of this Agreement rather than pursuant to this paragraph 15.1.8;

15.1.9  at the election of Seller, if the Cure Costs with respect to any Lease exceed 15% of the Purchase Price for the relevant Store, as shown on the Allocation Schedule, provided that in such case Seller may terminate this Agreement under this paragraph 15.1.9 only with respect to such Store, in which case Seller will direct Escrow Agent to return the applicable Deposit to Buyer; provided, however, that if at the time any such election is made, Buyer is in breach in respect

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

25

of this Agreement, then Buyer's and Seller's respective rights, remedies and obligations (including any right of termination) will be determined in accordance with paragraph 15.2 of this Agreement rather than pursuant to this paragraph 15.1.9; or

15.1.10   at the election of Buyer or Seller, if the relevant Closing has not occurred on or before the Outside Date for any reason other than as contemplated in paragraphs 15.1.1 through 15.1.9 of this Agreement, in which case Seller will direct Escrow Agent to return the applicable Deposit to Buyer; provided that neither Buyer nor Seller, as the case may be, will be entitled to terminate this Agreement pursuant to this paragraph 15.1.10 if such party's breach of this Agreement has been the cause of, or resulted in, the failure of the relevant Closing to occur on or before such date and in the case of any such breach Buyer's and Seller's respective rights, remedies and obligations (including any right of termination) will be determined in accordance with paragraph 16.0 of this Agreement rather than pursuant to this paragraph 15.1.10.

15.2   Reservation of Remedies.   Upon any termination of this Agreement with respect to any Store or Stores pursuant to paragraphs 15.1.3 through 15.1.10 of this Agreement, each party will retain those rights (if any) it may have under paragraph 16.0 of this Agreement against any other party for breach by such other party prior to such termination of any of its covenants or other obligations under or relative to this Agreement.

## 16.0   **Default and Remedies**.

16.1   Buyer's Default.   If the Closing for any one or more Stores as contemplated under this Agreement is not consummated due to Buyer's breach of this Agreement, or if this Agreement is terminated as to any one or more Stores due to Buyer's breach of this Agreement, then Seller will be entitled, as its sole and exclusive remedy for such breach, (A)(i) to terminate this Agreement with respect to such Store or Stores only (which will be considered Terminated Stores), or (ii) to terminate this Agreement with respect to all of the remaining Stores which, on the date of such election, are still owned by Seller (which will be considered Terminated Stores), and (B) to receive the Deposits for all Terminated Stores (collectively, the "Liquidated Deposit") as liquidated damages for the breach of this Agreement and not as a penalty, it being agreed between the parties hereto that the actual damages to Seller in the event of such a breach are impractical to ascertain and the amount of the Liquidated Deposit is a reasonable estimate thereof. Seller hereby expressly waives and relinquishes any and all other remedies at law or in equity. Seller's right to receive the Liquidated Deposit is intended not as a penalty, but as full-liquidated damages. The right to receive the Liquidated Deposit as full liquidated damages is Seller's sole and exclusive remedy in the event of breach of this Agreement by Buyer with respect to the Terminated Stores, and Seller hereby waives and releases any right to (and Seller hereby covenants that it will not) sue Buyer with respect to the Terminated Stores:

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

26

(a) for specific performance of this Agreement, or (b) to recover any damages of any nature or description other than or in excess of the Liquidated Deposit. Buyer hereby waives and releases any right to (and hereby covenants that it will not) Seller or seek or claim a refund of the Liquidated Deposit (or any part thereof) on the grounds that the Liquidated Deposit is unreasonable in amount and exceeds Seller's actual damages or that its retention by Seller constitutes a penalty and not agreed upon and reasonable liquidated damages. This paragraph 16.1 is subject to paragraph 16.3 and 16.4 of this Agreement.

16.2    Default by Seller.    In the event of Seller's breach of its covenants, representations or warranties as provided in this Agreement, or if, following satisfaction of the Approval Condition, the sale of any one or more Stores as contemplated under this Agreement is not consummated due to Seller's refusal or inability to Close the transactions contemplated herein, then Buyer will be entitled, as its sole and exclusive remedy for such breach, to receive the return of the Deposit with respect to such Store or Stores, which return will operate to terminate this Agreement with respect to such Store or Stores and release Seller from any and all liability under this Agreement with respect to such Store or Stores. Buyer expressly waives and releases (i) any right to seek specific performance of Seller's obligations under this Agreement and (ii) any right to seek or collect any damages, including any actual, consequential, speculative, remote or punitive damages. This paragraph 16.2 is subject to paragraphs 16.3 and 16.4 of this Agreement.

16.3    Notice of Default; Opportunity to Cure.    Neither Seller nor Buyer will be deemed to be in default hereunder until and unless such party has been given written notice of its failure to comply with the terms hereof and thereafter does not cure such failure within 5 Business Days after receipt of such notice; provided, however, that this paragraph 16.3: (i) will not be applicable to Buyer's failure to deliver any Deposit or any portion thereof on the date required under this Agreement or to a party's failure to make any deliveries required of such party on the Real Property Escrow Date or the Closing Date for any Store or Stores and, accordingly, (ii) will not have the effect of extending the Closing Date or the due date of any Deposit.

16.4    Recoverable Damages.    In no event will the provisions of paragraphs 16.1 and 16.2 of this Agreement limit (i) either Buyer's or Seller's obligation to indemnify the other party, or the damages recoverable by the indemnified party against the indemnifying party due to, a party's express obligation to indemnify the other party in accordance with the Confidentiality Agreement and paragraphs 16.5 and 17.3 of this Agreement, or (ii) either Buyer's or Seller's obligation to pay costs, fees or expenses under the Confidentiality Agreement and paragraphs 3.4.2 and 3.4.3 of this Agreement, or the damages recoverable by any party against any other party due to a party's failure to pay such costs. In addition, if this Agreement is terminated for any reason with respect to any one or more Stores or in its entirety, and Buyer or any Affiliate of Buyer asserts any claim or right to any Asset that would otherwise delay or prevent Seller from having clear, indefeasible, and

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

27

marketable title to any Asset, then Seller will have all rights and remedies available at law or in equity with respect to such assertion by Buyer and any loss, damage or other consequence suffered by Seller as a result of such assertion.

16.5    Buyer Indemnification of Seller. Buyer will indemnify and save and hold harmless Seller and its Affiliates and representatives, from and against any and all costs, losses liabilities, damages, lawsuits, deficiencies, claims and expenses (whether or not arising out of third-party claims) including, without limitation, interest, penalties, reasonable attorneys' fees and all amounts paid in investigation, defense or settlement for any of the foregoing (herein, the "Damages") incurred in connection with or arising out of or resulting from (a) any breach of any covenant or warranty by Buyer (including any payment obligation), or the inaccuracy of any representation made by Buyer in or pursuant to this Agreement or other transaction documents, (b) any liability, obligation or commitment of any nature (absolute, accrued, contingent or otherwise) of Buyer that is due to or arises in connection with Buyer's acts or omissions prior to, on or after the Closing Date, including any claim, liability, or obligation that is assumed by Buyer pursuant to this Agreement or in any transaction documents signed by Buyer.    Notwithstanding the foregoing, Buyer will not be liable for any matter (i) with respect to which Seller has not given Buyer written notice within a reasonable period of time following Seller's receiving written notice of such matter, specifying the claim and the basis for the claim in reasonable detail (unless the failure to provide such information did not have a Material Adverse Effect on Buyer), or (ii) that is due Seller's acts or omissions.    The provisions of this paragraph 16.5 will cover all obligations and liabilities of whatsoever kind, nature or description relating, directly or indirectly, to product liability, third party litigation or third party claims against Buyer or Seller in connection with, arising out of, or relating to the Assets.    This paragraph 16.5 will survive the Closings or earlier termination of this Agreement.

16.6    Mutuality of Remedies.  Buyer and Seller each hereby knowingly, voluntarily and intentionally waive and relinquish the right to assert mutuality of remedies as a defense to enforceability of this Agreement by either party.

## 17.0    **Miscellaneous.**

17.1    Notices. All notices, requests, demands, offers and other communications required or permitted to be given pursuant to this Agreement will conform to the requirements of this paragraph 17.1 and will be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by facsimile transmission, when the facsimile is transmitted to the recipient's telefax number or by attachment to an e-mail transmission to the recipient's e-mail address and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next Business Day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iii) if given by e-mail transmission when confirmation of complete receipt is

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

28

received by the transmitting party during normal business hours for the recipient, or the next Business Day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iv) if delivered by United States Mail, 3 days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (v) if given by nationally recognized or reputable overnight delivery service, on the next Business Day after receipted deposit with same, addressed to Seller or Buyer at their respective addresses stated below:

If to Seller:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3699
Attn: Michael Chlebovec, Director – Asset Management
Telefax No.: 904-783-5646
e-mail: *michaelchlebovec@winn-dixie.com*

With a copy to:

Winn-Dixie Stores, Inc. – Legal Department
5050 Edgewood Court
Jacksonville, Florida 32254-3699
Attn: Catherine Ibold, Group Leader - Real Estate
Telefax No.: 904-783-5138
e-mail: *catherineibold@winn-dixie.com*

and

Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Attn: Douglas Stanford
Telefax No.: 904-598-6300
e-mail: *dstanford@sgrlaw.com*

If to Buyer:

Fine Foods Gourmet Markets Inc.
c/o Richard A. Bonilla
2251 Christine Drive
Kissimmee, Florida 34744
Telefax No.: 718-228-7331
e-mail: *rabonilla@gmail.com*

With a copy to:

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

29

Maximo Figueredo, Esquire
37-31 76th Street
Jackson Heights, New York 11372
Telefax No.: 718-335-4198
e-mail: *mfigui@aol.com*

If to Escrow Agent:

Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Attn: Douglas Stanford
Telefax No.: 904-598-6300
e-mail: *dstanford@sgrlaw.com*

or such other address as any party may from time to time specify by notice to the other.

17.2  Notice of Certain Inquiries.  If any party is contacted, whether before or after any Closing and whether orally or in writing, by the United States Department of Justice or the Federal Trade Commission, or any similar state governmental authority, with respect to any transactions contemplated by this Agreement, such party will promptly notify the other party of such contact and describe the facts and circumstances thereof.

17.3  Brokers and Finders.  The parties agree that there is no brokerage commission due in connection with the transactions contemplated by this Agreement other than that due by Seller to Seller's Brokers.  Seller agrees to pay all fees and commissions claimed by Seller's Brokers as a result of the transaction contemplated by this Agreement, which fees and commissions will be considered payable with respect to a Store only if, as and when the relevant Closing contemplated by this Agreement occurs.  Except for Seller's Brokers, neither Seller nor Buyer has dealt with any investment adviser, real estate broker, real estate consultant or finder, or incurred any liability for any commission or fee to any investment adviser, real estate broker, real estate consultant, or finder in connection with the sale of the Assets or this Agreement.  Seller and Buyer hereby indemnify and agree to hold harmless each other from and against any claims by any other Person for brokerage fees, commissions or other similar costs related to the purchase of the Assets and this Agreement by reason of Seller's or Buyer's own acts, said indemnifications by Seller and Buyer to survive the Closings or earlier termination of this Agreement.

17.4  Successors and Assigns.  This Agreement will be binding upon, and inure to the benefit of, the parties hereto and their respective successors, and permitted assigns.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

30

17.5 <u>Assignment</u>.  Neither Seller nor Buyer may assign or delegate any duties or obligations under this Agreement without the prior written consent of the other, which consent may be granted or withheld in the sole discretion of the party whose consent is so required.  No assignment by Buyer will release or relieve Buyer of its liabilities and obligations hereunder, which will remain in full force and effect notwithstanding any such assignment.

17.6 <u>Amendments</u>.  Except as otherwise provided herein, this Agreement may be amended or modified by, and only by, a written instrument executed by Seller and Buyer (and delivered physically or by facsimile transmission from any party or its counsel to the other party or its counsel) and subject to approval of the Bankruptcy Court, if applicable.

17.7 <u>Governing Law</u>.  The application and effect of this Agreement as to any particular Store or Stores will be governed by and construed in accordance with the laws of the State in which such Store or Stores is located; the application and effect of this Agreement as to any matter of the rights and obligations of the parties generally will be governed by and construed in accordance with the laws of the State of Florida.

17.8 <u>Merger of Prior Agreements</u>.   This Agreement, together with the Confidentiality Agreement which is hereby incorporated into this Agreement by reference, supersedes all prior agreements and understandings between the parties hereto and constitutes the entire agreement of the parties with respect to the matters contained herein.  **BUYER ACKNOWLEDGES ITS OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT CONTINUE AFTER THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXCEPT TO THE EXTENT EXPRESSLY PROVIDED IN THIS AGREEMENT.**

17.9 <u>Survival</u>.  Acceptance by Buyer of the Conveyance Instrument with respect to any Store will constitute an acknowledgement by Buyer that all of Seller's representations, covenants and obligations under this Agreement with respect to such Store and all conditions to Buyer's obligations to close under this Agreement with respect to such Store have been performed, satisfied and/or waived.  Seller's representations, warranties, covenants and obligations under this Agreement with respect to any Store will not survive the Closing for such Store but will merge into the Conveyance Instrument for such Store, and will have no further force or effect after the Closing for such Store, except that those covenants of Seller under <u>paragraph 17.3</u> of this Agreement with respect to any Store that are expressly provided to be performed after the Closing for such Store will survive.  All representations, warranties, covenants of obligations of Buyer under this Agreement with respect to any Store will survive the Closing for such Store.  In addition, all representations, covenants and obligations of Buyer under the Confidentiality Agreement will survive the termination or consummation of this Agreement.

17.10 <u>Time is of the Essence</u>.  Time is of the essence to this Agreement.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

17.11  <u>No Recordation</u>.  This Agreement will not be recorded in any public office or court other than as part of the process of satisfying the Approval Condition or in connection with any HSR Act requirement, except that upon default it may be presented to a court of competent jurisdiction.

17.12  <u>State Specific Provisions</u>:

17.12.1  **With respect to any Store in Florida**: <u>Radon Gas</u>. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

17.12.2  [Intentionally deleted]

## 18.0  **Escrow Agent**.

18.1  <u>Duties</u>.  By signing a copy of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent.  Upon its receipt of funds from Buyer, Escrow Agent will receive and hold such funds, and interest, if any, accrued thereon, in trust to be disposed of in accordance with the provisions of this Agreement.

18.2  <u>Indemnity</u>.  Escrow Agent will not be liable to any party except for claims resulting from the negligence or willful misconduct of Escrow Agent. If the escrowed funds or interest, if any, accrued thereon is involved in any controversy or litigation, the parties hereto will jointly and severally indemnify and hold Escrow Agent free and harmless from and against any and all loss, cost, damage, liability or expense, including costs of reasonable attorneys' fees to which Escrow Agent may be put or which may incur by reason of or in connection with such controversy or litigation, except to the extent it is finally determined that such controversy or litigation resulted from Escrow Agent's negligence or willful misconduct.    If the indemnity amounts payable hereunder result from the fault of Buyer or Seller (or their respective agents), the party at fault will pay, and hold the other party harmless against, such amounts.  Otherwise, Buyer and Seller each will be responsible for one-half of such amounts.

18.3  <u>Dispute</u>.  If a written objection is filed within the time allowed or if Escrow Agent is in doubt as to its duties, Escrow Agent may continue to hold the escrowed funds and interest, if any, accrued thereon until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court, or Escrow Agent may interplead the same in such court and be relieved of any and all liability therefor.  In any action or proceeding regarding the escrowed funds or interest, if any, accrued thereon brought by Escrow Agent or to which Escrow Agent is made a party, the Escrow Agent will be entitled to recover its reasonable costs and attorneys' fees (through appeal) from whichever of Seller or Buyer is not the prevailing party in such

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

32

action or proceeding.  If there is no prevailing party, Seller and Buyer each will be responsible for one-half of such costs and fees.

18.4    <u>Execution by Escrow Agent</u>.  Escrow Agent has executed this Agreement solely for the purpose of acknowledging and agreeing to the provisions of this <u>paragraph 18.0.</u>  Escrow Agent's consent to and execution of any modification or amendment of this Agreement other than this <u>paragraph 18.0</u> will not be required.

19.0    **Waiver of Jury Trial**.  Buyer and Seller each acknowledge and agree that the nature of this Agreement makes a jury determination of any dispute arising out of this Agreement or relating to the transactions contemplated herein undesirable. Accordingly, Buyer and Seller each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Agreement or the transactions contemplated herein.

20.0    **Confidentiality**.  Buyer acknowledges and agrees that Seller is a beneficiary of the Confidentiality Agreement and is entitled to enforce all obligations of Buyer and exercise all rights and remedies of Winn-Dixie under such agreement, acting alone or acting jointly with Winn-Dixie.  The Confidentiality Agreement will be a continuing agreement of Buyer and Winn-Dixie, and will be applicable to the transactions that are the subject matter herein to the same extent as if the Confidentiality Agreement was fully incorporated into this Agreement.

21.0    **Consent to Jurisdiction.** THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.**

Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in <u>paragraph 17.1</u> of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum. If a court finds that subject-matter jurisdiction is not available in the Bankruptcy Court, Buyer and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the U.S. District Court for the Middle District of Florida, Jacksonville Division, or if such court will not have jurisdiction, then to the appropriate courts of the State of Florida sitting in Duval County, Florida.

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

33

22.0 **HSR Filings.** The parties anticipate that the transactions contemplated herein are exempt from review and filing under the HSR Act. However, if for any reason the transactions contemplated herein are determined to be subject to regulatory review and clearance or approval under the HSR Act, then either Buyer or Seller will have the right, exercisable prior to satisfaction of the Approval Condition by giving notice of such decision to the other within 5 Business Days after receiving written notice of such HSR Act requirements, to terminate this Agreement and thereafter neither of the parties will have any further rights or obligations hereunder; provided, however, that if Buyer is not then in breach of this Agreement, then Buyer will be entitled to the return from the Escrow Agent of the Deposit. This termination right is not exercisable after satisfaction of the Approval Condition. If neither party exercises its right of termination as provided above, or if such right of termination is not longer exercisable, then Seller and Buyer will seek regulatory approval or HSR clearance and prepare and submit, in a timely manner, all necessary filings for Seller and Buyer in connection with this Agreement under the HSR Act and the rules and regulations thereunder, and it will be a condition precedent to the obligations of both Buyer and Seller that all such required HSR Act approvals or clearance are obtained, as provided in paragraphs 11.2 and 12.2 above. In such latter event, Seller and Buyer will request expedited treatment of such HSR Filing by the Federal Trade Commission, will make promptly any appropriate or necessary subsequent or supplemental filings, and will furnish to each other copies of all HSR Filings at the same time as they are filed with the appropriate governmental authority except to the extent such party is legally restricted from providing or believes, based where appropriate on the advice of counsel, that it should not provide such copies, as Buyer's sole remedies, Seller will assign to Buyer any rights it may have, and is entitled to assign, to recover insurance proceeds or to receive condemnation compensation and will promptly pay over and deliver to Buyer any such proceeds or compensation received by it.

23.0 **Disclaimers and Waivers.**

23.1 **NO RELIANCE ON DOCUMENTS.** **EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN PARAGRAPHS 6.0 AND 7.0 HEREOF (THE "CONTRACT WARRANTIES"), SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO THE TRUTH, ACCURACY OR COMPLETENESS OF ANY MATERIALS, DATA OR INFORMATION DELIVERED BY OR ON BEHALF OF SELLER TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY. BUYER ACKNOWLEDGES AND AGREES THAT ALL MATERIALS, DATA AND INFORMATION DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY (WHETHER DELIVERED OR MADE AVAILABLE ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE) ARE PROVIDED TO BUYER AS A CONVENIENCE ONLY AND THAT ANY RELIANCE ON OR USE OF SUCH MATERIALS, DATA OR INFORMATION BY BUYER WILL BE AT THE SOLE RISK OF BUYER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BUYER ACKNOWLEDGES AND AGREES THAT (A) ANY TITLE, ENVIRONMENTAL, ENGINEERING, SALES, FINANCIAL OR OTHER**

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

REPORT WITH RESPECT TO THE ASSETS WHICH IS DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER WILL BE FOR GENERAL INFORMATIONAL PURPOSES ONLY, (B) BUYER WILL NOT HAVE ANY RIGHT TO RELY ON ANY SUCH REPORT DELIVERED BY SELLER OR ANY AFFILIATE TO BUYER, BUT RATHER WILL RELY ON ITS OWN INVESTIGATIONS AND ANY REPORTS COMMISSIONED BY BUYER WITH RESPECT THERETO, AND (C) NEITHER SELLER, ANY AFFILIATE OF SELLER NOR THE PERSON WHICH PREPARED ANY SUCH REPORT DELIVERED OR MADE AVAILABLE BY SELLER OR ANY AFFILIATE TO BUYER WILL HAVE ANY LIABILITY TO BUYER FOR ANY INACCURACY IN OR OMISSION FROM ANY SUCH REPORT.

23.2    **Disclaimers.**  EXCEPT FOR THE CONTRACT WARRANTIES,  BUYER UNDERSTANDS AND AGREES THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESSED OR IMPLIED, WITH RESPECT TO THE ASSETS, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE ASSETS WITH LAWS, THE ABSENCE OR PRESENCE OF HAZARDOUS MATERIALS OR OTHER TOXIC SUBSTANCES (INCLUDING WITHOUT LIMITATION MOLD OR ANY MOLD CONDITION), COMPLIANCE WITH ENVIRONMENTAL LAWS, THE TRUTH, ACCURACY OR COMPLETENESS OF ANY DOCUMENTS, MATERIALS, REPORTS OR OTHER INFORMATION PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE TO BUYER, OR ANY OTHER MATTER OR THING REGARDING THE ASSETS. BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER WILL SELL AND CONVEY TO BUYER AND BUYER WILL ACCEPT THE ASSETS "AS IS, WHERE IS, WITH ALL FAULTS". BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND NEITHER SELLER NOR ANY AFFILIATE IS LIABLE FOR OR BOUND BY, ANY EXPRESSED OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE ASSETS OR RELATING THERETO PROVIDED OR MADE AVAILABLE BY OR ON BEHALF OF SELLER OR ANY AFFILIATE, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER OR ANY AFFILIATE, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY, IN WRITING, IN ELECTRONIC FORMAT OR ON THE MERRILL WEBSITE, OTHER THAN THE CONTRACT WARRANTIES.

BUYER ACKNOWLEDGES THAT BUYER'S ACCESS AND INSPECTION RIGHTS HAVE BEEN LIMITED AS SET FORTH IN THIS AGREEMENT AND THAT BUYER UNDERSTANDS THE RISKS ASSOCIATED WITH PURCHASING THE ASSETS ON THE BASIS OF SUCH LIMITED INVESTIGATIONS.  BUYER REPRESENTS TO SELLER THAT

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

NOTWITHSTANDING SUCH LIMITATIONS BUYER HAS CONDUCTED SUCH INVESTIGATIONS AS BUYER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE ASSETS AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS MATERIALS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE ASSETS (INCLUDING WITHOUT LIMITATION ANY MOLD OR MOLD CONDITION), AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AFFILIATES, AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN THE CONTRACT WARRANTIES. UPON CLOSING, BUYER WILL ASSUME THE RISK THAT ADVERSE MATTERS, INCLUDING BUT NOT LIMITED TO, CONSTRUCTION DEFECTS AND ADVERSE PHYSICAL AND ENVIRONMENTAL CONDITIONS, MAY NOT HAVE BEEN REVEALED BY BUYER'S INVESTIGATIONS, AND BUYER, UPON CLOSING, WILL BE DEEMED TO HAVE WAIVED, RELINQUISHED AND RELEASED SELLER AND SELLER'S AFFILIATES (AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES AND AGENTS) FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION (INCLUDING CAUSES OF ACTION IN TORT OR UNDER ANY ENVIRONMENTAL LAW), LOSSES, DAMAGES, LIABILITIES (WHETHER BASED ON STRICT LIABILITY OR OTHERWISE), LOSSES, DAMAGES, LIABILITIES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COURT COSTS) OF ANY AND EVERY KIND OR CHARACTER, KNOWN OR UNKNOWN, WHICH BUYER MIGHT HAVE ASSERTED OR ALLEGED AGAINST SELLER AND SELLER'S AFFILIATE'S (AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES AND AGENTS) AT ANY TIME BY REASON OF OR ARISING OUT OF ANY LATENT OR PATENT CONSTRUCTION DEFECTS OR PHYSICAL CONDITIONS, VIOLATIONS OF ANY APPLICABLE LAWS (INCLUDING, WITHOUT LIMITATION, ANY ENVIRONMENTAL LAWS) AND ANY AND ALL OTHER ACTS, OMISSIONS, EVENTS, CIRCUMSTANCES OR MATTERS REGARDING THE ASSETS.

BUYER AGREES THAT SHOULD ANY INVESTIGATION, CLEANUP, REMEDIATION OR REMOVAL OF HAZARDOUS SUBSTANCES OR OTHER ENVIRONMENTAL CONDITIONS (INCLUDING WITHOUT LIMITATION ANY MOLD OR MOLD CONDITION) ON OR RELATED TO THE ASSETS BE REQUIRED AFTER THE DATE OF CLOSING, NEITHER SELLER NOR ANY AFFILIATE WILL HAVE NO LIABILITY TO BUYER TO PERFORM OR PAY FOR SUCH INVESTIGATION, CLEAN-UP, REMOVAL OR REMEDIATION, AND BUYER EXPRESSLY WAIVES AND RELEASES ANY CLAIM TO THE CONTRARY.

BUYER FURTHER ACKNOWLEDGES THAT (1) THE CONTRACT WARRANTIES AS TO ANY STORE WILL NOT SURVIVE THE CLOSING FOR SUCH STORE BUT WILL MERGE INTO THE CONVEYANCE INSTRUMENT FOR SUCH STORE, AND WILL HAVE NO FURTHER FORCE OR EFFECT AFTER THE CLOSING FOR SUCH STORE AND (2) THE

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

36

**LIABILITY OF SELLER UNDER OR WITH RESPECT TO THE CONTRACT WARRANTIES WILL BE LIMITED TO THE EXPRESS REMEDIES OF BUYER SET FORTH IN THIS AGREEMENT.**

**BUYER REPRESENTS AND WARRANTS THAT THE TERMS OF THE DISCLAIMERS, WAIVERS AND RELEASES CONTAINED HEREIN AND THEIR CONSEQUENCES HAVE BEEN COMPLETELY READ AND UNDERSTOOD BY BUYER, AND BUYER HAS HAD THE OPPORTUNITY TO CONSULT WITH, AND HAS CONSULTED WITH, LEGAL COUNSEL OF BUYER'S CHOICE WITH REGARD TO THE TERMS OF SUCH DISCLAIMERS, WAIVERS AND RELEASES.    BUYER ACKNOWLEDGES AND WARRANTS THAT BUYER'S EXECUTION OF THESE DISCLAIMERS, WAIVERS AND RELEASES IS FREE AND VOLUNTARY.**

23.3    Effect and Survival of Disclaimers.  Seller and Buyer acknowledge that the provisions of this paragraph 23.0 are an integral part of the transactions contemplated in this Agreement and a material inducement to Seller to enter into this Agreement and that Seller would not enter into this Agreement but for the provisions of this paragraph 23.0.  Seller and Buyer agree that the provisions of this paragraph 23.0 will survive Closing or any earlier termination of this Agreement.

[SIGNATURE PAGE FOLLOWS]

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

37

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Agreement as of the Effective Date.

| | |
|---|---|
| Signed, sealed and delivered<br>in the presence of the following<br>subscribing witnesses: | **SELLER:**<br><br>**WINN-DIXIE STORES, INC.,**<br>a Florida corporation |

_____     By: _____

Name: _____     Name: _____

                                    Title: _____

_____

Name: _____

| | |
|---|---|
| Signed, sealed and delivered<br>in the presence of the following<br>subscribing witnesses: | **BUYER:**<br><br>**FINE FOODS GOURMET MARKETS INC.,**<br>a Florida corporation |

_____     By: _____

Name: _____     Name: _____

                                    Title: _____

_____

Name: _____

[Note: Witnesses and other formalities of execution
to be conformed to applicable state requirements, if any.]

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

38

Acknowledged and agreed this _____ day of _____, 2006 for the limited purposes set forth in paragraph 18.0 of this Agreement:

**ESCROW AGENT:**

**SMITH, GAMBRELL & RUSSELL, LLP**

By:    _____
Name: Douglas G. Stanford
Title:  Partner

Schedule of Exhibits

| Exhibit A-1 | – | Schedule of Stores |
| Exhibit A-2 | – | Schedule of Leases; Property Descriptions |
| Exhibit B | – | Allocation Schedule |
| Exhibit C | – | Form of Bill of Sale |
| Exhibit D | – | Form of Closing Statement |
| Exhibit E | - | Form of Conveyance Instrument |
| Exhibit F | – | Confidentiality Agreement |
| Exhibit G | – | Schedule of Excluded Personal Property |
| Exhibit H | – | Schedule of Permitted Encumbrances |

Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92471.1

Store Nos.:
202
380

## LIST OF EXHIBITS

| | | |
|---|---|---|
| Exhibit A-1 | - | Schedule of Stores |
| Exhibit A-2 | - | Schedule of Leases; Property Descriptions |
| Exhibit B | - | Allocation Schedule |
| Exhibit C | - | Form of Bill of Sale |
| Exhibit D | - | Form of Closing Statement |
| Exhibit E | - | Form of Conveyance Instrument |
| Exhibit F | - | Confidentiality Agreement |
| Exhibit G | - | Schedule of Excluded Personal Property |
| Exhibit H | - | Schedule of Permitted Encumbrances |

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

EXHIBIT A-1
To Asset Purchase Agreement

<u>List of Stores</u>

| Store No. | Street Address | City | County | State |
|---|---|---|---|---|
| 202 | 13841 Wellington Trace | Wellington | Palm Beach | FL |
| 380 | 12141 Pembroke Road | Pembroke Pine | Broward | FL |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Exhibit A-1
Page 1 of 1

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

EXHIBIT A-2
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

WINN-DIXIE STORE # 202
Wellington, Florida

Lease:    Lease Agreement dated May 13, 1988 between John P. Wilkes, Trustee, as Landlord and Winn-Dixie Stores, Inc., as Tenant; and

As evidenced by Short Form Lease dated May 13, 1988, recorded in Book 5939, page 869, of the public records of Palm Beach County, Florida.

Amendments:

First Amendment to Lease dated October 25, 1989 between Landlord and Tenant; and

Addendum to Short Form Lease dated October 25, 1989 between Wellington Market Place Associates, Ltd., as successor Landlord and Tenant, recorded in Public Records Book 6258, page 585, public records of Palm Beach County, Florida.

Premises:    That certain store building and related improvements located at 13841 Wellington Trace, Wellington, Palm Beach County, Florida.

Legal Description:    The real property as more particularly described as follows:

[SEE ATTACHED LEGAL DESCRIPTION]

Sublease(s):

None

Exhibit A-2

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

EXHIBIT A-2 (Cont'd.)
TO ASSET PURCHASE AGREEMENT

LEGAL DESCRIPTION – STORE #202

SITUATE AND LYING IN THE FOLLOWING DESCRIBED SHOPPING CENTER:

Parcel 1:

Parcel One of The Wellington Marketplace Plat, recorded in Plat Book 69, Page 3 of the public records of Palm Beach County, Florida, formerly described as Tract "A", Sugar Pond Manor of Wellington, according to the plat recorded in Plat Book 30, Pages 20 through 32, inclusive.

LESS AND EXCEPT therefrom, the Plat of Parcel One of Tract "A" of Sugar Pond Manor of Wellington, according to the plat recorded in Plat Book 45, Pages 52, Public Records of Palm Beach County, Florida.

Together with easements over the following described Parcels 2 and 3:

Parcel 2:

Non-exclusive Easement Rights for ingress and egress created by and subject to the terms of that Cross Easement Agreement recorded April 30, 1991 in Official Records Book 6943, page 898 of the public records of Palm Beach County. Florida.

Parcel 3:

Non-exclusive Easement Rights for ingress, egress and parking as created by and subject to the terms of that Declaration of Cross Easements recorded May 18, 1992 in Official Records Book 7246, page 1949 of the public records of Palm Beach County, Florida.

Exhibit A-2

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

EXHIBIT A-2 (Cont'd.)
TO ASSET PURCHASE AGREEMENT

DESCRIPTION OF LEASES AND RELATED LAND

WINN-DIXIE STORE # 380
Pembroke Pines, Florida

Lease:    Lease Agreement dated April 23, 1985 between Century Plaza Associates, a
Florida general partnership, by Frank Pesce, as Trustee and Joachim W. Bohl,
as Trustee, Sole Venturers, as Landlord and Winn-Dixie Stores, Inc., as
Tenant; and

As evidenced by Short Form Lease dated April 23, 1985, recorded in Official
Records Volume 12745, page 671, public records of Broward County, Florida.

Amendments:

Letter Agreement from Tenant to Landlord dated August 2, 1985; and

Supplemental Lease Agreement dated August 25, 1987 between Landlord and
Tenant.

Premises:    That certain store building and related improvements located at 12141
Pembroke Road, Pembroke Pines, Broward County, Florida.

Legal Description:    The real property as more particularly described as follows:

[SEE ATTACHED LEGAL DESCRIPTION]

Sublease(s):

None

Exhibit A-2

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

EXHIBIT A-2 (Cont'd.)
TO ASSET PURCHASE AGREEMENT

LEGAL DESCRIPTION – STORE #380

That certain piece, parcel or tract of land situate, lying and being in the City of Pembroke Pines, County of Broward and State of Florida, more particularly described as follows:

A portion of TRACT C-2, PEMBROKE LAKES SOUTH, according to the plat thereof as recorded in Plat Book 119, at Page 1 of the Public Records of Broward County, Florida, and being more particularly described as follows:

Commence at the West 1/4 of corner Section 24, Township 51 South, Range 40 East as shown on said plat of PEMBROKE LAKES SOUTH; thence run South 88°29'22" East on Pembroke Road along the South line of the North 1/2 of said Section 24 for 200.07 feet; thence run North 0°00'41" East along a line 200.00 feet Easterly of and parallel with the West line of the Northwest 1/4 of said Section 24 for 247.08 feet to the POINT OF BEGINNING of the parcel of land hereinafter described; thence continue North 0°00'41" East along the Westerly line of said TRACT C-2 for 380.92 feet; thence run South 88°29'17" East for 382.00 feet; thence run North 1°30'43" East for 312.00 feet to a point on the Northerly line of said TRACT C-2; thence run South 88°29'17" East for 653.70 feet; thence run South 44°14'19" East for 34.89 feet; thence run South 0°00'38" West for 829.91 feet; thence run South 45°45'38" West for 42.98 feet; thence run North 88°29'22" West for 503.79 feet; thence run North 83°37'52" West for 57.88 feet (the last six mentioned courses being coincident with portions of the Northerly, Northeasterly, Easterly, Southeasterly and Southerly lines of said TRACT C-2); thence run North 1°30'38" East for 187.10 feet; thence run North 88°29'22" West for 481.00 feet to the POINT OF BEGINNING, lying and being in the City of Pembroke Pines, Broward County, Florida.

Exhibit A-2

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

EXHIBIT B
To Asset Purchase Agreement

Allocation Schedule

| Store No. | Store Location | Purchase Price | Initial Deposit [1] | Second Deposit [2] |
|---|---|---|---|---|
| 202 | Wellington, FL | $    405,000.00 | $  40,500.00 | $  81,000.00 |
| 380 | Pembroke Pines, FL | $    630,000.00 | $  63,000.00 | $126,000.00 |
| | Total: | $ 1,035,000.00 | $103,500.00 | $207,000.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

---

[1]   The Initial Deposit for each Store shall be the greater of (i) $35,000 or (ii) 10% of the Purchase Price for such Store.

[2]   The Second Deposit for each Store shall be the greater of (i) $65,000, or (ii) 20% of the Purchase Price for such Store.

Exhibit B
Page 1 of 1

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

EXHIBIT C
To Asset Purchase Agreement

<u>Form of Bill of Sale</u>

**BILL OF SALE**

**WINN-DIXIE STORES, INC.,** a Florida corporation ("Seller"), in consideration of the mutual covenants set forth in that certain Asset Purchase Agreement dated effective August 29, 2006, among **FINE FOODS GOURMET MARKETS INC.,** a Florida corporation ("Buyer") and Seller (the "Agreement"), does hereby grant, bargain, transfer, sell, assign and convey unto Buyer all of Seller's right, title and interest in the Assets described in the Agreement (other than the Leases and any sublease(s) or permit(s), which are subject to separate instruments of conveyance and assignment), relating to Seller's store locations as more particularly described on attached <u>Schedule A</u>.

This Bill of Sale is delivered by Seller to Buyer as required under the Agreement, and is made subject to the terms and conditions of the Agreement. All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Agreement.

This conveyance is made pursuant to the order of the Bankruptcy Court in *In re Winn-Dixie Stores, Inc., et al.,* Case No. 05-11063 (RDD)(Jointly Administered), United States Bankruptcy Court, Middle District of Florida, Jacksonville Division.

**IN WITNESS WHEREOF,** Seller has caused this Bill of Sale to be executed by the undersigned as of this _____ day of _____, 2006.

"SELLER"

**WINN-DIXIE STORES, INC.,**
a Florida corporation

By: _____
Name: _____
Title: _____

Exhibit C
Page 1 of 1

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

EXHIBIT D
To Asset Purchase Agreement

Form of Closing Statement

(Excel Spreadsheet Schedule D.XLS)

[ATTACHED BELOW]

Exhibit D
Page 1 of 1

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets, Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92469.1

**Exhibit D  – Form of Closing Statement**

## CLOSING STATEMENT

**SELLER/ASSIGNOR:**      Winn-Dixie _____, Inc., a Florida corporation
**BUYER/ASSIGNEE:**
**TRANSACTION:**      Acquisition of Leasehold Interests and Related Assets
**PURCHASE PRICE:**

|  | Store #_____ | $ | - |
|---|---|---|---|
|  | Store #_____ | $ | - |

**TOTAL PURCHASE PRICE:**      $      -
**CLOSING DATE:** _____, 2006

## SELLER'S STATEMENT

| | | | |
|---|---|---|---|
| **Purchase Price:** | | $ | - |
| **Total Purchase Price:** | | $ | - |
| **Less Adjustments:** | | | |
| 1.  Seller's Prorated Share of Taxes and Other Charges Payable Under Leases (1) | $ - | | |
| **Total Adjustments:** | $ - | $ | - |
| | | | |
| **Plus Adjustments:** | | | |
| 1.  Seller's Prorated Share of _____ 2006 Rents, and Other Charges Paid in Advance Under Leases (2) | $ - | | |
| **Total Adjustments:** | $ - | $ | - |
| **Less Closing Costs to be Paid by Seller:** | | | |
| 1.  Seller's Attorneys' Fees & Costs (Smith, Gambrell & Russell, LLP) | P.O.C. | | |
| 2.  Seller's Brokers Fees (The Food Partners) | P.O.C. | | |
| 3.  Seller's Brokers Fees (DJM Asset Management, LLC) | P.O.C. | | |
| **Total Seller's Closing Costs:** | P.O.C. | | P.O.C. |
| **TOTAL AMOUNT DUE TO SELLER:** | | $ | - |

### BUYER'S STATEMENT

| | | | | |
|---|---|---|---|---|
| **Purchase Price:** | | | $ | - |
| **Total Purchase Price:** | | | $ | - |
| **Less Adjustments:** | | | | |
| 1. Earnest Money Deposit with Escrow Agent | $ | - | | |
| 2. Seller's Prorated Share of Taxes and Other Charges Payable Under Leases (1) | $ | - | | |
| **Total Adjustments:** | $ | - | $ | - |
| | | | | |
| **Plus Adjustments:** | | | | |
| 1. Seller's Prorated Share of _____ 2006 Rents, and Other Charges Paid in Advance Under Leases (3) | $ | - | | |
| **Total Adjustments:** | $ | - | $ | - |
| | | | | |
| **Plus Closing Costs to be Paid by Buyer:** | | | | |
| 1. Buyer's Attorney's Fees & Costs | | P.O.C. | | |
| 2. Title Examination/Commitment Fees (3) (First American Title Insurance Company) | $ | - | | |
| 3. Title Insurance Premiums (Leasehold) (3) (First American Title Insurance Company) | $ | - | | |
| 4. Recording/Filing Fees (First American Title Insurance Company) | $ | - | | |
| 6. Surveyor's Fees (4) (_____) | $ | - | | |
| 7. Environmental Site Assessment Fees (_____) | $ | - | | |
| 8. Documentary/Transfer Taxes (First American Title Insurance Company) | $ | - | | |
| **Total Buyer's Closing Costs:** | $ | - | $ | - |
| **AMOUNT DUE FROM BUYER:** | | | $ | - |
| **DEPOSIT DUE FROM ESCROW AGENT:** | | | $ | - |
| **TOTAL AMOUNT DUE AT CLOSING:** | | | $ | - |

Closing Statement
Winn-Dixie Stores, Inc. S/T_____

The undersigned parties acknowledge and agree to the foregoing Closing Statement as of this _____ day of _____, 2006, and hereby authorize Smith, Gambrell & Russell, LLP, as closing agent, to disburse the sums set forth herein in accordance herewith.

**SELLER/ASSIGNOR:**                          **BUYER/ASSIGNEE:**

**WINN-DIXIE** _____**, INC.**, a Florida          _____

corporation                                  a _____ corporation

By:_____          By:_____

Name:_____          Name:_____

Title: _____ President              Title: _____ President

**Notes:**

(1) <u>2006 Prorations - Amounts Not Yet Paid and Payable</u>. Prorations are based on (i) estimate of 2006 real estate taxes derived from actual 2005 amounts paid by Seller in arrears in accordance with leases; and (ii) estimate of 2006 common area maintenance charges derived from actual 2005 amounts paid by Seller in arrears in accordance with applicable leases. <u>All prorated amounts are hereby stipulated as final, and shall not be subject to readjustment after closing, notwithstanding that actual amounts when available may differ from the stipulated amounts herein.</u> Buyer shall be responsible for the payment of such charges for 2006 and accruing from and after the closing date and subsequent years. Prorations are as follows:

**Real Estate Taxes**

| Store # _____ | | | | | Totals |
|---|---|---|---|---|---|
| - 2006 Real Estate Taxes (estimate) | $ | - | | | |
| - Per Diem Tax Amount | $ | - | | | |
| - Seller's Share of 2006 Taxes | | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - | |
| Store # _____ | | | | | |
| - 2006 Real Estate Taxes (estimate) | $ | - | | | |
| - Per Diem Tax Amount | $ | - | | | |
| - Seller's Share of 2006 Taxes | | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - | |
| **Total Real Estate Taxes:** | | | $ | - | |

**Personal Property Taxes**

| Store # _____ | | | | | |
|---|---|---|---|---|---|
| - 2006 Personal Property Taxes (estimate) | $ | - | | | |
| - Per Diem Tax Amount | $ | - | | | |
| - Seller's Share of 2006 Taxes | | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - | |
| Store # _____ | | | | | |
| - 2006 Personal Property Taxes (estimate) | $ | - | | | |
| - Per Diem Tax Amount | $ | - | | | |
| - Seller's Share of 2006 Taxes | | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - | |
| **Total Personal Property Taxes:** | | | $ | - | |

**CAM Charges**

| Store # _____ | | | | | |
|---|---|---|---|---|---|
| - 2006 CAM Charges | $ | - | | | |
| - Per Diem Amount | $ | - | | | |
| - Seller's Share of 2006 CAM Charges | | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - | |
| Store # _____ | | | | | |
| - 2006 CAM Charges | $ | - | | | |
| - Per Diem Amount | $ | - | | | |
| - Seller's Share of 2006 CAM Charges | | | | | |
| (__/__/06 - __/__/06) (_____ days) | $ | - | $ | - | |
| **Total CAM Charges:** | | | $ | - | |
| **Total Amount of Seller's Prorated Share of 2006 Prorations:** | | | $ | - | |

Closing Statement
Winn-Dixie Stores, Inc. S/T_____

(2) <u>2006 Prorations - Amounts Previously Paid by Seller</u>.  Prorations are based on _____, 2006 rents, insurance and other charges previously paid by Seller in accordance with applicable leases.  Buyer shall be responsible for the payment of such charges that become due and payable for _____, 2006 and thereafter.  Prorations are as follows:

**Rent**

Store # _____

|  |  | | Totals | |
|---|---|---|---|---|
| - Total _____, 2006 rent paid: | $ | - | | |
| - Per diem rent: | $ | - | | |
| - Buyer's prorated share (__/__/06 - __/__/06) (_____ days) | $ _____ | - | $ | - |

Store # _____

|  |  | | | |
|---|---|---|---|---|
| - Total _____, 2006 rent paid: | $ | - | | |
| - Per diem rent: | $ | - | | |
| - Buyer's prorated share (__/__/06 - __/__/06) (_____ days) | $ _____ | - | $ | - |
| **Total Amount of Buyer's Prorated Share of Prorations:** | | | **$** | **-** |

(3) <u>Title Premiums and Expenses</u>.  Title insurance fees and costs, including title examination fees and title insurance premiums, are as follows:

Store # _____

|  |  | | Totals | |
|---|---|---|---|---|
| - Title Search Fees and Costs | $ | - | | |
| - Title Premium | $ _____ | - | $ | - |

Store # _____

|  |  | | | |
|---|---|---|---|---|
| - Title Search Fees and Costs | $ | - | | |
| - Title Premium | $ _____ | - | $ | - |
| **Total Amount of Title Fees and Expenses:** | | | **$** | **-** |

(4) <u>Survey Fees</u>.  Survey fees are as follows:

|  |  | | | |
|---|---|---|---|---|
| Store #_____ | $ | - | | |
| Store #_____ | $ _____ | - | | |
| **Total Survey Fees:** | | | **$** | **-** |

(5) <u>Utility Deposits and Charges</u>.  All utility deposits will be returned to Seller directly by the respective utility companies.  Seller will be responsible for payment of any portion of any utility charges attributable to utility service (including telephone service) provided through and including the date hereof.  Buyer will be responsible for payment of any new utility deposits which may be assessed by the respective utility companies and for payment of any portion of such utility charges attributable to utility service provided subsequent to the date hereof.  The party responsible for each share of such utility charges shall pay such charges promptly and without demand therefor.  Each party agrees to indemnify and hold harmless the other party from and against liability for payment of the first party's share of such utility charges.

(6) <u>Capitalized Terms</u>.  Capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement.

## DISBURSEMENT SCHEDULE

RECEIPTS:

| | | |
|---|---|---|
| 1. Deposit Due from Escrow Agent | $ - | |
| 2. Cash Due from Buyer | $ - | |
| TOTAL CASH RECEIVED: | $ - | $ - |

DISBURSEMENTS:

| | | |
|---|---|---|
| 1. _____ | | $ - |
| (Survey Fees) | | |
| 2. _____ | | $ - |
| (Environmental Site Assessment Fees) | | |
| 3. First American Title Insurance Company | | $ - |
| (Title Premium & Costs, Taxes and Recdg.) | | |
| 4. Winn-Dixie Stores, Inc. | | $ - |
| (Seller's Proceeds) | | |
| TOTAL DISBURSEMENTS: | | $ - |

Closing Statement
Winn-Dixie Stores, Inc. S/T_____
9/8/2006

EXHIBIT E
To Asset Purchase Agreement

Form of Conveyance Instrument

**ASSIGNMENT AND ASSUMPTION OF LEASE**
[Winn-Dixie Stores #202 & #380]

**THIS ASSIGNMENT AND ASSUMPTION OF LEASE** (this "Assignment") is made as of August 29, 2006 (the "Effective Date"), by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Assignor"), and **FINE FOODS GOURMET MARKETS INC.**, a Florida corporation ("Assignee");

**R E C I T A L S :**

A.    Assignor, as Seller, and Assignee, as Buyer, are parties to that certain Asset Purchase Agreement dated effective August 29, 2006, as amended from time to time (the "Agreement"), pursuant to which Assignor has agreed to sell and assign, and Assignee has agreed to purchase and assume, certain assets in connection with Assignor's retail supermarket store location described on attached Schedule A (the "Premises").

B.    Under the Agreement, Assignor has agreed to assign to Assignee (i) all of Assignor's right, title and interest, as tenant or lessee, in and to the Premises pursuant to that certain Lease, together with any and all amendments thereto, as described on the attached Schedule A (the "Lease"), and all of Assignor's right, title and interest, as sublandlord or sublessor, in and to the subleases, together with all amendments thereto, described on Schedule A, (the "Subleases"), if any; and Assignee has agreed to assume and perform Assignor's liabilities and obligations arising under the Lease and the Subleases from and after the Effective Date, all subject to and in accordance with the terms of the Lease, the Subleases, the Agreement and this Assignment;

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    **EFFECTIVE DATE**. This Assignment shall be effective as of the Effective Date.

2.    **ASSIGNMENT**.

(a)    Assignor hereby assigns, transfers, and conveys unto Assignee all of Assignor's right, title, interest and obligation as tenant or lessee in and to the Lease and all of the rights, benefits and privileges of the tenant or lessee thereunder.

(b)    Assignor hereby assigns, transfers and conveys unto Assignee all of Assignor's right, title, interest and obligation as landlord or lessor in and to

EXHIBIT E
Page 1 of 8

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

the Subleases and all the rights, benefits and privileges of the landlord or lessor thereunder.

3.    **ASSUMPTION; ACCEPTANCE OF PREMISES**.

(a)    Assignee hereby accepts the aforesaid assignment of the Lease and assumes and agrees to pay and perform all liabilities and obligations of the tenant or lessee that accrue under the Lease from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the tenant or lessee that accrue under the Lease on or after the Effective Date.

(b)    Assignee hereby accepts the aforesaid assignment of the Subleases and assumes and agrees to pay and perform all liabilities and obligations of the landlord or lessor that accrue under the Subleases from and after the Effective Date, and Assignee hereby indemnifies, and agrees to save, insure, defend and hold harmless Assignor from and against all liabilities and obligations of the landlord or lessor that accrue under the Subleases from and on or after the Effective Date.

(c)    Assignee acknowledges that it has had opportunity to make such environmental, physical, zoning, topographical, land use, survey, title and other examinations, inspections and investigations of the Premises as Assignee has determined, in its sole discretion, to be necessary and appropriate. Assignee acknowledges that the Premises is being assigned to Assignee in its "AS-IS" condition, and that possession and use of the Premises is subject to the terms of the Lease and to applicable legal requirements, title matters and rules and regulations. Taking the foregoing into consideration, Assignee has determined that the Premises is satisfactory to Assignee in all respects, and has agreed to accept the Premises in accordance with the terms and conditions of this Assignment. In making such determination, Assignee has and will rely solely on Assignee's own independent examinations, inspections and investigations of the Premises and has not relied and will not rely on any representations of Assignor. Assignee acknowledges and agrees that neither Assignor nor any of Assignor's agents, representatives or employees have made any representations to Assignee with regard to the Premises or the improvements located thereon, including, but not limited to, representations concerning the condition of the Premises or their fitness for Assignee's intended use, except as otherwise set forth in this Assignment.

4.    **NOTICES**.    All notices, requests, demands, offers and other communications required or permitted to be given pursuant to this Agreement will conform to the requirements of this paragraph 4 and will be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by facsimile transmission, when the facsimile is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next Business Day after confirmation is received by the transmitting party if not during normal business

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

hours for the recipient; (iii) if delivered by United States Mail, 3 days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (iv) if given by nationally recognized or reputable overnight delivery service, on the next Business Day after receipted deposit with same, addressed to Seller or Buyer at their respective addresses stated below:

If to Assignor:

Winn-Dixie Stores, Inc.; Re: Store #202, #380
5050 Edgewood Court
Jacksonville, FL 32254-3699
Attn: Chief Financial Officer
Telefax No.: 904/783-5646

With a copy to:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254-3699
Attn: Office of General Counsel
Telefax No.: 904/783-5641

If to Assignee:

Fine Foods Gourmet Markets Inc.
c/o Richard A. Bonilla
2251 Christine Drive
Kissimmee, Florida 34744
Telefax No.: 718-228-7331
e-mail: *rabonilla@gmail.com*

With a copy to:

Maximo Figueredo, Esquire
37-31 76th Street
Jackson Heights, New York 11372
Telefax No.: 718-335-4198
e-mail: *mfigui@aol.com*

or such other address as any party may from time to time specify by notice to the other.

5.    **NOTICE OF ASSIGNMENT**.  Promptly following the Effective Date, Assignor and Assignee shall execute and deliver a Notice of Assignment of Lease and record the same in the recording office of the county in which the Premises is located, for the purpose of placing third parties on notice of Assignor's assignment to Assignee of Assignor's right, title and interest as tenant or lessee in and to the Lease, and of the

EXHIBIT E
Page 3 of 8

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

existence of certain limitations on Assignee's rights under the Lease as set forth in this Assignment.

6. **BINDING EFFECT.** This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns.

7. **FURTHER ASSURANCES.** Assignor and Assignee each covenant and agree to execute or procure any additional documents as may be reasonably necessary to establish the rights of the other hereunder, provided however that under no circumstances shall Assignor be required to undertake any liability not expressly provided in this Agreement.

8. **ATTORNEYS' FEES.** If Assignor becomes a party to any suit or proceeding affecting the Premises or involving this Assignment or Assignee's interest under this Assignment, other than a suit between Assignor and Assignee, or if Assignor engages counsel to collect any of the amounts owed under this Assignment, or to enforce performance of any of the agreements, conditions, covenants, provisions, or stipulations of this Assignment, without commencing litigation, then Assignor's costs, expenses, and reasonable attorneys' fees and disbursements incurred with respect thereto will be paid to Assignor by Assignee, on demand. All references in this Assignment to attorneys' fees will be deemed to include all legal assistants' and paralegals' fees and will include all fees incurred through all post-judgment and appellate levels and in connection with bankruptcy proceedings.

9. **WAIVER OF JURY TRIAL.** Assignor and Assignee each acknowledge and agree that the nature of this Assignment, the Premises, the Lease and the Subleases makes a jury determination of any dispute arising out of this Assignment, the Premises, the Lease or the Subleases undesirable. Accordingly, Assignor and Assignee each knowingly, voluntarily and intentionally waive any right to a trial by jury that any of them may have in any court with respect to any action relating to this Assignment, the Premises, the Lease or the Subleases.

[SIGNATURES APPEAR ON FOLLOWING PAGES]

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the Effective Date.

Signed, sealed, and delivered
in the presence of:

**ASSIGNOR:**

**WINN-DIXIE STORES, INC.**,
a Florida corporation

_____
Name:_____

By: _____
Name: _____
Title: _____

_____
Name:_____

[CORPORATE SEAL]

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me under oath on this _____ day of _____, 2006 by _____, the _____ of Winn-Dixie Stores, Inc., a Florida corporation, on behalf of the corporation, who is personally known to me.

_____
Notary Public, State of Florida
Seal:

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

Signed, sealed and delivered
in the presence of:

**ASSIGNEE:**

**FINE FOODS GOURMET MARKETS INC.,**
a Florida corporation

Name:_____

By:_____
Name:_____
Title:_____

Name:_____

[SEAL]

STATE OF _____
COUNTY OF _____

The foregoing instrument was acknowledged before me under oath on this _____ day of _____, 2006 by _____, the _____ of Fine Foods Gourmet Markets Inc., a Florida corporation, on behalf of the corporation, who is [____] personally known to me or [_____] has produced _____ as identification.

_____
Notary Public, State of _____
Seal:

EXHIBIT E
Page 6 of 8

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

Schedule A
To Assignment and Assumption of Leases

Description of Premises and Lease

WINN-DIXIE STORE # 202
Wellington, Florida

Lease:          Lease Agreement dated May 13, 1988 between John P. Wilkes, Trustee, as
                Landlord and Winn-Dixie Stores, Inc., as Tenant; and

                As evidenced by Short Form Lease dated May 13, 1988, recorded in Book
                5939, page 869, of the public records of Palm Beach County, Florida.

Amendments:

                First Amendment to Lease dated October 25, 1989 between Landlord and
                Tenant; and

                Addendum to Short Form Lease dated October 25, 1989 between Wellington
                Market Place Associates, Ltd., as successor Landlord and Tenant, recorded in
                Public Records Book 6258, page 585, public records of Palm Beach County,
                Florida.

Premises:       That certain store building and related improvements located at 13841
                Wellington Trace, Wellington, Palm Beach County, Florida.

EXHIBIT E
Page 7 of 8

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

Schedule A (Cont'd.)
To Assignment and Assumption of Leases

Description of Premises and Lease

WINN-DIXIE STORE # 380
Pembroke Pines, Florida

Lease:       Lease Agreement dated April 23, 1985 between Century Plaza Associates, a Florida general partnership, by Frank Pesce, as Trustee and Joachim W. Bohl, as Trustee, Sole Venturers, as Landlord and Winn-Dixie Stores, Inc., as Tenant; and

As evidenced by Short Form Lease dated April 23, 1985, recorded in Official Records Volume 12745, page 671, public records of Broward County, Florida.

Amendments:

Letter Agreement from Tenant to Landlord dated August 2, 1985; and

Supplemental Lease Agreement dated August 25, 1987 between Landlord and Tenant.

Premises:  That certain store building and related improvements located at 12141 Pembroke Road, Pembroke Pines, Broward County, Florida.

EXHIBIT E
Page 8 of 8

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

EXHIBIT F
To Asset Purchase Agreement

Confidentiality Agreement

[ATTACHED BELOW]

EXHIBIT F
Page 1 of 1

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets, Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92469.1



March 3, 2006

Associated Supermarkets (the "<u>Prospective Purchaser</u>")
89-11 Northern Boulevard
Jackson Heights, NY 11372

Attention: Richard Bonilla

RE:     Winn-Dixie Stores, Inc./Project Panther 06 - Possible Transaction with Prospective Purchaser –
        Confidentiality Letter Agreement

Ladies and Gentlemen:

This letter sets forth specific terms with respect to information provided to the Prospective Purchaser, or
to be provided to the Prospective Purchaser, by Winn-Dixie Stores, Inc. or one or more of its direct or
indirect wholly-owned subsidiaries (collectively, the "<u>Company</u>"). The Prospective Purchaser is
considering a possible acquisition of certain assets of the Company as described on the internet website
maintained by Merrill Corporation (the "<u>Merrill Web Site</u>") on behalf of the Company under the name
"Project Panther 06" (the "<u>Assets</u>"), by a sale of assets or otherwise (a "<u>Transaction</u>"). The Prospective
Purchaser has requested certain information concerning the Company and the Assets.

As a condition to the Company furnishing the Prospective Purchaser with such information, including
any Confidential Information Memorandum prepared by the Company, the Prospective Purchaser
agrees, in its entity capacity, and on behalf of its officers, directors, shareholders, partners, members,
managers and employees (collectively, the "<u>Purchaser Parties</u>") to consider and treat all Evaluation
Material as strictly confidential, in accordance with the provisions of this letter. The term "<u>Evaluation
Material</u>" shall mean:

(a)     any information concerning the Assets or the Company that is furnished to the Prospective
        Purchaser by or on behalf of the Company, whether furnished before or after the date of this
        letter and whether furnished on the Merrill Web Site, or otherwise in writing, orally,
        electronically, or by other means; and

(b)     any analyses, compilations, studies or other documents prepared by the Purchaser Parties or any
        of the Prospective Purchaser's contractors, agents or advisers (including, without limitation,
        attorneys, accountants, consultants, bankers, financial advisers and any representatives of your
        advisers) (collectively, the "<u>Representatives</u>") that contain or otherwise reflect such information;

(c)     <u>but excluding</u>, information that (a) was or becomes generally available to the public other than as
        a result of a disclosure by the Purchaser Parties or the Representatives or (b) was or becomes
        available to the Prospective Purchaser on a non-confidential basis from a source other than the
        Company or its advisers, provided that such source was not known by the Prospective Purchaser
        to be bound by any letter with the Company to keep such information confidential or to
        otherwise be prohibited from transmitting the information to the Prospective Purchaser by a
        contractual, legal or fiduciary obligation.

Associated Supermarkets
Confidentiality Letter Agreement
March 3, 2006
Page 2

The Prospective Purchaser hereby agrees that the Evaluation Material shall be used solely for the purpose of evaluating a possible Transaction between the Company and the Prospective Purchaser, and that such information shall be kept confidential by the Purchaser Parties and the Representatives, except to the extent that disclosure of such information (a) has been consented to in writing by the Company, (b) is required by law, regulation, supervisory authority or other applicable judicial or governmental order or (c) is made to the Representatives who need to know such information for the purpose of evaluating any such possible Transaction between the Company and the Prospective Purchaser (it being understood that the Representatives shall have been advised of this letter and shall have agreed to be bound by the provisions hereof). In any event, the Prospective Purchaser shall be responsible for any breach of this letter by any of the Purchaser Parties or the Representatives and the Prospective Purchaser agrees, at the Prospective Purchaser's sole expense, to take all reasonable measures (including but not limited to court proceedings) to restrain the Purchaser Parties and the Representatives from prohibited or unauthorized disclosure or use of the Evaluation Material.

In addition, without the prior written consent of the Company, the Prospective Purchaser shall not disclose, and shall direct the Purchaser Parties and the Representatives not to disclose, to any person:

(a)     that the Evaluation Material has been made available to the Purchaser Parties or the Representatives;

(b)     that discussions or negotiations are taking place concerning a possible Transaction between the Company and the Prospective Purchaser, or

(c)     any terms, conditions or other facts with respect to any such possible Transaction, including the status thereof or any announcement of the existence of a Transaction.

In the event that any of the Purchaser Parties or the Representatives are requested or required by law, regulation, supervisory authority or other applicable judicial or governmental order to disclose any Evaluation Material, the Prospective Purchaser shall provide the Company with prompt written notice of such request or requirement so that the Company may seek an appropriate protective order. If, failing the entry of a protective order, the Purchaser Parties or the Representatives are, in the written opinion of the Prospective Purchaser's counsel, compelled to disclose Evaluation Material, then the Prospective Purchaser may disclose that portion of the Evaluation Material that the Prospective Purchaser's legal counsel advises that the Purchaser Parties or the Representatives are compelled to disclose; provided, however, that in making such disclosure, the Prospective Purchaser shall exercise reasonable efforts to obtain assurance that confidential treatment shall be accorded to that portion of the Evaluation Material that is being disclosed. In any event, the Prospective Purchaser shall not oppose action by the Company to obtain an appropriate protective order or other reliable assurance that confidential treatment shall be accorded the Evaluation Material.

If any Purchaser Party or Representative is contacted, whether orally or in writing, by the United States Department of Justice or the Federal Trade Commission, or any similar state governmental authority, with respect to a Transaction that is the subject matter of this letter, then such party shall promptly notify the Company of such contact and describe the facts and circumstances thereof.

The Prospective Purchaser agrees that neither the Purchaser Parties nor any Representatives shall initiate or maintain contact with any third party in interest in the Assets or real and personal property related thereto, including any landlord, lender, subtenant, contractor or licensee, or (except for those contacts made in the ordinary course of business) with any officer, director or employee of the Company

Associated Supermarkets
Confidentiality Letter Agreement
March 3, 2006
Page 3

regarding the business, operation, prospects or finances of the Company or the Assets, except with the express permission of the Company or its legal counsel.

For one (1) year from the date hereof, the Purchaser Parties shall not directly or indirectly solicit for employment or employ any employee of the Company to whom the Purchaser Parties or the Representatives had been directly or indirectly introduced or otherwise became aware of as a result of the Prospective Purchaser's consideration of a Transaction, as long as such employees continue to be employed by the Company. Notwithstanding the foregoing, nothing herein shall restrict or preclude the Prospective Purchaser's ability to make generalized searches for employees by use of advertisements in any medium or to hire any individual responding to such advertisements.

The Prospective Purchaser hereby acknowledges that the Prospective Purchaser is aware and that the Prospective Purchaser shall advise the Purchaser Parties and the Representatives that federal and state securities laws prohibit any person who has material, non-public information about a company from purchasing or selling securities of such a company or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

All Evaluation Material disclosed by the Company shall be and shall remain the property of the Company. Within five (5) business days after being so requested by the Company, the Purchaser Parties and the Representatives shall return all tangible Evaluation Material furnished to the Prospective Purchaser by the Company. Except to the extent a party is advised in writing by counsel that such destruction is prohibited by law, following the Company's request, the Purchaser Parties and the Representatives shall destroy all other Evaluation Material, including written material, memoranda, notes, copies, excerpts and other writings or recordings whatsoever prepared by the Purchaser Parties or the Representatives. Any destruction of materials shall be confirmed by the Prospective Purchaser in writing to the Company, including an itemization of the specific materials destroyed, the medium in which such materials were recorded, and the method of such destruction. Any Evaluation Material that is not returned or destroyed, including without limitation any oral Evaluation Material, shall remain subject to the confidentiality obligations set forth in this letter.

You understand and acknowledge that any and all information contained in the Evaluation Material is being provided without any representation or warranty, express or implied, as to the accuracy or completeness of the Evaluation Material, on the part of the Company. You agree that none of the Company or any of its directors, officers, stockholders, owners, affiliates, agents, or representatives shall have any liability to you or any of your Representatives. It is understood that the scope of any representations and warranties to be given by the Company shall be negotiated along with other terms and conditions in arriving at a mutually acceptable form of definitive agreement should discussions between you and the Company progress to such a point.

The Prospective Purchaser agrees that unless and until a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser has been executed, neither the Company nor the Prospective Purchaser shall be under any legal obligation of any kind whatsoever with respect to such a Transaction by virtue of this letter except for the matters specifically agreed to herein. The Prospective Purchaser further acknowledges and agrees that the Company reserves the right, in its sole discretion, to reject any and all proposals made by the Purchaser Parties or the Representatives with regard to a Transaction between the Company and the Prospective Purchaser, and to terminate discussions and negotiations with the Prospective Purchaser at any time prior to entry into a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser.

Associated Supermarkets
Confidentiality Letter Agreement
March 3, 2006
Page 4

The Prospective Purchaser acknowledges and agrees that, at any time prior to entry into a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser:

(a)   the Company shall be free to conduct any process with respect to a possible Transaction as the Company in its sole discretion shall determine (including, without limitation, by negotiating with any prospective party and entering into a definitive written agreement without prior notice to the Prospective Purchaser or any other person, and by making the Merrill Web Site and other Evaluation Materials available for review by others);

(b)   any procedures relating to such Transaction may be changed at any time without notice to the Prospective Purchaser or any other person; and

(c)   the Prospective Purchaser shall not have any claim whatsoever against the Company or any of its directors, officers, stockholders, owners, affiliates, agents or representatives, arising out of or relating to any possible or actual Transaction (other than those pursuant to this letter or as against parties to a definitive written agreement between the Company and the Prospective Purchaser in accordance with the terms thereof).

If the Company and the Prospective Purchaser enter into a definitive agreement regarding a Transaction between the Company and the Prospective Purchaser, then the terms of this letter nonetheless shall be deemed continuing, and shall be incorporated into such definitive agreement by reference; provided, however, that to the extent the terms of this letter and the terms of the definitive agreement are in conflict or are inconsistent, the terms of the definitive agreement shall be controlling.

It is understood and agreed that money damages would not be a sufficient remedy for any breach of this letter and that, in the event of a breach of this letter by any of the Purchaser Parties or the Representatives, the Company shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach. The Prospective Purchaser further agrees to waive any requirement for the security or posting of any bond in connection with any such remedy available to the Company. Such remedy shall not be deemed to be the exclusive remedy for breach of this letter but shall be in addition to all other remedies available at law or equity to the Company.

In the event of litigation relating to this letter, if a court of competent jurisdiction determines in a final, non-appealable order that any Purchaser Party or Representative has breached this letter, then the Prospective Purchaser shall be jointly and severally liable with such breaching party and shall pay to the Company the reasonable legal fees and actual costs that the Company incurred in connection with such litigation, including any appeal therefrom.

All notices, requests, demands, offers and other communications required or permitted to be given pursuant to this letter shall conform to the requirements below and shall be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered; (ii) if given by facsimile transmission, when the facsimile is transmitted to the recipient's telefax number or by attachment to an e-mail transmission to the recipient's e-mail address and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iii) if given by e-mail transmission when confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the next business day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (iv) if delivered by United States Mail, three days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (v) if given by nationally recognized or reputable overnight delivery service, on the next business day after receipted deposit with same, addressed to the Company

Associated Supermarkets
Confidentiality Letter Agreement
March 3, 2006
Page 5

or the Prospective Purchaser at their respective address is stated below:

If to the Company:

Winn-Dixie Stores, Inc.
c/o The Food Partners, LLC
1250 Bye Street, NW, Suite 850
Washington, DC 20005
Attention: Matthew Morris, Principal
Telefax No. 202 589 0433
e-mail: msmorris@thefoodpartners.com

With a copy to:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254-3619
Attn: Office of General Counsel
Telefax No. 904 783 5651
e-mail: larryappel@winn-dixie.com

If to the Prospective Purchaser:

507 W. 173rd St
Suite 1
New York NY 10032
Telefax No. (718) 228-7331
e-mail: rabonilla@gmail.com

With a copy to:

Telefax No. _____
e-mail: _____

or such other address as any party may from time to time specify by notice to the other.

This letter is for the benefit of the Company and is governed by the laws of the State of Florida without regard to conflict of laws principles. Any action brought in connection with this letter shall be brought in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, and the parties hereto hereby irrevocably consent to the jurisdiction of such court.

This letter may not be amended except in writing signed by both parties hereto. No failure or delay by the Company in exercising any right hereunder or any partial exercise thereof shall operate as a waiver thereof or preclude any other or further exercise of any right hereunder. The invalidity or unenforceability of any provision of this letter shall not affect the validity or enforceability of any other provisions of this letter, which shall remain in full force and effect.

Associated Supermarkets
Confidentiality Letter Agreement
March 3, 2006
Page 6

This letter may be executed in counterparts (including by means of telecopied signature pages). Please confirm that the foregoing is in accordance with your understanding of our letter by signing and returning a copy of this letter to The Food Partners, LLC. Your correspondence with The Food Partners, LLC, should be directed as follows:

> Winn-Dixie Stores, Inc. – Project Panther 06
> c/o The Food Partners, LLC
> 1250 Eye Street, NW, Suite 850
> Washington, DC 20005
> Attention: Matthew Morris, Principal
> Telefax No. 202 589 0433
> e-mail: msmorris@thefoodpartners.com

Upon your delivery of an acknowledged copy of this letter as provided above, this letter shall constitute the valid and binding agreement of the Company and the Prospective Purchaser, and referred to as the "Confidentiality Letter Agreement."

Sincerely,

THE COMPANY:

WINN-DIXIE STORES, INC.

By: _____
Name: Larry B. Appel
Title: Senior Vice President and General Counsel

                                    ACKNOWLEDGED AND AGREED as of the date first
                                    set forth above

                                    THE PROSPECTIVE PURCHASER:

                                    Richard Bonilla
                                    [Prospective Purchaser Name]
                                    a Associated Smkts.  (Fine Foods & Gourmet Markets
                                    [state of formation, business entity type]          Inc.

                                    By: _____
                                    Name: Richard A. Bonilla
                                    Title  Pres.

EXHIBIT G
to Asset Purchase Agreement

Schedule of Excluded Personal Property

(a)   Inventory;

(b)   packaging materials, and supplies not included in the term "Supplies";

(c)   store shelf tags and pricing cards;

(d)   leased or owned point-of-sale equipment, photo lab equipment and security equipment;

(e)   other leased equipment (including all other leased equipment described on attached Schedule G-1 to this Agreement with respect to each Store – See Excel Spreadsheet Schedule G-1.XLS);

(f)   sound intercom and music service equipment and contracts;

(g)   owned computers and routers, including Cisco 2651 routers, IBM 4029 (Pharmacy) servers, ACM BOSS (back office system servers), and 64k Frame circuits;

(h)   computer equipment that contains software subject to a license that restricts its transfer or imbedded data files that in either case is/are not easily and effectively deleted or removed;

(i)   equipment and other personal property that is neither owned nor leased by Seller, including by way of example but not as a limitation, third-party owned or supplied equipment such as payphones, vending machines, kiosks, blood pressure machines, sanitation chemical mixing equipment, copiers, Western Union equipment, money order equipment, coin rolling, sorting or counting equipment, ATM's, rug cleaners and equipment owned by product vendors;

(j)   shopping carts;

(k)   over-the-road motor vehicles;

(l)   computer software subject to a license that restricts its transfer or that resides on equipment comprising Excluded Personal Property;

(m)   data files, including pharmacy prescription records and files;

(n)   lottery equipment and tickets;

(o)   accounts receivable, bank accounts, cash and cash equivalents;

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

(p)     trademarks, trade names, private labels, logos and designs of Seller, Winn-Dixie or their Affiliates;

(q)     building signs and panels in all pole and pylon signs that advertise Seller's business in the Stores;

(r)     intellectual property and rights relating to any of the foregoing;

(s)     service agreements;

(t)     leases of personal property; and

(u)     contracts and warranties relating to Seller's possession and operation of the Stores.

NOTES:

1.      Any equipment transferred from a Store to another Seller location must be accounted for using the proper equipment transfer forms. Seller's "Store Maintenance" department will undertake this task for Seller. No equipment is to be removed from the Store unless it has been determined to constitute "Excluded Personal Property" and has been approved and the proper equipment transfer forms have been completed by Store Maintenance.

2.      For any and all computers to remain in a Store, the following procedures will be performed:

        (a)     All computers left behind in a Store will have data and software removed to a point at which the computers can no longer "boot" off an internal drive. Buyer is responsible for reloading any and all computer systems with Buyer's own software so that it will work in a new environment.

        (b)     Generic POS files will be provided upon request. Buyer will get the same file. It will consist of UPC, item description, pack size, and department code. Seller will not provide any electronic price information.

        (c)     Seller's 64k Frame circuits will not be transferred. Buyer will be responsible for installing its own frame, DSL, or VSAT data solution before the Store is transferred.

        (d)     Any Verifone "Everest Plus" Pinpads left behind in the Store will have their encryption keys destroyed by the act of opening up the pinpad. Seller will not provide additional pinpads. Buyer is responsible for its own EPS solution.

        (e)     Category 5 cabling will be left in place.

        (f)     Seller will not train, assist, or otherwise help in the setup of Buyer's POS or back office environment.

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

SCHEDULE G-1
To Exhibit G

Excluded Leased Equipment

(Excel Spreadsheet Schedule G-1.XLS)

[ATTACHED BELOW]

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets Inc.
Store Nos. 208 & 380
August 29, 2006
SGRJAX\92469.1

SCHEDULE G-1
To Exhibit G – Excluded Leased Equipment, Winn-Dixie Store #202

| Entity | Type | Category | Date | Asset | Description | Store | ID |
|---|---|---|---|---|---|---|---|
| WDPOM | REFRB | PRODUCE | 2003-08-18 | 03072232 | 03012008 HUSSMANN PRODUCE CASE | 0202 | 8976-6528 |
| WDPOM | REFRB | PRODUCE | 2003-08-18 | 03072233 | 03012007 HUSSMANN PRODUCE CASE | 0202 | 8976-6527 |
| WDPOM | REFRB | PRODUCE | 2003-08-18 | 03072294 | 03012006 HUSSMANN PRODUCE CASE | 0202 | 8976-6526 |
| WDPOM | REFRB | PRODUCE | 2003-08-18 | 03072295 | 03012002 HUSSMANN PRODUCE CASE | 0202 | 8976-6535 |
| WDPOM | REFRB | PRODUCE | 2003-08-18 | 03073334 | 03012011 HUSSMANN JUICE CASE | 0202 | 8961-1465 |
| WDPOM | REFRB | PRODUCE | 2003-08-18 | 03073339 | 03012010 HUSSMANN JUICE CASE | 0202 | 8961-1464 |
| WDPOM | REFRB | PRODUCE | 2003-08-18 | 03073342 | 03012028 HUSSMANN JUICE CASE | 0202 | 9361-1466 |
| WDPOM | STEQP | MISC | 1990-05-02 | 08013580 | IN-LANE CHECK APPROVAL SYSTEM | 0202 | |
| WDPOM | STEQP | REGISTERS | 2003-10-14 | 03062364 | IBM RISC 6000 REGISTER UPGRADE | 0202 | 2390368 |
| WDPOM | STEQP | TIME CLOCK | 2003-10-14 | 03074076 | CMI TIME CLOCK | POM | 2390375 |
| WDPOM | STEQP | TIME CLOCK | 2003-10-14 | 03074077 | CMI TIME CLOCK | POM | |
| WDPOM | STEQP | ALARM SYS | 1990-02-07 | 03013180 | 2 CAMERAS AND 2 MONITORS FOR C | 0202 | |
| WDPOM | STEQP | ALARM SYS | 1990-12-12 | 03014702 | BACK DOOR ALARM | 0202 | |
| WDPOM | STEQP | ALARM SYS | 1994-06-29 | 03027757 | DUBL-CHEK SECURITY SYSTEM | 0202 | |
| WDPOM | STEQP | ALARM SYS | 1995-05-03 | 03031478 | SECURITY SYSTEM | 0202 | |
| WDPOM | STEQP | BAKERY EQ | 2000-09-27 | 03062093 | PIZZA/SANDWICH PREP STATION | 0202 | 321092028 |
| WDPOM | STEQP | BAKERY EQ | 2000-11-20 | 03062441 | WD/BDT BAKERY TABLE | 0202 | |
| WDPOM | STEQP | BAKERY EQ | 2000-11-20 | 03062442 | WD/BDT BAKERY TABLE | 0202 | |
| WDPOM | STEQP | BAKERY EQ | 2003-01-09 | 03068882 | ISLAND BAKERY MERCH. | 0202 | |
| WDPOM | STEQP | BAKERY EQ | 2003-06-26 | 03071923 | 5' 5DR. PASTRY CASE | 0202 | 89919BLF59D |
| WDPOM | STEQP | BAKERY EQ | 2003-06-26 | 03071924 | 10' CAKE MERCHANDISER | 0202 | 8984BPF10 |
| WDPOM | STEQP | BAKERY EQ | 2003-06-26 | 03071925 | 10' CAKE MERCHANDISER | 0202 | 89948PF10R |
| WDPOM | STEQP | BAKERY EQ | 2003-06-26 | 03071926 | 6' CAKE DECORATOR CABINET | 0202 | |
| WDPOM | STEQP | BALERS/COM | 2005-06-20 | 03087963 | BALER | 0202 | 8697 |
| WDPOM | STEQP | CKOUT LANE | 1989-08-23 | 03012153 | LOAD KING CHECK OUT COUNTER | 0202 | 9801464 |
| WDPOM | STEQP | CKOUT LANE | 1989-08-23 | 03012154 | LOAD KING CHECK OUT COUNTER | 0202 | 9810160 |
| WDPOM | STEQP | CKOUT LANE | 1989-08-23 | 03012155 | LOAD KING CHECK OUT COUNTER | 0202 | 9806069 |
| WDPOM | STEQP | CKOUT LANE | 1989-08-23 | 03012156 | LOAD KING CHECK OUT COUNTER | 0202 | 9809014 |
| WDPOM | STEQP | CKOUT LANE | 1989-08-23 | 03012157 | LOAD KING CHECK OUT COUNTER | 0202 | 9801601 |
| WDPOM | STEQP | CKOUT LANE | 1989-08-23 | 03012158 | LOAD KING CHECK OUT COUNTER | 0202 | 9910161 |
| WDPOM | STEQP | CKOUT LANE | 1989-08-23 | 03012159 | LOAD KING CHECK | 0202 | 9806068 |
| WDPOM | STEQP | CKOUT LANE | 1989-08-23 | 03012160 | LOAD KING CHECK | 0202 | 9308111 |
| WDPOM | STEQP | CKOUT LANE | 1998-04-29 | 03063788 | CHECK POINTS | 0202 | 9805024 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011245 | HUSSMANN EVAPORATOR COILS | 0202 | N/A |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011246 | HUSSMANN EVAPORATOR COILS | 0202 | 9785 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011247 | HUSSMANN EVAPORATOR COILS | 0202 | 97801 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011248 | HUSSMANN EVAPORATOR COILS | 0202 | 100052 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011249 | HUSSMANN EVAPORATOR COILS | 0202 | 99927 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011250 | HUSSMANN EVAPORATOR COILS | 0202 | 99928 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011251 | HUSSMANN EVAPORATOR COILS | 0202 | 99931 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011252 | HUSSMANN EVAPORATOR COILS | 0202 | 99932 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011253 | HUSSMANN EVAPORATOR COILS | 0202 | 98434 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011254 | HUSSMANN EVAPORATOR COILS | 0202 | 98790 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011255 | HUSSMANN EVAPORATOR COILS | 0202 | 97835 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011256 | HUSSMANN EVAPORATOR COILS | 0202 | 100274 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011257 | HUSSMANN EVAPORATOR COILS | 0202 | 95416 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011258 | HUSSMANN EVAPORATOR COILS | 0202 | 99743 |
| WDPOM | STEQP | COILS | 1989-05-31 | 03011258 | HUSSMANN EVAPORATOR COILS | 0202 | 99746 |

| Unit | Category | Class | Acq Date | Asset ID | Descr | Location | DeptID | Serial ID |
|------|----------|-------|----------|----------|-------|----------|--------|-----------|
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073300 | 03072149 HUSSMANN BEAR CASE | 0202 | 0202 | 39557 |
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073301 | 03072150 HUSSMANN BEER CASE | 0202 | 0202 | 39083 |
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073331 | 03012027 HUSSMANN BEER CASE | 0202 | 0202 | 9364-3821 |
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073332 | 03012031 HUSSMANN DAIRY CASE | 0202 | 0202 | 9364-3823 |
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073333 | 03012025 HUSSMANN DAIRY CASE | 0202 | 0202 | 9770-3382 |
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073335 | HUSSMANN DAIRY CASE | 0202 | 0202 | 9364-3811 |
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073336 | 03012035 HUSSMANN BEER CASE | 0202 | 0202 | 9364-3826 |
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073337 | 03012036 HUSSMANN BEER CASE | 0202 | 0202 | 9364-3827 |
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073338 | 03012032 HUSSMANN BEER CASE | 0202 | 0202 | 9364-3824 |
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073340 | 03012033 HUSSMANN DAIRY CASE | 0202 | 0202 | 9364-3825 |
| WDPOM | REFRB | DAIRY CASE | 2003-08-18 | 03073341 | 03012026 HUSSMANN DAIRY CASE | 0202 | 0202 | 9364-3820 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073307 | 03012047 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0429 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073308 | 03012048 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0430 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073309 | 03012059 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0443 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073310 | 03030479 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-1995 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073311 | 03012057 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0441 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073312 | 03012049 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0431 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073313 | 03012051 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0435 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073314 | 03012050 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0434 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073315 | 03030482 HUSSMANN FROZEN FOOD | 0202 | 0202 | 98221992 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073316 | 03030480 HUSSMANN FROZEN FOOD | 0202 | 0202 | 98221994 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073317 | 03012052 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0436 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073319 | 03030481 HUSSMANN FROZEN FOOD | 0202 | 0202 | 98221993 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073320 | 03012054 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0438 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073321 | 03012055 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0439 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073322 | 03012060 HUSSMANN FROZEN FOOD | 0202 | 0202 | 9821-0444 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073323 | 01058775 HUSS ISLAND FF CASE | 0202 | 0202 | A735-0434 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073324 | 01058760 HUSS ISLAND FF CASE | 0202 | 0202 | A729-0319 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073325 | 01058777 HUSS ISLAND CASE | 0202 | 0202 | A729-0321 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073326 | 01058774 HUSS ISLAND FF CASE | 0202 | 0202 | A735-0433 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073327 | 01058758 HUSS ISLAND FF CASE | 0202 | 0202 | A735-0432 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073328 | 01058759 HUSS ISLAND FF CASE | 0202 | 0202 | A729-0318 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073329 | 01058757 HUSS ISLAND FF CASE | 0202 | 0202 | A728-0320 |
| WDPOM | REFRB | FF CASE | 2003-08-18 | 03073330 | 03046775 HUSS ISLAND FF CASE | 0202 | 0202 | A735-0431 |
| WDPOM | REFRB | IC CASE | 2003-08-18 | 03073318 | 03046775 ICE CREAM CASE | 0202 | 0202 | 041140137 |
| WDPOM | REFRB | MEAT CASE | 2003-08-18 | 03073296 | 03012021 HUSSMANN LUNCH MEAT | 0202 | 0202 | 9374-0666 |
| WDPOM | REFRB | MEAT CASE | 2003-08-18 | 03073297 | 03012020 HUSSMANN LUNCH MEAT | 0202 | 0202 | 9374-0682 |
| WDPOM | REFRB | MEAT CASE | 2003-08-18 | 03073298 | 03012023 HUSSMANN LUNCH MEAT | 0202 | 0202 | 9377-1062 |
| WDPOM | REFRB | MEAT CASE | 2003-08-18 | 03073299 | 03012022 HUSSMANN LUNCH MEAT | 0202 | 0202 | 9377-1061 |
| WDPOM | REFRB | MEAT CASE | 2003-08-18 | 03073303 | 03048066 KWW MULTI DECK MEAT | 0202 | 0202 | 030699506 |
| WDPOM | REFRB | MEAT CASE | 2003-08-18 | 03073304 | 03048067 KWW MULTI DECK MEAT | 0202 | 0202 | 030699507 |
| WDPOM | REFRB | MEAT CASE | 2003-08-18 | 03073305 | 03048068 KWW MULTI DECK MEAT | 0202 | 0202 | 030699508 |
| WDPOM | REFRB | MEAT CASE | 2003-08-18 | 03073306 | 03048069 KWW MULTI DECK MEAT | 0202 | 0202 | 030699509 |
| WDPOM | REFRB | MERCH RACK | 2003-08-18 | 03073302 | 03046773 LOW TEMP MERCHANDISER | 0202 | 0202 | 041138753 |
| WDPOM | REFRB | MISC | 2003-08-19 | 03073066 | REFURB REMODEL | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WDPQM | STEQP | COILS | 1989-05-31 | 03011259 | HUSSMANN EVAPORATOR COILS | 0202 | 99747 |
| WDPQM | STEQP | COILS | 1989-05-31 | 03011261 | HUSSMANN EVAPORATOR COILS | 0202 | 100261 |
| WDPQM | STEQP | COILS | 1997-07-23 | 03047420 | EVAPORATOR COIL | 0202 | 08797 |
| WDPQM | STEQP | COILS | 1997-07-23 | 03047421 | EVAPORATOR COIL | 0202 | 03210 |
| WDPQM | STEQP | COILS | 1997-07-23 | 03047422 | EVAPORATOR COIL | 0202 | D97B02308 |
| WDPQM | STEQP | COILS | 1997-07-23 | 03047423 | EVAPORATOR COIL | 0202 | D97B01072 |
| WDPQM | STEQP | COM/PRSRS | 1989-05-31 | 03011238 | HUSSMANN SUPER PLUS SYSTEM | 0202 | 7689-0008 |
| WDPQM | STEQP | COM/PRSRS | 1989-05-31 | 03011239 | HUSSMANN SUPER PLUS SYSTEM | 0202 | 7689-0010 |
| WDPQM | STEQP | COM/PRSRS | 1989-05-31 | 03011240 | HUSSMANN SUPER PLUS SYSTEM | 0202 | 7689-0024 |
| WDPQM | STEQP | COM/PRSRS | 1989-05-31 | 03011241 | HUSSMANN SUPER PLUS SYSTEM | 0202 | 7689-0011 |
| WDPQM | STEQP | COMPRSRS | 1997-06-25 | 03046872 | CONDENSER UNIT | 0202 | 0889-0002 |
| WDPQM | STEQP | COMPRSRS | 1997-06-25 | 03046873 | CONDENSER UNIT | 0202 | 030452275 |
| WDPQM | STEQP | COMPRSRS | 2005-06-20 | 03087970 | COMPRESSOR RACK A | 0202 | 30452274 |
| WDPQM | STEQP | CONDNSRS | 1997-08-20 | 03047752 | RACK CONTROL & DATA COMM PKG | 0202 | 45334 |
| WDPQM | STEQP | CONDNSRS | 1997-08-20 | 03047753 | RACK CONTROL & DATA COMM PKG | 0202 | 45335 |
| WDPQM | STEQP | CONDNSRS | 1997-08-20 | 03047754 | RACK CONTROL & DATA COMM PKG | 0202 | 45332 |
| WDPQM | STEQP | CONDNSRS | 1997-08-20 | 03047755 | RACK CONTROL & DATA COMM PKG | 0202 | 45333 |
| WDPQM | STEQP | CONTRLRS | 1994-06-29 | 03027570 | IBM 4680 OPERATING SYSTEM | 0202 | |
| WDPQM | STEQP | CONTRLRS | 1994-06-29 | 03027571 | IBM 4680 OPERATING SYSTEM | 0202 | |
| WDPQM | STEQP | CONTRLRS | 1994-09-21 | 03028167 | IBM 4680 OPERATING SYSTEM | 0202 | |
| WDPQM | STEQP | CONTRLRS | 1994-09-21 | 03028168 | IBM STORE CONTROLLER KIT | 0202 | |
| WDPQM | STEQP | CUBERS | 1989-09-20 | 03012512 | HOBART TENDERIZER | 0202 | 56887471 |
| WDPQM | STEQP | DAIRY CASE | 1989-07-26 | 03012025 | HUSSMANN EGG CASE | 0202 | 9770-3382 |
| WDPQM | STEQP | DAIRY CASE | 1989-07-26 | 03012026 | HUSSMANN DAIRY CASE | 0202 | 9364-3820 |
| WDPQM | STEQP | DAIRY CASE | 1989-07-26 | 03012027 | HUSSMANN DAIRY CASE | 0202 | 9364-3821 |
| WDPQM | STEQP | DAIRY CASE | 1989-07-26 | 03012028 | HUSSMANN DAIRY CASE | 0202 | 9361-1466 |
| WDPQM | STEQP | DAIRY CASE | 1989-07-26 | 03012030 | HUSSMANN DAIRY CASE | 0202 | 9364-3822 |
| WDPQM | STEQP | DAIRY CASE | 1989-07-26 | 03012031 | HUSSMANN DAIRY CASE | 0202 | 9364-3823 |
| WDPQM | STEQP | DAIRY CASE | 1989-07-26 | 03012033 | HUSSMANN DAIRY CASE | 0202 | 9364-3825 |
| WDPQM | STEQP | DAIRY CASE | 1989-07-26 | 03012035 | HUSSMANN DAIRY CASE | 0202 | 9364-3826 |
| WDPQM | STEQP | DAIRY CASE | 1989-07-26 | 03012036 | HUSSMANN DAIRY CASE | 0202 | 9364-3827 |
| WDPQM | STEQP | DAIRY CASE | 2001-08-28 | 03063667 | 12' ISLAND CHEESE CASE | 0202 | 10230833 |
| WDPQM | STEQP | DAIRY CASE | 2003-05-27 | 03072149 | HUSSMANN BEER CASE | 0202 | EB139557 |
| WDPQM | STEQP | DAIRY CASE | 2003-05-27 | 03072150 | HUSSMANN BEER CASE | 0202 | EB139083 |
| WDPQM | STEQP | DAIRY CASE | 2003-06-26 | 03071930 | 12' MULTI DECK DAIRY/DELI | 0202 | 0305000612 |
| WDPQM | STEQP | DAIRY CASE | 2005-06-20 | 03087972 | DAIRY CASE | 0202 | 93643825 |
| WDPQM | STEQP | DAIRY CASE | 2005-06-20 | 03087973 | DAIRY CASE | 0202 | 93611485 |
| WDPQM | STEQP | DELI BAKER | 1989-08-23 | 03012176 | HENNY PENNY PRESSURE FRYER | 0202 | GB64H1 |
| WDPQM | STEQP | DELI BAKER | 1997-03-05 | 03045543 | HOBART DOUBLE RACK OVEN | 0202 | 680303418 |
| WDPQM | STEQP | DELI BAKER | 1997-04-30 | 03046729 | HOBART PROOFER | 0202 | 321049342 |
| WDPQM | STEQP | DELI BAKER | 2003-06-20 | 03071676 | HOT FOOD MERCHANDISER | 0202 | WD202MHH7405803 |
| WDPQM | STEQP | DELI BAKER | 2004-05-25 | 03079435 | BLF-F AUTO LIFT FRYER W/FILTER | 0202 | 121286 |
| WDPQM | STEQP | DELI EQUIP | 2000-09-21 | 03062214 | OIL CADDY | 0202 | P1092210005 |
| WDPQM | STEQP | DELI EQUIP | 2000-11-04 | 03063019 | 8' SERVICE DELI CASE | 0202 | 0010000118 |
| WDPQM | STEQP | DELI EQUIP | 2000-11-04 | 03063020 | 8' SERVICE DELI CASE | 0202 | 10000161 |
| WDPQM | STEQP | DELI EQUIP | 2001-01-26 | 03063279 | DELI BUDDY SLICING TABLE | 0202 | |
| WDPQM | STEQP | DELI EQUIP | 2001-01-26 | 03063280 | DELI BUDDY SLICING TABLE | 0202 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WDPOM | STEQP | DELI EQUIP | 2003-09-09 | 03073717 | SRC ROTISSERIE W/ CONV. OVEN | 0202 | 118572 |
| WDPOM | STEQP | DELI EQUIP | 2005-06-20 | 03087961 | DELI CASE | 0202 | 102000833 |
| WDPOM | STEQP | DOORS | 2006-04-18 | 03091478 | REPLACE FRZR DOOR AND FRAME | 0202 | |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012047 | HUSSMANN FROZEN FOOD | 0202 | 9821-0429 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012048 | HUSSMANN FROZEN FOOD | 0202 | 9821-0430 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012049 | HUSSMANN FROZEN FOOD | 0202 | 9821-0431 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012050 | HUSSMANN FROZEN FOOD | 0202 | 9821-0434 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012051 | HUSSMANN FROZEN FOOD | 0202 | 9821-0435 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012052 | HUSSMANN FROZEN FOOD | 0202 | 9821-0436 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012054 | HUSSMANN FROZEN FOOD | 0202 | 9821-0438 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012055 | HUSSMANN FROZEN FOOD | 0202 | 9821-0438 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012057 | HUSSMANN FROZEN FOOD | 0202 | 9821-0439 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012058 | HUSSMANN FROZEN FOOD | 0202 | 9821-0441 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012059 | HUSSMANN FROZEN FOOD | 0202 | 9821-0442 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012060 | HUSSMANN FROZEN FOOD | 0202 | 9821-0443 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012061 | HUSSMANN SPOT DISPLAY CASE | 0202 | 9821-0444 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012062 | HUSSMANN SPOT DISPLAY CASE | 0202 | 9272-0140 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012064 | HUSSMANN SPOT DISPLAY CASE | 0202 | 9272-0142 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012065 | HUSSMANN SPOT DISPLAY CASE | 0202 | 9272-0145 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012066 | HUSSMANN SPOT DISPLAY CASE | 0202 | 9272-0146 |
| WDPOM | STEQP | FF CASE | 1989-07-26 | 03012067 | HUSSMANN SPOT DISPLAY CASE | 0202 | 9272-0147 |
| WDPOM | STEQP | FF CASE | 1999-09-22 | 03060071 | LW-12 ISLAND FRZ WIDE | 0202 | 9272-0148 |
| WDPOM | STEQP | FF CASE | 2003-02-10 | 03069984 | FROZEN FOOD FREEZER DOOR | 0202 | A729-1108 |
| WDPOM | STEQP | FF CASE | 2005-06-20 | 03087974 | FFD DOOR CASE | 0202 | |
| WDPOM | STEQP | FF CASE | 2005-06-20 | 03087975 | FFD DOOR CASE | 0202 | A7350433 |
| WDPOM | STEQP | FF CASE | 2005-06-20 | 03087976 | FFD DOOR CASE | 0202 | A7290321 |
| WDPOM | STEQP | FF CASE | 2005-06-20 | 03087977 | FFD DOOR CASE | 0202 | A7290319 |
| WDPOM | STEQP | FF CASE | 2005-06-20 | 03087978 | FFD DOOR CASE | 0202 | A7350434 |
| WDPOM | STEQP | FLORAL | 2003-06-26 | 03072075 | 6' OPEN SELF-CONT. FLORAL | 0202 | A7290320 |
| WDPOM | STEQP | FLORAL | 2005-06-20 | 03087958 | FLORAL CASE | 0202 | EG112162 |
| WDPOM | STEQP | FLORAL | 2005-06-20 | 03087959 | FLORAL CABINET | 0202 | 914984EA081736 |
| WDPOM | STEQP | FLORAL | 2005-06-20 | 03087960 | FLORAL CABINET | 0202 | 915562FA082717 |
| WDPOM | STEQP | GENERATOR | 1989-04-05 | 03011071 | 35 KW GENERATOR W/5 YR WARR. & | 0202 | 915562EA082173 |
| WDPOM | STEQP | GRINDERS | 1989-09-20 | 03012510 | HOBART MIXER GRINDER | 0202 | F870899584 |
| WDPOM | STEQP | H2O HTRS | 2001-10-03 | 03064470 | 80 GALLON WATER HTR | 0202 | 27122138 |
| WDPOM | STEQP | ICE MAKER | 2005-06-20 | 03087971 | ICE MERCHANDISER | 0202 | |
| WDPOM | STEQP | MEAT CASE | 1997-09-17 | 03048066 | KW MULTIDECK MEAT CASE | 0202 | 98K00428 |
| WDPOM | STEQP | MEAT CASE | 1997-09-17 | 03048067 | KW MULTIDECK MEAT CASE | 0202 | 030659506 |
| WDPOM | STEQP | MEAT CASE | 1997-09-17 | 03048068 | KW MULTIDECK MEAT CASE | 0202 | 030659507 |
| WDPOM | STEQP | MEAT CASE | 1997-09-17 | 03048069 | KW MULTIDECK MEAT CASE | 0202 | 030659509 |
| WDPOM | STEQP | MEAT CASE | 2000-11-04 | 03063018 | 8' SGL DECK FRZN MEAT CASE | 0202 | 0010000316 |
| WDPOM | STEQP | MEAT CASE | 2003-06-26 | 03071928 | 12' SGL DECK MEAT | 0202 | 0305000605 |
| WDPOM | STEQP | MEAT SAWS | 1989-09-20 | 03012508 | HOBART MEAT SAW | 0202 | 271067597 |
| WDPOM | STEQP | MEAT SAWS | 1989-09-20 | 03012509 | HOBART MEAT SAW | 0202 | 271138284 |
| WDPOM | STEQP | MERCH RACK | 1997-05-28 | 03046773 | LO TEMP MERCHANDISER | 0202 | 041138753 |
| WDPOM | STEQP | MISC | 1989-10-18 | 03012597 | CCTV SYSTEM | 0202 | |
| WDPOM | STEQP | MISC | 1990-01-10 | 03013049 | MISCELLANEOUS CHARGES | 0202 | |
| WDPOM | STEQP | MISC | 1990-09-19 | 03014106 | E-Z SHOPPER HANDICAP CART | 0202 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WDPOM | STEQP | MISC | 1990-11-14 | 03014380 | DUMPSTER ENCLOSURE | 0202 | |
| WDPOM | STEQP | MISC | 1993-01-06 | 03021756 | PC BOARD | 0202 | |
| WDPOM | STEQP | MISC | 1995-07-26 | 03032608 | CONTROL PANEL BOARD | 0202 | |
| WDPOM | STEQP | MISC | 1996-04-03 | 03038931 | SPEED LIFT | 0202 | 060396 |
| WDPOM | STEQP | MISC | 1996-04-03 | 03038932 | SPEED LIFT | 0202 | 070396 |
| WDPOM | STEQP | MISC | 1997-04-30 | 03046291 | TRUCK BRIDGE | 0202 | |
| WDPOM | STEQP | MISC | 1997-11-12 | 03048965 | CIP DECOR PACKAGE | 0202 | |
| WDPOM | STEQP | MISC | 1997-11-12 | 03049244 | CABINETS | 0202 | |
| WDPOM | STEQP | MISC | 2000-01-27 | 03061153 | MISTING SYSTEM | 0202 | |
| WDPOM | STEQP | MISC | 2003-03-05 | 03070387 | 16 CH SWEATMISER | 0202 | 4626 |
| WDPOM | STEQP | MISC | 2003-07-02 | 03073432 | CONDENSER RACK A & B | 0202 | 674911-10 |
| WDPOM | STEQP | MISC | 2003-07-02 | 03073433 | CONDENSER RACK C & E | 0202 | 674911-20 |
| WDPOM | STEQP | MISC | 2003-07-02 | 03073434 | CONDENSER RACK D | 0202 | 674911-30 |
| WDPOM | STEQP | MISC | 2003-12-08 | 03075980 | AISLE MARKERS | 0202 | |
| WDPOM | STEQP | MISC | 2003-12-08 | 03075981 | AISLE MARKERS | 0202 | |
| WDPOM | STEQP | MISC | 2004-10-12 | 03081872 | REPLACE MONITOR & MULTIPLEXER | 0202 | |
| WDPOM | STEQP | PA SYSTEM | 1998-10-13 | 03012632 | 120 WATT AMPLIFIER | 0202 | 59419 |
| WDPOM | STEQP | PA SYSTEM | 1997-02-05 | 03045050 | A.P SYSTEM | 0202 | |
| WDPOM | STEQP | PALLETJACK | 2001-02-26 | 03063729 | T55 PALLET JACK | 0202 | T2958876 |
| WDPOM | STEQP | PHARMACY | 1990-05-02 | 03013536 | BUILD AND INSTALL PHARMACY | 0202 | |
| WDPOM | STEQP | PHARMACY | 1990-08-22 | 03014032 | BURGLAR ALARM INSIDE PHARMACY | 0202 | |
| WDPOM | STEQP | PHARMACY | 1997-11-12 | 03048967 | PHARMACY COUNTER | 0202 | |
| WDPOM | STEQP | PHARMACY | 1998-06-24 | 03055410 | PHARMACY PRINTER | 0202 | 11-KW967 |
| WDPOM | STEQP | PRODUCE | 1989-07-26 | 03012002 | HUSSMANN PRODUCE CASE | 0202 | 8976-6535 |
| WDPOM | STEQP | PRODUCE | 1989-07-26 | 03012006 | HUSSMANN PRODUCE CASE | 0202 | 8976-6526 |
| WDPOM | STEQP | PRODUCE | 1989-07-26 | 03012007 | HUSSMANN PRODUCE CASE | 0202 | 8976-6527 |
| WDPOM | STEQP | PRODUCE | 1989-07-26 | 03012008 | HUSSMANN PRODUCE CASE | 0202 | 8976-6528 |
| WDPOM | STEQP | PRODUCE | 1989-07-26 | 03012010 | HUSSMANN JUICE CASE | 0202 | 9361-1464 |
| WDPOM | STEQP | PRODUCE | 2003-06-28 | 03071890 | PRODUCE MISTING SYSTEM | 0202 | |
| WDPOM | STEQP | PRODUCE | 2005-06-20 | 03087956 | PRODUCE CASE | 0202 | |
| WDPOM | STEQP | PRODUCE | 2005-06-20 | 03087957 | PRODUCE CASE | 0202 | |
| WDPOM | STEQP | SCALES | 1997-04-30 | 03046120 | QUANTUM SCALE/PRINTER | 0202 | B022-3982 |
| WDPOM | STEQP | SCALES | 1997-04-30 | 03046121 | QUANTUM SCALE/PRINTER | 0202 | B022-3983 |
| WDPOM | STEQP | SCALES | 1997-04-30 | 03046123 | QUANTUM SCALE/PRINTER | 0202 | BU1005464 |
| WDPOM | STEQP | SCALES | 1997-04-30 | 03046122 | QUANTUM SCALE/PRINTER | 0202 | 1018-369 |
| WDPOM | STEQP | SCALES | 1997-04-30 | 03046123 | QUANTUM SCALE/PRINTER | 0202 | 1018-367 |
| WDPOM | STEQP | SCALES | 1997-04-30 | 03046128 | QUANTUM SCALE/PRINTER | 0202 | BU1005452 |
| WDPOM | STEQP | SCALES | 1997-04-30 | 03046128 | QUANTUM SCALE/PRINTER | 0202 | BU1005509 |
| WDPOM | STEQP | SCALES | 2002-09-30 | 03066851 | ULTIMA SCALE/PRINTER | 0202 | 311109954 |
| WDPOM | STEQP | SCALES | 2002-09-30 | 03066852 | QUANTUM PRINTER | 0202 | 311275863 |
| WDPOM | STEQP | SCALES | 2002-09-30 | 03066853 | QUANTUM PRINTER | 0202 | 311276685 |
| WDPOM | STEQP | SCALES | 2005-06-20 | 03087966 | HOBART SCALE | 0202 | 051042541 |
| WDPOM | STEQP | SCALES | 2005-06-20 | 03087967 | HOBART SCALE | 0202 | BU1005505 |
| WDPOM | STEQP | SCALES | 2005-06-20 | 03087969 | HOBART HAND WRAP STATION | 0202 | 311105159 |
| WDPOM | STEQP | SCALES | 2005-06-20 | 03087968 | SCALE | 0202 | BU1005471 |
| WDPOM | STEQP | SCALES | 2005-06-20 | 03087969 | SCALE | 0202 | 311102519 |
| WDPOM | STEQP | SEAFOOD | 1989-09-20 | 03012483 | HOBART ELECTRIC LOBSTER STEAME | 0202 | 54002402 |
| WDPOM | STEQP | SEAFOOD | 2000-12-29 | 03063111 | 12' SERVICE SEAFOOD CASE | 0202 | 10000117 |
| WDPOM | STEQP | SEAFOOD | 2001-01-25 | 03063533 | 8' ICELESS SEAFOOD KIT | 0202 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| WDPOM | STEQP | SEAFOOD | 2001-01-29 | 03063306 | SEAFOOD MISTING SYSTEM | 0202 | 0202 | |
| WDPOM | STEQP | SEAFOOD | 2003-06-26 | 03071926 | 2 X 2 LOBSTER TANK | 0202 | 0202 | 15623 |
| WDPOM | STEQP | SHELVING | 1989-07-26 | 03012097 | MADIX SHELVING | 0202 | 0202 | |
| WDPOM | STEQP | SHELVING | 1989-09-20 | 03012582 | MADIX SHELVING | 0202 | 0202 | |
| WDPOM | STEQP | SHELVING | 1989-11-15 | 03012698 | MADIX SHELVING | 0202 | 0202 | |
| WDPOM | STEQP | SHELVING | 1990-02-27 | 03013158 | MADIX SHELVING | 0202 | 0202 | |
| WDPOM | STEQP | SHELVING | 1992-05-27 | 03019655 | MADIX SHELVING | 0202 | 0202 | |
| WDPOM | STEQP | SHELVING | 1997-06-25 | 03046976 | MADIX SHELVING | 0202 | 0202 | |
| WDPOM | STEQP | SHELVING | 1997-07-23 | 03047272 | MADIX SHELVING | 0202 | 0202 | |
| WDPOM | STEQP | SHELVING | 2001-03-09 | 03063897 | MADIX SHELVING | 0202 | 0202 | |
| WDPOM | STEQP | SHELVING | 2003-02-28 | 03070341 | MADIX SHELVING | 0202 | 0202 | |
| WDPOM | STEQP | SHELVING | 2003-03-27 | 03070122 | SHELVING IN BANK AREA | 0202 | 0202 | |
| WDPOM | STEQP | SHELVING | 2004-04-02 | 03078427 | SHELVING | 0202 | 0202 | |
| WDPOM | STEQP | SHUTTERS | 1997-06-25 | 03047145 | STORM SHUTTERS | 0202 | 0202 | |
| WDPOM | STEQP | SIGNS | 2005-05-31 | 03087490 | ARCHED FRESH MEAT SIGNS | 0202 | 0202 | |
| WDPOM | STEQP | SLICERS | 1989-09-20 | 03012505 | HOBART SLICER | 0202 | 0202 | |
| WDPOM | STEQP | SLICERS | 1989-09-20 | 03012506 | HOBART SLICER | 0202 | 0202 | |
| WDPOM | STEQP | SLICERS | 1989-10-18 | 03012686 | BERKEL BREAD SLICER | 0202 | 0202 | 317 |
| WDPOM | STEQP | SOFTWARE | 1994-06-29 | 03027572 | IBM SOFTWARE | 0202 | 0202 | 56883353 |
| WDPOM | STEQP | WALK-INS | 1989-05-31 | 03011566 | PRODUCE COOLER | 0202 | 0202 | 56883345 |
| WDPOM | STEQP | WALK-INS | 1989-05-31 | 03011587 | MEAT COOLER | 0202 | 0202 | N/A |
| WDPOM | STEQP | WALK-INS | 1989-05-31 | 03011588 | MEAT COOLER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1989-05-31 | 03011589 | FISH COOLER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1989-05-31 | 03011590 | FISH COOLER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1989-05-31 | 03011591 | BAKERY COOLER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1989-05-31 | 03011592 | BAKERY FREEZER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1989-05-31 | 03011593 | DELI COOLER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1992-04-29 | 03019098 | DELI FREEZER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1992-04-29 | 03019206 | CUTTING ROOM CEILING PANEL | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03045949 | FISH FREEZER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03045950 | FOOD FREEZER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03045951 | DIARY COOLER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03045985 | ICE CREAM FREEZER | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1997-07-23 | 03072209 | COOLER DOOR | 0202 | 0202 | |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03046127 | MEAT WALL | 0202 | 0202 | |
| WDPOM | STEQP | WRAPPERS | 1997-04-30 | 03046127 | HOBART STRETCH WRAPPER | 0202 | 0202 | 3111008579 |

| Unit | Category | Class | Acq Date | Asset ID | Descr | Location | Dept D | Serial ID |
|---|---|---|---|---|---|---|---|---|
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079891 | 03007897 HILL CHEESE CASE | 0380 | 0380 | 463445 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079893 | 03007895 HILL CHEESE CASE | 0380 | 0380 | 463446 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079894 | 03007878 HILL EGG CASE | 0380 | 0380 | 456299 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079895 | 03007868 HILL DAIRY CASE | 0380 | 0380 | 456295 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079896 | 03007877 HILL DAIRY CASE | 0380 | 0380 | 456296 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079897 | 03007872 HILL DAIRY CASE | 0380 | 0380 | 456297 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079898 | 03007871 HILL DAIRY CASE | 0380 | 0380 | 456289 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079899 | 03007874 HILL DAIRY CASE | 0380 | 0380 | 456290 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079900 | 03007871 HILL DAIRY CASE | 0380 | 0380 | 456291 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079901 | 03007875 HILL DAIRY CASE | 0380 | 0380 | 456292 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079902 | 03007867 HILL DAIRY CASE | 0380 | 0380 | 456293 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079903 | 03007873 HILL DAIRY CASE | 0380 | 0380 | 456294 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079904 | 03007869 HILL DAIRY CASE | 0380 | 0380 | 456286 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079905 | 03007876 HILL DAIRY CASE | 0380 | 0380 | 458221 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079906 | 03007870 HILL DAIRY CASE | 0380 | 0380 | 470335 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079907 | 03063093 HUSSMANN DAIRY SPOT C | 0380 | 0380 | 9433-0728 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03079908 | 03063094 HUSSMANN DAIRY SPOT C | 0380 | 0380 | 9433-0724 |
| WDPOM | REFRB | DAIRY CASE | 2004-07-22 | 03063095 | 03063095 HUSSMANN DAIRY SPOT C | 0380 | 0380 | 9433-0733 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079911 | 03007901 HILL FROZEN FOOD CASE | 0380 | 0380 | 473010 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079912 | 03007902 HILL FROZEN FOOD CASE | 0380 | 0380 | 473011 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079913 | 03007899 HILL FROZEN FOOD CASE | 0380 | 0380 | 473008 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079914 | 03007904 HILL FROZEN FOOD CASE | 0380 | 0380 | 473013 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079917 | 03007903 HILL FROZEN FOOD CASE | 0380 | 0380 | 473012 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079918 | 03007913 HILL FROZEN FOOD CASE | 0380 | 0380 | 463737 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079919 | 03007912 HILL FROZEN FOOD CASE | 0380 | 0380 | 473007 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079920 | 03007909 HILL FROZEN FOOD CASE | 0380 | 0380 | 473005 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079921 | 03007907 HILL FROZEN FOOD CASE | 0380 | 0380 | 87439682 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079922 | 03007914 HILL FROZEN FOOD CASE | 0380 | 0380 | 471197 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079923 | 03007900 HILL FROZEN FOOD CASE | 0380 | 0380 | 473009 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079924 | 03007908 HILL FROZEN FOOD CASE | 0380 | 0380 | 455071 |
| WDPOM | REFRB | FF CASE | 2004-07-22 | 03079925 | 03007910 HILL FROZEN FOOD CASE | 0380 | 0380 | 473004 |
| WDPOM | REFRB | MEAT CASE | 2004-07-22 | 03079841 | KW DUAL TEMP SELF CON | 0380 | 0380 | 030658796 |
| WDPOM | REFRB | MEAT CASE | 2004-07-22 | 03048465 | KW DUAL TEMP SELF CON | 0380 | 0380 | 030658795 |
| WDPOM | REFRB | MEAT CASE | 2004-07-22 | 03048467 | KW DUAL TEMP SELF CON | 0380 | 0380 | 030658794 |
| WDPOM | REFRB | MEAT CASE | 2004-07-22 | 03048466 | KW DUAL TEMP SELF CON | 0380 | 0380 | |
| WDPOM | REFRB | MEAT CASE | 2004-07-22 | 03046502 | MEAT CASE | 0380 | 0380 | 030453670 |
| WDPOM | REFRB | MEAT CASE | 2004-07-22 | 03046504 | MEAT CASE | 0380 | 0380 | 030453672 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WDPOM | REFRB | MEAT CASE | 2004-07-22 | 03079889 | 03046505 MEAT CASE | 0380 | 030453673 |
| WDPOM | REFRB | MEAT CASE | 2004-07-22 | 03079890 | 03046507 MEAT CASE | 0380 | 030453675 |
| WDPOM | REFRB | MISC | 2003-05-19 | 03070614 | REFURB REMODEL | 0380 | |
| WDPOM | REFRB | MISC | 2003-12-23 | 03075402 | REFURB REMODEL - IMAGE REMODEL | 0380 | |
| WDPOM | REFRB | MISC LHI | 2005-01-07 | 03084839 | REFURBISH | 0380 | |
| WDPOM | REFRB | PRODUCE | 2003-04-03 | 03071840 | 03071605 PRODUCE CASE | 0380 | 060770444 |
| WDPOM | REFRB | PRODUCE | 2003-04-03 | 03071841 | 03071606 PRODUCE CASE | 0380 | 060770437 |
| WDPOM | REFRB | PRODUCE | 2003-04-03 | 03071842 | 03071607 PRODUCE CASE | 0380 | 060770438 |
| WDPOM | STEQP | ALARM SYS | 1997-03-05 | 03045558 | ALARM SYSTEM | 0380 | |
| WDPOM | STEQP | ALARM SYS | 2003-04-30 | 03070478 | CCTV SYSTEM UPGRADE | 0380 | |
| WDPOM | STEQP | BAKERY EQ | 2000-07-31 | 03062017 | AVALON GLAZING TABLE | 0380 | 1220007 |
| WDPOM | STEQP | BAKERY EQ | 2000-10-06 | 03062370 | ROSTISSERIE/CONVECTION OVEN | 0380 | 106865 |
| WDPOM | STEQP | BAKERY EQ | 2000-11-21 | 03062560 | WD/BDT BAKERY TABLE | 0380 | |
| WDPOM | STEQP | BAKERY EQ | 2000-11-21 | 03062561 | WD/BDT BAKERY TABLE | 0380 | |
| WDPOM | STEQP | BAKERY EQ | 2000-12-01 | 03062986 | BAKERY CASE | 0380 | ID122163 |
| WDPOM | STEQP | BAKERY EQ | 2000-12-01 | 03062987 | BAKERY CASE | 0380 | ID121584 |
| WDPOM | STEQP | BAKERY EQ | 2000-12-01 | 03062988 | BAKERY CASE | 0380 | JD122619 |
| WDPOM | STEQP | BAKERY EQ | 2000-12-01 | 03062989 | CAKE DECOR. STATION W/ TOP | 0380 | KD123407 |
| WDPOM | STEQP | BAKERY EQ | 2000-12-01 | 03062990 | 2 DR PASTRY CASE | 0380 | KD124030 |
| WDPOM | STEQP | BAKERY EQ | 2003-01-09 | 03070068 | ISLAND BAKERY MERCHANDISER | 0380 | |
| WDPOM | STEQP | BAKERY EQ | 2003-01-09 | 03070069 | ISLAND BAKERY MERCHANDISER | 0380 | |
| WDPOM | STEQP | BAKERY EQ | 2003-01-30 | 03068709 | REFR CASE FOR BOTTOM T-TOP | 0380 | |
| WDPOM | STEQP | BAKERY EQ | 2004-06-09 | 03793222 | EUROPEAN BAKERY TABLE W DRAWER | 0380 | AG108948 |
| WDPOM | STEQP | BAKERY EQ | 2004-06-09 | 03793223 | EUROPEAN BAKERY TABLE W DRAWER | 0380 | |
| WDPOM | STEQP | BAKERY EQ | 2004-06-09 | 03793324 | FRENCH BREAD RACK W/6 BASKETS | 0380 | |
| WDPOM | STEQP | BALERS/COM | 1987-08-19 | 03008694 | BALER FOLDING DOOR | 0380 | 8260 |
| WDPOM | STEQP | CKOUT LANE | 2003-04-24 | 03071784 | CHECKSTAND | 0380 | CS13789 |
| WDPOM | STEQP | CKOUT LANE | 2003-04-24 | 03071786 | CHECKSTAND | 0380 | CS13784 |
| WDPOM | STEQP | CKOUT LANE | 2003-04-24 | 03071787 | CHECKSTAND | 0380 | CS13785 |
| WDPOM | STEQP | CKOUT LANE | 2003-04-24 | 03071788 | CHECKSTAND | 0380 | CS13786 |
| WDPOM | STEQP | CKOUT LANE | 2003-04-24 | 03071790 | CHECKSTAND | 0380 | CS13787 |
| WDPOM | STEQP | CKOUT LANE | 2003-04-24 | 03071792 | CHECKSTAND | 0380 | CS13790 |
| WDPOM | STEQP | CKOUT LANE | 2003-04-24 | 03071793 | CHECKSTAND | 0380 | CS13791 |
| WDPOM | STEQP | CKOUT LANE | 2003-04-24 | 03071794 | CHECKSTAND | 0380 | CS13788 |
| WDPOM | STEQP | COMPRSRS | 1996-06-26 | 03037710 | HILL COMPRESSOR | 0380 | 94661845 |
| WDPOM | STEQP | COMPRSRS | 1996-06-26 | 03037711 | HILL COMPRESSOR | 0380 | 95662594 |
| WDPOM | STEQP | COMPRSRS | 1996-06-26 | 03037712 | HILL COMPRESSOR | 0380 | 95662585 |

| | | | | | | |
|---|---|---|---|---|---|---|
| WDPOM | STEQP | COMPRSRS | 1996-06-26 | 03037713 | HILL COMPRESSOR | 0380 | 933565678 |
| WDPOM | STEQP | COMPRSRS | 1996-06-26 | 03037714 | HILL COMPRESSOR | 0380 | 87062731 |
| WDPOM | STEQP | COMPRSRS | 1997-05-28 | 03046609 | COMPRESSER | 0380 | |
| WDPOM | STEQP | COMPRSRS | 1997-05-28 | 03046610 | COMPRESSER | 0380 | |
| WDPOM | STEQP | COMPRSRS | 1997-05-28 | 03046611 | COMPRESSER | 0380 | |
| WDPOM | STEQP | COMPRSRS | 1997-05-28 | 03046612 | COMPRESSER | 0380 | |
| WDPOM | STEQP | COMPRSRS | 1997-05-28 | 03046613 | COMPRESSER | 0380 | |
| WDPOM | STEQP | COMPRSRS | 1997-09-17 | 03047820 | TEMP COMMUNICATIONS FOR RACK E | 0380 | 45362 |
| WDPOM | STEQP | COMPRSRS | 1997-09-17 | 03047821 | TEMP COMMUNICATIONS FOR RACK A | 0380 | 45339 |
| WDPOM | STEQP | COMPRSRS | 1997-09-17 | 03047822 | TEMP COMMUNICATIONS FOR RACK L | 0380 | 45341 |
| WDPOM | STEQP | COMPRSRS | 1997-09-17 | 03047823 | TEMP COMMUNICATION FOR RACK CH | 0380 | 55299 |
| WDPOM | STEQP | COMPRSRS | 1998-02-04 | 03050400 | KW COMPRESSOR | 0380 | |
| WDPOM | STEQP | COMPRSRS | 2004-08-07 | 03080996 | COPELAMETIC COMPRESSOR | 0380 | 04B62727R |
| WDPOM | STEQP | CONDNSRS | 1997-06-25 | 03046972 | CONDENSER | 0380 | |
| WDPOM | STEQP | CRTYSY CTR | 1997-06-25 | 03046798 | PERSONWEIGHER | 0380 | 87856 |
| WDPOM | STEQP | CUBERS | 1987-09-16 | 03008821 | HOBART TENDERIZER | 0380 | 56824047 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007867 | HILL DAIRY CASE | 0380 | 456294 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007868 | HILL DAIRY CASE | 0380 | 456295 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007869 | HILL DAIRY CASE | 0380 | 456296 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007870 | HILL DAIRY CASE | 0380 | 470335 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007871 | HILL DAIRY CASE | 0380 | 456291 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007872 | HILL DAIRY CASE | 0380 | 456289 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007873 | HILL DAIRY CASE | 0380 | 456293 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007874 | HILL DAIRY CASE | 0380 | 456290 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007875 | HILL DAIRY CASE | 0380 | 456292 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007876 | HILL DAIRY CASE | 0380 | 458221 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007877 | HILL DAIRY CASE | 0380 | 456297 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007878 | HILL EGG CASE | 0380 | 456299 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007895 | HILL CHEESE CASE | 0380 | 463446 |
| WDPOM | STEQP | DAIRY CASE | 1987-02-04 | 03007897 | HILL CHEESE CASE | 0380 | 463445 |
| WDPOM | STEQP | DAIRY CASE | 2003-02-06 | 03069054 | 12' MULTI DECK DAIRY CASE | 0380 | 0301000869 |
| WDPOM | STEQP | DAIRY CASE | 2003-02-06 | 03069055 | 12' MULTI DECK DAIRY CASE | 0380 | 0301000870 |
| WDPOM | STEQP | DAIRY CASE | 2003-02-06 | 03069056 | 12' MULTI DECK DAIRY CASE | 0380 | 030100087 |
| WDPOM | STEQP | DAIRY CASE | 2003-02-06 | 03069057 | 12' MULTI DECK DAIRY CASE | 0380 | 0301000871 |
| WDPOM | STEQP | DAIRY CASE | 2003-02-06 | 03069058 | 12' MULTI DECK DAIRY CASE | 0380 | 0301000337 |
| WDPOM | STEQP | DAIRY CASE | 2003-02-06 | 03069059 | 12' MULTI DECK DAIRY CASE | 0380 | 0301000337 |
| WDPOM | STEQP | DAIRY CASE | 2004-07-22 | 03079839 | DAIRY CASE | 0380 | 0301444648 |
| WDPOM | STEQP | DAIRY CASE | 2004-07-22 | 03046495 | DAIRY CASE | 0380 | 0301444649 |
| WDPOM | STEQP | DAIRY CASE | 2004-07-22 | 03046496 | DAIRY CASE | 0380 | 0301444649 |
| WDPOM | STEQP | DAIRY CASE | 2004-07-22 | 03799692 | HILL CHEESE CASE | 0380 | 463190 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WDPOM | STEQP | DAIRY CASE | 2004-07-22 | 03079909 | HUSSMANN CHEESE CASE | 0380 | CH11232 |
| WDPOM | STEQP | DELI BAKER | 1986-07-23 | 03007568 | BAKERY COOLER | 0380 | 5802-9 |
| WDPOM | STEQP | DELI BAKER | 1986-07-23 | 03007569 | BAKERY FREEZER | 0380 | 5802-10 |
| WDPOM | STEQP | DELI BAKER | 1997-04-30 | 03046213 | HOBART PROOFER | 0380 | 321049521 |
| WDPOM | STEQP | DELI BAKER | 1997-04-30 | 03046214 | HOBART PROOFER | 0380 | 321049771 |
| WDPOM | STEQP | DELI BAKER | 1997-04-30 | 03046217 | HOBART ELECTRIC STEAMER | 0380 | AP1011035 |
| WDPOM | STEQP | DELI BAKER | 1997-04-30 | 03046218 | HOBART ELECTRIC STEAMER | 0380 | AP1011038 |
| WDPOM | STEQP | DELI BAKER | 1997-04-30 | 03046299 | DLBE RACK OVEN | 0380 | 680304189 |
| WDPOM | STEQP | DELI BAKER | 1998-05-27 | 03054781 | SAVORY ROTISSERIE | 0380 | SP0004940 |
| WDPOM | STEQP | DELI BAKER | 2000-08-15 | 03061678 | OIL CADDY | 0380 | P1081400006CF |
| WDPOM | STEQP | DELI BAKER | 2004-06-07 | 03079120 | 8FT SERVICE DELI CASE | 0380 | 040600000011 |
| WDPOM | STEQP | DELI BAKER | 2004-06-21 | 03079439 | 4FT SANDWICH PREP CASE | 0380 | FH123570 |
| WDPOM | STEQP | DELI BAKER | 2004-07-20 | 03079876 | THERMOGLAZE JR DONUT STATION | 0380 | W04070003 |
| WDPOM | STEQP | DELI BAKER | 2004-08-14 | 03080218 | DELI SMALLWARES KIT | 0380 | |
| WDPOM | STEQP | DELI EQUIP | 2000-08-03 | 03061649 | SLINGSHOT TABLE SLICER | 0380 | |
| WDPOM | STEQP | DELI EQUIP | 2000-08-03 | 03061650 | SLINGSHOT TABLE SLICER | 0380 | |
| WDPOM | STEQP | DELI EQUIP | 2000-12-02 | 03063091 | 8' GRV SERVICE DELI CASE | 0380 | 0011001490 |
| WDPOM | STEQP | DELI EQUIP | 2003-02-06 | 03069053 | 8 BLWR SERVICE DELI | 0380 | 0301000828 |
| WDPOM | STEQP | DELI EQUIP | 2003-02-06 | 03069058 | 8' PIZZA PREP/DISPLAY | 0380 | 0301000436 |
| WDPOM | STEQP | DELI EQUIP | 2003-03-14 | 03069143 | WATERLESS DELI CASE | 0380 | 116448 |
| WDPOM | STEQP | DELI EQUIP | 2004-06-11 | 03079474 | DELI CABINET W CURB & CHECK BO | 0380 | |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007899 | HILL FROZEN FOOD CASE | 0380 | 473008 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007900 | HILL FROZEN FOOD CASE | 0380 | 473009 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007901 | HILL FROZEN FOOD CASE | 0380 | 473010 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007901 | HILL FROZEN FOOD CASE | 0380 | 473011 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007902 | HILL FROZEN FOOD CASE | 0380 | 473012 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007903 | HILL FROZEN FOOD CASE | 0380 | 473013 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007904 | HILL FROZEN FOOD CASE | 0380 | 463738 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007905 | HILL FROZEN FOOD CASE | 0380 | 471198 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007906 | HILL FROZEN FOOD CASE | 0380 | 471198 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007907 | HILL FROZEN FOOD CASE | 0380 | 87439682 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007908 | HILL FROZEN FOOD CASE | 0380 | 455071 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007909 | HILL FROZEN FOOD CASE | 0380 | 473005 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007910 | HILL FROZEN FOOD CASE | 0380 | 473004 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007911 | HILL FROZEN FOOD CASE | 0380 | 473006 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007912 | HILL FROZEN FOOD CASE | 0380 | 473007 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007913 | HILL FROZEN FOOD CASE | 0380 | 463737 |
| WDPOM | STEQP | FF CASE | 1987-02-04 | 03007914 | HILL FROZEN FOOD CASE | 0380 | 471197 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WDPOM | STEQP | FF CASE | 2000-12-02 | 03063084 | 4 DR REACH-IN FF CASE | 0380 | 0011001324 |
| WDPOM | STEQP | FF CASE | 2000-12-02 | 03063085 | 4 DR REACH-IN FF CASE | 0380 | 0011001325 |
| WDPOM | STEQP | FF CASE | 2003-02-06 | 03069052 | REACH IN FROZEN FOOD | 0380 | 0301000256 |
| WDPOM | STEQP | FF CASE | 2003-02-13 | 03069048 | 12' TWIN ISLAND FF/IC | 0380 | 0301000047 |
| WDPOM | STEQP | FF CASE | 2003-02-13 | 03069049 | 12' TWIN ISLAND FF/IC | 0380 | 0301000048 |
| WDPOM | STEQP | FF CASE | 2003-02-13 | 03069050 | 12' TWIN ISLAND FF/IC | 0380 | 0301000053 |
| WDPOM | STEQP | FF CASE | 2003-02-13 | 03069051 | 12' TWIN ISLAND FF/IC | 0380 | 0301000064 |
| WDPOM | STEQP | FF CASE | 2003-02-20 | 03069874 | WIDE ISLAND FROZEN END | 0380 | 0301000045 |
| WDPOM | STEQP | FF CASE | 2003-02-20 | 03069875 | 8' TWIN ISLAND FF/IC | 0380 | 0301000046 |
| WDPOM | STEQP | FF CASE | 2003-02-20 | 03069876 | 8' TWIN ISLAND FF/IC | 0380 | 0301000049 |
| WDPOM | STEQP | FF CASE | 2003-02-20 | 03069877 | WIDE ISLAND FREEZER END | 0380 | 0301000050 |
| WDPOM | STEQP | FF CASE | 2003-02-20 | 03069878 | WIDE ISLAND FREEZER END | 0380 | 0301000051 |
| WDPOM | STEQP | FF CASE | 2003-02-20 | 03069879 | 8' TWIN ISLAND FF/IC | 0380 | 0301000052 |
| WDPOM | STEQP | FF CASE | 2003-02-20 | 03069880 | 8' TWIN ISLAND FF/IC | 0380 | 0301000055 |
| WDPOM | STEQP | FF CASE | 2003-02-20 | 03069881 | WIDE ISLAND FREEZER END | 0380 | 0301000056 |
| WDPOM | STEQP | FF CASE | 2004-07-22 | 03079910 | HILL FROZEN FOOD CASE | 0380 | 473498 |
| WDPOM | STEQP | FF CASE | 2004-07-22 | 03079915 | HILL FROZEN FOOD FOOD CASE | 0380 | 470005 |
| WDPOM | STEQP | FF CASE | 2004-07-22 | 03079916 | HILL FROZEN FOOD CASE | 0380 | 463138 |
| WDPOM | STEQP | FLORAL | 1997-06-25 | 03046894 | LILY PAD | 0380 | 914984CA079313 |
| WDPOM | STEQP | FLORAL | 1997-06-25 | 03046895 | LILLY PAD | 0380 | 914984CA079314 |
| WDPOM | STEQP | FLORAL | 1997-06-25 | 03046896 | FLORAL REFRG. | EDMFC 0380 | 914984CA079709 |
| WDPOM | STEQP | FLORAL | 2003-01-31 | 03069060 | 6' OPEN FLORAL DISPLAY | 0380 | AG108943 |
| WDPOM | STEQP | FLORAL | 2003-01-31 | 03069061 | 3 DOOR FLORAL CASE | 0380 | AG108934 |
| WDPOM | STEQP | FLORAL | 2003-03-31 | 03070588 | FLORAL STATION | 0380 | |
| WDPOM | STEQP | FLORAL | 2003-04-30 | 03071165 | SLATWALL-FLORAL STATION | 0380 | |
| WDPOM | STEQP | FLORAL | 2003-06-20 | 03072530 | CENTER FLORAL DISPLAY | 0380 | |
| WDPOM | STEQP | FLORAL | 2003-06-20 | 03072531 | CENTER FLORAL DISPLAY | 0380 | |
| WDPOM | STEQP | FRTN SCALE | 1996-12-11 | 03044520 | ULTIMA CONTROL PANEL | 0380 | 311098865 |
| WDPOM | STEQP | GRINDERS | 2001-01-05 | 03063096 | HOBART GRINDER | 0380 | 27-187-805 |
| WDPOM | STEQP | ICE MAKER | 1994-09-21 | 03028127 | HOSHIZAKI FLAKE ICE MACHINE | EDMFC 0380 | D10822F |
| WDPOM | STEQP | ICE MAKER | 1995-07-26 | 03032806 | FOLLET ICE BIN | EDMFC 0380 | 57749 |
| WDPOM | STEQP | ICE MAKER | 1995-07-26 | 03032807 | FOLLET ICE BIN | EDMFC 0380 | 57732 |
| WDPOM | STEQP | ICE MAKER | 1997-01-08 | 03044674 | STAR ICE MERCHANDISER | 0380 | 96K00149 |
| WDPOM | STEQP | ICE MAKER | 1997-04-30 | 03046399 | ICE MACHINE | EDMFC 0380 | F14277L |
| WDPOM | STEQP | ICE MAKER | 1997-04-30 | 03046400 | ICE BIN | 0380 | |
| WDPOM | STEQP | ICE MAKER | 1997-06-25 | 03046883 | ICE MACHINE | EDMFC 0380 | G03302A |
| WDPOM | STEQP | ICE MAKER | 1997-06-25 | 03047185 | ICE MACHINE | EDMFC 0380 | F142776 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WDPOM | STEQP | MEAT CASE | 1997-04-30 | 03046502 | MEAT CASE | 0380 | 030453670 |
| WDPOM | STEQP | MEAT CASE | 1997-04-30 | 03046504 | MEAT CASE | 0380 | 030453672 |
| WDPOM | STEQP | MEAT CASE | 1997-04-30 | 03046505 | MEAT CASE | 0380 | 030453673 |
| WDPOM | STEQP | MEAT CASE | 1997-04-30 | 03046507 | MEAT CASE | 0380 | 030453675 |
| WDPOM | STEQP | MEAT CASE | 1997-06-25 | 03047186 | MEAT SPOT CASE | 0380 | 487987 |
| WDPOM | STEQP | MEAT CASE | 1997-06-25 | 03047187 | MEAT SPOT CASE | 0380 | 487985 |
| WDPOM | STEQP | MEAT CASE | 1997-10-15 | 03048465 | KW DUAL TEMP SELF-CONT.SPOTMER | 0380 | 030658796 |
| WDPOM | STEQP | MEAT CASE | 1997-10-15 | 03048466 | KW DUAL TEMP SELF-CONT.SPOTMER | 0380 | 030658794 |
| WDPOM | STEQP | MEAT CASE | 1997-10-15 | 03048467 | KW DUAL TEMP SELF-CONT.SPOTMER | 0380 | 030658795 |
| WDPOM | STEQP | MEAT CASE | 2000-12-02 | 03063088 | 8' SGL DECK FRZN MEAT CASE | 0380 | 001000319 |
| WDPOM | STEQP | MEAT CASE | 2003-02-06 | 03069059 | 8' SGL DECK FRZN MEAT | 0380 | 001000187 |
| WDPOM | STEQP | MEAT CASE | 2003-02-14 | 03069043 | 8' HILL LUNCH MEAT CASE | 0380 | 37524 |
| WDPOM | STEQP | MEAT SAWS | 1998-07-22 | 03055482 | MEAT SAW | 0380 | 271070286 |
| WDPOM | STEQP | MISC | 1989-01-11 | 03010597 | SL 5000 SPEED-LIFTS | 0380 | |
| WDPOM | STEQP | MISC | 1990-11-14 | 03014385 | BUILD STORE FIXTURES/STEP ENDS | 0380 | |
| WDPOM | STEQP | MISC | 1992-10-14 | 03020958 | MART CART | 0380 | |
| WDPOM | STEQP | MISC | 1993-11-17 | 03025078 | CCTV DOMES | 0380 | 29816 |
| WDPOM | STEQP | MISC | 1997-04-30 | 03046415 | BAKERY SIGN | 0380 | 915413DA081014 |
| WDPOM | STEQP | MISC | 1997-04-30 | 03046424 | BAKERY SIGN | 0380 | 915413DA081015 |
| WDPOM | STEQP | MISC | 1997-05-28 | 03046627 | SIGN KIT | 0380 | |
| WDPOM | STEQP | MISC | 1997-08-20 | 03047490 | KW CONTACTOR SIZE 3 | 0380 | |
| WDPOM | STEQP | MISC | 1997-09-17 | 03047970 | 12" SELECT CUTS INTERIOR NEON | 0380 | |
| WDPOM | STEQP | MISC | 1997-12-10 | 03049516 | CIP DECOR PACKAGE | 0380 | |
| WDPOM | STEQP | MISC | 1998-04-01 | 03051711 | CHECK POINT SYSTEM ACCESSORIES | 0380 | |
| WDPOM | STEQP | MISC | 2000-01-04 | 03060956 | DRINKING FOUNTAIN | 0380 | |
| WDPOM | STEQP | MISC | 2000-01-25 | 03061088 | MISTING SYSTEM | 0380 | |
| WDPOM | STEQP | MISC | 2003-04-30 | 03070695 | 16 CH SWEATMISER | 0380 | 4871 |
| WDPOM | STEQP | MISC | 2003-07-30 | 03072983 | ALUMINUM WATER RACK DISPLAY | 0380 | |
| WDPOM | STEQP | MISC | 2004-06-01 | 03078985 | 11 GAL. WATERBOY | 0380 | |
| WDPOM | STEQP | MISC | 2004-06-07 | 03079144 | HUMIDITY FOGGER | 0380 | 30761 |
| WDPOM | STEQP | MISC | 2004-06-07 | 03079145 | HUMIDITY FOGGER | 0380 | 30749 |
| WDPOM | STEQP | NRG EQUIP | 1996-07-24 | 03039897 | CONTROL PANEL BOARD | 0380 | |
| WDPOM | STEQP | ORDER SYS | 1998-09-16 | 03056127 | DSD DESKS | 0380 | |
| WDPOM | STEQP | PA SYSTEM | 1997-11-12 | 03049202 | 100W AMPLIFIER | 0380 | 855 |
| WDPOM | STEQP | PHARMACY | 1987-11-11 | 03090053 | PHARMACY CABINET | 0380 | N/A |
| WDPOM | STEQP | PRODUCE | 1994-11-16 | 03071605 | WARR PROD CASE-19042-17046-190 | 0380 | 060770444 |
| WDPOM | STEQP | PRODUCE | 1994-11-16 | 03071606 | WARR PROD CASE-19042-17046-190 | 0380 | 060770437 |

| | | | | | | |
|---|---|---|---|---|---|---|
| WDPOM | STEQP | PRODUCE | 1994-11-16 | 03071607 | WARR PROD CASE-19042-17046-190 | |
| WDPOM | STEQP | PRODUCE | 1994-11-16 | 03071608 | WARR PROD CASE-19042-17046-190 | |
| WDPOM | STEQP | PRODUCE | 2001-01-05 | 03063093 | HUSSMAN DAIRY SPOT CASE | 0380 | 060770438 |
| WDPOM | STEQP | PRODUCE | 2001-01-05 | 03063094 | HUSSMAN DAIRY SPOT CASE | 0380 | 060770439 |
| WDPOM | STEQP | PRODUCE | 2001-01-05 | 03063095 | HUSSMAN DAIRY SPOT CASE | 0380 | 9433-0728 |
| WDPOM | STEQP | PRODUCE | 2003-01-07 | 03068323 | PRODUCE FENCING | 0380 | 9433-0724 |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069012 | "A" SHAPED END CAP | 0380 | 9433-0733 |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069013 | "A" SHAPED END CAP | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069014 | "A" SHAPED END CAP | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069015 | "A" SHAPED END CAP | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069016 | 74X18 ORCHARD BIN EXTENDER | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069017 | 74X18 ORCHARD BIN EXTENDER | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069018 | 3 X 6 IVORY ORCHARD BIN | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069019 | 3 X 6 IVORY ORCHARD BIN | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069020 | 6 X 6 IVORY ORCHARD BIN | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069021 | 6 X 6 IVORY ORCHARD BIN | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069022 | 6 X 6 IVORY ORCHARD BIN | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069023 | 6 X 6 IVORY ORCHARD BIN | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069024 | 6 X 6 IVORY ORCHARD BIN | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069025 | 6 X 6 IVORY ORCHARD BIN | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-02-07 | 03069026 | 6 X 9 IVORY ORCHARD BIN | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-03-18 | 03071307 | PRODUCE MISTING | 0380 | |
| WDPOM | STEQP | PRODUCE | 2003-04-03 | 03071843 | PRODUCE CASE | 0380 | 060770739 |
| WDPOM | STEQP | PRODUCE | 2004-07-09 | 03080212 | ORCHARD BIN SET | 0380 | |
| WDPOM | STEQP | REGISTERS | 1998-07-22 | 03055717 | IBM RISC REGISTER UPGRADE | 0380 | N/A |
| WDPOM | STEQP | SAFES | 1995-05-03 | 03031668 | SAFE | 0380 | 449770 |
| WDPOM | STEQP | SCALES | 1997-06-25 | 03046996 | SCALE P.C BOARD | 0380 | |
| WDPOM | STEQP | SCALES | 1997-06-25 | 03046997 | SCALE P.C. BOARD | 0380 | |
| WDPOM | STEQP | SCALES | 1999-05-26 | 03059180 | QUANTUM SCALE PRINTER | 0380 | BU1017068 |
| WDPOM | STEQP | SCALES | 1999-05-26 | 03059301 | QUANTUM SCALE PRINTER | 0380 | 31-1176-882 |
| WDPOM | STEQP | SEAFOOD | 1986-07-23 | 03007567 | FISH COOLER | 0380 | 5802-8 |
| WDPOM | STEQP | SEAFOOD | 2000-12-02 | 03063089 | 8' SEAFOOD CASE | 0380 | 0011001488 |
| WDPOM | STEQP | SEAFOOD | 2000-12-02 | 03063090 | 8' SEAFOOD CASE | 0380 | 0011001490 |
| WDPOM | STEQP | SEAFOOD | 2001-01-10 | 03063140 | LOBSTER TANK FILLER | 0380 | |
| WDPOM | STEQP | SEAFOOD | 2001-01-11 | 03063146 | 27 X 50 X 55 SEAFOOD DISPLAY | 0380 | |
| WDPOM | STEQP | SEAFOOD | 2001-01-25 | 03063531 | 8' ICELESS SEAFOOD KIT | 0380 | |
| WDPOM | STEQP | SEAFOOD | 2004-06-07 | 03079121 | 8FT LOW PROF SEAFOOD CASE | 0406000027 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WDPOM | STEQP | SHELVING | 1987-02-04 | 03007946 | MADIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 1987-02-04 | 03007989 | MADIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 1987-02-04 | 03008128 | MADIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 1987-09-16 | 03008846 | MADIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 1990-11-14 | 03014390 | MADIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 1993-08-25 | 03024256 | OAK BREAD SHELF | 0380 | |
| WDPOM | STEQP | SHELVING | 1993-08-25 | 03024257 | OAK BREAD SHELF | 0380 | |
| WDPOM | STEQP | SHELVING | 1993-08-25 | 03024258 | OAK BREAD SHELF | 0380 | |
| WDPOM | STEQP | SHELVING | 1995-03-08 | 03030910 | SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 1997-07-23 | 03047275 | MADIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 1997-08-20 | 03047502 | MADIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 1997-08-20 | 03047718 | MEDIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 1997-09-17 | 03047890 | SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 2001-08-15 | 03064362 | SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 2002-10-09 | 03067237 | MADIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 2003-01-10 | 03068154 | T-TOP SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 2003-02-28 | 03070385 | MADIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 2003-03-27 | 03070124 | SHELVING IN BANK AREA | 0380 | |
| WDPOM | STEQP | SHELVING | 2004-06-30 | 03079341 | MADIX SHELVING | 0380 | |
| WDPOM | STEQP | SHELVING | 2004-10-22 | 03082618 | SHELVING RESET | 0380 | |
| WDPOM | STEQP | SIGNS | 2003-12-11 | 03075313 | 3' WINN DIXIE SILHOUETTE | 0380 | |
| WDPOM | STEQP | SIGNS | 2005-05-31 | 03087610 | ARCHED FRESH MEAT SIGNS | 0380 | N/A |
| WDPOM | STEQP | SIGNS/LTRS | 1987-02-04 | 03007753 | WINN DIXIE SIGN | 0380 | |
| WDPOM | STEQP | SIGNS/LTRS | 1993-08-25 | 03024308 | 2' WINN DIXIE | 0380 | |
| WDPOM | STEQP | SIGNS/LTRS | 1993-08-25 | 03024309 | 3' MARKETPLACE | 0380 | |
| WDPOM | STEQP | SIGNS/LTRS | 1994-02-09 | 03025973 | BRITELITE EXTERIOR ENTRANCE SI | 0380 | |
| WDPOM | STEQP | SIGNS/LTRS | 2004-09-24 | 03081036 | PYLON SIGN | 0380 | |
| WDPOM | STEQP | SIGNS/LTRS | 2004-09-24 | 03081037 | PYLON SIGN | 0380 | |
| WDPOM | STEQP | SIGNS/LTRS | 2004-09-24 | 03081038 | PYLON SIGNS | 0380 | |
| WDPOM | STEQP | SLICERS | 1987-09-16 | 03008822 | HOBART SLICER | 0380 | |
| WDPOM | STEQP | SLICERS | 1987-09-16 | 03008825 | HOBART SLICER | 0380 | 56849749 |
| WDPOM | STEQP | SLICERS | 1990-08-22 | 03014045 | BERKEL BREAD SLICER | 0380 | 56649810 |
| WDPOM | STEQP | TIME CLOCK | 1990-05-30 | 03013629 | BURR-BROWN TIME CLOCK | 0380 | 00470 |
| WDPOM | STEQP | WALK-INS | 1986-07-23 | 03007560 | DAIRY COOLER | 0380 | 5802-1 |
| WDPOM | STEQP | WALK-INS | 1986-07-23 | 03007561 | FOOD FREEZER | 0380 | 5802-2 |
| WDPOM | STEQP | WALK-INS | 1986-07-23 | 03007562 | ICE CREAM FREEZER | 0380 | 5802-3 |
| WDPOM | STEQP | WALK-INS | 1986-07-23 | 03007563 | PRODUCE COOLER | 0380 | 5802-4 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| WDPOM | STEQP | WALK-INS | 1986-07-23 | 03007564 | MEAT COOLER | 0380 | 5802-5 |
| WDPOM | STEQP | WALK-INS | 1986-07-23 | 03007565 | MEAT CUTTING ROOM | 0380 | 5802-6 |
| WDPOM | STEQP | WALK-INS | 1986-07-23 | 03007566 | MEAT FREEZER | 0380 | 5802-7 |
| WDPOM | STEQP | WALK-INS | 1986-07-23 | 03007570 | RETARD COOLER | 0380 | 5802-11 |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03046240 | KYSOR I/C FREEZER | 0380 | |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03046241 | KYSOR FF | 0380 | D97D01961 |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03046242 | KYSOR FF | 0380 | D97D01962 |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03046243 | KYSOR DAIRY | 0380 | D97D01964 |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03046244 | KYSOR DAIRY | 0380 | D97D01963 |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03046245 | KYSOR PRODUCE FZER | 0380 | D97D01965 |
| WDPOM | STEQP | WALK-INS | 1997-04-30 | 03046246 | KYSOR PRODUCE | 0380 | D97D01966 |
| WDPOM | STEQP | WALK-INS | 1997-09-17 | 03047892 | COOLER DOOR | 0380 | |
| WDPOM | STEQP | WALK-INS | 1997-09-17 | 03047893 | COOLER DOOR | 0380 | |
| WDPOM | STEQP | WALK-INS | 1997-09-17 | 03047894 | COOLER DOOR | 0380 | |
| WDPOM | STEQP | WRAPPERS | 1996-12-11 | 03044522 | HOBART HAND WRAP STATION | 0380 | |
| WDPOM | STEQP | WRAPPERS | 1997-05-28 | 03046637 | PRODUCT WRAPPER | 0380 | 051007820 |

EXHIBIT H
To Asset Purchase Agreement

Schedule of Permitted Encumbrances

1.     Taxes and assessments of any taxing authority that levies taxes or assessments on real property for the year 2006 and subsequent years.

2.     All applicable laws, ordinances, and regulations imposed by any applicable governmental authority, including, but not limited to, all applicable building, zoning, land use and environmental ordinances and regulations.

3.     Rights or claims of parties in possession, boundary line disputes, overlaps, encroachments, and any other matters which would be disclosed by an accurate survey and inspection of the Leased Premises, including but not limited to all matters shown or set forth on any survey, site plan or Environmental Report.

4.     Rights of Landlords under the Leases, including the rights of any Landlord's mortgagee.

5.     Rights of Subtenants under the Subleases.

6.     All matters set forth as exceptions in the Title History or the site plans, other than Monetary Liens.

7.     All other matters not set forth in the Title History that are set forth as exceptions in the Title Commitments, other than Monetary Liens.

**Note to Buyer:  Buyer has limited rights to object to certain matters set forth in the Title Commitments pursuant to paragraphs 4.2 and 4.4 of the Asset Purchase Agreement.**

8.     All other restrictions, reservations, covenants, agreements, easements, limitations and other matters appearing of record as of the date of this Agreement, other than Monetary Liens, and which do not, individually or in the aggregate, interfere in a material and adverse way with the present use of or occupancy of the affected Store.

Exhibits to Asset Purchase Agreement
Winn-Dixie Stores, Inc. s/t
Fine Foods Gourmet Markets, Inc.
Store Nos. 202 & 380
August 29, 2006
SGRJAX\92469.1