# LEASE

THIS LEASE, made this __1st__ day of __November__, 19 __73__

between ___D. D. I., INC., a Florida corporation,___

_____

_____ (hereinafter called "Landlord"),

and ___WINN-DIXIE STORES, INC., a Florida corporation,___

_____ (hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

## WITNESSETH:

**PREMISES**

That the Landlord, in consideration of the rents herein reserved and of the covenants of the Tenant, does hereby lease and demise unto the Tenant, for the term hereinafter specified, the following described land and improvements thereon:

That certain piece, parcel or tract of land located at __1625 Cordova Road__

in the City of __Fort Lauderdale__, County of __Broward__,

State of __Florida__, more particularly described as:

The North 362.12 feet of the East 325.0 feet of Block 5 of "HERZFELD'S ADDITION TO LAUDERDALE HARBORS", according to the plat thereof recorded in Plat Book 35, at Page 22, of the Public Records of Broward County, Florida.

EXCEPTING from the above described premises that certain storeroom and the land on which it stands demised by Dade Business Locations, Inc., as landlord, to Superx Drugs of Florida, Inc., an Ohio corporation, as tenant, by Lease (unrecorded) dated April 10, 1963, and Lease Agreement dated April 25, 1963, recorded in Official Records Book 2601, pages 901-904, of Broward County, Florida, as amended March 24, 1964, January 24, 1968 and May 3, 1973, the interest of the landlord therein now being vested in D. D. I., Inc., and subject to such rights and easements in the herein demised premises as said Superx Drugs of Florida, Inc. has under its said Lease and Lease Agreement, as amended.

Together with a store building, approximately __184.4__ feet in width by __146__

feet in depth (overall dimensions)_____

parking area, sidewalks, service areas and other improvements ~~there~~ constructed thereon ~~[illegible struck-through text]~~

/D 33-13

This instrument was prepared by Francis P. Hamilton, Attorney-at-Law, whose address is 5050 Edgewood Court, Jacksonville, Florida 32205

ERM FOR THE TENANT TO HAVE AND TO HOLD for an initial term of fifteen (15) years commencing on December 1, 1973 and expiring at midnight on November 30, 1988.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

RENTAL 1. The Tenant agrees to pay to the Landlord as rental for the demised premises during the term of this lease, and any extensions thereof, the sum of  Twenty-eight Thousand

, Fifty-six and no/100----------------------------------------Dollars

($ 28,056.00 ) per annum. The rental shall be paid in twelve (12) equal monthly

installments of  Two Thousand Three Hundred Thirty-eight and no/100---

Dollars ($ 2,338.00 ) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof. Rent for fractional years and fractional months at the beginning and end of the term shall be pro-rated on the basis of the annual rate. The first monthly payment of rent shall be due on the first day of the next succeeding calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month.

SE 2. The demised premises may be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to, foods and food products, or for the conduct of any general mercantile business.

Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of said premises, as such shall relate to the cleanliness and use of said premises and the character and manner of operation of the business conducted in or at said premises.

ITIONAL 3. As more particularly set forth in Paragraph 12 hereof, the
TAL Landlord agrees to pay all taxes and assessments levied or assessed against the entire shopping center, including the demised premises. Tenant agrees to reimburse Landlord as additional rent Tenant's pro rata share of all such taxes and assessments levied or assessed against the entire shopping center within thirty (30) days after the Landlord shall mail or deliver to Tenant at the address of Tenant herein provided for the giving of notices to Tenant, a true copy of the receipt for payment thereof by Landlord; provided, however, upon timely request made by Tenant to Landlord, the Landlord shall undertake on behalf of Tenant and at Tenant's expense to contest said taxes and assessments or the validity thereof. Tenant's pro rata share of the taxes and assessments covering the entire shopping center shall be computed by multiplying the total payments by Landlord for such taxes and assessments for the shopping center by a fraction, the numerator of which is the total square foot area of the building improvements occupied by Tenant hereunder, and the denominator of which is the total square foot area of all building improvements located in the shopping center during the period for which such payments have been made.

-2-

REPAIRS,
MAINTE-
NANCE,
LIGHTING

4.  It is mutually convenanted and agreed:

(a)  It is agreed by Tenant that throughout the initial term hereby granted and any extension or renewal thereof, Tenant will take good care of the demised premises and appurtenances and suffer no waste or injury; make all repairs to improvements, structural and otherwise, both inside and outside, in and about the demised premises and fixtures and appurtenances, necessary to pre-serve the same in good order and condition, which repairs shall be, in quality and class, equal to the original work; and repair, at or before the end of the initial term or any extension or renewal thereof, all injury done by the installation or removal of furniture and property.

(b)  Landlord agrees to cause the common areas of the shopping center, including parking lot, sidewalks and service areas, to be kept in good and tenantable repair during the term of this lease and any extension or renewal thereof, but Landlord shall not be responsible for routine sweeping, cleaning or policing of the common areas.  Tenant agrees to keep the sidewalks, service drives and parking areas in front of and adjoining the demised premises cleared and free from rubbish, and Landlord shall require all other tenants in the shopping center to keep the sidewalks, service drives and parking areas in front of and adjoining their respective leased premises cleared and free from rubbish.  Tenant further agrees to cooperate with all other tenants in the shopping center in the overall cleaning and policing of the common areas of the shopping center.

(c)  Tenant further agrees to pay a pro rata share of the total costs of maintenance, repair and lighting of the common areas, including parking area, sidewalks and service areas, of the shopping center throughout the term of this lease and any extension or renewal thereof.  Tenant's pro rata share of said total costs of maintenance, repair and lighting of the common areas shall be com-puted by multiplying said total costs by a fraction, the numerator of which is the total square foot area of the building improvements occupied by Tenant hereunder, and the denominator of which is the total square foot area of all building improvements located in the shopping center during the period for which such costs are incurred.

UTILITIES

5.  Tenant agrees to pay all charges for telephone, gas, electricity, water and all other utilities used by Tenant on the premises, and the Landlord agrees to provide access to such utilities at all times during the term of this lease and any extension thereof.

-3-

ANCING
LANDLORD

6. It is further mutually understood and agreed that if the Landlord should desire to borrow, or have heretofore borrowed, funds in connection with the financing of Landlord's investment in the demised premises, or any part thereof, the Landlord may assign to the lender of any such funds the rentals to become due hereunder to secure repayment of the amount so borrowed with interest and, so long as such loan remains unpaid, Tenant will not, without the written consent of the lender, cause or permit any termination of this lease before the end of the demised term or any renewal term for which option has been exercised, or withhold or reduce the amounts of rental payments specified herein for any cause whatsoever and notwithstanding any other provisions of this lease. It is understood and agreed, however, that subject to all rights of said lender as above provided, this provision shall not constitute any waiver by the Tenant of any of its rights against the Landlord or in respect to the demised premises under this lease, and if the Tenant shall ever be required to continue rental payments under any circumstances in which the Tenant would have the right otherwise to terminate this lease or abate the rent hereunder, thereupon the Tenant in addition to other remedies shall have the continuing right to immediate reimbursement from the Landlord for the full amount of the rent so paid, plus interest on every such payment after date thereof at the rate of eight percent (8%) per annum, less any sums which the Tenant may have received during the period of such payment from any subletting or assignment of the premises (if the same be sublet or assigned), or less the reasonable use value of the premises or of such part thereof as may be, in fact, used during such period by the Tenant (if the same be used by the Tenant).

FIXTURES
AND
ALTERATIONS

7. The Tenant, at its own expense, may from time to time during the term of this lease make any alterations, additions and improvements in, on and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease. In no event shall Landlord or any of Landlord's property be liable for or chargeable with any expense or lien for work, labor or materials used in the premises or in any improvement, repair or change thereof at the request of or upon the order of or to discharge the obligation of Tenant.

Tenant may construct and build or install in said premises any and all signs, racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which signs, racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

## PARAGRAPH 8 IS OMITTED IN ITS ENTIRETY.

INDEMNIFICATION

9. The Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of accident or damage to any person or property happening on or about the demised premises, except in case of accident or damage caused by the fault or negligence of Landlord, its servants, agents or employees. Tenant further agrees to carry, at its own expense, public liability insurance coverage on the demised premises in a company qualified to transact business in the state in which the demised premises are located, stipulating limits of liability of not less than $100,000 for an accident affecting any one person; and not less than $300,000 for an accident affecting more than one person; and $25,000 property damage. Likewise, Tenant shall indemnify and save harmless the Landlord from any claim or loss by reason of an accident or damage to any person or property happening on or about all common area (including parking area) of the shopping center, except in case of accident or damage caused by the fault or negligence of Landlord, its servants, agents or employees.

RE

10. In the event that the demised premises shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty, then either party may elect within thirty (30) days after such damage to terminate this lease by giving to the other a written

notice of termination, and th[...]in both parties shall stand released of and from[...] further liability under this lease. If t[...] aised premises shall thereby suffer damage to any extent less than 75% of the value thereof, or if neither party has elected to terminate as aforesaid, then the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored.

The Landlord shall maintain in force insurance against loss or damage by fire to the store building leased to Tenant hereunder with extended coverage up to the insurable value thereof above foundation walls. Tenant hereby agrees to pay the Landlord upon demand the total premium cost of such insurance coverage.

Landlord and Tenant, and each of them, hereby expressly waives any rights each may have against the other on account of any loss or damage occasioned to either party, their respective properties or the building and related improvements upon the demised premises, arising out of a casualty generally covered by fire and extended coverage insurance, and both Landlord and Tenant agree to have their respective insurance companies insuring the property of either the Landlord or Tenant against any such loss, waive any right of subrogation that it may have against the Landlord or Tenant, as the case may be.

except as herein otherwise stated,

**UNIT**
**ENJOYMENT**

11. The Landlord/covenants, warrants, and represents that upon commencement of the lease term, the demised premises will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

The Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a general mercantile business, including parking in conjunction therewith, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting the Tenant from conducting a general mercantile business, including parking in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

demised and the entire shopping center
of which the demised premises are a part,

**[ES]**
**[IS]**

12. All taxes, assessments, and charges on land or improvements and obligations secured by mortgage or other lien upon the premises shall be promptly paid by Landlord when due. The Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at six per cent (6%) per annum.

**DEMNATION**

13. If any part of the store building located on the demised premises be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in

lieu thereof, or in the event that any portion in excess of ___ten___ per cent (10 %) of the overall parking area constructed for Tenant's use on the demised premises be so taken, or in the event that any portion of the demised premises (including parking area) be so taken so as to interfere materially or substantially with the conduct of Tenant's business in the demised premises, then in any such event, the Tenant shall be entitled to termination of this

-5-

lease at its option, and any internal rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease as above provided, or in the event of any taking which does not permit a termination by the Tenant, the Landlord shall promptly restore the premises to a condition comparable to the condition at the time of taking, and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances.

Landlord reserves to itself, and Tenant assigns to Landlord, all rights to damages, accruing on account of any such taking or condemnation or by reason of any act of any public or quasi-public authority for which damages are payable. It is agreed and understood, however, that Landlord does not reserve to itself, and Tenant does not assign to Landlord, any damages payable for trade fixtures installed by Tenant at its own cost and expense and which are not part of the realty.

**DEFAULT**

14. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but the Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default.

**BANKRUPTCY**

15. The Tenant further covenants and agrees that if, at any time, the Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease at an end and shall forthwith be entitled to immediate possession of the premises.

the agent in any sense of the Tenant in constructing said improvements, and that the Tenant shall have no control or authority over the construction of said improvements beyond the right to reject the tender of the premises for the causes herein stated. The Tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractors, or any of their subcontractors, employees, agents or servants by reason of Landlord constructing said improvements pursuant to the terms of this lease. Landlord shall indemnify and save Tenant harmless from and against all claims and suits for damages to person or property from defects in material or from the use of unskilled labor or from any negligence caused by Landlord, Landlord's contractors or by any of their employees, agents or servants during the progress of the work in constructing said improve-

**EXCLUSIVE SUPERMARKET**

17. The Landlord agrees that, if it owns or controls any property located within five hundred (500) feet of the demised premises, it will not, without the written permission of the Tenant,

directly or indirectly, lease or re[...]ch property to any person, firm or corporation to be used for or occupied by any business [...]g in or which shall keep in stock or sell any staple or fancy groceries, meats, fish, fruits, vegetables, dairy products, bakery goods, or frozen foods; nor will the Landlord permit any tenant of any such property to sublet in any manner, directly or indirectly, any such property to any person, firm or corporation to be used for or occupied by any business dealing in or which shall keep in stock or sell any of the above listed items. .

**NUISANCES**

18. The Tenant agrees that the leased demised premises or any portion thereof shall not be used for any illegal or unlawful purpose, and that the Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon.

**EXTENSIONS**

19. It is further agreed that Tenant, at its option, shall be entitled to the privilege of _____five_____ ( 5 ) successive extensions of this lease, each extension to be for a period of _____five_____ ( 5 ) years and on the same terms and conditions and at the same _____rental as provided for the initial lease term._____

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least _____one (1) year_____ before the expiration of the initial term, and if extended, at least _____one (1) year_____ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

**[CES]**

20. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail to, and all rent payments shall be made to Landlord at, _____P. O. Box 2088, Jacksonville, Florida 32203,_____

or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by certified or registered mail.

All notices required to be given to Tenant shall be sent by registered or certified mail to the Tenant at _____P. O. Box 352, Biscayne Annex, Miami, Florida 33152,_____ .

or to such other address as Tenant may from time to time direct by written notice forwarded to Landlord by registered or certified mail.

**21.** The Tenant will yield up the [...] said premises and all additions thereto (except [...] by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted. ████████████████████████████████████

**22.** In the event there should arise any misunderstanding between the parties hereto as to the compliance with the terms and conditions of this lease upon the part of either of the parties hereto, ████████████████████████████████████████████████ or as to whether either party has ground hereunder entitling it to terminate this lease, it is mutually agreed that such differences, if they cannot be satisfactorily adjusted between the parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties hereto agree upon one; otherwise, to a board of three arbitrators, of whom one shall be selected by each party within ten (10) days after such 30-day period, and a third person shall be selected by these two; and the decision and award of such single arbitrator if only one is used, or any two of such board, if three are used, as the case may be, shall be final and binding upon the said parties and their successors and assigns respectively, and shall have the same force and effect as though such decision had been handed down by a court of final jurisdiction. Each of the parties hereto covenants to abide by any such arbitration decision.

**23.** The Tenant may without the consent of the Landlord assign or sublease or vacate the demised premises in whole or in part, provided, the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease.

**24.** The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

**25.** This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties.

-8-

**SHORT-FORM LEASE** ~~26. The Landlord agrees that a~~ time on request of the Tenant it will execute a short form of this lease in form permitting ~~ording.~~

**MARGINAL TITLES** 27. The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

**COMPLETE AGREEMENT** 28. This written lease contains the complete agreement of the parties with reference to the leasing of said property. ~~████████████████████████████████~~ ~~████████████████████████████████~~ No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

**RIOR EASE** 29.  This lease supersedes and takes the place of that certain Lease dated as of January 1, 1964, made by Dade Business Locations, Inc., as Landlord, to Winn-Dixie Stores, Inc., as Tenant, the interest of the Landlord therein now being vested by mesne assignments in Landlord herein, which Lease was amended by Lease Amendment and Extension dated July 25, 1968, and it is mutually agreed that the said Lease dated as of January 1, 1964, as amended July 25, 1968, be and the same is hereby terminated and canceled as of November 30, 1973.

    IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

D. D. I., INC.

By _____
    Its            Vice President

Attest: _____
    Its        Asst. Secretary

LANDLORD

(CORPORATE SEAL)

WINN-DIXIE STORES, INC.

By _____
    Its               President

Attest: _____
    Its             Secretary

TENANT

(CORPORATE SEAL)

-9-

STATE OF     FLORIDA      )

COUNTY OF    DUVAL      )

     I HEREBY CERTIFY that on this day, before me, an officer duly
authorized in the State and County aforesaid to take acknowledgments,

personally appeared     Thomas W. Bishop    and    H. J. DAKKAH
to me known to be the persons described in and who, respectively, as

Vice    President and   Asst.   Secretary of    D. D. I., INC.

                             , a    Florida             corporation, executed
the foregoing instrument on behalf of said corporation; and they
severally acknowledged before me that they executed said instrument as
such officers of said corporation in the name of and on behalf of said
corporation; that said   Asst.   Secretary affixed and attested the
seal of said corporation to said instrument; that such acts were done
by authority of said corporation for the uses and purposes in said
instrument set forth; and that the foregoing instrument is the free act
and deed of said corporation.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed
my official seal this \1st\ day of _____, 19 73 , at
       Jacksonville            , in said State and County.

       (Notarial Seal)                    _Virginia O. Chase_
                                     Notary Public, State and County
                                     aforesaid. My commission expires:

                                       _April 21, 1975_

---

STATE OF     FLORIDA      )

COUNTY OF    DUVAL      )

     I HEREBY CERTIFY that on this day, before me, an officer duly
authorized in the State and County aforesaid to take acknowledgments,

personally appeared _B. L. Thomas_ and _J. Bryan_ ,
to me known to be the persons described in and who respectively, as

           President and        Secretary of   WINN-DIXIE STORES, INC.

                             , a    Florida          corporation,
executed the foregoing instrument on behalf of said corporation; and they
severally acknowledged before me that they executed said instrument as
such officers of said corporation in the name of and on behalf of said
corporation; that said     Secretary affixed and attested the
seal of said corporation to said instrument; that such acts were done
by authority of said corporation for the uses and purposes in said
instrument set forth; and that the foregoing instrument is the free act
and deed of said corporation.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed
my official seal this /21 day of \_November\_, 19 73 , at
       Jacksonville            , in said State and County.

       (Notarial Seal)                    _[signature]_
                                     Notary Public, State and County
                                     aforesaid. My commission expires:
                                     NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
                                     MY COMMISSION EXPIRES APRIL 12 1976

05/04/94

## SECOND AMENDMENT TO LEASE AND SHORT FORM LEASE

THIS SECOND AMENDMENT TO LEASE AND SHORT FORM LEASE, made this

_5_ day of _May_ , 1994, between WILLIAM F. LAW, JR. AND THOMAS V.

CAUBLE, (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida

corporation, (hereinafter called "Tenant"), which terms "Landlord" and "Tenant" shall include,

wherever the context admits or requires, singular or plural, and the heirs, legal representatives,

successors and assigns of the respective parties;

### W I T N E S S E T H :

WHEREAS, by unrecorded Lease dated November 1, 1973, D.D.I., Inc., a Florida

corporation, as Landlord, did lease and demise unto Tenant those certain premises, in said Lease

more particularly described, located at 1625 Cordova Road, in the City of Ft. Lauderdale,

County of Broward and State of Florida, on the terms and conditions set forth in said Lease; and

WHEREAS, the interest of Landlord in said Lease passed to Thirteen Properties, Ltd.,

a Florida Limited Partnership, by Assignment of Lease dated March 14, 1974 and to Landlord

herein by virtue of Assignment dated December 28, 1982; and

WHEREAS, the term of the Lease has been extended by Tenant's renewal option

exercise notices dated November 9, 1987 and November 20, 1992, the latter document extending

the Lease term through November 30, 1998 upon certain conditions as set forth therein; and

WHEREAS, said Lease was amended by First Amendment to Lease dated February 1,

1993 providing for construction of an addition to Tenant's demised store building premises and

providing for further modifications to the Lease in consequence thereof; and

WHEREAS, the construction of the addition described in the said First Amendment to

Lease is completed and the parties desire to further amend the said Lease and provide for a

Short Form Lease so as to fix the effective date for the Lease modifications as set forth in the

said First Amendment to Lease;

WHEREAS, the parties desire to amend certain provisions of the said First Amendment

to Lease, as hereinafter set forth;

PPROVED
S TO FORM

visign Mgr.

egal Dept.  226.amd
-D.xie Stores,
Inc.

This instrument was prepared by
Charles P. Milford, Jr., Attorney -
at - Law whose address is P. O.
Box B, Jacksonville, Florida 32203

NOW THEREFORE, in consideration of the premises and the sum of Ten and NO/100 Dollars ($10.00) and other good and valuable considerations in hand paid by Tenant to Landlord, the receipt and sufficiency of which are hereby acknowledged, it is mutually agreed as follows:

1.  Article 9 appearing on page 5 of the said First Amendment to Lease is hereby amended by adding at the end thereof the following language:

> "A lien under Chapter 713, Florida Statutes, 1993 Edition, as modified, shall extend to, and only to, the right, title and interest of the Tenant. The interest of the Landlord or Landlord's mortgage lender shall not be subject to liens for improvements made by the Tenant and Tenant shall notify the contractor making any such improvements of such provision or provisions in the Lease."

2.  In accordance with the provisions of Article 10(b) of the said First Amendment to Lease, the duration of the fifteen (15) year extension of the current term of the Lease is hereby fixed as commencing on May 5, 1994 and expiring at midnight on May 4, 2009.

The five (5) year option extension periods granted Tenant in Article 10(c) of the said First Amendment to Lease shall follow, if exercised, upon the expiration of the fifteen (15) year extended lease term as hereinabove provided.

3.  The rental adjustment and all the other modifications of the Lease provided in Article 10 of the First Amendment to Lease are hereby established also to take effect as of May 5, 1994.

4.  The said First Amendment to Lease is hereby further amended by deleting the word "which" appearing in the last line of Article 10(h) appearing on page 10 thereof and by placing a period following the word "repairs" in the same line.

5.  It is mutually understood and agreed that the said Lease, except as the same as herein amended, shall be and remain in full force and unmodified except as the same as specifically modified and amended hereby. All covenants, terms, obligations and conditions of the said Lease, as previously amended, which are not modified or amended by this Second Amendment to Lease, are hereby ratified and confirmed.

**IN WITNESS WHEREOF**, the parties hereto have caused this instrument to be executed

the day and year first above written.

**Signed, sealed and delivered**
**in the presence of:**

Printed Name: PATRICIA A.
SYBELDON

_____ (SEAL)
WILLIAM E. LAW, JR.
Address: 135 Peachtree St., Suite 500
Atlanta, Georgia 30309

Printed Name:
PATRICIA A. SYBELDON
As to Landlord

_____ (SEAL)
THOMAS V. CAUBLE
Address: 135 Peachtree St., Suite 500
Atlanta, Georgia 30309

**LANDLORD**

Printed Name: Judy Mazes

**WINN-DIXIE STORES, INC.**

By _____
Its _____ President
Printed Name: James Kufeldt
Address: P. O. Box B
Jacksonville, Florida 32203-0297

Printed Name: Jane Elizabeth DeWitte

Attest _____
Its _____ Secretary
Printed Name: Wayne E. Ripley, Jr.
Address: P. O. Box B
Jacksonville, Florida 32203-0297

As to Tenant

**(CORPORATE SEAL)**

**TENANT**

3

STATE OF _Georgia_ )
COUNTY OF _Fulton_ )

The foregoing instrument was acknowledged before me this _May 5_____, 1994,
by **WILLIAM F. LAW, JR.** who is [please check] ✓ personally known to me or ____ who
has produced _____ as identification.

Given under my hand and official seal this _5th_ day of _May_____, 1994.

_____
Printed Name: _Carol Harris_

Notary Public, State and County
aforesaid.
My Commission expires: _____
Notary ID no.:_____ Notary Public, Cobb County, Georgia
                        My Commission Expires Feb. 21, 1998

(NOTARIAL SEAL)


STATE OF _Georgia_ )
COUNTY OF _Fulton_ )

The foregoing instrument was acknowledged before me this _May 5_____, 1994,
by **THOMAS V. CAUBLE**, who is [please check] ✓ personally known to me or ____ who
has produced _____ as identification.

Given under my hand and official seal this _5th_ day of _May_____, 1994.

_____
Printed Name: _Carol Harris_

Notary Public, State and County
aforesaid.
My Commission expires: Notary Public, Cobb County, Georgia
Notary ID no.:_____ My Commission Expires Feb. 21, 1998

(NOTARIAL SEAL)


STATE OF _Florida_ )
COUNTY OF _Duval_ )

The foregoing instrument was acknowledged before me this _May 9th_ 1994,
by ____James Kufeldt____ and ____Wayne E. Ripley, Jr.____
President and ____ Secretary, respectively, of **WINN-DIXIE STORES, INC.**, a Florida
corporation, on behalf of the corporation, who are personally known to me.

Given under my hand and official seal this _9th_ day of _May_____, 1994.

_____
Printed Name: _Jane Elizabeth DeWitte_

Notary Public, State and County
aforesaid.
My Commission expires:_____
Notary ID no.:_____

(NOTARIAL SEAL)

JANE ELIZABETH DeWITTE
My Comm. Exp. May 18, 1996
Comm. No. CC 201960

4

#226

FIRST AMENDMENT TO LEASE

THIS FIRST AMENDMENT TO LEASE, made this _1st_ day of
_February_, 1993, between WILLIAM F. LAW, JR.
AND THOMAS V. CAUBLE, (hereinafter called "Landlord") and WINN-
DIXIE STORES, INC., a Florida corporation, (hereinafter called
"Tenant"), which terms "Landlord" and "Tenant" shall include,
wherever the context admits or requires, singular or plural, and
the heirs, legal representatives, successors and assigns of the
respective parties;

W I T N E S S E T H :

WHEREAS, by Lease dated November 1, 1973, D.D.I., Inc., a
Florida corporation, as landlord, did lease and demise unto
Tenant those certain premises, in said Lease more particularly
described, located at 1625 Cordova Road, in the City of Ft.
Lauderdale, County of Broward and State of Florida, on the terms
and conditions set forth in said Lease; and

WHEREAS, the interest of Landlord in said Lease passed to
Thirteen Properties, Ltd., a Florida Limited Partnership, by
Assignment of Lease dated March 14, 1974 and to Landlord herein
by virtue of Assignment dated December 28, 1982; and

WHEREAS, the term of the Lease has been extended by Tenant's
renewal option exercise notices dated November 9, 1987 and
November 20, 1992, the latter document extending the Lease term
through November 30, 1998 upon certain conditions as set forth
therein; and

WHEREAS, the parties hereto have agreed to an enlargement of
Tenant's present demised store building, in consequence of which
the parties desire to make certain modifications to the Lease, as
hereinafter set forth;


APPROVED
S/...
...
...ivision Mgr.
Legal Dept.
Winn-Dixie Stores,
Inc.

This instrument was prepared by
Charles P. Mikford, Jr., Attorney-
at-Law whose address is P. O.
Box B, Jacksonville, Florida 32203

1/22/93

**NOW THEREFORE**, in consideration of the premises and the sum of Ten and No/100 Dollars ($10.00) and other good and valuable considerations in hand paid by Tenant to Landlord, the receipt and sufficiency of which are hereby acknowledged, it is mutually agreed as follows:

1. By virtue of substituting a new plot plan attachment to the Lease, for the purpose of graphically showing the contemplated enlargement of Tenant's store building, the Lease is amended by adding Exhibit "A" thereto the plot plan dated August 19, 1992, which is attached hereto as Exhibit "A" and by this reference made a part hereof.

(a) The legal description appearing on page 1 of the Lease dated November 1, 1973 is hereby amended by deleting therefrom the second paragraph beginning with the word "EXCEPTING".

2. Tenant, with the consent and approval of Landlord hereby evidenced, covenants and agrees to proceed at its own cost and expense (with partial reimbursement from Landlord as hereinafter provided) and with due diligence, to erect or cause to be erected a permanent addition measuring approximately 86 feet 8 inches in width by 142 feet in depth (irregular) on the northerly side of Tenant's existing store building, together with such renovations and alterations of the existing building as necessary to make the entire enlarged building suitable for use by Tenant in the conduct of its business.

3. The new addition, together with the other alterations, renovations and related improvements as contemplated herein, shall be constructed in accordance with the plans and specifications therefor, prepared by Ashlar Architects, Inc., Coral Springs, Florida. The plans and specifications have already been approved by both parties by initialing the same.

4. It is understood that the undertaking to construct the building addition and the other renovations and alterations contemplated herein (but not including the roofing work hereinafter described) is predicated upon the construction cost thereof, as

defined herein, not exceeding an outside limit of One Million One Hundred Thirty-One Thousand One Hundred Seventy and No/100 Dollars ($1,131,170.00), it being understood that a firm construction bid in that amount has been obtained by Tenant. If, however, for any reason, the construction cost shall exceed the outside limit above specified, Tenant shall have the privilege of revising the plans and specifications and in the event the parties are unable, in good faith, based upon the revised plans and specifications, to obtain a contract price for the construction cost at or below the stipulated outside limit, Tenant, at its sole option, shall have the election of either: (a) agreeing to pay the excess of such cost over the outside limit and Tenant shall thereupon proceed with the construction work at the lowest bid price obtained for the construction; or (b) declaring this amendment null and void by giving written notice to Landlord, whereupon both parties shall be relieved of and from all further liabilities hereunder, and the said Lease shall be deemed continued in full force and effect through its current expiration date of November 30, 1998, as if this amendment had not been executed.

5.    In connection with construction of the addition, Tenant will incorporate into its existing building adjacent store space presently occupied by Rite-Aid Drugs.  Landlord shall deliver the Rite-Aid Drug space to Tenant vacant and free of Lease and cleared of all fixtures and equipment no later than February 20, 1993.

6.    Tenant shall, at its cost, re-roof the store building currently occupied by Rite-Aid Drugs and the cost of such re-roofing is not included in the term "construction cost" hereinafter defined.

7.    For the purposes hereof, the term "construction cost" shall be defined to include the entire cost of construction of the building addition, to include the removal of the existing wall between the present demised store premises of Tenant and the addition area, conversion of the Rite Aid store space into Tenant's addition (with exception of the re-roofing work) and all renovations and alterations of Tenant's existing building as

necessary to make the entire enlarged building suitable for use by Tenant in the conduct of its business. There shall be excluded form the term "construction cost", the expense of any and all Tenant's fixtures and equipment.

8. The total cost of the construction work and of the re-roofing work of the Rite-Aid store having been certified to by the general or supervising contractor performing the same, and payment therefor having been made by Tenant in full, Landlord shall forthwith reimburse Tenant for the first $25,000.00 of the re-roofing work and all cost of construction of the addition up to the said outside limit of $1,131,170.00. Such payment shall be made by cashier's or certified check or wire transfer or in such other manner as may be specified by Tenant to Landlord. Should Landlord not make full reimburse of the amount of such sum to Tenant within thirty (30) days following completion of the addition and the related improvements contemplated hereunder (such date of completion to be established by Tenant giving to Landlord written notice thereof), Tenant shall have the right to deduct from all increased rentals and all other payments hereinafter provided then due or thereafter to become due the amount not reimbursed by Landlord, together with interest upon the unpaid balance beginning on the 31st day after completion of the addition. The interest shall be computed at the rate of the current New York prime interest rate, plus 2%, compounded monthly. It is understood that Tenant shall secure all necessary building permits for construction of the addition. With respect to the expenditures by Tenant on the re-roofing work, that is, the cost of such work in excess of the first $25,000.00, Tenant shall have the right to credit these expenses against any and all percentage rentals, if any, which may become due hereunder on a cumulative basis, and in the event there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, the credit shall be accumulated and may be applied in any year in which percentage rentals shall become payable or shall have previously been paid. Such credit shall be made at the time percentage rentals are payable, as herein provided, and the credit for fractional years

(c)  It is expressly agreed that the three (3) five (5) year option extension periods provided Tenant in Article 19 of the Lease shall be revoked and cancelled and in lieu thereof, it is agreed that Tenant, at its option, shall be entitled to the privilege of five (5) successive extensions of the Lease term, each such extension to be for a period of five (5) years, and the same shall follow, if exercised, upon the expiration of the fifteen (15) year extended term herein provided upon the same terms and conditions as contained in the Lease, as modified herein.  The option extensions, if exercised, shall be exercised in the same manner as provided in Article 19 of the Lease.

(d)  Instead of the rentals provided in Article 1 of the Lease, for the duration of the fifteen (15) year extended Lease term and during any exercised option extension periods thereafter, Tenant agrees to pay to  Landlord as minimum annual guaranteed rental for the enlarged demised premises, the sum of Two Hundred Twenty-Six Thousand Four Hundred Forty-One and No/100 Dollars ($226,441.00) per year.  Such annual minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of Eighteen Thousand Eight Hundred Seventy and 08/100 Dollars ($18,870.08) per month, which installments shall be due and payable in advance on the first day of each and every month of the fifteen (15) year extended Lease term and any extensions thereof.

In addition, Tenant agrees to pay to the Landlord a percentage rental equal to one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year of Tenant ending approximately June 30 during the fifteen (15) year extended term of this Lease and any extensions thereof in excess of the sum of Twenty-Two Million Six Hundred Forty-Four Thousand One Hundred and No/100 Dollars ($22,644,100.00).

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year.  However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of the percentage of sales provision

and fractional months occurring at the beginning and end of the 15-year extended Lease term herein provided or any extensions thereof, shall be pro-rated on the basis of the annual credit.

9.   In connection with the construction work to be performed by Tenant, Tenant shall indemnify Landlord and Landlord's mortgage Lender and save them harmless from and against: all mechanics', materialmen's, subcontractor's and similar liens; all claims and suits for damage to persons or property from defects in material or from the use of unskilled labor; or from any negligence caused by Tenant, Tenant's contractors, subcontractors or by any of their employees, agents or servants during the progress of the work in constructing the improvements to be built by Tenant or from any faulty construction thereof.

10.  Upon completion of the building addition for Tenant and occupancy thereof by Tenant, the following further modifications to the Lease shall become effective:

(a)  The addition to Tenant's building, together with all related improvements thereto as contemplated herein, shall be and become a part of the demised premises, and whereinsoever in said Lease reference is made to the demised premises, the same shall be construed to apply to the enlarged building and the land on which the same shall stand.

(b)  The initial term of the Lease shall be extended for a period of fifteen (15) years from the date of such completion and acceptance upon the same terms and conditions as contained in the original Lease, as amended herein, and at the revised rentals as hereinafter provided in this First Amendment to Lease.  The parties hereto acknowledge that such fifteen (15) year Lease term extension will become effective upon completion of the addition, not after the expiration of the current term of the Lease, now set to expire at midnight on November 30, 1998.  The parties hereto agree to execute a further supplement to the Lease for the purpose of fixing the amount of the new rental and the commencement and expiration dates of the extended term of the Lease when determined as herein provided.

The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

(e) In addition to the present rentals required under the Lease, Tenant shall pay to Landlord, beginning on February 20, 1993 (the day after the termination date of the Rite-Aid lease) and continuing until the commencement date of the fifteen (15) year extended Lease term herein provided, the sum of One Thousand Seven Hundred Fifty-Eight and 64/100 Dollars ($1,758.64) per month (which is the present base rental under the Rite-Aid lease), together with Rite-Aid's present pro-rata share of ad valorem real estate taxes levied against the shopping center, common area maintenance contributions and Landlord's insurance premiums. (Tenant shall have the right to offset on a cumulative basis all such additional rental and other payments against any and all percentage rentals during such period of time.) In the event there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, the credit shall be accumulated and may be applied in any year in which percentage rental shall become payable or shall have previously been paid. Such credit shall be made at the time percentage rentals are payable, as herein provided, and the credit for fractional years and fractional months occurring at the beginning and end of the 15-year extended Lease term herein provided or any extensions thereof, shall be pro-rated on the basis of the annual credit.

shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculation the percentage rental due hereunder, the Tenant's fiscal year shall be approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the fifteen (15) year extended Lease term commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold in or from the demised premises, both for cash and on credit. Such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines, banks and public telephones; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, lottery entries, money orders, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

(f)  It is understood that since the Rite-Aid Lease has terminated, Tenant is the sole occupant of the shopping center. Therefore, the pro-rata share payments required of Tenant under Article 3 of the Lease in respect of ad valorem real estate taxes, and under Article 4 of the Lease in respect of common area maintenance expenses shall be amended to reflect that Tenant shall reimburse Landlord in full for all taxes and assessments levied against the entire shopping center.  Further, Tenant shall be responsible for all maintenance and repair of the common areas of the shopping center, as defined in Article 4 of the Lease.  Tenant shall have the option to insure all of the insurance requirements under Article 10 of the Lease including liability and casualty to the building at its own expense or may self-insure such coverage so long as Tenant's net worth exceeds $100 Million.  Any payments made by Tenant for taxes levied against the shopping center as set forth in Article 3 of the Lease may be credited by Tenant on a non-cumulative basis against any and all percentage rentals, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the 15-year extended Lease term or any extensions thereof, shall be pro-rated on the basis of the annual credit.

(g)  A new Article 30 entitled "Hazardous Substances" shall be added to the Lease as follows:

"Tenant shall indemnify and hold Landlord harmless from any and all claims, actions, judgments, criminal penalties and rulings of regulatory agencies in anywise resulting out of Tenant's having stored, used or sold hazardous substances (as the same are defined by federal and state statutes and regulation of governmental agencies having jurisdiction over the same) in the demised premises.

Similarly, Landlord shall indemnify and hold Tenant harmless from any and all claims, actions, judgments, criminal penalties and rulings of regulatory agencies in anywise resulting out of the fact that the shopping center and/or the

demised premises were erected on ground that was or is polluted with hazardous substances as the same are defined by federal and state statutes and regulation of governmental agencies having jurisdiction over the same.

(h) A new Article 31 entitled "Landlord's Exculpation and Tenant's Self Help" shall be added to the Lease as follows:

"Notwithstanding anything to the contrary provided in this lease, if Landlord or any successor in interest of Landlord shall be an individual, joint venture, tenancy in common, firm or partnership, general or limited, it is specifically understood and agreed that there shall be absolutely no personal liability on the part of such individual or on the part of the members of such firm, partnership or joint venture with respect to any of the terms, covenants and conditions of this lease, and that Tenant shall look solely to the equity of Landlord or such successor in interest in the shopping center for the satisfaction of each and every remedy of Tenant in the event of any breach by Landlord of any of the terms, covenants and conditions of this lease to be performed by Landlord, such exculpation of personal liability to be absolute and without any exception whatsoever.

If Landlord shall default in the performance or observance of any agreement or condition in this lease contained on its part to be performed or observed, and if Landlord shall not cure such default within thirty (30) days after notice from Tenant specifying the default (or shall not within said period commence to cure such default and thereafter prosecute the curing of such default to completion with due diligence), Tenant may, at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of the Landlord, and any amount paid or any contractual liability incurred by Tenant in so doing shall be deemed paid or incurred for the account of Landlord and the Landlord agrees to reimburse Tenant therefor or save Tenant harmless therefrom; provided that Tenant may cure any such default as aforesaid prior to the expiration of said waiting period, but after said notice to Landlord, if the curing of such default prior to the expiration of said waiting period is reasonably necessary to protect the real estate or Tenant's interest therein or to prevent injury or damage to persons or property. If Landlord shall fail to reimburse Tenant upon demand for any amount paid for the account of Landlord hereunder, said amount may be deducted by Tenant from the next or any succeeding payments of rent or any other payments due hereunder.

Tenant agrees that it will give notice to any holder of a first mortgage (which term shall include all security instruments) encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of the Landlord which would entitle Tenant to terminate this lease or abate the rental payable hereunder, specifying the nature of the default by the Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate this lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period, provided, however, the Tenant shall not be required to deliver such notice to the mortgage holder or to extend to it an opportunity to perform in respect of emergency repairs which.



(i)  A new Article 32 entitled "Landlord's Option to Cancel Lease" shall be added to the Lease as follows:

"Landlord, at its sole option, may, by thirty (30) days prior written notice to Tenant, cancel this Lease upon the occurrence of any of the following: (a) Tenant ceases business operation in the demised premises for a period exceeding six (6) months except for causes which are beyond Tenant's control or except for business cessation in the course of remodeling or renovation of the demised premises; (b) Tenant informs Landlord of its intention to sublease the premises or assign its lease to a non-grocery store use (unless to an affiliate or a subsidiary corporation of Tenant).  Should Landlord exercise its right to cancel the Lease upon the happening of either or both of the above conditions, Landlord agrees to execute a document for recordation purposes which will restrict the premises demised under this Lease against supermarket operation for a period of three (3) years from the date of cancellation of the Lease.

11.  It is mutually understood and agreed that the said Lease dated November 1, 1973 shall be and remain in full force and effect and unmodified except as the same is specifically modified and amended hereby.  All covenants, terms, obligations and conditions of the said Lease, as previously amended, which are not modified or amended by this First Amendment to Lease, are hereby ratified and confirmed.

IN  WITNESS  WHEREOF, the parties hereto have caused this instrument to be executed the day and year first above written.

Signed, sealed and delivered
in the presence of:

Printed Name: PATRICIA A.
SYBELDON

Printed Name: Michelle H. Ivey
As to Landlord

_____ (Seal)
WILLIAM F. LAW, JR.
Address:

_____ (Seal)
THOMAS V. CAUBLE
Address:

LANDLORD

Printed Name: Rebecca L. Sawyer

Printed Name: Susan G. Clarkson

WINN-DIXIE STORES, INC.

By _____
Its                     President
Printed Name: James Kufeldt
P. O. Box B
Jacksonville, FL 32203-0297

Attest _____
Its                     Secretary
Printed Name: Wayne E. Ripley, Jr.
P. O. Box B
Jacksonville, FL 32203-0297

(CORPORATE SEAL)
TENANT

STATE OF Georgia )
                 )
COUNTY OF Fulton )

The foregoing instrument was acknowledged before me this
February 4 ( , 1993, by WILLIAM F. LAW, JR. who is
[Please check] ✓ personally known to me or ☒ who has produced
_____ as identification [Check One] and ___ or ✓ ___ who
did not take an oath _____ who did take an oath.

Given under my hand and official seal this 1st day of
February , 1993.

Printed Name: Carol L. Davis

Notary Public, State and County
aforesaid.
My Commission Expires: _____
Notary ID No.: _____

Notary Public, Gwinnett County, Georgia
My Commission Expires Sept. 13, 1994

(NOTARIAL SEAL)

STATE OF Georgia )
                 )
COUNTY OF Fulton )

The foregoing instrument was acknowledged before me this
February ( , 1993 by THOMAS V. CAUBLE, who is [Please
check] ✓ personally known to me or ___ who has produced
_____ as identification [Check One] and ___ or ✓ ___ who
did not take an oath _____ who did take an oath.

Given under my hand and official seal this 1st day of
February , 1993.

Printed Name: Carol L. Davis

Notary Public, State and County
aforesaid.
My Commission Expires: _____
Notary ID No.: _____

Notary Public, Gwinnett County, Georgia
My Commission Expires Sept. 13, 1994

(NOTARIAL SEAL)

STATE OF FLORIDA )
                 )
COUNTY OF DUVAL  )

The foregoing instrument was acknowledged before me this
February 12 , 1993, by James Kufeldt _____
and Wayne E. Ripley, Jr. _____ President and
Secretary, respectively, of WINN-DIXIE STORES, INC., a
Florida corporation, on behalf of the corporation, who are
personally known to me and did not take an oath.

Printed Name: Susan G. Clarkson

Notary Public, State and County
aforesaid.
My Commission Expires: _____
Notary ID No.: _____

Notary Public, State of Florida
SUSAN G. CLARKSON
My Comm. Exp. Jan. 15, 1996
Comm. No. CC 174382

(NOTARIAL SEAL)

## CONSENT

PRINCIPAL MUTUAL LIFE INSURANCE COMPANY (formerly known as Bankers Life Insurance Company, an Iowa corporation), as the holder of a mortgage encumbering the premises described in the foregoing First Amendment to Lease, and as holder of a certain collateral assignment of the Landlord's interest in the Lease therein described and the rents due thereunder, dated July 2, 1976, hereby consents to the foregoing First Amendment to Lease and agrees that it shall not be construed as a violation of any of the terms and conditions contained in its said mortgage or said collateral assignment of rents and lease.

IN WITNESS WHEREOF, Principal Mutual Life Insurance Company, (formerly known as Bankers Life Insurance Company, an Iowa corporation) corporation, has caused this consent to be executed in its corporate name and its corporate seal to be hereunto affixed and attested by its officers thereunto duly authorized this _3rd_ day of _February_, 199_3_.

Signed, sealed and delivered
in the presence of:

PRINCIPAL MUTUAL LIFE INSURANCE COMPANY

By _C.R. Barnes_
Its _____ President
Printed Name: _C.B. Barnes_
Address: _2nd Vice President_
_Commercial Real Estate_

Printed Name: _SUSAN HOLLINGSHEAD_

Attest _Ronald B. Franklin_
Its _____ Secretary
Printed Name: _Ronald B. Franklin_
Address: _Director & Secretary_
_Commercial Real Estate Loan Administration_

Printed Name: _TAMMIE GILLING_

(CORPORATE SEAL)

**STATE OF FLORIDA** )
)
**COUNTY OF** )

STATE OF IOWA )
) SS
COUNTY OF POLK )

On this 3rd day of February, 1993 before me, a Notary Public in and for said County, personally appeared C. R. Barnes and Ronald B. Franklin to me personally known to be the identical persons whose names are subscribed to the instrument, who being each by me duly sworn did say that they are the 2nd Vice President and Director & Secretary, respectively, of PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, an Iowa corporation, and that the seal affixed to the said instrument is the seal of said corporation, and that said instrument was signed and sealed on behalf of the said corporation by authority of its Board of Directors, and the aforesaid officers each acknowledged the execution of said instrument to be the voluntary act and deed of said corporation, by it and by of each of them voluntarily executed.

_____
Notary Public in and for Polk County Iowa

JEANETTE YAP
MY COMMISSION EXPIRES
February 14, 1994

## ASSIGNMENT AND ASSUMPTION OF LEASE

KNOW ALL MEN BY THESE PRESENTS:  That **WALNUT STREET PARTNERS, LLLP, a Georgia limited liability limited partnership**, party of the first part for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration paid by **W D CORDOVA, LLC, a Florida limited liability company**, party of the second part, at or before the ensealing and delivery of these presents, has granted, bargained, sold, assigned, transferred and set over and by these presents does grant, bargain, sell, assign, transfer and set over unto the said party of the second part that certain Lease with **WINN-DIXIE STORES, INC.**, a Florida corporation, dated November 1, 1973 and First Amendment to said Lease date February 1, 1993 and Second Amendment to said Lease dated May 5, 1994, together with all of first party's interests and rights therein including all deposits paid to date and party of the second part hereby accepts the above Assignment and Assumption of Lease and agrees to be bound and obligated to all of the provisions of said Lease.

IN WITNESS WHEREOF, we have hereunto set out hands and seals this _9_ day of March, 2006.

Signed, sealed and delivered
in the presence of:

WALNUT STREET PARTNERS, LLLP,
a Georgia limited liability limited partnership

_Donna A. Jaric_
(Witness as to Ann Illingworth Cauble)
_Donna A. JARIC_
(printed name of witness)

_Milian Van Kamecke_
(Witness as to Ann Illingworth Cauble)
_SILTAN VAN KAMECKE_
(printed name of witness)

**Ann Illingworth Cauble, General Partner**

_Donna A. Jaric_
(Witness as to Ellen Cauble Ison)
_DONNA A. JARIC_
(printed name of witness)

_Milian Van Kamecke_
(Witness as to Ellen Cauble Ison)
_SILTAN VAN KAMECKE_
(printed name of witness)

**Ellen Cauble Ison, General Partner**

Assignment and Assumption of Lease
Page 2

(Witness as to Melinda Cauble Schomaker)

DONNA A. JARIC
(printed name of witness)

(Witness as to Melinda Cauble Schomaker)

SUSAN VON KAMECKE
(printed name of witness)

(Witness as to Caroline Cauble Haverkampf)

DONNA A. JARIC
(printed name of witness)

(Witness as to Caroline Cauble Haverkampf)

SUSAN VON KAMECKE
(printed name of witness)

**Melinda Cauble Schomaker, General Partner**

**Caroline Cauble Haverkampf, General Partner**

## ACCEPTANCE OF ASSIGNMENT

The undersigned Assignee hereby accepts the above Assignment and Assumption of Lease and agrees to be bound by the terms of the subject Lease.

W D Cordova, LLC

AS MANAGING MEMBER

## ASSIGNMENT AND ASSUMPTION OF LEASE

KNOW ALL MEN BY THESE PRESENTS: That **L F LIMITED, L.P., a Georgia limited partnership**, party of the first part for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration paid by **W D CORDOVA, LLC, a Florida limited liability company**, party of the second part, at or before the ensealing and delivery of these presents, has granted, bargained, sold, assigned, transferred and set over and by these presents does grant, bargain, sell, assign, transfer and set over unto the said party of the second part that certain Lease with **WINN-DIXIE STORES, INC.**, a Florida corporation, dated November 1, 1973 and First Amendment to said Lease date February 1, 1993 and Second Amendment to said Lease dated May 5, 1994, together with all of first party's interests and rights therein including all deposits paid to date and party of the second part hereby accepts the above Assignment and Assumption of Lease and agrees to be bound and obligated to all of the provisions of said Lease.

IN WITNESS WHEREOF, we have hereunto set out hands and seals this __9__ day of March, 2006.

Signed, sealed and delivered
in the presence of:

_____
(Witness as to William F. Law, Jr.)

DONNA A. JARIC
_____
(printed name of witness)

_____
(Witness as to William F. Law, Jr.)

_____
(printed name of witness)

L F LIMITED, L.P., a Georgia limited partnership
By Its GENERAL PARTNER

CEDAR VENTURES, LLC, a Georgia limited liability company

By: _____
William F. Law, Jr., Manager


## ACCEPTANCE OF ASSIGNMENT

The undersigned Assignee hereby accepts the above Assignment and Assumption of Lease and agrees to be bound by the terms of the subject Lease.

W D Cordova, LLC

_____, AS MANAGING MEMBER.