**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors[1]. | ) | Jointly Administered |

## DEBTORS' OBJECTION TO BIRMINGHAM REALTY COMPANY'S REQUEST FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM

Winn-Dixie Montgomery, Inc. ("WD Montgomery") and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), file this response in opposition to the motion of Birmingham Realty Company ("BRC") for allowance of administrative expense claims under 11 U.S.C. § 503 (the "Motion") (Docket No. 9363), and states:

### Background

1.    Prior to the petition date, WD Montgomery operated three grocery stores in Alabama which it leased from BRC (collectively, the "Leases"), known by the Debtors as store numbers 547, 575 and 597 (collectively, the "BRC Stores").

2.    Each of the Leases requires WD Montgomery to repair, or reimburse BRC for repairing, any damage to the BRC Stores resulting from WD Montgomery's

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

installation or removal of trade fixtures.  Each of the Leases further requires WD Montgomery to maintain the BRC Stores in good condition and repair.

3.       On August 1, 2005, the Debtors filed a motion for authority to sell stores, including the BRC Stores, and to reject the leases for any stores they were unable to sell (Docket No. 2707) (the "Sale and Rejection Motion").

4.       On September 8, 2005, the Court entered an order granting the Sale and Rejection Motion as it relates to the Debtors' rejection of leases (Docket No. 3405) (the "Rejection Order").  The Rejection Order authorizes the Debtors to reject the leases by providing not less than ten days' advance written notice in the form approved by the Court.

5.       The Debtors were unable to sell the BRC Stores and on September 14, 2005, sent BRC the Court approved notice indicating that WD Montgomery was rejecting the Leases effective September 30, 2005.

6.       Pursuant to the Rejection Order, BRC was required to file a proof of claim for rejection damages by October 30, 2005.  BRC filed a proof of claim for rejection damages on October 31, 2005 and subsequently amended the proof of claim on August 22, 2006[2] (Claim Nos. 12329 and 13438, respectively).

7.       WD Montgomery has vacated the BRC Stores and abandoned the trade fixtures.

8.       On July 20, 2006, BRC filed its Motion.  BRC alleges in the Motion that after the Debtors rejected the Leases, BRC incurred $73,002.28 in expenses for removing the Debtors' trade fixtures from the BRC Stores and repairing the resulting

---

[2] The Debtors will timely file their objection to this proof of claim.

damage to the BRC Stores.   BRC seeks reimbursement of these monies as an

administrative expense of WD Montgomery's estate pursuant to 11 U.S.C. § 503(a).

9.      WD Montgomery objects to the Motion because the expenses BRC

allegedly incurred do not meet the requirements for administrative expense status

under Bankruptcy Code Section 503.  Any claim BRC may have would be a rejection

damage claim only and, pursuant to §§ 365(g) and 502(g), be treated as a pre-petition

general unsecured claim, if allowed.

### Argument

10.      BRC contends that its claim is entitled to administrative status under

Bankruptcy Code § 503(b), which provides in part:

> After notice and a hearing, there shall be allowed
> administrative expenses, other than claims allowed under
> section 502(f) of this title, including--
>
>> (1)(A) the *actual*, *necessary* costs and expenses of
>> preserving the estate including-
>>
>> (i) wages, salaries, and commissions for services
>> rendered after the commencement of the case…
>
> 11 U.S.C. § 503(b).

The terms "actual" and "necessary," as used by § 503(b), are construed narrowly by the

courts to minimize expenses of the estate.   *See e.g. Microsoft Corporation v. DAK*

*Industries, Incorporated (In re DAK Industries, Incorporated)*, 66 F.3d 1091, 1094 (9th

Cir. 1995) ("In order to keep administrative costs to the estate at a minimum, the actual,

necessary costs and expenses of preserving the estate are construed narrowly.")

(quotations omitted).  And the burden of proof is on the creditor to establish that the

creditor's claim is entitled to administrative priority by a preponderance of the evidence.

*In re TransAmerican Natural Gas Corp.,* 978 F.2d 1409, 1416 (5th Cir.1992) ("[T]he burden of persuasion, by a preponderance of the evidence, remains with the movant.").

11.    A debt is not entitled to administrative priority under Bankruptcy Code Section 503 merely because the right to payment arises post-petition.  *See In re Mid Region Petroleum, Inc.*, 1 F.3d 1130, 1133 (10th Cir.1993) (holding that a lessor was not entitled to an administrative expense claim for post-petition rents accruing prior to trustee's rejection of underlying lease agreements).  Instead, for a post-petition expense to be given administrative priority, the creditor must establish that: (1) the expense arose out of a transaction between the creditor and the *debtor-in-possession* (i.e., post-petition) and (2) the expense benefited the debtor-in-possession in the operation of its business.  *Id*. *Accord In re Colortex Industries, Inc*., 19 F.3d 1371, 1383 (11th Cir. 1994) ("The threshold requirement for an administrative expense is that it be actual and necessary to the preservation of the estate; the benefit must run to the debtor and be fundamental to the conduct of its business."); *Matter of Jartran, Inc*., 732 F.2d 584, 587 (7th Cir. 1984) ("[A] claim will be afforded priority under § 503 if the debt both (1) arises from a transaction with the debtor-in-possession and (2) is beneficial to the debtor-in-possession in the operation of the business.") (quotations omitted).

12.    BRC's claim does not meet this test.  A landlord's post-rejection claim for damages resulting from the removal of the debtor's trade fixtures is not entitled to administrative priority.  In *Unidigital, Inc.*, 262 B.R. 283, 288-89 (Bankr. D.Del. 2001), the landlord sought administrative expense status for expenses incurred in cleaning, disassembling and removing a 30,000 pound printer from the rejected leased premises.

The bankruptcy court denied the landlord's administrative expense claim because neither of the two elements required for administrative expense status were present.  The first element--a transaction with the debtor--did not exist because the only transaction between the debtor and the landlord was the lease, which was entered into *pre-petition*. The second element--a benefit to the estate--did not exist because the removal of the printer only benefited the landlord.  *Id*.  In reaching its decision, *Unidigital* stated:

> While it may seem inequitable to "saddle" [the landlord] with the cost of cleaning up the Debtors' mess, absent a benefit to the estate, no priority claim is allowable…[T]he costs of cleaning the landlord's premises does not benefit the estate here.  Rather, it only benefits [the landlord].

*Id*. at 289.

13.    The bankruptcy court for the Southern District of New York has similarly held that a commercial landlord's claim for damages arising from the debtor-tenant's breach of its clean-up obligation was not entitled to administrative expense priority.  *See In re Ames Department Stores, Inc.*, 306 B.R. 43 (Bankr. S.D.N.Y. 2004).  In *Ames*, the debtor leased two premises from the landlord.  Both leases between the debtor and the landlord required the debtor to repair, or reimburse the landlord for, any damage caused by the removal of the debtor's trade fixtures (shelving, racks, bins and similar trade fixtures) from the premises. *Id.* at 49.  The debtor rejected the leases with the landlord and abandoned its trade fixtures on the leased premises.  *Id*.

14.     The *Ames* court denied the landlord's administrative expense request holding:

> When the exercise of business judgment makes such advisable, the estate can, by rejection, be relieved of the duty of continuing post-petition performance on a contract, ***and the landlord's claim for any damages arising from the rejection is a pre-petition claim for breach of contract***…
>
> ***
>
> The ability to reject burdensome post-petition obligations is one of the most fundamental rights of a trustee or debtor-in-possession (and thus the creditor body generally) under the Bankruptcy Code. ***It would frustrate the entire purpose of rejection if, in order to reject and thereby be relieved of a burdensome executory contract, the debtor were required, as a condition to doing so, to comply with one of the very aspects of the agreement that is burdensome…[Such a requirement]  would eviscerate the important benefits provided under the Code to reject burdensome lease obligations.***
>
> 306 B.R. at 51-52.

15.     Requiring WD Montgomery to reimburse BRC in cash for expenses BRC allegedly incurred in removing trade fixtures would frustrate WD Montgomery's ability to avoid the burdensome obligations it sought to avoid by rejecting the Leases.  Like the landlords in *Unidigital* and *Ames*, if after hearing the Debtors' objection to BRC's rejection damages claim the Court determines that BRC has any claim, such claim will be a general unsecured claim under Bankruptcy Code Sections 365(g) and 502(g) with no priority over other general unsecured creditors of WD Montgomery's bankruptcy estate.

## <u>Conclusion</u>

For the foregoing reasons, BRC's motion for administrative expense should be denied.

Dated:  September 15, 2006

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By     */s/ D. J. Baker*
        D. J. Baker
        Sally McDonald Henry
        Rosalie Walker Gray

Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for Winn-Dixie Stores, Inc.

SMITH HULSEY & BUSEY

By     */s/ Cynthia C. Jackson*
        Stephen D. Busey
        Cynthia C. Jackson (FBN 498882)
        Beau Bowin

225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Winn-Dixie Stores, Inc.

00540509.2