# EXHIBIT "A"

RECEIVED OCT 1 4 1986

RECEIVED ··· 1 4 1987

LEASE

THIS LEASE AGREEMENT made this __ ) ɑ. 14 __, 1987, by and
between PLAZA ASSOCIATES, INC., hereinafter called "Landlord", and
M & H FOOD COMPANIES, INC., a Delaware corporation, hereinafter
called "Tenant."

WITNESSETH:

COVENANTS. The parties hereto agree that this Lease sets forth
all agreements, covenants and conditions express or implied between
the parties, and supersedes any prior oral or written agreements
between the parties with respect to the premises hereinafter
described. The following exhibits are attached to this lease and
made a part hereof:
Exhibit "A" – Legal Description
Exhibit "B" – Plot Plan
Exhibit "C" – Title Exceptions
Exhibit "D" – Lease Between Garden Associates and Plaza Associates
Exhibit "E" – Sign Regulations
Exhibit "F" – Exclusives
Exhibit "G" – Land Deed of Trust
PREMISES. Landlord hereby leases to Tenant and Tenant hereby
hires from Landlord the premises located in Greenville, Mississippi,
more particularly described as Demised Premises in Exhibit "A" and
shown outlined on Exhibit "B", together with all improvements now or
hereafter erected thereon and all rights and appurtenances thereunto
belonging. The building erected upon Demised Premises
(approximately 60,000 sq. ft.) is herein called "The Building".

TERM AND COMMENCEMENT. The term of this Lease ("The Term")
shall commence on the same date as provided in Section "RENT" for
the commencement of payment of the annual rent and shall end upon
the expiration of Five (5) Years less one (1) day after such
commencement date, at midnight, unless sooner terminated or extended
as herein provided. Upon commencement of The Term the parties will
execute a memorandum setting forth the commencement and termination
date.

RENEWAL OPTIONS. Landlord grants to Tenant two (2) separate
options to extend the Term for two (2) separate consecutive
additional periods (hereinafter called "Renewal Periods") of five
(5) years each on the same terms and conditions as set forth in this

1



Lease for the Term, except that rental shall be equal to $2.00 per sq. ft. per year for the first renewal period, and $2.50 per sq. ft. per year for the second renewal period. Each option shall be automatically exercised by Tenant unless Tenant shall give notice to Landlord at least one year (1 yr.) before the expiration of the Term or Renewal Period then in effect of Tenant's desire to terminate said Lease and upon such automatic renewal, the Renewal Period shall become part of the Term.

RENT. Tenant agrees to pay to Landlord monthly rental, in advance, equal to $1.50 per sq. ft. per year for the first two (2) years, and $1.75 per sq. ft. per year for the last three (3) years, unless such Rent shall be abated or diminished as in this Lease elsewhere provided (hereinafter called "Rent") on the first day of each calendar month, commencing (a) July 14, 1987, which allows Tenant six months free rent from January 14, 1987. All rentals subject to applicable sales, rent or use taxes if any, or

(b) the opening by Tenant of its complete, remodeled store in the Demised Premises for business with the public, whichever occurs first. All payments of rent shall be made to Plaza Associates, c/o Consultants Realty Company, Agent, Post Office Drawer 359, Clearwater, Florida 33517, or to such other person or corporation or at such other place as shall be designated by Landlord, in writing, delivered to Tenant at least ten (10) days prior to the next ensuing rent payment date.

USE. Tenant's primary use is for a supermarket selling related items. Tenant may use Demised Premises for any lawful purpose not in conflict with exclusives previously granted to other tenants by Landlord which are set forth herein as Exhibit "F". Tenant shall indemnify and hold Landlord harmless of and from all fines or penalties imposed by law arising by reason of the violation by Tenant of any laws, rules, ordinances or regulations relating to the conduct of business in Demised Premises issued by any governmental authority having jurisdiction over Demised Premises.

Landlord further warrants not to lease any space in the Center described in Exhibits "A" and "B" to another supermarket. This restriction shall apply to any adjacent or contiguous land acquired by or to be acquired by Landlord.

OPTION TO USE SECOND FLOOR. Tenant agrees to pay to Landlord an annual rent of $1.00 per year for the approximately 18,000 sq. ft. second-floor storage space, provided Tenant does not utilize said space in any fashion. In the event Tenant utilizes any portion of said space, Tenant shall pay to Landlord annual rent equal to $1.00 per sq. ft. per year for the 18,000 sq. ft. space provided which space shall be serviced by use of Landlord's conveyers currently installed. Tenant contemplates not using the second floor for storage, however, Tenant also contemplates using a portion of the space for a machine room in which event a supplementary agreement will be negotiated for that use based on what that use does to the usability and desirability of the remaining storage space. If Tenant does                     2

not use any of the 18,000 sq. fdt. second-floor space, and Landlord
has use for any or all of said space and can separate it from
Tenant's space without adverse effect to Tenant, Tenant agrees to
Landlord's use of the specified space.

LANDLORD'S TITLE. (a) Landlord covenants that Landlord has a leasehold
interest by virtue of that certain land lease dated _January 3, 1983_ and by reference is
incorporated in this lease as Exhibit "D", and has full right and authority to make this
Lease; that said premises are free and clear of and from all liens, restrictions, leases and
encumbrances (except as set forth in Exhibit "C"); and that there are no laws, ordinances,
governmental rules or regulations or title restrictions or zoning or other matters which
will restrict, limit or prevent Tenant's operation of a food supermarket or any related
department thereof in Demised Premises. Landlord shall have quiet and peaceful
possession and enjoyment of Demised Premises and of all rights and appurtenances
thereunto belonging.

(b) Concurrently with the execution of this Lease, Landlord and
Tenant shall execute a Short Form Lease. Upon determination of the
commencement date of the Term, Landlord agrees at its own cost and
expense to record said Short Form Lease with the proper office or
department in the state, county or municipality in which Demised
Premises is located. If Landlord fails to record said Short Form
Lease and submit to Tenant an opinion of counsel or a certificate of
a title insurance company as to such recording within thirty (30)
days after Tenant executes this Lease, Tenant may record such Short
Form Lease and charge the cost of recording to Landlord; or Tenant
may elect at its option to cancel this Lease. Any amounts expended
by Tenant to record this Lease shall be payable by Landlord to
Tenant on demand, and if not paid to Tenant, Tenant may, without
limiting Tenant's other remedies, withhold any rent or other sums
thereafter due or to become due under this Lease.

(c) Landlord agrees (at its own cost and expense) to furnish to
Tenant proof satisfactory to Tenant of Landlord's title to Leased
Premises. Landlord shall also furnish an agreement in form
satisfactory to Tenant, executed by any mortgagee or any holder of
any lien, prior to the Lease, subordinating each such mortgage or

3

lien affecting the premises described on Exhibit "A" of this Lease, unless such mortgagee or the holder of such lien executes a non-disturbance provision pursuant to the terms of Section "SUBORDINATION AND NON-DISTURBANCE." Wherever reference is made to a mortgage or a Mortgagee in this Section, such reference shall be deemed to include a deed of trust or the holder of a deed of trust.

(d) Landlord represents, warrants and agrees and this Lease is upon the express condition that Landlord shall at all times during the term of this Lease or any extension or renewal thereof, maintain a Parking Area as shown on Exhibit "B" annexed hereto, to furnish parking space without charge to all customers of Tenant seeking parking, so that there shall be maintained at all times a ratio of at least three (3) square feet of parking space for each square foot of floor area, or a minimum of 1200 cars.

SUBORDINATION AND NON-DISTURBANCE. If any Mortgagee (as hereinafter defined) so requests, this Lease shall be subject and subordinate to a first mortgage or first deed of trust covering Demised Premises and to all renewals, modifications, consolidations, replacements and extensions thereof, provided such mortgage complies with the following provisions:

(a) The Tenant specifically does not agree to subordinate his lease to the Land Deed of Trust (Exhibit "G") between Garden Associates and James S. Henderson, of Greenwood, Mississippi, in the amount of $4,971,776.00. A subordination agreement from the holder of this Land Deed of Trust, to the lease is required prior to the commencement of construction by the Lessee. However, the underlying mortgages forming a part of this wrap mortgage held by Minnesota Mutual Life shall be superior to the lease and is the "first deed of trust".

(b) The Mortgagee or holder of such first deed of trust ("Mortgagee) shall be a recognized financial institution such as a bank, savings and loan association, college or university, pension, retirement or trust fund, or insurance company; and

(c) The Mortgagee shall agree to non-disturbance provisions in favor of Tenant substantially as follows:

"So long as Tenant continues to pay the rent reserved in Lease and otherwise complies with the terms and provisions thereof, Mortgagee shall not disturb the rights of possession of Tenant in Demised Premises as set forth in this Lease, notwithstanding any foreclosure or proceedings in lieu thereof affecting Demised Premises whether or not Tenant is made a party thereto.

"If the building is damaged or destroyed by casualty or by the exercise of any right of eminent domain, the proceeds of any insurance or condemnation award relating thereto shall be made available for the purpose of repair or restoration thereof as

provided in said Lease, subject to protective provisions required by such Mortgagee with respect to the disbursement of such funds. Upon passing of title to Demised Premises to a Mortgagee or to any other party in any foreclosure or proceedings in lieu thereof, the party acquiring such title shall thereupon, by virtue of such acquisition of title and without the execution of any further instruments or documents, be deemed to be Landlord for all purposes of Lease and be deemed to have assumed the full and complete performance of all the obligations of Landlord as therein set forth, except for those monetary defaults not to exceed $10,000 by a prior landlord. If Mortgagee shall take possession, without acquiring title thereto, but in such a manner as to be entitled to receive rents therefor, Mortgagee shall, in addition, be deemed to have assumed all the obligations of Landlord set forth in said Lease (excepting those hereafter set forth in Section "PROTECTIVE COVENANT" of said lease) accruing during such period of possession and upon the termination of such possession, shall be deemed released from all liability accruing thereafter."

POSSESSION. (a) Upon commencement of the Term the covenant of Landlord set forth in Section "LANDLORD'S TITLE (a)" shall be in force except for matters junior to this Lease and Demised Premises shall be unoccupied. At such time The Building and any other improvements erected upon the Demised premises shall be in full compliance with all laws, ordinances and regulations relating to the use, occupation and construction thereof.

(b) Tenant agrees to deliver to Landlord physical possession of Demised Premises upon the termination of the Term, in good condition excepting, however, ordinary wear and tear, damage by fire, or any other casualty insured against under policies maintained or required to be maintained by Landlord, or damage from any other cause unless such other cause is solely attributable to the negligence of Tenant.

Tenant agrees to give to Landlord at least thirty (30) days written notice of its intention to cease operating its business in Demised Premises, or its intention to "go dark"; in which event, Landlord has thirty (30) days after any cessation of business to cancel this Lease.

ASSIGNMENT AND SUBLETTING. Tenant may assign this Lease without

the consent of Landlord to another supermarket or to a tenant who will operate a similar business. Tenant may sublet, as hereinbefore provided, the Demised Premises or any part thereof, but notwithstanding any such subletting or any such assignment, Tenant shall remain primarily liable for the performance of all the terms and conditions of this lease. Additionally, Tenant may sublet the entire premises to another who may not operate a supermarket business. In that case, Tenant must notify Landlord of its intentions and first receive written approval of the Landlord to such proposed assignment or sublet, which approval may not be unreasonably withheld. The Landlord must advise Tenant within 30 days if the proposed assignment is acceptable to the Landlord. If it is not acceptable, the Landlord has the right to cancel the lease without penalty and retake possession of the premises.

PROTECTIVE COVENANT.   In order to induce Tenant to enter into this Lease, Landlord agrees for itself, its heirs, successors and assigns, that none of the foregoing shall use, suffer, permit or consent to the use or occupancy as a supermarket or for the sale of food or food products intended for off-premises consumption, any other premises now or hereafter owned or controlled by Landlord or any of the above described parties adjacent to Demised Premises.

LANDLORD'S REPAIRS.   (a) Landlord shall maintain the exterior portions and structural elements of Demised Premises or the building of which Demised Premises is a part, and the appurtenances thereto and any improvements outside of Demised premises erected by Landlord for Tenant (including without limitation the roof, roof structures and supports, foundation and structural supports, walls, chimneys, skylights, gutters, downspouts, streets, parking lot, curbs, sidewalks, and utility lines servicing Demised premises to the extent not maintained by public utility companies), in good and usable repair during the Term.

(b)  At the commencement of the Term, Landlord agrees only to replace all Heating and Air Conditioning units with new units to reasonable requirements of the Tenant and thereafter such HVAC system shall not be the Landlord's responsibility. Any guarantees or warranties on the new units shall be assigned to the Tenant.

(c) Landlord agrees to make and pay for all other repairs to the interior of Demised Premises necessitated by (i) Landlord's failure to make any repairs required of it hereunder, or (ii) defective workmanship or materials in the original construction of Demised Premises or of any other improvements outside of Demised Premises erected by Landlord for Tenant.

(d) Anything in this Lease to the contrary notwithstanding, Landlord agrees that if, in an emergency, it shall become necessary to make any repairs hereby required to be made by Landlord, Tenant may, after reasonable attempts to contact the Landlord all having failed, may without notice otherwise required by Section "RESPONSIBILITY OF LANDLORD" hereof, proceed forthwith to have such repairs made and pay the cost thereof. Landlord agrees to pay Tenant the cost of

such repairs on demand, and Landlord further agrees that if it fails so to pay Tenant, Tenant may deduct the amount so expended by it from rent or any other payment due or to become due.

(e) If Tenant is deprived of the use of any portion of Demised Premises for a period of more than seven (7) days during the making of any repairs, improvements or alterations by Landlord under any provisions of this Lease, then so long as Landlord does not proceed diligently to remedy such condition, all rent and other sums payable hereunder shall abate for such period as Tenant is deprived of such use.

(f) Landlord agrees to indemnify and save Tenant harmless·from and against all loss to merchandise, fixtures and equipment occasioned by Landlord's failure within ten (10) days after receipt of notice of necessity therefor, to commence and thereafter proceed diligently with any repairs required of Landlord hereunder.

TENANT'S REPAIRS AND ALTERATIONS. (a) Tenant agrees to accept all responsibility to renovate and remodel the Demised Premises for Tenant's use; and all responsibility of repair and/or replacement of the electrical, plumbing and mechanical equipment including, but not limited to the Heating and Air Conditioning system(s). Tenant may make and shall pay for any alterations and improvements to Demised Premises as Tenant deems desirable, and Tenant agrees that all such alterations and improvements shall be made in a good and workmanlike manner and in such fashion as not to diminish the value of Demised Premises.

(b)   Subject to Landlord's obligations under Section "LANDLORD'S REPAIRS", Tenant shall make and pay for all ordinary non-structural repairs to the interior of Demised Premises arising from Tenant's operation of business therein not occasioned by ordinary wear and tear, fire or other casualty.

(c) Tenant may paint, erect or authorize the installation of signs (which Tenant deems necessary to the operation of its business) in, on or about the Demised Premises and may at any time remove therefrom any such signs provided, however, such exterior signs comply with Sign Regulations attached hereto as Exhibit "E". Tenant's pylon sign shall replace that of Wal-Mart on Landlord sign pylon at no cost to Tenant. On surrendering possession of Demised Premises to Landlord at the expiration or sooner termination of this Lease, Tenant shall not be required to restore the same to

7

the condition existing at the commencement of the Term, and Landlord agrees to accept the Demised Premises with all alterations and improvements made by Tenant.

COMPLIANCE WITH LAWS. Tenant shall make and shall pay for non-structural improvements and alterations to comply with all laws, ordinances, rules or regulations of any governmental authority promulgated after the commencement of the Term applying to the physical condition of Demised Premises and arising from Tenant's conduct of business in Demised Premises. Any improvements installed by Tenant under the terms of this Section shall be deemed trade fixtures under the terms of Section "TENANT'S FIXTURES" of this Lease.

TENANT'S FIXTURES. Tenant may install in Demised premises such fixtures (trade or otherwise) and equipment as Tenant deems desirable, and all of said items shall remain Tenant's property whether or not affixed or attached to Demised Premises. Tenant may remove said fixtures and equipment from Demised Premises at any time and from time to time during The Term. Landlord shall not mortgage, pledge or encumber said fixtures, equipment or improvements. Tenant shall, within thirty (30) days after expiration of the Term, repair any damage to Demised Premises caused by Tenant's removal of any such fixtures or equipment.

UTILITIES. The Landlord shall provide to Demised Premises throughout The Term such sewer facilities and such utilities (including, without limitation, water, electric power and gas) as the Tenant may require and shall supply and maintain adequate separate meters for the purpose of measuring all such utilities consumed by Tenant in Demised Premises. Tenant agrees to pay for all such utilities consumed by Tenant in Demised Premises, during the Term, as evidenced by readings taken from said meters.

PUBLIC LIABILITY INSURANCE. (a) Throughout The Term or any extensions thereof, Tenant shall maintain insurance against public liability for injury to person (including death) or damage to property occurring within the Demised Premises arising out of the

8

The duct work is to be sheet metal of proper size and gauges as recommended by ASHVE, and installed with not less than 1 inch fiberglass with vapor seal; duct board will not be accepted.  The ceiling diffusers are to have anti-smudge rings as manufactured by Anemostat Corporation.  The sidewall diffusers, if any, are to be as manufactured by Tuttle & Bailey, or equal.  The location of any sidewall diffusers must be approved by Tenant.

The return air ductwork shall be located near the floor level or shall use the wall as a duct as shown on Tenant's plans.

Plans and specifications for the heating and air conditioning and humidity system must be shown on the plans submitted to Tenant for approval.  "Roof-top units" which use combination supply and return through the same grille shall not be used.

Tenant reserves the right to install its own Heating, Air Conditioning and Humidity Control System.  If Tenant desires to furnish and install the Heating, Air Conditioning and Humidity Control System, Landlord shall give Tenant full credit for the complete Heating, Air Conditioning and Humidity Control System hereinabove specified, including the electrical wiring, the duct work, humidity controls and all other portions of the Heating, Air Conditioning, and Humidity Control System.  Landlord shall furnish necessary structural supports in the roof system, the necessary electrical requirements to and including the disconnect outside the main switch gear, and sufficient space above the ceiling for Tenant's ductwork.

(A)  Controls:

Controls should consist of Trane environmental or equal  low-voltage combination cooling and heating thermostats with 0412A sub-base to provide for "cooling", "Off", and "Heating"; and for the fan, "On" or "Automatic".

(B)  Guarantees:

All air conditioning equipment is to be guaranteed for a period of one (1) year by the installing dealer; and the compressor section of the air conditioning equipment is to be guaranteed by the factory for an additional four (4) years; this must include the replacement of the compressor, and warranty certificates are to be furnished to Tenant when job is completed; and mechanical contractor and manufacturer's district engineer will complete a thorough test procedure of equipment, as per form furnished by Tenant, and certify that these tests are correct.

The Landlord is to furnish and install heater for the stockroom area.  The size is to be shown on plan submitted to Tenant for approval.  The heater is to be Reznor, or approved equal.  Landlord shall furnish and install exhaust fans in all Toilet areas.  Fans are to be controlled by the light switch in each Toilet.

7-23-87

25.  FIRE WALLS, ETC.

In addition to the Sprinkler System as specified in Paragraph 11 above, the building covered under these specifications shall be maintained as a "Separate Fire Division" and shall be approved by the applicable Insurance Service Office (I.S.O.) as such.  A fire wall or walls shall be constructed of the materials and thickness, and shall extend above the roof, as required by said I.S.O., in order to obtain maximum available credits on Tenant's contents insurance rates.

Any waiver or special condition concerning this provision must have Tenant's written approval prior to commencement of construction, and approval of plans (which do not include a firewall as herein specified) without specific waiver of the requirement for a fire wall shall not constitute approval by Tenant.

26.  UTILITIES.

Landlord is to furnish adequate utilities within the construction site for use by the contractor and sub-contractors during the construction of the premises. Said utilities shall be made available to tradesmen who are installing Tenant's equipment and fixtures.

All utilities shall be changed over to the Tenant's account when the contractor and his sub-contractors have completed their work.  It shall be the responsibility of the contractor to cause such change-over to be made, after giving the Tenant prior written notice that his work is completed and that he intends to make said change-over.

In accordance with the terms of the Lease Agreement as herein specified, Tenant shall have the right of moving into the building prior to completion of the construction, in order to install fixtures and equipment and to stock the store.

Tenant shall be responsible for utilities after the commencement date of the Lease Agreement, unless it has been mutually agreed, in writing, to change said utilities to the Tenant's account at an earlier date.

27.  INSULATION.

All exterior walls shall be insulated by Landlord to achieve a "R" factor of .11 or better.  Roof shall be insulated by Landlord to achieve a "R" factor of .20 or better.

28.  Should there be any conflict between the specifications and plans, Landlord shall notify Tenant in writing and ask for a clarification.


APPROVED:  Tenant _____


           Landlord _____


7-23-87

AMENDMENT I to LEASE

THIS AMENDMENT entered into as of _December 1_, 1988,
between Plaza Associates, Inc., as Landlord, and/M&H Food [MALONE & HYDE FOOD COMPANIES, INC., former]
Companies, Inc., as Tenant, for the purpose of changing certain
terms in the original Lease dated January 14, 1987, between the
Parties, covering premises located in Delta Plaza, Greenville,
Mississippi, more particularly described in Exhibit "A" to said
Lease.

WITNESSETH:

For the sum of Ten Dollars and other valuable consideration,
each to the other, the receipt and sufficiency of which is hereby
acknowledged by each of the Parties, Landlord and Tenant agree as
follows::

1. Section PREMISES, page 1 of Lease, provides for a Building
of approximately 60,000 sq. ft.   For the purpose of
calculating rent and additional rent items payable by Tenant
to Landlord, the square footage of the Building shall
be 68,544 sq. ft.

2. Section OPTION TO USE SECOND FLOOR, page 2 of Lease,
provides to Tenant the option to use additional second-floor
space.  Tenant hereby exercises its option to utilize
5,676 sq. ft. of said space, at $1.00 per sq. ft. per year.

3. Taking into consideration Nos. 1 and 2 above, Tenant shall
pay to Landlord as Rent, plus Common Area Maintenance
contribution, an amount as in Schedule below, except that
common area maintenance payable by Tenant to Landlord in the

renewal periods (if Tenant shall exercise its options) shall be subject to adjustment as provided in the original Lease.

Rent Schedule:

| | Rent | Contribution c.a.m. | Amt. Due |
|---|---|---|---|
| Commencing 1-14-88 | $ 9,041.00 | $927.75 | $ 9,968.75 per mo. |
| Commencing 7-14-89 | $10,469.00 | $927.75 | $11,396.75 per mo. |
| Commencing 7-14-92 | $11,897.00 | $927.75 & CPI Adj. | $12,824.75 per mo. |
| Commencing 7-14-97 through 7-13-2002 | $14,753.00 | $927.75 & CPI Adj. | $15,680.75 per mo. |

All other terms, covenants and conditions of the original Lease as referenced above are hereby ratified and confirmed.

IN WITNESS WHEREOF, the above named Landlord and Tenant have executed this Amendment, in triplicate, on the day and year above set forth.

Landlord:

PLAZA ASSOCIATES

By

WITNESS:

By

Tenant:

MALONE & HYDE FOOD COMPANIES, INC., formerly M&H FOOD COMPANIES, INC.

By
Thomas L. Wartinger, Vice Pres.

ATTEST:

By
Peter R. Pettit, Vice Pres.

### AMENDMENT II TO LEASE

THIS AMENDMENT entered into as of _December 1_ , 1988, between Plaza
Associates, as Landlord and M&H Food Companies, Inc., as Tenant, for the purpose of
adding an additional 2,920 square feet to the demised area as described in the original
lease and subsequent Amendment I dated January 14, 1987, between the parties, covering
the premises located at Delta Plaza Shopping Center, Greenville, Mississippi, more
particularly described in Exhibit "A" to said lease.

WITNESSETH:

For the sum of ten ($10.00) dollars and other valuable consideration, each to the
other, the receipt and sufficiency of which is hereby acknowledged by each of the
parties, Landlord and Tenant agree as follows:

> The Landlord leases to the Tenant and Tenant leases from the
> Landlord the space indicated in blue in the attached exhibit for use
> consistent with the terms of the overall lease and with the
> understanding that the Landlord makes no representation as to the
> condition of the area being leased.

> The Landlord and Tenant agree that the Tenant will bear all
> expenses in renovating this area for the Tenant's use and further
> agrees that Tenant will provide slats and maintain the fences in
> such a condition as to be consistent with the care and upkeep of
> the Landlord's other property more particularly known as Delta
> Plaza Shopping Center and the Tenant's demised premises.

> Landlord further warrants to Tenant that there shall be no increase
> in the base rental terms as set forth in this lease as a result of the
> additional space being demised to the Tenant.

All other terms, covenants and conditions of the original lease as referenced
herein are hereby ratified and confirmed.

IN WITNESS WHEREOF, the above named Landlord and Tenant have executed
this Amendment, in triplicate, on the day and year above set forth.

LANDLORD:                              TENANT:

                                       Malone & Hyde Food Companies, Inc., formerly
PLAZA ASSOCIATES                       M&H FOOD COMPANIES, INC.

By _____            By _____
   R.M. Thompson, Jr., Agent             VICE- PResident

WITNESS:                               ATTEST:

By _____            By _____
                                          V.P.

By _____

_(vertical text, right margin)_ Malone & Hyde Food Companies, Inc., formerly



## AGREEMENT AMENDING AND EXTENDING LEASE

THIS IS AN AGREEMENT ("Agreement") dated January ___3/___, 1996, by and between DELTA PLAZA, LLC, a Mississippi limited liability corporation ("Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC. , a Mississippi corporation ("Tenant").

AMENDING AND EXTENDING the Lease dated January 14, 1987, by and between Plaza Associates, Inc., Landlord's predecessor, and Malone & Hyde, Inc., Tenant's predecessor, as heretofore amended ("Lease"), covering that certain storeroom and its appurtenances known as Sack and Save #53, 800 MS Hwy 1 South, Delta Plaza Shopping Center, in the City of Greenville, County of Washington, and State of Mississippi ("Premises").

FOR AND IN CONSIDERATION of the Premises, and for other good and valuable consideration, the receipt and sufficiency of all of which is acknowledged by the parties hereto, and of the terms and conditions hereinafter set forth, Landlord and Tenant agree that, effective as of February 1, 1996:

1.   The term of the Lease shall be extended for a period of fifteen (15) years, and shall end on the last day of the month following the fifteenth (15th) anniversary of the date hereof.

2.   The paragraph entitled "RENEWAL OPTIONS" set forth on pages 1 and 2 of the Lease shall be amended to read and provide, in its entirety, as follows:

"Tenant shall be entitled to two (2) successive renewals hereof, each for a term of five (5) years, upon the same terms and conditions as herein set forth, except as to rent, term and number of renewals and, unless Tenant shall notify Landlord not less than one hundred eighty (180) days prior to the expiration of the primary term, or of any renewal thereof, of its intention not to exercise its right to renew this Lease, Tenant shall be deemed to have exercised its option to renew this Lease for the next ensuing term and shall not be required to give Landlord any further notice of its intention to avail itself of such renewal term.   In the event Tenant shall give notice of its intention not to exercise its right to renew this Lease, all succeeding renewals shall thereupon terminate.   Should Tenant remain in possession of the Premises after any termination of this Lease or of any renewal term of which Tenant shall have availed itself or after any earlier termination provided or permitted herein, it shall be a tenant from month-to-month at the same rental and on the same conditions, except as to term, as provided herein."

3.   Tenant shall pay to Landlord, as rent for the Premises (including that portion of the second floor presently utilized by Tenant), in lieu of the rents set forth in the paragraphs entitled "RENT" and "OPTION TO USE SECOND FLOOR" set forth on pages 2 and 3 of the Lease:

(A) during the first five (5) years of the extended term of this Lease, the sum of Eleven Thousand Eight Hundred Seventy-seven and 00/100 Dollars ($11,877.00) per month;

(B) during the last ten (10) years of the extended renewal term, the sum of Fourteen Thousand Seven Hundred Fifty-three and 00/100 Dollars ($14,753.00) per month;

(C) during the first five (5) year renewal term, the sum of Seventeen Thousand Five Hundred Ninety-three and 00/100 Dollars ($17,593.00) per month; and

(D) during the second five (5) year renewal term, the sum of Twenty Thousand Four Hundred Forty-nine and 00/100 Dollars ($20,449.00) per month.

4.   Tenant shall pay to Landlord during the extended term of this Lease, as Tenant's contribution to Landlord's expense in maintaining the Common Facilities, the sum of One Thousand One Hundred Sixty-nine and 50/100 Dollars ($1,169.50) per month in lieu of the amounts set forth in the paragraph entitled "COMMON FACILITIES MAINTENANCE" and in paragraph 3 of Amendment I to Lease, which amount shall be subject to a CPI adjustment at the beginning of each renewal option period.   For the first renewal option period, the adjustment shall be computed using the CPI for the month of January, 1996 (All Items (1982-84=100), All Urban Consumers, U. S. City Average), compared to the CPI for the month of December, 2010; and for the second renewal option period the

1

adjustment shall be computed using the CPI for the month of January, 2011, compared to the CPI for the month of December, 2015.

    5.  The Lease, as heretofore amended, and hereby amended and extended, is ratified, confirmed and continued.

    6.  This Agreement shall bind and benefit Landlord, their heirs, administrators, executors, successors and assigns, and Tenant, its successors and assigns.

    7.  Each party executing this Agreement represents and warrants that they are a party hereto, or an agent of a party hereto, duly authorized to execute this Agreement on behalf of such party and to bind that party to the performance of such party's obligation hereunder.

    EXECUTED as of the date first herein specified.


LANDLORD:

DELTA PLAZA, LLC

By: _____
        Vardi Jeidel, Member


TENANT:

JITNEY-JUNGLE STORES OF AMERICA, INC.

By: _____
        W. H. Holman, Jr., President

Attest: _____
        Roger P. Friou, Secretary

2

## AGREEMENT AMENDING LEASE

**THIS IS AN AGREEMENT** ("Agreement") dated July __19__, 2000, by and between DELTA PLAZA LLC, a Mississippi limited liability company ("Landlord"), and JITNEY-JUNGLE STORES OF AMERICA, INC., a Mississippi corporation, Debtor-In-Possession ("Tenant").

**AMENDING** the lease dated January 14, 1987, between Plaza Associates, Inc., Landlord's predecessor, and M & H Food Companies, Inc., Tenant's predecessor, as heretofore amended and extended (collectively "Lease"), covering a storeroom and its appurtenances known as Sack and Save #53, 800 Highway 1 South ("Premises"), Delta Plaza Shopping Center, in the City of Greenville, County of Washington and State of Mississippi ("Shopping Center").

**FOR AND IN CONSIDERATION** of the premises, and for other good and valuable consideration, the receipt and sufficiency of all of which is acknowledged by the parties hereto, and of the terms and conditions hereinafter set forth, Landlord and Tenant agree that:

1.    On October 12, 1999 ("Petition Date"), Jitney-Jungle Stores of America, Inc. and its affiliated companies ("Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.  The Debtors Chapter 11 cases are currently pending in the United States Bankruptcy Court for the Eastern District of Louisiana ("Bankruptcy Court"), Case number 99-17191.  Landlord and its affiliates, if any, hereby waive any and all claims they have, or may have, related or pursuant to the Lease, the Premises or the Shopping Center, and to that certain lease between Landlord and Pump And Save, Inc., a Mississippi corporation, dated January 31, 1996, as heretofore supplemented and amended (collectively, "P&S Lease"), on or before the Petition Date.

2.    If either Tenant or Pump And Save, Inc. (a) file a petition for relief under Chapter 7 of the United States Bankruptcy Code; (b) discontinue their operations in either of their respective premises in the Shopping Center, or (c) subleases or assigns the Lease and/or the P&S Lease to third parties without the consent of Landlord then, in any such event, the terms of this Agreement shall immediately terminate forthwith, and the terms of the Lease in effect immediately prior to the execution of this Agreement shall be reinstated except that the pre-petition claims waived in Paragraph 1 above are permanently waived.

3.    The Lease, as heretofore amended and extended, and hereby amended, is ratified, confirmed and continued; provided, however, that this Agreement shall be subject to the approval of the Bankruptcy Court pursuant to a motion to assume the Lease, as hereby amended, and to assume the P& S Lease.

4.    Landlord represents and warrants that this Agreement does not violate the terms of any agreement between Landlord and any mortgagee, secured party and/or other creditor or landlord.

5.    This Agreement shall bind and benefit Landlord and Tenant, their successors and assigns.

6.    Each party executing this Agreement represents and warrants that they are a party hereto, or an agent of a party hereto duly authorized to execute this Agreement on behalf of such party and to bind that party to the performance of such party's obligation hereunder.

**EXECUTED** as of the date first herein specified.

**LANDLORD:**                                          **TENANT:**

DELTA PLAZA, LLC                              JITNEY-JUNGLE STORES OF AMERICA, INC.
                                                            Debtor-In-Possession

By: _____              By: _____
Gabriel Jeidel, Managing Member                Michael A. Feder, Chief Restructuring Officer

## CORPORATE GUARANTY OF LEASE OBLIGATIONS

THIS CORPORATE GUARANTY OF LEASE OBLIGATIONS (this "Guaranty") is given as of the date indicated below by **WINN-DIXIE STORES, INC.**, a Florida corporation ("Guarantor") to and in favor of **DELTA PLAZA, L.L.C.** ("Landlord") on behalf and for the account of **SAVE RITE GROCERY WAREHOUSE, INC.**, a Florida corporation ("Tenant").

### RECITALS:

A.    Pursuant to an Assignment and Assumption of Lease dated January 11, 2001 (the "Assignment"), Tenant was assigned all of the tenant's interest in, and assumed tenant's obligations accruing from and after the date of said Assignment under, that certain Lease, as amended from time to time, as described on attached Exhibit A (the "Lease") covering those certain premises known as Store #J53 in Greenville, Washington County, MS, as more particularly described in the Lease (the "Premises").

B.    Landlord's leasing of the Premises to Tenant will, directly or indirectly, materially benefit Guarantor, and therefore, Guarantor has agreed to execute and deliver this Guaranty.

**NOW THEREFORE,** for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor jointly, severally, unconditionally and irrevocably guarantees the full and prompt payment, performance and observance of all the obligations, covenants, conditions and agreements in the Lease to be paid, performed and observed by Tenant and Tenant's successors, subtenants and assigns accruing from and after the date of said Assignment, and further agrees as follows:

1.    The foregoing recitals are true and correct and are incorporated herein.

2.    If Tenant fails, after notice and an opportunity to cure as provided in the Lease, to timely perform its obligations under the Lease, then Guarantor shall:

(a)    With respect to monetary defaults, following ten (10) days written notice from Landlord, cure such monetary default(s) of Tenant to the extent that Tenant does not have a right, under the Lease, to offset any amount due to Landlord because of any default by Landlord under the Lease;

(b)    With respect to non-monetary defaults, following twenty (20) days written notice from Landlord, cure such non-monetary default(s) of Tenant, provided, however, that if the nature of such non-monetary default is such that the default is not capable of a cure within twenty (20) days, then Guarantor's obligation under this Guaranty shall be to commence a cure and diligently prosecute the same to completion within a reasonable time after receipt of Landlord's notice.

3.    (i) All amendments, modifications and extensions of the Lease shall be valid and enforceable against Guarantor so long as Guarantor owns or controls Tenant; (ii) all amendments, modifications and extensions of the Lease that do not increase or extend Guarantor's obligations under this Guaranty shall be valid and enforceable against Guarantor whether or not Guarantor owns or controls Tenant; and (iii) any renewal or extension exercised by Tenant, its successors, subtenants or assigns which is presently provided for under the Lease shall be valid and enforceable against Guarantor whether or not (a) the renewal or extension is automatic or (b) Guarantor owns or controls Tenant.

4.    Guarantor shall be bound by all choice of law and forum selection clauses provided in the Lease.

5.    It is agreed that the failure of Landlord to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants to the Lease or to exercise any right therein contained shall not be construed or deemed to be a waiver or relinquishment for the future of such term, provision, covenant or right, but the same shall continue and remain in full force and effect. Receipt by Landlord of rent with knowledge of the breach of any provision of the foregoing Lease shall not be deemed a wavier of such breach.

6.    Guarantor hereby waives (a) notice of acceptance of this Guaranty, (b) except with respect to notice and opportunity to cure monetary and non-monetary defaults as set forth in paragraph 2 above, any right to require Landlord to proceed against the Tenant or any other Guarantor or any security deposit or other security it may hold under the Lease, (c) except with respect to notice and opportunity to cure monetary and non-monetary defaults as set forth in paragraph 2 above, any right to require Landlord to proceed under any other remedy Landlord may have before proceeding against Guarantor, and (d) any right of subrogation.

7.    The obligations of Tenant under the Lease to execute and deliver estoppel statements and financial statements, as therein provided, shall be deemed to also require the Guarantor to do and provide the same relative to Guarantor.

8.    Except as set forth in paragraph 3 above, no subletting, assignment or other transfer of the Lease, or an interest therein, shall operate to extinguish or diminish the liability of the undersigned Guarantor under this Guaranty, and whenever reference is made to the liability of Tenant named in the Lease, such reference shall be deemed likewise to refer to the liability of any successor, subtenant or assign of Tenant or of the undersigned Guarantor.

9.    The obligations of Guarantor hereunder shall include payment to Landlord of all reasonable costs of any legal action by Landlord against Guarantor, including reasonable attorneys' fees.

10.    All notices required or permitted to be given under this Guaranty shall be in writing and sent to the address(es) or telecopy number(s) set forth below. All payments made under this Guaranty shall be sent to Landlord at the address below or at such other address as Landlord shall provide by written notice from time to time. Each communication shall be deemed duly given and received: (a) as of the date and time the same is personally delivered

with a receipted copy; (b) if given by telecopy, when the telecopy is transmitted to the recipient's telecopy number(s) and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (c) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (d) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit with same.

Landlord :

Delta Plaza LLC
c/o Stirling Properties
109 Northpark Blvd., Ste. 3005
Covington, LA 70433
Fax: 504-898-2077

53

or at such other address as Landlord may direct from time to time.

Guarantor:

Winn-Dixie Stores, Inc.
Attn: Legal Department
5050 Edgewood Court
P.O. Box B
Jacksonville, FL 32203-0297
Telecopy: (904) 783-5138

or to such other address as Guarantor may direct in writing from time to time.

11.     This Guaranty shall inure to the benefit of Landlord and its successors and assigns and shall bind Guarantor, its successors and assigns.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date indicated below.

WINN-DIXIE STORES, INC.

By: _____

Dennis M. Sheehan
Its: Senior Vice President
Date: January 11, 2001

Store #J53

ACKNOWLEDGMENT OF GUARANTOR
(Corporate)

STATE OF ILLINOIS          )
                           ) ss.
COUNTY OF COOK             )

On this _10th_ day of January, 2001, before me, the undersigned, a Notary Public in and for the County and State aforesaid, came Dennis M. Sheehan, who is personally known to me to be the same person who executed the foregoing Corporate Guaranty of Lease Obligations as of said corporation, and said Dennis M. Sheehan duly acknowledged the execution of the same as an act of said corporation and for and on behalf of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year last above written.

_Mabra L. McCumber_
Notary Public, State of Illinois
My Commission Expires:

[NOTARIAL SEAL]

"OFFICIAL SEAL"
Mabra L. McCumber
Notary Public, State of Illinois
My Commission Expires Aug. 13, 2003

Store #153



## WINN DIXIE
### America's Supermarket

January 23, 2001

2|5|01
① Linda – Pls cc: Jill Meucci
Gabriel Seidel
Marsha Temple

② Get – To Abstract.
See guaranty.

③ Jmb –

④ file: Sack and Save / Delta Plaza / Lease Docs

Requesty cc: of Assignment DPT

DENNIS M. SHEEHAN
Senior Vice President
Director of Real Estate

Delta Plaza, LLC
c/o Stirling Properties
Attn: Jill Meucci
P.O. Box 10667
Jackson, MS 39289

Re:     Former Jitney Store #53
        Winn-Dixie Store #2625
        Location: 800 Hwy 1 South, Greenville, Mississippi

Dear Ms. Meucci:

Please be advised that on Thursday, January 11, 2001, Save Rite Grocery Warehouse, Inc. took an Assignment of Lease from Southern Jitney Jungle Company on the referenced location.

As your new tenant, I would like to provide contact information for individuals within Winn-Dixie who can assist you should you have questions or issues relating to rental payments, maintenance or lease issues. The contacts are as follows:

### Rental Payments
Lease Accounting
c/o Jason Singley or Romeo Mayo          Phone:    (904) 783-5545/5857
Winn-Dixie Stores, Inc.                  Fax:      (904) 370-6389
P. O. Box B                              E-mail:   jasonsingley@winn-dixie.com
Jacksonville, Florida 32203                        romeomayo@winn-dixie.com

### Maintenance
Mike Butler                              Phone:    (817) 921-1306
Winn-Dixie Louisiana, Inc.               Fax:      (817) 921-1380
P. O. Box 1540                           E-mail:   mikebutler@winn-dixie.com
Fort Worth, Texas 76101

### Real Estate Manager
Ed Naylor                                Phone:    (504) 731-2210
Winn-Dixie Louisiana, Inc.               Fax:      (504) 731-2379
P. O. Box 51059                          E-mail:   ednaylor@winn-dixie.com
New Orleans, Louisiana 70151

In addition, enclosed please find a Guaranty which was executed by Winn-Dixie Stores, Inc. as guarantor of tenant's lease obligations.

Should you have any comments or questions regarding any matters relating to this location, please do not hesitate to contact us. We look forward to a mutually beneficial and profitable relationship.

Sincerely,

Dennis M. Sheehan

WINN-DIXIE STORES, INC.    5050 EDGEWOOD COURT   P.O. BOX B   JACKSONVILLE, FLORIDA 32203-0297   (904) 783-5000

WD 22-81