E-MAIL: MZK_ATTY@YAHOO.COM

October ==, 2002

Winn-Dixie Food Stores
General Office
720 Locust Lane          **DRAFT**
Louisville, KY 402==

    Re: Ernest Allen

Dear Madam or Sir:

    I represent Ernest Allen, in his claim for compensation for the injuries, both physical and emotional, which he suffered when he was assaulted, unlawfully detained against his will, and falsely charged with shoplifting by a security officer at a Winn-Dixie store on November 13, 2001. Mr. Allen was acquitted of the charge on June 3, 2002. Mr. Allen is a 70 year old man who supplements his Social Security with work as a security guard himself. Since this incident, Mr. Allen has been burdened with a police record which is only now being expunged. As a result, Mr. Allen has been unable to find suitable work. Additionally, he suffered neck, shoulder, wrist and ankle injuries from being pushed against a wall by the security guard and then forced to go to a secluded area within the store while awaiting the arrival of the police. He also suffered the indignity of being in jail overnight as a result of these unfounded allegations.

    In order to avoid litigation, we would be willing to settle all of these related claims fro the amount of $_____.

    If we have not heard from you by the close of business, Friday, November 1, 2002, we will have no alternative but to file suit, and we would not be bound by the above offer.

    Thank you very much for your prompt consideration.

                        Very truly yours,

                        MARTIN Z. KASDAN, JR.

MZK:me
encl.

(2) Neal J. Prendergast, M.D., Breckenridge Urology Group, PSC, 912 Dupont Rd., Louisville, KY 40207.

(3) Jewish Hospital, 217 E. Chestnut St., Louisville, KY 40202

(4) Norton Hospital, 200 E. Chestnut St., Louisville, KY 40202

**INTERROGATORY NO. 5:** With respect to any claim for lost wages, give the following information:

    (a) The name and address of your employer at the time of the incident which is the subject of this lawsuit;

    (b) The dates on which you claim to have been unable to work as a result of injuries alleged in the Complaint; and

    (c) The total amount of lost wages which you claim including a statement of the facts which support your lost wage claim (e.g., missed five days work, eight hours per day at $3.50 per hour.)

**ANSWER:**

**INTERROGATORY NO. 6:** Describe fully any illnesses, injuries, diseases, defects and/or operations requiring the care of a doctor which you have had, suffered, or sustained at any time <u>before</u> the incident described in the Complaint or <u>after</u> the incident described in the Complaint which are not directly related to the incident which is the subject of this action.

**ANSWER:**

**INTERROGATORY NO. 7:** Describe fully any accidents/incidents of every nature, kind and description which you may have sustained <u>before</u> the accident which is the subject matter of this lawsuit, or which you may have sustained <u>after</u> this incident occurred, giving the dates of any accident(s)/incident(s), time and place of same whether you sustained any personal injury and, if so,

the names of doctors or institutions treating you. (This includes, but is not limited to, work related incidents, automobile accidents, slip and fall incidents, product incidents, and any and all other types of incidents.)

**ANSWER:**

There are no other "incidents" whether characterized as "work related incidents, automobile accidents, slip and fall incidents, product incidents, and any and all other types of incidents."

**INTERROGATORY NO. 8:** If a claim was made as a result of any of these other accidents/incidents which you may have sustained, as set forth in answer to Interrogatory No. 7, give the name of the person, company or organization against whom such claim was made, and if insured, give the name of the insurance company, together with the name of any attorney you consulted to handle said claim, if an attorney was consulted.

**ANSWER:**

Not Applicable.

**INTERROGATORY NO. 9:** List names, addresses and telephone numbers of all witnesses that have or may have knowledge of any relevant facts concerning the alleged incident of November 13, 2001, and set forth in specific detail the exact information such person provided. (This shall include such witnesses not only known by the Plaintiff, but known by Plaintiff's attorney.)

**ANSWER:**

The Plaintiff, of course, is a witness. Ernest Allen, 4515 Stony Brook Dr., Louisville, KY 40299, phone: 495-2260. His wife, Elizabeth Allen (same address and phone), is a witness to the injuries and to the problems suffered by Plaintiff since the incident, but not to the incident itself. Defendant Talmay Anderson, 629 Rocky Hill Estate Road, Clarkson, KY 42726, an agent and/or employee of Defendants, (phone number unknown), is an adverse witness. According to the

JEFFERSON DISTRICT COURT                    NO. 01-CR-~~00555~~

COMMONWEALTH OF KENTUCKY                                    PLAINTIFF

VS.              MOTION FOR DISCOVERY,
              DISCLOSURE OF EXCULPATORY
           EVIDENCE, AND A BILL OF PARTICULARS

ERNEST S. ALLEN                                             DEFENDANT

\* \* \* \* \* \* \* \*

Comes the defendant, ERNEST S. ALLEN, by counsel, pursuant to the United States and Kentucky Constitutions, and states that in order to assist him in the material preparation of his defense, he needs the following items within the knowledge, possession, custody or control of the County Attorney or his agents:

1. The substance of any oral incriminating statement made by the defendant to any witness, pursuant to RCr 7.24(1);

2. Any written or recorded statements made by the defendant, pursuant to RCr 7.24 (1);

3. The substance of any oral incriminating statement, and any written or recorded statement of any co-defendant which relates to the subject matter of this charge;

4. Any books, papers, documents or tangible items which the Commonwealth may seek to introduce in evidence during any trial of this action, pursuant to RCr 7.24(2), including, but not limited to:

    Any audiotape or videotape recordings made by any agent of the Commonwealth during the course of this investigation;
    Any documents signed by the defendant;
    All photographs made in connection with this investigation, including any photographs used in any identification proceeding;
    All police reports made in connection with this investigation.

5. Pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>United States v. Bagley</u>, 473 U.S. 667 (1985), the defendant requests any and all evidence in the possession of the Commonwealth or its agents that might fairly be termed "favorable" to this defendant, whether that evidence either be completely exculpatory or simply tends to reduce the degree of offense or punishment therefore, or evidence that may be termed "favorable" in the sense that it may be used by the defendant to impeach the

credibility of any witness the government intends to call in this matter. Specifically, the defendant seeks, but does not limit his request to the following:

    The nature and substance of any agreement, immunity promise, or understanding between the government, or any agent of the government, and any witness. Such an agreement would include any agreements or understandings between the police officers in this case and the confidential informant. <u>Giglio v. United States</u>, 405 U.S. 150 (1972);

    The original statements made by any witness to be called by the Commonwealth in this case if that witness has later retracted, changed, modified, or enlarged the subject matter of this statement such that this change could be used to impeach the witness due to an inconsistent statement. <u>United States v. Enright</u>, 579 F.2d 980 (6th Cir. 1978);

    Any and all interview memoranda or reports which contains any information, whatever the sources, which may fairly be said to contradict or be inconsistent with any evidence which the Commonwealth intends to introduce during this trial;

    The criminal records, including records of any witnesses to be called by the Commonwealth, including any felony convictions within the past ten (10) years and any evidence which suggests that any witness called by the Commonwealth is, or was at the time of this investigation, on any form of probation, conditional discharge, diversion agreement, or had any charges pending against him or her. See, <u>Commonwealth v. Richardson</u>, Ky., 674 S.W.2d 515 (1984); <u>Rolli v. Commonwealth</u>, Ky.App, 678 S.W.2d 800, 802 (1984); <u>Stump v. Commonwealth</u>, Ky.App., 747 S.W.2d 607, 610 (1988); <u>Spears v. Commonwealth</u>, Ky.App., 558 S.W.2d 641 (1977); <u>Davis v. Alaska</u>, 415 U.S. 308 (1974); <u>Adcock v. Commonwealth</u>, Ky., 702 S.W.2d 440, 441 (1986); <u>Sanborn v. Commonwealth</u>, Ky., 754 S.W.2d 534, 548 (1988);

    Any information that any evidence or materials have been destroyed or lost in this case. <u>Green v. Commonwealth</u>, Ky.App., 684 S.W.2d 13, 16 (1984); <u>James v. Commonwealth</u>, Ky., 482 S.W.2d 92 (1972);

6. Pursuant to RCr 6.22, that the Commonwealth supply to the defendant a Bill of Particulars outlining with specificity the exact nature of the defendant's alleged criminal conduct, and which includes, pursuant to <u>James v. Commonwealth</u>, Ky., 482 S.W.2d 92 (1972), the name and current addresses of any eyewitness to any portion of the alleged offense.

WHEREFORE, the defendant, by his counsel, respectfully moves this Court to enter an order requiring the Commonwealth to respond to this motion in writing and to supply the above requested information and materials within a set period of time. For the convenience of the Court a proposed order is attached.

/s/ M Z K J

# ANTOLIN J. PEREZ MD

706 East Broadway
Louisville Kentucky 40202

Phone: (502) 588-3546
Fax: (502) 588-3549
ajp0825@aol.com

November 6, 2002


Re: Ernest Allen
Date of Birth: September 26, 1930

    The above mentioned patient has been under my care since 1992, due to Hypertension, and Osteoarthritis. He was taking Feldene 20mgs every day for arthritis, Darvocet N100 twice a day as needed for pain, and Procardia XL 60mgs one everyday for hypertension, before I took over his care.

    On November 14, 2001 I examined Mr. Allen after he complained of right arm, neck and chest pain. Mr Allen was upset and his blood pressure was elevated to 170/72. A previous blood pressure on September 15, 2001 was at 128/70. The patient complained that he suffered a trauma to his right wrist and neck. Apparently, a confrontation with a security guard at a grocery store precipitate his trauma. After the accident, the patient remained very traumatized and developed a post-traumatic arthritis with pain to his right arm.

    Mr. Allen was evaluated by the AMA Guidelines to the Evaluation of Permanent Impairment for his neck (cervical spine) pain and I get approximately a 16% Final Whole Body Impairment. Dr. Watley, an associate in my office performed a J-Tech Computerized Spinal Range of Motion Examination and came to the Whole Person Spine Impairment of 18% and a Final Whole Person Impairment of 18%. Enclosed in a copy of the Evaluation

Respectively Submitted

Antolin J. Perez MD
AJP/sdw
cc; Enclosure

**Computerized Spinal Range of Motion Exam**
Dual Inclinometer Protocol with automatic subtraction of T1 and T12

Patient Name: Ernest Allen
Description: Cervical ROM
Examiner: Dr. Watley
Spine ROM Impairment (WP): 18%

11/04/2002
Page 1 of 2

## Cervical

| (active) | Norm | Rep 1 | Rep 2 | Rep 3 | Rep 4 | Rep 5 | Rep 6 | Status | Valid | Max | Avg | Dev | Impair |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Flexion | 50+ | 29 | 26 | 21 | | | | | Yes | 29 | 25 | 4° | 4% |
| Extension | 60+ | 17 | 15 | 19 | | | | | Yes | 19 | 17 | 2° | 6% |
| Left Lateral | 45+ | 12 | 11 | 8 | | | | | Yes | 12 | 10 | 2° | 4% |
| Right Lateral | 45+ | 19 | 15 | 11 | | | | | Yes | 19 | 15 | 4° | 2% |
| Left Rotation | 80+ | 62 | 68 | 55 | 61 | 57 | | | Yes | 61 | 58 | 5% | 1% |
| Right Rotation | 80+ | 54 | 61 | 64 | 66 | 63 | | | Yes | 66 | 64 | 3% | 1% |

## Thoracic

| (active) | Norm | Rep 1 | Rep 2 | Rep 3 | Rep 4 | Rep 5 | Rep 6 | Status | Valid | Max | Avg | Dev | Impair |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Min. Kyphosis | 20+ | | | | | | | | | | | | |
| Flexion | 60+ | | | | | | | N/A | | | | | |
| Left Lateral | 10+ | | | | | | | | | | | | N/A |
| Right Lateral | 10+ | | | | | | | | | | | | N/A |
| Left Rotation | 30+ | | | | | | | | | | | | |
| Right Rotation | 30+ | | | | | | | | | | | | |

## Lumbar

| (active) | Norm | Rep 1 | Rep 2 | Rep 3 | Rep 4 | Rep 5 | Rep 6 | Status | Valid | Max | Avg | Dev | Impair |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Left Lateral | 25+ | | | | | | | | | | | | |
| Right Lateral | 25+ | | | | | | | | | | | | |
| Left Rotation | 0 | | | | | | | | | | | | N/A |
| Right Rotation | 0 | | | | | | | | | | | | N/A |
| Min. Lordosis | 15+ | | N/A | N/A | N/A | N/A | N/A | | | N/A | N/A | N/A | N/A |
| Flexion | 60+ | | | | | | | N/A | | | | | |
| Extension | 25+ | | | | | | | N/A | | | | | |
| Sacral Hip Flx. | >45 | | | | | | | N/A | N/A | | | | N/A |
| Sacral Hip Ext. | >5 | | | | | | | N/A | N/A | | | | N/A |
| Left Straight Leg Raise | 65 | | | | | | | N/A | | | | | N/A |
| Right Straight Leg Raise | 65 | | | | | | | N/A | | | | | N/A |
| Tightest Leg Raise -(Sac Flex + Sac Ext) | | | | | | | | | | | | | |

1. ROM is valid if for three consecutive rep's, deviation is within the greater of 5° or 10% of average. If this criteria is not met, impairment is not rated.
2. Negative results indicate an inability to reach neutral position (ankylosis) or a lordotic/kyphotic curve opposite to the normal curve at the neutral position.
3. Impairments are based on the AMA's "Guides to the Evaluation of Permanent Impairment", 5th edition.
4. If "d" for deferred is listed adjacent to an impairment rating, this examiner is not using the rating in the calculation of final impairment.
5. An automatic subtraction dual inclinometer was used negating the need for documenting the T1 and T12 intermediate numbers.
6. SLR validity is determined from the last three valid consecutive readings by comparing the largest right SLR to largest left SLR, using the tightest of the two numbers, and subtracting the sacral flexion and extension values corresponding to the largest valid lumbar flexion and extension values, respectively.
7. * indicates motion opposite to normal

© Copyright JTech Medical Industries 1994-2001. All rights reserved.

Patient Name: Ernest Allen  
Description: Cervical ROM

11/04/2002  
Page 2 of 2

## The Spine

|  |  | Cervical | Thoracic | Lumbar | Other Table+ |
|---|---|---|---|---|---|
| 1. Spine ROM |  | 18% | 0% | 0% | 0% |
|  | WP Region Totals (combined): | 0% | 0% | 0% | 0% |
|  | WP Spine Total (combined): | 18% |  |  |  |

## Final Impairments:

| | |
|---|---|
| WP Spine Impairment: | 18% |
| FINAL WHOLE PERSON IMPAIRMENT: | 18% |

---

1. Impairments are based on the AMA's "Guides to the Evaluation of Permanent Impairment", 5th edition.
2. If "e" for exception is listed adjacent to an impairment rating, this examiner is taking exception to the calculation in the "AMA Guides".
+ Tables are based on Chapter 16, unless otherwise specified. © Copyright JTech Medical Industries 1997 - 2001. All rights Reserved.

**INTERROGATORY NO. 5:** With respect to any claim for lost wages, give the following information:
(a) The name and address of your employer at the time of the incident which is the subject of this lawsuit;
(b) The dates on which you claim to have been unable to work as a result of injuries alleged in the Complaint; and
(c) The total amount of lost wages which you claim including a statement of the facts which support your lost wage claim (e.g., missed five days work, eight hours per day at $3.50 per hour.)

**ANSWER:** (a) Brantley Security Services, 2445 Crittenden Drive, PO Box 17181, Louisville, KY 40217; Hall Security Service, Inc., 1400 Berry Blvd., Louisville, KY 40215.

(b) Due to the fact of the arrest and problems with the expungement which followed the Not Guilty Verdict (Trial Date June 6, 2002), my employment has been on again and off again. As a security guard, I could not maintain employment with the arrest record. Following the trial, even though there was an Expungement Order entered, records of my arrest were not properly expunged. There have been numerous times since then when I have applied for jobs for which I was qualified, but did not get them, due to the mysterious reappearance of these arrest records following the "expungement."

Separate from the issue of the arrest record problem and the expungement which did not truly expunge these records, I suffered medical problems which impaired my ability to maintain employment. For example, due to medications I had to take as a result of the injuries caused by the incident in question, I fell asleep on the job while working for Brantley, while on duty at UPS. I was off work for three weeks before Brantley could find an alternate placement for me, at Riverside Parking, where I worked for approximately six months. I was then transferred to a post at Churchill Downs, where I remained until the end of November 2002. I then drew Unemployment Insurance until I found employment with U S Security Associates Inc., 3113 Fern Valley Road, Louisville, KY 40213, in March of 2003, although this was only part-time until September. I had problems finding new employment during this period because I could not obtain police clearance due to the mysterious reappearance of the "expunged" records.

(c-) In short, this is not a situation where I can say that I was off work for "x" weeks and lost a specific amount of wages by multiplyting the hourly rate by hours lost. The best answer to this portion of the Interrogartory is to estimate that I have lost $======= based on comparing tax records, which have been previusly provided in the Response to Winn-Dixie's First Set of Requests for Production of Documents.

# HALL Security Service, Inc.

1400 Berry Boulevard
Louisville, Kentucky 40215
Phone (502) 368-3622
Fax (502) 368-1114

Jan 27, 2004

To Whom it may concern

RE: ERNEST ALLEN

Mr. Allen's employment was terminated Sept 23, 2002 because of surgery and was unable to return to work.

Carolyn James, Pres.

# SHOPLIFTING

If you see a customer hide merchandise in their clothing or in a package they are carrying, notify the Store Manager who will handle the situation in line with Company policy by contacting Winn-Dixie's Security Department prior to suspect leaving store.

In no event should an associate ever:

1. Accuse a person of stealing.
2. Search or detain a customer.
3. Take or attempt to take a written confession from any person.
4. Touch or lay hands on a customer in any way.

## Apprehension of Shoplifters—What To Do—Company Policy . . . .

Only Store Managers, Co-Managers, and Assistant Store Managers are authorized to detain a customer for questioning concerning shoplifting. These individuals must seek counsel from Winn-Dixie's Security Department.

### Five Musts . . .

1. You must see the person take our merchandise.
2. You must see the person conceal our merchandise.
3. You must have the person under constant observation after he/she has taken our merchandise. (If you lose sight of the person for even a few seconds, do not attempt to detain him/her. He/she may have dropped the merchandise.)
4. You must not approach the person until after he/she has gone through the cashier stand and left the premises of the store with the merchandise. Be sure the person did not secretly deposit the merchandise elsewhere in the store or pass it along to an accomplice.
5. You must be positive that the person did not pay for the merchandise at the check stand.

# SOLICITATION AND DISTRIBUTION OF LITERATURE

The Company has a No Solicitation - Distribution Rule, WD 41-317, which is based on the principle that working time and working areas are for work and that solicitations at work cause associates to neglect their duties and usually interfere with the work of fellow associates.

Examples of solicitation for purposes of this rule must apply to collections of money to buy flowers for ill or deceased associates or relatives, sale of raffle tickets, associate betting pools, and the sale of Tupperware, Avon and other