UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In Re:

WINN-DIXIE RALEIGH, INC.,            Case No. 3:05-bk-03839-3F1
                                                         Chapter 11 (Jointly Administered)

           Debtor.

_____/

## CATAMOUNT ROCKINGHAM, LLC'S MOTION FOR PAYMENT BY WINN-DIXIE RALEIGH OF POST-PETITION ADMINISTRATIVE CLAIM (STORE 2045)

Catamount Rockingham, LLC, a Nevada limited liability company, as assignee of Helene Funk and Peter W. Merner, as nominee for John H. O. La Gatta, as successor to Flask Corporation ("Rockingham"), respectfully requests that the Court direct and order the debtor, Winn-Dixie Charlotte, Inc. aka Winn-Dixie Raleigh, Inc. ("Debtor") to pay Rockingham's administrative claim in the amount not less than $22,586.23 (the "Administrative Claim"), and in support of its application states as follows:

       1.       On February 21, 2005 (the "Petition Date"), the Debtor filed its voluntary Petition for Relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Southern District of New York ("New York Court"). By order dated April 13, 2005, the New York Court transferred venue of this case to this Court.

       2.       Pursuant to that certain February 10, 1984 Lease and Sublease Agreement, as amended by that certain October 10, 1986 First Lease Modification Agreement, and that certain January 6, 1994 Lease Modification Agreement (as amended, the "Lease"), by and between Debtor and Rockingham for that certain realty Debtor refers to as Store # 2045 at 1206 Rockingham Road, Rockingham, North Carolina (the "Premises"), Rockingham leased the Premises to Debtor. The Debtor has copies of the Lease and Sublease Agreement, the First Lease

- 2 -

Modification Agreement, the January 31, 1994 Lease Modification Agreement and the Notice of Change of Nominee (the "Lease Documents"). The Lease Documents are not attached hereto because of their length; however, Rockingham will provide copies of the Lease Documents to any party in interest upon request.

3. Pursuant to its September 8, 2005 Order Granting Motion to Reject Targeted Leases the Debtor is Unable to Sell (the "September 8 Order"), and its September 12, 2005 Order Granting Further Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (as thereafter amended by the Court's October 3, 2005 Order Correcting Order Dated September 12, 2005 Under 11 U.S.C. §365(d)(4) Granting Further Extension of Time to Assume or Reject Unexpired Leases of Non-residential Real Property (Docket No. 3434) to Modify Language of Paragraph 4 and Attach Amended Exhibit A) (as amended, the "September 12 Order," and collectively with the September 8 Order, the "Rejection Order"), this Court authorized the rejection of the Lease.

4. The Rejection Order stated that the Debtor was authorized to reject the Lease on "the later of (i) the tenth calendar day following service of the Rejection Notice; and (ii) the date on which Debtor has (a) vacated and surrendered possession of the premises; and (b) delivered all keys to the leased premises in the possession of the tenant to the affected landlord or, to the management office for the leased premises." (Rejection Order, ¶ 4). The Debtor tendered the keys to Rockingham on September 30, 2005, and vacated the Premises in advance of September 30, 2005. Pursuant to the terms of the Rejection Order, the effective date of the Debtor's rejection of the Lease was September 30, 2005 (the "Rejection Date").

5. Pursuant to 11 U.S.C. §365, the Debtor was obligated to make any payments due under the Lease from the Petition Date to and including the Rejection Date, including, but not limited to, rent, percentage rent, maintenance, insurance, and taxes.

6. As a result of the Debtor's obligations under §365, pursuant to 11 U.S.C. §§ 365(d)(3), 503(b)(1) and 507(a), Rockingham has the following administrative claims, among others, against Debtor under the Lease:

    a. <u>Percentage Rent</u>. Debtor is obligated to pay Rockingham, as an addition to the Basic Rent, amounts for Debtor's gross sales in the Premises (as defined in the Lease, "Percentage Rent") for the period from the Petition Date to and including the Rejection Date. Specifically, Debtor is obligated to pay Rockingham as Percentage Rent an amount equal to the amount, if any, by which 1% of all gross sales made by Debtor at the Premises during Debtor's fiscal year exceeds the Basic Rent reserved under the Lease. Upon information and belief, the Debtor's sales at the Premises did not reach sufficient levels to invoke this percentage rent clause. In the event that Rockingham receives subsequent information to the contrary, Rockingham reserves the right to amend this application to assert such additional amounts due.

    b. <u>Common Area Maintenance Charges</u>. The Debtor failed to pay its Common Area Maintenance Charges ("CAM Charges") for the calendar year 2004. The CAM Charges are payable to an adjacent real property owner which has made demand on Rockingham for payment of the 2004 CAM Charges. Rockingham believes that the adjacent land owner similarly will make demand on Rockingham for payment of the 2005 CAM Charges. Pursuant to the terms of the Lease, the Debtor is obligated to reimburse Rockingham for any CAM Charges paid by Rockingham on behalf of the

Debtor. Rockingham believes that the Debtor is indebted to Rockingham for 2005 CAM Charges in an amount of at least $6,150.07, which represents the proration of 2005 CAM Charges (based upon the 2004 numbers). Rockingham reserves the right to amend this administrative claim upon receipt of the 2005 CAM Charges. A copy of the 2004 CAM Charges is attached hereto as Exhibit 1.

c. Maintenance and Repair. Debtor was responsible for keeping the Premises in good condition, repair and appearance. After the Debtor vacated the Premises, Rockingham inspected the Premises through RTD Associates, P.A. As a result of the inspection, Rockingham learned that Debtor failed to maintain the walls and roof of the Premises and that Rockingham will need to make repairs to the Premises. Rockingham has included these damages in its general unsecured proof of claim. Rockingham reserves the right to amend this request for payment if Rockingham learns that any portion of the damages occurred after the Petition Date and before the Rejection Date.

d. Insurance. Debtor also was required by the Lease to maintain policies of insurance pursuant to which Rockingham was named an additional insured, and to not cancel such insurance without prior written notice to Rockingham. To the best of Rockingham's knowledge, the Debtor paid the insurance on the Premises during the period between the Petition Date and the Rejection Date. Should this information prove to be incorrect, Rockingham reserves the right to amend this application to assert additional amounts due.

e. Attorney's Fees and Costs. By virtue of Debtor's default under the Lease, Debtor is liable to Rockingham for Rockingham's enforcement of its rights under the Lease, including but not limited to its attorneys' fees and costs. Rockingham has

incurred $16,436.16 in fees prior to rejection of the Lease. Rockingham has not attached copies of the statements for these fees in order to preserve the attorney-client and attorney work product privileges, but will submit redacted copies thereof upon request.

7. Rockingham files this claim as an administrative claim pursuant to 11 U.S.C. § 507(a) based upon the Debtor's post petition occupancy of the Premises.

8. Rockingham reserves the right to amend and supplement this claim (including filing additional evidence in support of this claim) or to file additional claims, including, without limitation, all other claims at law or in equity arising on or after the Petition Date.

9. Case law supports Rockingham's request that the Claim be treated as an Administrative Claim and be paid promptly.

10. In other filings, the Debtor has asserted that it is responsible only for those charges under leases which have accrued during the post-petition, pre-rejection period. There is a split among the circuits as to whether lease charges which may have accrued prior to the petition date, but which are billed after the petition date, constitute administrative expenses. *Compare* In re Handy Andy Home Improvement Ctrs., Inc., 1444 F.3d 1125 (7th Cir. 1998) (holding that charges that accrued prior to the petition generally constitute pre-petition claims) *with* Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 268 F.3d 205 (3rd Cir. 2001)(holding that obligations which first become due after the order for relief constitute administrative claims).

11. This Court previously has adopted the Handy Andy proration approach, and Rockingham's request for payment is consistent with the reasoning of Handy Andy.

12. Rockingham is requesting that the Debtor pay Rockingham as an administrative claim for those charges that accrued during the Debtor's post-petition occupancy of the Premises.

The components of Rockingham's administrative claim are charges that accrued during the period between the Petition Date and the Rejection Date, regardless of the date for payment of any of the charges.

13.     The Debtor failed to pay CAM Charges for the Premises for the post-petition period. Based upon the 2004 CAM Charges, the prorated charge for the Debtor's post-petition occupancy of the Premises is $6,150.07.

14.     In paragraph 22(c), the Lease provides that the Debtor is responsible for payment of Rockingham's attorneys' fees in the event of a breach of the Lease. Commonly, courts have found that a landlord may recover its costs in enforcing the terms of its lease provided that the lease agreement provides for such fees and the fees are reasonable. See In re Child World, Inc, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); In re Shangra-La, Inc., 167 F.3d 843, 849-50 (4th Cir. 1999), and In re Crown Books Corp., 269 B.R. 12, 14-18 (Bankr. Del. 2001). As Rockingham has incurred attorneys' fees after the commencement of this case in connection with enforcing its rights under the Lease, Rockingham is entitled to a claim for its fees incurred during the Debtor's post petition occupancy of the Premises.

15.     Rockingham further requests that the Court order the immediate payment of Rockingham's administrative claim. Section 365(d) of the Code states that "[t]he trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected ..." 11 U.S.C. §365(d)(3)(emphasis added). Courts have interpreted "timely" to mean in accordance with the terms of the lease between the parties. See Ha-Lo Industries, Inc. v. Centerpoint Properties Trust, 342 F.3d 794, 798 (7th Cir. 2003)("obligations under an unexpired lease that arise after an order for relief ... are to be timely fulfilled under the terms of the lease").

As each of the obligations listed in this Administrative Claim is an obligation incurred during the Debtor's post-petition occupancy of the Premises, the Debtor should be required to pay those obligations in a timely fashion as directed by the Code. See Trizechahn 1065 Avenue of the Americas, LLC v. Thomaston Mills, Inc., 273 B.R. 284, 289 (M.D. Ga. 2002)("in the event sufficient funds are not available to pay all administrative claims this payment is subject to the trustee's right to seek recovery of all or part of the payment").

WHEREFORE, Rockingham respectfully requests that the Court enter an order allowing Rockingham's administrative claim in the amount of $22,586.23 and directing the payment of Rockingham's allowed administrative claim within ten (10) days after entry of an order on this motion.

I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. §1746(2) THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: September 19, 2006

By: _____
John H. O. La Gatta, Trustee of the La Gatta 1990 Trust, as Managing Member of Catamount KY-LS, LLC, a Nevada limited liability company

Dated: September 20, 2006

Respectfully submitted,

/s/ C. Daniel Motsinger
C. Daniel Motsinger, FBN 0362875
IN Atty. No. 10122-49
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204-2079
Telephone: 317/636-4341; Fax: 317/636-1507
E-mail: cmotsinger@kdlegal.com

-and-

Adam N. Frisch
Florida Bar No. 635308
Held & Israel
1301 Riverplace Blvd., Suite 1916
Jacksonville, FL 32207
(904) 398-7038; Fax: (904) 398-4283
E-mail: afrisch@hilawfirm.com

Attorneys for Catamount Rockingham, LLC, a Nevada limited liability company, as assignee of Helene Funk and Peter W. Merner, as nominee for John H. O. La Gatta, as successor to Flask Corporation

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing has been served upon the parties by operation of the Court's electronic filing system on September 20, 2006, as indicated below:

                                                   /s/ C. Daniel Motsinger
                                                   C. Daniel Motsinger

| | |
|---|---|
| Adam Ravin<br>Skadden Arps Slate Meagher & Flom, LLP<br>Four Times Square<br>New York, NY 10036 | Dennis F. Dunne<br>Milbank Tweed & Hadley<br>1 Chase Manhattan Plaza<br>New York, NY 10005 |
| Elana L. Escamilla<br>Office of United States Trustee<br>135 W. Central Boulevard, Suite 620<br>Orlando, FL 32806 | John B. McDonald<br>Akerman Senterfitt<br>50 N. Laura Street, Suite 2500<br>Jacksonville, FL 32202 |
| Cynthia C. Jackson<br>Smith, Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, FL 32201 | |

KD_671558_3.DOC

NOV 2 8 2005



36 RICHMOND PLAZA
ROCKINGHAM, NC 28379
Phone 910-997-2544
Fax     910-997-4042
E-Mail  rich.ges@carolina.net

November 28, 2005

Dear John,

It is our belief, and our attorneys, that as long as we do not receive payments for our expenses, the easement agreement is void.

I will again send you a copy of the easement agreement along with a bill for $10,157.35 (Ten Thousand, One Hundred Fifty Seven Dollars & Thirty Five Cents).

If your attorney has another opinion, I will be happy to discuss.

In short, if we get paid, we will honor the agreement.

Joseph Mendola

EXHIBIT
1

# TRI-CITY, INC 

36 RICHMOND PLAZA
ROCKINGHAM, NC 28379
Phone 910-997-2544
Fax    910-997-4042
E-Mail tricityges@carolina.net

June 3, 2005

Carol Canady
Winn-Dixie
PO Box 1760
Garner, NC 27529

RE:   C.A.M. Charges
      Store # 2045
      Rockingham, NC 28379

Dear Carol:

C.A.M. charges for year 2004, as follows:

| | | | |
|---|---|---|---|
| 1) | Utility Bills | | $2556.62 |
| 2) | Pilot Cleaning | 12 X 225 | $2700.00 |
| 3) | Insurance | | $2901.00 |
| 4) | Repair Parking Lot | | $2375.00 |
| 5) | Light Repairs | | $2700.00 |
| | | | $13,232.62 |
| Winn-Dixie Share 76.76% | | | X .7676 |
| Due Landlord | | | $10,157.35 |

Thanks,


George Short