UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

ORDER (A) AUTHORIZING THE DEBTORS
TO SELL EDGEWOOD OUTPARCEL AND RELATED
ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
AND INTERESTS, AND (B) GRANTING RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363 and Fed. R. Bankr. P. 6004: (a) authorizing Winn-Dixie Stores, Inc., a Florida corporation ("Winn-Dixie"), to sell a tract of land located in Jacksonville, Florida, as more particularly described on Exhibit A attached to the Motion (the "Edgewood Outparcel"), together with all related personal property and all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments to AJDC, LLC (the "Purchaser"), or to a party submitting a higher or better offer, free and clear of liens, claims, interests and encumbrances and (b) granting related relief (the "Motion").[1] A hearing on the Motion was held by the Court on September 21, 2006 (the "Sale Hearing"). The Court has read the Motion and considered the representations of counsel. Upon the

---

[1] All capitalized terms not otherwise defined by this Order will have the meaning ascribed to them in the Motion or the Purchase Agreement.

representations of counsel and without objection from the United States Trustee or any other interested party, the Court makes the following findings of fact:

    A.    This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

    B.    The Debtors solicited the highest or otherwise best offer for the Assets described in the Purchase Agreement (the "Assets") in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures").

    C.    The Debtors have provided interested parties (including all parties asserting claims on interests of the Assets, if any) with proper notice of the Motion, the Auction, the Sale Hearing and the transactions contemplated by the Sale pursuant to 11 U.S.C. §§ 102(1), 105(a), 363 and Fed. R. Bankr. P. 2002 and 6004 and Local Rule 2002-1, the Bidding Procedures Order and the Notice Procedures Order.

    D.    A reasonable opportunity to object or be heard with respect to the Motion and the sale of the Assets has been afforded to all parties in interest (including all third parties asserting Interests or Claims (as such terms are defined below) in, to or against the Assets, if any).

    E.    The Debtors marketed the Assets and conducted the Sale process in compliance with the Bidding Procedures Order. Through the Debtors' marketing efforts, the Debtors afforded all interested parties a reasonable opportunity to make higher or better offers to purchase the Assets.

    F.    Winn-Dixie (i) has full corporate power and authority to execute and consummate the purchase agreement attached as Exhibit A to this Order (the

"Purchase Agreement") and all related documents, and the sale of the Assets has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

G.  Under the Purchase Agreement Winn-Dixie is required to pay Purchaser's Broker fees of 3% of the Purchase Price if the closing timely occurs.

H.  Winn-Dixie has good business reasons to sell the Assets prior to filing a plan or reorganization pursuant to 11 U.S.C. § 363(b).

I.  Neither Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

J.  The Purchase Agreement was proposed, negotiated and entered into by Winn-Dixie and the Purchaser without collusion, in good faith and at arms'-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

K.  The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m).

L.  The consideration being provided by the Purchaser to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value and fair consideration for the Assets.

M.  Winn-Dixie's transfer of the Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with good and valid title in and to the Assets free and clear of any lien, interest or encumbrance of any kind or nature (collectively, the "Interests") and claim (as such term is defined in 11 U.S.C. § 101(5)) ("Claims") with the exception of the Permitted Encumbrances, as defined in the Purchase Agreement.

N.  Winn-Dixie may sell and transfer the Assets free and clear of all Interests and Claims (other than the Permitted Encumbrances) because any entity with any Interests or Claims, if any, in the Assets to be transferred (i) has consented to the sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. Holders of Interests and Claims, if any, who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

O.  The Court's approval of the Purchase Agreement and the sale of the Assets to the Purchaser, or its designee, are in the best interests of the Debtors, their estates, their creditors and other parties in interest. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted.

2. Any objections to the entry of this Order or to the relief granted and requested in the Motion that have not been withdrawn, waived or settled are denied and overruled on the merits.

3. The terms and conditions of the Purchase Agreement are approved. Pursuant to 11 U.S.C. §§ 105(a), 363(b) and this Order, the Debtors are authorized to consummate the Sale in accordance with the terms and conditions of the Purchase Agreement.

4. Winn-Dixie is authorized to consummate and implement fully the Purchase Agreement, including the payment of Purchaser's Brokerage fees, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement, and the Debtors are authorized to take all further actions as may reasonably be necessary or appropriate for the purpose of conveying the Assets to the Purchaser, or its designee, or as may be necessary or appropriate to the performance of the Debtors' obligations under the Purchase Agreement.

5. Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties without further order of the Court; provided, however, that, (a) the Debtors will first obtain the prior written consent of (i) the DIP Lender, and (ii) the Creditors' Committee, which consent will not be unreasonably withheld and (b) any such modification, amendment or supplement does not have a materially adverse effect on the Debtors' estates.

6. Winn-Dixie will transfer the Assets to the Purchaser, or its designee, upon Closing free and clear of all Interests and Claims (except for the Permitted Encumbrances). The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender and any other valid and enforceable liens, if any, including any lien held by the Duval County Tax Collector, will attach to the proceeds of

the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

7. Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, is a legal, valid, and effective transfer of the Assets and will vest the Purchaser, or its designee, with all right, title and interest of the Debtors in and to the Assets, free and clear of all Interests and Claims (except for the Permitted Encumbrances).

8. The consideration provided by the Purchaser, or its designee, for the Assets constitutes reasonably equivalent value and fair and reasonable consideration under the Bankruptcy Code and applicable non-bankruptcy law, and may not be avoided under 11 U.S.C. § 363(n).

9. Upon Closing of the Sale in accordance with the Purchase Agreement and this Order, the Purchaser is deemed to have acted in good faith in purchasing the Assets, as that term is used in 11 U.S.C § 363(m). Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Assets will not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

10. All entities that are presently in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors. Each of the Debtors' creditors is authorized and directed to execute any and all documents and take all other actions as may be necessary to release its Interests in and Claims against the Assets (except for the Permitted Encumbrances) (provided that the taking of such actions will not require such creditor to incur any material costs) as such Interests and Claims may have been recorded or may otherwise exist. In the event any creditor fails to release

its Interests in or Claims against the Assets, the Debtors are authorized to file or record a copy of this Order. Once filed, registered or otherwise recorded, this Order will constitute conclusive evidence of the release of all Interests in and Claims against the Assets (except for the Permitted encumbrances).

11. Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances or Assumed Liabilities) against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

12. Other than the Permitted Encumbrances, the Assumed Liabilities and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser and its designee, (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets. The Debtors' transfer of the Assets to the Purchaser, or its designee, does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or the Assets by reason of such transfer under the laws of the United States or any state or territory.

13. This Order is and will be effective as a determination that any and all Interests or Claims are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

14. Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and

marketable title in the Assets to the Purchaser, or its designee. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

15. This Order is binding in all respects upon, and inures to the benefit of, the Debtors, their estates and creditors, the Purchaser and its designee, and its respective affiliates, successors and assigns, and this Order is binding in all respects upon all persons asserting an Interest in or Claim against the Debtors' estates or the Assets. The sale is enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any chapter 7 or chapter 11 trustee of the Debtors and their estates.

16. During the pendency of the Debtors' jointly administered cases, this Court will retain exclusive jurisdiction (a) to enforce and implement the Purchase Agreement and any agreements and instruments executed in connection with the Purchase Agreement, (b) to compel delivery of possession of the Assets to the Purchaser, (c) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement and (d) to interpret, implement, and enforce the provisions of this Order.

17. All persons and entities that hold Interests in or Claims against the Debtors or the Assets are forever barred, estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale of the Assets.

18. Nothing contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or any order of this Court confirming such a plan, or any other order entered in these chapter 11 cases or in any subsequent chapter 7 cases will conflict with or derogate from the terms of this Order.

19. The failure specifically to include any particular provision of the Purchase Agreement in this Order will not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

20. After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Interests or Claims or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

21. To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the this Order will control.

22. Notwithstanding Fed. R. Bankr. P. 6004(g), this Order will take effect immediately upon entry.

Dated this 21 day of September, 2006 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed
to serve a copy of this Order
on all persons served with
the Motion.

00542083.2

10