IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.: 04 06352 CA 05

THE BEN TOBIN COMPANIES, LTD.,

     Plaintiff,

vs.

WINN-DIXIE STORES, INC.

     Defendant.

_____/

ORIGINAL
FILED

JUN − 2 2004

CLERK

## AMENDED COMPLAINT

The Ben Tobin Companies, Ltd. brings this action against the aforesaid named Defendant and alleges as follows:

1.    The Ben Tobin Companies, Ltd., is a Florida limited partnership ("Ben Tobin Companies").

2.    Winn-Dixie Stores, Inc. is a Florida corporation ("Winn-Dixie") doing business throughout Miami-Dade County and maintaining offices and stores and agents in Miami-Dade County.

3.    This is an action for damages in excess of $150,000.00 and within the jurisdiction of this Court.

4.    Plaintiff has complied with all conditions prerequisite for the bringing of this action.

5.    Springfield Center Associates, a Tennessee limited partnership, entered into a

CASE NO.: 04 06352 CA 05

Lease Agreement on certain property located in Tennessee with Winn-Dixie Louisville, Inc., a Kentucky corporation. A copy of the Lease is attached hereto as Exhibit "A".

6.  The aforesaid Lease was guaranteed by Winn-Dixie by instrument dated February 22, 1984 entitled "Guaranty". A copy of the aforesaid Guaranty is attached hereto as Exhibit "B".

7.  Winn-Dixie Louisville, Inc. was at all applicable times a subsidiary of and controlled by Winn-Dixie Stores, Inc.

8.  Winn-Dixie Louisville, Inc., a Kentucky corporation, ceased active status in Kentucky in approximately 1995 - 1996. At approximately that same time, Winn-Dixie Louisville, Inc., a Florida corporation merged with Winn-Dixie Charlotte, Inc., a Florida corporation and Winn-Dixie Charlotte, Inc., a Florida corporation, was the surviving corporation.

9.  Winn-Dixie Charlotte, Inc. is a Florida corporation with its principal office in Charlotte, North Carolina, but incorporated and maintaining a registered agent in the State of Florida

10.  Winn-Dixie Charlotte, Inc. is a subsidiary of and during all relevant periods herein has been controlled by Winn-Dixie.

11.  The aforesaid Lease, at Section 25, provides that the tenant has the right to assign the Lease without consent of the landlord provided that the tenant shall continue to remain liable and responsible for payment of rentals and due performance of all

2

SALOMON, KANNER, DAMIAN & RODRIGUEZ, P.A.

2550 BRICKELL BAY VIEW TOWER, 80 S.W. 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 379-1681 • TELECOPY (305) 374-1719

CASE NO.: 04 06352 CA 05

of the terms, covenants and conditions of the Lease.

12.    The Lease, at Section 26, provides that the tenant, at its option, shall be entitled to extend the Lease for a period of five (5) successive five (5) year periods.

13.    The Lessee's interest in the Lease was assigned by Winn-Dixie Louisville, Inc. to M&H Food Companies, Inc. ("M&H") by instrument dated October 22, 1987. A copy of which Assignment of Lease is attached hereto as Exhibit "C".

14.    M&H became, by merger and/or change of name, Malone and Hyde, Inc. ("Malone and Hyde") and eventually Fleming Companies, Inc. ("Fleming").

15.    The Lease provides, at paragraph 31 thereof, that the Lease, and all of the covenants and provisions thereof, "shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto," and "that each provision hereof shall be deemed both a covenant and a condition and shall run with the land."

16.    Fleming remained a successor Lessee under the Lease and remains as such to this day (subject to its default and its bankruptcy referred to below).

17.    Ben Tobin Companies became the owner of the property which is the subject of the aforesaid Lease, by way of mesne conveyances of the real property from Springfield Center Associates to the Ben Tobin Trust by Warranty Deed dated October 10, 1990 and recorded in Springfield County at Deed Book 305/818, and by Quit Claim Deed from the Ben Tobin Revocable Trust to the Ben Tobin Companies dated September 1995 and recorded in Springfield County at Deed

3

CASE NO.: 04 06352 CA 05

Book 341/767. A copy of those Deeds are attached hereto as composite Exhibit "D".

18. The Property Lease attached hereto as Exhibit "A" defines the landlord and the tenant to include "heirs, legal representatives, successors and assigns of the respective parties".

19. The aforesaid Deeds grant the aforesaid property to the Grantee and "its successors and assigns" and does grant all right, title and interest and appurtenances.

20. The aforesaid Guaranty from Winn-Dixie does guarantee unto the landlord "its heirs, legal representatives, successors and assigns, the due performance and observance by Winn-Dixie Louisville, Inc. of all its obligations under the Lease" (as stated above, Winn-Dixie Louisville, Inc. is described in the Lease as Winn-Dixie Louisville, Inc., "its successors and assigns").

21. Fleming declared bankruptcy by filing in the United States Bankruptcy Court District of Delaware.

22. The Debtor, Fleming, rejected the aforesaid Lease and has failed to pay rent as at the effective date of rejection, November 30, 2003.

23. The Lease obligation runs until November 6, 2005 pursuant to Supplemental Lease Agreement dated December 9, 1985 by and between Springfield Center Associates and Winn-Dixie Louisville, Inc. executed by A. Dano Davis, Vice President of Winn-Dixie Louisville, Inc. and the Vice President of Winn-Dixie Stores, Inc. A copy of the Supplemental Lease Agreement is attached hereto as Exhibit "E".

4

CASE NO.: 04 06352 CA 05

24. The Lease payments and other Lease obligations, being taxes, have not been paid on the Lease from November 2003 to the present date, and will not be paid by the tenant, because of the rejection, through the termination date of the Lease November 6, 2005.

25. Damages through December 2003 amounted to in excess $156,000.00.

26. Damages through the termination of the Lease November 6, 2005 will exceed $300,000.00.

27. Plaintiff has taken reasonable steps to re-lease the premises but has been unable to do so.

28. Plaintiff has made demand upon the Defendant for payment of damages through December 2003. Defendant has failed to respond in any manner and, therefore, such failure to respond is considered a rejection.

WHEREFORE, Plaintiff prays for judgment against the Defendant Winn-Dixie Stores, Inc., in the amount in excess of $150,000.00 plus attorney's fees and costs and interest.

SALOMON, KANNER, DAMIAN & RODRIGUEZ, PA
Attorneys for Plaintiff The Ben Tobin Companies, Ltd.,
80 SW 8th Street, Suite 2550
Miami, FL 33130
Telephone: (305) 379-1681
Fax: (305) 374-1719

By_____
Vincent E. Damian, Jr.
FL Bar No. 017643

5

CASE NO.: 04 06352 CA 05

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to Alan M. Grunspan, Esq., Kaufman Dickstein & Grunspan, P.A., Wachovia Financial Center, 200 S. Biscayne Blvd., Suite 4650, Miami, FL 33131 this 2 8 day of May, 2004.

By _____
Vincent E. Damian, Jr.
FL Bar No. 017643

6

SALOMON, KANNER, DAMIAN & RODRIGUEZ, P.A.

2550 BRICKELL BAY VIEW TOWER, 80 S.W. 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 379-1681 • TELECOPY (305) 374-1719

# LEASE

THIS LEASE, made this _17th_ day of ___January___, 19 _84_

between ___SPRINGFIELD CENTER ASSOCIATES, a Tennessee Limited Partnership, By___

___Financial Packaging Corp. of Delaware, Inc. and HSN Consultants, Inc., Its___

___General Partners_____ (hereinafter called "Landlord")

and ___WINN-DIXIE LOUISVILLE, INC., a Kentucky corporation qualified to do___

___business in Tennessee._____

_____(hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

## WITNESSETH:

**PREMISES**

That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord, for the term hereinafter specified, the following described premises:

That certain store building, approximately __185__ feet in width by __175__ feet in depth, _together with vestibule entry approximately 115 feet in width by 11 feet 9 inches in depth and pad-mounted coolers and freezers and compactor on the rear thereof,_ and the land on which the same stands (hereinafter collectively called "demised premises"), which store building and related improvements are ~~xxxxx~~ constructed ~~xxxxxxx~~ ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ ~~xxxxxxxxxxxxxxxx~~ in the location and of the dimensions as outlined in red on the Plot Plan _dated October 25, 1983 by John A. Preston and Associates, Architects, Nashville, Tennessee, entitled "Mooreland Shopping Center, Springfield, Tennessee"_

attached hereto marked Exhibit "A" and by this reference made a part hereof.

The demised premises are located in a shopping center development (shown in detail on Exhibit "A"), known as ___"Mooreland Shopping Center"___ (hereinafter called "shopping center"), ~~located~~ _fronting on the southerly side_ _of U. S. Highway 41_

in the City of ____Springfield____, County of __Robertson__,

State of ____Tennessee____, the legal description of the shopping center being set forth on Exhibit "B" attached hereto and by this reference made a part hereof.



APPROVED
AS TO FORM
Division Legal Dept.
Winn-Dixie Stores, Inc.



**EXHIBIT**
tables **"A"**

FOR THE TENANT TO HAVE AND TO HOLD from the date of completion and acceptance of the renovation and additions to the store building and related improvements to be constructed by Tenant, as hereinafter provided, for an initial term of twenty (20) years, from such commencement date. Landlord and Tenant agree to execute a supplement hereto fixing the commencement date when the same shall have been determined as herein provided.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

**PRIOR LEASE**

1. It is understood that Tenant is lessee in possession of another store building within the shopping center under that certain Lease dated December 6, 1971 between Joe Henry Moore and Amelia Siler Moore, his wife, as Landlord, and Winn-Dixie Louisville, Inc., as Tenant, as amended by Supplemental Lease Agreement dated September 29, 1972, between the same parties, the interest of the Landlord thereunder now being vested by mesne assignments in the Landlord herein, and said Lease, as amended, being for an initial term of years commencing on September 10, 1971 and expiring on September 9, 1989. It is further understood and agreed that this lease supersedes and cancels the said Lease dated December 6, 1971, as amended, and that the same is hereby surrendered, terminated and cancelled in its entirety as of the first day of the initial term of this lease. The rents shall be calculated and paid under this present lease, and the rents for the calendar month during which the change of rates occurs shall be prorated between the rates under the prior Lease and the rates under this present lease. However, it is understood that if for any reason this present lease should not become effective or be cancelled or terminated before the first day of its initial term, the said prior lease shall continue in full force and effect as if this present lease had not been executed.

**RENTAL**

initial

2. The Tenant agrees to pay to the Landlord as a minimum guaranteed rental for the demised premises during the term of this lease, ~~which may or may not approximate~~ the sum of _One Hundred_

_Fifty One Thousand Six Hundred Ninety and 00/100——————————————_

Dollars ($ _151,690.00_____) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of _Twelve Thousand Six Hundred Forty and 83/100-——_

———————————————————————————————————————= Dollars

($ _12,640.83_____) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the initial lease term.

During extension periods the minimum guaranteed rental herein required shall instead be as stipulated in Article 26 hereof.

In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which _——one——_ per cent (——————1%) of Tenant's gross sales made from the demised premises in each fiscal year ending approximately June 30th during the term of this lease, and any extensions thereof, exceeds the minimum guaranteed annual rental.

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the lease. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

9a

**DEFINITION OF "GROSS SALES"**

2a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

**RECORD OF SALES**

2b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

**USE**

3. The demised premises may be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products, or for the conduct of any general mercantile, retail or service business.

Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of said premises, as such shall relate to the cleanliness and use of said premises and the character and manner of operation of the business conducted in or at said premises.

SHOPPING
CENTER
ARRANGEMENT

4. It is understood that the shopping center, including Tenant's demised premises hereunder, is already constructed, and Landlord agrees that the location of all store buildings and common areas (including parking area) within the shopping center shall at all times during the terms of this lease, and any extensions thereof, be maintained as shown on Exhibit "A" attached hereto and shall not be changed without the written consent of the Tenant. Whereinsoever in this lease the term "common areas" is used, the same shall include all parking areas, sidewalks, service areas, service drives, streets, alleys, entranceways and related improvements within or adjoining the shopping center.

CONSTRUCTION
OF
IMPROVEMENTS

5. It is understood that the store building on the demised premises is presently existing and known as the former "Big K" building, and prior to the commencement of the lease term, the Tenant is to be let into possession thereof for the purpose of making such renovations and alterations to the existing store structure, installation of fixtures and equipment and stocking of the building with merchandise, as are necessary or desirable for the conduct of its business therein. Such alterations may include without limitation, construction of vestibule, complete interior remodeling of the building, removal and relocation of westerly exterior wall, installation of additional plumbing, refrigeration and electrical lines, together with excavation of trenches therefor in the floor as a conduit for such lines, replacement of automatic sliding glass doors and floor surfacing, and such other renovations as are deemed necessary by the Tenant, including the right and privilege to cause the construction of a new machine room with two coolers or freezers on the outside of the demised premises adjacent and contiguous to the rear wall of said store building. Tenant agrees that it will proceed with due diligence at its own cost and expense, subject to partial reimbursement by Landlord of the cost thereof as hereinafter provided, to undertake the construction work herein contemplated in accordance with plans and specifications therefor to be prepared by Tenant and shall be approved by both parties hereto prior to the commencement of the contemplated construction, and that the same shall be completed within twelve months from the date Landlord tenders possession of the demised premises to the Tenant. All such work shall be performed in a good and workmanlike manner and in conformity with all aplicable building codes and in accordance with all valid requirements of municipal or other governmental authorities and shall be of like structural quality as the existing building.

It is mutually agreed that Landlord's obligation in respect of the expense of said renovations and alterations and all related improvements shall be limited to a sum not in excess of Six Hundred Thousand and 00/100 Dollars ($600,000.00), which sum shall be advanced by Tenant for Landlord's benefit, and which said sum shall be repaid in full in cash to Tenant by Landlord promptly upon demand by Tenant after the date of completion of said renovations and alterations to the store building and all related improvements and when the store is opened for business. It is further agreed that Tenant agrees to bear any excess of such renovation and construction cost over said sum of Six Hundred Thousand and 00/100 Dollars ($600,000.00). Should Landlord not make full reimbursement of the amount of such certified construction cost to Tenant up to the sum of $600,000.00 within thirty (30) days after completion of the improvements contemplated hereunder and opening the store for business by the Tenant, the Tenant shall have the right to deduct from all rental payments and all other payments due from Tenant to Landlord under said lease then due or thereafter to become due, the amount of such certified construction costs up to $600,000.00.

COMMENCE-
MENT DATE

6. This lease shall commence and rent shall begin to accrue hereunder on the earlier to occur of the following dates: (a) the date Tenant shall open its store for business, or (b) the date twelve (12) months subsequent to the date Landlord tenders possession of the demised premises to the Tenant. As to Tenant's former store premises, described in Article 1 above, Tenant shall have a period of forty-five (45) days after that store is closed in which to remove its equipment, fixtures, and merchandise.

SC-6

**RETAIL
AND
SERVICE
STORES
ONLY**

7. Without the prior written consent of Tenant herein only retail and/or service stores shall be allowed to operate in the shopping center, or any enlargement thereof, it being the intent of the parties hereto that no spa, bowling alley, skating rink, bingo parlor, theatre (either motion picture or legitimate), business or professional offices, sales of automobiles, or health, recreational or entertainment-type activities, or non-retail or non-service type activities, shall be permitted.

**PARKING
AND
COMMON
AREAS**

8. Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees, a non-exclusive right at all times to use, free of charge, during the term of this lease, or any extensions thereof, all the common areas, as defined in Article 3 hereof, and as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with others similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks.

Landlord shall at all times during the term of this lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A", and of sufficient area to provide:

(a) a minimum ratio of at least 6.0 _____ automobile parking spaces for each 1,000 sq. ft. of gross building area (including additional floor levels) in the shopping center, and

(b) facilities for convenient parking of at least 475 _____ automobiles (minimum);

454 ?

and in the event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details, the Tenant at its option shall have the right to terminate this lease, provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord curing the default within thirty (30) days after receipt of such notice of termination. All of the common areas (including parking area) shall be adequately lighted by Landlord at its expense during Tenant's food store shopping hours, and Landlord further agrees that no signboards or other construction shall be erected in any of the said common areas shown on Exhibit "A" or so as to obstruct the view of the demised premises from the adjoining public streets. Without the prior written consent of Tenant herein, no carnivals, fairs or shows nor sales by merchants utilizing vehicles or booths in the common areas shall be allowed in the shopping center, or any enlargement thereof.

1

**SERVICE
AREA.**

9. Landlord further agrees to provide for the exclusive use of the Tenant at its grocery service entrances parking spaces for two large trailer trucks for continuous use and further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such spaces as may be reasonably needed by Tenant for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

**UTILITIES**

10. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities used by Tenant on the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities.

**TENANT'S REPAIRS**

11. ~~Upon completion of construction by Landlord and acceptance of the lease improvements by Tenant,~~ Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of the Landlord or which are made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear.

Within the repair responsibilities of Tenant shall be included: interior, exposed plumbing including stoppages not caused by Landlord's negligence; and maintenance of air conditioning and heating equipment, interior wiring, automatic doors, and the floor surfacing.

concealed                                                                 and exterior

**LANDLORD'S REPAIRS**

12. The Landlord shall, at its cost and expense, keep and maintain, in good condition and repair, the common areas, the exterior of Tenant's store building, including the ~~plate glass, show windows~~, roof, gutter, downspouts, exterior painting, masonry walls, foundation and structural members, the automatic sprinkler system (including central alarm system therefor, if required by governmental authority), the plumbing (including septic tank, if any), wiring, ~~air conditioning and heating equipment, and floor surfacing~~ of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises. If any portion of the common areas (as defined in Article 3 hereof) or any portion of the store building, which is the responsibility of the Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so, except that the Landlord shall not be obligated to make or pay for any repairs to Tenant's store building rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, agents or employees, except in the case of damage by fire or the elements, or other casualty covered by Landlord's fire and extended coverage insurance.

If in order to protect the Tenant's property in the store building it shall be necessary to make emergency repairs to any portion thereof which is the responsibility of the Landlord to repair, or if the Landlord after receipt of notice as above provided fails or neglects to make with all due diligence such other repairs to the store building or common areas, as defined in Article 3 hereof, which are the responsibility of the Landlord, the Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred by it in making such repairs. Landlord further covenants that the store building will be so constructed and maintained at all times so as structurally to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the premises which may become necessary in order that said premises may conform to such ordinances, statutes, rules or regulations now in force or which may be hereafter passed, adopted or promulgated.

**SIGNS**

13. Tenant may place, erect and maintain any signs on the roof, walls, and any other place on or about the demised premises, which signs shall remain the property of Tenant and may be removed at any time during the term of this lease, or any extension thereof, provided Tenant shall repair or reimburse Landlord for the cost of any damage to the demised premises resulting from the installation or removal of such signs.

**FIXTURES AND INTERIOR ALTERATIONS**

14. The Tenant, at its own expense, may from time to time during the term of this lease make any interior alterations, additions and improvements in and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good, workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease.

Tenant agrees to cause any mechanics' or materialmen's liens incurred as a result of construction work instigated by Tenant to be promptly discharged and hereby agrees to indemnify and hold harmless Landlord from any expense occasioned thereby.

Tenant may construct and build or install in said premises any and all racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

**INDEMNIFI- CATION**

15. Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises. Likewise, Landlord shall indemnify and save harmless the Tenant from any claim or loss by reason of an accident or damage to any person or property happening on or about all common areas (as defined in Article 3 hereof) of the shopping center, and Landlord further agrees to carry, at its expense, public liability insurance coverage on all common areas (as defined in Article 3 hereof) of the shopping center, with a contractual liability endorsement on the policy, in a company qualified to transact business in the state where the premises are located, stipulating limits of liability of not less than $500,000.00 for an accident affecting any one person, and not less than $1,000,000.00 for an accident affecting more than one person, and $100,000.00 property damage. Certificate of such coverage from the insurer providing 30 days' notice to Tenant prior to cancellation or termination shall be furnished to Tenant.

**CLEANLINESS**

16. Tenant shall at all times keep the interior of the store building in a reasonably neat and orderly condition and shall keep the entryways and delivery areas adjoining the building reasonably clean and free from rubbish and dirt. Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon, and Tenant further agrees to permit the Landlord or its agent at all reasonable times to enter upon the premises for the purpose of making repairs and for examining or showing the same to prospective purchasers.

-7-

**FIRE**

17. In the event that Tenant's building shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty, then Tenant may elect within thirty (30) days after such damage, to terminate this lease by giving to the Landlord a written notice of termination, and thereupon both parties shall stand released of and from all further liability under this lease. If Tenant's building shall thereby suffer damage to any extent less than 75% of the value thereof, or if Tenant does not elect to terminate as aforesaid, then the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored. If at any time during the term of this lease or any extensions thereof any of the buildings in the shopping center, exclusive of Tenant's store building, are damaged by fire or by the elements or otherwise, Landlord shall immediately commence and diligently prosecute to completion repair of all such damage and shall restore said improvements to their condition prior to such damage.

Landlord shall carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord or Tenant and on all other buildings within the shopping center in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees.

**QUIET ENJOYMENT**

18. The Landlord covenants, warrants and represents that upon commencement of the lease term, the shopping center, including the demised premises, will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

The Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a general mercantile business or use of common areas for parking purposes, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting Tenant from conducting a general mercantile business or using the common areas (as defined in Article 3 hereof) in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

**TAXES
AND
LIENS**

19. All taxes, assessments and charges on land or improvements and obligations secured by mortgage or other lien upon the demised premises or the shopping center shall be promptly paid by the Landlord prior to delinquency. The Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at the maximum rate allowed by law.

**CONDEM-
NATION**

20. If any part of the demised premises or more than twenty per cent (20%) of the buildings, exclusive of Tenant's building, within the shopping center, be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease as aforesaid, the Landlord shall immediately commence and diligently prosecute to completion the repair and restoration of the improvements, including Tenant's store building, within the shopping center to a condition comparable to their condition at the time of taking and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances.

In the event that any portion of the common areas (including parking area and access thereto) designated as such on Exhibit "A", be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, so as to materially or substantially interfere with the conduct of Tenant's business in the demised premises, or so as to reduce the required parking area by an amount in excess of____ten_____ per cent (———10 %) or reduce the number of cars which may be conveniently parked to less than_____428_____, the Tenant may, at its option, terminate this lease and shall be liable for rent only up to the time of such taking.

**DEFAULT**

21. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated, from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default.

**BANKRUPTCY**    22. The Tenant further covenants and agrees that if, at any time, Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease agreement at an end and shall forthwith be entitled to immediate possession of the said premises.

In the event of bankruptcy and upon Landlord re-entering the premises, the Landlord shall have the right to petition the Bankruptcy Court or claim against the debtor in possession, trustee, or the other appointed entity, for such damages as would be available under paragraph 21(b).

**NOTICES**    23. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail to, and all rent payments shall be made to Landlord at _____

_____ 417 Walshwood Drive, Suite 310 _____

_____ Nashville, Tennessee 37217 _____
or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail.

All notices required to be given to Tenant shall be sent by registered or certified mail to

Tenant at _____ P. O. Box 17121, Shelby Station _____

_____ Louisville, Kentucky 40217 _____
or to such other address as Tenant may direct from time to time by written notice forwarded to Landlord by registered or certified mail.

**END OF
TENANCY**    24. The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct. It is understood, however, that Tenant shall not be required to restore the demised premises to their original state. Any holding over by Tenant of the demised premises after the expiration of the term of this lease, or any extensions thereof, shall operate and be construed as a tenancy from month to month only at the same rentals reserved herein and upon the same terms and conditions as contained in this lease.

SC-12

**ASSIGNMENT AND SUBLEASING**

25. The Tenant may without the consent of the Landlord assign this lease, or sublease or vacate the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease.

**EXTENSIONS**

26. It is further agreed that Tenant, at its option, shall be entitled to the privilege of_____ five_____( 5 ) successive extensions of this lease, each extension to be for a period of_____five_____( 5 ) years and ~~on the same terms and conditions~~ upon the same terms and conditions as required herein for the initial term, except for the minimum guaranteed rental which shall be the sum of $64,750.00 per year, payable $5,395.84 per ~~month,~~ and a percentage rental equal to the amount, if any, by which one per-cent (1%) of Tenant's gross sales (as herein defined) exceeds $64,750.00 as provided in Article 2 hereof.

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least_____six (6) months_____ before the expiration of the initial term, and if extended, at least_____six (6) months_____ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

**EXCLUSIVE SUPERMARKET**

*WHICH THE LANDLORD OWNS*

27. Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of the Tenant; except the sale of such items in not to exceed the lesser of 500 square feet of sales area or 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business, and except the sale by a restaurant operation of prepared, ready-to-eat food items, either for consumption on or off the premises, shall not be deemed a violation hereof. With the exception of bars and package stores, only Tenant herein may sell beer and wine in the shopping center for off-premises consumption. Further, only Tenant herein may operate a delicatessen in the shopping center, or any enlargement thereof; and Tenant also reserves the right at any time to operate a bakery department within its store premises.

SC-13

In the event the demised premises are at any time subject to a first mortgage (provided Tenant has been notified in writing of the name and address of the holder thereof) and so long as said mortgage shall encumber the demised premises, and notwithstanding any provisions herein to the contrary, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments because of a violation of the terms of this exclusive provision as to property located within 1000 feet of any exterior boundary of the shopping center, but nothing herein shall deprive Tenant of any rights of recourse against Landlord, its successors and assigns, by way of suit for damages or injunctive relief, or as otherwise provided by law, in the event of any such violation. If the holder of such first mortgage should succeed to ownership of the demised premises by virtue of foreclosure or transfer of title thereto in lieu of such foreclosure or otherwise, in such event the terms of this exclusive provision shall apply to the holder of such first mortgage as owner-landlord only with respect to the land which was formerly encumbered by the lien of said first mortgage. For the purposes hereof, the term "first mortgage" shall include any first security instrument.

**SUBORDINATE** 28. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument (in a form acceptable to Tenant) as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the purchaser at such foreclosure sale shall be bound to Tenant for the term of this lease, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

**NOTICE TO LENDER** 29. Tenant agrees that it will give notice to any holder of a first mortgage (which term shall include all security instruments) encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of the Landlord which would entitle Tenant to terminate this lease or abate the rental payable hereunder, specifying the nature of the default by the Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate this lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period, provided, however, the Tenant shall not be required to deliver such notice to the mortgage holder or to extend to it an opportunity to perform in respect of emergency repairs which Tenant is permitted to make under the provisions of Article 12 of this lease.

SC-14

**COMMON AREA**
**MAINTENANCE**
30. Landlord agrees to operate and maintain in good condition and repair all the common areas, as herein defined, and provide therefor all such services as are reasonably required, including, but without limitation, safe-guarding, cleaning and sweeping, lighting, snow and ice removal if necessary, general repair and maintenance of all paved surfaces, repainting of parking area striping, and watering and maintenance of landscaped areas. If the Landlord, after fifteen (15) days following receipt of written notice from Tenant to do so, shall fail to make the repairs or perform the services described in this Article, the Tenant shall have the right to make such repairs or cause such services to be performed in its behalf and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred therein.

**BENEFIT**
31. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

**TRANSFER BY**
**LANDLORD**
32. In the event Landlord transfers Landlord's interest in this lease, Landlord agrees to promptly provide Tenant with documentary evidence, satisfactory to Tenant, of such transfer of Landlord's interest in this lease.

**SHORT**
**FORM**
**LEASE**
33. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

**MARGINAL**
**TITLES**
34. The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

SC-15

**COMPLETE AGREEMENT**

35. This written lease contains the complete agreement of the parties with reference to the leasing of the demised premises, except plans and specifications for Tenant's store and related improvements to be formally approved by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

**TAXES**

36. During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of any increase in ad valorem real estate taxes levied against the demised premises in excess of the amount of such taxes levied thereon for the first (1st) full calendar year of the lease term in which both the value of the land and the buildings thereon shall be assessed for tax purposes; provided, however, any additional rental payable hereunder by the Tenant may be credited on a non-cumulative basis against any and all percentage rental, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the lease term or any extensions thereof, shall be prorated on the basis of the annual credit.  Tenant shall be responsible only for its pro rata share of such taxes for fractional years occurring at the beginning and expiration of the term of this lease, and any extensions thereof.

If such taxes shall not be assessed separately, but shall be included within an assessment of the demised premises and others, said assessments shall be fairly apportioned to determine Tenant's share thereof.  Such apportionment shall be made in the ratio which the square footage of Tenant's store buildings bears to the total square footage of all store buildings (including additional floor levels) from time to time existing in the shopping center.  The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any abatements discounts or refunds thereon.  Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statement as evidence of the basis upon which any increase in taxes is chargeable to Tenant, and such additional rental shall be payable by Tenant on demand after payment by Landlord.  All taxes, other than ad valorem real estate taxes, including special assessments, improvement liens and the like, shall remain the sole responsibility of the Landlord.  However, Tenant shall remain responsible for sales taxes on rentals levied by law on lessees.

Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of the Landlord as the Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to the Landlord.

**OPTION FOR EXPANSION**

37. Tenant is hereby granted the option and privilege at any time during the term of this lease, or any extensions thereof, of enlarging its store building by incorporation therein the area to the southerly side thereof, such addition to be fifty feet (50') in width by one hundred seventy-five feet (175') in depth.  This option may be exercised only at such times as the adjoining storerooms may be vacant, or at five (5) year intervals, it being contemplated that Landlord shall not lease such area to other tenants for in excess of five (5) years, and that Tenant shall have the expansion privilege herein described no later than five (5) years from the commencement date hereof and at five (5) year intervals thereafter.  Landlord shall give notice to Tenant of any such expiration date and, during the period between six (6) months and three (3) months prior to such expiration date, afford to Tenant

-13-

the opportunity to exercise this option, and upon Tenant giving to Landlord a notice in writing of its exercise thereof, Landlord agrees to construct such addition, or prepare such enlargement area for occupancy by Tenant, in accordance with plans and specifications to be approved by the parties hereto, with the construction to be completed with all due diligence following the vacation of the necessary area by any other tenant, and the enlarged portion of the building to be of a like quality of construction as the original building for Tenant. In order to facilitate the expansion of Tenant's demised store building as herein contemplated, Landlord agrees that any adjacent building or buildings within the expansion area shall be of like structural quality and in architectural harmony with Tenant's store building, shall front on a line which is the interior sidewalk line of Tenant's demised store building extended and shall have a finish floor level, roof and ceiling heights which shall be at the same elevations as the finish floor level roof and ceiling heights of Tenant's demised store building. Further, Landlord agrees that the wall of Tenant's demised store building adjoining the expansion area shall be constructed with steel column supports therein equivalently spaced to the nearest row of steel column supports within the open area of Tenant's demised store building and such wall supports shall be of sufficient load bearing capacity to carry the roof support system across the full span of the original and of the expanded building width. Upon completion of such building addition, or tender of such additional space to Tenant, if there shall not at such date remain at least ten (10) years of the then term of this lease, such term shall be extended for such period of time as shall be necessary to provide a full ten (10) years from such date. Thereafter, during such extended term, the annual minimum guaranteed rental (and the base for computation of percentage rental hereunder) shall be increased by the greater of: an amount equal to twelve percent (12%) of the cost of such addition, or $4.68 per square foot of the enlargement area; or an amount equal to a computed percentage times the cost of such addition, such percentage consisting of four percent (4%) plus the current prime interest rate charged by New York City banks at the time of the exercise of the option. At Tenant's request, construction cost shall be established by bids obtained by Landlord from at least three (3) reputable contractors acceptable to Tenant, with the final cost of the addition upon completion to be certified to by the general contractor performing the work. During such extended term the provisions of this lease shall remain in effect and the option periods herein provided, if any shall remain, shall be construed to follow upon the end of the extended term and the rentals to remain as adjusted in consequence of the addition. Upon completion of the addition, it shall be and become a portion of the demised premises and this lease thereby be taken and construed as so amended.

Nothing herein contained shall constitute any express or implied obligation on the part of the holder of a first mortgage encumbering the fee simple title to the demised premises, or of any purchaser at a sale under foreclosure of such mortgage, to comply with the terms and provisions of this Article, it being the understanding of the parties that the obligation to cause such expansion is the sole obligation of the Landlord, its heirs, legal representatives, successors and assigns.

In the event Landlord shall for any reason fail or refuse to construct the building addition contemplated hereunder after Tenant has properly exercised its option herein and prior to a foreclosure of the Landlord's title by the holder of a first mortgage encumbering the same, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments on account of such breach and the Tenant's sole remedy shall be to construct the contemplated building addition at its own expense, with the then term of the lease to be extended for a 10-year period as above contemplated and Tenant shall be entitled to occupy the enlarged building during the construction and for a 10-year period thereafter without obligation to pay any minimum guaranteed rental in respect of such enlargement area.

Also, for the duration of such 10-year period there shall be an adjustment in the percentage rentals which would otherwise be payable under the provisions of Article 1 hereof whereby the Tenant shall pay to the Landlord a percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30th exceeds the original annual minimum guaranteed rental payable hereunder as increased by a sum equal to $4.68 per square foot of the enlargement area.

With respect to the Tenant's constructing the addition at its expense, upon the expiration of the extended 10-year term hereunder and for the remainder of the lease term, and any extensions thereof, the original annual minimum guaranteed rental for the demised premises shall be increased by a sum equal to $4.68 per square foot of the enlargement area, with the percentage rental thereafter to be computed by taking into consideration the upward adjustment of the minimum guaranteed rental as above provided. Both guaranteed rentals and percentage rentals for fractional years and fractional months occurring at the beginning and end of such extended 10-year term shall be prorated between the rentals payable before and those payable after the rental adjustments provided herein.

**INVESTMENT TAX CREDIT PASS-THROUGH** 38. In the event that Landlord is not eligible to receive the investment tax credit, Landlord agrees that Tenant may treat as purchased for purposes of the investment tax credit all property leased from Landlord during tax year in which the lease term commences. The Landlord further agrees to execute an Investment Tax Credit Lessor's Election Statement (provided by Tenant) in accordance with Treasury Regulation Section 1.48-4(g)(2), and to attach a List (provided by Tenant) of such property to its federal income tax return for the tax year in which the lease term commences and to retain a copy of the Investment Tax Credit Lessor's Election Statement in Landlord's records.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered in presence of:

SPRINGFIELD ASSOCIATES, a Tennessee Limited Partnership, By All its General Partners

FINANCIAL PACKAGING CORP. OF DELAWARE, INC.

By _____ Its _____ President
Attest _____ Its _____ Secretary
(Corporate Seal)

As to Financial Packaging Corp. of Delaware, Inc.

MBM CONSULTANTS, INC.

By _____ Its _____ Vice President
Attest _____ It _____ Secretary
(Corporate Seal)

As to MBM Consultants, Inc.

LANDLORD

WINN-DIXIE LOUISVILLE, INC.

By _____ Its _____ Vice President
Attest _____ It _____ Secretary
(Corporate Seal)

As to Tenant

TENANT

Tennessee - corporate acknowledgments


STATE OF NY
COUNTY OF NY     )

        Before me, _Faye Goldstein_____, a Notary Public in and said State and County, personally appeared _Anne J Easton_ a _Martha Silverstein_, with whom I am personally acquainted, and who upon oath, acknowledged themselves to be _____President and _Assistant_ Secretary of FINANCIAL PACKAGING CORP. OF DELAWARE, INC., One of the General Partners of SPRINGFIELD ASSOCIATES, a Tennessee Limited, respectiv Partnership the within named bargainor, a corporation, and that they as such President and _Asst_ Secretary, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing name of the corporation by themselves as such _____ President and_Asst_ Secretary.

        WITNESS my hand and seal, at office in _N.Y. N.Y._ this _23_ day of _January_, 198_4_.


                          _____
                          Notary Public,

My commission expires:     FAYE GOLDSTEIN
                      Notary Public, State of New York
                      No. 24-01304720590
                      Qualified in Kings County
                      Certificate Filed in New York County
                      Commission Expires March 30, 1984


STATE OF         )
COUNTY OF       )

        Before me, _Joy L. Amberson_, a Notary Public in and said State and County, personally appeared _Michael S Goldberg_ an _W.H. Throldridge_, with whom I am personally acquainted, and who upon oath, acknowledged themselves to be _Vice_ President and _____ Secretary of MHH CONSULTANTS, INC., One of the General Partners of SPRINGFIELD ASSOCIATES, a Tennessee Limited Partnership _____, respectivel the within named bargainor, a corporation, and that they as such _Vice_ President and _____ Secretary, being authorized so to do, execu the foregoing instrument for the purposes therein contained, by signing name of the corporation by themselves as such _Vice_ President and _____ Secretary.

        WITNESS my hand and seal, at office in _Nashville Tennesse_ this _17_ day of _Jan_, 19_84_.


                          _____
                          Notary Public,

        My commission expires: My Commission Expires April 20, 1986

Tennessee - corporate

STATE OF ___FLORIDA___

COUNTY OF ___DUVAL___

      I, an officer authorized to take acknowledgments, hereby
certify that on this day personally appeared before me _____
_A. Dana Davis_, _____ President, and _J. S. Singer, Jr._,
_____ Secretary, of __WINN-DIXIE STORES, INC.__,
a corporation under the laws of the State of ___Florida___, to me
well known to be the persons described in and who executed the foregoing
instrument as such officers and they severally acknowledged the execution
thereof to be their free and voluntary act and deed as such officers for
the uses and purposes therein expressed and that they affixed thereto the
official seal of said corporation, and that said instrument is the act
and deed of said corporation.

      IN WITNESS WHEREOF, I have hereunto set my hand and official
seal at _Jacksonville_, said County and State, this the
_22nd_ day of _February_, 19 _84_.

                           _Laura F. Baughman_
                           Notary Public,

My commission expires:                    (Notarial Seal)
NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES JULY 17, 1986

EXHIBIT "A"

Store # 1682
Moorland Shopping Center
U.S. Highway # 41
Springfield, Tennessee

Lease and Short Form Lease dated January 17, 1984 (Short Form
    Lease recorded in Deed Book 264, Page 400, Register's
    Office for Robertson County, TN)
Supplemental Lease Agreement dated December 9, 1985

OWNER TO REMOVE ALL
STRUCTURES

GRADING OF THIS AREA
INCLUDED IN CONTRACT

EXHIBIT A
PLOT PLAN
DATE: 2/0/04
APPROVED

LANDLORD

TENANT

LEGEND:

| | |
|---|---|
| ———— PROPERTY LINE | TREE |
| —500— NEW FINISH GRADES | TREE 40' |
| —498— EXISTING GRADES | —G—G—6'—GAS |
| NEW CONC. WALK, RAMP, ETC. | —O—SEWER |
| FENCE LINE | —W— WATER |
| PAVED AREA | C.B. CATCH 98.5 ELEV. |

EXHIBIT "B"


MOORELAND SHOPPING CENTER


Fronting on the southerly side of U. S. Highway 41
Robertson County, Springfield, Tennessee



That certain piece, parcel or tract of land lying and
being situated in the 9th Civil District of Robertson
County, Tennessee, within the corporate limits of the City
of Springfield, together with all improvements thereon or to
be constructed thereon and all appurtenances thereto belong-
ing or in anywise appertaining, particularly described as
follows, to wit:


BEGINNING at an iron pin in the south edge of the sidewalk
on the south side of U.S. Highway No. 41 (Memorial Boule-
vard), said pin being 175 feet westerly with said edge of
said sidewalk from Joe H. Moore and Lane's corner, a corner
to said Moore, proceed thence with a new line of said Moore
as follows: south 30° west 182 feet to a stake; south 3°30'
West 437.5 feet to a stake; north 69° west 819 feet to a
stake; and north 30° east 700 feet to a stake in the south-
erly edge of the aforesaid sidewalk, a corner to said Moore;
thence with said edge of said sidewalk south 60° east 35
feet to a stake, a corner to other land of said Moore;
thence with the line of said Moore south 30° west 90 feet to
a point; thence continuing with the line of said Moore on a
curve to the left with a radius of 10 feet a distance of
15.7 feet to a point; thence continuing with the line of
said Moore south 60° east 200 feet to a point and north
30° east 100 feet to a stake in the southerly edge of the
aforesaid sidewalk; thence with said edge of said sidewalk
south 60° east 369 feet to the POINT OF BEGINNING, contain-
ing 9.63 acres, more or less.

## G U A R A N T Y

In consideration of the sum of Ten Dollars ($10.00) paid by

SPRINGFIELD CENTER ASSOCIATES, a Tennessee Limited Partnership, By

Financial Packaging Corp. of Delaware, Inc. and MBM Consultants, Inc.,

Its General Partners

hereinafter called "Landlord", to WINN-DIXIE STORES, INC., a Florida cor-
poration with its principal office at 5050 Edgewood Court, Jacksonville,
Florida 32205, hereinafter called "Guarantor", the receipt and suffici-
ency whereof are hereby acknowledged, Guarantor does hereby guarantee
unto Landlord, its heirs, legal representatives, successors and assigns,
the due performance and observance by WINN-DIXIE LOUISVILLE, INC., a Kentucky

corporation qualified to do business in Tennessee

hereinafter called "Tenant", of all the terms, covenants and conditions
on the part of Tenant to be performed and observed including, without
limitation, payment of rentals under the attached and foregoing lease
agreement dated _January 12, 1984_, covering certain premises
fronting on the southerly side of U. S. Highway 41, in the City of Springfield,

County of Robertson, State of Tennessee.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be
executed in its corporate name and its corporate seal to be hereunto
affixed and attested by its officers thereunto duly authorized this
27 day of _February_, 1984.

Signed, sealed and delivered
in the presence of:

_Rebecca L. Sawyer_

_Laura E. Douglas_

WINN-DIXIE STORES, INC.

By _[signature]_
Its _____ President

Attest _[signature]_
Its _____ Secretary

(Corporate Seal)

GUARANTOR

EXHIBIT

"B"

This instrument prepared by:
Britt, Cummings Cannon & Berry
P.O. Box 198062
Nashville, Tennessee 3721

ASSIGNMENT OF LEASE

THIS ASSIGNMENT OF LEASE, made this 22 day of October
_____, 1987, by and between WINN-DIXIE LOUISVILLE,
INC., a Kentucky corporation duly qualified to transact business in
Tennessee, hereinafter called "Assignor", and M & H FOOD COMPANIES,
INC., a Delaware corporation, hereinafter called "Assignee".

WITNESSETH THAT:

In consideration of the sum of Ten and No/100 Dollars
($10.00) and other good and valuable considerations, in hand paid by
the Assignee to the Assignor, the receipt and sufficiency whereof is
hereby acknowledged, and of the acceptance hereof by the Assignee, the
Assignor does hereby assign, set over and transfer absolutely unto the
Assignee, its successors and assigns, effective as of the date hereof,
the Lease described on Exhibit "A" attached hereto and by this refer-
ence made a part hereof, together with all properties, rights, options
and obligations contained therein or arising thereunder.

TO HAVE AND TO HOLD the same unto the Assignee, its suc-
cessors and assigns, for and during the remainder of the term thereof
and any exercised option extensions thereof, subject nevertheless to
the payment of the rents and performance of the covenants, conditions
and provisions therein contained.

AND said Assignor covenants that said Lease is valid and
existing, that the Assignor is the lawful owner of all the options,
right, title, interest and estate of every kind of the Tenant under
said Lease and in and to the leased premises and all buildings,
structures, leasehold and other improvements thereon; that all of such
options, right, title, interest and estate of Tenant are free and
clear of all liens, encumbrances and assignments but subject, how-
ever, to the terms, conditions, limitations and restrictions contained
in the Lease; and that the Assignor has full power and lawful au-
thority to convey the same and will defend the same against lawful
claims of all persons whomsoever provided, however, this warranty
shall not extend to Landlord's title.

AND the Assignee, by accepting this assignment shall assume
and agree to pay the rents and perform all the covenants, conditions,
and  provisions in said Lease on the part of the Tenant therein named
to be paid, performed and observed from and after the date of execu-
tion hereof, and shall indemnify and save harmless the Assignor from
any claim or liability arising out of or in respect of its obligations
as Tenant under the said Lease from and after the effective date
hereof; and the Assignor warrants that all provisions of said leases
have been fully complied with prior to the date hereof, and Assignor
shall indemnify and save harmless the Assignee from any claim or
liability arising out of or in respect of Assignor's obligations as
Tenant under the said Lease prior to the effective date hereof.

THIS ASSIGNMENT shall bind and inure to the benefit of the
successors and assigns of the Assignor and Assignee, respectively.

IN WITNESS WHEREOF, the Assignor has executed this
instrument under seal the day and year first above written.

WINN-DIXIE LOUISVILLE,

By _____
Its         President

Attest _____
       Its  Asst. Secretary

(CORPORATE SEAL)

ASSIGNOR

EXHIBIT
"C"

STATE OF      <u>FLORIDA</u>

COUNTY OF    <u>DUVAL.</u>

      I, an officer authorized to take acknowledgments, hereby certify that on this day personally appeared before me _____ <u>J. S. Bryan, Jr.</u>_____, ___<u>Vice</u>___ President, and <u>R. S. Wadford</u>_____, <u>Assistant</u>_____ Secretary, of <u>WINN-DIXIE LOUISVILLE, INC.</u>_____, a corporation under the laws of the State of ____<u>Kentucky</u>_____, to me well known to be the persons described in and who executed the foregoing instrument as such officers and they severally acknowledged the execution thereof to be their free and voluntary act and deed as such officers for the uses and purposes therein expressed and that they affixed thereto the official seal of said corporation, and that said instrument is the act and deed of said corporation.

      IN WITNESS WHEREOF, I have hereunto set my hand and official seal at ____<u>Jacksonville</u>_____, said County and State, this the <u>12th</u>__ day of ____<u>October</u>____, 19 <u>87</u>.

                        <u>_____</u>
                        Notary Public,

My commission expires:           (Notarial Seal)

_____

## ACCEPTANCE OF ASSIGNMENT

M & H Food Companies, Inc. does hereby accept the Assignment of Lease upon the terms and conditions contained therein, this _22_ day of ___October___, 1987.

M & H FOOD COMPANIES, INC.

By ___Robert X Hart___
Its      VICE President

Attest _____
Its          Secretary

(CORPORATE SEAL)

ASSIGNEE

## GUARANTY BY MALONE & HYDE, INC.

In consideration of the sum of Ten and No/100 Dollars ($10.00) paid by WINN-DIXIE LOUISVILLE, INC., Assignor in the foregoing Lease, the receipt and sufficiency whereof are hereby acknowledged, MALONE & HYDE, INC., a Delaware corporation, of which M & H Food Companies, Inc., Assignee hereof, is a wholly-owned subsidiary corporation, hereby guarantees unto Assignor, its heirs, legal representatives, successors and assigns, the due performance and observance by M & H Food Companies, Inc., a Delaware corporation, of all the terms, covenants and conditions on the part of Tenant in the Lease being assigned herewith to be performed and observed including, without limitation, the payment of rentals.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed in its corporate name and its corporate seal to be hereunto affixed and attested by its officers thereunto duly authorized this _22_ day of ___October___, 1987.

MALONE & HYDE, INC.

By ___Charles 2 Buss___
Its    Vice President

Attest _____
Its          Secretary

(CORPORATE SEAL)

ASSIGNEE'S GUARANTOR

STATE OF Tennessee   )
COUNTY OF Shelby   )

       Before me, Nancy C. Phillips     , a Notary Public in and fo
said State and County, personally appeared Robert F. Harris     and
J.L. Crain, Jr.     , with whom I am personally acquainted, and who,
upon oath, acknowledged themselves to be Vice- President and     
Secretary of M & H FOOD COMPANIES, INC.     , respectively
the within named bargainor, a corporation, and that they as such Vice-
President and     Secretary, being authorized so to do, executed
the foregoing instrument for the purposes therein contained, by signing the
name of the corporation by themselves as such Vice- President and     .
Secretary.

       WITNESS my hand and seal, at office in Memphis, Tennessee
this 19th day of October     , 19 87 .

                              *Nancy C. Phillips*
                              Notary Public,
       My commission expires: January 30, 1988

STATE OF Tennessee   )
COUNTY OF Shelby   )

       Before me, Nancy C. Phillips     , a Notary Public in and fo
said State and County, personally appeared Charles T. Bell     and
J. L. Crain, Jr.     , with whom I am personally acquainted, and who,
upon oath, acknowledged themselves to be Vice-President and     
Secretary of MALONE & HYDE, INC.     , respectively,
the within named bargainor, a corporation, and that they as such Vice-
President and     Secretary, being authorized so to do, execute
the foregoing instrument for the purposes therein contained, by signing the
name of the corporation by themselves as such Vice-President and     
Secretary.

       WITNESS my hand and seal, at office in Memphis, Tennessee
this 19th day of October     , 19 87 .

                              *Nancy C. Phillips*
                              Notary Public,
       My commission expires: January 30, 1988

EXHIBIT "A"

Store # 1682
Moorland Shopping Center
U.S. Highway # 41
Springfield, Tennessee

Lease and Short Form Lease dated January 17, 1984 (Short Form
    Lease recorded in Deed Book 264, Page 400, Register's
    Office for Robertson County, TN)
Supplemental Lease Agreement dated December 9, 1985

STATE OF TENNESSEE, ROBERTSON COUNTY
The foregoing instrument and its certificate were noted in Note Book _23_ Page _205_ At _3:10_ O'clock _P_ M _June 6_ 19 _88_
and recorded in _Deed_ Book _286_ Page _281_ State Tax Paid $ _____ Fee _____ Recording Fee _____ Total $_____
Witness My Hand
Receipt No. _____ 13764    Register _Dorothy B. Read_

*- Deed BK*
*305/818*

w7:MRH1712/dbe:10/10/90
BPB015-000

<u>GENERAL WARRANTY DEED</u>

| | |
|---|---|
| FROM: SPRINGFIELD CENTER ASSOCIATES | This instrument prepared by: DEARBORN & EWING, ATTORNEYS |
| TO:   BEN TOBIN AND HERBERT A. TOBIN AS CO-TRUSTEES OF THE BEN TOBIN REVOCABLE TRUST | Suite 1200, One Commerce Place Nashville, Tennessee 37239 |

| Address New Owner as follows: | Map-Parcel No. |
|---|---|
| The Ben Tobin Revocable Trust c/o Herbert A. Tobin, Trustee 1101 Hillcrest Drive Hollywood, Florida  33021 | 93D - 1.00 94H - 4.00 |

STATE OF TENNESSEE)
COUNTY OF DAVIDSON)

     The actual consideration or value, whichever is greater, for this transfer is $2,500,000.00.

_____
Affiant

     Subscribed and sworn to before me, this the 10th day of October, 1990.

_____
Notary Public

My Comm. Expires: 5/8/91

---

     FOR AND IN CONSIDERATION OF the sum of Ten Dollars, cash in hand paid by the hereinafter named GRANTEE, and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, SPRINGFIELD CENTER ASSOCIATES, a limited partnership, hereinafter called "GRANTOR", has bargained and sold, and by these presents does transfer and convey unto BEN TOBIN AND HERBERT A. TOBIN AS CO-TRUSTEES OF THE BEN TOBIN REVOCABLE TRUST created by Trust Agreement dated July 20, 1977, as restated and amended, herein called "GRANTEE", its successors, and assigns, a certain tract or parcel of land in Robertson County, State of Tennessee, described as follows, to wit:

     (SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE AS FULLY AS THOUGH COPIED HEREIN.)

     Said property is transferred subject to:



EXHIBIT
"D"

1.  Taxes for 1990:  a lien, but not yet due and payable.

2.  Deed of Trust, Security Agreement and Assignment of Rents from Springfield Center Associates, a Tennessee limited partnership, to Richard R. Lee, Trustee, dated February 29, 1988, and recorded March 2, 1988 in Land Mortgage Book 283, page 1, Register's Office for Robertson County, Tennessee.

3.  UCC Fixture Filing recorded March 2, 1988 in Land Mortgage Book 283, page 20, Register's Office for Robertson County, Tennessee.

4.  Collateral Assignment of Leases from Springfield Center Associates, a Tennessee limited partnership, to Life Insurance Company of the Southwest dated February 29, 1988 and recorded March 2, 1988 in Deed Book 286, page 960, Register's Office for Robertson County, Tennessee.

and the limitations, restrictions, and encumbrances of record, though this shall not reimpose the same.

This is improved property currently known as The Mooreland Shopping Center.

TO HAVE AND TO HOLD the said tract or parcel of land, with the appurtenances, estate, title and interest thereto belonging to the said GRANTEE, its successors and assigns, forever, and GRANTOR does covenant with the said GRANTEE that it is lawfully seized and possessed of said land in fee simple, has a good right to convey it, and the same is unencumbered, unless otherwise herein set out; and GRANTOR does further covenant and bind itself, its successors, assigns, and representatives, to warrant and forever defend the title to the said land to the said GRANTEE, its successors and assigns, against the lawful claims of all persons whomsoever.  Wherever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

819

**820**

WITNESS its hand this __10__ day of October, 1990.

SPRINGFIELD CENTER ASSOCIATES

BY: MBM Consultants, Inc.,
general partner

BY: _W. R. Hockridge_

TITLE: _P_

BY: Financial Packaging
Corporation of Delaware, Inc.,
general partner

BY: _Frank K. Easton_

TITLE: _President_

STATE OF TENNESSEE)
COUNTY OF Davidson )

    Before me, the undersigned, a Notary Public in and for the
County and State aforesaid, personally appeared _William Hockridge_,
with whom I am personally acquainted (or proved to me on the basis of
satisfactory evidence), and who upon oath acknowledged himself to be
_President_ of MBM Consultants, Inc., the general partner of
Springfield Center Associates, the within named bargainor, a limited
partnership, and that he as such _President_ of the general
partner, being authorized so to do, executed the foregoing instrument
for the purposes therein contained, by signing the name of the limited
partnership by himself as _President_ of MBM Consultants,
Inc., general partner of Springfield Center Associates.

    Witness my hand and seal, at office in _Nashville_,
Tennessee, this the _10th_ day of October, 1990.

_Kimberly C. Phillips_
NOTARY PUBLIC

My Commission Expires: _5/8/91_

STATE OF TENNESSEE)
COUNTY OF Davidson )

     Before me, the undersigned, a Notary Public in and for the County and State aforesaid, personally appeared Stephen K. Farion, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who upon oath acknowledged himself to be President of Financial Packaging Corporation of Delaware, Inc., the general partner of Springfield Center Associates, the within named bargainor, a limited partnership, and that he as such President of the general partner, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited partnership by himself as President of Financial Packaging Corporation of Delaware, Inc., general partner of Springfield Center Associates.

     Witness my hand and seal, at office in Nashville, Tennessee, this the 10th day of October, 1990.

Kimberly C. Phillips
NOTARY PUBLIC

My Commission Expires: 5/8/91

**EXHIBIT A**

**Property Description**

Land in the Ninth (9th) Civil District of Robertson County, Tennessee, being more particularly described as follows:

TRACT NO. 1:

Beginning at an iron pin marking the south right-of-way of U.S. Highway #41 and the west right-of-way of Annex Drive, the northeast corner of this tract, and continuing as follows: South 25 deg. 11 min. 24 sec. West 181.47 feet to an iron pin in the west right-of-way of Annex Drive; thence South 3 deg. 41 min. 28 sec. West, 437.18 feet to an iron pin in the southwest right-of-way of Annex Drive, a point in the north boundary of a tract of land which belongs to OTR (Wal-Mart Store), having a deed reference in Deed Book 229, page 331, Register's Office for Robertson County, Tennessee; thence North 57 deg. 43 min. 12 sec. West, 5.08 feet to an iron pin in the north boundary of said tract of land which belongs to OTR; thence North 70 deg. 25 min. 24 sec. West 449.64 feet to an iron pin marking a common corner to said tract of land which belongs to OTR and a tract of land which belongs to James M. McCarroll, having a deed reference in Deed Book 283, page 282, Register's Office for Robertson County, Tennessee; thence North 70 deg. 11 min. 54
Continued on next page

sec. West, 297.29 feet to an iron pin in the east right-of-way of Mooreland Drive, the northwest corner of said tract of land which belongs to James M. McCarroll; thence with the east right-of-way of Mooreland Drive as follows: North 19 deg. 54 min. 00 sec. East, 218.65 feet to a railroad spike; thence North 28 deg. 53 min. 20 sec. East, 279.69 feet to a railroad spike marking the southwest corner of a tract of land which belongs to the Sovran Bank/Central South, having a deed reference in Deed Book 286, page 286, Register's Office for Robertson County, Tennessee; thence with the boundary of said tract of land which belongs to Sovran Bank as follows: South 61 deg. 13 min. 31 sec. East 209.92 feet to a railroad spike; thence North 28 deg. 49 min. 05 sec. East, 50.00 feet to a railroad spike marking the southwest corner of a tract of land which belongs to Harold Wakefield, having a deed reference in Deed Book 278, page 846, Register's Office for Robertson County, Tennessee; thence with the boundary of said tract of land which belongs to Harold Wakefield as follows: South 61 deg. 01 min. 57 sec. East 120.00 feet to a railroad spike; thence North 28 deg. 49 min. 05 sec. East, 150.00 feet to a railroad spike in the south right-of-way of U.S. Highway #41; thence South 61 deg. 09 min. 06 sec. East with the south right of way of U.S. Highway #41, 249.00 feet to the point of beginning, containing 8.29 acres as surveyed by Kessinger & Associates, April 12, 1990.


TRACT NO. 2:

Beginning at an iron pin in the east right-of-way of Annex Drive, the southwest corner of a tract of land which belongs to Metropolitan Federal Savings and Loan Association, having a deed reference in Deed Book 284, page 290, Register's Office for Robertson County, Tennessee, the northwest corner of this tract and continuing as follows: South 87 deg. 47 min. 47 sec. East, 205.03 feet to an iron pin in the west boundary of a tract of land which belongs to Vernon Johnson, having deed references in Deed Book 91, page 481, and Deed Book 104, page 76, Register's Office for Robertson County, Tennessee; thence with the boundary of said tract of land which belongs to Vernon Johnson as follows: South 16 deg. 51 min. 22 sec. West 111.54 feet to an iron pin; thence South 2 deg. 36 min. 40 sec. West 42.72 feet to an iron pin marking the northwest corner of a tract of land which belongs to Joe H. Moore, having deed references in Deed Book 149, page 431, and Deed Book 217, page 424, Register's Office for Robertson County, Tennessee; thence North 87 deg. 47 min. 47 sec. West, 180.37 feet to a railroad spike in the east

Continued on next page

**823**

**824**

right-of-way of Annex Drive; thence with the east right-of-way
of Annex Drive, North 3 deg. 40 min. 14 sec. East, 150.68 feet
to the point of beginning, containing 0.65 acres as surveyed by
Kessinger & Associates, April 12, 1990.

Being part of the same property conveyed to Springfield Center
Associates, a Tennessee limited partnership, by LPA Corp. in a
deed dated as of October 1, 1982, and recorded December 22,
1982, in Deed Book 244, page 360, Register's Office for
Robertson County, Tennessee, and re-recorded January 19, 1983,
in Deed Book 245, page 19, Register's Office for Robertson
County, Tennessee.

STATE OF TENNESSEE ROBERTSON COUNTY
The foregoing . . . . . . . . . . . . . . . . . . in Note P. N. 24 Page 388  1:47 O'clock  P M  Oct. 12  90
and R. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $8280.00  1.07  . . . . . . . . . $8,273.40
Ref. d  Book 305  Page ——
Witness My . . . .
Notary . . . . . . . . 40808.    Register Dorothy B. Head

This Instrument Was Prepared By:
Juan E. Rodriguez, Esquire
Salomon, Kanner, Damian & Rodriguez, P.A.
2850 World Trade Center
80 S.W. 8th Street
Miami, Florida 33130

| Address New Owner: | Send Tax Bills To: | Map-Parcel Numbers: |
|---|---|---|
| The Ben Tobin Companies, Ltd., a Florida Limited Partnership | 1101 Hillcrest Drive Hollywood, Florida 33021 | 93D-1.00 94H-4.00 |

## QUITCLAIM DEED

FOR AND IN CONSIDERATION of One Dollar ($1.00) and other consideration, we, Ben Tobin, Herbert A. Tobin and Vincent E. Damian, Jr., as Co-Trustees of The Ben Tobin Revocable Trust (the "GRANTOR"), by these presents hereby quitclaim and convey unto The Ben Tobin Companies, Ltd., a Florida limited partnership (the "GRANTEE") and its successors and assigns all of our right, title and interest in and to the following described tract or parcel of land in Robertson County, Tennessee, to wit:

See Exhibit "A" attached hereto and made a part hereof.

This is improved property known as Mooreland Shopping Center, Mooreland, Robertson County, Tennessee.

Vincent E. Damian, Jr. is executing this Quit Claim Deed as a Co-Trustee since he has been added as a Co-Trustee of The Ben Tobin Revocable Trust by amendment to The Ben Tobin Revocable Trust.

IN WITNESS WHEREOF, the undersigned have hereunto set their hand on this the 29th day of September, 1995.

Signed, sealed and delivered in the presence of:

Name: Katherine Tailarico

Name: Delia Newirth

The Ben Tobin Revocable Trust

By: _____
Ben Tobin, Co-Trustee

By: _____
Herbert A. Tobin, Co-Trustee

By: _____
Vincent E. Damian, Jr., Co-Trustee

STATE OF FLORIDA      )
                      ) ss:
COUNTY OF BROWARD      )

Before me, a notary public of the state and county mentioned, personally appeared Ben Tobin, Herbert A. Tobin and Vincent E. Damian, Jr., with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged themselves to be co-trustees of The Ben Tobin Revocable Trust, the within named Bargainor, a Trust, and that Ben Tobin, Herbert A. Tobin and Vincent E. Damian, Jr., as such co-trustees, executed the foregoing instrument for the purpose therein contained by personally signing the name of the trust as co-trustees.

_____
Notary Public in and for
the State of Florida

OFFICIAL NOTARY SEAL
MARIA ST PETER
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC242231
MY COMMISSION EXP. DEC 17,1996

767

STATE OF FLORIDA    )
                    )
COUNTY OF BROWARD    )

    The conveyance herein is by quitclaim and therefore the amount
of tax due is controlled by T.C.A. § 67-4-409(a)(4).   The actual
consideration for this transfer is $ None .

                                                AFFIANT

    Subscribed and sworn to before me this 11 day of October,
1995.

                                  NOTARY PUBLIC

My Commission Expires:

OFFICIAL NOTARY SEAL
MARIA ST PETER
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC342231
MY COMMISSION EXP. DEC. 17,1996

2

07/17/1996  19:59   423-282-1738                    TRI CITY TITLE CO                    PAGE  04

**EXHIBIT A**

**Property Description**

Land in the Ninth (9th) Civil District of Robertson County,
Tennessee, being more particularly described as follows:

TRACT NO. 1:

Beginning at an iron pin marking the south right-of-way of U.S.
Highway #41 and the west right-of-way of Annex Drive, the
northeast corner of this tract, and continuing as follows:
South 25 deg. 11 min. 24 sec. West 181.47 feet to an iron pin in
the west right-of-way of Annex Drive; thence South 3 deg. 41
min. 28 sec. West, 437.18 feet to an iron pin in the southwest
right-of-way of Annex Drive, a point in the north boundary of a
tract of land which belongs to OTR (Wal-Mart Store), having a
deed reference in Deed Book 229, page 331, Register's Office for
Robertson County, Tennessee; thence North 57 deg. 43 min. 12
sec. West, 5.08 feet to an iron pin in the north boundary of
said tract of land which belongs to OTR; thence North 70 deg. 25
min. 24 sec. West 449.64 feet to an iron pin marking a common
corner to said tract of land which belongs to OTR and a tract of
land which belongs to James M. McCarroll, having a deed
reference in Deed Book 283, page 282, Register's Office for
Robertson County, Tennessee; thence North 70 deg. 11 min. 54
                                    Continued on next page

right-of-way of Mooreland Drive as follows:  North 19 deg. 54 min. 00 sec. East, 218.65 feet to a railroad spike; thence North 28 deg. 53 min. 20 sec. East, 279.69 feet to a railroad spike marking the southwest corner of a tract of land which belongs to the Sovran Bank/Central South, having a deed reference in Deed Book 286, page 286, Register's Office for Robertson County, Tennessee; thence with the boundary of said tract of land which belongs to Sovran Bank as follows:  South 61 deg. 13 min. 31 sec. East 209.92 feet to a railroad spike; thence North 28 deg. 49 min. 05 sec. East, 50.00 feet to a railroad spike marking the southwest corner of a tract of land which belongs to Harold Wakefield, having a deed reference in Deed Book 278, page 846, Register's Office for Robertson County, Tennessee; thence with the boundary of said tract of land which belongs to Harold Wakefield as follows:  South 61 deg. 01 min. 57 sec. East 120.00 feet to a railroad spike; thence North 28 deg. 49 min. 05 sec. East, 150.00 feet to a railroad spike in the south right-of-way of U.S. Highway #41; thence South 61 deg. 09 min. 06 sec. East with the south right of way of U.S. Highway #41, 249.00 feet to the point of beginning, containing 8.29 acres as surveyed by Kessinger & Associates, April 12, 1990.


TRACT NO. 2:

Beginning at an iron pin in the east right-of-way of Annex Drive, the southwest corner of a tract of land which belongs to Metropolitan Federal Savings and Loan Association, having a deed reference in Deed Book 284, page 290, Register's Office for Robertson County, Tennessee, the northwest corner of this tract and continuing as follows:  South 87 deg. 47 min. 47 sec. East, 205.03 feet to an iron pin in the west boundary of a tract of land which belongs to Vernon Johnson, having deed references in Deed Book 91, page 481, and Deed Book 104, page 76, Register's Office for Robertson County, Tennessee; thence with the boundary of said tract of land which belongs to Vernon Johnson as follows:  South 16 deg. 51 min. 22 sec. West 111.54 feet to an iron pin; thence South 2 deg. 36 min. 40 sec. West 42.72 feet to an iron pin marking the northwest corner of a tract of land which belongs to Joe H. Moore, having deed references in Deed Book 149, page 431, and Deed Book 217, page 424, Register's Office for Robertson County, Tennessee; thence North 87 deg. 47 min. 47 sec. West, 180.37 feet to a railroad spike in the east right-of-way of Annex Drive; thence with the east right-of-way

Continued on next page

of Annex Drive, North 3 deg. 40 min. 14 sec. East, 150.68 feet
to the point of beginning, containing 0.65 acres as surveyed by
Kessinger & Associates, April 12, 1990.

The above described property was conveyed to Ben Tobin and
Herbert A. Tobin, Co-Trustees of The Ben Tobin Revocable Trust
created by Trust Agreement dated July 20, 1977, as restated and
amended, by General Warranty Deed from Springfield Center
Associates, a limited partnership, of record in Deed Book 305,
page 818, Register's Office for Robertson County, Tennessee.

## SUPPLEMENTAL LEASE AGREEMENT

THIS SUPPLEMENTAL LEASE AGREEMENT, made this _9th_ day of _December_, 1985, between SPRINGFIELD CENTER ASSOCIATES, A Tennessee Limited partnership, By Financial Packaging Corp. of Delaware, Inc. and MBM Consultants, Inc., Its General Partners, hereinafter called "Landlord", and WINN-DIXIE LOUISVILLE, INC., a Kentucky corporation, hereinafter called "Tenant", which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

## W I T N E S S E T H:

WHEREAS, by lease dated January 17, 1984 Landlord did lease and demise unto Tenant certain premises located in a shopping center development known as "Mooreland Shopping Center" fronting on the southerly side of U. S. Highway 41 in the City of Springfield, County of Robertson, and State of Tennessee, reference being made to said lease for a more detailed description of the demised premises, for a term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, and upon such terms and conditions as are set forth therein, a short form of said lease appearing of record in Deed Book 264, at page 400 in the Office of the County Court of Robertson County, Tennessee, and

WHEREAS, Tenant has now opened for business in the demised premises and the parties desire to fix the commencement date of said lease as hereinafter set forth,

NOW THEREFORE, in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable considerations paid by Tenant to Landlord, the receipt and sufficiency whereof are hereby acknowledged, it is mutually



APPROVED
AS TO FORM

Division Mgr.

Legal Dept.
Winn-Dixie Stores,
Inc.

EXHIBIT

"E"

agreed:

1.    The commencement date of the above-described lease dated January 17, 1984 is fixed at November 7, 1985 and the expiration of the initial term of twenty (20) years demised therein shall be at midnight on November 6, 2005.

2.    All covenants, terms and conditions of the above-described lease, not modified or amended by this supplemental lease agreement are hereby ratified and confirmed.

IN WITNESS WHEREOF, Landlord and Tenant have executed this supplemental lease agreement the day and year first above written.

Signed, sealed and delivered in the presence of:

SPRINGFIELD ASSOCIATES, a Tennessee Limited Partnership By All Its General Partners

FINANCIAL PACKAGING CORP. OF DELAWARE, INC.

By _____
Its                          President

Attest _____
Its        Assist  Secretary
(Corporate Seal)

_____
As to Financial Packaging
Corp. of Delaware, Inc.

MBM CONSULTANTS, INC.

By _____
Its                          President

Attest _____
Its                     Secretary
(Corporate Seal)

_____
As to MBM Consultants, Inc.

LANDLORD

WINN-DIXIE LOUISVILLE, INC.

By _____
Its              Vice President

Attest _____
Its        Assist  Secretary
(Corporate Seal)

_____
As to Tenant

TENANT

-2-

Tennessee - corporate acknowledgments

STATE OF NEW YORK }
COUNTY OF QUEENS }

Before me, __DONNA ZACKO__, a Notary Public in and fo
said State and County, personally appeared __ANNE Z. EASTON__ and
__MYSELF DONNA ZACKO__, with whom I am personally acquainted, and who,
upon oath, acknowledged themselves to be _____ President and __ASSISTANT__
Secretary of __FINANCIAL PACKAGING CORP. OF DELAWARE, INC., One of the General Partners of SPRINGFIELD ASSOCIATES, a Tennessee Limited__, respectively
the within named bargainor, a corporation, and that they as such __Partnership__
President and __ASSISTANT__ Secretary, being authorized so to do, executed
the foregoing instrument for the purposes therein contained, by signing the
name of the corporation by themselves as such _____ President and __ASST__
Secretary.

WITNESS my hand and seal, at office in __New York__,
this __9th__ day of __December__, 19 __85__

Notary Public,

My commission expires: __March 30, 1986__

Notary Public,     New York
No. 41-4628684
Qualified in Queens County
Commission Expires March 30, 19

STATE OF N.Y. }
COUNTY OF N.Y. }

Before me, __ANDREA GONZALEZ__, a Notary Public in and for
said State and County, personally appeared __MICHAEL J. GOLDBER__ and
__WILLIAM H. HOCKRIDGE__, with whom I am personally acquainted, and who,
upon oath, acknowledged themselves to be _____ President and _____
Secretary of __MBM CONSULTANTS, INC., One of the General Partners of SPRINGFIELD ASSOCIATES, a Tennessee Limited Partnership__, respectively,
the within named bargainor, a corporation, and that they as such _____
President and _____ Secretary, being authorized so to do, executed
the foregoing instrument for the purposes therein contained, by signing the
name of the corporation by themselves as such _____ President and _____
Secretary.

WITNESS my hand and seal, at office in __N.Y.__,
this __2nd__ day of __JAN.__, 19 __86__.

Notary Public,

My commission expires: _____

ANDREA GONZALEZ
NOTARY PUBLIC, State of New York
Qualified in Queens County
Term Expires March 30, 19

Tennessee - corporate

STATE OF ___FLORIDA___

COUNTY OF ___DUVAL___

     I, an officer authorized to take acknowledgments, hereby certify that on this day personally appeared before me _G. Dent Davis_, ___Vice___ President, and _J L Hamilton_, _Asst_ Secretary, of ___WINN-DIXIE LOUISVILLE, INC.,___ a corporation under the laws of the State of ___Kentucky___, to me well known to be the persons described in and who executed the foregoing instrument as such officers and they severally acknowledged the execution thereof to be their free and voluntary act and deed as such officers for the uses and purposes therein expressed and that they affixed thereto the official seal of said corporation, and that said instrument is the act and deed of said corporation.

     IN WITNESS WHEREOF, I have hereunto set my hand and official seal at _Jacksonville_, said County and State, this the _17_ day of _January_, 19 _76_.

     _Laura E Baughman_
     Notary Public,

My commission expires:     (Notarial Seal)

LAURA E. BAUGHMAN
Notary Public, State of Florida
My Comm. Exp. July 17, 1979