IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,            Case No. 05-03817-3F1
                                            Chapter 11
          Debtors                           Jointly Administered
_____/

### UNITED STATES' OBJECTION TO CONFIRMATION

The United States, by undersigned counsel, hereby objects to confirmation of the debtors' Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors. The United States further objects to the motion to approve the compromise of the substantive consolidation issue contained within the plan to the extent the compromise provides for the payment of professional fees without application to the bankruptcy court for approval of those fees.

The United States holds a number of claims against the debtors, including secured, priority, and general unsecured claims.

**I. The plan is contrary to § 1129(a)(1) because it fails to preserve the United States' rights to setoff, as provided by § 553.**

The United States holds a right of setoff against the debtors.[1] A creditor's right to setoff is preserved by 11 U.S.C. § 553,[2] which provides, in part, that, "this title does not affect any right

---

[1] The current proof of claim filed by the IRS indicates a right to setoff of approximately $3 million. But on June 28, 2006 the debtors filed claims for refund for prepetition tax periods totaling over $39 million. To the extent the IRS determines that those refunds should be allowed, the government, including any other agencies holding a claim against the debtors, is entitled to setoff any other prepetition debt against that refund or any other amounts otherwise owed by government agencies to the debtors.

[2] All references herein to code sections refer to the Bankruptcy Code, as in effect of the time of the filing of the petitions for relief in these cases, unless otherwise indicated.

1933195.1

of a creditor to offset a mutual debt". Section 553 trumps any other provision of the Bankruptcy Code (except sections 362 and 363), including the treatment of secured claims under § 1129(b). *In re De Laurentiis Entertainment Corp.*, 963 F.2d 1269 (9th Cir. 1992); *In re Ronnie Dowdy, Inc.*, 314 B.R. 182 (Bankr. E.D. Ark. 2004). *See also In re Luongo*, 259 F.3d 323 (5th Cir. 2001); *In re Davidovich*, 901 F.2d 1533, 1538-39 (10th Cir. 1996). *But see In re Continental Airlines*, 134 F.3d 536 (3d Cir. 1998) (setoff not allowed where first asserted post-confirmation).

The plan attempts to circumvent § 553 by providing that, as of the effective date, all persons are permanently enjoined from taking a number of actions, including asserting a setoff. Plan at § 12.14(a). The debtors have no basis for enjoining the United States' right of setoff over the objection of the United States. Section 1129(a)(1) requires that the plan comply with "the applicable provisions of this title." This plan does not comply with the applicable provisions of title 11, specifically § 553, because it attempts to strip creditors of their setoff rights, a right specifically preserved by § 553. Accordingly, the plan does not comply with § 1129(a)(1) and cannot be confirmed with the setoff injunction provision.

Section 12.14(c) of the plan attempts to bootstrap creditors by providing that "by accepting distributions pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 12.14." Under the Bankruptcy Code, the United States is entitled to full payment of its secured and priority tax claims. The Code does not condition that payment on the United States' consenting to certain plan provisions. The United States has an absolute right to payment. Further, even for claims for which full payment is not required, the debtors cannot force creditors to give up their setoff rights, preserved under § 553, by the terms of a plan that the creditor did not vote to accept and over the objection of that creditor.

**II. The plan fails to protect the United States' recoupment rights.**

Paragraph 12.14 of the plan improperly eliminates the United States' right of recoupment. Recoupment is the setting up of a demand arising from the same transaction as the plaintiff's claim, to abate or reduce that claim. *See In re Ruiz*, 146 B.R. 877, 880 (Bankr. S.D. Fla.1992). Recoupment, a creditor's right long recognized in bankruptcy proceedings, is merely the means used for determining the proper liability on the amounts owed. *See Reiter v. Cooper*, 507 U.S. 258, 265 n.2 (1993); *In re Holford*, 896 F.2d 176, 178 (5th Cir. 1990). It carries with it no right to payment. Thus, recoupment is neither a claim nor a debt as defined under the Bankruptcy Code and is, therefore, unaffected by a discharge in bankruptcy. *See In re Flagstaff Realty Assocs.*, 60 F.3d 1031 (3d Cir. 1995) (recoupment survives confirmation of plan); *In re Harmon*, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995) ("Because recoupment only reduces a debt as opposed to constituting an independent basis for a debt, it is not a claim in bankruptcy, and is therefore unaffected by the debtor's discharge"); *Brown v. General Motors Corp.*, 152 B.R. 935, 938 (W.D. Wis. 1993); *In re Jones*, 289 B.R. 188 (Bankr. M.D. Fla. 2002).

**III. The plan does not meet the § 1129(b)(2)(A) requirements to cramdown the secured tax claims.**

For cramdown purposes, § 1129(b)(2)(A) requires that, with respect to a class of secured claims, the claim be treated in one of three manners: (1) holders retain liens securing claims and receive deferred cash payments totaling at least the allowed amount of the claim; (2) sale of property free and clear of liens with liens to attach to proceeds of sale; or (3) for the realization of the holders of the indubitable equivalent of such claims.

The plan proposes to pay secured tax claims over a 6-year period at 6 percent interest,[3] with prepetition liens to continue until the claim is paid in full.  To the extent that the plan contemplates requiring the United States to refund amounts to the debtors and then receive deferred cash payments, the United States objects.  As previously discussed, the United States' claims are secured to the extent of setoff rights.  The United States would be entitled to immediately set off its claims against the debtors when a final determination regarding the debtors' entitlement to tax refunds is made.  The only manner in which the United States could retain its "lien" would be to hold the actual funds that would have otherwise comprised the debtors' refund. The United States maintains that it is proper to hold these funds, and that it is entitled to set off those funds against other governmental claims.

**IV.  The plan does not properly provide for priority tax claims.**

The plan provides that priority tax claims may be paid in one of three manners: (1) on the applicable distribution date, cash equal to the unpaid portion of the allowed claim; (2) such different treatment as the debtor and holder have agreed; or (3) deferred cash payments, having a value, as of the effective date, equal to the allowed claim, over period not exceeding six years after the date of assessment of such tax. Plan at § 4.1(b).  With respect to the third option, the plan is silent as to the payment of interest and the timing of such payments.

The deferred cash payment option requires the payment of interest in order to compensate for the deferred nature of the payments. *See In re Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir. 1983); *In re Collins*, 184 B.R. 151 (Bankr. N.D. Fla. 1995); *In re Moore*, 25 B.R. 131

---

[3] Even if the debtors were entitled to make deferred cash payments on the secured tax claims, the interest rate provided by the plan is objectionable.  The plan provides for a 6 percent interest rate, which is not adequate.  As discussed, *infra*, the appropriate interest rate is that provided by the Internal Revenue Code.

4

(Bankr. N.D. Tex. 1982). But at § 8.2, the plan provides that "post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim." This provision, combined with the silence of § 4.1 on the issue of interest or interest rate, leads to an ambiguity regarding the payment of post-confirmation interest on the priority tax claims.

The United States is clearly entitled to interest on any deferred cash payments on priority tax claims. The rate to which the United States is entitled as been the subject of a number of opinions over the years. *See Southern States*, 709 F.2d at 652-53 (current market rate appropriate). But Congress has now answered that question. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 added a new section 511 to the Code, which provides that the rate of interest payable on tax claims shall be the rate under applicable nonbankruptcy law. The applicable nonbankruptcy statutes are 26 U.S.C. §§ 6621 and 6622. While this new provision is not directly applicable to this case, it is the Congressional response to the divergent case law on this issue, and should be followed.

The plan also fails to provide the intervals at which any payments will be made. Again, this is an issue on which courts had reached varying conclusion. *See Mason & Dixon Lines, Inc*. 71 B.R. 300 (Bankr. M.D.N.C. 1987); *In re Sanders Coal & Trucking, Inc.*, 129 B.R. 516 (Bankr. E.D. Tenn. 1991). Congress again acted to clarify this provision, and § 1129(a)(9)(C) was amended to require that "regular installment" payments be made on priority tax claims. Thus, the plan here should provide for regular installment payments for priority tax claims, which should be made on at least a quarterly basis.

**V. The plan does not adequately justify the differing treatment of general unsecured claims.**

Section 1122(a) addresses the issue of when it is appropriate to put claims into the same class, but does not address when it is appropriate to claims into separate classes. But general principles have been established to govern that issue. *See generally In re Hollywell Corp.,* 913 F.2d 873 (11th Cir. 1990); *John Hancock Mutual Life Ins. Co. v. Route 37 Business Park Assoc.*, 987 F.2d 154, 159 (3d Cir. 1993); *In re Bryson Properties XVIII*, 961 F.2d 496, 502 (4th Cir. 1992); *Matter of Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991). There must be some legitimate difference in the treatment of creditors that are classified separately. *In re D&W Realty Corp.*, 165 B.R. 127, 128 (S.D.N.Y. 1994). *See also In re Maropa Marine Sales Service and Storage, Inc.*, 90 B.R. 544 (Bankr. S.D. Fla. 1988)(separate classification of similar claims only appropriate under § 1122(b)). The Eleventh Circuit has made it clear that a debtor's power to classify creditors is limited. "If a plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed." *Hollywell*, 913 F.2d at 880. *See also In re Austin Ocala Ltd.*, 152 B.R. 773 (Bankr. M.D. Fla. 1993).

In this case, the plan provides for 9 separate classes of general unsecured claims, with distributions of stock (or cash for small claims) in varying amounts depending on classification. The number of shares to be received range from 0 to 62.69, resulting in an estimated recovery range from 0 to 95.6 percent. General unsecured claims are accorded the same priority, and should generally be treated in the same manner. The plan does not provide adequate justification for such dramatically disparate treatment of the various general unsecured claims.

**VI. The effective date set forth in the plan is not definite and should be amended before a plan is confirmed.**

The term "effective date" is used throughout the Bankruptcy Code, but is not defined by the Code. As such, the limits on setting an effective date are not clearly defined. *In re Jones*, 32 B.R. 951, 958 n.13 (Bankr. D. Utah 1983). But many courts have declined to confirm a plan or have invalidated an effective date because of issues related to that date. *See, e.g., In re Potomac Iron Works*, 217 B.R. 170 (Bankr. D. Md. 1997); *In re Central European Industrial Dev. Co.*, 288 B.R. 572 (Bankr. N.D. Cal. 2003). In addition, a delayed or indefinite effective date can suggest feasibility problems. *In re Applied Safety*, 200 B.R. 576, 581 n.1 (Bankr. E.D. Pa. 1996).

The plan in this case defines "effective date" as the business day upon which all the conditions set forth in Section 10.2 of the plan have been satisfied or waived pursuant to Section 10.3. Section 10.2 lists at least seven conditions that must be met or waived before the effective date will occur. Most of these factors are subject to manipulation by the debtors, Wachovia, the Exit Facility lender, and the Creditors' Committee.

Two lines of cases have emerged dealing with the appropriate timing of an effective date. One line of cases espouses that the effective date should be on or near the date when the order confirming the plan is entered. *See, e.g., Jones*, 32 B.R. at 959 n.13. The other line permits the effective date to be tied to the date on which the confirmation order is final. *See, e.g., Potomac Iron Works*, 217 B.R. at 174. But regardless of the triggering event, courts have generally invalidated effective dates that were too distant or indefinite. *See id.* at 173 (effective date should be set forth with specificity); *Central European*, 288 B.R. at 577; *In re Krueger*, 66 B.R. 463 (Bankr. S.D. Fla. 1986).

One of the primary concerns with a non-specific effective date is corresponding difficulties in determining whether the plan complies with § 1129, specifically with valuations required under § 1129. See, e.g., §§ 1129(a)(7), (a)(9), (b)(2). These sections require valuations of claims as of the effective date, as well as a liquidation analysis as of the effective date. Where the effective date is delayed or unknown, it becomes difficult to make the appropriate determinations under § 1129. *See Potomac Iron Works*, 217 B.R. at 172-73.

In addition, creditors do not receive distributions until on or after the effective date, and do not generally recognize any benefit during this gap period. The debtors, on the other hand, will continue to operate as debtors-in-possession, enjoying the full benefits of the protections of bankruptcy.

In this case, the effective date set forth in the plan is too indefinite and capable of manipulation by a number of parties. For example, the first requirement in Section 10.2 is that the confirmation order be entered in "form and substance reasonably satisfactory" to the debtors, Wachovia, the exit facility lender, and the Creditors' Committee. But the plan imposes no time limit on any of the parties to make that determination. Nor does it set forth any procedures that will be triggered by any dispute between the parties regarding what is "reasonable." Additional provisions have similar problems. The plan should set forth a specific, reasonable, effective date. For example, the plan could provide for an effective date of 30 days from entry of the Confirmation Order, provided that the order is not stayed, vacated, or reversed. Alternatively, if the Exit Facility lender requires the confirmation order to become final before it will advance funds, then the plan could provide for an effective date of 10 days or 30 days after the order becomes final. As currently written, the effective date is nothing more than an indeterminable concept.

**VII. The proposal to pay professional fees without seeking court approval is contrary to the Bankruptcy Code.**

As part of the substantive consolidation compromise, the plan proposes to pay certain professional fees of the Creditor's Committee, ad hoc trade committee, and ad hoc retirees committee. Pursuant to sections 2.3 and 12.3 of the plan, the debtors will pay these fees without the need for the committees to file fee applications with the bankruptcy court. The total amount of the fees covered by the provision is $2,760,000. The United States objects to this proposal.[4]

Section 330(a)(1) of the Bankruptcy Code provides that:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, 329, the court may award a trustee, an examiner, or a professional person employed under section 327 or 1103 –
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by such person; and
>
> (B) reimbursement for actual, necessary expenses.

Thus, in order to be compensated for professional fees, the person seeking compensation first must be one employed under § 327 or 1103. Section 327 provides for employment of professional persons by the trustee (or debtor-in-possession), while § 1103 provides for employment of professional persons by committees appointed under § 1102.

Neither the ad hoc trade committee nor the ad hoc retiree committee is a committee appointed under § 1102. Rather, § 1102 refers to the official creditors' and equity security

---

[4]The United States takes no position on the substance of the motion to approve the substantive consolidation compromise as it does not have adequate information to determine the propriety of that settlement.

holders' committees appointed by the United States Trustee. Accordingly, the professionals hired by the ad hoc committees do not qualify for compensation under § 330.

The official Creditors' Committee would be eligible for compensation under § 330. But the statute clearly states that the court may award such compensation "after notice to the parties in interest and the United States Trustee and a hearing." This Court must make a determination that the compensation sought is reasonable and is for actual and necessary services and expenses. The plan cites no authority for circumventing this statutory requirement. *Cf. Wright v. City Nat'l Bank & Trust Co.*, 104 F.2d 285 (6th Cir. 1939)(reorganization plan providing, by agreement of parties, for the payment of fees to attorneys without the approval of the court, is contrary to public policy and void because in direct conflict with the statute).

Neither of the ad hoc committees is authorized to receive compensation from the debtors or bankruptcy estates. While the official committee may be entitled to reimbursement for its services, it is required to use the ordinary fee application process to show that entitlement.

WHEREFORE the United States requests that this Court deny confirmation of the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors, and for such other and further relief as is appropriate.

PAUL I. PEREZ
United States Attorney

/s/ *Marcio W. Valladares*
MARCIO W. VALLADARES
Assistant United States Attorney
Trial Counsel
Florida Bar No. 0986917
United States Courthouse
300 North Hogan Street, Suite 700
Jacksonville, Florida 32202-4270
Telephone No. (904) 301-6324/6300
Facsimile No. (904) 301-6363/6310
Email: Marcio.Valladares@usdoj.gov

/s/ *Deborah M. Morris*
DEBORAH M. MORRIS
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 353-1758
Facsimile: (202) 514-9868
Email: Deborah.M.Morris@usdoj.gov


Of counsel:

J. CHRISTOPHER KOHN
RUTH A. HARVEY
Attorneys, Civil Division
Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-0388
Facsimile: (202) 514-9163
Email:  Ruth.Harvey@usdoj.gov

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on September 25, 2006, the United States' Objection to Confirmation was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the parties requesting service, and was further served on the following parties, via United States mail, postage prepaid, this 25th day of September 2006:

>Skadden Arps Slate Meagher & Flom, LLP
>Four Times Square
>New York, New York
>    Attn:   Rosalie Walker Gray
>(also via facsimile to 917-777-3214
>and email to rgray@skadden.com)
>
>Smith Hulsey & Busey
>1800 Wachovia Tower
>225 Water Street, Suite 1800
>Jacksonville, FL 32202
>    Attn:   Cynthia Jackson
>(also via facsimile to 904-359-7708
>and email to cjackson@smithhulsey.com)
>
>Matthew Barr
>Milbank, Tweed, Hadley & McCloy
>1 Chase Manhattan Plaza
>New York, NY 10005
>(also via facsimile to 212-822-5194
>and via email to mbarr@milbank.com)
>
>
>/s/ Deborah M. Morris
>Trial Attorney, Tax Division
>U.S. Department of Justice
>Post Office Box 14198
>Ben Franklin Station
>Washington, D.C.  20044

1933195.1