UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| WINN-DIXIE STORES, INC., ET AL., | § | CASE NO. 05-03817-3F1 |
| | § | |
| Debtors. | § | *Jointly Administered* |

**OBJECTION OF BUNDY NEW ORLEANS CO., LLC TO THE
CONFIRMATION OF THE JOINT PLAN OF REORGANIZATION OF
WINN-DIXIE STORES, INC. AND AFFILIATED DEBTORS**

**TO THE HONORABLE JERRY A. FUNK,
UNITED STATES BANKRUPTCY JUDGE:**

**COMES NOW,** Bundy New Orleans Co., LLC ("Bundy") and files this, its Objection to the Confirmation of the Joint Plan of Reorganization (the "Plan") of Winn-Dixie Sores, Inc. and Affiliated Debtors (the "Objection to Confirmation"), and respectfully represents as follows:

**Background**

1.  Bundy is the lessor under a lease (the "Lease") with Winn-Dixie Louisiana, Inc. ("WD Louisiana") relating to store number 1417 located at 7135 Bundy Road, New Orleans, Louisiana (the "Property"). Bundy's principal office is located at 708 Third Avenue, 28th Floor, New York City, New York 10017. Upon information and belief, Winn-Dixie Montgomery, Inc. ("WD Montgomery") is a successor by merger to WD Louisiana.

2.  Under the Lease, WD Louisiana and/or WD Montgomery (collectively, the "Lessee") is obligated to pay monthly rentals, taxes and other charges and is specifically required to maintain insurance against loss or damage to the Property including flood insurance with a limited deductible (the "Insurance Policy").

3.  In certain situations where the Property has been damaged, the Lease requires the Lessee to restore the Property and contains certain requirements concerning the Lessee's filing

and prosecution of a claim under the Insurance Policy and concerning the Lessee's use of any proceeds paid to the Lessee under the Insurance Policy. In the event that the amount of Insurance Proceeds is insufficient to restore the Property, the Lessee is responsible for paying the deficiency (the "Insurance Deficiency").

4. The Lessee provided Bundy with evidence that it had obtained an insurance policy that covered loss to the Property. The Insurance Certificate shows that The Benenson Capital Company ("Benenson") is an additional insured and loss payee under the Insurance Policy. Bundy is the successor to Benenson under the Lease.

5. On February 21, 2005 (the "Petition Date"), Winn-Dixie, including WD Montgomery and other related entities (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

6. On the Petition Date, the Lessee owed Bundy $70,632.60 under the Lease in rental payments and taxes.

7. On August 29, 2005, Hurricane Katrina struck the Gulf Coast and the Property suffered extensive damage.

8. On December 21, 2005, counsel for the Lessee advised that the Property had suffered "extensive damage" and that Lessee had filed an insurance claim relating to the damage. (the "Insurance Claim").

9. On or around August 4, 2006, the Court approved the disclosure statement and on or around August 9, 2006, the Debtors filed the Plan. Debtors classified Bundy's claim as a Class 13 Landlord Claim.

10. Lessee's counsel advised counsel for Bundy that one of the Debtor's "managers" had believed that Lessee could submit an insurance claim for payment and take the proceeds, to the exclusion of Bundy. According to Lessee's counsel, however, the Debtors had received no insurance proceeds, but there was an outstanding offer of settlement. Bundy immediately advised Lexington and the other insurers shown on the Insurance Certificate in writing that the Debtors had no authority to settle the Insurance Claim and that no payments on the Insurance Claim should be made to the Debtor without Bundy's consent.

11. On September 5, 2006, representatives of Lexington, the Debtors, the Debtors' claims agent, Bundy, and other insurers held a conference call. During that call, the Debtors' representative stated that: a) Lexington had paid the entire $25,000,000.00 to the Debtors; b) the Debtors had received an additional $50,000,000.00 in insurance proceeds from excess carriers; c) the Debtors had not disclosed these payments to Bundy; d) the Debtors had applied the proceeds to their own personal property losses and used these proceeds in their operations; and e) the Debtors could still not produce the requested information because the responsible person had "gone on vacation."

12. On September 6, 2006, counsel for Bundy demanded that the Debtors immediately comply with its lease obligations and deposit the sum of $6,750,000.00 either with the trustee pursuant to the terms of the Lease or with the court registry.

13. On September 8, 2006, the Debtors filed the Motion for (I) Authority to Reject Non-Residential Real Property Leases, (II) to Establish Bar Date for Any Rejection Damage Claims, and (III) Granting Related Relief) (the "Motion to Reject").

14. On September 11, 2006, Bundy filed a Motion for An Order (i) Compelling Attendance at Deposition and Production of Documents and (ii) Authorizing Rule 2004

Examination and Duces Tecum and Brief in Support (the "Motion for 2004 Examination"). Bundy will depose the Debtors concerning the Plan, potential conversion of the case to Chapter 7, the Insurance Claim, insurance proceeds, the Motion to Reject, the Motion to Compel Payment of Administrative Expenses and other issues.

15. On September 12, 2006, counsel for the Debtors informed Bundy that the Debtors had no plans to deposit the money with the trustee pursuant to the terms of the Lease or with the Court registry.

16. Counsel for Bundy requested that the 2004 examination of the Debtor take place prior to the hearing on the Motion to Reject. The Parties have been unable to agree upon a date for the 2004 Examination of the Debtor.

17. On or around September 25, 2006, Bundy filed a Motion to Compel Payment of Administrative Expenses Pursuant to 11 U.S.C. §§ 503, 507 and Brief in Support (the "Motion to Compel Payment of Administrative Expenses") seeking payment of an estimated $6,750,000.00 administrative claim (the "Bundy Administrative Claim") and an Objection to the Motion to Reject.

18. The deadline to object to the Plan is September 25, 2006 and the hearing on the confirmation of the Plan is set for October 13, 2006 at 9:00 a.m.

## Objections to Confirmation

19. Bundy, holder of a Class 13 Landlord Claim and an administrative creditor, asserts that the confirmation hearing should be continued until after Bundy has had the opportunity to depose the Debtors. Bundy hereby objects to the Plan because Bundy wishes to protect its right to object to the confirmation of the Plan.

20. Bundy believes that the facts will show that this Court should deny the confirmation of the Plan on the following grounds:

a. Upon information and belief, the Debtors have not satisfied 11 U.S.C. § 1129(a)(1) and 1129(a)(2) because neither the Plan nor the proponent complies with the applicable provisions of this title. These are discussed herein below.

b. Upon information and belief, the Debtors have not satisfied 11 U.S.C. § 1129(a)(3) because the plan has not been proposed in good faith and is forbidden by law. The insurance proceeds that the Debtors received from the Insurance Policy on the Insurance Claim are owned by Bundy and held in trust by the Debtors. Debtors' actions in taking the insurance proceeds, using them in their operations, failing to disclose them to Bundy, failing to segregate and safeguard them, and then proposing to fund the Plan with them constitutes bad faith and are forbidden by law.

c. Upon information and belief, the Debtors have not satisfied 11 U.S.C. § 1129(a)(7)(A)(i) because each holder of each claim or interest of such class has not accepted the plan or (ii) each holder of each claim or interest will receive or retain under the Plan on account of such claim or interest property of a value that is less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title. The Debtors have not proposed to pay Bundy the insurance proceeds or the Bundy Administrative Claim. Therefore, the Debtors fail to meet the best interest test.

d. Upon information and belief, the Debtors have not satisfied (1) 11 U.S.C. § 1129(a)(9)(A) because the holder of 507(a)(2) or 507(a)(3) claims will not receive cash equal to the allowed amount of such claim or (2)11 U.S.C. § 1129(a)(9)(B) because the holder of 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) claims will not receive deferred cash

payments of value equal to the allowed amount of the claim. The Debtors have not proposed to pay Bundy the Bundy Administrative Claim, establish a reserve to pay the Bundy Administrative Claim, or even establish a procedure whereby the insurance proceeds would be used to pay the Bundy Administrative Claim.

e. Upon information and belief, the Debtors have not satisfied 11 U.S.C. § 1129(a)(11) because confirmation is likely to be followed by liquidation or the need for further financial reorganization of the Debtors under the Plan. The Plan is not feasible because the Debtors have not accounted for the payment of the Bundy Administrative Claim and, therefore, will not likely have sufficient cash to pay all administrative claims. Indeed, a number of stores were damaged in Hurricane Katrina, and the Debtors have moved to reject those leases without paying the lessor to restore the leased property. Numerous landlords will have resulting administrative claims. Even in those damaged stores where the Debtors have assumed the lease and begun restoration, the lessors will have administrative claims for the restoration costs, or, at a minimum, the costs of restoration not covered by the insurance proceeds. The Plan accounts for none of these administrative obligations.

f. Upon information and belief, the Debtors have not satisfied 11 U.S.C. § 1129(a)(16) because not all transfers of property of the Plan are made in accordance with all applicable provisions of non-bankruptcy law. Again, the Debtors used insurance proceeds paid to them on account of the Bundy Administrative Claim and this use of the insurance proceeds violates Bundy's ownership interests.

g. Upon information and belief, the Debtors have not satisfied 11 U.S.C. § 1129(b)(1) because the Plan discriminates unfairly, and is not fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

h.     Upon information and belief, the Debtors have not satisfied 11 U.S.C. § 1129(b)(2) because the Plan is not fair and equitable.  The Plan is not fair and equitable because (1) it proposes to pay creditors using funds owned by Bundy and other landlords; (2) it does not provide for immediate payment to Bundy; (3) it does not establish a reserve for payment upon liquidation of the Bundy Administrative Claim; (4) it does not  provide a procedure for continued prosecution of pending insurance claims for the benefit of Bundy and other landlords.

21.    Bundy also objects to the confirmation of the Plan because the terms of the Plan propose to release creditors claims against officers of the Debtors if that creditor votes in favor of the Plan.  The Plan cannot release claims of creditors against the officers of the Debtors.  11 U.S.C. § 524.  Bundy voted against the Plan, but other landlords may have voted for the Plan.  Those landlords may have claims against officers of the Debtors for their roles in the Debtors theft, conversion or misuse of insurance proceeds.

**WHEREFORE PREMISES CONSIDERED,** Bundy New Orleans Co., LLC respectfully requests that the Court deny confirmation of the Plan and grant such other relief to which Bundy is justly entitled.

        HIERSCHE, HAYWARD, DRAKELEY
            & URBACH, P.C

By:   */s/ Russell W. Mills*
      Russell W. Mills
      Texas State Bar No. 00784609
      Jason M. Katz
      Texas State Bar No. 24038990

15303 Dallas Parkway, Suite 700
Addison, Texas 75001
Telephone:   (972) 701-7000
Facsimile:    (972) 701-8765
      - and -

BLEDSOE, JACOBSON, SCHMIDT
    & WRIGHT

By:   */s/ James A. Bledsoe, Jr.*
      James A. Bledsoe, Jr.
      Florida State Bar No. 0150646

1301 Riverplace Boulevard, Suite 1818
Jacksonville, Florida 32207
Telephone:   (904) 398-1818
Facsimile:    (904) 398-7073

ATTORNEYS FOR BUNDY
NEW ORLEANS CO., LLC

**CERTIFICATE OF SERVICE**

This is to certify that on the 25th day of September, 2006, a true and correct copy of the above and foregoing Objection was served *via* first class mail and/or via electronically on the following:

D. J. Baker
Adam Ravin
Rosalie Walker Gray (via e-mail rgray@skadden.com)
Sally McDonald Henry
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036
**Counsel for Debtors**

Dennis F. Dunne
Matthew Barr (via e-mail at mbarr@milbank.com)
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

John B. Macdonald
Patrick P. Patangan
Akerman Senterfitt
50 North Laura Street, Suite 2500
Jacksonville, FL 32202
**Counsel for Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al.**

Elena L Escamilla
Kenneth C Meeker
U.S. Trustee
United States Trustee - JAX
135 W. Central Blvd., Suite 620
Orlando, FL 32801
**Counsel for U.S. Trustee**

Allan E. Wulbern
Stephen D. Busey
James. H. Post
Cynthia C. Jackson (via e-mail at cjackson @smithulsey.com)
Smith, Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
**Counsel for Debtors**

David Jennis, Esq.
Jennis & Bowen, P.L.
400 North Ashley Drive, Suite 2540
Tampa, Florida 33602

Douglas D Chunn
One Independent Drive, Suite 3201
Jacksonville, FL 32202

Karol K. Denniston, Esq.
Paul, Hastings, Janofsky & Waler, LLP
600 Peachtree Street, Suite 2400
Atlanta, Georgia 30308
**Counsel for Official Committee of Equity Security Holders**

Winn-Dixie Stores, Inc
5050 Edgewood Court
Jacksonville, Florida 32254-3699

Debtor

*/s/ Russell W. Mills*
Russell W. Mills

Objection to Confirmation of the Plan
Q:\5161_Benenson\0006_Winn-Dixie\Docs\Objection to Confirmation of Plan.final.doc
Page 9 of 9