**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| WINN-DIXIE STORES, INC., ET AL., | § | CASE NO. 05-03817-3F1 |
| | § | |
| Debtors. | § | *Jointly Administered* |

**OBJECTION OF BUNDY NEW ORLEANS CO., LLC TO DEBTORS' MOTION (I)FOR AUTHORITY TO REJCT NON-RESIDENTIAL REAL PROPERTY LEASES, (II) TO ESTABLISH BAR DATE FOR ANY REJECTION DAMAGE CLAIMS, AND (III) GRANTING RELATED RELIEF**

**TO THE HONORABLE JERRY A. FUNK,**
**UNITED STATES BANKRUPTCY JUDGE:**

**COMES NOW,** Bundy New Orleans Co., LLC ("Bundy") and files this, its objection to the Debtors' Motion (I) for Authority to Reject Non-Residential Real Property Leases, (II) To Establish Bar Date for Any Rejection Claims, and (III) Granting Related Relief (the "Motion to Reject") filed herein by Winn-Dixie Stores, Inc. and its affiliated debtors ("Winn-Dixie"), and respectfully represents as follows:

**Background**

1. Bundy is the lessor under a lease (the "Lease") with Winn-Dixie Louisiana, Inc. ("WD Louisiana") relating to store number 1417 located at 7135 Bundy Road, New Orleans, Louisiana (the "Property"). Upon information and belief, Winn-Dixie Montgomery, Inc. ("WD Montgomery") is a successor by merger to WD Louisiana. A true and correct copy of the Lease is attached hereto as Exhibit "A" and incorporated herein by reference.

2. Under the Lease, WD Louisiana and/or WD Montgomery (collectively, the "Lessee") is obligated to pay monthly rentals, taxes and other charges and is specifically required

to maintain insurance against loss or damage to the Property including flood insurance with a limited deductible (the "Insurance Policy").

3. In certain situations where the Property has been damaged, the Lease requires the Lessee to restore the Property and contains certain requirements concerning the Lessee's filing and prosecution of a claim under the Insurance Policy and concerning the Lessee's use of any proceeds paid to the Lessee under the Insurance Policy. In the event that the amount of Insurance Proceeds is insufficient to restore the Property, the Lessee is responsible for paying the deficiency (the "Insurance Deficiency").

4. The Lessee provided Bundy with evidence that it had obtained an insurance policy that covered loss to the Property. A true and correct copy of the Evidence Of Property Insurance (the "Insurance Certificate") is attached hereto as Exhibit "B" and incorporated herein by reference. The Insurance Certificate shows that The Benenson Capital Company ("Benenson") is an additional insured and loss payee under the Insurance Policy. Bundy is the successor to Benenson under the Lease.

5. On February 21, 2005 (the "Petition Date"), Winn-Dixie, including WD Montgomery and other related entities (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

6. On the Petition Date, the Lessee owed Bundy $70,632.60 under the Lease in rental payments and taxes.

7. On August 29, 2005, Hurricane Katrina struck the Gulf Coast and the Property suffered extensive damage.

8. On December 21, 2005, counsel for the Lessee advised that the Property had suffered "extensive damage" and that Lessee had filed an insurance claim relating to the damage. (the "Insurance Claim"). A true and correct copy of that correspondence is attached hereto as Exhibit "C" and incorporated herein by reference.

9. On June 30, 2006, the Lessee filed its Motion to Assume wherein it sought authority to assume the Lease and an order establishing that the "cure amount" under the Lease was $63,851.02 (the "Proposed Cure Amount").

10. Bundy's counsel thereafter contacted Lessee's counsel to advise that the Proposed Cure Amount was insufficient in that it did not reflect the Lessee's monetary and nonmonetary obligations under the Lease to, *inter alia,* restore the Property. Bundy's counsel also requested all information relating to the Insurance Claim. Lessee's counsel repeatedly indicated that it would provide the information, but repeatedly failed to do so. Lessee's counsel also stated that the Debtors had decided not to assume the Lease, but that the Debtors were not going to withdraw the Motion To Assume and would try to market the Lease.

11. On or around August 21, 2006, Bundy issued and served a subpoena to Lexington Insurance Company ("Lexington"), the primary insurer shown in the Certificate, to appear for a deposition relating to the Insurance Claim. On August 21, 2006, Bundy served an Amended Notice Of Deposition *Duces Tecum* requesting a deposition of the Debtors under Fed. R. Civ. P. 30(b)(6) on September 14, 2006 in Jacksonville relating to the Insurance Claim and the Proposed Cure Amount.

12. Lessee's counsel then advised that one of the Debtor's "managers" had believed that Lessee could submit an insurance claim for payment and take the proceeds, to the exclusion of Bundy. According to Lessee's counsel, however, the Debtors had received no insurance

proceeds, but there was an outstanding offer of settlement. Bundy immediately advised Lexington and the other insurers shown on the Insurance Certificate in writing that the Debtors had no authority to settle the Insurance Claim and that no payments on the Insurance Claim should be made to the Debtor without Bundy's consent.

13. On or about August 22, 2006, Bundy's counsel advised Lessee's counsel that, depending on the language in the particular insurance policies (which Bundy had still not received), there could be a need to bring action under Louisiana law before August 24, 2006 in order to preserve Bundy's rights. In response, Lessee's counsel forwarded policies relating to the insurers shown on the Certificate and Bundy filed that action in Orleans Parish, Louisiana, styled *Bundy New Orleans Co. v. Lexington Ins. Co., et al,* No. 06-9080, Civil District Court for the Parish of Orleans. Lessee's counsel indicated that he was still trying to obtain information on the Insurance Claim from the Debtors.

14. Lessee's counsel represented that the Debtors were going to withdraw the Lease from the Motion To Assume in order to moot the scheduled deposition of the Debtors. On August 25, 2006, the Debtors withdrew the Lease from the Motion To Assume.

15. Lessee provided no further documents, but agreed to a telephone conference call. On September 5, 2006, representatives of Lexington, the Debtors, the Debtors' claims agent, Bundy, and other insurers held a conference call. During that call, the Debtors' representative stated that: a) Lexington had paid the entire $25,000,000.00 to the Debtors; b) the Debtors had received an additional $50,000,000.00 in insurance proceeds from excess carriers; c) the Debtors had not disclosed these payments to Bundy; d) the Debtors had applied the proceeds to their own personal property losses and used these proceeds in their operations; and e) the Debtors could

still not produce the requested information because the responsible person had "gone on vacation."

16. On September 6, 2006, counsel for Bundy demanded that the Debtors immediately comply with its lease obligations and deposit the sum of $6,750,000.00 either with the trustee pursuant to the terms of the Lease or with the court registry. A true and correct copy of that correspondence is attached hereto as Exhibit "D" and incorporated herein by reference.

17. On September 8, 2006, counsel for the Lessee indicated that the Debtors did not plan on attending the deposition of the Lessees scheduled for September 14, 2006 and would move on September 11, 2006 to quash the subpoena served on Lexington. On September 8, 2006, the Debtors filed the Motion to Reject.

18. On September 11, 2006, Bundy filed a Motion for An Order (i) Compelling Attendance at Deposition and Production of Documents and (ii) Authorizing Rule 2004 Examination and Duces Tecum and Brief in Support (the "Motion for 2004 Examination").

19. On September 12, 2006, counsel for the Debtors informed Bundy that the Debtors had no plans to deposit the money with the trustee pursuant to the terms of the Lease or with the Court registry. A true and correct copy of that correspondence is attached hereto as Exhibit "E" and incorporated herein by reference. Debtors' counsel agreed to provide documents relating to the Insurance Claim and, on September 18, 2006, Bundy's counsel received those documents. Counsel for Bundy is reviewing those documents now for completeness.

20. Counsel for Bundy requested that the 2004 examination of the Debtor take place prior to the hearing on the Motion to Reject. The Parties have been unable to agree upon a date for the 2004 Examination of the Debtor.

21.   On September 21, 2006, the Court held a hearing on the Debtors' Motion to Reject and continued the hearing on the Debtors' Motion to Reject as to Store 1417.

22.   On September 25, 2006, Bundy filed a Motion to Compel Payment of Administrative Expenses Pursuant to 11 U.S.C. §§ 503, 507 and Brief in Support (the "Motion to Compel Payment of Administrative Expenses") seeking payment of an estimated $6,750,000.00 administrative claim (the "Bundy Administrative Claim").

### Objection to Rejection

23.   Bundy is opposed to the Debtors' rejection of the Lease because the Debtors have been paid funds through the Insurance Claims and failed to comply with the terms of the Lease. The Debtors should not be allowed to reject the Lease unless they deposit $6,750,000.00 either with the trustee pursuant to the terms of the Lease or with the court registry.

### Basis For Objection

The Court should deny the Motion to Reject because the business judgment of the Debtors to reject the Lease is the product of bad faith.  The business judgment standard requires that this Court follow the business judgment of the Debtors unless that judgment is the product of bad faith, whim or caprice.  *See Lubrizol Enter. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985); *In re Surfside Resort and Suites, Inc.*, 325 B.R. 465, 469 (Bankr. M.D. Fla. 2005) (Funk, J.); *In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr. M.D. Fla. 1991).

In this case, the Debtors' business judgment to reject the Lease is the product of bad faith. Bundy, the owner of the Property and additional insured and loss payee under the Insurance Policy, has an interest in any insurance proceeds paid on the Property.  Counsel for Debtors first advised counsel for Bundy that the Debtors had not received any insurance proceeds.  The Debtors admitted that they had indeed received insurance proceeds only *after* Bundy's counsel

learned of the payment of the insurance proceeds to the Debtors from one of the insurers. The Debtors never advised Bundy that they had received monies on the Insurance Claim and ignored their obligations under the Lease to place the insurance proceeds with a trustee. The Debtors have received $75,000,000.00 in insurance proceeds *after* they made the Insurance Claim on the Property and used it to pay for their own losses and in their operations.

The Debtors have absconded with insurance proceeds paid on the Property in which Bundy clearly has an interest. The Debtors knew under the terms of the Lease that they were required to place any insurance proceeds with a trustee. Instead of working with Bundy to resolve issues related to any insurance proceeds the Debtors received and to comply with the terms of the Lease, the Debtors unilaterally filed the Insurance Claim under the existing Insurance Policy, and, to date, the Debtors have received at least $75,000,000.00 in insurance proceeds as a result of the Insurance Claim and then failed to disclose the payments and even worked to avoid that disclosure. Again, instead of placing in reserve an amount sufficient to satisfy the Bundy Administrative Claim or a portion of the $75,000,000.00 with a trustee or the court registry, the Debtors unilaterally decided to use all of the $75,000,000.00 to cover losses and in their operations. Debtors have, in effect, used the Lease to obtain funds owned by Bundy for their operations and now seek to reject the Lease without accounting for those monies or providing for their return.

Therefore, the Debtors should not be allowed to reject the Lease because the business judgment of the Debtors is a product of bad faith. At a minimum, the Court should condition rejection upon the Debtors' payment to Bundy of the insurance funds they received for the Property.

...

**WHEREFORE PREMISES CONSIDERED,** Bundy New Orleans Co., LLC respectfully requests that the Court deny Debtors' Motion to Reject or in the alternative, require that the Debtors pay Bundy the funds the Debtors received in payment of the Bundy Claim and grant such other relief to which Bundy is justly entitled.

        HIERSCHE, HAYWARD, DRAKELEY
          & URBACH, P.C

By: */s/ Russell W. Mills*
    Russell W. Mills
    Texas State Bar No. 00784609
    Jason M. Katz
    Texas State Bar No. 24038990

15303 Dallas Parkway, Suite 700
Addison, Texas 75001
Telephone: (972) 701-7000
Facsimile: (972) 701-8765

- and -

BLEDSOE, JACOBSON, SCHMIDT
    & WRIGHT

By: */s/ James A. Bledsoe, Jr.*
    James A. Bledsoe, Jr.
    Florida State Bar No. 0150646

1301 Riverplace Boulevard, Suite 1818
Jacksonville, Florida 32207
Telephone: (904) 398-1818
Facsimile: (904) 398-7073

ATTORNEYS FOR BUNDY
NEW ORLEANS CO., LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 25th day of September, 2006, a true and correct copy of the above and foregoing Objection was served *via* first class mail and/or via electronically on the following:

D. J. Baker
Adam Ravin
Rosalie Walker Gray
Sally McDonald Henry (via e-mail at shenry@skadden.com)
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036
**Counsel for Debtors**

Allan E. Wulbern
Stephen D. Busey
James. H. Post
Cynthia C. Jackson (via e-mail at cjackson @smithulsey.com)
Smith, Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
**Counsel for Debtors**

Dennis F. Dunne
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

John B. Macdonald
Patrick P. Patangan
Akerman Senterfitt
50 North Laura Street, Suite 2500
Jacksonville, FL 32202
**Counsel for Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al.**

David Jennis, Esq.
Jennis & Bowen, P.L.
400 North Ashley Drive, Suite 2540
Tampa, Florida 33602

Douglas D Chunn
One Independent Drive, Suite 3201
Jacksonville, FL 32202

Karol K. Denniston, Esq.
Paul, Hastings, Janofsky & Waler, LLP
600 Peachtree Street, Suite 2400
Atlanta, Georgia 30308
**Counsel for Official Committee of Equity Security Holders**

Elena L Escamilla
Kenneth C Meeker
U.S. Trustee
United States Trustee - JAX
135 W. Central Blvd., Suite 620
Orlando, FL 32801
**Counsel for U.S. Trustee**

　　　　　　　　　　　　　　　　　　　　*/s/ Russell W. Mills*
　　　　　　　　　　　　　　　　　　　　Russell W. Mills