**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| WINN-DIXIE STORES, INC., ET AL., | § | CASE NO. 05-03817-3F1 |
| | § | |
| Debtors. | § | *Jointly Administered* |

**MOTION OF BUNDY NEW ORLEANS CO., LLC TO COMPEL**
**PAYMENT OF ADMINISTRATIVE EXPENSES**
**PURSUANT TO 11 U.S.C. §§ 503, 507 AND BRIEF IN SUPPORT**

**TO THE HONORABLE JERRY A. FUNK,**
**UNITED STATES BANKRUPTCY JUDGE:**

**COMES NOW,** Bundy New Orleans Co., LLC ("Bundy") and files this, its Motion to Compel Payment of Administrative Expenses Pursuant to 11 U.S.C. §§ 503, 507 and Brief in Support (the "Motion"), and respectfully represents as follows:

**Background**

1. Bundy is the lessor under a lease (the "Lease") with Winn-Dixie Louisiana, Inc. ("WD Louisiana") relating to store number 1417 located at 7135 Bundy Road, New Orleans, Louisiana (the "Property"). Upon information and belief, Winn-Dixie Montgomery, Inc. ("WD Montgomery") is a successor by merger to WD Louisiana. A true and correct copy of the Lease is attached hereto as Exhibit "A" and incorporated herein by reference.

2. Under the Lease, WD Louisiana and/or WD Montgomery (collectively, the "Lessee") is obligated to pay monthly rentals, taxes and other charges and is specifically required to maintain insurance against loss or damage to the Property including flood insurance with a limited deductible (the "Insurance Policy"). (Lease, at para. 14(a)(i), p. 33).

3. In certain situations where the Property has been damaged, the Lease requires the Lessee to restore the Property and contains certain requirements concerning the Lessee's filing

and prosecution of a claim under the Insurance Policy and concerning the Lessee's use of any proceeds paid to the Lessee under the Insurance Policy. (Lease, at para. 14-15, pp. 33-45). In the event that the amount of Insurance Proceeds is insufficient to restore the Property, the Lessee is responsible for paying the deficiency (the "Insurance Deficiency"). (Lease, at para 15(a)(vii), p. 44).

4. The Lessee provided Bundy with evidence that it had obtained an insurance policy that covered loss to the Property up to $25,000,000.00. A true and correct copy of the Evidence Of Property Insurance (the "Insurance Certificate") is attached hereto as Exhibit "B" and incorporated herein by reference. The Insurance Certificate shows that The Benenson Capital Company ("Benenson") is an additional insured and loss payee under the Insurance Policy. Bundy is the successor to Benenson under the Lease.

5. On February 21, 2005 (the "Petition Date"), Winn-Dixie, including WD Montgomery and other related entities (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

6. On the Petition Date, the Lessee owed Bundy $70,632.60 under the Lease in rental payments and taxes.

7. On August 29, 2005, Hurricane Katrina struck the Gulf Coast and the Property suffered extensive damage.

8. On December 21, 2005, counsel for the Lessee advised that the Property had suffered "extensive damage" and that Lessee had filed an insurance claim relating to the damage. (the "Insurance Claim"). A true and correct copy of that correspondence is attached hereto as Exhibit "C" and incorporated herein by reference.

9.  On September 5, 2006, representatives of Lexington Insurance Company ("Lexington"), the Debtors, the Debtors' claims agent, Movant, and other insurers held a conference call. During that call, the Debtors' representative stated that: a) Lexington had paid the entire $25,000,000.00 to the Debtors; b) the Debtors had received an additional $50,000,000.00 in insurance proceeds from excess carriers; c) the Debtors had not disclosed these payments to Bundy; d) the Debtors had applied the proceeds to their own personal property losses and used these proceeds in their operations; and e) the Debtors could still not produce the requested information because the responsible person had "gone on vacation."

10. On September 6, 2006, counsel for Bundy demanded that the Debtors immediately comply with its lease obligations and deposit the sum of $6,750,000.00 either with the trustee pursuant to the terms under the Lease or with the court registry. A true and correct copy of that correspondence is attached hereto as Exhibit "D" and incorporated herein by reference. Bundy estimates that repair or restoration will cost $6,750,000.00.

11. On September 8, 2006, the Debtors filed the Motion for (I) Authority to Reject Non-Residential Real Property Leases, (II) to Establish Bar Date for Any Rejection Damage Claims, and (III) Granting Related Relief) (the "Motion to Reject").

12. On September 11, 2006, Bundy filed a Motion for An Order (i) Compelling Attendance at Deposition and Production of Documents and (ii) Authorizing Rule 2004 Examination and Duces Tecum and Brief in Support (the "Motion for 2004 Examination").

13. On September 12, 2006, counsel for the Debtors informed Bundy that the Debtors had no plans to deposit the money with the trustee pursuant to the terms of the Lease or with the Court registry. A true and correct copy of that correspondence is attached hereto as Exhibit "E" and incorporated herein by reference.

14. Debtors' counsel agreed to provide documents relating to the Insurance Claim and, on September 18, 2006, Bundy's counsel received those documents. Counsel for Bundy is reviewing those documents, preparing to depose the Debtors, and investigating further the amount of the damage to the Property and costs of restoration or repair. Bundy is presently undertaking discovery to identify and quantify the Administrative Claim.

15. On September 25, 2006, Bundy filed a response to the Motion to Reject.

## Relief Requested

16. Pursuant to 11 U.S.C. §§ 503,507, Bundy respectfully requests that the Court enter an order awarding Bundy an administrative claim against the Debtors in the estimated amount of $6,750,000.00 (the "Administrative Claim") and compelling the Debtors to pay the Administrative Claim within ten (10) days of entry of such order.

## Brief in Support

The Debtors non-monetary and monetary defaults under the Lease are administrative claims under 11 U.S.C. §§ 503(b), 507(a) since they occurred following the Petition Date. The first order of priority under the Bankruptcy Code is "administrative expenses allowed under section 503(b)…." 11 U.S.C. § 507(a)(1). Administrative expenses under § 503(b) of the Bankruptcy Code are the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b); *Broadcast Corp. of Georgia v. Broadfoot (In re Subscription Television of Greater Atlanta)*, 789 F.2d 1530, 1532 (11th Cir. 1986); *In re Right Time Foods, Inc.*, 262 B.R. 882, 884 (Bankr. M.D. Fla. 2001) (Funk, J.). As a general rule, administrative claims must "benefit" the estate and must be an "actual and necessary cost of preserving" the estate. *Subscription Television*, 789 F.2d at 1532; *Right Time,* 262 B.R. at 884.

Courts, however, have held that administrative expense status is accorded to (1) damage claims for torts committed by a bankruptcy trustee, (2) compensatory penalties for violation of an injunction, and (3) compensatory penalties covering the costs of cleaning up environmental hazards. *See In re N.P. Mining Co., Inc.*, 963 F.2d 149, 1452 (11th Cir. 1992) (holding that punitive, civil penalties assessed post-petition against chapter 11 debtor as punishment for environmental violations qualified as administrative expenses only to the extent that they were incurred as consequences of mining operations while debtor's strip mining business was still operating).

In this case, the Lessee's obligations, and subsequent non-monetary and monetary defaults, under the terms of the Lease included:

a. the obligation to keep and maintain the Property in good repair and appearance and promptly make all repairs and replacements. (Lease, at para. 11, p. 22);

b. the obligation not to cause damage or injury to the Property. (Lease, at para. 4(c));

c. the obligation to adjust, collect and compromise the Insurance Claim, subject to Bundy's approval. (Lease, at para. 14(g), p. 39:

d. the obligation to commence and diligently continue to perform restoration of the Property. (Lease, at para. 14(g), p. 39);

e. in the event that the insurance proceeds are insufficient to restore the Property, the obligation to pay the excess. (Lease, at para 15(a)(vii), p. 44); and

f. the obligation to use the insurance proceeds to restore the Property. (Lease, at para 14(g), p. 40).

**A. Bundy's Administrative Claim Should Be Allowed Because it "Benefited" the Estate and it was an "Actual and Necessary Cost of Preserving" the Estate.**

The Court should award Bundy an administrative claim in the estimated amount of $6,750,000.00. As a general rule, administrative claims must "benefit" the estate and must be an "actual and necessary cost of preserving" the estate. *Subscription Television*, 789 F.2d at 1532;

*Right Time*, 262 B.R. at 884. As described above, the Debtors have received $75,000,000.00 in insurance proceeds and Bundy's estimated damages suffered by the Property are around $6,750,000.00. But for the Debtors' post-petition business operations under the Lease at the Property, the Debtors would not have been able to file the Insurance Claim as to Store 1417. The Debtors were required under the terms of the Lease to maintain insurance coverage for any loss to the Property and were required to hold the insurance proceeds in trust for the benefit of Bundy. Instead, the Debtors absconded with $75,000,000.00 in insurance proceeds and applied the $75,000,000.00 in insurance proceeds to their own personal property losses and used these proceeds in their operations *for the benefit of the estate*. Therefore, the Court should allow Bundy's administrative claim in the amount of $6,750,000.00.

    **B. Assuming Arguendo That There was no "Benefit" to the Estate, Bundy's Administrative Claim Should Be Allowed as it was an "Actual and Necessary Cost of Preserving" the estate.**

The Court should award Bundy an administrative claim in the amount of $6,750,000.00 even if there was no "benefit" to the estate. The leading case on courts granting administrative expense status is *Reading Co. v. Brown*, 391 U.S. 471 (1968) (holding that tort claims against a bankruptcy trustee were payable as administrative expenses even though they were not beneficial to the estate). In *Reading*, the Court ruled that tort claims against a bankruptcy trustee were payable as administrative expenses even though they were not beneficial to the estate. 391 U.S. at 485. The trustee negligently operated a business and caused harm to a third party by failing to obtain insurance coverage. *Id*. at 476-77. The Court gave the creditor an administrative claim reasoning that it would encourage a trustee to adequately insure the business they operated. *Id*. at 483. In the *Reading* line of cases, courts have created categories of costs that are entitled to

administrative expense status as "actual, necessary" costs of preserving the estate even these costs do not confer an actual benefit on the estate. *N.P. Mining*, 963 F.2d at 1453.

In *N.P. Mining*, the Court held that *Reading* remained binding precedent. 963 F.2d at 1453. The *N.P. Mining* Court found that "a policy of ensuring compliance by trustees with state law is sufficient justification to place civil penalties assessed for post-petition mining operations in the category of the "some cases" in which "costs ordinarily incident to operation of a business," are accorded administrative-expense priority." F.2d at 1458 (citing to *Reading*, 391 U.S. at 484). In this case, Winn Dixie, the debtor in possession, likewise suffered post-petition costs ordinarily incident to the operation of a business. Winn Dixie is responsible to Bundy for payment for the loss to the Property.

**WHEREFORE PREMISES CONSIDERED,** Bundy New Orleans Co., LLC respectfully requests that this Court compel the Debtors to pay Bundy the Administrative Claim within ten (10) days of entry of this order and granting Bundy such other further relief as this Court deems just and proper.

HIERSCHE, HAYWARD, DRAKELEY<br>& URBACH, P.C

By:   */s/ Russell W. Mills*
      Russell W. Mills
      Texas State Bar No. 00784609
      Jason M. Katz
      Texas State Bar No. 24038990

15303 Dallas Parkway, Suite 700
Addison, Texas 75001
Telephone:   (972) 701-7000
Facsimile:   (972) 701-8765

- and -

BLEDSOE, JACOBSON, SCHMIDT
   & WRIGHT

By:   */s/ James A. Bledsoe, Jr.*
      James A. Bledsoe, Jr.
      Florida State Bar No. 0150646

1301 Riverplace Boulevard, Suite 1818
Jacksonville, Florida 32207
Telephone:   (904) 398-1818
Facsimile:   (904) 398-7073

ATTORNEYS FOR BUNDY
NEW ORLEANS CO., LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 25th day of September, 2006, a true and correct copy of the above and foregoing Motion was served *via* first class mail and/or via electronically on the following:

| | |
|---|---|
| D. J. Baker<br>Adam Ravin<br>Rosalie Walker Gray<br>Sally McDonald Henry<br>Skadden Arps Slate Meagher & Flom, LLP<br>Four Times Square<br>New York, NY 10036<br>**Counsel for Debtors** | Allan E. Wulbern<br>Stephen D. Busey<br>James. H. Post<br>Cynthia C. Jackson<br>Smith, Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, FL 32202<br>**Counsel for Debtors** |
| Dennis F. Dunne<br>Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, NY 10005 | David Jennis, Esq.<br>Jennis & Bowen, P.L.<br>400 North Ashley Drive, Suite 2540<br>Tampa, Florida 33602 |
| John B. Macdonald<br>Patrick P. Patangan<br>Akerman Senterfitt<br>50 North Laura Street, Suite 2500<br>Jacksonville, FL 32202<br>**Counsel for Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al.** | Douglas D Chunn<br>One Independent Drive, Suite 3201<br>Jacksonville, FL 32202<br><br>Karol K. Denniston, Esq.<br>Paul, Hastings, Janofsky & Waler, LLP<br>600 Peachtree Street, Suite 2400<br>Atlanta, Georgia 30308<br>**Counsel for Official Committee of Equity Security Holders** |
| Elena L Escamilla<br>Kenneth C Meeker<br>U.S. Trustee<br>United States Trustee - JAX<br>135 W. Central Blvd., Suite 620<br>Orlando, FL 32801<br>**Counsel for U.S. Trustee** | |

*/s/ Russell W. Mills*
Russell W. Mills
