*La, D. Orleans*
*with Disclosure*

## INDEX

INDEX ADDED AFTER LEASE EXECUTED

| Paragraph | Heading | Page |
|-----------|---------|------|
| 1 | Demise of Premises | 1 |
| 2 | Certain Definitions | 2 |
| 3 | Title and Condition | 7 |
| 4 | Use of leased Premises; Quiet Enjoyment | 10 |
| 5 | Term | 11 |
| 6 | Rent | 13 |
| 7 | Net Lease; Non-Terminability | 15 |
| 8 | Payment of Impositions; Compliance with Legal Requirements and Insurance Requirements | 17 |
| 9 | Liens; Recording and Title | 19 |
| 10 | Indemnification | 20 |
| 11 | Maintenance and Repair | 22 |
| 12 | Alterations | 25 |
| 13 | Condemnation | 26 |
| 14 | Insurance | 33 |
| 15 | Restoration | 42 |
| 16 | Subordination to Financing | 45 |
| 17 | Assignment, Subleasing and Vacating | 49 |
| 18 | Permitted Contests | 51 |
| 19 | Conditional Limitation; Default Provision | 53 |
| 20 | Additional Rights of Landlord | 58 |
| 21 | Notices | 60 |
| 22 | Estoppel Certificates | 60 |
| 23 | Surrender and Holding Over | 61 |
| 24 | Risk of Loss | 63 |
| 25 | No Merger of Title | 63 |
| 26 | Definition of Landlord and NonRecourse | 64 |
| 27 | Expansion | 65 |
| 28 | Entry by Landlord | 66 |
| 29 | Annual Statements | 67 |
| 30 | No Usury | 67 |
| 31 | Arbitration | 67 |
| 32 | Broker | 68 |
| 33 | Separability | 68 |
| 34 | Completion of Construction of Improvements | 69 |
| 35 | Miscellaneous | 70 |

Exhibit A - Legal Description
Exhibit B - Machinery and Equipment
Exhibit C - Permitted Encumbrances
Exhibit D - Basic Rent Payments
Exhibit E - Condemnation Purchase Price

THIS LEASE AGREEMENT made as of this 16th day of December, 1987, by and between ROBERT H. ARNOW, with an address c/o Swig, Weiler & Arnow Management Co., Inc., 1114 Avenue of the Americas, New York, New York 10036 ("Landlord") and WINN-DIXIE LOUISIANA, INC., a Florida corporation with an address of P.O. Box 51059, New Orleans, Louisiana 70151 ("Tenant").

In consideration of the rents and provisions herein stipulated to be paid and performed, Landlord and Tenant hereby covenant and agree as follows:

1.   Demise of Premises.  Landlord hereby demises and lets to Tenant and Tenant hereby takes and leases from Landlord for the term or terms and upon the provisions hereinafter specified the following described property (collectively, the "Leased Premises"):  (i) the premises described in Exhibit "A" attached hereto and made a part hereof together with the easements, rights and appurtenances thereunto belonging or appertaining (collectively the "Land"); (ii) the buildings, structures and other improvements constructed and to be constructed on the Land (collectively, the "Improvements"); and (iii) the machinery and equipment described in Exhibit "B" attached hereto and made a

-1-

part hereof and installed in and upon the Improvements, together with all additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease (collectively, the "Equipment") excepting therefrom Tenant's Trade Fixtures.

   2.   Certain Definitions.

      (a)  "Additional Rent" shall mean Additional Rent as defined in Paragraph 6.

      (b)  "Adjoining Property" shall mean all sidewalks, curbs, gores and vault spaces adjoining any of the Leased Premises.

      (c)  "Alteration" or "Alterations" shall mean any or all changes, additions, improvements, reconstructions or replacements of any of the Improvements or Equipment, both interior or exterior, and ordinary and extraordinary.

      (d)  "Assignment" shall mean any Assignment of Rents and Lessor's Interest in Leases hereafter executed from Landlord to Lender.

      (e)  "Basic Rent" shall mean Basic Rent as defined in Paragraph 6.

      (f)  "Basic Rent Payment Dates" shall mean the Basic Rent Payment Dates as defined in Paragraph 6.

      (g)  "Casualty Termination Date" shall mean the Casualty Termination Date as defined in paragraph 14(g).

-2-

(h)  "Commencement Date" shall mean the Commencement Date as defined in Paragraph 5.

(i)  "Condemnation" shall mean a Taking and/or a Requisition as defined in subdivisions (z) and (cc) respectively of this Paragraph 2.

(j)  "Default Rate" shall mean the Default Rate as defined in Paragraph 6(b).

(k)  "Event of Default" shall mean an Event of Default as defined in Paragraph 19(a).

(l)  "Guarantor" shall mean Winn-Dixie Stores, Inc., a Florida corporation.

(m)  "Impositions" shall mean the Impositions as defined in Paragraph 8.

(n)  "Insurance Requirement" or "Insurance Requirements" shall mean, as the case may be, any one or more of the terms of each insurance policy required to be carried by Tenant under this Lease and the requirements of the issuer of such policy, and whenever Tenant shall be engaged in making any Alteration or Alterations, repairs or construction Work of any kind (collectively "Work") the terms "Insurance Requirement" or "Insurance Requirements" shall be deemed to include a requirement that (i) all insurance policies shall contain an endorsement referring to such Work and (ii) Tenant shall obtain workmen's compensation insurance covering all persons employed in connection with the

-3-

Work, whether by Tenant, its contractors or subcontractors and with respect to whom death or bodily injury claims could be asserted against Landlord.

(o)  "Law" shall mean any constitution, statute or rule of law.

(p)  "Legal Requirement" or "Legal Requirements" shall mean, as the case may be, any one or more of all present and future laws, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements, even if unforeseen or extraordinary, of every duly constituted governmental authority or agency (but excluding those which by their terms are not applicable to and do not impose any obligation on Tenant, Landlord or the Leased Premises as a result of some grandfather clause or similar provision) and all covenants, restrictions and conditions now or hereafter of record which may be applicable to Tenant, to Landlord or to any of the Leased Premises, or to the use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of any of the Leased Premises, even if compliance therewith (i) necessitates structural changes or improvements or results in interference with the use or enjoyment of any of the Leased Premises or (ii) requires Tenant to carry insurance other than as required by the provisions of this Lease.

(q)  "Lender" shall mean an entity which makes a Loan to Landlord, secured by a Mortgage and evidenced by a Note.

(r)  "Loan" shall mean a loan made by a Lender to Landlord secured by a Mortgage and evidenced by a Note.

(s)  "Mortgage" shall mean a mortgage or similar security instrument hereafter executed covering the Leased Premises from Landlord to Lender.

(t)  "Net Award" shall mean the entire award payable to Landlord by reason of a Condemnation, less any expenses incurred by Landlord in collecting such award.

(u)  "Net Proceeds" shall mean the entire proceeds of any insurance required under clauses (i), (iv), (v) or (vi) of Paragraph 14(a), less any expenses incurred by Landlord in collecting such proceeds.

(v)  "Note" shall mean a Promissory Note hereafter executed from Landlord to Lender, which Note will be secured by a Mortgage and an Assignment.

(w)  "Permitted Encumbrances" shall mean those covenants, restrictions, reservations, liens, conditions, encroachments, easements listed on Exhibit C attached hereto and any other matters of title existing on the Commencement Date.

(x)  "Remaining Sum" shall mean the Remaining Sum as defined in Paragraph 15(b).

(y)  "Replaced Equipment" or "Replacement Equipment" shall mean the Replaced Equipment and Replacement Equipment, respectively, as defined in Paragraph 11(d).

-5-

(z) "Requisition" shall mean any temporary condemnation or confiscation of the use or occupancy of any of the Leased Premises by any governmental authority, civil or military, whether pursuant to an agreement with such governmental authority in settlement of or under threat of any such requisition or confiscation, or otherwise.

(aa) "Restoration" shall mean the Restoration as defined in Paragraph 13(c).

(bb) "State" shall mean the State or Commonwealth in which the Leased Premises are situate.

(cc) "Taking" shall mean any taking of any of the Leased Premises in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of any agreement with any condemnor in settlement of or under threat of any such condemnation or other eminent domain proceedings or by any other means, or any de facto condemnation.

(dd) "Term" shall mean the Term as defined in Paragraph 5.

(ee) "Termination Date" shall mean the Termination Date as defined in Paragraph 13(b).

(ff) "Trade Fixtures" shall mean all fixtures, equipment and other items of personal property which are owned by Tenant and used in the operation of the business conducted on the Leased Premises, excluding therefrom the Equipment.

-6-

3.   <u>Title and Condition</u>.

(a)   The Leased Premises are demised and let subject to (i) the rights of any parties in possession of any of the Leased Premises, (ii) the existing state of title of the Leased Premises, including the Permitted Encumbrances, as of the commencement of the Term, (iii) any state of facts which an accurate survey or physical inspection of the Leased Premises might show, (iv) all Legal Requirements, and Insurance Requirements, including any existing violation of any thereof, and (v) the condition of the Leased Premises as of the commencement of the Term, without representation or warranty by Landlord; it being understood and agreed, however, that the recital of the Permitted Encumbrances herein shall not be construed as a revival of any thereof which for any reason may have expired.

(b)   Tenant acknowledges that the Leased Premises are in good condition and repair at the inception of this Lease, having been constructed on behalf of Tenant by a contractor of its choice.   LANDLORD HAS NOT MADE AND WILL NOT MAKE ANY INSPECTION OF ANY OF THE LEASED PREMISES, AND LANDLORD LEASES AND WILL LEASE AND TENANT TAKES AND WILL TAKE THE LEASED PREMISES AS IS, AND TENANT ACKNOWLEDGES THAT LANDLORD (WHETHER ACTING AS LANDLORD HEREUNDER OR IN ANY OTHER CAPACITY) HAS NOT MADE AND WILL NOT MAKE, NOR SHALL LANDLORD BE DEEMED TO HAVE MADE, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE

-7-

LEASED PREMISES, INCLUDING ANY WARRANTY OR REPRESENTATION AS TO ITS FITNESS FOR USE OR PURPOSE, DESIGN OR CONDITION FOR ANY PARTICULAR USE OR PURPOSE, AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, LATENT OR PATENT, AS TO LANDLORD'S TITLE THERETO, OR AS TO VALUE, COMPLIANCE WITH SPECIFICATIONS, LOCATION, USE, CONDITION, MERCHANTABILITY, QUALITY, DESCRIPTION, DURABILITY OR OPERATION, IT BEING AGREED THAT ALL RISKS INCIDENT THERETO ARE TO BE BORNE BY TENANT.   TENANT ACKNOWLEDGES THAT THE LEASED PREMISES ARE OF ITS SELECTION AND TO ITS SPECIFICATIONS, AND THAT THE LEASED PREMISES HAVE BEEN INSPECTED BY TENANT AND ARE SATISFACTORY TO IT.   IN THE EVENT OF ANY DEFECT OR DEFICIENCY IN ANY OF THE LEASED PREMISES OF ANY NATURE, WHETHER PATENT OR LATENT, LANDLORD SHALL NOT HAVE ANY RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING STRICT LIABILITY IN TORT).   THE PROVISIONS OF THIS PARAGRAPH 3(b) HAVE BEEN NEGOTIATED, AND THE FOREGOING PROVISIONS ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF ANY WARRANTIES BY LANDLORD, EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE LEASED PREMISES, ARISING PURSUANT TO THE UNIFORM COMMERCIAL CODE OR ANY OTHER LAW NOW OR HEREAFTER IN EFFECT OR OTHERWISE.

(c)   Tenant represents to Landlord that Tenant has examined the title to the Leased Premises prior to the execution and delivery of this Lease and has found the same to be

satisfactory for the purposes contemplated hereby and acknowl-
edges that title is in Landlord and that Tenant has only the
right of possession and use of the Leased Premises as provided in
this Lease.

    (d)  Landlord hereby assigns, without recourse or war-
ranty whatsoever, to Tenant, all warranties, guaranties and
indemnities, express or implied, and similar rights which Land-
lord may have against any manufacturer, seller, engineer, con-
tractor or builder in respect of any of the Leased Premises,
including, but not limited to, any rights and remedies existing
under contract or pursuant to the Uniform Commercial Code.  Such
assignment shall remain in effect so long as no Event of Default
exists hereunder or until the termination of this Lease, whereup-
on Tenant shall reassign any interest so assigned hereunder to
Landlord.  Landlord shall also retain the right to enforce any
such warranty, guaranty, or indemnity assigned in the name of
Tenant.  Landlord hereby agrees to execute and deliver at Ten-
ant's expense such further documents, including powers of  attor-
ney, as Tenant may reasonably request (and which in the good
faith judgment of Landlord, do not adversely affect a substantial
general interest of Landlord), in order that Tenant may have the
full benefit of the assignment effected or intended to be ef-
fected by this Paragraph 3(d).

-9-

(e) Landlord agrees to enter into with Tenant, at Tenant's expense, such easements, covenants or restrictions for utilities, parking or other matters as desirable for operation of the Leased Premises as requested by Tenant, subject to Landlord's approval of the form and substance thereof, not to be unreasonably withheld.

4.   Use of Leased Premises; Quiet Enjoyment.

(a) The Leased Premises may be used, sublet or assigned, for any legal retail purpose, subject to the provisions of Paragraph 17 hereof. In no event shall be Leased Premises be used for any purpose which shall otherwise violate any of the provisions of this Lease, including but not limited to, Legal Requirements, Insurance Requirements or other recorded covenants, restrictions or agreements applicable to the Leased Premises or to the shopping center of which the Leased Premises are a part.

(b) Tenant shall not permit any unlawful occupation, business or trade to be conducted on any of the Leased Premises or any use to be made thereof contrary to applicable Legal Requirements or Insurance Requirements. Tenant shall not use, occupy or permit any of the Leased Premises to be used or occupied, nor do or permit anything to be done in or on any of the Leased Premises, in a manner which would (i) violate any certificate of occupancy or equivalent certificate affecting any of the Leased Premises, (ii) make void or voidable any insurance then in force

-10-

with respect to any of the Leased Premises, (iii) affect in any manner the ability of Tenant to obtain fire or other insurance which Tenant is required to furnish hereunder, (iv) cause any injury or damage to any of the Improvements, or (v) constitute a public or private nuisance or waste.

(c)  Subject to all of the provisions of this Lease, including but not limited to the provisions of Paragraphs 3 and 7(b), so long as no Event of Default exists hereunder, Landlord covenants to do no act to disturb the peaceful and quiet occupation and enjoyment of the Leased Premises by Tenant, provided that Landlord may enter upon and examine any of the Leased Premises at reasonable times and exercise any rights and privileges granted to Landlord under the provisions of this Lease or provided by law.

5.  <u>Term</u>.  Subject to the provisions hereof, Tenant shall have and hold the Leased Premises for an initial term (the "Term") commencing on December 30, 1987 (the "Commencement Date") and ending on the fifth day of January, 2008. Provided the Lease shall not have been terminated pursuant any provision of this Lease including but not limited to Paragraph 19, the Tenant shall have the option to extend the Term for Six (6) renewal terms of five (5) years each, by giving written notice to Landlord in writing at least twelve (12) months prior to the expiration of the then current Term.  Any option granted to Tenant

-11-

to extend the Term hereunder for any of the six renewal terms of
five (5) years each is on the condition that at the time of the
exercise of the option and at the time of the Commencement Date
of each such renewal term, no Event of Default shall exist. In
the absence of giving of such notice to renew by Tenant to Land-
lord, the Term shall be automatically terminated at the end of
the then current Term. Any such extension or renewal of the Term
(also referred to as the "Term") shall be subject to and shall
continue in full force and effect all the provisions of this
Lease. In the event that Tenant does not exercise its option to
renew or to further renew the Term as hereinabove provided, then
Landlord shall have the right during the remainder of the Term
then in effect to (i) advertise the availability of the Leased
Premises for sale or for reletting and to erect upon the Leased
Premises signs indicating such availability (provided that such
signs do not unreasonably interfere with the use of the Leased
Premises by Tenant), and (ii) show the Leased Premises to pro-
spective purchasers, lenders or tenants at such reasonable times
during normal business hours as Landlord may select. If Tenant
shall fail to timely give such notice of its irrevocable election
to exercise any renewal option then Tenant's right to exercise
such option and all options with regard to subsequent extensions
or renewals of the Term shall expire and be null and void.

-12-

6.    Rent.

(a)    Tenant shall pay to Landlord, as annual rent for the Leased Premises during the Term, the amounts determined in accordance with the schedule set forth in Exhibit "D" attached hereto and made a part hereof ("Basic Rent"), commencing on the fifth day of the first month next following the Commencement Date and continuing on the same day of each month thereafter during the Term (the said days being called the "Basic Rent Payment Dates"), and shall pay the same at Landlord's address set forth below, or at such other place or to such other person or persons (not exceeding four (4) in number) and in such proportions as Landlord from time to time may designate to Tenant in writing, in funds which at the time of such payment shall be legal tender for the payment of public or private debts in the United States of America.  Pro rata Basic Rent shall be due for the period from the Commencement Date through the fifth day of the month next following the Commencement Date computed as set forth in Exhibit D and shall be paid in advance on the Commencement Date, but if the Commencement Date shall occur on the fifth day of a calendar month, full monthly installment of Basic Rent shall be paid on the Commencement Date.

(b)    Tenant shall pay and discharge when the same shall become due, as additional rent, all other amounts and obligations which Tenant assumes or agrees to pay or discharge pursuant to

-13-

this Lease, together with every fine, penalty, interest and cost which may be added for nonpayment or late payment thereof. In the event of any failure by Tenant to pay or discharge any of the foregoing, Landlord shall have all rights, powers and remedies provided herein, by law or otherwise, in the event of nonpayment of Basic Rent. If any installment of Basic Rent is not paid within ten days after the due date thereof, Tenant shall pay to Landlord, as additional rent, an amount equal to four percent of the amount of such installment. Additionally, Tenant shall pay to Landlord on demand, as additional rent, interest, at the rate of fifteen percent (15%) per annum (the "Default Rate") on all overdue amounts of additional rent pursuant to the foregoing sentence, on all overdue installments of Basic Rent from the respective due dates thereof, and on all overdue amounts of additional rent relating to obligations which Landlord shall have paid on behalf of Tenant, from the date of payment thereof, until paid in full. All the foregoing additional rent referred to in this Paragraph 6(b) is herein sometimes called "Additional Rent". The requirements of Paragraph 19(e) regarding notice and grace periods need not be complied with prior to the imposition of the Additional Rent charges of this Paragraph 6(b) only with respect to the above-mentioned four percent late charge.

-14-

7.   Net Lease; Non-Terminability.

(a)   This is a net Lease and Basic Rent, Additional Rent and all other sums payable hereunder by Tenant shall be paid without notice or demand, and without setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense.

(b)   This Lease shall not terminate and Tenant shall not have any right to terminate this Lease, during the Term (except as otherwise expressly provided herein).  Tenant shall not be entitled to any setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease (except as otherwise expressly provided herein), and the obligations of Tenant under this Lease shall not be affected by any interference with Tenant's use of any of the Leased Premises for any reason, including the following:  (i) any damage to or destruction of any of the Leased Premises by any cause whatsoever, (ii) any Condemnation, (iii) the prohibition, limitation or restriction of Tenant's use of any of the Leased Premises, (iv) any eviction by paramount title or otherwise, (v) Tenant's acquisition of ownership of any of the Leased Premises other than pursuant to an express provision of this Lease, (vi) any default on the part of Landlord hereunder or under any other agreement, (vii) any latent or other defect in, or any

-15-

theft or loss of any of the Leased Premises, (viii) the breach of any warranty of any seller or manufacturer of any of the Equipment, (ix) any violation of Paragraph 4(c) by Landlord, or (x) any other cause, whether similar or dissimilar to the foregoing, any present or future law to the constrary notwithstanding. It is the intention of the parties hereto that the obligations of Tenant hereunder shall be separate and independent covenants and agreements, and that Basic Rent, Additional Rent and all other sums payable by Tenant hereunder shall continue to be payable in all events (or, in lieu thereof, Tenant shall pay amounts equal thereto), and that the obligations of Tenant hereunder shall continue unaffected, unless the requirement to pay or perform the same shall have been terminated pursuant to an express provision of this Lease.

(c)  Tenant agrees that it shall remain obligated under this Lease in accordance with its provisions and that, except as otherwise expressly provided herein, it shall not take any action to terminate, rescind or avoid this Lease, notwithstanding (i) the bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding-up or other proceeding affecting Landlord, (ii) the exercise of any remedy, including foreclosure, under the Mortgage, or (iii) any action with respect to this Lease (including the disaffirmance hereof) which may be taken by Landlord under the Federal Bankruptcy Code

-16-

or by any trustee, receiver or liquidator of Landlord or by any court under the Federal Bankruptcy Code or otherwise.

(d)  Tenant waives all rights which may now or hereafter be conferred by law (i) to quit, terminate or surrender this Lease or any of the Leased Premises, and (ii) to any setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease, except as otherwise expressly provided herein.

8.  <u>Payment of Impositions; Compliance with Legal Requirements and Insurance Requirements</u>.

(a)  Subject to the provisions of Paragraph 18 hereof relating to contests, Tenant shall, before interest or penalties are due thereon, pay and discharge all taxes of every kind and nature (including real, ad valorem and personal property, income, franchise, withholding, profits and gross receipts taxes), all charges and/or taxes for any easement or agreement maintained for the benefit of any of the Leased Premises, all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and other utility charges, all ground rents, and all other public charges and/or taxes whether of a like or different nature, even if unforseen or extraordinary, imposed upon or assessed, prior to or during the Term,  against Landlord, Tenant or any of the Leased Premises as a result of or

-17-

arising in respect of the acquisition, occupancy, leasing, use or possession thereof, or any activity conducted on the Leased Premises, or the Basic Rent or Additional Rent, including without limitation, any gross income tax, sales tax or excise tax levied by any governmental body on or with respect to such Basic Rent or Additional Rent (collectively the "Impositions").

Nothing herein shall obligate Tenant to pay Federal, State or local (i) franchise, capital stock or similar taxes, if any, of Landlord, (ii) income, excess profits or other taxes, if any, of Landlord, determined on the basis of its net income, or (iii) any estate, inheritance, succession, gift, capital levy or similar tax unless the taxes referred to in clauses (i) and (ii) above are in addition to or in lieu of or a substitute for any other tax or assessment upon or with respect to any of the Leased Premises which, if such other tax or assessment were in effect at the commencement of the term, would be payable by Tenant. In the event that any assessment against any of the Leased Premises may be paid in installments, Tenant shall have the option to pay such assessment in installments; and in such event, Tenant shall be liable only for those installments which become due and payable during the Term. Tenant shall prepare and file all tax reports required by governmental authorities which relate to the Impositions. Tenant shall deliver to Landlord, within twenty days of receipt thereof, copies of all settlements and notices pertaining

-18-

to the Impositions which may be issued by any governmental au-
thority and receipts for payments of all Impositions made during
each calendar year of the Term, within thirty days after payment.

(b)  Tenant shall promptly comply with and conform to
all of the Legal Requirements and Insurance Requirements, subject
to the provisions of Paragraph 18 hereof.

9.  Liens; Recording and Title.

(a)  Tenant shall not, directly or indirectly, create
or permit to be created or to remain, and shall promptly dis-
charge, any lien on any of the Leased Premises, on the Basic
Rent, Additional Rent or on any other sums payable by Tenant
under this Lease, other than the Mortgage, the Assignment, the
Permitted Encumbrances and any mortgage, lien, encumbrance or
other charge created by or resulting from any act or omission by
Landlord, not resulting from a default by Tenant hereunder. NO-
TICE IS HEREBY GIVEN THAT LANDLORD SHALL NOT BE LIABLE FOR ANY
LABOR, SERVICES OR MATERIALS FURNISHED OR TO BE FURNISHED TO TEN-
ANT, OR TO ANYONE HOLDING ANY OF THE LEASED PREMISES THROUGH OR
UNDER TENANT, AND THAT NO MECHANIC'S OR OTHER LIENS FOR ANY SUCH
LABOR, SERVICES OR MATERIALS SHALL ATTACH TO OR AFFECT THE INTER-
EST OF LANDLORD IN AND TO ANY OF THE LEASED PREMISES.

(b)  Tenant shall execute, deliver and record, file or
register from time to time all such instruments as may be re-
quired by any present or future law in order to evidence the

-19-

respective interest of Landlord and Tenant in any of the Leased Premises, and shall cause a memorandum of this Lease, and any supplement hereto or to such other instrument, if any, as may be appropriate, to be recorded, filed or registered and re-recorded, refiled or re-registered in such manner and in such places as may be required by any present or future law in order to give public notice and protect the validity of this Lease. In the event of any discrepancy between the provisions of said recorded memorandum of this Lease or any other recorded instrument referring to this Lease and the provisions of this Lease, the provisions of this Lease shall prevail.

        (c)  Nothing in this Lease and no action or inaction by Landlord shall be deemed or construed to mean that Landlord has granted to Tenant any right, power or permission to do any act or to make any agreement which may create, give rise to, or be the foundation for, any right, title, interest or lien in or upon the estate of Landlord in any of the Leased Premises.

     10.  Indemnification. Tenant agrees to defend, pay, protect, indemnify, save and hold harmless Landlord from and against any and all liabilities, losses, damages, penalties, costs, expenses (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature whatsoever, howsoever caused, arising from (i) any of the Leased Premises or Adjoining Property or the use, non-use,

-20-

occupancy, condition, design, construction, maintenance, repair or rebuilding of any of the Leased Premises or Adjoining Property, and any injury to or death of any person or persons or any loss of or damage to any property, real or personal, in any manner arising therefrom connected therewith or occurring thereon, whether or not Landlord has or should have knowledge or notice of the defect or conditions, if any, causing or contributing to said injury, death, loss, damage or other claim, (ii) any violation by Tenant of any provision of this Lease, of any contract or agreement to which Tenant is a party, including but not limited to any violation of any Insurance Requirement or Legal Requirement or Permitted Encumbrance, or (iii) any other cause not resulting from the negligence or wilful misconduct of Landlord or its employees.  In case any action or proceeding is brought against Landlord by reason of any such claim, Tenant covenants upon notice from Landlord to resist or defend Landlord in such action, with the expenses of such defense paid by Tenant, and Landlord will cooperate and assist in the defense of such action or proceeding if reasonably requested so to do by Tenant.

The obligations of Tenant under this Paragraph 10 shall survive any termination of this Lease.

11. <u>Maintenance and Repair</u>.

(a)  Tenant shall at all times, including any Requisi-
tion period, put, keep and maintain the Leased Premises,
including, without limitation, the roof, landscaping, walls and
structural components of the Leased Premises, and the Adjoining
Property, in good repair and appearance and, in the case of the
Equipment, in good mechanical condition, except for ordinary wear
and tear, and shall promptly make all repairs and replacements
(substantially equivalent in quality and workmanship to the orig-
inal work) of every kind and nature, whether foreseen or unfore-
seen, which may be required to  be made upon or in connection
with any of the Leased Premises in order to keep and maintain the
Leased Premises in as good repair and appearance as they were
originally, except for ordinary wear and tear.  Tenant shall do
or cause others to do all shoring of the Leased Premises or Ad-
joining Property or of foundations and walls of the Improvements
and every other act necessary or appropriate for preservation and
safety thereof, by reason of or in connection with any excavation
or other building operation upon any of the Leased Premises or
Adjoining Property, whether or not Landlord shall, by reason of
any Legal Requirements or Insurance Requirements, be required to
take such action or be liable for failure to do so.  Landlord
shall not be required to make any repair, whether foreseen or un-
foreseen, or to maintain any of the Leased Premises or Adjoining

-22-

Property in—any way, and Tenant hereby expressly waives the right to make repairs at the expense of the Landlord, which right may be provided for in any law now or hereafter in effect.  Tenant shall, in all events, make all repairs for which it is responsible hereunder promptly upon written notice from Landlord, and all repairs shall be in a good, proper and workmanlike manner.

(b)  In the event that any Improvement now or hereafter constructed shall encroach upon any property, street or right-of-way adjoining any of the Leased Premises or Adjoining Property, shall violate any Legal Requirements, Insurance Requirements or the provisions of any restrictive covenant affecting any of the Leased Premises, shall hinder or obstruct any easement or right-of-way to which any of the Leased Premises  is subject, or shall impair the rights of others in, to or under any of the foregoing, then, promptly after written request of Landlord, Tenant shall either (i) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation, hindrance, obstruction or impairment, whether the same shall affect Landlord, Tenant or both, or (ii) take such action as shall be necessary to remove such encroachment, violation, hindrance, obstruction or impairment including, if necessary, an Alteration.  Any such repair or Alteration shall be made in conformity with the provisions of Paragraph 12.

-23-

(c) If Tenant shall have violated or be in default under any of the provisions hereof, Landlord may do whatever is necessary to cure such violation or default for the account of and at the expense of Tenant. All sums so paid by Landlord and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) so incurred, together with interest thereon at the Default Rate from the date of payment or incurring the expense, shall constitute Additional Rent payable by Tenant under this Lease and shall be paid by Tenant to Landlord on demand.

(d) Tenant shall from time to time replace with other operational equipment or parts (the "Replacement Equipment") any of the Equipment (the "Replaced Equipment") which shall have become worn out, obsolete or unusable for the purpose for which it is intended, been taken by a Condemnation as provided in Paragraph 13(d), or been lost, stolen, damaged or destroyed as provided in Paragraph 14. Tenant shall repair at its sole cost and expense all damage to the Leased Premises caused by the removal of Equipment or Replaced Equipment or other personal property of Tenant or the installation of Replacement Equipment. All Replacement Equipment shall become the property of Landlord, shall be free and clear of all liens and rights of others and shall become a part of the Equipment as if originally demised herein.

-24-

12.   Alterations.  Except as otherwise provided in this
Paragraph, Tenant shall not make any Alterations which would tend
to impair the value of the Leased Premises, the usefulness or
structural integrity thereof, without Landlord's written consent,
not to be unreasonably withheld.  Notwithstanding the above, Ten-
ant may make non-structural Alterations without the prior written
consent of the Landlord.  In the event that Landlord gives its
prior written consent to any Alterations, or if such consent is
not required, Tenant agrees that in connection with any Altera-
tion (i) the value of the Leased Premises shall not be lessened
by any such Alteration, or its usefulness or structural integrity
impaired, (ii) the Alteration shall not change the general char-
acter of the Improvements, or reduce the gross cubic foot volume
of the Improvements, (iii) all such Alterations shall be per-
formed in a good and workmanlike manner, and shall be expedi-
tiously completed in compliance with all Legal Requirements,
(iv) all work done in connection with any such Alteration shall
comply with all Insurance Requirements, (v) Tenant shall promptly
pay all costs and expenses of any such Alteration, and shall dis-
charge all liens filed against any of the Leased Premises arising
out of the same, (vi) Tenant shall procure and pay for all per-
mits and licenses required in connection with any such Altera-
tion, (vii) all such Alterations, shall be the property of Land-
lord and shall be subject to this Lease, and (viii) all

-25-

Alterations_shall be made in the case of any Alteration the esti-
mated cost of which in any one instance exceeds Fifty Thousand
($50,000) Dollars under the supervision of an architect or engi-
neer, reasonably satisfactory to Landlord, in accordance with de-
tailed plans and specifications approved by Landlord, not to be
unreasonably withheld.

    13.  Condemnation.

    (a)  Tenant, immediately upon obtaining knowledge of
the institution of any proceeding for Condemnation, shall notify
Landlord thereof and Landlord shall be entitled to participate in
any Condemnation proceeding at Tenant's expense.  Landlord imme-
diately upon obtaining knowledge of the institution of any pro-
ceeding for Condemnation, shall notify Tenant thereof.  Subject
to the provisions of this Paragraph 13 and Paragraph 15, Tenant
hereby irrevocably assigns to Landlord any award or payment to
which Tenant is or may be entitled by reason of any Condemnation,
whether the same shall be paid or payable for Tenant's leasehold
interest hereunder or otherwise, but nothing in this Lease shall
be deemed to (i)  assign to Landlord any award or payment on ac-
count of Tenant's Trade Fixtures, or other tangible personal
property, moving expenses and similar claims, if available, to
the extent Tenant shall have a right to make a separate claim
therefor against the condemnor or (ii) impair Tenant's right to
any such award or payment so long as such claim is not based upon

the value of Tenant's leasehold interest, it being agreed, however, that (x) Tenant shall in no event be entitled to any payment for the items specified in clauses (i) and (ii) of this subparagraph (a) if the same shall reduce in any manner the amount of the award which Landlord would have been entitled to receive as a result of such Condemnation had no such payment been made to Tenant and (y) any such amount payable to Tenant shall be subject and subordinate to the amount of the award payable to the holder of the Mortgage, whether or not this Lease shall be prior or subject to the Mortgage.

(b)  If (i) the entire Leased Premises or (ii) any substantial portion of the Leased Premises, the loss of which even after restoration would be substantially and materially adverse to the business operations of Tenant, shall be subject of Taking by a duly constituted authority or agency having jurisdiction, then Tenant shall, not later than sixty days after Landlord gives Tenant notice that Landlord has received a notice of a Taking or Tenant receives notice of a Taking, give notice to Landlord ("Tenant's Termination Notice") of its intention to terminate this Lease on any Basic Rent Payment Date specified in such notice, which date (the "Termination Date") shall be the later of the first Basic Rent Payment Date after the actual date of the Taking or the effective date of the Taking under the Law of the State.  In the event Tenant shall give such notice to Landlord of

-27-

its intention to terminate this Lease on the Termination Date, Tenant shall, as part of such notice, offer to purchase the Leased Premises and the award or if no part of the Leased Premises shall remain, the entire award for the applicable price computed in accordance with the schedule annexed hereto and marked Exhibit E, plus the amount of the prepayment penalty, if any, that Landlord shall be obligated to pay in connection with the first Mortgage, if any, to which the Leased Premises may then be subject.  If Landlord shall not elect to accept Tenant's said offer to purchase, Landlord shall give notice thereof to Tenant within 30 days after the giving of Tenant's Termination Notice. Should said offer to purchase not be accepted by Landlord, this Lease shall be terminated as above provided and the entire award made in the Condemnation proceeding shall be paid to Landlord.

In the event that Landlord shall accept Tenant's offer to purchase within said 30 days after the giving of Tenant's Termination Notice, title shall close and purchase price be paid as hereinafter provided and in such event Tenant shall be entitled to and shall receive any and all awards made in the Condemnation proceeding and Landlord shall assign to Tenant on the Closing Date such award as may be made.

In the event Landlord shall accept Tenant's offer to purchase title shall close thirty (30) days after the Termination Date (the "Closing Date"), at noon at the office of Shushan,

-28-

Meyer, Jackson, McPherson & Herzog in New Orleans, Louisiana, or
at such other time and place as the parties hereto may agree
upon, Tenant shall pay the Purchase Price by transferring immedi-
ately available federal funds to such account or accounts and in
such bank or banks as Landlord shall designate, upon delivery of
a grant deed conveying the Leased Premises and all other required
documents.  The grant deed shall convey a good and clear record
and marketable title, free from encumbrances other than (i) the
items specified in Paragraph 3(a), (ii) liens or encumbrances
created or suffered through or by Tenant failing to observe or
perform any of the terms, covenants or agreements herein provided
to be observed and performed by Tenant, (iii) any installments of
Imposition due and payable after the Closing Date, and (iv) this
Lease.  Such deed shall contain an agreement by grantee to ob-
serve and perform all of the covenants, conditions and restric-
tions contained in any instruments of record which were assumed
by Landlord or deemed to have been assumed by Landlord on its ac-
quisition of title.  The Purchase Price payable as hereinabove
provided shall be charged or credited, as the case may be, on the
Closing Date, to reflect adjustments of Basic Rent paid or pay-
able to the Closing Date, apportioned as of the Closing Date. If
on the Closing Date, there may be any liens or encumbrances which
Landlord is obligated to remove, Landlord shall use reasonable
efforts to remove the same, and the Closing Date shall be

-29-

extended for a reasonable period to permit Landlord to discharge such liens or encumbrances.  If by said extended date such liens or encumbrances shall not be removed and such liens or encumbrances shall be subordinate to a Mortgage, Tenant shall purchase the Mortgage from the holder thereof and the Leased Premises shall be conveyed by Landlord to Tenant subject to the Mortgage and in such event the amount payable by Tenant to the holder of the Mortgage shall be deducted from the Purchase Price payable to Landlord.  Landlord shall not be obligated to discharge any such lien or encumbrance if Tenant's title insurance company shall issue affirmative insurance to the effect that the same shall not be collected from or enforced against the insured premises.  The acceptance of a deed by Tenant shall be deemed to be a full per-formance and discharge of every agreement and obligation on the part of Landlord to be performed  pursuant to the provisions hereof.  Tenant shall pay all conveyance, transfer, sales and like taxes required in connection with the purchase.  If there be any liens or encumbrances against the Property which Landlord is obligated to remove, upon request made a reasonable time before the Closing Date, Tenant shall provide at the Closing separate funds for the foregoing, payable to the holder of such lien or encumbrances.

(c)  In the event of any other Condemnation of any of the Leased Premises which does not result in a termination of

this Lease,-the Term shall nevertheless continue and Basic Rent under this Lease, commencing on the date that title shall vest by reason of such Taking (the "Vesting Date") shall be reduced by an amount which bears the same proportion to the Basic Rent payable immediately prior to such Taking as the rental value of the part of the Leased Premises so taken shall bear to the rental value of the whole of the Leased Premises immediately prior to such Tak- ing.  In the event of a dispute as to the amount of such reduc- tion, the issue shall be determined by arbitration in accordance with the provisions of Paragraph 31 hereof.  Until the reduced Basic Rent is ascertained as aforesaid, Tenant shall pay the Basic Rent at the rate payable immediately prior to the Taking. Forthwith, after the reduced Basic Rent has been ascertained, Landlord shall reimburse Tenant for the difference between the reduced Basic Rent from the Vesting Date, and the actual Basic Rent paid by Tenant from the Vesting Date, or Tenant, at its election, may deduct such difference from the next or any suc- ceeding installment of Basic Rent and Additional Rent.  Subject to the requirements of Paragraph 15, the Net Award of such Con- demnation shall be retained by Landlord and, promptly after such Condemnation, Tenant shall commence and diligently continue to restore the Leased Premises as nearly as possible to their value, condition and character immediately prior to such Condemnation, in accordance with the provisions of this Lease, including but

-31-

not limited-to the provisions of Paragraphs 11(a) and 15 (the "Restoration").

Upon the final payment to Landlord of the Net Award of a Taking which falls within the provisions of this subparagraph (c), Landlord shall make that portion of the Net Award equal to the cost of Restoration, (the "Restoration Award") available to Tenant for Restoration, in accordance with the provisions of Paragraph 15, and the balance remaining shall be the property of Landlord. If Landlord and Tenant can not agree upon the cost of Restoration, the issue shall be determined by arbitration in accordance with the provisions of Paragraph 31 hereof.

In the event of a Requisition of any of the Leased Premises, Landlord shall apply the Net Award of such Requisition, to the extent available, to the installments of Basic Rent, Additional Rent or other sums payable by Tenant hereunder thereafter payable and Tenant shall pay any balance remaining thereafter. Upon the expiration of the Term, any portion of such Net Award which shall not have been previously credited to Tenant on account of the Basic Rent and Additional Rent shall be retained by Landlord.

(d) Except with respect to an award or payment to which Tenant is entitled pursuant to the provisions of Paragraph 13(a), no agreement with any condemnor in settlement of or under threat of any Condemnation shall be made by either Landlord or Tenant without the written consent of the other.

14.  Insurance.

(a)  Tenant shall maintain at its sole cost and expense the following insurance on the Leased Premises:

(i)  Insurance against loss or damage to the Improvements and Equipment under an All Risk Policy, which shall include flood insurance and which may contain such exclusions as may be reasonably acceptable to Landlord, in amounts to prevent Landlord or Tenant from becoming a co-insurer under the applicable policies, and in any event in amounts not less than the actual replacement cost of the Improvements and Equipment (excluding footings and foundations and other parts of the Improvements which are not insurable) as determined from time to time but not more frequently than once in any 12-month period, at Tenant's expense, by the insurer or insurers or by an appraiser approved by Landlord.  Such policies shall contain a replacement cost endorsement and not more than a Fifty Thousand ($50,000) Dollar deductible provision.

(ii)  General public liability insurance against claims for bodily injury, death or property damage occurring on, in or about any of the Leased Premises or the Adjoining Property, which insurance shall be written on a so-called "Occurrence Basis", and shall provide minimum protection with a combined single limit in an amount not less than the greater of (x) Thirty Million ($30,000,000) Dollars (or in such increased limits from

-33-

time to time to reflect declines in the purchasing power of the dollar as Landlord may reasonably request) or (y) the aggregate amount of such insurance carried by Tenant and Guarantor, for bodily injury, death and property damage in any one occurrence. Policies for such insurance shall be for the mutual benefit of Landlord, Tenant and any Lender.

(iii)  Worker's compensation insurance covering all persons employed in connection with any work done on or about any of the Leased Premises for which claims for death or bodily injury could be asserted against Landlord, Tenant or the Leased Premises.

(iv)  During periods of war or national emergency, war risk insurance in an amount not less than the actual replacement cost of the Improvements and Equipment (excluding footings and foundations and other parts of the Improvements which are not insurable), when and to the extent obtainable from the United States Government or an agency thereof.

(v)  Insurance against loss or damage from explosion of any steam or pressure boilers or similar apparatus located in or about the Improvements in an amount not less than the actual replacement cost of the Improvements and Equipment (excluding footings and foundations and other parts of the Improvements which are not insurable);

(vi)  Such additional and/or other insurance with respect to the Improvements and in such amounts as at the time is customarily carried with respect to improvements similar in character, location and use and occupancy to the Improvements then comprising the Leased Premises or as may be required by the holder of the Mortgage with respect to the Improvements;

(b)  During such time as Tenant named herein holds the Tenant's interest in this Lease and is not in default hereunder, and, as determined in accordance with generally accepted accounting principles consistently applied, the Tangible Net Worth of Tenant or Guarantor shall be not less than Two Hundred Million ($200,000,000) Dollars and the Working Capital of Tenant or Guarantor shall be not less than One Hundred Million ($100,000,000) Dollars:

(i)  The insurance policies referred to in 14(a)(i) and 14(a)(v) may contain a deductible provision to the extent of Five Hundred Thousand ($500,000) Dollars,

(ii)  Tenant may self-insure the coverages referred to in 14(a)(ii) to the extent of the first Two Million ($2,000,000) Dollars thereof, and

-35-

(iii) Tenant may self-insure the coverage referred to in 14(a)(iii) to the extent of the first One Million ($1,000,000) Dollars thereof,

provided that the self insurance program referred to in subdivisions (i), (ii) and (iii) of this section (b) does not violate any Legal Requirements. Tenant agrees to forward to Landlord, within 120 days after the end of each fiscal year of Guarantor, a copy of the annual financial statement of Guarantor, as certified by an independent certified public accountant, showing the Tangible Net Worth and Working Capital of Guarantor.

(c)  The insurance required by Paragraph 14(a) shall be written by companies of recognized financial standing which are approved by Landlord and are authorized to do an insurance business in the State. Sums due from Tenant in lieu of insurance proceeds because of such self-insurance programs or deductible provisions shall be treated as insurance proceeds for all purposes under this Lease.  The insurance policies (i) shall be for a term of not less than one year, (ii) shall be in amounts sufficient at all times to satisfy any coinsurance requirements thereof, and (iii) shall (except for the worker's compensation insurance referred to in Paragraph 14(a)(iii) hereof) name Landlord, Tenant and any Lender as insured parties, as their respective interests may appear. If said insurance or any part thereof shall expire,

be withdrawn, become void by breach of any condition thereof by Tenant or become void or unsafe by reason of the failure or impairment of the capital of any insurer, or if for any other reasonable cause said insurance shall become unsatisfactory to Landlord, Tenant shall immediately obtain new or additional insurance satisfactory to Landlord.

(d) Each insurance policy referred to in clauses (i), (ii), (iv) and (v) of Paragraph 14(a) shall contain standard non-contributory mortagee clauses in favor of any Lender. Each policy shall provide that it may not be cancelled except after 30 days prior notice to Landlord and any Lender. Each policy shall also provide that any loss otherwise payable thereunder shall be payable notwithstanding (i) any act or omission of Landlord or Tenant which might, absent such provision, result in a forefeiture of all or a part of such insurance payment, (ii) the occupation or use of any of the Leased Premises for purposes more hazardous than permitted by the provisions of such policy, (iii) any foreclosure or other action or proceeding taken by any Lender pursuant to any provision of the Mortgage upon the happening of an event of default therein, or (iv) any change in title or ownership of any of the Leased Premises.

(e) Tenant shall pay as they become due all premiums for the insurance required by this Paragraph 14, shall renew or replace each policy, and shall deliver to Landlord and Lender,

-37-

the existing policy and such renewal or replacement policy and evidence of the payment of the full premium therefor at least twenty days prior to the expiration date of each policy and if any such policy be delivered to Lender, Tenant shall deliver to Landlord a certificate of such policy. In the event of Tenant's failure to comply with any of the foregoing requirements of this Paragraph 14, Landlord shall be entitled to procure such insurance. Any sums expended by Landlord in procuring such insurance shall be Additional Rent and shall be repaid by Tenant, together with interest thereon at the Default Rate, from the time of payment by Landlord until fully paid by Tenant immediately upon written demand therefor by Landlord.

(f) Anything in this Paragraph 14 to the contrary notwithstanding, any insurance which Tenant is required to obtain pursuant to Paragraph 14(a) may be the subject of self-insurance as permitted herein or be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant, provided that such "blanket" policy or policies otherwise comply with the provisions of this Paragraph 14. In the event any such insurance is carried under a blanket policy, Tenant shall deliver to Landlord and Lender a certified copy of those provisions of the blanket policy that pertain to the Leased Premises to evidence the issuance and effectiveness of the policy, the amount and character of the coverage with respect to the Leased Premises

-38-

and the presence in the policy of provisions of the character required in the above sections of this Paragraph 14.

(g) In the event of any casualty loss, Tenant shall give Landlord immediate notice thereof. Landlord is hereby authorized to adjust, collect and compromise, in its name or in Tenant's name, all claims under any of the insurance policies required by this Paragraph 14 (except the public liability and worker's compensation insurance) and to execute and deliver on behalf of Tenant all necessary proofs of loss, receipts, vouchers and releases required by the insurers. Tenant agrees to sign, upon request of Landlord, all such proofs of loss, receipts, vouchers and releases. However, if Landlord so elects, Tenant shall adjust, collect and compromise any and all such claims, and Landlord shall have the right to join with Tenant therein. Any adjustment, settlement or compromise of any such claim shall be subject to the prior written approval of Landlord and any Lender, and Landlord and any Lender shall have the right to prosecute or contest, or to require Tenant to prosecute or contest, any such claim, adjustment, settlement or compromise. All proceeds of any insurance required under clauses (i), (iv) and (v) of Paragraph 14(a) shall be payable to a trustee selected by Landlord and Tenant and reasonably satisfactory to Lender. If the Leased Premises shall be covered by Mortgage, Lender, if it so desires, shall be the trustee. Each insurer is hereby authorized and

-39-

directed to make payment under said policies, including return of unearned premiums, directly to such trustee instead of to Landlord and Tenant jointly; and Tenant hereby appoints such trustee as Tenant's attorney-in-fact to endorse any draft therefor.

In the event of any casualty (whether or not insured against) resulting in damage to the Leased Premises or any part thereof, the Term shall nevertheless continue and there shall be no abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder, except as hereinafter in Paragraph 14(h) specifically provided. The Net Proceeds of such casualty shall be retained by the above-mentioned trustee and, promptly after such casualty, Tenant, as required in Paragraph 11(a), shall commence and diligently continue to perform the Restoration to the Leased Premises Upon the final payment to the trustee of such Net Proceeds, the trustee shall make the Net Proceeds available to Tenant for restoration, in accordance with the provisions of Paragrah 15(a). Tenant shall, whether or not the Net Proceeds are sufficient for the purpose, promptly repair or replace the Improvements and Equipment in accordance with the provisions of Paragraph 11(a) and the Net Proceeds of such loss shall thereupon be payable to Tenant, subject to the provisions of Paragraph 15 hereof.

(h) If the Leased Premises are damaged to the extent of 50% or more of the value thereof within such time as less than

three (3) years remain in any Term, Tenant shall have no obliga-
tion to restore the Leased Premises if (i) it shall give notice
to Landlord of its intent not to so restore not later than ninety
(90) days after such casualty, and (ii) Tenant is not then in de-
fault in the observance or performance of any of the provisions
of this Lease on the part of Tenant to be observed or performed,
and in such event all Net Proceeds payable in connection with
such casualty, including the hereinafter defined "Tenant Insur-
ance Payment". shall be delivered to Landlord, and the Term of
this Lease shall terminate upon such payment and payment of all
sums otherwise due and payable by Tenant hereunder through the
Basic Rent Payment Date stated in Tenant's notice (the "Casualty
Termination Date").  In the event that any damage or destruction
shall be subject to the deductible and/or self insurance provi-
sions provided for in 14(a)(i), 14(b)(i), 14(b)(ii) and/or
14(b)(iii), Tenant shall pay to Landlord the amount of the pro-
ceeds that would have been payable had the policy or policies not
contained such deductible and/or self insurance provision (the
"Tenant Insurance Payment").  In the event that Landlord shall
dispute whether the damage is so extensive as to vest the afore-
said option to terminate this Lease, such dispute shall be deter-
mined by arbitration in accordance with the provisions of Para-
graph 31 hereof.  Any notice given by Tenant to Landlord under
this Paragraph 14(h) shall be of no force or effect if (x) any

Event of Default has occurred or (y) the cost of restoration of such damage or destruction exceeds the aggregate of the Net Proceeds payable to Landlord under insurance policies required to be carried by Tenant under the provisions of this Paragraph 14, and Tenant Insurance Payment.

Notwithstanding anything to the contrary hereinabove contained, if, prior to the Casualty Termination Date, Landlord or the trustee shall not have received the full amount of Net Proceeds and Tenant Insurance Payment payable by reason of the Casualty, the Casualty Termination Date shall automatically be extended to the first Basic Rent Payment Date after receipt by Landlord of the full amount of the Net Proceeds and Tenant Insurance Payment. Such extension shall occur regardless of the reason for the failure of either trustee or Landlord to receive the full amount of the Net Proceeds and Tenant Insurance Payment prior to the originally stated Casualty Termination Date and Landlord shall have the right to contest the amount of any Net Proceeds and Tenant Insurance Payment.

15. <u>Restoration</u>.

(a) In the event that Net Proceeds or a Restoration Award are made available by Landlord or Tenant for the Restoration of any of the Leased Premises, the trustee shall disburse such proceeds or award only in accordance with the following conditions:

-42-

(i)  Prior to commencement of the Restoration, the architects, contracts, contractors, plans and specifications for the Restoration shall have been approved by Landlord, which approval shall not be unreasonably withheld.

(ii)  At the time of any disbursement, no Event of Default shall exist and no mechanics' or materialmen's liens shall have been filed and remain undischarged.

(iii)  Disbursements shall be made from time  to time in an amount not exceeding the cost of the work completed since the last disbursement upon receipt of (1) satisfactory evidence, including architects' certificates of the stage of completion, of the estimated cost of completion and of performance of the work to date in a good and workmanlike manner in accordance with the contracts, plans and specifications, (2) waivers of liens, (3) contractors' and subcontractors' sworn statements, (4) a satisfactory bring down of title insurance, and (5) other evidence of cost and payment so that Landlord can verify that the amounts disbursed from time to time are represented by work that is completed in place and free and clear of mechanics' lien claims.

(iv)  Each request for disbursement shall be accompanied by a certificate of Tenant, signed by the President or any Vice President of Tenant, describing the work for which payment is requested, stating the cost incurred in connection

-43-

therewith and stating that Tenant has not previously received payment for such work and the certificate to be delivered by Tenant upon completion of the work shall, in addition, state that the work has been completed and complies with the applicable requirements of this Lease.

(v)   The trustee may retain ten percent of the restoration fund until the restoration is fully completed.

(vi)   The restoration fund shall be kept in a separate interest-bearing account by the trustee.

(vii)   At all times the undisbursed balance of the restoration fund held by trustee shall be not less than the cost of completing the Restoration, free and clear of all liens.

In addition, prior to commencement of Restoration and at any time during Restoration, if the estimated cost of Restoration, as reasonably determined by Landlord, exceeds the amount of the Net Proceeds or the Restoration Award available for such Restoration, the amount of such excess shall be paid by Tenant to the trustee to be added to the Restoration fund.  Any sum in the Restoration fund added by Tenant which remains in the Restoration fund upon the completion of Restoration shall be returned to Tenant.  For purposes of determining the source of funds with respect to the disposition of funds remaining after the completion of Restoration, the Net Proceeds or the Restoration Award shall be deemed to be disbursed prior to any amount added by Tenant.

-44-

(b)  In the event that there are funds not added by Tenant remaining undisbursed upon completion of restoration and full payment therefor (the "Remaining Sum") then such sum shall be credited to Basic and Additional Rent subsequently accruing hereunder.

16.  <u>Subordination to Financing</u>.

(a)  Tenant agrees that this Lease shall at all times be subject and subordinate to the lien of any Mortgage, and Tenant agrees, upon demand, without cost, to execute instruments as may be required to further effectuate or confirm such subordination.  So long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this Lease, Tenant's tenancy shall not be disturbed, nor shall this Lease be affected by any default under such Mortgage, and in the event of a foreclosure or other enforcement of any such Mortgage, or sale in lieu thereof, the purchaser at such foreclosure sale shall be bound to Tenant for the term of this Lease and any extensions thereof, the rights of Tenant hereunder shall expressly survive, and this Lease shall in all respects continue in full force and effect so long as Tenant fully performs all of its obligations hereunder.  Tenant shall not be named as a party defendant in any such foreclosure suit, except as may be required by law.

(b)   Notwithstanding the provisions of subdivision (a) of this Paragraph 16, the holder of the Mortgage to which this Lease is subject and subordinate, as provided in said sub-division (a), shall have the right, at its sole option, at any time, to subordinate and subject the Mortgage, in whole or in part, to this Lease by recording a unilateral declaration to such effect.

(c)   At any time prior to the expiration of the Term, Tenant agrees, at the election and upon demand of any owner of the Leased Premises, or of the holder of the Mortgage on the Leased Premises, to attorn, from time to time, to any such owner or holder, upon the then executory terms and conditions of this Lease, for the remainder of the term originally demised in this Lease and for any renewal term, provided that such owner or hold-er as the case may be, shall then be entitled to possession of the Leased Premises subject to the provisions of this Lease.  The provisions of this subdivision (c) shall enure to the benefit of any such owner or holder, shall apply notwithstanding that, as a matter of law, this Lease may terminate upon the foreclosure of the Mortgage, shall be self-operative upon any such demand, and no further instrument shall be required to give effect to said provisions.  Tenant however, upon demand of any such owner or holder agrees to execute, from time to time, instruments in con-firmation of the foregoing provisions of this subdivision (c),

-46-

satisfactory to any such owner or holder acknowledging such at-
tornment and setting forth the terms and conditions of its tenan-
cy.  Nothing contained in this subdivision (c) shall be construed
to impair any right otherwise exercisable by any such owner or
holder.

     (d)  Tenant agrees that, if requested by Landlord, Ten-
ant shall, without charge, enter into (i) a Subordination, Non-
Disturbance and Attornment Agreement reasonably requested by
Lender and (ii) an agreement with any holder of the Mortgage
whereby Tenant shall agree for the benefit of the holder of the
Mortgage that Tenant will not, without in each case the prior
written consent of such holder, (i) amend, modify, cancel or sur-
render the term of this Lease except as expressly permitted by
the provisions of this Lease, or enter into any agreement with
Landlord so to do, or (ii) pay any installment of Basic Rent more
than one (1) month in advance of the due date thereof or other-
wise than in the manner provided for in this Lease.

     (e)  If in connection with Landlord obtaining financ-
ing, a prospective Lender shall require modification of the pro-
visions of this Lease, Tenant agrees that it will not
unreasonably withhold its consent to such modifications and will
enter into an appropriate modification agreement, provided that
the provisions thereof do not materially increase or adversely
affect the obligations of Tenant hereunder.  If Tenant shall

-47-

withhold its consent thereto and Landlord deems Tenant's with-
holding of such consent to be unreasonable, the parties hereto
agree to submit the issue to arbitration in accordance with the
provisions of Paragraph 31 hereof.

(f)  Tenant agrees that it will give notice to any
holder of a first Mortgage encumbering the Leased Premises, pro-
vided that Tenant has been notified in writing of the name and
address of such Mortgage holder, of any defaults of the Landlord
or other circumstances which would entitle Tenant to terminate
this Lease or abate the rental payable hereunder, specifying the
nature of the default by Landlord, and thereupon the holder of
the Mortgage shall have the right, but not the obligation, to
cure any such default by Landlord, and Tenant will not terminate
this Lease or abate the rental payable hereunder by reason of
such default unless and until it has afforded the Mortgage holder
thirty (30) days after such notice to cure such default and a
reasonable period of time in addition thereto if circumstances
are such that said default cannot be reasonably cured within such
30-day period.  No such Lender shall, upon assuming title to the
Leased Premises, be liable for any act or omission of any prior
landlord (including Landlord), be subject to any offsets or de-
fenses which Tenant may have against any prior landlord, be bound
by any rent or additional rent paid for more than the then cur-
rent period to any prior landlord, or be bound by any agreement

-48-

or modification of this Lease made without such Lender's consent after Tenant has been given written notice of such Lender's interest, in such a way as to reduce rent, accelerate rent payments, shorten the original term or change any renewal option. Nothing herein shall be construed to be in conflict with the provisions of Paragraph 7 hereof.

17. <u>Assignment, Subleasing and Vacating</u>. The Leased Premises may be vacated or may be used by Tenant or assigned or sublet in whole or in part for use as a retail food store, commonly referred to as a supermarket, or with the consent of Landlord not to be unreasonably withheld may be assigned or sublet in whole or in part for the conduct of any other retail business not in violation of any Legal Requirements or Insurance Requirements. In the event of any vacating, assignment or subleasing as herein permitted, (i) then from and after the effective date thereof, the annual Basic Rent shall be increased by an amount equal to the average Percentge Rent payable for the two full Lease Years preceding the effective date of such assignment or subletting and, upon demand of Landlord, Tenant agrees to execute an appropriate instrument which Landlord may reasonably request to evidence such increase, and (ii) Tenant shall continue to remain liable and responsible for the payment of the Basic Rent as increased and Additional Rent and the performance of all its other obligations under this Lease, including but not limited to its obligation to pay Percentage Rent.

-49-

Each sublease of any of the Leased Premises shall be subject and subordinate to the provisions of this Lease. No assignment or sublease made as permitted by this Paragraph 17 or otherwise, shall affect or reduce any of the obligations of Tenant hereunder, and all such obligations shall continue in full force and effect as obligations of a principal and not as obligations of a guarantor, as if no assignment or sublease had been made. No assignment or sublease shall impose any obligations on Landlord under this Lease. No assignment or sublease shall be valid unless, in the case of an assignment, Tenant shall, within ten days after the execution and delivery of any such assignment, deliver to Landlord (i) a duplicate original of such assignment in recordable form and (ii) an agreement executed and acknowledged by the assignee in recordable form wherein the assignee shall agree to assume and agree to observe and perform all of the terms and provisions of this Lease on the part of the Tenant to be observed and performed, and, in the case of a sublease, Tenant shall, within ten days after the execution and delivery of such sublease, deliver to Landlord a duplicate original of such sublease.

Upon the occurrence of an Event of Default under this Lease, Landlord shall have the right to collect and enjoy all rents and other sums of money payable under any sublease of any of the Leased Premises, and Tenant hereby irrevocably and unconditionally assigns such rents and money to Landlord, which

-50-

assignment may be exercised upon and after (but not before) the occurrence of an Event of Default. Tenant shall not mortgage or pledge this Lease, and any such mortgage or pledge made in violation of this Paragraph shall be void.

18. <u>Permitted Contests</u>. After prior written notice to Landlord, Tenant shall not be required to (i) pay any Imposition, (ii) comply with any Legal Requirement, (iii) discharge or remove any lien referred to in Paragraphs 9 or 12, or (iv) take any action with respect to any encroachment, violation, hindrance, obstruction or impairment referred to in Paragraph 11(b) so long as Tenant shall contest, in good faith and at its expense, the existence, the amount or the validity thereof, the amount of the damages caused thereby, or the extent of its or Landlord's liability therefor, by appropriate proceedings which shall operate during the pendency thereof to prevent (a) the collection of, or other realization upon, the Imposition or lien so contested, (b) the sale, forfeiture or loss of any of the Leased Premises, any Basic Rent or any Additional Rent to satisfy the same or to pay any damages caused by the violation of any such Legal Requirement or by any such encroachment, violation, hindrance, obstruction or impairment, (c) any interference with the use or occupancy of any of the Leased Premises, (d) any interference with the payment of any Basic Rent or any Additional Rent, (e) the cancellation of any fire or other insurance policy, and (f) Landlord would not be

-51-

in danger of civil or criminal liability or sanctions for failure
so to pay or perform.  Tenant shall provide Landlord security
satisfactory in the sole opinion of Landlord assuring the pay-
ment, compliance, discharge, removal or other action, including
all costs, attorneys' fees, interest and penalties, in the event
that the contest is unsuccessful.  While any such proceedings are
pending and the required security is held by Landlord, Landlord
shall not have the right to pay, remove or cause to be discharged
the Imposition or lien thereby being contested unless any one or
more of the conditions in subdivisions (a) through (f) shall not
be prevented  during the pendency of the contest.  Tenant further
agrees that each such contest shall be promptly and diligently
prosecuted to a final conclusion, except that Tenant shall, so
long as all of the conditions of the first sentence of this Para-
graph are at all times complied with, have the right to attempt
to settle or compromise such contest through negotiations. Tenant
shall pay and save Landlord harmless against any and all losses,
judgments, decrees and costs (including all attorneys' fees and
expenses) in connection with any such contest and shall, promptly
after the final determination of such contest, fully pay and dis-
charge the amounts which shall be levied, assessed, charged or
imposed or be determined to be payable therein or in connection
therewith, together with all penalties, fines, interest, costs
and expenses thereof or in connection therewith, and perform all

acts the performance of which shall be ordered or decreed as a result thereof.

19.  <u>Conditional Limitations; Default Provision.</u>

(a)  The occurrence of any one or more of the following shall constitute an Event of Default under this Lease:  (i) a failure by Tenant to make (regardless of the pendency of any bankruptcy, reorganization, receivership, insolvency or other proceedings, in law, in equity or before any administrative tribunal, which had or might have the effect of preventing Tenant from complying with the provisions of this Lease) any payment of Basic Rent, Additional Rent or other sum herein required to be paid by Tenant; (ii) a failure by Tenant to duly perform and observe, or a violation or breach of any other provision hereof; (iii) any representation or warranty made by Tenant herein which proves at any time to be incorrect, in any material respect; (iv) Tenant or Guarantor shall  (a) voluntarily be adjudicated a bankrupt or insolvent, (b) seek or consent to the appointment of a receiver or trustee for itself or for any of the Leased Premises, (c) file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, (d) make a general assignment for the benefit of creditors, or (e) be unable to pay its debts as they mature; (v) a court shall enter an order, judgment or decree appointing, with the consent of Tenant or Guarantor, as the case may be, a

-53-

receiver or trustee for it or for any of the Leased Premises or approving a petition filed against Tenant or Guarantor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and such order, judgment or decree shall remain in force, undischarged or unstayed, sixty days after it is entered; (vi) subject to the provisions of Paragraph 17, the Leased Premises shall have been vacated or abandoned; (vii) Tenant or Guarantor shall be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution; or (viii) the estate or interest of Tenant in any of the Leased Premises shall be levied upon or attached in any proceeding and such estate or interest is about to be sold or transferred or such process shall not be vacated or discharged within sixty days after such levy or attachment.

(b)  If an Event of Default shall have occurred, Landlord shall have the right at its option, then or at any time thereafter, to do any one or more of the following without demand upon or notice to Tenant:

(1)  Landlord may give Tenant notice of Landlord's intention to terminate this Lease on a date specified in such notice.  Upon the date therein specified, the Term and the estate hereby granted and all rights of Tenant hereunder shall expire and terminate as if such date were the date hereinbefore fixed for the expiration of the Term, but Tenant shall remain liable for all

its obligations hereunder through such date, including its lia-
bility for Basic Rent and Additional Rent as hereinafter provid-
ed.

(2) Landlord may, whether or not the Term of this Lease
shall have been terminated pursuant to clause (1) above, (a) give
Tenant notice to surrender any of the Leased Premises to Landlord
immediately or on a date specified in such notice, at which time
Tenant shall surrender and deliver possession of the Leased Prem-
ises to Landlord or (b) reenter and repossess any of the Leased
Premises by force, summary proceedings, ejectment or any other
means or procedure.  Upon or at any time after taking possession
of any of the Leased Premises, Landlord may remove any persons or
property therefrom.  Landlord shall be under no liability for or
by reason of any such entry, repossession or removal.  No such
entry or repossession shall be construed as an election by Land-
lord to terminate this Lease unless Landlord gives a written no-
tice of such intention to Tenant pursuant to clause (1) above.

(3) After repossession of any of the Leased Premises pursu-
ant to clause (2) above, whether or not this Lease shall have
been terminated pursuant to clause (1) above, Landlord shall have
the right (but shall be under no obligation) to relet the Leased
Premises or any part thereof to such tenant or tenants for such
term or terms (which may be greater or less than the period which
would otherwise have constituted the balance of the Term) for

-55-

such rent, on such conditions (which may include concessions or free rent) and for such uses as Landlord, in its absolute discretion, may determine; and Landlord may collect and receive any rents payable by reason of such reletting. Landlord shall have no duty to mitigate damages and shall not be responsible or liable for any failure to relet the Leased Premises or any part thereof or for any failure to collect any rent due upon any such reletting. Landlord may make such Alterations as Landlord in its sole discretion may deem advisable. Tenant agrees to pay Landlord, as Additional Rent, immediately upon demand, all reasonable expenses incurred by Landlord in obtaining possession, in performing Alterations and in reletting any of the Leased Premises, including fees and commissions of attorneys, architects, agents and brokers.

(4) Landlord may exercise any other right or remedy now or hereafter existing by law or in equity.

(c) No expiration or termination of this Lease pursuant to Paragraph 19(b)(1) or any other provision of this Lease, by operation of law, repossession of the Leased Premises pursuant to Paragraph 19(b)(2) or otherwise, or reletting of any of the Leased Premises pursuant to Paragraph 19(b)(3), shall relieve Tenant of any of its liabilities and obligations hereunder, including the liability for Basic and Additional Rent, all of which shall survive such expiration, termination, repossession or reletting.

(d)  In the event of any expiration or termination of this Lease or repossession of any of the Leased Premises by reason of the occurrence of an Event of Default, Tenant shall pay to Landlord Basic Rent, Additional Rent and all other sums required to be paid by Tenant to and including the date of such expiration, termination or repossession and, thereafter, Tenant shall, until the end of what would have been the Term in the absence of such expiration, termination or repossession, and whether or not any of the Leased Premises shall have been relet, be liable to Landlord for and shall pay to Landlord as liquidated and agreed current damages (i) Basic Rent, Additional Rent and all other sums which would be payable under this Lease by Tenant in the absence of such expiration, termination or repossession, less (ii) the net proceeds, if any, of any reletting pursuant to Paragraph 19(b)(3), after deducting from such proceeds all of Landlord's expenses in connection with such reletting (including all repossession costs, brokerage commissions, legal expenses, attorneys' fees, employees' expenses, costs of Alterations and expenses of preparation for reletting).  Tenant hereby agrees to be and remain liable for all sums aforesaid, and Landlord may recover such damages from Tenant and institute and maintain successive actions or legal proceedings against Tenant for the recovery of such damages.  Nothing herein contained shall be deemed to require Landlord to wait to begin such action or other legal

-57-

proceedings until the date when the Term would have expired by
limitation had there been no such Event of Default.

(e)  Before an Event of Default shall exist under this
Paragraph 19 or any other Paragraph hereof by reason of an Event
of Default under subparagraph (a) of this Paragraph 19, Landlord
shall have given Tenant notice of any failure by Tenant or occur-
rence of any event specified in said subparagraph (a) (any such
failure or occurrence being referred to in this Lease as a "De-
fault") and Tenant shall have failed to cure the Default within
the applicable grace period stated below.  If the cure consists
of payment of money or furnishing of insurance coverages required
in Paragraph 14, the applicable grace period shall be five days
from the date on which the notice is given.  If the cure consists
of something other than payment of money (except the failure to
provide insurance), the applicable grace period shall be thirty
days from the date on which the notice is given, or such longer
time as reasonably necessary to cure the Default, provided that
Tenant shall commence to cure the Default within said thirty day
period and actively, diligently and in good faith proceed with
continued curing of the Default until it shall be fully cured.

20.  <u>Additional Rights of Landlord</u>.

(a)  No right or remedy herein conferred upon or re-
served to Landlord is intended to be exclusive of any other right
or remedy and each and every right and remedy shall be cumulative

-58-

and in addition to any other right or remedy contained in this Lease.  No delay or failure by Landlord to enforce its rights hereunder shall be construed as a waiver, modification or relinquishment thereof.  In addition to the other remedies provided in this Lease, Landlord shall be entitled, to the extent permitted by applicable law, to injunctive relief in case of the violation or attempted or threatened violation of any of the provisions of this Lease, or to specific performance of any of the provisions of this Lease.

(b)  Tenant hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have under any present or future law to redeem any of the Leased Premises or to have a continuance of this Lease after termination of this Lease or of Tenant's right of occupancy or possession pursuant to any court order or any provision hereof, and (ii) the benefits of any present or future law which exempts property from liability for debt or for distress for rent.

(c)  Tenant shall pay to Landlord as Additional Rent all the expenses incurred by Landlord in connection with any Default or Event of Default or the exercise of any remedy by reason of a Default or Event of Default, including attorneys' fees and expenses.  If Landlord shall be made a party to any litigation commenced against Tenant or any litigation pertaining to this

-59-

Lease or any of the Leased Premises, at the option of Landlord, Tenant, at its expense, shall provide Landlord with counsel approved by Landlord and shall pay all costs incurred or paid by Landlord in connection with such litigation.

21. <u>Notices</u>. All notices, demands, requests, consents, approvals, offers, statements and other instruments or communications required or permitted to be given pursuant to the provisions of this Lease shall be in writing and shall be deemed to have been given for all purposes when deposited in the United States mail, by registered or certified mail, return receipt requested, postage prepaid, addressed to the other party at its address stated above. For the purposes of this Paragraph, any party may substitute its address by giving fifteen days' notice to the other party in the manner provided above.

22. <u>Estoppel Certificates</u>. Landlord and Tenant shall, at any time and from time to time, upon not less than twenty days' prior written request by the other, execute, acknowledge and deliver to the other a statement in writing, executed by Landlord or Tenant or if other than an individual by a President, Vice President or authorized general partner, principal or agent certifying (i) that this Lease is unmodified and in full effect (or, if there have been modifications, that this Lease is in full effect as modified, setting forth such modifications), (ii) the dates to which Basic Rent, payable hereunder has been paid,

-60-

(iii) that to the knowledge of the signer of such certificate no Default by either Landlord or Tenant exists hereunder or specifying each such Default of which the signer may have knowledge; and (iv) with respect to a certificate signed on behalf of Tenant, that to the knowledge of the signer of such certificate, there are no proceedings pending or threatened against Tenant before or by any court or administrative agency which if adversely decided would materially and adversely affect the financial condition and operations of Tenant or if any such proceedings are pending or threatened to said signer's knowledge, specifying and describing the same.  It is intended that any such statements may be relied upon by Lender, the recipient of such statements or their assignees or by any prospective purchaser of the Leased Premises.

23.  <u>Surrender and Holding Over</u>.  Upon the expiration or earlier termination of this Lease, Tenant shall peaceably leave and surrender the Leased Premises (except as to any portion thereof with respect to which this Lease has previously terminated) to Landlord in the same condition in which the Leased Premises were originally received from Landlord at the commencement of this Lease, except as to any repair or Alteration as permitted or required by any provision of this Lease, and except for ordinary wear and tear.  Tenant shall remove from the Leased Premises on or prior to such expiration or earlier termination

Tenant's Trade Fixtures and Personal Property which are owned by Tenant or third parties other than Landlord, and Tenant at its expense shall, on or prior to such expiration or earlier Termination, repair any damage caused by such removal. Tenant's Trade Fixtures and Personal Property not so removed at the end of the Term or within thirty days after the earlier termination of the Term for any reason whatsoever shall become the property of Landlord, and Landlord may thereafter cause such property to be removed from the Leased Premises. The cost of removing and disposing of such property and repairing any damage to any of the Leased Premises caused by such removal shall be borne by Tenant. Landlord shall not in any manner or to any extent be obligated to reimburse Tenant for any property which becomes the property of Landlord as a result of such expiration or earlier termination. Tenant shall not commit waste of the Leased Premises.

Any holding over by Tenant of the Leased Premises after the expiration or earlier termination of the term of this Lease or any extensions thereof, with the consent of Landlord, shall operate and be construed as tenancy from month to month only, at double the Basic Rent and Percentage Rent (as defined in Exhibit "D") reserved herein and upon the same terms and conditions as contained in this Lease. Notwithstanding the foregoing, any holding over shall entitle Landlord, in addition to collecting double rentals, to exercise all rights and remedies

-62-

provided by law or in equity, including the remedies of Paragraph 19(b).

24. <u>Risk of Loss</u>. The risk of loss or of decrease in the enjoyment and beneficial use of any of the Leased Premises in consequence of the damage or destruction thereof by fire, the elements, casualties, thefts, riots, wars or otherwise, or in consequence of foreclosure, attachments, levies or executions (other than by Landlord and those claiming from, through or under Landlord) is assumed by Tenant, and Landlord shall in no event be answerable or accountable therefor. Except as otherwise specifically provided in this Lease, none of the events mentioned in this Paragraph shall entitle Tenant to any abatement of Basic Rent or Additional Rent or otherwise affect any of the obligations of Tenant hereunder.

25. <u>No Merger of Title</u>. There shall be no merger of this Lease nor of the leasehold estate created by this Lease with the fee estate in or ownership of any of the Leased Premises by reason of the fact that the same person, corporation, firm or other entity may acquire or hold or own, directly or indirectly, (a) this Lease or the leasehold estate created by this Lease or any interest in this Lease or in such leasehold estate and (b) the fee estate or ownership of any of the Leased Premises or any interest in such fee estate or ownership. No such merger shall occur unless and until all persons, corporations, firms and

-63-

other entities having any interest in (i) this Lease or the leasehold estate created by this Lease and (ii) the fee estate in or ownership of the Leased Premises or any part thereof sought to be merged shall join in a written instrument effecting such merger and shall duly record the same.

26.  <u>Definition of Landlord and NonRecourse</u>.  Anything contained herein to the contrary notwithstanding, any claim based on or in respect of any liability of Landlord under this Lease shall be enforced only against the Leased Premises and not against any other assets, properties or funds of Landlord or any director, officer, general partner, limited partner, employee or agent of Landlord or any legal representative, heir, estate, successor or assign of any thereof.

The term "Landlord" as used in this Lease so far as covenants or obligations on the part of Landlord are concerned, shall be limited to mean and include only the owner or owners of the Leased Premises or holder of the Mortgage in possession at the time in question of the Leased Premises and in the event of any transfer or transfers of the title of the Leased Premises, the Landlord herein named (and in case of any subsequent transfers or conveyances, the then grantor) shall be automatically freed and relieved from and after the date of such transfer and conveyance of all personal liability as respects the performance of any covenants or obligations on the part of Landlord contained in this Lease thereafter to be performed.

-64-

27. **Expansion**. It is understood that Tenant may at future times during the Term of this Lease or an extension thereof wish to enlarge the Improvements by contructing thereto one or more additions and that such enlarging may require purchase of space for additional parking. Tenant shall have the sole responsibility for negotiating and providing for the purchase, renovation, and construction of such additional building and of parking lot area as necessary for its expansion plans if the adjacent property is not owned by Landlord. If Tenant is able to obtain agreements for the purchase of such additional buildings and improvements and contracts for the renovation and enlargement thereof at a cost satisfactory to it, Tenant may then request that Landlord purchase such additional buildings and improvements and incorporate the same into this Lease upon terms and conditions negotiated by the parties.

In the event the parties are unable to agree, Tenant shall not have the right to cancel this Lease but shall have the right at its own expense to construct the building addition at its own expense and to make such changes as necessary as to make the entire enlarged building suitable for use and occupancy by it in the conduct of its business. At end of the Term of this Lease, title to the additional improvements and land as necessary to meet any Legal Requirements shall pass to Landlord and Tenant shall execute additional documents as necessary to complete such transfer.

All such work for the enlargement and related work shall be carried out in accordance with plans and specifications therefor to be approved by Landlord, with Landlord's consent thereto not to be unreasonably withheld and with the work to be carried out in like structural quality and in architectural harmony with the existing store building, in accordance with good construction practices and in a good workmanlike fashion and in accordance with all of the provisions of this Lease, including but not limited to the provisions of Paragrah 12 hereof.

28.  _Entry by Landlord_.  Landlord and its authorized representatives shall have the right to enter the Leased Premises at all reasonable times (a) for the purpose of inspecting the same or for the purpose of doing any work under Paragraph 11(c), and may take all such action thereon as may be necessary or appropriate for any such purpose (but nothing contained in this Lease or otherwise shall create or imply any duty upon the part of Landlord to make any such inspection or do any such work), and (b) for the purpose of showing the Leased Premises to prospective purchasers and mortgagees and, at any time within 12 months prior to the expiration of the term of this Lease for the purpose of showing the same to prospective tenants.  No such entry shall constitute an eviction of Tenant.

29.  <u>Annual Statements</u>.  If required by the holder of the
Mortgage, Tenant shall, upon demand of Landlord, furnish to Land-
lord, in duplicate, an annual statement, certified by the chief
financial officer of Tenant, itemizing the income and expenses of
the Property.

30.  <u>No Usury</u>.  The intention of the parties being to con-
form strictly to the usury laws now in force in the State, when-
ever any provision herein provides for payment by Tenant to Land-
lord of interest at a rate in excess of the legal rate permitted
to be charged, such rate herein provided to be paid shall be
deemed reduced to such legal rate.

31.  <u>Arbitration</u>.  Whenever in this Lease it is provided
that any question shall be determined by arbitration, such ques-
tion shall be settled and finally determined by arbitration in
the City of New Orleans, Louisiana in accordance with the rules
then obtaining of the American Arbitration Association or its
successor and the judgment upon the award rendered may be entered
in any court having jurisdiction thereover.

       If, at the time such arbitration is to be held the
American Arbitration Association is not in existence and has no
successor, the arbitrators shall be appointed by a judge of a
court of competent jurisdiction situate in New Orleans, Louisiana
upon application of Landlord or Tenant.  The number of arbitra-
tors to be appointed shall be three.  It is agreed that the

arbitrators shall in no event have the right to modify or vary any of the terms or the provisions of this Lease which shall in all events prevail.

The parties to the arbitration, in addition to the rights granted under the rules of such Association, shall have the right to offer evidence and testify at the hearings, to be represented by counsel and to cross-examine witnesses, and the arbitrators may consider facts and data which they may discover by their independent investigation and inquiry outside of such hearings.

Whenever in this Lease it is provided that Landlord's consent or approval as to any matter will not be unreasonably withheld, or words of like import, and it is established by the arbitration or court proceeding that Landlord has been unreasonable, the only remedy of Tenant in such event shall be to proceed with the matter as if Landlord had given its consent or approval and in no event shall Landlord be liable to Tenant for any damages by reason thereof.

32. <u>Broker</u>. Landlord and Tenant represent and warrant to each other that neither party negotiated with any broker in connection with this Lease and that this Lease was negotiated directly by Landlord and Tenant.

33. <u>Separability</u>. Each and every covenant and agreement contained in this Lease is, and shall be construed to be, a separate and independent covenant and agreement, and the breach of any such covenant or agreement by Landlord shall not discharge or

-68-

relieve Tenant form its obligation to perform the same. If any term or provision of this Lease or the application thereof to any provison of this Lease or the application thereof to any person or circumstances shall to any extent be invalid and unenforceable, the remainder of this Lease, or the application of such term or provision to person or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and shall be enforced to the extent permitted by law.

34. <u>Completion of Construction of Improvements</u>. If on the Commencement Date (i) construction or alteration of the Improvements shall not have been completed, or (ii) the permanent Certificate of Occupancy or any other required governmental certificates or any other required certificates, permits or licenses, which will permit the Leased Premises to be legally occupied for its intended use, shall not have been issued, Tenant agrees promptly after the Commencement Date to complete such construction and alteration and to obtain the permanent Certificate of Occupancy and such certificates, permits and licenses, and to forward to Landlord copies thereof promptly after their receipt by Tenant. In addition, if any mechanic's, laborer's, materialman's, vendor's or other lien or chattel mortgage, conditional sale or other title retention agreement be filed against the Leased Premises after the Commencement Date, Tenant agrees to discharge such liens promptly after filing thereof.

-69-

35. <u>Miscellaneous</u>. The paragraph headings in this Lease are used only for convenience in finding the subject matters and are not part of this Lease or to be used in determining the intent of the parties or otherwise interpreting this Lease. As used in this Lease the singular shall include the plural as the context requires, and the following words and phrases shall have the following meanings: (a) "including" shall mean "including but not limited to"; (b) "provisions" shall mean "provisions, terms, agreements, covenants and/or conditions"; (c) "lien" shall mean "lien, charge, encumbrance, title retention agreement, pledge, security interest, mortgage and/or deed of trust"; (d) "obligation" shall mean "obligation, duty, agreement, liability, covenant or condition"; (e) "any of the Leased Premisese" shall mean "the Leased Premises or any part thereof or interest therein"; (f) "any of the Land" shall mean "the Land or any part thereof or interest therein"; (g) "any of the Improvements" shall mean "the Improvements or any part thereof or interest therein"; (h) "any of the Equipment" shall mean "the Equipment or any part thereof or interest therein"; and (i) "any of the Adjoining Property" shall mean "the Adjoining Property or any part thereof or interest therein". Any act which Landlord is permitted to perform under this Lease may be performed at any time and from time to time by Landlord or any person or entity designated by Landlord. Any act which Tenant is required to perform under this Lease shall be performed at Tenant's sole cost and expense. Each appointment of Landlord as attorney-in-fact

-70-

for Tenant under this Lease is irrevocable and coupled with an interest.  Landlord has the right to refuse to grant its consent whenever such consent is required under this Lease.  This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought. The covenants of this Lease shall run with the Land and bind Tenant, the heirs, distributees, personal representatives, successors and permitted assigns of Tenant and all present and subsequent encumbrancers and subtenants of any of the Leased Premises, and shall inure to the benefit of and bind Landlord, its successors and assigns.  In the event there is more than one Tenant, the obligation of each shall be joint and several.  In the event any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Lease but this Lease shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.  This Lease will be simultaneously executed in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes.  This Lease shall

be governed by and construed according to the laws of the State.

IN WITNESS WHEREOF, Landlord and Tenant have caused this instrument to be executed as of the day and year first above written.

Signed sealed and delivered
in the presence of:

_____

_____
As to Landlord

_____
Robert H. Arnow

                                                LANDLORD

WINN-DIXIE LOUISIANA, INC.

By_____
   Its_____ President

Attest_____
     Its_____ Secretary

       (Corporate Seal)

_____

_____
As to Tenant

0213520200

                                                TENANT

STATE OF NEW YORK    )
                      : ss.:
COUNTY OF NEW YORK   )

             , Be it known, That on this _16_ day of the month of _December_, 1987, before me, the undersigned authority, personally came and appeared ROBERT H. ARNOW, to me personally known and known by me to be the person whose genuine signature is affixed to the foregoing document, who signed said document before me and in the presence of said witnesses, that he signed the above and foregoing document as his own free act and deed and for the uses and purposes therein set forth and apparent.

        In witness whereof, the said appearers have signed these presents and I have hereunto fixed my hand and seal, together with the said witnesses on the day and date first above written.

_____
Witness

_____
Witness

_____
Notary Public

LLOYD STABINER
Notary Public, State of New York
No. 31-4806950
Qualified in New York County
Commission Expires November 30, 1988

STATE OF FLORIDA      )
                      : SS.:
COUNTY OF DUVAL       )

      BEFORE ME, the undersigned Notary Public, duly commissioned, qualified and empowered to act in and for the County and State aforesaid, personally came and appeared:

*A. Dano Davis*

to me known, who declared and acknowledged before me, Notary, and the undersigned competent witnesses, that he is the        President of WINN-DIXIE LOUISIANA, INC., that as such duly authorized agent, by and with the authority of the Board of Directors of WINN-DIXIE LOUISIANA, INC., he signed and executed the foregoing instrument, as the free and voluntary act and deed of WINN-DIXIE LOUISIANA, INC., for and on behalf of WINN-DIXIE LOUISIANA, INC., and for the objects and purposes therein set forth.

      THUS DONE AND PASSED in the State and County aforesaid, on this 21st day of *December* , 1987, after due reading of the whole.

WITNESSES:

_Betty L. Robinson_

_Rebecca L. Sawyer_

_Laura E. Sawyer_
**Notary Public**

EXHIBIT "A"

**ONE CERTAIN PARCEL OF GROUND**, together with all the buildings and improvements thereon and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Third District of the City of New Orleans, State of Louisiana, in Section 23 of LaKratt Tract (formerly New Orleans Lakeshore Land Co. Subdivision) designated as Lot 2A-1C-F on a resubdivision plan by the Office of Engineering Concepts, Inc., Michael W. Flores, Land Surveyor, dated August 11, 1986, and approved by the City Planning Commission on August 26, 1986, filed in the Parish of Orleans under Notarial Archives Number 669628, registered in COB 806, folio 667 on August 27, 1986, and according to a plan of Michael W. Flores, Land Surveyor, dated August 11, 1987, said property is more particularly described as follows:

From the intersection of the southerly right of way line of Morrison Road and the easterly right of way line of Bundy Road proceed 200.39 feet along a rightward arc having a radius of 1462.52 feet (with a chord length of 200.23 feet and a chord bearing of South 20 degrees, 01 minutes, 54 seconds East) to the Point of Beginning; thence North 60 degrees 54 minutes 25 seconds East a distance of 296.48 feet; thence South 29 degrees 05 minutes 35 seconds East a distance of 654.37 feet; thence South 60 degrees 54 minutes 25 seconds West a distance of 220.00 feet; thence North 29 degrees 05 minutes 35 seconds West a distance of 604.37 feet; thence South 60 degrees 54 minutes 25 seconds West a distance of 88.94 feet thence 51.53 feet along a leftward arc having a radius of 1,462.52 feet (with a chord length of 51.33 feet and a chord bearing of North 15 degrees, 05 minutes, 49 seconds West) to the Point of Beginning; said Lot contains 3.400 acres.

Being the same property acquired by Winn-Dixie Louisiana, Inc. by act passed before Gary Miller, Notary Public, dated August 28, 1986, registered in COB 808, folio 648.

EXHIBIT "B"

## MACHINERY AND EQUIPMENT

All machinery, apparatus, equipment, fittings, appliances and fixtures of every kind and nature whatsoever including all electrical, anti-pollution, heating, lighting, laundry, incinerating, power, air conditioning, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communication, garage and cooking systems, devices, machinery, apparatus, equipment, fittings, appliances, engines, pipes, pumps, tanks, motors, conduits, ducts, compressors and switchboards, and all storm doors and windows, dishwashers, attached cabinets and partitions and all articles of personal property of every kind and nature whatsoever to the extent that the foregoing items are now or hereafter affixed to, attached to, placed upon, used or usable in any way in connection with the use, enjoyment, occupancy or operation of the Leased Premises and Improvements' but excluding trade fixtures, inventory, furniture and other personalty belonging to Tenant not shown on the plans and specifications for the Improvements.

## EXHIBIT "C"

1.    Taxes for 1988 and all subsequent years not yet due or payable.

2.    Thirty (30') foot minimum building set-back line fronting 51.53 feet on Bundy Road as shown on survey by Engineering Concepts, Inc., Michael W. Flores, Land Surveyor, dated August 11, 1986.

3.    Twenty (20') foot servitude in favor of Sewerage and Water Board fronting 220 feet on Interstate Highway Side I-10 Service Road as shown on survey by Engineering Concepts, Inc., Michael W. Flores, Land Surveyor, dated August 11, 1986.

4.    Title restrictions as contained in Ordinance of Commission Council City of New Orleans #10-498 M.C.S., adopted May 9, 1985.

5.    Cross Servitudes and Restrictive Covenants Agreement dated August 28, 1986 between Charles M. Gremillion, et al., and Winn-Dixie Louisiana, Inc., registered in Orleans Parish in COB 808H, folio 51-58, Notarial Archives Number 670425, affecting Lots 2A-1C-F, 2A-1C-G and 2A-1C-E.

6.    Concrete driveway on the 20' Sewerage and Water Board Servitude along the southerly sideline of the property as shown on the survey of Michael W. Flores, Land Surveyor, dated August 11, 1987.

## EXHIBIT "D"

### BASIC RENT PAYMENTS

1.  **Basic Rent.** Subject to the adjustment provided for in Paragraph 2, Basic Rent shall be Three Hundred Forty Thousand One Hundred Seventy-Eight and 28/100 ($340,178.28) Dollars per annum, payable monthly in advance on the fifth day of each month in equal installments of Twenty-Eight Thousand Three Hundred Forty-Eight and 19/100 ($28,348.19) Dollars each, except that if the Commencement Date shall not occur on the fifth day of a calendar month, the installment of Basic Rent due on the Commencement Date shall be equal to the product of (a) the monthly rent installment and (b) the fraction whose numerator is the number of days from (and including) the Commencement Date through (and including) the fifth day of the calendar month next following the first Basic Rent Payment Date and whose denominator is thirty.

2.  **Gross Sales Adjustments to Basic Rent.** In addition to Basic Rent, Tenant shall pay one percent (1%) of the Gross Sales (as hereinafter defined) exceeding the Basic Rent for any of Tenant's fiscal years ending on or about June 30. (Such sum is hereafter called the "Percentage Rent") and is included in the term "Additional Rent" as used in this Lease. Percentage Rent shall be payable for the period from the Commencement Date to the end of Tenant's fiscal year ending June 30, 1988.

"Gross Sales" as used herein shall mean the aggregate gross sales of all merchandise sold, and gross charges for all services rendered in or from the Leased Premises both for cash and on credit whether by Tenant, or by any party occupying the Leased Premises or any part thereof as a subtenant, licensee, franchisee or assignee of Tenant and shall include the selling price for orders taken or received at the Leased Premises, whether such orders are filled from the Leased Premises or elsewhere; provided however such terms shall not include (1) any rental tax, or sales tax, gross receipts tax or similar tax by whatever name called, the amount of which is determined by the amount of sales made and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the Leased Premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines but payments received by Tenant or other occupant of the Leased Premises from the operator or vendor of the vending machines shall be included in Gross Sales; (6) accommodation check cashing fees and accommodation sales such as sales of postage stamps, lottery tickets, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of

trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the Leased Premises.

Tenant shall submit to Landlord on or before the sixtieth day following the end of each of Tenant's fiscal years for accounting purposes a statement signed by an executive officer of Tenant named herein or certified by an independent certified public accountant of any successor to Tenant named herein demonstrating in reasonable detail the amount of Gross Sales for the preceding Lease Year as set forth in Tenant's regularly maintained books and records. Any Percentage Rent due for that Lease Year shall be immediately payable within 60 days of the end of Tenant's fiscal year.

Tenant shall keep at all times during the Term of this Lease, at the Leased Premises or at the principal office of Tenant, full, complete and accurate books of account and records in accordance with generally accepted accounting practices consistently applied with respect to all operations of the business conducted in or from the Leased Premises for at least two years from the end of the fiscal year to which they are applicable, or, if any audit is required or a controversy should arise between the parties hereto regarding the Percentage Rent payable hereunder, until such audit or controversy is terminated. Such books and records shall at all reasonable times be open to the inspection of the Landlord or its duly authorized representatives, who shall have full and free access to such books and records, the right to audit such books and records, and the right to require of Tenant, its agents and employees, such information or explanation with respect to such books and records as may be necessary for a proper examination and/or audit thereof.

If the examination and/or audit referred to in the immediately preceding paragraph shall disclose a liability for payment of Percentage Rent to the extent of three percent or more in excess of the Percentage Rent theretofore computed and paid by Tenant for the period being examined, Tenant shall pay to Landlord the cost of such examination and/or audit in addition to the deficiency of Percentage Rent.

Any intention to create a joint venture or partnership relation between the parties is hereby expressly disclaimed, it being the intention of the parties that the provision for the payment by Tenant and the acceptance by Landlord of a percentage of Gross Sales is a reservation of Additional Rent for use of the Leased Premises.

021352020D

-2-

021352020E

## EXHIBIT E

The greater of:

(a)   The unpaid principal of the Mortgage as of the Closing Date referred to in Paragraph 13(b), or

(b)   The sum of Three Million Four Hundred Eighty-Nine Thousand and Eight ($3,489,008) Dollars less an amount equal to five (5%) percent of Two Million Two Hundred Forty-Three Thousand Four Hundred Fifty-Three ($2,243,453) Dollars by the number of years that shall have elapsed from the Commencement Date to said Closing Date, due apportionment to be made thereof for part of a year.