**IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| IN RE: WINN-DIXIE STORES, et al.    )<br>                                                                  )<br>Debtor.                                                  ) | Chapter 11<br>Case No. 05-03817-3F1 |

**JOINT OBJECTION OF E&A FINANCING II, L.P.;
E&A SOUTHEAST, L.P.; E&A ACQUISITION TWO, L.P.;
SHIELDS PLAZA, INC.; WOODBERRY PLAZA (E&A), LLC;
VILLA RICA RETAIL PROPERTIES, LLC; WEST RIDGE, LLC;
BANK OF AMERICA, AS TRUSTEE OF BETTY HOLLAND, AND
<u>F.R.O. LLC VII TO THE DEBTORS' PLAN OF REORGANIZATION</u>**

COME NOW E&A Financing II, L.P.; E&A Southeast, L.P.; E&A Acquisition Two, L.P.; Shields Plaza, Inc.; Woodberry Plaza (E&A), LLC; Villa Rica Retail Properties, LLC; West Ridge, LLC; Bank of America, as Trustee of Betty Holland; and F.R.O. LLC VII (collectively the "Objecting Landlords") and show the Court as follows as their joint objection to the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan"):

### I.    <u>The Objecting Landlords</u>

The Objecting Landlords all have lease rejection claims against either Winn-Dixie Montgomery, Inc. or Winn-Dixie Raleigh, Inc. Winn-Dixie Stores, Inc. guaranteed all of the rejected leases held by the Objecting Landlords.

### II.    <u>Statement of Facts</u>

Page 52 of the Disclosure Statement states that the "Debtors will be **deemed** substantively consolidated" (emphasis added), but on page 54, the Debtors acknowledge that the Plan will "not result in the merger or otherwise affect the separate legal existence of each Debtor." The Debtors are proposing a distribution of the New Common Stock[1] in a modified

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

version of substantive consolidation that will be effective "only for purposes of distribution." (DS p. 54).[2]

The distribution pursuant to this modified version of substantive consolidation caters to the interests of the creditors that were allowed to participate in the negotiations of the substantive consolidation settlement. For example, in addition to the changes to distribution brought about by the deemed substantive consolidation, the distribution to Retirees was increased and the Debtors and Creditors' Committee agreed to support a motion by the Ad Hoc Committee to be paid over $1,300,000 in cash for the legal fees incurred by the holders of Vendor/Supplier Claims in the negotiation of the Settlement. (DS p. 53).

The Note Holders, who hold guarantees, are being paid 95.6% of their claims in the Debtors' proposed modified version of consolidation. (DS p. 9). The landlords who hold guarantees (the "Guarantee Holders"), however, are only being paid 70.6%. (DS pp. 9-10). This is the same amount being paid to holders of unguaranteed Vendor/Supplier Claims, which claims the Debtors admit are largely against specific Debtors with "high debt-to-asset ratios." (DS p. 52).

The Disclosure Statement also states that the dispute over consolidation is "primarily an intercreditor issue." (DS p. 49). This is because the Debtors are distributing 50 million shares of New Common Stock, representing all of the equity in the reorganized Debtors, to their creditors. These 50 million shares of New Common Stock are only one-eighth of the 400 million shares of New Common Stock that will be authorized under the Plan. (DS p.56).

---

[2] All terms defined in the Disclosure Statement are used herein as so defined. Page number references to the Disclosure Statement are shown herein as "(DS p.___)."

**Thus, any increase in the distribution to one group of creditors will by necessity require an equal reduction in the distribution to another group of creditors.**

The Disclosure Statement also reveals that the holders of claims, such as Landlord Claims, that "bargained for credit-enhancing guarantees from separate legal entities entitling the holders to allowed claims against multiple Debtors" would be harmed by substantive consolidation because "these credit enhancing guarantees would likely become meaningless and the recoveries of these holders would be **substantially lower**." (DS p. 52). The Debtors admit that the holders of such claims "have a strong interest in opposing any effort to substantively consolidate the Debtors." The Debtors, however, provide no reason as to why these creditors should support the Plan.

The Disclosure Statement says the majority of the Vendor/Supplier Claims **were against "the Debtors with high debt-to-asset Ratios . . . ."** (DS p.52) (emphasis added). This would suggest that holders of Vendor/Supplier Claims would have received substantially less than fifty cents on the dollar in a deconsolidated plan. Yet, these claimants are receiving a greater distribution at the expense of the holders of Landlord Claims that are based on guarantees.

The bottom line is that under the Plan, the Objecting Landlords will only receive 70.6% of their lease rejection claims, and their other claims, which are based on valid credit enhancing guarantees, will be expunged. On the other hand, the holders of Vendor/Supplier Claims, with only one unguaranteed claim against a Debtor "with high debt-to-asset ratios," will get the same 70.6% distribution. The only other creditor group with guarantees, the Note Holders, will be paid 95.6%. (DS p. 9). The Note Holder claimants participated in the negotiation of the settlement as did the Vendor/Supplier claimants.

### III. Summary of Objections

The Objecting Landlords object to Winn-Dixie's Plan for the following reasons:

(1) The Plan fails to afford identical treatment to members of the same class as required by Section 1123(a)(4);

(2) The "deemed" consolidation proposed by the Debtors is inequitable and cannot be approved. The type of "deemed" consolidation proposed by the Debtors to wipe out the guaranteed claims of objecting creditors was expressly rejected in *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005);

(3) The Plan's classification of guaranteed landlord claims with unguaranteed landlord claims is impermissible since there is currently disparate treatment; the guarantees must be separately classified and deemed an impaired rejecting class; and

(4) The Plan cannot be "crammed-down" over the rejection by Landlords or guaranteed landlords because the Plan discriminates unfairly as the Plan's classification of unsecured claims generally is impermissible.

### IV. Argument and Citation of Authority

**A. Expunging some Landlord Claims while making distributions to the holders of other Landlord Claims violates the requirements of Section 1123(a)(4)**

Section 1129(a)(1) of the Bankruptcy Code provides that a plan cannot be confirmed unless it "complies with the applicable provisions of this title." The Plan cannot be confirmed because it does not comply with Section 1123(a)(4).

Section 1123(a)(4) provides:

Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide the same treatment for each claim or interest of a particular class, unless

the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest.

11 U.S.C. § 1123(a)(4).

Clearly, a plan that expunges some claims in a class while making a distribution to other claims in the same class violates Section 1123(a)(4) of the Bankruptcy Code unless the holders of the expunged claims consent to having their claims expunged. Likewise, a plan that allows the holders of some claims in a class to vote their claims for or against confirmation, while the holders of other claims in the same class are denied this right, violates Section 1123(a)(4) of the Bankruptcy Code.

The Objecting Landlords do not consent to any of their claims being expunged and do not consent to being denied the right to vote all of their claims for or against confirmation.

Consequently, the Plan cannot be confirmed because it does not "provide the same treatment for each claim or interest" in Class 13.

**B.  The Plan cannot be confirmed because it provides for "deemed consolidation" over the objection of adversely affected holders of guarantee claims**

### 1. This case is not about substantive consolidation

Substantive Consolidation, a construct of federal common law, emanates from equity. It "treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for the inter-entity liabilities, which are erased). The result is that the claims of creditors against separate debtors morph to claims against the consolidated survivor." *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) (citation omitted).

The Plan does not propose genuine substantive consolidation because it does not provide that all of the Debtors be merged into a single consolidated survivor. On the contrary, the Plan expressly provides that all of the various Debtors will retain their separate existence, and the

overall Winn-Dixie corporate structure will remain intact. (DS p. 54). The Debtors even admit that "the plan provides that the Debtors will be **deemed** substantively consolidated." (DS p. 52 (emphasis added)).

In *Owens Corning*, the United States Court of Appeals for the Third Circuit described the "deemed consolidation" proposed in the *Owens Corning* plan (which is virtually identical to the deemed consolidation in the Winn-Dixie plan) as "several zip (if not area) codes away from anything resembling substantive consolidation . . . ." *Id*. at 216 (internal citation omitted).

Thus, the issue in this case is not whether a basis exists to substantively consolidate the Debtors' cases; actual substantive consolidation is not proposed by the Plan. The question is whether the Debtors and the holders of Vendor/Supplier Claims can employ a "deemed" consolidation, like the one proposed in *Owens Corning*, to wipe out the guaranteed claims of the Objecting Landlords in order to improve the recovery that the Vendor/Supplier claimants would have received in a deconsolidated plan.

        **2.**      <u>**Deemed consolidation is never appropriate over the objection of the holder of a guarantee claim that will be extinguished by the deemed consolidation**</u>

In *Owens Corning*, the debtors and certain unsecured creditor groups (which the Third Circuit referred to as the "Plan Proponents") proposed a plan predicated upon obtaining "substantive consolidation" of the debtors along with three non-subsidiaries of the debtors. The Plan Proponents filed a motion seeking the same type of "deemed" consolidation that the Debtors and the Ad Hoc Committee seek in the instant case. As is the case with Winn-Dixie, the deemed consolidation sought in *Owens Corning* provided that "all guarantees of the Debtors of an obligation any other Debtors will be deemed eliminated . . . ." *Id*. at 202.

In *Owens Corning*, the United States District Court for the District of Delaware (the

- 6 -

"District Court") granted the motion for the "deemed consolidation," and the creditors whose guarantees were eliminated appealed. In reversing the decision of the District Court, the Third Circuit made the following comments:

> While this area of law is difficult and this case important, its outcome is easy with the facts before us. Among other problems, the consolidation sought is "deemed." Should we approve this non-consensual arrangement, the plan process would proceed as though assets and liabilities of separate entities were merged, but in fact they remain separate with the twist that the guarantees to the Banks are eliminated. From this we conclude that the proponents of substantive consolidation request it not to rectify the seldom-seen situations that call for this last-resort remedy but rather as a ploy to deprive one group of creditors of their rights while providing a windfall to other creditors.

*Id.* at 199-200.

In the case before this Court, the Debtors never advocated substantive consolidation on their own initiative. The only reason the Debtors included a deemed consolidation provision in the Plan was to induce the Ad Hoc Committee to discontinue its motion seeking actual substantive consolidation. The Disclosure Statement makes it clear that the Debtors' only motive was to avoid the delay and expense of litigating the issue with the Ad Hoc Committee. (DS p. 53).

The Ad Hoc Committee, in the words of the Third Circuit, used the threat of substantive consolidation "not to rectify the seldom-seen situations that call for this last-resort remedy but rather as a ploy to deprive one group of creditors of their rights while providing a windfall to other creditors." *Owens Corning*, 419 F.3d at 199-200. Specifically, the members of the Ad Hoc Committee sought to increase their own recovery at the expense of the creditors that had obtained the guarantees that would be eliminated under the "deemed consolidation."

The *Owens Corning* court makes it clear that actual substantive consolidation is a remedy for harm "caused by *debtors* (and the entities they control) who disregard separateness . . . . Mere

benefit to the administration of the case . . . is hardly a harm calling for substantive consolidation into play." *Id*. at 211 (emphasis in the original). The Third Circuit also held that "[W]hile substantive consolidation may be used defensively to remedy the identifiable harm caused by entangled affairs, **it may not be used offensively (for example, having a primary purpose to disadvantage tactically a group of creditors in the plan process or to alter creditor rights**)." *Id*. (emphasis added).

This prohibited offensive use of consolidation is exactly what is proposed in the Plan. The Ad Hoc Committee seeks to obtain a larger share of the Debtors' equity by altering the rights of the Landlord Claimants who hold guarantees.

Substantive consolidation is an equitable remedy and should not be used to compromise the legal rights of a creditor that bargained for a guarantee in the open market. The Third Circuit provides the following insight into the inequity of expunging a valid guarantee claim over the objection of the party holding that claim:

> Substantive consolidation at its core is equity. Its exercise must lead to an equitable result. "Communizing" assets of affiliated companies to one survivor to feed all creditors of all companies may to some be equal (and hence equitable). But it is hardly so for those creditors who have lawfully bargained prepetition for unequal treatment by obtaining guarantees of separate entities . . . . To overturn this bargain . . . would cause chaos in the marketplace, as it would make this case the Banquo's ghost of bankruptcy.

*Id.* at 216.

The consolidation compromise that is the cornerstone of the Plan cannot be approved by this Court because it fails to meet the basic standards of equity underlying the entire concept of substantive consolidation. Accordingly, confirmation of the Plan should be denied.

### 3. The deemed consolidation cannot be saved by characterizing it as a settlement of a dispute

The Debtors recognize that they cannot justify the deemed consolidation on the merits and in accordance with applicable case law. The Debtors' attempt to finesse this problem by seeking to have it approved under the lesser standard applicable to settlement of disputes. (DS p. 54). According to the Debtors, all the Court must do to approve this faux consolidation is find the settlement to be fair and equitable and in the best interest of the estate. According to the Debtors, the standard is the "lowest point of reasonableness." (DS p. 54).

The proposed settlement should not be approved for two reasons: (a) all of the necessary parties to the resolution of the dispute have not consented and (b) "deemed" consolidation is not justified on the merits.

#### a) All of the Necessary Parties to the Resolution of the Dispute Have Not Consented

In the words of the Debtors, "[I]mportantly, controlling case law indicates that the Bankruptcy Court does not have to find that the consolidation is appropriate in order to approve the settlement. *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567 (5th Cir. 1960)." (DS p. 54). *Florida Trailer* involved the approval of a compromise of a preference claim. This case does not support the Debtors' contention that they can settle their dispute with the Ad Hoc Committee by expunging the guarantee claims held by the Objecting Landlords. The Debtors cite no authority that allows them to settle a dispute without the consent of every party that is directly and adversely impacted by the settlement. In fact, the law is directly contrary to the Debtors' position.

In *U.S. ex rel. Rahman v. Oncology Associates, P.C.*, 269 B.R. 139 (D. Md. 2001), the United States District Court for the District of Maryland was asked to approve a settlement of a

- 9 -

coverage dispute between the trustee and an insurance company involving officers and directors' insurance policies. The reference was withdrawn in the bankruptcy case as to the approval of several settlement agreements involving the debtor. Under the proposed settlement, the insurance company proposed to pay money to the estate in exchange for a declaration that the policies were void *ab initio*. Such a declaration would impair the rights of individual officers and directors who wished to use the proceeds of their policies to pay claims asserted against them.

Even though the proposed settlement benefited the estate, the *Rahman* court held that **the proposed settlement could not be approved because it impaired the rights of the officers and directors who were not part of the settlement.** *See Rahman*, 269 B.R. at 160 ("The Trustee was not entitled to bargain away those rights [the rights of third parties] in return for a payment to the estate from the insurers . . . . [The third parties] were not compensated in any way for the extinguishment of their rights which would result from court approval of that settlement.").

The settlement proposed by the Debtors cannot be approved for the same reason. Like the settlement in *Rahman*, the Winn-Dixie settlement bargains away the rights of the Objecting Landlords in order to increase the distribution to the Ad Hoc Committee and induce it to withdraw its motion to substantively consolidate the case. While the Debtors may be able to find a way to settle with the Ad Hoc Committee, the consideration given to the Ad Hoc Committee will have to come in some form other than the expungement or dilution of the claims of the Objecting Landlords.

### b) The Settlement Is Not Justified on the Merits

The settlement also fails to meet the basic standards for approval on the merits because

there is no evidence that any basis for substantive consolidation exists.

In the Eleventh Circuit, the proponent of actual substantive consolidation must show that "there is substantial identity between the entities to be consolidated . . . ." *Eastgroup Properties, Ltd.*, 935 F.2d 245, 249 (11th Cir. 1991). "[S]ubstantial identity of the entities **must be demonstrated by the absence of corporate formalities or by the commingling of assets."** *In re Reider*, 31 F.3d 1102, 1107 (11th Cir. 1994) (emphasis added).

There is no evidence in this case that the Debtors ever disregarded their own separateness by ignoring corporate formalities or commingling assets. The fact that the Debtors intend to retain their individual identities after confirmation, and all the tax and other benefits associated therewith, is strong evidence that actual substantive consolidation is inappropriate. In *Owens Corning*, the Third Circuit stated that proposing a "deemed consolidation" where the various entities retain their separate identity is strong evidence that real consolidation is inappropriate. There is no basis to conclude that the various Debtors failed to maintain separateness and, therefore, there is no basis for these cases to be consolidated by the Court.

Given the lack of evidence to prove the case for substantive consolidation, there is no basis to allow a "deemed" consolidation in this case. Consequently, the Court should deny confirmation of the Plan.

**C.     The Plan's classification of the Landlord Claims is impermissible**

As set forth below, the Court cannot confirm the Plan if it provides disparate treatment to all unsecured creditors without a reasonable basis for such treatment, which is not the case here. If the Court does finds that the Debtors have provided a reasonable basis for the disparate treatment of unsecured creditor claims, the Debtors cannot then reasonably justify the classification of Landlord Claims based on guarantees (the "Guarantee Claims") with those

Landlord Claims based on lease rejections (the "Non-Guarantee Claims"). The Debtors fail to articulate any rational basis for classifying the Guarantee Claims (which will be expunged) with Non-Guarantee Claims (which will be allowed).

Consequently, the Guarantee Claims should be put into a separate impaired class that is deemed to reject the Plan because their claims will not be paid. In such an instance, the Debtor still cannot obtain confirmation of the Plan because, as discussed below, they will not be able to satisfy the requirements of Section 1129(b) of the Bankruptcy Code.

**D.      The Plan does not meet the requirements of Section 1129(b) of the Bankruptcy Code**

If the Debtors modify the Plan and place the Guaranteed Claims into a separate impaired class, the Plan still cannot be confirmed, as it does not provide a fair and equitable and non-discriminatory treatment of the Guaranteed Claims as required by Section 1129(b) (1) of the Bankruptcy Code. Section 1129(b)(1) states:

> The court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1).

In order to determine if a plan unfairly discriminates, a court must examine whether there is a "reasonable basis for the disparate treatment." *In re Hoffinger Indus. Inc.*, 321 B.R. 498, 505 (Bankr. E.D. Ark. 2005) (setting forth a four part test to determine if a plan unfairly discriminates, including the requirement that the plan proponent demonstrate whether the "discrimination has a reasonable basis;" and "whether the debtors can carry out the plan without discrimination . . . .").

The Plan, as currently proposed, divides all unsecured creditors into multiple classes that receive differing treatment. Because, and as demonstrated above, the Debtors cannot provide a reasonable basis for the disparate treatment of the unsecured creditors the Plan cannot be confirmed.

Moreover, the Plan discriminates unfairly against the Guarantee Claims in two ways. First, the plan pays the Guaranteed Claims nothing while other unsecured claims are paid. Second, the other groups of creditors that hold guarantees, the Note Holders, receive a substantially higher distribution on their underlying unsecured claim than the landlords, 95.6% versus 70.6%. There is no rational basis to treat the underlying claims of landlords with guarantees any worse than the underlying claims of Note Holder with guarantees. If the Debtors are to be "deemed consolidated" than all guarantees should be eliminated and the holders of the underlying claims should be treated the same. Accordingly, there is also no rational basis to treat the unsecured claim of a landlord based on a guarantee differently than any other unsecured claim and a plan that provides for such disparate treatment of unsecured claims without any rational basis cannot be confirmed. *See Hoffinger Indus. Inc,* 321 B.R. at 505.

Accordingly, and for the reasons described above, even if the Plan were to separately classify the Guaranteed Claimants, it would still not be confirmable because it would unfairly discriminate against such claims.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Objecting Landlords respectfully request that the Court enter an Order denying confirmation of the Plan and granting such other and further relief as the Court deems just and appropriate.

Dated:  September 25, 2006

Respectfully submitted,

HELD & ISRAEL

ARENT FOX PLLC

 */s/ Adam N. Frisch*
Kimberly Held Israel
Florida Bar #47287
Adam N. Frisch, Esq.
Florida Bar #635308
1301 Riverplace Blvd., Suite 1916
Jacksonville, Florida 32207
Telephone: 904/398-7038
Fax: 904/398-4283
Email:  adam@hilawfirm.com

and

KITCHENS, KELLEY, GAYNES P.C.
Mark A. Kelley
Eleven Piedmont Center
3495 Piedmont Road, N.E., Suite 900
Atlanta, Georgia 30305
Telephone: 404/237-4100
Fax: 404/364-0126
Email: mkelley@kkgpc.com

Counsel for E&A Financing II, L.P.;
E&A Southeast ; L.P., E&A Acquisition
Two, L.P.; Shields Plaza, Inc.; Woodberry
Plaza (E&A), LLC; Villa Rica Retail
Properties, LLC; West Ridge, LLC; Bank of
America, as Trustee of Betty Holland

 */s/ Mary Joanne Dowd*
Mary Joanne Dowd (Florida Bar No. 368970)
Jeffrey N. Rothleder
Arent Fox PLLC
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202/857-6059
Fax: 202/857-6395
Email: dowd.mary@arentfox.com

Counsel for F.R.O. LLC VII

## **CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that on this 25th day of September, 2006, a true and correct copy of the foregoing has been furnished via electronic transmission or first-class mail to counsel for the Debtor: Rosalie Walker Gray, Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square, New York, NY 10036, rgray@skadden.com and Cynthia Jackson, Smith, Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202, cjackson@smithhulsey.com, counsel to the Committee: Matthew Barr, Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, NY 10005, mbarr@milbank.com and John B. MacDonald, Akerman Senterfitt, 50 North Laura Street, Suite 2500, Jacksonville, FL 32202, john.macdonald@akerman.com, and the Office of the United States Trustee, 135 W. Central Boulevard, Suite 620, Orlando, FL 32801.

                                                      */s/ Mary Joanne Dowd*
                                                      Mary Joanne Dowd