# EXHIBIT B

SEP 9 1994

Record and return to:

Michael K. Sanderson, Esq.
Locke Purnell Rain Harrell
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776

RETURN TO: 7941784NA-5 CH
FIRST AMERICAN TITLE INSURANCE CO.
25400 US Highway 19 N., Suite 212
CLEARWATER, FL 34623

BK 0713 PG 1319

OFFICIAL RECORDS

RECEIVED $4,353 IN PAYMENT OF TAXES
DUE ON CLASS C INTANGIBLE PERSONAL
PROPERTY PURSUANT TO CHARTER 20724,
LAWS OF FLORIDA, ACTS OF 1941

CLERK CIRCUIT COURT NASSAU COUNTY FLORIDA

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT is made as of August 25, 1994, by and between PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Florida as Peregrine Ownership and Leasing Limited Partnership, having a principal place of business at 711 High Street, Des Moines, Iowa 50392, Attention: Commercial Real Estate Loan Administration, Reference No. 750413, herein called "Mortgagor", and PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, an Iowa corporation, having its principal place of business and post office address at 711 High Street, Des Moines, Iowa 50392, Attention: Commercial Real Estate Loan Administration, Loan No. 750413, herein called "Mortgagee,"

WITNESSETH:

THAT Mortgagor is justly indebted to Mortgagee for money borrowed in the principal sum of Two Million One Hundred Seventy Six Thousand Seven Hundred Forty Seven and 58/100 Dollars ($2,176,747.58) evidenced by Mortgagor's Secured Promissory Note (herein called the "Note") of even date herewith, made payable and delivered to Mortgagee, in which Note Mortgagor promises to pay to Mortgagee the said principal sum or so much thereof as may be advanced from time to time by Mortgagee, together with interest at the rate, at the times, and in installments as in the Note provided, until the entire principal and accrued interest have been paid, but in any event, the unpaid balance (if any) remaining due on the Note shall be due and payable on August 31, 2014 ("Maturity Date").

NOW, THEREFORE, to secure the payment of the said indebtedness in accordance with the terms and conditions hereof and of the Note and the performance of the covenants and agreements contained herein, and also to secure the payment of any and all other indebtedness, direct or contingent, that may now or hereafter become owing from Mortgagor to Mortgagee, and in consideration of Ten Dollars in hand paid, receipt of which is hereby acknowledged, Mortgagor does by these presents grant, convey, assign and mortgage, and grant a security interest, unto Mortgagee, its successors and assigns forever, that certain real estate and all of Mortgagor's estate, right, title and interest therein, located in the County of Nassau, State of Florida, more particularly described in Exhibit A attached hereto and made a part hereof, which real estate, together with the following described property, rights and interests, is collectively referred to herein as the "Premises."

Together with Mortgagor's interest as lessor in and to all leases of the said Premises, or any part thereof, heretofore or hereafter made and entered into by Mortgagor during the

MORTGAGE AND SECURITY AGREEMENT
8/29/94

06720/40153
LP I.D. No. 14

-3-

BK 0713 PG 1321

Mortgagor further represents that: (i) the Premises is not subject to any casualty damage; (ii) there is no Hazardous Material (as hereinafter defined) on the Premises, nor has any Hazardous Material been discharged from the Premises or penetrated any surface or subsurface rivers or streams crossing or adjoining the Premises or the aquifer underlying the Premises; (iii) Mortgagor has complied and caused the Premises to comply with all statutes, laws, ordinances, rules and regulations of all local, state or federal authorities having jurisdiction over the Premises or its use relative to any Hazardous Material; and (iv) there is no other property presently owned or used by Mortgagor from which the existence or discharge of Hazardous Material would result in any charge or lien upon the Premises. Hazardous Material as used in this mortgage means any hazardous or toxic material, substance or waste which is defined by those or similar terms or is regulated as such under any statute, law, ordinance, rule or regulation of any local, state or federal authority having jurisdiction over the Premises or its use, including but not limited to any material, substance or waste which is: (a) defined as a hazardous substance under Section 311 of the Federal Water Pollution Control Act (33 U.S.C. §1317) as amended; (b) defined as a hazardous waste under Section 1004 of the Resource Conservation and Recovery Act (42 U.S.C. §6901 et. seq.) as amended; or (c) defined as a hazardous waste substance under Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, (42 U.S.C. §9601 et. seq.) as amended.

MORTGAGOR COVENANTS AND AGREES AS FOLLOWS:

1. Mortgagor shall

    (a) pay each item of indebtedness secured by this mortgage when due according to the terms hereof and of the Note;

    (b) pay a late charge equal to two percent (2%) of any payment of principal, interest or premium which is not paid within five (5) days following the due date thereof to cover the expense involved in handling such late payment;

    (c) pay on or before the due date thereof any indebtedness which may be secured by a lien or charge on the Premises, and upon request of Mortgagee exhibit satisfactory evidence of the discharge thereof;

    (d) complete within a reasonable time the construction of any building now or at any time in process of construction upon the real estate;

    (e) make no material alteration to the Premises without the prior written consent of Mortgagee, except such as are required by law or ordinance;

    (f) remove or demolish no building or other improvement at any time a part of the Premises, and shall keep the Premises, including the buildings and improvements, in good condition and repair, without waste, and free from mechanics' liens or other liens or claims for liens and encumbrances not expressly subordinated to the lien hereof;

    (g) comply, and cause each lessee or other user of the Premises to comply, with all requirements of law and ordinance, and all rules and regulations,

-4-

BK0713PG1322
OFFICIAL RECORDS

now or hereafter enacted, by authorities having jurisdiction of the Premises and the use thereof, all orders and directions of the National Fire Protection Association or similar body, and all restrictions of record pertaining to the Premises, including the buildings and improvements, and the use thereof;

(h) cause or permit no change to be made in the general nature of the occupancy of the Premises without Mortgagee's prior written consent;

(i) initiate or acquiesce in no zoning reclassification or material change in zoning without Mortgagee's prior written consent;

(j) make or permit no use of the Premises that could with the passage of time result in the creation of any right of use, or any claim of adverse possession or easement on, to or against any part of the Premises in favor of any person or the public;

(k) promptly repair, restore or rebuild any buildings or improvements now or hereafter a part of the Premises which may become damaged or be destroyed by any cause whatsoever, so that upon completion of the repair, restoration and rebuilding of the buildings and improvements there will be no liens of any nature arising out of the construction and the Premises will be of substantially the same character and will have a commercial value at least as great as the commercial value thereof prior to the damage or destruction;

(l) not, directly or indirectly, due to assignment of beneficial interest under a trust, partnership interest in a partnership, or otherwise, cause or permit any sale, transfer or conveyance of the Premises or create, suffer or permit any encumbrance or lien on the Premises other than the lien hereof, the leases of the Premises assigned to Mortgagee and other exceptions expressly referred to herein, it being understood and agreed that the indebtedness evidenced by the Note and its terms are personal to Mortgagor and in accepting the same Mortgagee has relied upon what it perceived as the willingness and ability of Mortgagor to perform its obligations hereunder, under the Note, and as lessor under leases of the Premises; Mortgagee may consent to a sale, transfer, conveyance or encumbrance and expressly waive this provision in writing to Mortgagor however any such consent and waiver shall not constitute any consent or waiver of this provision as to any sale, transfer, conveyance or encumbrance other than that for which the consent and waiver was expressly granted; Mortgagee's ability to consent to any sale, transfer, conveyance or encumbrance and waive this provision implies no standard of reasonableness in determining whether or not such consent shall be granted and the same may be based upon what Mortgagee solely deems to be in its best interest; without limiting Mortgagee's right to withhold its consent and waiver entirely, such consent and waiver may be conditioned upon an increase in the rate of interest under the Note and the imposition of other terms and conditions thereunder or hereunder; any sale, transfer, conveyance or encumbrance made, created or permitted in violation of this

-11-                        BK 0713 PG 1329

10. If one or more of the following events (herein called "Events of Default") shall have occurred:

    (a) default shall be made in the payment of any principal, interest, premium, taxes or assessments referred to in this mortgage or insurance premiums for the insurance required pursuant to this mortgage when due under the Note or this mortgage, and such default shall have continued for 10 days; or

    (b) Mortgagor shall be dissolved, or a decree or order for relief shall be entered by a court having jurisdiction in the Premises in respect of Mortgagor in a voluntary or involuntary case under the Federal Bankruptcy Code as now or hereafter constituted, or Mortgagor shall file a voluntary petition in bankruptcy or for reorganization or an arrangement or any composition, readjustment, liquidation, dissolution or similar relief pursuant to any similar present or future state or federal bankruptcy law, or shall be adjudicated a bankrupt or become insolvent, or shall commit any act of bankruptcy as defined in such law, or shall take any action in furtherance of any of the foregoing; or

    (c) a petition or answer shall be filed proposing the adjudication of Mortgagor as a bankrupt or its reorganization or arrangement, or any composition, readjustment, liquidation, dissolution or similar relief with respect to it pursuant to any present or future federal or state bankruptcy or similar law, and Mortgagor shall consent to the filing thereof, or such petition or answer shall not be discharged within 60 days after the filing thereof; or

    (d) by the order of a court of competent jurisdiction, a receiver, trustee or liquidator of the Premises or any part thereof or of Mortgagor or of substantially all of its assets shall be appointed and shall not be discharged or dismissed within 60 days after such appointment, or if Mortgagor shall consent to or acquiesce in such appointment; or

    (e) with respect to the matters described in the other subparagraphs of this paragraph 10, default shall be made in the due observance or performance of any covenant, condition or agreement of the Mortgagor contained in this mortgage or in the Note or in any other instrument or agreement further securing the Note, and such default shall have continued for 30 days after notice specifying such default is given by Mortgagee to Mortgagor; or

    (f) any representation or warranty made by Mortgagor herein or in the Note or in any instrument further securing the Note shall prove to be untrue or inaccurate in any material respect; or

    (g) the failure of Mortgagor to give notice to Mortgagee in the manner provided in this mortgage for the giving of notices within 10 days after the death of any natural person who is personally liable for the payment of the indebtedness secured hereby or any part thereof, whether such

-12-

BK 0713 PG 1330
OFFICIAL RECORDS

person is the Mortgagor or any indemnitor or guarantor and whether or not such person has executed the Note or this Mortgage; or

(h) the death of any natural person who is personally liable for the payment of the indebtedness secured hereby or any part thereof, whether such person is the Mortgagor or any indemnitor or guarantor and whether or not such person has executed the Note or this mortgage; or

(i) the occurrence of any "Event of Default" as defined in that certain Lease Agreement dated as of even date herewith, executed between Mortgagor, as landlord, and Winn-Dixie Stores, Inc., as tenant, pertaining to the Premises (the "Winn-Dixie Lease").

then, in each and every such case, the whole of said principal sum hereby secured shall, at the option of the Mortgagee and without further notice to Mortgagor, become immediately due and payable together with accrued interest thereon and a Make Whole Premium calculated in accordance with the provisions hereof, and whether or not Mortgagee has exercised said option, interest shall accrue on the entire principal balance and any interest or premium then due, at the Default Rate until fully paid or if Mortgagee has not exercised said option, for the duration of any Event of Default.

If any Event of Default under "(e)" above shall be of such nature that it cannot be cured or remedied within 30 days, Mortgagor shall be entitled to a reasonable period of time to cure or remedy such Event of Default, provided Mortgagor commences the cure or remedy thereof within the 30 day period following the giving of notice and thereafter proceeds with diligence to complete such cure or remedy.

11. Mortgagor agrees that if Mortgagee accelerates the whole or any part of the principal sum hereby secured, or applies any proceeds as if such application had been made as a result of such acceleration, pursuant to the provisions hereof, Mortgagor waives any right to prepay the principal sum hereby secured in whole or in part without premium and agrees to pay, as liquidated damages and not as a penalty, a "Make Whole Premium." The Make Whole Premium shall be the greater of (a) one percent (1%) of the principal amount to be prepaid, or (b) the excess, if any, of

(i) the aggregate present value as of the date of payment or prepayment (hereinafter, the "Payment Date") of each dollar of principal being paid or prepaid (taking into account the application of such prepayment as set forth in the Note) and the amount of interest (exclusive of interest accrued to the Payment Date) that would have been payable in respect of such dollar of principal being paid or prepaid if such payment or prepayment had not been made, determined by discounting such amounts monthly at a rate which is equal to the "Treasury Rate" from the due date of the Note, over

(ii) 100% of the principal amount being paid or prepaid.

BK 0713 PG 1343

OFFICIAL RECORDS

-25-

IN WITNESS WHEREOF, Mortgagor has caused this mortgage to be duly executed and delivered as of the date first above written.

Witnesses:

_Susan J. Musich_
Name: Susan J. Musich

_Lisa Short_
Name: Lisa Short

- SEAL -

PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Florida as Peregrine Ownership and Leasing Limited Partnership

By: Equity FC, Ltd. Corporation,
     an Iowa corporation, its general partner

By: _Karen A. Pearston_
Name: KAREN A. PEARSTON, Counsel
Title:

By: _James C. Fifield_
Name: JAMES C. FIFIELD
Title: Counsel

STATE OF IOWA       §
                    §
COUNTY OF Polk      §

The foregoing instrument was acknowledged before me this 26 day of August, 1994 by Karen A. Pearston, as Counsel of Equity FC, Ltd. Corporation, an Iowa corporation, general partner of PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Florida as Peregrine Ownership and Leasing Limited Partnership, on behalf of said corporation. He is personally known to me or produced a _____ driver license as identification.

My Commission Expires:

CAROL J. BENSON
MY COMMISSION EXPIRES
November 14, 1996

_Carol J. Benson_
Print Name: Carol J. Benson

NOTARY PUBLIC, STATE OF Iowa

[NOTARIAL SEAL]

MORTGAGE AND SECURITY AGREEMENT

06720/40153
LP I.D. No. 14

BK 0713 PG 1344
OFFICIAL RECORDS

-26-

STATE OF ~~IOWA~~ §
§
COUNTY OF POLK § 

The foregoing instrument was acknowledged before me this 05 day of August, 1994 by James C. Fifield, as Comptroller of Equity FC, Ltd. Corporation, an Iowa corporation, general partner of PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership authorized to transact business in Florida as Peregrine Ownership and Leasing Limited Partnership, on behalf of said corporation. He is personally known to me or produced a _____ driver license as identification.

My Commission Expires:

CAROL J. BENSON
MY COMMISSION EXPIRES
November 14, 1996

Print Name: Carol J. Benson

NOTARY PUBLIC, STATE OF Iowa

[NOTARIAL SEAL]

MORTGAGE AND SECURITY AGREEMENT

06720/40153
LP LD. No. 14

06720\40153
LP ID No. 14

EXHIBIT "A"

LEGAL DESCRIPTION

BK 0713 PG 1345
OFFICIAL RECORDS

Tract I

That certain piece, parcel, or tract of land lying in and being part of Section 25, Township 2 North, Range 28 East, Nassau County, Florida, being more particularly described as follows:

Commencing at the intersection of the center-line of State Road No. 200A, a 100 foot right of way as now established, with the center-line of State Road No. 200 and/or A-1-A, a 184 foot right of way as now established; thence South 72°46'59" East, by and along the center-line of said State Road No. 200 and/or A-1-A, a distance of 97.48 feet; thence South 17°13'01" West, a distance of 92.00 feet to the Southerly right of way line of said road; thence South 72°46'59" East, by and along said Southerly right of way line, a distance of 648.05 feet; thence South 17°13'01" West, a distance of 29.03 feet for a Point of Beginning; thence South 72°46'59" East, and parallel with said right of way line, a distance of 282.26 feet; thence South 17°13'01" West, a distance of 224.16 feet; thence South 72°46'59" East, and parallel with said right of way line, a distance of 145.00 feet; thence North 17°13'01" East, a distance of 80.00 feet; thence South 72°46'59" East, and parallel with said right of way line, a distance of 143.35 feet; thence South 22°43'01" West, a distance of 342.07 feet; thence North 72°46'59" West, and parallel with said right of way line, a distance of 537.82 feet; thence North 17°13'01" East, a distance of 484.66 feet to the Point of Beginning.

Tract II

The non-exclusive easements as defined in the Declaration of Restrictions and Grant of easements recorded January 17, 1992 in O.R. Book 646, Page 995, over, across and upon the following described property.

That certain piece, parcel or tract of land, lying in and being part of Section 1, Township 2 North, Range 27 East, and Section 25, Township 2 North, Range 28 East, Nassau County, Florida, being more particularly described as follows:

Commencing at the intersection of the center-line of State Road No. 200A, a 100 foot right of way as now established, with the center-line of State Road No. 200 and/or A-1-A, A 184 foot right of way as now established; thence South 72°46'59" East, by and along the center line of said State Road No. 200 and/or A-1-A, a

Exhibit A - Page 1

06720\40153
LP ID No. 14

BK0713PG1346
OFFICIAL RECORDS

distance of 97.48 feet; thence South 17°13'01" West, a distance of 92.00 feet to the Southerly right of way line of said road for a Point of Beginning; thence South 72°46'59" East along said Southerly right of way line, a distance of 1,266.13 feet; thence South 16°16'25" West, a distance of 798.57 feet; thence North 89°54'37" West, a distance of 1,030.15 feet; thence North 72°46'59" West, and parallel with said Southerly right of way line, a distance of 330.16 feet; thence North 17°13'01" East, a distance of 1,066.48 feet; thence North 62°12'43" East, a distance of 50 feet to said Southerly right of way line and the Point of Beginning. SAVE AND EXCEPT THE FOLLOWING DESCRIBED PROPERTY:

That certain piece, Parcel, or Tract of land lying in and being part of Section 25, Township 2 North, Range 28 East, Nassau County, Florida, being more particularly described as follows:

Commencing at the intersection of the center-line of State Road No. 200A, a 100 foot right of way as now established, with the center-line of State Road No. 200 and/or A-1-A, a 184 foot right of way as now established; thence South 72°46'59" East, by and along the center-line of said State Road No. 200 and/or A-1-A, a distance of 97.48 feet; thence South 17°13'01" West, a distance of 92.00 feet to the Southerly right of way line a said road; thence South 72°46'59" East, by and along said Southerly right of way line, a distance of 648.05 feet; thence South 17°13'01" West, a distance of 29.03 feet for a Point of Beginning; thence South 72°46'59" East, and parallel with said right of way line, a distance of 282.26 feet; thence South 17°13'01" West, a distance of 224.16 feet; thence South 72°46'59" East, and parallel with said right of way line, a distance of 145.00 feet; thence North 17°13'01" East, a distance of 80.00 feet; thence South 72°46'59" East, and parallel with said right of way line, a distance of 143.35 feet; thence South 22°43'01" West, a distance of 342.07 feet; thence North 72°46'59" West, and parallel with said right of way line, a distance of 537.82 feet; thence North 17°13'01" East, a distance of 484.66 feet to the Point of Beginning.

Exhibit A - Page 2