# EXHIBIT A

RECORD FEE __75.00__
STATE OF ALABAMA
BALDWIN COUNTY
CERTIFY THIS INSTRUMENT WAS
FILED AND TAXES COLLECTED ON

Nov 28   12 36 PM '95

DEED _____ MORTGAGE __3945.00__
MIN TAX _____ INDEX _____ DP __7.00__
RECORDED IN _____

JUDGE OF PROBATE

9-5-95

This instrument was prepared by the
attorney referenced below who is counsel
admitted to practice in the states in
which the property is located, and when
recorded, counterparts should be
returned to:

Phillip G. Stutts, Esq.

LEITMAN, SIEGAL, PAYNE & CAMPBELL, P.C.

600 North 20th Street, Suite 400

Birmingham, AL 35203

## MORTGAGE, DEED OF TRUST AND SECURITY AGREEMENT

This MORTGAGE, DEED OF TRUST AND SECURITY AGREEMENT (as the same may from time to time be extended, spread, split, consolidated, modified, restated and renewed, this "Mortgage") made as of _____ November __28__, 19_95_ by __Byram E. Dickes__ *an individual*, having its principal office at Chase Franklin Corporation, 100 South Wacker Drive, Suite 1140, Chicago, IL 60606 _____ (collectively or individually, as the context may require, the "Borrower"), to __N/A__ (collectively or individually, as the context may require, the "Trustee"), the trustees hereunder to the extent that this Mortgage operates as a deed of trust, and to United of Omaha Life Insurance Company, a Nebraska corporation, having an address at Mutual of Omaha Plaza, Omaha, Nebraska 68175 ("Lender"), the mortgagee hereunder to the extent that this Mortgage operates as a mortgage, the grantee hereunder to the extent that this Mortgage operates as a deed to secure debt and the beneficiary hereunder to the extent that this Mortgage operates as a deed of trust.

### WITNESSETH:
### ARTICLE I
### DEFINITIONS

1.1 **Definitions**. As used herein, the following terms shall have the following meanings:

**Affiliate**: Any person or entity directly or indirectly controlling, controlled by or under common control with another person or entity.

**Appraisal**: As defined in Section 3.11(d) hereof.

**Architectural Barriers Laws**: Any federal, state, or local law, statute, ordinance or regulation pertaining to any architectural, communication or other type of barrier or impediment to the physically disabled which exists on, in, or about the Mortgaged Property, including, without limitation, Title III of the Americans with Disabilities Act of 1990 ("ADA"), as now or hereafter amended, and all regulations, rules, guidelines, or standards promulgated pursuant to such laws, as such laws, statutes, ordinances, regulations, rules, guidelines or standards may be amended from time to time.

**Assignment**: That certain Assignment of Leases and Rents of even date herewith executed by Borrower for the benefit of Lender.

**Borrower**: The individual or entity described as Borrower in the initial paragraph of this Mortgage and any and all subsequent owners of the Mortgaged Property or any part thereof (without hereby implying Lender's consent to any Disposition of the Mortgaged Property).

**Code**: The Uniform Commercial Code, as amended from time to time, in effect in the state in which the Mortgaged Property is located.

**Constituent Party**: Any signatory to this Mortgage who or that signs on behalf of Borrower in the event that Borrower is a corporation, general partnership, limited partnership, limited liability company, limited liability partnership, joint venture, trust, or other type of business organization, any other entity owning a controlling equity interest in Borrower and any entity that could have personal liability for the loan or for breach by Borrower of any representation, warranty, term, covenant or provision hereof or of any other Loan Document.

**Contracts**: All of the right, title, and interest of Borrower in, to, and under any and all (i) contracts for the purchase of all or any portion of the Mortgaged Property, whether such contracts are now or at any time hereafter existing, including but without limitation, any and all earnest money or other deposits escrowed or to be escrowed or letters of credit provided or to be provided by the purchasers under such contracts, including all amendments and supplements to and renewals and extensions of such contracts at any time made, and together with all payments, earnings, income, and profits arising from sale of all or any portion of the Mortgaged Property or from such contracts and all other sums due or to become due under and pursuant thereto and together with any and all earnest money, security, letters of credit or other deposits under any of such contracts; (ii) contracts, licenses, permits, and rights relating to entitlements for water, wastewater, and other utility services whether executed, granted, or issued by a private person or entity or a governmental or quasi-governmental agency, which are directly or indirectly related to, or connected with, the operation or development of the Mortgaged Property, whether such contracts, licenses, and permits are now or at any time hereafter existing, including without limitation, any and all entitlements with respect to water, wastewater, and other utility services, certificates, licenses, zoning variances, permits, and no-action letters from each governmental authority required: (a) to evidence compliance by Borrower and all improvements constructed or to be constructed on the Mortgaged Property with all legal requirements applicable to the Mortgaged Property, and (b) to develop and/or operate the Mortgaged Property as a commercial project; (iii) right, title, and interest Borrower may have in any financing arrangements relating to the financing of or the purchase of all or any portion of the Mortgaged Property by future purchasers; and (iv) all other contracts, licenses, permits and rights which in any way relate to the use, enjoyment, occupancy, operation, maintenance, or ownership of the Mortgaged Property (save and except any and all leases, subleases or other agreements creating a possessory interest in the Land), including but not

* a married man. The Mortgaged Property is not the homestead property of Borrower or his spous

AL0911P2.MDS

limited to maintenance agreements and service contracts; consulting agreements, management and leasing agreements and all payment and performance bonds or warranties or guaranties relating to the Mortgaged Property, together with any and all proceeds of any and all of the foregoing.

Debtor Relief Laws: Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, federal or state, domestic or foreign, as now or hereafter in effect, relating to bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors.

Default Rate: The rate of interest specified in the Note to be paid by the maker of the Note from and after the occurrence of a default in payment under the provisions of the Note and Loan Documents but not in excess of the Maximum Lawful Rate.

Disposition: Any sale, lease, exchange, assignment (by operation of law or otherwise), conveyance, transfer, trade, encumbrance, alienation, granting of a security interest (whether superior or inferior to the lien of this Mortgage) or other disposition of all or any portion of the Mortgaged Property (or any interest therein) or all or any part of the beneficial ownership interest in Borrower (if Borrower is a corporation, partnership, general partnership, limited partnership, joint venture, trust, limited liability company, limited liability partnership or other type of business association or legal entity) but excluding the following: (a) sales or transfers of items of Personalty which have become obsolete or worn beyond practical use and which have been replaced by adequate substitutes having a similar utility and a value equal to or greater than the replaced items when new; (b) a Lease specifically authorized under this Mortgage or the Assignment; and (c) transfers by devise or descent or by operation of law upon the death of a joint tenant or partner.

Environmental Agreement: That certain Environmental and Hazardous Substance Indemnification Agreement of even date herewith executed by Borrower for the benefit of Lender.

Escrows: All of the right, title and interest of Borrower in, to and under any and all existing and future escrow accounts established with respect to the Mortgaged Property including, but not limited to escrow accounts established (i) for condemnation awards and casualty insurance proceeds held by Lender pursuant hereto and (ii) for the payment of taxes, insurance, tenant finish, maintenance, liens and encumbrances, together with any and all proceeds of any and all of the foregoing.

Event of Default: Any happening or occurrence described in Article VI hereof.

Fixtures: All materials, supplies, equipment, systems, apparatus, and other items now owned or hereafter acquired by Borrower and now or hereafter attached to, installed in, or used in connection with (temporarily or permanently) any of the Improvements or the Land, and including but not limited to any and all partitions, dynamos, window screens and shades, draperies, rugs and other floor coverings, awnings, motors, engines, boilers, furnaces, pipes, cleaning, call and sprinkler systems, fire extinguishing apparatus and equipment, water tanks, swimming pools, heating, ventilating, refrigeration, plumbing, laundry, lighting, security systems and equipment (including cameras), telecommunication installations (including wiring and fiber optic cable), generating, cleaning, waste disposal, transportation (of people or things, including but not limited to, stairways, elevators, escalators, and conveyors), incinerating, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, telephone, storm and sanitary sewer facilities, and all other utilities whether or not situated in easements, together with all accessions, appurtenances, replacements, betterments, and substitutions for any of the foregoing and any and all proceeds of any and all of the foregoing.

Governmental Authority: Any and all applicable courts, boards, agencies, commissions, offices, departments or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city or otherwise), whether now or hereafter in existence.

Guarantor (individually and/or collectively, as the context may require): Those persons, firms, or entities, if any, designated as Guarantor in the Guaranty.

Guaranty (individually and/or collectively, as the context may require): That or those instruments of guaranty, if any, now or hereafter in effect, from Guarantor to Lender guaranteeing the repayment of all or any part of the Indebtedness or the satisfaction of, or continued compliance with, the Obligations, or both, as such instruments of guaranty may be amended, extended, modified or renewed from time to time.

Hazardous Substance: Has the meaning assigned in the Environmental Agreement.

Impositions: (i) All real estate and personal property taxes, charges, assessments, standby fees, excises, and levies and any interest, costs, or penalties with respect thereto, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which at any time prior to or after the execution hereof may be assessed, levied, or imposed upon the Mortgaged Property or the ownership, use, occupancy, or enjoyment thereof, or any portion thereof, or the sidewalks, streets, or alleyways adjacent thereto; (ii) any charges, fees, license payments, or other sums payable for or under any easement, license, or agreement maintained for the benefit of the Mortgaged Property; (iii) water, gas, sewer, electricity, and other utility charges and fees relating to the Mortgaged Property; and (iv) assessments and charges arising under any subdivision, condominium, planned unit development, or other declarations, restrictions, regimes, or agreements affecting the Mortgaged Property.

Improvements: Any and all buildings, covered garages, air conditioning towers, open parking areas, structures and other improvements, and any and all additions, alterations, betterments or appurtenances thereto, now or at any time hereafter situated, placed, or constructed upon the Land or any part thereof, together with any and all proceeds of any and all of the foregoing.

Indebtedness: (i) The principal of, interest on, or other sums evidenced by the Note or advanced under or secured by the Loan Documents; and (ii) any other amounts, payments, or premiums payable under the Loan Documents.

Indemnified Parties: As defined in Section 9.1 hereof.

Land: The real property or interest therein described in Exhibit "A" attached hereto and incorporated herein by this reference, together with all right, title, interest, and privileges of Borrower in and to (a) all streets, ways, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to such real property or the improvements thereon; (b) any strips or gores of real property between such real property and abutting or adjacent properties; (c) all water and water rights, timber and crops, pertaining to such real property; and (d) all appurtenances and all reversions and remainders in or to such real property, together with any and all proceeds of any and all of the foregoing.

AL0911F2.MDS    2

Leases: Any and all leases, master leases, subleases, licenses, concessions, or other agreements (written or oral, now or hereafter in effect) which grant to third parties a possessory interest in and to, or the right to use, all or any part of the Mortgaged Property, together with all security and other deposits or payments made in connection therewith and any and all proceeds of any and all of the foregoing.

Legal Requirements: (i) Any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any Guarantor or the Mortgaged Property, whether foreseeable or not and whether structural or not, including, without limiting the generality of the foregoing, the ownership, use, occupancy, possession, operation, maintenance, alteration, repair, reconstruction, sale or other disposition thereof, including, without limitation, any Architectural Barrier Laws, any laws pertaining to health and safety and pollution and protection of the environment, (ii) any and all covenants, conditions, and restrictions contained in any deeds, other forms of conveyance, or in any other instruments of any nature that relate in any way or are applicable to the Mortgaged Property or the ownership, use, or occupancy thereof, (iii) Borrower's, any Constituent Party's or any Guarantor's presently or subsequently effective bylaws and articles of incorporation or partnership, limited partnership, joint venture, trust, or other form of business association agreement, (iv) any and all Leases, (v) any and all Contracts, and (vi) any and all leases, other than those described in (iv) above, and other contracts (written or oral) of any nature that relate in any way to the Mortgaged Property and to which Borrower, any Constituent Party or any Guarantor may be bound, including, without limiting the generality of the foregoing, any lease or other contract pursuant to which Borrower is granted a possessory interest in and to the Land and/or the Improvements.

Lender: The individual or entity described as Lender in the initial paragraph of this Mortgage, and the subsequent holder or holders, from time to time, of the Note.

Loan Documents: The Note, this Mortgage, the Assignment, the Environmental Agreement, the Guaranty, if any, and any and all other documents now or hereafter executed by the Borrower, any Constituent Party or any Guarantor, or any other person or party in connection with the loan evidenced by the Note or to evidence or secure the payment of the Indebtedness or the performance and discharge of the Obligations.

Maintenance Escrow Agreement: That certain Maintenance Escrow Agreement (if any) of even date herewith executed by Borrower and Lender.

Make Whole Price: Has the meaning assigned in the Note.

Material Adverse Effect: Any material and adverse effect on (i) the business condition (financial or otherwise), operations, prospects, results of operations, capitalization, liquidity or any material assets of the Borrower, any Constituent Party or the Guarantor taken as a whole, (ii) the value of the Mortgaged Property, (iii) the ability of Borrower, any Constituent Party or the Guarantor to pay and perform the Indebtedness and the Obligations or (iv) the validity, enforceability or binding effect of any of the Loan Documents.

Maximum Lawful Rate: Has the meaning assigned in the Note.

Minerals: All substances in, on, or under the Land which are now, or may become in the future, intrinsically valuable, that is, valuable in themselves, and which now or may be in the future enjoyed through extraction or removal from the property, including without limitation, oil, gas, and all other hydrocarbons, coal, lignite, carbon dioxide and all other nonhydrocarbon gases, uranium and all other radioactive substances, and gold, silver, copper, iron and all other metallic substances or ores, and any and all proceeds of any and all of the foregoing.

Mortgaged Property: The Land, Minerals, Fixtures, Improvements, Personalty, Contracts, Escrows, Leases and Rents, and any interest of Borrower, now owned or hereafter acquired in and to the Land; Minerals, Fixtures, Improvements, Personalty, Contracts, Escrows, Leases and Rents, together with any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Indebtedness or the performance and discharge of the Obligations. As used in this Mortgage, the term "Mortgaged Property" shall be expressly defined as meaning all or, where the context permits or requires, any portion of the above and all or, where the context permits or requires, any interest therein.

Note: That certain Promissory Note of even date herewith, incorporated herein by this reference, executed by Borrower and payable to the order of Lender in the principal amount of \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Two Million Six Hundred Thirty Thousand\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* and _____ No /100 Dollars ($ 2,630,000.00\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*), bearing interest as therein specified, containing an attorneys' fee clause, interest and principal being payable as therein specified, and finally maturing on ___December 5___, 20 15, and secured by, among other things, this Mortgage; and any and all renewals, modifications, rearrangements, reinstatements, enlargements, or extensions of such Promissory Note or of any promissory note or notes given in renewal, modification, rearrangement, substitution or replacement therefor.

Obligations: Any and all of the covenants, conditions, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower, Guarantor, or any other person or party to the Loan Documents to Lender, Trustee, or others as set forth in the Loan Documents, the Leases, and in any deed, lease, sublease, or other form of conveyance, or any other agreement pursuant to which Borrower is granted a possessory interest in the Land.

Permitted Exceptions: The liens, encumbrances, defects, easements, restrictions, security interests, and other matters (if any) as reflected on Exhibit "B" attached hereto and incorporated herein by reference and the liens and security interests created by the Loan Documents.

Personalty: All of the right, title, and interest of Borrower in and to (i) furniture, furnishings, equipment, machinery, goods (including, but not limited to, crops, farm products, timber and timber to be cut, and extracted Minerals); (ii) general intangibles, money, insurance proceeds, accounts, contract and subcontract rights, trademarks, tradenames, inventory; (iii) all refundable, returnable, or reimbursable fees, deposits or other funds or evidences of credit or indebtedness deposited by or on behalf of Borrower with any governmental agencies, boards, corporations, providers of utility services, public or private, including specifically, but without limitation, all refundable, returnable, or reimbursable tap fees, utility deposits, commitment fees and development costs, any awards, remunerations, reimbursements, settlements, or compensation heretofore made or hereafter to be made by any Governmental Authority pertaining to the Land, Minerals, Improvements, Fixtures, Contracts, Personalty, Escrows or Leases and Rents including but not limited to those for any vacation of, or change of grade in, any streets affecting the Land or the Improvements and those for municipal utility district or other utility costs incurred or deposits made in connection with the Land or the Improvements; and (iv) all other property of any kind or character comprising the Mortgaged Property which is personal property as defined in and subject to the provisions of the Code (Article 9 - Secured Transactions); any and all of which are now owned or leased or hereafter acquired or leased by Borrower, and which are now or hereafter situated in, on, or about the Land or the Improvements, or used in or necessary to the complete and proper planning, development, construction, financing, use, occupancy, or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use in or on the Land or the Improvements, together with all accessions, replacements, and substitutions thereto or therefor and any and all proceeds of any and all of the foregoing.

Remaining Weighted Average Life: Determined by the following method:

AL0911F2.MDS                                       -3-

Use the formula:

$$AL = \frac{I}{P \times R}$$

| | | |
|---|---|---|
| AL | = | The Remaining Weighted Average Life of the Note expressed in years. |
| I | = | The sum of all scheduled interest payments for the remaining life of the Loan. |
| P | = | The current outstanding principal balance of the Loan. |
| R | = | The annual rate of interest on the Note. |

Proceeds: As defined in Section 8.1(a) hereof.

Rents: All of the rents, revenues, income, proceeds, profits, security and other types of deposits, and other benefits paid or payable by parties to the Contracts and/or Leases other than Borrower, for using, leasing, licensing, possessing, operating from, residing in, selling, or otherwise enjoying all or any portion of the Mortgaged Property, together with any and all proceeds of any and all of the foregoing.

State: The state in which the Mortgaged Property is located.

Subordinate Mortgage: Any mortgage, deed of trust, pledge, lien (statutory, constitutional, or contractual), security interest, encumbrance or charge, or conditional sale or other title retention agreement, covering all or any portion of the Mortgaged Property executed and delivered by Borrower, the lien of which is subordinate and inferior to the lien of this Mortgage.

Title Policy: An American Land Title Association Loan Policy of Title Insurance (or if such title insurance policy cannot be obtained in the state in which the Mortgaged Property is located, then such other title insurance policy which is as similar thereto as can be obtained) with extended coverage and such other endorsements thereto as required by Lender and such other endorsements thereto as are typically required with respect to properties similar to the Mortgaged Property, in the amount of the Note, insuring Lender, its successors and assigns, of the first lien status of this Mortgage, subject only to the Permitted Exceptions, and with deletions or modifications thereto as are standard and customary with respect to properties similar to the Mortgaged Property, and issued by a title insurance company approved by Lender authorized to do business in the state in which the Mortgaged Property is situated.

Trustee: The individual described as Trustee in the initial paragraph of this Mortgage.

1.2   Additional Definitions. As used herein, the following terms shall have the following meanings:

(a)   "Hereof," "hereby," "hereto," "hereunder," "herewith," and similar terms mean of, by, to, under and with respect to, this Mortgage or to the other documents or matters being referenced.

(b)   "Heretofore" means before, "hereafter" means after, and "herewith" means concurrently with, the date of this Mortgage.

(c)   All pronouns, whether in masculine, feminine or neuter form, shall be deemed to refer to the object of such pronoun whether same is masculine, feminine or neuter in gender, as the context may suggest or require.

(d)   All terms used herein, whether or not defined in Section 1.1 hereof, and whether used in singular or plural form, shall be deemed to refer to the object of such term whether such is singular or plural in nature, as the context may suggest or require.

## ARTICLE II
## GRANT

2.1   Grant. To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower has GRANTED, BARGAINED, SOLD, MORTGAGED, CONFIRMED, WARRANTED and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, MORTGAGE, CONFIRM, WARRANT and CONVEY, unto Lender and/or Trustee, the Mortgaged Property, subject, however, to the Permitted Exceptions, upon the terms and conditions of this Mortgage and the other Loan Documents, with power of sale and right of entry as provided below, TO HAVE AND TO HOLD the Mortgaged Property unto Lender and/or Trustee, forever, and Borrower does hereby bind itself, its successors, and assigns to WARRANT AND FOREVER DEFEND the title to the Mortgaged Property unto Lender and/or Trustee against every person whomsoever claiming or to claim the same or any part thereof; provided, however, that if Borrower shall pay (or cause to be paid) the Indebtedness as and when the same shall become due and payable and shall fully perform and discharge (or cause to be fully performed and discharged) the Obligations on or before the date same are to be performed and discharged, then the liens, security interests, estates, and rights granted by this Mortgage and the other Loan Documents shall terminate, in accordance with the provisions hereof and thereof, otherwise same shall remain in full force and effect. A certificate or other written statement executed on behalf of Trustee or Lender confirming that the Indebtedness has not been fully paid or the Obligations have not been fully performed or discharged shall be sufficient evidence thereof for the purpose of reliance by third parties on such fact.

## ARTICLE III
## WARRANTIES AND REPRESENTATIONS

Borrower hereby unconditionally warrants and represents to Lender, as of the date hereof and at all times during the term of this Mortgage, as follows:

3.1   Organization and Power. If Borrower or any Constituent Party is a corporation, general partnership, limited partnership, joint venture, trust, limited liability company, limited liability partnership or other type of business association, as the case may be, Borrower and each Constituent Party, if any, (a) is either a corporation duly incorporated, validly existing and in good standing in the state of its formation or existence with a legal status separate from its affiliates, or a partnership or trust, joint venture or other type of business association duly organized, validly existing, and in good standing under the laws of the state of its formation or existence, and has complied with all conditions prerequisite to its doing business in the State, and (b) has all requisite power and all governmental certificates of authority, licenses,

AL0911F2.MDS

4

permits, qualifications, and documentation to own, lease, and operate the Mortgaged Property and its other properties (to the extent same are herein specifically permitted to be owned) and to carry on its business as now being, and as herein contemplated to be, conducted.

3.2  Validity of Loan Documents. The execution, delivery, and performance by Borrower of the Loan Documents (other than the Guaranty), (a) if Borrower, or any Constituent Party, is a corporation, general partnership, limited partnership, joint venture, trust, limited liability company, limited liability partnership or other type of business association, as the case may be, are within Borrower's and each Constituent Party's powers and have been duly authorized by Borrower's and each Constituent Party's board of directors, shareholders, partners, venturers, trustees, or other necessary parties, and all other requisite action for such authorization has been taken, (b) have received any and all requisite prior governmental approvals in order to be legally binding and enforceable in accordance with the terms thereof, and (c) will not violate, be in conflict with, result in a breach of, or constitute (with due notice or lapse of time, or both) a default under or violation of any Legal Requirement or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of Borrower's, and any Constituent Party's or Guarantor's, property or assets, except as contemplated by the provisions of the Loan Documents. The Loan Documents constitute the legal, valid, and binding obligations of Borrower, each Constituent Party and Guarantor, and others obligated under the terms of the Loan Documents, enforceable in accordance with their respective terms.

3.3  Information. All information, financial statements, reports, papers, and data given or to be given to Lender with respect to Borrower, each Constituent Party, Guarantor, others obligated under the terms of the Loan Documents, and the Mortgaged Property are, and at the time of delivery will be, accurate, complete and correct in all material respects and do not, and will not when delivered, omit any fact, the inclusion of which is necessary to prevent the facts contained therein from being materially misleading. Since the date of the financial statements of Borrower, any Constituent Party, and of any Guarantor or other party liable for payment of the Indebtedness or performance of the Obligations or any part thereof which have been heretofore furnished to Lender, no Material Adverse Effect has occurred, and except as heretofore disclosed in writing to Lender, Borrower, each Constituent Party, each Guarantor, and any other such party has not incurred any material liability, direct or indirect, fixed or contingent.

3.4  Title and Lien. Borrower has good and marketable title to the Land (in fee simple, if the lien created hereunder be on the fee, or a first and prior leasehold estate, if the lien be created on the leasehold estate), Minerals, Improvements, Fixtures, Personalty, Contracts, Escrows, Leases and Rents, free and clear of any liens, charges, encumbrances, security interests, claims, easements, restrictions, options, leases, covenants, and other rights, titles, interests, or estates of any nature whatsoever, except the Permitted Exceptions. This Mortgage constitutes a valid, subsisting first lien on the Land, the Minerals, the Improvements, and the Fixtures, a valid, subsisting first priority security interest in and to the Personalty, Contracts, Escrows and to the extent that the terms Leases and Rents include items covered by the Code, in and to the Leases and Rents, and a valid, absolute assignment of the Leases and Rents not covered by the Code, all in accordance with the terms hereof.

3.5  Business Purposes. The loan evidenced by the Note is solely for the business purpose of Borrower, and is not for personal, family, household, or agricultural purposes.

3.6  Taxes. Borrower, each Constituent Party, and Guarantor have filed all federal, state, county, municipal, and city income and other tax returns required to have been filed by them and have paid all taxes and related liabilities which have become due pursuant to such returns or pursuant to any assessments received by them. None of Borrower, any Constituent Party, or Guarantor know of any basis for any additional assessment in respect of any such taxes and related liabilities for prior years. The Mortgaged Property constitutes a separate tax lot.

3.7  Mailing Address. Borrower's mailing address, as set forth in the opening paragraph hereof or as changed pursuant to the provisions hereof, is true and correct.

3.8  Relationship of Borrower and Lender. The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with the Borrower, and no term or condition of any of the Loan Documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

3.9  No Reliance on Lender. Borrower or its Constituent Parties are experienced in the ownership and operation of properties similar to the Mortgaged Property, and Borrower and Lender have and are relying solely upon Borrower's, or its Constituent Parties', expertise and business plan in connection with the ownership and operation of the Mortgaged Property. Borrower is not relying on Lender's expertise or business acumen in connection with the Mortgaged Property.

3.10  No Litigation. Except as disclosed in writing to Lender, there are no (i) actions, suits, or proceedings, at law or in equity, before any Governmental Authority or arbitrator pending or threatened against or affecting Borrower, Guarantor, or any Constituent Party or involving the Mortgaged Property, (ii) outstanding or unpaid judgments against the Borrower, any Guarantor, any Constituent Party, or the Mortgaged Property; or (iii) defaults by Borrower, Guarantor, any Constituent Party or the Mortgaged Property with respect to any order, writ, injunction, decree, or demand of any Governmental Authority or arbitrator.

3.11  Representations Concerning Loan.

(a)  Unless specifically agreed to by Lender in writing, the Note is not now, and will never be, secured by any collateral other than the Mortgaged Property, the Guaranty, and any other collateral which is evidenced, created or secured by the Loan Documents.

(b)  The Note, this Mortgage and the other Loan Documents are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor would the operation of any of the terms of the Note, this Mortgage and the other Loan Documents, or the exercise of any right thereunder, render this Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury.

(c)  All certifications, permits and approvals, including, without limitation, certificates of completion and occupancy permits required pursuant to Legal Requirements for the legal use and occupancy of the Mortgaged Property for its current uses, have been obtained and are in full force and effect. The Mortgaged Property is free of material damage and is in good repair, and there is no proceeding pending or threatened for the total or partial condemnation of, or affecting, the Mortgaged Property.

(d)  All of the Improvements which were included in determining the appraised value of the Mortgaged Property as set forth in the appraisal relied on by Lender in underwriting the Indebtedness (the "Appraisal") have been fully completed and lie wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property, and no easements or other encumbrances upon the Land encroach upon any of the Improvements, so as to affect the value or marketability of the Mortgaged Property except those which are Permitted Exceptions. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

AL0911F2.MDS            5

(e) If this Mortgage operates as a Deed of Trust, a trustee, duly qualified under applicable law to serve as trustee, is properly designated and serving under this Mortgage and, except in connection with a trustee's sale after default by Borrower, no fees or expenses are payable to such trustee by Lender or any transferee thereof.

(f) Borrower is the sole owner of the entire lessor's interest in the Leases. All of the Leases and forms of tenant leases respecting the Mortgaged Property that have been submitted to Lender, and that will be submitted to Lender hereafter, for examination, are true, accurate and complete copies thereof; that certain certified rent roll heretofore provided by Borrower to Lender sets forth a schedule of all Leases now in effect, together with data which is true and correct in all material respects regarding the security deposits and other information respecting each of said Leases; except as specifically permitted to the contrary in writing by Lender, all of such Leases have been entered into as "arms-length" transactions; all of such Leases are valid and in full force and effect enforceable against the tenants thereunder in accordance with their terms, subject to bankruptcy and similar creditor laws and general principles of equity; Borrower has received no notice from any tenant challenging the validity or enforceability of any Lease; Borrower has not collected any rent or other charges under any Lease more than one (1) month in advance; no Lease contains an option to purchase or right of first refusal, except as previously disclosed to Lender; the rents and other income and charges set forth in the Lease are the actual rents, income and charges presently being collected under such leases and none of such rents or other income or charges have been assigned, hypothecated or pledged except as provided herein and in the Assignment of Leases and Rents; Borrower knows of no default on behalf of Borrower or any tenant under any of the Leases and no notice has been received from any tenant claiming any default by Borrower thereunder; there are no modifications or amendments to any of the Leases that have not been disclosed in writing by Borrower to Lender; there are no other agreements in existence, oral or written, which modify the obligations of Borrower or the tenants under the Leases; Borrower has neither committed nor suffered any known act or omission that would constitute a default on its part entitling any tenant to damages, rights of set-off or rights to terminate any Lease, and the tenants under the Leases are currently occupying their leased premises thereunder. No Person has any possessory interest in the Mortgaged Property or right to occupy the same except under and pursuant to the provisions of the Leases.

(g) The survey of the Mortgaged Property delivered to Lender in connection with this Mortgage, has been performed by a duly licensed surveyor or registered professional engineer in the jurisdiction in which the Mortgaged Property is situated, and does not fail to reflect any material matter affecting the Mortgaged Property or the title thereto.

3.12 Flood Status. No part of the Mortgaged Property lies within a "flood hazard area" pursuant to the Flood Disaster Protection Act of 1973, as amended, and regulations promulgated thereunder, and Borrower shall not take, cause or permit any actions or omissions to occur which would have the effect of bringing all or any portion of the Mortgaged Property within a "flood hazard area". If any portion of the Mortgaged Property is hereafter determined or caused to be within a "flood hazard area", then Borrower shall take all actions as may be necessary to remove the Mortgaged Property from the "flood hazard area" or, if removal is not possible, Borrower will obtain flood insurance in compliance with the provisions of Section 4.7 of this Mortgage.

3.13 Legal Requirements. The Mortgaged Property and the use thereof by Borrower and by the tenants under the Leases comply with all Legal Requirements, including without limitation, all Architectural Barriers Laws.

3.14 No Default. No Event of Default or default exists under this Mortgage or any of the other Loan Documents, and no event has occurred and is continuing which with notice or the passage of time or either would constitute an Event of Default under any provision thereof.

3.15 Environmental Matters. Borrower has complied in all respects with the terms of the Environmental Agreement.

3.16 Ingress and Egress. All necessary means of ingress and egress to the Mortgaged Property have been fully completed and dedicated to, and accepted for operation and maintenance by the appropriate municipality or other appropriate entity, and all easements and cross-easements for utilities and egress and ingress, necessary for the full utilization of the Mortgaged Property for its intended purposes, have been duly recorded and perfected.

3.17 ERISA. (i) Borrower is not and will not be "an employee benefit plan" as defined in Section 3(3) of ERISA, which is subject to Title I of ERISA, and the assets of Borrower do not and will not constitute "plan assets" of one or more such plans for purposes of Title I of ERISA; and (ii) Borrower is not and will not be a "governmental plan" within the meaning of Section 3(3) of ERISA, and transactions by or with Borrower are not and will not be subject to state statutes applicable to Borrower regulating investments of and fiduciary obligations with respect to governmental plans.

3.18 Representation and Warranties to be Continuing. All representations and warranties of Borrower set forth in this Mortgage shall be true as of the date hereof and at all times thereafter as if restated in their entirety at all times until the Indebtedness shall be fully paid and all of the Obligations shall be performed.

ARTICLE IV
AFFIRMATIVE COVENANTS

Borrower hereby unconditionally covenants and agrees with Lender, until the entire Indebtedness shall have been paid in full and all of the Obligations shall have been fully performed and discharged, as follows:

4.1 Payment and Performance. Borrower will pay the Indebtedness as and when specified in the Loan Documents, and will perform and discharge all of the Obligations, in full and on or before the dates same are to be performed.

4.2 Existence. Borrower will and will cause each Constituent Party to preserve and keep in full force and effect its existence, rights, franchises, and tradenames, all of which shall be maintained separate and apart from its Affiliates.

4.3 Compliance with Legal Requirements. Borrower will promptly and faithfully comply with, conform to, and obey all Legal Requirements, whether the same shall necessitate structural changes in, improvements to, or interfere with the use or enjoyment of, the Mortgaged Property.

4.4 First Lien Status. Borrower will protect the lien and security interest status of this Mortgage and the other Loan Documents as a first lien on and security interest in the Mortgaged Property and will not permit to be created or to exist in respect of the Mortgaged Property or any part thereof any lien or security interest on a parity with, superior to, or inferior to, any of the liens or security interests hereof, except for the Permitted Exceptions.

4.5 Payment of Impositions. Borrower will duly pay and discharge, or cause to be paid and discharged, the Impositions not later than the earliest to occur of (i) the due date thereof, (ii) the day any fine, penalty, interest, or cost may be added thereto or imposed, or (iii) the day any lien may be filed for the nonpayment thereof (if such day is used to determine the due date of the respective item), and Borrower shall deliver to Lender a written receipt evidencing the payment of the respective Impositions.

4.6    Repair, Rebuild and Restore.  Borrower will keep the Mortgaged Property in first-class order and condition and will make all repairs, replacements, renewals, additions, betterments, improvements, and alterations thereof and thereto, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, which are necessary or reasonably appropriate to keep same in such order and condition.  Without limiting the generality of the foregoing, Borrower shall repair, rebuild and restore the Mortgaged Property following a casualty, whether or not insured, to a condition at least equal in value and quality and general utility as existed immediately prior to such casualty, and Borrower shall repair, rebuild and restore the Mortgaged Property following a partial taking by eminent domain, to the extent practicable as provided in Section 8.2(b).  Borrower will prevent any act, occurrence, or neglect which might impair the value or usefulness of the Mortgaged Property for its intended usage, as herein contemplated.  In instances where repairs, replacements, renewals, additions, betterments, improvements, or alterations are required in and to the Mortgaged Property on an emergency basis to prevent loss, damage, waste, or destruction thereof, Borrower shall proceed to repair, replace, add to, better, improve, or alter same, or cause same to be repaired, replaced, added to, bettered, improved, or altered, notwithstanding anything to the contrary contained in Section 5.2 hereof; provided, however, that in instances where such emergency measures are to be taken, Borrower will notify Lender in writing of the commencement of same and the measures to be taken, and, when same are completed, the completion date and the measures actually taken.

4.7    Insurance.  Borrower will obtain and maintain insurance upon and relating to the Mortgaged Property with such insurers, in such amounts (including the deductible amount) and covering such risks as shall be satisfactory to Lender, from time to time, including but not limited to:

(i)    owner's (and during any period of construction by a third party, contractors') policy of comprehensive general public liability insurance (including automobile coverage);

(ii)    fire and extended coverage insurance against all risks of loss, including collapse, in an amount not less than the full replacement cost of all Improvements, including the cost of debris removal, with annual agreed amount endorsement and sufficient at all times to prevent Borrower from becoming a coinsurer, with no deduction for depreciation, and containing a waiver of subrogation clause;

(iii)    rental loss insurance in an amount not less than the greatest of (A) twelve (12) months of pro forma rents, (B) the period of time during which any tenant would be entitled to Rent abatement under its Lease, or (C) the aggregate of the annual debt service on the Note, and any other financing (including the Subordinate Mortgage) which is consented to by the Lender, the annual ground rents (if all or any portion of the Mortgaged Property is subject to a ground lease), and the normal annual amount of operating expenses of the Mortgaged Property (including, without limitation, ad valorem taxes and assessments), based on the last full calendar year of operations for the Mortgaged Property;

(iv)    if the Mortgaged Property is now or hereafter becomes situated in a "flood hazard area," a flood insurance policy, in an amount equal to the principal amount of the note or the maximum amount available under the National Flood Insurance Act of 1968 and the Flood Disaster Protection Act of 1973, and regulations issued pursuant thereto, as amended from time to time, whichever is less, in form complying with the "insurance purchase requirement" of that act;

(v)    workmen's compensation insurance for Borrower and any general contractor or agent performing any construction work or other services on or with respect to the Mortgaged Property;

(vi)    insurance for "dram shop" liability or otherwise relating to the sale, distribution, furnishing or service of alcoholic beverage, if any alcoholic beverages are sold, distributed, furnished or served at or from the Mortgaged Property;

(vii)    broad form boiler and machinery insurance (without exclusion for explosion) covering all boilers or other pressure vessels, machinery and equipment located in, on or about the Mortgaged Property and insurance against loss of occupancy or use arising from any such breakdown in such amounts as are generally available at premiums and are generally required by institutional lenders for properties similar to the Mortgaged Property;

(viii)    earthquake insurance, if Lender requests such coverage; and

(ix)    such other insurance, if any, as Lender may require from time to time.

Each insurance policy issued in connection herewith shall provide by way of endorsements, riders or otherwise that: (a) with respect to liability insurance, it shall name Lender as an additional insured, with respect to the other insurance, it shall name Lender under a standard noncontributory mortgagee clause providing for such amounts to be payable to Lender as a mortgagee or loss payee and not as a coinsured, and with respect to all policies of insurance carried by each Lessee (as defined in the Assignment) for the benefit of the Borrower, it shall be payable to Lender as Lender's interest may appear; (b) the coverage of Lender shall not be terminated, reduced, or affected in any manner regardless of any breach or violation by Borrower or Lessee of any warranties, declarations, or conditions in such policy; (c) no such insurance policy shall be canceled, endorsed, altered, or reissued to effect a change in coverage for any reason and to any extent whatsoever unless such insurer shall have first given Lender thirty (30) days' prior written notice thereof; and (d) Lender may, but shall not be obligated to, make premium payments to prevent any cancellation, endorsement, alteration, or reissuance, and such payments shall be accepted by the insurer to prevent same, however, Lender shall not be liable for the failure to make such payment or obtain such insurance, or for the amount, coverage or type of insurance contained, the form or legal sufficiency of any such insurance contract, or the solvency of any such insurance company.  In the event of any such payment by Lender, Borrower shall, on demand, reimburse Lender for all sums, advances and reasonable expenses incurred in connection therewith, together with interest thereon at the Default Rate from the date such amounts are advanced until the same are paid to Lender.  Lender shall be furnished with the original of each such initial policy (or a certified copy of such initial policy together with original certificate(s) if the initial policy is a blanket policy) not less than fifteen (15) business days prior to the execution of this Mortgage and the original of each renewal policy (or a certified copy of such renewal policy together with original certificate(s) if the renewal policy is a blanket policy) not less than fifteen (15) days prior to the expiration of the initial, or each immediately preceding renewal policy, together with receipts or other evidence that the premiums thereon have been paid for an additional one (1) year period.  Borrower shall furnish to Lender, on or before thirty (30) days after the close of each of Borrower's fiscal years, a statement certified by Borrower or a duly authorized officer of Borrower of the amounts of insurance maintained in compliance herewith, of the risks covered by such insurance and of the insurance company or companies which carry such insurance and, if requested by Lender, verification of the adequacy of such insurance by an independent insurance broker or appraiser acceptable to Lender.  All insurance policies required under this Mortgage shall be subject to Lender's review and approval and shall be with a company or companies approved by Lender and authorized to do business in the State with a claims paying ability at least equivalent to a National Association of Insurance Commissioners rating of "NAIC 1."  Notwithstanding anything contained in this Section 4.7 to the contrary, if and for so long as (i) Credit Tenant or any guarantor of the Credit Lease has a claims paying ability rating of at least NAIC 1, and (ii) Credit Tenant is permitted by the terms of the Credit Lease to, and elects to, self-insure against the risks covered by the insurance required to be maintained as provided herein, Borrower shall not be required to maintain the insurance set forth in this Section 4.7; provided, that if, at any time hereafter, the claims paying ability rating of Credit Tenant or such guarantor is reduced below a rating of NAIC 1 or is otherwise revoked, Borrower shall, within ten (10) days after the effective date of such downgrading or revocation, obtain and pay for all insurance required to be maintained under this Section 4.7, and deliver to Lender certificates of insurance or, at Lender's option, copies of all policies, evidencing such coverage.

4.8     Inspection. Borrower will permit Trustee and Lender, and their agents, representatives, and employees, to inspect the Mortgaged Property at any and all reasonable times and from time to time.

4.9     Operating Statements; Books and Records. Borrower will maintain full and accurate books of account and other records reflecting the results of the operations of the Mortgaged Property and will furnish, or cause to be furnished, to Lender: (a) on or before ninety (90) days after the end of Borrower's fiscal year a statement of the financial affairs and condition of the Mortgaged Property, certified by Borrower as being true and correct, including a statement of profit and loss for the Mortgaged Property in such reasonable detail as Lender may request, and setting forth the financial condition and the income and expenses for the Mortgaged Property for the immediately preceding financial period and, if requested by Lender, any such financial statement shall be audited by an independent certified public accountant, (b) upon request of Lender, and at Borrower's expense, such interim profit and loss statements and other financial and credit information as Lender may reasonably request with respect to the Mortgaged Property, certified by Borrower as being true and correct and fairly presenting the subject matter thereof, and, if requested by Lender, audited by an independent certified public accountant, (c) within fifteen (15) days after the end of each fiscal year (or each fiscal quarter to the extent the Mortgaged Property is used for multi-family purposes), or more often upon request of Lender, a written statement (rent roll), certified by Borrower as being true and correct, identifying each of the Leases by the term, the space occupied, the rental or other payment required thereunder, any security paid, and any rental concessions (including, but not limited to free rent periods, moving allowances, above standard tenant improvement allowances, etc.) as to each of the Leases, (d) upon request by Lender, a certificate by Borrower certifying that, as of the date thereof, there does or does not (as the case may be) exist an event which constitutes, or which upon due notice or lapse of time or both would constitute, an Event of Default and, if an Event of Default exists, specifying the nature thereof, and (e) immediate notice of any Material Adverse Effect. At any time and from time to time Borrower shall deliver to Lender or its agents such other financial data as Lender or its agents shall reasonably request with respect to the ownership, maintenance, use and operation of the Mortgaged Property, and Lender shall have the right, at reasonable times and upon reasonable notice, to audit, examine, make and take away copies or extracts of Borrower's books of account and records relating to the Mortgaged Property, all of which shall be maintained and made available to Lender and Lender's agents for such purpose at the address specified herein for Borrower or at such other location as Lender may approve. Upon Lender's request, Borrower shall also furnish Lender with convenient facilities and all books and records necessary for an audit of such statements.

4.10    Financial Statements. Borrower shall, from time to time, upon the request of Lender, promptly furnish or cause to be furnished to Lender financial statements of Borrower, each Constituent Party and each Guarantor prepared in accordance with generally accepted accounting principles consistently applied certified by Borrower, each Constituent Party and each Guarantor, as applicable, as true and correct, and, if requested by Lender, certified by an independent certified public accountant and allow Lender from time to time to inspect all books and records relating to Borrower's, each Constituent Party's and each Guarantor's, as applicable, financial condition or to the Indebtedness, and to make and take away copies of such books and records. If Borrower, any Constituent Party or any Guarantor is a partnership, joint venture, trust or other type of business association, Borrower, each Constituent Party or each Guarantor shall provide Lender with any and all financial statements and other documents and make any and all disclosures to Lender with respect to any of the entities comprising or having an ownership interest therein, as Borrower, any Constituent Party or any Guarantor is required to provide and make, and in the manner required to be provided and made, with respect to Borrower, any Constituent Party or any Guarantor pursuant to this Section. Borrower shall also promptly deliver to Lender copies of all financial statements and similar reporting material required to be delivered to Borrower by the tenants under the Leases.

4.11    Payment for Labor and Materials. Borrower will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials incurred in connection with the Mortgaged Property and never permit to exist beyond the due date thereof in respect of the Mortgaged Property or any part thereof any lien or security interest, even though inferior to the liens and security interests hereof, and in any event never permit to be created or exist in respect of the Mortgaged Property or any part thereof any other or additional lien or security interest on a parity with, superior, or inferior to any of the liens or security interests hereof, except for the Permitted Exceptions.

4.12    Further Assurances and Corrections. From time to time, at the request of Lender, Borrower will (i) promptly correct any defect, error, or omission which may be discovered in the contents of this Mortgage or in any other Loan Document or in the execution or acknowledgment thereof; (ii) execute, acknowledge, deliver, record and/or file such further instruments (including, without limitation, further mortgages, deeds of trust, security agreements, financing statements, continuation statements and assignments of rents or leases) and perform such further acts and provide such further assurances as may be necessary, desirable, or proper, in Lender's opinion, to carry out more effectively the purposes of this Mortgage and the Loan Documents and to subject the Mortgaged Property to the liens and security interests hereof and thereof to be covered hereby and thereby, including without limitation, any renewals, additions, substitutions, replacements, or appurtenances to the Mortgaged Property; (iii) execute, acknowledge, deliver, procure, file, and/or record any document or instrument (including without limitation, any financing statement) deemed advisable by Lender to protect the liens and the security interests herein granted against the rights or interests of third persons; and (iv) pay all costs connected with any of the foregoing.

4.13    Tax on Mortgage. At any time any law shall be enacted imposing or authorizing the imposition of any tax upon this Mortgage, or upon any rights, titles, liens, or security interests created hereby, or upon the Indebtedness or any part thereof, Borrower will immediately pay all such taxes; provided, however, that if such law makes it unlawful for Borrower to pay such tax, then (i) Borrower shall not pay nor be obligated to pay such tax, and (ii) Borrower must prepay the Indebtedness in full within sixty (60) days after demand therefor by Lender.

4.14    Statement of Unpaid Balance. At any time and from time to time, Borrower will furnish promptly, upon the request of Lender, a written statement or affidavit, in form satisfactory to Lender, confirming the unpaid balance of the Indebtedness and that there are no offsets or defenses against full payment of the Indebtedness and the terms hereof, or if there are any such offsets or defenses, specifying them.

4.15    Expenses. Subject to the provisions of Section 12.11 hereof, Borrower will pay on demand all reasonable and bona fide out-of-pocket costs, fees, and expenses and other expenditures, including, but not limited to, reasonable attorneys' fees and expenses, paid or incurred by Lender or Trustee to third parties incident to this Mortgage or any other Loan Document (including without limitation, reasonable attorneys' fees and expenses in connection with the negotiation, preparation, and execution hereof and of any other Loan Document and any amendment hereto or thereto, any release hereof, any consent, approval or waiver hereunder or under any other Loan Document, the making of any advance under the Note, and any suit to which Lender or Trustee is a party involving this Mortgage or the Mortgaged Property) or incident to the enforcement of the Indebtedness or the exercise of any right or remedy of Lender under any Loan Document.

4.16    Management. Any replacement or successor manager of the Mortgaged Property shall have demonstrated management experience of a type similar to the management of the Mortgaged Property as of the date hereof and shall be subject to the reasonable approval of Lender. Any replacement or successor exclusive leasing agent for the Mortgaged Property, if other than Borrower or such property manager approved by Lender, shall have demonstrated leasing experience of a type similar to the leasing at the Mortgaged Property as of the date hereof and shall be subject to the reasonable approval of Lender.

4.17    Bankruptcy Remoteness. The Borrower represents, warrants, covenants and agrees that:

AL0911F2.MDS                                                                                8

(a) The Borrower's capital is adequate for its business and undertakings; the Borrower maintains correct and complete books and records of account in accordance with generally accepted accounting principles consistently applied and such books and records are separate from those of all other persons, entities, shareholders, partners and/or affiliates (each a "Person"); the Mortgaged Property and the Borrower's interest under the Credit Lease represent all of the assets owned and leased by the Borrower; and Borrower does not and will not commingle its assets and its liabilities with those of any other Person.

(b) The Borrower maintains its checking and other accounts, if any, with commercial banking institutions separate from any other Person.

(c) To the extent that the Borrower (i) shares the same officers or other employees with any other Person, (ii) jointly contracts with any other Person to do business with vendors or service providers or to share overhead expenses, (iii) contracts or does business with vendors or service providers where the goods or services provided are or shall be partially for the benefit of any other Person, (iv) or its shareholders, partners or affiliates have offices in the same location, then in each such case there is and will be a fair, appropriate and non-arbitrary allocation of expense among them with the result that each bears its fair share of such expenses.

(d) The Borrower has not assumed and will not assume liability for the debts of any other Person and will not hold itself out as being liable for the debts of any Person. None of the liabilities of the Borrower are or will be paid from the funds of any other Person without the Borrower being obligated therefor; provided, however, that a shareholder or a partner may make capital contributions to the Borrower.

(e) The Borrower is not a party to any guaranties and will not otherwise guaranty the debt or performance of any obligation of any other Person. No affiliate of the Borrower has guarantied any of the debts or performance of any obligation of the Borrower.

(f) The Borrower is not and will not be a party to a pledge of its assets for the benefit of any of its shareholders, partners, or affiliates and no shareholder, partner or affiliate is or will be a party to a pledge of its assets for the benefit of the Borrower.

(g) The Borrower issues separate financial statements prepared not less frequently than annually and according to generally accepted accounting principles consistently applied.

(h) The Borrower conducts and will conduct its affairs strictly in accordance with its organizational documents, and observes and will observe all necessary, appropriate and customary corporate or partnership or other applicable formalities. The books, records and accounts of the Borrower are and will be maintained in a manner permitting the assets and liabilities of the Borrower to be easily separated and readily ascertained from those of any other Person.

(i) The Borrower does not and will not hold itself out to the public or to any of its individual creditors as being a unified entity with assets and liabilities in common with any other Person.

(j) Prior to and immediately after consummation of the loan the Borrower will (i) be solvent, (ii) be able to pay its obligations as they become due and (iii) not be engaged in any business or transaction for which its remaining capital is or may be unreasonably small.

(k) The Borrower has no actual intent to hinder, delay or defraud creditors in connection with the loan, nor does the Borrower have any intent to incur (or a belief that it is incurring) any liability that is beyond its ability to pay as such liability matures.

(l) The Borrower will not (i) commence any case under any Debtor Relief Laws, seeking to have an order for relief entered with respect to it, or seeking reorganization, arrangement, adjustment, winding up, liquidation, dissolution, composition or other relief with respect to it or its debts, or (ii) seek appointment of a receiver or other similar official for it or for all or any substantial part of its assets, or make a general assignment for the benefit of its creditors. The Borrower will not take any action in furtherance of or indicating its consent to, approval of or acquiescence in any of the acts set forth above.

4.18  Notice of Certain Occurrences. Borrower shall give notice to Lender promptly upon the occurrence of:

(a) the receipt by Borrower of any notice indicating that a default by Borrower has occurred under any Lease;

(b) the giving by Borrower of any notice alleging that a default has occurred under any Lease;

(c) the receipt by Borrower of any notice or the giving by Borrower of any notice which alleges that the Mortgaged Property, or any portion thereof does not comply with any Legal Requirement;

(d) any Event of Default or any event which with the giving of notice or passage of time, or both, would constitute an Event of Default; and

(e) any Material Adverse Effect of which Borrower has knowledge.

4.19  Maintain Leases, etc. Borrower shall promptly perform and fulfill, or cause to be performed and fulfilled, each and every covenant, duty and obligation imposed upon Borrower as lessor under any Lease, and will do all things necessary to preserve and keep unimpaired the rights, powers and privileges, of the landlord under all Leases. Borrower will not enter into any new Lease with respect to all or any portion of the Mortgaged Property or extend or renew the term of any Lease, or increase the premises demised under any Lease, or renew or extend the term of any Lease without the prior written consent of Lender. Borrower shall not (a) execute an assignment of the Rents or profits or any part thereof, except to Lender, (b) accept payments of any installments of Rent for more than one (1) month in advance of the period for which it accrues under any Lease, but nothing herein shall prohibit the acceptance of any security deposits for the performance of the tenant's obligations thereunder provided the same are held in segregated accounts, (c) consent to the cancellation, termination or surrender of any Lease, (d) alter, amend, modify or change any Lease, (or waive any provisions thereof) or (e) release any party from the performance or observance of any obligations under any Lease or any guaranty thereof. Borrower shall promptly furnish to Lender, upon a request by Lender to do so, a copy of any Lease. Borrower shall furnish to Lender such information with respect to any Leases and the tenants thereunder as Lender may from time to time request.

## ARTICLE V
## NEGATIVE COVENANTS

Borrower hereby unconditionally covenants and agrees with Lender, until the entire Indebtedness shall have been paid in full and all of the Obligations shall have been fully performed and discharged, as follows:

AL0911F2.MDS                                    9

5.1     Use Violations. Borrower will not use, maintain, operate, or occupy, or allow the use, maintenance, operation, or occupancy of, the Mortgaged Property in any manner which (a) violates any Legal Requirement, (b) may be dangerous unless safeguarded as required by law and/or appropriate insurance, (c) constitutes a public or private nuisance, or (d) makes void, voidable, or cancelable, or increases the premium of, any insurance then in force with respect thereto.

5.2     Waste; Alterations. Borrower will not commit or permit any waste or impairment of the Mortgaged Property and will not (subject to the provisions of Sections 4.3 and 4.6 hereof), without the prior written consent of Lender, make or permit to be made any alterations or additions to the Mortgaged Property of a structural or material nature.

5.3     Replacement of Fixtures and Personalty. Borrower will not, without the prior written consent of Lender, permit any of the Fixtures or Personalty to be removed at any time from the Land or Improvements unless the removed item is removed temporarily for maintenance and repair or, if removed permanently, is replaced by an article of equal utility and value, owned by Borrower free and clear of any lien or security interest, except as may be approved in writing by Lender.

5.4     Change in Zoning. Borrower will not seek or acquiesce in a zoning reclassification of all or any portion of the Mortgaged Property or grant or consent to any easement, dedication, plat, or restriction (or allow any easement to become enforceable by prescription or laches), or any amendment or modification thereof, covering all or any portion of the Mortgaged Property, without Lender's prior written consent.

5.5     No Drilling. Borrower will not, without the prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any Minerals from the surface or subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

5.6     No Disposition. Borrower will not make or allow to occur a Disposition without obtaining Lender's prior written consent to the Disposition. It is expressly agreed that Lender may predicate Lender's decision to grant or withhold consent to a Disposition on such terms and conditions as Lender may require, in Lender's sole discretion, including without limitation (i) consideration of the creditworthiness of the party to whom such Disposition will be made, its organizational structure and its management ability with respect to the Mortgaged Property, (ii) consideration of whether the security for repayment of the Indebtedness and the performance and discharge of the Obligations, or Lender's ability to enforce its rights, remedies, and recourses with respect to such security, will be impaired in any way by the proposed Disposition, (iii) an increase in the rate of interest payable under the Note or any other change in the terms and provisions of the Note and other Loan Documents, (iv) reimbursement of Lender for all costs and expenses incurred by Lender in investigating the creditworthiness and management ability of the party to whom such Disposition will be made and in determining whether Lender's security will be impaired by the proposed Disposition, (v) payment to Lender of a transfer fee, (vi) payment of Lender's reasonable attorneys' fees in connection with such Disposition, (vii) the express assumption of payment of the Indebtedness and performance and discharge of the Obligations by the party to whom such Disposition will be made (with or without the release of Borrower from liability for such Indebtedness and Obligations), (viii) the execution of assumption agreements, modification agreements, supplemental loan documents, and financing statements, satisfactory in form and substance to Lender, (ix) endorsements (to the extent available under applicable law) to any existing mortgagee title insurance policies insuring Lender's liens and security interests covering the Mortgaged Property, (x) compliance with the terms and provisions of the Loan Documents (including, without limitation, Section 4.18 of this Mortgage) by the parties to whom such Disposition is to be made, (xi) require additional security for the payment of the Indebtedness and performance and discharge of the Obligations and (xii) the conditions and requirements of any nationally recognized statistical rating agency assigning a rating to the Mortgage or securities backed by the Mortgage.

5.7     No Subordinate Mortgages. Borrower will not create, place, or permit to be created or placed, or through any act or failure to act, acquiesce in the placing of, or allow to remain any Subordinate Mortgage, regardless of whether such Subordinate Mortgage is expressly subordinate to the liens or security interests of the Loan Documents with respect to the Mortgaged Property, other than the Permitted Exceptions.

ARTICLE VI
EVENTS OF DEFAULT

The term "Event of Default," as used herein and in the Loan Documents, shall mean the occurrence or happening, at any time and from time to time, of any one or more of the following:

6.1     Payment of Indebtedness. If Borrower shall fail, refuse, or neglect to pay, in full, any installment or portion of the Indebtedness or any sums to be paid with respect to any Impositions or any insurance premiums, or any amounts to be deposited on account thereof pursuant to Section 8.3 of this Mortgage or on account of capital expenditures pursuant to the Maintenance Escrow Agreement (i) within five (5) days of the date same shall become due and payable, as stipulated in the Loan Documents, or (ii) upon acceleration or when the Indebtedness shall otherwise become due and payable.

6.2     Performance of Obligations. If Borrower shall fail, refuse or neglect to comply with, perform and discharge fully and timely any of the Obligations as and when called for, and such failure, refusal or neglect to perform or discharge the Obligations continues uncured for thirty (30) days after notice thereof from Lender to Borrower.

6.3     False Representation. If any representation, warranty, or statement made by Borrower, Guarantor, or others in, under, or pursuant to the Loan Documents or any affidavit or other instrument executed or delivered with respect to the Loan Documents or the Indebtedness is determined by Lender to be false or misleading in any material respect as of the date hereof or thereof or shall become so at any time prior to the repayment in full of the Indebtedness.

6.4     Default Under Other Lien Document. If Borrower shall default or commit an event of default under any other mortgage or security agreement which covers or affects any part of the Mortgaged Property.

6.5     Insolvency; Bankruptcy. If Borrower (i) shall execute an assignment for the benefit of creditors or an admission in writing by Borrower of Borrower's inability to pay, or Borrower's failure to pay, debts generally as the debts become due; or (ii) shall allow the levy against the Mortgaged Property or any part thereof, of any execution, attachment, sequestration or other writ which is not vacated within sixty days after the levy; or (iii) shall allow the appointment of a receiver, trustee or custodian of Borrower or of the Mortgaged Property or any part thereof, which receiver, trustee or custodian is not discharged within sixty (60) days after the appointment; or (iv) files as a debtor a petition, case, proceeding or other action pursuant to, or voluntarily seeks the benefit or benefits of any Debtor Relief Law, or takes any action in furtherance thereof; or (v) files either a petition, complaint, answer or other instrument which seeks to effect a suspension of, or which has the effect of suspending any of the rights or powers of Lender or Trustee granted in the Note, herein or in any other Loan Document; or (vi) allows the filing of a petition, case, proceeding or other action against Borrower as a debtor under any Debtor Relief Law or seeks appointment of a receiver, trustee, custodian or liquidator of Borrower or of the Mortgaged Property, or any part thereof, or of any significant portion of Borrower's other property; and (a) Borrower admits, acquiesces in or fails to contest diligently the material allegations thereof, or (b) the petition, case, proceeding or other action results in the entry of an order for relief or order granting the relief sought

against Borrower, or (c) the petition, case, proceeding or other action is not permanently dismissed or discharged on or before the earlier of trial thereon or thirty (30) days following the date of filing.

6.6   **Dissolution; Disability.** If Borrower, any Constituent Party, or any Guarantor, shall die, dissolve, terminate or liquidate, or merge with or be consolidated into any other entity, or become permanently disabled.

6.7   **Further Encumbrances.** If Borrower creates, places, or permits to be created or placed, or through any act or failure to act, acquiesces in the placing of, or allows to remain, any Subordinate Mortgage, with respect to the Mortgaged Property, regardless of whether such Subordinate Mortgage is expressly subordinate to the liens or security interests of the Loan Documents, with respect to the Mortgaged Property, other than the Permitted Exceptions.

6.8   **Disposition of Mortgaged Property and Beneficial Interest in Borrower.** If a Disposition occurs, without the prior written consent of Lender.

6.9   **Condemnation.** If any condemnation proceeding is instituted or threatened which would, in Lender's sole judgment, materially impair the use and enjoyment of the Mortgaged Property for its intended purposes.

6.10   **Destruction of Improvements.** If the Mortgaged Property is demolished, destroyed, or substantially damaged so that, in Lender's judgment, it cannot be restored or rebuilt with available funds to the condition existing immediately prior to such demolition, destruction, or damage within a reasonable period of time.

6.11   **Material Adverse Change.** If Lender reasonably determines that any event shall have occurred that could be expected to have a Material Adverse Effect.

6.12   **Abandonment.** If Borrower abandons all or any portion of the Mortgaged Property.

6.13   **Guarantor's or Constituent Party's Default.** The occurrence of any event referred to in Sections 6.5 and 6.11 hereof with respect to any Guarantor, Constituent Party or other person or entity obligated in any manner to pay or perform the Indebtedness or Obligations, respectively, or any part thereof (as if such Guarantor, Constituent Party or other person or entity were the "Borrower" in such Sections).

6.14   **Lease Default.** The occurrence of an event of default under any Lease.

## ARTICLE VII
## REMEDIES

7.1   **Lender's Remedies Upon Default.** Upon the occurrence of an Event of Default or any event or circumstance which, with the lapse of time, or the giving of notice, or both, would constitute an Event of Default, Lender may, at Lender's option, and by or through Trustee, by Lender itself or otherwise, do any one or more of the following:

(a)   **Right to Perform Borrower's Covenants.** If Borrower has failed to keep or perform any covenant whatsoever contained in this Mortgage or the other Loan Documents, Lender may, but shall not be obligated to any person to do so, perform or attempt to perform said covenant, and any payment made or expense incurred in the performance or attempted performance of any such covenant shall be and become a part of the Indebtedness, shall be secured hereby, and Borrower promises, upon demand, to pay to Lender, at the place where the Note is payable, all sums so advanced or paid by Lender, with interest from the date when paid or incurred by Lender at the Default Rate. No such payment by Lender shall constitute a waiver of any Event of Default. In addition to the liens and security interests hereof, Lender shall be subrogated to all rights, titles, liens, and security interests securing the payment of any debt, claim, tax, or assessment for the payment of which Lender may make an advance, or which Lender may pay.

(b)   **Right of Entry.** Lender may, prior or subsequent to the institution of any foreclosure proceedings, enter upon the Mortgaged Property, or any part thereof, and take exclusive possession of the Mortgaged Property and of all books, records, and accounts relating thereto and exercise without interference from Borrower any and all rights which Borrower has with respect to the management, possession, operation, protection, or preservation of the Mortgaged Property, including without limitation the right to rent the same for the account of Borrower and to deduct from such Rents all costs, expenses, and liabilities of every character incurred by the Lender in collecting such Rents and in managing, operating, maintaining, protecting, and preserving the Mortgaged Property and to apply the remainder of such Rents on the Indebtedness in such manner as Lender may elect. All such costs, expenses, and liabilities incurred by the Lender in collecting such Rents and in managing, operating, maintaining, protecting, or preserving the Mortgaged Property, if not paid out of Rents as hereinabove provided, shall constitute a demand obligation owing by Borrower and shall bear interest from the date of expenditure until paid at the Default Rate, all of which shall constitute a portion of the Indebtedness. If necessary to obtain the possession provided for above, the Lender may invoke any and all legal remedies to dispossess Borrower, including specifically one or more actions for forcible entry and detainer, trespass to try title, and restitution. In connection with any action taken by the Lender pursuant to this subsection, the Lender shall not be liable for any loss sustained by Borrower resulting from any failure to let the Mortgaged Property, or any part thereof, or from any other act or omission of the Lender in managing the Mortgaged Property unless such loss is caused by the willful misconduct of the Lender, nor shall the Lender be obligated to perform or discharge any obligation, duty, or liability under any Lease or under or by reason hereof or the exercise of rights or remedies hereunder. Borrower shall and does hereby agree to indemnify the Lender for, and to hold the Lender harmless from, any and all liability, loss, or damage, which may or might be incurred by the Lender under any such Lease or under or by reason hereof or the exercise of rights or remedies hereunder, and from any and all claims and demands whatsoever which may be asserted against the Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any such Lease. Should the Lender incur any such liability, the amount thereof, including without limitation costs, expenses, and reasonable attorneys' fees, together with interest thereon from the date of expenditure until paid at the Default Rate, shall be secured hereby, and Borrower shall reimburse the Lender therefor immediately upon demand. Nothing in this subsection shall impose any duty, obligation, or responsibility upon the Lender for the control, care, management, leasing, or repair of the Mortgaged Property, nor for the carrying out of any of the terms and conditions of any such Lease; nor shall it operate to make the Lender responsible or liable for any waste committed on the Mortgaged Property by the tenants or by any other parties, or for any Hazardous Substance on or under the Mortgaged Property, or for any dangerous or defective condition of the Mortgaged Property or for any negligence in the management, leasing, upkeep, repair, or control of the Mortgaged Property resulting in loss or injury or death to any tenant, licensee, employee, or stranger. Borrower hereby assents to, ratifies, and confirms any and all actions of the Lender with respect to the Mortgaged Property taken under this subsection.

The remedies in this subsection are in addition to all other remedies available to the Lender and the exercise of the remedies in this subsection shall not be deemed to be an election of nonjudicial or judicial remedies otherwise available to the Lender. Any consideration received by Lender pursuant to this subsection not needed to pay the costs and expenses incurred by Lender (with interest thereon as aforesaid) shall be immediately credited against the Indebtedness (in the inverse order of maturity) and the value of said consideration shall be treated like any other payment against the Indebtedness.

AL0911F2.MDS

11

as otherwise provided herein, on all of the Mortgaged Property not expressly released until the Indebtedness is fully paid and the Obligations are fully performed and discharged.

12.18 **Headings.** The Article, Section, and Subsection headings hereof are inserted for convenience of reference only and shall in no way alter, modify, or define, or be used in construing the text of such Articles, Sections, or Subsections.

12.19 **No Representation by Trustee or Lender.** By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the Loan Documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness, or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

12.20 **Brokerage Fees.** Borrower agrees to indemnify and hold Lender harmless from any responsibility and/or liability for the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the loan evidenced by the Note and this Mortgage or refinancing of any prior indebtedness, if applicable, based upon any action taken by Borrower. It is understood that any commissions, charges or brokerage fees shall be paid directly by Borrower to the parties entitled to such commissions, charges or fees.

12.21 **Commingling of Funds.** No sums collected or retained by Lender shall be deemed to be held in trust, and Lender may commingle any and all such funds or proceeds with its general assets and shall not be liable for the payment of any interest or other return thereon, except to the minimum extent required by law.

12.22 **No Waiver of Prepayment Premium.** Upon the acceleration of the maturity of the Indebtedness as herein provided, a tender of payment of the amount necessary to pay the entire Indebtedness in full made by Borrower, or by anyone on behalf of the Borrower, shall constitute an evasion of the prepayment terms of the Note and shall be deemed to be a voluntary prepayment under the Note and any such payment to the extent permitted by law, will therefore include the additional sum required under the prepayment privilege, if any, contained in the Note.

12.23 **Destruction of Note.** If the Note or this Mortgage is mutilated or destroyed by any cause whatsoever, or otherwise lost or stolen and regardless of whether due to any act or neglect of Lender or Trustee, Borrower will execute and deliver to Lender in substitution for the Note or Mortgage a duplicate promissory note within ten (10) days after Lender advises Borrower in writing of any such mutilation, destruction, loss or theft. Any such new promissory note will (i) be in full substitution for the Note or Mortgage, (ii) not constitute new or additional indebtedness of Borrower to Lender, (iii) constitute solely a substitute evidence of the Indebtedness evidenced by the original Note or the security granted by the Mortgage, and (iv) not affect in any manner the priority of this Mortgage or of any of the other Loan Documents.

12.24 **Assignment; Participation.** Lender may, (i) from time to time designate a servicer or other entity to act on Lender's behalf in connection with the Loan Documents and (ii) at any time, sell, transfer, assign or grant participations in the Note, this Mortgage and the other Loan Documents, and Lender may forward to each designee, assignee or participant, and each prospective designee, assignee or participant, all documents and information which Lender now has or may hereafter acquire relating to the Indebtedness or Obligations and to Borrower, any Constituent Party, any Guarantor, and the Mortgaged Property, whether furnished by Borrower, any Constituent Party, any Guarantor or otherwise, as Lender reasonably determines necessary or desirable. Borrower shall furnish any and all information concerning the Mortgaged Property, Leases, the financial condition of Borrower and the Mortgaged Property as may be reasonably requested by Lender or any designee, assignee, or participant in connection with any sale, transfer, participation interest or servicer designation. All such information shall be in such form, substance and detail as Lender, or such designee, assignee or participant, may require. Upon any transfer to an assignee or participant, at Lender's request, Borrower shall provide an estoppel certificate to the assignee or participant in form and content reasonably satisfactory to Lender.

12.25 **Representation by Legal Counsel.** Borrower acknowledges that it has been advised by Lender to seek the advice of legal counsel in connection with the negotiation and preparation of the Loan Documents. If Borrower has chosen not to obtain legal representation, whether due to cost considerations or for other reasons, the lack of such representation will not furnish Borrower with any defense to the enforcement of Borrower's obligations under the Loan Documents.

12.26 **Entire Agreement; Amendment.** THIS MORTGAGE (INCLUDING ANY ADDENDUMS HERETO) AND THE OTHER LOAN DOCUMENTS EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSION OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO. Except for an Addendum to this Mortgage (if any) executed by Borrower contemporaneously herewith, the provisions of this Mortgage and the Loan Documents may be amended or waived only by an instrument in writing signed by the Borrower and Lender.

12.27 **Waiver of Right to Trial by Jury.** BORROWER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY LENDER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF THIS MORTGAGE OR THE OTHER LOAN DOCUMENTS.

12.28 **Credit Lease Obligations.** Borrower, as lessor, has entered into a lease (the "Credit Lease") dated February 24, 1995 with Winn-Dixie Montgomery, Inc. (the "Credit Tenant"), as lessee. The Credit Lease provides that the Credit Tenant is responsible for performing certain duties and obligations for which Borrower is also responsible under the Loan Documents. Lender agrees that Lender will accept performance of such duties and obligations by the Credit Tenant, to the extent that such performance fulfills the Borrower's duties and obligations under the Loan Documents. Notwithstanding any performance or non-performance by the Credit Tenant, Borrower shall remain fully responsible for performing (or confirming performance of) all its duties and obligations under the Loan Documents.

12.29 **Credit Lease Conflict of Terms.** In the event that the duties and obligations of Borrower under the Loan Documents cannot be interpreted in concert or cumulative with the duties and obligations of Borrower under the Credit Lease and only to the extent of unavoidable conflict, the duties and obligations of the Borrower under the Credit Lease shall govern and supersede the duties and obligations of Borrower under the Loan Documents. It is the specific intention of Borrower and Lender that Borrower shall be responsible for performance of all its duties and obligations under the Loan Documents to the fullest extent possible.

12.30 "Lease" References. All references to "Leases" in the Mortgage, including, without limitation, in Section 1.1, Section 3.11(f), Section 4.19 and Section 10.1 shall refer to the Credit Lease. In addition, the occurrence of an event of default under the Credit Lease shall be an Event of Default under the Mortgage, as provided in Section 6.14.

EXECUTED and sealed as of the date first above written.

[ADD APPROPRIATE SIGNATURES AND NOTARY ACKNOWLEDGMENTS]

_____
BYRAM E. DICKES


STATE OF ILLINOIS  )
  COOK    COUNTY  )

I, the undersigned, a Notary Public, in and for said County, in said State, do hereby certify that BYRAM E. DICKES, an individual whose name is signed to the foregoing document, and who is known to me, acknowledged before me on this day, that, being informed of the contents of said document, he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 30th day of November, 1995.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

OFFICIAL SEAL
MARY D. KLAUS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-8-97

AL0911F2.MDS                                22