UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,                    Case No**:** 3-05-bk-03817-JAF
                                                     Chapter 11

　　　　Debtors.[1]

_____/                    Jointly Administered

### UNITED STATES TRUSTEE'S
### OBJECTION TO JOINT PLAN OF REORGANIZATION
### OF WINN-DIXIE STORES, INC. AND AFFILIATED DEBTORS

COMES NOW, Felicia S. Turner, United States Trustee for Region 21, by and through

her undersigned counsel, and objects to the Joint Plan of Reorganization of Winn-Dixie Stores,

Inc. and Affiliated Debtors, and states:

1.  Pursuant to 28 U.S.C. § 586, the United States Trustee is charged with the

administrative oversight of cases commenced pursuant to Title 11, United States Code (the

"Bankruptcy Code").

2.  On August 4, 2006, the Court approved the Debtors' Disclosure Statement With

Respect to Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors

(Docket No.: 10058) (the "Disclosure Statement"), and set the confirmation hearing on the Joint

Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan") for

October 13, 2006 at 9:00 a.m.  All objections to confirmation are required to be filed prior to

---

[1]In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc.,  Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montogomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixies Supermarkets, Inc. (the"Debtors").

September 25, 2006 at 4:00 p.m.

3.  Pursuant to 11 U.S.C. § 307, the United States Trustee has standing to object to provisions of the Debtors' Plan which fail to comply with the Bankruptcy Code.

## Objection to Section 12.3 of the Plan

4.   The United States Trustee objects to section 12.3 of the Plan as it circumvents the requirements of the Bankruptcy Code regarding the payment of professional fees without court review under 11 U.S.C. § 330 or 11 U.S.C. § 503.

5.   The Plan embodies a compromise and settlement of inter-creditor issues relating to whether or not the assets of the Debtors should be substantively consolidated for purposes of distribution.  This compromise (hereinafter the "Substantive Consolidation Compromise"),[2] consolidates the separate chapter 11 cases of the Debtors for purposes of distribution but does not result in a merger or otherwise affect the separate, legal existence of each Debtor.  As part of the Substantive Consolidation Compromise, section 12.3 of the Plan provides for the Debtors to pay reasonable fees and expenses of professionals retained by certain named creditors  in connection with the efforts of such creditors.  This section sets out a cap to be paid to the professionals that have been retained by (a) the members of the Official Committee of Unsecured Creditors (the "Creditors' Committee") in an aggregate amount not exceeding $1,410,000; (b) the members of the ad hoc committee of trade vendors in an amount not exceeding $1,300,000; and, (c) the

---

[2]See Article II of the Plan.

members of the ad hoc committee of retirees in an amount not exceeding $50,000.[3]  Section 12.3

of the Plan specifically provides that the members shall not be required to file fee applications or

comply with the guidelines and rules applicable to fee applications, and shall not be subject to

section 330 or 503(b) of the Bankruptcy Code.  Court review is only available in the event the

Debtor disputes a portion of the fees and expenses.  The United States Trustee objects to this fee

portion of the Substantive Consolidation Compromise as being neither fair nor equitable as it

circumvents this Court's authority to review fees.

6.  Section 1103(a) of the Bankruptcy Code permits an appointed committee of creditors

to select the employment of attorneys, accountants or other agents to represent or perform

services for the committee.  The appointment is subject to court approval. No provision of the

---

[3]On page 55 of the Disclosure Statement, the Debtors have included the names of the
professionals and the parties they are representing.   The applicable paragraph states:

"The professionals representing the members of the Creditors Committee (in their
capacity as a member of the Creditors Committee), and capped fees and expenses are as
follows: (a) FTI Consulting, Inc. and DLA Piper Rudnick Gray Cary US LLP (up to
$100,000 in the aggregate), providing financial advisory and legal services to Kraft
Foods Global, Inc. and Pepisco & Subsidiaries; (b) Imperial Capital LLC (up to
$100,000), providing financial advisory services to Deutsche Bank Trust Company
Americas and New Plan Excel Realty Trust, Inc.; (c) Nixon Peabody, LLP (up to
$150,000), providing legal services to Deutsche Bank Trust Company Americas; (d) Paul
Weiss Rifkind Wharton & Garrison LLP (up to $200,000), providing legal services to
Capital Research & Management Company; (e) Capstone Advisory Group (up to
$425,000) providing legal services to Wilmington Trust Company; (f) Curtis, Mallet,
Prevost, Colt & Mosle LLP (up to $455,000), providing legal services to Wilmington
Trust Company; (g) Berger Singerman (up to $3,500), providing legal services to
Wilmington Trust Company, and, (h) Frank/Gecker LLP (up to $10,000), providing legal
services to Pepisco and Subsidiaries.  The Ad Hoc Trade Committee was represented by
FTI Consulting, Inc. as financial advisors, and DLA Piper Rudnick Gray US LLP, as
legal counsel (up to $1,300,000 in the aggregate); and, the Ad Hoc Retiree Committee
was represented by Friedline & McConnell, P.A., as legal counsel (up to $50,000)."
The capped fees and expenses of the Creditors Committee delineated above total $1,443,500.

Bankruptcy Code allows for court authorized employment of professionals for a non-official committee.

7.  The Creditors' Committee selected and obtained Court approval to employ Milbank, Tweed, Hadley & McCloy, LLP and Akerman Senterfitt as attorneys for the Creditors' Committee and, Alvarez & Marsal, LLC and Houlihan Lokey Howard & Zukin Capital (collectively the "Creditors Committee's Professionals") as financial advisors.  The Creditors' Committee's Professionals have complied with Bankruptcy Rule 2014, and have filed interim fee applications under section 331 of the Code and have been authorized payment of interim fees and expenses of  $8,769,990.34,[4] which includes time entries up to May 31, 2006.

8.  Neither the Disclosure Statement nor the Plan contains an explanation of why the individual members of the Creditors' Committee needed services, in addition to those provided to the Creditors' Committee by its professionals, on issues related to substantive consolidation.

9.  The following chart provides a breakdown of the members of the Creditors' Committee[5] who are seeking the payment of fees and expenses for their financial and legal advisors:

| Member of Creditors Committee | Name of Professional and Amount of Cap |
| --- | --- |
| Kraft Foods Global, Inc. and Pepisco & Subsidiaries | FTI Consulting, Inc. and DLA Piper Rudnick Gray Cary US LLP ($100,000 in the aggregate for financial advisory and legal services) |

---

[4]This amount reflects the total of fees and expenses approved in the first, second, third, and fourth interim fee applications.

[5]The Creditors' Committee currently consists of the following members:  Deutsche Bank Trust Company Americas, New Plan Excel Realty Trust, Inc., Kraft Foods Global, Inc., Pepsico & Subsidiaries, Capital Research & Management Company, Wilmington Trust Company, as Indenture Trustee, and Lonestar Partners, LLP.

| | |
|---|---|
| Pepsico and Subsidiaries | Frank/Gecker LLP (up to $10,000 for providing legal services) |
| Deutsche Bank Trust Company Americas and New Plan Excel Realty Trust, Inc. | Imperial Capital LLC (up to $100,000 for financial advisory services) |
| Deutsche Bank Trust Company Americas | Nixon Peabody, LLP (up to $150,000 for providing legal services |
| Capital Research & Management Company | Paul Weiss Rifkind Wharton & Garrison LLP (up to $200,000 for providing legal services |
| Wilmington Trust Company | Capstone Advisory Group (up to $425,000 for providing legal services) |
| Wilmington Trust Company | Curtis, Mallet, Prevost, Colt & Mosle LLP (up to $455,000 for providing legal services |
| Wilmington Trust Company | Berger Singerman (up to $3,500 for providing legal services) |

10.  11 U.S.C. § 503(b)(3)(F)[6] sets forth the procedure by which members of a committee appointed under section 1102 may seek reimbursement of their expenses.  This procedure provides for an application to be filed to allow the Court to review fees and expenses for reasonableness.  11 U.S.C. § 503(b)(3)(F) grants administrative expense for "the actual and necessary expenses ... incurred by a member of a committee appointed under Code § 1102 ... if the expenses are incurred in the performance of the duties of such committee."  Furthermore, former section 503(b)(4)[7] allows as administrative expenses, "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is

---

[6]The United States Trustee reserves her right to object to any application that may be filed pursuant to 11 U.S.C. § 503(b)(3)(F).  Case law relating to this section prior to the enactment of The Bankruptcy Abuse Prevention and Consumer Act of 2005 may prohibit members of a creditors' committee from obtaining reimbursement of fees and expenses of their individual attorney and accountants under this section.

[7]The Bankruptcy Abuse Prevention and Consumer Act of 2005 ('BAPCPA") amended 11 U.S.C. § 503(b)(4) to specifically exclude a member of a committee from seeking reasonable compensation for its accountants and attorneys.  However, this case was filed prior to October 17, 2005, the effective date of BAPCPA.

allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant." The members of the Creditors' Committee should not be excused from the requirement of the Code and limit the authority of the court to review the fees and expenses of their professionals for reasonableness.

11.  Alternatively, the professionals representing the individual members of the Creditors' Committee, the professionals representing the ad hoc committee of trade vendors,[8] and the ad hoc committee of retirees could seek authorization for the payment of fees and expenses under 11 U.S.C. § 503(b)(3)(D)[9] which requires a finding by the bankruptcy court that the fees and expenses incurred by the professionals, on behalf of the individual members of the Creditors' Committee or the unofficial committees were incurred, in the course of making a substantial contribution in the case.  Appropriate applications should be filed to allow the Court to determine whether a substantial contribution to the case was made and to determine whether the fees requested are reasonable.

## Objection to Section 12.4 of the Plan

12. Section 12.4 of the Plan provides for payment of Indenture Trustee Expenses as they

---

[8]The fees of FTI Consulting, Inc. and DLA Piper Rudnick Gray Cary US LLP are capped at $100,000 in the aggregate for representing Kraft and Pepsico as members of the Creditors' Committee and an additional $1.3 Million in the aggregate for representing the ad hoc committee of trade vendors of which Kraft and Pepsico.  It is unclear whether Kraft and Pepsico are also members of the ad hoc committee of trade vendors.

[9]The United States Trustee reserves her right to object to any application that may be filed pursuant to 11 U.S.C. § 503(b)(3)(D).

6

relate to its professionals hired prior to, and subsequent to, the date of filing of Debtors' bankruptcy petitions.[10]  Similarly to section 12.3 of the Plan, this provision of the Plan does not require the filing of an application and only allows for Court review to the extent of any disputed amount requested.  The United States Trustee objects to the allowance of professional fees where the professionals have not been approved by the Court, the applicants have not filed a fee application stating the legal basis for their recovery, and have not allowed the Court to review its fees for reasonableness.[11]  The payment of the Indentured Trustee expenses pursuant to section 12.4 are not part of the Substantive Consolidation Compromise and fail to comply with any provision of the Bankruptcy Code.  This provision of the Plan fails to comply with the applicable provisions of the Code and prevents confirmation under 11 U.S.C. §1129(a)(1).

## Objection to 12.12 (a) and (b) and 12.15 of the Plan

13.  The United States Trustee objects to the release provisions in sections 12.12(a) and (b) and in 12.15 of the Plan which provide for non-debtor releases.  These provisions are inconsistent with 11 U.S.C. § 524(e) and therefore violate the requirements of 11 U.S.C. § 1129(a)(1).  The Bankruptcy Court should not confirm a plan or reorganization that fails to comply with the applicable provisions of the Bankruptcy Code.  Alternatively, the United States Trustee objects to all of the release provisions on the grounds that no unusual circumstances

---

[10]Wilmington Trust Company, as Indenture Trustee, is a member of the Creditors' Committee.  The chart in Paragraph 9 of this objection lists the names of the professionals hired by Wilmington Trust Company relating to the Substantive Consolidation Compromise.  The Debtors have agreed to allow a cap on Wilmington Trust's attorney fees relating to the Substantive Consolidation Compromise in the amount of $883,500 as provided in section 12.2.

[11]The United States Trustee reserves her right to object to any application that may be filed pursuant to 11 U.S.C. § 503(b)(3)(D).

exist that warrant the releases and they are neither fair nor necessary to the Debtors'
reorganization.

14.   Section 12.12(a) of the Plan provides a breakdown of releases to be given by the
Debtors to non-debtor entities.  The releases by the Debtors to the non-debtor entities encompass
"all claims, obligations, suits judgments, damages, demands, debts, rights, causes of action ...
and liabilities whatsoever in connection with or related to the Debtors, the conduct of the
Debtors' business, the Chapter 11 Case, or the Plan."  The non-debtors obtaining the release
include:  a) any of the Debtors' non-Debtor subsidiaries; b) the present or former directors,
officers, or employees of any of the Debtors or any of the Debtors non-Debtor subsidiaries; c)
any professionals of the Debtors; d) Wachovia and its advisors; and, f) the Creditors Committee,
its members, and its and their advisors (but not its members in their individual capacity).[12]

15.   Under Section 12.12(b) of the Plan claim holders that affirmatively vote in favor of
the Plan, "release, waive and discharge all claims, obligations, suits, judgments, damages,
demands, debts, rights, causes of action, and liabilities whatsoever against the present or former
directors, officers, or employees of any of the Debtors in connection with or related to the
Debtors, the conduct of the Debtors' business, the Chapter 11 Case, or the Plan."[13]

16.   The final provisions in the Plan providing for releases are sections 12.15(a) and (b),
entitled "Exculpation and Limitation of Liability."  These sections limit liability and provide for
an injunction of any right of action against the Debtors, the Reorganized Debtors , their

---

[12]Pages 86 and 87 of the Disclosure Statement provides Debtors' rationale regarding the
purpose of the release provisions.

[13]Page 90 of the Disclosure Statement provides Debtors' rationale regarding the purpose
of the release provisions.

respective subsidiaries Wachovia, or the Creditors Committee (as to itself or any of its members), or any of their respective present or former members, officers, directors, employees, advisors, Professionals, or agents for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct.[14]

17. The Bankruptcy Code was intended to provide a fresh start to the debtor who has invoked and submitted to the bankruptcy process. Non-debtor entities should not obtain the benefits of a release of liabilities through the bankruptcy of a debtor. In a chapter 11 case, except as provided in a plan of reorganization, the order of confirmation discharges the debtor from any debt that arose prior to confirmation. *See* 11 U.S.C. § 1141. Releases such as those contemplated in sections 12.12(a) and (b), and 12.15 of the Plan expand the Debtors' discharge under section 1141 and effectively discharge non-debtors from liability, contrary to 11 U.S.C. § 524(e). Furthermore, these releases place an improper injunction on claim holders to pursue certain actions. 11 U.S.C. §524(e) provides that, "except as provided in subsection (a)(3) of this section, discharge of a debt of a debtor does not affect the liability of any other entity for such debt."[15]

---

[14]Page 90 of the Disclosure Statement provides Debtors' rationale regarding the purpose of the exculpation provisions.

[15]11 U.S.C. § 524(g)(1)(b) is the only specific section which would allow releases to a non-debtor, and is limited to situations where claims are to be paid out of a trust.

18.    There is no controlling authority in the 11th Circuit regarding the propriety of non-debtor releases in a plan of reorganization[16] and in other circuits, there are divergent positions as to whether such releases can be allowed.    Section 105 grants a court broad equitable power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Code."  The Fifth, Ninth, and Tenth Circuits have found that no authority exists under section 105 to allow non-debtor releases due to the language in 11 U.S.C. § 524(e).  *See Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 760 (5th Cir. 1995) (the permanent injunction as entered improperly discharged a potential debt of CIGNA, a non-debtor and exceeded its powers under §105*); Resorts Intl v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1401 (9th Cir. 1995) *cert. denied* 517 U.S. 1243 (1996) (affirming district courts's decision vacating global release provision); *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir. 1985) ("[t]he bankruptcy court has no power to discharge the liabilities of a non-debtor pursuant to the consent of creditors as part of a reorganization plan"); *In re Western Real Estate Fund, Inc.,* 922 F.2nd *592, 601* (10th Cir. 1990)*, modified sub nom., Abel v. West,* 982 F.2d 898 (10th Cir. 1991) (Improper to permanently enjoin a creditor from recovering from non-debtor third party).

19.    Other circuits have found no conflict in allowing non-debtor releases under sections 105 and section 524(e) or other under provisions.  However, most circuits have determined that

---

[16]The 11th Circuit case of *Matter of Munford, Inc*., 97 F.3d at 449, 455, (11th Cir. 1996) affirmed  a district court's ruling that 11 U.S.C. § 105 and Federal Rule of Civil Procedure 16 authorized a bankruptcy court to permanently enjoin non-settling defendants from asserting contribution and indemnification claims against a defendant consulting firm when the permanent injunction was integral to the debtor's settlement with the consulting firm and the bar order was both fair and equitable.  However, this case was in the context of an adversary and was done to facilitate a settlement and includes no discussion regarding the limitations of 11 U.S.C. § 524(e).

release of non-debtors is only appropriate in rare, extraordinary or unusual circumstances.  *See In re Metromedia Fiber Network Inc.,* 416 F.3d 136, 141-143 (2nd Cir. 2005); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2nd Cir. 1992) and *In re Johns Manville, Corp.*, 842, F.2d 636, 640 (2nd Cir. 1988); *In re A.H. Robins Co.*, 880 F. 2d 694, 702 (4th Cir. 1989). *In re Dow Corning Corp.,* 280 B.R. 648, 658. (6th Cir. 2002) *cert. denied,* 537 U.S. 816.  In *Metromedia*, the Court affirmed the order confirming the plan on the ground of equitable mootness and provided direction on the circumstances where non-debtor releases could be approved stating that a "non-debtor release should not be approved absent the findings that truly unusual circumstances render the release terms important to the success of the plan by considering factors which include: whether the estate received consideration by the non-debtor, whether the enjoined claims were channeled to a settlement fund, whether the enjoined claims would impact the debtor's reorganization and whether the plan provides for full payment of the enjoined claims." *Id.* at 142-143.  *Drexel, Johns Manville and A.H. Robbins*, all included global settlement and mass tort liability and channeled creditor trusts which provided consideration to parties who would be enjoined from suing non-debtors.

20.  A summary of factors utilized in approving non-debtor releases when confirming a plan of reorganization follows:

(1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;
(2) The non-debtor has contributed substantial assets to the reorganization;
(3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor;
(4) The impacted class, or classes, has overwhelmingly voted to accept the plan;
(5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction;

11

(6) The plan provides an opportunity for those claimants who choose not to settle to recover in full; and,

(7) The bankruptcy court made a record of specific factual findings that support its conclusions (collectively, the "Factors").

*In re Dow Corning Corp.,* 280 B.R. 648 at 658 *citing In re A.H. Robins*, 880 F.2d at 701-702; *Johns-Manville*, 837 F.2d 636 at 92-94; *In re Continental Airlines*, 203 F.3d 203, 214 (3rd Cir. 2000).

21.    The Third Circuit Court of Appeals, in *In re Continental Airlines*, 203 F. 3d 203, 214 (3rd Cir. 2000), while not rejecting all non-debtor releases under section 524(e), rejected plan releases against the non-debtor directors and officers for securities fraud where the releases were not fair or necessary to the success of the reorganization.  The injunction in that plan protected directors and officers from actions taken prior to bankruptcy that allegedly violated the securities laws and thus abrogated the liability of third parties.  The debtor's obligation to indemnify its directors and officers was not a key element of Continental's reorganization without evidence in the record supporting the possibility or probability of director and officer indemnification.  The Court went further and stated that the fact that the debtor "might face an indemnity claim in the future in some unspecified amount does not make the release and injunction necessary to the success of the Continental Debtor's reorganization." *Id.* at 215.

22.    Two courts in the Middle District of Florida have analyzed whether non-debtor releases are acceptable in the context of a plan of reorganization.  *See In re Transit Group*, 286 B.R. 811 ( Bankr. M.D. Fla. 2002) and *In re Optical Technologies, Inc.,* 216 B.R. 989, 994 (Bankr. M.D. Fla 1999) (third party injunction not appropriate in chapter 11 liquidation plan of reorganization).  *In Transit,* Judge Jennemann, held that in order for a debtor to confirm a plan of reorganization containing a non-debtor release, the debtor must demonstrate that unusual circumstances exist, and that the non-debtor release is fair and necessary utilizing the Factors

commonly used by other courts. *In re Transit Group*, 286 B.R. 811 at 817. In *Transit*, the Court

reviewed both debtor and claim holder releases to non-debtors. The releases extended to two

secured lenders, the members of the creditors committee, two officers of the debtor, and a

subsidiary of the debtor. While not distinguishing between debtor and claim holder releases, the

Court approved only one of the non-debtor releases as to GE Capital Corporation ("GECC"), a

secured lender, and struck the remaining releases from the plan of reorganization. The non-

debtor release provision to GECC released any claims any holder could have against GECC for

any act taken in connection with the bankruptcy case or GECC's lending relationship with

Transit. The release also included a release of acts taken by GECC's agents, including their

attorneys and accountants, except for action taken in gross negligence or willful misconduct, or

violations of federal securities law. The Court found that GECC's post-petition lending and exit

financing to the debtor, as well as subordination of debt for a 70% equity interest in the debtor

and subordination of its $90 million unsecured claim indicated that GECC had contributed

substantial assets to this reorganization and that the release was both fair and necessary.

However, the non-debtor release as to Congress, a senior secured lender that held a first priority

lien on all of Transit's assets was rejected because the lender had granted no new money, was

being repaid in a short period of time and no unusual circumstances existed to support this

release. The Court then reviewed the release of the members of the unsecured creditors

committee which is similar to the release contained in the exculpation clause found in section

12.15 of the Plan as it relates to the Creditors' Committee. The Court analyzed the statutory

liability presently existing for members of the creditors committee and stated that chapter 11

plans should not be used to alter the responsibility already existing. Likewise, the Court rejected

the non-debtor releases of the current officers based on the mere assertion that potential indemnification claims existed.  The failure of the debtor to show any real risk in the indemnification area indicated that this provision had no impact on the debtor's reorganization efforts.  The Court cautioned that attempts to insulate officers and directors in every chapter 11 case should be avoided.  The last non-debtor release rejected by the Court related to a subsidiary of the debtor.  The Court rejected the debtor's argument that  GECC's blanket lien on the assets of the subsidiary thwarted any ability of any other creditor to obtain recovery.  While the Court acknowledged that other creditors may not ultimately obtain recovery due to GECC's blanket lien, that was not sufficient to justify a release.  The Court also acknowledged that the subsidiary had the opportunity to file chapter 11 and failed to do so.  Had it done so, it would have had the releases it was seeking.

23.    The Debtors' Disclosure Statement distinguishes its legal basis for the various non-debtor releases. The Debtors' legal basis for the inclusion of the non-debtor releases found in section 12.12(a) of the Plan centers upon the Debtors' authority to pursue and settle claims pursuant to 11 U.S.C. § 1123(b)(3)(A).  If a debtor settles a claim, pursuant to a plan of reorganization, the court must find that the proposed compromise is fair and equitable and in the best interests of the estate.  *See e.g. In re Gallagher*, 283 B.R. 342, 346 (Bankr. M.D. Fla. 2002) *(citing Protective Comm for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  Additionally, courts have required an analysis of the Factors when reviewing a release by the debtor in the context of a plan of reorganization.  *See Coram Healthcare Corp.*, 316 B.R. 321, 334 (Bankr.D.Del. 2004).  The Debtors are releasing any causes of action that are derivative in nature against: a) any of the Debtors' non-Debtor

14

subsidiaries; b) the present or former directors, officers, or employees of any of the Debtors or any of the Debtors' non-Debtor subsidiaries; c) any professionals of the Debtors; d) Wachovia and its advisors; and,  f) the Creditors' Committee, its members and its and their advisors (but not its members in their individual capacity).  The only potential derivative claim that the United States Trustee is aware of is related to a written demand by a purported shareholder to commence a legal proceeding on behalf of the Debtors against the Board of Directors and its officers and directors who served from May 6, 2002 through July 2004.[17]  If this is the only derivative claim that the Debtors are attempting to release, it is illogical to include such an expansive list of other releases when there is no need to do so.  The Debtors' support for the releases include: 1)  there are no viable causes of action against the released parties which would produce a benefit for the Debtors' estates; and, 2) an action to enforce a Debtors' claim would distract the Debtors' key employees in their reorganization efforts.  This is an insufficient showing to support a finding that the Debtors' release of these parties is fair and equitable and necessary to the Debtors' reorganization.

24.  The Debtors' legal basis for the release by claim holders found in section 12.12(b) is based on the fact that the release is consensual as it only binds those claim holders affirmatively voting for the Plan.  *See In re Metromedia Fiber Network Inc.,* 416 F.3d. 136 at 142; and *In re Specialty Equipment Cos.*, 3 F.3d 1043, 1047 (7th Cir 1993).  The releases under this section relate to the present or former directors, officers, or employees to the Debtors (collectively, the "Releasees") in connection with or related to the Debtors, the conduct of the Debtors' business, the Chapter 11 Case, or the Plan.  Since there is no controlling law in this Circuit on whether

_____

[17]See page 31 of the Disclosure Statement.

these releases are allowable under section 524(e) or whether consensual releases in this context are sufficient, it is necessary to determine whether unusual circumstances exist that warrant the release and whether they are fair and necessary to the Debtors' reorganization.  Utilizing factors considered by other courts for this determination, the releases in section 12.12(b) do not satisfy these requirements.  While the Debtors and the Releasees meet the identity of interests factor, the amount of potential indemnification claims is not known.  Section 7.10 of the Plan indicates the Debtors' assumption of indemnification obligations for claims arising pre or post-petition for Releasees employed by the Debtors after the Petition Date but excludes claims resulting from gross negligence, willful misconduct, breach of fiduciary duty or intentional tort.  Therefore, the need to release causes of action where there is no potential for indemnification by the Debtors fail to meet this test.  The Debtors allege that the Releasees' consideration for the releases is their services to the Debtors' businesses and reorganization is the consideration for the release. This consideration is not sufficient.  The Releasees have been paid well for their services and have had the benefits of a Chapter 11 Retention Plan and Corporate Benefits Severance Program. Simply working and obtaining a pay check is not the type of contribution necessary by a non-debtor to obtain a release of all potential claims.  The injunction created by this release is not essential to reorganization.  The Debtors have not provided any information to show the risk in the indemnification area and the approval of this provision and the ability of claim holders who have rejected the Plan to take actions against the Releasees, make this provision meaningless. Likewise, the approval of section 12.12(b) is not a condition precedent to confirmation contained in either section 10.1 or 10.2 of the Plan.  Also, the filing of this bankruptcy was not motivated by litigation surrounding the Releasees.  The Plan also fails to provide a mechanism for paying

16

for all classes affected by the injunction, except to the extent that the creditors are obtaining

stock in lieu of cash. The Plan however, does allow for those claim holders who choose not to

vote to be unaffected by the release.   In the instant case, there are no rare or extraordinary or

unusual circumstances present which would support allowing this provision to remain in the

Plan.

25.   The exculpation provisions in section 12.15 exonerate the professionals and major

participants with regards to their conduct in the chapter 11 case.   Exculpation clauses for acts

done in an official capacity have been allowed when the standard of liability that exists is not

expanded.  *See  In re Transit Group*, 286 B.R. 811 ( Bankr. M.D. Fla. 2002); *WCI Cable, Inc.,*

282 B.R. 457, 476 (Bankr. D. Or 2002); *PWS Holding Corp*., 228 F. 3rd 224 (3rd Cir. 2002) (also

allowed exculpation as it relates to Committee's professionals).   The United States Trustee

objects to section 12.15 as it relates to Wachovia and to professionals, specifically attorneys,

because it goes beyond the mere request of immunity for official acts normally included in an

exculpation clause and therefore, creates non-debtor releases.   Similarly to section12.12(b) of the

Plan, these releases are inconsistent with 11 U.S.C. § 524(e) and in the alternative, no unusual

circumstances exist that warrant the release.  If the Court finds that there is no *per se* prohibition

against non-debtor releases, the Court must perform an inquiry to determine whether rare and

extraordinary circumstances exist and whether such provisions are essential to the

implementation of the Plan.   The Debtors provide no substantive support for these releases

except to state that the exculpation provisions have been earned based on "significant

contributions to the Debtors' reorganization, which contributions have allowed for the

formulation of the Plan which resolves many complicated issues between and among the Debtors

and other interested parties." *See* page 90 of the Disclosure Statement.

26.  The United States Trustee objects to the exculpation provision as it applies to all of

the attorneys hired by the Debtors, the Reorganized Debtors, the Creditors' Committee, and

Wachovia, as it conflicts with the ethical standards under the ABA Model Rules of Professional

Conduct Rule 1.8(h) which states that a lawyer shall not:

> (1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or

> (2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection.

Both Florida and New York have similar rules of ethics regulating the members of their

respective Bars.  The attorneys, by including themselves in this provision in this case are limiting

their liability and will only be liable for acts or omissions which are the result of fraud, gross

negligence, or willful misconduct.  Such a limitation appears to violate the ethical standards the

attorneys must adhere to.

WHEREFORE, the United States Trustee respectfully requests that the Court sustain her

objection and deny confirmation or strike the provisions which are found to be in violation of the

Bankruptcy Code, and requests such other relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED this September 25, 2006.

FELICIA S. TURNER
United States Trustee, Region 21

/s/   Elena L. Escamilla
ELENA L. ESCAMILLA, Trial Attorney
Florida Bar No. 898414

18

135 W. Central Blvd., Room 620
Orlando, FL 32801
Telephone No.: 407-648-6301
Facsimile No.:  407-648-6323
E-mail: Elena.L.Escamilla@usdoj.gov

**CERTIFICATE OF SERVICE**

I Hereby Certify that a true and correct copy of the foregoing, United States Trustee's Objection to Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors, has been furnished electronically to the individuals listed on the Master Service List as of September 25, 2006, on this the 25th day of September, 2006.

/s/   Elena L. Escamilla
ELENA L. ESCAMILLA, Trial Attorney