

# COMMONWEALTH of VIRGINIA

**RODNEY L. PHILLIPS**
**ADMINISTRATOR**

*Department of Agriculture and Consumer Services*
*State Milk Commission*
*P.O. Box 1163*
*Richmond, Virginia 23218*

V/TDD (804) 786-2013
FAX (804) 786-3779

RECEIVED
CLERK, U.S. BANKRUPTCY COURT
SEP 2 5 2006
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

September 19, 2006

Mr. David K. Oliveria, Clerk of the Court
U. S. Bankruptcy Court
Middle District of Florida
Jacksonville Division
300 North Hogan Street
Suite 3-350
Jacksonville, FL  32202

Dear Mr. Oliveria:

Re: Claim #253, Case No. 05-03817-3F1

We have received notice that the above reference claim has been requested to be disallowed as a priority claim and reclassified as unsecured non-priority claim. We have filed the claim on behalf of the Commonwealth of VA to recover the assessment fees due to the Department of Agriculture and Consumer Services from Winn Dixie Stores Inc. On July 18, 2005, we filed a request to have claim number 253 amended from an unsecured *non-priority* claim to an unsecured *priority* claim. We assert that our claim is a tax owed to Virginia and should not be disallowed and reclassified to unsecured non-priority claim. This assertion is based on the United States District Court for the Northern District of California, Southern Division ruling in August 30, 1963, in which it was determined that assessments were a tax and as such entitled to priority claim status.

Attached please find copies of the California ruling previously submitted to substantiate our unsecured priority claim. If you need further information, you may contact either Edward Wilson or Sharon Seymore at 804-786-2013. Thank you.

Sincerely,

*[signature]*

Rodney L. Phillips, Administrator

CC: William A. Diamond, Assistant Attorney General
    Edward C. Wilson, Jr., Deputy Administrator
    Kristy M. McCabe, Accounting Manager

3RD CASE of Level 1 printed in FULL format.

In the Matter of FARMERS FROZEN FOOD COMPANY, Bankrupt

No. 59725

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

221 F. Supp. 385; 1963 U.S. Dist. LEXIS 10258

August 30, 1963

CORE TERMS: marketing, agricultural, commodity, producer, handler, levied, defray, entitled to priority, referee, regulated, Bankruptcy Act, agricultural commodity, collected, pecuniary, bankrupt, issuance, season, purchasing power, collection, equitable, assent, volume, California Marketing Act, necessary expenses incurred, economic waste, involuntary, processors, deposited, handling, orderly

COUNSEL: [**1]

Stanley Mosk, Atty. Gen. of the State of California, Donald H. Maffly, Deputy Atty. Gen., San Francisco, Cal., for claimant and petitioner.

Shapro, Anixter & Aronson, Raymond T. Anixter, Byers & Jacobs, Burlingame, Cal., James M. Conners, San Francisco, Cal., for respondent and trustee.

OPINIONBY: ZIRPOLI

OPINION: [*386]

The above named bankrupt corporation was heretofore engaged in the business of processing and handling strawberries. By virtue of these activities, the corporation became indebted to petitioner, the Department of Agriculture of the State of California, in the sum of $ 1,638.44, representing assessments duly determined and levied under the Marketing Order for California Strawberries and the Marketing Order for Processing Strawberries, as amended. These marketing orders are authorized by the California Marketing Act of 1937. n1

The petitioner filed a proof of priority claim against the bankrupt. The trustee filed objections to the priority claim on the ground that it is not entitled to priority payment as a tax under section 64, sub. a(4) of the Bankruptcy Act (Section 104, sub. a(4) of Title 11 U.S.C.A.).

The Referee found that the bankrupt is justly indebted [**2] to the petitioner in the sum of $ 1,638.44 (Finding II, Order Sustaining Trustee's Objections to Proof of Priority Claim of the Department of Agriculture of the State of California), which sum is due pursuant to assessments made under the Agricultural Code (Finding IV). The referee found further that said sum was not a tax, but a personal debt or obligation, and concluded that the petitioner is not entitled to priority status under the provisions of said section 64, sub. a(4) (Finding II, Conclusions I, II, III). Thereupon the petitioner filed a petition for review.

In his certificate, the referee succinctly stated the sole issue for review (p. 3), as follows:

'The question presented is whether the Department of Agriculture of the State of California is entitled to priority of payment under Section 64(a)(4) of the Bankruptcy Act on account of an indebtedness representing assessments determined and levied under marketing orders authorized by the Agricultural Code of the State of California.'

This Court is of the opinion that the referee was in error when he answered this question in the negative.

Section 64, sub. a(4) of the Bankruptcy Act provides that:

'The debts to have priority [**3] in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (4) taxes legally due and owing by the bankrupt to the United States or [*387] any State or any subdivision thereof.'

It is now well established that the elements which characterize an exaction of a 'tax' within the meaning of said Section 64, sub. a(4) are as follows:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property; n2

Case 3:05-bk-03817-JAF    Doc 11392    Filed 09/26/06    Page 3 of 8

Page 4
221 F. Supp. 385, *387; 1963 U.S. Dist. LEXIS 10258, **3

(b) Imposed by, or under authority of the legislature; n3

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; n4

(d) Under the police or taxing power of the state. n5

The assessments levied under the marketing orders adopted pursuant to the California Marketing Act of 1937 meet all four of these requirements and are therefore entitled to priority under the Bankruptcy Act.

1. It is self evident that the assessments constitute pecuniary burdens laid upon individuals (Agricultural Code, § 1300.20). An examination of the provisions of the California Marketing Act demonstrates that this pecuniary burden is an [**4] 'involuntary' one. Unlike assessments made pursuant to Marketing Agreements (Agricultural Code, § 1300.13(e)), which are binding only upon the signatories to the agreements and hence voluntary and not entitled to priority as taxes, a marketing order, which becomes effective once the assent of a specified percentage of affected handlers, processors and producers has been obtained, is binding upon all persons dealing in the particular commodity within the area defined in the marketing order, including the minority who did not give assent to the adoption of the marketing order, and all must pay the assessments levied pursuant to Section 1300.17 of the Agricultural Code. The distinction between a voluntary and an involuntary pecuniary burden in tax law hinges on a decision whether the nature of the particular imposition is contractual or statutory. Assessments under marketing agreements are contractual but those under marketing orders are statutory.

2. The fact that the assessments are based upon the rules of the Department of Agriculture 'does not' divest them of their statutory nature, nor does it matter that the pecuniary burden is called an assessment and not a tax. n6 Section [**5] 1300.17 of the Agricultural Code enacted by the California Legislature, authorizes the imposition of the assessment, establishes the base upon which the exaction is measured, and prescribes the maximum rate of assessment. The authority of the Director of Agriculture to issue orders, within the limited discretion thus given him by the prescribed standards, comes directly from this statute, and without this authority from the Legislature, no moneys, whether by assessments or otherwise, could have been raised under the Act. It clearly follows that an assessment levied pursuant to a marketing order is one imposed under authority of the legislature.

[*388] 3. It is also clear that the assessments here involved are levied for the purpose of defraying the expenses of government or of undertakings authorized by it. The public purposes, which are the objects of the assessments levied pursuant to the provisions of the Marketing Act of 1937 are contained in Sections 1300.10 and 1300.11 of the Agricultural Code and Section 1300.17 of said Code expressly states that the assessments are to be levied 'for the purpose of providing funds to defray the necessary expenses incurred by the director [**6] in the formulation, issuance, administration and enforcement of each marketing order.' It is of no importance that the funds collected pursuant to the Act are not made a part of the general revenues of the state, but are segregated into special funds. n7

4. That the assessments in question are levied under the police power of the state is clearly expressed in Section 1300.10(c) of the Agricultural Code. n8 The United States Supreme Court has held that control of agricultural production and marketing, in the broad sense, is an exercise of the police power. n9

Conclusion. The claim of the Department of Agriculture of the State of California in the instant bankruptcy proceedings is clearly entitled to priority as a tax within the meaning of Section 64, sub. a(4) of the Bankruptcy Act. The Order of the Referee is reversed, and the matter is remanded to the Referee for further proceedings to conform with this order.

APPENDIX

Pertinent provisions of California Marketing Agreement Act (Sections 1300.10 through 1300.31 of the California Agricultural Code):

' § 1300.10 Legislative findings and declaration of policy

'(a) It is hereby declared that the marketing of agricultural commodities [**7] in this State in excess of reasonable and normal market demands therefor; disorderly marketing of such commodities; improper preparation for market and lack of uniform grading and classification of agricultural commodities; unfair methods of competition in the marketing of such commodities; and the inability of individual producers to maintain present markets or to develop new or larger markets for California grown agricultural commodities, results in an unreasonable and unnecessary economic waste of the agricultural wealth of this State. Such conditions and the accompanying waste jeopardize the future continued production of adequate food supplies for the people of this and other States, and prevent agricultural producers from obtaining a fair return from their labor, their farms and the agricultural commodities which they produce. As a consequence, the purchasing power of such producers has

Case 3:05-bk-03817-JAF   Doc 11392   Filed 09/26/06   Page 4 of 8

221 F. Supp. 385, *388; 1963 U.S. Dist. LEXIS 10258, **7

Page 5

been in the past, and may continue to be in the future, unless such conditions are remedied, low in relation to that of persons engaged in other gainful occupations within this State. Agricultural producers are thereby prevented from maintaining a proper standard of living and from contributing [**8] their fair share to the support of the necessary governmental and educational functions, thus tending to increase unfairly the tax burdens of other citizens of this State.

'(b) These conditions vitally concern the health, peace, safety and general welfare of the people of this State. It is hereby declared to be the policy of this State to aid agricultural producers in preventing economic waste in the marketing of their agricultural commodities, to develop more efficient and equitable methods in the marketing of agricultural commodities and to aid agricultural producers in restoring and maintaining their purchasing power at a more adequate, equitable and reasonable level.

'(c) The marketing of agricultural commodities within this State is hereby [*389] declared to be affected with a public interest. The provisions of this chapter are enacted in the exercise of the police powers of this State for the purpose of protecting the health, peace, safety and general welfare of the people of this State.'

' § 1300.11 Purposes of chapter

'The purposes of this chapter are:

'(a) To enable agricultural producers of this State, with the aid of the State, more effectively to correlate [**9] the marketing of their agricultural commodities with market demands therefor.

'(b) To establish orderly marketing of agricultural commodities.

'(c) To provide for uniform grading and proper preparation of agricultural commodities for market.

'(d) To provide methods and means for the maintenance of present markets or for the development of new or larger markets for agricultural commodities grown within this State or for the prevention, modification or elimination of trade barriers which obstruct the free flow of such agricultural commodities to market.

'(e) To eliminate or reduce economic waste in the marketing of agricultural commodities, and

'(f) To restore and maintain adequate purchasing power for the agricultural producers of this State.'

' § 1300.12 Definitions

'(k) 'Marketing order' means an order issued by the Director of Agriculture, pursuant to this chapter, prescribing rules and regulations governing the processing, distributing or handling in any manner of any agricultural commodity within this State during any specified period or periods.'

' § 1300.13 Procedure for making marketing order

'(a) Duties and powers of director. The Director of Agriculture shall administer [**10] and enforce the provisions of this act and shall have and may exercise any or all of the administrative powers conferred by Sections 11180 to 11191, inclusive, of the Government Code upon the head of a department of the State. In order to effectuate the declared purposes of this act, the Director of Agriculture is hereby authorized to issue, administer and enforce the provisions of marketing orders hereunder regulating producer marketing or the handling of agricultural commodities within this State.

'(b) Notice and opportunity for public hearing. Whenever the director has reason to believe that the issuance of a marketing order, or amendments to an existing marketing order, will tend to effectuate the declared policy of this act with respect to any agricultural commodity, he shall, either upon his own motion or upon application of any producer or handler of such commodity, or any organization of such persons, give due notice of, and an opportunity for, a public hearing upon a proposed marketing order or such amendments to such existing marketing order.'

' § 1300.16 Assent to marketing order and amendments; termination of order; rules and regulations

'(a) (1) Assent to order and [**11] major amendments; handlers. No marketing order or major amendment thereto, directly affecting handlers, issued pursuant to this chapter, shall become effective unless and until the director finds that such marketing order or amendment thereto has been assented to in writing by the handlers engaged in the marketing activity or activities regulated by such marketing order who handle not less than sixty-five percent (65%) of the volume of the agricultural commodity regulated thereby which is processed or distributed within the area defined in such marketing order or amendment thereto or that such marketing order or amendment thereto has been assented to in writing by not less than sixty-five percent (65%) of the number of handlers engaged in the marketing activity or activities regulated by such marketing order; * * *.

[*390] ' § 1300.17 Assessments

'(a) Assessment for administrative expenses; advance deposits. For the purpose of providing funds to defray the necessary expenses incurred by the director in the formulation, issuance, administration and enforcement of each marketing order issued hereunder, each

Case 3:05-bk-03817-JAF    Doc 11392    Filed 09/26/06    Page 5 of 8

221 F. Supp. 385, *390; 1963 U.S. Dist. LEXIS 10258, **11

Page 6

such marketing order shall provide for the levying and collection of [**12] assessments in sufficient amounts to defray such expenses. Each marketing order shall indicate the maximum rate of any such assessment which may be collected and the proportion, if any, payably by each producer and handler directly regulated or affected by such marketing order. The advisory board appointed by the director to assist the director in administering each marketing order shall recommend to the director, from time to time, budgets to cover necessary expenses and the assessment rate necessary to provide sufficient funds. If the director finds that each such budget and assessment rate are proper and equitable and will provide sufficient moneys to defray the necessary expenses he may approve such budget and rate of assessment and order that each producer and handler so assessed shall pay to the director, at such times and in such installments as the director may prescribe, an assessment based upon the units in which such agricultural commodity is marketed, or upon any other uniform basis which the director determines to be reasonable and equitable, but in amounts which in the case of producers will not exceed two and one-half percent (2 1/2%) of the gross dollar volume of [**13] sales, of the commodity affected, by all such producers, regulated by such marketing order or in amounts which in the case of processors, distributors or other handlers will not exceed two and one-half percent (2 1/2%) of the gross dollar volume of purchases of the commodity affected by the marketing order from producers or of the gross dollar volume of sales of the commodity affected by the marketing order and handled by all such processors, distributors or other handlers regulated by such marketing order during the marketing season or seasons during which such marketing order is effective. * * *

'(f) Disposition of money collected; refunds. Any moneys collected by the director pursuant to this act shall be deposited in a bank or banks, or other depository, approved by the Director of Finance, allocated to each marketing order under which they are collected, and disbursed by the director only for the necessary expenses incurred by the advisory board and the director and approved by the director with respect to each such separate marketing order. Funds so collected shall be deposited and disbursed in conformity with appropriate rules and regulations prescribed by the director. The [**14] expenditure of such funds shall be exempt from the provisions of Section 16003 of the Government Code. All such expenditures by the director shall be audited at least annually by the Department of Finance and a copy of such audit shall be delivered within 30 days after the completion thereof to the Governor, the Director of Agriculture and the Controller. Any moneys in the State Treasury to the credit of the 'State Marketing Act Trust Fund' shall be withdrawn and deposited in accordance with the provisions of this paragraph.

'Any moneys remaining in such fund, allocable to any particular agricultural commodity affected by a marketing order, at the discretion of the director, may be refunded at the close of any marketing season upon a pro rata basis, to all persons from whom assessments were collected, or such portion of such moneys as may be recommended by the board and approved by the director may be carried over into the next succeeding marketing season whenever the director finds that such moneys may be required to assist in defraying the costs of operating such marketing order in such succeeding marketing season; provided, that upon termination by the director of any marketing [**15] order, any and all moneys remaining, and not required by the director to defray the expenses of such marketing order, shall be returned by the director upon a pro [*391] rata basis, to all persons from whom assessments were collected; provided further, however, that if the director finds that the amounts so returnable are so small as to make impractical the computation and remitting of such pro rata refund to such persons, the director may use the moneys in such fund to defray the expenses incurred by him in the formulation, issuance, administration or enforcement of any subsequent marketing order for such commodity. Thereafter, if there are any such moneys remaining which have not been used by the director as hereinabove provided, same shall be withdrawn from the approved depository and paid into the State Treasury as unclaimed trust moneys.'

' § 1300.20 Collection of assessment as personal debt; penalty for failure to pay assessment

'Any assessment herein levied, in such specified amount as may be determined by the director pursuant to the provisions of this chapter, shall constitute a personal debt of every person so assessed and shall be due and payable to the director [**16] when payment is called for by the director. In the event of failure of such person or persons to pay any such assessment upon the date determined by the director, the director may file a complaint against such person or persons in a State court of competent jurisdiction for the collection thereof.

'In the event any producer or handler duly assessed pursuant to the provisions of this act fails to pay to the director the amount so assessed on or before the date specified by the director, the director is hereby authorized to add to such unpaid assessment an amount not exceeding ten per cent (10%) of such unpaid assessment to defray the cost of enforcing the collection of such unpaid assessment.'

Case 3:05-bk-03817-JAF    Doc 11392    Filed 09/26/06    Page 6 of 8

Page 7

221 F. Supp. 385, *391; 1963 U.S. Dist. LEXIS 10259, **16

' § 1300.29 Legislative findings and declaration

'This act is hereby declared to be an urgency measure necessary for the immediate preservation of public peace, health and safety within the meaning of Section 1 of Article IV of the Constitution of this State and shall, therefore, go into immediate effect. A statement of the facts constituting such necessity is as follows:

'The economic conditions of many agricultural producers throughout the State are such as to require immediate relief, [**17] if their purchasing power and taxpaying ability are to continue and their morale and standard of living are not to be undermined. Such relief can be afforded only by the orderly production and marketing of agricultural commodities and the issuance of marketing orders which assure stabilized and orderly distribution of agricultural commodities which can not otherwise be so marketed.'

n1. Sections 1300.10 through 1300.31 of the California Agricultural Code, the pertinent provisions of which are set out in Appendix hereto.

n2. 3 Collier on Bankruptcy 2156 (14th Ed.); *United States v. New York*, 315 U.S. 510, 515, 62 S.Ct. 712, 86 L.Ed. 998; *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 85 L.Ed. 1333; *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284; *In re Oshkosh Foundry Co.*, D.C., 28 F.Supp. 412; *In re Mytinger*, D.C., 31 F.Supp. 977; *In re Mid America Co.*, D.C., 31 F.Supp. 601, 604; *In re Akers, Jr., Co.*, 3 Cir., 121 F.2d 846, 135 A.L.R. 1503.

n3. See note 2 above. See also *City of Madera v. Black*, 181 Cal. 306, 310, 184 P. 397.

n4. *City of New York v. Feiring, supra; United States v. New York, supra; New Jersey v. Anderson, supra; Meriwether v. Garrett*, 102 U.S. 472, 513, 26 L.Ed. 197; *In re Mytinger, supra, McDowell v. City of Barberton*, 6 Cir., 38 F.2d 786, 787; See also *Yosemite Lumber Co. v. Industrial Accident Commission*, 187 Cal. 774, 204 P. 226, 20 A.L.R. 994.

[**18]

n5. *In re Mid America Co., supra.*

n6. See note 2.

n7. 3 Collier on Bankruptcy 2151-2152 (14th Ed.).

n8. See Appendix.

n9. *Parker v. Brown*, 317 U.S. 341, 367, 63 S.Ct. 307, 87 L.Ed. 315.

bond required of ...sion officers and employees who ...e money.

The Commission shall prepare an annual budget and shall collect the sums of money required for this budget from the licensed distributors in markets where the provisions of this article are in operation. The expenses of the Commission, including salaries and the per diem of such personnel as the Commission finds it necessary to employ to properly carry out its functions under this article shall be met by an assessment of not over five cents per 100 pounds of milk, and cream (converted to terms of milk) handled by distributors and not over five cents per 100 pounds of milk, and cream (converted to terms of milk) sold by producers; these assessments to be the same per 100 pounds on producers and distributors. The exact amount of each monthly or semimonthly assessment shall be determined by the Commission as necessary to cover its expenses. All assessments shall be paid at the time the distributors pay the producers for the milk. All officers and employees of the Commission who handle funds of the Commission, or who sign or countersign checks upon such funds, shall severally give bond in such amount and with such sureties as shall be determined by the Commission. The cost of such bonds shall be paid by the Commission and the Commission shall determine the amount and sufficiency of such bonds.
(Code 1950, § 3-373; 1958, c. 110; 1966, c. 702; 1974, c. 467; 1986, c. 408.)

A. All expenses necessary for the operation of the agency shall be met by assessments as provided for in Article 2 (§ 3.1-425 et. seq.) of Chapter 21 of Title 3.1 of the Code of Virginia.

Assessments shall be collected by the agency and deposited immediately in a designated state depository to the Treasurer of Virginia.

B. Assessments shall be made in the following manner:

1. Assessments shall be collected from all licensed general processing distributors, producer general distributors, and distributors in an amount as directed by the approving authority. Assessments shall not exceed five cents per hundredweight on all milk, or cream (converted to terms of milk) handled by distributors and/or sold by producers and cooperative associations of producers. These assessments shall be the same per hundredweight on producers and distributors.

2. Within 15 days after the close of a delivery period, all licensed general processing distributors, producer general distributors, and distributors shall remit to the agency an amount equal to the total assessments levied for the delivery period, including both the assessment levied on distributors and producers and/or cooperative associations of producers. The amount of production assessment paid to the credit of producers or cooperative associations of producers by a distributor shall be credited against the amount payable to producers and/or cooperative associations of producers by said distributor.