IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| **In re:** | ) | Case No. 05-03817-3F1 |
| | ) | |
| **WINN DIXIE STORES, INC., <u>et al.</u>,** | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**OBJECTION OF MERRILL LYNCH LP HOLDINGS, INC.
TO DEBTOR'S PLAN OF REORGANIZATION**

Merrill Lynch LP Holdings, Inc. ("Merrill"), by and through its undersigned counsel, submits this objection (the "Objection")[1] to the confirmation of the Debtors' Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan").[2] In support thereof, Merrill states as follows:

**PRELIMINARY STATEMENT**

1. As described more fully in the proofs of claim filed by Merrill in the above-captioned bankruptcy cases (collectively, the "Claims"), Merrill is a landlord with lease rejection claims against Winn-Dixie Montgomery, Inc. and Winn-Dixie Raleigh, Inc. (each a "Lease Debtor") relating to stores located in: (i) Adamsville, Alabama; (ii) Bennettsville, South Carolina; (iii) Hiram, Georgia; (iv) Rocky Mount, Virginia; (v) Vestavia, Alabama; and (vi) Orlando, Florida (each a "Store" and collectively, the "Stores"). Winn-Dixie Stores, Inc. is the parent/guarantor of each applicable Lease Debtor's obligations (the "Guarantor").

---

[1] Merrill received an extension of the originally scheduled objection deadline of September 25, 2006 from counsel to the Debtors in advance of filing the Objection. The Objection incorporates by reference the arguments set forth in Joint Objection of E&A Financing II, L.P; E&A Southeast, L.P.; E&A Acquisition Two, L.P.; Shields Plaza, Inc.; Woodberry Plaza (E&A), LLC; Villa Rica Retail Properties, LLC; West Ridge, LLC; Bank of America, as Trustee of Betty Holland, and F.R.O. LLC VII To The Debtors' Plan of Reorganization filed on September 25, 2006 (Docket Nos. 11312 and 11332).
[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

dc-464500

2.     As set forth in Merrill's proofs of claim against the Guarantor (collectively, the "<u>Guaranty Claims</u>"), the aggregate amount of Guaranty Claims filed by Merrill with respect to the Stores is approximately $13,761,942.81.[3]  Certain of these Guaranty Claims are subject to pending objections recently filed by the Debtors.

## ARGUMENT

**A.     The Plan Should Not Be Confirmed Because Merrill and Similarly Situated Landlords Were Not Included in the Negotiations Preceding the Substantive Consolidation Compromise And Stand to Have Their Guaranty Claims Extinguished.**

3.     There is nothing in the Disclosure Statement which suggests that landlords with guaranty claims (like Merrill) were ever consulted by the Debtors or the Creditors Committee regarding the Substantive Consolidation Compromise (as defined in the Disclosure Statement), or that such landlords participated in any meaningful way in these negotiations.  To the extent the Debtors and the Creditors Committee had specifically communicated with such landlords, one would have expected the Debtors to disclose such facts, especially considering that other creditor groups — each with a set of issues distinct from landlords with credit-enhancing guarantees — who were parties to the negotiations received specific mention.[4]  Moreover, given that the Guaranty Claims would be extinguished in the event this Court were to confirm the Plan, it is surprising that the Debtors would characterize the Substantive Consolidation Compromise as consensual, fair, and equitable, particularly where it appears that a substantial segment of Class 13 Landlord Claimants with guaranty claims were not parties to the ongoing negotiations.

---

[3] Guaranty Claims are broken down per Store as follows: Adamsville - $1,535,287.00; Bennettsville and Hiram - $8,421,391.99; Rocky Mount - $717,829.00; Vestavia - $1,774,446.52, and Orlando - $1,312,988.29.

[4] *See* DS at 50-53 (describing agreement with a "broad range of unsecured creditors" including, *inter alia*, the Ad Hoc Trade Committee, the Ad Hoc Retirees Committee, financial advisors to the Creditors Committee, and holders of Noteholder Claims).

4. As the Disclosure Statement provides, "in the event of a consolidation, [] credit enhancing guarantees would likely become meaningless and the recoveries of [Landlords] would be substantially lower. . ."[5] More precisely, for purposes of distribution under the Plan, each of Merrill's lease rejection damage claims against a Lease Debtor and its corresponding Guaranty Claim against the Guarantor would be morphed into one claim, rendering Merrill's multi-million dollar Guaranty Claims worthless. Merrill would only be entitled to a projected 70.6% recovery on its surviving claim — which treatment is identical to those creditors holding **unguaranteed** landlord and Vendor/Supplier Claims — while Class 12 Noteholders with guaranty claims are expected to receive an estimated 95.6% recovery.[6]

5. The Debtors and Creditors Committee urge this Court to find that based on their careful consideration of the "facts and the standard for settlement approval", as well as the agreement of a "broad range of unsecured creditors"[7] — none of which includes Merrill or presumably any landlords with guaranty claims — that the proposed Substantive Consolidation Compromise is "fair and equitable and in the best interests of the bankruptcy estate."[8] Yet if this Court approves the Substantive Consolidation Compromise and confirms the Plan, not only would this decision effectively extinguish Merrill's credit-enhancing guarantees and those of similarly situated landlords, but it would also conflict with the holding in *Owens Corning*,[9] the leading case on "deemed" substantive consolidation in the context of credit-enhancing guarantees.

---

[5] *See* DS at 51.
[6] *See* DS at pp. 9-10.
[7] *See* Disclosure Statement [hereinafter "DS"] at 53. Coincidentally, the Debtors believed the Creditors Committee, "was in the best position to negotiate a resolution", despite the fact that Landlords, like Merrill, who held credit-enhancing guarantees unlike the majority of unsecured creditors, were not involved in any "deemed" substantive consolidation negotiations. *Id.* at 48.
[8] *See* DS at 54.
[9] *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005), *cert. denied*, 126 S. Ct. 1910 (2006).

6. As the Third Circuit — recognized by the Debtors as a "very influential court regarding commercial matters"[10] — held, a "deemed" non-consensual arrangement (such as the Substantive Consolidation Compromise) that proceeds as though assets and liabilities of separate entities are merged for plan distribution purposes, eliminates guarantees, yet keeps entities legally separate is "a ploy to deprive one group of creditors of their rights while providing a windfall to other creditors."[11] Based on the language of the Disclosure Statement, the Debtors would agree: Merrill and other similarly situated landlords with guarantees "have a strong interest in opposing any effort to substantively consolidate the Debtors."[12] As explained below, because of the nature of this non-consensual arrangement and the fact that Merrill stands to have its Guaranty Claims expunged, this Court should not approve the Plan.[13]

**B.   Even Assuming Substantive Consolidation is Appropriate, the Debtors Cannot Meet Their Burden and Should Not be Permitted to Circumvent the Prevailing Legal Standard by Characterizing Their Deemed Consolidation as a Compromise or Settlement.**

7. Generally, the near unanimous consensus is that substantive consolidation is an equitable remedy to be used "sparingly".[14] As the Third Circuit and other courts have made clear:

> Indeed, *because substantive consolidation is extreme* (it may affect profoundly creditors' rights and recoveries) *and imprecise*, *this "rough justice" remedy should be rare and, in any event, one of last resort* after considering and rejecting other remedies (for example, the possibility of more precise remedies conferred by the Bankruptcy Code).[15]

---

[10] *See* DS at 51 (also citing *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988) for proposition that substantive consolidation is no more instrument of procedural convenience, but a measure vitally affective substantive rights to 'be used sparingly.'").
[11] *Owens Corning*, 419 F.3d at 200, 202.
[12] DS at 51.
[13] *See Owens Corning*, 419 F.3d at 199-200 (noting that non-consensual deemed substantive consolidation at issue was not designed to rectify the "seldom-seen situations that call for this last-resort remedy", but was instead "a ploy to deprive one group of creditors of their rights while providing a windfall to other creditors.").
[14] *See Owens Corning*, 419 F.3d at 208-09 (internal citations omitted).
[15] *Id.* at 211 (emphasis supplied).

Even assuming that substantive consolidation is appropriate in these cases, by cloaking the deemed substantive consolidation as a fair and equitable compromise that is in the best interests of the bankruptcy estate pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules,[16] the Debtors are attempting to avoid satisfying a burden they would otherwise have to meet in an ordinary substantive consolidation. As explained in *Owens Corning*, a *prima facie* case for substantive consolidation "typically exists when, based on the parties prepetition dealings, a proponent proves corporate disregard creating contractual expectations of creditors that they were dealing with the debtors as one indistinguishable entity."[17] From the *Augie/Restivo*[18] case, which was adopted by *Owens Corning*,[19] the two critical factors include: "(i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit . . . or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors."[20]

8.  Although the Debtors assert that absent the Substantive Consolidation Compromise, there would be "protracted and costly litigation",[21] this statement, even if it were true, misses the mark. Instead of putting forth evidence supporting blatant prepetition disregard for the legal existence of each Debtor, the Debtors cite to various arguments made by the Ad Hoc Trade Committee — a group that has no connection to Merrill or other similarly situated landlords — for the proposition that "when dealing with the Debtors [members of the Ad Hoc Trade Committee] believed they were dealing with a single enterprise."[22] Similarly, the Debtors state that in the view of the Ad Hoc Trade Committee, "because the Debtors were *allegedly* so

---

[16] DS at 54.
[17] *Owens Corning*, 419 F.3d at 212 (internal footnote omitted).
[18] *In re Augie/Restivo*, 860 F.2d at 518.
[19] *Owens Corning*, 419 F.3d at 210.
[20] *Id.* (internal quotation marks and citations omitted).
[21] DS at 52.
[22] *See id.*

interrelated, the Ad Hoc Trade Committee alleged that it was impossible to determine the value of any one Debtor on a stand-alone basis for the purposes of plan confirmation."[23]

9.      Based on these claims and the "uncertainty and substantial cost and delay that would be incurred if complex issues associated with substantive consolidation were litigated",[24] it appears that satisfying the Ad Hoc Trade Committee is, among other things, at the forefront of the Debtor's agenda, even at the expense of eradicating the claims of creditors, like Merrill, who hold valid guaranty claims.  In turn, the Substantive Consolidation Compromise is precisely the kind of non-consensual "ploy" that the court in *Owens Corning* rejected.  Based on the Debtors' treatment of this issue set forth in the Disclosure Statement, the Debtors have not made out a *prima facie* case that the Debtors (or the groups of creditors collectively dealing with them) disregarded their own separateness.  On this basis, the Court should reject the Plan.

      **C.     Even if Bankruptcy Rule 9019 Applied in this Circumstance, the Substantive Consolidation Compromise Is Neither Fair Nor Equitable to Merrill and Similarly Situated Landlords, and Should Not Be Approved as Landlords with Guaranty Clams Were Not a Party to the Settlement.**

10.     In order to approve any compromise or settlement, this Court must determine that it is fair and equitable and in the best interest of the Debtor's estates.  Well-established precedent instructs this Court to consider several factors.[25]  First, the Substantive Consolidation Settlement must be fair and equitable and reasonably be in accord with the competing interests' relative priorities.[26]  Given that the Plan affects approximately $390 million of landlord guaranty claims,[27] the settlement is by no means "traditional" and is neither fair nor equitable to Merrill (and similarly situated parties) because their interests were not adequately represented during the

---

[23] *Id.*(emphasis added).
[24] *Id.* at 53.
[25] *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir.1990).
[26] *LaSalle Nat'l Bank v. Holland (In re Am Reserve Corp.)*, 841 F.2d 159, 162 (7th Cir.1987).
[27] *See* Debtors Liquidation Analysis at 4 (landlord guaranty claims valued at an estimated $390 million).

settlement discussions. The resulting eradication of the landlord guaranty claims could hardly be characterized as constituting "fair treatment".

11. Second, the Disclosure Statement makes no reference to any landlord holding a guaranty claim taking part in the compromise discussions. It is unfathomable to believe that the largest single unsecured creditor group of the Debtors — whose claims are valued at an estimated $390 million[28] — lacked representation in the discussions.[29] It is particularly questionable in light of the fact that landlords holding guaranty claims receive no noticeable benefit from the compromise. In fact, they stand to lose everything.

12. Third, all landlords, whether or not they hold guaranty claims, are grouped together into Class 13. As a result, a landlord holding a guaranty is treated in the exact same manner as a landlord without a guaranty — i.e., with a projected payout of 70.6%[30] — notwithstanding the differences in their respective substantive rights.

13. Fourth, although it appears that no Vendor/Supplier holds a guaranty for its claims,[31] the Ad Hoc Trade Committee who was an active participant in the negotiations[32] secured, for its constituents, identical treatment with Class 13 Landlord Claims. In addition, the Ad Hoc Trade Committee will be reimbursed for fees and expenses up to an aggregate amount of $1,300,000. This is despite the fact that the majority of the Vendor/Suppliers claims are with the subsidiary Debtors[33] with high debt-to-asset ratios. There is nothing fair or equitable about penalizing those landlords who exercised prudence and good judgment in requiring a guaranty for the obligations of their lessees due to such Debtors' high debt-to-asset ratios.[34]

---

[28] *Id.* at 4
[29] *Id.*
[30] *See DS* at 9.
[31] *See* Debtors Liquidation Analysis at 4.
[32] *DS* at 55.
[33] *DS* at 52.
[34] DS at 53.

14. Finally, the Noteholders have benefited from the Substantive Consolidation Compromise by achieving a higher payout based on their subsidiary guarantees. The Debtors have failed to provide any adequate explanation for the 25% disparity between the treatment of the Class 12 (Noteholder) Claims who are projected to receive a 95.6% recovery, and the projected distribution to landlords with guaranty claims, who are projected to receive a 70.6% recovery. One can only surmise that it is due to their active and well-documented participation in the settlement discussions.

15. Bankruptcy courts have a fiduciary obligation to protect creditors and must ensure that ***all*** aspects of the proposed compromise are fair and equitable.[35] Based upon the terms of the Substantive Consolidation Compromise, the settlement is neither fair nor equitable especially in a situation where all actual and documented parties to the negotiations have had their projected payouts increased while a single sub-class — *i.e.*, landlords holding guarantees — whose interests were not adequately represented during the compromise negotiations and who never consented to the terms of the settlement stand to receive much less favorable treatment. The *Owens Corning* court concluded:

> Substantive consolidation at its core is equity. ***Its exercise must lead to an equitable result.*** "Communizing" assets of affiliated companies to one survivor to feed all creditors may to some be equal (and hence equitable). But it is hardly so for those creditors who have lawfully bargained prepetition for unequal treatment by obtaining guarantees of separate entities.[36]

**D. In the Event the Holders of Class 13 (Landlord) Claims Vote to Reject the Plan, the Plan Cannot Be Confirmed Under Section 1129(b) as it Unfairly Discriminates Against the Holders of Class 13 Claims.**

---

[35] *Maxwell Newspapers, Inc. v. Travelers Indem. Co.*, 170 B.R. 549, 550 (S.D.N.Y.1994). *In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994), *aff'd*, 68 F.3d 26 (2d Cir. 1995)(emphasis added)(the judge "must exercise his or her independent judgment and discretion in examining settlements even where creditors and other parties in interest are silent").

[36] *Owens Corning*, 419 F.3d at 216 (emphasis added).

16. The Debtors reserve the right to seek confirmation of the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code in the event the holders of, among others, Class 13 (Landlord) claims (an impaired class) vote as a class to reject the Plan. Moreover, the Debtors assert that the Plan can be confirmed on this basis.

17. Notwithstanding the Debtors' assertion to the contrary, the Plan cannot be confirmed over the objection of Class 13 because, in contravention of Section 1129(b)(1), the Plan "discriminates unfairly" with respect to Class 13 Claims.

18. Specifically, despite the fact that the holders of Class 12 Claims (Noteholders) and the vast majority of the holders of Class 13 (Landlord Claims) enjoy the benefit of Debtor guarantees, Class 12 Claims are projected to receive over a 95% dividend, while Class 13 Claims are projected to receive approximately a 70% dividend. The Debtors have offered no basis to explain why this patently discriminatory treatment of Class 13 Claims is reasonable nor required for confirmation.[37] Merrill respectfully submits that there are none, and as a result, the Plan discriminates unfairly, contravenes the express provisions of Section 1129(1), and could not be confirmed over the dissent of Class 13 Claimants.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

---

[37] *See In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 660 (Bankr. Del. 2003), *aff'd*, 308 B.R. 672 (D. Del. 2004)(noting that the hallmarks of the various tests of unfair discrimination "have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate the plan without the proposed discrimination.").

WHEREFORE, Merrill respectfully requests that this Court enter an order denying confirmation of the Plan and granting such other relief as the Court deems just and appropriate.

Dated: September 27, 2006

>Respectfully submitted,

>/s/ Alexandra Steinberg Barrage

>**MORRISON & FOERSTER LLP**

>By: /s/ Larren M. Nashelsky
>    Larren M. Nashelsky

>Larren M. Nashelsky
>Norman S. Rosenbaum
>MORRISON & FOERSTER LLP
>1290 Avenue of the Americas
>New York, NY  10104
>(212) 468-8000
>E-mail: lnashelsky@mofo.com
>        nrosenbaum@mofo.com

>Alexandra Steinberg Barrage
>MORRISON & FOERSTER LLP
>2000 Pennsylvania Avenue, NW
>Suite 5500
>Washington, DC  22209
>(202) 887-1500
>E-mail: abarrage@mofo.com

>Attorneys for Merrill Lynch LP Holdings, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon the following by U.S. Mail or e-mail, on this the 27th day of September, 2006, to the following parties:

Cynthia C. Jackson
Stephen D. Busey
James H. Post
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202

D.J. Baker
Sally McDonald Henry
Rosalie W. Gray
Eric M. Davis
Jane Leamy
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY  10036

Matthew S. Barr
Milbank, Tweed, Hadley & M$^c$Cloy, LLP
1 Chase Manhattan Plaza
New York, NY 10005

John B. MacDonald
Akerman Senterfitt
50 North Laura Street
Suite 2500
Jacksonville, Florida 32202

Office of the U.S. Trustee
135 W.Central Boulevard
Suite 620
Orlando, FL  32801

/s/ Robert Conroy

dc-464500