UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In Re:

WINN-DIXIE STORES, INC.,                    Case No. 3:05-bk-03817-3F1
                                            Chapter 11 (Jointly Administered)

          Debtor.

_____/

**RESPONSE OF CATAMOUNT ATLANTA, LLC TO DEBTORS'
TWENTIETH OMNIBUS OBJECTION TO (A) DUPLICATE DIFFERENT
DEBTOR CLAIMS AND (B) DUPLICATE LIABILITY CLAIMS (DOCKET NO. 10742)**

Claimant, Catamount Atlanta, LLC, a Nevada limited liability company, as assignee of Helene Funk and Peter W. Merner, as nominee for John H. O. La Gatta, as successor to Flask Corporation ("Atlanta"), hereby responds to Debtors' Twentieth Omnibus Objection to (A) Duplicate Different Debtor Claims and (B) Duplicate Liability Claims (Docket No. 10742) (the "20th Objection"), as follows:

1.      Winn-Dixie Stores, Inc. ("Winn-Dixie"), Winn-Dixie Montgomery, Inc. ("WD Montgomery") and affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") on or about February 21, 2005 (the "Petition Date").

2.      Prior to the Petition Date, pursuant to that certain February 10, 1984 Lease and Sublease Agreement, as amended by that certain October 10, 1986 First Lease Modification Agreement, and that certain January 31, 1994 Lease Modification Agreement (as amended, the "Lease"), by and between WD Montgomery and Atlanta for that certain realty WD Montgomery refers to as Store # 2712 at Monroe Drive and Virginia Avenue, Midtown Shopping Center, Atlanta, Georgia (the "Premises"), Atlanta leased the Premises to WD Montgomery. Winn-Dixie guaranteed WD Montgomery's obligations under the Lease.

3.      Prior to the Petition Date, pursuant to that certain June 30, 1983 Ground Sub-Lease (the "Ground Lease") by and between WD Montgomery and Ackerman-Midtown Associates ("Ackerman") for that certain unimproved real property lying underneath Store #2712 at Monroe Drive and Virginia Avenue, Midtown Shopping Center, Atlanta, Georgia (the "Ground"), WD Montgomery leased the Ground, and then assigned the lessee's interest in the Ground Lease to Atlanta.  Atlanta, in turn, leased the Ground and Premises to WD Montgomery pursuant to the Lease.  Winn-Dixie also guaranteed WD Montgomery's obligations under the Ground Lease.

4.      The Debtors rejected the Lease and the Ground Lease effective August 11, 2005.

5.      Atlanta timely filed a proof of claim in the total amount of $310,150.47 related to its pre-petition claims under the Lease and Ground on September 12, 2005 as Claim No. 11786 (the "Atlanta Guaranty Claim"), which claim Atlanta expressly reserved its right to amend in the future.

6.      In the Atlanta Guaranty Claim, Atlanta noted that Ackerman assigned its claims under the Ground Lease to Atlanta.  A copy of the assignment agreement is attached to Atlanta's Response of Catamount Atlanta, LLC to Debtors' Sixteenth Omnibus Objection to (A) Misclassified Claims, (B) Overstated Claims and (C) Overstated Misclassified Claims which was filed on August 21, 2006 as Document No. 10427 (the "16th Response") as Exhibit 1.

7.      The Atlanta Guaranty Claim includes one year's rent for both the Premises and the Ground as statutory damages relating to the Debtors' rejection of the Lease and the Ground Lease. The Atlanta Guaranty Claim also includes Atlanta's claims for unpaid insurance, unpaid real estate taxes, unpaid common area maintenance charges, and unpaid security charges.

8.      On or about September 5, 2006, the Debtors filed their 20th Objection, in which the Debtors object to the Atlanta Guaranty Claim and assert that it is a duplicate of a

contemporaneously filed claim against W-D Montgomery in the same amount (the "Atlanta Claim"). The 20th Objection ignores Atlanta's right to a recovery on each of its claims subject to the restriction that it cannot recover more than the amount of the its total claim. Other courts have recognized that when a creditor holds a claim against a subsidiary and a claim against a parent company based upon a guaranty, then the creditor holds two separate and distinct claims. *Cf. Midland Cogeneration Venture Ltd. Partnership v. Enron Corp. (In re Enron),* 419 F.3d 115, 127 (2nd Cir. 2005)(holding that a creditor which failed to file a guaranty claim against the parent corporation before the bar date based upon a belief that the cases would be substantively consolidated could not file a late claim), and *In re Nucorp Energy, Inc.*, 52 B.R. 843, 845 (Bankr. S.D. Cal. 1985)(holding that a guaranty claim that was inadvertently filed in a subsidiary's case by error of the clerk's office constituted a proof of claim).

9.      The Debtors' proposed Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan") provides for the substantive consolidation of the various Debtor entities; however, the Plan has not been approved, and consequently any such substantive consolidation has not yet been effected. Therefore, Atlanta still is the holder of two valid claims against the different debtor entities.

10.      It is established that where, as here, Atlanta "properly filed a proof of claim in accord with the Bankruptcy Rules, that proof of claim constitutes prima facie evidence of the validity and amount of that claim" unless a party in interest objects. In re Chapman, 132 B.R. 132, 143 (Bankr. N.D. Ill. 1991) (citations omitted); 11 U.S.C. §502(a); Bankruptcy Rule 3001(f). Because a valid proof of claim is *prima facie* evidence of its validity, where, as here, a party objects, the burden is on the objector to introduce evidence rebutting the presumption. Id. Merely filing an objection to the Atlanta Guaranty Claim, without more, is insufficient to challenge the presumption of the Atlanta Guaranty Claim's validity. Id.; In re Frederes, 98 B.R.

165, 166-67 (Bankr. W.D.N.Y. 1989); In re Glenn, 100 B.R. 763, 766 (Bankr. W.D. Pa. 1989);

Matter of Fisher Holding Co., Inc., 12 B.R. 191, 192 (Bankr. S.D. Ind. 1981).

11.     The Ground Lease between Ackerman and WD Montgomery specifically

provides that the lessor will provide certain public liability insurance coverage on the Premises

and that WD Montgomery will pay the lessor for the cost of that coverage. The relevant portions

of the Ground Lease were attached to the 16th Response as Exhibit A. Ackerman purchased the

insurance required by the Ground Lease and billed the Debtors for the cost.  Insurance charges

for the Ground for 2005 totaled $16,888 for the entire shopping center in which the Ground and

the Premises are located. Atlanta attached its pro-ration of the insurance charges, which Atlanta

calculates as $1,368.99, to the 16th Response as Exhibit B.

12.     The amount set forth in the Atlanta Guaranty Claim for taxes was based upon

2004 tax numbers, as 2005 taxes had not been assessed or paid at that time.  Since then, Atlanta

has obtained updated numbers. Atlanta asserts that the amount of taxes due is $6,439.62.[1]

13.     The Debtors appear to object to the claim for rejection damages on the Ground

Lease.  Pursuant to 11 U.S.C. § 502(b)(6), Atlanta is entitled to one years' worth of rent for the

Ground Lease.  As noted above, the Debtors have a copy of the Ground Lease in their files, and

the Ground Lease states that the monthly rent for the period between July 14, 2004, and July 13,

2009, is $5,416.67 per month, which amounts to a yearly rental of $65,000.00. The Atlanta

Guaranty Claim contains a typographical error which lists the rejection damages for the Ground

at $85,000.

14.     The Debtors are liable to Atlanta for common area maintenance ("CAM") charges

and tenant services/security charges ("Security Services").  Ackerman advanced the costs of the

4

CAM and the Security Services and invoiced the Debtors for their pro-rata share of such charges. Atlanta attached copies of the statements for the CAM and the Security Charges and its calculations to the 16th Response as Exhibit C.

15.    As noted in the Atlanta Guaranty Claim and the Atlanta Claim, by virtue of the Debtors' default under the Lease, Debtors are liable to Atlanta for Atlanta's enforcement of its rights under the Lease, including but not limited to attorneys' fees and costs.  Courts have allowed the recovery of attorney fees when executory contracts or leases have been rejected.  *See* In re Shangra-La, Inc., 167 F.3d 843, 849-50 (4th Cir. 1999); *see also* In re Crown Brooks Corp., 269 B.R. 12, 14-18 (Bankr. Del. 2001); In re Narragansett Clothing Co., 119 B.R. 388, 392 (Bankr. D.R.I. 1990).  For example, in In re Child World, Inc., 161 B.R. 349 (Bankr. S.D.N.Y. 1993), the lease provided that the debtor was responsible for payment of attorneys' fees in the event of a breach of the lease.  "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties."  Id. at 353; *See also* In re Best Prod. Co., 148 B.R. 413, 414 (Bankr. S.D.N.Y. 1992); In re Hillsborough Holdings Corp., 126 B.R. 895 (Bankr. M.D. Fla. 1991); In re Westview 74th St. Drug Corp., 59 B.R. 747 (Bankr. S.D.N.Y. 1986).  Courts have awarded attorneys' fees as an administrative claim for those attorneys' fees that were incurred *prior* to the rejection date.   In re Macomb Occupational Health Care, LLC, 300 B.R. 270, 297 (Bankr. E.D. Mich. 2003) ("[O]nly the portion of that amount [attorneys' fees] which was incurred before the August 27, 1999 rejection of the Carini [one of Debtor's lessors] lease agreement would be allowed as a Chapter 11 administrative claim").  Claims for attorney fees that are incurred post-petition and post-rejection of the lease are considered pre-

---

[1]  This number is based upon the Debtors' calculation contained in the Sixteenth Omnibus Objection to (A)

petition unsecured claims. *See generally* <u>In re Dena Corp.</u>, 312 B.R. 162, 172 (Bankr. N.D. Ill. 2004); <u>In re Macomb Occupational Health Care, LLC</u>, 300 B.R. at 297 ("Any such [attorney] fees incurred after the rejection of the Carini lease agreement would "relate back" as part of Carini's damage claim against Debtor and be treated as a pre-petition non-priority claim").

16.    Atlanta has incurred attorneys' fees and costs both prior to the rejection of the Lease and Ground Lease and thereafter.  For purposes of this response, Atlanta has adopted the pro-ration approach espoused by several of the cases listed above.  Atlanta has calculated the attorneys' fees incurred to date after rejection of the Lease at $33,704.97. Atlanta has not attached copies of the statements for these fees in order to preserve the attorney-client and attorney work product privileges, but counsel for Atlanta has submitted redacted copies of the bills to counsel for the Debtors already. Atlanta reserves the right to further amend its claims herein as it continues to incur further attorneys' fees and costs.

17.    Atlanta asserts that the correct amount of the Atlanta Guaranty Claim (and the correct amount of the Atlanta Claim) is as follows:

| | |
|---|---|
| Rejection claim on the Premises: | $ 133,056.00 |
| Rejection claim on the Ground: | 65,000.00 |
| Insurance: | 1,368.99 |
| Taxes: | 6,439.62 |
| CAM: | 21,847.38 |
| Security Charges: | 4,117.73 |
| Attorneys' Fees and Costs: | 33,704.97 |
| Total | $ 265,534.69 |

Atlanta requests that the Court deem this response to be an amendment of the Atlanta Guaranty Claim and the Atlanta Claim to reflect these updated amounts.

18.    Under the terms of the Debtors' proposed Plan, the Debtors classify the Atlanta Guaranty Claim as a Class 13 Claim.  The Atlanta Claim also fits within the definition of Class

---

Misclassified Claims, (B) Overstated Claims and (C) Overstated Misclassified Claims.

13 Claims.  Atlanta requests that the Court determine that both the Atlanta Guaranty Claim and the Atlanta Claim, as amended hereby, should be treated as allowed Class 13 Claims under the Debtors' proposed Plan.

WHEREFORE, Atlanta respectfully requests that the Court deny Debtors' request to disallow the Atlanta Guaranty Claim, that the Court establish and liquidate the Atlanta Guaranty Claim and the Atlanta Claim as set forth above, that the Court determine that the Atlanta Guaranty Claim and the Atlanta Claim, as amended hereby, be treated as Class 13 allowed Claims under the Debtors' proposed Plan, and that the Court grant Atlanta all other relief just and proper.

Date:  September  27, 2006                    Respectfully submitted,

                                              /s/ C. Daniel Motsinger
                                             C. Daniel Motsinger, FBN 0362875
                                             Indiana Atty. No. 10122-49
                                             Krieg DeVault LLP
                                             One Indiana Square, Suite 2800
                                             Indianapolis, IN 46204-2079
                                             Telephone: 317/636-4341; Fax: 317/636-1507
                                             E-mail: cmotsinger@kdlegal.com

                                             -and-

                                             Adam N. Frisch
                                             Florida Bar No. 635308
                                             Held & Israel
                                             1301 Riverplace Blvd., Suite 1916
                                             Jacksonville, FL 32207
                                             (904) 398-7038; Fax: (904) 398-4283
                                             E-mail: afrisch@hilawfirm.com

                                             Attorneys for Catamount Atlanta, LLC, a Nevada
                                             limited liability company, as assignee of Helene
                                             Funk and Peter W. Merner, as nominee for John H.
                                             O. La Gatta, as successor to Flask Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the parties by operation of the Court's electronic filing system on September 27, 2006, as indicated below:

/s/ C. Daniel Motsinger
C. Daniel Motsinger

Adam Ravin
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036

Dennis F. Dunne
Milbank Tweed & Hadley
1 Chase Manhattan Plaza
New York, NY 10005

Elana L. Escamilla
Office of United States Trustee
135 W. Central Boulevard, Suite 620
Orlando, FL 32806

John B. McDonald
Akerman Senterfitt
50 N. Laura Street, Suite 2500
Jacksonville, FL 32202

Cynthia C. Jackson
Smith, Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32201

KD_IM-733021_3.DOC