UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In Re:

WINN-DIXIE STORES, INC.,           Case No. 3:05-bk-03817-3F1
                                                Chapter 11 (Jointly Administered)
         Debtor.
_____/

**RESPONSE OF CATAMOUNT LS-KY, LLC TO DEBTORS'
TWENTIETH OMNIBUS OBJECTION TO (A) DUPLICATE DIFFERENT
DEBTOR CLAIMS AND (B) DUPLICATE LIABILITY CLAIMS (DOCKET NO. 10742)**

      Claimant, Catamount LS-KY, LLC, a Nevada limited liability company, as assignee of Helene Funk and Peter W. Merner, as nominee for John H. O. La Gatta, as successor to Flask Corporation ("LS-KY"), hereby responds to Debtors' Twentieth Omnibus Objection to (A) Duplicate Different Debtor Claims and (B) Duplicate Liability Claims (Docket No. 10742) (the "20th Objection"), as follows:

      1.    Winn-Dixie Stores, Inc. ("Winn-Dixie"), Winn-Dixie Raleigh, Inc. ("WD Raleigh") and affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") on or about February 21, 2005 (the "Petition Date").

      2.    Prior to the Petition Date, pursuant to that certain February 10, 1984 Lease and Sublease Agreement, as amended by that certain October 10, 1986 First Lease Modification Agreement, and that certain January 30, 1992 Second Lease Modification Agreement (as amended, the "Louisville Lease"), by and between the Debtor and LS-KY for that certain real property and fixtures Debtor refers to as Store No. 1676 at 1148 South 4th Street (4th & Oak), Louisville, Kentucky (the "Louisville Premises"), LS-KY leased the Louisville Premises to

Debtor. Moreover, pursuant to that certain October 18, 2004 Assignment and Assumption of Lease Agreement, Debtor assigned its interest in the Louisville Lease (the "Louisville Assignment") to Buehler of Kentucky LLC ("BOK").

3. Further, prior to the Petition Date, pursuant to that certain February 10, 1984 Lease and Sublease Agreement, as amended by that certain October 10, 1986 First Lease Modification Agreement, and that certain January 30, 1992 Second Lease Modification Agreement (as amended, the "Shelbyville Lease"), by and between the Debtor and LS-KY for that certain real property and fixtures Debtor refers to as Store No. 1673 at 120 Midland Boulevard, Shelbyville, Kentucky (the 'Shelbyville Premises"), LS-KY leased the Shelbyville Premises to the Debtor. Moreover, pursuant to that certain October 18, 2004 Assignment and Assumption of Lease Agreement, Debtor assigned its interest in the Shelbyville Lease (the "Shelbyville Assignment")(the Louisville Lease and the Shelbyville Lease are collectively, the "Leases) to BOK.

4. Pursuant to ¶¶ 6 and 19 of the Louisville Lease and the Shelbyville Lease, respectively, and as Debtor has acknowledged, *see*, *e.g.*, Debtors' November 11, 2005 Motion for Order Authorizing (I) Rejection of Leases and Subleases and (II) Abandonment of Related Personal Property, Debtor retained liability as a principal under each of these leases for all obligations thereunder, notwithstanding the Louisville Assignment and the Shelbyville Assignment. Moreover, pursuant to the Louisville Assignment and the Shelbyville Assignment, Debtor expressly remained responsible for all of its liabilities and obligations under each of the Louisville Lease and the Shelbyville Lease, respectively.

5. On May 4, 2005, BOK filed its voluntary Petition for Relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for

the Southern District of Indiana, Evansville Division, which case is being jointly administered as Case No. 05-70961-BHL-11 with those other Chapter 11 cases filed on the same date by BOK's affiliates, Buehler Foods, Inc., Buehler, LLC and Buehler of Carolinas, LLC.

6. The Debtors rejected the Louisville Lease effective September 1, 2005, and the Debtors rejected the Shelbyville Lease effective December 16, 2005.

7. LS-KY filed a proof of claim against Winn-Dixie on September 27, 2005 in the amount of $267,960.49 (the "LS-KY Guaranty Claim") after rejection of the Louisville Lease. The LS-KY Guaranty Claim explicitly references the Debtor's liability to LS-KY's for damages relating to the rejection of the Shelbyville Lease.

8. LS-KY is entitled to one year's rent for both the Louisville Premises and the Shelbyville Premises as statutory damages relating to the Debtors' rejection of the Leases. LS-KY is also entitled to claims for repair and maintenance to the Louisville Premises and the Shelbyville Premises and for unpaid real estate taxes for both locations.

9. On or about September 5, 2006, the Debtors filed their 20th Objection, in which the Debtors object to the LS-KY Guaranty Claim and assert that it is a duplicate of a contemporaneously-filed claim against W-D Raleigh in the same amount (the "LS-KY Claim"). The 20th Objection ignores LS-KY's right to a recovery on each of its claims, subject to the restriction that it cannot recover more than the amount of the total claim. Other courts have recognized that when a creditor holds a claim against a subsidiary and a claim against a parent company based upon a guaranty, then the creditor holds two separate and distinct claims. *Cf. Midland Cogeneration Venture Ltd. Partnership v. Enron Corp. (In re Enron),* 419 F.3d 115, 127 (2nd Cir. 2005)(holding that a creditor which failed to file a guaranty claim against the parent corporation before the bar date based upon a belief that the cases would be substantively

3

consolidated could not file a late claim), and *In re Nucorp Energy, Inc.*, 52 B.R. 843, 845 (Bankr. S.D. Cal. 1985)(holding that a guaranty claim that was inadvertently filed in a subsidiary's case by error of the clerk's office constituted a proof of claim).

10.     The Debtors' proposed Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan") provides for the substantive consolidation of the various Debtor entities; however, the Plan has not been approved, and as a result the substantive consolidation has not yet been effected.  Therefore, LS-KY still is the holder of two valid claims against the different debtor entities.

11.     It is established that where, as here, LS-KY "properly filed a proof of claim in accord with the Bankruptcy Rules, that proof of claim constitutes prima facie evidence of the validity and amount of that claim" unless a party in interest objects.  In re Chapman, 132 B.R. 132, 143 (Bankr. N.D. Ill. 1991) (citations omitted); 11 U.S.C. §502(a); Bankruptcy Rule 3001(f).  Because a valid proof of claim is *prima facie* evidence of its validity, where, as here, a party objects, the burden is on the objector to introduce evidence rebutting the presumption. Id. Merely filing an objection to the LS-KY Guaranty Claim, without more, is insufficient to challenge the presumption of the LS-KY Guaranty Claim's validity.  Id.; In re Frederes, 98 B.R. 165, 166-67 (Bankr. W.D.N.Y. 1989); In re Glenn, 100 B.R. 763, 766 (Bankr. W.D. Pa. 1989); Matter of Fisher Holding Co., Inc., 12 B.R. 191, 192 (Bankr. S.D. Ind. 1981).

12.     In the Debtors' Sixteenth Omnibus Objection to (A) Misclassified Claims, (B) Overstated Claims and (C) Overstated Misclassified Claims, the Debtors calculate the rejection damages related to their rejection of the Lease as well as the taxes due on the Louisville Premises and the Shelbyville Premises.  In LS-KY's Response of Catamount LS-KY to Debtors' Sixteenth Omnibus Objection to (A) Misclassified Claims, (B) Overstated Claims and (C) Overstated

Misclassified Claims filed on August 21, 2006 as Document No. 10428 (the "16th Response"), LS-KY noted that it accepts the Debtors' calculation of the rejection damage claim and the taxes due. LS-KY has additional claims against the Debtor, the right to file which LS-KY expressly reserved as part of the LS-KY Claim.

13. The Debtors were responsible for keeping the Louisville Premises in good condition, repair and appearance during Debtors' postpetition use and occupancy thereof. After BOK vacated the Louisville Premises, LS-KY inspected the Louisville Premises via BTM Engineering, Inc., of Louisville, Kentucky ("BTM"), which identified damages in the amount of $49,560.50, as set forth in detail in <u>Exhibit A</u> attached to the 16th Response. LS-KY has included those damages, which occurred prior to the Petition Date, as part of its LS-KY Claim and reserves its right to amend its previously-filed administrative claim to request payment of those damages to the Louisville Premises which occurred after the Petition Date but prior to the Debtors' rejection of the Louisville Lease.

14. The Debtors also were responsible for keeping the Shelbyville Premises in good condition, repair and appearance during Debtors' postpetition use and occupancy thereof. After BOK vacated the Shelbyville Premises, LS-KY inspected the Shelbyville Premises via BTM, which identified damages in the amount of $9,900.00, as set forth in detail in <u>Exhibit B</u> attached to the 16th Response. Should LS-KY learn that any of the damages to Shelbyville occurred after the Petition Date, LS-KY Claim reserves its right to amend its previously filed administrative claim to request payment of those damages to the Shelbyville Premises which occurred after the Petition Date, but prior to the Debtors' rejection of the Shelbyville Lease.

15. As noted in the LS-KY Guaranty Claim and the LS-KY Claim, by virtue of the Debtors' default under the Lease, Debtors are liable to LS-KY for LS-KY's enforcement of its

rights under the Lease, including but not limited to attorneys' fees and costs. Courts have allowed the recovery of attorney fees when executory contracts or leases have been rejected. *See* In re Shangra-La, Inc., 167 F.3d 843, 849-50 (4th Cir. 1999); *see also* In re Crown Brooks Corp., 269 B.R. 12, 14-18 (Bankr. Del. 2001); In re Narragansett Clothing Co., 119 B.R. 388, 392 (Bankr. D.R.I. 1990). For example, in In re Child World, Inc., 161 B.R. 349 (Bankr. S.D.N.Y. 1993), the lease provided that the debtor was responsible for payment of attorneys' fees in the event of a breach of the lease. "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." Id. at 353; *See also* In re Best Prod. Co., 148 B.R. 413, 414 (Bankr. S.D.N.Y. 1992); In re Hillsborough Holdings Corp., 126 B.R. 895 (Bankr. M.D. Fla. 1991); In re Westview 74th St. Drug Corp., 59 B.R. 747 (Bankr. S.D.N.Y. 1986). Courts have awarded attorneys' fees as an administrative claim for those attorneys' fees that were incurred *prior* to the rejection date. In re Macomb Occupational Health Care, LLC, 300 B.R. 270, 297 (Bankr. E.D. Mich. 2003) ("[O]nly the portion of that amount [attorneys' fees] which was incurred before the August 27, 1999 rejection of the Carini [one of Debtor's lessors] lease agreement would be allowed as a Chapter 11 administrative claim"). Claims for attorney fees that are incurred post-petition and post-rejection of the lease are considered pre-petition unsecured claims. *See generally* In re Dena Corp., 312 B.R. 162, 172 (Bankr. N.D. Ill. 2004); In re Macomb Occupational Health Care, LLC, 300 B.R. at 297 ("Any such [attorney] fees incurred after the rejection of the Carini lease agreement would "relate back" as part of Carini's damage claim against Debtor and be treated as a pre-petition non-priority claim").

16.  LS-KY has incurred attorneys' fees and costs both prior to the rejection of the Lease and Ground Lease and thereafter. For purposes of this response, LS-KY has adopted the

6

pro-ration approach espoused by several of the cases listed above. LS-KY has calculated the attorneys' fees incurred to date after rejection of the Lease at $115,250.53. LS-KY has not attached copies of the statements for these fees in order to preserve the attorney-client and attorney work product privileges, but counsel for LS-KY has submitted redacted copies of the bills to counsel for the Debtors already. LS-KY reserves the right to further amend its claims herein as it continues to incur further attorneys' fees and costs.

17.    LS-KY asserts that the correct amount of the LS-KY Guaranty Claim (and the correct amount of the LS-KY Claim) is as follows:

| | |
|---|---:|
| Rejection damage claim and pro-rated taxes on the Louisville Premises and the Shelbyville Premises: | $ 551,346.00 |
| Repairs to Louisville Premises: | 49,560.50 |
| Repairs to Shelbyville Premises: | 9,900.00 |
| Attorneys' Fees and Costs: | 115,250.53 |
| Total | $ 726,057.03 |

LS-KY requests that the Court deem this response to be an amendment of the LS-KY Guaranty Claim and the LS-KY Claim to reflect these updated amounts.

18.    Under the terms of the Debtors' proposed Plan, the Debtors classify the LS-KY Guaranty Claim as a Class 13 Claim. The LS-KY Claim also fits within the definition of Class 13 Claims. LS-KY requests that the Court determine that both the LS-KY Guaranty Claim and the LS-KY Claim, as amended hereby, should be treated as allowed Class 13 Claims under the Debtors' proposed Plan.

**WHEREFORE**, LS-KY respectfully requests that the Court deny Debtors' request to disallow the LS-KY Guaranty Claim, that the Court establish and liquidate the LS-KY Guaranty Claim and the LS-KY Claim as set forth above, that the Court determine that the LS-KY Guaranty Claim and the LS-KY Claim, as amended hereby, be treated as Class 13 allowed

Claims under the Debtors' proposed Plan, and that the Court grant LS-KY all other relief just and proper.

Date: September 27, 2006        Respectfully submitted,

                                             /s/ C. Daniel Motsinger
                                             C. Daniel Motsinger, FBN 0362875
                                             Indiana Atty. No. 10122-49
                                             Krieg DeVault LLP
                                             One Indiana Square, Suite 2800
                                             Indianapolis, IN 46204-2079
                                             Telephone: 317/636-4341; Fax: 317/636-1507
                                             E-mail: cmotsinger@kdlegal.com

                                             -and-

                                             Adam N. Frisch
                                             Florida Bar No. 635308
                                             Held & Israel
                                             1301 Riverplace Blvd., Suite 1916
                                             Jacksonville, FL 32207
                                             (904) 398-7038; Fax: (904) 398-4283
                                             E-mail: afrisch@hilawfirm.com

                                             Attorneys for Catamount LS-KY, LLC, a Nevada limited liability company, as assignee of Helene Funk and Peter W. Merner, as nominee for John H. O. La Gatta, as successor to Flask Corporation

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served upon the parties by operation of the Court's electronic filing system on September 27, 2006, as indicated below:

                                  /s/ C. Daniel Motsinger
                                  C. Daniel Motsinger

| | |
|---|---|
| Adam Ravin<br>Skadden Arps Slate Meagher & Flom, LLP<br>Four Times Square<br>New York, NY 10036 | Dennis F. Dunne<br>Milbank Tweed & Hadley<br>1 Chase Manhattan Plaza<br>New York, NY 10005 |
| Elana L. Escamilla<br>Office of United States Trustee<br>135 W. Central Boulevard, Suite 620<br>Orlando, FL 32806 | John B. McDonald<br>Akerman Senterfitt<br>50 N. Laura Street, Suite 2500<br>Jacksonville, FL 32202 |
| Cynthia C. Jackson<br>Smith, Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, FL 32201 | |

KD_IM-735681_2.DOC