UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In Re:

WINN-DIXIE STORES, INC.,                    Case No. 3:05-bk-03817-3F1
                                            Chapter 11 (Jointly Administered)
                    Debtor.

_____/

**RESPONSE OF CATAMOUNT ROCKINGHAM, LLC TO DEBTORS'
TWENTIETH OMNIBUS OBJECTION TO (A) DUPLICATE DIFFERENT
DEBTOR CLAIMS AND (B) DUPLICATE LIABILITY CLAIMS (DOCKET NO. 10742)**

Claimant, Catamount Rockingham, LLC, a Nevada limited liability company, as assignee of Helene Funk and Peter W. Merner, as nominee for John H. O. La Gatta, as successor to Flask Corporation ("Rockingham"), hereby responds to Debtors' Twentieth Omnibus Objection to (A) Duplicate Different Debtor Claims and (B) Duplicate Liability Claims (Docket No. 10742) (the "20th Objection"), as follows:

1.      Winn-Dixie Stores, Inc. ("Winn-Dixie"), Winn-Dixie Raleigh, Inc. ("WD Raleigh") and affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") on or about February 21, 2005 (the "Petition Date").

2.      Prior to the Petition Date, pursuant to that certain February 10, 1984 Lease and Sublease Agreement, as amended by that certain October 10, 1986 First Lease Modification Agreement, and that certain January 6, 1994 Lease Modification Agreement (as amended, the "Lease"), by and between WD Raleigh and Rockingham for that certain realty WD Raleigh refers to as Store #2045 at 1206 Rockingham Road, Rockingham, North Carolina (the

"Premises"), Rockingham leased the Premises to WD Raleigh. Winn-Dixie guaranteed WD Raleigh's obligations under the Lease.

3.        The Debtors rejected the Lease effective September 30, 2005.

4.        Rockingham timely filed a proof of claim in the total amount of $287,939.65 related to its pre-petition claims under the Lease on October 7, 2005 as Claim No. 11891 (the "Rockingham Guaranty Claim"), which claim Rockingham expressly reserved its right to amend in the future.

5.        The Rockingham Guaranty Claim includes one year's rent for the Premises as statutory damages relating to the Debtors' rejection of the Lease. The Rockingham Guaranty Claim also includes Rockingham's claims for damages to the Premises during the Debtors' use and occupancy thereof and unpaid taxes.

6.        On or about September 5, 2006, the Debtors filed their 20th Objection, in which the Debtors object to the Rockingham Guaranty Claim and assert that it is a duplicate of a contemporaneously filed claim against W-D Raleigh in the same amount (the 'Rockingham Claim"). The 20th Objection ignores Rockingham's right to a recovery on each of its claims, subject to the restriction that it cannot recover more than the amount of its total claim. Other courts have recognized that when a creditor holds a claim against a subsidiary and a claim against a parent company based upon a guaranty, then the creditor holds two separate and distinct claims. *Cf. Midland Cogeneration Venture Ltd. Partnership v. Enron Corp. (In re Enron),* 419 F.3d 115, 127 (2nd Cir. 2005)(holding that a creditor which failed to file a guaranty claim against the parent corporation before the bar date based upon a belief that the cases would be substantively consolidated could not file a late claim), and *In re Nucorp Energy, Inc.*, 52 B.R.

843, 845 (Bankr. S.D. Cal. 1985)(holding that a guaranty claim that was inadvertently filed in a subsidiary's case by error of the clerk's office constituted a proof of claim).

7.     The Debtors' proposed Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan") provides for the substantive consolidation of the various Debtor entities; however, the Plan has not been approved, and consequently any substantive consolidation has not yet been effected.  Therefore, Rockingham still is the holder of two valid claims against the different debtor entities.

8.     It is established that where, as here, Rockingham "properly filed a proof of claim in accord with the Bankruptcy Rules, that proof of claim constitutes prima facie evidence of the validity and amount of that claim" unless a party in interest objects.  In re Chapman, 132 B.R. 132, 143 (Bankr. N.D. Ill. 1991) (citations omitted); 11 U.S.C. §502(a); Bankruptcy Rule 3001(f).  Because a valid proof of claim is *prima facie* evidence of its validity, where, as here, a party objects, the burden is on the objector to introduce evidence rebutting the presumption. Id. Merely filing an objection to the Rockingham Guaranty Claim, without more, is insufficient to challenge the presumption of the Rockingham Guaranty Claim's validity.  Id.; In re Frederes, 98 B.R. 165, 166-67 (Bankr. W.D.N.Y. 1989); In re Glenn, 100 B.R. 763, 766 (Bankr. W.D. Pa. 1989); Matter of Fisher Holding Co., Inc., 12 B.R. 191, 192 (Bankr. S.D. Ind. 1981).

9.     The taxes claimed in both the Rockingham Guaranty Claim and the Rockingham Claim  have been paid since the filing of those claims.  Rockingham agrees that the tax portions of the Rockingham Guaranty Claim and the Rockingham Claim should be deleted.

10.     In the Debtors' Sixteenth Omnibus Objection to (A) Misclassified Claims, (B) Overstated Claims and (C) Overstated Misclassified Claims, the Debtors calculate the rejection damages related to their rejection of the Lease at $207,277.71.  As stated in the Response of

Catamount Rockingham, LLC to Debtors' Sixteenth Omnibus Objection to (A) Misclassified Claims, (B) Overstated Claims and (C) Overstated Misclassified Claims filed on August 21, 2006 as Document No. 10429 (the "16th Response"), Rockingham accepts that amount for purposes of this response.

11.     At the time that Rockingham filed the Rockingham Claim and the Rockingham Guaranty Claim, Rockingham was unaware that the Debtor had failed to pay certain common area maintenance charges ("CAM") related to the Premises. In late 2005, Rockingham received a letter from counsel for Tri-City, Inc. ("Tri-City") asserting that Tri-City no longer would allow the use of an easement benefiting the Premises unless CAM charges from 2004 were paid. Rockingham has not received an invoice for 2005 CAM charges, but assumes that the 2005 CAM charges will be similar in amount. Rockingham attached a copy of the invoice for the 2004 CAM charges and Rockingham's calculation of the pro-rated 2005 CAM charges to the 16th Response as Group Exhibit A.

12.     The Debtors also have asserted that Rockingham failed to provide documentation to support its claims for repairs to the Premises. Attached to the 16th Response as Exhibit B are copies of the estimates for the repairs to the Premises. Due to the nature of the damages, Rockingham has listed all of them as part of the Rockingham Claim and the Rockingham Guaranty Claim. If Rockingham receives information that indicates that the damages or a portion thereof occurred after the Petition Date, Rockingham reserves its right to file a request for payment of administrative claim related to such damages.

13.     As noted in the Rockingham Guaranty Claim and the Rockingham Claim, by virtue of the Debtors' default under the Lease, Debtors are liable to Rockingham for Rockingham's enforcement of its rights under the Lease, including but not limited to attorneys'

fees and costs.  Courts have allowed the recovery of attorney fees when executory contracts or leases have been rejected.  *See* <u>In re Shangra-La, Inc.</u>, 167 F.3d 843, 849-50 (4th Cir. 1999); *see also* <u>In re Crown Brooks Corp.</u>, 269 B.R. 12, 14-18 (Bankr. Del. 2001); <u>In re Narragansett Clothing Co.</u>, 119 B.R. 388, 392 (Bankr. D.R.I. 1990).  For example, in <u>In re Child World, Inc.</u>, 161 B.R. 349 (Bankr. S.D.N.Y. 1993), the lease provided that the debtor was responsible for payment of attorneys' fees in the event of a breach of the lease.  "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties."  <u>Id.</u> at 353; *See also* <u>In re Best Prod. Co.</u>, 148 B.R. 413, 414 (Bankr. S.D.N.Y. 1992); <u>In re Hillsborough Holdings Corp.</u>, 126 B.R. 895 (Bankr. M.D. Fla. 1991); <u>In re Westview 74th St. Drug Corp.</u>, 59 B.R. 747 (Bankr. S.D.N.Y. 1986).  Courts have awarded attorneys' fees as an administrative claim for those attorneys' fees that were incurred *prior* to the rejection date.  <u>In re Macomb Occupational Health Care, LLC</u>, 300 B.R. 270, 297 (Bankr. E.D. Mich. 2003) ("[O]nly the portion of that amount [attorneys' fees] which was incurred before the August 27, 1999 rejection of the Carini [one of Debtor's lessors] lease agreement would be allowed as a Chapter 11 administrative claim").  Claims for attorney fees that are incurred post-petition and post-rejection of the lease are considered pre-petition unsecured claims.  *See generally* <u>In re Dena Corp.</u>, 312 B.R. 162, 172 (Bankr. N.D. Ill. 2004); <u>In re Macomb Occupational Health Care, LLC</u>, 300 B.R. at 297 ("Any such [attorney] fees incurred after the rejection of the Carini lease agreement would "relate back" as part of Carini's damage claim against Debtor and be treated as a pre-petition non-priority claim").

14.    Rockingham has incurred attorneys' fees and costs both prior to the rejection of the Lease and thereafter.  For purposes of this response, Rockingham has adopted the pro-ration

approach espoused by several of the cases listed above. Rockingham has calculated the attorneys' fees incurred to date after rejection of the Lease at $29,686.95. Rockingham has not attached copies of the statements for these fees in order to preserve the attorney-client and attorney work product privileges, but counsel for Rockingham has submitted redacted copies of the bills to counsel for the Debtors already. Rockingham reserves the right to further amend its claims herein as it continues to incur further attorneys' fees and costs.

15.     Rockingham asserts that the correct amount of the Rockingham Claim (and the correct amount of the Rockingham Guaranty Claim) is as follows:

| | |
|---|---|
| Rejection claim on the Premises: | $207,277.71 |
| Repairs to the Premises: | 67,000.00 |
| Attorneys' Fees and Costs: | 29,686.95 |
| CAM: | 11,604.42 |
| Total | $315,569.08 |

Rockingham requests that the Court deem this response to be an amendment of the Rockingham Guaranty Claim and the Rockingham Claim to reflect these updated amounts.

16.     Under the terms of the Debtors' proposed Plan, the Debtors classify the Rockingham Guaranty Claim as a Class 13 Claim.  The Rockingham Claim also fits within the definition of Class 13 Claims.  Rockingham requests that the Court determine that both the Rockingham Guaranty Claim and the Rockingham Claim, as amended hereby, should be treated as allowed Class 13 Claims under the Debtors' proposed Plan.

**WHEREFORE**, Rockingham respectfully requests that the Court deny Debtors' request to disallow the Rockingham Guaranty Claim, that the Court establish and liquidate the Rockingham Guaranty Claim and the Rockingham Claim as set forth above, that the Court determine that the Rockingham Guaranty Claim and the Rockingham Claim, as amended hereby,

be treated as Class 13 allowed Claims under the Debtors' proposed Plan, and that the Court grant

Rockingham all other relief just and proper.

Date:  September  27, 2006                    Respectfully submitted,

                                                  /s/ C. Daniel Motsinger
                                             C. Daniel Motsinger, FBN 0362875
                                             Indiana Atty. No. 10122-49
                                             Krieg DeVault LLP
                                             One Indiana Square, Suite 2800
                                             Indianapolis, IN 46204-2079
                                             Telephone: 317/636-4341; Fax: 317/636-1507
                                             E-mail: cmotsinger@kdlegal.com

                                             -and-

                                             Adam N. Frisch
                                             Florida Bar No. 635308
                                             Held & Israel
                                             1301 Riverplace Blvd., Suite 1916
                                             Jacksonville, FL 32207
                                             (904) 398-7038; Fax: (904) 398-4283
                                             E-mail: afrisch@hilawfirm.com

                                             Attorneys for Catamount Rockingham, LLC,
                                             a Nevada limited liability company, as assignee of
                                             Helene Funk and Peter W. Merner, as nominee for
                                             John H. O. La Gatta, as successor to Flask
                                             Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served upon the parties by operation of the Court's electronic filing system on September 27, 2006, as indicated below:

/s/ C. Daniel Motsinger

C. Daniel Motsinger

Adam Ravin
Skadden Arps Slate Meagher & Flom, LLP
Four Times Square
New York, NY 10036

Elana L. Escamilla
Office of United States Trustee
135 W. Central Boulevard, Suite 620
Orlando, FL 32806

Cynthia C. Jackson
Smith, Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32201

Dennis F. Dunne
Milbank Tweed & Hadley
1 Chase Manhattan Plaza
New York, NY 10005

John B. McDonald
Akerman Senterfitt
50 N. Laura Street, Suite 2500
Jacksonville, FL 32202

KD_IM-735612_2.DOC