**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | **CASE NO. 05-03817-3F1** |
| | ) | |
| **WINN DIXIE STORES, INC., <u>et</u> <u>al.</u>,** | ) | **CHAPTER 11** |
| | ) | |
| Debtor. | ) | **JOINTLY ADMINISTERED** |
| | ) | |

**RESPONSE OF MERRILL LYNCH LP HOLDINGS IN OPPOSITION TO
DEBTOR'S TWENTIETH OMNIBUS OBJECTION TO (A) DUPLICATE
DIFFERENT DEBTOR CLAIMS AND (B) DUPLICATE LIABILITY
<u>CLAIMS REGARDING CLAIM NUMBER 13186</u>**

Merrill Lynch LP Holdings, Inc. ("<u>Merrill</u>"), by and through its undersigned counsel,

opposes the Debtor's objection to Claim Number 13186 (the "<u>Guaranty Claim</u>") as stated in the

Debtor's Twentieth Omnibus Objection (the "<u>Objection</u>") on the following grounds:

1.       On February 21, 2005 the Debtors filed the above-captioned Chapter 11 cases.

As of February 28, 2005, as a result of the rejection of the Bennettsville Lease and Hiram Lease

(each as defined below), Winn-Dixie Stores, Inc. (the "<u>Guarantor</u>"), one of the above-captioned

jointly administered debtors, became indebted and liable to Merrill, a holding company formed

by Merrill Lynch, Pierce, Fenner & Smith, Inc. ("<u>Merrill Lynch</u>"), for (i) certain unpaid, pre-

petition charges due and owing under the Bennettsville Lease (as defined below); (ii) damages

resulting from the rejection of the Bennettsville Lease; (iii) certain unpaid, pre-petition charges

due and owing under the Hiram Lease (as defined below); and (iv) damages resulting from the

rejection of the Hiram Lease.

2.       The Debtor's filed their Joint Plan of Reorganization of Winn-Dixie Stores, Inc.

and Affiliated Debtors (the "<u>Plan</u>") on August 9, 2006.  Prior to filing this response, Merrill filed

a separate objection to the Plan (the "<u>Plan Objection</u>")(Docket No. 11431).  The Plan Objection

and the arguments contained therein, are incorporated herein by reference in their entirety.

**I.      FACTUAL BACKGROUND**

**A.      <u>The Bennettsville Lease</u>**

3.      On August 26, 1999, Winn-Dixie Raleigh, Inc. ("<u>W-D Raleigh</u>") entered into that

certain Lease Agreement (the "<u>Bennettsville Lease</u>")[1] with WD South Carolina LLC (successor-

in-interest to Bennettsville 99-SC, LLC), a South Carolina limited liability company (the

"<u>Bennettsville Landlord</u>"), pursuant to which W-D Raleigh agreed to lease from the

Bennettsville Landlord certain real property located in Bennettsville, South Carolina (the

"<u>Bennettsville Property</u>"), to serve as the location for W-D Raleigh's Bennettsville store (Store

No. 2130).

4.      Pursuant to that certain Note Purchase Agreement, dated as of August 26, 1999,

(the "<u>Bennettsville Note Purchase Agreement</u>"), between the Bennettsville Landlord and Merrill

Lynch (as successor-in-interest by assignment from John Hancock Life Insurance Company,

John Hancock Variable Life Insurance Company, and John Hancock Mutual Life Insurance

Company), the Bennettsville Landlord issued and sold to Merrill Lynch its 7.57% Secured Notes

due June 1, 2019, in the aggregate principal amount of $3,483,317.19 (the "<u>Bennettsville</u>

<u>Notes</u>").

5.      The Bennettsville Notes were secured in part by (a) that certain Mortgage,

Security Agreement and Fixture Filing, dated as of August 26, 1999 (the "<u>Bennettsville</u>

<u>Mortgage</u>"), made by the Bennettsville Landlord to Wells Fargo Bank Northwest, N.A. (as

successor to First Security Bank, National Association) and Val T. Orton (the "<u>Individual</u>

---

[1]  The agreements referenced in this Opposition are confidential and constitute the proprietary business information of Merrill. For this reason, Merrill has not attached such agreements hereto.  If necessary, such agreements can be made available subject to appropriate confidentiality arrangements.

2

Trustee," and collectively with the Trustee, together acting for the benefit of Merrill Lynch, the "Mortgagee") and (b) that certain Assignment of Lease and Agreement, dated as of August 26, 1999 (the "Bennettsville Lease Assignment"), also made by the Bennettsville Landlord to the Mortgagee in connection with the Bennettsville Lease.

6.      Pursuant to Paragraph 1 of the Bennettsville Lease Assignment, as security for the fulfillment of its payment obligations under, among other instruments, the Bennettsville Notes, the Bennettsville Landlord assigned and transferred to the Mortgagee all of the Bennettsville Landlord's right, title, and interest in, to, and under the Bennettsville Lease, together with all rights, powers, privileges, options, and other benefits of the Bennettsville Landlord under the Bennettsville Lease, including, inter alia, the right to pursue and collect any claim in a bankruptcy or other insolvency proceeding involving W-D Raleigh or the Guarantor.

7.      Under the terms of that certain Indenture, dated as of August 26, 1999, also between the Bennettsville Landlord and the Mortgagee (the "Bennettsville Indenture"), all payments of Rent (as such term is defined in the Bennettsville Lease) (the "Bennettsville Rental Payments") rendered by W-D Raleigh under the Bennettsville Lease were required to be applied by the Trustee in payment of the principal of and interest on the Bennettsville Notes.  W-D Raleigh made all Bennettsville Rental Payments directly to Merrill Lynch, which applied the payments in reduction of the debt owed by the Bennettsville Landlord under the Bennettsville Notes.

8.      On April 22, 2005, Merrill Lynch and Walallan Holdings, Inc. ("Walallan"), a Delaware corporation that owned all of the membership interests (the "Bennettsville Member Interests") in the Bennettsville Landlord, entered into a Letter Agreement (the "Bennettsville Letter Agreement"), pursuant to which Walallan agreed, inter alia, to transfer the Bennettsville

Member Interests to Merrill.  In addition, under the terms of the Bennettsville Letter Agreement,

Walallan agreed to assign and transfer to Merrill Lynch and/or Merrill any and all rights of the

Bennettsville Landlord to assert and recover on any claims against W-D Raleigh in relation to its

chapter 11 case, including, without limitation, the rejection damages claim(s) of the Bennettsville

Landlord arising from W-D Raleigh's rejection of the Bennettsville Lease.  The assignment to

Merrill of the Bennettsville Member Interests became effective on May 20, 2005.

9.    On or about February 23, 2005, the Court entered an order pursuant to section

365(a) of title 11 of the United States Code, 11 U.S.C. §§ 110 – 1330 (as amended, the

"Bankruptcy Code"), authorizing W-D Raleigh to reject, among other leases, the Bennettsville

Lease, effective as of February 28, 2005.

10.    On August 1, 2005, Merrill, as the holder of all of the Bennettsville Member

Interests in the Bennettsville Landlord, filed an unsecured, non-priority claim against W-D

Raleigh (Claim No. 9815) in the total amount of $745,161.77 for (i) certain unpaid, pre-petition

charges due and owing under the Bennettsville Lease and (ii) damages resulting from the

rejection of the Bennettsville Lease.  This proof of claim was subsequently amended in the

aggregate amount of $887,027.04 (Claim No. 13187) pursuant to an amendment to the proof of

claim dated April 14, 2006 (the "Amended Bennettsville Proof of Claim").[2]

**B.    The Hiram Lease**

11.    On August 26, 1999, Winn-Dixie Montgomery, Inc. (a/k/a Winn-Dixie Atlanta,

Inc.) ("W-D Montgomery") entered into that certain Lease Agreement (the "Hiram Lease") with

WD Georgia LLC (successor-in-interest to Hiram 99-GA, LLC), a Georgia limited liability

---

[2] The Debtors objected to Merrill's claim no. 13187 in Debtor's Fifteenth Omnibus Objection to (A) No Liability Claims, (B) Overstated Claims and (C) Overstated Misclassified Claims filed on July 25, 2006 (Docket No. 9494).  In turn, Merrill filed its Opposition Response to Debtor's Fifteenth Omnibus Objection to (A) No Liability Claims, (B) Overstated Claims and (C) Overstated Misclassified Claims Regarding Claim Number 13187 on August 14, 2006 (Docket No. 10214), which opposition is pending.

ny-714359

company (the "Hiram Landlord", together with the Bennettsville Landlord, the "Landlord"),
pursuant to which W-D Montgomery agreed to lease from the Hiram Landlord certain real
property located in Hiram, Georgia (the "Hiram Property"), to serve as the location for W-D
Montgomery's Hiram store (Store No. 1829).

12.     Pursuant to that certain Note Purchase Agreement, dated as of August 26, 1999,
(the "Hiram Note Purchase Agreement"), between the Hiram Landlord and Merrill Lynch (as
successor-in-interest by assignment from John Hancock Life Insurance Company, John Hancock
Variable Life Insurance Company, and John Hancock Mutual Life Insurance Company), the
Hiram Landlord issued and sold to Merrill Lynch its 7.57% Secured Notes due June 1, 2019, in
the aggregate principal amount of $5,025,506.61 (the "Hiram Notes").

13.     The Hiram Notes were secured in part by (a) that certain Mortgage, Security
Agreement and Fixture Filing, dated as of August 26, 1999 (the "Hiram Mortgage"), made by the
Hiram Landlord to the Mortgagee and (b) that certain Assignment of Lease and Agreement,
dated as of August 26, 1999 (the "Hiram Lease Assignment"), also made by the Hiram Landlord
to the Mortgagee in connection with the Hiram Lease.

14.     Pursuant to Paragraph 1 of the Hiram Lease Assignment, as security for the
fulfillment of its payment obligations under, among other instruments, the Notes, the Hiram
Landlord assigned and transferred to the Mortgagee all of the Hiram Landlord's right, title, and
interest in, to, and under the Hiram Lease, together with all rights, powers, privileges, options,
and other benefits of the Hiram Landlord under the Hiram Lease, including, inter alia, the right
to pursue and collect any claim in a bankruptcy or other insolvency proceeding involving W-D
Montgomery or the Guarantor, the guarantor of W-D Montgomery's obligations under the Hiram
Lease.

5

15.    Under the terms of that certain Indenture, dated as of August 26, 1999, also between the Hiram Landlord and the Mortgagee (the "Hiram Indenture"), all payments of Rent (as such term is defined in the Hiram Lease) (the "Hiram Rental Payments") rendered by W-D Montgomery under the Hiram Lease were required to be applied by the Trustee in payment of the principal of and interest on the Hiram Notes.  W-D Montgomery made all Rental Payments directly to Merrill Lynch, which applied the payments in reduction of the debt owed by the Hiram Landlord under the Hiram Notes.

16.    On April 22, 2005, Merrill Lynch and Walallan, which corporation owned all of the membership interests (the "Hiram Member Interests") in the Hiram Landlord, entered into a Letter Agreement (the "Hiram Letter Agreement"), pursuant to which Walallan agreed, inter alia, to transfer the Hiram Member Interests to Merrill.  In addition, under the terms of the Hiram Letter Agreement, Walallan agreed to assign and transfer to Merrill Lynch and/or Merrill any and all rights of the Hiram Landlord to assert and recover on any claims against W-D Montgomery in relation to its chapter 11 case, including, without limitation, the rejection damages claim(s) of the Hiram Landlord arising from W-D Montgomery's rejection of the Hiram Lease.  The assignment to Merrill of the Hiram Member Interests became effective on May 20, 2005.

17.    On or about February 23, 2005, the Court entered an order pursuant to section 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 110 – 1330 (as amended, the "Bankruptcy Code"), authorizing the Debtors to reject, among other leases, the Hiram Lease, effective as of February 28, 2005.

18.    On August 1, 2005, Merrill, as the holder of all of the Hiram Member Interests in the Landlord, filed an unsecured, non-priority claim against the Debtor (Claim No. 9816) in the

6

total amount of $1,010,815.61 for (i) certain unpaid, pre-petition charges due and owing under the Hiram Lease and (ii) damages resulting from the rejection of the Hiram Lease.  This proof of claim was subsequently amended in the aggregate amount of $1,145,741.28 (Claim No. 13188) pursuant to an amendment to the proof of claim dated April 19, 2006 (the "Hiram Amended Proof of Claim").

### C.    The Guaranty Claim

19.    Pursuant to (i) that certain Guaranty of Lease Obligations by and between the Guarantor and the Bennettsville Landlord (relating to the Bennettsville Lease), dated as of August 26, 1999 (the "Bennettsville Guaranty") and (ii) that certain Guaranty of Lease Obligations by and between the Guarantor and the Hiram Landlord (relating to the Hiram Lease) dated as of August 26, 1999 (the "Hiram Guaranty"), the Guarantor unconditionally guaranteed the payment and performance of all obligations of W-D Raleigh and W-D Montgomery (together the "Debtors") under the Bennettsville Lease and the Hiram Lease (together the "Leases"), including the due and punctual payment of all amounts that the Debtors were or may have become obligated to pay to the Landlord under the Leases, including, without limitation, all payments of Rent and Additional Monetary Obligations (as such terms are defined in the Leases).

20.    On or about February 23, 2005, the Court entered an order pursuant to section 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 110 – 1330 (as amended, the "Bankruptcy Code"), authorizing the Debtors to reject, inter alia, the Leases, effective as of February 28, 2005.

21.    On August 1, 2005, Merrill filed an unsecured, non-priority claim against the Guarantor (Claim No. 9814) for (i) certain unpaid, pre-petition charges due and owing under the

Leases and (ii) damages resulting from the rejection of the Leases in the aggregate amount of $1,755,977.38. This proof of claim was subsequently amended in the aggregate amount of $8,421,391.99 pursuant to an amendment to the proof of claim dated April 19, 2006 (Claim No. 13186 - - the Guaranty Claim).

### D.    Winn-Dixie's Claim Objection

22.    In Exhibit A to the Objection, the Debtors assert that the Guaranty Claim (# 13186) should be disallowed as a "duplicate different debtor claim" comprised of the aggregate of claim nos. 13187 and 13188. Yet neither of these claims are guaranty claims — they are each amended lease rejection claims filed by Merrill against W-D Raleigh and W-D Montgomery (collectively, the "Debtor Lessees"), respectively:

WINN-DIXIE STORES, INC., ET AL.
TWENTIETH OMNIBUS CLAIMS OBJECTION
EXHIBIT A - DUPLICATE DIFFERENT DEBTOR CLAIMS TO
BE DISALLOWED CONTINGENT ON PLAN CONFIRMATION

Page: 23 of 43
Date: 09/01/2006

| Name of Claimant | Remaining Claim No. | Duplicate Claim to be Disallowed | Amount of Claim to be Disallowed | Reason for Disallowance |
|---|---|---|---|---|
| Creditor Id: 41058? MERRILL LYNCH LP HOLDINGS, INC ATTN M MCINERNEY/N GRIFFINS 4 WORLD FINANCIAL CENTER NEW YORK NY 10080 Counsel: ATTN LARREN M NASHELSKY, ESQ | 13188 Debtor: | 13186 WINN-DIXIE STORES, INC. | $8,421,391.99 | DUPLICATES AGGREGATE OF CLAIM LISTED IN REMAINING CLAIM COLUMN AND CLAIM NUMBER 13187. |

## II.    DISCUSSION

23.    It is unclear from the Debtor's limited explanation on what basis the Debtor determined the Guaranty Claim was duplicative. Indeed, the Guaranty Claim is entirely separate as it is premised on a guaranty that was provided to Merrill by the Guarantor as additional security for Rents and Additional Monetary Obligations due under the Bennettsville Lease and Hiram Lease. Therefore, the Guaranty Claim was made against a separate legal entity from the underlying Debtor Lessees.

8

24.     Generally, the Debtors seek to expunge the Guaranty Claim by filing the Objection **and** requesting that this Court confirm the Plan, which calls for a deemed substantive consolidation of the Debtors' estates.  Without repeating all the arguments contained in Merrill's Plan Objection, Merrill objects to Debtors' deemed substantive consolidation because (i) it had no part in the underlying negotiations, leading to the unfair and inequitable treatment of its guaranty claims; (ii) the deemed substantive consolidation proposed by the Debtors contravenes applicable law; and (iii) it stands to have its multi-million dollar guaranty claims expunged as a result of the foregoing.  For purposes of distribution under the Plan, each of Merrill's lease rejection damage claims against a Debtor Lessee — and its corresponding guaranty claim against the Guarantor — would be morphed into one claim, rendering Merrill's Guaranty Claim worthless.

25.     On this basis, the Objection is, at best, inaccurate to the extent it deems the Guaranty Claim is duplicative of a lease rejection damage claim.  At worst, it is an attempt outside of the pending plan confirmation process to render the Guaranty Claim a nullity, thereby defeating the sole economic rationale for the Landlord's lease of the premises to the Debtor Lessees.  Accordingly the Objection, on its face, is defective and should be denied.

26.     Furthermore,  the Guaranty Claim, which is grouped together in the Plan with other landlords not holding guaranty claims, would only be entitled to a projected 70.6% recovery on its surviving claim — which treatment is identical to those creditors holding **unguaranteed** landlord and Vendor/Supplier Claims — while Class 12 Noteholders with guaranty claims are expected to receive an estimated 95.6% recovery.[3]

27.     If this Court were to sustain the Objection, Merrill's Guaranty Claim would be extinguished before Merrill could argue the merits of the Plan Objection, including the Debtors'

---

[3] *See* Disclosure Statement at pp. 9-10.

failure to properly classify or treat landlord/guaranty claims, at the Plan confirmation hearing.

Indeed, through the Objection, the Debtors attempt to obtain consent to the inequitable treatment

proposed by the Plan:

> Claimants may elect, by not timely responding to this Objection, to
> permit their Duplicate Different Debtor Claims listed on Exhibit A
> to be disallowed contingent upon the confirmation and
> effectiveness of the Plan.  In the absence of a Response [as defined
> in the Objection], the Debtors will present to the Court the
> Proposed Order disallowing the Duplicate Different Debtor
> Claims, contingent upon the confirmation and effectiveness of the
> Plan.[4]

Merrill objects to this approach and asserts that any issues with respect to the Guaranty Claim

should be determined in connection with the Plan confirmation hearing.

28.    Ultimately, if this Court were to deny confirmation of the Plan and the deemed

substantive consolidation "compromise" proposed by the Debtors, the Guaranty Claim would

survive and Merrill would seek to resolve any dispute directly with Debtor's counsel.  If,

however, this Court were to confirm the Plan thereby wiping out all guaranty claims of landlords

who, it appears, were not parties to the deemed substantive consolidation compromise, the

Objection becomes moot.  In either scenario, at this time this Court should overrule the

Objection.

**[SIGNATURE BLOCK APPEARS ON FOLLOWING PAGE]**

---

[4] Debtors' Objection at ¶ 16.

### III.    CONCLUSION

WHEREFORE, Merrill respectfully requests that this Court allow the Guaranty Claim in the amount of $8,421,391.99, overrule the Objection, and prohibit the Debtors from further objecting to the Guaranty Claim on other grounds.

Dated: September 28, 2006

**MORRISON & FOERSTER LLP**

By:  /s/ Larren M. Nashelsky
    Larren M. Nashelsky

Larren M. Nashelsky
Norman S. Rosenbaum
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY  10104
(212) 468-8000
E-mail: lnashelsky@mofo.com
       nrosenbaum@mofo.com

Alexandra Steinberg Barrage
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 5500
Washington, DC  22209
(202) 887-1500
E-mail: abarrage@mofo.com

Attorneys for Merrill Lynch LP
Holdings, Inc.

ny-714359

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by U.S.

Mail or e-mail, on this the 28th day of September, 2006, to the following parties:

Cynthia C. Jackson
Stephen D. Busey
James H. Post
225 Water Street, Suite 1800
Jacksonville, FL 32202

D.J. Baker
Sally McDonald Henry
Rosalie W. Gray
Eric M. Davis
Jane Leamy
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY  10036

Matthew S. Barr
Milbank, Tweed, Hadley & M$^c$Cloy, LLP
1 Chase Manhattan Plaza
New York, NY 10005

John B. MacDonald
Akerman Senterfitt
50 North Laura Street
Suite 2500
Jacksonville, Florida 32202

Office of the U.S. Trustee
135 W.Central Boulevard
Suite 620
Orlando, FL  32801

/s/ Robert Conroy

ny-714359