IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | CASE NO. 05-03817-3F1 |
| | ) | |
| **WINN DIXIE STORES, INC., <u>et al.</u>,** | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | JOINTLY ADMINISTERED |
| | ) | |

**RESPONSE OF MERRILL LYNCH LP HOLDINGS IN OPPOSITION TO
DEBTORS' TWENTIETH OMNIBUS OBJECTION TO (A) DUPLICATE
DIFFERENT DEBTOR CLAIMS AND (B) DUPLICATE LIABILITY CLAIMS
<u>REGARDING CLAIM NUMBER 12330</u>**

Merrill Lynch LP Holdings, Inc. ("<u>Merrill</u>"), by and through its undersigned counsel, opposes the Debtors' objection to Claim Number 12330 (the "<u>Guaranty Claim</u>") as stated in the Debtors' Twentieth Omnibus Objection (the "<u>Objection</u>") on the following grounds:

1. On February 21, 2005 the Debtors filed the above-captioned Chapter 11 cases. Pursuant to the Guaranty (as defined below), Winn-Dixie Stores, Inc. (the "<u>Guarantor</u>"), one of the above-captioned jointly administered debtors, is indebted and liable to Merrill, a holding company formed by Merrill Lynch, Pierce, Fenner & Smith, Inc. ("<u>Merrill Lynch</u>"), for (i) certain unpaid, pre-petition charges due and owing under the Adamsville Lease (as defined below) and (ii) damages resulting from the rejection of the Adamsville Lease.

2. The Debtors filed their Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "<u>Plan</u>") on August 9, 2006. Prior to filing this response, Merrill filed a separate objection to the Plan (the "<u>Plan Objection</u>") (Docket No. 11431). The Plan Objection and all arguments contained therein, are incorporated herein by reference in their entirety.

2

I.    **FACTUAL BACKGROUND**

A.    <u>**The Adamsville Lease**</u>

3.    On September 28, 1999, Winn-Dixie Montgomery, Inc. ("<u>Debtor</u>") entered into that certain Lease Agreement (the "<u>Lease</u>")[1] with Adam-Dix Properties, Corp., a Delaware limited liability company (the "<u>Landlord</u>"), pursuant to which Debtor agreed to lease from the Landlord certain real property located in Adamsville, Alabama (the "<u>Property</u>"), to serve as the location for Debtor's Adamsville store (Store No. 593).

4.    Pursuant to that certain Assignment of Lease and Agreement, dated as of September 28, 1999, (the "<u>Agreement</u>"), between the Landlord and Wells Fargo Northwest, N.A. (f/k/a First Security Bank, NA) ("<u>Wells Fargo</u>"), the Landlord issued and sold to Wells Fargo its 7.55% Secured Notes due September 30, 2016, in the aggregate principal amount of $3,495,000.00 (the "<u>Notes</u>").

5.    The Notes were secured in part by (a) that certain Mortgage, Security Agreement and Fixture Filing, dated as of August 26, 1999 (the "<u>Mortgage</u>"), made by the Landlord to the Mortgagee and (b) that certain Assignment of Lease and Agreement, dated as of September 28, 1999 (the "<u>Assignment</u>"), also made by the Landlord to the Mortgagee in connection with the Lease.

6.    Pursuant to Paragraph 1 of the Assignment, as security for the fulfillment of its payment obligations under, among other instruments, the Notes, the Landlord assigned and transferred to the Mortgagee all of the Landlord's right, title, and interest in, to, and under the Lease, together with all rights, powers, privileges, options, and other benefits of the Landlord

---

[1] The agreements referenced in this Opposition are confidential and constitute the proprietary business information of Merrill Lynch. For this reason, Merrill Lynch has not attached such agreements hereto. If necessary, such agreements can be made available subject to appropriate confidentiality arrangements.

under the Lease, including, <u>inter alia</u>, the right to pursue and collect any claim in a bankruptcy or other insolvency proceeding involving the Debtor or the Guarantor, the guarantor of the Debtor's obligations under the Lease.

7. Under the terms of that certain Indenture, dated as of September 28, 1999, also between the Landlord and the Mortgagee (the "<u>Indenture</u>"), all payments of Rent (as such term is defined in the Lease) (the "<u>Rental Payments</u>") rendered by the Debtor under the Lease were required to be applied by the Trustee in payment of the principal of and interest on the Notes. The Debtor made all Rental Payments directly to Merrill Lynch, which applied the payments in reduction of the debt owed by the Landlord under the Notes.

8. On December 30, 2005, Merrill Lynch and Wells Fargo, entered into a Letter Agreement (the "<u>Letter Agreement</u>"), pursuant to which Wells Fargo assigned its interest in the Notes to Merrill Lynch. In addition, under the terms of the Letter Agreement, Wells Fargo agreed to assign and transfer to Merrill Lynch and/or Merrill any and all rights of the Landlord to assert and recover on any claims against the Debtor in relation to its chapter 11 case, including, without limitation, the rejection damages claim(s) of the Landlord arising from the Debtor's rejection of the Lease. The assignment to Merrill of the Notes became effective on January 12, 2006.

9. On or about September 8, 2005, the Court entered a rejection procedures order allowing the Debtors to reject, <u>inter alia</u>, a number of Winn-Dixie stores, including Store No. 593 by filing a rejection notice. A Notice of Rejection for Unexpired Lease relating to Store No. 593 was filed with this Court on or about September 15, 2005.

10. On October 31, 2005, Wells Fargo filed an unsecured, non-priority claim against the Debtor (Claim No.12332) in the total amount of $844,260.99[2] for (i) certain unpaid, pre-petition charges due and owing under the Lease and (ii) damages resulting from the rejection of the Lease.   Wells Fargo subsequently transferred its interest in the Claim to Merrill Lynch and a Notice of Transfer was filed with this Court pursuant to Bankruptcy Rule 3001.

### C.   The Guaranty Claim

11. Pursuant to (i) that certain Guaranty of Lease Obligations between the Guarantor and the Landlord (relating to the Lease), dated as of September 28, 1999 (the "Guaranty"), the Guarantor unconditionally guaranteed the payment and performance of all obligations of the Debtor under the Lease, including the due and punctual payment of all amounts that the Debtor was or may have become obligated to pay to the Landlord under the Lease, including, without limitation, all payments of Rent and Additional Monetary Obligations (as such terms are defined in the Lease).

12. On or about September 8, 2005, the Court entered a rejection procedures order allowing the Debtors to reject, inter alia, a number of Winn-Dixie stores, including Store No. 593 by filing a rejection notice.  A Notice of Rejection for Unexpired Lease relating to Store No. 593 was filed with this Court on or about September 15, 2005.

13. On October 28, 2005, Wells Fargo filed an unsecured, non-priority claim against the Guarantor (Claim No.12333 – Guaranty Claim) in the total amount of $1,535,287.00 for (i) certain unpaid, pre-petition charges due and owing under the Lease and (ii) damages resulting from the rejection of the Lease.  Wells Fargo subsequently transferred its interest in the Claim to

---

[2] The Debtors objected to this claim in the Debtors' Fifteenth Omnibus Objection to (A) No Liability Claims, (B) Overstated Claims, (C) Unliquidated Claims and (D) Amended and Superceded Claims filed on July 25, 2006 (Docket No. 9494).  The Response to Debtors' Thirteenth Omnibus Objection to (A) No Liability Claims, (B) Overstated Claims, (C) Unliquidated Claims and (D) Amended and Superceded Claims filed on August 14, 2006 (Docket No. 10228) is pending.

Merrill Lynch and a Notice of Transfer was filed with this Court pursuant to Bankruptcy Rule 3001.

### D. Winn-Dixie's Claim Objection

14. In Exhibit B to the Objection, the Debtors assert that the Guaranty Claim should be disallowed as a "duplicate liability different debtor claim" of claim no. 12332.

```
WINN-DIXIE STORES, INC., ET AL.                                          Page: 7 of 7
TWENTIETH OMNIBUS CLAIMS OBJECTION                                       Date: 09/01/2006
EXHIBIT B - DUPLICATE LIABILITY DIFFERENT DEBTOR CLAIMS
TO BE DISALLOWED CONTINGENT ON PLAN CONFIRMATION
```

| Name of Claimant | Remaining Claim No. | Duplicate Claim to be Disallowed | Amount of Claim to be Disallowed | Reason for Disallowance |
|---|---|---|---|---|
| Creditor Id: 416847<br>WELLS FARGO BANK NORTHWEST NA FKA<br>FIRST SECURITY BANK, NA<br>C/O BALCH & BINGHAM LLP<br>ATTN CHRISTIE L DOWLING, ESQ<br>PO BOX 306<br>BIRMINGHAM AL 35201<br>Transferee: MERRILL LYNCH PIERCE FENNER & SMITH | 12332 | 12330<br>Debtor: WINN-DIXIE STORES, INC. | $1,535,287.00 | DUPLICATES LIABILITY OF CLAIM LISTED IN REMAINING CLAIM COLUMN. |

## II.   DISCUSSION

15. It is unclear from the Debtors limited explanation on what basis the Debtor determined the Guaranty Claim was duplicative. Indeed, the Guaranty Claim is entirely separate as it is premised on a guaranty that was provided to Merrill by the Guarantor as additional security for Rents and Additional Monetary Obligations due under the Lease. Thus, the Guaranty Claim was made against a separate legal entity from the underlying Debtor.

16. Generally, the Debtors seek to expunge the Guaranty Claim by filing the Objection *and* requesting that this Court confirm the Plan, which calls for a deemed substantive consolidation of the Debtors' estates. Without repeating all the arguments contained in Merrill's Plan Objection, Merrill objects to Debtors' deemed substantive consolidation because (i) it had no part in the underlying negotiations, leading to the unfair and inequitable treatment of its guaranty claims; (ii) the deemed substantive consolidation proposed by the Debtors contravenes applicable law; and (iii) it stands to have its multi-million dollar guaranty claims expunged as a

5

result of the foregoing. For purposes of distribution under the Plan, Merrill's lease rejection damage claims against the Debtor — and its corresponding guaranty claim against the Guarantor — would be morphed into one claim, rendering Merrill's Guaranty Claim worthless.

17. On this basis, the Objection is, at best, inaccurate to the extent it deems the Guaranty Claim is duplicative of a lease rejection damage claim. At worst, it is an attempt outside of the pending plan confirmation process to render the Guaranty Claim a nullity, thereby defeating the sole economic rationale for the Landlord's lease of the premises to the Debtor. Accordingly the Objection, on its face, is defective and should be denied.

18. Furthermore, the Guaranty Claim, which is grouped together in the Plan with other landlords not holding guaranty claims, would only be entitled to a projected 70.6% recovery on its surviving claim — which treatment is identical to those creditors holding *unguaranteed* landlord and Vendor/Supplier Claims — while Class 12 Noteholders with guaranty claims are expected to receive an estimated 95.6% recovery.[3]

19. If this Court were to sustain the Objection, Merrill's Guaranty Claim would be extinguished before Merrill could argue the merits of the Plan Objection, including the Debtors' failure to properly classify landlord/guaranty claims, at the Plan confirmation hearing. Indeed, through the Objection, the Debtors attempt to obtain consent to the inequitable treatment proposed by the Plan:

> Claimants may elect, by not timely responding to this Objection, to permit their Duplicate Different Debtor Claims listed on Exhibit A to be disallowed contingent upon the confirmation and effectiveness of the Plan. In the absence of a Response [as defined in the Objection], the Debtors will present to the Court the Proposed Order disallowing the Duplicate Different Debtor Claims, contingent upon the confirmation and effectiveness of the Plan.[4]

---

[3] *See* Disclosure Statement at pp. 9-10.
[4] Debtors' Objection at ¶ 16.

Merrill objects to this approach and asserts that any issues with respect to the Guaranty Claim should be determined in connection with the Plan confirmation hearing.

20. Ultimately, if this Court were to deny confirmation of the Plan and the deemed substantive consolidation "compromise" proposed by the Debtors, the Guaranty Claim would survive and Merrill would seek to resolve any dispute directly with Debtor's counsel. If, however, this Court were to confirm the Plan thereby wiping out all guaranty claims of landlords who, it appears, were not parties to the deemed substantive consolidation compromise, the Objection becomes moot. In either scenario, at this time this Court should overrule the Objection.

**[SIGNATURE BLOCK APPEARS ON FOLLOWING PAGE]**

### III. CONCLUSION

WHEREFORE, Merrill respectfully requests that this Court allow the Guaranty Claim in the amount of $1,535,287.00, overrule the Objection, and prohibit the Debtors from further objecting to the Guaranty Claim on other grounds.

Dated: September 28, 2006

**MORRISON & FOERSTER LLP**

By: /s/ Larren M. Nashelsky
    Larren M. Nashelsky

Larren M. Nashelsky
Norman S. Rosenbaum
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000
E-mail: lnashelsky@mofo.com
        nrosenbaum@mofo.com

Alexandra Steinberg Barrage
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 5500
Washington, DC 22209
(202) 887-1500
E-mail: abarrage@mofo.com

Attorneys for Merrill Lynch LP Holdings, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon the following by U.S. Mail or e-mail, on this the 28th day of September, 2006, to the following parties:

Cynthia C. Jackson
Stephen D. Busey
James H. Post
225 Water Street, Suite 1800
Jacksonville, FL 32202

D.J. Baker
Sally McDonald Henry
Rosalie W. Gray
Eric M. Davis
Jane Leamy
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY  10036

Matthew S. Barr
Milbank, Tweed, Hadley & M$^c$Cloy, LLP
1 Chase Manhattan Plaza
New York, NY 10005

John B. MacDonald
Akerman Senterfitt
50 North Laura Street
Suite 2500
Jacksonville, Florida 32202

Office of the U.S. Trustee
135 W.Central Boulevard
Suite 620
Orlando, FL  32801

/s/ Robert Conroy

ny-715568