Form B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT<br>MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION<br>Winn-Dixie Stores, Inc., et al., Case No. 05-03817-3F1 Jointly Administered | Chapter 11<br>PROOF OF CLAIM | DEADLINE FOR FILING PROOFS OF<br>CLAIM IS: AUGUST 1, 2005 AT 5:00 P.M.<br>EASTERN TIME |
|---|---|---|

Name of Debtor Against Which You Assert Your Claim:

Debtor Name: **Winn-Dixie Stores, Inc., et al.** Case No. **05-03817-3F1**
(See List of Names and Case Numbers on Reverse Side)

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| A. Name and Address of Creditor (The person or other entity to whom the debtor owes money or property): | |
|---|---|
| Vogel and Vogel<br><br>c/o William Peterson, Broker<br>Vogel Realty 11219<br>Financial Centre Parkway, Suite 300<br>Little Rock, Arkansas 72211 | Telephone No. of Creditor<br>**501-225-6018**<br>Fax No. of Creditor<br>**501-225-6308**<br>(If your address has changed or is incorrect as it appears in Item A, please provide corrections) |

| B. Name and address of signatory or other person to whom notices must be served, if different from above. (Check box if): ☐ replaces address above ☐ additional address | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach a copy of statement giving particulars.<br>☐ Check box if you have never received any notices in this case. | If an amount is identified above, you have a claim scheduled by the Debtor as shown. If you agree with the amount and classification of your claim as scheduled by the identified Debtor and you have no other claims against any of the debtors, you do not need to file this proof of claim, EXCEPT AS FOLLOWS: If the amount shown is listed above as DISPUTED, UNLIQUIDATED, OR CONTINGENT, a proof of claim MUST be filed in order for you to receive any distribution on account of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not refile your claim. |
|---|---|---|
| Name: **Karen K. Specie, Esquire** | | |
| Company/Firm: **Scruggs & Carmichael, P.A.** | | |
| Address: **P.O. Box 23109** | | |
| **Gainesville, FL 32602** | | |
| Account or Other Number by Which Creditor Identifies Debtor: | Check here if this claim<br>☐ replaces   ☐ amends   a previously filed claim, dated: | |

| 1. Basis for Claim | | |
|---|---|---|
| ☐ Goods sold to debtor(s) | ☐ Taxes | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| ☐ Services performed for debtor(s) | ☐ Severance agreement | ☐ Wages, salaries, and compensation (fill out below) |
| ☐ Goods purchased from debtor(s) | ☐ Refund | Last four digits of SSN: |
| ☐ Money loaned | ☒ Real property lease | Unpaid compensation for services performed from |
| ☐ Personal injury/property damage | ☐ Personal property lease | _____ to _____ |
| ☐ Other | ☐ Other contract | (date)              (date) |

| 2. Date debt was incurred:<br>**Per court order Docket No. 7971** | 3. If claim is based on a Court Judgment, date obtained: |
|---|---|

4. Total Amount of Claim at Time Case Filed: $ **417,298.74\***   $ _____   $ **14,348.05\***   $ **431,646.79\***
(unsecured)              (secured)              (priority)              (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.     **\*SEE ATTACHED ADDENDUM**
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 5. Secured Claim.<br>☐ Check this box if your claim is secured by collateral (including a right of setoff).<br><br>Brief description of Collateral:<br>☐ Real Estate   ☐ Motor Vehicle   ☐ Other _____<br><br>Value of Collateral: $_____<br><br>Amount of arrearage and other charges <u>at time case filed</u> included in secured claim, if any: $_____<br><br>6. Unsecured Nonpriority Claim $_____<br>☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | 7. Unsecured Priority Claim.<br>☐ Check this box if you have an unsecured priority claim<br><br>Amount entitled to priority $_____<br>Specify the priority of the claim:<br>☐ Wages, salaries, or commissions (up to $4,925),\* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507 (a) (3).<br>☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a) (4).<br>☐ Up to $2,225\* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a) (6).<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. § 507 (a) (7).<br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a) (8).<br>☒ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a) (_).<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
|---|---|

| 8. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>9. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>10. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | This Space Is For Court Use Only |
|---|---|

| Date<br><br>**6/8/06** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) and to receive notice:<br>Print: **Karen K. Specie**           Title: **Attorney at Law**<br>Signature: |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., *et al.*, | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

### ADDENDUM TO PROOF OF CLAIM
### OF LANDLORD, VOGEL & VOGEL,
### AS TO LEASE REJECTION DAMAGES

This Addendum to Proof of Claim is filed on behalf of Vogel and Vogel, an Arkansas general partnership, by and through its undersigned attorneys, and supplements the attached Proof of Claim as to Lease Rejection Damages, as follows:

1.     Vogel and Vogel, an Arkansas general partnership ("Vogel"), is the owner and landlord of Store No. 1571 located in Ville Platte, Louisiana.

2.     The debtors filed an Amended Motion for authority to sell or reject Vogel's Lease, among others (Docket No. 7517) and conducted an auction of leases, including Vogel's. The debtors did not receive any bids for Vogel's lease, so on May 19, 2006, this Court entered an *Order Authorizing Debtors to Reject Additional Store Leases, Establishing Rejection Damage Claim Bar Date and Granting Related Relief* (the "Rejection Order," Docket No. 7971.)

3.     Vogel files this Proof of Claim pursuant to the Rejection Order. The breakdown of Vogel's claim is:

   a)     The unsecured portion of Vogel's claim ($417,298.74) equals fifteen (15%) percent of the total balance of base rent due under the lease, as amended, supplemented and modified, from 6/1/06 (May 2006 base rent was paid in full), through the termination date of 10/13/2013 (Vogel used 10/31/13, since monthly rental installments are due on the first), totaling $2,781,991.60.

b) The priority portion of Vogel's claim ($14,348.05) is the unpaid real estate taxes for 2005 and 2006. The debtors prorated the taxes for 2005, deducting $3,655.85 representing the months of January and February, 2005 (pre-petition months) and paid the balance of the 2005 real property taxes. Vogel doesn't yet know the 2006 tax amounts, so the 2006 priority tax amount is based upon the 2005 tax rates, and is subject to change based upon actual 2006 tax figures. For the months of January through May, 2006, this totals $10,692.20. The priority figure equals the $3,655.85 in unpaid 2005 taxes and the $10,692.20 in unpaid 2006 taxes through the date of rejection.

4.    In addition, the debtor lessee is obligated under the terms of the Lease to return possession of the premises in as good a condition as originally received. Vogel has inspected the premises and has determined significant damage to the parking lot behind the building where, in the loading area there are numerous cracks and areas that have been depressed because of overuse of heavy equipment or use of improper equipment. Apparently the concrete areas will have to be cut out, leveled and replaced. It is currently unknown what repair or reconditioning expenses will have to be incurred, and therefore also included in Vogel's claim for rejection damages. Vogel reserves the right to amend this Proof of Claim to include any additional amounts as may be legally due or payable or enforceable under the lease and the Code.

5.    Vogel is also entitled to other rent-related charges through and including the effective rejection date, plus reasonable attorneys fees and costs that it incurs in filing and pursuing this Proof of Claim and in collecting rent and other charges that may be due under the

2

terms of its lease, and Vogel reserves the right to amend this Proof of Claim to assert any such

additional sums.

Respectfully submitted,

SCRUGGS & CARMICHAEL, P.A.

/s/ Karen K. Specie, Esquire
KAREN K. SPECIE, ESQUIRE
Post Office Box 23109
Gainesville, FL 32602
Telephone: 352-376-5242
Fascimile: 352-375-0690
Florida Bar No. 260746
Attorneys for Vogel and Vogel

AND

J. Maurice Rogers
Hilburn, Calhoon, Harper,
Pruniski & Calhoun, Ltd.
P. O. Box 5551
North Little Rock, Arkansas 72119
Telephone: (501) 372-0110
Attorneys for Vogel and Vogel,
an Arkansas General Partnership

3

# LEASE

THIS LEASE, made this ___5th___ day of ___August___, 19 92,

between ___EAST 19th STREET PROPERTIES, INC., an Arkansas corporation.___

_____

_____ (hereinafter called "Landlord"),

and ___WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified to do___

___business in the State of Louisiana,___ (hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

## WITNESSETH:

PREMISES    That the Landlord, in consideration of the rents herein reserved and of the covenants of the Tenant, does hereby lease and demise unto the Tenant, for the term hereinafter specified, the following described land and improvements thereon:

That certain piece, parcel or tract of land located ___on the northeasterly___ ___corner of the intersection of U. S. Highway 167 and Louisiana Highway___ ___29___ in the City of ___Ville Platte___, Parish of ___Evangeline___,

State of ___Louisiana___, more particularly described as:

See Exhibit "B" attached hereto and by this reference made a part hereof for legal description of demised premises.

Together with a store building, approximately 200 feet in width by 175 feet in depth, containing approximately 35,922 square feet, and pad mounted cooler and freezer annexes on the rear thereof, parking area, sidewalks, service areas and other improvements to be constructed thereon by Landlord according to plans and specifications to be approved by the parties as herein provided, such improvements being more particularly shown on Plot Plan dated July 6, 1992 by Paul F. Stewart Architect Ltd., Monroe, Louisiana, entitled "Ville Platte, Louisiana", attached hereto marked Exhibit "A" and by this reference made a part hereof.

APPROVED
AS TO FORM
Division Mgr.
Legal Dept.
Winn-Dixie Stores,
Inc.

**TERM**  FOR THE TENANT TO HAVE AND TO HOLD from the date when the Tenant opens said premises for the transaction of business as hereinafter provided, for an initial term

of __twenty (20)__ years from said commencement date. Landlord and Tenant agree to execute a supplemental agreement fixing the commencement date when the same shall have been determined as herein provided.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

**RENTAL**  2. The Tenant agrees to pay to the Landlord as minimum guaranteed rental for the demised premises during the term of this lease, and any extensions thereof, the sum of __Two Hundred Forty__

__Thousand One Hundred and 00/100------------------------------__ Dollars ($ 240,100.00   ) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of __Twenty Thousand Eight and 33/100------------__

__----------------------------------------------------------------__ Dollars ($ 20,008.33   ) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof.

In addition, the Tenant agrees to pay the Landlord a percentage rental equal to the amount, if any, by which___---one---___ per cent ( --------1 %) of Tenant's gross sales made from the demised premises in each fiscal year of Tenant during the term of this lease, and any extensions thereof, exceeds the minimum guaranteed annual rental.

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of the percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculation of the percentage rental due hereunder, the Tenant's fiscal year shall be approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

**DEFINITION OF "GROSS SALES"**  2a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold in or from the demised premises, both for cash and on credit. Such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines, banks and public telephones; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, lottery entries, money orders, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

–2–

**RECORD OF SALES**

2b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

**CONSTRUCTION OF IMPROVEMENTS**

3. The Landlord, at its sole cost and expense, shall diligently proceed to construct a store building, parking area, sidewalks, service area and other improvements for use and occupancy by Tenant in conformity with the plans and specifications to be approved by both Landlord and Tenant. Said plans and specifications will be initialled by the parties hereto and when initialled shall constitute a part of this lease. Said plans and specifications shall provide for a complete store building, commonly referred to as a "lock and key job". Tenant at its own expense shall furnish and install its own trade fixtures, compactor and/or baler on concrete pads erected by Landlord. Said trade fixtures, equipment and compactor furnished by the Tenant shall remain the property of Tenant and may be removed by Tenant from the demised premises at any time. Any damage to the store building as result of Tenant's removal of such fixtures or equipment shall be repaired by the Tenant.

The Landlord, at its sole cost and expense, shall grade and pave the parking areas, together with the sidewalks, driveways and service area, and shall provide proper and adequate water drainage and lighting system and operations therefor.

**CONSTRUCTION PERIOD**

4. The final plans and specifications for construction of Tenant's store building and other improvements provided for herein shall be approved by both parties on or before  October 1, 1992  and in the event the parties shall not approve the final plans and specifications to be evidenced by their initials thereon within said period, this lease shall be and become null and void and of no further force and effect unless the parties hereto shall mutually agree in writing to extend the period for approval of said plans and specifications.

The Landlord covenants and agrees that the construction of the store building, parking area and other improvements shall begin on or before November 1, 1992  after the approval of the plans and specifications by the parties hereto and shall be completed and tendered to the Tenant ready for occupancy on or before November 1,  / 1993  from such date; that failing therein, the Tenant may, at its option, cancel and terminate this lease by delivering to the Landlord a writing evidencing its election to so terminate and the Tenant shall thereupon be relieved of and from all liability hereunder; provided, however, that if the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events on or before  February 1, 1994 , said option to terminate shall not arise.

-3-

COMMENCEMENT DATE

5. The Tenant shall open its store for business within thirty (30) days following completion by the Landlord of the construction of the store building, parking area and other improvements and delivery of same to the Tenant as herein provided; and rent shall begin to accrue hereunder upon the date that the Tenant opens its store for business, or upon the expiration of thirty (30) days following completion by the Landlord of the construction of the improvements and delivery of same to the Tenant, whichever date shall sooner occur. No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications.

UTILITIES

6. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities and services used by Tenant at the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities. Tenant shall *not* be responsible for any charges for the fire alarm system, static or flowing water to supply the fire sprinkler system, or any "hook up" fees or other charges incident to providing access to any utility.

REPAIRS

7. Upon completion of construction of the improvements upon the demised premises in accordance with the plans and specifications, Tenant agrees, at its sole cost and expense, to maintain the building and appurtenances and other improvements on the demised premises and the sidewalks, parking and service areas, in good and tenantable condition and repair throughout the term of this lease, and any extensions thereof; and to make all repairs to the improvements, structural and otherwise, both interior and exterior, necessary to preserve the same in good order and condition; and to repair, at or before the end of the term of this lease, or any extensions thereof, all injury done by the installation or removal of furniture, fixtures and property.

TAXES AND INSURANCE

8. During the term of this lease, and any extensions thereof, Tenant agrees to pay and reimburse to Landlord as additional rental the amount of the annual ad valorem real estate taxes levied against the demised premises, and also the annual premium cost of public liability and fire and extended coverage insurance with an earthquake endorsement on the building on the demised premises. The amount of taxes attributable to the demised premises and for which Tenant is to reimburse Landlord shall be less the maximum amount of any abatements, discounts or refunds permitted by law thereon. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements and insurance premium statements as evidence of the taxes and insurance premiums chargeable to Tenant, and such additional rental shall be payable by Tenant within thirty (30) days after tender by Landlord to Tenant of such paid tax and insurance statements. Any payments made by Tenant to Landlord under the provisions of this Article shall be prorated for fractional years occurring at the beginning and expiration of the term of this lease, or any extensions thereof. Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of the Landlord as the Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to Landlord. Any special assessments, improvement liens and the like (other than ad valorem real estate taxes) which are assessed during the term of this lease, or any exercised option extensions hereof, but which are payable in whole or in installments after the expiration or termination of this lease, shall be adjusted and prorated and Landlord shall pay the prorated share thereof for the period subsequent to such expiration or termination, and Tenant shall pay the prorated share thereof prior to such expiration or termination, it being intended that Tenant shall be obligated to reimburse Landlord only for such installments as may become due during the term of this lease, or any exercised option extensions thereunder.

Before any billing for such insurance contribution shall be due, Landlord shall furnish to Tenant the policy Declarations pages, or such additional information as necessary, indicating

-4-

the schedule of insured property, schedule of coverages, basis of the premium, and premium of the insured property, together with the calculation of the insurance premium prorated to Tenant. Tenant's reimbursement for insurance coverages, whether under Article 11 or otherwise, shall not include loss of rents, liability within the demised premises or other coverages not within those required hereunder.

Notwithstanding the above, it is agreed that Tenant's obligation to make the payments herein described is expressly conditioned upon receipt from Landlord of a written statement for such ad valorem real estate tax contributions (as well as the other documents described herein if requested by Tenant) no later than December 31 of the calendar year following the year in which the taxes were due.

Notwithstanding the above so long as Tenant is not in default hereunder and the stockholders' equity of its parent company, Winn-Dixie Stores, Inc., exceeds $100,000,000, Tenant may elect to self-insure each of the insurance coverages described hereinabove and in Article 11. Sums due from Tenant in lieu of insurance proceeds because of such self-insurance shall be treated as insurance proceeds for all purposes under this lease. The insurance policies shall be for a term of not less than six months and shall name Landlord, Tenant and any lender of Landlord as insured parties, as their interests may appear. Any insurance which Tenant is permitted to obtain pursuant to this Article may be the subject of self-insurance or be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant.

**FIXTURES AND ALTERATIONS**

9. The Tenant, at its own expense, may from time to time during the term of this lease make any alterations, additions and improvements in, on and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease.

Tenant may construct and build or install on and in said premises any and all signs, racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which signs, racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

**INDEMNIFICATION**

10. The Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of accident or damage to any person or property happening on or about the demised premises, except in case of accident or damage caused by the fault or negligence of Landlord, its servants, agents or employees.

**FIRE**

11. In the event that Tenant's building shall be totally destroyed or damaged to any extent by fire or other casualty Landlord agrees to proceed promptly and without expense to Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored, provided, however, if such damage to Tenant's building to the extent of fifty percent (50%) or more occurs within the last three (3) years of the lease term hereof (whether the original lease term or an extension thereof, if then or theretofore this lease has been extended pursuant to the term hereof), then in such event Landlord shall have no obligation to restore Tenant's building unless Tenant agrees to extend the lease term hereof on the same conditions and for the same rentals so as to expire ten (10) years from date of completion of such restoration by Landlord, such extension to be in addition to and not in lieu of any renewal privileges then remaining available to Tenant, which renewal options shall not thereby be exercised. Failing such notice to extend, Landlord at its option shall have the right to terminate this lease or to restore the premises and the lease shall continue for the remainder of the then unexpired term.

-5-

In the event that Landlord shall fail within a reasonable time, not to exceed thirty (30) days following such damage (except as in this paragraph provided), to proceed with and within a reasonable time commensurate with the amount of damage, not to exceed six (6) months following such damage, to complete any repairs and restoration of the demised premises as herein required Tenant may, at its option, in either of such events, terminate this lease by giving to Landlord written notice thereof.  If Landlord's failure to commence or complete said repairs within the stipulated times shall be due to strikes, war, material shortages, weather conditions or similar happenings beyond its control, and provided further the repairs are completed with all due diligence commensurate with such delay, such option to terminate shall not arise.  If the lease shall terminate as aforesaid and any rent shall have been paid by Tenant in advance, Landlord agrees to refund to Tenant all rent so paid applicable to the period subsequent to such damage or destruction.

Landlord shall carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord or Tenant in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees; and Tenant hereby expressly waives any and all claims against the Landlord for loss or damage to Tenant's merchandise, fixtures and equipment due to fire, explosion, windstorms or other casualties, regardless of the cause of such damage, including without limitation, damages resulting from the negligence of the Landlord, its agents, servants, or employees.

Except for mortgage in favor of  First Gibraltar Bank, FSB                    ,

**QUIET
ENJOYMENT**

12.  the Landlord covenants, warrants, and represents that upon commencement of the lease term, the demised premises will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

The Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a general mercantile business, including parking in conjunction therewith, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting the Tenant from conducting a general mercantile business, including parking in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

**TAXES
AND
LIENS**

13. All taxes, assessments, and charges on land or improvements and obligations secured by mortgage or other lien upon the premises shall be promptly paid by Landlord when due. The Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at six per cent (6%) per annum.

**CONDEMNATION**

14. If any part of the store building located on the demised premises be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, or in the event that any portion in excess of ___ten___ per cent (--10%) of the overall parking area constructed for Tenant's use on the demised premises be so taken, or in the event that any portion of the demised premises (including parking area) be so taken so as to interfere materially or substantially with the conduct of Tenant's business in the demised premises, then in any such event, the Tenant shall be entitled to termination of this

lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease as above provided, or in the event of any taking which does not permit a termination by the Tenant, the Landlord shall promptly restore the premises to a condition comparable to the condition at the time of taking, and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances.

Notwithstanding the foregoing, however, Tenant shall not be entitled to any award for the loss of or loss in value of leasehold, but only to an award for loss of or damage to its trade fixtures and for the unamortized cost of any improvements made by Tenant, and moving expenses if allowable, and such awards as are provided to Tenant under law.

**DEFAULT**

15. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but the Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default.

**BANKRUPTCY**

16. The Tenant further covenants and agrees that if, at any time, the Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease at an end and shall forthwith be entitled to immediate possession of the premises.

**CONSTRUCTION RISKS**

17. It is understood and agreed that nothing herein contained shall constitute the Landlord as the agent in any sense of the Tenant in constructing said improvements, and that the Tenant shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of the premises for the causes herein stated. The Tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their subcontractors, employees, agents or servants by reason of Landlord constructing said improvements pursuant to the terms of this lease. Landlord shall indemnify and save Tenant harmless from and against all claims and suits for damages to persons or property from defects in material or from the use of unskilled labor or from any negligence caused by Landlord, Landlord's contractors or by any of their employees, agents or servants during the progress of the work in constructing said improvements, or from any faulty construction thereof.

–7–

**EXCLUSIVE SUPERMARKET**

18. The Landlord agrees that, if it owns or controls any property located within five hundred (500) feet of the demised premises, it will not, without the written permission of the Tenant, directly or indirectly, lease or rent such property to any person, firm or corporation to be used for or occupied by any business dealing in or which shall keep in stock or sell any staple or fancy groceries, meats, fish, fruits, vegetables, dairy products, bakery goods, or frozen foods; nor will the Landlord permit any tenant of any such property to sublet in any manner, directly or indirectly, any such property to any person, firm or corporation to be used for or occupied by any business dealing in or which shall keep in stock or sell any of the above listed items.

**NUISANCES**

19. The Tenant agrees that the leased demised premises or any portion thereof shall not be used for any illegal or unlawful purpose, and that the Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon.

**EXTENSIONS**

20. It is further agreed that Tenant, at its option, shall be entitled to the privilege of __five__ ( 5 ) successive extensions of this lease, each extension to be for a period of __five__ ( 5 ) years and on the same terms and conditions and at the same rental as provided herein for the initial lease term.

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least __six (6) months__ before the expiration of the initial term, and if extended, at least __six (6) months__ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

**NOTICES**

21. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail or delivery service with receipt to, and all rent payments shall be made to Landlord at _____

__111 Center Street, Suite 1510__

__Little Rock, Arkansas  72201__

or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail or delivery service with receipt.

All notices required to be given to Tenant shall be sent by registered or certified mail to Tenant at

__P. O. Box 51059__

__New Orleans, Louisiana  70151__

or to such other address as Tenant may direct from time to time by written notice forwarded to Landlord by registered or certified mail or delivery service with receipt.

—8—

**END OF TENANCY**

22. The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct.

**ARBITRATION**

23. In the event there should arise any misunderstanding between the parties hereto as to the compliance with the terms and conditions of this lease upon the part of either of the parties hereto, or as to whether the premises tendered by the Landlord have been improved in substantial conformity with the plans and specifications approved by the parties, or as to whether either party has ground hereunder entitling it to terminate this lease, it is mutually agreed that such differences, if they cannot be satisfactorily adjusted between the parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties hereto agree upon one; otherwise, to a board of three arbitrators, of whom one shall be selected by each party within ten (10) days after such 30-day period, and a third person shall be selected by these two; and the decision and award of such single arbitrator if only one is used, or any two of such board, if three are used, as the case may be, shall be final and binding upon the said parties and their successors and assigns respectively, and shall have the same force and effect as though such decision had been handed down by a court of final jurisdiction. Each of the parties hereto covenants to abide by any such arbitration decision.

**ASSIGNMENT**

24. The Tenant may without the consent of the Landlord assign or sublease or vacate the demised premises in whole or in part, provided, the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease.

**SUBORDINATE**

25. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

**BENEFIT**

26. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties.

-9-

**SHORT FORM LEASE**

27. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

**MARGINAL TITLES**

28. The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

**COMPLETE AGREEMENT**

29. This written lease contains the complete agreement of the parties with reference to the leasing of said property, except plans and specifications of said building and improvements to be approved formally by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

**NOTICE TO LENDER**

30. Tenant agrees that it will give notice to any holder of a first mortgage encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of the Landlord which would entitle Tenant to terminate the lease or abate the rental payable hereunder, specifying the nature of the default by the Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate the lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period.

**TRANSFER BY LANDLORD**

31. In the event Landlord transfers Landlord's interest in this lease, Landlord agrees to promptly provide Tenant with documentary evidence, satisfactory to Tenant, of such transfer of Landlord's interest in this lease.

**SELF-HELP**

32. If Landlord shall default in the performance or observance of any agreement or condition in this lease contained on its part to be performed or observed, and if Landlord shall not cure such default within thirty (30) days after notice from Tenant specifying the default (or shall not within said period commence to cure such default and thereafter prosecute the curing of such default to completion with due diligence), Tenant may, at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of the Landlord, and any amount paid or any contractual liability incurred by Tenant in so doing shall be deemed paid or incurred for the account of Landlord and the Landlord agrees to reimburse Tenant therefor or save Tenant harmless therefrom; provided that Tenant may cure any such default as aforesaid prior to the expiration of said waiting period, but after said notice to Landlord, if the curing of such default prior to the expiration of said waiting period is reasonably necessary to protect the real estate or Tenant's interest therein or to prevent injury or damage to persons or property. If Landlord shall fail to reimburse Tenant upon demand for any amount paid for the account of Landlord hereunder, said amount may be deducted by Tenant from the next or any succeeding payments of rent due hereunder.

**LIMITATION OF LIABILITY**

33. The Tenant shall look solely to the Landlord's interest in the demised premises and in the Landlord's personal property used in connection with the demised premises for the satisfaction of any judgment or decree requiring the payment of money by the Landlord, based upon any default hereunder, and no other property or asset of the Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction of such judgment or decree.

**HAZARDOUS**
**SUBSTANCES**

34.    Tenant shall indemnify and hold Landlord harmless from any and all claims, actions, judgments, criminal penalties, costs, liabilities, or losses (including, without limitation, any and all sums paid for settlement of claims, attorneys', consultant, and expert fees), and rulings of regulatory agencies in anywise resulting out of Tenant's having stored, used or sold hazardous substances (as the same are defined by federal and state statutes and regulation of governmental agencies having jurisdiction over the same) in the demised premises.

Similarly, Landlord shall indemnify and hold Tenant harmless from any and all claims, actions, judgments, criminal penalties, costs, liabilities, or losses (including, without limitation, any and all sums paid for settlement of claims, attorneys', consultant, and expert fees), and rulings of regulatory agencies in anywise resulting out of the fact that the demised premises were erected on ground that was or is polluted with hazardous substances as the same are defined by federal and state statutes and regulation of governmental agencies having jurisdiction over the same. Landlord additionally warrants and represents to the Tenant that the demised premises shall be free of hazardous substances (including asbestos) as of the date Tenant is tendered possession thereof.

**OPTION FOR**
**EXPANSION**

35.    Tenant is hereby granted the option and privilege at any time during the term of this lease, or any extensions thereof, of enlarging its store building by incorporating therein the area to the easterly side thereof, such addition not to exceed sixty (60) feet in width by the full depth of the building.  Tenant shall have the expansion privilege herein described no later than one (1) year from the commencement date hereof and at five (5) year intervals thereafter.  During the period between six (6) months and three (3) months prior to such lease anniversary date, Tenant shall be afforded the opportunity to exercise this option, and upon Tenant giving to Landlord a notice in writing of its exercise thereof, Landlord agrees to construct such addition, or prepare such enlargement area for occupancy by Tenant, in accordance with plans and specifications to be approved by the parties hereto, with the construction to be completed with all due diligence, and the enlarged portion of the building to be of a like quality of construction as the original building for Tenant.  Further, Landlord agrees that the wall of Tenant's demised store building, adjoining the expansion area shall be constructed with steel column supports therein equivalently spaced to the nearest row of steel column supports within the open area of Tenant's demised store building and such wall supports shall be of sufficient load bearing capacity to carry the roof support system across the full span of the original and of the expanded building width.

Upon completion of such building addition, or tender of such additional space to Tenant, if there shall not at such date remain at least ten (10) years of the then term of this lease, such term shall be extended for such period of time as shall be necessary to provide a full ten (10) years from such date.  Also upon completion of said addition, the annual minimum guaranteed rental (and the base for computation of percentage rental hereunder) shall be increased by the greater of:  an amount equal to fourteen percent (14%) of the cost of such addition, or an amount equal to $6.86 per square foot of the enlargement area, or an amount equal to a computed percentage times the cost of such addition, such percentage consisting of four percent (4%) plus the current prime interest rate charged by New York City banks at the time of the exercise of the option.  At Tenant's request, construction cost shall be established by bids obtained by Landlord from at least three (3) reputable contractors acceptable to Tenant, with the final cost of the addition upon completion to be certified to by the general contractor performing the work.  During such extended term, if any, the provisions of this lease shall remain in effect and the option periods herein provided, if any shall then remain, shall be construed to follow upon the end of any such extended term, and the rentals to remain as adjusted in consequence of the addition.  Upon completion of the addition, it shall be and become a portion of the demised premises, and this lease thereby be taken and construed as so amended.

Nothing herein contained shall constitute any express or implied obligation on the part of the holder of a first mortgage encumbering the fee simple title to the demised premises, or of any purchaser at a sale under foreclosure of such mortgage, to comply with the terms and provisions of this Article, it being the understanding of the parties that the obligation to cause such expansion is the sole obligation of the Landlord, its heirs, legal representatives, successors and assigns, but this paragraph shall not limit tenant's right to carry out the expansion at its own cost as provided herein.

In the event Landlord shall for any reason fail or refuse to construct the building addition contemplated hereunder after Tenant has properly exercised its option herein and prior to a foreclosure of the Landlord's title by the holder of a first mortgage encumbering the same, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments on account of such breach and the Tenant's sole remedy shall be to construct the contemplated building addition at its own expense, with the then term of the lease to be extended for a 10-year

period as above contemplated and Tenant shall be entitled to occupy the enlarged building during the construction and for a 10-year period thereafter without obligation to pay any minimum guaranteed rental in respect of such enlargement area.

Also, for the duration of such 10-year period there shall be an adjustment in the percentage rentals which would otherwise be payable under the provisions of Article 2 hereof whereby the Tenant shall pay to the Landlord a percentage rental equal to the amount, if any, by which one and one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30th exceeds the original annual minimum guaranteed rental payable hereunder as increased by a sum equal to $6.86 per square foot of the enlargement area.

With respect to the Tenant's constructing the addition at its expense, upon the expiration of the extended 10-year term hereunder and for the remainder of the lease term, and any extensions thereof, the original annual minimum guaranteed rental for the demised premises shall be increased by a sum equal to $6.86 per square foot of the enlargement area, with the percentage rental thereafter to be computed by taking into consideration the upward adjustment of the minimum guaranteed rental as above provided.  Both guaranteed rentals and percentage rentals for fractional years and fractional months occurring at the beginning and end of such extended 10-year term shall be prorated between the rentals payable before and those payable after the rental adjustments provided herein.

        IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

EAST 19th STREET
PROPERTIES., INC.

By: _____
    Its              President

Attest: _____
        Its        Secretary

(Corporate Seal)

LANDLORD

As to Landlord

WINN-DIXIE LOUISIANA, INC.

By _____
   Its          Vice President

Attest _____
       Its          Secretary

(Corporate Seal)

TENANT

As to Tenant

-12-

STATE OF _Arkansas_        )
COUNTY OF _Pulaski_        )

BE IT KNOWN that on this _5th_ day of _August_,
1992, before me the undersigned authority, personally came and
appeared _Tommy Lassiter_, _President of
EAST 19th STREET PROPERTIES, INC., an _August_, corporation,
to me known, who signed and executed the above and foregoing
lease before me and in the presence of the two witnesses whose
names are thereto and who acknowledged in my presence and in the
presence of said witnesses that he signed the above and foregoing
lease as his free act and deed and for the uses and purposes
therein set forth.

IN WITNESS WHEREOF the said appearer has signed hereto,
together with the said witnesses and I have hereunto affixed my
official hand and seal on the day and year first above written.

WITNESSES:                              By _____
_____                              President
_____

SWORN to and subscribed before
me this _5th_ day of
_____, 1992.

_____ Baldwin
Notary Public                           (Notarial Seal)

My commission expires: _01-12-00_


STATE OF FLORIDA          )
                          )
COUNTY OF DUVAL           )

BE IT KNOWN that on this _21st_ day of _August_,
1992, before me the undersigned authority, personally came and
appeared _R. P. McCook_, Vice President of
WINN-DIXIE LOUISIANA, INC., a Florida corporation, to me known,
who signed and executed the above and foregoing lease before me
and in the presence of the two witnesses whose names are thereto
and who acknowledged in my presence and in the presence of said
witnesses that he signed the above and foregoing lease as his
free act and deed and for the uses and purposes therein set
forth.

IN WITNESS WHEREOF the said appearer has signed hereto,
together with the said witnesses and I have hereunto affixed my
official hand and seal on the day and year first above written.

WITNESSES:                              By _R. P. McCook_
_____                              Vice President
_____

SWORN to and subscribed before
me this _21st_ day of
_August_, 1992.

_Laura E. Baughman_
Notary Public

My commission expires: _____        LAURA E. BAUGHMAN (Notarial Seal)
                                       My Comm. Exp. July 17, 1994
                                       Comm. No. CC 071236

G U A R A N T Y

In consideration of the sum of Ten Dollars ($10.00) paid by EAST 19th STREET PROPERTIES, INC., a/ _Arkansas_ corporation,

_____

_____

_____

hereinafter called "Landlord", to WINN-DIXIE STORES, INC., a Florida corporation with its principal office at 5050 Edgewood Court, Jacksonville, Florida 32205, hereinafter called "Guarantor", the receipt and sufficiency whereof are hereby acknowledged, Guarantor does hereby guarantee unto Landlord, its heirs, legal representatives, successors and assigns, the due performance and observance by WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified to do business in the State of Louisiana,

_____

hereinafter called "Tenant", of all the terms, covenants and conditions on the part of Tenant to be performed and observed including, without limitation, payment of rentals under the attached and foregoing lease agreement dated _August 5, 1992_ , covering certain premises located _on the northeasterly corner of the intersection of U. S. Highway 167 and Louisiana Highway 29, in the City of Ville Platte, Parish of Evangeline, and State of Louisiana._

_____

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed in its corporate name and its corporate seal to be hereunto affixed and attested by its officers thereunto duly authorized this _21st_ day of _August_ , 19 _92_ .

Signed, sealed and delivered
in the presence of:

_Delories Carver_

_Rebecca L. Sawyer_

WINN-DIXIE STORES, INC.

By _X. P. McCook_
   Its          Vice President

Attest: _____
        Its          Secretary

(CORPORATE SEAL)

GUARANTOR

STATE OF FLORIDA                )
                                )
COUNTY OF DUVAL                 )

     BE IT KNOWN that on this _21st_ day of _August_____,
1992, before me the undersigned authority, personally came and
appeared _R. P. McCook_____, _Vice_ President of
_____WINN-DIXIE STORES, INC,. a Florida corporation_____ to
me known, who signed and executed the above and foregoing lease
before me and in the presence of the two witnesses whose names
are thereto and who acknowledged in my presence and in the
presence of said witnesses that he signed the above and foregoing
lease as his free act and deed and for the uses and purposes
therein set forth.

     IN WITNESS WHEREOF the said appearer has signed hereto,
together with the said witnesses and I have hereunto affixed my
official hand and seal on the day and year first above written.

WITNESSES:

_Louis Garner_____        By _R. P. McCook_____
_Rebecca L. Arnau_____               Vice President

SWORN to and subscribed before
me this _21st_____ day of
_August_____, 1992.

_Laura E. Baughma_____
        Notary Public

                                     LAURA E. BAUGHMA (Notarial Seal)
My commission expires:_____       My Comm. Exp. July 17, 1994
                                     Comm. No. CC 021236

EXHIBIT "B"

VIDRINE PLAZA

Northeasterly corner of the intersection of
U. S. Highway 167 and Louisiana Highway 29
Ville Platte, Evangeline Parish, Louisiana

All that certain piece, parcel or tract of land, lying and being
situated in the City of Ville Platte, Parish of Evanveline, and
State of Louisiana together with all improvements thereon or to
be constructed thereon and all appurtenances thereto belonging
or in anywise appertaining, more particularly described as
follows, to wit:

LEGAL DESCRIPTION:  TRACT 2 (WINN-DIXIE)

A CERTAIN TRACT OR PARCEL OF LAND, TOGETHER WITH ALL THE BUILDINGS
AND IMPROVEMENTS THEREON, SITUATED IN THE PARISH OF EVANGELINE,
STATE OF LOUISIANA, IN SECTION 21, TOWNSHIP 4 SOUTH, RANGE 2 EAST,
AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT A POINT BEING THE INTERSECTION OF THE PROJECTED
EASTERN RIGHT-OF-WAY OF LA. HIGHWAY 29 AND THE PROJECTED NORTHERN
RIGHT-OF-WAY OF U.S. HIGHWAY 167; THENCE SOUTH 57°39'40" EAST 186.35
FEET ALONG NORTHERN RIGHT-OF-WAY OF U.S. HIGHWAY 167 TO A POINT,
SAID POINT BEING THE POINT OF BEGINNING; THENCE NORTH 29°12'56" EAST
146.98 FEET TO A POINT; THENCE SOUTH 60°30'18" EAST 80.0 FEET TO A
POINT; THENCE NORTH 29°30'39" EAST 168.0 FEET TO A POINT; THENCE
NORTH 60°29'34" WEST 258.5 FEET TO A POINT ON THE EASTERN RIGHT-OF-
WAY LINE OF LA. HIGHWAY 29; THENCE NORTH 32°14'00" EAST 35.04 FEET
ALONG THE EASTERN RIGHT-OF-WAY LINE OF LA. HIGHWAY 29 TO A POINT;
THENCE SOUTH 60°29'34" EAST 187.95 FEET TO A POINT; THENCE NORTH
29°30'39" EAST 140.26 FEET TO A POINT; THENCE SOUTH 69°33'06" EAST
382.44 FEET TO A POINT; THENCE SOUTH 29°40'22" WEST 574.15 FEET TO A
POINT ON THE NORTHERN RIGHT-OF-WAY OF U.S. HIGHWAY 167; THENCE NORTH
55°30'36" WEST 122.53 FEET ALONG NORTHERN RIGHT-OF-WAY OF U.S.
HIGHWAY 167 TO A POINT; THENCE NORTH 57°39'40" WEST 259.66 FEET
ALONG THE RIGHT-OF-WAY OF U.S. HIGHWAY 167 TO A POINT, SAID POINT
BEING THE POINT OF BEGINNING, SAID PROPERTY CONTAINS 4.47 ACRES,
MORE OR LESS.

<u>AGREEMENT</u>

BE IT KNOWN, that before us, the undersigned Notaries Public, duly qualified and sworn in and for their respective jurisdictions, personally came and appeared:

EAST 19TH ST. PROPERTIES, INC., an Arkansas corporation, represented herein by Tommy Lasiter, President, duly authorized, whose mailing address is 111 Center Street, Suite 1510, Little Rock, Arkansas 72201-2413, hereinafter referred to as "East 19th",

and

WINN-DIXIE LOUISIANA, INC., a Florida corporation, represented herein by __James Kufeldt__, its __Vice President__, duly authorized, whose mailing address is __P.O. Box 51059, New Orleans,__ __Louisiana 70151-1059__, hereinafter referred to as "Winn-Dixie",

and

FAST FOODS OF AMITE, INC., a Louisiana corporation, represented herein by Milton Hunt, its PRESIDENT, duly authorized, whose mailing address is 104 West Morris, Hammond, Louisiana 70403, hereinafter referred to as "Fast Foods",

who, after being duly sworn, did declare and state:

WHEREAS, EAST 19TH is the owner of the properties described on Exhibit "K" and Exhibit "B", attached hereto and make a part hereof. WINN-DIXIE presently leases the property on Exhibit "A" (hereinafter the "Winn-Dixie property"). FAST FOODS intends to purchase the property on Exhibit "B" (hereinafter the "Fast Foods property") from EAST 19TH. There is a sewer line on the Winn-Dixie property that FAST FOODS, after its purchase of the Fast Foods property, intends to connect with in order to provide sewer service to the Fast Foods property. After FAST FOODS has connected with said sewer line, FAST FOODS and WINN-DIXIE have agreed to share the cost of maintaining the sewer line on a 50-50 basis.

NOW, THEREFORE, EAST 19TH and WINN-DIXIE have agreed and do hereby agree to allow and permit FAST FOODS, its successors and/or assigns, to connect with and to the sewer line that is on the Winn-Dixie property. FAST FOODS shall be liable and responsible for the cost of this connection.

FURTHERMORE, WINN-DIXIE and FAST FOODS have agreed and do hereby agree that the cost and expense of maintaining the sewer line, after FAST FOODS has been connected to it, shall be borne equally. WINN-DIXIE shall be liable and responsible for fifty percent (50%) of the sewer line's maintenance costs, and FAST FOODS shall be liable and responsible for fifty percent (50%) of the sewer line's maintenance costs.

EAST 19TH, WINN-DIXIE, and FAST FOODS shall execute this agreement in

APPROVED
AS TO FORM

Division Mgr.

Legal Dept.
Winn-Dixie Stores,
Inc.

counterparts in their respective jurisdictions, and upon execution, the agreement shall be filed of record in the Conveyance Records of Evangeline Parish, Louisiana.

STATE OF ARKANSAS

COUNTY OF PULASKI

THUS DONE AND SIGNED before me, the undersigned Notary Public, and two (2) competent witnesses, on this _18th_ day of _August_ , 1993.

WITNESSES:

EAST 19TH ST. PROPERTIES, INC.

BY _____

TOMMY LASITER, President

NOTARY PUBLIC in and for the County of Pulaski State of Arkansas My Commission expires: _10-5-2000_

STATE OF FLORIDA

COUNTY OF DUVAL

THUS DONE AND SIGNED before me, the undersigned Notary Public, and two (2) competent witnesses, on this ___9th___ day of ____September____, 1993.

WITNESSES:

_Barbara A. Smuck_

_Jane Hublitte_

WINN-DIXIE LOUISIANA, INC.

BY _____

Its ____Vice President____

James Kufeldt

_Laura E. Daughman_

NOTARY PUBLIC in and
for the County of Duval
State of Florida
Commission expires:_____

LAURA E. DAUGHMAN
My Comm. Exp. July 17, 1994
Comm. No. CC D21236

STATE OF LOUISIANA

PARISH OF JEFFERSON

THUS DONE AND SIGNED before me, the undersigned Notary Public, and two (2) competent witnesses, on this _24th_ day of _AUGUST_ , 1993.

WITNESSES:

FAST FOODS OF AMITE, INC.

BY _____
MILTON HUNT

NOTARY PUBLIC in and
for the Parish of JEFFERSON
State of Louisiana
My Commission expires:with life

EXHIBIT "A"

A certain tract  or parcel of land, together with all the buildings and
improvements thereon, situated in the Parish of  Evangeline, State of Louisiana,
in Section 21,  Township 4 South, Range 2 East, and being more particularly
described as follows:

Commencing at a  point  being the intersection of the projected Eastern Right-of-
Way of LA. Highway 29 and the projected  Northern Right-of-Way  of  U.S. Highway
167, thence South 57  degrees  39  minutes  40 seconds East  186.35  feet  along
Northern Right-of-Way of  U.S. Highway 167 to a point, said point being the point
of beginning; thence North 29 degrees 12 minutes 56 seconds East 146.98 feet to a
point; thence South 60 degrees 30 minutes  18  seconds East 80.0 feet to a point;
thence North 29 degrees 30 minutes 39 seconds East 168.0 feet  to a point; thence
North 60 degrees  29 minutes 34 seconds West 258.5 feet to a point on the Eastern
Right-of-Way line of  LA. Highway 29; thence  North  32  degrees  14  minutes  00
seconds East 35.04 feet along the Eastern Right-of-Way line of  LA. Highway 29 to
a point; thence  South  60  degrees  29  minutes 34 seconds East 182.95 feet to a
point; thence North 29 degrees 30 minutes 39 seconds East 140.26 feet to a point;
thence South 69 degrees 33 minutes 06 seconds East 382.44 feet to a point; thence
South 29 degrees 40 minutes 22 seconds  West  574.15  feet  to  a  point  on  the
northern right-of-way of U.S. Highway 167; thence North 55 degrees  30 minutes 36
seconds West 122.53 feet  along  Northern  Right-of-Way of U.S. Highway 167 to a
point; thence North 57 degrees 39 minutes  40  seconds West 259.66 feet along the
Right-of-Way of U.S.  Highway  167  to  a point, said point being  the  point  of
beginning, said property contains 4.47 acres more or less.

[WINN-DIXIE PROPERTY]

EXHIBIT "B"

A certain tract or parcel of land, together with all the buildings and improvements thereon, situated in the Parish of Evangeline, State of Louisiana, in Section 21, Township 4 South, Range 2 East, and being more particularly described as follows:

Commencing at a point being the intersection of the projected Eastern Right-of-Way of LA. Highway 29 and the projected Northern Right-of-Way of U. S. Highway 167; thence South 57 degrees 39 minutes 40 seconds East 186.35 feet along Northern Right-of-Way of U. S. Highway 167 to a point; thence North 29 degrees 12 minutes 56 seconds East 146.98 feet to a point; thence South 60 degrees 30 minutes 18 seconds East 80.0 feet to a point; thence North 29 degrees 30 minutes 39 seconds East 168.0 feet to a point; thence North 60 degrees 29 minutes 34 seconds West 258.5 feet to a point on the Eastern Right-of-Way of LA. Highway 29; thence North 32 degrees 14 minutes 00 seconds East 35.04 feet along the Eastern Right-of-Way of LA. Highway 29 to a point, said point being the point of beginning; thence North 32 degrees 14 minutes 00 seconds East 36.33 feet along the Eastern Right-of-Way line of LA. Highway 29 to a point; thence North 29 degrees 34 minutes 21 seconds East 75.09 feet along the Eastern Right-of-Way of LA. Highway 29 to a point; thence South 69 degrees 33 minutes 06 seconds East 183.44 feet to a point; thence South 29 degrees 30 minutes 39 seconds West 140.26 feet to a point; thence North 60 degrees 29 minutes 34 seconds West 182.95 feet to a point on the Eastern Right-of-Way line of LA. Highway 29, said point being the point of beginning, said property contains 0.53 acres more or less.

[FAST FOODS PROPERTY]

AMENDMENT OF LEASE
and
AMENDMENT TO SHORT FORM LEASE

THIS AMENDMENT OF LEASE and AMENDMENT TO SHORT FORM LEASE, made this _21st_ day of _October_, 19_93_, between EAST 19TH ST. PROPERTIES, INC., an Arkansas corporation, hereinafter called "Landlord", and WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified to do business in Louisiana, hereinafter called "Tenant", which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties,

### W I T N E S S E T H:

WHEREAS, by lease dated August 5, 1992, Landlord, did lease and demise unto Tenant those certain premises, therein particularly described, located on the northeasterly corner of the intersection of U. S. Highway #167 and Louisiana Highway #29, in the City of Ville Platte, Parish of Evangeline, and State of Louisiana, on the conditions and for the lease term and rentals therein set forth, and

WHEREAS, Tenant has opened for business in the demised premises and the parties desire to fix the commencement date of said lease as hereinafter set forth, and also to correct a minor typographical error appearing in the legal description attached to said lease as Exhibit "B".

NOW THEREFORE, in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable considerations, in hand paid by Tenant to Landlord, the receipt and sufficiency whereof are hereby acknowledged, the parties hereby agree, each with the other, that the aforesaid lease dated August 5, 1992 is hereby modified in the following particulars, which modification shall supersede any provisions of said lease in conflict herewith:



1.  The commencement date of the above-described lease dated August 5, 1992, is fixed at October 14, 1993, and the expiration of the initial term of twenty (20) years demised therein shall be at midnight on October 13, 2013.

2.  The legal description of the demised premises appearing as Exhibit "B" to said lease dated August 5, 1992, and also appearing in a short form of said lease of even date therewith, is hereby deleted.  In lieu thereof, it is hereby substituted in all respects that certain legal description attached hereto and marked Exhibit "1".  Henceforth whenever in said lease or short form lease reference is made to the legal description of the demised premises, the same shall be construed to apply to said legal description marked Exhibit "1", attached hereto and by this reference made a part hereof.

WINN-DIXIE STORES, INC., a Florida corporation, hereinafter called "Guarantor", joins in the execution hereof for the purpose of evidencing its consent to the execution hereof by Tenant, its wholly-owned subsidiary corporation, and to further evidence unto Landlord,   and   Landlord's   heirs,   legal   representataives, successors and assigns, the continuing guaranty by Guarantor, and Guarantor's successors and assigns, of the due performance by Tenant,   and   Tenant's   successors   and   assigns,   of   Tenant's obligations under said lease dated August 5, 1992, and the within Amendment of Lease including, without limitation, the payment of rentals.

It is mutually agreed that said lease and short form lease dated August 5, 1992 shall be and remain in full force and effect and unchanged, except only as the same is specifically modified and amended hereby.   All covenants, obligations, terms and conditions   of   said   lease,   not   changed   by   the   within

-2-

Amendment of Lease are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord, Tenant and Guarantor have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_Mary Windsor_

_G R Patterson_
As to Landlord

EAST 19th ST.
PROPERTIES, INC.

By _____
   Its          President

Attst _____
     Its        Secretary

(Corporate Seal)

**LANDLORD**

WINN-DIXIE LOUISIANA, INC.

_Sally Reece_

_Jane Dewitte_
As to Tenant

By _____
   Its    Vice President

Attest _____
      Its        Secretary

(Corporate Seal)

**TENANT**

WINN-DIXIE STORES, INC.

_Sally Reece_

_Jane Dewitte_
As to Guarantor

By _____
   Its          President

Attest _____
      Its        Secretary

(Corporate Seal)

**GUARANTOR**

-3-

STATE OF _Arkansas_ )
                                        )
COUNTY OF _Pulaski_ )

     BE IT KNOWN that on this _21st_ day of _October_,
19_93_, before me the undersigned authority, personally came and
appeared _Tommy Laster_, President of
EAST 19th ST. PROPERTIES, INC., an Arkansas, corporation, to me
known, who signed and executed the above and foregoing lease
before me and in the presence of the two witnesses whose names
are thereto and who acknowledged in my presence and in the
presence of said witnesses that he signed the above and foregoing
lease as his free act and deed and for the uses and purposes
therein set forth.

     IN WITNESS WHEREOF the said appearer has signed hereto,
together with the said witnesses and I have hereunto affixed my
official hand and seal on the day and year first above written.

WITNESSES:

_____          By _____
                                                          President
_____

SWORN to and subscribed before
me this _21st_ day of
_October_, 19_93_.

_____
    Notary Public          (Notarial Seal)

My commission expires: _10/5/2002_

STATE OF FLORIDA     )
                    )
COUNTY OF DUVAL     )

     BE IT KNOWN that on this _12th_ day of _November_,
199_3_, before me the undersigned authority, personally came and
appeared _____ James Kufeldt _____, _____ Vice President of
WINN-DIXIE LOUISIANA, INC., a Florida corporation, to me known,
who signed and executed the above and foregoing lease before me
and in the presence of the two witnesses whose names are thereto
and who acknowledged in my presence and in the presence of said
witnesses that he signed the above and foregoing lease as his
free act and deed and for the uses and purposes therein set
forth.

     IN WITNESS WHEREOF the said appearer has signed hereto,
together with the said witnesses and I have hereunto affixed my
official hand and seal on the day and year first above written.

WITNESSES:

_____Sall Reece_____

_____Jane DeWitte_____

SWORN to and subscribed before
me this _12th_ day of
_November_, 199_3_

_____Laura E Baughman_____
      Notary Public

My commission expires:_____

By _____
            Vice President

LAURA E. BAUGHMAN
My Comm. Exp. July 17, 1994
Comm. No. CC 021236 (Notarial Seal)

---

STATE OF FLORIDA     )
                    )
COUNTY OF DUVAL     )

     BE IT KNOWN that on this _12th_ day of _November_,
199_3_, before me the undersigned authority, personally came and
appeared _____ James Kufeldt _____, _____ President of
WINN-DIXIE STORES, INC., a Florida corporation, to me known, who
signed and executed the above and foregoing lease before me and
in the presence of the two witnesses whose names are thereto and
who acknowledged in my presence and in the presence of said
witnesses that he signed the above and foregoing lease as his
free act and deed and for the uses and purposes therein set
forth.

     IN WITNESS WHEREOF the said appearer has signed hereto,
together with the said witnesses and I have hereunto affixed my
official hand and seal on the day and year first above written.

WITNESSES:

_____Sall Reece_____

_____Jane DeWitte_____

SWORN to and subscribed before
me this _12th_ day of
_November_, 199_3_

_____Laura E Baughman_____
      Notary Public

My commission expires:_____

By _____
            President

LAURA E. BAUGHMAN
My Comm. Exp. July 17, 1994
Comm. No. CC 021236
(Notarial Seal)

EXHIBIT "A"

TRACT Z (WINN-DIXIE)

A certain tract or parcel of land together with all the buildings and improvements thereon, situated in the Parish of Evangeline, State of Louisiana, in Section 21, Township 4 South, Range 2 East, and being more particularly described as follows:

Commencing at a point being the intersection of the projected Eastern right-of-way of LA. Highway 29 and the projected Northern right-of-way of U.S. Highway 167; thence South 63°43'10" East 186.35 feet along the Northern right-of-way of U.S. Highway 167 to a point, said point being the point of beginning; thence North 23°22'41" East 147.00 feet to a point; thence South 66°37'19" East 80.00 feet to a point; thence North 23°22'41" East 168.00 feet to a point; thence North 66°37'19" West 258.50 feet to a point; thence North 26°06'15" East 35.04 feet to a point; thence South 66°37'19" East 182.95 feet to a point; thence North 23°22'41" East 140.26 feet to a point; thence South 75°40'51" East 382.44 feet to a point; thence South 23°32'37" West 574.15 feet to a point; thence North 61°38'21" West 122.53 feet along Northern right-of-way of U.S. Highway 167, to a point; thence North 63°43'10" West 259.66 feet along Northern right-of-way of U.S. Highway 167 to a point, said point being the point of beginning, said property contains 4.47 acres, more or less

## DECLARATION OF RESTRICTIONS

**KNOW ALL MEN BY THESE PRESENTS:**

WHEREAS, the undersigned, **VOGEL and VOGEL**, an Arkansas general partnership, hereinafter called "Declarant", is the owner of certain piece, parcel or tract of land located in the City of Ville Platte, Parish of Evangeline and State of Louisiana, said piece, parcel or tract of land being more particularly described on Schedule "A", attached hereto and by this reference made a part hereof.

WHEREAS, Declarant is the Landlord under a Lease with **WINN-DIXIE LOUISIANA, INC.**, a Florida corporation qualified to do business in the State of Louisiana, as Tenant (hereinafter called "Winn-Dixie"), dated August 5, 1992, a short form of which Lease was recorded in the Office of the Clerk of Evangeline Parish, Louisiana at COB C-185, page 457, and under such Lease and Short Form Lease the Declarant demised to Winn-Dixie a certain store building located on a parcel of land lying immediately adjacent and contiguous to the boundaries of the parcel of land hereinabove described; and

NOW THEREFORE, in consideration of the premises and the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable considerations, paid to Declarant by Winn-Dixie, the receipt and sufficiency of which is hereby acknowledged, Declarant, for itself and its successors and assigns, does hereby place the following restrictive covenants upon the said parcel of the land hereinabove described to run with the title to said land.

1. Any buildings which may be constructed on the parcel described on said Schedule "A" shall not be allowed to exceed one story nor 18 feet in height nor shall exceed in building square footage 25% of the square footage of the respective parcel. Pending construction on the parcel, the land shall be maintained as paved, or as grassed or landscaped area and kept free of weeds and debris. All other portions of the above-described parcel (hereinafter called "common facilities") shall be reserved only for use as a paved parking area with accompanying sidewalks, drives, entrances, and exits, together with any necessary appurtenances for such use, including, without limitation, paving, light standards, curbings, directional signs, drainage facilities and the like.

2. Declarant does hereby establish and create for Winn-Dixie, its successors and assigns, and to its employees, agents, suppliers, customers and invitees, a mutual, reciprocal and non-exclusive easement, right, license and privilege of passage and use, both pedestrian and automobile, over,

across and upon any and all portions of the said common facilities, for the purposes of ingress and/or egress and/or parking; and all common facilities from time to time existing upon the above described parcel are hereby expressly reserved and set apart for such purpose or purposes. Nothing herein is intended to nor shall be construed to create any rights whatsoever for the benefit of the general public in the above-described parcel.

3.    Declarant agrees to indemnify and save harmless Winn-Dixie from any claim or loss by reason of any accident or damage to any person or property happening on or about the common facilities herein described, and Declarant further agrees to carry at its expense, public liability insurance coverage on all such common facilities, with a contractual liability on the policy in a company qualified to transact business in Louisiana, stipulating limits of not less than $500,000 for an accident affecting any one person, and not less than $1,000,000 for an accident affecting more than one person, and $100,000 property damage.

4.    Declarant agrees that in its use of the hereinabove described parcel by way of an enlargement of the shopping center and in conjunction with the construction of any buildings or common areas thereon, it will maintain a minimum ratio of at least 5.0 automobile parking spaces per 1,000 square feet of gross building area (including additional floor levels, but excluding mezzanines and double-deck store room and machine room areas) in the entire shopping center. Such parking areas as may be built on the above-described parcel shall be available for the non-exclusive, free of charge use of Winn-Dixie, its employees, agents, suppliers, customers and invitees.

5.    Declarant further covenants and agrees that it will not directly or indirectly lease or rent any property located within the above-described parcel or within 1,000 feet of any exterior boundary thereof (except to Winn-Dixie) for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will Declarant permit any tenant or occupant of such property except Winn-Dixie to sublet in any manner, directly or indirectly any part thereof to any person, firm or corporation engaged in any such business without the prior written consent of Winn-Dixie; and Declarant also covenants and agrees not to permit or suffer any of such property (except that leased to Winn-Dixie) to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods or frozen foods without the prior written consent of Winn-Dixie.

Also, only retail and service shops and business and professional offices shall be allowed to operate on said parcel, it being intended that no spa, bowling alley, skating rink, bingo parlor, theater (either motion picture or legitimate) or health and recreational or entertainment-type activities shall be permitted thereon.

6.  These covenants and restrictions shall become effective on the date hereof and shall continue in effect for and during the term of said Lease to Winn-Dixie and any extensions or renewals thereof, and said covenants and restrictions shall run with the title to the parcel of land hereinabove described and shall bind the successors and assigns of the Declarant.

7.  Said covenants and restrictions are declared to be expressly for the benefit of said Winn-Dixie, its successors and assigns, and all mortgagees of the premises demised to Winn-Dixie and shall be enforceable by any of them, as well as by Declarant, its successors and assigns, and shall not in anywise be released, terminated, canceled or extended or otherwise changed, modified or amended without the express written consent of Winn-Dixie, its successors or assigns; but subject to such consent, Declarant expressly reserves the right to release, terminate, cancel, extend or otherwise change, modify, or amend said covenants and restrictions, and the exercise of such right shall be conclusively effected by the recordation of an instrument in writing duly executed by the appropriate parties in interest in the appropriate public records of Evangeline Parish, Louisiana.

IN WITNESS WHEREOF, The Declarant has executed these presents this _12th_ day of _October_, 1995.

Signed, sealed and delivered
in the presence of:

_____

_____
As to Declarant

VOGEL and VOGEL PARTNERSHIP,
By Its Managing Partner

_____ (SEAL)
ROBERT A. VOGEL

DECLARANT

3

STATE OF          )
                         )
COUNTY OF      )

BE IT KNOWN that on this _13th_ day of _October_ , 1995, before me the undersigned authority, personally came and appeared ROBERT A. VOGEL, managing Partner of VOGEL and VOGEL PARTNERSHIP, an Arkansas partnership, to me known, and known by me to be the persons whose genuine signatures are affixed to the foregoing lease who signed said lease before me and in the presence of the two witnesses whose names are thereto subscribed as such, and each acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appearers have signed these presents and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_____

_____

                                   _____
                                   Robert A. Vogel

SWORN to and subscribed before me this
_13th_ day of _October_ , 1995

_____
Notary Public                              (NOTARIAL SEAL)
My Commission Expires: _6/8/2003_

#1571-9/13/95

## SECOND AMENDMENT OF LEASE

THIS SECOND AMENDMENT OF LEASE, made this _12_ day of _October_, 1995, between VOGEL AND VOGEL, an Arkansas general partnership, (hereinafter called "Landlord") and WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified to do business in the State of Louisiana (hereinafter called "Tenant"), which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties,

### WITNESSETH:

WHEREAS, by Lease dated August 5, 1992, as amended, East 19th St. Properties, Inc., an Arkansas corporation, did lease and demise unto Tenant those certain premises, located in a shopping center development known as "Vidrine Plaza Shopping Center" situated at the northeasterly corner of the intersection of U. S. Highway 167 and Louisiana Highway 29, in the City of Ville Platte, Parish of Evangeline, and State of Louisiana, reference being made to said Lease for a more detailed description of the demised premises, for a term of twenty (20) years commencing on October 14, 1993 and expiring on October 13, 2013, and upon such terms and conditions as are set forth therein, and

WHEREAS, all rights, title and interest of the said East 19th St. Properties, Inc., as Landlord under said Lease have been duly transferred to and are presently vested absolutely in Landlord herein, and

WHEREAS, the parties hereto have agreed to enlarge the Tenant's present store building by constructing an addition thereto and to make other related renovations, alterations and improvements to the existing building as necessary to make the entire enlarged building suitable for use by Tenant in the conduct of its business, and the parties desire to make certain modifications and amendments to said Lease, as amended, and to increase the rentals thereunder, all as hereinafter set forth;

NOW THEREFORE, in consideration of the premises and the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable considerations in hand paid by Tenant to the Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1. Tenant, with the approval and consent of Landlord hereby evidenced, covenants and agrees to proceed at its own cost and expense (Tenant to be reimbursed by Landlord as hereinafter set forth) with due diligence to erect or cause to be erected a permanent addition on the easterly side of Tenant's existing store building, measuring 60 feet in width by 175 feet in depth,

APPROVED
AS TO FORM
[illegible stamp]
Division [illegible]
Legal Dept.
Winn-Dixie Stores,
Inc.

together with such renovations, alterations and remodeling of the existing building as is necessary to make the entire enlarged building suitable for use by Tenant in the conduct of its business.

The new addition, together with the other alterations, renovations and related improvements as herein contemplated, shall be constructed in accordance with plans and specifications therefor which have already been prepared at the instance of Tenant and approved by both the Landlord and Tenant.

Upon completion, the aggregate cost of the construction of the building addition and the other related improvements, alterations and renovations herein contemplated, shall be certified to by the general contractor performing the work; provided however, there shall be expressly excluded from such construction cost (for the purpose of Landlord's reimbursement) the expense of any and all of Tenant's racks, counters, shelves, and other merchandising fixtures and equipment.

2.    (a)    Reference on page 1 of said Lease to the plot plan of the demised premises attached thereto as Exhibit "A" is deleted. In lieu thereof the following words are substituted: "Plot Plan dated August 11, 1995, by Smith and Guillory Engineering and Surveying Consultants".

Attached hereto is a copy of said Plot Plan dated August 11, 1995, which said Plot Plan is marked Exhibit "A" and hereby substituted in all respects for said Plot Plan originally attached to said Lease. Henceforth, whenever in said Lease reference is made to Plot Plan of the demised premises or to Exhibit "A", same shall be construed to apply to said Plot Plan dated August 11, 1995, marked Exhibit "A", attached hereto and by this reference made a part hereof.

(b)    The legal description of the demised premises, appearing as Exhibit "1" and attached to that certain Amendment of Lease and Amendment to Short Form Lease, dated October 21, 1993, is hereby deleted. In lieu thereof is hereby substituted in all respects that certain legal description attached hereto and marked Exhibit "2". Henceforth whenever in said Lease reference is made to the legal description of the demised premises, the same shall be construed to apply to the said legal description marked Exhibit "2", attached hereto, and by this reference made a part hereof.

(c)    It is understood that in order to permit Tenant to enlarge its present store building on the easterly side and to provide additional land to effect possible future enlargement, Landlord is presently attempting to acquire in unencumbered fee simple that certain tract of land described on Exhibit "2" as "Tract No. 3". In the event Landlord fails for any reason to obtain the unencumbered fee simple title to said "Tract No. 3" by October 30, 1995, then in such event this Second Amendment of Lease shall thereupon become null and void, whereby said Lease dated August 5, 1992, as heretofore amended, shall continue in full force and effect, as if this Second Amendment of Lease had not been executed.

3.    Upon completion of the addition to Tenant's building and related improvements by Tenant (such date of completion to be established by Tenant giving to Landlord written notice thereof) or upon the delivery to Landlord by Tenant of a certificate of completion, whichever date first occurs, (the "Completion Date"), Landlord agrees to partially reimburse Tenant for the cost of such construction work in the amount of One Million and 00/100 Dollars ($1,000,000.00), with

2

interest on the unpaid balance of such sum beginning on the thirty-first (31st) day following the Completion Date. Such interest shall be at the rate of the then current New York prime interest rate plus two percent (2%), compounded monthly. Such payment shall be made by cashier's or certified check or wire transfer or in any other such other manner as may be specified by Tenant to Landlord. Should Landlord not make full reimbursement of such sum within thirty (30) days subsequent to the Completion Date, Tenant shall have the right to deduct from all increased rentals provided in Article 5(a) hereof, from all percentage rent payments due under the Lease, and from all other payments due Landlord under the Lease in respect of Tenant's reimbursement for ad valorem real estate taxes levied against the shopping center, such portion of the One Million and 00/100 Dollars ($1,000,000.00) not reimbursed by Landlord to Tenant.

4.   In connection with the construction work to be performed by Tenant, Tenant agrees to indemnify and hold Landlord harmless from and against: all mechanics', materialmen's, subcontractor's and similar liens, all claims and suits for damage to persons or property from defects in material or from the use of unskilled labor; or from any negligence caused by Tenant, Tenant's contractors, subcontractors, or by any of their employees, agents or servants during the progress of the work in constructing the improvements or from any faulty construction thereon.

5.   Upon receipt by Tenant of Landlord's full reimbursement of the sum of One Million and 00/100 Dollars ($1,000,000.00) as described in Article 3 hereof, or, failing such reimbursement, upon the date that Tenant has fully reimbursed itself for such sum from the rentals and other payments due under the Lease as set forth in Article 3 above, the following further modifications to the Lease shall become effective:

(a)   The said Lease is hereby amended to provide that instead of the rentals currently being paid, for the duration of the twenty (20) year initial lease term, and during any extensions thereof, Tenant agrees to pay to Landlord as minimum guaranteed rental for the enlarged demised premises, the sum of Three Hundred Seventy-Five Thousand One Hundred and 00/100 Dollars ($375,100.00) per year. Such annual minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of Thirty-One Thousand Two Hundred Fifty-Eight and 33/100 Dollars ($31,258.33) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the remainder of the initial lease term, and any extensions thereof. The rental increase over the minimum guaranteed rent currently being paid ($240,100.00 per year) will not, however, take effect until Tenant has either received Landlord's full reimbursement of the sum of $1,000,000.00, or Tenant has fully offset the said reimbursement amount from the increased rentals and other payments required under the Lease as provided in Article 3 hereof.

In addition, instead of the percentage rentals currently being paid as required by Article 1 of the Lease, Tenant agrees to pay to the Landlord a percentage rental equal to one percent (1%) of Tenant's gross sales made from the enlarged demised premises in each fiscal year of Tenant ending approximately June 30 during the remainder of the initial term of the Lease, and any extensions thereof, in excess of the sum of Thirty-Seven Million Five Hundred Ten Thousand and 00/100 Dollars ($37,510,000.00).

(b)   The parties hereto agree to execute a further supplement to the lease for

3

the purpose of fixing the commencement date for the new minimum guaranteed rentals and new base for percentage rentals as above provided. Rentals shall be calculated and paid under the present applicable rates of the original Lease until the rentals begin to accrue under the above substituted provisions, and the rentals for any month in which a change of rate occurs shall be prorated between the previously effective rates and the rates effective after the date of rental adjustment.

7.    Article 35 ("Option for Expansion") appearing on pages 11 and 12 of said Lease is hereby deleted. In lieu thereof the following is substituted:

"OPTION FOR    35.    Tenant is hereby granted the further option and privilege at any time dur-
EXPANSION            ing the term of this lease, or any extensions thereof, of enlarging its store
                     building by incorporating therein the area to the easterly side thereof, such
addition not to exceed sixty (60) feet in width by the full depth of the building. Tenant shall have the expansion privilege herein described no later than two (2) years from the date hereof and at five (5) year intervals thereafter. During the period between six (6) months and three (3) months prior to such date, Tenant shall be afforded the opportunity to exercise this option, and upon Tenant giving to Landlord a notice in writing of its exercise thereof, Landlord agrees to construct such addition, or prepare such enlargement area for occupancy by Tenant, in accordance with plans and specifications to be approved by the parties hereto, with the construction to be completed with all due diligence, and the enlarged portion of the building to be of a like quality of construction as the original building for Tenant.

Upon completion of such building addition, or tender of such additional space to Tenant, if there shall not at such date remain at least ten (10) years of the then term of this lease, such term shall be extended for such period of time as shall be necessary to provide a full ten (10) years from such date. Also upon completion of said addition, the annual minimum guaranteed rental (and the base for computation of percentage rental hereunder) shall be increased by the greater of: an amount equal to fourteen percent (14%) of the cost of such addition, or an amount equal to $6.86 per square foot of the enlargement area, or an amount equal to a computed percentage times the cost of such addition, such percentage consisting of four percent (4%) plus the current prime interest rate charged by New York City banks at the time of the exercise of the option. At Tenant's request, construction cost shall be established by bids obtained by Landlord from at least three (3) reputable contractors acceptable to Tenant, with the final cost of the addition upon completion to be certified to by the general contractor performing the work. During such extended term, if any, the provisions of this lease shall remain in effect and the option periods herein provided, if any shall then remain, shall be construed to follow upon the end of any such extended term, and the rentals to remain as adjusted in consequence of the addition. Upon completion of the addition, it shall be and become a portion of the demised premises, and this lease thereby be taken and construed as so amended.

Nothing herein contained shall constitute any express or implied obligation on the part of the holder of a first mortgage encumbering the fee simple title to the demised premises, or of any purchaser at a sale under foreclosure of such mortgage, to comply with the terms and provisions of this article, it being the understanding of the parties that the obligation to cause such expansion is the sole obligation of the Landlord, its heirs, legal representatives, successors and assigns, but this paragraph shall not limit Tenant's right to carry out the expansion at its own cost as provided herein.

In the event Landlord shall for any reason fail or refuse to construct the building addition contemplated hereunder after Tenant has properly exercised its option herein and prior to a foreclosure of the Landlord's title by the holder of a first mortgage encumbering the same, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments on account of such breach and the Tenant's sole remedy shall be to construct the contemplated building addition at its own expense, with the then term of the lease to be extended for a 10-year period as above contemplated and Tenant shall be entitled to occupy the enlarged building during the construction and for a 10-year period thereafter without obligation to pay any minimum guaranteed rental in respect of such enlargement area.

Also, for the duration of such 10-year period there shall be an adjustment in the percentage rentals which would otherwise be payable under the provisions of Article 2 hereof whereby the Tenant shall pay to the Landlord a percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30th exceeds

the original annual minimum guaranteed rental payable hereunder as increased by a sum equal to $6.68 per square foot of the enlargement area.
$6.86

With respect to the Tenant's constructing the addition at its expense, upon the expiration of the extended 10-year term hereunder and for the remainder of the lease term, and any extensions thereof, the original annual minimum guaranteed rental for the demised premises shall be increased by a sum equal to $6.86 per square foot of the enlargement area, with the percentage rental thereafter to be computed by taking into consideration the upward adjustment of the minimum guaranteed rental as above provided. Both guaranteed rentals and percentage rentals for fractional years and fractional months occurring at the beginning and end of such extended 10-year term shall be prorated between the rentals payable before and those payable after the rental adjustments provided herein."

7.    Said Lease dated August 5, 1992, as amended, shall be and remain in full force and effect except only as the same is specifically modified hereby. All covenants, terms, obligations and conditions of said Lease, as amended, not modified by the within Second Amendment of Lease, are hereby ratified and confirmed.

WINN-DIXIE STORES, INC., a Florida corporation, hereinafter called "Guarantor", joins in the execution hereof for the purpose of evidencing its consent to the execution of the within Second Amendment of Lease by Tenant, its wholly-owned subsidiary corporation, and to further evidence unto Landlord, and Landlord's successors and assigns, the continuing guaranty by Guarantor, and Guarantor's successors and assigns, of the due performance by Tenant, and Tenant's successors and assigns, of Tenant's obligations under said Lease dated August 5, 1992, as amended,



5

and the within Second Amendment of Lease.

      **IN WITNESS WHEREOF,** the parties hereto have caused this instrument to be duly executed the day and year first above written.

Signed, sealed and delivered
in the presence of:

**VOGEL and VOGEL PARTNERSHIP,**
**By Its Managing Partner**

_____ (SEAL)
ROBERT A. VOGEL

As to Landlord

      **LANDLORD**


**WINN-DIXIE LOUISIANA, INC.**

By: _____
  Its          Vice President

Attest: _____
  Its    Assistant Secretary

As to Tenant

(Corporate Seal)

**TENANT**


**WINN-DIXIE STORES, INC.**

By: _____
  Its          President

Attest: _____
  Its    Assistant Secretary

As to Guarantor

(Corporate Seal)

**GUARANTOR**

6

STATE OF *Arkansas* )
                    )
COUNTY OF *Saline* )

   BE IT KNOWN that on this *13th* day of *October*, 1995, before me the undersigned authority, personally came and appeared ROBERT A. VOGEL, managing Partner of VOGEL and VOGEL PARTNERSHIP, an Arkansas partnership, to me known, and known by me to be the persons whose genuine signatures are affixed to the foregoing lease who signed said lease before me and in the presence of the two witnesses whose names are thereto subscribed as such, and each acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

   IN WITNESS WHEREOF the said appearers have signed these presents and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_____

_____

             _____
             Robert A. Vogel

SWORN to and subscribed before me this
*13th* day of *October*, 1995

_____
Notary Public
My Commission Expires: *6-8-2003*

          (NOTARIAL SEAL)

STATE OF FLORIDA     )
                          )
COUNTY OF DUVAL    )

      BE IT KNOWN that on this _1st_ day of _November_ , 1995, before me the undersigned authority, personally came and appeared ___James Kufeldt___ , Vice President of WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified to do business in the State of Louisiana, to me known, who signed and executed the above and foregoing lease before me and in the presence of the two witnesses whose names are thereto and who acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

      IN WITNESS WHEREOF the said appearer has signed hereto, together with the said witnesses and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_Cynthia N Cleveland_

_Rebecca L. Baugh_

SWORN to and subscribed before me this _1st_ day of _November_ , 1995

_Laura E. Baughman_
Notary Public
My Commission Expires: _____.

By: _____
    Its              Vice President

(NOTARIAL SEAL)

LAURA E. BAUGHMAN
My Comm. Exp. July 17, 1998
Comm. No. CC 386239

STATE OF FLORIDA     )
                          )
COUNTY OF DUVAL    )

      BE IT KNOWN that on this _1st_ day of _November_ , 1995, before me the undersigned authority, personally came and appeared ___James Kufeldt___ , _____ President of WINN-DIXIE STORES, INC., a Florida corporation, to me known, who signed and executed the above and foregoing lease before me and in the presence of the two witnesses whose names are thereto and who acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

      IN WITNESS WHEREOF the said appearers has signed hereto, together with the said witnesses and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_Cynthia N Cleveland_

_Rebecca L. Baugh_

SWORN to and subscribed before me this _1st_ day of _November_ , 1995

_Laura E. Baughman_
Notary Public
My Commission Expires: _____.

By: _____
    Its              President

(NOTARIAL SEAL)

LAURA E. BAUGHMAN
My Comm. Exp. July 17, 1998
Comm. No. CC 386239

# CONSENT

**THE FRANKIN LIFE INSURANCE COMPANY**, a _____, corporation, the owner and holder of a mortgage encumbering the premises described in the attached Second Amendment of Lease does hereby consent to the attached and foregoing Second Amendment of Lease.

**IN WITNESS WHEREOF** THE FRANKLIN LIFE INSURANCE COMPANY, has caused these presents to be executed this _____ day of _____, 1995.

Signed, sealed and delivered
in the presence of:

**THE FRANKLIN LIFE INSURANCE COMPANY**

_____

By:_____
     Its               President

_____

Attest:_____
     Its               Secretary

(CORPORATE SEAL)

STATE   OF       )

_____ OF       )

      BE IT KNOWN that on this _____ day of _____, 1995, before me the undersigned authority, personally came and appeared _____, _____ President of THE FRANKLIN LIFE INSURANCE COMPANY, a _____ corporation, to me known, who signed and executed the above and foregoing lease before me and in the presence of the two witnesses whose names are thereto and who acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

      IN WITNESS WHEREOF the said appearer has signed hereto, together with the said witnesses and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_____

By:_____
     Its               President

_____

SWORN to and subscribed before me this
_____ day of _____, 1995

(NOTARIAL SEAL)

_____
Notary Public
My Commission Expires:_____

EXHIBIT "2"

**LEGAL DESCRIPTION:  TRACT NO. 1**
A certain tract or parcel of land; situated in the Parish
of Evangeline, state of Louisiana, in section 21, T4S-R2E
and being more particularly described as follows:

Commencing at a point being the intersection of the
projected Eastern right-of-way of LA Highway 29 and the
project Northern right-a-way of U.S. Highway 167, Thence
south 57 deg.-39'-40" East 186.35 feet along Northern
right-a-way of U.S. 167, to a point, said point being
point of beginning; Thence North 29 deg.-12'-56" East
146.98 feet to a point; Thence South 60 deg.-30'-18" East
60.0 feet to a point; Thence South 29 deg.-12'-56" West
149.97 feet to a point; Thence North 57 deg.-39'-40" West
60.0' along the Northern right-a-way of U.S. 167 to a
point, said point being point of beginning.

**LEGAL DESCRIPTION:  TRACT NO.2**
A certain tract or parcel of land, together will all the
buildings and improvements theron, situated in the Parish
of Evangeline state of Louisiana, in Section 21, T4S-R2E
and being more particularly described as follows:

Commencing at a point being the intersection of the
projected Eastern right-a-way of L.A. Highway 29 and then
projected Northern right-a-way of U.S. Highway North 167;
Thence South 57 deg.-39'-40" East 246.35 feet along
Northern right-a-way of U.S. Highway 167 to a point, said
point being point of beginning; Thence North 29
deg.-12'-56" East 149.97 feet to a point; Thence South
60-30'18" East 80.0' feet to a point; Thence North 29
deg.-30'-29" East 168.0 feet to a point; Thence North 60
deg.-29'-34" West 258.50 feet to a point; Thence North 32
deg.-14'-00" East 35.04 feet to a point; Thence South 60
deg.-29'-34" East 182.95 to a point; Thence North 29
deg.-30'-39" East 140.26 feet to a point; Thence South 69
deg.-33'-06" East 382.44 feet to a point; Thence South 29
deg.-40'-22" West 574.15 feet to a point; Thence North 55
deg.-30'-36" West 122.53 feet to a point along Northern
right-a-way of U.S. Highway 167; Thence North 57
deg.-39'-40" West 199.66 feet along the Northern
right-a-way of U.S. 167 to a point, said point being point
of beginning.

**LEGAL DESCRIPTION:  TRACT NO. 3**
A certain tract or parcel of land situated in the Parish
of Evangeline, state of Louisiana an section 21, T4S-R2E
and being more particularly described as follows:

Commencing at a point being the intersection of the
projected Eastern right-a-way of L.A. Highway 29 and the
projected northern right-a-way of U.S. Highway 167 Thence
South 57 deg.-39'-40" East a distance of 446.01 feet to a
point along the Northern right-a-way of U.S. 167; Thence
South 55 deg.-30'-36" East a distance of 122.53 feet to a
point, said point being point of beginning; Thence North
29 deg.-40'-22" East a distance of 575.00 feet to a point;
Thence South 46 deg.-28'-29" East a distance of 100.00
feet to a point; Thence South 29 deg.-40'-22" West a
distance of 575.00 feet, Thence North 45 deg.-28'-29' West
a distance of 100.00 Along the Northern right-a-way of
U.S. 167 to a point, said point being point of beginning.

### SUPPLEMENTAL LEASE AGREEMENT

THIS SUPPLEMENTAL LEASE AGREEMENT, made this $28\text{th}$ day of
February , 1994, between **VOGEL AND VOGEL**, an Arkansas general partnership,
(hereinafter called "Landlord") and **WINN-DIXIE LOUISIANA, INC.**, a Florida corporation
qualified to do business in the State of Louisiana (hereinafter called "Tenant"), which terms
"Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or
plural, and the heirs, legal representatives, successors and assigns of the respective parties,

### W I T N E S S E T H:

**WHEREAS**, by Lease dated August 5, 1992, as amended, East 19th St. Properties, Inc.,
an Arkansas corporation, did lease and demise unto Tenant those certain premises, located in
a shopping center development known as "Vidrine Plaza Shopping Center" situated at the
northeasterly corner of the intersection of U. S. Highway 167 and Louisiana Highway 29, in the
City of Ville Platte, Parish of Evangeline, and State of Louisiana, reference being made to said
lease for a more detailed description of the demised premises, for a term of twenty (20) years
commencing upon a date dependent upon the completion of certain construction, and upon such
terms and conditions as are set forth therein, and

**WHEREAS**, all rights, title and interest of the said East 19th St. Properties, Inc., as
Landlord under said lease have been duly transferred to and are presently vested absolutely in
Landlord herein, and

**WHEREAS**, Tenant has now opened for business in the demised premises and the
parties desire to fix the commencement date of said lease as hereinafter set forth,

**NOW THEREFORE**, in consideration of the sum of Ten and 00/100 Dollars ($10.00)
and other good and valuable considerations paid by Tenant to Landlord, the receipt and
sufficiency whereof are hereby acknowledged, it is mutually agreed:

1.    The commencement date of the above-described lease dated August 5, 1992, as



amended, is fixed at October 14, 1993 and the expiration of the initial term of twenty (20) years demised therein shall be at midnight on October 13, 2013.

    2.   All covenants, terms, obligations and conditions of said lease, as amended, not modified or amended by this Supplemental Lease Agreement, are hereby ratified and confirmed.

        **IN WITNESS WHEREOF,** the parties hereto have caused this instrument to be duly executed the day and year first above written.

Signed, sealed and delivered
in the presence of:

                                        **VOGEL and VOGEL PARTNERSHIP,**
                                        By Its Managing Partner

                                                    (SEAL)
                                      ROBERT A. VOGEL

As to Landlord

                                          **LANDLORD**

                                      **WINN-DIXIE LOUISIANA, INC.**

                                        By:
                                          Its                Vice President

                                        Attest:
                                          Its                Secretary

As to Tenant

                                          (Corporate Seal)

                                          **TENANT**

2

STATE OF *Arkansas* )
                                )
COUNTY OF *Saline* )

     BE IT KNOWN that on this *28th* day of *February*, 1994, before me the undersigned authority, personally came and appeared ROBERT A. VOGEL, managing Partner of VOGEL & VOGEL PARTNERSHIP, an Arkansas partnership, to me known, and known by me to be the persons whose genuine signatures are affixed to the foregoing lease who signed said lease before me and in the presence of the two witnesses whose names are thereto subscribed as such, and each acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

     IN WITNESS WHEREOF the said appearers have signed these presents and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_____                    _____
                                                              Robert A. Vogel

_____

SWORN to and subscribed before me this
*28th* day of *February*, 1994

_____                    (NOTARIAL SEAL)
Notary Public
My Commission Expires: *6-8-2003*


STATE OF FLORIDA )
                              )
COUNTY OF DUVAL )

     BE IT KNOWN that on this *8* day of *March*, 1994, before me the undersigned authority, personally came and appeared *James Kufeldt*, Vice President of WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified to do business in the State of Louisiana, to me known, who signed and executed the above and foregoing lease before me and in the presence of the two witnesses whose names are thereto and who acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

     IN WITNESS WHEREOF the said appearer has signed hereto, together with the said witnesses and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_____                    By: _____
                                                              Its _____ Vice President
_____

SWORN to and subscribed before me this
*8* day of *March*, 1994

_____                    (NOTARIAL SEAL)
Notary Public
My Commission Expires: _____

                                                              LAURA E. BAUGHMAN
                                                              My Comm. Exp. July 17, 1994
                                                              Comm. No. CC 021236

## SECOND SUPPLEMENTAL LEASE AGREEMENT

THIS SUPPLEMENTAL LEASE AGREEMENT (the "Agreement") is made as of September 12, 1996 (the "Effective Date"), between **WINN-DIXIE LOUISIANA, INC.**, a Florida corporation (the "Tenant") and **VOGEL AND VOGEL**, an Arkansas general partnership (the "Landlord").

### R E C I T A L S :

1.    Landlord and Tenant are parties to that certain lease dated August 5, 1992, as amended and/or evidenced by: (a) Short Form Lease dated August 5, 1992, recorded in C-185, page 457 , Clerk of the Court for Parish of Evangeline, State of Louisiana; (b) Amendment of Lease and Amendment to Short Form Lease dated October 21, 1993; (c) Supplement Lease Agreement dated February 28 1994; (d) Second Amendment to Lease dated October 12, 1995 (the "Second Amendment" and collectively, the "Lease").

2.    The Second Amendment provided for Tenant's demised store building to be expanded (the "Expanded Premises"), for certain construction activities to be performed by Tenant ("Tenant's Improvements") and, upon completion of Tenant's Improvements and Tenant's commencement of business, for the Lease to be amended to fix the date for commencing the new minimum annual guaranteed rentals, and the new base for payment of percentage rentals as provided in the Second Amendment.

3.    Tenant's Improvements were completed and Tenant began doing business in the Expanded Premises on the Effective Date.

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant agree as follows:

1.    The foregoing recitals are true and correct in every respect and incorporated herein by reference.

2.    The term of the Lease, subject to Tenant's rights of extension as provided in the Lease, shall expire on October 13, 2013 (the "Term").

3.    Beginning on the Effective Date and continuing throughout the Term, Tenant shall pay to Landlord the new minimum annual guaranteed rentals, and percentage rentals based upon the new base for such payment established under the Second Amendment for such Term.

4.    Except as expressly modified herein, the Lease remains in full force and effect as written.

IN WITNESS WHEREOF, the parties hereto have signed and sealed this Agreement on the date first set forth above.

Signed, sealed and delivered
in the presence of:

Print name: **Laura E) Baughman**

Print name:    LAURA L. ANDREWS

**WINN-DIXIE LOUISIANA, INC.**

By:
James Kufeldt

Its: VICE PRESIDENT
Date:    1-27-97

_Kelly M. Penn_
Print name: _Kelly M. Penn_

**VOGEL AND VOGEL**, an Arkansas general partnership

_K.L. Gresham_
Print name: _K.L. GRESHAM_

By: _Robert A. Vogel_
   Robert A. Vogel
Its authorized managing partner.
Date: _December 26, 1996_

STATE OF FLORIDA )
COUNTY OF DUVAL )

BE IT KNOWN that on this 24th day of _January_ , 199 7 , before me the undersigned authority, personally came and appeared _James Kufeldt_ , the VICE PRESIDENT. of Winn-Dixie Louisiana, Inc., a Florida corporation, to me known, and known by me to be the person whose genuine signature is affixed to the foregoing Second Supplemental Lease Agreement who signed said Second Supplemental Lease Agreement before me and in the presence of the two witnesses whose names are thereto subscribed as such, and acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing Second Supplemental Lease Agreement as his free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF, the said appearer has signed these presents and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_Laura L. Andrews_

Print Name: _James Kufeldt_

SWORN to and subscribed before me this
24th day of _January_ , 199 7 .

_Lydia Hope Frost_
Notary Public  LYDIA HOPE FROST
My Commission Expires:_____
(Notarial Seal)

LYDIA HOPE FROST
NOTARY PUBLIC
COMMISSION NO.
CC266152
SEAL
STATE OF FLORIDA
MY COMMISSION
EXPIRES 3-10-97

STATE OF___Arkansas_____ )
COUNTY/PARISH OF _Pulaski_____ )

    BE IT KNOWN that on this ___26th day of December___ , 199_6_ , before me the undersigned authority, personally came and appeared _Robert A. Vogel_____ , the authorized managing partner of Vogel and Vogel, an Arkansas general partnership, to me known, and known by me to be the person whose genuine signature is affixed to the foregoing Second Supplemental Lease Agreement who signed said Second Supplemental Lease Agreement before me and in the presence of the two witnesses whose names are thereto subscribed as such, and acknowledged in my presence and in the presence of said witnesses that he/she signed the above and foregoing Second Supplemental Lease Agreement as his/her free act and deed and for the uses and purposes therein set forth.

    IN WITNESS WHEREOF, the said appearer has signed these presents and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_Kelly M. Fenn_____

_____

                               _Glenda Watts_____
                               Print Name:_ Glenda Watts

SWORN to and subscribed before me this
_26th_day of _December_, 199_6_ .

_Glenda Watts_____
Notary Public
My Commission Expires:_6/8/2003_
(Notarial Seal)

## CONSENT

The Franklin Life Insurance Company, a _Illinois_ corporation, the owner and holder of a mortgage upon the Shopping Center, hereby consents to the terms and conditions of this Second Supplemental Lease Agreement.

Print name: _Alan R. Huet_

THE FRANKLIN LIFE INSURANCE COMPANY

Print name: _James L. Waschow_

By: _____

Its: _Rembert R. Owen, Jr._

Date: _Real Estate Investment Officer_

STATE OF _____ TEXAS ____ )

~~PARISH/~~COUNTY OF ____ HARRIS ____ )

BE IT KNOWN that on this 8th day of JAN. , 199 7 , before me the undersigned authority, personally came and appeared Rembert R. Owen, Jr. , the Real Est Inv Off. of The Franklin Life Insurance Company, a _Illinois_ corporation, to me known, and known by me to be the person whose genuine signature is affixed to the foregoing Second Supplemental Lease Agreement who signed said Second Supplemental Lease Agreement before me and in the presence of the two witnesses whose names are thereto subscribed as such, and acknowledged in my presence and in the presence of said witnesses that he/she signed the above and foregoing Second Supplemental Lease Agreement as his/her free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF, the said appearer has signed these presents and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

Print Name: Lavonia Kimani

SWORN to and subscribed before me this 8th day of JAN. , 199 7 .

Notary Public

My Commission Expires: 5-11-98

(Notarial Seal)

OT TRANSFER NEW ORLEANS A 1 SLA 2

LAVONIA KIMANI
Notary Public State of Texas
My Commission Expires
MAY 11, 1998