UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| Debtors. | ) Jointly Administered |

## WACHOVIA BANK, NATIONAL ASSOCIATION'S (I) STATEMENT IN SUPPORT OF DEBTORS' JOINT PLAN OF REORGANIZATION AND (II) OMNIBUS RESPONSE TO OBJECTIONS TO DEBTORS' JOINT PLAN OF REORGANIZATION

Wachovia Bank, National Association, in its capacity as agent for itself and certain other post-petition lenders ("Wachovia") of Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") submits this statement in support of the *Debtors' Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors*, dated August 9, 2006 (the "Plan") (Docket No. 10058) in response (the "Response") to objections to the Plan (collectively, the "Objections") filed by the United States Trustee (Docket No. 11318) (the "U.S. Trustee Objection"); CWCapital Asset Management LLC (Docket No. 11313); ORIX Capital Markets, LLC and KeyCorp Real Estate Capital Markets, Inc. (Docket No. 11319); and Allied Capital Corporation (Docket No. 11316) (collectively, exclusive of the U.S. Trustee Objection, the "Landlord Objections")[1], and represents as follows:

---

[1] Although filed as separate Objections, each of the Landlord Objections was filed by the same counsel and assert the same grounds for objecting to confirmation of the Plan.

738238.2

**PRELIMINARY STATEMENT**

1. Wachovia supports confirmation of the Plan. The Plan represents the culmination of more than a year and a half of exhaustive and extensive effort on the part of the Debtors to (i) restructure and rehabilitate their business operations and (ii) balance the conflicting interests of their various creditor constituencies in proposing a plan that maximizes recoveries for creditors while simultaneously fostering resolution of complex inter-creditor disputes, without becoming mired in protracted and expensive litigation. Wachovia submits that the Plan satisfies Section 1129(a) and, to the extent applicable, Section 1129(b) of Title 11, United States Code (the "Bankruptcy Code"). As a result of significant operational improvements, the Debtors' post Plan effective date prospects are bright and the Plan is feasible, as required by Section 1129(a)(11) of the Bankruptcy Code. Wachovia has, and will continue, to make a substantial contribution to the Debtors' financial reorganization by providing the Debtors with the exit financing facility (the "Exit Facility") upon which the Debtors' post confirmation operations are dependent. Accordingly, Wachovia requests that the Court enter an Order confirming the Plan.

2. Wachovia also responds to that portion of the U.S. Trustee Objection that opposes the non-debtor third party release, indemnity and injunction provisions set forth in Sections 12.12 and 12.15 of the Plan (the "Release Provisions"), of which Wachovia is a beneficiary, as well as to those portions of the Landlord Objections that oppose the assignment of non-residential real property leases in which a Debtor is a party to one or more real estate subsidiaries (the "Real Estate Subsidiary"), as provided in Section 7.5 of

the Plan.[2] As will be set forth more specifically below, Wachovia submits that the Release Provisions are fair, necessary and appropriate under the circumstances of these cases. Moreover, Wachovia submits that the Landlord Objections misread the lease assignment provisions of the Plan since, contrary to the assertions in the Landlord Objections, the operating entities that are existing tenants under each assigned lease will remain obligated to the landlord under the lease. Accordingly, rather than *losing* an obligor, the assignment provisions of the Plan result in each landlord obtaining an *additional* obligor, in the form of the Real Estate Subsidiary to whom the lease is to be assigned. Therefore, Wachovia submits that the Landlord Objections lack merit and should be overruled.

## BACKGROUND

3. On February 1, 2005 (the "Petition Date") the Debtors filed voluntary petitions for reorganization pursuant to Chapter 11 of the Bankruptcy Code. The Debtors' cases are jointly administered for procedural purposes only. The Debtors are operating their businesses and managing their property as Debtors-in-Possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

4. In accordance with that certain *Final Order Pursuant to Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (i) Authorizing Debtors to Obtain Secured Post-*

---

[2] The U.S. Trustee Objection and the Landlord Objections both assert other grounds of objection to the Plan that are not addressed to provisions directly relating to Wachovia. Wachovia understands that the Debtors will respond to these objections. Wachovia's response is limited to certain portions of the U.S. Trustee Objection and Landlord Objections, and the fact that Wachovia has not filed responses to Objections filed by other parties-in-interest, does not reflect concurrence or agreement with those Objections.

*Petition Financing on a Super Priority Priming Lien Basis and Modifying the Automatic Stay, (ii) Authorizing Debtors to Use Pre-Petition Secured Lenders Cash Collateral and Granting Adequate Protection, and (iii) Authorizing the Repayment in Full of All Claims of Debtors Pre-Petition Secured Lenders* dated March 23, 2005 (the "DIP Financing Order") (Docket No. 501) Wachovia was authorized to provide post-petition financing to the Debtors of up to Eight Hundred Million Dollars ($800,000,000) pursuant to the terms of that certain Credit Agreement among the Debtors and Wachovia dated as of February 23, 2005 (the "DIP Credit Agreement"). The financing provided by the DIP Credit Agreement was necessary to permit the Debtors to continue to operate their businesses and reorganize under Chapter 11 of the Bankruptcy Code. In accordance with the provisions of the DIP Financing Order and the DIP Credit Agreement, Wachovia was granted liens and security interests in substantially all of the Debtors' assets.

5. Section 15(e) of the DIP Financing Order contains language confirming the validity and priority of Wachovia's claims and liens, as well as granting Wachovia releases and discharges with respect to the Pre-Petition Lender Debt and Pre-Petition Lender Collateral (as such terms are defined in the DIP Financing Order) upon the expiration of a challenge period during which the Official Creditors' Committee (the "Committee") or a Trustee could investigate and determine whether a basis to assert a challenge existed. Section 15(e) of the DIP Financing Order states that:

> . . . (ii) Pre-Petition Lender and its respective agents, officers, directors and employees shall be deemed released and discharged from all claims and causes of action of any kind, nature or description arising at any time immediately prior to the Petition Date in accordance with the Pre-Petition Loan Documents entered into with Debtors, and all of the

> Debtors' acknowledgements, releases and waivers of claims granted to or in favor of Pre-Petition Lender relating to the Pre-Petition Loan Documents in accordance with this [sic] Final Order shall be binding upon all parties in interest in the Debtors' Chapter 11 cases and/or in any subsequently converted case(s) under chapter 7 of the Bankruptcy Code.

The Pre-Petition Lien/Claim Challenge period referred to in the DIP Financing Order, as consensually extended by further orders of this Court, has expired and no challenge was made. Accordingly, the release and discharge provisions set forth in the DIP Financing Order have become effective. Moreover, the DIP Financing Order approved Section 10.4 of the DIP Credit Agreement, pursuant to which the Debtors granted broad indemnification and hold harmless rights in favor of Wachovia, its officers, directors, employees and advisors.[3] A copy of Section 10.4 of the DIP Credit Agreement is attached hereto as Exhibit "A".

6. Throughout the pendency of the Chapter 11 cases, and in accordance with the DIP Financing Order and DIP Credit Agreement, Wachovia continued to provide the financing necessary for the Debtors to operate in their Chapter 11 proceedings, as they embarked upon various strategies to reorganize and rehabilitate their businesses. Wachovia has steadfastly supported the Debtors' reorganization efforts, notwithstanding the incurrence of significant operating losses, while the Debtors addressed the many challenges of downsizing and rehabilitating their businesses. Wachovia's support throughout the Chapter 11 proceedings has redounded to the Debtors' benefit, as well as to the benefit of all creditor constituencies who are now poised to realize the going concern enterprise value of the Debtors under the Plan. This result would not have been

---

[3] As it pertains to the Release Provisions, reference to Wachovia in this Response shall be deemed to include Wachovia's officers, directors, employees and advisors.

possible without Wachovia's substantial contribution to the Debtors' reorganization efforts.

7. As the Debtors' reorganization cases proceeded, the Debtors sought exit financing which was necessary and critical to the Debtors' ability to confirm the Plan and exit the bankruptcy cases. The Debtors, through their investment banker, as well as representatives of the Committee, solicited exit financing proposals from numerous prospective lenders. The Debtors determined that Wachovia's proposal for exit financing represented the proposal that best maximizes the Debtors' post-confirmation business prospects. Since the distributions to unsecured creditor classes under the Plan will be in the form of new common stock of the reorganized Debtors, the pre-petition creditors will be the beneficiary of the favorable terms of the Seven Hundred and Twenty Five Million Dollars ($725,000,000) Exit Facility to be provided by Wachovia.

8. Pursuant to that certain *Order Authorizing Debtors to Agree to an Exit Financing Commitment Letter and to Pay Related Expenses* dated July 27, 2006 (Docket No. 9622) (the "Order Approving Commitment Letter"), the Debtors were authorized to enter into a Commitment Letter (the "Commitment Letter") in the form attached as Exhibit A to the Debtors' motion for entry of the Order Approving Commitment Letter (Docket No. 8892).

9. The Order Approving Commitment Letter expressly authorized the Debtors to provide indemnifications to Wachovia in connection with the Commitment

Letter and Exit Facility. Specifically, the Order Approving Commitment Letter approved the following indemnification provisions in favor of Wachovia:

> The Company and its subsidiaries agree to jointly and severally indemnify and hold harmless Wachovia, and each director, officer, employee, attorney, advisor, agent and affiliate of Wachovia (each such person or entity referred to hereafter in this paragraph as an "Indemnified Person") from any losses (other than lost profits), claims, costs, damages, expenses or liabilities (or actions, suits or proceedings, including any inquiry or investigation, with respect thereto) to which any Indemnified Person may become subject, insofar as such losses, claims, costs, damages, expenses or liabilities (or actions, suits, or proceedings, including any inquiry or investigation, with respect thereto) arise out of, relate to, or result from, this Commitment Letter, the Fee Letter, the Credit Facility or the other transactions contemplated hereby . . .

The Commitment Letter further provides that the indemnification provisions are to survive the expiration of the Commitment Letter and that similar indemnification provisions relating to the Exit Facility are to be included in the Exit Facility loan documents.

10. The Order Approving Commitment Letter was entered by this Court, without objection by any party, on July 27, 2006.

### RESPONSE TO UNITED STATES TRUSTEE'S OBJECTION

11. The U.S. Trustee Objection opposes the Release Provisions that run in favor of non-debtor entities, including Wachovia, as being either (i) inconsistent with the Bankruptcy Code or, alternatively, (ii) not warranted under the circumstances of these cases. Wachovia submits that the U.S. Trustee's Objection is without merit.

12. First, it is important to note that of the twenty-eight (28) formal Objections to confirmation of the Plan that have been filed by parties-in-interest, *not a single* creditor's Objection opposed the Release Provisions. Thus, the various parties who have, and will continue, to be the beneficiaries of Wachovia's substantial contribution to the Debtors (and who are affected by the Release Provisions), do not oppose them.

13. Moreover, the Release Provisions, as they pertain to Wachovia, are consistent with releases and indemnifications in favor of Wachovia that have already been granted in the DIP Financing Order, DIP Credit Agreement and Order Approving Commitment Letter. Thus, approving the Release Provisions that include the release of claims pertaining to matters arising during the Chapter 11 cases for which the Debtors have already indemnified Wachovia, is consistent with prior orders of this Court and is appropriate and fair.

**Non-Debtor Plan Releases Are Not Precluded in the 11th Circuit**.

14. The U.S. Trustee Objection expressly acknowledges that there is no controlling authority in the 11th Circuit regarding the propriety of non-debtor releases in a plan of reorganization, as is the case in other judicial circuits. Rather, as is also acknowledged in the U.S. Trustee's Objection, it appears that relevant decisions in the 11th Circuit and in the Middle District of Florida, more closely follow decisions in the 2nd, 3rd, 4th and 7th Circuits which have all approved non-debtor third party plan releases in appropriate circumstances. See *In re Dow Corning Corp., 280 F.3d 648 (6th Cir. 2002); In re Continental Airlines, 203 F.3d 203 (3d Cir. 2000); In re Specialty*

*Equip. Cos., 3 F.3d 1043 (7th Cir. 1993); In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285 (2d Cir. 1992); In re A.H. Robins Co., Inc., 880 F.2d 694 (4th Cir. 1989).*[4]

15. As is further acknowledged in the U.S. Trustee Objection, case law in the Middle District of Florida has followed case law in other Circuits that hold that bankruptcy courts have the power under Section 105(a) of the Bankruptcy Code to issue permanent injunctions or third party releases pursuant to a plan in appropriate factual circumstances and that Section 524(e) of the Bankruptcy Code, which preserves a party's rights against non-debtor co-obligors, does not bar such releases. See *In re: Transit Group, 286 B.R. 811 (Bankr. M.D. Fla. 2002).*

16. *Transit* involved facts and circumstances almost identical to the facts and circumstances presently before this Court in that the bankruptcy court was asked to authorize non-debtor third party releases pursuant to the provisions of a plan of reorganization for Transit Group, Inc. ("Transit"). Among the parties for whom releases were sought was Transit's debtor-in-possession lender, GE Capital Corporation ("GECC"). GECC also provided exit financing for Transit's plan of reorganization and agreed to subordinate a portion of its pre-petition loan claim against Transit to the claims of Transit's unsecured creditors.

---

[4] Although approving a permanent injunction in the settlement of an adversary proceeding, rather than as part of a plan of reorganization, the 11th Circuit, *In the Matter of Mumford, 97 F.3d 449 (11th Cir. 1996)* affirmed a district court's ruling that permitted a bankruptcy court to utilize Section 105(a) of the Bankruptcy Code to approve a permanent injunction against non-debtor parties. Implicit in this ruling is the proposition that the granting of such releases pursuant to Section 105(a) of the Bankruptcy Code is not prohibited by Section 524(e) of the Bankruptcy Code which preserves a party's rights against a non-debtor co-obligor.

9

17. The court in *Transit* identified and adopted seven factors (the "Factors") that have been considered by various courts that have approved non-debtor releases when confirming a plan of reorganization. See *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002); *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000); *In re Specialty Equip. Cos.*, 3 F.3d 1043 (7th Cir. 1993); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992); *In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir. 1989). The Factors are:

> (1) Whether the debtor and the third party share an identity of interest, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;
>
> (2) Whether the non-debtor has contributed substantial assets to the reorganization;
>
> (3) Whether the injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor;
>
> (4) Whether the impacted class, or classes, has overwhelmingly voted to accept the plan;
>
> (5) Whether the plan provides a mechanism to pay for all, or substantially all, of the class, or classes, affected by the injunction;
>
> (6) Whether the plan provides an opportunity for those claimants who choose not to settle to recover in full, and;
>
> (7) Whether the bankruptcy court made a record of specific factual findings that support its conclusions.

18. Not all Factors need to be present to approve non-debtor releases. The *Transit* court evaluated whether a sufficient number of the Factors were present to

support the third party releases in favor of GECC. In concluding that third party releases in favor of GECC were appropriate, the court stated:

> GECC has extended substantial postpetition, debtor-in-possession financing to the debtor, exceeding $16 million. As the debtor needed additional funds to operate, GECC supplied more and more financing, all of which was necessary to give Transit a chance of reorganization. In addition, GECC has agreed to provide Transit with exit financing under the plan. The exit financing will consist of a $22 million revolving loan to fund $7 million for a new insurance program and $15 million for working capital and administrative claims. Further, GECC has agreed to refinance its prepetition secured debt with Transit and to subordinate much of its substantial debt in exchange for a 70% equity interest in the reorganized debtor. GECC has funded this debtor during its Chapter 11 case, has agreed to fund its plan of reorganization through the exit financing, and has made reorganization possible by agreeing to accept equity for debt. Without GECC's concessions and undeniable substantial contributions, Transit would have had no hope of reorganization.

19. The same statements can be made about Wachovia in the Debtors' Chapter 11 cases. Applying the same Factors, it is evident that the Release Provisions in favor of Wachovia under the Plan are necessary and appropriate, as the application of a majority of the Factors support the granting of such relief.

(a) **Identity of Interest**. As stated above, the DIP Financing Order approved the DIP Credit Agreement pursuant to which the Debtors indemnified Wachovia for claims that may be asserted against it during the Chapter 11 proceeding. Similar indemnification rights were granted to Wachovia pursuant to the Commitment Letter and will be granted to Wachovia in the Exit Facility credit agreement. Thus, assertion of claims against Wachovia by third parties will result in the assertion of indemnification claims by Wachovia against the Debtors, thereby undermining the discharge to which the Debtors are entitled and depleting the assets of the Debtors.

(b)     **Contribution of Assets to the Reorganization**. Wachovia has provided substantial funding to the Debtors during the reorganization proceeding and is committed to provide significant funding post confirmation pursuant to the Exit Facility loan documents. Moreover, although Wachovia's pre-petition claim was satisfied by the terms of the DIP Financing Order, by agreeing to an Exit Facility that adopts, assumes and restates the Debtors' obligations under the DIP Credit Agreement, as modified by the Exit Facility loan documents, Wachovia is permitting tens of millions of dollars of administrative and priority claims to be paid prior to repayment and satisfaction of the outstanding obligations due Wachovia. As was the case for GECC in *Transit*, Wachovia's ability to ultimately receive full payment of the obligations arising under the Exit Facility will be impacted by, and is dependent upon, the Debtors' future financial success.

(c)     **The Injunction is Essential to the Debtors' Reorganization.** The injunction is critical to the Debtors' reorganization as it will protect the Debtors from the potential assertion of indemnification claims by Wachovia. Moreover, the approval of the Release Provisions is essential to the Debtors' reorganization since consummation of the Exit Facility is expressly conditioned upon approval of the Plan in form and substance satisfactory to Wachovia. As was the case with respect to the DIP Financing Order, DIP Credit Agreement, Commitment Letter and Exit Facility, Wachovia has consistently negotiated with the Debtors to obtain these protections.

(d)     **Whether the Impacted Classes Have Overwhelmingly Voted to Accept the Plan**. Wachovia has not yet been advised of the vote tabulation. However,

Wachovia expects that most, if not all, of the creditor Classes entitled to accept the Plan will accept the Plan. With respect to creditors who have filed Objections to the Plan, none of the creditors have opposed the Release Provisions.

(e) **Whether the Plan Provides a Mechanism to Pay For All of the Classes Affected by the Injunction**. With the exception of existing shareholders, all creditor classes will receive distributions under the Plan. These distributions might not have been available absent the financing provided by Wachovia under the DIP Credit Agreement and that will be provided by Wachovia under the Exit Facility.

(f) **Whether the Plan Provides an Opportunity for Claimants Who Choose Not to Settle to Recover in Full**. The Plan does not provide for separate treatment of creditors who object to the Plan. However, as previously mentioned, none of the Objections asserted by objecting parties expressed opposition to the Release Provisions.

(g) **Whether the Bankruptcy Court Made a Record of Specific Factual Findings**. This Factor addresses matters relevant to appellate review of a Bankruptcy Court's authorization of non-debtor third party releases. Wachovia submits that the record at the confirmation hearing will be clear and sufficient to enable this Court to make specific factual findings necessary and appropriate to support approval of the Release Provisions.

20. Based upon the foregoing, Wachovia submits that authorization of the Release Provisions in favor of Wachovia is fair, necessary and appropriate under the circumstances of these cases.

## RESPONSE TO LANDLORD OBJECTIONS

21. The Landlord Objections oppose Section 7.5 of the Plan which provides that all real property leases, as to which the assumption by the Debtors under Section 365(a) of the Bankruptcy Code has been approved by Order of the Bankruptcy Court, will be assigned to the Real Estate Subsidiary under Section 365(f) of the Bankruptcy Code. The Landlord Objections are premised upon the mistaken belief that the assignment of such leases to the Real Estate Subsidiary increases the likelihood of default, provides the Debtors with easy access to bankruptcy to limit damages and eviscerates any inter-company guarantees. The Landlord Objections also assert that assigning each lease to the Real Estate Subsidiary changes the lessee from a primary Winn-Dixie entity with access to all of the assets and income of the company, to a shell entity with no assets or income. Therefore, the Landlord Objections assert that such assignment fails to provide adequate assurance of future performance of the lease. The Landlord Objections conclude that the Plan assigns the leases to the Real Estate Subsidiary for no reason other than to make it easier for the Debtors to breach the leases in the future.

22. The Landlord Objections are premised upon the erroneous assumption that the Debtors' obligations under the Lease are being transferred from entities with assets to

shell entities without assets. This is not the case. Section 7.5 of the Plan expressly provides:

> Notwithstanding such assignments, the original debtor lessee under any such real property lease, and any debtor guarantor thereof, shall continue to be obligated on the lease to the fullest extent of their respective obligations as such obligations existed prior to the assignment to [the Real Estate Subsidiary].

23.     In effect, rather than losing an obligor as stated in the Landlord Objections, landlords will retain rights against all existing parties and also obtain the Real Estate Subsidiary, as an *additional* obligor. As a result, the Landlord Objections lack merit and should be overruled.

WHEREFORE, Wachovia requests that the Plan be confirmed and that the United States Trustee Objection and the Landlord Objections be overruled, and for such other and further relief as is just and proper.

Dated: October 6, 2006

ROGERS TOWERS, P.A.

By: /s/ Betsy C. Cox
Betsy C. Cox
Florida Bar No. 307033
1301 Riverplace Blvd., Suite 1500
Jacksonville, Florida 32207
(904) 398-3911 (telephone)
(904) 396-0663 (facsimile)
bcox@rtlaw.com (email)

- and -

OTTERBOURG, STEINDLER,
 HOUSTON & ROSEN, P.C.
Jonathan N. Helfat (JNH 9484)
230 Park Avenue, 29th Floor
New York, NY 10169
(212) 661-9100 (telephone)
(212) 682-6104 (facsimile)
jhelfat@oshr.com (email)

ATTORNEYS FOR WACHOVIA BANK,
NATIONAL ASSOCIATION, IN ITS
CAPACITY AS AGENT FOR ITSELF
AND CERTAIN OTHER POST-PETITION
LENDERS