**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**AD HOC TRADE COMMITTEE'S RESPONSE TO UNITED STATES TRUSTEE'S OBJECTION TO JOINT PLAN OF REORGANIZATION OF WINN-DIXIE STORES, INC. AND AFFILIATED DEBTORS**

The Ad Hoc Trade Committee (the "Trade Committee") for Winn-Dixie Stores, Inc., et al., (the "Debtors"), by its attorneys DLA Piper US LLP (f/k/a/ DLA Piper Rudnick Gray Cary US LLP), submits this response (the "Response") to the United States Trustee's Objection (the "UST Objection") to Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan"), and respectfully states as follows:

**Preliminary Statement**

The Trade Committee supports confirmation of the Plan and asserts that the confirmation requirements of Section 1129 of the Bankruptcy Code have been satisfied. As stated herein the disputes over substantive consolidation of Winn-Dixie Stores, Inc. and the twenty-three affiliated Debtors have hovered over these Chapter 11 cases since their inception. The Trade Committee, for themselves and on behalf of holders of claims related to goods, materials, services and equipment that enabled the Debtors to operate their business, filed a motion and supporting memorandum (now unsealed) to substantively consolidate all of the Debtors. The daunting prospect of massive, costly and time-consuming litigation over substantive consolidation was not an attractive prospect to any of the Trade Committee, the

NEWY1\8041437.4

Debtors or the Official Committee of Unsecured Creditors (the "Official Committee").  The delay necessarily attendant to litigation over substantive consolidation would have significantly delayed the reorganization process and caused significant damage to the Debtors' business.

As a result, the Official Committee invited the Trade Committee into an extensive negotiation process described in significant detail in the disclosure statement filed in connection with the Plan (the "Disclosure Statement") as the "Substantive Consolidation Compromise" (the "Sub Con Compromise").  Most significant constituencies participated in lengthy analyses, discussions and negotiations over substantive consolidation with the Sub Con Compromise as the result.  The Sub Con Compromise takes into account numerous complicating factors as described in the Disclosure Statement.

One such factor represents the provision of the Plan to pay the legal fees of various constituencies for their efforts in the consideration and resolution of the substantive consolidation dispute.  The Debtors' agreement to make such constituencies whole for their legal fees is an integral and indispensable part of the Sub Con Compromise.  Much as with the Trade Committee's participation in the adoption of the Reclamation/Trade Lien Program earlier in this case (in which this Court approved an identical arrangement for fee reimbursement to the members of the Trade Committee), legal fees are to be reimbursed subject to review and agreement by the Debtors.  This Court was satisfied then, and should be satisfied now, that such a fee arrangement is appropriate as part of a settlement and compromise proposed by the Debtors.

The U.S. Trustee has objected to this fee reimbursement arrangement already approved once by this Court and set forth in the Plan.  This objection inappropriately attempts to separate the Sub Con Compromise into its component parts, rather than viewing it as a whole.  In

addition, implicit in the Sub Con Compromise is the Debtors' recognition that the Trade Committee has made a "substantial contribution" in this case under section 503(b)(3)(D) of the Bankruptcy Code. The Bankruptcy Codes does not prohibit the Debtors' recognition in a plan of reorganization of such services and the provision for their payment or reimbursement. Moreover, there is no prohibition under Bankruptcy Rule 9019 or otherwise for a compromise to include reimbursement of legal fees to a party for any purpose, much less where fees have been expended as an indispensable element of the achievement of a consensual plan which avoids such significant cost and delay to reorganization and preserves significant value for the benefit of all creditors.

This Plan is the pragmatic result of reasonable compromise by all significant constituencies in compliance with the requirements for confirmation under section 1129 of the Bankruptcy Code.

**Background**

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' cases are currently being jointly administered for procedural purposes only.

2. On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee to serve in these cases. The Official Committee currently consists of seven (7) members. Of these members, only two (2) are the holders of prepetition trade claims.

3. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4. On June 29, 2006, the Debtors filed the Plan and Disclosure Statement.[1] The Plan embodies the Sub Con Compromise, an arms-length settlement among many sophisticated constituents in this case relating to substantive consolidation.

5. The undersigned submits this Response to the U.S. Trustee's objection to the Plan on the grounds that it improperly provides for payment of the professional fees of the Trade Committee. As is set forth herein, the payment of these fees is only one component of the Sub Con Compromise, which is an overall compromise among the Debtors, the Official Committee, the Trade Committee, and other creditor groups, which forms the basis of the Plan. The overall compromise is clearly in the best interests of the Debtors' estates, and it is thus inappropriate to consider any particular component in a vacuum.

**The Substantive Consolidation Issue**

6. The Debtors made it very clear during the pendency of these cases that resolution of the substantive consolidation issue was the most significant obstacle to the filing of a plan of reorganization in these cases:

- "Counsel for Winn-Dixie has previously stated, and reiterated Thursday, that the issue is one that the creditors must primarily resolve amongst themselves, but the grocer is engaged in the discussions and dedicated to continuing a consensual bankruptcy process … "We don't wish to act unilaterally, filing a plan with unresolved issues left for the creditors committee,' says Steve Busey, co-counsel for Winn-Dixie." Orlando Business Journal, March 10, 2006 (2006 WLNR 5090929)

---

[1] The Plan and Disclosure Statement were revised and refiled by the Debtors on August 1, 2006.

- "[Winn-Dixie Spokesman Michael] Freitag said Winn Dixie hoped its creditor groups could agree before June 29, when the company's exclusivity is set to expire, on a consensual plan of reorganization with Winn-Dixie.  If not, he said, Winn-Dixie would submit a plan with the support of at least several groups ….  "'Because of issues involving substantive consolidation', Freitag said, 'there are differences within the official committee of unsecured creditors on how a restructuring plan should be structured'." Daily Deal, May 12, 2006 (2006 WLNR 8164053)

- "'The debtors recognize that [substantive consolidation] is a litigable issue,' says Steve Busey, attorney for Smith, Hulsey & Busey, Winn-Dixie's co-counsel. 'It's one that cries out for compromise' instead of litigation in open court'."  Orlando Business Journal, April 21, 2006 (2006 WLNR 6689367)

- "A significant open issue is the respective treatment of unsecured claims against each of the individual affiliated Debtors, or in the alternative, consideration of the substantive consolidation of the Debtors' estates . . . The Debtors and the Creditors Committee are working together to resolve open issues in order to permit the Debtors to timely file a plan of reorganization that will be consensual among the various creditor constituencies and avoid protracted litigation." Debtors' Motion for Order Granting Fourth Extension of Exclusive Periods for Filing Chapter 11 Plans and Obtaining Acceptances of Such Plans, Dated February 22, 2006

- "The Debtors believe that no party in interest would benefit from the filing of a plan of reorganization while the resolution of the Substantive Consolidation Issue is under negotiation."  Debtors' Motion for Order Granting Fifth Extension of Exclusive Periods for Filing Chapter 11 Plans and Obtaining Acceptances of Such Plans, Dated March 31, 2006

7. Indeed, absent resolution of substantive consolidation issues, the Plan likely could not have been filed.  Despite these statements, the Debtors took no public position on substantive consolidation nor did they take any action to resolve the issue.  Instead, the Debtors left resolution of the issue to the creditors.

**The Trade Committee**

8. On or about March 22, 2006, the Trade Committee was reformed and reactivated to investigate substantive consolidation issues from the perspective of the Debtors' trade creditors.[2] The current members of the Trade Committee are as follows: ASM Capital, Amroc Investments, LLC, Avenue Capital Group, LCH Opportunities, LLC, DellaCamera Capital Management, LLC, Contrarian Capital Management, LLC, Longacre Fund Management, LLC, ConAgra Foods, Inc., The Procter & Gamble Distributing Co., S.C. Johnson & Son, Inc., Conopco, Inc., Madison Capital Management, VR Capital Group, Ltd., and General Mills, Inc. As of May 11, 2006, the Trade Committee members held approximately $70 million in unsecured claims, primarily relating to goods sold and delivered to the Debtors, services rendered to the Debtors, and lease rejection damages. As of the filing of this Response, the Trade Committee holds significantly more in unsecured claims.

9. The Trade Committee's involvement was made necessary because, prior to its reformation, there was no entity in these cases that could represent solely the interests of the Debtors' trade creditors. While substantive consolidation was in the best economic interests of trade creditors, substantive consolidation was contrary to the interests of the holders of notes (the "Noteholders") issued pursuant to an indenture dated December 26, 2000 between Winn-Dixie Stores, Inc., certain of its subsidiaries as guarantors, and Wilmington Trust Co. (the "Indenture Trustee"), as supplemented by first supplemental indenture dated March 29, 2001 (the "Indenture"). Pursuant to the Indenture, Winn-Dixie Stores, Inc. issued $300 million in principal amount of senior notes (the "Notes") bearing interest at 8.875% per annum which mature by

their terms in 2008. Absent substantive consolidation the Noteholders could recover on multiple unsecured claims asserted in each of these cases. The Noteholders held three seats on the Official Committee, the trade creditors held two.

10. The Trade Committee informally requested that the Debtors provide documentation relating to their business, which documents are relevant to a substantive consolidation analysis. On March 30, 2006, counsel to the Debtors and the Trade Committee entered into a confidentiality agreement to facilitate the Trade Committee's investigation (the "Confidentiality Agreement"). The Debtors would not have produced documents to the Trade Committee absent the Trade Committee entering into the Confidentiality Agreement.

11. On May 11, 2006, after a thorough review of the Debtors' publicly available and non-publicly available documents, the Trade Committee filed the Motion For Order pursuant to Section 105 of the Bankruptcy Code Substantially Consolidating the Debtors' Estates (the "Sub Con Motion"). In support of the Sub Con Motion, the Trade Committee prepared a brief in support of the Sub Con Motion (the "Brief") and an affidavit of M. Freddie Reiss (the "Reiss Affidavit"). As set forth in the Sub Con Motion, the Trade Committee and its professionals reviewed in excess of 10,000 pages of documents and interviewed approximately a dozen of the Debtors' employees. Based on this review, the Trade Committee believed, and still believes, that the evidence is overwhelming that the Debtors' cases should be substantively consolidated.

---

*(footnote continued from previous page)*
[2] As set forth above, the Official Committee consists of seven (7) members, of which, only two are the holders of trade claims.

12. Contemporaneously with the filing of the Sub Con Motion, the Trade Committee filed a motion for an order authorizing it to file documents in support of the Sub Con Motion (the Brief and the Reiss Affidavit) under seal (the "Confidentiality Motion"). The Trade Committee filed the Confidentiality Motion to honor its Confidentiality Agreement with the Debtors. The Debtors have recently authorized the Trade Committee to electronically file the Brief and the Reiss Affidavit. Copies of the Brief and the Reiss Affidavit are attached hereto as exhibits A and B, respectively.

13. There has been no substantive objection to the Sub Con Motion. The Debtors have taken no official position on the substantive merits of the Sub Con Motion and substantive consolidation. The Debtors did file a motion to deny or abate the Sub Con Motion (the "Motion to Abate"), and took the meritless position that the Trade Committee's actions violated the Debtors' exclusive right to file a plan of reorganization. The Trade Committee relied on the extensive precedent for the substantive consolidation issue to be resolved prior to a plan on motion. See, e.g., In re Optical Technologies, 221 B.R. 909, 911 (Bankr. M.D. Fla 1998); In re Stone & Webster, Inc., 286 B.R. 532, 542 (Bankr. Del. 2002). The parties agreed to the Sub Con Compromise, however, prior to the hearing on the Motion to Abate.

**The Plan and the UST Objection**

14. To avoid the expense and delay of extensive evidentiary hearings on the issue of substantive consolidation as presented by the Sub Con Motion, on June 14, 2006, the Trade Committee, the Official Committee, and the Debtors agreed to the Sub Con Compromise.

15. An integral part of the Sub Con Compromise is the payment of the Trade Committee's fees and expenses by the Debtors. As such, section 12.3 of the Plan provides for

the payment of fees and expenses of the Trade Committee's professionals, in an amount not exceeding $1,300,000.  See Plan ¶ 12.3.

16. On September 25, 2006, the U.S. Trustee filed the UST Objection, and asserted, inter alia, that Section 12.3 of the Plan is impermissible.  The Trade Committee responds to the UST Objection as it relates to section 12.3 of the Plan, and other similarly-based objections, and respectfully submits that the Plan is confirmable.

## The Sub Con Compromise Should Be Approved

A.  The Sub Con Compromise Should Be Analyzed As A Whole.

17. As set forth above, section 12.3 of the Plan provides for the payment of the Trade Committee's fees and expenses.  Section 12.3 of the Plan is an integral part of the Sub Con Compromise.  The Sub Con Compromise, as embodied in the Plan, provides for the most equitable treatment for all creditors of the Debtors, absent substantive consolidation.

18. The UST Objection does not relate to the reasonableness of the Sub Con Compromise as a whole; rather, it relates to certain individual components of the Sub Con Compromise.  In particular, the U.S. Trustee asserts that the fees and costs of the Trade Committee should be subject to court approval under sections 330 or 503 of the Bankruptcy Code.

19. The UST Objection fails to recognize, however, that the Trade Committee's fees are part of the Sub Con Compromise, and are not subject to review under sections 330 or 503 of the Bankruptcy Code.  Settlements must be analyzed in their entirety, as follows:

> [A] proposed settlement should be viewed as a whole and, consequently, approved or denied as a whole.  To do otherwise

>would allow courts to effectively rewrite the terms of settlements contrary to the principle . . . that courts should not substitute their preferences for the trustee's business judgment.

In re Arkoosh Produce, Inc., 2003 Bankr. LEXIS 2222, *28-29 (Bankr. D. Idaho July 1, 2003) (citations omitted); see In re Lehigh Valley Professional Sports Clubs, Inc., 2000 Bankr. LEXIS 520, *17-18 (Bankr. E.D. Pa. May 5, 2000) ("The court's role is not to. . . decide the merits of individual issues.  Rather, it is to determine whether the settlement as a whole is fair and equitable.").  Indeed, the court "is not required to examine each detailed cost that comprises the settlement." In re Cadet Manufacturing Co., 2006 Bankr. LEXIS 1353, *22 (Bankr. W.D. Wash. May 15, 2006).

20.     The recent decision in In re Mirant Corp., 2006 Bankr. LEXIS 1844, *49 (Bankr. N.D. Tex. Aug. 9 2006) instructs that, when a proposed settlement in part provides for the debtor to undertake a transaction, the proper test to be applied is that for approval of the proposed settlement as a whole (not the component transaction).  In Mirant, one component of the settlement at issue was the assumption and rejection of certain contracts.  A party objected to the settlement on the basis that it did not meet the test for assumption or rejection of executory contracts.  The court in Mirant found that assumption and rejection was part of the overall settlement; if the settlement meets the test for approval, the disposition of the contract is simply one element of what should be approved.  See id. at *48-49.

21.     Similarly, in the present case, the fees and expenses of the Trade Committee are not subject to court approval under sections 330 or 503 of the Bankruptcy Code.  Instead, they are an integral element of the Sub Con Compromise.  The Sub Con Compromise must be viewed as a whole, rather than separated into component parts.  The UST Objection

should be denied because it requests that the Court essentially re-write the Sub Con Compromise.

22. The Trade Committee respectfully submits that the Sub Con Compromise, viewed as a whole, meets the standard for approval under Bankruptcy Rule 9019. As set forth in the Sub Con Motion and supporting documents, the evidence is overwhelmingly in favor of substantively consolidating these cases. In fact, there is currently <u>no evidence</u> to support the deconsolidation of the Debtors.[3] If these cases are not substantively consolidated, the Sub Con Compromise is the only compromise to which the Trade Committee will agree.

B. <u>The Sub Con Compromise Settles The Trade Committee's Fees.</u>

23. Implicit in the Sub Con Compromise is the Debtors' recognition that the Trade Committee has made a "substantial contribution" in these cases. There was nobody in this case who could effectively advocate solely for the interests of trade creditors.

24. Section 12.3 of the Plan is based upon the provisions of 503(b)(3)(D) of the Bankruptcy Code. Section 503(b)(3)(D) of the Bankruptcy Code authorizes allowance, as an administrative expense, expenses incurred by a committee not appointed under section 1102 of the Bankruptcy Code in making a substantial contribution in the case. <u>See</u> 11 U.S.C. §503(b)(3)(D). Notably, in the Eleventh Circuit, the court does not examine the creditor's intent when analyzing whether a substantial contribution was made. <u>See</u> <u>Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)</u>, 227 F.3d 1336, 1338 (11th Cir. 2000) ("a creditor's motive in taking actions that benefit the estate has little relevance in the determination of whether the creditor has.

---

[3] Upon information and belief, all of the Debtors' financial documents that have been made available to the Trade Committee have also been made available to any creditor who has requested same and who has entered into a confidentiality agreement with the Debtors.

. .made a substantial contribution to a case."). The creditor's expenses are reimbursable if they "directly and materially contributed to the reorganization." See id. at 1338-39.

25. In the present case, the Trade Committee clearly "directly and materially contributed" to the Debtors' reorganization. Before the Trade Committee's involvement, no party took a definitive position on substantive consolidation, which was the most important obstacle to formation of a plan of reorganization. All parties in interest were able to negotiate the terms of consensual plan because of the Trade Committee's Sub Con Motion, which highlighted the overwhelming evidence in support of consolidation. Absent the Trade Committee's due diligence and the Sub Con Motion, reorganization would not have been possible. Should this Plan not be confirmed, the Trade Committee would proceed with its Sub Con Motion, and would incur significantly more fees and expenses. The Sub Con Compromise recognizes the Trade Committee's substantial contribution, and settles the Trade Committee's fee recovery. The Trade Committee respectfully submits that it is an appropriate part of the Sub Con Compromise, and the Plan should be confirmed.

26. The Trade Committee reserves all of its rights to apply to the Court for an award of its fees and expenses as an administrative expense claim should the Plan not be confirmed as it is currently drafted.

27. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, for the reasons set forth herein, the Trade Committee requests that the Court enter an order (a) denying the UST Objection and all similarly-based objections, (b) confirming the Plan, and (c) granting such further relief as is just.

Dated: New York, New York
October 9, 2006

        DLA PIPER US LLP

        By: /s/      Thomas R. Califano
            Thomas R. Califano
            Vincent J. Roldan
          1251 Avenue of the Americas
          New York, NY 10020-1104
          Telephone: (212) 835-6190
          Facsimile: (212) 835-6001

                - and -

        By: /s/      Mark J. Friedman
            Mark J. Friedman
            Daniel Carrigan
            Janice L. Duban
          6225 Smith Avenue
          Baltimore, MD 21209
          Telephone: (410) 580-4153
          Facsimile: (410) 580-3001

                - and -

        By:    /s/  Philip V. Martino
            Philip V. Martino
          Florida Bar Number 079189
          101 East Kennedy Boulevard, Suite 2000
          Tampa, FL 33602-5149
          Telephone: (813) 229-2111
          Facsimile: (813) 229-1447

Attorneys for Ad Hoc Trade Committee of Winn-Dixie Stores, Inc., et al.