*(handwritten notes)*

(1) Check for Water + Sewer
(2) No EXHIBIT A
(3) 160 Car Parking Check
(4) Check Tenant Sales Records

---

## WINN-DIXIE, INC.

### JENSEN BEACH PLAZA – SHOPPING CENTER

### LEASE:  MERO SUSNAR, LANDLORD

| | |
|---|---|
| Lease Date: | October 25, 1971 |
| Expiration Date: | October 14, 1992 |
| Security Deposits: | None |
| Prepaid Rents: | None |
| Amendment to Lease: | November 1, 1972 |
| Second Amendment to Lease: | February 25, 1982 |
| Third Amendment to Lease: | March 30, 1983 |

The above terms are correct, and are set out in the Lease and Amendments thereto, copies attached, and Landlord is not in default thereunder.

Winn-Dixie, Inc.

BY: *James M Carroll*
Real Estate Manager

June __21st__, 1983.

*(handwritten)* MARIO LIBRAT



EXHIBIT
A

## THIRD AMENDMENT TO LEASE

THIS AMENDMENT, made this _30th_ day of _March_, 1983, between MERO SUSNAR (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include the heirs, legal representatives, successors and assigns of the respective parties;

### WITNESSETH:

WHEREAS, by Lease dated October 25, 1971, W. G. Lassiter, Jr., unmarried, as landlord, did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development known as Jensen Beach Plaza, located at the N. W. corner of North Savannah Road and Commercial Street, near the City of Jensen Beach, County of Martin and State of Florida, for an initial term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, now fixed as October 15, 1972, and expiring at midnight on October 14, 1992, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form of said Lease being recorded in Official Record Book 332, page 386 of the Public Records of Martin County, Florida; and

WHEREAS, the said Lease was amended in certain respects by Supplemental Lease Agreement dated November 1, 1972; and

WHEREAS, the interest of the Landlord in said Lease, as amended, has been vested by mesne assignments in Landlord herein; and

WHEREAS, the said Lease, as amended, was further amended by Second Amendment to Lease dated February 25, 1982, in contemplation of construction by Tenant of an addition to Tenant's building and related improvements, and such construction now having been completed, the parties hereto desire to fix the effective date of the rental adjustment and other lease modifications



This instrument was prepared by Francis P. Hamilton, Attorney-at-Law, whose address is 1005 Edgewood Road, Jacksonville, Florida 32205.

occasioned by such additional construction, all as more parti-
cularly contemplated in said Second Amendment to Lease;

NOW THEREFORE, in consideration of the premises and the
sum of Ten Dollars ($10.00) and other good and valuable considera-
tions, in hand paid by the Tenant to the Landlord, the receipt
and sufficiency of which is hereby acknowledged, it is mutually
agreed as follows:

1. It is hereby agreed that the contemplated rental
adjustment as provided in Article 4, sub-section (b) of the said
Second Amendment to Lease dated February 25, 1982, shall take
effect as of February 24, 1983, together with the other modifi-
cations of said Lease, as amended, also to take effect as of the
same date.

2. It is mutually understood and agreed that the said
Lease dated October 25, 1971, as amended, shall be and remain in
full force and effect and unmodified, except as the same is
specifically modified and amended hereby. All terms, covenants,
obligations and conditions of said Lease, as amended, not modified
or amended by this Third Amendment to Lease, are hereby ratified
and confirmed.

IN WITNESS WHEREOF, the Landlord and Tenant have
executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____

_____
As to Mero Susnar

_____ (SEAL)
Mero Susnar

                                LANDLORD

_____

_____
As to Winn-Dixie Stores, Inc.

WINN-DIXIE STORES, INC.

By_____
   Its              President

Attest:_____
        Its         Secretary

                                TENANT

                        (CORPORATE SEAL)

-2-

89/29/1999  13:12   2184868781                    CARTER PROPERTIES                    PAGE  05

Florida - 1 Individual  1 Corporate

STATE OF *FLORIDA*        )
COUNTY OF *PALM BEACH*    )

The foregoing instrument was acknowledged before me this

_____*March*_____   *30* , 19 *83* , by _____ MERO SUSNAR _____

_____

_____

(NOTARIAL SEAL)                    Notary Public, State and County aforesaid

My commission expires:

NOTARY PUBLIC, STATE OF FLORIDA
MY COMMISSION EXPIRES OCT. 7, 1985
BONDED THRU GENERAL INS. UNDERWRITERS


STATE OF  FLORIDA        )
COUNTY OF  DUVAL         )

The foregoing instrument was acknowledged before me this

_____*April*_____   *13*. 19 *83* , by _____

and _____, _____President and _____

Secretary, respectively, of _____ WINN-DIXIE STORES, INC. _____

_____, a _____ Florida _____

corporation, on behalf of the corporation.

(NOTARIAL SEAL)                    Notary Public, State and County aforesaid

My commission expires:
Notary Public, State of Florida
My Commission Expires April 12, 1984.

## SECOND AMENDMENT TO LEASE

THIS AMENDMENT, made this _25th_ day of _February_, 1982, between MERO SUSNAR (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include the heirs, legal representatives, successors and assigns of the res- pective parties;

### WITNESSETH:

WHEREAS, by Lease dated October 25, 1971, W. G. Lassiter, Jr., unmarried, as landlord, did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development known as Jensen Beach Plaza, located at the N. W. corner of North Savannah Road and Commercial Street, near the City of Jensen Beach, County of Martin, State of Florida, for an initial term of twenty (20) years commenc- ing upon a date dependent upon the completion of certain construc- tion, now fixed as October 15, 1972, and expiring at midnight on October 14, 1992, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form of said Lease being recorded in Official Record book 332, page 386 of the Public Records of Martin County, Florida; and

WHEREAS, the said Lease was amended in certain res- pects by Supplemental Lease Agreement dated November 1, 1972; and

WHEREAS, the interest of the Landlord in said Lease, as amended, has been vested by mesne assignments in Landlord herein; and

WHEREAS, the parties hereto have agreed that the Tenant may construct an addition to its building and make other related renovations and alterations to the existing store building as necessary to make the enlarged building suitable for use by Tenant in the conduct of its business, and the parties hereto have agreed to make certain modifications and amendments to said Lease, as amended, for such purposes, as hereinafter set forth;



This instrument was prepared by Ronald P. Hamilton, Attorney, whose office address is 5050 Edgewood Court, Jacksonville, Florida 32205.

NOW THEREFORE, in consideration of the premises and the sum of Ten and no/100 Dollars ($10.00) and other good and valuable considerations, in hand paid by the Tenant to the Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1. Tenant, agrees, with the approval and consent of the Landlord hereby evidenced, at Tenant's cost and expense, with due diligence to undertake the necessary construction work to enlarge Tenant's present building by constructing a permanent addition on the Westerly side thereof measuring 30 feet in width by 142 feet in depth, together with an enclosed vestibule 75 feet in width by 11 feet 9 inches in depth across the front of the enlarged building, and concurrently to make such other renovations, alterations and remodeling of the overall enlarged building, including construction and installation of a new store front, removal and reinstallation of doors, walls and partitions, construction and installation of exterior slab-mounted coolers and freezers and exterior loading docks, as are necessary to make the enlarged building suitable for use by Tenant in the conduct of its business. The new addition and the other renovations and alterations and related improvements as herein contemplated shall be constructed in accordance with plans and specifications therefor to be furnished by Tenant and which shall be approved by both parties hereto on or before two (2) weeks after the said plans and specifications are furnished by Tenant. In the event the parties shall not approve same within such period, to be evidenced by their initials thereon, this Second Amendment to Lease shall become null and void and of no further force and effect unless the parties hereto shall mutually agree in writing to extend the period for approval of said plans and specifications. All such construction work shall be performed in a good and workmanlike manner and in conformity with all applicable building codes and requirements of governmental authorities and shall be of comparable structural quality as the existing store building for Tenant. Tenant agrees to indemnify and hold the Landlord harmless from any mechanics', materialmen's or laborers' liens or encumbrances arising out of such construction work and

-2-

to cause such liens, if any, to be promptly discharged.

2. Concurrently with the enlargement work to be undertaken by Tenant, Landlord agrees, at its expense, to cause the entire existing store building to be re-roofed, such work to be performed in a good and workmanlike manner and in conformity with all applicable building codes and regulations and in accordance with plans and specifications covering same to be approved by the parties hereto. Subsequent to installation of the new roof, Landlord shall have responsibility for repair and maintenance of the entire roof on the entire enlarged building.

3. It is understood that in order to permit Tenant to utilize the adjoining storeroom on the Westerly side of Tenant's building to effect the enlargement, the Landlord agrees to cause the tenant presently occupying such adjoining storeroom to remove therefrom, which removal Landlord agrees to effect on or prior to three (3) months subsequent to the date of execution hereof by both parties, and Landlord agrees to deliver possession of such storeroom to Tenant free and clear of all tenancies as soon as available, but in any event on or prior to the stipulated date. In the event Landlord fails for any reason to deliver possession to Tenant of all the space contemplated for the enlargement by the stipulated date, Tenant may at its option and election cancel and terminate this lease amendment whereby the said Lease dated October 25, 1971, as amended, shall continue in full force and effect as if this amendment had not been executed.

4. Upon the earlier to occur of (i) completion of the building addition, of the vestibule and the other renovations and alterations as contemplated herein, including the installation of the new roof by the Landlord, or (ii) the first day of the first month following the date Tenant receives a Certificate of Occupancy from Martin County, the following further modifications to said Lease, as amended, shall become effective:

(a) The building addition, together with all permanent improvements, alterations, renovations and related improvements herein contemplated, shall be and become a part of the demised premises, and whereinsoever in said Lease, as amended, reference

-3-

is made to the demised premises, the same shall be thereafter construed to apply to the enlarged building and the land on which the same shall stand.

(b)  Said Lease, as amended, is hereby further amended to provide that instead of the rentals provided in Article 1 of said Lease, as amended, from and after the effective date hereof and any exercised option extensions thereafter, Tenant agrees to pay to Landlord as minimum guaranteed rental for the enlarged demised premises the sum of Ninety Thousand and no/100 Dollars ($90,000.00) per year, payable in twelve (12) equal monthly installments of Seven Thousand Five Hundred and no/100 Dollars ($7,500.00), which installments shall be due and payable in advance on the first day of each and every calendar month of the remainder of the lease term, and any exercised option extensions thereafter.

In addition, Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30 exceeds Ninety Thousand and no/100 Dollars ($90,000.00). The percentage rentals, if any, shall be calculated and paid in like fashion as provided in Article 1 of said Lease, as amended.

Rentals shall be calculated and paid under the present applicable rates of the original Lease, as amended, until the rentals begin to accrue under the above substituted provisions, and the rentals for any month in which a change of rates occurs shall be prorated between the previously effective rates and the rates effective under the above substituted provisions. The parties hereto agree to execute a further supplement to the Lease, as amended, fixing the effective date of the rental adjustment contemplated in this paragraph when determined as herein provided, but containing no other terms and conditions changing the import hereof.

-4-

(c)  Article 35 of said Lease dated October 25, 1971, as amended, shall be amended by deleting therefrom the two figures appearing therein of $2,272.00" and "$189.34" and there shall be substituted in lieu thereof the figures $2,786.10" and $232.18".

(d)  It is understood and agreed that the tax contribution by Tenant for increased taxes as provided in Article 34 of said Lease, as amended, shall specifically apply to the increased taxes which are to be expected as a result of the construction of the addition to Tenant's building and the related improvements contemplated hereunder.

Tenant shall henceforth reimburse Landlord for the increased annual premium cost of fire and extended coverage insurance on the building on the demised premises resulting from the construction of the building addition and renovations to the existing building.  The initial increment of increased premium cost of fire and extended coverage on the building on the demised premises to which Tenant is to contribute, resulting from such cause, shall be the difference between the annual premium paid immediately preceding construction of the building addition and the annual premium determined for the same type coverages immediately following the completion of the building addition as based upon the augmented value of the enlarged building.  Tenant shall continue to reimburse Landlord for the amount of further increments of increased premium cost of insurance during the remainder of the initial term of the Lease, and any exercised option extensions thereafter.

(e)  In that the enlargement of Tenant's building will have been accomplished under the terms and provisions of this Second Amendment to Lease, it is mutually understood and agreed that the option for expansion under the different formula provided in Article 37 of said Lease, as amended, shall be deemed null and void; provided, however, if for any reason the enlargement shall not be accomplished as contemplated in this Second Amendment to Lease, the said Lease, as amended, shall be deemed to continue in full force and effect, including the option for expansion as set forth in said Article 37 thereof.

-5-

5. It is mutually understood and agreed that the said Lease dated October 25, 1971, as amended, shall be and remain in full force and effect and unmodified, except as the same is specifically modified and amended hereby. All covenants, terms, obligations and conditions of said Lease, as amended, not modified or amended by this Second Amendment to Lease, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
As to Landlord

_____ (SEAL)
Mery Susnar

LANDLORD

_____
As to Tenant

. WINN-DIXIE STORES, INC.

By _____
   Its   Assoc Vice President

Attest: _____
   F.P. Hamilton
   Its   Ass't. - Secretary

TENANT

(CORPORATE SEAL)

-6-

Florida - 1 Individual 1 Corporate

STATE OF _FLORIDA_ )
COUNTY OF _PALM BEACH_ )

    The foregoing instrument was acknowledged before me this

_February_ _25_, 19 _82_, by _____ MERO SUSNAR _____

_____

_____

(NOTARIAL SEAL)

              _Elizabeth Scher_
             Notary Public, State and County aforesaid

             My commission expires:
                Notary Public, State of Florida
                My Commission Expires Dec. 28, 1985


STATE OF   FLORIDA )
COUNTY OF DUVAL )

    The foregoing instrument was acknowledged before me this

_March_ _1_, 19 _82_, by _C.W. Waldorf_

and _F.P. Hamilton_ _Exec Vice_ President and _Asst_

Secretary, respectively, of _____ WINN-DIXIE STORES, INC. _____

_____, a _____ Florida _____

corporation, on behalf of the corporation.

             _Judith W. Divin_
(NOTARIAL SEAL)      Notary Public, State and County aforesaid

             My commission expires:
                Notary Public, State of Florida at Large.
                My Commission Expires April 12, 1984.

## Lease ⑦

THIS LEASE, made this __25th__ day of __October__, 19_71_,

between __W. C. LASSITER, JR., unmarried,__ _____

_____

_____ (hereinafter called "Landlord")

and __WINN-DIXIE STORES, INC., a Florida corporation,__ _____

_____

(hereinafter called "Tenant"); _____ _____

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires,

singular or plural, and the heirs, legal representatives, successors and assigns of the respective

parties;

### WITNESSETH:

**PREMISES**

That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and

demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord,

for the term hereinafter specified, the following described premises:

That certain store building, approximately __160__ feet in width by __142__

feet in depth, together with xxxxxxxxxx_____

and the land on which the same shall stand (hereinafter collectively called "demised

premises"), which store building and related improvements are to be constructed by

Landlord according to plans and specifications to be approved by the parties as herein

provided, and shall be in the location and of the dimensions as outlined in red on the

Plot Plan __prepared by Peacock & Lewis, Architects Incorporated,__

__Palm Beach, Florida, dated July 28, 1971.__

_____

attached hereto marked Exhibit "A" and by this reference made a part hereof.

The demised premises are located in a shopping center development (shown in

detail on Exhibit "A"), known as __Jensen Beach Plaza__

(hereinafter called "shopping center"), located __at the N. W. corner of__

__North Savannah Road and Commercial Street__

in the city_____ County of __Martin__,

State of __Florida__, the legal description of the shopping center being

as follows:

See Exhibit "B" attached hereto and by

⑦

THIS LEASE, made this ___25ᵗʰ___ day of ___October___ 22¹⁶³⁰, 19_71_,

between ___W. G. LASSITER, JR., unmarried,___

_____ (hereinafter called "Landlord")

and ___WINN-DIXIE STORES, INC., a Florida corporation,___

_____

(hereinafter called "Tenant"); ___

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires,

singular or plural, and the heirs, legal representatives, successors and assigns of the respective

parties;

### WITNESSETH:

'REMISES

That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and

demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord,

for the term hereinafter specified, the following described premises:

That certain store building, approximately ___160___ feet in width by ___142___

feet in depth, together with ___

and the land on which the same shall stand (hereinafter collectively called "demised

premises"), which store building and related improvements are to be constructed by

Landlord according to plans and specifications to be approved by the parties as herein

provided, and shall be in the location and of the dimensions as outlined in red on the

Plot Plan ___prepared by Peacock & Lewis, Architects Incorporated,___

___Palm Beach, Florida, dated July 28, 1971.___

attached hereto marked Exhibit "A", and by this reference made a part hereof.

The demised premises are located in a shopping center development (shown in

detail on Exhibit "A"), known as ___Jensen Beach Plaza___

(hereinafter called "shopping center"), located ___at the N. W. corner of___
___North Savannah Road and Commercial Street___

in the City ___ County of ___Martin___,

State of ___Florida___, the legal description of the shopping center being

as follows:

See Exhibit "B" attached hereto and by

**TERM**

FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens said prem-

ises for the transaction of its business as hereinafter provided for an initial term of _____

_____ twenty (20) _____ years from said commencement date. The parties
agree to execute a supplemental agreement fixing the commencement date when the same shall
have been determined as herein provided.

This lease is granted and accepted upon the foregoing and upon the following terms, cove-
nants, conditions and stipulations:

ENTAL

1.  The Tenant agrees to pay to the Landlord as a minimum
guaranteed rental for the demised premises during the first five
(5) years of the term of this lease the sum of Fifty-four Thousand
Five Hundred Twenty-eight and no/100 Dollars ($54,528.00) per
annum and during the succeeding fifteen (15) years of the term
of this lease, and any extensions thereafter, the sum of Fifty-six
Thousand Eight Hundred and no/100 Dollars ($56,800.00) per annum.
The minimum guaranteed rental shall be paid in twelve (12) equal
monthly installments of Four Thousand Five Hundred Forty-four and
no/100 Dollars ($4,544.00) during the first five (5) years of the
term of this lease, and Four Thousand Seven Hundred Thirty-three
and 34/100 Dollars ($4,733.34) during the succeeding fifteen (15)
years of the term of this lease and any extensions thereafter,
which installments shall be due and payable in advance on the first
day of each and every calendar month of the lease term, and any
extensions thereafter.

In addition, the Tenant agrees to pay to the Landlord a per-
centage rental equal to amount, if any, by which the one percent
(1%) of Tenant's gross sales made from the demised premises in
each fiscal year ending June 30th, during the first five (5) years
of the term of this lease exceeds Fifty-four Thousand Five Hundred
Twenty-eight and no/100 Dollars ($54,528.00), and during the
succeeding fifteen (15) years of the term of this lease, and any
extensions tHereafter, exceeds Fifty-six Thousand Eight Hundred
and no/100 Dollars ($56,800.00).

-2-

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the lease-hold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

**DEFINITION OF "GROSS SALES"**

1a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) accommodation sales, such as sales of postage stamps, government bonds or savings stamps or similar items; (5) returns of merchandise to suppliers or manufacturers; (6) net amount of discounts allowed to any customer, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (7) merchandise or other things of value issued in redemption of trading stamps or as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

**RECORD OF SALES**

1b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

**USE**

2. The demised premises may be used for a retail food store, commonly referred to as a super-market, dealing primarily in, but not limited to foods and food products, or for the conduct of any general mercantile business; provided, however, except as a supermarket, the demised premises shall not be used, nor assigned or subleased under the terms of Paragraph 26 herein, for any use or business which shall be in direct competition with the primary use or business engaged in by any other then tenant in the shopping center to whom Landlord has granted a right of exclusive use, of which Tenant has been given proper notice, as herein provided, and provided further, the demised premises shall not be used for *
Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of said premises, as such shall relate to the cleanliness and use of said premises and the character and manner of operation of the business conducted in or at said premises.

*the sale of prescription drugs or drugs required to be dispensed by a licensed pharmacist.

-3-

walks, streets, entranceways, malls, parking areas, service areas, driveways and related improvements, and improvements (excluding buildings) being something hereinafter referred to as "common areas." The Landlord, at its sole cost and expense, shall grade and surface with top quality materials all paved portions of the common areas (including parking area), and shall provide proper and adequate water drainage and lighting system and operations therefor and shall operate and maintain the same in good repair and usable condition for use by the patrons of the shopping center and the tenants and their employees during the term of this lease and any extensions thereof. The arrangement and location of all store buildings and common areas (including parking area) within the shopping center shall at all times during the term of this lease, or any extensions thereof, be maintained as shown on Exhibit "A" and shall not be changed without the written consent of the Tenant. If not shown on Exhibit "A", Tenant expressly reserves the right to approve the finish elevations of all store buildings and common areas (including parking and service areas) within the shopping center which are to be constructed concurrently with Tenant's store building.

Notwithstanding the foregoing, it is understood that Landlord intends initially to construct only Tenant's store building and the store buildings required under Articles 5 and 6 herein, together with all the common areas of the shopping center, including without limitation, all the sidewalks, drives, entranceways, service areas and parking areas shown on Exhibit "A". Landlord reserves the right, but shall not be required, to construct additional buildings within the areas reserved therefor, with the depth and interior dimensioning of same to be at Landlord's discretion, provided, however, such additional buildings shall be of like structural and architectural quality as the building for Tenant and all such buildings shall be set back from the streets adjoining the shopping center or the property lines thereof distant at least within the sidewalk lines or building outlines as shown on Exhibit "A"; and provided further, however, throughout the shopping center in conjunction with the construction of any additional buildings, at least the ratio of automobile parking area to gross building area as hereinafter required shall be maintained at all times. Landlord agrees that Tenant shall have uninterrupted use and enjoyment of the demised premises and the common areas during any such additional constructio without unreasonable interference therewith by reason of such construction work.

Concurrently with the above construction, Landlord agrees at its sole cost and expense, to construct the store building for occupancy by Tenant in accordance with the plans and specifications to be approved by both Landlord and Tenant. Plans and specifications shall be approved when initialed by both parties, and when initialed shall constitute a part of this lease. Said plans and specifications shall provide for a completed store building, commonly referred to as a "lock and key job," and shall include, but without limitation the following: automatic doors, interior partitions, all plumbing and plumbing fixtures, drains, electrical wiring, lighting fixtures to Tenant's requirements, connection of Tenant's trade fixtures to plumbing and electrical outlets, air conditioning and heating systems and equipment including insulated ducts, music and P. A. systems (except microphones and amplifiers to be furnished by Tenant), storm shutters, two-inch bonded to concrete terrazzo floors in sales area and vinyl asbestos, quarry tile and ceramic tile floor coverings as specified in other areas (color at Tenant's option) and connections to all utilities.   Tenant at its own expense shall furnish its own trade fixtures.

**COMPLETION DATE**

4. Landlord covenants and agrees that the construction of the shopping center shall begin not later than _____January 1, 1972_____ and shall be completed not later than _____August 1, 1972_____; and if the same shall not be begun or completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and terminate this lease or may extend the Landlord additional time for the beginning or completion of construction; provided, however, that if after the beginning of construction the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than _____December 1, 1972_____, said option to terminate shall not arise. If pursuant to this paragraph Tenant shall cancel or terminate this lease, Landlord agrees for a period of three (3) years after such cancellation or termination not to permit or consent to the use as a supermarket of the demised premises, or any portion of the shopping center, or any enlargement thereof.

-4-

**SUBROGA-**
**MENT DATE**   5. The Tenant shall open its store for business within thirty (30) days following performance of the following:

> (a) Tenant's store building and other improvements constructed on the demised premises shall have been delivered to Tenant completed in accordance with the plans and specifications;

> (b) Construction of all of the common areas (including parking area hereinafter specifically required) shall have been completed substantially as shown on Exhibit "A";

> (c) Construction of at least ____110____ lineal feet of store frontage and ___12,000___ sq. ft. of total building area (excluding Tenant's store building) shall have been completed as shown on Exhibit "A" and said area leased to other tenants and opened for business or readied for opening for business simultaneously with Tenant; and

> (d) The stores to be operated by each of the following tenants shall have been completed and opened for business or been readied for opening for business simultaneously with Tenant:

Drug Store<br>Eagle Family Discount Store

> (e) 5,000 sq. ft. of additional building space for occupancy by retail and service shops shall have been constructed and under roof, but floors, interior partitions, store fronts and interior finishes thereof need not be completed until any specific space is occupied, and none of such space shall be required to be leased to tenants or opened for business.

In the event that all the above requirements shall not have been met on or prior to December 1, 1972 , the Tenant at its sole option may cancel and terminate this lease.

Rent shall begin to accrue hereunder upon the date the Tenant opens its store for business, or upon the expiration of thirty (30) days following the performance of all the above requirements, whichever date shall sooner occur. No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications.

**OFFICES**
**AND**
**THEATRES**   Landlord expressly agrees that no motion picture or legitimate theatre, nor office building, shall be permitted within the shopping center, or any enlargement thereof, without the prior written consent of Tenant.

**OTHER**
**TENANTS**   6. As a condition and inducement to Tenant's entering into this lease, Landlord represents and warrants that it has entered into firm commitments for leases with the tenants listed below for the terms and for the amount of floor space indicated:

| Name | Minimum Term Years | Minimum Floor Area (sq. ft.) |
|---|---|---|
| Drug Store | 10 | 6,000 ok |
| Eagle Family Discount Store | 15 | 6,000 ok |

Landlord further warrants and represents that such tenants shall occupy the space in the shopping center in the locations indicated on Exhibit "A" and in the minimum amounts set opposite their respective names above; and Landlord agrees, on demand, to furnish evidence satisfactory to Tenant, prior to and as a further condition to the establishment of the commencement date of this lease, that Landlord has entered into non-cancellable leases, except for default, with such tenants.

-5-

**PARKING
AND
COMMON
AREAS**

7. Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees, a non exclusive right at all times to use, free of charge, during the term of this lease, or any extensions thereof, all the common area, including parking area, as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with others similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks.

Landlord shall at all times during the term of this lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A", and of sufficient area to provide:

   (a) a minimum ratio of at least ____2.75____ square feet of automobile parking area to each square foot of gross building area (including additional floor levels) in the shopping center, and

   (b) facilities for convenient parking of at least ___160___ automobiles;

and in event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details, the Tenant at its option shall have the right to terminate this lease, provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord curing the default within thirty (30) days after receipt of such notice of termination. All of the common areas (including parking area) shall be adequately lighted by Landlord at its expense during customary food store shopping hours, and Landlord further agrees that no signboards or other construction shall be erected in any of the common areas (including the parking area) shown on Exhibit "A" or so as to obstruct the view of the demised premises from the adjoining public streets.

The parcel marked "Not Included" on Exhibit "A" at the N. W. corner of Commercial Street and North Savannah Road may be used only for the operation of a service station, a bank or savings and loan association, a bar and/or liquor store, a restaurant or for any drive-in type retail or service business, provided any building on such parcel shall not exceed one story in height or 3500 sq. ft. in area. Pending such use, this area shall be maintained as paved parking area or as a grassed and landscaped area and kept free of weeds and underbrush.

**SERVICE
AREA**

8. Landlord further agrees to provide for the exclusive use of the Tenant at its grocery service entrances a parking space for two large trailer trucks for continuous use and further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such space as may be reasonably needed by Tenant for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

**UTILITIES**

9. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities used by Tenant on the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities. (See also Article 36 hereinafter)

**TENANT'S
REPAIRS**

10. Upon completion of construction by Landlord and acceptance of the demised premises by Tenant, Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of the Landlord or which are made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear. Within such repair responsibility of Tenant shall be included: the air conditioning and heating equipment (but not duct work which shall be the responsibility of Landlord) and the terrazzo flooring, provided, however, Landlord shall accord to Tenant the benefit of any warranties extended by the manufacturer or installers of such equipment and flooring; the interior exposed plumbing including any stoppages thereof, except such as may be caused by structural defects or faulty construction; and the replacement of any plate glass damaged or broken, except that covered by Landlord's fire and extended coverage insurance.

-6-

Tenant may construct and build or install in said premises any and all racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

INDEMNIFI-
CATION

14. Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises.

Likewise, Landlord shall indemnify and save harmless the Tenant from any claim or loss by reason of an accident or damage to any person or property happening on or about all common areas (including, without limitation, parking area, sidewalks, ramps and service areas) of the shopping center, and Landlord further agrees to carry, at its expense, public liability insurance coverage on all common areas (including, without limitation, parking area, sidewalks, ramps and service areas) of the shopping center, with a contractual liability endorsement on the policy, in a company qualified to transact business in the state in which the demised premises are located, stipulating limits of liability of not less than $200,000 for an accident affecting any one person; and not less than $500,000 for an accident affecting more than one person; and $50,000 property damage. Certificate of such coverage from the insuror providing 30 days' notice to Tenant prior to cancellation or termination shall be furnished to Tenant.

CLEANLINESS

15. Tenant shall at all times keep the interior of the store building in a reasonably neat and orderly condition and shall keep the entryways and delivery areas adjoining the building reasonably clean and free from rubbish and dirt. Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon, and Tenant further agrees to permit the Landlord or its agent at all reasonable times to enter upon the premises for making repairs and for examining or showing the same to prospective purchasers.

FIRE

16. In the event that Tenant's building shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty, then Tenant may elect within thirty (30) days after such damage, to terminate this lease by giving to the Landlord a written notice of termination, and thereupon both parties shall stand released of and from all further liability under this lease. If Tenant's building shall thereby suffer damage to any extent less than 75% of the value thereof, or if Tenant does not elect to terminate as aforesaid, then the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored. If at any time during the term

-8-

of this lease or any extension is thereof any of the buildings in the shopping center, exclusive of Tenant's store building, are damaged by fire or by the elements or otherwise, Landlord shall immediately commence and diligently prosecute to completion repair of all such damage and shall restore said improvements to their condition prior to such damage.

Landlord agrees to carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord or Tenant and on all other buildings within the shopping center in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees.

**QUIET ENJOYMENT**

17. The Landlord covenants, warrants and represents that upon commencement of the lease term, the shopping center, including the demised premises, will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the damised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

The Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a general mercantile business or use of common areas for parking purposes, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting Tenant from conducting a general mercantile business or using the common areas (including parking area) in conjunction therewith, the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

**TAXES AND LIENS**

18. All taxes, assessments and charges on land or improvements and obligations secured by mortgage or other lien upon the demised premises or the shopping center shall be promptly paid by the Landlord when due. The Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at six per cent (6%) per annum.

**CONDEM-NATION**

19. If any part of the demised premises or more than twenty per cent (20%) of the buildings, exclusive of Tenant's building, within the shopping center, be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease as aforesaid, the Landlord shall immediately commence and diligently prosecute to completion the repair and restoration of the improvements, including Tenant's store building, within the shopping center to a condition comparable to their condition at the time of taking and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances.

-9-