KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York  10178
James S. Carr ( JC-1603)
Robert L. LeHane ( RL-9422)
Tel:  (212) 808-7800
Fax: (212) 808-7897

    -and-

HELD & ISRAEL
1301 Riverplace Blvd., Ste. 1916
Jacksonville, FL  32207-9024
Tel: (904) 398-7036
Fax:  (904) 398-4283

Attorneys for INEOS Olefins & Polymers USA

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**MOTION TO ALLOW THE**
**FILING OF A LATE PROOF OF CLAIM**

      INEOS Olefins & Polymers USA ("INEOS"), by and through its attorneys, Kelley Drye & Warren LLP and Held & Israel, hereby moves this Court, pursuant to Bankruptcy Rules 3003(c)(3) and 9006(b)(1) and section 105 of the Bankruptcy Code, for entry of an order allowing INEOS to file a late proof of claim and deeming its proof of claim timely filed (the "Motion").  In support of the Motion, INEOS states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for relief request in the Motion are section 105 of the Bankruptcy Code and Bankruptcy Rules 3003(c)(3) and 9006(b)(1).

**BACKGROUND**

3.      On or about February 21, 2005 (the "Petition Date"), the above captioned debtors, (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      INEOS is a leading global manufacturer of specialty and intermediate chemicals, with a production network spanning 50 manufacturing facilities in 15 countries throughout the world. INEOS provided Superbrand, a former subsidiary of, and now a brand of Winn-Dixie Stores, Inc. ("Winn-Dixie") with resin for the production of milk bottles. *See* Affidavit of Todd Hinz, sworn to on October 9, 2006, filed in support of INEOS' Motion (the "Hinz Affidavit") at ¶¶ 3-4.

6.      Responding to a December 16, 2004 Order, BP Solvay Polyethylene North America ("BP Solvay"), a predecessor to INEOS, delivered three shipments to Winn-Dixie: January 12 and 28, 2005, and February 7, 2005, with BP Solvay invoicing Winn-Dixie on those same dates. The January 12 invoice was in the amount of $31,487.40, the January 28th invoice was in the amount of $23,952.60, and the February 7th invoice was in the amount of

$31,059.00.[1]  Winn-Dixie had an account credit of $21,662.20.  As such Winn-Dixie owed $64,836.80 to BP Solvay.  Hinz Affidavit, ¶ 6.

7. Pursuant to the terms of each invoice, payment from Winn-Dixie was due in 30 days from the invoice date.  In connection with the January 12th invoice, Winn-Dixie sent a check dated February 11, 2005 in the amount of $31,487.40, but stopped payment on the check.  Winn-Dixie has not made any payments on the other invoices.  Winn-Dixie's account remains unpaid in the amount of $64,836.80.  Hinz Affidavit, ¶ 7.

8. Pursuant to an Order dated April 28, 2005, this Court set the deadline for filing proofs of claim against the Debtors as August 1, 2005 (the "Bar Date").[2]

9. For the reasons set forth below BP Solvay did not file a proof of claim by the Bar Date.

10. In July and August 2005, BP Solvay underwent a major transition as BP Amoco Chemical Co. ("BP") purchased a 100 percent share in the joint venture, and BP Solvay became a subsidiary of BP, operating as BP Solvay Polymers, Inc. ("BP Solvay Polymers").  This transition included a merger of credit departments, a change of offices and a change of responsibilities for many credit personnel.  Hinz Affidavit, ¶ 10.  Subsequently, another transition occurred when BP spun off BP Solvay Polymers into a separate entity called Innovene LLC ("Innovene").  Again, offices were changed, responsibilities shifted, and a number of employees in the credit department were either terminated and/or resigned.  Hinz Affidavit, ¶ 11.  Finally, a third major transition occurred in December 2005 when INEOS purchased Innovene for $9 billion.  With the transition came another move of offices including the relocation of the corporate headquarters from Illinois to Texas, and shifts in responsibilities and personnel.  Hinz

---

[1] Copies of the invoices are attached as Exhibit A to the Hinz Affidavit.

[2] Docket Sheet Index # 932.

3

Affidavit, ¶ 12.

11.     These transitions greatly impacted the performance of Credit Manager Phillip Crupper.  Crupper was demoted from credit manager to credit analyst after the formation of BP Solvay Polymers.  Hinz Affidavit, ¶ 10.  Throughout the Winn-Dixie bankruptcy, Crupper was responsible for monitoring the Winn-Dixie account.  While Crupper noted the bankruptcy filing, he failed to follow up with in-house counsel regarding the outstanding amounts owed, and failed to follow up on the impact Winn-Dixie's bankruptcy filing would have on INEOS' ability to collect the outstanding amount due and owing to INEOS.  Hinz Affidavit, ¶¶ 9-10.  Only after Crupper resigned in April 2006, did INEOS realize it had not filed a proof of claim in the Winn-Dixie bankruptcy proceeding.  Hinz Affidavit, ¶¶ 13-14.

## RELIEF REQUESTED

12.     By the Motion, INEOS seeks entry of an order approving INEOS' Motion to allow the filing of a late proof of claim in the amount of $64,836.80 against Winn-Dixie.

## ARGUMENT

13.     Bankruptcy Rule 3003(c)(3) provides that the "court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."  In a chapter 11 case, Bankruptcy Rule 3003(c)(3) must be read in conjunction with Bankruptcy Rule 9006(b)(1), which provides that, when a party files a motion for an extension of time after the expiration of the originally designated time period, the party seeking the extension of the bar date must show that its failure to act within the prescribed time period was the result of "excusable neglect." *In re Pappalardo,* 210 B.R. 634 (Bankr. S.D. Fla. 1997).  The determination of what constitutes "excusable neglect" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship., et al.*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498 (1993).

4

14. The Court should grant an extension of time for INEOS to file its proof of claim because its failure to do so prior the Bar Date constitutes "excusable neglect" under Bankruptcy Rule 9006(b)(1). The circumstances of this matter are precisely the type contemplated by the United States Supreme Court's holding in *Pioneer*, which liberally interpreted the "excusable neglect" standard of Bankruptcy Rule 9006(b)(1). The *Pioneer* decision provides a significant change in the law by liberalizing the grounds on which an extension to a claims bar date should be allowed. *In re Sacred Heart Hosp. of Norristown,* 186 B.R. 891, 895 (Bankr. E.D. Pa. 1995). Accordingly, *Pioneer* and its progeny provide this Court with ample authority to grant this Motion.

15. In *Pioneer*, the Supreme Court found that a claimant's attorney's inadvertent failure to file a proof of claim was excusable neglect under Bankruptcy Rule 9006(b)(1). While the debtor in *Pioneer* sought an exacting enforcement of the claims bar date and argued that any showing of fault on the part of the late-file would defeat a claim for "excusable neglect," the Supreme Court disagreed and held that Congress clearly contemplated "excusable neglect" under Bankruptcy Rule 9006(b)(1) to be a flexible and liberal standard which "encompasses both simple faultless omissions to act and, more commonly, omissions caused by carelessness." *Id*. at 388-389.

16. The Supreme Court further stated that if Bankruptcy Rule 9006(b)(1) was read inflexibly, it would put the word "neglect" at odds with its most natural meaning and would serve to exclude every instance of inadvertent or negligent omission. *Id*. at 395-396. The Supreme Court noted that allowing this exception to the bar of late claims is in keeping with the purpose of a chapter 11 reorganization, which has as its goal "the aim of rehabilitating the debtor and avoiding forfeitures of creditors." *Id.* at 389. The Supreme Court continued "[i]n overseeing this … process, the bankruptcy courts are necessarily entrusted with broad equitable power to

5

balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization." *Id.* The Supreme Court identified four equitable factors that must be considered in determining whether "excusable neglect" exists to support the extension of the claims bar date: (1) whether the extension will prejudice the debtor; (2) the length of the delay; (3) the reason for the delay; and (4) the good faith of the claimant. *See also, In re Harrell*, 325 B.R. 643, 649 (Bankr. M.D. Fla. 2005); *In re Norris,* 228 B.R. 27, 32 (Bankr. M.D. Fla. 1998).

### I.     Prejudice to Winn-Dixie

17.     Of the four equitable factors the court must consider, prejudice to the debtor is paramount. *In re Eagle Bus Mfg., Inc.,* 62 F.3d 730, 737 (5th Cir. 1995), Here, there is no danger of prejudice to the Debtors. The Court just recently approved the Disclosure Statement, and the Debtors' Plan of Reorganization has yet to be confirmed. The Debtors continue to file objections to claims, and no distributions to creditors have been made as of this time. Winn-Dixie stopping payment on an invoice reveals Winn-Dixie was aware of INEOS' potential claims well before the Bar Date. Therefore, the relief sought in the Motion will not prejudice Winn-Dixie in any way.

### II.    Length of Delay

18.     Excusable neglect has been found in cases involving delays of up to two years after the bar date, so long as the debtor is not significantly prejudiced by the delay. *See e.g. In re Beltrami Enterprises, Inc.,* 178 B.R. 389, 392 (Bankr. M.D.Pa. 1994) (filing of claim two years after bar date, even where there was no dispute as to propriety of notice, excusable neglect because no prejudice to debtors identified); *In re Byrne,* 162 B.R. 816, 819 (Bank. W.D.Wis. 1993) (filing claim one year two months and twenty days after bar date excusable neglect); *In re Earth Rock, Inc.,* 153 B.R. 61, 63-64 (Bankr. D.Idaho 1993) (filing claim eight months after bar date allowed, even where former attorney deliberately refrained from timely

filing claim, because no "substantial showing" of prejudice to debtor) *Eagle Bus Mfg.* 62 F.3d at 739 (six to eight month delay excusable). Here, INEOS is seeking to file its claim one year after the Bar Date. Taking account of the present stage of the Debtors' proceedings, and the length of delay found not to have prejudiced debtors in other cases, the Court should allow INEOS' claim at this time as timely filed.

### III.     Reason for Delay

19.     Generally, a request for an extension of time to file a proof of claim will be denied if the claimant deliberately refrains from timely filing to gain some actual or perceived tactical advantage. *See Sacred Heart Hosp. of Norristown,* 186 B.R. at 896 (citing *In re Bicoastal Corp.,* 176 B.R. 966, 971-72 (Bankr. M.D.Fla. 1994), *In re Mother Hubbard, Inc.,* 152 B.R. 189, 193-94 (Bankr. W.D. Mich. 1993); *but see Earth Rock,* 153 B.R. at 64 (excusable neglect found even when former counsel deliberately refrained from filing proof of claim where no there was substantial showing of prejudice to debtor). INEOS did not deliberately refrain from filing its proof of claim to gain a tactical advantage. The delay was caused by a combination of factors including three changes in the control of the company, changes in responsibilities of credit personnel, changes of offices, and a failure of the responsible credit manager to monitor the bankruptcy proceedings, and/or report necessary information to his superiors.

### IV.     Good Faith

20.     Finally, the delay was in no way motivated by INEOS' bad faith or desire to gain an unfair advantage. Neither BP Solvay nor BP Solvay Polymers received notice of the Bar Date. The responsible credit manager, Crupper, failed to follow-up on the Winn-Dixie bankruptcy proceeding, was subsequently demoted and then left the employment of INEOS. In fact, his replacement discovered the unpaid amounts, in a review of stale accounts receivable,

7

and immediately brought it to the attention of Controller Todd Hinz and in-house attorney Charles Saunders. Upon discovering its claim against Winn-Dixie, INEOS has directly proceeded to petitioning this Court for its allowance without any further delay. Hinz Affidavit, ¶¶ 13-14.

## **CONCLUSION**

21. For all the reasons set forth above, INEOS should be permitted to file a late proof of claim in the amount of $64,836.80, and such proof of claim should be deemed timely filed.

22. No request for the relief sought in this Motion has been made in this or any other court.

WHEREFORE, INEOS respectfully requests that the Court enter an Order (i) allowing INEOS to file a late proof of claim in the amount of $64,836.80; (ii) deeming such proof of claim timely filed, and (iii) granting such other and further relief as is just and proper.

Dated: New York, New York
October 11, 2006

KELLEY DRYE & WARREN LLP

By:/s/ *Robert L. LeHane\**
   James S. Carr (JC-603)
   Robert L. LeHane (RL-9422)
101 Park Avenue
New York, New York 10178
Phone: (212) 808-7800
Fax: (212) 808-7897

-and -

HELD & ISRAEL
1301 Riverplace Blvd., Ste. 1916
Jacksonville, FL 32207-9024
Phone: (904) 398-7036
Fax: (904) 398-4283

Attorneys for INEOS Olefins & Polymers USA

\* *Admitted pro hac vice in this Court.*