B210
(12/04)

## UNITED STATES BANKRUPTCY COURT
### Middle District of Florida

In re: WINN DIXIE STORES, INC.,

Case No. 05-03817
(Jointly Administered)
Court ID (Court use only) _____

## NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives notice pursuant to Rule 3001(e)(2), Fed.R.Bankr.P., of the transfer, other than for security, of the claim referenced in this notice.

| | |
|---|---|
| SPCP GROUP, L.L.C., as agent for Silver Point Capital Fund, L.P. and Silver Point Capital Offshore Fund, LTD<br>Name of Transferee | Liquidity Solutions, Inc.<br><br>Name of Transferor |
| Name and Address where notices to transferee should be sent<br>**SPCP GROUP, L.L.C., as agent for Silver Point Capital Fund, L.P. and Silver Point Capital Offshore Fund, LTD<br>Two Greenwich Plaza, 1ˢᵗ Floor<br>Greenwich, CT 0683<br>Attn: Brian A. Jarmain** | Court Record Address of the transferor<br>(Court Use Only) |
| Last Four Digits of Acct. #: | Last Four Digits of Acct. #: |
| **Transfer Amount:  $400,000.00** | |
| Name and Address where transferee payments should be sent (if different from above) | Name and Current Address of transferor<br><br>**Liquidity Solutions, Inc.<br>One University Plaza<br>Suite 312<br>Hackensack, NJ 07601<br><br>Bowdoin Square LLC<br>c/o Bradley Arant Rose & White LLP<br>One Federal Place<br>1819 Fifth Avenue North<br>Birmingham, AL 35203-2120** |
| Phone: 203-542-4126<br>203-542-4255 | Phone: |
| Last Four Digits of Acct #: | Last Four Digits of Acct #: |
| Court Claim # (if known): 9939, 9940<br>Date Claim Filed: 7/29/05 | |

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _Brian A. Jarmain_                                      Date: **October ____, 2006**
     **Brian A. Jarmain**

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

### DEADLINE TO OBJECT TO TRANSFER

The transferor of claim named above is advised that this Notice of transfer of Claim Other Than for Security has been filed in the clerk's office of this court as evidence of the transfer. Objections must be filed with the court within twenty (20) days of the mailing of this notice. If no objection is timely received by the court, the transferee will be substituted as the original claimant without further order of the court.

Date:_____        _____
                                                    CLERK OF THE COURT

## ASSIGNMENT OF CLAIM

This ASSIGNMENT OF CLAIM AGREEMENT (This "Agreement"), dated July 20, 2006 is by and between LIQUIDITY SOLUTIONS, INC. ("Assignor") and SPCP Group, LLC, with offices at Two Greenwich Plaza, 1st Floor, Greenwich, CT ("Assignee").

In consideration of an amount equal to the product of (i) the Purchased Claim Amount (as identified on Annex I hereto) and (ii) that certain percentage (the "Purchase Rate") set forth in Section 1 of that certain Trade Claim Trade Confirmation (the "Trade Confirmation") dated July 19, 2006 herewith, between Assignor and Assignee (the "Purchase Price"), Assignor hereby unconditionally and irrevocably sells, transfers and assigns to Assignee, except as expressly set forth herein, all of its right, title and interest in and to (i) the claims of Assignor identified in Annex I hereto (the "Claim"), against Winn-Dixie Stores, Inc. and Winn-Dixie Montgomery, Inc. (together, the "Debtor"), including all of Assignor's right to receive principal, interest, fees, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing, and all of Assignor's rights and benefits arising under or related to any of the foregoing, including, without limitation, Assignor's right to vote and to receive all cash, securities, instruments and other property which might be issued or distributed to Assignor in connection with the Debtor's bankruptcy case in the United States Bankruptcy Court for the Middle District of Florida ("Bankruptcy Court"), administered under case no. 05-3817 ("Bankruptcy Case") or any other court with jurisdiction over the Bankruptcy Case, and (ii) those certain Assignment of Claim and/or Transfer of Claim agreements, which are attached hereto as Exhibit "A," "B," "C," "D" and "E" (each a "Prior Owner Agreement," and collectively, the "Prior Owner Agreements"), between Assignor and the respective prior owners, identified on Annex I (the "Prior Owners") of each of the claims comprising the Claim.

Assignee expressly assumes all of Assignor's obligations in, to and under the Prior Owner Agreements, including without limitation, any obligation Assignor may have under any of the Prior Owner Agreements to purchase all or a portion of the Claim in excess of the Purchased Claim Amount ("Excess Claim"). If Assignee is obligated, pursuant to any of the Prior Owner Agreements, to purchase Excess Claim, then, in addition to the payment Assignee is obligated to make to the relevant Prior Owners pursuant to the relevant Prior Owner Agreement, Assignee is hereby obligated to pay Assignor, in immediate available funds, an amount equal to the product of: (i) the difference between (a) the Purchase Rate, and (b) the purchase rate set forth in the relevant Prior Owner Agreement, and (ii) such Excess Claim (the "Excess Purchase Price"). Assignee hereby agrees to pay the Excess Purchase Price to the Assignor no later than the date Assignee is required to pay the Prior Owner for such Excess Claim pursuant to the Prior Owner Agreements.

If a Prior Owner is obligated to refund all or a portion of the purchase price paid by Assignor to such Prior Owner with respect to all or a portion of the Claim, and Assignee demands such amount from such Prior Owner, then ten (10) business day after Assignor's receipt of a copy of Assignee's demand to such Prior Owner, Assignor shall pay to the Assignee the product of: (i) the difference between (a) the Purchase Rate, and (b) the purchase rate set forth in the relevant Prior Owner Agreement, and (ii) the portion of the principal amount of the Claim for which such Prior Owner, pursuant to the relevant Prior Owner Agreement, is obligated to return

the purchase price; provided, however, that; Assignor will not be obligated to pay such amount to the Assignee if the Assignee agrees with the Debtor to compromise, settle or otherwise reduce the Claim, in whole or in part, without the written consent of Assignor (such consent shall not be unreasonably withheld). The provisions of this paragraph shall constitute (x) Assignee's sole remedy against Assignor and (y) Assignor's sole liability to Assignee hereunder.

Assignor shall only be required to disclose to Assignee the purchase rate set forth in a Prior Owner Agreement upon receipt of notice from the Assignee that Assignee is either (i) obligated to purchase Excess Claim or (ii) entitled to a refund of the purchase price paid to a Prior Owner.

Assignor represents, warrants and covenants the following: it is duly authorized and empowered to execute and perform this Agreement; this Agreement constitutes the valid, legal and binding agreement of Assignor, enforceable against Assignor in accordance with its terms; that no payment has been received by Assignor in full or partial satisfaction of the Claim; that Assignor has not previously assigned or sold the Claim or its obligations to any third party, in whole or in part; Assignor is not an insider within the meaning of 11 U.S.C. § 101(31) and is not a member of any creditors' committee appointed in the Proceedings; Assignor has agreed to the consideration herein based on its own independent investigation and credit determination and has not relied on any representations made by Assignee, except as expressly set forth herein.

Assignee represents, warrants and covenants that: it is duly authorized and empowered to execute and perform this Agreement; this Agreement constitutes the valid, legal and binding agreement of Assignee, enforceable against Assignee in accordance with its terms; Assignee is purchasing the Claim and assuming the obligations thereunder based on its own independent investigation and credit determination and has not relied on any representations made by Assignor, except as expressly set forth herein. Assignor and Assignee are each aware that the consideration being paid by Assignee hereunder may differ from the amount ultimately distributed with respect to the Claim pursuant to any plan of reorganization or other outcome of the Proceeding which is ultimately consummated. Assignor and Assignee are each aware that information which may be pertinent to their decision to transfer the Claim is available to them and can be obtained from the Court's files. Assignee agrees to indemnify Assignor from all losses, damages and/or liabilities, including reasonable attorneys' fees and expenses, which result from Assignor's breach of any representation, warranty, covenant or agreement set forth herein.

To the extent provided in the Prior Owner Agreements, Assignor hereby irrevocably appoints the Assignee as its true and lawful attorney-in-fact solely with respect to the enforcement of the Claim, and authorizes the Assignee to act in Assignor's name, to demand, sue for, compromise and recover all money which now are, or may hereafter become due and payable for, or on account the Claim herein assigned; and, grants unto the Assignee full authority to do all things necessary to enforce all the rights, title and interest in and to the Claim and Assignee's rights thereunder pursuant to this Assignment; and, Assignor agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Assignee.

Assignor agrees that in the event Assignor receives any payment or distribution with respect to the Claim after the date hereof, Assignor agrees to accept and hold the same for the sole benefit of Assignee. Assignor agrees to deliver the same to Assignee, upon demand of Assignee, in the same form received, with the endorsement, without recourse, of Assignor when necessary or appropriate.

All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement. This Agreement shall inure to the benefit of, be binding upon and enforceable by the parties hereto and their respective successors and assigns. Assignee may transfer its rights hereunder provided that Assignee's assumption of Assignor's obligations under the Prior Owner Agreement shall remain in full force and effect notwithstanding any such assignment. THIS AGREEMENT SHALL BE CONSTRUED AND THE OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO CONFLICTS OF LAW. ANY ACTON ARISING UNDER OR RELATING TO THIS ASSIGNMENT OF CLAM MUST BE BROUGHT IN FEDERAL COURT LOCATED IN THE SATE OF NEW YORK OR NEW JERSEY AND ASSIGNEE CONSENTS TO AND CONFERS PERSONAL JURISDICTION OVER ASSIGNOR BY SUCH COURT OR COURTS AND AGREES THAT SERVICE OF PROCESS MAY BE MADE UPON ASSIGNOR BY MAILING A COPY OF SAID PROCESS TO ASSIGNOR AT THE ADDRESS SET FORTH IN THE FIRST PARAGRAPH OF THIS ASSIGNMENT OF CLAIM, AND IN ANY ACTION HEREUNDER, ASSIGNOR WAIVES ANY RIGHT TO DEMAND A JURY TRIAL.

All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth above, or such other address as may be furnished hereafter by notice in writing.

This Agreement, together with any exhibits hereto, constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all prior agreements, understandings or representations pertaining to the subject matter hereof, whether oral or written. There are no warranties, representations or other agreements between the parties in connection with the subject matter hereof except as specifically and expressly set forth herein. This Agreement may be signed in counterparts, each of which shall be an original and all of which taken together shall constitute one agreement. Assignor hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and the Assignee herein as the valid assignee.

IN WITNESS WHEREOF, each of the undersigned has duly executed this Agreement by its duly authorized representative on the date first set forth above.

LIQUIDITY SOLUTIONS, INC.

By:
Name:
Title: Associate

SPCP Group, LLC

By:
Name:
Title:

Michael A. Gatto
Authorized Signatory

ANNEX I

| Prior Owner | Purchased Claim Amount |
|---|---|
| Bowdoin Square LLC | $400,000.00 ✓ |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |

B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor  Winn-Dixie Stores, Inc | Case Number  05-03817 | File Claim Form With |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U S C § 503.

| Name of Creditor (The person or other entity to whom the debtor owes  Bowdoin Square, LLC | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars |
|---|---|
| Name and address where notices should be sent (make correction as needed)  Bowdoin Square, LLC  c/o F Wendell Allen  Bradley Arant Rose & White LLP  1819 Fifth Ave North  Birmingham, AL 35203  Telephone number  (205) 521-8000 | ☐ Check box if you have never received any notices from the bankruptcy court in this case  ☒ Check box if the address differs from the address on the envelope sent to you by the court |

410856

DEBTOR  WINN - DIXIE STORES, INC
U S BANKRUPTCY COURT M D -FLORIDA
JOINTLY ADMINISTERED UNDER
CASE  05-03817 (3F1)
CHAPTER 11
CLAIM NO.: 9939

In Chapter 13 cases, file claims and attachments in duplicate
In Chapter 11 and 13 cases, serve additional copy of claim with attachments on attorney for debtor

| Account or other number by which creditor identifies debtor  N/A | Check here  If this claim ☐ replaces  ☐ amends a previously filed claim |
|---|---|

| 1  Basis for Claim  ☐ Goods sold  ☐ Services performed  ☐ Money loaned  ☐ Personal injury/wrongful death  ☐ Taxes  ☒ Other  Guaranty of non-residential real property lease | ☒ Retiree benefits as defined in 11 U S C § 1114(a)  ☐ Wages, salaries, and compensation (Fill out below)  Your SS# _____  Unpaid compensation for services performed  From _____ to _____  (date)    (date) |
|---|---|

| 2.  Date debt was incurred  November 25, 1987 | 3.  If court judgment, date obtained:  N/A |
|---|---|

4  Total Amount of Claim at Time Case Filed: $1,267,412 43
If all or part of your claim is secured or entitled to priority, also complete item 5 or 6 below
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

| 5  Secured Claim  ☐ Check this box if your claim is secured by collateral (including a right of setoff)  Brief Description of Collateral  ☐ Real Estate    ☐ Motor Vehicle  ☐ Other  Equipment and inventory  Value of Collateral  $ _____  Amount of arrearage and other charges at time case filed included in secured claim, if any  $ _____ | 6  Unsecured Priority Claim  ☐ Check this box if you have an unsecured priority claim  Amount entitled to priority $ _____  Specify the priority of the claim  ☐ Wages, salaries, or commissions (up to $4,650), * earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(3)  ☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(4)  ☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(6)  ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U S C § 507(a)(7)  ☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)  ☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)  * Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment |
|---|---|

| 7.  Credits  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim  8  Supporting Documents.  Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien  DO NOT SEND ORIGINAL DOCUMENTS.  If the documents are not available, explain.  If the documents are voluminous, attach a summary  9.  Date-Stamped Copy  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim | THIS SPACE IS FOR COURT USE ONLY  RECEIVED  JUL 29 PH 1: 20  U S BANKRUPTCY COURT  MIDDLE DISTRICT  OF FLORIDA  LOGAN & COMPANY, INC.  AS AGENT |
|---|---|

| Date  07/28/05 | Sign and print the name and title, if any of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)  _Wendell M.___  F Wendell Allen  Attorneys for Bowdoin Square, LLC |
|---|---|

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

B10 (Official Form 10) (4/01) (Reve

1

1/1352881 1

**In re Winn-Dixie Stores, Inc.**
**Case No. 05-03817**

Bowdoin Square, LLC ("Bowdoin Square") hereby files this proof of claim against Winn-Dixie Stores, Inc. (the "Debtor") in the amount of $1,267,412.43. David H. Head and Winn-Dixie Montgomery, Inc ("Winn-Dixie Montgomery") entered into to that certain 20-year lease dated November 25, 1987 (as supplemented on September 23, 1998) for non-residential real property located at 719 Highway 43 South, Saraland, Alabama 36571 (the "Lease"). David H. Head assigned the Lease to Governors House Apartments pursuant to that certain Assignment of Leases dated December 30, 1988. The Lease was further assigned to Peter L. Lowe on February 28, 1995 who assigned it to Bowdoin Square on that same day pursuant to that certain Assignment of Leases. Copies of the assignments are attached. Winn-Dixie Montgomery defaulted on the Lease in May of 2000 and has not paid rent or any other charges associated with the Lease since that time. Bowdoin Square leased the premises to Manning's Market ("Manning's") for the benefit of Winn-Dixie Montgomery. Bowdoin Square has been receiving monthly rent from Manning's in the amount of $7,664.07 in rent and common area maintenance charges since November 1, 2003. As of the petition date, taking into account the rent received from Manning's, Winn-Dixie Montgomery owed $1,267,412.43 in unpaid rent, common area maintenance charges and accrued interest pursuant to the Lease for the period from May 1, 2000 through the petition date.

Winn-Dixie Stores, Inc. (the "Debtor") guaranteed Winn-Dixie Montgomery's debt on the Lease pursuant to that certain guaranty dated as of November 25, 1987 (a copy of which is attached). Both Winn-Dixie Montgomery and the Debtor are in bankruptcy before this Court.

Pursuant to that certain Order Authorizing the Debtors to Reject Certain Real Property Leases, Effective as of February 28, 2005 entered by the United States Bankruptcy Court for the Southern District of New York, Winn-Dixie Montgomery rejected the Lease (as in full force and effect pursuant to the Order Transferring Venue of the Debtors' Bankruptcy Cases to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division). Bowdoin Square's proof of claim is calculated in accordance with section 502(b)(6) of the Bankruptcy Code.

Accordingly, Bowdoin Square files this proof of claim for $1,267,412.43 which is calculated as follows.

1. Pre-Petition Arrearage
   a. Rent $16,041.67 per month x 58 months     $930,416.86
   b. CAM average $1,863.46 per month x 58 months     $108,080 68
   c. Interest at 6% rolling     $153,178.39
   d. Less lease payments by Manning's     ($139,125.06)

2.  Rejection Damages
    a.  Rent $16,041.67 per month x 12 months    $192,500.04
    b.  CAM average $1,863.46 per month x 12 months    $22,361.52

**TOTAL**    **$1,267,412.43**

Bowdoin Square expressly reserves the right to amend or supplement this proof of claim. Bowdoin Square files this proof of claim without waiver of any rights, claims or defenses.

G U A R A N T Y

In consideration of the sum of Ten Dollars ($10.00) paid by _____

DAVID R. HEAD

hereinafter called "Landlord", to WINN-DIXIE STORES, INC., a Florida corporation

with its principal offices at 5050 Edgewood Court, Jacksonville, Florida 32205,

hereinafter called "Guarantor", the receipt and sufficiency whereof are hereby

acknowledged, Guarantor does hereby guarantees unto Landlord, its heirs, legal

representatives, successors and assigns, the due performance and observance by

WINN-DIXIE MONTGOMERY, INC., a Kentucky corporation

hereinafter called "Tenant", of all the terms, covenants and conditions on the

part of Tenant to be performed and observed including, without limitation,

payment of rentals under the attached and foregoing Lease Agreement dated

_11/25/87_____, covering certain premises located _at the northwest corner_

of U. S. Highway #43 and Second Avenue

in the City of _Saraland_____, _Mobile_____ County, State of

_Alabama_____.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed in its

corporate name and its corporate seal to be hereunto affixed and attested by its

officers thereunto duly authorized this _25th_ day of _November_____,

19_87_.

Signed, sealed and delivered
in the presence of:

WINN-DIXIE STORES, INC.

By _____

Its _____ President

_____
As to Tenant

Attest _____

Its _____ Secretary

(CORPORATE SEAL)

GUARANTOR

ALABAMA - Corporate Single

STATE OF FLORIDA      )
                      )
COUNTY OF DUVAL       )

     I, _____ MICHAEL A. THOMAS _____, a Notary Public

in and for said County and in said State, hereby certify that

_A. Alonso Davis_, whose name as _____

President of WINN-DIXIE STORES, INC., a Florida corporation

_____

is signed to the foregoing conveyance, and who is known to me,

acknowledged before me on this day that, being informed of the

contents of the conveyance, he, as such _____ President

and with full authority, executed the same voluntarily for and as

the act of said corporation.

     GIVEN under my hand and seal of office this _25th_ day of

_November_, 19 _87_.

_Michael A. Thomas_
              /Notary Public

My commission expires:

_6-23-90_
(NOTARIAL SEAL)





EXHIBIT "B"

LEGAL DESCRIPTION

Saraland Square
Saraland, Mobile County, Alabama

LOT 2:

COMMENCING AT THE NORTHWEST CORNER OF SECTION 10, TOWNSHIP 2, SOUTH, RANGE 1 WEST, THENCE SOUTH 40 DEGREES 07 MINUTES 22 SECONDS EAST ALONG THE WEST LINE OF SAID SECTION 10, A DISTANCE OF 371.20 FEET TO THE POINT OF BEGINNING OF PROPERTY HEREIN DESCRIBED, THENCE SOUTH 89 DEGREES 37 MINUTES 46 SECONDS EAST A DISTANCE OF 746.19 FEET TO A POINT, THENCE NORTH 03 DEGREES 48 MINUTES EAST A DISTANCE OF 75.0 FEET TO A POINT; THENCE SOUTH 89 DEGREES 37 MINUTES 54 SECONDS EAST A DISTANCE OF 399.47 FEET TO A POINT ON THE WEST RIGHT OF WAY LINE OF U.S. HIGHWAY 43, THENCE SOUTH 03 DEGREES 49 MINUTES WEST ALONG SAID WEST RIGHT OF WAY LINE A DISTANCE OF 367.8 FEET TO A POINT, THENCE SOUTH 89 DEGREES 53 MINUTES 54 SECONDS WEST A DISTANCE OF 430.13 FEET TO A POINT, THENCE SOUTH 00 DEGREES 06 MINUTES 06 SECONDS EAST A DISTANCE OF 17.0 FEET TO A POINT, THENCE SOUTH 89 DEGREES 53 MINUTES 54 SECONDS WEST A DISTANCE OF 399.0 FEET TO A POINT ON THE EAST RIGHT OF WAY LINE OF OAK STREET, THENCE NORTH 40 DEGREES 10 MINUTES 22 SECONDS WEST ALONG SAID EAST RIGHT OF WAY LINE A DISTANCE OF 299.0 FEET TO THE SOUTHEAST INTERSECTION OF OAK STREET AND FIRST AVENUE, THENCE SOUTH 89 DEGREES 26 MINUTES 24 SECONDS EAST ALONG THE SOUTH RIGHT OF WAY LINE OF SAID FIRST AVENUE A DISTANCE OF 356.07 FEET TO A POINT, THENCE NORTH 00 DEGREES 03 MINUTES 22 SECONDS WEST A DISTANCE OF 64.06 FEET TO THE POINT OF BEGINNING. CONTAINING 6.3996 ACRES MORE OR LESS.

LOT 4:

COMMENCING AT THE NORTHEAST INTERSECTION OF OAK STREET AND SECOND AVENUE, THENCE SOUTH 88 DEGREES 54 MINUTES 57 SECONDS EAST ALONG THE NORTH RIGHT OF WAY LINE OF SAID SECOND AVENUE A DISTANCE OF 305.21 FEET TO THE POINT OF BEGINNING OF PROPERTY HEREIN DESCRIBED, THENCE NORTH 00 DEGREES 36 MINUTES 24 SECONDS WEST A DISTANCE OF 75.20 FEET TO A POINT, THENCE NORTH 89 DEGREES 53 MINUTES 54 SECONDS EAST A DISTANCE OF 399.0 FEET TO A POINT, THENCE SOUTH 00 DEGREES 06 MINUTES 06 SECONDS EAST A DISTANCE OF 84.0 FEET TO A POINT ON THE NORTH RIGHT OF WAY LINE OF SAID SECOND AVENUE, THENCE NORTH 88 DEGREES 16 SECONDS WEST ALONG SAID NORTH RIGHT OF WAY LINE A DISTANCE OF 152.20 FEET TO A POINT, THENCE NORTH 88 DEGREES 54 MINUTES 57 SECONDS WEST AND CONTINUING ALONG SAID NORTH RIGHT OF WAY LINE A DISTANCE OF 57.06 FEET TO THE POINT OF BEGINNING. CONTAINING 0.3698 ACRES MORE OR LESS.

SHORT FORM LEASE

THIS SHORT FORM LEASE, made this _25th_ day of
_November_____, 1987, by and between DAVID H. HEAD
(hereinafter called "Landlord") and WINN-DIXIE MONTGOMERY,
INC., a Kentucky corporation qualified to transact business
in Alabama (hereinafter called "Tenant"); which terms "Land-
lord" and "Tenant" shall include, wherever the context
admits or requires, singular or plural, and the heirs,
legal representatives, successors and assigns of the
respective parties;

W I T N E S S E T H:

That the Landlord, in consideration of the covenants of
the Tenant, does hereby lease and demise unto said Tenant and
the Tenant hereby agrees to take and lease from the Land-
lord, for the term hereinafter specified, the following
described premises:

That certain store building approximately 200 feet
in width by 175 feet in depth, together with vesti-
bule approximately 78.5 feet in width by 11.75 in
depth and exterior coolers and freezers mounted on
pads, and the land on which the same shall stand
(hereinafter collectively called "demised pre-
mises"), which store building and related improve-
ments are to be constructed by Landlord according
to plans and specifications to be approved by the
parties hereto and shall be in the location and of
the dimensions as outlined in red on the Plot Plan
attached as Exhibit "A" to a certain collateral
lease agreement executed by the parties hereto and
of even date herewith.

The demised premises are located in a shopping
center development known as Saraland Square(herein-
after called "shopping center"), located in the
City of Saraland, Mobile County, Alabama, the legal
description of the shopping center being attached
hereto as Exhibit "B" and by this reference made a
part hereof.

FOR THE TENANT TO HAVE AND TO HOLD from the date when
Tenant opens said premises for the transaction of its busi-
ness for an initial term of twenty (20) years.

It is further agreed that Tenant, at its option, shall
be entitled to the privilege of five (5) successive exten-
sions of this lease, each extension to be for a period of
five (5) years.

APPROVED
AS TO FORM
_____
_____ Mgr.
_____
R_ al Dept
Winn Dixie Stores,
In_

This instrument was prepared by
Wayne E Ripley Jr   Attorney
at Law    Post Office Box   5550
Edgewood Court, Jacksonville
Florida  32205.

Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1,000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part hereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of the Tenant. With the exception of bars and package stores, only Tenant herein may sell beer and wine in the shopping center for off-premises consumption; provided, however, that the provisions of this paragraph are expressly subject to and conditioned upon certain modifications thereof as particularly set forth in the collateral lease agreement of even date herewith above mentioned.

IT IS UNDERSTOOD AND AGREED that this is a Short Form Lease which is for the rents and upon the terms, covenants and conditions contained in the aforesaid collateral lease agreement executed by the parties hereto and bearing even date herewith, which collateral lease agreement is and shall be a part of this instrument as fully and completely as if the same were set forth herein.

IN WITNESS WHEREOF, the Landlord and Tenant have executed

-2-

this instrument as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

_Jessica L. Holcomb_

By _[signature]_

DAVID H. HEAD

_Joseph M. Thanner_

As to Landlord

LANDLORD


WINN-DIXIE MONTGOMERY, INC., a
Kentucky corporation

_Denise W. ____

By _[signature]_

Its _____    Vice President

_Michael O. Thomas_

Attest _[signature]_

Its _____    Secretary

(CORPORATE SEAL)

TENANT

-3-

CB  2/28/73    Alabama - Individual & Corporate

STATE OF

COUNTY OF *BALDWIN*

    I, _____, a Notary Public in and for
said County, in said State, hereby certify that _____

                DAVID H. HEAD

whose name(s) is(are) signed to the foregoing conveyance, and who is(are)
known to me, acknowledged before me on this day that, being informed of
the contents of the conveyance, he(they) executed the same voluntarily
on the day the same bears date.

    Given under my hand and official seal this *1st* day of

*DECEMBER*_____, 19 *87*

                                  _____
                                    Notary Public

My commission expires:

MY COMMISSION EXPIRES OCT 14 1991
    (NOTARIAL SEAL)

STATE OF  FLORIDA

COUNTY OF  DUVAL

    I,    MICHAEL A. THOMAS_____, a Notary Public in and for
said County in said State, hereby certify that *A. Claus Davis*,
whose name as    Vice    President of  WINN-DIXIE MONTGOMERY, INC., a
Kentucky corporation qualified to do business in Alabama,
is signed to the foregoing conveyance, and who is known to me, acknowl-
edged before me on this day that, being informed of the contents of the
conveyance,   he, as such    Vice    President and with full authority,
executed the same voluntarily for and as the act of said corporation.

    Given under my hand and seal of office this  *25th*  day of

_____November_____, 19 *87*

                                _____
                                  Notary Public

My commission expires:

*6-12-90*
    (NOTARIAL SEAL)

EXHIBIT "B"

LEGAL DESCRIPTION

Saraland Square
Saraland, Mobile County, Alabama

LOT 2:

COMMENCING AT THE NORTHWEST CORNER OF SECTION 10, TOWNSHIP 2, SOUTH, RANGE 1 WEST, THENCE SOUTH 00 DEGREES 03 MINUTES 22 SECONDS EAST ALONG THE WEST LINE OF SAID SECTION 10, A DISTANCE OF 375.00 FEET TO THE POINT OF BEGINNING OF PROPERTY HEREIN DESCRIBED, THENCE SOUTH 89 DEGREES 57 MINUTES 41 SECONDS EAST A DISTANCE OF 296.10 FEET TO A POINT, THENCE NORTH 02 DEGREES 00 MINUTES EAST A DISTANCE OF 25.0 FEET TO A POINT, THENCE SOUTH 89 DEGREES 59 MINUTES 54 SECONDS EAST A DISTANCE OF 399.67 FEET TO A POINT ON THE WEST RIGHT OF WAY LINE OF U.S. HIGHWAY 43, THENCE SOUTH 03 DEGREES 49 MINUTES WEST ALONG SAID WEST RIGHT OF WAY LINE A DISTANCE OF 369.0 FEET TO A POINT, THENCE SOUTH 89 DEGREES 53 MINUTES 54 SECONDS WEST A DISTANCE OF 430.65 FEET TO A POINT, THENCE SOUTH 00 DEGREES 06 MINUTES 06 SECONDS EAST A DISTANCE OF 12.0 FEET TO A POINT, THENCE SOUTH 89 DEGREES 53 MINUTES 54 SECONDS WEST A DISTANCE OF 270.0 FEET TO A POINT ON THE EAST RIGHT OF WAY LINE OF OAK STREET, THENCE NORTH 00 DEGREES 10 MINUTES 32 SECONDS WEST ALONG SAID EAST RIGHT OF WAY LINE A DISTANCE OF 299.0 FEET TO THE SOUTHEAST INTERSECTION OF OAK STREET AND FIRST AVENUE, THENCE SOUTH 89 DEGREES 26 MINUTES 29 SECONDS EAST ALONG THE SOUTH RIGHT OF WAY LINE OF SAID FIRST AVENUE A DISTANCE OF 336.87 FEET TO A POINT, THENCE NORTH 00 DEGREES 05 MINUTES 22 SECONDS WEST A DISTANCE OF 64.00 FEET TO THE POINT OF BEGINNING. CONTAINING 6.3798 ACRES MORE OR LESS.

LOT 4:

COMMENCING AT THE NORTHEAST INTERSECTION OF OAK STREET AND SECOND AVENUE, THENCE SOUTH 00 DEGREES 34 MINUTES 57 SECONDS EAST ALONG THE NORTH RIGHT OF WAY LINE OF SAID SECOND AVENUE A DISTANCE OF 322.31 FEET TO THE POINT OF BEGINNING OF PROPERTY HEREIN DESCRIBED, THENCE NORTH 00 DEGREES 36 MINUTES 06 SECONDS WEST A DISTANCE OF 75.70 FEET TO A POINT, THENCE NORTH 89 DEGREES 53 MINUTES 54 SECONDS EAST A DISTANCE OF 299.0 FEET TO A POINT, THENCE SOUTH 00 DEGREES 06 MINUTES 06 SECONDS EAST A DISTANCE OF 86.0 FEET TO A POINT ON THE NORTH RIGHT OF WAY LINE OF SAID SECOND AVENUE, THENCE NORTH 88 DEGREES 47 MINUTES 53 SECONDS WEST ALONG SAID NORTH RIGHT OF WAY LINE A DISTANCE OF 132.79 FEET TO A POINT, THENCE NORTH 00 DEGREES 34 MINUTES 57 SECONDS WEST AND CONTINUING ALONG SAID NORTH RIGHT OF WAY LINE A DISTANCE OF 22.26 FEET TO THE POINT OF BEGINNING. CONTAINING 0.5667 ACRES MORE OR LESS.

SUPPLEMENTAL LEASE AGREEMENT

THIS SUPPLEMENTAL LEASE AGREEMENT made this 23rd day of September, 1988, by and between DAVID H. HEAD ("Landlord"), and WINN-DIXIE MONTGOMERY, INC., a Kentucky corporation qualified to do business in Alabama ("Tenant"), which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

W I T N E S S E T H :

WHEREAS, by Lease Agreement dated November 25, 1987, Landlord did lease and demise unto Tenant certain premises located at the at the northwest corner of the intrsaction of U. S. Highway #43 and Second Avenue, in the City of Sara-land, Mobile County, Alabama, for a term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, and upon such other terms and conditions as are set forth herein, a Short Form of said Lease being recorded at Real Property Book 3199, Page 480 in the Office of the Judge of Probate of Mobile County, Ala-bama; and

WHEREAS, Tenant has now opened for business in the demised premises and the parties desire to fix the commence-ment date of said Lease as hereinafter set forth; and

NOW, THEREFORE, in consideration of the premises and other good and valuable considerations in hand paid by Lessor to Lessee, it is mutually agreed as follows:

1.  The commencement date of the above-described Lease dated November 25, 1987, is fixed at September 1, 1988, and the expiration of the initial term of twenty years demised therein shall be midnight August 31, 2008.

2.  All covenants, terms and conditions of the above-described lease not modified or amended by this Supplemental

APPROVED
AS TO FORM

Division Mgr.

Legal Dept.
Winn Dixie Stores,
Inc

This Instrument was prepared by
Wayne E Ripley, Jr, Attorney
at Law, whose address is 5050
Edgewood Court, Jacksonville,
Florida 32205.

Lease Agreement are hereby ratified and confirmed.

IN WITNESS WHEREOF, the undersigned have caused this instrument to be executed as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

_As to Landlord_

DAVID H. HEAD

LANDLORD

WINN-DIXIE MONTGOMERY, INC.,

By _____
Its              Vice President

Attest _____
Its              Secretary

(CORPORATE SEAL)

_As to Tenant_

TENANT

CB 2/28/73    Alabama - Individual & Corporate

STATE OF *ALABAMA*
COUNTY OF *BALDWIN*

    I, *Marion J. Bolar*, a Notary Public in and for said County, in said State, hereby certify that _____

DAVID H. HEAD

whose name(s) is(are) signed to the foregoing conveyance, and who is(are) known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he(they) executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal this *12th* day of *September*, 19*88*.

*Marion J. Bolar*<br>Notary Public

My commission expires:

MY COMMISSION EXPIRES OCT. 17, 1991
(NOTARIAL SEAL)

STATE OF    FLORIDA
COUNTY OF    DUVAL

    I, *the undersigned*, a Notary Public in and for said County in said State, hereby certify that *James Kufeldt* whose name as    Vice    President of WINN-DIXIE MONTGOMERY, INC., a Kentucky corporation qualified to do business in Alabama

is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such    Vice    President and with full authority, executed the same voluntarily for and as the act of said corporation.

    Given under my hand and seal of office this *26th* day of *September*, 19*88*.

*Michael C. Thomas*<br>Notary Public

My commission expires:

6/13/90

(NOTARIAL SEAL)

MICHAEL C. THOMAS
NOTARY
PUBLIC
EXP 6/22/90
STATE OF FLORIDA



# Bradley Arant

BRADLEY ARANT ROSE & WHITE LLP

ONE FEDERAL PLACE
1819 FIFTH AVENUE NORTH
BIRMINGHAM, AL 35203-2119
205 521 8000   FAX 205 521 8800
WWW.BRADLEYARANT.COM

Danielle K. Greco

Direct Dial (205) 521-88373
Direct Fax (205) 488-6373
dgreco@bradleyarant.com

July 28, 2005

## VIA OVERNIGHT MAIL

Winn-Dixie Claims Docketing Center
c/o Logan & Company, Inc.
546 Valley Road
Upper Montclair, New Jersey 07043

RE:   **Winn-Dixie Stores, Inc., et al, Chapter 11, 05-03817-3F1**
      **Bowdoin Square, LLC Proofs of Claim**

Dear Claims Agent:

Enclosed please find an original and one copy of a Proof of Claim for filing in each of the following cases: (a) Winn-Dixie Stores, Inc., Case No. 05-03817; and (b) Winn-Dixie Montgomery, Inc. Please return a file-stamped copy to me of each claim in the enclosed self-addressed, postage prepaid envelope. Should you have any questions regarding these documents, please do not hesitate to call me. Thank you for your assistance with this matter.

Sincerely,

Danielle K. Greco

DKG/jsg
Enclosures

cc:   F. Wendell Allen, Esq. (w/encl)

1/1356687 1   BIRMINGHAM     CHARLOTTE     HUNTSVILLE     JACKSON     MONTGOMERY     WASHINGTON, DC

B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Winn-Dixie Montgomery, Inc | Case Number<br>05-03837 | File Claim Form With |
|---|---|---|

**NOTE. This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.**

| Name of Creditor (The person or other entity to whom the debtor owes money)<br>Bowdom Square, LLC | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars | DEBTOR WINN - DIXIE STORES, INC<br>U S BANKRUPTCY COURT M D -FLORIDA<br>JOINTLY ADMINISTERED UNDER<br>CASE 05-03817 (3F1)<br>CHAPTER 11 |
|---|---|---|
| Name and address where notices should be sent (make correction as needed)<br>Bowdom Square, LLC<br>c/o F Wendell Allen<br>Bradley Arant Rose & White LLP<br>1819 Fifth Ave North<br>Birmingham, AL 35203 | ☐ Check box if you have never received any notices from the bankruptcy court in this case | **CLAIM NO.: 9940**<br><br>In Chapter 13 cases, file claims and attachments in duplicate |
| | 4108560 | |
| Telephone number  (205) 521-8000 | ☒ Check box if the address differs from the address on the envelope sent to you by the court | In Chapter 11 and 13 cases, serve additional copy of claim with attachments on attorney for debtor |
| Account or other number by which creditor identifies debtor<br>N/A | Check here<br>If this claim ☐ replaces<br>☐ amends a previously filed claim | |

| 1. Basis for Claim | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U S C § 1114(a) |
| ☐ Services performed | ☐ Wages, salaries, and compensation (Fill out below) |
| ☐ Money loaned | Your SS# _____ |
| ☐ Personal injury/wrongful death | Unpaid compensation for services performed |
| ☐ Taxes | From _____ to _____ |
| ☒ Other  Non-residential real property lease | (date)              (date) |

| 2, Date debt was incurred: November 25, 1987 | 3.  If court judgment, date obtained: N/A |
|---|---|

4  Total Amount of Claim at Time Case Filed. $1,267,412 43
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

| 5   Secured Claim<br>☐ Check this box if your claim is secured by collateral (including a right of setoff)<br><br>Brief Description of Collateral<br>☐ Real Estate      ☐ Motor Vehicle<br>☐ Other  Equipment and Inventory<br><br>Value of Collateral  $ _____<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any $ _____ | 6   Unsecured Priority Claim<br>☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $ _____<br>Specify the priority of the claim<br>☐ Wages, salaries, or commissions (up to $4,650), * earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C §507(a)(3)<br>☐ Contributions to an employee benefit plan – 11 U S C §507(a)(4)<br>☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C §507(a)(7)<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U S C §507(a)(7)<br>☐ Taxes or penalties owed to governmental units – 11 U S C §507(a)(8)<br>☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)<br>* Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment |
|---|---|

| 7   Credits. The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim<br>8   Supporting Documents. Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien<br>DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain.<br>If the documents are voluminous, attach a summary<br>9   Date-Stamped Copy  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| Date<br><br>07/28/05 | Sign and print the name and title, if any of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>_Wendell M_____<br>F Wendell Allen<br>Attorneys for Bowdom Square, LLC |

*Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571*

RECEIVED
2005 JUL 29 PM 1 51
U.S. BANKRUPTCY COURT
MIDDLE DISTRICT
OF FLORIDA

LOGAN & COMPANY, INC
AS AGENT

B10 (Official Form 10) (4/01) (Reve

1

**In re Winn-Dixie Montgomery, Inc.**
**Case No. 05-03837**

Bowdoin Square, LLC ("Bowdoin Square") hereby files this proof of claim against Winn-Dixie Montgomery, Inc. (the "Debtor") in the amount of $1,267,412.43. David H. Head and the Debtor entered into that certain 20-year lease dated November 25, 1987 (as supplemented on September 23, 1998) for non-residential real property located at 719 Highway 43 South, Saraland, Alabama 36571 (the "Lease") (a copy of which is attached). David H. Head assigned the Lease to Governors House Apartments pursuant to that certain Assignment of Leases dated December 30, 1988. The Lease was further assigned to Peter L. Lowe on February 28, 1995 who then assigned it to Bowdoin Square on that same day pursuant to that certain Assignment of Leases. Copies of the assignments are attached. The Debtor defaulted on the Lease in May of 2000 and has not paid rent or any other charges associated with the Lease since that time. Bowdoin Square leased the premises to Manning's Market ("Manning's") for the benefit of the Debtor. Bowdoin Square has been receiving monthly rent from Manning's in the amount of $7,664.07 in rent and common area maintenance charges since November 1, 2003. As of the petition date, taking into account the rent received from Manning's, the Debtor owed $1,267,412.43 in unpaid pre-petition unpaid rent, common area maintenance charges and accrued interest pursuant to the Lease for the period of May 1, 2000 through the petition date.

Pursuant to that certain Order Authorizing the Debtors to Reject Certain Real Property Leases, Effective as of February 28, 2005 entered by the United States Bankruptcy Court for the Southern District of New York, Winn-Dixie Montgomery rejected the Lease (as in full force and effect pursuant to the Order Transferring Venue of the Debtors' Bankruptcy Cases to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division). Bowdoin Square's proof of claim is calculated in accordance with section 502(b)(6) of the Bankruptcy Code.

Accordingly, Bowdoin Square files this proof of claim for $1,267,412.43 which is calculated as follows:

| | | | |
|---|---|---|---|
| 1 | Pre-Petition Arrearage | | |
| | a. | Rent $16,041.67 per month x 58 months | $930,416.86 |
| | b. | CAM average $1,863.46 per month x 58 months | $108,080.68 |
| | c. | Interest at 6% rolling | $153,178.39 |
| | d. | Less lease payments by Manning's | ($139,125.06) |
| 2 | Rejection Damages | | |
| | a. | Rent $16,041.67 per month x 12 months | $192,500.04 |
| | b. | CAM average $1,863.46 per month x 12 months | $22,361.52 |

**TOTAL**     **$1,267,412.43**

Bowdoin Square expressly reserves the right to amend or supplement this proof of claim. Bowdoin Square files this proof of claim without waiver of any rights, claims or defenses.

SC-1

# LEASE

THIS LEASE, made this 25th day of November, 19 87

between DAVID H. HEAD

_____ (hereinafter called "Landlord")

and WINN-DIXIE MONTGOMERY, INC., a Kentucky corporation qualified to do business

in Alabama

_____(hereinafter called "Tenant");

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

### WITNESSETH:

PREMISES

That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord, for the term hereinafter specified, the following described premises:

That certain store building, approximately 200 feet in width by 175 feet in depth, together with exterior pads for mounting of Tenant's coolers and freezers and vestibule approximately 78.5 feet in width by 11.75 feet in depth and the land on which the same shall stand (hereinafter collectively called "demised premises"), which store building and related improvements are to be constructed by Landlord according to plans and specifications to be approved by the parties as herein provided, and shall be in the location and of the dimensions as outlined in red on the entitled Plot Plan "Proposed Site Plan, Saraland, Al." prepared by Charles A. Cline, Architect, Montgomery, Alabama, redrawn June 26, 1987, last revised November 11, 1987 attached hereto marked Exhibit "A" and by this reference made a part hereof.

The demised premises are located in a shopping center development (shown in detail on Exhibit "A"), known as Saraland Square (hereinafter called "shopping center"), located at the northwest corner of the intersection of U. S. Highway #43 and Second Avenue in the City of Saraland, County of Mobile, State of Alabama, the legal description of the shopping center being set forth on Exhibit "B" attached hereto and by this reference made a part hereof.

APPROVED
AS TO FORM
Division Mgr.
Legal Dept.
Winn Dixie Stores,
Inc

NO 33 36 Rev. 4/79

SC-2

**TERM**

     FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens said premises for the transaction of its business as hereinafter provided for an initial term of _____ __twenty (20)__ _____ years from said commencement date. The parties agree to execute a supplemental agreement fixing the commencement date when the same shall have been determined as herein provided.

     This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

**RENTAL**

1. The Tenant agrees to pay to the Landlord as a minimum guaranteed rental for the demised premises during the term of this lease, and any extensions thereof, the sum of _____

__One Hundred Ninety Two Thousand Five Hundred and No/100__

Dollars ($__192,500.00__ ) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of _____

__Sixteen Thousand Forty One and 67/100__———————————————— Dollars ($__16,041.67__ ) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof.

     In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which_____ one _____ per cent (————1%) of Tenant's gross sales made from the demised premises in each fiscal year ending approximately June 30th during the term of this lease, and any extensions thereof, exceeds the minimum guaranteed annual rental

     Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

SC-3

**DEFINITION OF "GROSS SALES"**

1a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises

**RECORD OF SALES**

1b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

USE

2.   The demised premises may be used for retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food product or for the conduct of any general mercantile business, retail or service business not restricted under Article 7 hereof; provided, however, except as a supermarket, the demised premises shall not be used, nor assigned, or subleased under the terms of Article 26 herein, for any primary use or business which shall be in direct competition with the primary use or business engaged in by any other then tenant in the shopping center to whom Landlord has granted a right of exclusive use to which Tenant has given consent herein or in writing, or a replacement or successor tenant for such exclusive use .  Tenant has the non-exclusive right to operate a drugstore in the demised premises.

Notwithstanding the foregoing, the demised premises shall be initially opened and used for a retail food store, commonly referred to as "supermarket", and shall continue to be so operated for such purpose only for a period of not less than six (6) months provided, however, Tenant shall not thereafter be required to continue to remain open for business in the shopping center, even for the operation of a food supermarket or otherwise.

Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of said premises, as such shall relate to the cleanliness and use of said premises and the character and manner of operation of the business conducted in or at said premises.

-3-

SC-4

**CONSTRUCTION**
**OF SHOPPING**
**CENTER**

3. The Landlord, at its sole cost and expense, shall construct the shopping center, substantially as shown on Exhibit "A", consisting of all the buildings shown thereon, together with all ramps, sidewalks, streets, entranceways, malls, parking areas, service areas, driveways and related improvements, said improvements (excluding buildings) being sometimes hereinafter referred to as "common areas". The Landlord, at its sole cost and expense, shall grade and surface with top quality materials all paved portions of the common areas (including parking area), and shall provide proper and adequate water drainage and lighting system and operations therefor and shall operate and maintain the same in good repair and usable condition for use by the patrons of the shopping center and the tenants and their employees during the term of this lease and any extensions thereof. The arrangement and location of all store buildings and common areas (including parking area) within the shopping center shall at all times during the term of this lease, or any extensions thereof, be maintained as shown on Exhibit "A" and shall not be changed without the written consent of the Tenant. If not shown on Exhibit "A", Tenant expressly reserves the right to approve the finish grade elevations of all store buildings and common areas (including parking and service areas) within the shopping center which are to be constructed concurrently with Tenant's store building

Concurrently with the above construction, Landlord agrees at its sole cost and expense, to construct the store building for occupancy by Tenant in accordance with the plans and specifications to be approved by both Landlord and Tenant. Plans and specifications shall be approved when initialed by both parties, and when initialed shall constitute a part of this lease. Said plans and specifications shall provide for a completed store building, commonly referred to as a "lock and key job", and shall include, but without limitation the following:

```
environmental control panel, heat reclaim coil, automatic doors,
interior partitions, all the plumbing and plumbing fixtures, drains,
electrical wiring, lighting fixtures to Tenant's requirements, connection of
trade fixtures to plumbing and electrical outlets, automatic sprinkler system
(including A.D.T. alarm system therefor if such systems and equipment is now
or hereafter required by applicable building codes), air conditioning and heating
systems and equipment (including insulated duct work, registers and grilles),
music and P.A. system (except microphones and amplifiers to be furnished by
Tenant), Manager's office, courtesy counter, delicatessen, vinyl asbestos floor
tile, ceramic tile and quarry tile floor coverings as specified (color at Tenant's
option), computer housing and connection to all utilities, including all "hook
up" environmental impact, system impact, initial connection and similar charges
incident providing access to any utility system. Tenant at its own expense,
shall furnish and install its own trade fixtures, and its compactor (or baler)
on concrete pads therefor to be erected by Landlord. All equipment and fixtures
provided by Tenant shall remain the property of Tenant and may be removed by
Tenant from the demised premises at any time. Landlord will also install the
emergency generator to be furnished by Tenant.
```

**COMPLETION**
**DATE**

4. Landlord covenants and agrees that the construction of the shopping center shall begin not later than_____May 1, 1988_____and shall be completed not later than_____ _____October 30, 1988_, and if the same shall not be begun or completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and terminate this lease or may extend the Landlord additional time for the beginning or completion of construction; provided, however, that if after the beginning of construction the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than_____December 31, 1988_____, said option to terminate shall not arise. "Construction of the shopping center" shall be deemed to have begun when the first concrete footings have been poured. If pursuant to this paragraph Tenant shall cancel or terminate this lease or if Landlord fails to commence or complete construction of the shopping center by the above dates, Landlord agrees for a period of three (3) years after such failure or cancellation or termination not to permit or consent to the use as a supermarket of the demised premises or any portion of the shopping center, ~~any space larger than~~ except by Tenant; provided, however, if Landlord has acted in good faith and with due diligence in attempting to complet the shopping center within the completion date specified herein, this restrictio shall be waived by Tenant if it so cancels this Lease.

SC-5

**COMMENCE-
MENT DATE**

5. The Tenant shall open its store for business within sixty (60) days following performance of the following:

(a) Tenant's store building and other improvements constructed on the demised premises shall have been delivered to Tenant completed in accordance with the plans and specifications and Landlord shall have delivered to Tenant, at Landlord's expense, a Certificate of Occupancy or equivalent document for the demised store building;

(b) Construction of all of the common areas (including parking area hereinafter specifically required) shall have been completed substantially as shown on Exhibit "A";

Subparagraphs (c) and (d) have been intentionally deleted

(e) Construction of at least 420 lineal feet of store frontage and 29,200 square feet of miscellaneous building area shall have been completed as shown on Exhibit "A" hereto (including the shops in Lot #4, Tract 2) with fronts and floors and under roof, but the interior partitions and interior finishes thereof need not be completed until any specific space is occupied, none of such space shall be required to be leased to tenants or opened for business; the service drives and drives through the Walmart parcel to the surrounding rights-of-way, and all of the curb cuts and drives as shown on Exhibit "A" hereto shall have been completed and opened for use;

(f) The shopping center parcel and the Walmart parcel shall have been provided with an easement with covenants and restrictions affecting land ("ECR"), recorded prior to any mortgages or other encumbrances which could foreclose upon the same, providing for reciprocal ingress, egress and parking rights between the shopping center parcel and the Walmart parcel and with such other provisions as approved by Tenant.  Local shops in Lot #4, Tract 2, as shown on Exhibit "A" hereto shall have been restricted in accordance with the provisions of Article 28 hereof.

(g) The Walmart store shall be under construction and be at a stage so as to reasonably open by March 1, 1989.  Notwithstanding any other provision herein, in the event the Walmart store is not open for business within 6 months after Tenant opens its store for business, Tenant shall have the option to cancel this Lease by written notice to Landlord, such notice to be given within thirty (30) days of end of such six (6) month period to be effective thirty (30) days from the date of notice.

(h) The "Proposed Traffic Light" at the curb cut from the Walmart parcel to U. S. Highway #43 shall have been installed and commenced operation.

(i) The Wendy's parcel (Lot 5, Tract 2) shall be restricted so as not to be used as a supermarket, grocery store or convenience store, such restriction not to be amended without Tenant's consent during the term of this Lease or any replacement thereof.

In the event that all the above requirements shall not have been met on or prior to _____ ___December 31, 1988_____ , the Tenant at its sole option may cancel and terminate this lease.

Rent shall begin to accrue hereunder upon the date the Tenant opens its store for business, or upon the expiration of sixty (60) days following the performance of all the above requirements, whichever date shall sooner occur. No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications.

- 5 -

ARTICLE 6 INTENTIONALLY DELETED

**RETAIL AND SERVICE STORES ONLY**

7. Without the prior written consent of Tenant herein only retail and/or service stores shall be allowed to operate in the shopping center, or any enlargement thereof, it being the intent of the parties hereto that no spa, bowling alley, skating rink, bingo parlor, theatre (either motion picture or legitimate), business or professional offices, sales of automobiles, or health, recreational or entertainment-type activities, or non-retail or non-service type activities, shall be permitted.

Notwithstanding the foregoing, these restrictions shall not affect the 12,000 square feet of shops located in Lot #4, Tract 2, as shown on Exhibit "A" hereto (which are, however, subject to restrictions and the ECR Agreement described in Article 5 above), and Landlord may have up to 2,800 square feet total of business, or professional offices, including banks, savings and loans, and similar uses, in the 11,200 square feet of local shops as shown on Exhibit "A" hereto.

**PARKING AND COMMON AREAS**

8. Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees, a non-exclusive right at all times to use, free of charge, during the term of this lease, and any extensions thereof, all the common areas, as defined in Article 3 hereof, and as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with others similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks.

Landlord shall at all times during the term of this lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A", and of sufficient area to provide:
   (decreasing to not less than 5.9 after Tenant expansion)
(a) a minimum ratio of at least 6.5 automobile parking spaces for each 1,000 sq. ft. of gross building area (including additional floor levels) in the shopping center, and
   (decreasing to 345 upon Tenant expansion)
(b) facilities for convenient parking of at least 350 automobiles (minimum);
(These ratios exclude the kiosk on Exhibit "A" hereto, the 12,000 square feet of shops in Lot #4, Tract 2, and the auto parts and related parking as shown on Lot #1 on Exhibit "A" hereto)
and in the event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details, the Tenant at its option shall have the right to terminate this lease, provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord curing the default within thirty (30) days after receipt of such notice of termination. All of the common areas (including parking areas) shall be adequately lighted by Landlord from 9:00 a.m. to 10:00 p.m., and at Tenant's expense for such portion as it wishes lighted at other hours, Tenant's expense to be based upon actual billings for such usage if available or based upon the kilowatt usage of the fixtures times the applicable utility rates times the number of hours of use, prorated on a square footage basis with other tenants open for business during such extended hours. Tenant shall pay such expense upon documentation thereof as provided under Article 31 hereof.

It is understood that a portion of the parking lot lights may be wired to Tenant's meter and switching system, as shown on the lighting plan in the approved plans and specifications.

Landlord agrees not to consent to or join in cancellation or amendment of the ECR as described under Article 5 hereto without Tenant's written consent.

Pursuant to the terms of the ECR, Landlord may designate certain employee parking areas, and Tenant will use reasonable efforts to have its employees use the spaces. Tenant may use the sidewalk area in front of its store for occasional display of seasonal and other merchandise, provided that such merchandise is displayed as to not unreasonably interfere with use of the sidewalk by patons of the shopping center.

**SERVICE AREA**

9. Landlord further agrees to provide for the exclusive use of the Tenant at its grocery service entrances parking spaces for two large trailer trucks for continuous use and further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such spaces as may be reasonably needed by Tenant for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

**UTILITIES**

10. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities used by Tenant on the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities.

**TENANT'S REPAIRS**

11. Upon completion of construction by Tenant and acceptance of the demised premises by Landlord, Tenant agrees during the initial term hereby granted and any extension or renewal thereof, to perform all maintenance necessary to keep and maintain the interior and exterior of the demised premises in good condition and repair, including structural repairs to the demised premises (including the roof, structural or exterior parts of the demised premises), and to repair, at or before the end of the initial term or any extension or renewal thereof, all injury done by the installation or removal of fixtures or property of the Tenant. Said repair responsibility shall also apply to the expansion of Tenant's store building as provided under Article 4 hereinafter.

**LANDLORD'S REPAIRS**

12. It is understood that this is intended to be a "Net" Lease as far as maintenance and repair of Tenant's store building but that Landlord shall remain responsible for and keep and maintain, in good condition and repair, the common areas, including the electrical system, plumbing and other utilities outsi Tenant's store building. If any portion of the common areas or any such utilities outside of the store building shall at any time be in need of repair, Landlord will repair the same immediately upon receipt of written notice from Tenant to do so, except that the Landlord shall not be obligated to make or pay for any such repairs rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, agents or employees, except in the case of damage by fire or the elements or other casualty covered by Landlord's fire and extended coverage insurance.

(AND SEE ARTICLE 31 DEALING WITH COMMON AREA MAINTENANCE)

Landlord covenants and agrees that the store building and related improvements will be so constructed so as to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority.