Hearing Date: October 25, 2006, 9:00 a.m.
Objection Deadline: October 23, 2006, 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

**DEBTORS' MOTION FOR ORDER APPROVING NEGOTIATED ASSUMPTIONS AND REJECTION OF AGREEMENTS WITH ALABAMA POWER COMPANY**

Winn-Dixie Stores, Inc. ("Winn-Dixie") and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for entry of an order under 11 U.S.C. §§ 105(a) and 365 and Fed. R. Bankr. P. 6006 (a) authorizing and approving the negotiated assumption of the Debtors' agreements with Alabama Power Company ("APCO") for the provision of electricity to approximately 63 of the Debtors' operating Alabama locations on the terms set forth below and providing related relief, effective as of the later of the effective date of the Debtors' proposed joint plan of reorganization and the date of entry of the order approving this Motion (the "Effective Date") and (b) authorizing and approving the negotiated rejection of the Debtors' agreement with APCO for the provision of electricity to the Debtors' now closed location on Gunter Park Drive East in Gunter Industrial Park, Montgomery Alabama, on the

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

terms set forth below and providing related relief effective as of October 25, 2006 (the "Motion"). In support of the Motion, the Debtors state as follows:

### Background

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. On March 1, 2005, pursuant to Section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005, was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4. On June 29, 2006, the Debtors filed a proposed Disclosure Statement with Respect to Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (as updated and refiled, the "Disclosure Statement"), together with a proposed Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (as updated and refiled, and as it may be modified, the "Plan"). The Disclosure Statement was approved by Order of the Court dated August 4, 2006. The hearing to consider confirmation of the Plan is scheduled to commence on October 13, 2006.

5. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6. The statutory predicates for the relief requested by this Motion are Sections 105(a) and 365 of the Bankruptcy Code, supported by Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relevant Facts**

A. The Negotiated Assumptions

7. The Debtors and APCO are parties to the following contracts under which APCO provides electricity to approximately 63 of the Debtors' operating Alabama locations (61 stores and 2 distribution centers) (collectively, the "Operating Store Electricity Contracts"):

(a) the Master Contract for Electric Service between APCO and Winn-Dixie dated May 16 2002 (the "5/16/02 Contract");

(b) the Master Contract for Electric Power Service (Rate Rider LTC) between APCO and Winn-Dixie Montgomery, Inc. ("WD Montgomery") dated February 23, 1996 (the "2/23/96 Contract");

(c) the Master Contract for Electric Power Service between APCO and WD Montgomery dated August 8, 1997 and associated Electric System Lease Agreement and Standby Generator Program Agreement each dated September 3, 1997; and

(d) the Contract for Electric Power between APCO and WD Montgomery dated April 15, 1997.

8. Under the Operating Store Electricity Contracts, the Debtors receive on favorable terms electricity services that are essential to their ongoing Alabama operations. APCO is the only source for utility services in the geographic region in which the Debtors' Alabama locations are situated. Because (i) such services are not available from any source other than APCO and (ii) the rates at which APCO provides electric service to the Debtors will increase absent assumption of the

Operating Store Electricity Contracts, assumption of the Operating Store Electricity Contracts is in the best interests of the Debtors and their estates.

9.  Prior to filing this Motion, the Debtors sought to assume the 5/16/02 Contract as part of the Debtors' First Omnibus Motion for Order Authorizing Assumption of Executory Contracts and Unexpired Leases and Fixing Cure Amounts filed at Docket No. 9710 (the "First Assumption Motion"). Thereafter, APCO filed at Docket No. 10111 an objection to the First Assumption Motion as it pertained to the 5/16/02 Contract (the "APCO Objection"). The hearing on the First Assumption Motion was (and remains) continued as it pertained to the 5/16/02 Contract so as to give the parties an opportunity to resolve their differences (the "Continuation").

10. In the weeks following the Continuation, the Debtors and APCO have not only negotiated a resolution of their dispute with respect to the 5/16/02 Contract, but have negotiated the terms pursuant to which all of the Operating Store Electricity Contracts will be assumed. Those negotiations have resulted in the following agreements with APCO, subject to approval by the Court:

(a) The Debtors will assume the Operating Store Electricity Contracts as amended (to the extent applicable).

(b) APCO will facilitate the assumption of the Operating Store Electricity Contracts by agreeing (i) to amend the 5/16/02 Contract by virtue of the Amendment to Master Contract for Electric Service Dated May 16, 2002 between APCO and Winn-Dixie dated October 12, 2006, (ii) to amend the 2/23/96 Contract by virtue of the Amendment to Master Contract for Electric Power Service (Rate Rider LTC) Dated February 23, 1996 between APCO and WD Montgomery dated October 12, 2006, and (iii) to accept $861,747.34 in the aggregate as cure for the Operating Store Electricity Contracts (the "Cure"). The Debtors estimate that the agreements described above will result in an immediate savings of approximately $1 million associated with certain charges that would otherwise have been due under the Operating Store Electricity Contracts and will also allow the Debtors to save an estimated $1 million annually by avoiding service price increases that the

4

    Debtors' would otherwise have to incur if they pursued a rejection and entered into new service contracts with APCO.[2]

(c)  Except as provided in subparagraph (d) below, the Debtors' cure obligations with respect to the Operating Store Electricity Contracts will be limited to the payment of the Cure described above, with APCO waiving any additional requirements under Section 365(b)(1) as it relates to any prepetition defaults under the Operating Store Electricity Contracts.

(d)  The agreements by APCO described above will not negate the impact of assumption on any claims held by the Debtors against APCO or otherwise expose APCO to potential preference actions with respect to payments made on account of the Operating Store Electricity Contracts. Upon assumption of the Operating Store Electricity Contracts and notwithstanding the agreements described above, APCO will be entitled to an administrative claim for cure in the event (albeit unlikely) that any amounts become owing to APCO pursuant to Section 502(h) of the Bankruptcy Code for sums relating to the Operating Store Electricity Contracts that may be required to be paid pursuant to Section 550 of the Bankruptcy Code (the "Section 502(h) Claim").

(e)  The Debtors and APCO have further agreed that, upon the entry of an order approving the assumption of the Operating Store Electricity Contracts on the terms described above, the First Assumption Motion as it pertains to the 5/16/02 Contract and the APCO Objection shall each be deemed withdrawn.

B.  <u>The Negotiated Rejection</u>

   11.  The Debtors and APCO are also parties to the Contract for Electric Power between APCO and WD Montgomery dated November 5, 1996 (the "11/5/96 Contract"). Under the 11/5/96 Contract, APCO provided electricity to the Debtors' now closed location on Gunter Park Drive East in Gunter Industrial Park, Montgomery Alabama. Because this location is now closed and because the 11/5/96 Contract requires that minimum payments be made to APCO regardless of whether the location is closed, rejection of the 11/5/96 Contract is in the best interests of the Debtors and these estates.

---

[2]  The amendments referenced in this Motion include confidential business terms. To preserve the confidentiality of these business terms, the Debtors have not attached copies of the amendments to this Motion. Copies of the amendments have, however, been provided to the Official Committee of Unsecured Creditors.

12. The Debtors and APCO have negotiated an agreement whereby (a) the Debtors will reject the 11/5/96 Contract as of October 25, 2006 and (b) APCO will have a prepetition non-priority unsecured rejection damages claim in the amount of $51,875.83.

### Relief Requested

13. Pursuant to Sections 105(a) and 365 of the Bankruptcy Code and Rule 6006 of the Bankruptcy Rules, the Debtors seek entry of an order (a) authorizing and approving the assumption of the Operating Store Electricity Contracts on the terms set forth in the Motion, (b) fixing $861,747.34 as the total cure amount for the Operating Store Electricity Contracts but preserving full cure rights with respect to any Section 502(h) Claims, (c) deeming as withdrawn the First Assumption Motion as it pertains to the 5/16/02 Contract and the APCO Objection, (d) authorizing and approving the rejection of the 11/5/96 Contract as of October 25, 2006, and (e) deeming APCO to have, on account of the rejection of the 11/5/96 Contract, an allowed prepetition non-priority unsecured rejection damages claim in the amount of $51,875.83.

### Basis for Relief

14. Under the Operating Store Electricity Contracts, the Debtors purchase at a discounted price electricity services that are essential to their ongoing Alabama operations. Such services are not available from any source other than APCO. Accordingly, assumption of the Operating Store Electricity Contracts is in the best interests of the Debtors and their estates. The negotiated assumption of the Operating Store Electricity Contracts on the terms described in this Motion provides the Debtors with the best possible terms for assuming the Operating Store Electricity Contracts. As a result of assuming the Operating Store Electricity Contracts, the Debtors estimate that they will receive an immediate savings of approximately $1 million associated with certain charges that would otherwise have been due under the Operating Store Electricity Contracts

and will save an estimated $1 million annually by avoiding service price increases that the Debtors' would otherwise have to incur if they pursued a rejection and entered into new service contracts with APCO.

15. The negotiated rejection of the 11/5/96 Contract is also in the best interests of the Debtors. The 11/5/96 Contract relates to the provision of electricity to one of the Debtors' closed locations. Accordingly, the Debtors do not have a continued need for the services supplied under the 11/5/96 Contract. Although rejection of the 11/5/96 Contract will result in a $51,875.83 rejection of damages in favor of APCO, that amount reflects minimum charges that the Debtors are required to pay under the 11/5/96 Contract. By rejecting the 11/5/96 Contract, the Debtors will ensure that those charges are treated as a prepetition non-priority unsecured claim rather than as an administrative claim to be paid in cash. Based upon the foregoing, and after considering the matter, the Debtors have determined that rejection of the 11/5/96 Contract is in the best interests of the Debtors and these estates.

**Applicable Authority**

A.  Support for Negotiated Assumptions and Rejection

16. Pursuant to Sections 365(a) and 1107(a) of the Bankruptcy Code, a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365. "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993).

17. A debtor's decision to assume a contract or unexpired lease is subject to review under the business judgment standard. See Byrd v. Gardinier, Inc. (In re Gardinier), 831 F.2d

7

974, 975 n.2 (11th Cir. 1987); In re Orion Pictures Corp., 4 F.3d at 1098-99.  Under this standard, the debtor's assumption of a contract or lease is appropriate if it will benefit the estate.  See Westshire, Inc. v. Trident Shipworks, Inc., 247 B.R. 856 (M.D. Fla. 2000).  Upon finding that a debtor has exercised its sound business judgment in determining that assumption of a particular executory contract is in the best interests of the debtor's estate, the bankruptcy court should approve assumption under Section 365(a) of the Bankruptcy Code.  See In re Gucci, 193 B.R. 411, 415-17 (S.D.N.Y. 1996) (affirming bankruptcy court's approval of assumption of executory contract upon determining that assumption "was in the best interest of the estate"); Blue Cross Blue Shield of Conn. v. Gurski (In re Gurski), Nos. 94-51202 & 3:95CV1883, 1996 WL 684397, at *2 (D. Conn. Jan. 25, 1996) (affirming bankruptcy court's determination that executory contracts were beneficial to the debtor such that the debtor could assume them under Section 365(a)).  In the case of assumption, "[t]he § 365 election permits a trustee to … continue performance on a contract which will benefit the estate."  In re Diamond Mfg. Co., 164 B.R. 189 (Bankr. S.D. Ga. 1994) (citing In re Brada Miller Freight Sys., Inc., 702 F.2d 890, 893-894 (11th Cir. 1983)).

18.    The decision to reject an executory contract is also subject to review under the business judgment standard and should be given great deference by a court.  See Byrd v. Gardinier, Inc. (In re Gardinier), 831 F.2d 974, 975 n.2 (11th Cir. 1987); In re Surfside Resort and Suites, Inc., 325 B.R. 465, 469 (Bankr. M.D. Fla. 2005); In re Central Florida Fuels, Inc., 89 B.R. 242, 245 (Bankr. M.D. Fla. 1988).  In the rejection context, the business judgment standard requires the debtor to establish that rejection of the agreement will likely benefit the estate.  See In re Surfside Resort & Suites, Inc., 325 B.R. at 469; In re Central Florida Fuels, Inc., 89 B.R. at 245; Sharon Steel Corp. v. Nat'l Fuel Gas Distrib'n Corp., 872 F.2d 36, 39-40 (3d Cir. 1989).  Courts universally regard the business judgment rule as a low standard to meet, and therefore, absent a finding of bad

8

faith, will not disturb the decision to reject an executory contract or unexpired lease by substituting their own judgment for that of the debtor. See In re III Enter., Inc. V, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) aff'd sub nom. Pueblo Chem., Inc. v. III Enters. Inc. V, 169 B.R. 551 (E.D. Pa. 1994); In re Hardie, 100 B.R. 284, 287 (Bankr. E.D.N.C. 1989).

19.     Based upon the foregoing, and in view of the efforts made by the Debtors to negotiate the effects of assumption and rejection in a manner favorable to their estates, the Debtors submit that (a) the assumption of the Operating Store Electricity Contracts on the terms described in this Motion and (b) the rejection of the 11/5/96 Contract on the terms described in this Motion are each in the best interests of the Debtors and their creditors and satisfy the business judgment standard.

B.      Support for Cure with Respect to Section 502(h) Claims

20.     It is black-letter law that assumption of a contract precludes recovery as a preference of monies paid under the contract. 3 Collier on Bankruptcy 365.05[3][d] (15th ed. rev. 2005) ("[A]ny prepetition payment under a contract that is later assumed is not avoidable as a preference. . . ."). To the Debtors' knowledge, every court that has examined this issue, including the Third, Seventh, and Ninth Circuit Courts of Appeals, has reached this conclusion. See Kimmelman v. Port Authority of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.), 344 F.3d 311 (3d Cir. 2003); In re Superior Toy & Mfg. Co., 78 F.3d 1169 (7th Cir. 1996); Alvarado v. Walsh (In re LCO Enters.), 12 F.3d 938 (9th Cir. 1993); In re Greater Se. Comm. Hosp. Corp., 327 B.R. 26 (Bankr. D.D.C. 2005); Philip Servs. Corp. v. Luntz (In re Philip Servs (Del.), Inc., 284 B.R. 541 (Bankr. D. Del. 2002); MMR Holding Corp. v. C & C Consultants, Inc., (In re MMR Holding Corp.), 203 B.R. 605 (Bankr. M.D. La. 1996); Phoenix Rest. Group, Inc. v. Denny's Corp. (In re Phoenix Rest. Group, Inc.), 2005 WL 114327 (Bankr. M.D. Tenn. Jan. 10, 2005); see also Seidle v. GATX

Leasing Corp., 778 F.2d 659 (11th Cir. 1985) (holding that trustee was not entitled to recover payments made pursuant to an executed stipulation that required cure of defaults).

21. Consistent with the case law, the Debtors' assumption of the Operating Store Electricity Contracts will preclude the Debtors or any other party from recovering any payments made on the Operating Store Electricity Contracts as preferences or from otherwise recovering such sums pursuant to Section 550 of the Bankruptcy Code. The concessions described above should not effect this preclusion, and the agreed preservation of cure with respect to any Section 502(h) Claims ensures that it will not. Thus, in the event of any attempt by a party in interest to argue that the concessions made by APCO operate to negate the effect of assumption on potential preferences, APCO will have the right to assert all available defenses to such claims, including without limitation, to have any such cases dismissed based on black-letter bankruptcy law and to be paid any resulting Section 502(h) Claims in full in accordance with the terms of the assumption of the Operating Store Electricity Contracts.

## Notice

22. Notice of the Motion has been provided to (a) counsel to the Office of the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) APCO. No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached as Exhibit A (a) authorizing and approving the assumption of the Operating Store Electricity Contracts on the terms set forth in the Motion, (b) fixing $861,747.34 as the total cure amount for the Operating Store Electricity Contracts but preserving full cure rights with respect to any Section 502(h) Claims, (c) deeming as withdrawn the

First Assumption Motion as it pertains to the 5/16/02 Contract and the APCO Objection, (d) authorizing and approving the rejection of the 11/5/96 Contract as of October 25, 2006, and (e) deeming APCO to have, on account of the rejection of the 11/5/96 Contract, an allowed prepetition non-priority unsecured rejection damages claim in the amount of $51,875.83 and (ii) grant such other and further relief as the Court deems just and proper.

Dated: October 12, 2006.

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
|---|---|
| By    *s/ D. J. Baker*    <br>    D. J. Baker<br>    Sally McDonald Henry<br>    Rosalie Walker Gray<br>    David M. Turetsky<br>Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(212) 735-2000 (facsimile)<br>djbaker@skadden.com | By    *s/ Cynthia C. Jackson*    <br>    Stephen D. Busey<br>    James H. Post<br>    Cynthia C. Jackson,<br>    Florida Bar Number 498882<br>225 Water Street, Suite 1800<br>Jacksonville, Florida  32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile)<br>cjackson@smithhulsey.com |
| Co-Counsel for the Debtors | Co-Counsel for the Debtors |

## **Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER APPROVING NEGOTIATED ASSUMPTIONS AND**
**REJECTION OF AGREEMENTS WITH ALABAMA POWER COMPANY**

These cases came before the Court for hearing on October 25, 2006, upon the motion of Winn-Dixie Stores, Inc. ("Winn-Dixie") and its subsidiaries and affiliates in the above-captioned jointly-administered cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order under 11 U.S.C. §§ 105 and 365 and Fed. R. Bankr. P. 6006(a) authorizing and approving the negotiated assumption, on the terms set forth in the Motion, of the "Operating Store Electricity Contracts" (as defined below) between the Debtors and Alabama Power Company ("APCO"), (b) fixing $861,747.34 as the total cure amount for the Operating Store Electricity Contracts but preserving full cure rights with respect to any amounts becoming owed to APCO pursuant to 11 U.S.C. § 502(h) for sums relating to the Operating Store Electricity Contracts that may be required to be paid pursuant to 11 U.S.C. § 550 (the "Section 502(h) Claims"), (c) deeming withdrawn (i) the Debtors' First Omnibus Motion for Order Authorizing Assumption of Executory Contracts and Unexpired Leases and Fixing Cure Amounts filed at Docket No. 9710 (the "First Assumption Motion") as it pertains to the Master Contract for Electric Service between APCO and Winn-Dixie dated May 16 2002 (the "5/16/02 Contract") and (ii) APCO's objection to the First Assumption Motion filed at Docket No. 10111 (the "APCO Objection"), (d) authorizing and approving the rejection of

the Contract for Electric Power between APCO and Winn-Dixie Montgomery, Inc. dated November 5, 1996 (the "11/5/96 Contract"), and (e) deeming APCO to have, on account of the rejection of the 11/5/96 Contract, an allowed prepetition non-priority unsecured rejection damages claim in the amount of $51,875.83 (the "Motion").[1] Parties were given until October 23, 2006 to object to the Motion. Upon consideration, it is

ORDERED AND ADJUDGED THAT:

1.     The Motion is granted.

2.     The Debtors are authorized to assume the following contracts on the terms set forth in the Motion pursuant to 11 U.S.C. § 365(a), subject to the occurrence of, and effective as of, the later of the effective date of the Debtors' joint plan of reorganization and the date of entry of this Order (the "Effective Date"): (a) the 5/16/02 Contract as amended by the Amendment to Master Contract for Electric Service Dated May 16, 2002 between APCO and Winn-Dixie dated October 12, 2006, (b) the Master Contract for Electric Power Service (Rate Rider LTC) between APCO and WD Montgomery dated February 23, 1996 as amended by the Amendment to Master Contract for Electric Power Service (Rate Rider LTC) Dated February 23, 1996 between APCO and WD Montgomery dated October 12, 2006, (c) the Master Contract for Electric Power Service between APCO and WD Montgomery dated August 8, 1997, and associated Electric System Lease Agreement and Standby Generator Program Agreement each dated September 3, 1997, and (d) the Contract for Electric Power between APCO and WD Montgomery dated April 15, 1997 ((a) through (d) collectively,

---

[1] All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Motion.

2

"Operating Store Electricity Contracts"). The Debtors' assumption of the Operating Store Electricity Contracts as of, and upon the occurrence of, the Effective Date is approved.

3. On, or as soon as is practicable after the Effective Date, the Debtors shall pay to APCO $861,747.34 as cure relating to the assumption of the Operating Store Electricity Contracts (the "Cure").

4. For purposes of 11 U.S.C. § 365(b)(1), the only cure or compensation amount owed by the Debtors with respect to the Operating Store Electricity Contracts is the Cure described above, and APCO is deemed to have waived any and all claims it may have against the Debtors for cure or compensation under the Operating Store Electricity Contracts except for the Cure, any postpetition performance becoming due under the Operating Store Electricity Contracts, and any Section 502(h) Claims as set forth in paragraph 5.

5. The agreements by APCO described in the Motion shall not negate the impact of assumption on any claims held by the Debtors against APCO or otherwise expose APCO to potential preference actions with respect to payments made on account of the Operating Store Electricity Contracts. Upon assumption of the Operating Store Electricity Contracts and notwithstanding the agreements described in the Motion, APCO will be entitled to an administrative claim for cure for any Section 502(h) Claims.

6. The First Assumption Motion as it pertains to the 5/16/02 Contract and the APCO Objection are hereby deemed withdrawn.

7. The Debtors are authorized to reject the 11/5/96 Contract pursuant to 11 U.S.C. § 365(a), and the 11/5/96 Contract is deemed rejected, effective as of October 25, 2006.

8. APCO is deemed to have an allowed prepetition non-priority unsecured rejection damages claim in the amount of $51,875.83 on account of the rejection of the

11/5/96 Contract (the "Rejection Damages").  Logan & Company, Inc., as Claims Agent, is directed to enter on the claims register maintained in these cases, a $51,875.83 prepetition non-priority unsecured claim in favor of APCO without the need for APCO to file a proof of claim.  Except for the Rejection Damages, APCO is hereby deemed to waive any further claim for damages resulting from the rejection of the 11/5/96 Contract.

9. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

10. The Court retains jurisdiction to hear and determine all matters arising from the implementation of this Order.

11. Notwithstanding any provisions to the contrary in the Federal Rules of Bankruptcy Procedure, including Rule 6006(d), this Order shall take effect immediately upon entry.

12. In the event the Debtors' joint plan of reorganization is not confirmed or does not become effective, paragraphs (1) through (6) of this Order shall be null and void.

Dated October ___, 2006 in Jacksonville, Florida.

                                                  Jerry A. Funk
                                                  United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties included
on the Master Service List.