**EXHIBIT "A" (part 1)**

RECORD & RETURN TO
LAND AMERICA SVC. CTR.
10550 DEERWOOD PK. BLVD
SUITE 309
JACKSONVILLE, FL 32256

R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295 PAGE: 01800
SEP 13 1999 10:20 AM

BK: R2295  PG: 01800

## OPEN-END MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING

From

TALLAHASSEE 99-FL, LLC
as mortgagor,



Documentary Tax Pd. $11855.90
$6774.69 Intangible Tax Pd.
Dave Lang, Clerk, Leon County
By m20 Deputy Clerk

To

FIRST SECURITY BANK, NATIONAL ASSOCIATION
and
VAL T. ORTON,
as trustees,
as mortgagee

Dated as of August 26, 1999

R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314 PAGE: 01181
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS

This instrument prepared by and
Recording requested by and
when recorded return to:
Alan C. Sheppard, Jr., Esq.
LEBOEUF, LAMB, GREENE & MACRAE, L.L.P.
50 North Laura Street, Suite 2800
Jacksonville, Florida 32202



BK: R2314  PG: 01181

JK 126908.2 80130 02051

Store #0124, Tallahassee,
Leon County, Florida



R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295    PAGE: 01001
SEP 13 1999 10:29 AM
DAVE LANG, CLERK OF COURTS
BK: R2295    PG: 01001

TABLE OF CONTENTS

R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314    PAGE: 01182
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS
BK: R2314    PG: 01182

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

GRANTING CLAUSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   Granting Clause First . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   Granting Clause Second . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   Granting Clause Third . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   Granting Clause Fourth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARTICLE 1   Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   "Alterations" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   "Assignment" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   "Claims" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   "default" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   "Environmental Laws" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   "Event of Default" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   "Expansion Notes" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   "Grant" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   "Guarantor" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   "Guaranty" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   "Hazardous Condition" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   "Hazardous Substances" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   "Improvements" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   "Indenture" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   "Installment Payments" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   "Institutional Investor" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   "Interest Payment" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   "Landlord's Equipment" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   "Land Parcel" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   "Lease" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   "Lessee" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   "Letter Agreement" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   "lien of this Mortgage" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   "Make Whole Amount" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   "Mortgaged Property" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   "Mortgagee" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   "Mortgagor" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   "Net Award" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   "Net Proceeds" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   "Note Agreement" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   "Note Holder" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7



R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295    PAGE: 01002
SEP 13 1999 10:20 AM
DAVE LANG, CLERK OF COURTS
BK: R2295  PG: 01002

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
"Notes" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
"Original Notes" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
"outstanding" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
"Owner" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
"Permitted Exceptions" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
"Person" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
"Property" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
"Purchase Offer" . . . . . . . . . . R990090110 . . . . . . . . . . . . . . . . 9
"Remedial Work" . . . . . . . . . RECORDED IN . . . . . . . . . . . . . . . . . 9
                                  PUBLIC RECORDS LEON CNTY FL
                                  BOOK: R2314    PAGE: 01103
"Rent" . . . . . . . . . . . . . . NOV 04 1999 04:37 PM . . . . . BK: R2314  PG: 01103 . . . 9
"Store Expansion" . . . . . . . . DAVE LANG, CLERK OF COURTS . . . . . . . . . 9
"Substitution Date" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
"Successor Owner" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
"Tenant's Equipment" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
"Trustee" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
"Trustees" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
"Winn-Dixie" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARTICLE 2    The Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
             Section 2.1    The Notes . . . . . . . . . . . . . . . . . . . . . 9
             Section 2.2    Certificate of Authentication . . . . . . . . . . . 10

ARTICLE 3    Particular Covenants . . . . . . . . . . . . . . . . . . . . . . . 11
             Section 3.1    Title to the Mortgaged Property . . . . . . . . . . 11
             Section 3.2    Further Assurances . . . . . . . . . . . . . . . . . 11
             Section 3.3    Recording . . . . . . . . . . . . . . . . . . . . . 12
             Section 3.4    Payment of the Notes . . . . . . . . . . . . . . . . 12
             Section 3.5    The Lease . . . . . . . . . . . . . . . . . . . . . 12
             Section 3.6    Existence; Compliance with Laws . . . . . . . . . . 12
             Section 3.7    After-acquired Property . . . . . . . . . . . . . . 13
             Section 3.8    Taxes . . . . . . . . . . . . . . . . . . . . . . . 13
             Section 3.9    Insurance . . . . . . . . . . . . . . . . . . . . . 14
             Section 3.10   Advances by Mortgagee . . . . . . . . . . . . . . . 14
             Section 3.11   Negative Covenants . . . . . . . . . . . . . . . . . 14
             Section 3.12   Lease Rent . . . . . . . . . . . . . . . . . . . . .
             Section 3.13   Financial Statements; Books and Records;
                            Notice of Default . . . . . . . . . . . . . . . . . 15
             Section 3.14   Maintenance and Repair . . . . . . . . . . . . . . . 15
             Section 3.15   Security Agreement; Fixture Filing . . . . . . . . . 16
             Section 3.16   Environmental Compliance . . . . . . . . . . . . . . 16
             Section 3.17   Successor Owner; Separate Existence . . . . . . . . 18

JK 128906.2 80130 02051

Store #0124, Tallahassee,
Leon County, Florida



R99O073097
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295    PAGE: 01803
SEP 13 1999 10:20 AM
DAVE LANG, CLERK OF COURTS    BK: R2295    PG: 01803

| ARTICLE 4 | Possession, Use and Release of the Property | 18 |
| | Section 4.1 | Lease Termination | 18 |
| | Section 4.2 | Condemnation | 20 |
| | Section 4.3 | Transfer of Property | 20 |
| | Section 4.4 | Substitution of Properties | 21 |
| | Section 4.5 | Release of the Property | 21 |
| | Section 4.6 | Expansion Notes | 21 |

| ARTICLE 5 | Application of Moneys | 23 |
| | Section 5.1 | Moneys Under the Lease or Guaranty | 23 |
| | Section 5.2 | Purchase Price | 23 |
| | Section 5.3 | Proceeds of Insurance Condemnation Awards, Proceeds of Mortgage Title Insurance | 24 |
| | Section 5.4 | Other Purchase Price Payment | 24 |

| ARTICLE 6 | Prepayment of Notes | 24 |
| | Section 6.1 | Prepayments Generally | 24 |
| | Section 6.2 | Notice of Prepayment: Deposit of Money | 24 |
| | Section 6.3 | Optional Prepayment | 25 |

| ARTICLE 7 | Events of Default and Remedies | 25 |
| | Section 7.1 | Events of Default | 25 |
| | Section 7.2 | Application of Proceeds | 30 |
| | Section 7.3 | Purchase by Mortgagee | 30 |
| | Section 7.4 | Receivers | 30 |
| | Section 7.5 | Remedies Cumulative | 30 |
| | Section 7.6 | Waiver of Rights | 31 |
| | Section 7.7 | Suits by Mortgagee | 31 |
| | Section 7.8 | Mortgagor's Cure Rights | 31 |

| ARTICLE 8 | Miscellaneous | 32 |
| | Section 8.1 | Immunity from Liability | 32 |
| | Section 8.2 | Notices; Modifications; Waiver | 32 |
| | Section 8.3 | Illegal Provision | 33 |
| | Section 8.4 | Maximum Interest Payable | 33 |
| | Section 8.5 | Satisfaction | 33 |
| | Section 8.6 | Binding Effect | 34 |
| | Section 8.7 | Counterparts | 34 |
| | Section 8.8 | Table of Contents; Headings | 34 |
| | Section 8.9 | Governing Law | 34 |
| | Section 8.10 | Exhibits and Schedules | 34 |
| | Section 8.11 | Future Advances | 34 |

R99O090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314    PAGE: 01184
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS

BK: R2314    PG: 01184

JK 128906.2 00130 02051

Store #0124, Tallahassee,
Leon County, Florida

R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK. R2295    PAGE: 01804
SEP 13 1999 10:20 AM
DAVE LANG. CLERK OF COURTS



BK: R2295    PG: 01804

### Exhibits and Schedules

| | |
|---|---|
| Exhibit A | Legal Description of Land Parcel |
| Schedule A-1 | Form of Secured Note |
| Schedule A-2 | Form of Expansion Note |

R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK  R2314    PAGE: 01185
NOV 04 1999 04:37 PM
DAVE LANG. CLERK OF COURTS

BK: R2314    PG: 01185



JX 128906.2 80130 02051

Store #0124, Tallahassee,
Leon County, Florida

R990973897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295    PAGE: 01885
SEP 13 1999 10:20 AM  BK: R2295  PG: 01885
DAVE LANG, CLERK OF COURTS



THIS OPEN-END MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING, dated as of August 36, 1999 (herein, together with all amendments and supplements thereto, called this "Mortgage"), from TALLAHASSEE 99-FL, LLC, a Delaware limited liability company (herein, together with its successors and assigns called "Mortgagor" and together with its successors as owner of any interest in the Property (as hereinafter defined) including any transferees and Successor Owners (as hereinafter defined) called "Owner"), having an address at c/o Principal Net Lease Investors, L.L.C., 711 High Street, Des Moines, Iowa 50392-0301 Attention: Gary Lines, as mortgagor, to FIRST SECURITY BANK, National Association, as trustee, and VAL T. ORTON, as individual trustee (herein, together with their respective successors and assigns, collectively called "Mortgagee"), having an address at 79 South Main Street, Salt Lake City, Utah 84111.

PRELIMINARY STATEMENT

Defined terms used herein but not otherwise defined have the meanings set forth in Article 1.

Mortgagor has acquired a fee simple interest in the Land Parcel and in the Improvements located and to be located thereon. In order to reimburse itself for a portion of the cost of acquiring and financing its interests in the Property, Mortgagor has sold to the Note Purchasers pursuant to the Note Agreement an aggregate original principal amount of $3,387,345.21, of its 7.57% Secured Notes Due June 1, 2019 (the "Secured Notes"). The Secured Notes (together with any notes or notes issued in exchange or substitution therefor pursuant to the Indenture are herein collectively called the "Original Notes").

Mortgagor is duly authorized to issue the Notes and to execute and deliver this Mortgage, and all actions required by law and all actions of Mortgagor required therefor have been duly taken.

GRANTING CLAUSES

NOW, THEREFORE, THIS MORTGAGE WITNESSETH: that Mortgagor, in consideration of the premises, the purchase and acceptance of Notes by the Note Purchasers and the acceptance by the Mortgagee of the trusts created by the Indenture and this Mortgage, and in order to secure the payment of the principal and interest and any Make Whole Amount and other sums payable on the Notes (including any renewals, extension or modification thereof and all future advances which may subsequently be made hereunder or under the Indenture) and in order to secure the performance of all of the covenants and agreements to be performed or observed by Mortgagor or any other Owner pursuant to the Notes, the Note Agreement, this Mortgage, the Assignment and the Indenture, has executed and delivered this Mortgage.

Mortgagor has created and granted a security interest in favor of Mortgagee in, and has granted, mortgaged and warranted, conveyed, assigned, bargained, sold, pledged,

JK 128906.2 80450 02051    R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314    PAGE: 01185
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS
BK: R2314  PG: 01186
Store #0124, Tallahassee,
Leon County, Florida



R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: 02295   PAGE: 01806
SEP 13 1999 10:20 AM   BK: R2295   PG: 01806
DAVE LANG, CLERK OF COURTS

given, transferred and set over, and by these presents does hereby create and grant a security interest in favor of Mortgagee in, and does hereby grant, mortgage and warrant, convey, assign, bargain, sell, pledge, give, transfer and set over unto Mortgagee, for the equal and ratable benefit and security of the Notes, the property described in the following Granting Clauses, subject only to Permitted Exceptions of the character described in clauses (a) through (d) of the definition of Permitted Exceptions.

### Granting Clause First

The entire right, title and interest of Mortgagor and any other Owner in and to the land parcel described in Exhibit A attached hereto (the "Land Parcel"), together with (a) all right, title and interest of Mortgagor and any other Owner in and to all buildings, structures and other improvements now standing or at any time hereafter constructed or placed upon the Land Parcel, including, without limitation, all right, title and interest of Mortgagor and any other Owner in and to all building equipment and building fixtures of every kind and nature on the Land Parcel or in any such building, structure or other improvements including Landlord's Equipment but excluding Tenant's Equipment (said buildings, structures, other improvements and building equipment, building fixtures and Landlord's Equipment being herein collectively called the "Improvements"); (b) all fixtures, fittings, appliances, apparatus, equipment, machinery and articles of personal property and replacements thereof now or at any time hereafter owned by Mortgagor and any other Owner, now or at any time hereafter affixed to, attached to, placed upon, or used in any way in connection with the complete and comfortable use, enjoyment, occupancy or operation of the Improvements on the Property including Landlord's Equipment but excluding Tenant's Equipment; (c) all right, title and interest of Mortgagor and any other Owner, in and to all and singular the tenements, hereditaments, easements, rights-of-way, rights, privileges and appurtenances in and to the Property, now or at any time hereafter belonging or in any way appertaining thereto, and all right, title and interest of Mortgagor and any other Owner in, to and under any streets, ways, alleys, vaults, gores or strips of land adjoining the Land Parcel; (d) all claims or demands of Mortgagor and any other Owner, in law or in equity, in possession or expectancy of, in and to the Property; and (e) all rents, income, revenues, issues, awards, proceeds and profits from and in respect of the property described in this Granting Clause First, all of which are hereby specifically assigned, transferred and set over to Mortgagee, it being the intention of the parties hereto that, so far as may be permitted by law, all property of the character hereinabove described which is now owned or held or is hereafter acquired by Mortgagor or any other Owner and is affixed, attached and annexed to the Property shall be and remain or become and constitute a portion of the Mortgaged Property and the security covered by and subject to the lien hereof. The Land Parcel, together with the Improvements and Landlord's Equipment located and to be located thereon described in this Granting Clause First, are herein called the "Property".

### Granting Clause Second

R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314   PAGE: 01187
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS



BK: R2314   PG: 01187

Store #0124, Tallahassee,
Leon County, Florida

JK 128906.2 80130 02051

2

R990073897
RECORDED IN
PUBLIC RECORDS LEON CITY FL
BOOK: R2295         PAGE: 01807
SEP 13 1999 10:20 AM
DAVE LANG, CLERK OF COURTS
BK: R2295  PG: 01807



The entire right, title and interest of Mortgagor and any other Owner in and to the Lease and the Guaranty, if any, including the right to all extensions and renewals of the term of the Lease including, without limitation, the present and continuing right (i) to make claim for, collect, receive and receipt for any and all of the rents, income, revenues, issues, awards, proceeds and profits and other sums of money payable or receivable by the lessor under the Lease or pursuant to the Guaranty, if any, whether payable as rent or otherwise, including, without limitation, sums of money receivable thereunder or pursuant thereto by virtue of paragraphs 7(f), 7(9) and 10 of the Lease, (ii) to accept or reject any offers made pursuant to the Lease to purchase any interest in the Property, (iii) to bring actions and proceedings under the Lease or the Guaranty, if any, or for the enforcement thereof, (iv) to pursue and collect any claim in the bankruptcy or other insolvency proceeding of Lessee or Guarantor and (v) to do anything which Mortgagor and any other Owner or any lessor is or may become entitled to do under the Lease or pursuant to the Guaranty, if any, provided that the assignment made by this Granting Clause Second shall not impair or diminish any obligation of Mortgagor or any other Owner under the Lease, the Assignment or the Guaranty, if any, nor shall any such obligation be imposed upon Mortgagee.

### Granting Clause Third

Any and all moneys and other property which may from time to time become subject to the lien hereof or which may come into the possession or be subject to the control of Mortgagee pursuant to this Mortgage, the Assignment, the Guaranty, if any, the Letter Agreement or any other instrument included in the Mortgaged Property, including, without limitation (but subject to the terms and provisions of the Lease), insurance proceeds and all awards which may at any time be made or assigned to Mortgagor and any other Owner for the taking by eminent domain of the whole or any part of the Property or any interest or easement therein, and other property, if any, delivered to Mortgagee by or on behalf of Mortgagor and any other Owner, it being the intention of Mortgagor and any other Owner and it being hereby agreed that all property hereafter acquired by Mortgagor or any other Owner (including, without limitation, all right, title and interest of Mortgagor or any other Owner in and to any Store Expansion) and required to be subjected to the lien of this Mortgage or intended so to be shall forthwith upon the acquisition thereof by Mortgagor or any other Owner be subject to the lien of this Mortgage as if such property were now owned by Mortgagor or any such other Owner and were specifically described in this Mortgage and Granted hereby or pursuant hereto.

### Granting Clause Fourth

All products, accessions, rents, issues, profits, returns, income and proceeds of and from any and all of the foregoing (including proceeds which constitute property of the types described in Granting Clauses First, Second and Third above).

Any person acquiring any right, title or interest in or to any interest in the Property, by acceptance of a transfer or conveyance of such interest confirms the Grant to Mortgagee contained in these Granting Clauses

JK 129908.2 80130 02051   R990090110
RECORDED IN
PUBLIC RECORDS LEON CITY FL
BOOK: R2314   PAGE: 01188
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS

...tore #0124, Tallahassee,
Leon County, Florida

3

BK: R2314  PG: 01188

R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK  R2295   PAGE- 01808
SEP 13 1999 10:20 AM   BK: R2295  PG: 01808
DAVE LANG, CLERK OF COURTS

TO HAVE AND TO HOLD the Mortgaged Property, whether now owned or held or hereafter acquired, unto Mortgagee and its successors and assigns for the equal and ratable benefit and security of the Notes without preference, priority or distinction as to lien or otherwise unless otherwise specifically provided herein or in such Notes.

PROVIDED ALWAYS and these presents are upon the express condition that if Mortgagor will pay to Mortgagee all indebtedness from time to time evidenced and secured by the Notes and will promptly and fully perform, execute and complete each and every covenant, agreement, obligation, condition and stipulation contained in this Mortgage and the Notes, then this Mortgage and the estate hereby created will cease and be null and void; otherwise the same will remain in full force and effect.

IT IS HEREBY COVENANTED, DECLARED AND AGREED that the Notes are to be secured by this Mortgage and that the Mortgaged Property is to be held by Mortgagee upon and subject to the provisions of this Mortgage.

## ARTICLE 1
### Definitions

Unless the context otherwise requires, the following terms have the meanings herein specified, such definitions to be applicable equally to the singular and the plural nouns and verbs of any tense:

"Alterations" shall have the meaning specified in the Lease.

"Assignment" means the Assignment of Lease and Agreement, relating to the Lease, and the Guaranty, if any, dated as of the date hereof, from Mortgagor, as assignor, to Mortgagee, as assignee, and consented to therein by Lessee, and Winn-Dixie, if applicable, which assigns the Lease, and any such Guaranty, as additional security for the Notes, as the Assignment may be amended or supplemented from time to time as permitted hereby or thereby.

"Claims" means, individually and collectively, any claims, actions, administrative proceedings, judgments, damages, punitive damages, penalties, fines, costs, liabilities, sums paid in settlement, interest, losses or expenses (including reasonable attorneys' fees and costs, whether incurred in enforcing this Mortgage, collecting any sums due hereunder, settlement negotiations, at trial or on appeal), consultant fees and expert fees, together with all other costs and expenses of any kind or nature, that arise directly or indirectly from or in connection with the existence or suspected existence of a Hazardous Condition, whether occurring or suspected to have occurred before, on or after the date of this Mortgage or caused by any person or entity. Without limiting the generality of the foregoing definition, Claims specifically include claims, whether by related or third parties, for personal injury or real or personal property damage, and capital, operating and maintenance costs incurred in connection with any Remedial Work. Notwithstanding the foregoing, Claims does not include claims, actions, administrative proceedings, judgments,

JK 125900.2 80130 02051   R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314   PAGE: 01189
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS

4


BK: R2314  PG: 01189

Store #0124, Tallahassee,
Leon County, Florida

R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295   PAGE: 01889
DADE LAND, CLERK OF COURTS
SEP 13 1999 10:20 AM
BK: R2295   PG: 01889



damages, punitive damages, penalties, fines, costs, liabilities, sums paid in settlement, interest, losses or expenses, that arise in connection with any Hazardous Condition which is determined by proper judicial or administrative procedure to have been introduced to the Property after indefeasible payment in full of the Notes or during any period Mortgagee is in possession of the Property to the exclusion of Owner and Lessee after an Event of Default has occurred.

"default" means any act or occurrence which, with notice, lapse of time or both, would constitute an Event of Default.

"Environmental Laws" has the meaning specified in the Lease.

"Event of Default" means any act or occurrence of the character specified in Section 7.1 (a) through 7.1 (k).

"Expansion Notes" means Notes issued by Owner pursuant to Section 4 6 hereof to finance the cost to Owner of acquisition of additions and Alterations to the Property of Improvements, land and Landlord's Equipment made by Lessee pursuant to paragraph 28 of the Lease as part of a Store Expansion, together with any note or notes issued in exchange or substitution therefor pursuant to the Indenture.

"Grant" means grant, mortgage and warrant, convey, assign, grant and create a lien or security interest in, bargain, sell, pledge, give, transfer and set over.

"Guarantor" means Winn-Dixie Stores, Inc., a Florida corporation.

"Guaranty" means the guaranty by Guarantor of Lessee's obligations under the Lease (if Lessee is not Winn-Dixie Stores, Inc.), substantially in the form attached as Exhibit H to the Note.

"Hazardous Condition" means the presence, discharge, disposal, storage or release of any Hazardous Substance on or in the Property, air, soil, groundwater, surface water or soil vapor on or about the Property, or which migrates, flows, percolates, diffuses or in any way moves onto or into the Property, air, soil, groundwater, surface water or soil vapor on or about the Property, or from the Property into adjacent or other property.

"Hazardous Substances" means any hazardous or toxic substances, materials or wastes, including without limitation any flammable explosives, radioactive materials, friable asbestos, kepone, polychlorinated biphenyls (PCB's), electrical transformers, batteries, paints, solvents, chemicals, petroleum products, or other man-made materials with hazardous, carcinogenic or toxic characteristics, and such other solid, semi-solid, liquid or gaseous substances which are radioactive, toxic, ignitable, corrosive, carcinogenic or otherwise dangerous to human, plant or animal health or well-being, and those substances, materials and wastes listed in the United States Department of Transportation Table (49 CFR 972.101) or by the Environmental Protection Agency, as hazardous

JK 120908.3 B0130 02881
R990098110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314   PAGE: 01190
NOV 04 1999 04:37 PM
DADE LAND, CLERK OF COURTS

5

Store #0124, Tallahassee,
Leon County, Florida

BK: R2314   PG: 01190



R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK. R2295    PAGE. 01810
SEP 13 1999 10:20 AM    BK: R2295    PG: 01810
DAVE LANG, CLERK OF COURTS

substances (40 CFR Part 302, and amendments thereto) or such substances, materials and wastes which are or become regulated under any applicable local, State or federal law, including without limitation any material, waste or substance which is (i) petroleum, (ii) asbestos, (iii) PCB's, (iv) designated as a "hazardous substance," "hazardous waste," "hazardous materials," "toxic substances," "contaminants," or (v) other pollution under any applicable Environmental Laws.

"Improvements" has the meaning specified in Granting Clause First.

"Indenture" means the Indenture, dated as of the date hereof, from Mortgagor to Mortgagee, as trustees, together with all supplements and amendments thereto.

"Installment Payments" has the meaning specified in the Notes

"Institutional Investor" means any of the following persons existing under the laws of the United States or any state thereof or of the District of Columbia or Canada or any province thereof: (i) any bank, trust company, national banking association or savings and loan association, acting for its own account or in a fiduciary capacity, (ii) any charitable foundation, eleemosynary institution, church or fraternal order, (iii) any insurance company, (iv) any pension, profit-sharing, retirement trust or fund for which any bank, trust company, national banking association or saving and loan association or investment advisor registered under the Investment Advisers Act of 1940, as amended, is acting as trustee or agent, or if self-managed, having funds of at least $100,000,000, (v) any investment company, as defined in the Investment Company Act of 1940, as amended, (vi) any college or university, or (vii) any government, any public employees' pension or retirement system, or any other governmental agency supervising the investment of public funds.

"Interest Payment" has the meaning specified in the Notes.

"Landlord's Equipment" has the meaning specified in the Lease.

"Land Parcel" has the meaning specified in Granting Clause First.

"Lease" means the lease of the Property, dated as of the date hereof, between Mortgagor, as lessor, and Lessee, as lessee, as amended or supplemented from time to time as permitted hereby or thereby, together with any short form or memorandum thereof for purposes of recording

"Lessee" means Winn-Dixie.

"Letter Agreement" means the letter of Winn-Dixie, dated as of the date hereof, in favor of Owner and Mortgagee, related to the Property, pursuant to which Winn-Dixie agrees to pay certain costs and expenses associated with the transactions contemplated by the Note Agreement, the Indenture and this Mortgage.

JX 128908.2 80130 02051    R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314    PAGE: 01191
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS

6

BK: R2314    PG: 01191

Store #0124, Tallahassee,
Leon County, Florida

R998073997
RECORDED IN
PUBLIC RECORDS LEON CITY FL
BOOK: R2295    PAGE: 01811
SEP 13 1999 10:20 AM    BK: R2295    PG: 01811
BOB INZER, CLERK OF COURTS

"lien of this Mortgage" and terms of like import mean the lien or security interest, or other interest or charge Granted to Mortgagee hereby (including the after-acquired property clauses hereof or subsequently Granted hereunder or pursuant hereto to Mortgagee).

"Make Whole Amount" means an amount equal to the greater of (x) the amount, if any, by which (i) the present value of all future payments of principal and interest due on that portion of the unpaid principal amount of each Note to be prepaid, payable from the date of prepayment to the Maturity Date of such Note calculated by discounting each such future payment from the due date thereof to such date of prepayment at a rate per annum equal to 50 basis points over the Treasury Constant Maturity Yield Index as defined below exceeds (ii) 100% of that portion of the principal amount of such Note to be prepaid on the date of prepayment and (y) 0.5% of the amount of principal to be so prepaid.

For purposes of this definition, the "Treasury Constant Maturity Yield Index" shall mean (i) the yields reported, as of 10:00 a.m. (New York City time) on the third Business Day preceding the date of prepayment, on the display designated as "USD" on the Bloomberg Financial Markets Commodities News Screen or the equivalent screen provided by Bloomberg Financial Markets News (or any nationally recognized publicly available on-line source of similar market data) for actively traded U.S. Treasury securities having a maturity equal to the remaining average life of the Note to be prepaid, or (ii) if such yields are not reported as of such time or the yields reported as of such time are not ascertainable, the Treasury Constant Maturity Series Yields reported, for the latest day for which such yields have been so reported as of the third Business Day preceding the date of prepayment, in Federal Reserve Statistical Release H.15 (519) (or any comparable successor publication) for actively traded U.S. Treasury Securities having a maturity equal to the remaining average life of such Note. Such implied yield will be determined, if necessary, by (a) converting U.S. Treasury bill quotations to bond equivalent yields in accordance with accepted financial practice and (b) interpolating linearly between (1) the actively traded U.S. Treasury security having a maturity closest to and greater than the remaining average life of such Note and (2) the actively traded U.S. Treasury security having a maturity closest to and less than the remaining average life of such Note.

"Mortgaged Property" means the property subject or intended to be subject at any time to the lien hereof.

"Mortgagee" has the meaning specified in the first sentence hereof.

"Mortgagor" has the meaning specified in the first sentence hereof.

"Net Award" has the meaning specified in the Lease.

"Net Proceeds" has the meaning specified in the Lease.

JK 120920.2 00150 02051    R998090110
RECORDED IN
PUBLIC RECORDS LEON CITY FL
BOOK: R2314    PAGE: 01192
NOV 04 1999 04:37 PM
BOB INZER, CLERK OF COURTS

7    BK: R2314    PG: 01192

Store #0124, Tallahassee,
Leon County, Florida



R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK. R2295    PAGE  01812
SEP 13 1999 10:20 AM
DAVE LANG. CLERK OF COURTS    BK: R2295   PG: 01812

"Note Agreement" means the Note Purchase Agreement, dated as of the date hereof between Mortgagor and each of the Note Purchasers providing for the purchase and sale of the Original Notes to finance the reimbursement to Mortgagor of a portion of the cost previously incurred by Mortgagor to acquire the Property.

"Note Holder" means any registered holder of a Note determined pursuant to the Indenture.

"Note Purchasers" means John Hancock Mutual Life Insurance Company, John Hancock Variable Life Insurance Company, and John Hancock Reassurance Company, Ltd , as purchasers of the Original Notes.

"Notes" means the Original Notes together with the Expansion Notes.

"Original Notes" has the meaning specified in the Preliminary Statement and are described in Section 2.1.

"outstanding" means, as of any particular time, Notes theretofore issued pursuant to Article 2 and the Indenture and secured hereby except: (i) Notes theretofore duly surrendered pursuant to the Indenture for cancellation; (ii) Notes theretofore paid in full or required to be prepaid in full within 30 days (provided that cash sufficient for such prepayment shall theretofore have been deposited with Mortgagee); (iii) Notes in exchange or substitution for which other Notes shall have been issued pursuant to the Indenture; and (iv) Notes registered in the name of Owner, Winn-Dixie or their respective nominees or any affiliate of Owner, Winn-Dixie or any person which is the owner of greater than 10% of the voting interests in Owner or Winn-Dixie.

"Owner" has the meaning specified in the Preliminary Statement and includes Mortgagor.

"Permitted Exceptions" means:

(a)    easements, rights-of-way, servitudes, other similar reservations, rights and restrictions and other minor defects and irregularities in the title to the Property, or zoning laws or use regulations, none of which materially lessen the value of the Property or materially impair the use thereof for the purposes for which held by Owner and leased to Lessee under the Lease, including those matters set forth in Schedule B, Part I of the loan title insurance policy relating to the Property issued to Mortgagee pursuant to Section 6.4 of the Note Agreement in connection with issuance of the Original Notes;

(b)    any condemnation right reserved to or vested in any municipality or public authority with respect to the Property or any interest therein;

(c)    any liens for taxes, assessments and other governmental charges and any liens of mechanics, materialmen and laborers for work or services performed or

JK 128905.2 80130 02061    R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK. R2314    PAGE: 01193
NOV 04 1999 04:37 PM
DAVE LANG. CLERK OF COURTS    8



BK: R2314   PG: 01193

Store #0124, Tallahassee,
Leon County, Florida



R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295    PAGE: 01813
SEP 13 1999 10:29 AM
DAVE LANG, CLERK OF COURTS
BK: R2295    PG: 01813

materials furnished in connection with the Property which are not delinquent or the existence, amount or validity of which is being contested by Lessee pursuant to, and as permitted by, the Lease;

(d)    the rights of Lessee under the Lease;

(e)    the lien hereof and any rights granted hereby; and

(f)    the Assignment.

"Person" or "person" means an individual, partnership, limited liability company, corporation, trust, estate, unincorporated association, syndicate, joint venture or organization, or a government or any department or agency thereof.

"Property" has the meaning specified in Granting Clause First.

"Purchase Offer" has the meaning specified in the Lease.

"Remedial Work" means any investigation or monitoring of site conditions, any clean-up, containment, remediation, removal or restoration work required or performed by any federal, state or local governmental agency or political subdivision or performed by any nongovernmental entity or person due to the existence or suspected existence of a Hazardous Condition.

"Rent" has the meaning specified in the Lease.

"RVI" means R V I. America Insurance Company, its successors and/or assigns.

"Store Expansion" has the meaning specified in the Lease.

"Substitution Date" has the meaning specified in the Lease.

"Successor Owner" means an Owner other than Mortgagor.

"Tenant's Equipment" has the meaning specified in the Lease.

"Trustee" means First Security Bank, National Association, a national banking association, together with its successor as trustee under the Indenture.

"Trustees" means the Trustee together with Val. T. Orton, as individual trustee under the Indenture, his successors and assigns as such trustee and any separate or co-trustee appointed pursuant to the Indenture.

JK 129908.2 091130 02051

R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314    PAGE: 01194
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS
BK: R2314    PG: 01194

9

Store #0124, Tallahassee,
Leon County, Florida

R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK  R2295      PAGE  01814
SEP 13 1999 10:20 AM    BK: R2295  PG: 01814
DAVE LANG, CLERK OF COURTS



"Winn-Dixie" means Winn-Dixie Stores, Inc., a Florida corporation, together with any entity succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entity.

## ARTICLE 2
### The Notes

Section 2.1    The Notes

    (a)    The Notes shall be substantially in the form set forth in Schedules A-1 and A2 hereto and may have such letters, numbers, other marks of identification or legends as the Owner issuing such Notes may reasonably request, subject to the approval of the Trustee.

    (b)    The Secured Notes shall:

    (i)    be designated the 7.57% Secured Notes Due June 1, 2019, and shall be limited in aggregate original principal amount to $3,387,345.21.

R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314      PAGE  01195
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS

    (ii)    be issuable only as fully registered Notes in denominations of $50,000 or any amount in excess thereof;

    (iii)    be dated the date of issuance thereof (except as provided in Section 2.7 of the Indenture);



BK: R2314  PG: 01195

    (iv)    mature, unless sooner paid in full pursuant to the Indenture or this Mortgage, on June 1, 2019;

    (v)    bear interest on the unpaid principal amount thereof from the date of issuance thereof to maturity at the rate of 7.57% per annum (computed on the basis of a 360-day year consisting of twelve 30day months);

    (vi)    be due and payable in one payment of interest accrued and unpaid thereon on September 1, 1999 and be due and payable as to principal and accrued and unpaid interest, on December 1, 1999 and on the first day of each March, June, September and December thereafter to and including March 1, 2019 in seventy-eight equal (as nearly as may be) Installment Payments of principal and interest, plus a balloon Installment Payment of principal and interest on June 1, 2019 such that, upon the due and punctual payment thereof, there shall have been paid to the Note Holder of each such Note 100% of the

R990873897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
20611 R2296   PAGE: 01815
SEP 13 1999 10:20 AM
DAVE LANG, CLERK OF COURTS
BK: R2296  PG: 01815



original principal amount thereof and all accrued interest thereon; and

(vii)    not be subject to prepayment except as expressly provided in this Mortgage.

(c)    each Expansion Note shall be of the series of Expansion Notes, be designed, be in such denominations, be dated, bear interest, mature, be due and payable as to interest and principal, and otherwise be as may be provided in the Indenture supplement and amendment to this Mortgage creating such series of Expansion Notes.

Section 2.2    Certificate of Authentication.    No Note shall be valid or become obligatory for any purpose or be binding upon Owner, or be entitled to the benefits and security of the Indenture, this Mortgage and the Assignment, unless and until such Note has been authenticated by the Trustee's execution of the certificate of authentication thereon in the form prescribed herein and in the Notes. The authentication and delivery by the Trustee of any Note shall be conclusive and the only competent evidence that such Note has been duly issued and is entitled to the benefits and security of the Indenture, this Mortgage and the Assignment.

### ARTICLE 3
### Particular Covenants

A.    Mortgagor and each Successor Owner hereby represents, warrants, covenants and agrees as follows:

Section 3.1    Title to the Mortgaged Property.    Owner has a good and marketable fee simple interest in and to the Property free and clear of all liens, encumbrances, charges and other exceptions to title except Permitted Exceptions. Owner has and will have full power and lawful authority to Grant the Mortgaged Property to Mortgagee in the manner and form herein done or intended. Owner will preserve its title to the Property subject only to Permitted Exceptions and except as permitted by this Mortgage, and Owner will forever warrant and defend the same to Mortgagee against the claims of all persons. This Mortgage constitutes a valid first lien on the Mortgaged Property, subject only to Permitted Exceptions of the character described in clauses (a) through (d) of the definitions of Permitted Exceptions.

Section 3.2    Further Assurances.    Owner will, at its expense, do, execute, acknowledge and deliver or cause to be done, executed, acknowledged and delivered all such further acts, instruments and assurances reasonably required by Mortgagee for the better Granting to Mortgagee of the Mortgaged Property or for carrying out the intention of, or facilitating the performance of, this Mortgage.

R990850110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
2021  A2314   PAGE: 01196
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS
JX 120802 00130 00051

BK: R2314   PG: 01196

Store #0124, Tallahassee,
Leon County, Florida

R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK  R2295    PAGE: 01816
SEP 13 1999 10:20 AM
DAVE LANG, CLERK OF COURTS

BK: R2295    PG: 01816



**Section 3.3**  **Recording**  Owner will, upon the execution and delivery hereof and thereafter from time to time, cause this Mortgage, the Lease (or a short form or memorandum thereof), the Assignment, each supplement and amendment to each of said instruments and financing statements and continuation statements with respect thereto (collectively called the Recordable Documents), to be recorded as may be required by law to publish notice of and maintain the lien hereof upon the Mortgaged Property and to publish notice of and protect the validity of the Lease and the Assignment. Owner will, from time to time, perform or cause to be performed any other act as required by law and will execute or cause to be executed any and all further instruments (including financing statements, continuation statements and similar statements with respect to any of said documents) requested by Mortgagee for such purposes. If Owner shall fail to comply with this Section, Mortgagee shall be and is hereby irrevocably appointed the agent and attorney-in-fact of Owner to comply therewith (including the execution, delivery and filing of such financing statements and other instruments), but this sentence shall not prevent any default in the observance of this Section from constituting a default. Owner will pay all recording taxes and fees incident thereto and all expenses, taxes and other governmental charges incident to or in connection with the preparation, execution, delivery or acknowledgment of the Recordable Documents, any instruments of further assurance and the Notes.

**Section 3.4**  **Payment of the Notes**.  Owner will punctually pay when due the principal, interest, Make Whole Amount, if any, and all other sums to become due in respect of the Notes in accordance with this Mortgage, the Indenture, the Notes, the Note Agreement and the Assignment.  Owner will punctually pay and perform its obligations under this Mortgage, the Assignment, the Indenture and the Note Agreement.

**Section 3.5**  **The Lease**.  At all times the Property shall be leased to Lessee under the Lease, provided that the Property may be subleased or the Lease assigned upon compliance with the terms of the Lease.  Owner will punctually perform all obligations, covenants and agreements by it to be performed as lessor under the Lease in accordance therewith, will at all times do all things necessary to compel performance by Lessee of all its obligations, covenants and agreements under the Lease and of Guarantor of all of its obligations, covenants and agreements under any Guaranty.  In the event notice of any obligations referred to in paragraph 12(a) of the Lease is given to Owner and not to Lessee, Owner covenants to give prompt notice thereof to Lessee.  Owner will maintain the validity and effectiveness of the assignment to Mortgagee of the Lease and any Guaranty made by this Mortgage, the Assignment and the Indenture, and (except as expressly permitted by the Lease, this Mortgage or the Assignment) will take no action, will permit no action to be taken by others and will not omit to take any action, which action or omission would release Lessee or Guarantor from its obligations or liabilities under the Lease, the Assignment or any Guaranty or would result in the termination, amendment or modification or impair the validity of the Lease, the Assignment or any Guaranty.

R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314    PAGE: 01197
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS

BK: R2314    PG: 01197

Store #0124, Tallahassee,
Leon County, Florida

JK 128906.2 80130 02051

R99073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295    PAGE: 01817
SEP 13 1999 10:28 AM
DAVE LANG, CLERK OF COURTS    BK: R2295  PG: 01817

Section 3.6  Existence; Compliance with Laws.  So long as Owner owns any interest in the Mortgaged Property, Owner will keep in full force and effect its existence, franchises, rights and privileges as a limited liability company or other entity under the laws of the state of its organization and its qualification to do business in the state in which the Property is located, and will do or cause to be done all things necessary to preserve and keep in full force and effect its right to own, lease, mortgage and grant and create a security interest in the Mortgaged Property and to enforce contracts in the state in which the Property is located. Except as otherwise permitted by Section 3.16, Owner will comply with or cause to be complied with (a) all laws, or other legal requirements or orders of the United States, or of any state or any other governmental authority applicable to Owner or the Property, and (b) all contracts, agreements or other instruments, applicable to Owner or the Property or to which Owner is a party or has given its consent, unless, in each case, Lessee is contesting such compliance in accordance with the Lease.

Section 3.7  After-acquired Property.  All right, title and interest of Owner in and to all improvements, alterations, substitutions, restorations and replacements of, and all additions and appurtenances to the Property (including, without limitation, all Alterations or Store Expansion, hereafter acquired by or released to Owner) immediately upon such acquisition or release and without any further Granting by Owner shall become part of the Property and the Mortgaged Property and shall be subject to the lien hereof fully, completely and with the same effect as though now owned by Owner and specifically described in the Granting Clauses hereof, and at any time Owner will execute and deliver to Mortgagee any document Mortgagee may require to subject the same to the lien hereof.

Section 3.8  Taxes.  Owner shall do or cause to be done everything necessary to preserve the lien hereof without expense to Mortgagee, including, without limitation, paying and discharging or causing to be paid and discharged, whether or not payable directly by Owner or subject to withholding at the source, (i) all governmental taxes (other than net income taxes of the Note Holders or the Trustees), assessments, levies, fees, water and sewer rents and charges and all other governmental charges, general, special, ordinary or extraordinary, and all charges for utility or communications services, which may at any time be assessed, levied or imposed upon Owner, the Mortgaged Property, this Mortgage, the Indenture, the Assignment, the indebtedness secured hereby or the revenues, rents, issues, income, awards, proceeds and profits of the Mortgaged Property or which may arise in respect of the occupancy, use, possession or operation of the Property or the Mortgaged Property (excluding income taxes and franchise taxes of Guarantor), (ii) all income, excess profits, sales, single business purpose, gross rents, gross receipts and other taxes, duties or imports, whether similar or not in nature (other than net income taxes of the Note Holders or the Trustees), assessed, levied or imposed by any governmental authority on Owner, the Mortgaged Property or the revenues, rents, issues, income, awards, proceeds and profits of the Mortgaged Property and (iii) all lawful claims and demands of mechanics, laborers, materialmen and others which, if unpaid, might create a lien on the Property, the Mortgaged Property, or on the revenues, rents, issues, income, awards, proceeds and profits of the Property or the Mortgaged Property, unless, in each

JX 123908 2 89930 00061    R99090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314    PAGE: 01199
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS

13    Store #0124, Tallahassee,
Leon County, Florida

BK: R2314  PG: 01199

R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295    PAGE: 01818
SEP 13 1999 10:20 AM
DAVE LANG, CLERK OF COURTS    BK: R2295    PG: 01818



case, Lessee is contesting the existence, amount or validity thereof in accordance with the Lease.

Section 3.9    Insurance.

(a)    Owner shall maintain or cause to be maintained with respect to the Property insurance of the character and with the coverage, provisions and mortgagee endorsements required to be maintained by Lessee under the Lease, whether or not the Lease shall be in effect; provided however, that so long as the Lease shall be in effect, Owner's obligations under this Section 3.9 (a) will be satisfied as, to the extent and so long as Lessee is entitled to elect and does elect to self-insure pursuant to paragraph 13(b) of the Lease.

(b)    Insurance claims by reason of damage to or destruction of the Property shall be adjusted by Lessee in accordance with the Lease, but Mortgagee shall have the right to join in adjusting any such claim and Owner shall, at Mortgagee's request and at Owner's expense, cooperate with Mortgagee in any such adjustment.

(c)    Owner shall not take out any separate insurance concurrent in form or contributing in the event of loss with that required to be maintained under this Section 3.9 unless Mortgagee is included therein as named insured, with loss payable to Mortgagee as provided in the Lease. Owner shall immediately notify Mortgagee whenever any such separate insurance is taken out, specifying the insurer and full particulars as to the policies evidencing the same, and shall deliver to Mortgagee the policies providing such insurance.

(d)    So long as Owner shall be required to maintain any insurance under this Section 3.9, Owner shall deliver or cause to be delivered to Mortgagee original copies of all policies of insurance or original certificates of insurance as may be required pursuant hereto to be maintained or to be caused to be maintained by Owner, and at least 30 days prior to the expiration of such insurance and within 10 days after the issuance of any additional policies or amendments or supplements to any of such policies, Owner will deliver or cause to be delivered original copies of the same (or certificates of the insurers under such policies evidencing the same) to Mortgagee.

Section 3.10  Advances by Mortgagee.  If Owner shall fail to perform or cause to be performed any of the covenants contained in Section 3.3, 3.6, 3.8 or 3.9, Mortgagee may (but shall not be obligated to) make advances to perform the same in Owner's behalf, and all sums so advanced shall be secured hereby; and Owner will repay on demand all sums so advanced on its behalf with interest at the rate per annum of 9.57% (or at the maximum rate not prohibited by law, whichever is less), such interest to be computed from and including the date of the making of such advance to and including the date of such repayment.

JK 128906.2 80130 02051

R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314    PAGE: 01199
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS

Store #0124, Tallahassee,
Leon County, Florida

BK: R2314    PG: 01199

14




R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295
SEP 13 1999 18:20 AM
DAVE LANG, CLERK OF COURTS
BK: R2295   PG: 01819

#### Section 3.11 Negative Covenants.

(a)    Owner shall not (i) sell, assign, lease or otherwise transfer the Mortgaged Property or any part thereof or interest therein, except in compliance with Article 4 hereof (ii) claim any credit on, or make any deduction from interest or Make Whole Amount or premium, if any, on the principal of the Notes by reason of payment of any taxes levied or assessed or to be levied or assessed on the Mortgaged Property or any part thereof; or (iii) create or suffer to be created, directly or indirectly, any mortgage, lien, encumbrance or charge relating to the Mortgaged Property, other than Permitted Exceptions and as expressly permitted by this Mortgage.

(b)    No Owner shall (i) engage directly or indirectly in any business other than the acquisition, ownership, leasing and disposition of the Mortgaged Property; (ii) create, assume or suffer to exist any indebtedness for borrowed money, except the Notes; (iii) amend or modify its formation documents; or (iv) engage in any transaction with an affiliate on terms that are less favorable to such Owner than the terms that would be obtained on an arm's length basis with a party who is not such an affiliate.

#### Section 3.12 Lease Rent. 

Each payment of Rent under the Lease on each date for the payment thereof shall be sufficient to make payment of the Interest Payment and Installment Payments due on the Notes on or about such date, except the final Installment Payment. Payment of the final Installment Payment is guaranteed by a residual value insurance policy issued by RVI, the proceeds of which will be sufficient to cover the balloon payment on the Notes at maturity. The purchase price which would be payable by Lessee upon the purchase of the Property pursuant to the Lease (other than a purchase subject to the lien of this Mortgage pursuant to paragraph 9 of the Lease) on any date shall not be less than the unpaid principal amount of the Notes, together with accrued and unpaid interest thereon and any applicable Make Whole Amount.

#### Section 3.13 Financial Statements; Books and Records; Notice of Default.

(a)    Each Successor Owner will deliver to Mortgagee, in duplicate:  (i) within 90 days after the close of each fiscal year of such Successor Owner, its balance sheet as at the end of such fiscal year and its income statement for such year, setting forth in each case, in comparative form, figures for the preceding fiscal year, all in reasonable detail and satisfactory in scope to Mortgagee, certified to be true and complete by independent certified public accountants selected by such Successor Owner and copies of all detailed reports, if any, which shall be prepared by such Successor Owner; and (ii) with reasonable promptness after receipt of a request from Mortgagee, such other financial information with respect to such Successor Owner as Mortgagee may request from time to time. Within 30 days after the close of each fiscal year, each Successor Owner will deliver to Mortgagee a certificate of a senior financial officer of such Successor Owner stating whether, to such officer's knowledge, (A) any default or Event of Default has occurred and is continuing, (B) any default or Event of Default has occurred since the

JK 126906.2 90130.02061      R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314   PAGE: 01200
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS
BK: R2314   PG: 01200

15                                    Store #0124, Tallahassee,
Leon County, Florida

R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2295    PAGE: 01820
SEP 13 1999 10:20 AM
DAVE LANG, CLERK OF COURTS

BK: R2295    PG: 01820



delivery of the immediately preceding certificate of such Successor Owner delivered pursuant to this Section, or, if any such default has occurred, describing the same in reasonable detail, (C) if any default or Event of Default has occurred and is continuing, specifying the nature and the period of existence thereof and what action such Successor Owner has taken or is taking with respect thereto, and (D) except as otherwise stated, that such Successor Owner has fulfilled all its obligations under this Mortgage, the Notes, the Note Agreement, the Assignment and the Indenture.

(b)     Owner will (i) permit Mortgagee, by its agents, accountants and attorneys, at Owner's expense, (A) to inspect the Property at reasonable times and upon prior notice and (B) to examine its records and books of account related to the Property and to discuss its affairs, finances and accounts related to the Property with its senior financial officers at such reasonable times as may be requested by Mortgagee. Each Successor Owner shall (i) keep accurate records and books of account reflecting all its financial transactions and (ii) permit Mortgagee, by its agents, accountants and attorneys, at such Successor Owner's expense, to examine all of its records and books of account, whether or not related to the Property, and to discuss its affairs, finances and accounts, whether or not related to the Property, with its senior financial officers and accountants at such reasonable times as may be requested by Mortgagee.

(c)     Promptly upon becoming aware thereof, Owner will notify Mortgagee of the occurrence of any default or Event of Default under this Mortgage, the Indenture, the Note Agreement or the Assignment which does not result from the action or omission of Lessee under the Lease or of Guarantor under any Guaranty.

Section 3.14 Maintenance and Repair.  Owner will maintain or cause Lessee, pursuant to the terms of the Lease, to maintain the Property (or cause it to be maintained) in good repair and condition, except for ordinary wear and tear, and will make or cause to be made all structural and nonstructural, foreseen and unforeseen and ordinary and extraordinary changes and repairs which may be required with respect to the Property to keep the Property in good repair and condition, ordinary wear and tear excepted.

Section 3.15 Security Agreement; Fixture Filing.

(a)     This Mortgage is intended to be a security agreement pursuant to the Uniform Commercial Code with respect to any fixtures or items of personal property specified as part of the Mortgaged Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code.

(b)     This Mortgage constitutes a financing statement filed as a fixture filing in the Official Records of the County in which the Property is located with respect to any and all fixtures included within the Mortgaged Property and with respect to any goods or other personal property which may now be or hereafter become fixtures.

JK 128906.2 80130 02061

R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK: R2314    PAGE: 01201
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS

BK: R2314    PG: 01201

Store #0124, Tallahassee,
Leon County, Florida

16

R990073897
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK R2295    PAGE: 01821
SEP 13 1999 10:20 AM
DAVE LANG, CLERK OF COURTS
BK: R2295  PG: 01821



### Section 3.16 Environmental Compliance.

(a)    Except as set forth in the second sentence of this Section 3.16 and except as to any matters disclosed by the environmental reports delivered pursuant to Section 6.11 of the Note Agreement or as to any matters disclosed in writing to Mortgagee by Lessee prior to the date hereof or set forth in the Lease:  Owner hereby represents, warrants, covenants and agrees to and with Mortgagee that all operations or activities upon, or any use or occupancy of the Property is presently and will at all times be in compliance with all Environmental Laws; that Owner has not at any time engaged in or permitted, nor to Owner's knowledge has any existing or previous tenant or occupant of the Property engaged in or permitted the occurrence of any Hazardous Condition; and that to Owner's knowledge, there does not now exist nor is there suspected to exist any Hazardous Condition on or about the Property. Owner discloses to Mortgagee that Lessee does, or intends to, store, use or sell in Lessee's business certain products or substances that may be considered Hazardous Substances, and Mortgagee acknowledges Lessee's right to do so, in accordance with the Lease.  If Owner discovers that any Hazardous Condition exists on the Property in violation of any applicable law (whether or not disclosed in any environmental report referred to above), Owner shall, with all due diligence, take or cause to be taken all remedial, removal and other actions necessary to remediate, remove, contain or clean up such Hazardous Condition in a manner and to the extent required by the applicable Environmental Laws.  Owner agrees to comply or cause compliance with each of the recommendations contained in all environmental reports issued relating to the Property if such recommendations are necessary to comply with then current requirements of applicable Environmental Laws.  Notwithstanding the foregoing, if any Hazardous Condition is or becomes the subject matter of a federal or state "no-action letter," then Owner shall not be obligated to undertake Remedial Work with respect to, or to investigate further, such known Hazardous Condition, unless subsequently directed by the federal or state agency having jurisdiction over such known Hazardous Condition. OWNER FURTHER AGREES TO PROTECT, INDEMNIFY, SAVE HARMLESS AND DEFEND MORTGAGEE, IF ANY, FROM AND AGAINST ALL LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES) HEREIN IMPOSED UPON OR OUT OF (X) THE EXISTENCE OF HAZARDOUS SUBSTANCES OR HAZARDOUS CONDITIONS ON THE PROPERTY, OR (Y) ANY ACTION OR OMISSION OF OWNER, ITS AGENTS OR EMPLOYEES, WHICH CONSTITUTES A VIOLATION OF, OR CREATES A CONDITION OF THE PROPERTY WHICH IS IN VIOLATION OF, ANY ENVIRONMENTAL LAWS; provided, however, that the foregoing indemnification shall not be deemed to include claims, actions, administrative proceedings, judgments, punitive damages, penalties, fines, costs, liabilities, sums paid in settlement, interest, losses or expenses, that arise in connection with any Hazardous Condition that is determined by proper judicial or administrative procedure to have been introduced to the Property during any period while Mortgage is in possession of the Property to the exclusion of Owner and Lessee after an Event of Default has occurred.

R990090110
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BOOK R2314    PAGE  01202
NOV 04 1999 04:37 PM
DAVE LANG, CLERK OF COURTS
JK 120200.2 921130 00051

17

Store #0124, Tallahassee,
Leon County, Florida
BK: R2314  PG: 01202