.

**EXHIBIT "B" (part 2)**

sidewalks, streets or ways, or connected with the use, condition or occupancy thereof (unless caused by the negligent acts or improper conduct of Landlord or Mortgagee), whether or not Landlord or Mortgagee has or should have knowledge or notice of the defect or conditions causing or contributing to such injury, death, loss or damage, (ii) any Claims, (iii) any Default under this Lease, or any violation by Tenant of any provision of any contract or agreement to which Tenant is a party or by which it is bound, affecting this Lease or the Leased Premises, or (iv) any contest referred to in paragraph 19 or 20. The obligations of Tenant under this paragraph 21 shall survive the expiration or termination of this Lease until the expiration of the applicable statute of limitations which has not been waived by Tenant for such action.

22.    DEFAULT PROVISIONS.

(a)    Events of Default. The occurrence of any one or more of the following shall constitute an Event of Default under this Lease:

(i)    if any installment of Rent or any payment of Additional Monetary Obligations due from Tenant is an Overdue Payment that is not paid within 10 days following the due date thereof; or

(ii)    a failure by Tenant to duly perform and observe, or a violation or breach of, any other material provision hereof which failure, violation or breach shall continue for a period of 30 days after notice to Tenant thereof; provided that if such failure, violation or breach cannot be cured by mere payment of money and cannot with diligence be cured within such 30-day period, the period to cure such failure, violation or breach shall be extended for such longer period of time not to exceed 12 months from the date of such failure, violation or breach, as is reasonably necessary to cure such failure, violation or breach so long as Tenant shall commence to cure such failure, violation or breach within said 30-day period and actively, diligently and in good faith proceed with continued curing thereof until it shall be fully cured;

(iii)    any representation or warranty made by Tenant or Guarantor in this Lease, the Guaranty or any other document delivered in connection with the execution and delivery of this Lease or the Guaranty or pursuant to this Lease or the Guaranty proves to be incorrect in any material respect;

(iv)    Tenant or Guarantor shall voluntarily be adjudicated a bankrupt or insolvent, seek or consent to the appointment of a receiver or trustee for Tenant, Guarantor or the Leased Premises, file a petition seeking relief under the bankruptcy or other similar laws of the United

States, any state or any jurisdiction, make a general assignment for the benefit of creditors, or admit in writing its inability to pay its debts as they mature;

(v)    a court shall enter an order, judgment or decree appointing a receiver or trustee for Tenant, Guarantor or the Leased Premises or approving a petition filed against Tenant or Guarantor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and such order, judgment or decree shall remain in force, undischarged or unstayed, 60 days after it is entered;

(vi)    Tenant or Guarantor shall be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution, or shall, in any manner, permit the divestiture of all or substantially all of its assets other than in connection with a merger or consolidation of Tenant into, or a sale of all or substantially all of Tenant's assets to, another corporation provided that the survivor of such merger or consolidation, or the purchaser of such assets, shall assume all of Tenant's obligations under this Lease by a written instrument, in form and substance satisfactory to Landlord and Mortgagee, accompanied by an opinion of counsel, satisfactory to Landlord and Mortgagee, stating that such instrument of assumption is valid, binding and enforceable against the parties thereto in accordance with its terms, and provided further that, immediately after giving effect to any such merger or consolidation or sale of such assets, the survivor of such merger or consolidation, or the purchaser of such assets, as the case may be, shall have a Consolidated Tangible Net Worth of not less than $1 billion;

(vii)    the estate or interest of Tenant in the Leased Premises shall be levied upon or attached in any proceeding and such proceeding shall not be vacated or discharged within sixty 60 days after such levy or attachment; or

(viii)    Guarantor shall default under the Guaranty.

(b)    Landlord's Remedies Upon Tenant Default.    If an Event of Default shall have occurred, Landlord shall have the right at its option, then or at any time thereafter during the continuance of such Event of Default, to do any one or more of the following without demand upon or notice to Tenant:

(i)    Landlord may give Tenant notice of Landlord's intention to terminate this Lease on a date specified in such notice. Upon the date therein specified, the Term and the estate hereby granted and all rights of Tenant hereunder shall expire and terminate as if such

date were the date hereinbefore fixed for the expiration of the Term, but Tenant shall remain liable for all its obligations hereunder, including its liability for Rent, Additional Monetary Obligations or any other sums payable under this Lease, as hereinafter provided.

(ii)    Landlord may, whether or not the Term of this Lease shall have been terminated pursuant to clause (i) above, (x) give Tenant notice to surrender the Leased Premises to Landlord immediately or on a date specified in such notice, at which time Tenant shall surrender and deliver possession of the Leased Premises to Landlord, or (y) reenter and repossess the Leased Premises by summary proceedings, ejectment or any other means or procedure. Upon or at any time after taking possession of the Leased Premises, Landlord may remove any persons or property therefrom. Landlord shall be under no liability for, or by reason of, any such entry, repossession or removal. No such entry or repossession shall be construed as an election by Landlord to terminate this Lease unless Landlord gives a written notice of such intention to Tenant pursuant to clause (i) above.

(iii)    After repossession of the Leased Premises pursuant to clause (ii) above, whether or not this Lease shall have been terminated pursuant to clause (i) above, Landlord shall have the right to relet the Leased Premises or any part thereof to such tenant or tenants for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term) for such rent, on such conditions (which may include concessions or free rent) and for such uses as Landlord, in its absolute discretion, may determine; and Landlord may collect and receive any rents payable by reason of such reletting. Landlord shall not be responsible or liable for any failure to relet the Leased Premises or any part thereof or for any failure to collect any rent due upon any such reletting. Landlord may make such Alterations as Landlord in its sole discretion may deem advisable. Tenant agrees to pay Landlord, as Additional Monetary Obligations, immediately upon demand, all reasonable expenses incurred by Landlord in obtaining possession, in performing Alterations and in reletting the Leased Premises, including reasonable fees and commissions of attorneys, architects, agents and brokers.

(iv)    After repossession of the Leased Premises pursuant to clause (ii) above, whether or not this Lease shall have been terminated pursuant to clause (i) above, Landlord shall have the right to sell the Leased Premises at public or private sale, as

Landlord may determine, or otherwise dispose of, use, operate, lease to others, or keep idle, all or any part of the Leased Premises, as Landlord may determine, all free and clear of any rights of Tenant except as hereinafter set forth in this paragraph 22 and without any duty to account to Tenant with respect to such action or inaction or any proceeds with respect thereto; provided, however, that any such sale or other disposition shall be made in compliance with any mandatory provisions of applicable law which may not be waived.

(v)    Landlord may exercise any other right or remedy now or hereafter existing by law or in equity.

(c)    No Relief of Obligations. No expiration or termination of this Lease, or repossession or reletting of the Leased Premises pursuant to this paragraph 22 or any other provision of this Lease, by operation of law or otherwise, shall relieve Tenant of any of its liabilities and obligations hereunder, including the liability for payment of Rent, Additional Monetary Obligations and all other sums payable hereunder, all of which shall survive such expiration, termination, repossession or reletting.

(d)    Current Damages. In the event of any expiration or termination of this Lease or repossession of the Leased Premises by reason of the occurrence of an Event of Default, Tenant shall pay to Landlord all Rent, all Additional Monetary Obligations and all other sums required to be paid by Tenant to and including the date of such expiration, termination or repossession and, thereafter, Tenant shall, until the end of what would have been the Term in the absence of such expiration, termination or repossession, and whether or not the Leased Premises shall have been relet, be liable to Landlord for and shall pay to Landlord as liquidated and agreed current damages (i) all Rent, all Additional Monetary Obligations and all other sums which would be payable under this Lease by Tenant in the absence of such expiration, termination or repossession, less (ii) the amount Tenant can prove to be net proceeds, if any, of any reletting pursuant to this paragraph 22, after deducting from such proceeds all of Landlord's expenses in connection with such reletting (including all reasonable repossession costs, brokerage commissions, legal expenses, attorneys' fees, employees' expenses, costs of Alterations and expenses of preparation for reletting). Tenant hereby agrees to be and remain liable for all sums aforesaid, and Landlord may recover such damages from Tenant and institute and maintain successive actions or legal proceedings against Tenant for the recovery of such damages. Nothing herein contained shall be deemed to require Landlord to wait to begin such action or other legal proceedings until the date when the Term would have expired by limitation had there been no such Event of Default.

(e)    Liquidated Final Damages.  At any time after any such expiration or termination of the Term or repossession of the Leased Premises by reason of the occurrence of an Event of Default, whether or not Landlord shall have collected any current damages pursuant to this paragraph 22, Landlord shall be entitled to recover from Tenant, and Tenant will pay to Landlord on demand, as and for liquidated and agreed final damages for Tenant's Default and in lieu of all current damages beyond the date of such demand (it being agreed that it would be impracticable or extremely difficult to fix the actual damages and it being further agreed that the amount herein described is a reasonable estimate of the amount of Landlord's probable damages), an amount equal to the excess, if any, of (i) the Rent, Additional Monetary Obligations and other sums which would be payable under this Lease from the date of such demand (or, if it be earlier, the date to which Tenant shall have satisfied in full its obligations under this paragraph 22 to pay current damages) for what would be the then unexpired term of this Lease in the absence of such expiration, termination or repossession, discounted at the rate of 5% per annum over (ii) the then fair net rental value of the Leased Premises for the same period and (y) an amount equal to the then applicable Make-Whole Amount, if any, payable to the Mortgagee. The discount rate to be used in determining such fair rental value shall be 5% per annum.  If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, Landlord shall be entitled to the maximum amount allowable under such statute or rule of law.

(f)    Alternative Liquidated Final Damages.  At any time after any such expiration or termination of the Term or repossession of the Leased Premises by reason of the occurrence of an Event of Default, whether or not Landlord shall have collected any current damages pursuant to this paragraph 22, if Landlord shall have sold the Leased Premises pursuant to paragraph 22(b)(iv), then Landlord, as an alterative to paragraph 22(e), shall be entitled to recover from Tenant, and Tenant will pay to Landlord on the date of such sale, as and for liquidated and agreed final damages for Tenant's Default and in lieu of all current damages beyond the date of such sale (it being agreed that it would be impracticable or extremely difficult to fix the actual damages and it being further agreed that the amount herein described is a reasonable estimate of the amount of Landlord's probable damages), any unpaid installments of Rent for the Leased Premises up to and including the Rent Payment Date occurring immediately prior to the date of such sale, plus the amount of any deficiency between (x) the proceeds of such sale and (y) an amount equal to the purchase price for the Leased Premises pursuant to attached Exhibit F had Tenant made a Purchase Offer pursuant to paragraph 16 to purchase the Leased Premises on the date of such sale and such Purchase Offer had been accepted. If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, then Landlord shall be entitled to the maximum amount allowable under such statute or rule of law.

23.    **ADDITIONAL RIGHTS OF LANDLORD.**

(a)    <u>Non-Exclusive, Cumulative Remedies</u>.  No right or remedy herein conferred upon or reserved to Landlord is intended to be exclusive of any other right or remedy and each and every right and remedy shall be cumulative and in addition to any other right or remedy contained in this Lease.  No delay or failure by Landlord to enforce its rights hereunder shall be construed as a waiver, modification or relinquishment thereof.  In addition to the other remedies provided in this Lease, Landlord shall be entitled, to the extent permitted by applicable law, to injunctive relief in case of the violation or attempted or threatened violation of any of the provisions of this Lease, or to specific performance of any of the provisions of this Lease.

(b)    <u>Tenant's Waiver of Redemption</u>.    Tenant hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have under any present or future law to redeem any of the Leased Premises or to have a continuance of this Lease after termination of this Lease or of Tenant's right of occupancy or possession pursuant to any court order or any provision hereof, and (ii) the benefits of any present or future law which exempts property from liability for debt or for distress for rent.

(c)    <u>Costs Upon Default and Litigation</u>.  Tenant shall pay to Landlord and Mortgagee as Additional Monetary Obligations all expenses incurred by Landlord or Mortgagee in connection with any Default or Event of Default or the exercise of any remedy by reason of any Default or Event of Default, including reasonable attorneys' fees and expenses.  If Landlord or Mortgagee shall be made a party to any litigation commenced against Tenant or any litigation pertaining to this Lease or the Leased Premises, at the option of Landlord and Mortgagee, Tenant, at its expense, shall provide Landlord or Mortgagee with counsel approved by Landlord and Mortgagee and shall pay all reasonable costs incurred or paid by Landlord and Mortgagee in connection with such litigation.

24.    **NOTICES.**  All notices, requests, consents, demands, offers and other communications required or permitted to be given pursuant to this Lease shall be in writing and shall be deemed to have been given for all purposes (i) as of the date and time the same is personally delivered with a receipted copy; (ii) if given by telefax, the day when the telefax is transmitted to the recipient's telefax number and confirmation of complete receipt is received by the transmitting party prior to or during normal business hours for the recipient, or the day after confirmation is received by the transmitting party if after normal business hours for the recipient; (iii) if delivered by United States Mail, 3 days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (iv) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit with same, addressed to Landlord or Tenant at their

respective addresses stated in the introductory paragraph of this Lease, or addressed to Mortgagee or Guarantor at their respective addresses stated below:

<div style="margin-left:2em">

If to Mortgagee:    First Security Bank, National Association
    and Val T. Orton, Trustees
    79 South Main Street
    Salt Lake City, Utah 84111
    Telefax No.: 801 246 5053

If to Guarantor:    Winn-Dixie Stores, Inc.
    5050 Edgewood Court
    Jacksonville, Florida 32254
    Attention: General Counsel
    Telefax No.: 904 783 5294

</div>

For the purposes of this paragraph 24, any person may substitute its address by giving 15 days' notice to the other persons in the manner provided above.

**25.    ESTOPPEL CERTIFICATE.** Landlord and Tenant shall, at any time and from time to time, upon not less than 20 days' prior request by the other, execute, acknowledge and deliver to the other, an estoppel certificate substantially in the form attached as Exhibit G. It is intended that any such statements may be relied upon by Mortgagee, the recipient of such statements or their assignees, or by any prospective purchaser or mortgagee of the Leased Premises.

**26.    SURRENDER AND HOLDING OVER.** Upon the expiration or earlier termination of this Lease, Tenant shall peaceably leave and surrender the Leased Premises (except for any portion thereof with respect to which this Lease has previously terminated) to Landlord in broom clean condition, and otherwise in the same condition in which the Leased Premises were originally received from Landlord on the Commencement Date, except as repaired, rebuilt, restored, altered, replaced or added to as permitted or required by any provision of this Lease, and except for ordinary wear and tear. Tenant shall remove, at Tenant's sole cost and expense, from the Leased Premises on or prior to such expiration or earlier termination all property situated thereon which is owned by Tenant or third parties other than Landlord, and Tenant at its expense shall, on or prior to such expiration or earlier termination, repair any damage caused by such removal. Property not so removed at the end of the Term or within 30 days after the earlier termination of the Term for any reason whatsoever shall become the property of Landlord, and Landlord may thereafter cause such property to be removed from the Leased Premises. The cost of removing and disposing of such property and repairing any damage to the Leased Premises caused by such removal shall be borne by Tenant. Landlord shall not in any manner or to any extent be obligated to reimburse Tenant for any property which becomes the property of Landlord as a result of such expiration or earlier termination.

Any holding over by Tenant of the Leased Premises after the expiration or earlier termination of the term of this Lease or any extensions thereof shall operate and be construed as a tenancy from month to month only, at double the Rent reserved herein and upon the same terms and conditions as contained in this Lease. Notwithstanding the foregoing, any holding over shall entitle Landlord, in addition to collecting double rentals, to exercise all rights and remedies provided by law or in equity, including the remedies of paragraph 22(b).

27.    NO MERGER OF TITLE. There shall be no merger of this Lease nor of the leasehold estate created by this Lease with the fee estate in or ownership of the Leased Premises by reason of the fact that the same person, corporation, firm or other entity may acquire or hold or own, directly or indirectly, (i) this Lease or the leasehold estate created by this Lease or any interest in this Lease or in such leasehold estate, and (ii) the fee estate or ownership of the Leased Premises or any interest in such fee estate or ownership. No such merger shall occur unless and until all persons, corporations, firms and other entities (including any Mortgagee) having any interest in (x) this Lease or the leasehold estate created by this Lease, and (y) the fee estate in or ownership of the Leased Premises sought to be merged shall join in a written instrument effecting such merger and shall duly record the same.

28.    ALTERATION AND EXPANSION.

(a)    Alterations Generally.    Tenant may, at its expense make any Alterations, construct upon the Land any additions to the Improvements or install equipment in the Improvements or accessions to the Landlord's Equipment without Landlord's consent, provided that (i) the character of the Leased Premises shall not be materially changed and the market value of the Leased Premises shall not be materially lessened by any such Alteration, construction or installation (it being agreed that a Store Expansion, or any expansion or enlargement referred to in subparagraph (b) below, shall not be deemed to constitute a material change in the character of the Leased Premises), nor shall the usefulness or structural integrity of the Leased Premises be impaired thereby, (ii) all such work of Alteration, construction and installation shall be performed in a good and workmanlike manner, (iii) all such Alterations, construction and installation shall be expeditiously completed in compliance with all Legal Requirements, (iv) all work done in connection with any such Alteration, construction or installation shall comply with the requirements of any insurance policy required to be maintained by Tenant hereunder, (v) Tenant shall promptly pay all costs and expenses of any such Alteration, construction or installation, and Tenant shall discharge all Liens filed against the Leased Premises arising out of the same, and (vi) Tenant shall procure and pay for all permits and licenses required in connection with any such Alteration, construction or installation.    In the case of any other proposed Alteration, construction or installation, Tenant shall first obtain Landlord's and Mortgagee's consents, which consents may be withheld in Landlord's or Mortgagee's sole

discretion. All such Alterations, construction and installations (except Tenant's Equipment) shall be the property of Landlord and shall be subject to this Lease.

(b)    Alterations Involving Expansion of Improvements. It is understood that Tenant may at future times during the Term wish to enlarge the Improvements by a Store Expansion or otherwise by constructing Alterations and additions thereto. Except as provided in paragraphs 28(c) and (d) below, Tenant shall have the sole responsibility for negotiating and providing for such Store Expansion, Alterations or additions as may be necessary for its expansion plans. If Tenant is able to obtain agreements and contracts for the Alterations and additions at a cost satisfactory to it, Tenant may then request that Landlord purchase such Alterations and additions and incorporate the same into this Lease upon terms and conditions negotiated by the parties; provided, however, that Landlord shall have no obligation to purchase such Alterations and additions. If the parties are unable to agree on the purchase of such Alterations and additions, then Tenant shall have the right to construct Alterations and additions at its own expense and to make such changes as are necessary to make the entire enlarged building suitable for use and occupancy by Tenant in the conduct of its business; but Tenant shall not have the right to mortgage or pledge this Lease or the leasehold estate created hereby or its interest in such Alterations to finance such Alterations, except as herein permitted. Prior to commencement of construction of such Alterations, Tenant shall provide Landlord and Mortgagee with a set of plans and specifications for such Alterations. Following substantial completion of such Alterations, Tenant shall provide Landlord and Mortgagee with (i) copies of certificates of occupancy or completion, if required by Legal Requirements, (ii) an as-built survey of the Alterations demonstrating that the Alterations do not encroach upon or violate any easements, covenants, conditions or restrictions affecting the Leased Premises, and (iii) a modification of the Site Plan to materially reflect such Alterations. Subject to the following sentence, all such Alterations and additions shall be subject to the terms of this Lease to the same extent as if owned by Landlord and leased under this Lease. Title to such Alterations and additions as necessary to meet any Legal Requirements shall pass to Landlord without cost or expense to Landlord, Tenant shall execute additional documents as necessary to complete such transfer.

(c)    Mortgagee's Financing of Alterations Involving Expansion. Subject to the conditions set forth below, during the Initial Term, Tenant may construct a Store Expansion at its own initial expense, and upon written notice by Tenant given to Landlord not later than 90 days prior to the anticipated date of substantial completion of such Store Expansion, Landlord shall reimburse Tenant for the Expansion Cost pursuant to the Expansion Financing. The Expansion Financing obtained by Landlord shall be evidenced by an Expansion Note made by Landlord payable to Mortgagee, having a term commencing on the Expansion Financing Date and expiring on the last day of the Initial Term, with payments of principal and interest payable quarterly in amounts necessary to fully amortize the Expansion

Note with interest over the remainder of the Initial Term. The interest rate under the Expansion Note shall be a fixed rate determined by agreement among Landlord, Tenant and Mortgagee based on the same or substantially similar standards as used to determined the interest rate under the Note, with appropriate and reasonable adjustments based on Tenant's then-current debt rating, and then-current market factors and applicable indexes for similar debt instruments with similar maturities. Funding of the Expansion Financing will occur on the Expansion Financing Date, which shall be a Rent Payment Date unless otherwise agreed among Landlord, Tenant and the Mortgagee providing such Expansion Financing. All costs and expenses of the Expansion Financing, including, without limitation, the reasonable attorneys fees of Landlord and Mortgagee, shall be paid by Tenant on the Expansion Financing Date, and at Tenant's election, may be considered part of the Expansion Cost to be financed pursuant to the Expansion Financing, subject to the remaining conditions of this paragraph 28(c). Landlord shall have no obligation to reimburse Tenant for the Expansion Cost unless Landlord is able to satisfy the conditions and requirements of the Mortgage for issuance of the Expansion Notes and the following conditions shall have been satisfied by Tenant on or before the Expansion Financing Date:

(A)    Tenant shall have materially complied with the requirements for Alterations as set forth in paragraphs 28(a) and (b) above, and with the requirements set forth in this paragraph 28(c), and shall have delivered the Completion Certificate substantially in the form attached as Exhibit I.

(B)    The Expansion Cost shall be at least $1,000,000, as certified to Landlord pursuant to the Completion Certificate delivered pursuant to subparagraph (A) above.

(C)    Prior to the Expansion Financing Date, Tenant shall deliver to Landlord and Mortgagee, at Tenant's sole cost and expense, an appraisal of the Store Expansion prepared by an appraiser reasonably acceptable to Landlord and Mortgagee, which shall indicate that the value of the Store Expansion, when completed, is not less than the Expansion Cost, or alternatively, that the value of the Leased Premises including the Store Expansion, is not less than the Cost, including the Expansion Cost. If the Expansion Cost exceeds the value of the Store Expansion, or if the Cost exceeds the value of the Leased Premises, as indicated by such appraisal, Tenant shall pay the amount by which the Expansion Cost or Cost exceeds such appraised value.

(D)    On or before the Expansion Financing Date, Tenant shall deliver to Landlord and Mortgagee, at Tenant's sole cost and expense, a commitment to endorse Landlord's and Mortgagee's existing title insurance policies (or to issue replacement title insurance policies, if required by

applicable state title insurance regulations), to increase the coverage amounts for each policy by the amount of the Expansion Cost reimbursed to Tenant, and to reflect the modification of the Loan Documents and this Lease free and clear of any construction liens or other liens or encumbrances (other than those created by Landlord) arising subsequent to the effective dates of such policies.

(E)    There is no Default or Event of Default existing under this Lease as of the Expansion Financing Date.

(F)    Tenant shall have delivered, or caused to be delivered, such documents, certificates, legal opinions or affidavits as reasonably may be requested by Landlord or Mortgagee to facilitate the Expansion Financing, of the same or similar nature to those required in connection with the Loan.

Effective on the Expansion Financing Date, Rent will be increased in accordance with the provisions of attached Exhibit E, the Cost of the Leased Premises as set forth on attached Exhibit F will be adjusted to account for the addition of the Expansion Cost to the original Cost, and the Leased Premises shall be as delineated on the modified Site Plan delivered pursuant to paragraph 28(b). At Landlord's request, on the Expansion Financing Date, Landlord and Tenant shall enter into an amendment of this Lease and/or a modification of any memorandum of this Lease, to reflect the foregoing adjustments and modifications.

(d)    Third Party Financing of Alterations Involving Expansion. If all of the conditions in paragraph 28(c) above have been satisfied but Landlord, Tenant and Mortgagee are unable to reach an agreement, in good faith, on the interest rate or other material financial terms of the Expansion Financing, then Landlord shall, upon Tenant's written request, obtain the Expansion Financing from an Institutional Investor selected by Tenant or from Guarantor but otherwise on the same terms, covenants and conditions as set forth in paragraph 28(c) above, which Expansion Financing shall be secured by a mortgage lien encumbering the Leased Premises which is *pari passu* (as between the Mortgagee and such Institutional Investor or Guarantor) with the Mortgage, subject to the terms of an intercreditor agreement to be entered between Mortgagee and such Institutional Investor or Guarantor, which intercreditor agreement shall provide that decisions shall be made by the holders of 51% of the aggregate principal amount of debt secured by such Mortgages. The Loan Documents given by Landlord to Mortgagee shall include provisions permitting Landlord to issue such a parity mortgage on the Leased Premises in accordance with the foregoing terms and conditions, and governing the terms of an intercreditor agreement between Mortgagee and such Institutional Investor or Guarantor.

(e)    Tenant's Self-Funding of Alterations Involving Expansion. If, after the exercise of diligent and good faith efforts, Landlord is unable to obtain the Expansion Financing either from the Mortgagee or from an Institutional Investor or

Guarantor in accordance with the foregoing provisions, then Tenant may pay for the Store Expansion without reimbursement by Landlord, and the failure to have obtained financing with either the Mortgagee or an Institutional Lender shall not be considered a default of Landlord hereunder. In the event of such self-funding by Tenant, and provided that Tenant first has subordinated its leasehold interest in the Leased Premises to the lien of the Mortgage pursuant to paragraph 8(f) above, Tenant may finance the Expansion Cost by mortgaging its leasehold interest in the Leased Premises, notwithstanding the provisions of paragraph 18 above.

(f)    New Store Construction.  If construction of the Improvements and installation of Landlord's Equipment and Tenant's Equipment has not commenced, or has commenced but has not been completed as of the Commencement Date, the following provisions shall apply:

(A)    Tenant shall substantially complete construction of the Improvements in accordance with the Site Plan, in the same manner as if the Improvements were Alterations, and subject to the requirements of paragraph 28(a) and 28(b) above.

(B)    Within 30 days after the date of substantial completion of the Improvements, Tenant shall deliver to Landlord and Mortgagee a Certificate of Completion substantially in the form of attached Exhibit I, a certificate of occupancy or its equivalent issued by the applicable governmental agencies, if required by Legal Requirements, and an as-built survey of the Land demonstrating that the Improvements do not encroach upon or violate any easements, covenants, conditions or restrictions affecting the Leased Premises or the additional land, and an as-built survey of the Leased Premises showing the completed Improvements.

(C)    If Tenant fails to substantially complete construction of the Improvements or deliver the documentation to Landlord and Mortgagee as required by this paragraph 28(f), and Tenant shall have notified Landlord of Tenant's election to exercise the Substitution Option pursuant to paragraph 11 above on a Termination Date specified in such notice, Tenant shall and shall be deemed to have elected to make a Purchase Offer (which shall be subject to paragraph 10 above) to purchase the Leased Premises on the Termination Date stated in such notice.

29.    MISCELLANEOUS.  The paragraph headings in this Lease and the Table of Contents preceding this Lease are for convenience only and are not to be used in determining the intent of the parties or otherwise interpreting this Lease. As used in this Lease, the singular shall include the plural as the context requires, and the following words and phrases shall have the following meanings: (i) "including" shall mean "including but not limited to"; (ii) "provisions"

shall mean "provisions, terms, agreements, covenants and/or conditions"; and (iii) "obligation" shall mean "obligation, duty, agreement, liability, covenant or condition". Any act which Tenant is required to perform under this Lease shall be performed at Tenant's sole cost and expense. This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought and consented to by Mortgagee. The covenants of this Lease shall run with the land and bind Tenant and all successors and assigns of Tenant and shall inure to the benefit of and bind Landlord, its successors and assigns. If any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Lease but this Lease shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. This Lease may be simultaneously executed in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes. This Lease shall be governed by and construed according to the laws of the State. All Exhibits and attachments to this Lease are by reference incorporated into, and form a part of, this Lease. A memorandum of this Lease substantially in the form attached as Exhibit H shall be recorded in the records of the appropriate public office having custody of the real property records of the county in which the Leased Premises is located.

Radon Gas: Radon gas is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health department.

[THIS SPACE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF,** Landlord and Tenant have caused this instrument to be executed under seal as of the day and year first above written.

Witnesses:                          **LANDLORD:**

                                    **TALLAHASSEE 99-FL, LLC,** a Delaware limited liability company

                          By:    Principal Net Lease Investors, L.L.C., a Delaware limited liability company, its sole member

                                    By:    Principal Life Insurance Company, an Iowa corporation, its sole member

Name: ~~Helen L. Boles~~

Name: ~~Julia L. McDonald~~                    By: _____
                                    Name: _____ CLARE TANDE
                                    Title: _____ COUNSEL

Name: ~~Helen L. Boles~~
                                    By: *Karen A Pearst*
Name: ~~Julia L. McDonald~~                    Name: _____ KAREN A. PEARSTON
                                    Title: _____ COUNSEL

                                    [CORPORATE SEAL]

STATE OF *IOWA*    )
COUNTY OF *POLK*    )

      The foregoing instrument was acknowledged before me this *11th* day of August, 1999, by *CLARE TANDE* and *KAREN A. PEARSTON*, the *COUNSEL* and *COUNSEL*, respectively, of PRINCIPAL LIFE INSURANCE COMPANY, an Iowa corporation, on behalf of the corporation, as the sole member of PRINCIPAL NET LEASE INVESTORS, L.L.C., a Delaware limited liability company, the sole member of TALLAHASSEE 99-FL, LLC, a Delaware limited liability company. Each of them either [X] is personally known to me or [  ] has produced a _____ state drivers license as identification.

```
BARBARA M. SEAMANDS
MY COMMISSION EXPIRES
September 27, 1999
IOWA
```
[NOTARIAL SEAL]

*Barbara M. Seamands*
NOTARY PUBLIC, State of *IOWA*
Printed Name: *BARBARA M. SEAMANDS*
Commission No.: *157881*
My commission expires: *9/27/99*

**TENANT:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

Name: R. D. Peterson

Name: Janice R. Long

By: R. P. McCook
Name: R. R. McCook
Title: Vice President

[CORPORATE SEAL]

STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this 5Th day of August, 1999, by R. P. McCook , the Vice president of WINN-DIXIE STORES, Inc., a Florida corporation, on behalf of the corporation. He either [ ] is personally known to me or [ ] has produced _____ state drivers license as identification.

NOTARY PUBLIC, State of FL
Printed Name: _____
Commission No.: _____
My commission expires: _____

[NOTARIAL SEAL]

EXHIBIT A TO LEASE AGREEMENT - SCHEDULE OF DEFINED TERMS

"Additional Monetary Obligations" shall have the meaning assigned to such term in paragraph 5(b) of this Lease.

"Affiliate" means any person directly or indirectly controlling or controlled by or under direct or indirect common control with any other specified person.

"Alterations" means all changes, additions, improvements or repairs to, all alterations, reconstructions, renewals or removals of, and all substitutions or replacements for, any of the Improvements or Landlord's Equipment, whether interior or exterior, structural or non-structural, or ordinary or extraordinary.

"Assignment" means an assignment of this Lease and any related Guaranty executed by Landlord in favor of a Mortgagee.

"Business Day" means any day on which financial institutions located in New York, New York, are open for regular business.

"Claims" means, individually and collectively, any claims, actions, administrative proceedings, judgments, damages, punitive damages, penalties, fines, costs, liabilities, sums paid in settlement, interest, losses or expenses (including reasonable attorneys' fees and costs, whether incurred in enforcing this Lease, collecting any sums due hereunder, settlement negotiations, at trial or on appeal), consultant fees and expert fees, together with all other costs and expenses of any kind or nature, that arise directly or indirectly from or in connection with the existence or suspected existence of a Hazardous Condition, whether occurring or suspected to have occurred before, on or after the date of this Lease or caused by any person or entity. Without limiting the generality of the foregoing definition, Claims specifically will include claims, whether by related or third parties, for personal injury or real or personal property damage, and capital, operating and maintenance costs incurred in connection with any Remedial Work. However, notwithstanding the foregoing, Claims will not be deemed to include claims, actions, administrative proceedings, judgments, damages, punitive damages, penalties, fines, costs, liabilities, sums paid in settlement, interest, losses or expenses, that arise in connection with (i) any Hazardous Condition that is determined by proper judicial or administrative procedure to have been introduced to the Leased Premises by Landlord or during any period while Landlord or Mortgagee is in possession of the Leased Premises to the exclusion of the Tenant after an Event of Default has occurred or after expiration of the Term or earlier termination of the Lease, or (ii) solely as to Tenant's indemnification of Landlord (and with no effect whatsoever on that indemnification of Mortgagee) as provided in paragraph 20, any Hazardous

Condition that is determined by proper judicial or administrative procedure to have been introduced to the Leased Premises by Landlord during the Term.

"Commencement Date" shall have the meaning assigned to such term in paragraph 4 of this Lease.

"Condemnation" means a Taking or a Requisition.

"Consolidated Tangible Net Worth" means the tangible net worth, as determined on a consolidated basis under generally accepted accounting principles consistently applied, of a business organization and its subsidiaries.

"Construction Requirements" if applicable, are set forth in paragraph 28(f) of this Lease.

"Cost" means, without duplication, the aggregate actual cost paid by or on behalf of Tenant in connection with the construction and acquisition of the Leased Premises, including, without limitation, all fees and expenses in connection with the initial placement, issuance and sale of the Note and any interim financing of the Leased Premises, title transfer fees, title insurance premiums and recording expenses and taxes (including transfer taxes), indirect construction costs such as capitalized interest, taxes and insurance and other allocable costs during construction, and fees and costs of professionals such as attorneys, architects, engineers, surveyors and appraisers; together with the Expansion Cost, if any, applicable to the Leased Premises.

"Default" shall mean any breach of any term, covenant or condition of, or obligation under, this Lease which, but for the giving of notice or the passage of time, or both, would constitute an Event of Default.

"Default Rate" shall mean 9.57%.

"Environmental Laws" will mean any applicable present or future federal, state or local laws, ordinances, rules or regulations pertaining to Hazardous Substances, industrial hygiene or environmental conditions, including without limitation the following statutes and regulations, as amended from time to time: (i) the Federal Clean Air Act, 42 U.S.C. Section 7401 et seq.; (ii) the Federal Clean Water Act, 33 U.S.C. Section 1151 et seq.; (iii) the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq. ("RCRA"); (iv) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. Section 9601 et seq. ("CERCLA") and the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 ("SARA"); (v) the Hazardous Materials Transportation Act, 49 U.S.C. Section 1802; (vi) the National Environment Policy Act, 42 U.S.C. Section 1857

et seq.; (vii) The Toxic Substance Control Act of 1976, 15 U.S.C. Section 2601 et seq.; (viii) the regulations of the Environmental Protection Agency, 33 CFR and 40 CFR; (ix) regulations of the Occupational Safety and Health Administration ("OSHA") relating to asbestos; and (x) similar statutes, rules and regulations of the State.

"Event of Default" means the occurrence of any of the events described in paragraph 22(a) of this Lease, and the giving of notice or the passage of any applicable grace or cure period, or both, as provided in said paragraph.

"Expansion Cost" means, without duplication, the aggregate actual cost paid by or on behalf of Tenant in connection with a Store Expansion, including, without limitation, direct construction costs of the Store Expansion, all fees and expenses in connection with the issuance of the Expansion Note, title insurance fees and premiums and recording expenses and taxes (including transfer taxes, if any), indirect construction costs such as capitalized interest, taxes and insurance and other allocable costs during construction, and fees and costs of professionals such as attorneys, architects, engineers, surveyors and appraisers.

"Expansion Financing" means the mortgage financing, if any, obtained by Landlord from a Mortgagee to finance the Expansion Cost, pursuant to the Expansion Note, on terms (other than interest rate, amortization and other payment terms of the Expansion Notes) substantially equivalent to the terms of the Loan Documents.

"Expansion Financing Date" means the effective date of funding of the Expansion Financing and Landlord's reimbursement of the Expansion Cost to Tenant, which date shall be on a Rent Payment Date.

"Expansion Note" means the note, if any, made by Landlord payable to a Mortgagee to evidence the Expansion Financing, as secured by the Mortgage, as modified to describe the Expansion Note as an additional obligation of Landlord, or by a separate mortgage having *pari passu* status with the Mortgage.

"Extended Term" shall have the meaning assigned to such term in paragraph 4 of this Lease.

"Guarantor" means Winn-Dixie; however, if Winn-Dixie is the Tenant under this Lease, then any reference to Guarantor in this Lease shall be deemed deleted and of no effect.

"Guaranty" means the guaranty of this Lease, dated this date, executed by Guarantor in favor of Landlord; however, if Winn-Dixie is the Tenant under this

Lease, then any reference to Guaranty in this Lease shall be deemed deleted and of no effect.

"Hazardous Condition" will mean the presence, discharge, disposal, storage or release of any Hazardous Substance on or in the Improvements, air, soil, groundwater, surface water or soil vapor on or about the Leased Premises, or that migrates, flows, percolates, diffuses or in any way moves onto or into the Leased Premises, or from the Leased Premises into adjacent or other property.

"Hazardous Substances" means any hazardous or toxic substances, materials or wastes, including without limitation any flammable explosives, radioactive materials, friable asbestos, kepone, polychlorinated biphenyls (PCB's), electrical transformers, batteries, paints, solvents, chemicals, petroleum products, or other man-made materials with hazardous, carcinogenic or toxic characteristics, and such other solid, semi-solid, liquid or gaseous substances which are radioactive, toxic, ignitable, corrosive, carcinogenic or otherwise dangerous to human, plant, or animal health or well-being, and those substances, materials, and wastes listed in the United States Department of Transportation Table (49 CFR 972.101) or by the Environmental Protection Agency, as hazardous substances (40 CFR Part 302, and amendments thereto) or such substances, materials and wastes which are or become regulated under any applicable local, State or federal law including without limitation any material, waste or substance which is (i) petroleum, (ii) asbestos, (iii) PCB's, (iv) designated as a "hazardous substance," "hazardous waste," "hazardous materials," "toxic substances," "contaminants," or (v) other pollution under any applicable Environmental Laws.

"Impositions" shall have the meaning assigned to such term in paragraph 12(a) of this Lease.

"Improvements" shall have the meaning assigned to such term in paragraph 2 of this Lease.

"Initial Term" shall have the meaning assigned to such term in paragraph 4 of this Lease.

"Institutional Investor" shall mean any of the following persons existing under the laws of the United States or any state thereof or of the District of Columbia or Canada or any province thereof: (i) any bank, trust company, national banking association or savings and loan association, acting for its own account or in a fiduciary capacity, (ii) any charitable foundation, eleemosynary institution, church or fraternal order, (iii) any insurance company, (iv) any pension, profit-sharing, retirement trust or fund for which any bank, trust company, national banking association or savings and loan association or investment advisor registered under the Investment Advisers Act of 1940, as amended, is acting as trustee or

agent, or if self-managed, having funds of at least $50,000,000, (v) any investment company, as defined in the Investment Company Act of 1940, as amended, (vi) any college or university, or (vii) any government, any public employees' pension or retirement system, or any other governmental agency supervising the investment of public funds.

"Land" shall have the meaning assigned to such term in paragraph 2 of this Lease, and which is legally described on attached Exhibit B-1.

"Landlord" shall have the meaning assigned to such term in the introductory paragraph of this Lease.

"Landlord's Assignee" shall mean a Mortgagee which takes an Assignment as additional collateral for its loan to Landlord.

"Landlord's Equipment" shall have the meaning assigned to such term in paragraph 2 of this Lease, and will include the Replacement Equipment.

"Lease" shall have the meaning assigned to such term in the introductory paragraph of this Lease and shall include all supplements and amendments permitted by this Lease.

"Leased Premises" shall have the meaning assigned to such term in paragraph 2 of this Lease.

"Legal Requirements" means all present and future laws (including Environmental Laws), codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements, even if unforeseen or extraordinary, of every duly constituted governmental authority or agency (but excluding those by their terms not applicable to Tenant or the Leased Premises as a result of some grandfather clause or similar provision), and all covenants, restrictions and conditions now or hereafter of record which may be applicable to Tenant or to the Leased Premises, or to the use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of the Leased Premises, even if compliance therewith necessitates structural changes to the Improvements or results in interference with the use or enjoyment of the Leased Premises.

"Lien" means charge, encumbrance, title retention agreement, pledge, lien, security interest, mortgage and/or deed of trust.

"Loan" means the mortgage loan, if any, obtained by Landlord from a Mortgagee to finance the acquisition of the Leased Premises, as evidenced by the Loan Documents, or in connection with the Expansion Financing, if any.

"Loan Documents" means the Note, the Note Agreements, the Mortgage and the Assignment, collectively.

"Make-Whole Amount" means the greater of (x) the amount, if any, by which (i) the present value of all future payments of principal and interest due on that portion of the unpaid principal amount of the Note to be prepaid, payable from the date of prepayment to the Maturity Date calculated by discounting each such future payment from the due date thereof to such date of prepayment at a rate per annum equal to 50 basis points over the Treasury Constant Maturity Yield Index exceeds (ii) 100% of that portion of the principal amount of the Note to be prepaid on the date of prepayment and (y) 0.5% of the amount of principal to be so prepaid.

"Material Adverse Effect" means a material adverse effect on (a) the business, condition (financial or otherwise), assets, liabilities or operations of Tenant or Guarantor, if any, on a consolidated basis, which has caused or could reasonably be expected to cause the Consolidated Tangible Net Worth of Tenant or Guarantor, if any, to decline by ten percent (10%) or more from its level immediately prior to the event causing such decline, (b) the ability of Tenant and Guarantor, if any, taken together, to perform Tenant's obligations under this Lease, (c) the validity or enforceability of this Lease or the rights and remedies of Landlord hereunder, or (d) the value, utility or useful life of the Leased Premises, which has caused or could reasonably be expected to cause a decline in the fair market value of the Leased Premises by five percent (5%) or more from the fair market value of the Leased Premises immediately prior to the event causing such decline, or the use, or ability to use, the Leased Premises for the purpose for which it was intended.

"Mortgage" means a first mortgage, deed of trust, deed to secure debt or similar security instrument issued with respect to and creating a Lien on the Leased Premises in favor of a Mortgagee.

"Mortgagee" means a person or entity that is the trustee for the holder(s) of the Loan Documents; however, if there is no Mortgagee, then any reference to Mortgagee or Mortgage in this Lease shall be deemed deleted and of no effect except to the extent that the context of this Lease contemplates that Mortgagee will act as an escrow agent for the holding and disposition of any Net Award or Net Proceeds, in which event such term shall be deemed to refer to a title insurance company or financial institution, reasonably acceptable to Landlord and Tenant, serving as escrow agent for the purposes contemplated in this Lease.

"Net Award" means the entire award payable by reason of a Condemnation, less any expenses incurred by Landlord, Tenant or a Mortgagee in collecting such