**EXHIBIT "B" (part 3)**

award, and less any portion of such award retained by Tenant pursuant to paragraph 15.

"Net Proceeds" means the entire proceeds of any insurance required under paragraph 13, together with any self-insurance payment required of Tenant, less any expenses incurred by Landlord, Tenant or a Mortgagee in collecting such proceeds or payment.

"Note" means any secured note or notes or promissory note relating to the Leased Premises executed by Landlord in favor of a holder and secured by a Mortgage and an Assignment issued with respect to the Leased Premises.

"Note Agreement" means any Note Purchase Agreement or similar agreement between Landlord and the purchaser or purchasers of any Note or Notes relating to the Leased Premises.

"Overdue Payment" means any installment of Rent or any payment of Additional Monetary Obligations (including Additional Monetary Obligations which Landlord or Mortgagee shall have paid on behalf of Tenant) due from Tenant that is not paid when due.

"Permitted Encumbrances" means:

    (i)   easements, rights-of-way, servitudes, other similar reservations, rights and restrictions and other defects and irregularities in the title to the Leased Premises, none of which materially lessens the value of the Leased Premises or materially impairs the use of the Leased Premises for the purposes held by Tenant;

    (ii)  matters set forth in Schedule B, Part I of the loan title insurance policy relating to the Leased Premises issued to the Mortgagee pursuant to the Note Agreement in connection with the issuance of the Notes;

    (iii)  any condemnation right reserved to or vested in any municipality or public authority with respect to the Leased Premises or any interest therein; and

    (iv)  any Liens for Impositions not then delinquent and any Liens of mechanics, materialmen and laborers for work or services performed or materials furnished in connection with the Leased Premises which are not then overdue or the existence, amount or validity of which is being contested by Tenant pursuant to, and as permitted by, paragraph 19.

"Property Loss" means any physical damage to or destruction of the Leased Premises or any part thereof by fire, windstorm, flood, earthquake, war or civil insurrection, accident, or other casualty.

"Purchase Offer" means an irrevocable offer by Tenant to Landlord to purchase the Leased Premises on the Termination Date specified therein and, in case a Purchase Offer is made pursuant to paragraph 14(b) or 15(b), any Net Proceeds or Net Award, as applicable, and at the purchase price therefor determined pursuant to Exhibit F.

"Remedial Action" means any investigation or monitoring of site conditions, any clean-up, containment, remediation, removal or restoration work required or performed by any federal, state or local governmental agency or political subdivision or performed by any nongovernmental entity or person, or any fines, penalties, or cost contributions paid or payable by any nongovernmental entity or person, due to the existence or suspected existence of a Hazardous Condition.

"Rent" shall have the meaning assigned to such term in paragraph 5(a) of this Lease.

"Rent Payment Dates" shall have the meaning assigned to such term in paragraph 5(a) of this Lease.

"Replaced Equipment" shall have the meaning assigned to such term in paragraph 8(c) of this Lease.

"Replacement Equipment" shall have the meaning assigned to such term in paragraph 8(c) of this Lease.

"Requisition" means any temporary requisition or confiscation of the use or occupancy of the Leased Premises by any governmental authority, civil or military, whether pursuant to an agreement with such governmental authority in settlement of or under threat of any such requisition or confiscation, or otherwise.

"Site Plan" shall have the meaning assigned to such term in paragraph 2 of this Lease, and which is shown on attached Exhibit B-2.

"State" means the state in which the Leased Premises is located.

"Store Expansion" means Tenant's construction of an addition to the Improvements to expand the floor area or other facilities of the retail supermarket store building constituting Improvements, which may be within the area(s) delineated on the Site Plan as "Expansion" or "Expansion Area," or within other areas within the Leased

Premises or, subject to the conditions of paragraph 28(b) above, on additional land adjacent to the Leased Premises.

"Substitute Guaranty" shall have the meaning assigned to such term in paragraph 11(f) of this Lease; however, if Winn-Dixie is the Tenant under this Lease, then any reference to Substitute Guaranty in this Lease shall be deemed deleted and of no effect.

"Substitute Lease" shall have the meaning assigned to such term in paragraph 11(f) of this Lease.

"Substitute Loan Documents" shall have the meaning assigned to such term in paragraph 11(f) of this Lease.

"Substitute Property" shall have the meaning assigned to such term in paragraph 11 of this Lease.

"Substitution Date" means the date on which Landlord and Tenant effectuate the substitution of the Leased Premises for another premises pursuant to the Substitution Option.

"Substitution Option" means any right Tenant may have to substitute other premises for the Leased Premises pursuant to paragraph 11 and paragraph 14, 15 or 16 of this Lease.

"Taking" means any taking of the Leased Premises in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of any agreement with any condemnor in settlement of or under threat of any such condemnation or other eminent domain proceeding or by any other means, or any de facto condemnation.

"Tenant" means the Tenant named in the introductory paragraph of this Lease together with any entity succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entirety.

"Tenant's Business" means the retail grocery and supermarket business, including the distribution and warehousing, for eventual sale to consumers, of grocery items, delicatessen items, bakery items, meat and seafood, vegetable/fruit/produce, beer and wine sales, pharmacy items, and photographic items

"Tenant's Equipment" shall have the meaning assigned to such term in paragraph 3 of this Lease.

"Term" means the Initial Term, any Extended Term or the Initial Term together with any Extended Term.

"Termination Date" means the Rent Payment Date established in Tenant's Purchase Offer given pursuant to paragraph 14(g), 15(b) or 16 of this Lease, as the termination date of this Lease pursuant to any such paragraph, which date shall be not less than 120 days nor more than 240 days after the effective date of such notice to Landlord.

"Treasury Constant Maturity Yield Index" means (i) the yields reported, as of 10:00 a.m. (New York City time) on the third Business Day preceding the date of prepayment, on the display designated as "USD" on the Bloomberg Financial Markets Commodities News Screen or the equivalent screen provided by Bloomberg Financial Markets News (or any nationally recognized publicly available on-line source of similar market data) for actively traded U.S. Treasury securities having a maturity equal to the remaining average life of the Note, or (ii) if such yields are not reported as of such time or the yields reported as of such time are not ascertainable, the Treasury Constant Maturity Series Yields reported, for the latest day for which such yields have been so reported as of the third Business Day preceding the date of prepayment, in Federal Reserve Statistical Release H.15 (519) (or any comparable successor publication) for actively traded U.S. Treasury Securities having a maturity equal to the remaining life of the Note. Such implied yield will be determined, if necessary, by (a) converting U.S. Treasury bill quotations to bond-equivalent yields in accordance with accepted financial practice and (b) interpolating linearly between (1) the actively traded U.S. Treasury security having a maturity closest to and greater than the remaining life of the Note and (2) the actively traded U.S. Treasury security having a maturity closest to and less than the remaining life of the Note.

"Winn-Dixie" means Winn-Dixie Stores, Inc., a Florida corporation, together with any entity succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entirety.

"Year 2000 Compliant and Ready" means that (a) Tenant's hardware and software systems with respect to the operation of its business and its general business plan will: (i) handle date information involving any and all dates before, during and/or after January 1, 2000, including accepting input, providing output, and performing date calculations in whole or in part; (ii) operate, accurately without interruption on and in respect of any and all dates before, during and/or after January 1, 2000 and without any change in performance; and (iii) store and provide date input information without creating any ambiguity as to the century; and (b) Tenant has developed alternative plans to ensure business continuity in the event of the failure of any or all of items (i) through (iii) above.

EXHIBIT B-1

## TALLAHASSEE (KERRY), FLORIDA

A TRACT OF LAND LYING IN SECTION 27, TOWNSHIP 2 NORTH, RANGE 1 EAST, LEON COUNTY, FLORIDA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCE AT A CONCRETE MONUMENT MARKING THE NORTHWEST CORNER OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 27 AND RUN NORTH 89 DEGREES 55 MINUTES 47 SECONDS WEST ALONG THE NORTH BOUNDARY OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 27, A DISTANCE OF 792.95 FEET TO A CONCRETE MONUMENT, THENCE NORTH 00 DEGREES 39 MINUTES 35 SECONDS WEST 84.02 FEET TO A CONCRETE MONUMENT MARKING THE SOUTHEAST CORNER OF PROPERTY DESCRIBED IN DEED BOOK 87, PAGE 49 OF THE PUBLIC RECORDS OF LEON COUNTY, FLORIDA, THENCE NORTH 84 DEGREES 25 MINUTES 00 SECONDS WEST ALONG THE SOUTHERLY BOUNDARY OF SAID PROPERTY 90.43 FEET, THENCE SOUTH 23 DEGREES 47 MINUTES 24 SECONDS WEST ALONG A LINE 400 FEET EASTERLY OF AND PARALLEL WITH THE EASTERLY RIGHT OF WAY BOUNDARY OF THOMASVILLE ROAD (STATE ROAD NO. 61) A DISTANCE OF 210.38 FEET TO A CONCRETE MONUMENT, THENCE SOUTH 66 DEGREES 08 MINUTES 13 SECONDS EAST 508.12 FEET. THENCE SOUTH 66 DEGREES 31 MINUTES 41 SECONDS EAST 94.96 FEET TO THE POINT OF BEGINNING. FROM SAID POINT OF BEGINNING THENCE RUN SOUTH 66 DEGREES 07 MINUTES 57 SECONDS EAST 104.62 FEET TO A CONCRETE MONUMENT, THENCE SOUTH 15 DEGREES 13 MINUTES 08 SECONDS WEST 164.47 FEET, THENCE SOUTH 74 DEGREES 17 MINUTES 26 SECONDS WEST 69.33 FEET TO A BUILDING CORNER, THENCE SOUTH 74 DEGREES 23 MINUTES 31 SECONDS WEST ALONG A WALL 206.02 FEET TO A BUILDING CORNER, THENCE SOUTH 69 DEGREES 49 MINUTES 15 SECONDS WEST 117.07 FEET. THENCE SOUTH 20 DEGREES 57 MINUTES 00 SECONDS EAST 119.51 FEET, THENCE SOUTH 23 DEGREES 50 MINUTES 07 SECONDS WEST 208.60 FEET TO A POINT ON A CURVE CONCAVE TO THE NORTHEAST, SAID POINT ALSO BEING ON THE NORTHERLY RIGHT OF WAY OF KERRY FOREST PARKWAY (100 FOOT RIGHT OF WAY), THENCE NORTHWESTERLY ALONG SAID RIGHT OF WAY AND CURVE WITH A RADIUS OF 1661.71 FEET THROUGH A CENTRAL ANGLE OF 02 DEGREES 50 MINUTES 11 SECONDS FOR AN ARC DISTANCE OF 82.26 FEET (THE CHORD OF SAID ARC BEARS NORTH 56 DEGREES 26 MINUTES 18 SECONDS WEST 82.25 FEET), THENCE NORTH 55 DEGREES 03 MINUTES 10 SECONDS WEST 151.60 FEET TO A POINT OF CURVE CONCAVE SOUTHWESTERLY. THENCE NORTHWESTERLY ALONG SAID CURVE WITH A RADIUS OF 2624.88 FEET THROUGH A CENTRAL ANGLE OF 01 DEGREES 17 MINUTES 08 SECONDS FOR AN ARC DISTANCE OF 58.89 FEET (CHORD BEARING NORTH 55 DEGREES 43 MINUTES 53 SECONDS WEST 58.89 FEET), THENCE LEAVING SAID NORTHERLY RIGHT OF WAY NORTH 23 DEGREES 51 MINUTES 16 SECONDS EAST 353.58 FEET, THENCE NORTH 74 DEGREES 21 MINUTES 19 SECONDS EAST 201.53 FEET TO A BUILDING CORNER, THENCE NORTH 74 DEGREES 23 MINUTES 53 SECONDS EAST ALONG A WALL 205.93 FEET TO A BUILDING CORNER, THENCE NORTH 74

**TALLAHASSEE (KERRY), FLORIDA, CONT'D.**

DEGREES 30 MINUTES 25 SECONDS EAST 72.82 FEET TO THE POINT OF BEGINNING.

TOGETHER WITH EASEMENTS CONTAINED IN THAT CERTAIN INDENTURE OF ESTABLISHMENT OF PROTECTIVE COVENANTS, CONDITIONS AND RESTRICTIONS AND GRANTS OF EASEMENTS DATED AUGUST 31, 1990, BETWEEN BRUNO'S INC. AND TWIN ACTION PROPERTIES, INC., RECORDED IN OFFICIAL RECORDS BOOK 1454, PAGE 441, OF THE PUBLIC RECORDS OF LEON COUNTY, FLORIDA.

**EXHIBIT B-2 TO LEASE AGREEMENT - SITE PLAN**

To Be Provided Within Thirty (30) Days

Store #124
Tallahassee, Leon County, Florida

## EXHIBIT C TO LEASE AGREEMENT - LANDLORD'S EQUIPMENT

All machinery, apparatus, equipment, fittings, appliances and fixtures of every kind and nature whatsoever including all electrical, anti-pollution, heating, lighting, laundry, incinerating, power, air conditioning, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communication, garage and cooking systems, devices, machinery, apparatus, equipment, fittings, appliances, engines, pipes, pumps, tanks, motors, conduits, ducts, compressors and switch-boards, and all storm doors and windows, dishwashers, attached cabinets and partitions and all articles of personal property of every kind and nature whatsoever now or hereafter affixed to, attached to, placed upon, used or usable in any way in connection with the use, enjoyment, occupancy or operation of the Leased Premises and Improvements, but excluding Tenant's Equipment.

EXHIBIT D TO LEASE AGREEMENT - TENANT'S EQUIPMENT

All coolers, freezers, trade fixtures, goods, inventory, furniture and other personalty belonging to Tenant.

EXHIBIT E TO LEASE AGREEMENT - SCHEDULE OF RENT

A.    PRORATED RENT.  On the date of execution of this Lease by both Landlord
      and Tenant, Tenant shall pay Landlord prorated Rent in the amount of $712.29
      per day for the period beginning on the date of execution of this Lease and
      ending August 31, 1999.

B.    RENT DURING INITIAL TERM.

      Rent during the Initial Term shall be $292,140.60 per annum, payable quarterly
      on the first day of December, March, June and September of each calendar
      year, commencing September 1, 1999, and continuing thereafter throughout the
      Initial Term, in equal installments of $73,035.15.

C.    ADJUSTMENT TO RENT DURING INITIAL TERM FOLLOWING FINANCING
      OF STORE EXPANSION.

      Effective immediately upon Landlord's payment of the Expansion Cost pursuant
      to paragraphs 28(c) or 28(d) of the Lease, Rent for the remainder of the Initial
      Term will be increased by an amount per annum equal to the annual debt
      service, including repayment of principal, payable by Landlord to the holder of
      the Note or Notes in connection with the Expansion Financing.  Increased Rent
      will be payable quarterly commencing on the first Rent Payment Date following
      the Expansion Financing Date, and continuing through the last Rent Payment
      Date of the Initial Term.  Additionally, upon Landlord's payment of the Expansion
      Cost pursuant to paragraphs 28(c) or 28(d) of the Lease, Tenant will pay to
      Landlord an amount representing Landlord's increased debt service obligation
      resulting from the Expansion Financing for the period beginning on the date of
      such payment by Landlord and ending on the day preceding the next Rent
      Payment Date.  Said amount will not be considered rent under the Lease.

D.    RENT DURING ANY EXTENDED TERM.

      Rent during any Extended Term shall be $262,926.56 per annum, payable
      quarterly on the first day of December, March, June and September of each
      calendar year, commencing on the first day of the first calendar quarter of such
      Extended Term and continuing thereafter through each Extended Term(s), in
      equal installments of $65,731.64.

      All local, state and federal sales tax, if any, due in connection with the payment
      of Rent or Additional Monetary Obligations will be paid by Tenant directly to the
      taxing authority as Impositions.

## EXHIBIT F TO LEASE AGREEMENT - PURCHASE PRICE

The following schedule lists the Purchase Price on the applicable Termination Date as a percentage of the Cost of the Leased Premises stated below.

A.  Purchase Price in event of Casualty or Condemnation.
    For a Purchase Offer made pursuant to paragraphs 14 or 15 of this Lease, the Purchase Price is the Cost of the Leased Premises multiplied by the Percentage Amount listed below for the applicable Termination Date.

B.  Purchase Price in event of Economic Abandonment.
    For a Purchase Offer made pursuant to paragraph 16 of this Lease, the Purchase Price is the sum of (a) the Cost of the Leased Premises multiplied by the Percentage Amount listed below for the applicable Termination Date plus (b) the Make-Whole Amount required for prepayment of the Notes on the applicable Termination Date.

Cost of the Leased Premises:    $    3,428,000.00        Location:    Tallahassee

| Sequential Number | Termination Date | Percentage Amount | Sequential Number | Termination Date | Percentage Amount |
|---|---|---|---|---|---|
| 1 | 9/1/99 | 102.92592869% | 41 | 9/1/09 | 90.89193765% |
| 2 | 12/1/99 | 102.71497075% | 42 | 12/1/09 | 90.47351934% |
| 3 | 3/1/00 | 102.50032175% | 43 | 3/1/10 | 90.04799023% |
| 4 | 6/1/00 | 102.28191842% | 44 | 6/1/10 | 89.61523624% |
| 5 | 9/1/00 | 102.05969826% | 45 | 9/1/10 | 89.17514130% |
| 6 | 12/1/00 | 101.83359638% | 46 | 12/1/10 | 88.72758737% |
| 7 | 3/1/01 | 101.60354779% | 47 | 3/1/11 | 88.27245598% |
| 8 | 6/1/01 | 101.36948604% | 48 | 6/1/11 | 87.80962476% |
| 9 | 9/1/01 | 101.13134376% | 49 | 9/1/11 | 87.33897160% |
| 10 | 12/1/01 | 100.88905241% | 50 | 12/1/11 | 86.86037178% |
| 11 | 3/1/02 | 100.64254262% | 51 | 3/1/12 | 86.37369891% |
| 12 | 6/1/02 | 100.39174299% | 52 | 6/1/12 | 85.87882497% |
| 13 | 9/1/02 | 100.13658222% | 53 | 9/1/12 | 85.37561983% |
| 14 | 12/1/02 | 99.87698762% | 54 | 12/1/12 | 84.86395185% |
| 15 | 3/1/03 | 99.61288459% | 55 | 3/1/13 | 84.34368681% |
| 16 | 6/1/03 | 99.34419837% | 56 | 6/1/13 | 83.81468972% |
| 17 | 9/1/03 | 99.07085261% | 57 | 9/1/13 | 83.27682282% |
| 18 | 12/1/03 | 98.79276942% | 58 | 12/1/13 | 82.72994716% |
| 19 | 3/1/04 | 98.50986994% | 59 | 3/1/14 | 82.17392146% |
| 20 | 6/1/04 | 98.22207470% | 60 | 6/1/14 | 81.60860249% |
| 21 | 9/1/04 | 97.92930215% | 61 | 9/1/14 | 81.03384486% |
| 22 | 12/1/04 | 97.63147018% | 62 | 12/1/14 | 80.44950166% |
| 23 | 3/1/05 | 97.32849469% | 63 | 3/1/15 | 79.85542400% |
| 24 | 6/1/05 | 97.02029074% | 64 | 6/1/15 | 79.25146015% |
| 25 | 9/1/05 | 96.70677236% | 65 | 9/1/15 | 78.63745744% |
| 26 | 12/1/05 | 96.38785136% | 66 | 12/1/15 | 78.01326026% |
| 27 | 3/1/06 | 96.06343914% | 67 | 3/1/16 | 77.37871161% |
| 28 | 6/1/06 | 95.73344555% | 68 | 6/1/16 | 76.73365204% |
| 29 | 9/1/06 | 95.39777862% | 69 | 9/1/16 | 76.07792033% |
| 30 | 12/1/06 | 95.05634519% | 70 | 12/1/16 | 75.41135208% |
| 31 | 3/1/07 | 94.70905068% | 71 | 3/1/17 | 74.73378249% |
| 32 | 6/1/07 | 94.35579965% | 72 | 6/1/17 | 74.04504351% |
| 33 | 9/1/07 | 93.99649443% | 73 | 9/1/17 | 73.34496480% |
| 34 | 12/1/07 | 93.63103660% | 74 | 12/1/17 | 72.63337448% |
| 35 | 3/1/08 | 93.25932556% | 75 | 3/1/18 | 71.91009798% |
| 36 | 6/1/08 | 92.88125947% | 76 | 6/1/18 | 71.17495852% |
| 37 | 9/1/08 | 92.49673557% | 77 | 9/1/18 | 70.42777690% |
| 38 | 12/1/08 | 92.10564846% | 78 | 12/1/18 | 69.66837276% |
| 39 | 3/1/09 | 91.70789191% | 79 | 3/1/19 | 68.89656239% |
| 40 | 6/1/09 | 91.30335805% | 80 | 6/1/19 | 68.11216003% |

8/18/99

EXHIBIT G TO LEASE AGREEMENT - FORM OF ESTOPPEL CERTIFICATE

_____, a _____ [insert "Landlord" or "Tenant" as applicable] hereby certifies to [insert "Landlord" or "Tenant" as applicable], that, as of _____ (the "Certificate Date"), the following is true and correct:

1.    _____, Inc., a _____ corporation, is the tenant under a currently effective lease (as amended as described below, the "Lease") with _____, a _____, as the current landlord, dated as of August ___, 1999, conveying a leasehold estate of the property described therein (the "Premises"), and the Lease has been amended or supplemented only as follows:

2.    The term of the Lease commenced August ___, 1999, and is scheduled to expire on August 31, 2019 unless renewed or terminated in accordance with the terms of the Lease. Pursuant to the Lease, Tenant is entitled to renew the Lease for 6 successive terms of 5 years each.

3.    To the best of [insert Landlord's or Tenant's, as applicable] knowledge, Tenant is not in material Default under the Lease, and all rent and other charges due from Tenant to Landlord have been paid through and including _____, ____, and Tenant currently as no defense, set-offs, or counterclaims to the payment of rent or other charges due Landlord under the Lease, except as follows:

4.    To the best of [insert Landlord's or Tenant's, as applicable] knowledge, Landlord is not in material Default under the Lease, except as follows:

5.    The Lease contains a right of first refusal in favor of Tenant, and other provisions requiring Tenant to offer to purchase the Premises or to substitute the Premises for other leased premises upon the occurrence of certain events.

6.    [insert Landlord or Tenant, as applicable] has received no notice of any sale, transfer, assignment, or pledge of the interest of [insert Landlord or Tenant, as applicable] in the Lease [or in the case of Landlord's interest, in the rent due thereunder], except as follows:

7.      [insert Landlord or Tenant, as applicable] is not the subject of any transfer for the benefit of creditors, or any bankruptcy or reorganization filing under any applicable bankruptcy law.

IN WITNESS WHEREOF, the undersigned has executed this certificate, which may be relied upon by [insert Landlord or Tenant, as applicable] and any mortgagee, successor or assign of [insert Landlord or Tenant, as applicable].

[insert appropriate signature blocks for certifying party, witnesses and notary public, as applicable]

EXHIBIT H TO LEASE AGREEMENT - FORM OF MEMORANDUM OF LEASE

[insert document headings as appropriate for recordation]

## MEMORANDUM OF LEASE

**THIS MEMORANDUM OF LEASE** is hereby executed this _____ day of August, 1999, by and between:

**TALLAHASSEE 99-FL, LLC,** a Delaware limited liability company ("Landlord"), whose mailing address is c/o Principal Net Lease Investors, L.L.C., 711 High Street, Des Moines, Iowa 50392-0301 Attention: Gary Lines;

and

**WINN-DIXIE STORES, INC.,** a Florida corporation ("Tenant"), whose mailing address is 5050 Edgewood Court, Jacksonville, Florida 32254 Attention: Chief Financial Officer;

which terms "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

## W I T N E S S E T H:

**WHEREAS,** Landlord and Tenant did enter into a Lease Agreement dated as of August ___, 1999 (the "Lease"); and

**WHEREAS,** Landlord and Tenant desire to memorialize the terms and conditions of the Lease as a matter of public record.

**NOW, THEREFORE, FOR VALUABLE CONSIDERATION,** the receipt and sufficiency of which are hereby acknowledged, Landlord does hereby demise and lease unto Tenant, and Tenant does hereby lease from Landlord, the property more particularly described on attached Exhibit A and as depicted on the Site Plan attached as an exhibit to the Lease, together with all Improvements now or hereafter located thereon (collectively the "Premises").

The Term of the Lease shall commence on the Commencement Date as defined in the Lease and shall terminate, unless sooner terminated or extended as provided in the Lease, on August 31, 2019. Annual rent, payable in quarterly installments on the 1st day of each December, March, June and September during the term thereof, and provisions regulating the use and purposes to which the Premises shall be limited, are set forth in detail in the Lease and Landlord and Tenant agree to abide by the terms of the Lease. Tenant, at its option, shall be entitled to the privilege of 6 successive extensions of the term of the Lease, each extension to be for a period of 5 years each. Tenant has a right of first refusal to purchase the Premises under the Lease.

The Lease contains the following provision:

Liens. TENANT SHALL NOT, DIRECTLY OR INDIRECTLY, CREATE OR PERMIT TO BE CREATED OR TO REMAIN, AND SHALL PROMPTLY DISCHARGE, ANY LIEN (OTHER THAN THE MORTGAGE, THE ASSIGNMENT, ANY PERMITTED ENCUMBRANCE, OR ANY LIEN CREATED BY OR RESULTING FROM ANY ACTION BY LANDLORD NOT CONSENTED TO BY TENANT IN ADVANCE AND IN WRITING), WHETHER CREATED OR ARISING BEFORE, ON OR AFTER THE COMMENCEMENT DATE, ON THE LEASED PREMISES OR ANY RENT, ADDITIONAL MONETARY OBLIGATIONS OR ANY OTHER SUMS PAYABLE BY TENANT UNDER THIS LEASE. NOTICE IS HEREBY GIVEN THAT LANDLORD SHALL NOT BE LIABLE FOR ANY LABOR, SERVICES OR MATERIAL FURNISHED OR TO BE FURNISHED TO TENANT, OR TO ANYONE HOLDING THE LEASED PREMISES THROUGH OR UNDER TENANT, AND THAT NO MECHANICS' OR OTHER LIENS FOR ANY SUCH LABOR, SERVICES OR MATERIALS SHALL ATTACH TO OR AFFECT THE INTEREST OF LANDLORD IN THE LEASED PREMISES.

All the terms, conditions, provisions and covenants of the Lease are incorporated herein by this reference for all purposes as though written out at length herein, and both the Lease and this Memorandum of Lease shall be deemed to constitute a single instrument or document. This Memorandum of Lease is not intended to amend, modify, supplement, or supersede any of the provisions of the Lease and, to the extent there may be any conflict or inconsistency between the Lease or this Memorandum of Lease, the Lease shall control.

**IN WITNESS WHEREOF,** Landlord and Tenant have executed this Memorandum of Lease as of the date first above written.

Witnesses:                           **LANDLORD:**

**TALLAHASSEE 99-FL, LLC,** a Delaware limited liability company

By:    Principal Net Lease Investors, L.L.C., a Delaware limited liability company, its sole member

    By:    Principal Life Insurance Company, an Iowa corporation, its sole member

Name: _____          By: _____
                                 Name: _____
                                 Title: _____
Name: _____

Name: _____          By: _____
                                 Name: _____
                                 Title: _____
Name: _____

                                      [CORPORATE SEAL]

STATE OF _____ )
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _____ day of August, 1999, by _____ and _____, the _____ and _____, respectively, of PRINCIPAL LIFE INSURANCE COMPANY, an Iowa corporation, on behalf of the corporation, as the sole member of PRINCIPAL NET LEASE INVESTORS, L.L.C., a Delaware limited liability company, the sole member of TALLAHASSEE 99-FL, LLC, a Delaware limited liability company. Each of them either [ ] is personally known to me or [ ] has produced a _____ state drivers license as identification.

                              NOTARY PUBLIC, State of _____
                              Printed Name: _____
[NOTARIAL SEAL]               Commission No.: _____
                              My commission expires: _____

**TENANT:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

Name: _____     By: _____
                              Name: _____
_____   Title: _____ President
Name: _____

[CORPORATE SEAL]

STATE OF FLORIDA )
COUNTY OF DUVAL )

    The foregoing instrument was acknowledged before me this _____ day of August, 1999, by _____ , the _____ president of WINN-DIXIE STORES, Inc., a Florida corporation, on behalf of the corporation. He either [  ] is personally known to me or [  ] has produced _____ state drivers license as identification.

                              _____
                              NOTARY PUBLIC, State of _____
                              Printed Name: _____
[NOTARIAL SEAL]               Commission No.: _____
                              My commission expires: _____

## EXHIBIT I TO LEASE AGREEMENT - FORM OF COMPLETION CERTIFICATE

This Certificate is being delivered by _____ ("Tenant"), pursuant to paragraph 28 of the Lease Agreement dated as of August ___, 1999 (the "Lease"), between _____ ("Landlord") and Tenant. Tenant hereby warrants, represents and certifies to Landlord as of this ____ day of_____, ____, as follows (capitalized terms used herein and not otherwise defined have the meanings set forth in the Lease):

(a)     The Improvements are substantially complete in accordance with the provisions of paragraph 28 of the Lease and are ready for operation in Tenant's Business.

(b)     The Cost actually incurred as of the date hereof by Tenant with respect to the Leased Premises as set forth below [supply data as applicable]:

Cost of Land:

Cost of Improvements based upon an approved appraisal (including site work and architects' and engineers' fees):

Cost of Landlord's Equipment:

Capitalized Expenses (including capitalized interest, financing costs and other items included in the definition of Cost in the Lease):

TOTAL COST:

(c)     All certificates of occupancy and other governmental consents needed for the use of the Leased Premises have been obtained.

(d)     There are no claims of any person which are past due and unpaid relating to the construction of the Improvements or acquisition of the Landlord's Equipment except claims which are being contested as permitted by the Lease.

(e)     Title to the Improvements and the Landlord's Equipment is vested in Landlord free and clear of all Liens other than the Lease and Permitted Encumbrances and Tenant accepts the Leased Premises in accordance with the provision of the Lease.

(f)     The Lease is in full force and effect on the date hereof. The Lease has not been amended and no Event of Default has occurred and is continuing thereunder.

IN WITNESS WHEREOF, the undersigned has duly executed, sealed and delivered this certificate on this the date first above written.

[Witness Signature Blocks]                    [Tenant's Signature Block]

THIS INSTRUMENT PREPARED BY
AND RECORD AND RETURN TO:

Douglas G. Stanford, Esq.
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
50 North Laura Street, Suite 2800
Jacksonville, Florida 32202

## MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE is hereby executed this 26th day of August, 1999, by and between:

TALLAHASSEE 99-FL, LLC, a Delaware limited liability company ("Landlord"), whose mailing address is c/o Principal Net Lease Investors, L.L.C., 711 High Street, Des Moines, Iowa 50392-0301 Attention: Gary Lines;

and

WINN-DIXIE STORES, INC., a Florida corporation ("Tenant"), whose mailing address is 5050 Edgewood Court, Jacksonville, Florida 32254 Attention: Chief Financial Officer;

which terms "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

## WITNESSETH:

WHEREAS, Landlord and Tenant did enter into a Lease Agreement dated as of even date herewith (the "Lease"); and

WHEREAS, Landlord and Tenant desire to memorialize the terms and conditions of the Lease as a matter of public record.

NOW, THEREFORE, FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Landlord does hereby demise and lease unto Tenant, and Tenant does hereby lease from Landlord, the property more particularly described on attached Exhibit A and as depicted on the Site Plan attached as an exhibit to the Lease, together with all Improvements now or hereafter located thereon (collectively the "Premises").

JK 128822.1 80130 02051
7/31/99 4:23 PM

Store #124,
Tallahassee, Leon County, Florida

The Term of the Lease shall commence on the Commencement Date as defined in the Lease and shall terminate, unless sooner terminated or extended as provided in the Lease, on August 31, 2019. Annual rent, payable in quarterly installments on the 1st day of each December, March, June and September during the term thereof, and provisions regulating the use and purposes to which the Premises shall be limited, are set forth in detail in the Lease and Landlord and Tenant agree to abide by the terms of the Lease. Tenant, at its option, shall be entitled to the privilege of 6 successive extensions of the term of the Lease, each extension to be for a period of 5 years each. Tenant has a right of first refusal to purchase the Premises under the Lease.

The Lease contains the following provision:

Liens. TENANT SHALL NOT, DIRECTLY OR INDIRECTLY, CREATE OR PERMIT TO BE CREATED OR TO REMAIN, AND SHALL PROMPTLY DISCHARGE, ANY LIEN (OTHER THAN THE MORTGAGE, THE ASSIGNMENT, ANY PERMITTED ENCUMBRANCE, OR ANY LIEN CREATED BY OR RESULTING FROM ANY ACTION BY LANDLORD NOT CONSENTED TO BY TENANT IN ADVANCE AND IN WRITING), WHETHER CREATED OR ARISING BEFORE, ON OR AFTER THE COMMENCEMENT DATE, ON THE LEASED PREMISES OR ANY RENT, ADDITIONAL MONETARY OBLIGATIONS OR ANY OTHER SUMS PAYABLE BY TENANT UNDER THIS LEASE. NOTICE IS HEREBY GIVEN THAT LANDLORD SHALL NOT BE LIABLE FOR ANY LABOR, SERVICES OR MATERIAL FURNISHED OR TO BE FURNISHED TO TENANT, OR TO ANYONE HOLDING THE LEASED PREMISES THROUGH OR UNDER TENANT, AND THAT NO MECHANICS' OR OTHER LIENS FOR ANY SUCH LABOR, SERVICES OR MATERIALS SHALL ATTACH TO OR AFFECT THE INTEREST OF LANDLORD IN THE LEASED PREMISES.

All the terms, conditions, provisions and covenants of the Lease are incorporated herein by this reference for all purposes as though written out at length herein, and both the Lease and this Memorandum of Lease shall be deemed to constitute a single instrument or document. This Memorandum of Lease is not intended to amend, modify, supplement, or supersede any of the provisions of the Lease and, to the extent there may be any conflict or inconsistency between the Lease or this Memorandum of Lease, the Lease shall control.

**IN WITNESS WHEREOF,** Landlord and Tenant have executed this Memorandum of Lease as of the date first above written.

Witnesses:                           **LANDLORD:**

                                     **TALLAHASSEE 99-FL, LLC,** a Delaware limited liability company

                                     By:    Principal Net Lease Investors, L.L.C., a Delaware limited liability company, its sole member

                                     By:    Principal Life Insurance Company, an Iowa corporation, its sole member

Name: *Helen L. Boles*

Name: *Julia L. McDonald*              By:    _____
                                       Name:  CLARE TANDE
                                       Title: COUNSEL

Name: *Helen L. Boles*

                                       By:    *Karen A Pearston*
Name: *Julia L. McDonald*              Name:  KAREN A. PEARSTON
                                       Title: COUNSEL

                                       [CORPORATE SEAL]

STATE OF *Iowa*     )
COUNTY OF *Polk*    )

The foregoing instrument was acknowledged before me this *17th* day of August, 1999, by *CLARE TANDE* and *KAREN A. PEARSTON*, the *COUNSEL* and *COUNSEL*, respectively, of Principal Life Insurance Company, an Iowa corporation, on behalf of the corporation, as the sole member of Principal Net Lease Investors, L.L.C., a Delaware limited liability company, the sole member of TALLAHASSEE 99-FL, LLC, a Delaware limited liability company. Each of them either [X] is personally known to me or [ ] has produced a _____ state drivers license as identification.

BARBARA M. SEAMANDS
MY COMMISSION EXPIRES
September 27, 1999

[NOTARIAL SEAL]

*Barbara M. Seamands*
NOTARY PUBLIC, State of *Iowa*
Printed Name: *Barbara M. Seamands*
Commission No.: *157881*
My commission expires: *9/27/99*

**TENANT:**

**WINN-DIXIE STORES, INC.,**
a Florida corporation

Name: R.D. Peterson

By: _R. P. McCook_
Name: R. P. McCook
Title: Vice President

Name: Mary Kay Vega

[CORPORATE SEAL]

STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this 5th day of August, 1999, by _R.P. McCook_ , the _Vice_ president of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation. He either [ ] is personally known to me or [ ] has produced _____ state drivers license as identification.

NOTARY PUBLIC, State of _FL_
Printed Name: _____

[NOTARIAL SEAL]

Commission No.: _____
My commission expires:

Mary Kay Vega
MY COMMISSION # CC577749 EXPIRES
September 29, 2000
BONDED THRU TROY FAIN INSURANCE, INC.

## EXHIBIT B

FOR PURPOSES OF THIS FINANCING STATEMENT, COLLATERAL MEANS:

1.    THE ENTIRE RIGHT, TITLE AND INTEREST OF DEBTOR IN AND TO THE LAND PARCEL DESCRIBED IN EXHIBIT A ATTACHED HERETO (THE "LAND PARCEL"), TOGETHER WITH (A) ALL RIGHT, TITLE AND INTEREST OF DEBTOR IN AND TO ALL BUILDINGS, STRUCTURES AND OTHER IMPROVEMENTS NOW STANDING OR AT ANY TIME HEREAFTER CONSTRUCTED OR PLACED UPON THE LAND PARCEL, INCLUDING, WITHOUT LIMITATION, ALL RIGHT, TITLE AND INTEREST OF DEBTOR IN AND TO ALL BUILDING EQUIPMENT AND BUILDING FEATURES OF EVERY KIND AND NATURE ON THE LAND PARCEL OR IN ANY SUCH BUILDING, STRUCTURE OR OTHER IMPROVEMENTS INCLUDING LANDLORD'S EQUIPMENT BUT EXCLUDING TENANT'S EQUIPMENT (SAID BUILDINGS, STRUCTURES, OTHER IMPROVEMENTS AND BUILDING EQUIPMENT, AND BUILDING FIXTURES BEING HEREIN COLLECTIVELY CALLED THE "IMPROVEMENTS"); (B) ALL FIXTURES, FITTINGS, APPLIANCES, APPARATUS, EQUIPMENT, MACHINERY AND ARTICLES OF PERSONAL PROPERTY AND REPLACEMENTS THEREOF NOW OR AT ANY TIME HEREAFTER OWNED BY DEBTOR, NOW OR AT ANY TIME HEREAFTER AFFIXED TO, ATTACHED TO, PLACED UPON, OR USED IN ANY WAY IN CONNECTION WITH THE COMPLETE AND COMFORTABLE USE, ENJOYMENT, OCCUPANCY OR OPERATION OF THE IMPROVEMENTS ON THE PROPERTY INCLUDING LANDLORD'S EQUIPMENT BUT EXCLUDING TENANT'S EQUIPMENT; (C) ALL RIGHT, TITLE AND INTEREST OF DEBTOR, IN AND TO ALL AND SINGULAR THE TENEMENTS, HEREDITAMENTS, EASEMENTS, RIGHTS-OF-WAY, RIGHTS, PRIVILEGES AND APPURTENANCES IN AND TO THE PROPERTY, NOW OR AT ANY TIME HEREAFTER BELONGING OR IN ANY WAY APPERTAINING THERETO, AND ALL RIGHT, TITLE AND INTEREST OF DEBTOR IN, TO AND UNDER ANY STREETS, WAYS, ALLEYS, VAULTS, GORES OR STRIPS OF LAND ADJOINING THE PROPERTY; (D) ALL CLAIMS OR DEMANDS OF DEBTOR, IN LAW OR IN EQUITY, IN POSSESSION OR EXPECTANCY OF, IN AND TO THE PROPERTY; AND (E) ALL RENTS, INCOME, REVENUES, ISSUES, AWARDS, PROCEEDS AND PROFITS FROM AND IN RESPECT OF THE PROPERTY DESCRIBED IN THIS PARAGRAPH 1, ALL OF WHICH ARE HEREBY SPECIFICALLY ASSIGNED, TRANSFERRED AND SET OVER TO SECURED PARTY, IT BEING THE INTENTION OF THE PARTIES HERETO THAT, SO FAR AS MAY BE PERMITTED BY LAW, ALL PROPERTY OF THE CHARACTER HEREINABOVE DESCRIBED WHICH IS NOW OWNED OR HELD OR IS HEREAFTER ACQUIRED BY DEBTOR AND IS AFFIXED, ATTACHED AND ANNEXED TO THE PROPERTY SHALL BE AND REMAIN OR BECOME AND CONSTITUTE A PORTION OF THE TRUST ESTATE AND THE SECURITY COVERED BY AND SUBJECT TO THE LIEN HEREOF. THE LAND PARCEL, TOGETHER WITH THE IMPROVEMENTS AND LANDLORD'S EQUIPMENT LOCATED AND TO BE LOCATED THEREON DESCRIBED IN THIS PARAGRAPH 1, ARE HEREIN CALLED THE PROPERTY.

2.      THE ENTIRE RIGHT, TITLE AND INTEREST OF DEBTOR IN AND TO THE LEASE AND THE LEASE GUARANTY, INCLUDING THE RIGHT TO ALL EXTENSIONS AND RENEWALS OF THE TERM OF THE LEASE INCLUDING, WITHOUT LIMITATION, THE PRESENT AND CONTINUING RIGHT (I) TO MAKE CLAIM FOR, COLLECT, RECEIVE AND RECEIPT FOR ANY AND ALL OF THE RENTS, INCOME, REVENUES, ISSUES, AWARDS, PROCEEDS AND PROFITS AND OTHER SUMS OF MONEY PAYABLE OR RECEIVABLE BY THE LESSOR UNDER THE LEASE OR PURSUANT TO THE LEASE GUARANTY, WHETHER PAYABLE AS RENT OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, SUMS OF MONEY RECEIVABLE THEREUNDER OR PURSUANT THERETO BY VIRTUE OF PARAGRAPHS 7(F), 7(G) AND 10 OF THE LEASE, (II) TO ACCEPT OR REJECT ANY OFFERS MADE PURSUANT TO THE LEASE TO PURCHASE ANY INTEREST IN THE PROPERTY, (III) TO BRING ACTIONS AND PROCEEDINGS UNDER THE LEASE OR THE LEASE GUARANTY, OR FOR THE ENFORCEMENT THEREOF, (IV) TO PURSUE AND COLLECT ANY CLAIM IN THE BANKRUPTCY OR OTHER INSOLVENCY PROCEEDING OF LESSEE OR GUARANTOR AND (V) TO DO ANYTHING WHICH DEBTOR OR ANY LESSOR IS OR MAY BECOME ENTITLED TO DO UNDER THE LEASE OR PURSUANT TO THE LEASE GUARANTY, PROVIDED THAT THE ASSIGNMENT MADE BY THIS PARAGRAPH 2 SHALL NOT IMPAIR OR DIMINISH ANY OBLIGATION OF DEBTOR UNDER THE LEASE, THE ASSIGNMENT OR THE LEASE GUARANTY, NOR SHALL ANY SUCH OBLIGATION BE IMPOSED UPON SECURED PARTY.

3.      ANY AND ALL MONEYS AND OTHER PROPERTY WHICH MAY FROM TIME TO TIME BECOME SUBJECT TO THE LIEN HEREOF OR WHICH MAY COME INTO THE POSSESSION OR BE SUBJECT TO THE CONTROL OF SECURED PARTY PURSUANT TO THE MORTGAGE, THE ASSIGNMENT, THE LEASE GUARANTY, THE LETTER AGREEMENT OR ANY OTHER INSTRUMENT INCLUDED IN THE TRUST ESTATE INCLUDING, WITHOUT LIMITATION (BUT SUBJECT TO THE TERMS AND PROVISIONS OF THE LEASE), INSURANCE PROCEEDS AND ALL AWARDS WHICH MAY AT ANY TIME BE MADE OR ASSIGNED TO DEBTOR FOR THE TAKING BY EMINENT DOMAIN OF THE WHOLE OR ANY PART OF THE PROPERTY OR ANY INTEREST OR EASEMENT THEREIN, AND OTHER PROPERTY, IF ANY, DELIVERED TO SECURED PARTY BY OR ON BEHALF OF DEBTOR, IT BEING THE INTENTION OF DEBTOR AND IT BEING HEREBY AGREED THAT ALL PROPERTY HEREAFTER ACQUIRED BY DEBTOR (INCLUDING, WITHOUT LIMITATION, ALL RIGHT, TITLE AND INTEREST OF DEBTOR IN AND TO ANY STORE EXPANSION, AS DEFINED IN THE LEASE) AND REQUIRED TO BE SUBJECTED TO THE LIEN OF THE MORTGAGE OR INTENDED SO TO BE SHALL FORTHWITH UPON THE ACQUISITION THEREOF BY DEBTOR BE SUBJECT TO THE LIEN OF THE MORTGAGE AS IF SUCH PROPERTY WERE NOW OWNED BY DEBTOR AND WERE SPECIFICALLY DESCRIBED IN THIS FINANCING STATEMENT.

4.    ALL PRODUCTS, ACCESSIONS, RENTS, ISSUES, PROFITS, RETURNS, INCOME AND PROCEEDS OF AND FROM ANY AND ALL OF THE FOREGOING (INCLUDING PROCEEDS WHICH CONSTITUTE PROPERTY OF THE TYPES DESCRIBED IN PARAGRAPHS 1, 2 AND 3 ABOVE).

AS USED HEREIN, THE FOLLOWING TERMS HAVE THE FOLLOWING DEFINITIONS:

"GUARANTOR" MEANS WINN-DIXIE STORES, INC., A FLORIDA CORPORATION, TOGETHER WITH ANY ENTITY SUCCEEDING THERETO BY CONSOLIDATION, MERGER OR ACQUISITION OF ITS ASSETS SUBSTANTIALLY AS AN ENTIRETY.

"LEASE" MEANS THE LEASE OF THE PROPERTY, BETWEEN DEBTOR, AS LESSOR, AND LESSEE, AS LESSEE, AS AMENDED OR SUPPLEMENTED FROM TIME TO TIME AS PERMITTED HEREBY OR THEREBY, TOGETHER WITH ANY SHORT FORM OR MEMORANDUM THEREOF FOR PURPOSES OF RECORDING.

"LEASE GUARANTY" MEANS A GUARANTY BY GUARANTOR OF THE LESSEE'S OBLIGATIONS UNDER THE LEASE.

"LESSEE" MEANS WINN-DIXIE STORES, INC., A FLORIDA CORPORATION, TOGETHER WITH ANY ENTITY SUCCEEDING THERETO BY CONSOLIDATION, MERGER OR ACQUISITION OF ITS ASSETS SUBSTANTIALLY AS AN ENTIRETY.

"LETTER AGREEMENT" IS DEFINED IN THE MORTGAGE.

"MORTGAGE" MEANS THE MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING, DATED AS OF AUGUST _____, 1999 (AS THE SAME MAY BE AMENDED OR SUPPLEMENTED FROM TIME TO TIME), FROM DEBTOR, AS GRANTOR, TO FIRST SECURITY BANK, NATIONAL ASSOCIATION, AND VAL T. ORTON, AS TRUSTEES, AND SECURED PARTY AS BENEFICIARY.

"TRUST ESTATE" MEANS THE PROPERTY DESCRIBED IN PARAGRAPHS 1, 2, 3 AND 4 ABOVE.