IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE: WINN-DIXIE STORES, et al.,        )
                                          )    Chapter 11
        Debtors.                          )    Case No. 05-03817-3F1

**POST HEARING BRIEF OF E&A
FINANCING II, L.P.; E&A SOUTHEAST, L.P.;
E&A ACQUISITION TWO, L.P.; SHIELDS PLAZA, INC.;
WOODBERRY PLAZA (E&A), LLC; VILLA RICA RETAIL
PROPERTIES, LLC; WEST RIDGE, LLC; BANK OF AMERICA,
AS TRUSTEE OF BETTY HOLLAND, AND F.R.O. LLC VII IN OPPOSITION
TO CONFIRMATION OF THE DEBTORS' PLAN OF REORGANIZATION**

COME NOW E&A Financing II, L.P.; E&A Southeast, L.P.; E&A Acquisition Two,

L.P.; Shields Plaza, Inc.; Woodberry Plaza (E&A), LLC; Villa Rica Retail Properties, LLC;

West Ridge, LLC; Bank of America, as Trustee of Betty Holland and F.R.O. LLC VII and show

the Court the following in opposition to the confirmation of the Debtors'[1] Plan:

## I.        INTRODUCTION

Section 1129 (a)(1) of the Bankruptcy Code provides that the Court shall confirm a plan

"only if . . . . [t]he plan complies with all of the provisions of the Bankruptcy Code."

The Plan does not satisfy this requirement because it does not comply with the provisions

of Section 1123(a)(4) of the Bankruptcy Code, which provides that a plan "shall . . . (4) provide

for the same treatment of each claim or interest of a particular class unless the holder of a

particular claim or interest agrees to less favorable treatment of such particular claim or interest."

11 U.S.C. § 1123(a)(4).

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Joint Objection
of E&A Financing II, L.P.; E&A Southeast, L.P.; E&A Acquisition Two, L.P.; Shields Plaza, Inc.; Woodberry Plaza
(E&A), LLC; Villa Rica Retail Properties, LLC; West Ridge, LLC; Bank of America, as Trustee of Betty Holland;
and F.R.O. LLC VII to the Debtors' Plan of Reorganization.

The Debtors do not dispute that this section of the Bankruptcy Code must be satisfied: the Debtors submitted a proposed confirmation order that makes an express finding that the requirements of Section 1123(a)(4) are satisfied.  Section 9(vi), on page 7 of this proposed order, reads as follows:

> (iv) <u>No Discrimination (11 U.S.C. § 1123(a) (4))</u>.  The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment of such Claim or Interest, thereby satisfying Bankruptcy Code Section 1123(a)(4).

*See* Proposed Confirmation Order, § 9(vi) at p. 7.

As explained at the Confirmation Hearing by the Objecting Landlords:[2]

(a)      The Plan does not satisfy Section 1123(a)(4) of the Bankruptcy Code;

(b)      The Debtors can satisfy Section 1123(a)(4) by issuing additional stock to the Objecting Landlords and the issuance of such additional stock would dilute the value of the distribution to other creditors by less than 1%;

(c)      The Plan is not confirmable because it is premised on a deemed consolidation which the Objecting Landlords oppose.  *See In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005); and

(d)      A plan that denies the Objecting Landlords the protection provided for in Section 1123(a)(4) under the guise of a settlement cannot be confirmed.

---

[2]The "Objecting Landlords" herein are all of the landlords holding Class 13 claims based on both a lease rejection and a guarantee of a rejected lease who responded to the Debtor's Twentieth Omnibus Objection, filed an objection to the confirmation of the Plan and appeared in opposition to the Plan at the Confirmation Hearing.

## II.    THE EVIDENCE

**A.    The Debtors' Plan and Disclosure Statement**

### 1.    Class 13 Includes Claims Based On Lease Rejections And Claims Based On Guarantees Of Rejected Leases.

Class 13 consists of "Landlord Claims."  Section 1.47 of the Plan provides that Landlord

Claims are:

> any Unsecured Claim in an amount greater than $3,000 for obligations owed by any of the Debtors as **lessee or guarantor** under a nonresidential real property lease **or a guaranty** of a nonresidential real property lease agreement.  This term includes Unsecured Claims for damages arising from the rejection of a nonresidential real property lease.

Plan § 1.47 (emphasis added).  Thus, the Landlord Claims in Class 13 include both (a) a claim

against one Winn-Dixie Debtor based on the rejection of a lease and (b) a claim by the same

landlord against another Winn-Dixie Debtor as the guarantor of that same rejected lease.

### 2.    Class 13 Claims Based On Lease Rejections Are Treated Differently Than Class 13 Claims Based On Guarantees Of Rejected Leases.

Section 2.2 of the Plan provides that "all Claims based upon pre-petition unsecured

guarantees by one Debtor in favor of any other of the Debtors . . . shall be eliminated, and no

separate distributions under the Plan shall be made on account of Claims based upon such

guarantees . . . ."  Plan § 2.2.  The other claims in Class 13, *i.e.,* the claims not based on

guarantees, receive 46.26 shares of the new Winn-Dixie stock per $1,000 of claim.

The Plan and Disclosure Statement are clear -- Class 13 claims based on guarantees are

treated in a different and less favorable manner than the Class 13 claims that are not based on

guarantees.

**B.**     **The Testimony at the Hearing**

The Debtors' witness, Paul Huffard, testified on cross examination that (a) claims based on guarantees and claims based on lease rejections were both included in Class 13; (b) the claims based on guarantees received different and less favorable treatment than claims that were not based on guarantees; and (c) the Objecting Landlords did not consent to the less favorable treatment provided by the Plan.

There is no evidence in the record that any of the Objecting Landlords consented to the less favorable treatment provided by the Plan to their guarantee claims.

**C.**     **Conclusion**

The Plan provides different and less favorable treatment for the Class 13 Landlord Claims based on guarantees than it does for Class 13 Landlord Claims that are not based on guarantees.  The Objecting Landlords did not consent to their guarantee claims receiving less favorable treatment.

### III.     ARGUMENT

**A.**     **Introduction**

The Plan does not comply with Section 1123(a)(4) of the Bankruptcy Code.  The Debtors do not argue that it does comply.  Instead, the Debtors, the Creditors' Committee and the Ad Hoc Committee of Trade Creditors urge the Court to approve the Plan anyway because, unless the Plan is confirmed, the compromise on substantive consolidation will fail.  In effect, the Debtors are asking the Court to ignore the law to confirm the Plan.  The Debtors and the Committee assert this uncompromising position even though the cost of compliance with Section 1123(a)(4) is extremely small.

**B.      How to make the Plan comply with Section 1123(a)(4)**

All that needs to be done to bring the Plan into compliance with Section 1123(a)(4) is to provide in the Confirmation Order that Class 13 guarantee claims held by the Objecting Landlords will be treated the same, and receive the same distribution as the Class 13 claims that are not based on guarantees.[3] This modification would result in the Debtors issuing additional shares of stock to the Objecting Landlords over and above the 50,000,000 shares that the Plan now provides.

**C.      The Cost of Compliance**

Obviously a guarantee claim must be limited to the amount that is not paid by the primary Winn-Dixie Debtor on the underlying obligation.  Since the Plan provides that the Objecting Landlords will be paid 44.26 shares per $1,000 on their underlying claims and the Debtors estimated in the Disclosure Statement that this distribution is worth 70.6% of the claims, the guarantee claims would have to be reduced by 70.6% before any distribution would be made on them.  If the guarantee claims are reduced by this amount to 29.4% of the underlying claims, the distribution on a particular guarantee claim would only be 29.4% of the amount paid on the underlying claim.  29.4% of 46.26 shares per $1,000 of claim would be 13.6 shares per $1,000 of claim.

At the Confirmation Hearing, the Court took judicial notice of proofs of claims filed in these cases.  The Debtors did not dispute that the Objecting Landlords held approximately $25,000,000 in guarantee claims.  If 13.6 shares per $1,000 of claim were distributed on $25,000,000 in guarantee claims, an additional 340,000 shares would be issued.  This would

---

[3]  Landlords that had guarantee claims but did not object to the Plan or oppose to the Debtors' Twentieth Omnibus Objection to Claims may have consented to the inferior treatment and waived an objection to the Plan based on Section 1123(a)(4).

result in the number of shares issued to creditors under the plan increasing from 50,000,000 to 50,340,000. If the total equity of the Debtors is estimated at $749,000,000, and 50,000,000 shares are issued, the value per share is $14.98. If 50,340,000 shares are issued, the value per share would be reduced to $14.88.

Such a ten cent per share dilution would reduce the value of the distribution to creditors by 0.67%. In other words, the Note Holders would recover 94.93% of their claims instead of 95.6%. The trade creditors would recover 69.93% of their claims instead of 70.6%.

While the cost to other creditors of bringing the Plan into compliance with Section 1123(a)(4) is relatively small, the benefit to the Objecting Landlords is significant. The additional 13.6 shares per $1,000 of claim would increase the total distribution to the Objecting Landlords from 70.6% to approximately 89%.

**D.**     **This Court Cannot Approve A Compromise Of A Dispute That Involves A Blatant Violation Of The Bankruptcy Code**

The Debtors, the Creditors' Committee and the Ad Hoc Committee are asking this Court to approve the compromise of an untried substantive consolidation dispute. An essential part of this settlement is the confirmation of the Plan that does not comply with Section 1123(a)(4) of the Bankruptcy Code and which denies the Objecting Landlords their statutorily guaranteed right to have their guarantee claims treated the same as the other claims in Class 13. This Court should not approve a plan that is illegal on its face over the timely filed objection of adversely affected parties. *See In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005); *see also*, *U.S. ex rel. Rahman v. Oncology Associates, P.C.*, 269 B.R. 139, 160 (D. Md. 2001) (stating that affected entities must be parties to a settlement).

6

**E.    The Vote Of The Other Creditors Does Not Extinguish The Rights Of The Objecting Landlords Under Section 1123(A)(4)**

At the confirmation hearing, the Debtors seemed to argue that the vote of other Class 13 claim holders to confirm the Plan somehow constituted vicarious consent of the Objecting Landlords to the unequal treatment of their claims in Class 13.  This argument has no merit.

In *AOV Industries, Inc.*, 792 F2d. 1140 (D.C. Cir. 1986), the plan was confirmed by 90% vote of unsecured creditors.  In the AOV plan, while the creditors in the unsecured class received the same distribution, the ones that had guarantees were required to release the guarantees in order to receive a distribution.  As here, a creditor objected that it was required to release its guarantee claim while other creditors in its class were receiving the same distribution but were not required to release guarantee claims.  The D.C. Circuit Court found that notwithstanding the vote of the other creditors to accept the plan, the objecting creditor was still entitled to a "remedy suited to the circumstances of the case" because it was "the victim of unequal treatment."  *Id.* 1141 and 1150.

The Objecting Landlords are receiving the same unequal treatment as the creditor in *AOV*.  The Objecting Landlords seek the only "remedy suited to the particular circumstances of the case," *i.e.*, an order providing that the claims of the Objecting Landlords will receive a distribution that is equal to the other non guarantee claims in Class 13.

## IV.    CONCLUSION

As attractive as the substantial consolidation compromise may be to the parties that negotiated it, the simple truth is that the settlement violates Section 1123(a)(4) of the Bankruptcy Code.  The parties to the settlement do not have the power to repeal the Code by consent or by contract.  The Objecting Landlords have an absolute legal right to have ***all*** of their Class 13

claims, including the guarantee claims, receive a distribution of 46.26 shares per thousand dollars of claim.

The Objecting Landlords only ask this Court to do what Section 1129 (a)(1) requires: do not confirm the Plan unless the Plan is modified to comply with Sections 1123(a)(4) and 1129(a)(1), and give equal treatment to the Class 13 guarantee claims filed by the Objecting Landlords.

*[Signature Page to Follow]*

Dated: October 23, 2006

HELD & ISRAEL


 */s/ Adam N. Frisch*

Kimberly Held Israel
Florida Bar #47287
Adam N. Frisch, Esq.
Florida Bar #635308
1301 Riverplace Blvd., Suite 1916
Jacksonville, Florida 32207
Telephone: 904/398-7038
Fax: 904/398-4283
Email:  adam@hilawfirm.com

and

KITCHENS, KELLEY, GAYNES P.C.
Mark A. Kelley
Eleven Piedmont Center
3495 Piedmont Road, N.E., Suite 900
Atlanta, Georgia 30305
Telephone: 404/237-4100
Fax: 404/364-0126
Email: mkelley@kkgpc.com

Counsel for E&A Financing II, L.P.;
E&A Southeast ; L.P., E&A Acquisition
Two, L.P.; Shields Plaza, Inc.; Woodberry
Plaza (E&A), LLC; Villa Rica Retail
Properties, LLC; West Ridge, LLC; Bank of
America, as Trustee of Betty Holland

Respectfully submitted,

ARENT FOX PLLC


 */s/ Mary Joanne Dowd*

Mary Joanne Dowd (Florida Bar No. 368970)
Jeffrey N. Rothleder
Arent Fox PLLC
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202/857-6059
Fax: 202/857-6395
Email: dowd.mary@arentfox.com

Counsel for F.R.O. LLC VII

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 23rd day of October, 2006, a true and correct copy of the foregoing has been furnished via electronic transmission or first-class mail to counsel for the Debtor: Rosalie Walker Gray, Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square, New York, NY 10036, rgray@skadden.com and Cynthia Jackson, Smith, Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202, cjackson@smithhulsey.com, counsel to the Committee:  Matthew Barr, Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, NY 10005, mbarr@milbank.com and John B. MacDonald, Akerman Senterfitt, 50 North Laura Street, Suite 2500, Jacksonville, FL 32202, john.macdonald@akerman.com, and the Office of the United States Trustee, 135 W. Central Boulevard, Suite 620, Orlando, FL 32801.

                                        */s/ Mary Joanne Dowd*
                                         Mary Joanne Dowd