**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

**DEBTORS' REPLY TO FLORIDA TAX COLLECTORS'**
**SUPPLEMENTAL MEMORANDUM OF LAW**

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors") file this reply to the Florida Tax Collectors' "Supplemental Memorandum of Law Regarding Outstanding Issues Taken Under Advisement By This Court" (Docket No. 11997) ("Supplemental Memorandum") and state:

1.    On October 12, 2006, the Court held a hearing on the Florida Tax Collectors' motion for leave to file their proof of claim without prejudice (Docket No. 4283), motion for adequate protection (Docket No. 4284), motion to abstain (Docket No. 10594) and motion to dismiss (Docket No. 10609). At the conclusion of the hearing, the Court denied the motion for adequate protection and took the remaining motions under advisement. Because Mr. FitzGerald was unable to appear at the hearing, the Court authorized the tax collectors to submit additional authorities in support of their motions and authorized the Debtors to reply.

2.    On October 18, 2006, the tax collectors filed their Supplemental Memorandum in support of their pending motions for leave, to abstain, and to dismiss, *as well as* in support of their objection to the confirmation of Debtors' proposed plan of reorganization.

3.    The Supplemental Memorandum offers little new to the tax collectors' prior arguments in their motions and memoranda.

4.    The Supplemental Memorandum merely reiterates, in a summary form, the tax collectors' unabashedly brazen argument that they can somehow voluntarily appear in this Court and affirmatively assert a *$68 million* claim against the Debtors[1], but then resist *any* effort of the Debtors to object to that claim, and further resist the Debtors' request that the Court exercise its express jurisdiction under Section 505 to determine how much the Debtors actually owe to the tax collectors, if anything.

5.    The Debtors have responded to the tax collectors' arguments, with appropriate applicable authorities, in the Debtors' reply to the tax collectors' motion to dismiss (Docket No. 11599) and in the Debtors' memorandum in response to confirmation objections (Docket No. 11766, pp. 34-35). Those arguments and authorities are largely ignored by the tax collectors' Supplemental Memorandum. The Debtors request the Court to review those arguments and authorities with regard to any questions raised by the Supplemental Memorandum.

6.    The Debtors offer the following further limited response to the Supplemental Memorandum:

---

[1] The tax collectors now acknowledge their claim is really less than $14 million (Docket No. 11015, para. 2).

a. The tax collectors cite *ANC Rental Corp.*, 316 B.R. 153 (Bankr. D. Del. 2004) to discredit *Blue Cactus*, cited by the Debtors (Docket No. 11599, p. 11) as authority for the proposition that the tax *appraisers* are *not* necessary parties to the Debtors' objection to the tax collectors' proof of claim. In *ANC*, however, the debtors affirmatively sought *to compel the appraiser* "to amend its tax rolls." (316 B.R. at 158). The Debtors here seek no such relief, against any appraiser, and merely ask the Court to determine the proper amount owed to the *claimant collectors*. The reasoning and holding of *Blue Cactus*–that the appraising authority is not necessary to the exercise of the Court's Section 505 jurisdiction–should control.

b. The tax collectors' contend that the Plan "provides for the cessation of post-petition interest on secured claims" (Supplemental Memorandum, para. 21). The Plan does no such thing. As the Debtors represented at the confirmation hearing, post-petition interest will be paid to the extent required by law. The payment of post-petition interest under Section 506 is an issue regarding the *amount* of the allowed claim, and will be determined when the Debtors' objection is heard. It is not a confirmation issue.

c. The tax collectors argue that the Debtors' evidence at the confirmation hearing regarding the appropriate market rate of interest for cramdown, Section §1129(b)(2)(A)(i)(II), "has no probative value" and the Court should only look to "statutory interest due Florida Tax Collectors" (para. 9). As the Debtors explained at the confirmation hearing, the statutory rate is relevant, if at all, only to the *amount* of the tax collectors' *allowed claim*, which amount will

3

be determined when the Court hears the Debtors' objection to the claim. The *market rate* is relevant to the Debtors' proposed six year payment of the allowed claim under §1129(a)(9)(C) and must be a rate adequate to assure that the tax collectors will receive the present value of their allowed claim on the effective date–if the Plan is to be confirmed over the tax collectors' objection under Section 1129(b)(2)(A)(i)(II). The tax collectors have made no rebuttal to the authorities cited by the Debtors for this point. [*In re Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir. 1983); *Till v. SCS Credit Corp.*, 541 U.S. 465, 477, footnote 14 (2004); and *In re American Homepatient, Inc.*, 420 F.3d 559, 568 (6th Cir. 2005)].

        d.    The tax collectors also claim that the Debtors' modification to the Plan (Docket No. 11765, Section 4.3(c)(11)), violates Section 553 of the Code and therefore violates Section 1129 because it authorizes the Debtors to offset "prepetition taxes against postpetition taxes owed." Section 4.3(c)(11) provides no such relief. This provision was added at the request of the IRS to clarify that nothing in the Plan bars a secured *tax creditor* from setting off a prepetition refund against prepetition taxes owed under Section 553, if agreed to by the Debtors or authorized by Court order. The provision does not authorize *the Debtors* to do anything.

        e.    The tax collectors also argue that "there is no authority" (Supplemental Memorandum, para. 17) for the setoff sought by the Debtors in their objection to the tax collectors' claim (to setoff overpayments made by the Debtors against taxes the Debtors owe to the tax collectors for subsequent years).

This argument is irrelevant to confirmation of the Plan. In any event, there is ample authority for the Debtors to make the setoff they seek by their objection: (i) Section 558, (s*ee, In re TSLC I, Inc. (Tropical Sportswear)*, 332 B.R. 476, 478-79 (Bankr. M.D. Fla. 2005) ("courts applying section 558 have eliminated the pre-petiton/post-petition distinction and have allowed debtors to set off pre-petition claims against post-petition obligations"), (ii) Fla. St. §197.182(1)(b)(2) ("At the request of the taxpayer, the amount paid in error may be applied by the tax collector to the taxes for which the taxpayer is actually liable."), and (iii) Fla. St. §213.25 ("In any instance that a taxpayer has a refund or credit due for an overpayment of taxes assessed under any of the chapters specified in s.72.011(1), the department may reduce such refund or credit to the extent of any billings not subject to protest under s.213.21 for the same or any other tax owed by the same taxpayer.").

## Conclusion

7.    Having affirmatively sought relief in this Court, the tax collectors have submitted themselves to the jurisdiction of the Court (including the Court's utilization of Section 505), and to the Court's determination of the Debtors' objection to the tax collectors' claim.[2] For these reasons, the Court has jurisdiction to determine the amount of the tax collectors' claims, and their motion to dismiss should be denied.

8.    The tax collectors' only substantive objection to the Plan, regarding the cramdown interest rate for Class 10 Secured Tax Claimants, should be denied because the collectors offered no evidence to rebut the Debtors' evidence of an appropriate market

---

[2] Even if the tax collectors had not voluntarily appeared, the Supreme Court this year resolved the sovereign immunity issue in favor of Bankruptcy Court jurisdiction. See C*entral Virginia Community College v. Katz*, 126 S.Ct. 990 (2006), as previously argued by the Debtors (Docket No. 11599, p. 19).

5

rate for the purposes of §1129(b)(2)(A)(i)(II). The unrebutted evidence is that the rate should be "no more than 7%," because of the statutory priority of the tax collectors' claims and the "very efficient market" test provided by the junior Wachovia secured exit financing (confirmation hearing testimony of Paul Huffard). *See In re American Homepatient, Inc.*, 420 F.3d 559, 568 (6th Cir. 2005).

Dated:  October 24, 2006

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By   */s/ D. J. Baker*<br>       D. J. Baker<br>       Sally McDonald Henry<br>       Rosalie Walker Gray | By   */s/ Cynthia C. Jackson*<br>       Stephen D. Busey<br>       James H. Post<br>       Cynthia C. Jackson (FBN 498882) |
| Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>(212) 735-2000 (facsimile)<br>djbaker@skadden.com | 225 Water Street, Suite 1800<br>Jacksonville, Florida  32202<br>(904) 359-7700<br>(904) 359-7708 (facsimile)<br>cjackson@smithhulsey.com |
| Co-Counsel for Debtors | Co-Counsel for Debtors |

00547116