UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, DIVISION

**F I L E D**
JACKSONVILLE, FLORIDA

**OCT 2 4 2006**

CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

In re:

   WINN-DIXIE STORES, INC.,

      Debtor.                    CASE NO.   05-3817-3F1

_____/

TRANSCRIPT OF PROCEEDINGS

E X C E R P T

   Various Motions before the Honorable Jerry R. Funk,
United States Bankruptcy Judge, Courtroom 4D, 300 North
Hogan Street, Jacksonville, Florida, Thursday, October 5,
2006, to commence at 1:00 p.m., as reported by Loretta D.
McDonald, a Notary Public in and for the State of Florida
at Large.

- - -

**STATEWIDE REPORTING SERVICE**
606 BLACKSTONE BUILDING
JACKSONVILLE, FLORIDA 32202
(904) 353-7706              249-9952
EXPERTS IN MEDICAL, TECHNICAL & EXPEDITED TRANSCRIPTS

ORIGINA

2

1                         A P P E A R A N C E S

2

3

4

5          STEPHEN D. BUSEY, Esquire,

6

7               Smith Hulsey Busey
                225 West Water Street
                Jacksonville, Florida  32202
8
                Attorney for the Debtors.
9

10

11

12          BRIAN HANLON, General Counsel,

13               Governmental Center
                 301 North Olive Avenue
                 3rd Floor
14               West Palm Beach, Florida  33401

15               Attorney for Florida
                 Tax Collectors.
16

17

18

19          RICHARD THAMES, Esquire

20               Stutsman & Thames
                 50 North Laura Street
                 Suite 1600
21               Jacksonville, Florida  32202

22               Attorney for Tax Collectors.

23

24

25                         - - -

3

1                     P R O C E E D I N G S

2    October 5, 2006                              1:00 p.m.

3                          - - -

4    . . .

5             THE COURT:  And the next item is the Florida Tax

6        Collectors' Motion for Leave to File Proofs of Claim

7        without Prejudice .

8             MR. THAMES:  Your Honor, Richard Thames.  We are

9        working with the Florida Tax Collectors in their

10       efforts here.  Brian Hanlon is here also.  I guess he's

11       out there.

12            Mr. Fitzgerald, who filed the motion, left --

13            THE COURT:  Do you want to approach the lectern

14       there if you're going to talk.  I want to make sure the

15       court reporter gets every bit of this down.

16            MR. BUSEY:  And if you would, define we's, please.

17            MR. THAMES:  Yes.

18            In this particular matter the Duval County Tax

19       Collector is involved in this to some extent.  We are a

20       subset of the entire Florida Tax Collectors' claim.

21       Mr. Fitzgerald left Tampa this morning and his car

22       broke down outside of Ocala.  He got it fixed and was

23       coming along and blew a tire.  So Mr. Fitzgerald is --

24       didn't make it here from Tampa this morning.  It's his

25       pleadings.

4

1          Mr. Hanlon here from Palm Beach County Tax

2     Collector can -- will now speak as to these motions,

3     and then he's also involved in this matter.  And then

4     I would also like to be heard again before we proceed

5     on these motions .

6          THE COURT:  Before we ever start?  We're going to

7     get started on the first one right now .

8          MR. THAMES:  Well, let me -- let me, on behalf of

9     the other leaves that we represent: Harrison County,

10    Mississippi -- there's about nine other counties in

11    Mississippi -- Virginia City; Hampton, Virginia; State

12    of Kentucky, Department of Revenue; Bullock County,

13    Georgia; Mullin -- Muskogee County, Georgia.  The

14    debtors, as I said early in one of the proceedings, the

15    debtors had filed an objection to the tax claims under

16    505 of the Bankruptcy Code where they're going to go

17    back and seek a revaluation or attempt to revalue the

18    tax liabilities from 2004 and 2005.

19         We've responded on behalf of all the entities that

20    I have listed.  And the issues that are presented by

21    the motion to dismiss, which is Item 9, and the motion

22    to abstain, they overlap with all of those other issues

23    that -- the same issues are being presented albeit in

24    kind of somewhat just in response to the debtors'

25    motion as opposed to a motion to abstain or a motion to

5

1      dismiss.  Those matters, there's about a, you know, a

2      30-, 40-percent overlap on the legal issues, including

3      the lack of jurisdiction.  The issues pertaining to how

4      far this section --

5           THE COURT:  Overlap with what?

6           MR. THAMES:  The issues that are presented by

7      these two motions on the motion to --

8           THE COURT:  I've read all the motions.  I know

9      they overlap.  What does this have to do with your

10     clients?  These are the Florida tax collectors'

11     motions.  I don't see that they mentioned any of these

12     other counties in the other states that you're --

13          MR. THAMES:  They don't.  That's the point.  What

14     I was going to suggest to the Court, I don't know that

15     any of this is necessary for a resolution today,

16     particularly when Mr. Fitzgerald is out of pocket.  But

17     the -- but we wanted to have the tax issues on behalf

18     of the out-of-state claimants, the issues we want to be

19     heard on those issues before there is a determination

20     on those issues.  To that extent, we would suggest it

21     would make sense to have all the tax issues, legal

22     issues heard at the same time if the Court would

23     consolidate those for a status conference and then --

24     and then hear those.  We had asked --

25          THE COURT:  Mr. Thames.

6

1       MR. THAMES:  Yes.

2       THE COURT:  Good job.  You stalled as long as you

3   can.  Move on out of the way.  You didn't file a

4   motion, and I'm not going to sit and listen to some

5   kind of ore tenus motion like that without the debtor

6   or anybody else has an opportunity to research it and

7   reply.

8       MR. BUSEY:  Your Honor, I'd just like the point of

9   order, that we proceed in an orderly manner on the

10  calendar.

11      The next motion that's up for consideration by the

12  Court is the Florida Tax Collector's motion for leave

13  file its Proof of Claim without prejudice.

14      THE COURT:  That's it.  I agree.

15      MR. HANLON:  Good afternoon, Your Honor.  My name

16  is Brian Hanlon.  I'm general counsel for the Palm

17  Beach County Tax Collector, and I've been working with

18  Mr. Fitzgerald throughout this case.

19      Your Honor, Mr. Fitzgerald, I'm not sure, I was

20  out preparing, depending on what Your Honor's decision

21  was going to be this afternoon -- I presume we're

22  moving  forward notwithstanding the fact that

23  Mr. Fitzgerald is unavoidably detained due to a car

24  malfunction.

25      THE COURT:  I haven't heard anybody for a

1      continuance.  I'm not sure what the debtors' position

2      is.

3           MR. HANLON:  No, neither am I, Judge.  I found out

4      five minutes before coming over here, Your Honor.  We

5      had prepared various arguments and things.

6      Mr. Fitzgerald has all of the exhibits.  Mr. Fitzgerald

7      was going back and forth with Ms. Jackson and other

8      counsel relative to a stipulation of facts.

9           Depending on how the Court feels about this, that

10     Mr. Fitzgerald contacted us at Mr. Thames's office.  I

11     flew up from West Palm Beach this morning.  And he was

12     driving up and he had a comedy of errors, everything

13     that could go wrong did go wrong.  He was in a borrowed

14     car from his mother-in-law and he had engine problem

15     and then he had two flat tires.  He must have run over

16     something in the highway.  That's what happened to

17     Mr. Fitzgerald today.  It was just once of those

18     things.

19          Depending on the Court's doing, I know we've got

20     confirmation coming up.  Some of these issues I can, if

21     the Court will allow me to simply defer to the -- to

22     the cases in the pleadings and in our memorandum of

23     law, we received another memorandum of law, I believe,

24     yesterday from the debtors that was just filed.  So we

25     had not a chance to really dissect and reply to that

8

1    accordingly.  I looked at it briefly last night.  I

2    looked at the cases I'm familiar with, a lot of them

3    from Texas.  And I don't think that they have anything

4    of any substance that would support their argument.

5        But I'm willing to go forward, Your Honor, to get

6    this thing moving if Mr. Busey would like to go

7    forward.  I want to, as a preliminary matter, we have a

8    stipulation relative to the facts in the taxes.  If I

9    may address the Court and --

10       THE COURT:  Let me just see.

11       Mr. Busey, do you have any housekeeping on your

12   side or do you have a position on this?

13       MR. BUSEY:  Your Honor, I assume that we're

14   talking about the Florida Tax Collectors' motion to

15   file the Proof of Claim without prejudice.  Assuming --

16   I know Mr. Hanlon has appeared in the pleadings as

17   counsel for the Florida Tax Collectors.  I heard him

18   say that he's prepared to go forward.  I'd like to have

19   him go forward.  I think these matters need to be

20   heard, and I'm prepared to argue this motion .

21       THE COURT:  Very well.  Let's take each matter.

22   You're talking in -- you're doing an umbrella.

23       MR. HANLON:  Yes, Your Honor.

24       THE COURT:  I don't want an umbrella.  I didn't

25   study them that way.

9

1          MR. HANLON:  Good enough, Judge.

2          THE COURT:  Let's take the first issue and we'll

3     deal with that.  That's the Florida tax collectors'

4     motion for leave to file Proofs of Claim.  Let me hear

5     you on your motion.

6          MR. HANLON:  Yes, Your Honor.  We've been involved

7     in a number of large statewide, nationwide cases

8     involving retail cases.  And what we've done, we found

9     this 505 motion to be a standard thing which happens in

10    many of these cases.  Mr. Busey will attest I contacted

11    him within the first month or two of the bankruptcy in

12    an attempt to work something out.  And we reached out

13    to the debtors in an effort to go through the tax

14    claims and the tax accounts themselves.

15         We have approximately 500 locations in the state

16    of Florida, including both tangible and real estate.

17    Originally there's approximately $88 million of real

18    estate taxes.  We knew generally from the tax rolls,

19    although not factually, but most of the real estate was

20    in fact leased.  And the original claims bar date was

21    set before the 2005 tax roll was certified.

22         So what we found is that we requested, and the

23    Court granted us leave, or to extend the claims bar

24    date until after the November 1st when the tax bills

25    come out, so we would have accurate bills for all the

1       different locations, which we've collected from all the

2       tax collectors in my office, put them together in one

3       document and one proof of claim, so we could file that

4       with liquidated amounts and without having the Court to

5       go through with estimated claims, withdrawal of

6       estimated claims, omnibus objections.  It just makes

7       the entire claim and objection process much more

8       efficient for the Court as well as the parties

9       involved.

10            So at that point they gave us about eight or ten

11      days in November to put our claim together, accumulate

12      500 records from all the tax collectors, which I did,

13      and prepared the summary.

14            Now attached to the Proof of Claim was a summary

15      listed every county alphabetically.  Second list had

16      every store number that the debtor uses that we could.

17      Next column had the account number and then what we

18      call the gross amount due.  It's the gross tax amount,

19      which is the March amount.  So there's no penalties,

20      there's no discount for early payment.  It's the actual

21      tax amount due.

22            And that's what this document, what we call our

23      master list, has contained since day one.  We attached

24      that to the Proofs of Claim.

25            We filed a motion for leave to file Proof of Claim

1  without prejudice the day before the bar date before he

2  filed the claim.  The reason we did that, Your Honor,

3  is to preserve our rights to argue sovereign immunity,

4  jurisdictional argument.  We've found many times in the

5  past that you file a proof of claim, then we'll argue,

6  under 106, you've waived sovereign immunity pursuant to

7  the clear reading of the statute.

8       All we're seeking to do, Your Honor, is to allow

9  the Proof of Claim to be filed without prejudice to

10  raise any defenses so that the debtor may in fact --

11  defenses to any of these claims or objections the

12  debtor may file against our claim itself.

13       There's also an Eleventh Circuit case, which is

14  In re:  Crow, which indicates 106(a) abrogation of

15  sovereign immunity is in fact unconstitutional use of

16  the Article I powers.

17       So all we wanted to do, Your Honor, is just

18  simply preserve these issues so we can present them to

19  the Court in a clear, concise manner with stipulated

20  facts and get good briefing to the Court in order to

21  make its decision.

22       We do not not want to be prejudiced by, you know,

23  having to file a Proof of Claim and then come in and

24  have the debtor say, "Well, you sought the jurisdiction

25  of the Court, you requested relief, you requested

1    payment out of the debtors' estate.  Well, that's

2    fine."

3        If the tax collector's function is ministerial,

4    our duty is to collect the taxes.  However, we respect

5    the court system, we respect Your Honor and this Court

6    in the orderly administration of this case.  And that's

7    the reason we filed the motion.

8        We would like the case to go forward, be

9    administered but always seeking jurisdiction to

10   preserve our defenses should the debtor elect to file a

11   505.  Well, sure enough they did file the 505.  Here it

12   is, they've objected to the claim, filed the motion to

13   determine taxes.  And all we're asking is a simple

14   order, Your Honor, from the Court to simply -- Florida

15   tax collectors' Proof of Claim is allowed to file

16   without prejudice to any and all defenses, period.

17        THE COURT:  Mr. Busey.

18        MR. BUSEY:  Thank you, Your Honor.  There are two

19   items of relief requested by this motion.  First is

20   that the Florida tax collectors be allowed to file

21   their Proof of Claim without prejudice to any -- to the

22   Court's allowing any further amendments to the Proof of

23   Claim.

24        And the second is that it will be without

25   prejudice to the Florida tax collectors asserting any

1   jurisdictional or substantive defenses they want to

2   later.

3        I'd like to take each of one of those items for

4   relief in turn.

5        We don't believe that it's proper or appropriate

6   for this Court to grant a motion for leave to file a

7   proof of claim without prejudice of doing whatever you

8   want to do in the future to amend it, that is, to give

9   them carte blanche to make whatever amendment they want

10  in the future.  The ability to amend their Proof of

11  Claim is governed in the Eleventh Circuit by In re:

12  International Horizons, 751 F.3d -- F.2d, 1213, which

13  prescribes what you can and can't do in the way of

14  amending a proof of claim, and if they amend a proof of

15  claim in an inappropriate manner, it is appropriate for

16  the debtor to challenge the amendment for the reason

17  that it doesn't relate to the same transaction, or

18  there's a material difference in the amount, or

19  whatever reason there is to challenge it.

20       There's no reason, there's no case of controversy

21  at this point; because they haven't filed an amended

22  proof of claim.  And there's no reason for this Court

23  to give them a carte blanche.  You should permit them

24  to file a proof of claim.  They have filed it.  And if

25  they want to file an amended proof of claim, and if we

14

1       want to seek some relief from it, we can do that.  So

2       there's no reason for you to grant an order now

3       blessing some conduct in the future that hasn't

4       happened yet or a dispute that hasn't occurred yet.  So

5       that item of relief should be denied.

6           The second item of relief they've asked for is

7       that it's without prejudice to them asserting new

8       defenses substantive or jurisdictional in the future.

9       And in support of that, what they're really worried

10      about, and as Mr. Hanlon has just conceded, is they

11      want to have their cake and eat it too.

12          They want to say, "We want to file our proof claim

13      and appear in this Bankruptcy Court as asserting a

14      claim against the debtor, but we don't want to waive

15      our sovereign immunity defenses."  To what?  To the

16      debtors' objection to that claim.  They want to file a

17      proof of claim seeking relief but not have to be

18      subject to an objection to the proof of claim.  That's

19      what they've asked for.

20          They've cited in this motion that we'ere talking

21      about, they said that this issue is currently under

22      consideration by the United States Supreme Court in

23      <u>Central Virginia Community College versus Katz</u>.  And

24      that -- that case was pending at the time that this

25      motion was filed before the United States Supreme

15

1      Court.

2           And the question pending in that case was the

3      debtor in that case had filed an adversary proceeding

4      seeking determination of a preference to a state

5      college, which was arguably entitled to sovereign

6      immunity, and wanted to have a refund from the state

7      college.  No proof of claim filed by the state college.

8      This was an adversary proceeding against the state

9      college.  And that issue was before the Supreme Court

10     at the time this motion was filed, and that's why they

11     cited it.

12          The case has subsequently been decided by the

13     United States Supreme Court and the decision is

14     reported at 126 Supreme Court 990.  And obviously the

15     reason I'm bringing it to your attention it was cited

16     adversely to the sovereign immunity argument.  And the

17     United States Supreme Court held that because

18     bankruptcy jurisdiction is in rem even in the recovery

19     of a preference from a state court agency which had not

20     appeared in bankruptcy, that this recovery of a

21     preference was ancillary in rem jurisdiction and was

22     not liable to -- of sovereign immunity.

23          And so there is no sovereign immunity issue.  I

24     bring that to your attention only because it was raised

25     by this motion and because the Court subsequently acted

1   on it in a matter of support of the bankruptcy

2   jurisdiction over state agencies even in the absence of

3   a proof of claim.

4        But here -- but here we have a Proof of Claim.   So

5   what is the effect of a Proof of Claim?   By filing a

6   Proof of Claim in a bankruptcy, a state agency waives

7   sovereign immunity.   And the authority is Gardner

8   versus State of New Jersey, which is a Supreme Court

9   case cited in our brief at 67 sub Supreme Court 467.

10  And here's what the United States Supreme Court said:

11  On a state agency filing a proof of claim, its

12  traditional bankruptcy law that he who invokes the aid

13  of the Bankruptcy Court by offering a proof of claim

14  and demanding its allowance must abide the consequence

15  of that procedure.

16       If the claimant is a state, the procedure of proof

17  that allowance is not transmitted into a suit against

18  the state because the Court entertains objections to

19  the claim.   The state is seeking something from the

20  debtor.   No judgment is sought against the state.   The

21  whole process of proof, allowance and distribution is,

22  shortly speaking, an adjudication of interest claimed

23  in a race.   It is nonetheless such because the claim

24  was rejected in toto, reduced in part, given priority

25  inferior to that claim, or satisfied in some way other

1    than payment in cash.

2         When the state then comes in after in a bankruptcy

3    case and files a claim against the estate, it waives

4    any immunity which it might otherwise have respecting

5    the adjudication of that claim.  And that decision of

6    the United States Supreme Court was followed in In re:

7    Burk by the Eleventh Circuit at 146 F.3d 1330, in which

8    the Eleventh Circuit said the Supreme Court's decision

9    in Gardner establishes that by filing a proof of claim

10   and the debtor's respective bankruptcy proceedings, the

11   state waived the sovereign immunity for purposes of

12   adjudicating those claims.

13        Now, I acknowledge that in their motion for leave

14   to file without prejudice, which was filed at

15   approximately the same time as their Proof of Claim,

16   they say they want to reserve their sovereign immunity

17   arguments.  And so the question is, as a matter of law,

18   by filing with a reservation, can they avoid ringing

19   the bell or can they unring the bell?

20        And we have two decisions for Your Honor's

21   consideration on that point.

22        One is the decision of a bankruptcy court in

23   Oklahoma, 221 B.R. 795, in which a state agency had

24   tried to do just that.  In Mississippi -- and I'll

25   read -- I'll just read the paragraph from the decision:

1        Mississippi also presents the argument that because it

2        reserved state sovereign immunity in its filings issued

3        somehow be granted Eleventh Amendment protection.

4        Apparently Mississippi, by this argument, is trying to

5        equate the legal binding force of its pleadings to that

6        of a statute or a constitutional provision.  This Court

7        rejects that argument.

8             Thus, as a matter of the application of the

9        supremacy clause, a state statute will not preempt a

10       federal statute.  Indeed Mississippi was on at least

11       constructive notice that filing a proof of claim

12       constitutes a waiver.  Therefore, this Court rules that

13       the state of Mississippi, by filing the proof of claim,

14       has waived any sovereign immunity.

15            And there's a footnote there that says:  "There

16       are bankruptcy decisions holding that where creditors

17       make conditional filings of proofs of claim reserving

18       constitutional rights but filings clearly waive that

19       right in question, the constitutional right is

20       nevertheless deemed waived despite the express

21       reservation of the right by the creditor, and they cite

22       a number of authorities, with treatises, Third Circuit

23       and Supreme Court authorities.

24            This court expressly adopts this rule and holds

25       that Mississippi cannot have it both ways.  Mississippi

1    was aware that by filing a proof of claim it would

2    waive sovereign immunity, thus its purported

3    reservation on the 11th Amendment sovereign immunity is

4    without effect.

5        This decision of this Oklahoma bankruptcy court

6    that I cited was adopted with approval by Judge Killian

7    in a decision of Northern District of Florida in 2002,

8    In re: Stanley.

9        And Judge Killian said:  the Berrett Court --

10   that's what I just read to you -- concluded that once a

11   waiver of rights has been made, it cannot be undone.

12   This position has extensive support throughout American

13   juris prudence -- with a lengthy footnote there.  I

14   agree with the rationale of Berrett and find that the

15   state, its predecessor having filed a proof of claim

16   does not enjoy 11th Amendment sovereign immunity in

17   this proceeding.

18       And we cite these authorities to Your Honor,

19   because we think that's the correct law, that

20   regardless of the express purported to reserve their

21   rights, once they file a proof of claim, according to

22   the Supreme Court and Eleventh Circuit, they have

23   waived their sovereign immunity privilege or any right

24   to claim it or argue about it.  And they are squarely

25   now, by the filing of the proof of claim, before this

1    Court, and thus, we ask the Court to deny both reliefs

2    requested by this motion:  for leave to file a Proof of

3    Claim without prejudice to do anything they want to

4    with it later and without prejudice to their making

5    arguments later that they didn't really appear.

6         THE COURT:  Response?

7         MR. HANLON:  Yes, Your Honor.  I'd like to correct

8    two factual aspects or clarify two factual aspects.

9    Perhaps Mr. Busey doesn't recall the motion for leave

10   to file proof of claim was filed the day before the

11   Proof of Claim.  They were not contemporaneous but

12   close.  It was the day before.  So the motion was filed

13   the day before the Proof of Claim.

14        Secondly, what you heard is exactly the Hobson's

15   Choice the tax collectors are faced.  Do we come in and

16   file a proof of claim or do we rely on our statutory

17   lien and simply allow the Bankruptcy Court to make its

18   rulings, make its determinations regarding all of these

19   interested parties, and we'll stay out.  We're the

20   State of Florida.  We're not going to come in and

21   participate in the proceeding.  And that's not what

22   Florida tax collectors intend to do.  Like I said

23   before, we respect this Court and any other federal

24   court and Your Honor to make the decisions.

25        However, all we're asking for relief is the

1    ability to present our defenses at the appropriate time

2    in the administration of the case.

3         Now, these large cases, we have the same situation

4    in Kmart.  And I represent all the tax collectors in

5    Chicago.  We ended up with objections, 1,400 objections

6    to claims, and we finally -- the judge signed them, and

7    we withdrew all the claims that were filed.  We got

8    everything involved into one claim, one omnibus

9    objection, and we decided the issues.  Judge -- judge

10   sent the whole matter off to a separate judge who

11   eventually dismissed it.  And we ended up getting paid

12   every penny.  And we want to be able to make those

13   arguments again.

14        Whether or not you've got jurisdiction here, if

15   you look -- some of these issues are going to be

16   confirmation issues.  But what the debtor is arguing is

17   this Court has the jurisdiction to determine taxes

18   under 505.  They're not looking at the -- at the second

19   aspects of 505(b) where you have to make first demand

20   on the taxing authorities for a refund and then get it

21   back as a jurisdictional prerequisite to come into this

22   Court and seeking adjudication of the claim.

23        We have in the Eleventh Circuit the Crow case that

24   I cited and the Burt case that the debtor has cited.

25   Both cases by the Eleventh Circuit, one says 106(a) is

1   if you file a proof of claim, 106(a) is

2   unconstitutional under Crow.  Under Burt, says if you

3   file a proof of claim, you waive sovereign immunity.

4   The important thing with those cases and any other case

5   that the Court looks at relative to sovereign immunity

6   or relative to waiver is the factual distinction.

7   There both cases are dealing with student loans and

8   dischargeability issues.

9        If I may, Your Honor, I'd cite to Katz.  And the

10  Supreme Court recognizes -- the Supreme Court does read

11  this issue in both Katz and the Hood decision.  But if

12  you look at Footnote Number 15 in the Katz decision,

13  Supreme Court says:  We do not suggest that every

14  bankruptcy law could, consistent with the bankruptcy

15  clause, properly impinge upon state sovereign immunity.

16       So the Supreme Court in that footnote, they've

17  left it open.  In all these cases that you hear about

18  sovereign immunity or waiver of sovereign immunity,

19  they have to do with compulsory counterclaims, for

20  example, in a student loan case, and a dischargeability

21  issue, or a preferential transfer, or a fraudulent

22  transfer.  That's fine.

23       Here we have a separate issue.  It's unique.  And

24  the Supreme Court has dodged it, and it's a new issue

25  that I think, you know, could go all the way up and may

23

1          in fact.  And what we're trying to do is protect the

2          integrity of 197.

3                  Taxes, if you look at the federal court system

4          with the federal court, federal judge, federal law,

5          federal tax, you still have to go to the IRS first and

6          make demand for a refund.

7                  I forget, Your Honor, it escapes me right now.

8          It's a last minute -- I think it's the ASA -- has to do

9          with the federal IRS.  But you must first go to the

10         IRS, make demand for a refund and then come back to the

11         Bankruptcy Court.

12                 Judge Ginsburg recognized that -- and I don't have

13         the cite in front of me; I'll get it to the Court --

14         that the Tax Injunction Act follows that same concept,

15         you must first exhaust your administrative remedies,

16         make demand for a refund under the administrative

17         remedies aspect of taxes and then you go to the court.

18         The court should not be used to delay the payment of

19         taxes.

20                 This Court has already made the decision that

21         taxes, under a -- under a case where the landlord -- in

22         this case, that they were an administrative expense.

23         Tax collectors are collecting the funds that are used

24         to pay the services that are going to the Winn-Dixie

25         accounts.  And these Winn-Dixie -- they dial the phone,

1    the police show up, the fire, the ambulance, all the

2    services they need to continue operation are being

3    funded by the citizens of the state of Florida.  Yet,

4    Winn-Dixie wants to use the coercive effect of this

5    federal court.

6         I don't mean that in a derogatory manner, but the

7    fact that we must recognize the authority of this Court

8    and follow this Court's procedures and rules and

9    guidelines and normally procedure of the administration

10   of this case.  But that is a taxing -- taxing effect,

11   and all the citizens of Florida are funding this plan

12   at this point and funding these services while the

13   debtor elects to come up with some theories under 505

14   which are -- which are clearly theories that are all

15   over the board across the country.

16        We just want the opportunity to file the claim

17   without prejudice and let us present the issues now

18   that they finally filed their 505 and their objection

19   to claim.  The Court can look at this, and it's well

20   within the context of the confirmation hearing and the

21   plan that they filed on whether or not that, you know,

22   meets the requirements of 1129(1), (2) and (3),

23   indicating whether they comply with the applicable

24   sections of the code and applicable -- applicable law.

25        So that's all we're asking.  I don't think the

1        debtor is prejudiced at all.  They've received copies

2        of the estimated taxes.  They filed tax returns, sworn

3        tax returns for the tangible taxes for all the years

4        involved.  There's no question regarding notice, what

5        the accounts are.  They're intimately involved in it.

6        So an order allowing Proof of Claim be filed without

7        prejudice, no (sic) subject to further order of this

8        Court ruling under the 505 motion that they filed or

9        perhaps the confirmation order, just a simple subject

10       to further orders of this Court as the case progresses,

11       I think would be fair.

12            THE COURT:  Thank you.

13            MR. BUSEY:  Your Honor.  If I may.  This -- I

14       think this is what it comes down to.  There's no

15       question here that there's binding Supreme Court and

16       Eleventh Circuit authority that says, by a state agency

17       filing a Proof of Claim, they waive sovereign immunity.

18       And counsel has presented no authority to the contrary.

19       So that's fine, being the authority.  The question

20       really comes to, well, what if I file my proof of claim

21       together with a conditional waiver?  And so well, I ask

22       for the Court saying I don't really do it.

23            Counsel cited to you no authority, no authority at

24       all that says that they can waive, I mean, they can --

25       they can reserve the right to make that argument,

1    reserve the right to let them file a proof of claim and

2    then argue that they're sovereignly immune from any

3    objection to that claim.  And it makes sense there's no

4    such authority.

5         We even cited to you authority that says they

6    can't do that.  Once they appeared, they appeared.  And

7    they cannot unring the bell.  In the absence of any

8    authority to the contrary, we ask you to deny the

9    motion.

10        THE COURT:  Thank you.  The Court will take this

11   under advisement.  I'll get an order out in due course.

12   Does anybody want to submit any further memoranda or

13   just list the cases or anything like that?  You can do

14   that by Monday.

15        MR. HANLON:  Excuse me, Your Honor.  Monday is

16   a -- I don't know if the Court is on holiday Monday.

17        THE COURT:  That's why I said Monday, because I

18   won't be here, and I'll see it Tuesday.

19        MR. HANLON:  Okay.

20        THE COURT:  And then I'll be busy the rest of the

21   week.

22        The next matter is the tax collector' motion for

23   at adequate protection, I believe.

24        MR. HANLON:  Excuse me, Your Honor.  I had my bag

25   outside.  If I may address the Court on the one last

1      item Mr. Busey was arguing, that we're seeking relief

2      to amend the claim at any time.  I've got copies of the

3      stipulation.  Mr. Busey has copies of this.  This is

4      the most recent one we sent to the debtor yesterday.

5      If the Court would like to see, this is an update of

6      the Proof of Claim, Your Honor, is what --

7              THE COURT:  Well, hand it to Mr. Busey.  I don't

8      want to see anything that isn't agreed upon.

9              MR. HANLON:  (Shows document.)

10             MR. BUSEY:  We're aware of this, Your Honor, and

11     it's not agreed upon.

12             THE COURT:  Okay.  The next matter we're on is the

13     Florida Tax Collectors' Motion for Adequate Protection.

14             MR. HANLON:  Your Honor, this motion was filed,

15     again, due to our experience in large retail Chapter 11

16     cases.  The debtor sought and obtained court approval,

17     among the first day orders, or first week orders, the

18     right to pay ad valorem taxes.  Traditionally in large

19     Chapter 11 cases like this the debtor will first handle

20     the billion dollar issues, then the hundred million

21     dollar issues and then the ten million dollar issues

22     and eventually get down to the million dollar issues.

23             Throughout the course of this case, the Court's

24     orders allowing the sale of assets and the DIP

25     financing provided for our liens to remain in the first

1    priority situation.  We continually filed objections.

2    There was a series of four motions filed over and over

3    again, and we obtained the appropriate language in the

4    order allowing our liens to remain in its priority

5    first position statutory lien.

6         During the course of the motions themselves and,

7    again, this is routine in these large cases, is

8    alternative remedies.  We're going to close stores,

9    Your Honor, and we want to either sell the store,

10   assign the lease, assume the lease, reject the lease,

11   sell it in parts.  They ask for all types of different

12   remedies to efficiently close the store, consolidate

13   their operations, which is all well and good.  And

14   generally courts will not look behind the debtor's

15   business judgment in making these decisions in

16   consolidating.

17        During the course of these cases, we find that

18   there are issues relative to the landlords and

19   assumption, rejection of leases, taxes that are

20   supposed to be paid as part of the leases.  Again, we

21   tried to reach out, be part of the process so we can

22   provide the tax information.  If real estate is sold,

23   lease is rejected, we can make sure everyone knows what

24   the taxes are.  And presumably it was our intention to

25   get things paid during the course of the case.

1    And that's in fact happened.  And this is what

2    this document that we call our pink list, the pink is

3    the -- all taxes that have been paid that we can track.

4    We've not had any response from Winn-Dixie for that

5    past year on whether or not this is accurate or not,

6    but from all the tax collectors that have contacted my

7    office, and we filed our claim.

8        And we indicated in that claim that we understand

9    that a lot of things are leased.  But that's not within

10   the tax collectors' personal knowledge.  That's just

11   general knowledge from the case and talking to counsel.

12   And we indicated in the claim that we can't claim any

13   more, we're not trying to collect any more than what on

14   the tax rolls.

15       So from a standpoint of adequate protection

16   relative to the real estate, even as of five minutes

17   before this hearing, we still don't have an exact idea

18   of what real estate is owned by Winn-Dixie.  Various

19   counsel for Winn-Dixie are handling various aspects of

20   the real estate and things.  So we still don't know,

21   but we're getting close as far as the real estate

22   that's owned.

23       Adequate protection is primarily requested

24   relative to the tangible personal property.  Because,

25   again, in these large cases with these broad motions

1    to sell free and clear, there's broad authority to do

2    whatever you will with the tangible property that goes

3    here or there.   And so our lien is now attached to the

4    proceeds.   So we have a group, I believe right now it's

5    approximately 90 stores in the state of Florida which

6    were in fact closed.   So now we have a lien on cash.

7    Now we have the lien on the remains -- on the assets of

8    the remaining tangible property of the operating stores

9    in Florida.

10       The problem we have now and the reason we're

11   asking for adequate protection and the type of adequate

12   protection we're asking is that our taxes be put into a

13   separate escrow account identified with tangible taxes

14   and real estate taxes.   And the reason is the debtor

15   did not take advantage of the 4-percent discount.   So

16   right now the outstanding tax liability has increased

17   by about 1,500,000 due to the failure to take advantage

18   of the 4-percent discount and the accrual of the

19   18-percent interest that has accrued since the 2005

20   taxes have become delinquent.

21       So the total amount of the of tangible taxes,

22   according to the records of the Florida Tax Collectors,

23   is $6,511,190.76.   And that is through September 29th.

24   And that is a gross tax figure with no interest.   With

25   the additional interest, that has accrued of

1    approximately $1,050,000 for the seven months and then

2    $395,000 for the 4-percent discount that was not taken

3    advantage of.

4         The real estate taxes through 2005 is

5    3,417,241.76.  And that, again, is through last Friday.

6    We've submitted all this information over the course of

7    the past year, and Mr. Busey doesn't agree to it.  We

8    have not -- never been confirmed by Winn-Dixie,

9    notwithstanding our repeated requests to do so.

10        So that's what we're asking for adequate

11   protection on.  And the reason now we're coming up to

12   confirmation and there's still no outstanding issue

13   relative to the combining of all the assets and a

14   substantive consolidation of all the assets.

15        Well, we're in a unique situation.  We're taxes,

16   we're an obligation, we're not a debt.  And the only

17   thing that can pay these taxes is cash.  And we're

18   going to have very, very contested issues relative to

19   the Court's ability, the Court's jurisdiction, subject

20   matter jurisdiction to determine these taxes.

21        We do not want to be in a situation with the

22   debtor losing money as it is and then be in a situation

23   if the plan gets confirmed and a liquidating trustee

24   where we find over and over again as we go through it

25   all over again with a new set of attorneys, new set of

32

1    authorities who are controlling the assets of the

2    debtor, and, you know, interest continues to accrue.

3    And that is not the good for the estate.  And that is

4    not good for the tax collectors.

5        So I don't think the -- if all this cash is

6    available and it comes up to confirmation that this

7    money should be put in a separate account along with

8    the 1.5-percent interest that -- that is due under

9    state law.  If we are in fact fully secured as the

10   debtor states we will -- we are, that there's no need

11   for this, the need for the adequate protection in a

12   separate account is to make sure there's a ready source

13   of cash available to pay these taxes and fund these

14   taxing authorities.  That's the reason for the adequate

15   protection.  That's our request, Your Honor.

16       THE COURT:  Thank you.

17       Response?

18       MR. BUSEY:  Thank you, Your Honor.

19       The Florida tax collectors are a secured creditor,

20   secured by the collateral which is the subject of their

21   tax.  And therefore, for every $2 that their -- their

22   tax is approximately 2 percent of the value of the

23   collateral as valued by them.  So for every $2 in

24   taxes, there is, according to the tax collectors, $98

25   in value securing that $2 in taxes.  Or to put it in

1       the terms of an equity cushion, they are

2       over-collateralized by 490 percent on their collateral,

3       which they value at that number.  It's difficult to

4       concede from under the juris prudence how somebody who

5       is over-collateralized by 490 percent needs further

6       adequate protection.

7           We cited in our responsive briefs eight cases for

8       you which approve -- which deny motions for adequate

9       protection when they're over-collateralized by amounts

10      ranging from 10-percent to 20-percent equity cushions.

11      And this is 490 percent, by the tax collectors'

12      numbers.  The -- and I agree with Mr. Hanlon, we

13      didn't -- we haven't done a stipulation because we

14      hadn't -- we can't be precise about it yet.  But he's

15      approximately correct.  The taxes he's looking for

16      collateral for is approximately owing now $6.5 million.

17      Keep in mind the Proof of Claim that we're talking

18      about, the Florida Tax Collectors' Proof of Claim, as

19      originally filed in the case, was for $69 million.

20          They now agree that only, according to them, 6.5

21      is owing.  And that's the subject of dispute.  Yes, we

22      have objected to the Proof of Claim and we think that

23      that amount should be less.  But that's what's in

24      dispute here.

25          And the question is:  Are they due, by this

34

1      motion, adequate protection in addition to the 490

2      percent equity cushion they have, the collateral which

3      statutorily secures them?  And there's no question,

4      we've stipulated over and over in this Court that their

5      lien is superior to the DIP financing lien of Wachovia.

6      It comes first.  It's a super-priority lien.

7      So not only do they have the value -- their value

8      of the property on which they assess this tax as

9      business property, it's personal property, commercial

10     and personal property, business equipment, by their

11     number that property is worth approximately $230

12     million.  That's their first secured for their $6

13     million in taxes.

14     Additionally, he's complaining about the company

15     should put aside cash in addition to that collateral.

16     The latest monthly operating report filed in this Court

17     for the period ending in August shows that the debtors

18     have on hand $257 million in cash.  And that same

19     monthly operating report shows that they have

20     approximately $300 million in availability under their

21     DIP financing.  So there is no question here nor has

22     any been raised by the movant of the debtors'

23     liquidity.

24     So considering that they have statutory liens,

25     super-priority ahead of DIP financing on $230 million

1    worth of equipment, meaning that they're 490-percent

2    over-collateralized, we think their motion asking us to

3    put aside -- put aside, escrow, $6.5 million should be

4    denied.

5        THE COURT:   Short response.

6        MR. HANLON:   The short response is the Proof of

7    Claim initially filed recognized it would be reduced

8    due to the lease payments.   We've always said that.

9    Part of the money is already set aside as part of the

10   sale orders.   There are some counties in which the

11   Winn-Dixie store is gone and there's no other

12   collateral in that county.   So the only collateral that

13   they secure in securing those liens in those counties

14   and those other stores that are gone are -- is the cash

15   that's already in a separate account.

16       We're asking really nothing more than an

17   accounting, a segregation of the funds.   It also helps

18   to keep the debtors focused on the continued accrual of

19   interest if they have to deposit that interest into

20   that separate account.   We're not asking to use it.

21   It's there for us, to be paid.   Somehow it brings the

22   issue to the forefront much quicker and gets the estate

23   resolved much quicker if someone in that accounting

24   office is putting interest into that account every

25   month.   And we'll get that heard -- I think we'll get

36

1      it heard before the Court much quicker than normal.

2          THE COURT:  Anything else?

3          MR. BUSEY:  No, Your Honor.

4          THE COURT:  Based on the representations of

5      counsel on both sides, none of the factual allegations

6      alleged by either of you were disputed by the other.

7      And the Court will take that as a stipulation of fact.

8      And based on the facts, the Court finds that, number

9      one, there is equity in the property securing these tax

10     claims.  And therefore, under the normal circumstances,

11     the debtor is not obligated to show the property is

12     needed for a successful reorganization, which they

13     don't need to do.

14         On the basis of cause, which was alleged by the

15     tax collector, that the police in these different

16     counties might not be paid, and the fire departments

17     are being paid, I don't have any real proof of that.

18     And therefore, I'm not going to find that as cause.  I

19     think there's an equity cushion that will allow

20     payment.  The movant indicated that some of this money

21     is already held in escrow by closing agents, whoever

22     closed the transactions on the sales or assumptions of

23     those stores.  So I assume those moneys will be paid or

24     earmarked so that those sales will stay clean.

25         Accordingly, the Court denies the motion for

37

1      adequate protection.  I ask Mr. Busey to prepare an

2      appropriate order.

3           MR. BUSEY:  We will, Your Honor.  Thank you.

4           THE COURT:  The next item is the Florida Tax

5      Collectors' Response to Motion to Dismiss Debtor's

6      Objection to Florida Tax Claims and Motion for Order

7      Determining Tax Liabilities.

8           MR. BUSEY:  Your Honor, I will make, for a

9      procedure point, just to bring the Court in focus on

10     what we have here, as Mr. Hanlon has pointed out, the

11     Florida Tax Collectors have filed a Proof of Claim.

12     That's what we were just talking about, and the debtors

13     have objection to it, and in their objection have filed

14     a motion asking the Court to determine what the

15     debtors' tax liabilities to the claimant are.  And in

16     response to the debtors' objection and motion for 505

17     determination, the Florida Tax Collectors filed this

18     pleading, which is in essence a motion to dismiss our

19     objection and motion.

20          And we've agreed with Mr. Fitzgerald and

21     Mr. Hanlon that it would be appropriate to let them

22     bring on their motion to dismiss and hear the legal

23     arguments on this issue.  It doesn't go to the

24     underlying merits of what taxes are due.  So that

25     factual issue is not before you today.  It's simply,

38

1      you should consider this a motion to dismiss the

2      debtors' motion under 505, the debtors' objection to

3      their Proof of Claim and 505 motion, and its legal

4      arguments we're about to present to you.

5             THE COURT:  Would it be also easier to also

6      include their motion to abstain and let's argue both of

7      those at the same time since they're all going to

8      involve overlapping argument?

9             MR. BUSEY:  At Mr. Hanlon's pleasure.

10            THE COURT:  Is that --

11            MR. HANLON:  Well, Your Honor, my understanding

12     was that the debtors' motion to determine taxes was

13     also going to be heard today.  But, again, I've -- I

14     had not had an opportunity -- this was a last minute.

15     So I'm prepared to move forward on both, Your Honor.

16     And if the Court would like me to, I'd be happy to --

17            THE COURT:  Let's take up your motion to dismiss

18     and motion to abstain.

19            MR. HANLON:  Okay.

20            THE COURT:  I don't see why you can't argue those

21     together.

22            Mr. Thames, you're on your feet.

23            MR. THAMES:  Thank you, Your Honor.  I would like

24     to be heard pursuant to the Section 1109 in the code on

25     behalf of the out-of-state taxing authorities that

1     heard -- that identified previously on behalf of Duval

2     County.  We would like one to -- two, motions.  The

3     first motion is the motion to continue these hearings

4     to where we can get them all consolidated.  I would

5     file the motion to consolidate and show you which other

6     pleadings are out there.

7          It's the same issues that are raised in the other

8     matters, the other -- with objections to the other

9     taxing authorities' Proofs of Claim, the legal

10    threshold, the legal issues that need to be addressed.

11    In the event the Court denies that motion, I ask that

12    we at least be given leave of Court to file amicus

13    curiae briefs to address these legal issues in support

14    of the Florida Tax Collectors' motions, such time as

15    the Court, reasonable time as the Court sets for --

16    because there are -- these are substant legal issues.

17    I don't think the Court is going to be in a position to

18    rule from the bench on these today.  They're pretty

19    tough.  They're hard to follow.  And I would like the

20    Court to permit a briefing and allow us to file a brief

21    in support of these motions.  Thank you.

22         MR. BUSEY:  May I be heard, Your Honor?

23         THE COURT:  Sure.

24         MR. BUSEY:  With all due respect, which you know I

25    have for Mr. Thames, we don't think they're all that

40

1    tough nor did Mr. Fitzgerald when we talked to him

2    about it.  They're pretty straight-up legal issues.

3        It was Mr. Fitzgerald who asked us for sure to put

4    this on the calendar today, because he wanted it heard

5    before the confirmation hearing.  And we agreed with

6    that.  We thought it was appropriate, because some of

7    these same legal arguments are raised in

8    Mr. Fitzgerald's objection to confirmation.  And

9    because they're substantive, we thought it would be

10   appropriate for the Court to hear them and get them out

11   of the way before the hearing next Friday.  So that was

12   the agreement between the Florida tax collectors and

13   the debtors.  That's why the matter, the legal

14   arguments reflected in the motion to dismiss are on the

15   calendar today.  And for those reasons we would like to

16   have the Florida Tax Collectors' motion not continued.

17       THE COURT:  As to Mr. Thames's motion, I'm going

18   to deny those motions.  These motions have been pending

19   in this Court for a long time.  This hearing has been

20   scheduled.  You're in communication with these people.

21   You knew or should have known what was going.  You

22   could have filed a motion, you could have filed a

23   supportive brief or something at this point.  I think

24   it's a little late in the day.

25       The Court will take up the motion of the tax

41

1       collectors to dismiss the objection to the Florida Tax

2       Collectors' claims.

3               MR. HANLON:   Thank you, Your Honor.   And, again, I

4       have no reason at all to doubt.   Mr. Busey and I have

5       never crossed swords before, and I'm happy to move

6       forward, Your Honor, and accept Mr. Busey's

7       representation completely.

8               Just that I'm a little behind the eight ball

9       today.   That's, okay, Judge.   We're fine.

10              Let me start by -- by asking the Court to stop for

11      a moment and recognize Florida tax law, because that's

12      -- that's what's at issue here.   And the jurisdiction

13      of the Court and the jurisdiction that the issues of

14      the Supreme Court in Katz and Hood have avoided comes

15      down to ad valorem taxes.   If I can break it down to

16      two very simple issues for the Court to consider, and

17      rather than taking up too much time I will refer the

18      Court to the case cited in our brief which is -- excuse

19      me, Your Honor -- Custom Distribution Services,

20      224 F.3d 235.

21              In that case the Third Circuit case really lays

22      forth the history, the jurisdictional aspects, the

23      subject matter jurisdiction of the Court.   If the Court

24      were to read that first, that would summarize our

25      argument relative to the jurisdiction of -- the subject

1    matter jurisdiction of this Court, notwithstanding the

2    in rem jurisdiction over the bankruptcy estate.

3        So we have two aspects.  Under the motion to

4    dismiss, we're saying the debtor failed, under Custom

5    Distributions, the -- under 505, you must first request

6    a refund from the taxing authority under the

7    Administrative Procedures Act.  And then after that's

8    completed, you then go to a federal court and seek

9    jurisdiction.  The debtor has not done that.  In fact

10   in their response they said, you know, the time limits

11   have expired under state law.  And they haven't done

12   it.

13       And so under 505(B) -- 505(a)(2)(B), they failed

14   to plead jurisdiction in their motion and they failed

15   to comply with the jurisdictional prerequisites for

16   subject matter jurisdiction to determine the taxes.

17       Second aspect is a 505 in and of itself.  Is it

18   constitutional?  Now, can a Congress, pursuant to its

19   Article I powers, simply grant, when you look at the

20   plain meaning of the statute, jurisdiction to a

21   Bankruptcy Court to determine or levy taxes?  And

22   clearly that's unconstitutional on its face.  You don't

23   get a second bite of the apple.

24       Not only in all federal cases involving federal

25   taxes and the IRS in federal courts, debtors must first

1    go and pursue and exhaust two administrative remedies.

2    They haven't done that.

3        Custom Distribution Services, the AMC Rental case,

4    which is also 316 B.R. 153, also dismisses -- and

5    actually the Court abstained in the AMC Rental case,

6    which is also cited in our brief, indicated, since they

7    haven't exhausted the administrative remedies, the

8    cases cited in our brief are from Supreme Court cases,

9    which specifically -- and the Supreme Court uses the

10   word "chaos."  Federal trial courts go into the state

11   court system when there's a plain speedy and efficient

12   remedy in state law under the Tax Injunction Act, it

13   will create chaos in the system.

14       And the Supreme Court, Justice Ginsburg, in an

15   opinion -- I will submit that to the Court; I don't

16   have it off the top of my head -- indicated that tax

17   collection is premised upon payment first and then

18   contest and seek a refund.  It's not premised on

19   delaying taxes, enforcing tax collectors or the taxing

20   authorities be put in an untenable situation of

21   pressure where:  Am I going to spend a dollar of tax

22   money to collect a dollar of tax money?

23       That's the underlying principle of tax collection,

24   both federal and state.  And courts recognize that, and

25   they address it and the requirement and the need and

44

1       the public interest in ensuring that taxes are funded

2       and paid is very, very compelling to all courts.

3            Now, there is -- you go back to the Article I in

4       the Bankruptcy Code and you go to -- we've argued the

5       Tenth Amendment and the Eleventh Amendment.  Tenth

6       Amendment says, any right not preserved in the

7       constitution is reserved to the states, words to that

8       effect.  States have an inherent power to tax their

9       citizens to fund their government.  That's an inherent

10      power of the states.  Now, for Congress, under the

11      bankruptcy clause to say, "Well, we're going to usurp

12      that taxing power and give it to our federal bankruptcy

13      system and federal court system and appellate process

14      carte blanche," is, we believe, to be an

15      unconstitutional interpretation or an unconstitutional

16      statutory application of 505.

17           So what would be the appropriate?  You know,

18      Courts have to look at the code, look at any statute,

19      you know, or ask this Court or any other trial court to

20      determine something unconstitutional, you know, barring

21      very, very weird circumstances or acute circumstances

22      which makes absolutely clear, that's really not going

23      to happen.  The Court's duty is to look at the -- look

24      at the statutes and interpret them as they are written.

25           And when you go to 505, that's the way it's

1    written.  It's consistent with the overall policy of

2    federal and state courts to pay your taxes or exhaust

3    your administrative remedies and then come to the court

4    and seek a determination of taxes.  Within the context

5    of a bankruptcy, let's hear, from a practical

6    standpoint, if things are being delayed, you can see it

7    again.  It's an obvious situation.

8         With federal taxes, federal court, federal laws,

9    you come in and you liquidate the amounts and you

10    determine how much has to paid and you proceed with the

11    reorganization process.  We're in a unique situation

12    with property taxes.  We have that process in place

13    now.

14         Chapter 197 is a very, very fair and equitable

15    process.  The debtor has filed sworn tax returns.

16    We're to be coming in here at the 505 motion or during

17    the confirmation hearing and say, "Judge, here's my

18    sworn indication of value.  And this is why you

19    shouldn't believe it anymore."  I don't know what

20    they're going to say, but that day will come before

21    Your Honor.

22         So they've filed sworn returns, they've had an

23    opportunity of a plain, speedy and efficient remedy.

24    They can go into a value adjustment board hearing for

25    $15.  Generally throughout the state, they're finished

1    within 60 to 90 days.  Decisions are rendered, and

2    they'd be finished.  They'd have all these amounts

3    completed by now had they availed themselves with that

4    process.  They elected not to.

5        Again, that's their business judgment.  They're

6    not bad people, but they have cost the estate now at

7    this point $1.5 million in additional tax obligations.

8    Still disputed, I understand the Court is going to make

9    a ruling, but that's the dice they're rolling on behalf

10   of the creditors.

11       The -- in addition to the Tax Injunction Act,

12   362 -- 362 B18, Congress made it clear, under B18

13   excludes from the automatic stay the creation,

14   perfection of statutory liens relative to ad valorem

15   taxes.  So Congress clearly intends to allow the states

16   and their -- and their procedure to establish the

17   liquidated amount of taxes to go under -- proceed under

18   state law by specifically excluding that from the

19   automatic stay.  And that came in as a result of the

20   '94 amendments.

21       Statute of nonclaim has expired under state law.

22   We cited the cases in our brief, Your Honor.  Those

23   should be estopped relative to the 2004 and 2005 taxes.

24   They cannot exhaust -- if they've elected not to pursue

25   their remedies under state law, they cannot come in

1       here and begin a brand-new case relative to

2       determination of taxes.

3           The 2006 taxes, Your Honor, under 959 28 U.S. Code

4       959 and 960, the debtors must comply with state law,

5       file their tax returns and pay their taxes in

6       accordance with state law.  This Court has no

7       jurisdiction to determine 2006 taxes.  They're asking

8       the Court to exert prospective relief presumably

9       against property appraisers who are not here, tell them

10      what the value should be.

11          The fundamental due process issue for that, just

12      on its face, how can you come in to a federal court,

13      ask the Court to make a -- enter an order against the

14      property appraiser who is not here, determine what the

15      value should be for 2006 taxes, which are a

16      postpetition tax year?  Your Honor, it simply flies in

17      the face of fundamental due process and it's clear

18      that, you know, this Court doesn't have the

19      jurisdiction over postpetition taxes that it may have

20      under the prepetition debts.

21          The permissible parties, they've asked to dismiss

22      it for failure to name permissible parties.  Your

23      Honor -- indispensable parties, excuse me.  The

24      property appraiser determines value.  Tax collectors

25      have no involvement in value whatsoever.  Florida tax

48

1    law, as designed, a tax collector's duties are set

2    forth in 197-332.  We have two duties:  number one, to

3    collect taxes before they become delinquent and, number

4    2, if they become delinquent, real estate, we sell a

5    tax certificate, tangible property receives property.

6    That's it.  Those are our duties.  We have nothing to

7    do with the millage rates, nothing to do with the

8    value.

9         Going back to millage rates, another aspect of the

10   reason this Court should dismiss this case, it totally,

11   the debtors totally ignore the state court process.

12   Now we're going through that process right now.  I'll

13   just give a short summary.  But there is a valuation on

14   an estimated tax bill sent out by the property

15   appraiser.  Before that bill goes out, it first goes to

16   the Florida Department of Revenue who determines

17   whether the value was established in accordance with

18   Florida law.

19        So all of the things we do, all of the valuations,

20   all the procedures done by Florida property appraisers,

21   are overseen, guided by and under the supervision of

22   the Florida Department of Revenue.  So the property

23   appraisers certified all these rolls and these values

24   to the Department of Revenue around June of each year.

25   The Department of Revenue reviews and it analyzes the

1  procedures involved, sends it back to the property

2  appraiser:  "Okay, you can go ahead and send those trim

3  notices out."

4      The estimated bills go out, and then the debtors

5  and any other taxpayers are given the opportunity to

6  review what the value is going to be and contest it

7  under the VAB procedure.

8      Well, that all took place postpetition for the

9  2005 taxes.  That all took place beginning in, in June,

10  July, August of 200, while the debtor was under the

11  supervision and the protection of this Court.

12      Now, I don't know how, under a motion to determine

13  taxes, not naming the property appraisers and the

14  Florida Department of Revenue, how they expect this

15  Court to determine value as determined by property

16  appraisers and Department of Revenue?  It makes no

17  sense.  They must be -- they must be named as parties.

18      Again, the Eleventh Amendment, I know that that's

19  currently under consideration by the Court.  I'll just

20  reiterate it very quickly.

21      We're alleging Eleventh Amendment of the -- of the

22  Constitution, Florida tax collectors are constitutional

23  officers or arms of the State and that we should be

24  afforded that protection.

25      Tenth Amendment, again, we argued that as well as

50

1          a motion to dismiss, containing inherent authority to

2          tax is something that each state enjoys and should not

3          be usurped by Congress pursuant to its Article I

4          powers.

5               The interest rate that the -- we addressed the

6          interest rate in their motion, Your Honor.  We

7          submitted two Florida Middle District cases relative to

8          the 18-percent statutory interest.  The debtor

9          submitted a Nebraska case and a Texas case.  In both

10         those cases, I'm not sure exactly what they're supposed

11         to support relative to reduction of interest.  But both

12         those cases the courts found that the statutory

13         interest, in Nebraska 14 percent and Texas 12 percent,

14         should in fact be used.

15              So all four cases, both ours and theirs, reflect

16         that the full amount of the statutory interest should

17         in fact be applied.

18              Again, we make an argument that the levy of a tax

19         is a legislative function, and the Court, again, should

20         not simply step into the shoes of the Florida

21         Legislature and determine the tax, which is a

22         legislative function.

23              Again, we go back to -- I cited a case called

24         Ex parte Keller, an 1893 case.  The duty of tax

25         collectors is to refrain from the seizure of property,