51

1    on the same token, it should be the duty of the courts

2    to direct prior payment of the taxes.  Again, which is

3    more we'll get into in the confirmation process.

4         Florida tax years, Your Honor, we've cited cases

5    that each tax year stands on its own.  The amount, the

6    amount due, there's no offsets and credits for the

7    future and subsequent years, which the debtor is

8    attempting to do within their 505 motion.  So we cite

9    to the Court to the Florida law relative to that.

10        So for those points, Your Honor, we'd ask that the

11   case be dismissed.  If without prejudice, fine.  Maybe

12   they can file an adversary proceeding and say -- when

13   you look at their -- when you look at their objection,

14   Your Honor, they filed -- attached to it is a six- or

15   eight-page memo from Assessment Technologies.

16        So if you really cut through it all -- now if they

17   stipulate to the amount and they say, Winn-Dixie versus

18   Property Appraisers and DOR, we, Winn-Dixie, believe

19   the value should be determined in accordance with this

20   theory of Assessment Technologies, property appraisers

21   and DOR come in and say, Your Honor, the value process

22   that's set forth by Assessment Technologies is

23   incorrect under Florida law, and the Court can make a

24   decision in an hour or two of oral argument, I believe.

25   That's the gravamen of the case.

52

1        I think the Court should dismiss this objection

2    and motion without prejudice, order them to file an

3    adversary proceeding against the DOR, the property

4    appraisers, and just attach that allegation relative to

5    valuation.  And the Court can make a decision very

6    quickly.  It will save a lot of discovery, a lot of

7    administration, and the case would be -- would be

8    solved.  Awful lot of tax money would get determined

9    one way or the other, and we could all move on.

10       Thank you, Your Honor.

11       THE COURT:  Thank you.

12       Mr. Busey.

13       MR. BUSEY:  Your Honor, if Mr. Thames wishes to

14   weigh in on this, I'd like to see him do it now before

15   I respond.

16       THE COURT:  Are you going to weigh in?

17       MR. THAMES:  Your Honor, I'd ask then the Court's

18   considering just plainly look at the arguments we

19   outlined in writing in Docket Number 11126.  There are

20   a lot of, again, a lot of these issues -- all we ask is

21   that whatever ruling you make today is without

22   prejudice to the same arguments being made by the

23   out-of-state taxing authorities and Duval County Tax

24   Collector when we -- when we get to the -- when we get

25   to the hearing on our responses, which is down the

1   road.   I think Court really should be deferring

2   consideration of all those.

3        One point Mr. Hanlon makes, though, that is

4   very -- which is correct and, I think, determinitive,

5   is the debtor needs to join the property appraisers.

6   The tax collectors collected tax based on the

7   assessments made by the property appraisers.  They're

8   asking in their motion and their objection to come in

9   and challenge the assessments.   That's normally done in

10  state law by suing the Department of Revenue and the

11  local property appraisers.   It's handled that way.

12       So procedurally they haven't crossed the right

13  threshold.   I do agree with Mr. Hanlon on that point.

14       Thanks.

15       THE COURT:   Okay.   Have we also dealt with the

16  Motion to Abstain, have you dealt with that?

17       MR. HANLON:   He's --

18       THE COURT:   Do you mind, Mr. Busey, let's handle

19  those.   And then you can respond to all of that.

20       MR. BUSEY:   That's fine, Your Honor.   Thank you.

21       THE COURT:   Now, to take a little pressure off

22  you, I'm not going to decide it right this minute.   I'm

23  going to take it under advisement and do something as

24  soon as I can.   And I'll give you a short window if

25  Mr. Fitzgerald wants to add something or you think of

54

1    something on the way home you want to put in writing.

2    Obviously I appreciate the position you're in.

3    MR. HANLON:  Thank you, Judge.

4    THE COURT:  You know, I think that would be only

5    fair.

6    MR. HANLON:  Judge, I just -- I wanted to add

7    there that we did receive an additional brief from

8    Winn-Dixie yesterday or the day before which we would

9    like to respond to, which we intend to.  Thank you,

10   Judge.

11   Abstention, Your Honor, again, in the lateness of

12   the hour and the request for brevity, I think there's a

13   six-factor test relative to abstention.  And I refer

14   the Court to the AMC Rental case, which is in our -- in

15   our motion, in our brief.  And I'll just go through six

16   factors and argue them very briefly.

17   The first factor is the complexity of the tax

18   issue.  The debtor can make the tax issue as complex or

19   as simple as it wants.  I've indicated to the Court,

20   during the argument on the motion to dismiss, how

21   simple it really is.  When you cut through it all, you

22   look at their objection, go right to the end of their

23   objection to the statement by AMC, throughout their

24   objection they state, it's a value determination, it's

25   a value issue.  That's it.  The taxes are what they

1    are.  It can't be as simple as this stipulation

2    relative to these accounts.  Here's the amounts.  Put

3    the values in and then the Court can decide.

4        So -- but if the debtor wants to, they can say we

5    need to take discovery on 57 property appraisers.

6    Where did you get your values?  Where are your experts?

7    What are we going to do with property that has been

8    sold that's no longer here?  Is that property of the

9    estate?  Can the Court make a decision relative to

10   value of property that the debtor sold?

11       We can go on and on and on regarding raising

12   issues.  But I think if the debtor is candid with the

13   Court and said, simply a valuation, we can really get

14   to the heart of the matter.  So the complexity of the

15   tax issue is very fact intensive.  And how it's

16   presented to the Court I think is in the debtors'

17   control.

18       The second factor in abstention is need to

19   administer to the bankruptcy case in an orderly and

20   efficient manner.  Again, I'll go back and reiterate

21   what I just argued relative to the complexity of the

22   tax issue.

23       I don't think it's that complex if it's pled and

24   brought to the Court's attention properly with the

25   simple fact of valuation.  If we abstain now, we'll

56

1      eliminate plan confirmation issues.

2          Maybe the Court wants to decide:  "I'm going to

3      abstain this.  I agree with the -- with tax collectors'

4      argument that I don't have jurisdiction over this under

5      505.  And I'm not going to determine these taxes, and I

6      intend to abstain because the debtor filed sworn tax

7      statements.  And I'm going to abstain now.  The debtor

8      knows the liquidated amounts that are due.  It's not

9      going to kill the debtor.  It's $3.5 million in real

10     estate and $6.5 million in intangible.  We'll stop the

11     accrual of interest, which has already gone on, you

12     know, for seven months.  And the debtor can move on

13     with its life."

14         So an orderly, efficient administration of the

15     case abstention would not hurt the debtor, necessarily

16     financially, as represented by counsel, as far as their

17     cash situation.

18         The third issue is burden on the Bankruptcy Court

19     and the Bankruptcy Court's docket.  Again, I'll defer

20     to my original argument.  This case in valuation can be

21     as simple or as complex as Winn-Dixie intends to do it.

22         I've read the objection to claim.  I know the

23     Court has.  And again I'll refer back to that simple

24     statement by Assessment Technologies:  Here's the way

25     to be established, and the property appraisers did it

57

1   wrong.  Have both sides come in one afternoon to decide

2   it and it's over.  Or we can go through and we have all

3   this complex discovery we have to take and all these

4   depositions and things, which are unnecessary.

5       The fourth factor is the length of time required

6   for trial and decision.  Again, another -- another arm

7   of the same argument, whether -- you know, how lengthy,

8   how complex the debtor chooses to make these the

9   valuation issues.  And then we have the other issue

10  relative to the sold property, that it's gone, you

11  know, whether the Court can even make that decision on

12  value of property already sold, or if the debtor wants

13  to come in and say simply, "Well, Your Honor, we sold

14  this at a bankruptcy auction and we got $100 for it.

15  So it's only worth $100."  If that's the extent of

16  their valuation, then the property appraiser -- the

17  property appraisers can come in, argue to the Court,

18  show authorities whether or not that's a proper

19  standard of valuation for tax purposes.

20      The fifth factor, when the abstention is asset

21  liability structure of the debtor.  We have many

22  potential issues there relative to the consolidation.

23  I'm not sure that's going to be next week.  But we'll

24  see if have the consolidation.  I don't know what the

25  debtors' net worth is at this point.  I don't know what

58

1   their -- what their debt structure is at this point.

2   We'll wait and see when it comes time for confirmation

3   hearing.  But the Court will have all of the

4   information necessary to make a decision -- make a

5   decision regarding the asset and liability structure

6   relative to that factor of the abstention elements.

7       The final test is prejudice to the debtor versus

8   prejudice to the taxing authorities.  We've touched on

9   that before.  Prejudice to the debtor, not really that

10  much money for the debtor.  Prejudice to the taxing

11  authorities:  Your Honor, I represent tax collectors

12  throughout the state of Florida.  In Palm Beach County,

13  they have a large county, and the tax collector loans

14  me out occasionally to these smaller counties.  I've

15  seen on a firsthand basis, for example, a very large

16  case.

17      And I'll just bring this to the Court's attention

18  so the Court can realize you can get involved in

19  hundreds of millions of dollars.  I was involved in a

20  large Chapter 11 case involving cogeneration plants in

21  Palm Beach County.  Halfway through the case, bond

22  lawyers, municipal lawyers, lawyers from all over the

23  country coming in on many hundreds of millions of

24  dollars of reorganization to restructure this case.

25      A phone called worked its way to my desk.  It was

59

1    a firefighter-paramedic-bookkeeper from one of the

2    rural counties out in Belle Glade.  Called up, and this

3    tax bill for that year was $40,000 going to that

4    hospital and that firefighter authority.  He had no

5    money available to pay for oxygen for the ambulance.

6    That's where it gets down -- that's where I see it for

7    the local function.  That local small firefighting

8    taxing authority, $40,000 out of this huge tax bill of

9    this huge cogeneration plant, happened in western Palm

10   Beach County.  That was the main source of funds, the

11   ad valorem taxes out there.  It's all rural, sugar cane

12   fields.  And he didn't have money to pay for oxygen for

13   the ambulance.  So we fight very hard for these taxing

14   authorities.

15        We don't have the funds to have large national law

16   firms, but we do have the will and the intention to

17   fight for every penny that we're entitled to.  And so

18   those are the six factors.

19        The prejudice to the taxing authorities, you know,

20   it's going to be very great.  The tax year is over for

21   2005.  So now it's time to gear up.  The debtor asked

22   for a motion for a continuance.  They look at the taxes

23   aren't due, understand that, and I understand the

24   administration of the case and the other larger issues

25   that have to be resolved prior to getting to us.  But

1    now it's our turn, and we intend to fight very hard.

2          And I think -- ask the Court to consider the time

3    we are at the end of the tax year for 2005, these funds

4    will not be paid.  We're looking for a quick

5    adjudication so we can decide or appeal or one way or

6    the other, because we're going into the next tax year.

7    So in addition to not getting paid this year, we're

8    also contesting 2006.  So these taxing authorities will

9    now have to determine millage rates, find out -- or cut

10   budgetary items for 2006 now that they know that these

11   taxes aren't going to be paid.

12         So we intend to try to bring this to the

13   Court's -- to the Court's consideration as quickly as

14   possible in as efficient manner as possible with

15   stipulations to the extent we can.  And we ask the

16   Court to consider these six factors and potentially

17   abstaining from this motion to determine taxes.

18         Thank you, Your Honor.

19         THE COURT:  Thank you.

20         Mr. Busey.

21         MR. BUSEY:  Thank you, Your Honor.

22         I'll address first the motion to abstain and then

23   go back to the motion to dismiss.

24         The tax collectors ask this Court to abstain from

25   exercising its jurisdiction to consider their Proof of

61

1    Claim instead of making us go back to the state courts.

2    Your Honor, I acknowledge that I went to Terry Parker.

3    But these are the tax collectors who say that our

4    claims are time-barred under state statutes.  So I'm

5    having difficulty understanding the argument of the

6    absence of prejudice if you were to abstain from

7    hearing this and sending us back to state courts where

8    we are time-barred.  So I don't think they prevail on

9    the consideration of prejudice.

10        But there's more to it than that.  The law that

11   we've cited in our response to their motion to abstain

12   says, in the Eleventh Circuit's case of Hormer versus

13   Green, abstention from the exercise of federal

14   jurisdiction is the exception, not the rule.  And the

15   bankruptcy court in Georgia, in Hospitality Ventures

16   La Vista, says:  The bankruptcy courts will not

17   abstain, however, when no other court, state or

18   federal, has jurisdiction over the proceedings in

19   question, which has been admitted by the tax

20   collectors.

21        And further, La Vista said:  If a bankruptcy court

22   has jurisdiction over a dispute and there's no other

23   tribunal to resolve it, the court is obligated to hear

24   the dispute; because there is no alternative forum

25   here, the court cannot abstain under 1334.

62

1          And further, in Lake Worth Generation, which is

2     Judge Hyman's decision we cited in our brief, this

3     court notes that the debtor's outstanding taxes owed to

4     the tax collector must be determined in accordance with

5     applicable state law.  This is a 505 proceeding in the

6     bankruptcy court.  This court will so determine the

7     debtor's taxes and, by doing so, cast no doubts or

8     reservations on the state court's ability to do so.

9          However, efficiency and convenience persuade

10    this Court to retain the present issue in the

11    bankruptcy court.  Given the simple nature of this tax

12    consequence -- controversy and the court's

13    administration of all the other issues in the debtor's

14    Chapter 11 case, this Court sees no affront to an

15    otherwise busy state court in determining the debtor's

16    outstanding taxes in accordance with Florida law.

17         Incidentally, I missed your Florida law, Your

18    Honor.  We pointed out in the footnote in our brief,

19    talking about the prejudice to the tax collectors, of

20    the tax collectors not having any moneys to pay their

21    firefighters because Winn-Dixie hasn't paid $6.5

22    million, the Department of Revenue shows that in 2004

23    the total taxes collected for property taxes in the

24    state of Florida was $22 billion.  I say that only

25    relatively speaking to the $6.5 million they allege and

1    we've denied that's due from this estate.

2        Some further authorities:  It is well established,

3    however -- this is Delaware's Third Circuit case, In

4    re: Heckinger.  And, again, this is cited in our brief.

5        Your Honor I want to forgo that.  The -- that's

6    all I want to say on the motion to abstain, Your Honor.

7        This Court has jurisdiction and we'll get into

8    that on the motion to dismiss, because it has

9    jurisdiction and because there's no alternative forum

10    and because it's most efficient for these debtors to

11    determine their tax liabilities in a single place

12    rather than 67 different places, it's in the interest

13    of this estate, and by the reason of the authorities

14    I've cited to you, it's mandatory that you not abstain.

15    You must deny the motion to abstain.

16        Now, let me turn to the motion to dismiss.  I want

17    to start with a case that I referred to earlier that

18    was cited by the tax collectors, the United States

19    Supreme Court Case in Central Community College versus

20    Katz, which was decided by the United States Supreme

21    Court in January of this year, because this really goes

22    to the whole issue that you heard Mr. Hanlon talking

23    about:  What is the constitutional jurisdiction of this

24    Court?

25        What he argues is 505 is unconstitutional.  That

1   is that the state is a sovereign, and the federal court

2   should not exercise jurisdiction over a sovereign

3   because of the Eleventh Amendment to the United States

4   Constitution preserves states rights.

5       And the issue is:  Is that so?  And what the

6   decision -- and to put it in context, think about what

7   we're talking here again.  I want to just make it

8   clear, because it needs to be plainly stated.  The

9   Florida tax collectors have come into this Court and

10  sought this Court's help in asserting what was

11  originally alleged a $69 million claim against these

12  estates, now 6.5 million.  And they want to, in

13  alleging that 505 is unconstitutional, assert sovereign

14  immunity so this Court can't hear the debtors'

15  objection to their Proof of Claim.  And that's what

16  we've done.  We've objected to their Proof of Claim and

17  asked the Court, pursuant to Section 505 of the

18  Bankruptcy Court (sic), to determine how much we owe

19  them.

20      And it's just anomaly that they want to both be

21  here but assert sovereign immunity so they don't have

22  to hear an objection to their claim.

23      Now, so let's go to the fundamental argument.

24  Does or does not a bankruptcy court have jurisdiction

25  over a state court, the state agency?  And, again, the

65

1          decision in the Katz case, where there wasn't a proof

2          of claim filed, where a debtor reached out to a state

3          agency to recover a preference, is that the United

4          States Supreme Court in January of this year said the

5          bankruptcy court has jurisdiction to do that, because

6          in the absence of a proof of claim, just the amount of

7          a proof of claim, which gives this Court personal

8          jurisdiction over the claimant, under Gardener, Supreme

9          Court, and Burk, Eleventh Circuit, but in Katz there's

10         no personal jurisdiction, no affirmative proof of

11         claim.

12              The holding of the Court was that the bankruptcy

13         court had in rem jurisdiction and had ancillary

14         jurisdiction pursuant to the in rem jurisdiction --

15         that was the Sumprem Court's language -- to recover a

16         preference for a state agency.

17              And just two paragraphs I want to read out that

18         decision giving the reasoning.  And obviously the

19         reasoning was because the United States Constitution

20         gives power to Congress to determine laws of

21         bankruptcy.  So that trumps the Eleventh Amendment,

22         because it's in the Constitution itself that Congress

23         has authority to administer bankruptcy laws.

24              And I'll read this paragraph -- two paragraphs out

25         of Katz:  The Court need not consider the question Hood

1    left open, whether Congress's attempt to abrogate

2    sovereign immunity in Section 106 is valid.

3        Keeping in mind you haven't heard out of the

4    debtors' mouth here 106.  We're not relying on 106.

5        The relevant question is not abrogation but

6    whether Congress's determination the state should be

7    amenable to preferential transfer is within the scope

8    of its powers under, quote, laws and the subject of

9    bankruptcies, close quote, which is a quote out of the

10   Constitution.  And the Supreme Court says:  Beyond

11   peraventure it is.  And then it goes on to give its

12   reasoning, it says, the ineluctable conclusion -- we

13   didn't use that word at Terry Parker -- the ineluctable

14   conclusion then, is that States agreed in the plan of

15   the convention, not to assert any sovereign immunity

16   defense they may have had in proceedings brought

17   pursuant to, quote, laws on the subject of

18   bankruptcies, close quote.  That's the United States

19   Supreme Court on the issue that's being argued here.

20   That was decided in January of this year.

21       Now, the tax collectors argued Custom Distribution

22   Services, Inc., which is a Third Circuit Court of

23   Appeals case in 2002, and the argument that you heard

24   from counsel was that this Third Circuit case compels

25   the debtor who is seeking a refund of taxes to go first

1    to the state and ask for a refund before it does in

2    bankruptcy court.  And it cites for that authority

3    505 -- let me find this section.

4         MR. HANLON:  (a)(2)(B), Counsel.

5         MR. BUSEY:  I want to read it.

6         505(a) is the section that says that you have

7    jurisdiction to determine taxes owned by the debtors'

8    estate and 502(b) says the court may not so determine

9    the -- any right of the estate to a tax refund before a

10   determination by such governmental unit of such

11   request.  And that's the law.

12        But the point that the tax collectors missed is

13   that we're not, by our objection and motion, requesting

14   a refund.  We were aware that's the law.  We were aware

15   of the Custom Distribution Service's decision which

16   says that that law means what it says.  And therefore,

17   it did not request in our motion and objection a

18   refund.  What we requested was a determination of the

19   amount of tax owed and the right to offset any that we

20   have overpaid against future tax that these estates owe

21   to those states.

22        An offset is different than a refund, and that's

23   precisely what our motion asked for.  And if you look

24   at the Custom Distribution Service's case, it makes

25   that distinction.

1    They say:  First we are persuaded that the

2    bankruptcy court here do not have jurisdiction for

3    order of the City to refund excess payments because of

4    505(a)(2)(B) that we just read.  But then it goes on in

5    the next section, which is entitled "Jurisdiction to

6    Which Adjudicate Tax Offsets, which is what we've asked

7    for.  And this is why we asked for it because of this

8    authority.

9    And it reads -- and the court cites the Dunhill

10    bankruptcy case out of New Jersey.  And the Third

11    Circuit says:  The Dunhill court concluded, based on a

12    legislative history of 505, that the debtor could

13    dispense with the IRS requirement for filing the claim

14    of refund when a claim of refund is sought as an offset

15    or a counterclaim to a proof of claim filed by a tax

16    authority, to a proof of claim, filed by a tax

17    authority.

18    And Note 7 in that case, Headnote 7, there's no

19    reason why the analysis in Dunnhill should not apply

20    with equal force to real property taxes and state law

21    and goes ahead and allows offsets.  So please be clear

22    that we are not, in our motion and objection, asking

23    for refunds.  505 (a)(2)(B) is not applicable.  We're

24    asking for offset and offset is expressly authorized by

25    the very authority that the state relies on.

1          The next argument that I want to address is

2     whether or not the tax assessor needs to be joined as a

3     party, which is an argument that the taxing authorities

4     make.

5          First of all, I point out the impracticality and

6     inefficiency of that, and then I'll point out the fact

7     why it's not required as a matter of law.  What they're

8     asking for is we have the tax -- the tax collectors

9     here.  In fact, when Mr. Thames just filed his response

10    to the debtors' 505 objection or motion, which he filed

11    on behalf of Duval County, he filed it not only on

12    behalf of the tax collector but on behalf of the tax

13    appraiser.  So he brought voluntarily this tax

14    appraiser into it.

15         The tax appraiser is a neighbor of mine, and I'm

16    sure he authorized that, but we'll talk to him about

17    that.

18         But the question before the Court is whether or

19    not you should dismiss, as this motion asks, dismiss

20    our objection and motion because it fails to join the

21    necessary party -- that's the tax assessor -- and make

22    us refile an adversary proceeding to join not only the

23    tax collectors who are here asserting the claim against

24    this estate but the tax assessor.  We're not seeking

25    any relief against the tax assessor, Your Honor.  We're

1    not asking the tax assessor to do anything or to do

2    anything different.  All we're asking by our objection

3    and motion is for you to determine how much, under

4    state law, we owe the state, which 505 gives you

5    jurisdiction to do.

6         This was the very issue that was before the court

7    in Blue Cactus Post, which was a decision of the Texas

8    bankruptcy court.  And we have cited this in our brief.

9    It was a 1999 decision.  And I'll just read the

10   pertinent parts to you, because it was the same

11   argument.

12        In here there was an argument that the Dallas

13   County Taxing Authority and the Dallas County Appraiser

14   Department should be joined:  Further under 1105

15   505(a)(1), the court, the court not the tax assessor,

16   is responsible for valuing the property and ultimately

17   determining the amount of the tax.  That's the 505

18   language, determining the amount of tax.

19        It is true that procedurally, pursuant to property

20   tax code, the appraiser is responsible for initially

21   determining the value of the property located within

22   its boundaries for tax purposes as of January 1 issue.

23   The appraiser is also involved in the protest of this

24   valuation by the taxpayer.  However, this proceeding

25   was not brought under the property tax code.  It was

1    brought under the Bankruptcy Code, which preempts state

2    law and authorizes the court, subject to certain

3    limitations, to determine the amount or legality of any

4    tax by penalty or penalty-related tax or any addition

5    to tax whether or not previously assessed, whether or

6    not paid or whether not contested before and

7    adjudicated by a judicial or administrative tribunal

8    competent jurisdiction.

9        The power to disregard the State's procedural

10   requirements for protesting tax liabilities under the

11   Bankruptcy Code goes to the very heart of the necessity

12   for the determination of the Bankruptcy Court under

13   505.  Let me read that again:  "The power to disregard

14   the State's procedural requirements for protesting tax

15   liabilities under the Bankruptcy Code, goes to the very

16   heart of the necessity for the determination by the

17   bankruptcy court under 505.  Therefore, the substantive

18   law of the state of Texas will govern the court's

19   determination in these proceedings by the procedural

20   requirements, including the necessity to bring the

21   petition for review against the appraisal district are

22   irrelevant.

23       The appraiser is not a necessary party under

24   Rule 19(a) and should be dropped from this adversary

25   proceeding to determine 505 taxes owing."

1      And we cited in our brief, Your Honor, a footnote

2    on page 14 that cites five authorities, five bankruptcy

3    court decisions which determine 505 taxes to do by a

4    debtor to a taxing authority on the appearance of the

5    tax collector alone, including a decision by Judge Mark

6    in Piper Aircraft and by Judge Hyman in Lake Worth

7    Generated.

8      The only authority cited to the contrary by the

9    tax collector are two decisions out of Tampa.   The

10    first was Polygraphic Systems which is a decision by

11    Judge Williams.  And this issue that we're talking

12    about now was not argued or adjudicated whether or not

13    the appraiser should be there.  What Judge Williams

14    says in his decision was that a hearing held on the

15    original objection to this claim, the court, after

16    finding merit in this position, granted leave to the

17    debtor to file an amended objection to join the

18    assessor.

19      And then the court goes on to adjudicate the real

20    issues in the case, which held the property appraiser

21    was not an agent that's under the state for the

22    Eleventh Amendment purposes, that a 505 proceeding did

23    not constitute a suit against the state for amendment

24    -- for Eleventh Amendment purposes and that by filing a

25    proof of claim, the State waived any sovereign

1   immunity.  And that's with the holdings of that case.

2   It was not a holding in that case that the tax assessor

3   was a necessary party.

4        Judge Williams just mentions in the case that in

5   an earlier proceeding he suggested it.  And there was

6   no analysis of the issue as you find in the Blue Cactus

7   case which I cited to you.

8        The second authority cited by the tax authorities

9   is Psychiatric Hospitals, which is a Judge Paskay

10  decision, 1997.  And in that case the appraiser was a

11  party and the -- but the court said -- you'll find it

12  in the decision -- that the debtor consented to it.

13  The debtor filed a response to the tax collector's

14  motion to dismiss contending that the failure to serve

15  the property appraiser was an an over -- was an

16  oversight and agreed to join them.

17       So neither of those decisions was this issue

18  argued, analyzed or adjudicated.  And so the authority

19  that I cite to you is the Cactus decision, which

20  thoroughly analyzes it and says that it's the court

21  that's going to make a determination.  We're not asking

22  the assessor to do anything or to change anything on

23  its rolls.  All we're going to do in this Court,

24  pursuant to 505, is to determine the amount of the tax

25  owed, as alleged by the tax collector, and determine

1    that debt.  And for that reason, the assessor is not a

2    necessary party.

3         And I suggest to you if you read that case, which

4    I know you will, you'll find that reason persuasive.

5    And you'll look at our footnote to see the six other

6    decisions where it was done on the tax collector alone,

7    including Judge Mark and Judge Hyman's decision and

8    find that that's the correct results.

9         If you would just give me a moment, Your Honor.

10        With regard to the arguments made in the motion to

11   dismiss of the Tax Injunction Act, prevents the

12   exercise of your jurisdiction under 505.  We cited in

13   our decision -- in our brief three decisions:  one by

14   the Tenth Circuit, one by the the Third Circuit and one

15   by the district of Rhode Island, all of which expressly

16   state -- and we have the block quotes in our brief --

17   that federal appeals courts that have held Section 505

18   carves out a well-recognized exception of the Tax

19   Injunction Act, because it's the more specific statute.

20        And one other point that's been made by the tax

21   assessor is that the -- because we're time barred with

22   the state law, we should not be able to proceed under

23   505.

24        And I want to read to you where Judge Mark

25   addressed this issue in Piper Aircraft:  "The broad

1    grant of jurisdiction contained under Section 505 makes

2    no reference to time periods imposed by state law.  A

3    debtor, as representative of the bankruptcy estate, is

4    allowed to contest tax debts in bankruptcy court even

5    though his prior in an action would bar him from

6    contesting them elsewhere.  This is permitted on the

7    grounds that taxes with their priority pose a special

8    problem for creditors and creditors should not be

9    prejudiced by the debtor's inaction.

10       The debtor may challenge the assessed value of the

11   real property and personal property which is subject of

12   the 505 motion and may seek a determination of tax

13   liability for each of the years in question under 505

14   not withstanding its failure to timely change the

15   assessment, challenge the assessments under Florida

16   law."

17       And we've cited the Southern District Case in

18   In re: Home and Housing of Dade County which says?

19   "The debtor is given a renewed opportunity to contest

20   the amount due for taxation and the bankruptcy court is

21   not bound by the time limits to determine the amount of

22   taxes applicable in any other of forum."

23       And we cited three other cases that hold the same

24   thing, Your Honor.  And we've given you block quotes.

25       It's plain if you read this, all the juris

1    prudence on this issue, that the reason 505 is here is

2    to permit particularly when a taxing authority has

3    submitted itself voluntarily to the jurisdiction of the

4    case and ask us to pay them.  If this Court has

5    jurisdiction to hear our objection to adjudicate how

6    much is owing under 505, we can do it in the form of

7    our objection and motion, which is by operation of the

8    rules necessarily an adversary proceeding and grant

9    relief against the claimant.  And that's what we ask

10   you to do and we ask you to deny the motion to dismiss.

11       THE COURT:  Thank you.

12       MR. HANLON:  Can I have a brief reply, Your Honor,

13   if I may.

14       THE COURT:  Very brief.  I'm going to give you an

15   opportunity to file something in writing.  Go ahead

16   and --

17       MR. HANLON:  Well, Judge, I just --

18       THE COURT:  -- respond briefly.

19       MR. HANLON:  I found the authority I was referring

20   to earlier, Your Honor, where Supreme Court Justice

21   Ginsburg -- and where appealed to a higher authority

22   over the Third Circuit -- justice Ginsburg, referring

23   to the Tax Injunction Act, and the other -- the other

24   act is the Anti-injunction Act; it's the AIA dealing

25   with federal taxes and referring to the Tax Injunction

77

1    Act.   Justice Ginsburg indicates:   "Congress modeled

2    1341 on earlier federal statutes of similar import,

3    which in turn paralleled state provisions prescribing

4    state court actions to enjoin the collection of state

5    and local taxes.

6         Congress drew particularly on the Anti Injunction

7    Act, AIA, which bars, quotes, any court from

8    entertaining a suit brought for the purpose of

9    restraining the reassessment or collection of any

10   federal tax, 26 U.S.C. 7421.

11        This Court has recognized from this AIA's text

12   that the measure serves twin purposes.   It responds to

13   the government's need to assess and collect taxes

14   expeditiously with a minimum of preenforcement judicial

15   interference and requires that the legal right to

16   disputed sums be determined in a refund suit."

17        Now, they can play word games and call it an

18   offset, but it quacks like a duck, it looks like a

19   duck, sounds like a duck, Your Honor, it's a refund.

20   That's what they're requesting for 2004 taxes.   They

21   have failed to comply with the 505 prerequisites having

22   pled that jurisdictional aspect in their motion.

23        With respect to quickly the Delinquent Generation

24   case, it was my case before Judge Hyman, we objected to

25   the sale free and clear of liens.   It was a one-asset

1      case a big generator.  They could have paid their taxes

2      at the time of the sale of 300- and approximately

3      $30,000.  They filed a reply to the -- my objection to

4      the sale.  My objection to the -- to the plan.  The

5      plan was confirmed, the pleadings were -- all these

6      motions and objections all combined in one pleading.

7      The result, instead of paying us $300,000, they paid us

8      $775,000 which is the next year's taxes in full, plus

9      interest, plus some back assessments because of, you

10      know, statements they made relative to exemptions

11      and -- exemptions.

12          So behind that, yes, we are concerned about this.

13      There's going to be an extensive additional cost to the

14      estate, Judge.  And what we're saying is, Judge, fine,

15      if you want to contest the taxes, do it, do it write,

16      be candid, give the Court an opportunity of a clear set

17      of pleadings.  We contest these assessments made by the

18      property appraiser in accordance with assessment

19      technologies, name the property appraiser, have them

20      come in and get it resolved.  That's what they should

21      do.

22          We don't deny their right to do this, but don't

23      deny us our right to defend.  That's all we're asking

24      you, Judge, just our right to defend.  And the property

25      appraisers need to be here along with the Department of

79

1      Revenue to defend the assessments, the procedure and

2      the state law, which they in fact are contesting.  So

3      bring the proper parties in.  It's fundamental due

4      process, Your Honor.

5          I suggest the easiest and the cleanest way to do

6      this is go ahead and dismiss this motion and objection

7      to whom -- without prejudice, give them a chance to

8      refile, bring the proper parties in and plead it

9      concisely and simply.

10         Thank you, Your Honor.

11         MR. THAMES:  Your Honor, if you think Section 105

12     of the Bankruptcy Code has been abused, wait until you

13     delve into Section 505.  You're going to find a case

14     out there that will support almost any position you

15     want to take.  I think the courts have been very

16     liberal in the interpretation of the statute and on

17     behalf of the tax collectors, we think they overstep

18     the bounds of how far they can go.

19         A couple of points, and I'll sit down.  It is

20     clear that Section 505, the debtor can utilize Section

21     505 of the code to determine some tax liabilities.  Our

22     position on it is there are limits on how far that can

23     go, and that is the substance of our objection.

24         But one thing that is clear is they must -- they

25     are bound, by the same standards of procedures that are

80

1    required under state law.  Among those are to join

2    property appraisers and the Department of Revenue as

3    you're supposed to.  Duval County, in our response and

4    Mr. Busey pointed out at the direction of the General

5    Counsel's Office, we joined both the tax collector and

6    the property appraiser, because as -- we didn't want to

7    get -- we want to waive the procedural law, and we get

8    passed that, and let's get to the meat of the matter.

9        The fact of the matter is they haven't joined them

10   though, and I do support the tax -- I think that the

11   Florida Tax Collectors are correct, is they need to

12   join the property appraisers.

13       This motion, the pleading that started this all

14   has two components.  It has an objection to the claim.

15   The claim has been filed; that amount has to be

16   confirmed.  But it's joined with a motion to determine

17   tax liabilities seeking affirmative relief and to do

18   that and get some -- to get a refund of taxes for 2004,

19   the reduction for 2005 and apply the credit against

20   2006.  That's what's at issue in this case.  And it's

21   jurisdictional.

22       As Mr. Hanlon pointed out, no matter how they

23   disguise it, it's a refund.  And it is jurisdictional

24   that you must first request a refund under state law.

25   Those are the two points.

1          Procedurally their motion is not -- they don't

2     have the necessary parties.  And secondly on this issue

3     of what they intend to do and to apply that credit for

4     as future tax liabilities, is a disguise refund.  And

5     the courts are almost uniform down the line that --

6     that the courts lack jurisdiction if they have -- and

7     the statute says it itself -- it lacks jurisdiction

8     unless they first made that request for a refund and

9     they haven't done that.  So those would be the two

10    points that we'd hang our hat on.

11         But this point, again, without waiver of getting

12    in, if we get past this and if we get it procedurally

13    correct, but we'll get to the meat of the matter and

14    the other issues of waiver and the actual assessments

15    themselves.

16         Thank you.

17         MR. HANLON:  Judge, I just have the cite.  I

18    didn't put it in the record, if I may, the Hibbs case I

19    was citing to Your Honor, if I may.

20         The prior quote in my argument is Hibbs v. The

21    Arizona Department of Revenue, Supreme Court Case

22    542 U.S. 88, 2004 decision.

23         THE COURT:  Thank you.

24         MR. BUSEY:  Your Honor, just three things in

25    response to what they said just to make sure the record

1    is clear about it.

2        First of all, the Ginsburg decision Mr. Hanlon

3    cites is not appropriate, because we have not brought

4    suit to enjoin the collection of taxes.  We are

5    responding by objection to a Proof of Claim asserted

6    against these estates by the claimant for taxes, and we

7    ask the Court to determine the right amount owing on

8    that claim in this wholly distinguishable reason that

9    authorities recited.

10        Secondly, Mr. Thames is wrong when he says that

11    this Court must engage with the procedural

12    requirements.  As I read to you out of the Blue Cactus

13    decision, the power to disregard the State's procedural

14    requirements for protesting tax liabilities under the

15    Bankruptcy Code, goes to the very heart of bankruptcy

16    court jurisdiction.

17        And in regard to joining the tax assessors, think

18    about it.  What we would do if you were to grant the

19    relief they ask for, is dismiss our motion and

20    objection, require us to replead as an adversary

21    proceeding, go serve and bring in 67 additional parties

22    to permit this Court to do what you can do right now in

23    response to the claim asserted by the tax collectors.

24    And we enjoy great expense and great delay and

25    accomplish nothing more subsequently.

1     And as the blue cactus decision says, that's not

2  necessary, because these are the people who is

3  asserting the liability and you can, under Florida law

4  and 505, determine what we owe to them.  And it's not

5  necessary.  We're not seeking any relief against the

6  tax assessors.

7     THE COURT:  Okay.  I'm going to give everybody a

8  chance to -- I've read the submissions, but I need more

9  time to study and read all the cases.  But I assume you

10 may have other submissions you want to put in?

11    MR. HANLON:  Yes, Your Honor.

12    THE COURT:  Well, if I'm going to give you

13 submission time, there's not going be a decision before

14 the confirmation hearing, I'm going to tell you.  But

15 apparently that's not a problem.  So we'll have a

16 little --

17    MR. BUSEY:  Your Honor, it's not really a problem,

18 but what we're trying to do is we're going to have a

19 lot to accomplish next Friday on the 13th.  And we saw

20 all of these arguments that were raised and objections

21 to confirmation within the the Court's jurisdiction

22 over the tax collectors, and we thought it would be

23 efficient for the Court to hear this today rather than

24 to burden the proceedings with the same arguments next

25 Friday.

84

1      THE COURT:  A decision --

2      MR. BUSEY:  You end up going --

3      THE COURT:  These arguments will be adopted in the

4  next -- at that hearing without having to hear -- I

5  mean, Mr. Hanlon I'm willing to hear you all day.  You

6  do a great job.  I don't want to hear it again.

7      MR. HANLON:  No, I understand, Judge.  That would

8  be great if we can adopt this these.  And there's one

9  evidentiary issue I don't think -- if we can get the

10  stipulation worked out for purposes of the

11  confirmation, that would save --

12      THE COURT:  You keep working.

13      How much time do you want to submit any further --

14      MR. HANDLIN:  Judge, we just got their brief

15  yesterday.  I don't -- there isn't much, with all due

16  respect, there isn't much to it.  I think we can get --

17  we can get some of these -- we'll keep it limited to

18  Supreme Court Eleventh Circuit decisions that

19  associate --

20      THE COURT:  You do, you take your best shot.  It's

21  going to be your only shot.

22      MR. HANLON:  I understand, Judge.

23      THE COURT:  Ten days?

24      MR. HANLON:  That will fine, Judge.  Thank you

25  very much.