## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| Debtors. | ) | Jointly Administered |

## ORDER (A) AUTHORIZING THE DEBTORS
## TO SELL LIVE OAK OUTPARCEL AND RELATED
## ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
## AND INTERESTS, AND (B) GRANTING RELATED RELIEF

These cases came before the Court on the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105(a), 363 and Fed. R. Bankr. P. 6004: (a) authorizing Winn-Dixie Stores, Inc., a Florida corporation ("Winn-Dixie"), to sell a tract of land located in Live Oak, Florida, as more particularly described on Exhibit A attached to the Motion (the "Live Oak Outparcel"), together with all related personal property and all related appurtenances, rights, easements, rights-of-way, tenements and hereditaments to Ronnie Poole (the "Purchaser"), or to a party submitting a higher or better offer, free and clear of liens, claims, interests and encumbrances and (b) granting related relief (the "Motion").[1]  A hearing on the Motion was held by the Court on October 25, 2006 (the "Sale Hearing").  The Court has read the Motion and considered the representations of counsel.  Upon the representations of

---

[1]     All capitalized terms not otherwise defined by this Order will have the meaning ascribed to them in the Motion or the Purchase Agreement.

counsel and without objection from the United States Trustee or any other interested party, the Court makes the following findings of fact:

A.    This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

B.    The Debtors solicited the highest or otherwise best offer for the Assets described in the Purchase Agreement (the "Assets") in accordance with bidding procedures approved by the Court by order (Docket No. 1801) dated June 20, 2005 (the "Bidding Procedures").

C.    The Debtors have provided interested parties (including all parties asserting claims on interests of the Assets, if any) with proper notice of the Motion, the Auction, the Sale Hearing and the transactions contemplated by the Sale pursuant to 11 U.S.C. §§ 102(1), 105(a), 363 and Fed. R. Bankr. P. 2002 and 6004 and Local Rule 2002-1, the Bidding Procedures Order and the Notice Procedures Order.

D.    A reasonable opportunity to object or be heard with respect to the Motion and the sale of the Assets has been afforded to all parties in interest (including all third parties asserting Interests or Claims (as such terms are defined below) in, to or against the Assets, if any).

E.    The Debtors marketed the Assets and conducted the Sale process in compliance with the Bidding Procedures Order. Through the Debtors' marketing efforts, the Debtors afforded all interested parties a reasonable opportunity to make higher or better offers to purchase the Assets.

F.    Winn-Dixie (i) has full corporate power and authority to execute and consummate the purchase agreement attached as Exhibit A to this Order (the

2

"Purchase Agreement") and all related documents, and the sale of the Assets has been duly and validly authorized by all necessary corporate action of the applicable Debtors; and (ii) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required to consummate the transactions contemplated by the Purchase Agreement.

G.    Winn-Dixie has good business reasons to sell the Assets prior to filing a plan or reorganization pursuant to 11 U.S.C. § 363(b).

H.    Neither Purchaser nor any of its affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

I.    The Purchase Agreement was proposed, negotiated and entered into by Winn-Dixie and the Purchaser without collusion, in good faith and at arms'-length bargaining positions.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

J.    The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m).

K.    The consideration being provided by the Purchaser to the Debtors for the Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value and fair consideration for the Assets.

L.    Winn-Dixie's transfer of the Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with good and valid title in and to the Assets free and clear of any

3

lien, interest or encumbrance of any kind or nature (collectively, the "Interests") and claim (as such term is defined in 11 U.S.C. § 101(5)) ("Claims") with the exception of the Permitted Encumbrances, as defined in the Purchase Agreement.

> M.    Winn-Dixie may sell and transfer the Assets free and clear of all Interests and Claims (other than the Permitted Encumbrances) because any entity with any Interests or Claims, if any, in the Assets to be transferred (i) has consented to the sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or (iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  Holders of Interests and Claims, if any, who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

> N.    The Court's approval of the Purchase Agreement and the sale of the Assets to the Purchaser, or its designee, are in the best interests of the Debtors, their estates, their creditors and other parties in interest.  Accordingly, it is

ORDERED AND ADJUDGED THAT:

> 1.    The Motion is granted.

> 2.    Any objections to the entry of this Order or to the relief granted and requested in the Motion that have not been withdrawn, waived or settled are denied and overruled on the merits.

> 3.    The terms and conditions of the Purchase Agreement are approved. Pursuant to 11 U.S.C. §§ 105(a), 363(b) and this Order, the Debtors are authorized to

4

consummate the Sale in accordance with the terms and conditions of the Purchase Agreement.

4.     Winn-Dixie is authorized to consummate and implement fully the Purchase Agreement, together with all additional instruments and documents that may be necessary to implement the Purchase Agreement, and the Debtors are authorized to take all further actions as may reasonably be necessary or appropriate for the purpose of conveying the Assets to the Purchaser, or its designee, or as may be necessary or appropriate to the performance of the Debtors' obligations under the Purchase Agreement.

5.     Any agreements, documents, or other instruments executed in connection with the Purchase Agreement may be modified, amended, or supplemented by the parties without further order of the Court; provided, however, that, (a) the Debtors will first obtain the prior written consent of (i) the DIP Lender, and (ii) the Creditors' Committee, which consent will not be unreasonably withheld and (b) any such modification, amendment or supplement does not have a materially adverse effect on the Debtors' estates.

6.     Winn-Dixie will transfer the Assets to the Purchaser, or its designee, upon Closing free and clear of all Interests and Claims (except for the Permitted Encumbrances).    The senior liens and superpriority administrative Claims and/or Interests of the DIP Lender and any other valid and enforceable liens, if any, including any lien held by the Suwanee County Tax Collector, will attach to the proceeds of the Sale in accordance with the Final Financing Order and the Loan Documents (as defined in the Final Financing Order).

7.      Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, is a legal, valid, and effective transfer of the Assets and will vest the Purchaser, or its designee, with all right, title and interest of the Debtors in and to the Assets, free and clear of all Interests and Claims (except for the Permitted Encumbrances).

8.      The consideration provided by the Purchaser, or its designee, for the Assets constitutes reasonably equivalent value and fair and reasonable consideration under the Bankruptcy Code and applicable non-bankruptcy law, and may not be avoided under 11 U.S.C. § 363(n).

9.      Upon Closing of the Sale in accordance with the Purchase Agreement and this Order, the Purchaser is deemed to have acted in good faith in purchasing the Assets, as that term is used in 11 U.S.C § 363(m). Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Assets will not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

10.      All entities that are presently in possession of some or all of the Assets are directed to surrender possession of the Assets to the Debtors. Each of the Debtors' creditors is authorized and directed to execute any and all documents and take all other actions as may be necessary to release its Interests in and Claims against the Assets (except for the Permitted Encumbrances) (provided that the taking of such actions will not require such creditor to incur any material costs) as such Interests and Claims may have been recorded or may otherwise exist. In the event any creditor fails to release its Interests in or Claims against the Assets, the Debtors are authorized to file or record a copy of this Order. Once filed, registered or otherwise recorded, this Order will

constitute conclusive evidence of the release of all Interests in and Claims against the Assets (except for the Permitted encumbrances).

11.    Winn-Dixie's transfer of the Assets to the Purchaser, or its designee, will not result in (a) the Purchaser having any liability for any Claim and/or Interest (except for the Permitted Encumbrances or Assumed Liabilities) against the Debtors or against an insider of the Debtors or (b) the Purchaser having any liability to the Debtors except as expressly stated in the Purchase Agreement and this Order.

12.    Other than the Permitted Encumbrances, the Assumed Liabilities and other obligations of the Purchaser as set forth in the Purchase Agreement and this Order, the Purchaser and its designee, (and its affiliates, successors or assigns) will have no responsibility for any liability of the Debtors arising under or related to the Assets. The Debtors' transfer of the Assets to the Purchaser, or its designee, does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Assets), to any liability for Claims and/or Interests against the Debtors or the Assets by reason of such transfer under the laws of the United States or any state or territory.

13.    This Order is and will be effective as a determination that any and all Interests or Claims are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets.

14.    Upon Closing, this Order will constitute a complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and marketable title in the Assets to the Purchaser, or its designee. Each and every federal, state, and local governmental agency or department is directed to accept any and all

7

documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

15.     This Order is binding in all respects upon, and inures to the benefit of, the Debtors, their estates and creditors, the Purchaser and its designee, and its respective affiliates, successors and assigns, and this Order is binding in all respects upon all persons asserting an Interest in or Claim against the Debtors' estates or the Assets. The sale is enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any chapter 7 or chapter 11 trustee of the Debtors and their estates.

16.     During the pendency of the Debtors' jointly administered cases, this Court will retain exclusive jurisdiction (a) to enforce and implement the Purchase Agreement and any agreements and instruments executed in connection with the Purchase Agreement, (b) to compel delivery of possession of the Assets to the Purchaser, (c) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement and (d) to interpret, implement, and enforce the provisions of this Order.

17.     All persons and entities that hold Interests in or Claims against the Debtors or the Assets are forever barred, estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale of the Assets.

18.     Nothing contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or any order of this Court confirming such a plan, or

any other order entered in these chapter 11 cases or in any subsequent chapter 7 cases will conflict with or derogate from the terms of this Order.

19.    The failure specifically to include any particular provision of the Purchase Agreement in this Order will not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

20.    After the Closing, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Purchaser or any of its affiliates any tax (or other amount alleged to be owing by one or more of the Debtors) (i) on account of or relating to any Interests or Claims or (ii) for any period commencing before and concluding prior to or on Closing or any pre-Closing portion of any period commencing before the Closing and concluding after the Closing, or (iii) assessed prior to and payable after Closing, except as otherwise provided in the Purchase Agreement.   No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the Purchase Agreement.

21.    To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Purchase Agreement and this Order, the provisions contained in the this Order will control.

22.    Notwithstanding Fed. R. Bankr. P. 6004(g), this Order will take effect immediately upon entry.

Dated this 25 day of October, 2006 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed
to serve a copy of this Order
on all persons served with
the Motion.

00545576

10

**EXHIBIT A**

FINAL

## REAL ESTATE PURCHASE AGREEMENT
[Live Oak FL Outparcel]

**THIS REAL ESTATE PURCHASE AGREEMENT** (this "Agreement") is made as of March 28, 2006 (the "Effective Date"), between

**RONNIE POOLE**, his successors and or assigns ("Buyer"), and

**WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller").

1.  SALE AND PURCHASE. Seller agrees to sell, assign, transfer and convey to Buyer, and Buyer agrees to purchase from Seller, that certain tract of land situated in Suwannee County, Florida, as more particularly described on attached Exhibit A, together with all appurtenances, rights, easements, rights-of-way, tenements and hereditaments incident thereto (the "Property"). The Property is located within a retail shopping center (the "Shopping Center") that is intended to constitute an integrated commercial community. Accordingly, the Property is subject to a Declaration of Reciprocal Easements and Restrictive Covenants (the "Declaration") as more fully described on the Schedule of Permitted Encumbrances attached as Exhibit B (the "Permitted Encumbrances").

2.  PURCHASE PRICE AND PAYMENT. In consideration of the conveyance of the Property to Buyer, Buyer will pay to Seller the sum of $110,000 (the "Purchase Price"), payable as follows:

    (a)  An initial earnest money deposit of $5,000 (the "Initial Deposit") will be due and payable to Smith, Gambrell & Russell, LLP, through its Jacksonville, Florida office, as escrow agent ("Escrow Agent") under the provisions of paragraph 14 within 3 days after the Effective Date, and will be refundable to Buyer only as expressly provided in this Agreement.

    (b)  If Buyer does not timely terminate this Agreement prior to expiration of the Investigation Period, then a second earnest money deposit of $6,000 (the "Second Deposit") will be due and payable to Escrow Agent within 3 days after the expiration of the Investigation Period, as hereinafter defined. The Second Deposit will be refundable to Buyer only as expressly provided in this Agreement. The Initial Deposit by itself, and together with the Second Deposit if required to be delivered pursuant to this paragraph, will be referred to herein as the "Deposit."

    (c)  At Closing, the Deposit will be credited against the Purchase Price, and the unpaid balance of the Purchase Price will be due and payable in cash (as adjusted by prorations and payment of expenses as herein provided).

3.  PROPERTY CONDITION AND INVESTIGATION.

    (a)  Property Conveyed AS IS. BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING, SELLER WILL SELL AND CONVEY TO BUYER AND BUYER WILL ACCEPT THE PROPERTY **"AS IS, WHERE IS,"** WITH ALL FAULTS, AND THERE ARE NO ORAL AGREEMENTS, WARRANTIES OR REPRESENTATIONS COLLATERAL TO OR AFFECTING THE PROPERTY BY SELLER OR ANY THIRD

PARTY. THE TERMS AND CONDITIONS OF THIS PARAGRAPH WILL EXPRESSLY SURVIVE THE CLOSING AND NOT MERGE THEREIN.

(b)   <u>Use Restrictions</u>. Buyer acknowledges that the Declaration contains restrictive covenants prohibiting or limiting certain enumerated uses on the Property, which are for the purpose of protecting Seller's continuing commercial interests within the Shopping Center. Seller intends to supplement the Declaration, if necessary, solely to ensure that Seller will have the following exclusive use rights within the Shopping Center, and that no portion of the Property may be used for the following purposes (the "<u>Use Restrictions</u>"):

(i)   <u>Seller's Exclusive Uses</u>. Neither Buyer, its tenants, subtenants, licensees or concessionaires, or successors and assigns, will engage, directly or indirectly, in any of the following uses within the Property, which will be exclusive to Seller within the Shopping Center:

(a)   supermarket, grocery, bakery, or delicatessen;

(b)   sale of meat, seafood, vegetables/fruit/produce, dairy products or frozen foods for off-premises consumption;

(c)   sale of pet products, paper products and cleaning products;

(d)   pharmacy or prescription drug concession;

(e)   sale of beer and wine for off-premises consumption;

(f)   sale of liquor and spirits for off-premises consumption; and

(g)   photo lab or film development business.

(ii)   <u>Property Use Restrictions</u>. Neither Buyer, its tenants, subtenants, licensees or concessionaires, or successors and assigns, will engage, directly or indirectly, in any of the following uses within the Property, which are to be prohibited within the Shopping Center:

(a)   Discount general stores, dollar stores, dime stores, thrift shops, and consignment shops, such as Dollar General, Big Lots, Goodwill, Family Dollar, and other similar businesses.

(b)   Convenience Stores, whether stand-alone or adjunct to a gas station or restaurant use.

At Seller's election, Seller may either modify the Declaration at or prior to Closing, or incorporate restrictive covenants into the Deed at Closing, as hereinafter defined, for the purpose of establishing the foregoing Use Restrictions, and Buyer hereby consents to such action as Permitted Encumbrances as covenants running with the land on the same basis as existing restrictive covenants contained in the Declaration.

2

(c)   <u>Investigation Period</u>.

(i)   Buyer will have a period commencing on the Effective Date and expiring at 5:00 p.m. on that date which is 60 days after the Effective Date, in which to investigate and inspect the Property to determine whether or not the same is satisfactory to Buyer (the "<u>Investigation Period</u>"). During the Investigation Period, Buyer will be provided access to the Property to inspect the physical condition thereof, including engineering, civil, landscaping and environmental studies, verify zoning, conduct appraisals, feasibility studies, obtain any financing desired by Buyer, make soil tests, determine allowable uses under zoning or the applicable comprehensive land use plan, test for hazardous materials, and to determine the availability of water, sewer and other utilities.  All such investigations, tests, verifications, copies and examinations will be made by Buyer at Buyer's sole expense.

(ii)   Buyer indemnifies and agrees to defend and hold harmless Seller from and against any loss, damages or liability arising out of Buyer's investigation of the Property, including reasonable attorneys' fees.  Buyer further indemnifies and agrees to defend and hold harmless Seller from and against all claims or liens against Seller or the Property filed by contractors, materialmen or laborers performing work and tests for Buyer.  If this sale does not close, or if Buyer otherwise elects to terminate this Agreement as provided herein, Buyer will restore the Property to its original condition prior to such termination.

(iii)   Within 10 business days after the Effective Date, Seller will deliver to Buyer, to the extent in the possession of Seller or its legal counsel, copies of all documents listed as Permitted Encumbrances, a copy of Seller's most recent available boundary survey or site plan, environmental site assessment report, and engineering reports, if any, relating to the Property (collectively, the "<u>Property Reports</u>").  Buyer acknowledges that the Property Reports are provided for informational purposes only, are not warranted by Seller for accuracy, completeness, or fitness for a particular purpose, and are not a substitute for Buyer's own investigation and inspection of the Property using its own due diligence service providers.  If Buyer fails to close for any reason, all materials provided by Seller to Buyer (including without limitation, the Property Reports), all materials relating to the Property obtained by Buyer, and all copies of any such materials, will be delivered to Seller promptly, and in any event not later than 10 business days following such termination.

(iv)   Buyer agrees to accept the transfer and conveyance of the Property by Seller without any warranty or representation concerning the quantity, quality, or condition of the Property, the availability of water, sewer, utilities or necessary governmental authorizations, or any other matter not expressed in this Agreement.  Buyer is accepting the Property "AS IS" with all faults.  Seller has no obligation to make any independent investigation or verification of the condition of the Property.  THERE ARE NO EXPRESS OR IMPLIED WARRANTIES GIVEN TO BUYER IN CONNECTION WITH THE SALE OF THE SUBJECT PROPERTY (other than

3

the warranties set forth in the Deed to be delivered by Seller to Buyer at Closing).

(v) If Buyer determines, in accordance with the terms specified herein, that Buyer does not wish to proceed with the acquisition of the Property, then Buyer may, by written notice to Seller and Escrow Agent given not later than the expiration of the Investigation Period, terminate this Agreement and thereupon Buyer will have no further obligations hereunder except with respect to the indemnifications and restoration obligations given by Buyer to Seller as provided in this paragraph 3. Upon such termination notice timely given, Escrow Agent will refund the Deposit to Buyer. In the event Buyer fails to terminate this Agreement prior to expiration of the Investigation Period, then Buyer will be deemed to have elected to proceed with the acquisition of the Property, and thereupon, the Second Deposit will be due and payable to Escrow Agent, and the Deposit will be nonrefundable to Buyer except in the event of: (A) a material default by Seller under this Agreement that is not cured by Seller on or before the Closing Date; (B) Seller's inability to deliver title pursuant to paragraph 4; (C) failure of the Approval Condition pursuant to paragraph 6 if such failure is not a result of a default by Buyer hereunder; or (D) a loss or condemnation event pursuant to paragraph 7 as a result of which Buyer timely elects not to acquire the Property. In the event that Buyer timely elects to terminate this Agreement, Seller agrees to promptly execute and deliver to Escrow Agent all releases and documentation required to refund the Deposit to Buyer.

4. TITLE AND SURVEY MATTERS.

(a) Title Commitment. Not later than 10 business days after the Effective Date, Seller will obtain and deliver to Buyer a title insurance commitment (the "Commitment") from Fidelity National Title Insurance Company (the "Title Insurer") committing to insure Buyer's fee simple title to the Property for the amount of the Purchase Price, and stating all exceptions and conditions to such title, including, without limitation, those encumbrances created pursuant to the Credit Agreement dated as of February 23, 2005, as amended, between Winn-Dixie Stores, Inc. and certain banks and financial institutions, and certain documents executed by Winn-Dixie Stores, Inc. or Seller in connection with such Credit Agreement (the "Credit Agreement Liens"), any other liens and encumbrances affecting the Property ("Other Liens"), the Permitted Encumbrances, and all other easements, restrictions, covenants, reservations, and other encumbrances affecting title that are accepted by Buyer (collectively, the "Exceptions"). The Commitment delivered to Buyer will include copies of all Exceptions. Buyer will have 10 days after receiving both the Commitment and the Survey, as hereinafter defined (the "Review Deadline"), to examine the Commitment. It is a condition of Buyer's obligation to close and pay to Seller the Purchase Price that title to the Property is marketable or insurable subject only to the Permitted Encumbrances and those other Exceptions that are reasonably acceptable to Buyer. If Buyer reasonably determines that any matter (other than Permitted Encumbrances) renders Seller's title to the Property unmarketable, Buyer will

4

notify Seller in writing on or before the Review Deadline of Buyer's objections (the "Objection Notice").

(b)    Boundary Survey. Not later than 10 business days after the Effective Date, Seller will obtain and deliver to Buyer and Title Insurer a current boundary survey of the Property (the "Survey"). The Survey will be prepared by a licensed surveyor, prepared in accordance with the minimum technical standards for surveys under the laws of the state in which the Property is located, certified to Buyer, Seller and Title Insurer, and show a metes and bounds legal description for the Property (the "Legal Description"). Buyer will have until the Review Deadline to review the Survey and to deliver in the Objection Notice its objections to any matters that render Seller's title to the Property unmarketable (other than Permitted Encumbrances) disclosed by such Survey, including, without limitation, objections as to the accuracy or consistency with the Commitment or the Legal Descriptions.

(c)    Seller's Cure of Objections. If Buyer timely delivers the Objection Notice to Seller, Seller will have until the end of the Investigation Period to attempt to cure such objections, it being understood, however, that the Credit Agreement Liens and Other Liens will not be cured until issuance of the Sale Order and Closing. If Seller is unable or unwilling to cure any objections other than the Credit Agreement Liens and Other Liens prior to the end of the Investigation Period, then Buyer will have until the expiration of the Investigation Period to elect, by written notice to Seller, whether to (i) waive the unsatisfied objections and complete the purchase of the Property subject to the objectionable matters, or (ii) terminate this Agreement and cause the Deposit to be refunded to Buyer.

5.    WARRANTIES OF SELLER AND BUYER.

(a)    Seller's Warranties. Seller warrants to Buyer as follows:

(i)    Corporate Existence and Authority. Seller is a Florida corporation and its status is active.  Subject to the satisfaction of the Approval Condition pursuant to paragraph 6 below, Seller has the corporate power and authority to enter this Agreement and to consummate the transactions contemplated herein.

(ii)    Title to Property. Seller owns fee simple title to the Property, subject to the Permitted Encumbrances and the Credit Agreement Liens.

(iii)    Power to Convey. To Seller's knowledge, and subject to satisfaction of the Approval Condition pursuant to paragraph 6 below, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Seller of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To Seller's knowledge, other than the Bankruptcy Cases, as defined in paragraph 6 below, there is no action, suit, proceeding or investigation pending which would prevent the transactions contemplated by this Agreement or which would become a cloud on the title to the Property or any portion

5

thereof or which questions the validity or enforceability of the transactions contemplated by this Agreement or any action taken pursuant hereto.

(b)    <u>Buyer's Warranties</u>. Buyer warrants to Seller as follows:

    (i)    <u>Existence and Authority</u>. Buyer, or its permitted assigns, has full power and authority to enter this Agreement and to consummate the transactions contemplated herein, and if Buyer's assign is a business entity, such entity is duly authorized, validly existing and active in the state of its formation.

    (ii)    <u>Power to Acquire</u>. To Buyer's knowledge, and subject to satisfaction of the Approval Condition pursuant to <u>paragraph 6</u> below, the execution of this Agreement and the performance of its terms will not constitute or result in a violation or breach by Buyer of any agreement, judgment, order, writ, injunction or decree issued against or imposed upon it, or result in a violation of any applicable law, order, rule or regulation of any governmental authority. To Buyer's knowledge, other than the Bankruptcy Cases, there is no action, suit, proceeding or investigation pending which would prevent the transactions contemplated by this Agreement or which questions the validity or enforceability of the transactions contemplated by this Agreement or any action taken pursuant hereto.

    (iii)    <u>Financial Condition</u>. Buyer represents, warrants and covenants that as of the Effective Date and continuing through the Closing Date, Buyer has and will have the sufficient funds on hand to perform its obligations under this Agreement, including payment of the Purchase Price at Closing.

(c)    <u>Survival of Warranties</u>. The respective warranties of Buyer and Seller above will not survive the Closing but will merge into the Deed, and will have no further force or effect after the Closing, and the liability of Seller under or with respect to the warranties will be limited to the express remedies of Buyer set forth in this Agreement.

6.    <u>CLOSING CONDITIONS</u>.

(a)    <u>Approval Condition</u>.

    (i)    <u>Chapter 11 Cases</u>. Seller (Winn-Dixie Stores, Inc. and certain of its affiliated companies) filed voluntary petitions for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code, U.S.C. §101 <u>et seq.</u>, as amended (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Southern District of New York on February 21, 2005 (the "<u>Filing Date</u>") and have operated its businesses as debtors-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code, since the Filing Date (the "<u>Bankruptcy Cases</u>"). By order entered on April 13, 2005, the Bankruptcy Cases were transferred to the United States Bankruptcy Court for the Middle

6

District of Florida, Jacksonville Division (the "Bankruptcy Court") where they are being jointly administered under Case No. 05-03817-3F1.

(ii)     Competitive  Bid  Process. By Order dated June 20, 2005, the Bankruptcy Court approved bidding procedures and bid protections for use in the sale of assets in the Bankruptcy Cases (the "Bidding Procedures"). This Agreement is subject to the competitive bid process described in the Bidding Procedures. Promptly following the expiration of the Investigation Period, provided that Buyer has not earlier terminated this Agreement in accordance with paragraphs 3 or 4 above, Seller will file a motion with the Bankruptcy Court seeking approval of the transactions contemplated by this Agreement, subject to higher or better offers, and the transfer of the Property free and clear of all claims and liens including the Credit Liens, other than Permitted Encumbrances, pursuant, inter alia, to 11 U.S.C. Sections 105, 363 and 1146(c) (the "Sale Motion"). The Bankruptcy Court will set a date for hearing on the Sale Motion and to consider entry of the Sale Order relating to the successful bid (the "Sale Hearing"). Prior to the Sale Hearing, the debtors will conduct an auction pursuant to the Bidding Procedures (the "Auction"). The Bidding Procedures allow Seller to accept competitive bids on the Property to determine the successful bid for the Property. The party submitting the successful bid for the Property as selected by Seller is referred to as the "Successful Bidder". Buyer may participate in the Auction, and may submit purchase terms different from those set forth in this Agreement as Buyer may deem appropriate in seeking to become the Successful Bidder.   Prior to the Sale Hearing, upon consultation with the Creditors' Committee and DIP Lender, Seller will select the highest or otherwise best offer to purchase the Property, as determined by Seller in its sole discretion in accordance with the Bidding Procedures, as the Successful Bid (as defined in the Bidding Procedures). Seller will submit the Successful Bid to the Bankruptcy Court at the Sale Hearing, for entry of a Sale Order with respect to the Property by the Bankruptcy Court, either (a) approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, if Buyer is the Successful Bidder under the terms of this Agreement (or as modified during the Auction) or (b) approving the more favorable terms of purchase and sale offered by the Successful Bidder, whether Buyer or otherwise (the "Sale Order").

(iii)    Sale Order Approving Agreement. It will be a condition to the Closing of the transaction contemplated by this Agreement that the Bankruptcy Court will have issued the Sale Order approving this Agreement and all of the terms and conditions hereof and authorizing Seller to consummate the transactions contemplated hereby, and such Sale Order either will have become final and non-appealable, or the Sale Order will contain a waiver of the stay set forth in Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "Approval Condition").

7

(iv) <u>Continuing Effectiveness of Agreement</u>. Notwithstanding that Buyer may not be the Successful Bidder following the Bidding Procedures, this Agreement, as modified by Buyer's last bid made during the Bidding Procedures, will remain in effect in accordance with, and will remain subject to, the Bidding Procedures. If the Approval Condition is not otherwise satisfied by July 15, 2006 (the "<u>Outside Date</u>") through no fault of Buyer or if the sale of the Property closes with another Successful Bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other.

(b) <u>Conditions Precedent to Seller's Obligations</u>. The obligations of Seller under this Agreement are subject to the Approval Condition and satisfaction on or before the Closing Date, or such other date as herein provided, of all conditions contained in this Agreement, including each of the following (any of which may be waived by Seller in its sole discretion, unless otherwise stated herein):

(i) Buyer will have performed in all material respects all of its covenants contained in this Agreement which are not qualified by reference to a materiality standard; and Buyer will have performed in all respects all of its covenants contained in this Agreement which are qualified by reference to a materiality standard. All of Buyer's representations and warranties contained in this Agreement will be true and accurate in all material respects as of the Effective Date and the Closing Date.

(ii) No order, injunction or decree issued by any applicable governmental authority or other legal restraint or prohibition preventing the consummation of the transactions contemplated by this Agreement with respect to such Store will be in effect.

If any of the foregoing conditions has not been satisfied on or before the Outside Date, then Seller will have the right to terminate this Agreement; provided, however, that if any of the foregoing conditions have not been satisfied due to a breach of this Agreement by Buyer or Seller, then Buyer's and Seller's respective rights, remedies and obligations will be determined in accordance with <u>paragraph 13</u> of this Agreement.

7. <u>LOSS BY FIRE OR OTHER CASUALTY; CONDEMNATION</u>. If, prior to Seller's legal delivery of the Deed and Buyer's delivery of the Purchase Price, the Property or any material part thereof, are destroyed or materially damaged, then either party will have the right, exercisable by giving notice of such decision to the other within 5 business days after receiving written notice of such damage or destruction, to terminate this Agreement, and thereafter none of the parties will have any further rights or obligations hereunder; provided, however, that Buyer will be entitled to the return from the Escrow Agent of the Deposit. If neither party exercises its right of termination the Assets are sold to Buyer pursuant to the terms of this Agreement, as Buyer's sole remedies, Seller will assign to Buyer any rights it may have, and is entitled to assign, to recover insurance proceeds and will promptly pay over and deliver to Buyer any such proceeds received by it.

8

8.    CLOSING AND CLOSING DATE. The consummation of the transactions contemplated herein by Buyer and Seller (the "Closing") will be held on or before the 10th day following the satisfaction of the Approval Condition (the "Closing Date"), at a time and place mutually acceptable to the parties, but if none is agreed to, at the offices of Escrow Agent in Jacksonville, Florida. Closing may be conducted by use of mail-away procedures including escrow and Closing disbursement and delivery of documents and funds administered by Escrow Agent, as closing agent.

9.    CLOSING DELIVERIES. On the Closing Date, Seller will execute and deliver a special warranty deed (the "Deed") to Buyer as will be required to convey title to the Property to Buyer subject to the Permitted Encumbrances, and in accordance with this Agreement. The Deed will be in form and substance reasonably satisfactory to Seller and Buyer and in proper form for recording. Additionally, on the Closing Date, Seller will execute and deliver the title affidavit as required by the Title Insurer to allow the issuance of the title insurance policy without the standard exceptions other than for taxes for the year of Closing, those standard exceptions required under the laws of the state in which the Property is located, and for specific matters disclosed by the Survey, and a non-foreign affidavit as required under the Internal Revenue Code. At Closing, Buyer and Seller will execute and deliver a closing statement setting forth the disbursement of the Purchase Price and closing costs associated with the transactions contemplated herein. On the Closing Date, Seller will turn over exclusive physical possession of the Property to Buyer upon confirmation to Seller by the Escrow Agent that Escrow Agent has received and holds the entire Purchase Price for disbursement without further condition.

10.   CLOSING COSTS. At or prior to Closing, Seller will pay the commission payable to Seller's Broker as disclosed in paragraph 12, and Seller's attorneys' fees and costs ("Seller's Closing Costs"). At or prior to Closing, Buyer will pay the cost of documentary stamp taxes on the Deed, the cost of the title commitment and insurance policy to be issued pursuant to the Commitment in the amount of the Purchase price, the cost of the Survey, its due diligence investigations of the Property, recording fees, all financing costs of Buyer incurred to purchase or develop the Property including simultaneous issue mortgagee title insurance and related endorsements, Buyer's attorneys' fees and costs and all other fees, costs and expenses incurred by the Buyer in connection herewith ("Buyer's Closing Costs"). If this transaction fails to close for any reason, and without waiving any right or remedy that either party may have against the other in the event of a default hereunder, Seller promptly will pay Seller's Closing Costs, and Buyer promptly will pay Buyer's Closing Costs.

11.   PRORATIONS. All ad valorem taxes for the year in which the Closing occurs will be prorated between Seller and Buyer as of midnight immediately preceding the Closing Date. The tax proration at Closing may be based on an estimate using the previous year's tax amount.

12.   BROKERAGE. Seller and Buyer acknowledge that Seller has retained DJM Asset Management, LLC ("Seller's Broker") pursuant to Order Authorizing Debtors to Retain DJM Asset Management, LLC as Special Real Estate Consultants to the Debtors, issued by the Bankruptcy Court on June 10, 2005 (the "Retention Order"). Seller will be responsible for payment of the Seller's Broker pursuant to the Retention Order. Each party indemnifies and agrees to hold harmless the other from any claim made by any other broker or agent who claims to act for the party sought to be charged

9

for a commission, compensation, brokerage fees, or similar payment in connection with this transaction and against any and all expense or liability arising out of any such claim.

13.  **REMEDIES.**

(a) Seller's Default. In the event that Seller defaults in the performance of its obligations under this Agreement, and such default is not cured on or before the Closing Date, Buyer will be entitled to terminate this Agreement upon written notice to Seller and Escrow Agent and obtain a refund of the Deposit. Buyer waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided in paragraph 12 above, which indemnification will survive separately from the termination of this Agreement.

(b) Buyer's Default. If Buyer fails to make the Deposit when due or to comply with or perform any of the covenants, agreements, or obligations to be performed by Buyer under the terms and provisions of this Agreement, then Seller will be entitled to terminate this Agreement upon written notice to Buyer and Escrow Agent, and the Deposit will be paid to Seller as reasonable liquidated damages. Seller waives all other remedies it may have at law or in equity, except with respect to the indemnifications provided under paragraph 3(c)(ii) and paragraph 12 above, which indemnifications will survive separately from the termination of this Agreement.

14.  **ESCROW AGENT.**

(a) Duties. By joining in the execution of this Agreement, Escrow Agent agrees to comply with the terms hereof insofar as they apply to Escrow Agent. Upon receipt, Escrow Agent will hold the Deposit in trust to be disposed of in accordance with the provisions of this Agreement.

(b) Indemnity. Escrow Agent will not be liable to either party except for claims resulting from the negligence or willful misconduct of Escrow Agent.

(c) Role as Counsel. The parties acknowledge that Escrow Agent also serves as special real estate counsel to Seller. In the event of a dispute between Seller and Buyer concerning this Agreement as to the Property, Escrow Agent may continue to serve both in its capacity as counsel to Seller and in its capacity as Escrow Agent, it being understood that Escrow Agent's duties and obligations as Escrow Agent are purely ministerial in nature.

(d) Withdrawal. No party will have the right to withdraw any monies or documents deposited by it with Escrow Agent prior to the Closing or termination of this Agreement except in accordance with the terms of this Agreement.

(e) Written Objection. If a written objection is filed with Escrow Agent, or Escrow Agent otherwise is in doubt as to its duties, Escrow Agent may continue to hold the funds in escrow until the matter is resolved either by joint written direction from the parties or by the Bankruptcy Court having jurisdiction of the dispute or the Escrow Agent may interplead the same in the Circuit Court

10

and be relieved of any and all liability therefor. In any action or proceeding regarding the Deposit brought by Escrow Agent or to which Escrow Agent is made a party Escrow Agent will be entitled to recover its reasonable costs and attorney's fees (through appeal).

15.   NOTICES. All notices, demands, requests and other communications hereunder will be in writing and will be deemed to have been given (i) on the same business day if delivered personally, (ii) 3 business days following mailing by registered or certified mail, return receipt requested, postage prepaid, or (iii) on the same business day if sent by telefax, to Buyer, Seller or Escrow Agent at its respective address set forth below:

If to Seller:               Winn-Dixie Stores, Inc.
                            5050 Edgewood Court
                            Jacksonville, Florida 32254
                            Attention: Catherine Ibold
                            Telefax No.: 904 783 5138

with a copy to:             Smith, Gambrell & Russell, LLP
                            50 N. Laura Street, Suite 2600
                            Jacksonville, Florida 32202
                            Attention: Douglas G. Stanford
                            Telefax No.: 904 598 6226

If to Buyer:                Poole Realty, Inc.
                            123 E. Howard Street
                            Live Oak, FL
                            Attention: Ronnie Poole
                            Telefax No.: 386 364 4539

If to Escrow Agent:         Smith, Gambrell & Russell, LLP
                            50 N. Laura Street, Suite 2600
                            Jacksonville, Florida 32202
                            Attention: Douglas G. Stanford
                            Telefax No.: 904 598 6226

or at such other address as the party may specify from time to time by written notice to the other party.

16.   MISCELLANEOUS PROVISIONS.

(a)   Successors And Assigns; Assignment Of Agreement. All terms of this Agreement will be binding upon, and will inure to the benefit of and be enforceable by the parties hereto and their respective legal representatives, heirs, successors and assigns. Except as set forth below, this Agreement may not be assigned by either party without the express written consent of the other. Buyer may assign its rights and obligations under this Agreement to an Affiliate as the "Buyer" hereunder, provided, however, that Buyer will remain fully liable for performance of the obligations, including indemnifications, of the "Buyer" hereunder. For purposes of the foregoing, "Affiliate" will mean a Person that (either directly or indirectly, through one or more intermediaries) controls, is in common control with or is controlled by,

11

another Person, and any Person that is a director, trustee, officer, employee, agent, partner, shareholder, subsidiary or attorney of any of the foregoing, and will include, without limitation, any limited liability company, partnership or corporation directly or indirectly controlled by, or in common control with, Buyer or Seller

(b)     Governing Law. This Agreement will be governed and construed in accordance with the laws of the State of Florida. Any dispute arising out of or under this Agreement will be litigated in the Bankruptcy Court.

(c)     Captions. The captions of this Agreement are inserted for convenience or reference only and not to define, describe or limit the scope or the intent of this Agreement or any term hereof.

(d)     Counterparts. This Agreement may be executed in any number of counterparts, each of which will be deemed to be an original but all of which together will constitute one and the same instrument.

(e)     Changes And Modifications; Prior Agreements. This Agreement may not be orally changed, modified or terminated; it supersedes any and all prior understandings and/or letter agreements; other matters of similar nature will be deemed to be of no force or effect in the interpretation of this Agreement, it being intended that this Agreement represents the entire understanding of the parties. No waiver of any provision hereof will be valid unless in writing and signed by a party against whom it is to be enforced.

(f)     Waiver. No failure of either party to exercise any power given hereunder or to insist upon strict compliance with any obligations specified herein, and no custom or practice at variance with the terms hereof, will constitute a waiver of any party's right to demand exact compliance with the terms hereof; provided, however, that any party may, at its sole option, waive any requirement, covenant or condition herein established for the benefit of such party without affecting any of the other provisions of this Agreement.

(g)     Further Assurances. Seller and Buyer each agree to execute and deliver to the other such further documents and instruments as may be reasonable and necessary in furtherance of and to effectuate the intent of the parties as expressed by the terms and conditions hereof.

(h)     Attorneys' Fees. If either party commences an action against the other to enforce any of the terms hereof or because of the breach by either party of any of the covenants, terms or conditions hereof, the losing or defaulting party will pay to the prevailing party reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution and defense of such action.

(i)     Time Of Essence. Time is of the essence of each party's performance of this Agreement.

12

(j)    <u>Business Day</u>.   Whenever a date specified herein will fall on a Saturday, Sunday or legal holiday, the date will be extended to the next succeeding Business Day.  For purposes of the foregoing, "Business Day" will mean any day, other than a Saturday, Sunday or legal holiday.

(k)    <u>WAIVER OF TRIAL BY JURY</u>. BUYER AND SELLER EACH AGREE THAT THE NATURE OF THIS AGREEMENT MAKES A JURY DETERMINATION OF ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR THE PROPERTY UNDESIRABLE. ACCORDINGLY, BUYER AND SELLER EACH SPECIFICALLY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT EITHER OF THEM MAY HAVE IN ANY COURT WITH RESPECT TO ANY ACTION RELATING TO THIS AGREEMENT OR THE PROPERTY. THE FOREGOING WAIVER IS MADE KNOWINGLY, VOLUNTARILY AND INTENTIONALLY BY BOTH BUYER AND SELLER.

(l)    <u>CONSENT TO JURISDICTION OF BANKRUPTCY COURT</u>. THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS, OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Buyer and Seller further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in <u>paragraph 15</u> of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above.  Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

[SIGNATURE PAGE TO FOLLOW]

13

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Agreement as of the Effective Date.

**SELLER:**

Signed, sealed and delivered
In the presence of:

**WINN-DIXIE STORES, INC.,** a Florida
corporation

Name: __REBECCA L. SAWYER__

By: _____
Name: Bennett L. Nussbaum
Title: Senior Vice President

Name: __LAURA L. ANDREWS__

[Corporate Seal]

Reviewed By     LEGAL APPROVED
                ATTY: ___
XRoads          DATE: 3·2·06
Date: ___

**BUYER:**

Signed, sealed and delivered
In the presence of:

Name: Patty Nunley

**RONNIE POOLE**

Name: Shanthea Buzbee

SCHEDULE OF EXHIBITS:

Exhibit A - Legal Description of Property
Exhibit B - Schedule of Permitted Encumbrances

Real Estate Purchase Agreement
Live Oak FL Outparcel
Winn-Dixie Stores, Inc. S/T Ronnie Poole
March 8, 2006

The undersigned, Escrow Agent, hereby consents and joins in the execution of this Real Estate Purchase Agreement for the limited purposes stated herein.

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____

Name: Douglas G. Stanford

Title: Partner

Dated: March 23, 2006

## EXHIBIT A

## LEGAL DESCRIPTION OF PROPERTY

A portion of the North one-half of the Southeast one-quarter of section 27, township 2 South, Range 13 East, Suwannee County, Florida being more particularly described as follows:

For a point of reference, commence at the Northeast corner of said North one-half of the Southeast one-quarter of Section 27; thence South 00° 35' 39" West along the East line of said North one-half of the Southeast one-quarter of Section 27, a distance of 70.00 feet; thence North 89° 54' 00" West departing said line, 25.00 feet to the intersection of the Southerly right of way line of Pinewood Street (a 60 foot right of way as established by Official Records Book 124, page 468 of the Public Records of said County) with the Westerly right of way line of Walker Street; thence North 89° 54' 00" West along said Southerly right of way line, said line lying 70 feet South of and parallel to the North line of said Southeast one-quarter of Section 27, a distance of 975.00 feet to the intersection of the said Southerly right of way line with the Westerly right of way line of Lynn Street (a 60 foot right of way as established by said Official Records Book 124, page 468) and the Point of Beginning:

From said Point of Beginning, thence South 00° 35' 30" West, along said Westerly right of way line, 249.00 feet; thence North 89° 54' 00" West, departing said Westerly right of way line, 173.00 feet; thence North 00° 35' 30" East, 249.00 feet to a point lying on said Southerly right of way line of Pinewood Street; thence South 89° 54' 00" East, along said Southerly right of way line, 173.00 feet to the Point of Beginning.

**EXHIBIT B**

**SCHEDULE OF PERMITTED ENCUMBRANCES**

1. All assessments and taxes for the year 2006 and all subsequent years, which are not yet due and payable.

2. Restrictive and Protective Covenants as recorded in Official Records Book 237 at page 550, as modified by Waiver and Release as recorded in Official Records Book 676 at page 102, of the public records of Suwannee County, Florida.

3. Declaration of Reciprocal Easements and Restrictive Covenants as recorded in Official Records Book 763 at page 347, and in Official Records Book 772 at page 360, of the public records of Suwannee County, Florida.

**AMENDMENT TO**
**REAL ESTATE PURCHASE AGREEMENT**

**THIS AMENDMENT TO REAL ESTATE PURCHASE AGREEMENT** (this "Amendment") is made effective as of September 12, 2006, by and between **WINN-DIXIE STORES, INC.**, a Florida corporation ("Seller") and **RONNIE POOLE**, his successors and or assigns ("Buyer").

**RECITALS:**

A.    Seller and Buyer are parties to that certain Real Estate Purchase Agreement dated effective March 28, 2006 (the "Agreement"), pursuant to which Seller has agreed to sell to Buyer the Property described therein located in Suwannee County, Florida.

B.    The Agreement provided Buyer with a period expiring on May 28, 2006 (the "Investigation Period"), in which to investigate and inspect the Property to determine whether the same is satisfactory to Buyer.

C.    Seller and Buyer have opted to extend the Investigation Period to October 11, 2006, in order to provide Seller and Buyer additional time to negotiate a release of property restrictions from the landlord of the Shopping Center.

D.    Seller and Buyer desire to amend the Agreement and enter into this Amendment for the purpose of evidencing such extension.

**IN CONSIDERATION OF** $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    Amendment of Agreement.  Seller and Buyer hereby amend the first sentence of paragraph 3(c)(i) of the Agreement as follows:

"Buyer will have a period commencing on the Effective Date and expiring at 5:00 p.m. on October 12, 2006, in which to investigate and inspect the Property to determine whether or not the same is satisfactory to Buyer (the "Investigation Period")."

2.    Extension of Outside Date.  Seller and Buyer hereby amend the last sentence of paragraph 6(a)(iv) of the Agreement to state as follows:

"If the Approval Condition is not otherwise satisfied by November 30, 2006 (the "Outside Date") through no fault of Buyer or if the sale of the Property closes with another Successful Bidder, then this Agreement automatically will terminate and Escrow Agent will refund the Deposit to Buyer, and the parties will have no further obligations to the other."

3.    Miscellaneous.  Except as expressly provided in this Amendment, the Agreement shall continue in full force and effect as written; provided, however, that in the event of any inconsistencies between this Amendment and the Agreement, the provisions of this Amendment shall be controlling.  Capitalized terms used in this Amendment without definition have the meanings assigned to such terms in the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.**, a
Florida corporation

Name: (Margaret P. Goddard

By:

Name: REBECCA L. SAWYER

Name: Bennett L. Nussbaum

Title: SENIOR VICE PRESIDENT

[CORPORATE SEAL]

LEGAL APPROVED
ATTY: _C8⁼_
DATE: _9/12/0_

**BUYER:**

Name:_____

**RONNIE POOLE**

Name:_____

Real Estate Purchase Agreement –Amendment
Live Oak Outparcel
Winn-Dixie Stores, Inc. S/T Ronnie Poole
September 12, 2006
SGRJAX\93195.1

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Amendment as of the date first above written.

Witnesses:

**SELLER:**

**WINN-DIXIE STORES, INC.**, a
Florida corporation

Name:_____

By:_____
Name:_____
Title:_____

Name:_____

[CORPORATE SEAL]

**BUYER:**

Name:

Name:

**RONNIE POOLE**

The undersigned, Escrow Agent, hereby acknowledges the foregoing Amendment to Real Estate Purchase Agreement as to the particular provisions affecting Escrow Agent's duties and responsibilities under the Real Estate Purchase Agreement.

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____

Name: Douglas G. Stanford
Title: Partner
Dated: September _12_, 2006