Hearing Date: November 16, 2006, 1:00 p.m.
Objection Deadline: November 9, 2006, 4:00 p.m.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) *Chapter 11* |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

### DEBTORS' MOTION FOR ORDER DIRECTING TRANSFER OF ASSETS HELD IN TRUST BY T. ROWE PRICE TRUST COMPANY

Winn-Dixie Stores, Inc. ("Winn-Dixie") and twenty-three of its subsidiaries and

affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), move the Court for

entry of an order under 11 U.S.C. §§ 105(a), 542, and 543, conditioned on the occurrence of the

effective date of the Debtors' joint plan of reorganization, directing the liquidation and transfer to

Winn-Dixie of assets of the Winn-Dixie Stores, Inc. Supplemental Retirement Plan ("SRP") held in

trust by T. Rowe Price Trust Company ("TRP") under the Trust Agreement between Winn-Dixie

and TRP effective as of July 1, 1994 (the "Trust Agreement") (the "Motion").  In support of the

Motion, the Debtors state as follows:

### Background

1.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary

petitions for reorganization relief under Chapter 11 of Title 11 of the United States Code, 11

---

[1]       In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code").  The Debtors' cases are being jointly administered for procedural purposes only.

2.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On March 1, 2005, pursuant to Section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases.  An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005, was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4.      The Debtors have filed the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (as modified, the "Chapter 11 Plan"), which is currently pending before the Court following a confirmation hearing held on October 13, 2006.  If the Chapter 11 Plan is confirmed by order of the Court, the Chapter 11 Plan will become effective on the date on which the conditions precedent to its effectiveness are satisfied or waived (the "Effective Date").

5.      This Court has jurisdiction over the Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief requested by this Motion are Sections 105(a), 542, and 543 of the Bankruptcy Code.

**Relief Requested**

7.      By this Motion, the Debtors seek an order of the Court (a "Transfer Order") pursuant to Sections 105(a), 542, and 543 of the Bankruptcy Code, conditioned on the occurrence of the Effective Date, directing the transfer to Winn-Dixie of SRP assets held in trust by TRP under the Trust Agreement, within five (5) business days following the later of (a) the receipt by TRP of notice from the Debtors of the occurrence of the Effective Date and (b) the receipt by TRP of a copy of the Transfer Order.

**Support for Relief Requested**

8.      Prior to the Petition Date, the Debtors' maintained the SRP to provide supplemental retirement benefits to participating employees.  The SRP was intended to constitute an unfunded, unsecured, deferred compensation plan, with benefits to be paid from the Debtors' general assets.

9.      To support their obligations under the SRP, the Debtors elected to enter into the Trust Agreement with TRP.  A copy of the Trust Agreement is attached as Exhibit A to this Motion.  Although the Trust Agreement establishes a trust fund to hold SRP plan assets (the "Trust Assets"), both the Trust Agreement and the SRP indicate that the Debtors remain the owner of all Trust Assets and that Trust Assets are subject to the claims of creditors in the event of the Debtors' bankruptcy.  Therefore, the Trust Assets remain property of the Debtors' estates.  As of October 18, 2006, the Trust Assets had an approximate value of $16.2 million.

10.     Under the Chapter 11 Plan, the SRP and related trust and individual agreements, including the Trust Agreement, will be terminated for all purposes as of the Effective Date, and all claims of participants under the SRP will be discharged.  The Debtors wish to have the Trust Assets available as a source of funds as soon as possible following the Effective Date.

However, Section 9.2 of the Trust Agreement provides, in relevant part, that, "[w]hen … [TRP] determines that [Winn-Dixie] has filed for bankruptcy, … TRP … shall hold for the benefit of [Winn-Dixie's] creditors all [Trust Assets] and shall deliver [the Trust Assets] to satisfy the claims of [Winn-Dixie's] creditors as directed by a court of competent jurisdiction." The Debtors seek entry of a Transfer Order as a means of satisfying the requirement contained in Section 9.2 that TRP be directed "by a court of competent jurisdiction" regarding the delivery of Trust Assets.

        11.     The Debtors further submit that entry of a Transfer Order is appropriate.  The Trust Assets are property of the Debtors' estates.  To the extent that TRP is not deemed a "custodian" (as defined in the Bankruptcy Code), Section 542 of the Bankruptcy Code supports the relief requested, providing, in relevant part, that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under [S]ection 363 of this title, or that the debtor may exempt under [S]ection 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property …." 11 U.S.C. § 542(a).  To the extent that TRP is deemed a custodian, the relief requested is supported by Section 543 of the Bankruptcy Code, which provides, in relevant part that, "a custodian shall … deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control …." 11 U.S.C. § 543(b).  Section 105(a) of the Bankruptcy Code, for its part, provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  In light of the foregoing, turnover of the Trust Assets, on the terms described in this Motion, is supported by Sections 105(a), 542, and/or 543 of the Bankruptcy Code.

**Notice**

12.    Notice of the Motion has been provided to (a) counsel to the Office of the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) TRP.  No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (i) enter a Transfer Order substantially in the form attached as Exhibit B, subject to the occurrence of the Effective Date, directing the transfer to Winn-Dixie of assets held in trust by TRP by virtue of the Trust Agreement, within five (5) business days following the later of (a) the receipt by TRP of notice from the Debtors of the occurrence of the Effective Date and (b) the receipt by TRP of a copy of the Transfer Order and (ii) grant such other and further relief as the Court deems just and proper.

Dated:  October 27, 2006.

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By    _s/ D. J. Baker_
        D. J. Baker
        Sally McDonald Henry
        Rosalie Walker Gray
        David M. Turetsky
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for the Debtors

SMITH HULSEY & BUSEY

By    _s/ Cynthia C. Jackson_
        Stephen D. Busey
        James H. Post
        Cynthia C. Jackson,
        Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for the Debtors

**Exhibit A**

WINN-DIXIE STORES, INC. SUPPLEMENTAL RETIREMENT PLAN

TRUST AGREEMENT

THIS TRUST AGREEMENT is effective as of the _01_ day of _July_, 199*4*, by and between WINN-DIXIE STORES, INC., a Florida corporation (the "Employer"), and T. ROWE PRICE TRUST COMPANY, a Maryland corporation (the "Trustee").

W I T N E S S E T H   T H A T :

WHEREAS, the Employer has established the Winn-Dixie Stores, Inc. Supplemental Retirement Plan (the "Plan") to provide deferred compensation benefits for a select group of its management or highly compensated employees;

WHEREAS, the Trustee agrees to the terms and conditions of this Trust Agreement;

NOW THEREFORE, in consideration of the mutual covenants herein contained, Employer and the Trustee declare and agree as follows:

SECTION 1.  Establishment and Title of the Trust.

1.1      Employer hereby establishes with the Trustee a trust to be known as the "Winn-Dixie Stores, Inc. Supplemental Retirement Plan Trust" (the "Trust"), to accept such sums of money and other property acceptable to the Trustee as from time to time shall be paid or delivered to the Trustee.  All such money and other property, all investments and reinvestments made therewith or proceeds thereof and all earnings and profits thereon, less all payments and charges as authorized herein, are hereinafter referred to as the "Trust Fund".  The Trust Fund shall be held by the Trustee IN TRUST and shall be dealt with in accordance with the provisions of this Trust Agreement.  The Trust Fund shall be held for the exclusive purpose of providing payments to participants and beneficiaries of the Plan (collectively referred to as the "Trust Beneficiaries") in accordance with the provisions of the Plan, and defraying reasonable expenses of administration in accordance with the provisions of this Trust Agreement until all such payments required by this Trust Agreement have been made; provided, however, that (i) distributions to the Employer out of the Trust Fund may be made in accordance with the provisions of Sections 8.3 and 8.4 of this Trust Agreement, and (ii) the Trust Fund shall at all times be subject to the claims of the general creditors of Employer as set forth in Section 8 of this Trust Agreement.

1.2      It is contemplated that other corporations, associations, partnerships or proprietorships that have adopted the Plan may adopt this Trust Agreement and thereby become an adopting employer hereunder.  Any such entity, whether or not presently existing, may become a party hereto by appropriate action of its officers without the need for approval of its board of directors of noncorporation counterpart or of the Employer.  Contrary provisions of this Trust Agreement notwithstanding, the provisions of the Trust Agreement shall apply separately and equally to each such adopting employer and its Trust Beneficiaries in the same manner as is expressly provided for the Employer and its Trust Beneficiaries, except that the power to appoint or otherwise affect or direct the Trustee and the power to amend this Trust Agreement shall be exercised by the Employer alone.  The Employer and each such adopting employer shall bear the cost of providing benefits under the Plan for its own Trust Beneficiaries, and the portion of the Trust Fund attributable to the contributions of the Employer and each such adopting employer shall be available to provide benefits only to such entity's Trust Beneficiaries.

SECTION 2.    Acceptance by the Trustee.

The Trustee accepts the Trust established under this Trust Agreement on the terms and subject to the provisions set forth herein, and it agrees to discharge and perform fully and faithfully all of the duties and obligations imposed upon it under this Trust Agreement.

SECTION 3.    Limitation on Use of Funds.

No part of the corpus of the Trust Fund shall be recoverable by Employer or used for any purpose other than for the exclusive purpose of providing payments to Trust Beneficiaries in accordance with the provisions of the Plan and defraying reasonable expenses of administration in accordance with the provisions of this Trust Agreement until all such payments required by this Trust Agreement have been made; provided, however, that (i) nothing in this Section 3.1 shall be deemed to limit or otherwise prevent the payment from the Trust Fund of expenses and other charges as provided in Sections 5.1(h), 10.1 and 10.2 of this Trust Agreement or the application of the Trust Fund as provided in Sections 6.3 or 14.1 of this Trust Agreement, (ii) distributions to the Employer out of the Trust Fund may be made in accordance with the provisions of Sections 8.3 and 8.4 of this Trust Agreement, and (iii) the Trust Fund shall at all times be subject to the claims of the general creditors of Employer as set forth in Section 8 of this Trust Agreement. Notwithstanding the above, the Trust is revocable until thirty (30) days after receipt of an Internal Revenue Service ("IRS") private letter ruling on its status as a grantor trust.

SECTION 4.    Duties and Powers of the Trustee with Respect to Investments.

4.1    The Trustee shall invest and reinvest the principal and income of the Trust Fund and keep the Trust Fund invested, without distinction between principal and income, in such equity or fixed income investment funds as directed by the Employer or its designee, as the same may be modified from time to time by the Board of Directors of Employer, or a duly authorized representatives thereof (the "Committee"). The Trustee shall have no duty to question any action or direction of the Committee or any failure to give directions, or to make any suggestion to the Committee as to the investment or reinvestment of, or the disposition of, such assets.

4.2    Notwithstanding any provisions of this Trust Agreement to the contrary, the Trustee shall not directly invest any portion of the Trust Fund in any obligation or other security issued by Employer.

SECTION 5.    Additional Powers and Duties of the Trustee.

5.1    Subject to the provisions of Section 4 and Exhibit B hereto, the Trustee shall have the following additional powers and authority with respect to property constituting a part of the Trust Fund:

(a)    To sell, exchange or transfer any such property at public or private sale for cash or on credit and grant options for the purchase or exchange thereof, including call options for property held in the Trust Fund and put options for the purchase of property.

(b)    To participate in any plan or reorganization, consolidation, merger, combination, liquidation or other similar plan relating to any such property, and to consent to or oppose any such plan or any action thereunder, or any contract, lease, mortgage, purchase, sale or other action by any corporation or other entity.

- 2 -

(c)    To deposit any such property with any protective, reorganization or similar committee; to delegate discretionary power to any such committee; and to pay part of the expenses and compensation of any such committee and any assessments levied with respect to any property so deposited.

(d)    To exercise any conversion privilege or subscription right available in connection with any such property; to oppose or to consent to the reorganization, consolidation, merger or readjustment of the finances of any corporation, company or association, or to the sale, mortgage, pledge or lease of the property of any corporation, company or association any of the securities of which may at any time be held in the Trust Fund and to do any act with reference thereto, including the exercise of options, the making of agreements or subscriptions and the payment of expenses, assessments or subscriptions, which may be deemed necessary or advisable in connection therewith, and to hold and retain any securities or other property which it may so acquire.

(e)    To commence or defend suits or legal proceedings and to represent the Trust in all suits or legal proceedings; to settle, comprise or submit to arbitration, any claims, debts or damages, due or owing to or from the Trust.

(f)    To exercise, personally or by general or limited power of attorney, any right, including the right to vote, appurtenant to any securities or other such property.

(g)    To borrow money from any lender in such amounts and upon such terms and conditions as shall be deemed advisable or proper to carry out the purposes of the Trust and to pledge any securities or other property for the repayment of any such loan.

(h)    To engage any legal counsel, including counsel to the Employer or counsel to the Trustee, or any other suitable agents, to consult with such counsel, or agents with respect to the construction of this Trust Agreement, the duties of the Trustee hereunder, the transactions contemplated by this Trust Agreement or any act which the Trustee proposes to take or omit, to rely upon the advice of such counsel, or agents and to pay its reasonable fees, expenses and compensation out of the Trust Fund, if not paid by the Employer.

(i)    To register any securities held by it in its own name or in the name of any custodian of such property or of its nominee, including the nominee of any system for the central handling of securities, with or without the addition of words indicating that such securities are held in a fiduciary capacity, to deposit or arrange for the deposit of any such securities with such a system and to hold any securities in bearer form.

(j)    To make, execute and deliver, as Trustee, any and all deeds, leases, notes, bonds, guarantees, mortgages, conveyances, contracts, waivers, releases or other instruments in writing necessary or proper for the accomplishment of any of the foregoing powers.

(k)    To transfer assets of the Trust Fund to a successor trustee as provided in Section 12.4.

(l)    To exercise, generally, any of the powers which an individual owner might exercise in connection with property either real, personal or mixed held by the Trust Fund, and to do all

- 3 -

other acts that the Trustee may deem necessary or proper to carry out any of the powers set forth in this Section 5 or otherwise in the best interests of the Trust Fund.

5.2     The Trustee shall establish and maintain a separate bookkeeping account in the Trust Fund for each Trust Beneficiary of the Plan. Each Trust Beneficiary's account shall be divided into subaccounts to reflect such Trust Beneficiary's deemed investment designation in the a particular investment fund or funds pursuant to the Plan. The Trustee shall allocate contributions to the Trust to such accounts and subaccounts when made, as directed by the Committee at the time of contribution. Subject to Section 8, and the terms of any investment fund in which the Trustee has invested all or any part of the Trust Fund, as of each Valuation Date (as such term is defined in the Plan) all items of gain, loss, income and expense attributable to each such investment fund, separately and respectively, shall be allocated among the corresponding subaccounts of the Trust Beneficiaries who had such corresponding subaccounts invested in such investment fund since the next preceding Valuation Date.

SECTION 6.  Payments by the Trustee.

6.1     The establishment of the Trust and the payment or delivery to the Trustee of money or other property acceptable to the Trustee shall not vest in any Trust Beneficiary any right, title or interest in and to any assets of the Trust.

6.2     The Trustee shall make payments out of the Trust Fund to Trust Beneficiaries in such manner and in such amounts as are required under the Plan. If a Trust Beneficiary does not receive a payment that he or she believes he or she has become entitled to under the Plan, he or she shall notify the Trustee, in writing, of such entitlement. The Trustee shall within ten (10) days after its receipt of such notice forward a copy of such notice to the Employer. If the Employer fails to notify the Trustee within ten (10) days after its receipt of such notice that it denies the claim of the Trust Beneficiary to payment by the Trustee, the Trustee shall make payment to the Trust Beneficiary under the terms of the Plan as soon as practicable, and, in any event, within thirty (30) days after the expiration of said ten (10) day notice period. The Trustee shall provide the Employer with written confirmation of the fact and amount of such payment after it is made. If the Employer shall notify the Trustee within said ten (10) day notice period that it denies the claim of the Trust Beneficiary to payment by the Trustee, then, within thirty (30) days after receipt by the Trustee of such notice from the Employer, the Trustee shall so notify the Trust Beneficiary. The Trustee shall follow the instructions of the Employer and shall be indemnified therefore by the Employer.

6.3     Notwithstanding any other provision of this Trust Agreement to the contrary, if at any time the Trust is finally determined by the IRS not to be a "grantor trust," with the result that the income of the Trust Fund is not treated as income of the Employer pursuant to sections 671 through 679 of the Code, or if a Federal tax is finally determined by the IRS or is determined by counsel to the Trustee to be payable by the Trust Beneficiaries with respect to the entire value of the accounts maintained under the Trust Fund prior to the final distribution of the assets of such accounts to such Trust Beneficiaries, then the Trust shall immediately terminate and the assets allocated to such accounts shall be liquidated and paid in a lump cash sum as soon as practicable by the Trustee to each such Trust Beneficiary, regardless of whether such Trust Beneficiary's employment with Employer has terminated and regardless of the form and time of payment specified by a Trust Beneficiary, if any, under the relevant provisions of the Plan. All remaining assets (less any expenses or costs due under Section 10 of this Trust Agreement) shall then be paid by the Trustee to Employer. If a Federal tax is finally determined by the IRS or by counsel to the Trustee to be payable by one or more of the Trust Beneficiaries with respect to

- 4 -

less than the entire value of the accounts maintained under the Trust Fund for all Trust Beneficiaries, prior to the payment of the assets of the portion of such accounts which are subject to Federal tax, then that part of the assets of such accounts which is subject to the Federal tax shall be liquidated and paid in a lump cash sum as soon as practicable by the Trustee to the Trust Beneficiary upon whom such tax is imposed, and the Trust shall continue in effect.  If the Trust Beneficiary's account is not sufficient to make one or more payments of benefits due under the Plan to such Trust Beneficiary in accordance with the terms of the Plan, the Employer shall make the balance of each such payment as it falls due.  Any amounts distributed pursuant to this Section 6.3 shall be deemed "Supplemental Benefits" and shall accordingly reduce the Employer's liability for such benefits.

6.4     Employer shall remain primarily liable to pay benefits under the Plan.  However, the Employer's liability under the Plan shall be reduced or offset to the extent Supplemental Benefit payments are made from the Trust Fund.

6.5     The Trustee shall deduct from each payment under this Trust Agreement any Federal, state or local withholding or other taxes or charges which the Trustee may be required to deduct under applicable law; provided, however, that the Trustee shall be fully protected in relying upon information provided by Employer as to state or local tax withholding requirements.

SECTION 7.   Limitations on the Payment of Benefits.

The Trustee shall make payments to Trust Beneficiaries in such amounts and at such times as the Employer may direct the Trustee, subject to the following:

(a)     The Trustee shall have no responsibility to inquire as to whether a payee is entitled to a Supplemental Benefit, or as to whether any such payment is proper, and shall have no liability for a payment made in good faith without actual notice or knowledge of the changed condition or status of the Trust Beneficiary.

(b)     If any check for a Supplemental Benefit directed to be made from the Trust has been mailed by the Trustee, by regular United States mail, to the last known address of the Trust Beneficiary and is returned unclaimed, the Trustee shall notify the Employer.

(c)     The Trustee may reserve such reasonable amount from any payments as it shall deem necessary to pay any income or other tax, or charge or assessment attributable to any payment or may require a release or other document from any taxing authority and such indemnify from the intended Trust Beneficiary as the Trustee shall deem necessary for its protection.

SECTION 8.   Funding of the Trust.

8.1     Funding of the Trust Fund by the Employer is not mandatory.

8.2     In accordance with the relevant provisions of the Plan, the Employer may at any time or from time to time make additional contributions to the Trust Fund to augment the principal to be held, administered and disposed of by the Trustee as provided in this Trust Agreement.

- 5 -

8.3    At any time and from time to time, the Employer may direct the Trustee in writing to distribute to the Employer cash held by the Trustee as part of the Trust Fund in an amount equal to the deferred compensation benefits accrued under the Plan that have been forfeited under the terms of the Plan. The Trustee shall have no responsibility to verify the Employer's computation of the forfeited amount, even if the Trustee is informed from another source that the Employer's computation is incorrect. As soon as practicable after receipt of such a direction, the Trustee shall distribute such amount to the Employer.

8.4    At any time and from time to time, the Employer may direct the Trustee in writing to distribute to the Employer assets held by the Trustee as part of the Trust Fund ("Trust Assets") in an amount (the "Refund Amount") equal to or less than the difference, if any, between (i) the Net Fair Market Value of the Trust Assets (as such term is hereinafter defined) as of the last day of the month coincident with or immediately preceding the date of such direction, and (ii) the aggregate account balances maintained on the books and records of the Employer for all Trust Beneficiaries under the Plan as of such date. The Trustee shall have no responsibility to verify the Employer's computation of the Refund Amount, even if the Trustee is informed from another source that the Employer is not entitled to the Refund Amount. As soon as practicable after the Trustee's receipt of the Employer's request for a distribution of all or any portion of the Refund Amount, the Trustee shall distribute such amount to the Employer in cash or in kind as directed by the Employer. As used herein, the term "Net Fair Market Value of the Trust Assets" shall mean the fair market value of the Trust Assets, as determined by the Employer, reduced by all liabilities of the Trust, whether or not such liabilities are secured by any or all of the Trust Assets, other than liabilities to Trust Beneficiaries under the Plan.

SECTION 9.    Trustee Responsibility Regarding Payments to Trust Beneficiaries When the Employer is Insolvent.

9.1    The Employer shall have the duty to inform the Trustee in writing if the Employer becomes Insolvent, as hereinafter defined. When so informed, the Trustee shall immediately discontinue payments of Supplemental Benefits to Trust Beneficiaries, and shall hold assets of the Trust Fund for the benefit of Employer's general creditors. The Employer shall be considered "Insolvent" for purposes of this Trust Agreement in the event of (i) written notification from the Employer's Chairman of the Board of Directors ("Chairman") and the Chief Executive Officer, such that the Employer is unable to pay its debts as they become due; or (ii) the Employer is subject to a pending proceeding as a debtor under the United States Bankruptcy Code (or any successor federal statute). The Trustee shall have no duty to determine whether the Employer is Insolvent and shall only follow the directions of the Chairman and Chief Executive Officer. The Chairman and Chief Executive Officer shall notify the Trustee of the Insolvency of the Employer within three days of receipt of knowledge of such Insolvency. Prior to receipt of written notice that the Employer is Insolvent, in conformity with Section 18.2, the Trustee shall have no duty to inquire whether the Employer is Insolvent. Nothing in this Trust Agreement shall in any way enlarge or diminish the rights of the Trust Beneficiaries in the event the Employer is Insolvent to pursue their rights as general creditors of the Employer with respect to their benefits or otherwise. All assets of the Trust shall be subject to the claims of the general creditors of the Employer but only under circumstances in subsection (i) or (ii) above.

9.2    When the Trustee determines that the Employer has filed for bankruptcy, is placed in bankruptcy by the Employer's creditors or the Trustee has received notice of insolvency from the Board of Directors or the Chief Executive Officer, the Trustee shall discontinue payments of Supplemental Benefits under the Plan and shall hold for the benefit of the Employer's creditors all cash and other assets

- 6 -

in the Trust Fund and shall deliver the assets of the Trust Fund to satisfy the claims of the Employer's creditors as directed by a court of competent jurisdiction.

9.3     If the Trustee discontinues payments of Supplemental Benefits from the Trust pursuant to Section 8.1 of this Trust Agreement and subsequently resumes such payments, the first payment to each Trust Beneficiary following such discontinuance shall include the aggregate amount of all payments which would have been made to such Trust Beneficiary in accordance with the relevant provisions of the Plan during the period of such discontinuance, less the aggregate amount of payments of Supplemental Benefits made to such Trust Beneficiary by Employer during any such period of discontinuance.

SECTION 10. Third Parties.

A third party dealing with the Trustee shall not be required to make inquiry as to the authority of the Trustee to take any action nor be under any obligation to see to the proper applicable by the Trustee of the proceeds of sale of any property sold by the Trustee or to inquire into the validity or propriety of any act of the Trustee.

SECTION 11. Taxes, Expenses and Compensation.

11.1     The Employer shall from time to time pay taxes of any and all kinds whatsoever which at any time are lawfully levied or assessed upon or become payable in respect of the Trust Fund, the income or any property forming a part thereof, or any security transaction pertaining thereto. To the extent that any taxes levied or assessed upon the Trust Fund are not paid by the Employer, the Trustee shall pay such taxes out of the Trust Fund. The Trustee shall if requested by the Employer, or may, in its discretion, contest the validity of taxes in any manner deemed appropriate by the Employer or its counsel, but at the Employer's expense, and only if it has received an indemnity bond or other security satisfactory to it to pay any such expenses. In the alternative, the Employer may itself contest the validity of any such taxes. The Trustee will withhold federal, state and local taxes (including FICA taxes) from any payments made to a Trust Beneficiary in accordance with the provisions of applicable law.

11.2     The Employer shall pay the Trustee such reasonable compensation for its services as may be agreed upon in writing from time to time by Employer and the Trustee. Employer shall also pay the reasonable expenses incurred by the Trustee in the performance of its duties under this Trust Agreement, including but no limited to brokerage commissions and fees of counsel engaged by the Trustee pursuant to Section 10.1 of this Trust Agreement. Such compensation and expenses shall be charged against and paid from the Trust Fund, in accordance with Section 5.2 of this Trust Agreement, to the extent the Employer does not pay such compensation.

SECTION 12. Administration and Records.

12.1     The Trustee shall keep or cause to be kept accurate and detailed accounts of any investments, receipts, disbursements and other transactions hereunder and all necessary and appropriate records required to identify correctly and reflect accurately the respective interests of each Trust Beneficiary, and all accounts, books and records relating thereto shall be open to inspection and audit at all reasonable times by any person designated by the Committee. All such accounts, books and records shall be preserved (in original form, or on microfilm, magnetic tape or any other similar process) for such period as the Trustee may determine, but the Trustee may only destroy such accounts, books and

- 7 -

records after first notifying the Committee in writing of its intention to do so and transferring to Employer any of such accounts, books and records requested.

12.2   Within ninety (90) days after the close of each calendar year, and within ninety (90) days after the removal or resignation of the Trustee or the termination of the Trust, the Trustee shall file with the Committee a written account setting forth all investments, receipts, disbursements and other transactions effected by it during the preceding calendar year, or during the period from the close of the preceding calendar year to the date of such removal, resignation or termination, including a description of all investments and securities purchased and sold with the cost or net proceeds of such purchases or sales and showing all cash, securities and other property held at the end of such calendar year or other period. Upon the expiration of ninety (90) days from the date of filing such annual or other account, the Trustee shall to the maximum extent permitted by applicable law be forever released and discharged from all liability and accountability with respect to the propriety of its acts and transactions shown in such account except with respect to any such acts or transactions as to which the Committee shall within such 90 day period file with the Trustee written objections.

12.3   The Trustee shall from time to time permit an independent public accountant selected by the Committee to have access during ordinary business hours to such records as may be necessary to audit the Trustee's accounts.

12.4   As of the last day of each calendar month, the fair market value of the assets held in the Trust Fund shall be determined. Within ten (10) business days after the close of each calendar month, the Trustee shall file with the Committee the written report of the determination of such fair market value of the assets held in the Trust Fund.

12.5   Nothing contained in this Trust Agreement shall be construed as depriving the Trustee or Employer of the right to have a judicial settlement of the Trustee's accounts, and upon any proceeding for a judicial settlement of the Trustee's accounts or for instructions, the only necessary parties thereto in addition to the Trustee shall be Employer and the Trust Beneficiaries.

12.6   In the event of the removal or resignation of the Trustee, the Trustee shall deliver to the successor trustee all records which shall be required by the successor trustee to enable it to carry out the provisions of this Trust Agreement.

12.7   In addition to any returns required of the Trustee by law, the Trustee shall prepare and file such tax reports and other returns as the Committee and the Trustee may from time to time agree.

SECTION 13. <u>Removal or Resignation of the Trustee and Designation of Successor Trustee.</u>

13.1   At any time the Committee may remove the Trustee with or without cause, upon at least sixty (60) days notice in writing to the Trustee.

13.2   The Trustee may resign at any time upon at least 60 days notice in writing to the Committee.

13.3   In the event of such removal or resignation, the Trustee shall duly file with the Committee a written account as provided in Section 11.2 of this Trust Agreement for the period since the last previous annual accounting, listing the investments of the Trust and any uninvested cash balance thereof,

- 8 -

and setting forth all receipts, disbursements, distributions and other transactions respecting the Trust not included in any previous account, and if written objections to such account are not filed as provided in Section 11.2, the Trustee shall to the maximum extent permitted by applicable law be forever released and discharged from all liability and accountability with respect to the propriety of its acts and transactions shown in such account.

13.4    Within sixty (60) days after any such notice of removal or resignation of the Trustee, the Committee shall designate a successor trustee qualified to act hereunder.  In the event that the Committee fails to designate a successor trustee within sixty (60) days after the Trustee's resignation or removal, the Trustee shall select a successor trustee pursuant to this Section 12.4.  Each such successor trustee, during such period as it shall act as such, shall have the powers and duties herein conferred upon the Trustee, and the word "Trustee" wherever used herein, except where the context otherwise requires, shall be deemed to include any successor trustee.  Upon designation of a successor trustee and delivery to the resigned or removed Trustee of written acceptance by the successor trustee of such designation, such resigned or removed Trustee shall promptly assign, transfer, deliver and pay over to such Trustee, in conformity with the requirements of applicable law, the funds and properties in its control or possession then constituting the Trust Funds.

## SECTION 14. Enforcement of Trust Agreement and Legal Proceedings.

The Employer or the Committee shall have the right to enforce any provision of this Trust Agreement, and any Trust Beneficiary shall have the right as a beneficiary of the Trust to enforce any provision of this Trust Agreement that affects the right, title and interest of such Trust Beneficiary in the Trust.  In any action or proceedings affecting the Trust, the only necessary parties shall be the Employer, the Trustee and the Trust Beneficiaries and, except as otherwise required by applicable law, no other person shall be entitled to any notice or service of process.  Any judgment entered in such an action or proceedings shall to the maximum extent permitted by applicable law be binding and conclusive on all persons having or claiming to have any interest in the Trust.

## SECTION 15. Termination and Suspension.

The Trust shall terminate when all payments which have or may become payable pursuant to the terms of the Trust have been made or the Trust Fund has been exhausted, and all remaining assets shall then be paid by the Trustee to Employer.

## SECTION 16. Amendments.

16.1    The Employer may from time to time amend or modify, in whole or in part, any or all of the provisions of this Trust Agreement with the written consent of the Trustee, but without the consent of any Trust Beneficiary, provided that no such amendment shall be permitted if it would cause the Trust to cease to constitute a grantor trust as described in Section 6.3 of this Trust Agreement; and provided further, that no amendment may be made if it would retroactively reduce or adversely affect the amount, or timing for payment, of the Supplemental Benefits of any Trust Beneficiary, without the consent of such Trust Beneficiary.  No amendment may have the affect of remaking the Trust.

16.2    The Employer and the Trustee shall execute such supplements to, or amendments of, this Trust Agreement as shall be necessary to give effect to any such amendment or modification.

- 9 -

16.3    The Committee shall furnish the Trustee with a copy of all amendments to the Plan prior to their adoption.

## SECTION 17. Nonalienation.

Except insofar as applicable law may otherwise require and subject to Sections 1.1, 3.1 and 8 of this Trust Agreement, (i) no amount payable to or in respect of any Trust Beneficiary at any time under the Trust shall be subject to any manner to alienation by anticipation, sale, transfer, assignment, bankruptcy, pledge, attachment, charge or encumbrance of any kind, and any attempt to so alienate, sell, transfer, assign, pledge, attach, charge or otherwise encumber any such amount, whether presently or thereafter payable, shall be void; and (ii) the Trust Fund shall in no manner be liable for or subject to the debts or liabilities of any Trust Beneficiary.

## SECTION 18. Communications.

18.1    Communications to the Employer or the Committee shall be addressed to the Employer at 5050 Edgewood Court, Jacksonville, Florida 32203, Attention: Legal Department; provided, however, that upon the Employer's written request, such communications shall be sent to such other address as the Employer or the Committee may specify.

18.2    Communications to the Trustee shall be addressed to T. Rowe Price Trust Company at 100 East Pratt Street, Baltimore, Maryland 21202; Attention Legal Department; provided, however, that upon the Trustee's written request, such communications shall be sent to such other address as the Trustee may specify.

18.3    No communication shall be binding on the Trustee until it is received by the Trustee, and no communication shall be binding on the Employer or the Committee until it is received by the Employer.

18.4    Any action of the Employer or the Committee pursuant to this Trust Agreement, including all orders, requests, directions, instructions, approvals and objections of the Employer or the Committee to the Trustee, shall be in writing, signed on behalf of the Employer by any duly authorized officer of the Employer; of if applicable, on behalf of the Committee, by any member of the Committee or duly authorized representative thereof. Any communication by a Trust Beneficiary with the Trustee must be in writing in order to have effect. The Trustee may rely on, and will be fully protected with respect to any such action taken or omitted in reliance on any information, order, request, direction, instruction, approval, objection, or list delivered to the Trustee by the Employer or, to the extent applicable under this Trust Agreement, by the Committee or a Trust Beneficiary.

## SECTION 19. Indemnification.

The Employer shall indemnify and save the Trustee (including its affiliates, representatives, agents and employees) harmless from and against any liability, cost or other expense, including, but not limited to, the payment of attorneys' fees that the Trustee may incur in connection with this Trust Agreement or the Plan unless such liability, cost or other expense (whether direct or indirect) arises from the Trustee's failure to act in a manner consistent with a prudent professional. The Employer recognizes that a burden of litigation may be imposed upon the Trustee as a result of some act or transaction for which it has no responsibility or over which it has no control under this Trust Agreement. Therefore, the Employer

- 10 -

agrees to indemnify and hold harmless and, if requested, defend the Trustee (including its affiliates, representatives and agents) from any expenses (including counsel fees, liabilities, claims, damages, actions, suits or other charges) incurred by the Trustee in prosecuting or defending against any such litigation. Trustee agrees that the Employer may select and employ the Employer's counsel and Trustee will fully cooperate in any defense. If the Employer fails to select counsel in a timely fashion, the Trustee may employ counsel of its choice at the Employer's expense with indemnification for any fees or expenses of such counsel from the Employer. The Trustee shall not, except at its own expense, settle any such litigation without the approval of the Employer.

Except as provided herein, the Trustee shall reimburse, indemnify and hold harmless Employer from any liability, loss, damage or expense (including reasonable attorneys' fees and costs) arising as a result of a claim or any kind which arises from a breach of any duties, obligations or responsibilities of the Trustee, or its agents, under this Agreement unless such liability, cost or other expense (whether direct or indirect) arises from the Employer's own gross negligence or a breach of any of Employer's duties, responsibilities or obligations under this Agreement; provided, however, that in the event of such a claim, Employer shall corporate with the Trustee and shall not, except at its own expense, voluntarily make any payment, assume any liability or incur any expense. Notwithstanding the foregoing, the Trustee shall not reimburse, indemnify or hold harmless Employer from any such liability, loss, damage or expense arising from any occurrence commonly known as force majeure, including but not limited to fire, flood, acts of God, war, riot, acts of any regulated telephone network, strikes or other acts of workmen (whether of the Trustee or others), accidents, acts of terrorism, revolution or any other events or circumstances beyond the reasonable control of the Trustee which prevent the Trustee from performing its duties under this Agreement.

SECTION 20. Miscellaneous Provisions.

20.1 Successors and Assigns. This Trust Agreement shall be binding upon and inure to the benefit of the Employer and the Trustee and their respective successors and assigns.

20.2 No Assumption of Duties. The Trustee assumes no obligation or responsibility with respect to any action required by this Trust Agreement on the part of the Employer.

20.3 Headings. Titles to the Sections as well as all headings and subheadings of this Trust Agreement are included for convenience only and shall not control the meaning or interpretation of any provision of this Trust Agreement.

20.4 Conflict with Plan. In the event of any conflict between the provisions of the Plan document and this Trust Agreement, the provisions of this Trust Agreement shall prevail.

20.5 Construction. Whenever used in this Trust Agreement unless the context indicates otherwise the singular shall include the plural, the plural shall include the singular, and the male gender shall include the female gender.

20.6 Severability. If any provision of this Trust Agreement is held invalid of unenforceable, such invalidity or unenforceability shall not affect any other provision, and this Agreement shall be construed and enforced as if such provision had not been included.

- 11 -

20.7   Law to Govern.   This Trust Agreement and the Trust established hereunder shall be governed by and construed, enforced, and administered in accordance with the laws of the State of Maryland and the Trustee shall be liable to account only in the courts of the State of Maryland.

20.8   Counterparts.   This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be the original although the others are not produced.

20.9   Amendments.   The Employer and the Trustee may amend this Agreement at any time by a written agreement between them.

20.10   Trustee as Successor Trustee.   If the Trustee is acting as a successor trustee with respect to the Trust, the Employer shall indemnify the Trustee against all liabilities with respect to the Trust arising prior to the appointment of the Trustee and its acceptance thereof.

20.11   Plan Amendments.   Nothing in this Trust Agreement shall cause the Plan to become irrevocable, and the Employer retains the sole discretion to modify, amend or terminate the Plan at anytime.

20.12   ERISA.   It is not the intention to this Trust to cause the Plan to be treated as a funded plan for purposes of the Employee Retirement Income Security Act of 1974 ("ERISA"). This Trust is not intended to be subject to Part 4 of Title I of ERISA.

20.13   Effective Date.   This Agreement shall be effective as of the date of transfer to T. Rowe Price Trust Company of the assets which are to be held in trust pursuant to this Agreement but in any event no earlier than _July 1_ , 19_99_.

IN WITNESS WHEREOF, this Trust Agreement has been duly executed by the parties hereto as of the day and year first above written.

WINN-DIXIE STORES, INC.

By: _____

Attest:

_____

T. ROWE PRICE TRUST COMPANY

By: _____

Attest:

_____

- 12 -

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER DIRECTING TRANSFER OF ASSETS HELD IN TRUST BY**
**T. ROWE PRICE TRUST COMPANY**

These cases came before the Court for hearing on November 16, 2006, upon the motion of Winn-Dixie Stores, Inc. ("Winn-Dixie") and its subsidiaries and affiliates in the above-captioned jointly-administered cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order under 11 U.S.C. §§ 105(a), 542, and 543, conditioned on the occurrence of the effective date of the Debtors' joint plan of reorganization (the "Effective Date"), directing the transfer to Winn-Dixie of Winn-Dixie Stores, Inc. Supplemental Retirement Plan assets (the "Trust Assets") held in trust by T. Rowe Price Trust Company ("TRP") under the Trust Agreement between Winn-Dixie and TRP effective as of July 1, 1994 (the "Trust Agreement"), within five (5) business days following the later of (i) the receipt by TRP of notice from the Debtors of the occurrence of the Effective Date and (ii) the receipt by TRP of a copy of an order by the Court approving the motion (the "Motion").[1] Parties were given until November 9, 2006 to object to the Motion. Upon consideration and finding proper notice of the Motion has been given, it is

ORDERED AND ADJUDGED THAT:

---

[1]     All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Motion.

1.     The Motion is granted.

2.     Subject to the occurrence of the Effective Date, TRP shall liquidate and transfer to Winn-Dixie all Trust Assets held in trust by TRP pursuant to the Trust Agreement within five (5) business days following the later of (a) receipt by TRP of notice from the Debtors of the occurrence of the Effective Date and (b) receipt by TRP of a copy of this Order.

3.     The transfer to Winn-Dixie of Trust Assets by TRP described in paragraph 2 above shall take place by wire transfer in accordance with wiring instructions to be separately provided by Winn-Dixie to TRP.

4.     The service of this Order to TRP as described in paragraph 2 above shall be made to TRP at the following address:

T. Rowe Price Trust Company
Attention: Legal Department
100 East Pratt Street
Baltimore, Maryland  21202

5.     The Debtors and TRP are authorized and directed to take all actions necessary to effectuate the relief granted pursuant to this Order.

6.     The Court retains jurisdiction to hear and determine all matters arising from the implementation of this Order.

7.      In the event that the Effective Date does not occur, this Order shall be null and void.

Dated October ___, 2006 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties included
on the Master Service List.

3