**EXHIBIT B – SUB-SUBLEASE**

FILE

SUB-SUBLEASE

THIS SUB-SUBLEASE (hereinafter called "Sublease"), made this 12th day of December, 19 86, between REALTY SOUTH IN- VESTORS, INC., a Maryland corporation, (hereinafter called "Landlord"), and WINN-DIXIE CHARLOTTE, INC., a Florida corporation duly qualified to transact business in the State of South Carolina, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

WITNESSETH:

PREMISES    That the Landlord, in consideration of the rents herein reserved and of the covenants of the Tenant, does hereby lease and demise unto the Tenant, for the term hereinafter specified, the following described improvements:

> That certain store building, approximately 175 feet in width by 175 feet in depth, together with a 922 sq. ft. front vestibule and concrete pads at rear of building for installation of Tenant's exterior coolers and/or freezers, (hereinafter collectively called "demised premises"), which store building and related improvements are owned by the Landlord (subject to reversion to Mountcastle Corporation, a Tennessee corporation), the land on which the said building stands being in rightful possession of Landlord herein by virtue of that certain Land Sub-Lease between Mountcastle Corporation as Lessor (hereinafter called "Lessor") and Winn-Dixie Charlotte, Inc., as Lessee, dated May 7, 1985, a Memorandum of said Land Sub-Lease being recorded in the Office of Clerk of Horry County, South Carolina in Book 966, Page 561, which Land Sub-Lease has been assigned to Landlord herein by virtue of Assignment of Land Sub-Lease dated _____, 19____ and recorded in Book _____, Page _____, Office of Clerk of Horry County, South Carolina.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

TERM    1. The initial approximate twenty (20) year term of this lease shall commence on the date hereof and expire at midnight on December 11 2006, with the lease term extension options available to Tenant under Article 17 hereof to follow thereafter, if exercised.

RENTAL    2. Tenant shall pay directly to Mountcastle Corporation (or its Assignee) throughout the term of this Sublease rental on the land and all other payments and reimbursements to be made by Tenant to Landlord under the Land Sub-Lease, as set forth in Land Sub-Lease referenced above. Simultaneously with such payments to Mountcastle Corporation (or its As-

APPROVED
As To Form
[signature]
Winn-Dixie Stores, Inc.

This instrument was prepared by
Charles P. Galand, Jr., Attorney-
at-Law whose address is P. O.
Box 0, Jacksonville, Florida 32203

signee), Tenant shall furnish proof of such payment to Landlord in a form satisfactory to Landlord. All such payments to Mountcastle Corporation shall be considered required rental payments hereunder and shall constitute a portion of the rentals due hereunder. In addition, Tenant agrees to pay to the Landlord as rental for the demised premises during the term of this lease, and any extensions thereof, the sum of One Hundred Twenty-Two Thousand Eight Hundred Forty-Eight and No/100 Dollars (█████████) per annum. The rental shall be paid in twelve (12) equal monthly installments of Ten Thousand Two Hundred Thirty-Seven and 33/100 Dollars ($10,237.33) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof. Rent for fractional years and fractional months at the beginning and end of the term shall be prorated on the basis of the annual rate. The first monthly payment of rent shall be due on the first day of the next succeeding calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month.

In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which ____one____ per cent ( -1- %) of Tenant's gross sales made from the demised premises in each fiscal year ending approximately June 30th during the term of this lease, and any extensions thereof, exceeds One Hundred Twenty-Two Thousand Eight Hundred Forty-Eight and No/100 Dollars ($122,848.00).

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from approximately July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

-2-

If any payment of rent on the land, rental for the demised premises or percentage rental is not made as provided herein within ten (10) days after notice from Landlord to Tenant that Tenant failed to make payment on or before the date due, then the amount of such payment shall bear interest from and after the date of such notice at the per annum rate equal to the prime rate plus one percentage point. "Prime rate" means the rate of interest announced by Citibank as its prime rate from time to time. The prime rate in effect as of the close of business each day shall be the applicable rate for that date. This interest shall be due on late payments regardless of whether or not this Sublease is ever in default, and shall be due and payable by Tenant in addition to, and not in lieu of, all interest, penalties, late charges and the like which may be due and owing under the Land Sub-Lease.

**DEFINITION OF "GROSS SALES"**

2a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, government bonds or savings stamps or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

**RECORD OF SALES**

2b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

**LAND SUB-LEASE**

3. The demised premises constitute a free-standing supermarket located on property situated at the intersection of U. S. Hwy. #501 and 16th Avenue in the City of Conway (Horry County), South Carolina, the legal description of said property being attached to the recorded Memorandum of Land Sub-Lease hereinabove described. The parties acknowledge that certain provisions of the said Land Sub-Lease apply to the premises described in this Lease and the parties agree to be governed by the provisions of the Land Sub-Lease, of which Landlord herein is the lessee by virtue of Assignment.

This agreement is a sublease and is subject to all the provisions in the Land Sub-Lease. Tenant shall not commit or permit to be committed any act or omission that will violate any provisions of the Land Sub-Lease. If the Land Sub-Lease terminates, this Sublease shall terminate, subject to the provisions of the Land Sub-Lease, and the parties shall be relieved from all liabilities and obligations under this Sublease arising after such termination; except that if this Sublease terminates as a result of a default

-3-

of one of the parties under this Sublease or the Land Sub-Lease, or both, the defaulting party shall be liable to the non-defaulting party for all damage suffered by the non-defaulting party as a result of such termination. Tenant hereby acknowledges its primary liability, obligation and responsibility under the Land Sub-Lease, as set forth in Article 9 therein.

Tenant shall assume and perform to Landlord each and every obligation of Lessee under the provisions of the Land Sub-Lease. Specifically, but not by way of limitation, Tenant assumes the obligation and agrees to make all payments for taxes, insurance, utilities and maintenance required to be made by Lessee under the Land Sub-Lease, and agrees to assume Landlord's obligations and be bound by all other provisions of the Land Sub-Lease. As the Land Sub-Lease is a completely net lease, this Sublease shall be a completely net lease, and Tenant shall pay net throughout the term of this Sublease, the ground rent, the rental for the demised premises rental, and the percentage rent, free of any offset, abatement or other deduction whatsoever and without notice, except as may be expressly set forth herein. Landlord shall not be required to make any payment of any kind whatsoever with respect to the premises.

**UTILITIES**  4. Tenant agrees to pay all charges for telephone, gas, electricity, water and all other utilities used by Tenant on the premises, and the Landlord agrees to provide access to such utilities at all times during the term of this lease.

**TENANT'S REPAIRS**  5. Tenant agrees to keep the interior and exterior of the demised premises in good condition and repair.

**FIXTURES AND ALTERATIONS**  6. The Tenant, at its own expense, may from time to time during the term of this lease make any alterations, additions and improvements in, on and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease.

Tenant may construct and build or install on and in said premises any and all signs, racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which signs, racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

-4-

**INDEMNIFICATION** 7. The Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of accident or damage to any person or property happening on or about the demised premises, except in case of accident or damage caused by the fault or negligence of Landlord, its servants, agents or employees. Tenant further agrees to carry, at its own expense, public liability insurance coverage on the demised premises in a company qualified to transact business in the state in which the demised premises are located, stipulating limits of liability of not less than $1,000,000.00.

Tenant hereby agrees to indemnify and hold harmless Landlord to the same extent and as fully and completely as Lessee indemnifies and holds harmless Lessor under the Land Sub-Lease. Tenant covenants and agrees to carry insurance, at its expense, of the types and in the amounts required to be carried by Lessee under the Land Sub-Lease. All such policies of insurance shall name the Tenant, Landlord and Lessor, as insured and shall comply in all respects with the requirements of Article 23 of the Land Sub-Lease.

Tenant acknowledges and agrees that title to the building on the land is in Landlord, subject to the reversion of title to the Landlord under the Land Sub-Lease. This Sublease is a lease of said building by Landlord to Tenant and a sublease of Landlord's leasehold estate in the land on which said building is located. Said building shall be considered real property for all purposes. Upon the expiration or termination of this Sublease, Tenant shall have no right or obligation to remove said building. During the term of this Sublease, Landlord alone shall be entitled to claim depreciation on the building for all taxation purposes. Tenant shall and does hereby hold harmless, indemnify and protect Landlord against any and all claims, demands, actions, causes of actions, losses, expenses (including, without limitation, attorneys' fees), costs (including all court costs), damages and all liabilities arising out of or incurred in connection with a characterization by any person or entity, governmental or otherwise, of the interests and estates of Landlord, Tenant, and Landlord under the Land Sub-Lease (created hereunder or under the Land Lease) that was not intended by Landlord, Tenant or Landlord under the Land Sub-Lease and is not consistent with the estates and interests as described herein.

**FIRE** 8. In the event of any damage to or destruction of all or any part of the demised premises, Tenant shall, at its expense, properly commence and complete the restoration, replacement or rebuilding of the improvements, as nearly as practical to their value, architectural condition and character as existed immediately prior to such damage or destruction. In the event damage to or destruction of a substantial portion (which shall be defined to be damage in excess of fifty percent (50%) of the then value thereof) of the demised premises occurs within the last three years of the initial term of this lease, the obligation of Tenant to restore the premises shall not arise unless Landlord shall extend the term of the lease so as to expire ten (10) years from the date of such damage, and on the same conditions and for the same rentals.

In the event of any damage to or destruction of all or any part of the demised premises, there shall be no abatement of rent hereunder, and Tenant shall continue to make all rent and other payments required hereunder and all payments of rent and otherwise as may be required under the Land Sub-Lease.

-5-

except for such deeds to secure debt as now or may hereafter encumber the demised premises and to which this lease is subordinate.

**QUIET ENJOYMENT**

9. The Landlord covenants, warrants, and represents that upon commencement of the lease term, the demised premises will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein; and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

**TAXES AND LIENS**

10. All taxes, assessments, and charges on land or improvements and obligations secured by mortgage or other lien upon the premises shall be promptly paid by Tenant when due. The Landlord may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of the Tenant which may threaten its enjoyment of the premises, and if it does so it shall be subrogated to all rights of the obligee against the Tenant or the premises or both and shall be reimbursed by the Tenant for resulting expenses and disbursements, together with interest thereon at twelve percent (12%) per annum.

**CONDEMNATION**

11. The parties agree that Article 8 appearing on pages 8, 9 and 10 of the said Land Sub-Lease dated May 7, 1985 shall govern the rights of the parties in respect of condemnation of the demised premises.

**DEFAULT**

12. The parties agree that the provisions of Article 11 appearing on pages 12 and 13 of the said Land Sub-Lease shall govern the rights of the parties in respect of defaults. The existence of an event of default under the Land Sub-Lease shall constitute a default under this Sublease.

In the event any rent provided for in this Sublease shall not be paid when due and such failure shall continue for 30 days after Landlord has given Tenant notice of such failure, Landlord may cancel this Sublease. A default also occurs in the event Tenant fails to observe, perform or comply with any other provision of this Sublease, and such failure shall continue for forty-five (45) days after Landlord has given Tenant notice of such failure. After such applicable periods have expired, without cure of default by Tenant, Landlord shall have the right to re-enter the premises and take possession thereof. Notwithstanding such re-entry or cancellation, the liability of Tenant for rentals hereunder shall not be extinguished for the balance of the term hereof, and Tenant shall pay to Landlord any deficiency arising from a re-entry and re-letting of the premises at a reduced rental. A default (except as to the payment of rentals) shall be deemed cured if Tenant in good faith commences the performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default.

-6-

BANKRUPTCY 13. The parties agree that the provisions of Article 11 appearing on pages 12 and 13 of the said Land Sub-Lease shall govern the rights of the parties in respect of a bankruptcy proceeding of the Tenant.

MECHANICS' LIENS 14. Tenant shall indemnify and save Landlord harmless from and against any and all claims and suits for damages to persons or properties from defects in material or from the use of unskilled labor or from any negligence caused by Tenant, any contractor or by any of its employees, agents or servants during the construction of any work on the demised premises during the term of this Sublease and Tenant agrees to indemnify and hold harmless Landlord from any mechanics', materialmen's or laborers' liens or encumbrances arising out of any such construction work and to cause any such liens to be promptly discharged.

EXCLUSIVE SUPERMARKET 15. The Landlord agrees that to the extent within its control, Landlord will comply with the exclusive supermarket provisions set forth in Article 15 of the Land Sub-Lease, but in as much as the covenant and agreement contained in said Article 15 of the Land Sub-Lease is from Mountcastle Corporation in favor of Winn-Dixie Charlotte, Inc., Landlord makes no covenant or agreement with respect thereto; provided, however, that in the event of a breach of such covenant, Landlord will assign to Tenant any and all remedies which Landlord may have under the Land Sub-Lease and under any other covenants, conditions, restrictions or easements affecting the demised premises for such breach. This Sublease shall not be terminable upon such breach and Tenant shall have no rights or remedies against Landlord for such breach.

NUISANCES 16. The Tenant agrees that the leased demised premises or any portion thereof shall not be used for any illegal or unlawful purpose, and that the Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon.

EXTENSIONS 17. It is further agreed that Tenant, at its option, shall be entitled to the privilege of four (4) successive extensions of the term of this Sublease, each extension to be for a period of five (5) years, and to two (2) additional extensions of this Sublease, each such additional extension to be for a period of ten (10) years, and each such five or ten year extension to be on the same terms and conditions set forth herein, including, but not limited to, the provisions for payment by Tenant of the ground rent then payable under the Land Sub-Lease, and the payment of monthly rental and percentage rental hereunder.

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least _two hundred twenty (220) days_ before the expiration of the initial term, and if extended, at least _two hundred twenty (220) days_ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

-7-

**NOTICES**    18. All notices required to be given to Landlord hereunder shall be sent by registered or certified mail to, and all rent payments shall be made to Landlord at, _____

           1 Parkway Center
           1850 Parkway Place
           Suite 722
           Marietta, Georgia 30067

or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by certified or registered mail.

All notices required to be given to Tenant shall be sent by registered or certified mail to the Tenant at P. O. Box 31397

           Charlotte, North Carolina 28231

or to such other address as Tenant may from time to time direct by written notice forwarded to Landlord by registered or certified mail.

**END OF TENANCY**    19. The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted.

**ASSIGNMENT**    20. The parties agree that the provisions of Article 9 appearing on pages 10 and 11 of the said Land Sub-Lease shall govern the rights of the parties in respect of Tenant's assignment, subleasing or vacating the demised premises in whole or in part.

**BENEFIT**    21. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties.

**SHORT FORM LEASE**    22. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

**MARGINAL TITLES**    23. The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

**WAIVER**    24. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

ADDITIONAL COVENANTS

25. Tenant warrants and covenants that the demised premises shall be used only for the uses permitted under the Land Sub-Lease. Tenant further covenants and agrees to operate in accordance with such permitted uses throughout the term of this Sublease. In addition, Tenant covenants and agrees to faithfully comply with, honor and abide by all other agreements, conditions, and restrictions governing or related to the use and occupancy of the land and the demised premises, including but not limited to that certain ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ by Mountcastle Corporat▇▇▇▇▇▇

NEGATION OF PARTNERSHIP

26. Nothing in this Sublease shall be construed to render or constitute Landlord in any way or for any purpose a partner, joint venturer or associate in any relationship with the Tenant other than as landlord and tenant, nor shall this Sublease be construed to authorize either party to act as agent for the other party except as expressly provided to the contrary in this Sublease.

NOTICE TO MORTGAGEES

27. In the event of any default by Landlord hereunder, or by landlord under the Land Sub-Lease, Tenant shall provide notice of such default to the holder of any mortgage, deed of trust, or security deed encumbering the land or the demised premises, including the holder of any mortgage, deed of trust, or security deed encumbering Landlord's leasehold estate or the demised premises; provided, however, Tenant shall first have been notified in writing of the name and address of such secured party. Such notice shall specify the nature of the default by the Landlord, or by the landlord under the Land Sub-Lease. Upon receipt of such notice, such secured party shall have the right to cure such default and Tenant will not terminate this Sublease, withhold payment of rentals hereunder, or pursue any other remedies that may be available to it under the Land Sub-Lease or hereunder by reason of such default, until the expiration of thirty (30) days following such secured party's receipt of such notice of default, or until the expiration of an additional period of time if the circumstances of such default are such that the default is not susceptible to cure within the initial thirty-day period, and provided that such secured party is diligently prosecuting the cure of such default. In any event, notice of such default shall go to Realty South Investors, Inc., One Parkway Center, 1850 Parkway Place, Suite 922, Marietta, Georgia 30067.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered in the presence of:

_____  REALTY SOUTH INVESTORS, INC.
_____  By_____
As to Landlord                 Its                President
                               Attest_____
                               Its                Secretary
                               (CORPORATE SEAL)
                               LANDLORD

_____  WINN-DIXIE CHARLOTTE, INC.
_____  By_____
As to Tenant                   Its              Vice President
                               Attest_____
                               Its                Secretary
                               (CORPORATE SEAL)
                               TENANT

-9-

STATE OF Georgia )
COUNTY OF Cobb )

Personally appeared before me Scarlett J. Gey who, being duly sworn, says that S_he saw the corporate seal of REALTY SOUTH INVESTORS, INC., a Maryland corporation, affixed to the foregoing instrument, and that she saw A P Chambliss III, President and Timothy J O'Neill, ~~Secretary~~ of REALTY SOUTH INVESTORS, INC., both personally known to deponent to be such officers of such corporation, respectively sign and attest this instrument and deliver same for and on behalf of such corporation, and the deponent, with Teresa Bradbury witnessed the execution and delivery thereof as the act and deed of REALTY SOUTH INVESTORS, INC.

Sworn to and subscribed before me this 12th day of December, 1986.

Kim A Bentley
Notary Public,       Notary Public, Georgia, State at Large
My commission expires:   My Commission Expires August 29, 1989
   (Notarial Seal)


STATE OF FLORIDA)
COUNTY OF DUVAL )

Personally appeared before me CHARLES MILFORD, Jr. who, being duly sworn, says that _he saw the corporate seal of WINN-DIXIE CHARLOTTE, INC., a Florida corporation, affixed to the foregoing instrument, and that _he saw F. L. James, Vice President and J. S. Bryan, Jr., Secretary of WINN-DIXIE CHARLOTTE, INC., both personally known to deponent to be such officers of such corporation, respectively sign and attest this instrument and deliver same for and on behalf of such corporation, and the deponent, with DEBRA W. WISE witnessed the execution and delivery thereof as the act and deed of WINN-DIXIE CHARLOTTE, INC.

C Milford

Sworn to and subscribed before me this 12th day of December, 19 86.

Debra W. Wise
Notary Public,
My commission expires:
   (Notarial Seal)


DEBRA W. WISE
Notary Public, State of Florida
My Commission Exp. Jan 23, 1988