# EXHIBIT D – GATOR STATE COURT MEMORANDUM

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF HORRY ) | FIFTEENTH JUDICIAL CIRCUIT |

| | |
|---|---|
| Gator Coastal Shopping Centre, LLC, ) | Civil Action No. 2005-CP-26-4499 |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM IN SUPPORT OF |
| ) | PLAINTIFF'S MOTION FOR |
| vs. ) | SUMMARY JUDGMENT AND |
| ) | OPPOSITION TO DEFENDANT'S |
| Cardinal Capital Partners, Inc. Employee ) | MOTION FOR SUMMARY JUDGMENT |
| Profit Sharing Plan and Trust and ) | |
| Principal Life Insurance Company, ) | |
| ) | |
| Defendants. ) | |

COMES NOW Gator Coastal Shopping Centre, LLC ("Gator"), the Plaintiff in the above-styled action and submits its Memorandum in Support of its Motion For Summary Judgment pursuant to South Carolina Rule of Civil Procedure 56(c).

In this Memorandum, Gator respectfully shows that it was the lessor of property in which Cardinal Capital Partners, Inc. Employee Profit Sharing Plan and Trust ("Cardinal") was the lessee. Winn Dixie, Inc. ("Winn Dixie") was the sublease. During the course of the Lease, Cardinal entered into a note and mortgage with Principal Life Insurance Company ("Principal"), in which the Lease in question served as collateral on the loan. After Winn Dixie filed for bankruptcy and rejected the sublease, Cardinal defaulted on its Lease by refusing to make payments as required. Principal admitted that Cardinal breached the lease in its letter to this Court dated August 23, 2006. Neither Cardinal nor Principal made any attempt to cure the default. Gator properly terminated the Lease on the property after timely providing notice of default to both defendants. Principal never foreclosed on the Lease prior to

termination, and therefore had no interest at the time of termination. The failure to cure the default under the Lease according to the terms of the agreement extinguished any right Principal had in the Lease, or any benefit arising therefrom. Despite Principal's failure to make any effort to cure the default, it has still asserted a claim with the Bankruptcy Court for monies arising from the rejection of the sublease. Accordingly, it is respectfully submitted that summary judgment is appropriate on Plaintiff's claim for a declaratory judgment that Principal has no interest in the premises, Lease, or benefit arising therefrom.

## STATEMENT OF FACTS

On or about May 7, 1985, Plaintiff's predecessor in interest, Mountcastle Corporation, as Landlord, and Defendant Cardinal's predecessor in interest, Winn-Dixie Charlotte, Inc., as Tenant, entered into a lease agreement of certain real property located in Conway, Horry County, South Carolina (the "Premises") entitled "Land Sub-Lease" (the "Lease"). See Affidavit of James Goldsmith, Paragraph 2. As a result of various assignments, the expiration of an overlease and other events, Plaintiff became the Landlord pursuant to the Lease, Defendant Cardinal became the Tenant and Winn-Dixie became the Sub-tenant. See Affidavit of James Goldsmith, Paragraph 3. As a result of financing arrangements, Principal was Mortgagee on the leasehold interest by virtue of that certain leasehold Mortgage and Security Agreement dated September 18, 1990 ("Mortgage") and Cardinal was the Mortgagor of the leasehold Mortgage and Security Agreement. The mortgage was non-recourse. See Affidavit of James Goldsmith, Paragraph 4. Winn-Dixie Charlotte, Inc. as Sub-Tenant filed for bankruptcy, abandoned the premises and rejected the Lease. See Affidavit of James Goldsmith, Paragraph 5. After Winn-Dixie filed for bankruptcy and rejected the lease, Defendant Cardinal, as Tenant, failed to make the monthly rent and additional rent payment

beginning in July of 2005, as required by the Lease. See Affidavit of James Goldsmith, Paragraph 6. Defendant Cardinal informed the Plaintiff that it did not plan to make any more lease payments. See Affidavit of James Goldsmith, Paragraph 8. Gator served Cardinal and Principal, via certified mail, with a notice of default on July 6, 2005, and a notice of default with intent to terminate on July 22, 2005. Copies of these letters were attached to Gator's complaint, and incorporated by reference. Cardinal has never made another payment since the time of the default. Principal has neither made payment to cure the default, nor has it instituted a foreclosure action. However, Principal has filed claims in the Winn Dixie bankruptcy case alleging entitlements to rejection damages.

Gator filed this action on August 26, 2005, claiming damages arising from the parties' breach, and seeking a declaratory judgment that Principal had no interest in the property or the Lease due to its failure to take any action to cure the default or foreclose on the Lease. Gator and Cardinal have resolved its issues.

## ARGUMENT

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Koester v. Carolina Rental Ctr., Inc., 443 S.E.2d 392 (1994); South Carolina Rule of Civil Procedure ("SCRCP") 56(c). In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all the inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Id. While a litigant should not be improperly deprived of trial, summary judgment should be invoked if there are no disputed factual issues. Baughman v. American Tel. and Tel. Co., 410 S.E.2d 537, 543 (S.C. 1991). Under Rule 56(c), summary judgment is properly granted where, as in this case, there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Sumter Dairies, Inc. v. Pelfrey, 234 S.E.2d 490 (1977). Therefore, this Court should grant summary judgment in favor of Gator because Principal did not have any interest in the Lease prior to the proper termination by Gator.

It is undisputed that Cardinal defaulted under the Lease, and that Gator had the right to terminate pursuant to the terms of the Lease. The Lease provides:

> 11. The following occurrences or acts shall constitute events of default under this Lease: (a) If Tenant shall fail to make payment when due of any sum payable by it hereunder ... (b) ... Landlord shall have the right at its election, subject to Article 7 hereof, while any event of default shall continue, to give Tenant notice of Landlord's intention to terminate this Lease on a date specified in such notice not earlier than 30 days after the giving of such notice, and if such notice shall be given and such event of default shall not have been cured on or prior to the date so specified this Land Sub-Lease and the estate hereby ranted shall terminate on such date ...

After Cardinal's default, Gator notified both Cardinal and Principal that the Lease was in default, and failure to cure would result in termination. This notification was given as required by the Leases:

> 7(b)(i) upon the occurrence of any event of default under this Lease, Landlord shall give further notice of such event of default to the Mortgagee shall have the right to cure such event of default, and Landlord will grant to mortgagee 30 days after event of default with respect to a default specified in Article 11(a) and 30 days (or such longer period as may be required to cure such default with due diligence) with respect to a default specified in Article 11(b) before taking any action to terminate this Land Lease[.]

When Cardinal defaulted on the Lease, Principal could have preserved its rights by pursuing two different courses of action. Principal could have cured the default, allowing the Lease to continue, and allowing Cardinal, and Principal as the Leasehold Mortgagee, to continue to inure the benefits of the Lease. Second, Principal could have foreclosed on the mortgage, taking all control and responsibility for the Lease itself. However, Principal cannot take possessory control of the Lease until it pursued foreclosure as provided for by law.

S.C. Code Ann. 29-3-10 provides that:

> No mortgagee shall be entitled to maintain any possessory action for the real estate mortgaged, even after the time allotted for the payment of the money secured by mortgage is elapsed, but the mortgagor shall be deemed the owner of the land and the mortgagee as owner of the money lent or due and the mortgagee shall be entitled to recover satisfaction for such money out of the land by foreclosure and sale according to law[.]

Had Principal chosen either course of action, it still would have had to pay the monies due and owing to keep the Lease current. Principal's interest in the Lease cannot be greater than what Cardinal possessed. Any benefit Principal could claim under the Lease also carried the same obligations agreed to by Cardinal. The Attornment Agreement recognized this:

> 3. All rights acquired by Lender under the Security Instrument are and shall be subject to (a) each and all of the covenants, conditions, and restrictions set forth in the Lease, and to all rights and interests of Lessor therein, and (b) the provisions of the Attornment Agreement

Because neither Principal nor Cardinal made any efforts to cure the default, Gator properly terminated the Lease. As Principal's only interest in the Lease was as security for a leasehold mortgage, when Cardinal defaulted and Principal chose not to cure, that interest and any benefit from the Lease ended.

Despite this, Principal has sought, via a filed claim, damages from Winn Dixie for the breach or rejection of the lease. But Principal's interest, and whether the underlying lease is impacted by bankruptcy law, is governed by state law. Federal law may describe what property interests are included in the bankruptcy estate of Winn Dixie, but state law determines the nature and existence of the debtor (Winn Dixie)'s property rights. See In re Moffett, 356 F.3d 518 (4th Cir. 2004). Therefore, this Court has jurisdiction to issue a declaratory judgment as to Principal's interest.

Principal had not taken any action to preserve an interest in the Lease, and therefore, has no claim for the any benefits arising therefrom. Summary judgment is proper because Gator properly terminated the Lease, and any interest Principal had therein.

        NELSON MULLINS RILEY & SCARBOROUGH, LLP

By: _____
    Susan P. MacDonald
    E-Mail Address: susan.macdonald@nelsonmullins.com
    2411 North Oak Street / Suite 301
    Post Office Box 3939 (29578)
    Myrtle Beach, SC 29577-3165
    (843) 448-3500
    George B. Cauthen
    E-Mail Address: george.cauthen@nelsonmullins.com
    SC Bar No. 001171
    PO Box 11070
    Columbia, SC 29201

Attorneys for Gator Coastal Shopping Centre, LLC

Myrtle Beach, South Carolina
August 28, 2006

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | FIFTEENTH JUDICIAL CIRCUIT |
| Gator Coastal Shopping Centre, LLC, | ) | Civil Action No. 2005-CP-26-4499 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **AFFIDAVIT OF JAMES GOLDSMITH** |
| | ) | |
| Cardinal Capital Partners, Inc. Employee Profit Sharing Plan and Trust and Principal Life Insurance Company, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

1. I am James A. Goldsmith, the President of the sole general partner of the sole member of Plaintiff, which has its main office located at 1595 NE 163 Street, North Miami Beach, Florida 33162.

2. On or about May 7, 1985, Plaintiff's predecessor in interest, Mountcastle Corporation, as Landlord, and Defendant Cardinal's predecessor in interest, Winn-Dixie Charlotte, Inc., as Tenant, entered into a lease agreement of certain real property located in Conway, Horry County, South Carolina (the "Premises") entitled "Land Sub-Lease" (the "Lease"). A copy of the Lease is attached as a part hereof as Exhibit A, and the terms of which Lease are incorporated herein by this reference.

3. As a result of various assignments, the expiration of an overlease and other events, Plaintiff became the Landlord pursuant to the Lease, Defendant Cardinal became the Tenant and Winn-Dixie became the Sub-tenant.

4. As a result of financing arrangements, Principal was Mortgagee on the leasehold interest by virtue of that certain leasehold Mortgage and Security Agreement dated September 18, 1990 ("Mortgage") and Cardinal was the Mortgagor of the leasehold Mortgage and Security Agreement. The mortgage was non-recourse. A copy of the Mortgage is attached as a part hereof as Exhibit B, and the terms of which Mortgage are incorporated herein by this reference.

5. Winn-Dixie Charlotte, Inc. as Sub-Tenant filed for bankruptcy, abandoned the premises and rejected the Lease.

6. After Winn-Dixie filed for bankruptcy and rejected the lease, Defendant Cardinal, as Tenant, failed to make the monthly rent and additional rent payment beginning in July of 2005, as required by the Lease, which failure continued

7. Defendant Cardinal also failed to maintain the premises in a manner satisfactory to the Plaintiff.

8. Defendant Cardinal informed the Plaintiff that it did not plan to make any more lease payments.

9. Defendant Cardinal also refused to agree to a non-judicial termination of the lease.

10. Plaintiff was forced to file suit seeking legal recourse.

11. Plaintiff was informed that Defendant Cardinal could not agree to terminate the lease because Principal wrongfully withheld its consent to the termination and Cardinal feared that Principal would attempt to change the non-recourse status of the Note and the Mortgage.

12. Defendant Principal controlled the actions of Cardinal by attempting to assert alleged rights under the Note and Mortgage.

13. Plaintiff filed the Original Complaint asserting its rights pursuant to the Lease in August, 2005.

14. Plaintiff was informed by Cardinal that it could not agree to resolve the matter due to the interference of Principal.

15. Finally, in February 2006, Cardinal and Plaintiff resolved their differences.

16. Principal controlled the actions of Cardinal and improperly delayed the termination of the lease.

17. Principal has made a claim in bankruptcy Court for rejection damages under the Winn-Dixie Lease.

18. By interfering with Cardinal's and Plaintiff's attempts to resolve the lease issues, Principal has asserted additional rejection damages to the detriment of Plaintiff.

19. Principal stepped in the shoes of Cardinal by attempting to thwart the timely termination of the lease.

20. Principal has further wrongfully refused to consent to the dismissal of Cardinal as a party to this action, requiring Plaintiff to file a motion to dismiss.

21. Principal has acted as the tenant in this matter by refusing to allow Cardinal to agree to a termination of the lease, but without payment of any rent or meeting any of the other obligations of the tenant.

Further, Affiant sayeth not.

_____
James Goldsmith

SWORN to and subscribed before me
this 24th day of August, 2006

_____(L.S.)
Notary Public, State of Florida

My Commission Expires: 2-9-10

OFFICIAL FLORIDA NOTARY SEAL:

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF HORRY ) | FIFTEENTH JUDICIAL CIRCUIT |

Gator Coastal Shopping Centre, LLC,  )   Civil Action No. 2005-CP-26-4499
)
                  Plaintiff,  )
)
vs.  )   **AFFIDAVIT OF LISHA K. MILLER**
)
Cardinal Capital Partners, Inc. Employee  )
Profit Sharing Plan and Trust and  )
Principal Life Insurance Company,  )
)
                  Defendants.  )

1. I am Lisha K. Miller, the Vice President of Operations, Commercial Division of the sole general partner of the sole member of Plaintiff which has its main office located at 1595 NE 163 Street, North Miami Beach, Florida 33162.

2. Defendant Principal has never made any rent or additional rent payment to Plaintiff.

3. Defendant Principal has never paid taxes on the property.

4. Defendant Principal has never maintained the premises.

Further, Affiant sayeth not.

_____
Lisha K. Miller

SWORN to and subscribed before me
this _____ day of August, 2006

_____(L.S.)
Notary Public, State of Florida
My Commission Expires: _____

MIRIAM MILLER
MY COMMISSION # DD 608218
EXPIRES: February 9, 2010
Bonded Thru Notary Public Underwriters