

## LOAN SERVICING AND ESCROW AGREEMENT
## CONCERNING WINN-DIXIE CLAIM

THIS **LOAN SERVICING AND ESCROW AGREEMENT CONCERNING WINN-DIXIE CLAIM** (this "Agreement") is made and entered as of this _____ day of _____, 2006 (the **"Effective Date"**) by and among _____, a _____ ("BORROWER"), _____, a _____, its successors and assigns ("LENDER"), and _____, a _____ ("SERVICER").

### WITNESSETH:

A. BORROWER is the owner of a shopping center located at _____, _____, _____ (**"Premises"**). LENDER is the beneficiary under that certain Deed of Trust, Security Agreement and Fixture Filing dated _____, ____ (**"Deed of Trust"**) securing a loan to BORROWER in the original principal amount of $_____ (**"Loan"**). Unless otherwise defined herein, all capitalized terms shall be defined as set forth in the Deed of Trust.

B. _____, a _____ (**"Winn Dixie"**) and BORROWER were parties to that certain _____ Lease, dated _____, (**"Lease"**).

C. BORROWER and LENDER entered into that certain Absolute Assignment of Rents and Profits and Collateral Assignment of Leases dated _____, ____, a copy of which is annexed to this Agreement as *Exhibit "1"* (**"Assignment of Leases"**). Any words or phrases defined in the Assignment of Leases shall have the same meaning and effect when used in this Agreement. This Agreement is intended to supplement the terms and conditions of the Assignment of Leases and nothing in this Agreement is intended to modify or changes the substantive terms of the Assignment of Leases as between BORROWER and LENDER.

D. Pursuant to the terms of the Lease and Joint Plan of Reorganization of Winn-Dixie Stores, Inc., approved on _____, Winn Dixie delivered to _____ **[Insert description of stock and to whom it was delivered]**

E. **[Insert recital if stock is converted to cash before delivery to escrow.]**

F. LENDER has received the $_____ proceeds (**"Cash Proceeds"**) from the Letter of Credit as a result of the termination of the Lease. The purpose of this Agreement is to supplement the Assignment of Leases to provide procedures for LENDER to deposit the Cash Proceeds with SERVICER to be held and disbursed by SERVICER in accordance with the terms of the Assignment of Leases. **[Drafting Note: Revise based on whether stock or cash will be delivered].**

  **NOW THEREFORE**, for and in consideration of good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, and the mutual agreements hereinafter set forth, BORROWER, LENDER and SERVICER hereby agree as follows:

  1.  Concurrently with the execution of this Agreement, LENDER has deposited with SERVICER an amount equal to (i) the Cash Proceeds while held by LENDER, less (ii) $_____ previously deducted from such Cash Proceeds by LENDER at the request of BORROWER for regular monthly payments of principal and interest under the Loan (the "**Deposit**"). The Deposit shall be held and released in accordance with the terms and conditions of this Agreement. **[Drafting Note: Revise as applicable].**

  2.  BORROWER and LENDER have requested SERVICER to accept and hold the Deposit solely upon the terms and conditions set forth in this Agreement. Pursuant to the request of BORROWER and LENDER, SERVICER shall receive and accept the Deposit upon and subject solely to the remaining terms and conditions hereof.

  3.  SERVICER shall hold the Deposit and all other funds held by it pursuant to this Agreement, in an interest-bearing account insured with _____, its successors and assigns, styled "_____ as agent for _____, Mortgage Loan #_____" (the "**Deposit Account**"). Until disbursed in accordance with this Agreement, all interest and other income or proceeds earned thereon shall be held by SERVICER as a part of the Deposit. So long as funds remain in the Deposit Account, within twenty (20) days after the end of each month, Servicer shall provide Borrower a copy of the bank statement for the Deposit Account as of the previous month end, along with a copy of the reserve account history from Servicer's system. BORROWER shall bear all risk of loss of the Deposit resulting from any cause whatsoever, including any loss of principal, except for such loss due to the bad faith, gross negligence or willful misconduct of the SERVICER. Neither LENDER nor SERVICER shall be liable to BORROWER or any other party for a minimum rate of interest or any other rate of return, yield or benefit accruing to the Deposit and any other funds held by SERVICER under this Agreement.

  4.  Without further notice from LENDER or BORROWER, SERVICER shall automatically deduct from the Deposit and make disbursements from the Deposit directly to LENDER to pay regular monthly payments of principal and interest becoming due on the Loan in the amount of $_____ monthly, beginning on the first day of the first calendar month following the date of LENDER's delivery of the Deposit to SERVICER and on or before the first day of each calendar month thereafter ("**Regular Loan Payment**"), unless and until LENDER submits supplemental written instructions to SERVICER directing the discontinuation of disbursement of the Regular Loan Payment. In addition to disbursements on account for Regular Loan Payments, LENDER may from time to time submit supplemental written instructions to SERVICER directing SERVICER to make a direct disbursement(s) to LENDER of other amounts becoming payable to LENDER on account of the Loan ("**Other Lender Payments**").

  5.  In addition to disbursements to LENDER in accordance with section 4 above, BORROWER may become entitled to received disbursements from the Deposit as provided in this section and LENDER shall instruct and direct SERVICER in writing to disburse to

BORROWER funds from the Deposit for the items for which BORROWER is entitled to use Rents and Profits pursuant to Section 7(a) of the Assignment of Leases and for which BORROWER has properly submitted to LENDER (with a copy to SERVICER) of a written disbursement request ("**Disbursement Request**") conforming to the following terms and conditions for each disbursement (the "**Disbursement Requirements**") as applicable to the particular Disbursement Request:

(i) With respect to Disbursement Requests by BORROWER under Section 7(a) of the Assignment of Leases, BORROWER shall provide to LENDER and SERVICER a Disbursement Request at least ten (10) business days prior to the requested date of such disbursement, which Disbursement Request shall include satisfactory evidence that such items and/or conditions for which reimbursement or payment is sought have occurred, including:

(a) Borrower's certification to LENDER that no uncured Event of Default exists under the Note, the Deed of Trust, the Assignment of Leases or any of the Loan Documents as of the date of the Disbursement Request; and

(b) Commercially reasonable documentary evidence of:

(1) In the case of Disbursement Requests to reimburse BORROWER for funds advanced by BORROWER to make payments due LENDER under the Loan Documents, the date, amount and evidence of the applicable payments to LENDER for which the Disbursement Request is submitted; or,

(2) In the case of Disbursement Requests to pay, or reimburse BORROWER for payments previously made to pay, operating expenses for the Premises:

(aa) Subject to Section 5.(i)(b)(2)(cc) below, an invoice(s) and/or billing(s) from third parties for operating expenses attributable to the Premises and BORROWER written certification and warranty to LENDER that BORROWER will use the proceeds of the disbursement to pay such invoice(s) and billing(s) within ten (10) business days from the receipt of the applicable Disbursement; or

(bb) in the case of reimbursement requests, copies of cancelled checks or other evidence of BORROWER's prior payment of the operating expenses for which the applicable Disbursement Request is submitted.

(cc) Notwithstanding Section 5.(i)(b)(2)(aa) above to the contrary, in the case of invoices exceeding $_____ or in the case of as valorem taxes and insurance premiums and upon BORROWER'S submission of the items set forth in Section 5.(i)(b)(2)(aa) above, LENDER reserves the right to direct SERVICER to make payment for such expenses directly to the vendor or governing body entitled to receive such payment.

(ii) With respect to requests for Disbursement Requests by BORROWER for expenses related to modifying or upfitting the Property for any replacement tenant, BORROWER shall not be entitled to submit any Disbursement Request unless and until LENDER has approved a tenant(s) and a replacement lease(s) for the Premises in accordance with Assignment of Leases and any other applicable requirements of the Loan Documents ("**Replacement Lease(s)**"). Once a Replacement Lease(s) is approved by LENDER, BORROWER shall be entitled to submit Disbursement Requests to LENDER and SERVICER at least ten (10) business days prior to the requested date of such disbursement, which Disbursement Request shall include satisfactory evidence that such items and/or conditions for which reimbursement or payment is sought have occurred, including:

(a) BORROWER's certification to LENDER that no uncured Event of Default exists under the Note, the Deed of Trust, the Assignment of Leases or any of the Loan Documents as of the date of the Disbursement Request;

(b) if the Disbursement Request is for payment of brokerage commissions for a Replacement Lease(s), or for other costs reasonably incurred by BORROWER in reletting the Premises, the Disbursement Request shall include the invoice(s) and/or billing(s) from third parties and BORROWER's written certification and warranty to LENDER that BORROWER will use the proceeds of the disbursement to pay such invoice(s) and billing(s) within ten (10) business days from the receipt of the applicable disbursement, provided however, LENDER reserves the right to direct SERVICER to make payment directly to the vender or broker (as applicable);

(c) if the Disbursement Request is for tenant improvements costs for a Replacement Lease(s) or restoration costs as described in the Assignment of Leases, then any such Disbursement Request shall comply with the provisions of preceding clause (a) and all of the following additional requirements as applicable to a particular Disbursement Request:

(1) if the Disbursement Request is to for payment of the costs of government permits ("**Permit Costs**"), architectural or engineering fees for the design of such Tenant Improvement work or restoration work ("**Design Costs**") or payment of amounts due a contractor(s) performing such Tenant Improvement work or restoration work ("**Contractor Payment(s)**"), the Disbursement Request shall include the invoice(s) and/or billing(s) for such Permits Costs, Design Costs or Contractor Payments and BORROWER's written certification and warranty to LENDER that BORROWER will use the proceeds of the disbursement to pay such invoice(s) and billing(s) within ten (10) business days from the receipt of the applicable disbursement; provided, however, except for a Disbursement Request for a final disbursement for Contractor Payments, which shall comply with the additional requirements set forth in subsection 5(ii)(c)(2) below, the amount allowed on account of any Contractor Payment(s) shall be limited to _____ percent (___%) of the applicable Disbursement Request for an interim Contractor Payment(s) with the remaining _____ percent (___%) held as a retention ("**Retention**") and shall otherwise be subject to the following conditions and requirements:

4

(aa) The applicable Disbursement Request for a Contractor Payment(s) shall be accompanied by a conditional lien waiver covering the restoration or Tenant Improvement work for which payment is request based on the progress of the work, which shall be certified by BORROWER in the applicable Disbursement Request; and

(bb) If LENDER elects, LENDER shall have the right to cause an inspection of the restoration or Tenant Improvement work by a current inspection report of the Premises prepared by LENDER's inspecting architect/engineer, if applicable, at the cost of BORROWER in order to confirm BORROWER's estimate of the progress of the work and that the work for which payment is requested has been performed in a good and workmanlike manner.

(2) in the case of a final Disbursement Request for Contractor Payment(s) following the completion of the Tenant Improvements and/or restoration work for the applicable Replacement Lease(s), BORROWER shall be entitled to submit a Disbursement Request for the final Contractor Payment(s), including the Retention and such Disbursement Request shall comply with all of the requirements and conditions in subsection 5(ii)(c)(1) above and the following additional requirements:

(aa) The final Disbursement Request for a Contractor Payment(s) shall be accompanied by a conditional lien waiver covering the restoration and Tenant Improvements work for which the Disbursement Request is submitted;

(bb) The final Disbursement Request for a Contractor Payment(s) shall include an original estoppel certificate executed by the tenant under any Replacement Lease(s) of the Premises or a portion thereof approved by LENDER, stating that such tenant has accepted and occupied the space set forth in the Replacement Lease, and that there are no defaults under such Replacement Lease (nor does there exist any known event or condition, which with the passage of time or the giving of notice, or both, could result in such a default); and

(cc) The final Disbursement Request for a Contractor Payment(s) shall include a copy of any and all applicable certificates of occupancy and other governmental permits issued by applicable governmental authorities, which certificates and permits allow each tenant pursuant to an Replacement Lease to occupy the Premises or the portion thereof covered by the applicable Replacement Lease; and

(dd) if LENDER elects, LENDER shall have the right to cause an inspection of the restoration or Tenant Improvement work by a current inspection report of the Premises prepared by LENDER's inspecting architect/engineer, if applicable, at the cost of BORROWER

in order to confirm BORROWER's determination of the completion of such work in a good and workmanlike manner.

(3)  Notwithstanding anything in this Section 5(ii)(c) to the contrary, in the case of a Disbursement Request pursuant to this Section 5(ii)(c) for an invoice greater than $_____, the LENDER reserves the right to direct SERVICER to make payment directly to the vendor entitled to receive such payment.

(d)  In the event BORROWER has previously paid the expense for which a Disbursement Request is submitted, then BORROWER shall be entitled to reimbursement from the Deposit upon presentation of a Disbursement Request complying with the applicable requirements of this subsection 5(ii) and, in addition, such Disbursement Request shall include copies of cancelled checks or other evidence reasonably satisfactory to LENDER of BORROWER's prior payment of the expenses for which reimbursement is requested.

6.  If not sooner disbursed in accordance with sections 3, 4 and/or 5 above, LENDER shall instruct and authorize SERVICER in writing to disburse the Deposit to BORROWER upon the date on which the Note has been repaid in full, all obligations of BORROWER secured by this Agreement have been performed in full and the Deed of Trust has been reconveyed to BORROWER.

7.  This Agreement shall be irrevocable, and BORROWER and LENDER hereby waives all rights and powers to alter, amend, revoke or terminate this Agreement. This Agreement shall terminate when all compensation owed to SERVICER in connection with the administration of this Agreement shall have been paid in full and the Deposit has been fully disbursed in accordance with the terms hereof.

8.  BORROWER hereby acknowledges that, pursuant to the Assignment of Leases, LENDER has a first prior lien and security interest in and to the (a) the Deposit Account and all rights relating thereto and proceeds therefrom and thereof; (b) all books and records relating to the types and items of property described in the foregoing clause (i) under BORROWER's control; and (c) all proceeds (whether cash or non-cash, and including without limitation insurance proceeds) and products of the property described in the foregoing clause (a) and all replacements and substitutions therefor and all additions and accessions thereto, subject to any amounts owed to SERVICER, as security for payment of all indebtedness and sums due under the Loan Documents and this Agreement. The parties hereto agree that this Agreement constitutes a security agreement, and that BORROWER shall consent to such financing statements and execute such other documents as LENDER shall deem reasonably necessary or desirable to continue the perfection of LENDER's interest in the Deposit.

9.  An "**Event of Default**" shall occur hereunder upon:  (a)  the failure of BORROWER to properly apply any disbursements to pay any third party invoices or billings within the time periods required in subsections 5(i)(b)(2)(aa), 5(ii)(b) or 5(ii)(c) above and BORROWER shall not be entitled to any prior notice or grace period in the event of such a default, (b) the failure of BORROWER to make any payment to or deposit any sum of money with LENDER or SERVICER as and when due under this Agreement within ten (10) days

from delivery of written notice to BORRWER, (b) a breach by BORROWER of any other provision of this Agreement where BORROWER fails to fully cure such breach within ten (10) days from delivery of written notice to BORRWER, or (c) the occurrence of an Event of Default by BORROWER under any of the Loan Documents.

      10.    Upon the occurrence of an Event of Default under this Agreement and while such Event of Default is continuing, and subject to the terms of the Assignment of Leases: (a) LENDER shall not be obligated to cause SERVICER to disburse the Deposit to BORROWER; (b) LENDER shall be entitled to pursue all of its right and remedies under the Loan Documents, and the remedies to which it is entitled at law and in equity, including, without limitation, all remedies of a secured party under the _____ Uniform Commercial Code; and (c) SERVICER shall, upon written notice of an Event of Default from LENDER, pay over to LENDER upon LENDER's request the Deposit, and LENDER shall be entitled immediately to apply such sum in the following order and priority: first, to SERVICER's Costs and Expenses (as defined in Paragraph 14 herein); second, to reimburse LENDER for LENDER's reasonable out-of-pocket expenses incurred in connection with this Agreement or the Loan; third, to discharge any delinquent payments of BORROWER and accrued and unpaid interest thereon; and fourth, to pay accrued interest currently due and owing under the Loan. The rights of LENDER hereunder are in addition to and without limitation of any other rights and remedies that LENDER may have under this Agreement, the Loan Documents or applicable law.

      11.    Notwithstanding the existence of any other liens or security interests in the Deposit, upon the occurrence of an Event of Default under this Agreement and while such Event of Default is continuing, and subject to the terms of the Assignment of Leases, LENDER shall have the right to determine the order in which any or all of the Deposit, or the Property shall be subjected to the remedies provided herein and in the Deed of Trust. LENDER shall have the right to determine the order in which the indebtedness secured hereby is satisfied from the proceeds realized upon the exercise of the remedies provided herein and in the Deed of Trust. BORROWER, and any party who now or hereafter acquires a lien or security interest in the Deposit or the Property and who has actual or constructive notice of this Agreement or the Deed of Trust hereby expressly waives and relinquishes any and all rights to demand or require the marshaling of liens or the marshaling of assets by LENDER in connection with the exercise of any of the remedies provided herein or in the Deed of Trust or permitted by applicable law.

      12.    LENDER and SERVICER shall not in any way be responsible for failure to do any or all of the things for which rights, interest, powers and authorities are herein granted. LENDER and SERVICER shall be responsible only for the application of such cash, documents or other property as it actually receives under the terms hereof; provided, however, that the failure of SERVICER or LENDER to do any of the things or exercise any of the rights, interests, powers and authorities hereunder shall not be construed to be a waiver of any such rights, interests, powers and authorities.

      13.    SERVICER joins in the execution of this Agreement for the express purposes of agreeing to be bound solely by the provisions set forth in this Agreement with respect to the administration and disbursement of the Deposit that the Deposit may be disbursed according to the provisions of this Agreement. BORROWER hereby acknowledges that

pursuant to the Assignment of Leases, BORROWER released all power of dominion and control over the Deposit and BORROWER shall not, by entering into this Agreement, have any power of dominion or control of the Deposit and acknowledges that it shall not have access to the Deposit except as specifically provided herein.

14. BORROWER agrees that LENDER and SERVICER shall incur no costs or expenses whatsoever in connection with the preparation of this Agreement, the holding of the Deposit or the administration of this Agreement, and BORROWER agrees that all costs and expenses shall be borne and paid by BORROWER; provided, however, such costs and expenses shall be deducted and paid directly from the Deposit to the extent of available funds. BORROWER agrees that SERVICER will be entitled to receive: (i) an initial fee of $_____ for the establishment of the Deposit, (ii) an annual fee of $_____, or a one time fee of $_____, whichever BORROWER elects, (iii) an amount of $_____ for each Disbursement Requested processed by SERVICER and (iv) any amounts payable to SERVICER pursuant to section 16 below (collectively the "**Costs and Expenses**"). SERVICER shall have the right to withdraw such Costs and Expenses which are due and owing from the Deposit prior to any disbursement. To the extent insufficient funds exist in the Deposit to pay such Costs and Expenses, BORROWER shall pay such Costs and Expenses within seven (7) days from receipt of an invoice from SERVICER.

15. Nothing contained in this Agreement shall constitute LENDER and/or SERVICER as a joint venturer, partner or agent of BORROWER, or LENDER and/or SERVICER liable for any debts, obligations, acts, omissions, representation, or contracts of BORROWER or LENDER.

16. BORROWER shall indemnify and hold harmless SERVICER and its directors, officers, employees, attorneys, successors and assigns from and against any and all actions, suits, claims, demands, liabilities, losses, damages, obligations, liabilities and costs and expenses (including litigation costs, accounting fees, and reasonable attorneys' fees and expenses) arising from or in any way connected in any manner whatsoever with: (a) the holding of the Deposit in accordance with the provisions of this Agreement; (b) the acts, errors or omissions of BORROWER, LENDER or the agent of either; and (c) SERVICER's acting in accordance with the provisions of this Agreement, excepting only liability occasioned solely by SERVICER's bad faith, gross negligence or willful misconduct, and, in no other event shall SERVICER be liable for any incidental, consequential, special or punitive damages. Furthermore, BORROWER agrees to release and hold harmless SERVICER and its directors, officers, employees, attorneys, successors and assigns, from and against any and all loss, liability, cost, damages and expenses incurred by BORROWER or LENDER, including, without limitation, legal and account fees and expenses arising in any manner whatsoever out of SERVICER's acting in accordance with the provisions of this Agreement. The provisions of this paragraph shall survive the termination of this Agreement and any deposit provided for by this Agreement.

17. All notices, demands, documents, requests, or other communications which are required or permitted to be given or served hereunder shall be in writing and shall be effective when received either (a) personally, (b) by Federal Express or similar overnight courier, (c) by mail, postage prepaid, registered or certified mail, return receipt requested, or (d) except in the case of any notice of default, by first class mail, addressed as follows:

BORROWER: _____
_____
_____
_____
_____

LENDER: _____
_____
_____
_____
_____

SERVICER: _____
_____
_____
_____
_____

Such addresses may be changed from time to time by any party serving notice as above provided.

18.   BORROWER may not assign, pledge or otherwise transfer or encumber this Agreement or any right hereunder separate and apart from the Loan Documents. This Agreement shall be binding upon and inure to the benefit of the successors and permitted assigns of BORROWER, LENDER and SERVICER.

19.   This Agreement and the Assignment of Leases embody the entire agreement among BORROWER, LENDER and SERVICER relating to the subject matter hereof, and supersedes all prior agreements and understandings upon BORROWER, LENDER and SERVICER relating to such subject matter. No implied covenants or obligations shall be read into this Agreement against SERVICER. This Agreement may be changed, waived or terminated only by an instrument in writing signed by the party against who enforcement of such change, waiver or termination is sought.

20.   If any provision of this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable, such invalidity, illegality or unenforceability shall not affect any other provision hereof and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

21.   LENDER shall have all of the rights and remedies granted in this Agreement, the Note, the Deed of Trust, the Assignment of Leases and other Loan Documents and available at law and in equity, and these same rights and remedies shall be cumulative and may be pursued separately, successively or concurrently against BORROWER, or any property covered under the Deed of Trust or the Assignment of Leases or the Loan Documents at the sole discretion of LENDER. The exercise or failure to exercise any of the same shall not constitute a waiver or release thereof or of any other right or remedy, and the same shall be non-exclusive.

22.     This Agreement shall be governed by and construed in accordance with the laws of the State of _____ and the laws of the United States applicable to transactions undertaken within the State of _____.

23.     This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall be deemed one and the same document.

24.     The federal tax identification number of the BORROWER is _____.

25.     In the event at any time (a) of a dispute regarding the Deposit, (b) of a dispute regarding the performance by LENDER or BORROWER under this Agreement or the other Loan Documents, (c) of a dispute regarding the performance by any party under this Agreement, or (d) SERVICER shall receive conflicting demands or instructions under this Agreement, all parties hereto agree that at the sole option of SERVICER either (i) the Deposit then held in escrow by SERVICER shall remain in escrow until written confirmation of the resolution of the dispute, or (ii) SERVICER shall be entitled to deposit the funds contained in the Deposit into a court of general jurisdiction in the State of _____ and to interplead the parties hereto in connection therewith, and the parties hereto hereby consent to the jurisdiction of such court in connection with any such dispute.

26.     SERVICER may resign from its obligations under this Agreement at any time after thirty (30) days' prior written notice to the other parties hereto. LENDER shall designate, in its sole discretion, a substitute SERVICER promptly after receipt of notice of resignation by SERVICER and shall take all reasonable actions necessary to cause such designated successor to promptly assume the obligations of SERVICER hereunder. SERVICER hereby agrees that it shall take all actions reasonably necessary and shall cooperate with LENDER, at no expense to LENDER, to facilitate any transfer of SERVICER's obligations, duties and rights hereunder. From and after the effective date of resignation and the delivery of the Deposit to the replacement servicer designated by LENDER, SERVICER shall have no further obligation or liability under this Agreement.

27.     SERVICER may rely on any written instruction received from LENDER without further inquiry. SERVICER may rely and shall be protected in acting or refraining from acting upon any written notice from LENDER (including but not limited to electronically confirmed facsimiles of such notice) believed by it to be genuine and to have been signed or presented by a duly authorized person acting on behalf of LENDER.

28.     SERVICER is not chargeable with knowledge, and has no duties with respect to, any other agreements between BORROWER and LENDER, including, without limitation, the Loan Documents. SERVICER shall not be liable for any claims, suits, actions, costs, damages, liabilities or expenses or for any interruption of services in connection with the subject matter of this Agreement other than liabilities caused by bad faith, gross negligence or willful misconduct on the part of SERVICER. In no event shall SERVICER be liable for any incidental, consequential, special or punitive damages.

29.     LENDER and BORROWER acknowledge and agree that: (a) SERVICER makes no representations or warranties, express or implied, concerning the validity,

effectiveness, perfection or priority of LENDER's security interest in the Deposit Account or any funds in connection therewith; (b) this Agreement applies only to the Deposit referenced herein, but not to any other deposit account which BORROWER may now or hereafter maintain.

30. LENDER and BORROWER consent to the administration of the funds associated with the Deposit by _____.

31. In the event BORROWER becomes subject to voluntary or involuntary proceedings under the U.S. Bankruptcy Code, or if SERVICER is served with legal process which SERVICER in good faith believes affects the Deposit or the Deposit Account, SERVICER shall have the right to place a hold on such Deposit until such time as SERVICER receives an appropriate court order or other assurances satisfactory to SERVICER establishing that the Deposit or the Deposit Account may be disbursed according to the provisions of this Agreement.

32. Business Day shall mean any day, except Saturday, Sunday or a day which banks in the State of _____ are not required to be open for business.

(The remainder of this page is intentionally left blank.)

IN WITNESS WHEREOF, LENDER, BORROWER and SERVICER have executed this Agreement as of the day and year first above written.

BORROWER:

_____

By: _____
Name: _____
Title: _____

LENDER:

_____

By: _____
Name: _____
Title: _____

SERVICER:

_____

By: _____
Name: _____
Title: _____

STATE OF _____  )
                                                 )  ss
COUNTY OF _____  )

    On _____, 20\_\_\_\_, before me, _____, a Notary Public in and for the State of _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to be the within instrument, and acknowledged to me that he/she executed the within instrument in his/her authorized capacity and that, by his/her signature on the within instrument, the person or entity upon behalf of which he/she executed the within instrument.

    WITNESS my hand and official seal.

Signature: _____           [Seal]


STATE OF _____  )
                                                 )  ss
COUNTY OF _____  )

    On _____, 20\_\_\_\_, before me, _____, a Notary Public in and for the State of _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to be the within instrument, and acknowledged to me that he/she executed the within instrument in his/her authorized capacity and that, by his/her signature on the within instrument, the person or entity upon behalf of which he/she executed the within instrument.

    WITNESS my hand and official seal.

Signature: _____           [Seal]

STATE OF _____  )
                          )  ss
COUNTY OF _____ )

On _____, 20\_\_\_\_, before me, _____, a Notary Public in and for the State of _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to be the within instrument, and acknowledged to me that he/she executed the within instrument in his/her authorized capacity and that, by his/her signature on the within instrument, the person or entity upon behalf of which he/she executed the within instrument.

WITNESS my hand and official seal.

Signature: _____       [Seal]

14

Exhibit "1"
**Assignment of Leases**