# EXHIBIT D

BK 15719 PG 197

Lawrenceville, Georgia
Store No. 1839

ASSIGNMENT OF LEASE AND AGREEMENT

From

PRINCIPAL MUTUAL LIFE INSURANCE COMPANY

To

FIRST SECURITY BANK, NATIONAL ASSOCIATION

and

VAL T. ORTON, individually,

as Trustees

Dated as of March 20, 1998

Prepared by and
Recording requested by and
when recorded return to:

Roger L. Ellison, Esq.
Manatt, Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064

CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.
98 MAR 30 PM 2:00
TOM LAWLER, CLERK

JK2 118033.2 80130 01058
3/13/98 11:10 am

204352

BK 15719 PG 0198

ASSIGNMENT OF LEASE AND AGREEMENT, dated as of March 20, 1998 (as amended, modified or supplemented from time to time, this "Agreement"), from **PRINCIPAL MUTUAL LIFE INSURANCE COMPANY**, an Iowa corporation ("Assignor"), having an address at 711 High Street, Des Moines, Iowa 50392, Attention: Real Estate Equity Team--Southeast, to **FIRST SECURITY BANK, NATIONAL ASSOCIATION and VAL T. ORTON, individually** (together being referred to herein, together with their respective successors and assigns, as "Assignee"), as trustees, each having an address at 79 South Main Street, Salt Lake City, Utah 84111.

To finance a portion of the cost to Assignor of acquiring a fee simple interest in the parcel of land described in Schedule A hereto (the "Land Parcel"), together with the improvements located thereon (the Land Parcel, together with the improvements located and to be located thereon, being referred to herein as the "Property"), Assignor, simultaneously with the execution and delivery hereof, is borrowing certain funds, such borrowing being evidenced by its 6.73% Secured Notes (Series A) due October 1, 2015 and its 6.92% Secured Notes (Series B) due January 1, 2018 (together with Expansion Notes (as defined in the Mortgage referred to below) issued by Assignor and any note or notes issued in exchange or replacement therefor pursuant to the Indenture referred to below, the "Notes"). The Notes are secured by a mortgage, deed of trust, or deed to secure debt, dated as of the date hereof (the "Mortgage"), from Assignor to Assignee, as trustees under the Indenture, dated as of the date hereof (the "Indenture"), between Owner and such trustees, for the benefit of the registered owners of the Notes (the "Note Holders"). The Mortgage creates a lien on Assignor's interest in the Property. The Property has been leased by Assignor to **WINN-DIXIE ATLANTA, INC.**, a Florida corporation ("Lessee"), under a Lease, dated as of the date hereof (together with all supplements and amendments thereto, and any memorandum or short form thereof entered into for the purpose of recording, registration or filing, the "Lease"), between Assignor, as lessor, and Lessee, as lessee. The payment and performance of the obligations of Lessee under the lease have been guaranteed by Winn-Dixie Stores, Inc., a Florida corporation ("Guarantor") pursuant to a guaranty of Lease, dated as of the date hereof (the "Guaranty"). As additional security for the Notes, and in order to induce the purchasers of the Notes to purchase the Notes and induce Assignee to accept the Mortgage, Assignor is entering into the undertakings herein set forth with Assignee.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor agrees as follows:

1.  Assignor, in furtherance of the covenants of the Mortgage and as security for the payment of the principal of, Make Whole Amount (as defined in the Mortgage), and interest and all other sums payable on the Notes, and of all other sums payable under the Mortgage and under the Indenture, and as security for the performance and observance of the provisions thereof, has, assigned, transferred, conveyed and set over, and by these presents does assign, transfer, convey and set over to Assignee, all of Assignor's estate, right, title and interest in, to and under the Lease and the Guaranty, together with all rights, powers, privileges, options and other benefits of Assignor as lessor under the Lease, including, but not by way of limitation, (i) the immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, insurance proceeds, condemnation awards, moneys and security receivable by Assignor under the Lease or the Guaranty or pursuant to any of the provisions thereof, whether as rents or as the purchase price of Assignor's interest in the Property or otherwise (except sums payable directly to any person other than the lessor thereunder), subject to the rights of Lessee under the Lease, (ii) the right to accept or reject any offer by Lessee to purchase the Property, or any part thereof, or any award payable to Assignor in connection with a taking thereof, (iii) the right and power (which right and power are coupled with an interest) to execute and deliver, as agent and attorney-in-fact of Assignor, an appropriate deed or other instrument necessary to convey to Lessee Assignor's interest in the Property, any part

JK2 118033.2 R0130 01056
3/13/98 11:10 am

Lawrenceville, GA

BK 15719 PG0199

thereof or any insurance proceeds or award payable to Assignor in connection with a casualty or taking thereof if Lessee becomes obligated to purchase Assignor's interest in the Property, any part thereof or any insurance proceeds or award payable to Assignor in connection with a casualty or taking thereof or exercises its Substitution Option pursuant to paragraph 11 of the Lease, (iv) the right to perform all other necessary or appropriate acts as said agent and attorney-in-fact with respect to any substitution purchase and conveyance referred to in clause (iii) above, (v) the right to make all waivers and agreements, (vi) the right to give all notices, consents and releases, (vii) the right to give all notices of default and to take any legal action upon the happening of a default under the Lease, including the commencement, conduct and consummation of proceedings at law or in equity as shall be permitted under any provision of the Lease or the Guaranty or by law or in equity (including, without limitation, the right to pursue and collect any claim in a bankruptcy or other insolvency proceeding involving Lessee or Guarantor) and (viii) the right to do any and all other things whatsoever which Assignor or any lessor is or may be entitled to do under the Lease or the Guaranty.

2. While the assignment made in this Agreement is present, direct, exclusive and continuing, it has been made for the purpose of providing security to Assignee for the performance of Assignor's obligations under the Notes, the Mortgage and the Indenture and the execution and delivery hereof shall not in any way impair or diminish the obligations of Assignor under the provisions of the Lease nor shall any of the obligations contained in the Lease be imposed upon Assignee. Upon the due payment of the principal of and Make Whole Amount, if any, and all accrued interest on the Notes and of all other sums payable under the Mortgage and the Indenture, said assignment and all rights herein assigned to Assignee shall cease and terminate and all the estate, right, title and interest of Assignor in and to the above-described assigned property shall revert to Assignor, and Assignee shall, at the request and expense of Assignor, deliver to Assignor an instrument in recordable form canceling this Agreement and reassigning to Assignor the above-described assigned property.

3. Assignor hereby designates Assignee to receive all payments of Basic Rent and Additional Rent (as each such term is defined in the Lease), purchase prices and other sums payable to the lessor under the Lease or pursuant to the Guaranty (except sums payable directly to any person other than the lessor thereunder) and to receive duplicate original copies of all notices, undertakings, demands, statements, documents, financial statements and other communications which Lessee or Guarantor is required or permitted to give, make, deliver to or serve upon the lessor under the Lease or pursuant to the Guaranty. Assignor hereby directs Lessee and Guarantor to deliver to Assignee, at its address set forth above or at such other address as Assignee shall designate, (a) all such payments and sums and (b) duplicate original copies of all such notices, undertakings, demands, statements, documents and other communications. No delivery of the items referred to in clause (b) above by Lessee or Guarantor shall be of any force or effect unless made to Assignor and also made to Assignee, as herein provided.

4. Assignor represents and warrants to Assignee that Assignor has not executed any other assignment of the subject matter of this Assignment other than the Mortgage and the Indenture and that the Lease and the Guaranty are each in full effect and that no event of default has occurred thereunder and that Assignor has no knowledge of the occurrence of any default thereunder.

5. Assignor agrees that the assignment made herein and the designation and direction to Lessee and Guarantor hereinabove set forth are irrevocable, and that it will not take any action as lessor under the Lease or otherwise which is inconsistent with said assignment, or make any other assignment, designation or direction inconsistent therewith, and that any assignment, designation or direction inconsistent therewith shall be void. Assignor will, from time to time upon

JK2 118033.2 80130 01058
3/13/98 11:10 am

2

Lawrenceville, GA

BK 15719 PG 0200

the request of Assignee execute all instruments of further assurance and all such supplemental instruments with respect to this Agreement as Assignee may reasonably specify.

6. Assignor hereby agrees, and hereby undertakes to obtain the agreements of Lessee and Guarantor to the following matters (capitalized terms used in this paragraph and not previously defined shall have the meanings specified in paragraph 6(h)), which undertaking shall be deemed satisfied by Lessee's and Guarantor's execution and delivery of the consent form at the foot of this Agreement:

(a) Lessee and Guarantor consent to the provisions of this Agreement, acknowledge that the indemnities provided for in Sections 20 and 21 of the Lease run for the benefit of Assignee as well as Assignor. Lessee and Guarantor agree to pay and deliver to Assignee all rentals and other sums assigned to Assignee pursuant to this Agreement, without offset, deduction, defense, deferment, abatement or diminution, subject to the provisions of the Lease, and will not, for any reason whatsoever, seek to recover from Assignee any moneys paid to Assignee by virtue of this Agreement. Lessee and Guarantor certify to Assignee that Lessee's obligations to pay rent under the Lease are in effect, that Lessee has no defenses to the payment of rent under the Lease, and that Lessee has an obligation to pay rent under the Lease. Assignor hereby instructs Lessee and Guarantor to pay, and Lessee and Guarantor acknowledge such instruction and agrees that it shall pay, all sums due and payable under the Lease and the Guaranty directly to Assignee in lawful money of the United States by bank wire transfer of immediately available funds on each date on which such sums are due and payable, in accordance with the following funds transfer instructions, accompanied by sufficient information to identify the source and application of such funds, or in accordance with such other instructions as may be specified by Assignee by written notice received by Lessee and Guarantor at the address and in the manner provided in the Lease, at least three (3) Business Days prior to the date on such instructions are to become effective:

> First Security Bank, National Association
> Attn: Corporate Trust Services
> Reference: Winn-Dixie 1998 Transaction
> ABA # 124-000-012
> Acct # 0510922115

Lessee and Guarantor further agree to deliver to Assignee duplicate original copies of all notices, financial statements and other instruments which it may deliver pursuant to the Lease or the Guaranty. No payment made by Lessee or Guarantor or delivery of a copy of any such notice or instrument shall be of any force or effect unless actually received by Assignee.

(b) Assignor and Lessee and Guarantor will not enter into any agreement subordinating, amending, modifying or terminating (except as provided in the Lease and permitted by the terms of the Mortgage) the Lease or the Guaranty without the consent thereto in writing of Assignee and any such attempted subordination, amendment, modification or termination without such consent shall be void; provided, however, that Lessee will be entitled to subordinate its interest in this Lease to interest of Assignees in the Mortgage pursuant to paragraphs 8(f) or 28(e) of the Lease, and Assignees will consent to the subordination as provided in paragraph 8(f) of the Lease. In the event that the Lease or the Guaranty shall be amended as herein permitted, the Lease or the Guaranty as so amended shall continue to be subject to the provisions of this Agreement without the necessity of any further act by any of the parties hereto. Lessee and Guarantor will remain obligated under the Lease and the Guaranty in accordance with its terms, and will not take any action to terminate (except as expressly permitted by the Lease), rescind or avoid the Lease or the Guaranty, notwithstanding any action with respect to the Lease which may be taken by an assignee

BK 15719 PG0201

or receiver of Assignor or of any such assignee or by any court in any such proceeding. Upon any rejection of the Lease by a debtor or by a trustee in bankruptcy (or other similar official) of any debtor owning the interest of lessor under the Lease, Lessee agrees that it will, to the extent it lawfully may, affirmatively elect to continue the Lease and Guarantor will affirm the Guaranty, and will execute and deliver to Assignee any instrument or agreement required therefor, and Lessee and Guarantor hereby, to the extent it lawfully may, waives any and all rights it may have under the U.S. Bankruptcy Code to treat the Lease or the Guaranty as terminated following any such rejection.

(c) If, pursuant to the Lease, Lessee shall offer to purchase the Property (or any insurance proceeds or award payable in connection with a casualty or taking thereof), notice of acceptance or rejection of any such offer shall be deemed validly given for all purposes if given by Assignee as permitted by paragraph 1(ii) hereof and notice by Assignor of rejection of any such offer shall be void unless accompanied by the written consent of Assignee and no such offer shall be deemed rejected by Assignor without the written consent of Assignee. If Lessee shall become obligated to purchase the Property (or any insurance proceeds or award payable in connection with a casualty or taking thereof) pursuant to any provision of the Lease, Lessee will promptly upon tender of delivery thereof, accept a deed and other instruments conveying and transferring the Property (or any insurance proceeds or award payable in connection with a casualty or taking thereof) or exercise a Substitution Option which are executed and delivered by Assignee as attorney-in-fact of Assignor as being in compliance with the provisions of the Lease, provided that said deed and other instruments shall otherwise be in compliance with the provisions of the Lease. If it should become necessary for Assignee or any other party to institute any foreclosure or other judicial proceeding in order that title to the Property (or any insurance proceeds or award payable in connection with a casualty or taking thereof) may be conveyed to Lessee, the time within which delivery of the deed or other instruments relating to such conveyance may be made shall be extended to the extent necessary to permit Assignee or such other party to institute and conclude such foreclosure or other judicial proceeding, and the Lease and the Guaranty shall not terminate, but shall continue in full effect until the conveyance and purchase shall have been consummated.

(d) Guarantor] shall deliver to Assignee:

1. within 45 days after the end of each of the first three fiscal quarters, a balance sheet of Lessee [Guarantor] and its consolidated Subsidiaries, income statement and statement of cash flow for the fiscal year to date and the 12-month period ending with such quarter;

2. (A) within 90 days after the end of each fiscal year, a balance sheet of Lessee [Guarantor] and its consolidated Subsidiaries as of the end of such year, and a statement of its profits and losses and a statement of cash flows, setting forth, in comparative form, the corresponding figures for the preceding fiscal year in reasonable detail and scope and certified to be true and correct by the independent certified public accountants of recognized national standing selected by Lessee [Guarantor] and (B) within 45 days after the end of each of the first three fiscal quarters, a balance sheet of Lessee [Guarantor] and its consolidated Subsidiaries as of the end of such quarter and a statement of profits and losses of Lessee [Guarantor] and its consolidated Subsidiaries for such quarter, all being prepared in accordance with generally accepted accounting principles, consistently applied, except as noted therein; and

BK 15719 PG 0202

3. with reasonable promptness, such additional information regarding the business affairs and financial condition of Lessee [Guarantor] and its consolidated Subsidiaries as Assignee or any Note Holder may reasonably request.

(e) All financial statements shall be accompanied by a certificate signed by the chief financial officer, controller or assistant chief financial officer of Lessee [Guarantor] (a duplicate original of which shall be sent concurrently to Assignor) stating that (i) no default or Event of Default under the Lease has occurred and is continuing or, if any default or Event of Default under the Lease has occurred, specifying the nature and the period of existence thereof and what action Lessee has taken or is taking with respect thereto; (ii) no default or Event of Default under the Lease has occurred since the delivery of the immediately preceding certificate of Lessee [Guarantor] delivered pursuant to this paragraph or, if any default or Event of Default under the Lease has occurred, specifying the nature and the period of existence thereof and what action Lessee has taken or is taking with respect thereto, and (iii) except as otherwise stated, that Lessee and Guarantor have fulfilled all of their obligations under the Lease and the Guaranty.

(f) Lessee [Guarantor] will (i) keep adequate records and books of account reflecting all its financial transactions and in accordance with generally accepted accounting principles and (ii) permit Assignee and Note Holder, by its agents, accountants and attorneys (at Lessee's [Guarantor's] expense if an Event of Default under the Lease or a default under Section 6 of this Assignment has occurred and is continuing) to visit the Property (on reasonable advance notice) and to examine Lessee's [Guarantor's] records and books of account relating to the Property and to discuss its affairs, finances and accounts relating to the Property with its officers and accountants at such reasonable times as may be requested by Assignee or such Note Holder.

(g) Promptly upon becoming aware of it, Lessee and Guarantor will notify Assignee of the occurrence of any Event of Default under the Lease or this Assignment, or of any offer by Lessee to purchase the Property pursuant to the Lease.

(h) "Subsidiary" of a person means a corporation in which such person or such person and one or more of its Subsidiaries directly or indirectly owns voting stock of such corporation and which, under generally accepted accounting principles would be consolidated with such person for financial reporting purposes.

(i) Lessee and Guarantor covenant that they will pay or cause to be paid, and save Assignee and each Note Holder (and each person for whom such Note Holder is a nominee or designee) harmless from and against any and all liability and loss with respect to or resulting from (x) any claim for or on account of the fees of any investment banker, broker, finder, advisor or consultant engaged or allegedly engaged by Lessee or Guarantor (including, without limitation, the investment banking fee of Price & Marshall, Inc., but excluding such firm's debt placement fee with respect to the Notes) with respect to the transactions contemplated by this Agreement, the Lease or the Mortgage, or (y) the nonpayment or delayed payment of any and all stamp and other similar taxes, fees and excises (except income or franchise taxes and any taxes occasioned by any sale or transfer of its Notes), if any, including any interest and penalties, which may be, or be determined to be, payable in connection with the transactions contemplated by this Agreement, the Lease or the Mortgage.

7. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Agreement may be executed in two or more counterparts and shall be deemed to have become effective when and only when one or more of such counterparts shall have been signed by or on behalf of each of the parties hereto, although it shall not be necessary that any single counterpart be signed by or on behalf of each of the parties

BK 15719 PG 0203

hereto, and all such counterparts shall be deemed to constitute but one and the same instrument. This Agreement shall be governed by the laws of the State in which the Property is located.

IN WITNESS WHEREOF, Assignor has caused this Assignment of Lease and Agreement to be signed as of the date first above written.

WITNESS:

*Barbara M. Seamands*
Print name: BARBARA M. SEAMANDS

PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, an Iowa corporation

By: *Karen A. Pearston*
Name: KAREN A. PEARSTON
Title: COUNSEL

NOTARY PUBLIC:

*Julia L. Cutshall*
Print Name:
My Commission Expires:
[NOTARY SEAL]

JULIA L. CUTSH.
MY COMMISSION EXPIRES
May 4, 2000

By: *Terrence M. Tobin*
Name: Terrence M. Tobin
Title: Counsel

WINN-DIXIE STORES, INC. hereby consents to the foregoing Assignment of Lease and Agreement including without limitation paragraph 3 thereof and hereby accepts and agrees to each of the provisions set forth in paragraph 6 thereof.

WITNESS:

*Helen S. Lundquist*
Print name: Helen S. Lundquist

*Amy P. Wiley*
Print name: AMY P. WILEY

WINN-DIXIE STORES, INC.

By: *E. Ellis Zahra*
Name: E. Ellis Zahra, Jr.
Title: VICE PRESIDENT

STATE OF FLORIDA §
§
COUNTY OF DUVAL §

This instrument was acknowledged before me on March 19, 1998, by E. Ellis Zahra, Jr., Vice President of **WINN-DIXIE STORES, INC.**, a Florida corporation, on behalf of said corporation, who is personally known to me.

Notary Public, State of Florida
BRENDA J. BABCOCK
My Comm. Exp. Nov. 20, 1999
Comm. No. CC 511004

Print Name: BRENDA J. BABCOCK
Notary Public, State of Florida
My commission expires: _____
Commission No.: _____

WINN-DIXIE ATLANTA, INC. hereby consents to the foregoing Assignment of Lease and Agreement including without limitation paragraph 3 thereof and hereby accepts and agrees to each of the provisions set forth in paragraph 6 thereof.

WITNESS:

Print name: Helen S. Lundquist

Print name: AMY P. WILEY

**WINN-DIXIE ATLANTA, INC.**
By: _____
Name: E. Ellis Zahra, Jr.
Title: VICE PRESIDENT

STATE OF FLORIDA §
§
COUNTY OF DUVAL §

This instrument was acknowledged before me on March 19, 1998, by E. Ellis Zahra, Jr., Vice President of **WINN-DIXIE ATLANTA, INC.**, a Florida corporation, on behalf of said corporation, who is personally known to me.

Notary Public, State of Florida
BRENDA J. BABCOCK
My Comm. Exp. Nov. 20, 1999
Comm. No. CC 511004

Print Name: BRENDA J. BABCOCK
Notary Public, State of Florida
My commission expires: _____
Commission No.: _____

This document was prepared by Roger L. Ellison, Esq. of Manatt, Phelps & Phillips, 11355 West Olympic Boulevard, Los Angeles, CA 90064.

BK 15719 PG 205

EXHIBIT A

LEGAL DESCRIPTION
WINN DIXIE - LAWRENCEVILLE

All that tract or parcel of land lying and being in Land Lot 47 and 48 of the Seventh Land District in Gwinnett County, Georgia, containing approximately 10.384 acres of land and being more particularly described as follows:

Commencing at the mitered intersection of the Northerly margin of the 100 foot wide right of way for Riverside Parkway with the Westerly margin of the varied right of way for Lawrenceville Suwanee Road;

THENCE South 45 degrees 06 minutes 00 seconds West for a distance of 159.74 feet to a 1/2"rebar set along the Northerly margin of the 110 foot wide right of way for Riverside Parkway, said 1/2" rebar BEING THE TRUE POINT OF BEGINNING;

THENCE South 45 degrees 06 minutes 00 seconds West for a distance of 197.75 feet to a 1/2"rebar set along the Northerly margin of the 110 foot wide right of way for Riverside Parkway;

THENCE along a curve to the left having a radius of 1492.76 feet and an arc length of 18.24 feet, being subtended by a chord of South 44 degrees 44 minutes 30 seconds West for a distance of 18.24 feet to a point on the Northerly margin of the 110 foot wide right of way for Riverside Parkway;

THENCE North 33 degrees 31 minutes 04 seconds West for a distance of 54.27 feet to a 1/2"rebar set;

THENCE North 62 degrees 11 minutes 22 seconds West for a distance of 249.58 feet to a 1/2"rebar set;

THENCE South 47 degrees 53 minutes 04 seconds West for a distance of 133.58 feet to a 1/2"rebar found;

THENCE North 67 degrees 16 minutes 16 seconds West for a distance of 134.11 feet to a 1/2"rebar found;

THENCE South 70 degrees 26 minutes 56 seconds West for a distance of 134.51 feet to a 1/2"rebar found;

THENCE North 44 degrees 12 minutes 45 seconds West for a distance of 151.53 feet to a 1/2"rebar found;

THENCE North 15 degrees 30 minutes 14 seconds West for a distance of 200.18 feet to a 1/2" rebar found;

THENCE North 18 degrees 00 minutes 39 seconds East for a distance of 130.98 feet to a 1/2" rebar found;

THENCE North 29 degrees 21 minutes 33 seconds West for a distance of 38.13 feet to a 1/2 rebar set;

THENCE North 60 degrees 33 minutes 20 seconds East for a distance of 594.87 feet to a 1/2"rebar set along the Westerly margin of the varied right of way for Lawrenceville-Suwanee Road;

THENCE along a curve to the left having a radius of 3879.72 feet and an arc length of 144.16 feet, being subtended by a chord of South 38 degrees 31 minutes 28 seconds East for a distance of 144.15 feet to a point along the Westerly margin of the varied right of way for Lawrenceville-Suwanee Road;

THENCE along a curve to the left having a radius of 28.00 feet and an arc length of 10.62 feet, being subtended by a chord of South 83 degrees 00 minutes 19 seconds West for a distance of 10.56 feet to a point;

THENCE South 50 degrees 29 minutes 41 seconds West for a distance of 65.06 feet to a point;

THENCE South 27 degrees 48 minutes 37 seconds West for a distance of 142.53 feet to a point;

THENCE South 62 degrees 11 minutes 23 seconds East for a distance of 124.79 feet to a point;

THENCE North 27 degrees 48 minutes 37 seconds East for a distance of 22.73 feet to a point;

THENCE along a curve to the left having a radius of 148.00 feet and an arc length of 27.67 feet, being subtended by a chord of North 22 degrees 27 minutes 17 seconds East for a distance of 27.63 feet to a point;

JK 15719 PG 206

THENCE North 17 degrees 05 minutes 58 seconds East for a distance of 23.01 feet to a point;
THENCE along a curve to the right having a radius of 102.00 feet and an arc length of 35.14 feet, being subtended by a chord of North 26 degrees 58 minutes 11 seconds East for a distance of 34.97 feet to a point;
THENCE along a curve to the right having a radius of 212.00 feet and an arc length of 36.74 feet, being subtended by a chord of North 41 degrees 48 minutes 15 seconds East for a distance of 36.69 feet to a point;
THENCE along a curve to the left having a radius of 38.00 feet and an arc length of 30.60 feet, being subtended by a chord of North 23 degrees 41 minutes 54 seconds East for a distance of 29.78 feet to a point along the westerly margin of the varied right of way for Lawrenceville-Suwanee Road;
THENCE along a curve to the left having a radius of 1879.72 feet and an arc length of 267.76 feet, being subtended by a chord of South 43 degrees 00 minutes 00 seconds East for a distance of 267.70 feet to a point along the westerly margin of the varied right of way for Lawrenceville-Suwanee Road;
THENCE South 44 degrees 58 minutes 37 seconds East for a distance of 40.11 feet to a 1/2" rebar set along the westerly margin of the varied right of way for Lawrenceville-Suwanee Road;
THENCE South 28 degrees 05 minutes 50 seconds West for a distance of 168.11 feet to a point;
THENCE along a curve to the left having a radius of 30.00 feet and an arc length of 38.22 feet, being subtended by a chord of South 08 degrees 24 minutes 05 seconds East for a distance of 35.69 feet to a point;
THENCE South 44 degrees 54 minutes 00 seconds East for a distance of 117.61 feet to a 1/2" rebar set along the Northerly margin of the 110 foot wide right of way for Riverside Parkway, said 1/2" rebar ALSO BEING THE TRUE POINT OF BEGINNING.

TOGETHER WITH all that right, title and interest in that certain Reciprocal Easement Agreement between Bronze/Lawrenceville-Suwanee, L.P. and Sunbelt-Dix, Inc. dated May 14, 1996, recorded May 15, 1996 in Deed Book 12698, page 226, aforesaid records.