

Deborah B. Morton
Attorney at Law
State Bar No. 14558980
P.O. Box 142142
Irving, TX 75014-142
(817) 332-3805

ATTORNEY FOR FIRST NATIONAL BANK
OF GRANBURY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| WINN-DIXIE STORES, INC. et al | § | Case no. 05-03817-3F1 |
| | § | |
| Debtors. | § | |

**RESPONSE TO DEBTORS' TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIM**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, First National Bank of Granbury and files this its Response to Debtors' Twenty-Fourth Omnibus Objection to Claims and in support thereof would respectfully show the Court as follows:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157 and §1334.

2. On or about August 25, 1994, Winn-Dixie Texas, Inc., as Tenant, entered into a Lease with Peregrine Properties Limited Partnership for the property known as 4501 N. Interstate Highway I-35, in the City of Lacy Lakeview, Texas; a copy is attached as Exhibit "A". The initial term of the Lease was from September 2, 1994 until August 31, 2014. Quarterly payments of $51,918.30 were due under the terms of the Lease.

3. On or about December 30, 1997, an Assignment and Assumption of Lessor's Interest in the aforesaid Lease was executed by and between Peregrine Properties Limited Partnership, as Assignor, and Paluxy Road Health Care, Inc. and Health Facilities Credit Corporation, as Assignee; a copy is attached as Exhibit "B".

Facilities Credit Corporation, as Assignee; a copy is attached as Exhibit "B".

4.  On or about March 3, 2003, a Note was executed by Paluxy Road Health Care, Inc. and Health Facilities Credit Corporation to First National Bank of Granbury. As additional security for this note, Paluxy Road Health Care, Inc. and Health Care Credit Corporation executed an Absolute Assignment of Leases and Rents to First National Bank of Granbury. A copy of the Assignment is attached hereto as Exhibit "C". Pursuant to the terms of the Assignment, First National Bank became entitled to collect the lease payments.

5.  On or about July 22, 2005, First National Bank filed its proof of Claim in the amount of $2,007,507.60. A copy of the Proof of Claim is attached hereto as Exhibit "D".

6.  At the time of the Rejection of Lease, thirty-eight (38) quarterly payments of $51,918.30 each were still due under the terms of the Lease.

7.  Pursuant to 11 U.S.C. §365, First National Bank of Granbury , as Assignee under the Absolute Assignment of Leases and Rents, is entitled to file a claim for rejection damages.

WHEREFORE, premises considered, First National Bank of Granbury prays that the Court enter an Order denying the Debtors' Twenty-fourth Omnibus Objection to its claim and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Deborah B. Morton
Deborah B. Morton
Attorney at Law
State Bar No. 14558980
P.O. Box 142142
Irving, TX 75014-142
(817) 332-3805

ATTORNEY FOR FIRST NATIONAL
BANK OF GRANBURY

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalties of perjury that a true and correct copy of this Response was served on D. J. Baker, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 at djbaker@skadden.com on October 27, 2006.

/s/   Deborah B. Morton
Deborah B. Morton

LPRH #17

*Lacy Lakeview, Tx*

024897

### SHORT FORM LEASE

THIS SHORT FORM LEASE, made as of this 25th day of August, 1994, between PEREGRINE PROPERTIES LIMITED PARTNERSHIP, AN IOWA LIMITED PARTNERSHIP (hereinafter called "Landlord") and WINN-DIXIE TEXAS, INC., a Texas corporation duly qualified to transact business in the State of Texas (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives successors and assigns of the respective parties;

### WITNESSETH:

That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and demise unto the Tenant, for the term hereinafter specified, the land and improvements thereon located at 4501 N. Interstate Highway 35 (I-35), in the City of Lacy Lakeview, County of McLennan, State of Texas, the legal description of said property being attached hereto as Exhibit "A" and by this reference made a part hereof.

FOR THE **TENANT TO HAVE AND TO HOLD** for an initial term commencing September 2_____, 1994 and expiring at midnight on __August 31____, 2014.

It is further agreed that Tenant, **at its option, shall be entitled to the privilege of** six (6) successive extensions of this Lease, each extension to be for a period of five (5) years and at the same rentals and upon the same terms and conditions as required in the Lease. Such option privilege may be exercised by Tenant giving to the Landlord a notice in writing of at least six (6) months before the expiration of the initial term, and if extended, at least six (6) months before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this Lease shall be so extended without the execution of any other or further document.

IT IS UNDERSTOOD AND AGREED that this is a Short Form Lease which is for the rents and upon the terms, covenants and conditions contained in a certain Lease

APPROVED
AS TO FORM

Division Manager

Legal Dept.
Winn Dixie Stores,
Inc.

This instrument was prepared by
Ronald D. Peterson, Attorney-at-Law
whose address is 5050 Edgewood
Court, Jacksonville, Florida 32254-3699

2414.sfl - 8/24/94

Agreement executed by the partie hereto and bearing even date herewith, which Lease Agreement is and shall be a part of this instrument as fully and completely as if the same were set forth herei.., and the terms of the Lease Agreement shall control over any inconsistencie between the Lease Agreement and this Short Form Lease.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed the day and year first above written.

PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership

By: Equity FC, Ltd., an Iowa corporation, its general partner

By: _Karen A Pearston_

Name: Karen A. Pearston
Title: Counsel

By: _____

Name: LEANNE M SWENSON
Title: Counsel

LANDLORD

WINN-DIXIE TEXAS, INC.,
a Texas Corporation

By _____
   Its    Vice President
Printed Name: James Kufeldt
Address: P. O. Box B
Jacksonville, FL 322003-0297

Attest _____
   Its    Secretary
Printed Name: Wayne E. Ripley, Jr.
Address: P. O. Box B
Jacksonville, FL 322003-0297

TENANT
(CORPORATE SEAL)

2

2414.sfl · 8/24/94

STATE OF _Iowa_ )
COUNTY OF _Polk_ )

This instrument was acknowledged before me this 25th day of August,
1994, by _Karen A. Pearston_, a _Counsel_ of
Equity FC, Ltd., an Iowa corporation, general partner of PEREGRINE PROPERTIES
LIMITED PARTNERSHIP, an Iowa limited partnership, on behalf of said limited partnership
as an act of the partnership.

Given under my hand and official seal this 25th day of August, 1994.

(NOTARIAL SEAL)

_Amy Davis_
NOTARY PUBLIC, State and County aforesaid

My Commission Expires: ___

AMY DAVIS
MY COMMISSION EXPIRES
October 21, 1994

STATE OF _Iowa_ )
COUNTY OF _Polk_ )

This instrument was acknowledged before me this 25th day of August,
1994, by _Leanne M. Swenson_, a _Counsel_ of
Equity FC, Ltd., an Iowa corporation, general partner of PEREGRINE PROPERTIES
LIMITED PARTNERSHIP, an Iowa limited partnership, on behalf of said limited partnership
as an act of the partnership.

Given under my hand and official seal this 25th day of August, 1994.

(NOTARIAL SEAL)

_Amy Davis_
NOTARY PUBLIC, State and County aforesaid

My Commission Expires: ___

AMY DAVIS
MY COMMISSION EXPIRES
October 21, 1994

STATE OF FLORIDA )
)
COUNTY OF DUVAL )

Before me, the undersigned authority, on this day personally appeared
_James Kufeldt_ and _Wayne E. Ripley, Jr._, known to me to be the persons
whose names are subscribed to the foregoing instrument, and known to me to be the Vice
President and ___ Secretary respectively of WINN-DIXIE TEXAS, INC., a Texas
corporation, and acknowledged to me that they executed said instrument for the purposes and
consideration therein expressed, and as the act of said corporation.

Given under my hand and official seal this 24th day of August, 1994.

(NOTARIAL SEAL)

_Jane Elizabeth DeWitt_
NOTARY PUBLIC, State and County aforesaid

My Commission Expires: ___

JANE ELIZABETH DEWITTE
My Comm. Exp. May 12, 1995
Comm. No. CC 261557

3                                                    2414.sfl - 8/24/94

## EXHIBIT A

### Legal Description

Parcel 2, Block A, of the Tri-Cities Park Addition, Part I, to the City of Lacy Lakeview, McLennan County, Texas, according to the plat of said Addition recorded in Volume 1211, Page 859 of the Deed Records of McLennan County, Texas.

TOGETHER WITH the easement rights and benefitting restrictions in favor of Safeway Stores, Incorporated over the property described herein, created by the Easements with Covenants and Restrictions Affecting Land (ECR) dated February 16, 1985 and recorded in Volume 1508, Page 887 of the Deed Records of McLennan County, Texas and as amended by those instruments recorded in Volume 1685, Page 720 and Volume 1685, Page 746 of the Deed Records of McLennan County, Texas, said property being described as follows:

#### ECR PARCEL II

BEING Reserve 2 in Block A of the Tri-Cities Park Addition, Part One, to the City of Lacy Lakeview, McLennan County, Texas, as per plat of said Addition recorded in Vol. 1211, Page 859 of the Deed Records of McLennan County, Texas and containing 293,130.88 square feet or 6.7294 acres of land.

#### ECR PARCEL III

BEING all of Parcel 1, Block A, of Tri-Cities Park Addition, Part One, an Addition in the City of Lacy Lakeview, McLennan County, Texas, as recorded in Vol. 1211, Page 859 of the Deed Records of McLennan County, Texas and containing 135,047.61 square feet or 3.1003 acres of land.

#### ECR PARCEL I-A

BEING all of Reserve 1, Block A, of Tri-Cities Park Addition, Part One, an Addition in the City of Lacy Lakeview, McLennan County, Texas, as recorded in Vol. 1211, Page 859 of the Deed Records of McLennan County, Texas and containing 63,645.28 square feet or 1.4611 acres of land.

## ASSIGNMENT AND ASSUMPTION OF LESSOR'S INTEREST IN LEASE

STATE OF TEXAS    )
                    )   KNOW ALL BY THESE PRESENTS:
COUNTY OF MCLENNAN )

    This Agreement by and between PEREGRINE PROPERTIES LIMITED PARTNERSHIP, an Iowa limited partnership (hereinafter called "Assignor"), and PALUXY ROAD HEALTH CARE, INC. & HEALTH FACILITIES CREDIT CORPORATION (hereinafter called "Assignee").

### W I T N E S S E T H :

    WHEREAS, Assignor as lessor entered into that certain lease dated August 25, 1994 between Assignor as landlord and Winn-Dixie Texas, Inc. as lessee (herein called the "Lease"); and

    WHEREAS, Assignor now desires to transfer and assign to Assignee all of Assignor's interest in and to the lessor's rights, obligations and interest under the Lease.

    NOW, THEREFORE, in consideration of the premises and other good and valuable consideration in hand paid to Assignor, the receipt and sufficiency of which is hereby acknowledged, Assignor does hereby grant, convey, transfer and assign to Assignee, its successor and assigns, all of Assignor's interest in the Lease, covering all or portions of the real property described in Exhibit "A" attached hereto and made a part hereof. Assignor is also hereby assigning and transferring to Assignee any security deposits held by Assignor under the Lease. Assignee hereby assumes any and all obligations of Assignor under such leases which accrue on or after the date hereof and agrees to perform all of the terms, covenants, and conditions of the Lease which accrue on or after the date hereof on part of Assignor required therein to be performed.

-2-

EXECUTED this _24th_ day of December, 1997, to be effective on December _30_,
1997.

ASSIGNOR

PEREGRINE PROPERTIES LIMITED
PARTNERSHIP, an Iowa limited partnership

By:  EQUITY FC, LTD., an Iowa corporation,
General Partner

By: _____  Gregory C. Hauser
Title: _____  Vice President

By: _____  Clint Woods
Title: _____  Counsel


ASSIGNEE

PALUXY ROAD HEALTH CARE, INC.

By: _____
Title: _____  JOHN B. HIGGINS, PRESIDENT


HEALTH FACILITIES CREDIT
CORPORATION

By: _____
Title: _____  JOHN B. HIGGINS, PRESIDENT

STATE OF IOWA    )
                          )
COUNTY OF POLK   )

      On this 23rd day of December, 1997, before me, a Notary Public in and for said County, personally appeared Gregory C. Hauser and Clint Woods, to me known to be the persons who executed the within instrument as the Vice President and Counsel, respectively, of EQUITY FC, LTD, as the general partner of Peregrine Properties Limited Partnership, and they being duly sworn did state that said instrument was signed on behalf of the said corporation by authority of its board of directors, and the aforesaid officers each acknowledged the execution of said instrument to be the voluntary act and deed of said corporation, by and of each of them voluntarily executed.

_Shelley Daramus_

Notary Public in and for said County and State

SHELLEY DARAMUS
MY COMMISSION EXPIRES
May 19, 2000

STATE OF TEXAS       §
                         §

COUNTY OF DALLAS    §

       BEFORE ME, the undersigned authority, a Notary Public in and for said State, on this day personally appeared JOHN B. HIGGINS, the PRESIDENT, of both PALUXY ROAD HEALTH CARE, INC. and HEALTH FACILITIES CREDIT CORPORATION, each a Texas corporation, known to me to be the person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that he signed the same as a duly authorized officer of each such corporation for the purpose and consideration therein expressed and in the capacity therein stated, as the act and deed of each such corporation.

       GIVEN UNDER MY HAND AND SEAL OF OFFICE this 29th day of December, 1997.

_____
Notary Public in and for the State of Texas

JoANNA E. DRAKE
Notary Public
State of Texas
Commission Expires 7-5-99

EXHIBIT "A"

Legal Description

Parcel 2, Block A, of the Tri-Cities Park Addition, Part I, to the City of Lacy Lakeview, McLennan County, Texas, according to the plat of said Addition recorded in Volume 1211, Page 859 of the Deed Records of McLennan County, Texas.

TOGETHER WITH the easement rights and benefiting restrictions in favor of Safeway Stores, Incorporated over the property described herein, created by the Easements with Covenants and Restrictions Affecting Land (ECR) dated February 16, 1985 and recorded in Volume 1508, Page 887 of the Deed Records of McLennan County, Texas and as amended by those instruments recorded in Volume 1685, Page 720 and Volume 1685, Page 794 of the Deed Records of McLennan County, Texas, said property being described as follows:

### ECR PARCEL II

BEING Reserve 2 in Block A of the Tri-Cities Park Addition, Part One, to the City of Lacy Lakeview, McLennan County, Texas, as per plat of said Addition recorded in Vol. 1211, Page 859 of the Deed Records of McLennan County, Texas and containing 293,130.88 square feet or 6.7294 acres of land.

### ECR PARCEL III

BEING all of Parcel 1, Block A, of Tri-Cities Park Addition, Part One, an Addition in the City of Lacy Lakeview, McLennan County, Texas, as recorded in Vol. 1211, Page 859 of the Deed Records of McLennan County, Texas and containing 135,047.61 square feet or 3.1003 acres of land.

### ECR PARCEL I-A

BEING all of Reserve 1, Block A, of Tri-Cities Park Addition, Part One, an Addition in the City of Lacy Lakeview, McLennan County, Texas, as recorded in Vol. 1211, Page 859 of the Deed Records of McLennan County, Texas and containing 63,645.28 square feet or 1.4611 acres of land.

---

Not part of legal

Waco (-35), Texas
D-750416

DL:bg:s:750416:exha
12/11/97

## ABSOLUTE ASSIGNMENT OF LEASES AND RENTS

THIS ABSOLUTE ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made on March 3, 2003, by PALUXY ROAD HEALTH CARE, INC. and HEALTH FACILITIES CREDIT CORPORATION, (hereinafter called" Assignor") to FIRST NATIONAL BANK OF GRANBURY (hereinafter called" Assignee");

### WITNESSETH

Assignor, in consideration of the sum of Ten Dollars ($10.00) cash in hand paid and other good and valuable consideration paid by Assignee, the receipt and sufficiency of which are hereby acknowledged, does hereby absolutely and unconditionally GRANT, CONVEY, ASSIGN, TRANSFER and SET OVER unto Assignee the following:

1. All rights, title, interests, estates, powers, privileges, options and other benefits of Assignor in, to and under the lease agreements which now or in the future, from time to time, cover or affect all or any portion of the properties described

Being Parcel Two (2) Block A of Tri-Cities Park Addition, Part 1, to the City of Lacy Lakeview, McLennan County, Texas, according to the Plat of said Addition duly recorded in Volume 1211, Page 859 Deed Records, McLennan County, Texas

TOGETHER with Easement Rights and Benefitting Restrictions in favor of Safeway Stores, Incorporated, over the property described herein created by the easements with covenants and restrictions affecting land (ECR) dated February 16, 1985, and recorded in Volume 158, Page 887 of the Deed Records of McLennan County, Texas, and as amended by those instruments recorded in Volume 1685, Page 720 and Volume 1685, Page 746 of the Deed Records of McLennan County, Texas, said property being described as follows:

ECR PARCEL II: BEING Reserved 2 in Block A of Tri-Cities Park Addition, Part One, to the City of Lacy Lakeview, McLennan County, Texas, as per Plat of said addition recorded in Volume 1211, Page 859 of the Deed Records of McLennan County, Texas, and containing 293,130.88 square feet or 6.7294 acres of land.

ECR PARCEL III: BEING all of Parcel 1, Block A of Tri-Cities Park Addition, Part One, an addition in the City of Lacy Lakeview, McLennan County, Texas, as recorded in Volume 1211, Page 859 of the Deed Records of McLennan County, Texas, and containing 135,047.61 square feet or 3.1003 acres of land.

ECR PARCEL I-A: BEING all of Reserve 1, Block A of Tri-Cities Park Addition, Part One, an Addition in the City of Lacy Lakeview, McLennan County, Texas, as recorded in Volume 1211, Page 859 of the Deed Records of McLennan County, Texas, and containing 63,64528 square feet or 1.4611 acres of land.,

RETURN TO: 572800GS
Chicago Title Insurance Company
6688 N. Central Expressway, Suite 560
Dallas, Texas 75206  214-361-6771

and the improvements located thereon (said properties and improvements hereinafter called the "Subject Property") together with all renewals, extensions, modifications, amendments, subleases and assignments of such lease agreements (such lease agreements, renewals, extensions, modifications, amendments, subleases and assignments hereinafter called the "Leases"); and

    2.    all of the rents, income, receipts, revenues, issues, profits, receivables and other sums of money (hereinafter collectively called the "Rents") that are now and/or at any time hereafter become due and payable to Assignor under the terms of the Leases or arising or issuing from or out of the Leases or from or out of the Subject Property or any part thereof, including but not limited to minimum rents, additional rents, percentage rents, deficiency rents and liquidated damages following default, security deposits, advance rents, daily rents or room charges, all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Subject Property and all of Assignor's rights to recover monetary amounts from any lessee in bankruptcy including, without limitation, rights of recovery for use and occupancy and damage claims arising out of lease defaults, including rejections, under the Federal Bankruptcy Code, including specifically the immediate and continuing right to collect and receive each and all of the foregoing; and

    3.    any and all guaranties of payment of the Rents.

    This Assignment is made by Assignor to provide a direct and continuing source of payment (currently and in the future) of the following note, obligations, indebtedness and liabilities: (a) one certain promissory note of even date herewith in the principal amount of $1,560,880.91 made by Assignor and payable to the order of Assignee, with interest at the rate or rates therein provided, both principal and interest being payable as therein provided, and all amounts remaining unpaid thereon being finally due and payable on As provided in the note, unless matured earlier under the call provisions of the note, containing a provision for the payment of a reasonable additional amount as attorneys' fees, and all other notes given in substitution therefor or in modification, increase, renewal or extension thereof, in whole or in part, such note and all other notes given in substitution therefor or in modification, increase, renewal or extension thereof, in whole or in part, (hereinafter called the "Note"); and (b) all indebtedness now or hereafter incurred or arising pursuant to the provisions of, or secured by, the Deed of Trust, Mortgage and Security Agreement of even date herewith (hereinafter called the "Mortgage") made by Assignor to secure the payment of the Note and covering the Subject Property and certain other property described therein; SUBJECT, HOWEVER, to the terms, provisions and conditions set forth in this Assignment. Notwithstanding any provision herein to the contrary, Assignee hereby agrees that unless and until an event of default occurs under the Note or Mortgage, Assignee will not exercise any of the remedies contained herein.

    1.    Assignor hereby represents and warrants unto Assignee that Assignor is the sole owner of the entire lessor's interest in the Leases and has good title and good right to assign the Leases and Rents hereby assigned and no other person or entity has any right, title or interest therein; that Assignor has duly and punctually performed all of the terms, covenants, conditions and warranties of the Leases that were to be kept, observed and performed by it; that Assignor has not at any time prior to the date hereof exercised any right to subordinate any Lease to any deed of trust or mortgage or any other encumbrance of any kind; that Assignor has not executed any prior assignments of the Leases or the Rents thereunder; that no Rents reserved in any

Lease have been anticipated and no Rents for any period subsequent to the date of this Assignment have been collected in advance of the time when the same became due under the terms of the applicable Lease; that Assignor has performed no act or executed any other instrument which might prevent Assignee from enjoying and exercising any of its rights and privileges evidenced hereby; that each of the Leases is valid and subsisting and in full force and effect and unmodified; that there exists no defense, counterclaim or set-off to the payment of the Rents under the Leases; and that there are no defaults now existing under the Lease and no event has occurred which with the passage of time or the giving of notice, or both, would constitute such a default.

2.    Assignor agrees that, so long as the indebtedness evidenced by the Note or any part thereof or any other indebtedness secured by the Mortgage shall remain unpaid, Assignor (having no assignable rights therein) will make no attempted assignment, pledge or disposition of the Leases or the Rents thereunder; nor will Assignor attempt to subordinate any of the Leases to any deed of trust or mortgage or any other encumbrance of any kind or permit, consent or agree to such subordination; nor will Assignor reduce the Rents payable under any of the Leases, modify, alter or amend the Leases or waive, excuse, condone, discount, set off, compromise or in any manner release or discharge any lessee under any Lease of and from any obligations, covenants, conditions and agreements to be kept, observed and performed by the lessee, including the obligation to pay the Rents thereunder in the manner and at the place and time specified therein; nor will Assignor incur any indebtedness to a lessee under or guarantor of any Lease which may under any circumstance be used as an offset against the Rents or other payments due under said Lease; nor will Assignor exercise any option required or permitted by the terms of any of the Leases without the prior written consent of Assignee; nor will Assignor receive or collect any Rents from any present or future lessee of the Subject Property or any part thereof except in trust for Assignee in accordance with the express provisions hereof, and then only for such periods not to exceed one month in advance of the date on which such payment is due; nor will Assignor cancel or terminate any of the Leases, accept a surrender thereof, commence an action of ejectment or any summary proceedings for dispossession of a lessee under any of the Leases, or conveyor transfer or suffer or permit a conveyance or transfer of the premises demised thereby or of any interest therein so as to effect directly or indirectly, proximately or remotely, a merger of the estates and rights of, or a termination or diminution of the obligations of any lessee thereunder; nor will Assignor consent to an assignment or sublease of the interest and estate of any lessee under any of the Leases, whether or not in accordance with its terms; nor will Assignor modify or change the terms of any guaranty of any of the Leases or cancel or terminate such guaranty; nor will Assignor enter into additional leases covering any portion of the Subject Property, or renew or extend the term of any Lease unless an option therefor was originally reserved by the lessee in the Lease for a fixed and definite rental, or relocate or expand the floor space of any lessee under a Lease within the Subject Property, without first having obtained the written consent of Assignee; and any such acts, if done or permitted to be done without the prior written consent of Assignee, shall be null and void.

3.    Assignor covenants with Assignee, for so long as the indebtedness evidenced by the Note or any part thereof or any other indebtedness secured by the Mortgage shall remain unpaid, to observe and perform duly and punctually all the obligations imposed upon any lessor under the Leases and not to do or permit to be done anything to impair the value thereof; to enforce the performance of each and every term, provision, covenant, agreement and condition in the Leases to be performed by any lessee thereunder; to appear in and defend any action or proceeding arising under, occurring out of or in any manner connected with any of the Leases, or the obligations, liabilities or duties of Assignor or any lessee under the Leases and, upon request by Assignee, to make appearance in the name and on behalf of the Assignee, but at the expense of Assignor; to

ABSOLUTE ASSIGNMENT OF LEASES AND RENTS - Page 3

exercise any option or election contained in or relating to any of the Leases which Assignee shall require; at Assignee's request to assign and transfer to Assignee by specific Assignment of Leases and Rents, in the form of this Assignment, any and all subsequent Leases upon all or any part of the Subject Property (it being understood and agreed that no such specific assignment shall be required for such subsequent Leases to be covered by and included within this Assignment as provided herein); to deliver to Assignee executed copies of any and all Leases, renewals and extensions of existing Leases and any and all subsequent Leases upon all or any part of the Subject Property; and to execute and deliver at the request of Assignee all such further assurances and assignments in the premises covered by the Leases or Rents as Assignee shall from time to time require and to deliver other records and instruments, including but not limited to rent rolls and books of account, that Assignee shall from time to time require.

4.    Assignor covenants to receive any and all Rents as a fund held in trust to be applied for the benefit of and as directed by Assignee for payment of the Note and Mortgage, the indebtedness evidenced thereby and the obligations of the Subject Property as set forth herein. In accordance with such trust, Assignor hereby covenants so to apply the Rents, before using any part of the same for any other purposes, first, to the payment of taxes and assessments upon the Subject Property before penalty or interest is due thereon; second, to the cost of insurance, maintenance and repairs required by the terms of the Mortgage; third, to the satisfaction of all obligations specifically set forth in the Leases; and, fourth, to the payment of interest and principal becoming due on the Note and the Mortgage. However, Assignor may only collect such Rents on behalf of Assignee until the occurrence of a default specified in the Mortgage and the issuance by Assignee of a notice of such default (hereinafter called a "Notice of Default") to the lessees under the Leases. Upon receipt from Assignee of a Notice of Default, each lessee under the Leases is hereby authorized and directed to pay directly to Assignee (being the owner thereof) all Rent thereafter accruing and the receipt of Rent by Assignee as provided herein shall be a release of such lessee to the extent of all amounts so paid. The receipt by a lessee under the Leases of a Notice of Default shall be sufficient authorization for such lessee to make all future payments of Rents directly to Assignee and each such lessee shall be entitled to rely on such Notice of Default and shall have no liability to Assignor for any Rents paid to Assignee after receipt of such Notice of Default. Rents received by Assignee after giving a Notice of Default for any period prior to foreclosure under the Mortgage or acceptance of a deed in lieu of such foreclosure shall be applied by Assignee to the payment (in such order as Assignee shall determine) of: (a) all expenses of managing the Subject Property, including but not limited to the salaries, fees and wages of a managing agent and such other employees as Assignee may deem necessary or desirable; all expenses of operating and maintaining the Subject Property, including but not limited to all taxes, assessments, charges, claims, utility costs and premiums for insurance, and the cost of all alterations, renovations, repairs or replacements; all expenses incident to taking and retaining possession of the Subject Property and/or collecting the Rents due and payable under the Leases; and (b) the Note and other indebtedness secured by the Mortgage, principal, interest, attorneys' and collection fees and other amounts, in such order as Assignee in its sole discretion may determine. In no event will this Assignment reduce the indebtedness evidenced by the Note or otherwise secured by the Mortgage, except to the extent, if any, that Rents are actually received by Assignee and applied upon (after said receipt) to such indebtedness in accordance with the preceding sentence. Without impairing its rights hereunder, Assignee may, at its option, at any time and from time to time, release to Assignor Rents so received by Assignee or any part thereof. As between Assignor and Assignee, and any person claiming by, through or under Assignor, other than any lessee under the Leases who has not received a Notice of Default pursuant to this Paragraph, this Assignment is intended to be absolute, unconditional and presently effective and the provisions of this Paragraph for notification of lessees

under the Leases upon the occurrence of a default specified in the Mortgage are intended solely for the benefit of each such lessee and shall never inure to the benefit of Assignor or any person claiming by, through or under Assignor (other than a lessee who has not received such notice). It shall never be necessary for Assignee to institute legal proceedings of any kind whatsoever to enforce the provisions of this Paragraph or this Assignment.

5.    Assignor covenants that at any time during which Assignor is receiving Rents directly from lessees under the Leases, Assignor shall, upon receipt of written direction from Assignee, make demand and/or sue for all Rents due and payable under one or more Leases, as directed by Assignee, as it becomes due and payable, including Rents which are past due and unpaid. In the event Assignor fails to take such action, or at any time during which Assignor is not receiving Rents directly from lessees under the Leases, Assignee shall have the right (but shall be under no duty) to demand, collect and sue for, in its own name or in the name of Assignor, all Rents due and payable under the Leases, as it becomes due and payable, including Rents which are past due and unpaid.

6.    Assignor agrees that Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Subject Property, or any part thereof, or from any other act or omission of Assignee under or relating to the Leases, unless such loss is caused by the gross negligence or willful misconduct of Assignee, nor shall Assignee be obligated to perform or discharge any obligation, duty or liability under the Leases by reason of this instrument or the exercise of rights or remedies hereunder. Assignee shall not be liable for its failure to collect, or its failure to exercise diligence in the collection of, Rents under the Leases, but shall be accountable only for Rents that Assignee actually receives. Assignor will indemnify and hold harmless Assignee (for purposes of this Paragraph, the term "Assignee" shall include the directors, officers, partners, employees and agents of Assignee and any persons or entities owned or controlled by, owning or controlling, or under common control or affiliated with Assignee) from and against, and reimburse Assignee for, all claims, demands, liabilities, losses, damages, causes of action, judgments, penalties, costs and expenses (including without limitation, reasonable attorneys' fees and costs of appeal) incurred under the Leases by reason of this instrument or the exercise of rights or remedies hereunder, or which may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases, including specifically any obligation or responsibility for any security deposits or other deposits delivered to Assignor by any lessee under any Lease and not actually delivered to Assignee. The indemnities contained in this Paragraph shall include claims, demands, losses, damages, causes of action, judgments, penalties, costs and expenses (including without limitation, reasonable attorneys' fees) resulting from the negligence of Assignee, but not the gross negligence or willful misconduct of Assignee. The foregoing indemnities shall not terminate upon release or other termination of this Assignment. Any amount to be paid under this Paragraph by Assignor to Assignee shall be a demand obligation owing by Assignor to Assignee, shall bear interest from the date such amount becomes due until paid at the rate of interest payable on matured but unpaid principal of or interest on the Note and shall be secured by the Mortgage and by any other instrument securing the Note. This Assignment of Leases and Rents shall not operate to place responsibility upon Assignee for the control, care, management or repair of the Subject Property, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Subject Property by the tenants or by any other parties or for any dangerous or defective condition of the Subject Property, or for any negligence in the

ABSOLUTE ASSIGNMENT OF LEASES AND RENTS - Page 5

management, upkeep, repair or control of the Subject Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

7.    Assignor agrees that this Assignment is primary in nature to the obligation evidenced and secured by the Note, the Mortgage and any other document given to secure and collateralize the indebtedness secured by the Mortgage and that any default under this Assignment is and shall be a default under the Mortgage. Assignor agrees that Assignee may enforce this Assignment without first resorting to or exhausting any security or collateral securing the payment of the Note; provided however, that nothing herein contained shall prevent Assignee from suing on the Note, foreclosing the Mortgage or exercising any other right under any document securing the payment of the Note or at law or in equity.

8.    Assignor covenants and agrees that so long as the indebtedness under the Note and Mortgage or any indebtedness secured by the Mortgage remain unpaid, in the event any lessee under the Leases should be the subject of any proceeding under the Federal Bankruptcy Code or any other federal, state or local statute which provides for the possible termination or rejection of any of the Leases assigned hereby, if any Lease is so rejected, no settlement for damages shall be made without the prior written consent of Assignee, and any check in payment of damages for rejection of any such Lease will be made payable to Assignee to the fullest extent permitted by law. Assignor hereby assigns any such payment to Assignee and further covenants and agrees that upon the request of Assignee, it will duly endorse to the order of Assignee any such check, the proceeds of which will be applied to the Note and other indebtedness secured by the Mortgage, principal, interest, attorneys' and collection fees and other amounts, in such order as Assignee in its sole discretion may determine.

9.    Assignor agrees with Assignee that nothing contained herein and no act done or omitted by Assignee pursuant to the powers and rights granted Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note and the Mortgage or a waiver or curing of any default hereunder or under the Note or the Mortgage, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of the Note and the Mortgage. The right of Assignee to collect said principal sum, interest and indebtedness and to enforce any security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

10.    If the Note and all other indebtedness secured by the Mortgage is paid as the same becomes due and payable and if all of the covenants, warranties, undertakings and agreements made in the Mortgage and in this Assignment are kept and performed, then this Assignment shall become null and void and of no further force and effect and Assignee shall then reassign all Rents to Assignee, at Assignee's expense. No lessee under the Leases shall be required to take notice of such termination until a copy of a release of the Mortgage and re-assignment of the Rents shall have been delivered to such lessee.

11.    Assignor agrees that Assignee may take or release any security for the payment of this Note and other indebtedness secured by the Mortgage, may release any party primarily or secondarily liable therefor and may apply any security held by it to the satisfaction of the Note and such other indebtedness secured by the Mortgage without prejudice to any of its rights under this Assignment.

ABSOLUTE ASSIGNMENT OF LEASES AND RENTS - Page 6

12.    Assignor agrees that Assignee may at any time and from time to time in writing (a) waive compliance by Assignor with any covenant herein made by Assignor to the extent and in the manner specified in such writing; (b) consent to Assignor doing any act which hereunder Assignor is prohibited from doing, or consent to Assignor failing to do any act which hereunder Assignor is required to do, to the extent and in the manner specified in such writing; or ( c) release any part of the Subject Property and/or the Leases, or any interest therein, from this Assignment. No such act shall in any way impair the rights of Assignee hereunder except to the extent specifically agreed to by Assignee in such writing.

13.    Assignor agrees that the rights and remedies of Assignee hereunder shall not be impaired by any indulgence, including but not limited to (a) any renewal, extension or modification which Assignee may grant with respect to any indebtedness secured by the Mortgage, (b) any surrender, compromise, release, renewal, extension, exchange or substitution which Assignee may grant in respect of the Subject Property and/or the Leases and/or the Rents or any part thereof or any interest therein, or (c) any release or indulgence granted to any endorser, guarantor or surety of any indebtedness secured hereby.

14.    Assignor agrees that a determination that any provision of this Assignment is unenforceable or invalid shall not affect the enforceability or validity of any other provision and any determination that the application of any provision of this Assignment to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

15.    Assignor agrees that notwithstanding (a) the fact that any Lease or the leasehold estate created thereby may be held, directly or indirectly, by or for the account of any person or entity which shall have an interest in the fee estate of the Subject Property, (b) the operation of law or (c) any other event, lessee's leasehold estate under such Lease shall not merge into the fee estate and the lessee shall remain obligated under such Lease as assigned by this Assignment.

16.    Assignor agrees and covenants with Assignee that this Assignment and the terms, provisions, representations and warranties herein contained shall be binding upon Assignor and Assignor's successors and assigns, and all subsequent owners of the Subject Property and shall inure to the benefit of Assignee and Assignee's successors and assigns, including all subsequent holders of the Note and the Mortgage. All reference in this Assignment to Assignor or Assignee shall be deemed to include all such successors and assigns of such respective party.

17.    Assignor agrees that within this Assignment, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural and words in the plural number shall be held and construed to include the singular, unless the context otherwise requires.

18.    Assignor agrees that this Assignment may be executed in any number of counterparts with the same effect as if all parties hereto had signed the same document. All such counterparts shall be construed together and shall constitute one instrument, but in making proof hereof it shall only be necessary to produce one such counterpart.

ABSOLUTE ASSIGNMENT OF LEASES AND RENTS - Page 7

19.    Assignor agrees and covenants with Assignee that this Assignment shall not be construed or deemed made for the benefit of any third party or parties.

20.    This Assignment shall be construed in accordance with and shall be subject to the laws of the State of Texas.

21.    This Assignment contains the entire agreement concerning the assignment by Assignor of the Leases and the Rents thereunder between the parties hereto. No variations, modifications or changes herein or hereof shall be binding upon any party hereto, unless set forth in a document duly executed by or on behalf of such party.

IN WITNESS WHEREOF, Assignor has executed this Assignment of Leases and Rents as of the date first above written.

HEALTH FACILITIES CREDIT CORPORATION

BY: _____
    JOHN D. HIGGINS, President

PALUXY ROAD HEALTH CARE, INC.

BY: _____
    JOHN D. HIGGINS, President

STATE OF TEXAS
COUNTY OF Dallas

This instrument was acknowledged before me the 3rd day of March, 2003, by JOHN D. HIGGINS, President of **HEALTH FACILITIES CREDIT CORPORATION, a Texas corporation,** on behalf of the corporation.

_____
Notary Public State of Texas

> CHARITA A CARRION
> NOTARY PUBLIC
> State of Texas
> Comm. Exp. 05-04-2005

STATE OF TEXAS
COUNTY OF Dallas

This instrument was acknowledged before me the 3rd day of March, 2003, by JOHN D. HIGGINS, President of **PALUXY ROAD HEALTH CARE INC., a Texas corporation,** on behalf of the corporation.

_____
Notary Public State of Texas

> CHARITA A CARRION
> NOTARY PUBLIC
> State of Texas
> Comm. Exp. 05-04-2005

ABSOLUTE ASSIGNMENT OF LEASES AND RENTS - Page 8

After recording return to:
FIRST NATIONAL BANK OF GRANBURY
P.C. Box 400
Granbury, TX 76048

RETURN TO: 5928009S
Chicago Title Insurance Company
6688 N. Central Expressway, Suite 560
Dallas, Texas 75206  214-361-8771

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

J.A. "Andy" Harwell

2003 MAR 07  08:30 AM 2003009394
INGE $25.00
J.A. "ANDY" HARWELL ,COUNTY CLERK
MCLENNAN COUNTY, TEXAS

ABSOLUTE ASSIGNMENT OF LEASES AND RENTS - Page

FORM B10 (Official Form 10) (04/04)

| United States Bankruptcy Court – **Middle District of Florida, Jacksonville Division** | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>**Winn-Dixie Montgomery, Inc. et al** | Case Number<br>**05-03817-3F1-11** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**First National Bank of Granbury**

Name and address where notices should be sent:
**First National Bank of Granbury**
**P.O. Box 400**
**Granbury, TX 76048**

Telephone number:  **817 408-2237**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

This Space is for Court Use Only

| Account or other number by which creditor identifies debtor:<br>**6045264** | Check here if this claim | ☐ replaces<br>☐ amends | a previously filed claim dated:_____ |
|---|---|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ■ Other **Rejection of Lease**

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #:
  Unpaid compensation for services performed
  from _____ to _____
      (date)            (date)

**2. Date debt was incurred:**  **August 25, 1994**

**3. If court judgment, date obtained:**  **NA**

**4. Total Amount of Claim at Time Case Filed:** $ **2,007,507.60**          _____   _____   **2,007,507.60**
                                              (unsecured)       (secured)      (priority)      (Total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☐ Other _____

Value of Collateral: $ _____

Amount of arrearage and other charges <u>at time case filed</u> included in the secured claim, if any: $ _____

**6. Unsecured Nonpriority Claim** $ **2,007,507.60**
■ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

This Space is for Court Use Only

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

| Date<br><br>**July 22, 2005** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>*Deborah B. Morton — Attorney for*<br><br>**Deborah B. Morton, Attorney**     *FNB Granbury* |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## SUMMARY OF EXHIBITS

Exhibit "A"   -   Short Form Lease dated August 25, 1994 by and between Peregrine Properties Limited Partnership, an Iowa Limited Partnership, and Winn-Dixie Texas, Inc. for the property known as 4501 N. Interstate Highway 35, City of Lacy Lakeview, McLennan County, Texas.

Exhibit "B"   -   Assignment and Assumption of Lessor's Interest in Lease by and between Peregrine Properties Limited Partnership, as Assignor, and Paluxy Road Health Care, Inc. & Health Facilities Credit Corporation, as Assignee.

Exhibit "C"   -   Absolute Assignment of Leases and Rents by and between Paluxy Road Health Care, Inc. and Health Facilities Credit Corporation, as Assignor, and First National Bank of Granbury, as Assignee.

## CALCULATION OF CLAIM AMOUNT

On February 23, 2005, an Order was entered Authorizing the Debtors to Reject Certain Real Property Leases effective as of February 25, 2005. The Lease covering the property known as 4501 N. Interstate Highway 35, City of Lacy Lakeview, McLennan County, Texas, was one of those rejected.

Under the terms of the Lease, quarterly payments of $51,918.30 were due and payable until August 31, 2014. The next payment due under the Lease was due on March 31, 2005. The claim amount was calculated as follows:

($51,918.30 x 38 remaining quarters) + ($51,918.38 x 2/3) = $2,007,507.60

Copies of the aforesaid documents are available upon written request to:

Deborah B. Morton
616 Texas Street, Suite 101
Ft. Worth, TX 76102