Hearing Date: November 30, 2006, 1:00 p.m.
Objection Deadline: November 23, 2006, 4:00 p.m.

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |
| | ) | |

## MOTION FOR ORDER APPROVING SETTLEMENT WITH
## XL INSURANCE AMERICA, INC. AND MARSH USA, INC.

Winn-Dixie Stores, Inc. ("WDSI") and twenty-three of its subsidiaries and affiliates,

as debtors and debtors-in-possession (collectively with WDSI, the "Debtors"), move for

entry of an order under 11 U.S.C. §§ 105(a) and 363(b) and Fed. R. Bankr. P. 9019

authorizing and approving a settlement among (a) WDSI, and (b) XL Insurance America,

Inc. ("XL") and Marsh USA, Inc. ("Marsh").  In support of the Motion, the Debtors

respectfully represent as follows:

### Background

1.     On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary

petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11

U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors' cases are being

jointly administered for procedural purposes only.

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases.  An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4.      The Debtors have filed the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (as modified, the "Chapter 11 Plan"), which is currently pending before the Court following a confirmation hearing held on October 13, 2006.  If the Chapter 11 Plan is confirmed by order of the Court, the Chapter 11 Plan will become effective on the date on which the conditions precedent to its effectiveness are satisfied or waived.

5.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief requested in the Motion are sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 9019").

## Relief Requested

7.    By this Motion, the Debtors seek an order of the Court authorizing and approving a settlement substantially on the terms set forth in the Settlement Agreement attached as Exhibit A (the "Settlement Agreement"), between WDSI on the one hand and XL and Marsh on the other hand.  The Settlement Agreement contains the following general terms[2]:

(a)    XL and Marsh will collectively pay WDSI $7.0 million (the "Settlement Sum") for hurricane losses WDSI sustained during the 2004 Hurricane Season (defined below).

(b)    In exchange for payment of the Settlement Sum, WDSI will release XL and Marsh from all claims, damages, losses, causes of action, costs and expenses that WDSI could have asserted against them with respect to procurement of the Policy (defined below) or indemnity under the Policy for losses sustained during the 2004 Hurricane Season and will promptly file a motion seeking dismissal of the Action (defined below).

(c)    XL and Marsh agree that they will not initiate or file any claim or action against WDSI, any insurer of WDSI, or any other person or entity, for payment or reimbursement of the Settlement Sum.  XL and Marsh also agree to waive any rights of subrogation they may have under the Policy with respect to the matters covered by the Settlement Agreement.

## Background of Insurance Dispute

8.    In 2004, WDSI required commercial property insurance to guard against a variety of perils that could harm and disrupt its business as a major retail food chain, including "windstorms" such as hurricanes. WDSI engaged Marsh to advise it regarding the procurement of property insurance and to procure insurance meeting its needs.  In the

---

[2]    In the event of a discrepancy between this general description and the terms of the Settlement Agreement, the Settlement Agreement controls.

spring of 2004, WDSI instructed Marsh to procure commercial excess property insurance from XL as part of WDSI's comprehensive, multiple-layer property insurance program. Through Marsh, Winn-Dixie purchased from XL a commercial excess property insurance policy (No. US0006556PR04A) (the "Policy").

9.    The 2004 hurricane season, which included Hurricanes Charley, Frances, Ivan, and Jeanne (the "2004 Hurricane Season"), caused significant windstorm and flood damage to numerous facilities of the Debtors, including retail stores and manufacturing facilities located in Alabama, Florida, Georgia, Mississippi, South Carolina, North Carolina, Virginia, and the Bahamas.

10.    In a previous settlement of the Debtors' claims for insurance coverage for losses incurred during the 2004 Hurricane Season, all insurers whose policies were implicated by the 2004 hurricane losses paid their respective shares of those losses, except for XL, which declined coverage and refused to contribute (the "2005 Insurance Settlement").  The 2005 Insurance Settlement was previously presented to and approved by this Court by the November 17, 2005 Order Approving Settlement Agreement and Release of Claims with Certain of Debtors' Property Insurers (Docket No. 4201).

11.    The Policy was in force at the time that WDSI suffered losses from the 2004 Hurricane Season.  The Policy covers losses in excess of $50 million. Based upon WDSI's loss assessments, no single hurricane resulted in losses in excess of $50 million, but the aggregate sum of the losses from the four hurricanes exceeded $50 million.

12.    WDSI tendered its hurricane claims to XL under the Policy, which gave rise to a coverage dispute.  WDSI contended that XL must indemnify WDSI for a portion of

WDSI's losses because the Policy permitted the annual aggregation of hurricane losses for purposes of exhausting the underlying coverages.  XL contended that it had no duty to indemnify WDSI for any portion of the hurricane losses because the Policy did not allow the annual aggregation of hurricane losses and, thus, had not been triggered.

13.    WDSI further contended that in the event it was determined that it was not entitled to the coverage it was seeking from XL under the Policy, then, alternatively, Marsh was liable to WDSI for Marsh's failure to properly procure the necessary coverage. Marsh contended that it was not liable to WDSI.

14.    On August 12, 2005, WDSI commenced a suit against XL in the United States District Court for the Northern District of Georgia (the "Federal District Court"). WDSI added claims against Marsh by an Amended Complaint filed on December 21, 2005.  The case appears on the docket as *Winn-Dixie Stores, Inc. v. XL Insurance America, Inc. and Marsh USA, Inc.*, Case No. 05-CV-2100-JEC ("the Action").  WDSI asserted the claims described above in the Action.[3]

### Basis for Relief and Applicable Authority

15.    A settlement constitutes a disposition of property of the estate that must be approved by the Bankruptcy Court if outside the ordinary course of business.  See 11 U.S.C. § 363(b).  Bankruptcy Rule 9019 sets forth the standard for bankruptcy court approval of compromises of controversies, providing that "[o]n motion by the trustee and

---

[3]    On November 3, 2006, the Federal District Court was notified that the parties had reached a settlement of the Action, but that the settlement was subject to approval of this Court.  On November 6, 2006, the Federal District Court entered an order dismissing the Action, without costs and without prejudice to the right of the parties, within 90 days, to reopen the Action if the settlement is not approved by this Court.

after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

16.    Compromises are generally favored in bankruptcy because they minimize litigation and expedite the administration of a bankruptcy estate. *See Munford v. Munford, Inc.* (In re Munford Inc.), 97 F.3d 449, 455 (11th Cir. 1996) ("public policy strongly favors pretrial settlement in all types of litigation because such cases, depending on their complexity, 'can occupy a court's docket for years on end, depleting the resources of parties and the taxpayers while rendering meaningful relief increasingly elusive.' Second, litigation costs are particularly burdensome on a bankruptcy estate given the financial instability of the estate") (citation omitted) (quoting *Wald v. Wolfson* (In re U.S. Oil & Gas Litig.), 967 F.2d 489, 493 (11th Cir. 1992)).

17.    To approve a settlement under Bankruptcy Rule 9019, a bankruptcy court must determine that the settlement is fair, equitable, and in the best interest of the debtor's estate. In doing so, bankruptcy courts consider a variety of factors including (a) the probability of success in the litigation; (b) the difficulties associated with collection; (c) the complexity of the litigation and the attendant expense, inconvenience and delay; and (d) the paramount interests of, and deference to the views of, the creditors. *See In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir. 1990)

18.    WDSI submits that the terms of the Settlement Agreement satisfy the standards set forth above. The Action is a contested, multi-million dollar commercial dispute that involves complex and unique issues concerning interpretation and possible reformation of XL's excess property insurance contract, coupled with similarly complex

and unique issues concerning Marsh's professional service obligations to WDSI.  WDSI

believes its claims are meritorious, but pending cross-motions for summary judgment

could result in a ruling wholly dispositive of the claim against XL, and risk and uncertainty

is inherent in litigating any dispute of this nature to a jury verdict.  Absent either settlement

or resolution of the summary judgment motions unqualifiedly in WDSI's favor, WDSI

would be required to bear the considerable burden and substantial expense of completing

preparation for an as-yet unscheduled jury trial.  The trial would involve a range of fact-

intensive disputed issues concerning both liability and damages, resulting in added

distraction to WDSI's management and employees, with no assurance of a favorable result.

Irrespective of the outcome, lengthy appeals would be expected.

19.     WDSI believes that the terms of the Settlement Agreement are fair and

equitable and in the best interest of the Debtors' estates.  The Settlement Agreement

permits WDSI to resolve the Action against XL and Marsh.  In addition, the Settlement

Agreement allows WDSI to recover a substantial sum, under terms favorable to WDSI, and

without the need for further expenditure of unnecessary administrative expenses, thereby

preserving the resources of the Debtors' estates.

20.     If XL had participated in the 2005 Insurance Settlement (the result of a

negotiated compromise with the insurers concerning valuation of the Debtors' losses),

XL's payment to the Debtors would have been approximately $6.2 million -- less than the

$7 million that will be paid to the Debtors if the currently-proposed settlement with XL

and Marsh is approved.  In the Action, the Debtors have claimed entitlement to damages

totaling approximately $8.9 million exclusive of attorneys' fees and interest, based on what

the Debtors contend is the full value of their losses, rather than the compromise valuation previously negotiated with and paid by the Debtors' other insurers under the 2005 Insurance Settlement.  However, recovering that larger sum would be contingent upon complete success on all contested liability and damages issues.  In addition to disputing liability, XL also disputed WDSI's valuation of their losses, contending that if liability were established, the Debtors should be entitled to recover no more than approximately $4.4 million.

21.     In sum, WDSI's settlement of the Action on the terms set forth in the Settlement Agreement fall within the range of reasonableness and meets the standards for approval of a compromise in this Court.  Accordingly, the Court should approve the settlement.

## <u>Notice</u>

22.     Notice of the Motion has been provided to (a) counsel to the Office of the United States Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors' Committee, (d) the other parties in interest named on the Master Service List maintained in these cases, and (e) counsel for XL and Marsh.  No other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order substantially in the form attached as Exhibit B (a) approving the settlement on the terms set forth in the Settlement Agreement (ii) grant such other further relief as the Court deems just and proper.

Dated: November 9, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By    *s/ D. J. Baker*
    D. J. Baker
    Sally McDonald Henry
    Rosalie Walker Gray
    Adam S. Ravin

Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for Debtors

SMITH HULSEY & BUSEY

By    *s/ Cynthia C. Jackson*
    Stephen D. Busey
    James H. Post
    Cynthia C. Jackson,
    Florida Bar Number 498882

225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Debtors

**Exhibit A**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between Winn-Dixie Stores, Inc. ("Winn-Dixie"), XL Insurance America, Inc. ("XL") and Marsh USA, Inc. ("Marsh") (each a "Party" and together the "Parties"), as of the Effective Date as defined below.

### Recitals

1.    Winn-Dixie sustained substantial property damage losses in a series of four hurricanes in the Southeastern United States in August and September 2004.

2.    Winn-Dixie claims that XL is obligated to indemnify Winn-Dixie for a portion of the 2004 hurricane losses under XL's Excess Commercial Property Insurance Policy No. US000656PR04A, in effect from April 30, 2004 to April 30, 2005 ("the XL Policy"). Winn-Dixie claims alternatively that it is entitled to reformation of the XL Policy.

3.    In the event it is determined that Winn-Dixie is not entitled to the insurance coverage it seeks under the XL Policy, and that Winn-Dixie is not entitled to reformation of the XL Policy, then Winn-Dixie claims alternatively that it is entitled to recover from Marsh -- Winn-Dixie's insurance advisor and broker -- to redress what Winn-Dixie asserts was Marsh's failure to properly procure the necessary coverage.

4.    XL disputes Winn-Dixie's claims against it. Marsh disputes Winn-Dixie's claims against it, and contends that Winn-Dixie is entitled to indemnification from XL under the XL Policy.

5.    Those disputes are the subject of an action pending in United States District Court for the Northern District of Georgia, entitled *Winn-Dixie Stores, Inc. v. XL Insurance America, Inc. and Marsh USA, Inc.*, Case No. 05-CV-2100-JEC ("the Action").

6.      Solely to avoid the uncertainty, cost and effort that further litigation would entail, the Parties wish to settle and compromise all matters at issue in the Action between Winn-Dixie on the one hand and XL and Marsh on the other hand, with XL and Marsh reserving the opportunity to pursue further negotiation, arbitration or other processes or procedures as between them in order to resolve their dispute concerning apportionment of liability.

7.      Winn-Dixie is a debtor-in-possession in a chapter 11 bankruptcy case pending before the United States District Court for the Middle District of Florida, Jacksonville Division ("the Bankruptcy Court").  As such, Winn-Dixie must obtain an order of the Bankruptcy Court approving the proposed settlement set forth in this Agreement.

**Now, therefore,** in consideration of the mutual covenants set forth in this Agreement, the Parties agree as follows:

1.      Within five business days after the Effective Date, XL and Marsh shall collectively pay to Winn-Dixie the sum of $7,000,000.00 (the "Settlement Sum"), by wire transfer as follows:

| | |
|---|---|
| Account Name: | Winn-Dixie Stores, Inc. DIP |
| Bank: | Wachovia |
| | Jacksonville, Florida |
| Bank Routing No.: | 063000021 |
| Bank Account No.: | 2115000000524 |

2.      Upon Winn-Dixie's receipt of the Settlement Sum, Winn-Dixie shall promptly file a motion seeking dismissal of the Action with prejudice, with each party to bear its own attorneys' fees and costs.

3.      Effective immediately upon receipt of the Settlement Sum and in consideration thereof, Winn-Dixie shall fully and forever release and discharge XL and Marsh, and their respective current and former subsidiaries, parents, officers, directors, employees, shareholders,

predecessors, successors, agents, attorneys and assigns, from any and all claims, demands, liabilities, causes of action, entitlements and rights, known or unknown, that Winn-Dixie has or could have asserted against them in the Action with respect to procurement of the XL Policy or indemnity under the XL Policy for Winn-Dixie's 2004 hurricane losses.

4.      Effective immediately upon dismissal of the Action, XL and Marsh shall fully and forever release and discharge Winn-Dixie, its current and former subsidiaries, parents, officers, directors, employees, shareholders, predecessors, successors, agents, attorneys and assigns, from any and all claims, demands, liabilities, causes of action, responsibilities and obligations, known or unknown, that XL or Marsh have or could have asserted against Winn-Dixie in the Action with respect to procurement of the XL Policy or indemnity under the XL Policy for Winn-Dixie's 2004 hurricane losses.

5.      XL and Marsh agree that they shall not initiate, file or pursue any claim or action, including without limitation any claim or action for contribution, indemnity, subrogation, or attorneys' fees or costs, against Winn-Dixie, any insurer of Winn-Dixie, or any other person or entity, for payment or reimbursement of all or any part of the Settlement Sum.  XL and Marsh agree to waive any rights of subrogation they may have under the XL Policy or otherwise with respect to the matters released in this Agreement.  Nothing in this paragraph, however, shall be construed as limiting or restricting (a) whatever right XL may have to seek reinsurance under any contract or agreement; or (b) XL's and Marsh's opportunity to pursue further negotiation, arbitration or other processes or procedures as between them in order to resolve their dispute concerning apportionment of liability.

6.      Winn-Dixie reserves its rights to pursue claims, whether under other insurance policies or otherwise, against persons or entities other than XL and Marsh, and their respective

- 3 -

current and former subsidiaries, parents, officers, directors, employees, shareholders, predecessors, successors, agents, attorneys and assigns, for damage or loss that Winn-Dixie claims to have sustained as a result of the 2004 hurricanes.

7.    Each Party represents and warrants that it has not made any assignment or transfer of any claim released herein or any rights under this Agreement, and that it will not in the future make any such assignment without first obtaining the written consent of the other Parties, except for an assignment by any Party in a merger or by operation of law, or to a person or entity which succeeds to all or substantially all of such Party's assets.

8.    Each Party represents and warrants that its execution and delivery of this Agreement has been duly and validly authorized and approved by all action required under applicable law.

9.    For all purposes, this Agreement shall be deemed to have been drafted jointly by the Parties.

10.    This Agreement represents a compromise of disputed claims. Nothing in this Agreement may be construed as an admission for any purpose on the part of any of the Parties, other than as necessary to enforce the terms of this Agreement.

11.    Any action to enforce the terms of this Agreement must be instituted in the United States District Court for the Northern District of Georgia.

12.    This Agreement may be executed in multiple counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute one and the same instrument and Agreement. Copies of executed signature pages may be sent by telecopier or email, and such signatures shall be effective as original signatures.

13.     This Agreement contains the entire agreement between the Parties with respect to its subject matter, and all discussions and agreements previously entertained between the Parties concerning the subject matter of this Agreement are merged into this Agreement, except for any separate agreement between XL and Marsh that concerns a procedure for resolving any dispute between them as to apportionment of liability, or any separate agreement between XL and Marsh that concerns any settlement or other resolution of their dispute as to apportionment of liability. This Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing, signed by each Party.

14.     The terms and conditions of this Agreement shall be kept confidential and shall not be disclosed by any Party without the prior written consent of the other Parties, except (a) as required by law; (b) for corporate financial reporting; (c) for examination or audit of the Parties' respective businesses; (d) by XL to its reinsurer(s), subject to appropriate assurances of confidentiality; (e) to enforce the obligations under this Agreement; (f) by order of a court, administrative tribunal, arbitration panel, insurance regulatory agency or governmental authority; or (g) as may be needed for purposes of Winn-Dixie seeking the Bankruptcy Court's approval of the settlement set forth in this Agreement.

15.     This Agreement shall be effective on the date of entry of an order of the Bankruptcy Court approving the settlement set forth in this Agreement (the "Effective Date").

**The remainder of this page is intentionally left blank.**

WINN-DIXIE STORES, INC.                                  XL INSURANCE AMERICA, INC.

By: _____                             By: _____

Name: ____Bennett L. Nussbaum____                       Name: _____

Title: ____Senior Vice President____                     Title: _____

Date: _____11/7/06_____                             Date: _____

                                    LEGAL APPROVED
                                    ATTY: _JFC_
MARSH USA, INC.                     DATE: _11/7/06_

By: _____

Name: _____

Title: _____

Date: _____

WINN-DIXIE STORES, INC.

By: _____

Name: _____

Title: _____

Date: _____

MARSH USA, INC.

By: _____

Name: _____

Title: _____

Date: _____

XL INSURANCE AMERICA, INC.

By: _Terry Howell_____

Name: _Terry Howell_____

Title: _Attorney_____

Date: _Nov. 7, 2006_____

- 6 -

WINN-DIXIE STORES, INC.

XL INSURANCE AMERICA, INC.

By: _____

Name: _____

Title: _____

Date: _____

By: _____

Name: _____

Title: _____

Date: _____

MARSH USA, INC.

By: _Steven M. Monroe_

Name: _STEVEN M. MONROE_

Title: _Senior Litigation Counsel at MMC
on behalf of Marsh USA Inc._

Date: _11-07-06_

- 6 -

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                    ) Case No. 05-03817-3F1
                                          )
WINN-DIXIE STORES, INC., et al.,          ) *Chapter 11*
                                          )
Debtors.                                  ) Jointly Administered
                                          )

**ORDER APPROVING SETTLEMENT WITH**
**XL INSURANCE AMERICA, INC AND MARSH USA, INC.**

   These cases came before the Court for hearing on November 30, 2006, upon the

motion of Winn-Dixie Stores, Inc. ("WDSI") and its subsidiaries, debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order

authorizing and approving a settlement substantially in the form set forth in the Settlement

Agreement,[1] between WDSI on the one hand and XL Insurance America, Inc. and Marsh USA,

Inc. on the other hand (the "Motion").  The Court has reviewed the Motion and considered the

representations of counsel.  Based upon the representations of counsel and without objection by

the United States Trustee or any other interested parties, and after due deliberation and finding

proper notice has been given, the Court determines that good cause exists to grant the relief and

that granting the relief is in the best interest of these estates and creditors.  Accordingly, it is

   ORDERED AND ADJUDGED THAT:

   1.  The Motion is granted.

   2.  The settlement described in the Settlement Agreement is approved.

   3.  The Debtors are authorized to take any and all actions that may be

required to implement the settlement described in the Settlement Agreement.

---

[1]  All capitalized terms not otherwise defined in this order shall have the meaning ascribed to them in the
Motion.

4.      The Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

5.      Notwithstanding any provisions to the contrary in the Federal Rules of

Bankruptcy Procedure, this Order shall take effect immediately upon entry.


Dated  _____, 2006, in Jacksonville, Florida.



_____
Jerry A. Funk
United States Bankruptcy Judge


Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.