# Exhibit C

# Assignment

LEASE AGREEMENT


between


COMMONWEALTH AVENUE WAREHOUSE, INC.,
as lessor


and


WINN-DIXIE STORES, INC.,
as lessee


Dated as of June 20, 1986

# TABLE OF CONTENTS

1.  Lease of Premises; Title and Condition.............. 1
2.  Use................................................. 1
3.  Terms............................................... 1
4.  Rent................................................ 2
5.  Net Lease........................................... 2
6.  Taxes and Assessments; Compliance With Law.......... 3
7.  Liens............................................... 4
8.  Indemnification..................................... 4
9.  Maintenance and Repair.............................. 5
10. Alterations and Additions........................... 5
11. Insurance........................................... 7
12. Condemnation........................................ 8
13. Casualty............................................ 12
14. Uneconomic Use...................................... 14
15. Reimbursement for Alterations and Additions......... 14
16. Purchase Option; Procedure Upon Purchase............ 16
17. Assignment and Subletting........................... 18
18. Permitted Contests.................................. 18
19. Conditional Limitations; Default Provisions......... 19
20. Additional Rights of Lessor......................... 22
21. Assignment of Sublease Rents........................ 23
22. Notices, Demands and Other Instruments.............. 23
23. Estoppel Certificates............................... 24
24. No Merger........................................... 24
25. Surrender........................................... 24
26. Merger, Consolidation, Sale of Assets; Net Worth.... 25
27. Separability; Binding Effect........................ 25
28. Governing Law....................................... 25
29. Headings and Table of Contents...................... 25
30. Schedules........................................... 26

**Location of Definitions**

| Term | Paragraph and/or Schedule |
|------|---------------------------|
| Additional Improvements................. | 10(b) |
| Additional Rent......................... | 4(b) |
| Basic Amount............................ | 12(c) and Schedule C |
| Basic Term.............................. | 3 and Schedule B |
| Basic Rent.............................. | 4(a) and Schedule B |
| Casualty Restoration Cost............... | 13(b) |
| event of default....................... | 19 |
| Extended Term........................... | 3 and Schedule B |
| Improvements............................ | 1 |
| Interim Term............................ | 3 and Schedule B |
| Land Parcel............................. | 1 |
| Legal Requirements...................... | 6(b) |
| Mortgage................................ | 10(b) |
| Mortgagee............................... | 10(b) |
| Net Casualty Proceeds................... | 13(a) |
| Net Condemnation Proceeds............... | 12(a) |
| Payment Dates........................... | 4(a) |
| Property................................ | 1(a) |
| Reimbursable Expenses................... | 15(a) |
| Restoration Cost........................ | 12(c) |
| Termination Date........................ | 12(b), 13(c) and 14 |

LEASE AGREEMENT, dated as of June 20, 1986 (this Lease), between COMMONWEALTH AVENUE WAREHOUSE, INC., a Florida corporation (together with its successors or assigns, called Lessor), having an address c/o Greyhound Leasing & Financial Corporation, Greyhound Tower, Phoenix, Arizona 85077, Attention: Division Risk Manager, Real Estate, and WINN-DIXIE STORES, INC., a Florida corporation (together with any entity succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entirety, called Lessee), having an address at 5050 Edgewood Court, Jacksonville, Florida 32203.

1.  Lease of Premises; Title and Condition.  In consideration of the rents and covenants herein stipulated to be paid and performed by Lessee and upon the terms and conditions herein specified, Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor (i) the parcel of land described in Schedule A hereto (the Land Parcel), (ii) all buildings and other improvements now or hereafter located on the Land Parcel (the Improvements) and (iii) the easements, rights and appurtenances relating to the Land Parcel and the Improvements (the Land Parcel, the Improvements and such easements, rights and appurtenances are referred to collectively as the Property).  The Property is leased to Lessee in its present condition (without representation or warranty by Lessor) and subject to the rights of parties in possession, to the existing state of title and to all applicable legal requirements now or hereafter in effect. Lessee has examined the condition of, and title to, the Property and has found the same satisfactory for all purposes.

2.  Use.  Lessee may use the Property for any lawful purpose.  So long as no default has occurred and is continuing hereunder, Lessor warrants peaceful and quiet enjoyment of the Property by Lessee against acts of Lessor or anyone claiming through Lessor.

3.  Terms.  The Property is leased for an interim term (the Interim Term), a basic lease term (the Basic Term) and may be further leased at Lessee's option for one additional term of ten years and up to four consecutive additional terms of five years each (the Extended Terms), unless and until the term of this Lease shall expire or be terminated pursuant to any provision hereof.  The Interim Term, the Basic Term and the Extended Terms shall commence and expire on the dates set forth in Schedule B hereto.  Lessee shall exercise, if it so elects, its option to extend the term of this Lease by giving notice thereof to Lessor not less than 12 months prior to the expiration of the Basic Term, with respect to the first Extended Term, and not less than 12 months prior to the expiration of the then existing term with respect to any other Extended Term.

4. <u>Rent</u>.  (a)  Lessee shall pay to Lessor, without notice or demand, in lawful money of the United States as fixed rent for the Property the amounts set forth in Schedule B hereto (as such rent may be reduced from time to time as provided by this Lease, called Basic Rent).  Basic Rent shall be payable at Lessor's address as set forth above, or at such other address or to such other person as Lessor from time to time may designate, in the amounts set forth in Schedule B hereto on the dates set forth therein (the Payment Dates).

(b)  All amounts which Lessee is required to pay pursuant to this Lease (other than Basic Rent, amounts payable upon any purchase of the Property and amounts payable as liquidated damages pursuant to paragraph 19(g)), together with every fine, penalty, interest and cost which may be added for nonpayment or late payment thereof, shall constitute additional rent (the Additional Rent).  If Lessee shall fail to pay any Additional Rent when the same shall become due and payable, Lessor shall have all rights, powers and remedies with respect thereto as are provided herein or by law in the case of nonpayment of Basic Rent and shall, except as expressly provided herein, have the right to pay the same on behalf of Lessee.  Lessee shall pay to Lessor interest at the rate of the greater of (i) 11.95% per annum and (ii) the prime rate established by Bank of New England Trust Company, National Association on such due date plus 3% (or at the maximum rate not prohibited by law, whichever is less) on all overdue Basic Rent from the Payment Date thereof until paid, and on all overdue Additional Rent paid by Lessor from the date of payment by Lessor until repaid by Lessee.  Lessee shall perform all obligations under this Lease at its sole cost and expense, and shall pay all Basic Rent, Additional Rent and purchase prices when due and payable, without notice or demand.

5. <u>Net Lease</u>.  (a)  This Lease is a net lease and, any present or future law to the contrary notwithstanding, shall not terminate except as expressly provided in paragraphs 12(b), 13(c) and 14, nor shall Lessee be entitled to any abatement or reduction (except as expressly provided in this Lease), setoff, counterclaim, defense or deduction with respect to any Basic Rent, Additional Rent, purchase payment, liquidated damage payment or other sum payable hereunder, nor shall the obligations of Lessee hereunder be affected by reason of:  any damage to or destruction of the Property or any part thereof; any taking of the Property or any part thereof by condemnation or otherwise; any prohibition, limitation, restriction or prevention of Lessee's use, occupancy or enjoyment of the Property or any part thereof, or any interference with such use, occupancy or enjoyment by any person; any eviction by paramount title or otherwise; any breach of any express or implied warranty by Lessor, including, without limitation, the warranty contained in paragraph 2; any

default by Lessor hereunder or under any other agreement; the impossibility of performance by Lessor, Lessee or both; any action of any governmental authority; or any other cause whether similar or dissimilar to the foregoing.  The parties intend that the obligations of Lessee hereunder shall be separate and independent covenants and agreements and shall continue unaffected unless such obligations shall have been modified or terminated pursuant to an express provision of this Lease.

(b)  Lessee shall remain obligated under this Lease in accordance with its terms and shall not take any action to terminate, rescind or avoid this Lease, notwithstanding any bankruptcy, insolvency, reorganization, liquidation, dissolution or other proceeding affecting Lessor or any assignee of Lessor or any action with respect to this Lease which may be taken by any trustee, receiver or liquidator or by any court.  Except as provided herein, Lessee waives all rights to terminate or surrender this Lease, or to any abatement or deferment of Basic Rent, Additional Rent, purchase payment, liquidated damage payment or other sums payable hereunder.

6.  <u>Taxes and Assessments; Compliance With Law</u>.  (a) Lessee shall pay (before the same shall become delinquent): (i) all taxes and assessments, levies, fees, water and sewer rents, charges, licenses, permit fees and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, which are, at any time prior to or during the term hereof, imposed or levied upon or assessed against (A) the Property, (B) any Basic Rent, Additional Rent or other sum payable hereunder, (C) this Lease, the leasehold estate hereby created or which arises in respect of the operation, possession or use of the Property or (D) any first mortgage on the Property or the indebtedness secured thereby to finance the acquisition of the Property; (ii) all gross receipts or similar taxes imposed or levied upon, assessed against or measured by any Basic Rent, Additional Rent or other sum payable hereunder; (iii) all sales, use and similar taxes at any time levied, assessed or payable on account of the acquisition, leasing or use of the Property; and (iv) all charges for utilities serving the Property.  Lessee shall not be required to pay any franchise, estate, inheritance, transfer, income, capital gains or similar tax of Lessor (other than any tax referred to in clause (ii) above) unless such tax is imposed, levied or assessed in substitution for, in whole or in part, any other tax, assessment, charge or levy which Lessee is required to pay pursuant to this paragraph 6(a).  Lessee will furnish to Lessor, promptly after demand therefor, proof of payment of all items referred to above which are payable by Lessee.  If any such assessment may legally be paid in instalments, Lessee may pay such assessment in instalments, and Lessee shall be liable only for instalments

which become due and payable during the term hereof or which are allocable to the term hereof.

(b)   Lessee shall comply with and cause the Property to comply with (i) all laws, ordinances and regulations, court orders and decrees and other governmental rules, orders and determinations now or hereafter enacted, made or issued, whether or not presently contemplated (collectively, Legal Requirements) applicable to the Property or the use thereof, and (ii) all contracts (including insurance policies), agreements, covenants, conditions and restrictions applicable to the Property or the ownership, occupancy or use thereof, including, without limitation, all such Legal Requirements, contracts, agreements, covenants, conditions and restrictions which require structural, unforeseen or extraordinary changes.

7.   Liens.   Lessee will promptly (but in all events within 30 days) remove and discharge, whether by payment, posting a bond or otherwise, or commence to contest the validity of, any charge, lien, security interest or encumbrance upon the Property or any Basic Rent, Additional Rent or other sum payable hereunder which arises for any reason, including, without limitation, all liens which arise out of the use, occupancy, construction, repair or rebuilding of the Property or any part thereof or by reason of labor or materials furnished or claimed to have been furnished to Lessor or Lessee or for the Property, but not including any mortgage, deed of trust, charge, lien, security interest or encumbrance created by Lessor without the consent of Lessee.   Nothing contained in this Lease shall be construed as constituting the consent or request of Lessor, express or implied, to or for the performance by any contractor, laborer, materialman, or vendor of any labor or services or for the furnishing of any materials for any construction, alteration, addition, repair or demolition of or to the Property or any part thereof.   Notice is hereby given that Lessor will not be liable for any labor, services or materials furnished or to be furnished to Lessee, or to anyone holding the Property or any part thereof through or under Lessee, and that no mechanic's or other liens for any such labor, services or materials shall attach to or affect the interest of Lessor in and to the Property.

8.   Indemnification.   Lessee shall defend all actions against Lessor and Mortgagee (as defined in paragraph 10(b)) and any officer, director, shareholder or partner of Lessor and Mortgagee (collectively, the Indemnified Persons), and shall pay, protect, indemnify and save harmless the Indemnified Persons from and against, any and all liabilities, losses, damages, costs, expenses (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature arising from (i) injury to or death of any person, or damage to or loss of property on the Property or

-4-

on adjoining sidewalks, streets or ways, or connected with the use, condition or occupancy of any thereof, (ii) violation of this Lease by Lessee, (iii) any act or omission of Lessee or its agents, contractors, licensees, sublessees or invitees, and (iv) any contest referred to in paragraph 17. Nothing herein shall be construed as indemnifying any Indemnified Person against its own grossly negligent or willful acts.

9.  Maintenance and Repair.  Lessee acknowledges that it has received the Property in good order and repair.  Lessee, at its own expense, will maintain the Property in good repair and condition, and will take all action and will make all structural and non-structural, interior and exterior, foreseen and unforeseen and ordinary and extraordinary changes and repairs which may be required to keep the Property in good repair and condition except for ordinary wear and tear.  Lessor shall not be required to maintain, repair or rebuild all or any part of the Property.  Lessee waives the right to (x) require Lessor to maintain, repair or rebuild all or any part of the Property, or (y) make repairs at the expense of Lessor pursuant to any Legal Requirement, contract, agreement, covenant, condition or restriction referred to in subparagraph 6(b)(ii).

10.  Alterations and Additions.  (a) Lessee may, at its expense make additions to and alterations of the Improvements and construct additional improvements on the Land Parcel provided that (i) the market value of the Property shall not be decreased thereby, (ii) such work shall be expeditiously completed in a good and workmanlike manner and in compliance with all applicable Legal Requirements and the requirements of all insurance policies required to be maintained by Lessee hereunder, (iii) such work shall not change the primary character of the Property as a warehouse distribution center, (iv) such work shall be performed under the supervision of a licensed architect or engineer in accordance with plans and specifications and cost estimates prepared by such architect or engineer, (v) none of the Improvements with a value in excess of $250,000 and none of the structural Improvements shall be demolished unless Lessee shall have first furnished Lessor with such surety bonds or other security acceptable to Lessor as shall be necessary to assure rebuilding of the Improvements and (vi) prior written notice shall have been given to Lessor.  All such additions and alterations shall be and remain part of the realty and property of Lessor, shall be deemed part of the Property and shall be subject to this Lease.  Lessee may place upon the Property any inventory, trade fixtures, machinery or equipment belonging to Lessee or third parties and may remove the same at any time during the term of this Lease, provided that Lessee shall repair any damage to the Property caused by such placement or removal.

-5-

(b)  Lessee shall complete the construction of the additional improvements, reconstruction and remodeling described in Schedule C (collectively, the Additional Improvements) not later than June 30, 1987, or if construction is delayed as a result of force majeure, no later than December 31, 1987.  For purposes of this Section, a delay shall be deemed to be a result of force majeure if it results from:  an act of God, an act of war; an act of public enemies; any casualty or condemnation; present or future governmental laws, statutes, regulations or ordinances or compliance therewith; requests or directives of any public authority or compliance therewith; strikes, lockouts, stoppages or restraint of labor; riot or civil commotion; shortage of materials; or other causes outside of the reasonable control of Lessee, whether similar or dissimilar to the foregoing, provided, that Lessee notifies Lessor of any such event in writing as soon as is practicable after Lessee acquires knowledge thereof.  The Additional Improvements shall be constructed in accordance with the provisions of Section 10(a)(ii) and (iii) in such a manner that, immediately following completion of the Additional Improvements, the Property, including the Additional Improvements, shall have a fair market value of not less than $12,806,000.  The Additional Improvements shall be and remain part of the realty and property of Lessor, shall be deemed part of the Property and shall be subject to this Lease.  Lessee's failure to complete construction of the Additional Improvements in the manner and at the time set forth above shall not constitute an event of default (as defined in paragraph 19) provided Lessee has delivered to Lessor and the mortgagee under any mortgage, the beneficiary under any deed of trust or the trustee under any similar security instrument creating a first lien on the Property (such mortgagee, beneficiary or trustee, as the case may be, being herein called Mortgagee and such mortgage, deed of trust or other similar security instrument being herein called the Mortgage) a certificate signed by an authorized officer of Lessee stating that its Board of Directors has determined that (i) failure to complete the Additional Improvements does not impair the value, structural integrity or use of the Property and (ii) the sum of (x) the fair market value of the Property excluding the Additional Improvements, (y) the value (at cost) of construction of the Additional Improvements that have been completed as of the date of such certificate and (z) the moneys remaining in the agency account established pursuant to the Financing, Construction and Agency Agreement, dated as of June 20, 1986, among Owner, Lessee and Bank of New England Trust Company, National Association and F.W. Kawam, as trustees, is not less than $12,806,000.

11. <u>Insurance</u>.  (a)  Lessee shall maintain insurance on the Property of the following character:

(i)   Insurance against loss by fire, lightning and other such risks (including, without limitation, vandalism and malicious mischief) which from time to time are included under "extended coverage" all risk policies, in amounts sufficient to prevent Lessor or Lessee from becoming a co-insurer of any loss but in any event in amounts not less than 100% of the actual replacement value of the Improvements, exclusive of foundations, footings and excavations.

(ii)  Comprehensive general public liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Property and adjoining streets and sidewalks, in the amount of $5,000,000 combined for death, bodily injury and property damage, for any one occurrence.

(iii) Workers' compensation insurance to the extent required by the law of the State of Florida and to the extent necessary to protect Lessor against workers' compensation claims.

(iv)  At any time when Improvements are being constructed, altered or replaced, builder's risk insurance (in completed value nonreporting form) in an amount not less than the actual replacement value of such Improvements, exclusive of foundations, footings and excavations.

(v)   Such other insurance, including flood insurance, if available, in such amounts and against such risks, as is commonly obtained in the case of property similar to the Property and located in the Jacksonville, Florida area, or as may be reasonably required by Lessor or Mortgagee.

Such insurance shall be written by companies rated "A" or better by A.M. Best Company, Inc., legally qualified to issue such insurance and otherwise satisfactory to Lessor and Mortgagee, and shall name Lessor as an additional insured party and include Lessee as its interest may appear.

-7-

(b)  Every such policy (other than general public liability and workers' compensation policies) shall bear a mortgagee endorsement in favor of Mortgagee; and any proceeds with respect to a loss under any such policy shall be payable to Mortgage to be held and applied pursuant to paragraph 13. Every policy referred to in paragraph 11(a) shall provide that it will not be cancelled or amended except after 30 days' written notice to Lessor and Mortgagee and that (to the extent such provision is obtainable) it shall not be invalidated by any act or negligence of Lessor or Lessee, nor by occupancy or use of the Property for purposes more hazardous than permitted by the policy, nor by any foreclosure or other proceedings relating to the Property, nor by change in title to or ownership of the Property.  It is understood and agreed that every policy referred to in paragraph 11(a) may be a blanket policy covering other locations operated by Lessee, its affiliates or subsidiaries provided that such blanket policies otherwise comply with the provisions of this paragraph 11 and provided further that such policies shall provide for a reserved amount thereunder with respect to the Property as to assure the amount of insurance required by the provisions of paragraph 11(a) will be available notwithstanding any losses with respect to other property covered by such blanket policies.

(c)  Lessee shall deliver to Lessor and Mortgagee originals of the applicable insurance policies or original certificates of insurance under blanket policies, satisfactory to Lessor and Mortgagee, evidencing the existence of all insurance which is required to be maintained by Lessee hereunder, such delivery to be made (i) at the time of execution and delivery hereof and (ii) at least 10 days prior to the expiration of any required insurance.  Lessee shall not obtain or carry separate insurance concurrent in form or contributing in the event of loss with that required by this paragraph 11 unless Lessor is a named insured therein, with loss payable as provided herein and unless a mortgagee endorsement in favor of Mortgagee appears on such policy. Lessee shall immediately notify Lessor whenever any such separate insurance is obtained and shall deliver to Lessor and Mortgagee the policies or certificates evidencing same.

(d)  Notwithstanding the provisions of this paragraph 11, Lessee may self-insure against the risks described in paragraph 11(a) and shall not be required to maintain insurance hereunder so long as Lessee's shareholders' equity, determined in accordance with generally accepted accounting principles, is in excess of $250,000,000.  At all other times, Lessee shall maintain or cause to be maintained insurance in compliance with the provisions hereof.

12.  Condemnation.  (a)  Lessee hereby irrevocably assigns to Lessor any award or compensation to which Lessee may

become entitled by reason of Lessee's interest in the Property if the use, occupancy or title of the Property or any part thereof is taken, requisitioned or sold in, by or on account of any actual or threatened eminent domain proceeding or other action by any person having the power of eminent domain. Lessee shall appear in any such proceeding or action, to negotiate, prosecute and adjust any claim for any award or compensation on account of any such taking, requisition or sale, and Lessor shall collect any such award or compensation. All amounts paid in connection with any such taking, requisition or sale of the Property or any part thereof shall be applied pursuant to this paragraph 12, and all such amounts paid or payable in connection therewith (minus the expense of collecting such amounts) are herein called the Net Condemnation Proceeds.  Lessor and Mortgagee shall be entitled to participate in any such proceeding, action, negotiation or prosecution.  Lessee shall pay all reasonable costs and expenses (including the reasonable cost of Lessor's and Mortgagee's participation therein, including attorneys' fees) in connection with each such proceeding, action, negotiation and prosecution for which costs and expenses Lessee shall be reimbursed out of any award or compensation received.

(b)  If an occurrence of the character referred to in paragraph 12(a) shall affect all or a substantial portion of the Property and shall render the Property unsuitable or uneconomic for restoration for continued use and occupancy in Lessee's business, then Lessee shall, not later than 30 days after such occurrence, deliver to Lessor (i) notice of its intention to terminate this Lease on the next Payment Date which occurs not less than 180 days after the delivery of such notice or such earlier date as is agreed to by Lessor (the Termination Date) and (ii) a certificate by an authorized officer of Lessee describing the event which gives rise to such termination and stating that its Board of Directors has determined that such event has rendered the Property unsuitable or uneconomic for restoration for continued use and occupancy in Lessee's business and that the Property will not be restored.  Following receipt by Lessor of the notice and certificate of Lessee referred to in the preceding sentence, Lessor shall have a period of 15 days to enter upon and inspect the Property and to notify Lessee that, in Lessor's judgment, the Property can be suitably or economically restored for continued use and occupancy in Lessee's business and that the Property should be restored.  If, within 15 days after Lessor has notified Lessee that the Property should be restored, Lessee does not agree to promptly commence restoration of the Property, the final determination as to whether Lessee shall be required to restore the Property shall be made pursuant to the Arbitration Procedure.  "Arbitration Procedure" means that Lessor and Lessee shall mutually agree upon an arbitrator or, if Lessor and Lessee are unable to agree upon an arbitrator

-9-

within 15 days, each party shall select an arbitrator within 5 days and the two arbitrators shall select a third arbitrator within 5 days. The determination of whether Lessee shall be required to restore the Property shall be made by any two of such arbitrators within 30 days. If any two of such arbitrators are unable to agree, then the determination of such restoration shall be made by the arbitrator selected by the arbitrators appointed by Lessor and Lessee within 5 days. The determination by the arbitrator or arbitrators shall be final and binding on Lessor and Lessee and may be enforced by either party in any court of competent jurisdiction. If the arbitrator or arbitrators determine that the Property is suitable or economic for restoration, this Lease shall remain in full force and effect and Lessee shall promptly commence to restore the Property pursuant to paragraph 12(c). Lessee shall pay for the costs of such arbitration. If the arbitrator or arbitrators determine that the Property is unsuitable or uneconomic for restoration, or if Lessor does not contest Lessee's determination that the Property has become unsuitable or uneconomic for restoration for continued use in its business, Lessee shall be deemed to have made an irrevocable offer to purchase the Property on the Termination Date at a price determined in accordance with Schedule D. If Lessor shall reject such offer by notice given to Lessee not later than the 10th day prior to the Termination Date, the Net Condemnation Proceeds shall belong to Lessor and this Lease shall terminate on the Termination Date, except with respect to obligations and liabilities of Lessee hereunder, actual or contingent, which have arisen on or prior to the Termination Date, but only upon payment by Lessee of all Basic Rent, all Additional Rent and all other sums then due and payable hereunder, to and including the Termination Date. Unless Lessor shall have rejected such offer in accordance with this paragraph, Lessor shall be conclusively presumed to have accepted such offer, and, on the Termination Date upon receipt of the purchase price, shall convey the remaining portion of the Property, if any, to Lessee or its designee and shall assign to Lessee or its designee all its interest in the Net Condemnation Proceeds, pursuant to and upon compliance with paragraph 16. If the Termination Date shall occur during an Extended Term, Lessee shall not be required to offer to purchase the Property.

(c) If, after an occurrence of the character referred to in paragraph 12(a), Lessee does not give notice of its intention to terminate this Lease as provided in paragraph 12(b) (or pursuant to the Arbitration Procedure or agreement of Lessor and Lessee, Lessee shall be required to restore the Property), then this Lease shall continue in full force and effect, and Lessee shall, at its expense, regardless of whether any condemnation proceeds payable in consequence of such casualty shall be sufficient for the purpose, rebuild,

replace or repair any damage to the Property caused by such event in conformity with the requirements of paragraph 10(a) so as to restore the Property (as nearly as practicable) to the market value thereof immediately prior to such occurrence. Prior to any such rebuilding, Lessee shall submit to Lessor an estimate of the maximum costs of such rebuilding (the Restoration Cost). The Restoration Cost shall be paid first out of Lessee's own funds to the extent that the Restoration Cost exceeds the Net Condemnation Proceeds payable in connection with such occurrence. After such expenditure, and so long as no default has happened and is continuing under this Lease, Lessee shall be entitled to receive the Net Condemnation Proceeds, but only against certificates of Lessee delivered to Lessor from time to time (but not more often than once every 30 days) as such work of rebuilding, replacement and repair progresses, each such certificate describing the work for which Lessee is requesting payment and the cost incurred by Lessee in connection therewith and stating that Lessee has not theretofore received payment for such work. Any Net Condemnation Proceeds remaining after final payment of Restoration Cost has been made shall be paid to Lessee to the extent Lessee has paid Restoration Costs from its own funds and any then remaining Net Condemnation Proceeds shall be paid to Lessor. If any Net Condemnation Proceeds are payable to Lessor, such Net Condemnation Proceeds shall be retained by Lessor to the extent necessary to preserve Lessor's net after tax yield and cash flow computed pursuant to Financial Accounting Standards Board Rule 13 (taking into consideration, among other factors, any reductions of Basic Rent or the Basic Amount set forth in Schedule D, as discussed below). Basic Rent shall be reduced by an amount, if any, equal to the excess of the Net Condemnation Proceeds payable to Lessor over the amount so retained by Lessor (the Excess Amount), by applying such Excess Amount (plus any interest earned from investment thereof) as an offset against the next due instalment or instalments of Basic Rent. The Basic Amount set forth on Schedule D will be reduced by the amount by which the Excess Amount exceeds any reduction in Basic Rent pursuant to the preceding sentence as of the date such Basic Amount is payable. In no event shall the Basic Amount be reduced below an amount which when added to any unapplied Excess Amount shall yield a purchase price below the outstanding principal amount of the notes secured by the Mortgage from time to time or the sum of the Basic Rent payable on any Payment Date plus the unapplied Excess Amount, if any, be less than the debt service required to be paid on such notes on such Payment Date. In the event of any temporary requisition not exceeding 365 days, this Lease shall remain in full effect, and Lessee shall be entitled to receive the Net Condemnation Proceeds allocable to such temporary requisition. The term Basic Amount shall mean that amount set forth in Schedule D, as such Basic Amount may be reduced from time to time as provided in this Lease.

-11-

(d)  Notwithstanding the foregoing, Lessee, at its cost and expense, shall be entitled to separately claim, in any condemnation proceeding, any damages payable for moveable trade fixtures paid for and installed by Lessee (or any persons claiming under Lessee) without any contribution or reimbursement therefor by Lessor, for Lessee's loss of business, and for Lessee's relocation costs; provided Lessor's award is not reduced or otherwise adversely affected thereby.

13.  Casualty.  (a)  Lessee hereby irrevocably assigns to Lessor any compensation or insurance proceeds to which Lessee may become entitled by reason of Lessee's interest in the Property if the Property or any part thereof is damaged or destroyed by fire or other casualty.  If the Property or any part thereof shall be damaged or destroyed by fire or other casualty, Lessee shall promptly notify Lessor thereof.  Lessee shall negotiate, prosecute and adjust any claim for any compensation or insurance payment on account of any such damage or destruction; and Lessor shall collect any such compensation or insurance payment.  All amounts paid in connection with any such damage or destruction, shall be applied pursuant to this paragraph 13, and all such amounts paid or payable in connection therewith (minus the expenses of collecting such amounts) are herein called the Net Casualty Proceeds.  Lessor and Mortgagee shall be entitled to participate in any such negotiation, prosecution and adjustment.  Lessee shall pay all reasonable costs and expenses in connection with each such negotiation, prosecution and adjustment (including the reasonable costs of Lessor's and Mortgagee's participation therein including reasonable attorneys' fees) for which costs and expenses Lessee shall be reimbursed out of any compensation or insurance payment received.

(b)  After an occurrence of the character referred to in paragraph 13(a), this Lease shall continue in full effect, and Lessee shall, at its expense, regardless of whether any insurance proceeds payable in consequence of such casualty shall be sufficient for the purpose, rebuild, replace or repair any damage to the Property caused by such event in conformity with the requirements of paragraph 10(a) so as to restore the Property (as nearly as practicable) to the market value thereof immediately prior to such occurrence.  Prior to any such rebuilding, Lessee shall submit to Lessor an estimate of the maximum cost of such rebuilding (the Casualty Restoration Cost).  The Casualty Restoration Cost shall be paid first out of Lessee's own funds to the extent that the Casualty Restoration Cost exceeds the Net Casualty Proceeds payable in connection with such occurrence.  After such expenditure, and so long as no default has happened and is continuing under this Lease, Lessee shall be entitled to receive the Net Casualty Proceeds, but only against certificates of Lessee delivered to

-12-

Lessor from time to time (but not more often than once every 30 days) as such work of rebuilding, replacement and repair progresses, each such certificate describing the work for which Lessee is requesting payment and the cost incurred by Lessee in connection therewith and stating that Lessee has not theretofore received payment for such work.  Any Net Casualty Proceeds remaining after final payment of Casualty Restoration Cost has been made shall be paid to Lessee.

        (c)  If the Property shall be substantially damaged or destroyed in any single casualty so that the Improvements shall be unsuitable or uneconomic for restoration for continued use and occupancy in Lessee's business, then Lessee shall, not later than 30 days after the occurrence of such damage or destruction, deliver to Lessor (i) notice of its intention to terminate this Lease on the next Payment Date which occurs not less than 180 days after the delivery of such notice or such earlier date as is agreed to by Owner (the Termination Date) and (ii) a certificate signed by an authorized officer of Lessee stating that its Board of Directors has determined that such event has rendered the Property unsuitable or uneconomic for restoration, replacement and rebuilding for Lessee's continued use and occupancy and that the Property will not be restored.  Following receipt by Lessor of the notice and certificate of Lessee referred to in the preceding sentence, Lessor shall have a period of 15 days to enter upon and inspect the Property and to notify Lessee that, in Lessor's judgment, the Property can be suitably or economically restored for continued use and occupancy in Lessee's business and that the Property should be restored.  If, within 15 days after Lessor has notified Lessee that the Property should be restored, Lessee does not agree to promptly commence restoration of the Property, the final determination as to whether Lessee shall be required to restore the Property shall be made pursuant to the Arbitration Procedure.  Lessee shall pay for the costs of such arbitration.  If the arbitrator or arbitrators determine that the Property is suitable or economic for restoration, then this Lease shall continue in full force and effect and Lessee shall promptly commence to restore the Property pursuant to paragraph 13(b).  If the arbitrator or arbitrators determine that the Property is unsuitable or uneconomic for restoration, or if Lessor does not contest Lessee's determination that the Property has become unsuitable or uneconomic for restoration for continued use in its business, Lessee shall be deemed to have made an irrevocable offer to purchase the Property on the Termination Date at a price determined in accordance with Schedule D.  If Lessor shall reject such offer by notice to Lessee not later than the 10th day prior to the Termination Date, the Net Casualty Proceeds shall belong to Lessor and this Lease shall terminate on the Termination Date, except with respect to obligations and liabilities of Lessee hereunder, actual or contingent, which have arisen on or prior to the

-13-

Termination Date, but only upon payment by Lessee of all instalments of Basic Rent, all Additional Rent and all other sums then due and payable hereunder, to and including the Termination Date.  Unless Lessor shall have rejected such offer in accordance with this paragraph, Lessor shall be conclusively presumed to have accepted such offer, and on the Termination Date upon receipt of the purchase price, Lessor shall convey the remaining portion of the Property and all its interest in the Net Casualty Proceeds in accordance with paragraph 16.  If the Termination Date shall occur during an Extended Term, Lessee shall not be required to offer to purchase the Property and the Net Casualty Proceeds shall belong to Lessor.

14.   Uneconomic Use.  If, on or after July 1, 2001, Lessee shall deliver to Lessor its certificate signed by an authorized officer of Lessee stating that Lessee's Board of Directors has determined that the Property has become uneconomic or unsuitable for continued use and occupancy in Lessee's business and that Lessee has discontinued use thereof or will discontinue use thereof on or before the first Payment Date occurring not less than 360 days after the date of the delivery of such certificate and agreeing that neither Lessee nor an affiliate of Lessee shall use the Property for a period of at least five years thereafter and that Lessee, upon its purchase of the Property pursuant to this paragraph 14, will undertake to divest itself of its entire right, title and interest in the Property (other than that as the mortgagee under a purchase money mortgage), then, simultaneously with the delivery of such certificate, Lessee shall give notice to Lessor of its intention to terminate this Lease on the next Payment Date which occurs not less than 210 days after the delivery of such notice or such earlier date as is agreed to by Lessor (the Termination Date).  On the Termination Date, Lessee shall purchase the Property at a price equal to the greater of (i) a price determined in accordance with Schedule D and (ii) and the fair market value of Property as unencumbered by this Lease, and this Lease shall terminate on the Termination Date, except with respect to obligations and liabilities of Lessee hereunder, actual or contingent, which have arisen on or prior to the Termination Date upon receipt of the purchase price, but only upon payment by Lessee of all instalments of Basic Rent, all Additional Rent and all other sums then due and payable hereunder, to and including the Termination Date.  On the Termination Date, Lessor shall assign and convey the Property to Lessee or its designee pursuant to and upon compliance with paragraph 16.

15.   Reimbursement for Alterations and Additions. (a) Except with respect to the Additional Improvements, Lessee may request (herein called a Lessee's Request) that Lessor pay to Lessee the amount of Lessee's theretofore unreimbursed expenses (herein called Reimbursable Expenses) as provided in

this paragraph 15.  Reimbursable Expenses may include amounts which have been incurred by Lessee in connection with the construction of additional improvements on the Land Parcel pursuant to paragraph 10(a) or additions, alterations to or remodeling of the Improvements pursuant to paragraph 10(a) (or, in either case, the purchase by Lessee of land contiguous to the Land Parcel for the purpose of facilitating such additional improvements, additions, alterations or remodeling), but, in each case, which are in addition to, and do not constitute, alterations, additions or remodeling which Lessee is required to make pursuant to paragraph 10(b) or any other provision of this Lease.  Lessee shall have the right to make a Lessee's Request only so long as (i) Lessee has a tangible net worth, determined in accordance with generally accepted accounting principles, in excess of $250,000,000, (ii) the amount of such Reimbursable Expenses is $1,000,000 or more and such amount has been incurred by Lessee during the 12 month period prior to the making of such Lessee's Request and (iii) the value, structural integrity or use of the Property shall not be impaired by the construction to which such Reimbursable Expenses relate.  Each Lessee's Request shall be accompanied by (x) architect's drawings and Lessee's specifications relating to the Improvements with respect to which such Lessee's Request is made and (y) a certificate signed by an authorized officer of Lessee setting forth in reasonable detail the amount and character of the Reimbursable Expenses with respect to which such Lessee's Request is made, stating that the construction of all such Improvements has been completed in compliance with the requirements of paragraph 10 and this paragraph 15, specifying the dates on which the construction of any Improvements was commenced and completed, and stating that such Reimbursable Expenses are reimbursable in the amount requested under this paragraph 15.  Within 90 days after the receipt of such Lessee's Request and the documents specified in clauses (x) and (y) and provided Lessor has previously agreed to attempt to reimburse Lessee for such Reimbursable Expenses, Lessor agrees to pay to Lessee an amount equal to such Reimbursable Expenses so certified, but only if the following further conditions shall have been fulfilled within such 90-day period:

(i)    Lessor shall have issued and sold indebtedness (herein called the Additional Indebtedness) pursuant to the Mortgage, the terms of which shall be approved by Lessee, for the purpose of obtaining funds to pay such Reimbursable Expenses to Lessee and to pay the reasonable costs and expenses of issuing the Additional Indebtedness;

(ii)   The proceeds of the sale of the Additional Indebtedness actually received by Lessor shall have been not less than the amount of

-15-

such Reimbursable Expenses and amounts necessary to pay the reasonable costs and expenses of issuing the Additional Indebtedness;

(iii)    Lessor and Lessee shall have authorized, executed and delivered a supplement to this Lease, which supplement (the Lease Supplement) shall:  (A) increase the Basic Rent payments required to be made thereafter during the Basic Term by amounts which shall be at least sufficient to make each payment, when due, of the principal of and interest on, the Additional Indebtedness, (B) increase the purchase prices set forth in Schedule D hereto that would be payable upon a purchase of the Property pursuant to paragraph 12(b), 13(c) or 14 by amounts which shall be at least sufficient to pay the principal amount of the Additional Indebtedness at any time outstanding, together with all interest accrued and unpaid thereon (without adjustments for any prepayments made by Lessor) and (C) make such other changes, if any, as shall be necessary or appropriate, in the opinion of counsel for Mortgagee, by reason of the transactions contemplated by this paragraph 15(a); and

(iv)    Lessor shall have received from Lessee such other certificates, opinions of counsel, surveys, title insurance policies, consents to the assignment of this Lease (as supplemented) and other instruments as Lessor may request in order to enable Lessor to finance the cost of such Reimbursable Expenses by the issuance and sale of the Additional Indebtedness.

(b)  Lessor shall incur no liability under this Lease or otherwise by reason of the fact that Lessor does not pay Reimbursable Expenses, and whether or not Lessor pays such Reimbursable Expenses, this Lease shall continue in full effect, without modification.  All expenses of Lessor, Lessee and Mortgagee incurred in connection with such Lessee's Request and the issuance of Additional Indebtedness shall be borne by Lessee.

16.  Purchase Option; Procedure Upon Purchase.  (a) If an Event of Default shall not have occurred and be continuing hereunder, Lessee shall have the option to purchase the

-16-

Property on the last day of the Basic Term or on the last day of any Extended Term, upon at least one year prior written notice to Lessor, at a price equal to the fair market value of the Property as unencumbered by this Lease, as determined at the time of and pursuant to the Appraisal Procedure. "Appraisal Procedure" means that Lessor and Lessee shall mutually agree upon an appraiser. If Lessor and Lessee are unable to agree upon an appraiser within 30 days of notice given by either party, each such party shall select an appraiser and the two such appraisers shall promptly select a third appraiser. (If either party fails to select an appraiser within 30 days, the appraiser selected by the other party shall determine fair market value.) The amount to be determined shall be determined by any two of such appraisers, within 90 days of the appointment of the third appraiser. If any two of such appraisers are unable to agree as to such amount, then such amount shall be determined by the appraiser selected by the appraisers appointed by Lessor and Lessee. The determination by the appraiser or appraisers of such amount shall be final and binding on Lessor and Lessee and may be enforced by either party in any court of competent jurisdiction. Each appraiser appointed pursuant to this Lease shall be MAI certified or the equivalent.

(b) If Lessee shall purchase the Property pursuant to paragraph 12(b), 13(c) or 14 of this Lease, Lessor need not convey any better title thereto than was conveyed to Lessor by Lessee on the date of the commencement of the term hereof and Lessee or its designee shall accept such title, subject, however, to the condition of the Property on the date of purchase and all taxes, charges, liens, security interests and encumbrances on the Property and all applicable Legal Requirements, but free of the lien of the Mortgage and charges, liens, security interests and encumbrances resulting from acts of Lessor taken without the consent of Lessee.

(c) Upon the date fixed for any purchase of the Property hereunder, Lessee shall pay to Lessor the purchase price therefor, together with all Basic Rent, Additional Rent and other sums then due and payable hereunder to and including such date of purchase and Lessor shall deliver to Lessee a deed to the Property and any other instruments necessary to assign any other property then required to be assigned by Lessor pursuant hereto. Lessee shall pay all charges incident to such conveyance and assignment, including counsel fees, escrow fees, recording fees, title insurance premiums and all applicable taxes (other than any income, capital gains or franchise taxes of Lessor) which may be imposed by reason of such conveyance and assignment and the delivery of such deeds and other instruments. Upon the completion of such purchase, but not prior thereto, this Lease and all obligations hereunder shall terminate, except with respect to obligations and liabilities

-17-

of Lessee hereunder, actual or contingent, which have arisen on or prior to such date of purchase or replacement.

17. <u>Assignment and Subletting</u>. Lessee may sublet the Property or assign its interest hereunder, in whole or in part, provided that each sublease shall expressly be made subject to the provisions hereof. Lessee may cease use and operation of the Property. No such assignment, sublease or cessation of use and occupancy shall modify or limit any right or power of Lessor under this Lease or of Mortgagee or affect or reduce any obligation of Lessee hereunder, and all such obligations shall continue in full effect and, in the case of assignment or subletting, as obligations of a principal and not of a guarantor or surety, as though no assignment or subletting or cessation of use or occupancy had occurred. Neither this Lease nor any term hereby demised shall be mortgaged, pledged or hypothecated by Lessee, nor shall Lessee mortgage, pledge or hypothecate its interest in any sublease or the rentals payable thereunder other than to Lessor. Any such mortgage, pledge or hypothecation and any sublease or assignment made otherwise than as permitted by this paragraph 17, shall be void. Lessee shall, within ten (10) days after the execution of any such sublease or assignment, deliver a conformed copy thereof to Lessor. Lessee agrees not to sublet the Property to a tax exempt entity under a disqualified lease as defined in Internal Revenue Code Section 168.

18. <u>Permitted Contests</u>. Lessee shall not be required, nor shall Lessor have the right, to pay, discharge or remove any tax, assessment, levy, fee, rent (except Basic Rent and purchase prices), charge, lien or encumbrance, or to comply with any Legal Requirement, as long as Lessee shall contest (in the case of any item involving more than $25,000, such contest may be made only after prior written notice to the Lessor) the existence, amount or validity thereof by appropriate proceedings promptly commenced and diligently prosecuted which shall prevent collection of or other realization upon such tax, assessment, levy, fee, rent, charge, lien or encumbrance so contested, and which also shall prevent sale, forfeiture or loss of the Property or any part thereof or any Basic Rent, Additional Rent, purchase price or any other sums payable under this Lease to satisfy the same, and which shall not affect the payment or retention of any Basic Rent, Additional Rent, purchase price or any other sums payable under this Lease; provided that such contest shall not subject Lessor or the Trustees to the risk of any liability. Lessee shall give such reasonable security as may be demanded by Lessor or the Trustees to insure ultimate payment of such tax, assessment, levy, fee, rent, charge, lien, or encumbrance and compliance with Legal Requirements and to prevent any sale, forfeiture or loss of the Property or any part thereof or any Basic Rent,

Additional Rent, purchase price or any other sums payable under this Lease by reason of such nonpayment or noncompliance.

19. Conditional Limitations; Default Provisions.
(a)  Any of the following occurrences or acts occurring shall constitute an event of default under this Lease:  (i) if Lessee shall (A) fail to pay any Basic Rent, Additional Rent or other sum (other than the purchase price for the Property) required to be paid by Lessee hereunder when and as the same shall become due and payable and such failure shall continue for five (5) days after notice of such failure shall have been given by Lessor, or (B) fail to pay any purchase price required to be paid by Lessee hereunder when and as the same shall become due and payable, or (C) fail to observe and perform any covenant or agreement contained in paragraph 7 or 26, or (D) fail to observe or perform any other provision or agreement hereof and such failure shall continue for thirty (30) days after notice of such failure shall have been given by Lessor (provided, that in the case of any such default which cannot be cured by the payment of money and cannot with diligence be cured within such 30-day period, if Lessee shall commence promptly to cure the same and thereafter prosecute the curing thereof with diligence, the time within which such default may be cured shall be extended for such period as is necessary to complete the curing thereof with diligence and continuity but not in excess of 90 days); or (ii) if any representation or warranty of Lessee set forth herein, in any certificate delivered in connection with the execution hereof, or in any certificate, notice, demand or request delivered to Lessor hereunder shall be inaccurate, incomplete or misleading in any material respect, as of the time when the same shall have been made or as to continuing warranties as of any time when the same shall be in effect; or (iii) if Lessee shall file a petition commencing a voluntary case under any Chapter of Title 11 of the United States Code (the Bankruptcy Code), or for liquidation, reorganization or for an arrangement pursuant to any other federal or state bankruptcy law or any similar federal or state law, or shall become insolvent, or shall make an assignment for the benefit of creditors, or shall fail to pay its debts generally as they become due, or shall admit in writing its inability to pay its debts generally as they become due, or if a petition commencing an involuntary case under any chapter of the Bankruptcy Code or an answer proposing the adjudication of Lessee as a debtor or a bankrupt or proposing its liquidation or reorganization pursuant to the Bankruptcy Code, any other federal or state bankruptcy law or any similar federal or state law shall be filed in any court and Lessee shall consent to or acquiesce in the filing thereof or such petition or answer shall not be discharged or denied within 90 days after the filing thereof; or (iv) if a custodian, receiver, trustee or liquidator of Lessee or of all or substantially all of the assets of Lessee or the Property or

-19-

Lessee's estate therein shall be appointed in any proceeding brought by Lessee, or if any such custodian, receiver, trustee or liquidator shall be appointed in any proceeding brought against Lessee and shall not be discharged within 90 days after such appointment, or if Lessee shall consent to or acquiesce in such appointment; or (v) if the Property shall be vacated by Lessee and left unattended or without maintenance; or (vi) if final judgment for the payment of money in excess of $50,000 shall be rendered against Lessee and Lessee shall not discharge the same or cause it to be discharged within 30 days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which such judgment was granted, based or entered, and secure a stay of execution pending such appeal.

(b)  If an event of default shall have happened and be continuing, Lessor shall have the right to give Lessee notice of Lessor's termination of the term of this Lease on a date, specified in such notice, which shall be at least ten days after the date such notice was given.  Upon the giving of such notice and provided that such event of default shall be continuing, the term of this Lease and the estate hereby granted shall expire and terminate on such date as fully and completely and with the same effect as if such date were the date herein fixed for the expiration of the term of this Lease, and all rights of Lessee hereunder shall expire and terminate, but Lessee shall remain liable as hereinafter provided.

(c)  If an event of default shall have happened and be continuing, Lessor shall have the immediate right, whether or not the term of this Lease shall have been terminated pursuant to paragraph 19(b), to re-enter and repossess the Property by summary proceedings, ejectment or any other legal action (or in any manner Lessor determines to be necessary or desirable) and shall have the immediate right to remove all persons and property therefrom.  Lessor shall be under no liability by reason of any such re-entry, repossession or removal.  No such re-entry, repossession or removal shall be construed as an election by Lessor to terminate the term of this Lease unless a notice of such termination is given to Lessee pursuant to paragraph 19(b), or unless such termination is decreed by a court or other governmental entity of competent jurisdiction.

(d)  At any time or from time to time, after the re-entry or repossession of the Property pursuant to paragraph 19(c), whether or not the term of this Lease shall have been terminated pursuant to paragraph 19(b), Lessor may (but shall be under no obligation to) relet the Property for the account of Lessee, in the name of Lessee or Lessor or otherwise, without notice to Lessee, for such term or terms and on such conditions and for such uses as Lessor, in its absolute discretion, may determine.  Lessor may collect and receive any

-20-

rents payable by reason of such reletting. Lessor shall not be liable for any failure to relet the Property or for any failure to collect any rent due upon any such reletting; and no efforts by Lessor to relet the Property or otherwise mitigate damages from any default hereunder shall constitute a waiver of any right of Lessor to recover damages of any nature under this paragraph 19.

(e)  No expiration or termination of the term of this Lease pursuant to paragraph 19(b), by operation of law or otherwise, and no re-entry or repossession of the Property pursuant to paragraph 19(c) or otherwise, and no reletting of the Property pursuant to paragraph 19(d) or otherwise, shall relieve Lessee of its liabilities and obligations hereunder, all of which shall survive such expiration, termination, re-entry, repossession or reletting.

(f)  If an event of default shall occur, whether or not Lessee shall have abandoned the Property, this Lease shall continue in full force and effect unless Lessor shall terminate Lessee's right to possession of the Property pursuant to paragraph 19(b) or unless this Lease shall have been terminated by order of any court.  Lessor may enforce all of its rights and remedies hereunder prior to such termination including the right to recover all Basic Rent, Additional Rent, purchase price and other sums payable under this Lease by Lessee as such amounts become due.  In no event prior to such termination shall Lessor's maintenance or preservation of the Property, the exercise of Lessor's rights under any agreement between Lessee and Lessor, or the appointment of a receiver upon the initiative of Lessor (which shall be at Lessee's expense) to protect Lessor's interest under this Lease be deemed to constitute a termination of Lessee's right to possession of the Property or a termination of this Lease.  Until this Lease shall have been terminated by Lessor as provided in paragraph 19(b) or by order of any court, Lessor may take any and all actions provided for herein or permitted by law without terminating this Lease, and this Lease shall continue in full force and effect.

(g)  Notwithstanding paragraph 19(f); in the event of any expiration or termination of the term of this Lease or re-entry or repossession of the Property by reason of the occurrence of an event of default, Lessee will pay to Lessor all Basic Rent, Additional Rent, purchase price and other sums required to be paid by Lessee to and including the date of such expiration, termination, re-entry or repossession; and, thereafter, Lessee shall, until the end of what would have been the term of this Lease in the absence of such expiration, termination, re-entry or repossession, and whether or not the Property shall have been relet, be liable to Lessor for, and shall pay to Lessor, as liquidated and agreed current damages:

-21-

(i) all Basic Rent, Additional Rent, purchase price and other sums which would be payable under this Lease by Lessee in the absence of such expiration, termination, re-entry or repossession, less (ii) the net proceeds, if any, of any reletting effected for the account of Lessee pursuant to paragraph 19(d), after deducting from such proceeds all Lessor's expenses in connection with such default and reletting (including, but not limited to all repossession costs, brokerage commissions, reasonable attorneys' fees and expenses, employees' expenses, alteration costs and expenses of preparation for such reletting and operating the Property). Lessee will pay such current damages on the days on which Basic Rent would be payable under this Lease in the absence of such expiration, termination, re-entry or repossession, and Lessor shall be entitled to recover the same from Lessee on each such day.

(h)  At any time after any such termination or repossession of the Property by reason of the occurrence of an event of default, whether or not Lessor shall have collected any current damages pursuant to paragraph 19(g), Lessor shall be entitled to receive from Lessee, and Lessee will pay to Lessor on demand, as and for liquidated and agreed final damages for Lessee's default and in lieu of all current damages beyond the date of such demand (it being agreed that it would be impracticable or extremely difficult to fix the actual damages), an amount by which (i) the Basic Rent, Additional Rent and other sums which would be payable under this Lease from the date of such demand (or, if it be earlier, the date to which Lessee shall have satisfied in full its obligations under paragraph 19(g) to pay current damages) for what would be the then unexpired term of this Lease in the absence of such termination or repossession, discounted at the rate of 6% exceeds (ii) the then fair net rental value of the Property for the same period discounted at the same rate, but in no event shall such liquidated damages be less than the amount set forth in Schedule E.  If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, Lessor shall be entitled to the maximum amount allowable under such statute or rule of law.

20.  _Additional Rights of Lessor_.  (a)  No right or remedy hereunder shall be exclusive of any other right or remedy, but shall be cumulative and in addition to any other right or remedy hereunder or now or hereafter existing. Failure to insist upon the strict performance of any provision hereof or to exercise any option, right, power or remedy contained herein shall not constitute a waiver or relinquishment thereof for the future. Receipt by Lessor of any Basic Rent, Additional Rent, purchase price or other sum payable hereunder with knowledge of the breach of any provision hereof shall not constitute waiver of such breach, and no

-22-

waiver by Lessor of any provision hereof shall be deemed to have been made unless made in writing. Lessor shall be entitled to injunctive relief in case of the violation, or attempted or threatened violation, of any of the provisions hereof, or to a decree compelling performance of any of the provisions hereof, or to any other remedy allowed to Lessor by law.

(b)  Lessee hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have to redeem the Property or to have a continuance of this Lease after termination of Lessee's right of occupancy by order or judgment of any court or by any legal process or writ, or under the terms of this Lease, or after the termination of the term of this Lease as herein provided, and (ii) the benefits of any law which exempts property from liability for debt or for distress for rent.

(c)  If Lessee shall be in default in the performance of any of its obligations hereunder, Lessee shall pay to Lessor, on demand, all expenses incurred by Lessor as a result thereof, including reasonable attorneys' fees and expenses.  If Lessor shall be made a party to any litigation commenced against Lessee and Lessee shall fail to provide Lessor with counsel approved by Lessor and pay the expenses thereof, Lessee shall pay all costs and reasonable attorneys' fees and expenses incurred by Lessor in connection with such litigation.

21.  <u>Assignment of Sublease Rents</u>.  Lessee hereby irrevocably assigns to Lessor all rents due or to become due from any sublessee under this Lease and/or from any tenant or occupant of the Property, or any part thereof, together with any sums payable to Lessee in consequence of its assignment or transfer of this Lease or any interest or right herein, and Lessee specifically authorizes and empowers Lessor to collect and receive such rent and other sums for its own uses and purposes; provided, however, that Lessor agrees that so long as no default has occurred and is continuing under this Lease, Lessee shall have the right to collect and receive such rents and other sums for its own uses and purposes.  Upon the occurrence and during the continuance of any default, Lessor shall have absolute title to such rents and other sums and the absolute right to collect and receive the same, free of any right or claim of Lessee; all such rents and other sums so collected by Lessor shall be credited to payments of Basic Rent payable under this Lease.

22.  <u>Notices, Demands and Other Instruments</u>.  All notices, offers, consents and other instruments given pursuant to this Lease shall be in writing and shall be validly given when hand delivered or mailed by prepaid courier or certified

mail return receipt requested or by messenger or courier
service guaranteeing overnight delivery postage prepaid to the
party to be notified, (a) if to Lessor, addressed to Lessor at
its address set forth above and (b) if to Lessee, addressed to
Lessee at its address set forth above.  Notices shall be
effective upon receipt or upon refusal to accept delivery.
Lessor and Lessee each may from time to time specify, by giving
written notice to the other party, (i) any other address as its
address for purposes of this Lease and (ii) any other person or
entity that is to receive copies of notices, offers, consents
and other instruments hereunder.

        23.  _Estoppel Certificates_.  (a) Lessee will, from
time to time, upon ten (10) days' prior request by Lessor,
execute, acknowledge and deliver to Lessor a certificate signed
by an authorized officer of Lessee stating that this Lease is
unmodified and in full effect (or, if there have been
modifications, that this Lease is in full effect as modified,
and setting forth such modifications) and the dates to which
Basic Rent, Additional Rent and other sums payable hereunder
have been paid, and either stating that to the knowledge of the
signer of such certificate no default exists hereunder or
specifying each such default of which the signer has
knowledge.  Any such certificate may be relied upon by any
actual or prospective mortgagee or purchaser of the Property.

        (b)  Lessor will, from time to time, upon ten (10)
days' prior request by Lessee, execute, acknowledge and deliver
to Lessee a certificate signed by an authorized officer of
Lessor stating that this Lease is unmodified and in full effect
(or, if there have been modifications, that this Lease is in
full effect as modified, and setting forth such modifications)
and the dates to which Basic Rent, Additional Rent and other
sums payable hereunder have been paid, and either stating that
to the knowledge of the signer of such certificate no default
exists hereunder or specifying each such default of which the
signer has knowledge.

        24.  _No Merger_.  There shall be no merger of this
Lease or of the leasehold estate hereby created with any other
estate in the Property by reason of the fact that the same
person acquires or holds, directly or indirectly, this Lease or
the leasehold estate hereby created or any interest herein or
in such leasehold estate as well as any other estate in the
Property or any interest in such estate.

        25.  _Surrender_.  Upon the expiration or termination of
the term hereof (other than pursuant to a purchase of the
Property by Lessee pursuant to this Lease), Lessee shall
surrender the Property to Lessor in the condition in which the
Property was originally received from Lessor, except as
repaired, rebuilt, restored, altered or added to as permitted

-24-

or required hereby and except for ordinary wear and tear. Lessee shall remove from the Property on or prior to such expiration or termination all property situated thereon which is not owned by Lessor, and shall repair any damage caused by such removal. Property not so removed shall become property of Lessor, and Lessor may cause such property to be removed from the Property and disposed of, but the cost of any such removal and disposition and of repairing any damage caused by such removal shall be borne by Lessee.

26. <u>Merger, Consolidation, Sale of Assets; Net Worth</u>. Lessee covenants that it will not merge or consolidate with one or more other corporations in which Lessee shall not be the surviving entity or sell or otherwise dispose of all or substantially all the assets of Lessee unless the surviving entity or transferee of assets shall (i) have a net worth at least equal to the greater of Lessee's net worth (A) as of the date hereof and (B) as of the date immediately preceding such transfer or consolidation, (ii) be a corporation formed under the laws of the United States or any state or district thereof and (iii) deliver to Lessor a duly executed instrument in recordable form assuming all obligations, covenants and responsibilities of Lessee hereunder.

27. <u>Separability; Binding Effect.</u> Each provision hereof shall be separate and independent and the breach of any such provision by Lessor shall not discharge or relieve Lessee from its obligations to perform each and every covenant to be performed by Lessee hereunder. If any provision hereof or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remaining provisions hereof, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each provision hereof shall be valid and enforceable to the extent permitted by law. All provisions contained in this Lease shall be binding upon, inure to the benefit of, and be enforceable by, the respective successors and assigns of Lessor and Lessee to the same extent as if each such successor and assign were named as a party hereto. This Lease may not be changed, modified or discharged except by a writing signed by Lessor and Lessee.

28. <u>Governing Law</u>. This Lease shall be governed by and interpreted in accordance with the laws of the State of Florida.

29. <u>Headings and Table of Contents</u>. The headings of various paragraphs herein and hereto and the Table of Contents have been inserted for convenient reference only and shall not to any extent have the effect of modifying or amending the express terms and provisions of this Lease.

30.   <u>Schedules</u>.   The following are Schedules A, B, C and D referred to in this Lease, which schedules are attached hereto incorporated by reference and made a part of this Lease.

## SCHEDULE A

That certain piece, parcel or tract of land situate, lying and being in the City of Jacksonville, County of Duval, State of Florida, to wit:

A portion of the Southeast 1/4 of Section 7, Township 2 South, Range 26 East, Duval County, Florida, being more particularly described as follows:

For a point of reference, commence at the intersection of the Northerly right-of-way line of Commonwealth Road, as now established for a width of 60 feet, with the Westerly right-of-way line of Edgewood Avenue, as now established for a width of 100 feet; run thence South 88°00'00" West, along said Northerly right-of-way line of Commonwealth Road, a distance of 802.34 feet to the point of beginning for this description.

From the point of beginning thus described, run thence North 00°08'35" East, a distance of 1323.92 feet to the Southerly right-of-way line of 1st Street West, as now established for a width of 60 feet; run thence South 87°47'39" West, along said Southerly right-of-way line, a distance of 922.77 feet to a found iron pipe; run thence South 00°04'15" West, a distance of 1320.54 feet to a point in the aforementioned Northerly right-of-way line of Commonwealth Road; run thence North 88°00'00" East along said Northerly right-of-way line, a distance of 920.98 feet to a found iron pipe and the point of beginning.

SCHEDULE B

Terms and Basic Rent Payments

Basic Rent

1.   The instalment of Basic Rent payable for the Interim Term shall be $19,457.51 ($13,653.34 payable with respect to the Improvements existing on the date of execution hereof (the Existing Improvements) and the Land Parcel and $5,804.17 payable with respect to the Additional Improvements) and shall be payable on June 30, 1986.

2.   The instalment of Basic Rent payable for each month occurring during the Basic Term shall be $94,190.96 ($67,035.61 payable with respect to the Existing Improvements and the Land Parcel and $27,155.35 payable with respect to the Additional Improvements) and shall be payable on the last day of each month occurring during such portion of the Basic Term.

3.   Each instalment of Basic Rent payable for each month occurring during the Extended Terms shall be $97,320.23 ($69,262.71 payable with respect to the Existing Improvements and the Land Parcel and $28,057.52 payable with respect to the Additional Improvements) and shall be payable on the last day of each month occurring during such Extended Terms.

## Terms

1.    The Interim Term shall commence on June 24, 1986 and shall expire at midnight on June 30, 1986.

2.    The Basic Lease Term shall commence on July 1, 1986, and shall expire at midnight on June 30, 2011.

3.    The first Extended Term shall commence on July 1, 2011, and shall expire at midnight on June 30, 2021.

4.    The second Extended Term shall commence on July 1, 2021, and shall expire at midnight on June 30, 2026.

5.    The third Extended Term shall commence on July 1, 2026, and shall expire at midnight on June 30, 2031.

6.    The fourth Extended Term shall commence on July 1, 2031, and shall expire at midnight on June 30, 2036.

7.    The fifth Extended Term shall commence on July 1, 2036, and shall expire at midnight on June 30, 2041.

## SCHEDULE C

## Additional Improvements

The approximately 180,000 square feet of additional warehouse space to be constructed pursuant to the Financing, Construction and Agency Agreement, dated as of June 20, 1986, among Lessor, Lessee and Bank of New England Trust Company, National Association.

## SCHEDULE D

## Purchase Prices

The Purchase Price on any Termination Date shall be the sum of the Stipulated Loss Amount on such Termination Date set forth on Schedule D-1 plus the Stipulated Loss Amount on such Termination Date set forth on Schedule D-2.

## SCHEDULE D1

### STATEMENT OF STIPULATED LOSS AMOUNTS BY RENT DATE

| SETTLEMENT DATE | STIPULATED LOSS AMOUNT | STIPULATED LOSS AMOUNT % OF COST | STIPULATED LOSS PLUS RENT | STIPULATED LOSS PLUS RENT % OF COST |
|---|---|---|---|---|
| 8/ 1/1986 | 9334686 | 112.4321384 | 9481724 113.2395524 |
| 9/ 1/1986 | 9348689 | 112.5996811 | 9415644 113.4872150 |
| 10/ 1/1986 | 9368679 | 112.7451786 | 9427714 113.5525926 |
| 11/ 1/1986 | 9373889 | 112.9833242 | 9440844 113.7187381 |
| 12/ 1/1986 | 9387833 | 113.0626824 | 9454868 113.8780144 |
| 1/ 1/1987 | 9358889 | 112.6272658 | 9417925 113.4346799 |
| 2/ 1/1987 | 9361831 | 112.7494255 | 9428867 113.5566395 |
| 3/ 1/1987 | 9371247 | 112.8724679 | 9438282 113.6798818 |
| 4/ 1/1987 | 9381149 | 112.9517481 | 9449185 113.7991548 |
| 5/ 1/1987 | 9389652 | 113.0541496 | 9456695 113.9815635 |
| 6/ 1/1987 | 9399846 | 113.2272954 | 9466892 114.0147873 |
| 7/ 1/1987 | 9408842 | 113.3811958 | 9473878 114.1856899 |
| 8/ 1/1987 | 9415523 | 113.4857570 | 9462559 114.2131789 |
| 9/ 1/1987 | 9424265 | 113.5118494 | 9491381 114.3184633 |
| 10/ 1/1987 | 9431483 | 113.5572276 | 9496439 114.4844416 |
| 11/ 1/1987 | 9439421 | 113.6935998 | 9586457 114.5818137 |
| 12/ 1/1987 | 9447494 | 113.7982332 | 9514538 114.5962471 |
| 1/ 1/1988 | 9332297 | 112.4833291 | 9399332 113.2187431 |
| 2/ 1/1988 | 9338812 | 112.4721672 | 9485847 113.2795811 |
| 3/ 1/1988 | 9343766 | 112.5414781 | 9410382 113.3488928 |
| 4/ 1/1988 | 9348892 | 112.6832191 | 9415928 113.4186331 |
| 5/ 1/1988 | 9353266 | 112.6558927 | 9420381 113.4633866 |
| 6/ 1/1988 | 9358227 | 112.7151496 | 9425263 113.5238636 |
| 7/ 1/1988 | 9362188 | 112.7622988 | 9429136 113.5697128 |
| 8/ 1/1988 | 9366557 | 112.8154792 | 9433592 113.6233932 |
| 9/ 1/1988 | 9371842 | 112.8782216 | 9438878 113.6774155 |
| 10/ 1/1988 | 9374435 | 112.5183669 | 9441478 113.7182888 |
| 11/ 1/1988 | 9378487 | 112.9597137 | 9445443 113.7661276 |
| 12/ 1/1988 | 9382484 | 113.8265523 | 9449448 113.8142662 |
| 1/ 1/1989 | 9365384 | 113.8417832 | 9452348 113.8491972 |
| 2/ 1/1989 | 9386788 | 113.8638447 | 9455815 113.8918586 |
| 3/ 1/1989 | 9392275 | 113.1257465 | 9459311 113.9331685 |
| 4/ 1/1989 | 9395293 | 113.3628981 | 9462328 113.9695841 |
| 5/ 1/1989 | 9397565 | 113.1894597 | 9464681 113.9968737 |
| 6/ 1/1989 | 9400352 | 113.2238274 | 9467388 114.0384413 |
| 7/ 1/1989 | 9402143 | 113.2445978 | 9469378 114.0528189 |
| 8/ 1/1989 | 9404444 | 113.2723145 | 9471488 114.0797284 |
| 9/ 1/1989 | 9406755 | 113.3811585 | 9473791 114.1075645 |
| 10/ 1/1989 | 9408866 | 113.3159393 | 9475182 114.1233532 |
| 11/ 1/1989 | 9409883 | 113.3378264 | 9476919 114.1452483 |
| 12/ 1/1989 | 9411786 | 113.3517828 | 9478742 114.1671959 |
| 1/ 1/1990 | 9412525 | 113.3496398 | 9479568 114.1778538 |
| 2/ 1/1990 | 9413845 | 113.3855452 | 9480881 114.1929591 |
| 3/ 1/1990 | 9415167 | 113.4814678 | 9482283 114.2088817 |
| 4/ 1/1990 | 9416842 | 113.4128883 | 9483877 114.2194143 |

2

| | | | |
|---|---|---|---|
| 5/ 1/1990 | 9416240 | 113.4143754 | 9483276 114.2210893 |
| 6/ 1/1990 | 9416880 | 113.4220965 | 9483915 114.2295104 |
| 7/ 1/1990 | 9416617 | 113.4189322 | 9483653 114.2263461 |
| 8/ 1/1990 | 9416791 | 113.4210261 | 9483827 114.2284408 |
| 9/ 1/1990 | 9416956 | 113.4230184 | 9483992 114.2304324 |
| 10/ 1/1990 | 9416216 | 113.4140965 | 9483251 114.2215104 |
| 11/ 1/1990 | 9415987 | 113.4103834 | 9482943 114.2177974 |
| 12/ 1/1990 | 9415586 | 113.4065191 | 9482622 114.2139331 |
| 1/ 1/1991 | 9414355 | 113.3916904 | 9481391 114.1991043 |
| 2/ 1/1991 | 9413552 | 113.3820208 | 9480588 114.1894339 |
| 3/ 1/1991 | 9412733 | 113.3721473 | 9479768 114.1795613 |
| 4/ 1/1991 | 9411457 | 113.3572656 | 9478533 114.1646795 |
| 5/ 1/1991 | 9409884 | 113.3369776 | 9476840 114.1442915 |
| 6/ 1/1991 | 9408485 | 113.3200256 | 9475441 114.1274396 |
| 7/ 1/1991 | 9406348 | 113.2952402 | 9473384 114.1026621 |
| 8/ 1/1991 | 9404561 | 113.2739693 | 9471617 114.0813832 |
| 9/ 1/1991 | 9402798 | 113.2523099 | 9469825 114.0598028 |
| 10/ 1/1991 | 9402337 | 113.2226420 | 9467372 114.0302567 |
| 11/ 1/1991 | 9398171 | 113.1967547 | 9465286 114.0241686 |
| 12/ 1/1991 | 9395976 | 113.1703242 | 9463012 113.9777382 |
| 1/ 1/1992 | 9393117 | 113.1358869 | 9460153 113.9433888 |
| 2/ 1/1992 | 9392542 | 113.1848668 | 9457577 113.9122795 |
| 3/ 1/1992 | 9367934 | 113.0734687 | 9454570 113.8808748 |
| 4/ 1/1992 | 9385812 | 113.0362632 | 9452048 113.8456771 |
| 5/ 1/1992 | 9381752 | 112.9983998 | 9448788 113.8064138 |
| 6/ 1/1992 | 9376677 | 112.9619556 | 9445712 113.7693695 |
| 7/ 1/1992 | 9375121 | 112.9191277 | 9442156 113.7265416 |
| 8/ 1/1992 | 9371747 | 112.8784656 | 9438782 113.6859825 |
| 9/ 1/1992 | 9368334 | 112.6373637 | 9435370 113.6447976 |
| 10/ 1/1992 | 9364436 | 112.7984685 | 9431474 113.5976746 |
| 11/ 1/1992 | 9360721 | 112.7456924 | 9427757 113.5531063 |
| 12/ 1/1992 | 9356963 | 112.7084233 | 9423996 113.5076373 |
| 1/ 1/1993 | 9352718 | 112.6493813 | 9419754 113.4567152 |
| 2/ 1/1993 | 9348658 | 112.6002962 | 9415686 113.4077122 |
| 3/ 1/1993 | 9344537 | 112.5507599 | 9411572 113.3581728 |
| 4/ 1/1993. | 9340182 | 112.4983819 | 9407217 113.3057159 |
| 5/ 1/1993 | 9335525 | 112.4422201 | 9402561 113.2496340 |
| 6/ 1/1993 | 9330996 | 112.3876654 | 9398032 113.1958793 |
| 7/ 1/1993 | 9326166 | 112.3282792 | 9393101 113.1356930 |
| 8/ 1/1993 | 9321268 | 112.2703935 | 9388295 113.0778074 |
| 9/ 1/1993 | 9316483 | 112.2118960 | 9383438 113.0193188 |
| 10/ 1/1993 | 9311142 | 112.1405346 | 9378178 112.9559486 |
| 11/ 1/1993 | 9306883 | 112.0866392 | 9373839 112.8940531 |
| 12/ 1/1993 | 9300811 | 112.0248978 | 9367847 112.8315129 |
| 1/ 1/1994 | 9295212 | 111.9566618 | 9362247 112.7648749 |
| 2/ 1/1994 | 9289732 | 111.8986547 | 9356767 112.6908687 |
| 3/ 1/1994 | 9284195 | 111.8239693 | 9351231 112.6313833 |
| 4/ 1/1994 | 9278445 | 111.7547114 | 9345481 112.5621253 |
| 5/ 1/1994 | 9272642 | 111.6824873 | 9339470 112.4898232 |
| 6/ 1/1994 | 9266515 | 111.6110153 | 9333558 112.4184292 |
| 7/ 1/1994 | 9260255 | 111.5356156 | 9327298 112.3430295 |
| 8/ 1/1994 | 9254866 | 111.4610578 | 9321303 112.2685118 |
| 9/ 1/1994 | 9247819 | 111.3859296 | 9314854 112.1932436 |
| 10/ 1/1994 | 9241234 | 111.3065234 | 9308270 112.1139374 |
| 11/ 1/1994 | 9234720 | 111.2288667 | 9301756 112.0354886 |
| 12/ 1/1994 | 9228141 | 111.1488266 | 9295177 111.9562485 |
| 1/ 1/1995 | 9221224 | 111.0655154 | 9288260 111.8729294 |
| 2/ 1/1995 | 9214375 | 110.9838283 | 9281411 111.7924343 |
| 3/ 1/1995 | 9207458 | 110.8997833 | 9274494 111.7071222 |

3

| | | | | |
|---|---|---|---|---|
| 4/ 1/1995 | 9200352 | 110.8141143 | 9267387 | 111.6215282 |
| 5/ 1/1995 | 9193033 | 110.7259684 | 9260868 | 111.5333744 |
| 6/ 1/1995 | 9185744 | 110.6381649 | 9252779 | 111.4455788 |
| 7/ 1/1995 | 9170180 | 110.5470623 | 9245215 | 111.3544762 |
| 8/ 1/1995 | 9170644 | 110.4562933 | 9237679 | 111.2637072 |
| 9/ 1/1995 | 9163034 | 110.3646394 | 9238870 | 111.1728523 |
| 10/ 1/1995 | 9155147 | 110.2696444 | 9222183 | 111.0778584 |
| 11/ 1/1995 | 9147285 | 110.1749519 | 9214321 | 110.9823658 |
| 12/ 1/1995 | 9139347 | 110.0793489 | 9206383 | 110.8867549 |
| 1/ 1/1996 | 9131129 | 109.9883501 | 9198165 | 110.7877721 |
| 2/ 1/1996 | 9122933 | 109.8616436 | 9189969 | 110.6898576 |
| 3/ 1/1996 | 9114659 | 109.7819774 | 9181694 | 110.5893914 |
| 4/ 1/1996 | 9106214 | 109.6982446 | 9173249 | 110.4876786 |
| 5/ 1/1996 | 9097562 | 109.5768533 | 9164597 | 110.3834673 |
| 6/ 1/1996 | 9086912 | 109.4718765 | 9155948 | 110.2792989 |
| 7/ 1/1996 | 9080089 | 109.3646380 | 9147845 | 110.1728519 |
| 8/ 1/1996 | 9071186 | 109.2574857 | 9138142 | 110.0646226 |
| 9/ 1/1996 | 9062119 | 109.1491578 | 9129154 | 109.9565785 |
| 10/ 1/1996 | 9052874 | 109.0370853 | 9119910 | 109.8452232 |
| 11/ 1/1996 | 9043627 | 108.9264372 | 9110663 | 109.7339511 |
| 12/ 1/1996 | 9034293 | 108.8148154 | 9101328 | 109.6214224 |
| 1/ 1/1997 | 9024699 | 108.6964491 | 9091734 | 109.5059631 |
| 2/ 1/1997 | 9015899 | 108.5826326 | 9082135 | 109.3982445 |
| 3/ 1/1997 | 9005485 | 108.4661284 | 9072445 | 109.2735343 |
| 4/ 1/1997 | 8995552 | 108.3473916 | 9062588 | 109.1548855 |
| 5/ 1/1997 | 8985583 | 108.2263592 | 9052539 | 109.0337731 |
| 6/ 1/1997 | 8975428 | 108.1058123 | 9042464 | 108.9124762 |
| 7/ 1/1997 | 8965122 | 107.9885213 | 9032158 | 108.7882952 |
| 8/ 1/1997 | 8954788 | 107.8564101 | 9021624 | 108.6638241 |
| 9/ 1/1997 | 8944357 | 107.7327741 | 9011393 | 108.5381898 |
| 10/ 1/1997 | 8933692 | 107.6023185 | 9008726 | 108.4097325 |
| 11/ 1/1997 | 8922996 | 107.4734572 | 8998832 | 108.2809811 |
| 12/ 1/1997 | 8912202 | 107.3434558 | 8979236 | 108.1502689 |
| 1/ 1/1998 | 8901167 | 107.2105671 | 8969203 | 108.0179618 |
| 2/ 1/1998 | 8890180 | 107.0772668 | 8957135 | 107.8846082 |
| 3/ 1/1998 | 8878930 | 106.9427289 | 8945965 | 107.7501428 |
| 4/ 1/1998 | 8867595 | 106.8062128 | 8934631 | 107.6136260 |
| 5/ 1/1998 | 8856898 | 106.6676154 | 8923124 | 107.4758294 |
| 6/ 1/1998 | 8844524 | 106.5283276 | 8911568 | 107.3357415 |
| 7/ 1/1998 | 8832755 | 106.3865718 | 8899798 | 107.1939857 |
| 8/ 1/1998 | 8820926 | 106.2442507 | 8887961 | 107.0515126 |
| 9/ 1/1998 | 8808989 | 106.1003123 | 8876024 | 106.9077262 |
| 10/ 1/1998 | 8796842 | 105.9540210 | 8863878 | 106.7614349 |
| 11/ 1/1998 | 8784634 | 105.8265751 | 8851669 | 106.6143890 |
| 12/ 1/1998 | 8772313 | 105.6555784 | 8839349 | 106.4659923 |
| 1/ 1/1999 | 8759781 | 105.5076368 | 8826817 | 106.3150528 |
| 2/ 1/1999 | 8747184 | 105.3555855 | 8814219 | 106.1633284 |
| 3/ 1/1999 | 8734471 | 105.2027648 | 8881598 | 106.0101988 |
| 4/ 1/1999 | 8721598 | 105.0477376 | 8788653 | 105.8551515 |
| 5/ 1/1999 | 8708574 | 104.8905477 | 8775689 | 105.6982816 |
| 6/ 1/1999 | 8695456 | 104.7329822 | 8762494 | 105.5403142 |
| 7/ 1/1999 | 8682168 | 104.5728238 | 8749284 | 105.3802377 |
| 8/ 1/1999 | 8668784 | 104.4116236 | 8735828 | 105.2190375 |
| 9/ 1/1999 | 8655279 | 104.2489563 | 8722315 | 105.0563782 |
| 10/ 1/1999 | 8641595 | 104.0841416 | 8706631 | 104.8915555 |
| 11/ 1/1999 | 8627815 | 103.9181643 | 8694851 | 104.7255782 |
| 12/ 1/1999 | 8613918 | 103.7506689 | 8680945 | 104.5558948 |
| 1/ 1/2000 | 8599923 | 103.5818186 | 8666958 | 104.3884245 |
| 2/ 1/2000 | 8585636 | 103.4101379 | 8652672 | 104.2175519 |

| Date | | | |
|---|---|---|---|
| 3/ 1/2000 | 8571321 | 103.2377191 | 8638357 | 104.0451330 |
| 4/ 1/2000 | 8556852 | 103.0634444 | 8623807 | 103.8708583 |
| 5/ 1/2000 | 8542256 | 102.8676414 | 8609291 | 103.6930554 |
| 6/ 1/2000 | 8527532 | 102.7103033 | 8594568 | 103.5177173 |
| 7/ 1/2000 | 8512667 | 102.5512636 | 8579703 | 103.3386775 |
| 8/ 1/2000 | 8497673 | 102.3586623 | 8564709 | 103.1580762 |
| 9/ 1/2000 | 8462544 | 102.1684354 | 8549579 | 102.9758493 |
| 10/ 1/2000 | 8467270 | 101.9844670 | 8534305 | 102.7918809 |
| 11/ 1/2000 | 8451863 | 101.7988969 | 8518898 | 102.6063100 |
| 12/ 1/2000 | 8436317 | 101.6116407 | 8503353 | 102.4190746 |
| 1/ 1/2001 | 8420624 | 101.4226421 | 8487660 | 102.2300561 |
| 2/ 1/2001 | 8404794 | 101.2319807 | 8471638 | 102.0393946 |
| 3/ 1/2001 | 8388623 | 101.0396117 | 8455858 | 101.8470256 |
| 4/ 1/2001 | 8372705 | 102.8454755 | 8439740 | 101.6528094 |
| 5/ 1/2001 | 8356408 | 102.6501493 | 8423523 | 101.4575623 |
| 6/ 1/2001 | 8340104 | 102.4528148 | 8407149 | 101.2602287 |
| 7/ 1/2001 | 8323617 | 102.2542416 | 8398653 | 101.0616555 |
| 8/ 1/2001 | 8306962 | 102.0536350 | 8373998 | 100.8610497 |
| 9/ 1/2001 | 8290158 | 99.8512417 | 8357194 | 100.6586556 |
| 10/ 1/2001 | 8273248 | 99.6475669 | 8340284 | 100.4549806 |
| 11/ 1/2001 | 8256166 | 99.4418180 | 8323202 | 100.2492320 |
| 12/ 1/2001 | 8238932 | 99.2342392 | 8305967 | 100.0416531 |
| 1/ 1/2002 | 8221588 | 99.0253376 | 8288623 | 99.8327515 |
| 2/ 1/2002 | 8204048 | 98.8143194 | 8271183 | 99.6217335 |
| 3/ 1/2002 | 8186393 | 98.6014289 | 8253428 | 99.4088042E |
| 4/ 1/2002 | 8168550 | 98.3868022 | 8235615 | 99.1942961 |
| 5/ 1/2002 | 8150702 | 98.1715301 | 8217736 | 98.9789448 |
| 6/ 1/2002 | 8132612 | 97.9536646 | 8199647 | 98.7610786 |
| 7/ 1/2002 | 8114464 | 97.7358535 | 8181508 | 98.5424974 |
| 8/ 1/2002 | 8056186 | 97.5139631 | 8163141 | 98.3213778 |
| 9/ 1/2002 | 8077585 | 97.2983885 | 8144620 | 98.0763024 |
| 10/ 1/2002 | 8059001 | 97.0670558 | 8126837 | 97.8744650 |
| 11/ 1/2002 | 8040203 | 96.8486417 | 8107239 | 97.6490557 |
| 12/ 1/2002 | 8221239 | 96.6122305 | 8086275 | 97.4196447 |
| 1/ 1/2003 | 8002289 | 96.3630187 | 8069244 | 97.1984327 |
| 2/ 1/2003 | 7982961 | 96.1511818 | 8049996 | 96.9585956 |
| 3/ 1/2003 | 7963543 | 95.9173044 | 8030578 | 96.7247183 |
| 4/ 1/2003 | 7943999 | 95.6919864 | 8011035 | 96.4693223 |
| 5/ 1/2003 | 7924425 | 95.4461475 | 7991461 | 96.2535615 |
| 6/ 1/2003 | 7904597 | 95.2073288 | 7971633 | 96.0147427 |
| 7/ 1/2003 | 7884759 | 94.9603071 | 7951795 | 95.7750818 |
| 8/ 1/2003 | 7864665 | 94.7263623 | 7931700 | 95.5337762 |
| 9/ 1/2003 | 7844394 | 94.4892155 | 7911438 | 95.2896294 |
| 10/ 1/2003 | 7824110 | 94.2379838 | 7891146 | 95.0453178 |
| 11/ 1/2003 | 7803567 | 93.9984644 | 7870602 | 94.79787B4 |
| 12/ 1/2003 | 7762843 | 93.7486685 | 7645879 | 94.5482744 |
| 1/ 1/2004 | 7762103 | 93.4910472 | 7629138 | 94.2984611 |
| 2/ 1/2004 | 7741899 | 93.2398637 | 7888134 | 94.0454776 |
| 3/ 1/2004 | 7719911 | 92.9628784 | 7786947 | 93.7902843 |
| 4/ 1/2004 | 7698612 | 92.7263265 | 7765647 | 93.5337485 |
| 5/ 1/2004 | 7677323 | 92.4699286 | 7744359 | 93.2773346 |
| 6/ 1/2004 | 7655733 | 92.2898719 | 7722769 | 93.0172856 |
| 7/ 1/2004 | 7634188 | 91.9583718 | 7701224 | 92.7577856 |
| 8/ 1/2004 | 7612338 | 91.6972847 | 7679374 | 92.4946187 |
| 9/ 1/2004 | 7590299 | 91.4217473 | 7657334 | 92.2291612 |
| 10/ 1/2004 | 7568381 | 91.1567955 | 7635337 | 91.9642055 |
| 11/ 1/2004 | 7545995 | 98.8881334 | 7613031 | 91.6955474 |
| 12/ 1/2004 | 7523496 | 98.6171373 | 7590532 | 91.4245512 |
| 1/ 1/2005 | 7501835 | 98.3466829 | 7568870 | 91.1540169 |

5

| Date | | | | |
|---|---|---|---|---|
| 2/1/2005 | 7478262 | 90.0723137 | 7345298 | 90.0707277 |
| 3/1/2005 | 7455292 | 89.7956450 | 7522327 | 90.6050598 |
| 4/1/2005 | 7432226 | 89.5178309 | 7499262 | 90.3252449 |
| 5/1/2005 | 7409477 | 89.2436348 | 7476513 | 90.0512487 |
| 6/1/2005 | 7396248 | 88.9640418 | 7453283 | 89.7714557 |
| 7/1/2005 | 7363386 | 88.6886788 | 7430421 | 89.4968728 |
| 8/1/2005 | 7340841 | 88.4075182 | 7407077 | 89.2149242 |
| 9/1/2005 | 7316496 | 88.1239121 | 7383531 | 88.9313268 |
| 10/1/2005 | 7293315 | 87.8447155 | 7360351 | 88.6521295 |
| 11/1/2005 | 7269651 | 87.5596846 | 7336686 | 88.3470885 |
| 12/1/2005 | 7245782 | 87.2721952 | 7312817 | 88.0796892 |
| 1/1/2006 | 7222276 | 86.9890783 | 7289312 | 87.7964923 |
| 2/1/2006 | 7196263 | 86.7828977 | 7265339 | 87.5075116 |
| 3/1/2006 | 7174884 | 86.4826291 | 7241128 | 87.2168430 |
| 4/1/2006 | 7149938 | 86.1176972 | 7216965 | 86.9251111 |
| 5/1/2006 | 7126487 | 85.8343798 | 7193443 | 86.6417930 |
| 6/1/2006 | 7102199 | 85.5428897 | 7169235 | 86.3582226 |
| 7/1/2006 | 7078752 | 85.2603724 | 7145786 | 86.0677863 |
| 8/1/2006 | 7054617 | 84.9696958 | 7121652 | 85.7771898 |
| 9/1/2006 | 7030276 | 84.6765253 | 7097312 | 85.4839392 |
| 10/1/2006 | 7026693 | 84.3924828 | 7073729 | 85.1908948 |
| 11/1/2006 | 6982426 | 84.1081867 | 7049461 | 84.9076806 |
| 12/1/2006 | 6957958 | 83.8253913 | 7024986 | 84.6126852 |
| 1/1/2007 | 6954232 | 83.5197125 | 7001267 | 84.3271264 |
| 2/1/2007 | 6985627 | 83.2257751 | 6976663 | 84.0331890 |
| 3/1/2007 | 6885215 | 82.9293276 | 6952251 | 83.7367416 |
| 4/1/2007 | 6868522 | 82.6355224 | 6927857 | 83.4429363 |
| 5/1/2007 | 6837066 | 82.3493958 | 6904182 | 83.1569898 |
| 6/1/2007 | 6812578 | 82.0544482 | 6879614 | 82.8618622 |
| 7/1/2007 | 6782942 | 81.7697593 | 6855977 | 82.5771733 |
| 8/1/2007 | 6764574 | 81.4762658 | 6831610 | 82.2836797 |
| 9/1/2007 | 6740828 | 81.1822776 | 6807835 | 81.9876915 |
| 10/1/2007 | 6716277 | 80.8945448 | 6783312 | 81.7819587 |
| 11/1/2007 | 6691823 | 80.6000241 | 6758895 | 81.4074188 |
| 12/1/2007 | 6667161 | 80.3829655 | 6734197 | 81.1183795 |
| 1/1/2008 | 6643350 | 80.0161792 | 6710386 | 80.8235932 |
| 2/1/2008 | 6618888 | 79.7205819 | 6685644 | 80.5279958 |
| 3/1/2008 | 6594059 | 79.4224034 | 6661094 | 80.2298974 |
| 4/1/2008 | 6589571 | 79.1275397 | 6636697 | 79.9349536 |
| 5/1/2008 | 6545885 | 78.8412871 | 6612841 | 79.6487811 |
| 6/1/2008 | 6521256 | 78.5456115 | 6588292 | 79.3538254 |
| 7/1/2008 | 6497665 | 78.2614625 | 6564781 | 79.0688765 |
| 8/1/2008 | 6473293 | 77.9679132 | 6540329 | 78.7753271 |
| 9/1/2008 | 6448716 | 77.6718933 | 6515752 | 78.4793872 |
| 10/1/2008 | 6425096 | 77.3674837 | 6492132 | 78.1946176 |
| 11/1/2008 | 6400696 | 77.0935171 | 6467732 | 77.9009310 |
| 12/1/2008 | 6376891 | 76.7971637 | 6443127 | 77.6045776 |
| 1/1/2009 | 6352444 | 76.5123442 | 6419498 | 77.3197581 |
| 2/1/2009 | 6328017 | 76.2181315 | 6395053 | 77.0255455 |
| 3/1/2009 | 6303386 | 75.9214559 | 6370421 | 76.7288698 |
| 4/1/2009 | 6279865 | 75.6285292 | 6346101 | 76.4359431 |
| 5/1/2009 | 6255562 | 75.3454483 | 6322598 | 76.1528542 |
| 6/1/2009 | 6231223 | 75.0522923 | 6298259 | 75.8597863 |
| 7/1/2009 | 6207968 | 74.7721805 | 6274996 | 75.5795144 |
| 8/1/2009 | 6183865 | 74.4818797 | 6250988 | 75.2802936 |
| 9/1/2009 | 6159569 | 74.1892448 | 6226604 | 74.9961588 |
| 10/1/2009 | 6134349 | 73.9895777 | 6203385 | 74.7169916 |
| 11/1/2009 | 6112298 | 73.6198933 | 6179334 | 74.4273073 |
| 12/1/2009 | 6088804 | 73.3278869 | 6155983 | 74.1352208 |

6

| | | | | |
|---|---|---|---|---|
| 1/ 1/2010 | 6064875 | 73.0407003 | 6131911 | 73.0561142 |
| 2/ 1/2010 | 6040871 | 72.7545887 | 6107907 | 73.5670027 |
| 3/ 1/2010 | 6016669 | 72.4604075 | 6083705 | 73.2755015 |
| 4/ 1/2010 | 5992836 | 72.1810229 | 6059072 | 72.9804369 |
| 5/ 1/2010 | 5969927 | 71.9050948 | 6036963 | 72.7125079 |
| 6/ 1/2010 | 5946127 | 71.6104359 | 6013163 | 72.4258499 |
| 7/ 1/2010 | 5923537 | 71.3463446 | 5990572 | 72.1537585 |
| 8/ 1/2010 | 5900859 | 71.0635629 | 5967894 | 71.8709769 |
| 9/ 1/2010 | 5876389 | 70.7784624 | 5943424 | 71.5858764 |
| 10/ 1/2010 | 5853929 | 70.5079501 | 5920965 | 71.3153648 |
| 11/ 1/2010 | 5838584 | 70.2267693 | 5897619 | 71.0341832 |
| 12/ 1/2010 | 5887048 | 69.9422916 | 5874884 | 70.7507855 |
| 1/ 1/2011 | 5784725 | 69.6744243 | 5851741 | 70.4818383 |
| 2/ 1/2011 | 5761519 | 69.3549111 | 5828554 | 70.2023251 |
| 3/ 1/2011 | 5738123 | 69.1131239 | 5805159 | 69.9205378 |
| 4/ 1/2011 | 5715162 | 68.8365676 | 5762198 | 69.6439815 |
| 5/ 1/2011 | 5701383 | 68.6575969 | 5767339 | 69.4650186 |
| 6/ 1/2011 | 5681029 | 69.4254457 | 5748864 | 69.2328596 |
| 7/ 1/2011 | 5670201 | 68.2950354 | 5737237 | 69.1024493 |

## SCHEDULE D2

### STATEMENT OF STIPULATED LOSS AMOUNTS BY RENT DATE

| SETTLEMENT DATE | STIPULATED LOSS AMOUNT | STIPULATED LOSS AMOUNT % OF COST | STIPULATED LOSS PLUS RENT | STIPULATED LOSS PLUS RENT % OF COST |
|---|---|---|---|---|
| 8/ 1/1986 | 3431066 | 114.3685535 | 3458221 | 115.2748318 |
| 9/ 1/1986 | 3431066 | 114.3685535 | 3458221 | 115.2748318 |
| 10/ 1/1986 | 3431066 | 114.3685535 | 3458221 | 115.2748316 |
| 11/ 1/1986 | 3431066 | 114.3685535 | 3458221 | 115.2748316 |
| 12/ 1/1986 | 3431066 | 114.3685535 | 3458221 | 115.2748318 |
| 1/ 1/1987 | 3431066 | 114.3685535 | 3458221 | 115.2748318 |
| 2/ 1/1987 | 3431066 | 114.3685535 | 3458221 | 115.2748318 |
| 3/ 1/1987 | 3431066 | 114.3685535 | 3458221 | 115.2748316 |
| 4/ 1/1987 | 3431066 | 114.3685535 | 3458221 | 115.2748316 |
| 5/ 1/1987 | 3432817 | 114.4272233 | 3459972 | 115.3324816 |
| 6/ 1/1987 | 3433594 | 114.4528859 | 3461740 | 115.3579842 |
| 7/ 1/1987 | 3434359 | 114.4786373 | 3461514 | 115.3838156 |
| 8/ 1/1987 | 3435127 | 114.5042941 | 3462284 | 115.4094724 |
| 9/ 1/1987 | 3435897 | 114.5299147 | 3463053 | 115.4350938 |
| 10/ 1/1987 | 3436673 | 114.5557796 | 3463829 | 115.4609558 |
| 11/ 1/1987 | 3437444 | 114.5814554 | 3464599 | 115.4866437 |
| 12/ 1/1987 | 3438213 | 114.6071184 | 3465369 | 115.5122687 |
| 1/ 1/1988 | 3428487 | 113.6175719 | 3435563 | 114.5187523 |
| 2/ 1/1988 | 3429647 | 113.6222233 | 3436802 | 114.5334816 |
| 3/ 1/1988 | 3409283 | 113.6427626 | 3436438 | 114.5479425 |
| 4/ 1/1988 | 3409719 | 113.6573827 | 3436874 | 114.5624791 |
| 5/ 1/1988 | 3409978 | 113.6659469 | 3437134 | 114.5711252 |
| 6/ 1/1988 | 3410319 | 113.6772694 | 3437474 | 114.5824777 |
| 7/ 1/1988 | 3410484 | 113.6527948 | 3437639 | 114.5879723 |
| 8/ 1/1988 | 3410729 | 113.6585725 | 3437885 | 114.5961587 |
| 9/ 1/1988 | 3410972 | 113.6987899 | 3439125 | 114.6841682 |
| 10/ 1/1988 | 3411034 | 113.7011249 | 3438189 | 114.6863623 |
| 11/ 1/1988 | 3411177 | 113.7055166 | 3439333 | 114.6110949 |
| 12/ 1/1988 | 3411316 | 113.7185223 | 3438471 | 114.6157886 |
| 1/ 1/1989 | 3411277 | 113.7052192 | 3439432 | 114.6143973 |
| 2/ 1/1989 | 3411316 | 113.7185481 | 3438472 | 114.6157264 |
| 3/ 1/1989 | 3411358 | 113.7116648 | 3438585 | 114.6168423 |
| 4/ 1/1989 | 3411381 | 113.7188217 | 3438456 | 114.6152081 |
| 5/ 1/1989 | 3411118 | 113.7839492 | 3438274 | 114.6891276 |
| 6/ 1/1989 | 3411018 | 113.7883467 | 3438166 | 114.6855258 |
| 7/ 1/1989 | 3410731 | 113.6918273 | 3437886 | 114.5962857 |
| 8/ 1/1989 | 3410525 | 113.6841547 | 3437668 | 114.5893338 |
| 9/ 1/1989 | 3410318 | 113.6778832 | 3437466 | 114.5821866 |
| 10/ 1/1989 | 3409924 | 113.6641179 | 3437879 | 114.5692963 |
| 11/ 1/1989 | 3409689 | 113.6524478 | 3436785 | 114.5596254 |
| 12/ 1/1989 | 3409286 | 113.6428749 | 3436442 | 114.5498532 |
| 1/ 1/1990 | 3408798 | 113.6263311 | 3435945 | 114.5315895 |
| 2/ 1/1990 | 3408365 | 113.6121768 | 3435521 | 114.5173572 |
| 3/ 1/1990 | 3407931 | 113.5976972 | 3435086 | 114.5026755 |
| 4/ 1/1990 | 3407414 | 113.5824525 | 3434569 | 114.4656386 |

| Date | | | |
|---|---|---|---|
| 5/ 1/1998 | 3486763 | 113.55E7741 | 3433919 114.4639524 |
| 6/ 1/1998 | 3486181 | 113.5593631 | 3433336 114.4445414 |
| 7/ 1/1998 | 3485429 | 113.5142863 | 3432584 114.4194646 |
| 8/ 1/1998 | 3484744 | 113.4614523 | 3431899 114.3766387 |
| 9/ 1/1998 | 3484047 | 113.46E2242 | 3431202 114.3734026 |
| 10/ 1/1998 | 3483179 | 113.4353011 | 3430334 114.3444755 |
| 11/ 1/1998 | 3482378 | 113.4129913 | 3429533 114.3177696 |
| 12/ 1/1998 | 3481564 | 113.3854575 | 3428719 114.2906359 |
| 1/ 1/1991 | 3480578 | 113.3525988 | 3427733 114.2577771 |
| 2/ 1/1991 | 3399658 | 113.3219230 | 3426813 114.2271813 |
| 3/ 1/1991 | 3398724 | 113.2927929 | 3425879 114.1959712 |
| 4/ 1/1991 | 3397785 | 113.2565495 | 3424861 114.1620278 |
| 5/ 1/1991 | 3396555 | 113.21E4959 | 3423718 114.1236742 |
| 6/ 1/1991 | 3395466 | 113.1E21E53 | 3422621 114.8573677 |
| 7/ 1/1991 | 3394288 | 113.1482765 | 3421364 114.8454552 |
| 8/ 1/1991 | 3393812 | 113.1023853 | 3420167 114.8053637 |
| 9/ 1/1991 | 3391799 | 113.0595703 | 3418954 113.9651486 |
| 10/ 1/1991 | 3398418 | 113.0135176 | 3417573 113.9150959 |
| 11/ 1/1991 | 3389096 | 112.9695539 | 3416251 113.8750323 |
| 12/ 1/1991 | 3387757 | 112.9252345 | 3414912 113.8384129 |
| 1/ 1/1992 | 3386248 | 112.5745449 | 3413484 113.7881233 |
| 2/ 1/1992 | 3384798 | 112.6366117 | 3411954 113.7317988 |
| 3/ 1/1992 | 3383331 | 112.7776897 | 3410426 113.6228598 |
| 4/ 1/1992 | 3381777 | 112.7259824 | 3408552 113.6318589 |
| 5/ 1/1992 | 3388154 | 112.6718292 | 3407318 113.5769846 |
| 6/ 1/1992 | 3378555 | 112.6184672 | 3405718 113.5236754 |
| 7/ 1/1992 | 3376852 | 112.5517294 | 3484827 113.4669876 |
| 8/ 1/1992 | 3375172 | 112.5257236 | 3402327 113.4189828 |
| 9/ 1/1992 | 3373472 | 112.4492676 | 3400827 113.3542461 |
| 10/ 1/1992 | 3371668 | 112.3865277 | 3398623 113.2941868 |
| 11/ 1/1992 | 3369886 | 112.3295213 | 3397641 113.2346997 |
| 12/ 1/1992 | 3368083 | 112.2264362 | 3395238 113.1746158 |
| 1/ 1/1993 | 3366175 | 112.2856351 | 3363331 113.1318174 |
| 2/ 1/1993 | 3364262 | 112.1425465 | 3391444 113.8451248 |
| 3/ 1/1993 | 3362388 | 112.0753465 | 3389536 112.9845248 |
| 4/ 1/1993 | 3360413 | 112.0137754 | 3387569 112.9189537 |
| 5/ 1/1993 | 3356365 | 111.9455848 | 3385528 112.8586832 |
| 6/ 1/1993 | 3356334 | 111.8777657 | 3383489 112.7829648 |
| 7/ 1/1993 | 3354282 | 111.8167282 | 3381357 112.7118986 |
| 8/ 1/1993 | 3352056 | 111.7361837 | 3379241 112.6413621 |
| 9/ 1/1993 | 3349946 | 111.6643772 | 3377182 112.5788555 |
| 10/ 1/1993 | 3347786 | 111.5581941 | 3374661 112.4953725 |
| 11/ 1/1993 | 3345488 | 111.5169257 | 3372636 112.4211888 |
| 12/ 1/1993 | 3343231 | 111.4458246 | 3370386 112.3462829 |
| 1/ 1/1994 | 3348879 | 111.3626321 | 3368834 112.2678184 |
| 2/ 1/1994 | 3338541 | 111.2647871 | 3365497 112.1898854 |
| 3/ 1/1994 | 3336178 | 111.2859499 | 3363334 112.1111283 |
| 4/ 1/1994 | 3333756 | 111.1251976 | 3368511 112.8383768 |
| 5/ 1/1994 | 3331255 | 111.0419215 | 3359418 111.9469995 |
| 6/ 1/1994 | 3328762 | 118.9567445 | 335591B 111.8639228 |
| 7/ 1/1994 | 3326173 | 118.8724459 | 3353329 111.7776243 |
| 8/ 1/1994 | 3323593 | 118.7864226 | 3358748 111.6916818 |
| 9/ 1/1994 | 3320985 | 118.6995828 | 334814E 111.6846783 |
| 10/ 1/1994 | 3318288 | 118.6893234 | 3345435 111.5145817 |
| 11/ 1/1994 | 3315582 | 118.5193891 | 3342737 111.4245675 |
| 12/ 1/1994 | 3312856 | 118.4285224 | 3348811 111.3337888 |
| 1/ 1/1995 | 3318831 | 118.3343684 | 3337186 111.2395467 |
| 2/ 1/1995 | 3387213 | 118.2484238 | 3334368 111.1454813 |
| 3/ 1/1995 | 3384345 | 118.1455113 | 3331521 111.058A896 |

2.

| Date | | | | |
|---|---|---|---|---|
| 4/ 1/1995 | 3301457 | 110.0485613 | 3326613 | 110.9537596 |
| 5/ 1/1995 | 3298473 | 109.9491146 | 3325629 | 110.8542929 |
| 6/ 1/1995 | 3295456 | 109.6450717 | 3322646 | 110.7546501 |
| 7/ 1/1995 | 3292414 | 109.7471409 | 3319570 | 110.6523273 |
| 8/ 1/1995 | 3289339 | 109.6446247 | 3316494 | 110.5490030 |
| 9/ 1/1995 | 3286232 | 109.5410521 | 3313387 | 110.4452404 |
| 10/ 1/1995 | 3283032 | 109.4343043 | 3310107 | 110.3395626 |
| 11/ 1/1995 | 3279830 | 109.3276696 | 3306905 | 110.2328479 |
| 12/ 1/1995 | 3276596 | 109.2198027 | 3303752 | 110.1258551 |
| 1/ 1/1996 | 3273268 | 109.1069404 | 3300424 | 110.0141198 |
| 2/ 1/1996 | 3269936 | 108.9979272 | 3297003 | 109.9031055 |
| 3/ 1/1996 | 3268574 | 108.8858029 | 3293729 | 109.7985012 |
| 4/ 1/1996 | 3263149 | 108.7716386 | 3290385 | 109.6766178 |
| 5/ 1/1996 | 3259671 | 108.6557022 | 3286826 | 109.5686765 |
| 6/ 1/1996 | 3256175 | 108.5391583 | 3263330 | 109.4443366 |
| 7/ 1/1996 | 3252611 | 108.4283618 | 3279766 | 109.3255394 |
| 8/ 1/1996 | 3249026 | 108.3025355 | 3276183 | 109.2061139 |
| 9/ 1/1996 | 3245418 | 108.1803260 | 3272565 | 109.0855843 |
| 10/ 1/1996 | 3241723 | 108.0574252 | 3268876 | 108.9626035 |
| 11/ 1/1996 | 3238816 | 107.9338598 | 3265171 | 108.8398362 |
| 12/ 1/1996 | 3234272 | 107.8275739 | 3261428 | 108.7142522 |
| 1/ 1/1997 | 3230459 | 107.6815597 | 3257614 | 108.5571362 |
| 2/ 1/1997 | 3226624 | 107.5541435 | 3253760 | 108.4593221 |
| 3/ 1/1997 | 3222752 | 107.4250697 | 3249507 | 108.3302490 |
| 4/ 1/1997 | 3218827 | 107.2942366 | 3245763 | 108.1594170 |
| 5/ 1/1997 | 3214562 | 107.1620587 | 3242017 | 108.0672290 |
| 6/ 1/1997 | 3210862 | 107.0267240 | 3236017 | 107.9339023 |
| 7/ 1/1997 | 3206813 | 106.8937736 | 3233969 | 107.7989519 |
| 8/ 1/1997 | 3202738 | 106.7576554 | 3229805 | 107.6626370 |
| 9/ 1/1997 | 3198626 | 106.6202124 | 3225762 | 107.5253907 |
| 10/ 1/1997 | 3194433 | 106.4811042 | 3221505 | 107.3862824 |
| 11/ 1/1997 | 3190224 | 106.3407942 | 3217379 | 107.2459724 |
| 12/ 1/1997 | 3185973 | 106.1991134 | 3213129 | 107.1042917 |
| 1/ 1/1998 | 3181672 | 106.0557326 | 3208662 | 106.9585111 |
| 2/ 1/1998 | 3177333 | 105.9111116 | 3204489 | 106.8162982 |
| 3/ 1/1998 | 3172952 | 105.7650827 | 3202108 | 106.6782598 |
| 4/ 1/1998 | 3168525 | 105.6174659 | 3195608 | 106.5226642 |
| 5/ 1/1998 | 3164058 | 105.4685639 | 3191213 | 106.3737622 |
| 6/ 1/1998 | 3159546 | 105.3182825 | 3186781 | 106.2233882 |
| 7/ 1/1998 | 3154993 | 105.1664177 | 3182145 | 106.0715961 |
| 8/ 1/1998 | 3150394 | 105.0131271 | 3177545 | 105.9183854 |
| 9/ 1/1998 | 3145758 | 104.8593465 | 3172986 | 105.7635249 |
| 10/ 1/1998 | 3141064 | 104.7021222 | 3168219 | 105.6073885 |
| 11/ 1/1998 | 3136331 | 104.5443518 | 3163486 | 105.4495294 |
| 12/ 1/1998 | 3131551 | 104.3858489 | 3158787 | 105.2982272 |
| 1/ 1/1999 | 3126728 | 104.2242613 | 3153693 | 105.1294397 |
| 2/ 1/1999 | 3121857 | 104.0618551 | 3149212 | 104.9678634 |
| 3/ 1/1999 | 3116938 | 103.8979355 | 3144893 | 104.8031139 |
| 4/ 1/1999 | 3111973 | 103.7324246 | 3139120 | 104.6376831 |
| 5/ 1/1999 | 3106973 | 103.5657731 | 3134129 | 104.4789514 |
| 6/ 1/1999 | 3101918 | 103.3972701 | 3129073 | 104.3024485 |
| 7/ 1/1999 | 3096828 | 103.2276115 | 3123984 | 104.1327898 |
| 8/ 1/1999 | 3091602 | 103.0560733 | 3118E38 | 103.9612516 |
| 9/ 1/1999 | 3086486 | 102.8926763 | 3113642 | 103.7868547 |
| 10/ 1/1999 | 3081254 | 102.7064799 | 3108410 | 103.6136563 |
| 11/ 1/1999 | 3075965 | 102.5321599 | 3103120 | 103.4373363 |
| 12/ 1/1999 | 3070624 | 102.3541367 | 3057779 | 103.2593151 |
| 1/ 1/2000 | 3065246 | 102.1748692 | 3092401 | 103.0882475 |
| 2/ 1/2000 | 3059889 | 101.9936327 | 3095564 | 102.8996510 |

3

| | | | | |
|---|---|---|---|---|
| 3/ 1/2000 | 3054319 | 101.8108473 | 3081475 | 102.7198256 |
| 4/ 1/2000 | 3048763 | 101.6261079 | 3075939 | 102.5312852 |
| 5/ 1/2000 | 3043218 | 101.4406157 | 3078374 | 102.3457941 |
| 6/ 1/2000 | 3037566 | 101.2525663 | 3064741 | 102.1550446 |
| 7/ 1/2000 | 3031927 | 101.0642392 | 3059083 | 101.9694175 |
| 8/ 1/2000 | 3026288 | 100.8733246 | 3053355 | 101.7785029 |
| 9/ 1/2000 | 3020417 | 100.6525695 | 3047572 | 101.5857478 |
| 10/ 1/2000 | 3014607 | 100.4509594 | 3041762 | 101.3920677 |
| 11/ 1/2000 | 3008726 | 100.2915743 | 3035802 | 101.1960526 |
| 12/ 1/2000 | 3002786 | 100.0926705 | 3029944 | 100.9551466 |
| 1/ 1/2001 | 2996823 | 99.6948934 | 3023976 | 100.7992717 |
| 2/ 1/2001 | 2990765 | 99.6926323 | 3017940 | 100.5988107 |
| 3/ 1/2001 | 2984695 | 99.4676333 | 3011844 | 100.3948116 |
| 4/ 1/2001 | 2978547 | 99.2645038 | 3005782 | 100.1982713 |
| 5/ 1/2001 | 2972382 | 99.0754126 | 2999553 | 99.9845918 |
| 6/ 1/2001 | 2966137 | 98.8712315 | 2993292 | 99.7764899 |
| 7/ 1/2001 | 2959875 | 98.6424546 | 2987038 | 99.5676630 |
| 8/ 1/2001 | 2953532 | 98.4518249 | 2980685 | 99.3561633 |
| 9/ 1/2001 | 2947125 | 98.2374886 | 2574288 | 99.1426671 |
| 10/ 1/2001 | 2940781 | 98.0233559 | 2967856 | 98.9285342 |
| 11/ 1/2001 | 2934193 | 97.6084338 | 2961349 | 98.7116171 |
| 12/ 1/2001 | 2927623 | 97.5674334 | 2954778 | 98.4926117 |
| 1/ 1/2002 | 2921033 | 97.3477589 | 2948186 | 98.2729372 |
| 2/ 1/2002 | 2914357 | 97.1452473 | 2941513 | 98.0584256 |
| 3/ 1/2002 | 2907616 | 96.9285941 | 2934773 | 97.8257725 |
| 4/ 1/2002 | 2900833 | 96.6944191 | 2927966 | 97.5995974 |
| 5/ 1/2002 | 2854832 | 96.4677440 | 2921166 | 97.3729224 |
| 6/ 1/2002 | 2687137 | 96.2376635 | 2914292 | 97.1438622 |
| 7/ 1/2002 | 2882234 | 96.0275876 | 2907398 | 96.9129668 |
| 8/ 1/2002 | 2873235 | 95.7745121 | 2900391 | 96.6764984 |
| 9/ 1/2002 | 2866165 | 95.5355663 | 2893324 | 96.4441476 |
| 10/ 1/2002 | 2859055 | 95.3672554 | 2886258 | 96.2053337 |
| 11/ 1/2002 | 2851922 | 95.0148667 | 2879077 | 95.9692458 |
| 12/ 1/2002 | 2844658 | 94.8226747 | 2871836 | 95.7278531 |
| 1/ 1/2003 | 2837429 | 94.5885552 | 2864584 | 95.4861335 |
| 2/ 1/2003 | 2830877 | 94.3359837 | 2857232 | 95.2418221 |
| 3/ 1/2003 | 2822655 | 94.0354915 | 2849818 | 94.9936692 |
| 4/ 1/2003 | 2815195 | 93.8355842 | 2842343 | 94.7447625 |
| 5/ 1/2003 | 2807713 | 93.5584477 | 2834869 | 94.4956261 |
| 6/ 1/2003 | 2800932 | 93.3375978 | 2827283 | 94.2427753 |
| 7/ 1/2003 | 2792545 | 93.8545219 | 2819763 | 93.9981883 |
| 8/ 1/2003 | 2784855 | 92.6264862 | 2812010 | 93.7336746 |
| 9/ 1/2003 | 2777053 | 92.5695962 | 2804243 | 93.4747745 |
| 10/ 1/2003 | 2769324 | 92.3185125 | 2796468 | 93.2159589 |
| 11/ 1/2003 | 2761447 | 92.0462183 | 2788682 | 92.9533966 |
| 12/ 1/2003 | 2753453 | 91.7628892 | 2780646 | 92.6802676 |
| 1/ 1/2004 | 2745542 | 91.5188155 | 2772696 | 92.4231938 |
| 2/ 1/2004 | 2737472 | 91.2458656 | 2764627 | 92.1542479 |
| 3/ 1/2004 | 2729326 | 90.9775267 | 2756481 | 91.8827858 |
| 4/ 1/2004 | 2721136 | 90.7245246 | 2748291 | 91.6897829 |
| 5/ 1/2004 | 2712946 | 90.4315982 | 2740183 | 91.3367766 |
| 6/ 1/2004 | 2704631 | 90.1543794 | 2731787 | 91.0565577 |
| 7/ 1/2004 | 2696333 | 89.6777751 | 2723489 | 90.7829534 |
| 8/ 1/2004 | 2687985 | 89.5565394 | 2715861 | 90.5020178 |
| 9/ 1/2004 | 2679396 | 89.3131858 | 2706551 | 90.2183634 |
| 10/ 1/2004 | 2670982 | 89.0082618 | 2698058 | 89.9352594 |
| 11/ 1/2004 | 2662277 | 88.7425811 | 2689433 | 89.6477594 |
| 12/ 1/2004 | 2653569 | 88.4522678 | 2680724 | 89.3574754 |
| 1/ 1/2005 | 2644675 | 83.1424975 | 2672030 | 85.067675E |

*H.*

| | | | | |
|---|---|---|---|---|
| 2/ 1/2005 | 2636847 | 87.0462355 | 2665292 | 88.7734138 |
| 3/ 1/2005 | 2627134 | 87.5711223 | 2654289 | 88.4763884 |
| 4/ 1/2005 | 2618178 | 87.2725956 | 2645333 | 88.1777741 |
| 5/ 1/2005 | 2609235 | 86.9744662 | 2636398 | 87.8796666 |
| 6/ 1/2005 | 2600144 | 86.6714524 | 2627299 | 87.5766347 |
| 7/ 1/2005 | 2591006 | 86.3495381 | 2618241 | 87.2747064 |
| 8/ 1/2005 | 2581879 | 86.0626388 | 2609834 | 86.9678163 |
| 9/ 1/2005 | 2572593 | 85.7527639 | 2599738 | 86.6579422 |
| 10/ 1/2005 | 2563316 | 85.4459261 | 2590473 | 86.3491045 |
| 11/ 1/2005 | 2553902 | 85.1302528 | 2581057 | 86.0352312 |
| 12/ 1/2005 | 2544354 | 84.6131269 | 2571549 | 85.7183853 |
| 1/ 1/2006 | 2534915 | 84.4971663 | 2562078 | 85.4023446 |
| 2/ 1/2006 | 2525263 | 84.1760983 | 2552438 | 85.0812766 |
| 3/ 1/2006 | 2515557 | 83.8519852 | 2542713 | 84.7570635 |
| 4/ 1/2006 | 2505791 | 83.5263565 | 2532946 | 84.4315349 |
| 5/ 1/2006 | 2496046 | 83.2015128 | 2523204 | 84.1067911 |
| 6/ 1/2006 | 2486139 | 82.8712541 | 2513263 | 83.7764324 |
| 7/ 1/2006 | 2476277 | 82.5425582 | 2503432 | 83.4477285 |
| 8/ 1/2006 | 2466246 | 82.2081672 | 2493481 | 83.1133655 |
| 9/ 1/2006 | 2456117 | 81.6705585 | 2483272 | 82.7757349 |
| 10/ 1/2006 | 2446035 | 81.5345182 | 2473191 | 82.4396983 |
| 11/ 1/2006 | 2435782 | 81.1927264 | 2462637 | 82.0979852 |
| 12/ 1/2006 | 2425428 | 80.6476821 | 2452563 | 81.7527665 |
| 1/ 1/2007 | 2415119 | 80.5839687 | 2442275 | 81.4891591 |
| 2/ 1/2007 | 2404636 | 80.1545472 | 2431792 | 81.0597256 |
| 3/ 1/2007 | 2394051 | 79.8816537 | 2421286 | 80.7865721 |
| 4/ 1/2007 | 2363427 | 79.4475556 | 2410582 | 68.3527342 |
| 5/ 1/2007 | 2372648 | 79.0546565 | 2399955 | 79.9998349 |
| 6/ 1/2007 | 2362852 | 78.7353972 | 2389217 | 79.6485655 |
| 7/ 1/2007 | 2351352 | 78.3783639 | 2378527 | 79.2835652 |
| 8/ 1/2007 | 2348449 | 78.0147653 | 2367684 | 78.9281476 |
| 9/ 1/2007 | 2325439 | 77.6479387 | 2356595 | 78.5531556 |
| 10/ 1/2007 | 2318495 | 77.2631685 | 2345651 | 78.1803568 |
| 11/ 1/2007 | 2307356 | 76.9116217 | 2334512 | 77.8178688 |
| 12/ 1/2007 | 2296168 | 76.5369257 | 2323263 | 77.4421088 |
| 1/ 1/2008 | 2284922 | 76.1648832 | 2312875 | 77.0692615 |
| 2/ 1/2008 | 2273548 | 75.7846544 | 2302695 | 76.6898327 |
| 3/ 1/2008 | 2262845 | 75.4814679 | 2289228 | 76.3866663 |
| 4/ 1/2008 | 2258514 | 75.8171236 | 2277669 | 75.9223828 |
| 5/ 1/2008 | 2239835 | 74.6344649 | 2266198 | 75.5396633 |
| 6/ 1/2008 | 2227348 | 74.2446526 | 2254495 | 75.1498289 |
| 7/ 1/2008 | 2215733 | 73.2577714 | 2242895 | 74.7629498 |
| 8/ 1/2008 | 2203989 | 73.4636463 | 2231865 | 74.3698247 |
| 9/ 1/2008 | 2191969 | 73.8155213 | 2219124 | 73.9787996 |
| 10/ 1/2008 | 2180114 | 72.6784644 | 2207269 | 73.5756428 |
| 11/ 1/2008 | 2168039 | 72.2675738 | 2195195 | 73.1731522 |
| 12/ 1/2008 | 2155845 | 71.0614946 | 2163888 | 72.7666729 |
| 1/ 1/2009 | 2143734 | 71.4577948 | 2170869 | 72.3629724 |
| 2/ 1/2009 | 2131488 | 71.0466653 | 2155555 | 71.9518476 |
| 3/ 1/2009 | 2118944 | 70.6314647 | 2146899 | 71.5366438 |
| 4/ 1/2009 | 2106455 | 70.2151665 | 2133610 | 71.1203446 |
| 5/ 1/2009 | 2054834 | 69.8011482 | 2121198 | 70.7063186 |
| 6/ 1/2009 | 2081378 | 69.3798155 | 2108526 | 70.2841938 |
| 7/ 1/2009 | 2068818 | 68.9698125 | 2095974 | 69.8457908 |
| 8/ 1/2009 | 2056822 | 68.5348572 | 2083177 | 69.4392356 |
| 9/ 1/2009 | 2043857 | 68.1852477 | 2070253 | 69.0984268 |
| 10/ 1/2009 | 2032262 | 67.6768668 | 2057437 | 68.5812444 |
| 11/ 1/2009 | 2017219 | 67.2486373 | 2044374 | 68.1458157 |
| 12/ 1/2009 | 2004026 | 66.5086566 | 2031181 | 67.7068378 |

5

| Date | | | | |
|---|---|---|---|---|
| 1/ 1/2010 | 1999938 | 66.3646111 | 2018174 | 67.2697895 |
| 2/ 1/2010 | 1977681 | 65.9202191 | 2004756 | 66.0251974 |
| 3/ 1/2010 | 1964129 | 65.4789784 | 1991205 | 66.3761560 |
| 4/ 1/2010 | 1958629 | 65.0207666 | 1977784 | 65.9261469 |
| 5/ 1/2010 | 1937215 | 64.5738432 | 1964371 | 65.4798216 |
| 6/ 1/2010 | 1923529 | 64.1176319 | 1950684 | 65.0228102 |
| 7/ 1/2010 | 1909908 | 63.6659981 | 1937135 | 64.5711764 |
| 8/ 1/2010 | 1896157 | 63.2052289 | 1923312 | 64.1103992 |
| 9/ 1/2010 | 1882194 | 62.7398277 | 1909350 | 63.6449860 |
| 10/ 1/2010 | 1868366 | 62.2788783 | 1895521 | 63.1848491 |
| 11/ 1/2010 | 1854261 | 61.8086991 | 1881416 | 62.7138664 |
| 12/ 1/2010 | 1840813 | 61.3337661 | 1867168 | 62.2389445 |
| 1/ 1/2011 | 1825896 | 60.8632161 | 1853852 | 61.7663944 |
| 2/ 1/2011 | 1811499 | 60.3833149 | 1839655 | 61.2864933 |
| 3/ 1/2011 | 1796957 | 59.8985691 | 1824112 | 60.8037464 |
| 4/ 1/2011 | 1782398 | 59.4129593 | 1809545 | 60.3181777 |
| 5/ 1/2011 | 1769196 | 58.9731647 | 1796351 | 59.8783638 |
| 6/ 1/2011 | 1755871 | 58.5023661 | 1782226 | 59.4075445 |
| 7/ 1/2011 | 1742382 | 58.0793919 | 1769537 | 58.9845783 |

IN WITNESS WHEREOF, the parties hereto have caused this Lease to be executed as of the date first above written.

(Seal)

Attest:

By: _Donald Howell_
    Donald Howell
    Vice President

COMMONWEALTH AVENUE WAREHOUSE, INC.,
Lessor

By: _____
    Michael J. Naughton
    Vice President


(Seal)

Attest:

By: _F. P. Hamilton_
    F. P. Hamilton
    Assistant Secretary

WINN-DIXIE STORES, INC.,
Lessee

By: _Richard P. McCook_
    Richard P. McCook
    Financial Vice President

STATE OF NEW YORK        )
                         ) ss.
COUNTY OF NEW YORK       )

         The foregoing instrument was acknowledged before me this 24 day of June, 1986, by Michael J. Naughton and Donald Howell, the Vice President and Vice President, respectively, of COMMONWEALTH AVENUE WAREHOUSE, INC., a Florida corporation, on behalf of the corporation.

Catherine A. Carroll
Notary Public in and for
said State

(Notarial Seal)

My commission expires:

_____

CATHERINE A. CARROLL
Notary Public, State of New York
No. 24-4860410
Qualified in Kings County
Certificate filed in New York County
Commission Expires March 27, 1988

STATE OF NEW YORK      )
                       ) ss.
COUNTY OF NEW YORK     )


          The foregoing instrument was acknowledged before me
this  24th  day of June, 1986, by Richard P. McCook and F.P.
Hamilton, the Financial Vice President and Assistant Secretary,
respectively, of WINN-DIXIE STORES, INC., a Florida
corporation, on behalf of the corporation.

                              *Catherine A. Carroll*
                              Notary Public in and for
                                    said State

(Notarial Seal)

My commission expires:

_____

CATHERINE A. CARROLL
Notary Public, State of New York
No. 24-4850418
Qualified in Kings County
Certificate filed in New York County
Commission Expires March 27, 1988

VOL 6150 PG 2244

OFFICIAL RECORDS

MEMORANDUM OF LEASE AGREEMENT

Between

COMMONWEALTH AVENUE WAREHOUSE, INC.,
as Lessor

And

WINN-DIXIE STORES, INC.,
as Lessee

Dated as of June 20, 1986

Prepared by: Return to:

M. Suzanne Badenhoop, Esquire
Csaplar & Bok
655 Montgomery Street
San Francisco, California  94111

VEL 6150 PG2245

OFFICIAL RECORDS

MEMORANDUM OF LEASE AGREEMENT, dated as of June 20, 1986 (this Lease), between COMMONWEALTH AVENUE WAREHOUSE, INC., a Delaware corporation (herein, together with its successors and assigns, called Lessor), having an address c/o Greyhound Leasing & Financial Corporation, Greyhound Center, Phoenix, Arizona 85077, Attention:  Division Risk Manager, Real Estate and WINN-DIXIE STORES, INC., a Florida corporation (herein, together with any entity succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entirety, called Lessee), having an address at 5050 Edgewood Court, Jacksonville, Florida 32203.

WHEREAS, Lessor, as lessor, and Lessee, as lessee, have entered into a Lease Agreement, dated as of the date hereof (the Lease Agreement), whereby Lessor has leased to Lessee, and Lessee has leased from Lessor, the premises (the Premises) consisting of the land described in Schedule A hereto, all buildings and other improvements now or hereafter located thereon (the Improvements) and all easements, rights and appurtenances relating thereto; and a copy of the Lease Agreement is being held by Lessee at its office at its address stated above; and

WHEREAS, Lessor and Lessee desire to enter into this Memorandum of Lease, which is to be recorded in order that third parties may have notice of the estate of Lessee in the Premises and of the Lease Agreement;

NOW THEREFORE, in consideration of the rents and covenants provided for in the Lease Agreement to be paid and performed by Lessee, Lessor does hereby let and demise unto Lessee the Premises, and Lessee hereby leases from Lessor the Premises upon all the terms and conditions of the Lease Agreement.

The Premises are leased for an interim term (the Interim Term), a basic lease term of twenty-five years (the Basic Term), and, at Lessee's option, for one additional term of ten years and four consecutive additional terms of five years each (the Extended Terms), unless and until the term of this Lease shall expire or be terminated pursuant to any provision of the Lease Agreement.  The Interim Term, the Basic Term and each Extended Term shall commence and expire on the dates set forth in Schedule B, but the entire term of this Lease shall not extend beyond June 30, 2041.  Lessee shall exercise its option to extend the term of this Lease for an Extended Term by giving notice thereof to Lessor not less than twelve months prior to the expiration of the Basic Term, with respect to the first Extended Term, and not less than twelve months prior to the then existing term with respect to any other Extended Term.

VOL 6150 PG 2246

✓ OFFICIAL RECORDS ✓

      Lessee may, at its expense, and after prior notice to Lessor, at any time during the term hereof make additions to and alterations of the Improvements, all as provided in the Lease Agreement.  Lessee, during the Interim Term, the Basic Term or any Extended Term hereof, is required (i) to offer to purchase the Premises upon certain casualty and condemnation occurrences and (ii) upon certain uneconomic use determinations, to offer to purchase the Premises which have been determined by Lessee to be uneconomic, all as provided in the Lease Agreement.  Lessee has an option to purchase the Premises, upon at least one year prior written notice to Lessor, on the last day of the Primary Term or on the last day of any Extended Term hereof, as provided in the Lease Agreement.

      Lessee may sublet any or all of the Premises or assign its interest under the Lease Agreement provided that each sublease shall be subject to the provisions of the Lease Agreement and that no assignment or sublease shall modify or limit any right or power of Lessor under the Lease Agreement or affect or reduce any obligation of Lessee thereunder.

      Lessee has assigned to Lessor all rents and other sums due or to become due to Lessee under any sublease of the Premises, provided, that so long as no default by Lessee has occurred and is continuing under the Lease Agreement, Lessee shall have the right to collect such rents and other sums for its own uses and purposes.

      All the terms, conditions, provisions and covenants of the Lease Agreement are incorporated in this Memorandum of Lease by reference as though written out at length herein, and both the Lease Agreement and this Lease shall be deemed to constitute a single instrument or document.  If any inconsistency shall exist between this Memorandum of Lease and the Lease Agreement, the Lease Agreement shall control.

      Schedules A and B are attached hereto and hereby made a part hereof.

VOL 6150 PG 2247

OFFICIAL RECORDS

## SCHEDULE A

That certain piece, parcel or tract of land situate, lying and being in the City of Jacksonville, County of Duval, State of Florida, to wit:

A portion of the Southeast 1/4 of Section 7, Township 2 South, Range 26 East, Duval County, Florida, being more particularly described as follows:

For a point of reference, commence at the intersection of the Northerly right-of-way line of Commonwealth Road, as now established for a width of 60 feet, with the Westerly right-of-way line of Edgewood Avenue, as now established for a width of 100 feet; run thence South 88°00'00" West, along said Northerly right-of-way line of Commonwealth Road, a distance of 802.34 feet to the point of beginning for this description.

From the point of beginning thus described, run thence North 00°08'35" East, a distance of 1323.92 feet to the Southerly right-of-way line of 1st Street West, as now established for a width of 60 feet; run thence South 87°47'39" West, along said Southerly right-of-way line, a distance of 922.77 feet to a found iron pipe; run thence South 00°04'15" West, a distance of 1320.54 feet to a point in the aforementioned Northerly right-of-way line of Commonwealth Road; run thence North 88°00'00" East along said Northerly right-of-way line, a distance of 920.98 feet to a found iron pipe and the point of beginning.

VOL 6150 PG 2248

OFFICIAL RECORDS

## SCHEDULE B

### Terms

1.    The Interim Term shall commence on June 24, 1986 and shall expire at midnight on June 30, 1986.

2.    The Basic Lease Term shall commence on July 1, 1986, and shall expire at midnight on June 30, 2011.

3.    The first Extended Term shall commence on July 1, 2011, and shall expire at midnight on June 30, 2021.

4.    The second Extended Term shall commence on July 1, 2021, and shall expire at midnight on June 30, 2026.

5.    The third Extended Term shall commence on July 1, 2026, and shall expire at midnight on June 30, 2031.

6.    The fourth Extended Term shall commence on July 1, 2031, and shall expire at midnight on June 30, 2036.

7.    The fifth Extended Term shall commence on July 1, 2036, and shall expire at midnight on June 30, 2041.

VOL 6150 PG 2249

OFFICIAL RECORDS

          IN WITNESS WHEREOF, the parties hereto have executed
this Lease as of the date first above written.

INC.,                                    COMMONWEALTH AVENUE WAREHOUSE,

  (Seal)                                    as Lessor

 Attest:                                 By: _____
                                            Michael J. Naughton
                                            Vice President
By: _____
   Donald Howell
   Vice President


                                         WINN-DIXIE STORES, INC.,
                                            as Lessee

  (Seal)

  Attest:                                By: _____
                                            Richard P McCook
                                            Financial Vice President

By: _____
   F.P. Hamilton
   Assistant Secretary

VOL 6150 PG 2250

OFFICIAL RECORDS

STATE OF NEW YORK          )
                           ) ss.
COUNTY OF NEW YORK         )


The foregoing instrument was acknowledged before me this _24th_ day of June, 1986, by Richard P. McCook and F.P. Hamilton, the Financial Vice President and Assistant Secretary, respectively, of WINN-DIXIE STORES, INC., a Florida corporation, on behalf of the corporation.

_Catherine A. Carroll_
Notary Public in and for
said State

(Notarial Seal)

My commission expires:

CATHERINE A. CARROLL
Notary Public, State of New York
No. 24-4860418
Qualified in Kings County
Certificate filed in New York County
Commission Expires March 27, 1988

VOL 6150 PG 2251

OFFICIAL RECORDS

STATE OF NEW YORK          )
                          ) ss.
COUNTY OF NEW YORK        )

The foregoing instrument was acknowledged before me this 24th day of June, 1986, by Michael J. Naughton and Donald Howell, the Vice President and Vice President, respectively, of COMMONWEALTH AVENUE WAREHOUSE, INC., a Florida corporation, on behalf of the corporation.

Catherine A. Carroll
Notary Public in and for
said State

(Notarial Seal)

My commission expires:

CATHERINE A. CARROLL
Notary Public, State of New York
No. 24-4860418
Qualified in Kings County
Certificate filed in New York County
Commission Expires March 2?, 1988

86= 62155
JUN 25  I 03 PH '86

CLERK OF CIRCUIT COURT