Hearing Date: November 30, 2006, 1:00 p.m.
Objection Deadline: November 23, 2006, 4:00 p.m.

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| **WINN-DIXIE STORES, INC., <u>et al.</u>,** | ) | *Chapter 11* |
| | ) | |
| | ) | **Jointly Administered** |
| Debtors.¹ | ) | |

### MOTION FOR ORDER APPROVING SETTLEMENT AND
### COMPROMISE WITH OHIO CASUALTY INSURANCE COMPANY

Winn-Dixie Stores, Inc. ("WD Stores") and twenty-three of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively with WD Stores, the "Debtors"), move the Court for entry of an order approving the Debtors' settlement and compromise of certain matters with The Ohio Casualty Insurance Company ("Ohio Casualty") including the continuance of certain of the Debtors' liabilities and obligations under the agreement with respect thereto. In support of the Motion, the Debtors state as follows:

### Summary of Relief Requested

By this Motion, the Debtors respectfully request that this Court enter an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizing the Debtors to compromise and settle certain matters with Ohio Casualty and, in connection with such compromise and settlement authorizing and acknowledging the continuance of certain of the Debtors' liabilities and obligations owing to Ohio Casualty under the pre-petition General Agreement of Indemnity dated May 1, 2002, a copy of which is attached as *Exhibit A* (the

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Check Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

"Ohio Casualty Indemnity Agreement"). The Debtors respectfully submit that the decision to enter into the compromise and settlement with Ohio Casualty is the product of arms' length, good-faith negotiations and represents the sound exercise of the Debtors' business judgment. Additionally, the continuance and undertaking of certain liabilities and obligations of and by the Debtors under the Ohio Casualty Indemnity Agreement is in furtherance of obligations the Debtors assumed in accordance with previous orders of this Court, and in furtherance of the Debtors' obligations under their confirmed Plan of Reorganization.

## I.  Background

1. On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2. The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "US Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005, was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested by this Motion are sections 105(a), and 363 of the Bankruptcy Code, supported by Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

6. On June 29, 2006, the Debtors filed the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan"). On August 2, 2006, the Debtors filed the Second Proposed Joint Plan of Reorganization of Winn-Dixie Stores, Inc and Affiliated Debtors (the "Second Plan"), and on October 10, 2006, the Debtors filed the First Modification to the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "First Modification"). The Plan, the Second Plan, and the First Modification will be collectively referred to as the "Plan." The Plan was confirmed by order dated November 9, 2006.

## II.   Relief Requested

7. In connection with the operation of their business, the Debtors must post, or have a surety post, bonds or other forms of security to comply with certain state workers compensation insurance regulations allowing the Debtors to operate as self-insured employers for workers' compensation purposes in those states.

8. In connection with the Debtors' qualification as a self-insured employer for workers' compensation purposes in Mississippi, prior to the Petition Date, Ohio Casualty issued two surety bonds identified on ***Exhibit B*** (collectively the "Bonds") at the request of the Debtors, its subsidiaries and affiliates. Ohio Casualty issued the Bonds in reliance upon

the Debtors' execution of the Ohio Casualty Indemnity Agreement pursuant to which the Debtors agreed, among other things, to pay Ohio Casualty upon demand (i) amounts sufficient to reimburse Ohio Casualty for all loss and expense, including reasonable attorneys' fees, incurred by Ohio Casualty by reason of having executed any bond or bonds, (ii) amounts sufficient to reimburse Ohio Casualty on account of any breach of the Ohio Casualty Indemnity Agreement by the Debtors, (iii) amounts sufficient to discharge any claim made against Ohio Casualty on any bond, whether issued on behalf of any of the Debtors; and (iv) any premium due for any bond or bonds, including renewal premiums with respect to the Bonds until proof satisfactory to Ohio Casualty is furnished demonstrating Ohio Casualty's discharge from liability under the Bonds. Additionally, under the Ohio Casualty Indemnity Agreement, the Debtors are required to procure the discharge of Ohio Casualty from any bond and all liability accruing or to accrue by reason thereof, and in support, deposit collateral with Ohio Casualty, acceptable to Ohio Casualty to cover its exposure under its Bonds.

9.   Recognizing the importance of its insurance programs, including the self-insurance workers' compensation programs supported by surety bonds, on February 22, 2005, the Debtors filed their Motion for Authority to Continue Pre-Petition Insurance and Workers Compensation Programs and to pay Pre-Petition Premiums, Related Obligations and Premium Financing Payments (the "Insurance Motion"). On February 23, 2005, an interim order was entered approving the Insurance Motion and granting the Debtors the authority to maintain their insurance programs and to pay obligations necessary to maintain them. The order further authorized the Debtors to continue making insurance premium and premium financing payments and pay pre-petition obligations relating to their workers compensation

4

programs. On March 15, 2005, a final order (the "Final Insurance Order") was entered approving the Insurance Motion on a final basis.

10. Ohio Casualty issued the Bonds effective May 3, 2002. Ohio Casualty provided the Debtors' with notice of cancellation of the Bonds on or about January 28, 2005, which, under the sixty (60) day notice of cancellation provision under the Bonds, means that the effective date of cancellation for the Bonds occurred on or about March 28, 2005. Ohio Casualty's cancellation did not terminate the enforceability of these Bonds; rather, the Bonds remain in force from the date of issuance to the effective date of cancellation (the "Effective Period"). Thus, the Bonds, therefore qualify the Debtors as self-insured employers for workers' compensation purposes in Mississippi during the Effective Period. As a result, the Debtors and Ohio Casualty, as surety, continue to be exposed to liability for workers' compensation claims that arise during the Effective Period.

11. As of the Petition Date, Bonds in the aggregate amount of $1 million remained outstanding. As a result of its continuing exposure under its Bonds despite their cancellation, Ohio Casualty filed Proofs of Claim against WD Stores and certain of its subsidiaries, alleging contingent claims of up to $1 million, plus attorneys' fees, expenses and including bond premiums arising with respect to the Bonds. In its Proofs of Claim, Ohio Casualty further asserted that it was the holder of secured claims against the Debtors pursuant to (i) compensation liens and/or preference and priority claims and interests with respect to and in the assets of the Debtors under Miss. Code Ann. § 71-3-45 (1990), and (ii) pursuant to Ohio Casualty's rights of equitable subrogation.

12. In furtherance of the obligations and programs assumed pursuant to the Final Insurance Order, the Debtors proposed the following provisions in its Plan:

### Workers Compensation Claims

The Reorganized Debtors shall pay all Workers Compensation Claims that are determined to be valid under applicable state law and the corresponding programs maintained by the Debtors, and in accordance with the terms and conditions of such state law and such programs. Nothing in the Plan shall be deemed to discharge, release or relieve the Debtors or the Reorganized Debtors from any current or future liability with respect to any valid Workers Compensation Claim, regardless of when the underlying injuries occurred. All payments of Workers Compensation Claims made by the Debtors arising during the pendency of the Chapter 11 case are hereby ratified.

The Debtors' Plan also provides that a "Workers Compensation Claim" means a "Claim held by an employee of the Debtors for workers compensation coverage under the workers compensation program applicable in the particular state in which the employee is employed by the Debtors." By its terms, the Plan contemplates payment of the workers compensation obligations that, if not satisfied by the Debtors, would impair the Debtors' qualification under Mississippi and other state workers' compensation regulations, and possibly prevent an effective reorganization.

### Terms of Compromise and Settlement

13. By this Motion, the Debtors seek authority to compromise Ohio Casualty's claims for payment of post-cancellation premiums with respect to its continuing exposure under its Bonds, Bonds that support the Debtors' qualification as a self-insured employer in Mississippi. The Debtors also seek authority to compromise Ohio Casualty's claims for fees and expenses arising in connection with these bankruptcy cases through the effective date of the Plan. The Debtors further seeks authority to disallow Ohio Casualty's claims, designated as claim numbers 9993 and 9994, as part of, and subject to this Court's approval of, the settlement and compromise described in this Motion; provided, however, that the

disallowance of such claims shall be without prejudice to Ohio Casualty's filing an administrative claim within the time allowed for such filing(s) in the event of a default by the Debtors under the Ohio Casualty Indemnity Agreement prior to the effective date of the Plan. In exchange for Ohio Casualty's release of its claims for post-cancellation premiums and attorneys' fees and expenses as set forth herein, Ohio Casualty has requested a more formal acknowledgment by the Debtors of its obligations to Ohio Casualty under the Ohio Casualty Indemnity Agreement under which the Ohio Casualty Bonds supporting the Debtors' qualification as a self-insured employer were issued.  Accordingly, and by this Motion, the Debtors seek to undertake and assume the liabilities and obligations under the Ohio Casualty Indemnity Agreement, exclusive of any post-cancellation premiums with respect to Ohio Casualty's continuing exposure under the Bonds and the fees and expenses arising in connection with these bankruptcy cases through the effective date of the Plan. The undertaking of such liabilities and obligations under the Ohio Casualty Indemnity Agreement is implicitly acknowledged in the Final Insurance Order and supported by the provisions in the Debtors' Plan.

### III.    Basis for Relief Requested; Applicable Authority

14.    This Court may authorize the Debtors to enter into the terms of the settlement and compromise pursuant to section 105 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

15.    Bankruptcy Rule 9019 governs the procedural requirements to be followed before a settlement may be approved.  Bankruptcy Rule 9019(a) provides, in relevant part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement."  Fed. R. Bankr. P. 9019(a).  Settlements and compromises are

"a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 428 (1968 (*quoting Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939)).

16.  To approve a compromise and settlement under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise and settlement is fair and equitable, reasonable, and in the best interests of the Debtors' estate. *See e.g., In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994). The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). In exercising its discretion, the bankruptcy court must make an independent determination that the settlement is fair and reasonable. *Id.* at 122. The court may consider the opinions of the trustee or debtor-in-possession that the settlement is fair and reasonable. *Id.*; *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993). In addition, the bankruptcy court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41 (Bankr. S.D.N.Y. 1998); *See also Shugrue*, 165 B.R. at 123 ("the general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above"). In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983); *see also Purofied Down*, 150 B.R. at 522 ("the court need not conduct a 'mini-trial' to determine the merits of the underlying litigation").

**This Court should Approve the Terms of Settlement Including the Continuance and Undertaking of Certain Obligations under Ohio Casualty Indemnity Agreement.**

17. The terms of the settlement are fair, reasonable, and in the best interests of the Debtors' estates. Additionally, the terms of the settlement, including the continuance and undertaking of those liabilities and obligations under the Ohio Casualty Indemnity Agreement described above satisfy the business judgment rule.

18. In the absence of settlement and the Debtors' acknowledgements contemplated thereby, Ohio Casualty will be forced to pursue, and the Debtors forced to defend, indemnity and exoneration claims against the Debtors. With respect to the former, the surety's right to indemnity becomes relevant only in the event of a loss under its bonds. The surety's right to exoneration, however, is continuing and does not require the occurrence of a triggering event before a surety is entitled to exercise it. Additionally, as outlined above, the terms of the Ohio Casualty Indemnity Agreement expressly contemplate this exoneration principle. Without waiving arguments to the contrary, these provisions, coupled with Ohio Casualty's continuing exposure during the Effective Period relative to its Bonds, support Ohio Casualty's claims for post-cancellation premiums and its fees and expenses, including attorneys' fees, arising in connection with its Bonds.

19. The settlement allows the parties to avoid the risk and expense of litigating these issues, and further allows the Debtors to avoid the trouble and expense of either posting additional collateral in favor of Ohio Casualty or replacing the Ohio Casualty Bonds with alternative surety instruments or policies of insurance.

# NOTICE

20. Notice of the Motion has been provided or will be provided to (a) the U.S. Trustee, (b) counsel for the Debtors' postpetition secured lenders, (c) counsel for the Creditors Committee and (d) other parties named on the Master Service List. The Debtors believe that such notice is sufficient and that no other or further notice need be given.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order substantially in the form attached to this Motion as Exhibit "C."

Dated: November 10, 2006

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SMITH HULSEY & BUSEY |
| By:  *s/ D.J. Baker* <br>     D. J. Baker <br>     Sally McDonald Henry <br>     Rosalie Walker Gray | By:  *s/ Cynthia C. Jackson* <br>     Stephen D. Busey <br>     James H. Post <br>     Cynthia C. Jackson <br>     Florida Bar Number 498882 |
| Four Times Square <br> New York, New York 10036 <br> (212) 735-3000 <br> (212) 735-2000 (facsimile) <br> djbaker@skadden.com | 225 Water Street, Suite 1800 <br> Jacksonville, Florida 32202 <br> (904) 359-7700 <br> (904) 359-7708 (facsimile) <br> cjackson@smithhulsey.com |
| Co-counsel for the Debtors | Co-counsel for the Debtors |

**Exhibit A**



 THE OHIO CASUALTY INSURANCE COMPANY

WEST AMERICAN INSURANCE COMPANY
136 NORTH THIRD STREET  HAMILTON, OH 45025

## GENERAL AGREEMENT OF INDEMNITY

THIS AGREEMENT is made by the Undersigned in favor of THE OHIO CASUALTY INSURANCE COMPANY and/or WEST AMERICAN INSURANCE COMPANY for the purpose of indemnifying them from all loss and expense in connection with any Bonds for which THE OHIO CASUALTY INSURANCE COMPANY and/or WEST AMERICAN INSURANCE COMPANY now is or hereafter becomes Surety for any of the following as

Principal:  Winn-Dixie Stores, Inc.; any company which is a subsidiary to Winn-Dixie Stores, Inc. (whether now owned or hereafter created or acquired); any person or entity for whom Winn-Dixie Stores, Inc. requests a bond or bonds.

In consideration of the execution of any such Bonds for Principal and as an inducement to such execution by Surety, the Undersigned, jointly and severally agrees as follows:

DEFINITIONS. Where they appear in this agreement, the following terms shall be considered as defined in this section:

Principal: Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interest, whether alone or in joint venture with others not named herein.

Bond: Any and all bonds, undertakings or instruments of guarantee and any renewals or extensions thereof executed by Surety on behalf of Principal.

SURETY: Any one or combination of the following: THE OHIO CASUALTY INSURANCE COMPANY; WEST AMERICAN INSURANCE COMPANY, any person or company joining with any of the aforesaid companies in executing any Bond at their request or providing reinsurance to them with respect to any Bond

INDEMNITY TO SURETY: Undersigned agrees to pay to Surety upon demand:
1. All loss and expense, including reasonable attorney fees, incurred by Surety by reason of having executed any Bond or incurred by it on account of any breach of this agreement by any of the Undersigned.
2. An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond
3. Any premium due for any Bond, computed according to the rates currently charged by Surety, including renewal premiums until proof satisfactory to Surety is furnished of its discharge from liability under any Bond.

With respect to claims against Surety:
1. Surety shall have the exclusive right for itself and the Undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2. Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims.
3. Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.
4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.
5. Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.
6. Undersigned authorize Surety to join any and all of the Undersigned and parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the undersigned without the necessity of first proceeding against the Principal.

GENERAL PROVISIONS:
1. Assent by Surety to changes in any Bond or refusal so to assent shall not release or affect the obligations of Undersigned to Surety
2. Surety shall have the right to decline to execute any Bond.
3. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration, and the right of subrogation.
4. Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the Undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.
5. The Undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligations(s).
6. Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

Page 1 of 4

S-5113 (07-97)

7. In case the execution hereof by any ~~the~~ Undersigned may be defective or invalid for an ~~reason~~, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.

8. Execution by Principal or any of the Undersigned of any application for any Bond or of any other agreement of Indemnity in behalf of Principal, or the taking of indemnity of any other person by Surety with respect to any Bond of Principal, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this agreement.

TERMINATION. This agreement is a continuing obligation of the Undersigned unless terminated as provided in this paragraph. An Undersigned desiring to terminate liability as to future Bonds of Principal must:
1. Give written notice to Surety at its home office, Hamilton, Ohio 45025, by certified or registered mail of such termination.
2. State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.

After the effective date of termination, the Undersigned giving notice shall be or remain liable hereunder for Bonds executed, authorized, renewed, or extended prior to such date.

Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

Executed this __1st__ day of __May__, __2002__.

__Winn-Dixie Stores, Inc.__

By: _____[signature]_____
   Al Rowland        President

Attest: _____[signature]_____
                        Secretary
Judith W. Dixon

Page 2 of 4

S-5113 (07-97)

CORPORATE ACKNOWLEDGMENT

STATE OF _____
                                                           ) ss
County of _____

On this _____ day of _____, 19_____ before me personally appeared
_____
_____, to me known to be the
_____
of the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that _____ he/she _____ executed said instrument by order of the Board of Directors of said corporation.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written

My Commission Expires _____    _____

              (Seal)                               Notary Public, residing at _____


INDIVIDUAL ACKNOWLEDGMENT: (To Be Used by Persons Who Sign As an Individual)

STATE OF _____
                                                           ) ss
County of _____

On this _____ day of _____, 19_____, before me personally appeared
_____
_____, to me known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that _____ he/she _____ executed the same for the purposes, considerations and uses therein set forth as __h_____ free and voluntary act and deed
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

My Commission Expires _____    _____

              (Seal)                               Notary Public, residing at _____


CORPORATE ACKNOWLEDGMENT

STATE OF _____
                                                           ) ss
County of _____

On this _____ day of _____, 19_____ before me personally appeared
_____
_____, to me known to be the
_____
of the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that _____ he/she _____ executed said instrument by order of the Board of Directors of said corporation.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written

My Commission Expires _____    _____

              (Seal)                               Notary Public, residing at _____


Page 3 of 4

S-5113 (07-97)

INDIVIDUAL ACKNOWLEDGMENT: (To Be Used by Persons Who Sign As an Individual)

STATE OF _____
                                            ) ss
County of _____

On this _____ day of _____, 19____, before me personally appeared

_____, to
me known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that ____ he/she ____
executed the same for the purposes, considerations and uses therein set forth as __h____ free and voluntary act and deed.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written

My Commission Expires _____   _____

             (Seal)                                              Notary Public, residing at _____


CORPORATE ACKNOWLEDGMENT

STATE OF __Florida_____
                                            ) ss
County of __Duval_____

On this __1st__ day of __May_____, 19 _200_ Before me personally appeared.
__Al Rowland and Judith W. Dixon_____
__President & Secretary_____, to me known to be the

of the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for
the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that
____he/she____ executed said instrument by order of the Board of Directors of said corporation.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written

My Commission Expires __September 30, 2005__         *Adeline M. Castleberry*
                                                                                Jacksonville, FL
             (Seal)                                              Notary Public, residing at _____

ADELINE M. CASTLEBERRY
Notary Public, State of Florida
My comm expires Sept. 30, 2005
Comm. No. DD 047279

INDIVIDUAL ACKNOWLEDGMENT: (To Be Used by Persons Who Sign As an Individual)

STATE OF _____
                                            ) ss
County of _____

On this _____ day of _____, 19____, before me personally appeared

_____, to
me known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that ____ he/she ____
executed the same for the purposes, considerations and uses therein set forth as __h____ free and voluntary act and deed.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written

My Commission Expires _____   _____

             (Seal)                                              Notary Public, residing at _____

Page 4 of 4

S-5113 (07-97)

**Exhibit B**

| Bond Number | Principal | Amount | Obligee | Description |
|---|---|---|---|---|
| 3-696-391 | Winn-Dixie Louisiana, Inc | $500,000 | State of Mississippi | Workers compensation self-insurance |
| 3-696-392 | Winn-Dixie Montgomery, Inc | $500,000 | State of Mississippi | Workers compensation self-insurance |
| | TOTAL | $1,000,000.00 | | |

#353694

**Exhibit C**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |

ORDER APPROVING SETTLEMENT AND COMPROMISE
WITH OHIO CASUALTY INSURANCE COMPANY

These cases came before the Court for hearing on November 30, 2006, upon the motion of Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order authorizing and approving the Debtors' settlement and compromise with The Ohio Casualty Insurance Company ("Ohio Casualty"), including the continuance of certain of the Debtors' liabilities and obligations under an indemnity agreement in favor of Ohio Casualty (the "Motion").[1] The Court has read the Motion and considered the representations of counsel. Upon the representations of counsel and without objection from the United States Trustee or any other interested party, the Court determines that good cause exists to grant the relief requested by the Motion and granting the relief is in the best interest of these estates and creditors. Accordingly, it is

ORDERED AND ADJUDGED THAT:

1. The Motion is granted.

2. The settlement and compromised described in the Motion is approved.

---

[1] All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Motion.

3.      Claim numbers 9993 and 9994 filed by Ohio Casualty are disallowed in their entirety and expunged; provided, however, that the disallowance of such claims shall be without prejudice to Ohio Casualty's filing an administrative claim within the time allowed for such filing(s) in the event of a default by the Debtors under the Ohio Casualty Indemnity Agreement prior to the effective date of the Plan.

4.      The Debtors are authorized to take any and all actions that may be required to implement the settlement described in the Motion.

5.      The Court will retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated this ____ day of November, 2006, in Jacksonville, Florida.

_____
Jerry A. Funk
United States Bankruptcy Judge

Cynthia C. Jackson is directed to serve
a copy of this Order on all parties who
received copies of the Motion.

2

476175-Wilmington Server 1A - MSW