UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | ) | Case No. 05-03817-3F1 |
| Debtors. | ) | Jointly Administered |

**FIFTH INTERIM APPLICATION OF ALVAREZ & MARSAL, LLC, OPERATIONS AND REAL ESTATE ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM JUNE 1, 2006 THROUGH AND INCLUDING SEPTEMBER 30, 2006**

| | |
|---|---|
| **Name of Applicant** | **Alvarez & Marsal, LLC** |
| **Authorized to Provide Services to:** | **The Official Committee of Unsecured Creditors of Winn-Dixie Stores, LLC, et al.** |
| **Date of Retention** | **Order entered on June 3, 2005 nunc pro tunc to March 4, 2005** |
| **Period for which Interim Compensation and Reimbursement is sought** | **June 1, 2006 though and including September 30, 2006** |
| **Amount of Interim Compensation sought as actual, reasonable and necessary** | **$400,000.00** |
| **Amount of Interim Reimbursement sought as actual, reasonable and necessary** | **$5,551.33** |

This is an interim application

## Summary of Professional's Hours

| Professional | Title | 6/1/06 - 6/30/06 | 7/1/06 - 7/31/06 | 8/1/06 - 8/31/06 | 9/1/06 - 9/30/06 | Total |
|---|---|---|---|---|---|---|
| Andrew Hede | Managing Director | 94.0 | 37.0 | 31.5 | 28.5 | 191.0 |
| Darren Mills | Managing Director | - | - | - | 3.0 | 3.0 |
| Dirk Aulabaugh | Senior Director | 91.2 | 2.8 | 39.2 | 44.3 | 177.5 |
| Martin Williams | Director | - | - | - | 10.0 | 10.0 |
| Robert McEvoy | Director | 176.0 | - | - | - | 176.0 |
| Matthew Gavejian | Senior Associate | 223.5 | 44.5 | 67.5 | 76.0 | 411.5 |
| Chris Daniello | Analyst | 12.5 | - | - | - | 12.5 |
| **Total Hours** | | **597.2** | **84.3** | **138.2** | **161.8** | **981.5** |

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | ) | Case No. 05-03817-3F1 |
| Debtors. | ) | Jointly Administered |

**FIFTH INTERIM APPLICATION OF ALVAREZ & MARSAL, LLC, OPERATIONS AND REAL ESTATE ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM** <u>**JUNE 1, 2006 THROUGH AND INCLUDING SEPTEMBER 30, 2006**</u>

Alvarez & Marsal, LLC ("<u>A&M</u>"), operations and real estate advisor to the official committee of unsecured creditors (the "<u>Committee</u>") of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors-in-possession appointed in the above-captioned cases (collectively, "<u>Winn-Dixie</u>" or the "<u>Debtors</u>"), hereby submits its application (the "<u>Application</u>"), pursuant to sections 328 and 331 of title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 328 effective January 30, 1996 (the "<u>U.S. Trustee Guidelines</u>"), and the Final Order Approving Interim Compensation Procedures for Professionals, dated March 15, 2005 (Docket No. 434) (the "<u>Interim Compensation Order</u>"), for the allowance of

interim compensation for professional services rendered from
June 1, 2006 through and including September 30, 2006 (the
"<u>Fifth Interim Compensation Period</u>"), and for reimbursement of
expenses incurred in connection with such services, and in
support thereof respectfully represents as follows:

I. <u>INTRODUCTION</u>

**A. <u>Background</u>**

1.    On February 21, 2005 (the "<u>Petition Date</u>"), the
Debtors each filed a voluntary petition for relief under chapter
11 of the Bankruptcy Code in the United States Bankruptcy Court
for the Southern District of New York (the "<u>New York Bankruptcy
Court</u>").

2.    On March 1, 2005, the United States Trustee duly
appointed the Committee.

3.    By order dated April 13, 2005, the New York
Bankruptcy Court transferred venue of these cases to this Court.
The Debtors' cases are being jointly administered for procedural
purposes only.  The Debtors continue to operate their businesses
and manage their properties as debtors in possession pursuant to
sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or
examiner has been appointed in these cases.

4.    This Court has jurisdiction over this Application
pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding
within the meaning of 28 U.S.C. § 157(b)(2).  Venue of the

Debtors' chapter 11 cases and this Application is proper under
28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the
relief sought herein are sections 328 and 331 of the Bankruptcy
Code.

**B.    Retention of A&M and Billing History**

        5.    On June 3, 2005, pursuant to the Order Under 11
U.S.C. § 1103 And Fed. R. Bankr. P. 2014 And 5002, Authorizing
Retention and Employment Of Alvarez & Marsal, LLC as Committee's
Operations and Real Estate Advisors (Docket No. 1557) (the
"Retention Order"), the Committee's retention of A&M in these
cases was authorized effective as of March 4, 2005.

        6.    This Application is A&M's fifth interim
application for approval and allowance of compensation and
reimbursement of expenses.  A&M makes this interim application
pursuant to sections 328 and 331 of the Bankruptcy Code.  A&M's
first interim application for allowance of compensation and
reimbursement of expenses for the period March 4, 2005 through
May 31, 2005 was submitted on July 15, 2005.  A&M's second
interim application for allowance of compensation and
reimbursement of expenses for the period June 1, 2005 through
September 30, 2005 was submitted on November 11, 2005.  A&M's
third interim application for allowance of compensation and
reimbursement of expenses for the period October 1, 2005 through
January 31, 2006 was submitted on March 17, 2006.  A&M's fourth

interim application for allowance of compensation and reimbursement of expenses for the period February 1, 2006 through May 31, 2006 was submitted on July 18, 2006.

       7.   In accordance with the engagement letter between the Committee and A&M (dated March 4, 2005), A&M seeks reimbursement for its fixed fee of $100,000.00 per month.

       8.   In accordance with the Interim Compensation Order, A&M submitted a monthly fee statement to, among others, the Debtors seeking interim compensation and reimbursement of expenses.  During the Fifth Interim Compensation Period, A&M submitted the following fee statements:

(a)    On June 30, 2006, pursuant to the Interim Compensation Order and the Notice of Approval of Retention Terms, A&M served its thirteenth fee statement which included the period from June 1, 2006 through and including June 30, 2006 (the "Thirteenth Fee Statement").  The Thirteenth Fee Statement sought an allowance of $100,000.00 for the period June 1, 2006 though June 30, 2006 (representing one month of services at a fixed fee of $100,000.00 per month) as compensation for services rendered.

(b)    On July 20, 2006, pursuant to the Interim Compensation Order and the Notice of Approval of Retention Terms, A&M served its fourteenth fee statement for the period from July 1, 2006 through and including July 31, 2006 (the "Fourteenth Fee Statement").  The Fourteenth Fee Statement sought an allowance of $100,000.00 (representing one month of services at a fixed fee of $100,000.00 per month) as compensation for services rendered and the reimbursement of $2,737.48 in expenses.

4

(c)  On August 16, 2006, pursuant to the Interim
Compensation Order and the Notice of Approval of
Retention Terms, A&M served its fifteenth fee
statement for the period from August 1, 2006 through
and including August 31, 2006 (the "Fifteenth Fee
Statement").  The Fifteenth Fee Statement sought an
allowance of $100,000.00 (representing one month of
services at a fixed fee of $100,000.00 per month) as
compensation for services rendered and the
reimbursement of $2,176.10 in expenses.

(d)  On September 21, 2006, pursuant to the Interim
Compensation Order and the Notice of Approval of
Retention Terms, A&M served its sixteenth fee
statement which included the period from September 1,
2006 through and including September 30, 2006 (the
"Sixteenth Fee Statement").  The Sixteenth Fee
Statement sought an allowance of $100,000.00
representing one month of services at a fixed fee of
$100,000.00 per month) as compensation for services
rendered and the reimbursement of $582.91 in expenses.

(e)  On October 4, 2006, pursuant to the Interim
Compensation Order and the Notice of Approval of
Retention Terms, A&M served its seventeenth fee
statement which included expenses for the period from
September 1, 2006 through and including September 30,
2006 (the "Seventeenth Fee Statement").  The
Seventeenth Fee Statement sought the reimbursement of
$54.84 in expenses.

9.    As of the filing of this Application, A&M has
received payment in the amount of 80% of fees and 100% of
expenses with respect to the Thirteenth, Fourteenth, Fifteenth
and Sixteenth Interim Fee Statements and 100% of expenses with
respect to the Seventeenth Fee Statement, for a total of
$325,551.33.

10.    A&M has not entered into any agreement, express
or implied, with any other party for the purpose of fixing or

sharing fees or other compensation to be paid for professional services rendered in these cases.

11.  No promises have been received by A&M or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## II.  **CASE STATUS**

12.  The Debtors filed a disclosure statement and a plan of reorganization on June 29, 2006.  On November 9, 2006 the plan of reorganization was approved.  The Debtors expect to emerge from bankruptcy by the end of November 2006.

## III. **APPLICATION**

13.  By this Application, A&M is seeking full allowance of (a) compensation for professional services rendered by A&M, as operation and real estate advisor to the Committee, during the Fifth Interim Compensation Period and (b) reimbursement of expenses incurred by A&M in connection with such services during the Fifth Interim Compensation Period.

14.  In this Application, A&M seeks approval of the amount of $400,000.00 for advisory services rendered on behalf of the Committee during the Fifth Interim Compensation Period and the amount of $5,551.33 for reimbursement of expenses incurred in connection with the rendition of such services, for a total award of $405,551.33.

15.    Pursuant to the Interim Compensation Order, A&M, together with all other retained professionals, is entitled to eighty percent (80%) of its fees sought in A&M's Fifth Interim Compensation Period and reimbursement of one hundred percent (100%) of A&M's expenses.  As noted above, A&M has received to date 80% of fees and 100% of expenses for the Thirteenth, Fourteenth, Fifteenth and Sixteenth Fee Statements and 100% of expenses for the Seventeenth Fee Statement (totaling $325,551.33).  A&M is, therefore, seeking a total payment of $80,000.00 pursuant to this Application, representing the unpaid balance of 100% of fees and 100% of expenses for the Thirteenth, Fourteenth, Fifteenth, and Sixteenth Fee Statements, and 100% of expenses for the Seventeenth Fee Statement.

16.    The fees sought by this Application reflect an aggregate of 981.5 hours of professional time spent and recorded in performing services for the Committee during the Fifth Interim Compensation Period.

17.    A&M rendered to the Committee all services for which compensation is sought solely in connection with these cases in furtherance of the duties and functions of the Committee.

18.    A&M maintains electronic records of the time expended in the rendering of the professional services required by the Committee.  These records are maintained in the ordinary

7

course of A&M's business.  For the convenience of the Court and parties in interest, a billing summary for the Fifth Interim Compensation Period is attached as part of the cover sheet, setting forth the name of each professional for whose work on these cases compensation is sought, each professional's title and the amount of time expended by each such professional.

19.  Attached hereto as <u>Exhibit A</u> are time entry records broken down in halves of an hour by professional, based on guidelines from the Retention Order, setting forth a description of services performed by each professional on behalf of the Committee for the Fifth Interim Compensation Period.

20.  A&M also maintains electronic records of all expenses incurred in connection with the performance of professional services.  Details of the amounts and categories of expenses for which reimbursement is sought for the Fifth Interim Compensation Period is attached hereto as <u>Exhibit B</u>.

### IV.  <u>SUMMARY OF PROFESSIONAL SERVICES RENDERED</u>

21.  The following summary is intended to highlight the services rendered by A&M and segregate those services into categories where A&M has expended a number of hours on behalf of the Committee.  It is not meant to be a detailed description of all of the work performed; detailed descriptions of the day-to-day services provided by A&M during the Fifth Interim Compensation Period and the time expended performing such

services are fully set forth in Exhibit A hereto.  Such detailed

descriptions show that A&M was heavily involved in the

performance of services for the Committee on a daily basis,

including night and weekend work, often under time constraints

to meet the needs of the Committee in these cases. Furthermore,

fifty-seven percent (57%) of the time incurred by A&M

professionals, from June 1, 2006 through September 30, 2006, was

incurred by Managing Directors and Directors, the most

experienced professionals in the firm.

## A.    Retention/Fee Matters

22.  A&M participated in discussions with Committee

counsel, Debtors' professionals and representatives of Stuart

Maue (the "Fee Examiner"). A&M filed its Fourth Interim Fee

Application for the period February 1, 2006 through May 31, 2006

and subsequent monthly fee statements. Additionally, A&M

submitted its Fourth Interim Compensation period fee statements

in the required format to the Fee Examiner.

## B.    Business Plan Due Diligence

23.  A&M performed a financial and operational review

of the Debtor's May 2006 business plan (FY 2007 – FY 2011).  A&M

has participated in meetings and discussions with the Debtors'

senior management team regarding all elements of the business

plan, including operating initiatives to improve store

performance, industry benchmarking, historical operating

9

practices, customer survey data and forecast financial
performance.  A&M submitted several information request lists
and monitored the status of information flow from the Debtors
and its advisors.  Additionally, A&M's due diligence included a
tour of a Jacksonville area store with Winn-Dixie management.
A&M respectfully asserts that its operating experience is vital
to the proceedings as the Debtor's operating performance will
help maximize the distributions to the Debtors' unsecured
creditors.

**C.    Case Management**

24.  A&M discussed case issues, case timeline and next
steps and has coordinated work product and work flow with other
advisors and Committee counsel.

**D.    Winn-Dixie Employment Issues**

25.  A&M participated in discussions regarding the
negotiation of CEO Peter Lynch's employment contract.  A&M
reviewed comparable company compensation data to assist in its
review.  Additionally, A&M reviewed and analyzed the Debtors'
proposed management incentive bonus plan for FY 2007, including
a comparison to the FY 2006 plan.  A&M presented its findings in
a memo to the Committee.

E.    **Board of Directors Member Selection**

   26.   A&M participated in the process of selecting Winn-Dixie's new board of directors.  Working in connection with Spencer Stuart (the Debtors' executive search firm), a sub-committee of the Committee and the CEO Peter Lynch, A&M participated in meetings and interviewed all board candidates. A&M issued recommendations regarding candidates to the Debtors and the Committee.

F.    **Real Estate**

   27.   A&M reviewed various property sale motions, proposed lease rejections and assumptions, specific-store lease agreements, real estate impacts of proposed store closures and leasing impacts of the revised footprint.  A&M real estate professionals participated in discussions with landlords, Debtor's representatives and advisors as well as the Committee and its Counsel.  Additionally, A&M performed a review of schedules detailing landlord claims and potential claims due to lease rejections.

G.    **Executory Contracts**

   28.   A&M reviewed proposed rejections and assumptions of executory contracts, and discussed same with the Debtors' advisors, to better understand the business purpose for rejection or assumption, potential damage claims, and potential realizable value from assignment of contracts in an effort to

maximize creditor recovery.  A&M prepared schedules detailing contracts to be rejected or assumed and presented its findings to the Committee.  A&M's review considered potential rejection damage claims, cure costs and the rationale for contract assumptions/rejections.  Motions reviewed during the period included: the First through Fifth Omnibus Contract Assumptions, the First through Fifth Negotiated Contract Assumptions, the First and Second Negotiated Contract Rejections, and various stipulations with vendors.  Additionally, A&M reviewed Winn-Dixie's renegotiated post-petition supply agreements with various vendors in order to understand the benefits of the new agreements and the impact of the new agreements on the Debtors' business.

## H.   **Insurance Financing**

29.  A&M reviewed proposed insurance premium financings, collateral requirements, premium pricing levels, factors behind pricing increases, insurance coverage and factors behind the selection of insurance providers with Winn-Dixie's advisors and the Committee.

## I.   **Teleconference / Meetings**

30.  A&M team members participated in numerous in-person meetings and teleconferences with the Debtors, the Debtors' advisors and legal counsel, as well as Committee members and their counsel, on a variety of issues.

J.    **Closure of "Bubble" Stores**

31.  A&M reviewed and evaluated the Debtors' proposed closure of 7 "bubble" stores based on discussions with the Debtors and XRoads, a review of year-to-date and historical store financial performance and review of store locations and DMAs.  A&M developed and documented an understanding of the Debtors' rationale and of the store selection process  A&M prepared a presentation to detail its findings to the Committee.

K.    **Store / Company Financials**

32.  A&M updated its database of detailed store-by-store financials including several revenue, operating and profitability analyses.  A&M team members prepared informational memoranda for the Committee, detailing store performance results and analyzing such items as shrink, operating expenses and revenue.

L.    **Business Plan Presentation**

33.  A&M prepared a presentation summarizing the Debtors' May 2006 Business Plan and the pertinent impacts on the Committee.  A&M prepared analyses and commentary, focusing on the financial and operational aspects of the Business Plan (including: historical financial performance by period and by region, year-to-date results of management initiatives, projected financial performance, forecast capital expenditures,

working capital, and historical and future asset sales) and
presented its findings on a call with the Committee.

**M.    Plan of Reorganization**

34.    A&M performed a review of the Debtors' proposed
Plan of Reorganization, including key terms, the treatment of
various classes of unsecured claims and the Debtors' Liquidation
Analysis.  Additionally, A&M reviewed detailed listings of the
scheduled unsecured claims and discussed the claims
reconciliation process with the Debtors' advisors.
Additionally, A&M reviewed the implications of the Debtors'
propped section 382 tax election.

## VI.    ALLOWANCE OF COMPENSATION

35.    The professional services rendered by A&M,
particularly in light of A&M's specialized role as operations
and real estate advisor, have required a high degree of
professional competence and expertise to address the numerous
issues requiring evaluation and action by the Committee.  A&M
respectfully submits that the services rendered to the Committee
were performed efficiently, effectively and economically, and
that the results obtained to date have benefited not only the
members of the Committee, but also the unsecured creditors as a
whole and the Debtors' estates.

36.    The allowance of interim compensation for
services rendered and reimbursement of expenses in bankruptcy

14

cases is expressly provided for in section 331 of the Bankruptcy

Code:

> Any professional person . . . may apply to the
> court not more than once every 120 days after an
> order for relief in a case under this title, or
> more often if the court permits, for such
> compensation for services rendered . . . as is
> provided under section 330 of this title.

11 U.S.C. § 331.

     37.  With respect to the allowance of compensation,

section 328(a) of the Bankruptcy Code provides that with Court

approval:

> A committee . . . may employ or authorize the
> employment of a professional person . . . on any
> reasonable terms and conditions of employment,
> including on a retainer, on an hourly basis, or
> on a contingent fee basis, compensation for
> actual, necessary services rendered.

11 U.S.C. § 328(a).

     38.  The total time spent by A&M professionals during

the Fifth Interim Compensation Period was 981.5 hours.  As shown

by this Application and supporting exhibits, A&M's services were

rendered economically, primarily by the most experienced

members of the team, and without unnecessary duplication of

efforts.  In addition, the work involved, and thus the time

expended, was carefully assigned in consideration of the

experience and expertise required for each particular task.

## VII. **EXPENSES**

39.   A&M has incurred a total of $5,551.33 in expenses
in connection with representing the Committee during the Fifth
Interim Compensation Period.  A&M records all expenses incurred
in connection with the performance of professional services.  A
summary and a detailed listing of these expenses is annexed
hereto as Exhibit B.

40.   In connection with the reimbursement of expenses,
A&M's policy is to charge its clients in all areas of practice
for expenses, other than fixed and routine overhead expenses,
incurred in connection with representing its clients.  The
expenses charged to A&M's clients include, among other things,
telephone and telecopy toll and other charges, mail and express
mail charges, special or hand delivery charges, photocopying
charges, out-of-town travel expenses, local transportation
expenses, expenses for working meals and computerized research
costs.

41.   A&M charges the Committee for these expenses at
rates consistent with those charged to A&M's other bankruptcy
clients, which rates are equal to or less than the rates charged
by A&M's to its non-bankruptcy clients.

42.   Professionals at A&M have not incurred expenses
for luxury accommodations or deluxe meals.  The Application does
not seek reimbursement of any air travel expenses in excess of

16

coach fares, unless coach airfares were unavailable and travel could not be rescheduled.  Throughout the Fifth Interim Compensation Period, A&M has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII. <u>NOTICE</u>

43.  Notice of this Motion has been given to counsel to the Debtors, counsel to the agent for the Debtor's DIP lender, the United States Trustee, the chair of the Committee, all other parties on the Debtors' Master Service List and all other parties not otherwise listed that have requested receipt of notices in these cases.  In light of the nature of the relief requested herein, the Committee requests that such notice be deemed adequate and sufficient.

## IX.    CONCLUSION

WHEREFORE, A&M respectfully requests the Court to enter an order, (a) allowing A&M (i) interim compensation for professional services rendered as advisor to the Committee during the Fifth Interim Compensation Period in the amount of $400,000.00 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $5,551.33, for a total award of $405,551.33; (b) authorizing and directing the Debtors to pay to A&M $80,000.00, which is the amount outstanding for services rendered and expenses incurred during the Fifth Interim Compensation Period; and (c) granting such further relief as is just.


Dated: November 20, 2006




                              **ALVAREZ & MARSAL, LLC**

                              By: /s/ Andrew Hede____
                                  Andrew Hede
                                  600 Lexington Avenue
                                  Sixth Floor
                                  New York, New York 10022
                                  (212) 759-4433

                                  Operations and Real Estate
                                  Advisor to Official Committee
                                  of Unsecured Creditors of Winn-
                                  Dixie Stores, Inc., et al.

**EXHIBIT A**

## Winn-Dixie Stores, Inc., et al.

Time Reporting Summary: June 1, 2006 through September 30, 2006

| Professional | Title | 6/1/06 - 6/30/06 | 7/1/06 - 7/31/06 | 8/1/06 - 8/31/06 | 9/1/06 - 9/30/06 | Total |
|---|---|---|---|---|---|---|
| Andrew Hede | Managing Director | 94.0 | 37.0 | 31.5 | 28.5 | 191.0 |
| Darren Mills | Managing Director | - | - | - | 3.0 | 3.0 |
| Dirk Aulabaugh | Senior Director | 91.2 | 2.8 | 39.2 | 44.3 | 177.5 |
| Martin Williams | Director | - | - | - | 10.0 | 10.0 |
| Robert McEvoy | Director | 176.0 | - | - | - | 176.0 |
| Matthew Gavejian | Senior Associate | 223.5 | 44.5 | 67.5 | 76.0 | 411.5 |
| Chris Daniello | Analyst | 12.5 | - | - | - | 12.5 |
| **Total Hours** | | **597.2** | **84.3** | **138.2** | **161.8** | **981.5** |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Andrew Hede | 6/1/06 | 2.5 | Prepare for Committee Meeting |
| Andrew Hede | 6/1/06 | 2.0 | Participated in Committee Meeting |
| Andrew Hede | 6/1/06 | 3.0 | Participated in Committee/Winn-Dixie Meeting |
| Andrew Hede | 6/2/06 | 3.0 | Business plan review and presentation |
| Andrew Hede | 6/5/06 | 4.0 | Business plan review and presentation |
| Andrew Hede | 6/7/06 | 2.5 | Business plan review and presentation |
| Andrew Hede | 6/8/06 | 1.0 | Committee Call |
| Andrew Hede | 6/8/06 | 4.0 | Business plan review and presentation |
| Andrew Hede | 6/9/06 | 3.0 | Business plan presentation |
| Andrew Hede | 6/12/06 | 3.0 | Business plan presentation |
| Andrew Hede | 6/13/06 | 6.0 | Business plan review and presentation |
| Andrew Hede | 6/14/06 | 1.0 | Committee Call |
| Andrew Hede | 6/14/06 | 1.0 | Call with Milbank and HLHZ regarding plan issues |
| Andrew Hede | 6/14/06 | 6.0 | Prepared executive summary section of presentation, after review of latest draft |
| Andrew Hede | 6/15/06 | 2.0 | Business plan presentation |
| Andrew Hede | 6/15/06 | 2.0 | Call with Milbank and HLHZ regarding plan issues |
| Andrew Hede | 6/15/06 | 3.0 | Working group review, spelling check etc. of our evaluation of the May business plan with McEvoy, Gavejian and Daniello |
| Andrew Hede | 6/16/06 | 1.5 | Review of supply agreement assumption memo |
| Andrew Hede | 6/16/06 | 2.5 | Business plan presentation |
| Andrew Hede | 6/19/06 | 1.0 | Review Lynch Term Sheet |
| Andrew Hede | 6/19/06 | 1.0 | Review POR Issues List |
| Andrew Hede | 6/19/06 | 2.5 | Meeting: Skadden, Blackstone, Dreier; Watson Wyatt, Milbank, HLHZ regarding Board of Directors selection |
| Andrew Hede | 6/19/06 | 2.5 | Meeting with Milbank and HLHZ regarding Committee's view of Board of Directors selection |
| Andrew Hede | 6/20/06 | 2.5 | Business Plan Presentation |
| Andrew Hede | 6/21/06 | 0.5 | Call with Committee professionals only |
| Andrew Hede | 6/21/06 | 1.5 | Call with the Committee |
| Andrew Hede | 6/21/06 | 1.5 | Meeting: Skadden, Blackstone, Milbank and HLHZ |
| Andrew Hede | 6/22/06 | 1.5 | Call with Spencer Stuart and Peter Lynch to discuss Board of Directors selections |
| Andrew Hede | 6/22/06 | 0.5 | Phone call with J.Scherer (HLHZ) to discuss A&M's business plan presentation |
| Andrew Hede | 6/22/06 | 3.0 | Business Plan Presentation |
| Andrew Hede | 6/23/06 | 4.5 | Business plan presentation |
| Andrew Hede | 6/23/06 | 1.0 | Call with Milbank and HLHZ regarding the Debtors May 2006 business plan |
| Andrew Hede | 6/26/06 | 2.5 | Business plan presentation |
| Andrew Hede | 6/26/06 | 1.5 | Call with Milbank and HLHZ regarding the Debtors Plan of Reorganization |
| Andrew Hede | 6/27/06 | 1.0 | Phone call with M.Barr (Milbank) |
| Andrew Hede | 6/27/06 | 0.5 | Phone call with M Gavejian (Liberty Mutual issue) |
| Andrew Hede | 6/27/06 | 1.5 | Review 2007 Bonus Plan |
| Andrew Hede | 6/28/06 | 5.0 | Committee Call; Business plan review and presentation |
| Andrew Hede | 6/29/06 | 4.0 | Business plan presentation |
| Andrew Hede | 6/30/06 | 1.0 | Review POR |
| Andrew Hede | 6/30/06 | 0.5 | Call with Milbank to discuss claims process |
| Andrew Hede | 7/5/06 | 1.0 | Review Spencer Stuart board candidate materials |
| Andrew Hede | 7/5/06 | 3.0 | Meeting with S.Schirmang, P.Lynch, Milbank, HLHZ (Board Candidates) |
| Andrew Hede | 7/6/06 | 2.0 | Review Annual Incentive Plan Targets |
| Andrew Hede | 7/6/06 | 1.0 | Review Liberty Mutual bonding facility documents |
| Andrew Hede | 7/6/06 | 0.5 | Call with Milbank regarding Liberty Mutual |
| Andrew Hede | 7/7/06 | 1.0 | Call with Milbank and HLHZ (Plan Issues) |
| Andrew Hede | 7/7/06 | 1.0 | Call with HLHZ, Milbank, Skadden, Blackstone, Smith Hulsey and L.Appel (Plan Issues) |
| Andrew Hede | 7/7/06 | 0.5 | Review Liberty Mutual bonding facility documents |
| Andrew Hede | 7/10/06 | 1.0 | Review outstanding POR issues |
| Andrew Hede | 7/11/06 | 0.5 | Review revised Liberty Mutual bonding facility documents |
| Andrew Hede | 7/12/06 | 1.5 | Review business plan presentation and prepare for Committee Call |
| Andrew Hede | 7/13/06 | 3.0 | Prepare for committee call (business plan presentation) |
| Andrew Hede | 7/13/06 | 2.0 | Committee Call |
| Andrew Hede | 7/14/06 | 0.5 | Review reclamation settlement / trade agreements to be approved |
| Andrew Hede | 7/17/06 | 1.0 | Review board candidate materials |
| Andrew Hede | 7/19/06 | 1.5 | Review fee application |
| Andrew Hede | 7/20/06 | 1.0 | Committee Call |

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Andrew Hede | 7/20/06 | 0.5 | Review fee application |
| Andrew Hede | 7/24/06 | 0.5 | Review board candidate materials |
| Andrew Hede | 7/25/06 | 1.0 | Board candidate update call |
| Andrew Hede | 7/27/06 | 1.0 | Committee Call |
| Andrew Hede | 7/27/06 | 2.0 | Review of 7 stores to be closed |
| Andrew Hede | 7/28/06 | 8.0 | Review board candidate bios; Board candidate interviews |
| Andrew Hede | 7/31/06 | 2.0 | Review of board candidate materials |
| Andrew Hede | 8/1/06 | 1.0 | Review board candidate bios |
| Andrew Hede | 8/1/06 | 3.0 | Participated in Board candidate interviews |
| Andrew Hede | 8/1/06 | 1.0 | Committee Call |
| Andrew Hede | 8/2/06 | 2.0 | Review board candidate materials |
| Andrew Hede | 8/2/06 | 1.0 | Call with XRoads, Blackstone, Skadden and Milbank regarding Claims |
| Andrew Hede | 8/4/06 | 3.0 | Review of claims run and segregation |
| Andrew Hede | 8/7/06 | 2.0 | Review board candidate bios |
| Andrew Hede | 8/7/06 | 5.5 | Board candidate interviews |
| Andrew Hede | 8/8/06 | 1.0 | Call with Skadden, XRoads and Milbank regarding Claims |
| Andrew Hede | 8/9/06 | 2.0 | Review claims reports |
| Andrew Hede | 8/10/06 | 1.0 | Committee Call |
| Andrew Hede | 8/11/06 | 0.5 | Review contract assumption memo |
| Andrew Hede | 8/15/06 | 0.5 | Review board candidate bios |
| Andrew Hede | 8/15/06 | 1.5 | Board candidate interviews |
| Andrew Hede | 8/18/06 | 2.0 | Review sales and margin trends |
| Andrew Hede | 8/21/06 | 0.5 | Review board candidate bios |
| Andrew Hede | 8/21/06 | 2.0 | Board candidate interviews |
| Andrew Hede | 8/24/06 | 1.0 | Prepare for Committee Call; Committee Call |
| Andrew Hede | 8/30/06 | 0.5 | Review of Third Omnibus Assumption Memo |
| Andrew Hede | 8/30/06 | 0.5 | Meeting with M.Gavejian |
| Andrew Hede | 9/1/06 | 1.0 | Review of IBM assumption memo |
| Andrew Hede | 9/6/06 | 2.0 | Board Candidate Interviews |
| Andrew Hede | 9/7/06 | 6.0 | Board Candidate Interviews |
| Andrew Hede | 9/7/06 | 0.5 | Phone call with J.Daum (Spencer Stuart) |
| Andrew Hede | 9/7/06 | 0.5 | Phone call with M.Comerford (Milbank) |
| Andrew Hede | 9/8/06 | 0.5 | Review contract rejection memo |
| Andrew Hede | 9/11/06 | 1.0 | Review of board candidate materials |
| Andrew Hede | 9/11/06 | 1.0 | Formulate board recommendation for committee |
| Andrew Hede | 9/12/06 | 1.0 | Conference call with Board Nominating Sub-Committee |
| Andrew Hede | 9/12/06 | 0.5 | Conference Call Board Nominating Sub-Committee, P Lynch, Spencer Stuart, Milbank |
| Andrew Hede | 9/13/06 | 2.0 | Prepare for Committee Call including presentation of credentials of and recommendations regarding Board candidates |
| Andrew Hede | 9/14/06 | 1.0 | Committee Call |
| Andrew Hede | 9/14/06 | 0.5 | Phone call with M.Barr (Milbank) |
| Andrew Hede | 9/14/06 | 0.5 | Phone call with T.Snyder (Spencer Stuart) |
| Andrew Hede | 9/19/06 | 2.0 | Board Selection meetings |
| Andrew Hede | 9/22/06 | 1.5 | Review of Section 382 tax issue |
| Andrew Hede | 9/22/06 | 0.5 | Phone call with M.Comerford (Milbank) |
| Andrew Hede | 9/26/06 | 1.0 | Review contract assumption memos |
| Andrew Hede | 9/27/06 | 1.0 | Review contract assumption memos |
| Andrew Hede | 9/28/06 | 2.0 | Review of remaining contract rejection / assumption memos (four in total) |
| Andrew Hede | 9/28/06 | 1.5 | Committee Call |
| Andrew Hede | 9/29/06 | 0.5 | Review of Cardtronics Contract Assumption Memo |
| Andrew Hede | 9/29/06 | 0.5 | Phone call with M.Comerford (Milbank) |
| **Total** | | **191.0** | |
| | | | |
| Darren Mills | 9/18/06 | 1.5 | Review of Deloitte & Touche Section 382(l)(5); 382(l)(6) analysis |
| Darren Mills | 9/19/06 | 1.0 | Review of Deloitte & Touche Section 382(l)(5); 382(l)(6) analysis |
| Darren Mills | 9/19/06 | 0.5 | Call with Deloitte & Touche to discuss tax analysis |
| **Total** | | **3.0** | |

EXHIBIT A

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Dirk Aulabaugh | 6/1/06 | 2.2 | Conference call with Committee |
| Dirk Aulabaugh | 6/1/06 | 1.1 | Dialed in to meeting with WD management team |
| Dirk Aulabaugh | 6/1/06 | 1.1 | Drafting memo on asset sales |
| Dirk Aulabaugh | 6/1/06 | 1.4 | Read and review asset purchase agreement relating to Miami outparcels |
| Dirk Aulabaugh | 6/1/06 | 0.3 | Calls with XRoads |
| Dirk Aulabaugh | 6/2/06 | 2.2 | Researching asset sales market data for validity |
| Dirk Aulabaugh | 6/5/06 | 4.3 | Revising asset sales memo |
| Dirk Aulabaugh | 6/5/06 | 2.2 | Calls with Mike Comerford of Milbank |
| Dirk Aulabaugh | 6/6/06 | 0.4 | Calls with Mike Comerford of Milbank |
| Dirk Aulabaugh | 6/6/06 | 0.3 | Call with Sheon Karol of XRoads |
| Dirk Aulabaugh | 6/6/06 | 0.4 | Call with Bryan Gaston of XRoads regarding Deerwood |
| Dirk Aulabaugh | 6/6/06 | 3.1 | Writing memo on Deerwood |
| Dirk Aulabaugh | 6/6/06 | 2.2 | Reading and discussing Store 1419 deal with Milbank |
| Dirk Aulabaugh | 6/6/06 | 1.7 | Revising asset sale memo per call with Sheon Karol of XRoads |
| Dirk Aulabaugh | 6/7/06 | 0.4 | Conference call with Sheon Karol about sales |
| Dirk Aulabaugh | 6/7/06 | 0.8 | Discussion with B.McGuire about sales and Deerwood motion |
| Dirk Aulabaugh | 6/7/06 | 2.3 | Revise asset sale memo per Biff's comments and Milbank's comments |
| Dirk Aulabaugh | 6/7/06 | 1.4 | Review and respond to emails |
| Dirk Aulabaugh | 6/8/06 | 2.4 | Revise asset sales memo |
| Dirk Aulabaugh | 6/8/06 | 0.6 | Respond to emails relating to asset memo and Deerwood memo |
| Dirk Aulabaugh | 6/8/06 | 0.6 | Conference call with Committee |
| Dirk Aulabaugh | 6/8/06 | 1.7 | Conversations with Milbank; research Deustche Bank |
| Dirk Aulabaugh | 6/9/06 | 0.5 | Discussions with M.Gavejian about asset sales |
| Dirk Aulabaugh | 6/9/06 | 1.9 | Work on finalizing Deerwood and Asset sale memos |
| Dirk Aulabaugh | 6/12/06 | 2.4 | Following up with XRoads and Milbank about upcoming auctions |
| Dirk Aulabaugh | 6/12/06 | 0.8 | Finalize and send out Asset sale memo |
| Dirk Aulabaugh | 6/13/06 | 3.2 | Review bids on various auctions including Miami parcels and Stockbridge asset |
| Dirk Aulabaugh | 6/13/06 | 0.6 | Review and respond to emails relating to pending auctions |
| Dirk Aulabaugh | 6/14/06 | 1.3 | Auction of Miami parcel and Stockbridge |
| Dirk Aulabaugh | 6/14/06 | 1.1 | Reviewing contracts for accuracy |
| Dirk Aulabaugh | 6/14/06 | 0.2 | Call with Sheon Karol of XRoads |
| Dirk Aulabaugh | 6/15/06 | 0.4 | Conversation with Milbank relating to potential asset sale |
| Dirk Aulabaugh | 6/15/06 | 3.2 | Review and summary of store and asset sale memos written to date and preparation of list of current outstanding rejections and sales |
| Dirk Aulabaugh | 6/16/06 | 1.2 | Follow up relating to auctions |
| Dirk Aulabaugh | 6/16/06 | 1.0 | Review ad hoc deal |
| Dirk Aulabaugh | 6/19/06 | 2.2 | Reviewing Store 1419 and 1816 motions |
| Dirk Aulabaugh | 6/19/06 | 0.8 | Communications with XRoads and Milbank relating to SC asset |
| Dirk Aulabaugh | 6/19/06 | 2.4 | Analysis on Store 1816 rejection claim |
| Dirk Aulabaugh | 6/20/06 | 0.2 | Call with Bryan Gaston at XRoads |
| Dirk Aulabaugh | 6/20/06 | 0.6 | Research on Store 1816 and 1419 deals |
| Dirk Aulabaugh | 6/21/06 | 3.3 | Drafting Store 1419 memo on lease termination |
| Dirk Aulabaugh | 6/21/06 | 1.8 | Initial draft of Store 1816 memo |
| Dirk Aulabaugh | 6/22/06 | 1.4 | Read/take notes on Store 1361 motion |
| Dirk Aulabaugh | 6/22/06 | 2.6 | Research Store 1361 motion |
| Dirk Aulabaugh | 6/22/06 | 0.6 | Speak with XRoads about Store 1361 deal |
| Dirk Aulabaugh | 6/23/06 | 1.6 | Read/take notes on motion on Store 2435, 1327 and 1371 |
| Dirk Aulabaugh | 6/23/06 | 1.3 | Read/take notes on assigned store motions |
| Dirk Aulabaugh | 6/23/06 | 2.3 | Research rejection claim status due to unique nature |
| Dirk Aulabaugh | 6/23/06 | 0.7 | Conference call with XRoads to discuss above motions |
| Dirk Aulabaugh | 6/26/06 | 0.7 | Follow up conference call with XRoads regarding Stores 2435,1327, 1371 and 1361 |
| Dirk Aulabaugh | 6/26/06 | 3.6 | Initial drafting of memo regarding Stores 2435,1327, 1371 and 1361 |
| Dirk Aulabaugh | 6/26/06 | 0.8 | Responding to Milbank questions via email |
| Dirk Aulabaugh | 6/26/06 | 1.3 | Reviewed Winn-Dixie's proposed Plan of Reorganization |
| Dirk Aulabaugh | 6/27/06 | 2.2 | Drafting memo on Stores 2435, 1327, 1361 and 1371 |
| Dirk Aulabaugh | 6/27/06 | 0.4 | Discuss motions with Milbank |
| Dirk Aulabaugh | 6/27/06 | 2.0 | Work on assigned stores memo |
| Dirk Aulabaugh | 6/28/06 | 2.6 | Finish up assigned store memo |
| Dirk Aulabaugh | 6/28/06 | 2.7 | Clean up memo on Stores 2435, 1327 1361 and 1371 |
| Dirk Aulabaugh | 6/28/06 | 0.6 | Discussion with XRoads about 502b claims |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Dirk Aulabaugh | 6/29/06 | 1.6 | Review plan, press release and Watson report |
| Dirk Aulabaugh | 7/13/06 | 1.2 | Conference call with the Committee |
| Dirk Aulabaugh | 7/25/06 | 0.6 | Review structure of Montgomery warehouse sale |
| Dirk Aulabaugh | 7/25/06 | 0.4 | Correspondence with XRoads regarding Montgomery warehouse sale |
| Dirk Aulabaugh | 7/25/06 | 0.6 | Research Merrill site for sale data and information |
| Dirk Aulabaugh | 8/1/06 | 1.6 | Draft Montgomery warehouse sale memo |
| Dirk Aulabaugh | 8/2/06 | 1.9 | Review multiple store assumption motions and begin researching/discussions with Company |
| Dirk Aulabaugh | 8/2/06 | 1.6 | Review and begin research on Second Omnibus Motion to assume and fix cure amounts on certain property leases |
| Dirk Aulabaugh | 8/3/06 | 2.2 | Review Harahan sale motion |
| Dirk Aulabaugh | 8/3/06 | 0.9 | Review Montgomery asset purchase agreement |
| Dirk Aulabaugh | 8/3/06 | 1.8 | Begin drafting memo on store assumptions |
| Dirk Aulabaugh | 8/4/06 | 1.2 | Review Harahan asset purchase agreement |
| Dirk Aulabaugh | 8/4/06 | 0.3 | Finalize Montgomery sale motion for Milbank review |
| Dirk Aulabaugh | 8/4/06 | 0.7 | Conference call with XRoads regarding Harahan sale |
| Dirk Aulabaugh | 8/4/06 | 1.1 | Research detail on Harahan sale (appraisal, etc.) |
| Dirk Aulabaugh | 8/6/06 | 1.3 | Review XRoads cure amounts analysis |
| Dirk Aulabaugh | 8/7/06 | 1.4 | Researching and analyzing cure amounts for omnibus memo; discussions with XRoads regarding analysis |
| Dirk Aulabaugh | 8/7/06 | 0.7 | Discussions with Milbank regarding Omnibus and Sale memos |
| Dirk Aulabaugh | 8/7/06 | 2.1 | Finalize First Omnibus Motion for lease assumption memo |
| Dirk Aulabaugh | 8/8/06 | 2.8 | Draft Harahan sale memo |
| Dirk Aulabaugh | 8/8/06 | 0.4 | Discussion with XRoads regarding Harahan sale |
| Dirk Aulabaugh | 8/9/06 | 0.8 | Finalize Harahan memo |
| Dirk Aulabaugh | 8/9/06 | 0.7 | Communication with Milbank regarding Harahan memo |
| Dirk Aulabaugh | 8/10/06 | 2.3 | Research and resolve the reasoning behind the removal of four stores from Second Omnibus Motion |
| Dirk Aulabaugh | 8/10/06 | 1.0 | Participated in conference call with the Committee |
| Dirk Aulabaugh | 8/11/06 | 0.4 | Communication with Milbank relating to Harahan overbid and breakup fee |
| Dirk Aulabaugh | 8/17/06 | 2.9 | Review two motions relating to Stores 1059 and 2344 |
| Dirk Aulabaugh | 8/17/06 | 0.2 | Drafted and distributed questions regarding store motions to XRoads |
| Dirk Aulabaugh | 8/17/06 | 0.6 | Review Milbank comments on the order relating to Store 2344 |
| Dirk Aulabaugh | 8/18/06 | 0.4 | Discussions with XRoads relating to Stores 1059 and 2344 |
| Dirk Aulabaugh | 8/18/06 | 1.3 | Analysis of Stores 1059 and 2344 502b claims, etc. |
| Dirk Aulabaugh | 8/18/06 | 1.1 | Initial draft of Stores 1059 and 2344 memos |
| Dirk Aulabaugh | 8/23/06 | 0.7 | Review Store 1409 motion |
| Dirk Aulabaugh | 8/23/06 | 0.6 | Discussed work product and memos related to Stores 1059, 2344 and 1409 with Milbank |
| Dirk Aulabaugh | 8/23/06 | 3.3 | Revise Stores 1059 and 2344 memos |
| Dirk Aulabaugh | 8/28/06 | 0.3 | Communication with XRoads about store auction |
| Dirk Aulabaugh | 8/29/06 | 0.4 | Review auction results |
| Dirk Aulabaugh | 8/30/06 | 0.2 | Communication with Milbank regarding upcoming memos |
| Dirk Aulabaugh | 9/5/06 | 0.4 | Discussion with Milbank about upcoming motions and Store 1409 revised motion |
| Dirk Aulabaugh | 9/5/06 | 1.7 | Research Leesburg outparcel sale |
| Dirk Aulabaugh | 9/5/06 | 1.6 | Draft Leesburg outparcel memo |
| Dirk Aulabaugh | 9/5/06 | 0.8 | Research on Second Omnibus motion memo |
| Dirk Aulabaugh | 9/5/06 | 0.4 | Discuss sale of Leesburg outparcel with XRoads |
| Dirk Aulabaugh | 9/5/06 | 0.6 | Research Store 1409 rejection vs. lease termination issue |
| Dirk Aulabaugh | 9/6/06 | 0.8 | Research Edgewood outparcel sale |
| Dirk Aulabaugh | 9/6/06 | 1.3 | Draft Edgewood memo |
| Dirk Aulabaugh | 9/6/06 | 1.2 | Discuss Edgewood outparcel sale with XRoads |
| Dirk Aulabaugh | 9/7/06 | 2.6 | Draft memo detailing Second Omnibus motion |
| Dirk Aulabaugh | 9/7/06 | 1.0 | Committee conference call |
| Dirk Aulabaugh | 9/8/06 | 1.2 | Finalize Second Omnibus motion memo |
| Dirk Aulabaugh | 9/8/06 | 1.4 | Revised outparcel sales memos |
| Dirk Aulabaugh | 9/11/06 | 2.4 | Quality check, review and finalize outparcel sales memo |
| Dirk Aulabaugh | 9/11/06 | 0.4 | Discussion with Milbank |
| Dirk Aulabaugh | 9/12/06 | 0.4 | Review latest lease rejection motion |
| Dirk Aulabaugh | 9/12/06 | 2.6 | Research 502(b)6 claims on Stores 1403, 1434, 1437 and 1417 |
| Dirk Aulabaugh | 9/13/06 | 2.8 | Draft memo regarding rejection motion for Stores 1403, 1434, 1437 and 1417 |
| Dirk Aulabaugh | 9/14/06 | 0.4 | Revise on rejection motion memo (stores 1403, 1434, 1437 and 1417) for distribution |

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Dirk Aulabaugh | 9/14/06 | 1.0 | Conference call with the Committee |
| Dirk Aulabaugh | 9/14/06 | 0.4 | Research Store 1583 lease issues |
| Dirk Aulabaugh | 9/15/06 | 1.3 | Quality check, review and finalize Rejection memo for distribution |
| Dirk Aulabaugh | 9/19/06 | 1.3 | Research on Montgomery sale |
| Dirk Aulabaugh | 9/19/06 | 2.2 | Draft Montgomery Sale memo |
| Dirk Aulabaugh | 9/20/06 | 0.4 | Finalize and review of Montgomery sale memo for distribution |
| Dirk Aulabaugh | 9/20/06 | 2.6 | Research retroactive lease assignment and termination agreements |
| Dirk Aulabaugh | 9/21/06 | 3.2 | Draft memo regarding retroactive lease assignment |
| Dirk Aulabaugh | 9/21/06 | 1.1 | Discussion with XRoads regarding upcoming motion and retroactive lease assignments |
| Dirk Aulabaugh | 9/22/06 | 0.8 | Review information received from XRoads relative to retroactive lease assignments |
| Dirk Aulabaugh | 9/22/06 | 1.6 | Create retroactive table illustrating agreements |
| Dirk Aulabaugh | 9/22/06 | 1.3 | Finish retroactive assignment draft memo |
| Dirk Aulabaugh | 9/25/06 | 1.1 | Discussion with XRoads relating to particulars on retroactive lease motion |
| Dirk Aulabaugh | 9/25/06 | 0.8 | Call with Milbank regarding retroactive lease memo |
| Dirk Aulabaugh | 9/26/06 | 1.2 | Research Store 893 rejection agreement |
| **Total** | | **177.5** | |
| | | | |
| Martin Williams | 9/18/06 | 5.0 | Review of Deloitte & Touche Section 382(l)(5); 382(l)(6) analysis |
| Martin Williams | 9/19/06 | 3.5 | Review of Deloitte & Touche Section 382(l)(5); 382(l)(6) analysis |
| Martin Williams | 9/19/06 | 0.5 | Call with Deloitte & Touche to discuss tax analysis |
| Martin Williams | 9/27/06 | 1.0 | Preparation for potential call with creditors committee |
| **Total** | | **10.0** | |
| | | | |
| Robert McEvoy | 6/1/06 | 3.0 | Review of new customer survey data and other information provided by company management. |
| Robert McEvoy | 6/1/06 | 2.0 | Review of WD competitor (Publix, Wal-Mart, Albertson's others) data. |
| Robert McEvoy | 6/1/06 | 1.0 | Internal discussions on project status. |
| Robert McEvoy | 6/1/06 | 6.0 | Prepared for and Participated in WD management presentation, and Unsecured Creditors' Committee meeting |
| Robert McEvoy | 6/2/06 | 8.0 | Worked to advance our evaluation of WD's May business plan.  Review of company financial statements and other data provided by management.  Identify additional/pending data requirements for company. |
| Robert McEvoy | 6/2/06 | 4.0 | Review of WD competitor (Publix, Wal-Mart, Albertson's others) data. |
| Robert McEvoy | 6/3/06 | 8.0 | Worked to advance our evaluation of WD's May business plan.  Review of company financial statements and other data provided by management.  Identify additional/pending data requirements of company.  Prepare full draft for Hede to review on Monday. |
| Robert McEvoy | 6/3/06 | 1.5 | Review of notes from management presentation on June 1st. |
| Robert McEvoy | 6/3/06 | 1.5 | Research available market share data for the supermarket sector |
| Robert McEvoy | 6/4/06 | 9.0 | Worked to advance our evaluation of WD's May business plan. Prepared outline of presentation and reviewed and commented on latest draft |
| Robert McEvoy | 6/4/06 | 4.0 | Review competitor data (Publix, Delhaize, Safeway others) compiled by Daniello |
| Robert McEvoy | 6/5/06 | 1.5 | Review of latest due diligence information received |
| Robert McEvoy | 6/5/06 | 5.5 | Provided revised commentary fro business plan presentation |
| Robert McEvoy | 6/5/06 | 3.0 | Review competitor data (Publix, Delhaize, Safeway others) compiled by Daniello.  Review analyst reports on supermarket industry. |
| Robert McEvoy | 6/5/06 | 2.0 | Review available supermarket market-share information. |
| Robert McEvoy | 6/6/06 | 8.0 | Prepared commentary on for historical results and forecast future financial performance based on the Business Plan; drafted commentary on regional differences in performance and quarterly performance |
| Robert McEvoy | 6/6/06 | 3.0 | Review analyst reports on supermarket industry |
| Robert McEvoy | 6/6/06 | 1.0 | Review available supermarket market-share information. |
| Robert McEvoy | 6/7/06 | 7.0 | Prepared assumptions for and commentary on sensitivities to the Company's business plan |
| Robert McEvoy | 6/7/06 | 3.0 | Revised commentary on capital expenditures and working capital sections of presentation |
| Robert McEvoy | 6/7/06 | 1.0 | Review available supermarket market-share information. |
| Robert McEvoy | 6/8/06 | 1.0 | Conference call with the Committee |
| Robert McEvoy | 6/8/06 | 4.0 | Prepared draft timeline of key events in recent history for Winn-Dixie |
| Robert McEvoy | 6/8/06 | 3.0 | Drafted commentary relative to steady-state operations of the Company |
| Robert McEvoy | 6/8/06 | 1.0 | Review available supermarket market-share information. |

EXHIBIT A

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Robert McEvoy | 6/8/06 | 2.0 | Review competitor data (Publix, Delhaize, Safeway others) compiled by Daniello.  Review analyst reports on supermarket industry. |
| Robert McEvoy | 6/9/06 | 9.0 | Reviewed latest draft of presentation for organization and structure, reviewed presentation made by the Debtors for accuracy of information, provided comments to M.Gavejian |
| Robert McEvoy | 6/9/06 | 1.0 | Review available supermarket market-share information.  Work with Daniello to purchase market share data from Tradescope. |
| Robert McEvoy | 6/9/06 | 2.0 | Review analyst and industry reports on supermarket sector. |
| Robert McEvoy | 6/10/06 | 4.0 | Review competitor and industry information.  Communications with FedEx to track shipment of market share data. |
| Robert McEvoy | 6/11/06 | 4.0 | Prepared and outlined analyses of competitive situation regarding Winn-Dixie |
| Robert McEvoy | 6/11/06 | 5.5 | Provided outline of commentary on competitive situation and reviewed Winn-Dixie's competitive rebuttal program |
| Robert McEvoy | 6/11/06 | 2.5 | Review information on consumer food spending in the New Orleans area (government data, donor data etc.) |
| Robert McEvoy | 6/12/06 | 1.5 | Prepared revised commentary for the presentation and provided comments to M.Gavejian |
| Robert McEvoy | 6/12/06 | 5.0 | Review of latest draft of presentation, including updated analyses and recently updated commentary |
| Robert McEvoy | 6/12/06 | 2.5 | Review of working capital analysis and considerations given the assumptions |
| Robert McEvoy | 6/12/06 | 3.0 | Review Tradescope market share data compiled by Daniello. |
| Robert McEvoy | 6/12/06 | 2.0 | Review information on consumer food spending in the New Orleans area (government data, donor data etc.) |
| Robert McEvoy | 6/13/06 | 3.0 | Review of New Orleans market share data |
| Robert McEvoy | 6/13/06 | 5.0 | Review of DMAs with significantly negative market share changes in 2005; analysis of causes and steps to be taken to remedy loss |
| Robert McEvoy | 6/13/06 | 1.0 | Review information on consumer food spending in the New Orleans area (government data, donor data etc.) |
| Robert McEvoy | 6/13/06 | 4.0 | Review Tradescope market share data compiled by C.Daniello |
| Robert McEvoy | 6/14/06 | 6.5 | Individual quality check and review of presentation, principally to ensure that message points are consistent, but also text and commentary |
| Robert McEvoy | 6/14/06 | 2.5 | Review information on consumer food spending in the New Orleans area (government data, donor data etc.) |
| Robert McEvoy | 6/14/06 | 4.0 | Review Tradescope market share data compiled by C.Daniello |
| Robert McEvoy | 6/14/06 | 0.5 | Review supermarket industry and analyst reports. |
| Robert McEvoy | 6/15/06 | 3.0 | Working group review, spelling check etc. of our evaluation of the May business plan with Hede, Gavejian and Daniello |
| Robert McEvoy | 6/19/06 | 5.5 | Review and comment on evaluation of company business plan.  Review product category and regional performance data.  Review of presentation formatting, grammar etc.  Organize Winn-Dixie files. |
| Robert McEvoy | 6/20/06 | 1.0 | Review and comment on evaluation of company business plan.  Review product category and regional performance data.  Review of presentation formatting, grammar etc.  Organize Winn-Dixie files. |
| Robert McEvoy | 6/21/06 | 4.0 | Additional review and final comments on latest draft of business plan including verbiage changes and requests for support of data |
| **Total** | | **176.0** | |
| Matthew Gavejian | 6/1/06 | 1.0 | Prepared and reviewed capital expenditures forecast in the May 2006 Business Plan, scratched out further capital expenditures analyses |
| Matthew Gavejian | 6/1/06 | 2.0 | Participated in Committee-only meeting |
| Matthew Gavejian | 6/1/06 | 3.0 | Participated in meeting between the Committee and the Debtors for the presentation of the business plan |
| Matthew Gavejian | 6/1/06 | 6.0 | Began outlining advanced draft of presentation including reordering of slides and organization of thoughts and story-lines |
| Matthew Gavejian | 6/2/06 | 1.0 | Reviewed and modified analysis of sales per square foot |
| Matthew Gavejian | 6/2/06 | 1.0 | Distributed regional performance questions and requests for basket size and transaction count data to XRoads |
| Matthew Gavejian | 6/2/06 | 1.5 | Review data from XRoads relative to basket size and transaction count |
| Matthew Gavejian | 6/2/06 | 1.5 | Reviewed and modified analysis of complaints vs. praise |
| Matthew Gavejian | 6/2/06 | 1.5 | Reviewed and modified analysis of total complaints and praise |
| Matthew Gavejian | 6/2/06 | 1.0 | Summarized additional data requests for Blackstone |

EXHIBIT A

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 6/2/06 | 4.5 | Modified presentation slide and added/revised commentary to slides based on analyses completed to date and information from XRoads/Blackstone |
| Matthew Gavejian | 6/3/06 | 1.5 | Prepared an analysis of Operation Jump Start, including pilot stores and stores not yet certified |
| Matthew Gavejian | 6/3/06 | 1.5 | Prepared an analysis of shrink margin and the impact changes in margin will have on EBITDA |
| Matthew Gavejian | 6/3/06 | 2.0 | Prepared charts documenting historical weekly sales by category/department |
| Matthew Gavejian | 6/3/06 | 2.0 | Prepared chart and analysis of Winn-Dixie's historical "basket size" |
| Matthew Gavejian | 6/3/06 | 2.0 | Prepared chart and analysis of Winn-Dixie's historical transaction count |
| Matthew Gavejian | 6/3/06 | 2.0 | Reviewed and modified analysis and chart of capital expenditures for remodeled stores |
| Matthew Gavejian | 6/4/06 | 2.0 | Prepared an analysis of ID sales trends and stratified the stores based on ranges of growth |
| Matthew Gavejian | 6/4/06 | 1.5 | Prepared an analysis of select New Orleans DMA stores including sales, shrink, margin and EBITDA |
| Matthew Gavejian | 6/4/06 | 1.0 | Prepared a summary "dashboard" of key financial performance metrics for Winn-Dixie's May 2006 business plan |
| Matthew Gavejian | 6/4/06 | 1.5 | Prepared a chart summarizing the experience and departments of Winn-Dixie's management team |
| Matthew Gavejian | 6/4/06 | 1.5 | Prepared a chart summarizing the various management initiatives to be implemented |
| Matthew Gavejian | 6/4/06 | 1.5 | Prepared an analysis of gross margin (before and after shrink) and the impact of changes on future performance |
| Matthew Gavejian | 6/4/06 | 3.0 | Prepared presentation slides (including commentary) based on various analyses |
| Matthew Gavejian | 6/5/06 | 3.5 | Input of data for store P&L's through Period 11 and revision of analyses based on data |
| Matthew Gavejian | 6/5/06 | 2.5 | Input of data for category sales and shrink through Week 47 and revision of analyses base don new data |
| Matthew Gavejian | 6/5/06 | 1.5 | Review of new information received from Blackstone relative to due diligence requests |
| Matthew Gavejian | 6/5/06 | 2.0 | Revised commentary in presentation after review of new information |
| Matthew Gavejian | 6/5/06 | 1.0 | Discussed week 47 reporting data with M.Dussinger (XRoads) |
| Matthew Gavejian | 6/5/06 | 3.5 | Revised presentation analyses based on new data and information received |
| Matthew Gavejian | 6/6/06 | 1.5 | Work with presentation to the Committee |
| Matthew Gavejian | 6/6/06 | 2.0 | Reviewed and input R.McEvoy's historical results commentary into presentation |
| Matthew Gavejian | 6/6/06 | 2.0 | Reviewed and input R.McEvoy's forecast financial performance commentary into presentation |
| Matthew Gavejian | 6/6/06 | 9.0 | Revised and formatted analyses and added to business plan presentation, revised commentary as necessary |
| Matthew Gavejian | 6/7/06 | 1.0 | Review and distribution of sub con reports to A.Hede |
| Matthew Gavejian | 6/7/06 | 1.0 | Review of information received from XRoads |
| Matthew Gavejian | 6/7/06 | 1.5 | Review of proposed format of sensitivity analyses |
| Matthew Gavejian | 6/7/06 | 5.5 | Preparation of sensitivity analysis based on various scenarios |
| Matthew Gavejian | 6/7/06 | 1.0 | Input working capital slide and commentary from R.McEvoy |
| Matthew Gavejian | 6/7/06 | 3.5 | Revised and formatted analyses and added to business plan presentation, revised commentary as necessary |
| Matthew Gavejian | 6/8/06 | 2.5 | Review summary analysis of P.Lynch's compensation requests. |
| Matthew Gavejian | 6/8/06 | 1.0 | Research landlords for certain properties |
| Matthew Gavejian | 6/8/06 | 2.5 | Modified draft of timeline of key events for Winn-Dixie |
| Matthew Gavejian | 6/8/06 | 3.0 | Review the settlement agreement and prepared a memo to the Committee detailing the Debtors' settlement with Schreiber |
| Matthew Gavejian | 6/8/06 | 1.0 | Discussed Schreiber settlement with XRoads |
| Matthew Gavejian | 6/8/06 | 1.5 | Revised Schreiber memo based on comments from Milbank |
| Matthew Gavejian | 6/8/06 | 1.0 | Distributed follow up e-mails to XRoads based on review of due diligence request list |
| Matthew Gavejian | 6/8/06 | 1.0 | Conference call with the Committee |
| Matthew Gavejian | 6/8/06 | 1.5 | Review of Winn-Dixie's renegotiated post-petition supply agreement with Sanderson Farms |
| Matthew Gavejian | 6/8/06 | 1.5 | Review of Winn-Dixie's renegotiated post-petition supply agreement with Libman |
| Matthew Gavejian | 6/9/06 | 1.0 | Review the Schreiber settlement memo based on comments from Milbank |
| Matthew Gavejian | 6/9/06 | 7.0 | Revised business plan presentation based on comments from team; including text, reformatting and reorganizing analyses |
| Matthew Gavejian | 6/9/06 | 0.5 | Discussed status of various asset sales included in the May 2006 plan with D.Aulabaugh |
| Matthew Gavejian | 6/11/06 | 1.0 | Review of competitive openings by DMA information from XRoads |
| Matthew Gavejian | 6/11/06 | 2.5 | Preparation of an analysis summarizing key Winn-Dixie DMAs and competitive openings by Wal-Mart and Publix |
| Matthew Gavejian | 6/11/06 | 8.5 | Revised analyses and commentary included in business plan presentation |
| Matthew Gavejian | 6/12/06 | 1.0 | Confirmed points related to the Schreiber settlement based on questions from the Committee |
| Matthew Gavejian | 6/12/06 | 1.0 | Input revised commentary from R.McEvoy |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 6/12/06 | 1.0 | Discussed cost reductions achieved to date and forecast with M.Dussinger (XRoads) |
| Matthew Gavejian | 6/12/06 | 2.5 | Review cost reduction support from M.Dussinger (XRoads) |
| Matthew Gavejian | 6/12/06 | 3.0 | Revised presentation slides regarding cost reductions based on new information received |
| Matthew Gavejian | 6/12/06 | 5.5 | Revised organization and formatting of presentation |
| Matthew Gavejian | 6/13/06 | 1.0 | Revised and input market share analysis |
| Matthew Gavejian | 6/13/06 | 1.5 | Reviewed cash flows related to D&O tail insurance included in the May 2006 business plan |
| Matthew Gavejian | 6/13/06 | 1.0 | Discussed New Orleans market share data with M.Dussinger (XRoads) |
| Matthew Gavejian | 6/13/06 | 1.5 | Added commentary to market share analysis pages |
| Matthew Gavejian | 6/13/06 | 9.5 | Continued to revise formatting and commentary of presentation |
| Matthew Gavejian | 6/14/06 | 1.5 | Revised and edited market share leaders analysis and included in presentation |
| Matthew Gavejian | 6/14/06 | 1.0 | Revised competitive openings chart and slide |
| Matthew Gavejian | 6/14/06 | 1.5 | Review and input of executive summary slides prepared by A.Hede |
| Matthew Gavejian | 6/14/06 | 1.0 | Review week 49 sales by category |
| Matthew Gavejian | 6/14/06 | 0.5 | Distributed questions relative to field organization and facilities closures to M.Dussinger (XRoads) |
| Matthew Gavejian | 6/14/06 | 1.5 | Review of working capital text prepared by R.McEvoy, input of text into presentation |
| Matthew Gavejian | 6/14/06 | 2.5 | Analysis of vendor terms implied by working capital balances |
| Matthew Gavejian | 6/14/06 | 1.5 | Review and input of vendor terms commentary prepared by R.McEvoy |
| Matthew Gavejian | 6/15/06 | 5.0 | Detailed quality check and review of presentation, including sourcing for all numbers and tying of numbers to material provided by Winn-Dixie. |
| Matthew Gavejian | 6/15/06 | 3.0 | Working group review, spelling check etc. of our evaluation of the May business plan with Hede, McEvoy and Daniello |
| Matthew Gavejian | 6/16/06 | 1.0 | Review of the AFCO premium financing agreement to be implemented by Winn-Dixie |
| Matthew Gavejian | 6/16/06 | 1.5 | Review of proposed Deloitte Consulting retention and distributed questions to XRoads |
| Matthew Gavejian | 6/19/06 | 1.0 | Revised supply contracts memo to the Committee |
| Matthew Gavejian | 6/19/06 | 0.5 | Discussed pending contract rejections with E.Lane (XRoads) |
| Matthew Gavejian | 6/20/06 | 1.5 | Prepared a memo to the Committee detailing the rejected contracts and potential rejection damages |
| Matthew Gavejian | 6/21/06 | 0.5 | Call with Committee professionals only |
| Matthew Gavejian | 6/21/06 | 1.5 | Call with the Committee |
| Matthew Gavejian | 6/21/06 | 2.0 | Summarized conclusions regarding retention of Deloitte Consulting and discussed with Milbank |
| Matthew Gavejian | 6/22/06 | 1.5 | Call with Spencer Stuart and Peter Lynch to discuss Board of Directors selections |
| Matthew Gavejian | 6/22/06 | 2.0 | Revised select slides in the business plan presentation based on comments received from HLHZ |
| Matthew Gavejian | 6/22/06 | 2.5 | Prepared June 2006 invoice |
| Matthew Gavejian | 6/22/06 | 1.0 | Revised supply contracts and rejected contracts memo based on comments from Milbank |
| Matthew Gavejian | 6/23/06 | 2.0 | Review of Winn-Dixie's renegotiated post-petition supply agreement with Lifetime products |
| Matthew Gavejian | 6/23/06 | 1.0 | Follow up calls and e-mails with XRoads and Winn-Dixie regarding potential premiums to be financed through AFCO |
| Matthew Gavejian | 6/23/06 | 1.0 | Calls with L.Mandel (Milbank) to discuss AFCO |
| Matthew Gavejian | 6/26/06 | 1.0 | Continued preparation of June 2006 invoice |
| Matthew Gavejian | 6/26/06 | 2.0 | Revisions to business plan presentation based on comments from A.Hede |
| Matthew Gavejian | 6/26/06 | 2.0 | Reviewed the Debtors Liquidation Analysis |
| Matthew Gavejian | 6/26/06 | 1.0 | Reviewed draft of the Debtors' Disclosure Statement |
| Matthew Gavejian | 6/26/06 | 1.0 | Call with HLHZ and Milbank regarding the Plan of Reorganization |
| Matthew Gavejian | 6/27/06 | 1.5 | Prepared memo detailing the supply contract with Lifetime products (not included in previous memo) for the Committee |
| Matthew Gavejian | 6/27/06 | 1.5 | Review of the Debtors proposed FY 2007 annual incentive plan |
| Matthew Gavejian | 6/27/06 | 3.0 | Initial drafting of memo summarizing FY 2007 annual incentive plan |
| Matthew Gavejian | 6/27/06 | 1.0 | Continued preparation of June 2006 invoice |
| Matthew Gavejian | 6/27/06 | 0.5 | Phone call with A.Hede regarding Liberty Mutual |
| Matthew Gavejian | 6/27/06 | 1.5 | Continued review and drafting of memo regarding the FY 2007 annual incentive plan |
| Matthew Gavejian | 6/27/06 | 2.0 | Discussed Liberty Mutual bonding facility with J.Young (XRoads) and reviewed information received from D.Bitter (Winn-Dixie) |
| Matthew Gavejian | 6/28/06 | 2.0 | Conference call with the Committee |
| Matthew Gavejian | 6/29/06 | 0.5 | Prepared e-mail summary of Liberty Mutual bonding facility and L/C requirements for the Committee |
| Matthew Gavejian | 6/29/06 | 4.5 | Final quality check and revisions to business plan presentation before distribution (by hardcopy and e-mail) to the Committee |

EXHIBIT A

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 6/30/06 | 0.5 | Call with M.Barr and M.Comerford (Milbank) to discuss claims process |
| Matthew Gavejian | 6/30/06 | 3.5 | Finalized and distributed June 2006 invoice |
| Matthew Gavejian | 6/30/06 | 0.5 | Discussions with XRoads regarding claims process |
| Matthew Gavejian | 7/5/06 | 2.0 | Review of Annual Incentive Plan documentation including review of target levels, potential payouts and previous Plan structure |
| Matthew Gavejian | 7/6/06 | 2.0 | Review of Liberty Mutual bonding documentation and requirements |
| Matthew Gavejian | 7/6/06 | 1.0 | Correspondence with information requests and questions regarding Liberty Mutual |
| Matthew Gavejian | 7/7/06 | 2.0 | Research and review Liberty Mutual proofs of claims and review of collateral amounts |
| Matthew Gavejian | 7/7/06 | 0.5 | Discussed Liberty Mutual with L.Mandel (Milbank) |
| Matthew Gavejian | 7/10/06 | 5.0 | Prepared memo discussing Winn-Dixie's proposed Annual Incentive Plan for management |
| Matthew Gavejian | 7/11/06 | 3.0 | Prepared talking/discussion points memo for A&M's presentation of its review of Winn-Dixie's Business Plan |
| Matthew Gavejian | 7/11/06 | 2.0 | Revised memo on the proposed Annual Incentive Plan |
| Matthew Gavejian | 7/12/06 | 8.0 | Prepared script for presentation to the Committee, including slide references and key message points for illustration |
| Matthew Gavejian | 7/13/06 | 1.0 | Preparation for call with the Committee (business plan review presentation) |
| Matthew Gavejian | 7/13/06 | 2.0 | Participated in call with the Committee and advisors; presented A&M's review of Winn-Dixie's business plan |
| Matthew Gavejian | 7/14/06 | 2.0 | Review of weekly and period based sales reports for tracking to A&M's presentation |
| Matthew Gavejian | 7/17/06 | 2.0 | Preparation of schedules, detailing time and expenses for Fourth Interim Fee Application |
| Matthew Gavejian | 7/18/06 | 5.0 | Drafting text of application, including services performed, and order for Fourth Interim Fee Application |
| Matthew Gavejian | 7/19/06 | 1.5 | Review of Winn-Dixie's MOR for the period ended June 28, 2006 |
| Matthew Gavejian | 7/19/06 | 0.5 | Correspondence regarding call with XRoads to discuss claims |
| Matthew Gavejian | 7/19/06 | 1.0 | Preparation for call to discuss claims (call canceled) |
| Matthew Gavejian | 7/20/06 | 3.5 | Preparation, review and distribution of July monthly invoice |
| Matthew Gavejian | 7/20/06 | 0.5 | Conference call with the Committee |
| Matthew Gavejian | 8/3/06 | 2.5 | Review First Omnibus Motion for assumption of contracts |
| Matthew Gavejian | 8/3/06 | 1.0 | Review of Harahan asset sale documentation |
| Matthew Gavejian | 8/3/06 | 1.0 | Documented and distributed questions regarding First Omnibus Motion to XRoads |
| Matthew Gavejian | 8/4/06 | 1.0 | Revise and finalize First Omnibus Assumption motion memo to the Committee |
| Matthew Gavejian | 8/4/06 | 2.0 | Prepared analysis of impact of closure of seven stores on Winn-Dixie financial performance |
| Matthew Gavejian | 8/7/06 | 5.0 | Prepared analysis of claims information, including stratifications and review of claims buckets, amounts and claimant types |
| Matthew Gavejian | 8/8/06 | 1.0 | Call with Skadden, Milbank, Logan and Co. and XRoads regarding claims information |
| Matthew Gavejian | 8/8/06 | 2.5 | Review of claims information received to date, including reports from Logan & Co. |
| Matthew Gavejian | 8/9/06 | 1.0 | Review of report detailing changes made to certain claims voting classification prepared by Logan & Co. |
| Matthew Gavejian | 8/9/06 | 0.5 | Documented and distributed questions to XRoads regarding newly filed assumption and rejection motions |
| Matthew Gavejian | 8/9/06 | 0.5 | Documented and distributed questions to Milbank regarding claims |
| Matthew Gavejian | 8/9/06 | 2.0 | Prepared memo detailing the closure of seven Winn-Dixie stores |
| Matthew Gavejian | 8/9/06 | 1.0 | Review of non-voting, CUD and other secured claims classes |
| Matthew Gavejian | 8/10/06 | 1.0 | Committee conference call |
| Matthew Gavejian | 8/10/06 | 2.0 | Revise store closure memo |
| Matthew Gavejian | 8/10/06 | 1.0 | Call with K.Fagerstrom (XRoads) regarding executory contracts and unexpired leases to be rejected |
| Matthew Gavejian | 8/10/06 | 1.5 | Reformatted daily time records and detail to be in compliance with Stuart Maue (Fee Examiner) format and distributed time records |
| Matthew Gavejian | 8/11/06 | 0.5 | Call with J.O'Connell (Blackstone) to discuss current cash balance and changes from Plan documents |
| Matthew Gavejian | 8/11/06 | 1.5 | Review of information relative to store closure and auction process based on information from XRoads |
| Matthew Gavejian | 8/11/06 | 2.0 | Drafting of Second Omnibus Contract Assumption Motion memo to the Committee |
| Matthew Gavejian | 8/14/06 | 2.0 | Drafted employment contract assumption and rejection memo |
| Matthew Gavejian | 8/14/06 | 1.5 | Review information from XRoads regarding components of contract rejections and assumptions |
| Matthew Gavejian | 8/14/06 | 0.5 | Discuss employee contract issue with Milbank |
| Matthew Gavejian | 8/14/06 | 1.5 | Revise executory contracts and unexpired leases memo to the Committee |
| Matthew Gavejian | 8/15/06 | 2.5 | Review of Visagent memo and claims information; status update from M.Comerford (Milbank) |

EXHIBIT A

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 8/16/06 | 1.5 | Revisions to employment contract assumptions and rejections memo |
| Matthew Gavejian | 8/16/06 | 1.5 | Prepared July invoice |
| Matthew Gavejian | 8/17/06 | 0.5 | Calls with J.Milton (Milbank) to discuss outstanding motions and filings |
| Matthew Gavejian | 8/17/06 | 0.5 | Call with S.Karol (XRoads) to discuss closure of certain Winn-Dixie stores |
| Matthew Gavejian | 8/17/06 | 1.5 | Revise memo regarding closure of stores |
| Matthew Gavejian | 8/17/06 | 0.5 | Final review and distribution of July invoice |
| Matthew Gavejian | 8/18/06 | 1.5 | Final revisions to memo regarding closure of Winn-Dixie stores |
| Matthew Gavejian | 8/18/06 | 1.0 | Discussed memo with Milbank |
| Matthew Gavejian | 8/22/06 | 1.0 | Review of Southern Wines stipulation and reclamation documents |
| Matthew Gavejian | 8/23/06 | 1.0 | Discussed Southern Wines stipulation with J.Young (XRoads) |
| Matthew Gavejian | 8/24/06 | 0.5 | Discussed trade stipulation with Southern Wines with M.Comerford (Milbank) |
| Matthew Gavejian | 8/24/06 | 0.5 | Review of draft IBM Assumption Motion |
| Matthew Gavejian | 8/24/06 | 0.5 | Discussed IBM motion with J.Milton (Milbank) |
| Matthew Gavejian | 8/25/06 | 0.5 | Detailed questions relation to the IBM motion to XRoads |
| Matthew Gavejian | 8/25/06 | 0.5 | Reviewed Southern Wines stipulation and assisted with execution of agreement |
| Matthew Gavejian | 8/28/06 | 1.0 | Review of the Third Omnibus Assumption Motion |
| Matthew Gavejian | 8/28/06 | 1.0 | Review of the revised IBM Assumption Motion |
| Matthew Gavejian | 8/28/06 | 1.0 | Review of Contract Rejection motion |
| Matthew Gavejian | 8/28/06 | 0.5 | Prepared detailed list of questions for XRoads |
| Matthew Gavejian | 8/29/06 | 0.5 | Call with J.Young (XRoads) regarding information requests related to various Debtor filings |
| Matthew Gavejian | 8/29/06 | 0.5 | Call with J.Milton to coordinate on memos to the Committee and status of Debtor filings |
| Matthew Gavejian | 8/30/06 | 0.5 | Meeting with A.Hede |
| Matthew Gavejian | 8/30/06 | 1.0 | Call with J.Young (XRoads) regarding IBM, Contract Rejection and Third Omnibus Motions |
| Matthew Gavejian | 8/30/06 | 1.0 | Review of Winn-Dixie claims register |
| Matthew Gavejian | 8/30/06 | 0.5 | Call with J.Young (XRoads) to follow up on open items/questions regarding motions |
| Matthew Gavejian | 8/30/06 | 2.0 | Drafted memo to the Committee related to the Third Omnibus Motion |
| Matthew Gavejian | 8/31/06 | 3.0 | Drafted memo to the Committee related to the IBM Motion |
| Matthew Gavejian | 8/31/06 | 1.0 | Calls with J.Milton (Milbank) to discuss comments to memos |
| Matthew Gavejian | 8/31/06 | 2.5 | Revised various memos |
| Matthew Gavejian | 9/1/06 | 2.0 | Final drafting of IBM Motion memo and distribution to Milbank for review |
| Matthew Gavejian | 9/5/06 | 0.5 | Call with J.Milton (Milbank) regarding the IBM motion and memo |
| Matthew Gavejian | 9/7/06 | 1.0 | Revised stratification analysis of unsecured claims by class |
| Matthew Gavejian | 9/7/06 | 1.0 | Conference call with the Committee |
| Matthew Gavejian | 9/7/06 | 1.5 | Drafted rejection motion memo and prepared charts |
| Matthew Gavejian | 9/8/06 | 0.5 | Revisions to contract rejection memo and distribution to Milbank |
| Matthew Gavejian | 9/11/06 | 0.5 | Call with M.Comerford to discuss claims totals and review of claims totals for Viasgent claim |
| Matthew Gavejian | 9/14/06 | 1.0 | Conference call with the Committee |
| Matthew Gavejian | 9/15/06 | 0.5 | Initial call to discuss section 382 tax issues with HLHZ, Milbank, Skadden, Deloitte & Touche |
| Matthew Gavejian | 9/15/06 | 0.5 | Call with J.Milton (Milbank) to discuss various motions and implications of contract assumptions |
| Matthew Gavejian | 9/19/06 | 0.5 | Call with A&M tax team to discuss upcoming call to review assumptions |
| Matthew Gavejian | 9/19/06 | 0.5 | Call with HLHZ, Milbank, Skadden, Deloitte & Touche to review assumptions, follow up questions |
| Matthew Gavejian | 9/20/06 | 1.0 | Prepared September 2006 invoice and reviewed August 2006 time records |
| Matthew Gavejian | 9/20/06 | 4.0 | Review of various motions including: 1st, 2nd, 3rd Negotiated Assumptions, 4th Omnibus Assumption, 1st Negotiated Rejection, 5th Omnibus Assumption and 4th Negotiated Assumption |
| Matthew Gavejian | 9/20/06 | 0.5 | Call with J.Milton to discuss motions and A&M deliverables |
| Matthew Gavejian | 9/20/06 | 0.5 | Call with A&M tax team to discuss view of tax analysis |
| Matthew Gavejian | 9/20/06 | 0.5 | Call with M.Comerford (Milbank) and A.Tang (HLHZ) to discuss reporting to Committee regarding tax issues |
| Matthew Gavejian | 9/20/06 | 0.5 | Call with J.Young (XRoads) to discuss information requests relative to the various motions filed |
| Matthew Gavejian | 9/20/06 | 1.5 | Review of payment history for vendors with contracts to be assumed to understand potential preference implications |
| Matthew Gavejian | 9/21/06 | 1.5 | Review of business case in support of the assumption of modified agreement with Cardtronics |
| Matthew Gavejian | 9/21/06 | 0.5 | Calls with J.Young (XRoads) to discuss status of information, new pieces of data and next steps in motion review process |
| Matthew Gavejian | 9/21/06 | 0.5 | Calls with J.Milton (Milbank) to discuss status of A&M deliverables and timing of information from XRoads |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Matthew Gavejian | 9/21/06 | 0.5 | Compiled and distributed questions to XRoads relative to the rejection motion and the negotiated rejection motion |
| Matthew Gavejian | 9/21/06 | 0.5 | Compiled and distributed questions to XRoads relative to the various contract assumptions and requested additional information to assist in review of potential preference payments |
| Matthew Gavejian | 9/21/06 | 4.0 | Continued to draft memos relative to various outstanding motions |
| Matthew Gavejian | 9/21/06 | 0.5 | Finalized, quality checked and distributed contract rejection memo to Milbank for review |
| Matthew Gavejian | 9/22/06 | 3.5 | Prepared initial drafts of various rejection / assumption memos |
| Matthew Gavejian | 9/22/06 | 1.0 | Documented list of outstanding information requests and distributed to XRoads |
| Matthew Gavejian | 9/22/06 | 0.5 | Received comments on rejection memo from Milbank; revised memo and distributed |
| Matthew Gavejian | 9/22/06 | 1.5 | Call with K.Fagerstrom to discuss specifics related to vendors, reasons for rejection and/or assumption of contracts, terms of new supply agreements and overview of negotiations relative to contracts |
| Matthew Gavejian | 9/22/06 | 1.0 | Review of Milbank workflow tracking sheet |
| Matthew Gavejian | 9/22/06 | 0.5 | Internal communication regarding A&M's role in reviewing the section 382 tax issue |
| Matthew Gavejian | 9/25/06 | 0.5 | Distributed questions relative to Class 13 Landlord Claims to XRoads |
| Matthew Gavejian | 9/25/06 | 1.0 | Review analysis of Class 13 claims and discussed with XRoads and Milbank |
| Matthew Gavejian | 9/25/06 | 1.0 | Follow up e-mails regarding rejection motion vendors and open information requests |
| Matthew Gavejian | 9/25/06 | 5.5 | Drafted memo related to the 4th Omnibus Contract Assumption motion |
| Matthew Gavejian | 9/25/06 | 1.0 | Call with J.Young (XRoads) and Winn-Dixie internal counsel to discuss negotiations of assumptions and terms included in contracts |
| Matthew Gavejian | 9/26/06 | 1.0 | Final review and distribution of Fourth Omnibus motion memo to Milbank |
| Matthew Gavejian | 9/26/06 | 0.5 | Internal coordination of tax issue memo |
| Matthew Gavejian | 9/26/06 | 0.5 | Final review and distribution of First Negotiated Contract Rejection motion memo to Milbank |
| Matthew Gavejian | 9/26/06 | 0.5 | Revised and distributed Fourth Omnibus motion memo based on comments from Milbank |
| Matthew Gavejian | 9/26/06 | 0.5 | Requested information from XRoads relative to the Second Negotiated Rejection motion |
| Matthew Gavejian | 9/26/06 | 6.0 | Drafting of Fifth Omnibus Assumption, Fourth Negotiated Assumption, 1st 2nd and 3rd Negotiated assumption motion, Second Negotiated Rejection motion |
| Matthew Gavejian | 9/26/06 | 0.5 | Various calls with Milbank |
| Matthew Gavejian | 9/26/06 | 0.5 | Various calls with XRoads, Winn-Dixie |
| Matthew Gavejian | 9/27/06 | 1.0 | Review of draft rejection motion of Rexall Sundown contract |
| Matthew Gavejian | 9/27/06 | 1.0 | Finalize and review 1st, 2nd , 3rd Negotiated Assumption memo |
| Matthew Gavejian | 9/27/06 | 0.5 | Discuss First Negotiated Rejection memo with J.Milton (Milbank) |
| Matthew Gavejian | 9/27/06 | 0.5 | Discussed disputed claims with S.Karol (XRoads) |
| Matthew Gavejian | 9/27/06 | 0.5 | Discussed status update relative to motions filed/to be filed with J.Young (Milbank) |
| Matthew Gavejian | 9/27/06 | 0.5 | Revised 1st, 2nd, 3rd Negotiated Assumption memo based on comments from Milbank |
| Matthew Gavejian | 9/27/06 | 6.0 | Continued drafting of Fifth Omnibus Assumption, Fourth Negotiated Assumption, Second Negotiated Rejection and Cardtronics motion |
| Matthew Gavejian | 9/28/06 | 1.5 | Conference call with the Committee |
| Matthew Gavejian | 9/28/06 | 1.0 | Final review and distribution of Fifth Omnibus, Second Negotiated Rejection, and Fourth Negotiated Assumption motion memos |
| Matthew Gavejian | 9/28/06 | 0.5 | Review of claims support and filed proof of claim for specific vendor included in Second Negotiated Rejection motion |
| Matthew Gavejian | 9/28/06 | 0.5 | Discussed claims for rejection damages and proof of claim with B.Gaston (XRoads) |
| Matthew Gavejian | 9/28/06 | 1.5 | Final review and drafting of Cardtronics memo |
| Matthew Gavejian | 9/28/06 | 0.5 | Discussed payment history to Cardtronics with XRoads |
| Matthew Gavejian | 9/28/06 | 0.5 | Revised Fourth Negotiated Assumption and Fifth Omnibus Assumption memos based on comments from Milbank |
| Matthew Gavejian | 9/29/06 | 1.5 | Final drafting of Second Negotiated Rejection memo |
| Matthew Gavejian | 9/29/06 | 1.0 | Discussed memo with J.Milton (Milbank) |
| Matthew Gavejian | 9/29/06 | 1.0 | Revised memo based on comments from J.Milton (Milbank) |
| Matthew Gavejian | 9/29/06 | 1.0 | Discussed Cardtronics memo with J.Milton (Milbank) |
| Matthew Gavejian | 9/29/06 | 1.0 | Revised Cardtronics memo |
| Matthew Gavejian | 9/29/06 | 1.0 | Final review and quality checks of both memos and distribution to Milbank |
| **Total** | | **411.5** | |
| Chris Daniello | 6/12/06 | 2.0 | Telephonic search for a Market research firm, which would provide a detailed analyses on grocery store's market share in various DMAs and decided on Trade Dimensions. |
| Chris Daniello | 6/13/06 | 3.5 | Compiled market share data for each of Winn-Dixie's 22 DMAs and inputted that information into Excel in order to be able to manipulate the data. |

**EXHIBIT A**

**Winn-Dixie Stores, Inc., et al.**

Time Reporting Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Hours | Work Performed |
|---|---|---|---|
| Chris Daniello | 6/14/06 | 2.0 | Analyzed the market share data for each DMA, by sorting data in various ways to understand Winn-Dixie's position in each DMA |
| Chris Daniello | 6/14/06 | 1.0 | Analysis of market leaders by DMA |
| Chris Daniello | 6/14/06 | 1.0 | Analysis of changes in market share from FY 2004 to FY2005 for both Winn-Dixie and its competitors. |
| Chris Daniello | 6/15/06 | 3.0 | Working group review, spelling check etc. of our evaluation of the May business plan with Hede, McEvoy and Gavejian |
| **Total** | | **12.5** | |
| **Grand Total** | | **981.5** | |

**EXHIBIT B**

**Winn-Dixie Stores, Inc., et al.**

Expense Summary: June 1, 2006 through September 30, 2006

| Professional | Title | Transportation | Business Meals | Lodging | Telecommunications | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Andrew Hede | Managing Director | $ 99.91 | $ - | $ - | $ 204.22 | $ - | $ 304.13 |
| Dirk Aulabaugh | Senior Director | - | - | - | 216.72 | - | 216.72 |
| Robert McEvoy | Director | 1,273.16 | 150.00 | 236.17 | 97.50 | 650.00 | 2,406.83 |
| Matthew Gavejian | Senior Associate | 271.10 | 35.00 | - | 96.71 | - | 402.81 |
| Corporate Charges | | | | | - | 2,220.84 | 2,220.84 |
| Total | | $ 1,644.17 | $ 185.00 | $ 236.17 | $ 615.15 | $ 2,870.84 | $ 5,551.33 |

| Category | Description |
|---|---|
| Transportation | Includes airfare for travel to Jacksonville (auctions, meetings, store visit) and Chicago (meeting), taxi transportation, car rental and parking. |
| Business Meals | Includes working meals where Winn-Dixie matters were discussed. |
| Lodging | Includes hotel charges in Jacksonville and Chicago. |
| Telecommunications | Includes fax, phone and connectivity charges. |
| Misc. | Includes postal and document reproduction charges. |

EXHIBIT B

**Winn-Dixie Stores, Inc., et al.**

Expense Detail: June 1, 2006 through September 30, 2006

| Professional | Date | Amount | Type | Description |
|---|---|---|---|---|
| Andrew Hede | 5/31/06 | 99.91 | Transportation | Car service from EWR to home after flight from Jacks |
| Andrew Hede | 7/19/06 | 42.19 | Telecommunications | Business telephone usage (6/20/06 - 7/19/06) |
| Andrew Hede | 9/19/06 | 54.84 | Telecommunications | Business telephone usage (8/20/06 - 9/19/06) |
| Andrew Hede | | 77.87 | Telecommunications allocation [1] | 4/23 - 5/22 Wireless Usage Charges |
| Andrew Hede | | 18.74 | Telecommunications allocation [1] | 5/23 - 6/22 Wireless Usage Charges |
| Andrew Hede | | 10.58 | Telecommunications allocation [1] | 6/23 - 7/22 Wireless Usage Charges |
| **Total** | | **304.13** | | |
| | | | | |
| Dirk Aulabaugh | | 145.07 | Telecommunications allocation [1] | 4/23 - 5/22 Wireless Usage Charges |
| Dirk Aulabaugh | | 55.39 | Telecommunications allocation [1] | 5/23 - 6/22 Wireless Usage Charges |
| Dirk Aulabaugh | | 16.26 | Telecommunications allocation [1] | 6/23 - 7/22 Wireless Usage Charges |
| **Total** | | **216.72** | | |
| | | | | |
| Robert McEvoy | 5/30/06 | 150.00 | Business Meal | Working Dinner - Hede, McEvoy, Gavejian |
| Robert McEvoy | 5/31/06 | 236.17 | Lodging | Omni Hotel Jacksonville (1 night) |
| Robert McEvoy | 5/31/06 | 1,086.60 | Transportation | Roundtrip airfare to/from JAX |
| Robert McEvoy | 6/9/06 | 186.56 | Transportation | Car service from EWR to home after flight from Jacks |
| Robert McEvoy | 6/19/06 | 650.00 | Miscellaneous | Market research - Trade Dimensions Market Share by DMA (for use in business plan review) |
| Robert McEvoy | | 45.49 | Telecommunications allocation [1] | 4/23 - 5/22 Wireless Usage Charges |
| Robert McEvoy | | 52.01 | Telecommunications allocation [1] | 5/23 - 6/22 Wireless Usage Charges |
| **Total** | | **2,406.83** | | |
| | | | | |
| Matthew Gavejian | 5/8/06 | 87.62 | Transportation | Car service from office to LGA for flight to JAX |
| Matthew Gavejian | 5/31/06 | 75.48 | Transportation | Car service from EWR to home after flight from Jacks |
| Matthew Gavejian | 6/1/06 | 9.00 | Transportation | Taxi fare to home (working late) |
| Matthew Gavejian | 6/3/06 | 18.00 | Transportation | Taxi fare to home (working late) |
| Matthew Gavejian | 6/4/06 | 18.00 | Transportation | Taxi fare to home (working late) |
| Matthew Gavejian | 6/5/06 | 9.00 | Transportation | Taxi fare to home (working late) |
| Matthew Gavejian | 6/7/06 | 9.00 | Transportation | Taxi fare to home (working late) |
| Matthew Gavejian | 6/8/06 | 9.00 | Transportation | Taxi fare to home (working late) |
| Matthew Gavejian | 6/11/06 | 9.00 | Transportation | Taxi fare to home (working late) |
| Matthew Gavejian | 6/12/06 | 9.00 | Transportation | Taxi fare to home (working late) |
| Matthew Gavejian | 6/13/06 | 9.00 | Transportation | Taxi fare to home (working late) |
| Matthew Gavejian | 6/14/06 | 9.00 | Transportation | Taxi fare to home (working late) |
| Matthew Gavejian | 6/14/06 | 35.00 | Business Meals | Dinner for A.Hede, R.McEvoy, M.Gavejian - working late |
| Matthew Gavejian | | 33.97 | Telecommunications allocation [1] | 4/23 - 5/22 Wireless Usage Charges |
| Matthew Gavejian | | 40.75 | Telecommunications allocation [1] | 5/23 - 6/22 Wireless Usage Charges |
| Matthew Gavejian | | 21.99 | Telecommunications allocation [1] | 6/23 - 7/22 Wireless Usage Charges |
| **Total** | | **402.81** | | |
| | | | | |
| Corporate charges | 6/8/06 | 22.14 | Miscellaneous | Federal express charges |
| Corporate charges | 7/1/06 | 1,805.76 | Miscellaneous | Reproduction and binding of A&M's May 2006 Business Plan Review |
| Corporate charges | 7/3/06 | 328.15 | Miscellaneous | Federal express charges - distribution to Committee members of A&M's May 2006 Business Plan Review |
| Corporate charges | 8/17/06 | 64.79 | Miscellaneous | Federal express charges |
| **Total** | | **2,220.84** | | |
| | | | | |
| **Grand Total** | | **$   5,551.33** | | |

[1] It is A&M policy to bill for certain telecommunications charges.  These charges are allocated based on total client hours.