**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                    Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., et al.,          Chapter 11

       Debtors.                           Jointly Administered

_____/

**FIFTH APPLICATION OF MILBANK, TWEED, HADLEY & McCLOY LLP, COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM JUNE 1, 2006 THROUGH AND INCLUDING SEPTEMBER 30, 2006**

Name of Applicant:                    Milbank, Tweed, Hadley & McCloy LLP

Authorized to Provide
Professional Services to:             Official Committee of Unsecured
                                      Creditors

Date of Retention                     April 12, 2005 (effective as of
(Final Approval):                      March 1, 2005)

Period for which compensation
and reimbursement is sought:          June 1, 2006 – September 30, 2006

Amount of Compensation
requested:                            $972,312.50

Amount of Expense
Reimbursement requested:              $74,318.99

This is a(n): ___X___ interim  _____ final application.

This is the fifth interim fee application filed by Milbank, Tweed, Hadley & M^cCloy LLP in these cases.

Prior Applications:

| Period Covered | Requested | | Awarded | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| March 1, 2005 – May 31, 2005 | 1,194,617.50 | 108,654.51 | 1,194,617.50 | 108,654.51 |
| June 1, 2005 – September 30, 2005 | 1,283,088.00 | 101,383.95 | 1,283,088.00 | 101,383.95 |
| October 1, 2005 – January 31, 2006 | 832,307.50 | 75,815.03 | 832,307.50 | 75,815.03 |
| February 1, 2006 – May 31, 2006 | 1,552,033.00 | 89,609.45 | 1,552,033.00 | 89,609.45 |

FIFTH INTERIM FEE APPLICATION OF MILBANK, TWEED,
HADLEY & MᶜCLOY LLP: AS COUNSEL TO OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF WINN DIXIE STORES, INC., ET AL.
(JUNE 1, 2006 – SEPTEMBER 30, 2006)

| Name | Position; Experience | Hourly Rate | Total Hours | Total Compensation |
|------|---------------------|-------------|-------------|--------------------|
| Dennis Dunne | Financial Restructuring Partner for 9 years; admitted in 1991. | $850 | 106.40 | $90,440.00 |
| Dale Ponikvar | Tax Partner for 17 years; admitted in 1981. | $825 | 32.60 | $26,895.00 |
| Michael Diamond | Litigation Partner for 28 years; admitted in 1971. | $825 | 11.90 | $9,817.50 |
| Alexander Kaye | Global Corporate Partner for 6 years; admitted in 1992. | $760 | 65.60 | $49,856.00 |
| Matthew Barr | Financial Restructuring Partner for 2 years; admitted in 1997. | $675 | 297.70 | $200,947.50 |
| Scott Price | Tax Of Counsel for 2 years; admitted in 1990. | $640 | 23.50 | $15,040.00 |
| Andrew Herr | Global Finance Associate for 6 years; admitted in 1997. | $535 | 25.70 | $13,749.50 |
| Sabina Clorfeine | Litigation Associate for 6 years; admitted in 1997. | $535 | 24.20 | $12,947.00 |
| Lena Mandel | Financial Restructuring Senior Attorney for 16 years; admitted in 1990. | $550 | 23.80 | $13,090.00 |
| Russell Kestenbaum | Tax Associate for 8 years; admitted in 1997. | $525 | 50.50 | $26,512.50 |

| | | | | |
|---|---|---|---|---|
| Jeffrey Milton | Financial Restructuring Associate for 6 years; admitted in 1999. | $515 | 215.20 | $110,828.00 |
| Derrick Talerico | Litigation Associate for 4 years; admitted in 2002. | $475 | 70.30 | $33,392.50 |
| Michael Comerford | Financial Restructuring Associate for 4 years; admitted in 2003. | $475 | 550.50 | $261,487.50 |
| Brian Kinney | Financial Restructuring Associate for 3 years; admitted in 2004. | $440 | 3.00 | $1,320.00 |
| Scott McClelland | Global Corporate Associate for 3 years; admitted in 2004. | $440 | 68.70 | $30,228.00 |
| Rachel Cherington | Tax Associate for 1 year; admitted in 2006. | $350 | 2.90 | $1,015.00 |
| Catherine Yu | Financial Restructuring Associate for 5 months; admission pending. | $225 | 45.50 | $10,237.50 |
| Rena Ceron | Case Manager | $180 | 99.80 | $17,964.00 |
| Holly Erick | Legal Assistant | $160 | 6.70 | $1,072.00 |
| Elliot Law | Legal Assistant | $135 | 11.00 | $1,485.00 |
| Charmaine Thomas | Legal Assistant | $135 | 95.20 | $12,852.00 |
| Bryn Fuller | Legal Assistant | $135 | 69.40 | $9,369.00 |

| | | | | |
|---|---|---|---|---|
| Jacqueline Brewster | Managing Attorney Clerk | $145 | 118.80 | $17,226.00 |
| Matthew Ottenstein | Librarian | $170 | 6.50 | $1,105.00 |
| Christopher Coleman | Litigation Support Specialist | $245 | 8.00 | $1,960.00 |
| Joshua Wallach | File Clerk | $120 | 12.30 | $1,476.00 |
| **Total** | | **$475.30[1]** | **2,045.70 hours** | **$972,312.50** |

---

[1] The blended rate <u>excluding</u> paraprofessionals is $561.23 per hour.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                  Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., et al.,        Chapter 11

          Debtors.                      Jointly Administered

_____/

**FIFTH APPLICATION OF MILBANK, TWEED, HADLEY & McCLOY LLP,
COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR
INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
FOR REIMBURSEMENT OF EXPENSES INCURRED DURING PERIOD FROM
JUNE 1, 2006 THROUGH AND INCLUDING SEPTEMBER 30, 2006**

Milbank, Tweed, Hadley & McCloy LLP ("Milbank"),
counsel to the official committee of unsecured creditors (the
"Committee") of Winn-Dixie Stores, Inc. and its affiliated
debtors and debtors-in-possession appointed in the above-
captioned cases (collectively, "Winn-Dixie" or the "Debtors"),
submits its application (the "Application"), pursuant to
sections 330 and 331 of title 11 of the United States Code, 11
U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rule
2016 of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules"), the United States Trustee Guidelines for
Reviewing Applications for Compensation and Reimbursement of
Expenses Filed Under Section 330 of the Bankruptcy Code
effective January 30, 1996 (the "U.S. Trustee Guidelines") and
the Final Order Approving Interim Compensation Procedures for

Professionals, dated March 15, 2005 (Docket No. 434) (the "Interim Compensation Order"), for the allowance of interim compensation for professional services rendered from June 1, 2006 through and including September 30, 2006 (the "Fifth Interim Compensation Period"), and for reimbursement of expenses incurred in connection with such services, and in support thereof respectfully represents as follows:

## I.  INTRODUCTION

### A.  Background

1.  Bankruptcy Filing.  On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

2.  Statutory Committees.  On March 1, 2005, the United States Trustee duly appointed the Committee (Docket No. 176).  On August 17, 2005, the United States Trustee appointed the Equity Security Holders' Committee (the "Equity Committee") (Docket No. 3027), which was disbanded on January 11, 2006 (Docket No. 5098).

3.  Venue Transfer.  By order dated April 13, 2005, the New York Bankruptcy Court transferred venue of these cases to this Court.  The Debtors' cases are being jointly administered for procedural purposes only.  The Debtors continue

to operate their businesses and manage their properties as
debtors in possession pursuant to sections 1107(a) and 1108 of
the Bankruptcy Code.  No trustee or examiner has been appointed
in these cases.

       4.   <u>Fee Examiner</u>.  On August 10, 2005, this Court
ordered the appointment of a fee examiner, pursuant to the Order
Granting Motion To Appoint Fee Examiner (Docket No. 2933).

       5.   <u>Jurisdiction</u>.  This Court has jurisdiction over
this Application pursuant to 28 U.S.C. § 1334.  This matter is a
core proceeding within the meaning of 28 U.S.C. § 157(b)(2).
Venue of the Debtors' chapter 11 cases and this Application is
proper under 28 U.S.C. §§ 1408 and 1409.  The statutory
predicates for the relief sought herein are sections 330 and 331
of the Bankruptcy Code.

**B.**   <u>**Retention of Milbank and Billing History**</u>

       6.   <u>Authorization for Milbank's Retention</u>.  On April
12, 2005, the Committee's retention of Milbank was authorized in
these cases pursuant to the Order Under 11 U.S.C. § 1103 and
Fed. R. Bankr. P. 2014 and 5002, Authorizing Retention and
Employment of Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP as Counsel to

Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., et al. (Docket No. 702) (the "Retention Order").[1]

      7.   First Interim Fee Application.  On July 15, 2005, Milbank submitted the First Application of Milbank, Tweed, Hadley & McCloy LLP, Counsel to Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from March 1, 2005 Through and Including May 31, 2005 (the "First Interim Compensation Period," and such interim fee application being the "First Interim Fee Application") (Docket No. 2242).

      8.   In accordance with the Interim Compensation Order, Milbank submitted monthly fee statements to, among others, the Debtors seeking interim compensation and reimbursement of expenses.  During the First Interim Compensation Period, Milbank submitted the following fee statements:

    (a)   On May 4, 2005, pursuant to the Interim Compensation Order, Milbank served its first fee statement for the period from March 1, 2005 through and including March 31, 2005 (the "First Fee Statement").  The First Fee Statement sought an allowance of $447,752 as

---

[1] On March 30, 2005, the New York Bankruptcy Court entered an order (Docket No. 607) approving Milbank's retention on an interim basis subject to final approval, which occurred pursuant to the Retention Order.

compensation for services rendered and reimbursement of $35,345.75 in expenses.

(b)    On May 25, 2005, pursuant to the Interim Compensation Order, Milbank served its second fee statement for the period from April 1, 2005 through and including April 30, 2005 (the "Second Fee Statement").  The Second Fee Statement sought an allowance of $362,756 as compensation for services rendered and reimbursement of $37,266.13 in expenses.

(c)    On June 30, 2005, pursuant to the Interim Compensation Order, Milbank served its third fee statement for the period from May 1, 2005 through and including May 31, 2005 (the "Third Fee Statement" and, together with the First Fee Statement and Second Fee Statement, collectively the "First Interim Fee Statements").  The Third Fee Statement sought an allowance of $384,109.50 as compensation for services rendered and reimbursement of $36,042.63 in expenses.

9.    On August 5, 2005, this Court granted the First Interim Fee Application and allowed Milbank's request for $1,194,617.50 in fees and $108,654.51 in expenses, for a total award of $1,303,272.01 (Docket No. 2811).

10.    Second Interim Fee Application.  On November 11, 2005, Milbank submitted the Second Application of Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, Counsel to Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from June 1, 2005 Through and Including September 30, 2005 (the "Second Interim Compensation Period," and such interim fee application being the "Second Interim Fee Application") (Docket No. 4151).

11.   During the Second Interim Compensation Period, Milbank submitted the following fee statements:

(a)   On August 10, 2005, pursuant to the Interim Compensation Order, Milbank served its fourth fee statement for the period from June 1, 2005 through and including June 30, 2005 (the "Fourth Fee Statement"). The Fourth Fee Statement sought an allowance of $441,629 as compensation for services rendered and reimbursement of $36,978.62 in expenses.

(b)   On October 25, 2005, pursuant to the Interim Compensation Order, Milbank served its fifth fee statement for the period from July 1, 2005 through and including July 31, 2005 (the "Fifth Fee Statement"). The Fifth Fee Statement sought an allowance of $340,372 as compensation for services rendered and reimbursement of $27,457.91 in expenses.

(c)   On November 3, 2005, pursuant to the Interim Compensation Order, Milbank served its sixth fee statement for the period from August 1, 2005 through and including August 31, 2005 (the "Sixth Fee Statement").  The Sixth Fee Statement sought an allowance of $300,627.50 as compensation for services rendered and reimbursement of $19,618.06 in expenses.

(d)   On November 4, 2005, pursuant to the Interim Compensation Order, Milbank served its seventh fee statement for the period from September 1, 2005 through and including September 30, 2005 (the "Seventh Fee Statement" and, together with the Fourth Fee Statement, Fifth Fee Statement and Sixth Fee Statement, collectively the "Second Interim Fee Statements").  The Seventh Fee Statement sought an allowance of $200,459.50 as compensation for services rendered and reimbursement of $17,329.36 in expenses.

12.   On December 1, 2005, this Court granted the Second Interim Fee Application and allowed Milbank's request for $1,283,088 in fees and $101,383.95 in expenses, for a total award of $1,384,447.95 (Docket No. 4421).

13.  <u>Third Interim Fee Application</u>.  On March 17, 2006, Milbank submitted the Third Application of Milbank, Tweed, Hadley & M<u>c</u>Cloy LLP, Counsel to Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from October 1, 2005 Through and Including January 31, 2006 (the "<u>Third Interim Compensation Period</u>," and such interim fee application being the "<u>Third Interim Fee Application</u>") (Docket No. 6547).

14.  During the Third Interim Compensation Period, Milbank submitted the following fee statements:

(a)  On December 6, 2005, pursuant to the Interim Compensation Order, Milbank served its eighth fee statement for the period from October 1, 2005 through and including October 31, 2005 (the "<u>Eighth Fee Statement</u>").  The Eighth Fee Statement sought an allowance of $192,014.50 as compensation for services rendered and reimbursement of $19,653.68 in expenses.

(b)  On January 17, 2006, pursuant to the Interim Compensation Order, Milbank served its ninth fee statement for the period from November 1, 2005 through and including November 30, 2005 (the "<u>Ninth Fee Statement</u>").  The Ninth Fee Statement sought an allowance of $172,860.50 as compensation for services rendered and reimbursement of $13,662.09 in expenses.

(c)  On February 7, 2006, pursuant to the Interim Compensation Order, Milbank served its tenth fee statement for the period from December 1, 2005 through and including December 31, 2005 (the "<u>Tenth Fee Statement</u>").  The Tenth Fee Statement sought an allowance of $165,005.50 as compensation for services rendered and reimbursement of $17,985.81 in expenses.

(d) On March 14, 2006, pursuant to the Interim
    Compensation Order, Milbank served its eleventh fee
    statement for the period from January 1, 2006 through
    and including January 31, 2006 (the "Eleventh Fee
    Statement" and, together with the Eighth Fee
    Statement, Ninth Fee Statement and Tenth Fee
    Statement, collectively the "Third Interim Fee
    Statements").  The Eleventh Fee Statement sought an
    allowance of $302,427 as compensation for services
    rendered and reimbursement of $24,513.45 in expenses.

15.  On April 6, 2006, this Court granted the Third
Interim Fee Application and allowed Milbank's request for
$832,307.50 in fees and $75,815.03 in expenses, for a total
award of $908,122.53 (Docket No. 6955).

16.  Fourth Interim Fee Application.  On July 21,
2006, Milbank submitted the Fourth Application of Milbank,
Tweed, Hadley & M<sup>c</sup>Cloy LLP, Counsel to Official Committee of
Unsecured Creditors, for Interim Allowance of Compensation for
Services Rendered and for Reimbursement of Expenses Incurred
During Period from February 1, 2006 Through and Including May
31, 2006 (the "Fourth Interim Compensation Period," and such
interim fee application being the "Fourth Interim Fee
Application") (Docket No. 9426).

17.  During the Fourth Interim Compensation Period,
Milbank submitted the following fee statements:

(a) On May 8, 2006, pursuant to the Interim Compensation
    Order, Milbank served its twelfth fee statement for
    the period from February 1, 2006 through and including
    February 28, 2006 (the "Twelfth Fee Statement").  The
    Twelfth Fee Statement sought an allowance of

$433,958.50 as compensation for services rendered and reimbursement of $24,656.52 in expenses.

(b) On May 25, 2006, pursuant to the Interim Compensation Order, Milbank served its thirteenth fee statement for the period from March 1, 2006 through and including March 31, 2006 (the "Thirteenth Fee Statement"). The Thirteenth Fee Statement sought an allowance of $391,211 as compensation for services rendered and reimbursement of $23,495.96 in expenses.

(c) On July 12, 2006, pursuant to the Interim Compensation Order, Milbank served its fourteenth fee statement for the period from April 1, 2006 through and including April 30, 2006 (the "Fourteenth Fee Statement"). The Fourteenth Fee Statement sought an allowance of $327,376.50 as compensation for services rendered and reimbursement of $10,811.48 in expenses.

(d) On July 13, 2006, pursuant to the Interim Compensation Order, Milbank served its fifteenth fee statement for the period from May 1, 2006 through and including May 31, 2006 (the "Fifteenth Fee Statement" and, together with the Twelfth Fee Statement, Thirteenth Fee Statement and Fourteenth Fee Statement, collectively the "Fourth Interim Fee Statements"). The Fifteenth Fee Statement sought an allowance of $399,487 as compensation for services rendered and reimbursement of $30,645.49 in expenses.

18. On August 10, 2006, this Court granted the Fourth Interim Fee Application and allowed Milbank's request for $1,552,033 in fees and $89,609.45 in expenses, for a total award of $1,641,642.45 (Docket No. 10152).

19. Fifth Interim Fee Application. This is Milbank's fifth interim Application for approval and allowance of compensation and reimbursement of expenses. Milbank makes this Application pursuant to sections 330 and 331 of the Bankruptcy

Code.  No prior application has been made to this or any other court for the relief requested herein.

20.  During the Fifth Interim Compensation Period, Milbank submitted the following fee statements:

(a)  On August 17, 2006, pursuant to the Interim Compensation Order, Milbank served its sixteenth fee statement for the period from June 1, 2006 through and including June 30, 2006 (the "Sixteenth Fee Statement").  The Sixteenth Fee Statement sought an allowance of $286,536.50 as compensation for services rendered and reimbursement of $32,958.37 in expenses.

(b)  On September 28, 2006, pursuant to the Interim Compensation Order, Milbank served its seventeenth fee statement for the period from July 1, 2006 through and including July 31, 2006 (the "Seventeenth Fee Statement").  The Seventeenth Fee Statement sought an allowance of $210,889.50 as compensation for services rendered and reimbursement of $11,931.41 in expenses.

(c)  On October 24, 2006, pursuant to the Interim Compensation Order, Milbank served its eighteenth fee statement for the period from August 1, 2006 through and including August 31, 2006 (the "Eighteenth Fee Statement").  The Eighteenth Fee Statement sought an allowance of $187,574.50 as compensation for services rendered and reimbursement of $12,132.44 in expenses.

(d)  On November 13, 2006, pursuant to the Interim Compensation Order, Milbank served its nineteenth fee statement for the period from September 1, 2006 through and including September 30, 2006 (the "Nineteenth Fee Statement" and, together with the Sixteenth Fee Statement, Seventeenth Fee Statement and Eighteenth Fee Statement, collectively the "Fifth Interim Fee Statements").  The Nineteenth Fee Statement sought an allowance of $287,312.00 as compensation for services rendered and reimbursement of $17,296.77 in expenses.

21.  As of the filing of this Application, Milbank has received payments with respect to the Fifth Interim Fee

Statements totaling $605,022.62.  Milbank has applied this
payment to 80% of the fees and 100% of the expenses requested
pursuant to the Sixteenth Fee Statement, Seventeenth Fee
Statement and Eighteenth Fee Statement.

22.  Milbank has not entered into any agreement,
express or implied, with any other party for the purpose of
fixing or sharing fees or other compensation to be paid for
professional services rendered in these cases.

23.  No promises have been received by Milbank or any
member thereof as to compensation in connection with these cases
other than in accordance with the provisions of the Bankruptcy
Code.

## II.  <u>CASE STATUS</u>

24.  On June 29, 2006, the Debtors filed the Joint
Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated
Debtors (as subsequently amended, modified, or supplemented, the
"<u>Plan</u>") and a related disclosure statement (the "<u>Disclosure
Statement</u>").  On August 4, 2006, the Court conducted a hearing
to determine whether the Disclosure Statement contained adequate
information as required under Bankruptcy Code section 1125 (the
"<u>Disclosure Statement Hearing</u>").  The Court approved the
Disclosure Statement and approved certain Plan voting
solicitation procedures upon conclusion of the Disclosure
Statement Hearing.  Thereafter, the Debtors solicited votes to

accept or reject the Plan in accordance with this Court's order. This Court held a confirmation hearing on October 13, 2006, and the Plan was confirmed by Order of this Court on November 9, 2006 (Docket No. 12440).

## III. **APPLICATION**

25.   By this Application, Milbank is seeking full allowance of (a) compensation for professional services rendered by Milbank, as counsel for the Committee, during the Fifth Interim Compensation Period and (b) reimbursement of expenses incurred by Milbank in connection with such services during the Fifth Interim Compensation Period.

26.   In this Application, Milbank seeks approval of $972,312.50 for legal services rendered on behalf of the Committee during the Fifth Interim Compensation Period and $74,318.99 for reimbursement of expenses incurred in connection with the rendition of such services, for a total award of $1,046,631.49.

27.   Pursuant to the Interim Compensation Order, Milbank, absent objection within 20 days of submitting a fee statement, is entitled to 80% of the fees and 100% of the expenses sought in each of the Fifth Interim Fee Statements, prior to Court approval of such fees and expenses in connection with this Application.

28.  Milbank has received payments with respect to the Fifth Interim Fee Statements totaling $605,022.62.  Milbank has applied this payment to 80% of the fees and 100% of the expenses requested pursuant to the Sixteenth Fee Statement, Seventeenth Fee Statement and Eighteenth Fee Statement.[2]  Therefore, Milbank is seeking a total payment of $441,608.87 pursuant to this Application, representing the unpaid balance of 100% of fees and 100% of expenses for the Fifth Interim Compensation Period.[3]

29.  The fees sought by this Application reflect an aggregate of 2,045.70 hours of attorney and paraprofessional time spent and recorded in performing services for the Committee during the Fifth Interim Compensation Period, at a blended average hourly rate of $475.30 for both professionals and paraprofessionals.

30.  Milbank rendered to the Committee all services for which compensation is sought solely in connection with these cases in furtherance of the duties and functions of the Committee.

---

[2]    The deadline to object to the Nineteenth Fee Statement is December 4, 2006.

[3]    To the extent Milbank receives payment for any of the Fifth Interim Fee Statements prior to the hearing on this Application, Milbank will amend its request accordingly.

31.  Milbank maintains computerized records of the
time expended in rendering the professional services required by
the Committee.  These records are maintained in the ordinary
course of Milbank's business.  For the convenience of the Court
and parties in interest, a billing summary for the Fifth Interim
Compensation Period is attached as part of the cover sheet,
setting forth the name of each attorney and paraprofessional for
whose work on these cases compensation is sought, each
attorney's year of bar admission, the aggregate amount of time
expended by each attorney or paraprofessional, the hourly
billing rate for each attorney or paraprofessional at Milbank's
current billing rates and the individual amounts requested as
part of the total amount of compensation requested.  In
addition, set forth in the billing summary is additional
information indicating whether each attorney is a partner or
associate, the number of years each attorney has held such
position, and each attorney's area of concentration.  The
compensation requested by Milbank is based on the customary
compensation charged by comparably skilled practitioners in
cases other than cases under the Bankruptcy Code.

32.  Attached hereto as Exhibit A are time entry
records broken down in tenths of an hour by project category,
based on the U.S. Trustee Guidelines, setting forth a detailed
description of services performed by each attorney and

14

paraprofessional on behalf of the Committee for the Fifth
Interim Compensation Period.

     33.   Milbank also maintains computerized records of
all expenses incurred in connection with the performance of
professional services.  A summary of the amounts and categories
of expenses for which reimbursement is sought for the Fifth
Interim Compensation Period, as well as a breakdown of expenses
by project category and detailed descriptions of these expenses,
are attached hereto as <u>Exhibit B</u>.

### IV.   <u>SUMMARY OF PROFESSIONAL SERVICES RENDERED</u>

     34.   To provide an orderly summary of the services
rendered on behalf of the Committee by Milbank, and in
accordance with the U.S. Trustee Guidelines, Milbank has
established the following separate project billing categories in
connection with these cases:

(a)  Adequate Protection Issues and Litigation
(b)  Asset Sales
(c)  Automatic Stay Enforcement & Litigation
(d)  Business Plan Review and Analysis
(e)  Change of Control Transactions
(f)  Claims Analysis and Estimation
(g)  Committee Administration
(h)  Committee Meetings
(i)  Court Hearings
(j)  Customer Contracts & Programs
(k)  Debtor-in-Possession Meetings and Communications
(l)  DIP and Exit Financing
(m)  Disclosure Statement
(n)  Employee Issues
(o)  Environmental Issues
(p)  Equipment/Personal Property Leases
(q)  Exclusivity Issues

```
 (r)  Executory Contracts
 (s)  Fee Applications – Other
 (t)  File, Docket and Calendar Maintenance
 (u)  General Communications with Creditors
 (v)  Insurance Matters
 (w)  PACA
 (x)  Pension Issues
 (y)  Preparation of Milbank Fee Applications
 (z)  Real Property Leases
(aa)  Reclamation Issues
(bb)  Regulatory Issues
(cc)  Reorganization Plan
(dd)  Reporting Requirements
(ee)  Retention of Professionals
(ff)  Rule 2004 Examinations
(gg)  Secured Transactions
(hh)  Substantive Consolidation
(ii)  Tax Issues
(jj)  Travel Time
(kk)  Union Issues
(ll)  Utilities Advice
(mm)  Vendor Issues
(nn)  Voidable Transfers and other potential claims
(oo)  Venue Issues
(pp)  Equity Committee
(qq)  Fee Examiner Matters
```

35.  The following summary is intended to highlight a number of the services rendered by Milbank in the separate project billing categories where Milbank has expended a considerable number of hours on behalf of the Committee, and it is not meant to be a detailed description of all of the work performed.  Detailed descriptions of the day-to-day services provided by Milbank during the Fifth Interim Compensation Period and the time expended performing such services in each project billing category are fully set forth in Exhibit A hereto.  Such detailed descriptions show that Milbank was heavily involved in

the performance of services for the Committee on a daily basis, including night and weekend work, often under extreme time constraints to meet the needs of the Committee in these cases.

## A.    <u>Asset Sales</u>

36.    During the Fifth Interim Compensation Period, on behalf of the Committee, Milbank attorneys worked closely with the Committee's financial advisors and the Debtors' legal and financial advisors to negotiate enhanced asset sale values and transaction terms for the Debtors' estates in connection with sales of various store leases, warehouses, distribution centers and other assets.  During the Fifth Interim Compensation Period, Milbank attorneys (i) reviewed and analyzed the terms of the sale of the Debtors' Harahan distribution center, (ii) reviewed and analyzed the proposed sale of the Debtors' interests in certain stores, (iii) engaged in continual interaction with the Debtors regarding discrete asset sale issues that arose throughout the Fifth Interim Compensation Period through conference calls and other correspondence and (iv) informed the Committee of pending asset sales, analyzed the proposed transactions and recommended courses of action for the Committee.

## B.    <u>Claims Analysis & Estimation</u>

37.    During the Fifth Interim Compensation Period, Milbank attorneys reviewed and analyzed the Debtors' proposed

resolution of prepetition litigation claims in connection with the Debtors' court ordered claims resolution procedures.  In addition, Milbank attorneys monitored compliance with the claims resolution procedures.

38.    Furthermore, during the Fifth Interim Compensation Period, Milbank attorneys reviewed various requests to file late proofs of claim or motions to amend proofs of claim by certain claimants in these cases.  Milbank attorneys worked closely with Debtors' counsel to formulate appropriate responses to such requests.

**C.    Committee Administration**

39.    Milbank's attention to the Committee's organizational needs enabled the Committee to promptly complete the administrative matters that were necessary to the Committee's effective participation in these cases.  Throughout the Fifth Interim Compensation Period, Milbank attorneys counseled and advised the Committee regarding its statutory and fiduciary duties to the unsecured creditor body and the fiduciary obligations of the other parties in interest in general.

40.    Milbank prepared memoranda, and provided advice orally when time constraints so required, on the numerous pending issues arising in these cases.  Milbank analyzed issues and motions filed in the Debtors' cases and recommended action.

41.     Due to Milbank attorneys' experience in counseling various parties in interest in restructurings and bankruptcy cases, Milbank believes it provided and will continue to provide to the Committee a unique perspective and sophisticated understanding of all issues relating to the administration of the Debtors' cases.

**D.   Committee Meetings**

42.     Numerous issues arose during the Fifth Interim Compensation Period, including, among other things, issues relating to the Disclosure Statement and the Plan, requiring meetings of the Committee.  Committee meetings generally occur weekly via teleconference.  Milbank organized the Committee meetings by drafting agendas that included topics from all of the Committee's professionals and by distributing certain other materials for Committee members to review.  Milbank discussed with the Committee all significant matters arising in these cases during the Fifth Interim Compensation Period and assisted the Committee in formulating positions on issues as they arose.

43.     Through Committee meetings and conference calls, and numerous other communications with members of the Committee, Milbank has assisted the Committee in (i) fulfilling its obligations to unsecured creditors and (ii) making informed decisions regarding the numerous issues that have arisen in these cases.

**E.    Executory Contracts**

44.    During the Fifth Interim Compensation Period,
Milbank attorneys reviewed, analyzed and negotiated the terms
and conditions under which the Debtors sought to assume or
reject numerous executory contracts of the Debtors, including,
without limitation, employment, lease and supplier contracts.
Milbank attorneys engaged in extensive negotiations with counsel
to the Debtors over the terms and conditions of proposed
assumptions and rejections of executory contracts and worked
with the Committee's financial advisors to prepare memoranda for
the Committee regarding each set of contract assumptions or
rejections.

**F.    Disclosure Statement**

45.    During the Fifth Interim Compensation Period,
Milbank attorneys analyzed and reviewed the terms and conditions
of the Disclosure Statement and also negotiated revisions to the
Disclosure Statement.  Milbank attorneys prepared memoranda and
charts regarding issues relating to the Disclosure Statement and
objections that were filed to the Disclosure Statement.  In
connection with the Disclosure Statement hearing, Milbank
attorneys researched numerous legal and factual issues raised by
parties objecting to the Disclosure Statement.  Such research
was used during the hearing in support of Disclosure Statement
approval.  Additionally, Milbank attorneys prepared and filed a

letter in support of approving the Disclosure Statement and related Plan.

**G.    DIP And Exit Financing**

46.    During the Fifth Interim Compensation Period, Milbank attorneys negotiated, analyzed and reviewed the Debtors' commitment letter for exit financing in connection with their emergence from chapter 11.  Milbank attorneys prepared memoranda for the Committee regarding the proposed terms of the exit facility.  Additionally, Milbank attorneys reviewed and analyzed the Debtors' related proposal to enter into a post-effective date surety bond agreement and the related motion and order.

**H.    Employee Issues**

47.    During the Fifth Interim Compensation Period, Milbank attorneys spent time negotiating, analyzing and reviewing the terms and conditions of a proposed term sheet in connection with an employment agreement for the Debtors' Chief Executive Officer.  Milbank attorneys also began drafting an employment contract and related documents for the Chief Executive Officer based on the term sheet.  Additionally, Milbank attorneys negotiated and analyzed the proposed terms and conditions for the Debtors' management incentive program in connection with the Plan.

I.    **Substantive Consolidation**

48.    Milbank attorneys corresponded with and conferred in-person with the Debtors' legal and financial advisors and the Committee's financial advisors regarding substantive consolidation issues.  Additionally, Milbank attorneys reviewed and analyzed the ad hoc trade committee's motion to substantively consolidate the Debtors' estates and related discovery requests under Bankruptcy Rule 2004.  In connection with negotiating the settlement of substantive consolidation issues embodied in the Plan, Milbank attorneys were able to negotiate a consensual withdrawal of such motion and related discovery requests in connection with the settlement embodied in the Plan.

49.    Milbank attorneys also continued to work with members of the Committee (and certain of their professionals) and other constituencies, including the Debtors and other ad hoc committees, to gain broad based support for the settlement of substantive consolidation issues embodied in the Plan.

J.    **Reorganization Plan**

50.    During the Fifth Interim Compensation Period Milbank attorneys' devoted substantial amounts of time negotiating, commenting on, analyzing and reviewing the Plan. Milbank attorneys were actively engaged, with the Committee's other professionals, in analyzing the Debtors' proposed

framework for their chapter 11 plan as it progressed toward a confirmation hearing. Attorneys from Milbank met and had conference calls with the Debtors' advisors and their counsel numerous times to discuss the Debtors' chapter 11 plan proposals and the foundation and implementation of distributions under such proposals. Milbank provided regular updates to, and solicited feedback and direction from, the Committee throughout the plan development process. Throughout the process, Milbank was actively engaged in negotiating and formulating the substantive consolidation compromise embodied in the Plan, conducting extensive diligence, as well as analyzing the tax consequences of the Plan and engaging in negotiations regarding the terms of the Plan and related matters.

51. Moreover, Milbank worked closely with the Debtors, Debtors' professionals and the Committee's other professionals in the preparation and negotiation of the principal documents included in the plan supplement that would be filed in connection with the Plan. Milbank attorneys drafted and/or revised several documents and consulted with the Debtors on all plan supplement materials, including documents concerning: the registration rights agreement, reorganized Winn-Dixie Stores Inc, articles of incorporation and by-laws, and the Debtors' exit facility credit agreement.

23

52.     Milbank attorneys were continuously involved in the Plan confirmation process.  Milbank reviewed and assessed the Debtors' solicitation procedures, ballots for voting on the Plan and objections to confirmation of the Plan.  Milbank attorneys also negotiated a protective order with certain dissenting landlords in connection with producing certain confidential documents in connection with the confirmation hearing on the Plan.  Milbank also prepared memoranda for the Committee regarding issues arising in connection with confirmation of the Plan and worked with the Debtors and other constituents in preparing for the confirmation hearing on the Plan.

53.     Milbank further assisted the Committee by reviewing, analyzing and developing counter-arguments to objections to confirmation of the Plan.  Milbank reviewed and analyzed each of the objections including conducting extensive legal research.  Such research served as the foundation to oppose, negotiate and assist the Debtors in resolving several objections.  Moreover, Milbank attorneys coordinated with the Debtors' counsel in crafting responses to significant confirmation objections and in amending the Plan to reflect the resolution of objections and various other refinements incorporated into the Plan.

54.     Milbank attorneys assisted the Committee in reviewing, interviewing and selecting potential candidates for reorganized Winn-Dixie Stores, Inc.'s Board of Directors. Additionally, in connection with the Plan, Milbank continued to work with the Committee to investigate, among other things, whether any action or inaction by the Debtors' prepetition directors, officers, senior management, or professionals contributed to the filing of the chapter 11 case and/or if the estates have any potentially viable claims against these parties worth pursuing (the "Committee Investigation").  The Investigation included, without limitation, meeting with the Debtors' current senior management and requesting documents relevant to the Investigation.  Milbank attorneys drafted a report disclosing its findings from the Investigation, discussed its conclusions with the Committee and filed the report with the Court on June 29, 2006.

## V.     FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

55.     The factors to be considered in awarding attorneys fees as enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been adopted by most courts.[4]  Milbank respectfully submits that the

---

[4]     Grant v. Florida Power Corp. (In re American Fabricators, Inc.), 197 B.R. 987, 993-94 (Bankr. M.D. Fla. 1996) (adopting the First Colonial

consideration of these factors should result in this Court's allowance of the full compensation sought.

(A) <u>The Time and Labor Required</u>.  The professional services rendered by Milbank on behalf of the Committee have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

(B) <u>The Novelty and Difficulty of Questions</u>.  Novel and complex issues have arisen in the course of these chapter 11 cases, and it can be anticipated that other such issues will be encountered.  In these cases, as in many others in which the firm is involved, Milbank's effective advocacy and creative approach to problem solving have helped clarify and resolve difficult issues and will continue to prove beneficial.

(C) <u>The Skill Requisite to Perform the Legal Services Properly</u>.  Milbank believes that its recognized expertise in the area of financial restructuring, its ability to draw from highly experienced professionals in other areas of its practice such as structured finance, mergers and acquisitions, litigation, environmental and regulatory law and its practical

---

factors and noting that Fifth Circuit decisions before 1981 are binding precedent in the Eleventh Circuit).  The factors embraced by the Fifth Circuit in <u>First Colonial</u> were adopted by the Fifth Circuit's decision in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), except that <u>First Colonial</u> also included the "spirit of economy" as a factor which was expressly rejected by Congress in enacting section 330 of the Bankruptcy Code.  <u>Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)</u>, 127 F.3d 1398, 1403 (11th Cir. 1997).  The remaining <u>First Colonial</u> factors continue to apply to determine the reasonableness of fees awarded under the Bankruptcy Code.  3 <u>Collier on Bankruptcy</u> ¶ 330.04[3][c] (Lawrence P. King, <u>et al.</u>, eds., 15th ed. 1997).  In addition, a majority of the <u>First Colonial</u> factors are now codified in section 330(a)(3).  <u>Id.</u>

approach to the resolution of issues will help
maximize distributions to the Debtors' unsecured
creditors.

(D)    The Preclusion of Other Employment by Applicant Due to
       Acceptance of the Case.  Due to the size of Milbank's
       financial restructuring department and the firm as a
       whole, Milbank's representation of the Committee has
       not precluded the acceptance of new clients.  However,
       the number of matters needing attention on a
       continuous basis has required several of Milbank's
       attorneys to commit significant portions of their time
       to these cases.

(E)    The Customary Fee.  The compensation sought herein is
       based upon Milbank's normal hourly rates for services
       of this kind.  Milbank respectfully submits that the
       compensation sought herein is not unusual given the
       magnitude and complexity of these cases and the time
       dedicated to the representation of the Committee.
       Such compensation is commensurate with fees Milbank
       has been awarded in other cases, as well as with fees
       charged by other attorneys of comparable experience.

(F)    Whether the Fee is Fixed or Contingent.  Milbank
       charges customary hourly rates for the time expended
       by its attorneys and paraprofessionals in representing
       the Committee, and Milbank's fee is not outcome
       dependent.

(G)    Time Limitations Imposed by Client or Other
       Circumstances.  As stated above, Milbank has been
       required to attend to various issues as they have
       arisen in these cases.  Often, Milbank has had to
       perform these services under significant time
       constraints requiring attorneys and paraprofessionals
       assigned to these cases to work evenings and on
       weekends.

(H)    The Amount Involved and Results Obtained.  According
       to the Debtors, the Committee represents the interests
       of unsecured creditors holding unsecured claims
       estimated at well over $900 million dollars.  Through
       Milbank's efforts, the Committee has been an active
       participant in these chapter 11 cases.  The
       Committee's participation, with Milbank's counsel and
       guidance, has greatly contributed to the efficient

27

administration and prospects for reorganization of
these cases.

(I)  <u>The Experience, Reputation and Ability of the
     Attorneys</u>.  Milbank has a sophisticated and nationally
     recognized corporate reorganization and financial
     restructuring practice, and Milbank attorneys involved
     in this representation have played a major role in
     numerous complex restructurings including, for
     example, the chapter 11 cases of Enron Corp., Refco
     Inc., RCN Corp., Intermet Corp., Fruit of the Loom
     Inc., Adelphia Communications Corp., US Airways Group,
     Inc., Global Crossing Ltd., Fleming Companies, Inc.,
     Dairy Mart Convenience Stores, Inc., Lernout & Hauspie
     Speech Products N.V., Teligent, Inc., World Access,
     Inc., ORBCOMM Global, L.P., ICO Global Communications
     Inc., Safety-Kleen Corp., HomePlace Stores, Inc.,
     Hvide Marine, Inc., Sun TV and Appliances, Inc.,
     Seven-Up/RC Bottling Company of Southern California,
     Inc. and Ames Department Stores, Inc.  Milbank's
     experience enables it to perform the services
     described herein competently and expeditiously.

(J)  <u>The "Undesirability" of the Case</u>.  These cases are not
     undesirable but, as already indicated, have required a
     significant commitment of time from many of Milbank's
     attorneys.

(K)  <u>Nature and Length of Professional Relationship</u>.
     Milbank was selected as the Committee's counsel
     shortly after the Committee's formation, on March 1,
     2005, and was retained effective as of that date
     pursuant to an order of the Court dated April 12,
     2005.  Milbank has been rendering services
     continuously to the Committee since the Committee was
     formed, and Milbank has rendered such services in a
     necessary and appropriate manner.

## VI.  <u>ALLOWANCE OF COMPENSATION</u>

56.    The professional services rendered by Milbank

have required a high degree of professional competence and

expertise to address, with skill and dispatch, the numerous

issues requiring evaluation and action by the Committee.

Milbank respectfully submits that the services rendered to the Committee were performed efficiently, effectively and economically, and that the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditors as a whole and the Debtors' estates.

57.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> Any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

58.    With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person, "reasonable compensation for actual, necessary services rendered."  Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
> (B)    the rates charged for such services;
> (C)    whether the services were necessary to the administration of, or beneficial at

29

> the time at which the service was
> rendered toward the completion of, a
> case under this title;
>
> (D)    whether the services were performed
> within a reasonable amount of time
> commensurate with the complexity,
> importance, and nature of the problem,
> issue, or task addressed; and
>
> (E)    whether the compensation is reasonable
> based on the customary compensation
> charged by comparably skilled
> practitioners in cases other than cases
> under this title.

11 U.S.C. § 330(a)(3)(A).

59.    The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. In re Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("Congress determined, it appears, that on average the gain to the estate of employing able, experienced, expert counsel would outweigh the expense to the estate of doing so, and that unless the estate paid competitive [market] sums it could not retain such counsel on a regular basis.") (citations and quotations omitted).

60.    The total time spent by Milbank attorneys and paraprofessionals during the Fifth Interim Compensation Period was 2,045.70 hours and has a fair market value of $972,312.50. As shown by this Application and supporting exhibits, Milbank's services were rendered economically and without unnecessary duplication of efforts.  In addition, the work involved, and

thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.

## VII. **EXPENSES**

61.    Milbank has incurred a total of $74,318.99 in expenses in connection with representing the Committee during the Fifth Interim Compensation Period.  Milbank records all expenses incurred in connection with the performance of professional services.

62.    In connection with the reimbursement of expenses, Milbank's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients. The expenses charged to Milbank's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research and transcription costs.

63.    Milbank charges the Committee for these expenses at rates consistent with those charged to Milbank's other bankruptcy clients, which rates are equal to or less than the rates charged by Milbank to its non-bankruptcy clients.

64.     In providing or obtaining from third parties services which are reimbursable by clients, Milbank does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

65.     Milbank regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.

66.     Attorneys at Milbank have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of any air travel expenses in excess of coach fares.  Throughout the Fifth Interim Compensation Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII. NOTICE

67.     Pursuant to the Interim Compensation Order, notice of this Motion has been given to bankruptcy counsel to the Debtors, corporate counsel to the Debtors, counsel to the agent for the Debtor's post-petition secured lender, the United States Trustee, all other parties on the Debtors' Master Service List and all other parties not otherwise listed that have requested receipt of notices in these cases.  In light of the

nature of the relief requested herein, the Committee requests that such notice be deemed adequate and sufficient.

## IX.  CONCLUSION

WHEREFORE, Milbank respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit C, (a) allowing Milbank (i) interim compensation for professional services rendered as counsel for the Committee during the Fifth Interim Compensation Period in the amount of $972,312.50 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $74,318.99, for a total award of $1,046,631.49; (b) authorizing and directing the Debtors to pay to Milbank $441,608.87, which is an amount equal to the unpaid balance of fees and expenses incurred during the Fifth Interim Compensation Period; and (c) granting such further relief as is just.

Dated: November 21, 2006

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

By: /s/ Matthew S. Barr
    Matthew S. Barr (MB 9170)
    Michael E. Comerford (MC 7049)
    1 Chase Manhattan Plaza
    New York, New York 10005
    (212) 530-5000

    Co-counsel for Official
    Committee of Unsecured
    Creditors of Winn-Dixie Stores,
    Inc., et al.