**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | ) Case No. 05-03817-3F1 |
| | ) |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | ) *Chapter 11* |
| | ) |
| Reorganized Debtors. | ) Jointly Administered |
| | ) |

**<u>FINAL FORMS OF NEW WINN-DIXIE CHARTER AND NEW WINN-DIXIE BY-LAWS</u>**

        Winn-Dixie Stores, Inc. submits by attachment the final forms of the New Winn-Dixie Charter and the New Winn-Dixie By-Laws, as approved by Winn-Dixie Stores, Inc. and the Official Committee of Unsecured Creditors pursuant to Section 10.2 of the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors. The New Winn-Dixie Charter has been filed of record with the Office of the Secretary of State for the State of Florida.

Dated: November 22, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By ____*s/ D. J. Baker*____
    D. J. Baker
    Sally McDonald Henry
    Rosalie Walker Gray
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Counsel for the Reorganized Debtors

SMITH HULSEY & BUSEY

By ____*s/ Cynthia C. Jackson*____
    Stephen D. Busey
    James H. Post
    Cynthia C. Jackson (Bar # 498882)
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for the Reorganized Debtors

# NEW WINN-DIXIE CHARTER

AMENDED AND RESTATED ARTICLES OF INCORPORATION

OF

WINN-DIXIE STORES, INC.

Pursuant to Section 607.1008 of the Florida Business Corporation Act, Winn-Dixie Stores, Inc. hereby sets forth the following: (a) the name of the corporation is Winn-Dixie Stores, Inc. (the "Corporation"). The Corporation was incorporated by the filing of its original Articles of Incorporation with the Secretary of State of the State of Florida on December 24, 1928. Restated Articles of Incorporation of the Corporation were filed with the Secretary of State of the State of Florida on October 29, 1991; (b) the amendments reflected in the following Amended and Restated Articles of Incorporation both amend and restate the provisions of the Corporation's Restated Articles of Incorporation and were duly adopted pursuant to Section 607.1008 of the Florida Business Corporation Act in order, among other things, to put into effect and carry out the confirmation order entered on November 9, 2006 by the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, in the reorganization case styled *In re: Winn-Dixie, Inc., et al.*, Case No. 05-03817-3F1, which confirmed the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors, dated August 9, 2006, as modified, which order approved these Amended and Restated Articles of Incorporation; (c) the United States Bankruptcy Court for the Middle District of Florida has jurisdiction over the Corporation pursuant to the confirmation order and under Chapter 11 of Title 11 of the United States Code; and (d) the Articles of Incorporation of the Corporation are hereby amended and restated to read in their entirety as follows:

**FIRST:**

The name of the Corporation is WINN-DIXIE STORES, INC.

**SECOND:**

The purpose for which the Corporation is organized is to engage in any lawful business for which corporations may be organized under the Florida Business Corporation Act.

**THIRD:**

Section 1. Capital Stock.

The total number of shares which the Corporation is authorized to issue is 400,000,000 shares of common stock (the "Common Stock"), each having a par value of $0.001 per share. Shares of Common Stock may from time to time be issued for such consideration, payable in either cash or property (including shares of stock or other securities of the Corporation or any other corporation), labor or services, having a value as in the judgment of the Board of Directors shall be

at least equivalent to the full par value of the stock so issued, and all shares so issued and paid for shall thenceforth be fully paid and non-assessable. Except as to shareholders having some contractual right of subscription, no holders of Common Stock shall have any preemptive right, as such holders, to purchase, subscribe for or otherwise acquire any part of any new or additional issue of capital stock of any class whatsoever, or of securities convertible into capital stock of any class whatsoever, whether now or hereafter authorized, or whether issued for cash, property, labor or services.

Section 2. Restrictions on Transfer of Capital Stock.

(a) Certain Definitions.

As used in this Section 2:

"5-Percent Stockholder" means a "5-percent shareholder" of the Corporation as defined in Treasury Regulation Section 1.382-2T(g).

"Business Day" means any day, other than a Saturday, Sunday or day on which banks located in New York, New York, are authorized or required by law to close.

"Completion" occurs, and a Transfer is "Completed," when all steps have been taken to effect the Transfer of beneficial ownership.

"Distribution Date" means the Distribution Date as defined in the Plan.

"Effective Date" means November 21, 2006.

"Entity" means an entity within the meaning of Treasury Regulation Section 1.382-3(a)(1).

"IRC" means the Internal Revenue Code of 1986, as amended from time to time.

"Notice Date" means the first testing date (as described in Treasury Regulation Section 1.382-2(a)(4)) on which the aggregate Percentage Stock Increases are equal to or greater than the Threshold Percentage less ten (10) percentage points.

"Percentage Stock Increase" means the increase in the Percentage Stock Ownership of Common Stock by a 5-Percent Stockholder (other than a Public Group segregated under Treasury Regulation Section 1.382-2T(j)(2)) over the lowest Percentage Stock Ownership of Common Stock by such 5-Percent Stockholder at any time since the Effective Date. For this purpose, Treasury Regulation Section 1.382-2T(g)(5)(i)(A) shall apply in determining the Percentage Stock Increase of any 5-Percent Stockholder. Notwithstanding anything to the contrary, "Percentage Stock Increase" shall not include any increase in the Percentage Stock Ownership of Common Stock by a 5-Percent Stockholder if such increase would have the effect of duplicating either a prior Percentage Stock Increase since the Effective Date or Percentage Stock Ownership that reduced the Threshold Percentage at the Effective Date.

2

"Percentage Stock Ownership" means percentage stock ownership of Common Stock determined in accordance with the Treasury Regulations under Section 382 of the IRC.

"Plan" means the Joint Plan of Reorganization of the Corporation and Affiliated Debtors, dated August 9, 2006.

"Prohibited Transfer" means a purported Substantial Stockholder Transfer, but only to the extent that such Transfer is null and void *ab initio* under paragraph (b) or (c) of this Section 2.

"Public Group" means a public group as defined in Treasury Regulation Section 1.382-2T(f)(13).

"Restriction Notice" means a written notice provided by the Corporation to a potential Transferee, prior to 5:00 p.m. (New York time) on the fifth (5th) Business Day following the day of receipt by the Corporation of a Transfer Notice, which written notice states that the Corporation believes that the Restriction Period either has or has not commenced and, if it has, the Termination Date has or has not occurred.

"Restriction Period" means the period:

(i) beginning on the earliest testing date (as described in Treasury Regulation Section 1.382-2(a)(4)), following the Effective Date, on which the aggregate Percentage Stock Increases of all 5-Percent Stockholders on such testing date (taking into account all pending Transfers) equals or exceeds the Threshold Percentage; and

(ii) ending on the earlier of (A) the day that is forty-five (45) days after the second anniversary of the Effective Date (or, if earlier, the day after the second anniversary of the initial Distribution Date pursuant to the Plan) and (B) the earliest date on which the Board of Directors determines that (a) the consummation of the Plan did not satisfy the requirements of Section 382(1)(5) of the IRC, (b) treatment under Section 382(1)(5) of the IRC is not in the best interests of the Corporation, its affiliates and its shareholders, taking into account all relevant facts and circumstances, including, without limitation, the market and other impact of maintaining these Transfer restrictions herein, (c) an ownership change (within the meaning of Section 382 of the IRC) would not result in a substantial limitation on the ability of the Corporation (or a direct or indirect subsidiary of the Corporation) to use otherwise available Tax Benefits or (d) no significant value attributable to Tax Benefits would be preserved by continuing the Transfer restrictions herein (the earliest of the dates described in this clause (ii) being hereafter referred to as the "Termination Date").

The Board of Directors promptly shall determine, in its sole discretion, whether it is more likely than not that the consummation of the Plan will satisfy the requirements of Section 382(1)(5) of the IRC.

"Substantial Stockholder" means an individual or Entity that acquires or, if the Transfer Restrictions or Notice Restrictions are then applicable, that purports to acquire direct beneficial ownership of Common Stock in a Substantial Stockholder Transfer.

"Substantial Stockholder Transfer" means a Transfer that results in a Percentage Stock Increase or, if the Transfer Restrictions and Notice Restrictions are then applicable, that would result in a Percentage Stock Increase if it occurred and were not void *ab initio*, in each case other than a Transfer that the Board of Directors has affirmatively determined shall not be a Substantial Stockholder Transfer.

"Tax Benefits" means net operating loss carryovers (within the meaning of Section 172 of the IRC) and net unrealized built-in loss (within the meaning of Section 382(h)(3)(A)(i) of the IRC).

"Threshold Percentage" means 35% minus the Percentage Stock Ownership on the Effective Date by 5-Percent Stockholders other than any direct public group (described in Treasury Regulation Section 1.382-2T(j)(1)(iv)(C)) of the Corporation.

"Transfer" means any direct or indirect sale, transfer, exchange, issuance, grant, redemption, repurchase, assignment, conveyance or other disposition for consideration, whether voluntary or involuntary, and whether by operation of law or otherwise, but not including an issuance, grant, redemption or repurchase of Common Stock. A Transfer also shall include the grant or transfer of an option (other than by the Corporation), but only if the option would be deemed exercised pursuant to Treasury Regulation Section 1.382-4(d)(2)(i)(A) in connection with such grant or transfer.

"Transferee" means any individual or Entity to whom direct beneficial ownership of Common Stock is Transferred and who is, or would become as a result of such Transfer, a Substantial Stockholder.

"Transfer Notice" means a written notice provided by a Substantial Stockholder to the Corporation, at least seven (7) and not more than twelve (12) Business Days prior to Completion of a potential Substantial Stockholder Transfer, which notice states (i) the name, address, facsimile number and e-mail address, and Percentage Stock Ownership of the Substantial Stockholder prior to the Substantial Stockholder Transfer, (ii) if known to the Substantial Stockholder, the name and address of the transferor, (iii) the number of shares subject to the Substantial Stockholder Transfer, and (iv) the proposed date of Completion of the Substantial Stockholder Transfer. For purposes of this definition, if a Substantial Stockholder does not exist with respect to a Substantial Stockholder Transfer, then the Transfer Notice shall be provided by the individual or Entity that purports to engage in the Transfer that will cause the Substantial Stockholder Transfer.

"Treasury Regulation" means a Treasury Regulation promulgated under the IRC.

(b) Transfer Restrictions.

A Substantial Stockholder Transfer that is Completed during the Restriction Period shall be null and void *ab initio* and shall not be effective to Transfer Common Stock, but only to the minimum extent necessary to prevent the Transfer from being a Substantial Stockholder Transfer (the "Transfer Restrictions"). The Transfer Restrictions shall not (i) apply to Transfers pursuant to

4

a tender offer to purchase Common Stock, <u>provided</u>, that such tender offer results in the acquisition of beneficial ownership of Common Stock by any person or group, which, when combined with the Common Stock beneficially owned by such person or group represents more than 50% of the voting power represented by all then-outstanding Common Stock (without regard to tenders during any subsequent offering period), or (ii) preclude the settlement of a transaction entered into through the facilities of any national securities exchange or any national securities quotation system, <u>provided</u>, that if the settlement of the transaction would result in a Prohibited Transfer, such Transfer shall nonetheless be a Prohibited Transfer.  With respect to a transaction entered into through the facilities of any national securities exchange or any national quotation system, the sole remedy pursuant to this paragraph (b) of Section 2 shall be recovery of the Prohibited Transfer as described in paragraph (d) of Section 2. The terms "group" and "beneficial ownership" (and terms of like effect) used in this paragraph shall have the meanings ascribed to them in Section 13(d) of the Securities Exchange Act of 1934, as amended, and Regulation 13D-G thereunder.

(c) Notice and Permitted Transfers.

No Transfer Notice is required for Transfers that occur prior to issuance by the Corporation of the Notice Date Press Release (as defined below). A Substantial Stockholder Transfer that is Completed after the Corporation issues the Notice Date Press Release shall be null and void *ab initio* unless a Transfer Notice is provided to the Corporation (the "Notice Restriction"). If the Corporation receives a Transfer Notice on a day that is not in the Restriction Period (taking into account all prior Transfers (i) for which a previous Transfer Notice was received by the Corporation, (ii) for which a Schedule 13D or Schedule 13G was theretofore filed, or (iii) of which the Corporation was otherwise previously aware) and the Transfer Notice references a Substantial Stockholder Transfer that, upon Completion, would cause the Restriction Period to commence, such Transfer shall be treated as a Prohibited Transfer to the minimum extent necessary for the Restriction Period not to commence. If the Corporation receives more than one such Transfer Notice on the same day, the Transfers referenced in such Transfer Notices shall be treated as Prohibited Transfers to the minimum extent necessary for the Restriction Period not to commence, and the amount of the Common Stock referenced in each Transfer Notice that is treated as Prohibited Stock shall be in proportion to the amounts of Common Stock referenced in each such Transfer Notice. The Corporation shall provide a Restriction Notice to each Substantial Stockholder that files a Transfer Notice. The determination of whether a Transfer referenced in a Transfer Notice is a Prohibited Transfer is made on the date the Transfer Notice is received by the Corporation. From and after receipt of a Transfer Notice, until Completion of the Transfer described in the Transfer Notice (and thereafter to the extent such Transfer is Completed and is not a Prohibited Transfer), the determination of whether the Restriction Period has commenced with respect to any other Transfer (i) for which a Transfer Notice was not theretofore received by the Corporation, (ii) for which a Schedule 13D or Schedule 13G was not theretofore filed, or (iii) of which the Corporation was not otherwise previously aware, shall be made by taking into account the Percentage Stock Increase referenced in such Transfer Notice (or if Completion has occurred, the Percentage Stock Increase that resulted from that part of the Transfer referenced in such Transfer Notice that was not a Prohibited Transfer).

(d) Recovery of Prohibited Transfer.

The Corporation may institute legal proceedings to force rescission of a Prohibited Transfer. Notwithstanding the preceding sentence, the sole remedy with respect to a Prohibited Transfer entered into through the facilities of any national securities exchange or any national securities quotation system shall be as provided below in this paragraph (d) of Section 2. Upon written demand by the Corporation, the purported Transferee or member of a Prohibited Party Group (as defined below) with respect to a Prohibited Transfer shall deliver or cause to be delivered to an agent designated by the Board of Directors (the "Securities Transfer Agent"), all certificates and other evidences of ownership of the Common Stock that is the subject of the Prohibited Transfer (the "Prohibited Stock"), together with any dividends or other distributions that were received from the Corporation with respect to such Prohibited Stock ("Prohibited Distributions"). The Securities Transfer Agent promptly shall sell the Prohibited Securities to one or more buyers. Disposition of Prohibited Stock by the Securities Transfer Agent pursuant to this paragraph (d) of Section 2 shall be deemed to occur simultaneously with the Prohibited Transfer to which the Prohibited Stock relates. The Securities Transfer Agent shall not act or be treated as acting as an agent for or on behalf of the purported Transferee or Prohibited Party Group or for or on behalf of the Corporation and shall have no right to bind any of them, in contract or otherwise, but shall act only to carry out the ministerial functions assigned to it in these Transfer Restrictions. If a purported Transferee or member of a Prohibited Party Group has resold Prohibited Stock before receiving the Corporation's demand to surrender the Prohibited Stock to the Securities Transfer Agent, the purported Transferee or member of a Prohibited Party Group shall be deemed to have sold the Prohibited Stock on behalf of the Securities Transfer Agent and shall be required to transfer to the Securities Transfer Agent any Prohibited Distributions and the proceeds of such sale of Prohibited Stock. If a purported Transferee or member of a Prohibited Party Group fails to surrender Prohibited Stock or proceeds of a sale of Prohibited Stock to the Securities Transfer Agent, together with any Prohibited Distributions, within three (3) Business Days from the date the Corporation makes a demand for surrender of such Prohibited Stock, the Corporation may institute legal proceedings to compel such surrender. If a Prohibited Transfer occurs, but does not result from a Transfer of direct beneficial ownership of Common Stock, each individual or Entity whose ownership of Common Stock is attributed to the 5-Percent Stockholder that had a Percentage Stock Increase (collectively, the "Prohibited Party Group") shall be required to deliver, and shall be deemed to have delivered to the Securities Transfer Agent, prior to the Transfer, a sufficient number of shares of Common Stock (which Common Stock shall be so delivered in the inverse order in which it was acquired by members of the Prohibited Party Group) to cause the Transfer, following such delivery, not to be a Prohibited Transfer.

(e) Treatment of Prohibited Transfers.

No employee or agent of the Corporation shall record any Prohibited Transfer and the purported Transferee shall not be recognized as a shareholder of Prohibited Stock for any purpose whatsoever and shall not be entitled, with respect to such Prohibited Stock, to any rights of a shareholder of the Corporation, including, without limitation, the right to vote such Prohibited Stock or to receive dividend distributions, whether liquidating or otherwise, in respect thereof.

Once Prohibited Stock has been acquired in a Transfer that is not a Prohibited Transfer, the Prohibited Stock shall cease to be Prohibited Stock.

(f) Proceeds of Prohibited Transfers.

The Securities Transfer Agent shall apply any proceeds of a sale by it of Prohibited Stock (or, if the purported Transferee resold the Prohibited Stock before the Securities Transfer Agent could recover the Prohibited Stock from the Purported Transferee, the proceeds from such resale of Prohibited Stock by the Purported Transferee), as follows: (i) first, to reimburse itself for its costs and expenses in connection with its duties as Securities Transfer Agent hereunder; (ii) second, from such proceeds as well as other funds available in the Prohibited Transfers Fund, to reimburse the purported Transferee for the amounts paid by the purported Transferee for the Prohibited Stock, and (iii) third, to pay any remaining balance of such proceeds into a fund (the "Prohibited Transfers Fund") that will hold all excess proceeds from sales of Prohibited Stock. The Securities Transfer Agent shall be the disbursing agent of the Prohibited Transfers Fund, and such fund shall be used to reimburse purported Transferees for the amounts paid by the purported Transferees for Prohibited Stock. At the end of the Restriction Period, any remaining amounts in the Prohibited Transfers Fund shall be paid to the U.S. Treasury Department.

(g) Amendment of Transfer Restrictions.

An affirmative vote of the holders of two-thirds of the outstanding Common Stock of the Corporation shall be required to amend this Section 2 of Article THIRD if such amendment would impose additional restrictions, burdens or requirements on any Transfer of Common Stock.

(h) Legend on Certificates.

All certificates reflecting the Common Stock of the Corporation on or after the Effective Date shall, until the end of the Restriction Period, bear a conspicuous legend in substantially the following form:

THE TRANSFER OF THE SECURITIES REPRESENTED HEREBY IS SUBJECT TO RESTRICTION PURSUANT TO ARTICLE THIRD OF THE AMENDED AND RESTATED ARTICLES OF INCORPORATION OF THE CORPORATION, AS AMENDED AND IN EFFECT FROM TIME TO TIME, A COPY OF WHICH MAY BE OBTAINED FROM THE CORPORATION UPON REQUEST.

(i) Press Releases.

By the fifth (5th) Business Day after this Section 2 of Article THIRD first becomes effective and within ten (10) Business Days after the end of each calendar year, the Corporation shall issue a press release stating the number of outstanding shares of Common Stock to be taken into account in making all calculations of Percentage Stock Ownership for purposes of this Section 2 of Article THIRD.

Within five (5) Business Days after the Corporation determines that the Notice Date has occurred, the Corporation shall issue a press release stating that fact and stating that the Transfer Notice requirements of this Section 2 of Article THIRD have therefore become operative (the "Notice Date Press Release").

Within five (5) Business Days after the Corporation determines that the Restriction Period has commenced, the Corporation shall issue a press release stating such fact.

(j) Administration of Transfer Restrictions.

The Board of Directors of the Corporation shall have the power to determine, in its sole discretion, all matters related to this Section 2 of Article THIRD, including matters necessary or desirable to administer or to determine compliance with this Section 2 of Article THIRD.

(k) Notice.

All notices and other communications provided for under this Article THIRD shall be in writing and shall be delivered by overnight courier service, faxed, or e-mailed, if to the Corporation, by overnight delivery to its address at 5050 Edgewood Court, Jacksonville, Florida 32203-0927, attention: Corporate Secretary, with a copy to Vice President, Tax, by confirmed facsimile, to facsimile number 904-783-5651 to the attention of Larry Appel, Corporate Secretary, and if to a Substantial Stockholder, by overnight delivery, confirmed facsimile or e-mail to the address, facsimile number or e-mail address set forth in its Transfer Notice. All such notices shall be deemed given when received by the Corporation or Substantial Stockholder, as the case may be.

Section 3. Limitation on Issuance of Non-Voting Equity Securities

Pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), the Corporation will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Corporation); provided, however, that this provision (i) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Corporation or any of its wholly-owned subsidiaries, and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

**FOURTH:**

The amount of capital with which this Corporation will begin business shall be $1,000.00.

**FIFTH:**

The Corporation is to have perpetual existence.

## SIXTH:

The registered and principal office of the Corporation shall be located at 5050 Edgewood Court, in the City of Jacksonville, County of Duval, State of Florida.

## SEVENTH:

The indemnification provided under this Article SEVENTH shall be subject to, and limited by, Section 7.11 below.

Section 7.1 <u>Obligation to Indemnify in Actions, Suits or Proceedings other than Those by or in the Right of the Corporation</u>. The Corporation shall indemnify to the fullest extent permitted by law any person who was or is a director, officer or key employee (as such key employees are designated by the Chief Executive Officer and the Board of Directors) of the Corporation and was or is a party to any proceeding (other than an action by, or in the right of, the Corporation) by reason of the fact that he or she is or was a director, officer or key employee (as such key employees are designated by the Chief Executive Officer and the Board of Directors) of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against liability incurred in connection with such proceeding, including any appeal thereof, if he or she acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the Corporation and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful. The termination of any proceeding by judgment, order, settlement or conviction or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in, or not opposed to, the best interests of the Corporation or, with respect to any criminal action or proceeding, had reasonable cause to believe that his or her conduct was unlawful.

Section 7.2 <u>Obligation to Indemnify in Actions, Suits or Proceedings by or in the Right of the Corporation</u>. The Corporation shall indemnify to the fullest extent permitted by law any person who was or is a director, officer or key employee (as such key employees are designated by the Chief Executive Officer and the Board of Directors) and was or is a party to any proceeding by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that such person is or was a director, officer or key employee (as such key employees are designated by the Chief Executive Officer and the Board of Directors) of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses and amounts paid in settlement not exceeding, in the judgment of the Board of Directors, the estimated expense of litigating the proceeding to conclusion, actually and reasonably incurred in connection with the defense or settlement of such proceeding, including any appeal thereof. Such indemnification shall be authorized if such person acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the Corporation, except that no indemnification shall be made under this Section 7.2 in respect of any claim, issue, or matter as to which such person shall have been adjudged to be liable unless, and only to the extent that, the court in which such proceeding was brought, or any other court of competent jurisdiction, shall determine upon

application that, despite the adjudication of liability but in view of all circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which such court shall deem proper.

Section 7.3 <u>Successful Defense of Proceedings</u>. To the extent that a director, officer or key employee of the Corporation has been successful on the merits or otherwise in defense of any proceeding referred to in Section 7.1 or Section 7.2, or in defense of any claim, issue, or matter therein, he or she shall be indemnified against expenses actually and reasonably incurred by him or her in connection therewith.

Section 7.4 <u>Authorization of Indemnification</u>. Any indemnification under Section 7.1 or Section 7.2, unless pursuant to a determination by a court, shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of the director, officer or key employee is proper in the circumstances, because he or she has met the applicable standard of conduct set forth in Section 7.1 or Section 7.2. Such determination shall be made:

(a) By the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to such proceeding;

(b) If such a quorum is not obtainable or, even if obtainable, by majority vote of a committee duly designated by the Board of Directors (in which directors who are parties may participate) consisting solely of two (2) or more directors not at the time parties to the proceeding;

(c) By independent legal counsel:

(i) Selected by the Board of Directors prescribed in paragraph (a) or the committee prescribed in paragraph (b); or

(ii) If a quorum of the directors cannot be obtained for paragraph (a) and the committee cannot be designated under paragraph (b), selected by majority vote of the full Board of Directors (in which directors who are parties may participate); or

(d) By the shareholders by a majority vote of a quorum consisting of shareholders who were not parties to such proceeding or, if no such quorum is obtainable, by a majority vote of shareholders who were not parties to such proceeding.

Section 7.5 <u>Authorization of Expenses</u>. Evaluation of the reasonableness of expenses and authorization of indemnification shall be made in the same manner as the determination that indemnification is permissible. However, if the determination of permissibility is made by independent legal counsel, persons specified by Section 7.4(c) shall evaluate the reasonableness of expenses and may authorize indemnification.

Section 7.6 <u>Expenses Payable in Advance</u>. Expenses incurred by an officer or director in defending a civil or criminal proceeding may be paid by the Corporation in advance of the final disposition of such proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if he or she is ultimately found not to be entitled to indemnification by

the Corporation pursuant to this Article SEVENTH. Expenses incurred by other employees and agents may be paid in advance upon such terms or conditions that the Board of Directors deems appropriate.

Section 7.7 Nonexclusivity of Indemnification and Advancement of Expenses. The indemnification and advancement of expenses provided pursuant to this Article are not exclusive, and the Corporation may make any other or further indemnification or advancement of expenses of any of its directors, officers or key employees under any by-law, agreement, vote of shareholders or disinterested directors, or otherwise, both as to action in his or her official capacity and as to action in another capacity while holding such office. However, indemnification or advancement of expenses shall not be made to or on behalf of any director, officer or key employee if a judgment or other final adjudication establishes that his or her actions, or omissions to act, were material to the cause of action so adjudicated and constitute:

(a) A violation of the criminal law, unless the director, officer or key employee had reasonable cause to believe his or her conduct was lawful or had no reasonable cause to believe his or her conduct was unlawful;

(b) A transaction from which the director, officer or key employee derived an improper personal benefit;

(c) In the case of a director, a circumstance under which the liability provisions of Section 607.0834 of the Florida Business Corporation Act, are applicable; or

(d) Willful misconduct or a conscious disregard for the best interests of the Corporation in a proceeding by or in the right of the Corporation to procure a judgment in its favor or in a proceeding by or in the right of a shareholder.

Section 7.8 Survival of Indemnification and Advancement of Expenses. Indemnification and advancement of expenses as provided in this Article SEVENTH shall continue as, unless otherwise provided when authorized or ratified, to a person who has ceased to be a director, officer or key employee and shall inure to the benefit of the heirs, executors, and administrators of such a person, unless otherwise provided when authorized or ratified.

Section 7.9 Certain Definitions. For purposes of this Article, the term "corporation" includes, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger, so that any person who is or was a director, officer, employee, or agent of a constituent corporation, or is or was serving at the request of a constituent corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise, is in the same position under this Article with respect to the resulting or surviving corporation as he or she would have with respect to such constituent corporation if its separate existence had continued.

Additionally, for purposes of this Article:

(a) The term "other enterprises" includes employee benefit plans;

(b) The term "expenses" includes counsel fees, including those for appeal;

(c) The term "liability" includes obligations to pay a judgment, settlement, penalty, fine (including an excise tax assessed with respect to any employee benefit plan), and expenses actually and reasonably incurred with respect to a proceeding;

(d) The term "proceeding" includes any threatened, pending, or completed action, suit, or other type of proceeding, whether civil, criminal, administrative, or investigative and whether formal or informal;

(e) The term "agent" includes a volunteer;

(f) The term "serving at the request of the corporation" includes any service as a director, officer or key employee of the Corporation that imposes duties on such persons, including duties relating to an employee benefit plan and its participants or beneficiaries; and

(g) The term "not opposed to the best interest of the Corporation" describes the actions of a person who acts in good faith and in a manner he or she reasonably believes to be in the best interests of the participants and beneficiaries of an employee benefit plan.

Section 7.10 Insurance. The Corporation shall have the power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee, or agent of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity or arising out of his or her status as such, whether or not the Corporation would have the power to indemnify him or her against such liability under the provisions of this Article.

Section 7.11 Certain Limitations. Notwithstanding any other provision of this Article SEVENTH, the Corporation shall have no obligation to indemnify any person for claims arising before February 21, 2005 or for claims resulting from gross negligence, willful misconduct, breach of fiduciary duty or intentional tort arising after February 21, 2005 but before November 9, 2006. Notwithstanding any other provision of this Article SEVENTH, the Corporation shall only be required to indemnify its directors, officers or key employees (as such key employees are designated by the Chief Executive Officer and the Board of Directors) who serve in such capacity on or after February 21, 2005.

Section 7.12 Director and Officer Liability. To the fullest extent permitted by law, no director or officer shall be personally liable for claims for monetary damages, arising as of or after November 21, 2006, to the Corporation or any other person resulting from a breach of fiduciary duty. If the Florida Business Corporation Act is amended after the adoption of these Amended and Restated Articles of Incorporation to authorize corporate action further eliminating or limiting the

personal liability of directors or officers, then the liability of a director or officer of the Corporation, in addition to the limitation on personal liability provided herein, shall be limited to the fullest extent permitted by such law, as so amended. Any repeal or modification of this Article SEVENTH by the shareholders of the Corporation shall be prospective only, and shall not adversely affect any limitation on the personal liability of a director or officer of the Corporation existing at the time of such repeal or modification.

### EIGHTH:

Additional provisions for the regulation of the business and for the conduct of the affairs of the Corporation are as follows:

(a) The Board of Directors shall consist of a minimum of seven (7) and a maximum of twelve (12) members. At each Annual Meeting of Shareholders, the directors shall be elected for one (1) year terms and until their successors shall be duly elected and qualified. The number of directors shall be fixed by the Board of Directors.

The shareholders may remove one or more directors with or without cause. If a director is elected by a voting group of shareholders, only the shareholders of that voting group may participate in the vote to remove him or her. A director may be removed only if the number of votes cast to remove the director exceeds the number of votes cast not to remove him or her. A director may be removed by the shareholders at a meeting of shareholders, provided the notice of the meeting states that the purpose, or one of the purposes, of the meeting is removal of the director.

(b) Any action required or permitted to be taken by the shareholders of the Corporation must be effected at a duly convened Annual Meeting or Special Meeting of Shareholders of the Corporation, and the ability of the shareholders to consent in writing to the taking of any action is hereby specifically denied.

(c) In furtherance and not in limitation of the powers conferred by the laws of the State of Florida, the Board of Directors is expressly authorized to make and alter the By-Laws. In the case of any inconsistencies between the Articles of Incorporation and the By-Laws, the Articles of Incorporation shall control.

(d) The Board of Directors shall determine from time to time whether, and if allowed, when and under what conditions and regulations the accounts and books of the Corporation, or any of them, shall be open to the inspection of the shareholders. No shareholder shall have any right to inspect any book or document of the Corporation except as such right may be conferred by the laws of the State of Florida or as may be authorized by the Board of Directors.

(e) If the By-Laws so provide, the shareholders and directors shall have power to hold their meetings outside of the State of Florida at such places as may from time to time be designated by them.

(f) The Corporation may in its By-Laws confer powers additional to the foregoing upon the directors, in addition to the powers and authorities expressly conferred upon them by law.

(g) Special meetings of the shareholders may be called at any time by the Chairman of the Board, or by the Board of Directors. The Corporation shall hold a Special Meeting of Shareholders if the holders of not less than thirty percent (30%) of all votes entitled to vote on any issue proposed to be considered at the proposed special meeting shall sign, date and deliver to the Corporation's Secretary one or more written demands for the meeting describing the purpose or purposes for which it is to be held. Only business within the purpose or purposes described in the special meeting notice may be conducted at a special shareholders' meeting. Within thirty (30) days of receipt of such written demand, as provided in this Article EIGHTH, paragraph (g), the Secretary will issue notice calling for a special meeting of the shareholders to be held within thirty (30) days of such notice.

(h) The Corporation reserves the right to amend the Amended and Restated Articles of Incorporation of the Corporation in the manner prescribed by applicable law, provided, however, that the Board of Directors shall only be permitted to effect the amendments described in Section 607.1002 (1) through (8) of the Florida Business Corporation Act without the affirmative vote of a majority of the holders of Common Stock issued and outstanding and entitled to vote at any regular or special meeting of shareholders.

IN WITNESS WHEREOF, the undersigned has executed these Amended and Restated Articles of Incorporation this  21st day of November, 2006.

**Winn-Dixie Stores, Inc.**

By ___/s/ Larry Appel_____
Name: Larry Appel
Title:   Senior Vice President

# NEW WINN-DIXIE BY-LAWS

Amended and Restated
Effective November 21, 2006

AMENDED AND RESTATED BY-LAWS

OF

WINN-DIXIE STORES, INC.

\* \* \* \* \* \* \* \*

**ARTICLE I**

**Offices**

Section 1.1 <u>Registered Office and Principal Office</u>: The registered office and principal office of the Corporation shall be located at 5050 Edgewood Court, in the City of Jacksonville, County of Duval, State of Florida, or at such place or places as the Board of Directors may from time to time designate or the business of the Corporation may require.

Section 1.2 <u>Registered Agent</u>: The registered agent of the Corporation shall be located at the registered office of the Corporation in the State of Florida and shall be designated by resolution of the Board of Directors.

Section 1.3 <u>Other Offices</u>: The Corporation may have other offices, either within or outside of the State of Florida, at such place or places as the Board of Directors may from time to time designate or the business of the Corporation may require.

**ARTICLE II**

**Seal**

Section 2.1 <u>Seal</u>: The corporate seal shall be circular in form and shall have inscribed thereon the name of the Corporation, the year of its incorporation (1928) and the words "Corporate Seal, Florida."

Section 2.2 <u>Seal Custodian</u>: The Secretary shall be the custodian of the Seal and shall affix the same to all writings and documents requiring the Seal of the Corporation as authorized by the Board of Directors.

1

# ARTICLE III

## Meetings of Shareholders

Section 3.1 <u>Place of Meetings</u>: All meetings of the shareholders shall be held at the principal office of the Corporation in the City of Jacksonville, County of Duval, State of Florida, or at such other place, within or without the State of Florida, as may be designated by the Board of Directors and stated in the notice of meeting.

Section 3.2 <u>Annual Meetings</u>: The Annual Meeting of Shareholders shall be held at such time and on such date as the Board of Directors may determine, for the election of directors annually and for the transaction of such other business as may properly be brought before the meeting.

The directors elected at the Annual Meeting shall be elected by plurality vote of the shareholders entitled to vote and present or duly represented at such meeting.

Section 3.3 <u>Special Meetings</u>: Special meetings of the shareholders may be called at any time by the Chairman of the Board or by the Board of Directors. The Corporation shall hold a Special Meeting of Shareholders if the holders of not less than thirty percent (30%) of all votes entitled to vote on any issue proposed to be considered at the proposed Special Meeting shall sign, date and deliver to the Corporation's Secretary one or more written demands for the meeting describing the purpose or purposes for which it is to be held. Only business within the purpose or purposes described in the Special Meeting notice may be conducted at a special shareholders' meeting. Within thirty (30) days of receipt of such written demand, as provided in this Section 3.3, the Secretary will issue notice calling for a special meeting of the shareholders to be held within thirty (30) days of such notice.

Section 3.4 <u>Notice</u>: The Secretary shall notify shareholders of the date, time and place of the Annual Meeting no fewer than ten (10) or more than sixty (60) days before the meeting date, and shall send each holder of record of stock entitled to vote at such meeting, at such shareholder's address as it appears in the Corporation's current record of shareholders, a notice of such Annual Meeting, by mail with postage prepaid, or, if authorized by the shareholder, by electronic means, stating the time and place of such meeting. A similar notice shall be given by the Secretary of all Special Meetings, and in addition to the requirements for notice of Annual Meeting, the notice for Special Meetings shall include a description of the purpose or purposes for which the meeting is called.

Section 3.5 <u>Waiver of Notice</u>: A shareholder may waive notice of any meeting before or after the date and time stated in the notice. The waiver must be in writing, signed by the shareholder and delivered to the Corporation for inclusion in the minutes or filing with the corporate records. A shareholder's attendance, in person or by proxy, at a meeting (a) waives objection to lack of notice or defective notice of the meeting, unless the shareholder at the beginning of the meeting objects to holding the meeting or transacting business at the meeting or (b) waives objection to consideration of a particular matter at the meeting that is not within the

2

purpose or purposes described in the meeting notice, unless the shareholder objects to considering the matter when it is presented.

Section 3.6 Quorum: The holders of a majority of the issued and outstanding shares of Capital Stock of the Corporation entitled to vote at the meeting, represented in person or by proxy, shall constitute a quorum for the transaction of business at all meetings of the shareholders, except as may be otherwise provided by law or the Articles of Incorporation. The holders of a majority of shares represented, and who would be entitled to vote at a meeting if a quorum were present, where a quorum is not present, may adjourn such meeting from time to time.

Once a share is represented for any purpose at the meeting, it is deemed present for quorum purposes for the remainder of the meeting and for any adjournment of that meeting unless a new record date is set for the adjourned meeting.

Section 3.7 Proxies: A shareholder entitled to vote at any meeting of the shareholders (or another person entitled to vote on behalf of the shareholder pursuant to Section 607.0721 of the Florida Business Corporation Act or an attorney-in-fact for the shareholder) may vote the shareholder's shares in person or by proxy. A shareholder (or another person entitled to vote on behalf of the shareholder pursuant to Section 607.0721 of the Florida Business Corporation Act or an attorney-in-fact for the shareholder) may appoint a proxy to vote or otherwise act for the shareholder by signing an appointment form or by electronic transmission. Any type of electronic transmission appearing to have been, or containing or accompanied by such information or obtained under such procedures to reasonably ensure that the electronic transmission was, transmitted by such person is a sufficient appointment, subject to any verification requested by the Corporation under Section 607.0724 of the Florida Business Corporation Act. Without limiting the manner in which such an appointment may be made, an appointment may be made by (a) signing an appointment form, with the signature affixed, by any reasonable means including, but not limited to, facsimile or electronic signature or (b) transmitting or authorizing the transmission of an electronic transmission to the person who will be appointed as the proxy or to a proxy solicitation firm, proxy support service organization, registrar, or agent authorized by the person who will be designated as the proxy to receive such transmission, provided that any electronic transmission must set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the shareholder (or another person entitled to vote on behalf of a shareholder pursuant to Section 607.0721 of the Florida Business Corporation Act or an attorney-in-fact for the shareholder). An appointment of a proxy is valid for eleven (11) months from the date of receipt by the Secretary or the officer or agent authorized to tabulate votes, unless a longer period is expressly provided in the appointment.

Section 3.8 Nature of Business at Annual Meetings of Shareholders: No business may be transacted at an Annual Meeting of Shareholders, other than business that is either (a) specified in the notice of meeting (or any supplement thereto) given by or at the direction of the Board of Directors (or any duly authorized committee thereof), (b) otherwise properly brought before the Annual Meeting by or at the direction of the Board of Directors (or any duly authorized committee thereof) or (c) otherwise properly brought before the Annual Meeting by any shareholder of the Corporation (i) who is a shareholder of record on the date of the giving of the notice provided for in this Section 3.8 and on the record date for the determination of shareholders entitled to notice of

3

and to vote at such Annual Meeting and (ii) who complies with the notice procedures set forth in this Section 3.8.

In addition to any other applicable requirements, for business to be properly brought before an Annual Meeting by a shareholder, such shareholder must have given timely notice thereof in proper written form to the Secretary of the Corporation.

For purposes of the 2007 Annual Meeting of Shareholders only, if the Annual Meeting is held between October 15, 2007 and November 15, 2007, then to be timely, a shareholder's notice to the Secretary must be delivered to or mailed and received at the principal executive offices of the Corporation no earlier than July 15, 2007 and no later than August 15, 2007; in the event that the Annual Meeting is called for a date that is not between October 15, 2007 and November 15, 2007, notice by the shareholder in order to be timely must be so received not later than the close of business on the tenth (10th) day following the day on which such notice of the date of the Annual Meeting was mailed or such public disclosure of the date of the Annual Meeting was made, whichever first occurs. Beginning with the first Annual Meeting of Shareholders after the 2007 Annual Meeting, to be timely, a shareholder's notice to the Secretary must be delivered to or mailed and received at the principal executive offices of the Corporation not less than sixty (60) days nor more than ninety (90) days prior to the anniversary date of the immediately preceding Annual Meeting of Shareholders; provided, however, that in the event that the Annual Meeting is called for a date that is not within twenty-five (25) days before or after such anniversary date, notice by the shareholder in order to be timely must be so received not later than the close of business on the tenth (10th) day following the day on which such notice of the date of the Annual Meeting was mailed or such public disclosure of the date of the Annual Meeting was made, whichever first occurs.

To be in proper written form, a shareholder's notice to the Secretary must set forth as to each matter such shareholder proposes to bring before the Annual Meeting (a) a brief description of the business desired to be brought before the Annual Meeting and the reasons for conducting such business at the Annual Meeting, (b) the name and record address of such shareholder, (c) the class or series and number of shares of capital stock of the Corporation which are owned beneficially or of record by such shareholder, (d) a description of all arrangements or understandings between such shareholder and any other person or persons (including their names) in connection with the proposal of such business by such shareholder and any material interest of such shareholder in such business and (e) a representation that such shareholder intends to appear in person or by proxy at the Annual Meeting to bring such business before the meeting.

No business shall be conducted at the Annual Meeting of Shareholders except business brought before the Annual Meeting in accordance with the procedures set forth in this Section 3.8; provided, however, that once business has been properly brought before the Annual Meeting in accordance with such procedures, nothing in this Section 3.8 shall be deemed to preclude discussion by any shareholder of any such business. If the Chairman of an Annual Meeting determines that the business was not properly brought before the Annual Meeting in accordance with the foregoing procedures, the Chairman shall declare to the meeting that the business was not properly brought before the meeting and such business shall not be transacted.

Section 3.9 <u>Director Nominations</u>: Only persons who are nominated in accordance with the following procedures shall be eligible for election as directors of the Corporation. Nominations of persons for election to the Board of Directors may be made at any Annual Meeting of Shareholders, or at any Special Meeting of Shareholders called for the purpose of electing directors, (a) by or at the direction of the Board of Directors (or any duly authorized committee thereof) or (b) by any shareholder of the Corporation (i) who is a shareholder of record on the date of the giving of the notice provided for in this Section 3.9 and on the record date for the determination of shareholders entitled to notice of and to vote at such meeting and (ii) who complies with the notice procedures set forth in this Section 3.9.

In addition to any other applicable requirements, for a nomination to be made by a shareholder, such shareholder must have given timely notice thereof in proper written form to the Secretary of the Corporation.

For purposes of the 2007 Annual Meeting of Shareholders only, if the Annual Meeting is held between October 15, 2007 and November 15, 2007, then to be timely, a shareholder's notice to the Secretary must be delivered to or mailed and received at the principal executive offices of the Corporation no earlier than July 15, 2007 and no later than August 15, 2007; in the event that the Annual Meeting is called for a date that is not between October 15, 2007 and November 15, 2007, notice by the shareholder in order to be timely must be so received not later than the close of business on the tenth (10th) day following the day on which such notice of the date of the Annual Meeting was mailed or such public disclosure of the date of the Annual Meeting was made, whichever first occurs. Beginning with the first Annual Meeting of Shareholders after the 2007 Annual Meeting, to be timely, a shareholder's notice to the Secretary must be delivered to or mailed and received at the principal executive offices of the Corporation (a) in the case of an Annual Meeting, not less than sixty (60) days nor more than ninety (90) days prior to the anniversary date of the immediately preceding Annual Meeting of Shareholders; <u>provided,</u> <u>however,</u> that in the event that the Annual Meeting is called for a date that is not within twenty-five (25) days before or after such anniversary date, notice by the shareholder in order to be timely must be so received not later than the close of business on the tenth (10th) day following the day on which such notice of the date of the Annual Meeting was mailed or such public disclosure of the date of the Annual Meeting was made, whichever first occurs; and (b) in the case of a Special Meeting of Shareholders called for the purpose of electing directors, not later than the close of business on the tenth (10th) day following the day on which notice of the date of the Special Meeting was mailed or public disclosure of the date of the Special Meeting was made, whichever first occurs.

To be in proper written form, a shareholder's notice to the Secretary must set forth (a) as to each person whom the shareholder proposes to nominate for election as a director (i) the name, age, business address and residence address of the person, (ii) the principal occupation or employment of the person, (iii) the class or series and number of shares of capital stock of the Corporation which are owned beneficially or of record by the person, and (iv) any other information relating to the person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors pursuant to Section 14 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and the rules and regulations promulgated thereunder; and (b) as to the shareholder giving the notice (i) the name

and record address of such shareholder, (ii) the class or series and number of shares of capital stock of the Corporation which are owned beneficially or of record by such shareholder, (iii) a description of all arrangements or understandings between such shareholder and each proposed nominee and any other person or persons (including their names) pursuant to which the nomination(s) are to be made by such shareholder, (iv) a representation that such shareholder intends to appear in person or by proxy at the meeting to nominate the persons named in its notice, and (v) any other information relating to such shareholder that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder. Such notice must be accompanied by a written consent of each proposed nominee to being named as a nominee and to serve as a director if elected.

No person shall be eligible for election as a director of the Corporation unless nominated in accordance with the procedures set forth in this Section 3.9. If the Chairman of the meeting determines that a nomination was not made in accordance with the foregoing procedures, the Chairman shall declare to the meeting that the nomination was defective and such defective nomination shall be disregarded.

Section 3.10 <u>Voting of Shares</u>: Each outstanding share entitled to vote shall be entitled to one (1) vote on each matter submitted to a vote at a meeting of shareholders. If a quorum exists, action on a matter is approved if the votes cast by the shareholders entitled to vote favoring the action exceed the votes cast opposing the action, unless a greater vote is required by law, the Articles of Incorporation or these By-Laws. Voting shall be as permitted under applicable law.

Section 3.11 <u>Voting Lists</u>: The Secretary shall prepare, at least ten (10) days before each meeting of shareholders, an alphabetical list of the shareholders entitled to notice of the meeting, which shall show the address of and the number of shares held by each shareholder. The list shall be open for examination of any shareholder, or his or her attorney or agent, at the Corporation's principal office, at a place identified in the meeting notice in the city where the meeting will be held, or at the office of the Corporation, transfer agent or registrar ten (10) days prior to such meeting and shall be kept available for inspection, at the meeting, by any shareholder at any time during the meeting.

Any shareholder, his or her attorney or agent, on written demand as provided by statute, may inspect the list during regular business hours at his or her expense during the period that it is available for inspection. A shareholder may inspect and copy the list only if (a) the shareholder's demand is made in good faith and for a proper purpose, (b) the shareholder describes with reasonable particularity his or her purpose, (c) the list is directly connected with the shareholder's purpose, and (d) the shareholder provides at least five (5) days' prior written notice to the Corporation before any such copying commences.

# ARTICLE IV

## Directors

Section 4.1 <u>Powers</u>: All corporate powers shall be exercised by or under the authority of, and the business and affairs of the Corporation shall be managed under the direction of, the Board of Directors.

Section 4.2 <u>The Chairman of the Board of Directors</u>: The Chairman shall be selected annually by the Board of Directors at the first meeting of the Board after each Annual Meeting. The Chairman of the Board of Directors, if present, shall preside at all meetings of the Board of Directors and meetings of the shareholders, and shall see that all orders and resolutions of the Board of Directors are carried into effect. The Chairman shall perform such other duties as may be prescribed by the Board of Directors.

Section 4.3 <u>Number of Directors</u>: The number of directors of the Corporation shall be as from time to time fixed by, or in the manner provided in, the Articles of Incorporation of the Corporation. Directors shall be elected or appointed in the manner provided in the Articles of Incorporation of the Corporation. The original Board of Directors as of November 21, 2006, shall consist of nine (9) members.

Section 4.4 <u>Vacancies and Newly Created Directorships</u>: Each director shall serve until his or her successor is elected and qualified or until death, retirement, resignation or removal. Whenever a vacancy occurs on the Board of Directors, including a vacancy resulting from an increase in the number of directors, it may be filled by the affirmative vote of a majority of the remaining directors, though less than a quorum of the Board of Directors, or by the shareholders.

Section 4.5 <u>Resignation and Removal</u>: A director may resign at any time by delivering written notice to the Board of Directors or its Chairman or to the Corporation. A resignation is effective when the notice is delivered unless the notice specifies a later effective date. If a resignation is made effective at a later date, the Board of Directors may fill the pending vacancy before the effective date if the Board of Directors provides that the successor does not take office until the effective date.

The removal of directors of the Corporation shall be in the manner provided in the Articles of Incorporation of the Corporation.

Section 4.6 <u>Meetings</u>: The Board of Directors shall meet immediately after the Annual Meeting of Shareholders at the same place as the Annual Meeting of Shareholders. Regular meetings of the Board of Directors may be held without notice of the date, time, place or purpose of the meeting. Special meetings of the Board of Directors may be called by the Chairman of the Board of Directors or by a majority of the directors. Notice of special meetings may be communicated in person or by mail to each director at least three (3) days in advance, or by telephone, facsimile, email or other form of electronic communication to each director at least twenty-four (24) hours in advance of the meeting. Such notice shall specify the time and place of meeting.

7

Section 4.7 <u>Place of Meetings</u>: Until otherwise prescribed, the regular meetings of the Board of Directors shall be held in the City of Jacksonville, Florida, at the office of the Corporation or at such other place as may be agreed upon by the Board of Directors or specified by the Chairman of the Board of Directors. The Board of Directors may hold special meetings and may have one (1) or more offices and may keep the books of the Corporation (except such books as are required by law to be kept within the State of Florida) either within or outside of the State of Florida, at such place or places as it may from time to time determine.

Section 4.8 <u>Quorum and Voting</u>: Unless the Articles of Incorporation or these By-Laws provide otherwise, a majority of the number of directors then in office shall constitute a quorum for the transaction of business at any meeting of the Board of Directors.

If a quorum is present when a vote is taken, the affirmative vote of a majority of the directors present shall constitute an act of the Board of Directors unless the Articles of Incorporation or these By-Laws require the vote of a greater number of directors.

Section 4.9 <u>Actions of the Board by Written Consent</u>: Any action required or permitted to be taken at a meeting of the Board of Directors, or by any committee of the directors, may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the directors or by all members of the committee, as the case may be. Any such consent shall be effective as of the date of the last signature, or at such other time as the consent shall specify, and shall have the same effect as a meeting vote and may be described as such in any document.

Section 4.10 <u>Meeting by Means of Conference Telephone</u>: Members of the Board of Directors of the Corporation, or any committee thereof, may participate in a meeting of the Board of Directors or such committee by means of a conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting pursuant to this Section 4.10 shall constitute presence in person at such meeting.

Section 4.11 <u>Qualifications of Directors</u>: Directors must be natural persons who are 18 years of age or older but need not be residents of the State of Florida or shareholders of the Corporation unless the Articles of Incorporation or these By-Laws so require.

Section 4.12 <u>Compensation of Board Members</u>: The Board of Directors shall fix the compensation of directors for their service.

Section 4.13 <u>Committees of the Board of Directors</u>: The Board of Directors, by resolution adopted by a majority of the full Board of Directors, may designate from among its members an executive committee and one or more other committees each of which, to the extent provided in such resolution, shall have and may exercise all the authority of the Board of Directors, except that no such committee shall have the authority to:

(a) Approve or recommend to shareholders actions or proposals required by the Florida Business Corporation Act to be approved by shareholders;

(b) Fill vacancies on the Board of Directors or any committee thereof;

(c) Adopt, amend, or repeal the By-Laws;

(d) Authorize or approve the reacquisition of shares unless pursuant to a general formula or method specified by the Board of Directors; or

(e) Authorize or approve the issuance or sale or contract for the sale of shares, or determine the designation and relative rights, preferences, and limitations of a voting group except that the Board of Directors may authorize a committee (or a senior executive officer of the Corporation) to do so within limits specifically prescribed by the Board of Directors.

4.14 <u>Director Conflicts of Interest</u>: No contract or other transaction between the Corporation and one or more of its directors or any other corporation, firm, association, or entity in which one or more of its directors are directors or officers, shall be either void or voidable merely because of such relationship or interest. Moreover, no such contract or other transaction shall be void or voidable merely because such director or directors are present at the meeting of the Board of Directors or a committee thereof that authorizes, approves, or ratifies such contract or transaction, or because his or her or their votes are counted for such purpose, if:

(a) The fact of such relationship or interest is disclosed or known to the Board of Directors or committee that authorizes, approves, or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors;

(b) The fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve, or ratify such contract or transaction by vote or written consent; or

(c) The contract or transaction is fair and reasonable as to the Corporation at the time it is authorized by the Board of Directors, a committee or the shareholders.

A conflict of interest transaction is authorized, approved, or ratified if it receives the affirmative vote of a majority of the directors on the Board of Directors, or on the committee, who have no relationship or interest in the transaction described above; <u>provided</u>, <u>however</u>, that a transaction may not be authorized, approved or ratified under this section by a single director. If a majority of the directors that have no such relationship or interest in the proposed transaction vote to authorize, approve or ratify same, a quorum is present for the purpose of taking action under this section. The presence of, or a vote cast by, a director with such relationship or interest in the transaction does not affect the validity of any action taken under Section 4.14(a) if the transaction is otherwise authorized, approved or ratified as provided in this section.

## ARTICLE V

### Officers

Section 5.1 Election: The officers of the Corporation shall be a President, a Secretary, a Treasurer and a Chief Accounting Officer. In addition, Executive Vice Presidents, Senior Vice Presidents, Vice Presidents, Assistant Secretaries, Assistant Treasurers and a Controller may from time to time be elected by the Board of Directors or appointed by the President or another duly appointed officer authorized by these By-Laws or by resolution of the Board of Directors to appoint officers. None of these officers, except the President, need be a director.

Section 5.2 Multiple Offices: Any officer may hold more than one (1) office, except that the President shall not be the Secretary or an Assistant Secretary of the Corporation; but no officer shall execute, acknowledge or verify any instrument in more than one (1) capacity, if such instrument be required by law or these By-Laws to be executed, acknowledged or verified by any two (2) or more officers.

Section 5.3 Term of Office: The officers shall hold office until they resign or are removed pursuant to the provisions of these By-Laws. Any vacancy occurring among the officers shall be filled by the Board of Directors or by an officer authorized to appoint such officer.

Section 5.4 Agents: The Board of Directors may appoint such agents as it may deem necessary, who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors.

Section 5.5 Removal: Any officer may be removed with or without cause at any time by the Board of Directors. Any officer appointed by an officer may be removed by such officer at any time with or without cause.

Section 5.6 Voting Shares in Other Corporations: The Corporation may vote any and all shares held by it in any other corporation by such officer, agent or proxy as the Board of Directors may appoint, or, in default of any such appointment, by the Chairman of the Board or the President.

## ARTICLE VI

### The President

Section 6.1 President: The President shall be the Chief Executive Officer of the Corporation, and shall have general supervision, direction and control of the business and affairs of the Corporation. The President shall perform any and all other duties as are incident to the Office of the President or as may be required by the Board of Directors. The President shall have general supervision and direction of all the other officers, employees and agents of the Corporation. The President, in the absence of the Chairman of the Board of Directors, shall preside at all meetings of the shareholders and shall, annually, make a full report to the shareholders, at the Annual Meeting of Shareholders, of the condition of the Corporation, its resources, liabilities,

loans, profits and general financial condition, which report shall be for the fiscal year ending on the last Wednesday in the month of June of each year before such Annual Meeting. The President shall, if present, preside at all meetings of the Board of Directors at which the Chairman of the Board of Directors shall not be present.

## ARTICLE VII

### Executive Vice Presidents, Senior Vice Presidents and Vice Presidents

Section 7.1 <u>Executive Vice Presidents</u>: Executive Vice Presidents, if any such officers shall have been appointed or elected, shall, in the absence or disability of the President, in the order designated by the President, or failing such designation, by the Board of Directors, perform the duties and exercise the powers of the President, and shall perform such other duties as the Board of Directors shall prescribe.

Section 7.2 <u>Senior Vice Presidents</u>: Senior Vice Presidents, if any such officers shall have been appointed or elected, shall, in the absence of the President and Executive Vice Presidents, if any, in the order designated by the President, or failing such designation, by the Board of Directors, perform the duties and exercise the powers of the President. Senior Vice Presidents and other Vice Presidents shall have such powers and perform such duties as may be assigned to them from time to time by the Board of Directors or the President.

## ARTICLE VIII

### The Treasurer

Section 8.1 <u>Custody of Funds</u>: The Treasurer shall have the custody of the corporate funds and securities, and shall keep full and accurate account of receipts and disbursements in books belonging to the Corporation. He shall deposit all moneys and other valuables in the name and to the credit of the Corporation in such depositaries as may be designated by the Board of Directors.

Section 8.2 <u>Disbursements</u>: The Treasurer shall disburse the treasury funds of the Corporation as may be ordered by the Board of Directors, taking proper vouchers for such disbursements. He shall render to the President and directors at the regular meetings of the Board of Directors, or whenever they may request it, an account of all his or her transactions as Treasurer and of the financial condition of the Corporation.

Section 8.3 <u>Other Duties</u>. The Treasurer shall perform such other duties as may be prescribed by the Board of Directors or the President.

### ARTICLE IX

### The Chief Accounting Officer

Section 9.1 <u>Accounting Supervision</u>: The Chief Accounting Officer shall have general supervision of and responsibility for all accounting matters affecting the Corporation and shall perform such other duties as may be prescribed by the Board of Directors or the President.

### ARTICLE X

### The Secretary

Section 10.1 <u>Secretary</u>: The Secretary shall attend all meetings of the Board of Directors and all meetings of the shareholders and shall record all votes and the minutes of all proceedings in a book to be kept for that purpose and shall perform like duties for the standing committees when required. He shall also have responsibility for authenticating records of the Corporation. He shall give or cause to be given notice of all meetings of the shareholders and of the Board of Directors, and he shall perform such other duties as may be prescribed by the Board of Directors, Chairman of the Board or the President.

### ARTICLE XI

### Assistant Treasurers and Assistant Secretaries

Section 11.1 <u>Assistant Treasurer and Assistant Secretary</u>: The Assistant Treasurers and Assistant Secretaries shall perform such duties as may be prescribed hereunder or by the Board of Directors or by the President.

In the absence or disability of the Treasurer, his or her duties may be performed by any Assistant Treasurer.

In the absence or disability of the Secretary, his or her duties may be performed by any Assistant Secretary.

### ARTICLE XII

### Delegation of Duties

Section 12.1 <u>Delegation of Duties</u>: The powers and duties of officers may be delegated to another officer to the extent permitted by a resolution of the Board of Directors or by the President.

# ARTICLE XIII

## Indemnification

The indemnification provided under this Article XIII shall be subject to, and limited by, Section 13.11 below.

Section 13.1 <u>Obligation to Indemnify in Actions, Suits or Proceedings other than Those by or in the Right of the Corporation</u>: The Corporation shall indemnify to the fullest extent permitted by law any person who was or is a director, officer or key employee (as such key employees are designated by the Chief Executive Officer and the Board of Directors) of the Corporation and was or is a party to any proceeding (other than an action by, or in the right of, the Corporation) by reason of the fact that he or she is or was a director, officer or key employee (as such key employees are designated by the Chief Executive Officer and the Board of Directors) of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against liability incurred in connection with such proceeding, including any appeal thereof, if he or she acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the Corporation and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful. The termination of any proceeding by judgment, order, settlement or conviction or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in, or not opposed to, the best interests of the Corporation or, with respect to any criminal action or proceeding, had reasonable cause to believe that his or her conduct was unlawful.

Section 13.2 <u>Obligation to Indemnify in Actions, Suits or Proceedings by or in the Right of the Corporation</u>: The Corporation shall indemnify to the fullest extent permitted by law any person who was or is a director, officer or key employee (as such key employees are designated by the Chief Executive Officer and the Board of Directors) and was or is a party to any proceeding by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that such person is or was a director, officer or key employee (as such key employees are designated by the Chief Executive Officer and the Board of Directors) of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses and amounts paid in settlement not exceeding, in the judgment of the Board of Directors, the estimated expense of litigating the proceeding to conclusion, actually and reasonably incurred in connection with the defense or settlement of such proceeding, including any appeal thereof. Such indemnification shall be authorized if such person acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the Corporation, except that no indemnification shall be made under this Section 13.2 in respect of any claim, issue, or matter as to which such person shall have been adjudged to be liable unless, and only to the extent that, the court in which such proceeding was brought, or any other court of competent jurisdiction, shall determine upon application that, despite the adjudication of liability but in view of all circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which such court shall deem proper.

Section 13.3 <u>Successful Defense of Proceedings</u>: To the extent that a director, officer or key employee of the Corporation has been successful on the merits or otherwise in defense of any proceeding referred to in Section 13.1 or Section 13.2, or in defense of any claim, issue, or matter therein, he or she shall be indemnified against expenses actually and reasonably incurred by him or her in connection therewith.

Section 13.4 <u>Authorization of Indemnification</u>: Any indemnification under Section 13.1 or Section 13.2, unless pursuant to a determination by a court, shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of the director, officer or key employee is proper in the circumstances, because he or she has met the applicable standard of conduct set forth in Section 13.1 or Section 13.2. Such determination shall be made:

(a) By the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to such proceeding;

(b) If such a quorum is not obtainable or, even if obtainable, by majority vote of a committee duly designated by the Board of Directors (in which directors who are parties may participate) consisting solely of two (2) or more directors not at the time parties to the proceeding;

(c) By independent legal counsel:

(i) Selected by the Board of Directors prescribed in paragraph (a) or the committee prescribed in paragraph (b); or

(ii) If a quorum of the directors cannot be obtained for paragraph (a) and the committee cannot be designated under paragraph (b), selected by majority vote of the full Board of Directors (in which directors who are parties may participate); or

(d) By the shareholders by a majority vote of a quorum consisting of shareholders who were not parties to such proceeding or, if no such quorum is obtainable, by a majority vote of shareholders who were not parties to such proceeding.

Section 13.5 <u>Authorization of Expenses</u>: Evaluation of the reasonableness of expenses and authorization of indemnification shall be made in the same manner as the determination that indemnification is permissible. However, if the determination of permissibility is made by independent legal counsel, persons specified by Section 13.4(c) shall evaluate the reasonableness of expenses and may authorize indemnification.

Section 13.6 <u>Expenses Payable in Advance</u>: Expenses incurred by an officer or director in defending a civil or criminal proceeding may be paid by the Corporation in advance of the final disposition of such proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if he or she is ultimately found not to be entitled to indemnification by the Corporation pursuant to this Article XIII. Expenses incurred by other key employees may be paid in advance upon such terms or conditions that the Board of Directors deems appropriate.

Section 13.7 <u>Nonexclusivity of Indemnification and Advancement of Expenses</u>: The indemnification and advancement of expenses provided pursuant to this Article are not exclusive, and the Corporation may make any other or further indemnification or advancement of expenses of any of its directors, officers or key employees, under any by-law, agreement, vote of shareholders or disinterested directors, or otherwise, both as to action in his or her official capacity and as to action in another capacity while holding such office. However, indemnification or advancement of expenses shall not be made to or on behalf of any director, officer or key employee, if a judgment or other final adjudication establishes that his or her actions, or omissions to act, were material to the cause of action so adjudicated and constitute:

(a) A violation of the criminal law, unless the director, officer or key employee had reasonable cause to believe his or her conduct was lawful or had no reasonable cause to believe his or her conduct was unlawful;

(b) A transaction from which the director, officer or key employee derived an improper personal benefit;

(c) In the case of a director, a circumstance under which the liability provisions of Section 607.0834 of the Florida Business Corporation Act, are applicable; or

(d) Willful misconduct or a conscious disregard for the best interests of the Corporation in a proceeding by or in the right of the Corporation to procure a judgment in its favor or in a proceeding by or in the right of a shareholder.

Section 13.8 <u>Survival of Indemnification and Advancement of Expenses</u>: Indemnification and advancement of expenses as provided in this Article XIII shall continue as, unless otherwise provided when authorized or ratified, to a person who has ceased to be a director, officer or key employee and shall inure to the benefit of the heirs, executors, and administrators of such a person, unless otherwise provided when authorized or ratified.

Section 13.9 <u>Certain Definitions</u>: For purposes of this Article, the term "corporation" includes, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger, so that any person who is or was a director, officer, employee, or agent of a constituent corporation, or is or was serving at the request of a constituent corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise, is in the same position under this Article with respect to the resulting or surviving corporation as he or she would have with respect to such constituent corporation if its separate existence had continued.

Additionally, for purposes of this Article:

(a) The term "other enterprises" includes employee benefit plans;

(b) The term "expenses" includes counsel fees, including those for appeal;

(c) The term "liability" includes obligations to pay a judgment, settlement, penalty, fine

15

(including an excise tax assessed with respect to any employee benefit plan), and expenses actually and reasonably incurred with respect to a proceeding;

(d) The term "proceeding" includes any threatened, pending, or completed action, suit, or other type of proceeding, whether civil, criminal, administrative, or investigative and whether formal or informal;

(e) The term "agent" includes a volunteer;

(f) The term "serving at the request of the corporation" includes any service as a director, officer or key employee of the Corporation that imposes duties on such persons, including duties relating to an employee benefit plan and its participants or beneficiaries; and

(g) The term "not opposed to the best interest of the Corporation" describes the actions of a person who acts in good faith and in a manner he or she reasonably believes to be in the best interests of the participants and beneficiaries of an employee benefit plan.

Section 13.10 Insurance: The Corporation shall have the power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee, or agent of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity or arising out of his or her status as such, whether or not the Corporation would have the power to indemnify him or her against such liability under the provisions of this Article.

Section 13.11 Certain Limitations: Notwithstanding any other provision of this Article XIII, the Corporation shall have no obligation to indemnify any person for claims arising before February 21, 2005 or for claims resulting from gross negligence, willful misconduct, breach of fiduciary duty or intentional tort arising after February 21, 2005 but before [the Confirmation Date]. Notwithstanding any other provision of this Article XIII, the Corporation shall only be required to indemnify its directors, officers or key employees (as such key employees are designated by the Chief Executive Officer and the Board of Directors) who serve in such capacity on or after February 21, 2005.

Section 13.12 Director and Officer Liability: To the fullest extent permitted by law, no director or officer shall be personally liable for claims for monetary damages to the Corporation or any other person resulting from a breach of their fiduciary duty. If the Florida Business Corporation Act is amended after the adoption of these Amended and Restated By-Laws to authorize corporate action further eliminating or limiting the personal liability of directors or officers, then the liability of a director or officer of the Corporation, in addition to the limitation on personal liability provided herein, shall be limited to the fullest extent permitted by such law, as so amended. Any repeal or modification of this Article XIII by the shareholders of the Corporation shall be prospective only, and shall not adversely affect any limitation on the personal liability of a director or officer of the Corporation existing at the time of such repeal or modification.

## ARTICLE XIV

### Certificates for Shares; Uncertificated Shares

Shares may but not need be represented by certificates. The rights and obligations of shareholders shall be identical whether or not their shares are represented by certificates. If shares are represented by certificates, each certificate shall be in such form as the Board of Directors may from time to time prescribe. The certificates of stock of the Corporation shall be numbered and shall be entered in the books of the Corporation as they are issued. They shall exhibit the holder's name and certify the number of shares owned by the holder and shall be signed by the President or a Vice President and by the Secretary or an Assistant Secretary or an Assistant Treasurer of the Corporation and sealed with the Seal of the Corporation. Any or all of the signatures on a certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue. The certificates shall likewise indicate that the Corporation is incorporated under the laws of the State of Florida. If shares are not represented by certificates, then, within a reasonable time after issue or transfer of shares without certificates, the corporation shall send the shareholder a written statement in such form as the Board of Directors may from time to time prescribe, certifying as to the number of shares owned by the shareholder and as to such other information as would have been required to be on certificates for such shares.

## ARTICLE XV

### Transfers of Stock

Subject to the Articles of Incorporation, transfers of shares of the Corporation shall be made upon its books by the holder of the shares in person or by the holder's lawfully constituted representative, upon surrender of the certificate of stock for cancellation if such shares are represented by a certificate of stock or by delivery to the Corporation of such evidence of transfer as may be required by the Corporation if such shares are not represented by certificates.

Subject to these By-Laws and the Articles of Incorporation, the Board of Directors shall have the power and authority to make all such rules and regulations as it shall deem expedient concerning the issue, transfer and registration of certificates for shares of stock of the Corporation or scrip certificates for such stock. Any such restrictions are valid and enforceable against the holder or the transferee of the holder if the restriction is authorized and its existence is conspicuously noted on the front or back of the certificate.

The Board of Directors may appoint and remove transfer agents and registrars of transfers, and may require all stock certificates and/or scrip certificates to bear the signature of any such transfer agent and/or of any such registrar of the transfers.

## ARTICLE XVI

### Record Date

The Board of Directors may fix a future date as the record date for determining the shareholders entitled to notice of a shareholders' meeting, to demand a Special Meeting, to vote or to take any other action. Such record date may not be more than seventy (70) days before the meeting or action requiring a determination of shareholders. A determination of shareholders entitled to notice of or to vote at a shareholders' meeting is effective for any adjournment of the meeting unless the Board of Directors fixes a new record date for the adjourned meeting, which it must do if the meeting is adjourned to a date more than one hundred twenty (120) days after the date fixed for the original meeting.

If no record date is fixed by the Board of Directors for the determination of shareholders entitled to notice of or to vote at a meeting of shareholders, the close of business on the day before the first notice of the meeting is delivered to shareholders shall be the record date for such determination of shareholders.

The Board of Directors may fix a date as the record date for determining shareholders entitled to a distribution or share dividend. If no record date is fixed by the Board of Directors for such determination, it is the date the Board of Directors authorizes the distribution or share dividend.

## ARTICLE XVII

### Registered Shareholders

The Corporation shall be entitled to treat the holder of record of any share or shares of stock as the holder in fact thereof and, accordingly, shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice thereof, except as expressly provided by the laws of the State of Florida.

## ARTICLE XVIII

### Lost Certificates

Any person claiming a certificate of stock to be lost or destroyed shall make an affidavit or affirmation of that fact and verify the same in such manner as the Board of Directors may require, and shall if the Board of Directors so requires, give the Corporation, its transfer agents, registrars and/or other agents a bond of indemnity in form and with one or more sureties satisfactory to the Board of Directors before a new certificate may be issued of the same tenor and for the same number of shares as the one alleged to have been lost or destroyed.

18

## ARTICLE XIX

### Inspection of Books

The Board of Directors shall determine from time to time whether, and if allowed, when and under what conditions and regulations the accounts and books of the Corporation, or any of them, shall be open to the inspection of the shareholders. No shareholder shall have any right to inspect any book or document of the Corporation except as such right may be conferred by the laws of the State of Florida or as may be authorized by the Board of Directors or the shareholders.

## ARTICLE XX

### Checks, Etc.

All checks, drafts, acceptances, notes and other orders, demands or instruments in respect of the payment of money shall be signed or endorsed on behalf of the Corporation by such officer or officers or by such agent or agents as the Board of Directors may from time to time designate.

## ARTICLE XXI

### Fiscal Year

The fiscal year of the Corporation shall end on the last Wednesday in the month of June of each year.

## ARTICLE XXII

### Dividends

Dividends upon the capital stock of the Corporation may be declared at the discretion of the Board of Directors, at any regular or special meeting, subject to the provisions of the Articles of Incorporation and the laws of the State of Florida.

## ARTICLE XXIII

### Notices

Section 23.1 <u>How Given</u>: Notice required to be given by the Articles of Incorporation or these By-Laws is effective when mailed postage prepaid, or, if authorized by the shareholder, officer or director, when transmitted by electronic means, and correctly addressed to the mailing or electronic address of the shareholder, officer or director, as the case may be, at such address as appears on the current records of the Corporation.

Section 23.2 <u>Waiver of Notice</u>: Notice of a meeting of the Board of Directors need not be given to any director who signs a waiver of notice either before or after the meeting. Attendance of a director at a meeting shall constitute a waiver of notice of such meeting, except when the director states at the beginning of the meeting or promptly upon arrival, any objection to the transaction of business because the meeting is not lawfully called or convened.

## ARTICLE XXIV

### Amendments

Except as otherwise provided in the Articles of Incorporation, these By-Laws may be altered, amended or repealed by the affirmative vote of a majority of the holders of Stock issued and outstanding and entitled to vote at any regular or special meeting of the shareholders, or by the affirmative vote of a majority of the Board of Directors at any regular or special meeting, if notice of the proposed alteration, amendment or repeal be contained in the notice of the meeting. In the case of any conflict between the Articles of Incorporation and these By-Laws, the Articles of Incorporation shall control.