In the event that any portion of the common areas (including parking area and access thereto) designated as such on Exhibit "A", be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, so as to materially or substantially interfere with the conduct of Tenant's business in the demised premises, or so as to reduce the required parking area by an amount in excess of ___ten___ per cent ( 10 %) or reduce the number of cars which may be conveniently parked to less than ___144___, the Tenant may, at its option, terminate this lease and shall be liable for rent only up to the time of such taking.

**DEFAULT**  20. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated, from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default.

**BANKRUPTCY**  21. The Tenant further covenants and agrees that if, at any time, Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease agreement at an end and shall forthwith be entitled to immediate possession of the said premises.

-10-

CONSTRUCTION 22. It is understood and agreed that nothing herein contained shall constitute the Landlord as
RISKS the agent in any sense of the Tenant in constructing said improvements, and that the Tenant
shall have no control or authority over the construction of said improvements, beyond the right
to reject the tender of the Tenant's store building for the causes herein stated. The Tenant shall
not in any manner be answerable or accountable for any loss or damage arising from the negli-
gence or the carelessness of Landlord or Landlord's contractor or of any of their sub-contractors,
employees, agents or servants by reason of Landlord's constructing said improvements pursuant
to the terms of this lease. Landlord shall indemnify Tenant and save Tenant harmless from and
against all claims and suits for damage to persons or property from defects in material or from
the use of unskilled labor or from any negligence caused by Landlord, Landlord's contractors,
sub-contractors or by any of their employees, agents or servants during the progress of the work
in constructing said improvements or from any faulty construction thereof.

NOTICES 23. All notices required to be given to Landlord hereunder shall be sent by registered or certi-
fied mail to, and all rent payments shall be made to Landlord at __4801 Georgia Avenue,__
__West Palm Beach, Florida 33405,__

or to such other address as Landlord may direct from time to time by written notice forwarded
to Tenant by registered or certified mail.

All notices required to be given to Tenant shall be sent by registered or certified mail to
Tenant at __P. O. Box 352, Biscayne Annex, Miami, Florida 33152,__

or to such other address as Tenant may direct from time to time by written notice forwarded to
Landlord by registered or certified mail.

END OF 24. The Tenant will yield up the demised premises and all additions thereto (except signs,
TENANCY equipment and trade fixtures installed by Tenant at its expense) at the termination of the
tenancy in as good and tenantable condition as the same are at the beginning of Tenant's oc-
cupancy, reasonable wear and tear, damage by fire and other casualties and condemnation ap-
propriation by eminent domain excepted, and also excepting any damage, disrepair and other
condition that the Landlord is obligated hereunder to repair or correct.

ARBITRATION 25. In the event there should arise any misunderstanding between the parties hereto as to the
compliance with the terms and conditions of this lease upon the part of either of the parties
hereto, or as to whether the Tenant's store building tendered by the Landlord has been improved
in substantial conformity with the plans and specifications approved by the parties, or whether
the common areas, including parking area, comply with the agreement of the parties hereto,
or as to whether either party has ground hereunder entitling it to terminate this lease, it is
mutually agreed that such differences, if they cannot be satisfactorily adjusted between the
parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties
hereto agree upon one; otherwise, to a board of three arbitrators, of whom one shall be selected
by each party within ten (10) days after such 30-day period, and a third person shall be selected
by these two; and the decision and award of such single arbitrator, if only one is used, or any
two of such board, if three are used, as the case may be, shall be final and binding upon the said
parties and their successors and assigns respectively, and shall have the same force and effect as
though such decision had been handed down by a court of final jurisdiction. Each of the parties
hereto covenants to abide by any such arbitration decision.

-11-

**ASSIGNMENT AND SUBLEASING**  26. The Tenant may without the consent of the Landlord assign this lease, or sublease of a part the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease.

**EXTENSIONS**  27. It is further agreed that Tenant, at its option, shall be entitled to the privilege of __five__ (5) successive extensions of this lease, each extension to be for a period of __five__ (5) years and on the same terms and conditions and __at the same rentals as provided for the last fifteen years of the initial lease term.__

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least __six (6) months__ before the expiration of the initial term, and if extended, at least __six (6) months__ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

**EXCLUSIVE SUPERMARKET**  28. Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods or frozen foods without written permission of the Tenant, except the sale of such items in not to exceed the lesser of 500 square feet of sales area or 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business, and except the sale by a restaurant operation of prepared ready-to-eat food items, either for consumption on or off the premises, shall not be deemed a violation hereof.

In the event the demised premises are at any time subject to a first mortgage (provided Tenant has been notified in writing of the name and address of the holder thereof) and so long as said mortgage shall encumber the demised premises, and notwithstanding any provision herein to the contrary, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments because of a violation of the terms of this exclusive provision as to property located within 1000 feet of any exterior boundary of the shopping center, but nothing herein shall deprive Tenant of any rights of recourse against Landlord, its successors and assigns, by way of suit for damages or injunctive relief, or as otherwise provided by law, in the event of any such violation.

-12-

SUBORDINATION  29. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

BENEFIT  30. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

SHORT FORM LEASE  31. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

MARGINAL TITLES  32. The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way, to modify, amend or affect the provisions thereof.

COMPLETE AGREEMENT  33. This written lease contains the complete agreement of the parties with reference to the leasing of the demised premises, except plans and specifications for Tenant's store and related improvements to be formally approved by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

TAXES  34. During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of any increase in ad valorem real estate taxes levied against the demised premises in excess of the amount of such taxes levied thereon for the first (1st) full calendar year of the lease term in which both the value of the land and the buildings thereon shall be assessed for tax purposes; provided, however, any additional rental payable hereunder by the Tenant may be credited on a non-cumulative basis against any and all percentage rental, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the lease term or any extensions thereof, shall be prorated on the basis of the annual credit. Tenant shall be responsible only for its pro rata share of such taxes for fractional years occurring at the beginning and expiration of the term of this lease, and any extensions thereof.

If such taxes shall not be assessed separately, but shall be included within an assessment of the demised premises and others, said assessments shall be fairly apportioned to determine Tenant's share thereof. Such apportionment shall be made in the ratio which the square footage of Tenant's store building bears to the total square footage of all store buildings (including additional floor levels) from time to time existing in the shopping center. The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any abatements, discounts or refunds thereon. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any increase in taxes is chargeable to Tenant, and such additional rental shall be payable by Tenant on demand after payment by Landlord. All taxes, other than ad valorem real estate taxes, including special assessments, improvement liens and the like, shall remain the sole responsibility of the Landlord. However, Tenant shall remain responsible for sales taxes on rentals levied by law on lessees.

-13-

Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of the Landlord as the Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to the Landlord.

COMMON AREA MAINTENANCE 35. Landlord agrees to operate and maintain all the common areas, as herein defined, and provide therefor all such services as are reasonably required, including, but without limitation, cleaning and sweeping, lighting, policing, if necessary, general repair and maintenance of all paved surfaces, repainting of parking area striping, and watering and maintenance of landscaped areas. For such services, Tenant shall pay to Landlord, as additional rental hereunder and as reimbursement for the annual cost thereof, the sum of $2,272.00 per year, payable in twelve (12) equal monthly installments of $189.34 per month in advance on the first day of each and every calendar month of the lease term, and any extensions thereof. If the Landlord after receipt of written notice from Tenant to do so shall fail to make the repairs or perform the services described in this Article, the Tenant shall have the right to make such repairs or cause such services to be performed in its behalf and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred therein.

WATER AND SEWER CHARGES 36. It being understood that Landlord will initially provide water to Tenant's building from Landlord's private water system and sanitary sewage disposal by septic tank or other private disposal system operated by Landlord, Tenant agrees to pay to Landlord for such water and sewer services the equivalent amount charged for the same services from time to time by Martin County to its customers in the same commercial category as Tenant. Landlord warrants unto Tenant that the water and sewer services provided by Landlord shall be maintained in full compliance with all laws, ordinances, rules and regulations of the governmental and public authorities having jurisdiction of the shopping center and Tenant's demised premises. As soon as a public water supply and/or sanitary sewer system becomes available to the shopping center, Landlord, at its sole expense, agrees promptly to connect Tenant's building thereto, and thereafter Tenant shall no longer make such payments to Landlord but shall make the requisite payments to the public authority supplying the services. Landlord expressly agrees that it alone, and not Tenant, shall be responsible for any assessments, tap-in or connection charges made by the public authority in extending water and sewer services to the shopping center.

-14-

**TION FOR EXPANSION**   37. Tenant is hereby granted the option and privilege at any time during the term of this lease, or any extensions thereof, of enlarging its store building by incorporating therein the area to the Westerly side thereof, such addition not to exceed thirty (30) feet in width by one hundred forty-two (142) feet in depth. This option may be exercised only at such times as the adjoining storerooms may be vacant, or at five (5) year intervals, it being contemplated that Landlord shall not lease such area to other tenants for in excess of five (5) years, and that Tenant shall have the expansion privilege herein described no later than five (5) years from the commencement date hereof and at five (5) year intervals thereafter. Landlord shall give notice to Tenant of any such expiration date and, during the period between six (6) months and three (3) months prior to such expiration date, afford to Tenant the opportunity to exercise this option, and upon Tenant giving to Landlord a notice in writing of its exercise thereof, Landlord agrees to construct such addition, or prepare such enlargement area for occupancy by Tenant, in accordance with plans and specifications to be approved by the parties hereto, with the construction to be completed with all due diligence following the vacation of the necessary area by any other tenant, and the enlarged portion of the building to be of a like quality of construction as the original building for Tenant. Upon completion of such building addition, or tender of such additional space to Tenant, if there shall not at such date remain at least ten (10) years of the then term of this lease, such term shall be extended for such period of time as shall be necessary to provide a full ten (10) years from such date. Thereafter, during such extended term, the annual minimum guaranteed rental shall be increased by the greater of: an amount equal to twelve percent (12%) of the cost of such addition, or an amount equal to $2.50 per square foot of the enlargement area, or an amount equal to a computed percentage times the cost of such addition, such percentage consisting of four percent (4%) plus the current prime interest rate charged by New York City banks at the time of the exercise of the option. At Tenant's request, construction cost shall be established by bids obtained by Landlord from at least three (3) reputable contractors acceptable to Tenant, with the final cost of the addition upon completion to be certified to by the general contractor performing the work. During such extended term the provisions of this lease shall remain in effect and the option periods herein provided, if any shall remain, shall be construed to follow upon the end of the extended term and the rentals to remain as adjusted in consequence of the addition. Upon completion of the addition, it shall be and become a portion of the demised premises and this lease thereby be taken and construed as so amended.

Nothing herein contained shall constitute any express or implied obligation on the part of the holder of a first mortgage encumbering the fee simple title to the demised premises, or of any purchaser at a sale under foreclosure of such mortgage, to comply with the terms and provisions of this Article, it being the understanding of the parties that the obligation to cause such expansion is the sole obligation of the Landlord, its heirs, legal representatives, successors and assigns.

Landlord expressly agrees that in the event it acquires any additional property to the West of and adjoining the present westerly line of the shopping center and if such additional land shall be utilized for an enlargement of the shopping center, Tenant shall be accorded the privilege under this expansion option provision of requiring that Tenant's permitted expansion area shall be 40 feet in width by 142 feet in depth instead of the dimensions above set forth. In the event the wider expansion area shall become so available or be utilized, the Landlord agrees also to nevertheless continue to maintain a service drive of a minimum width of 20 feet adjoining the West wall of Tenant's enlarged building or any other buildings which may be constructed from time to time to the West of Tenant's building to the end that there will always be a through service drive permitting a circular traffic pattern around the buildings from time to time constructed in the shopping center, or any enlargement thereof.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this

-15-

instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____          _____ (SEAL)
_____          W. G. Lassiter, Jr.
As to Landlord                                        LANDLORD


                                         WINN-DIXIE STORES, INC.

_____          By _____
_____             Its _____ President
As to Tenant                             Attest: _____
                                                    Its _____ Secretary

                                                    TENANT

                                                    (CORPORATE SEAL)

-16-

Florida - Individual and Corporate

STATE OF FLORIDA )
COUNTY OF Palm Beach )

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, an officer duly authorized to take acknowledgments, personally appeared W. G. LASSITER, JR., unmarried, personally known to me and known by me to be the person described in and who executed the foregoing instrument, and he acknowledged before me that he executed the same for the uses and purposes in said instrument set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, this 25th day of October, 19 71, at West Palm Beach, in said State and County aforesaid.

_____
Notary Public, State and County aforesaid

My commission expires: _____
Notary Public, State of Florida at Large
My Commission Expires Sept. 28, 1974

(Notarial Seal)


STATE OF FLORIDA )
COUNTY OF DUVAL )

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, an officer duly authorized to take acknowledgments, personally appeared Joe A Adams and J Bryan Jr to me known to be the persons described in and who respectively as Vice President and Secretary of WINN-DIXIE STORES, INC., a Florida corporation, executed on behalf of said corporation; and they severally acknowledged before me that they executed said instrument as such officers of said corporation in name of and on behalf of said corporation; that said Secretary affixed and attested the seal of said corporation to said instrument; that such acts were done by authority of said corporation for the uses and purposes in said instrument set forth; and that the foregoing instrument is the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, this 27th day of October, 19 71, at Jacksonville, in said State and County.

_____
Notary Public, State and County aforesaid

My commission expires: _____
NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES APRIL 12, 1972

(Notarial Seal)

## SUPPLEMENTAL LEASE AGREEMENT

THIS AGREEMENT, made this _1st_ day of _November_, 1972, between W. G. LASSITER, JR., unmarried, (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "tenant"); which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

WITNESSETH:

WHEREAS, by Lease dated October 25, 1971, Landlord did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development, known as Jensen Beach Plaza, located at the N. W. corner of North Savannah Road and Commercial Street, near the City of Jensen Beach, County of Martin and State of Florida, for the initial term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form of said Lease being recorded in Official Record Book 332, page 386 of the Public Records of Martin County, Florida; and

WHEREAS, the said construction has been completed and the Tenant has now opened for business in the demised premises and the parties hereto desire to fix the commencement date of said Lease, as hereinafter set forth;

NOW THEREFORE, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and valuable consideration, in hand paid by the Tenant to the Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1. The commencement date of the above described Lease dated October 25, 1971 is fixed at October 15, 1972, and the expiration of the initial term of twenty (20) years demised therein shall be October 14, 1992, at twelve o'clock midnight.

This instrument was prepared Francis P. Hamilton, Attorney at-Law, whose address is 50 Edgewood Court, Jacksonville Florida 32205

LEGAL DESCRIPTION
OF
SHOPPING CENTER

That certain piece, parcel or tract of land situate, lying and being in the County of Martin and State of Florida, more particularly described as follows:

    The Southeast 1/4 of the Northeast 1/4 of the Northeast 1/4 of Section 21, Township 37 South, Range 41 East, LESS AND EXCEPT the following described portions thereof: the West 200 feet; the North 180 feet; the South 200 feet of the East 175 feet; the right-of-way of State Road 707A (Commercial Street); and the right-of-way of North Savannah Road.

EXHIBIT "B"

2. It is mutually understood and agreed that the said Lease dated October 25, 1971 shall be and remain in full force and effect and unmodified, except as the same is specifically modified and amended hereby. All covenants, terms, obligations and conditions of said Lease, not modified or amended by this Supplemental Lease Agreement, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

*Ellen M. Steele*         _____ (SEAL)
                                       W. G. LASSITER, JR.

*Eunice Hutchinson*
As to Landlord                             LANDLORD

                                       WINN-DIXIE STORES, INC.

_____        By _____
                                       Its President

*Shirley M. _____*         Attest: _____
As to Tenant                                 Its Secretary

                                       TENANT

                                       (CORPORATE SEAL)

OF FLORIDA         )
TY OF PALM BEACH   )

Before me, the undersigned, a Notary Public in and for the State County aforesaid, an officer duly authorized to take acknowledgments, onally appeared  W. G. LASSITER, JR., unmarried

onally known to me and known by me to be the person described in and executed the foregoing instrument, and he acknowledged before me he executed the same for the uses and purposes in said instrument forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my icial seal, this 1ST day of NOVEMBER, 19 72, at

ST PALM BEACH , in said State and County aforesaid.

Ellen M. Steele
Notary Public, State and County aforesaid

My commission expires:
Notary Public, State of Florida at Large
My Commission Expires Jun. 25, 1978

(Notarial Seal)

TATE OF FLORIDA   )
OUNTY OF DUVAL    )

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, an officer duly authorized to take acknowledgments, personally appeared  B. L. Thomas  and  A. S. Bryan, Jr.  respectively as to me known to be the persons described in and who President and _____ Secretary of WINN-DIXIE STORES, INC., a Florida corporation, executed on behalf of said corporation; and they severally acknowledged before me that they executed said instrument as such officers of said corporation in name of and on behalf of said corporation; that said Secretary affixed and attested the seal of said corporation to said instrument; that such acts were done by authority of said corporation for the uses and purposes in said instrument set forth; and that the foregoing instrument is the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, this 6th day of November, 19 72, at

Jacksonville, , in said State and County.

Shirley Glenda Morgan
Notary Public, State and County aforesaid

My commission expires:
NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES JANUARY 18, 1973

(Notarial Seal)

THIRD AMENDMENT TO LEASE

THIS AMENDMENT, made this 30th day of March, 1983, between MERO SUSNAR (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include the heirs, legal representatives, successors and assigns of the respective parties;

WITNESSETH:

WHEREAS, by Lease dated October 25, 1971, W. G. Lassiter, Jr., unmarried, as landlord, did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development known as Jensen Beach Plaza, located at the N. W. corner of North Savannah Road and Commercial Street, near the City of Jensen Beach, County of Martin and State of Florida, for an initial term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, now fixed as October 15, 1972, and expiring at midnight on October 14, 1992, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form of said Lease being recorded in Official Record Book 332, page 386 of the Public Records of Martin County, Florida; and

WHEREAS, the said Lease was amended in certain respects by Supplemental Lease Agreement dated November 1, 1972; and

WHEREAS, the interest of the Landlord in said Lease, as amended, has been vested by mesne assignments in Landlord herein; and

WHEREAS, the said Lease, as amended, was further amended by Second Amendment to Lease dated February 25, 1982, in contemplation of construction by Tenant of an addition to Tenant's building and related improvements, and such construction now having been completed, the parties hereto desire to fix the effective date of the rental adjustment and other lease modifications



This instrument was prepared by Francis P. Hamilton, Attorney-at-Law, Winn-Dixie Stores, Inc., Edgewood Court, Jacksonville, Florida 32205.

occasioned by such additional construction, all as more particularly contemplated in said Second Amendment to Lease;

NOW THEREFORE, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and valuable considerations, in hand paid by the Tenant to the Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1. It is hereby agreed that the contemplated rental adjustment as provided in Article 4, sub-section (b) of the said Second Amendment to Lease dated February 25, 1982, shall take effect as of February 24, 1983, together with the other modifications of said Lease, as amended, also to take effect as of the same date.

2. It is mutually understood and agreed that the said Lease dated October 25, 1971, as amended, shall be and remain in full force and effect and unmodified, except as the same is specifically modified and amended hereby. All terms, covenants, obligations and conditions of said Lease, as amended, not modified or amended by this Third Amendment to Lease, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered in the presence of:

_____    _____ (SEAL)
                                    Mero Susnar
_____                LANDLORD
As to Mero Susnar


                                    WINN-DIXIE STORES, INC.

_____    By _____
                                      Its                    President
_____    Attest: _____
As to Winn-Dixie Stores, Inc.              Its              Secretary
                                                TENANT
                                              (CORPORATE SEAL)

-2-

Florida - 1 Individual 1 Corporate

STATE OF FLORIDA )
COUNTY OF PALM BEACH )

The foregoing instrument was acknowledged before me this _March_ 30, 19 83, by MERO SUSNAR

(NOTARIAL SEAL)

_____
Notary Public, State and County aforesaid

My commission expires:

NOTARY PUBLIC, STATE OF FLORIDA
MY COMMISSION EXPIRES OCT. 7, 1985
BONDED THRU GENERAL INS. UNDERWRITERS


STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this _April_ 13, 19 83, by _A. Dano Davis_ and _J.S. Bryan_, President and Secretary, respectively, of WINN-DIXIE STORES, INC. _____, a Florida corporation, on behalf of the corporation.

(NOTARIAL SEAL)

_____
Notary Public, State and County aforesaid

My commission expires:
Notary Public, State of Florida
My Commission Expires April 12, 1984.

SECOND AMENDMENT TO LEASE

THIS AMENDMENT, made this _25th_ day of _February_, 1982, between MERO SUSNAR (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include the heirs, legal representatives, successors and assigns of the respective parties;

WITNESSETH:

WHEREAS, by Lease dated October 25, 1971, W. G. Lassiter, Jr., unmarried, as landlord, did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development known as Jensen Beach Plaza, located at the N. W. corner of North Savannah Road and Commercial Street, near the City of Jensen Beach, County of Martin, State of Florida, for an initial term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, now fixed as October 15, 1972, and expiring at midnight on October 14, 1992, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form of said Lease being recorded in Official Record book 332, page 386 of the Public Records of Martin County, Florida; and

WHEREAS, the said Lease was amended in certain respects by Supplemental Lease Agreement dated November 1, 1972; and

WHEREAS, the interest of the Landlord in said Lease, as amended, has been vested by mesne assignments in Landlord herein; and

WHEREAS, the parties hereto have agreed that the Tenant may construct an addition to its building and make other related renovations and alterations to the existing store building as necessary to make the enlarged building suitable for use by Tenant in the conduct of its business, and the parties hereto have agreed to make certain modifications and amendments to said Lease, as amended, for such purposes, as hereinafter set forth;



APPROVED AS TO FORM
Division Mgr.
TPH
Legal Dept.
Winn-Dixie Stores, Inc.

This instrument was prepared by Dennis P. Hamilton, Attorney-at-Law, whose address is 5050 Edgewood Court, Jacksonville, Florida 32205.

NOW THEREFORE, in consideration of the premises and the sum of Ten and no/100 Dollars ($10.00) and other good and valuable considerations, in hand paid by the Tenant to the Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1. Tenant, agrees, with the approval and consent of the Landlord hereby evidenced, at Tenant's cost and expense, with due diligence to undertake the necessary construction work to enlarge Tenant's present building by constructing a permanent addition on the Westerly side thereof measuring 30 feet in width by 142 feet in depth, together with an enclosed vestibule 75 feet in width by 11 feet 9 inches in depth across the front of the enlarged building, and concurrently to make such other renovations, alterations and remodeling of the overall enlarged building, including construction and installation of a new store front, removal and reinstallation of doors, walls and partitions, construction and installation of exterior slab-mounted coolers and freezers and exterior loading docks, as are necessary to make the enlarged building suitable for use by Tenant in the conduct of its business. The new addition and the other renovations and alterations and related improvements as herein contemplated shall be constructed in accordance with plans and specifications therefor to be furnished by Tenant and which shall be approved by both parties hereto on or before two (2) weeks after the said plans and specifications are furnished by Tenant. In the event the parties shall not approve same within such period, to be evidenced by their initials thereon, this Second Amendment to Lease shall become null and void and of no further force and effect unless the parties hereto shall mutually agree in writing to extend the period for approval of said plans and specifications. All such construction work shall be performed in a good and workmanlike manner and in conformity with all applicable building codes and requirements of governmental authorities and shall be of comparable structural quality as the existing store building for Tenant. Tenant agrees to indemnify and hold the Landlord harmless from any mechanics', materialmen's or laborers' liens or encumbrances arising out of such construction work and

to cause such liens, if any, to be promptly discharged.

2. Concurrently with the enlargement work to be undertaken by Tenant, Landlord agrees, at its expense, to cause the entire existing store building to be re-roofed, such work to be performed in a good and workmanlike manner and in conformity with all applicable building codes and regulations and in accordance with plans and specifications covering same to be approved by the parties hereto. Subsequent to installation of the new roof, Landlord shall have responsibility for repair and maintenance of the entire roof on the entire enlarged building.

3. It is understood that in order to permit Tenant to utilize the adjoining storeroom on the Westerly side of Tenant's building to effect the enlargement, the Landlord agrees to cause the tenant presently occupying such adjoining storeroom to remove therefrom, which removal Landlord agrees to effect on or prior to three (3) months subsequent to the date of execution hereof by both parties, and Landlord agrees to deliver possession of such storeroom to Tenant free and clear of all tenancies as soon as available, but in any event on or prior to the stipulated date. In the event Landlord fails for any reason to deliver possession to Tenant of all the space contemplated for the enlargement by the stipulated date, Tenant may at its option and election cancel and terminate this lease amendment whereby the said Lease dated October 25, 1971, as amended, shall continue in full force and effect as if this amendment had not been executed.

4. Upon the earlier to occur of (i) completion of the building addition, of the vestibule and the other renovations and alterations as contemplated herein, including the installation of the new roof by the Landlord, or (ii) the first day of the first month following the date Tenant receives a Certificate of Occupancy from Martin County, the following further modifications to said Lease, as amended, shall become effective:

(a) The building addition, together with all permanent improvements, alterations, renovations and related improvements herein contemplated, shall be and become a part of the demised premises, and whereinsoever in said Lease, as amended, reference

-3-

is made to the demised premises, the same shall be thereafter construed to apply to the enlarged building and the land on which the same shall stand.

(b) Said Lease, as amended, is hereby further amended to provide that instead of the rentals provided in Article 1 of said Lease, as amended, from and after the effective date hereof and any exercised option extensions thereafter, Tenant agrees to pay to Landlord as minimum guaranteed rental for the enlarged demised premises the sum of Ninety Thousand and no/100 Dollars ($90,000.00) per year, payable in twelve (12) equal monthly installments of Seven Thousand Five Hundred and no/100 Dollars ($7,500.00), which installments shall be due and payable in advance on the first day of each and every calendar month of the remainder of the lease term, and any exercised option extensions thereafter.

In addition, Tenant agrees to pay to the Landlord a percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30 exceeds Ninety Thousand and no/100 Dollars ($90,000.00). The percentage rentals, if any, shall be calculated and paid in like fashion as provided in Article 1 of said Lease, as amended.

Rentals shall be calculated and paid under the present applicable rates of the original Lease, as amended, until the rentals begin to accrue under the above substituted provisions, and the rentals for any month in which a change of rates occurs shall be prorated between the previously effective rates and the rates effective under the above substituted provisions. The parties hereto agree to execute a further supplement to the Lease, as amended, fixing the effective date of the rental adjustment contemplated in this paragraph when determined as herein provided, but containing no other terms and conditions changing the import hereof.

-4-

(c) Article 35 of said Lease dated October 25, 1971, as amended, shall be amended by deleting therefrom the two figures appearing therein of $2,272.00" and "$189.34" and there shall be substituted in lieu thereof the figures "$2,786.10" and "$232.18".

(d) It is understood and agreed that the tax contribution by Tenant for increased taxes as provided in Article 34 of said Lease, as amended, shall specifically apply to the increased taxes which are to be expected as a result of the construction of the addition to Tenant's building and the related improvements contemplated hereunder.

Tenant shall henceforth reimburse Landlord for the increased annual premium cost of fire and extended coverage insurance on the building on the demised premises resulting from the construction of the building addition and renovations to the existing building. The initial increment of increased premium cost of fire and extended coverage on the building on the demised premises to which Tenant is to contribute, resulting from such cause, shall be the difference between the annual premium paid immediately preceding construction of the building addition and the annual premium determined for the same type coverages immediately following the completion of the building addition as based upon the augmented value of the enlarged building. Tenant shall continue to reimburse Landlord for the amount of further increments of increased premium cost of insurance during the remainder of the initial term of the Lease, and any exercised option extensions thereafter.

(e) In that the enlargement of Tenant's building will have been accomplished under the terms and provisions of this Second Amendment to Lease, it is mutually understood and agreed that the option for expansion under the different formula provided in Article 37 of said Lease, as amended, shall be deemed null and void; provided, however, if for any reason the enlargement shall not be accomplished as contemplated in this Second Amendment to Lease, the said Lease, as amended, shall be deemed to continue in full force and effect, including the option for expansion as set forth in said Article 37 thereof.

-5-