5.  It is mutually understood and agreed that the said Lease dated October 25, 1971, as amended, shall be and remain in full force and effect and unmodified, except as the same is specifically modified and amended hereby.  All covenants, terms, obligations and conditions of said Lease, as amended, not modified or amended by this Second Amendment to Lease, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_Danlee DTroney_

_Michael Schil_
As to Landlord

_Mero Susnar_ (SEAL)
Mero Susnar

LANDLORD


_Frances N. Baylers_

_Judith W Dixon_
As to Tenant

WINN-DIXIE STORES, INC.

By _AW Walter_
   Its  _Assoc Vice_ President

Attest: _F P Hamilton_
        Its  _Ass't.-_ Secretary

TENANT

(CORPORATE SEAL)

Florida - 1 Individual 1 Corporate

STATE OF _FLORIDA_ )
COUNTY OF _PALM BEACH_ )

The foregoing instrument was acknowledged before me this
_February_ _25_, 19 _82_, by _____ MERO SUSNAR _____

_____

_____

(NOTARIAL SEAL)

_____Elizabeth Sehr_____
Notary Public, State and County aforesaid

My commission expires:
Notary Public, State of Florida
My Commission Expires Dec. 28, 1985


STATE OF  FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this
_March_ _1_, 19 _82_, by _CW Waldorf_
and _FP Hamilton_ Exec Vice President and _Asst_
Secretary, respectively, of _____ WINN-DIXIE STORES, INC. _____

_____, a _____ Florida _____

corporation, on behalf of the corporation.

_____Judith W Dixon_____
Notary Public, State and County aforesaid

(NOTARIAL SEAL)

My commission expires:
Notary Public, State of Florida at Large.
My Commission Expires April 12, 1984.

## SUPPLEMENTAL LEASE AGREEMENT

THIS AGREEMENT, made this _1st_ day of _November_, 1972, between W. G. LASSITER, JR., unmarried, (hereinafter called "Landlord") and WINN-DIXIE STORES, INC., a Florida corporation, (hereinafter called "tenant"); which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

### WITNESSETH:

WHEREAS, by Lease dated October 25, 1971, Landlord did lease and demise unto Tenant those certain premises, therein more particularly described, located in a shopping center development, known as Jensen Beach Plaza, located at the N. W. corner of North Savannah Road and Commercial Street, near the City of Jensen Beach, County of Martin and State of Florida, for the initial term of twenty (20) years commencing upon a date dependent upon the completion of certain construction, and for such rentals and upon such terms and conditions as more particularly set forth therein, a short form of said Lease being recorded in Official Record Book 332, page 386 of the Public Records of Martin County, Florida; and

WHEREAS, the said construction has been completed and the Tenant has now opened for business in the demised premises and the parties hereto desire to fix the commencement date of said Lease, as hereinafter set forth;

NOW THEREFORE, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and valuable consideration, in hand paid by the Tenant to the Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1. The commencement date of the above described Lease dated October 25, 1971 is fixed at October 15, 1972, and the expiration of the initial term of twenty (20) years demised therein shall be October 14, 1992, at twelve o'clock midnight.

APPROVED
AS 73-03:n
_(signature)_
DIVISION MGR.

This instrument was prepared Francis P. Hamilton, Attorn at-Law, whose address is 5 Edgewood Court, Jacksonvil Florida 32205

2.   It is mutually understood and agreed that the said Lease dated October 25, 1971 shall be and remain in full force and effect and unmodified, except as the same is specifically modified and amended hereby.  All covenants, terms, obligations and conditions of said Lease, not modified or amended by this Supplemental Lease Agreement, are hereby ratified and confirmed.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this agreement the day and year first above written.

Signed, sealed and delivered
in the presence of:

_Ellen M. Steele_

_Eusha Hutchinson_
As to Landlord

_____ (SEAL)
W. G. LASSITER, JR.

LANDLORD


WINN-DIXIE STORES, INC.

_Eloise Carrier_

By _____ President
Its

_Shirley M. Caulton_
As to Tenant

Attest: _____ Secretary
Its

TENANT

(CORPORATE SEAL)


-2-

OF FLORIDA        }
TY OF  PALM BEACH  }

Before me, the undersigned, a Notary Public in and for the State
County aforesaid, an officer duly authorized to take acknowledgments,
sonally appeared _____ W. G. LASSITER, JR., unmarried _____

sonally known to me and known by me to be the person  described in and
executed the foregoing instrument, and  he  acknowledged before me
t  he  executed the same for the uses and purposes in said instrument
forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my
icial seal, this /ST day of NOVEMBER ____, 19 72 , at

ST PALM BEACH _____, in said State and County aforesaid.

_Ellen M. Steele_
Notary Public, State and County
aforesaid

My commission expires:_____
Notary Public, State of Florida at Large
My Commission Expires Jun. 25, 1978

(Notarial Seal)


TATE OF  FLORIDA    }
OUNTY OF ·DUVAL     }

Before me, the undersigned, a Notary Public in and for the State
and County aforesaid, an officer duly authorized to take acknowledgments,
personally appeared _B. L. Thomas_ and _A. S. Bryan, Jr._
to me known to be the persons described in and who respectively as
President and _____ Secretary of _____ WINN-DIXIE STORES, INC., a _____

Florida corporation,
executed on behalf of said corporation; and they severally acknowledged
before me that they executed said instrument as such officers of said
corporation in name of and on behalf of said corporation; that said _____
Secretary affixed and attested the seal of said corporation to said instru-
ment; that such acts were done by authority of said corporation for the
uses and purposes in said instrument set forth; and that the foregoing
instrument is the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my
official seal, this 6th day of XXXXXXXXX _____, 19 72 , at

_____ Jacksonville, _____, in said State and County.

_Shirley Glenda Wisman_
Notary Public, State and County
aforesaid

My commission expires:_____
NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES JANUARY 18, 1974

(Notarial Seal)

TERM   FOR THE TENANT TO HAVE AND TO HOLD from the date when Tenant opens said premises for the transaction of its business as hereinafter provided for an initial term of _____ _____twenty (20)_____ years from said commencement date. The parties agree to execute a supplemental agreement fixing the commencement date when the same shall have been determined as herein provided.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

RENTAL   1.   The Tenant agrees to pay to the Landlord as a minimum guaranteed rental for the demised premises during the first five (5) years of the term of this lease the sum of Fifty-four Thousand Five Hundred Twenty-eight and no/100 Dollars ($54,528.00) per annum and during the succeeding fifteen (15) years of the term of this lease, and any extensions thereafter, the sum of Fifty-six Thousand Eight Hundred and no/100 Dollars ($56,800.00) per annum. The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of Four Thousand Five Hundred Forty-four and no/100 Dollars ($4,544.00) during the first five (5) years of the term of this lease, and Four Thousand Seven Hundred Thirty-three and 34/100 Dollars ($4,733.34) during the succeeding fifteen (15) years of the term of this lease and any extensions thereafter, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereafter.

In addition, the Tenant agrees to pay to the Landlord a percentage rental equal to amount, if any, by which one percent (1%) of Tenant's gross sales made from the demised premises in each fiscal year ending June 30th, during the first five (5) years of the term of this lease exceeds Fifty-four Thousand Five Hundred Twenty-eight and no/100 Dollars ($54,528.00), and during the succeeding fifteen (15) years of the term of this lease, and any extensions thereafter, exceeds Fifty-six Thousand Eight Hundred and no/100 Dollars ($56,800.00).

-2-

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year. However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold. The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year. For purposes of calculating the percentage rental due hereunder, the Tenant's fiscal year shall be from July 1st to June 30th of each year. The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month. Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental.

**DEFINITION OF "GROSS SALES"** 1a. The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit; provided, however, such term shall not include (1) any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) accommodation sales, such as sales of postage stamps, government bonds or savings stamps or similar items; (5) returns of merchandise to suppliers or manufacturers; (6) net amount of discounts allowed to any customer, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value; and (7) merchandise or other things of value issued in redemption of trading stamps or as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

**RECORD OF SALES** 1b. The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices. At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year. Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord.

**USE** 2. The demised premises may be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products, or for the conduct of any general mercantile business; provided, however, except as a supermarket, the demised premises shall not be used, nor assigned or subleased under the terms of Paragraph 26 herein, for any use or business which shall be in direct competition with the primary use or business engaged in by any other then tenant in the shopping center to whom Landlord has granted a right of exclusive use, of which Tenant has been given proper notice, as herein provided, and provided further, the demised premises shall not be used for * Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of said premises, as such shall relate to the cleanliness and use of said premises and the character and manner of operation of the business conducted in or at said premises.

*the sale of prescription drugs or drugs required to be dispensed licensed pharmacist.

walks, streets, entranceways, malls, parking areas, service areas, driveways and related improvements, said improvements (excluding buildings) being sometimes hereinafter referred to as "common areas." The Landlord, at its sole cost and expense, shall grade and surface with top quality materials all paved portions of the common areas (including parking area), and shall provide proper and adequate water drainage and lighting system and operations therefor and shall operate and maintain the same in good repair and usable condition for use by the patrons of the shopping center and the tenants and their employees during the term of this lease and any extensions thereof. The arrangement and location of all store buildings and common areas (including parking area) within the shopping center shall at all times during the term of this lease, or any extensions thereof, be maintained as shown on Exhibit "A" and shall not be changed without the written consent of the Tenant. If not shown on Exhibit "A", Tenant expressly reserves the right to approve the finish elevations of all store buildings and common areas (including parking and service areas) within the shopping center which are to be constructed concurrently with Tenant's store building.

Notwithstanding the foregoing, it is understood that Landlord intends initially to construct only Tenant's store building and the store buildings required under Articles 5 and 6 herein, together with all the common areas of the shopping center, including without limitation, all the sidewalks, drives, entranceways, service areas and parking areas shown on Exhibit "A". Landlord reserves the right, but shall not be required, to construct additional buildings within the areas reserved therefor, with the depth and interior dimensioning of same to be at Landlord's discretion, provided, however, such additional buildings shall be of like structural and architectural quality as the building for Tenant and all such buildings shall be set back from the streets adjoining the shopping center or the property lines thereof distant at least within the sidewalk lines or building outlines as shown on Exhibit "A"; and provided further, however, throughout the shopping center in conjunction with the construction of any additional buildings, at least the ratio of automobile parking area to gross building area as hereinafter required shall be maintained at all times. Landlord agrees that Tenant shall have uninterrupted use and enjoyment of the demised premises and the common areas during any such additional construction without unreasonable interference therewith by reason of such construction work.

Concurrently with the above construction, Landlord agrees at its sole cost and expense, to construct the store building for occupancy by Tenant in accordance with the plans and specifications to be approved by both Landlord and Tenant. Plans and specifications shall be approved when initialed by both parties, and when initialed shall constitute a part of this lease. Said plans and specifications shall provide for a completed store building, commonly referred to as a "lock and key job," and shall include, but without limitation the following: automatic doors, interior partitions, all plumbing and plumbing fixtures, drains, electrical wiring, lighting fixtures to Tenant's requirements, connection of Tenant's trade fixtures to plumbing and electrical outlets, air conditioning and heating systems and equipment including insulated ducts, music and P. A. systems (except microphones and amplifiers to be furnished by Tenant), storm shutters, two-inch bonded to concrete terrazzo floors in sales area and vinyl asbestos, quarry tile and ceramic tile floor coverings as specified in other areas (color at Tenant's option) and connections to all utilities. Tenant at its own expense shall furnish its own trade fixtures.

**COMPLETION DATE**

4. Landlord covenants and agrees that the construction of the shopping center shall begin not later than _____January 1, 1972_____ and shall be completed not later than _____August 1, 1972_____; and if the same shall not be begun or completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and terminate this lease or may extend the Landlord additional time for the beginning or completion of construction; provided, however, that if after the beginning of construction the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than _____December 1, 1972_____, said option to terminate shall not arise. If pursuant to this paragraph Tenant shall cancel or terminate this lease, Landlord agrees for a period of three (3) years after such cancellation or termination not to permit or consent to the use as a supermarket of the demised premises, or any portion of the shopping center, or any enlargement thereof.

-4-

The Tenant shall open its store for business within thirty (30) days following performance of the following:

(a) Tenant's store building and other improvements constructed on the demised premises shall have been delivered to Tenant completed in accordance with the plans and specifications;

(b) Construction of all of the common areas (including parking area hereinafter specifically required) shall have been completed substantially as shown on Exhibit "A";

(c) Construction of at least ____110____ lineal feet of store frontage and ___12,000___ sq. ft. of total building area (excluding Tenant's store building) shall have been completed as shown on Exhibit "A" and said area leased to other tenants and opened for business or readied for opening for business simultaneously with Tenant; and

(d) The stores to be operated by each of the following tenants shall have been completed and opened for business or been readied for opening for business simultaneously with Tenant:

> Drug Store
> Eagle Family Discount Store

(e) 5,000 sq. ft. of additional building space for occupancy by retail and service shops shall have been constructed and under roof, but floors, interior partitions, store fronts and interior finishes thereof need not be completed until any specific space is occupied, and none of such space shall be required to be leased to tenants or opened for business.

In the event that all the above requirements shall not have been met on or prior to __December 1, 1972_____, the Tenant at its sole option may cancel and terminate this lease.

Rent shall begin to accrue hereunder upon the date the Tenant opens its store for business, or upon the expiration of thirty (30) days following the performance of all the above requirements, whichever date shall sooner occur. No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications.

**OFFICES AND THEATRES**     Landlord expressly agrees that no motion picture or legitimate theatre, nor office building, shall be permitted within the shopping center, or any enlargement thereof, without the prior written consent of Tenant.

**OTHER TENANTS**     6. As a condition and inducement to Tenant's entering into this lease, Landlord represents and warrants that it has entered into firm commitments for leases with the tenants listed below for the terms and for the amount of floor space indicated:

| Name | Minimum Term Years | Minimum Floor Area (sq. ft.) |
|---|---|---|
| Drug Store | 10 | 6,000 ok |
| Eagle Family Discount Store | 15 | 6,000 ok |

Landlord further warrants and represents that such tenants shall occupy the space in the shopping center in the locations indicated on Exhibit "A" and in the minimum amounts set opposite their respective names above; and Landlord agrees, on demand, to furnish evidence satisfactory to Tenant, prior to and as a further condition to the establishment of the commencement date of this lease, that Landlord has entered into non-cancellable leases, except for default, with such tenants.

PARKING
AND
COMMON
AREAS

7. Landlord hereby ~~dates and grants to Tenant, its~~ employees, agents, suppliers, customers and invitees, a non-exclusive right at all times to use, free of charge, during the term of this lease, or any extensions thereof, all the common area, including parking area, as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with others similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks.

Landlord shall at all times during the term of this lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A", and of sufficient area to provide:

(a) a minimum ratio of at least _____2.75_____ square feet of automobile parking area to each square foot of gross building area (including additional floor levels) in the shopping center, and

(b) facilities for convenient parking of at least ___160___ automobiles;

and in event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details, the Tenant at its option shall have the right to terminate this lease, provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord curing the default within thirty (30) days after receipt of such notice of termination. All of the common areas (including parking area) shall be adequately lighted by Landlord at its expense during customary food store shopping hours, and Landlord further agrees that no signboards or other construction shall be erected in any of the common areas (including the parking area) shown on Exhibit "A" or so as to obstruct the view of the demised premises from the adjoining public streets.

The parcel marked "Not Included" on Exhibit "A" at the N. W. corner of Commercial Street and North Savannah Road may be used only for the operation of a service station, a bank or savings and loan association, a bar and/or liquor store, a restaurant or for any drive-in type retail or service business, provided any building on such parcel shall not exceed one story in height or 3500 sq. ft. in area. Pending such use, this area shall be maintained as paved parking area or as a grassed and landscaped area and kept free of weeds and underbrush.

SERVICE
AREA

8. Landlord further agrees to provide for the exclusive use of the Tenant at its grocery service entrances a parking space for two large trailer trucks for continuous use and further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such space as may be reasonably needed by Tenant for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

UTILITIES

9. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities used by Tenant on the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities. (See also Article 36 hereinafter)

TENANT'S
REPAIRS

10. Upon completion of construction by Landlord and acceptance of the demised premises by Tenant, Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of the Landlord or which are made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear. Within such repair responsibility of Tenant shall be included: the air conditioning and heating equipment (but not duct work which shall be the responsibility of Landlord) and the terrazzo flooring, provided, however, Landlord shall accord to Tenant the benefit of any warranties extended by the manufacturers or installers of such equipment and flooring; the interior exposed plumbing including any stoppages thereof, except such as may be caused by structural defects or faulty construction; and the replacement of any plate glass damaged or broken, except that covered by Landlord's fire and extended coverage insurance.

-6-

LANDLORD'S
REPAIRS

11. The Landlord shall, at its cost and expense, keep and maintain the common areas (including parking area) in good condition and repair, and shall maintain the exterior of Tenant's store building, including the window frames, roof, gutter, downspout, exterior painting, masonry walls, foundation and structural members, and the plumbing (including septic tank, if any) and wiring, concealed of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises. If any portion of the common areas (including parking area) or any portion of the store building, which is the responsibility of the Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so, except that the Landlord shall not be obligated to make or pay for any repairs to Tenant's store building rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, agents or employees, except in the case of damage by fire or the elements, or other casualty covered by Landlord's fire and extended coverage insurance.

If in order to protect the Tenant's property in the store building it shall be necessary to make emergency repairs to any portion thereof which is the responsibility of the Landlord to repair, or if the Landlord after receipt of notice as above provided fails or neglects to make with all due diligence such other repairs to the store building or common areas (including parking area) which are the responsibility of the Landlord, the Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred by it in making such repairs. Landlord further covenants that the store building will be so constructed and maintained at all times so as structurally to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the premises which may become necessary in order that said premises may conform to such ordinances, statutes, rules or regulations now in force or which may be hereafter passed, adopted or promulgated.

SIGNS

12. Tenant may place, erect and maintain any signs on the roof, walls, and any other place on or about the demised premises, which signs shall remain the property of Tenant and may be removed at any time during the term of this lease, or any extension thereof, provided Tenant shall repair or reimburse Landlord for the cost of any damage to the demised premises resulting from the installation or removal of such signs.

Tenant, at its option and expense shall be permitted to construct and maintain one pylon sign advertising its business in substantially the location adjoining the Northerly margin of Commercial Street as shown on Exhibit "A", and as part of the initial construction, Landlord, at its expense, agrees to lay and install suitable empty underground electrical conduit extending to Tenant's building, to be stubbed-up and capped at the sign site, with the balance of the cost of the sign to be borne by Tenant.

FIXTURES
AND
INTERIOR
ALTERATIONS

13. The Tenant, at its own expense, may from time to time during the term of this lease make any interior alterations, additions and improvements in and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease.

-7-

Tenant may construct and build or install in said premises any and all racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time; provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items.

**INDEMNIFI-**
**CATION**

14. Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises.

Likewise, Landlord shall indemnify and save harmless the Tenant from any claim or loss by reason of an accident or damage to any person or property happening on or about all common areas (including, without limitation, parking area, sidewalks, ramps and service areas) of the shopping center, and Landlord further agrees to carry, at its expense, public liability insurance coverage on all common areas (including, without limitation, parking area, sidewalks, ramps and service areas) of the shopping center, with a contractual liability endorsement on the policy, in a company qualified to transact business in the state in which the demised premises are located, stipulating limits of liability of not less than $200,000 for an accident affecting any one person; and not less than $500,000 for an accident affecting more than one person; and $50,000 property damage. Certificate of such coverage from the insuror providing 30 days' notice to Tenant prior to cancellation or termination shall be furnished to Tenant.

**CLEANLINESS**

15. Tenant shall at all times keep the interior of the store building in a reasonably neat and orderly condition and shall keep the entryways and delivery areas adjoining the building reasonably clean and free from rubbish and dirt. Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon, and Tenant further agrees to permit the Landlord or its agent at all reasonable times to enter upon the premises for making repairs and for examining or showing the same to prospective purchasers.

**FIRE**

16. In the event that Tenant's building shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty, then Tenant may elect within thirty (30) days after such damage, to terminate this lease by giving to the Landlord a written notice of termination, and thereupon both parties shall stand released of and from all further liability under this lease. If Tenant's building shall thereby suffer damage to any extent less than 75% of the value thereof, or if Tenant does not elect to terminate as aforesaid, then the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored. If at any time during the term

-8-

of this lease of any exten    thereof any of the buildings in the    opping center, exclusive of
Tenant's store building, are damaged by fire or by the elements or otherwise, Landlord shall im-
mediately commence and diligently prosecute to completion repair of all such damage and shall
restore said improvements to their condition prior to such damage.

Landlord agrees to carry fire and extended coverage insurance on Tenant's
building and any additions, alterations and improvements made thereto by Land-
lord or Tenant and on all other buildings within the shopping center in the
amount of full insurable value thereof, above foundation walls, and hereby
expressly waives any and all claims against the Tenant for loss or damage due
to fire, explosion, windstorm or other casualty covered by such insurance,
regardless of the cause of such damage, including without limitation, damage
resulting from the negligence of the Tenant, its agents, servants or employees.

*Insurance covers*

**IET
JOYMENT**

17. The Landlord covenants, warrants and represents that upon commencement of the lease
term, the shopping center, including the demised premises, will be free and clear of all liens
and encumbrances superior to the leasehold hereby created; that the Landlord has full right
and power to execute and perform this lease and to grant the estate demised herein; and that
the Tenant on paying the rent herein reserved and performing the covenants and agreements
hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights,
easements, appurtenances and privileges belonging or in anywise appertaining thereto, during
the full term of this lease and any extensions thereof.

The Landlord warrants the non-existence of any zoning or other restriction preventing or
restricting use of the demised premises for the conduct of a general mercantile business or use
of common areas for parking purposes, and that should such zoning or other restriction be in ef-
fect or adopted at any time during the term of this lease, preventing or restricting Tenant from
conducting a general mercantile business or using the common areas (including parking area) in
conjunction therewith, the Tenant at its option may terminate this lease and shall stand released
of and from all further liability hereunder.

**AXES
ND
IENS**

18. All taxes, assessments and charges on land or improvements and obligations secured by
mortgage or other lien upon the demised premises or the shopping center shall be promptly paid
by the Landlord when due. The Tenant may perform, acquire or satisfy any lien, encumbrance,
agreement or obligation of the Landlord which may threaten its enjoyment of the premises, and
if it does so it shall be subrogated to all rights of the obligee against the Landlord or the premises
or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, to-
gether with interest thereon at six per cent (6%) per annum.

**:ONDEM-
ATION**

19. If any part of the demised premises or more than twenty per cent (20%) of the buildings,
exclusive of Tenant's building, within the shopping center, be taken for any public or quasi-public
use, under any statute or by right of eminent domain, or private purchase in lieu thereof, the
Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other
charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect
to terminate this lease as aforesaid, the Landlord shall immediately commence and diligently
prosecute to completion the repair and restoration of the improvements, including Tenant's
store building, within the shopping center to a condition comparable to their condition at the
time of taking and the lease shall continue, but Tenant shall be entitled to such division of
proceeds and abatement of rent and other adjustments as shall be just and equitable under
all circumstances.

-9-

In the event that any portion of the common areas (including parking area and access thereto) designated as such on Exhibit "A", be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, so as to materially or substantially interfere with the conduct of Tenant's business in the demised premises, or so as to reduce the required parking area by an amount in excess of ____ten____ per cent ( 10 %) or reduce the number of cars which may be conveniently parked to less than ____144____, the Tenant may, at its option, terminate this lease and shall be liable for rent only up to the time of such taking.

**DEFAULT**

20. In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated, from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom; but Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default.

**BANKRUPTCY**

21. The Tenant further covenants and agrees that if, at any time, Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease agreement at an end and shall forthwith be entitled to immediate possession of the said premises.

-10-

CONSTRUCTION  22.  It is understood and agreed that nothing herein contained shall constitute the Landlord as
OF BUILD-       the agent in any sense of the Tenant in constructing said improvements, and that the Tenant
INGS            shall have no control or authority over the construction of said improvements, beyond the right
to reject the tender of the Tenant's store building for the causes herein stated. The Tenant shall
not in any manner be answerable or accountable for any loss or damage arising from the negli-
gence or the carelessness of Landlord or Landlord's contractor or of any of their sub-contractors,
employees, agents or servants by reason of Landlord's constructing said improvements pursuant
to the terms of this lease. Landlord shall indemnify Tenant and save Tenant harmless from and
against all claims and suits for damage to persons or property from defects in material or from
the use of unskilled labor or from any negligence caused by Landlord, Landlord's contractors,
sub-contractors or by any of their employees, agents or servants during the progress of the work
in constructing said improvements or from any faulty construction thereof.


NOTICES    23.  All notices required to be given to Landlord hereunder shall be sent by registered or certi-

fied mail to, and all rent payments shall be made to Landlord at  4801 Georgia Avenue,

West Palm Beach, Florida 33405.

or to such other address as Landlord may direct from time to time by written notice forwarded
to Tenant by registered or certified mail.

All notices required to be given to Tenant shall be sent by registered or certified mail to

Tenant at  P. O. Box 352, Biscayne Annex, Miami, Florida 33152,

or to such other address as Tenant may direct from time to time by written notice forwarded to
Landlord by registered or certified mail.


END OF     24.  The Tenant will yield up the demised premises and all additions thereto (except signs,
TENANCY    equipment and trade fixtures installed by Tenant at its expense) at the termination of the
tenancy in as good and tenantable condition as the same are at the beginning of Tenant's oc-
cupancy, reasonable wear and tear, damage by fire and other casualties and condemnation ap-
propriation by eminent domain excepted, and also excepting any damage, disrepair and other
condition that the Landlord is obligated hereunder to repair or correct.


ARBITRATION  25.  In the event there should arise any misunderstanding between the parties hereto as to the
compliance with the terms and conditions of this lease upon the part of either of the parties
hereto, or as to whether the Tenant's store building tendered by the Landlord has been improved
in substantial conformity with the plans and specifications approved by the parties, or whether
the common areas, including parking area, comply with the agreement of the parties hereto,
or as to whether either party has ground hereunder entitling it to terminate this lease, it is
mutually agreed that such differences, if they cannot be satisfactorily adjusted between the
parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties
hereto agree upon one; otherwise, to a board of three arbitrators, of whom one shall be selected
by each party within ten (10) days after such 30-day period, and a third person shall be selected
by these two; and the decision and award of such single arbitrator, if only one is used, or any
two of such board, if three are used, as the case may be, shall be final and binding upon the said
parties and their successors and assigns respectively, and shall have the same force and effect as
though such decision had been handed down by a court of final jurisdiction. Each of the parties
hereto covenants to abide by any such arbitration decision.

ASSIGNMENT AND SUBLEASING

26. The Tenant may without the consent of the Landlord assign this lease, or sublease the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease

EXTENSIONS

27. It is further agreed that Tenant, at its option, shall be entitled to the privilege of __five__ (5) successive extensions of this lease, each extension to be for a period of __five__ (5) years and on the same terms and conditions and __at the same rentals as provided for the last fifteen years of the initial lease term.__

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least __six (6) months__ before the expiration of the initial term, and if extended, at least __six (6) months__ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document.

EXCLUSIVE SUPERMARKET

28. Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods or frozen foods without written permission of the Tenant, except the sale of such items in not to exceed the lesser of 500 square feet of sales area or 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business, and except the sale by a restaurant operation of prepared ready-to-eat food items, either for consumption on or off the premises, shall not be deemed a violation hereof.

In the event the demised premises are at any time subject to a first mortgage (provided Tenant has been notified in writing of the name and address of the holder thereof) and so long as said mortgage shall encumber the demised premises, and notwithstanding any provision herein to the contrary, the Tenant shall have no right to cancel or terminate this lease or to withhold rental payments because of a violation of the terms of this exclusive provision as to property located within 1000 feet of any exterior boundary of the shopping center, but nothing herein shall deprive Tenant of any rights of recourse against Landlord, its successors and assigns, by way of suit for damages or injunctive relief, or as otherwise provided by law, in the event of any such violation.

-12-

SUBORDINATE  29. The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord; and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination; provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder.

BENEFIT  30. This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

SHORT FORM LEASE  31. The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording.

MARGINAL TITLES  32. The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

COMPLETE AGREEMENT  33. This written lease contains the complete agreement of the parties with reference to the leasing of the demised premises, except plans and specifications for Tenant's store and related improvements to be formally approved by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

TAXES  34. During the term of this lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of any increase in ad valorem real estate taxes levied against the demised premises in excess of the amount of such taxes levied thereon for the first (1st) full calendar year of the lease term in which both the value of the land and the buildings thereon shall be assessed for tax purposes; provided, however, any additional rental payable hereunder by the Tenant may be credited on a non-cumulative basis against any and all percentage rental, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the lease term or any extensions thereof, shall be prorated on the basis of the annual credit.  Tenant shall be responsible only for its pro rata share of such taxes for fractional years occurring at the beginning and expiration of the term of this lease, and any extensions thereof.

If such taxes shall not be assessed separately, but shall be included within an assessment of the demised premises and others, said assessments shall be fairly apportioned to determine Tenant's share thereof. Such apportionment shall be made in the ratio which the square footage of Tenant's store building bears to the total square footage of all store buildings (including additional floor levels) from time to time existing in the shopping center. The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any abatements, discounts or refunds thereon. Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any increase in taxes is chargeable to Tenant, and such additional rental shall be payable by Tenant on demand after payment by Landlord. All taxes, other than ad valorem real estate taxes, including special assessments improvement liens and the like, shall remain the sole responsibility of the Landlord. However, Tenant shall remain responsible for sales taxes on rentals levied by law on lessees.

-13-

Tenant shall have the right from time to time to contest or protest
or review by legal proceedings or in such other manner as may be
provided, any such taxes, assessments or other governmental impositions
aforementioned, and to institute such proceedings in the name of the
Landlord as the Tenant may deem necessary; provided, however, any
expense incurred by reason thereof shall be borne by the Tenant and
such proceedings conducted free of all expense to the Landlord.

COMMON AREA    35.  Landlord agrees to operate and maintain all the common
MAINTENANCE    areas, as herein defined, and provide therefor all such services
as are reasonably required, including, but without limitation,
cleaning and sweeping, lighting, policing, if necessary, general
repair and maintenance of all paved surfaces, repainting of parking
area striping, and watering and maintenance of landscaped areas.  For
such services, Tenant shall pay to Landlord, as additional rental
hereunder and as reimbursement for the annual cost thereof, the sum
of $2,272.00 per year, payable in twelve (12) equal monthly install-
ments of $189.34 per month in advance on the first day of each and
every calendar month of the lease terms, and any extensions thereof.
If the Landlord after receipt of written notice from Tenant to do so
shall fail to make the repairs or perform the services described in
this Article, the Tenant shall have the right to make such repairs or
cause such services to be performed in its behalf and to deduct from
the rental installments then due or thereafter to become due such
sums as may be necessary to reimburse the Tenant for the money expended
or expense incurred therein.

WATER AND    36.  It being understood that Landlord will initially provide
SEWER        water to Tenant's building from Landlord's private water system
CHARGES      and sanitary sewage disposal by septic tank or other private
disposal system operated by Landlord, Tenant agrees to pay to
Landlord for such water and sewer services the equivalent amount
charged for the same services from time to time by Martin County
to its customers in the same commercial category as Tenant.  Landlord
warrants unto Tenant that the water and sewer services provided by
Landlord shall be maintained in full compliance with all laws,
ordinances, rules and regulations of the governmental and public
authorities having jurisdiction of the shopping center and Tenant's
demised premises.  As soon as a public water supply and/or sanitary
sewer system becomes available to the shopping center, Landlord, at
its sole expense, agrees promptly to connect Tenant's building
thereto, and thereafter Tenant shall no longer make such payments
to Landlord but shall make the requisite payments to the public
authority supplying the services.  Landlord expressly agrees that
it alone, and not Tenant, shall be responsible for any assessments,
tap-in or connection charges made by the public authority in extend-
ing water and sewer services to the shopping center.

-14-

37. Tenant is hereby granted the option and privilege at any time during the term of this lease, or any extensions thereof, of enlarging its core building by incorporating therein the area to the Westerly side thereof, such addition not to exceed thirty (30) feet in width by one hundred forty-two (142) feet in depth. This option may be exercised only at such times as the adjoining storerooms may be vacant, or at five (5) year intervals, it being contemplated that Landlord shall not lease such area to other tenants for in excess of five (5) years, and that Tenant shall have the expansion privilege herein described no later than five (5) years from the commencement date hereof and at five (5) year intervals thereafter. Landlord shall give notice to Tenant of any such expiration date and, during the period between six (6) months and three (3) months prior to such expiration date, afford to Tenant the opportunity to exercise this option, and upon Tenant giving to Landlord a notice in writing of its exercise thereof, Landlord agrees to construct such addition, or prepare such enlargement area for occupancy by Tenant, in accordance with plans and specifications to be approved by the parties hereto, with the construction to be completed with all due diligence following the vacation of the necessary area by any other tenant, and the enlarged portion of the building to be of a like quality of construction as the original building for Tenant. Upon completion of such building addition, or tender of such additional space to Tenant, if there shall not at such date remain at least ten (10) years of the then term of this lease, such term shall be extended for such period of time as shall be necessary to provide a full ten (10) years from such date. Thereafter, during such extended term, the annual minimum guaranteed rental shall be increased by the greater of: an amount equal to twelve percent (12%) of the cost of such addition, or an amount equal to $2.50 per square foot of the enlargement area, or an amount equal to a computed percentage times the cost of such addition, such percentage consisting of four percent (4%) plus the current prime interest rate charged by New York City banks at the time of the exercise of the option. At Tenant's request, construction cost shall be established by bids obtained by Landlord from at least three (3) reputable contractors acceptable to Tenant, with the final cost of the addition upon completion to be certified to by the general contractor performing the work. During such extended term the provisions of this lease shall remain in effect and the option periods herein provided, if any shall remain, shall be construed to follow upon the end of the extended term and the rentals to remain as adjusted in consequence of the addition. Upon completion of the addition, it shall be and become a portion of the demised premises and this lease thereby be taken and construed as so amended.

Nothing herein contained shall constitute any express or implied obligation on the part of the holder of a first mortgage encumbering the fee simple title to the demised premises, or of any purchaser at a sale under foreclosure of such mortgage, to comply with the terms and provisions of this Article, it being the understanding of the parties that the obligation to cause such expansion is the sole obligation of the Landlord, its heirs, legal representatives, successors and assigns.

Landlord expressly agrees that in the event it acquires any additional property to the West of and adjoining the present westerly line of the shopping center and if such additional land shall be utilized for an enlargement of the shopping center, Tenant shall be accorded the privilege under this expansion option provision of requiring that Tenant's permitted expansion area shall be 40 feet in width by 142 feet in depth instead of the dimensions above set forth. In the event the wider expansion area shall become so available or be utilized, the Landlord agrees also to nevertheless continue to maintain a service drive of a minimum width of 20 feet adjoining the West wall of Tenant's enlarged building or any other buildings which may be constructed from time to time to the West of Tenant's building to the end that there will always be a through service drive permitting a circular traffic pattern around the buildings from time to time constructed in the shopping center, or any enlargement thereof.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this

instrument the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____

_____
As to Landlord

_____ (SEAL)
W. G. Lassiter, Jr.

LANDLORD


_____

_____
As to Tenant

WINN-DIXIE STORES, INC.

By _____
Its _____ President
Attest: _____
Its _____ Secretary

TENANT

(CORPORATE SEAL)

Florida - individual and corporate

STATE OF   FLORIDA        )
COUNTY OF  Palm Beach      )

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, an officer duly authorized to take acknowledgments, personally appeared _____ W. G. LASSITER, JR., unmarried,

personally known to me and known by me to be the person described in and who executed the foregoing instrument, and he acknowledged before me that he executed the same for the uses and purposes in said instrument set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, this 25th day of _____, 19 71, at _____, in said State and County aforesaid.

_____
Notary Public, State and County
aforesaid

My commission expires:_____
Notary Public, State of Florida at Large
My Commission Expires Sept. 28, 1974

(Notarial Seal)


STATE OF   FLORIDA        )
COUNTY OF  DUVAL           )

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, an officer duly authorized to take acknowledgments, personally appeared Joe A Adams and _____ respectively as _____ to me known to be the persons described in and who President and _____ Secretary of _____ WINN-DIXIE STORES, INC., a

Florida corporation,
executed on behalf of said corporation; and they severally acknowledged before me that they executed said instrument as such officers of said corporation in name of and on behalf of said corporation; that said Secretary affixed and attested the seal of said corporation to said instrument; that such acts were done by authority of said corporation for the uses and purposes in said instrument set forth; and that the foregoing instrument is the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, this 27th day of _____, 19 71, at _____ Jacksonville _____, in said State and County.

_____
Notary Public, State and County
aforesaid

My commission expires:_____
NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES APRIL 12, 1972

(Notarial Seal)

LEGAL DESCRIPTION
OF
SHOPPING CENTER

That certain piece, parcel or tract of land situate, lying
and being in the County of Martin and State of Florida,
more particularly described as follows:

The Southeast 1/4 of the Northeast 1/4 of the
Northeast 1/4 of Section 21, Township 37 South,
Range 41 East, LESS AND EXCEPT the following
described portions thereof:  the West 200 feet;
the North 180 feet; the South 200 feet of the
East 175 feet; the right-of-way of State Road
707A (Commercial Street); and the right-of-way
of North Savannah Road.

EXHIBIT "B"