Exhibit A

Form B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT<br>MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION<br>Winn-Dixie Stores, Inc., et al., Case No. 05-03817-3F1 Jointly Administered | Chapter 11<br>PROOF OF CLAIM | DEADLINE FOR FILING PROOFS OF<br>CLAIM IS: AUGUST 1, 2005 AT 5:00 P.M.<br>EASTERN TIME |

**Name of Debtor Against Which You Assert Your Claim:**

Debtor Name _____     Case No _____
(See List of Names and Case Numbers on Reverse Side)

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

A. Name and Address of Creditor (The person or other entity to whom the debtor owes money or property):

|||||||||||| 19954302
Creditor Id WDX-315804-B1-40
EVANGELINE LIFE INSURANCE CO
PO BOX 13098
NEW IBERIA, LA 70562-3098

Telephone No of Creditor _____

Fax No of Creditor _____

(If your address has changed or is incorrect as it appears in Item A, please provide corrections)

Your claim is scheduled as follows

**Debtor**
Winn-Dixie Montgomery, Inc
**Classification**
Unsecured Non-Priority Claim
**Scheduled Amount**
$ 00
Unliquidated

DEBTOR  WINN - DIXIE STORES, INC
U S BANKRUPTCY COURT  M D -FLORIDA
JOINTLY ADMINISTERED UNDER
CASE  05-03817 (3F1)
CHAPTER 11

**CLAIM NO.: 8779**

B. Name and address of signatory or other person to whom notices must be served, if different from above (Check box if) ☐ replaces address above ☐ additional address

Name _____
Company/Firm _____
Address _____

Account or Other Number by Which Creditor Identifies Debtor _____

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach a copy of statement giving particulars

☐ Check box if you have never received any notices in this case

Check here if this claim
☐ replaces ☐ amends      a previously filed claim, dated _____

If an amount is identified above, you have a claim scheduled by the Debtor as shown  If you agree with the amount and classification of your claim as scheduled by the identified Debtor and you have no other claims against any of the debtors, you do not need to file this proof of claim, EXCEPT AS FOLLOWS  If the amount shown is listed above as DISPUTED, UNLIQUIDATED, OR CONTINGENT, a proof of claim MUST be filed in order for you to receive any distribution on account of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not refile your claim

1. Basis for Claim
☐ Goods sold to debtor(s)
☐ Services performed for debtor(s)
☐ Goods purchased from debtor(s)
☐ Money loaned
☐ Personal injury/property damage
☐ Other
☐ Taxes
☐ Severance agreement
☐ Refund
XX Real property lease
☐ Personal property lease
☐ Other contract
☐ Retiree benefits as defined in 11 U S C § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of SSN _____
Unpaid compensation for services performed from
_____ to _____
(date)        (date)

2. Date debt was incurred
March 1, 2005

3  If claim is based on a Court Judgment, date obtained _____

4. Total Amount of Claim at Time Case Filed:
$ 45,062.41 _____ $ _____ $ _____ $ 45,062.41
(unsecured)       (secured)       (priority)       (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

5. Secured Claim.
☐ Check this box if your claim is secured by collateral (including a right of setoff)

Brief description of Collateral
☐ Real Estate  ☐ Motor Vehicle  ☐ Other _____

Value of Collateral  $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any  $ _____

Unsecured Nonpriority Claim $ 45,062.41
X Check this box if  a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority

7.  Unsecured Priority Claim.
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $ _____
Specify the priority of the claim
☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507 (a) (3)
☐ Contributions to an employee benefit plan – 11 U S C § 507 (a) (4)
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507 (a) (6)
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U S C § 507 (a) (7)
☐ Taxes or penalties owed to governmental units – 11 U S C § 507 (a) (8)
☐ Other – Specify applicable paragraph of 11 U S C § 507 (a) ( )
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim

Supporting Documents  Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien  DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain  If the documents are voluminous, attach a summary

Date-Stamped Copy  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

This Space is For Court Use Only

Date _____

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) and to receive notice:

Print  David L. Landry     Title  Vice President
Signature  David L. Landry

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

RECEIVED
2005 JUL 28  PM 1:17
U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
LOGAN & COMPANY, INC.
AS AGENT

March 1, 2005

Ms. Jay Archambault
Real Estate Manager
Winn-Dixie of Lousiana
P. O. Box 51059
New Orleans, La. 70151-1059

Re: 2004 Reimbursements - Winn-Dixie #1549 - Breaux Bridge, La.

Dear Mr. Archambault:

Enclosed you will find copies of paid receipts and cancelled checks for all reimbursement expenses for the above referenced store. I have also attached a separate accounting exhibit for your records.  The documentation on the insurance premium consists of correspondence from our parent company, Mothe Life Insurance Company. We hope this will be sufficient.  Also, an invoice for the amortized portion of the resurfaced parking lot is included.

Should you have any questions concerning this information, please don't hesitate to call me. Assuming the enclosed information is correct, I will anticipate reimbursement with next months' remittance. Please make proceeds payable to Evangeline Life and we will disburse.

Winn-Dixie occupies 68.74% of the total shopping center. Therefore, all community expenses should be shared at this percentage.

Thanking you in advance for your consideration in this matter, I remain,
Very truly yours,

Evangeline Life Insurance

David L. Landry
Vice President

Enclosures

**Reimbursable Expense Accounting:**

**Tax computation;**

| | |
|---|---|
| Taxes due for 2004 | $38,409.88 |
| Percentage of Occupancy | 68.74% X $38,409.88 = $26,402.95 |
| **Total Tax** | **$26,402.95** ✓ |

**Insurance:**

| | |
|---|---|
| Total  Annual Premium (Property) | $9,388.00 |
| Percentage of Occupancy | 68.74% X $9,388.00= $6,453.31 |
| **Total Insurance** | **$6,453.31** |

Misc. Expenses:

| | |
|---|---|
| Cleco (Parking Lot Lighting) | $   5,529.37 |
| Saturn (Sweeping and Lawn) | $12,227.62 |
| **Total Misc.** | **$17,756.99 X 68.74% = $12,206.15** |

**Total Reimbursable Expense Recap:**

| | |
|---|---|
| Taxes | $ 26,402.95 |
| Insurance | $  6,453.31 |
| Misc. Expense | $ 12,206.15 |
| **Total to reimburse** | **$ 45,062.41** |

- SC-2M

SCA-?

# Lease

THIS LEASE, made this __11th__ day of __October__, 19 __73__

between __SINGER HOUSING COMPANY d/b/a THE MITCHELL COMPANY, a__

__Delaware corporation qualified to do business in Louisiana,__

(hereinafter called "Landlord")

and __WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified__ __to do business in Louisiana,__

(hereinafter called "Tenant"), _____

which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires,

singular or plural, and the heirs, legal representatives, successors and assigns of the respective

parties,

### WITNESSETH

PREMISES

That the Landlord, in consideration of the covenants of the Tenant, does hereby lease and

demise unto said Tenant and the Tenant hereby agrees to take and lease from the Landlord,

for the term hereinafter specified, the following described premises

That certain store building, approximately __130__ feet in width by __140__

feet in depth_____

and the land on which the same shall stand (hereinafter collectively called "demised

premises"), which store building and related improvements are to be constructed by

Landlord according to plans and specifications to be approved by the parties as herein

provided, and shall be in the location and of the dimensions as outlined in red on the

Plot Plan __last revised July 26, 1973, by Dietz, Prince & Fischrupp__

__Architects, Mobile, Alabama, entitled "Proposed Shopping Center,__

__New Breaux Bridge Park, Breaux Bridge, La.",__

attached hereto marked Exhibit "A" and by this reference made a part hereof

The demised premises are located in a shopping center development (shown in

detail on Exhibit "A"), known as __"New Breaux Bridge Park Shopping Center"__

(hereinafter called "shopping center"), __fronting on the northerly side__ of

__Rees Street (Louisiana Highway 328) between two proposed__
streets

in the __Town of Breaux Bridge__      Parish of __St. Martin__

State of __Louisiana__       the legal description of the shopping center being

as follows

(said New Breaux Bridge Park
Shopping Center is described
in Exhibit "B" attached hereto
and by this reference made a
part hereof)

APPROVED
AS TO FORM
Division Mgr
Legal Dept
Winn Dixie Stores
Inc.

SC 265

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by the Tenant within sixty (60) days after the expiration of each fiscal year However, upon final termination of the lease if not extended, or upon termination of the last extension thereof any excess rent which may be due by reason of said percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the lease-hold The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year For purposes of calculating the percentage rental due hereunder the Tenant's fiscal year shall be from July 1st to June 30th of each year The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided and shall include any rent due for the preceding fractional month Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental

**DEFINITION OF GROSS SALES"**    1a  The term "gross sales" as used herein shall mean the aggregate gross sales price of all merchandise sold, and gross charges for all services rendered in or from the demised premises, both for cash and on credit provided, however, such term shall not include (1) any sales tax, gross receipts tax or similar tax by whatever name called, the amount of which is determined by the amount of sales made and which Tenant may be required to collect and account for to any governmental agency, (2) transfers of merchandise made by the Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies, (3) credits or refunds made to customers for merchandise returned or exchanged, (4) accommodation sales such as sales of postage stamps, government bonds or savings stamps or similar items, (5) returns of merchandise to suppliers or manufacturers, (6) net amount of discounts allowed to any customer, including discounts resulting from the issuance to customers of trading stamps receipts or coupons for exchange of merchandise or other things of value, and (7) merchandise or other things of value issued in redemption of trading stamps or as a premium in connection with any sales promotion program Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises

**RECORD OF SALES**    1b  The Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by the Tenant at the office address hereinafter designated for notices At the end of each fiscal year, or at the end of the leasehold if it sooner occurs and at such time as the percentage rental shall be payable by Tenant as hereinabove provided, the Tenant shall submit to the Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year Such statement of sales shall be treated as confidential by the Landlord and shall be conclusive unless the Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by the Landlord Notwithstanding the foregoing, Landlord shall be permitted to disclose such sales figures to the holder of a first mortgage on the demised premises or to a prospective purchaser of the demised premises, provided however, said sales information shall be treated as confidential by such mortgagee or purchaser

**USE**    2.    The demised premises may be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products, or for the conduct of any general mercantile business, provided however, that the demised premises shall not be used or assigned or subleased under the provisions of Article 26 below for any primary use or business which shall be in direct competition with the primary use or business engaged in by any other present or then tenant in the shopping center to whom Landlord has granted a right of exclusive use of which Tenant herein has been given notice as in this lease provided, and provided further, so long as a drug store is open for business in the shopping center the premises hereby demised shall not be used for the preparation or sale of prescription drugs or items required to be dispensed by a duly licensed pharmacist. Further, so long as a variety store or general merchandise store is operated in the space designated on Exhibit "A" hereto as "T. G. & Y.", Tenant herein, its successors and assigns, shall not be permitted to operate in its demised premises, or elsewhere in the shopping center, a variety, general merchandise or discount store, or any department or concession which would constitute the equivalent thereof (except that this prohibition shall not prevent the operation by Tenant herein of a discount food store in the shopping center).

Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of said premises, as such shall relate to the cleanliness and use of said premises and the character and manner of operation of the business conducted in or at said premises

5

SCM-3

CONSTRUCTION
OF SHOPPING
CENTER
3. The Landlord, at its sole cost and expense, shall construct the shopping center, substantially as shown on Exhibit "A", consisting of all the buildings shown thereon, together with all ramps, sidewalks, streets, entranceways, malls, parking areas, service drives, driveways and related improvements, said improvements (excluding buildings) being sometimes hereinafter referred to as "common areas." The Landlord at its sole cost and expense, shall grade and surface with top quality materials all paved portions of the common areas (including parking area), and shall provide proper and adequate water drainage and lighting system and operations therefor and shall operate and maintain the same in good repair and usable condition for use by the patrons of the shopping center and the tenants and their employees during the term of this lease and any extensions thereof. The arrangement and location of all store buildings and common areas (including parking area) within the shopping center shall at all times during the term of this lease, or any extensions thereof, be maintained as shown on Exhibit "A" and shall not be changed without the written consent of the Tenant. If not shown on Exhibit "A", Tenant expressly reserves the right to approve the finish elevations of all store buildings and common areas (including parking and service areas) within the shopping center which are to be constructed concurrently with Tenant's store building.

Notwithstanding the foregoing, it is agreed that Landlord shall be obligated to construct only Tenant's store building and the further buildings in Phase I of construction of the shopping center as required by Article 5 below together with the common areas including parking areas as shown on Exhibit "A", and that Landlord does not obligate itself to construct any additional buildings or improvements in the shopping center. However, Landlord reserves the right to construct additional buildings and parking facilities within the areas reserved therefor on Exhibit "A", the size and interior dimensions of which additional buildings, if any, to be at the discretion of Landlord, provided however, they shall be of like structural quality and in architectural harmony with Tenant's building. Landlord covenants and agrees that the development of the overall shopping center shall at all times be substantially in accordance with Exhibit "A", and that the additional buildings, if any, shall be provided with adequate setbacks, entranceways and service areas as shown on Exhibit "A". Despite such additional buildings, Landlord agrees to maintain within the shopping center at least the ratio of automobile parking area to building area (including additional floor levels) as hereinafter provided. Throughout this lease the use and meaning of the term "shopping center" shall be appropriately modified to apply only to the common area improvements together with the buildings actually completed. Landlord agrees that Tenant shall have uninterrupted use and enjoyment of the demised premises and the common areas during any additional construction without unreasonable interference therewith by reason of or on account of such construction work.

Concurrently with the above construction, Landlord agrees at its sole cost and expense, to construct the store building for occupancy by Tenant in accordance with the plans and specifications to be approved by both Landlord and Tenant. Plans and specifications shall be approved when initialed by both parties and when initialed shall constitute a part of this lease. Said plans and specifications shall provide for a completed store building, commonly referred to as a "lock and key job," and shall include, but without limitation the following

insulated duct work, registers and grilles and roof or ceiling structural system adequately designed to support Tenant's air conditioning and heating equipment, plumbing and plumbing fixtures, drains, interior walls and partitions, electrical wiring, lighting fixtures to Tenant's requirements, floor surfacing (color at Tenant's option), automatic sliding doors, opening and flashing for incinerator, ceramic tile rest rooms, sprinkler system, quarry tile meat cutting room floor and connections to all utilities. Tenant at its expense shall provide and connect its own trade fixtures and incinerator and air conditioning and heating equipment (but not insulated duct work, registers and grilles which shall be the responsibility of Landlord). All fixtures and equipment provided by Tenant shall remain the property of Tenant and may be removed by Tenant from the demised premises at any time, provided however, any damage to the premises resulting from the removal of such fixtures and equipment shall be repaired by Tenant at Tenant's expense

COMPLETION
DATE
4. Landlord covenants and agrees that the construction of the shopping center shall begin not later than _____January 15, 1974_____, and shall be completed not later than _____August 1, 1974_____, and if the same shall not be begun or completed by the respective dates, the Tenant, at its option, may, in either of such events, cancel and terminate this lease or may extend the Landlord additional time for the beginning or completion of construction, provided, however, that if after the beginning of construction the Landlord's failure to complete said improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Landlord, and provided further that the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than _____October 1, 1974_____, said option to terminate shall not arise. If pursuant to this Article Tenant shall cancel or terminate this lease, Landlord agrees for a period of three (3) years thereafter to offer Tenant the "first refusal" of any retail food store Landlord may permit to operate in the shopping center.

SCM-4

**COMMENCE-
MENT DATE**

5  The Tenant shall open its store for business within thirty (30) days following performance of the following

    (a) Tenant's store building and other improvements constructed on the demised premises shall have been delivered to Tenant completed in accordance with the plans and specifications,

    (b) Construction of all of the common areas (including parking area hereinafter specifically required) shall have been completed substantially as shown on Exhibit "A",

    (c) Construction of at least ____125____ lineal feet of store frontage and ___15,000___ sq ft of total building area (excluding Tenant's store building) shall have been completed as shown on Exhibit "A" and said area leased to other tenants and opened for business or readied for opening for business simultaneously with Tenant, and

    (d) The stores to be operated by each of the following tenants shall have been completed and opened for business or been readied for opening for business simultaneously with Tenant

        T. G. & Y

    In the event that all the above requirements shall not have been met on or prior to _____October 1, 1974_____, the Tenant at its sole option may cancel and terminate this lease

    Rent shall begin to accrue hereunder upon the date the Tenant opens its store for business, or upon the expiration of thirty (30) days following the performance of all the above requirements whichever date shall sooner occur  No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications

**OTHER
TENANTS**

6  As a condition and inducement to Tenant's entering into this lease, Landlord represents and warrants that it has entered into firm commitments for leases with the tenants listed below for the terms and for the amount of floor space indicated

| Name | Term Years | Floor Area (sq ft) |
|------|------------|--------------------|
| T. G. & Y. | 20 | 15,000 |

    Landlord further warrants and represents that such tenants shall occupy the space in the shopping center in the locations indicated on Exhibit "A" and in the minimum amounts set opposite their respective names above, and Landlord agrees, on demand, to furnish evidence satisfactory to Tenant, prior to and as a further condition to the establishment of the commencement date of this lease, that Landlord has entered into non-cancellable leases, except for default, con-demnation or destruction of the premises or upon conditions similar to those provided herein, with such tenants.

-5-

SCM 3

PARKING
AND
COMMON
AREAS

7. Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees a non-exclusive right at all times to use, free of charge, during the term of this lease, or any extensions thereof, all the common areas, including parking area, as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with others similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks

Landlord shall at all times during the term of this lease and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit 'A', and of sufficient area to provide

> (a) a minimum ratio of at least 6 automobile parking spaces per 1,000 square feet of leasable building area (including additional floor levels) in the shopping center, each such space to be not less than 9 feet 6 inches wide and 20 feet long, and

> (b) facilities for convenient parking of at least 335 automobiles,

and, except as provided in Article 19 appearing on Pages 9 and 10 hereof ("CONDEMNATION"), in event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details the Tenant at its option shall have the right to terminate this lease, provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord curing the default within thirty (30) days after receipt of such notice of termination All of the common areas (including parking area) shall be adequately lighted by Landlord at its expense during customary food store shopping hours, and Landlord further agrees that no signboards or other construction shall be erected in any of the common areas (including the parking area) shown on Exhibit "A" or so as to obstruct the view of the demised premises from the adjoining public streets

Landlord agrees to operate and maintain all the common areas, as herein defined, and provide therefor all such services as are reasonably required including, but without limitation, cleaning and sweeping, snow and ice removal, lighting, policing, if necessary, general repair and maintenance of all paved surfaces, repainting of parking area striping and watering and maintenance of landscaped areas For such services, Tenant shall pay to Landlord, as additional rental hereunder and as Tenant's share of the annual cost thereof to Landlord, the sum of ten cents (10¢) per square foot of the demised store building per year, Tenant's said payments to Landlord to be made in equal monthly installments in advance at the same times and in the same manner as rent payments are made hereunder If Landlord within a reasonable time after receipt of written notice from Tenant to do so shall fail to make the repairs or perform the services described in this paragraph Tenant shall have the right to make such repairs or cause such services to be performed in its behalf and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse Tenant for the money expended or expense incurred therein.

SERVICE
AREA

8. Landlord further agrees to provide for the exclusive use of the Tenant at its grocery service entrances parking spaces for two large trailer trucks for continuous use and further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such spaces as may be reasonably needed by Tenant for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

UTILITIES

9. Tenant agrees to pay all charges including utility taxes for telephone, electricity, water, gas, garbage collection and disposal and other utilities used by Tenant in the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities

TENANT'S
REPAIRS

10 Upon completion of construction by Landlord and acceptance of the demised premises by Tenant, Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of the Landlord or which are made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance and excepting reasonable wear and tear

Within the repair responsibilities of Tenant shall be included: air conditioning and heating equipment including insulated duct work, registers and grilles, floor surfacing, incinerator; automatic sliding doors, exposed sprinkler heads only, and only if damaged by the negligence of Tenant or any of Tenant's servants, agents or employees; and windows and plate glass except such damage caused by faulty construction or settling of the building or covered by Landlord's fire and extended coverage insurance which shall be the responsibility of Landlord.

LANDLORD'S REPAIRS
11. The Landlord shall, at its cost and expense, keep and maintain the common areas (including without limitation, parking area, sidewalks, ramps and service areas) in good condition and repair, and shall maintain the exterior of Tenant's store building, including the roof, gutters, downspouts, exterior painting, masonry walls, foundation and structural members, and the plumbing (including entire sprinkler system except as stipulated in Article 10 above, and septic tank, if any) and wiring of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises. If any portion of the common areas (including without limitation, parking area, sidewalks, ramps and service areas) or any portion of the store building, which is the responsibility of the Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so, except that the Landlord shall not be obligated to make or pay for any repairs to Tenant's store building rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, agents or employees, except in the case of damage by fire or the elements, or other casualty covered by Landlord's fire and extended coverage insurance.

Notwithstanding any other provision in this lease contained, Tenant hereby releases Landlord from any claim with respect to water or other damage sustained by Tenant from the sprinkler system covering the premises and/or the operation of said sprinkler system, except that Tenant does not hereby waive any claim for such damage resulting from (a) faulty installation or maintenance of said sprinkler system, or (b) the negligence of Landlord or any of Landlord's servants agents or employees.

If in order to protect the Tenant's property in the store building it shall be necessary to make emergency repairs to any portion thereof which is the responsibility of the Landlord to repair, or if the Landlord after receipt of notice as above provided fails or neglects to make with all due diligence such other repairs to the store building or common areas (including parking area) which are the responsibility of the Landlord, the Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred by it in making such repairs Landlord further covenants that the store building will be so constructed and maintained at all times so as structurally to comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the premises which may become necessary in order that said premises may conform to such ordinances, statutes rules or regulations now in force or which may be hereafter passed, adopted or promulgated

SIGNS
12 Tenant may place, erect and maintain any signs on the walls, and any other place on or about the demised premises, which signs shall remain the property of Tenant and may be removed at any time during the term of this lease, or any extension thereof, provided Tenant shall repair or reimburse Landlord for the cost of any damage to the demised premises resulting from the installation or removal of such signs

FIXTURES AND INTERIOR ALTERATIONS
13 The Tenant, at its own expense, may from time to time during the term of this lease make any interior alterations, additions and improvements in and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities All permanent structural improvements shall belong to the Landlord and become a part of the premises upon termination or expiration of this lease

-7-

Tenant may construct and build or install in said premises any and all racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in the Tenant's business, which racks counters, shelves and other fixtures and equipment shall at all times be and remain the property of the Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time, provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to said premises resulting from the installation or removal of such items

INDEMNI-
FICATION

14. Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises. Tenant further agrees to carry, at its expense, public liability insurance coverage on the demised premises, with a contractual liability endorsement on the policy, in a company qualified to transact business in    Louisiana   , stipulating limits of liability of not less than $200,000 for an accident affecting any one person; and not less than $500,000 for an accident affecting more than one person, and $50,000 property damage.  Certificate of such coverage from the insuror providing 30 days' notice to Landlord prior to cancellation or termination shall be furnished to Landlord.

Likewise, Landlord shall indemnify and save harmless the Tenant from any claim or loss by reason of an accident or damage to any person or property happening on or about all common areas (including without limitation, parking area, sidewalks, ramps and service areas) of the shopping center, and Landlord further agrees to carry, at its expense, public liability insurance coverage on all common areas (including without limitation, parking area, sidewalks, ramps and service areas) of the shopping center, with a contractual liability endorsement on the policy, in a company qualified to transact business in    Louisiana   , stipulating limits of liability of not less than $200,000 for an accident affecting any one person, and not less than $500,000 for an accident affecting more than one person, and $50,000 property damage.  Certificate of such coverage from the insuror providing 30 days' notice to Tenant prior to cancellation or termination shall be furnished to Tenant.

CLEANLINESS

15 Tenant shall at all times keep the interior of the store building in a reasonably neat and orderly condition and shall keep the entryways and delivery areas adjoining the building reasonably clean and free from rubbish and dirt  Tenant will not make or suffer any waste of the premises or permit anything to be done in or upon the demised premises creating a nuisance thereon, and Tenant further agrees to permit the Landlord or its agent at all reasonable times to enter upon the premises for making repairs and for examining or showing the same to prospective purchasers

FIRE

16. In the event that Tenant's building shall be totally destroyed or damaged to the extent of seventy-five per cent (75%) or more of the value thereof by fire or other casualty, then Tenant may elect within thirty (30) days after such damage, to terminate this lease by giving to the Landlord a written notice of termination, and thereupon both parties shall stand released of and from all further liability under this lease.  If Tenant's building shall thereby suffer damage to any extent less than seventy-five per cent (75%) of the value thereof, or if Tenant does not elect to terminate as aforesaid, then the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored.

If damage to Tenant's building in excess of seventy-five per cent (75%) of the value thereof shall occur within the last three (3) years of the initial term or any of the option extension terms, the obligation of the Landlord to restore the premises shall not arise unless Tenant shall give notice to the Landlord within thirty (30) days after such damage of its desire to extend the term of this lease so as to expire ten (10) years from date of completion of restoration of the demised premises by Landlord, such extension to be on the same conditions and for the same rentals.  Upon receipt of such notice Landlord agrees with all due diligence to repair and

restore Tenant's building and this lease shall continue and the remaining option periods, if any, shall be construed to follow upon the end of such extended term. Failing such notice to elect, Landlord at its option shall have the right to terminate this lease or to restore the premises and the lease shall continue for the remainder of the unexpired term.

If at any time during the term of this lease or any extensions thereof any of the buildings in the shopping center, exclusive of Tenant's store building, are damaged by fire or by the elements or otherwise, Landlord shall immediately commence and diligently prosecute to completion repair of all such damage and shall restore said improvements to their condition prior to such damage, subject however, to the conditions contained in the leases covering said other buildings.

Landlord agrees to carry fire and extended coverage insurance on Tenant's building and any additions, alterations and improvements made thereto by Landlord or Tenant and on all other buildings within the shopping center in the amount of at least eighty per cent (80%) of the full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against the Tenant for loss or damage due to fire, explosion, windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of the Tenant, its agents, servants or employees.

Tenant hereby expressly waives any and all claims against Landlord for loss or damage to Tenant's merchandise, fixtures and equipment due to fire, explosion, windstorm or other casualty, regardless of the cause of such damage including, without limitation, damage resulting from the negligence of Landlord, its agents, servants or employees.

QUIET ENJOYMENT

17 The Landlord covenants warrants and represents that upon commencement of the lease term, the shopping center, including the demised premises, will be free and clear of all liens and encumbrances superior to the leasehold hereby created, that the Landlord has full right and power to execute and perform this lease and to grant the estate demised herein, and that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof

The Landlord warrants the non existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a general mercantile business or use of common areas for parking purposes, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease preventing or restricting Tenant from conducting a general mercantile business or using the common areas (including parking area) in conjunction therewith the Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder Tenant's option to terminate as above set forth shall become effective, however, only if Tenant is actually prevented from conducting its business as permitted herein and such option shall not arise if the property may be used as herein permitted by reason of being a non-conforming use.

TAXES AND LIENS

18 All taxes assessments and charges on land or improvements and obligations secured by mortgage or other lien upon the demised premises or the shopping center shall be promptly paid by the Landlord when due The Tenant may perform acquire or satisfy any lien, encumbrance, agreement or obligation of The Landlord which may threaten its enjoyment of the premises, and if it shall so it shall be subrogated to all rights of the obligee against the Landlord or the premises or both and shall be reimbursed by the Landlord for resulting expenses and disbursements, together with interest thereon at six per cent (6%) per annum

(and see Article 35 below)

CONDEM NATION

19 If any part of the demised premises or more than twenty per cent (20%) of the buildings, exclusive of Tenant's building within the shopping center be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant In the event the Tenant does not elect to terminate this lease as aforesaid the Landlord shall immediately commence and diligently prosecute to completion the repair and restoration of the improvements, including Tenant's store building within the shopping center to a condition comparable to their condition at the time of taking and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances

BB

SCH 9

In the event that any portion of the common areas (including parking area and access thereto) designated as such on Exhibit "A", be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, so as to materially or substantially interfere with the conduct of Tenant's business in the demised premises, or so as to reduce the required parking area by an amount in excess of __Fifteen__ per cent ( 15%) or reduce the number of cars which may be conveniently parked to less than __284__, the Tenant may, at its option, terminate this lease and shall be liable for rent only up to the time of such taking

DEFAULT    20   In the event the Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if the Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of the Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after the Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated, from the Landlord to pay such rent or to cure such violation or failure, then, in any such event, the Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable  making reasonable efforts therefor and receive the rent therefrom, but Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting  However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default

BANKRUPTCY   21   The Tenant further covenants and agrees that if, at any time, Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of the Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then the Landlord may, at its option, declare the term of this lease agreement at an end and shall forthwith be entitled to immediate possession of the said premises

-10-

CONSTRUCTION RISKS  22  It is understood and agreed that nothing herein contained shall constitute the Landlord as the agent in any sense of the Tenant in constructing said improvements and that the Tenant shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of the Tenant's store building for the causes herein stated The Tenant not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their sub contractors, employees, agents or servants by reason of Landlord's constructing said improvements pursuant to the terms of this lease Landlord shall indemnify Tenant and save Tenant harmless from and against all claims and suits for damage to persons or property from defects in material or from the use of unskilled labor or from any negligence caused by Landlord  Landlord's contractors, sub contractors or by any of their employees agents or servants during the progress of the work in constructing said improvements or from any faulty construction thereof

NOTICES  23  All notices required to be given to Landlord hereunder shall be sent by registered or certified mail to, and all rent payments shall be made to Landlord at _____

Post Office Box 2008

Mobile, Alabama  36601

or to such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail

All notices required to be given to Tenant shall be sent by registered or certified mail to Tenant at _____  Post Office Box 51059

New Orleans, Louisiana  70150

or to such other address as Tenant may direct from time to time by written notice forwarded to Landlord by registered or certified mail

Anything in this lease to the contrary notwithstanding, Tenant agrees that it will not terminate this lease or withhold any rentals due hereunder because of Landlord's default in performance hereof until Tenant has first given written notice as herein stipulated to Landlord and to the holder of any first mortgage (provided Tenant has first been notified in writing of the name and address of the holder of said first mortgage) specifying the nature of the default by Landlord and allowing Landlord and said first mortgage holder, or either of them, thirty (30) days after date of such notice to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said thirty (30) day period, provided however, Tenant's right to make emergency repairs on behalf of Landlord shall not in any event be deemed waived by the provisions of this paragraph.

END OF TENANCY  24  The Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of the tenancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that the Landlord is obligated hereunder to repair or correct

ARBITRATION  25  In the event there should arise any misunderstanding between the parties hereto as to the compliance with the terms and conditions of this lease upon the part of either of the parties hereto, or as to whether the Tenant's store building tendered by the Landlord has been improved in substantial conformity with the plans and specifications approved by the parties, or whether the common areas, including parking area, comply with the agreement of the parties hereto, or as to whether either party has ground hereunder entitling it to terminate this lease, it is mutually agreed that such differences, if they cannot be satisfactorily adjusted between the parties hereto within thirty (30) days, shall be submitted to a single arbitrator, if the parties hereto agree upon one, otherwise, to a board of three arbitrators, of whom one shall be selected by each party within ten (10) days after such 30 day period, and a third person shall be selected by these two, and the decision and award of such single arbitrator, if only one is used, or any two of such board, if three are used, as the case may be, shall be final and binding upon the said parties and their successors and assigns respectively, and shall have the same force and effect as though such decision had been handed down by a court of final jurisdiction  Each of the parties hereto covenants to abide by any such arbitration decision

-11-

**ASSIGNMENT AND SUBLEASING**

26  The Tenant may without the consent of the Landlord assign this lease, or sublease or vacate the demised premises in whole or in part, provided the Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease

In the event of any assignment or sublease or vacating of the entire premises, the minimum rental thereafter shall be the average percentage rental, if any, paid by Tenant for the two (2) years immediately preceding such assignment, vacating or subletting plus the minimum guaranteed rental provided for herein, provided however, this provision shall not apply in the event such assignment or sublease shall be to any corporation or entity which is the parent of, subsidiary to or affiliated with Tenant or to any corporation or entity with which Tenant merges or consolidates or to which it sells all or substantially all of its business in Louisiana The provisions of this paragraph shall not be construed to limit or restrict the right of Tenant to sublease a portion or department of the demised premises without consent of Landlord to any concessionaire or licensee or otherwise in connection with the operation of Tenant's business in the demised premises, provided the sales of such concessionaire or licensee shall be included within the gross sales of Tenant, as defined hereinabove in Article 1 a.  In the event Tenant shall vacate the entire demised premises or cease selling merchandise therein for in excess of a period of three (3) months, while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant), Landlord shall have the continuing option thereafter to terminate and cancel this lease upon fifteen (15) days' written notice to Tenant of its election so to do, unless within such fifteen (15) day period Tenant shall advise Landlord that Tenant had prior to receipt of such notice in good faith committed to sublease the demised premises to a third party for occupancy within two (2) months.

Notwithstanding anything in this Article to the contrary, it is expressly agreed that any permitted assignment or subletting hereunder shall be subject to the permitted use provisions set forth in Article 2 hereinabove.

**EXTENSIONS**

27  It is further agreed that Tenant, at its option, shall be entitled to the privilege of _____four_____ ( 4 ) successive extensions of this lease, each extension to be for

a period of _____five_____ ( 5 ) years and on the same terms and conditions and for the same rentals required during the initial lease term hereof.

Such option privilege may be exercised by the Tenant giving to the Landlord a notice in writing at least __twelve (12) months__ before the expiration of the initial term, and if extended, at least __twelve (12) months__ before the expiration of such extended term, stating the intention of the Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document

**EXCLUSIVE SUPERMARKET**

28  Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant, and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods or frozen foods without written permission of the Tenant

It is also agreed that only Tenant herein may operate a bakery and/or delicatessen or any department or concession which shall constitute the equivalent thereof in the shopping center, including any enlargement thereof, provided however, if Tenant does not operate or ceases to operate a bakery and/or delicatessen or any department or concession which would constitute the equivalent thereof, then in such event or events the exclusive rights of Tenant herein granted to operate said bakery and/or delicatessen shall automatically cease and be construed as cancelled and of no further force and effect.

Notwithstanding the foregoing, any drug store may devote not in excess of five hundred (500) square feet of the gross floor area of its premises in the shopping center to the sale of food items for off-premises con-

Notwithstanding the foregoing, as to the premises to be occupied by T. G. & Y. only, its successors and assigns, such premises shall be restricted only to the extent that there shall not be permitted to be operated therein, or elsewhere in the shopping center by such tenant, a food supermarket, grocery store, meat, fish, fruit or vegetable market, bakery, delicatessen, frozen foods section or any department or concession which would constitute the equivalent thereof

It is further agreed that the restrictions in this Article 28 contained shall not be deemed to prevent the operation in the shopping center of any restaurant or food counter selling food for on-premises consumption.

It is still further agreed that, notwithstanding the foregoing, if Tenant shall cease to use the demised premises as a supermarket and/or grocery store, meat, fish or vegetable market business for in excess of a period of three (3) months, while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant), then in such event the exclusive rights of Tenant hereinabove granted shall automatically cease and be construed as cancelled and of no further force and effect.

Still further notwithstanding the foregoing, it is agreed by Tenant that, so long as the lien of a first mortgage encumbers the demised premises (and Tenant is advised of the name and address of the first mortgagee), Tenant shall have no right to cancel this lease or withhold or abate any rentals due or to become due hereunder by reason of a violation of Landlord's covenants in this Article 28 contained insofar as such covenants apply to premises not included within the limits of the real estate encumbered by the lien of said first mortgage, provided however, nothing herein contained shall be construed as a waiver of rights in personam, nor remedies by way of injunctive relief, against Landlord, its successors and assigns, and provided further, if any first mortgage should succeed to ownership of the demised premises by virtue of mortgage foreclosure, or transfer of title to said property in lieu of such foreclosure, or otherwise, then in such event Landlord's covenants in this Article 28 contained shall apply to said first mortgagee as owner-landlord only with respect to the land which was formerly encumbered by the lien of said first mortgage

SUBORDINATE 29  The Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by the Landlord, and Tenant agrees, upon demand, without cost, to execute any instrument as may be required to effectuate such subordination, provided, however, as a condition to this subordination provision, the Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder

BENEFIT 30  This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto  Each provision hereof shall be deemed both a covenant and a condition and shall run with the land

SHORT FORM LEASE 31.  The Landlord agrees that at any time on request of the Tenant it will execute a short form of this lease in form permitting its recording

MARGINAL TITLES 32  The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof

COMPLETE AGREEMENT 33  This written lease contains the complete agreement of the parties with reference to the leasing of the demised premises, except plans and specifications for Tenant's store and related improvements to be formally approved by the parties prior to the effective date of this lease No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof

-13-

RETAIL
AND
SERVICE
STORES
ONLY

34.  It is agreed that without the prior written consent of Tenant herein only retail and service stores shall be allowed to operate in the shopping center including any enlargement thereof, it being the intent of the parties hereto that no spa, bowling alley, skating rink, bingo parlor, theatre (either motion picture or legitimate), office building, or health, recreational or entertainment-type activities, or non-retail or non-service type activities, shall be permitted.

TAX
INCREASES

35.  Beginning with the fourth (4th) full tax year of the lease term hereof in which the value of both the land in the shopping center and the Buildings thereon shall be assessed for tax purposes, Tenant agrees to pay to Landlord as additional rental an amount equal to the increase, if any, in ad valorem real estate taxes levied against the demised premises in excess of the amount of such taxes for the third (3rd) full tax year of the lease term hereof in which the value of both said land and buildings are assessed for tax purposes.  Tenant shall be responsible only for its pro rata share of such taxes for any fractional lease year occurring during the period in which Tenant shall be responsible for tax payments as hereinabove described.

Landlord agrees to make every reasonable effort to obtain from the authorities separate ad valorem real estate tax statements as to the demised premises.  However, if such taxes shall not be assessed separately as to the demised premises, but shall be included within an assessment of the demised premises and other premises, said assessment shall be fairly apportioned to determine Tenant's share thereof.  Such apportionment shall be made in the ratio which the total square foot floor area of Tenant's building bears to the total square foot floor area of all store buildings and improvements from time to time existing in the shopping center.  The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any abatements, discounts or refunds thereon.  Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which increase in taxes is chargeable to Tenant, and such additional rental shall be payable by Tenant on demand after payment by Landlord.  Landlord further agrees upon request of Tenant to furnish copies of final survey or certification of surveyor or engineer as to total square footage of floor area from time to time existing in the shopping center.  All taxes levied against the demised premises other than ad valorem real estate taxes shall remain the sole responsibility of Landlord.

Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of Landlord as Tenant may deem necessary, provided however, any expenses incurred by reason thereof shall be borne by Tenant and such proceedings conducted free of all expense to Landlord.

It is expressly understood, however, that any additional rental payable hereunder by Tenant may be credited on a non-cumulative basis only against percentage rental, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payment for the previous tax year at the time percentage rental is payable, but if there shall not be any percentage rental due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be, and the credit for any fractional years shall be prorated on the basis of the annual credit.  Any additional payments hereunder shall not be construed to increase the minimum guaranteed rental and the percentage rental shall continue to be computed as hereinabove provided.

EXPANSION
OF
DEMISED
STORE
BUILDING

36.  Tenant is hereby granted the option (which option may be exercised by Tenant giving written notice thereof to Landlord as hereinbelow described) of requiring the enlargement by Landlord at Landlord's cost of the store building demised herein by the construction of an addition on the westerly side thereof extending same a maximum of forty (40) feet in width

for the full depth of the building.  Such option may be exercised by Tenant notifying Landlord in writing of its intent at any time during the term of this lease if at the time of exercise of such option said expansion area does not contain a structure under lease to another tenant in the shopping center. However, if said expansion area does at the time of exercise of such option contain a structure under lease to another tenant in the shopping center, then in such event said option may be exercised by Tenant herein notifying Landlord in writing of its intent only within a six (6) month period preceding the date which falls ten (10) years after the commencement date hereof, or at five (5) year intervals thereafter and, subject to the parties having reached mutually satisfactory terms and conditions upon which the enlargement is to be accomplished, and subject further to Landlord obtaining any necessary financing, Landlord will thereupon promptly after such notice commence the construction of a permanent addition to Tenant's building (or commence what-ever work is necessary to provide such building addition),  in accordance with plans and specifications to be approved by the parties hereto, and of like quality of construction as the original building, and Landlord shall complete such construction with all due diligence under the circumstances.

The increased area of Tenant's building resulting from the expansion and any increased taxes resulting therefrom over and above the taxes for the year prior to the completion of the expansion area shall be taken into consideration in computing the amount of the taxes attributable to the demised premises and for which Tenant is to reimburse Landlord in part as provided in Article 35 hereof, and such increased area shall likewise be considered in calculating the amounts of Tenant's common areas contributions required by Article 7 hereof.

LANDLORD'S LIABILITY

37.  Anything to the contrary contained in this lease notwith-standing, Landlord, and Landlord's heirs, personal representatives, successors and assigns, shall have absolutely no corporate or personal liability with respect to the performance of any of the terms, covenants, conditions and provisions of this lease, and Tenant shall look solely to the equity of Landlord, its heirs, personal representatives, successors and assigns, in the leased premises for the satisfaction of each and every remedy of Tenant in the event of any breach of Landlord, its heirs, personal representatives, successors and assigns, of any of the terms, covenants, conditions and provisions of this lease to be performed by Landlord, such exculpation of liability to be absolute and without exception whatsoever.

SELF-HELP

38.  If Landlord shall default in the performance or observance of any agreement or condition on its part to be performed or observed, and if Landlord shall not cure such default within thirty (30) days after notice from Tenant specifying the default (or shall not within said period commence to cure such default and thereafter prosecute the curing of such default to completion with due diligence), Tenant may, at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of Landlord, and any amount paid or any contractual liability incurred by Tenant in so doing shall be deemed paid or incurred for the account of Landlord and Landlord agrees to reimburse Tenant therefor or save Tenant harmless therefrom; provided that Tenant may cure any such default as aforesaid prior to the expiration of said waiting period, but after said notice to Landlord, if the curing of such default prior to the expiration of said waiting period is reasonably necessary to protect the real estate or Tenant's interest therein or to prevent injury or damage to persons or property.  If Landlord shall fail to reimburse Tenant upon demand for any amount paid for the account of Landlord hereunder said amount may be deducted by Tenant from the next or any succeeding payments of rent due hereunder.

three per cent (3%) *CWB*

RENTAL
COMMISSION
39.   It is agreed that The Mitchell Company, P. O. Box 2008, Mobile, Alabama 36601, has represented Landlord in negotiating and securing this lease with Tenant; that Landlord and its successors in title to said real estate shall pay to said The Mitchell Company ten per cent (4%) rental commission each month on all rentals received by such Landlord or its successors in title during the term of this lease, during the term of any and all extended or option renewal periods of this lease, and also so long as Landlord or its successors in title to the leased premises shall lease said premises to Tenant, or any assignee or subtenant of Tenant.

IN WITNESS WHEREOF, Landlord and Tenant have caused this lease to be executed in their corporate names and their corporate seals to be hereunto affixed and attested by their officers thereunto duly authorized the day and year first above written.

Signed, sealed and delivered
in the presence of

SINGER HOUSING COMPANY d/b/a
THE MITCHELL COMPANY

By _____
  Its   DIVISION SENIOR VICE-PRESIDENT

Attest _____
  Its   DIVISION ASSISTANT SECRETARY

(Corporate Seal)

_____
_____
As to Singer Housing Company
d/b/a The Mitchell Company

LANDLORD

_____
_____
As to Winn-Dixie Louisiana,
Inc.

WINN-DIXIE LOUISIANA, INC.

By _____
  Its        Vice President

Attest _____
  Its              Secretary

(Corporate Seal)

TENANT

-16-

amd\1549 8/17/94

## FIFTH AMENDMENT OF LEASE

THIS FIFTH AMENDMENT OF LEASE, made this 25th day of *august* 1994, between EVANGELINE LIFE INSURANCE COMPANY, DIXIE LIFE INSURANCE COMPANY, LAFOURCHE LIFE INSURANCE COMPANY, MOTHE LIFE INSURANCE COMPANY, and SCHOEN LIFE INSURANCE COMPANY, all Louisiana corporations (hereinafter called "Landlord"), and WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified to do business in the State of Louisiana (hereinafter called "Tenant"); which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties;

### W I T N E S S E T H:

WHEREAS, by Lease dated October 11, 1973, as amended, Singer Housing Company d/b/a The Mitchell Company, did lease and demise unto Tenant certain premises, therein particularly described, located in a shopping center development known as "Breaux Bridge Shopping Center", situated on the northerly side of Rees Street (Louisiana Highway #328), in the City of Breaux Bridge, Parish of St. Martin, and State of Louisiana, on the conditions and for the lease terms and rentals therein set forth, and

WHEREAS, all rights, title and interest of the said Singer Housing Company d/b/a The Mitchell Company, as Landlord under said lease, have been duly assigned and transferred over absolutely into Landlord herein, and

WHEREAS, the parties entered into a Fourth Amendment of Lease dated November 30, 1993, for the purpose of making certain modifications and amendment to said lease, as previously amended, and

WHEREAS, Tenant has at its expense constructed for Tenant's occupancy an addition to the westerly side of the demised store building, and the parties desire to increase the rentals and otherwise amend said lease as a result of said improvements in accordance with the requirements of said Fourth Amendment of Lease,

NOW THEREFORE, in consideration of the premises and the sum of Ten and 00/100 Dollars ($10 00) and other good and valuable considerations paid by Tenant to Landlord, the receipt and sufficiency whereof is hereby acknowledged, it is mutually agreed that, effective SEPTEMBER 1 1994, said lease, as amended, shall be and the same is hereby further amended as follows, which amendment shall supersede any provisions of said lease, as heretofore amended, in conflict herewith:

1.   It is acknowledged that by reason of the aforesaid addition the enlarged demised store building now contains a total gross floor area of approximately forty-four thousand one hundred eighty-six (44,186) square feet.

2.   Tenant agrees to pay Landlord as a minimum guaranteed rental for the said enlarged demised premises during the remainder of the term of said lease, and any extensions thereof, the sum of Two Hundred Thirty-Eight Thousand Three Hundred Eighty-Three and 00/100 Dollars ($238,383 00) per annum, due in advance in equal monthly installments of Nineteen Thousand Eight Hundred Sixty-Five and 25/100 Dollars ($19,865.25) on the first day of each and every calendar month of the lease term and any extensions thereof. In addition, Tenant agrees to pay Landlord a total percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales made from said enlarged demised premises in each fiscal year of Tenant ending approximately June 30 during the remainder of the term of said lease, and any extensions thereof, exceeds Two Hundred Thirty-Eight Thousand Three Hundred Eighty-Three and 00/100 Dollars ($238,383 00)

3.   Paragraph 3(g) of the Fourth Amendment of Lease is hereby amended to read as follows:

> "The respective repair responsibilities of the parties as stipulated in Articles 10 and 11 appearing on pages 6 and 7 of said lease, as amended, shall apply and extend to the additional store building area herein required, except that Tenant will assume responsibility for the roof, gutters, downspouts and fascia."

4.   It is mutually agreed that the aforesaid lease dated October 11, 1973, as amended, shall be and remain in full force and effect except only as the same is specifically changed hereby. All covenants, obligations, terms and conditions of said lease, as amended, not modified by the Fourth Amendment of Lease or the within Fifth Amendment of Lease are hereby ratified and confirmed.

WINN-DIXIE STORES, INC., a Florida corporation, hereinafter called "Guarantor", joins in the execution hereof for the purpose of evidencing its consent to the execution of the within Fifth Amendment of Lease by Tenant, its wholly-owned subsidiary corporation, and to further evidence unto Landlord, and Landlord's successors and assigns, the continuing guaranty by Guarantor, and Guarantor's successors and assigns, of the due performance by Tenant, and Tenant's successors and assigns, of Tenant's obligations under said lease dated October 11, 1973, as heretofore amended, and the within Fifth Amendment of Lease including, without limitation, the payment of rentals.

IN WITNESS WHEREOF, the Landlord, Tenant and Guarantor have caused this Fifth

Amendment of Lease to be executed in their corporate names and their corporate seals to be hereunto affixed and attested by their officers thereunto duly authorized the day and year first above written.

Signed, sealed and delivered
in the presence of:

EVANGELINE LIFE INSURANCE COMPANY
DIXIE LIFE INSURANCE COMPANY,
LAFOURCHE LIFE INSURANCE COMPANY,
MOTHE LIFE INSURANCE COMPANY, and
SCHOEN LIFE INSURANCE COMPANY,

By: _____
Charles J.D. Gerrrets, III, President

As to Landlord

Attest: _____
Its                         Secretary

(Corporate Seal)

**LANDLORD**

WINN-DIXIE LOUISIANA, INC.

By: _____
Its                         Vice President

As to Tenant

Attest _____
Its                         Secretary

(Corporate Seal)

**TENANT**

WINN-DIXIE STORES, INC.

By: _____
Its             Vice        President

As to Guarantor

Attest: _____
Its                         Secretary

(Corporate Seal)

**GUARANTOR**

3

STATE        OF _Louisiana_ )
                           )
PARISH     OF _Orleans_ )

BE IT KNOWN that on this 25ᵗʰ day of _August_, 1994, before me the undersigned authority, personally came and appeared CHARLES J.D. GERRETS, III, President of **EVANGELINE LIFE INSURANCE COMPANY, DIXIE LIFE INSURANCE COMPANY, LAFOURCHE LIFE INSURANCE COMPANY, MOTHE LIFE INSURANCE COMPANY and SCHOEN LIFE INSURANCE COMPANY**, all Louisiana corporations, to me known, who signed and executed the above and foregoing lease before me and in the presence of the two witnesses whose names are thereto and who acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appearer has signed hereto, together with the said witnesses and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_____          By: _____
                                     Its _____ President

_____

SWORN to and subscribed before me this
25ᵗʰ day of _August_, 1994

_____          (NOTARIAL SEAL)
Notary Public
My Commission Expires: _at death_      STERLING S. WILLIS
                                       NOTARY PUBLIC
                                       Parish of Orleans, State of Louisiana
                                       My commission is for life.

STATE OF FLORIDA      )
                      )
COUNTY OF DUVAL       )

BE IT KNOWN that on this _6th_ day of _September_, 1994, before me the undersigned authority, personally came and appeared ____R. P. McCook____, Vice President of WINN-DIXIE LOUISIANA, INC , a Florida corporation qualified to do business in the State of Louisiana, to me known, who signed and executed the above and foregoing lease before me and in the presence of the two witnesses whose names are thereto subscribed as such, and who acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appearer has signed hereto, together with the said witnesses and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_Sally Reece_                          By: _R. P. McCook_
                                          Its _____ Vice President
_Cynthia N Cussland_

SWORN to and subscribed before me this
_6th_ day of _September_ 1994

_Laura K Baughman_                      (NOTARIAL SEAL)
Notary Public
My Commission Expires:_____

LAURA E BAUGHMAN
My Comm Exp July 17, 1998
Comm No CC 386239

STATE OF FLORIDA      )
                      )
COUNTY OF DUVAL       )

BE IT KNOWN that on this _6th_ day of _September_, 1994, before me the undersigned authority, personally came and appeared ____R. P. McCook____, Vice President of WINN-DIXIE STORES, INC , a Florida corporation, to me known, who signed and executed the above and foregoing lease before me and in the presence of the two witnesses whose names are thereto subscribed as such and who acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appearer has signed hereto, together with the said witnesses and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_Sally Reece_                          By: _R. P. McCook_
                                          Its _____ Vice President
_Cynthia N Cussland_

SWORN to and subscribed before me this
_6th_ day of _September_ 1994

_Laura K Baughman_                      (NOTARIAL SEAL)
Notary Public
My Commission Expires:_____



# PITMAN BROUSSARD
### ATTORNEYS AT LAW

LEWIS H. PITMAN, JR.
KEVIN E. BROUSSARD
KAY A. PITMAN

209 WEST MAIN STREET, SUITE 300
NEW IBERIA, LOUISIANA 70560
(337)365-3800
(337)365-3872 (FAX)

OF COUNSEL
MARGARET D. SIMON

July 27, 2005

Winn-Dixie Claims Docketing Center
c/o Logan & Company, Inc.
546 Valley Road
Upper Montclair, New Jersey 07043

     In re: Winn-Dixie Stores, Inc., et al
        Case No. 05-03817-3F1

TO WHOM IT MAY CONCERN:

     Enclosed you will find an original and one copy of Proof of Claim with attachments regarding the captioned matter.   Please return to me an acknowledgment of the filing of my claim.   I have also enclosed a stamped, self-addressed envelope.

     If you have any questions, please feel free to contact me.

     With best regards, I am

          Sincerely,

          PITMAN BROUSSARD

          **LEWIS H. PITMAN, JR.**

LHP,jr/mvb
Enclosures
cc: Evangeline Life Insurance Company, Inc.