**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Substantively Consolidated |

## <u>NOTICE OF FILING</u>

DLA Piper US LLP gives notice of filing of the attached Application for Allowance and

Payment of Compensation for Services Rendered and Reimbursement of Expenses Incurred by DLA

Piper US LLP and FTI Consulting, Inc. for the Period from March 7, 2006 through October 31, 2006.

Dated:   New York, New York
         November 29, 2006

                                DLA PIPER US LLP

                                By:  /s/        Thomas R. Califano
                                        Thomas R. Califano
                                        Vincent J. Roldan
                                     1251 Avenue of the Americas
                                     New York, NY 10020-1104
                                     Telephone:  (212) 335-4500
                                     Facsimile:  (212) 335-4501

                                              - and –

                                By:  /s/        Mark J. Friedman
                                        Mark J. Friedman
                                        Daniel Carrigan
                                        Janice L. Duban
                                     6225 Smith Avenue
                                     Baltimore, MD 21209
                                     Telephone:  (410) 580-4153
                                     Facsimile:  (410) 580-3001

                                              - and -

NEWY1\8057717.6

By: \_\_\_\_\_/s/\_\_Philip V. Martino_____
Philip V. Martino
Florida Bar Number 079189
101 East Kennedy Boulevard, Suite 2000
Tampa, FL 33602-5149
Telephone:  (813) 229-2111
Facsimile:  (813) 229-1447

Attorneys for Ad Hoc Trade Committee of Winn-Dixie
Stores, Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al.[1], | ) | Chapter 11 |
| Debtors. | ) | Substantively Consolidated |

**SUMMARY OF APPLICATION OF DLA PIPER US LLP AS COUNSEL TO AD HOC TRADE COMMITTEE AND FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO AD HOC TRADE COMMITTEE FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM MARCH 7, 2006 THROUGH OCTOBER 31, 2006**

| | |
|---|---|
| Name of applicants: | DLA Piper US LLP<br>FTI Consulting, Inc. |
| Authorized to provide professional services to: | Ad Hoc Trade Committee |
| Date of retention: | DLA Piper US LLP: 03/07/2006<br>FTI Consulting, Inc.: 03/27/2006 |
| Period for which compensation and reimbursement are sought: | 03/07/2006 – 10/31/2006 |
| Amount of compensation sought as actual, reasonable, and necessary:<br>*DLA Piper US LLP* | $709,102.35 |
| Amount of reimbursement sought as actual, reasonable, and necessary:<br>*DLA Piper US LLP* | $78,260.82 |
| Amount of compensation paid/to be paid as actual, reasonable, and necessary:<br>*DLA Piper US LLP* | $709,102.35 |
| Amount of reimbursement paid/to be paid as actual, reasonable, and necessary:<br>*DLA Piper US LLP* | $78,260.82 |
| Total amount of compensation and expense reimbursement sought:<br>*DLA Piper US LLP* | $787,363.17 |

---

[1] In addition to Winn-Dixie Stores, the following entities are Debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

Amount of compensation sought as actual, reasonable, and necessary:    <u>$516,145.00</u>
*FTI Consulting, Inc.*

Amount of reimbursement sought as actual, reasonable, and necessary:    <u>$24,699.55</u>
*FTI Consulting, Inc.*

Amount of compensation paid/to be paid as actual, reasonable, and necessary:    <u>$516,145.00</u>
*FTI Consulting, Inc.*

Amount of reimbursement paid/to be paid as actual, reasonable, and necessary:    <u>$24,699.55</u>
*FTI Consulting, Inc.*

Total amount of compensation and expense reimbursement sought:    <u>$540,844.55</u>
*FTI Consulting, Inc.*


Total amount of compensation and expense reimbursement sought:
*DLA Piper* and *FTI Consulting, Inc.*    <u>$1,328,207.72</u>[2]

This is a:    ☐ Interim Application    ☑ Final Application

---

[2] The Applicants seek this amount, subject to Section 12.3 of the confirmed Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "<u>Plan</u>") which caps their fees at $1,300,000.

**DLA Piper US LLP**

**SUMMARY OF INVOICES**
**(MARCH 7, 2006 THROUGH  OCTOBER 31, 2006)**

| Date | Fees | Expenses | Total |
|------|------|----------|-------|
| 03/07/06 – 03/31/06 | $113,925.75 | $65.25 | $113,991.00 |
| 04/01/06 – 04/30/06 | $242,760.60 | $15,409.92 | $258,170.52 |
| 03/27/06 – 06/30/06 | $235,157.75 | $39,536.17 | $274,693.92 |
| 06/01/06 – 06/30/06 | $6,411.25 | $356.99 | $6,768.24 |
| 04/12/06 – 06/30/06 | $62,847.00 | $6,611.36 | $69,458.36<br>-50,000.00<br>$19,458.36[3] |
| 07/03/06 – 07/31/06 | $26,027.00 | $8,140.42 | $34,167.42 |
| 08/01/06 – 08/31/06 | $27,984.00 | $276.03 | $28,260.03 |
| 09/01/06 – 09/30/06 | $16,567.00 | $6,213.93 | $22,780.93 |
| 10/01/06 – 10/31/06 | $27,422.00 | $1,650.75 | $29,072.75 |
| | | **TOTAL** | **$787,363.17** |

**DLA Piper US LLP**

**CUMULATIVE TIME SUMMARY**
**(MARCH 7, 2006 THROUGH OCTOBER 31, 2006)**

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|------|-------------------|------|-------|--------|
| **PARTNERS** | | | | |
| T. Califano | 1988 | 650 | 280.1 | 182,065.00 |

---

[3] The Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan") provides that DLA Piper may receive up to $50,000 as compensation for services it provided to members of the Official Committee of Unsecured Creditors who had trade vendor claims.  We understand that these amounts will be sought as part of a combined application to be filed by other attorneys for Official Committee members.  The amount set forth in this chart is the balance of services provided to members of the Trade Committee by DLA Piper.  The Trade Committee agreed to pay for the Applicants' fees in excess of $50,000 in recognition that their work benefited trade creditors as a whole.

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| M. Friedman | 1977 | 570 | 249.18 | 142,032.60 |
| P. Martino | 1982 | 550 | 0.80 | 440.00 |
| D. Carrigan | 1976 | 525 | 1.10 | 577.50 |
| J. Duban | 1991 | 510 | 131.60 | 67,116.00 |
| **ASSOCIATES** | | | | |
| J. Johnson | 1999 | 485 | 18.40 | 8,924.00 |
| V. Roldan | 1999 | 485 | 522.45 | 253,388.25 |
| E. Eisenegger | 2000 | 475 | 16.50 | 7,837.50 |
| D. Temes | 2005 | 295 | 175.40 | 51,743.00 |
| P. Altman | 2006 | 295 | 14.50 | 4,277.50 |
| Q. Smith | 2006 | 295 | 20.70 | 6,106.50 |
| R. Scariati | 1991 | 435 | 15.50 | 6,742.50 |
| **PARAPROFESSIONALS** | | | | |
| W. Coleman | N/A | 225 | 63.80 | 14,355.00 |
| X. Jones | N/A | 225 | 2.00 | 450.00 |
| P. Kaplan | N/A | 210 | 2.00 | 420.00 |
| M. Maldonado | N/A | 225 | 27.90 | 6,277.50 |
| S. Dorsett | N/A | 85 | 86.20 | 238.00 |
| C. Dubuque | N/A | 230 | 3.00 | 690.00 |
| D. Tucker | N/A | 160 | 1.60 | 256.00 |
| Y. Garber | N/A | 205 | 0.30 | 61.50 |
| S. Shishkova | N/A | 80 | 63.80 | 5,104.00 |
| | | | **Sub-total** | **759,102.35** |
| | | | **TOTAL** | **709,102.35**[4] |

## DLA Piper US LLP

## CUMULATIVE EXPENSE SUMMARY
## (MARCH 7, 2006 THROUGH OCTOBER 31, 2006)

| Expense Category | Total Expenses |
|---|---|
| Duplicating | 4,153.05 |
| Delivery Services | 565.21 |
| Out-of-Town Travel | 742.50 |
| Local Travel | 3,803.19 |
| Meals | 4,302.40 |
| Miscellaneous | 15,127.81 |

---

[4] See footnote 3.

| Expense Category | Total Expenses |
|---|---:|
| Lexis Charges | 13,994.99 |
| Westlaw Charges | 19,937.45 |
| Hotel | 2,078.38 |
| Mileage Allowance/Parking | 343.16 |
| Air Fare | 9,641.29 |
| Car Rental | 240.51 |
| Court Costs | 8.67 |
| IT Litigation Technology | 10.80 |
| On-Line Researching | 35.86 |
| Telephone Expense | 645.53 |
| Document Retrieval | 554.34 |
| Facsimile | 80.00 |
| Conference Room | 3,956.50 |
| Research Materials | 20.09 |
| **Sub-total** | **$80,241.73** |
| **TOTAL** | **$78,260.82**[5] |

---

[5] DLA Piper has voluntarily written off $1,980.91 in expenses.

**FTI Consulting, Inc.**

**SUMMARY OF INVOICES**
**(MARCH 7, 2006 THROUGH OCTOBER 31, 2006)**

| Date | Fees | Expenses | Total |
|---|---|---|---|
| 03/27/06 – 04/16/06 | $106,717.50 | $4,748.58 | $111,466.08 |
| 04/10/06 – 04/30/06 | $94,812.50 | $1,694.09 | $96,506.59 |
| 05/01/06 – 05/31/06 | $242,710.00 | $12,563.29 | $255,273.29<br>-50,000.00<br>$205,273.29[6] |
| 06/01/06 – 06/30/06 | $65,753.50 | $4,852.35 | $70,605.85 |
| 07/01/06 – 07/31/06 | $20,167.00 | $6.00 | $20,173.00 |
| 08/03/06 – 08/25/06 | $21,263.00 | $0.00 | $21,263.00 |
| 09/01/06 – 09/30/06 | $6,520.50 | $0.00 | $6,520.50 |
| 10/01/06 – 10/31/06 | $8,201.00 | $835.24 | $9,036.24 |
| | | **TOTAL** | **$540,844.55** |

---

[6] The Plan provides that FTI Consulting may receive up to $50,000 as compensation for services it provided to members of the Official Committee who had trade vendor claims. We understand that these amounts will be sought as part of a combined application to be filed by other attorneys for Official Committee members. The amount set forth in this chart is the balance of services provided to members of the Trade Committee by FTI Consulting. The Trade Committee agreed to pay for the Applicants' fees in excess of $50,000 in recognition that their work benefited trade creditors as a whole.

**FTI Consulting, Inc.**

**CUMULATIVE TIME SUMMARY**
**(MARCH 7, 2006 THROUGH OCTOBER 31, 2006)**

| NAME | TITLE | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| Michael Eisenband | Senior Managing Director | $655 | 51.1 | $33,470.50 |
| M. Freddie Reiss | Senior Managing Director | $655 | 199.5 | $130,672.50 |
| Steven Simms | Senior Managing Director | $610 | 85.8 | $52,338.00 |
| Timothy Dragelin | Managing Director | $590 | 159.7 | $94,223.00 |
| Jennifer Polli | Managing Director | $590 | 69.5 | $41,005.00 |
| Daniel Ventricelli[7] | Managing Director | $475/$525 | 346.3 | $164,932.50 |
| Caroline Manalo | Director | $435 | 85 | $36,975.00 |
| Marc Amico | Consultant | $245 | 27.9 | $6,835.50 |
| Cara Cusano | Consultant | $245 | 2.3 | $563.50 |
| Adam Rosen | Consultant | $280 | 0.8 | $224.00 |
| Jordan Davis | Consultant | $245 | 16.8 | $4,116.00 |
| Lucas Markowitz | Consultant | $210 | 1.0 | $210.00 |
| Tessa Chaney | Paraprofessional | $95 | 3.5 | $332.50 |
| Linda Pearson | Paraprofessional | $95 | 2.6 | $247.00 |
| | | | **Sub-total** | **$566,145.00** |
| | | | **TOTAL** | **$516,145.00**[8] |

**FTI Consulting, Inc.**

**CUMULATIVE EXPENSE SUMMARY**
**(MARCH 7, 2006 THROUGH OCTOBER 31, 2006)**

| Expense Category | Total Expenses |
|---|---|
| Transportation (Ground and Air) | $16,740.18 |
| Business Meals | $1,055.12 |
| Lodging | $6,730.13 |

---

[7] Effective September 1, 2006, Mr. Ventricelli's billing rate increased from $475/hr to $525/hr.

[8] See footnote 6.

| Expense Category | Total Expenses |
|---|---:|
| Other | $174.12 |
| **TOTAL** | **$24,699.55** |

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al.[1], | ) | Chapter 11 |
|   Debtors. | ) | Substantively Consolidated |

**APPLICATION OF DLA PIPER US LLP AS COUNSEL TO AD HOC TRADE COMMITTEE**
**AND FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO AD HOC TRADE**
**COMMITTEE FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD**
**FROM MARCH 7, 2006 THROUGH OCTOBER 31, 2006**

DLA Piper US LLP ("DLA Piper"), counsel to the Ad Hoc Trade Committee (the "Trade Committee"), and FTI Consulting, Inc. ("FTI Consulting", and collectively with DLA Piper, the "Applicants"), financial advisors to the Trade Committee, of Winn-Dixie Stores, Inc., et al. (the "Debtors"), hereby submit this application (the "Application") for allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in connection with their services rendered to the Trade Committee for the period from March 7, 2006 through October 31, 2006 (the "Compensation Period"). In support of the Application, the Applicants respectfully represent as follows:

---

[1] In addition to Winn-Dixie Stores, the following entities are Debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

## PRELIMINARY STATEMENT

1.      The Applicants file the instant Application in accordance with the Court's order dated November 9, 2006 confirming the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan").  The Plan is the result of extensive negotiations between most major constituencies in this case regarding substantive consolidation.  Such negotiations could not have occurred absent the work of the Applicants on behalf of the Trade Committee.  As set forth below, the Applicants reviewed over 10,000 pages of documents, interviewed approximately twelve (12) members of the Debtors' management and other employees, and briefed complicated, fact-specific issues regarding substantive consolidation as part of a motion to substantively consolidate these cases.  The Applicants' work product served as a platform upon which other parties were able to negotiate, and more importantly, the impetus to conclude a settlement.

2.      The work of the Applicants saved these estates many millions in legal fees that could have resulted if the compromise in the Plan had not been reached and substantive consolidation issues had been litigated in full.  The Debtors and Official Committee of Unsecured Creditors (the "Official Committee") recognized this fact by agreeing to make the Applicants whole for their fees and expenses under the Plan (up to a cap of $1.3 million).  Implicit in their agreement is, not only has the Trade Committee made a "substantial contribution" in these cases (to which the Court agreed when it confirmed the Plan), but also that the Applicants' fees are reasonable.  In light of the foregoing, the Applicants respectfully submit that all of their fees and expenses are reasonable.

## BACKGROUND

A.      The Chapter 11 Cases

3.      On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in

the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court. Prior to confirmation of the Plan, the Debtors' cases were jointly administered for procedural purposes only.

4.      The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners.   Prior to confirmation of the Plan (described below), the Debtors operated their businesses and managed their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.

5.      On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee to serve in these cases. The Official Committee currently consists of seven (7) members.  Of these members, only two (2) are the holders of prepetition trade claims.

6.      An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

7.      On June 29, 2006 the Debtors filed the Plan and related disclosure statement (the "Disclosure Statement).[2]  The Plan embodies the "Substantive Consolidation Compromise" (the "Sub Con Compromise"), which is a settlement by the major constituencies in these cases on whether the Debtors' cases should be substantively consolidated.

8.      On November 9, 2006, the Court entered an order confirming the Plan (the "Confirmation Order").  On November 16, 2006, the Court entered its findings of fact and conclusions of law with respect to the Confirmation Order (the "Findings and Conclusions").

_____

[2] The Plan and Disclosure Statement were revised and refiled by the Debtors on August 1, 2006.

B.    Retention of DLA Piper and FTI Consulting

9.    On or about March 7, 2006, the Trade Committee was reformed and reactivated to investigate substantive consolidation issues from the perspective of the Debtors' trade creditors.[3]  The current members of the Trade Committee are as follows: ASM Capital, Amroc Investments, LLC, Avenue Capital Group, LCH Opportunities, LLC, DellaCamera Capital Management, LLC, Contrarian Capital Management, LLC, Longacre Fund Management, LLC, ConAgra Foods, Inc., The Procter & Gamble Distributing Co., S.C. Johnson & Son, Inc., Conopco, Inc., Madison Capital Management, VR Capital Group, Ltd., and General Mills, Inc.  As of May 11, 2006, the Trade Committee members held approximately $70 million in unsecured claims, primarily relating to goods sold and delivered to the Debtors, services rendered to the Debtors, and lease rejection damages.  As of the filing of this Application, the Trade Committee holds significantly more in unsecured claims.

10.    On or about March 27, 2006, FTI Consulting was retained as financial advisors to the Trade Committee.

C.    The Sub Con Compromise and the Plan

11.    The Debtors made it very clear during the pendency of these cases that resolution of the substantive consolidation issue was the most significant obstacle to the filing of a plan of reorganization in these cases.

12.    On May 11, 2006, after a thorough review of the Debtors' publicly available and non-publicly available documents, the Trade Committee filed a Motion For Order pursuant to Section 105 of the Bankruptcy Code Substantively Consolidating the Debtors' Estates (the "Sub Con Motion").  In support of the Sub Con Motion, the Trade Committee prepared a brief (the "Brief") and an affidavit of

M. Freddie Reiss (the "Reiss Affidavit").  As set forth in the Sub Con Motion, the Trade Committee and its professionals reviewed in excess of 10,000 pages of documents and interviewed approximately a dozen of the Debtors' management and employees.

13.     To avoid the expense and delay of extensive evidentiary hearings on the issue of substantive consolidation as presented by the Sub Con Motion, on June 14, 2006, the Trade Committee, the Official Committee, and the Debtors agreed to the Sub Con Compromise.

14.     An integral part of the Sub Con Compromise is the payment of the Trade Committee's fees and expenses by the Debtors.  As such, section 12.3 of the Plan provides for the payment of fees and expenses of the Trade Committee's professionals, in an amount not exceeding $1,300,000.  See Plan ¶ 12.3.

15.     The Confirmation Order confirmed the Plan and approved the Sub Con Compromise. See Plan ¶ 11.

16.     The Confirmation Order, however, requires professionals who seek fees and expenses pursuant to section 12.3 of the Plan to file a fee application, as follows:

> The professionals who seek fees and expenses pursuant to Section 12.3 of the Plan shall file applications and serve a copy upon the Creditors Committee, the United States Trustee, the Debtors and any other party that requests a copy.  In the event an interested party files and objection to the reasonableness of the fees, the Court will conduct a hearing only as to reasonableness.

Confirmation Order ¶ 29.

17.     The Findings and Conclusions supplement the Confirmation Order.  It states "By all accounts, the parties involved in analyzing and negotiating the substantive consolidation issue and

_____

*(footnote continued from previous page)*

[3]  As set forth above, the Official Committee consists of seven (7) members, of which, only two are the holders of trade

*(footnote continued to next page)*

ultimately forging the substantive consolidation compromise dedicated significant time and effort to the process."  Findings and Conclusions p. 26.  At the hearing on confirmation of the Plan, the Debtors' witness, Mr. Huffard, testified that the professional fees sought by the Trade Committee "was an integral part of the settlement" and "By paying these fees and getting to this settlement, we will have saved multiples of this in avoided legal fees from litigation down the road."  Id.  P.26-27.  The Court concluded that the Trade Committee's professionals made a "substantial contribution" to the Debtors' chapter 11 cases.  Id at 27.  Thus the Court found that the allowance of fees set forth in Section 12.3 of the Plan is appropriate.  Id.

18.    DLA Piper and FTI Consulting file the instant application in accordance with the Confirmation Order and the Findings and Conclusions, and respectfully submit that all of their fees and expenses are reasonable.

## COMPENSATION AND REIMBURSEMENT REQUESTED

19.    By this Application, DLA Piper and FTI Consulting request that this Court authorize and order: (a) a final allowance of compensation for professional services rendered by DLA Piper as counsel to the Trade Committee for the Compensation Period in the amount of $709,102.35, representing 1,696.83 hours of professional services; (b) reimbursement of actual and necessary costs and expenses incurred by DLA Piper during the Compensation Period in the amount of $78,260.82;[4] (c) a final allowance of compensation for professional services rendered by FTI Consulting as Financial Advisors to the Trade Committee for the Compensation Period in the amount of $516,145.00, representing 1,051.80 hours of professional services; and (d) reimbursement of actual

---

*(footnote continued from previous page)*
  claims.

and necessary costs and expenses incurred by FTI Consulting during the Compensation Period in the amount of $24,699.55.[5]

## THE FEE APPLICATION

20.     Annexed hereto as Exhibit A are invoices containing a detailed itemization of the services performed and time spent in connection with DLA Piper's representation of the Trade Committee during the Compensation Period, and summaries of the actual, out-of-pocket costs and expenses incurred by DLA Piper in connection with its representation of the Trade Committee.  These costs and expenses have been incurred in accordance with DLA Piper's customary practice of charging clients for those expenses clearly related to and required by particular matters, rather than including such charges as part of DLA Piper's hourly rates.

21.     Annexed hereto as Exhibit B are invoices containing a detailed itemization of the services performed and time spent in connection with FTI Consulting's financial services to the Trade Committee during the Compensation Period, and summaries of the actual, out-of-pocket costs and expenses incurred by FTI Consulting in connection with its financial services to the Trade Committee.

22.     DLA Piper and FTI Consulting submitted the invoices contained in Exhibits A and B (through September 30, 2006) to the Debtors prior to the entry of the Confirmation Order.  The Debtors did not object to the amounts sought by DLA Piper and FTI Consulting.

23.     All services performed and expenses incurred by DLA Piper and FTI Consulting for which compensation or reimbursement is requested herein were performed or incurred for and on behalf of the Trade Committee, and were not for any other person or entity.

_____

*(footnote continued from previous page)*

[4] DLA Piper has voluntarily written off $1,980.91 in expenses.

## SUMMARY DESCRIPTION OF
## SERVICES PERFORMED

24.    The services provided by DLA Piper and FTI Consulting on behalf of the Trade Committee during the Compensation Period are set forth in full detail in Exhibit A and Exhibit B.  The following is a summary of the services rendered by DLA Piper and FTI Consulting on behalf of the Trade Committee:[6]

A.    Services Regarding Substantive Consolidation

25.    It became clear early on hat substantive consolidation was the most important issue in these cases.  As set forth above, the Applicants reviewed over 10,000 pages of documents relating to the Debtors, including the Debtors' quarterly filings, indenture, "road show" materials relating to same, guarantees, and lease documents.  The Applicants also interviewed approximately twelve (12) of the Debtors' management and other employees with respect to substantive consolidation.  Furthermore, DLA Piper also researched fact-specific issues regarding substantive consolidation law, and the status of the law in light of the recent decision in In re Owens Corning 419 F.3d 195 (3d Cir. 2005).  The Applicants used this extensive information to prepare for an eventual trial, and to draft the Sub Con Motion, the Brief and the Reiss Affidavit.  These documents are the only pleadings on file in these cases that take a position with respect to substantive consolidation.

26.    DLA Piper's services enabled the Trade Committee to function and act as a unified entity.  These services include the conducting of numerous meetings and teleconferences, adding new members, and drafting of by-laws and confidentiality agreements.  The Applicants met and negotiated

_(footnote continued from previous page)_

[5] The Applicants seek these amounts, subject to action 12.3 of the confirmed Plan, which caps their fees at $1,300,000.

with the Debtors and the Official Committee, which negotiations resulted in the confirmation of the Plan. The Debtors and the Official Committee have acknowledged the value of the Applicants' services and have consented to payment of their fees in the amount of $1.3 million.

27.     The Court's determination of the reasonableness of services provided should be done in an "objective manner, based upon what services a reasonable lawyer or legal firm would have performed…." In re Ames Dep't Stores, 76 F.3d 66, 72, (2d Cir. 1996). The Applicants respectfully submit that the services rendered and expenses incurred for the Compensation Period for which they seek compensation and reimbursement clearly satisfy the reasonableness standard. Further, as set forth below, the services provided by the Applicants satisfy the test for reasonableness set forth in In re First Colonial Corp. of America, 544 F.2d 1291 (5th Cir.), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904 (1977):[7]

> (a)     Time and labor required: the Applicants expended a combined 2,748.63 hours of professional time on behalf of the Trade Committee during the Compensation Period (1,696.83 by DLA Piper, 1,051.80 by FTI Consulting). The services required by the Trade Committee often necessitated work beyond normal business hours.

> (b)     Novelty and difficulty of questions and matters resolved: This case and the legal issues presented therein have required a high level of professional skill and expertise from the Applicants. There were novel issues of law that needed to be analyzed, in light of the recent decision in Owens-Corning.

> (c)     The reputation and skill of the attorneys providing the services: As noted above, the Applicants have drawn upon the skill of some of their most

---

*(footnote continued from previous page)*

[6]    The Plan originally contemplated that that the Applicants did not have to prepare an application for approval of their fees and expenses. In the event an objection is filed, the Applicants reserve the right to seek additional fees incurred in the preparation of the instant Application and responding to and litigating against any such objections.

[7]    The court in First Colonial stated that these guidelines are "equally useful whenever the award of attorneys' fees is authorized by statute." See First Colonial, 544 F.2d at 1299.

experienced attorneys and financial advisors in rendering its services to the Trade Committee during the Compensation Period.

(d)  <u>Preclusion of other employment:</u> Given DLA Piper's and FTI Consulting's size, their representation of the Trade Committee has not precluded employment by other clients.  This case has, however, required considerable time commitments from many of the Applicants' professionals

(e)  <u>Fees charged and fees awarded in similar cases:</u> The fees sought by the Applicants in this Application are commensurate with fees awarded to the Applicants in other cases and the fees charges by comparable firms.

(f)  <u>Time limitations:</u> This case has required the Applicants to perform a variety of services and address numerous different issues on behalf of the Trade Committee, often under significant time constraints.

(g)  <u>Whether the fee is fixed or contingent:</u> The Applicants have agreed to be compensated, and have calculated their fees, on the basis of a fixed hourly rate for the services performed. The Applicants' fees are contingent only to the extent that they are subject to this Court's approval.

(h)  <u>The "undesirability" of the case:</u> Representation of the Trade Committee in this case is not undesirable.

(i)  <u>The results obtained:</u> The Applicants respectfully submit that they achieved great results.  As a direct result of their work, the Debtors, Official Committee and Trade Committee were able to enter into the Sub Con Compromise and the Plan was confirmed.

(j)  <u>The Trade Committee's and the Applicants' professional relationship</u>: DLA Piper and FTI Consulting were retained by the Trade Committee on, respectively, March 7, 2006 and March 27, 2006.  The Applicants have been rendering services to the Trade Committee since then in a necessary and appropriate manner.

28.    Further, DLA Piper has assigned the work performed in this case to attorneys having the experience and specialization to perform the services required efficiently and properly.  The partners, counsel and associates providing the services for which compensation is sought pursuant to this Application are knowledgeable with respect to insolvency and substantive consolidation issues. Moreover, DLA Piper, as a general practice, seeks to use the services of law clerks and legal assistants

supervised by attorneys whenever appropriate in order to limit costs and more efficiently utilize the services of attorneys.  DLA Piper has followed this practice with respect to the services rendered to the Trade Committee wherever possible.

29.    Finally, in rendering services to and on behalf of the Trade Committee, DLA Piper has taken every care to provide the legal services as efficiently as possible and to avoid duplication of services.  In this regard, as much as possible, day-to-day legal work, including, but not limited to, drafting of pleadings, memoranda, stipulations, agreements and correspondence has been performed by junior to mid-level associates.

30.    The Applicants have not shared or agreed to share compensation or reimbursement to be awarded in this case with any other person.

31.    The Applicants have presented this Application to the Trade Committee and the Trade Committee has approved the requested amount.

## <u>CONCLUSION</u>

32.    Pursuant to this Application, DLA Piper and FTI Consulting request that this Court authorize and order: (a) a final allowance of compensation for professional services rendered by DLA Piper as counsel to the Trade Committee for the Compensation Period in the amount of $709,102.35, representing 1,696.83 hours of professional services; (b) reimbursement of actual and necessary costs and expenses incurred by DLA Piper during the Compensation Period in the amount of $78,260.82; (c) a final allowance of compensation for professional services rendered by FTI Consulting as Financial Advisors to the Trade Committee for the Compensation Period in the amount of $516,145.00, representing 1,051.80 hours of professional services; and (d) reimbursement of actual and necessary costs and expenses incurred by FTI Consulting during the Compensation Period in the amount of $24,699.55.  The Applicants respectfully submit that their request for final compensation

constitutes a fair and reasonable request for the quality and nature of services provided, and that the expenses are fair and reasonable and that such sums were necessarily expended by the Applicants in the performance of their duties.

## NOTICE

33.     Notice of the relief requested herein has been served on all parties required to be served pursuant to the Federal Rules of Bankruptcy Procedures and the Confirmation Order.  Copies of this Application and exhibits have been served upon all parties required to be served.

## NO PRIOR REQUEST

34.     No prior application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Applicants respectfully request entry of an order, substantially in the form attached hereto as Exhibit C,

(a)     approving the allowance of $709,102.35 for compensation of professional services rendered by DLA Piper during the Compensation Period;

(b)     approving the reimbursement of DLA Piper's actual, out-of-pocket expenses for the Compensation Period in the amount of $78,260.82.

(a)     approving the allowance of $516,145.00 for compensation of professional services rendered by FTI Consulting during the Compensation Period;

(b)     approving the reimbursement of FTI Consulting's actual, out-of-pocket expenses for the Compensation Period in the amount of $24,699.55.

(c)     authorizing and directing the Debtors to pay DLA Piper's and FTI Consulting's approved fees and expenses for the Compensation Period; and

(d)     granting such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         November 29, 2006

**DLA PIPER US LLP**

By: /s/      Thomas R. Califano
     Thomas R. Califano
     Vincent J. Roldan
    1251 Avenue of the Americas
    New York, NY 10020-1104
    Telephone:  (212) 835-6190
    Facsimile:  (212) 835-6001

- and -

By: /s/      Mark J. Friedman
     Mark J. Friedman
     Daniel Carrigan
     Janice L. Duban
    6225 Smith Avenue
    Baltimore, MD 21209
    Telephone:  (410) 580-4153
    Facsimile:  (410) 580-3001

- and -

By:     /s/  Philip V. Martino
     Philip V. Martino
    Florida Bar Number 079189
    101 East Kennedy Boulevard, Suite 2000
    Tampa, FL 33602-5149
    Telephone:  (813) 229-2111
    Facsimile:  (813) 229-1447
Attorneys for Ad Hoc Trade Committee of Winn-Dixie
Stores, Inc., et al.