UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In Re: | Chapter 11 |
| WINN-DIXIE STORES, INC. et al., | Case No. 05-03817-3F1 |
| Debtors. | (Jointly Administered) |

**RESPONSE OF CAPX REALTY, LLC TO DEBTORS' TWENTY-SEVENTH OMNIBUS OBJECTION TO (A) EQUITY CLAIMS, (B) EQUITY DAMAGE CLAIMS, (C) NO LIABILITY CLAIMS, (D) AMENDED AND SUPERSEDED CLAIMS, (E) UNLIQUIDATED CLAIMS, (F) OVERSTATED CLAIMS, (G) NO LIABILITY MISCLASSIFIED CLAIMS AND (H) MISCLASSIFIED CLAIMS**

COMES NOW CAPX REALTY, LLC, a Delaware limited liability company ("CAPX"), by and through its undersigned attorneys, and hereby files this Response of CAPX Realty, LLC to Debtors' Twenty-Seventh Omnibus Objection to (A) Equity Claims, (B) Equity Damage Claims, (C) No Liability Claims, (D) Amended and Superseded Claims, (E) Unliquidated Claims, (F) Overstated Claims, (G) No Liability Misclassified Claims and (H) Misclassified Claims (the "Response"), and states as follows:

## Background

1. On November 14th, the Debtors filed Debtor's Twenty-Seventh Omnibus Objection to (A) Equity Claims, (B) Equity Damage Claims, (C) No Liability Claims, (D) Amended and Superseded Claims, (E) Unliquidated Claims, (F) Overstated Claims, (G) No Liability Misclassified Claims and (H) Misclassified Claims (the "27th Omnibus Objection").

2. The 27th Omnibus Objection seeks to eliminate certain claims because the Debtors' books and records purportedly do not reflect any liability to the claimant, the claims

reflect post-petition claims or because certain claims that are contested by the Debtors on legal bases.

3. One of the claims to which the Debtors object is claim number 13622[1] (Claim No. 13622). This claim was filed by an entity known as Tallahassee 99-FL, LLC ("Tallahassee 99"), the current owner of the property on which Winn-Dixie Store No. 124 ("Store 124") was formerly operated (the "Subject Property").

4. Store 124 was operated on the Subject Property pursuant to a lease agreement between Winn-Dixie Stores, Inc. and Tallahassee 99 (the "Tallahassee 99 Lease"). The Tallahassee 99 Lease was rejected effective as of September 30, 2006, pursuant to that certain "Order Authorizing Debtors to Reject Additional Store Leases, Establishing Rejection Damage Claim Bar Date and Granting Related Relief" dated August 31, 2006 (the "Store 124 Rejection Order"). As a result of the rejection of the Tallahassee 99 Lease, both Tallahassee 99 (as landlord) and CAPX (as secured lender) filed rejection claims. Tallahassee 99's claim is Claim No. 13622 and is in the amount of $1,041,919.40. CAPX filed a rejection damages claim on October 25, 2006, in the amount of $1,107,355.17 ("Claim No. 13620").

5. CAPX filed Claim No. 13620 because the claim arising from the rejection of the Tallahassee 99 Lease (the "Store 124 Rejection Claim") is subject to a security interest in said rejection damages claim given to CAPX by Tallahassee 99, and because the loan documents that govern the relationship between Tallahassee 99 and CAPX give CAPX the exclusive right to file such a claim upon the occurrence of an event of default under the Loan Documents.

6. Specifically, CAPX is the owner of that certain Secured Note, dated May 5, 2006, with respect to a loan made to Tallahassee 99 (the "Note"). The Note is secured by that certain

---

[1] Claim 13622 amends Claim 9761 filed by Tallahassee 99. The Debtors also objected to Claim 9716 and seek its disallowance as having been amended and replaced by Claim 13622.

1007237\3

2

Open-End Mortgage, Security Agreement and Fixture Filing executed by Tallahassee 99 dated August 26, 1999 and recorded on September 13, 1999 in Official Records Book 2295, Page 1800, Public Records of Leon County, Florida, and re-recorded in Official Records Book 2314, Page 1181, Public Records of Leon County, Florida (the "Mortgage"), and that certain Assignment of Lease and Agreement dated August 26, 1999 and recorded on September 13, 1999 in Official Records Book 2295, Page 1855, Public Records of Leon County, Florida, and re-recorded in Official Records Book 2314, Page 1236, Public Records of Leon County, Florida (the "Assignment of Lease") (the Note, Mortgage and Assignment of Lease collectively referred to as the "Loan Documents", copies of which were attached to Claim 13620). The Mortgage and Assignment of Lease encumbers the Subject Property and the Tallahassee 99 Lease.

### CAPX is Entitled to Assert the Store 124 Rejection Claim

7. Tallahassee 99 is in default under the Loan Documents, as is detailed in a correspondence to Tallahassee 99 dated September 28, 2006, and attached hereto as Exhibit "A". As a result of said default, CAPX has also recently filed a foreclosure lawsuit in Leon County, Florida, styled as: *CAPX Realty, LLC vs. Tallahassee 99-FL, LLC, et al.*, Leon County Circuit Court, Case No.: 06-CA-3029, seeking to foreclosure the Mortgage with respect to the Subject Property.

8. In the 27th Omnibus Objection, the Debtor states that, with respect to Claim No. 13620, "absent judgment of foreclosure, no liability per Debtor's books and records...". However, the Debtors' apparent position that CAPX must have a foreclosure judgment entered against Tallahassee 99 in order to assert the Store 124 Rejection Claim is erroneous.

9.  It has been stated that when a bankruptcy court determines property rights, it must look to state law. See First Fidelity Bank, N.A. v. Jason Realty, L.P., 59 F.3d 423 (3d Cir. 1995). In this case, Florida law governs the relationship between CAPX and Tallahassee 99 under the Loan Documents. (Mortgage, p. 36, Assignment of Leases, p. 8).

10. Florida has a statute that governs the assignment of rents. See Fla. Stat. § 697.07 (2006). That statutes specifically provides that a "mortgage or separate instrument may provide for an assignment of rents of real property or any interest therein as security for repayment of an indebtedness." Fla. Stat. § 697.07(1). The statute further provides that:

> ...[u]nless otherwise agreed to in writing by the mortgagee and mortgagor, the assignment of rents shall be enforceable upon the mortgagor's default and written demand for the rents made by the mortgagee to the mortgagor, whereupon the mortgagor shall turn over all rents in the possession of the mortgagor at the time of the written demand or collected thereafter (the "collected rents") to the mortgagee less payments of any expenses authorized by the mortgagee in writing.

Fla. Stat. § 697.07(3). Noticeably absent from the statute is any requirement that a foreclosure judgment be entered prior to rents being assigned to the mortgagee. In fact, the statute provides just the opposite in stating that "the assignment of rents shall be enforceable upon the mortgagor's default and written demand for the rents made by the mortgagee to the mortgagor." Id.

11. In this case, both the Mortgage and Assignment of Lease assign rents to CAPX and provide CAPX with a security interest in the Tallahassee 99 Lease and rents generated therefrom. Specifically, the Mortgage grants CAPX a security interest in the Tallahassee 99 Lease, "including, without limitation, the present and continuing right ...(iv) **to pursue and collect any claim in the bankruptcy or other insolvency proceeding of [Winn-Dixie]...**" (Mortgage, p. 3, emphasis added). Moreover, the Mortgage provides that upon the occurrence of an "Event of Default" (as defined in the Mortgage), CAPX is "entitled to collect and receive all

1007237\3

4

earnings, revenues, rents, issues, awards, proceeds, profits and Income of the [Subject] Property, and said earnings, revenues, rents, issues, awards, proceeds, profits and income are hereby assigned to Mortgagee and its successors and assigns." (Mortgage, p. 29).

12. The Assignment of Lease also contains provisions that give CAPX the right to collect rents and to file the Store 124 Rejection Claim. Specifically, the Assignment of Lease provides that Tallahassee 99…

> …does assign, transfer, convey and set over to [CAPX], all of [Tallahassee 99]'s estate, right, title and interest in, to and under the Lease, together with all rights, powers, privileges, options and other benefits of [Tallahassee 99] as lessor under the Lease, including, but not by way of limitation, (i) the immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, insurance proceeds, condemnation awards, moneys and security receivable by [Tallahassee 99] under the Lease or pursuant to any provisions thereof, whether as rents or as the purchase price of [Tallahassee 99]'s interest in the Property or otherwise… (vii) the right to give all notices of a default under the Lease, including the commencement, conduct and consummation of proceedings at law or in equity as shall be permitted under any provision of the Lease or by law or in equity **(including, without limitation, the right to pursue and collect any claim in a bankruptcy or other insolvency proceeding involving [Winn-Dixie]**…

(Assignment of Lease, pp. 2-3, emphasis added).

13. Therefore, because: (i) the Mortgage and Assignment of Lease provide CAPX with a security interest in the claim arising from the rejection of the Tallahassee 99 Lease and the right to file and pursue said rejection claim; (ii) Tallahassee 99 is in default under the Loan Documents; and (iii) CAPX has made a written demand for rents generated by the Subject Property as required by Florida law, CAPX is entitled to and is the proper party to assert the Store 124 Rejection Claim.

## The Amount of Claim No. 13620 Represents an Accurate Calculation of Rejection Damages

14.  The Debtor seeks the reduction of Claim Number 13622, to the amount of $817,000.00, and asserts that "reduced amount reflects accurate calculation of rejection damages..." Although there is no objection to the amount of Claim No. 13620, it can safely be assumed that when it is determined that CAPX is the entity that is entitle to assert the Store 124 Rejection Claim, the Debtors will object to the amount of Claim No. 13620. Therefore, CAPX also responds to the objection to the amount of Claim No. 13622.

15.  Initially, it must be noted that a proof of claim constitutes prima facie evidence of the validity and the amount of a claim. See, In re Macfarlane, 83 F.3d 1041 (9th Cir. 1996); In re Brown, 82 F.3d 801 (8th Cir. 1996). If the a debtor contests a proof of claim, it must produce evidence to rebut the presumed validity. Neither a debtor's books and records nor its schedules of liabilities are determinative of the validity of a claim in a bankruptcy case. In re Systems Communications, Inc., 234 B.R. 143 (Bankr. M.D. Fla. 1999). A claim that has a writing attached and is otherwise properly filed is presumptively valid. See In re Consolidated Pioneer Mortgage, 178 B.R. 222 (9th Cir. BAP 1995) aff'd 91 F.3d 151 (9th Cir. 1996).

16.  The filing of an objection to a proof of claim does not "deprive the proof of claim of its presumptive validity unless the objection is supported by substantial evidence." In re Hemingway Transport, Inc., 993 F.2d at 925. Unless and until the objecting party meets its burden of going forward and introducing evidence sufficient to rebut the presumption of validity accorded proofs of claim under Rule 3001(f) of the Federal Rules of Bankruptcy Procedure, the validity of the claim cannot be questioned, and an objection to the claim cannot be sustained. In re Barclay Brothers, Inc., 1986 WL 15884 (Bkrtcy. E.D.Pa. 1986); In re Eastern Fire Protection,

1007237\3

6

Inc., 44 B.R. 140, 142 (Bankr. E.D. Pa. 1984). It is only after the objecting party has presented such substantial evidence that the claimant must prove the validity of its claim. In re International Wireless Communications Holdings, Inc., 257 B.R. at 742; see also In re Hemingway Transport, Inc., 993 F.2d at 925.

17. With respect to the limitation on damages stemming from the rejection of a lease on non-residential real property, it has been stated that Section 502(b)(6) was designed for the dual purpose of compensating lessors for their losses while protecting debtors' estates from lessors' claims that could be so large as to deprive other creditors of a potential recovery. See e.g., In re Highland Superstores, Inc., 154 F.3d 573, 577 (6th Cir. 1998). Section 502(b)(6) was intended to provide landlords with actual past damages and limited future damages. In re Gantos, Inc., 176 B.R. 793, 795 (Bankr. W.D. Mich. 1995).

18. In this case, as provided in Claim No. 13620, CAPX calculated its rejection damage portion of its claim based upon the greater of one year's rent or 15% of the balance of Lease not to exceed three years' rent, pursuant to Section 502(b)(6). A spreadsheet detailing that calculation is attached to Claim No. 13620.

19. Although no specifics are provided with respect to the basis to the objection to Claim No. 13622, it appears that the Debtor may not be taking into account real estate taxes, insurance or other amounts considered additional rent under the lease in preparing its calculation of the correct amount of rejection damages due under the Tallahassee 99 Lease.

20. However, it is well-established law that a creditor may properly include real estate taxes when asserting a claim if the debtor-tenant is required to pay those taxes pursuant to the lease. In re Andover Togs, Inc., 231 B.R. 521, 541 (Bankr. S.D.N.Y. 1999). It is also proper to prorate monetary obligations, such as real estate taxes, when computing a claim. See In re

McCrory Corp. 210 B.R. 934 (S.D.N.Y 1997). Finally, it is also proper to take into account the likelihood of tax escalation when computing a claim. See Andover Togs, 231 B.R. at 541. Moreover, this Court has expressly held that when a lease specifically makes a lessee responsible for the payment of taxes, insurance and maintenance and said expenses are delineated as "additional monetary obligations" should be included in the calculation of a 502(b)(6) claim. See In re Clements, 185 B.R. at 902-903 (Bkrtcy. M.D. Fla. 1995). See also In re Smith, 249 B.R. 328, 338 (fn 7) (Bkrtcy. S.D.Ga. 2000) ("CAM, taxes and insurance...are generally held to be rent in net lease claims governed by 502(b)(6).").

21.    In this case, the Tallahassee 99 Lease is clearly a "net lease" that requires Winn-Dixie to pay taxes, insurance and other related charges. Specifically, the Tallahassee 99 Lease states as follows:

> Net Lease; No Setoff or Counterclaim Against Rent. This Lease is an absolutely net lease and Tenant shall have an unconditional obligation to pay Rent, Additional Monetary Obligations and all other sums payable hereunder by Tenant...

(Tallahassee 99 Lease, ¶6(a)). Furthermore, paragraph 13 of the Lease requires that the Debtor maintain insurance on the Leased Premises. Therefore, since the Tallahassee 99 Lease requires the Debtor to pay real estate taxes and insurance, CAPX's calculation of rejection damages is accurate.

## Conclusion

22.    Claim No. 13620 should be allowed in its entirety as CAPX is the proper entity to assert the Store 124 Rejection Claim and has properly calculated the same. Claim No. 13622 should be disallowed in its entirety, as the Tallahassee 99 is in default under the Loan Documents and has assigned its right to file a rejection claim to CAPX.

1007237\3

WHEREFORE, CAPX respectfully requests that this Court enter an Order: (i) allowing Claim No. 13620 is its entirety; (ii) disallowing Claim No. 13622; and (iii) granting such other and further relief it deems appropriate.

/s/ Zachary J. Bancroft
Zachary J. Bancroft
Florida Bar No. 0145068
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
450 S. Orange Avenue, Suite 250 (32801)
Post Office Box 2809
Orlando, Florida 32802-2809
Telephone: (407) 843-4600
Facsimile: (407) 843-4444
Attorneys for CAPX REALTY, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _December 4_, 2006, a copy of RESPONSE OF CAPX REALTY, LLC TO DEBTORS' TWENTY-SEVENTH OMNIBUS OBJECTION TO (A) EQUITY CLAIMS, (B) EQUITY DAMAGE CLAIMS, (C) NO LIABILITY CLAIMS, (D) AMENDED AND SUPERSEDED CLAIMS, (E) UNLIQUIDATED CLAIMS, (F) OVERSTATED CLAIMS, (G) NO LIABILITY MISCLASSIFIED CLAIMS AND (H) MISCLASSIFIED CLAIMS was served via U.S. Mail, on the Debtor, and on the Debtor's attorney, the United States Trustee and the Local Rule 1007(d) Parties in Interest List electronically, and on D.J. Baker, Esquire, via email at djbaker@skadden.com.

_____
Zachary J. Bancroft

1007237\3



# Lowndes
# Drosdick
# Doster
# Kantor &
# Reed, P.A.

ATTORNEYS
AT LAW

GARY SOLES
DIRECT DIAL: 407-418-6331
SOUTH ORANGE AVENUE OFFICE
POST OFFICE BOX 2809
ORLANDO, FLORIDA 32802-2809
gary.soles@lddkr.com

MERITAS LAW FIRMS WORLDWIDE

September 28, 2006

**VIA FACSIMILE**

Edward E. Klein, Esquire
Klein & Solomon, LLP
275 Madison Avenue
11th Floor
New York, NY 10016

  Re: **Tallahassee 99-FL, LLC**

Dear Ed:

  Per our telephone conversation of late yesterday, this law firm represents Capital Crossing Bank, the owner of one-half (1/2) of the obligation by your client, Tallahassee 99-FL, LLC, concerning Winn-Dixie Store No. 124 located in Tallahassee, Leon County, Florida (the "Subject Property").

  As we discussed, your client is in default of the subject loan documents as follows:

1. Failure to pay all sums due for the September 1, 2006 quarterly payment;

2. The fact that Winn-Dixie has filed bankruptcy and has rejected the lease of the Subject Property;

3. Failure to sign new replacement promissory notes for over a year; and

4. Failure to timely pay the real estate taxes due on the Subject Property.

  As a result of the foregoing, Capital Crossing Bank, with the consent of Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), the owner of the other one-half (1/2) of the subject obligation, hereby accelerates all sums due under the subject loan documents and demands immediate payment thereof. As a result of said default and acceleration, default interest shall accrue retroactive to the date of the payment default, late charges are due, the Make Whole Amount described in the subject mortgage is due, and all attorneys' fees and costs incurred by Capital Crossing Bank in pursuing this

**EXHIBIT**
"A"

215 NORTH EOLA DRIVE
ORLANDO, FLORIDA 32801-2028
TEL: 407-843-
wndes-law.com
450 SOUTH ORANGE AVENUE, SUITE 800
ORLANDO, FLORIDA 32801-3344

Edward E. Klein, Esquire
September 28, 2006
Page 2

matter are also due. Pursuant to § 697.07, Florida Statutes, demand is hereby made for all future rents generated by the Subject Property.

Notwithstanding the acceleration of the subject loan, Capital Crossing Bank and Merrill Lynch are willing to negotiate with you and your clients to see if a mutually acceptable resolution of this matter can be reached. In that regard, Capital Crossing Bank and Merrill Lynch reserve the right to pursue all rights and remedies and cease settlement discussions with you and your client at any time. All settlement discussions are governed by §90.408 of the Florida Statutes. There shall be no binding settlement agreement unless and until it is reduced to writing and signed by all parties to the subject loan documents.

If you have any questions regarding the matters discussed herein, do not hesitate to contact me.

Cordially yours,

Gary Soles

GS/ddm
c:   Jason Mandel (via e-mail)
     Arge Feotis (via e-mail)
     Denis B. Stratford (via e-mail)
     Zachary J. Bancroft, Esquire
     Matt E. Beal, Esquire

0095052\124557\989300\1