UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WINN-DIXIE STORES, INC., et al., | : | Case No. 05-03817-3F1 |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Chapter 11 |

**RESPONSE OF KONICA MINOLTA PHOTO IMAGING U.S.A., INC. TO
TWENTY-SEVENTH OMNIBUS CLAIMS OBJECTION AND
CROSS-MOTION FOR PAYMENT OF ADMINISTRATIVE CLAIM**

Konica Minolta Photo Imaging U.S.A., Inc. ("Konica"), by and through its undersigned

counsel, hereby submits its Response (the "Response") to the Twenty-Seventh Omnibus Claims

Objection and Cross-Motion (the "Cross-Motion") for Payment of Administrative Claim.  In

support of this Motion, Konica represents and asserts as follows:

**JURISDICTION**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief sought herein is 11 U.S.C. § 502 and 503 and

Federal Rule of Bankruptcy Procedure 3007.

**BACKGROUND**

4. On February 21, 2005 (the "Petition Date") the Debtors[1] each filed voluntary petitions

for reorganization under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et*

---

[1] In addition to Winn-Dixie Stores, Inc., the debtors include: Astor Products, Inc., Crackin' Good, Inc., Deep South
Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers,
Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik
Check Supermarkets, Inc., Sunbelt Products, Inc. Sundown Sales, inc., Superior Food Company, Table Supply Food

*seq.* (as amended, the "Bankruptcy Code"). On February 22, 2005, the Court granted Debtors' request that the cases be jointly administered for procedural purposes only. [Docket No. 36].

5. The Debtors operated their respective businesses and managed their respective properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

6. On February 23, 2005, an Official Committee of Unsecured Creditors was duly appointed by the United States Trustee, pursuant to Bankruptcy Code § 1102, to represent creditors holding unsecured claims in these cases.

7. On August 17, 2005, an Official Committee Equity Security Holders was duly appointed by the United States Trustee, pursuant to Bankruptcy Code § 1102 to represent equity holders in these cases.

8. Pursuant to pleadings previously filed in these cases, the Debtors are grocery and drug retailers operating in the Southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. One of the largest food retailers in the United States, the Debtors operated more than 900 stores in the United States at the time of the filing.[2]

9. At the time of the filing of the within bankruptcy proceedings, Konica and Winn-Dixie Stores, Inc. ("Winn-Dixie") were parties to that certain Photofinishing System Supply and Support Agreement, dated February 25, 2003 (the "2003 Agreement"). Pursuant to the terms of the 2003 Agreement, Winn-Dixie leased from Konica on-site photofinishing equipment. Konica, in turn, provided training, technical and service support, parts and accessories for the equipment leased, and color photographic paper and processing chemicals.

---

Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Sinn-Dixie Supermarkets, Inc.

[2] *See,* Motion for Authority (A) to Prepare a Consolidated List of Creditors and a List of Equity Security Holders in Lieu of a Matrix, (b) to File a Consolidated List of the Fifty Larges General Unsecured Creditors, and (C) to Mail Initial Notices.

10. The 2003 Agreement was executed to amend and restate the parties' agreement as set forth in that certain Master Lease Agreement, dated as of July 1994 (the "1994 Agreement"). The term of the 2003 Agreement commenced on February 25, 2003 and was to continue to be in effect until such time as every "Lease Term" (as said quoted term is defined in the 2003 Agreement) with respect to all items of equipment leased by Konica to Winn-Dixie had expired. In no event, however, was the term to be shorter than five years from the date of execution.

11. Pursuant to the 2003 Agreement, certain payment defaults existing under the 1994 Agreement, totaling approximately $3.6 million (the "1994 Payment Defaults"), were to be forgiven, provided Winn-Dixie performed under and in accordance with the terms of the 2003 Agreement. In the event that Winn-Dixie defaulted, it would be required to repay a pro-rated portion of the 1994 Payment Defaults.

12. At the time of the filing of the within bankruptcy proceedings, Winn-Dixie was in default under the terms of the 2003 Agreement for, among other reasons, failing to make timely payments under the 2003 Agreement. As of the petition date, Winn-Dixie owed Konica approximately $1.2 million in connection with open invoices for paper and consumables purchased from Konica.

13. As a result of these defaults, Konica estimates that the pro-rated portion of the 1994 Payment Defaults owing to Konica is approximately $2.3 million. This amount is in addition to the $1.2 million pre-petition date payment default noted above.

14. Subsequent to the filing of these chapter 11 cases, the Debtors continued to accept Konica's performance under the 2003 Agreement and to offer the photocopying services made possible by the 2003 Konica Agreement to its customers. At the same time, the Debtors failed to honor their obligations to Konica. Among other things, and in derogation of their obligations

3

under the 2003 Agreement, the Debtors began purchasing color photographic paper and processing chemicals from third-party suppliers. During discussions between the parties regarding its post-petition defaults, Winn-Dixie requested that Konica modify the terms of the parties' relationship relative to Winn-Dixie's photo processing business.

15. In response to Winn Dixie's request and as a concession to it, Konica executed that certain Non-Binding Letter of Intent between Winn Dixie Stores, Inc. and Konica Minolta Photo Imaging U.S.A., Inc., on September 1, 2005 (the "LOI").

16. Pursuant to the LOI, Konica agreed to a short term modification of the pricing terms of the 2003 Agreement effective August 1, 2005. The LOI represented a significant reduction in paper and product costs for the Debtors. In connection with the LOI, the parties also agreed they would, for a period of 120 days from the date of the LOI's execution, attempt to formalize a new agreement. The 120 days expired as of December 31, 2005. Despite the parties' best efforts, they were unable to reach a mutually agreeable replacement contract.

17. As of January 1, 2006, the pricing terms reverted to the 2003 Agreement provisions. After that time, Winn-Dixie continued to default under the terms of the 2003 Agreement by failing (among other things) to pay, when due, quarterly lease and service billings.

18. After January 1, 2006, Konica unsuccessfully urged Winn-Dixie to either timely and completely honor its contractual commitments or reject its contracts if Winn-Dixie believed they were burdensome. Finally, Konica filed its own Motion to Set Specific Date for the Debtors to Assume or Reject Executory Contract Pursuant to Bankruptcy §365(d)(2) (the "Motion to Compel") [Docket No. 5220][3], pursuant to which Konica requested that the Bankruptcy Court require the Debtors to assume or reject the 2003 Agreement within ten business days.

---

[3] Copies of the 2003 Agreement and LOI were previously submitted to the Bankruptcy Court as Exhibits A and B, respectively, to the Motion to Compel.

4

19. Pursuant to a stipulated order by the parties, the 2003 Agreement was deemed rejected as of April 3, 2006. Thereafter, Konica submitted its Proof of Administrative Claim (the "Proof of Administrative Claim") for claims arising post-petition and pre-rejection under the 2003 Agreement (the "Konica Administrative Claim"). A copy of that Proof of Administrative Claim is attached hereto and incorporated herein by this reference as **Exhibit A**.

20. On October 10, 2006, the Debtors filed their First Modified Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan") [Docket No. 11765][4]. On November 9, 2006, the Bankruptcy Court entered an Order confirming the Plan [Docket No. 12440].

21. Pursuant to Sections 4.1(a) and 12.1 of the Plan, each creditor asserting a "non-ordinary course" administrative claim against the estate is required to file an application for payment of its claim, within 45 days of the Effective Date.

22. On or about November 14, 2006, the Debtors filed their Twenty-Seventh Omnibus Objection to (A) Equity Claims, (B) Equity Damage Claims, (C) No Liability Claims, (D) Amended and Superseded Claims, (E) Unliquidated Claims, (F) Overstated Claims, (G) No Liability Misclassified Claim and (H) Misclassified Claims (the "Omnibus Objection") [Docket No. 12532].

23. The Konica Administrative Claim is the only claim identified on Exhibit G (No Liability Misclassified Claim) to the Omnibus Objection.

### RELIEF REQUESTED

24. For the reasons set forth herein, Konica requests that the Bankruptcy Court overrule the Debtors' objections to the Konica Administrative Claim and grant Konica an Allowed Administrative Claim in the full amount set forth in the Proof of Administrative Claim.

---

[4] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Plan.

LV1 373906v1 12/01/06

25. Pursuant to Sections 4.1(a) and 12.1 of the Plan, Konica respectfully requests that the

Bankruptcy Court require the Debtors to pay, on the next Distribution Date, the Allowed

Administrative Claim of Konica, as determined by the Bankruptcy Court.

### RESPONSE TO 27TH OMNIBUS OBJECTION
### AND REQUEST FOR ALLOWANCE AND
### PAYMENT OF ADMINISTRATIVE CLAIM

26. The Omnibus Objection provides little explanation as to the grounds for objecting to

the Konica Administrative Claim. As noted above, the Konica Administrative Claim is the only

claim listed on Exhibit G to the Omnibus Objection, which, as to Exhibit G, states as follows:

> 27. As a result of their review, the Debtors have identified one
> Disputed Claim with respect to which the Books and Records
> reflect no amount due and that also appears to incorrectly assert
> priority status, in whole or part (the "No Liability Misclassified
> Claim"). The No Liability Misclassified Claim, with reasons for
> disallowance and reclassification, is listed on Exhibit G.

Omnibus Objection, p.8, ¶27.

27. Exhibit G to the Omnibus Objection identifies the Konica Administrative Claim, and

as to the reason for disallowance and reclassification, states the following:

> NO LIABILITY PER DEBTORS' BOOKS AND RECORDS
> AND INSUFFICIENT DOCUMENTATION TO DETERMINE
> AMOUNT OWED. ALSO, MISCLASSIFIED CLAIM. TO
> EXTENT DOCUMENTATION OF ACTUAL RATHER THAN
> ESTIMATED POSTPETITION CHARGES IS PROVIDED,
> DEBTOR WILL ALLOW AMOUNTS ACTUALLY OWED
> POSTPETITION ON ADMINISTRATIVE EXPENSE BASIS
> (I.E. TAXES). SCHEDULE A CALCULATION IS
> OVERSTATED AS DEBTORS MADE PURCHASES FROM
> OTHER VENDORS DUE TO KONICA'S FAILURE TO ABIDE
> BY CREDIT TERMS. SCHEDULE B CALCULATION OF
> PAPER SURCHARGES IS SUBJECT TO DISALLOWANCE
> BECAUSE IT DOES NOT PROVIDE BASIS OF
> MEASUREMENT. SCHEDULE C PROPERTY TAXES
> PROVIDES ESTIMATED, NOT ACTUAL AMOUNTS AND
> DOCUMENTATION OF ACTUAL AMOUNTS IS NEEDED.
> SCHEDULE D REMOVAL COSTS IS SUBJECT TO

6

DISALLOWANCE BECAUSE THERE IS NO CONTRACTUAL
MEASURE OF SUCH COSTS.

Omnibus Objection at Exhibit G, p.1.

28. Notwithstanding the Debtors' bald allegations, each element of the Konica

Administrative Claim emanates from the 2003 Agreement and the parties contractual

relationship thereunder and is amply supported by the documentation submitted.

### Lost Profits – Schedule A

29. Pursuant to paragraph 19 of the 2003 Agreement, Winn-Dixie was obligated to

"purchase *all* paper and chemicals" from Konica. 2003 Agreement, p.9, ¶19 (emphasis added).

As noted above, subsequent to the filing of these chapter 11 cases, Winn-Dixie, in derogation of

its obligations under the 2003 Agreement, began purchasing color photographic paper and

processing chemicals from another supplier.

30. The Debtors allege that they began purchasing from third-party vendors, "due to

Konica's failure to abide by credit terms." *See,* Exhibit G. Not only is this statement wholly

unsupported, it is a mischaracterization of the events which transpired. As noted above, post-

Petition Date, Winn-Dixie was having difficulty performing under the 2003 Agreement.

Specifically, Winn-Dixie failed to pay, when due, valid invoices for post-Petition Dates goods

and services. As a result, Konica placed Winn-Dixie on temporary hold pending assurances that

it would perform in accordance with the terms of the 2003 Agreement.

31. As noted above, the parties thereafter met to discuss Winn-Dixie's defaults under the

2003 Agreement. As a result of that meeting, Konica agreed to enter into the LOI in order to

give the Debtors price relief while the parties explored the possibility of amending the 2003

Agreement. Specifically, Konica agreed to temporarily reduce lease prices, as well as pricing for

7

paper and chemicals, for a 120 day period while the parties discussed the possibility of amendment.

32. However, nowhere in the LOI did Konica waive any of its rights with regard to Winn-Dixie's defaults under the 2003 Agreement.[5] Thus, contrary to the assertion of the Debtors, Winn-Dixie, not Konica, defaulted under the 2003 Agreement. Moreover, Konica attempted to accommodate the Debtors, a fact which the Debtors now attempt to use against Konica in objecting to the Konica Administrative Claim.

33. The Debtors chose to continue to request and receive benefits under the terms of the 2003 Agreement and take advantage of the ability afforded to them under the 2003 Agreement to provide the photographic services to its customers. According to the terms of the 2003 Agreement, Winn-Dixie was obligated to purchase all paper and chemicals from Konica. Therefore, Winn-Dixie must be held responsible for the profit shortfall created by its purchase of paper and chemicals from third party vendors in derogation of its obligations under the 2003 Agreement.

34. Konica asserts that the post-petition gross profit shortfall created by this breach is $938,876. The calculation of that figure is set forth on Schedule A to the Proof of Administrative Claim and is based upon Konica's best estimate of the paper purchases from third party vendors.[6]

35. As can be seen from the Schedule, the Debtors' 2005 paper purchases were running approximately 50.6% of the 2004 levels. As also demonstrated, during the months of July, August, September and October, the Debtors were clearly purchasing paper from non-Konica

---

[5] The LOI specifically provides: "Also, by acknowledging this LOI, KMPI [Konica] is in no way rejecting or negating the Current Agreement." LOI at p.1.

sources. The gross profit shortfall was calculated by taking the difference of actual purchases from the estimated third party purchases. *See*, Affidavit of David Hakula in Support of Response to Twenty Seventh Omnibus Claims Objection and Cross Motion for Payment of Administrative Claim (the "Hakula Aff.") submitted in support of this Response and Cross Motion, which Hakula Aff. is incorporated herein by this reference.

36. In light of the foregoing, Konica respectfully asserts that this portion of the Konica Administrative Claim is not only appropriate, but should be Allowed by the Bankruptcy Court in the amount asserted.

### *Paper Shortfall – Schedule B*

37. Pursuant to Paragraph 20 of the 2003 Agreement, the Debtors acknowledged that "the lease price offered under this Agreement was based upon Winn-Dixie purchasing certain minimum amounts of paper and chemistry per machine, for the duration of the Agreement." 2003 Agreement at p.9, ¶20(a). Thus, in the event the Debtors failed to purchase the required minimums, the Debtors were required to pay a surcharge, calculated in accordance with the terms of the 2003 Agreement. *See,* 2003 Agreement at p.9, ¶20(b).

38. Due to eroding purchase volumes post-Petition Date, the Debtors owe Konica $100,924 for accumulated, post-Petition Date paper surcharges. The calculation of those charges was set out on Schedule B to the Proof of Administrative Claim.

39. The first column (Store #) of the Schedule represents each of the Debtors' store numbers. The second column (Division) represents the store location. As indicated in fourth column (Prc/SqFt), the contracted invoice price of the paper, as set forth in the 2003 Agreement, was $0.39 per sq ft. This price is multiplied by the total square feet of paper purchased by the

---

[6] Debtors suggest that these claims may be overstated. Konica reserves the right to amend this portion of its Administrative Claim upon receipt of documentation from the Debtors as to the actual paper and chemical purchases

9

relevant store in the applicable quarter, which amount is found in the fifth column (TotSqFt). The invoice price paid, which equals the product of square feet purchased multiplied by the contract price, is found the third column (Inv$).

40. The sixth column (SqFt/Roll) represents the number of square feet of paper typically needed to process a roll of film, while the total rolls of film processed by the relevant store during the quarter is found in the seventh column (Total Rolls). The eighth column (Num Days) represents the average days in the quarter, while the ninth column (Avg Rolls) represents the rolls of film processed per day ("RPD") at the store.

41. The tenth column (Nominal $) represents the rebate or surcharge to be paid to/by the Debtors depending upon whether or not the store met the minimum RPD, as set forth in Schedule H to Exhibit D of the 2003 Agreement. A true and correct copy of Schedule H to Exhibit D of the 2003 Agreement is attached to the Hakula Aff. at Exhibit "A".

42. The rebate/surcharge amount is based upon how much the actual RPD exceeded or fell short of the target RPD. The "Nominal Amount" set forth in the tenth column represents the contract price of $0.39 per sq ft price (set forth in the fourth column), plus or minus the applicable rebate or surcharge amount.

43. The adjusted price, which is reflected in the eleventh column (Adj Cost) represents the total square feet of paper purchased (as set forth in the fifth column) multiplied by the adjusted price set forth in the tenth column.

44. The last, or twelfth, column (Adjustment) represents the amount due as determined by subtracting the actual amount paid (the third column) from the adjusted cost (the eleventh column).

---

from third party vendors during this time period.

10

45. Schedule B to the Proof of Administrative Claim provides the surcharge for each of the Debtors' store locations for the time period in question, which calculation is in accordance with the agreement of the parties and express terms of the 2003 Agreement.

46. Accordingly, the Debtors objection to the paper surcharge portion of the Konica Administrative Claim is, once again, unfounded and should be overruled.

### *Property Taxes – Schedule C*

47. Pursuant to the terms of the 2003 Agreement, the Debtors are obligated to pay property taxes on equipment rented under the 2003 Agreement. *See*, 2003 Agreement at p. 4, ¶10A.

48. Konica filed property tax returns on January 1, 2006 for equipment that was in place as of December 31, 2005. The 2006 property taxes are assessed and considered fully earned and due and payable as of January 1, 2006. Notwithstanding, the assessments on these filings are normally received in the fourth quarter of the year filed and then billed to the Debtors with the fourth quarter lease and service fees.

49. As the assessments on the January 1, 2006 property tax returns had not been received as of the time of the filing of the Proof of Administrative Claim, Konica contacted Nationwide Consulting, the firm used for filing property tax returns and paying the related taxes and asked them to provide a store-by-store estimate for the 2006 taxes. As set out on Schedule C to the Proof of Administrative Claim, Nationwide Consulting estimated $118,266.53 for 2006 property taxes.

50. Since the time of the filing of the Proof of Administrative Claim, Konica has received actual invoices for a vast majority of the locations. These invoice amounts that have been paid

are set forth on the Tax Schedules attached to the Hakula Aff. as Exhibit "B." Konica anticipates receiving the remaining open invoices on or before January 31, 2007.

51. Accordingly, the Debtors owe Konica $19,132.45 for open invoices on 2005 property taxes, as well as $77,592.18 for those locations billed and paid as set forth on Exhibit B to the Hakula Aff. The actual taxes due on the remaining locations will be determined shortly, and Konica reserves the right to amend the Proof of Administrative Claim accordingly.

*__Termination Fee – Schedule D__*

52. Pursuant to the Paragraph 21 of the 2003 Agreement, should the Debtors determine not to continue operating any equipment under the 2003 Agreement, "then Winn-Dixie shall, at its own expense, shall crate, insure and transport the Equipment to Konica or to a location designated by Konica to receive the Equipment that is no further away from the terminating store than Konica's warehouse that receives returned Equipment." 2003 Agreement at p.5, ¶12.

53. Thus, upon the rejection of the 2003 Agreement, the Debtors' were obligated to return each piece of equipment to Konica as required under the 2003 Agreement. Instead of doing so, the Debtors opted to have Konica remove the Equipment. Set forth on Schedule D to the Proof of Administrative Claim is the analysis setting forth the basis for the $2,500 per unit charge. In response to the Debtors' request, Konica removed and received return of 293 pieces of equipment, for a total removal cost of $732,183.

54. Incredibly, the Debtors ignore their contractual obligation to bear the responsibility for and costs of returning equipment and argue that the termination fee is inappropriate as having no contractual basis. The Debtors should not be allowed to avoid their obligations under the 2003 Agreement by merely failing to perform.

12

55. Moreover, the Debtors have historically agreed to pay the $2,500 per equipment termination fee for Konica's removal of each piece of returned equipment, in lieu of satisfying their obligations under the 2003 Agreement. Indeed, when the Debtors closed down their Charlotte Division and sought to return related equipment, they paid the $2,500 deactivation fee at that time without question.

56. Accordingly, as Konica removed close to 300 pieces of equipment upon the Debtors' request, it is entitled to the termination fee as calculated and set forth in the Proof of Administrative Claim.

### CONCLUSION

57. In light of the foregoing, Konica respectfully asserts that the Debtors' objections to the Konica Administrative Claim are not well founded and should be overruled. The Konica Administrative Claim should be determined an Allowed Administrative Claim and paid in accordance with the provisions of the Plan, together with interest thereon. See In re Colotex Industries, Inc., 19 F.3d. 1371 (11th Cir. 1994).

### NOTICE

Notice of this Motion has been provided to: (a) the Office of the United States Trustee, (b) counsel for the Debtors' post-petition secured lenders, (c) counsel for the Creditors' Committee, (d) counsel for the Equity Committee, and (e) the parties listed in the Local Rule 1007-2 Parties in Interest List maintained in these cases. Konica respectfully represents that no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

Konica respectfully represents that there are no novel issues of law presented herein and request that the Court waive the requirement that Konica file a separate memorandum of law pursuant to Local Rule 9013-1(b).

13

WHEREFORE, Konica Minolta Photo Imaging U.S.A., Inc. respectfully requests that this Court enter an Order, substantially in the form submitted herewith, (i) overruling Debtors' objection, (ii) granting Konica an Allowed Administrative Claim in the amount set forth in the Proof of Administrative Claim, (iii) requiring the Debtors to pay the Konica Administrative Claim, plus accrued interest, on the next Distribution Date in accordance with the terms of the Plan, and (iv) granting such other and further relief as is just and appropriate.

Dated: December 4, 2006

FOX ROTHSCHILD LLP

By: _____
    Allison M. Berger, Esquire
    Princeton Pike Corporate Center
    997 Lenox Drive, Bldg.3
    Lawrenceville, NJ 08648
    609.896.3600
    609.896.1469
    aberger@foxrothschild.com

Co-counsel for Konica Minolta
Photo Imaging U.S.A., Inc.

STICHTER REIDEL BLAIN &
PROSSER, PA

By: /s/ Harley E. Riedel
    Harley Riedel, Esquire (Fla. Bar #183628)
    110 E. Madison St., Ste. 200
    Tampa, Florida 33602
    Tel: 813.229.0144
    Fax: 813.229.1811
    hriedel@srbp.com

Co-counsel for Konica Minolta
Photo Imaging U.S.A., Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by the Court's CM/ECF system or U.S. Mail on this 4th day of December, 2006, to:

U.S. Trustee's Office
135 W. Central Blvd., Ste. 620
Orlando, Florida  32801

Matthew Barr
Milbank, Tweed, Hadley & McCloy, LLP
1 Chase Manhattan Plaza
New York, New York 10005

Rosalie Walker Gray
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, New York 10036

Cynthia C. Jackson
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, Florida 32202

Mark A. Kelley, Esquire
Kitchens Kelley Gaynes, P.C.
Eleven Piedmont Center, Suite 900
3495 Piedmont Road, N.E.
Atlanta, Georgia 30305

John B. MacDonald
AKERMAN SENTERFITT
50 North Laura Street, Ste. 2500
Jacksonville, FL  32202

　　　　　　　　　　　　　/s/ Harley E. Riedel
　　　　　　　　　　　　　Harley E. Riedel (Florida Bar No. 183628)