**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | Case No. 3:05-bk-03817-JAF |
| WINN-DIXIE STORES, INC., <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |
| _____/ | |

**OMNIBUS APPLICATION FOR FINAL ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED OF PROFESSIONALS RETAINED BY MEMBERS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN CONNECTION WITH CHAPTER 11 PLAN <u>SUBSTANTIVE CONSOLIDATION COMPROMISE</u>**

The professionals ("<u>Applicants</u>")[1], each of which represented one or more individual members of the official committee of unsecured creditors (the "<u>Creditors' Committee</u>") appointed in the above-captioned cases of Winn-Dixie Stores, Inc. and its affiliated debtors and debtors-in-possession (collectively, "<u>Winn-Dixie</u>" or the "<u>Debtors</u>"), hereby submit this application (the "<u>Application</u>"), for the allowance of compensation for professional services rendered to members of the Creditors' Committee in connection with the resolution of issues relating to substantive consolidation embodied in the

---

[1] The Applicants consist of the following entities as set forth in the Debtors' Disclosure Statement (as defined herein): FTI Consulting, Inc.; DLA Piper Rudnick Gray Cary US LLP; Imperial Capital LLC; Nixon Peabody, LLP; Paul Weiss Rifkind Wharton & Garrison LLP; Capstone Advisory Group LLC ("<u>Capstone</u>"); Curtis, Mallet-Prevost, Colt & Mosle LLP ("<u>Curtis</u>"); Berger Singerman, P.A. and Frank/Gecker LLP.

Plan (as defined herein) (the "Substantive Consolidation Compromise") and reimbursement of related expenses. In support of the Application, the Applicants respectfully represent as follows:

## I. INTRODUCTION

**A. Background**

      1. Bankruptcy Filing. On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

      2. Statutory Committees. On March 1, 2005, the United States Trustee duly appointed the Creditors' Committee, which has been reconstituted over time. The members of the Creditors' Committee at the time of confirmation of the Plan were: (a) Kraft Foods Global Inc. ("Kraft"), (b) Pepsico, Inc. and Subsidiaries ("Pepsi"), (c) Deutsche Bank Trust Company Americas ("DB"), (d) New Plan Excel Realty Trust, Inc. ("New Plan"), (e) Capital Research & Management Company ("CapRe"), (f) Wilmington Trust Company, as indenture trustee ("Wilmington Trust") and (g) Lonestar Partners LP ("Lonestar"). On August 17, 2005, the United States Trustee appointed the Equity Security Holders' Committee (Docket No. 3027), which was disbanded on January 11, 2006 (Docket No. 5098).

       3.   <u>Venue Transfer</u>.  By order dated April 13, 2005, the New York Bankruptcy Court transferred venue of these cases to this Court.  The Debtors' cases are being jointly administered for procedural purposes only.  No trustee or examiner has been appointed in these cases.

**B.   Case Status**

       4.  On June 29, 2006, the Debtors filed the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (as subsequently amended, modified, or supplemented, the "<u>Plan</u>") and a related disclosure statement (the "<u>Disclosure Statement</u>").  On August 4, 2006, the Court conducted a hearing to determine whether the Disclosure Statement contained adequate information as required under Bankruptcy Code section 1125 (the "<u>Disclosure Statement Hearing</u>").  The Court approved the Disclosure Statement and approved certain Plan voting solicitation procedures upon conclusion of the Disclosure Statement Hearing.  Thereafter, the Debtors solicited votes to accept or reject the Plan in accordance with this Court's order.  This Court held a confirmation hearing on October 13, 2006 (the "<u>Confirmation Hearing</u>"), and the Plan was confirmed by Order (the "<u>Confirmation Order</u>") of this Court on November 9, 2006 (Docket No. 12440).  Related findings of fact and conclusions of law (the "<u>Findings</u>") were entered by this Court on November 16,

2006 (Docket No. 12618). The effective date of the Plan occurred on November 21, 2006.

  5. As part of its Findings, this Court found, "based upon the testimony at the confirmation hearing, that the . . . [Applicants] involved made a substantial contribution to [the] Debtors' Chapter 11 case" through their involvement in analyzing and negotiating the substantive consolidation issues and ultimately contributing to the Substantive Consolidation Compromise. Findings, p. 27. Additionally, this Court concluded that allowance of the Applicants' fees under section 12.3 of the Plan is appropriate. *Id.* However, the Confirmation Order and Findings provided that professionals (*i.e.*, the Applicants) seeking fees and expenses pursuant to section 12.3 of the Plan must file a fee application so that the reasonableness of the fees and expenses can be reviewed. *E.g.*, Confirmation Order, p. 17.

**C.  Applicants' Retention in Connection with Resolution of Substantive Consolidation Issues**

  6. As acknowledged in the Disclosure Statement, the Debtors had to initially decide whether or not to consolidate their estates for voting and distribution purposes. Disclosure Statement, p. 48. Without a compromise of this threshold issue, protracted and expensive litigation among divergent creditor groups would ensue, and the cost, delay and uncertainty flowing

4

from this litigation would cause significant harm to the Debtors' rehabilitation efforts and recoveries to creditors. Accordingly, the Debtors believed that the Creditors' Committee was well equipped -- because it consisted of a cross-section of the major creditor constituents in these cases and owed a fiduciary duty to all unsecured creditors -- to attempt to resolve the substantive consolidation issue.

7. In connection with the process undertaken by the Creditors' Committee that ultimately led to the Substantive Consolidation Compromise, each of the respective creditor groups on the Creditors' Committee, after reviewing the analysis prepared by the Creditors' Committee's professionals, realized that there were highly contentious and litigable issues present and, in order to resolve such issues in a manner fair and reasonable for all creditors, needed independent advice to fully appreciate the impact of these issues both on the creditors similarly situated to it and on all other creditor groups. Accordingly, each of the Applicants assisted one or more members of the Creditors' Committee in resolving such issues.[2]

---

[2]  Certain of the Applicants had been retained by one or more members of the Creditors' Committee with respect to the Debtors' cases, while the other Applicants were retained only with respect to the Substantive Consolidation Compromise.

8. After completing its extensive legal, factual and financial analysis, the Creditors' Committee had numerous telephonic and in-person meetings to foster further discussions and initiate negotiations regarding the substantive consolidation issue amongst its members in an effort to consensually resolve the issues in such a manner that they could form the basis for inclusion in the Plan.  Eventually, after the members of the Creditors' Committee and the Applicants engaged in extensive back and forth negotiations over a several month period and requested further analysis from the Creditors' Committee's advisors, the negotiations process came to a close.

9. The Creditors' Committee unanimously agreed at the end of May 2006 upon a proposal that would resolve the substantive consolidation issues in the Chapter 11 Case (as defined in the Plan), subject to further discussions with other creditor constituencies and the Debtors.  The services provided by the Applicants (and the Debtors' agreement to pay the fees and expenses of the Applicants, as requested herein) were an essential part of the Creditors' Committee reaching the Substantive Consolidation Compromise.

10. The Court's Findings state "By all accounts, the parties involved in analyzing and negotiating the substantive consolidation issue and ultimately forging the [S]ubstantive [C]onsolidation [C]ompromise dedicated significant time and

effort to the process." Findings, p. 26. At the Confirmation Hearing, the Debtors' witness, Mr. Huffard, testified that the professional fees sought by the Applicants were "an integral part" of the Substantive Consolidation Compromise" and "[b]y paying these fees and getting to this settlement, [the Debtors' estates] will have saved multiples of this in avoided legal fees from litigation down the road." Id. , pp. 26-27. The Court concluded that the Applicants made a "substantial contribution" to the Debtors' cases. Id., p. 27. Thus, the Court found that the allowance of fees and expenses set forth in Section 12.3 of the Plan is appropriate. Id.

## II. APPLICATION

11. By this Application, the Applicants are seeking full allowance of final (a) compensation for professional services rendered, and (b) reimbursement of expenses incurred by the Applicants in connection with such services in connection with the Substantive Consolidation Compromise, in the following amounts:[3]

    A.    FTI Consulting, Inc. (Financial advisor to Kraft and Pepsi):  $50,000

---

[3] In addition, pursuant to the Court's Findings, Findings, p. 29, Wilmington Trust will be filing an additional application seeking final (a) compensation for professional services rendered, and (b) reimbursement of expenses incurred of Wilmington Trust, Curtis, Berger Singerman, P.A. and Capstone for fees and expenses relating to matters other than the Substantive Consolidation Compromise in the Debtors' cases.

7

B.  DLA Piper US LLP (f/k/a DLA Piper Rudnick Gray Cary US LLP) (Counsel to Kraft and Pepsi):  $50,000

C.  Imperial Capital LLC (Financial advisor to DB and New Plan):  $100,000

D.  Nixon Peabody, LLP (Counsel to DB):  $150,000

E.  Paul Weiss Rifkind Wharton & Garrison LLP (Counsel to CapRe and Lonestar):  $200,000

F.  Curtis (Counsel to Wilmington Trust):  $452,443.95

G.  Capstone (Financial advisor to Wilmington Trust):  $425,000

H.  Berger Singerman, P.A. (Local Counsel to Wilmington Trust):  $3,500

I.  Frank/Gecker LLP (Counsel to Pepsi):  $9,050

12. The Applicants seek final approval of $1,439,993.95[4] in aggregate legal services and reimbursement of expenses incurred in connection with such services. Attached hereto as Exhibit A are invoices previously provided to the Debtors containing detailed itemization of the services performed and time spent in connection with the representation or financial services provided to one or more members of the Creditors' Committee, and summaries of the actual, out-of-pocket

---

[4]  The Applicants are seeking final allowance of $1,439,993.95 (not $1,410,000 as set forth in section 12.3 of the Plan) in fees and expenses because it is equivalent to the sum of each Applicant's actual, necessary and reasonable capped fees and expenses, which were negotiated as part of the Substantive Consolidation Compromise and set forth in the Disclosure Statement. See Disclosure Statement, p. 55.

costs and expenses incurred in connection with such representation or services.[5] The Applicants submit that the services rendered and expenses incurred are clearly reasonable and satisfy all applicable tests with respect to such standard.

13.  The nature of the services performed included: (i) analyzing the factual and legal arguments both for and against substantive consolidation; (ii) examining, from a financial perspective, the different recoveries for different creditor groups in the case of substantive consolidation or non-substantive consolidation under various sets of assumptions; and (iii) negotiating the Substantive Consolidation Compromise.

### III. ALLOWANCE OF COMPENSATION

14.   The factors to be considered in awarding reasonable fees as enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been adopted by most courts.[6]  The Applicants respectfully submit that

---

[5]   In accordance with their customary billing practices, those Applicants that are financial advisors are not submitting detailed time records and summaries of their expenses.  However, to the extent possible, such documentation will be made available upon request.

[6]   Grant v. Florida Power Corp. (In re American Fabricators, Inc.), 197 B.R. 987, 993-94 (Bankr. M.D. Fla. 1996) (adopting the First Colonial factors and noting that Fifth Circuit decisions before 1981 are binding precedent in the Eleventh Circuit).  The factors embraced by the Fifth Circuit in First Colonial were adopted by the Fifth Circuit's decision in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), except that First Colonial also included the "spirit of economy" as a factor which was expressly rejected by Congress in enacting section 330 of the Bankruptcy Code.  Stroock & Stroock & Lavan v.

the consideration of these factors should result in this Court's allowance of the full compensation sought.

- (A) <u>Time and Labor Required</u>.  The professional services rendered by the Applicants on behalf of the members of the Creditors' Committee have required the expenditure of substantial time and effort, in connection with the Substantive Consolidation Compromise.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

- (B) <u>Novelty and Difficulty of Questions</u>.  Novel and complex issues have arisen in the course of the Chapter 11 Case.  The Applicants' effective advocacy and creative approach to problem solving helped clarify and resolve difficult issues relating to the Substantive Consolidation Compromise.

- (C) <u>Skill Requisite to Perform Legal Services Properly</u>.  The Applicants believe that their recognized expertise in the area of financial restructuring and practical approach to the resolution of substantive consolidation issues helped maximize distributions to the Debtors' unsecured creditors.

- (D) <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>.  The Applicants' representation of the members of the Creditors' Committee did not preclude the acceptance of new clients.

- (E) <u>Customary Fee</u>.  The fees sought by the Applicants are commensurate with fees awarded in other cases to the Applicants, and the fees charged by other comparable firms.

---

<u>Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)</u>, 127 F.3d 1398, 1403 (11th Cir. 1997).  The remaining <u>First Colonial</u> factors continue to apply to determine the reasonableness of fees awarded under the Bankruptcy Code.  3 <u>Collier on Bankruptcy</u> ¶ 330.04[3][c] (Lawrence P. King, <u>et</u> <u>al.</u>, eds., 15th ed. 1997).  In addition, a majority of the <u>First Colonial</u> factors are now codified in section 330(a)(3).  <u>Id.</u>

    (F)    <u>Whether Fee is Fixed or Contingent</u>.  The Applicants charged their customary hourly rates for the time expended by their professionals representing the members of the Creditors' Committee, and such fees are not outcome dependent.

    (G)    <u>Time Limitations Imposed by Client or Other Circumstances</u>.  The Applicants were required to attend to various substantive consolidation issues as they arose in the Chapter 11 Case.  Often, the Applicants had to perform these services under significant time constraints.

    (H)    <u>Results Obtained</u>.  Through the Applicants' efforts, the members of the Creditors' Committee were active participants in the negotiations and analysis that led to the Substantive Consolidation Compromise.

    (I)    <u>"Undesirability" of the Case</u>.  These cases are not undesirable but, as already indicated, have required a significant commitment of time from the Applicants.

    (J)    <u>Nature and Length of Professional Relationship</u>.  The Applicants worked a number of months with members of the Creditors' Committee to assist in analyzing and negotiating the Substantive Consolidation Compromise.

    15.  The professional services rendered by the Applicants have required a high degree of professional competence and expertise to address, with skill and dispatch, the substantive consolidation issues requiring evaluation and action by the members of the Creditors' Committee.  The Applicants respectfully submit that the services rendered to the members of the Creditors' Committee were performed efficiently, effectively and economically, and that the results obtained to date benefited not only the members of the Creditors' Committee, but also the unsecured creditors as a whole and the Debtors' estates.

16. Each of the Applicants has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

### IV.  NOTICE

17. Pursuant to the Confirmation Order and Findings, notice of this Application has been given to bankruptcy counsel to the Debtors, the Debtors, the United States Trustee, the Post-Effective Date Committee and all other parties that have requested notice and receipt of the Application.  In light of the nature of the relief requested herein, the Applicants request that such notice be deemed adequate and sufficient.

### V.  CONCLUSION

WHEREFORE, the Applicants respectfully request the Court to enter an order, substantially in the form attached hereto as Exhibit B, (a) allowing the Applicants final compensation for professional services rendered and reimbursement of expenses incurred in connection with such services in the amounts set forth in the attached order (in the aggregate amount of $1,439,993.95); (b) authorizing and directing the Debtors to pay to the Applicants in amounts set forth in the attached order, which is an amount equal to the

unpaid balance of fees and expenses incurred; and (c) granting such further relief as is just and proper.

Dated: December 20, 2006

        **DLA PIPER US LLP**

        By: /s/ Mark J. Friedman
            Mark J. Friedman, Esq.
            Janice L. Duban, Esq.
            The Marbury Building
            6225 Smith Avenue
            Baltimore, Md. 21209-3600

        Counsel to Kraft Foods Global, Inc. and Pepsico, Inc. & Subsidiaries

        **NIXON PEABODY, LLP**

        By: /s/ Dennis J. Drebsky
            Dennis J. Drebsky, Esq.
            437 Madison Avenue
            New York, NY  10022-7001

        Counsel to Deutsche Bank Trust Company Americas

        **PAUL WEISS RIFKIND WHARTON & GARRISON LLP**

        By: /s/ Kelley A. Cornish
            Andrew Rosenberg, Esq.
            Kelley A. Cornish, Esq.
            1285 Avenue of the Americas
            New York, NY 10019-6064

        Counsel to Capital Research & Management Company and Lonestar Partners LP

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**

By: /s/ Steven J. Reisman
    Steven J. Reisman, Esq.
    101 Park Avenue
    New York, New York 10178-0061

Co-counsel to Wilmington Trust Company

**BERGER SINGERMAN, P.A.**

By: /s/ Arthur J. Spector
    Arthur J. Spector, Esq.
    350 East Las Olas Boulevard, Suite 1000
    Fort Lauderdale, Florida 33301

Co-counsel to Wilmington Trust Company

**FRANK/GECKER LLP**

By: /s/ Joseph D. Frank
    Joseph D. Frank, Esq.
    325 N. LaSalle, Suite 625
    Chicago, Illinois 60610

Counsel to Pepsico, Inc. & Subsidiaries

**IMPERIAL CAPITAL LLC**

By: /s/ Timothy P. O'Connor
    Timothy P. O'Connor
    150 South Rodeo Drive
    Suite 100
    Beverly Hills, CA 90212

Financial Advisor to Deutsche Bank Trust Company Americas and New Plan Excel Realty Trust, Inc.

**CAPSTONE ADVISORY GROUP LLC**

By: /s/ Jay Borow
    Jay Borow
    1065 Avenue of the Americas
    Suite 1801
    New York, NY 10018

Financial Advisor to Wilmington Trust Company

**FTI CONSULTING, INC.**

By: /s/ Steven Sims
    Steven Simms
    3 Times Square
    11th Floor
    New York, NY 10036

Financial Advisor to Kraft Global Foods, Inc. and Pepsico, Inc. & Subsidiaries