# STABINSKI &FUNT, P.A.
### ATTORNEYS AT LAW

| Miami-Dade Office | Broward Office | www.stabinski-funt.com |
|---|---|---|
| 757 NW 27th Ave., 3rd Floor | 2860 State Road 84 | |
| Miami, FL 33125 | Building 1, Suite 103 | |
| Tel: 305-643-3100 | Ft. Lauderdale, FL 33312 | |
| Fax: 305-643-1382 | Tel: 954-583-4432 | |

Reply to Miami-Dade Office
or to dgrissom@stabinski-funt.com

July 28, 2006

***Via Registered Mail,
Return Receipt Requested***
Felicia Holland
Sedgewick Claims
P.O. Box 24787
Jacksonville, FL 32241

>   **Our Client:**       ***Ruiz, Tomasa***
>   Date of Accident:   1/29/06
>   Accident Loc.:      Winn Dixie Store, 3700 NW 7 St., Miami, FL
>   Our File No.:       11011.0020

Dear Ms. Holland:

  As you know, the undersigned attorneys represent Ms. Tomasa Ruiz in her claim for personal injuries arising out of a slip and fall accident at the above-referenced Winn Dixie store on January 29, 2006. Ms. Ruiz has completed medical treatment at this time, however, as explained below, Ms. Ruiz may need to consult with additional doctors depending on the severity of her symptoms. Enclosed with this letter are all medical records and bills incurred to date.

  As you may recall, you took an informal statement from Ms. Ruiz over the telephone on March 31, 2006. Therefore, as you know, Ms. Ruiz slipped on a wet floor in the vicinity of a freezer/cooler set up at the end of an aisle. Her right foot slipped out from under her, causing Ms. Ruiz to fall onto her left knee and then her left side. After her fall, the store manager took photographs of the wet floor and then cleaned it up. Ms. Ruiz was with three individuals at the time of her fall. All of these witnesses can verify that Ms. Ruiz slipped and fell, that there was water on the floor around the freezer/cooler, and that Ms. Ruiz's clothing was wet after her fall. Since the water on the floor was dirty, its color mixed in with the store's floor making it difficult for Ms. Ruiz to see and avoid. Furthermore, the proximity of the water to the freezer/cooler makes it clear that this equipment was the source of the water.

  Immediately after the accident, Ms. Ruiz felt severe pain in her left knee and left side of her body. That evening, the pain to her left side intensified. The next morning, Ms. Ruiz went to the Emergency Room at Jackson South Community Hospital. Enclosed please find the records from Jackson South under Tab "A." At the hospital, Ms. Ruiz complained of left knee pain, left rib pain, and lower back pain. The hospital took X-Rays to rule out fractures and prescribed pain medication.


EXHIBIT A

Ms. Ruiz next saw Dr. Mark Hoffman, a chiropractor, on February 23, 2006. Dr. Hoffman's records are enclosed under Tab "B." Upon examination, Dr. Hoffman found tenderness, spasm, stiffness, decreased sensitivity and pain in Ms. Ruiz's lower back and left knee. Dr. Hoffman noted that Ms. Ruiz had a limited range of motion and complained of difficulty sleeping. It was Dr. Hoffman's impression that she suffered injury to her lower lumbar region and knee. X-Rays taken by Dr. Hoffman of the lumbar spine revealed foraminal encroachment at the L5/S1 level. Ms. Ruiz started physical therapy for her knee and back that same day. Copies of the Physical Therapy notes are enclosed under Tab "C."

Ms. Ruiz was next seen by a board-certified neurologist, Dr. Carrie Landess, on March 31, 2006. Dr. Landess found positive trigger points and spasm in her lumbar region. It was Dr. Landess' diagnosis that Ms. Ruiz displayed symptoms of a lumbar disc herniation. Copies of Dr. Landess' records are enclosed under Tab "D."

On April 27, 2006, an MRI of the lumbar spine confirmed Dr. Landess' impression. Two disc herniations at the L4/L5 and L5/S1 levels were noted. Importantly, both of these herniations demonstrated impingement and encroachment. A copy of this MRI report is enclosed under Tab "E."

On June 9, 2006, Dr. Landess discharged Ms. Ruiz with an 8% permanent impairment rating, while on June 14, 2006, Dr. Hoffman discharged Ms. Ruiz with a 12% impairment rating. Both doctors agree that Ms. Ruiz will need future chiropractic care to treat her lumbar herniations and, hopefully, delay further deterioration. Ms. Ruiz completed her physical therapy on June 14, 2006. As noted by Dr. Hoffman in his June 14th, 2006 Final Report, should Ms. Ruiz's painful symptoms continue, she may need to consult with a neurosurgeon regarding surgery to her herniated discs.

Enclosed under Tab "F" are copies of the medical bills incurred. The breakdown of these bills is as follows:

| Provider | Amount |
|---|---|
| Jackson South Community Hospital - | $420.00 |
| Affiliated Healthcare (Incl. Drs. Hoffman & Landess, and PT) - | $6,440.00 |
| Open MRI of Miami-Dade - | $1,850.00 |
| TOTAL | $8,710.00 |

As discussed above, Ms. Ruiz will need future chiropractic care. Dr. Hoffman estimated these costs at $2,500.00 to $3,500.00 a year. Ms. Ruiz is currently 54 years old. According to published Mortality Tables, Ms. Ruiz has a future life expectancy of 27.7 years. Taking the lower figure for chiropractic care, Ms. Ruiz could have future medical expenses of at least $69,250.00.

At this juncture, we are hereby making a demand of $150,000.00 for full and final settlement of this case. Although we are ready to file suit, we will hold off from doing so pending settlement negotiations. I will diary my calendar for thirty (30) days from the date of this letter. If I have not heard back from you by then, we will proceed with further legal action.

In the interim, if you have any questions, please feel free to contact me.

Sincerely,

STABINSKI & FUNT, P.A.

Daniel M. Grissom, Esq.

Enclosures:   As noted