**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In Re:

WINN DIXIE STORES, INC.,　　　　　　　Case No. 3:05-bk-03817-JAF

　　　　Debtor.　　　　　　　　　　　　　　Chapter 11 – Jointly Administered
_____/

## APPLICATION OF ORLENIS HERNANDEZ FOR ALLOWANCE OF ADMINISTRATIVE CLAIM (POST-PETITION PERSONAL INJURY CLAIM)

　　　　COMES NOW the Movant(s), ORLENIS HERNANDEZ ("Movant"), by undersigned counsel, and pursuant to 11 U.S.C. §503 request this Court enter an Order approving this application to have an allowed administrative claim against the Estate, and to authorize payment of the claim, and would show:

　　　　1.　　On February 21, 2005 the Debtors filed Voluntary Petitions under Chapter 11 of the U.S. Bankruptcy Code ("Petition Date").

　　　　2.　　The Court confirmed the Debtors' Plan of Reorganization. The effective date of the Plan is November 21, 2006 ("Effective Date").

　　　　3.　　Between the Petition Date and the Effective Date, Movant was injured at a Winn Dixie store as a result of Winn Dixie's negligence. As a proximate result of the negligence, Movant suffered damages. A summary of the incident and damages is set forth in Exhibit "A" attached hereto.

　　　　4.　　The Movant's injury and damages resulted from the ordinary business operations of the Debtors between the Petition Date and the Effective Date of the Debtor's Plan of Reorganization.

　　　　5.　　The Movant's personal injury claim has not yet been liquidated. The Movant estimates the claim against the Debtor to be at least **$500,000.00**.

　　　　6.　　Pursuant to the Plan of Reorganization confirmed by the Court, a bar date of January 5, 2007 has been set for post-petition claimants to file administrative expense claims.

　　　　7.　　The Court may award an administrative expense priority under § 503(b) of the Bankruptcy Code for the "actual, necessary costs and expenses of preserving the estate ···." 11 U.S.C. § 503(b)(1). Damages for injuries arising from a post-petition tort committed by a debtor

are entitled to administrative expense status.[1]

8.     Pursuant to 11 U.S.C. § 503(b)(1), the Movant respectfully requests the Court enter an Order allowing the post-petition claim as an administrative expense claim. Upon liquidation of the Movant's post-petition claims (either through settlement by the parties or a judgment entered by a court of competent jurisdiction), the Movant requests the Court enter an Order requiring the Debtor to pay the allowed administrative claim in full.

9.     The Movant requests that all future pleadings and notices regarding or related to this Movant's Application or claim be served upon:

> Orlenis Hernandez
> c/o Carlos O. Gomez, Esq.
> Carlos O. Gomez, P.A.
> 102 E. 49th Street
> Hialeah, FL  33013

WHEREFORE, the Movant respectfully requests the Court enter an Order granting the relief requested, approving the Application, and for such further relief as the Court finds just.

> /s/DENNIS J. LEVINE, ESQ.
> DENNIS J. LEVINE, ESQ.
> Fla. Bar No. 375993
> DENNIS LeVINE & ASSOCIATES, P.A.
> P.O. Box 707
> Tampa, FL 33601-0707
> (813) 253-0777
> (813) 253-0975 (fax)
> Attorneys for Orlenis Hernandez
> c/o Carlos O. Gomez, Esq.

---

[1] *See, e.g., Reading Co. v. Brown,* 391 U.S. 471, 485, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) (holding that damages resulting from fire caused by receiver's negligence were administrative expenses); *In re Piper Aircraft Corp.,* 169 B.R. 766 (Bkrtcy. S.D. Fla. 1994).. As formulated by the Seventh Circuit, a claim will be afforded administrative priority if (1) the debt arises from a transaction with the debtor-in-possession; and (2) that transaction benefitted the debtor-in-possession in the operation of its post-petition business. *Matter of Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984); *Seidle v. United States (In re Airlift ),* 97 B.R. 664, 668 (Bankr. S.D. Fla.1989).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Application for Allowance of Administrative Expense was furnished by electronic or standard mail to the parties listed below on this __5th__ day of January, 2007.

/s/DENNIS J. LEVINE, ESQ.

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254-3699

James H. Post, Esq.
Smith Hulsey & Busey
225 Water St., Suite 1800
Jacksonville, FL 32202

Matthew Barr, Esq.
Milbank, Tweed, et al
1 Chase Manhattan Plaza
New York, NY 10005

# LAW OFFICES OF
# CARLOS O. GOMEZ, P.A.
### Law Building
### 102 EAST 49TH STREET
### HIALEAH, FLORIDA 33013

CARLOS OMAR GOMEZ

TELEPHONE (305) 698.3421
TELEFAX (305) 826.1119

January 3, 2006

VIA FACSIMILE – 1.813.253.0975

Dennis Levine & Associates, P.A.
Dennis J. Levine, Esquire
Attn: Ms. Darlene Bell
P.O. Box 707
Tampa, Florida 33601-0707

| | | |
|---|---|---|
| RE: | Our Client: | Orlenis Hernandez |
| | Insured: | Winn-Dixie #0270 |
| | Store Address: | 2750 West 68th Street, Hialeah, Florida |
| | ID No.: | A611203293-0001-01 |
| | D/A: | 03-31-06 |

Dear Ms. Bell:

Please be advised that this firm represents Mr. Orlenis Hernandez for severe bodily injuries suffered as a result of the aforementioned incident at Winn-Dixie.

We hereby retain the firm of Dennis Levine and Associates, P.A., to file an "Application for Allowance and Payment........" on behalf of Mr. Orlenis Hernandez.

A summary of Mr. Hernandez's claim for personal injuries follows in the form of our demand submitted to Gloria Davis in October 2006. If you need any additional information, please feel free to contact me at your convenience. Once again, thank you for your help in this matter.

Very truly yours,
LAW OFFICES OF CARLOS O. GOMEZ, P.A.

CARLOS OMAR GOMEZ

COG/cns
Enclosure

## LIABILITY

**DUTY OF OWNER**

Under Florida law, the landlord/possessor of land has two legal duties to protect invitees from the harmful effect of dangerous conditions on the premises.

1. First, the possessor has the legal duty to ascertain that the premises are reasonably safe for the invitees. This duty equates into a legal duty to use reasonable care to learn of (i.e., to acquire actual knowledge as to) the existence of any dangerous conditions on the premises.

2. Secondly, the premises possessor has a second, entirely different, legal duty to use reasonable care to protect invitees from dangerous conditions, which possess or has actual knowledge.

Your insured failed to use reasonable care and protect its invitees from this dangerous condition of which it had actual knowledge.

**Actual knowledge can be expressed or implied.** Under Florida law, when there is evidence of the length of time a hazard was in existence, and then actual knowledge will be found. In this case, your insured failed in all its duties to its invitees and as a result, it is liable for all damages suffered by my client.

On April 16, 2006, our client, Orlenis Hernandez was attempting to get a frozen pizza dinner from the frozen food aisle, when he slipped on a slippery/clear/wet substance on the floor. As a result, Mr. Hernandez lost control of his body and violently collided with the concrete floor. Mr. Hernandez severely injured his hand, arms, neck, head and other parts of his body. This accident occurred at 2750 West 68th Street, in Hialeah, Florida.

It should be apparent to anyone investigating this claim that *Winn-Dixie* is absolutely and completely liable for Mr. Orlenis Hernandez's accident and resulting injuries. It is very clear that an objective investigation of this incident would reveal that *Winn-Dixie* was extremely negligent in the following ways:

1. Failure to ascertain hazards on its property;

2. Failure to warn against slippery / dangerous surface;

3. Failure to properly clean slippery/dangerous surface;

4. Failure to provide adequate safety mechanisms / equipment;

5. Failure to provide proper safety mats/matting;

6. Failure to warn participants of the potentially hazardous condition/slippery flooring/substances;

7. Failure to provide safe environment and safeguards for reasonably foreseeable accidents;

8. Failure to access the foreseeability of such incidents (reasonably foreseeable that participants might injure self on slippery/wet floor);

9. Failure to properly maintain common area with proper protective equipment / safeguards;

10. Failure to use proper flooring/matting (Low coefficient of friction / flooring/ old worn tile/floor)

11. Failure to use proper cleaning products resulting in slippery residue on floor.

12. Failure to properly maintain cooling/refrigeration system for frozen foods.

**DAMAGES**

Mr. Orlenis Hernandez was immediately transported to Palmetto General Hospital due to the severity of the injuries to his left arm and wrist. Upon arrival, Mr. Hernandez was admitted to the Emergency Room, where several tests and scans were performed.

Dr. Jose Becerra, M.D.:

Dr. Becerra's radiological examination and evaluation report of the left wrist indicates my client sustained <u>intra-articular fracture of the left radius with dorsal displacement of the distal fracture fragment.</u>

Mr. Hernandez was discharged from Palmetto General Hospital the following day and advised to follow-up immediately with an Orthopedic.

Dr. Robert Moya, M.D.:

Dr. Moya's initial orthopedic examination and evaluation report suggested my client follow strict instructions to keep left upper extremity elevated and use ice-packs. At that time Dr. Moya discussed a possible **need for surgery to apply an external fixation device** under general anesthesia so the fracture could displace once again inside the splint.

Dr. Moya expressed the need for our client to follow-up and come to a decision within the following 48-72 hours.

Attached is the report from Dr. Moya's examination and evaluation.

After meeting with Dr. Moya, Mr. Hernandez sought a second opinion with another Orthopedic Specialist.

Manuel V. Feijoo, M.D.:

At Dr. Feijoo's orthopedic examination and evaluation. He strongly recommended that our client, Mr. Hernandez seek **close reduction and internal fixation.**

Attached is the report from Dr. Feijoo's examination and evaluation.

## SURGERY

### ENDOSCOPIC CARPAL TUNNEL RELEASE

On August 1, 2006, Mr. Orlenis Hernandez was given medical clearance by Dr. Jay Dennis, M.D. for surgery of the left wrist. The exact surgical procedure to be performed was **left carpal tunnel release.**

Attached please find the release for surgery records from Dr. Dennis, M.D.

On August 29, 2006, our client, Mr. Hernandez was admitted for surgery. Dr. Jay Dennis, M.D, performed the surgical procedure, which was an **ostectomy-left distal radius fracture and endoscopic carpal tunnel release**.

Attached please find the full operative report from Aventura Hospital & Medical Center.

### LOSS OF EARNINGS CAPACITY

Please be advised that our client has been unable to maintain a steady work schedule because of the pain that she is experiencing. As a result of this injury she has

been unable to work at the same pace as before. This caused his monthly income to be reduced significantly. These lost wages are part of our client's economic injury.

### LOSS OF CONSORTIUM

Our client's lifestyle has been drastically altered as a result of this accident and her injuries. As part of our demand we are including pain and suffering, depression, inconvenience, anxiety, pain, discomfort, loss of companionship and enjoyment of life's experiences.

### PERMANENT SCARRING

As a result of her surgery, Mr. Hernandez has several severe scars and deformity of his left hand/wrist/arm due to the incision and resulting stitches. Please see photographs enclosed.

### FLORIDA JURY VERDICTS

A cursory review of Florida Jury Verdicts shows awards for similar injuries as Ms. Gibson's range between $300,000.00 to in excess of $1,000,000.00 USD.

### SETTLEMENT PROPOSAL

It is our firm belief that a jury would find your insured was negligent in causing this accident and that the damages in this case are very substantial. You have indicated that there is $ 2,000,000.00 of insurance coverage available with regards to this case. We are confident that our client's damages far exceed your insured's minimum liability coverage available for this accident. With this mind, we would recommend that our client accept a settlement of $ 750,000.00 to settle his claim against your insured, provided this matter can be resolved promptly without the further expense and delay of litigation.

$500,000 C.J.