**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In Re:

WINN DIXIE STORES, INC.,                Case No. 3:05-bk-03817-JAF

       Debtor.                         Chapter 11 – Jointly Administered

_____/

## APPLICATION OF STEPHEN CULLITY FOR ALLOWANCE OF ADMINISTRATIVE CLAIM (POST-PETITION PERSONAL INJURY CLAIM)

      COMES NOW the Movant(s), STEPHEN CULLITY ("Movant"), by undersigned counsel, and pursuant to 11 U.S.C. §503 request this Court enter an Order approving this application to have an allowed administrative claim against the Estate, and to authorize payment of the claim, and would show:

      1.      On February 21, 2005 the Debtors filed Voluntary Petitions under Chapter 11 of the U.S. Bankruptcy Code ("Petition Date").

      2.      The Court confirmed the Debtors' Plan of Reorganization. The effective date of the Plan is November 21, 2006 ("Effective Date").

      3.      Between the Petition Date and the Effective Date, Movant was injured at a Winn Dixie store as a result of Winn Dixie's negligence. As a proximate result of the negligence, Movant suffered damages. A summary of the incident and damages is set forth in Exhibit "A" attached hereto.

      4.      The Movant's injury and damages resulted from the ordinary business operations of the Debtors between the Petition Date and the Effective Date of the Debtor's Plan of Reorganization.

      5.      The Movant's personal injury claim has not yet been liquidated. .

      6.      Pursuant to the Plan of Reorganization confirmed by the Court, a bar date of January 5, 2007 has been set for post-petition claimants to file administrative expense claims.

      7.      The Court may award an administrative expense priority under § 503(b) of the Bankruptcy Code for the "actual, necessary costs and expenses of preserving the estate ...." 11 U.S.C. § 503(b)(1). Damages for injuries arising from a post-petition tort committed by a debtor

are entitled to administrative expense status.[1]

8.      Pursuant to 11 U.S.C. § 503(b)(1), the Movant respectfully requests the Court enter an Order allowing the post-petition claim as an administrative expense claim. Upon liquidation of the Movant's post-petition claims (either through settlement by the parties or a judgment entered by a court of competent jurisdiction), the Movant requests the Court enter an Order requiring the Debtor to pay the allowed administrative claim in full.

9.      The Movant requests that all future pleadings and notices regarding or related to this Movant's Application or claim be served upon:

>Stephen Cullity
>1964 Acorn Run West
>Orange Park, FL 32073

WHEREFORE, the Movant respectfully requests the Court enter an Order granting the relief requested, approving the Application, and for such further relief as the Court finds just.

>/s/DENNIS J. LEVINE, ESQ.
>DENNIS J. LEVINE, ESQ.
>Fla. Bar No. 375993
>DENNIS LeVINE & ASSOCIATES, P.A.
>P.O. Box 707
>Tampa, FL 33601-0707
>(813) 253-0777
>(813) 253-0975 (fax)
>Attorneys for Stephen Cullity

---

[1] *See, e.g., Reading Co. v. Brown,* 391 U.S. 471, 485, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) (holding that damages resulting from fire caused by receiver's negligence were administrative expenses); *In re Piper Aircraft Corp.,* 169 B.R. 766 (Bkrtcy. S.D. Fla. 1994).. As formulated by the Seventh Circuit, a claim will be afforded administrative priority if (1) the debt arises from a transaction with the debtor-in-possession; and (2) that transaction benefitted the debtor-in-possession in the operation of its post-petition business. *Matter of Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984); *Seidle v. United States (In re Airlift),* 97 B.R. 664, 668 (Bankr. S.D. Fla.1989).

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Application for Allowance of Administrative Expense was furnished by electronic or standard mail to the parties listed below on this __5th__ day of January, 2007.

/s/DENNIS J. LEVINE, ESQ.

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254-3699

James H. Post, Esq.
Smith Hulsey & Busey
225 Water St., Suite 1800
Jacksonville, FL 32202

Matthew Barr, Esq.
Milbank, Tweed, et al
1 Chase Manhattan Plaza
New York, NY 10005

March 23, 2006

Dear Ms. Lewis:

The Winn-Dixie pharmacy assistant, Donna, called me this morning to apologize and say how embarrassed she was for what happened to Steve at the store back in February (I have not been to the store, nor seen or heard from her since prior to the incident). She said she has been on vacation for the past week and a half and, in addition, thought she should wait an "appropriate amount of time" to contact us regarding the incident.

She told me that she was busy doing something in the back of the pharmacy at the time of the altercation between Steve and the pharmacist, said nothing at the time, but heard the entire exchange. She was aware that there were other store patrons in the area that heard it as well. She said she felt the pharmacist was way out of line with his comments to Steve and felt bad for what he had said to Steve. She recalled being quite surprised that Steve came back into the store shortly after the altercation and politely spoke to the pharmacist and told him that he hoped there would be no harsh feelings between them in the future.

Donna said that she was aware that at some point during the following week (which would be the week after Steve and I both made complaints to the store manager and the Winn Dixie corporate offices and prior to Steve's arrest) that the pharmacist had been given a two week notice to leave the employ of Winn-Dixie with "other stipulations attached", but the pharmacist said "I don't need this" and quit on the spot.

She said that the store manager has since been replaced and there is a new pharmacist working at the store. **More importantly, she told me that the incident with Steve was not the first she has witnessed between that particular pharmacist and other customers in the past.**

I told her that Steve is now, unfortunately, involved in legal proceedings due to the pharmacist's having filed charges against him for the incident. Donna was aware that the pharmacist had Steve arrested and spoke to the store manager (the one in charge at that time of the incident) and said that she thought Steve should be able to have the pharmacist arrested on the same charges as he leveled against Steve, but the manager was clueless as to what to say.

It is my sincere recommendation that you depose this woman as soon as possible for Steve's defense, as well as his friend who was in his company at the time of the incident, since a Clay County Sheriff's Deputy took the statement of a supposed customer / witness for the prosecution's side.

Thank you.


Janeen Betau
1964 Acorn Run West
Orange Park, FL 32073
904-375-9775

**Personal Statement of Janeen Betau on behalf of, and as related to her, by Stephen Cullity (hereinafter referred to as "Steve") of events causing and leading up to this court hearing of February 28, 2006 (exact dates in February unsure of):**

Steve went to the Winn Dixie pharmacy in the store on Blanding Boulevard in Orange Park on a Friday evening at around 5:30 p.m. to get a refill of a prescription on file that he has had filled there before. The pharmacist gave him a "hard time", saying that it had not been 30 days since his last refill. Steve suggested that it didn't matter about the 30 day time frame since he was paying cash and that there was no insurance payment approval involved -- he could get the refill whenever he needed. Steve then asked if the pharmacist would transfer his remaining refills on the prescription to Walgreen's, but he refused. Then, the pharmacist said "I've had two failed marriages, cancer, and my father died when I was 23 and I never had to run to my doctor for drugs." Steve was embarrassed and stunned and walked away. Several minutes later, he returned to the store and advised the pharmacist that he would no longer bother him and told him to disregard the two remaining refills left on the prescription and said he would just have his doctor call in a new prescription to Walgreen's. He also said "if we ever meet again in public, just please be nice." That is when the pharmacist said, "oh, you want to take this out to the parking lot?" He started walking toward the pharmacy door, then said to Steve, "I get off work at 8:00 p.m. - meet me outside the store at 8:00 p.m. when the pharmacy department closes for the night". Steve said "no, I'm never returning here again", and walked away. He left with the intention of calling the corporate office the next business day to report what had occurred that evening. Steve said there was at least one other person in line behind him that heard this conversation.

Steve called me later that evening to tell me about what had happened at the store and also to say that the pharmacist had telephoned the police after he (Steve) left the store and sent them to Steve's home with regard to this incident. He, apparently, made it out to the police that it was Steve that started the verbal altercation. (It's my personal feeling that the pharmacist "chickened out" of his threat to meet with Steve after the pharmacy closed and was trying to avoid the meeting he suggested -- I have my personal suspicions as to why he did.)

Steve said the police questioned him about what happened at the store and then warned him not to have contact with the pharmacist or to ever return to the store for any reason (general shopping, pharmacy, etc,).

**Actual events I (Janeen) participated in and/or was a party to on Steve's behalf in the days/weeks thereafter:**

After Steve called and told me about what had occurred at the store, and then later on at his home with the police, I told him I was going to call the store to speak to the Manager which I attempted to do that evening. I was told by a customer service person (a young man) at the front desk that she would not be in until Monday morning to open the store. (Her name is Vivian – I did not get her last name). I called her very early on Monday morning and told her about the incident that had transpired at her store over the weekend. She said she had no knowledge about any of it, but would investigate it immediately.

The next day, a gentleman claiming to be the Vice President of the Pharmacy division of Winn Dixie called me to say he was going to conduct a full investigation of the incident and "get back to me" within a couple of days to report his findings. (He NEVER did!)

Neither of us heard anything back from anyone at Winn Dixie in the days afterward, but exactly a week later to the day when the police showed up at Steve's home, I received a telephone call from a Sheriff's deputy saying that Steve had been arrested. He would not tell me where they were, why Steve had been arrested, or on what charges. All the deputy said was, "he (Steve) wanted me to ask you to go over to his house and feed his cats…and if he wants you to know why he has been arrested, he can call you from the jail when he gets there."

I didn't hear from Steve that evening. The next morning, a bail bondsman in Green Cove Springs, called to tell me how much Steve's bail would be and asked if I would come down to post the bail. I asked where and when I should come to pay it and get him (Steve) "out" of jail. I then asked him, "do you know why Steve was arrested?" The bail bondsman said "verbal assault". I HAVE NEVER HEARD OF ANYONE BEING ARRESTED FOR **VERBAL** ASSAULT!!!! When I first heard he was arrested for assault, I thought "my God, who did he hit? But when the bail bondsman said VERBAL assault and I said "who has ever been arrested for VERBAL assault?" What is going on here?!

The pharmacist evidently has been consulting with someone (an attorney, I suspect) and investigating Steve's past indiscretions in order to bring up

some trumpeted up charges that he (Steve) "MIGHT" be a physical threat to this guy. Let's remember, the pharmacist initiated this confrontation.

I am seriously supposing that he has had more than a "little" CONFIDENTIAL information passed his way by the pharmacy assistant, Linda, that may have inspired him to call the police and have Steve arrested. She has always passed herself off as being just a little too "friendly" with us during the past 4-1/2 years we have been shopping at that particular Winn Dixie store -- her sister worked with Steve at Blue Cross so she had more than a little "inside information" on him which should have remained CONFIDENTIAL. It's my feeling that it was Linda who "inspired" the pharmacist to call the police.

After I learned about Steve's arrest, I thought that perhaps the pharmacist had been fired from his job for the incident and called the police to arrest Steve in retaliation, but come to find out, he was still working at the store. I called and spoke to an assistant manager who told me that the pharmacist had given his two week notice. Steve received a telephone call from someone claiming to be from the Corporate offices of Winn Dixie saying the man had been discharged. A friend of ours went into the store two weeks later and found that this person was still working there.

Statement composed by Janeen Betau
1970 Acorn Run West
Orange Park, FL 32073
904-375-9775