**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 3:05-bk-03817-JAF |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | |

**RESPONSE OF ZUPPARDO REAL ESTATE CO., INC. TO DEBTORS' TWENTY-EIGHTH OMNIBUS OBJECTION TO (A) DUPLICATE DIFFERENT DEBTOR CLAIMS AND (B) DUPLICATE LIABILITY CLAIMS**

Zuppardo Real Estate Co., Inc. ("Zuppardo") files this response to Debtors' Twenty-Eighth Omnibus Objection to (A) Satisfied Claims, (B) No Liability Claims, (C) No Liability Misclassified Claims, (D) Amended and Superseded Claims, and (E) Overstated Claims (the "Objection") (Docket No. 13325) as follows:

1. On February 21, 2005 (the "Petition Date"), Winn-Dixie Stores, Inc. and its affiliates (collectively, "Debtors") filed voluntary petitions for protection under Chapter 11 of the United States Bankruptcy Code.

2. Prior to the commencement of Debtors' Chapter 11 cases, Zuppardo and Winn-Dixie Louisiana, Inc. entered into a Lease dated June 30, 1976, wherein Zuppardo leased to Winn-Dixie Louisiana Store No. 1403 located at 1841 Almonaster Avenue in New Orleans, Louisiana. The Lease was amended on multiple occasions to extend the term of the tenancy and to document the expansion of the leased premises. A copy of the most recent amendment dated August 29, 1994 (the "Third Amendment") is attached as **Exhibit A**.

3. On August 28 and 29, 2005, the leased premises were severely damaged by Hurricane Katrina. Since that time, Debtor has not operated at the location.

4. On November 13, 2006, Zuppardo filed its proof of claim (Claim No. 13634) setting forth rejection damages as well as damages sustained to the leased premises.

5. Debtor has objected to Zuppardo's claim to the extent it seeks $196,000 in damages to the leased premises.

6. According to Article 4 of the Third Amendment of Lease, Debtor obligated itself to maintain the building and other improvements on the demised premises in good and rentable condition and to repair the demised premise throughout the term of the Lease and any extensions thereof.

7. Since at lease 1998 and continuing through the current date, Debtor has taken upon itself to secure and pay for a policy of insurance covering Store No. 1403 for "All Risks" of direct physical loss or damage, including flood and earthquake, at replacement costs, in which Zuppardo is listed as a "Loss Payee," policy number 000251317-00 (See Certificates of Property Insurance, dated April 3, 1998 and May 1, 2006, attached hereto as **Exhibits B and C**). It is unclear, however, whether Debtor allowed such insurance coverage to lapse as Debtor has failed to provide proof of insurance coverage to Zuppardo or to pay for the repair of the damaged store.

8. In any event, Debtor is obligated to pay for the needed repairs to Store No. 1403, whether such repairs are covered by insurance or not. Debtors' objection is not therefore justified.

9. The estimated cost of repairing the hurricane damage to Store No. 1403 is $1,176,056.00 as evidence by the attached estimate of Shamrock Construction Co., Inc. dated January 9, 2007 (**Exhibit D**).[1]

**WHEREFORE,** Zuppardo requests the entry of an order (i) overruling the Debtors' Objection to proof of claim, (ii) allowing the claim in full, and (iii) granting such other and further relief as is appropriate.

**STUTSMAN THAMES & MARKEY, P.A.**

By */s/ Bradley R. Markey*
Bradley R. Markey

Florida Bar Number 0984213
50 North Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 (Facsimile)
BRM@stmlaw.net

Attorneys for Zuppardo Real Estate Co., Inc.

---

[1] Zuppardo reserves the right to amend its claim to include the revised estimate of repair costs to Store No. 1403.

## Certificate of Service

I hereby certify on January *12*, 2007, the foregoing notice was transmitted to the Clerk of the Court for uploading to the Case Management/Electronic Case Filing System, which will send a notice of electronic filing to:

Stephen D. Busey, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
busey@smithhulsey.com

John B. Macdonald, Esq.
Akerman, Senterfitt & Eidson, P.A.
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
(904) 798-3700
(904) 798-3730 (facsimile)
john.macdonald@akerman.com

Elana L. Escamilla, Esq.
Assistant United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801
(407) 648-6465
(407) 648-6323 (facsimile)
elana.l.escamilla@usdoj.gov

Cynthia C. Jackson, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

D.J. Baker, Esq.
Skadden, Arps, Slat, Meagher, & Flom, LLP
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
dbaker@skadden.com

Adam Ravin, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
aravin@skadden.com

Dennis F. Dunne, Esq.
Milbank, Tweed, Hadley & McCloy, LLP
1 Chase Plaza
New York, New York 10005
(212) 530-5000
(212) 530-5219 (facsimile)
ddunne@milbank.com

/s/ *Bradley R. Markey*
_____
Attorney

62178

3

## THIRD AMENDMENT OF LEASE

THIS THIRD AMENDMENT OF LEASE, made this 25th day of August, 1994, between ZUPPARDO REAL ESTATE CO., INC., a Louisiana corporation, hereinafter called "Landlord", and WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified to do business in the State of Louisiana (hereinafter called "Tenant"), which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires, singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties,

### WITNESSETH:

WHEREAS, by Lease dated June 30, 1976, as amended, a short form thereof appearing of record in COB 738-H, Folio 257-260, in the records of the Recorder of Conveyances for the Parish of Orleans, Louisiana, Landlord, did lease and demise unto Tenant those certain premises, therein particularly described, said premises and property situated at the southeasterly corner of the intersection of Almonaster Street and North Prieur Street in the City of New Orleans, Parish of Orleans, State of Louisiana, for a term commencing on June 30, 1976 and expiring on May 26, 1991, on the conditions and for the rentals therein set forth, and

WHEREAS, at Tenant's request Landlord has agreed to enlarge Tenant's present store building located on the demised premises by constructing an addition to the southerly side thereof, and to further modify said lease as hereinbelow set forth,

NOW THEREFORE, in consideration of the premises and the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable considerations paid by Tenant to Landlord, the receipt and sufficiency whereof are hereby acknowledged, the parties mutually agree that said lease dated June 30, 1976, as amended, shall be and the same is hereby further amended as follows, which amendment shall supersede all provisions of said lease, dated June 30, 1976, as heretofore amended, in conflict herewith:

1. Landlord, shall diligently proceed to construct an addition to the said existing store building on the southerly side thereof, such addition to measure approximately one hundred (100') feet in width (frontage) by one hundred thirty-four (134') feet in depth, with the result that Tenant's building shall be enlarged by the incorporation of approximately thirteen thousand four hundred (13,400) square feet of additional floor area. Said additional store area shall be constructed in conformity with plans and specifications prepared by Landlord to be approved by the parties hereto and shall be performed in a good and workmanlike manner.

Landlord has acquired or will acquire additional real property located adjacent and contiguous to the southerly side of the demised premises, and as a part of the construction work to be performed hereunder Landlord will remove the existing dwellings on said property and will grade and surface the area to provide additional parking area for the Tenant.



**EXHIBIT A**

Landlord agrees that the construction of the building addition and related improvements shall be begun on or prior to September 1, 1994 and shall be completed and tendered to Tenant ready for occupancy not later than April 1, 1995, provided however, that if Landlord shall fail to compete said improvements within the stipulated time due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes, or inclement weather, or other similar happenings which are beyond the control of Landlord, the completion date shall be extended to July 1, 1995, and failing completion within such extended period Tenant may at its option take over the work and effect the completion thereof and all sums expended therein by Tenant shall be repaid to it by Landlord upon demand or, failing such payment, may be deducted from future rentals due and payable hereunder.

2. Upon the date of completion of the building addition and incorporation of the said additional space into Tenant's store building, and the acceptance and occupancy thereof by Tenant, the following further modifications of said lease shall become effective:

(a) All such additional space and improvements herein contemplated shall be and become a part of the demised premises, it being hereby acknowledged that Tenant's enlarged store building shall then contain approximately thirty-nine thousand seven hundred twenty-four (39,724) square feet.

(b) The initial term of said lease shall be extended so as to expire fifteen (15) years from such date of completion, during which extended period the same covenants and conditions as provided in said lease, shall remain in full force and effect except as herein modified. Such extension shall be in addition to and not in lieu of the five (5) extension options remaining available to Tenant under the provisions of said lease, which renewal options are not hereby exercised, it being further agreed, however, that during said option extension periods rentals due hereunder shall be the increased rentals specified in sub-paragraph (c) below.

(c) The annual minimum guaranteed rental under said lease shall be increased to the total sum of Three Hundred Sixty-Three Thousand One Hundred Fifty and 00/100 Dollars ($363,150.00), due and payable in advance in twelve (12) equal monthly installments of Thirty-Thousand Two Hundred Sixty-Two and 50/100 Dollars ($30,262.50) on the first day of each and every calendar month of the lease term and any extensions thereof, and in lieu of the percentage rental provision contained in Article 1 appearing on Page 2 of said lease dated June 30, 1976, Tenant agrees to pay to Landlord a percentage rental equal to the amount, if any, by which one percent (1%) of Tenant's gross sales made from the said enlarged demised premises in each fiscal year of Tenant ending approximately June 30 during the term of said lease and any extensions thereof exceeds Three Hundred Sixty-Three Thousand One Hundred Fifty and 00/100 Dollars ($363,150.00). Rent shall be calculated and paid under the applicable rates of the present lease until rent begins to accrue under the substituted provision herein, and the rents for the calendar month during which the change of rates occurs shall be prorated between the applicable rates under the present lease and the rates under the said substituted provision. After completion and acceptance of the construction herein required the parties hereto agree to execute a further amendment to said lease which will establish the commencement and termination dates of the extended lease term provided for therein.

(d) In that the Landlord shall have acquired additional land for parking facilities as outlined above which are intended to be a part of the demised premises, the parties will further amend the lease to include a revised legal description of the demised premises.

(e) Article 4 ("TENANT'S REPAIRS") and Article 5 ("LANDLORD'S REPAIRS"), appearing on pages 3 and 4 of said lease, are hereby deleted. In lieu thereof the following provisions are substituted:

"REPAIRS 4. Upon completion of construction of the improvements as described above upon the demised premises in accordance with the plans and specifications, Tenant agrees, at its sole cost and expense, to maintain the building and appurtenances and other improvements on the demised premises and the sidewalks, parking and service areas, in good and tenantable condition and repair throughout the term of this lease, and any extensions thereof; and to make all repairs to the improvements, structural and otherwise, both interior and exterior, necessary to preserve the same in good order and condition, and to repair, at or before the end of the term of this lease, or any extensions thereof, all injury done by the installation or removal of furniture, fixtures and property."

(f) The following provisions are added to said lease as a new Article 5:

"TAXES AND INSURANCE 5. During the term of this lease, and any extensions thereof, Tenant agrees to pay and reimburse to Landlord as additional rental the amount of the annual ad valorem real estate taxes levied against the demised premises, and also the annual premium cost of public liability and fire and extended coverage insurance with an earthquake endorsement on the building on the demised premises. The amount of taxes attributable to the demised premises and for which Tenant is to reimburse Landlord shall be less the maximum amount of any abatements, discounts or refunds permitted by law thereon; provided, however, any additional rental payable hereunder by the Tenant may be credited on a non-cumulative basis against any and all percentage rental, if any, which may become due hereunder, it being intended that such credit shall be made annually in respect of the tax payments for the previous tax year at the time percentage rentals are payable, but if there shall not be any percentage rentals due or the amount thereof shall be insufficient to allow the full credit, Tenant shall receive no credit, or only a partial credit, as the case may be; and the credit for fractional years and fractional months occurring at the beginning of the period in which Tenant is responsible for such tax payments, or at the end of the lease term or any extensions thereof, shall be prorated on the basis of the annual credit. Tenant shall be responsible only for its prorata share of such taxes for fractional years occurring at the beginning and expiration of the term of this lease, and any extensions thereof.

Notwithstanding the foregoing, Landlord, at Landlord's option may submit the unpaid bill for ad valorem real estate taxes to the Tenant (for the maximum discounted amount), and upon receipt of such statement, Tenant agrees to pay the bill within thirty (30) days after receipt thereof and provide, upon Landlord's request, written evidence of such payment to Landlord.

Upon request of Tenant, Landlord agrees to exhibit to Tenant the paid tax statements and insurance premium statements as evidence of the taxes and insurance premiums chargeable to Tenant, and such additional rental shall be payable by Tenant within thirty (30) days after tender by Landlord to Tenant of such paid tax and insurance statements. Any payments made by Tenant to Landlord under the provisions of this Article shall be prorated for fractional years occurring at the beginning and expiration of the term of this lease, or any extensions thereof. Tenant shall have the right from time to time to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of the Landlord as the Tenant may deem necessary; provided, however, any expense incurred by reason thereof shall be borne by the Tenant and such proceedings conducted free of all expense to Landlord. Any special assessments, improvement liens and the like (other than ad valorem real estate taxes) which are assessed during the term of this lease, or any exercised option extensions hereof, but which are payable in whole or in installments after the expiration or termination of this lease, shall be adjusted and prorated and Landlord shall pay the prorated share thereof for the period subsequent to such expiration or termination, and Tenant shall pay the prorated share thereof

3

prior to such expiration or termination, it being intended that Tenant shall be obligated to reimburse Landlord only for such installments as may become due during the term of this lease, or any exercised option extensions thereunder.

Before any billing for such insurance contribution shall be due, Landlord shall furnish to Tenant the policy Declarations pages, or such additional information as necessary, indicating the schedule of insured property, schedule of coverages, basis of the premium, and premium of the insured property, together with the calculation of the insurance premium prorated to Tenant. Tenant's reimbursement for insurance coverages whether under Article 8 or otherwise, shall not include loss of rents, liability within the demised premises or other coverages not within those required hereunder.

Notwithstanding the above, it is agreed that Tenant's obligation to make the payments herein described is expressly conditioned upon receipt from Landlord of a written statement for such ad valorem real estate tax contributions (as well as the other documents described herein if requested by Tenant) no later than December 31 of the calendar year following the year in which the taxes were due.

Notwithstanding the above, so long as Tenant is not in default hereunder and the stockholders' equity of its parent company, Winn-Dixie Stores, Inc., exceeds $100,000,000, Tenant may elect to self-insure each of the insurance coverages described hereinabove and in Articles 7 and 8. Sums due from Tenant in lieu of insurance proceeds because of such self-insurance shall be treated as insurance proceeds for all purposes under this lease. The insurance policies shall be for a term of not less than six months and shall name Landlord, Tenant and any lender of Landlord as insured parties, as their interests may appear. Any insurance which Tenant is permitted to obtain pursuant to this Article may be the subject of self-insurance or be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant."

    3. Said lease dated June 30, 1976, as amended, shall be and remain in full force and effect except only as the same is specifically modified hereby. All covenants, obligations, terms and conditions of said lease not changed by the within Third Amendment of Lease are hereby ratified and confirmed.

    WINN-DIXIE STORES, INC., a Florida corporation, hereinafter called "Guarantor", joins in the execution hereof for the purpose of evidencing its consent to the execution of the within Third Amendment of Lease by Tenant, its wholly-owned subsidiary corporation, and to further evidence unto Landlord, and Landlord's successors and assigns, the continuing guaranty by Guarantor, and Guarantor's successors and assigns, of the due performance by Tenant, and Tenant's successors and assigns, of Tenant's obligations under said lease dated June 30, 1976,



4

as amended, and the within Third Amendment of Lease.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be duly executed the day and year first above written.

Signed, sealed and delivered
in the presence of:

*(signatures)*
As to Landlord

ZUPPARDO REAL ESTATE CO., INC.

By: _____
  Its           President

Attest: _____
  Its           Secretary

(Corporate Seal)

**LANDLORD**

*(signatures)*
As to Tenant

WINN-DIXIE LOUISIANA, INC.

By: _____
  Its           Vice President

Attest: _____
  Its           Secretary

(Corporate Seal)

**TENANT**

*(signatures)*
As to Guarantor

WINN-DIXIE STORES, INC.

By: _____
  Its           Vice President

Attest: _____
  Its           Secretary

(Corporate Seal)

**GUARANTOR**

5

STATE OF Louisiana )
Parish COUNTY OF Jefferson )

BE IT KNOWN that on this 25th day of August, 1994, before me the undersigned authority, personally came and appeared Joseph S Zuppardo Sr., _____ President of ZUPPARDO REAL ESTATE CO., INC., a Louisiana corporation, to me known, who signed and executed the above and foregoing lease before me and in the presence of the two witnesses whose names are thereto subscribed as such and who acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

IN WITNESS WHEREOF the said appearer has signed hereto, together with the said witnesses and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_____                    By: _____
                                                              /President
_____

SWORN to and subscribed before me this
25 day of August, 1994

_____                    (NOTARIAL SEAL)
Notary Public
My Commission Expires:_____

STATE OF FLORIDA    )
                    )
COUNTY OF DUVAL     )

    BE IT KNOWN that on this _6th_ day of _September_, 1994, before me the undersigned authority, personally came and appeared _____, Vice President of WINN-DIXIE LOUISIANA, INC., a Florida corporation qualified to do business in the State of Louisiana, to me known, who signed and executed the above and foregoing lease before me and in the presence of the two witnesses whose names are thereto subscribed as such, and who acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

    IN WITNESS WHEREOF the said appearer has signed hereto, together with the said witnesses and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_Sally Reece_                                      By: _R. P. McCook_
                                                      Its            Vice President

_Cynthia N. Crossland_

SWORN to and subscribed before me this
_6th_ day of _September_, 1994

                                                   (NOTARIAL SEAL)

_Laura E. Baughman_
Notary Public
My Commission Expires: _____


STATE OF FLORIDA    )
                    )
COUNTY OF DUVAL     )

    BE IT KNOWN that on this _6th_ day of _September_, 1994, before me the undersigned authority, personally came and appeared _____, _Vice_ President of WINN-DIXIE STORES, INC., a Florida corporation, to me known, who signed and executed the above and foregoing lease before me and in the presence of the two witnesses whose names are thereto subscribed as such and who acknowledged in my presence and in the presence of said witnesses that he signed the above and foregoing lease as his free act and deed and for the uses and purposes therein set forth.

    IN WITNESS WHEREOF the said appearer has signed hereto, together with the said witnesses and I have hereunto affixed my official hand and seal on the day and year first above written.

WITNESSES:

_Sally Reece_                                      By: _R. P. McCook_
                                                      Its            Vice President

_Cynthia N. Crossland_

SWORN to and subscribed before me this
_6th_ day of _September_, 1994

                                                   (NOTARIAL SEAL)

_Laura E. Baughman_
Notary Public
My Commission Expires: _____

LAURA E. BAUGHMAN
My Comm. Exp. July 17, 1998
Comm. No. CC _____

| ACORD | EVIDENCE OF PROPERTY INSURANCE | DATE (MM/DD/YY) 4/15/98 |
|---|---|---|

THIS IS EVIDENCE THAT INSURANCE AS IDENTIFIED BELOW HAS BEEN ISSUED, IS IN FORCE AND CONVEYS ALL THE RIGHTS AND PRIVILEGES AFFORDED UNDER THE POLICY.

**PRODUCER**
J&H MARSH & MCLENNAN, INC.
191 PEACHTREE ST N E STE 3400
ATLANTA, GA 30303-1702

**COMPANY**
Houston Casualty Company

CODE                SUB-CODE

**INSURED**
Winn-Dixie Stores, Inc.
Attn: Ms. Trona H. Nesler
5050 Edgewood Court
Jacksonville,   FL 32203-0297

**LOAN NUMBER**

**POLICY NUMBER**
PJ982481

**EFFECTIVE DATE (MM/DD/YY)**  4/15/98
**EXPIRATION DATE (MM/DD/YY)**  4/15/99
**CONT. UNTIL TERMINATED IF CHECKED**

THIS REPLACES PRIOR EVIDENCE DATED:

**PROPERTY INFORMATION**
LOCATION / DESCRIPTION
First National Bank of Commerce is included as Mortgagee as their interest may appear as respects Store #1403; 1841 Almonaster, New Orleans, LA

**COVERAGE INFORMATION**

| COVERAGE / PERILS / FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| "All Risks" of Direct Physical Loss or Damage including Flood and Earthquake, subject to policy terms and conditions. | | |
| *Replacement Cost | | |
| **Blanket Limit per schedule on file with company | | |

**REMARKS (Including Special Conditions)** (LIMITS MAY HAVE BEEN REDUCED BY PAID CLAIMS AND MAY HAVE DEDUCTIBLES OR RETENTIONS)
*List of Insurers Continued: Lexington Insurance Co., #PJ98240; Travelers Indemnity Co. of Illinois, #KTJCMB267T560298; Lloyd's of London, #PJ982482; Sorema N.A. Reinsurance Co., #793831998; Lexington Insurance Co., #8520655; and Allianz Insurance Co., #CLP1032074.

**CANCELLATION**
THE POLICY IS SUBJECT TO THE PREMIUMS, FORMS, AND RULES IN EFFECT FOR EACH POLICY PERIOD. SHOULD THE POLICY BE TERMINATED, THE COMPANY WILL GIVE THE ADDITIONAL INTEREST IDENTIFIED BELOW ___30 DAYS___ * WRITTEN NOTICE, AND WILL SEND NOTIFICATION OF ANY CHANGES TO THE POLICY THAT WOULD AFFECT THAT INTEREST, IN ACCORDANCE WITH THE POLICY PROVISIONS OR AS REQUIRED BY LAW.

**ADDITIONAL INTEREST**
NAME AND ADDRESS
Zuppardo Real Estate Co., Inc.
3801 Ridgeway Dr.
Metairie          LA 70002

NATURE OF INTEREST
[ ] MORTGAGEE
[X] LOSS PAYEE
[ ] ADDITIONAL INSURED
[ ] OTHER

SIGNATURE OF AUTHORIZED AGENT FOR COMPANY

ACORD 27 (2/88)
(* 10 DAYS NON-PAYMENT)

EXHIBIT "B"

© ACORD CORPORATION 1988
CERTIFICATE NO. 006001-00551

# ACORD. CERTIFICATE OF PROPERTY INSURANCE

DATE (MM/DD/YY): 05/01/2006

**PRODUCER** Serial #: 1403
AON RISK SERVICES, INC. OF FLORIDA
7650 W. COURTNEY CAMPBELL CAUSEWAY
SUITE 800
TAMPA, FL 33607-1481 USA
STORE #1403

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**COMPANIES AFFORDING COVERAGE**

COMPANY A: LEXINGTON INSURANCE COMPANY

**INSURED**
WINN-DIXIE STORES, INC.
5050 EDGEWOOD COURT
P O BOX B
JACKSONVILLE, FL 32203-0297 USA

COMPANY B: TRAVELERS INDEMNITY OF INSURANCE

COMPANY C: UNDERWRITERS AT LLOYD'S

COMPANY D:

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|
| A | X PROPERTY<br>CAUSES OF LOSS<br>  BASIC<br>  BROAD<br>X SPECIAL<br>X EARTHQUAKE<br>X FLOOD | 7478875 | 4/30/2006 | 4/30/2007 | BUILDING<br>PERSONAL PROPERTY<br>X BUSINESS INCOME<br>EXTRA EXPENSE<br>BLANKET BUILDING<br>BLANKET PERS PROP<br>X BLANKET BLDG & PP<br>X EARTHQUAKE<br>X FLOOD | $<br>$<br>$ INCLUDED<br>$<br>$<br>$<br>$ 25,000,000<br>$ 25,000,000<br>$ 25,000,000 |
|  | INLAND MARINE<br>TYPE OF POLICY<br>CAUSES OF LOSS<br>  NAMED PERILS<br>  OTHER |  |  |  |  | $<br>$<br>$<br>$<br>$ |
|  | CRIME<br>TYPE OF POLICY |  |  |  |  | $<br>$<br>$ |
| B | X BOILER & MACHINERY | BM21-961X9218 | 4/30/2006 | 4/30/2007 | X PER BREAKDOWN | $ 25,000,000<br>$ |
| C | X OTHER<br>TERRORISM | E00RQ2659400 | 4/30/2006 | 4/30/2007 | PROPERTY DAMAGE AND BUSINESS INTERRUPTION | $25,000,000 |

**LOCATION OF PREMISES/DESCRIPTION OF PROPERTY**
RE: STORE #1403

FIRST NATIONAL BANK OF COMMERCE IS INCLUDED AS LOSS PAYEE / MORTGAGEE WITH RESPECTS TO PROPERTY LOCATED AT STORE #1403, 1841 ALMONASTER, NEW ORLEANS, LA ATIMA.

**SPECIAL CONDITIONS/OTHER COVERAGES**
SEE ATTACHED ADDENDUM.
CANCELLATION PROVISION SHOWN HEREIN IS SUBJECT TO SHORTER OR LONGER TIME PERIODS DEPENDING ON THE JURISDICTION OF, AND REASON FOR THE CANCELLATION.

**CERTIFICATE HOLDER**

ZUPPARDO REAL ESTATE CO., INC.
3801 RIDGEWAY DRIVE
METAIRIE, LA 70002

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.

**AUTHORIZED REPRESENTATIVE**
AON RISK SERVICES, INC. OF FLORIDA

ACORD 24 (1/95)  © ACORD CORPORATION 1995



EXHIBIT "C"

RECAP SHEET FOR WINN-DIXIE PROJECTS
SHAMROCK CONST.CO.,INC.

PROJECT- WINN DIXIE STORE AT: ALMONASTER & N.PRIEUR STREET - N.O.LA

DATE/TIME: 09-Jan-07
GROSS AREA OF BUILDING..........

| ITEM # | DESCRIPTION | SCHEDULE VALUE | COST/ SQ.FT. |
|---|---|---|---|
| 700-000 | GENERAL CONDITIONS | 44,335 | 1.07 |
| 700-008 | CLEANUP | 8,528 | 0.21 |
| 1050-000 | MOLD CLEAN-UP | 43,768 | 1.06 |
| 1410-000 | TESTING LAB | 2,329 | 0.06 |
| 2050-000 | DEMOLITION AT SITE | 3,176 | 0.08 |
| 2070-000 | SELECTIVE DEMOLITION | 37,793 | 0.91 |
| 2577-000 | PARKING LOT STRIPING | 3,706 | 0.09 |
| 3210-000 | RE-STEEL & W.W.F. | 18,453 | 0.46 |
| 5130-000 | MISCELL.STEEL | 2,692 | 0.06 |
| 6100-000 | ROUGH CARPENTRY | 8,386 | 0.20 |
| 6220-000 | FINISH CARPENTRY | 1,342 | 0.03 |
| 6220-000 | ARCHITECTURAL MILLWORK | 8,993 | 0.22 |
| 6220-036 | F.R.P. PANELS | 8,526 | 0.21 |
| 6220-037 | MARLITE PANELING | 9,130 | 0.22 |
| 7400-003 | METAL SIDING PANELS | 8,470 | 0.20 |
| 7510-000 | ROOFING & SHT.METAL | 166,884 | 4.04 |
| 7600-001 | FLASHING AT COOLERS | 1,207 | 0.03 |
| 7920-001 | CAULKING (MASONRY) | 1,174 | 0.03 |
| 8110-000 | HOLLOW METAL DOORS | 7,133 | 0.17 |
| 8210-000 | WOOD DOORS | 4,104 | 0.10 |
| 8351-000 | TRAFFIC DOORS | 7,302 | 0.18 |
| 8361-000 | OVERHEAD DOORS | 1,738 | 0.04 |
| 8410-000 | ALUM.GLASS/GLAZING | 24,635 | 0.60 |
| 8410-100 | SPECIAL ALUM.DR.-OVERHEAD GRILL | 3,706 | 0.09 |
| 8710-000 | FINISH HDWE. | 7,770 | 0.19 |
| 9110-000 | MET.STUDS,DRYWALL | 73,259 | 1.77 |
| 9300-000 | CERAMIC TILE | 22,234 | 0.54 |
| 9510-000 | ACOUSTICAL CEILINGS | 32,662 | 0.79 |
| 9660-000 | RESILIENT TILE | 84,952 | 2.06 |
| 9700-001 | ALUM.FLOOR MATT FRAME | 554 | 0.01 |
| 9900-000 | SPECIAL FLOORS (FLOOR SEALER) | 432 | 0.01 |
| 9900-000 | PAINTING-INTERIOR & EXTERIOR | 41,291 | 1.00 |
| 10120-001 | BULLETIN BOARDS | 568 | 0.01 |
| 10160-001 | TOILET PARTITIONS | 4,685 | 0.11 |
| 10200-001 | WALL LOUVER W/HOOD | 1,781 | 0.04 |
| 10230-000 | CANOPIES | 929 | 0.02 |
| 10240-001 | ALUM.DOOR GRILLES | 489 | 0.01 |
| 10251-001 | WALL BUMPERS | 705 | 0.02 |
| 10440-001 | SIGNAGE | 280 | 0.01 |
| 10440-011 | S.S.CLMN.& DR.JAMBS | 5,505 | 0.13 |
| 10520-001 | FIRE EXTINGUISHER | 1,038 | 0.03 |
| 10800-000 | TOILET ACCESSORIES | 3,953 | 0.10 |
| 10800-016 | ANTISEPTIC BOWL HOLDER | 946 | 0.02 |
| 10800-017 | MOPP RECEPTER HARDWARE | 622 | 0.02 |
| 15400-000 | PLUMBING | 56,378 | 1.36 |
| 15550-000 | FIRE SPRINKLERS | 8,989 | 0.22 |
| 15801-000 | H.V.A.C. | 148,224 | 3.59 |
| 16050-000 | ELECTRICAL | 243,510 | 5.89 |
| 16050-000 | PARKING LOT LIGHTING | 6,882 | 0.17 |
| | TOTALS | 1,176,055 | $28.45 |

EXHIBIT "D"