UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC. *et al.*, | Chapter 11 |
| Reorganized Debtors[1] | Jointly Administered |

## MOTION AND MEMORANDUM
## TO ALLOW LATE-FILED PROOFS OF CLAIM
## BY CREDITOR, THE TANGIPAHOA PARISH SCHOOL BOARD

**NOW INTO COURT**, through undersigned counsel, comes the **Tangipahoa Parish School Board**, operating as the Tangipahoa Parish School System ("School System"), a creditor of certain of the Reorganized Debtors who files this Motion and Memorandum to Allow Late-Filed Proofs of Claim ("Motion"). In support of its Motion, the School System respectfully represents as follows:

### RELIEF REQUESTED

1. The School System hereby seek an enlargement of time for the late filing of its proofs of claim for sales and/or use taxes in the aggregate amount of $134,352.03 due to "excusable neglect" as to the following individual debtors (collectively, the "System Debtors"):

Winn-Dixie Logistics, Inc.;

Winn-Dixie Montgomery, Inc.; and,

Winn-Dixie Procurement, Inc.

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are debtors in the jointly administered cases: Astor Products, Inc., Crakin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-

## FACTUAL BASIS FOR MOTION

2. The School System is a political subdivision of the State of Louisiana. The School System collects the sales and use taxes from business entities operating within Tangipahoa Parish, Louisiana. The System Debtors operated businesses at locations within Tangipahoa Parish.

**Chronology of Events.**

3. The System Debtors (included within the Reorganized Debtors) filed for relief under Chapter 11 on February 21, 2005 (the "Petition Date"). The Total Debt shown in the Schedules of the Reorganized Debtors was $1,043,434,105.59, exclusive of contingent, unliquidated, or disputed claims. The cases were transferred to this Court on April 13, 2005. The cases are being jointly administered under case number 05-03817-3F1. A claims bar date of August 1, 2005 was set.

4. Prior to the Petition Date, the System Debtors filed monthly sales and use tax returns. At issue are the monthly returns for the period commencing January 9, 2003 to February 21, 2005. In the tax returns, the System Debtors represented that the information contained in the returns was accurate and that all sales and use tax liabilities have been reported.

5. The monthly sales and use tax returns filed by the System Debtors further represented that all sales and use taxes which were due and owing the School System had been paid during each monthly period and that no additional sales or use taxes were due the School System.

6. The School System was not listed as a creditor in the Schedules of the System Debtors, which showed no Unsecured Nonpriority Claims ($0.00) as being due.

---

Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

2

7. As a result of the sales and use tax returns filed by System Debtors and the omission of the School System as a creditor in the schedules of the System Debtors, the School System was led to believe that no amounts were due the School System by the System Debtors and that the School System had no claims against the System Debtors and no need to file any proofs of claims.

8. On December 5, 2005, as part of its routine audit process, the School System issued audit initiation letters. In January of 2006, the School System's auditors began making preparations for the audit of the System Debtors. Between January and April 2006, representatives of the School System were in contact with representatives of the System Debtors in order to obtain preliminary account information, such as obtaining a chart of accounts, completion of a pre-audit questionnaire, and to set dates and location (Jacksonville) for the audit. A date of May 1, 2006 was agreed upon for commencement of the audit.

9. On April 6, 2006 the School System received a copy of the general ledgers from the System Debtors and during the month of April 2006 the auditors for the School System conducted preliminary work for the audit, such as reviewing the chart of accounts, determining the audit period, sampling procedure, transactions to be reviewed and discussion of logistical issues. At this time the School System's auditors began to encounter obstacles in conducting the audit. For example, the auditors were advised that only one Metaviewer viewing machine would be available at the System Debtors' offices for use by the two auditors who would be viewing the data, nor would copies of data be available in advance.

10. The complexity of the Reorganized Debtors, including the System Debtors, presented additional challenges for the School System's auditors. Some of the operations of the System Debtors had been relocated to Tangipahoa Parish from other parishes within Louisiana, divisions

had merged, procurements for parishes outside of Tangipahoa were included in transactions entered with transactions which occurred within Tangipahoa, and transactions for other of the Reorganized Debtors were included in the data presented to the auditors. The auditors initially received incorrect list with department identification numbers and accounts. Sample spreadsheets sent to the auditors contained incorrect information.

11. When the auditors arrived at the Reorganized Debtors' offices in Jacksonville on May 1, 2006, they were advised that the "audit room" would not be available due to renovations. The auditors were advised that they should use a conference room which had no computer and no telephone.

12. The School System auditors remained at the Reorganized Debtors' offices in Jacksonville until May 12, 2006. The auditors then returned to Tangipahoa Parish to continue their work. This included obtaining missing fixed asset vouchers, obtaining records for surgeon general ledger accounts not originally provided by the System Debtors, obtaining missing expense sample vouchers, testing accruals, preparing summaries, and other work in connection with finalization of the audit.

13. While the audit was proceeding, the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors ("Plan"), which included the System Debtors as a part of the Plan dated August 9, 2006 was filed.

14. On September 20, 2006, the School System's auditors advised the System Debtors that the School System intended to issue proposed assessments which would show additional amounts were owed by the System Debtors. The System Debtors requested that the School System delay issuing the assessment in order that the System Debtors could furnish the auditors with additional information favorable to the System Debtors. The System Debtors continued to

provide the School System's auditors with additional information and updated work papers into November of 2006.

15. Meanwhile, the modified Plan was confirmed on November 9, 2006 and became effective on November 21, 2006.

16. The School System issued its proposed assessments on November 28, 2006. The School System's final Notices of Assessment were issued on December 29, 2006. Copies of the final Notices of Assessment are attached hereto as Exhibits "1", "2", and "3". The amounts of the final assessments for the prepetition sales and/or use taxes are as follows:

| | |
|---|---|
| Winn-Dixie Logistics, Inc. | $55,850.59 |
| Winn-Dixie Montgomery, Inc. | $77,013.27 |
| Winn-Dixie Procurement, Inc. | $ 1,488.17 |
| TOTAL | $134,352.03 |

**Excusable Neglect.**

17. The School System attempted to conduct the audit on a timely basis and completed the audit as soon as practicable under the circumstances.

18. The time to complete the audit included the delays in receiving preliminary information from the System Debtors, time in having to travel from Tangipahoa Parish to Jacksonville to conduct the on-site portion of the audit work, delays in the receipt of additional information and work papers from the System Debtors after the preliminary assessments were determined, and the additional delays in the assessment requested by the System Debtors.

19. The School System has acted in good faith with regard to its part in a reasonable time in seeking the enlargement of time to file its claims. The System Debtors materially contributed to the time required to commence and complete the audit, including issuance of the Notices of

Assessment.

20. The School System's claims are for sales and/or use taxes as unsecured priority tax claims under 11 U.S.C. § 507(a)(8).

21. The School System's claims totaling $134,352.03 are an insignificant portion, 0.0001%, of the Total Debt of the Reorganized Debtors of $1,043,434,105.59.

22. The System Debtors have been aware of and engaged in the audit process from its beginning to its completion. During the process, the System Debtors' representatives corresponded and periodically communicated with and discussed the audit process, including the System Debtors' exceptions to the preliminary assessment with the auditors.

23. Until the fieldwork for the audit in Jacksonville was completed, the School System did not and could not have a reasonable estimate of the amount of sales and use tax due. When the School System advised the System Debtors on September 20, 2006, that the School System expected to assess the System Debtors for additional sales and/or use taxes which were due, the System Debtors requested delays in the assessments in order that the System Debtors could provide additional information and work papers relating to the proposed assessments.

24. The Reorganized Debtors, including the System Debtors, are ongoing businesses whose Plan provides for payment, in stock and possible distributions, to unsecured creditors such as the School Systems.

**LAW APPLICABLE - EXCUSABLE NEGLECT**

25. Enlargements of time for the late filing of a proof of claim as provided in Bankruptcy Rule 9006(b) may be allowed upon a showing of "excusable neglect." The United States Supreme Court analyzed the meaning of "excusable neglect" in evaluating whether to allow late-filed claims in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*,

507 U.S. 380 (1993). Under the Supreme Court's formulation, courts generally are permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

26. Among the factors to be considered under *Pioneer* are the possible prejudice to the debtors, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

27. The U.S. Fifth Circuit in *Greyhound Lines, Inc. v. Rogers (In Re Eagle Bus Mfg., Inc.)*, 62 F.3d 730 (5th Cir. 1995), with *Pioneer's* "four factors in mind", at pp. 737-740, analyzed excusable neglect in a framework which considered: A. Good Faith; B. Prejudice (to the debtor); C. Length of Delay; D. Reason for Delay; and E. Equity.

28. The Fifth Circuit, in *Greyhound*[2], questioned whether allowance of the late claims would disrupt the economic model for which the parties reached their agreements and noted that, to the contrary, the late claims were clearly expected by the debtor. Thus, the allowing the filing of the claims six to eight months late did not prejudice the debtor.

## ARGUMENT AND CONCLUSION

29. The delay in the audit and assessments was due to events which were not within the reasonable control of the School System, but, instead, caused by and within the control of the System Debtors, particularly their:

    (a) filing inaccurate sales and/or use tax returns;

    (b) not scheduling any indebtedness as being due the School System;

---

[2] Citing *In re Alexander, Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y 1995)

(c) delaying sending the preliminary information;

(d) necessitating that the audit be conducted in Jacksonville;

(e) delaying providing additional information and work papers; and,

(f) requesting delays in the proposed assessments.

30. The System Debtors knew, or should have known, that as of the Petition Date they were indebted to the School System. At all times during the audit process, the System Debtors had superior knowledge and were fully aware of the status of the bankruptcy proceedings, including the pending confirmation of the Plan. During the course of the audit, the System Debtors, aware that additional assessments were likely, either delayed the process, or requested delays. If the System Debtors intended to assert the bar date or late filing as an objection or defense to the claims of the School System, the System Debtors had an obligation to disclose such facts to the School System during the course of the audit process, particularly at such times as the System Debtors requested delays.

31. The School System was justified in relying upon the tax returns filed by the System Debtors and acted in good faith in its efforts to timely commence and complete the audit using reasonable and appropriate methods.

32. In *Greyhound, supra*, the Fifth Circuit allowed claims filed six to eight months late. The court noted, at p. 739, that the delay was incidentally caused by the debtor, Greyhound. Similarly, in this matter, the delay was at least incidentally caused, and, most likely, primarily caused, by the System Debtors.

33. The filings of proofs of claim at times later than the time of delay involved in this matter have been allowed. For example, in *In re Commonwealth Corporation*, 617 F.2d 415 (5th Cir. 1980), a late-filed <u>amendment</u> which substantively amounted to a new claim was allowed

*three years and four months* after the bar date. Part of the rational in *Commonwealth* was that that "[a] bankruptcy court . . . sits as a court of equity, duty bound to examine each claim to see that injustice is not done and that all claims are fairly considered." *Id.* at 421, citing *Leach v. SBA (In re Crown Cabinets, Inc.)*, 488 F.2d 91, 92 (5th Cir. 1973).

34. The System Debtors could have filed accurate tax returns and scheduled the amounts due the School Systems for sales and use taxes. Either would have put the School System on notice of the existence of its claims and the need to make assessments for the sales and/or use taxes which are due the School System.

35. The System Debtors, thus the Reorganize Debtors, were aware of the pending audit and the inchoate claims of the School System when the Plan was formulated and approved.

36. The Plan of the Reorganized Debtors treats over $1,043,434,105.59 in debt. As the Fifth Circuit found in *Greyhound, supra*, the filing of the late claims of the School System, which claims amount to 0.0001% of the debt, will not disrupt the economic model, nor will it disrupt ongoing business operations of either the System Debtors or the Reorganized Debtors. Thus, there is no prejudice to the System Debtors as a result of the School System filing its claims for sales and/or use taxes at this time. Neither is the filing likely to have a detrimental impact on the conclusion of this proceeding, nor the ongoing operations of the Reorganized Debtors.

37. Allowing the claims of the School System is a fair and equitable result that is consistent with the doctrine of excusable neglect.

**WHEREFORE,** the Tangipahoa Parish School Board respectfully requests that this Court enter an order allowing the School System to file its proofs of claim for sales and/or use taxes as of August 1, 2005, or as of such date as the Court shall permit.

*Hearing and Notice*

A draft copy of the Motion was forwarded to counsel for the Reorganized Debtors on January 9, 2007 requesting a hearing date in accordance with the procedures established for this case. Subsequently, the possibility of resolution of the issues herein was discussed by counsel for the parties. However, no resolution has been reached at this time. A copy of this Motion was forward to counsel for the Reorganized Debtors this 17th day of January 2007 requesting a hearing date.

If an evidentiary hearing is required, counsel for mover believes that the hearing should take less than three (3) hours to complete.

Respectfully submitted,

**Steffes, Vingiello & McKenzie, LLC**
By: /s/ William E. Steffes
William E. Steffes, La. Bar No. 12426
13702 Coursey Blvd., Bldg. 3
Baton Rouge, LA 70817
Telephone: 225-751-1751
Facsimile: 225-751-1998
Email: bsteffes@steffeslaw.com

Attorneys for the Tangipahoa Parish School Board