**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                    Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., et al.,          Chapter 11

            Debtors.                      Jointly Administered

_____/

**SIXTH INTERIM AND FINAL FEE APPLICATION OF MILBANK, TWEED,**
**HADLEY & McCLOY LLP, COUNSEL FOR OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS, FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND FOR REIMBURSEMENT OF EXPENSES DURING PERIOD FROM**
**MARCH 1, 2005 THROUGH AND INCLUDING NOVEMBER 21, 2006**

Name of Applicant:                 Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP

Authorized to Provide
Professional Services to:          Official Committee of Unsecured
                                   Creditors

Date of Retention                  April 12, 2005 (effective as of
(Final Approval):                   March 1, 2005)

Period for which compensation
and reimbursement is sought:       March 1, 2005 – November 21, 2006

Amount of Compensation
requested:                         $6,125,540.22

Amount of Expense
Reimbursement requested:           $473,461.66

This is a(n): _____ interim   X   final application.

This is the sixth interim and final fee application filed by Milbank, Tweed, Hadley & M^cCloy LLP in these cases.

Prior Applications:

| Period Covered | Requested | | Awarded | |
|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses |
| March 1, 2005 – May 31, 2005 | $1,194,617.50 | $108,654.51 | $1,194,617.50 | $108,654.51 |
| June 1, 2005 – September 30, 2005 | $1,283,088.00 | $101,383.95 | $1,283,088.00 | $101,383.95 |
| October 1, 2005 – January 31, 2006 | $832,307.50 | $75,815.03 | $832,307.50 | $75,815.03 |
| February 1, 2006 – May 31, 2006 | $1,552,033.00 | $89,609.45 | $1,552,033.00 | $89,609.45 |
| June 1, 2006 – September 30, 2006 | $972,312.50 | $74,318.99 | $972,312.50 | $74,318.99 |

**SIXTH INTERIM AND FINAL FEE APPLICATION OF MILBANK, TWEED, HADLEY & MᶜCLOY LLP: AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF WINN DIXIE STORES, INC., ET AL. (MARCH 1, 2005 – NOVEMBER 21, 2006)**

| Name | Position; Experience | Hourly Rate | Total Hours | Total Compensation |
|------|---------------------|------------:|------------:|-------------------:|
| Dennis Dunne | Financial Restructuring Partner for 9 years; admitted in 1991. | $850<br>$790 | 433.40<br>701.20 | $368,390.00<br>$553,948.00 |
| Dale Ponikvar | Tax Partner for 17 years; admitted in 1981. | $825 | 32.60 | $26,895.00 |
| Michael Diamond | Litigation Partner for 28 years; admitted in 1971. | $825 | 88.80 | $73,260.00 |
| Luc Despins | Financial Restructuring Partner for 12 years; admitted in 1986. | $805<br>$790 | 31.00<br>37.30 | $24,955.00<br>$29,467.00 |
| Alexander Kaye | Global Corporate Partner for 6 years; admitted in 1992. | $760<br>$700 | 86.90<br>5.10 | $66,044.00<br>$3,570.00 |
| Robert Finkel | Global Corporate Partner for 6 years; admitted in 1988. | $750 | 4.70 | $3,525.00 |
| Matthew Barr | Financial Restructuring Partner for 2 years; admitted in 1997. | $675<br>$650<br>$550 | 648.70<br>81.20<br>848.60 | $437,872.50<br>$52,780.00<br>$466,730.00 |
| Scott Price | Tax Of Counsel for 2 years; admitted in 1990. | $640 | 35.50 | $22,720.00 |
| Risa Rosenberg | Financial Restructuring of Counsel for 5 years; admitted in 1984. | $630 | 19.20 | $12,096.00 |
| Robert Winter | Financial Restructuring Associate for 10 years; admitted in 1997. | $565<br>$555<br>$525 | 37.60<br>141.60<br>266.70 | $21,244.00<br>$78,588.00<br>$140,017.50 |

| Andrew Herr | Global Finance Associate for 6 years; admitted in 1997. | $535 | 35.00 | $18,725.00 |
|---|---|---|---|---|
| Sabina Clorfeine | Litigation Associate for 6 years; admitted in 1997. | $535<br>$525 | 437.10<br>68.40 | $233,848.50<br>$35,910.00 |
| Lena Mandel | Financial Restructuring Senior Attorney for 16 years; admitted in 1990. | $550<br>$535<br>$505 | 119.60<br>15.00<br>424.40 | $65,780.00<br>$8,025.00<br>$214,322.00 |
| Abhilash Raval | Financial Restructuring Associate for 8 years; admitted in 1997. | $525<br>$495 | 8.10<br>313.30 | $4,252.50<br>$155,083.50 |
| Russell Kestenbaum | Tax Associate for 8 years; admitted in 1997. | $525 | 56.70 | $29,767.50 |
| James MacInnis | Financial Restructuring Associate for 6 years; admitted in 2001. | $515<br>$510<br>$475 | 72.80<br>19.30<br>270.30 | $37,492.00<br>$9,843.00<br>$128,392.50 |
| Jeffrey Milton | Financial Restructuring Associate for 6 years; admitted in 1999. | $515<br>$510<br>$475 | 316.50<br>11.50<br>339.70 | $162,997.50<br>$5,865.00<br>$161,357.50 |
| Peter Roest | Financial Restructuring Associate for 19 years; admitted in 1986. | $510 | 83.00 | $42,330.00 |
| Ryan Katz | Global Corporate Associate for 5 years; admitted in 2001. | $500<br>$495<br>$440 | 6.90<br>3.10<br>6.70 | $3,450.00<br>$1,534.50<br>$2,948.00 |
| Bruce Daily | Global Finance Associate for 7 years; admitted in 1998. | $495 | 20.80 | $10,296.00 |

| Dennis O'Donnell | Financial Restructuring Associate for 13 years; admitted in 1992. | $495 | 99.40 | $49,203.00 |
|---|---|---|---|---|
| Paul Malek | Financial Restructuring Associate for 13 years; admitted in 1994. | $495 | 6.50 | $3,217.50 |
| Derrick Talerico | Litigation Associate for 4 years; admitted in 2002. | $475<br>$470 | 679.70<br>48.40 | $322,857.50<br>$22,748.00 |
| Michael Comerford | Financial Restructuring Associate for 4 years; admitted in 2003. | $475<br>$470<br>$400 | 1,191.60<br>240.50<br>1,172.60 | $566,010.00<br>$113,036.00<br>$469,040.00 |
| James Bulger | Financial Restructuring Associate for 3 years; admitted in 2004. | $440<br>$375 | 16.00<br>17.40 | $7,040.00<br>$6,525.00 |
| Brian Kinney | Financial Restructuring Associate for 3 years; admitted in 2004. | $440<br>$435<br>$375 | 12.80<br>52.50<br>174.60 | $5,632.00<br>$22,837.50<br>$65,475.00 |
| Scott McClelland | Global Corporate Associate for 3 years; admitted in 2004. | $440 | 98.50 | $43,340.00 |
| Soham Naik | Financial Restructuring Associate for 3 years; admitted in 2004. | $440<br>$435<br>$375 | 96.90<br>65.40<br>761.40 | $42,636.00<br>$28,449.00<br>$285,525.00 |
| Jeffrey Goldman | Litigation Associate for 2 years; admitted in 2005. | $410<br>$400 | 24.40<br>20.80 | $10,004.00<br>$8,320.00 |
| Peter Newman | Financial Restructuring Associate for 2 years; admitted in 2005. | $410 | 4.50 | $1,845.00 |

| Name | Title | Rate | Hours | Amount |
|---|---|---|---|---|
| Samina Uddin | Financial Restructuring Associate for 4 years; admitted in 2003. | $400 | 38.60 | $15,440.00 |
| Irene Bogdashevsky | Financial Restructuring Associate for 3 years; admitted in 2004. | $375 | 62.90 | $23,587.50 |
| Samuel Khalil | Financial Restructuring Associate for 3 years; admitted in 2004. | $375 | 31.60 | $11,850.00 |
| Rachel Cherington | Tax Associate for 1 year; admitted in 2006. | $350 | 2.90 | $1,015.00 |
| Catherine Yu | Financial Restructuring Associate for 7 months; admitted in 2007. | $225 | 71.40 | $16,065.00 |
| Melissa Klein | Financial Restructuring Associate for 3 months; admission pending. | $225 | 6.30 | $1,417.50 |
| Rena Ceron | Case Manager | $180 $170 | 232.20 234.30 | $41,796.00 $39,831.00 |
| Holly Erick | Legal Assistant | $160 $150 | 70.60 205.50 | $11,296.00 $30,825.00 |
| Alessandra Bulow | Legal Assistant | $155 | 68.70 | $10,648.50 |
| Scott McCabe | Legal Assistant | $150 $140 | 8.90 44.60 | $1,335.00 $6,244.00 |
| Sean Norton | Legal Assistant | $150 | 16.70 | $2,505.00 |
| Louisa Crespi | Legal Assistant | $145 $135 | 158.00 45.40 | $22,910.00 $6,129.00 |
| Elliot Law | Legal Assistant | $135 | 13.20 | $1,782.00 |

| Charmaine Thomas | Legal Assistant | $135 | 158.20 | $21,357.00 |
|---|---|---|---|---|
| Bryn Fuller | Legal Assistant | $135 | 91.40 | $12,339.00 |
| Jacqueline Brewster | Managing Attorney Clerk | $145 $135 | 227.20 247.70 | $32,944.00 $33,439.50 |
| Matthew Ottenstein | Librarian | $170 | 6.50 | $1,105.00 |
| Christopher Coleman | Litigation Support Specialist | $245 | 8.00 | $1,960.00 |
| Devon Pizzino | File Clerk | $110 | 7.40 | $814.00 |
| Joshua Wallach | File Clerk | $120 $110 | 21.00 38.90 | $2,520.00 $4,279.00 |
| **Total** | | **$471.78**[1] | **13,030.30 hours** | **$6,143,496.50**[2] |

---

[1]   The blended rate <u>excluding</u> paraprofessionals is $526.47 per hour.

[2]   In connection with the review and analysis of Milbank's First Interim Fee Application, Second Interim Fee Application, Third Interim Fee Application and Fourth Interim Fee Application, that was completed by the Fee Examiner, Milbank voluntarily agreed to deduct $17,956.28 from the amount sought pursuant to the Sixth Interim Fee Application.  This deduction is reflected in the aggregate amount outstanding to Milbank and unpaid by the Debtors.

SUMMARY TABLE OF SERVICES RENDERED DURING
MILBANK, TWEED, HADLEY & MᶜCLOY LLP'S
SIXTH INTERIM AND FINAL COMPENSATION PERIOD
(MARCH 1, 2005 – NOVEMBER 21, 2006)

| ACTIVITY | HOURS | FEES |
|---|---|---|
| Adequate Protection | 1.00 | 400.00 |
| Asset Sales | 1,108.00 | 491,076.00 |
| Automatic Stay Enforcement | 244.50 | 102,231.50 |
| Business Plan Review and Analysis | 71.50 | 49,005.50 |
| Claims Analysis and Estimation | 404.40 | 150,724.00 |
| Committee Administration | 1,088.30 | 455,247.00 |
| Committee Meetings | 425.20 | 237,865.50 |
| Court Hearings | 358.50 | 159,084.50 |
| Customer Contracts | 2.30 | 962.00 |
| Debtor-In-Possession | 21.20 | 15,120.50 |
| DIP and Exit Financing | 241.30 | 126,450.50 |
| Disclosure Statement | 103.10 | 51,644.00 |
| Employee Issues | 329.70 | 181,819.00 |
| Equipment/Personal Property Leases | 29.00 | 9,551.50 |
| Exclusivity Issues | 103.40 | 52,772.50 |
| Executory Contracts | 251.20 | 122,786.00 |
| Fee Applications: Other Professionals | 87.00 | 33,666.50 |
| File, Docket & Calendar Maintenance | 599.40 | 83,447.00 |
| General Communications with Creditors | 86.00 | 42,492.50 |
| Insurance Matters | 66.10 | 32,985.50 |
| PACA | 18.10 | 9,359.00 |
| Pension Issues | 26.40 | 11,350.00 |

| | | |
|---|---:|---:|
| Preparation of Milbank Fee Application | 438.80 | 176,396.50 |
| Real Property Leases | 243.60 | 118,981.00 |
| Reclamation Issues | 305.90 | 175,151.00 |
| Reorganization Plan | 2,582.70 | 1,413,842.00 |
| Retention of Professionals | 558.80 | 262,057.00 |
| Secured Transactions | 4.30 | 2,207.50 |
| Substantive Consolidation | 990.30 | 519,930.50 |
| Tax Issues | .70 | 565.00 |
| Travel Time | 524.90 | 303,804.50 |
| Utilities Advice | 98.00 | 44,442.50 |
| Voidable Transfers | 37.90 | 17,940.00 |
| Transfer Venue | 330.30 | 163,651.00 |
| Equity Committee Issues | 815.10 | 401,848.00 |
| Fee Examiner Matters | 375.70 | 90,776.00 |
| Examiner | 57.70 | 31,863.50 |
| **Total** | **13,030.30** | **$6,143,496.50**[3] |

---

[3]    See Footnote 2.

SUMMARY TABLE OF DISBURSEMENTS BILLED DURING
MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP'S
SIXTH INTERIM AND FINAL COMPENSATION PERIOD
(MARCH 1, 2005 – NOVEMBER 21, 2006)

| DISBURSEMENTS | AMOUNT |
|---|---|
| Airfreight | 4,301.27 |
| Binding | 120.00 |
| Computer Database Research | 153,244.46 |
| Document Processing/Overtime | 89,227.07 |
| Fax | 1,283.00 |
| Local Transportation | 35,467.15 |
| Mail | 1,560.92 |
| Meals | 16,885.55 |
| Messenger | 759.59 |
| Photocopies/Printing | 77,617.22 |
| Telephone | 6,288.16 |
| Transcripts | 3,003.65 |
| Travel | 83,703.62 |
| **TOTAL DISBURSEMENTS** | **$473,461.66** |

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                         Case No. 3:05-bk-03817-JAF

WINN-DIXIE STORES, INC., et al.,               Chapter 11

      Debtors.                              Jointly Administered

_____/

**SIXTH INTERIM AND FINAL FEE APPLICATION OF MILBANK, TWEED,**
**HADLEY & McCloy LLP, COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS, FOR FINAL ALLOWANCE AND APPROVAL OF COMPENSATION**
**FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT**
**OF EXPENSES INCURRED DURING PERIOD FROM MARCH 1, 2005**
**THROUGH AND INCLUDING NOVEMBER 21, 2006**

      Milbank, Tweed, Hadley & McCloy LLP ("Milbank"),

counsel to the official committee of unsecured creditors (the

"Committee") of Winn-Dixie Stores, Inc. and its affiliated

debtors and debtors-in-possession (collectively, "Winn-Dixie" or

the "Debtors") appointed in the above-captioned chapter 11 cases

(the "Chapter 11 Cases"), hereby submits this application (the

"Application"), pursuant to sections 330 and 331 of title 11 of

the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the

"Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), the United States Trustee

Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under Section 330 of the

Bankruptcy Code effective January 30, 1996 (the "U.S. Trustee

Guidelines") and the Final Order Approving Interim Compensation
Procedures for Professionals, dated March 15, 2005 (Docket No.
434) (the "Interim Compensation Order"), for an order:

(i)   allowing compensation for professional services
rendered from October 1, 2006 through and including November 21,
2006 (the "Sixth Interim Compensation Period") in the amount of
$291,181.72[1] and for reimbursement of expenses incurred in
connection with such services in the amount of $23,679.73 (the
"Sixth Interim Fee Application");

(ii) allowing compensation, on a final basis, of all
professional services rendered from March 1, 2005 through and
including November 21, 2006 (the "Total Compensation Period") in
the amount of $6,125,540.22, and reimbursement of expenses
incurred in connection with such services in the amount of
$473,461.66, consisting of (A) one hundred percent (100%) of the
compensation previously approved by the Court, on an interim
basis, for professional services rendered from March 1, 2005

---

[1]     In connection with the review and analysis of Milbank's First Interim
        Fee Application, Second Interim Fee Application, Third Interim Fee
        Application and Fourth Interim Fee Application, that was completed by
        the Fee Examiner (as defined below), Milbank voluntarily agreed to
        deduct $17,956.28 from the amount sought pursuant to the Sixth Interim
        Fee Application.  This deduction is reflected in the aggregate amount
        outstanding to Milbank and unpaid by the Debtors.

through and including September 30, 2006,[2] in the amount of
$5,834,358.50; (B) one hundred percent (100%) of the
reimbursement of incurred expenses previously approved by the
Court, on an interim basis, in the amount of $449,781.93, for
the period of March 1, 2005 through and including September 30,
2006; (C) one hundred percent (100%) of the compensation sought
pursuant to this Application as set forth on the Sixth Interim
Fee Statements (as defined below) in the amount of $291,181.72,
and (D) one hundred percent (100%) of the reimbursement of
expenses sought pursuant to this Application as set forth on the
Sixth Interim Fee Statements in the amount of $23,679.73
(collectively, the "Final Fee Application"); and

        (iii)    authorizing and directing the Debtors to pay
to Milbank the amount of $43,871.32, which is the total amount
outstanding to Milbank and unpaid by the Debtors pursuant to the
Interim Compensation Order for services rendered and expenses
incurred during the Total Compensation Period.

### PRELIMINARY STATEMENT

        1.    The Committee, through Milbank's representation,
played a significant role in the Debtors' successful emergence
from bankruptcy in just under two years.  As illustrated

---

[2]    This Application also seeks approval of fees and expenses incurred by
Milbank for October 1, 2006 through and including November 21, 2006.

throughout these Chapter 11 Cases (and in this Final Fee Application), the matters addressed by Milbank, on behalf of the Committee, during the Total Compensation Period -- such as the (a) Substantive Consolidation Compromise, which became the cornerstone of the Plan of Reorganization and distributions to creditors, (b) Investigation and (c) significant involvement in the Asset Sales process -- evidence the central role that the Committee and its professionals played in these Chapter 11 Cases and in effectively representing the interests of its constituents.  The Committee played this role while at the same time cooperatively working with the Debtors and their advisors to achieve a successful reorganization of the Debtors' businesses.  Milbank respectively submits that the fees and expenses it incurred during these Chapter 11 Cases on behalf of the Committee were reasonable and provided clear and direct benefits to the Debtors' estates and their unsecured creditors.

**INTRODUCTION**

**A.    Background**

      2.    Bankruptcy Filing.  On February 21, 2005 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

3.    <u>Statutory Committees</u>.  On March 1, 2005, the United States Trustee duly appointed the Committee (Docket No. 176).  On August 17, 2005, the United States Trustee appointed the Equity Security Holders' Committee (the "<u>Equity Committee</u>") (Docket No. 3027), which was disbanded on January 11, 2006 (Docket No. 5098).

4.    <u>Venue Transfer</u>.  By order dated April 13, 2005, the New York Bankruptcy Court transferred venue of these Chapter 11 Cases to this Court.  The Chapter 11 Cases are being jointly administered for procedural purposes only.  The Debtors continued, until the Effective Date (as defined below), to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

5.    <u>Fee Examiner</u>.  On August 10, 2005, this Court ordered the appointment of a fee examiner ("<u>Fee Examiner</u>"), pursuant to the Order Granting Motion To Appoint Fee Examiner (Docket No. 2933).

6.    <u>Jurisdiction</u>.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for

5

the relief sought herein are sections 330 and 331 of the Bankruptcy Code.

**B.    Retention of Milbank and Billing History**

7.    <u>Authorization for Milbank's Retention</u>.  On April 12, 2005, the Committee's retention of Milbank was authorized in these Chapter 11 Cases pursuant to the Order Under 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002, Authorizing Retention and Employment of Milbank, Tweed, Hadley & McCloy LLP as Counsel to Official Committee of Unsecured Creditors of Winn-Dixie Stores, Inc., <u>et al.</u> (Docket No. 702) (the "<u>Retention Order</u>").[3]

8.    <u>Statutory Basis For Application</u>.  Milbank makes this Sixth Interim Fee Application for approval and allowance of compensation and reimbursement of expenses for the Sixth Interim Compensation Period pursuant to sections 330 and 331 of the Bankruptcy Code.  Milbank makes this Final Fee Application for final approval and allowance of compensation and reimbursement of expenses for the Total Compensation Period pursuant to section 330 of the Bankruptcy Code.

9.    <u>First Interim Fee Application</u>.  On July 15, 2005, Milbank submitted the First Application of Milbank, Tweed,

---

[3]    On March 30, 2005, the New York Bankruptcy Court entered an order (Docket No. 607) approving Milbank's retention on an interim basis subject to final approval, which occurred pursuant to the Retention Order.

Hadley & M<u>c</u>Cloy LLP, Counsel to Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from March 1, 2005 Through and Including May 31, 2005 (the "<u>First Interim Compensation Period</u>," and such interim fee application being the "<u>First Interim Fee Application</u>") (Docket No. 2242).

      10.  In accordance with the Interim Compensation Order, Milbank submitted monthly fee statements to, among others, the Debtors seeking interim compensation and reimbursement of expenses.  During the First Interim Compensation Period, Milbank submitted the following fee statements:

(a)    On May 4, 2005, pursuant to the Interim Compensation Order, Milbank served its first fee statement for the period from March 1, 2005 through and including March 31, 2005 (the "<u>First Fee Statement</u>").  The First Fee Statement sought an allowance of $447,752 as compensation for services rendered and reimbursement of $35,345.75 in expenses.

(b)    On May 25, 2005, pursuant to the Interim Compensation Order, Milbank served its second fee statement for the period from April 1, 2005 through and including April 30, 2005 (the "<u>Second Fee Statement</u>").  The Second Fee Statement sought an allowance of $362,756 as compensation for services rendered and reimbursement of $37,266.13 in expenses.

(c)    On June 30, 2005, pursuant to the Interim Compensation Order, Milbank served its third fee statement for the period from May 1, 2005 through and including May 31, 2005 (the "<u>Third Fee Statement</u>" and, together with the First Fee Statement and Second Fee Statement,

7

collectively the "First Interim Fee Statements").  The Third Fee Statement sought an allowance of $384,109.50 as compensation for services rendered and reimbursement of $36,042.63 in expenses.

11.  On August 5, 2005, this Court granted the First Interim Fee Application and allowed Milbank's request for $1,194,617.50 in fees and $108,654.51 in expenses, for a total award of $1,303,272.01 (Docket No. 2811).

12.  Second Interim Fee Application.  On November 11, 2005, Milbank submitted the Second Application of Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, Counsel to Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from June 1, 2005 Through and Including September 30, 2005 (the "Second Interim Compensation Period," and such interim fee application being the "Second Interim Fee Application") (Docket No. 4151).

13.  During the Second Interim Compensation Period, Milbank submitted the following fee statements:

(a)  On August 10, 2005, pursuant to the Interim Compensation Order, Milbank served its fourth fee statement for the period from June 1, 2005 through and including June 30, 2005 (the "Fourth Fee Statement"). The Fourth Fee Statement sought an allowance of $441,629 as compensation for services rendered and reimbursement of $36,978.62 in expenses.

(b)  On October 25, 2005, pursuant to the Interim Compensation Order, Milbank served its fifth fee statement for the period from July 1, 2005 through and including July 31, 2005 (the "Fifth Fee Statement").

8

The Fifth Fee Statement sought an allowance of
$340,372 as compensation for services rendered and
reimbursement of $27,457.91 in expenses.

(c)   On November 3, 2005, pursuant to the Interim
Compensation Order, Milbank served its sixth fee
statement for the period from August 1, 2005 through
and including August 31, 2005 (the "Sixth Fee
Statement").  The Sixth Fee Statement sought an
allowance of $300,627.50 as compensation for services
rendered and reimbursement of $19,618.06 in expenses.

(d)   On November 4, 2005, pursuant to the Interim
Compensation Order, Milbank served its seventh fee
statement for the period from September 1, 2005
through and including September 30, 2005 (the "Seventh
Fee Statement" and, together with the Fourth Fee
Statement, Fifth Fee Statement and Sixth Fee
Statement, collectively the "Second Interim Fee
Statements").  The Seventh Fee Statement sought an
allowance of $200,459.50 as compensation for services
rendered and reimbursement of $17,329.36 in expenses.

14.   On December 1, 2005, this Court granted the

Second Interim Fee Application and allowed Milbank's request for

$1,283,088 in fees and $101,383.95 in expenses, for a total

award of $1,384,447.95 (Docket No. 4421).

15.   Third Interim Fee Application.  On March 17,

2006, Milbank submitted the Third Application of Milbank, Tweed,

Hadley & M<sup>c</sup>Cloy LLP, Counsel to Official Committee of Unsecured

Creditors, for Interim Allowance of Compensation for Services

Rendered and for Reimbursement of Expenses Incurred During

Period from October 1, 2005 Through and Including January 31,

2006 (the "Third Interim Compensation Period," and such interim

fee application being the "Third Interim Fee Application")

(Docket No. 6547).

16.    During the Third Interim Compensation Period,

Milbank submitted the following fee statements:

(a)    On December 6, 2005, pursuant to the Interim
Compensation Order, Milbank served its eighth fee
statement for the period from October 1, 2005 through
and including October 31, 2005 (the "Eighth Fee
Statement").  The Eighth Fee Statement sought an
allowance of $192,014.50 as compensation for services
rendered and reimbursement of $19,653.68 in expenses.

(b)    On January 17, 2006, pursuant to the Interim
Compensation Order, Milbank served its ninth fee
statement for the period from November 1, 2005 through
and including November 30, 2005 (the "Ninth Fee
Statement").  The Ninth Fee Statement sought an
allowance of $172,860.50 as compensation for services
rendered and reimbursement of $13,662.09 in expenses.

(c)    On February 7, 2006, pursuant to the Interim
Compensation Order, Milbank served its tenth fee
statement for the period from December 1, 2005 through
and including December 31, 2005 (the "Tenth Fee
Statement").  The Tenth Fee Statement sought an
allowance of $165,005.50 as compensation for services
rendered and reimbursement of $17,985.81 in expenses.

(d)    On March 14, 2006, pursuant to the Interim
Compensation Order, Milbank served its eleventh fee
statement for the period from January 1, 2006 through
and including January 31, 2006 (the "Eleventh Fee
Statement" and, together with the Eighth Fee
Statement, Ninth Fee Statement and Tenth Fee
Statement, collectively the "Third Interim Fee
Statements").  The Eleventh Fee Statement sought an
allowance of $302,427 as compensation for services
rendered and reimbursement of $24,513.45 in expenses.

17.    On April 6, 2006, this Court granted the Third

Interim Fee Application and allowed Milbank's request for

10

$832,307.50 in fees and $75,815.03 in expenses, for a total
award of $908,122.53 (Docket No. 6955).

     18.  <u>Fourth Interim Fee Application</u>.  On July 21,
2006, Milbank submitted the Fourth Application of Milbank,
Tweed, Hadley & M<u>c</u>Cloy LLP, Counsel to Official Committee of
Unsecured Creditors, for Interim Allowance of Compensation for
Services Rendered and for Reimbursement of Expenses Incurred
During Period from February 1, 2006 Through and Including May
31, 2006 (the "<u>Fourth Interim Compensation Period</u>," and such
interim fee application being the "<u>Fourth Interim Fee
Application</u>") (Docket No. 9426).

     19.  During the Fourth Interim Compensation Period,
Milbank submitted the following fee statements:

    (a)  On May 8, 2006, pursuant to the Interim Compensation
Order, Milbank served its twelfth fee statement for
the period from February 1, 2006 through and including
February 28, 2006 (the "<u>Twelfth Fee Statement</u>").  The
Twelfth Fee Statement sought an allowance of
$433,958.50 as compensation for services rendered and
reimbursement of $24,656.52 in expenses.

    (b)  On May 25, 2006, pursuant to the Interim Compensation
Order, Milbank served its thirteenth fee statement for
the period from March 1, 2006 through and including
March 31, 2006 (the "<u>Thirteenth Fee Statement</u>").  The
Thirteenth Fee Statement sought an allowance of
$391,211 as compensation for services rendered and
reimbursement of $23,495.96 in expenses.

    (c)  On July 12, 2006, pursuant to the Interim Compensation
Order, Milbank served its fourteenth fee statement for
the period from April 1, 2006 through and including
April 30, 2006 (the "<u>Fourteenth Fee Statement</u>").  The
Fourteenth Fee Statement sought an allowance of

$327,376.50 as compensation for services rendered and reimbursement of $10,811.48 in expenses.

(d)   On July 13, 2006, pursuant to the Interim Compensation Order, Milbank served its fifteenth fee statement for the period from May 1, 2006 through and including May 31, 2006 (the "Fifteenth Fee Statement" and, together with the Twelfth Fee Statement, Thirteenth Fee Statement and Fourteenth Fee Statement, collectively the "Fourth Interim Fee Statements").  The Fifteenth Fee Statement sought an allowance of $399,487 as compensation for services rendered and reimbursement of $30,645.49 in expenses.

20.  On August 10, 2006, this Court granted the Fourth Interim Fee Application and allowed Milbank's request for $1,552,033 in fees and $89,609.45 in expenses, for a total award of $1,641,642.45 (Docket No. 10152).

21.  Fifth Interim Fee Application.  On November 21, 2006, Milbank submitted the Fifth Application of Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, Counsel to Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During Period from June 1, 2006 Through and Including September 30, 2006 (the "Fifth Interim Compensation Period," and such interim fee application being the "Fifth Interim Fee Application") (Docket No. 12759).

22.  During the Fifth Interim Compensation Period, Milbank submitted the following fee statements:

(a)   On August 17, 2006, pursuant to the Interim Compensation Order, Milbank served its sixteenth fee statement for the period from June 1, 2006 through and

12

including June 30, 2006 (the "Sixteenth Fee
Statement").  The Sixteenth Fee Statement sought an
allowance of $286,536.50 as compensation for services
rendered and reimbursement of $32,958.37 in expenses.

(b)    On September 28, 2006, pursuant to the Interim
Compensation Order, Milbank served its seventeenth fee
statement for the period from July 1, 2006 through and
including July 31, 2006 (the "Seventeenth Fee
Statement").  The Seventeenth Fee Statement sought an
allowance of $210,889.50 as compensation for services
rendered and reimbursement of $11,931.41 in expenses.

(c)    On October 24, 2006, pursuant to the Interim
Compensation Order, Milbank served its eighteenth fee
statement for the period from August 1, 2006 through
and including August 31, 2006 (the "Eighteenth Fee
Statement").  The Eighteenth Fee Statement sought an
allowance of $187,574.50 as compensation for services
rendered and reimbursement of $12,132.44 in expenses.

(d)    On November 13, 2006, pursuant to the Interim
Compensation Order, Milbank served its nineteenth fee
statement for the period from September 1, 2006
through and including September 30, 2006 (the
"Nineteenth Fee Statement" and, together with the
Sixteenth Fee Statement, Seventeenth Fee Statement and
Eighteenth Fee Statement, collectively the "Fifth
Interim Fee Statements").  The Nineteenth Fee
Statement sought an allowance of $287,312.00 as
compensation for services rendered and reimbursement
of $17,296.77 in expenses.

23.   On December 14, 2006, this Court granted the

Fifth Interim Fee Application and allowed Milbank's request for

$972,312.50 in fees and $74,318.99 in expenses, for a total

award of $1,046,631.49 (Docket No. 13107).

24.   Sixth Interim Fee Application.  This is Milbank's

Sixth Interim Fee Application for approval and allowance of

compensation and reimbursement of expenses.  During the Sixth

13

Interim Compensation Period, Milbank submitted the following fee statements:

    (a)    On December 6, 2006, pursuant to the Interim Compensation Order, Milbank served its twentieth fee statement for the period from October 1, 2006 through and including October 31, 2006 (the "Twentieth Fee Statement").  The Twentieth Fee Statement sought an allowance of $213,322.50 as compensation for services rendered and reimbursement of $18,119.38 in expenses.

    (b)    On December 8, 2006, pursuant to the Interim Compensation Order, Milbank served its twenty first fee statement for the period from November 1, 2006 through and including November 21, 2006 (the "Twenty First Fee Statement" and, together with the Twentieth Fee Statement, collectively the "Sixth Interim Fee Statements").  The Twenty First Fee Statement sought an allowance of $95,815.50 as compensation for services rendered and reimbursement of $5,560.35 in expenses.

    25.  As of the filing of this Application, Milbank has received payments with respect to the Sixth Interim Fee Statements totaling $270,990.13.  Milbank has applied this payment to eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested pursuant to the Twentieth Fee Statement and Twenty First Fee Statement.

    26.  This is also Milbank's Final Fee Application for approval and allowance of compensation and reimbursement of expenses with respect to legal services provided to the Committee since its appointment through the Effective Date of the Plan (i.e., from March 1, 2005 through and including November 21, 2006).

14

27.  Other than on an interim basis, no prior application has been made to this or any other court for the relief requested.

28.  Milbank has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

29.  No promises have been received by Milbank or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## CASE STATUS

30.  Plan and Disclosure Statement.  On June 29, 2006, the Debtors filed the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (as subsequently amended, modified, or supplemented, the "Plan") and a related disclosure statement (the "Disclosure Statement").  At a hearing held on August 4, 2006 (the "Disclosure Statement Hearing"), this Court approved the Disclosure Statement and approved certain Plan voting solicitation procedures.

31.  Plan Confirmation and Effective Date.  The Debtors solicited votes to accept or reject the Plan in accordance with this Court's order.  This Court held a confirmation hearing on October 13, 2006, and the Plan was

15

confirmed by Order of this Court on November 9, 2006 (Docket No. 12440). The effective date of the Plan occurred on November 21, 2006 (the "Effective Date").

32. Post-Effective Date Committee. In accordance with section 12.20 of the Plan, on and as of the Effective Date, the Committee was reconstituted as the Post-Effective Date Committee. Pursuant to section 12.20 of the Plan, the Claim Settlement Protocols (Docket No. 11606) and the Amended Designation of Directors (Docket No. 12733), the Post-Effective Date Committee is charged with the following duties: (i) overseeing the general unsecured claims reconciliation process conducted by or on behalf of the Reorganized Debtors and consultation with the Reorganized Debtors concerning their investigation, prosecution and proposed settlement of Landlord Claims, Vendor/Supplier Claims and Other Unsecured Claims, (ii) services related to any final applications filed pursuant to section 12.2 of the Plan including the right to be heard on all issues relating to such final fee applications, and (iii) services related to filling one of the positions on the board of directors of reorganized Winn-Dixie Stores, Inc.

## APPLICATION

33. By this Application, Milbank is seeking final allowance of (a) compensation for professional services rendered by Milbank, as counsel for the Committee, during the Total

Compensation Period and (b) reimbursement of expenses incurred by Milbank in connection with such services during the Total Compensation Period.

34.   In this Application, Milbank seeks approval of the amount of $6,125,540.22 for legal services rendered on behalf of the Committee during the Total Compensation Period and the amount of $473,461.66 for reimbursement of expenses incurred in connection with the rendition of such services, for a total award of $6,599,001.88 (the "Total Application Request").   The Total Application Request is based upon the fees and expenses granted in connection with the First Interim Fee Application, Second Interim Fee Application, Third Interim Fee Application, Fourth Interim Fee Application, Fifth Interim Fee Application and the fees and expenses requested in the Sixth Interim Fee Application.

35.   Pursuant to the previously approved interim fee applications and the Interim Compensation Order, Milbank previously received payment of $6,081,668.90 in respect of fees for legal services rendered through November 21, 2006, and has also received reimbursement of $473,461.66, for Milbank's expenses incurred in connection with the rendition of such services.   Milbank seeks a total payment of $43,871.32 pursuant to this Application, which amount represents the portion of Milbank's fees for legal services rendered and expenses incurred

17

during the Total Compensation Period not previously paid to Milbank in connection with the interim fee applications and the Interim Compensation Order.

36.  Under the Interim Compensation Order, Milbank, together with all other retained professionals, was entitled to eighty percent (80%) of its fees sought in each of Milbank's Fee Statements and reimbursement of one hundred percent (100%) of Milbank's expenses.  As of the date of this Sixth and Final Fee Application, Milbank has received payment with respect to all but $43,871.32 of such fees and expenses, which represents (after accounting for the deduction explained in footnote 1 of the Application) the twenty percent (20%) holdback as to fees incurred during the Sixth Interim Compensation Period and reflected in the Sixth Interim Fee Statements.  To the extent any further payments are made in accordance with the Interim Compensation Order prior to the hearing on this Application, Milbank will apprise the Court of such payments and revise its payment request accordingly.

37.  The fees sought by this Final Fee Application reflect an aggregate of 13,030.30 hours of attorney and paraprofessional time expended and recorded in performing services for the Committee during the Total Compensation Period, at a blended average hourly rate of $471.78 for both

professionals and paraprofessionals.  The blended hourly rate
for professionals only is $526.47.

  38.  Milbank rendered to the Committee all services
for which compensation is sought solely in connection with these
cases, in furtherance of the duties and functions of the
Committee.

  39.  Milbank maintains computerized records of the
time expended in the rendition of the professional services
required by the Committee.  These records are maintained in the
ordinary course of Milbank's practices.  For the convenience of
the Court and parties in interests, a billing summary for the
Total Compensation Period is attached as part of the cover
sheet, setting forth the name of each attorney and
paraprofessional for whose work on these cases compensation is
sought, each attorney's year of bar admission, the aggregate of
the time expended by each such attorney or paraprofessional, the
hourly billing rate for each such attorney or paraprofessional
at Milbank's current billing rates and an indication of the
individual amounts requested as part of the total amount of
compensation requested.  In addition, set forth in the billing
summary is additional information indicating whether each
attorney is a partner or associate, the number of years each
attorney has held such position, and each attorney's area of
concentration.  The compensation requested by Milbank is based

19

on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

40.   Attached hereto as Exhibit A are time entry records broken down in tenths of an hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description of services performed by each attorney and paraprofessional on behalf of the Committee for the Sixth Interim Compensation Period.

41.   Attached to Milbank's First Interim Fee Application, Second Interim Fee Application, Third Interim Fee Application, Fourth Interim Fee Application and Fifth Interim Fee Application were time entry records broken down in tenths of an hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description of services performed by each attorney and paraprofessional on behalf of the Committee for each of those respective interim compensation periods.[4]

42.   Milbank also maintains computerized records of all expenses incurred in connection with the performance of

---

[4]    Although the time entry records are publicly available on the docket for these Chapter 11 Cases, Milbank will provide such records to any party in interest upon request.

professional services.  A summary of the amounts and categories of expenses for which reimbursement is sought is sought for the Sixth Interim Compensation Period, as well as a breakdown of expenses by project category and detailed descriptions of these expenses are attached hereto as Exhibit B.

43.  Attached to Milbank's First Interim Fee Application, Second Interim Fee Application, Third Interim Fee Application, Fourth Interim Fee Application and Fifth Interim Fee Application were summaries of the amounts and categories of expenses for which reimbursement was sought, as well as a breakdown of expenses by project category and detailed descriptions of these expenses for each of those respective interim compensation periods.[5]

### SUMMARY OF PROFESSIONAL SERVICES RENDERED

44.  As discussed above, Milbank has submitted twenty one (21) fee statements in the above-captioned cases and six (6) interim fee applications pursuant to the Interim Compensation Order.  Each of the First Interim Fee Application, the Second Interim Fee Application, the Third Interim Fee Application, the Fourth Interim Fee Application and the Fifth Interim Fee

---

[5]    Although the expense descriptions are publicly available on the docket for these Chapter 11 Cases, Milbank will provide such descriptions to any party in interest upon request.

Application, including all exhibits to such applications, are incorporated herein by reference.

45.    To provide an orderly summary of the services rendered on behalf of the Committee by Milbank during the Total Compensation Period, and in accordance with the U.S. Trustee Guidelines, Milbank has established the following separate project billing categories in connection with these cases:

        (a)    Adequate Protection Issues and Litigation
        (b)    Asset Sales
        (c)    Automatic Stay Enforcement & Litigation
        (d)    Business Plan Review and Analysis
        (e)    Change of Control Transactions
        (f)    Claims Analysis and Estimation
        (g)    Committee Administration
        (h)    Committee Meetings
        (i)    Court Hearings
        (j)    Customer Contracts & Programs
        (k)    Debtor-in-Possession Meetings and Communications
        (l)    DIP and Exit Financing
        (m)    Disclosure Statement
        (n)    Employee Issues
        (o)    Environmental Issues
        (p)    Equipment/Personal Property Leases
        (q)    Exclusivity Issues
        (r)    Executory Contracts
        (s)    Fee Applications – Other
        (t)    File, Docket and Calendar Maintenance
        (u)    General Communications with Creditors
        (v)    Insurance Matters
        (w)    PACA
        (x)    Pension Issues
        (y)    Preparation of Milbank Fee Applications
        (z)    Real Property Leases
        (aa)   Reclamation Issues
        (bb)   Regulatory Issues
        (cc)   Reorganization Plan
        (dd)   Reporting Requirements
        (ee)   Retention of Professionals
        (ff)   Rule 2004 Examinations
        (gg)   Secured Transactions

```
(hh) Substantive Consolidation
(ii) Tax Issues
(jj) Travel Time
(kk) Union Issues
(ll) Utilities Advice
(mm) Vendor Issues
(nn) Voidable Transfers and other potential claims
(oo) Venue Issues
(pp) Equity Committee
(qq) Fee Examiner Matters
```

46.   The following summary is intended to highlight a number of the services rendered by Milbank in the separate project billing categories where Milbank has expended a considerable number of hours on behalf of the Committee, and it is not meant to be a detailed description of the work performed. Detailed descriptions of the day-to-day services provided by Milbank and the time expended performing such services in each project billing category were fully set forth in each of Milbank's interim fee applications.

## A.   **Asset Sales**

47.   Throughout the Total Compensation Period, Milbank attorneys worked closely with the Committee's financial advisors and the Debtors' legal and financial advisors to negotiate enhanced asset sale values and, in general, to improve transaction terms for the Debtors' estates.

48.   During the Total Compensation Period, Milbank attorneys reviewed and analyzed transactions involving, among other things, the sale of (i) two airplanes;

(ii) pharmaceuticals; (iii) approximately 326 stores leases and related inventory; (iv) distribution centers and production facilities; (v) equipment and personal property leases; (vi) 25 additional store leases and (vii) Debtors' interests in certain stores operated in the Bahamas.  Additionally, Milbank attorneys engaged in continual interaction with the Debtors regarding discrete asset sale issues that arose throughout the Total Compensation Period through conference calls and other correspondence and informed the Committee of pending asset sales, analyzed the proposed transactions and recommended courses of action for the Committee.

49.  In connection with the Bahamas sale, Milbank attorneys reviewed, analyzed and negotiated the structure, terms and conditions of the sale of the Debtors' interests ("Interests") in certain stores in the Bahamas.  Milbank worked closely with the Debtors and the Debtors' professionals to conduct the auction for the Interests and negotiate the terms and conditions of a share purchase agreement and all other ancillary documentation.  Milbank attorneys participated at the auction in order to advise the Committee of the material terms of the bids and status of the sale and auction process generally.  The sale of the Interests generated approximately $50 million for the Debtors and their estates.

50.   In connection with the sale of approximately 326 store leases and related inventory, Milbank attorneys (i) negotiated and prepared form asset purchase agreements with the Debtors and their advisors, (ii) reviewed and commented on the preparation of bidding procedures for an auction and sale motion, (iii) conferred with the Debtors on an optimal structure for the auction and methods for maximizing value received from the sale of the leases through stalking horse auctions and (iv) participated at numerous auctions to assist the Debtors in maximizing value for the Debtors' estates from the sale of the leases.

**B.    Claims Analysis & Estimation**

51.   During the Total Compensation Period, Milbank attorneys reviewed, analyzed and negotiated, with the Debtors, procedures for the resolution of thousands of prepetition litigation claims.  Eventually, after extensive discussions and a limited objection, which was filed by Milbank at the request of the Committee to the Debtors' motion, an agreement was reached on revised procedures that were approved by the Court.

52.   Milbank attorneys and paraprofessionals reviewed each of the proposed litigation claims settlements during the Total Compensation Period and provided Committee members with regular updates regarding the status of such settlements and compliance with the claims resolution procedures.

53.    Furthermore, during the Total Compensation Period, Milbank attorneys reviewed various requests to file late proofs of claim or motions to amend proofs of claim by certain claimants in these cases.  Milbank attorneys worked closely with Debtors' counsel to formulate appropriate responses to such requests.

## C.    **Committee Administration**

54.    Milbank's attention to the Committee's organizational needs enabled the Committee to promptly complete the administrative matters that were necessary to the Committee's effective participation in these cases.  Throughout the Total Compensation Period, Milbank attorneys counseled and advised the Committee regarding its statutory and fiduciary duties to the unsecured creditor body and the fiduciary obligations of the other parties in interest in general.

55.    Milbank prepared memoranda, and provided advice orally when time constraints so required, on the numerous pending issues arising in these cases.  Milbank analyzed issues and motions filed in the Debtors' cases and recommended action. Due to Milbank attorneys' experience in counseling various parties in interest in restructurings and bankruptcy cases, Milbank believes it provided to the Committee a unique perspective and sophisticated understanding of all issues relating to the administration of the Debtors' cases.

D.      **Committee Meetings**

56.   Numerous issues arose during the Total Compensation Period, including, among other things, issues relating to the Disclosure Statement and the Plan, requiring meetings of the Committee.  Committee meetings generally occurred weekly via teleconference.  Prior to such meetings, Milbank organized the Committee meetings by drafting agendas that included topics from all of the Committee's professionals and by distributing certain other materials for Committee members to review.  Milbank discussed with the Committee all significant matters arising in these cases during the Total Compensation Period and assisted the Committee in formulating positions on issues as they arose.

57.   Through Committee meetings and conference calls, and numerous other communications with members of the Committee, Milbank assisted the Committee during the Total Compensation Period in (i) fulfilling its obligations to unsecured creditors and (ii) making informed decisions regarding the numerous issues that have arisen in these cases.  Committee meetings provided the most effective and efficient forum for Committee members to express their views and ensured that all members of the Committee were kept informed of the events occurring in the Chapter 11 Cases.

27

### E.   Disclosure Statement

58.   During the Total Compensation Period, Milbank attorneys analyzed and reviewed the terms and conditions of the Disclosure Statement and also negotiated revisions to the Disclosure Statement.   Milbank attorneys prepared memoranda and charts regarding issues relating to the Disclosure Statement and objections that were filed to the Disclosure Statement.   In connection with the Disclosure Statement hearing, Milbank attorneys researched numerous legal and factual issues raised by parties objecting to the Disclosure Statement.   Such research was used during the hearing in support of Disclosure Statement approval.   Additionally, Milbank attorneys prepared and filed a letter in support of approving the Disclosure Statement and related Plan.

### F.   DIP And Exit Financing

59.   During the Total Compensation Period, Milbank attorneys reviewed and negotiated changes to the terms of the debtor-in-possession ("DIP") financing facility proposed by the Debtors in an effort to ensure that the Debtors' estates obtained the best terms available.   These efforts involved numerous meetings and discussions with the Debtors' counsel, the Debtors' financial advisors, counsel to the proposed DIP lender, and with members of the Committee to analyze numerous and complex DIP financing issues.   Milbank attorneys also reviewed,

analyzed, and commented on drafts of an order authorizing the
Debtors to enter into the DIP facility and reviewed, analyzed
and commented on the credit agreement and related documents
incorporating the terms of the DIP facility.  After approval of
the DIP facility, Milbank attorneys reviewed amendments to the
DIP facility proposed by the Debtors and the DIP lenders during
the Chapter 11 Cases, and submitted their recommendation to the
Committee.

      60.  During the Total Compensation Period, Milbank
attorneys negotiated, analyzed and reviewed the Debtors'
commitment letter for exit financing in connection with their
emergence from chapter 11.  Milbank attorneys prepared memoranda
for the Committee regarding the proposed terms of the exit
facility.  Milbank attorneys also reviewed, analyzed and
negotiated the terms and conditions for the Debtors' exit
financing credit agreement and related ancillary documents.
Additionally, Milbank attorneys reviewed and analyzed the
Debtors' related proposal to enter into a post-effective date
surety bond agreement and the related motion and order.

**G.    Employee Issues**

      61.  During the Total Compensation Period, Milbank
attorneys reviewed, analyzed and discussed with Committee
members a request that was made to the U.S. Trustee for the
formation of a retiree committee and a motion that was filed

with this Court requesting the same.  Based upon a
recommendation from the Committee and at the request of the U.S.
Trustee, Milbank attorneys drafted a response letter to the U.S.
Trustee regarding such request.  Additionally, Milbank
attorneys, at the request of the Committee, drafted an objection
to the motion that was filed with this Court.

62.  Milbank attorneys also reviewed, analyzed and
negotiated the Debtors' proposed terms for a key employee
retention plan and severance plan (the "KERP").  In consultation
with the Committee and the Committees' financial advisors,
Milbank submitted various comments to the Debtors regarding the
KERP.  Additionally, Milbank attorneys and other Committee
professionals engaged in extensive negotiations with counsel to
the Debtors' and the Debtors' other professionals over the terms
and conditions of the KERP.  The Debtors eventually incorporated
a majority of the Committee's KERP comments resulting in a
consensual resolution of disputes regarding the KERP between the
Committee and Debtors.

63.  During the Total Compensation Period, Milbank
attorneys spent time negotiating, analyzing and reviewing the
terms and conditions of an employment agreement and related
documents for the Debtors' Chief Executive Officer.
Additionally, Milbank attorneys negotiated and analyzed the

proposed terms and conditions for the Debtors' management incentive program in connection with the Plan.

**H.    Substantive Consolidation**

64.    During the Total Compensation Period, Milbank attorneys regularly corresponded with and conferred in-person with the Debtors' legal and financial advisors and the Committee's financial advisors regarding substantive consolidation issues.  Milbank attorneys conducted extensive research as to the legal and factual bases, if any, for the potential substantive consolidation of the Debtors' estates. Milbank attorneys reviewed thousands of pages of due diligence documents relating to the potential consolidation of the Debtors' estates.  As part of Milbank's factual investigation, Milbank attorneys interviewed numerous employees of the Debtors. Milbank attorneys reviewed numbers internal financial, organizational and operational documents produced in response to specific document requests made as part of the substantive consolidation investigation.  Milbank also reviewed large quantities of publicly available information on the Debtors. Milbank attorneys drafted detailed memoranda to the Committee regarding the status of Milbank's analysis in connection with determining whether the Debtors' estates should be treated separately for purposes of distributions to unsecured creditors or whether a form of substantive consolidation is warranted.

65.    In connection with the foregoing legal and factual analysis, Milbank worked with the members of the Committee (and certain of its professionals) to foster further discussions and negotiations amongst the Committee's members in an effort to resolve substantive consolidation issues.  A resolution of these issues was eventually reached within the Committee (the "Substantive Consolidation Compromise"). Subsequently, Milbank attorneys negotiated confidentiality agreements and/or common interest agreements with other constituencies, including the Debtors, to gain broad support for the Substantive Consolidation Compromise, which became the cornerstone of the Plan.

66.    Additionally, Milbank attorneys reviewed and analyzed the ad hoc trade committee's motion to substantively consolidate the Debtors' estates and related discovery requests under Bankruptcy Rule 2004.  In connection with negotiating the settlement of substantive consolidation issues embodied in the Plan, Milbank attorneys were able to negotiate a consensual withdrawal of such motion and related discovery requests in connection with the settlement embodied in the Plan.  Milbank attorneys also continued to work with members of the Committee (and certain of their professionals) and other constituencies, including the Debtors and other ad hoc committees, to gain broad

support for the Substantive Consolidation Compromise embodied in the Plan.

67.   The Committee, along with Milbank attorneys and its other financial professionals were able to garner support from a broad range of unsecured creditors, therefore avoiding the substantial cost and delay that would be incurred if the complex legal and factual issues associated with substantive consolidation were litigated to conclusion.   Furthermore, as evidenced by voting on the Plan, all classes of unsecured claims voiced their support of the Substantive Consolidation Compromise by overwhelmingly voting affirmatively to accept the Plan.   In summary, the Committee, through its counsel, achieved a reasonable compromise of complex issues and avoided the substantial delay and cost associated with the uncertainties of litigation -- which would have been detrimental to all parties involved -- by confirmation of the Plan.

## I.   **Equity Committee**

68.   During the Total Compensation, Period Milbank reviewed the facts underlying the decision of the United States Trustee to appoint the Equity Committee and researched various issues concerning such decision.   Milbank, at the request of the Committee, prepared a motion seeking to disband the Equity Committee (the "Disbandment Motion").   Milbank also prepared and served discovery requests on various parties in interest and

negotiated, drafted and obtained approval of a consent order regarding scheduling and discovery issues, which established a round of dispositive pleadings and subsequent discovery.

69.  Milbank attorneys, at the direction of the Committee, also filed objections to the retention of professionals by the Equity Committee and appeared at hearings regarding same.

70.  Subsequently, at the request of the United States Trustee, Milbank prepared and filed a motion seeking to abate the Disbandment Motion, while the United States Trustee conducted a review of whether the Equity Committee should continue to exist.  Following the United States Trustee's decision to disband the Equity Committee, Milbank reviewed the former Equity Committee's motion for reinstatement and, at the direction of the Committee, filed an objection thereto.

## J.  Reorganization Plan

71.  During the Total Compensation Period Milbank attorneys' devoted substantial amounts of time negotiating, commenting on, analyzing and reviewing the Plan.  Milbank attorneys were actively engaged, with the Committee's other professionals, in analyzing the Debtors' proposed framework for their chapter 11 plan as it progressed towards and through the confirmation hearing.  Attorneys from Milbank met and had conference calls with the Debtors' advisors and their counsel

numerous times to discuss the Debtors' chapter 11 plan proposals and the foundation and implementation of distributions under such proposals.  Milbank provided regular updates to, and solicited feedback and direction from, the Committee throughout the plan development process.  Throughout the process, Milbank was actively engaged in negotiating and formulating the Substantive Consolidation Compromise embodied in the Plan, conducting extensive diligence, as well as analyzing the tax consequences of the Plan and engaging in negotiations regarding the terms of the Plan and related matters.

72.  Moreover, Milbank worked closely with the Debtors, Debtors' professionals and the Committee's other professionals in the preparation and negotiation of the principal documents included in the plan supplement filed in connection with the Plan.  Milbank attorneys drafted and/or revised several documents and consulted with the Debtors on all plan supplement materials, including documents concerning: the registration rights agreement, reorganized Winn-Dixie Stores Inc. articles of incorporation and by-laws, and the Debtors' exit facility credit agreement.

73.  Milbank attorneys were continuously involved in the Plan confirmation process.  Milbank reviewed and assessed the Debtors' solicitation procedures, ballots for voting on the Plan and objections to confirmation of the Plan.  Milbank

attorneys also negotiated a protective order with certain dissenting landlords in connection with producing certain confidential documents in connection with the confirmation hearing on the Plan.  Milbank also prepared memoranda for the Committee regarding issues arising in connection with confirmation of the Plan and worked with the Debtors and other constituents in preparing for the confirmation hearing on the Plan.

74.  Milbank further assisted the Committee by reviewing, analyzing and developing counter-arguments to objections to confirmation of the Plan.  Milbank reviewed and analyzed each of the objections including conducting extensive legal research.  Such research served as the foundation to oppose, negotiate and assist the Debtors in resolving several objections.  Moreover, Milbank attorneys coordinated with the Debtors' counsel in crafting responses to significant confirmation objections and in amending the Plan to reflect the resolution of objections and various other refinements incorporated into the Plan.

75.  Committee Investigation.  During the Total Compensation Period, Milbank attorneys worked with the Committee to investigate, among other things, whether any action or inaction by the Debtors' prepetition directors, officers, senior management, or professionals contributed to the filing of the

chapter 11 case and/or if the estates have any potentially viable claims against these parties worth pursuing (the "Investigation").  The Investigation included, without limitation, meeting with the Debtors' current senior management and requesting documents relevant to the Investigation.  Milbank attorneys also conducted in-person and telephonic interviews of 24 persons, including current and former Winn-Dixie employees, officers and directors, and an Assistant United States Attorney in connection with the Investigation.  The Investigation also interviewed Debtors' former Chief Executive Officer Allan Rowland by written questionnaire and reviewed various documents from the Debtors, former employees and KPMG (the Debtors' external auditor).  Milbank attorneys also drafted a report disclosing its findings from the Investigation, discussed its conclusions with the Committee and filed the report with the Court on June 29, 2006.  The Investigation was another essential matter that needed to be resolved prior to formulating a Plan.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

76.  The factors to be considered in awarding attorneys fees as enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been

adopted by most courts.[6]  Milbank respectfully submits that the
consideration of these factors should result in this Court's
allowance of the full compensation sought.

> (A)  The Time and Labor Required.  The professional
>      services rendered by Milbank on behalf of the
>      Committee have required the continuous expenditure of
>      substantial time and effort, under time pressures
>      which sometimes required the performance of services
>      late into the evening and, on a number of occasions,
>      over weekends and holidays.  The services rendered
>      required a high degree of professional competence and
>      expertise in order to be administered with skill and
>      dispatch.

> (B)  The Novelty and Difficulty of Questions.  Novel and
>      complex issues have arisen in the course of these
>      chapter 11 cases.  In these cases, as in many others
>      in which the firm is involved, Milbank's effective
>      advocacy and creative approach to problem solving have
>      helped clarify and resolve difficult issues.

> (C)  The Skill Requisite to Perform the Legal Services
>      Properly.  Milbank believes that its recognized
>      expertise in the area of financial restructuring, its
>      ability to draw from highly experienced professionals
>      in other areas of its practice such as structured
>      finance, mergers and acquisitions, litigation,

---

[6]  Grant v. Florida Power Corp. (In re American Fabricators, Inc.), 197
B.R. 987, 993-94 (Bankr. M.D. Fla. 1996) (adopting the First Colonial
factors and noting that Fifth Circuit decisions before 1981 are binding
precedent in the Eleventh Circuit).  The factors embraced by the Fifth
Circuit in First Colonial were adopted by the Fifth Circuit's decision
in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.
1974), except that First Colonial also included the "spirit of economy"
as a factor which was expressly rejected by Congress in enacting
section 330 of the Bankruptcy Code.  Stroock & Stroock & Lavan v.
Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127
F.3d 1398, 1403 (11th Cir. 1997).  The remaining First Colonial factors
continue to apply to determine the reasonableness of fees awarded under
the Bankruptcy Code.  3 Collier on Bankruptcy ¶ 330.04[3][c] (Lawrence
P. King, et al., eds., 15th ed. 1997).  In addition, a majority of the
First Colonial factors are now codified in section 330(a)(3).  Id.

environmental and regulatory law and its practical
approach to the resolution of issues helped maximize
distributions to the Debtors' unsecured creditors.

(D)    <u>The Preclusion of Other Employment by Applicant Due to
Acceptance of the Case</u>.  Due to the size of Milbank's
financial restructuring department and the firm as a
whole, Milbank's representation of the Committee has
not precluded the acceptance of new clients.  However,
the number of matters needing attention on a
continuous basis has required several of Milbank's
attorneys to commit significant portions of their time
to these cases.

(E)    <u>The Customary Fee</u>.  The compensation sought herein is
based upon Milbank's normal hourly rates for services
of this kind.  Milbank respectfully submits that the
compensation sought herein is not unusual given the
magnitude and complexity of these cases and the time
dedicated to the representation of the Committee.
Such compensation is commensurate with fees Milbank
has been awarded in other cases, as well as with fees
charged by other attorneys of comparable experience.

(F)    <u>Whether the Fee is Fixed or Contingent</u>.  Milbank
charges customary hourly rates for the time expended
by its attorneys and paraprofessionals in representing
the Committee, and Milbank's fee is not outcome
dependent.

(G)    <u>Time Limitations Imposed by Client or Other
Circumstances</u>.  As stated above, Milbank has been
required to attend to various issues as they have
arisen in these Chapter 11 Cases.  Often, Milbank has
had to perform these services under significant time
constraints requiring attorneys and paraprofessionals
assigned to these cases to work evenings and on
weekends.

(H)    <u>The Amount Involved and Results Obtained</u>.  According
to the Debtors, the Committee represents the interests
of unsecured creditors holding unsecured claims
estimated at well over $900 million dollars.  Through
Milbank's efforts, the Committee has been an active
participant in these Chapter 11 Cases.  The
Committee's participation, with Milbank's counsel and
guidance, has greatly contributed to the efficient

administration and prospects for reorganization of
these cases.

(I)  <u>The Experience, Reputation and Ability of the
     Attorneys</u>.  Milbank has a sophisticated and nationally
     recognized corporate reorganization and financial
     restructuring practice, and Milbank attorneys involved
     in this representation have played a major role in
     numerous complex restructurings including, for
     example, the chapter 11 cases of Enron Corp., Refco
     Inc., RCN Corp., Intermet Corp., Fruit of the Loom
     Inc., Adelphia Communications Corp., US Airways Group,
     Inc., Global Crossing Ltd., Fleming Companies, Inc.,
     Dairy Mart Convenience Stores, Inc., Lernout & Hauspie
     Speech Products N.V., Teligent, Inc., World Access,
     Inc., ORBCOMM Global, L.P., ICO Global Communications
     Inc., Safety-Kleen Corp., HomePlace Stores, Inc.,
     Hvide Marine, Inc., Sun TV and Appliances, Inc.,
     Seven-Up/RC Bottling Company of Southern California,
     Inc. and Ames Department Stores, Inc.  Milbank's
     experience enabled it to perform the services
     described herein competently and expeditiously.

(J)  <u>The "Undesirability" of the Case</u>.  These cases are not
     undesirable but, as already indicated, have required a
     significant commitment of time from many of Milbank's
     attorneys.

(K)  <u>Nature and Length of Professional Relationship</u>.
     Milbank was selected as the Committee's counsel
     shortly after the Committee's formation, on March 1,
     2005, and was retained effective as of that date
     pursuant to an order of the Court dated April 12,
     2005.  Milbank has been rendering services
     continuously to the Committee since the Committee was
     formed, and Milbank has rendered such services in a
     necessary and appropriate manner.

### <u>ALLOWANCE OF COMPENSATION</u>

77.  The professional services rendered by Milbank
have required a high degree of professional competence and
expertise to address, with skill and dispatch, the numerous
issues requiring evaluation and action by the Committee.

Milbank respectfully submits that the services rendered to the Committee were performed efficiently, effectively and economically, and that the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditors as a whole and the Debtors' estates.

78. The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> Any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

79. With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person, "reasonable compensation for actual, necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)  the time spent on such services;
> (B)  the rates charged for such services;
> (C)  whether the services were necessary to the administration of, or beneficial at

41

                        the time at which the service was
                        rendered toward the completion of, a
                        case under this title;

        (D)    whether the services were performed
               within a reasonable amount of time
               commensurate with the complexity,
               importance, and nature of the problem,
               issue, or task addressed; and

        (E)    whether the compensation is reasonable
               based on the customary compensation
               charged by comparably skilled
               practitioners in cases other than cases
               under this title.

11 U.S.C. § 330(a)(3)(A).

        80.   The congressional policy expressed above provides

for adequate compensation in order to continue to attract

qualified and competent professionals to bankruptcy cases.  In

re Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("Congress

determined, it appears, that on average the gain to the estate

of employing able, experienced, expert counsel would outweigh

the expense to the estate of doing so, and that unless the

estate paid competitive [market] sums it could not retain such

counsel on a regular basis.") (citations and quotations

omitted).

        81.   The total time spent by Milbank attorneys and

paraprofessionals during the Total Compensation Period was

13,030.30 hours and has a fair market value of $6,125,540.22.

As shown by this Application and supporting exhibits, Milbank's

services were rendered economically and without unnecessary

duplication of efforts.  In addition, the work involved, and

                                    42

thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.

## EXPENSES

82.  Milbank has incurred a total of $473,461.66 in expenses in connection with representing the Committee during the Total Compensation Period.  Milbank records all expenses incurred in connection with the performance of professional services.

83.  In connection with the reimbursement of expenses, Milbank's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients. The expenses charged to Milbank's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research and transcription costs.

84.  Milbank charges the Committee for these expenses at rates consistent with those charged to Milbank's other bankruptcy clients, which rates are equal to or less than the rates charged by Milbank to its non-bankruptcy clients.

85.   In providing or obtaining from third parties services which are reimbursable by clients, Milbank does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

86.   Milbank regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.

87.   Attorneys at Milbank have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of any air travel expenses in excess of coach fares.  Throughout the Total Compensation Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## NOTICE

88.   Pursuant to the Plan, the Confirmation Order and the Interim Compensation Order, notice of this Motion has been given to bankruptcy counsel to the Debtors, corporate counsel to the Debtors, counsel to the agent for the Debtor's post-petition secured lender, the United States Trustee, the Fee Examiner, all other parties on the Debtors' Master Service List and all other parties not otherwise listed that have requested receipt of notices in these cases.  In light of the nature of the relief

44

requested herein, the Committee requests that such notice be deemed adequate and sufficient.

## CONCLUSION

WHEREFORE, Milbank respectfully requests the Court enter an Order, substantially in the form attached hereto as Exhibit C, (a) allowing Milbank (i) interim compensation for professional services rendered during the Sixth Interim Compensation Period in the amount of $291,181.72 and for reimbursement of expenses incurred in connection with such services in the amount of $23,679.73; (ii) final approval of all fees for professional services rendered from March 1, 2005 through and including November 21, 2006 in the amount of $6,125,540.22, and for reimbursement of expenses incurred in connection with such services in the amount of $473,461.66, which consists of (A) one hundred percent (100%) of the compensation previously approved by the Court, on an interim basis, for professional services rendered during Total Compensation Period, in the amount of $5,834,358.50, (B) one hundred percent (100%) of the reimbursement of incurred expenses incurred during the Total Compensation Period and previously approved by the Court on an interim basis, in the amount of $449,781.93; (C) one hundred percent (100%) of the compensation sought pursuant to the Interim Fee Statements, but not previously approved by the Court, in the amount of $291,181.72;

45

and (D) one hundred percent (100%) of the reimbursement of
incurred expenses sought pursuant to the Interim Fee Statements,
but not previously approved by the Court, in the amount of
$23,679.73; (b) authorizing and directing the Debtors to pay to
Milbank $43,871.32, which is the total amount outstanding to
Milbank and unpaid by the Debtors pursuant to the Interim
Compensation Order for services rendered and expenses incurred
during the Total Compensation Period; and (c) granting such
further relief as is just and proper.

Dated: January 22, 2007

                              MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

                              By: /s/ Matthew S. Barr
                                  Matthew S. Barr (MB 9170)
                                  Michael E. Comerford (MC 7049)
                                  1 Chase Manhattan Plaza
                                  New York, New York 10005
                                  (212) 530-5000

                                  Co-counsel for Official
                                  Committee of Unsecured
                                  Creditors of Winn-Dixie Stores,
                                  Inc., et al.