## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Reorganized Debtors. | ) | Jointly Administered |

## NOTICE OF FILING

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates, as reorganized debtors, give notice of filing the attached Response of Jenner & Block LLP to Fee Examiner's Final Audit Reports for First and Second Interim Fee Applications.

Dated:  January 23, 2007


SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By    _s/ D. J. Baker_
        D. J. Baker
        Sally McDonald Henry
        Rosalie Walker Gray

Four Times Square
New York, New York 10036
(212) 735-3000
(917) 777-2150 (facsimile)
djbaker@skadden.com

Co-Counsel for Reorganized Debtors

00554868


SMITH HULSEY & BUSEY

By    _s/ Cynthia C. Jackson_
        Stephen D. Busey
        James H. Post
        Cynthia C. Jackson (FBN 498882)

225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., *et al.*, | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

**RESPONSE OF JENNER & BLOCK LLP**
**TO FEE EXAMINER'S FINAL AUDIT REPORTS**
**FOR FIRST AND SECOND INTERIM FEE APPLICATIONS**

Jenner & Block LLP ("Jenner & Block"), special insurance litigation counsel to Winn-Dixie Stores, Inc. ("Winn-Dixie"), submits this Response to the January 16, 2007 "Final Audit Reports" prepared by fee examiner Stuart, Maue, Mitchell & James, Ltd. ("Stuart Maue") for Jenner & Block's First and Second Interim Fee Applications.

**Background**

1.      In July 2004, Winn-Dixie retained Jenner & Block to represent it in connection with various insurance-related matters, including advising Winn-Dixie with regard to insurance procurement and administration, insurance coverage analysis, and management of certain non-litigated claims for insurance coverage. For internal administration and billing purposes, and accordingly for purposes of this Application, Jenner & Block refers to this as the "Insurance Advice" matter.

2.      In or about early 2005, Winn-Dixie began consulting Jenner & Block concerning a dispute with one of Winn-Dixie's property insurers, XL Insurance America, Inc. ("XL"). In August 2005, Jenner & Block filed suit against XL on behalf of Winn-Dixie, seeking declaratory relief and damages stemming from XL's refusal to cover what Winn-Dixie asserted was XL's portion of the substantial property damage losses Winn-Dixie sustained in the 2004 hurricane

season; and later amended the complaint to allege alternative contract and tort claims against Marsh USA, Inc. ("Marsh"), then Winn-Dixie's property insurance broker and advisor. *Winn-Dixie Stores, Inc. v. XL Ins. America, Inc. and Marsh USA, Inc.*, No. 05-CV-2100-JEC (N.D. Ga.). For internal administration and billing purposes, and accordingly for purposes of this Response, Jenner & Block refers to this as the "XL/Marsh Litigation" matter.

3.     Before May 4, 2006, Jenner & Block had been providing its services in its ordinary course professional capacity, pursuant to the Court's March 4, 2005 Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business ("the OCP Order").[1] But as a result of increased activity in the XL/Marsh Litigation, and the expectation that the XL/Marsh Litigation would proceed to trial, the cost of services Winn-Dixie required from Jenner & Block began to exceed the monthly and case caps provided in the OCP Order. Accordingly, to ensure that Winn-Dixie continued to receive the benefit of Jenner & Block's counsel with respect to the XL/Marsh Litigation and. to the extent needed, other insurance-related matters, in April 2006 Winn-Dixie applied for the Court's approval to retain Jenner & Block as special insurance litigation counsel.[2] On May 4, 2006, the Court entered an order pursuant to section 327(e) of the Bankruptcy Code, approving Winn-Dixie's retention of Jenner & Block as special insurance litigation counsel, for purposes of Jenner & Block's

---

[1] *See* Third Submission of Completed Retention Questionnaire of Ordinary Course Professionals Included in the Seventh Supplement to Exhibit A Pursuant to the Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business (Dec. 9, 2005) (Docket No. 4570) (submitting completed ordinary course professional retention questionnaire for Jenner & Block); Seventh Supplement to Exhibit A of the Motion for Approval of Retention and Compensation of Professionals Used in the Ordinary Course of Business (Aug. 15, 2005) (Docket No. 3006) (adding Jenner & Block as an ordinary course professional).

[2] *See* Application for Authority to Retain Jenner & Block LLP as Special Insurance Litigation Counsel to the Debtors (Apr. 16, 2006) (Docket No. 7148).

continued prosecution of the XL/Marsh Litigation, as well as to continue advising Winn-Dixie

with regard to other insurance-related matters as necessary.[3]

### Jenner & Block's First and Second Interim Fee Applications

4.     In its First Interim Fee Application submitted on July 21, 2006 (Docket No. 9392

("First Application")), Jenner & Block sought interim compensation in the amount of

$606,419.25 for professional services and $53,156.66 for reimbursement of expenses for the

period May 9, 2005 to May 31, 2006.  Jenner & Block received no objections to its monthly fee

statements or to its First Interim Application, and by order entered on August 10, 2006, the Court

approved the First Interim Application.[4]

5.     In its Second Interim Application, submitted to the Court on November 22, 2006

(Docket No. 12781 ("Second Application")), Jenner & Block sought interim compensation in the

amount of $426,614.50 for professional services and $27,424.43 for reimbursement of expenses

for the period June 1, 2006 to September 30, 2006.  Jenner & Block received no objections to its

monthly fee statements or its Second Interim Application, and by order entered on December 14,

2006, the Court approved the Second Interim Application.[5]

### Fee Examiner's Retention and Reports

6.     On December 14, 2005, the Court approved Winn-Dixie's application to employ

and retain Stuart, Maue, Mitchell & James Ltd. as fee examiner (Docket No. 4599).  In

accordance with the order approving Stuart Maue's retention, Stuart Maue does not make any

---

[3] See Order Authorizing Debtors to Retain Jenner & Block LLP as Special Insurance Litigation Counsel (May 4, 2006) (Docket No. 7601).

[4] See Order Allowing Compensation and Reimbursement of Expenses of Professionals (August 10, 2006) (Docket No. 10159).

[5] See Order Allowing Compensation and Reimbursement of Expenses of Professionals (December 14, 2006) (Docket No. 13110).

determination or recommendations in its reports as to either (a) the reasonableness or necessity of the requested fees and expenses or (b) the amount of fees and expenses to be allowed or disallowed.

7.    Stuart Maue issued an "Initial Audit Report" dated September 26, 2006 concerning Jenner & Block's First Interim Fee Application; and an "Initial Audit Report" dated November 30, 2006 concerning Jenner & Block's Second Interim Fee Application.  On December 22, 2006, Jenner & Block submitted a combined Response which included further explanation and clarification of the fees and expenses intended to address the issues Stuart Maue raised in both of its Initial Audit Reports.  Stuart Maue's "Final Audit Reports," issued on January 16, 2007, reference and selectively quote from Jenner & Block's Response, but Stuart Maue did not otherwise revise its observations or conclusions as a result of the explanation, clarification and information supplied in our Response; and Stuart Maue continues to base its Final Reports "on the Applications as filed with the Court and not on subsequent amended fee entries that have not been filed."  (Final Reports at 2.)  Accordingly, Jenner & Block hereby submits its Response to the Court.

### Jenner & Block's Response

8.    The issues Stuart Maue raised in its reports do not preclude the Court's approval of the fees and expenses requested.  We note that the reports do not include any analysis of the difficulty of Jenner & Block's assignments; the efforts by Jenner & Block to advance and achieve Winn-Dixie's goals; the depth of experience and expertise that Jenner & Block made available to Winn-Dixie with regard to its specialization in insurance-related matters; and the effectiveness of Jenner & Block's representation.

9.      In particular, the now-settled XL/Marsh Litigation was a hotly-contested, multi-million dollar commercial dispute that involved complex and unique issues concerning interpretation and possible reformation of XL's insurance contract, coupled with similarly complex and unique issues concerning Marsh's professional service obligations to Winn-Dixie. Responsible handling of XL/Marsh Litigation required that Jenner & Block devote substantial time and resources to the matter, sustaining the intensive effort necessary to bring the matter to conclusion within the compressed period dictated by court order.

10.     As a result of the services rendered by Jenner & Block, Winn-Dixie was able to settle the XL/Marsh Litigation just over a year after it was filed, on highly favorable terms, and without the expense and burden of completing trial preparation and conducting a trial. (*See* Debtors' November 9, 2006 Motion for Order Approving Settlement with XL Insurance America, Inc. and Marsh USA, Inc. (Docket No. 12444).) Because the Court agreed the settlement was in the best interests of the Debtors' estates, the Court approved the settlement in an order entered on November 30, 2006 (Docket No. 12898).

11.     The balance of this Response tracks substantive portions of the Stuart Maue Final Reports. The Final Report on Jenner & Block's First Interim Fee Application is referred to herein as the "First Report," and the Final Report on Jenner & Block's Second Interim Fee Application is referred to herein as the "Second Report."

### Fees

12.     *"Recomputation of Fees."* As the First Report correctly states (p. 4), we advised Stuart Maue before issuance of its Initial Report on Jenner & Block's First Interim Fee Application that although the monthly fee statements submitted in connection with the First Interim Fee Application included fees totaling $642,554.25 and expenses totaling $54,311.46,

Jenner & Block had previously received from Winn-Dixie a partial payment for those statements in the amount of $36,135.00 in fees and $1,154.80 for expenses. Thus when the Court approved the First Interim Fee Application in August 2006, it correctly awarded Jenner & Block the amounts we actually sought: $606,419.25 for fees and $53,156.66 for expenses. Stuart Maue's First Report nonetheless states that because "the fee and expense detail included in the Application did not reflect the payments," Stuart Maue based its report on "the fees and expenses computed by Stuart Maue," apparently meaning the full amount of the invoiced fees and expenses, without crediting the Winn-Dixie partial payment. Jenner & Block reiterates that it does not seek compensation or reimbursement for sums it confirmed to Stuart Maue and to the Court were previously paid by Winn-Dixie, as the Court expressly recognized in its Order approving the First Interim Application (Order Allowing Compensation and Reimbursement of Expenses of Professionals (August 10, 2006) (Docket No. 10159) at ¶ 9 n.1).

13.     *"Potential Double Billing."* The First Report (p. 6) identifies one instance in which an entry of .30 hours ($82.50 in associated fees) appears to have inadvertently been duplicated in one of the bills. Jenner & Block is reducing its final request to correct for this apparent clerical error.

14.     *Hourly Rate Increases.* Stuart Maue correctly notes (First Report p. 8; Second Report pp. 6-7) that Jenner & Block raised its rates on January 1, 2006, during the period of the First Interim Application. Jenner & Block management evaluates and revises the firm's fee schedules annually at each January 1 to reflect its assessment of the current market value of the services offered by firm professionals in light of their experience and skill levels; and inflationary pressures impacting the overhead required to provide these legal services. Winn-

Dixie received advance notification of this practice at the outset of the engagement, by way of

Jenner & Block's July 13, 2004 engagement letter, which stated:

> [Jenner & Block's] charges will be based substantially upon the
> rates for our lawyers and staff in effect at the time the services are
> rendered.  [Jenner & Block's] billing rates are subject to
> adjustment on January 1 of each succeeding year.

A copy of the letter, as signed and agreed to by Winn-Dixie, is attached as Exhibit A.

15.    We submit that Jenner & Block's hourly rates, both before and after the

January 1, 2006 rate increases, were well within the range of reasonableness for the substantial

levels of experience, expertise and resources the firm makes available to its clients, including

Winn-Dixie; and we submit that both before and after the January 1, 2006 rate increases, Jenner

& Block's hourly rates were at or below rates charged by comparable firms in the fiercely

competitive nationwide market for specialized legal services in which Jenner & Block operates.

16.    *"Vaguely Described" Conferences and Other Activities.*  Stuart Maue's Reports

identify activity descriptions it considers to be insufficiently specific.  (First Report at pp. 10-12

(1.1 hours with $462.00 in associated fees for "vaguely described conferences," and 50 hours

with $16,129.00 in associated fees for "other vaguely described activities"); Second Report at

pp. 8-9 (42.68 hours with $19,276.92 in associated fees for "vaguely described activities").)

Jenner & Block submits that its fee statements supply ample basis for meaningful review of its

services, particularly when the individual time entries identified by Stuart Maue are considered

in the context of the matters the firm was handling, as well as other time entries.

17.    However, in an effort to resolve the issues Stuart Maue raised in its Initial

Reports, Jenner & Block submitted the more detailed narrative descriptions set forth on

Exhibit B to this Response.  By way of reply, Stuart Maue stated in each of its Final Reports that

"[m]ost of these fee revised entries would no longer be considered vaguely described ...."  (First

Report p. 12; Second Report p. 10.) The Final Reports do not identify any of the revised entries that Stuart Maue would still consider "vaguely described."

18.    *"Blocked Entries."* Stuart Maue's Reports identified certain entries which it states impermissibly "combined tasks into an entry with a single time increment." (First Report at p. 13 (11.2 hours with $3,196.00 in associated fees); Second Report at p. 10 (121.3 hours with $41,535.50 in associated fees).)

19.    In an effort to resolve the issues Stuart Maue raised in its Reports, Jenner & Block submitted the revised entries set forth on Exhibit C to this Response. By way of reply, Stuart Maue stated in its First Report (p. 13) that "[t]he entries as revised would no longer be blocked;" and in its Second Report (p. 11) stated that "[m]ost of the entries as revised would no longer be blocked." The Final Reports do not identify any of the revised entries that Stuart Maue would still consider to be "blocked."

20.    *"Intraoffice Conferences."* The Reports identify entries that describe intraoffice conferences. (First Report at pp. 14 (91.85 hours with $37,219.00 in associated fees, which according to Stuart Maue "represents 6% of the total fees requested in the [First] Application"); Second Report at p. 11-12 (53.5 hours with $18,788.17 in associated fees, which according to Stuart Maue "represents 4% of the total fees requested in the [Second] Application").) Representation of parties in complex commercial litigation such as the XL/Marsh Litigation cannot possibly be handled by a single attorney, and clients understand and expect that a team of professionals and paraprofessionals is necessary to provide responsible representation. As the Applications state, the Jenner & Block teams for the XL/Marsh Litigation and the Insurance Advice matter were each comprised of an appropriately limited number of attorneys selected for their substantial experience and expertise in insurance litigation and analysis, assisted where

appropriate by similarly-qualified paraprofessionals. The Jenner & Block professionals and paraprofessionals who were members of those teams conferred with one another to properly coordinate their services and to ensure there was no unnecessary duplication of effort. Stuart Maue's Reports correctly observe that such conferences are "necessary and appropriate." Jenner & Block submits that its fee statements amply establish (a) the necessity of its intraoffice conferences, particularly when the individual time entries identified by Stuart Maue are considered in the context of the matters the firm was handling, as well as other time entries; and (b) the fact that "multiple attendance" at such conferences was appropriately limited to circumstances which in the professionals' judgment required coordination among the participants.

21.    *"Nonfirm Conferences, Hearings and Other Events."* Stuart Maue's Reports note "multiple attendance" at "nonfirm conferences, hearings and other events," and identify the hours and fees attributable to timekeepers other than "the one who appeared to be the most responsible at the event" -- a determination Stuart Maue says it makes based on "the one who bills the most fees and/or hours."

22.    Jenner & Block notes as an initial matter that it prosecuted the entire XL/Marsh Litigation to conclusion without the need for any attorney to make even a single in-person appearance before the Georgia court presiding over the litigation; and that Jenner & Block staffed each of the depositions it conducted or defended with a single attorney.

23.    In the First Report (p. 15), Stuart Maue identified 15.40 hours with $8,025.00 in associated fees for timekeepers other than "the one who appeared to be the most responsible at the event." As is established by those professionals' own detailed narrative entries, the XL/Marsh Litigation required coordination among the Jenner & Block professionals in

conferences with Winn-Dixie, its experts, its Georgia counsel, opposing counsel and others; and "multiple attendance" was appropriately limited to circumstances which in the professionals' judgment required that coordination.

24.    In the Second Report (p. 13), Stuart Maue identifies 26 hours with $15,940 in associated fees for timekeepers other than "the one who appeared to be the most responsible at the event." As is established by those professionals' own detailed narrative entries, all of that work related to the mediation the parties conducted in the case in September 2006, which required extensive preparation by and participation of the professionals identified, and which ultimately resulted in a resolution of the case on terms highly favorable to Winn-Dixie. Jenner & Block submits that all of the identified charges in this category were necessarily and reasonably incurred.

25.    *"Personnel Who Billed 10.00 or Fewer Hours."*  The First Report (pp. 16-17) identifies three timekeepers who billed 10 or fewer hours, representing a total of 4.5 hours with $1,052.00 in associated fees. The Second Report (pp. 14-15) identifies five timekeepers (including one also identified in the First Report) who billed 10 or fewer hours, representing a total of 13.6 hours with $2,086.00 in associated fees. The two Reports identified a total of seven timekeepers in this category, none of whom required orientation or "getting up to speed" on the details of the case, and all of whom contributed to the case's advancement. Three of the timekeepers are specialists in litigation applications of computer technology, who were involved in preparation and processing of email and other electronic documents for purposes of production in discovery -- work which required the specialized technical skills of these individuals, but did not require any detailed knowledge of the case. Two of the timekeepers are research librarians who assisted on isolated projects which did not require detailed knowledge of

the case to perform their specialized services; and the remaining two are paraprofessionals who also assisted in isolated matters. Jenner & Block submits that the associated charges were reasonably and necessarily incurred.

26.     *"Long Billing Days."* The First Report (p. 18) identifies 78.70 hours with $34,265.50 in associated fees in connection with six days in which a professional billed more than 12 hours. The Second Report (p. 16) identifies 105.40 hours with $37,874.50 in associated fees in connection with eight days in which a professional billed more than 12 hours. Jenner & Block notes that the U.S. Trustee Guidelines do not state or suggest that billing in excess of 12 hours per day is impermissible, or that the total charges for any such day must be disallowed, or even that the charges exceeding 12 hours in a day must be disallowed. Here, the charges reflect the exigencies of the XL/Marsh Litigation, in which (as Stuart Maue correctly recognizes is appropriate), the professionals "periodically work[ed] extraordinarily long hours without many breaks because of the demands of the representation."

27.     All of the instances involving "long days" relate to circumstances which are specifically identifiable based on the professionals' detailed narrative descriptions of their work. Under pressure of the tight time constraints dictated by a court-ordered schedule, the Jenner & Block professionals briefed two rounds of extensive and potentially-dispositive summary judgment motions (one round before discovery, and one after), conducted a full program of written and oral discovery of both fact and expert witnesses, prepared mediation briefs, began trial preparation and brought the case to conclusion by way of favorable settlement -- all within a comparatively compressed period of just over a year from initial filing of this complex commercial litigation in August 2005 to dismissal of the case in November 2006. In that light, the instances of "long days" are comparatively isolated, and represent a comparatively small

proportion of the overall hours and fees.  Further, several of the "long day" instances identified

in the First Report include travel time (a subject which is addressed separately below).  Jenner &

Block submits that all of these charges were reasonably and necessarily incurred.

28.     *"Administrative/Clerical Activities by Paraprofessionals."*  The First Report

(pp. 19-20) identifies 179.45 hours with $28,445.50 in associated fees as administrative and

clerical activities performed by paraprofessionals.  The Second Report (p. 18) identifies 166.28

hours with $25,055.83 in associated fees in that same category.  Activities identified in this

category include (a) assembling and organizing litigation documents; (b) preparing documents

for production in discovery, including the processing of email and other electronic documents;

(b) preparation of a log of privileged documents; (c) preparation of court filings; (d) research and

retrieval of pleadings and other litigation documents; and (e) creating and managing computer

databases of deposition transcripts, exhibits and other litigation documents.  Jenner & Block

submits that these activities require the exercise of paraprofessional judgment, *see In re Busy*

*Beaver Bldg Centers, Inc.*, 19 F.3d  833 (3d Cir. 1994), and were properly performed by

paraprofessionals who have specialized skills and experience for which secretaries and other

clerical staff are not trained.

29.     Moreover, Jenner & Block's use of paraprofessionals for these activities is fully

consistent with the firm's practice with its other clients, as well as with market practice

generally.  *Id.* at 849 ("the bankruptcy court should review fee applications not for whether each

particular service undertaken by a paralegal is clerical or paraprofessional by nature, but for

whether non-bankruptcy attorneys typically charge and collect from their clients fees for that

particular service when performed by a member of that profession, and the rates charged and

collected therefor").  In any case, "the classification of services as clerical or non-clerical does

not decide the question of compensability under § 330: clerical services may be compensated in the proper context." *Id.* at 851.

30.    Jenner & Block submits that its fee statements on their face amply establish the compensability of the fees Stuart Maue identifies in this category; and that all of the fees were necessarily and reasonably incurred.

31.    *"Administrative/Clerical Activities by Professionals."* The First Report (p. 20) identifies 5.93 hours with $2,354.33 in associated fees as administrative and clerical activities performed by professionals. The Second Report (p. 18) identifies 14.38 hours with $5,482.92 in associated fees in that same category. One entry (2.5 hours, $1,212.50) concerns preparation of one of the Interim Fee Applications, a subject which is addressed separately section below. Other entries concern preparing and supervising court filings; research concerning the court's procedural filing requirements; intraoffice conferences and other work concerning case planning and staffing; and working with opposing counsel in setting up depositions and a mediation -- all of which Jenner & Block respectfully submits are activities which require the exercise of professional judgment, which are thus properly performed by the attorneys working on the XL/Marsh Litigation, and which in this case were supported by sufficiently detailed narrative descriptions. The associated charges were reasonably and necessarily incurred.

32.    *Travel.* The Reports identify fee charges for what Stuart Maue characterizes as non-working travel, totaling 30.2 hours and $14,114 in fees for the combined periods of the First and Second Interim Fee Applications. (First Report p. 21; Second Report p. 19.) Jenner & Block submits that the travel was necessary for the intensive deposition program conducted in the XL/Marsh Litigation, and that the charges (which in the aggregate comprise less than 1% of hours and approximately 1.3% of fees for the combined periods of the First and Second Interim

Applications) are reasonable. *See In re The Academy, Inc.*, 2005 WL 950642, at *2 (S.D. Fla. Apr. 1, 2005) ("As noted in *In re Cano*, 122 B.R. 812, 814 (Bankr. N.D. Ga.1991): 'Non-bankruptcy attorneys typically bill their travel time at the full hourly rate because it precludes them from engaging in other billable professional work.'")

33.    *"Jenner & Block Retention and Compensation."*  Stuart Maue's Reports identify entries relating to preparation of a proposed fee agreement with Winn-Dixie, and relating to preparation of the interim fee applications.  (First Report p. 22; Second Report p. 20.)  Although Bankruptcy Code section 330(a)(6) specifically contemplates that the debtors' counsel may be awarded compensation for preparation of a fee application ("Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." 11 U.S.C. § 330(a)(6)), Jenner & Block will reduce its final request by the amount of the charges the Reports identify in this category (a total of $2,952.50).

## Expenses

34.    *Travel Expenses.*  Stuart Maue's First Report (p. 25) accurately notes that Jenner & Block omitted from its First Interim Fee Application documentation of travel expenses incurred and billed during the period of that Application.  We submitted that documentation as part of our Response to Stuart Maue's Initial Report on the First Interim Fee Application, and are now submitting that documentation to the Court as Exhibit D to this Response.  The expenses -- all of which were necessarily incurred in connection with out-of-town deposition discovery in the XL/Marsh Litigation, and all of which are reasonable in amount -- are categorized as follows:

| | |
|---|---|
| Airfare | $5,030.99 |
| Lodging | $1,942.06 |
| Meals | $239.64 |
| Phone | $13.11 |
| Ground transportation | $634.09 |
| **Total** | **$7,859.89** |

The Exhibit D documentation represents $35.00 less than the sum reflected on the corresponding Jenner & Block fee statement ($7,894.89), possibly due to clerical error. Jenner & Block is reducing its final request for reimbursement of expenses by $35.00.

35.    *"Overhead Expenses."* The First Report (p. 28) and the Second Report (p. 26) identifies as "overhead expenses" the cost of local meal charges incurred in connection with meetings with Winn-Dixie's expert witness, and a deposition, conducted at Jenner & Block's offices. The U.S. Trustee Guidelines do not disallow such expenses, and Jenner & Block submits they were necessarily incurred and reasonable in amount (totaling $87.59).

The Second Report (p. 26) also identifies postage charges as "overhead," but here, too, the U.S. Trustee Guidelines do not disallow such expenses. Jenner & Block submits that these charges were necessarily incurred and reasonable in amount (totaling $47.46); they are directly attributable to Winn-Dixie through Jenner & Block's billing system; and they are among the types of expenses which Jenner & Block would ordinarily recover from a non-bankrupt client. *See In re Mulberry Phosphates, Inc.,* 151 B.R. 948, 951 (M.D. Fla. 1992).

36.    *Expert Witness Fees and Expenses.* Stuart Maue correctly notes (First Report pp. 28-29) that Jenner & Block's First Interim Fee Application included expert fees and expenses totaling $12,625.00. Additional expert witness fees and expenses totaling $6,000.78 were

15

initially advanced by Jenner & Block and later credited when Winn-Dixie reimbursed Jenner & Block for that amount. These fees and expenses were reasonably and necessarily incurred. Winn-Dixie engaged two former insurance brokers as consultants to review and provide their opinions and input concerning the professional negligence claim that Winn-Dixie asserted against Marsh in the XL/Marsh Litigation. One was selected to serve as expert witness, and he provided, among other things, an affidavit attesting to the merit of the professional negligence claim (which was appended as an exhibit to Winn-Dixie's complaint, as required by Georgia statute), as well as two expert reports supporting the professional negligence claim. Copies of the consultants' invoices for their charges are attached hereto as Exhibit E.

37.    *Court Appearance Fee.*  The Second Report (p. 27) notes a request for reimbursement of a court appearance fee in the amount of $150.00, but states that "[n]o further information was provided with regard to this charge." The charge was for Jenner & Block partner John Wolfsmith to enter his appearance as counsel for Winn-Dixie in the court presiding over the litigation, which was necessary to permit him to handle representation of Winn-Dixie at depositions and for other work on the case.

38.    *"Voided Corporate Document Expense."*  The Second Report (p. 28) notes our credit for "Voided Corporate Document Expense" in the amount of $771.10 in Invoice No. 9032004, dated July 17, 2006. The corresponding charge (which the Report indicates Stuart Maue failed to locate) was in the *prior month's* fee statement (Invoice No. 9031091, dated June 16, 2006), previously submitted as part of the First Interim Fee Application. This concerned a misidentified and duplicative court reporter charge, originally billed in error in the June 16, 2006 statement, and then reversed by way of the credit in the follow month's statement.

16

**Conclusion**

39.    Jenner & Block has performed substantial, necessary services for Winn-Dixie. We submit that the firm's fee statements supply ample basis for meaningful evaluation of the firm's fees and expenses, particularly with the additional information supplied by way of this Response. We further submit that the firm's fees and expenses were reasonably and necessarily incurred, subject to the reductions agreed to in this Response and in the firm's Final Fee Application.

Dated:  January 17, 2007

By:    _John H. Mathias, Jr._

      John H. Mathias, Jr.
      Christopher C. Dickinson
      JENNER & BLOCK LLP
      330 N. Wabash Avenue
      Chicago, Illinois 60611
      (312) 222-9350

## Certificate of Service

The undersigned attorney hereby certifies that on January 17, 2007, he caused copies of the foregoing **Response of Jenner & Block LLP to Fee Examiner's Final Audit Reports for First and Second Interim Fee Applications** to be served on the parties listed on the attached Service List by causing copies of same to be deposited with the U.S. Postal Service at 330 N. Wabash Avenue, Chicago, Illinois 60611, in properly addressed envelopes with correct first-class postage prepaid.

By:

John H. Mathias, Jr.
Christopher C. Dickinson
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois 60611
(312) 222-9350

Special Insurance Litigation Counsel
to the Debtors

# WINN-DIXIE SERVICE PARTIES

Office of the United States Trustee
Attn: Kenneth C. Meeker
135 West Central Boulevard, Room 620
Orlando, FL 32801
Phone: 407-648-6301
Fax: 407-648-6323
ken.meeker@usdoj.gov

Office of the United States Trustee
Attn: Elena L. Escamilla
135 West Central Boulevard, Room 620
Orlando, FL 32801
Phone: 407-648-6465
Fax: 407-648-6323
elena.l.escamilla@usdoj.gov

Otterbourg, Steindler, Houston & Rosen, P.C.
Attn: Jonathan N. Helfat
230 Park Avenue, 29th Floor
New York, NY 10169
Phone: 212-661-9100
Fax: 212-682-6104
jhelfat@oshr.com

Milbank, Tweed, Hadley & McCloy LLP
Attn: Matthew S. Barr
1 Chase Manhattan Plaza
New York, NY 10005
Phone: 212-530-5000
Fax: 212-530-5219
mbarr@milbank.com

Winn-Dixie Stores, Inc.
Attn: Laurence B. Appel
5050 Edgewood Court
Jacksonville, FL 32254-3699
Phone: 904-783-5000
Fax: 904-783-5059
larryappel@winn-dixie.com

Winn-Dixie Stores, Inc.
Attn: Jay F. Castle
5050 Edgewood Court
Jacksonville, FL 32254-3699
Phone: 904-783-5000
Fax: 904-783-5059
jaycastle@winn-dixie.com

Skadden, Arps, Slate, Meagher & Flom LLP
Attn: D. J. Baker
Four Times Square
New York, NY 10036
Phone: 212-735-2150
Fax: 917-777-2150
djbaker@skadden.com

King & Spalding LLP
Attn: Sarah Robinson Borders
191 Peachtree Street
Atlanta, GA 30303
Phone: 404-572-4600
Fax: 404-572-5149
sborders@kslaw.com

Stuart, Maue, Mitchell & James, Ltd.
Attn: Linda K. Cooper
3840 McKelvey Road
St. Louis, MO 63044
Phone: 314-291-3030
Fax: 314-291-6546
l.cooper@smmj.com



JUL 1 9 2004                    J E N N E R & B L O C K

July 13, 2004

Jenner & Block LLP          Chicago
One IBM Plaza               Dallas
Chicago, IL 60611-7603      Washington, DC
Tel 312 222-9350
www.jenner.com

John H. Mathias Jr.
Tel 312 923-2917
Fax  312 840-7317
jmathias@jenner.com

Rachel Lamberth, Esq.
Claims Manager - Risk Management
WINN-DIXIE STORES, INC.
5050 Edgewood Court
Jacksonville, FL   32254

**Re:    Insurance Coverage Advice re Upchurch (Mathis) and Forbes Claims**

Dear Rachel:

This is my firm's standard engagement letter.  It will confirm the engagement of Jenner & Block, LLP by Winn-Dixie Stores, Inc. ("Winn-Dixie"), and the basis of our representation.

Our client will be Winn-Dixie.  The scope of our engagement and duties to Winn-Dixie shall relate solely to legal advice concerning insurance coverage issues pertaining to the Upchurch (Mathis) and Forbes claims ("Engagement").  Winn-Dixie may limit or expand the scope of our Engagement from time to time, provided that any substantial expansion must be agreed to by us.

We will represent Winn-Dixie by using lawyers, paralegals and other professional staff who are best suited to handle this matter.  We will do everything we can to staff and handle this matter efficiently so that all charges incurred are reasonable.

For your information, illustrative hourly billing rates as of January 1, 2004 of attorneys who may offer service in this Engagement are set forth below:

| | |
|---|---|
| John H. Mathias, Jr. | $585.00 |
| Christopher C. Dickinson | $425.00 |
| Associates | $195.00-$365.00 |
| Paralegals | $140.00-$200.00 |
| Project Assistants | $100.00 |

By listing the names and rates above, I do not mean to say that all will actually be involved in this matter, but rather only to illustrate the ranges of rates of our firm's attorneys and paralegals.

Our charges will be based substantially upon the rates for our lawyers and staff in effect at the time the services are rendered.  Our billing rates are subject to adjustment on January 1 of each

Rachel Lamberth, Esq.
July 13, 2004
Page 2

JENNER&BLOCK

succeeding year. We will also charge for the out-of-pocket expenses and internal charges we incur in connection with our representation. We will indicate the rates charged and the hours performed by each attorney, law clerk, paralegal and staff on this matter as well as the details and rates of the expenses incurred and the internal charges.

You will receive monthly invoices on this matter from us for fees and the internal charges and expenses incurred and posted during the month, unless the amount is not significant. For each invoice, we will review our work records to insure that our charges are appropriate. We expect that all invoices will be paid within 30 days of receipt if work is to continue. If you have any questions or comments concerning our services or charges during the course of our representation, we encourage you to bring them to our attention immediately so that any problems can be resolved.

Either of us may terminate the Engagement at any time for any reason by providing written notice, subject on our part to the requirements of applicable rules of professional conduct. Unless previously terminated, our representation will terminate upon our sending you our final statement for attorney services rendered in this matter.

Jenner & Block represents many other companies and individuals. It is possible that during the time that we are representing Winn-Dixie, some of our present or future clients will have disputes with Winn-Dixie. Winn-Dixie agrees that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for Winn-Dixie even if the interests of such clients in those other matters are directly adverse. We agree, however, that Winn-Dixie's prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where, as a result of our representation of Winn-Dixie, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to Winn-Dixie's material disadvantage.

After completion of this Engagement, changes may occur in the applicable laws or regulations that could have an impact upon your future rights and liabilities. Unless Winn-Dixie engages us after completion of the matter to provide additional advice on issues arising from the matter, we will have no continuing obligation to advise Winn-Dixie with respect to future legal developments.

Because our representation is limited to a specific matter, our acceptance of this Engagement does not involve an undertaking to represent Winn-Dixie or its interests in any other matter unless specifically requested by Winn-Dixie and agreed upon by us.

Rachel Lamberth, Esq.
July 13, 2004
Page 3

**JENNER&BLOCK**

Please signify your agreement to the arrangement for legal services described in this letter by returning a signed copy of this letter to us within 10 days. We look forward to working with you on this matter.

Sincerely,

John H. Mathias Jr.

JHM/cs

AGREED:

By: _____

Its: Claims Manager - Winn-Dixie Stores, Inc.

# B

Exhibit B

Jenner & Block Revisions to "Vaguely Described" Conferences and Other Activities

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 06/16/2005 | Arias, J. | 1.00 | 1.00 | ~~Worked on~~ Drafted legal research memorandum to C. Dickinson re statutes of limitations, diversity of parties, reformation of contract issues, recovery of attorney fees, breach of fiduciary duty claim and ripeness. |
| 06/17/2005 | Arias, J. | 4.50 | 4.50 | ~~Worked on document review.~~ Reviewed Winn-Dixie files re property insurance procurement and hurricane claims. |
| 06/17/2005 | Arias, J. | 2.00 | 2.00 | ~~Worked on~~ Drafted legal research memorandum to C. Dickinson re statutes of limitations, diversity of parties, reformation of contract issues, recovery of attorney fees, breach of fiduciary duty claim and ripeness. |
| 06/18/2005 | Arias, J. | 4.20 | 4.20 | ~~Worked on legal research.~~ Legal research re statutes of limitations, diversity of parties, reformation of contract issues, recovery of attorney fees, breach of fiduciary duty claim and ripeness. |
| 06/18/2005 | Arias, J. | 3.00 | 3.00 | ~~Worked on~~ Drafted and edited legal research memorandum to C. Dickinson re statutes of limitations, diversity of parties, reformation of contract issues, recovery of attorney fees, breach of fiduciary duty claim and ripeness. |
| 06/19/2005 | Arias, J. | 2.00 | 2.00 | ~~Worked on legal research.~~ Legal research re statutes of limitations, diversity of parties, reformation of contract issues, recovery of attorney fees, breach of fiduciary duty claim and ripeness. |

| Date | Name | Entry Hours | Task Hours | Description |
|---|---|---|---|---|
| 06/19/2005 | Arias, J. | 2.00 | 2.00 | Conducted legal research re statutes of limitations, diversity of parties, reformation of contract issues, recovery of attorney fees, breach of fiduciary duty claim and ripeness. |
| 06/19/2005 | Arias, J. | 1.50 | 1.50 | Drafted ~~memorandum~~ and edited memorandum to C. Dickinson re statutes of limitations, diversity of parties, reformation of contract issues, recovery of attorney fees, breach of fiduciary duty claim and ripeness. |
| 06/20/2005 | Arias, J. | 3.00 | 3.00 | Conducted legal research re statutes of limitations, diversity of parties, reformation of contract issues, recovery of attorney fees, breach of fiduciary duty claim and ripeness. |
| 06/20/2005 | Arias, J. | 2.00 | 2.00 | Drafted ~~memorandum~~ and edited memorandum to C. Dickinson re statutes of limitations, diversity of parties, reformation of contract issues, recovery of attorney fees, breach of fiduciary duty claim and ripeness. |
| 06/21/2005 | Arias, J. | 4.00 | 4.00 | Reviewed ~~documents~~ Winn-Dixie files re property insurance procurement and hurricane claims. |
| 06/21/2005 | Arias, J. | 4.00 | 4.00 | ~~Worked on draft legal memorandum~~ Drafted and edited legal memorandum to C. Dickinson re statutes of limitations, diversity of parties, reformation of contract issues, recovery of attorney fees, breach of fiduciary duty claim and ripeness. |
| 06/29/2005 | Dickinson, C. | .50 | .50 | ~~Various email~~ Email exchanges between J. Castle and D. Bitter re preparation to file suit, and re demand to Marsh for production of Winn-Dixie property insurance procurement files. |
| 11/11/2005 | Arias, J. | 2.00 | 2.00 | ~~Worked on case planning~~ Drafted discovery requests to XL. |
| 11/11/2005 | Dickinson, C. | .30 | .30 | ~~Worked on case planning~~ Reviewed and analyzed strategy considerations in light of case status and schedule. |

2

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 11/11/2005 | Dickinson, C. | 1.30 | 1.30 | ~~Worked on~~ Drafted and edited memorandum to S. Morris and E. Smith re statutes of limitations issues. |
| 12/05/2005 | Mathias, Jr., J. | .30 | .30 | Reviewed draft proposed filings re opposition to XL's motion for summary judgment and XL's motion to stay discovery. |
| 12/06/2005 | Mathias, Jr., J. | .20 | .20 | ~~Worked on~~ Drafted and edited correspondence to T. Howell re motion for extension of briefing schedule. |
| 12/15/2005 | Mathias, Jr., J. | .50 | .50 | Reviewed C. Dickinson correspondence to client re Marsh documents. |
| 01/05/2006 | Mathias, Jr., J. | .20 | .20 | Reviewed correspondence from J. Castle re case status and schedule. |
| 02/07/2006 | Mathias, Jr., J. | .20 | .20 | Reviewed C. Dickinson correspondence to defendants' counsel re discovery. |
| 03/01/2006 | Arias, J. | 3.80 | 3.80 | Reviewed and selected Winn-Dixie e-mail correspondence re for document production in discovery and ~~witness~~ for preparation for ~~deposition~~ of deposition witnesses. |
| 03/03/2006 | Arias, J. | .20 | .20 | Reviewed C. Dickinson and Winn-Dixie correspondence re depositions and discovery requests. |
| 04/05/2006 | Mathias, Jr., J. | .30 | .30 | Reviewed C. Dickinson correspondence re status of discovery and re proposed negotiations re amount of loss. |
| 04/06/2006 | Mathias, Jr., J. | .30 | .30 | Reviewed C. Dickinson and J. Arias correspondence re draft answers to XL's Second Request to Admit and Interrogatories. |
| 04/11/2006 | Arias, J. | .30 | .30 | Reviewed C. Dickinson e-mail correspondence with client re discovery responses. |
| 04/12/2006 | Dickinson, C. | .80 | .80 | Reviewed and answered J. Arias and Winn-Dixie email re preparation of interrogatory responses. |
| 04/13/2006 | Dickinson, C. | .30 | .30 | Reviewed and answered T. Howell and K. Bruett email re deposition scheduling and arrangements. |

3

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 04/17/2006 | Dickinson, C. | .50 | .50 | Reviewed and answered T. Howell and K. Bruett email re deposition scheduling. |
| 04/17/2006 | Dickinson, C. | .30 | .30 | Reviewed and answered L. Castle and I. Wolfsmith email re payment of expert witness fees. |
| 04/18/2006 | Dickinson, C. | .30 | .30 | Reviewed and answered T. Howell and K. Bruett email re deposition scheduling. |
| 04/18/2006 | Dickinson, C. | .30 | .30 | Reviewed and answered L. Castle, D. Bitter and K. Romeo email re arrangements for production of warehoused documents. |
| 04/19/2006 | Dickinson, C. | .30 | .30 | Reviewed and answered L. Arias and client email re document production issues. |
| 04/20/2006 | Arias, J. | .50 | .50 | Drafted e-mail to C. Dickinson re Fox deposition topics. |
| 04/28/2006 | Mathias, Jr., J. | .30 | .30 | Reviewed C. Dickinson correspondence re results of depositions. |
| 05/01/2006 | Dickinson, C. | .20 | .20 | Reviewed and answered T. Howell and K. Bruett email re deposition scheduling. |
| 05/02/2006 | Dickinson, C. | .20 | .20 | Reviewed and answered T. Howell and K. Bruett email re deposition scheduling. |
| 05/12/2006 | Dickinson, C. | .50 | .50 | Reviewed and answered T. Howell and K. Bruett email re expert discovery scheduling and planning. |
| 05/16/2006 | Dickinson, C. | .30 | .30 | Reviewed and answered I. Wolfsmith email re experts' loss valuation analyses. |
| 05/19/2006 | Giannakopoulos, E. | 1.00 | 1.00 | Reviewed J. Arias's emails per R. Mill~~e~~re Winn-Dixie insurance coverage dispute for responsiveness to defendants' discovery requests. |
| 05/23/2006 | Wolfsmith, J. | .70 | .70 | Teleconference with C. ~~Bradbery~~ Brandyberry re professional negligence claim against Marsh. |

4

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 05/24/2006 | Wolfsmith, J. | .40 | .40 | Had conference call with B. Warren re Winn-Dixie loss valuation analysis. |
| 05/25/2006 | Dickinson, C. | .30 | .30 | Reviewed and answered J. Wolfsmith, T. Howell and K. Bruett email re expert discovery scheduling. |
| 05/25/2006 | Mathias, Jr., J. | .30 | .30 | Reviewed and responded to C. Dickinson and J. Wolfsmith correspondence re experts and discovery scheduling. |
| 06/01/2006 | Wolfsmith, J. | 5.90 | 5.90 | Matter: XL/Marsh Litigation<br><br>Worked on Drafted and edited Winn-Dixie privilege log entries. |
| 06/01/2006 | Wolfsmith, J. | .80 | .80 | Matter: XL/Marsh Litigation<br><br>Worked on Drafted and edited motion for substitution of counsel. |
| 06/03/2006 | Wolfsmith, J. | 3.80 | 3.80 | Matter: XL/Marsh Litigation<br><br>Worked on Reviewed and selected Winn-Dixie and Dempsey, Myers documents for supplemental production in response to defendants' discovery requests. |
| 06/04/2006 | Wolfsmith, J. | .40 | .40 | Matter: XL/Marsh Litigation<br><br>Worked on Reviewed and selected Winn-Dixie and Dempsey, Myers documents for supplemental production in response to defendants' discovery requests. |
| 06/05/2006 | Wolfsmith, J. | 3.70 | 3.70 | Matter: XL/Marsh Litigation<br><br>Worked on Drafted and edited Winn-Dixie privilege log entries. |
| 06/06/2006 | Wolfsmith, J. | .30 | .30 | Matter: XL/Marsh Litigation<br><br>Worked on Drafted and edited motion for substitution of counsel. |

5

| Date | Name | Entry Hours | Task Hours | Description |
|---|---|---|---|---|
| 06/06/2006 | Wolfsmith, J. | 5.50 | 5.50 | Matter: XL/Marsh Litigation<br>~~Worked on~~ Drafted and edited Winn-Dixie privilege log entries. |
| 06/08/2006 | Dickinson, C. | .50 | .50 | Matter: XL/Marsh Litigation<br>~~Worked on matters re~~ Reviewed and edited J. Wolfsmith draft motion for substitution of counsel. |
| 06/16/2006 | Wolfsmith, J. | 3.50 | 3.50 | Matter: XL/Marsh Litigation<br>~~Worked on second~~ Reviewed and selected Winn-Dixie and Dempsey, Myers documents for supplemental production in response to defendants' discovery requests. |
| 07/13/2006 | Mathias, Jr., J. | .10 | .10 | Matter: XL/Marsh Litigation<br>Reviewed J. Castle correspondence re selection of mediator (.1). |
| 07/14/2006 | Masters, L. | 4.00 |  | Matter: Insurance Advice<br>1. Reviewed 2006-2007 Winn-Dixie insurance binders, ~~package and policies received from client via~~ C. Dickinson ~~re 2006-2007 policies~~;<br>2. Exchanged telephone calls and emails with C. Dickinson re ~~same~~ 2006-2007 Winn-Dixie insurance binders and policies received from client;<br>3. Exchanged emails with D. Bitter re ~~same~~ 2006-2007 Winn-Dixie insurance binders and policies received from client;<br>4. ~~Worked re same.~~ Prepared analysis of 2006-2007 Winn-Dixie insurance binders and policies received from client. |
| 07/20/2006 | Masters, L. | 2.50 | 2.50 | Matter: Insurance Advice<br>~~Worked re binder~~ Reviewed and analyzed 2006-2007 Winn-Dixie insurance ~~policy review project~~ binders and policies. |

6

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 07/21/2006 | Masters, L. | 2.00 | 2.00 | Matter: Insurance Advice<br><br>~~Worked re policy and binder review~~ Reviewed and analyzed 2006-2007 Winn-Dixie insurance binders and policies. |
| 07/26/2006 | Masters, L. | 4.00 | | Matter: Insurance Advice<br><br>1. Reviewed ~~policies and binder for~~ analyzed 2006-2007; Winn-Dixie insurance binders and policies.<br><br>2. ~~Worked re same.~~ 2. Prepared written analysis of 2006-2007 Winn-Dixie insurance binders and policies. |
| 08/03/2006 | Dickinson, C. | 1.00 | | Matter: XL/Marsh Litigation<br><br>1. Supervised collection and preparation of pleadings, insurance policy, deposition transcripts and other materials for submission to mediator~~.~~<br><br>2. ~~including office~~ Office conferences with R. Miller<br><br>~~3.~~ re collection and preparation of pleadings, insurance policy, deposition transcripts and other materials for submission to mediator<br><br>3. Prepared correspondence ~~re same~~ to mediator transmitting pleadings, insurance policy, deposition transcripts and other materials. |
| 08/04/2006 | Mathias, Jr., J. | .10 | .10 | Matter: XL/Marsh Litigation<br><br>Reviewed C. Dickinson correspondence re status and scheduling for upcoming mediation. |

7

| Date | Name | Entry Hours | Task Hours | Description |
|---|---|---|---|---|
| 08/07/2006 | Masters, L. | 1.50 | | Matter: Insurance Advice<br><br>1. Received email from D. Bitter re call with Marsh on comments for 2006-2007 binders.<br><br>2. ~~worked re same.~~2. Reviewed and analyzed 2006-2007 Winn-Dixie insurance binders and policies in light of Marsh comments. |
| 08/07/2006 | Trujillo, E. | .20 | .20 | Matter: XL/Marsh Litigation<br><br>Reviewed J. Wolfsmith correspondence re additional production and reviewed the additional materials. |
| 08/10/2006 | Trujillo, E. | .20 | .20 | Matter: XL/Marsh Litigation<br><br>Reviewed C. Dickinson and J. Wolfsmith correspondence re XL's Motion for Summary Judgment. |
| 08/15/2006 | Masters, L. | 2.00 | | Matter: Insurance Advice<br><br>1. Prepared for and participated in conference call with D. Bitter and K. Scott re issues under Winn Dixie's 2006-2007 general liability insurance program;<br><br>2. ~~Worked re same.~~Reviewed and analyzed issues under Winn Dixie's 2006-2007 general liability insurance program. |
| 08/21/2006 | Dickinson, C. | .30 | .30 | Matter: XL/Marsh Litigation<br><br>~~Worked on case planning.~~Reviewed and analyzed strategy considerations in light of case status and schedule. |
| 09/08/2006 | Trujillo, E. | .10 | .10 | Matter: XL/Marsh Litigation<br><br>Reviewed C. Dickinson, J. Wolfsmith and J. Castle correspondence re loss values. |

| Date | Name | Entry Hours | Task Hours | Description |
|---|---|---|---|---|
| 09/13/2006 | Trujillo, E. | .10 | .10 | Matter: XL/Marsh Litigation<br><br>Reviewed C. Dickinson correspondence to D. Bitter re XL and Marsh's mediation statements. |
| 09/15/2006 | Trujillo, E. | .10 | .10 | Matter: XL/Marsh Litigation<br><br>Reviewed C. Dickinson and J. Wolfsmith correspondence re response to XL's Statement of Additional Facts. |
| 09/19/2006 | Trujillo, E. | .10 | .10 | Matter: XL/Marsh Litigation<br><br>Reviewed J. Wolfsmith correspondence re statutory rate of interest applicable to an insurance claim under Florida and Georgia law. |
| 09/22/2006 | Mathias, Jr., J. | .30 | .30 | Matter: XL/Marsh Litigation<br><br>Reviewed C. Dickinson correspondence re preparation for mediation. |
| 09/22/2006 | Trujillo, E. | .10 | .10 | Matter: XL/Marsh Litigation<br><br>Reviewed B. Warren correspondence re prejudgment interest calculations. |
| 09/24/2006 | Masters, L. | 1.30 | | Matter: Insurance Advice<br><br>1. Reviewed D. Bitter emails re Bass claim and insurance coverage (.20);<br><br>2. Reviewed excess insurance policies received from A. Castleberry (1.0);<br><br>3. Emailed A. Castleberry, with a copy to D. Bitter re ~~same~~ excess insurance policies (.1). |

9

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 09/27/2006 | Masters, L. | 3.00 | 3.00 | Matter: Insurance Advice<br><br>1. Participated in teleconferences with D. Bitter and L. Appel re issue of whether retention applies to six-year D&O tail policies for former directors and officers (1.0);<br><br>2. worked re same (2.0) Reviewed and analyzed issue of whether retention applies to six-year D&O tail policies for former directors and officers (2.0). |
| 09/28/2006 | Masters, L. | 6.00 | | Matter: Insurance Advice<br><br>1. Worked re Drafted memo on directors and officers insurance for former directors and officers under six year "tail" policies (3.5);<br><br>2. exchanged emails and telephone calls with L. Appel and D. Bitter re same directors and officers insurance for former directors and officers under six year "tail" policies (.50);<br><br>3. revised memo re directors and officers insurance for former directors and officers under six year "tail" policies (1.0);<br><br>4. teleconference with R. Barusch of Skadden re plan document's provisions re indemnification of former directors and officers (.30);<br><br>5. reviewed Winn-Dixie D&O policies re same indemnification of former directors and officers (.70). |
| 09/28/2006 | Mathias, Jr., J. | .20 | .20 | Matter: XL/Marsh Litigation<br><br>Reviewed C. Dickinson correspondence to client and team re status of settlement negotiations. |
| 09/28/2006 | Trujillo, E. | .10 | .10 | Matter: XL/Marsh Litigation<br><br>Reviewed C. Dickinson and J. Mathias correspondence re results of the mediation. |

C

Exhibit C

Jenner & Block Revised Apportionment of "Blocked Entries"*

| Date | Name | Entry Hours | Task Hours | Description |
|---|---|---|---|---|
| 05/11/2006 | Wolfsmith, J. | 5.40 | 2.50 | Worked on report of G. Rand. |
| | | | 2.50 | Including review of documents. |
| | | | 0.40 | Conference with B. Warren. |
| 05/19/2006 | Miller, R. | 5.80 | 2.80 | Reviewed production documents for documents and materials to be included in witness files. |
| | | | 3.00 | Reviewed and organized B. Kirkland, B. Whitton, C. Schlenke, and K. Meuse witness files for C. Dickinson use. |
| 06/01/2006 | Love, B. | 1.00 | 0.50 | Ran queries to select documents to be used for witness kits per specifications set by attorneys. |
| | | | 0.50 | Processed electronic files in preparation for document printing. |
| 06/02/2006 | Wolfsmith, J. | 2.50 | 1.50 | Reviewed materials re production of documents from Dempsey Myers. |
| | | | 1.00 | Worked on other document production issues. |
| 06/03/2006 | Love, B. | 1.80 | 0.50 | Investigated issues with electronic document discovery conversion of excel spreadsheets to Tiff format. |
| | | | 0.50 | Case consultation with J. Wolfsmith. |
| | | | 0.80 | Reviewed production protocol for native file production format with W. Jendo. |

* Stuart Maue identified certain of these same entries as "vaguely described." For each of those entries, Jenner & Block's original narrative description is set forth on this chart, and its revised description is set forth on Exhibit B.

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 06/05/2006 | Love, B. | 6.50 | 2.50 | Updated vendor files of scanned documents to standard unduplicated data. |
| | | | 0.30 | Office conference with E. Giannakopoulos re matching new documents to existing bibliographic coding and document annotation for privilege. |
| | | | 3.40 | Ran updates and data preparation for electronic document production. |
| | | | 0.30 | Office conference with J. Wolfsmith to identify correct redactions and corrections to selection for electronic document. |
| 06/06/2006 | Trujillo, E. | 1.20 | 0.40 | Drafted certificate of service of discovery of Winn-Dixie's objections to XL's Notice of Deposition of Glenn Rand. |
| | | | 0.80 | Arranged for electronic filing of the certificate and for service of the objections on opposing counsel. |
| 06/06/2006 | Trujillo, E. | 1.20 | 0.60 | Arranged for electronic filing of Motion for Substitution of Counsel and accompanying exhibit. |
| | | | 0.60 | and arranged for service of the motion/exhibit on opposing counsel. |
| 06/09/2006 | Miller, R. | 1.00 | 0.50 | Reviewed and organized deposition transcripts and exhibits. |
| | | | 0.50 | Updated deposition exhibits binders. |
| 06/15/2006 | Love, B. | 1.00 | 0.50 | Investigated and recommended options for document production of voice mail recordings in MP3 format. |
| | | | 0.50 | Continued investigation of gaps in the supplemental document production. |
| 06/16/2006 | Miller, R. | 1.30 | 0.70 | Prepared CD to be sent to opposing counsel. |
| | | | 0.60 | Organized deposition transcripts and exhibits. |

2

| Date | Name | Entry Hours | Task Hours | Description |
|---|---|---|---|---|
| 06/21/2006 | Love, B. | 2.00 | 0.70 | Ran extensive cross checks of the Opticon load files and the duplicate removals from the supplemental production. |
| | | | 0.80 | Documented the source of the initial errors and corrected all load files. |
| | | | 0.50 | Prepared revised production for corrected document production. |
| 06/21/2006 | Trujillo, E. | 0.70 | 0.30 | Reviewed Notice of Deposition of Neal Cason and attached exhibits. |
| | | | 0.40 | Served opposing counsel. |
| 06/28/2006 | Miller, R. | 2.50 | 1.30 | Reviewed case files for deposition exhibits for J. Wolfsmith use. |
| | | | 1.20 | Reviewed and organized same. |
| 06/30/2006 | Miller, R. | 2.50 | 1.00 | Reviewed production documents and deposition exhibit files for exhibits for use at J. Stempel deposition. |
| | | | 1.00 | Reviewed and organized files for use at deposition. |
| | | | 0.50 | Prepared same for J. Wolfsmith use. |
| 07/05/2006 | Miller, R. | 1.00 | 0.50 | Reviewed docket in related cases for information re expert testimony per J. Wolfsmith. |
| | | | 0.50 | Prepared information for J. Wolfsmith. |
| 07/11/2006 | Wolfsmith, J. | 4.10 | 2.00 | Reviewed deposition transcript of N. Cason and rough transcript of J. Stempel. |
| | | | 2.10 | Prepared summaries of depositions of N. Cason and J. Stempel. |
| 07/12/2006 | Wolfsmith, J. | 1.20 | 0.90 | Reviewed arguments for Summary Judgment. |
| | | | 0.30 | Communicated with E. Trujillo re same. |

3

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 07/12/2006 | Wolfsmith, J. | 2.90 | 1.00 | Reviewed additional materials for deposition of J. Stempel |
| | | | 1.60 | Additional preparation, including review of case book of J. Stempel. |
| | | | 0.30 | Discussed same with C. Dickinson. |
| 07/13/2006 | Masters, L. | 5.00 | 2.50 | Reviewed binders and insurance policies for 2006-2007 General Liability Program. |
| | | | 2.50 | Worked re same. |
| 07/14/2006 | Dickinson, C. | 0.70 | 0.40 | Teleconferenced with D. Bitter and L. Masters re Policy Review Project. |
| | | | 0.30 | Reviewed D. Bitter and L. Masters email re same. |
| 07/14/2006 | Masters, L. | 4.00 | 2.00 | Reviewed binders, package from C. Dickinson re 2006-2007 policies. |
| | | | 0.40 | Exchanged telephone calls and emails with C. Dickinson re same. |
| | | | 0.40 | Exchanged emails with D. Bitter re same. |
| | | | 1.20 | Worked re same. |
| 07/19/2006 | Wolfsmith, J. | 0.80 | 0.40 | Participated in conference call with B. Warren re additional work by Dempsey Myers. |
| | | | 0.40 | Communicated with J. Castle and D. Bitter re same. |
| 07/20/2006 | Miller, R. | 2.00 | 1.00 | Reviewed case files for documents for use at deposition per J. Wolfsmith. |
| | | | 1.00 | Reviewed and organized same. |

4

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 07/21/2006 | Miller, R. | 0.80 | 0.40 | Reviewed case files for consent order for J. Wolfsmith. |
| | | | 0.40 | Reviewed same. |
| 07/24/2006 | Masters, L. | 0.60 | 0.20 | Teleconferenced with C. Dickinson re call with D. Bitter. |
| | | | 0.20 | Exchanged emails re same. |
| | | | 0.20 | Teleconferenced with D. Bitter re insurance review project. |
| 07/26/2006 | Masters, L. | 4.00 | 2.00 | Reviewed policies and binders for 2006-2007. |
| | | | 2.00 | Worked re same. |
| 07/26/2006 | Miller, R. | 0.70 | 0.30 | Arranged for court reporter. |
| | | | 0.40 | Worked on gathering transcripts from Court Reporter. |
| 07/26/2006 | Miller, R. | 0.80 | 0.40 | Reviewed and organized case room. |
| | | | 0.40 | Organized production documents and case files. |
| 07/31/2006 | Miller, R. | 0.80 | 0.40 | Prepared transcripts for C. Dickinson use. |
| | | | 0.40 | Prepared transcripts for E. Trujillo use. |
| 07/31/2006 | Wolfsmith, J. | 0.90 | 0.30 | Conferred with C. Dickinson re Marsh privilege log. |
| | | | 0.30 | Communicated with K. Bruett and T. Howell re same, including review of Marsh privilege log. |
| | | | 0.30 | Communicated with C. Brandyberry re invoice. |
| 08/03/2006 | Dickinson, C. | 1.00 | 0.40 | Supervised collection and preparation of materials for submission to mediator. |
| | | | 0.30 | Office conferences with R. Miller. |
| | | | 0.30 | Prepared correspondence re same. |

5

| Date | Name | Entry Hours | Task Hours | Description |
|---|---|---|---|---|
| 08/03/2006 | Miller, R. | 2.20 | 1.70 | Prepared binder and CD of materials for use by mediator per C. Dickinson. |
| | | | 0.50 | Prepared same to be shipped. |
| 08/03/2006 | Trujillo, E. | 3.20 | 1.60 | Reviewed exhibits to determine which, if any, needed to be authenticated by Affidavit. |
| | | | 1.60 | Created chart of exhibits for Motion for Summary Judgment indicating where in the record they are authenticated. |
| 08/03/2006 | Wolfsmith, J. | 2.30 | 1.60 | Worked on issues re supplemental production. |
| | | | 0.40 | Conference call with B. Warren re additional production for Dempsey Myers |
| | | | 0.30 | Call to L. Hoey re same and re confidentiality agreement. |
| 08/07/2006 | Masters, L. | 1.50 | 0.30 | Received email from D. Bitter re call with Marsh on comments for 2006-2007 binders. |
| | | | 1.20 | Worked re same. |
| 08/07/2006 | Porcayo, J. | 1.50 | 0.50 | Created a new electronic discovery database and named it "Paper Documents". |
| | | | 0.50 | Loaded images from Encore Winn01 to the Paper Documents database. |
| | | | 0.50 | Quality checked. |
| 08/08/2006 | Miller, R. | 1.00 | 0.40 | Reviewed and organized documents received from expert. |
| | | | 0.30 | Prepared documents received from expert for production. |
| | | | 0.30 | Met with R. Warden re same. |

6

| Date | Name | Entry Hours | Task Hours | Description |
|---|---|---|---|---|
| 08/08/2006 | Miller, R. | 1.30 | 0.70 | Reviewed case files for materials for E. Trujillo use in Summary Judgment filings. |
| | | | 0.60 | Prepared same for E. Trujillo use. |
| 08/08/2006 | Trujillo, E. | 3.10 | 1.90 | Revised citations to the record in statement of undisputed material facts. |
| | | | 1.20 | Reviewed the record for support. |
| 08/09/2006 | Miller, R. | 0.80 | 0.40 | Met with E. Trujillo re preparation of Summary Judgment briefs. |
| | | | 0.40 | Gathered materials re same. |
| 08/10/2006 | Jendo, W. | 2.50 | 0.80 | Copied image and text files to network. |
| | | | 0.50 | Loaded same into new database, DMCO files. |
| | | | 0.50 | Ran bates check macro and image macro on same. |
| | | | 0.70 | Prepared and processed electronic documents for production in paper documents and DMCO files databases. |
| 08/10/2006 | Love, B. | 1.50 | 0.50 | Ran queries for selected responsive and not privileged document per attorney specifications. |
| | | | 0.50 | Prepared and processed designated collection for electronic document production. |
| | | | 0.50 | Copied new images and image registration data to disks. |
| 08/11/2006 | Miller, R. | 0.80 | 0.40 | Gathered document production from B. Love. |
| | | | 0.40 | Reviewed same for accuracy. |

7

| Date | Name | Entry Hours | Task Hours | Description |
|---|---|---|---|---|
| 08/11/2006 | Wolfsmith, J. | 0.70 | 0.30 | Reviewed comments on memo in support of Motion to Strike P. Evans. |
| | | | 0.40 | Reviewed case law re expert testimony on ultimate facts and commented on same to E. Trujillo. |
| 08/15/2006 | Masters, L. | 2.00 | 0.50 | Prepared for and participated in conference call with D. Bitter and K. Scott re issues under Winn Dixie's 2006-2007 general liability insurance program. |
| | | | 1.50 | Worked re same. |
| 08/15/2006 | Miller, R. | 2.20 | 1.20 | Reviewed and organized Summary Judgment filings for use by mediator per C. Dickinson. |
| | | | 0.60 | Prepared same in electronic form and hard copy. |
| | | | 0.40 | Prepared same to be shipped to mediator. |
| 08/16/2006 | Miller, R. | 0.80 | 0.50 | Coordinated redaction and production of documents received from expert. |
| | | | 0.30 | Met with C. Dickinson re same. |
| 08/17/2006 | Miller, R. | 1.00 | 0.30 | Gathered deposition transcripts. |
| | | | 0.70 | Prepared binder of deposition transcripts for C. Dickinson and case file. |
| 08/18/2006 | Love, B. | 1.50 | 0.50 | Ran queries for selected responsive and not privileged document per attorney specifications. |
| | | | 0.50 | Prepared and processed designated collection for electronic document production. |
| | | | 0.50 | Copied new images and image registration data to disks. |

8

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 08/18/2006 | Miller, R. | 1.00 | 0.50 | Coordinated document production with B. Love. |
| | | | 0.50 | Prepared production documents to be shipped to opposing counsel per J. Wolfsmith. |
| 08/31/2006 | Miller, R. | 1.00 | 0.50 | Reviewed Motion to Strike Stempel for exhibits. |
| | | | 0.50 | Worked on gathering exhibits per J. Wolfsmith and E. Trujillo. |
| 09/01/2006 | Wolfsmith, J. | 1.10 | 0.80 | Reviewed briefing on Motion to Strike Certain Testimony of J. Stempel and brief in opposition to Motion for Summary Judgment by XL. |
| | | | 0.30 | Communicated with E. Trujillo re filing of same. |
| 09/05/2006 | Wolfsmith, J. | 1.80 | 1.10 | Reviewed XL's response to Winn-Dixie Motion for Summary Judgment, XL's Statement of Facts and XL's Statement of Additional Facts and prepared comments for reply brief. |
| | | | 0.70 | Reviewed Marsh response to XL's Motion to Compel. |
| 09/07/2006 | Trujillo, E. | 0.80 | 0.60 | Reviewed current draft of mediation statement. |
| | | | 0.20 | Noted needed revisions. |
| 09/07/2006 | Wolfsmith, J. | 12.20 | 11.50 | Worked on mediation statement. |
| | | | 0.70 | Conferences with E. Trujillo re same. |
| 09/08/2006 | Wolfsmith, J. | 4.00 | 3.30 | Worked on mediation statement. |
| | | | 0.70 | Conferences with C. Dickinson and E. Trujillo re same (and re reply on Winn-Dixie's Motion for Partial Summary Judgment). |
| 09/11/2006 | Wolfsmith, J. | 5.40 | 4.90 | Worked on mediation statement. |
| | | | 0.50 | Preparation of exhibits. |

| Date | Name | Entry Hours | Task Hours | Description |
|------|------|-------------|------------|-------------|
| 09/12/2006 | Dickinson, C. | 1.00 | 0.60 | Worked on preparation of mediation statement. |
|  |  |  | 0.40 | Conferences re same with E. Trujillo and J. Wolfsmith. |
| 09/12/2006 | Trujillo, E. | 1.80 | 1.00 | Reviewed mediation statement and hard copies of exhibits. |
|  |  |  | 0.50 | Compiled revised list of exhibits with revised numbering scheme. |
|  |  |  | 0.30 | Drafted email to J. Wolfsmith and paralegal re same. |
| 09/12/2006 | Wolfsmith, J. | 4.80 | 4.30 | Worked on mediation statement. |
|  |  |  | 0.50 | Preparation of exhibits. |

10

D

## Dickinson, Christopher C

**From:** WTBTI.ENCORRE@PM2.ENCORRE.NET on behalf of JENNERBLOCK@WORLDTRAVEL.COM
**Sent:** Friday, March 10, 2006 2:11 PM
**To:** AP (World Travel Credit); Dickinson, Christopher C
**Cc:** Bartels, Lisa A
**Subject:** TRAVEL INVOICE FOR DICKINSON/CHRISTOPHER C 29MAR ORDATL

### Information for Trip Locator: XWT4VA

THIS MESSAGE REFERENCES PNR LOCATOR XWT4VA.

THIS IS A SEND ONLY EMAIL ADDRESS. PLEASE DO NOT REPLY TO THIS EMAIL.
PLEASE DO NOT DELETE THIS EMAIL PRIOR TO SUBMITTING YOUR REQUEST FOR REIMBURSEMENT OR
DISBURSEMENT.
PRINT THIS EMAIL AND ATTACH TO YOUR EXPENSE REPORT OR DISBURSEMENT FORM WHEN SUBMITTING
TO ACCOUNTS PAYABLE.
CLIENT

ELECTRONIC Ticket Number: 0011552144861
Ticket Amount: $1073.20
MCO/Transaction Number: 8909521295540
Transaction Fee: $35.00
Form of Payment: VI***********4495

ENCORRE GENERATED THIS EMAIL AT 2:11 pm, ON Friday, March 10, 2006. THIS IS A SEND ONLY ADDRESS.
PLEASE DO NOT REPLY TO THIS EMAIL. CONTACT YOUR TRAVEL MANAGER FOR MORE DETAILS.

| 🖥 Passengers | Reference # | Frequent Flyer # |
|---|---|---|
| DICKINSON/CHRISTOPHER C | DICKINCC | AA2822MP0, COPR924122, UA00230058997 |

### ✈ AIR - Wednesday, March 29

**American Airlines Flight 4397 Economy**
**Operated by AMERICAN EAGLE**

| | |
|---|---|
| **From:** Chicago O'Hare Int'l Airport, IL | **Equipment:** Canadair Jet 700 |
| 6:56 am, Wednesday, March 29 | **Duration:** 2 hours and 4 minutes |
| TERMINAL 3 | **Meals:** FOOD TO PURCHASE |
| **To:** Atlanta Hartsfield-Jackson Int'l Airport, GA | **Status:** Confirmed |
| 10:00 am, Wednesday, March 29 | |
| TERMINAL N | |

**Seats:** 13B  DICKINSO+C  Confirmed
EMERGENCY EXIT ROW AISLE SEAT CONFIRMED.

### 🚗 CAR - Wednesday, March 29

**Hertz Rent-A-Car**

**Pick up:** HERTZ CORPORATION ATLT11
HARTSFIELD JACK
ATLANTA HARTSFIELD INTL AP
10:00 am, Wednesday, March 29



**Type:** Full Car Auto A/C
**Rate:** USD 67.60 Daily,
Unlimited Free Miles,
USD 34.40 Extra Hour Rate,

**Drop off:** HERTZ CORPORATION ATLT11
HARTSFIELD JACK
ATLANTA HARTSFIELD INTL AP
7:32 pm, Thursday, March 30

Rate NOT Guaranteed
**Confirmation:** D2181667391 GOLD
**Client ID:** 16403506
**Corporate Discount:** 282138
**Frequent Traveler:** AA2822MP0
**Status:** Confirmed

TTL USD180.50 INC TAX-OTHER CHARGES
GOLD SERVICE CONFIRMED.

## HOTEL - Wednesday, March 29

RENAISSANCE WAVERLY HOTEL

**Address:** 2450 GALLERIA PKWY
ATLANTA GA 30339

**Telephone:** 770 953-4500

**Fax:** 770 953-0740

**Chain:** Renaissance Hotels/Resorts
**Check out:** Thursday, March 30
**Rate:** USD 259.00 per night
**Confirmation:** 82254489
**Status:** Confirmed

:CANCEL PERMITTED UP TO 4PM DAY OF ARRIVAL HOTEL TIME

## AIR - Thursday, March 30

American Airlines Flight 4445 Economy

**Operated by AMERICAN EAGLE**

**From:** Atlanta Hartsfield-Jackson Int'l Airport, GA
7:32 pm, Thursday, March 30
TERMINAL N
**To:** Chicago O'Hare Int'l Airport, IL
8:35 pm, Thursday, March 30
TERMINAL 3
**Seats:** 13B DICKINSO+C  Confirmed
EMERGENCY EXIT ROW AISLE SEAT CONFIRMED.

**Equipment:** Canadair Jet 700
**Duration:** 2 hours and 3 minutes
**Meals:** FOOD TO PURCHASE
**Status:** Confirmed

## TOUR - Tuesday, September 26

**Departs:** Chicago O'Hare Int'l Airport, IL
**Status:** Confirmed
**THANK YOU FOR CHOOSING WORLDTRAVEL BTI**

## General Remarks

FAA IMPOSES NEW SECURITY MEASURES FOR PASSENGERS.
LIMITED TO ONE CARRY-ON BAG AND ONE PERSONAL ARTICLE
CHECK IN 2 HOURS FOR DOMESTIC AND 3 HOURS
INTERNATIONAL DEPARTURES.
CHECK WITH INDIVIDUAL CARRIER FOR COMPLETE DETAILS.
DURING NORMAL BUSINESS HOURS CALL 312 222-9350 X6012
OR 312-840-8300
FOR EMERGENCY ASSISTANCE WHEN TRAVELING IN THE U.S.
AND CANADA CALL 866-446-3326
TRAVELING OUTSIDE THE USA CALL COLLECT 847-759-5436
YOUR EMERGENCY SERVICE IDENTIFICATION CODE IS A62C
YOUR AMERICAN CONFIRMATION IS *MDPYWZ*.
ELECTRONIC TICKET ISSUED FOR THIS ITINERARY
GOVERNMENT ISSUED PICTURE ID REQUIRED.

3/31/2006

BOARDING PASSES MAY BE RESTRICTED TO AIRPORT CHECK IN.

Liability Agreement
Worldtravel BTI acts only as agent for the airlines, hotels, bus companies, railroads, tour operators,cruise lines, car rental companies, and other contractors
providing accommodations, transportation or other suppliers ("suppliers")

All such services are furnished by suppliers that are independent and do not act for or on behalf of WTBTI, are not servants of WTBTI, and with whom WTBTI
does not have a business as joint ventures or otherwise.
By utilizing the services represented by this itinerary, client agrees to the forgoing and also agrees that neither WTBTI nor its parent, affiliates, subsidiaries or
Representatives (collectively "WTBTI Entities") shall be or become liable for any loss,costs,expense,injury,accident or damage to person or property
resulting directly or indirectly for (i) the acts or omissions of such suppliers, including, but not limited to,
delays or cancellation of services,cessation of operations, breakdown in machinery or equipment or changes in fares,intineraries or schedules, and/or (ii) acts of
God, dangers incident to the sea,fire,acts
of government or other authorities,war,acts of terrorism,civil unrest,strikes,riots,thefts,pilferage,epidemics,quarantines, other disease,climatic aberrations, or from
any other cause beyond WTBTIs control. All services covered by this itinerary are subject to the terms and conditions specified by the suppliers;and
client also agrees to the terms and conditions set forth in any and all brochures or advertisements describing any tour,cruise,accommodations, transportation or
other services, and to any and all conditions contained in documents for any such services,without limitation, all cancellation fees. No employee of WTBTI or
affiliates, subsidiary companies or representatives has authority to vary the terms of these conditions.

3/31/2006



2450 Galleria Parkway
Atlanta, Georgia 30339
(770) 953 4500
RENAISSANCEHOTELS.COM/ATLRB

# RENAISSANCE.
### WAVERLY HOTEL
### ATLANTA

GUEST FOLIO

| ROOM | NAME | RATE | DEPART | TIME | ACCT# |
|------|------|------|--------|------|-------|
| 440 | DICKINSON/CHRISTOPH | 259.00 | 03/30/06 | 12:00 | 2580 |

NSKG
TYPE                                        03/29/06 17:02
                                            ARRIVE      TIME

60

| ROOM CLERK | ADDRESS | | PAYMENT | | MR#: |
|---|---|---|---|---|---|

| DATE | REFERENCE | CHARGES | CREDITS | BALANCE DUE |
|------|-----------|---------|---------|-------------|
| 03/29 ROOM | 440, 1 | 259.00 | | |
| 03/29 RM TX 6 | 440, 1 | 15.54 | | |
| 03/29 OCC TX 8 | 440, 1 | 20.72 | | |
| 03/30 BK CARD | | | $295.26 | |

TO BE SETTLED TO:   VISA BK         CURRENT BALANCE   .00

THANK YOU FOR CHOOSING RENAISSANCE WAVERLY! IF THIS FOLIO IS
CORRECT, PLEASE DROP OFF YOUR KEYS AT THE FRONT DESK OR
UTILIZE OUR VIDEO CHECK-OUT THROUGH TELEVISION PROMPTS.

-------------------- EXP. REPORT SUMMARY --------------------
03/29 ROOM                      259.00
      RM TX 6                    15.54
      OCC TX 8                   20.72



# RENAISSANCE.®
## WAVERLY HOTEL
## ATLANTA



# RENAISSANCE.
### WAVERLY HOTEL
### ATLANTA

2450 Galleria Parkway
Atlanta, Georgia 30339
(770) 953 4500
RENAISSANCEHOTELS.COM/

**ACCOUNTS PAST 30 DAYS SUBJECT TO SERVICE CHARGE OF 1.5% PER MONTH (ANNUAL RATE OF 18%)**
This statement is your only receipt. You have agreed to pay in cash or by approved personal check or to authorize us to charge your credit card for all amounts charged to
The amount shown in the credits column opposite any credit card entry in the reference column above will be charged to the credit card number set forth above. (The cr
card company will bill in the usual manner.) If for any reason the credit card company does not make payment on this account, you will owe us such amount. If you are c
billed, in the event payment is not made within 25 days after check-out, you will owe us interest from the check-out date on any unpaid amount at the rate of 1.5% per m
(ANNUAL RATE 18%), or the maximum allowed by law, plus the reasonable cost of collection, including attorney fees.

Signature X _____

6-2955C-R
12/03       FOR RESERVATIONS AT ANY RENAISSANCE HOTEL, CALL 1 (800) HOTELS-1

**Yellow Cab Management, Inc.**
**2230 South Michigan**
**Chicago, Illinois 60616**
www.yellowcabchicago.com

12.00                    3/30
$         Time           Date

Received from:
Belmont L

Cab fare from:
567 W Aldine

To:

Driver:

Cab #:

Account #:

*Thank you for*
*riding with us!*



312-829-4222

**Dickinson, Christopher C**

**From:** WTBTI.ENCORRE@PM2.ENCORRE.NET on behalf of JENNERBLOCK@WORLDTRAVEL.COM
**Sent:** Friday, April 07, 2006 5:06 PM
**To:** AP (World Travel Credit); Dickinson, Christopher C
**Cc:** Bartels, Lisa A
**Subject:** TRAVEL INVOICE FOR DICKINSON/CHRISTOPHER C 23APR ORDATL

## Information for Trip Locator: MDJLVW

THIS MESSAGE REFERENCES PNR LOCATOR MDJLVW.

THIS IS A SEND ONLY EMAIL ADDRESS. PLEASE DO NOT REPLY TO THIS EMAIL.
PLEASE DO NOT DELETE THIS EMAIL PRIOR TO SUBMITTING YOUR REQUEST FOR REIMBURSEMENT OR DISBURSEMENT.
PRINT THIS EMAIL AND ATTACH TO YOUR EXPENSE REPORT OR DISBURSEMENT FORM WHEN SUBMITTING TO ACCOUNTS PAYABLE.
CLIENT

ELECTRONIC Ticket Number: 0011555412494
Ticket Amount: $840.45
MCO/Transaction Number: 8909521295998
Transaction Fee: $35.00
Form of Payment: VI***********4495

ENCORRE GENERATED THIS EMAIL AT 5:05 pm, ON Friday, April 7, 2006. THIS IS A SEND ONLY ADDRESS. PLEASE DO NOT REPLY TO THIS EMAIL. CONTACT YOUR TRAVEL MANAGER FOR MORE DETAILS.

| 🏛 Passengers | Reference # | Frequent Flyer # |
|---|---|---|
| DICKINSON/CHRISTOPHER C | DICKINCC | AA2822MP0, COPR924122, UA00230058997 |

## ✈ AIR - Sunday, April 23

**American Airlines Flight 2411 First**

**From:** Chicago O'Hare Int'l Airport, IL
1:40 pm, Sunday, April 23
TERMINAL 3
**To:** Atlanta Hartsfield-Jackson Int'l Airport, GA
4:50 pm, Sunday, April 23
TERMINAL N
**Seats:** 04B DICKINSO+C Confirmed

**Equipment:** McDonnell Douglas Super 80
**Duration:** 2 hours and 10 minutes
**Status:** Confirmed

## 🛏 HOTEL - Sunday, April 23

**RESIDENCE INN ATL MIDTOWN 17 ST**

**Address:** 1365 PEACHTREE ST
ATLANTA GA 30309

**Telephone:** 404 745-1000

**Fax:** 404 745-1111

**Supplemental**

**Chain:** Residence Inns
**Check out:** Tuesday, April 25
**Rate:** USD 159.00 per night
**Confirmation:** 83830955
**Status:** Confirmed

4/20/2006

Information: NON-SMOKING KING
MUST CANCEL HOTEL 24HRS PRIOR TO ARRIVAL TO AVOID CHARGES

---

## ✈ AIR - Tuesday, April 25

**American Airlines Flight 4445 Economy**
**Operated by AMERICAN EAGLE**

| | |
|---|---|
| **From:** | Atlanta Hartsfield-Jackson Int'l Airport, GA |
| | 7:40 pm, Tuesday, April 25 |
| | TERMINAL N |
| **To:** | Chicago O'Hare Int'l Airport, IL |
| | 8:46 pm, Tuesday, April 25 |
| | TERMINAL 3 |
| **Seats:** | 07B DICKINSO+C  Confirmed |

**Equipment:** Canadair Jet 700
**Duration:** 2 hours and 6 minutes
**Meals:** FOOD TO PURCHASE
**Status:** Confirmed

---

## TOUR - Sunday, October 22

**Departs:** Chicago O'Hare Int'l Airport, IL
**Status:** Confirmed
**\*\*THANK YOU FOR CHOOSING WORLDTRAVEL BTI\*\***

---

## General Remarks

FAA IMPOSES NEW SECURITY MEASURES FOR PASSENGERS.
LIMITED TO ONE CARRY-ON BAG AND ONE PERSONAL ARTICLE
CHECK IN 2 HOURS FOR DOMESTIC AND 3 HOURS
INTERNATIONAL DEPARTURES.
CHECK WITH INDIVIDUAL CARRIER FOR COMPLETE DETAILS.
DURING NORMAL BUSINESS HOURS CALL 312 222-9350 X6012
OR 312-840-8300
FOR EMERGENCY ASSISTANCE WHEN TRAVELING IN THE U.S.
AND CANADA CALL 866-446-3326
TRAVELING OUTSIDE THE USA CALL COLLECT 847-759-5436
YOUR EMERGENCY SERVICE IDENTIFICATION CODE IS A62C
YOUR AMERICAN CONFIRMATION IS \*KXIXJP\*.
ELECTRONIC TICKET ISSUED FOR THIS ITINERARY
GOVERNMENT ISSUED PICTURE ID REQUIRED.
BOARDING PASSES MAY BE RESTRICTED TO AIRPORT CHECK IN.

---

Liability Agreement
Worldtravel BTI acts only as agent for the airlines, hotels, bus companies, railroads, tour operators,cruise lines, car rental companies, and other contractors providing accommodations, transportation or other suppliers ("suppliers")

All such services are furnished by suppliers that are independent and do not act for or on behalf of WTBTI, are not servants of WTBTI, and with whom WTBTI does not have a business as joint ventures or otherwise.
By utilizing the services represented by this itinerary, client agrees to the forgoing and also agrees that neither WTBTI nor its parent, affiliates, subsidiaries or Representatives (collectively "WTBTI Entities") shall be or become liable for any loss,costs,expense,injury,accident or damage to person or property resulting directly or indirectly for (i) the acts or omissions of such suppliers, including, but not limited to,
delays or cancellation of services,cessation of operations, breakdown in machinery or equipment or changes in fares,intineraries or schedules, and/or (ii) acts of God, dangers incident to the sea,fire,acts
of government or other authorities,war,acts of terrorism,civil unrest,strikes,riots,thefts,pliferage,epidemics,quarantines, other disease,climatic aberrations, or from any other cause beyond WTBTIs control. All services covered by this itinerary are subject to the terms and conditions specified by the suppliers;and client also agrees to the terms and conditions set forth in any and all brochures or advertisements describing any tour,cruise,accommodations, transportation or other services, and to any and all conditions contained in documents for any such services,without limitation, all cancellation fees. No employee of WTBTI or affiliates, subsidiary companies or representatives has authority to vary the terms of these conditions.

4/20/2006

**ATL Midtown/17th Street**
**1365 Peachtree Street**
**Atlanta, GA  30309**
**404-745-1000**

Residence Inn Marriott

C. DICKINSON

JENNER AND BLOCK

| | |
|---|---|
| **Room:** | 327    REGA |
| **Room Type:** | STQT    14503860 |
| **No. Of Guests:** | 1 |
| **Rate:** | 159.00 |
| **Clerk:** | |

| Arrive | 23Apr06 | Time | 05:02p | Depart | 25Apr06 | Time | | Folio# | 51-66736 |

| Date | Reference Number | Description | Charges | Credits |
|---|---|---|---|---|
| 23Apr06 | TE0047 | LCL PH404-40447511 | 1.00 ✓ | |
| 23Apr06 | R7327 | Dinner Delivery | 19.39  → DIN. | |
| 23Apr06 | J1327 | Room Charge-Studio | 159.00 ✓ | |
| 23Apr06 | T1327 | Occupancy Sales Ta | 11.13 ✓ | |
| 23Apr06 | T2327 | State Occupancy Ta | 12.72 ✓ | |
| 24Apr06 | J1327 | Room Charge-Studio | 159.00 ✓ | |
| 24Apr06 | T1327 | Occupancy Sales Ta | 11.13 ✓ | |
| 24Apr06 | T2327 | State Occupancy Ta | 12.72 ✓ | |
| 25Apr06 | VI327 | Visa | | 386.09- |

```
*************************************
*  CARD #: VIXXXXXXXXXXXX4495       *
*  Amount:    386.09   Auth: 080332 *
*       ** Signature on File **     *
*************************************
```

**                **    BALANCE    **                            .00

✓

## PEACH CAB CO.
1874 PIEDMONT ROAD (SUITE 475-D)
ATLANTA, GEORGIA 30324
404-881-1715

DATE _____ 4/23/05 _____

PASSENGER
PICKED UP AT: _____ ATL _____

DISMISSED AT: _____ Residence Inn Midtown _____

CAB # _____

DRIVER'S
NAME _____

FARE $: 40.00

TIP $: _____

*Thank You*    TOTAL: 40.00

---

4/25/06

## Atlanta Lenox
## Taxi Receipt
404-872-2600
"Just A Phone Call Away"

From: _____ Residence Inn _____
To: _____ ATL _____
Cab: _____    Amount Fare: 40.00
            Tax: _____
            Tip: _____    Total: 40

Driver: _____    Signature: _____

---

## GOLD COAST
## TAXI ASSOC.
## 773-271-0163
4433 N. Ravenswood Ave.
Chicago, IL 60640

$ 40    Date 4/25/06

Received from _____

Cab fare from _____ ORD _____

To _____ 507 ALDINE _____

Driver _____

Cab no. _____

*O'Briens*
restaurant & bar

***Flagship in Chicago's Old Town***
1528 N. Wells St.  312.787.3131

***O'Hare International Airport***
T3 - H/K Apex  773.462.0700

***Whittaker Woods Golf Club***
12578 Wilson Road
New Buffalo, MI 49117
269.469.3400  golfwhittaker.com

## Catch your fare at O'Briens!

Receipt Advertising Info: ChicagoDispatcher.com

**Dickinson, Christopher C**

| | |
|---|---|
| **From:** | WTBTI.ENCORRE@PM2.ENCORRE.NET on behalf of JENNERBLOCK@WORLDTRAVEL.COM |
| **Sent:** | Monday, May 08, 2006 9:57 AM |
| **To:** | AP (World Travel Credit); Dickinson, Christopher C; Bartels, Lisa A; JennerBlock@worldtravel.com |
| **Subject:** | Travel Itinerary:DICKINSON/CHRISTOPHER C-08MAY |

Information for Trip Locator: WC58ZG

THIS MESSAGE REFERENCES PNR LOCATOR WC58ZG.

ENCORRE GENERATED THIS EMAIL AT 9:56 am, ON Monday, May 8, 2006. THIS IS A SEND ONLY ADDRESS. PLEASE DO NOT REPLY TO THIS EMAIL. CONTACT YOUR TRAVEL MANAGER FOR MORE DETAILS.

Passengers         Reference #      Frequent Flyer #
DICKINSON/CHRISTOPHER C DICKINCC       AA2822MP0, COPR924122,
                  UA00230058997

AIR - Monday, May 8
  American Airlines Flight 2411 First
          From: Chicago O'Hare Int'l Airport, IL
          1:40 pm, Monday, May 8
          TERMINAL 3
          To: Atlanta Hartsfield-Jackson Int'l Airport, GA
          4:50 pm, Monday, May 8
          TERMINAL N
  Equipment: McDonnell Douglas Super 80
  Duration: 2 hours and 10 minutes
  Status: Confirmed
  Seats: 03F  DICKINSO+C  Confirmed

CAR - Monday, May 8
  Hertz Rent-A-Car
        Pick up: HERTZ CORPORATION    ATLT11  HARTSFIELD JACK
          ATLANTA HARTSFIELD INTL AP
          4:50 pm, Monday, May 8
        Drop off: HERTZ CORPORATION    ATLT11  HARTSFIELD JACK
          ATLANTA HARTSFIELD INTL AP
          7:40 pm, Wednesday, May 10
        Type: Full Car Auto A/C
        Rate: USD 67.60 Daily,
          Unlimited Free Miles,
          USD 34.40 Extra Hour Rate,
          Rate NOT Guaranteed
  Confirmation: D2710265237 GOLD
  Client ID: 16403506
  Corporate Discount: 282138
        Status: Confirmed

HOTEL - Monday, May 8
  THE GLENN HOTEL
          Address: 110 MARIETTA STREET NW
          ATLANTA GA 30303 US
  Telephone: 1-404-521-2250
        Fax: 1-404-521-2256
        Chain: Copthorne
  Check out: Wednesday, May 10
        Rate: USD 189.00 per night
  Confirmation: 1085636404

1

Corporate Discount: WORLDTRAVEL BTI
  Status: Confirmed
Supplemental Information: NON SMKING KING
    MUST CANCEL HOTEL 48HRS PRIOR TO ARRIVAL TO AVOID CHARGES

AIR - Wednesday, May 10
 American Airlines Flight 4445 Economy
 Operated by AMERICAN EAGLE
   From: Atlanta Hartsfield-Jackson Int'l Airport, GA
    7:40 pm, Wednesday, May 10
    TERMINAL N
   To: Chicago O'Hare Int'l Airport, IL
    8:46 pm, Wednesday, May 10
    TERMINAL 3
  Equipment: Canadair Jet 700
  Duration: 2 hours and 6 minutes
  Meals: FOOD TO PURCHASE
  Status: Confirmed
  Seats: 14C  DICKINSO+C  Confirmed

TOUR - Monday, November 6
  Departs: Chicago O'Hare Int'l Airport, IL
  Status: Confirmed
    **THANK YOU FOR CHOOSING WORLDTRAVEL BTI**

General Remarks
 FAA IMPOSES NEW SECURITY MEASURES FOR PASSENGERS.
 LIMITED TO ONE CARRY-ON BAG AND ONE PERSONAL ARTICLE
 CHECK IN 2 HOURS FOR DOMESTIC AND 3 HOURS
 INTERNATIONAL DEPARTURES.
 CHECK WITH INDIVIDUAL CARRIER FOR COMPLETE DETAILS.
 DURING NORMAL BUSINESS HOURS CALL 312 222-9350 X6012
 OR 312-840-8300
 FOR EMERGENCY ASSISTANCE WHEN TRAVELING IN THE U.S.
 AND CANADA CALL 866-446-3326
 TRAVELING OUTSIDE THE USA CALL COLLECT 847-759-5436
 YOUR EMERGENCY SERVICE IDENTIFICATION CODE IS A62C
 YOUR AMERICAN CONFIRMATION IS *HZBMRI*.
 ELECTRONIC TICKET ISSUED FOR THIS ITINERARY
 GOVERNMENT ISSUED PICTURE ID REQUIRED.
 BOARDING PASSES MAY BE RESTRICTED TO AIRPORT CHECK IN.



# The Glenn Hotel

Page 1 of 1

*110 Marietta Street NW*
*Atlanta, GA 30303*
*404-521-2250*
*www.glennhotel.com*

**Mr Christopher C Dickinson**
**One IBM Plaza**
**Chicago, IL 60611**

| Room | Folio | CheckIn | CheckOut | Balance |
|------|-------|---------|----------|---------|
| 402 | 53627 | 05/08/2006 | 05/10/2006 | 553.18 |
| Master Folio | | Weekday: 189.00  Weekend: 189.00 | | |

| Date | Room | Description / Voucher | Charges | Credits | Balance |
|------|------|----------------------|---------|---------|---------|
| 05/08/2006 | 402 | B.E.D. Atlanta Room Service - #40/My Le | 37.99 | 0.00 | 37.99 |
| 05/08/2006 | 402 | Valet | 21.00 | 0.00 | 58.99 |
| 05/08/2006 | 402 | Room Taxable | 189.00 | 0.00 | 247.99 |
| 05/08/2006 | 402 | Sales Tax - 8.000% | 15.12 | 0.00 | 263.11 |
| 05/08/2006 | 402 | Room/Bed Tax - 7.000% | 13.23 | 0.00 | 276.34 |
| 05/09/2006 | 402 | Mini Bar | 35.64 | 0.00 | 311.98 |
| 05/09/2006 | 402 | Sales Tax - 8.000% | 2.85 | 0.00 | 314.83 |
| 05/09/2006 | 402 | Valet | 21.00 | 0.00 | 335.83 |
| 05/09/2006 | 402 | Room Taxable | 189.00 | 0.00 | 524.83 |
| 05/09/2006 | 402 | Sales Tax - 8.000% | 15.12 | 0.00 | 539.95 |
| 05/09/2006 | 402 | Room/Bed Tax - 7.000% | 13.23 | 0.00 | 553.18 |
| | | **Summary and Taxes** | | | |
| | | Balance Due | | | 553.18 |
| | | Taxable Sales | | | 413.64 |
| | | Sales Tax  8.00% | | | 33.09 |
| | | Room/Bed Tax  7.00% | | | 26.46 |

*Desire, Passion,....You*

NP
05/10/2006   08:36 AM

**ellow Cab Management, Inc.**
**2230 South Michigan**
**Chicago, Illinois 60616**
www.yellowcabchicago.com

'2.00      5/8/06
$          Time          Date

Received from:
J & B
Cab fare from:
O R D
To:

Driver:

Cab #:

Account #:

*Thank you for riding with us*



312-829-4222

CITY SERVICE TAXI ASSOCIATION
773-907-0909

2601 W. Peterson Ave.   Chicago, IL 60659
$ 38—  Date 5/10  Time 06
Received from   ORD
Cab fare from   507 ALDINE
To
Driver
Cab no.



*The* **REDHEAD** PIANO BAR
Enjoy Chicago's Premier Night Spot
live Music Seven Nights a Week
**16 W. Ontario St.**
**312-640-1000**
Private Parties Available        Proper Attire Required
Receipt Advertising Info: ChicagoDispatcher.com

Midtown Plaza
Trizec Office Properties
Atlanta, Ga

Fee Computer Number:              3
Cashier:              Ghennett ID #202
Transaction Number:         136147
Entered:            05/09/2006  08:15
Exited:             05/09/2006  16:27
Ticket #28102
Rate:                         Area 1
Total Fee:                    $12.00
Cash:                         $12.00

Parking Provided By
Central Parking Systems
Have a nice day

Midtown Plaza
Trizec Office Properties
Atlanta, Ga

Fee Computer Number:              3
Cashier:              Ghennett ID #202
Transaction Number:         136302
Entered:            05/10/2006  09:55
Exited:             05/10/2006  17:01
Ticket #28241
Rate:                         Area 1
Total Fee:                    $12.00
Cash:                         $12 0

Parking Provided By
Central Parking Systems
Have a nice day

**Hertz**

PG 2 OF 3 #01 GS    RR 19296320

CC

Further information relating to Your rental charges, and other terms to
which You agree, appear below.

EXTRA CHARGES IF APPLICABLE:

```
              ATLANTA INT'L A/P
RENTAL RECORD:          19296320
CHRISTOPHER DICKINSON
COMPLETED BY:           0004
RENTED BY: ATLANTA INT'L A/P
RENTAL:        05/08/06     18:22
RETURN:        05/10/06     17:59
MILES IN: 23864   OUT: 23820
MILES DRIVEN:        44
PLAN IN/OUT: 0500J  /0500J
CLS: F

2 DAYS         84.50     169.00
DISCOUNT 20%                33.80
SUBTOTAL                  135.20
CONCESSION FEE RECOVERY    15.01
FUEL & SVC 6.690 GL 7/8    15.99
TX 10.000%
  ON  180.08              18.01
VLF & CFC
NET DUE                    13.88
PAID BY:  VISA            198.09
CREDIT CARD #: XXXXXXXXXXXX4495
```

Thank you for renting from

**Hertz**

VEHICLE IS DETERMINED BY THE NUMBER OF SEAT BELTS
BY LAW, MUST NOT BE EXCEEDED. WHILE IN THE VEHICLE,
PLEASE FASTEN YOUR SEATBELT. IT SAVES LIVES AND
IT'S THE LAW. SHOULD YOU REQUIRE A LARGER VEHICLE,
PLEASE CHECK AT THE COUNTER FOR AVAILABILITY.

RES. ID.:0271026523T    PLAN -0500J    CLASS- F
PREPARED BY: 0982/G4ATL11  PRINTED:05/08/06 17:53 GAATLG
19296320

PG1 OF 3 #01 GS    RR 193296320

193296320

CC

CHRISTOPHER DICKINSON
GAATL1T    014601T
VEHICLE   01498/6879043                05 HIGHLANDER 2WDS
LIC GAARM4543 CLS Z    MILES OUT 23920        FUEL OUT  8/8
TK CAP 18.1                            STALL X# 724

RENTED: 05/08/06 18:22 @ ATLANTA INTL A/P
RETURN: 05/10/06 18:40 @ ATLANTA INTL A/P

You agree to pay charges at the rates and in the amounts that appear
on the left of the table below.  Taxable charges are denoted by a T, and
additional details about some charges appear beneath the table.  Hertz's
estimate of Your total charges appear on the right of the table below.
Hertz's estimates assume (1) You will rent and return the vehicle at the
times and places indicated, (2) if a mileage charge applies, You will drive
no more than the distance indicated and (3) You will not incur any charges
that either are listed below opposite **** or cannot be calculated until
return. If any of these assumptions is incorrect, additional charges or
charges at higher rates may apply.



CHARGE RATE / AMOUNT                                CHARGE ESTIMATE
TIME / MILEAGE CHRG: RATE PLAN - 0500J              CLASS - F
 2 @ $   84.50 / DAY    WITH ALL MILES FREE
 1 @ $   43.00 / EX HOUR
SUBTOTAL 1                                      $   169.00
DISCOUNT -                                      $    43.00
SUBTOTAL 2                                      $   212.00
                   R        20 %                $    42.40
SUBTOTAL 2                                      $   169.60

ADDITIONAL CHARGES
FEES FOR ANY ADDITIONAL AUTHORIZED
OPERATORS NOT INCLUDED.

OPTIONAL SERVICES                               T$   ****
FUEL & SERVICE $.362 /MI $ 6.69 /GAL 18.1 /TK CAP T$ ****

TAX/ FEES
CONCESSION FEE RECOVERY                 11.64%  T$   18.83
VLF & CFC                                       T$   20.82
TAX  10.000% ON EST. TAXABLE TTL $ 209.25       T$   20.92

TOTAL ESTIMATED CHARGE                          $   230.17

# Dickinson, Christopher C

**From:** WTBTI.ENCORRE@PM2.ENCORRE.NET on behalf of JENNERBLOCK@WORLDTRAVEL.COM
**Sent:** Tuesday, May 09, 2006 5:23 PM
**To:** AP (World Travel Credit); Dickinson, Christopher C
**Cc:** Bartels, Lisa A
**Subject:** TRAVEL INVOICE FOR DICKINSON/CHRISTOPHER C 16MAY ORDATL

## Information for Trip Locator: QNMZDG

THIS MESSAGE REFERENCES PNR LOCATOR QNMZDG.

THIS IS A SEND ONLY EMAIL ADDRESS. PLEASE DO NOT REPLY TO THIS EMAIL.
PLEASE DO NOT DELETE THIS EMAIL PRIOR TO SUBMITTING YOUR REQUEST FOR REIMBURSEMENT OR
DISBURSEMENT.
PRINT THIS EMAIL AND ATTACH TO YOUR EXPENSE REPORT OR DISBURSEMENT FORM WHEN SUBMITTING
TO ACCOUNTS PAYABLE.
CLIENT

ELECTRONIC Ticket Number: 0011557930214
Ticket Amount: $897.45
MCO/Transaction Number: 8909526685331
Transaction Fee: $35.00
Form of Payment: VI************4495

ENCORRE GENERATED THIS EMAIL AT 5:23 pm, ON Tuesday, May 9, 2006. THIS IS A SEND ONLY ADDRESS.
PLEASE DO NOT REPLY TO THIS EMAIL. CONTACT YOUR TRAVEL MANAGER FOR MORE DETAILS.

| Passengers | Reference # | Frequent Flyer # |
|---|---|---|
| DICKINSON/CHRISTOPHER C | DICKINCC | AA2822MP0, COPR924122, UA00230058997 |

## ✈ AIR - Tuesday, May 16

**❄ American Airlines Flight 2411 First**

**From:** Chicago O'Hare Int'l Airport, IL
1:40 pm, Tuesday, May 16
TERMINAL 3
**To:** Atlanta Hartsfield-Jackson Int'l Airport, GA
4:50 pm, Tuesday, May 16
TERMINAL N
**Seats:** 06B  DICKINSO+C   Confirmed

**Equipment:** McDonnell Douglas Super 80
**Duration:** 2 hours and 10 minutes
**Status:** Confirmed

## 🛏 HOTEL - Tuesday, May 16

**❄ RESIDENCE INN ATL MIDTOWN 17 ST**

**Address:** 1365 PEACHTREE ST
ATLANTA GA 30309

**Telephone:** 404 745-1000

**Fax:** 404 745-1111

**Chain:** Residence Inns
**Check out:** Thursday, May 18
**Rate:** USD 189.00 per night
**Confirmation:** 85868178
**Status:** Confirmed

**Supplemental**

5/15/2006

**Information:** NON SMKING KING

MUST CANCEL HOTEL BY 4PM DAY OF ARRIVAL TO AVOID CHARGES

## ✈ AIR - Thursday, May 18

**American Airlines Flight 4445 Economy**

**Operated by AMERICAN EAGLE**

**From:** Atlanta Hartsfield-Jackson Int'l Airport, GA
7:40 pm, Thursday, May 18
TERMINAL N
**To:** Chicago O'Hare Int'l Airport, IL
8:46 pm, Thursday, May 18
TERMINAL 3
**Seats:** 17A DICKINSO+C  Confirmed
AISLE SEAT UNAVAILABLE / WINDOW CONFIRMED

**Equipment:** Canadair Jet 700
**Duration:** 2 hours and 6 minutes
**Meals:** FOOD TO PURCHASE
**Status:** Confirmed

## 📖 TOUR - Tuesday, November 14

**Departs:** Chicago O'Hare Int'l Airport, IL
**Status:** Confirmed
**THANK YOU FOR CHOOSING WORLDTRAVEL BTI**

## 📄 General Remarks

FAA IMPOSES NEW SECURITY MEASURES FOR PASSENGERS.
LIMITED TO ONE CARRY-ON BAG AND ONE PERSONAL ARTICLE
CHECK IN 2 HOURS FOR DOMESTIC AND 3 HOURS
INTERNATIONAL DEPARTURES.
CHECK WITH INDIVIDUAL CARRIER FOR COMPLETE DETAILS.
DURING NORMAL BUSINESS HOURS CALL 312 222-9350 X6012
OR 312-840-8300
FOR EMERGENCY ASSISTANCE WHEN TRAVELING IN THE U.S.
AND CANADA CALL 866-446-3326
TRAVELING OUTSIDE THE USA CALL COLLECT 847-759-5436
YOUR EMERGENCY SERVICE IDENTIFICATION CODE IS A62C
YOUR AMERICAN CONFIRMATION IS *EUILWE*.
ELECTRONIC TICKET ISSUED FOR THIS ITINERARY
GOVERNMENT ISSUED PICTURE ID REQUIRED.
BOARDING PASSES MAY BE RESTRICTED TO AIRPORT CHECK IN.

Liability Agreement
Worldtravel BTI acts only as agent for the airlines, hotels, bus companies, railroads, tour operators,cruise lines, car rental companies, and other contractors providing accommodations, transportation or other suppliers ("suppliers")

All such services are furnished by suppliers that are independent and do not act for or on behalf of WTBTI, are not servants of WTBTI, and with whom WTBTI does not have a business as joint ventures or otherwise.
By utilizing the services represented by this itinerary, client agrees to the forgoing and also agrees that neither WTBTI nor its parent, affiliates, subsidiaries or Representatives (collectively "WTBTI Entities") shall be or become liable for any loss,costs,expense,injury,accident or damage to person or property resulting directly or indirectly for (i) the acts or omissions of such suppliers, including, but not limited to,
delays or cancellation of services,cessation of operations, breakdown in machinery or equipment or changes in fares,intineraries or schedules, and/or (ii) acts of God, dangers incident to the sea,fire,acts
of government or other authorities,war,acts of terrorism,civil unrest,strikes,riots,thefts,pilferage,epidemics,quarantines, other disease,climatic aberrations, or from any other cause beyond WTBTIs control. All services covered by this itinerary are subject to the terms and conditions specified by the suppliers;and client also agrees to the terms and conditions set forth in any and all brochures or advertisements describing any tour,cruise,accommodations, transportation or other services, and to any and all conditions contained in documents for any such services,without limitation, all cancellation fees. No employee of WTBTI or affiliates, subsidiary companies or representatives has authority to vary the terms of these conditions.

5/15/2006



**ATL Midtown/17th Street**
**1365 Peachtree Street**
**Atlanta, GA  30309**
**404-745-1000**

CHRISTOPHER/C DICKINSON

| | |
|---|---|
| **Room:** | 507      REGC |
| **Room Type:** | ONBT   14503860 |
| **No. Of Guests:** | 1 |
| **Rate:** | 189.00 |
| **Clerk:** | KDH |

GENNER & BLOCK

**Arrive**  16May06   **Time**   05:16p **Depart** 18May06   **Time** 08:10a **Folio#**  51-68910

| Date | Reference Number | Description | Charges | Credits |
|---|---|---|---|---|
| 16May06 | J1507 | Room Charge-Studio | 189.00 | |
| 16May06 | T1507 | Occupancy Sales Ta | 13.23 | |
| 16May06 | T2507 | State Occupancy Ta | 15.12 | |
| 16May06 | PL507 | Valet Parking | 19.00 | |
| 17May06 | J1507 | Room Charge-Studio | 189.00 | |
| 17May06 | T1507 | Occupancy Sales Ta | 13.23 | |
| 17May06 | T2507 | State Occupancy Ta | 15.12 | |
| 17May06 | PL507 | Valet Parking | 19.00 | |
| 18May06 | XO507 | Rebate - Parking | | 38.00- |
| 18May06 | VI08:10AM | Visa | | 434.70- |

```
* * * * * * * * * * * * * * * * * * *      * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
*  THIS CARD WAS         *      *   CARD #: VIXXXXXXXXXXXX4495           *
*  ELECTRONICALLY        *      *   Amount:    434.70   Auth: 085628     *
*  SWIPED ON 16May06  *      *       ** Signature on File  **            *
* * * * * * * * * * * * * * * * * * *      * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

                    **        BALANCE    **                              .00

## Checker Taxi Association Inc.

Need a cab? Dial 3-1-2-C-H-E-C-K-E-R or 312-243-2537

**RECEIPT**

Time _____ Date 5/18 20 06

Received From _____ $ 37 —

Cab Fare From ORD

To 507 ALDINE

Driver _____

Cab No. _____ Account No. _____

845 W. Washington Blvd., Chicago, IL 60607    Main Office: (312) 733-4755

Dinner
C C D & D. Bitter
5/17/06

---

## Choice Taxi Association Inc.

6550 N. Clark St.
Chicago, IL 60626
Need Cab Dial - (773) 338-9502

Time: _____ Date 5/16/06

Received From _____

Cab Fare From J & B

To ORD

Driver _____

Cab N. _____ Amount $42.00

*Thank you for your patronage*

We accept AmEx, Visa, MC, Discover, Diners Club

---

Veni Vidi Vici
41 Fourteenth Street
Atlanta, GA 30309
404-875-8424

Server: Bridie                DOB: 05/17/2006
09:02 PM                            05/17/2006
Table 33/1                          2/20049

VISA                                4194317
Card #XXXXXXXXXXXX4495        Exp:0808
Magnetic card present: DICKINSON
CHRISTOPHE
Approval: 061817

Amount:        43.74

+ Tip:          9.00

= Total:      52.74

X _____

Guest Copy

**Dickinson, Christopher C**

| | |
|---|---|
| **From:** | WTBTI.ENCORRE@PM2.ENCORRE.NET on behalf of JENNERBLOCK@WORLDTRAVEL.COM |
| **Sent:** | Monday, May 22, 2006 10:43 AM |
| **To:** | AP (World Travel Credit); Dickinson, Christopher C |
| **Cc:** | Bartels, Lisa A |
| **Subject:** | TRAVEL INVOICE FOR DICKINSON/CHRISTOPHER C 23MAY ORDATL |

## Information for Trip Locator: QP9978

THIS MESSAGE REFERENCES PNR LOCATOR QP9978.

THIS IS A SEND ONLY EMAIL ADDRESS. PLEASE DO NOT REPLY TO THIS EMAIL.
PLEASE DO NOT DELETE THIS EMAIL PRIOR TO SUBMITTING YOUR REQUEST FOR REIMBURSEMENT OR DISBURSEMENT.
PRINT THIS EMAIL AND ATTACH TO YOUR EXPENSE REPORT OR DISBURSEMENT FORM WHEN SUBMITTING TO ACCOUNTS PAYABLE.
CLIENT

ELECTRONIC Ticket Number: 0017599678101
Ticket Amount: $902.20
MCO/Transaction Number: 8909526992537
Transaction Fee: $35.00
Form of Payment: VI************4495

ENCORRE GENERATED THIS EMAIL AT 10:42 am, ON Monday, May 22, 2006. THIS IS A SEND ONLY ADDRESS.
PLEASE DO NOT REPLY TO THIS EMAIL. CONTACT YOUR TRAVEL MANAGER FOR MORE DETAILS.

| 🔒 Passengers | Reference # | Frequent Flyer # |
|---|---|---|
| DICKINSON/CHRISTOPHER C | DICKINCC | AA2822MP0, COPR924122, UA00230058997 |

### ✈ AIR - Tuesday, May 23
**❖ American Airlines Flight 2411 First**

| | | |
|---|---|---|
| **From:** | Chicago O'Hare Int'l Airport, IL<br>1:40 pm, Tuesday, May 23<br>TERMINAL 3 | **Equipment:** McDonnell Douglas Super 80<br>**Duration:** 2 hours and 10 minutes |
| **To:** | Atlanta Hartsfield-Jackson Int'l Airport, GA<br>4:50 pm, Tuesday, May 23<br>TERMINAL N | **Status:** Confirmed |
| **Seats:** | 06B  DICKINSO+C  Confirmed | |

### 🛏 HOTEL - Tuesday, May 23
**❖ SHERATON MIDTOWN COLONY SQUARE**

**Address:** 188 14TH STREET NE
ATLANTA GA 30361 US

Telephone: 404-892-6000

Fax: 404-872-9192

**Chain:** Sheraton Corp
**Check out:** Thursday, May 25
**Rate:** USD 179.00 per night
**Confirmation:** C461280314
**Corporate Discount:** 253934
**Status:** Confirmed

5/22/2006

# Sheraton
# Midtown Atlanta
### HOTEL AT COLONY SQUARE

188 14TH STREET N.E., ATLANTA, GA 30361     TEL [404] 892-6000     FAX [404] 872-9192     SHERATON.COM/COLONYSQUARE

**G U E S T**
Christopher Dickinson
Bti/business Travel Interna

| | |
|---|---|
| ROOM | 2111 |
| RATE | 179.00 |
| NO. PERS. | 1 |
| FOLIO | 3329123    EX-A |
| PAGE | 1 |
| ARRIVE | 23-MAY-06   17:36 |
| DEPART | 25-MAY-06 |
| PAYMENT | VM |

**T R A V E L   A G E N T   C H A R G E   T O**
Jenner & Black Tvl Dept
47th Floor
One Ibm Plaza
Chicago, IL 60611

| DATE | REFERENCE | DESCRIPTION | DEBIT CREDIT |
|---|---|---|---|
| 23-MAY-06 | RT2111 | Room Chrg TMC/Consortia | 179.00 |
| 23-MAY-06 | RT2111 | State Tax | 14.32 |
| 23-MAY-06 | RT2111 | Occupancy/Tourism Tax | 12.53 |
| 23-MAY-06 | 5518 | 800-665-2990 17:26 0002 | 2.00 |
| 23-MAY-06 | 5521 | 312-559-4656 17:28 0001 | 10.11 |
| 23-MAY-06 | 01019907 | Room Service | 34.89 |
| 24-MAY-06 | RT2111 | Room Chrg TMC/Consortia | 179.00 |
| 24-MAY-06 | RT2111 | State Tax | 14.32 |
| 24-MAY-06 | RT2111 | Occupancy/Tourism Tax | 12.53 |
| 24-MAY-06 | 01019938 | Room Service | 19.39 |
| 24-MAY-06 | 01019961 | Room Service | 36.75 |
| 25-MAY-06 | VM | Visa/Mastercard | 514.84- |
| | | Total Charges | 514.84 |
| | | Total Credits | 514.84- |
| | | Balance Due | 0.00 |

For your convenience, we have prepared this zero-balance folio indicating a
$0 balance on your account. Please be advised that any charges not reflected
on this folio will be charged to the credit card on file with the hotel.
While this folio reflects a $0 balance, your credit card may not be charged
until after your departure.  You are ultimately responsible for paying all of
your folio charges in full.
       ** continued on the next page **

reservations [800] 896 2596 or sheraton.com

I agree to remain personally liable for the payment of this account if the corporation or other third party billed fails to pay part or all of these charges.

_____
signature

Christopher Dickinson          ROOM     DEPART          AGENT
FOLIO  3329123  23-MAY-06      2111
**MEMBER OF (S) STARWOOD PREFERRED GUEST**

see reverse side for express checkout procedure

# Sheraton
## Midtown Atlanta
### HOTEL AT COLONY SQUARE

188 14TH STREET N.E., ATLANTA, GA 30361    TEL [404] 892-6000    FAX [404] 872-9192    SHERATON.COM/COLONYSQUARE

**G U E S T**

Christopher Dickinson
Bti/business Travel Interna

| | |
|---|---|
| ROOM | 2111 |
| RATE | 179.00 |
| NO. PERS. | 1 |
| FOLIO | 3329123      EX-A |
| PAGE | 2 |
| ARRIVE | 23-MAY-06   17:36 |
| DEPART | 25-MAY-06 |
| PAYMENT | VM |

**TRAVEL AGENT CHARGE TO**

Jenner & Black Tvl Dept
47th Floor
One Ibm Plaza
Chicago, IL 60611

| DATE | REFERENCE | DESCRIPTION | DEBIT CREDIT |
|---|---|---|---|

EXPENSE REPORT SUMMARY

| Date | Room & Tax | Food & Bev | Phone | Parking | Other | Total | Payment |
|---|---|---|---|---|---|---|---|
| 23-MAY-06 | 205.85 | 34.89 | 12.11 | 0.00 | 0.00 | 252.85 | 0.00 |
| 24-MAY-06 | 205.85 | 56.14 | 0.00 | 0.00 | 0.00 | 261.99 | 0.00 |
| Total | 411.70 | 91.03 | 12.11 | 0.00 | 0.00 | 514.84 | 0.00 |

Thank you for choosing Starwood Hotels. We look forward to welcoming you back soon!

reservations [800] 325 3535 or sheraton

I agree to remain personally liable for the payment of this account if the corporation or other third party billed fails to pay part or all of these charges.

As a Starwood Preferred Guest, you could have earned 859
Starpoints for this visit. Please provide your member number
or enroll today.

| Christopher Dickinson | ROOM | DEPART | AGENT |
|---|---|---|---|
| FOLIO 3329123   23-MAY-06 | 2111 | | |

MEMBER OF ⓢ STARWOOD PREFERRED GUEST

see reverse side for express checkout

**Yellow Cab Management, Inc.**
2230 South Michigan
Chicago, Illinois 60616
www.yellowcabchicago.com

$ 42.00        5/23/06
$        Time        Date

Received from:
J & G

Cab fare from:
ORD

To:
C BLAIR

Driver:
1711

Cab #:

Account #:

*Thank you for
riding with us!*



312-829-4222

---

**Checker Taxi Association, Inc.**
Need a cab? Dial 3-1-2-C-H-E-C-K-E-R or 312-243-2537

**RECEIPT**

Time_____ Date 5/25 20 06
Received From _____ $ 37.00
Cab Fare From ORD
To 507 Aldine
Driver _____
Cab No. _____ Account No. _____

845 W. Washington Blvd., Chicago, IL 60607          Main Office: (312) 733-4755

**E**

TAC INSURANCE CONSULTING, LLC

WINN-DIXIE PROPERTY INSURANCE

| DATE | ACTIVITY | $250 PER HOUR | TOTAL |
|------|----------|---------------|-------|
| AUG. 15 | PHONE CONVERSATION WITH CCD | l/2 HOUR | $125.00 |
| AUG. 16 | EMAIL TO CCD | 1/4 HOUR | $62.50 |
| AUG. 17 | EMAIL TO CCD | 1/4 HOUR | $62.50 |
| AUG. 19 | PHONE CONVERSATION WITH J&B | i/2 HOUR | $125.00 |
| AUG. 20 | EMAIL TO CCD<br>REVIEW OF FILE | 1/4 HOUR<br>2 1/2 HOUR | $62.50<br>$625.00 |
| AUG. 21 | REVIEW OF FILE | 4 HOURS | $1,000.00 |
| AUG. 22 | REVIEW OF FILE | 3 HOURS | $750.00 |
| AUG. 23 | REVIEW OF FILE | 3 HOURS | $750.00 |
| AUG. 24 | REVIEW OF FILE | 31/2 HOURS | $875.00 |
| AUG. 25 | EMAIL EXCHANGE WITH CCD<br>REVIEW OF FILE | 1 HOUR<br>2 HOURS | $250.00<br>$500.00 |
| AUG. 26 | REVIEW OF FILE | 3 HOURS | $750.00 |
| AUG. 27 | EMAIL TO CCD | 1/4 HOUR | $62.50 |
| AUG. 28 | REVIEW OF FILE | 1 1/2 HOURS | $375.00 |
| AUG. 30 | REVIEW FILE AND DISCUSS WITH CCD | 2 1/2 HOURS | $625.00 |
| SEPT. 19 | PHONE CONVERSATION WITH CCD | 1/2 HOUR | $125.00 |

| SEPT. 20 | REVIEW FILE AND EMAIL TO CDD | 3/4 HOUR | $187.50 |
| SEPT. 26 | PHONE CONVERSATION WITH CDD | 1/2 HOUR | $125.00 |
| SEPT. 29 | PHONE CONVERSATION WITH C. BRANDYBERRY AND EMAIL TO CDD | 3/4 HOUR | $187.50 |
| | | TOTAL | $7,625.00 |

**Charles W. Brandyberry**
**Senior Consultant**
**2479 Broadlawn Drive**
**Pittsburgh, PA 15241**
**(412) 298-5068**
**Fax (412) 851-2909**

### Invoice # JB-0001

**To:**    Jenner & Block LLP
          Attention: Christopher C. Dickinson, Esquire
          One IBM Plaza
          Chicago, IL 60611-7603

**Billing Period:**    October 24, 2005

| | |
|---|---|
| **Project:** Winn-Dixie Stores, Inc. | |
| (Marsh USA Inc. and XL Insurance America, Inc.) | |
| Per Consulting Agreement between | |
| Charles W. Brandyberry & Jenner & Block | |
| **Amount Due:** | |
| Charles W. Brandyberry | |
| Retainer | $5,000.00 |
| ( Against hourly billing rate of $210.00/hour) | |
| | |
| Total Due: | $5,000.00 |
| | |
| **Per Supporting Detail Attached** | |

Please remit by check to the above address
Thank You



## *Charles W. Brandyberry*

Senior Consultant
2479 Broadlawn Drive
Pittsburgh, PA 15241
Phone: (412) 298-5068 • Fax: (412) 851-2909

**FAX"**
**Pages Total: 3**
**Fax to: (312) 840-7330**

April 13, 2006

Jenner & Block LLP
Joeseph F. Arias, Esq.
One IBM Plaza
Chicago, IL 60611-7603

RE: Winn-Dixie Stores, Inc
    (Marsh USA Inc. and XL Insurance America, Inc.).
    March 31, 2006 Invoice

Dear Joe,
Please find enclosed my invoice for the period from October 24, 2005 to March 31, 2006 in the total net amount of $6,000.78. Supporting detail is also included. In Summary:

| | |
|---|---|
| 52.25 hours @ $210/hr | $10,972.50 |
| Miscellaneous expenses | $    28.28 |
| Less: Original Retainer | ($ 5,000.00) |
| Net Amount Due | $ 6,000.78 |

Should there be any questions please let me know. I look forward to meeting with you on April 24th in Chicago.

Sincerely,

Charles W. Brandyberry
Senior Consultant



*Charles W. Brandyberry*

**Senior Consultant**
2479 Broadlawn Drive
Pittsburgh, PA 15241
Phone: (412) 298-5068 • Fax: (412) 851-2909

## Invoice # JB-0002

**To:**   Jenner & Block LLP
Attention: Christopher C. Dickinson, Esquire
One IBM Plaza
Chicago, IL 60611-7603

**Billing Period:**   October 24, 2005 to March 31, 2006

**Project:**  Winn-Dixie Stores, Inc.
(Marsh USA Inc. and XL Insurance America, Inc.)
Per Consulting Agreement between
Charles W. Brandyberry & Jenner & Block

**Amount Due:**
Charles W. Brandyberry ( Per Attached Timelog)          $10,972.50
Miscellaneous Expenses                                          $28.28

Les: Retainer                                                     ($5,000.00)
                    Total Due:                                    $6,000.78

**Per Supporting Detail Attached**

Please remit by check to the above address
Thank You

HAVE BEEN REVIEWED

RECORD OF PAYMENT AS OF

05.09.06



## *Charles W. Brandyberry*

Senior Consultant
2479 Broadlawn Drive
Pittsburgh, PA 15241
Phone: (412) 298-5068 • Fax: (412) 851-2909

Project: Jenner & Block - Winn-Dixie Stores, Inc.
Total -TIMESHEET AND ACTIVITY LOG
Period: 10/24/05 to 3/31/06

| Date | Activity | Time/Hrs | Travel Time | Misc Exp |
|---|---|---|---|---|
| 10/25/2005 | Overview Documentation provided by J&B - CD | 0.50 | | |
| 10/26/2005 | Prelim Complaint & related correspondence review | 1.50 | | |
| 10/27/2005 | Segregate Doc's by year, Collate by date, eliminate duplications | 1.25 | | |
| | Review 04-05 Policy Documentation | 1.75 | | |
| 10/28/2005 | Review 04-05 Placement Documentation | 2.00 | | |
| 10/31/2005 | Review 02-03, 03-04 Placement Documentation | 3.75 | | |
| 11/1/2005 | Preliminary Identification of missing documentation | 2.75 | | |
| | Discussion w/TCW -Overview | 1.00 | | |
| 11/2/2005 | Review 02-03, 03-04 Policy wordings/transmittal corr | 1.50 | | |
| | Discussion w/CD & JA -Overview | 1.00 | | |
| 11/4/2005 | Discussion w/JA | 0.25 | | |
| 11/3/2005 | Review documentation | 1.25 | | |
| 11/8/2005 | Review '04 submission & suporting documentation | 1.50 | | |
| 11/15/2005 | Compare Occ/Agg Limits in binders & Policies | 1.25 | | |
| 12/7/2005 | Discussion w/JA | 0.25 | | |
| 12/10/2005 | Review affidavit draft & attach. | 1.50 | | |
| 12/11/2005 | Review pertinent documentation in support of affidavit | 2.25 | | |
| 12/12/2005 | Review pertinent documentation in support of affidavit | 2.00 | | |
| | Affidavit discussion w/JA | 1.00 | | |
| 12/13/2005 | Review final Affidavit, Notarize, Copy, Fax & Mail | 1.50 | | |
| 12/27/2005 | Telcon w/JA | 0.25 | | |
| 1/3/2006 | Review  revised complaint & Marsh Doc's | 1.25 | | |
| 1/5/2006 | Review Marsh doc's | 1.75 | | |
| 1/6/2006 | Review Marsh doc's | 2.00 | | |
| 1/9/2006 | Review Marsh doc's | 2.75 | | |
| 1/10/2006 | Review Marsh doc's & Telcon w/JA&CD | 2.25 | | |
| 1/11/2006 | Review Marsh doc's & Segregate | 2.50 | | |
| 1/13/2006 | Review Marsh doc's | 1.75 | | |
| 1/16/2006 | Review Marsh doc's | 0.75 | | |
| 1/20/2006 | Review Marsh doc's | 2.00 | | |
| 2/1/2006 | Telcon w/JA | 0.25 | | |
| 2/2/2006 | Telcon w/JA | 0.25 | | |
| 2/3/2006 | Telcon w/JA re: Expert Report | 0.25 | | |
| 2/5/2006 | Review Expert Report Draft | 1.25 | | |
| 2/6/2006 | Discuss changes w/JA | 0.75 | | |
| 2/6/2006 | Finalize Expert Report, Print & Fax Final | 2.25 | | $26.28  UPSFax |
| 2/23/2006 | Email &Telcon w/ JA | 0.25 | | |

Total Consulting Time @ $210.00/hr     62.25     $26.28  Total Expenses

$210.00
x 62.25
$10,872.50