EXHIBITS A & B TO MOTION OF WELLS FARGO BANK, N.A.,
AS TRUSTEE, TO ENJOIN DISTRIBUTIONS TO WOODLAND
HARTFORD ASSOCIATES, LLC, TO APPROVE TRANSFER TO
CLAIMS AND FOR OTHER RELIEF

EXHIBIT "A"

# PROMISSORY NOTE

Loan No. 82-5999870

$5,501,754.00                                    Dated:  September 16, 1998

**FOR VALUE RECEIVED**, the undersigned, WOODLAND HARTFORD ASSOCIATES LLC ("**Maker**"), promises to pay to the order of FIRST UNION NATIONAL BANK, a national banking association ("**Payee**"), at the office of Payee at One First Union Center DC-6, Charlotte, North Carolina 28288-0166, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of FIVE MILLION FIVE HUNDRED ONE THOUSAND SEVEN HUNDRED FIFTY FOUR AND NO/100 DOLLARS ($5,501,754.00), together with interest on so much thereof as is outstanding and unpaid, from the date of the advance of the principal evidenced hereby, at the rate of six and three quarters percent (6.75%) per annum (the "**Note Rate**"), in lawful money of the United States of America, which shall at the time of payment be legal tender in payment of all debts and dues, public and private.

## ARTICLE I. - SECURED NOTE



The indebtedness evidenced by this Promissory Note (the "**Note**") and the obligations created hereby are secured by that certain Deed of Trust and Security Agreement (the "**Security Instrument**") from Maker for the benefit of Payee, dated of even date herewith, concerning property located in Chesapeake, Virginia. The Security Instrument together with this Note and all other documents to or of which Payee is a party or beneficiary now or hereafter evidencing, securing, guarantying, modifying or otherwise relating to the indebtedness evidenced hereby, are herein referred to collectively as the "**Loan Documents.**"  All of the terms and provisions of the Loan Documents are incorporated herein by reference.  Some of the Loan Documents are to be filed for record on or about the date hereof in the appropriate public records.

## ARTICLE II. - TERMS AND CONDITIONS

2.1    _Computation of Interest_.  Interest shall be computed hereunder based on a 360-day year and 30-day months for each full calendar month and on the actual number of days elapsed for any partial month in which interest is being calculated. Interest shall accrue from the date on which funds are advanced (regardless of the time of day) through and including the day on which funds are credited pursuant to Section 2.2 hereof.

2.2    _Payment of Principal and Interest_.  Payments in federal funds immediately available in the place designated for payment received by Payee prior to 2:00 p.m. local time at said place of payment shall be credited prior to close of business, while other payments may, at the option of Payee, not be credited until immediately available to Payee in federal funds in the place designated for payment prior to 2:00 p.m. local time at said place of payment on a

day on which Payee is open for business. Such principal and interest shall be payable in equal consecutive monthly installments of $38,900.77 each, beginning on the first day of the second full calendar month following the date of this Note (or on the first day of the first full calendar month following the date hereof, in the event the advance of the principal amount evidenced by this Note is the first day of a calendar month) (the "**First Payment Date**"), and continuing on the first day of each and every month thereafter through and including September 1, 1998 (each, a "**Payment Date**").. The "**Maturity Date**" of the loan shall be two hundred forty months from the date that rent commences pursuant to section 7D of the Winn-Dixie Lease (as defined in the Security Instrument). On the Maturity Date, the entire outstanding principal balance hereof, which shall be approximately $1,482,125.08, together with all accrued but unpaid interest thereon, shall be due and payable in full.

2.3  Application of Payments. Each such monthly installment shall be applied first to the payment of accrued interest, second to the payment of any late charges, Prepayment Fee (as hereinafter defined) and other similar charges and then to reduction of principal.

2.4  Payment of "Short Interest". If the advance of the principal amount evidenced by this Note is made on a date other than a Payment Date, then Maker shall pay to Payee contemporaneously with the execution hereof interest at the Note Rate for a period from the date hereof through and including the last day of this calendar month.

2.5  Prepayment; Defeasance.(a) This Note may not be prepaid, in whole or in part (except as otherwise specifically provided herein) at any time. In the event that Maker wishes to have the Security Property (as hereinafter defined) released from the lien of the Security Instrument (as hereinafter defined), Maker's sole option shall be a Defeasance (as hereinafter defined) upon satisfaction of the terms and conditions set forth in Section 1.5(d) hereof.

(b)  If, prior to the fourth (4th) anniversary of the First Payment Date (the "Lockout Expiration Date"), the indebtedness evidenced by this Note shall have been declared due and payable by Payee pursuant to Article II hereof or the provisions of any other Loan Document due to a default by Maker, then, in addition to the indebtedness evidenced by this Note being immediately due and payable, there shall also then be immediately due and payable a sum equal to the interest which would have accrued on the principal balance of this Note at the Note Rate from the date of such acceleration to the Lock-out Expiration Date, together with a prepayment fee in an amount equal to the Yield Maintenance Premium (as hereinafter defined) based on the entire indebtedness on the date of such acceleration. If such acceleration is on or following the Lock-out Expiration Date, the Yield Maintenance Premium shall also then be immediately due and payable as though Maker were prepaying the entire indebtedness on the date of such acceleration. In addition to the amounts described in the two preceding sentences, in the event of any such acceleration or tender of payment of such indebtedness occurs or is made on or prior to the first (1st) anniversary of the date of this Note, there shall also then be immediately due and payable an additional prepayment fee of three percent (3%) of the principal balance of this Note. The term "Yield Maintenance Premium" shall mean an amount equal to the greater of (A) one percent (1.0%) of the principal amount being prepaid, or (B) the present value of a series of payments each equal to the Payment Differential (as

-2-

hereinafter defined) and payable on each Payment Date over the remaining original term of this Note and on the Maturity Date, discounted at the Reinvestment Yield (as hereinafter defined) for the number of months remaining as of the date of such prepayment to each such Payment Date and the Maturity Date. The term "Payment Differential" shall mean an amount equal to (i) the Note Rate less the Reinvestment Yield, divided by (ii) twelve (12) and multiplied by (iii) the principal sum outstanding under this Note after application of the constant monthly payment due under this Note on the date of such prepayment, provided that the Payment Differential shall in no event be less than zero. The term "Reinvestment Yield" shall mean an amount equal to the lesser of (i) the yield on the U.S. Treasury issue (primary issue) with a maturity date closest to the Maturity Date, or (ii) the yield on the U.S. Treasury issue (primary issue) with a term equal to the remaining average life of the indebtedness evidenced by this Note, with each such yield being based on the bid price for such issue as published in the Wall Street Journal on the date that is fourteen (14) days prior to the date of such prepayment set forth in the notice of prepayment (or, if such bid price is not published on that date, the next preceding date on which such bid price is so published) and converted to a monthly compounded nominal yield. In the event that any prepayment fee is due hereunder, Payee shall deliver to Maker a statement setting forth the amount and determination of the prepayment fee, and, provided that Payee shall have in good faith applied the formula described above, Maker shall not have the right to challenge the calculation or the method of calculation set forth in any such statement in the absence of manifest error, which calculation may be made by Payee on any day during the fifteen (15) day period preceding the date of such prepayment. Payee shall not be obligated or required to have actually reinvested the prepaid principal balance at the Reinvestment Yield or otherwise as a condition to receiving the prepayment fee.

(c)    Partial prepayments of this Note shall not be permitted, except for partial prepayments resulting from Payee's election to apply insurance or condemnation proceeds to reduce the outstanding principal balance of this Note as provided in the Security Instrument, in which event no prepayment fee or premium shall be due unless, at the time of either Payee's receipt of such proceeds or the application of such proceeds to the outstanding principal balance of this Note, an Event of Default, or an event which, with notice or the passage of time, or both, would constitute an Event of Default, shall have occurred, which default or Event of Default is unrelated to the applicable casualty or condemnation, in which event the applicable prepayment fee or premium shall be due and payable based upon the amount of the prepayment. No notice of prepayment shall be required under the circumstances specified in the preceding sentence. No principal amount repaid may be reborrowed. Any such partial prepayments of principal shall be applied to the unpaid principal balance evidenced hereby but such application shall not reduce the amount of the fixed monthly installments required to be paid pursuant to Section 1.2 above. Except as otherwise expressly provided in Section 1.5(b)above, the prepayment fees provided above shall be due, to the extent permitted by applicable law, under any and all circumstances where all or any portion of this Note is paid prior to the Maturity Date, whether such prepayment is voluntary or involuntary, including, without limitation, if such prepayment results from Payee's exercise of its rights upon Maker's default and acceleration of the Maturity Date of this Note (irrespective of whether foreclosure proceedings have been commenced), and shall be in addition to any other sums due hereunder

or under any of the other Loan Documents. No tender of a prepayment of this Note with respect to which a prepayment fee is due shall be effective unless such prepayment is accompanied by the applicable prepayment fee.

(d)(i)    At any time after the later of (x) the Lockout Expiration Date, and (y) the date which is two (2) years after the "startup day," within the meaning of Section 860G(a) (9) of the Internal Revenue Code of 1986, as amended from time to time or any successor statute (the "Code"), of a "real estate mortgage investment conduit," within the meaning of Section 860D of the Code, that holds this Note, and provided no Event of Default has occurred and is not cured within the applicable grace period hereunder or under any of the other Loan Documents, at Maker's option, Payee shall cause the release of the Security Property from the lien of the Security Instrument and the other Loan Documents (a "<u>Defeasance</u>") upon the satisfaction of the following conditions:

(A)    Maker shall give not more than ninety (90) days' or less than sixty (60) days' prior written notice to Payee specifying the date Maker intends for the Defeasance to be consummated (the "<u>Release Date</u>), which date shall be a Payment Date.

(B)    All accrued and unpaid interest and all other sums due under this Note and under the other Loan Documents up to and including the Release Date shall be paid in full on or prior to the Release Date.

(C)    Maker shall deliver to Payee on or prior to the Release Date:

(1)    a sum of money in immediately available funds (the "<u>Defeasance Deposit</u>") equal to the outstanding principal balance of this Note plus an amount, if any, which together with the outstanding principal balance of this Note, shall be sufficient to enable Payee to purchase, through means and sources customarily employed and available to Payee, for the account of Maker, direct, non-callable obligations of the United States of America that provide for payments prior, but as close as possible, to all successive monthly Payment Dates occurring after the Release Date and to the Maturity Date, with each such payment being equal to or greater than the amount of the corresponding installment of principal and/or interest required to be paid under this Note (including, but not limited to, all amounts due on the Maturity Date) for the balance of the term hereof (the "<u>Defeasance Collateral</u>"), each of which shall be duly endorsed by the holder thereof as directed by Payee or accompanied by a written instrument of transfer in form and substance satisfactory to Payee in its sole discretion (including, without limitation, such instruments as may be required by the depository institution holding such securities or the issuer thereof, as the case may be,

-4-

to effectuate book-entry transfers and pledges through the book-entry facilities of such institution) in order to perfect upon the delivery of the Defeasance Security Agreement (as hereinafter defined) the first priority security interest in the Defeasance Collateral in favor of Payee in conformity with all applicable state and federal laws governing granting of such security interests.

(2)     A pledge and security agreement, in form and substance satisfactory to Payee in its sole discretion, creating a first priority security interest in favor of Payee in the Defeasance Collateral (the "Defeasance Security Agreement"), which shall provide, among other things, that any excess received by Payee from the Defeasance Collateral over the amounts payable by Maker hereunder shall be refunded to Maker promptly after each monthly Payment Date.

(3)     A certificate of Maker certifying that all of the requirements set forth in this subsection 1.5(d)(i) have been satisfied.

(4)     An opinion of counsel for Maker in form and substance and delivered by counsel satisfactory to Payee in its sole but reasonable discretion stating among other things, that Payee has a perfected first priority security interest in the Defeasance Collateral and that the Defeasance Security Agreement is enforceable against Maker in accordance with its terms.

(5)     Maker and any guarantor or indemnitor of Maker's obligations under the Loan Documents for which Maker has personal liability executes and delivers to Payee such documents and agreements as Payee shall reasonably require to evidence and effectuate the ratification of such personal liability and guaranty or indemnity, respectively.

(6)     Such other certificates, documents or instruments as Payee may reasonably require.

(7)     Payment of all fees, costs, expenses and charges incurred by Payee in connection with the Defeasance of the Security Property and the purchase of the Defeasance Collateral, including, without limitation, all legal fees and costs and expenses incurred by Payee or its agents in connection with release of the Security Property, review of the proposed Defeasance Collateral and preparation of the Defeasance Security Agreement and related documentation, any revenue, documentary, stamp, intangible or other taxes, charges or fees due in connection with transfer of the Note,

assumption of the Note, or substitution of collateral for the Security Property shall be paid on or before the Release Date. Without limiting Maker's obligations with respect thereto, Payee shall be entitled to deduct all such fees, costs, expenses and charges from the Defeasance Deposit to the extent of any portion of the Defeasance Deposit which exceeds the amount necessary to purchase the Defeasance Collateral.

(D)    In connection with the Defeasance Deposit, Maker hereby authorizes and directs Payee using the means and sources customarily employed and available to Payee to use the Defeasance Deposit to purchase for the account of Maker the Defeasance Collateral. Furthermore, the Defeasance Collateral shall be arranged such that payments received from such Defeasance Collateral shall be paid directly to Payee to be applied on account of the indebtedness of this Note. Any part of the Defeasance Deposit in excess of the amount necessary to purchase the Defeasance Collateral and to pay the other and related costs Maker is obligated to pay under this Section 1.5 shall be refunded to Maker.

(ii)    Upon compliance with the requirements of subsection 1.5(d)(i), the Security Property shall be released from the lien of the Security Instrument and the other Loan Documents, and the Defeasance Collateral shall constitute collateral which shall secure this Note and all other obligations under the Loan Documents. Payee will, at Maker's expense, execute and deliver any agreements reasonably requested by Maker to release the lien of the Security Instrument from the Security Property.

(iii)    Upon the release of the Security Property in accordance with this Section 1.5(d), Maker shall assign all its obligations and rights under this Note, together with the pledged Defeasance Collateral, to a newly created successor entity which complies with the terms of Section 1.33 of the Security Instrument designated by Maker and approved by Payee in its sole discretion. Such successor entity shall execute an assumption agreement in form and substance satisfactory to Payee in its sole discretion pursuant to which it shall assume Maker's obligations under this Note and the Defeasance Security Agreement. As conditions to such assignment and assumption, Maker shall (x) deliver to Payee an opinion of counsel in form and substance and delivered by counsel satisfactory to Payee in its sole but reasonable discretion stating, among other things, that such assumption agreement is enforceable against Maker and such successor entity in accordance with its terms and that this Note and the Defeasance Security Agreement as so assumed, are enforceable against such successor entity in accordance with their respective terms, and (y) pay all costs and expenses (including, but not limited to, legal fees) incurred by Payee or its agents in connection with such assignment and assumption (including, without limitation, the review of the proposed transferee and the preparation of the assumption agreement and related documentation). Upon such assumption, Maker shall be relieved of its obligations hereunder, under the other Loan Documents other than as specified in Section 1.5(d)(C)(5) above and under the Defeasance Security Agreement.

(e)    Notwithstanding the preceding paragraphs, prepayment of this Note shall be permitted upon the failure of Maker to provide Payee with the Estoppel (as defined below) by May 21, 1999 ("Estoppel Default").   If the Estoppel Default occurs, the indebtedness evidenced by this Note shall be declared immediately due and payable pursuant to Article II hereof and in addition to the indebtedness evidenced by this Note being due and payable, Maker shall pay to Payee a prepayment fee equal to two percent (2%) of the original principal amount of this Note.   Such two percent (2%) prepayment fee shall be held in escrow with Payee as of the date hereof and shall be held in accordance with Section 1.34 (the "Prepayment Reserve") of the Security Instrument and upon the Estoppel Default, the Prepayment Reserve shall be immediately paid to Payee without further action hereunder, under the Security Instrument or the other Loan Documents.

## ARTICLE III.  - DEFAULT

3.1    Events of Default.  It is hereby expressly agreed that should any default occur in the payment of principal or interest as stipulated above and such payment is not made within seven (7) days after the date such payment is due (provided that no grace period is provided for the payment of principal and interest due on the Maturity Date), or should any other default occur under any of the Loan Documents which is not cured within any applicable grace or cure period, then an **"Event of Default"** shall exist hereunder, and upon the occurrence of an Event of Default, the indebtedness evidenced hereby, including all sums advanced or accrued hereunder or under any other Loan Document, and all unpaid interest accrued thereon, shall, at the option of Payee and without notice to Maker, at once become due and payable and may be collected forthwith, whether or not there has been a prior demand for payment and regardless of the stipulated date of maturity.

3.2    Late Charges.  In the event that any payment is not received by Payee on the date when due (subject to the applicable grace period), then in addition to any default interest payments due hereunder, Maker shall also pay to Payee a late charge in an amount equal to five percent (5%) of the amount of such overdue payment.

3.3    Default Interest Rate.  So long as any Event of Default exists hereunder, regardless of whether or not there has been an acceleration of the indebtedness evidenced hereby, and at all times after maturity of the indebtedness evidenced hereby (whether by acceleration or otherwise), interest shall accrue on the outstanding principal balance of this Note at a rate per annum equal to four percent (4%) in excess of the Note Rate, or if such increased rate of interest may not be collected under applicable law, then at the maximum rate of interest, if any, which may be collected from Maker under applicable law (the **"Default Interest Rate"**), and such default interest shall be immediately due and payable.

3.4    Maker's Agreements.  Maker acknowledges that it would be extremely difficult or impracticable to determine Payee's actual damages resulting from any late payment or default, and such late charges and default interest are reasonable estimates of those damages and do not constitute a penalty.  The remedies of Payee in this Note or in the Loan Documents,

-7-



or at law or in equity, shall be cumulative and concurrent, and may be pursued singly, successively or together, in Payee's discretion.

     3.5    Maker to Pay Costs. In the event this Note, or any part hereof, is collected by or through an attorney-at-law, Maker agrees to pay all costs of collection, including, but not limited to, reasonable attorneys' fees.

     3.6    Exculpation. Notwithstanding anything in the Loan Documents to the contrary, but subject to the qualifications hereinbelow set forth, Maker agrees that:

     (a)    Maker shall be liable upon the indebtedness evidenced hereby and for the other obligations arising under the Loan Documents to the full extent (but only to the extent) of the security therefor, the same being all properties (whether real or personal), rights, estates and interests now or at any time hereafter securing the payment of this Note and/or the other obligations of Maker under the Loan Documents (collectively, the **"Security Property"**);

     (b)    if a default occurs in the timely and proper payment of all or any part of such indebtedness evidenced hereby or in the timely and proper performance of the other obligations of Maker under the Loan Documents, any judicial proceedings brought by Payee against Maker shall be limited to the preservation, enforcement and foreclosure, or any thereof, of the liens, estates, assignments, rights and security interests now or at any time hereafter securing the payment of this Note and/or the other obligations of Maker under the Loan Documents, and no attachment, execution or other writ of process shall be sought, issued or levied upon any assets, properties or funds of Maker other than the Security Property, except with respect to the liability described below in subsection (c); and

     (c)    notwithstanding subsection (a) above, from the date hereof until such time that Winn-Dixie (as defined in the Security Instrument) delivers to Lender an estoppel certificate stating the specific date that Tenant commenced paying rent under the Winn-Dixie Lease, and otherwise in form and substance acceptable to Payee in its sole discretion ("Estoppel"), the Loan shall be fully recourse to the Indemnitors. If Payee does not receive such Estoppel by May 21, 1999, it shall be an event of default under the Note, the Deed of Trust and the Loan Documents, and Indemnitors shall be personally liable for all of the indebtedness evidenced hereby and for the obligations arising under the Loan Documents. As of the date of Payee's receipt of the Estoppel through the Maturity Date of the Loan, in the event of a foreclosure of such liens, security titles, estates, assignments, rights or security interests securing the payment of this Note and/or the other obligations of Maker under the Loan Documents, no judgment for any deficiency upon the indebtedness evidenced hereby shall be sought or obtained by Payee against Maker, except with respect to the liability described below in this section; provided, however, that, notwithstanding the foregoing provisions of this section, Maker shall be fully and personally liable and subject to legal action (i) for proceeds paid under any insurance policies (or paid as a result of any other claim or cause of action against any person or entity) by reason of damage, loss or destruction to all or any portion of the Security Property, to the full extent of such proceeds not previously delivered to Payee, but which, under the terms of the Loan Documents, should have been



delivered to Payee, (ii) for proceeds or awards resulting from the condemnation or other taking in lieu of condemnation of all or any portion of the Security Property, or any of them, to the full extent of such proceeds or awards not previously delivered to Payee, but which, under the terms of the Loan Documents, should have been delivered to Payee, (iii) for all tenant security deposits or other refundable deposits paid to or held by Maker or any other person or entity in connection with the Net Lease (as defined below) and all other leases, if any, affecting all or any portion of the Security Property which are not applied in accordance with the terms of the Net Lease or other applicable lease or other agreement, (iv) for rent and other payments received from the tenants under the Net Lease and any other lease, if any, of all or any portion of the Security Property paid more than one month in advance, (v) for rents, issues, profits and revenues of all or any portion of the Security Property received or applicable to a period after any notice of default from Payee hereunder or under the Loan Documents in the event of any default by Maker hereunder or thereunder which are not either applied to the ordinary and necessary expenses of owning and operating the Security Property or paid to Payee, (vi) for waste committed on the Security Property as a result of the intentional misconduct or gross negligence of Maker or any of its principals, officers or general partners, or any agent or employee of any such persons, or any removal of the Security Property in violation of the terms of the Loan Documents, to the full extent of the losses or damages incurred by Payee on account of such failure, (vii) for failure to pay, or to cause the tenant under the Net Lease to pay, any valid taxes, assessments, mechanic's liens, materialmen's liens or other liens which could create liens on any portion of the Security Property which would be superior to the lien or security title of the Security Instrument or the other Loan Documents, to the full extent of the amount claimed by any such lien claimant, (viii) for all obligations and indemnities of Maker under the Loan Documents relating to hazardous or toxic substances or compliance with environmental laws and regulations to the full extent of any losses or damages (including those resulting from diminution in value of any Security Property) incurred by Payee as a result of the existence of such hazardous or toxic substances or failure to comply, or failure to cause the tenant under the Net Lease affecting the Security Property to comply, with environmental laws or regulations, (ix) for fraud or material misrepresentation by Maker or any of its principals, officers, or general partners, any guarantor, any indemnitor or any agent, employee or other person authorized or apparently authorized to make statements or representations on behalf of Maker, any principal, officer or partner of Maker, any guarantor or any indemnitor, to the full extent of any losses, damages and expenses of Payee on account thereof, (x) for failure to pay any Prepayment Fee and (xi) for all amounts incurred by Payee to cure defaults of Maker under the Net Lease affecting the Security Property with respect to landlord obligations giving rise to tenant set-off, abatement or termination rights. Additionally, in the event that the tenant under the Net Lease is entitled to a set-off, abatement or credit of the rent due under the Net Lease due to any act, omission or default by the landlord thereunder or a mutual agreement between the landlord and tenant thereunder, then Maker shall be fully and personally liable, and subject to legal action, for the amount of such credit or set-off of rent. Moreover, in the event that the Net Lease terminates as a result of any act, omission or default by the landlord thereunder or a mutual agreement between the landlord and the tenant thereunder, then Maker shall be fully and personally liable and subject to legal action for the entire amount of the Loan. References herein to particular sections of the Loan Documents shall be deemed references to such sections as affected by other provisions of the Loan Documents relating thereto. Nothing

contained in this section shall (1) be deemed to be a release or impairment of the indebtedness evidenced by this Note or the other obligations of Maker under the Loan Documents or the lien of the Loan Documents upon the Security Property, or (2) preclude Payee from foreclosing the Loan Documents in case of any default or from enforcing any of the other rights of Payee except as stated in this section, or (3) limit or impair in any way whatsoever (A) the Indemnity and Guaranty Agreement (the "**Guaranty**") or (B) the Hazardous Substances Indemnity Agreement (the "**Environmental Indemnity**"), each dated of even date herewith and executed and delivered in connection with the indebtedness evidenced by this Note, or release, relieve, reduce, waive or impair in any way whatsoever, any obligation of any party to the Guaranty or the Environmental Indemnity.

## ARTICLE IV.  - GENERAL CONDITIONS

4.1     No Waiver; Amendment.  No failure to accelerate the debt evidenced hereby by reason of default hereunder, acceptance of a partial or past due payment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of Payee thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by any applicable laws; and Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note or any installment due hereunder made by agreement with any person now or hereafter liable for the payment of this Note shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part unless Payee agrees otherwise in writing.  This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

4.2     Waivers.  Presentment for payment, demand, protest and notice of demand, protest and nonpayment and all other notices are hereby waived by Maker.  Maker hereby further waives and renounces, to the fullest extent permitted by law, all rights to the benefits of any moratorium, reinstatement, marshaling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now or hereafter provided by the Constitution and laws of the United States of America and of each state thereof, both as to itself and in and to all of its property, real and personal, against the enforcement and collection of the obligations evidenced by this Note or the other Loan Documents.

4.3     Limit of Validity.  The provisions of this Note and of all agreements between Maker and Payee, whether now  existing or hereafter arising and whether written or oral, including, but not limited to, the Loan Documents, are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of demand or acceleration of the maturity of this Note or otherwise, shall the amount contracted for, charged, taken, reserved, paid or agreed to be paid ("**Interest**") to Payee for the use, forbearance or detention of the money loaned under this Note exceed the maximum amount permissible under applicable law.  If,

from any circumstance whatsoever, performance or fulfillment of any provision hereof or of any agreement between Maker and Payee shall, at the time performance or fulfillment of such provision shall be due, exceed the limit for Interest prescribed by law or otherwise transcend the limit of validity prescribed by applicable law, then ipso facto the obligation to be performed or fulfilled shall be reduced to such limit, and if, from any circumstance whatsoever, Payee shall ever receive anything of value deemed Interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive Interest shall be applied to the reduction of the principal balance owing under this Note in the inverse order of its maturity (whether or not then due) or at the option of Payee be paid over to Maker, and not to the payment of Interest. All Interest (including any amounts or payments judicially or otherwise under the law deemed to be Interest) contracted for, charged, taken, reserved, paid or agreed to be paid to Payee shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of this Note, including any extensions and renewals hereof until payment in full of the principal balance of this Note so that the Interest thereon for such full term will not exceed at any time the maximum amount permitted by applicable law. To the extent United States federal law permits a greater amount of interest than is permitted under the law of the State in which the Security Property is located, Payee will rely on United States federal law for the purpose of determining the maximum amount permitted by applicable law. Additionally, to the extent permitted by applicable law now or hereafter in effect, Payee may, at its option and from time to time, implement any other method of computing the maximum lawful rate under the law of the State in which the Security Property is located or under other applicable law by giving notice, if required, to Maker as provided by applicable law now or hereafter in effect. This Section 4.3 will control all agreements between Maker and Payee.

4.4    Use of Funds. Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal, family or household purposes.

4.5    Unconditional Payment. Maker is and shall be obligated to pay principal, interest and any and all other amounts which become payable hereunder or under the other Loan Documents absolutely and unconditionally and without any abatement, postponement, diminution or deduction and without any reduction for counterclaim or setoff. In the event that at any time any payment received by Payee hereunder shall be deemed by a court of competent jurisdiction to have been a voidable preference or fraudulent conveyance under any bankruptcy, insolvency or other debtor relief law, then the obligation to make such payment shall survive any cancellation or satisfaction of this Note or return thereof to Maker and shall not be discharged or satisfied with any prior payment thereof or cancellation of this Note, but shall remain a valid and binding obligation enforceable in accordance with the terms and provisions hereof, and such payment shall be immediately due and payable upon demand.

4.6    Governing Law. THIS NOTE SHALL BE INTERPRETED, CONSTRUED AND ENFORCED ACCORDING TO THE LAWS OF THE STATE IN WHICH THE MORTGAGED PROPERTY IS LOCATED.

## ARTICLE V.  - MISCELLANEOUS PROVISIONS

The terms and provisions hereof shall be binding upon and inure to the benefit of Maker and Payee and their respective heirs, executors, legal representatives, successors, successors-in-title and assigns, whether by voluntary action of the parties or by operation of law. As used herein, the terms **"Maker"** and **"Payee"** shall be deemed to include their respective heirs, executors, legal representatives, successors, successors-in-title and assigns, whether by voluntary action of the parties or by operation of law. If Maker consists of more than one person or entity, each shall be jointly and severally liable to perform the obligations of Maker under this Note. All personal pronouns used herein, whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural and vice versa. Titles of articles and sections are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provisions hereof. Time is of the essence with respect to all provisions of this Note. This Note and the other Loan Documents contain the entire agreements between the parties hereto relating to the subject matter hereof and thereof and all prior agreements relative hereto and thereto which are not contained herein or therein are terminated.

This Note may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Note may be detached from any counterpart of this Assignment without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Assignment identical in form hereto but having attached to it one or more additional signature pages.

**[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF**, Maker has executed this Note as of the date first written above.

MAKER:

**WOODLAND HARTFORD ASSOCIATES LLC,**
a New York limited liability company

By:    Woodland Hartford Management, Corp.
       a New York corporation,
       its Manager

       By: _____
          Barry Levites
          President

**THE FOLLOWING PARTIES ARE EXECUTING THIS NOTE, TO ACKNOWLEDGE AND ACCEPT EACH PARTY'S OBLIGATIONS CONTAINED IN SECTION 3.6 HEREOF.**

_____
BARRY LEVITES, Individually

_____
RONALD RETTNER, Individually

_____
HOWARD PARNES, Individually

_____
JAMES G. HOULIHAN, Individually

_____
DANIEL HOULIHAN, Individually

IN WITNESS WHEREOF, Maker has executed this Note as of the date first written above.

MAKER:

**WOODLAND HARTFORD ASSOCIATES LLC,**
a New York limited liability company

By:    Woodland Hartford Management, Corp.
a New York corporation,
its Manager

        By:    _____
                Barry Levites
                President

**THE FOLLOWING PARTIES ARE EXECUTING THIS NOTE, TO ACKNOWLEDGE AND ACCEPT EACH PARTY'S OBLIGATIONS CONTAINED IN SECTION 3.6 HEREOF.**

_____
BARRY LEVITES, Individually

_____
RONALD RETTNER, Individually

_____
HOWARD PARNES, Individually

_____
JAMES G. HOULIHAN, Individually

_____
DANIEL HOULIHAN, Individually

EXHIBIT "B"

3741
0003

BK 3741 PG003                    Q33054

---

WOODLAND HARTFORD ASSOCIATES LLC,
as Grantor

to

INDEPENDENT TRUSTEES OF VIRGINIA, INC.,
as Trustee

For the Benefit of

FIRST UNION NATIONAL BANK,

as Beneficiary

---

DEED OF TRUST AND SECURITY AGREEMENT

---

Date: As of September 16, 1998

PREPARED BY AND UPON RECORDATION RETURN TO:

CADWALADER, WICKERSHAM & TAFT
227 West Trade Street, Suite 2400
Charlotte, North Carolina 28202
Attention: Holly S. Marcille, Esq.

---

J:\DOCS\NCLIB1\ACAPERTO\0044141.08

3741
0004

BK 3741 PG004

## DEED OF TRUST AND SECURITY AGREEMENT

THIS DEED OF TRUST AND SECURITY AGREEMENT (this "**Deed of Trust**") is made as of September 16, 1998 by WOODLAND HARTFORD ASSOCIATES LLC, as Grantor ("**Grantor**"), whose address is 341 East 149th Street, Bronx, New York, to INDEPENDENT TRUSTEES OF VIRGINIA, INC., whose address is 500 East Main Street, Suite 808, Norfolk, Virginia 23510, as Trustee ("**Trustee**") for the benefit of FIRST UNION NATIONAL BANK, a national banking association, as Beneficiary ("**Beneficiary**"), whose address is One First Union Center DC-6, Charlotte, North Carolina 28288; ATTN: Barry P. Reiner, Real Estate Capital Markets Contract Finance.

### WITNESSETH:

THAT FOR AND IN CONSIDERATION OF THE SUM OF TEN AND NO/100 DOLLARS ($10), AND OTHER VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, GRANTOR HEREBY IRREVOCABLY MORTGAGES, GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS, PLEDGES, SETS OVER AND ASSIGNS, WITH POWER OF SALE, all of Grantor's estate, right, title and interest in, to and under any and all of the following described property, whether now owned or hereafter acquired (collectively, the "**Trust Property**"):

(A)  All that certain real property situated in the City of Chesapeake, State of Virginia, more particularly described on Exhibit A attached hereto and incorporated herein by this reference (the "**Premises**"), together with all of the easements, rights, privileges, franchises, tenements, hereditaments and appurtenances now or hereafter thereunto belonging or in any way appertaining thereto, and all of the estate, right, title, interest, claim and demand whatsoever of Grantor therein or thereto, either at law or in equity, in possession or in expectancy, now or hereafter acquired;

(B)  All structures, buildings and improvements of every kind and description now or at any time hereafter located or placed on the Premises (the "**Improvements**");

(C)  All furniture, furnishings, fixtures, goods, equipment, inventory or personal property owned by Grantor and now or hereafter located on, attached to or used in and about the Improvements, including, but not limited to, all machines, engines, boilers, dynamos, elevators, stokers, tanks, cabinets, awnings, screens, shades, blinds, carpets, draperies, lawn mowers, and all appliances, plumbing, heating, air conditioning, lighting, ventilating, refrigerating, disposal and incinerating equipment, and all fixtures and appurtenances thereto, and such other goods and chattels and personal property owned by Grantor as are now or hereafter used or furnished in operating the Improvements, or the activities conducted therein, and all building materials and equipment hereafter situated on or about the Premises or Improvements, and all warranties and guaranties relating thereto, and all additions thereto and substitutions and replacements therefor (exclusive of any of the foregoing owned or leased by Tenant (as hereinafter defined);

J:\DOCS\NCLIB1\ACAPERTO\0044141.08

3741
0005

BK 3741 PG005

(D)    All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, and other emblements now or hereafter located on the Premises or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, tenements, hereditaments and appurtenances, reversions and remainders whatsoever, in any way belonging, relating or appertaining to the Trust Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor;

(E)    All water, ditches, wells, reservoirs and drains and all water, ditch, well, reservoir and drainage rights which are appurtenant to, located on, under or above or used in connection with the Premises or the Improvements, or any part thereof, whether now existing or hereafter created or acquired;

(F)    All minerals, crops, timber, trees, shrubs, flowers and landscaping features now or hereafter located on, under or above the Premises;

(G)    All cash funds, deposit accounts and other rights and evidence of rights to cash, now or hereafter created or held by Beneficiary pursuant to this Deed of Trust or any other of the Loan Documents (as hereinafter defined);

(H)    That certain lease (the "Winn-Dixie Lease"), dated as of November 21, 1997, between Gem Cedar, L.L.C. (predecessor in interest to Grantor), as landlord, and Winn Dixie Raleigh, Inc. ("Winn-Dixie"), as tenant affecting the Trust Property, or, in the event the Winn-Dixie Lease is terminated or otherwise no longer in full force and effect, any Triple Net Lease (as hereinafter defined), together with all leases, subleases, licenses, concessions and occupancy agreements in connection therewith or substitution therefor, whether written or oral, now or hereafter entered into and all rents, royalties, issues, profits, bonus money, revenue, income, rights and other benefits (collectively, the "Rents") of the Premises or the Improvements, now or hereafter arising from the use or enjoyment of all or any portion thereof or from any present or future lease (including, without limitation, oil, gas and mineral leases), license, concession, occupancy agreement or other agreement pertaining thereto or arising from the Net Lease (as hereinafter defined) or any other lease, sublease or license agreement or any of the General Intangibles (as hereinafter defined) and all cash or securities deposited to secure performance by the Tenant under the Net Lease or any other Tenants, lessees or licensees, as applicable, of their obligations under any such leases, licenses, concessions or occupancy agreements, whether said cash or securities are to be held until the expiration of the terms of said leases, licenses, concessions or occupancy agreements or applied to one or more of the installments of rent coming due prior to the expiration of said terms, subject, however, to the provisions contained in Section 1.11 hereinbelow. "Triple Net Lease" shall mean any lease of the Trust Property entered into after the date hereof between Grantor, as landlord, and an investment grade credit tenant (the "Credit Tenant") on a Triple Net Lease Basis (as hereinafter defined), approved by Beneficiary, in its sole discretion, and "Triple Net Lease Basis" shall mean that the Credit Tenant under the Triple Net Lease is responsible for the payment and performance, as applicable, of all real estate taxes, insurance, maintenance, repairs and restoration of the Trust Property (whether structural or non-structural) so that the

J:\DOCS\NCLIB1\ACAPERTO\0044141.08                    -2-

3741
0006

BK 3741 PG006

Triple Net Lease shall yield to Grantor, as landlord, on an absolutely net basis all basic rent due thereunder, without any right on the part of the Credit Tenant to any offset or abatement thereof, and that all costs, expenses and obligations of any nature whatsoever relating to the Trust Property shall be payable by the Credit Tenant thereunder. The Winn-Dixie Lease or any then Triple Net Lease, as applicable, shall hereinafter be referred to as the "Net Lease", and Winn-Dixie or any then Credit Tenant, as applicable, shall hereinafter be referred to as the "Tenant";

(I)    All other contracts and agreements now or hereafter entered into by Grantor covering any part of the Premises or the Improvements and all revenue, income and other benefits thereof, including, without limitation, management agreements, service contracts, maintenance contracts, equipment leases, personal property leases and any contracts or documents relating to construction on any part of the Premises or the Improvements (including plans, drawings, surveys, tests, reports, bonds and governmental approvals) or to the management or operation of any part of the Premises or the Improvements;

(J)    All present and future monetary deposits given by Grantor to any public or private utility with respect to utility services furnished to any part of the Premises or the Improvements;

(K)    All present and future funds, accounts, instruments, accounts receivable, documents, causes of action, claims, general intangibles (including, without limitation, trademarks, trade names, service marks and symbols now or hereafter used by Grantor in connection with any part of the Premises or the Improvements, all names by which the Premises or the Improvements may be operated or known, all rights to carry on business under such names, and all rights, interest and privileges which Grantor has or may have as developer or declarant under any covenants, restrictions or declarations now or hereafter relating to the Premises or the Improvements) and all notes or chattel paper now or hereafter arising from or by virtue of any transactions related to the Premises or the Improvements (collectively, the "General Intangibles");

(L)    All water taps, sewer taps, certificates of occupancy, permits, licenses, franchises, certificates, consents, approvals and other rights and privileges now or hereafter obtained in connection with the Premises or the Improvements and all present and future warranties and guaranties relating to the Improvements;

(M)    All right, title and interest of Grantor in and to all building materials, supplies and equipment now or hereafter placed on the Premises or in the Improvements and all architectural renderings, models, drawings, plans, specifications, studies and data now or hereafter relating to the Premises or the Improvements;

(N)    All right, title and interest of Grantor in any insurance policies or binders now or hereafter relating to the Trust Property, including any unearned premiums thereon;

(O)    All right, title and interest of Grantor in and to all proceeds, products, substitutions and accessions (including claims and demands therefor) of the conversion,

3741
0007

BK 3741 PG007

voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, the proceeds of insurance and condemnation awards; and

(P)     All other or greater rights and interests of every nature in the Premises or the Improvements and in the possession or use thereof and income therefrom, whether now owned or hereafter acquired by Grantor.

FOR THE PURPOSE OF SECURING:

(1)     The debt evidenced by that certain Promissory Note (such Promissory Note, together with any and all renewals, amendments, modifications, consolidations and extensions thereof, is hereinafter referred to as the "Note") of even date with this Deed of Trust, made by Grantor payable to the order of Beneficiary in the principal face amount of FIVE MILLION FIVE HUNDRED ONE THOUSAND SEVEN HUNDRED FIFTY FOUR AND NO/100 DOLLARS ($5,501,754.00), together with interest as therein provided;

(2)     The full and prompt payment and performance of all of the provisions, agreements, covenants and obligations herein contained and contained in any other agreements, documents or instruments now or hereafter evidencing, securing or otherwise relating to the Debt (as hereinafter defined), including, but not limited to, the Hazardous Indemnity Agreement (as hereinafter defined), and the Net Lease (the Note, this Deed of Trust, the Net Lease and such other agreements, documents and instruments, together with any and all renewals, amendments, extensions and modifications thereof, are hereinafter collectively referred to as the "Loan Documents") and the payment of all other sums therein covenanted to be paid, but specifically excluding any covenants, agreements and obligations to be observed or performed by the Tenant under the Net Lease;

(3)     Any and all additional advances made by Beneficiary to protect or preserve the Trust Property or the lien or security interest created hereby on the Trust Property, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's obligations hereunder or under the other Loan Documents or for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Trust Property at the time of such advances); and

(4)     Any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations, replacements and extensions thereof, it being contemplated by Grantor and Beneficiary that Grantor may hereafter become so indebted to Beneficiary.

(All of the sums referred to in Paragraphs (1) through (4) above are herein sometimes referred to as the "Debt").

TO HAVE AND TO HOLD the Trust Property unto Trustee, its successors and assigns forever, and Grantor does hereby bind itself, its successors and assigns, to WARRANT AND FOREVER DEFEND the title to the Trust Property, subject to those

J:\DOCS\NCLIB1\ACAPERTO\0044141.08                    -4-

3741
0008

BK 3741 PG008

Permitted Encumbrances (as hereinafter defined), to Beneficiary against every person whomsoever lawfully claiming or to claim the same or any part thereof;

PROVIDED, HOWEVER, that if the Debt shall have been paid and all other covenants contained in the Loan Documents shall have been performed, then, in such case, the liens, security interests, estates and rights granted by this Deed of Trust shall be satisfied and the estate, right, title and interest of Beneficiary in the Trust Property shall cease, and upon payment to Beneficiary of all costs and expenses incurred for the preparation of the release hereinafter referenced and all recording costs if allowed by law, Beneficiary shall promptly satisfy and release this Deed of Trust of record and the lien hereof by proper instrument.

## ARTICLE I.
## COVENANTS OF GRANTOR

For the purpose of further securing the Debt and for the protection of the security of this Deed of Trust, for so long as the Debt or any part thereof remains unpaid, Grantor covenants and agrees as follows:

1.1    Warranties of Grantor.  Grantor, for itself and its successors and assigns, does hereby represent, warrant and covenant to and with Beneficiary, its successors and assigns, that:

(a)    Grantor has good, marketable and indefeasible fee simple title to the Trust Property, subject only to those matters expressly set forth as exceptions to or subordinate matters in the title insurance policy insuring the lien of this Deed of Trust (such items being the "Permitted Encumbrances"), and has full power and lawful authority to grant, bargain, sell, convey, assign, transfer, encumber and mortgage its interest in the Trust Property in the manner and form hereby done or intended and to assign its right, title and interest as landlord under the Net Lease.  Grantor will preserve its interest in and title to the Trust Property and will forever warrant and defend the same to Beneficiary against any and all claims whatsoever and will forever warrant and defend the validity and priority of the lien and security interest created herein against the claims of all persons and parties whomsoever, subject to the Permitted Encumbrances.  The foregoing warranty of title shall survive the foreclosure of this Deed of Trust and shall inure to the benefit of and be enforceable by Beneficiary in the event Beneficiary acquires title to the Trust Property pursuant to any foreclosure;

(b)    No bankruptcy or insolvency proceedings are pending or contemplated by Grantor or, to the best knowledge of Grantor, against Grantor or by or against any endorser, cosigner or guarantor of the Note or the Tenant or any guarantor of Tenant under the Net Lease;

(c)    All reports, certificates, affidavits, statements and other data furnished and prepared by Grantor to Beneficiary in connection with the loan evidenced by the Note are

true and correct in all material respects and do not omit to state any fact or circumstance necessary to make the statements contained therein not misleading. To the best of Grantor's knowledge, all information and reports provided to Beneficiary by third parties are true and correct in all material respects;

(d)     The execution, delivery and performance of this Deed of Trust, the Note, the Net Lease and all of the other Loan Documents have been duly authorized by all necessary action to be, and are, binding and enforceable against Grantor in accordance with the respective terms thereof and do not contravene, result in a breach of or constitute a default (nor upon the giving of notice or the passage of time or both will same constitute a default) under the partnership agreement, articles of incorporation, operating agreement or other organizational documents of Grantor or any contract or agreement of any nature to which Grantor is a party or by which Grantor or any of its property may be bound and do not violate or contravene any law, order, decree, rule or regulation to which Grantor is subject;

(e)     The Premises and the Improvements and the intended use thereof by Grantor and the Tenant under the Net Lease comply with all applicable restrictive covenants, zoning ordinances, subdivision and building codes, flood disaster laws, applicable health and environmental laws and regulations and all other ordinances, orders or requirements issued by any state, federal or municipal authorities having or claiming jurisdiction over the Trust Property.  To the best of Grantor's knowledge, after due inquiry, the Premises and Improvements constitute a separate tax parcel for purposes of ad valorem taxation.  The Premises and Improvements do not require any rights over, or restrictions against, other property in order to comply with any of the aforesaid governmental ordinances, orders or requirements;

(f)     All utility services necessary and sufficient for the full use, occupancy, operation and disposition of the Premises and the Improvements for their intended purposes are available to the Trust Property, including water, storm sewer, sanitary sewer, gas, electric, cable and telephone facilities, through public rights-of-way or perpetual private easements approved by Beneficiary;

(g)     All streets, roads, highways, bridges and waterways necessary for access to and full use, occupancy, operation and disposition of the Premises and the Improvements have been completed, have been dedicated to and accepted by the appropriate municipal authority and are open and available to the Premises and the Improvements without further condition or cost to Grantor;

(h)     To the best of Grantor's knowledge, all curb cuts, driveways and traffic signals shown on the survey delivered to Beneficiary prior to the execution and delivery of this Deed of Trust are existing and have been fully approved by the appropriate governmental authority;

(i)     There are no judicial, administrative, mediation or arbitration actions, suits or proceedings pending or to the best of Grantor's knowledge threatened against or affecting Grantor (or, if Grantor is a partnership or a limited liability company, any of its

J:\DOCS\NCLIB1\ACAPERTO\0044141.06            -6-

general partners or members) or the Trust Property which, if adversely determined, would materially impair either the Trust Property or Grantor's ability to perform the covenants or obligations required to be performed under the Loan Documents;

    (j) The Trust Property is free from delinquent water charges, sewer rents, taxes and assessments;

    (k) As of the date of this Deed of Trust, the Trust Property is free from unrepaired damage caused by fire, flood, accident or other casualty; <u>provided</u>, however, Grantor hereby makes no representation as to any latent defects that may affect the Trust Property;

    (l) As of the date of this Deed of Trust, no part of the Premises or the Improvements has been taken in condemnation, eminent domain or like proceeding nor is any such proceeding pending or, to Grantor's knowledge and belief, threatened or contemplated;

    (m) To the best of Grantor's knowledge after due inquiry, Grantor possesses all franchises, patents, copyrights, trademarks, trade names, licenses and permits necessary for the conduct of its business substantially as now conducted;

    (n) To the best of Grantor's knowledge, after due inquiry, the Improvements are structurally sound, in good repair and free of defects in materials and workmanship and have been constructed and installed in substantial compliance with the plans and specifications relating thereto. All major building systems located within the Improvements, including, without limitation, the heating and air conditioning systems and the electrical and plumbing systems, are in good working order and condition;

    (o) Grantor has delivered to Beneficiary a true, correct and complete copy of the Net Lease and all amendments thereto or modifications thereof and all leases, subleases, licenses, concessions or other agreements in connection therewith or substitution therefor;

    (p) Grantor and the Trust Property are free from any past due obligations for sales and payroll taxes;

    (q) There are no security agreements or financing statements affecting any of the Trust Property other than (i) as disclosed in writing by Grantor to Beneficiary prior to the date hereof and (ii) the security agreements and financing statements created in favor of Beneficiary;

    (r) The Net Lease constitutes the legal, valid and binding obligation of Grantor and, to the best of Grantor's knowledge and belief, is enforceable against the Tenant. No default exists, or with the passing of time or the giving of notice or both would exist, under the Net Lease which would, in the aggregate, have a material adverse effect on Grantor or the Trust Property;

BK 3741 PG011

(s)    The Tenant under the Net Lease has not, as of the date hereof, paid rent more than thirty (30) days in advance, and the rents under the Net Lease have not been waived, released, or otherwise discharged or compromised;

(t)    All work to be performed by Grantor under the Net Lease has been substantially performed, all contributions to be made by Grantor to the Tenant have been made and all other conditions precedent to the Tenant's obligations thereunder have been satisfied;

(u)    The tenant under the Net Lease has entered into occupancy of the demised premises;

(v)    To the best of Grantor's knowledge and belief, the Tenant under the Net Lease and any guarantor thereof is free from bankruptcy, reorganization or arrangement proceedings and has not made a general assignment for the benefit of creditors; and

(w)    The Net Lease does not provide the Tenant with the right to obtain a lien or encumbrance upon the Trust Property superior to the lien of this Deed of Trust.

(x)    Grantor, any indemnitor and guarantor of Grantor's obligations under the Loan Documents, and any general partner, shareholder, member or 25% or greater interest-holding member, or principal of Grantor, indemnitor or guarantor, have never been convicted of a crime and are not currently the subject of any pending or threatened criminal investigation or proceeding.

1.2    **Defense of Title.**  If, while this Deed of Trust is in force, the title to the Trust Property or the interest of Trustee or Beneficiary therein shall be the subject, directly or indirectly, of any action at law or in equity, or be attacked directly or indirectly, or endangered, or adversely affected in any manner, Grantor, at Grantor's expense, shall take all necessary and proper steps for the defense of said title or interest, including the employment of counsel reasonably approved by Beneficiary, the prosecution or defense of litigation, and the compromise or discharge of claims made against said title or interest.  Notwithstanding the foregoing, in the event that Beneficiary reasonably determines that Grantor is not adequately performing its obligations under this Section, Beneficiary may, jointly with the Grantor whose cooperation shall not be unreasonably withheld, without limiting or waiving any other rights or remedies of Beneficiary hereunder, take such steps with respect thereto as Beneficiary shall deem necessary or proper and any and all reasonable costs and expenses incurred by Beneficiary in connection therewith, together with interest thereon at the Default Interest Rate (as defined in the Note) from the date incurred by Beneficiary until actually paid by Grantor, shall be immediately paid by Grantor on demand and shall be secured by this Deed of Trust and by all of the other Loan Documents securing all or any part of the Debt.

1.3    **Performance of Obligations.**  Grantor shall pay when due the principal of and the interest on the Debt in accordance with the terms of the Note.  Grantor shall also pay all charges, fees and other sums required to be paid by Grantor as provided in the Loan Documents, in accordance with the terms of the Loan Documents, and shall observe, perform and discharge all obligations, covenants and agreements to be observed, performed or

J:\DOCS\NCLIB1\ACAPERTO\004414I.08                -8-

3741
8812

discharged by Grantor set forth in the Loan Documents in accordance with their terms. Further, Grantor shall promptly and strictly perform and comply with all covenants, conditions, obligations and prohibitions required of Grantor in connection with any other document or instrument affecting title to the Trust Property, or any part thereof, regardless of whether such document or instrument is superior or subordinate to this Deed of Trust.

1.4    Insurance.  (a) At all times that the Net Lease is in full force and effect, Grantor shall cause the Tenant under the Net Lease to maintain the insurance provided in the Net Lease and comply with all its obligations under the Net Lease in connection therewith (or, to the extent permitted by the Net Lease, Grantor shall cause the Tenant to self-insure the insurance coverage set forth in the Net Lease in accordance with, and subject to, the provisions of the Net Lease). Additionally, Grantor shall maintain or cause the Tenant under the Net Lease to maintain, in full force and effect on the Trust Property, at all times while this Deed of Trust continues in effect, the following insurance (with respect to any of the insurance set forth below which provides coverage that is the same or substantially similar to coverage provided by the insurance required to be maintained by the Tenant under the Net Lease ("Duplicate Insurance"), Beneficiary shall not require Grantor to maintain any such Duplicate Insurance):

(1)    Insurance against loss or damage to the Trust Property by fire, windstorm, tornado and hail and against loss and damage by such other, further and additional risks as may be now or hereafter embraced by an "all-risk" or "special form" type of insurance policy. The amount of such insurance shall be not less than one hundred percent (100%) of the full replacement cost (insurable value) of the Improvements, furniture, furnishings, fixtures, equipment and other items (whether personalty or fixtures) (as established by an MAI appraisal) included in the Trust Property and owned by Grantor from time to time, without reduction for depreciation. The determination of the replacement cost amount shall be adjusted annually to comply with the requirements of the insurer issuing such coverage or, at Beneficiary's election, upon reasonable notice to Grantor, by reference to such indices, appraisals or information as Beneficiary determines in its reasonable discretion in order to reflect increased value due to inflation. Absent such annual adjustment, each policy shall contain inflation guard coverage insuring that the policy limit will be increased over time to reflect the effect of inflation. Full replacement cost, as used herein, means, with respect to the Improvements, the cost of replacing the Improvements without regard to deduction for depreciation, exclusive of the cost of excavations, foundations and footings below the lowest basement floor. Each policy or policies shall contain a replacement cost endorsement and either an agreed amount endorsement (to avoid the operation of any co-insurance provisions) or a waiver of any co-insurance provisions, all subject to Beneficiary's reasonable approval. The maximum deductible shall be $10,000.00.

(2)    Commercial general liability insurance against claims for personal injury, bodily injury, death and property damage occurring on, in or about the Premises or the Improvements in amounts not less than $1,000,000.00 per occurrence and $2,000,000.00 in the aggregate plus umbrella coverage in an amount not less than $2,000,000.00 single limit "per occurrence" for bodily injury, personal injury and property damage. Beneficiary hereby retains the right to periodically review the amount of said liability insurance being maintained

3741
8024

BK 3741 PG 024

unsuccessful. If, after notice thereof to Grantor, Grantor shall fail to, or shall fail to cause the Tenant under the Net Lease to, immediately discharge or cause to be discharged or provide security against any such claim or demand as aforesaid, Beneficiary may do so and any and all expenses incurred by Beneficiary, together with interest thereon at the Default Interest Rate from the date incurred by Beneficiary until actually paid by Grantor, shall be immediately paid by Grantor on demand and shall be secured by this Deed of Trust and by all of the other Loan Documents securing all or any part of the Debt.

1.11    Rents.    As additional and collateral security for the payment of the Debt and cumulative of any and all rights and remedies herein provided for, Grantor hereby absolutely and presently assigns to Beneficiary all existing and future Rents. Grantor hereby grants to Beneficiary the sole, exclusive and immediate right, without taking possession of the Trust Property, to demand, collect (by suit or otherwise), receive and give valid and sufficient receipts for any and all of said Rents, for which purpose Grantor does hereby irrevocably make, constitute and appoint Beneficiary its attorney-in-fact with full power to appoint substitutes or a trustee to accomplish such purpose (which power of attorney shall be irrevocable so long as any portion of the Debt is outstanding, shall be deemed to be coupled with an interest, shall survive the voluntary or involuntary dissolution of Grantor and shall not be affected by any disability or incapacity suffered by Grantor subsequent to the date hereof). Beneficiary shall be without liability for any loss which may arise from a failure or inability to collect Rents, proceeds or other payments. However, until the occurrence of a default under this Deed of Trust or under any other of the Loan Documents which has not been cured within any applicable grace or cure period, Grantor shall have a license to collect, receive, use and enjoy the Rents when due and prepayments thereof for not more than one (1) month prior to due date thereof. Upon the occurrence of a default hereunder or under any other of the Loan Documents which has not been cured within any applicable grace or cure period, Grantor's license shall automatically terminate without notice to Grantor and Beneficiary may thereafter, without taking possession of the Trust Property, collect the Rents itself or by an agent or receiver. From and after the termination of such license, Grantor shall be the agent of Beneficiary in collection of the Rents, and all of the Rents so collected by Grantor shall be held in trust by Grantor for the sole and exclusive benefit of Beneficiary, and Grantor shall, within two (2) business days after receipt of any Rents, pay the same to Beneficiary to be applied by Beneficiary as hereinafter set forth. Neither the demand for or collection of Rents by Beneficiary shall constitute any assumption by Beneficiary of any obligations under any agreement relating thereto. Beneficiary is obligated to account only for such Rents as are actually collected or received by Beneficiary. Grantor irrevocably agrees and consents that the respective payors of the Rents shall, upon demand and notice from Beneficiary of a default hereunder or under any other of the Loan Documents, pay said Rents to Beneficiary without liability to determine the actual existence of any default claimed by Beneficiary. Grantor hereby waives any right, claim or demand which Grantor may now or hereafter have against any such payor by reason of such payment of Rents to Beneficiary, and any such payment shall discharge such payor's obligation to make such payment to Grantor. All Rents collected or received by Beneficiary may be applied against all expenses of collection, including, without limitation, reasonable attorneys' fees, against costs of operation and management of the Trust Property and against the Debt, in whatever order or priority as to any of the items so

mentioned as Beneficiary directs in its sole subjective discretion and without regard to the adequacy of its security. Neither the exercise by Beneficiary of any rights under this Section nor the application of any Rents to the Debt shall cure or be deemed a waiver of any default hereunder or under any other of the Loan Documents. The assignment of Rents hereinabove granted shall continue in full force and effect during any period of foreclosure or redemption with respect to the Trust Property. Grantor has executed an Assignment of Leases and Rents dated of even date herewith (the "Assignment") in favor of Beneficiary covering all of the right, title and interest of Grantor, as landlord, lessor or licensor, in and to the Net Lease and any other leases, licenses and occupancy agreements relating to all or portions of the Trust Property. All rights and remedies granted to Beneficiary under the Assignment shall be in addition to and cumulative of all rights and remedies granted to Beneficiary hereunder.

1.12    Net Lease.

(a)    As additional and collateral security hereunder, Grantor hereby absolutely and presently assigns to Beneficiary all of Grantor's right, title and interest in an to the Net Lease, including, without limitation, Grantor's right to accept or reject any irrevocable offers to purchase the Trust Property and receive the purchase proceeds of any such sale, and Grantor's right to receive any termination payments, if any, upon termination of the Net Lease, for which purpose Grantor does hereby irrevocably make, constitute and appoint Beneficiary its attorney-in-fact with full power to appoint substitutes or a trustee to accomplish such purpose (which power of attorney shall be irrevocable so long as any portion of the Debt is outstanding, shall be deemed to be coupled with an interest, shall survive the voluntary or involuntary dissolution of Grantor and shall not be affected by any disability or incapacity suffered by Grantor subsequent to the date hereof). Any and all purchase option payments and termination payments shall be paid to Beneficiary, and Beneficiary may apply any such sums received in reduction of the Debt secured hereby and in such order as Beneficiary may in its sole option determine.

(b)    Grantor shall promptly and fully keep, observe and perform, or cause to be kept, observed or performed, all of the material terms, covenants, provisions and agreement imposed upon or assumed by Grantor under the Net Lease, including any leases, subleases, licenses, concessions and occupancy agreements in connection therewith or substitution therefor and any amendments modifications or supplements thereof, and Grantor shall not do or fail to do, or permit or fail to permit to be done, any act or thing, the doing or omission of which will give the Tenant under the Net Lease a right to terminate the Net Lease or to abate the rental or other material payment due thereunder. Grantor shall not under any circumstances modify, cancel, amend or terminate the Net Lease without Beneficiary's prior written consent, and any attempted modification, cancellation, amendment or termination of the Net Lease without such consent shall be void and of no force or effect whatsoever.

(c)    If Grantor shall, in any manner, fail to comply with subsection (b) above, Grantor covenants and agrees that Beneficiary may (but shall not be obligated to) take upon five (5) days' written notice to Tenant (or upon lesser notice, or without notice, if Beneficiary reasonably deems that the same is required to protect its interest in the Trust

J:\DOCS\NCLIB1\ACAPERTO\0044141.06                    -22-

Property), any action that Beneficiary shall reasonably deem necessary or desirable to keep, observe and perform or cause to be kept, observed or performed any such terms, covenants, provisions of agreements and, subject to the provisions of the Net Lease, to enter upon the Trust Property and take all action thereon as may be necessary therefor, or to prevent or cure any default by Grantor in the performance of or compliance with any of Grantor's covenants or obligations under the Net Lease. Beneficiary may rely on any notice of default received from the Tenant under the Net Lease. Grantor shall promptly deliver to Beneficiary a copy of any notice relating to defaults received from or given to the Tenant under the Net Lease or the trustee, receiver or successor for or to the Tenant. Beneficiary may expend such sums of money as are reasonable and necessary for any such purposes, and Grantor hereby covenants and agrees to pay to Beneficiary, immediately upon demand, all sums so expended by Beneficiary, together with interest thereon from the date of such payment at the Default Interest Rate, and until so paid by Grantor, all sums so expended by Beneficiary and the interest thereon shall be added to the Debt secured by the lien and legal operation and effect of this Deed of Trust.

(d)    Notwithstanding anything to the contrary set forth herein and so long as no other Event of Default has occurred under this Deed of Trust and is continuing (including, without limitation, an Event of Default under Section 2.1(a) below), and, during the time periods set forth below, no other Event of Default occurs (including, without limitation, an Event of Default under Section 2.1(a) below), Grantor shall not exercise any remedies to foreclose or otherwise take possession of the Trust Property under this Deed of Trust (1) for a period of four (4) months after a default by the Tenant of any monetary or payment obligation under the Net Lease; or (2) in the event that Tenant surrenders or abandons the Premises (an "Abandonment") during the lesser of (A) the time period it takes for Grantor to procure a suitable replacement Credit Tenant (which replacement Credit Tenant must be acceptable to Beneficiary, in its sole and absolute discretion, and must have a credit rating equal to or better than the credit rating of Winn-Dixie Stores, Inc. as of the date of this Deed of Trust) or (B) four (4) months after an Abandonment, provided, however, that if the credit rating of the Tenant, or of the guarantor of Tenant's obligations under the Net lease, as applicable, has fallen below (or after the monetary or payment default, falls below) "BBB-" as determined by Standard and Poor's, "Baa" as determined by Moody's, or any equivalent credit rating by any other national rating agency, then such forbearance period shall in no event extend beyond two (2) months from the date of such payment or monetary default. In connection with the foregoing, Grantor shall effect a cure of the Events of Default set forth in the foregoing sentence within the forbearance periods set forth therein by procuring a suitable replacement Credit Tenant (which replacement Credit Tenant must be acceptable to Beneficiary, in its sole and absolute discretion, and must have a credit rating equal to or better than the credit rating of Winn-Dixie Stores, Inc. as of the date of this Deed of Trust) under and subject to the same terms and conditions as set forth in the Net Lease in effect immediately prior to such Event of Default, or a Net Lease otherwise acceptable to Beneficiary, in its sole and absolute discretion, provided all other defaults under such Net Lease have been cured within such time period and such replacement Credit Tenant has commenced paying the full amount of fixed monthly rent in an amount at least equal to the fixed monthly rent under such previous Net Lease. The

3741
8827

BK 3741 PG 027

provisions of this Section 1.12(d) shall only apply upon payment by Grantor of a 25 basis fee to the Beneficiary.

### 1.13    Alienation and Further Encumbrances.

(a)    Grantor acknowledges that Beneficiary has relied upon the principals of Grantor and their experience in owning and operating properties similar to the Trust Property in connection with the closing of the loan evidenced by the Note. Accordingly, except as specifically allowed hereinbelow in this Section and notwithstanding anything to the contrary contained in Section 4.6 hereof, in the event that the Trust Property or any part thereof or interest therein shall be sold, conveyed, disposed of, alienated, hypothecated, leased (except to the Tenant under the Net Lease or its successors and assigns pursuant to the Net Lease), assigned, pledged, mortgaged, further encumbered or otherwise transferred or Grantor shall be divested of its title to the Trust Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Beneficiary being first obtained, which consent may be withheld in Beneficiary's sole discretion, then the same shall constitute a default hereunder and Beneficiary shall have the right, at its option, to declare any or all of the Debt, irrespective of the maturity date specified in the Note, immediately due and payable and to otherwise exercise any of its other rights and remedies contained in Article III hereof. If such acceleration is during any period when a prepayment is not permitted to be made pursuant to the provisions set forth in the Note, then, in addition to all of the foregoing, there shall also then be immediately due and payable a sum equal to the interest which would have accrued on the principal balance of the Note at the Note Rate (as defined in the Note) from the date of such acceleration to the first (1st) day on which a prepayment would have been permitted pursuant to the provisions set forth in the Note, together with a prepayment fee in an amount equal to the prepayment fee that would have been due and payable on the first (1st) day on which a prepayment would have been permitted pursuant to the provisions set forth in the Note to the same end as though Grantor were prepaying the entire Debt on the first (1st) day on which a prepayment would have been permitted pursuant to the provisions set forth in the Note, calculated in accordance with the provisions of the Note. If such acceleration is during any period when a prepayment fee is payable pursuant to the provisions set forth in the Note, then, in addition to all of the foregoing, such prepayment fee shall also then be immediately due and payable to the same end as though Grantor were prepaying the entire Debt on the date of such acceleration. For the purposes of this Section: (i) in the event Grantor or its managing member is a corporation or trust, the sale, conveyance, transfer or disposition of more than 10% of the issued and outstanding capital stock of Grantor or any of its managing members (or the issuance of new shares of capital stock in Grantor or any of its general partners or managing members so that immediately after such issuance the total capital stock then issued and outstanding is more than 110% of the total immediately prior to such issuance) shall be deemed to be a transfer of an interest in the Trust Property; and (ii) in the event Grantor or any managing member of Grantor is a limited or general partnership, a joint venture or a limited liability company, a change in the ownership interests in any general partner, any joint venturer or any managing member, either voluntarily, involuntarily or otherwise, or the sale, conveyance, transfer, disposition, alienation, hypothecation or encumbering of all or any portion of the interest of any such general partner, joint venturer or

3741
0050

BK 3741 PG 050

subjective determination) that it is not adequately protected from any loss, damage or risk associated therewith.

(m)    Any dissolution, termination, partial or complete liquidation, merger or consolidation of Grantor or the Tenant or any guarantor of Tenant under the Net Lease or any of their principals, any general partner or any managing member.

(n)    The termination of the Winn-Dixie Lease, unless Tenant is replaced by a satisfactory tenant as permitted according to the terms of Section 1.12(d) above.

(o)    The Winn-Dixie Estoppel is not provided by Grantor to Beneficiary by May 21, 1999.

## ARTICLE III.
## REMEDIES

3.1    Remedies Available. If there shall occur a default under this Deed of Trust, and such default has not been cured within any applicable grace or cure period, then this Deed of Trust is subject to foreclosure as provided by law and Beneficiary may, at its option and by or through a trustee, nominee, assignee or otherwise (including, without limitation, the Trustee), to the fullest extent permitted by law, exercise any or all of the following rights, remedies and recourses, either successively or concurrently:

(a)    Acceleration. Accelerate the maturity date of the Note and declare any or all of the Debt to be immediately due and payable without any presentment, demand, protest, notice or action of any kind whatever (each of which is hereby expressly waived by Grantor), whereupon the same shall become immediately due and payable. Upon any such acceleration, payment of such accelerated amount shall constitute a prepayment of the principal balance of the Note and any applicable prepayment fee provided for in the Note shall then be immediately due and payable.

(b)    Entry on the Trust Property. Subject to the provisions of the Net Lease and the rights of the Tenant thereunder, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Trust Property, or any part thereof, without force or with such force as is permitted by law and without notice or process or with such notice or process as is required by law, unless such notice and process is waivable, in which case Grantor hereby waives such notice and process, and do any and all acts and perform any and all work which may be desirable or necessary in Beneficiary's judgment to complete any unfinished construction on the Premises, to preserve the value, marketability or rentability of the Trust Property, to increase the income therefrom, to manage and operate the Trust Property or to protect the security hereof, and all sums expended by Beneficiary therefor, together with interest thereon at the Default Interest Rate, shall be immediately due and payable to Beneficiary by Grantor on demand and shall be secured hereby and by all of the other Loan Documents securing all or any part of the Debt.

J:\DOCS\NCLIB1\ACAPERTO\0044141.08                    -47-

3741
0051

BK 3 7 4 I PG 0 5 I

(c)    Collect Rents.  With or without taking possession of the Trust Property, sue or otherwise collect the Rents, including those past due and unpaid.

(d)    Appointment of Receiver.  Upon, or at any time prior to or after, initiating the exercise of any power of sale, instituting any judicial foreclosure or instituting any other foreclosure of the liens and security interests provided for herein or any other legal proceedings hereunder, make application to a court of competent jurisdiction for appointment of a receiver for all or any part of the Trust Property, as a matter of strict right and without notice to Grantor and without regard to the adequacy of the Trust Property for the repayment of the Debt or the solvency of Grantor or any person or persons liable for the payment of the Debt, and Grantor does hereby irrevocably consent to such appointment, waive any and all notices of and defenses to such appointment and agree not to oppose any application therefor by Beneficiary, but nothing herein is to be construed to deprive Beneficiary of any other right, remedy or privilege Beneficiary may now have under the law to have a receiver appointed, provided, however, that the appointment of such receiver, trustee or other appointee by virtue of any court order, statute or regulation shall not impair or in any manner prejudice the rights of Beneficiary to receive payment of the Rents pursuant to other terms and provisions hereof. Any such receiver shall have all of the usual powers and duties of receivers in similar cases, including, without limitation, the full power to hold, develop, rent, lease, manage, maintain, operate and otherwise use or permit the use of the Trust Property upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances as more fully set forth in Section 3.3 below.  Such receivership shall, at the option of Beneficiary, continue until full payment of all of the Debt or until title to the Trust Property shall have passed by foreclosure sale under this Deed of Trust or deed in lieu of foreclosure.

(e)    Foreclosure.  Immediately commence an action to foreclose this Deed of Trust or to specifically enforce its provisions with respect to any of the Debt, pursuant to the statutes in such case made and provided, and sell the Trust Property or cause the Trust Property to be sold in accordance with the requirements and procedures provided by said statutes in a single parcel or in several parcels at the option of Beneficiary.  In the event foreclosure proceedings are instituted by Beneficiary, all expenses incident to such proceedings, including, but not limited to, attorneys' fees and costs, shall be paid by Grantor and secured by this Deed of Trust and by all of the other Loan Documents securing all or any part of the Debt.  The Debt and all other obligations secured by this Deed of Trust, including, without limitation, interest at the Default Interest Rate any prepayment charge, fee or premium required to be paid under the Note in order to prepay principal (to the extent permitted by applicable law), reasonable attorneys' fees and any other amounts due and unpaid to Beneficiary under the Loan Documents, may be bid by Beneficiary in the event of a foreclosure sale hereunder.  In the event of a judicial sale pursuant to a foreclosure decree, it is understood and agreed that Beneficiary or its assigns may become the purchaser of the Trust Property or any part thereof.

(f)    Judicial Remedies.  Proceed by suit or suits, at law or in equity, instituted by or on behalf of Beneficiary, upon written request of Beneficiary, to enforce the

J:\DOCS\NCLIB1\ACAPERTO\0044341.08          -48-

3741
0052

BK 3741 PG052

payment of the Debt or the other obligations of Grantor hereunder or pursuant to the Loan Documents, to foreclose the liens and security interests of this Deed of Trust as against all or any part of the Trust Property, and to have all or any part of the Trust Property sold under the judgment or decree of a court of competent jurisdiction. This remedy shall be cumulative of any other non-judicial remedies available to the Beneficiary with respect to the Loan Documents. Proceeding with the request or receiving a judgment for legal relief shall not be or be deemed to be an election of remedies or bar any available non-judicial remedy of the Beneficiary.

(g) **Sale of Property**. (i) Trustee, at the request of Beneficiary, shall have the power to sell the Trust Property or any part thereof at public auction, in such manner, at such time and place, upon such terms and conditions, and upon five (5) days' notice to Grantor and such public notice as Beneficiary may deem best for the interest of Beneficiary or as may be required or permitted by applicable law, consisting of advertisement in a newspaper of general circulation in the jurisdiction and for such period as applicable law may require and at such other times and by such other methods, if any, as may be required by law to convey the Trust Property in fee simple by trustee's deed with special warranty of title to in and at the cost of the purchaser, who shall not be liable to see to the application of the purchase money. The proceeds or avails of any sale made under or by virtue of this paragraph, together with any other sums which then may be held by Beneficiary under this Deed of Trust, whether under the provisions of this paragraph or otherwise, shall be applied as provided in Section 3.2 hereof. Beneficiary, Trustee and any receiver or custodian of the Trust Property or any part thereof shall be liable to account for only those rents, issues, proceeds and profits actually received by it.

(1) Beneficiary and Trustee, as applicable, may adjourn from time to time any sale by it to be made under or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale or sales and, except as otherwise provided by any applicable law, Beneficiary or Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(2) Upon the completion of any sale or sales ordered by Beneficiary and made by Trustee under or by virtue of this paragraph, Beneficiary or Trustee, or any officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, granting, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Trustee is hereby irrevocably appointed the true and lawful attorney-in-fact of Grantor (coupled with an interest), in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the property and rights so sold and for that purpose Trustee may execute all necessary instruments of conveyance, assignment, transfer and delivery, and may substitute one or more persons with like power, Grantor hereby ratifying and confirming all that its said attorney-in-fact or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, Grantor, if so requested by Trustee or Beneficiary, shall ratify and confirm any such sale or sales by executing and delivering to Beneficiary, or to such purchaser or purchasers all such instruments as may be advisable, in the sole judgment of

Beneficiary, for such purpose, and as may be designated in such request. Any such sale or sales made under or by virtue or this paragraph, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity of Grantor in and to the property and rights so sold, and shall, to the fullest extent permitted under law, be a perpetual bar both at law and in equity against Grantor and against any and all persons claiming or who may claim the same, or any party thereof, from, through or under Grantor.

(3)     In the event of any sale made under or by virtue of this Deed of Trust (whether made under the power of sale herein granted or under or by virtue of judicial proceedings or a judgment or decree of foreclosure and sale), the entire Debt relative to the Trust Property, immediately thereupon shall, anything in the Note, this Deed of Trust or any other of the Loan Documents to the contrary notwithstanding, become due and payable.

(4)     Upon any sale under or by virtue of this Deed of Trust (whether made under the power of sale herein granted or under or by virtue of judicial) proceedings or a judgment or decree of foreclosure and sale), Beneficiary may bid for and acquire the Trust Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting the Debt to and against the net sales price after deducting therefrom the expenses of the sale and the costs of the action.

(5)     No recovery of any judgment by Beneficiary and no levy of an execution under any judgment upon the Trust Property or any part thereof or upon any other property of Grantor shall release the lien of this Deed of Trust upon the Trust Property or nay part thereof, or any liens, rights, powers or remedies of Beneficiary hereunder, but such liens, rights, powers and remedies of Beneficiary shall continue unimpaired until the entire Debt is paid in full.

(h)     Other.  Exercise any other right or remedy available hereunder, under any of the other Loan Documents or at law or in equity.

3.2     Application of Proceeds.  To the fullest extent permitted by law, the proceeds of any sale under this Deed of Trust shall be applied, to the extent funds are so available, to the following items in such order as Beneficiary in its discretion may determine:

(a)     To payment of the reasonable costs, expenses and fees of taking possession of the Trust Property, and of holding, operating, maintaining, using, leasing, repairing, improving, marketing and selling the same and of otherwise enforcing Beneficiary's rights and remedies hereunder and under the other Loan Documents, including, but not limited to, trustee's fees, receivers' fees, court costs, attorneys', accountants', appraisers', managers' and other professional fees, title charges and transfer taxes.

3741
3B54

## BK 3 7 4 1 PG 0 5 4

(b)    To payment of all sums expended by Beneficiary under the terms of any of the Loan Documents and not yet repaid, together with interest on such sums at the Default Interest Rate.

(c)    To payment of the Debt and all other obligations secured by this Deed of Trust, including, without limitation, interest at the Default Interest Rate and, to the extent permitted by applicable law, any prepayment fee, charge or premium required to be paid under the Note in order to prepay principal, in any order that Beneficiary chooses in its sole discretion.

(d)    The remainder, if any, of such funds shall be disbursed to Grantor or to the person or persons legally entitled thereto.

3.3    **Right and Authority of Receiver or Beneficiary in the Event of Default; Power of Attorney.**  Upon the occurrence of a default hereunder, which default is not cured within any applicable grace or cure period, and entry upon the Trust Property pursuant to Section 3.1(b) hereof or appointment of a receiver pursuant to Section 3.1(d) hereof, and under such terms and conditions as may be prudent and reasonable under the circumstances in Beneficiary's or the receiver's sole discretion, all at Grantor's expense, Beneficiary or said receiver, or such other persons or entities as they shall hire, direct or engage, as the case may be, may do or permit one or more of the following, successively or concurrently:  (a) enter upon and take possession and control of any and all of the Trust Property; (b) take and maintain possession of all documents, books, records, papers and accounts relating to the Trust Property; (c) exclude Grantor and its agents, servants and employees wholly from the Trust Property; (d) manage and operate the Trust Property; (e) preserve and maintain the Trust Property; (f) make repairs and alterations to the Trust Property; (g) complete any construction or repair of the Improvements, with such changes, additions or modifications of the plans and specifications or intended disposition and use of the Improvements as Beneficiary may in its sole discretion deem appropriate or desirable to place the Trust Property in such condition as will, in Beneficiary's sole discretion, make it or any part thereof readily marketable or rentable; (h) if the Net Lease has been terminated, conduct a marketing or leasing program with respect to the Trust Property, or employ a marketing or leasing agent or agents to do so, directed to the leasing or sale of the Trust Property under such terms and conditions as Beneficiary may in its sole discretion deem appropriate or desirable; (i) employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Beneficiary may in its sole discretion deem appropriate or desirable to implement and effectuate the rights and powers herein granted; (j) execute and deliver, in the name of Beneficiary as attorney-in-fact and agent of Grantor or in its own name as Beneficiary, such documents and instruments as are necessary or appropriate to consummate authorized transactions; (k) enter such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Beneficiary may in its sole discretion deem appropriate or desirable; (l) collect and receive the Rents from the Trust Property; (m) eject tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements; (n) sue for unpaid Rents, payments, income or proceeds in the

J:\DOCS\NCLIB1\ACAPERTO\0044141.08                  -51-

3741
0068

BK 3741 PG 068

**IN WITNESS WHEREOF**, Grantor has executed this Deed of Trust on the day and year first written above.

Grantor:

**WOODLAND HARTFORD ASSOCIATES LLC,**
a New York limited liability company

By:    Woodland Hartford Management, Corp,
       a New York corporation,
       its Manager

       By:                
            Barry Levites
            President

J:\DOCS\NCLIB1\ACAPERTO\0044141.04

3741
0069

BK 3741 PG 069

## ACKNOWLEDGMENT

STATE OF NEW YORK

~~COMMONWEALTH OF VIRGINIA~~

COUNTY OF New York

The foregoing Deed of Trust was acknowledged before me this /5 ᵀᴴ day of September, 1998, by Barry Levites, as President of Woodland Hartford Management, Corp., the Manager of Woodland Hartford Associates LLC, a New York limited liability company.

_____
Notary Public

[NOTARIAL SEAL]

My Commission Expires:

BARRY E. ZWEIGBAUM
Notary Public, State of New York
No. 30-5007442
Qualified in Nassau County
Term Expires January 28, 19___

_____

J:\DOCS\NCLIB1\ACAPERTO\0044141.04

3741
8878

BK 3741 PG 0 70

## EXHIBIT A

ALL THAT certain lot, piece or parcel of land, situate in the Pleasant Grove Borough of the City
of Chesapeake, Virginia, and designated as "PARCEL 18", consisting of 8.426 acres, as shown
on that certain plat entitled, "Subdivision Plat of Las Gaviotas Commerce Center", dated October
27, 1987, and prepared by Centerline Associates, Ltd., Virginia, which plat is recorded in the Clerk's
Office of the Circuit Court of the City of Chesapeake, Virginia, on December 2, 1987 in Map
Book 89, at page 69, being more particularly described as follows:

BEGINNING at a pin (S) on the eastern right-of-way of Las Gaviotas Boulevard and at the
common property line of this Parcel, and the northwest corner of Parcel C, as shown on the
aforementioned plat of subdivision, said point of being distant 202.43 feet from the northern
right-of-way of Cedar Road; thence proceeding in a northerly direction along said Las Gaviotas
Boulevard right-of-way along a bearing of N 49° 55' 25" E 328.13 feet to a pin (S); a point of
curvature, thence along a curve to the left, having a radius of 636.64 feet and an arc length of
174.03 feet to a pin (F); thence turning and leaving said Las Gaviotas Boulevard right-of-way, S
40° 04' 35' E 674.63 feet to a pin (F) on the western right-of-way of Rountree Drive right-of-
way; thence turning and proceeding in a southerly direction along said Rountree Drive right-of-
way, S 44° 47' 23" W 253.19 feet to a pin (S); a point of curvature, thence along a curve to the
left, having a radius of 150.00 feet and an arc length of 126.35 feet to a pin (S); a point of
tangency, thence S 03° 28' 22" E 101.55 feet to a pin (S); a point of curvature, thence along a
curve to the right, having a radius of 100.00 feet and an arc length of 93.19 feet to a pin (F); a
point of tangency, thence turning and leaving said Rountree Drive right-of-way, N 40° 04' 35" W
400.50 feet to a pin (F); thence S 49° 55' 25" W 160.00 feet to a pin (S); a point of curvature,
thence along a curve to the left, having a radius of 30.00 feet and an arc length of 47.12 feet to a
pin (S); a point of tangency in the northern right-of-way line of Cedar Road, (Var. R/W), thence
proceeding in a northerly direction along Cedar Road, N 40° 04' 35" W 110.00 feet to a pin (S);
thence turning leaving said Cedar Road right-of-way along a curve to the left, having a radius of
30.00 feet and an arc length of 47.12 feet to a pin (S); a point of tangency, thence N 49° 55' 25"
E 160.00 feet to a pin (S); thence N 40° 04' 35" W 405.00 feet to the point of beginning. Said
Parcel contains 8.426 acres.

RECORDED WITH
CERTIFICATE ANNEXED

98 SEP 17 PM 1: 32

§53.1-802 TAXES PAID $_____
CHESAPEAKE, VA.
TESTE: _Susi M. West_
CLERK, CIRCUIT COURT