EXHIBITS C – F TO MOTION OF WELLS FARGO BANK, N.A., AS
TRUSTEE, TO ENJOIN DISTRIBUTIONS TO WOODLAND
HARTFORD ASSOCIATES, LLC, TO APPROVE TRANSFER TO
CLAIMS AND FOR OTHER RELIEF

**EXHIBIT "C"**

3741
8072

BK 3741 PG072

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS (this "Assignment") dated as of the 16th day of September, 1998 made by WOODLAND HARTFORD ASSOCIATES LLC, a New York limited liability company ("Assignor"), whose address is 341 East 149th Street, Bronx, New York 10451, to FIRST UNION NATIONAL BANK, a national banking association ("Assignee"), whose address is One First Union Center DC-6, Charlotte, North Carolina 28288.

### WITNESSETH:

THAT, WHEREAS, Assignor has executed that certain Promissory Note (the "Note") dated of even date herewith, payable to the order of Assignee in the stated principal amount of of FIVE MILLION FIVE HUNDRED ONE THOUSAND SEVEN HUNDRED FIFTY FOUR AND NO/100 DOLLARS ($5,501,754.00); and

WHEREAS, the Note is secured by that certain Deed of Trust and Security Agreement (the "Deed of Trust") dated of even date herewith, from Assignor to Assignee, encumbering that certain real property situated in the City of Chesapeake, State of Virginia, as more particularly described on Exhibit A attached hereto and incorporated herein by this reference, and all buildings and other improvements now or hereafter located thereon (collectively, the "Improvements") (said real property and the Improvements are hereinafter sometimes collectively referred to as the "Property"); and

WHEREAS, Assignor is desirous of further securing to Assignee the performance of the terms, covenants and agreements hereof and of the Note, the Deed of Trust and each other document evidencing, securing, guaranteeing or otherwise relating to the indebtedness evidenced by the Note (this Agreement, the Note, the Deed of Trust and such other documents, as each of the foregoing may from time to time be amended, modified, consolidated, renewed or replaced, being collectively referred to herein as the "Loan Documents"),

NOW, THEREFORE, in consideration of the making of the loan evidenced by the Note by Assignee to Assignor and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby irrevocably, absolutely and unconditionally transfer, sell, assign, pledge and convey to Assignee, its successors and assigns, all of the right, title and interest of Assignor in and to:

(a)    that certain lease, dated as of November 12, 1997, between Assignor, as landlord and Winn-Dixie Raleigh, Inc., as tenant, affecting the Property and any and all leases, subleases, licenses, rental agreements and occupancy agreements of whatever form now or hereafter entered into in connection therewith or in substitution therefor and any and all guarantees, extensions, renewals, replacements and modifications thereof (collectively, the "Net Lease"); and

(b)    all deposits (whether for security or other wise), rents, issues, profits, revenues, royalties, accounts, rights, benefits and income of every nature of and from the Property, including, without limitation, minimum rents, additional rents, termination payments, forfeited security deposits, liquidated damages following default and all proceeds payable under any policy

3741
0073

BK 3741 PG073

of insurance covering loss of rents resulting from untenantability due to destruction or damage to the Property, together with the immediate and continuing right to collect and receive the same, whether now due or hereafter becoming due, and together with all rights and claims of any kind that Assignor may have against any tenant, lessee or licensee under the Net Lease or against any other occupant of the Property (collectively, the "Rents").

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns.

IT IS AGREED that, notwithstanding that this instrument is a present, absolute and executed assignment of the Rents and of the Net Lease and a present, absolute and executed grant of the powers herein granted to Assignee, Assignor is hereby permitted, at the sufferance of Assignee and at its discretion, and is hereby granted a license by Assignee, to retain possession of the Net Lease and to collect and retain the Rents unless and until there shall be a default under the terms of any of the Loan Documents, which default has not been cured within any applicable grace or cure period. In the event of such uncured default, the aforementioned license granted to Assignor shall automatically terminate without notice to Assignor, and Assignee may thereafter, without taking possession of the Property, take possession of the Net Lease and collect the Rents. Further, from and after such termination, Assignor shall be the agent of Assignee in collection of the Rents, and any Rents so collected by Assignor shall be held in trust by Assignor for the sole and exclusive benefit of Assignee, and Assignor shall, within two (2) business days after receipt of any Rents, pay the same to Assignee to be applied by Assignee as hereinafter set forth. Furthermore, from and after such uncured default and termination of the aforementioned license, Assignee shall have the right and authority, without any notice whatsoever to Assignor and without regard to the adequacy of the security therefor, to, subject to the provisions of the Net Lease and the rights of the tenant thereunder: (a) manage and operate the Property, with full power to employ agents to manage the same; (b) demand, collect, receive and sue for the Rents, including those past due and unpaid; and (c) do all acts relating to such management of the Property, including, but not limited to, contracting and paying for repairs and replacements to the Improvements and to the fixtures, equipment and personal property located in the Improvements or used in any way in the operation, use and occupancy of the Property as in the sole subjective judgment and discretion of Assignee may be necessary to maintain the same in a tenantable condition, purchasing and paying for such additional furniture and equipment as in the sole subjective judgment of Assignee may be necessary to maintain a proper rental income from the Property, employing necessary managers and other employees, purchasing fuel, providing utilities and paying for all other expenses incurred in the operation of the Property, maintaining adequate insurance coverage over hazards customarily insured against and paying the premiums therefor. Assignee shall apply the Rents received by Assignee from the Property, after deducting the costs of collection thereof, including, without limitation, reasonable attorneys' fees and a management fee for any management agent so employed, against amounts expended for repairs, upkeep, maintenance, service, fuel, utilities, taxes, assessments, insurance premiums and such other expenses as Assignee incurs in connection with the operation of the Property and against interest, principal, required escrow deposits and other sums which have or which may become due, from time to time, under the terms of the Loan Documents, in such order or priority as to any of the items so mentioned as Assignee, in its sole subjective discretion, may determine. The exercise by Assignee of the rights granted Assignee in this paragraph, and the collection of the

-2-

3741
8874

BK 3741 PG 074

Rents and the application thereof as herein provided, shall not be considered a waiver by Assignee of any default under the Loan Documents or prevent foreclosure of any liens on the Property nor shall such exercise make Assignee liable under the Net Lease, Assignee hereby expressly reserving all of its rights and privileges under the Deed of Trust and the other Loan Documents as fully as though this Assignment had not been entered into.

Without limiting the rights granted hereinabove, in the event Assignor shall fail to make any payment or to perform any act required under the terms hereof and such failure shall not be cured within any applicable grace or cure period, then Assignee may, but shall not be obligated to, without prior notice to or demand on Assignor, and without releasing Assignor from any obligation hereof, make or perform the same in such manner and to such extent as Assignee may deem necessary to protect the security hereof, including specifically, without limitation, appearing in and defending any action or proceeding purporting to affect the security hereof or the rights or powers of Assignee, performing or discharging any obligation, covenant or agreement of Assignor under the Net Lease, and, in exercising any of such powers, paying all necessary costs and expenses, employing counsel and incurring and paying attorneys' fees. Any sum advanced or paid by Assignee for any such purpose, including, without limitation, attorneys' fees, together with interest thereon at the Default Interest Rate (as defined in the Note) from the date paid or advanced by Assignee until repaid by Assignor, shall immediately be due and payable to Assignee by Assignor on demand and shall be secured by the Deed of Trust and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note.

IT IS FURTHER AGREED that this Assignment is made upon the following terms, covenants and conditions:

1.    This Assignment shall not operate to place responsibility for the control, care, management or repair of the Property upon Assignee, nor for the performance of any of the terms and conditions of the Net Lease, nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by any tenant or any other party or for any dangerous or defective condition of the Property or for any negligence in the management, upkeep, repair or control of the Property. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property or from any other act or omission of Assignee in managing the Property, excluding any such loss resulting solely from the gross negligence or willful misconduct of Assignee or its agents. Assignor shall and does hereby indemnify and hold Assignee harmless from and against any and all liability, loss, claim, demand or damage which are incurred by reason of this Assignment, including, without limitation, claims or demands for security deposits from tenants of space in the Improvements deposited with Assignor, and from and against any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Net Lease. Should Assignee incur any liability by reason of this Assignment or in defense of any claim or demand for loss or damage as provided above, the amount thereof, including, without limitation, costs, expenses and attorneys' fees, together with interest thereon at the Default Interest Rate from the date paid or incurred by Assignee until repaid by Assignor, shall be immediately due and payable to Assignee by Assignor

-3-

3741
3875

BK 3741 PG 075

upon demand and shall be secured by the Deed of Trust and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note.

2.    This Assignment shall not be construed as making Assignee a mortgagee in possession.

3.    Assignee is obligated to account to Assignor only for such Rents as are actually collected or received by Assignee.

4.    Assignor hereby further presently and absolutely assigns to Assignee, subject to the terms and provisions of this Assignment: (a) any award or other payment which Assignor may hereafter become entitled to receive with respect to the Net Lease as a result of or pursuant to any bankruptcy, insolvency or reorganization or similar proceedings involving the tenant or any guarantor of tenant under the Net Lease; and (b) any and all payments made by or on behalf of any tenant of any part of the Property in lieu of Rent. Assignor hereby irrevocably appoints Assignee as its attorney-in-fact to, from and after the occurrence of a default by Assignor hereunder or under any of the other Loan Documents which has not been cured within any applicable grace or cure period, appear in any such proceeding and to collect any such award or payment, which power of attorney is coupled with an interest by virtue of this Assignment and is irrevocable so long as any sums are outstanding under the loan evidenced by the Note.

5.    Assignor represents, warrants and covenants to and for the benefit of Assignee: (a) that Assignor now is (or with respect to any lease not yet in existence, will be immediately upon the execution thereof) the absolute owner of the landlord's interest in the Net Lease or any other lease affecting the Property, with full right and title to assign the same and the Rents due or to become due thereunder; (b) that, other than this Assignment and those assignments, if any, specifically permitted in the Deed of Trust, there are no outstanding assignments of the Net Lease or Rents; (c) that no Rents have been anticipated, discounted, released, waived, compromised or otherwise discharged, except for prepayment of rent of not more than one (1) month prior to the accrual thereof; (d) that there are no material defaults now existing under the Net Lease by the landlord or tenant, and there exists no state of facts which, with the giving of notice or lapse of time or both, would constitute a default under the Net Lease by the landlord or tenant, except as disclosed in writing to Assignee; (e) that Assignor has and shall duly and punctually observe and perform all covenants, conditions and agreements in the Net Lease on the part of the landlord to be observed and performed thereunder; and (f) the Net Lease is in full force and effect and is the valid and binding obligation of Assignor, and, to the knowledge of Assignor, is the valid and binding obligation of the tenant thereto.

6.    Assignor covenants and agrees that Assignor shall not, without the prior written consent of Assignee, further pledge, transfer, mortgage or otherwise encumber or assign the Leases or future payments of Rents, except as otherwise expressly permitted by the terms of the Deed of Trust, or incur any material indebtedness, liability or other obligation to any tenant, lessee or licensee under the Net Lease, or permit any Lease to become subordinate to any lien other than the lien of the Deed of Trust.

-4-

3741
0076

BK 3741 PG076

7.    Assignor covenants and agrees that Assignor shall, at its sole cost and expense, appear in and defend any action or proceeding arising under, growing out of, or in any manner connected with the Net Lease or the obligations, duties, liabilities, rights, titles or privileges of the landlord or tenant thereunder, and shall pay on demand all costs and expenses, including, without limitation, attorneys' fees, which Assignee may incur in connection with Assignee's appearance, voluntary or otherwise, in any such action or proceeding, together with interest thereon at the Default Interest Rate from the date incurred by Assignee until repaid by Assignor.

8.    At any time, Assignee may, at its option, notify any tenants or other parties of the existence of this Assignment. Assignor does hereby specifically authorize, instruct and direct each and every present and future tenant, lessee and licensee of the whole or any part of the Property to pay all unpaid and future Rents to Assignee upon receipt of demand from Assignee to so pay the same, and Assignor hereby agrees that each such present and future tenant, lessee and licensee may rely upon such written demand from Assignee to so pay said Rents without any inquiry into whether there exists a default hereunder or under the other Loan Documents or whether Assignee is otherwise entitled to said Rents. Assignor hereby waives any right, claim or demand which Assignor may now or hereafter have against any present or future tenant, lessee or licensee by reason of such payment of Rents to Assignee, and any such payment shall discharge such tenant's, lessee's or licensee's obligation to make such payment to Assignor.

9.    Assignee may take or release any security for the indebtedness evidenced by the Note, may release any party primarily or secondarily liable for the indebtedness evidenced by the Note, may grant extensions, renewals or indulgences with respect to the indebtedness evidenced by the Note and may apply any other security therefor held by it to the satisfaction of any indebtedness evidenced by the Note without prejudice to any of its rights hereunder or under any other of the Loan Documents.

10.    The acceptance of this Assignment and the collection of the Rents in the event Assignor's license is terminated, as referred to above, shall be without prejudice to Assignee. The rights of Assignee hereunder are cumulative and concurrent, may be pursued separately, successively or together and may be exercised as often as occasion therefor shall arise, it being agreed by Assignor that the exercise of any one or more of the rights provided for herein or in any other of the Loan Documents shall not be construed as a waiver of any of the other rights or remedies of Assignee, at law or in equity or otherwise, so long as any obligation under the Loan Documents remains unsatisfied.

11.    All rights of Assignee hereunder shall inure to the benefit of its successors and assigns; and all obligations of Assignor shall bind its successors and assigns and any subsequent owner of the Property. All rights of Assignee in, to and under this Assignment shall pass to and may be exercised by any assignee of such rights of Assignee. Assignor hereby agrees that if Assignee gives notice to Assignor of an assignment of said rights, upon such notice the liability of Assignor to the assignee of the Assignee shall be immediate and absolute. Assignor will not set up any claim against Assignee or any subsequent assignee as a defense, counterclaim or set-off to any action brought by Assignee or any subsequent assignee for any amounts due

-5-

3741
0877

BK 3741 PG 077

hereunder or for possession of or the exercise of rights with respect to the Net Lease or the Rents.

12.    It shall be a default hereunder (a) if any representation or warranty made herein by Assignor is determined by Assignee to have been false or misleading in any material respect at the time made, or (b) upon any failure by Assignor to comply with the provisions of Section 6 above, or (c) upon any failure by Assignor in the performance or observance of any other covenant or condition hereof and, to the extent such failure described in this subsection (c) is susceptible of being cured, the continuance of such failure for thirty (30) days after written notice thereof from Assignee to Assignor; provided, however, that if such default is susceptible of cure but such cure cannot be accomplished with reasonable diligence within said period of time, and if Assignor commences to cure such default promptly after receipt of notice thereof from Assignee, and thereafter prosecutes the curing of such default with reasonable diligence, such period of time shall be extended for such period of time as may be necessary to cure such default with reasonable diligence, but not to exceed an additional sixty (60) days.  Any such default not so cured shall be a default under each of the other Loan Documents, entitling Assignee to exercise any or all rights and remedies available to Assignee under the terms hereof or of any or all of the other Loan Documents, and any default under any other Loan Document which is not cured within any applicable grace or cure period shall be deemed a default hereunder subject to no grace or cure period, entitling Assignee to exercise any or all rights provided for herein.

13.    Failure by Assignee to exercise any right which it may have hereunder shall not be deemed a waiver thereof unless so agreed in writing by Assignee, and the waiver by Assignee of any default hereunder shall not constitute a continuing waiver or a waiver of any other default or of the same default on any future occasion. No collection by Assignee of any Rents pursuant to this Assignment shall constitute or result in a waiver of any default then existing hereunder or under any of the other Loan Documents.

14.    If any provision under this Assignment or the application thereof to any entity, person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Assignment and the application of the provisions hereof to other entities, persons or circumstances shall not be affected thereby and shall be enforced to the fullest extent permitted by law.

15.    This Assignment may not be amended, modified or otherwise changed except by a written instrument duly executed by Assignor and Assignee.

16.    This Assignment shall be in full force and effect continuously from the date hereof to and until the Deed of Trust shall be released of record, and the release of the Deed of Trust shall, for all purposes, automatically terminate this Assignment and render this Assignment null and void and of no effect whatsoever.

17.    In case of a conflict between any provision of this Assignment and any provision of the other Loan Documents, the provision selected by Assignee, in its sole subjective discretion, shall prevail and be controlling.

-6-

3741
0078

BK 3741 PG 078

18.    All notices, demands, requests or other communications to be sent by one party to the other hereunder or required by law shall be given and become effective as provided in the Deed of Trust.

19.    **THIS ASSIGNMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED, EXCEPT TO THE EXTENT THAT ANY OF SUCH LAWS MAY NOW OR HEREAFTER BE PREEMPTED BY FEDERAL LAW, IN WHICH CASE SUCH FEDERAL LAW SHALL SO GOVERN AND BE CONTROLLING.**

20.    This Assignment may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Assignment may be detached from any counterpart of this Assignment without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Assignment identical in form hereto but having attached to it one or more additional signature pages.

21.    In addition to, but not in lieu of, any other rights hereunder, Assignee shall have the right to institute suit and obtain a protective or mandatory injunction against Assignor to prevent a breach or default, or to enforce the observance, of the agreements, covenants, terms and conditions contained herein, as well as the right to damages occasioned by any breach or default by Assignor.

22.    This Assignment shall continue and remain in full force and effect during any period of foreclosure with respect to the Property.

23.    Assignor hereby covenants and agrees that Assignee shall be entitled to all of the rights, remedies and benefits available by statute, at law, in equity or as a matter of practice for the enforcement and perfection of the intents and purposes hereof. To the fullest extent permitted by applicable law, Assignee shall, as a matter of absolute right, be entitled, upon application to a court of applicable jurisdiction, to the appointment of a receiver to obtain and secure the rights of Assignee hereunder and the benefits intended to be provided to Assignee hereunder.

24.    Notwithstanding anything to the contrary contained in this Assignment, the liability of Assignor for the indebtedness secured hereby and for the performance of the other agreements, covenants and obligations contained herein and in the Loan Documents shall be limited as set forth in the Note.

**[SIGNATURE PAGE IMMEDIATELY FOLLOWS]**

-7-

3741
0079

BK 3741 PG 079

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the day and year first written above.

**ASSIGNOR:**

**WOODLAND HARTFORD ASSOCIATES LLC,**
a New York limited liability company

By:   Woodland Hartford Management, Corp.
a New York corporation,
its Manager

By:   _____
Barry Levites
President

3741
8888

BK 3741 PG080

## ACKNOWLEDGMENT

STATE OF NEW YORK
~~COMMONWEALTH OF VIRGINIA~~

COUNTY OF New York

The foregoing Assignment was acknowledged before me this _15th_ day of September, 1998, by Barry Levites, as President of Woodland Hartford Management, Corp., the Manager of Woodland Hartford Associates LLC, a New York limited liability company.

_____
Notary Public

[NOTARIAL SEAL]

My Commission Expires:

BARRY E. ZWEIGBAUM
Notary Public, State of New York
No. 30-4007442
Qualified in Nassau County
Term Expires January 25, 1999

_____

J:\DOCS\NCLIB1\ACAPERTO\0044141.04

3741
0081

BK 3741 PG 081

## EXHIBIT A

ALL THAT certain lot, piece or parcel of land, situate in the Pleasant Grove Borough of the City of Chesapeake, Virginia, and designated as "PARCEL 18", consisting of 8.426 acres, as shown on that certain plat entitled, "Subdivision Plat of Las Gaviotas Commerce Center", dated October 27, 1987, and prepared by Centerline Associates, Ltd., which plat is recorded in the Clerk's Office of the Circuit Court of the City of Chesapeake, Virginia, on December 2, 1987 in Map Book 89, at page 69, being more particularly described as follows:

BEGINNING at a pin (S) on the eastern right-of-way of Las Gaviotas Boulevard and at the common property line of this Parcel, and the northwest corner of Parcel C, as shown on the aforementioned plat of subdivision, said point of being distant 202.43 feet from the northern right-of-way of Cedar Road; thence proceeding in a northerly direction along said Las Gaviotas Boulevard right-of-way along a bearing of N 49° 55' 25" E 328.13 feet to a pin (S); a point of curvature, thence along a curve to the left, having a radius of 636.64 feet and an arc length of 174.03 feet to a pin (F); thence turning and leaving said Las Gaviotas Boulevard right-of-way, S 40° 04' 35' E 674.63 feet to a pin (F) on the western right-of-way of Rountree Drive right-of-way; thence turning and proceeding in a southerly direction along said Rountree Drive right-of-way, S 44° 47' 23" W 253.19 feet to a pin (S); a point of curvature, thence along a curve to the left, having a radius of 150.00 feet and an arc length of 126.35 feet to a pin (S); a point of tangency, thence S 03° 28' 22" E 101.55 feet to a pin (S); a point of curvature, thence along a curve to the right, having a radius of 100.00 feet and an arc length of 93.19 feet to a pin (F); a point of tangency, thence turning and leaving said Rountree Drive right-of-way, N 40° 04' 35' W 400.50 feet to a pin (F); thence S 49° 55' 25" W 160.00 feet to a pin (S); a point of curvature, thence along a curve to the left, having a radius of 30.00 feet and an arc length of 47.12 feet to a pin (S); a point of tangency in the northern right-of-way line of Cedar Road, (Var. R/W), thence proceeding in a northerly direction along Cedar Road, N 40° 04' 35" W 110.00 feet to a pin (S); thence turning leaving said Cedar Road right-of-way along a curve to the left, having a radius of 30.00 feet and an arc length of 47.12 feet to a pin (S); a point of tangency, thence N 49° 55' 25" E 160.00 feet to a pin (S); thence N 40° 04' 35" W 405.00 feet to the point of beginning. Said Parcel contains 8.426 acres.

RECORDED WITH
CERTIFICATE ANNEXED

98 SEP 17 PM 1: 32

§53.1-802 TAXES PAID $_____
CHESAPEAKE, VA.
TESTE: _Alice M. White_
CLERK, CIRCUIT COURT

**EXHIBIT "D"**



Keith W. Crandall
Servicing Officer
ARCap Servicing, Inc.
5221 N. O'Connor Blvd., Suite 600
Irving, Texas 75039
T – 972.868.5331
F – 972.868.5495
E – kcrandall@arcap.com
W – www.arcap.com

June 14, 2006

Woodland Hartford Associates, LLC
Attn: Mr. Barry Levites
c/o Levites Realty
341 East 149th Street, Second Floor
Bronx, New York 10451-5619

Delivered via U. S. Certified Mail & Regular Mail
Certified Receipt No. 7003 3110 0000 1873 0671
Return Receipt Requested

Re:    Loan Number:          825999870 ("Mortgage Loan")
       Borrower Name:        Woodland Hartford Associates, LLC ("Borrower")
       Property Name:        Winn Dixie Chesapeake Cedar ("Mortgaged Property")
       Property Location:    215 Las Gavitos Boulevard, Chesapeake, Virginia 23322

Dear Mr. Levites:

Pursuant to that certain Pooling and Servicing Agreement dated as of May 24, 1999 between First Union Commercial Mortgage Securities, Inc., as Depositor; Wells Fargo Bank, N.A. (formerly known as Wells Fargo Bank Minnesota, N.A.), as Trustee; Wachovia Securities as successor-by-merger to First Union National Bank., as Master Servicer; and ARCap Servicing, Inc. ("ARCap Servicing"), as successor Special Servicer to First Union National Bank; the servicing of the referenced Mortgage Loan has been transferred to ARCap Servicing due to the Borrower's failure, among other things, to make the scheduled Mortgage Loan payments as required under the governing loan documents. As a result, effective immediately, please direct all communication on this loan, both written and verbal, to my attention until notified otherwise in writing. Payments should continue to be remitted to Wachovia Securities.

Based on review of the Mortgage Loan, the payments detailed below are outstanding and delinquent:

| Due Date | Principal & Interest Due | Tax & Insurance Escrow Due | Replacement Reserve Due | Late Charges Due | Total Amounts Due |
|----------|--------------------------|----------------------------|-------------------------|------------------|-------------------|
| 04/01/06 | $      0.00 | $   0.00 | $   0.00 | $ 1,945.04 | $   1,945.04 |
| 05/01/06 | $ 38,900.77 | $   0.00 | $   0.00 | $ 1,945.04 | $ 40,845.81 |
| 06/01/06 | $ 38,900.77 | $   0.00 | $   0.00 | $ 1,945.04 | $ 40,845.81 |
| TOTALS | $ 77,801.54 | $   0.00 | $   0.00 | $ 5,835.12 | $ 83,636.66 |
| Default Interest from 05/08/06 to 06/14/06 (See Exhibit A for calculation) | | | | | $ 18,800.98 |
| Total Amounts Due as of 06/14/05 | | | | | $ 102,437.64 |

Be advised that all of the past due amounts are immediately due and payable and, as a result of current and past defaults, the lender is entitled to exercise all of its rights and remedies under the Loan Documents including, without limitation, foreclosure of the deed of trust securing the Mortgage Loan and appointment of a receiver to the Mortgaged Property.

Be further advised that if the Borrower fails to timely cure the payment delinquencies referenced herein, the lender may exercise its rights and remedies available to it under the related loan documents, at law and/or in equity. Any legal or other collection costs incurred on behalf of the noteholder in connection with the defaulted Mortgage Loan will be added to the indebtedness owed by the Borrower pursuant to the governing loan documents.

Woodland Hartford Associates, LLC / #825999870 / FUNB CMB 1999-C2
June 14, 2006
Page 2

In addition to the above-referenced monetary defaults, ARCap Servicing has identified the following non-monetary defaults which must be cured immediately:

1. Our records indicate that insurance coverage for the related Mortgaged Property expired effectively April 30, 2006 and Borrower has failed to provide evidence of continued insurance coverage for such Mortgaged Property which failure constitutes an event of default pursuant to Section 1.4 of that certain Deed of Trust and Security Agreement dated September 16, 1998 ("Deed of Trust"). Demand is hereby made on Borrower to immediately provide evidence of current insurance coverage for such Mortgaged Property.

2. Our records indicate that real property taxes are past due in the approximate amount of $38,058.69 (not including penalties and interest) as of March 31, 2005 which constitutes an event of default pursuant to Section 1.5 of the Deed of Trust. Demand is hereby made on Borrower to immediately provide evidence of payment of such delinquent real property taxes.

In accordance with Section 1.18 of that certain Deed of Trust, the Borrower, Woodland Hartford Management Corp. ("Managing Member"), and Barry Levites ("Principal"), as applicable, are hereby instructed to deliver the following information to the attention of the undersigned by not later than **5:00 p.m., Central Time, June 23, 2006:**

1. Complete copies of Federal and State Tax Returns, as applicable, for the years 2003, 2004 and 2005 for each the Borrower and Managing Member.

2. Property Operating Statements for the fiscal years ending December 31, 2004, December 31, 2005 and year-to-date ending May 31, 2006 in sufficient detail to show all sources of income and expenses of the Mortgaged Property.

3. Property Rent Roll for the fiscal years ending December 31, 2004, December 31, 2005 and year-to-date period ending May 31, 2006.

4. Annual Balance Sheet and Profit and Loss Statement for the fiscal years ending December 31, 2004 and December 31, 2005 for the Mortgaged Property and annual reviewed financial statements for Borrower and Managing Member.

5. Copies of any motions, briefs, orders, claims or similar type filings filed by Winn Dixie or Borrower in its related Chapter 11 Bankruptcy Case filed by Winn Dixie in connection with the subject net lease encumbering the Mortgaged Property.

You are advised that nothing contained herein shall constitute a waiver by the noteholder of its rights and remedies in connection with the indebtedness owed by the Borrower on the Mortgage Loan. Any such waiver of rights shall not be in effect unless set forth in writing duly executed by an authorized representative of the noteholder. Neither Borrower nor any other party shall be entitled to rely upon any oral statements made or purported to be made by or on behalf of the noteholder in connection with any alleged agreement by the noteholder to refrain from exercising any of its rights in connection with the indebtedness. Acceptance by ARCap Servicing, or any other parties, on behalf of the current noteholder, of any debt service payments other than the required monthly payments does not and will not, constitute a waiver of any of the rights, remedies or recourses available under the loan documents, at law and/or under equity, and application of such payments should in no way be construed as a modification, rearrangement or extension of the existing loan documents. ARCap Servicing is attempting to collect a debt and any information obtained will be used for that purpose.

Woodland Hartford Associates, LLC / #825999870 / FUNB CMB 1999-C2
June 14, 2006
Page 3

Please contact me at 972.868.5331 should you have any questions about the Mortgage Loan or any of the information contained herein.

Sincerely,
Wells Fargo Bank, N. A., *(f/k/a Wells Fargo Bank Minnesota, N.A.)* as successor in interest to Norwest Bank Minnesota, National Association, as Trust, on behalf of and in trust for the registered holders of First Union National Bank - Chase Manhattan Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 1999-C2.

By:    ARCap Servicing, Inc., a Delaware corporation, in its capacity as special servicer pursuant to that certain Pooling and Servicing Agreement dated May 1, 1999

By:    _____
Name:  Keith W. Crandall
Title:   Servicing Officer

ATTENTION TO ANY DEBTOR IN BANKRUPTCY OR WHO HAS RECEIVED A DISCHARGE IN BANKRUPTCY:
Please be advised that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

Woodland Hartford Associates, LLC / #825999870 / FUNB CMB 1999-C2
June 14, 2006
Page 4

## Exhibit A

| | | | | | Default Interest Calculation | | | | |
| Amount Paid | Due Date | Default Date | Transaction Date | No. of Days | Default Rate | OPB | Default Interest | Per Diem |
|---|---|---|---|---|---|---|---|---|
| $0.00 | 05/01/06 | 05/08/06 | 05/31/06 | 23 | 4.000% | $4,573,211.74 | $11,687.10 | $508.13 |
| $0.00 | 06/01/06 | 06/01/06 | 06/14/06 | 14 | 4.000% | $4,573,211.74 | $7,113.88 | $508.13 |
| | | | | 37 | | | $18,800.98 | |

Note: Be advised that Default Interest will continue to accrue from the date of June 14, 2006 at the rate of $508.13 per day until all past due amounts, including all penalty and late charges and collection expenses, have been paid in accordance with the loan documents.

**EXHIBIT "E"**


COPY



America's Supermarket®

# LEASE

STORE #997

## Cedar Road and Las Gaviotas Boulevard
# CHESAPEAKE, VIRGINIA



## TABLE OF CONTENTS

PageNo.

1. DEFINED TERMS ........................................................ 1

2. DEMISE OF LEASED PREMISES; PRIORITY OF LEASE ........................ 1

3. TENANT'S EQUIPMENT .................................................. 1

4. TERM ................................................................ 1

5. RENT ................................................................ 2
   (a) Basic Rent ...................................................... 2
       (c) Additional Rent ............................................. 3
       (d) Net Lease; No Setoff or Counterclaim Against Rent ........... 3

6. UNCONDITIONAL PAYMENT OBLIGATION; NON-TERMINABILITY ................. 3
       (a) No Termination of Lease; No Defense to Tenant's Obligations ....... 3
       (b) Continuing Obligations of Tenant ........................... 3
       (c) Tenant's Waivers ........................................... 4

7. TITLE; SURVEY; ENVIRONMENTAL AUDIT .................................. 4

7A. LIENS; CONDITION OF PREMISES ....................................... 6
       (a) Liens ...................................................... 6
       (c) Encroachments .............................................. 6
       (d) Condition of Leased Premises ............................... 6
       (e) Assignment of Warranties, Guaranties, Indemnities .......... 7
       (f) Granting of Easements ...................................... 7
       (g) Conveyances for Public Purposes ........................... 8

7B. CONSTRUCTION OF PREMISES ........................................... 9

7C. COMPLETION DATE .................................................... 9

7D. COMMENCEMENT DATE .................................................. 10

8. USE AND MAINTENANCE OF PREMISES; QUIET ENJOYMENT ................... 10
       (a) Use. ....................................................... 10
       (b) Maintenance ................................................ 10
       (c) Replacement Equipment ...................................... 11
       (d) Landlord's Covenant of Quiet Enjoyment ..................... 11
       (e) Landlord's Right of Entry .................................. 11
       (f) Subordination, Nondisturbance and Attornment .............. 11

9. SIGNS. ............................................................. 11

10. PURCHASE OFFER; PROCEDURE ON PURCHASE .............................. 12
       (a) Title to be Conveyed ....................................... 12
       (b) Payment of Purchase Price; Conveyance Documents; Other Costs ... 12

11. TENANT'S SUBSTITUTION OPTION ....................................... 12



12.   PAYMENT OF IMPOSITIONS AND ADDITIONAL OBLIGATIONS;  COMPLIANCE WITH LAW  12
      (a)   Title to be conveyed. ......................................... 12
      (b)   Compliance with Law ....................................... 15

13.   INSURANCE ......................................................... 13
      (a)   Type of Insurance .......................................... 13
      (b)   Insurance Requirements; "Self-Insurance" ...................... 14
      (c)   Mortgagee Loss Payable Clauses; Cancellation of Insurance ........ 14
      (d)   Payment of Premiums; Policy Replacements ..................... 14
      (e)   Blanket Policies ........................................... 14

14.   PROPERTY LOSS .................................................... 15
      (a)   Property Loss Claims ....................................... 15
      (b)   Termination Upon Loss ..................................... 15

15.   CONDEMNATION .................................................... 15
      (a)   Assignment of Condemnation Award .......................... 15
      (b)   Total or Substantial Condemnation .......................... 16
      (c)   Partial Condemnation ...................................... 16
      (d)   Landlord's Equipment Condemnation ......................... 16
      (e)   Proceedings .............................................. 17

16.   ECONOMIC ABANDONMENT ............................................ 17

17.   RESTORATION ...................................................... 17

18.   ASSIGNMENT AND SUBLEASING; VACATION OF LEASED PREMISES .......... 17

19.   PERMITTED CONTESTS .............................................. 18

20.   ENVIRONMENTAL COVENANTS ......................................... 18

21.   INDEMNIFICATION ................................................. 19

22.   DEFAULT PROVISIONS .............................................. 20
      (a)   Events of Default ......................................... 21
      (b)   Landlord's Remedies Upon Tenant Default ..................... 20
      (c)   No Relief of Obligations ................................... 22
      (d)   Measure of Damages ....................................... 22

23.   ADDITIONAL RIGHTS OF LANDLORD ................................... 22
      (a)   Non-Exclusive, Cumulative Remedies ......................... 22
      (b)   Tenant's Waiver of Redemption .............................. 22
      (c)   Costs Upon Event of Default and Litigation ................... 22

24.   NOTICES.......................................................... 23

25.   ESTOPPEL CERTIFICATE ............................................ 24

26.   SURRENDER AND HOLDING OVER....................................... 24

27.   NO MERGER OF TITLE .............................................. 24

o:\transfer\raleigh\0997\freebond.3
November 19, 1997

ii



28.    ALTERATION AND EXPANSION ........................................ 24
(a)    Alterations Generally .............................................. 24
(b)    Alterations Involving Expansion of Improvements ............................ 25

29.    CHANGE OF CONTROL ............................................ 26

30.    MISCELLANEOUS ................................................ 26

o:\transfer\raleigh\0997/freebond.3
November 19, 1997                        iii

# LEASE AGREEMENT

THIS LEASE AGREEMENT (this "Lease") is made this November 21, 1997, between GEM CEDAR, L.L.C., a Virginia limited liability company ("Landlord") and WINN-DIXIE RALEIGH, INC., a Florida corporation ("Tenant"). "Landlord" and "Tenant" shall include, wherever the context permits or requires, singular or plural, and the heirs, legal representatives, successors, and assigns of the respective parties.

IN CONSIDERATION of the rents and mutual covenants herein contained to be paid and performed, Landlord and Tenant agree as follows:

1.    DEFINED TERMS. Capitalized terms as used in this Lease will have the meanings assigned to such terms as set forth on attached Exhibit "A".

2.    DEMISE OF LEASED PREMISES; PRIORITY OF LEASE. Effective on the Commencement Date, Landlord hereby demises and lets unto Tenant, and Tenant hereby takes and leases from Landlord, for the term or terms and upon the provisions hereinafter specified the following described property in Chesapeake, Virginia (collectively, the "Leased Premises"): (i) real property more particularly described on attached Exhibit "B", together with all easements, rights and appurtenances thereunto belonging or appertaining (the "Land"), (ii) the store building, approximately 222 feet in width by 231 feet in depth, together with a front vestibule, rear receiving room(s), exterior pads at the rear for installation of freezers and coolers (collectively, the "Store")and all other structures and other improvements now located or hereafter constructed on the Land as more particularly shown on the attached Site Plan prepared by The TAF Group, last revised November 11, 1997 (collectively, the "Improvements"), and (iii) the machinery, equipment and fixtures described on attached Exhibit "C", and additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease ("Landlord's Equipment"). This Lease is subject to the Permitted Encumbrances and, except to the extent that Landlord, Tenant and Mortgagee enter into a subordination agreement pursuant to paragraph 8(f) below, is prior to the Lien of any Mortgage. Landlord and Tenant have entered into a certain Short Form Lease of even date, which Short Form Lease shall be recorded in the official records at Tenant's expense.

3.    TENANT'S EQUIPMENT. The machinery, equipment and fixtures described on attached Exhibit "D", and additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease, and Tenant's trade fixtures and equipment ("Tenant's Equipment") are and will remain the property of Tenant, and are intended by Landlord and Tenant to constitute personal property of Tenant, and not fixtures, attachments or Improvements or other interest in real property, whether or not the same are attached or affixed to the Leased Premises and whether or not the same are deemed to constitute real property under State law.

4.    TERM. Subject to the provisions of this Lease, Tenant shall have and hold the Leased Premises for an initial term (the "Initial Term") commencing on the Commencement Date and ending on the date which is exactly twenty (20) years following the Commencement Date. As long as no Event of Default then exists, Tenant shall have the option, exercisable in accordance with the following provisions, to extend the Term for five (5) additional terms (each an "Extended Term") of five (5) years each by giving notice to Landlord not less than 180 days prior to the expiration of the then current Term. If Tenant does not give any such notice to extend to Landlord in a timely fashion, the Term shall automatically terminate at the end of the then current Term. Any such Extended Term shall be subject to all of the provisions of this Lease, all of which shall continue in full force and effect. If Tenant does not exercise an option for an Extended Term, Landlord shall have the right during the remainder of the then current Term (i) to advertise the availability of the Leased Premises for sale or for reletting, and to erect upon the Leased



Premises signs indicating such availability (provided that such signs do not unreasonably interfere with the use of the Leased Premises by Tenant), and (ii) to show the Leased Premises to prospective purchasers or tenants at reasonable times during normal business hours upon reasonable notice to Tenant. If Tenant fails to timely exercise its right to extend the Term for any Extended Term, then Tenant's right to extend the Term for any further Extended Terms shall terminate and be null and void.

5.    RENT. (a)    Basic Rent.  Tenant shall pay to Landlord without demand or offset, except as provided by law or specifically set forth herein, as rent for the Leased Premises during the Term, the amounts (the "Basic Rent") set forth in attached Exhibit "E", commencing on the Commencement Date, and continuing on the first day of each calendar month thereafter during the Term (said days being referred to as the "Basic Rent Payment Dates"). Basic Rent for fractional years and fractional months occurring at the beginning and end of the Term shall be pro-rated based upon a 365 day year.

(b)    Percentage Rent.  In addition, beginning on the Commencement Date, as hereinafter defined, Tenant shall pay Landlord percentage rent equal to the amount, if any, by which one percent (1%) of Gross Sales (as hereinafter defined) exceeds Basic Rent ("Percentage Rent"). Any Percentage Rent which may become due shall be payable within sixty (60) days after the expiration of each Fiscal Year, as hereinafter defined. However, upon final termination of the Term, any Percentage Rent due shall be payable within sixty (60) days after such termination or expiration of the Term. The Percentage Rent for each Fiscal Year shall be calculated separately and without reference to any other Fiscal Year. For purposes of calculation the Percentage Rent due hereunder, Tenant's fiscal year shall be approximately July 1st to June 30th of each year (the "Fiscal Year").

"Gross Sales" shall mean the aggregate sales price of all merchandise sold in or from the Store by Tenant during each fiscal year of the Term, both for cash and on credit (less customary reserves for bad debts). Gross Sales shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by Tenant from the Leased Premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and tobacco; (5) all receipts from vending machines, banks, automatic teller machines and public telephones; (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, lottery entries, money orders, government bonds, savings stamps, or similar items; (7) returns of merchandise to suppliers or manufacturers; (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts, or coupons for exchange of merchandise or other things of value; and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of Gross Sales it expects to make in or from the Leased Premises. Landlord shall not release and shall keep confidential all information disclosed to or discovered by it concerning Gross Sales, and shall require Landlord's Auditor to keep the same confidential. Landlord may, however, disclose Gross Sales to lenders, prospective lenders, and to prospective purchasers of the Leased Premises (collectively, "Interested Parties") provided that such Interested Parties agree in writing to keep Gross Sales information confidential.

Tenant shall keep complete and accurate books and records of its Gross Sales. At the end of each Fiscal Year, or at the end of the Term, if it sooner occurs, Tenant shall submit to Landlord a written statement of Gross Sales for the preceding Fiscal Year. Such statement of Gross Sales shall be treated as confidential by Landlord and shall be conclusive unless Landlord, within 180 days after receipt thereof, shall give written notice to Tenant of its intent to audit Tenant's Gross Sales figures for the prior year. The Landlord may then, at its cost and expense, cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant

**IN WITNESS WHEREOF,** Landlord and Tenant have caused this instrument to be executed under seal as of the day and year first above written.

Witnesses:

Print name: _EVETTE N. JANA_

Print name: _Elizabeth A. Matulcra_

**GEM CEDAR, L.L.C., a Virginia limited liability company**

By: _____

Its: _____

Print name: _Jane E. DeWitte_

Printed Name: _Rebecca L. Dewyer_

**WINN-DIXIE RALEIGH, INC.,**

By: _____
   James Rafeldt

Its: Vice President

Attest: _____

Its: Assistant Secretary

27

STATE OF _Virginia_ )
~~COUNTY~~ OF _Virginia Beach_ )
_City_

I, _Evette W. Jana_ , a Notary Public, State and County aforesaid, do hereby certify that _John L Gibson III_ personally appeared before me this day and acknowledged that he/she is a Member of GEM CEDAR, L.L.C.., a Virginia limited liability company, and that, by authority duly given and as the act of the company, the foregoing instrument was signed in its name by _John L Gibson III_ , its Member, with full authority.

Witness my hand and official seal, this the _20th_ day of _November_ , 1997.

Printed Name: _EVETTE N. JANA_
Notary Public, State and County aforesaid
My commission expires: _October 31, 1998_
(NOTARIAL SEAL)


STATE OF FLORIDA )
COUNTY OF DUVAL )

I, _Rebecca L Sawyer_ , a Notary Public, State and County aforesaid, do hereby certify that _Mallory Gayle Holm_ personally appeared before me this day and acknowledged that he/she is _ASST_ Secretary of Winn-Dixie Raleigh, Inc., a Florida corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its _Vice_ President, sealed with its corporate seal, and attested by her/himself as its _ASST._ Secretary.

Witness my hand and official seal, this the _21_ day of _November_ , 1997.

Printed Name: _Rebecca L Sawyer_
Notary Public, State and County aforesaid
My commission expires:
(NOTARIAL SEAL)

REBECCA L. SAWYER
My Comm. Exp. June 2, 1998
Comm. No. CC 372310

## CORPORATE GUARANTY OF LEASE OBLIGATIONS

THIS CORPORATE GUARANTY OF LEASE OBLIGATIONS ("Guaranty") is given as of the date indicated below by WINN-DIXIE STORES, INC., a Florida corporation ("Guarantor") to and in favor of GEM CEDAR, L.L.C., a Virginia limited liability company ("Landlord") on behalf and for the account of WINN-DIXIE RALEIGH, INC., a Florida corporation ("Tenant").

### RECITALS:

1.    Landlord and Tenant intend to be parties to that certain lease dated  _11-21_  , 1997 (the "Lease"), pursuant to which Landlord has agreed to lease to Tenant certain real property and related improvements located in Chesapeake, Virginia, as more particularly described in the Lease (the "Premises").

2.    Landlord is unwilling to lease the Premises to Tenant unless Guarantor executes and delivers this Guaranty.

3.    Landlord's leasing of the Premises to Tenant will, directly or indirectly, materially benefit Guarantor, and therefore, Guarantor has agreed to execute and deliver this Guaranty.

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor agrees as follows:

1.    The foregoing recitals are true and correct and incorporated herein.

2.    Guarantor does hereby guarantee unto Landlord, its heirs, legal representatives, successors and assigns, the due performance and observance by Tenant of all the terms, covenants and conditions on the part of the Tenant to be performed and observed under the Lease, including, without limitation, payment of Basic Rent, Percentage Rent, and Additional Rent, when due, without offset or deduction except as provided in the Lease, and all as is more particularly provided therein.

3.    This Guaranty shall be absolute, continuing and unlimited, and the Landlord shall not be required to take any proceedings against the Tenant, or give any notice to the undersigned before the Landlord has the right to demand payment or performance by the undersigned upon default by the Tenant.  The Guaranty and the liability of the undersigned hereunder shall in nowise be impaired or affected by any assignment which may be made of said Lease, or any subletting thereunder, or by any extension(s) for the payment of any rental or any other sums provided to be paid by Tenant, or by any forbearance or delay in enforcing any of the terms, conditions, covenants or provisions of said Lease or any amendment, modification or revision of said Lease.  No action or proceeding brought or instituted under this Guaranty against the undersigned, and no recovery obtained in pursuance thereof shall be any bar or defense to any further action or proceeding which may be brought under this Guaranty by reason of any further defaults to Tenant.  The liability of the undersigned shall not be deemed to be waived, released, discharged, impaired or affected by reason of the release or discharge of the Tenant in any creditors, receivership, bankruptcy or other proceedings, or the rejection or disaffirmance of the Lease in any proceedings.

4.    No amendment, modification, or extension of the Lease which has the effect of increasing or extending Guarantor's obligations under this Guaranty shall be valid or enforceable against Guarantor without Guarantor's written consent.

5.    All notices required or permitted to be given under this Guaranty shall be in writing and sent to the address(es) or telecopy number(s) set forth below. All payments made under this Guaranty shall be sent to Landlord at the address below or at such other address as Landlord shall provide by written notice from time

29

to time. Each communication shall be deemed duly given and received: (a) as of the date and time the same is personally delivered with a receipted copy; (b) if given by telecopy, when the telecopy is transmitted to the recipient's telecopy number(s) and confirmation of complete receipt is received by the transmitting party during normal business hours for the recipient, or the day after confirmation is received by the transmitting party if not during normal business hours for the recipient; (c) if delivered by U.S. Mail, three (3) days after depositing with the United States Postal Service, postage prepaid by certified mail, return receipt requested, or (d) if given by nationally recognized or reputable overnight delivery service, on the next day after receipted deposit with same.

  Landlord :   GEM CEDAR, L.L.C.
         207 Business Park Drive, #101
         Virginia Beach, Virginia 23462
         Attention: John Gibson
         Telecopy: 757-497-2943

or at such other address as Landlord may direct from time to time.

  Guarantor:   Winn-Dixie Stores, Inc.
         Attn: P. Christopher Wrenn, Esquire
         5050 Edgewood Court
         P.O. Box B
         Jacksonville, FL 32203-0297
         Telecopy: (904) 783-5138

    or to such other address as Guarantor may direct from time to time.

  6.   This Guaranty shall inure to the benefit of Landlord and its successors and assigns and shall bind Guarantor, its successors and assigns.

  IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date indicated below.

        WINN-DIXIE STORES, INC.

        By: _____
          James Kufeldt
        Its: President
        Date: 11-21-97

# ASSIGNMENT AND ASSUMPTION AGREEMENT RE: LEASES

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT is made as of this _____ day of September, 1998, by and between GEM CEDAR, L.L.C., a Virginia limited liability company ("Assignor") and WOODLAND HARTFORD ASSOCIATES LLC, a New York limited liability company ("Assignee").

## WITNESSETH:

WHEREAS, Assignee has this date purchased from Assignor certain real property (the "Premises"), in Chesapeake, Virginia, all more particularly described on Exhibit A attached hereto made a part hereof, and

WHEREAS, in connection with such purchase and sale, Assignor desires to assign and Assignee desires to assume all leases currently existing at the Premises;

NOW, THEREFORE, in consideration of the premises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto do hereby agree as follows:

1.      Assignor hereby transfers and assigns to Assignee all right, title and interest of Assignor in and to the following described property:

   (a)     All leases, subleases and other occupancy agreements relating to or affecting the Premises, together with all guarantees of obligations of tenants and other parties under such leases and agreements, including, without limitation, the leases and other agreements more fully described on Exhibit B attached hereto and made a part hereof (collectively, the "Leases"); and

   (b)     The current outstanding balance of all security deposits and prepaid rents, together with all interest accrued thereon, as more fully described on Exhibit C attached hereto and made a part hereof (collectively, the "Security Deposits");

      TO HAVE AND TO HOLD all of the foregoing unto the Assignee, its successors and assigns, from and after the date hereof, subject to the terms, covenants, conditions and provisions contained herein.

2.      Assignee hereby accepts the foregoing assignment of the Leases and Security Deposits and hereby assumes all the duties and obligations of Assignor accruing from and after the date hereof under the Leases and with respect to the Security Deposits.   Assignee shall indemnify, defend and hold Assignor harmless from and against, any and all claims, liabilities and

BB-17557.1/WWH:NS
9/14/98

1





costs (including **reasonable** attorneys' fees and costs) arising out of or relating to Assignee's failure to perform any duty or obligation assumed by Assignee under the Leases or with respect to the Security Deposits.

3.    Assignor shall indemnify, defend and hold Assignee harmless from and against any and all claims, liabilities and costs (including **reasonable** attorneys' fees and costs) arising out of or relating to Assignor's failure to perform any duty or obligation accruing on or before the date hereof under the Leases or with respect to the Security Deposits.

4.    This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Agreement under seal on the day and year first above written.

ASSIGNOR:    GEM CEDAR, L.L.C,
              a Virginia Limited Liability Company


By:    _____    [SEAL]
       John U. Gibson, III
       Manager


ASSIGNEE:    WOODLAND HARTFORD ASSOCIATES LLC
              A New York Limited Liability Company

By:    Woodland Hartford Management, Corp.,
       Its Member Manager


By: _____ [SEAL]
    Name:    Barry Levittes
    Its:     President


BS-17557.1/WWH:NS
9/14/98

2

## Exhibit A

### Property Description

ALL THAT certain lot, piece or parcel of land, situate in the Pleasant Grove Borough of the City of Chesapeake, Virginia, and designated as "PARCEL 18", consisting of 8.426 acres, as shown on that certain plat entitled, "Subdivision Plat of Las Gaviotas Commerce Center", dated October 27, 1987, and prepared by Centerline Associates, Ltd., which plat is recorded in the Clerk's Office of the Circuit Court of the City of Chesapeake, Virginia, on December 2, 1987 in Map Book 89, at page 69, reference to which is hereby made for a more particular description thereof.

IT BEING a part of the same property conveyed to GEM Cedar, L.L.C., a Virginia limited liability company by deed from SSR Cedar Road J.V., a Virginia general partnership, recorded December 10, 1997 in the Clerk's Office of the Circuit Court of the City of Chesapeake, Virginia in Deed Book 3589, page 784.

BE-17557.1/WWH:NS
9/14/98



## Exhibit B

### Leases

1.  Lease, dated November 21, 1997, by and between GEM Cedar, L.L.C., a Virginia limited liability company (the "Landlord") and Winn-Dixie Raleigh, Inc., a Florida corporation (the "Tenant").

EXHIBIT "E"

SCHEDULE OF RENT

Basic Rent during the Initial Term and any Extended Term shall be $472,939.00 per annum, payable in equal installments of $39,411.58 on the first day of each calendar month of the Initial Term and any Extended Term.

41

## ESTOPPEL CERTIFICATE

Loan No. 82-5999870

This Certificate is given to First Union National Bank, a national banking association (its successors and assigns, collectively the "Lender"), by Woodland Hartford Associates LLC ("Borrower"), with the understanding that Lender and its counsel will rely on this Certificate in connection with a proposed deed of trust loan (the "Loan") on Winn Dixie Store #997 located at Las Gaviotas Boulevard, Chesapeake, Virginia (the "Property"). Borrower hereby represents and warrants the following:

1.     Winn-Dixie Raleigh, Inc. is the tenant (the "Tenant") under that certain lease dated November 12, 1997, by and between Gem Cedar, L.L.C., as landlord ("Landlord"), and Tenant, as tenant, (the "Lease"). As used herein, the term "Landlord" includes any successor or assign of the named Landlord, including Borrower.

2.     Pursuant to the Lease, Tenant has leased space in the Property consisting of approximately 51,282 leasable square feet (the "Premises"); the fixed annual minimum rent is set for the term of the Lease and is payable monthly in advance on the first day of each calendar month; no rent has been prepaid except for the current month, and Tenant agrees not to pay rent more than one month in advance at any time. Tenant's percentage share of operating expenses/common area charges, insurance and real estate taxes is 100%; Tenant is obligated to pay percentage rent equal to 1% of annual gross receipts (as defined in the Lease) in excess of the fixed annual minimum rent. Tenant has paid a security deposit of $0.00 in connection with the Lease.

3.     .   Tenant does not have any right or option to renew or extend the term of the Lease or to expand into any additional space or to terminate the Lease in whole or in part prior to the expiration of the term except as set forth below in this paragraph:

Five additional terms of five years each

4.     The Lease is the entire agreement between Landlord and Tenant pertaining to the Premises. Except as set forth below in this paragraph, there are no amendments, modifications, supplements, arrangements, side letters or understandings, oral or written, of any sort, modifying, amending, altering, supplementing or changing the terms of the Lease. A true, correct and complete copy of the Lease, together with any amendments, modifications and supplements thereto, is attached hereto.

5.     As of the date hereof Landlord is not aware of any defect in the Premises.

6.     Landlord has satisfied all commitments made to induce Tenant to enter into the Lease; there are no offsets or credits against rentals payable under the Lease; no free periods of rent, tenant improvements, contributions or other concessions have been granted to Tenant; Landlord is not reimbursing Tenant or paying Tenant's rent obligations under any other lease; and



Tenant has not advanced any funds for or on behalf of Landlord for which Tenant has a right of deduction from, or set off against, future rent payments.

7.      There are no offsets or defenses that Tenant has against the full enforcement of the Lease by Landlord.

8.      Tenant is not in any respect in default under the Lease and has not assigned, transferred or hypothecated the Lease or any interest therein or subleased all or any portion of the Premises. Tenant does not have any right or option to purchase all or any part of the real property of which the Premises constitute a part.

9.      No future modifications or amendment of the Lease will be enforceable unless the modification or amendment has been consented to in writing by the Lender.

10.      There has been no assignment of the Lease by the Landlord, or any assignment, hypothecation or pledge of rents accruing under the Lease by the Landlord.

11.      Upon commencement of rent payments pursuant to the Lease by the Tenant, Landlord shall cause Tenant to execute an estoppel letter, stating the exact date of such rent commencement and otherwise in form and substance reasonably acceptable to Lender.

12.      Landlord covenants that it shall cause all obligations of Landlord under the Lease, with regard to construction and delivery of the Premises, to be fulfilled within the time frame allocated in Section 7C the Lease.

[SIGNATURE PAGE IMMEDIATELY FOLLOWS]



Dated: _____, 1998.

**WOODLAND HARTFORD ASSOCIATES LLC,**
a New York limited liability company

By:   Woodland Hartford Management, Corp.
      a New York corporation,
      its Manager

WITNESS:

By: _____

    By: _____
        Barry Levites
        President

WITNESS:

By: _____

3

**EXHIBIT "F"**

## SUPPLEMENTAL LEASE AGREEMENT

**THIS SUPPLEMENTAL LEASE AGREEMENT** (the "Agreement") is made this 19th day of November, 1998, between WINN-DIXIE RALEIGH, INC., a Florida corporation, (hereinafter the "Tenant") and WOODLAND HARTFORD ASSOCIATES, L.L.C., a New York limited liability company (hereinafter the "Landlord").

**WHEREAS,** Tenant and Landlord entered into a Lease dated November 21, 1997, as amended and/or evidenced by: (a) Memorandum of Lease dated November 21, 1997, recorded in Book 3605, page 380 at the Clerk , Circuit Court, Chesapeake, Virginia (the "Lease") for the use and occupancy of the Premises described therein;

**NOW, THEREFORE,** pursuant to the provisions of the Lease, Tenant and Landlord mutually agree as follows:

1.    The Commencement Date of the Term is November 19, 1998.

2.    The Term shall expire at midnight Eastern Time on November 18, 2018, unless earlier terminated or later extended as provided for in the Lease.

3.    All undefined capitalized terms used herein are as defined in the Lease.

**IN WITNESS WHEREOF,** the parties hereto have signed and sealed this Agreement on the date first set forth above.

Signed, sealed and delivered
in the presence of:

1)_____
    Print Name>.............................

2)_____
    Print Name>.............................

*As to Landlord*


WOODLAND HARTFORD ASSOCIATES, L.L.C.,
a New York limited liability company
By:_____
Name>........................................
            Its            ~~President~~ MANAGING MEMBER

*Landlord*


1)_____
    Print Name>.............................

2)_____
    Print Name>.............................

*As to Tenant*


WINN-DIXIE RALEIGH, INC.
a Florida corporation

By:_____
Name>........................................
            Its        President
*Tenant*


997.raleigh.sla
12/8/98tlm

STATE OF _NEW YORK_ )
COUNTY OF _BRONX_ )

The foregoing instrument was acknowledged before me this _14th_ day of _DECEMBER_ 1998, by _BARRY LICITES_ , as ~~Authorized Member~~ President of WOODLAND HARTFORD ASSOCIATES, ~~LLC~~ a New York ~~limited liability company~~, on behalf of the company, who is ( ) personally known to me or has ( ) produced ___Corporation___ as identification.

_Maureen Farrell_
Printed Name: _MAUREEN FARRELL_
Notary Public, State and County aforesaid.
My Commission Expires: _9/30/99_
Notary ID No.: _01FA4705738_
(NOTARIAL SEAL)

MAUREEN FARRELL
NOTARY PUBLIC STATE OF NY
QUALIFIED WESTCHESTER CNTY
NO. FA4705738
COMMISSION EXP. 9/30/99

STATE OF FLORIDA )
COUNTY OF DUVAL )

The foregoing instrument was acknowledged before me this _____ day of _____, 1998, by _____, as _____ President of WINN-DIXIE RALEIGH, INC., a Florida corporation, on behalf of the corporation, who is ( ) personally known to me or has ( ) produced _____ _ as identification.

_____
Printed Name: _____
Notary Public, State and County aforesaid.
My Commission Expires: _____
Notary ID No.: _____
(NOTARIAL SEAL)

997.raleigh.sla
12/8/98tlm