**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Case No.: 05-03817-3F1** |
| | ) | |
| **WINN-DIXIE STORES, INC.,** | ) | **Chapter 11** |
| ***et al.,*** | ) | |
| | ) | |
| **Reorganized debtors** | ) | **Jointly Administered** |
| | ) | |

**MOTION TO ENLARGE TIME**
**TO FILE ADMINISTRATIVE CLAIM REQUEST**

The Movants, HYECHA B. MARSHALL and LINC MARSHALL, ("Movants" or "Tort Claimants"), by and through the undersigned attorneys, hereby file this Motion to Enlarge Time to File Administrative Claim Request (hereinafter "Motion") and in support states as follows:

**Jurisdictional Allegations**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue of the Debtors' Chapter 11 cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are pursuant to 11 U.S.C. § 105(a), 503(a), 1141 and Rules 4001, 9006(b) and 9014 of the Federal Rules of Bankruptcy Procedure.

**Relevant Facts and Basis for Relief Requested**

2. The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005.

3. Mrs. Hyecha Marshall and Mr. Linc Marshall have claims against the Debtor resulting from a fall-down that occurred on its business premises on November 22, 2005. *See* Affidavit of Frank F. Fernandez, III, filed separately in this action (hereinafter "the Fernandez

Affidavit"). As a result of that incident, Mrs. Marshall suffered a broken right hip which, despite surgery, multiple medical procedures, and the best efforts of medical providers, has rendered her permanently handicapped. *Id.*

4. Thereafter, Movants retained the services of The Fernandez Firm (State Court Counsel) on November 26, 2005.

5. On November 29, 2005, Frank F. Fernandez of The Fernandez Firm provided Winn-Dixie with notice of the subject claim via certified mail, return receipt requested, # 7004 2890 0004 3479 6474. *Id.* Certified notice of the subject claim was received and accepted by Winn-Dixie on December 5, 2005. *Id.*

6. Throughout the course of the next eleven (11) months, and until as recently as October 2, 2006, Winn-Dixie's claims representative continued to correspond with State Court Counsel, providing requested case information and seeking updates on Mrs. Marshall's treatment status. At no point during this almost one-year period did Debtors' claims representative mention that its corporation had filed for bankruptcy or that it had received an Order—as early as November 9, 2006—confirming a joint plan of reorganization which established tort claim filing deadlines. *See* The Fernandez Affidavit.

7. The Joint Plan of Reorganization of Winn-Dixie Stores, Inc., and Affiliated Debtors was filed on August 9, 2006 and was modified by the First Modification of Joint Plan of Reorganization of Winn-Dixie Stores, Inc., and Affiliated Debtors dated October 13, 2006 (together "The Plan"). Although the Debtor was clearly aware of the Movants' claims, the Debtor failed to serve the Movants with a copy of the Plan. *See* Fernandez Affidavit, filed separately in this action.

8. The Court entered an Order Confirming Joint Plan of Reorganization of Winn-Dixie Stores, Inc.'s, and Affiliated Debtors' ("Confirmation Order"). Again, although it was well aware of the existence of the Movants' claims, the Debtor failed to serve State Court Counsel with a copy of the Order. *See* the Affidavit of Frank F. Fernandez, III, filed separately in this action ("Fernandez Affidavit").

9. After confirmation of Debtors' Plan of Reorganization, a Notice of a bar date for filing administrative claims was issued on December 6, 2006. This Notice set January 5, 2007, as the bar date for filing such claims. As explained more fully herein and in the detailed Affidavit of Frank F. Fernandez, III, filed separately in this action, Mr. Fernandez did not receive Notice of the bar date to file administrative claims until after the bar date had passed. After discovering the bar date, State Court Counsel swiftly moved forward with filing an application for Administrative Expense and an Amended Application for Administrative Expense. *See* Fernandez Affidavit. A copy of the Application and Request for Payment of Claim is attached as "Exhibit A." A copy of the Amended Application and Request for Payment of Claim is attached as "Exhibit B."

**A. Movants have Established "Excusable Neglect" Under Fed.R.Bankr.P. 9006(b)**

10. Section 503(a) of the Bankruptcy Code provides that "an entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court *for cause*." (emphasis added). The Bankruptcy Code does not specifically define what "cause" justifies a tardily-filed administrative expense request. However, Courts routinely apply Bankruptcy Rule 9006 (b) to permit the enlargement of time for filing a § 503(a) Bankruptcy Rule administrative request after the deadline has passed, "where the failure to act was the result of excusable neglect." *See In re Gottchalk,*, 78 F.3d 593, 1993 WL 83877, *2 (9th Cir. 1996); *In*

*re West Delta Oil Co.*, 2002 WL 506814, *4 (E.D. La. 2002); *In re Gurley*, 235 B.R. 626, 631-32 (Bankr. W.D. Tenn. 1999); *Aargus Polybag Co, Inc. v. Commonwealth Edison Co., Inc. (In re Aargus Polybag Co., Inc.)*, 172 B.R. 586, 589 (Bankr. N.D. Ill. 1994).

11. In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), the United States Supreme Court rejected the contention that Bankruptcy Rule 9006(b)(1) required a showing that a movant's failure to comply with the bankruptcy court's deadline was caused by circumstances beyond its reasonable control. Instead, the Supreme Court concluded that:

> [T]he determination [of what types of neglect will be considered excusable] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 381. Accordingly, courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 1499. This "excusable neglect" standard for filing a late proof of claim established by *Pioneer* has also been applied to determine whether the late filing of an administrative expense request was the result of "excusable neglect." *See Gottchalk*, 78 F.3d at 593; *West Delta Oil*, 2002 WL 506814 at *4; *Gurley*, 235 B.R. at 631-32; *Aargus*, 172 B.R. at 589.

12. The factors to be considered in determining "excusable neglect" are: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.

13. The creditor is not required to prove that the circumstances surrounding the late filing were extraordinary. *See In re Singson*, 41 F.3d 316, 318 (7th Cir. 1994). As the Supreme Court in *Pioneer* explained:

> [B]y empowering the courts to accept late filing where the failure to act was the result of excusable neglect, Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Pioneer*, 507 U.S. at 388. The Supreme Court also explained that this flexible understanding of excusable neglect accords with the policies underlying Chapter 11 and the bankruptcy rules. *Id.* at 389. Specifically, whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding the forfeitures by creditors. *Id.*

**I. <u>No Danger of Prejudice to the Debtors</u>**

14. Prejudice to the Debtors must be material and cannot be vague or speculative. *See In re Pettibone Corp.*, 162 B.R. 791, 804-805 (Bankr. N.D.Ill. 1994). Here, the danger of prejudice to the Debtors is non-existent.

15. The Debtors were well aware of the claim prior to the bar date and the Debtors are required under the Code and the Plan to pay administrative claims in full. Debtors cannot attempt to avoid their requirements to pay administrative claims by lulling the Movants into a sense of security by virtue of ongoing negotiations for almost one (1) year, never advising of the bankruptcy filing and never providing a copy of the Plan or Order Confirming Plan.

16. Moreover, the Debtors cannot attempt to avoid its requirement to pay administrative expense claims by: providing notice of a bar date that is ambiguous --- at the very least --- with respect to its application to personal injury tort claimants; and provides an

unusually short time frame in which to file an administrative claim --- only eighteen (18) business days, many of which fell during the Christmas/Chanukah and New Year holidays.

17. Furthermore, despite Debtors knowledge of the existence of Movants' claims for more than one (1) year prior to the deadline to file an application for administrative expense and prior to the filing of the Plan of Reorganization, Debtors did not serve Movants' State Court counsel with a copy of the Plan of Reorganization or Order on Plan of Reorganization. *See* Fernandez Affidavit. As a result, the Movants had no opportunity to object to the form of Notice or the unreasonably short time available in which to prepare and file an administrative claim.

18. It is anticipated that Debtors will argue that Movants' claim was not accounted for in the funding of the Plan. This argument, however, is of no merit and should bear no weight. Courts have held that such a narrow analysis inappropriate because it treats prejudice as nothing more than the loss of a windfall and would therefore result in the denial of all motions regarding late filed claims under *Pioneer* and Rule 9006(b). *See In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 126 (3d Cir. 1999).

19. The Debtors encompass an experienced national grocery store chain, represented by experienced claims representatives and legal counsel, who were well aware of Movants' claims since December 5, 2005. They are, therefore, aware of the fact that claims, such as the claim of the Movants, develop as part of the Debtors' business practice and that such claims should be reasonably anticipated to arise subsequent to the bar date. It is reasonably certain that such claims would arise post-petition in the course of Debtors' doing business as a national grocery store chain. Furthermore, the Debtors must be held accountable for their own records and records in this case evidence the existence of the Movants' claim prior to the bar date.

## II. The Length of Delay and its Potential Impact on Judicial Proceedings

20. The length of delay here and its impact on these cases is de minimus. After first discovering the missed deadline, Movants took immediate action to rectify the situation. This distinguishes Movants' filing from those claimants that consciously failed to file claims in the face of known bar dates. *See e.g. Aargus Polybag*, 172 B.R. at 591 (eight month delay found unreasonable where creditor consciously disregarded bar date and did not affirmatively file any motion based upon excusable neglect, but only raised the argument in a responsive pleading).

21. Permitting the filing will not impact the administration of the grocery store chain. Consideration of Movants' claim can be undertaken in the ordinary course, along with all of the other administrative expenses requests filed in the case during the administrative claim allowance process, which is presently occurring. Furthermore, Debtors will have more than sufficient time to determine whether there are grounds to object to the claim.

22. Moreover, the delay will not have an impact on the administration of the Chapter 11 case and, as previously shown, the Debtors were well aware, based on its own records, that Movants' claim existed prior to the bar date.

## III. The Reason for Delay and Whether the Delay Was Within the Creditor's Reasonable Control.

23. As explained in great detail in the Fernandez Affidavit, on December 11, 2006, The Fernandez Firm apparently received a one-page, two-sided document entitled "Notice of (A) Entry of Order Confirming Plan of Reorganization, (B) Occurrence of Effective Date of Plan, and (C) Bar Dates for Filing Claims Arising Before Effective Date and Other Administrative Claims" (hereinafter "the Notice").

24. The Fernandez Firm is a personal injury firm which does not practice in the area of bankruptcy. This Notice on its face gives no indication that it applies to personal injury claimants and the two-page document contains other detailed bankruptcy information that is totally irrelevant to a bar date to file claims. The ambiguity of this Notice, thus, resulted in confusion in the handling of the Notice at The Fernandez Firm.

25. The standard practice at The Fernandez Firm is to review U.S. mail for pleadings, notices, and court orders containing deadlines and then to docket those deadlines. (*See* the Fernandez Affidavit). In addition, the staff of The Fernandez Firm is not familiar with documents, such as the subject Notice, which do not give rise to personal injury claimants. *Id.* Although the firm has a detailed system in place for the delivery, docketing and calendaring of court documents, *Id.*, this Notice gives no indication on the face that it applies to personal injury claimants such as the Movants.

26. The Fernandez Firm's standard operating procedure requires that Mr. Fernandez would also be provided a copy of the Notice. However, the Notice was placed directly in the correspondence section of the file. *See* The Fernandez Affidavit. The document was inadvertently filed as correspondence on December 11, 2006, the day it was received, without being reviewed by Mr. Fernandez and without being calendared by the Firm's legal assistants. *Id.*

27. There is a clear reason for the delay in the timely filing of a request for payment of an administrative expense. First, the Movants were never given an opportunity to object to the unreasonably short time frame in which to prepare and file an Application for Administrative Expense. Second, the Notice is ambiguous and, without question, unclear as to whether it

applies to tort claimants --- especially to a firm that does not practice in the area of bankruptcy. Third, Mr. Fernandez himself did not see the Notice until after the bar date had passed.

28. The deadline was not docketed do to innocent oversight of the secretary opening the mail at The Fernandez Firm. This oversight was complicated further by the secretary at The Fernandez Firm placing the Notice directly in the file instead of providing a copy to the attorney, Frank Fernandez, III. *See* The Fernandez Affidavit. The Eleventh Circuit has specifically held that failure to docket an applicable deadline by a secretary at a law firm constitutes excusable neglect. *See Walter v. Blue Cross Blue Shield United of Wisconsin* 181 F.3d 1198, 1202 (11th Cir 1999).

**IV. <u>Movants Acted in Good Faith</u>**

29. Movants acted in good faith by attempting to remedy this matter as soon as it was discovered. State Court Counsel immediately contacted counsel for the Debtors by correspondence and conversations with Debtors' Counsel's firm. To date, despite numerous attempts at contact by State Court Counsel, no response has been received from Debtors' Counsel.

30. In addition, prior to the filing of this Motion, State Court Counsel attempted to resolve this matter by providing a detailed affidavit, setting forth facts that clearly meet the *Pioneer* standard. Since no response was ever received from Debtors' Counsel, Movants had no other alternative than to file this Motion. Movants again acted quickly and in good faith by filing this Motion to Enlarge Time.

31. Finally, Movants acted in good faith by filing the Administrative Claim as soon as reasonably possible. The failure to timely file the Administrative Expense Request was not intentional, but was an innocent oversight by the staff at The Fernandez Firm in not docketing

the applicable deadline. Courts have repeatedly held that clerical error constitutes excusable neglect. *See Walter v. Blue Cross Blue Shield United of Wisconsin* 181 F.3d 1198, 1202 (11th Cir 1999).

32. Moreover, it is the Debtors who appear to have not acted in good faith. The Movants were lulled into a sense of security by virtue of the ongoing negotiations between the Debtors through Sedgwick Claims Management for almost one (1) year, on behalf of the Debtors, during which time the Debtors never mentioned the existence of the bankruptcy.

33. Finally, the Debtors failed to serve State Court Counsel with a copy of the Plan of Reorganization or Order Confirming Plan of Reorganization. As a result, the Movants were deprived of the right to object to the form and content of the Notice.

**B. The Notice is ambiguous and therefore defective as to Movants.**

34. The Notice is ambiguous and therefore defective as to the Movants. By its terms, the Notice does not apply to personal injury claims. The wording in the Notice and the timing appear to be designed to mislead personal injury claimants. Clearly, the Debtors were well aware of a large number of these types of claimants and the Notice could easily have been drafted to effectuate the timely docketing of this deadline. It is unjust to require non-bankruptcy counsel and his staff to correctly and timely interpret this ambiguous and, therefore defective, Notice.

35. Finally, the Notice fails to provide a reasonable time frame in which to file the Application for Administrative Expense, only providing eighteen (18) business days for filing same --- many of which encompassed recognized, legal holidays. Due to inadvertent error by the personal injury Firm's staff described above, State Court counsel did not review the Notice until after this exceedingly-brief deadline had passed.

36. Based on the foregoing, the Court should determine that the Notice was ambiguous as drafted and insufficient as to the Movants and should deem Movants' claim as timely filed for cause under §503(a) of the Bankruptcy Code.

WHEREFORE, Movants respectfully request this Court to enter an Order: granting their **Motion to Enlarge Time to File Administrative Claim Request**; permitting Movants' Application and Request for Payment of Claim and Amended Application and Request for Payment of Claim to be considered timely filed; and granting such other and further relief as the Court deems just and proper.

Dated this 12th day of February, 2007.

IURILLO & ASSOCIATES, P.A.

/s/ Camille J. Iurillo
CAMILLE J. IURILLO, ESQUIRE
Fla. Bar No. 902225
Sterling Square
600 1st Avenue North, Suite 308
St. Petersburg, FL 33701
ciurillo@iurillolaw.com
(727) 895-8050 telephone
(727) 895-8057 facsimile
Counsel for The Fernandez Firm

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12 day of February, 2007, a true and correct copy of the foregoing has been sent via Facsimile and the United States Postal Service to: **Stephen D. Busey, Esquire**, and **James H. Post, Esquire**, Smith, Hulsey & Busey 225 Water Street, Suite 1800, Jacksonville, Florida 32202, **Facsimile: 904-359-7708**; and **Matthew Barr, Esquire**, Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, New York 10005, **Facsimile: 212-822-5194**.

IURILLO & ASSOCIATES, P.A.

/s/ Camille J. Iurillo
CAMILLE J. IURILLO, ESQUIRE
Fla. Bar No. 902225
Sterling Square
600 1st Avenue North, Suite 308
St. Petersburg, FL 33701
ciurillo@iurillolaw.com
(727) 895-8050 telephone
(727) 895-8057 facsimile
Counsel for The Fernandez Firm