UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In Re: | Proceedings under Chapter 11 |
| WINN-DIXIE STORES, INC., et al. | Consolidated Case No. 3:05-bk-03817-JAF |
| Debtors. | Jointly Administered |

**RESPONSE TO DEBTORS' OBJECTION TO FLORIDA
TAX CLAIMS AND MOTION FOR ORDER DETERMINING
TAX LIABILITIES[1] OF**

**MARSHA FAUX, PROPERTY APPRAISER OF POLK COUNTY FLORIDA**

**INTRODUCTION**

It is not clear whether the Order of January 19, 2007, (Docket No. 14815, referred to herein as the "Order") was intended to make the sixty-seven Property Appraisers of Florida parties to the bankruptcy. This Court was correct in the Order, when recognizing that Tax Collectors are not the proper officials to defend the assessments. The Debtors should have commenced an adversary proceeding against each Property Appraiser to challenge the assessments within that County. Venue in those actions would logically have been in the District and Division where the property is located[2]. Under Florida law, only the circuit court in the county where the property is located has jurisdiction and venue to hear an assessment challenge. §194.171(1), Florida Statutes.

---

[1] Referred to herein as "the Motion"

[2] See, e.g., *Feltman v. Richard Crotty, as Orange County Property Appraiser (In Re Glenbeigh Hospital of Miami)*, Adversary Proceeding No. 94-1091-BKC-AJC-A, challenging the assessment of real property in Orange County in Bankruptcy Court for the Southern District of Florida. At the request of undersigned counsel for the Orange County Property Appraiser, Hon. A. Jay Cristol applied 28 U.S.C. §1409(d) and §1412, and Fed.R.Bankr.P. 116(b)(1) and transferred the adversary proceeding to the Bankruptcy Court for the Middle District of Florida, Orlando Division, where the property, parties, witnesses and counsel were all located. Had the Motion in this case been brought as an adversary proceeding, counsel would request a change of venue..

1

Many Property Appraisers are going to unaware that they have been brought into this proceeding or risk default by not participating, by the statement on Page 14 of the Order. Defendant Faux, received notice by regular mail. This both insufficient and unfair. The Court should not grant relief against the assessments of any Property Appraiser who fails to respond to the invitation in the Court's Order of January 19, 2007, without such Property Appraiser being served properly.

## I. THE COURT SHOULD DENY THE MOTION

**A. The Motion fails to state a claim upon which relief can be granted under Florida law.**

The Court is bound to apply the same provisions of law as is the Property Appraiser.[3] In a judicial challenge to a Florida tax assessment, the taxpayer must allege and prove more than a mere difference of opinion as to the value of the property. The taxpayer must allege a failure by the Property Appraiser to properly consider one of the eight criteria in §193.011, Florida Statutes.[4] The taxpayer must prove that the Property Appraiser failed to properly consider one of those statutory factors, or it must prove the value of the property by 'clear and convincing evidence.' §194.301, Florida Statutes. The taxpayer may alternately allege that in valuing the subject property, the Property Appraiser's assessment is arbitrarily based on appraisal practices which are different from the appraisal practices generally applied by the property appraiser to comparable property within the same class and within the same county. The Motion fails to allege any such failure by any of the

---

[3] *Parrish v. Fayetteville Motel Enterprises, Inc., (In Re Servico)*, Case 93-8461-CIV-Hurley, Order Reversing Reappraisal of Bankruptcy Court, Remanding and Closing Case, dated June 15, 1995. (D.C. S.D. Florida 1995). The Bankruptcy Judge, Hon. A. Jay Cristol, simply determined what he felt the Holiday Inn motel in Fayetteville, North Carolina was worth, without consideration of the requirements of North Carolina assessment law, e.g. requiring only octennial appraisal of property. The Hon. Daniel T. K. Hurley, District Judge, reversed. The undersigned counsel represented the Cumberland County, North Carolina taxing authorities in that proceeding.

[4] *Walker v. Trump*, 549 So.2d 1098, (Fla. 4th. DCA 1989) (Yes, that Donald Trump), *Keith Investments, Inc. v. James*, 220 So.2d 695 (Fla. 4th DCA 1969)

67 Florida Property Appraisers.

The Motion is fatally defective because it is conclusory, and fails to state the data upon which ATL's conclusions are based.[5]

**B. The Motion is not based on an objective appraisal made in accordance with Florida and Federal law.**

The basis of the Motion is an exhibit A prepared by ATL, which suggests assessed values for real property either owned by the Debtors or in which the Debtors are a tenant, and tangible personal property of the Debtors.

Neither ATL nor its general partner, TECH Management, LLC, are registered with the Florida Secretary of State to do business in the State of Florida.  All of its activities on behalf of the Debtor, including valuing the properties, have therefore been unlawful.

No principal of ATL is registered as an appraiser with the Florida Department of Business and Professional Regulation as required by Chapter 475, Part II, Florida Statutes.  Florida law prohibits appraising real property for another and for compensation without such registration.

It is also against Florida law to accept an appraisal assignment for a contingent fee. §475.624(17), Florida Statutes.  Because of this provision of Florida law, the attachments to the Motion containing ATL's suggested values of real estate are not lawful appraisals and should be disregarded by this Court.  An unlicensed person who appraises real property in Florida for another and for a compensation violates Florida law.  §475.612, F.S.

The Debtors' Motion to Employ Assessment Technologies dated February 2, 2006 (Docket No. 5608) contains a copy of the contingent-fee contract between the Debtors and ATL whereby ATL is to receive a thirty-five percent contingent fee of all taxes lowered through order of this Court. As such there is an ingrained bias.

It is also significant that although Exhibit "C" to the Motion refers to work which ATL

---

[5] *Walters v. State Road Department*, 239 So.2d 878 (1st DCA 1970), holding that conclusory testimony is inadmissible to prove market value of property.

apparently farmed out to other companies, the Debtors have not submitted any appraisals which meet the Federally-mandated requirements of the Uniform Standards of Professional Appraisal Practice (USPAP) by objective, licensed Florida appraisers in support of the Motion.[6]

Unless the Court summarily denies the Motion, there is no way that the Court can decide the case without an evidentiary hearing relating to the property within each taxing jurisdiction.[7] If the Court finds the Motion to be facially sufficient, it should declare that the Motion is, in effect, the initial pleading in an adversary proceeding, set a timetable for discovery, permit motions related to venue, and set an evidentiary final hearing or hearings relative to the challenged assessments in each county.

## II. METHOD OF ASSESSMENT - TANGIBLE PERSONAL PROPERTY

The Florida Department of Revenue ("FDOR") annually prescribes present worth tables for use by Property Appraisers in establishing the value of all taxable tangible personal property within the County. These tables are found in Chapter 12D-51 of the Florida Administrative Code. Prescriptions of the FDOR have a strong presumption of correctness.[8] These tables are calibrated according to the industry in question. There are two tables, one to account for inflation in the reproduction cost of the property since it was acquired, and the other to allow for losses in value from all sources (depreciation). The Property Appraisers apply the appropriate factors from the tables to the reported historical cost of the tangible personal property. To use these tables, the

---

[6] See the Federal Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. §§ 3331-3351, which mandated USPAP. Under USPAP, if a person is acting as an advocate, he or she must so state. An appraisal report does not comply with USPAP if it fails to disclose the data upon which the appraiser's conclusion is based. See Standard 2 (Real Property Reporting) and Standard 8 (Personal Property Reporting). It is also notable that the ATL report fails to contain the certifications required by USPAP.

[7] *Palm Beach Mall, Inc. v. Walker*, 585 So.2d 1149 (Fla. 4th DCA 1991).

[8] *Havill v. Scripps-Howard Cable Co.*, 742 So.2d 210 (Fla. 1999), *Oldham v. Foremost Dairies, Inc.*, 128 So.2d 586 (Fla. 1961).

Property Appraiser would first find the industry in which the property is used, in this instance, retail trade, find that the FDOR has prescribed a 9 year useful life for that class of property and apply the factors from the table.

A study was performed by BCRI, Inc. for the FDOR in 2003. That study describes the methodology which the FDOR uses in establishing the present-worth tables.

A similar study by BCRI relating to telecommunications equipment was presented in *Cable & Wireless, a* Florida tangible personal property assessment challenge, which the Court considered in rejecting Cable & Wireless' tax agent's opinions, based on such data as bankruptcy sales of similar property.[9]

Wal-Mart Stores, Inc. mounted a massive challenge to the use of the FDOR tables to value its store fixtures and other tangible personal property, filing suit in numerous Counties throughout the State. It contended that its values should be established by the prices of shelving on the used equipment market rather than through application of the Present Worth Tables prescribed by the FDOR. This is similar to ATL's claimed methodology in the case of the Debtors' tangible personal property. The trial Court upheld the FDOR tables and the assessments, the Fifth District Court of Appeal reversed, and the Florida Supreme Court quashed the decision of the District Court of Appeal, Fifth District, upholding application of the Present Worth Tables as the basis for assessing tangible personal property in Florida.[10]

### III. METHOD OF APPRAISAL - REAL PROPERTY

---

[9] *See, In Re Cable & Wireless USA, Inc.*, Order Denying Objections to Taxing Authorities' Claims, 331 B.R. 568 (Bkrtcy. Del. 2005) in which the undersigned represented most of the same Property Appraisers as here. The taxpayer in that case challenged assessments of its tangible personal property all over the United States. The Bankruptcy Judge held an evidentiary hearing on the Objections. The tax agent in that case was also working for a contingent fee.

[10] *Mazourek v. Wal-Mart Stores, Inc.*, 831 So.2d 85 (Fla. 2002), quashing *Wal-Mart Stores, Inc. v. Mazourek*, 778 346 (Fla. 5th DCA 2000) and approving Wal-Mart Stores, Inc. v. Todora, 791 So.2d 29 (Fla. 2d DCA 2001)..

The term "just valuation" as used in the Florida Constitution is legally synonymous with market value, i.e., the amount a willing, non-necessitous buyer would pay a willing, non-necessitous seller for the property in question. Rule 12D-1.002(5), Florida Administrative Code. If the Property Appraiser makes a standard appraisal using normal techniques, he or she has necessarily considered all, and used some of the mandatory factors in §193.011, F.S.[11]

Some of the Debtors' challenges to real property involve the assessments of properties in which Winn-Dixie is only a tenant. In fact, Winn-Dixie is not the only tenant in many of the properties. In 11 U.S.C. 1123, Congress enumerated what debtors can expect from a Chapter 11 plan. This does not include relief to property owners who are not bankrupt. As to all disputed tax payments, Winn-Dixie was given the authority under Code Section 365 to accept or reject the leases, thereby acknowledging responsibility for the payment of the disputed taxes as additional rent.[12] It is up to the landlords to claim the amount of property taxes due as additional rent, and the Court is free to allow or disallow any portion of the claims of the creditor-landlord, but not to reduce the assessed value of the property as a lagniappe to the property owner. Despite the expansive language of Code Section 505, it does not extend to property taxes owed by someone other than the Debtor.

Florida law permits a tenant to maintain a tax assessment challenge only when the tenant is completely responsible for the tax (i.e., a stand alone property) and the tenant has the written consent of the landlord to commence the action. §194.181(1), F.S.[13] Winn-Dixie lacks standing to challenge the assessment of those properties in which it is a tenant absent meeting those requirements before

---

[11] *Bystrom v. Valencia Center, Inc.*, 432 So.2d 108 (Fla. 3d DCA 1983).

[12] See this Court's Order of May 6, 2005, extending to September 19, 2005, the time for the Debtor to assume or reject the leases of non residential property.

[13] "(1) The plaintiff in any tax suit shall be: (a) The taxpayer or other person contesting the assessment of any tax, the payment of which he or she is responsible for under a statute or a person who is responsible for the entire tax payment pursuant to a contract and has the written consent of the property owner, or the condominium association, cooperative association, or homeowners' association as defined in s. 723.075 which operates the units subject to the assessment..."

bringing the Motion. The Motion does not identify those numerous properties where the Debtors are simply tenants and fails to attach the property owners' written authorization to challenge the assessments of those properties.[14]

Florida law requires property to be appraised at its highest and best legal use, not its present use. Thus, when property in downtown Coral Gables was zoned for high-rise office use but was subject to a long-term lease to Publix, the Court directed the Property Appraiser to ignore the factor "present use of the property" and to appraise it for tax purposes at its highest and best lawful use.[15] Unfortunately, the Debtors have failed to provide any information as to whether ATL valued its properties at highest and best, or present use.

Florida law prescribes that a tax assessment must include the interests of both landlord and tenant. That is to say, Florida is a market rent rather than a contract rent state. So, where property is subject to a long-term, below market lease, the Florida property appraiser is required to ignore the fragmenting of interests and to appraise the property in fee simple as if unencumbered.[16] The Motion fails to disclose the data upon which the conclusions as to real property assessments are based, so it is not possible to tell whether ATL has capitalized contract rent rather than market rent.

### IV. THE COURT LACKS SUBJECT MATTER JURISDICTION

This motion was not brought within 60 days of certification of the 2004, 2005 and 2006 tax

---

[14] Were this an adversary proceeding, it is respectfully suggested that as to non-owned real property, a Motion to Dismiss for lack of subject matter jurisdiction under FRCP 12(b)(1), incorporated into Bankruptcy Rule 7012(b), would be appropriate. *In Re Federated Department Stores*, 240 BR 711 (Bkrtcy S.D.Ohio 1999)   The legislative statements accompanying Code Section 505 make clear that the section "authorizes the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, of the debtor or the estate." 124 Cong.Rec. H 11110 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards introducing the House amendment)(emphasis added), reprinted in, 1978 U.S.C.C.A.N. 5787, 6436, 6490.

[15] *Bystrom v. Valencia Center, Inc.*, supra.

[16] *Schultz v. TM Florida-Ohio Realty Ltd. Partnership*, 577 So.2d 573, (Fla. 1991)

rolls for collection. Debtors failed to attach payment for receipt the taxes admitted to be due. .Debtors have failed to comply with subsection (5) of Section 194.171, F.S. Section 194.171, F.S., is a statute of nonclaim, not a statute of limitation [17] The difference is that a statute of nonclaim is part of a taxpayer's cause of action and must be affirmatively pleaded, which Debtors did not. The Court must apply Florida state law. Section 505 of the Code is unconstitutional and unconstitutional as applied to a challenge to Florida property taxes in other than a Florida state court.

### V. SOVEREIGN IMMUNITY PRECLUDES REDUCING PROPERTY TAXES

The Property Appraisers are Constitutional officers wholly separate and apart from the Tax Collectors of Florida. No Property Appraiser has filed a claim in this case, thereby waiving sovereign immunity, and each Property Appraiser asserts that the doctrine of sovereign immunity bars relief as to Florida ad valorem taxes.

The test of whether a claim is barred by sovereign immunity is stated in *Hufford v. Rodgers*, 912 F.2d 1338 (11th. Cir. 1990) – First, how state law defines the entity? Second, what degree of control the state maintains over the entity? Third, where funds for the entity are derived from? Fourth, who is responsible for the judgment against the entity?

Of these factors, the fourth is of the utmost importance. <u>To lower property taxes directly impacts the treasury of the State of Florida.</u> Although the funds raised through assessment and collection of taxes within each County school district are in part the basis for funding of public schools, a portion of that funding is also derived from the State of Florida under the Florida Education Finance Program (FEFP). (§1011.62 F.S.) Each local School Board is required to levy a uniform millage, called the "Required Local Effort" (RLE). Although the RLE millage is the same in each county, the amount of money generated per full time equivalent student (FTE) differs

---

[17] *Ward v. Brown*, 894 So.2d 811 (Fla. 2004); holding that no matter how an action is characterized (declaratory relief, suit for refund, etc.) the 60 day statute of nonclaim is effective; *Suber v. Pultz*, 889 So.2d 947 (Fla. 2004), holding the failure to attach the receipt for taxes admitted to be due deprives the court of subject-matter jurisdiction.

according to the number of FTE's and assessed value in each County. To put it another way, in a property-poor, pupil-rich county, the RLE will generate fewer dollars per FTE than in a property-rich, pupil-poor county. Each year, the Legislature determines the expenditure for each FTE, which is uniform in every County. The State makes up the difference between the taxes generated by the RLE and the total expenditure per FTE.

To put it another way, imagine sixty-seven water glasses on a counter, each representing a County. The RLE is poured into each glass. In some glasses representing pupil-rich, property-poor counties such as Glades and Bradford, the taxes generated by the required local effort will barely cover the bottom of the glass and State funds will mostly fill it. In others, such as Collier, the RLE almost fills the glass, requiring only a few drops from the State to fill it to the brim.

A judgment of a court reducing an assessment reduces the funds generated by the RLE, necessarily increasing the State funds to be paid to the School Board in that county. **Therefore, the State is responsible for the payment of a portion of any judgment which results from a reduction in the assessed value of property and the property taxes that would otherwise be payable**. Any reduction in an assessment by this Court would constitute a direct assault on the Treasury of the State of Florida, dollar for dollar for the funds represented by the Required Local Effort. This meets the fourth, and crucially important, *Hufford* test.

As to the remaining three tests, the office of Property Appraiser is created by the State Constitution. In some Charter counties, such as Miami-Dade and Volusia, the Property Appraiser is an officer under the Charter. Funds for the operation of the office are provided by the Counties, although the Property Appraiser's budget is established solely by the FDOR.

The FDOR exercises almost total control over the Property Appraiser and the performance of his or her duties. Pursuant to §195.002, Florida Statutes, the FDOR is charged with supervision of the office of the 67 Property Appraisers who assess property in Florida for ad valorem taxation. This is more than just a goal; in fact the FDOR has the power to sue any Property Appraiser to force compliance with the requirement that the tax rolls meet the just (market) value standard and has done

so from time to time.[18]

FDOR supervision includes the following:

    a. The responsibility for oversight of the duties of each property appraiser's office, including annual review of each county's tax roll, and bi-annual in-depth review of those tax rolls, both for uniformity in assessment and to ascertain compliance with the Constitutional mandate that the Property Appraiser assess all property at 100% of just value. (§§195.0012, 195.002, F.S.)

    b. The responsibility for direct aid and assistance to the Property Appraisers and Tax Collectors in the performance of their respective duties. (§195.002, F.S.)

    c. The conduct of training for Tax Collectors, Property Appraisers and their employees leading to certification necessary to the position of Property Appraiser or Tax Collector or for continuation of employment in a property appraiser's or tax collector's office. (§195.002)

    d. The responsibility to promulgate Standard Measures of Value and a Manual of Instructions to be used by all Property Appraisers in the assessment process. (§§195.032, 195.062, F.S.)

    e. Responsibility for review of each tax roll prepared by each property appraiser and the duty to formally approve or disapprove each tax roll. Approval or disapproval may be based on the requirement of inter-jurisdictional and extra-jurisdictional uniformity in assessment or the requirement of assessment at just value. No county or other taxing body has any supervisory rights or duties with respect to the tax roll. (§§193.1142, 195.096, F.S.)

    f. The duty to propound binding rules and regulations which the property appraisers must follow in the assessment process and in the administration of their offices. (§195.027, F.S.)

    g. The responsibility to classify and sub-classify property for use in the assessment process and to oversee the proper classification thereof as part of the roll approval process.

---

[18] Section 195.092, F.S. See, for example, *State, Department of Revenue v. Markham*, 426 So.2d 555 (Fla. 4th DCA 1983), *Department of Revenue v. Johnston*, 442 So.2d 950 (Fla. 5th DCA 1983) *Redford v. Department of Revenue*, 478 So.2d 808 (Fla. 1985)

(§195.073, F.S.) The list of FDOR-approved codes is found in Rule 12D-8.008 of the Florida Administrative Code for real estate and 12D-8.009 for tangible personal property.

    h. The duty to review, amend and approve each annual budget for each property appraiser and tax collector. Even though the County Commission funds the budget of the Property Appraiser's office, the County Commission has no control over that budget. (§195.087, F.S.) Should the County disagree with the Property Appraiser's budget, its sole remedy is to appeal the approved budget to the Governor and Cabinet, sitting as the Florida Administration Commission. (§195.087, F.S.)

    I. The duty to pass upon and order (or decline to order) refunds based on changes in ad valorem assessments made by the Property Appraiser. (§197.182, F.S.)

    j. the duty to prescribe all forms to be used by the Property Appraisers and tax collectors in assessing property and collecting taxes. (§195.022, F.S.) The Property Appraiser is precluded from using his or her own forms without Department approval. The Department of Revenue also supplies maps and aerial photographs to the Property Appraiser's office at its costs. (§195.022, F.S.)

    k. The Governor has the duty to appoint a Performance Review Panel to review the performance of a Property Appraiser whose tax rolls are not approved for two consecutive years. This can result in the loss of the CFA designation and special qualification salary. (§ 193.1147, F.S.)

    l. The Property Appraiser is not permitted to contract with outside vendors for assessment services or systems, who are not on the Approved Bidder's List of the FDOR. (§195.095, F.S.) This is to insure uniformity in data processing systems throughout the State so that when tax rolls each July for approval by the Department, there will be uniformity in the systems, data and formats for each Property Appraiser's office throughout the State. The Value Adjustment Board, an administrative agency which has the power to reduce assessments, may not hold its value hearings as to individual assessments until the Department has approved the tax roll each year. (§194.032[1][a], F.S.)

m. In each case where a Property Appraiser is made a party to a lawsuit contesting an assessment, the Executive Director of Department the Department of Revenue must either be made a party (where an allegation is made that the assessment violates the Florida Constitution), or must be notified by service of the litigation in order to be given the opportunity to participate therein. (§194.181, F.S.)

n. The compensation of Florida's Property Appraisers and Tax Collectors is not locally determined, but is statutorily prescribed and is uniform for all Property Appraisers throughout the State, based on the population of the jurisdiction each serves. No local jurisdiction may set the compensation. (§§145.09, 145.10)

The *Hufford* test is therefore satisfied and the Court should decline to grant the Debtors' objections to the claims for property taxes. None of the bankruptcy cases that have found that the Property Appraisers did not enjoy sovereign immunity followed the *Hufford* analysis. Those Courts simply found that a waiver by the Tax Collector bound the Property Appraiser or that the assessment challenge was an in rem action which did not offend the State's sovereign immunity.

## CONCLUSION

The Motion is facially insufficient to state a claim upon which relief may be granted to lower any of the assessments of the real or tangible personal property stated in the Motion. The Motion should be denied.

If the Court determines that the Motion is facially sufficient, the Court should deny the same based on the Debtors' failure to overcome the presumption of correctness which applies to a tax assessment, to consider the BCRI Report which finds the present worth factors of the Florida Department of Revenue to be reasonable. Should the Court feel that an evidentiary hearing is necessary, the Court should order that the procedures applicable to adversary proceedings apply to the Motion as it relates to each County, and provide an opportunity for the Property Appraisers to conduct discovery of the Debtor and its tax reduction agent, ATL.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 16, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: D.J. Baker, Sally McDonald Henry and Rosalile Walker Gray, djbaker@skadden.com, Stephen D. Busey, James H. Post and Cynthia C. Jackson, cjackson@smithhulsey.com, to counsel for the Reorganized Debtors, James Post, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202, jpost@smithhulsey.com, to counsel for the Tax Collectors, Brian Fitzgerald, fitzgeraldb@hillsboroughcounty.org, to counsel for certain Florida Property Appraisers, the Levy Law Firm, levylawfirm@comcast.net, to counsel for other Florida Property Appraisers, Dent & Associates, jdent@dentjohnson.com, to Ronald Gunzburger, counsel for the Broward County Property Appraiser, ron@bcpa.net, to counsel for the Orange County Property Appraiser, Kenneth Hazouri, khazouri@dbksmm.com and to counsel for other Florida Property Appraisers, Law Offices of Wood & Stuart, P.A.., pleadings@woodstuartpa.com.

/s/ *Michael D. Martin*
MARTIN LAW OFFICE
Florida Bar No. 108530
Attorney for Property Appraiser of Polk County
Post Office Box 367
Lakeland, FL 33802-0367
Tel: (863) 686-6700
Fax:(863) 687-2364
Mike@martinpa.com