MASTER LICENSE # __MCA99-1043__

# BAKER APS
*The Pharmacy Productivity Company*

## MASTER LICENSE AGREEMENT


EXHIBIT A

This Master License Agreement (the "Agreement") is entered between:

**AUTOMATED PRESCRIPTION SYSTEMS, INC.**
4333 Shreveport Highway
Pineville, Louisiana 71361-4118
("APS")

AND

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, FL 32254
("LICENSEE")

The effective date of this Agreement is _____, _____.

I. **DEFINITIONS.** The following definitions will apply throughout this Agreement:
   a. **System and Systems.** APS licenses various equipment in various configurations to pharmacies and other businesses for the purpose of counting tablets and capsules. For purposes of this Agreement, a "System" will mean a particular piece of counting equipment, identified on a Customer Order Form by model, along with the hardware, software and other APS components necessary to operate the counting equipment in the configuration shown on the applicable Customer Order Form executed by APS and Licensee. "Systems" will mean collectively all Systems licensed by Licensee from APS under this Agreement.
   b. **Customer Order Form.** A form supplied by APS setting forth a System (or Systems) licensed to Licensee, the license fee for the System, the date of installation or delivery and other relevant information regarding the license of that System. A sample of the current Customer Order Form currently used by APS is attached as Exhibit A. The terms of each Customer Order Form will be incorporated herein by reference, and will be governed by the terms of this Agreement.
II. **LICENSE.** APS hereby grants to Licensee, on terms and conditions set forth in this Agreement, a non-exclusive license to use the Systems set forth on each Customer Order Form bearing the License Number set forth in the top right corner of the first page of this Agreement.
III. **TERM OF THIS AGREEMENT.** This Agreement is a continuing Master License Agreement setting forth the relationship between APS and Licensee for so long as Licensee is entitled to the use of any Systems licensed under this Agreement. The terms and conditions of this Agreement are deemed to be a part of each Customer Order Form executed by APS and Licensee.
IV. **LICENSE TERM APPLICABLE TO EACH SYSTEM.**
   a. **Initial Term.** Each System will be licensed to Licensee for an initial term from the date of installation ("Initial Term") as set forth on the applicable Customer Order Form.
   b. **Renewal Term.** The license for each System will automatically renew at the end of the initial and each subsequent term for an additional term identical in length to the Initial Term unless Licensee notifies APS in writing not less than 30 days prior to the expiration of the then-current term of its intent to cancel its license on that System.
V. **LICENSE FEES AND OTHER CHARGES.**
   a. **Due Date.** All license fees payable under this Agreement are due monthly by the date set forth on each Customer Order Form. License fees or other charges or taxes not timely paid shall bear interest at the rate of 15%(per annum) from the due date until paid.
   b. **Initial and Renewal Terms.** During the initial and renewal terms applicable to each System, Licensee will pay the monthly license fees shown on the applicable Customer Order Forms.
   c. **Taxes and Other Charges.** Licensee will pay such other charges as may be called for on the Customer Order Forms executed by Licensee from time to time. In addition, Licensee is responsible for payment of all expenses of operation of the Systems including, but not limited to, sales, use, property, excise or other taxes, assessments or charges (including any interest and penalties thereon) now or hereafter imposed or assessed on the Systems or on the possession, licensing or use of the Systems, or on the license fees or other payments made pursuant to this Agreement (but excluding taxes on or measured by the net income of APS). If APS is required to pay or collect any such charge or tax, Licensee will pay such charge or tax not less than ten days from receipt of an invoice for such amounts from APS.
VI. **LOCATION.** Each System will be located at the site address indicated on the Customer Order Form and will not be relocated without the written consent of APS, which consent will not be unreasonably withheld.
VII. **INSTALLATION.** APS will ship the Systems within the continental United States at its cost to the site addresses shown on the various Customer Order Forms. APS will provide an operations manual for each System for retention and reference by Licensee during the term applicable to each System. If APS is required to install a System, Licensee will pay the installation fee set forth in the Customer Order Forms. Installation fees are due upon execution of each Customer Order Form and are non-refundable.
VIII. **ANCILLARY AGREEMENTS.**
   a. **Repair/Replacement.** Licensee is responsible for the daily care and maintenance of the Systems. In all instances involving malfunctions or suspected defective parts, Licensee must promptly telephone APS. In its sole discretion, should APS determine that corrective action cannot be taken at System location, APS will furnish a replacement for any defective part of the System at its expense if the part becomes defective through ordinary wear and tear through proper use. Licensee is responsible for the return of all defective parts to APS. In the event product failure occurs as a result of Licensee's action, the cost of all replacement parts, labor and transportation will be charged to Licensee.
   b. **Component Exchanges.** APS will provide substitute components solely to enable dispensing of a different pharmaceutical profile. If Licensee wishes to substitute components, it will advise APS of the new pharmaceutical to be dispensed and the old pharmaceutical no longer to be dispensed. If APS does not receive the old component(s) within 45 calendar days of shipment of the substitute component(s) to Licensee, Licensee will pay APS's then-current published charge for each component not timely received. The cost of Exchanges requested during the initial 90 day period after installation of the System (for the purposes of this Section, installation includes the transfer of a System from one approved location to another) ("Early Exchange") will be set forth in the Customer Order Form. The cost of Exchanges where the Licensee is requesting a change from a "generic" manufacturer/distributor to another "generic" manufacturer/distributor for the same pharmaceutical ("Generic Exchange") will be set forth in the Customer Order Form. The cost of all other Exchanges ("Normal Exchanges") will be set forth in the Customer Order Form.

    c.    **Delivery/Returns.** APS v... ship all items requested pursuant to Section 8. a. ____ via ground transportation, <u>at APS's expense</u>. All components shipped to ____ ace defective components or components necessary for major repairs will be shipped via priority shipping to be determined by APS, in its sole discretion. Licensee will bear the expense of returning items to APS. Failure of the Licensee to return defective items or substituted components on a timely basis will cause the suspension of APS's responsibilities under this Section in addition to other remedies specified under this Section.

    d.    **Additional or Modified Equipment.** If Licensee requires additional or modified equipment for a system during any term of its license (other than a substitution of components as provided for in the previous Section 8.b., APS and Licensee will execute a new Customer Order Form for that System. Any new Customer Order Form executed pursuant to this Section 8.c. will be subject to a term, identical in length to the initial term, beginning on the installation date of the new System.

    e.    **Limitations.** The obligation of APS under this Section 8 to furnish substitute, additional, replacement or modified equipment or component parts is subject to <u>the availability of</u> the equipment and/or component parts, and APS will not be liable for its inability to timely comply <u>resulting from /excess demand/ for APS counting equipment and/or component parts</u>, fire, flood or other natural disaster, strikes, governmental decrees or actions, acts of God or other cause beyond the control of APS.

**IX. TITLE TO AND USE OF THE SYSTEMS.**

    a.    All Systems licensed under this Agreement are owned by APS and will continue to be owned by APS at all times. Licensee will keep all Systems free and clear of all liens or claims, and will not permit any System or the interest of APS therein to become encumbered or impaired. Licensee will give APS immediate written notice if any System is levied upon or seized, or is threatened with levy or seizure Licensee will indemnify APS against all loss and damage caused by such action. Licensee will pay APS for any loss of or damage to any System occasioned by other than normal and/or proper use. Licensee will return each System to APS upon termination of that System's license in the same condition as when received, ordinary wear and tear excepted. Licensee will pay for all packaging, freighting and shipping cost associated with the return of the System to APS at the termination of the license.

    b.    Licensee will allow only competent personnel to use the Systems and their component parts. Licensee will allow the Systems to be used only in accordance with the safety and operating recommendations and instructions of APS. APS will have the right to enter Licensee's premises during business hours to inspect and observe the condition and utilization of the Systems.

**X. LIMITED WARRANTY AND LIMITATION OF LIABILITY.** APS warrants that it is the true owner of the Systems and that APS's licensing of the Systems to Licensee does not infringe on any third party's intellectual property rights. APS further warrants that each System will perform throughout the term of that System's license as described in the operations manual delivered to Licensee at the time of installation or delivery, provided the System is properly installed and used in accordance with the instructions in that manual. APS makes no warranties other than those limited warranties set forth above. In no event will APS be liable to Licensee for loss of profits, loss of savings, or other incidental or consequential damages arising out of the use of or inability to use any licensed System.

**XI. ASSIGNMENT AND SUB-LICENSE BY LICENSEE.** Licensee will not sublicense, lease or assign this Agreement. Subject to the provisions of Section 6 of this Agreement, APS agrees that the Systems may be utilized by majority-owned subsidiaries of Licensee, provided that such arrangement will not relieve Licensee of its obligations hereunder.

**XII. DEFAULT.**

    a.    Licensee will be in default under this Agreement if:

        i.    Licensee becomes insolvent, or a petition for relief is filed by or against Licensee under any bankruptcy or insolvency laws, or

        ii.    Licensee fails to pay any license fee, charge, tax or other sum due under this Agreement within 10 days of its due date, or

        iii.    Licensee fails to perform or comply with any of its obligations undertaken in this Agreement or in any Customer Order Form other than those set forth in paragraph 12.a.2. above.

    b.    In the event of default by Licensee, APS will accelerate the remaining license fees due under each Customer Order Form executed pursuant to this Agreement, which will become due and payable immediately. In addition, this Agreement will be terminated and APS will regain possession of all Systems and collect all sums due under this Agreement and each Customer Order Form to the date of termination, all damages occasioned by Licensee's breach of this Agreement and any other sums to which APS might be entitled as a matter of law.

    c.    The waiver by APS of any default under this Agreement, or of any accelerating condition, will not be deemed a waiver of any subsequent breach or accelerating condition. In any case of default, Licensee will be responsible for all costs and expenses incurred by APS in connection therewith, including, but not limited to, attorney's fees, court costs, packing, freight and other shipping costs, without regard to whether suit was filed.

**XIII. ASSIGNMENT BY APS.** APS may, without notice to Licensee, assign, transfer or grant a security interest in all or any part of its rights or interests arising under this Agreement or in the Systems and/or fees due under this Agreement. If APS assigns this License or the fees due or to become due hereunder or any other interest herein, Licensee agrees, after notice of such assignment has been given by APS or such assignee to Licensee, that this Agreement may not be altered, modified, or waived without the prior written consent of the assignee. Licensee further agrees to pay all amounts due under this Agreement directly to the assignee upon receipt of written direction to do so from APS or the assignee. The receipt by the assignee of such payments will discharge the obligations of Licensee to APS under this Agreement to the extent of those payments.

**XIV. NOTICES.** Any notice given under this Agreement will be in writing and will be given either personally or by U. S. Mail, postage prepaid, certified or registered, return receipt requested to the parties at their respective addresses set forth above. Notices delivered personally will be deemed given upon receipt. Notices properly mailed will be deemed received five days after being placed in the U. S. Mail.

**XV. MISCELLANEOUS.**

    a.    **Severance.** Any provision of this Agreement deemed unlawful or unenforceable by a court of competent jurisdiction will be ineffective and the remainder of this Agreement will be unaffected.

    b.    **Entire Agreement.** This Agreement and the various Customer Order Forms executed pursuant to this Agreement sets forth the entire contract between the parties. No other terms or understandings will be enforceable unless they are reduced to writing and signed by both APS and Licensee.

    c.    **Governing Law.** This Agreement will be governed by the laws of the State of ~~Louisiana~~ Florida.

EXECUTED by Licensee on the _____ day of _____, 19_____    EXECUTED by APS on the _____ day of _____, 19_____

                                            AUTOMATED PRESCRIPTION SYSTEMS, INC.

By: _____[signature]_____          By: _____

Title: _____          Title: _____

MLA 9/97