**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No.: **05-03817-3F1** |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

## 23 PROPERTY APPRAISERS' RESPONSE TO DEBTORS' OBJECTION TO FLORIDA TAX CLAIMS AND MOTION FOR ORDER DETERMINING TAX LIABILITIES

COMES NOW the Property Appraisers for Baker County, Bradford County, Clay County, Columbia County, DeSoto County, Flagler County, Gadsden County, Hardee County, Highlands County, Hillsborough County, Jackson County, Leon County, Marion County, Nassau County, Okeechobee County, Osceola County, Putnam County, St. Lucie County, Suwannee County, Taylor County, Wakulla County, Walton County, and Washington County ("23 Property Appraisers"), by and through the undersigned counsel and pursuant to this Court's Order Granting in Part and Denying in Part Florida Tax Collectors' Motion to Dismiss Debtors' Objection to Florida Tax Claims and Motion for Order Determining Tax Liabilities, respectfully request this Court to deny the debtors', Winn Dixie, Inc., et al. ("Winn Dixie") action seeking reduction of assessments of real and tangible personal property for the tax years at issue, and in support thereof state:

## SUBJECT MATTER JURISDICTION

With regard to the jurisdictional issues, the 23 Property Appraisers respectfully adopt the position and arguments of the Florida Tax Collectors as contained in their Motion to Dismiss Debtors' Objection to Florida Tax Claims and Motion for Order Determining Tax

Liabilities and their Memorandum of Law in Support of Pending Motions.[1]  Those arguments

include:  (i) the Tax Injunction Act precludes the Court from determining Winn Dixie's tax

liabilities; (ii) the Court lacks jurisdiction to determine Winn Dixie's tax liabilities under the

Eleventh Amendment to the United States Constitution; (iii) the Tenth Amendment to the

Constitution precludes the Court from determining Winn Dixie's tax liabilities; (iv) Winn Dixie

failed to satisfy the jurisdictional prerequisites set forth in 11 U.S.C. § 505(a)(2)(B); (v) Winn

Dixie waived its right to contest the 2004 and 2005 taxes under § 505 because they failed to

timely contest the taxes under Florida law; (vi) 28 U.S.C. §§ 959 and 960 require Winn Dixie to

challenge their 2006 tax liabilities through the Florida state process and before state tribunals

rather than in bankruptcy court; and (vii) Winn Dixie has no standing to contest, and the Court

has no authority to consider, taxes against property owned by third parties.

The 23 Property Appraisers acknowledge that this Court has adjudicated these

jurisdictional issues in its Order Granting in Part and Denying in Part Florida Tax Collectors'

Motion to Dismiss Debtors' Objection to Florida Tax Claims and Motion for Order Determining

Tax Liabilities.  In addition, the Tax Collectors now have appealed that Order, and Winn Dixie

has filed a cross-appeal.  Accordingly, the 23 Property Appraisers will not further belabor these

jurisdictional issues in their response.

Subsequent to this Court's Order dated January 19, 2007, and its Order Denying

Motion for Reconsideration dated March 20, 2007, however, Winn Dixie failed to pay taxes for

all tangible personal property accounts and some real property parcels for the 2006 tax year prior

to the delinquency date of April 1, 2007.  See § 197.333, Fla. Stat. (2006) ("Taxes shall become

---

[1] The 23 Property Appraisers also adopt the arguments and authorities presented by the other
Florida Property Appraisers filing responses in this action, to the extent they are not inconsistent
with the arguments presented herein.

delinquent on April 1 following the year in which they are assessed or immediately after 60 days

have expired from the mailing of the original tax notice, whichever is later.").

Under Florida law, a court loses jurisdiction to adjudicate an ad valorem tax case

if the taxpayer fails to pay taxes owed in subsequent years prior to delinquency.  In this regard,

section 194.171, Florida Statutes (2006), provides in pertinent part that:

> (5) No action to contest a tax assessment may be maintained,
> and any such action shall be dismissed, unless all taxes on the
> property assessed in years after the action is brought, which the
> taxpayer in good faith admits to be owing, <u>are paid before they
> become delinquent.</u>
> (6) The requirements of subsections (2), (3), and (5) are
> jurisdictional. No court shall have jurisdiction in such cases until
> after the requirements of both subsections (2) and (3) have been
> met.  <u>A court shall lose jurisdiction of a case when the taxpayer
> has failed to comply with the requirements of subsection (5).</u>

(Emphasis added.)

The Florida Supreme Court has held that a court loses jurisdiction to adjudicate an

ad valorem tax case if the taxpayer fails to pay the taxes prior to delinquency.  <u>Bystrom v. Diaz,</u>

514 So.2d 1072 (Fla. 1987).  As the court stated:

> Although subsections 194.171(5) and (6) appear to be somewhat
> harsh, their meaning is clear.  Subsection 194.171(5) plainly states
> that a taxpayer may not maintain a suit contesting a tax assessment,
> and that such an action 'shall be dismissed, unless all taxes on the
> property assessed in years after the action is brought, which the
> taxpayer in good faith admits to be owing, are paid before they
> become delinquent.' Subsection (6) expressly declares that these
> requirements are jurisdictional and that '[a] court shall lose
> jurisdiction of a case when the taxpayer has failed to comply with
> the requirements of subsection (5).' <u>The statute does not allow a
> court to retain jurisdiction once taxes become delinquent.</u>
>
> *  *  *  *  *
>
> Neither do we find that subsections 194.171(5) and (6) deny the
> taxpayer due process of law.  Due process requires that a taxpayer
> be given a meaningful opportunity to be heard.  <u>Diaz and Marshall</u>

3

> each had such an opportunity, but forfeited it by failing to pay
> subsequently assessed taxes before delinquency.

Bystrom, 514 So.2d at 1074-75 (emphasis added).

The First District Court addressed delinquency of tax payments in Washington Square Corp. v. Wright, 687 So.2d 1374 (Fla. 1st DCA 1997). There, the taxpayer made a purported "good faith" payment of the taxes due in the subsequent year but did not file suit challenging the assessments. The district court held that the trial court lost jurisdiction once the taxes became delinquent, relying on Bystrom. As the court stated:

> Once the deadlines for challenges passed, the tax assessments for
> the taxable years 1994 and 1995 were no longer subject to
> adjustment. Thereafter, payment of anything less than the full
> amounts levied could no longer be deemed payment of amounts
> 'which the taxpayer in good faith admits to be owing.' §
> 194.171(5), Fla. Stat. (1995). The full amounts were then
> indisputably owed. Because judicial review of the assessments for
> the 1994 and 1995 taxable years was not sought in a timely
> fashion, and because the taxes were not paid in full, taxes for those
> years became delinquent on April 1, 1995, and April 1, 1996,
> respectively, partial payments notwithstanding. These
> delinquencies required dismissal of Washington Square's
> complaint challenging its assessment for the tax year 1993.
> 194.171(5), Fla. Stat. (1995).

Wright, 687 So.2d at 1375 (emphasis added).

Wright was followed in Higgs v. Armada Key West, 903 So.2d 303 (Fla. 3d DCA 2005). In that case, the taxpayer failed to timely file a lawsuit for the tax year subsequent to the tax year already at issue. The Third District Court observed that section 194.171 "also makes it clear that jurisdiction to entertain an assessment contest is conditioned on the taxpayer's obligation to keep taxes current for all years subsequent to the year in question." Higgs, 903 So.2d at 305. The court then held that:

> As petitioners correctly contend, the taxpayer in this case did not
> remain current in the payment of its taxes for the year following

the action contesting its 2001 assessment thereby mandating dismissal.  Section 197.333 of the Florida Statutes, provides that ad valorem taxes on tangible personal property became due and payable on November 1 of each year (or as soon thereafter upon receipt of the certified tax roll by the tax collector) and are delinquent if not paid by April 1 of the following year (or immediately after 60 days have expired from the mailing of the original tax notice, whichever is later).  § 197.333, Fla. Stat. (2004).  <u>Although section 194.171 suspends these deadlines while an assessment is being contested, it does so only upon the good faith payment of an amount the taxpayer believes is due and upon the timely filing of an assessment contest action.</u>

<u>Id.</u> (emphasis added).

In the instant case, this Court has previously addressed the time bar contained in section 194.171(2), Florida Statutes (2006), and concluded that "[n]otwithstanding the fact that Debtors are time-barred from contesting their 2004 and 2005 liabilities, . . . they have not waived their right to contest those liabilities pursuant to 11 U.S.C. § 505."  (Order Granting in Part, Denying in Part at p.10)  The Court limited the scope of its decision to those counties where Winn Dixie had <u>not</u> paid taxes due and owing for either the 2004 or 2005 tax year.

For the 2006 tax year, it appears that Winn Dixie paid any taxes owing on the majority of its real property parcels in the 23 counties prior to the delinquency date of April 1, 2007.  For the tangible personal property accounts, however, no payment of taxes owing was made in any of those counties.  As a result, this Court has lost jurisdiction to adjudicate the value of any of those real and tangible personal property accounts for tax years 2005 and 2006 pursuant to section 194.171(5).[2]  These tax payments, which accrued post-petition, were required to have been made in accordance with Florida law by April 1.  <u>See</u> § 197.333, Fla. Stat. (2006).

---

[2] Taxes were paid on the tangible personal property accounts in 2004.

Thus, this Court has lost jurisdiction pursuant to section 194.171(5).  See also 28 U.S.C. §§ 959, 960 (2006).[3]

Furthermore, this Court did not address the impact of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which amends section 505, as it relates to the 2006 tax year assessments.  Since the effective date of the Act, which was October 17, 2005, bankruptcy courts no longer have jurisdiction to determine the amount or legality of an ad valorem tax if the applicable time period for contesting or redetermining that amount has expired.  See 11 U.S.C. § 505(a)(2)(c) (2006).  For the 2006 tax year, any cause of action did not accrue until post-petition and subsequent to the effective date of the Act.  This Court therefore lacks jurisdiction to adjudicate the 2006 tax year contests as the 60-day time period to challenge those assessments has expired.

### PROCEEDINGS SUBSEQUENT TO CONCLUSION OF APPEAL

**A.  Determination of applicable legal principles.**

Once the appeal and cross appeal of this Court's orders is decided, it will be necessary to delineate the scope of the proceedings regarding the remaining valuation issues – if any – pending before this Court.  It is well settled that, when a bankruptcy court values property for purposes of determining a debtor's tax burden, its valuation must be consistent with state law. The court must give full faith and credit to the state law upon which the tax to be determined is based.  Arkansas Corp. Comm'n v. Thompson, 313 U.S. 132, 142 (1941).  In the specific area of state ad valorem taxation, bankruptcy courts have recognized that state substantive law applies in determining the value of property at issue.  See In re Fairchild Aircraft Corp., 124 B.R. 488

---

[3] Contemporaneous with the filing of this response, the 23 Property Appraisers have filed a Motion to Abstain.  The motion urges this Court to exercise its discretion and abstain from deciding the valuation issues presented in this case.

(Bankr. W.D. Tex. 1991) receded from on other grounds by In re Super Van, Inc., 161 B.R. 184

(Bankr. W.D. Tex. 1993); In re AWB Assoc., G.P., 144 B.R. 270 (Bank. E.D. Pa. 1992).  As the

court stated in In re Fairchild Aircraft Corp.:

> The valuation of property for purposes of determining property taxes must be consistent with state law principles, as the valuation is merely part and parcel of the adjudication of the tax due and owing, a question controlled by state law.  The valuation law with which bankruptcy courts are most familiar (that arising out of Section 506(a) and the case law which construes the application of that section) does not here apply.  Instead, the bankruptcy court gives full faith and credit to the law of the state upon which the tax is based.  *Arkansas Corp. Commission v. Thompson*, 313 U.S. 132, 142, 61 S.Ct. 888, 891, 85 L.Ed. 1244 (1941)('manifestly, whether or not taxes are 'legally due and owing' to a state depends upon the valid laws of the state'); *In re Pine Knob Investments*, 20 B.R. 714, 716 (Bankr. E. D. Mich.1982); *see In re Ishpeming Hotel Co.*, 70 B.R. 629, 633 (Bankr. W. D. Mich. 1986).

124 B.R. at 492 (emphasis added, footnote omitted).  Florida bankruptcy courts have reached the

same conclusion.  See In re Steffan, 342 B.R. 861 (Bankr. M.D. Fla. 2006); In re Litestream

Technologies, LLC, 337 B.R. 705 (Bankr. M.D. Fla. 2006); see also In re Cable & Wireless

USA, Inc., 331 B.R. 568 (Bankr. D. Del. 2005) (applying presumption of correctness under

Florida law).  In adjudicating the value of Winn Dixie's real and tangible personal property,

therefore, Florida substantive law controls.  The following discussion sets forth the basic case

law principles of ad valorem tax assessment challenges.

### (1) Fair market value.

The Florida Constitution mandates the just valuation of all property for ad

valorem tax purposes.  Art. VII, § 4, Fla. Const.  Just valuation is synonymous with fair market

value.  Valencia Center v. Bystrom, 543 So.2d 214 (Fla. 1998).  Fair market value means "the

price at which a property, if offered for sale on the open market, with a reasonable time for the

seller to find a purchaser, would transfer for cash or its equivalent, under prevailing market

conditions between parties who have knowledge of the uses to which the property may be put, both seeking to maximize their gains and neither being in a position to take advantage of the exigencies of the other." Fla. Admin. C. R. 12D-1.002(2). The polestar of determining just valuation lies in ascertaining the valuation of the subject property as of January 1 of the taxable year. Lake Worth Towers, Inc. v. Gerstung, 262 So.2d 1 (Fla. 1972); Bystrom v. Equitable Life Assurance Soc'y, 416 So.2d 1133 (Fla.3d DCA 1982), review denied, 429 So.2d 5 (Fla. 1983); § 192.042, Fla. Stat. (2003).

Fair market value has no application in the forced sale context frequently encountered by bankruptcy courts. BFP v. Resolution Trust Corp., 511 U.S. 531 (1993). As the Supreme Court has explained:

> That suspicion becomes a certitude when one considers that market value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very *antithesis* of forced-sale value. "The market value of . . . a piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular . . . piece of property." Black's Law Dictionary 971 (6th ed. 1990). In short, "fair market value" presumes market conditions that, by definition, simply do not obtain in the context of a forced sale.

B.F.P., 511 U.S. at 537-38 (italics in original, emphasis added). Thus, the distressed or forced sale value of assets is not its fair market value under Florida law.

Florida's Constitution, moreover, prohibits the taxation of property based on who owns the property. Interlachen Lakes Estates, Inc. v. Synder, 304 So.2d 433 (Fla. 1974). There, the Florida Supreme Court declared unconstitutional a statute with allowed the unsold lots within

a subdivision that were owned by the developer to be assessed at a different value than those lots already sold.  As the court stated:

> The effect of the statute is to give a subdivision developer a tax break by treating his unsold lots as unplatted for tax valuation purposes until he sells sixty per cent of his lots, while all of the purchasers of his lots are not so favored.  The statute also discriminates between subdividers who have sold sixty per cent of their lots and those who haven't.
>
> It is true that at some point in the development of most subdivisions the character of the land therein changes and the lots may increase in value, but the change is not dependent on who owns the lots.  Indeed, in some subdivisions, such a change might not occur until long after all the lots have been sold by the developers.  Any change in the value of lots in a subdivision can be measured by the same criteria used for other lands–the presence of roads, sewers, and telephone connections; improvements; the location; and many other factors, including those listed in Fla.Stat. § 193.011, F.S.A.  <u>Ownership in one party or another, however, would not be a valid criterion.</u>

<u>Interlachen Lakes</u>, 304 So.2d at 435 (emphasis added).

In the context of this case, to the extent that Winn Dixie suggests that its tangible personal property (shelving, point of sale equipment, coolers, etc.) and real property should be valued differently than the identical property owned by another grocery store across the street because it is in bankruptcy, such an argument is constitutionally flawed.  Identical property must be valued the same regardless of its owner.

### (2) The presumption of correctness.

Property appraisers are constitutional officers and, as such, their actions are clothed with a presumption of correctness.  <u>Straughn v. Tuck</u>, 354 So.2d 368 (Fla. 1978).  A property appraiser is presumed to have acted lawfully in the performance of his or her duties and the "property appraiser's determination of assessment value [is] an exercise of administrative discretion within the officer's field of expertise."  <u>Blake v. Xerox Corp.</u>, 447 So.2d 1348, 1350

(Fla. 1984).  Thus, the common law test for overcoming the property appraiser's assessment

placed the burden upon the taxpayer to prove that the appraiser departed from the requirements

of the law or that the assessment was not supported by any reasonable hypothesis of legality.

Blake, 447 So.2d at 1350.  The seminal case discussing this presumption of correctness is Powell

v. Kelly, 223 So.2d 305 (Fla. 1969), which described it as follows:

> The fixing of a valuation on property by a tax assessor for the
> purpose of taxation is an administrative act involving the
> exercise of administrative discretion, and the Court will not in
> general control that discretion unless it is illegally or
> fraudulently exercised or exerted in such manner or under such
> circumstances as will amount in law to a fraud.  A situation might
> be presented for judicial interference where specific assessment is
> so obviously and flagrantly excessive as to impute clearly to the
> assessor an intention to discriminate arbitrarily against the
> taxpayer; or where there appears prejudicial or material error in
> matter of law, independent of the exercise of a discretion as to
> value.  But mere excessive valuation, resulting solely from
> inadvertence or mistaken judgment, and unaffected by any element
> of illegality in matter of law, or intentional or other abuse of
> authority, or fraud, express or implied, will not suffice as a ground
> of equitable jurisdiction.
>
> While the assessor is accorded a range of discretion in
> determining valuations for the purpose of taxation *when the
> officer proceeds in accordance with and substantially complies
> with the requirement of law designated to ascertain such values,*
> yet, if the steps required to be taken in making valuations are not in
> fact and in good faith actually taken, and the valuations are shown
> to be essentially unjust or unequal abstractly or relatively, the
> assessment is invalid.  The prima facie correctness of the
> assessments, to be overcome, must be affirmatively assailed by
> appropriate and sufficient allegations and proofs, to the exclusion
> of every reasonable hypothesis of legal assessment.

Powell, 223 So.2d at 307-308 (italics in original, emphasis added).

In 1997, the Legislature codified the common law presumption of correctness.

See § 194.301, Fla. Stat. (2006).  Section 194.301, Florida Statutes (2006), sets forth the

applicable burden of proof in ad valorem tax cases and provides that:

> **Presumption of correctness.**--In any administrative or judicial action in which a taxpayer challenges an ad valorem tax assessment of value, the property appraiser's assessment shall be presumed correct.  This presumption of correctness is lost if the taxpayer shows by a preponderance of the evidence that either the property appraiser has <u>failed to consider properly the criteria in s. 193.011</u> or if the property appraiser's assessment is arbitrarily based on appraisal practices which are different from the appraisal practices generally applied by the property appraiser to comparable property within the same class and within the same county.  If the presumption of correctness is lost, the taxpayer shall have the burden of proving by a preponderance of the evidence that the appraiser's assessment is in excess of just value.  <u>If the presumption of correctness is retained, the taxpayer shall have the burden of proving by clear and convincing evidence that the appraiser's assessment is in excess of just value.  In no case shall the taxpayer have the burden of proving that the property appraiser's assessment is not supported by any reasonable hypothesis of a legal assessment.</u>  If the property appraiser's assessment is determined to be erroneous, the Value Adjustment Board or the court can establish the assessment if there exists competent, substantial evidence in the record, which cumulatively meets the requirements of s.193.011.  If the record lacks competent, substantial evidence meeting the just value criteria of s. 193.011, the matter shall be remanded to the property appraiser with appropriate directions from the Value Adjustment Board or the court.

(Emphasis added.)   Section 194.301 essentially codified the existing common law presumption of correctness, except the legislature changed the burden of proof to "clear and convincing evidence" when the presumption is retained.   <u>Smith v. Royal & Sons, Ltd.</u>, 801 So.2d 255 (Fla. 4th DCA 2001).  "The law continues to be that the appraiser loses the presumption only if the taxpayer shows by a preponderance of the evidence either that the appraiser has failed to consider the criteria set forth in section 193.011, Florida Statutes, or that 'the property appraiser's assessment is arbitrarily based on appraisal practices which are different from the appraisal practices generally applied by the property appraiser to comparable property within the same class and within the same county.'"  801 So.2d at 258.

Section 194.301 sets forth a three-step process for ad valorem tax cases:

**Step 1** – The taxpayer must prove by a preponderance of evidence that:

(a) the property appraiser failed to <u>consider</u> <u>properly</u> the eight criteria of section 193.011; or

(b) the property appraiser's assessment is arbitrarily based on appraisal practices which are different from the appraisal practices generally applied to comparable property within the same class and within the same county.

If the taxpayer satisfies its burden of proof, the presumption of the correctness is lost and the taxpayer only must prove by a preponderance of the evidence that the assessment exceeds just value.   Otherwise, the presumption of correctness is retained and the taxpayer must prove by clear and convincing evidence that the assessment exceeds just value.

**Step 2** – The taxpayer must prove that the assessment exceeds just value under the applicable burden from step 1.

If the taxpayer satisfies its burden of proof, the property appraiser's assessment is determined to be erroneous but this does not also decide the appropriate value.   Otherwise, the property appraiser's assessment is upheld.

**Step 3** – If the property appraiser's assessment has been determined to be erroneous under step 2, the question becomes whether there is competent, substantial evidence in the record that cumulatively meets the requirement of section 193.011 so that the court may decide the appropriate value.

If such evidence exists, the court can establish the value.   If the evidence is lacking, the matter must be remanded to the property appraiser with appropriate directions from the court.

In Florida, the applicable burden of proof under section 194.301 is a matter of substantive law.  Wetherell, The New Burdens of Proof in Ad Valorem Tax Valuation Cases, 25 Fla. St. U. L. Rev. 185 (Winter 1998).  A bankruptcy court in Texas has reached a similar conclusion regarding the burden of proof required to overcome an ad valorem assessment in that state.  In re Quality Beverage Co., 170 B.R. 310 (Bankr. S.D. Tx. 1994).  There, the court held that the burden placed on a taxpayer of proving that its assessment was "grossly excessive" was a matter of substantive law.  Id. at 313.  In the last year, two Florida bankruptcy courts have recognized the presumption of correctness as an issue of substantive law in upholding the property appraisers' assessments.  In re Steffan, 342 B.R. at 861; In re Litestream Technologies, LLC, 337 B.R. at 705; see also In re Cable & Wireless USA, Inc., 331 B.R. at 568 (applying presumption of correctness under Florida law).

**(3) Consideration of the eight criteria of section 193.011.**

Section 194.301, therefore, must be read in conjunction with the eight criteria set forth in section 193.011, Florida Statutes (2006), which provides as follows:

> **193.011  Factors to consider in deriving just valuation.**--In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:
>
>  (1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;
>  (2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable judicial limitation, local or state land use regulation, or historic preservation ordinance, and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium or judicial limitation prohibits or restricts the development or improvement of property as otherwise

authorized by applicable law. The applicable governmental body or agency or the Governor shall notify the property appraiser in writing of any executive order, ordinance, regulation, resolution, or proclamation it adopts imposing any such limitation, regulation, or moratorium;

(3) The location of said property;

(4) The quantity or size of said property;

(5) The cost of said property and the present replacement value of any improvements thereon;

(6) The condition of said property;

(7) The income from said property; and

(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements. When the net proceeds of the sale of any property are utilized, directly or indirectly, in the determination of just valuation of realty of the sold parcel or any other parcel under the provisions of this section, the property appraiser, for the purposes of such determination, shall exclude any portion of such net proceeds attributable to payments for household furnishings or other items of personal property.

(Emphasis added.)

The Florida Supreme Court recently reiterated that the property appraiser must "consider properly" the eight criteria of section 193.011. Mazourek v. Wal-Mart Stores, Inc., 831 So.2d 85 (Fla. 2002). "The obligation upon the property appraiser is for the property appraiser to 'consider,' but not necessarily apply, each factor." Id. at 89. Although the property appraiser must consider all of the criteria, he or she may discard entirely any that are not probative of fair market value. Turner v. Tokai Fin. Servs., Inc., 767 So.2d 494 (Fla. 2d DCA 2000). "The method of valuation and the weight to be given each of the factors is left to the property appraiser's discretion, and the decision will not be disturbed on review as long as each factor has been lawfully considered and the assessed value is within the range of reasonable appraisals." Mazourek, 831 So.2d at 89, quoting Wal-Mart Stores, Inc. v. Todora, 791 So.2d 29 (Fla. 2d DCA 2001). "Even where each of several different factors might be proper, the

selection of one over the other is not necessarily invalid.  An appraiser is not required to give all factors equal rate so long as each factor is carefully considered and given such weight as the facts justify."  <u>Daniel v. Canterbury Towers, Inc.</u>, 462 So.2d 497, 502 (Fla. 2d DCA 1985).  The property appraiser, however, "cannot simply 'out of hand' reject, without any consideration, one of the factors as being inappropriate."  <u>Id.</u> at 501.

The property appraiser arrives at the actual assessment by following either the cost approach, market approach, the income approach, or any combination thereof.  <u>Bystrom v. Whitman</u>, 488 So.2d 520 (Fla. 1986).  Disagreement by the taxpayer over the weight to be accorded to criteria or the method to be utilized in arriving at the valuation of property is not a sufficient reason to overturn the property appraiser's assessment.  <u>Bystrom v. Bal Harbour Condo Ass'n, Inc.</u>, 502 So.2d 1312 (Fla. 3d DCA 1987).  The fact that one approach (income) would produce a lower value than that actually used by the property appraiser (cost) is, in and of itself, no basis for invalidating the assessment, if the property appraiser has proceeded lawfully.  <u>Daniel</u>, 462 So.2d at 501.  The particular method of valuation to be used is a matter within the property appraiser's discretion.  <u>Valencia Center, Inc. v. Bystrom</u>, 543 So.2d 214 (Fla. 1989).

The cost approach is based on the principle of substitution and considers the cost that a prudent purchaser would pay to acquire an equally desirable substitute.  For real property, the cost approach simply values the original, reproduction, or replacement cost of the building and other improvements, less an allowance for depreciation, plus the land value.  <u>See</u> <u>Mazourek</u>, 831 So.2d at 89; Dept. of Revenue, <u>Fla. Real Property Appraisal Guidelines</u>, 37-38 (Nov. 2002).  When valuing tangible personal property under the cost approach, the depreciation is applied to the cost basis of the asset, which reflects the "total cash outlay necessary for the acquisition of the property, including the invoice cost, freight and installation cost, sales and/or use tax, extra

foundations necessary to support the equipment, and any other costs incurred for the use of the property." Standard Measures of Value: Tangible Personal Property Appraisal Guidelines, Fla. Dept. of Revenue, p.38; see Mazourek, 831 So.2d at 90.

The market or sales comparison approach analyzes the recent sales of similar property to arrive at the probable market price of the property being appraised. Havill v. Scripps Howard Cable Co., 742 So.2d 210 (Fla. 1998). Prior to using this approach, the property appraiser must determine if there is an active market for the property from which reliable sales data can be obtained. Havill, 742 So.2d at 212-213. The market approach is the preferred appraisal methodology in Florida. When sales of comparable properties exist and are used to determine the fair market value, the property appraiser performs a standard appraisal. In so doing, he or she considers all, and uses some, of the factors set forth in section 193.011. Oyster Pointe Resort Condo. v. Nolte, 524 So.2d 415 (Fla. 1988).

The income approach requires the property appraiser to estimate the future income that the prospective purchaser could expect to receive from the business enterprise. Havill, 742 So.2d at 213. This approach is based on the theory that a buyer would not pay more for a property than the income stream it is capable of producing. After estimating the future income, the property appraiser discounts the amount to present value by applying a capitalization rate. Id. For tangible personal property, the income approach is invalid except in limited circumstances not applicable in this case. See Havill v. Scripps Howard Cable Co., 742 So.2d 210, 213 (Fla. 1998).

The task for the trial court in an ad valorem tax assessment challenge is not to decide which appraisal methodology is superior. To the contrary, the correct inquiry is whether

the property appraiser properly considered the eight criteria of section 193.011.  As the Florida

Supreme Court has stated:

> Like the trial court, the district court addressed the merits of the question of which method was theoretically superior, and simply disagreed with the trial court's determination. Although the trial court's determination was based in part on a finding that the property appraiser's method was the better one, the judgment should have been affirmed simply on the ground that the property appraiser's determination, having been lawfully arrived at and being supported by a reasonable hypothesis of correctness, was properly upheld.  The size or scope of the sales market for Xerox copying machines should not have been regarded by the district court as determinative. The trial court found that there was a sufficient sales market to render the appraiser's method reasonable.

> The courts of other jurisdictions have disagreed among themselves on the question of the theoretical correctness of the two valuation methods.  These cases arose in various factual and procedural settings and to the extent they addressed the question of which of the two methods is fairer or more theoretically accurate, they are inapposite to the questions presented in the instant case. To reiterate, the only questions presented by the instant case are whether the appraiser considered all factors mandated by the law and whether his methods and conclusion are supported by any reasonable hypothesis of a legal assessment.

> The district court may have been correct in concluding that the income capitalization method was the better method for determining market value, but that was not the legal question presented.

Blake, 447 So.2d at 1350-1351 (emphasis added, citations omitted).  Accord Havill v. Lake Port

Properties, 729 So.2d 467 (Fla. 5th DCA 1999); Daniel, 462 So.2d at 501-502.

The application of appraisal principles to any given property requires an exercise

of judgment and broad discretion by Florida property appraisers.  Dep't of Revenue v. Howard,

916 So.2d 640, 643 (Fla. 2005).  Appraisal is an art, not a science.  Powell, 223 So.2d at 309.

Therefore, a greater reliance on one methodology as opposed to another may result in a different

valuation.  It is for this very reason that the property appraiser is given "great leeway" as long as

he or she follows the requirements of law. Lake Port Properties, 729 So.2d at 471. Indeed, the core issue in an ad valorem assessment challenge is the amount of the assessment, not the methodology used in reaching that assessment. See Whitman, 488 So.2d at 521; Scripps Howard Cable Co. v. Havill, 665 So.2d 1071 (Fla. 5th DCA 1995), approved, 742 So.2d 210 (Fla. 1998). A property appraiser even may reach a correct result (just value) using a wrong methodology or reason. Id. A mere difference of opinion as to value is insufficient to overturn the property appraiser's assessment and judgment. Keith Investments, Inc. v. James, 220 So.2d 695 (Fla. 4th DCA 1969).

### (4) Each tax year stands on its own validity.

It also is well-settled Florida law that the property appraiser's assessed value must stand or fall on its own validity, unconnected with the assessment against that property during any prior or subsequent year. See Simpson v. Merrill, 234 So.2d 350 (Fla. 1970); Container Corp. v. Long, 274 So.2d 571 (Fla. 1st DCA 1973); Keith Invs., Inc. v. James, 220 So.2d 695 (Fla. 4th DCA 1969). Accordingly, evidence of the prior years' assessments is irrelevant when contesting the value for a subsequent year. Long, 274 So.2d at 573; Hecht v. Dade County, 234 So.2d 709 (Fla. 3d DCA 1970). Even when there may be a showing that no change in circumstances occurred since the last year's assessment, evidence of the prior year's assessment is irrelevant and inadmissible. Simpson, 234 So.2d at 352; Homer v. Hialeah Race Course, Inc., 249 So.2d 491 (Fla. 3d DCA 1971); Long, 274 So.2d at 573. In adjudicating the valuations of Winn Dixie's real and tangible personal property, therefore, each tax year must be separately considered and evaluated.

**(5)  The assessments in the 23 counties are separate and distinct matters.**

Under Florida law, Winn Dixie also could not challenge its ad valorem assessments in 23 Florida counties in the same lawsuit.  Instead, 23 separate lawsuits would have to be filed because the assessment, and manner of assessment of property in one county, is irrelevant to the validity of the assessment in another county.  See Straughtn v. GAC Properties, Inc., 360 So.2d 385 (Fla. 1979); Spooner v. Askew, 345 So.2d 1055 (Fla. 1977).  Property appraisers have considerable discretion in assessing property within their respective jurisdictions and are not compelled to use the same methodology for particular property types by the Department of Revenue.  See § 195.062, Fla. Stat. (2003); Dept. of Revenue v. Ford, 438 So.2d 798 (Fla. 1983).  Thus, it will be necessary for this Court to analyze the assessment methodology and fair market value conclusion for the real and tangible personal property in each county.  The action against the 23 Property Appraisers should not be joined and must be separately adjudicated under Florida Law and Federal Rule of Bankruptcy Procedure 7021.

**B.  Application of applicable legal principles.**

In the exhibit's to Winn Dixie's Objection to Florida Tax Claims and Motion for Order Determining Tax Liabilities, Winn Dixie indicates that Assessment Technologies (ATL) prepared the valuation estimates for purposes of this bankruptcy proceeding.  ATL's valuation estimates are hardly competent evidence sufficient to overcome the 23 Property Appraisers' presumption of correctness.  ATL is providing its services on a contingent fee basis and is to receive 35 percent of all taxes lowered through order of this Court.  (Docket No. 5608)  The advantage for ATL to conclude that the values are excessive is obvious and significantly discredits its work product.  It would be similar to a personal injury claimant supplying an expert opinion that his or her injuries were the result of Winn Dixie's negligence and caused damages in

the millions of dollars, where the expert's fee is contingent upon the amount of a recovery.  This type of expert testimony is inherently unreliable.

The only information provided as to the valuation process of ATL is its unsworn statement that the process included analysis of (i) the value derived from sales of similar assets in recent transactions, (ii) the market values derived from and indicated by independent appraisals of a substantial number of the subject properties, and (iii) the sale of assets owned by Winn Dixie.  (Objection, exh. C, p.2)  None of this comparable sales information, however, is included in the exhibits so that its relevancy can be evaluated.  ATL also indicates that it has relied upon the appraisal work product of others in rendering some of its value conclusions.  Those appraisals, however, are not attached to its spreadsheet calculations and it is impossible to determine the relevancy or credibility of the work product. By failing to include any backup information, data, or work product, the valuations suggested by ATL are plainly devoid of merit.

In sum, the unsworn valuations posited by ATL are based upon conclusory statements that completely lack any foundation or supporting documentation.  These valuations fail to establish a prima facie case sufficient to overcome the 23 Property Appraisers' presumption of correctness.  For this reason, Winn Dixie's requested relief should be summarily denied.

With specific regard to the tangible personal property assessments for the tax years in question, any attempt to reduce the assessments should be limited to Winn Dixie's own estimate of fair market value.  Taxpayers in Florida have an obligation to include an estimate of fair market value in filing tangible personal property tax returns.  See § 193.052, Fla. Stat. (2006) ("All returns shall be completed by the taxpayer in such a way as to correctly reflect the owner's estimate of value of property owned or otherwise taxable to him or her and covered by such

return."). Regardless of any valuation opinion of ATL, therefore, this Court should not reduce the assessment below Winn Dixie's own estimate of value as reported to the 23 Property Appraisers.[4]

If this Court were to find that Winn Dixie's Objection to Florida Tax Claims and Motion for Order Determining Tax Liabilities is facially sufficient, the 23 Property Appraisers respectfully submit that an adversarial evidentiary hearing or hearings will be necessary. In that regard, a timetable for discovery and evidence exchange should be provided. Based on the above discussion of Florida substantive law, a separate fact-finding inquiry and determination would be required as to the assessments in each county and each tax year.

WHEREFORE, the 23 Property Appraisers, by and through the undersigned counsel and pursuant to this Court's Order Granting in Part and Denying in Part Florida Tax Collectors' Motion to Dismiss Debtors' Objection to Florida Tax Claims and Motion for Order Determining Tax Liabilities, respectfully request this Court to deny the debtors', Winn Dixie, Inc., et al., action seeking reduction of their assessments of the real and tangible personal property for the tax years at issue.

Respectfully submitted,

*/s/ Loren E. Levy*
Loren E. Levy, Esq.
Fla. Bar No. 0814441
The Levy Law Firm
1828 Riggins Lane
Tallahassee, Florida 32308
Phone: (850) 219-0220

---

[4] Because of the time limitations involved in filing this response, the 23 Property Appraisers reserve the right to file affidavits indicating the valuation methodologies used in deriving the assessments of the real and tangible personal property, supporting documentation thereof, and the value indicated on Winn Dixie's tangible personal property returns for the relevant tax years. These affidavits and information will be filed as a supplement to this response as soon as practical.

Facsimile: (850) 219-0177
levylawfirm@comcast.net

Counsel for Florida Property Appraisers of
Baker, Bradford, Clay, Columbia, DeSoto,
Flagler, Gadsden, Hardee, Highlands,
Hillsborough, Jackson, Leon, Nassau,
Marion, Okeechobee, Osceola, Putnam, St.
Lucie, Suwannee, Taylor, Wakulla, Walton,
and Washington Counties.

Charles R. Forman, Esq.
Fla. Bar No. 229253
Forman, Hanratty & Montgomery
320 N.W. Third Avenue
Ocala, FL 34475
Phone: (352) 732-3915
Facsimile: (352) 351-1690
vthomas@atlantic.net

Co-counsel for Marion County Property
Appraiser

William D. Shepherd, Esq.
Fla. Bar No. 938289
601 East Kennedy Blvd, Floor 15
Tampa, Florida 33602
Phone: (813) 272-6100
Facsimile: (813) 276-2710
shephrdw@hcpafl.org

Co-counsel for Hillsborough County
Property Appraiser

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the

foregoing has been furnished by *Notice of Electronic Filing* on this **9th** day of April, 2007, to:

| Party | Attorney |
|---|---|
| Winn-Dixie Stores, Inc. and Affiliated Debtors | Skadden, Arps, Slate, Meagher & Flom, LLP<br>D.J. Baker, Esq.<br>Four Times Square<br>New York, NY 10036<br>Tel: 212-735-3000<br>djbaker@skadden.com |
| | Smith Hulsey & Busey<br>Stephen D. Busey, Esq.<br>Cynthia C. Jackson, Esq.<br>225 Water Street, Suite 1800,<br>Jacksonville, FL 32202<br>cjackson@smithhulsey.com |
| Florida Tax Collectors | Brian T. Hanlon, Esq.<br>Palm Beach County Tax Collector<br>Post Office Box 3715<br>West Palm Beach, FL 33402-3715<br>Tel: 561-355-2142<br>tc_legal_services@co.palm-beach.fl.us |
| | Brian T. FitzGerald, Esq.<br>Hillsborough County Attorneys Office<br>Post Office Box 1110<br>Tampa, FL 33601-1110<br>Tel: 813-272-5670<br>fitzgeraldb@hillsboroughcounty.org |
| United States Trustee | Kenneth C. Meeker, Esq.<br>Office of the United States Trustee<br>135 W. Central Boulevard, Room 620<br>Orlando, FL 32801<br>Tel: 407-648-6301<br>ken.meeker@usdoj.gov |
| Official Committee of Unsecured Creditors | Akerman Senterfitt<br>John B. MacDonald, Esq.<br>50 N. Laura Street, Suite 2500 |

Jacksonville, FL 32202
Tel: 904-798-3700
john.macdonald@akerman.com

Milbank, Tweed, Hadley & McCloy, LLP
Matthew S. Barr, Esq.
One Chase Manhattan Plaza
New York, NY 10005
Tel: 212-530-5000

Lori Parrish, CFA
Broward County Property Appraiser

Ronald M. Gunzburger, Esq.
General Counsel
Broward County Property Appraiser's Office
115 S. Andrews Avenue, Room 111
Fort Lauderdale, FL 33301
Tel: 954-357-6804
ron@bcpa.net

Bill Donegan, CFA
Orange County Property Appraiser
              &
Jim Ford, CFA
Brevard County Property Appraiser

Bart R. Valdes, Esq.
deBeaubien, Knight, Simmons,
Mantzaris & Neal, LLP
500 N. West Shore Blvd., Suite 940
Tampa, FL 33609
Tel: 813-288-9650
bvaldes@dbksmn.com

Kenneth P. Hazouri, Esq.
deBeaubien, Knight, Simmons,
Mantzaris & Neal, LLP
332 North Magnolia Avenue
P.O. Box 87
Orlando, FL 32802-0087
Tel: 407-422-2454

Marsha M. Faux, CFA, ASA
Polk County Property Appraiser

Michael D. Martin, Esq.
Martin Law Office
P.O. Box 367
Lakeland, FL 33802-0367
Tel: 863-686-6700
mike@martinpa.com

Property Appraisers of Collier, Hendry,
Hernando, Lake, Levy, Martin,
Miami-Dade, Palm Beach, Seminole,
St. Johns, Sumter and Volusia Counties

Gaylord A. Wood, Jr., Esq.
Law Offices of Wood & Stuart, P.A.
P.O. Box 1987
Bunnell, FL 32110-1987
Tel: 386-437-9400
pleadings@woodstuartpa.com

Jim Smith
Pinellas County Property Appraiser

Christina M. LeBlanc, Esq.
Senior Assistant County Attorney
315 Court Street, Sixth Floor
Clearwater, FL 33764
Tel: 727-464-3354
cleblanc@co.pinellas.fl.us

Property Appraisers of Santa Rosa,
Madison, Escambia and Jefferson
Counties

Thomas Findley, Esq.
C. Sha'ron James, Esq.
Messer, Caparello & Self, P.A.
2618 Centennial Place
P.O. Box 15579
Tallahassee, FL 32317
Tel: 850-222-0720
tfindley@lawfla.com

Property Appraisers of Alachua,
Citrus, Monroe, Indian, Okaloosa,
Sarasota, Pasco and Lee Counties

Sherri L. Johnson, Esq.
Dent & Johnson, Chartered
3415 Magic Oak Lane
P.O. Box 3259
Sarasota, Florida 34230
Tel: 941-952-1070
sjohnson@dentjohnson.com