## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-3817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Reorganized Debtors. | ) | Jointly Administered |

## NOTICE OF FILING

Winn-Dixie Stores, Inc. and its subsidiaries and affiliates, as reorganized debtors, give notice of filing the attached Response of Jenner & Block LLP to Fee Examiner's Final Audit Report for Third Interim and Final Fee Application.

Dated:  April 26, 2007


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By      *s/ D. J. Baker*
        D. J. Baker
        Sally McDonald Henry
        Rosalie Walker Gray

Four Times Square
New York, New York 10036
(212) 735-3000
(917) 777-2150 (facsimile)
djbaker@skadden.com

Co-Counsel for Reorganized Debtors


SMITH HULSEY & BUSEY

By      *s/ Cynthia C. Jackson*
        Stephen D. Busey
        James H. Post
        Cynthia C. Jackson (FBN 498882)

225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Reorganized Debtors

00554868

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., *et al.*, | ) | *Chapter 11* |
| | ) | |
| Debtors. | ) | Jointly Administered |

**RESPONSE OF JENNER & BLOCK LLP**
**TO FEE EXAMINER'S FINAL REPORT**
**FOR THIRD INTERIM AND FINAL FEE APPLICATION**

Jenner & Block LLP ("Jenner & Block"), special insurance litigation counsel to Winn-Dixie Stores, Inc. ("Winn-Dixie"), submits this Response to the April 9, 2007 Final Report prepared by fee examiner Stuart, Maue, Mitchell & James, Ltd. ("Stuart Maue") for Jenner & Block's Third Interim and Final Fee Application.

**Background**

1.      In July 2004, Winn-Dixie retained Jenner & Block to represent it in connection with various insurance-related matters, including advising Winn-Dixie with regard to insurance procurement and administration, insurance coverage analysis, and management of certain non-litigated claims for insurance coverage.  For internal administration and billing purposes, and accordingly for purposes of this Application, Jenner & Block refers to this as the "Insurance Advice" matter.

2.      In or about early 2005, Winn-Dixie began consulting Jenner & Block concerning a dispute with one of Winn-Dixie's property insurers, XL Insurance America, Inc. ("XL").  In August 2005, Jenner & Block filed suit against XL on behalf of Winn-Dixie, seeking declaratory relief and damages stemming from XL's refusal to cover what Winn-Dixie asserted was XL's portion of the substantial property damage losses Winn-Dixie sustained in the 2004 hurricane

season; and later amended the complaint to allege alternative contract and tort claims against

Marsh USA, Inc. ("Marsh"), then Winn-Dixie's property insurance broker and advisor. *Winn-Dixie Stores, Inc. v. XL Ins. America, Inc. and Marsh USA, Inc.*, No. 05-CV-2100-JEC (N.D. Ga.). For internal administration and billing purposes, and accordingly for purposes of this Response, Jenner & Block refers to this as the "XL/Marsh Litigation" matter.

3.      Before May 4, 2006, Jenner & Block had been providing its services in its ordinary course professional capacity, pursuant to the Court's March 4, 2005 Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business ("the OCP Order").[1] But as a result of increased activity in the XL/Marsh Litigation, and the expectation that the XL/Marsh Litigation would proceed to trial, the cost of services Winn-Dixie required from Jenner & Block began to exceed the monthly and case caps provided in the OCP Order. Accordingly, to ensure that Winn-Dixie continued to receive the benefit of Jenner & Block's counsel with respect to the XL/Marsh Litigation and. to the extent needed, other insurance-related matters, in April 2006 Winn-Dixie applied for the Court's approval to retain Jenner & Block as special insurance litigation counsel.[2] On May 4, 2006, the Court entered an order pursuant to section 327(e) of the Bankruptcy Code, approving Winn-Dixie's retention of Jenner & Block as special insurance litigation counsel, for purposes of Jenner & Block's

---

[1] *See* Third Submission of Completed Retention Questionnaire of Ordinary Course Professionals Included in the Seventh Supplement to Exhibit A Pursuant to the Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business (Dec. 9, 2005) (Docket No. 4570) (submitting completed ordinary course professional retention questionnaire for Jenner & Block); Seventh Supplement to Exhibit A of the Motion for Approval of Retention and Compensation of Professionals Used in the Ordinary Course of Business (Aug. 15, 2005) (Docket No. 3006) (adding Jenner & Block as an ordinary course professional).

[2] *See* Application for Authority to Retain Jenner & Block LLP as Special Insurance Litigation Counsel to the Debtors (Apr. 16, 2006) (Docket No. 7148).

continued prosecution of the XL/Marsh Litigation, as well as to continue advising Winn-Dixie
with regard to other insurance-related matters as necessary.[3]

### Jenner & Block's Third Interim and Final Fee Application

4.      In its Third Interim and Final Fee Application, filed with the Court on January 19,
2007 (Docket No. 14804), Jenner & Block sought:

a.      allowance of interim compensation for fees in the amount of $59,091.50,
and reimbursement for expenses advanced in the amount of $6,795.37, all of which was incurred
and/or billed in connection with the XL/Marsh Litigation and Insurance Advice matters during
the period October 1, 2006 to November 21, 2006; and

b.      allowance of final compensation for fees and reimbursement for expenses
in the full amounts sought in all three of its interim applications, which collectively cover the
period from May 9, 2005 to November 21, 2006.  By order entered on August 10, 2006, the
Court previously allowed Jenner & Block interim compensation in the amount of $606,419.25
for professional services and $53,156.66 for reimbursement of expenses for the period May 9,
2005 to May 31, 2006.[4]  By order entered on December 14, 2006, the Court allowed Jenner &
Block interim compensation in the amount of $426,614.50 for professional services and
$27,424.43 for reimbursement of expenses for the period June 1, 2006 to September 30, 2006.[5]
Including the amounts sought in the third interim application, but excluding amounts which

---

[3] *See* Order Authorizing Debtors to Retain Jenner & Block LLP as Special Insurance Litigation Counsel
(May 4, 2006) (Docket No. 7601).

[4] *See* Order Allowing Compensation and Reimbursement of Expenses of Professionals (August 10, 2006)
(Docket No. 10159).

[5] *See* Order Allowing Compensation and Reimbursement of Expenses of Professionals (December 14,
2006) (Docket No. 13110).

Jenner & Block now is willing to waive,[6] Jenner & Block is seeking final compensation for professional service fees totalling $1,089,090.25, and reimbursement of expenses totalling $87,341.46 for the period May 9, 2005 to November 21, 2006.

### Fee Examiner's Retention and Report

5.      On December 14, 2005, the Court approved Winn-Dixie's application to employ and retain Stuart, Maue, Mitchell & James Ltd. as fee examiner (Docket No. 4599).

6.      The Fee Examiner issued an Initial Report dated February 21, 2007 ("Initial Report") concerning Jenner & Block's Third Interim and Final Fee Application.  On February 23, 2007, Jenner & Block submitted a Response which included further explanation and clarification of the fees and expenses intended to address the issues Stuart Maue raised in its Initial Report.  Stuart Maue's April 9, 2007 Final Report references and selectively quotes from Jenner & Block's Response, and Stuart Maue partially revised its computations, but Stuart Maue otherwise continues to base its Final Report "on the Application as filed with the Court and not on subsequent amended fee entries that have not been filed."  (Final Report at 10.)  Accordingly, Jenner & Block hereby submits its Response to the Court.

7.      In accordance with the order approving Stuart Maue's retention, Stuart Maue does not make any determination or recommendations in its reports as to either (a) the reasonableness or necessity of the requested fees and expenses or (b) the amount of fees and expenses to be allowed or disallowed.

### Jenner & Block's Response

8.      The issues Stuart Maue raised in its Final Report do not preclude the Court's approval of the fees and expenses requested.  We note that the Final Report does not include any

---

[6] Jenner & Block Response to Fee Examiner's Final Audit Reports for First and Second Interim Fee Applications, filed with the Court on January 23, 2007 (Docket No. 14841), at ¶¶ 13, 33 and 34.

4

analysis of the difficulty of Jenner & Block's assignments; the efforts by Jenner & Block to advance and achieve Winn-Dixie's goals; the depth of experience and expertise that Jenner & Block made available to Winn-Dixie with regard to its specialization in insurance-related matters; and the effectiveness of Jenner & Block's representation.

9.      In particular, the now-settled XL/Marsh Litigation was a hotly-contested, multi-million dollar commercial dispute that involved complex and unique issues concerning interpretation and possible reformation of XL's insurance contract, coupled with similarly complex and unique issues concerning Marsh's professional service obligations to Winn-Dixie. Responsible handling of XL/Marsh Litigation required that Jenner & Block devote substantial time and resources to the matter, sustaining the intensive effort necessary to bring the matter to conclusion within the compressed period dictated by court order.

10.      As a result of the services rendered by Jenner & Block, Winn-Dixie was able to settle the XL/Marsh Litigation just over a year after it was filed, on highly favorable terms, and without the expense and burden of completing trial preparation and conducting a trial.  (*See* Debtors' November 9, 2006 Motion for Order Approving Settlement with XL Insurance America, Inc. and Marsh USA, Inc. (Docket No. 12444).)  Because the Court agreed the settlement was in the best interests of the Debtors' estates, the Court approved the settlement in an order entered on November 30, 2006 (Docket No. 12898).

11.      The balance of this Response tracks substantive portions of the Stuart Maue Final Report.

### Fees

12.      *Discrepancy*.  The Final Report (p. 3) identifies a discrepancy of $1,732.50 resulting from task hours in two entries that did not equal the time billed as a whole.  Upon

review, this appears to have been due to clerical errors in identifying the task-hour division of the total time billed in those two entries.  The total time billed in each entry is correct; the task-hour division should have been as follows:

| 10//02/06 | LSM | 6.00 | Prepare for conference call with D. Bitter and participate in same (.50); email to D. Bitter re issues in Winn-Dixie's current D&O policy that should be considered in converting the policy to a six-year "tail" policy for former directors and officers (.50); work re opinion memo on applicability of retention under D&O "tail" coverage (**5.00**). | $2,970.00 |
| 10/13/06 | BRL | 1.20 | Prepare Trial Exhibits database (1.0); reviewed with R. Miller and ran additional updates (**.20**). | $330.00 |

Because the total time billed was correct, the total amount of fees requested was correct, and should not be reduced by the amount of the $1,732.50 "discrepancy."  Stuart Maue's Final Report indicates that it "revised the task hours accordingly which resulted in revisions to the amount computed by Stuart Maue and the hours and fee in several categories shown in the initial report."  (Final Report at 4.)

13.    *Hourly Rate Increases.*  The Final Report (pp. 6-7) correctly notes that Jenner & Block raised its rates on January 1, 2006, during the period of the First Interim Application. Jenner & Block management evaluates and revises the firm's fee schedules annually at each January 1 to reflect its assessment of the current market value of the services offered by firm professionals in light of their experience and skill levels; and inflationary pressures impacting the overhead required to provide these legal services.  Winn-Dixie received advance notification of this practice at the outset of the engagement, by way of Jenner & Block's July 13, 2004 engagement letter, which stated:

> [Jenner & Block's] charges will be based substantially upon the rates for our lawyers and staff in effect at the time the services are rendered.  [Jenner & Block's] billing rates are subject to adjustment on January 1 of each succeeding year.

A copy of the letter, as signed and agreed to by Winn-Dixie, was attached as Exhibit A to the Response of Jenner & Block to Fee Examiner's Final Audit Reports for First and Second Interim Fee Applications, filed with the Court on January 23, 2007 (Docket No. 14841).

We submit that Jenner & Block's hourly rates, both before and after the January 1, 2006 rate increases, were well within the range of reasonableness for the substantial levels of experience, expertise and resources the firm makes available to its clients, including Winn-Dixie; and we submit that both before and after the January 1, 2006 rate increases, Jenner & Block's hourly rates were at or below rates charged by comparable firms in the fiercely competitive nationwide market for specialized legal services in which Jenner & Block operates.

14.    *"Vaguely Described" Activities.*  The Final Report identifies activity descriptions it considers to be insufficiently specific because the timekeeper employed the phrase "work on" as part of the desription of the services provided.  (Final Report at p. 9, identifying 12.40 hours with $6,122.00 in associated fees.)  Jenner & Block submits that its fee statements supply ample basis for meaningful review of its services, particularly when the individual time entries identified by Stuart Maue are considered in the context of the matters the firm was handling, the entire narrative entries Stuart Maue identified, as well as other time entries.  However, in an effort to resolve the issues Stuart Maue raised in its Initial Report, Jenner & Block submitted the revised narrative descriptions set forth below:

| 10/02/06 | LSM | 6.00 | Prepare for conference call with D. Bitter and participate in same (.50); email to D. Bitter re issues in Winn-Dixie's current D&O policy that should be considered in converting the policy to a six-year "tail" policy for former directors and officers (.50); ~~work re~~ drafted and edited opinion memo on applicability of retention under D&O "tail" coverage (5.00). | $2,970.00 |
|---|---|---|---|---|
| 10/05/06 | CCD | 0.30 | ~~Work on~~ Reviewed and analyzed case planning. | $145.50 |

| 10/06/06 | CCD | 0.50 | ~~Work on~~ Reviewed and analyzed matters relating to requested analysis of D&O, EPL, Fiduciary and Crime Coverages. | $242.50 |
|---|---|---|---|---|
| 10/11/06 | LSM | 3.00 | ~~Work re~~ Reviewed and analyzed D&O "tail" policy issues. | $1,485.00 |
| 10/18/06 | LSM | 1.30 | ~~Work re~~ Reviewed and analyzed 1997-1998 general liability policies. | $643.50 |
| 10/31/06 | LSM | 1.50 | ~~Work re~~ Reviewed and analyzed batch issue raised by listeria claims. | $742.50 |
| 11/03/06 | CCD | 0.80 | ~~Work on~~ Drafted and edited settlement documentation. | $388.00 |

By way of reply, Stuart Maue stated in it Final Report that "[m]ost of these revised fee entries would no longer be considered vaguely described …." (Final Report pp. 9-10), but the Final Report did not identify any of the revised entries that Stuart Maue would still consider "vaguely described."

15.    *"Blocked Entries."*   The Final Report identifies two entries which Stuart Maue states impermissibly "combined tasks into an entry with a single time increment."  (Final Report at p. 10 (3.50 hours with $1,297.50 in associated fees).)  In an effort to resolve this issue, Jenner & Block submitted the revised entries set forth below:

| 11/02/06 | IYD | 2.00 | Research case law re "batch" clauses (**1.40**); analyze the policy at issue (**.40**); telephone conference with L. Masters (**.20**). | $570.00 |
|---|---|---|---|---|
| 11/03/06 | CCD | 1.50 | Work on matters relating to bankruptcy court approval of settlement (**.20**), including review of motion papers and email (**.80**), and telephone conferences with counsel re same (**.50**). | $727.50 |

By way of reply, Stuart Maue stated in its Final Report (p. 10) that "[m]ost of the entries as revised would no longer be blocked," but the Final Report does not identify any of the revised entries which could still be considered "blocked."

16.     *"Intraoffice Conferences."*  The Final Report identifies entries that describe intraoffice conferences.  (Final Report at p. 11 (5.57 hours with $2,231.50 in associated fees).) Representation of parties in complex commercial litigation such as the XL/Marsh Litigation cannot possibly be handled by a single attorney, and clients understand and expect that a team of professionals and paraprofessionals is necessary to provide responsible representation.  As the Application states, the Jenner & Block teams for the XL/Marsh Litigation and the Insurance Advice matter were each comprised of an appropriately limited number of attorneys selected for their substantial experience and expertise in insurance litigation and analysis, assisted where appropriate by similarly-qualified paraprofessionals.  The Jenner & Block professionals and paraprofessionals who were members of those teams conferred with one another to properly coordinate their services and to ensure there was no unnecessary duplication of effort.  Stuart Maue's Report correctly observes that such conferences are "necessary and appropriate."  Jenner & Block submits that its fee statements amply establish (a) the necessity of its intraoffice conferences, particularly when the individual time entries identified by Stuart Maue are considered in the context of the matters the firm was handling, as well as other time entries; and (b) the fact that "multiple attendance" at such conferences was appropriately limited to circumstances which in the professionals' judgment required coordination among the participants.

17.     *"Personnel Who Billed 10.00 or Fewer Hours."*  The Final Report (p. 13) identifies seven timekeepers who billed 10 or fewer hours, representing a total of 30.30 hours with $7,264.50 in associated fees.  None of these timekeepers required orientation or "getting up to speed" on the details of the case, and all of them contributed meaningfully to advancement of the matters they worked on.  One of the timekeepers is a specialist in litigation applications of

computer technology, who was involved in preparation and processing of email and other electronic documents for purposes of production in discovery and for trial -- work which required his specialized technical skills, but did not require any detailed knowledge of the case. The comparatively limited number of hours spent on these matters by the remaining timekeepers -- three paraprofessionals, one associate attorney and two partners -- was commensurate with the level of activity in the matters during the period of this Application.  Jenner & Block submits that the associated fees were reasonably and necessarily incurred; and points out that nothing in bankruptcy rules or the Trustee's guidelines authorizes penalizing counsel for working too *few* hours.

18.     *"Administrative/Clerical Activities by Paraprofessionals."*  The Final Report (p. 15) identifies 24.90 hours with $3,278.50 in associated fees as administrative and clerical activities performed by paraprofessionals.  Activities identified in this category include (a) assembling and organizing litigation documents; (b) preparing documents for production in discovery and for trial, including the processing of email and other electronic documents; (b) preparation of a log of privileged documents; (c) preparation of court filings; (d) research and retrieval of pleadings and other litigation documents; and (e) creating and managing computer databases of deposition transcripts, exhibits and other litigation documents for discovery and trial.  Jenner & Block submits that these activities require the exercise of paraprofessional judgment, *see In re Busy Beaver Bldg Centers, Inc*., 19 F.3d 833 (3d Cir. 1994), and were properly performed by paraprofessionals who have specialized skills and experience for which secretaries and other clerical staff are not trained.

Moreover, Jenner & Block's use of paraprofessionals for these activities is fully consistent with the firm's practice with its other clients, as well as with market practice

generally.  *Id.* at 849 ("the bankruptcy court should review fee applications not for whether each particular service undertaken by a paralegal is clerical or paraprofessional by nature, but for whether non-bankruptcy attorneys typically charge and collect from their clients fees for that particular service when performed by a member of that profession, and the rates charged and collected therefor").  In any case, "the classification of services as clerical or non-clerical does not decide the question of compensability under § 330:  clerical services may be compensated in the proper context."  *Id.* at 851.

Jenner & Block submits that its fee statements on their face amply establish the compensability of the fees Stuart Maue identifies in this category; and that all of the fees were necessarily and reasonably incurred.

## Conclusion

19.     Jenner & Block has performed substantial, necessary services for Winn-Dixie. We submit that the firm's fee statements supply ample basis for meaningful evaluation of the firm's fees and expenses, particularly with the additional information supplied by way of this Response.  We further submit that the firm's fees and expenses were reasonably and necessarily incurred.

Dated:  April 16, 2007

By:    _[signature]_

_____
John H. Mathias, Jr.
Christopher C. Dickinson
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois 60611
(312) 222-9350

11

**Certificate of Service**

The undersigned attorney hereby certifies that on April 16, 2007, he caused copies of the foregoing **Response of Jenner & Block LLP to Fee Examiner's Final Report for Third Interim and Final Fee Application** to be served on the parties listed on the attached Service List by causing copies of same to be deposited with the U.S. Postal Service at 330 N. Wabash Avenue, Chicago, Illinois 60611, in properly addressed envelopes with correct first-class postage prepaid.

By: _____

John H. Mathias, Jr.
Christopher C. Dickinson
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois 60611
(312) 222-9350

Special Insurance Litigation Counsel
to the Debtors

## WINN-DIXIE SERVICE PARTIES

Office of the United States Trustee
Attn:  Kenneth C. Meeker
135 West Central Boulevard, Room 620
Orlando, FL  32801
Phone:  407-648-6301
Fax:  407-648-6323
ken.meeker@usdoj.gov

Office of the United States Trustee
Attn:  Elena L. Escamilla
135 West Central Boulevard, Room 620
Orlando, FL  32801
Phone:  407-648-6465
Fax:  407-648-6323
elena.l.escamilla@usdoj.gov

Otterbourg, Steindler, Houston & Rosen, P.C.
Attn:  Jonathan N. Helfat
230 Park Avenue, 29th Floor
New York, NY  10169
Phone:  212-661-9100
Fax:  212-682-6104
jhelfat@oshr.com

Milbank, Tweed, Hadley & McCloy LLP
Attn:  Matthew S. Barr
1 Chase Manhattan Plaza
New York, NY 10005
Phone: 212-530-5000
Fax: 212-530-5219
mbarr@milbank.com

Winn-Dixie Stores, Inc.
Attn:  Laurence B. Appel
5050 Edgewood Court
Jacksonville, FL 32254-3699
Phone:  904-783-5000
Fax:  904-783-5059
larryappel@winn-dixie.com

Winn-Dixie Stores, Inc.
Attn:  Jay F. Castle
5050 Edgewood Court
Jacksonville, FL 32254-3699

Phone:  904-783-5000
Fax:  904-783-5059
jaycastle@winn-dixie.com

Skadden, Arps, Slate, Meagher & Flom LLP
Attn:  D. J. Baker
Four Times Square
New York, NY 10036
Phone:  212-735-2150
Fax:  917-777-2150
djbaker@skadden.com

King & Spalding LLP
Attn: Sarah Robinson Borders
191 Peachtree Street
Atlanta, GA 30303
Phone:  404-572-4600
Fax:  404-572-5149
sborders@kslaw.com

Stuart, Maue, Mitchell & James, Ltd.
Attn:  Linda K. Cooper
3840 McKelvey Road
St. Louis, MO 63044
Phone:  314-291-3030
Fax:  314-291-6546
l.cooper@smmj.com