**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**VISAGENT CORPORATION'S FIRST MOTION TO COMPEL:**
**PRODUCTION OF DOCUMENTS, BETTER ANSWERS TO**
**VISAGENT'S FIRST SET OF INTERROGATORIES AND**
**THE DEPOSITION OF DEBTOR'S CORPORATE REPRESENTATIVE**

Visagent Corporation (hereinafter "Visagent"), a claimant herein, moves the Court pursuant to Federal Rules of Civil Procedure 26 and 37 and Local Rule 7037-1, for an order compelling Winn-Dixie Stores, Inc. and twenty-three (23) of its subsidiaries and affiliates, as the Reorganized Debtors (hereinafter the "Debtors"), to fully respond to Visagent's discovery requests. In support of the motion, Visagent states:

1. Visagent, an unsecured creditor, holds Claim No. 9953 against Debtors in the sum of $131,875,000.00. In the Amended Notice of Claim, filed herein, Visagent contends that Debtors materially and substantially breached an exhaustively negotiated Service Agreement entered into between the parties on June 15, 2001, effective June 28, 2001. Under the terms of this Agreement, Debtors were obligated for three (3) years to exclusively utilize the services of Visagent for the procurement and sale of all merchandise it acquired or sold, through internet or similar electronic means, including any means utilizing facsimile, from and through the secondary market. The secondary market is comprised of all sources (buyers and sellers) of merchandise other than direct purchases and returns from original product manufacturers. Visagent avers that Debtors breached its contractual obligation in failing to exclusively utilize Visagent's services as provided for in the Service Agreement, and as a result, Visagent suffered damages amounting to 2% of all transactions in which Debtors participated in the purchase or sale of goods in the secondary market, other those exempted by the Agreement. Additionally, Visagent claims Debtors violated federal and state laws in connection with the theft and

1

usurpation of trade secrets, proprietary information and business opportunities belonging to Visagent, which were provided to Debtors based on false promises by the Debtors of a continued business arrangement between the parties. Visagent relied on the unrealized inducements and promises of the Debtors to its detriment and suffered catastrophic damages as a direct consequence of Debtors' actions.

      2. Debtors objected to Visagent's claims alleging that they did not breach a duty to Visagent and Visagent failed to adequately perform under the terms of the Agreement.

      3. On July 23, 2006, Visagent served upon Debtors a First Request for Production, Interrogatories and Requests for Admissions, a copy of which is attached hereto as Exhibit A. On August 25, 2006, Debtors served their Response to Visagent Corporation's First Request for Production of Documents, attached hereto as Exhibit B, and Debtors' Response to Visagent Corporation's First Set of Interrogatories, attached hereto as Exhibit C.

      4. On April 4, 2007, Visagent notified Debtors that the documents produced at the document inspection on September 22, 2006 were insufficient in that the documents were not originals and were not in the same condition as kept in the normal course of business. This letter is attached as Exhibit D. Furthermore, there was no labeling or markings whatsoever of the documents produced indicating which were responsive to specific numbered interrogatories and/or requests to produce as required by the Federal Rules and the bankruptcy Rules. Pointed objections were made to itemized requests for production and interrogatories as set forth herein. Visagent advised Debtors that if an adequate response was not forthcoming in the next ten (10) days a motion to compel would be filed with the Court.

On April 16, 2007, Debtors responded to Visagent's April 4th letter essentially standing on their initial objections as to documents in hard-copy format. This letter is attached as Exhibit E. In this letter counsel for Debtor, David L. Gay, asserts the documents produced were "as they were kept in the usual course of business." However the documents produced were not in any file jackets, were not original documents, were Bates stamped and were in no ascertainable logical sequence or file system. Mr. Gay continued, in this letter, promising to produce documents that were electronically stored

in a "useable form". Despite follow-up requests, Debtor has not produced these documents or offered a date for inspection as promised.

By email dated April 17, 2007, undersigned counsel reiterated the deficiencies of Debtor's production as addressed in Mr. Gay's April 16 letter, further requesting to opportunity to examine the original files of all hard copy format materials, and representing that a motion to compel would be filed regarding the other contested discovery issues. This email is attached as Exhibit F.

On April 19, 2007, Mr. Gay again responded by letter, contesting Debtor's obligation to identify which documents are responsive to specific discovery requests. This letter is attached as Exhibit G. Mr. Gay again promised to contact undersigned counsel, this time by April 27th to schedule the production of original documents kept in the usual course of business. To date, there have been no dates offered by Debtor for a review of the original files.

5. The discovery requests in dispute concerning Visagent's Request for Production and Debtor's responses are set forth in this paragraph. Visagent's arguments refuting Debtor's objections are set forth after each objection:

a. <u>DOCUMENT REQUEST NO. 1</u>: For the time period of June 28, 2001 to June 28, 2004, produce copies of all documentation regarding purchases or sales of any goods in the secondary markets in which any electronic means were utilized, including but not limited to, through the Internet, via facsimile, email or through the use of any electronic device. This request specifically includes, but is not limited to, all invoicing, receipts, orders, order confirmations, billing, bills of lading, checks, bank drafts, wire transfer orders or confirmations or any other responsive data, whether or not actually printed on paper or retained by other data storage means.

<u>OBJECTION TO DOCUMENT REQUEST NO. 1:</u> Debtors object to this request because (i) the request's definition of "electronic means" is overly broad and (ii) the request itself is overly broad and burdensome in requesting copies of every document regarding approximately $175 million of annual transactions over a three year period.

<u>RESPONSE TO DOCUMENT REQUEST NO. 1:</u> Subject to its general and specific objections, Debtors will produce documents which document Debtors' purchases or sales of goods in the secondary markets.

VISAGENT'S RESPONSE:  At the physical inspection of documents, Debtors produced over ten-thousand (10,000) Bates stamped copies of documents but failed to produce any original documents in the same condition as kept in the normal course of business and failed to designate which of those documents produced were responsive to the specific request.

ARGUMENT:  Visagent's first request for production seeks documents that go to the crux of its claim for relief and is not overly broad or burdensome. It is a narrowly directed request for documents regarding purchases or sales of goods in the secondary markets by electronic means, as defined in the request, for the term of the contract executed by the parties.

On September 22, 2006, documents were produced by Debtors for inspection by Visagent.  Numerous boxes of materials were produced in a haphazard fashion with no apparent organization.  The documents clearly were not in the same condition as kept in the normal course of business, although Debtors' claim otherwise. The documents produced were not the original documents, but copies that had been previously Bates stamped.  Visagent's representatives were placed in a room with the boxes of materials and told that they could review the produced documents.  Moreover, there was no designation, by Bates number, or otherwise, of which documents were responsive to this Request for Production as required by Rule 7034 of the Bankruptcy Rules. ("A party who produces documents for inspection shall produce them as they are kept in the ordinary course of business or shall organize them to correspond with the categories in the request.") Since Debtors have already Bates stamped the documents they produced on September 22, 2006, they should have no difficulty in providing a correlation chart relating documents by Bates number ranges to the specific document request.

b.  DOCUMENT REQUEST NO. 2:  Produce copies of all correspondence between the Debtor and Visagent for the period January 1, 2000 and January 1, 2005.

RESPONSE TO DOCUMENT REQUEST NO. 2:  Debtors will produce any such documents in their possession, custody or control.

VISAGENT'S RESPONSE:  Debtors failed to produce the original documents in the same condition as kept in the normal course of business and failed to designate those documents responsive to the specific request.

4

ARGUMENT:  See Paragraph a above.

c. DOCUMENT REQUEST NO. 3:  Produce copies of all internal communications of and between employees of the Debtor for the period January 1, 2000 and January 1, 2005, referencing in any way Visagent Corporation.

RESPONSE TO DOCUMENT REQUEST NO. 3:  Subject to their general objections, Debtors will produce any such documents in their possession, custody or control.

VISAGENT'S RESPONSE:  Debtors failed to produce the original documents in the same condition as kept in the normal course of business and failed to designate those documents responsive to the specific request.

ARGUMENT:  See Paragraph a above.

d. DOCUMENT REQUEST NO. 4:  Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and Dayman & Associates, Inc. Grocers for the period June 15, 2001 to present.

OBJECTION TO DOCUMENT REQUEST NO. 4:  Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

RESPONSE TO DOCUMENT REQUEST NO. 4:  Subject to their general and specific objections. Debtors will produce any agreements between them and Dayman & Associates, Inc.

VISAGENT'S RESPONSE:  Debtors only agreed to produce "agreements" and not all of the requested documents.

ARGUMENT:  One of Visagent's claims against Debtors is the violation of the terms of the parties' Service Agreement dated June 15, 2001 in failing to utilize Visagent's services as agreed in said Agreement and to compensate Visagent accordingly. Visagent contends that Debtors methodically, intentionally and systematically breached the terms of the Agreement by utilizing the services of other entities for the procurement and sale of merchandise in contravention of the terms of their contract.  Dayman & Associates, Inc. (also known as FMG) is a diverting company whose services were utilized by Debtors in violation of Debtors' contract with Visagent.

5

Although Debtors agreed to provide "agreements" between Dayman & Associates/FMG and Debtors, which have not heretofore been provided, they wish to limit their production to this sole category of documents. Visagent is clearly entitled to the documentation requested in its entirety since the requests are material and relevant to their claim against Debtors: that Debtor did not utilize Visagent's services for transactions in the secondary market, instead utilizing the services of other companies in violation of the exclusive contract with Visagent. The allegations that Debtors' violated the contract is beyond any speculation at this time inasmuch as Debtors have produced numerous documents confirming secondary market transactions through diverting companies such as Dayman/FMG during the effective term of the Service Agreement. See documents attached as Exhibit H which are a small sample of documents already produced that show Dayman/FMG and other diverters such as Victory and American conducted millions of dollars of transactions that fall within the scope of the Service Agreement, and further, that the systems operated by these and other diverters were conducted through the internet or by other electronic means. The scope of the request is necessary to avoid having Debtors as the arbiters of what documents are relevant to Visagent's claim against them. As discussed in paragraph e below, Debtors do not object to the time period for which documents were requested.

e. DOCUMENT REQUEST NO. 5: Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and Victory Wholesale Grocers for the period June 15, 2001 to present.

OBJECTION TO DOCUMENT REQUEST NO. 5: Debtors object to this request because it is overly broad and burdensome.

RESPONSE TO DOCUMENT REQUEST NO. 5: Subject to their general objections, Debtors will produce any such document in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

VISAGENT'S RESPONSE: Debtors agreed to produce documents only through June 28, 2004 and not through the present time.

ARGUMENT: Document Requests No. 4 through 9 seek the production of documents regarding communications between Debtors and other companies from June

6

15, 2001 until the present. These companies, as set forth in paragraph d above, are entities that performed services for Debtors which rightfully should have been effectuated through Visagent pursuant to the Service Agreement. The companies referenced are Dayman & Associates Inc., Victory Wholesale Grocers, C&S Wholesale Grocers, Food Marketing Group, WorldWide Retail Exchange and intersource, Inc. and all requests are for the period June 15, 2001 to the present. (The service agreement is dated June 15, 2001 with an effective date of June 28, 2001.) Debtors have taken completely inconsistent positions regarding the production as to each company. As to Dayman, they agreed to produce only "agreements" between Dayman and Debtors without any time restriction. As to the remaining companies, they agreed to produce documents for the contract period of three (3) years, starting with the effective date and terminating three years thereafter.

First, Visagent reiterates its claims as to the manner of production of the documents as set forth in paragraph a. Secondly, Debtors' position would restrict Visagent's time frame of discovery to the three year contract term, without any consideration for the period immediately preceding the effective date and the period after the contract expired. This court is well aware that events do not occur in a vacuum and facts must be placed in historical context with reference to prior and subsequent actions. Permitting document production from the date of the contract (June 15) until the effective date two (2) weeks later is hardly burdensome to Debtors and is relevant to show Debtors intent (or lack thereof) to abide by the contract terms. Production of documents after the date the contract expired is also necessary to show a pattern of activity by Debtors and the utilization of trade secrets appropriated by Debtors from Visagent in their business. The probative value of the requested documents clearly outweighs any burden to Debtors in producing these documents, which should be produced in accordance with Rule 7034.

These arguments are particularly relevant to Request No.5 which deal with all communications to and from Victory Wholesale Grocers, the in-house diverting company for Debtors. The Service Agreement included a one-year exclusion for transactions made through Victory. However, at the end of the one year exclusion period, Debtors signed another contract with Victory in violation of the express provisions of the Service Agreement. Victory physically operated from Debtors' corporate offices and had

unfettered access to Debtors' business records. The relationship between Debtors and Victory needs to be thoroughly explored in the discovery process.

    f.   <u>DOCUMENT REQUEST NO. 6:</u> Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and C&S Wholesale Grocers for the period June 15, 2001 to present.

    <u>OBJECTION TO DOCUMENT REQUEST NO. 6</u>: Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome,

    <u>RESPONSE TO DOCUMENT REQUEST NO. 6:</u> Subject to their general objections, Debtors will produce any such document in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

    <u>VISAGENT'S RESPONSE:</u> Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

    <u>ARGUMENT:</u> See Paragraph e above.

    g.   <u>DOCUMENT REQUEST NO. 7:</u>  Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and Food Marketing Group for the period June 15, 2001 to present.

    <u>OBJECTION TO DOCUMENT REQUEST NO. 7</u>: Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome,

    <u>RESPONSE TO DOCUMENT REQUEST NO. 7:</u> Subject to their general objections, Debtors will produce any such document in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

    <u>VISAGENT'S RESPONSE:</u> Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

    <u>ARGUMENT:</u> See Paragraph e above.

    h. <u>DOCUMENT REQUEST NO. 8</u>: Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and WorldWide Retail Exchange for the period June 15, 2001 to present.

OBJECTION TO DOCUMENT REQUEST NO. 8: Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome,

RESPONSE TO DOCUMENT REQUEST NO. 8: Subject to their general objections, Debtors will produce any such document in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

VISAGENT'S RESPONSE: Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

ARGUMENT: See Paragraph e above.

i. DOCUMENT REQUEST NO. 9: Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and intesource, Inc. for the period June 15, 2001 to present.

OBJECTION TO DOCUMENT REQUEST NO. 9: Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome,

RESPONSE TO DOCUMENT REQUEST NO.9: Subject to their general objections, Debtors will produce any such document in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

VISAGENT'S RESPONSE: Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

ARGUMENT: See Paragraph e above.

j. DOCUMENT REQUEST NO. 10: Produce all financial reports for the calendar years 2001, 2002, 2003 and 2004 that show actual sales or purchases by the Debtor in the secondary market.

OBJECTION TO DOCUMENT REQUEST NO. 10: Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

RESPONSE TO DOCUMENT REQUEST NO. 10: Subject to their general and specific objections, Debtors will produce documents which document Debtors' purchases or sales of goods in the secondary markets from June 28, 2001 to June 28, 2004.

VISAGENT'S RESPONSE: Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

ARGUMENT: Visagent's claims against Debtors involve the sale and purchase of goods in the secondary markets in violation of the parties' Service Agreement. Accordingly, Debtors financial reports for the years in question (2001-2004) are extremely relevant to ascertain each transaction that violated the Service Agreement. Debtors agreed to provide the records, but only for the period of June 28, 2001 through June 28, 2004, claiming that to provide these documents for an additional six months in 2001 and 2004 is burdensome. Since financial reports are typically prepared on an annual basis, Debtors' objections are baseless. Also, the records are necessary to show Debtors' customary business practices and pattern of operation.

k. DOCUMENT REQUEST NO. 11: Produce all business transaction reports regarding the business of the Debtor provided by Victory Wholesale Grocers for the period June 15, 2001 to present.

OBJECTION TO DOCUMENT REQUEST NO. 11: Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

RESPONSE TO DOCUMENT REQUEST NO. 11: Subject to their general and specific objections, Debtors will produce documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

VISAGENT'S RESPONSE: Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

ARGUMENT: As previously indicated, a number of Visagent's claims against Debtors arise from the Debtors' breach of the Service Agreement by failing to utilize Visagent's services and intentionally avoiding their contractual obligations. The transaction reports for the periods requested will show activity at the time the contract was signed and thereafter until the present time, placing the transactions occurring during the contract period in a temporal context. The production of these documents with regard to Victory is particularly critical because of the past relationship between Debtors and Victory.

l. <u>DOCUMENT REQUEST NO. 12</u>:  Produce all business transaction reports regarding the business of the Debtor provided by Dayman & Associates, Inc. for the period June 15, 2001 to present.

<u>OBJECTION TO DOCUMENT REQUEST NO. 12</u>:  Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

<u>RESPONSE TO DOCUMENT REQUEST NO. 12</u>:  Subject to their general and specific objections, Debtors will produce documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

<u>VISAGENT'S RESPONSE</u>:  Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

<u>ARGUMENT</u>:  See paragraph k above.

m. <u>DOCUMENT REQUEST NO. 13</u>: Produce all business transaction reports regarding the business of the Debtor provided by Food Marketing Group for the period June 15, 2001 to present.

<u>OBJECTION TO DOCUMENT REQUEST NO. 13</u>:  Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

<u>RESPONSE TO DOCUMENT REQUEST NO. 13</u>:  Subject to their general and specific objections, Debtors will produce documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

<u>VISAGENT'S RESPONSE</u>:  Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

<u>ARGUMENT</u>:  See paragraph k above.

n. <u>DOCUMENT REQUEST NO. 14:</u> Produce all forecast reports prepared by any employee of Debtor during the period January 1, 2000 and January 1, 2005 that show expected sales or purchases in the secondary market by Debtor.

<u>OBJECTION TO DOCUMENT REQUEST NO. 14:</u>  Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

RESPONSE TO DOCUMENT REQUEST NO. 14: Subject to their general and specific objections, Debtors will produce documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

VISAGENT'S RESPONSE: Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

ARGUMENT: The forecast reports are relevant as to the issue of damages. Debtors have contended that Visagent underperformed pursuant to the terms of the Service Agreement and that Visagent's principals operated a competing diverting company contrary to representations made to Debtors. The forecast reports would illustrate Debtors' profit predictions and the sources thereof.

o. DOCUMENT REQUEST NO. 15: Produce all forecast reports prepared by or on behalf of any non-employee of Debtor or any other entity not a Debtor in this case during the period January 1, 2000 and January 1, 2005 that shows expected sales or purchases in the secondary market by Debtor.

OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 15: See objection and response to Document Request No. 14.

VISAGENT'S RESPONSE: Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

ARGUMENT: See argument in Paragraph p above. Again, the request encompasses a reasonable period of time prior to the execution of the Service Agreement, including the negotiation period, and a short time after the expiration of the Service Agreement, which is inclusive of the fiscal year.

p. DOCUMENT REQUEST NO. 16: Produce all projection or forecast reports regarding the business of the Debtor provided by Victory Wholesale Grocers for the period June 15, 2001 to present.

OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 16: See objection and response to Document Request No. 14.

VISAGENT'S RESPONSE: Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

ARGUMENT: See paragraph o above.

q. DOCUMENT REQUEST NO. 17: Produce all projection or forecast reports regarding the business of the Debtor provided by Dayman & Associates, Inc. Group for the period June 15, 2001 to present.

OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 17: See objection and response to Document Request No. 14.

VISAGENT'S RESPONSE: Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

ARGUMENT: See paragraph o above.

r. DOCUMENT REQUEST NO. 18: Produce all projection or forecast reports regarding the business of the Debtor provided by Food Marketing Group for the period June 15, 2001 to present.

OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 18: See objection and response to Document Request No. 14.

VISAGENT'S RESPONSE: Debtors agreed to produce documents only from June 28, 2001 through June 28, 2004 and not through the present time.

ARGUMENT: See paragraph o above.

s. DOCUMENT REQUEST NO. 19: Produce all electronic data transmissions from any wholesaler that provided detailing "in stock" product availability during the period January 1, 2000 though January 1, 2005.

OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 19: Debtors object to this request because it will not lead to the discovery of admissible evidence.

VISAGENT'S RESPONSE: Objection is invalid. The information requested is directly admissible and is calculated to lead to admissible evidence.

ARGUMENT: The language in this request tracks one of the exclusions in the Service Agreement. In order to determine what part of Debtor's secondary business may be excluded from Visagent's claim for damages, Visagent must have these materials including the names of the wholesalers that provided detailed in stock listings to Debtor via electronic data transmission.

t. DOCUMENT REQUEST NO. 20: Produce all electronic data transmissions from any retailer that provided detailing "in stock" product availability during the period January 1, 2000 though January 1, 2005.

OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 19: Debtors object tot his request because it will not lead to the discovery of admissible evidence.

VISAGENT'S RESPONSE:  Objection is invalid. The information requested is directly admissible and is calculated to lead to admissible evidence.

ARGUMENT:  Same as item s immediately preceding, except these electronic data transmissions are not excluded (only wholesalers excluded under this provision), they are included in the damages calculations.

6. The discovery disputes regarding Debtors' responses to Visagent's First Set of Interrogatories are set forth below in the same format:

a. INTERROGATORY NO. 6: State the total dollar amount of Winn-Dixie purchases of full or truckload quantities of consumer packaged goods purchased or resold in a wholesale format in the secondary market:

   a. For the period June 28, 2001 through June 27, 2002.
   b. For the period June 28, 2002 through June 27, 2003.
   c. For the period June 28, 2003 through June 27, 2004.
   d. For the period June 27, 2004 through February 21, 2005.
   e. For the period February 21, 2005 through present.
   f. For each of the time periods in a through e of this interrogatory, state the total secondary market transactions by purchases, by sales for full or truckload quantities and by less than full or truckload quantities.

OBJECTION TO INTERROGATORY NO. 6:  Subparts d and e are overly broad and will not lead to the discovery of admissible evidence.

ANSWER TO INTERROGATORY NO. 6: Subject to Debtors' general and specific objections, the answer to this interrogatory may be derived or ascertained from documents Debtors will produce and the burden of deriving or ascertaining the answer is substantially the same for Visagent as it is for Debtors.

In Mr. Gay's April 14th letter, he promised to produce documents responsive to this interrogatory, and Nos. 7 through 9, which were electronically stored in a "useable form". Despite follow-up requests, Debtor has not produced these documents or offered a date for inspection as promised.

VISAGENT'S RESPONSE:  Debtors failed to correlate the documents produced which were responsive to this Interrogatory in sufficient detail to permit Visagent to

14

locate, identify, as readily as Debtors, the records from which the answer may be ascertained.

ARGUMENT: As stated above, the documents produced by Debtors were not arranged in a way that allowed Visagent's representatives ascertain a response to this interrogatory. The documents also were not produced in their original form as kept in the usual manner of business. Counsel for Debtor, David Gay, Esq. has asserted that Debtor will make the original files available for inspection

b. INTERROGATORY NO. 7: State the total dollar amount of Winn-Dixie sales of full or truckload quantities of consumer packaged goods purchased or resold in a wholesale format in the secondary market:

    a. For the period June 28, 2001 through June 27, 2002.
    b. For the period June 28, 2002 through June 27, 2003.
    c. For the period June 28, 2003 through June 27, 2004.
    d. For the period June 27, 2004 through February 21, 2005.
    e. For the period February 21, 2005 through present.
    f. For each of the time periods in a through e of this interrogatory, state the total secondary market transactions by purchases, by sales for full or truckload quantities and by less than full or truckload quantities.

OBJECTION TO INTERROGATORY NO. 7: Subparts d and e are overly broad and will not lead to the discovery of admissible evidence.

ANSWER TO INTERROGATORY NO. 7: Subject to Debtors' general and specific objections, the answer to this interrogatory may be derived or ascertained from documents Debtors will produce and the burden of deriving or ascertaining the answer is substantially the same for Visagent as it is for Debtors.

VISAGENT'S RESPONSE: Debtors failed to correlate the documents produced which were responsive to this Interrogatory in sufficient detail to permit Visagent to locate, identify, as readily as Debtors, the records from which the answer may be ascertained.

ARGUMENT: See paragraph a above.

c. INTERRROGATORY NO. 8: State the total dollar amount of Winn-Dixie purchases of full or truckload quantities of consumer packaged goods purchased or resold through the services of Victory Wholesale Grocers between June 28, 2001 and July 1, 2002.

OBJECTION TO INTERROGATORY NO. 8: The interrogatory is overly broad and will not lead to the discovery of admissible evidence.

ANSWER TO INTERROGATORY NO. 8: Subject to Debtor's general and specific objections, to the extent that an answer to this interrogatory may be derived or ascertained from documents in Debtor's possession, Debtors will produce such documents.

VISAGENT'S RESPONSE: Debtors failed to correlate the documents produced which were responsive to this Interrogatory in sufficient detail to permit Visagent to locate, identify, as readily as Debtors, the records from which the answer may be ascertained.

ARGUMENT: See paragraph a above.

d. INTERRROGATORY NO. 9: State the total dollar amount of Winn-Dixie sales of full or truckload quantities of consumer packaged goods purchased or resold through the services of Victory Wholesale Grocers between June 28, 2001 and July 1, 2002.

OBJECTION TO INTERROGATORY NO. 9: The interrogatory is overly broad and will not lead to the discovery of admissible evidence.

ANSWER TO INTERROGATORY NO. 9: Subject to Debtor's general and specific objections, to the extent that an answer to this interrogatory may be derived or ascertained from documents in Debtor's possession, Debtors will produce such documents.

VISAGENT'S RESPONSE: Debtors failed to correlate the documents produced which were responsive to this Interrogatory in sufficient detail to permit Visagent to locate, identify, as readily as Debtors, the records from which the answer may be ascertained.

ARGUMENT: See paragraph a above.

e. INTERROGATORY NO. 12: State the total dollar amount of Winn-Dixie purchases of full or truckload quantities of consumer packaged goods purchased or resold through the services of intesource, Inc. between June 28, 2001 and June 27, 2004.

OBJECTION TO INTERROGATORY NO. 12: The interrogatory is overly broad and will not lead to the discovery of admissible evidence.

VISAGENT'S RESPONSE:  Debtors asserted blanket objections which are insufficient as a matter of law.  Thereafter, in its April 16, 2007 correspondence, Debtors claim "none" as the response to this Interrogatory.

ARGUMENT:  Visagent claims that Debtors breached the terms of the Service Agreement by failing to utilize its services for the purchase and sale of goods in the secondary market.  Incidental to that claim is that Debtors used the services of other entities to perform, i.e. intesource, Inc., services that they were obligated to have Visagent perform.  The information sought in this interrogatory is directly relevant to this issue. Debtors claim of late that the response to this Interrogatory is "none" and therefore must amend their answers to reflect this response.

f. INTERROGATORY 13: State the total dollar amount of Winn-Dixie sales of full or truckload quantities of consumer packaged goods purchased or resold through the services of intesource, Inc. between June 28, 2001 and June 27, 2004.

OBJECTION TO INTERROGATORY NO. 13: The interrogatory is overly broad and will not lead to the discovery of admissible evidence.

VISAGENT'S RESPONSE:  Debtors asserted blanket objections which are insufficient as a matter of law.

ARGUMENT:  See paragraph e above.

g. INTERROGATORY 14: List all wholesalers that provided electronic data transmissions detailing "in stock" product availability during the period January 1, 2000 though January 1, 2005.  Include the date that any listed entity or individual began such transmissions and the gross value of purchases and sales, by month, for each.

OBJECTION TO INTERROGATORY NO. 14: The interrogatory is overly broad and will not lead to the discovery of admissible evidence.  Furthermore, in Mr. Gay's April 16th letter, he represented that Debtor will "review the information at its disposal and provide a supplemental answer to Interrogatory 14."  Debtor has not provided and such supplemental answer to date.

VISAGENT'S RESPONSE:  Debtors asserted blanket objections which are insufficient as a matter of law and have now agreed to provide a supplemental response, but failed to provide any time frame for the response, causing an open-ended delay in discovery.

<u>ARGUMENT</u>:  See paragraph e above.

7. For the foregoing reasons, Visagent respectfully requests that the Court enter an order compelling Debtors to provide the documents requested annotated as to which documents respond to each request by bates number, permit inspection of Debtor's original files from which bates stamped documents were generated and that Debtors provide complete answers to the referenced Interrogatories.

8. Visagent additionally moves to compel the deposition of the Debtor's corporate representative as follows:

   a. Pursuant to this Court's order dated February 8, 2007, (Docket No. 15073), Visagent was precluded from deposing Debtor's witnesses until twenty (20) days after Visagent complied with the Court's February 22, 2007 discovery ruling. That ruling, (Docket No. 15302), required better responses to certain interrogatories and requests for production no later than March 26, 2007.

   b. Visagent complied with the Court's discovery order by providing supplemental responses to Debtor on March 21, 2007. By agreement, production of supplemental electronically stored documents took place at an agreed location in Jacksonville on April 5, 2007. Debtor's counsel received a copy of all of the electronically stored documents no later than Monday, April 9, 2007.

   c. Having complied with this Court's orders, Visagent scheduled the deposition of Debtor's corporate representative for April 30, 2007. Notice of Taking deposition of Debtor's corporate representative is attached as Exhibit I.

   d. Debtor did not file any motion for protection regarding this deposition. Instead, Debtor created a self-help remedy by asserting that in its opinion, Visagent had not complied with the Court's prior discovery order. In both of Mr. Gay's previously identified April 16th and 19th letters (Exhibits E and G), he asserts his interpretation that Debtor can unilaterally decide Visagent is in non-compliance and therefore not entitled to depose Debtor's corporate representative.

   e. Via email dated April 25, 2007 (Exhibit J), undersigned counsel addressed the items previously noted by Mr. Gay as non-compliance issues regarding interrogatories and noted that no issues had ever been raised in connection with the supplemental documents. The email further asserts that Debtor cannot be the arbiter of

non-compliance, rather, it must seek an order of non-compliance from this Court in order to receive protection from the duly noticed deposition.

      f.      By email dated April 27, 2007, one business day before the scheduled deposition, Mr. Gay reiterated that he would not produce the witness as noticed. (Exhibit K)

      g.      Visagent asserts it is in full compliance with all discovery orders. It provided supplemental answers to each and every interrogatory and request for production as ordered by the Court. Debtor now seeks to delay moving this case forward on the pretext of non-compliance. This Court should not permit one party to unilaterally refuse to abide by the rules and obey notices of taking depositions without seeking protection from the Court. Otherwise, parties will avail themselves of self-help remedies without consequences. The resulting chaos would not allow the orderly administration of any case..

      h.      Visagent requests that the Court order the Debtor's corporate representative to sit for deposition as soon as it can be feasibly scheduled and for an award of sanctions against Debtor for its recalcitrant violation of the rules governing discovery.

## CERTIFICATE OF GOOD FAITH

I HEREBY CERTIFY that I personally made a good faith effort to resolve the issues set forth by way of this Motion prior to filing same. As outlined in the Memorandum, the issues raised could not be resolved.

 

_____
Guy Bennett Rubin, Esq. (FBN 691305)
Attorneys for Plaintiffs
**RUBIN & RUBIN**
P.O. Box 395
Stuart, Florida  34995
Telephone:   (772) 283-2004
Facsimile:    (772) 283-2009

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the original of this Motion has been electronically filed via ECF and that a true and correct copy of the foregoing has been furnished by US regular Mail to: David L. Gay, Smith, Hulsey & Busey, 225v Water Street, Suite 1800, Jacksonville, Florida 32202 on the 3rd day of May 2007.

 

_____
Guy Bennett Rubin, Esq. (FBN 691305)
Attorneys for Plaintiffs
**RUBIN & RUBIN**
P.O. Box 395
Stuart, Florida 34995
Telephone:    (772) 283-2004
Facsimile:     (772) 283-2009