

Sedgwick Claims Management Services Inc
P.O. Box 24787, Jacksonville, FL 32241-4787
Telephone: (888)784-3470 Facsimile: (904)419-5365

June 27, 2006

DCA Homes, Inc.
Attn: Zena Dickstein/ Jeffrey P. Krasnoff
1601 Washington Ave., Suite 800
Miami Beach, FL 33139

Law Offices of Randolph H. Strauss, P.A.
4301 Northeast 1st Terrace, Suite 1
Fort Lauderdale, FL 3334-3133
954-566-5297

RE: Claimant: Denise Sydnor
Claim Number: A611203507-0001-01
Date of Injury: 04/22/2006
Location: Sunrise, FL 33321    Winn-Dixie Store #: 377

Dear Ms. Dickstein or Mr. Krasnoff:

This letter is to inform you that Sedgwick Claims Management Services, Inc. is the third party administrator for Winn-Dixie Stores, Inc. We have received notice of a claim being presented by Denise Sydnor as a result of an incident that occurred on or about 04/22/2006.

The incident occurred as a result of Ms. Sydnor slipping and falling in water on the sidewalk. It appears that Ms. Sydnor was leaving the restaurant located next to Winn-Dixie when this incident happened. Ms. Sydnor states that water was leaking from a faucet on the outside wall of the store. Ms. Sydnor injured her right elbow and required immediate hospitalization, involving surgery. Ms. Sydnor has retained an attorney. Please accept this letter as notice of this claim and inform your carrier.

I will need an acknowledgement in writing indicating that your company will be handling this claim. Should you have any questions in regard to this case, please feel free to contact the undersigned at your convenience.

Sincerely,

Katelyn Brim
Claims Examiner II

Cc: Law Offices of Randolph H. Strauss, P.A.

**Exhibit "A"**

Landlord agrees with respect to the five (5) areas labeled "Out Parcel", two located adjoining the Southerly line of N. W. 44th Street, and the other three located adjoining the Westerly line of Pine Island Road and numbered for identification as Parcels #3, #4 and #5, as shown on Exhibit "A", as follows: As to Out Parcels #1 and #2, any buildings constructed thereon shall not exceed two (2) stories or 28 feet in height and shall not exceed thirty percent (30%) of the square footage of each parcel; as to Parcels #3, #4 and #5, any buildings thereon shall not exceed 22 feet in height and shall not exceed thirty percent (30%) of the square footage of each parcel. All of such parcels may be used only for those businesses or activities which do not violate the restrictions on use set forth in Articles 7 and 28 hereof. Pending such use or construction thereon, the parcels shall be maintained as grassed or landscaped areas and kept free of weeds and underbrush or may be paved for parking usage. Notwithstanding the foregoing, at Landlord's option, either of Parcels #3, #4 and #5 may be used for a self-service type filling station with a small mini-mart as a part thereof, but it is expressly agreed that the mini-mart space shall not exceed 1,000 sq. ft. in area and the sale of beer therein is permitted but the sale of wine is specifically prohibited.

**SERVICE AREA**

9. Landlord further agrees to provide for the exclusive use of the Tenant at its grocery service entrances parking spaces for two large trailer trucks for continuous use and further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such spaces as may be reasonably needed by Tenant for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

**UTILITIES**

10. The Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities used by Tenant on the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities.

**TENANT'S REPAIRS**

11. Upon completion of construction by Landlord and acceptance of the demised premises by Tenant, Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of the Landlord or which are made necessary by reason of fire and other unavoidable casualties covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear. Within such repair responsibility of Tenant shall be included: the routine maintenance and repairs to the air conditioning and heating equipment (but not duct work; registers and grilles and replacement of any major mechanical component parts thereof, including, without limitation, the air handling units, the compressors, the condensers, fan motors, receivers, duct heaters and heat reclaim coils, which shall be the responsibility of the Landlord); the floor surfacing; the replacement of any plate glass damaged or broken, except that covered by Landlord's fire and extended coverage insurance; and the automatic doors and door operators.

**LANDLORD'S REPAIRS**

12. The Landlord shall, at its cost and expense, keep and maintain in good condition and repair, the common areas, the exterior of Tenant's store building, including the window frames, ~~~~~~ roof, gutter, downspouts, exterior painting, masonry walls, foundation and structural members, the automatic sprinkler system (including central alarm system therefor, if required by governmental authority), the plumbing (including septic tank, if any), wiring ~~~~~~ ~~~~~~ of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises. If any portion of the common areas (as defined in Article 3 hereof) or any portion of the store building, which is the responsibility of the Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so, except that the Landlord shall not be obligated to make or pay for any repairs to Tenant's store building rendered necessary by the fault, act or negligence of the Tenant, or any of its servants, agents or

-7-