UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

| | |
|---|---|
| In re<br><br>**WINN-DIXIE STORES, INC., et al.,**<br><br>Debtors. | Case No. 05-03817-3F1<br><br>**Chapter 11**<br><br>**(Jointly Administered)** |

**MOTION TO ENLARGE TIME TO FILE ADMINISTRATIVE CLAIM REQUEST**

The Movant, SHARON BEBOUT, (hereinafter referred to as "Movant" or "Tort Claimant"), by and through the undersigned attorney, hereby files this Motion to Enlarge Time to File Administrative Claim Request (hereinafter referred to as "Motion") and in support states as follows:

**Jurisdictional Allegations**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue of the Debtors' Chapter 11 cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are pursuant to 11 U.S.C. §§ 105(a), 503(a), 1141 and Rules 4001, 9006(b) and 9014 of the Federal Rules of Bankruptcy Procedure.

**Relevant Facts and Basis for Relief Requested**

2.    The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on February 21, 2005.

3.     The Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors was filed on August 9, 2006, and was modified by the First Modification of Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors, dated October 13, 2006 (collectively referred to as "The Plan").

4.     Movant, Ms. Bebout, has a claim against the Debtor resulting from personal injuries and/or property damage resulting from an accident which occurred on its business premises #255 located at 14595 S. Military Trial, Delray Beach, Florida 33484 on September 10, 2006. See, Exhibit A, Affidavit of Darryl B. Kogan, attached hereto ("Kogan Affidavit"). On September 10, 2006, immediately following the incident, Movant filled out an incident report to a man who identified himself as the Winn Dixie assistant store manager (the "Incident Report"), which Debtor kept, and Movant never received a copy. As a result of said accident, Movant sustained back, neck and right arm injuries.

5.     Movant initially retained the legal services of the law offices of Abramowitz & Pomerantz, P.A. ("A&P") on November 14, 2006. See, Bebout Affidavit. Subsequently, Movant replaced A&P with Kogan & DiSalvo, P.A. ("K&D") (A&P and K&D will be collectively referred to herein as "State Court Counsel").

6.     On November 9, 2006, the Court entered an Order Confirming Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (hereinafter referred to as "Confirmation Order").

7.     On November 30, 2006, Lyle M. Konig of A&P provided Winn-Dixie with notice of the subject claim via mail. See, Exhibit A, attached hereto.

8. After confirmation of Debtors' Plan of Reorganization, a Notice of a bar date for filing administrative claims was issued on December 6, 2006 (the "Notice"). This Notice set January 5, 2007, as the bar date for filing such administrative claims.

9. **Neither Movant or its State Court Counsel were included on the service list of the Notice. Thus, Movant never received notice of the date to file administrative claims.**

10. On February 1, 2007, Sedgwick Claims Management Services, Inc., ("Sedgwick"), acknowledged receipt of the November 30, 2006 letter, however Sedwick advised the Movant and State Court Counsel of the claims bar date after the bar date to give the Movant and State Court Counsel notice of such date. The second paragraph of the Sedgwick letter stated that "Winn-Dixie emerged from bankruptcy on 11/21/06. All claims that Winn-Dixie Stores, Inc. were aware of that occurred between 02/22/05 and 11/21/06 were mailed a notice." The third paragraph of the Sedgwick letter stated, pursuant to the notice, "that all requests for payment of an Administrative Claim or any Claim arising against the Debtors in this period must file an application with the Bankruptcy Court no later than January 5, 2007." Lastly, the fourth paragraph of the Sedgwick letter stated that "the deadline for filing your administrative expense claim has expired so we are unable to consider this claim." A copy of the Sedgwick letter is attached hereto as Exhibit B.

11. As a result, the Movant and State Court Counsel first became aware of the bankruptcy filing upon receipt of the Sedgwick letter, dated February 1, 2007, from Sedgwick Claims Management Services, Inc., after the bar date had passed. *See*, Kogan Affidavit.

12. After discovering the bar date, State Court Counsel has swiftly moved forward with filing an Application for Administrative Expense. A copy of the Application and Request for Payment of Claim is attached hereto as Exhibit C.

**An Enlargement of the Time to File the Administrative Expense Claim Request is Justified**

    A.    **The Debtors failed to provide the Movant or State Court Counsel with a Notice of the Bar Date**

13.    The Debtors were required to serve the Notice on the Movant, Sharon Bebout. *See*, City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953). Additionally, pursuant to Fed. R. Bankr. P. 2002(g), the Debtors were required to give notice directly to the Movant as Movant's attorney (or other agent) had not directed otherwise. *See*, In re R.H. Macy & Co., Inc., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993).

14.    The Debtors were well aware of the claim of Sharon Bebout prior to the bar date. First, the Movant completed an Incident Report on September 10, 2006, immediately following the Accident, which entered the Debtors' records on that date. Second, Mr. Koenig provided the Debtor with notice of the claim in his November 30, 2006 letter. The Debtors had ample time to notify the Movant and State Court Counsel of the bankruptcy prior to the January 5, 2007 bar date, but failed to do so.

15.    Although the Debtors were aware of the Movant's claim, at no time prior to the bar date did the Debtors request that an administrative claim be filed and **at no time did the Debtors send the Administrative Bar Date Notice to the Movant or to State Court Counsel**. *See*, Kogan Affidavit. Instead, the Debtors conveniently waited until after the bar date to advise State Court Counsel that an administrative claim should have been filed.

16.    A Debtor cannot discharge a claim or preclude a creditor from receiving a distribution from its bankruptcy case if it failed to provide the creditor with notice of the bar date. *See*, In re Grand Union Co., 204 B.R. 864 (Bankr. D. Del. 1997) ("inadequate notice of the bar date, in and of itself, is a separate ground upon which a late proof of claim is allowed to be filed").

17.     Therefore, the Movant is entitled to an enlargement of time of the bar date to file her claim.

**B.      Alternatively, the Movant has Established "Excusable Neglect" Under Fed.R.Bankr.P. 9006(b)**

18.     Section 503(a) of the Bankruptcy Code provides that "an entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court *for cause*" (emphasis added). The Bankruptcy Code does not specifically define what "cause" justifies a tardily-filed administrative expense request. However, Courts routinely apply Bankruptcy Rule 9006(b) to permit the enlargement of time for filing a section 503(a) Bankruptcy Rule administrative request after the deadline has passed, "where the failure to act was the result of excusable neglect." *See*, In re Gottchalk, 78 F.3d 593, 1993 WL 83877, *2 (9th Cir. 1996); In re West Delta Oil Co., 2002 WL 506814, *4 (E.D. La. 2002); In re Gurley, 235 B.R. 626, 631-2 (Banter. W.D. Tenn. 1999); and In re Aargus Polybag Co., Inc., 172 B.R. 586, 589 (Bankr. N.D. 111. 1994).

19.     In Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993), the U.S. Supreme Court rejected the contention that Bankruptcy Rule 9006(b)(1) required a showing that a movant's failure to comply with the bankruptcy court's deadline was caused by circumstances beyond its reasonable control. Instead, the Supreme Court concluded that:

> [T]he determination [of what types of neglect will be considered excusable] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id. at 381. Accordingly, courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." Id. at 1499. This "excusable neglect" standard for filing a late proof of claim established by Pioneer has also been applied to determine whether the late filing of an administrative expense request was the result of "excusable neglect." See, Gottchalk, 78 F.3d at 593; West Delta Oil, 2002 WL 506814 at *4; Gurley, 235 B.R. at 631-2; and Aargus, 172 B.R. at 589.

20.    The factors to be considered in determining "excusable neglect" are: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

21.    The creditor is not required to prove that the circumstances surrounding the late filing were extraordinary. See, In re Singson, 41 F.3d 316, 318 (7th Cir. 1994). As the Supreme Court in Pioneer explained:

> [B]y empowering the courts to accept late filing where the failure to act was the result of excusable neglect, Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

Pioneer, 507 U.S. at 388. The Supreme Court also explained that this flexible understanding of excusable neglect accords with the policies underlying Chapter 11 and the bankruptcy rules. Id. at 389. Specifically, whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding the forfeitures by creditors. Id.

I.   **<u>No Danger of Prejudice to the Debtors</u>**

22.   Prejudice to the Debtors must be material and cannot be vague or speculative. *See*, <u>In re Pettibone Corp.</u>, 162 B.R. 791, 804-5 (Bankr. N.D.Ill. 1994). Here, the danger of prejudice to the Debtors is non-existent.

23.   The Debtors were well aware of the claim prior to the bar date. The Debtors were well aware of the claim of Sharon Bebout prior to the bar date. First, the Movant completed an Incident Report on September 10, 2006, immediately following the Accident, which entered the Debtors' records on that date. The Debtors were advised by Mr. Koenig with notice of the claim in his November 30, 2006 letter. In addition, the Debtors are required under the Code and the Plan to pay administrative claims in full. The Debtors cannot attempt to avoid their requirements to pay administrative claims by completely ignoring all the notices of the Movant's claim, and by waiting until the bar date passes to advise State Court Counsel of the existence of the bankruptcy.

24.   Furthermore, despite Debtors' knowledge of the existence of Movant's claim, Debtors did not serve Movant's State Court Counsel with a copy of the Plan of Reorganization or with a copy of the Order on Plan of Reorganization. As a result, the Movant had no opportunity to prepare and file an administrative claim because she had no knowledge of the bankruptcy.

25.   It is anticipated that Debtors will argue that Movant's claim was not accounted for in the funding of the Plan. This argument, however, is of no merit and should bear no weight. Courts have held that such a narrow analysis inappropriate because it treats prejudice as nothing more than the loss of a windfall and would therefore result in the denial of all motions regarding late filed claims under <u>Pioneer</u> and Rule 9006(b). *See*, <u>In re O'Brien Environmental Energy, Inc</u>. 88 F.3d 116, 126 (3d Cir. 1999).

26. The Debtors encompass an experienced national grocery store chain, represented by experienced claims representatives and legal counsel, who were well aware of Movant's claim since September 10, 2006, or should have been, since the Movant completed an Incident Report immediately following the slip and fall on September 10, 2006. Moreover, correspondence dated November 30, 2006, put the Debtor's on further notice of the claim. They are, therefore, aware of the fact that claims, such as the claim of the Movant, develop as part of the Debtors' business practice and that such claims should be reasonably anticipated to arise subsequent to the bar date. It is reasonably certain that such claims would arise post-petition in the course of Debtors' doing business as a national grocery store chain.

27. In addition, the Debtors must be held accountable for their own records and records in this case evidence the existence of the Movant's claim prior to the bar date. Not only did the Movant complete an Incident Report, which entered the Debtors' records on September 10, 2006, but the Movant and State Court Counsel gave notice of the claim to the Debtor on November 30, 2006, and Sedgwick Claims Management Services, Inc. prior to the claims bar date.

## II. **The Length of Delay and its Potential Impact on Judicial Proceedings**

28. The length of delay here and its impact on these cases is de minimus. After first discovering the missed deadline, Movant has taken immediate action to rectify the situation. This distinguishes Movant from those claimants that consciously fail to file claims in the face of known bar dates. *See e.g.* Aargus Polybag, 172 B.R. at 591 (*eight month delay found unreasonable where creditor consciously disregarded bar date and did not affirmatively file any motion based upon excusable neglect, but only raised the argument in a responsive pleading*).

29.     Permitting the filing will not impact the administration of the grocery store chain. Consideration of Movant's claim can be undertaken in the ordinary course, along with all of the other administrative expenses requests filed in the case during the administrative claim allowance process, which is presently occurring. Furthermore, Debtors will have more than sufficient time to determine whether there are grounds to object to the claim.

30.     Moreover, the delay will not have an impact on the administration of the Chapter 11 case and the Debtors were well aware, or should have been, based on its own records, that Movant's claim existed prior to the bar date.

### III.   The Reason for Delay and Whether the Delay Was Within the Creditor's Reasonable Control

31.     Movant notified Winn-Dixie of the Accident immediately following the incident on September 10, 2006, by submitting to it an Incident Report prior to the bar date. Subsequently, State Court Counsel notified Winn-Dixie of the subject claim on November 30, 2006, prior to the bar date. The Debtor failed to notify the Movant and State Court Counsel of the bankruptcy until after the bar date had passed; even though, the Debtor had been given notice of the Movant's claim on three separate occasions. However, Movant and State Court Counsel were not notified of the bankruptcy filing until Mr. Koenig received the Sedgwick letter, dated February 1, 2007.

32.     As a result of the Debtors' failure to notify the Movant or State Court Counsel until after the bar date had passed, the Movant was unable to timely file an administrative claim by the bar date, January 5, 2007. Therefore, the delay was not within the Movant's reasonable control. Instead, the delay was clearly caused by the Debtor's failure to give notice of the bankruptcy and the claims bar date to the Movant and State Court Counsel. State Court Counsel gave Winn-Dixie notice of the subject claim on November 30, 2006, which would have allowed

the Movant ample time to file an administrative claim by the January 5, 2007 bar date, had she known of the bankruptcy filing. Furthermore, Winn-Dixie had notice of the Movant's slip and fall since the day the incident occurred on September 10, 2006, wherein the Movant immediately completed an Incident Report. This Incident Report should have become part of Debtors' records, as the Movant did not receive a copy of the same. Therefore, the Movant's identity as well as the subject claim was certainly reasonably ascertainable by the Debtors. *See*, In re Anchor Glass Container Corp., 325 B.R. 892, 895-6 (Bankr. M.D. Fla. 2005).

33.     There is a clear reason for the delay in the timely filing of a request for payment of an administrative expense. The delay was caused solely by the Debtor's failure to act. The Movant and State Court Counsel were not notified of the bankruptcy filing until well after the bar date, even though Winn Dixie had notice of the subject claim well before the bar date. The Movant was never given an opportunity to prepare and file an Application for Administrative Expense, because neither she nor her State Court Counsel had any knowledge of the bankruptcy.

**IV.     Movants Acted in Good Faith**

34.     The Movant has acted in good faith since the date of the incident. Immediately following the Accident, the Movant submitted an Incident Report to Winn-Dixie, on September 10, 2006. Then, the Movant retained State Court Counsel's legal services.

35.     Despite State Court Counsel's numerous attempts to contact, Winn-Dixie and Sedgwick Claims Management Services, Inc., State Court Counsel did not receive any response from Debtors or Debtors' Counsel, and State Court Counsel only received a response from Sedgwick Claims Management Services, Inc. in the Sedgwick letter, dated February 1, 2007. Therefore, the Movant had no other alternative than to file this Motion. The Movant has again acted quickly and in good faith by filing this Motion to Enlarge Time.

36. Moreover, it is the Debtors who appear to have not acted in good faith. The Movant completed an Incident Report immediately following the Accident, and Debtor did not provide a copy of the same to the Movant. Debtors' had numerous opportunities to inform Movant and her State Court Counsel of the bar date; however, Debtors never mentioned the existence of the bankruptcy to Movant or to her State Court Counsel. Movant and her State Court Counsel only learned of the bankruptcy filing from Sedgwick Claims Management Services, Inc. and not until well after the bar date had passed.

WHEREFORE, the Movant respectfully requests that this Court enter an Order: granting the **Motion to Enlarge Time to File Administrative Claim Request**; permitting Movant's Application and Request for Payment of Claim to be considered timely filed; and granting such other and further relief as the Court deems just and proper.

Dated this 23rd day of May 2007.

        ERVIN COHEN & JESSUP, LLP

        /s/Michael S. Kogan
        MICHAEL S. KOGAN
        California State Bar No. 128500
        Ervin Cohen & Jessup, LLP
        9401 Wilshire Blvd., 9th Fl.
        Beverly Hills, CA 90212
        email: mkogan@ecjlaw.com
        (310) 273-6333 telephone
        (310) 859-2325 facsimile

## CERTIFICATE OF SERVICE

     I hereby certify that on May 23, 2007, I filed the within Motion to Enlarge Time to File Administrative Claim Request through the CM/ECF filing system, which will cause a copy to be served upon James H. Post, counsel for the reorganized debtors, Matthew Barr, Esq. and John MacDonald, Esq., Counsel for the Post-Effective Date Committee, Elena L. Escamilla, Esq., counsel for the office of the U.S. Trustee and all other parties participating in the CM/ECF system, all served electronically.

                                ERVIN COHEN & JESSUP, LLP

                                /s/Michael S. Kogan
                                MICHAEL S. KOGAN
                                California State Bar No. 128500
                                Ervin Cohen & Jessup, LLP
                                9401 Wilshire Blvd., 9th Fl.
                                Beverly Hills, CA 90212
                                email: mkogan@ecjlaw.com
                                (310) 273-6333 telephone
                                (310) 859-2325 facsimile