### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 3:05-bk-03817-JAF |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | |

### UNOPPOSED MOTION TO AMEND ASSIGNMENT OF
### PROOF OF CLAIM *NUNC PRO TUNC* TO CORRECT NAME

CWCapital Asset Management LLC ("CWCapital") solely in its capacity as special servicer for U.S. Bank, N.A., successor to State Street Bank and Trust Company, as Trustee for the registered holders of First Union-Lehman Brothers Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 1997-C1 (the "Trust"), a creditor and party in interest in the above-captioned bankruptcy case, by and through counsel, files this Motion to Amend Assignment of Proof of Claim to Correct Name (the "Motion"). In support of its Motion, the Trust states:

1.      On February 21, 2005, Winn-Dixie Stores, Inc., *et. al.* (the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York. On April 3, 2005, the Debtors' jointly administered cases were transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

2.      Bronze Centers, L.P., through its trade name, Oakwood Village Associates ("Oakwood"), was the owner and landlord of the location wherein Winn-Dixie Store #1904 was located.

3.      On or about October 13, 2005, counsel for Oakwood filed a proof of claim, Claim #11962, setting forth its unsecured claim in the amount of $363,312.11 in the Debtors' case. Claim #11962 was allowed under 11 U.S.C. § 502.

4.      The Trust was the holder of a mortgage on the property where Store #1904 was located. The mortgage went into default in January, 2006, and on or about August 24, 2006, the Trust and Oakwood entered into a Forbearance Agreement. As part of its consideration for the Forbearance Agreement, Oakwood agreed to assign Claim #11962 to the Trust. A copy of the Forbearance Agreement is attached as **Exhibit A**.

5.      The Forbearance Agreement contains the complete and accurate name of the Trust. However, in the Notice of Assignment filed with the Court as docket no. 10919, the name of the Trustee for the Trust was inadvertently changed from U.S. Bank, N.A. to LaSalle Bank, N.A. All other information provided to the Debtor and its agents, including the tax identification number for the Trust, was accurate. A copy of the Notice of Assignment (without exhibits) is attached as **Exhibit B**.

6.      "Amendments to proofs of claims are freely allowed where the purpose is simply to cure a defect in the claim as originally filed, to described the claim with greater particularity, or to plead a new theory of recovery." *In re Gateway Investments Corp.*, 114 B.R. 784, 786 (Bankr. S.D. Fla. 1990) (citing, *In re South Atlantic Financial Corp.*, 767 F.2d 814, 819 (11th Cir. 1985); *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985).

-2-

7.     In the present case, Claim #11962 and the subsequent Notice of Transfer were timely filed and allowed, thus the Court was aware of the existence of the claim, the nature of the claim, the amount of the claim, and the assignment of the claim. No party objected to the claim or the assignment. As such, amendment of the assignment of the claim *nunc pro tunc* to properly identify the Trust, through its Trustee U.S. Bank, N.A. as the proper assignee should be allowed. See, *In re Gateway, supra* (and cases cited therein).

8.     On November 21, 2006, the Debtors' Plan of Reorganization was confirmed by the Court. Logan & Company, Inc. is the claims agent in this case. Wells Fargo Bank, N.A. is the disbursing agent under the Plan, and American Stock Transfer & Trust Company is the stock transfer agent under the Plan.

9.     Pursuant to the terms of the Plan, 16,807 shares of the Debtors' New Common Stock were issued and distributed to the Trust in the name of LaSalle Bank, N.A., as Trustee, in consideration of Claim #11962.

10.     As noted above, the Trust, through its Trustee U.S. Bank, N.A., is the proper party creditor for Claim #11962.

11.     As such, the Trust moves this Court for an Order directing Logan & Company, Inc., as claims agent, Wells Fargo Bank, N.A., as disbursing agent, and American Stock Transfer & Trust Company, as stock transfer agent to amend their respective records with respect to Claim #11962 and issue an amended direct registration bankruptcy statement to show that the Trust, through its Trustee U.S. Bank, N.A., is the proper claimant on such claim and the owner of the 16,807 shares of the Reorganized Debtor's New Common Stock issued under the Plan.

-3-

12.     The undersigned has conferred with counsel for the Debtors' regarding the relief sought by this Motion. Counsel for the Debtors, on the precise facts presented, has stated that the Debtors are unopposed to the entry of an Order granting the relief sought herein.[1]

WHEREFORE, the Trust respectfully requests that this Court enter an Order amending the assignment of Claim #11962 *nunc pro tunc* to correctly identify the Trust through its Trustee U.S. Bank, N.A. as the creditor holding the claim, and directing Logan & Company, Inc., as claims agent, Wells Fargo Bank, N.A., as disbursing agent, and American Stock Transfer & Trust Company, as stock transfer agent to amend their respective records with respect to Claim #11962 to reflect the Trust as the proper claim on such claim and the owners of the 16,807 shares of the Debtor's New Common Stock issued under the Plan.

**STUTSMAN THAMES & MARKEY, P.A.**

*/s/ Richard R. Thames*

By_____
          Richard R. Thames

Florida Bar Number 0718459
50 N. Laura St., Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 (Facsimile)
RRT@stmlaw.net

Attorneys for CWCapital Asset Management,
LLC as special servicer for U.S. Bank, N.A.

---

[1]   On the facts presented, the correction is not a transfer or a claim prohibited by the "distribution record date" provisions of the Debtors' Plan of Reorganization.

## Certificate of Service

I hereby certify on May 23, 2007, the foregoing was transmitted to the Clerk of the

Court for uploading to the Case Management/Electronic Case Filing System, which will send

a notice of electronic filing to:

Stephen D. Busey, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
busey@smithhulsey.com

John B. Macdonald, Esq.
Akerman, Senterfitt & Eidson, P.A.
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
(904) 798-3700
(904) 798-3730 (facsimile)
john.macdonald@akerman.com

Elana L. Escamilla, Esq.
Assistant United States Trustee
135 West Central Boulevard, Room 620
Orlando, Florida 32801
(407) 648-6465
(407) 648-6323 (facsimile)
elana.l.escamilla@usdoj.gov

Cynthia C. Jackson, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

D.J. Baker, Esq.
Skadden, Arps, Slat, Meagher, & Flom, LLP
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
dbaker@skadden.com

Adam Ravin, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
aravin@skadden.com

Dennis F. Dunne, Esq.
Milbank, Tweed, Hadley & McCloy, LLP
1 Chase Plaza
New York, New York 10005
(212) 530-5000
(212) 530-5219 (facsimile)
ddunne@milbank.com

*/s/ Richard R. Thames*

_____

Attorney

63862

-5-

# EXHIBIT A

## FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "Agreement"), is made this ___ day of August, 2006, by and between Bronze Centers L.P. an Georgia Limited Partnership (the "Borrower"), and CWCapital Asset Management LLC ("CWCapital") as special servicer for U.S. Capital Bank, N.A., as Trustee (the "Trustee"), for the Registered Holders of First Union-Lehman Brothers-Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 1997-C1 (the "Trust").

## W I T N E S S E T H:

WHEREAS, as of August ___, 2006 the Borrower was indebted to the Trust for amounts due under that certain Promissory Note of the Borrower dated December 6, 1996 (the "Note"); including but not limited to the repayment of principal, interest and other amounts due and payable under the Note (the "Debt");

WHEREAS, the Borrower's obligations under the Note are secured by a Deed of Trust, Assignment of Leases and Rents and Security Agreement (the "Mortgage") dated December 6, 1996;

WHEREAS, the Borrower's obligations under the Note are further secured by an Assignment of Leases and Rents (the "Assignment of Rents") dated December 6, 1996. The Note, Mortgage and Assignments of Rents and all collateral documents relating to the Debt are collectively referred to herein as the "Loan Documents";

WHEREAS, the Loan Documents convey to the Trust all rights, title and interest in and to certain improved property described as Oakwood Village Shopping Center, 200 Oakwood Avenue, Huntsville, Alabama, 35811, as more particularly described in Exhibit A to the Mortgage, including all buildings, structures, improvements and tenements thereon, all easements, rights-of-way, appurtenances, rents, royalties, minerals, oil and gas rights and profits, water, water rights and water stock appurtenant thereto, all proceeds, instruments, chattel paper, and general intangibles related thereto, and all machinery, apparatus, equipment, fittings, fixtures and personal property of every kind and nature whatsoever, and other interests as set forth in the Mortgage (collectively, the "Property");

WHEREAS, the Trust holds a perfected, first priority security interest in the Property. In addition, pursuant to the terms of the Loan Documents, the Borrower absolutely and unconditionally assigned and transferred to the Trust all of the rents, revenue and income arising from the use of the Property (the "Rents");

WHEREAS, on February 21, 2005 the primary tenant of the Property, Winn-Dixie Stores, Inc. ("Winn-Dixie "), filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida, case no. 05-03817;

WHEREAS, Winn-Dixie rejected its lease of the Property and the Borrower filed a proof of claim of $363,312.11 resulting from rejection of the lease ("Lease Rejection Claim"), a copy of which is attached to the Agreement as Exhibit A;

WHEREAS; under the terms of the Loan Documents the Lease Rejection Claim constitutes Rents which are assigned to the Trust and may be applied to the Debt at the Trust's sole discretion during a condition of default under the Loan Documents;

WHEREAS, Borrower is in default under the Loan Documents by virtue of (among other things) Borrower's failure to pay monthly installments of principal and interest due on the Debt on January 1, 2006;

WHEREAS, CWCapital Asset Management LLC ("CWCapital") acts as the special servicer on behalf of the Trust;

WHEREAS, Borrower has requested that the Trust forbear from exercising certain of its rights under the Loan Documents, including the right of foreclosure;

WHEREAS, the Trust has agreed to forbear from exercising certain of its rights and remedies under the Loan Documents and applicable law pursuant to the terms set forth in this Agreement in order to give the Borrower an opportunity to market and sell the Property;

NOW THEREFORE, effective as of August ___, 2006 (the "Effective Date"), in consideration of Ten Dollars ($10.00) and the mutual covenants and agreements set forth below, the receipt and sufficiency of which are acknowledged, the parties, intending to be legally bound, hereby agree as follows:

      1.   Recitals. The foregoing recitals are true and correct in all respects and are hereby made a part of this Agreement.

      2.   Forbearance. Subject to and upon the terms and conditions of this Agreement, the Trust will forbear from the exercise of its rights and remedies to collect the amounts due and owing to it from the Borrower under the Loan Documents by reason of the disclosed defaults of Borrower under the Loan Documents for the term of the Forbearance Period. The "Forbearance Period" shall mean that period of time commencing on the date hereof and terminating on the earlier of (a) January 1, 2007, (b) the closing of a sale of the Property, or (c) upon the occurrence of an Event of Default (as defined herein) hereunder. The Trust's

agreement to forbear from exercising its rights and remedies under the Loan Documents shall not constitute a waiver of the existing defaults of Borrower under the Loan Documents. The parties acknowledge that the Trust may exercise all rights and remedies available to it under the Loan Documents or otherwise, by reason of such defaults immediately upon expiration or termination of the Forbearance Period.

3. <u>Efforts to Sell the Property</u>. During the Forbearance Period, the Borrower shall make good faith efforts to sell the Property. The Borrower shall not agree to any sale of the Property for a total price of less than $3,100,000 and shall not agree to pay any broker's fee or sales commission of greater than 3% of the sales price out of the proceeds of the sale. Borrower shall be entitled to retain 1% of the sales price as a fee and consideration for handling the sale.

4. <u>Assignment of Claim</u>. The Borrower hereby assigns all right, title and interest in the Lease Rejection Claim to the Trust and agrees to execute the assignment documents attached to this Agreement as <u>Exhibit B</u> simultaneously with the execution of this Agreement in order for the Trust to confirm transfer of the Lease Rejection Claim with the Bankruptcy Court. The Trust agrees to apply the proceeds of the Lease Rejection Claim to the Debt in the manner provided for in the Loan Documents.

5. <u>Budget and Extraordinary Expenses</u>. Within ten (10) days of the date of this Agreement and on the first day of each month thereafter, the Borrower shall provide the Trust with a detailed monthly operating budget (the "Budget") for the Property which shall be subject to the reasonable approval of the Trust. Unforeseen and unbudgeted expenses necessary for the maintenance of the property ("Extraordinary Expenses") may be paid for out of the Borrower's operating account upon written approval of the Trust.

6. <u>Turnover of Cash</u>. Prior to the tenth (10th) day of each month, the Borrower shall turn over to the Trust all cash remaining in its operating accounts after payment of budgeted operating expenses for the previous month and sales related expenses, including attorneys' fees, subject to the reasonable approval of the Trust. However, notwithstanding the terms of this paragraph, the Borrower shall be entitled to maintain a minimum cash balance of $25,000 in its operating accounts as a reserve for operating emergencies.

7. <u>Accounting</u>. The Borrower shall, prior to the tenth (10th) day of each month, provide the Trust with a detailed accounting of all money received and all disbursements made by the Borrower during the previous month. Such accounting shall include the sources of all income, the recipients of all disbursements, and a written explanation for each operating expense that deviates

by more than ten percent (10%) from the Budget and each expense that is not accounted for in the Budget.

8.    Payment.    During the Forbearance Period, the Trust agrees to accept transfer of the Lease Rejection Claim and the net proceeds of a sale of the Property in conformity with the terms of the Agreement in full satisfaction of the Debt.

9.    Representations and Warranties.    In order to induce the Trust to enter into this Agreement, Borrower hereby represents and warrants to the Trust as follows:

(a)    Borrower is a limited partnership duly organized, validly existing and in good standing under the laws of the State of Alabama, with powers adequate to own and operate the properties owned by it, to carry on the business conducted by it, to enter into and perform this Agreement and to carry out the transactions contemplated hereby.

(b)    The execution and delivery of this Agreement by Borrower have been duly authorized by proper partnership action, as applicable, and this Agreement constitutes the legal, valid and binding obligations of the Borrower, enforceable in accordance with its terms.

(c)    There is no litigation, at law or in equity, nor any proceeding before any federal, state or other governmental or administrative agency or any arbitrator pending or, to the knowledge of Borrower, threatened against Borrower which has not been disclosed to the Trust in writing.

(d)    The present unpaid principal balance outstanding under the Loan Documents, as of August 1, 2006 is $3,431,707.55.    Borrower acknowledges and agrees that it has no defense, set-off rights, counterclaims or challenges against the payment of any sums owing under the Loan Documents, the validity or extent of the security interests granted to the Trust thereby or the enforcement of any of the terms or conditions thereof. This Agreement is not in any way intended to constitute a novation of any of the Loan Documents.

(e)    Borrower does not have actual knowledge of any objection or defense to the Lease Rejection Claim.

10.    Covenants.    In order to induce the Trust to enter into this Agreement, Borrower hereby covenants that, until all amounts due from the Borrower to the Trust have been paid in full, the following provisions will be complied with:

(a)    Borrower will do all things necessary to preserve, renew and keep in full force and effect and in good standing the legal existence and authority of Borrower to continue its business.

(b)    From time to time, upon request of any authorized officer of the Trust, Borrower will furnish to the Trust such information regarding its business affairs and condition, financial or otherwise, including, but not limited to, financial statements, as such officer may reasonably request.    The Trust's authorized officers and representatives shall have the right during normal business hours to examine the books and records of the Borrower and to make copies, notes and abstracts therefrom.

(c)    Borrower will not increase the amounts currently paid to any officer or employee of Borrower, directly or indirectly, as a salary, bonus or in any other manner (including the value of any insurance or other employee fringe benefits).

11.    Default.    The occurrence of any one or more of the following events shall be deemed to be an event of default under this Agreement (an "Event of Default"):

(a)    If Borrower shall fail to observe or to perform any covenant, agreement, term or condition of this Agreement or the Loan Documents as and when provided for herein or therein, and such failure shall continue after the expiration of five (5) days following notice thereof from the Trust to the Borrower;

(b)    Except for the existing defaults which have been disclosed to the Trust in writing prior to the date hereof, if any default or event of default shall occur under any of the Loan Documents;

(c)    If any representation or warranty made herein or in the Loan Documents, or in any report, certificate, financial statement or other instrument furnished in connection with the Loan Documents or this Agreement, or in any document contemplated by the Loan Documents or this Agreement, shall prove to have been materially false or misleading on the date as of which it was made;

(d)    If there shall occur in the good faith judgment of the Trust any material adverse change in the business, operation, prospects, properties, assets or condition (financial or otherwise) of Borrower, or the Trust shall in good faith believe that the prospects for the sale of the Property or the performance by the Borrower under the Loan Documents or this Agreement have become impaired.

12.    Remedies. If the Debt is not completely and finally paid on or before the expiration of the Forbearance Period or upon the occurrence of an Event of Default under this Agreement, the Trust shall have the right to exercise any and all rights and remedies available to it to immediately collect all amounts due and owing to it.  All rights and remedies available to the Trust may be asserted concurrently, cumulatively or successively, from time to time, as long as the parties hereto shall be indebted to the Trust.

13.    Waiver of Right of Redemption. The Borrower waives all rights of redemption to the greatest extent possible under Alabama law in connection with any action to collect the Debt.

14.    No Waiver. The Trust's failure or delay in exercising any right, power or remedy hereunder, or under the Loan Documents, or applicable law, or otherwise, shall not operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy. No waiver or forbearance by the Trust as to Borrower shall waive or release any rights or claims that the Trust may now have or hereafter have against any other person, firm or individual. The Trust reserves all rights except to the extent expressly provided herein.

15.    Relief from Automatic Stay Provision. Borrower hereby agrees that in the event that the Borrower becomes a debtor under Title 11 of the United States Code (the "Bankruptcy Code"), the Trust shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, as amended, or otherwise, on or against the exercise of the rights and remedies otherwise available to the Trust as provided under the Loan Documents and as otherwise provided by law.

16.    Release. Borrower hereby releases and discharges the Trust, its agents, servants, employees, directors, officers, servicers, attorneys, branches, affiliates, subsidiaries, successors and assigns and all persons, firms, corporations, and organizations acting on its behalf of and from all damage, loss, claims, demands, liabilities, obligations, actions and causes of action whatsoever that Borrower may now have or claim to have against the Trust as of the effective date of this Agreement, whether presently known or unknown, and of every nature and extent whatsoever on account of or in any way concerning, arising out of or founded upon Loan Documents, as modified hereby, including but not limited to, all such loss or damage of any kind heretofore sustained, or that may arise as a consequence of the dealings between the parties up to and including the effective date of this Agreement.

17.    Successors and Assigns. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the

successors and assigns of such party. All covenants, agreements, representations and warranties by or on behalf of Borrower that are contained in this Agreement shall inure to the benefit of the Trust and its successors and assigns. Borrower shall not have any right to assign this Agreement or any of their respective rights hereunder.

18. <u>Severability</u>. If any term, provision or condition, or any part thereof, of this Agreement shall for any reason be found or held to be invalid or unenforceable by any court or governmental agency of competent jurisdiction, such invalidity or unenforceability shall not affect the remainder of such term, provision or condition nor any other term, provision or condition, and this Agreement shall survive and be construed as if such invalid or unenforceable term, provision or condition had not been contained herein.

19. <u>Entire Agreement</u>. This Agreement, together with the Loan Documents, contains the entire agreement of the parties hereto with respect to the matters covered and the transactions contemplated hereby and thereby, and no other agreement, statement or promise made by any party hereto, or by any employee, officer, agent or attorney or any party hereto, shall be valid or binding. No modification or waiver of any provision hereof, or of the Loan Documents, shall be effective as against the Trust unless the same shall be in writing executed on behalf of the Trust. Except to the extent modified herein, the provisions of Loan Documents are hereby ratified and confirmed.

20. <u>Time; Governing Law</u>. Time is of the essence for the performance of this Agreement, and the performance, construction and enforcement hereof shall be governed by the laws of the State of Maryland.

21. <u>Notices</u>. All notices to be provided hereunder shall be effective upon delivery if delivered by hand or three (3) days after mailing if sent by certified mail, return receipt requested and shall be delivered to:

<table>
<tr><td>Borrower:</td><td>Bronze Centers L.P.<br>1853 Piedmont Road<br>Terrace Level<br>Marietta, Georgia 30066<br>Attn: Stewart Scothorn</td></tr>
<tr><td>With a copy to:</td><td>J. Marshall Martin, Esquire<br>Foltz Martin, LLC<br>5 Piedmont Center<br>Suite 750<br>Atlanta, GA 30305</td></tr>
</table>

| Trust: | CWCapital Asset Management, LLC |
|---|---|
| | 700 12th Street, N.W., Suite 700 |
| | Washington, D.C. 20005 |
| | Attn: Michael J. McGregor |
| | Vice President |
| | |
| With a copy to: | Venable LLP |
| | Two Hopkins Plaza |
| | Suite 1800 |
| | Baltimore, Maryland 21201 |
| | Attn: Gregory A. Cross, Esquire |

22.   Further Assurances. Borrower will execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, from time to time, such further instruments and documents as may be necessary, in the Trust's reasonable discretion, to evidence the obligation of Borrower or to protect, perfect or enforce the Trust's interest in any collateral security therefor.

23.   WAIVER OF JURY TRIAL.   THE BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE BORROWER AND THE TRUST MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO THIS AGREEMENT, OR ANY OTHER LOAN DOCUMENTS DESCRIBED HEREIN.   IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT. THE BORROWER FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE EXECUTION OF THIS AGREEMENT AND IN MAKING THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

24.   LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.   THE PARTIES HERETO, INCLUDING THE TRUST BY ACCEPTANCE HEREOF, AGREE THAT IN ANY LEGAL PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM (A "DISPUTE") THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT OR THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. THE PARTIES HEREBY EXPRESSLY WAIVE ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY DISPUTE.

25.    <u>EXCULPATION.</u>  THIS INSTRUMENT AND EACH OF THE
COVENANTS AND AGREEMENTS SET FORTH HEREIN SHALL BE TREATED
AS A LOAN DOCUMENT SUBJECT TO THE LIMITATIONS OF PERSONAL
LIABILITY AND EXCULPATION PROVISIONS IN THE LOAN DOCUMENTS.

WITNESS/ATTEST:                    BORROWER:

Bronze Centers, L.P.

By: Bronze Holdings, Inc., its general
partner

By:_____(SEAL)
Name: _Ghinda Blanton_
Title: _Executive Vice President_

TRUST:

U.S. Bank N.A., as Trustee for the
Registered Holders of First Union-Lehman
Brothers-Commercial Mortgage Trust,
Commercial Mortgage Pass-Through
Certificates, Series 1997-C1


By:    CWCapital Asset Management LLC in
       its sole capacity as Special Servicer


By:_____
      Michael J. McGregor, Vice President

# EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | ) | Case No. 3:05-bk-03817-JAF |
| Debtors. | ) | Jointly Administered |
| | ) | |

## NOTICE OF TRANSFER AND
## ASSIGNMENT OF CLAIM AND WAIVER OF
## NOTICE PURSUANT TO BANKRUPTCY RULE 3001(e)(2)

CWCapital Asset Management LLC, as Special Servicer for LaSalle Bank, N.A. as Trustee for the Registered Holders of First Union-Lehman Brothers-Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates Series 1997-C1 gives notice pursuant to Bankruptcy Rule 3001(e)(2) of the attached assignment of claim number 11962 from Oakwood Village Associates to CWCapital Asset Management LLC, as Special Servicer for LaSalle Bank, N.A. as Trustee for the Registered Holders of First Union-Lehman Brothers-Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates Series 1997-C1.

DATED this **13** day of September, 2006.

**STUTSMAN THAMES & MARKEY, P.A.**

*/s/ Richard R. Thames*

By_____

Richard R. Thames

Florida Bar Number 0718459
50 N. Laura St., Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 (Facsimile)
RRT@stmlaw.net

Attorneys for CWCapital Asset Management LLC, as Special Servicer for LaSalle Bank, N.A.

60567