1           UNITED STATES BANKRUPTCY COURT
                MIDDLE DISTRICT OF FLORIDA
2                 JACKSONVILLE DIVISION

3

4    In re:

5                            CASE NO:   05-3817-3F1
      WINN-DIXIE STORES, INC.,
6

7           Debtors.
     _____/
8

9

10                TRANSCRIPT OF PROCEEDINGS

11

12           Excerpt of hearing re:  Motion to Compel

13   Discovery from Visagent and Motion for Protective

14   Order, before the Honorable Jerry A. Funk,

15   U.S. Bankruptcy Judge, commencing at 1:30 p.m., on

16   February 22, 2007, at the United States Courthouse,

17   Room 4C, 300 North Hogan Street, Jacksonville, Florida,

18   as reported by Elizabeth M. Masters, RPR, and a Notary

19   Public in and for the State of Florida at Large.

20

21                       - - -

22

23
                   STATEWIDE REPORTING SERVICE
24                  606 BLACKSTONE BUILDING
                 JACKSONVILLE, FLORIDA 32202
25                    (904) 353-7706

2

1                    A P P E A R A N C E S

2

3

4

5        STEPHEN D. BUSEY, ESQUIRE

6
                Attorney for Debtors
7

8

9

10
        PAUL HARDEN, ESQUIRE
11

12              Attorney for Visagent

13

14

15                          - - -

16

17

18

19

20

21

22

23

24

25

3

1                   T A B L E   O F   C O N T E N T S

2

3                                                         PAGE

4

5

6   Motion to Compel Discovery From Visagent              4

7

8

9

10

11

12                          - - -

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1               P R O C E E D I N G S

2   February 22, 2007                    1:30 p.m.

3                    - - -

4          THE COURT:  Good afternoon.  We're here today

5      on the case of Winn-Dixie Stores.

6          The first matter on the agenda is a Motion to

7      Compel Discovery From Visagent.

8          MR. BUSEY:  Your Honor, Steve Busey for the

9      Debtors.

10         If I may suggest to the Court, considering the

11     fact that we have a number of people in the

12     courtroom that probably are here with regard to the

13     next item on the agenda, which is an omnibus

14     objection, that we take these matters out of order.

15     That should be consensual, and we can get it done

16     quickly.

17         THE COURT:  That sounds fine to me.

18         Does anybody have an objection to that?

19         (No response.)

20  ...

21         MR. BUSEY:  The only remaining matter on the

22     agenda is the Visagent matter, which is number one

23     on the agenda.

24         THE COURT:  Very well.  Are you ready to

25     proceed on that?

1          MR. BUSEY:  Yes, Your Honor.

2          THE COURT:  Go ahead.

3          MR. BUSEY:  Mr. Harden is in the courtroom and

4      he represents Visagent.

5          Your Honor, this is the Debtors' Motion to

6      Compel Discovery and a Motion for Protective Order.

7      At our last hearing, Your Honor granted our

8      Protective Order, so all we need to deal with today

9      is the Motion to Compel.

10          I should predicate my comments on a

11      description of what the Visagent claim is.

12      Visagent was a company that operated an Internet

13      service for the diversion of grocery goods.

14          "Diversion" is a term of art in the industry

15      in which people other than the manufacturers of

16      those goods, that is, wholesalers and retailers and

17      brokers, exchange new manufactured grocery goods in

18      an aftermarket.  And diversion refers to the

19      process by which buyers and sellers of diverted

20      goods come into contact with each other and

21      exchange those goods in payment.

22          Visagent had a software program by which that

23      diversion could be done electronically, on the

24      Internet.  Winn-Dixie and Visagent entered into an

25      agreement on June 28th of 2001 for three years, by

1    which Winn-Dixie agreed to use the Visagent

2    platform as the only source of Internet diversion

3    of goods for Winn-Dixie for full truckloads of

4    grocery goods.  Full truckloads as opposed to less

5    than full truckloads.  And that's a term defined in

6    the Visagent agreement.

7        The process didn't work.  Winn-Dixie

8    ultimately stopped using it.

9        The compensation to Visagent was going to be

10   two percent of all Winn-Dixie's sales of diverted

11   goods for the three-year period.  Because of the

12   falling out, Visagent, in 2004, just before the

13   bankruptcy, filed an action in the circuit court in

14   Jacksonville suing Winn-Dixie for breach of the

15   service agreement.

16       Several months later, Winn-Dixie filed its

17   petition in these proceedings, and Visagent filed a

18   proof of claim.  The proof of claim seeks damages

19   against Winn-Dixie for approximately $132 million

20   for, among other things, according to the

21   allegations of Visagent, the entire loss of the

22   enterprise value of Visagent, which became

23   insolvent.

24       So this is a material matter and Winn-Dixie

25   has taken it seriously.  It's objected to the

1    claim.

2        Winn-Dixie's defense to the claim is that

3    Visagent, not Winn-Dixie, breached the agreement,

4    and that Winn-Dixie doesn't owe Visagent anything.

5    And, to the contrary, Visagent owes Winn-Dixie a

6    return of its $25,000 deposit, precontract deposit.

7        That's the context for this dispute.

8        We've sent, in August of 2006, discovery

9    requests to Visagent, requests for production of

10    documents and interrogatories.

11        And in the motion, which I presume, Your

12    Honor, that you have by this time read, we are

13    asking the Court to enter an order compelling

14    Visagent to make better answers to a handful of

15    interrogatories and to produce documents, which

16    Visagent has objected to.

17        And I think the most efficient way for us to

18    address this matter at this point is for us to take

19    the interrogatories one by one and to deal with the

20    interrogatories and Visagent's objection and obtain

21    a ruling.

22        We regret bringing a discovery matter to the

23    Court.  We recognize our responsibilities to try to

24    work these matters out before we get here.  We have

25    had communications with Visagent's counsel, but

1     we've reached the point on these issues that we

2     haven't been able to resolve them and we simply

3     need the Court's assistance in resolution.

4          The first interrogatory --

5          MR. HARDEN:  Your Honor, before we go through

6     the interrogatories -- and, Steve, I apologize for

7     interrupting it -- may I kind of give our

8     background of the setting, because I think --

9          THE COURT:  Certainly.

10         MR. HARDEN:  -- you know, as we go through --

11    and I assume what Mr. Busey is proposing is we go

12    one by one and go back and forth.

13         THE COURT:  That's fine.

14         Initially, Mr. Harden, identify yourself for

15    the record.

16         MR. HARDEN:  Thank you very much, Your Honor.

17         I'm Paul Harden, and I represent Visagent on

18    this motion today.

19         THE COURT:  You may make your opening

20    statement.

21         MR. HARDEN:  I thank you, Your Honor.  And

22    wasn't Mr. Busey's opening statement quite

23    eloquent?

24         Your Honor, perhaps to put things in the

25    context of Visagent's position, notwithstanding

1        Winn-Dixie's position in their motion, Visagent is

2        not, in fact, a diverter.  It is, as Mr. Busey

3        indicated, a term of art.

4             A diverter would be more akin, I guess, in the

5        horse business, to a pen hooker or, in the real

6        estate business, a flipper.

7             In the context of Visagent, however, they were

8        a platform that diverters and other people and

9        manufacturers used.

10            Visagent would be more in the form of eBay,

11       where people come on to the system, the platform,

12       the software system, and do trades.  And diverters

13       use them, manufacturers use them and users use

14       them.  So it's not, I don't think, a fair context

15       to describe Visagent as a diverter.

16            And those are some of the conflicts that come

17       up in whether the discovery is too broad or

18       relevant, and so I wanted to place that context

19       initially.

20            Secondly, although Mr. Busey is accurate that

21       there was a lawsuit filed in the circuit court

22       early on, prior to these proceedings, we are

23       proceeding now on Visagent's claim, actually an

24       amended statement of claim, which Your Honor has

25       reviewed, I'm sure.

1              But it's a relatively detailed, three-page

2       claim that sets forth in detail the various causes

3       of action that Visagent has brought to this Court.

4              Winn-Dixie's response, however, is basically

5       one sentence, and it's contained in the omnibus

6       objections.  And it simply says, "There's no

7       liability for the breach of alleged service

8       agreement and related theories."

9              It then states what claimant's contention is,

10      that they breached -- that Winn-Dixie breached the

11      exclusivity, and then it says we have a

12      counterclaim.

13             So we are traveling today on a three-page

14      objection and a one-sentence -- I mean -- excuse

15      me -- a three-page claim and a one-sentence

16      objection.

17             And the importance of that is, Your Honor,

18      there are issues apparently raised for the first

19      time in these proceedings through the response to

20      discovery which suggests that Winn-Dixie has either

21      affirmative defenses or defenses that they have to

22      raise by some method other than a simple denial.

23             So I think it's important to note that, from

24      our position, the context of this is they've not

25      raised affirmative defenses, they haven't raised

1    issues that may be coming up and are proposed to be

2    in the discovery.

3        And our position would be, until those are

4    raised in a proper methodology, an affirmative

5    defense suit to put it in the adversarial

6    proceeding, then they're not relevant or questions

7    regarding them would be overbroad.

8        So let me also correct one other thing that

9    Mr. Busey indicated.  He described the contract as

10    only dealing with full and truckload-type products.

11    That's, I don't think, an accurate reading of the

12    contract.  The contract, of course, is part of the

13    proceedings, and that contract refers to full and

14    truckload-type items.

15        And then there's an exemption to the

16    exclusivity for less than truckload-type activity.

17    And that's going to come up in one of the

18    interrogatories, and that's why I raised that.  We

19    dispute that in fact as to what the agreement calls

20    for.

21        And with that, I'm prepared to walk through

22    the pleadings with Mr. Busey and Your Honor.

23        THE COURT:  Very well.

24        Mr. Busey.

25        MR. BUSEY:  The only reply, I think, that's

1     necessary to what Mr. Harden just said is that,

2     unlike the Rules of Civil Procedure in circuit

3     court, this is not an adversary proceeding.  This

4     is a claim against the Debtors to which we've

5     objected, thus creating a contested matter, and

6     pursuant to which Rules 7033 and 7026 of the

7     bankruptcy rules are applicable.  And it's those

8     rules which govern our dispute today.

9         I have, Your Honor, for the Court's

10    convenience and for Mr. Harden's convenience, a

11    notebook that contains the motion and the responses

12    and a number of matters that are pertinent to it,

13    and I'll make reference to these during the course

14    of the argument.

15        THE COURT:  Very well.

16        Mr. Harden, any objection to the Court looking

17    at this?

18        MR. HARDEN:  No, sir.

19        THE COURT:  Thanks.

20        MR. HARDEN:  I have great faith that the Court

21    can cull out what's important and what's not

22    important.

23        MR. BUSEY:  Your Honor, in the first instance,

24    I'll direct the Court's attention to page 3 of the

25    motion, which is under Tab A.  And that's where the

1       quoted interrogatories begin.

2              And in the first interrogatory --

3              MR. HARDEN:  Steve, I apologize.  What tab?  I

4       didn't hear what you said.

5              MR. BUSEY:  Tab A.

6              MR. HARDEN:  Tab A.  Thank you.

7              MR. BUSEY:  Page 3, paragraph 10 of the

8       motion, where the interrogatories and Visagent's

9       responses are quoted.

10             And the first interrogatory for which we seek

11      a better answer is an interrogatory in which we ask

12      for the total dollar volume of all of the purchase

13      and sales of consumer packaged goods, as set forth

14      in the service agreement, transacted through or in

15      relationship to the grocery exchange -- that's

16      Visagent's platform -- for the period 2001 through

17      present, including the dollar volume for all

18      purchases and sales attributed -- attributable to

19      the Debtors.

20             And Visagent's response is that Visagent does

21      not have immediate access to the answer to this

22      interrogatory, but will research and supplement

23      this response as soon as the information is

24      available.

25             Your Honor, this interrogatory is obviously

1    very critical to us because it deals with

2    Visagent's alleged damages.

3        And the response in the separate interrogatory

4    is that Visagent said that they've lost their

5    entire net worth because of Winn-Dixie's breach.

6    What we would like to have in the way of response,

7    either Visagent knows this stuff or they don't know

8    the answer to the question.  If they know the

9    answer to the question, they should say it.  And if

10   they don't know the answer to the question, they

11   should say that they don't know the answer, so that

12   they can't come forward in a subsequent proceeding

13   and purport to prove their damages after they've

14   given us this answer.

15       If they say that they don't know it, then they

16   have the obligation, under Rule 26E, subsequently

17   to supplement their answer if the information

18   becomes available to them or they acquire that

19   knowledge.  But, in the interim, we're entitled to

20   have them say they don't know the answer to the

21   question.

22       THE COURT:  Mr. Harden.

23       MR. HARDEN:  Yes, sir, Your Honor.

24       In conversations -- actually, the

25   conversations and the discussions haven't been

1        between Mr. Busey and I, they've been between Mr.

2        Rubin, who's lead counsel, and Mr. Gay in Mr.

3        Busey's office.

4            But Mr. Rubin has made them aware of the fact

5        that there was a computer that contained the

6        information regarding the activity of the business.

7            That computer was taken due to a security

8        interest in it.  The computer is now held by a

9        fellow named Steve Barth, whose name we provided it

10       to him.  He's the reason we don't have immediate

11       access.  We've gone to Mr. Barth to try to get it,

12       and we haven't been successful.

13           We've provided Mr. Barth's name to them.

14       We've indicated to them that we would provide his

15       address once we have it, and I think we'll have it

16       sometime early next week.

17           So the reason we don't have the immediate

18       access is because it's in the possession of someone

19       else.  We've sought to obtain it.  That's where we

20       are in the process.

21           Once we obtain it, we'll supplement the

22       interrogatory, or they can go to Mr. Barth and see

23       if they can get it through some methodology in the

24       Court as well.

25           MR. BUSEY:  Your Honor, yes, Mr. Harden is

1    right, they told us what he just said.

2        We went to the State of Florida Secretary of

3    State corporate records and looked at Visagent

4    Corporation, and the only officer or director

5    that's listed for Visagent is Steve Barth.  And the

6    records further show that the directors were

7    changed on February of 2005 from Mr. Rubin to Mr.

8    Barth.  And so what Visagent has told us doesn't

9    jibe with the public records of the state of

10   Florida.

11       And so that's what we get back to.  We want

12   Visagent to say, in a response to the

13   interrogatory, either Visagent knows the answer to

14   the question or it doesn't.

15       I have the corporate records here if Mr.

16   Harden or the Court would like to look at them.

17       MR. HARDEN:  No.  But the fact of the matter

18   is that Mr. Barth has the machines and that kind of

19   stuff.

20       THE COURT:  That's fine.  I'm going to compel

21   you to answer one way or the other.  You can

22   reserve the right to amend your answer in the

23   future.  You know, you need to do it in ample time

24   prior to any trial of the issue.

25       And this is sort of like in la-la land here.

1    I'll compel that you answer the interrogatory.

2        MR. HARDEN:  Your Honor, as we go through

3    these, I guess we'll have the same time frame as on

4    this first one.  What time frame?

5        I had asked -- let me just propose to the

6    Court, I had asked Mr. Rubin on those, you know,

7    because he's actually doing the discovery activity,

8    and he had proposed two weeks.  So 15 days, is that

9    okay?

10       THE COURT:  That's fine.  Whatever you guys

11   can agree on, Mr. Busey.

12       MR. BUSEY:  That's fine.

13       THE COURT:  And 15 days, is that plenty enough

14   time?  That will cover everything if I rule against

15   you?

16       MR. HARDEN:  He said 15.  Why don't I ask for

17   20, then he can't complain to me.

18       THE COURT:  I'm giving away days.  It doesn't

19   matter.  I've got plenty of days to give.  So

20   20 days will be fine.

21       MR. HARDEN:  I wish I had a lot of days to

22   give, Your Honor.

23       MR. BUSEY:  Your Honor, we'll keep track of

24   the rulings as we go through and we'll prepare an

25   appropriate order.

1          THE COURT:  I'm sure.

2          Number 5.

3          MR. BUSEY:  Number 5 is essentially the same

4     request as to different data on sales and

5     essentially the same answer.

6          MR. HARDEN:  Are you finished, Mr. Busey?

7          MR. BUSEY:  Yes, sir.

8          THE COURT:  Mr. Harden.

9          MR. HARDEN:  As to that information, it is the

10    same situation, the first part of it.

11         The second part, (ii), if you will, is really

12    a different issue.  They represent to the Court,

13    below Visagent's response, that the phrasing of the

14    interrogatory is based on language of the agreement

15    between Visagent and Winn-Dixie.  And this is a

16    draft of the agreement, whatever that means.

17         But that is not an accurate statement as to

18    the agreement.  Mr. Busey has the agreement in

19    there.

20         (i) describes what is covered in the

21    agreement.  (ii) then talks about an exemption, or

22    an exception, to the agreement.  But that is not a

23    term that -- less than full truckload or truckload

24    quantities are not a term that really is described

25    in the contract.

1        So I assume you're going to give the same

2    ruling on it.  But just so you'll know, that (ii)

3    is not in fact a -- does not describe transactions

4    that occurred with regard to this agreement.

5        And so our answer, assuming you're going to

6    make the same ruling, which I anticipate, will not

7    include information for (ii) but will explain our

8    position as to what (ii) references in the

9    agreement.

10       MR. BUSEY:  Your Honor, in response, I direct

11   the Court to the agreement itself, which is under

12   Tab D.  And if you turn to page 2 of Tab D, you'll

13   see the portion that we've highlighted.  And that's

14   where the term "full or truckload quantities of

15   consumer packaged goods" comes from.  And this is

16   an agreement that was drafted by Visagent.

17       And Mr. Harden is correct about the

18   exclusions.  If you see below the highlighted area,

19   there's a place for exclusions.  And then the

20   second bullet point under "Exclusions" is "Direct

21   user purchases for less than full or truckload

22   quantities."  And that's where that language came

23   from.  And so we've taken the language in the

24   interrogatory directly from the agreement.

25       MR. HARDEN:  Well, but the point -- may I,

1       Your Honor?

2            THE COURT:  Yes.

3            MR. HARDEN:  The point being that is not

4       something that's subject to this agreement.  A full

5       truck may not be a -- there may be a truckload and

6       a full truck, and a truckload may not have -- may

7       not be a full truck.

8            What the exclusions are deal with transactions

9       that aren't -- that don't come under this contract,

10      and therefore there wouldn't be a total volume of

11      less or full, there would only be the volume in

12      (i).  And, again, we'll explain that in our answer.

13           But Mr. Busey's point is the same as mine,

14      that there is an exclusion that says we're not

15      dealing with those type transactions in this

16      agreement.

17           MR. BUSEY:  And it's relevant to their

18      damages, and that's why they asked for the

19      information.

20           THE COURT:  I'll compel you to answer it.

21      It's just the same as the other one, 20 days.

22           MR. HARDEN:  With the understanding that we

23      can supplement additional information?

24           THE COURT:  Absolutely.

25           MR. HARDEN:  Yes, sir.

1            MR. BUSEY:  As provided for by Rule 7026(e).

2     They have both the opportunity and the obligation

3     to under that rule.

4            THE COURT:  I understand.  And Mr. Harden

5     understands that, too.

6            MR. BUSEY:  I know he does, Your Honor.  I

7     know he's familiar with the bankruptcy rules.

8            MR. HARDEN:  Mr. Busey, I took that to be

9     slightly tongue-in-cheek.  But I know that you

10    wouldn't say anything against me personally, so...

11           MR. BUSEY:  And nor would you.

12           MR. HARDEN:  No.

13           MR. BUSEY:  And in number 7, Your Honor, we've

14    asked Visagent to identify their officers,

15    directors and managers during the contract period

16    by their position, their job description and the

17    number of years in that position, and to identify

18    for each all former or current affiliations to or

19    relationship with any company or other legal entity

20    presently or formerly involved in the diverting of

21    grocery products.

22           Let me explain to you the materiality of that

23    to Winn-Dixie.  If you will look under Tab E,

24    you'll see the invitation for admission to the

25    Visagent grocery exchange, which was given to

1    Winn-Dixie in June of 2001 to induce it to enter

2    into the agreement, which is under Tab E.

3        And if you would turn the page to the second

4    page of that invitation, you'll see material to

5    Winn-Dixie -- and it's highlighted at the top of

6    the next page -- "Visagent is an independent

7    solutions provider.  Visagent has no ownership or

8    affiliated interest with any manufacturer, retailer

9    or diverter organization."

10        We came to find out in the course of this that

11    Visagent was operating another -- or principals of

12    Visagent were operating another diverter

13    organization in Visagent's offices, and that was

14    one of the reasons that the platform failed.

15        And because we want to address that

16    representation and the breach of it, that's why

17    we've asked for the information in interrogatory

18    number 7.

19        And you'll see that the response to the

20    interrogatory was that it was overbroad and that

21    they wouldn't -- and they didn't provide the

22    information.

23        THE COURT:  Mr. Harden.

24        MR. HARDEN:  Yes.  Which we've answered the

25    interrogatory, as you can see, Your Honor, by

1    listing the directors and then having what their

2    roles were.

3        I believe, in correspondence to Mr. Gay, Mr.

4    Rubin represented that Visagent had no other

5    information regarding officers or directors other

6    than what it was provided.

7        And they have no information regarding

8    engaging or -- or the ownership or affiliated

9    relationship with -- I guess they're talking about

10   diverters, is the only one that Mr. Busey made

11   reference to.  So that interrogatory has been

12   answered to the extent it's framed by the

13   objection.

14       But, again, we're at a point where they're

15   raising not part of their objection, they are

16   raising on the issue that they intend to raise at

17   some point, I guess, in litigation, but it's not an

18   issue framed by anything that's pending before the

19   Court now, and that's the relevancy and overbroad

20   objection.

21       It's whether or not Winn-Dixie, in fact, says

22   that the contract failed because of some

23   misrepresentation in the invitation and is not an

24   issue that's pending at this point.

25       MR. BUSEY:  Two points in reply, Your Honor.

1      First of all, there is a claim and there is an

2      objection.  Those are how the issues are phrased at

3      this point.

4          The discovery rules are applicable to a claim

5      and an objection without regard to any requirement

6      of a pleading of affirmative defenses, and so we're

7      entitled to ask reasonable discovery under Rule 33

8      and Rule 26.

9           That doesn't provide the basis for an

10     objection, even though the matter in which we've

11     inquired into may not have been specifically pled.

12         As the record stands, in spite of the

13     discussions between Mr. Rubin and Mr. Gay of our

14     office, as the record stands, there is an objection

15     to this interrogatory.

16          We think the interrogatory is reasonable,

17     it's relevant, and it should be answered.  If they

18     don't know of any such affiliation, all they need

19     to do is amend their responses and say so.

20         MR. HARDEN:  Well, Your Honor, in all due

21     respect, if you'll read the interrogatory, all

22     persons identified in the answers, in addition to 2

23     and 3, they list the folks' names and say what

24     their roles were, so it has been answered.

25          There is an issue raised -- and, I guess, it

1    kind of cuts to where we're heading with the whole

2    proceeding.  Mr. Busey keeps hinting at some point

3    these are going to be issues we deal with.

4        But notwithstanding the rules that he quoted,

5    there's a prima facie presumption on the claim they

6    have to raise issues that will dispute the claim

7    and then we come forward and prove our claim.

8        We can't be expected to anticipate and go out

9    and do their discovery on every potential

10    affirmative defense they might raise.

11        If they say:  What other businesses were all

12    your folks in?  Well, that's not any more relevant

13    than whether some of the other folks were diverters

14    at this point in the proceedings.

15        So we've answered the interrogatory.  We've

16    raised the issue in the response that, look, we're

17    not there yet.  We're trying to smoke out what the

18    affirmative defenses or what the defenses to the

19    claim are going to be.  But until we know what

20    those are, that's our full answer.

21        MR. BUSEY:  They haven't answered the question

22    regarding former or current affiliations with the

23    diverter.

24        MR. HARDEN:  Again, Your Honor, I think

25    it's -- we've answered the interrogatory and we've

1     said who the folks are.

2          THE COURT:  You're referring here to these

3     tabs.  I guess that's what those numbers are after

4     the people's names.  What's on those?

5          MR. HARDEN:  That describes what their

6     affiliations were with other --

7          THE COURT:  I don't have that, so I don't know

8     if those answer those questions or not.

9          MR. BUSEY:  I don't know what he's referring

10    to, Your Honor.

11         MR. HARDEN:  The numbers after the names, Mr.

12    Busey.

13         THE COURT:  It's the answer --

14         MR. HARDEN:  It has Robert Schiller, and then

15    there's a 3; Charles Clarkson, and then there's a

16    3.  The 1, 2, 3 and 4 describe the other --

17         MR. BUSEY:  May I have just a moment, Your

18    Honor?

19         THE COURT:  Certainly.

20         See, I thought those numbers were the number

21    of conflicts that they had that they were involved

22    in.

23         MR. BUSEY:  We thought it was the number of

24    years they were employed.  We have no idea what it

25    means.

```
 1          THE COURT:  You've heard those tabs.  Do you
 2     have copies of those, Mr. Harden?
 3          MR. HARDEN:  I don't have the answers to
 4     interrogatories here.  I apologize, Your Honor.
 5     Give me one second.
 6          THE COURT:  Well, the Court can't rule on it
 7     until I see what their answers were.
 8          MR. BUSEY:  Your Honor, I have a complete set
 9     of the answers to interrogatories.
10          THE COURT:  Well, if you'll pass them up and
11     let me take a look.
12          MR. BUSEY:  (Tenders documents.)
13          MR. HARDEN:  Your Honor, could I also ask you
14     to look, too, at the interrogatory identified in
15     the answer to interrogatories numbers 2 and 3, so
16     if you would start there, and then these -- and
17     then the names listed in response to 7 supplement
18     those.
19          MR. BUSEY:  And, again, our concern, Your
20     Honor, is there is no response to the interrogatory
21     regarding existing -- former or current
22     affiliations with other diverters.
23          THE COURT:  I think, under the rules, they're
24     entitled to know if any of these people were
25     involved in any other diverters or any competing
```

1    businesses, and I'm going to compel that you

2    disclose that.

3         MR. HARDEN:  Well, Your Honor, let me make

4    sure again.  Mr. Busey used the word "other

5    diverters," and you inadvertently used it, I'm

6    sure.  That's not what the interrogatory --

7         THE COURT:  If there were any diverters.

8         MR. HARDEN:  Right.  I just wanted to make

9    sure --

10        THE COURT:  I know they're platform people,

11   but they may have been involved in or had an

12   interest in diverters.

13        MR. HARDEN:  The interrogatory says "involved

14   in the diversion of grocery products."

15        THE COURT:  That's exactly what I want you to

16   produce, what they asked for.

17        Is 20 days enough on that?

18        MR. HARDEN:  Yes, sir.

19        THE COURT:  All right.  Number 8.

20        MR. BUSEY:  It asks for Visagent to identify

21   all officers, directors and managers of Global Food

22   Resources for the period of 2001 and their

23   positions and their affiliations with any other

24   company involved in the diverting of grocery

25   products.

1        The reason we asked that question is Global

2    Food Resources is an entity which we believe is

3    controlled by the principals of Visagent, and it is

4    the competing diverting organization that was

5    operated in Visagent's offices during the contract

6    period.

7        The objection to the request says that they

8    object to -- this seeks information regarding a

9    nonparty.

10       Well, it does seek information regarding a

11   nonparty, but it's information we believe Visagent

12   that has.  If we're wrong about that, all they have

13   to say is they don't know the answer to the

14   question.

15       THE COURT:  Mr. Harden.

16       MR. HARDEN:  Well, Your Honor, obviously, we

17   don't represent Global Food Resources, Inc., who

18   the managers and directors are of that, of a

19   third-party business that I don't represent, is

20   equally available to them as it is to us.

21       We could go out and research, I guess, and

22   see.  Obviously, they had access to the secretary

23   of state, because they've already told you they can

24   look up corporations.

25       I'm not sure why we have the burden of going

1       and looking to see the directors and officers of a

2       third party that we don't represent -- and that we

3       disagree is a diverter, just by the way -- and

4       would have to provide that information to them.

5              THE COURT:  Mr. Busey.

6              MR. BUSEY:  As long as it may likely lead to

7       the discovery of admissible evidence and it's

8       information that's known to the Defendant, it's a

9       reasonable request.

10             If they know about the answers to this

11      question, if they know the answer to this

12      interrogatory, they're obligated to respond to it

13      and say what the answer is.

14             If they don't know the answer to the

15      interrogatory, that's all they have to do, is say

16      they don't know.

17             THE COURT:  In other words, you don't have to

18      go look it up.  You can say we don't know.

19             MR. HARDEN:  I mean, that would be

20      disingenuous if we couldn't go look it up.  I think

21      the answer is, you know, why do we have to go do

22      something that they want to do?

23             THE COURT:  I'm not making you look it up.

24             MR. HARDEN:  Yeah.

25             THE COURT:  I'm just saying, if your company

1        out of its own personal knowledge could answer it,

2        fine; if they can't, tell them to go and look it

3        up.

4            MR. BUSEY:  And among the information --

5            THE COURT:  I don't see a problem with that.

6            MR. BUSEY:  And among the information we've

7        asked is what are the affiliations.

8            MR. HARDEN:  And the methodology -- I'm sorry.

9        I apologize, Steve.  Go ahead and finish.

10           MR. BUSEY:  And Visagent would know what the

11       affiliation is.  Or they don't know.  And all they

12       have to do is say they don't know.

13           MR. HARDEN:  Well, Judge, our -- I'm sorry.

14       Are you finished?

15           MR. BUSEY:  Yes.

16           MR. HARDEN:  Thank you, sir.

17           Our proper response under the rules, even the

18       federal rules, is to raise an objection if we think

19       it's irrelevant or compound or vague.  We've raised

20       our objection.  We're here today for you to rule on

21       our objection.

22           What Mr. Busey is saying is, notwithstanding

23       our objection, they probably could go -- I mean,

24       they would have -- you know, I mean, we have a

25       right to object to it if we don't think it's a

1      proper interrogatory.  And our basis, of course --

2      I mean, we're beating a dead horse.  This is not a

3      very complicated issue.

4           THE COURT:  It's not.  I don't think it's

5      overbroad, I don't think it's compound as to time

6      frames, I don't think it's vague as to the terms,

7      affiliation, relationship or diverting grocery

8      products other than as we've previously defined it

9      in this hearing, and, accordingly, I'm going to

10     compel discovery.

11          MR. HARDEN:  Yes, sir.

12          MR. BUSEY:  Your Honor, the next

13     interrogatories, numbers 9, 10, 11, 15 and 17, are

14     all similar.  We've asked Visagent to state the

15     facts, events and circumstances and identify the

16     documents which support the allegations in their

17     complaint as to several different paragraphs of the

18     complaint.

19          Now, that's a proper interrogatory.  And

20     they've objected as it being, in each instance, as

21     overbroad, discovery ongoing and, without waiver,

22     here's some information.

23          We would like to have the objection overruled

24     and they be required to answer the interrogatory,

25     giving us the data to support each of those

1       allegations.

2            THE COURT:  Wait.  Give me those numbers

3       again.  9 --

4            MR. BUSEY:  11, 15, 17.  And they're all

5       stated there in sequence.

6            MR. HARDEN:  Steve, you said last time 9, 10,

7       11 and 15.

8            THE COURT:  Yes.  Is there 10?  I have 10 in

9       the book.  Is that not one of them?

10           MR. BUSEY:  Yes.  Let me say it again:  9, 10,

11      11, 15, and 17.

12           THE COURT:  Thanks.

13           MR. HARDEN:  Your Honor, can we separate out

14      9, 10 and 11 and deal with 15 and 17?

15           THE COURT:  Sure.

16           MR. HARDEN:  Let me first go to those.

17           THE COURT:  15 and 17?

18           MR. HARDEN:  Yes.  For 15 and 17, I think Mr.

19      Rubin and Mr. Gay spoke.  Mr. Rubin indicated that

20      he would provide a more specific answer to

21      interrogatory number 15.

22           Likewise, on number 17, the interrogatory is

23      state the events, circumstances and identify

24      documents.  And then we've identified the service

25      agreement and those documents.

1           So as to 15, we'll provide more detail,

2      because I believe we have it.

3           As to 17, the extent of the scope of the

4      agreement as set forth in the agreement.  And just

5      like in response to our interrogatories, they

6      reference documents.  We've done that.

7           But as to 9, 10 and 11 --

8           MR. BUSEY:  Let me respond.

9           THE COURT:  Wait, wait.  Let me finish reading

10     your response here --

11          MR. HARDEN:  Yes, sir.

12          THE COURT:  -- in the interrogatory.

13          Okay.

14          MR. BUSEY:  As to 15 and 17, Your Honor, what

15     we've asked for in those two interrogatories is

16     that Visagent state the facts and identify

17     documents which support their allegations, which

18     are referred to in each of those two

19     interrogatories, allegations made by Visagent.

20          We would like to have the Court enter an order

21     overruling their objection and requiring them,

22     Visagent, to answer the interrogatory.

23          We're not satisfied with their maintenance of

24     an objection but volunteering to provide us some

25     additional information.

1          MR. HARDEN:  Was that only as to 15?

2          MR. BUSEY:  And 17.

3          MR. HARDEN:  Again, Your Honor, we're in a

4     catch-22 here.  Now, we've set forth a very

5     detailed claim.  We've explained the claim.  They

6     apparently have some defenses or affirmative

7     defenses to the claim.  We don't know what they

8     are.  They're having us go through and set forth

9     information, I guess, so they can help frame their

10    affirmative defenses.

11         What we've said is:  Here's the documents, our

12    claim is set forth in the documents.  Other than

13    that, you're asking us for -- the information

14    you're asking is overbroad as to 15 and 17.

15         And so I -- those interrogatories have been

16    answered as to the status of the claim.  If there's

17    other information that's going to come out in the

18    litigation, then, when it comes out, it comes out.

19         But we responded to 15 and 17.

20         THE COURT:  I think -- and I don't need to

21    speak for Mr. Busey.  He very well can speak for

22    himself.  I think what he's trying to say is we

23    won't say this is it.  We'll supplement in

24    accordance with the rules if we find something

25    else, not to leave it open and then you come to

1          trial with more documents that he hasn't had.

2              And I don't mean to speak for you, Mr. Busey.

3          I think you're able to say.  But I think that's

4          what you're trying to say.  Just either answer it,

5          and then supplement it if the rules require you to

6          supplement it later down the road.

7              MR. BUSEY:  That's right, Your Honor.

8          Literally, we want the objection overruled.  As

9          long as there is an obligation, then they don't

10         have an obligation to fully answer the question.

11             THE COURT:  All right.  Based on my

12         discussion, I'm going to overrule the objection.

13         Just answer it.

14             MR. HARDEN:  Well, if you overrule the

15         objection, we can stand with our answers as to 15

16         and 17.

17             THE COURT:  Okay.

18             MR. HARDEN:  Now, may we go back to 9, 10 and

19         11?

20             THE COURT:  No.  You forfeited those, you

21         forfeited those.

22             MR. HARDEN:  Okay.

23             THE COURT:  No.  I'll go back, I'll go back.

24             MR. HARDEN:  I like the secret rules around

25         here, though.

1        Now, let's start with, the interrogatory

2    doesn't go just to the amended statement of claim.

3    As Your Honor is aware, there was a pending lawsuit

4    in circuit court.  And what they've said, they've

5    asked us to give them a detailed explanation of

6    activity related to the circuit court action.

7        Now, in the circuit court, they raise some

8    affirmative defenses and that sort of thing and

9    it's a whole separate situation.  I don't think --

10   and the objection is it's overbroad because they're

11   asking us about something that's not pending before

12   this Court.

13       The amended statement of claim, we could

14   provide an explanation again consistent with what

15   we know to date.  But the objection of being

16   overbroad deals with other proceedings other than

17   the ones before this Court.

18       MR. BUSEY:  Your Honor, the issue before the

19   Court is whether or not this interrogatory may lead

20   to the discovery of admissible evidence.  If

21   Visagent has made an allegation in Alaska regarding

22   this dispute, we're entitled to discovery about it.

23       MR. HARDEN:  I'm sorry, Your Honor, but Mr.

24   Busey's suggestion is that overbroad is not an

25   appropriate response -- is not an appropriate

1    objection.  I would respectfully disagree.  And

2    that's the way the issue is raised, by objection to

3    the interrogatory as being overbroad.

4         THE COURT:  Objection overruled.

5         MR. HARDEN:  Is that as to 9, 10 and 11, Your

6    Honor?

7         THE COURT:  9, 10 and 11.

8         MR. BUSEY:  That brings us to the document

9    request, Your Honor, which is on page 6 of the

10   motion.  We'll start with document request number

11   5.

12        We asked them for documents evidencing the

13   allegations in the complaint they filed in the

14   circuit court action.  So this, essentially, is

15   what we have just argued about.

16        THE COURT:  I think I've already ruled on

17   that.

18        MR. HARDEN:  Well, Your Honor, evidence --

19   we've produced to them 1,400, 1,500 documents

20   already.  All of those evidence the allegations of

21   the complaint and the -- I mean, the claim.

22        I guess our issue here is as to the term

23   "evidencing."  I mean, I'm not sure.  We don't want

24   to get caught with the Court saying, well, you

25   didn't give them something when, in fact, I guess

1      every document that has to deal with this case

2      evidences the objection -- I mean, the claim, it

3      evidences the objection, it evidences the damages

4      claim.

5          I mean, the term is that they've asked us to

6      do is evidencing, and we think that that's overly

7      broad and vague.

8          THE COURT:  And I don't mean to speak again

9      for them, but you can't bring something in later

10     that you didn't furnish to them during discovery

11     and say this is proof of our claim, evidence of our

12     claim.

13         If you say, what we've submitted is all we

14     have as evidence to the claim, you're stuck with

15     that unless you supplement it prior to trial.

16         That's the way I interpret what you're asking

17     for.

18         MR. BUSEY:  That's exactly what we're trying

19     to do, Your Honor.

20         MR. HARDEN:  Well, if that's your ruling.

21         THE COURT:  That's my ruling.

22         MR. HARDEN:  Then that would go to, I guess, 5

23     through 9, then.

24         THE COURT:  Yes.

25         MR. BUSEY:  Does that take us to 12, on page

1    7?

2        MR. HARDEN:  That is what I believe, Mr.

3    Busey.

4        THE COURT:  12.

5        MR. BUSEY:  We ask in 12 for all documents

6    evidencing purchase or sale of any goods listed or

7    sold through the grocery exchange during the

8    contract period.  And that's really relevant to two

9    issues in the case.

10       One is Winn-Dixie's defense that Visagent had

11   an inadequate amount of goods listed in the

12   exchange to make it viable -- and Visagent is well

13   aware of that defense, because it's the subject of

14   a lot of discussion between Visagent and

15   Winn-Dixie -- and it's also relevant to damages.

16   And that's the reason we wanted that information.

17       MR. HARDEN:  Your Honor, we're getting back

18   again to they're raising defenses by their comments

19   to you, and this is on every one of these.

20       At some point, I think we should be entitled

21   to know what their defenses are.  And if they're

22   going into this discovery and now saying:  Give us

23   everything that you've got that evidences this

24   claim, we want to know what those defenses are.

25       And whether or not Mr. Busey and Mr. Rubin or

1      Mr. Gay and Mr. Rubin had some discussion about a

2      defense, it's not a defense in these proceedings.

3      At some point, they have to set forth their

4      defenses.

5          At that time, then the information they're now

6      asking becomes relevant.  Until then, it's not

7      relevant.

8          What they're saying is tell us -- give us a

9      list of every sale that occurred for a period of

10     two and a half, three years.  And, clearly, if it's

11     not relevant to any of the matters that are in the

12     proceeding, then it's overbroad as to the discovery

13     request.

14         MR. BUSEY:  Your Honor, respectfully, to Mr.

15     Harden, there's no requirement in the bankruptcy

16     rules that an affirmative defense in a contested

17     matter need to be specifically pled before there

18     can be discovery relating to it under Chapter 7000.

19         THE COURT:  He's right.

20         MR. HARDEN:  Well, Your Honor, Mr. Busey

21     probably knows I probably don't know whether he's

22     right or not.  He might be saying that.  But I

23     trust his word on that.

24         But let me ask it this way, then, Your Honor.

25     At what point are the issues going to be joined so

1    that we know what their defenses are?  I think that

2    we would then be entitled to --

3         THE COURT:  Let me explain this.

4         MR. HARDEN:  Yes, sir.

5         THE COURT:  Your claim that you filed --

6         MR. HARDEN:  Yes, sir.

7         THE COURT:  -- is presumed valid.

8         MR. HARDEN:  Yes, sir.

9         THE COURT:  The presumption is in your favor.

10        MR. HARDEN:  Right.

11        THE COURT:  And the Debtor has the duty --

12        MR. HARDEN:  Right.

13        THE COURT:  -- the initial burden, to overcome

14   that.

15        MR. HARDEN:  Right.

16        THE COURT:  And he needs to get this

17   information to do it.  If this is going to be a

18   long, drawn-out trial, I'll probably have -- I'm

19   going to issue a trial order and you're going to

20   have to narrow the issues and know what they are.

21        MR. HARDEN:  That was the question I was

22   asking.

23        THE COURT:  Because we're going to get to that

24   point --

25        MR. HARDEN:  Right.

1          THE COURT:  -- one day if you don't resolve

2     it.

3          MR. HARDEN:  Right.

4          THE COURT:  And it will probably be a two-day

5     trial or more.  And I'll do a long trial order that

6     tells you to file trial briefs and narrow the

7     issues and do all that kind of stuff.

8          MR. HARDEN:  May I --

9          THE COURT:  Right now, you're riding on the

10    top of the wave --

11         MR. HARDEN:  Right.

12         THE COURT: -- and they're trying to shoot you

13    down.

14         MR. HARDEN:  I understand that.

15         THE COURT:  And when you start discovery,

16    they're going to have to be, you know, just as

17    diligent.

18         MR. HARDEN:  Thank you, Your Honor.  I take it

19    that was an overruling.

20         THE COURT:  You've got it.

21         MR. BUSEY:  And I think that disposes, Your

22    Honor, of 12, 17 and 21.

23         MR. HARDEN:  Well, 17 is a different issue.

24    In 17, they've asked for object -- complaints by

25    anyone about the exchange.

1          And, you know, some of that we -- we don't

2     have that listing, although there's a methodology

3     to get it, and we've offered to do that.

4          But I understand your earlier ruling is, if

5     you don't know it, tell them you don't know; if you

6     do know later on, supplement it.

7          THE COURT:  Right.

8          MR. HARDEN:  See how quick I catch on?

9          THE COURT:  What's next?

10         MR. BUSEY:  The last one is document request

11    number 21.  We asked for documents that evidenced

12    their claim for damages, and they objected.  They

13    think that's too broad.

14         MR. HARDEN:  Yes.  And, Your Honor, again,

15    we're in a position that we'll have to be

16    supplementing down the road, I guess.  But I've

17    understood your rulings on those issues.

18         THE COURT:  Very well.  And that will be taken

19    care of.

20         MR. HARDEN:  And I understand we have a right

21    to do that.

22         MR. BUSEY:  And that concludes our motion,

23    Your Honor.  We will prepare and submit to Mr.

24    Harden for his prior review a proposed order.

25         THE COURT:  Sounds good.

1              MR. HARDEN:  Steve, would you send it to Guy

2      and me?  I'm going to be gone tomorrow.

3              MR. BUSEY:  Yes.

4              MR. HARDEN:  Thank you.

5              THE COURT:  Hearing is concluded.

6              (Whereupon, the hearing was concluded at 2:25

7      p.m.)

8                          - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                 C E R T I F I C A T E

2   STATE OF FLORIDA   )

3   COUNTY OF DUVAL     )

4            I, Elizabeth M. Masters, Registered

5   Professional Reporter, and a Notary Public, State of

6   Florida at Large, do hereby certify that the attached

7   excerpt represents the proceedings before the United

8   States Bankruptcy Court, Middle District of Florida,

9   Jacksonville Division, before the Honorable Jerry A.

10  Funk, Bankruptcy Judge, in the matter of In Re:

11  Winn-Dixie Stores, Inc.; such transcript is an accurate

12  recordation of the proceedings which took place.  A

13  transcript of this proceedings has been produced on

14  June 29, 2007.

15

16

17                          STATEWIDE REPORTING SERVICE

18

19                          _____
                            ELIZABETH M. MASTERS, RPR,
20                          NOTARY PUBLIC, STATE OF
                            FLORIDA AT LARGE.
21

22

23

24

25