## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

## <u>NOTICE OF FILING</u>

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors in possession, give notice of filing of the attached Final Report of the Review and Analysis prepared by Stuart Maue, Fee Examiner, of the Sixth Interim and Final Fee Application of XRoads Solutions Group, LLC, Financial and Operations Restructuring Consultants to the Debtors, for the sixth interim period from October 1, 2006, through and including November 21, 2006, and for the final period from February 21, 2005, through and including November 21, 2006.

Dated: July 18, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By    *s/ D. J. Baker*
    D. J. Baker
    Sally McDonald Henry
    Rosalie Gray

Four Times Square
New York, NY  10036
(212) 735-3000
(917) 777-2150 (facsimile)
djbaker@skadden.com

Co-Counsel for Debtors

SMITH HULSEY & BUSEY

By    *s/ Cynthia C. Jackson*
    Stephen D. Busey
    James H. Post
    Cynthia C. Jackson

Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, FL  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Co-Counsel for Debtors

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

### Fee Examiner's Report for Sixth Interim and Final Fee Application of XRoads Solutions Group, LLC

Stuart Maue, acting in its capacity as fee examiner in the above-captioned proceeding, submits the final written report of its review and analysis of the XRoads Solutions Group, LLC, Sixth Interim Fee Application for period from October 1, 2006, through November 21, 2006 and the Final Fee Application for the period from February 21, 2005, through November 21, 2006.

1.      On December 14, 2005, the Court entered an order effective December 1, 2005, authorizing the employment and retention of Stuart Maue to serve as fee examiner and to review all fee applications filed with the Court and the statements submitted by professionals retained by Wachovia Bank, N.A. in its capacity as agent for itself and other postpetition lenders (the "Agent").

2.      Stuart Maue conducted a review and analysis of the fees and expenses requested by XRoads Solutions Group, LLC for the sixth interim period and prepared a written report including exhibits of that review, which is attached and incorporated by reference.

3.     In addition, Stuart Maue reviewed the fees and expenses requested by XRoads Solutions Group, LLC in all prior interim periods and filed a written report for each interim fee application with the Court.

4.     The attached report includes a Summary of Findings for Final Period, which displays the fees and expenses requested by XRoads Solutions Group, LLC by interim and final periods.  Also displayed are differences, if any, between the amounts requested by the firm and the amounts computed by Stuart Maue and any reductions in the fees and expenses taken by the firm in its fee applications or in its responses to the initial Stuart Maue reports.  In addition, the fees and expenses identified by category from each interim report along with a total for the final period are shown in this summary.

STUART MAUE

By _____
    Linda K. Cooper
    3840 McKelvey Road
    St. Louis, Missouri  63044
    314-291-3030
    314-291-6546 (facsimile)

    Fee Examiner

**ATTACHMENT 1**

# Final Report of the
# Review and Analysis of

# Sixth Interim and Final Fee Application Submitted by

## XROADS SOLUTIONS GROUP, LLC
## of
## New York, New York

For the Interim Period


For the Interim Period

**October 1, 2006 Through November 21, 2006**

And

For the Final Period

**February 21, 2005 Through November 21, 2006**



In the Matter Entitled


*In re:  Winn-Dixie Stores, Inc., et al.*


**United States Bankruptcy Court**
**Middle District of Florida**
**Jacksonville Division**

**Case No. 05-03817-3F1**



Issued

**May 4, 2007**

*Stuart Maue*

## XROADS SOLUTIONS GROUP LLC

### SUMMARY OF FINDINGS FOR SIXTH INTERIM PERIOD

#### Sixth Interim Application (October 1, 2006 Through November 21, 2006)

### A.    Amounts Requested and Computed

| | | |
|---|---|---|
| Fees Requested | $736,057.50 | |
| Expenses Requested | 37,106.63 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $773,164.13 |
| | | |
| Fees Computed | $736,224.50 | |
| Expenses Computed | 37,106.63 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $773,331.13 |
| | | |
| Discrepancy in Fees: | | |
| Rounding Difference Due to Prorating of Fees for November 2006 | ($167.00) | |
| | | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | ($ 167.00) |

### B.    Professional Fees

#### 1.    Technical Billing Discrepancies

| Page No. | | Exhibit | Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|---|
| 7 | Potential Double Billing | B-1 | 1.80 | $ 726.00 | * |
| 7 | Post-Confirmation Billing | B-2 | 85.80 | 28,675.50 | 4% |
| 7 | Potential Wrong Case Billing | B-3 | 0.60 | 60.00 | * |

#### 2.    Compliance With Billing Guidelines

| Page No. | | Exhibit | Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|---|
| 8 | Fees Attributable to Hourly Rate Increases | C-2 | | $11,586.00 | 2% |
| 11 | Intraoffice Conferences | D | 158.10 | 64,568.00 | 9% |
| 11 | Intraoffice Conferences – Multiple Attendance | D | 137.30 | 56,332.00 | 8% |

---

* Less than 1%

*Stuart Maue*

**SUMMARY OF FINDINGS FOR SIXTH INTERIM PERIOD (Continued)**

| Page No. | | Exhibit | Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|---|
| 12 | Nonfirm Conferences, Hearings, and Other Events | E | 106.70 | $46,186.00 | 6% |
| 12 | Nonfirm Conferences, Hearings, and Other Events – Multiple Attendance | E | 59.10 | 25,246.00 | 3% |

### 3.    Fees to Examine for Necessity, Relevance, and Reasonableness

| Page No. | | Exhibit | Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|---|
| 13 | Personnel Who Billed 10.00 or Fewer Hours | F | 2.40 | $ 1,040.00 | * |
| 14 | Days Billed in Excess of 12.00 Hours | G-1 | 112.40 | 44,398.00 | 6% |
| 15 | Administrative/Clerical Activities by Paraprofessionals | H | 100.20 | 8,517.00 | 1% |
| 16 | XRoads Retention and Compensation | I-1 | 174.80 | 28,271.50 | 4% |
| 16 | Response to Fee Examiner Report | I-2 | 264.00 | 89,807.00 | 12% |

### C.    Expenses

### 1.    Technical Billing Discrepancies

| Page No. | | Exhibit | Amount |
|---|---|---|---|
| 18 | Expenses Incurred Post-Confirmation | J | $1,917.99 |

### 2.    Compliance With Billing Guidelines

| Page No. | | Exhibit | Amount |
|---|---|---|---|
| 20 | Travel Expenses – Airfare | K-1 | $15,938.33 |
| 20 | Travel Expenses – Hotel Charges | K-2 | 10,405.21 |
| 20 | Working Meals | K-3 | 1,441.16 |
| 20 | Travel Expenses – Car Rental | K-4 | 5,613.85 |
| 20 | Travel Expenses – Taxi/Train Fare | K-5 | 1,043.00 |
| 20 | Travel Expenses – Mileage | K-6 | 415.20 |
| 20 | Travel Expenses – Parking | K-6 | 1,724.00 |
| 24 | Internal Photocopying | | 39.60 |

---

* Less than 1%

*Stuart Maue*

**SUMMARY OF FINDINGS FOR SIXTH INTERIM PERIOD (Continued)**

D.    **Adjustment to Eliminate Overlap Between Categories**

1.    **Fees**

| Page No. | | Before Adjustment for Overlap | | Overlap | | After Adjustment for Overlap | |
|---|---|---|---|---|---|---|---|
| | | **Hours** | **Fees** | **Hours** | **Fees** | **Hours** | **Fees** |
| 15 | Administrative/Clerical Activities by Paraprofessionals | 100.20 | $ 8,517.00 | 0.00 | $0.00 | 100.20 | $ 8,517.00 |
| 12 | Nonfirm Conferences, Hearings, and Other Events – Multiple Attendance | 59.10 | 25,246.00 | 0.00 | 0.00 | 59.10 | 25,246.00 |
| 11 | Intraoffice Conferences – Multiple Attendance | 137.30 | 56,332.00 | 0.00 | 0.00 | 137.30 | 56,332.00 |
| 13 | Personnel Who Billed 10.00 or Fewer Hours | 2.40 | 1,040.00 | 0.00 | 0.00 | 2.40 | 1,040.00 |

*Stuart Maue*

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................ 1

II.   PROCEDURES AND METHODOLOGY .......................................... 2
      A.    Appendix A ..................................................................... 2
      B.    Overlap Calculation ........................................................ 3

III.  RECOMPUTATION OF FEES AND EXPENSES ........................... 3

IV.   REVIEW OF FEES FOR SIXTH INTERIM PERIOD ....................... 7
      A.    Technical Billing Discrepancies ........................................... 7
            1.    Potential Double Billing ........................................... 7
            2.    Post-Confirmation Billing ....................................... 7
            3.    Potential Wrong Case Billing .................................. 8
      B.    Compliance With Billing Guidelines ..................................... 8
            1.    Firm Staffing and Rates........................................... 8
                  a)    Timekeepers and Positions ............................. 8
                  b)    Hourly Rate Increases .................................. 10
            2.    Time Increments ................................................... 10
            3.    Complete and Detailed Task Descriptions.................... 10
            4.    Blocked Entries .................................................... 11
            5.    Multiple Professionals at Hearings and Conferences ...... 11
                  a)    Intraoffice Conferences ............................... 11
                  b)    Nonfirm Conferences, Hearings, and Other Events ...... 12
      C.    Fees to Examine for Necessity, Relevance, and Reasonableness......... 13
            1.    Personnel Who Billed 10.00 or Fewer Hours ............... 13
            2.    Long Billing Days ................................................. 14
            3.    Administrative/Clerical Activities ........................... 15
            4.    Legal Research ..................................................... 16
            5.    Travel ................................................................. 16
            6.    Summary of Projects .............................................. 16

V.    REVIEW OF EXPENSES FOR SIXTH INTERIM PERIOD ............... 18
      A.    Technical Billing Discrepancies ........................................ 18
            1.    Expenses Incurred PostConfirmation........................ 18
      B.    Compliance With Billing Guidelines ................................... 19
            1.    Complete and Detailed Itemization of Expenses ........... 19
            2.    Travel Expenses................................................... 20
                  a)    Airfare ............................................... 20
                  b)    Lodging ............................................... 21

Stuart Maue

**TABLE OF CONTENTS (Continued)**

**Page No.**

(1) Apartment Rentals ..... 21
(2) Hotel ..... 21
c) Meals ..... 22
d) Ground Transportation ..... 22
(1) Car Rental ..... 23
(2) Taxi/Train Fares ..... 23
(3) Mileage and Parking ..... 24
3. Photocopies ..... 24

VI. SUMMARY OF FINDINGS FOR FINAL PERIOD ..... 25
A. Total Fees and Expenses and Differences ..... 27
B. Reductions by Firm and Revised Requested Amounts ..... 27
C. Professional Fees ..... 28
D. Expenses ..... 30

*Stuart Maue*

# TABLE OF EXHIBITS

<u>Page No.</u>

A.      Schedule of Hours and Fees for Fixed Minimum and Over Threshold Fees .............. 3

B-1.    Potential Double Billing
B-2.    Post-Confirmation Billing
B-3.    Potential Wrong Case Billing ...................................................................... 7

C-1.    Summary of Hours and Fees by Timekeeper and Position
C-2.    Schedule of Fees Attributable to Hourly Rate Increases ...................................... 8

D.      Intraoffice Conferences ............................................................................ 11

E.      Nonfirm Conferences, Hearings, and Other Events ........................................... 12

F.      Personnel Who Billed 10.00 or Fewer Hours.................................................. 13

G-1.    Days Billed in Excess of 12.00 Hours
G-2.    Daily Calendar.................................................................................... 14

H.      Administrative/Clerical Activities by Paraprofessionals ...................................... 15

I-1.    XRoads Retention and Compensation
I-2.    Response to Fee Examiner Report ............................................................... 16

J.      Expenses Incurred Post-Confirmation.......................................................... 18

K-1.    Travel Expenses – Airfare
K-2.    Travel Expenses – Hotel Charges
K-3.    Working Meals
K-4.    Travel Expenses – Car Rental
K-5.    Travel Expenses – Taxi/Train Fare
K-6.    Travel Expenses – Mileage and Parking.......................................................20

*Stuart Maue*

## I.    <u>INTRODUCTION</u>

The United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, entered an order effective December 1, 2005, authorizing the employment and retention of Stuart, Maue, Mitchell & James, Ltd. ("Stuart Maue") to serve as fee examiner in the jointly-administered cases entitled:    *In re: Winn-Dixie Stores, Inc., et al.,* Case No. 05-03817-3F1.    The order authorized and directed Stuart Maue to review all fee applications filed with the Court and to review the statements submitted by professionals retained by Wachovia Bank, N.A. in its capacity as agent for itself and other post petition lenders (the "Agent").

The review and analysis of the professionals' fee applications are pursuant to the applicable standards of 11 U.S.C. §§ 330 and 331, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the local rules of this Court (the "Local Rules"), and the United States Trustee Guidelines for Reviewing Applications for the Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "U.S. Trustee Guidelines"). The statements submitted by the professionals retained by the Agent are reviewed and analyzed pursuant to a reasonableness standard as referenced in 11 U.S.C. § 328 and the Bankruptcy Rules.

Stuart Maue conducted a review and analysis of the "Sixth Interim and Final Fee Application for Allowance and Payment of Compensation and Reimbursement of Expenses of XRoads Solutions Group, LLC, as Financial and Operations Restructuring Consultants for the Period October 1, 2006 to November 21, 2006 and Final Approval of Compensation and

*Stuart Maue*

**I.  INTRODUCTION  (Continued)**

Reimbursement of Expenses for the Period February 21, 2005 through and including November 21, 2006" (the "Application").  XRoads Solutions Group, LLC ("XRoads") located in New York, New York, represents the Debtors as financial and operations restructuring consultants.

The report for the sixth interim period includes the review and analysis of the fees and expenses, the exhibits displaying the categorized fees and expenses, and the summary of findings for this period.

Also included in the report is the Summary of Findings for the final period, which displays the totals for the fee and expense categories by interim periods and by final period. This Summary of Findings also displays the fee and/or expense discrepancies identified in the interim reports and voluntary reductions included in the fee applications or reductions as a result of responses to the interim audit reports.

Stuart Maue prepared an initial written report of the review and analysis of the Application and provided it to XRoads and the U.S. Trustee for review prior to completing the final written report.  Stuart Maue did not receive a response from XRoads to the initial report.

**II.    PROCEDURES AND METHODOLOGY**

    **A.    Appendix A**

        Stuart Maue's procedures and methodology for reviewing fees and expenses and for information regarding the exhibits are presented in Appendix A provided with this report.

*Stuart Maue*

II.  PROCEDURES AND METHODOLOGY  (Continued)

B.      Overlap Calculation

During Stuart Maue's review and analysis, a task or entry may be included in more than one category and appear on more than one exhibit.  For example, a task or entry may be classified as both blocked billing and intraoffice conference.  When a task or entry is included in more than one category, "overlap" occurs among the hour and fee calculations for those categories.  In order to ensure that the hours and fees for a task or entry are not "counted" more than once in any reduction of fees, Stuart Maue calculated the overlap.[1]   The overlap calculation is displayed in Section D of the Summary of Findings and includes the totals for each category before and after the calculation for overlap and the total dollar amount of the overlap in each category.

III.    RECOMPUTATION OF FEES AND EXPENSES

XRoads requested the following professional fees and expenses in the Application for the sixth interim period:

|  |  |
|---|---|
| Professional Fees Requested: | $736,057.50 |
| Expense Reimbursement Requested: | 37,106.63 |
| Total Fees and Expenses: | $773,164.13 |

The Application requested the allowance and approval of interim compensation of fees incurred pursuant to the terms of a letter dated March 4, 2005, from XRoads to the Debtors

---

[1]The overlap calculation does not include the categories for hourly rate increases or days billed in excess of 12.00 hours.  The classification of these categories is based on the total hours and fees billed for the category and not on individual entries within the category.  A review of these two categories allows a determination of the reasonableness of the total fees attributable to hourly rate increases and the time billed in excess of 12.00 hours. Overlap calculations for hourly rate increases and long billing days are available upon request to Stuart Maue.

*Stuart Maue*

### III.  RECOMPUTATION OF FEES AND EXPENSES  (Continued)

(the "Engagement Letter").  The Engagement letter provided that "XRoads will charge the Company a fixed minimum fee of $200,000.00 per month during the Post-Petition Period (the 'Monthly Fees') for XRoads services...provided that if XRoads' personnel's time spent 'performing the Services' (as defined above) total more than 400 hours in any calendar month ...then the Company shall pay XRoads for such additional hours at the rate of $400.00 per hour ('Hourly Fees')."    Further, the Engagement Letter provided that "...administrative non-professional services performed in connection with the Engagement shall be charged at rates of $85.00 - $160.00 per hour ('Admin Fees') and such administrative services shall not be applied towards the 400 hour threshold provided for above."

XRoads incurred a gross amount of 1,736.60 hours of professional services during this Application Period.  XRoads charged the Debtors a net amount of 1,553.20 hours (a voluntary reduction of 183.40 hours).    Pursuant to XRoads' engagement agreement, the first 400.00 hours for October 2006, and 267.00 hours for November 2006[2] were capped at $200,000.00 and $133,333.00, respectively.    The remaining 886.20 hours are billed at $400 per hour.    According to the Application, XRoads also charged a gross amount of 428.50 hours for nonprofessional services during this interim period of which 387.00 hours were billed.

---

[2] The fees for November 2006 were prorated to include only November 1, through November 21, 2006

*Stuart Maue*

### III.  RECOMPUTATION OF FEES AND EXPENSES  (Continued)

In order to identify the fee entries that were included in the "fixed minimum fee," Stuart Maue selected entries of the professional staff beginning October 1, 2006, and continued each day thereafter until the entries totaled 400.00 hours.  These entries were classified as "fixed minimum fee" entries and assigned an hourly billing rate of $500.00 ($200,000.00 ÷ 400.00 = $500.00).  The entries of the professional staff that remained each month after classification of the "fixed minimum fee" were designated as "above threshold fee" and assigned an hourly billing rate of $400.00.  The fixed fee minimum of $200,000.00 for October was reached on October 12, 2006, and the minimum of $133,333.00 for November was reached on November 13, 2006.  A schedule that displays the hours and fees billed by each professional at the fixed minimum fee rate and the over threshold rate is shown on EXHIBIT A.

Stuart Maue identified the entries billed by XRoads as nonprofessional services and classified them as "nonprofessional fees."  These fee entries are not included in either the "fixed fee minimum" entries or the "above threshold fee" entries.  For purposes of this report, Stuart Maue has identified those timekeepers whose fees are included as nonprofessional fees as "paraprofessionals."

The recomputation of fees revealed that the requested amount was $167.00 less than the computed amount.  The difference is due to rounding related to the prorating of the fees for November 2006.  Because the reduction is not reflected in the fee entries, the exhibits to this report are based on the unreduced fees included in the "Detail Time Entries" shown on

*Stuart Maue*

**III.  RECOMPUTATION OF FEES AND EXPENSES  (Continued)**

Exhibit "5" of the Application.    The recomputation of expenses did not reveal any discrepancies.

*Stuart Maue*

## IV.    REVIEW OF FEES FOR SIXTH INTERIM PERIOD

### A.    Technical Billing Discrepancies

Stuart Maue examined the billing entries for apparent irregularities such as double billing, post-confirmation billing, wrong case billing, and missing task descriptions. The following technical billing discrepancies were identified:

### 1.    Potential Double Billing

The Application was examined for billing entries that appear to be duplicated (i.e., on the same date by the same timekeeper with identical or nearly identical descriptions and time increments). Entries classified as potential double billing are displayed on EXHIBIT B-1 and total 1.80 hours with $726.00 in associated fees. The questioned tasks are marked with an ampersand **[&]** on the exhibit.

### 2.    Post-Confirmation Billing

Included in the Application were fee entries dated after the Effective Date (November 21, 2006) of the Joint Plan of Reorganization. Stuart Maue identified 49 entries billed after November 21, 2006, and those entries were classified as post-confirmation billing. All of the entries billed post-confirmation were related to the response to the fee examiner's interim reports. XRoads did not provide responses to its initial reports to Stuart Maue; however, it did file a response to the first, second, third, and fourth initial reports with the Court on December 19, 2006. Entries classified as

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)**

post-confirmation billing are displayed on EXHIBIT B-2 and total 85.80 hours
with $28,675.50 in associated fees.

    **3.**    **Potential Wrong Case Billing**

        Stuart Maue identified one entry billed on November 3, 2006, by
paraprofessional Carla Cooper that appears to be billed to the wrong case
matter.  Ms. Cooper billed 0.60 hour to "Prepare hour by category by week for
D. Ragan for her time on Prediwave."  The entry classified as potential wrong
case billing is displayed on EXHIBIT B-3 and totals 0.60 hour with $60.00 in
associated fees.

**B.**    **Compliance With Billing Guidelines**

        Stuart Maue reviewed and analyzed the fees and billing entries for compliance
with the standards for compensation as set forth in the U.S. Trustee Guidelines.  The
following discusses the firm's compliance with these guidelines.

    **1.**    **Firm Staffing and Rates**

        **The following information should be provided in every fee
application:  (iii) Names and hourly rates of all applicant's
professionals and paraprofessionals who billed time, explanation of
any changes in hourly rates from those previously charged, and
statement of whether the compensation is based on the customary
compensation charged by comparably skilled practitioners in cases
other than under title 11.  U.S. Trustee Guidelines (b)(1)(iii)**

    **a)**    **Timekeepers and Positions**

        The Application provided the first initial and last name, the
positions, and hourly rates of the professionals and paraprofessionals

*Stuart Maue*

## IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)

who billed time to this matter.   XRoads staffed this matter with 15 timekeepers, including 3 principals, 4 managing directors, 3 directors, 2 senior consultants, and 3 paraprofessionals.

XRoads billed a total of 1,940.20 hours during the sixth interim period.   The following table displays hours and fees computed by professionals for the fixed minimum fee and the above threshold fee and by paraprofessional for the nonprofessional fee and includes the percentage of the total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Principal | 63.30 | 3% | $ 26,930.00 | 4% |
| Managing Director | 228.20 | 12% | 100,570.00 | 14% |
| Director | 764.40 | 39% | 337,440.00 | 46% |
| Senior Consultant | 497.30 | 26% | 223,040.00 | 30% |
| Paraprofessional | 387.00 | 20% | 48,244.50 | 6% |
| TOTAL | 1,940.20 | 100% | $736,224.50 | 100% |

The blended hourly rate for the XRoads professionals is $442.94 and the blended hourly rate for professionals and paraprofessionals is $379.46.

The total hours and fees billed by each timekeeper, the position of each timekeeper, and their hourly billing rates, and a computation of the blended hourly rate for each position are displayed on EXHIBIT C-1.

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)

b)      **Hourly Rate Increases**

The firm did not increase the hourly rates of any paraprofessional during the sixth interim period; however, XRoads increased the hourly rates of paraprofessionals during prior periods and those increased rates have resulted in $11,586.00 in additional fees being billed during the sixth interim period.  The fees associated with those rate increases are displayed on EXHIBIT C-2.

2.      **Time Increments**

**Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour.  U.S. Trustee Guidelines (b)(4)(v)**

All of the billing entries in the Application contained a time allotment and were billed in tenths-of-an-hour increments.

3.      **Complete and Detailed Task Descriptions**

**Services should be noted in detail...  Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time entries for court hearings and conferences should identify the subject of the hearing or conference.  U.S. Trustee Guidelines (b)(4)(v)**

Activity descriptions should identify each service separately and sufficiently so that the benefit derived from such service may be ascertained, and it may be determined that the time billed was reasonable and necessary.  Activity descriptions for conferences and telephone calls should identify the participants and the subject-matter or purpose of the communication.

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)

The XRoads' task descriptions were sufficiently detailed and included the type of activity and the subject-matter.

**4.**     **Blocked Entries**

**Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; however, tasks performed in a project which total a de minimis amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate.  U.S. Trustee Guidelines (b)(4)(v)**

XRoads did not combine or "lump" its activity descriptions.  Some billing entries contained multiple tasks but each task within the entry was a single activity and had a separate time allotment assigned.

**5.**     **Multiple Professionals at Hearings and Conferences**

**If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees.  U.S. Trustee Guidelines (b)(4)(v)**

When two or more firm timekeepers bill to attend a meeting, hearing, or other event, the task descriptions should identify and explain the role of each timekeeper who billed for that attendance and the need for multiple attendees. Neither the Application nor the task descriptions explained the need for multiple attendees at conferences, hearings, or other events.

**a)**     **Intraoffice Conferences**

Intraoffice conferences are necessary and appropriate; however, frequent internal conferences may indicate inappropriate levels of

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)**

staffing, unnecessary conferencing, or the use of inexperienced personnel.  Stuart Maue identified 298 entries describing conferences between XRoads personnel, which represents 9% of the total fees requested in the Application.

For example, on October 25, 2006, managing director S. Karol and director J. Edmondson each billed 6.20 hours for several internal conferences to discuss "class claims and claims estimates and reserves."

The entries describing intraoffice conferences are displayed on EXHIBIT D and total 158.10 hours with $64,568.00 in associated fees. Those intraoffice conferences for which more than one firm timekeeper billed are marked with an ampersand **[&]** on the exhibit and total 137.30 hours with associated fees of $56,332.00.

**b)**      **Nonfirm Conferences, Hearings, and Other Events**

On many occasions, more than one XRoads timekeeper billed for attendance at a nonfirm conference, hearing, or other event.  For example, on October 3, 2006, timekeepers S. Karol, J. Edmondson, director J. Young, and senior consultant B. Gaston each billed 1.10 hours to participate in a conference call with Winn-Dixie, Skadden, Arps, and Blackstone regarding "reserve and estimated claims."

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)

EXHIBIT E displays the entries where more than one XRoads timekeeper billed for attendance at a nonfirm conference, a hearing, or other event.  These entries total 106.70 hours with $46,186.00 in associated fees.  The entries for all participants other than the timekeeper who appears to be the most responsible at the event (i.e., the one who bills the most fees and/or hours) are marked with an ampersand **[&]** on the exhibit and total 59.10 hours with associated fees of $25,246.00.

C.    **Fees to Examine for Necessity, Relevance, and Reasonableness**

Stuart Maue reviewed the Application and identified several billing practices to examine for necessity, relevance, and reasonableness under the standards of Section 330 of the Bankruptcy Code.

1.    **Personnel Who Billed 10.00 or Fewer Hours**

A review of the fee entries of timekeepers who bill relatively few hours to a matter allows a determination of whether these timekeepers are duplicating the work of others, whether the use of these timekeepers increases the cost to the estate because of orientation or the "getting up-to-speed" that may be required, or whether the small amount of time billed contributed to the advancement of the case.

Only two XRoads timekeepers billed 10.00 or fewer hours during the sixth interim period; however, both of these timekeepers billed more ten hours during previous interim periods.   The entries for timekeepers who billed

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)

10.00 or fewer hours during this interim period are displayed on EXHIBIT F and total 2.40 hours with associated fees of $1,040.00.

2.    **Long Billing Days**

Courts have generally held that billable time for professional services should include only those tasks that relate directly to work for the client. Professionals necessarily must spend some portion of each day on personal matters (such as meals and breaks) and frequently spend time on administrative matters, such as training or supervision of others.   Professionals may periodically work extraordinarily long hours without many breaks because of the demands of the representation.  However, such long hours are generally related to identifiable circumstances such as court deadlines, travel, or event attendance.

Stuart Maue identified nine days in the Application on which a timekeeper billed more than 12.00 hours.  EXHIBIT G-1 displays the billing entries for the days on which a timekeeper billed more than 12.00 hours.  These entries total 112.40 hours with $44,398.00 in associated fees.

EXHIBIT G-2 displays a calendar which shows the total number of hours billed by each timekeeper per day and per month.

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)

3.    **Administrative/Clerical Activities**

Activities associated with the day-to-day operations of the professional firm are considered to be administrative in nature and, as such, are reflected in the hourly rates charged by the firm.

Clerical activities include tasks that may be effectively performed by administrative assistants, secretaries, or support personnel.  The performance of clerical or secretarial tasks by attorneys, accountants, paralegals, and other paraprofessionals generally constitute nonbillable time and should be delegated to nonbilling staff members.  Courts have held that time spent performing administrative or clerical activities such as filing, organizing and updating files, retrieving and distributing documents, checking the docket, calendaring events, photocopying, scanning documents, training and assignment of tasks to staff members, or "supervising" any of the foregoing is not compensable.

The Application contained several entries described as "review descriptions of Winn Dixie time detail to ensure compliance with district guidelines."  These entries have been identified as administrative/clerical activities.

Entries describing administrative and clerical activities by paraprofessionals are displayed on EXHIBIT H and total 100.20 hours with $8,517.00 in associated fees.

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)

The Application did not include any entries describing administrative and clerical activities by professionals.

**4.**      **Legal Research**

The Application did not include any activities describing legal research.

**5.**      **Travel**

The XRoads Application did not include any travel entries for the sixth interim period.

**6.**      **Summary of Projects**

XRoads categorized its services into seven billing projects including "Fee Application."   For purposes of this report, Stuart Maue divided the category and renamed the firm's "Fee Application" to "XRoads Retention and Compensation" and "Response to Fee Examiner's Report."  During the review, Stuart Maue identified some billing entries in other XRoads project categories that appeared to relate to the compensation of the firm and response to the fee examiner's report.  Those entries were reassigned to the Stuart Maue designated categories.   Several of the entries that are included in the response to fee examiner's report category were billed post-confirmation.

Entries describing tasks related to the retention and compensation of XRoads are displayed on EXHIBIT I-1 and total 174.80 hours with $28,271.50 in associated fees.

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)

Entries describing tasks related to the response to the examiner's report are displayed on EXHIBIT I-2 and total 264.00 hours with $89,807.00 in associated fees.  The entries in this category that were billed post-confirmation total 85.80 hours with $28,675.50 in associated fees.

The following table displays the firm's remaining project categories, the associated hours and fees, and the project's percentage of the total fees requested by the firm.  The firm's project hours and fees as displayed below do not include the hours and fees relating to tasks reassigned to the Stuart Maue designated categories.  Exhibits of each project displaying a summary of hours and fees by individual and exhibits of each project displaying the full text of each entry are available upon request to Stuart Maue.

| Project | Hours | Fees | Percentage |
|---|---|---|---|
| BK-Asset Sale | 3.30 | $1,610.00 | * |
| BK-Business Analysis | 497.80 | $227,320.00 | 31% |
| BK-Business Operations | 51.60 | $22,520.00 | 3% |
| BK-Case Administration | 8.60 | $3,830.00 | * |
| BK-Claims | 810.20 | $307,866.00 | 42% |
| BK-Plan | 92.30 | $39,430.00 | 5% |
| BK-Tax | 37.60 | $15,570.00 | 2% |

* Less than 1%

*Stuart Maue*

## V.    REVIEW OF EXPENSES FOR SIXTH INTERIM PERIOD

In the Application for the sixth interim period, XRoads requested reimbursement of expenses in the amount of $37,106.63.   Stuart Maue reviewed the expenses and divided them into categories based on the type of charge.   The following table summarizes the expenses as computed and categorized by Stuart Maue:

| Category | Amount Computed | Percentage of Total Expenses |
|---|---|---|
| **Travel Expenses:** | | |
| Airfare | $15,938.33 | 43% |
| Hotel Charges | 10,405.21 | 28% |
| Ground Transportation | 8,796.05 | 24% |
| **Working Meals** | 1,441.16 | 4% |
| **Conference Calls** | 437.32 | 1% |
| **Overnight Delivery** | 48.96 | * |
| **Internal Photocopying** | 39.60 | * |
| **TOTAL** | $37,106.63 | 100% |

\* Less than 1%

### A.    Technical Billing Discrepancies

Stuart Maue reviewed the expense items for apparent irregularities such as double billing, wrong case billing, or missing expense descriptions.   The following technical billing discrepancies were identified:

### 1.    Expenses Incurred Post-Confirmation

The Application was examined for expenses incurred after the Effective Date (November 21, 2006) of the Joint Plan of Reorganization.   Stuart Maue

*Stuart Maue*

**V.  REVIEW OF EXPENSE FOR SIXTH INTERIM PERIOD (Continued)**

identified three charges for airfare, totaling $1,917.99, which were incurred after November 21, 2006.  These expenses are displayed on EXHIBIT J.

**B.**   **Compliance With Billing Guidelines**

**Any expense for which reimbursement is sought must be actual and necessary and supported by documentation as appropriate.**  **U.S. Trustee Guidelines (b)(5)**

Stuart Maue reviewed and analyzed the expenses for compliance with the standards for reimbursement of actual, necessary expenses as set forth in the U.S. Trustee Guidelines.

**1.**   **Complete and Detailed Itemization of Expenses**

**Factors relevant to a determination that the expense is proper include the following:  Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate destination), method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense.  Itemized expenses should be identified by their nature (e.g., long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred.**  **U.S. Trustee Guidelines (b)(5)(iii)**

XRoads provided an itemization of its expenses including the expense category, the date, the name of the timekeeper incurring the charge, the description, and the amount of the charge.  Supporting documentation for the expense charges was not included in the Application.

*Stuart Maue*

**V.  REVIEW OF EXPENSE FOR SIXTH INTERIM PERIOD (Continued)**

2.     **Travel Expenses**

a)     **Airfare**

XRoads requested reimbursement for airfare in the amount of $15,938.33.  The descriptions of most of the airfare charges stated that they were billed at coach fares and the Application stated that all of the XRoads professionals flew coach fare and booked flights in advance, whenever necessary and possible, to reduce costs for the Debtors.

Most of the descriptions for airfare did not provide the origination or destination of the travel, only stating to or from "client." While it is assumed that in most cases the client location was Jacksonville, Florida, the fee entries indicated that the XRoads professionals and paraprofessionals also worked at other client locations. In addition, for most airfare charges it was not possible to determine the timekeeper's home or office location from which the travel originated. When the origination and destination of air travel is provided, it allows a comparison of airfares between the same locations, which aids in determining the reasonableness of the charges.

The Application included eight airfare charges that exceeded $1,000.00.   Stuart Maue acknowledges that work schedules and availability of flights vary from day to day and that it may not be possible to purchase airfare other than full fare coach tickets.

*Stuart Maue*

V.  REVIEW OF EXPENSE FOR SIXTH INTERIM PERIOD (Continued)

The airfare charges are displayed on EXHIBIT K-1.

b)      **Lodging**

(1)      **Apartment Rentals**

The Application stated "XRoads entered into several short term apartment lease agreements during the majority of this case to offset the cost of hotel charges to the estate.  As of July, 2006, XRoads terminated the leases due to the decrease of professionals working on the case."   Stuart Maue notes that there were no charges for apartment rentals during the Sixth Interim Period.

(2)      **Hotel**

XRoads requested reimbursement for hotel charges in the amount of $10,405.21.  Generally, the hotel charges included the date of the charge, the amount, the name of the timekeeper, and the city where the hotel was located.  The Application stated "Whenever possible, XRoads negotiated corporate rates with hotels to reduce the cost of lodging, however, hotel rates do fluctuate based on availability at the time of reservation."

Stuart Maue calculated a nightly rate for each of the hotel charges based on the amount provided and the number of days indicated.  It appears that the nightly rate for most of the hotel charges was $130.00 to $160.00; however, there were two

*Stuart Maue*

## V.  REVIEW OF EXPENSE FOR SIXTH INTERIM PERIOD (Continued)

descriptions that indicated "city rate" rather than "corporate rate" and the nightly rates for these charges were approximately $250.00 and $380.00.  The description for one of these charges also indicated that the hotel was sold out months in advance and would not honor XRoads rate for this week only.   The hotel expenses are itemized on EXHIBIT K-2.

c)     **Meals**

The  Application  stated  that  "XRoads  incurred  the  sum  of $4,275.66 in meal charges while traveling to and from and working at Company's offices, however, these meal charges were not billed to the Debtors.  Pursuant to the Bankruptcy Guidelines, XRoads did not charge the  Debtors  for  breakfast,  lunch  or  dinner  unless  XRoads  was participating,  during  the  meal,  in  a  necessary  meeting  respecting  the case."   XRoads requested reimbursement for working meals totaling $1,441.16.  These meal charges are itemized on EXHIBIT K-3.

d)     **Ground Transportation**

XRoads  requested  reimbursement  for  ground  transportation charges including car rentals, gas, taxi, mileage, and parking in the amount of $8,796.05.

-22-

*Stuart Maue*

V. REVIEW OF EXPENSE FOR SIXTH INTERIM PERIOD (Continued)

(1)     **Car Rental**

        The Application included a request for reimbursement of car rental and gasoline for the cars.  The description for these expense charges generally included the dates of the rental, the name of the timekeeper, the amount, and the location of the rental.    The Application stated that "...whenever possible, XRoads' professionals share rental cars to lower the cost of car per person."   The Application further stated "...although the number of professionals decreased considerably, fewer professionals meant that each needed their own rental cars due to the different times the professionals were at the client site."

        The car rental charges by XRoads timekeepers included 23 rentals during this interim period.    The car rentals and gasoline total $5,613.85 and appear on EXHIBIT K-4.

(2)     **Taxi/Train Fares**

        The Application included a request for reimbursement of taxi fares and a train fare as part of its ground transportation. The Application stated that "XRoads continued to voluntarily discount transportation to/from residence to the airport (capped at $35.00) and travel from the hotel to the Company's office (capped at $40.00)...."   A review of the expenses for taxi fares

*Stuart Maue*

**V.  REVIEW OF EXPENSE FOR SIXTH INTERIM PERIOD (Continued)**

indicates that XRoads capped these fares.  The taxi and train fares totaling $1,043.00 are itemized on EXHIBIT K-5.

**(3)      Mileage and Parking**

XRoads requested reimbursement of mileage at the rate of $0.445.   The mileage requests were itemized and included the date, the timekeeper's name, the amount charged, the number of miles, the rate per mile, and the origination and destination of travel.  The mileage expenses totaled $415.20.

The Application also included a request for reimbursement of parking charges.  These charges were itemized and include the date, the timekeeper name, the amount charged, and whether the charge was incurred at the hotel or airport.  The parking charges total $1,724.00.

The mileage and parking charges are displayed by category on EXHIBIT K-6 and total $2,139.20.

**3.      Photocopies**

The Application included a request for reimbursement of photocopy charges that total $39.60.  The Application stated that the requested rate for these internal photocopies was $0.15 per page.

*Stuart Maue*

## VI.   SUMMARY OF FINDINGS FOR FINAL PERIOD

Stuart Maue prepared a Summary of Findings for the final period that displays the fees and expenses requested for each interim period and the totals for the final period.   The summary also includes the differences between the fees and expenses requested and the fees and expenses as recomputed by Stuart Maue for each interim period and the sum of the discrepancies for the final period.

The Summary of Findings also displays the voluntary reductions, if any, the case professional included in the interim application[3] and the reductions, if any, included in the case professional's responses to the fee examiner's reports for the interim and final applications.

The fee and expense categories identified by Stuart Maue in each interim report and the fees and expenses for each category are also displayed in the Summary of Findings for the final period.   The totals shown in each category have been adjusted for overlap unless otherwise noted.

XRoads requested the following professional fees and expenses in the Application for the final period:

| | |
|---|---|
| Professional Fees Requested: | $21,140,852.30 |
| Expense Reimbursement Requested: | 1,372,010.02 |
| Total Fees and Expenses: | $22,512,862.32 |

---

[3] Only those reductions that were from the fee and expense entries submitted in the interim applications are included in this voluntary reduction amount.  If the firm referenced a reduction in fees or expenses but the fee and expense entries that made up those reductions were not included in the application, those reductions are not included in the Summary of Findings for the final period.

*Stuart Maue*

**VI.  SUMMARY OF FINDINGS FOR FINAL PERIOD  (Continued)**

Stuart Maue compared the total fees and expenses requested in the Application for the final period with the fees and expenses requested in each interim application.  The comparison revealed that there is no difference between the amount requested for the final period and the total amounts requested in the interim applications after adjustment for reductions provided by the firm.

For each interim application, Stuart Maue computed the fees and expenses and identified any discrepancies between the amounts requested and the amounts recomputed.  The discrepancies for each interim period and the total discrepancy for the final period are displayed in the Summary of Findings for the final period.  The recomputation of fees for the final period shows that the total requested amount is $79,515.70 less than the computed amount.  The recomputation of expenses for the final period shows that the total requested amount is $6,870.00 less than the computed amount.

XRoads did not provide responses to its initial reports to Stuart Maue; however, it did file a response to the first, second, third, and fourth initial reports with the Court on December 19, 2006.  In that response, XRoads stated that it agreed to voluntary reductions totaling $71,085.36.  Stuart Maue included this reduction in the column for the Sixth Interim Fee Application.

The Summary of Findings for the final period for XRoads is shown on the following pages: