## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re                                        )              Case No. 05-03817-3F1

WINN-DIXIE STORES, INC., et al.,  )                Chapter 11

            Debtors.                       )              Jointly Administered

_____

### NOTICE OF FILING

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors in possession, give notice of filing of the attached Final Report of the Review and Analysis prepared by Stuart Maue, Fee Examiner, of the Sixth Interim and Final Fee Application of Smith, Hulsey & Busey, co-counsel for Winn-Dixie Stores, Inc. and its subsidiaries and affiliates, for the sixth interim period from October 1, 2006, through and including November 21, 2006 and for the final period from March 28, 2006, through and including November 21, 2006.

Dated:  July 25, 2007.

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP


By ___s/ D. J. Baker_____          By ___s/ Cynthia C. Jackson_____
    D. J. Baker                             Stephen D. Busey
    Sally McDonald Henry                    James H. Post
    Rosalie Gray                            Cynthia C. Jackson

Four Times Square                    Florida Bar Number 498882
New York, NY  10036                  225 Water Street, Suite 1800
(212) 735-3000                       Jacksonville, FL  32202
(917) 777-2150 (facsimile)           (904) 359-7700
djbaker@skadden.com                  (904) 359-7708 (facsimile)
                                     cjackson@smithhulsey.com

Co-Counsel for Debtors               Co-Counsel for Debtors

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

## Fee Examiner's Report for Sixth Interim and Final Fee Application of Smith, Hulsey & Busey

Stuart Maue, acting in its capacity as fee examiner in the above-captioned proceeding, submits the final written report of its review and analysis of the Smith, Hulsey & Busey Sixth Interim Fee Application for period from October 1, 2006, through November 21, 2006 and the Final Fee Application for the period from March 28, 2005, through November 21, 2006.

1.     On December 14, 2005, the Court entered an order effective December 1, 2005, authorizing the employment and retention of Stuart Maue to serve as fee examiner and to review all fee applications filed with the Court and the statements submitted by professionals retained by Wachovia Bank, N.A. in its capacity as agent for itself and other postpetition lenders (the "Agent").

2.     Stuart Maue conducted a review and analysis of the fees and expenses requested by Smith, Hulsey & Busey for the sixth interim period and prepared a written report including exhibits of that review which is attached and incorporated by reference.

-1-

3.     In addition, Stuart Maue reviewed the fees and expenses requested by Smith, Hulsey & Busey in all prior interim periods and filed a written report for each interim fee application with the Court.

4.     The attached report includes a Summary of Findings for Final Period, which displays the fees and expenses requested by Smith, Hulsey & Busey by interim and final periods.  Also displayed are differences, if any, between the amounts requested by the firm and the amounts computed by Stuart Maue and any reductions in the fees and expenses taken by the firm in its fee applications or in its responses to the initial Stuart Maue reports.  In addition, the fees and expenses identified by category from each interim report along with a total for the final period are shown in this summary.

STUART MAUE

By  Linda K. Cooper
3840 McKelvey Road
St. Louis, Missouri  63044
314-291-3030
314-291-6546 (facsimile)

Fee Examiner

**ATTACHMENT 1**

# Final Report of the
# Review and Analysis of

# Sixth Interim and Final Fee Application Submitted by

### SMITH HULSEY & BUSEY
of
### Jacksonville, Florida

For the Interim Period

**October 1, 2006 Through November 21, 2006**

And

For the Final Period

**March 28, 2005 Through November 21, 2006**



In the Matter Entitled

### *In re: Winn-Dixie Stores, Inc., et al.*

**United States Bankruptcy Court**
**Middle District of Florida**
**Jacksonville Division**

**Case No. 05-03817-3F1**

Issued

**June 4, 2007**

*Stuart Maue*

## SMITH HULSEY & BUSEY

## SUMMARY OF FINDINGS FOR SIXTH INTERIM PERIOD

### Sixth Interim Application (October 1, 2006 Through November 21, 2006)

#### A.    Amounts Requested and Computed

| | | |
|---|---|---|
| Fees Requested | $521,453.50 | |
| Expenses Requested | 22,157.41 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $543,610.91 |
| | | |
| Fees Computed | $521,453.50 | |
| Expenses Computed | 22,157.41 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $543,610.91 |

#### B.    Amounts Requested – Based on Firm's Response

| | | |
|---|---|---|
| Fees Requested | $521,453.50 | |
| REVISED FEES REQUESTED | | $521,453.50 |
| Expenses Requested | $22,157.41 | |
| REVISED EXPENSES REQUESTED | | 22,157.41 |
| REVISED TOTAL FEES AND EXPENSES REQUESTED | | $543,610.91 |

#### C.    Professional Fees

##### 1.    Compliance With Billing Guidelines

| Page No. | | Exhibit | Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|---|
| 5 | Fees Attributable to Hourly Rate Increases | A-2 | | $28,643.00 | 5% |
| 8 | Vaguely Described Conferences | B-1 | 11.30 | 3,049.50 | * |
| 8 | Other Vaguely Described Activities | B-2 | 11.00 | 3,449.50 | * |
| 10 | Blocked Entries | C | 21.20 | 5,225.00 | 1% |
| 11 | Intraoffice Conferences | D | 58.77 | 18,039.50 | 3% |
| 11 | Intraoffice Conferences – Multiple Attendance | D | 18.10 | 5,659.00 | 1% |

---

* Less than 1%

*Stuart Maue*

**SUMMARY OF FINDINGS FOR SIXTH INTERIM PERIOD  (Continued)**

| Page No. | | Exhibit | Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|---|
| 12 | Nonfirm Conferences, Hearings, and Other Events | E | 143.60 | $42,996.50 | 8% |
| 12 | Nonfirm Conferences, Hearings, and Other Events – Multiple Attendance | E | 91.00 | 23,977.00 | 5% |

## 2.　Fees to Examine for Necessity, Relevance, and Reasonableness

| Page No. | | Exhibit | Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|---|
| 13 | Personnel Who Billed 10.00 or Fewer Hours | F | 14.80 | $ 4,381.00 | * |
| 14 | Days Billed in Excess of 12.00 Hours | G-1 | 55.90 | 19,929.50 | 4% |
| 15 | Administrative/Clerical Activities by Paraprofessionals | H | 115.80 | 15,228.50 | 3% |
| 18 | Legal Research | I | 286.87 | 63,937.50 | 12% |
| 18 | Smith Hulsey Retention and Compensation | J-1 | 6.60 | 1,173.00 | * |
| 18 | Other Case Professionals Retention and Compensation | J-2 | 8.50 | 1,737.50 | * |
| 18 | Response to Fee Examiner's Report | J-3 | 11.10 | 3,385.50 | * |

## D.　Expenses

## 1.　Compliance With Billing Guidelines

| Page No. | | Exhibit | Amount |
|---|---|---|---|
| 21 | Document Duplicating | K | $10,449.90 |
| 21 | Outside Document Duplicating | K | 1,619.65 |
| 21 | Facsimiles | K | 116.00 |
| 21 | Computer-Assisted Legal Research | K | 3,669.73 |
| 21 | Meals | K | 1,296.29 |
| 21 | Postage | K | 1,859.85 |

---

* Less than 1%

*Stuart Maue*

**SUMMARY OF FINDINGS FOR SIXTH INTERIM PERIOD  (Continued)**

### E.    Adjustment to Eliminate Overlap Between Categories

#### 1.    Fees

| Page No. | | Before Adjustment for Overlap | | Overlap | | After Adjustment for Overlap | |
|---|---|---|---|---|---|---|---|
| | | Hours | Fees | Hours | Fees | Hours | Fees |
| 15 | Administrative/Clerical Activities – Paraprofessionals | 115.80 | $15,228.50 | 0.00 | $    0.00 | 115.80 | $15,228.50 |
| 12 | Nonfirm Conferences, Hearings, and Other Events – Multiple Attendance | 91.00 | 23,977.00 | 0.00 | 0.00 | 91.00 | 23,977.00 |
| 11 | Intraoffice Conferences – Multiple Attendance | 18.10 | 5,659.00 | 0.00 | 0.00 | 18.10 | 5,659.00 |
| 8 | Vaguely Described Conferences | 11.30 | 3,049.50 | 0.00 | 0.00 | 11.30 | 3,049.50 |
| 8 | Other Vaguely Described Activities | 11.00 | 3,449.50 | 0.00 | 0.00 | 11.00 | 3,449.50 |
| 10 | Blocked Entries | 21.20 | 5,225.00 | 3.20 | 535.00 | 18.00 | 4,690.00 |
| 13 | Personnel Who Billed 10.00 or Fewer Hours | 14.80 | 4,381.00 | 6.20 | 1,392.00 | 8.60 | 2,989.00 |
| 18 | Legal Research | 286.87 | 63,937.50 | 4.87 | 826.00 | 282.00 | 63,111.50 |

#### 2.    Expenses

| Page No. | | Before Adjustment for Overlap | Overlap Amount | After Adjustment for Overlap Amount |
|---|---|---|---|---|
| 21 | Meals | $1,296.29 | $0.00 | $1,296.29 |
| 21 | Postage | 1,859.85 | 0.00 | 1,859.85 |

*Stuart Maue*

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ................................................................................... 1

II.     PROCEDURES AND METHODOLOGY ...................................................... 3
        A.      Appendix A ........................................................................... 3
        B.      Overlap Calculation ............................................................. 3

III.    RECOMPUTATION OF FEES AND EXPENSES FOR SIXTH INTERIM PERIOD... 4

IV.     REVIEW OF FEES FOR SIXTH INTERIM PERIOD ....................................... 5
        A.      Technical Billing Discrepancies ............................................ 5
        B.      Compliance With Billing Guidelines ..................................... 5
                1.      Firm Staffing and Rates........................................... 5
                        a)      Timekeepers and Positions ........................... 5
                        b)      Hourly Rate Increases.................................... 6
                2.      Time Increments ..................................................... 7
                3.      Complete and Detailed Task Descriptions................. 7
                        a)      Vaguely Described Conferences ..................... 8
                        b)      Other Vaguely Described Activities ................ 8
                4.      Blocked Entries ................................................... 10
                5.      Multiple Professionals at Hearings and Conferences ...................... 11
                        a)      Intraoffice Conferences ............................... 11
                        b)      Nonfirm Conferences, Hearings, and Other Events .............. 12
        C.      Fees to Examine for Necessity, Relevance, and Reasonableness.................. 13
                1.      Personnel Who Billed 10.00 or Fewer Hours ............................. 13
                2.      Long Billing Days ................................................ 14
                3.      Administrative/Clerical Activities ............................ 15
                4.      Legal Research ................................................... 18
                5.      Travel .............................................................. 18
                6.      Summary of Projects .......................................... 18

V.      REVIEW OF EXPENSES FOR SIXTH INTERIM PERIOD ............................... 21
        A.      Technical Billing Discrepancies ......................................... 21
                1.      Expenses Potentially Incurred Post Confirmation.......................... 22
        B.      Compliance With Billing Guidelines ................................... 22
                1.      Complete and Detailed Itemization of Expenses ........................... 23
                2.      Photocopies ...................................................... 23
                3.      Facsimiles ........................................................ 24
                4.      Computer-Assisted Legal Research......................... 24
                5.      Overhead Expenses............................................. 25

*Stuart Maue*

**TABLE OF CONTENTS (Continued)**

**Page No.**

| | | |
|---|---|---|
| a) | Meals | 25 |
| b) | Postage | 26 |
| VI. | SUMMARY OF FINDINGS FOR FINAL PERIOD | 27 |
| A. | Total Fees and Expenses and Differences | 30 |
| B. | Reductions by Firm and Revised Requested Amounts | 30 |
| C. | Professional Fees | 31 |
| D. | Expenses | 32 |

*Stuart Maue*

## TABLE OF EXHIBITS

**Page No.**

A-1.   Summary of Hours and Fees by Timekeeper and Position
A-2.   Schedule of Fees Attributable to Hourly Rate Increases ...................................... 5

B-1.   Vaguely Described Conferences
B-2.   Other Vaguely Described Activities ............................................................ 8

C.     Blocked Entries.................................................................................... 10

D.     Intraoffice Conferences .......................................................................... 11

E.     Nonfirm Conferences, Hearings, and Other Events .......................................... 12

F.     Personnel Who Billed 10.00 or Fewer Hours.................................................. 13

G-1.   Days Billed in Excess of 12.00 Hours
G-2.   Daily Calendar..................................................................................... 14

H.     Administrative/Clerical Activities by Paraprofessionals ..................................... 15

I.     Legal Research ..................................................................................... 18

J-1.   Smith Hulsey Retention and Compensation
J-2.   Other Case Professionals Retention and Compensation
J-3.   Response to Fee Examiner's Report............................................................. 18

K.     Expenses by Category.............................................................................. 21

*Stuart Maue*

## I.   __INTRODUCTION__

The United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, entered an order effective December 1, 2005, authorizing the employment and retention of Stuart, Maue, Mitchell & James, Ltd. ("Stuart Maue") to serve as fee examiner in the jointly administered cases entitled *In re: Winn-Dixie Stores, Inc., et al.,* Case No. 05-03817-3F1.   The order authorized and directed Stuart Maue to review all fee applications filed with the Court and to review the statements submitted by professionals retained by Wachovia Bank, N.A. in its capacity as agent for itself and other postpetition lenders (the "Agent").

The review and analysis of the professionals' fee applications are pursuant to the applicable standards of 11 U.S.C. §§ 330 and 331, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the local rules of this Court (the "Local Rules"), and the United States Trustee Guidelines for Reviewing Applications for the Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "U.S. Trustee Guidelines"). The statements submitted by the professionals retained by the Agent are reviewed and analyzed pursuant to a reasonableness standard as referenced in 11 U.S.C. § 328 and the Bankruptcy Rules.

Stuart Maue conducted a review and analysis of the "Sixth Interim and Final Application of Smith Hulsey & Busey for Allowance of Compensation and Reimbursement of Expenses" (the "Application").   Smith Hulsey & Busey ("Smith Hulsey"), located in

*Stuart Maue*

**I.  INTRODUCTION  (Continued)**

Jacksonville, Florida, is co-counsel for Winn-Dixie Stores, Inc. and its subsidiaries and affiliates.

The report for the sixth interim period includes the review and analysis of the fees and expenses, the exhibits displaying the categorized fees and expenses, and the summary of findings for this period.

Also included in the report is the Summary of Findings for the final period, which displays the totals for the fee and expense categories by interim periods and by final period. This Summary of Findings also displays the fee and/or expense discrepancies identified in the interim reports and voluntary reductions included in the fee applications or reductions as a result of the firm's responses to the interim audit reports.

Stuart Maue prepared an initial written report of the review and analysis of the Application and provided that report to Smith Hulsey and the U.S. Trustee for review prior to completing a final written report.   Smith Hulsey submitted a written response ("Smith Hulsey") to Stuart Maue.   Stuart Maue reviewed the response.   If the response provided information that indicated an error was made in the initial classification of a fee or expense entry, Stuart Maue revised the exhibit and removed the fee or expense entry.   If the firm provided additional information that revised the text of any fee or expense entry in the Application, those revisions are referenced generally in the final report but the initial classification of those entries has not been changed and those entries remain on the exhibit.

*Stuart Maue*

### I.  INTRODUCTION  (Continued)

Stuart Maue bases its final report on the Application as filed with the Court and not on subsequent amended fee entries that have not been filed.

Upon completion of the review of the firm's response and reconsideration of the initial report, Stuart Maue prepared the final report of the review and analysis of the firm's Application.

## II.    PROCEDURES AND METHODOLOGY

### A.    Appendix A

Stuart Maue's procedures and methodology for reviewing fees and expenses and for information regarding the exhibits are presented in Appendix A previously provided.

### B.    Overlap Calculation

During Stuart Maue's review and analysis, a task or entry may be included in more than one category and appear on more than one exhibit.  For example, a task or entry may be classified as both blocked billing and intraoffice conference.  When a task or entry is included in more than one category, "overlap" occurs among the hour and fee calculations for those categories.  In order to ensure that the hours and fees for a task or entry are not "counted" more than once in any reduction of fees, Stuart Maue calculated the overlap.[1]    The overlap calculation is displayed in Section E of the

---

[1] The overlap calculation does not include the categories for hourly rate increases or days billed in excess of 12.00 hours.  The classification of these categories is based on the total hours and fees billed for the category and not on individual entries within the category.  A review of these two categories allows a determination of the reasonableness of the total fees attributable to hourly rate increases and the time billed in excess of 12.00 hours. Overlap calculations for hourly rate increases and long billing days are available upon request to Stuart Maue.

*Stuart Maue*

**II.  PROCEDURES AND METHODOLOGY  (Continued)**

Summary of Findings and includes the totals for each category before and after the calculation for overlap and the total dollar amount of the overlap in each category.

**III.**   **RECOMPUTATION OF FEES AND EXPENSES FOR SIXTH INTERIM PERIOD**

Smith Hulsey requested the following professional fees and expenses in the Application for the sixth interim period:

| | |
|---|---|
| Professional Fees Requested: | $521,453.50 |
| Expense Reimbursement Requested: | 22,157.41 |
| Total Fees and Expenses: | $543,610.91 |

Stuart Maue recomputed the total fees and expenses and compared this to the fees and expenses requested for the sixth interim period.  The hours billed by each professional or paraprofessional were totaled, and these amounts were multiplied by the individual hourly rates.  The recomputation of fees and expenses did not reveal a difference between the requested amount and the computed amount.

*Stuart Maue*

## IV.    REVIEW OF FEES FOR SIXTH INTERIM PERIOD

### A.    Technical Billing Discrepancies

Stuart Maue examined the billing entries for apparent irregularities such as double billing, wrong case billings, and missing task descriptions.  No technical billing discrepancies were identified.

### B.    Compliance With Billing Guidelines

Stuart Maue reviewed and analyzed the fees and billing entries for compliance with the standards for compensation as set forth in the U.S. Trustee Guidelines.  The following discusses the firm's compliance with these guidelines:

#### 1.    Firm Staffing and Rates

**The following information should be provided in every fee application:    (iii) Names and hourly rates of all applicant's professionals and paraprofessionals who billed time, explanation of any changes in hourly rates from those previously charged, and statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than under title 11.  U.S. Trustee Guidelines (b)(1)(iii)**

##### a)    Timekeepers and Positions

The Application for the sixth interim period provided the names, positions, and hourly rates of the firm's professionals and paraprofessionals who billed time to this matter.  Smith Hulsey staffed this matter with 15 timekeepers, including 7 shareholders, 5 associates, 1 summer associate, and 2 paralegals.  EXHIBIT A-1 displays the hours and fees billed by each of these individuals.

*Stuart Maue*

### IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

Smith Hulsey billed a total of 2,027.60 hours during the sixth interim period.  The following table displays hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Shareholder | 916.10 | 45% | $312,810.00 | 60% |
| Associate | 651.60 | 32% | 147,623.00 | 28% |
| Summer Associate | 42.40 | 2% | 5,724.00 | 1% |
| Paralegal | 417.50 | 21% | 55,296.50 | 11% |
| **TOTAL** | 2,027.60 | 100% | $521,453.50 | 100% |

The blended hourly rate for the Smith Hulsey professionals is $293.70 and the blended hourly rate for professionals and paraprofessionals is $257.18.

**b)    <u>Hourly Rate Increases</u>**

Smith Hulsey did not increase the hourly rates of any timekeepers during this interim period; however, the firm has increased the hourly rates of professionals and paraprofessionals during prior interim periods.

The hourly rate increases of all timekeepers whose rates changed during the prior interim periods resulted in $28,643.00 in additional fees billed during the sixth interim period.  The timekeepers whose rates changed during the prior periods and the fees associated with those rate increases are displayed on EXHIBIT A-2.

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

<u>Smith Hulsey Response:</u>

*In its response, the firm stated, "Smith Hulsey increased its billable rates in the firm's normal course of business, effective January 1, 2006."*

2.    <u>Time Increments</u>

<u>Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour.</u>    U.S. Trustee Guidelines (b)(4)(v)

All the billing entries in the Application contained a time allotment and were billed in tenths-of-an-hour increments.

3.    <u>Complete and Detailed Task Descriptions</u>

<u>Services should be noted in detail...  Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time entries for court hearings and conferences should identify the subject of the hearing or conference.</u>  U.S. Trustee Guidelines (b)(4)(v)

Activity descriptions should identify each service separately and sufficiently so that the benefit derived from such service may be ascertained, and it may be determined that the time expended was reasonable and necessary.

Some of the activity descriptions included in the Application were not sufficiently detailed.  The following vaguely described activities were identified:

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

a)      **Vaguely Described Conferences**

Activity descriptions for conferences and telephone calls should identify the participants and also the subject-matter or purpose of the communication.  Conferences and meetings that either did not identify the participants or did not specify the subject-matter or purpose of the communication are identified as vaguely described conferences and appear on EXHIBIT B-1 and total 11.30 hours with $3,049.50 in associated fees.

b)      **Other Vaguely Described Activities**

Activity descriptions for the review of documents and correspondence should identify the person or party who prepared the document or correspondence and its subject-matter.  If the documents were not recently received or were previously reviewed, the description should also state the purpose of the review.  A description of correspondence should identify the correspondent and the subject of the correspondence.  Similarly, a description for preparation of pleadings should identify the pleading drafted or revised.

Activity descriptions for legal research should include the issues researched and the purpose of the research.  The activity description must be sufficiently detailed to allow a determination of whether the research is case-related, whether the research is presumably familiar to

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

experienced professionals, or whether the research is performed by a professional with an appropriate experience level.

The entries identified as other vaguely described activities are displayed on EXHIBIT B-2 and total 11.00 hours with $3,449.50 in associated fees.

**Smith Hulsey Response:**

*In response to the time descriptions identified as vaguely described conferences and other vaguely described activities, the firm stated, "Smith Hulsey reviewed our descriptions of time for a number of entries highlighted by Stuart Maue and believes that our descriptions of the activities billed are adequate and appropriate.  Stuart Maue notes a few entries which describe the activity and purpose but do not describe each recipient or participant.  Smith Hulsey identifies each participant and recipient where practical.  Because of the size of the cases and the hundreds of telephone calls and e-mails received and replied to by Smith Hulsey each day, however, the identity of each recipient is not necessary or practical for every entry.  To identify each recipient would provide no meaningful benefit to the estate relative to the expense, and would be extraordinarily inefficient.  We will respond to any objection to the adequacy or reasonableness of any individual time entries."*

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

4.      <u>Blocked Entries</u>

<u>Services should be noted in detail and not combined or "lumped"
together, with each service showing a separate time entry; however,
tasks performed in a project which total a de minimis amount of
time can be combined or lumped together if they do not exceed
.5 hours on a daily aggregate.</u>  U.S. Trustee Guidelines (b)(4)(v)

Smith Hulsey lumped a few of its activity descriptions into an entry with
a single time increment.  The tasks that are identified as blocked entries are
displayed on EXHIBIT C and total 21.20 hours with $5,225.00 in associated
fees.

**Smith Hulsey Response:**

*Smith Hulsey stated in its response, "Although Smith Hulsey typically
does not block more than .50 hours of related time together, it is sometimes not
practical to do so.  For example, Stuart Maue highlights the following entry by
Mr. Post on October 17, 2006:*

*'Preparation for October 25, 2006 hearing on twenty-third omnibus
objection to claims, including telephone calls and correspondence with
claimants attorneys (1.6)'*

*We believe Mr. Post's description of his time is sufficient and that it
would not be beneficial to the estate for him to spend additional time breaking
each communication and activity down.  If Mr. Post had simply described his
time as 'preparation for October 25 hearing on twenty-third omnibus objection
to claims' this would not have been questioned.  Moreover, any further detail*

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

*would risk privileged work product and communications.  We will respond as necessary to any objection to the adequacy of these entries."*

5.  **Multiple Professionals at Hearings and Conferences**

**If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees.**  U.S. Trustee Guidelines (b)(4)(v)

When two or more firm timekeepers bill to attend a meeting, hearing, or other event, the task descriptions should identify and explain the role of each timekeeper who billed for that attendance and the need for multiple attendees.

a)  **Intraoffice Conferences**

Intraoffice conferences are necessary and appropriate; however, frequent internal conferring may indicate inappropriate levels of staffing, unnecessary conferencing, or the use of inexperienced personnel.  Stuart Maue identified 102 entries describing conferences between Smith Hulsey personnel, which represents 3% of the total fees requested in the Application.  The entries describing intraoffice conferences are displayed on EXHIBIT D and total 58.77 hours with $18,039.50 in associated fees.

On occasion, two or more Smith Hulsey timekeepers billed for attending the same intraoffice conference.  Those intraoffice conferences are marked with an ampersand **[&]** on the exhibit and total 18.10 hours with $5,659.00 in associated fees.

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

b)      <u>Nonfirm Conferences, Hearings, and Other Events</u>

Stuart Maue identified those instances where two or more Smith Hulsey professionals or paraprofessionals attended the same nonfirm conference, hearing, or other event.  Generally when the Smith Hulsey professionals billed to attend hearings, the entries described the motion or matter for which he or she appeared.

EXHIBIT E displays the entries where more than one Smith Hulsey timekeeper billed for attendance at a nonfirm conference, hearing, or other event.   Those entries total 143.60 hours with $42,996.50 in associated fees.  The entries for all participants other than the timekeeper who appeared to be the most responsible at the event (i.e., the one who billed the most fees and/or hours) are marked with an ampersand **[&]** on this exhibit and total 91.00 hours with $23,977.00 in associated fees.

<u>Smith Hulsey Response:</u>

*In its response, Smith Hulsey stated "Nothing in the guidelines prohibits more than one professional from attending a meeting or hearing.   Moreover, Smith Hulsey has the primary responsibility of representing the Debtors in hearings in these cases.  The hearings take place every other week and have a number of different matters on the*

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

*calendar.  The lawyers at Smith Hulsey responsible for those matters attend the hearing, which usually results in more than one Smith Hulsey professional at the hearings.  It would be inefficient and not in the Debtors' interest <u>not</u> to have those lawyers at the hearings who are familiar with the matters being heard.*

*In addition, as to conferences, because of the size and complexity of these cases, it is often necessary to have bankruptcy attorneys work as teams with respect to different bankruptcy areas.  This results in instances where it is necessary that two or more Smith Hulsey professionals attend the same client conferences, each to provide and obtain information necessary for their areas of responsibility.  The services being provided to the Debtors would not be possible without this team work among Smith Hulsey professionals."*

## C.   Fees to Examine for Necessity, Relevance, and Reasonableness

Stuart Maue reviewed the Application and identified several billing practices to examine for necessity, relevance, and reasonableness under the standards of Section 330 of the Bankruptcy Code.

### 1.   Personnel Who Billed 10.00 or Fewer Hours

A review of the fee entries of timekeepers who bill relatively few hours to a matter allows a determination of whether these timekeepers are duplicating the work of others, whether the use of these timekeepers increases the cost to

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

the estate because of orientation or the "getting up-to-speed" that may be required, or whether the small amount of time billed contributed to the advancement of the case.  Four Smith Hulsey timekeepers billed 10.00 or fewer hours during this interim period.  All of these timekeepers billed to the estate during previous interim periods.  The entries for timekeepers who billed 10.00 or fewer hours during this interim period are displayed on EXHIBIT F and total 14.80 hours with associated fees of $4,381.00.

> **Smith Hulsey Response:**
>
> *The firm responded, "All of these professionals are specialty lawyers brought into the case for discrete issues and could assist the Debtors most efficiently."*

**2.     Long Billing Days**

Courts have generally held that billable time for professional services should include only those tasks that relate directly to work for the client. Professionals necessarily must spend some portion of each day on personal matters, such as meals and breaks, and frequently spend time on administrative matters, such as training or supervision of others.    Professionals may periodically work extraordinarily long hours without many breaks because of the demands of the representation.  However, such long hours are generally related

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

to identifiable circumstances such as court deadlines, travel, or event attendance.

EXHIBIT G-1 displays the billing entries for the four days on which a professional or paraprofessional billed more than 12.00 hours.  These entries total 55.90 hours with $19,929.50 in associated fees.

EXHIBIT G-2 displays a calendar that shows the total number of hours billed by each timekeeper per day and per month.

### Smith Hulsey Response:

*In its response, Smith Hulsey stated, "We are satisfied that each entry was accurate and necessary.  …Smith Hulsey is responsible for representing the Debtors in each hearing in these cases.  Because of the relatively small size of our firm, the responsible timekeepers are sometimes required to spend a significant amount of time each day to prepare for these hearings in the time frame established by the client.  We welcome the opportunity to respond to any objection to any of these entries."*

### 3.    Administrative/Clerical Activities

Activities associated with the day-to-day operations of the professional firm are considered to be administrative in nature and, as such, are reflected in the hourly rates charged by the firm.

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

Clerical activities include tasks that may be effectively performed by administrative assistants, secretaries, or support personnel.  The performance of clerical or secretarial tasks by attorneys, accountants, paralegals, and other paraprofessionals generally constitutes nonbillable time and should be delegated to nonbilling staff members.  Courts have held that time spent performing administrative or clerical activities such as filing, organizing and updating files, retrieving and distributing documents, checking the docket, calendaring events, photocopying, scanning documents, training and assignment of tasks to staff members, or "supervising" any of the foregoing is not compensable.

Stuart Maue notes that Smith Hulsey was retained as local counsel and, as such, "coordinated the Debtors' activities with and provided information to the Bankruptcy Court, and the Clerk of the Bankruptcy Court."  Many of those activities related to the electronic filing and service of documents, which is usually considered an administrative clerical activity.  It appeared that other case professionals forwarded documents to Smith Hulsey so that the firm would file those documents with the Court.  In addition, the Court directed Smith Hulsey to distribute orders and other documents to case professionals.  The firm's entries related to the receiving, filing, and serving documents have not been classified as administrative or clerical activities.

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

The Application for the sixth interim period included other activities that Stuart Maue classified as administrative or clerical.  For example, activities such as "Organization of exhibits of same," and "Updated index to files" were identified as administrative or clerical.

Entries describing administrative and clerical activities by paraprofessionals are displayed on EXHIBIT H and total 115.80 hours with $15,228.50 in associated fees.

The Application did not include any entries describing administrative and clerical activities by professionals.

**Smith Hulsey Response:**

*Smith Hulsey responded, "There are no guidelines which prohibit paraprofessionals from performing tasks which may be described as administrative.  Moreover, Smith Hulsey is charged with filing with the Bankruptcy Court every pleading on behalf of the Debtors in these cases.  This entails reviewing those pleadings to assure they are in adequate form and meet the requirements of the Court.  Because of our electronic filing requirements, only attorneys and paralegals are allowed to file pleadings.  Accordingly, Smith Hulsey is satisfied that these tasks were appropriately staffed and billed."*

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

4.    <u>Legal Research</u>

Stuart Maue identified the activities describing legal research so that a determination may be made of whether the issues researched should be familiar to experienced attorneys, whether the research is performed by attorneys with the appropriate level of experience, and whether the fees billed for research are otherwise reasonable, necessary, and relevant.

All entries describing legal research are displayed on EXHIBIT I and total 286.87 hours with $63,937.50 in associated fees.

<u>Smith Hulsey Response:</u>

*In its response, the firm stated, "Smith Hulsey reviewed each of the time entries and is satisfied that in each instance, the time was not only reasonable, necessary and relevant, but useful to the estate.  We welcome the opportunity to respond to any objection to these entries."*

5.    <u>Travel</u>

The Application for the sixth interim period did not contain any entries describing travel.

6.    <u>Summary of Projects</u>

Smith Hulsey categorized its services into 21 billing projects including "Retention/Fee Matters (Smith Hulsey)" and "Retention/Fee Matters (Others)." For purposes of this report, Stuart Maue renamed the firm's "Retention/Fee Matters (Smith Hulsey)" to "Smith Hulsey Retention and Compensation" and

*Stuart Maue*

IV. REVIEW OF FEES FOR SIXTH INTERIM PERIOD (Continued)

the "Retention/Fee Matters (Others)" to "Other Case Professionals Retention and Compensation." In addition, Stuart Maue identified task entries associated with Smith Hulsey's response to the fee examiner's report that were classified as "Claims admin. (PACA/PASA)." Stuart Maue reassigned those tasks to a designated category entitled "Response to the Fee Examiner's Report."

Entries describing tasks related to the retention and compensation of Smith Hulsey are displayed on EXHIBIT J-1 and total 6.60 hours with $1,173.00 in associated fees. Entries related to the retention and compensation of "Other Case Professionals" are displayed on EXHIBIT J-2 and total 8.50 hours with $1,737.50 in associated fees. Entries related to "Response to Fee Examiner's Report" are displayed on EXHIBIT J-3 and total 11.10 hours with $3,385.50 in associated fees.

**Smith Hulsey Response:**

*The firm responded, "Smith Hulsey has reviewed the time hours and believes the services were necessary and reasonable."*

The following table displays the firm's remaining project categories, the associated hours and fees, and the projects' percentage of the total fees requested by the firm. The firm's project hours and fees as displayed below do not include the hours and fees relating to tasks reassigned to the Stuart Maue designated retention and compensation categories discussed above. Exhibits of

*Stuart Maue*

### IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

each project displaying a summary of hours and fees by individual and exhibits of each project displaying the full text of each entry are available upon request to Stuart Maue.

| Project | Hours | Fees | Percentage |
|---|---|---|---|
| Asset Disposition (Inventory) | 0.40 | $54.00 | * |
| Asset Disposition (Real Property) | 9.70 | $2,252.00 | * |
| Automatic Stay (Relief Actions) | 59.00 | $16,406.00 | 3% |
| Business Operations/Strategic Planning | 10.70 | $4,033.50 | * |
| Case Administration | 159.90 | $27,522.00 | 5% |
| Claims Admin. (General) | 241.50 | $49,399.50 | 9% |
| Claims Admin. (Reclamation/Trust Funds) | 3.20 | $708.00 | * |
| Claims Litigation | 313.90 | $91,020.50 | 17% |
| Employee Matters (General) | 19.80 | $7,207.00 | 1% |
| Executory Contracts | 28.60 | $7,130.50 | 1% |
| Financing | 9.40 | $2,464.50 | * |
| General Corporate Advice | 3.40 | $1,258.00 | * |
| Leases (Real Property) | 505.10 | $112,038.00 | 21% |
| Litigation (General) | 22.40 | $5,502.00 | 1% |
| Regulatory and SEC Matters | 22.90 | $5,140.00 | * |
| Reorganization Plan/Plan Sponsors | 333.60 | $107,298.50 | 21% |
| Reports and Schedules | 0.40 | $52.00 | * |
| Tax Matters | 256.20 | $75,275.00 | 14% |
| U.S. Trustee Matters | 1.30 | $396.50 | * |

* Less than 1%

*Stuart Maue*

## V.    REVIEW OF EXPENSES FOR SIXTH INTERIM PERIOD

In the Application for the sixth interim period, Smith Hulsey requested reimbursement of expenses in the amount of $22,157.41.  Stuart Maue reviewed the expenses and divided them into categories based on the type of charge.  The following table summarizes the expenses as computed and categorized by Stuart Maue:

| Category | Amount Computed | Percentage of Total Expenses |
|---|---|---|
| Document Duplicating | $10,449.90 | 47% |
| Computer-Assisted Legal Research | 3,669.73 | 17% |
| Long Distance Telephone | 2,144.96 | 10% |
| Postage | 1,859.85 | 8% |
| Outside Document Duplicating | 1,619.65 | 7% |
| Meals | 1,296.29 | 6% |
| Transcripts | 956.50 | 4% |
| Facsimile | 116.00 | * |
| Express Mail | 44.53 | * |
| **TOTAL** | **$22,157.41** | **100%** |

\* Less than 1%

These expenses are displayed by category on EXHIBIT K.

## A.    Technical Billing Discrepancies

Stuart Maue reviewed the expense items for apparent irregularities such as double billing, wrong case billing, or missing expense descriptions.  The following technical billing discrepancies were identified:

*Stuart Maue*

**V.  REVIEW OF EXPENSES FOR SIXTH INTERIM PERIOD  (Continued)**

1.      **Expenses Potentially Incurred Post Confirmation**

The Application was examined for expenses incurred after the Effective Date (November 21, 2006) of the Joint Plan of Reorganization.  Because Smith Hulsey provided only a summary of expenses by category for each month, Stuart Maue was unable to determine if any of the expenses on Statement No. 125951 with a date of "Total Costs Thru 11/30/06" were incurred after November 21, 2006.   These expenses which were potentially incurred post confirmation, totaling $5,035.36, are displayed in the following table:

| Description | Amount |
|---|---|
| Document Duplicating | $2,892.15 |
| Postage | 242.55 |
| Long-Distance Toll Charges | 565.59 |
| Westlaw | 1,266.89 |
| Facsimile Transmission | 49.00 |
| Express Mail | 19.18 |
| **TOTAL** | $5,035.36 |

**Smith Hulsey Response:**

*Smith Hulsey responded that these charges were all incurred prior to November 21, 2006, and provided a report detailing the charges, which included dates.*

B.      **Compliance With Billing Guidelines**

**Any expense for which reimbursement is sought must be actual and necessary and supported by documentation as appropriate.**  **U.S. Trustee Guidelines (b)(5)**

-22-

*Stuart Maue*

**V.  REVIEW OF EXPENSES FOR SIXTH INTERIM PERIOD  (Continued)**

Stuart Maue reviewed and analyzed the expenses for compliance with the standards for reimbursement of actual, necessary expenses set forth in the U.S. Trustee Guidelines.

1. **Complete and Detailed Itemization of Expenses**

   **Factors relevant to a determination that the expense is proper include the following:  Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate destination), method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense.  Itemized expenses should be identified by their nature (e.g., long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred.  U.S. Trustee Guidelines (b)(5)(iii)**

   Smith Hulsey provided only a summary of expenses by category for each month.   The Application did not include itemized detail or supporting documentation for the expense charges.

2. **Photocopies**

   The Application included a request for reimbursement of photocopy charges that totaled $10,449.90.  The Application stated that the requested rate for these internal photocopies was $0.15 per page.  In addition, Smith Hulsey requested $1,619.65 in outside document duplicating costs.

*Stuart Maue*

**Smith Hulsey Response:**

*In its response, Smith Hulsey reiterated that it "...billed .15 per page for internally generated copies and the exact amount of photocopy charges incurred by Smith Hulsey from outside vendors."*

*Smith Hulsey further responded, "The outside copying charges totaling $1,619.65 were for (i) documents produced by Visagent Corporation on a pending contested matter ($1,148.64), (ii) documents produced by the Department of Health and Human Services in a pending contested matter ($89.58), (iii) duplication of exhibits for the confirmation hearing ($211.22), and (iv) certified copies of pleadings in the Anchor Glass and Frances Gauthier bankruptcy cases for use as exhibits during the confirmation hearing ($170.21)."*

**3.     Facsimiles**

Smith Hulsey requested reimbursement for facsimile charges, calculated at a rate of $1.00 per page and totaling $116.00.

**4.     Computer-Assisted Legal Research**

Smith Hulsey requested reimbursement for computer-assisted legal research charges in the amount of $3,669.73.  The Application did not state the method used to calculate the computer-assisted legal research or whether the amount requested was at actual cost or at a discounted rate.

*Stuart Maue*

**V.  REVIEW OF EXPENSES FOR SIXTH INTERIM PERIOD  (Continued)**

### Smith Hulsey Response:

*In its response, Smith Hulsey stated that the computer-assisted legal research charge reflected in the application is for the firm's cost only.*

**5.      Overhead Expenses**

**Factors relevant to a determination that the expense is proper include the following:**

**Whether the expenses appear to be in the nature nonreimbursable overhead.  Overhead includes, but is not limited to, word processing, proofreading, secretarial and other clerical services, rent, utilities, office equipment and furnishings, insurance, taxes, local telephones and monthly car phone charges, lighting, heating and cooling, and library and publication charges.  U.S. Trustee Guidelines (b)(5)(vii)**

Case professionals typically charge clients to obtain reimbursement for the actual cost of out-of-pocket expense items that are directly attributable to the representation and that are not part of office overhead.  These expenses include filing fees and court costs; long-distance telephone charges; photocopying costs; travel, meal, and lodging expenses; and court reporter fees.  Expenses such as word processing and postage are generally considered to be a part of office overhead and included in the hourly rate of professionals.

The following expense items are classified as potential overhead:

**a)      Meals**

The Application included meal charges that totaled $1,296.29.  The charges were not itemized but listed by totals on a monthly basis.

*Stuart Maue*

**V.  REVIEW OF EXPENSES FOR SIXTH INTERIM PERIOD  (Continued)**

Stuart Maue was unable to determine the nature of these meal charges, the number of attendees, or the purpose of these meals.

**Smith Hulsey Response:**

*Smith Hulsey responded, "The meal charges totaling $1,296.29 consist of meals for (i) working meeting with Winn-Dixie employees and Associated Technologies Ltd. employees in preparation for the omnibus hearing held October 5, 2006 ($96.30), (ii) working meeting with Winn-Dixie employees in preparation for the omnibus hearing held November 16, 2006 ($116.65), (iii) working meeting with Winn-Dixie employees in preparation for contested hearing on Larry Green's motion for relief from stay held November 13, 2006 ($34.24), and (iv) working meetings with Winn-Dixie employees, the Blackstone Group, L.P. employees, XRoads employees, Logan and Company employees and counsel for the Creditors' Committee, in preparation for and during a break in the confirmation hearing ($1,049.10)."*

b)      **Postage**

Smith Hulsey requested reimbursement for postage totaling $1,859.85.

*Stuart Maue*

## VI.   <u>SUMMARY OF FINDINGS FOR FINAL PERIOD</u>

Stuart Maue prepared a Summary of Findings for the final period that displays the fees and expenses requested for each interim period and the totals for the final period.   The summary also includes the differences between the fees and expenses requested and the fees and expenses as computed by Stuart Maue for each interim period and the sum of the discrepancies for the final period.

In addition, the Summary of Findings displays the voluntary reductions, if any, the case professional included in the interim applications[2] and the reductions, if any, included in the case professional's responses to the fee examiner's reports for the interim and final applications.

The fee and expense categories identified by Stuart Maue in each interim report and the fees and expenses for each category are also displayed in the Summary of Findings for the final period.   The totals shown in each category have been adjusted for overlap unless otherwise noted.

Smith Hulsey requested the following professional fees and expenses in the Application for the final period:

---

[2] Only those reductions that were from the fee and expense entries submitted in the interim applications are included in this voluntary reduction amount.  If the firm referenced a reduction in fees or expenses but the fee and expense entries that made up those reductions were not included in the application, those reductions are not included in the Summary of Findings for the final period.

*Stuart Maue*

**VI.  SUMMARY OF FINDINGS FOR FINAL PERIOD  (Continued)**

| | |
|---|---|
| Professional Fees Requested: | $5,645,516.50 |
| Expense Reimbursement Requested: | 206,743.64 |
| Total Fees and Expenses: | $5,852,260.14 |
| Reductions Based on Response to Fifth Interim Initial Report: | (410.50) |
| Revised Fees and Expenses: | $5,851,849.64 |

Stuart Maue compared the total fees and expenses requested in the Application for the final period with the fees and expenses requested in each interim application.  The comparison revealed that there is no difference between the amount requested for the final period and the total amounts requested in the interim applications after the reductions to the first through fifth interim reports.

For each interim application, Stuart Maue recomputed the fees and expenses and identified any discrepancies between the amounts requested and the amounts computed.  The discrepancies for each interim period and the total discrepancy for the final period are displayed in the Summary of Findings for the final period.  The recomputation of fees for the final period shows that the total requested amount is $284.50 more than the computed amount.  The recomputation of expenses for the final period revealed no difference between the amounts requested for reimbursement and the computed amounts.

In its responses to the first through fifth initial interim reports, Smith Hulsey requested voluntary reductions for fees in the amount of $894.50.  Those reductions are shown on the Summary of Findings

*Stuart Maue*

**VI.  SUMMARY OF FINDINGS FOR FINAL PERIOD  (Continued)**

The Summary of Findings for the final period for Smith Hulsey is shown on the following pages:

[INTENTIONALLY LEFT BLANK]