**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al.,  ) | | Chapter 11 |
| Debtors. | ) | Jointly Administered |

## <u>NOTICE OF FILING</u>

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as debtors and debtors in possession, give notice of filing of the attached Final Report of the Review and Analysis prepared by Stuart Maue, Fee Examiner, of the Sixth Interim and Final Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP, bankruptcy counsel for Winn-Dixie Stores, Inc., for the sixth interim period from October 1, 2006, through and including November 21, 2006 and for the final period from February 21, 2006, through and including November 21, 2006.

Dated:  July 25, 2007.

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By ___*s/ D. J. Baker*_____
    D. J. Baker
    Sally McDonald Henry
    Rosalie Gray

Four Times Square
New York, NY  10036
(212) 735-3000
(917) 777-2150 (facsimile)
djbaker@skadden.com


Co-Counsel for Debtors

SMITH HULSEY & BUSEY

By ___*s/ Cynthia C. Jackson*_____
    Stephen D. Busey
    James H. Post
    Cynthia C. Jackson

Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, FL  32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com


Co-Counsel for Debtors

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

### Fee Examiner's Report for Sixth Interim and Final Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP

Stuart Maue, acting in its capacity as fee examiner in the above-captioned proceeding, submits the final written report of its review and analysis of the Skadden, Arps, Slate, Meagher & Flom LLP, Sixth Interim Fee Application for period from October 1, 2006, through November 21, 2006 and the Final Fee Application for the period from February 21, 2005, through November 21, 2006.

1.       On December 14, 2005, the Court entered an order effective December 1, 2005, authorizing the employment and retention of Stuart Maue to serve as fee examiner and to review all fee applications filed with the Court and the statements submitted by professionals retained by Wachovia Bank, N.A. in its capacity as agent for itself and other postpetition lenders (the "Agent").

2.       Stuart Maue conducted a review and analysis of the fees and expenses requested by Skadden, Arps, Slate, Meagher & Flom LLP for the sixth interim period and prepared a

written report including exhibits of that review which is attached and incorporated by reference.

3.      In addition, Stuart Maue reviewed the fees and expenses requested by Skadden, Arps, Slate, Meagher & Flom LLP in all prior interim periods and filed a written report for each interim fee application with the Court.

4.      The attached report includes a Summary of Findings for Final Period, which displays the fees and expenses requested by Skadden, Arps, Slate, Meagher & Flom LLP by interim and final periods.  Also displayed are differences, if any, between the amounts requested by the firm and the amounts computed by Stuart Maue and any reductions in the fees and expenses taken by the firm in its fee applications or in its responses to the initial Stuart Maue reports.  In addition, the fees and expenses identified by category from each interim report along with a total for the final period are shown in this summary.

STUART MAUE

By _____
Linda K. Cooper
3840 McKelvey Road
St. Louis, Missouri  63044
314-291-3030
314-291-6546 (facsimile)

Fee Examiner

-2-

**ATTACHMENT 1**

# Final Report of the
# Review and Analysis of

# Sixth Interim and Final Fee Application Submitted by

### SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
of
### Wilmington, Delaware

For the Interim Period

**October 1, 2006 Through November 21, 2006**

And

For the Final Period

**February 21, 2005 Through November 21, 2006**



In the Matter Entitled

## *In re:  Winn-Dixie Stores, Inc., et al.*

**United States Bankruptcy Court
Middle District of Florida
Jacksonville Division**

**Case No. 05-03817-3F1**



Issued

**May 3, 2007**

*Stuart Maue*

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### SUMMARY OF FINDINGS FOR SIXTH INTERIM PERIOD

#### Sixth Interim Application (October 1, 2006 Through November 21, 2006)

**A.    Amounts Requested and Computed**

| | | |
|---|---|---|
| Fees Requested | $2,154,834.50 | |
| Expenses Requested | 41,352.70 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $2,196,187.20 |
| | | |
| Fees Computed | $2,151,106.00 | |
| Expenses Computed | 41,352.70 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $2,192,458.70 |
| | | |
| Discrepancies in Fees: | | |
|   Task Hours Not Equal to Entry Hours | $3,728.50 | |
| | | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | $    3,728.50 |

**B.    Amounts Requested – Based on Response**

| | | |
|---|---|---|
| Fees Requested | $2,154,834.50 | |
| *Voluntary reduction due to task hour discrepancy* | *(3,728.50)* | |
| | | |
| REVISED FEES REQUESTED | $2,151,106.00 | |
| | | |
| Expenses Requested | $41,352.70 | |
| | | |
| REVISED EXPENSES REQUESTED | 41,352.70 | |
| | | |
| REVISED TOTAL FEES AND EXPENSES REQUESTED | | $2,192,458.70 |

*Stuart Maue*

**SUMMARY OF FINDINGS FOR SIXTH INTERIM PERIOD (Continued)**

## C.    Professional Fees

### 1.    Compliance With Billing Guidelines

| Page No. | | Exhibit | Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|---|
| 6 | Fees Attributable to Hourly Rate Increases | B-2 | | $291,612.00 | 14% |
| 9 | Vaguely Described Conferences | C-1 | 11.00 | 6,775.50 | * |
| 9 | Other Vaguely Described Activities | C-2 | 45.75 | 28,054.75 | 1% |
| 13 | Blocked Entries | D | 17.20 | 7,094.00 | * |
| 14 | Intraoffice Conferences | E | 127.80 | 70,747.00 | 3% |
| 14 | Intraoffice Conferences - Multiple Attendance | E | 60.70 | 32,555.50 | 2% |
| 16 | Nonfirm Conferences, Hearings, and Other Events | F | 202.70 | 131,559.00 | 6% |
| 16 | Nonfirm Conferences, Hearings, and Other Events - Multiple Attendance | F | 127.95 | 73,922.25 | 3% |

### 2.    Fees to Examine for Necessity, Relevance, and Reasonableness

| Page No. | | Exhibit | Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|---|
| 18 | Personnel Who Billed 10.00 or Fewer Hours | G | 51.80 | $19,682.50 | * |
| 19 | Days Billed in Excess of 12.00 Hours | H-1 | 151.00 | 92,161.00 | 4% |
| 21 | Administrative/Clerical Activities by Paraprofessionals | I-1 | 240.50 | 43,047.50 | 2% |
| 21 | Administrative/Clerical Activities by Professionals | I-2 | 16.77 | 8,269.17 | * |
| 24 | Legal Research | J | 119.27 | 52,603.67 | 2% |
| 25 | Nonworking Travel | K | 10.80 | 7,363.50 | * |
| 26 | Skadden, Arps Retention and Compensation | L-1 | 163.50 | 93,030.00 | 4% |
| 26 | Other Case Professionals Retention and Compensation | L-2 | 30.10 | 15,228.50 | * |
| 26 | Response to Fee Examiner Report | L-3 | 77.90 | 34,860.00 | 2% |

## D.    Expenses

### 1.    Compliance With Billing Guidelines

| Page No. | | Exhibit | Amount |
|---|---|---|---|
| 31 | Travel Expenses – Airfare | M-1 | $ 5,092.73 |
| 31 | Potentially Duplicative Airfare Charges | | 1,253.85 |
| 31 | Travel Expenses – Meals | M-2 | 318.77 |
| 31 | Other Travel Expenses | M-3 | 2,101.80 |

---

* Less than 1%

*Stuart Maue*

**SUMMARY OF FINDINGS FOR SIXTH INTERIM PERIOD (Continued)**

| Page No. | | Exhibit | Amount |
|---|---|---|---|
| 35 | Photocopy Charges | | $ 1,629.50 |
| 35 | Color Photocopying | | 13.50 |
| 35 | Computer-Assisted Legal Research | N | 18,627.42 |
| 36 | Contracted Catering – NY | O | 990.79 |
| 37 | Postage | | 17.94 |
| 37 | Telephone Charges | P | 212.94 |

### E.   Adjustment to Eliminate Overlap Between Categories

#### 1.   Fees

| Page No. | | Before Adjustment for Overlap | | Overlap | | After Adjustment for Overlap | |
|---|---|---|---|---|---|---|---|
| | | Hours | Fees | Hours | Fees | Hours | Fees |
| 21 | Administrative/Clerical Activities by Paraprofessionals | 240.50 | $43,047.50 | 0.00 | $ 0.00 | 240.50 | $43,047.50 |
| 21 | Administrative/Clerical Activities by Professionals | 16.77 | 8,269.17 | 0.00 | 0.00 | 16.77 | 8,269.17 |
| 16 | Nonfirm Conferences, Hearings, and Other Events – Multiple Attendance | 127.95 | 73,922.25 | 0.00 | 0.00 | 127.95 | 73,922.25 |
| 14 | Intraoffice Conferences – Multiple Attendance | 60.70 | 32,555.50 | 0.20 | 63.00 | 60.50 | 32,492.50 |
| 9 | Vaguely Described Conferences | 11.00 | 6,775.50 | 0.00 | 0.00 | 11.00 | 6,775.50 |
| 9 | Other Vaguely Described Activities | 45.75 | 28,054.75 | 0.00 | 0.00 | 45.75 | 28,054.75 |
| 13 | Blocked Entries | 17.20 | 7,094.00 | 8.17 | 2,655.67 | 9.03 | 4,438.33 |
| 18 | Personnel Who Billed 10.00 or Fewer Hours | 51.80 | 19,682.50 | 3.40 | 2,125.00 | 48.40 | 17,557.50 |
| 24 | Legal Research | 119.27 | 52,603.67 | 8.27 | 2,658.67 | 111.00 | 49,945.00 |
| 25 | Nonworking Travel | 10.80 | 7,363.50 | 0.00 | 0.00 | 10.80 | 7,363.50 |

#### 2.   Expenses

| Page No. | | Before Adjustment for Overlap | Overlap Amount | After Adjustment for Overlap Amount |
|---|---|---|---|---|
| 31 | Potentially Duplicative Airfare Charges | $1,253.85 | $0.00 | $1,253.85 |
| 36 | Contracted Catering - NY | 990.79 | 0.00 | 990.79 |
| 37 | Postage | 17.94 | 0.00 | 17.94 |

*Stuart Maue*

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ................................................................. 1

II.     PROCEDURES AND METHODOLOGY ..................................... 3
        A.      Appendix A ............................................................ 3
        B.      Overlap Calculation ............................................... 3

III.    RECOMPUTATION OF FEES AND EXPENSES FOR SIXTH INTERIM PERIOD... 4

IV.     REVIEW OF FEES FOR SIXTH INTERIM PERIOD ........................ 6
        A.      Technical Billing Discrepancies ............................... 6
        B.      Compliance With Billing Guidelines .......................... 6
                1.      Firm Staffing and Rates.................................. 6
                        a)      Timekeepers and Positions ................... 6
                        b)      Hourly Rate Increases.......................... 8
                2.      Time Increments ......................................... 8
                3.      Complete and Detailed Task Descriptions........... 9
                        a)      Vaguely Described Conferences ............. 9
                        b)      Other Vaguely Described Activities ........ 10
                4.      Blocked Entries ......................................... 13
                5.      Multiple Professionals at Hearings and Conferences ...... 14
                        a)      Intraoffice Conferences ...................... 14
                        b)      Nonfirm Conferences, Hearings, and Other Events .............. 16
        C.      Fees to Examine for Necessity, Relevance, and Reasonableness.................. 18
                1.      Personnel Who Billed 10.00 or Fewer Hours ............... 18
                2.      Long Billing Days ....................................... 19
                3.      Administrative/Clerical Activities ...................... 21
                4.      Legal Research .......................................... 24
                5.      Travel .................................................. 25
                6.      Summary of Projects .................................... 26

V.      REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD ............... 29
        A.      Technical Billing Discrepancies ............................. 30
        B.      Compliance With Billing Guidelines ........................ 30
                1.      Complete and Detailed Itemization of Expenses ......... 30
                2.      Travel Expenses ........................................ 31
                        a)      Airfare ..................................... 31
                        b)      Meals....................................... 33
                        c)      Other Travel Expenses....................... 34
                3.      Photocopies ............................................ 35

*Stuart Maue*

**TABLE OF CONTENTS (Continued)**

**Page No.**

    4.    Computer-Assisted Legal Research ............................................. 35
    5.    Overhead Expenses .............................................................. 35
        a)    Local Meals .................................................................. 36
        b)    Postage ....................................................................... 37
        c)    Telephone Charges ..................................................... 37

VI.    SUMMARY OF FINDINGS FOR FINAL PERIOD ......................................... 39
    A.    Total Fees and Expenses and Differences ............................................. 42
    B.    Reductions by Firm and Revised Requested Amounts ............................. 42
    C.    Professional Fees ............................................................................... 43
    D.    Expenses .......................................................................................... 45

*Stuart Maue*

# TABLE OF EXHIBITS

<u>Page No.</u>

A.  Discrepancy Schedule ................................................................. 4

B-1.  Summary of Hours and Fees by Timekeeper and Position
B-2.  Schedule of Fees Attributable to Hourly Rate Increases ...................... 6

C-1.  Vaguely Described Conferences
C-2  Other Vaguely Described Activities ........................................... 9

D.  Blocked Entries............................................................... 13

E.  Intraoffice Conferences ..................................................... 14

F.  Nonfirm Conferences, Hearings, and Other Events ......................... 16

G.  Personnel Who Billed 10.00 or Fewer Hours................................. 18

H-1.  Days Billed in Excess of 12.00 Hours
H-2.  Daily Calendar............................................................ 19

I-1.  Administrative/Clerical Activities by Paraprofessionals
I-2.  Administrative/Clerical Activities by Professionals........................ 21

J.  Legal Research ............................................................ 24

K.  Nonworking Travel......................................................... 25

L-1.  Skadden, Arps Retention and Compensation
L-2.  Other Case Professionals Retention and Compensation
L-3.  Response to Fee Examiner Report ......................................... 26

M-1.  Travel Expenses – Airfare
M-2.  Travel Expenses – Meals
M-3.  Other Travel Expenses .................................................... 31

N.  Computer-Assisted Legal Research ........................................ 35

*Stuart Maue*

**TABLE OF EXHIBITS (Continued)**

<u>**Page No.**</u>

O.       Contracted Catering – NY ........................................................................... 36

P.       Telephone Charges ..................................................................................... 37

*Stuart Maue*

## I.   __INTRODUCTION__

The United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, entered an order effective December 1, 2005, authorizing the employment and retention of Stuart, Maue, Mitchell & James, Ltd. ("Stuart Maue") to serve as fee examiner in the jointly administered cases entitled *In re: Winn-Dixie Stores, Inc., et al.,* Case No. 05-03817-3F1.   The order authorized and directed Stuart Maue to review all fee applications filed with the Court and to review the statements submitted by professionals retained by Wachovia Bank, N.A. in its capacity as agent for itself and other postpetition lenders (the "Agent").

The review and analysis of the professionals' fee applications are pursuant to the applicable standards of 11 U.S.C. §§ 330 and 331, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the local rules of this Court (the "Local Rules"), and the United States Trustee Guidelines for Reviewing Applications for the Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "U.S. Trustee Guidelines"). The statements submitted by the professionals retained by the Agent are reviewed and analyzed pursuant to a reasonableness standard as referenced in 11 U.S.C. § 328 and the Bankruptcy Rules.

Stuart Maue conducted a review and analysis of the "Sixth Interim Application of Skadden, Arps, Slate, Meagher & Flom LLP for Allowance and Payment of Compensation for Services Rendered and Reimbursement of Expenses Incurred (October 1, 2006 through November 21, 2006)" and the "Final Application of Skadden, Arps, Slate, Meagher &

*Stuart Maue*

**I.  INTRODUCTION  (Continued)**

Flom LLP  for  Allowance  and  Payment  of  Compensation  for  Services  Rendered  and Reimbursement of Expenses Incurred (February 21, 2005 through November 21, 2006)" (the "Application").   Skadden, Arps, Slate, Meagher & Flom ("Skadden, Arps"), located in Wilmington, Delaware, is bankruptcy counsel for Winn-Dixie Stores, Inc. and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession.

The report for the sixth interim period includes the review and analysis of the fees and expenses, the exhibits displaying the categorized fees and expenses, and the summary of findings for this period.

Also included in the report is the Summary of Findings for the final period, which displays the totals for the fee and expense categories by interim periods and by final period. This Summary of Findings also displays the fee and/or expense discrepancies identified in the interim reports and voluntary reductions included in the fee applications and/or reductions as a result of responses to the interim audit reports.

Stuart Maue prepared a written report of the initial review and analysis of the Application and provided that report to Skadden, Arps and the U.S. Trustee.  Skadden, Arps provided a written response to that initial report.  Stuart Maue reviewed the response and if information in the response was provided that indicated an error was made in the initial classification of a fee or expense entry, Stuart Maue amended the exhibit and removed the initial classification.  If the firm provided additional information that revised the text of fee or expense entries in the Application, those revisions are generally referenced in this final report.

*Stuart Maue*

### I.  INTRODUCTION  (Continued)

However, the initial classification of those entries has not been changed and those entries remain on the exhibit as originally classified.  Stuart Maue bases its report on the Application as filed with the Court.

In its response to the initial report, Skadden, Arps stated it was making certain reductions to the fees requested in the Application.  Those reductions are discussed in the sections below and displayed in the Summary of Findings.

Upon completion of the review of the firm's response and reconsideration of the initial report, Stuart Maue prepared this final report.

## II.    PROCEDURES AND METHODOLOGY

### A.    Appendix A

Stuart Maue's procedures and methodology for reviewing fees and expenses and for information regarding the exhibits are presented in Appendix A provided with this report.

### B.    Overlap Calculation

During Stuart Maue's review and analysis, a task or entry may be included in more than one category and appear on more than one exhibit.  For example, a task or entry may be classified as both blocked billing and intraoffice conference.  When a task or entry is included in more than one category, "overlap" occurs among the hour and fee calculations for those categories.  In order to ensure that the hours and fees for a task or entry are not "counted" more than once in any reduction of fees, Stuart Maue

*Stuart Maue*

calculated the overlap.[1]   The overlap calculation is displayed in Section E of the Summary of Findings and includes the totals for each category before and after the calculation for overlap and the total dollar amount of the overlap in each category.

## III.   RECOMPUTATION OF FEES AND EXPENSES FOR SIXTH INTERIM PERIOD

Skadden, Arps requested the following professional fees and expenses in the Application for the sixth interim period:

| | |
|---|---|
| Professional Fees Requested: | $2,154,834.50 |
| Expense Reimbursement Requested: | 41,352.70 |
| Total Fees and Expenses: | $2,196,187.20 |

Stuart Maue recomputed the total fees and expenses and compared this to the fees and expenses requested in the Application for the sixth interim period.  The hours billed by each professional or paraprofessional were totaled, and these amounts were multiplied by the individual hourly rates.  The recomputation of fees`revealed that the requested amount was $3,728.50 more than the computed amount.  The discrepancy is the result of task hours within some entries that did not equal the time billed for the entry as a whole.  The discrepancy is displayed on EXHIBIT A.

---

[1] The overlap calculation does not include the categories for hourly rate increases or days billed in excess of 12.00 hours.  The classification of these categories is based on the total hours and fees billed for the category and not on individual entries within the category.  A review of these two categories allows a determination of the reasonableness of the total fees attributable to hourly rate increases and the time billed in excess of 12.00 hours. Overlap calculations for hourly rate increases and long billing days are available upon request to Stuart Maue.

*Stuart Maue*

**III.  RECOMPUTATION OF FEES AND EXPENSES  (Continued)**

The recomputation of expenses revealed no difference between the requested amount and the computed amount.  This initial report and the attached exhibits are based on the fees and expenses computed by Stuart Maue.

**Skadden, Arps Response:**

*Skadden, Arps responded, "The Report reflects that the amount of fees requested in the Sixth Application was $3,728.50 more than the amount computed by Stuart Maue...Skadden, Arps will reduce its fees in this amount."*

*Stuart Maue*

## IV.    REVIEW OF FEES FOR SIXTH INTERIM PERIOD

### A.    Technical Billing Discrepancies

Stuart Maue examined the billing entries for apparent irregularities such as double billing, wrong case billings, and missing task descriptions.  No technical billing discrepancies were identified in the Application.

### B.    Compliance With Billing Guidelines

Stuart Maue reviewed and analyzed the fees and billing entries for compliance with the standards for compensation as set forth in the U.S. Trustee Guidelines.  The following discusses the firm's compliance with these guidelines:

#### 1.    Firm Staffing and Rates

**The following information should be provided in every fee application:    (iii) Names and hourly rates of all applicant's professionals and paraprofessionals who billed time, explanation of any changes in hourly rates from those previously charged, and statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than under title 11.  U.S. Trustee Guidelines (b)(1)(iii)**

##### a)    Timekeepers and Positions

The Application provided the names, positions, and hourly rates of the firm's professionals and paraprofessionals who billed time to this matter.    Skadden, Arps staffed this matter with 42 timekeepers, including 7 partners, 7 counsel, 16 associates, 4 law clerks,    and 8 paraprofessionals.  EXHIBIT B-1 displays the hours and fees billed by each of the Skadden, Arps timekeepers during the sixth interim period.

*Stuart Maue*

### IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

Skadden, Arps billed a total of 3,854.50 hours during this sixth interim period.  The following table displays hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner | 702.20 | 18% | $  594,477.50 | 28% |
| Counsel | 846.50 | 22% | 521,595.50 | 24% |
| Associate | 1,715.30 | 45% | 889,947.50 | 41% |
| Law Clerk | 315.20 | 8% | 99,288.00 | 5% |
| Paraprofessional | 275.30 | 7% | 45,797.50 | 2% |
| TOTAL | 3,854.50 | 100% | $2,151,106.00 | 100% |

The blended hourly rate for the Skadden, Arps' professionals was $614.59 and the blended hourly rate for professionals and paraprofessionals was $558.08.

### Skadden, Arps Response:

*Skadden, Arps responded, "Skadden, Arps believes that all timekeepers for the interim period performed necessary services.*

*Skadden, Arps submits that these cases have been, and continue to be, appropriately staffed.  As shown in the above chart, 60% of the hours recorded in the interim period were charged by associates and paraprofessionals."*

*Stuart Maue*

### IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

**b)**    **Hourly Rate Increases**

Skadden, Arps increased the hourly rates of 30 timekeepers during the sixth interim period.  The increases ranged from $15.00 to $100.00 per hour.  The Application stated that "The firm adjusts its hourly rates from time to time."  Skadden, Arps has increased the hourly rates of other professionals and paraprofessionals during prior interim periods.

The hourly rate increases of all timekeepers whose rates changed during this interim period and during the prior interim periods resulted in $291,612.00 in additional fees billed to this matter during the sixth interim period.  The timekeepers whose rates changed during this interim period or the prior periods and the fees associated with those rate increases are displayed on EXHIBIT B-2.

**Skadden, Arps Response:**

*Skadden, Arps responded, "The rate increases in question were applied firm-wide to all clients and Skadden, Arps believes them to have been reasonable and appropriate."*

**2.**    **Time Increments**

**Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour.   U.S. Trustee Guidelines (b)(4)(v)**

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

All the billing entries in the Application contained a time allotment and were billed in increments of tenths of an hour.

3.      **Complete and Detailed Task Descriptions**

**Services should be noted in detail...Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time entries for court hearings and conferences should identify the subject of the hearing or conference.**  U.S. Trustee Guidelines (b)(4)(v)

Activity descriptions should identify each service separately and sufficiently so that the benefit derived from such service may be ascertained, and it may be determined that the time expended was reasonable and necessary.

Most of the activity descriptions included in the Application for the sixth interim period were sufficiently detailed.  Stuart Maue identified some vaguely described activities as follows:

a)      **Vaguely Described Conferences**

Activity descriptions for conferences and telephone calls should identify the participants and also the subject-matter or purpose of the communication.  Conferences and meetings in the Application for the sixth interim period that either did not identify the participants or did not specify the subject-matter or purpose of the communication are identified as vaguely described conferences and appear on EXHIBIT C-1 and total 11.00 hours with $6,775.50 in associated fees.

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

**Skadden, Arps Response:**

*Skadden, Arps responded, "While the time entries identified in the Report do not, at times, identify both the participants and the subject matter of the conferences, this should not create an impediment to a meaningful review of Skadden, Arps' time."*

*In its response, Skadden, Arps provided additional detail to clarify the fee entries classified as vaguely described conferences.  This addition detail clarified all of the entries and these entries as revised would no longer be considered vaguely described conferences; however, as noted above, Stuart Maue bases its report on the Application as filed with the court and not on subsequent amended fee entries.*

**b)      Other Vaguely Described Activities**

Activity descriptions for the review of documents and correspondence should identify the person or party who prepared the document or correspondence and its subject-matter.  If the documents were not recently received or were previously reviewed, the description should also state the purpose of the review.  A description of correspondence should identify the correspondent and the subject of the correspondence.  Similarly, a description for preparation of pleadings should identify the pleading drafted or revised.

*Stuart Maue*

### IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

Activity descriptions for legal research should include the issues researched and the purpose of the research.  The activity description must be sufficiently detailed to allow a determination of whether the research is case-related, whether the research is presumably familiar to experienced professionals, or whether the research is performed by a professional with an appropriate experience level.

Activity descriptions that use the phrases "attention to," "follow up," or "work on" generally do not provide sufficient detail to determine the actual activity that is performed (e.g., conference, review, research, etc.).

The entries identified as other vaguely described activities are displayed on EXHIBIT C-2 and total 45.75 hours with $28,054.75 in associated fees.

### Skadden, Arps Response:

*Skadden, Arps responded, "Nothing in the entries identified in the Report prevents meaningful review of Skadden, Arps' services.  The narrative descriptions set out in the Sixth Application provide a sufficient level of context for determining whether the services rendered were reasonable given the issues addressed and the amounts requested –*

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

*particularly when evaluated in the context of the facts and circumstances surrounding these chapter 11 cases, and other time entries.*

*Stuart Maue identifies on Report Exhibit C-2 entries that contain the phrases 'work on,' 'attention to,' or 'follow up,' asserting that such phrases are generally considered vague. … The Guidelines, however, do not define any of the above terms as being either vague or noncompensible.  These entries would not have been described as vague if a different verb had been utilized.  Skadden, Arps should not be penalized for utilizing a particular verb or term where a difference verb or term could easily be used to describe the same services that were rendered."*

*Skadden, Arps further responded, "Stuart Maue also identifies entries that contain the term 'address.'  Similarly, had the timekeeper used a different term, the entry would not be categorized as vague."*

*In its response, Skadden, Arps revised the fee entries classified as other vaguely described activities by providing additional detail.  These revisions clarified all of the entries and those entries would no longer be considered vaguely described; however, as noted above, Stuart Maue bases its report on the Application as filed with the court and not on subsequent amended fee entries.*

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

4.    **Blocked Entries**

**Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; however, tasks performed in a project which total a de minimis amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate.  U.S. Trustee Guidelines (b)(4)(v)**

The majority of the Skadden, Arps activity descriptions were not combined or "lumped."  Although many of the billing entries contained multiple tasks, usually each task within the entry was a single activity and included a separate time allotment.  However, Skadden, Arps lumped a few of its activity descriptions into an entry with a single time increment.  The tasks that are identified as blocked entries are displayed on EXHIBIT D and total 17.20 hours with $7,094.00 in associated fees.

**Skadden, Arps Response:**

*The firm responded that "Skadden, Arps has reviewed the time entries and believes that the reasonableness of the entries identified in the Report can be ascertained.  For example, C. Wenzel's time for November 14, 2006 reads:*

*REVIEWED OSHR CLOSING LIST AND PARTICIPATED IN CONFERENCE WITH OSHR RE: OUTSTANDING CLOSING ITEMS (.9)*

*… This entry leaves no doubt as to the timekeeper's activities.  Here, Mr. Wenzel reviewed the OSHR closing list and participated in a conference*

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

*with OSHR on outstanding items on the closing list.  The entry is sufficient to determine the nature of the services provided."*

*In addition, the firm provided revised task descriptions with additional detail for the entries identified as blocked billing.  These revisions separated the tasks and provided a separate time entry for each task.  The revised entries would no longer be considered block billed.*

5.      **Multiple Professionals at Hearings and Conferences**

**If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees.**  U.S. Trustee Guidelines (b)(4)(v)

When two or more firm timekeepers bill to attend a meeting, hearing, or other event, the task descriptions should identify and explain the role of each timekeeper who billed for that attendance and the need for multiple attendees. Neither the Application nor the task descriptions explained the need for multiple attendees at conferences, hearings, or other events.

a)      **Intraoffice Conferences**

Intraoffice conferences are necessary and appropriate; however, frequent internal conferring may indicate inappropriate levels of staffing, unnecessary conferencing, or the use of inexperienced personnel.  Stuart Maue identified 310 entries describing conferences between Skadden, Arps personnel, which represents 3% of the total fees requested in the

*Stuart Maue*

Application.    These entries are displayed on EXHIBIT E and total 127.80 hours with associated fees of $70,747.00.

On many occasions two or more participants billed for the same intraoffice conference.  The intraoffice conferences for which more than one firm timekeeper billed were identified and are marked with an ampersand **[&]** on the exhibit.    These entries total 60.70 hours with associated fees of $32,555.50.

### Skadden, Arps Response:

*The firm responded, "Skadden, Arps timekeepers admittedly confer with one another in rendering services to the Debtors.  It would be impossible to administer chapter 11 cases efficiently without intraoffice conferences.  The Guidelines do not, however, prohibit compensation for intraoffice conferences.  Instead, the Guidelines provide that conferences should identify the participants and the subject matters, and this was done by Skadden, Arps in the Sixth Application, along with Exhibit C-1."*

*Skadden, Arps further stated, "Skadden, Arps' level of intraoffice conferences was appropriate in view of the complexity of these cases and, as a result, the requested compensation is reasonable.  The ability of professionals at Skadden, Arps to confer internally among themselves,*

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

*often involving professionals from different practice areas, such as banking, corporate, employee benefits, insurance, litigation, real estate, and tax, has contributed to the expeditious resolution of numerous issues in these cases."*

**b)       Nonfirm Conferences, Hearings, and Other Events**

Stuart Maue identified those instances where two or more Skadden, Arps' professionals or paraprofessionals appeared to attend the same hearing, meeting, or other event.  These meetings and conferences do not include intraoffice conferences.

When more than one timekeeper bills to attend a meeting, hearing, or other event, the activity descriptions should identify and explain the role of each timekeeper billing for that activity and the need for multiple attendees.  Neither the Application nor the activity descriptions explained the need for multiple attendees.  Stuart Maue identified many occasions when two or more Skadden, Arps' timekeepers billed for attendance at a nonfirm conference, hearing, or other event.  For example, on October 6, 2006, six timekeepers each billed 2.00 hours to participate in a conference call with Winn-Dixie regarding comments to the credit agreement.  Also on October 6, 2006, five timekeepers each billed 1.40 hours to participate in conference call with Wachovia, Otterbourg, Milbank, and Winn-Dixie to discuss credit

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

agreement issues.   On November 21, 2006,  nine timekeepers billed between 1.80 hours and 2.40 hours and one timekeeper billed 0.50 hour for partial attendance to participate in a telephone conference regarding the consummation of the plan and closing the exit financing.

EXHIBIT F displays the entries where two or more Skadden, Arps' timekeepers billed for attendance at a nonfirm conference, hearing, or other event.   Those entries total 202.70 hours with $131,559.00 in associated fees.   The entries for all participants other than the timekeeper who appears to be the most responsible at the event (i.e., the one who bills the most fees and/or hours) are marked with an ampersand **[&]** on this exhibit and total 127.95 hours with associated fees of $73,922.25.

**Skadden, Arps Response:**

*Skadden, Arps responded, "Cases as large and complex as these cases require the services of professionals in multidisciplinary areas, such as banking, corporate, employee benefits, insurance, litigation, real estate, and tax law."*

*The firm further stated that "Stuart Maue states that '[n]either the Application nor the activity descriptions explained the need for multiple attendees.' …Skadden, Arps respectfully submits that the Sixth*

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

*Application and Final Application do, in fact, explain the need for multiple attendees." The firm concluded, "Accordingly, Skadden, Arps submits that the compensation sought is reasonable and should not be denied."*

C.    **Fees to Examine for Necessity, Relevance, and Reasonableness**

Stuart Maue reviewed the Application and identified several billing practices to examine for necessity, relevance, and reasonableness under the standards of Section 330 of the Bankruptcy Code.

1.    **Personnel Who Billed 10.00 or Fewer Hours**

A review of the fee entries of timekeepers who bill relatively few hours to a matter allows a determination of whether these timekeepers are duplicating the work of others, whether the use of these timekeepers increases the cost to the estate because of orientation or the "getting up-to-speed" that may be required, or whether the small amount of time billed contributed to the advancement of the case.  During the sixth interim period, eight Skadden, Arp's timekeepers billed 10.00 or fewer hours.  Three of those individuals were new timekeepers who did not bill during prior interim periods.

The entries for timekeepers who billed 10.00 or fewer hours are displayed on EXHIBIT G and total 51.80 hours with associated fees of $19,682.50.

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

**Skadden, Arps Response:**

*Skadden, Arps responded, "Neither the Bankruptcy Code nor the Guidelines penalize a firm on the basis that a timekeeper has billed too few hours.  To the contrary, Skadden, Arps submits that the services performed were reasonable and necessary."*

*The firm provided a schedule that displayed the eight timekeepers who billed 10.00 or fewer hours by name and provided a general description of the matters upon which they worked.  The firm further stated, "Three of the eight timekeepers are non-bankruptcy specialists.  These timekeepers used their specialized knowledge to assist in the bankruptcy cases without the need for any orientation time to perform their services.  One timekeeper is a corporate restructuring associate who assisted in a discrete matter involving claims. Three timekeepers are non-bankruptcy paraprofessionals that assisted in isolated matters and did not require knowledge of the bankruptcy cases to perform the services.  The final timekeeper is a corporate restructuring paraprofessional who worked on an isolated matter and did not require getting up-to-speed time."*

2.    **Long Billing Days**

Courts have generally held that billable time for professional services should include only those tasks that relate directly to work for the client. Professionals necessarily must spend some portion of each day on personal

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

matters, such as meals and breaks, and frequently spend time on administrative matters, such as training or supervision of others.   Professionals may periodically work extraordinarily long hours without many breaks because of the demands of the representation.   However, such long hours are generally related to identifiable circumstances such as court deadlines, travel, or event attendance.

Stuart Maue identified 11 days where Skadden, Arps timekeepers billed in excess of 12.00 hours.   Those billing entries total 151.00 hours with $92,161.00 in associated fees and are displayed on EXHIBIT H-1.

EXHIBIT H-2 displays a calendar which shows the total number of hours billed by each timekeeper per day and per month.

**Skadden, Arps Response:**

*Skadden, Arps responded that the fee entries included in the long billing days category contained nonworking travel time and stated that "...a more relevant calculation is the total number of hours exceeding 12.00 hours per day (without including any non-working travel time)."   The firm provided a chart showing the total hours billed in excess of 12.00 hours a day that did not include the nonworking travel time.   Stuart Maue notes that because the firm billed for the nonworking travel time, it is appropriately included in the long billing day classification and as such, EXHIBIT H-1 remains unchanged.   Stuart Maue*

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

*further notes that all of Skadden, Arps travel entries were billed at one-half the actual travel time.*

*In addition, Skadden, Arps stated, "The hours billed by timekeepers in excess of 12.00 hours per day during the interim period are minimal..."*

3.  **Administrative/Clerical Activities**

Activities associated with the day-to-day operations of the professional firm are considered to be administrative in nature and, as such, are reflected in the hourly rates charged by the firm.

Clerical activities include tasks that may be effectively performed by administrative assistants, secretaries, or support personnel.  The performance of clerical or secretarial tasks by attorneys, accountants, paralegals, and other paraprofessionals generally constitutes nonbillable time and should be delegated to nonbilling staff members.  Courts have held that time spent performing administrative or clerical activities such as filing, organizing and updating files, retrieving and distributing documents, checking the docket, calendaring events, photocopying, scanning documents, training and assignment of tasks to staff members, or "supervising" any of the foregoing is not compensable.

Entries describing administrative and clerical activities by a paraprofessional are displayed on EXHIBIT I-1 and total 240.50 hours with $43,047.50 in associated fees.

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

Entries describing administrative and clerical activities by a professional are displayed on EXHIBIT I-2 and total 16.77 hours with $8,269.17 in associated fees.

**Skadden, Arps Response:**

*Skadden, Arps responded that the fee entries identified as administrative/clerical activity by paraprofessionals were appropriately performed by paraprofessionals.  The firm stated, "...services that should be rendered by a paraprofessional, including the following:  (a) research/retrieval of case documents, including pleadings from the docket, (b) preparation of case communication lists and documents, (c) revision of case calendar and working group lists, (d) research and preparation of documents for filing, (e) preparation and distribution of media updates and other documents, and (f) assembling/preparing service documents."*

*Skadden, Arps also stated that "Paraprofessionals are trained to provide the above-listed services.  Such services require specialized skills of paraprofessionals and, accordingly, were appropriately assigned to paraprofessionals.  Especially since the advent of electronic case filing, docket searches and filings require specialized training, for which secretaries and clerical staff are not trained.  The vast majority of entries identified by Stuart Maue resulted from services of the primary paraprofessional on these cases.*

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

*The delegation of these services primarily to one paraprofessional confirms an effort to utilize efficient case management practices."*

*In addition, the firm provided a summary of services by law clerks Kimberly Harris, J.R. Lederer and Teddy Schwarzman and stated that, "The services performed by these timekeepers are not administrative in nature."*

In the response, the firm's summary of services for the above-identified law clerks does not include the actual entries billed by these paraprofessionals. The services described in the summary do not appear to describe the actual activities performed by the law clerks.  Stuart Maue re-reviewed the fee entries identified as administrative/clerical activities by Ms. Harris, Mr. Lederer and Mr. Schwarzman and determined that they were appropriately identified as administrative/clerical.  The exhibit remains unchanged.

*With respect to administrative/clerical activity by professionals, Skadden, Arps stated, "Many of the entries identified by Stuart Maue are entries indicating the coordination, distribution and circulation of information or documents by professionals. Skadden, Arps respectfully submits that it is necessary for professionals to ensure that proper documents and information are assembled and distributed to case parties.  The information and documents distributed were necessary to promote communication among the appropriate parties in interest.  The distribution is often to the client, opposing parties, or*

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

*other persons in interest, and is more akin to correspondence. Often, documents distributed are attached in e-mail and enclosed with a memorandum seeking information or informing or advising of case issues.  In any event, the distribution is necessary to promote communications on the issue at hand."*

*Skadden, Arps also provided additional detail to amend the fee entries classified as administrative/clerical activity by professionals.  Stuart Maue reviewed the revised entries and determined that some of the revised entries would no longer be classified administrative/clerical activity; however, some entries would still be considered administrative/clerical in nature.  As noted above, Stuart Maue bases its report on the Application as filed with the court and not on subsequent amended fee entries.*

**4.**   **Legal Research**

Stuart Maue identified the activities describing legal research so that a determination may be made on whether the issues researched should be familiar to experienced attorneys, whether the research is performed by attorneys with the appropriate level of experience, and whether the fees billed for research are otherwise reasonable, necessary, and relevant.

All entries describing legal research are displayed on EXHIBIT J and total 119.27 hours with $52,603.67 in associated fees.

*Stuart Maue*

**IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)**

**Skadden, Arps Response:**

*Skadden, Arps responded "…Skadden, Arps used forty-one discrete matter categories in these cases.  Legal research services recorded in specific categories render the services identifiable.  This, plus the fact that the Sixth Application discusses the services performed, allows a court to determine the reasonableness of the services provided."*

*The firm further stated, "The legal research services performed were necessary and beneficial for the estates, creditors, and other parties in interest in these cases, and the corresponding compensation, in light of the services performed, is reasonable."*

*The firm also identified two fee entries that were incorrectly categorized as legal research.  Stuart Maue reviewed those entries, acknowledged that they were incorrectly identified as legal research, and removed them from EXHIBIT J.*

5.    **Travel**

The Application stated that the nonworking travel time was billed at 50% of the actual time spent traveling.  A review of the travel entries showed that all travel entries were billed at one-half the actual travel time.  The travel entries are displayed on EXHIBIT K and total 10.80 hours with associated fees of $7,363.50.

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

**Skadden, Arps Response:**

*Skadden, Arps responded that it began billing for nonworking travel time as of August 2005, and that the hours billed for nonworking travel time represent 50% of the actual time spent traveling.*

**6.     Summary of Projects**

Skadden, Arps categorized its services into 25 billing projects including "Retention/Fee Matters (SASM&F)," "Retention/Fees/Objections (Others)," and "Fee Examiner."  For purposes of this report, Stuart Maue renamed the firm's "Retention/Fee Matters (SASM&F)" project category as "Skadden Retention and Compensation"; renamed the firm's "Retention/Fees/Objections (Others)" project category as "Other Case Professionals Retention and Compensation"; and renamed the firm's "Fee Examiner" project category as "Response to Fee Examiner Report."  All tasks related to these activities were identified by Stuart Maue and assigned to these designated categories.

Entries describing tasks related to the retention and compensation of Skadden, Arps are displayed on EXHIBIT L-1 and total 163.50 hours with $93,030.00 in associated fees.  Entries related to the retention and compensation of other case professionals are displayed on EXHIBIT L-2 and total 30.10 hours with $15,228.50 in associated fees.  Entries describing tasks related to the

*Stuart Maue*

### IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

response to fee examiners report are displayed on EXHIBIT L-3 and total 77.90 hours with $34,860.00 in associated fees.

The following table displays the firm's remaining project categories, the associated hours and fees, and the projects' percentage of the total fees requested by the firm.  The firm's project hours and fees as displayed below do not include the hours and fees relating to the hours and fees associated with the tasks reassigned to the Stuart Maue designated categories discussed above. Exhibits of each project displaying a summary of hours and fees by individual and exhibits of each project displaying the full text of each entry are available upon request to Stuart Maue.

| Project | Hours | Fees | Percentage |
|---|---|---|---|
| Asset Disposition (General) | 10.50 | $5,441.50 | * |
| Business Operations / Strategic Planning | 9.40 | $6,222.50 | * |
| Case Administration | 225.90 | $48,664.00 | 2% |
| Claims Administration (General) | 597.40 | $340,900.00 | 16% |
| Claims Administration (Reclamation/Trust Funds) | 4.90 | $2,821.50 | * |
| Disclosure Statement / Voting Issues | 22.50 | $14,886.50 | * |
| Employee Matters (General) | 80.90 | $52,263.00 | 2% |
| Executory Contracts (Personalty) | 157.80 | $80,709.00 | 4% |
| Financing (DIP and Emergence) | 1,025.70 | $546,860.50 | 25% |
| General Corporate Advice | 455.20 | $259,302.00 | 12% |
| Insurance | 25.90 | $16,167.50 | * |
| Lease (Real Property) | 31.20 | $18,243.00 | * |
| Litigation (General) | 23.20 | $13,009.00 | * |
| Nonworking Travel Time | 10.80 | $7,363.50 | * |

*Stuart Maue*

IV.  REVIEW OF FEES FOR SIXTH INTERIM PERIOD  (Continued)

| Project | Hours | Fees | Percentage |
|---------|-------|------|------------|
| Reorganization Plan / Plan Sponsors | 884.90 | $586,207.00 | 27% |
| Utilities | 16.80 | $8,927.00 | * |

\* Less than 1%

### Skadden, Arps Response:

*Skadden, Arps provided a brief memorandum discussing compensation for services rendered in connection with its fee application.  The firm stated that "These services are compensable in accordance with the facts of these cases, the Bankruptcy Code, and the Guidelines themselves."*

*In addition, Skadden, Arps responded, "Regarding the Others category, chapter 11 cases, especially large, complex chapter 11 cases, often require the efforts of multiple firms.  The Others category involves Skadden, Arps' services in connection with assisting the Debtors in retaining other firms and working with other firms to manage these cases effectively.  These services are described in the Sixth Application at 29-30 and are compensable because of their necessity for the Debtors' cases."*

*Skadden, Arps also stated, "Regarding the Fee Examiner category, the services performed were necessary to comply with the Fee Examiner Order" and "[t]he services performed during the interim period, and throughout these cases in general, for all categories of services, were necessary, and the requested compensation, in light of the services provided, is reasonable."*

*Stuart Maue*

## V.    REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD

In the Application for the sixth interim period, Skadden, Arps requested reimbursement of expenses in the amount of $41,352.70.   Stuart Maue reviewed the expenses and divided them into categories based on the type of charge.   The following table summarizes the expenses as computed and categorized by Stuart Maue:

| Category | Amount Computed | Percentage of Total Expenses |
|---|---|---|
| **Computer-Assisted Legal Research** | $18,627.42 | 45% |
| **Out-of-Town Travel:** | | |
| Airfare | 5,092.73 | 12% |
| Other Travel Expenses | 2,101.80 | 5% |
| Meals | 318.77 | * |
| **Outside Research/Internet Services** | 4,321.63 | 10% |
| **UCC Filings and Searches** | 3,012.00 | 7% |
| **Filing/Court Fees** | 2,496.00 | 6% |
| **Teleconferencing Services** | 1,789.64 | 4% |
| **In-House Reproduction** | 1,629.50 | 4% |
| **Contracted Catering (NY)** | 990.79 | 2% |
| **Courier & Express Carriers** | 728.04 | 2% |
| **Telephone Charges** | 212.94 | * |
| **Postage** | 17.94 | * |
| **Reproduction - Color** | 13.50 | * |
| **TOTAL** | $41,352.70 | 100% |

* Less than 1%

*Stuart Maue*

**IV.  REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD  (Continued)**

**A.     Technical Billing Discrepancies**

Stuart Maue reviewed the expense items for apparent irregularities such as double billing, wrong case billing, or missing expense descriptions.   No technical billing discrepancies were identified in the Application.

**B.     Compliance With Billing Guidelines**

**Any expense for which reimbursement is sought must be actual and necessary and supported by documentation as appropriate.**  U.S. Trustee Guidelines (b)(5)

Stuart Maue reviewed and analyzed the expenses for compliance with the standards for reimbursement of actual, necessary expenses as set forth in the U.S. Trustee Guidelines.

**1.     Complete and Detailed Itemization of Expenses**

**Factors relevant to a determination that the expense is proper include the following:  Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate destination), method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense.  Itemized expenses should be identified by their nature (e.g., long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred.**  U.S. Trustee Guidelines (b)(5)(v)(iii)

Skadden, Arps provided a detailed itemization for some of its expenses that included the category, the name of the timekeeper incurring the charge, the date, the description, and the amount of the charge; however, the out-of-town

*Stuart Maue*

IV.  REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD  (Continued)

travel expenses were not sufficiently detailed.  Supporting documentation for the expense charges was not included in the Application.

2.    **Travel Expenses**

a)    **Airfare**

Skadden, Arps requested reimbursement for air/rail travel in the amount of $5,092.73.   The descriptions of these expenses did not indicate the type of travel, the fare class, or the origination or destination; however, the Application stated that coach travel is used for all U.S. domestic flights unless upgrades are available at little additional cost or prior client approval is obtained for a different class.   One entry exceeded $1,400.00, but Stuart Maue is unable to determine the origination or destination for this fare.   The air/rail travel charges are itemized on EXHIBIT M-1.

**Skadden, Arps Response:**

*In its response, Skadden, Arps stated, that it "…believes that the information submitted in the Sixth Application regarding these expenses is in accordance with the Guidelines and Skadden, Arps' retention agreement by providing the date incurred, the description of the expense and the person incurring the expense."   However, in the response, additional information was provided regarding the airfare expenses which included the timekeeper name, the origination and destination of*

*Stuart Maue*

**IV.  REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD  (Continued)**

*the travel, and the fare class.  The exhibit has been revised to include this information.*

*Skadden, Arps further stated in its response "All airfare charges were for coach travel" and the detail information provided stated that each airfare was coach.*

Based on a review of the additional information provided regarding the airfare expenses, Stuart Maue notes that for the trip from September 11 to 13, 2006, partners D.J. (Jan) Baker and Sally McDonald Henry, and associate Adam S. Ravin appear to have requested reimbursement for overlapping airfare charges as displayed in the following table:

| Entry Date | Professional | Description | Amount | Questioned Airfare Charges |
|---|---|---|---|---|
| 10/10/06 | Partner D.J. (Jan) Baker | Round Trip Airfare: New York NY to Jacksonville, FL | $303.61 | $303.61 |
| 10/11/06 | | Round Trip Airfare: New York NY to Jacksonville, FL | $389.99 | |
| 10/13/06 | | One-Way Airfare: Jacksonville, FL to Charlotte, NC to New York, NY | $723.10 | |
| 10/13/06 | | Appears to be an Airfare Service Fee | $100.00 | |
| 10/11/06 | Partner Sally McDonald Henry | Round Trip Airfare: New York NY to Jacksonville, FL | $548.60 | |
| 10/13/06 | | One-Way Airfare: Jacksonville, FL to Charlotte, NC to New York, NY | $227.14 | 227.14 |

*Stuart Maue*

**IV.  REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD  (Continued)**

| Entry Date | Professional | Description | Amount | Questioned Airfare Charges |
|---|---|---|---|---|
| 10/12/06 | Associate Adam S. Ravin | Round Trip Airfare: New York NY to Jacksonville, FL | $1,473.59 | |
| 10/13/06 | | One-Way Airfare: Jacksonville, FL to Charlotte, NC to New York, NY | $723.10 | 723.10 |
| | TOTAL POTENTIALLY DUPLICATIVE AIRFARE CHARGES | | | $1,253.85 |

**b)      Meals**

Skadden, Arps requested reimbursement for out-of-town meal charges in the amount of $318.77.  The descriptions did not provide the location of the meals or the number of attendees.  The out-of-town meal charges are displayed on EXHIBIT M-2.

**Skadden, Arps Response:**

*In its response, Skadden, Arps stated that it "…believes that the information submitted in the Sixth Application regarding meal charges is in accordance with the Guidelines and Skadden, Arps' retention agreement by providing the date incurred, the description of the expense and the person incurring the expense."  However, in its response, Skadden, Arps provided additional information regarding the meal expenses.  This information included the timekeeper name, the location of the meal, the dates of the trip, and the number of attendees.  The exhibit has been revised to include this information.*

*Stuart Maue*

**IV.  REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD  (Continued)**

c)    <u>**Other Travel Expenses**</u>

Skadden, Arps requested reimbursement for charges totaling $2,101.80 described as "Out-of-Town Travel."  The firm did not identify the nature of these expenses (i.e., airfare, hotel expenses, meals, taxi, etc.).  The expense entries provided only a date, an amount, and a timekeeper name.  These expenses are itemized on EXHIBIT M-3.

<u>**Skadden, Arps Response:**</u>

*In its response, Skadden, Arps stated, "The 'Out-of-Town Travel' expense category encompasses business-related travel and lodging expenses, which are reimbursable under the terms of Skadden, Arps' retention."  The firm further responded that is was providing additional detail regarding the charges, including the character of the expenses submitted for reimbursement.  This information included the timekeeper name, origination and destination of travel, and the dates of travel.  The exhibit has been revised to include this information.  The additional information enabled Stuart Maue to categorize these travel expenses as follows:*

| *Category* | *Amount* |
|---|---|
| *Lodging* | *$1,516.87* |
| *Car Rental* | *505.63* |
| *Taxi* | *79.30* |
| *TOTAL* | *$2,101.80* |

*Stuart Maue*

**IV.  REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD  (Continued)**

3.      **Photocopies**

The Application included a request for reimbursement of photocopy charges that totaled $1,629.50.  The Application stated that the requested rate for these internal photocopies was $0.10 per-page.  In addition, Skadden, Arps is requesting $13.50 for color photocopying.

4.      **Computer-Assisted Legal Research**

Skadden, Arps requested reimbursement for Westlaw and LEXIS/NEXIS charges in the amount of $18,627.42.  The Application stated that charges for on-line computerized research are billed at the actual amounts charged by vendors, which have been reduced by discounts the firm receives from vendors. These expenses are displayed on EXHIBIT N.

5.      **Overhead Expenses**

**Factors relevant to a determination that the expense is proper include the following:**

**Whether the expenses appear to be in the nature nonreimbursable overhead.  Overhead includes, but is not limited to, word processing, proofreading, secretarial and other clerical services, rent, utilities, office equipment and furnishings, insurance, taxes, local telephones and monthly car phone charges, lighting, heating and cooling, and library and publication charges.  U.S. Trustee Guidelines (b)(5)(vii)**

Case professionals typically charge clients to obtain reimbursement for the actual cost of out-of-pocket expense items that are directly attributable to the representation and that are not part of office overhead.  These expenses include

*Stuart Maue*

**IV.  REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD  (Continued)**

filing fees and court costs; long-distance telephone charges; photocopying costs; travel, meal, and lodging expenses; and court reporter fees.  Expenses such as word processing and postage are generally considered to be a part of office overhead and included in the hourly rate of professionals.

The following expense items are classified as potential overhead:

**a)**      **Local Meals**

The Application included a request for "Contracted Catering-NY" totaling $990.79.  The expense descriptions did not indicate the purpose, the location, or the number of attendees for these meals.  The contracted catering expenses are displayed on EXHIBIT O.

**Skadden, Arps Response:**

*In its response, Skadden, Arps stated, "Skadden, Arps does not, however, charge for overhead, and this charge is not related to overhead."  The firm further stated that it "...believes that the information submitted in the Sixth Application is in accordance with the Guidelines and Skadden, Arps' retention agreement by providing the date incurred, the description of the expense and the person incurring the expense."  However, the firm provided additional information regarding the meal expenses including the timekeeper name, the number of attendees, and the type of meal (delivery or buffet lunch).  The exhibit*

*Stuart Maue*

IV.  REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD  (Continued)

*has been revised to include this information.  Based on a review of the information provided, Stuart Maue notes that Skadden, Arps incurred three catering charges for buffet lunches at a cost of approximately $30.00 per person.*

b)    <u>Postage</u>

Skadden, Arps requested reimbursement for postage totaling $17.94.

<u>Skadden, Arps Response:</u>

*In its response, Skadden, Arps stated "Under the terms of Skadden, Arps' retention, Skadden, Arps is entitled to reimbursement for postage."*

c)    <u>Telephone Charges</u>

Skadden, Arps requested reimbursement for charges described only as "Telephone Expense" totaling $212.94.  The Application stated that "There is no charge for local telephone calls..."  Stuart Maue is unable to determine if those charges include cellular telephone charges, which are, according to the U.S. Trustee Guidelines, considered to be part of the firm's overhead expenses.  The telephone charges are displayed on EXHIBIT P.

*Stuart Maue*

**IV.  REVIEW OF EXPENSES FOR THE SIXTH INTERIM PERIOD  (Continued)**

**Skadden, Arps Response:**

*In its response, Skadden, Arps stated "The Sixth Application contains no cellular telephone charges; all of the charges in question are long distance charges.   Skadden, Arps does not bill its clients for local telephone calls."*

*Stuart Maue*

## VI.  SUMMARY OF FINDINGS FOR FINAL PERIOD

Stuart Maue prepared a Summary of Findings for the final period that displays the fees and expenses requested for each interim period and the totals for the final period.  The summary also includes the differences between the fees and expenses requested and the fees and expenses as computed by Stuart Maue for each interim period and the sum of the discrepancies for the final period.

In addition, the Summary of Findings displays the voluntary reductions, if any, the case professional included in the interim applications[2] and the reductions, if any, included in the case professional's responses to the fee examiner's reports for the interim and final applications.

The fee and expense categories identified by Stuart Maue in each interim report and the fees and expenses for each category are also displayed in the Summary of Findings for the final period.  The totals shown in each category have been adjusted for overlap unless otherwise noted.

Skadden, Arps requested the following professional fees and expenses in the Application for the final period:

---

[2] Only those reductions that were from the fee and expense entries submitted in the interim applications are included in this voluntary reduction amount.  If the firm referenced a reduction in fees or expenses but the fee and expense entries that made up those reductions were not included in the application, those reductions are not included in the Summary of Findings for the final period.

*Stuart Maue*

**VI.  SUMMARY OF FINDINGS FOR FINAL PERIOD  (Continued)**

| | |
|---|---|
| Professional Fees Requested: | $18,501,989.75 |
| Expense Reimbursement Requested: | 486,975.98 |
| Total Fees and Expenses: | $18,988,965.73 |
| Reductions Based on Response to Fifth Interim Initial Report: | (1,257.00) |
| Reductions Based on Response to Sixth Interim Initial Report: | (3,728.50) |
| Revised Fees and Expenses: | $18,983,980.23 |

Stuart Maue compared the total fees and expenses requested in the Final Application with the fees and expenses requested in each of the six interim applications.  The comparison revealed that there is no difference between the amount requested for the Final Application and the total amounts requested in the interim applications, after adjustment for the reductions Skadden, Arps agreed to in its responses to the First through Fourth Interim Applications.  The firm submitted its responses to the initial reports on the Fifth and Sixth Interim Applications after its Final Application was filed with the Court.  In its response to the report for the Fifth Interim Application, Skadden, Arps agreed to an additional reduction of fees in the amount of $1,257.00.  In its response to the report for the Sixth Interim Application, Skadden, Arps agreed to an additional reduction of fees in the amount of $3,728.50.  The reductions agreed to by Skadden, Arps for all interim periods total $8,888.75 in fees and $228.51 in expenses, for a total reduction of $9,117.26.  These reductions are shown on the Summary of Findings for Final Period.

*Stuart Maue*

**VI.  SUMMARY OF FINDINGS FOR FINAL PERIOD  (Continued)**

For each interim application, Stuart Maue recomputed the fees and expenses and identified any discrepancies between the amounts requested and the amounts computed.  The recomputation of the Skadden, Arps fees by interim period revealed that the requested amount is $2,500.75 less than the computed amounts.  This discrepancy is due to task hours that did not equal the entry hours.  The recomputation of the Skadden, Arps expenses by interim period revealed that there are no differences between the amounts requested and the amounts computed.

The Summary of Findings for the final period for Skadden, Arps is shown on the following pages:

[INTENTIONALLY LEFT BLANK]