UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

WINN-DIXIE STORES, INC., ET AL.,

                    Debtors.
_____/

LIQUIDITY SOLUTIONS, INC.,

                    Appellant,
v.                                    Case No.  3:07-cv-236-J-33

WINN-DIXIE STORES, INC., ET AL.,

                    Appellee.
_____/

### ORDER

     This matter comes before the Court pursuant to the Motion to

Dismiss Appeals (Doc. # 18) filed by Winn-Dixie Stores, Inc. and

its remaining debtor subsidiaries[1] (collectively, "Winn-Dixie").

Winn-Dixie seeks an order of this Court dismissing the appeals of

the bankruptcy court's Order Confirming Chapter 11 Plan of

Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors

(Bankr. Doc. # 12440) entered on November 9, 2006 (the

_____

     [1] The Debtor subsidiaries are Astor products, Inc., Crackin'
Good, Inc., Deep South Distributors, Inc., Deep South Products,
Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie
Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy
Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek
Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc.,
Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand
Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie
Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie
Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie
Supermarkets, Inc. (Bankr. Doc. # 12618.)

"Confirmation Order"). The appeals were filed by Liquidity Solutions, Inc. and other entities collectively known as the Appellants.[2] The appeals have been consolidated (the "Consolidated Appeals").[3] Appellants filed their Response in Opposition to Winn-Dixie's Motion to Dismiss on August 20, 2007 (Doc. # 26). Winn-Dixie filed a Reply to Appellants' response on September 7, 2007 (Doc. # 31).

After due consideration, and for the reasons stated below, the Court grants Winn-Dixie's motion to dismiss and finds that the Consolidated Appeals are due to be dismissed pursuant to the doctrine of equitable mootness.

I.   **PROCEDURAL BACKGROUND**

On February 21, 2005 (the "Petition Date"), Winn-Dixie filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the Southern District of New York (Bankr. Doc. # 1).[4] The

---

[2] The Appellants in the Consolidated Appeals are comprised of the landlords of Winn-Dixie: Liquidity Solutions, Inc., Orix Capital Markets, LLC CWCapital Asset Management, LLC and Bank of America, as Trustee of Betty Holland, E&A Financing II LP, and E&A Southeast, LP, Shields Plaza, Inc., Villa Rica Retail Properties, LLC, and Halpern Enterprises.

[3] The present case 3:07-cv-236-J-33 is the lead case, and the consolidated, member cases are: 3:07-cv-346-J-33, 3:07-cv-238-J-33, and 3:07-cv-239-J-33.

[4] Winn-Dixie filed its Petition prior to the effective date of certain provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Accordingly, the provisions of BAPCPA shall not apply to this appeal and all statutory references are to the Bankruptcy Code as it existed on
(continued...)

bankruptcy case was thereafter transferred to the Middle District of Florida.

According to Winn-Dixie, as of the Petition Date, Winn-Dixie had over one billion dollars in pre-petition obligations, including obligations to landlords, trade vendors, note-holders, retirees, personal injury claimants, and others. (Doc. # 18 at 2.)

The United States Trustee appointed an official committee of unsecured creditors under Section 1102 of the Bankruptcy Code to represent Winn-Dixie's unsecured creditors (the "Creditors Committee"). Thereafter, a group of Winn-Dixie's retired employees formed an unofficial committee known as the Ad Hoc Retirees Committee and a group of Winn-Dixie's trade creditors formed the Ad Hoc Trade Vendors Committee.

Winn-Dixie negotiated with the Creditors Committee, the Ad Hoc Retirees Committee, and the Ad Hoc Trade Vendors Committee and developed a plan of reorganization pursuant to Section 1121 of the Bankruptcy Code (the "Plan"). Winn-Dixie filed the Plan on August 9, 2006, and, thereafter, supplemented and modified the Plan on October 3, 2006 and October 10, 2006, respectively. (Bankr. Doc. ## 10058, 11606, 11765.) Winn Dixie filed the Disclosure Statement on June 29, 2006 (Bankr. Doc. # 8854) and filed a revised Disclosure Statement on August 2, 2006 (Bankr. Doc. # 9787). The bankruptcy

---

[4](...continued)
the filing date of Winn-Dixie's Petition: February 21, 2005.

court approved the Disclosure Statement in an order dated August 4, 2006 (Bankr. Doc. # 9917).

### A.   The Plan

Under the Plan, Winn-Dixie is required to (1) cancel its old common stock; (2) issue new common stock to be listed on the NASDAQ Stock Exchange; (3) pay all administrative, priority, and secured creditors in cash in full; (4) distribute its new common stock to unsecured creditors holding allowed claims; (5) retire its debtor-in-possession financing; and (6) enter into a $725 million dollar exit financing facility with Wachovia Bank, collateralized by substantially all of Winn-Dixie's assets.

The Plan also includes a compromise of a complex dispute among creditors regarding whether or not the estates of Winn-Dixie's affiliated debtors should be substantively consolidated (the "Substantive Consolidation Compromise"). The Substantive Consolidation Compromise was proposed and negotiated by the Creditors Committee and, after a period of negotiations, agreed to by the Ad Hoc Trade Vendors Committee and the Ad Hoc Retirees Committee. As explained by Winn-Dixie, the Substantive Consolidation Compromise divides the unsecured creditors of the twenty-four estates into five different classes (note-holders, landlords, trade vendors, retirees, and others) and provides for distributions of Winn-Dixie's new common stock in differing amounts

to each class.[5]  Although some of the landlords hold guarantee
claims against Winn-Dixie and some of the landlords do not, the
Plan does not provide extra distributions to compensate for the
landlords' guarantee claims.  Section 2.2 of the Plan states:
"[A]ll Claims based on prepetition unsecured guarantees by one
Debtor in favor of any of the Debtors . . . shall be eliminated,
and no separate distributions under the Plan shall be made on
account of claims based upon such guarantees." (Bankr. Doc. # 10058
at 16).

In addition, the Plan and Disclosure Statement contain some
blanket warning language concerning the possibility of additional
issuance of shares and potential for dissolution of stock holdings.
Specifically, the Disclosure Statement warns: "The ownership
percentage represented by New Common Stock distributed on the
Effective Date under the Plan will be subject to dilution in the
event that (a) New Common Stock is issued pursuant to the New
Equity Incentive Plan, including issuances upon the exercise of
options and (b) any other shares of New Common Stock are issued
post-emergence." (Bankr. Doc. # 9787 at 105).

---

[5]    Pursuant to the Disclosure Statement, the note-holders
receive 62.69 shares of new common stock per $1,000 of allowed
claim; the landlords receive 46.26 shares of new common stock per
$1,000 of allowed claim; the trade vendors receive 46.26 shares of
new common stock per $1,000 of allowed claim; the retirees receive
38.75 shares of new common stock per $1,000 of allowed claim; and
the others receive 34.89 shares of new common stock per $1,000 of
allowed claim. (Bankr. Doc. # 9787 at 9-12, 53).

Section 6.5 of the Plan calls for Winn-Dixie to authorize 400 million shares of new common stock and to issue fifty million shares to holders of allowed unsecured claims.  (Bankr. Doc. # 10058 at 23.)  This Section of the Plan also creates a reserve for disputed claims and the New Equity Incentive Program. (Bankr. Doc. # 10058 at 23.)

Winn-Dixie mailed the Plan and accompanying Disclosure Statement to all of Winn-Dixie's creditors affected by the Plan in accordance with Section 1126 of the Bankruptcy Code.  The creditors were provided with a ballot to vote in favor of or against the Plan.  A majority of the affected unsecured creditors voted in favor of the Plan.  According to Winn-Dixie, of the 5,240 creditors who voted on the Plan, 4,876 voted in favor of confirming the Plan. With regard to the landlords, of the 421 holders of landlord claims, 324 holders accepted the Plan while 97 holders rejected it. That means roughly 23% of landlords rejected the Plan while approximately 77% in that class voted to accept the Plan. (Bankr. Doc. # 12618 at 13.)  Approximately fifty creditors filed objections to confirmation.

On October 13, 2006, the bankruptcy court held a confirmation hearing in which the bankruptcy court took evidence and heard argument on the objections to confirmation.  The bankruptcy court thereafter entered its Confirmation Order (Bankr. Doc. # 12440) and thirty-eight pages of Findings of Fact and Conclusions of Law

(Bankr. Doc. # 12618).   Among other things, the bankruptcy court determined in the Findings of Fact and Conclusions of Law that the Substantive Consolidation Compromise was "fair and equitable and in the best interests of Debtors' estate" (Bankr. Doc. # 12618 at 15). The Plan became effective on November 21, 2006 (the "Effective Date").

**B.   The Consolidated Appeals**

Liquidity Solutions; Orix Capital Markets, LLC; Bank of America as Trustee of Betty Holland, E&A Financing II, LP, E&A Southeast LP, Shields Plaza, Inc., Villa Rica Retail Properties, LLC, and Halpern Enterprises, Inc. (collectively "E&A"); and other creditors, including the Florida Tax Collectors, filed Notices of Appeal of the Confirmation Order in the district court.   Winn-Dixie filed various motions to consolidate the appeals, and this Court consolidated the Appeals with the exception of the appeal filed by the Florida Tax Collectors. (Doc. # 17; 3-07-cv-346-J-33 Doc. # 8).

The issues on appeal identified by the various Appellants are strikingly similar.   Generally, Appellants contend that the Plan does not satisfy the requirements of Section 1129 of the Bankruptcy Code.[6]   In addition, Appellants contend that the Plan violates

---

[6]   As stated by the Court in <u>Bank of America National Trust & Savings Association v. Lasalle St. Partnership</u>, 526 U.S. 434, 468 (1999), "Section 1129 defines the substantive elements that must be met to render plans eligible for confirmation by the bankruptcy
(continued...)

Section 1122(a) of the Bankruptcy Code, which requires all claims
in a particular class to be substantially similar.

For instance, Appellants Liquidity Solutions, Inc. and E&A
designated the following six issues on appeal:

1. Whether the Bankruptcy Court erred in entering the Order
   Confirming Joint Plan of Reorganization of Winn-Dixie Stores,
   Inc. and Affiliated Debtors.
2. Whether the Bankruptcy Court erred in overruling the Objection
   to Confirmation of Joint Plan of Reorganization of Winn-Dixie
   Stores, Inc. and Affiliated Debtors . . . filed by the
   Appellant and the objections of similarly situated creditors
   and appellants.
3. Whether the Bankruptcy Court erred in entering the Order
   Confirming Joint Plan of Reorganization of Winn-Dixie Stores,
   Inc. and Affiliated Debtors determining that the Debtors met
   their burden of establishing all elements of 11 U.S.C. §
   1129(a).
4. Whether the Bankruptcy Court erred in entering the Order
   Confirming Joint Plan of Reorganization of Winn-Dixie Stores,
   Inc. and Affiliated Debtors as the Debtors' plan provides less
   favorable treatment to the Appellant's class 13 guaranty
   claims than it provides to the other claims in class 13 in
   violation of 11 U.S.C. §§ 1123(a)(4) and 1129(a)(1).
5. Whether the Bankruptcy Court erred in entering the Order
   Confirming Joint Plan of Reorganization of Winn-Dixie Stores,
   Inc. and Affiliated Debtors as the Debtors' plan provides for
   an improper "deemed consolidation" that inequitably
   extinguishes the class 13 guaranty claims held by Appellant.
6. Whether the Bankruptcy Court erred in finding that the members
   of the Committee of Unsecured Creditors represented the
   interests of the Appellant in the settlement negotiations that
   led to the extinguishment of the class 13 guaranty claims held
   by the Appellant.

(Doc. # 3-6; 3:07-cv-238-J-33, Doc. 1-6 at 1-2).

Along the same lines, Appellant Orix complains that "while the
Disclosure Statement acknowledges that the Noteholders and

_____

[6](...continued)
judge after all required statutory procedures have been completed."

-8-

Landlords both have credit-enhancing guaranties, the Plan provides an enhanced distribution to the Noteholders on account of their guaranties, but does not provide an enhanced distribution to the Landlords.  Moreover, the Plan provides the Landlords with exactly the same distribution as the Vendor/Suppliers, a constituency with no guaranties." (3:07-cv-346, Doc. # 6 at 7).

Another contention raised by Appellant Orix is that Winn-Dixie failed to make certain disclosures by virtue of the fact that Winn-Dixie filed various court pleadings under seal.[7]

Appellants did not seek or otherwise obtain a stay of the Confirmation Order pending the resolution of the Consolidated Appeals.

## II.  **STANDARD OF REVIEW**

Upon entry of a final order by the bankruptcy court, a party may appeal to the district court pursuant to 28 U.S.C. § 158(a).  The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court.  In re

---

[7] Appellant Orix specifically asserts that "creditors were not able to review critical pleadings related to the Compromise until after the deadline for voting had already passed. . . .  No explanation has been given as to how the information in these documents suddenly  became public, non-confidential and non-proprietary after the passage of the voting and objection deadline. . . .  The obvious conclusion is that the Debtor and the Trade Committee withheld these documents until they could no longer interfere with the Plan and filed the Consolidation Brief and the Reiss Affidavit on the eve of confirmation in order to blunt criticism for withholding them in the first place." (3:07-cv-346-J-33, Doc. # 6 at 19-21).

Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). This Court reviews de novo the legal conclusions of the bankruptcy court, In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993). The standard of review employed by this Court in reviewing the bankruptcy court's findings of fact is the clearly erroneous standard of review described in Federal Rule of Bankruptcy Procedure 8013: "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." See In re Thomas, 883 F.2d 991, 994 (11th Cir. 1989), cert. denied, 497 U.S. 1007 (1990). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Crawford v. Western Elec. Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984)(citing United States Gypsum Co., 333 U.S. 364 (1948)).

## III. WINN-DIXIE'S ARGUMENTS

Winn-Dixie asserts that the Consolidated Appeals due to be dismissed under the equitable mootness doctrine. Winn-Dixie submits that since the Effective Date, Winn-Dixie has substantially consummated its Plan and has (1) cancelled its pre-petition common stock previously listed on the New York Stock Exchange; (2) issued 54 million shares of new common stock; (3) listed the new common

stock for public trading on the NASDAQ Stock Exchange; (4)
distributed approximately 45 million shares of its new common stock
to its pre-petition unsecured creditors in accordance with the
Substantive Consolidated Compromise in satisfaction of their
claims; (5) paid over $29.7 million in cash to allowed
administrative, secured, and priority claimants; (6) retired its
debtor-in-possession financing; and (7) closed on its $725 million
dollar exit financing facility with Wachovia Bank.    In addition,
Winn-Dixie has assumed various contracts vital for the performance
of its operations, and has operated as a reorganized entity since
the Effective Date.  Winn-Dixie has filed an affidavit of Laurence
B. Appel verifying the facts stated above.[8]

## IV.  **APPELLANTS' ARGUMENTS**

Appellants contend that the Confirmation Order departs from
the requirements of the law because some of the landlords were
treated unfairly under the Plan.[9]   Appellants point out that,
although some of the landlords held guarantee claims against Winn-

---

[8] This Court may evaluate affidavits discussing post-
confirmation activities in consideration of a motion to dismiss
based on mootness. In re Manges, 29 F.3d 1034, 1041 (5th Cir.
1994)("this court may review evidence as to subsequent events not
before the courts below which bears upon the issue of mootness.")

[9] Though the Appellants complain of many injustices, they do
not allege that the Confirmation Order should be reversed pursuant
to Section 1144 of the Bankruptcy Code because it was procured by
fraud.  Section 1144 of the Bankruptcy Code provides that a court
may revoke a confirmation order within 180 days after its entry if
the confirmation order was procured by fraud.

Dixie, they were lumped into a general group of landlords with and without guarantee claims.[10]  Appellants seek an order of this Court modifying the Confirmation Order to allocate additional shares of Winn-Dixie's New Common Stock to Appellants.

Thus, Appellants argue that the appeal is not moot because it is possible for this Court to fashion an effective remedy through modification of the Plan. Appellants assert that Winn-Dixie is holding on to undistributed New Common Stock, and that it would not prejudice Winn-Dixie to provide additional shares to Appellants.[11]

## V.  **ANALYSIS**

The Eleventh Circuit discussed the application of the mootness doctrine to bankruptcy appeals in In re Holywell Corp., 911 F.2d 1539 (11th Cir. 1990):

---

[10]  Under the Plan landlords, regardless of guarantee claims, currently receive 46.26 shares of new common stock per $1,000 of allowed claim.  The landlords holding guarantees against Winn-Dixie request that they receive additional shares of new common stock.

[11]  Appellants assert that "the Debtor has authorized 400,000,000 shares of common stock, issued 54 million shares of common stock, and distributed only 45 million shares of stock.  The remaining 9 million shares are presumably being withheld for distribution on disputed but subsequently allowed claims." (Doc. # 26 at 6-7.)  Appellants thus contend that "granting this appeal will not require the Debtor to unwind a single transaction completed in furtherance of the Plan." (Doc. # 26 at 2).  Appellants assert that "Appellants' objection to confirmation can be resolved in full by distributing a small portion of the common stock which the Debtor has already issued and which is being withheld for payment of disputed claims.  This distribution would not have any material impact on the Debtor, any non-consenting creditor, equity holder or third-party, and can be made through a non-material modification of the existing plan." (Doc. # 26 at 2).

> The mootness doctrine, as applied in a bankruptcy
> proceeding, permits courts to dismiss an appeal based on
> its lack of power to rescind certain transactions. The
> mootness standard is premised upon considerations of
> finality and the court's inability to rescind and grant
> relief on appeal. In dismissing the debtors' previous
> challenge, this court was guided by the important policy
> of bankruptcy law that court-approved reorganization
> plans be able to go forward based on court approval
> unless a stay is obtained. Mindful of that policy, we
> will not entertain any challenge to the Plan which seeks
> to modify or amend its provisions.
>  . . .
> The need for finality requires that we decline to address
> the merits of these allegations which seek to challenge
> the court-approved plan.

911 F.2d at 1153 (internal citations omitted), reversed on other

grounds, 503 U.S. 47 (1992).[12]

Subsequently in In re Club Associates, 956 F.2d 1065 (11th

Cir. 1992), the Eleventh Circuit further enunciated its policy with

regard to equitable mootness, emphasizing the importance of third-

party reliance on the confirmation order as a factor in determining

whether dismissal of an appeal of a confirmed plan is appropriate:

> Central to a finding of mootness is a determination by an
> appellate court that it cannot grant judicial relief.
> Put another way, the court must determine whether the
> reorganization plan has been so substantially consummated
> that effective relief is no longer available.

_____

[12] See also In re GWI PCS 1, Inc., 230 F.3d 788, 800 (5th Cir.
2000)("Equitable mootness is not an Article III inquiry as to
whether a live controversy is presented; rather, it is a
recognition by the appellate courts that there is a point beyond
which they cannot order fundamental changes in reorganization
actions. Consequently, a reviewing court may decline to consider
the merits of a confirmation order when there has been substantial
consummation of the plan such that effective judicial relief is no
longer available-even though there may still be a viable dispute
between the parties on appeal.")

> . . .
> The test for mootness reflects a court's concern for
> striking the proper balance between the equitable
> considerations of finality and good faith reliance on a
> judgment and the competing interests that underlie the
> right of a party to seek review of a bankruptcy court
> order adversely affecting him.

956 F.2d at 1069 (internal citations omitted.)

In the Club Associates case, the Eleventh Circuit approved the

district court's determination that a post-confirmation public

securities offering weighed heavily in favor of dismissing the

appeal: "The district court found that a number of investors, who

were not parties to this case, had committed new funds to the 're-

emerged Club' . . . . We agree with the district court that their

interests cannot be protected in the event of a reversal of the

confirmation order." Id. at 1070.

Further, this Court finds persuasive the decision of In re

Condec, Inc., 225 B.R. 800 (M.D. Fla. 1998), listing seven factors

that this Court should consider in rendering a mootness

determination:

> The court must look to the following: (1) a consideration
> of the interests of finality and the passage of time; (2)
> whether there has been a comprehensive change in the
> circumstances; (3) whether a stay has been obtained and
> if not, why not; (4) whether the debtor's reorganization
> plan has been substantially consummated and if so, what
> type of transactions have been consummated; (5) the type
> of relief sought; (6) the effect of granting such relief
> on third parties not currently before the Court; and (7)
> the threat to the re-emergence of the debtor as a
> revitalized entity.

(1)   **Finality and the Passage of Time**

Appellants pursue the Consolidated Appeals against the backdrop of a strong public policy in favor of upholding the finality of confirmation orders. Well stated by the Third Circuit, this policy protects entities that have emerged from the costly reorganization process and the investors who make such reorganizations possible:

> Our inquiry should not be about the "reasonableness" of the Investors' reliance or the probability of either party succeeding on appeal. Rather, we should ask whether we want to encourage or discourage reliance of investors and others on the finality of bankruptcy confirmation orders. The strong public policy in favor of maximizing debtors' estates and facilitating successful reorganization, reflected in the Code itself, clearly weighs in favor of encouraging such reliance. Indeed, the importance of allowing approved organizations to go forward in reliance on bankruptcy court confirmation orders may be the central animating force behind the equitable mootness doctrine. Where, as here, investors and other third parties consummated a massive reorganization in reliance on an unstayed confirmation order that, explicitly and as a condition of feasibility, denied the claim for which appellate review is sought the allowance of such appellate review would likely undermine public confidence on the finality of bankruptcy confirmation orders and make successful completion of large reorganizations lie this one more difficult.

In re Continental Airlines, 91 F.3d 553, 565 (3d Cir. 1996).

Since the Effective Date, Winn-Dixie has operated as a new entity, and investors have relied upon the finality of the Confirmation Order in providing exit financing. In addition, other creditors have entered into dealings with Winn-Dixie in reliance upon the finality of the Confirmation Order. In Miami Center Ltd.

Partnership v. Bank of New York, 838 F.2d 1547, 1555 (11th Cir. 1988), the court emphasized "the important policy of bankruptcy law that court-approved reorganization plans be able to go forward . . . unless a stay is obtained." In Miami Center Limited Partnership, the court employed the mootness doctrine, drawing on the decision of In re Roberts Farms, Inc., 652 F.2d 793, 797 (9th Cir. 1981), in which the court found that the intricate transactions contemplated by the plan "stand *solely* upon the order confirming the plan." The court in Miami Center Limited Partnership concluded that to deny mootness and reverse the confirmation order would "knock the props out from under the authorization for every transaction that has taken place" and "crate an unmanageable, uncontrollable situation for the Bankruptcy Court." 838 F.2d at 1555 (citing In re Roberts Farms, 652 F.2d at 797).

This Court determines that the Confirmation Order in this case would similarly have its supporting props removed in the event that this Court reallocated Winn-Dixie's shares and dismantled the Substantive Consolidation Compromise.

The doctrine of finality supports a finding of equitable mootness and the dismissal of the Consolidated Appeals.

**(2)   Comprehensive Change in Circumstances**

There has been a comprehensive change in circumstances since the entry of the Confirmation Order because Winn-Dixie has (1) cancelled its pre-petition common stock previously listed on the

New York Stock Exchange; (2) issued 54 million shares of new common stock; (3) listed the new common stock for public trading on the NASDAQ Stock Exchange; (4) distributed approximately 45 million shares of its new common stock to its pre-petition unsecured creditors in accordance with the Substantive Consolidated Compromise in satisfaction of their claims; (5) paid over 29.7 million in cash to allowed administrative, secured, and priority claimants; (6) retired its debtor-in-possession financing; and (7) closed on its 725 million dollar exit financing facility with Wachovia Bank.  In addition, Winn-Dixie has assumed leases and executory contracts necessary to do business and has operated under the Plan since the Effective Date.

In <u>Miami Center Limited Partnership</u>, the court noted that it "will not allow a piecemeal dismantling of a reorganization plan." 838 F.2d at 1555.  Appellants request reallocation of a large amount of shares, and to grant this relief would effectively dismantle the plan and alter the terms that the bankruptcy court deemed fair, feasible, and proper through the detailed and rigorous confirmation process.  Accordingly, this factor, too, militates in favor of dismissing the Consolidated Appeals as moot.

### (3)  Absence of a Stay

Consistent with controlling case law, Winn-Dixie asserts that Appellants' failure to seek or otherwise obtain a stay pending appeal strongly militates in favor of dismissal of the Consolidated

Appeals as moot.  The Eleventh Circuit has explained that the lack of a stay pending appeal is not necessarily the "death knell" of a bankruptcy appeal, but rather one of several equitable factors that a court may consider in reaching a mootness determination.  Club Associates, 956 F.2d at 1070.

Many other courts have commented on the adverse impact caused when an appellant seeks to overturn a confirmation order and fails to stay the confirmation order pending appeal.  The Seventh Circuit explains that:

> The significance of an application of a stay lies in the opportunity it affords to hold things in stasis, to prevent reliance upon the plan of reorganization while the appeal proceeds.  A stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization.  And it is the reliance interests engendered by the plan, coupled with the difficulty of reversing critical transactions, that counsels against attempts to unwind things on appeal. Every incremental risk of revision of appeal puts a cloud over the plan of reorganization, and derivatively over the assets of the reorganized firm.

In re UNR Indus., 20 F.3d 766, 769-70 (7th Cir. 1994).

The Fourth Circuit has also commented in Mac Panel Co. v. Virginia Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002) that "[s]ome controversies are not amenable to judicial resolution, and some grow beyond the remedial powers of a court.  This is particularly true when a party, seeking a return to the status quo ante, sits idly by and permits intervening events to extinguish old rights and create new ones."  In addition, Collier on Bankruptcy § 8005.02 "Consequences of Not Obtaining Stay" provides, "If the

-18-

judgment is reversed, any satisfaction obtained by the executing judgment creditor may have to be returned.  However, as a practical matter, it may be beyond the power of either the appellate or bankruptcy courts to undo certain actions even if the judgment is reversed.   In such case, seeking a stay becomes mandatory. Otherwise, the appeal may be dismissed as moot." 10-8005 <u>Collier on Bankruptcy</u> (15th Ed. § 8005.02.)

Here the Appellants did not seek a stay.  To the contrary, they accepted distributions of Winn-Dixie shares and watched as Winn-Dixie, consistent with the Plan, performed multiple transactions involving millions of dollars and various creditors and investors.

Appellants contend that they failed to seek a stay due to the "draconian policy" announced in <u>Sun America Corp. v. Sun Life Assurance Co. of Canada</u>, 77 F.3d 1325 (11th Cir. 1996) that "an appellant is equitably estopped from contesting mootness if the appellant previously stated that a stay was necessary to preserve the appeal and the stay motion was subsequently denied." (Doc. # 26 at 8).   This Court's review of the <u>Sun America Corp.</u>, case, however, reveals that the case did not involve a single bankruptcy issue, and rather involved a struggle between two insurance companies over the right to the trademark "Sun Life." 77 F.3d at 1329. Although Sun Life of Canada was the senior user of the mark, it acquiesced in Sun America's use of the mark. <u>Id.</u>  However, due

-19-

to "confusion in the marketplace" the district court permanently enjoined Sun America's use of the mark. Id.  The appellate court, nevertheless, vacated the permanent injunction finding that the district court was required to consider all proposed remedial alternatives before imposing a permanent injunction.  Sun America sought a stay pending appeal that was denied, and then made inconsistent arguments related to mootness on appeal.

The appellate court in Sun America was disenchanted by the "sea change" in Sun America's arguments leading the court to ask, "which of their statements were false: the ones they made while seeking a stay, or the ones they made after the stay was denied." Id. at 1331.  The court explained, "The vigor with which SunAmerica argued that the name change would moot this appeal is matched only by the vigor with which it now argues, having been forced to change its name, that the appeal is not moot after all." Id.

The facts of the Sun America case are inapposite to this case. Though the court discussed a stay pending appeal of an injunction in Sun America, that case presented unique procedural issues. There, the court isolated an attorney's conduct and strongly admonished against the practice of offering inconsistent factual representations to the court:

> Either an appeal is mooted by a particular event or it is not.  Whether a particular event moots an appeal does not change depending on whether a party wishes that event to occur.   Here,  SunAmerica  made  a  clear  factual representation, backed up with affidavits, that a name change would moot this case, but now unabashedly makes

the opposite factual representation. Attorneys should not, in the guise of "effective advocacy," make or participate in making, factual representations to courts that are not true. If a party represents to the court that the opposite of what he previously has represented about a factual matter is true, he owes the court a satisfactory explanation for the contradictory representations. This is especially the case where, as here, the factual matters being represented (or misrepresented) are particularly within the knowledge of the parties whose attorneys are making the representations.

Id. at 1332.

Despite Appellants' contentions, this Court finds that Appellants were not in a situation analogous to the one presented in Sun America.

Consistent with the precedent outlined above, this Court finds that Appellants' failure to seek a stay pending appeal, though not dispositive, weighs in favor of dismissing the Consolidated Appeals under the doctrine of equitable mootness.

### (4) Substantial Consummation

Substantial Consummation is defined by Section 1101(2) of the Bankruptcy Code:

(2) "substantial consummation" means:
(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
(C) the commencement of distribution under the plan.

Winn-Dixie has substantially consummated its Plan pursuant to Section 1101(2) of the Bankruptcy Code because it has (1) cancelled

its pre-petition common stock previously listed on the New York Stock Exchange; (2) issued 54 million shares of new common stock; (3) listed the new common stock for public trading on the NASDAQ Stock Exchange; (4) distributed approximately 45 million shares of its new common stock to its pre-petition unsecured creditors in accordance with the Substantive Consolidated Compromise in satisfaction of their claims; (5) paid over $29.7 million in cash to allowed administrative, secured, and priority claimants; (6) retired its debtor-in-possession financing; and (7) closed on its $725 million dollar exit financing facility with Wachovia Bank.   In addition, Winn-Dixie has assumed leases and executory contracts necessary to do business and has operated under the Plan since the Effective Date.

When a Plan has been substantially consummated, there is a strong presumption of mootness. <u>Miami Center Limited Partnership</u>, 838 F.2d at 1555 (quoting <u>In re AOV Indus., Inc.</u>, 792 F.2d 1140, 1149 (D.C. Cir. 1986)).

Thus, this Court finds that the Plan has been substantially consummated and that dismissal of the appeals is appropriate.

**(5)   The Relief Sought**

Appellants seek an order modifying the Plan by requiring Winn-Dixie to make additional stock distributions to those landlords holding guarantee claims against Winn-Dixie.   Appellants assert that modification of the Plan could be effected pursuant to Section

1127(a) of the Bankruptcy Code.  In addition, Appellants contend that such modification would be fair because all investors are on notice that their shares can be diluted at any time, and that the requested dilution was contemplated by the Plan.  Appellants further assert that the modification could be accomplished without additional disclosure, solicitations, or Plan voting.  Appellants characterize the requested relief as a non-material modification.

## 1.  Section 1127 of the Bankruptcy Code

Section 1127 of the Bankruptcy Code states:

(a) The proponent of a plan may modify such plan at any time **before confirmation**, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.  After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.
(b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and **before substantial consummation** of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.  Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.
(c) The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.
(d) Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, withing the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

(Emphasis added).

Section 1127(a) of the Bankruptcy Code is "designed to implement the negotiation process, which is the essence of the

formulation of any plan of reorganization.   This section allows a proponent of a plan, and only the proponent, without leave of court, to modify its plan **before confirmation**." <u>Collier Bankruptcy Manual</u>, 3d Ed. Revised § 1127.03 (emphasis added).   As the Plan has been confirmed, Section 1127(a) is inapplicable in this case.

Section 1127(b), on the other hand, is the sole means of modification of a plan of reorganization after it has been confirmed. <u>Almeroth v. Innovative Clinical Solutions, Ltd.</u>, 302 B.R. 136, 144 (Bankr. D. Del. 2003);[13] <u>see also</u> <u>Collier Bankruptcy Manual</u>, 3d Ed. Revised § 1127.04.   Modification under Section 1127(b) of the Bankruptcy Code is not available after the Plan has been substantially consummated. <u>See</u> <u>In re IAMEC Funding, Inc.</u>, 234 B.R. 539, 542 (Bankr. M.D. Fla. 1999); <u>In re Woodson</u>, 213 B.R. 404, 405 (Bankr. M.D. Fla. 1997).   Whether a plan has been substantially consummated is a question of fact to be determined upon the

---

[13]   In <u>Almeroth</u>, the debtor filed under Chapter 11 to exchange its convertible debentures for newly issued common stock. 302 B.R. at 138.   The debtor's chapter 11 plan was substantially consummated, and the plaintiff bond-holders filed a lawsuit to revoke the confirmation order after confirmation and the effective date of the plan. <u>Id.</u> at 139. The court dismissed the lawsuit on the basis of equitable mootness and because the plaintiffs lacked standing to modify the plan.   The bankruptcy court intertwined its analysis of plan modification with the equitable mootness doctrine, stating, "Under this widely recognized and accepted doctrine, the courts have held that an appeal should be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.   The doctrine of equitable mootness is most often applied in the context of an appeal, but it applies with equal force to actions brought to revoke a plan of reorganization." 302 B.R. at 141 (internal citations omitted).

circumstances of each case, and the proponent of the modification has the burden of establishing that the plan has not been substantially consummated. In re Scotland Guard Servs., 139 B.R. 264, 265-266 (D. P.R. 1991).

In this case, this Court has determined that the Plan has been substantially consummated, and accordingly, the modification provisions of Section 1127(b) of the Bankruptcy Code are inapplicable. In addition, this Court rejects the proposition that the modification requested is "non-material." Distributions of shares under the Plan is a material modification affecting unsecured creditors and investors.

This Court declines to modify the stock allocation provisions that Winn-Dixie, its affiliates, and its creditors negotiated, litigated, voted upon and that the bankruptcy court confirmed as fair and feasible.

### (6)  Effect on Parties Not Before the Court

As stated in In re Continental Airlines, 91 F.3d 553, 562 (3d Cir. 1996), "High on the list of prudential considerations taken into account by courts considering whether to allow an appeal following a consummated reorganization is the reliance by third parties, particularly investors, on the finality of the transactions." See also Club Associates, 956 F.2d at 1070 ("A number of investors, who were not parties to this case, had committed new funds to the "re-emerged Club" with the expectation

of receiving a preferred return in their investments.   We agree with the district court that their interests cannot be protected in the event of a reversal of the Confirmation Order.")

Here, Appellants argue that the impact on third parties would be "negligible."  This Court agrees with Winn-Dixie, however, that the distribution of the shares of stock is not a "negligible" transaction.   Further, this Court agrees that the requested reallocation of shares would adversely impact unsecured creditors (who were due to receive residual stock pursuant to Section 9.3 the Plan) and investors who relied upon the finality of the confirmation order.[14]

---

[14]  Section 9.3 of the Plan, entitled "Provisions for Disputed Unsecured Claims" states in pertinent part that: "(a) Common Stock Reserve: On the Effective Date, the Debtors shall (i) determine the amount of the New Common Stock reasonably calculated to be sufficient to provide distributions to Disputed Unsecured Claims that are expected to become Allowed Claims and (ii) transfer the requisite number of shares of New Common Stock to the Disbursing Agent, as trustee, who shall hold and administer the same in trust in accordance with directions consistent with the terms of the Plan provided to the Disbursing Agent from time to time by the Reorganized Debtors.
(b) Redistribution of Unused Reserved Amounts: With respect to the shares of New common Stock held in the Common Stock Reserve on account of Disputed Unsecured Claims, not later than thirty (30) days after the end of the first full calendar quarter following the Distribution Date . . . the Disbursing Agent . . . shall calculate the amount, if any, by which the number of such shares exceeds the number that would be allocable to any of the remaining Disputed Claims that are expected to become Allowed Claims.   Except with respect to the final distribution . . . such excess shall be promptly allocated . . . among all holders of Allowed Unsecured Claims. (Bankr. Doc. # 10058 at 40-41.)

This Court draws on the facts of In re GWI PCS 1, Inc., 230 F.3d 788 (5th Cir. 2000), to elucidate the discussion of this element. In In re GWI PCS 1, Inc., the bankruptcy court ruled that the debtors were not required to pay $894 million of the debtors' $954 million obligation to Federal Communications Commission (the "Avoidance Order"). The debtors reorganized under Chapter 11, and the bankruptcy court confirmed a plan of reorganization that incorporated the Avoidance Order. The FCC appealed the bankruptcy court's confirmation of the debtors' plan to the district court. The district court dismissed the appeal under the doctrine of equitable mootness upon finding inter alia that the debtors' plan had been substantially consummated and that numerous investors, not before the court, relied upon the finality of the confirmation order. The court determined that to require the debtors to pay the $954 million would "unravel" the plan.

The Fifth Circuit affirmed the district court's analysis that "the various investors and entities which have consummated transactions with the Debtors since the entry of the Confirmation Order, and the confirmation plan itself, would be detrimentally affected if the Debtors were suddenly obligated to the FCC for an additional $900 million." Id. at 803.

The relief requested by the FCC posed a substantial threat to the debtors and, by proxy, posed a substantial threat to the investors who placed their money and trust in the debtor. As in

-27-

GWI PCS 1, Inc., and Club Associates, Winn-Dixie's investors will be harmed if Winn-Dixie's plan is dismantled.  Accordingly, this factor militates in favor of dismissal of the appeal.

   **(7)  Threat to the Debtor as a Revitalized Entity**

   It is duly noted that the bankruptcy court determined that full litigation of the Substantive Consolidation Compromise could "wipe out" the entire estate. (Bankr. Doc. # 12618 at 13).  The following excerpt from the bankruptcy court's Findings of Fact and Conclusions of Law serves as a guidepost for this Court's ruling that an order upsetting the Confirmation Order would adversely affect the Debtor as a Revitalized Entity:

> If this case were to proceed to litigation, witnesses testified that the protracted litigation could wipe out the estate.  Therefore, the probability of success would be next to nil, from either prospective.  If the Court denied the settlement and the parties filed a motion for substantive consolidation which the Court then decided to grant, the estate would be reduced to going-concern value plus whatever is left in the estate after paying attorney's fees and other expenses consonant with litigation.  If the Court denied the settlement and the parties filed a motion for substantive consolidation which the Court then denied, the estate would still be decimated due to litigation costs and fees.  Therefore, there would be little probability of success if this case continued to litigation.  Next, if this Court denied confirmation based upon the Substantive Consolidation Compromise, the creditors would be faced with the Sisyphean task of attempting to collect any percentage of their claims.  After fees and costs, the going-concern value of the estate may cover all of the administrative claims and secured claims the Debtors would be required to pay.  It may not.  In the Court's reasonable judgment, it is most apparent that the unsecured creditors, namely the Objecting Landlords, would face much difficulty in their collection efforts.

(Bankr. Doc. # 12618 at 13-14).

An order awarding Appellants the relief that they seek would essentially pave the way for successive lawsuits filed by other of Winn-Dixie's creditors who accepted the Plan and incorporated Substantive Consolidation Compromise.  Such a domino effect of litigation could bring Winn-Dixie's operations to a grinding halt. The reallocation sought would certainly upset the careful balance struck though the confirmation process.

In conclusion, this Court determines that the Consolidated Appeals are due to be dismissed under the doctrine of equitable mootness.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED** that:

(1)  The Motion to Dismiss Appeals (Doc. # 18) is **GRANTED**.

(2)  The Appeals in the following cases are dismissed as moot: 3:07-cv-236-J-33, 3:07-cv-346-J-33, 3:07-cv-238-J-33, and 3:07-cv-239-J-33.

(3)  The Clerk is directed to enter judgment in the following cases: 3:07-cv-236-J-33, 3:07-cv-346-J-33, 3:07-cv-238-J-33, and 3:07-cv-239-J-33.

(4)   The Clerk is directed to close the following cases: 3:07-cv-
      236-J-33, 3:07-cv-346-J-33, 3:07-cv-238-J-33, and 3:07-cv-239-
      J-33.

   **DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this
10th day of October, 2007.

                              VIRGINIA M. HERNANDEZ COVINGTON
                              UNITED STATES DISTRICT JUDGE

Copies:
counsel of record
Hon. Jerry A. Funk, United States Bankruptcy Judge

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

**LIQUIDITY SOLUTIONS, INC., et al.,**

                **Appellants,**

-vs-                                     **Case No.  3:07-cv-236-J-33**

**WINN-DIXIE STORES, INC.,**

                **Appellee.**

_____/

## JUDGMENT IN A CIVIL CASE

**Decision by Court.**    This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

    **IT IS ORDERED AND ADJUDGED**

    that pursuant to the Court's Order entered October 10, 2007, this appeal is dismissed as moot.

Date:   October 11, 2007

                                SHERYL L. LOESCH, CLERK


                                    _____s/Marlene Kerley_____
                                    By: Marlene Kerley, Deputy Clerk

Copy to:

Counsel of Record
Unrepresented Parties

### CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a) **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

   (b) **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c) **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d) **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5**: The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e) **Appeals pursuant to judicially created exceptions to the finality rule**: Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F. 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant

4. **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

Rev.: 4/04

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Office of the Clerk
**300 North Hogan Street**
**Suite 9-150**
**Jacksonville, Florida 32202**
(904) 549-1900
www.flmd.uscourts.gov

Sheryl L. Loesch
Clerk

F I L E D
JACKSONVILLE, FLORIDA

OCT 1 2 2007  Susan K. Rigan
Jacksonville Division Manager

CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA


**LIQUIDITY SOLUTIONS, INC., et al.,**

                            **Appellants.**

v.                                                    **Case No.  3:07-cv-236-J-33**
                                                      **BK Case No.: 05-3817-3F1**


**WINN-DIXIE STORES, INC.,**

                            **Appellee,**

_____/


## NOTICE OF TRANSMITTAL OF COPY OF CASE PAPER
## TO BANKRUPTCY JUDGE, BANKRUPTCY CLERK'S OFFICE,
## AND ASSISTANT UNITED STATES TRUSTEE

To:        Bankruptcy Judge Jerry A. Funk

        ✓Bankruptcy Clerk's Office, Jacksonville Division

        Assistant United States Trustee Kenneth C. Meeker

A copy of the following is herewith forwarded to all of the above parties:

        District Court's Order disposing of the appeal and/or judgment (document numbers 37, 38)

NOTE: In Bankruptcy cases, a copy of District Court Orders which dispose of appeals and/or Judgments, notice of appeal of District Court decisions, and final Eleventh Circuit Orders, Judgments, and/or mandates relating to any such appeal are transmitted.  Except as otherwise directed by the Court, only a copy of Orders granting or denying withdrawal of reference and the final Order/Judgment which disposes of the action are transmitted in Bankruptcy withdrawal cases.

                    SHERYL L. LOESCH, CLERK


                    ___ s/ Marlene Kerley_____
                    By: Marlene Kerley, Deputy Clerk


October 11, 2007

Enclosures