# EXHIBIT "C"

## Kenneth B. Jacobs

| | |
|---|---|
| **From:** | Benton, John M. [JBENTON@sgrlaw.com] |
| **Sent:** | Friday, December 01, 2006 3:45 PM |
| **To:** | Kenneth B. Jacobs; Kling, Neal |
| **Cc:** | Jason B. Burnett; bob@pmat.net; yvonne.lockwood@property-one.com; Daw, Andrew Keith |
| **Subject:** | FW: Flamingo Marketplace - Winn Dixie Store #380, PembrokePines, FL - Bravo (... |
| **Attachments:** | FLAMINGOback copy of check 1017.bmp; FLAMINGOfront copy of check 1017.bmp |

Gentlemen,

I received this email from TengSouth's counsel, then a phone call stating that this check bounced and theywould like the wiring instructions for the landlord to send funds today ifpossible. Would you please forward them on to Alan Stark, AMSSTARK@aol.com ?

JMB

---

**From:** AMSSTARK@aol.com [mailto:AMSSTARK@aol.com]
**Sent:** Friday, December 01, 2006 3:25 PM
**To:** Benton, JohnM.
**Cc:** JJG21@aol.com; AG160@aol.com
**Subject:** Re: FlamingoMarketplace - Winn Dixie Store #380, PembrokePines, FL - Bravo(...

In a message dated 12/1/2006 12:42:40 P.M. Eastern Standard Time,JBENTON@sgrlaw.com writes:

Alan,

Attached is the lease guaranty to be executed by Messrs. Gonzalez and Trujillo. This guaranty was drafted by PMAT Flamingo, L.L.C., the landlord at Flamingo Marketplace, Pembroke Pines, Florida. Ken Jacobs, the landlord's local counsel, called me to let me know he had not yet received one from your client. Would you please review this at your earliest convenience and have your clients execute it and return a copy to me to be included in the closing binder? The delay in the closing binder is caused by the clerk of the court not recording one of the title affidavits. It was resent to the clerk yesterday and we should have it back in another 2 weeks. The closing binder will be sent out to you as soon as we receive a copy of the executed guaranty and the recorded affidavit back from the clerk.

Also, Ken wanted to know where your clients had sent the November rent as the landlord did not receive it. Any idea of where it was sent?

Please let me know if you any questions.

10/17/2007

Thank you,
John M. Benton
Smith, Gambrell & Russell, LLP
50 N. Laura St., Suite 2600
Jacksonville, FL 32202
904-598-6145
904-598-6245 (fax)


IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.



Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of themessage.

A check payable to the Landlord for the Rent and CAM was sent out byExpress Mail on 11/14/06,and appears to have been cashed on 11/20/06. A copy ofthe front and back sides of the check are attached.The check was mailed byExpress Mail to PMAT FLAMINGO, LLC, P.O. Box 62600, Dept. 1361, NewOrleans LA 70162-2600.

If there is problem with that check for any reason it will be immediatelyreplaced; and if the Landlord wants rent checks sent to another address pleaseadvise.

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.



Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the

10/17/2007

individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**GUARANTY AGREEMENT**

[THIS IS A GENERAL GUARANTY WHICH IS ENFORCEABLE BY LANDLORD NAMED HEREIN, ITS SUCCESSORS AND ASSIGNS AND ANY OTHER PERSON OR ENTITY AT ANY TIME HAVING THE RIGHTS OF LANDLORD UNDER THE LEASE DESCRIBED BELOW, AND IS ALSO AN ABSOLUTE AND UNCONDITIONAL GUARANTY.]

THIS GUARANTY AGREEMENT IS FOR THAT CERTAIN LEASE DATED APRIL 23, 1985, BETWEEN PMAT FLAMINGO, L.L.C. (AS SUCCESSOR IN TITLE TO CENTURY PLAZA ASSOCIATES) (the "**Landlord**"), AS LANDLORD, AND WINN-DIXIE STORES, INC. ("WINN-DIXIE"), AS TENANT, AS AMENDED BY THAT CERTAIN SUPPLEMENTAL LEASE AGREEMENT DATED AUGUST 25, 1987; LETTER AGREEMENTS DATED AUGUST 2, 1985, MARCH 25, 1987 AND SEPTEMBER 12, 1988; AND AS FURTHER AMENDED FROM TIME TO TIME AND AS ASSIGNED BY WINN-DIXIE TO TENG SOUTH III, LLC (the "**Tenant**"; collectively, all such documents are the "**Lease**"), COVERING THE PREMISES LOCATED AT 12141 PEMBROKE ROAD, PEMBROKE PINES, BROWARD COUNTY, FLORIDA, AND FORMERLY KNOWN AS WINN-DIXIE STORE NO. 380.

In consideration of the execution of the Lease by Landlord and the assignment of the Lease by Winn-Dixie to Tenant, each of the undersigned guarantors (the term "**Guarantors**" refers to all of the undersigned guarantors collectively, and the term "**Guarantor**" means each of the Guarantors, individually) hereby unconditionally guarantees to Landlord the full and punctual payment of the rent and other charges by Tenant and the full and punctual performance of all other obligations by Tenant under the Lease (the rent and other charges due by Tenant and Tenant's other obligations under the Lease are, collectively, the "**Obligations**"), hereby binding herself or himself jointly and severally, as if an original promisor and Tenant. Each Guarantor acknowledges that he or she has a financial interest in Tenant and will benefit from Landlord entering into the Lease with Tenant, and that this Guaranty Agreement is a material inducement for Landlord to enter into the Lease.

Each Guarantor agrees that **(1)** this obligation shall be enforceable against Guarantor without the necessity for any suit or proceedings against Tenant, and, except as otherwise specifically provided in the Lease, without the necessity of any notice of nonpayment, nonperformance or nonobservance or any notice of acceptance of this Guaranty Agreement or of any other notice or demand to which Guarantor might otherwise be entitled by reason of being a guarantor, all of which are expressly waived; **(2)** immediately upon each and every Lease breach or default by Tenant, whether before or during the term of the Lease or thereafter (e.g., in any holdover period), without any notice to or demand on any Guarantor or Tenant, Guarantor will be individually, jointly, and severally obligated to **(i)** pay to Landlord the sum or sums in arrears, **(ii)** pay to Landlord all damages, including but not limited to any expenses, costs and fees incurred by Landlord, that may be occasioned by Tenant's nonperformance, and **(iii)** comply with or perform all terms and conditions of the Lease; **(3)** no extension, forbearance or leniency extended by Landlord to Tenant shall wholly or partially discharge Guarantor hereunder, notwithstanding that Guarantor had no notice of any Lease breach or default or of any such leniency, forbearance or extension; **(4)** Landlord and Tenant, without notice to or consent by Guarantor, may at any time(s) enter into modifications, renewals, extensions, amendments and/or other agreements respecting the Lease, and Guarantor shall not be wholly or partially released thereby, it being intended that each Guarantor shall continue as joint and several Guarantor with respect to the Lease as so modified, renewed, extended, amended or otherwise affected and notwithstanding

1

any assignment of the Lease or subletting in whole or in part of the premises demised by the Lease nor any holding over by Tenant beyond the term of the Lease.

The obligations of each Guarantor herein shall be co-extensive with those of Tenant under the Lease, and of all other Guarantors and shall remain in effect as long as Tenant's obligations under the Lease are in effect. This Guaranty Agreement is continuing, absolute and unconditional and shall continue without being affected by any impairment, release or limitation of the liability of Tenant or its estate in bankruptcy resulting from the operation of any present or future provision of the Bankruptcy Code of the United States or from the decision of any court interpreting the same. Each Guarantor further agrees to be bound by each and every obligation of Tenant under the Lease, with the same force and effect as if each Guarantor were designated in and had executed the Lease as Tenant thereunder.

This Guaranty Agreement is a primary guaranty of payment and performance and shall not be subject to any counterclaim, set-off, deduction or defense. No failure or delay on the part of Landlord in exercising any right or remedy under the Lease and/or this Guaranty Agreement shall operate as a waiver thereof nor shall a single or partial exercise of any right or remedy preclude any other or further exercise thereof, and all rights and remedies of Landlord hereunder and under the Lease shall be cumulative. Until all of Tenant's obligations under the Lease are fully performed, each Guarantor waives any rights that it may have against Tenant by reason of that Guarantor's compliance with this Guaranty Agreement, and subordinates any liability or indebtedness of Tenant held by that Guarantor to the obligations of Tenant to Landlord under the Lease.

If more than one Guarantor executes this Guaranty Agreement, (a) this Guaranty Agreement shall be binding on each of the Guarantors jointly and severally, and (b) notice to or from any of the Guarantors will constitute notice to or from each of them.

To be effective, any notice or other communication to a Guarantor must be sent by registered or certified mail, return receipt requested, and shall be addressed to that Guarantor at its notice address on the Lease Face Pages, or such other address as may be designated by that Guarantor to Landlord by registered or certified mail, return receipt requested, and the time of rendition of such notice or other communication shall be 3 business days after it is deposited in an official United States Mail receptacle, postage prepaid.

To be effective, any notice or other communication to Landlord must be sent by registered or certified mail, return receipt requested, and to the address to which Tenant's notices are given to Landlord under the Lease and in the manner provided for the giving of notices in the Lease.

This Guaranty Agreement, which is to be governed by and construed in accordance with the laws of the state of Florida, shall also bind each Guarantor's legal or personal representatives, heirs, successors and assigns (as the case may be) and inure to the benefit of Landlord's successors and assigns and any other person or entity at any time having the rights of Landlord under the Lease.

Each Guarantor will forthwith pay to Landlord all attorneys' fees and disbursements incurred by Landlord in connection with any breach or default by Tenant under the Lease and/or the enforcement of this Guaranty Agreement, in each instance whether or not suit is brought (and if suit is brought, through appeals and collection efforts).

Any sums not paid to Landlord when due hereunder will bear interest at the rate of either (i) 18% per annum or (ii) the highest rate of interest permitted by law, from the due date until full payment is received by Landlord.

As a further inducement to Landlord to make and enter into the Lease and in consideration thereof, each Guarantor agrees that in any action or proceeding brought on, under or by virtue by this Guaranty Agreement, Guarantor shall and does hereby waive trial by jury and the benefit of any statute of limitations defense, and each Guarantor agrees that the applicable courts of the state of Florida shall have jurisdiction over Guarantor upon appropriate service on Guarantor anywhere in the United States in a manner in accordance with the laws of the State of Florida. Without limiting the foregoing, each Guarantor hereby irrevocably appoints Tenant as Guarantor's agent for service of process related to this Guaranty Agreement.

Each Guarantor's obligations and liabilities under the Lease shall remain in effect and shall not be released, impaired, reduced, or otherwise affected by, and shall continue in full force and effect notwithstanding (A) the insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution, or lack of authority of Tenant (or anyone acting on Tenant's behalf); (B) any payment by Tenant or any other party to Landlord that is held to constitute a preferential transfer or a fraudulent conveyance under any applicable law, or any such amounts or payments which, for any reason, Landlord is required to refund or repay to Tenant or to any other person; or (C) any dissolution of Tenant, or any sale, lease, or transfer of all or any part of Tenant's assets. The Lease and each Guarantor's obligations and liabilities hereunder shall continue to be effective, and/or shall automatically and retroactively be reinstated, if a release or discharge has occurred, or if at any time, any payment or part thereof to Landlord or any other person or entity with respect to any Obligations, is rescinded or must otherwise be restored by Landlord pursuant to any insolvency, bankruptcy, reorganization, receivership, or any other debt relief granted to Tenant. In the event that Landlord or any other person or entity must rescind or restore any payment received in total or partial satisfaction of the Obligations, any prior release or discharge from the terms of the Lease given to a Guarantor shall be without effect, and the Lease and each Guarantor's obligations and liabilities hereunder shall automatically and retroactively be renewed and/or reinstated and shall remain in full force and effect to the same degree and extent as if such a release or discharge had never been granted. It is the intention of Landlord and each Guarantor that each Guarantor's obligations and liabilities hereunder shall not be discharged except by the full and complete performance and satisfaction of all of the Tenant's obligations and liabilities under the Lease, and then only to the extent of such performance.

This Guaranty Agreement contains the entire agreement between the parties with respect to the matters covered hereby (all prior written and oral agreements between them regarding such matters being superseded hereby), and each Guarantor acknowledges that no agent, representative, salesman or officer of Landlord or its property manager has authority to make or has made any statement, agreement or representation, either oral or written, in connection herewith, modifying, adding to or changing the terms and conditions herein set forth. No customs or dealings between the parties shall be permitted to contradict or modify the terms hereof. This Guaranty Agreement shall not be construed more strictly against one party merely by reason of such party's preparation hereof. If any provision of this Guaranty Agreement shall be held by a court to be invalid or unenforceable, to the maximum extent possible the remaining provisions hereof shall in no way be affected or impaired and such remaining provisions shall continue in full force and effect. Neither this Guaranty Agreement nor any of its provisions can be waived, modified or terminated orally, but only by a written instrument duly executed by or on behalf of the party against whom enforcement of any waiver, modification or termination is sought. Each

Guarantor fully and expressly intends that the foregoing requirements as to a writing be strictly adhered to and strictly interpreted and enforced by any court which may be asked to consider the matter.

**TO SHOW ITS AGREEMENT to all of the provisions of this Guaranty, each Guarantor has signed this Guaranty on the date set out below.**

**GUARANTOR:**

_____
**NECTALIER GONZALEZ**, Individually
Date of Birth: _____
Social Security No.: _____

_____
**EDELBERTO TRUJILLO**, Individually
Date of Birth: _____
Social Security No.: _____

4

STATE OF _____ )
                                ) SS:
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _____ day of _____, 2006, by Nectalier Gonzalez, who is personally known to me or has produced a Florida driver's license as identification.

                                _____
                                        NOTARY PUBLIC
                          Print Name: _____
                          My Commission Expires:_____

                                        [Notarial Seal]


STATE OF _____ )
                                ) SS:
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _____ day of _____, 2006, by Edelberto Trujillo, who is personally known to me or has produced a Florida driver's license as identification.

                                _____
                                        NOTARY PUBLIC
                          Print Name: _____
                          My Commission Expires:_____

                                        [Notarial Seal]