## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

IN RE:                                    )        CASE NO.: 05-03817-3F1
                                          )
WINN-DIXIE STORES, INC. et al   )         Chapter 11
                                          )
Debtors.                           )        Jointly Administered

EXHIBIT
# 1
Date: 8/24/07
TH

### RE-NOTICE OF TAKING DEPOSITION
### ADDING NOTICE OF VIDEOTAPING AND
### EXPANDING 30(B)(6) AREAS OF KNOWLEDGE

**TO:    CORPORATE REPRESENTATIVE(S) OF: Winn-Dixie Store, Inc.**
**David L. Gay, Esq.**
Smith Hulsey & Busey
225 Water St., Ste. 1800
Jacksonville, Florida 32202

PLEASE TAKE NOTICE that VISAGENT CORP. through and by undersigned

counsel, will take the deposition by oral examination and recorded by a videographer,

pursuant to Fed. R. Civ. P. 30 & 45, of the person or persons named below, at the time,

date and at the hour and place indicated from day to day until concluded.

### THE CORPORATE REPRESENTATIVE(S) OF WINN-DIXIE STORES
### INC., WHO HAS/HAVE THE MOST KNOWLEDGE REGARDING:

1.    Purchases and sales by Debtor in the secondary market during the time
      period of 2000 through 2005.
2.    Purchases and sales of inventory by Debtor with any non-manufacturer
      during the time frame 2000 through 2005.
3.    Purchases and sales of whole truckloads in the secondary market by
      Debtor to with non-manufacturer during the time frame 2000 through
      2005.
4.    Purchases and sales of partial, LTL, or less than, truckloads in the
      secondary market by Debtor with non-manufacturer during the time frame
      2000 through 2005.
5.    All aspects of Debtor's custom and practices in the secondary markets for
      any goods bought or sold by Debtor in these markets during the time
      frame 2000 through 2005.

6. All aspects of Debtor's custom and practices in dealings with diverters or alternate source vendors during the time frame 2001 through 2004.

7. Purchases and sales through or facilitated by Victory Wholesale Grocers during the time period of 2000 through 2005.

8. All aspects of the relationship and dealings between Debtor and Victory during the time period of 2000 through present.

9. Purchases and sales through or facilitated by Dayman & Associates during the time period of 2000 through 2005.

10. All aspects of the relationship and dealings between Debtor and Dayman & Associates during the time period of 2000 through present.

11. Purchases and sales through or facilitated by Food Marketing Group (FMG) during the time period of 2000 through 2005.

12. All aspects of the relationship and dealings between Debtor and FMG during the time period of 2001 through present.

13. Purchases and sales through or facilitated by Worldwide Retail Exchange (WWRE) during the time period of 2000 through 2005.

14. All aspects of the relationship and dealings between Debtor and WWRE during the time period of 2000 through present.

15. Purchases and sales through or facilitated by intesource during the time period of 2000 through 2005.

16. All aspects of the relationship and dealings between Debtor and Intesource during the time period of 2000 through present.

17. All aspects of the relationship and dealings between Debtor and C&S Wholesale Grocers, Inc. during the time period of 2000 through present.

18. All aspects of the Outside Sales Program (OSC) in connection with Visagent or any other entity during the time period of 2001 through present.

19. Administration of the Service Agreement between Visagent and Winn-Dixie which is the subject of this litigation including all transactions by Winn-Dixie made pursuant to said agreement.

20. All correspondence, communications (internal or external), conferences, meetings, representations and any other aspect of the relationship between Visagent and Debtor from 2000 to present.

21. All defenses to the claims of Visagent in this litigation.

This deposition will take place **Monday, April 30, 2007, at office of Hedquist and Associates, 345 East Forsyth Street, Jacksonville, Florida 32202, commencing at 10:00 am.** The deposition(s) shall be upon oral examination, before an Official Court Reporter, or a Notary Public in and for the State of Florida at Large, or some other officer duly authorized by law to take depositions. The deposition(s) is/are being taken for the purpose of discovery, for use at trial, or both of the foregoing, or for such other purposes

as are permitted under the applicable and governing rules. Said deposition(s) shall continue from hour to hour, and day to day until completed.

In accordance with the Americans with Disabilities Act, persons in need of a special accommodation to participate in this proceeding shall, within seven (7) days prior to any proceeding, contact the Clerk, Clerk of the United States District Court, Jacksonville, FL  34950, (904) 803-3400.

PLEASE BE GOVERNED ACCORDINGLY.

DATED on April 4, 2007.

## CERTIFICATE OF SERVICE

I certify that a true copy was sent via U.S. Mail to Smith Hulsey & Busey, Stephen D. Busey, Esq., David L. Gay, Esq., James H. Post, Esq., Cynthia C. Jackson, Esq., 225 Water Street, Suite 1800, Jacksonville, FL 32202, counsel for the Debtor this 4th day of April, 2007.

Laurence C. Huttman, Esq. FBN 0096415 for:
GUY BENNETT RUBIN, ESQUIRE
Florida Bar No.: 691305
Rubin & Rubin
P.O. Box 395
Stuart, FL 34995
(772) 283-2004
(772) 283-2009 (facsimile)
Counsel for Visagent Corp.

*************** -COMM. JOURNAL- ******************* DATE APR-04-2007 ***** TIME 16:21 ********

```
MODE =    MEMORY TRANSMISSION              START=APR-04 16:19    END=APR-04 16:21

       FILE No.=497

STN    COMM.   KEY NAME       STATION NAME/EMAIL ADDRESS/TELEPHONE NO.  PAGES    DURATION
No.

001    OK      ░             19043597708-669                          003/003   00:01:12




                                           -                            -

***** DP-6030 ********************* -Rubin And Rubin - ***** -        7722832009- *********
```

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**RE-NOTICE OF TAKING DEPOSITION**
**ADDING NOTICE OF VIDEOTAPING AND**
**EXPANDING 30(B)(6) AREAS OF KNOWLEDGE**

TO:   **CORPORATE REPRESENTATIVE(S) OF: Winn-Dixie Store, Inc.**
      **David L. Gay, Esq.**
      Smith Hulsey & Busey
      225 Water St., Ste. 1800
      Jacksonville, Florida 32202

PLEASE TAKE NOTICE that VISAGENT CORP. through and by undersigned

counsel, will take the deposition by oral examination and recorded by a videographer,

pursuant to Fed. R. Civ. P. 30 & 45, of the person or persons named below, at the time,

date and at the hour and place indicated from day to day until concluded.

**THE CORPORATE REPRESENTATIVE(S) OF WINN-DIXIE STORES
INC., WHO HAS/HAVE THE MOST KNOWLEDGE REGARDING:**

1. Purchases and sales by Debtor in the secondary market during the time period of 2000 through 2005.
2. Purchases and sales of inventory by Debtor with any non-manufacturer during the time frame 2000 through 2005.
3. Purchases and sales of whole truckloads in the secondary market by Debtor to with non-manufacturer during the time frame 2000 through 2005.
4. Purchases and sales of partial, LTL, or less than, truckloads in the secondary market by Debtor with non-manufacturer during the time frame 2000 through 2005.
5. All aspects of Debtor's custom and practices in the secondary markets for any goods bought or sold by Debtor in these markets during the time frame 2000 through 2005.

06/20/01   WED 10:45 FAX 1513 746 5399          VICTORY                                    ☑001

# VICTORY WHOLESALE GROCERS
### Division of Brothers Trading Company, Inc.



EXHIBIT

2

Date:

TH

July 24, 2000

Mr. Daryl Mills
Corporate Director of Business Planning
Winn-Dixie Stores, Inc.
7595 Centurion Parkway
Jacksonville, FL 32256

Dear Daryl:

We are very excited about managing Winn-Dixie's corporate diverting program. This letter is to set forth the working relationship between Winn-Dixie and Victory effective July 10, 2000.

Victory will provide and be responsible for the following:

- Victory will initially service your corporate diverting department with four Victory personnel. These individuals will be responsible for all grocery, HBC and Rx inbound/outbound diverted product. The Victory team will be comprised of an account manager, a grocery buyer/seller, a HBC and Rx buyer/seller and a clerical assistant. The account manager will be the main contact for the Winn-Dixie corporate buying staff as well as Winn-Dixie management. The costs of the individuals and their benefits will be Victory's expense.

- Victory will provide your corporate diverting department a license and access to Victory's proprietary "Network Trading System" (NTS). The NTS system will include all computer hardware necessary to run it and any data connections necessary to connect our on-site associates with the Victory/NTS central office location. The NTS modules provided will include full item comparison functionality, AUTOBUY processing, nationwide pricing and reporting modules. Victory will maintain and customize the NTS, as we mutually agree necessary, to fit Winn-Dixie's specific and changing needs. This includes tuning and customizing the software to implement specific programs such as the creation of an inter-divisional diverting program.

  In addition, Victory, in conjunction with this outsourcing program, will provide an NTS license to any Winn-Dixie associate who has an Internet connected PC. This will allow Winn-Dixie associates to evaluate nationwide manufacturer deal information, monitor nationwide diverter pricing, analyze manufacturer non-divert programs and will permit Winn-Dixie to independently evaluate corporate diversion activity by using the NTS reporting module. Victory will assist with the training of any Winn-Dixie personnel who wishes to use the NTS.

- Victory will provide your corporate diverting department with miscellaneous office equipment that our on-site associates may require such as a copier, fax machines and printers.

400 VICTORY DR. · P.O. BOX 216 · SPRINGBORO, OHIO 45066-0216
(513) 746-1010 · (800) 824-5899 Ohio Wats · (800) 621-6130 National Wats · Fax (513) 746-0910

V05683

06/20/01  WED 10:46 FAX 1513 746 5399      VICTORY      Ø002

Mr. Daryl Mills
Winn-Dixie Stores, Inc.
July 24, 2000
Page 2

- Victory will incorporate a 10¢ per case rebate on all inbound grocery and HBC (excluding Rx) products, from all alternative source suppliers. These monies will be paid directly to Winn-Dixie on a quarterly basis from each diverter. Victory will track the accrual program through our NTS and assist Winn-Dixie in the billing of such rebates. Upon acceptance of this program by Winn-Dixie, Victory will pre-pay $300,000 of its rebate, to be applied against its future sales to Winn-Dixie at 10¢ per case or the first 3,000,000 cases.

- Victory will guarantee that Winn-Dixie will make at least 5% profit on the total volume of outbound sales of excess grocery and HBC (excluding Rx) products. If the outbound program falls short of the 5% profit, Victory will pay the difference to Winn-Dixie at the end of the year.

  For example, if the outbound program generates $50 million in outbound sales at a profit of $2,400,000 or 4.8%, we will pay to Winn-Dixie the difference of $100,000. ($50 million @ 5% = $2,500,000 less $2,400,000 = $100,000). If the outbound program generates a 5.0% or greater profit, we owe nothing more.

  Outbound sales profit is defined as the product cost of goods, plus any dollar up charge on the sold goods, plus any cash discount realized from the manufacturer, plus any backhaul revenue, less the product cost of goods.

  In return for managing and directing Winn-Dixie's corporate diverting program, Winn-Dixie will provide or be responsible to Victory the following:

- A four hour right of first refusal on all *outbound offered product.*

- Office Space for four Victory personnel at Winn-Dixie's corporate headquarters.

- Access to Winn-Dixie's telephone lines and telephone equipment.

- Access to Winn-Dixie's information system and data so that Victory can create and maintain a *NTS item master file.*

- Accounting and payment of inbound purchases and billing and collecting on outbound sales.

- Identifying to Victory any product subject to anti-diverting agreements which Winn-Dixie and manufacturers/brokers enter into.

- Timely receipt of inbound orders and timely fulfillment of outbound orders.

- Assist Victory in making the program a success between Winn-Dixie's divisions.

- Assist in dealing with manufacturers, brokers, and alternative source suppliers in the resolution of problems such as pricing, shortages, dating, damaged, incorrect product supplied or adultered product.

06/20/01    WED 10:46 FAX 1513 746 5399    VICTORY    ☐003

Mr. Daryl Mills
Winn-Dixie Stores, Inc.
July 24, 2000
Page 3

*The following are general terms that relate to our agreement:*

- The initial term of this agreement shall be for 24 months from the effective date expressed in the first paragraph above. This agreement may not be extended except by written agreement executed by the parties at least 90 days prior to expiration of the initial term. Either party may terminate this agreement with 60 days prior written notice with or without cause.

- Each party agrees to keep strictly confidential all information belonging to the other, including but not limited to, information regarding purchases and histories, suppliers, customers, sales and histories, financial, marketing and business strategies. In the event either party is requested or required to disclose any confidential information, they shall give prompt written notice of such request to the other party so they may take such actions as they deem appropriate to protect their information from disclosure.

- Neither party will recruit or hire any employee of the other without first obtaining such party's consent.

- All notices required hereunder shall be in writing and shall be (i) served in person, (ii) mailed, by registered or certified mail, full postage prepaid, return receipt requested in the United States mail or (iii) sent by telecopy, provided that in confirmation thereof, an executed original of such notice is concurrently given by means of any other mode of delivery permitted hereunder, addressed as follows:

|  |  |
|---|---|
| If to Victory: | Victory Wholesale Grocers, a division of Brothers Trading Co., Inc. 400 Victory Drive Springboro, Ohio 45066 Attention: David A. Kantor Facsimile: (561) 368-9965 |
| If to Winn-Dixie: | Winn-Dixie Stores, Inc. 7595 Centurion Parkway Jacksonville, FL 32256 Attention: Daryl Mills Facsimile: (904) 370-6836 |
| With a copy to: | Winn-Dixie Stores, Inc. 5050 Edgewood Court Jacksonville, FL 32254-3699 Attention: E. Ellis Zahra, Jr. Vice President and General Counsel Facsimile: (904) 783-5138 |

06/20/01   WED 10:47 FAX 1513 746 5389          VICTORY                                    @004

Mr. Daryl Mills
Winn-Dixie Stores, Inc.
July 24, 2000
Page 4

        Please indicate Winn-Dixie Stores agreement to the terms of this agreement by signing the
duplicate copy of this letter and returning the same to my attention.

                                        Very truly yours,

                                        Victory Wholesale Grocers,
                                        A division of Brothers
                                        Trading Co., Inc.

                                        David A. Kantor, President

Winn-Dixie Stores, Inc.

Signature

Phillip Payment     V.P. Director of Grocery Procurement
Print Name          Title

7-19-00
Date

V05686

**From:**      Tom Barr [TomBarr@winn-dixie.com]
**Sent:**      Thursday, August 07, 2003 1:36 PM
**To:**        Garwood, S; Cathy Mc Gee (E-mail); Chris Bianco (E-mail); Cliff Bartlett (E-mail); Craig
               Chassen (E-mail); Dan Silver (E-mail); Deluxe Distributors; Donna Story (E-mail); Eric Wieda
               (E-mail); Jeff Sizemore (E-mail); John (E-mail); John Cannistra (E-mail); John Mansfield;
               Kevin Smith (E-mail); Kirk Walker (E-mail); Laurel Catton; Mike Landry; Mike Roberts (E-
               mail); Mike Webb (E-mail); Neil Mc Alister (E-mail); Performance; Phil Harvell (E-mail);
               Premier; Prestige; Rick Quillman (E-mail); Rob Post (E-mail); Robert Horick (E-mail); Ross
               Cord; Scott Cummings (E-mail); Scott Olsen (E-mail); Shaun Moore (E-mail); Sherry Nelson
               (E-mail); Stephanie Brokamp (E-mail); Steve Lewis (E-mail); Sue Parks (E-mail); TDMl2; Tom
               Schisler (E-mail); Victory Bocca (E-mail); Westin Trading
**Subject:**   Deal Offers

      

08-07-03          08-07-03          08-07-03 Dairy.xls
Grocery.xls (160 KB) Frozen.xls (62 KB)    (27 KB)

                        All Alternate Source Vendors

 Attached are items that we maybe able to offer to you in Truckload or LTL.
Please contact myself or Robert Carlson at 904-370-6796 if you have any interest.

  <<08-07-03 Grocery.xls>>  <<08-07-03 Frozen.xls>>  <<08-07-03 Dairy.xls>>

Tom Barr
Alternate Source Manager
Winn-Dixie Stores Inc.
7595 Centurion Parkway
Jacksonville, Florida 32203
904-370-6177
904-371-6102 fax
mailto:tombarr@winn-dixie.com <mailto:tombarr@winn-dixie.com>

EXHIBIT
3
Date:
TH

1

**From:**          Tom Barr [TomBarr@winn-dixie.com]
**Sent:**          Tuesday, September 02, 2003 6:44 AM
**To:**            Garwood, S; Cathy Mc Gee (E-mail); Chris Bianco (E-mail); Cliff Bartlett (E-mail); Craig
                   Chassen (E-mail); Dan Silver (E-mail); Deluxe Distributors; Donna Story (E-mail); Eric Wieda
                   (E-mail); Jeff Sizemore (E-mail); John Cannistra (E-mail); John Garretson (E-mail); John
                   Mansfield; Kevin Smith (E-mail); Kirk Walker (E-mail); Laurel Catton; Mike Landry; Mike
                   Roberts (E-mail); Mike Webb (E-mail); Neil Mc Alister (E-mail); Performance; Phil Harvell (E-
                   mail); Premier; Prestige; Rick Quillman (E-mail); Rob Post (E-mail); Robert Horick (E-mail);
                   Ross Cord; Scott Cummings (E-mail); Scott Olsen (E-mail); Shaun Moore (E-mail); Sherry
                   Nelson (E-mail); Stephanie Brokamp (E-mail); Steve Lewis (E-mail); Sue Parks (E-mail);
                   TDMI2; Tom Schisler (E-mail); Victory Bocca (E-mail); Westin Trading
**Subject:**       Deal File

      

09-02-03          09-02-03          09-02-03 Dairy.xls
Grocery.xls (176 KB) Frozen.xls (67 KB)      (33 KB)              All Alternate Source Suppliers

 Attached are items that we have to offer. Quantities are limited and maybe in LTL
quantities.

 <<09-02-03 Grocery.xls>>   <<09-02-03 Frozen.xls>>   <<09-02-03 Dairy.xls>>

Tom Barr
Alternate Source Manager
Winn-Dixie Stores Inc.
7595 Centurion Parkway
Jacksonville, Florida 32203
904-370-6177
904-371-6102 fax
mailto:tombarr@winn-dixie.com <mailto:tombarr@winn-dixie.com>

EXHIBIT
4
Date:
    TH

1

**From:**     Tom Barr [TomBarr@winn-dixie.com]
**Sent:**     Monday, October 13, 2003 3:39 PM
**To:**      Garwood, S; Cathy Mc Gee (E-mail); Chris Bianco (E-mail); Cliff Bartlett (E-mail); Craig Chassen (E-mail); Dan Silver (E-mail); Deluxe Distributors; Donna Story (E-mail); Eric Wieda (E-mail); Harriet Cohen (E-mail); Jeff Sizemore (E-mail); John Cannistra (E-mail); John Garretson (E-mail); John Mansfield; Kevin Smith (E-mail); Kirk Walker (E-mail); Laurel Catton; Mike Landry; Mike Roberts (E-mail); Mike Webb (E-mail); Neil Mc Alister (E-mail); Phil Harvell (E-mail); Premier; Prestige; Rick Quillman (E-mail); Rob Post (E-mail); Robert Horick (E-mail); Ross Cord; Scott Cummings (E-mail); Scott Olsen (E-mail); Shaun Moore (E-mail); Sherry Nelson (E-mail); Stephanie Brokamp (E-mail); Steve Lewis (E-mail); Sue Parks (E-mail); TDMI2; Tom Schisler (E-mail); Victory Bocca (E-mail); Westin Trading
**Subject:**   Offers

  

10-13-03       10-13-03      10-13-03 Dairy.xls
Grocery.xls (165 KB) Frozen.xls (52 KB)    (24 KB)

                                   All

  Attached are offers that may be available in Full and/or LTL loads. Please call or e-mail Robert Carlson or myself if you have an interest.

  <<10-13-03 Grocery.xls>>   <<10-13-03 Frozen.xls>>   <<10-13-03 Dairy.xls>>

Tom Barr
Alternate Source Manager
Winn-Dixie Stores Inc.
7595 Centurion Parkway
Jacksonville, Florida 32203
904-370-6177
904-371-6102 fax
mailto:tombarr@winn-dixie.com <mailto:tombarr@winn-dixie.com>

EXHIBIT
5
Date:
TH

1

**From:** Tom Barr [TomBarr@winn-dixie.com]
**Sent:** Monday, October 27, 2003 9:31 AM
**To:** Garwood, S; Cathy Mc Gee (E-mail); Chris Bianco (E-mail); Cliff Bartlett (E-mail); Craig Chassen (E-mail); Dan Silver (E-mail); Deluxe Distributors; Donna Story (E-mail); Eric Wieda (E-mail); Harriet Cohen (E-mail); Jeff Sizemore (E-mail); John Cannistra (E-mail); John Garretson (E-mail); John Mansfield; Kevin Smith (E-mail); Kirk Walker (E-mail); Laurel Catton; Mike Landry; Mike Roberts (E-mail); Mike Webb (E-mail); Neil Mc Alister (E-mail); Phil Harvell (E-mail); Premier; Prestige; Rick Quillman (E-mail); Rob Post (E-mail); Robert Horick (E-mail); Ross Cord; Scott Cummings (E-mail); Scott Olsen (E-mail); Shaun Moore (E-mail); Sherry Nelson (E-mail); Stephanie Brokamp (E-mail); Steve Lewis (E-mail); Sue Parks (E-mail); TDMI2; Tom Schisler (E-mail); Victory Bocca (E-mail); Westin Trading
**Subject:** Offers

  

10-27-03        10-27-03
Grocery.xls (170 KB) Frozen.xls (45 KB)

All

Attached are offers that may be available in LTL and Full truckload quantities. Please contact Robert Carlson or myself if you have an interest.

<<10-27-03 Grocery.xls>>  <<10-27-03 Frozen.xls>>

Tom Barr
Alternate Source Manager
Winn-Dixie Stores Inc.
7595 Centurion Parkway
Jacksonville, Florida 32203
904-370-6177
904-371-6102 fax
mailto:tombarr@winn-dixie.com <mailto:tombarr@winn-dixie.com>

EXHIBIT
C
Date:
TH

1

| | |
|---|---|
| **From:** | Tom Barr [TomBarr@winn-dixie.com] |
| **Sent:** | Monday, December 08, 2003 2:41 PM |
| **To:** | Garwood, S; Cathy Mc Gee (E-mail); Chris Bianco (E-mail); Cliff Bartlett (E-mail); Craig Chassen (E-mail); Dan Silver (E-mail); Deluxe Distributors; Donna Story (E-mail); Eric Wieda (E-mail); Harriet Cohen (E-mail); Jeff Sizemore (E-mail); John Cannistra (E-mail); John Mansfield; Kevin Smith (E-mail); Kirk Walker (E-mail); Laurel Catton; Mark. Ellis (E-mail); Mike Landry; Mike Roberts (E-mail); Mike Webb (E-mail); Neil Mc Alister (E-mail); Phil Harvell (E-mail); Premier; Prestige; Rick Quillman (E-mail); Rob Post (E-mail); Robert Horick (E-mail); Ross Cord; Scott Cummings (E-mail); Scott Olsen (E-mail); Shaun Moore (E-mail); Sherry Nelson (E-mail); Stephanie Brokamp (E-mail); Steve Lewis (E-mail); Sue Parks (E-mail); TDMI2; Tom Schisler (E-mail); Victory Bocca (E-mail); Westin Trading |
| **Subject:** | Offers |

  

12-08-03            12-08-03            12-08-03 Dairy.xls
Grocery.xls (167 KB) Frozen.xls (57 KB)      (22 KB)

                                All Customers

Attached are offers that may be available in LTL and Truckload quantities.
Please contact Robert Carlson or myself if you have any  interest.

 <<12-08-03 Grocery.xls>>   <<12-08-03 Frozen.xls>>   <<12-08-03 Dairy.xls>>

Tom Barr
Alternate Source Manager
Winn-Dixie Stores Inc.
7595 Centurion Parkway
Jacksonville, Florida 32203
904-370-6177
904-371-6102 fax
mailto:tombarr@winn-dixie.com <mailto:tombarr@winn-dixie.com>

EXHIBIT
7
Date:
TH

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### <u>JACKSONVILLE DIVISION</u>

In re:

WINN-DIXIE STORES, INC., et al.,

          Debtors.[1]

Case No.  05-03817-3F1

Chapter 11

Jointly Administered

> EXHIBIT
> 8
>
> Date:
>    TH

## DEBTOR'S RESPONSE TO VISAGENT CORPORATION'S <u>FIRST REQUEST FOR PRODUCTION OF DOCUMENTS</u>

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), respond to Visagent Corporation's first request for the production of documents, below.

### <u>General Objections</u>

Debtors object to these document requests to the extent they seek the disclosure of information protected by the attorney-client privilege or the work product doctrine. Absent the entry of a protective order governing confidentiality, Debtors also object to these requests to the extent they seek confidential financial or strategic information. Debtors will make documents available for inspection at

---

[1]   In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

a mutually convenient time in the offices of Smith Hulsey & Busey. The responses below are subject to these General Objections.

Specific Objections and Responses

> Document Request No. 1: For the time period of June 28, 2001 to June 28, 2004, produce copies of all documentation regarding purchases or sales of any goods in the secondary markets in which any electronic means were utilized, including but not limited to, through the Internet, via facsimile, e-mail or through the use of any electronic device. This request specifically includes, but is not limited to, all invoicing, receipts, orders, order confirmations, billing, bills of lading, checks, bank drafts, wire transfer orders or confirmations or any other responsive data, whether or not actually printed on paper or retained by other data storage means.

Objection to Document Request No. 1: Debtors object to this request because (i) the request's definition of "electronic means" is overly broad and (ii) the request itself is overly broad and burdensome in requesting copies of every document regarding approximately $175 million of annual transactions over a three year period.

Response to Document Request No. 1: Subject to its general and specific objections, Debtors will produce documents which document Debtors' purchases or sales of goods in the secondary markets.

> Document Request No. 2: Produce copies of all correspondence between the Debtor and Visagent for the period January 1, 2000 to January 1, 2005.

2

Response to Document Request No. 2:  Debtors will produce any such documents in their possession, custody or control.

> Document Request No. 3:   Produce copies of all internal communications of and between employees of the Debtor for the period January 1, 2000 and January 1, 2005, referencing in any way Visagent Corporation.

Response to Document Request No. 3:  Subject to their general objections, Debtors will produce any such documents in their possession, custody or control.

> Document Request No. 4:  Produce all e-mails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between Debtor and Dayman & Associates, Inc. for the period June 15, 2001 to present.

Objection to Document Request No. 4:  Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

Response to Document Request No. 4:  Subject to their general and specific objections, Debtors will produce any agreements between them and Dayman & Associates, Inc.

> Document Request No. 5:  Produce all e-mails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and Victory Wholesale Grocers for the period June 15, 2001 to present.

Objection to Document Request No. 5:  Debtors object to this request because it is overly broad and burdensome.

3

Response to Document Request No. 5:  Subject to their general objections, Debtors will produce any such documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

> Document Request No. 6:  Produce all e-mails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and C&S Wholesale Grocers for the period June 15, 2001 to present.

Objection to Document Request No. 6:  Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

Response to Document Request No. 6:  Subject to their general objections, Debtors will produce any such documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

> Document Request No. 7:  Produce all e-mails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and Food Marketing Group for the period June 15, 2001 to present.

Objection to Document Request No. 7:  Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

Response to Document Request No. 7:  Subject to their general objections, Debtors will produce any such documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

Document Request No. 8: Produce all e-mails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and WorldWide Retail Exchange for the period June 15, 2001 to present.

Objection to Document Request No. 8: Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

Response to Document Request No. 8: Subject to their general objections, Debtors will produce any such documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

Document Request No. 9: Produce all e-mails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and intersource, Inc. for the period June 15, 2001 to present.

Objection to Document Request No. 9: Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

Response to Document Request No. 9: Subject to their general objections, Debtors will produce any such documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

Document Request No. 10: Produce all financial reports for the calendar years 2001, 2002, 2003, and 2004 that show actual sales or purchases by the Debtor in the secondary market.

Objection to Document Request No. 10:  Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

Response to Document Request No. 10:  Subject to their general and specific objections, Debtors will produce documents which document Debtors' purchases or sales of goods in the secondary markets from June 28, 2001 to June 28, 2004.

>Document Request No. 11:  Produce all business transaction reports regarding the business of the Debtor provided by Victory Wholesale Grocers for the period June 15, 2001 to present.

Objection to Document Request No. 11:  Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

Response to Document Request No. 11:  Subject to their general and specific objections, Debtors will produce any such documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

>Document Request No. 12:  Produce all business transaction reports regarding the business of the Debtor provided by Dayman & Associates, Inc. for the period June 15, 2001 to present.

Objection to Document Request No. 12:  Debtors objects to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

6

Response to Document Request No. 12: Subject to their general objections, Debtors will produce any such documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

> Document Request No. 13: Produce all business transaction reports regarding the business of the Debtor provided by Food Marketing Group for the period June 15, 2001 to present.

Objection to Document Request No. 13: Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

Response to Document Request No. 13: Subject to their general objections, Debtors will produce any such documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

> Document Request No. 14: Produce all forecast reports prepared by any employee of Debtor during the period January 1, 2000 and January 1, 2005 that show expected sales or purchases in the secondary market by Debtor.

Objection to Document Request No. 14: Debtors object to this request because it will not lead to the discovery of admissible evidence and is overly broad and burdensome.

Response to Document Request No. 14: Debtors will produce any such reports in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

Document Request No. 15: Produce all forecast reports prepared by or on behalf of any non-employee of Debtor or any other entity not a Debtor in this case during the period January 1, 2000 and January 1, 2005 that shows expected sales or purchases in the secondary market by Debtor.

Objection and Response to Document Request No. 15: See objection and response to Document Request No. 14.

Document Request No. 16: Produce all projection or forecast reports regarding the business of the Debtor provided by Victory Wholesale Grocers for the period June 15, 2001 to present.

Objection and Response to Document Request No. 16: See objection and response to Document Request No. 14.

Document Request No. 17: Produce all projection or forecast reports regarding the business of the Debtor provided by Food Marketing Group for the period June 15, 2001 to present.

Objection and Response to Document Request No. 17: See objection and response to Document Request No. 14.

Document Request No. 18: Produce all projection or forecast reports regarding the business of the Debtor provided by Food Marketing Group for the period June 15, 2001 to present.

Objection and Response to Document Request No. 18: See objection and response to Document Request No. 14.

Document Request No. 19: Produce all electronic data transmissions from any wholesaler that provided detailing "in stock" product availability during the period January 1. 2000 through January 1, 2005.

Objection to Document Request No. 19: Debtors object to this request because it will not lead to the discovery of admissible evidence.

Response to Document Request No. 19: Subject to their general objections, Debtors will produce any such documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

Document Request No. 20: Produce all electronic data transmissions from any retailer that provided detailing "in stock" product availability during the period January 1, 2000 through January 1, 2005

Objection to Document Request No. 20: Debtors object to this request because it will not lead to the discovery of admissible evidence.

Response to Document Request No. 20: Subject to their general objections, Debtors will produce any such documents in their possession, custody or control for the period June 28, 2001 to June 28, 2004.

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
D.J. Baker
Sally McDonald Henry
Rosalie W. Gray
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

and

SMITH HULSEY & BUSEY

By

Stephen D. Busey
James A. Bolling
David L. Gay
F.B.N. 893221
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
dgay@smithhulsey.com

Co-Counsel for Debtors

## Certificate of Service

I hereby certify that a copy of the foregoing has been furnished **by mail and facsimile** to Guy Bennett Rubin, Esq., Rubin & Rubin, Post Office Box 395, Stuart, Florida and Paul M. Harden, Esq., Rubin & Rubin, 1301 Riverplace Boulevard, Suite 2601, Jacksonville, Florida 32207, this 25th day of August, 2006.

_____
Attorney

540378.1

11

# TRADEPOINT
## SOLUTIONS CORPORATION

August 22, 2000



Mr. John Sheehan
Senior Vice President Sales & Procurement
Winn Dixie Stores Inc,
PO Box B
Jacksonville, Florida 32254

<u>VIA TELEFAX: 904.783.5175</u>

Re:  TradePoint Exchange / Winn Dixie Presentation

Dear Mr. Sheehan:

This letter shall serve to confirm our appointment at your offices on August 29, 2000.

TradePoint is an end-to-end solutions provider focused directly on the grocery, health and beauty and cosmetics markets.  We provide solutions for retailers that act as a tool in the procurement process.  This tool, the TradePoint Exchange offers visibility into pricing among all classes of trade.  This information is particularly important to retailers like Winn Dixie because it offers an opportunity to significantly decrease costs by creating efficiencies throughout the procurement process.

While TradePoint has many products which can aid Winn Dixie in this market, perhaps the most significant product is the "Big Board."  The Big Board is a unique platform which provides an alternative solution to the in-house diverter, otherwise known as the "fox in the hen house."

Our presentation, next week, will include the "Big Board" as well as some of our other products.  Because of the highly proprietary nature of the information that we will provide, we request that Winn Dixie keep the nature and subject matter of this meeting in confidence.

Although we have met with many major retailers around the county, TradePoint's independence is predicated upon the confidential nature of its relationships, therefore, we will never disclose your identity nor will we provide you with the identities of any other users, without their permission. We do not expect nor require that a mutual non disclosure agreement be executed prior to this meeting. However, we would request that the meeting be attended by employees of Winn Dixie, only.

In the past, the typical attendees for presentations such as this one have been supermarket management with expertise in the areas of strategic alliances, ecommerce, and procurement.

We look forward to the opportunity to pull the covers off of the secondary market by providing visibility where it did not exist before. Robert Warren, Vice President of Business Development, Eric Tewey, Chief Information Officer and I look forward to meeting you next week.

Very truly yours,

I. Mark Rubin, CEO

IMR/pec

| | |
|---|---|
| **From:** | Rubin, Mark |
| **Sent:** | Wednesday, January 10, 2001 5:14 PM |
| **To:** | 'philippayment@winn-dixie.com'; 'darylmills@winn-dixie.com' |
| **Cc:** | 'John Sheehan (E-mail)'; Warren, B |
| **Subject:** | Visagent/Winn Dixie Initiative |

| | |
|---|---|
| **Attachments:** | Picture (Metafile) |

Gentlemen:

Bob and I thank you for the few minutes that you allowed us to share with you regarding the Visagent Corporation at the Global Exchange Summit.

Last August, we met with John Sheehan to discuss some of the opportunities that we can bring to Winn Dixie. At that time, we were known as TradePoint Solutions. Since then, our name change is about the least significant thing that we have done.

Visagent is not a diverter, it is a tool to be used by retailers to shift the balance of power in the supply chain to the retailer .

We have made several recent advancements in our technology that will allow a retailer like Winn Dixie to do for itself what in the past could only be done by using an "in house diverter".

The result shifts the diverter's bottom line revenue to Winn Dixie's bottom line. By industry standards, we estimate that to be at least $3.5 million.

Since we are based in Jacksonville, it would be very easy to schedule an appointment to demonstrate some of our products. Please do not hesitate to call upon us to show you how easy it can be to initiate an implementation with no cost or resource drain on Winn Dixie.

Again, thank you.

Very truly yours,

**I. Mark Rubin,**
**Chief Executive Officer**
**Visagent Corporation**
**<mailto:mRubin@Visagent.com>**

EXHIBIT
10
Date:
TH

1

**Rubin, M**

| | |
|---|---|
| **From:** | Warren, Bob |
| **Sent:** | Tuesday, April 03, 2001 8:28 AM |
| **To:** | 'Kevin Gates' |
| **Cc:** | Rubin, IM |
| **Subject:** | RE: Set Up Meeting |

Kevin,

     Pursuant to our conversation yesterday, we are confirmed to meet, in our offices, this Friday April 5th from 11:00 A.M. to 1:00 P.M.  Please let me know if anything changes.


Thanks,

Bob Warren
Vice President-Business Development
Visagent Corporation
bwarren@visagent.com

  -----Original Message-----
From:    Kevin Gates [mailto:KevinGates@winn-dixie.com]
Sent: Monday, April 02, 2001 1:30 PM
To:   'bw@hq1.com'
Subject:  Set Up Meeting

Bob, Can you give me a call when you get a chance. Need to set up a meeting with our IS VP Mike Nixon and his Right hand man Gordon Goodyear. Also Philip Payment and Daryl Mills would like to sit in. We will need about 1 1/2 to review system and look at our IS needs.

Thanks
Kevin

370-6435



EXHIBIT

Date:

TH

1

WD0000000688

# SERVICE AGREEMENT

THIS SERVICE AGREEMENT is made as of the 28th day of June 2001 [Agreement], by and between Visagent Corporation [Provider], a Florida corporation, having principal offices at 2107 Hendricks Avenue, Jacksonville, Florida, 32207 and Winn-Dixie Stores, Inc., [User], a Florida corporation, having principal offices at 5050 Edgewood Court, Jacksonville, Florida 32254.

WHEREAS, Provider is a corporation organized and existent in accordance with the laws of the State of Florida, and is in the business of providing services including but not limited to the facilitation of eCommerce business-to-business transactions to the retail grocery industry by and through the use of the Visagent Grocery Exchange [Exchange];

WHEREAS, User is a corporation organized and existent in accordance with the laws of the State of Florida, and is in the business of retail grocery operations;

WHEREAS, the parties entered into a Letter of Intent and a Confidentiality Agreement on April 24, 2001;

WHEREAS, Provider and User desire to enter into this Agreement as more fully described below.

NOW, THEREFORE, for and in consideration of the mutual agreements herein contained, it is hereby agreed as follows:

**Term:** The term of this Agreement shall commence on the date specified above and shall remain in effect for a period of three (3) years unless terminated due to a breach of this Agreement or the Confidentiality Agreement as set forth below. This Agreement may be renewed for additional one-year terms by written agreement of the parties entered into not less than ninety (90) days prior to the expiration of this Agreement.

**User Agreement:**    It is the intent of the parties that the terms of this Agreement shall supercede and prevail over any inconsistent or ambiguous provisions in the Rules of the Exchange and the Definitions, both of which are part of the User Agreement attached hereto as Exhibit "A" and incorporated by reference. If Provider desires to amend the User Agreement by posting changes or an amended User Agreement on the Visagent Grocery Exchange, Provider agrees to give prior or simultaneous written notice of same to User. As to User, if the amendments are acceptable, they shall be deemed in full force and effect from the date of posting. If User determines that such amendments are unacceptable, User shall provide written notice of same to Provider within ten (10) days after receipt of Provider's notice. If the parties are unable to reach agreement on the proposed amendment within ten (10) days thereafter, User shall have the right to terminate this Agreement immediately at such time.

**Services:**    The services to be provided hereunder are those described in this Agreement, supplemented by the terms and conditions in the User Agreement posted on the Visagent Grocery Exchange to the extent they do not conflict with the terms and conditions herein.

During the term of this Agreement, Provider agrees to provide for User access to an Internet e-commerce Exchange, substantially similar to Version 1.4 of the Visagent Grocery Exchange, as

1

Exhibit 1

EXHIBIT

12

Date:

TH

previously tested by User, and such other software solutions and logistics services that will allow User to secure and distribute products for its business. All services provided by Provider shall be at a level equal to or above the standard of the industry. If Provider discontinues, modifies or changes any presently available service or content on the Exchange, in whole or in part, and User reasonably determines that such change has a detrimental or negative effect upon User's use of the Exchange, User shall provide written notice of same to Provider. If Provider fails to remedy such change to the satisfaction of User within ten (10) days thereafter, User shall have the right to terminate this Agreement immediately at such time.

The basis of the Provider's business is as follows:

*Visagent acts as an independent, neutral third party for the online procurement and distribution of products that are included in the User's normal business operations. As such, Visagent has developed an Internet based platform [Exchange] which allows for the facilitation and coordination of anonymous communication between buyers and sellers for the purchase and sale of products and the provision of logistics and banking services associated with completing end-to-end transactions. The Exchange provides a venue for sellers to post products they have available for sale [Availables] and for buyers to purchase products or post inquiries for items they want to purchase [Lookfors]. Visagent posts rules, policies and other conditions of use for the Exchange and its users. Each user is responsible for making its own determination as to whether to effect or consummate a transaction posted on the Exchange. At no time does Visagent hold title to any products bought or sold on the Exchange.*

**Scope of this Agreement:** This Agreement is intended to cover all of User's business transactions for full or truckload quantities of consumer packaged goods purchased or resold **[through the Internet or similar electronic means]** in a wholesale format, excluding purchases by User from the original manufacturer or its authorized representatives. For the Term of this Agreement, User will not employ or contract for the services of an entity other than Provider for its eCommerce transactions covered under the scope of this Agreement.

Exclusions: The following transactions are specifically excluded from the scope of this Agreement unless such transactions are facilitated through the Exchange.

-Product movement between Winn-Dixie distribution centers or Winn-Dixie contracted distribution centers.

-Direct User purchases for less than full or truckload quantities obtained from the inventory of wholesalers, which, as of the date of this Agreement, are providing electronic data transmissions detailing "in-stock" product availability.

-Direct User transactions with the following entities:
Victory Wholesale Grocers up through and including July 1, 2002
WorldWide Retail Exchange
intesource, Inc.

**Fees:** User as a Buyer: For all Exchange transactions in which User is a Buyer, the fee for Provider's services shall be included in the total Buyer's Product Cost and limited to two (2) percent of the sum of Seller's Product Price plus Deal Costs.

User as a Seller: For all Exchange transactions in which User is a Seller, Provider's Service Fee is included in the Buyer's Product Cost.

2

Provider Fees do not include Deal Costs or items contained in the Schedule of Fees, as outlined in the User Agreement. All transactions are calculated as follows:

Seller's Product Price + Deal Costs x .02 = Buyer's Product Cost

**Service Level:**     Provider reserves the right to perform scheduled maintenance and to deploy enhancements, modifications and fixes [collectively, Maintenance] to the Exchange, as necessary. All Maintenance shall be performed on the following default schedule: Sunday, Saturday, non-peak weekday hours of the Exchange.

Use of the Exchange is based upon Internet Server availability and is subject to agreements by and between Provider and third-party vendors in the business of providing Internet bandwidth and hosting services. Provider is not in the business of providing these services and accordingly cannot warrant availability beyond the contractual responsibilities of third-party vendors. Provider may use multiple Internet Service Vendors during the Term of this Agreement. The current primary Internet Service Vendor has a national availability service level of 99.9% for the type of service required by Provider.

Third-party service levels notwithstanding, Provider shall provide Exchange access to User for a minimum of 90% of the time in any calendar month, including downtime and maintenance.

If Provider fails to meet the minimum service levels stated herein, or fails to provide services at or above the standard of the industry, User shall provide written notice of same to Provider. If Provider fails to remedy such service problem to the satisfaction of User within ten (10) days thereafter, User shall have the right to terminate this Agreement immediately at such time.

**Antitrust:**     The parties hereto believe strongly in competition. Federal and state antitrust laws are the rules under which competitive systems operate. It is the intent of the parties hereto to comply in all respects with the antitrust laws, and each party further agrees to conduct its business transactions contemplated by this Agreement, accordingly.

**Confidentiality:**     The *Mutual Confidentiality and Non-Disclosure Agreement* executed by the parties on April 24, 2001 [Confidentiality Agreement], is incorporated by reference into this Agreement and designated as Exhibit "B" hereto. In the event the Term of this Agreement is renewed, the parties hereby agree to amend the term of the Confidentiality Agreement so that it extends three (3) years after the expiration of this Agreement.

**Termination:** User shall have the right to terminate this Agreement (i) upon breach by Provider of any term or condition of this Agreement, subject to the specific notice and cure provisions, if any, set forth herein; (ii) upon breach by Provider of any term or condition of the User Agreement, subject to specific notice and cure provisions set forth therein; or (iii) immediately upon breach by Provider of the Confidentiality Agreement. Termination of this Agreement shall not relieve or release either Party from any liability incurred prior to the termination of the Agreement or the Confidentiality Agreement.

**Disputes:**     In the event that User has a dispute with a third party regarding a transaction arising out of use of the Exchange, User agrees to abide by the Rules of the Exchange for the resolution process thereof.

**Indemnification:** The parties intend that the following Indemnity shall replace and supercede, in its entirety, the "Indemnity" section set forth in the User Agreement:

User agrees to defend, indemnify and hold harmless Provider, its directors, officers, employees, and agents from and against any and all claims, costs, expenses, demands and damages (including reasonable attorneys' fees) arising out of, resulting from or incurred in connection with User's improper or negligent use of the Exchange, User's breach of this Agreement or the User Agreement or User's dispute with a third party regarding a transaction through the Exchange, except for disputes that arise out of the negligence or breach of this Agreement or the User Agreement by Provider or other third party.

IN NO EVENT AND UNDER NO CIRCUMSTANCE, LEGAL THEORY, TORT, CONTRACT OR OTHERWISE, WILL USER BE LIABLE TO PROVIDER OR ANY OTHER PARTY FOR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF GOODWILL, LOSS OF POTENTIAL REVENUES, LOSS OF BUSINESS OPPORTUNITIES, PROFITS, BUSINESS INTERRUPTION, WORK STOPPAGE, COMPUTER FAILURE, LOSS OF PROGRAMS OR INFORMATION OR MALFUNCTION OR ANY AND ALL OTHER COMMERCIAL DAMAGES OR LOSSES OR ANY OTHER DAMAGES ARISING IN ANY WAY FROM USER'S ACCESS TO OR USE, OR ANY COMMERCE CONDUCTED BY OR THROUGH THE EXCHANGE, EVEN IF USER HAD BEEN INFORMED OR ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN ANY STATE OR JURISDICTION THAT DOES NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, USER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW.

Provider shall have the right, at its own expense, to participate in the defense of any action or matter subject to indemnification by User hereunder. User agrees to keep Provider reasonably informed about the defense of such matters, and to confer with Provider prior to taking any action in settlement, compromise or other disposition of such matter.

**Miscellaneous:** This Agreement (including the other agreements and documents referenced herein) constitutes the entire understanding and agreement of Provider and User with respect to the subject matter of this Agreement, and contains all of the covenants and agreements of Provider and User with respect to this Agreement. Provider and User each acknowledge that no representations, inducements, promises or agreements, oral or written, have been made by Provider or User, or anyone acting on behalf of Provider or User, which are not referenced or contained in this Agreement, and any prior agreements, promises, negotiations or representations with respect to the subject matter of this Agreement, whether written or oral, not expressly set forth in this Agreement are of no force or effect. This Agreement may be amended or modified only by a writing signed by all parties to this Agreement.

If any party to this Agreement shall bring any suit or action against another for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party at trial and on appeal shall be entitled to recover against the other party, in addition to all court costs and disbursements, such sums as the court may adjudge to be reasonable attorney's and paralegal fees.

This Agreement shall be governed by and construed under the laws of the state of Florida without regard to principles of conflict of laws. The parties irrevocably consent to the jurisdiction

and venue of the state courts located in Duval County, Florida in connection with any action relating to this Agreement, except as otherwise specified herein.

The terms and provisions of the Agreement are confidential and proprietary and shall not be disclosed by either Party without the express written consent of the other unless specifically, and only to the extent, required by law.

This Agreement may be signed in counterparts, each of which shall be deemed to be an original and both of which shall constitute one Agreement. Facsimile signatures shall be deemed acceptable and binding.

Each party represents it has all requisite legal power and authority and has taken all action necessary or appropriate to enter into this Agreement and that its representative executing this Agreement is duly empowered to do so.

THE PARTIES have caused this Agreement to be executed by their duly authorized representatives.

Visagent Corporation

By: _____

    I. Mark Rubin
    Chief Executive Officer

Date: __6-15-01__

Winn-Dixie Stores, Inc.

By: _____
Name Printed: _Philip H. Paymeent Jr._
Title: _V.P. Director of Grocery Procurement_

Date: _6-15-01_

5



Victory Wholesale Grocers

June 14, 2002

EXHIBIT

13

Date:

TH

Mr. Edward Mieskoski
Corporate Director of Business Planning
Winn-Dixie Stores, Inc.
7595 Centurion Parkway
Jacksonville, FL 32256

Dear Edward:

We are very excited about continuing to manage Winn-Dixie's corporate diverting program. This letter is to set forth the working relationship between Winn-Dixie and Victory effective July 10, 2002.

Victory will provide and be responsible for the following:

- Victory will service your corporate diverting department with Victory associates. These individuals will be responsible for all grocery, HBC and Rx inbound/outbound diverted product. The costs of these individuals and their benefits will be Victory's expense.

- Victory will provide Winn-Dixie's corporate diverting department a non-exclusive license and access to Victory's proprietary "Network Trading System" ("NTS"). The NTS system will include all computer hardware necessary to run it and any data connections necessary to connect our on-site associates with the Victory/NTS central office location. The NTS modules provided Winn-Dixie will include full item comparison functionality, AUTOBUY processing, nationwide pricing and reporting modules. Victory will maintain and customize the NTS, as we mutually agree necessary to fit Winn-Dixie's specific and changing needs. This includes tuning and customizing the software to implement specific programs such as the creation of an inter-divisional diverting program.

In addition, Victory, in conjunction with this outsourcing program, will provide an NTS non-exclusive license to any Winn-Dixie associate who has an Internet connected PC. This will allow Winn-Dixie associates to evaluate nationwide manufacturer deal information, monitor nationwide diverter pricing, analyze manufacturer non-divert programs and will permit Winn-Dixie to independently evaluate corporate diversion activity by using the NTS reporting module. Victory will assist with the training of any Winn-Dixie personnel who wishes to use the NTS.

V05687

Mr. Edward Mieskoski
June 14, 2002
Page 2

- Victory will provide Winn-Dixie's corporate diverting department with miscellaneous office equipment that our on-site associates may require such as a copier, fax machines and printers.

- Victory will guarantee that Winn-Dixie will make at least 5% profit on the total volume of outbound sales of excess grocery and HBC (excluding Rx) products. If the outbound program falls short of the 5% profit, Victory will pay the difference to Winn-Dixie at the end of the year.

  For example, if the outbound program generates $50 million in outbound sales at a profit of at $2,400,00 or 4.8%, Victory will pay to Winn-Dixie the difference of $100,000 ($50 million at 5% = $2,500,000 less $2,400,00 = $100,000). If the outbound program generates a 5.0% or greater profit, Victory owes nothing more.

  Outbound sales profit is defined as the product cost of goods, plus any dollar up charge on the sold goods, plus any cash discount realized from the manufacturer, plus any backhaul revenue, less the product cost of goods.

  In return, for managing and directing Winn-Dixie's corporate diverting program, Winn-Dixie will provide or be responsible to Victory the following:

- A four hour right of first refusal on all outbound offered products.

- Office space for Victory's personnel at Winn-Dixie's corporate headquarters.

- Access to Winn-Dixie's telephone lines and telephone equipment.

- Access to Winn-Dixie's information system and data so that Victory can create and maintain a NTS item master file.

- Accounting and payment of inbound purchases and credit approval, billing and collecting on outbound sales.

- Identifying to Victory any product subject to non-diverting agreements which Winn-Dixie and manufacturers/brokers enter into.

- Timely receipt of inbound orders and timely fulfillment of outbound orders.

- Assist Victory in making the program a success between Winn-Dixie's divisions.

- Assistance in dealing with manufacturers, brokers and alternative source suppliers in the resolution of problems such as pricing, shortages, dating, damage, incorrect product supplied or altered product.

V05688

Mr. Edward Mieskoski
June 14, 2002
Page 3

The following are general terms that relate to our agreement.

- The term of this agreement shall be for six (6) months from the effective date expressed in the first paragraph above. This agreement may not be extended except by written agreement executed by the parties at least 90 days prior to the expiration of the term. Either party may terminate this agreement with 60 days prior written notice to the other, with or without cause. Each side shall abide by the terms of this agreement during, and after its termination.

- Each party agrees to keep strictly confidential all information belonging to the other, including but not limited to, information regarding purchases and histories, suppliers, customers, sales and histories, financial, marketing and business strategies. In the event either party is requested or required to disclose any confidential information, they shall give prompt written notice of such request to the other party so they may take such actions as they deem appropriate to protect their information from disclosure.

- Neither party will recruit or hire any employee without first obtaining such party's consent.

- All notices required hereunder shall be in writing and shall be (i) served in person, (ii) mailed, by registered or certified mail, full postage prepaid, return receipt requested in the United States mail, or (iii) sent by telecopy, provided that in confirmation thereof, an executed original of such notice is concurrently given by means of any other mode of delivery permitted hereunder, addressed as follows:

If to Victory:

Victory Wholesale Grocers,
a division of
Brothers Trading Co., Inc.
400 Victory Drive
Springboro, Ohio 45066
Attn: Scott Mattis
Facsimile: (937) 746-1186

If to Winn-Dixie:

Winn-Dixie Stores, Inc.
7595 Centurion Parkway
Jacksonville, Florida 32256
Attn: Edward Mieskoski
Facsimile: (904) 370-6836

With a copy to:

Winn-Dixie Stores, Inc.
5050 Edgewood Court
Jacksonville, Florida 32254
Attn: Vice President & General Counsel
Facsimile (904) 783-5138

V05689

Mr. Edward Mieskoski
June 14, 2002
Page 4

Please indicate Winn-Dixie Stores agreement to the terms of this Agreement by signing the duplicate copy of this letter and returning the same to my attention.

Very truly yours,

Victory Wholesale Grocers,
a division of Brothers Trading Co., Inc.

David A. Kantor, President

Winn-Dixie Stores, Inc.

Authorized Signature

Phillip Payment
Print Name

V.P. Director of Grocery
Title

6/23/02
Date

V05690



# WINN (W/D) DIXIE

**America's Supermarket®**

June 20, 2001

EXHIBIT
14
Date:
TH

**To:      All Alternate Source Vendors**
**From:   Winn Dixie Stores, Inc**

As part of Winn Dixie's continuing effort to streamline operations and to better manage the Alternate Source Vendors, we have taken direct responsibility for the secondary market procurement process.

Winn Dixie has retained the Visagent Corporation, an independent technology solutions provider, based in Jacksonville, to facilitate the end-to-end procurement of all flip goods that are purchased or sold on the secondary market.

Effective June 29, 2001, all Winn Dixie flip transactions, will be facilitated through the anonymous, Internet based platform, known as the Visagent Grocery Exchange.

This initiative will allow Winn Dixie to more effectively:
- Utilize buyer time
- Objectively evaluate <u>all</u> offers
- Ensure high service levels
- Streamline product procurement
- Communicate WD product offerings

The Visagent Grocery Exchange offers distinct advantages to alternate source vendors:

**Maximum Available Visibility** – You will now have the confidence of knowing that all of your offers are viewed by a WD buyer without screening or delay.

You will also be able to purchase Winn Dixie products through the Exchange.

**Reduce Traffic Management Costs** - Visagent utilizes Landstar (NASDAQ, LSTR) for the transportation and logistics of all transactions on the Exchange. Landstar's Grocery specific agency is experienced in all aspects of pick-up and delivery in the secondary wholesale market. They are also sensitive to the nature of plant and blind pick-ups while providing the assurance of source confidentiality.

**Reduce Product Sales Cycles** - The Visagent Grocery Exchange speeds the time required to quote goods and shortcuts the process in reaching the decision maker. If you have the capability, Visagent will provide you with the file format that allows you to quote products via FTP or EDI directly into the Exchange. You may also choose to enter your offers manually. Visagent eliminates the need to contact Winn Dixie via phone call, fax or email.

*Saves Accounting Time*- You will no longer prepare or submit invoices to Winn Dixie. Visagent facilitates the handling of all invoicing and payment issues.



WINN-DIXIE STORES, INC.    5050 EDGEWOOD COURT    P.O. BOX B    JACKSONVILLE, FLORIDA 32203-0297    (904) 783-5000

Printed on Recycled Paper

WD 22-21

V05558

Winn Dixie, like all other Buyers on the Exchange, pays for all goods prior to product pick-up. Visagent escrows the funds until delivery is completed and then remits payment to you, via ACH transfer. This process consolidates your collection efforts and reduces your cost of funds.

**Data Optimization** – Alternate Source Vendors do not need to maintain WD items codes for cross-reference purposes. The Visagent Grocery Exchange converts your quotation into the Winn Dixie format.

**No Accruals** - WD will no longer charge vendors for accruals on products purchased through the Visagent Grocery Exchange.

**Promote High Service Levels** - Visagent tracks the performance of all Buyers and Sellers on the Exchange. Anonymity is preserved but your offer is delivered to Winn Dixie with your service level rating. Therefore your excellent record is compared against and along side other product offerings. Buy orders cannot and may not be canceled.

**Based on the foregoing, Winn Dixie expects you to post your best price each time you enter an offer on the Exchange. As always, your level of service will be a major factor in the perception associated with your offer.**

**Please do not phone, fax or email Winn Dixie since the fundamental principal of the Exchange is anonymity.**

Winn Dixie's goal is to transact much more truckload business (buying and selling) on the secondary market. This initiative will also provide you with an opportunity to increase your business activity with Winn Dixie.

We have provided Visagent with a list of priority vendors for migration to the Exchange. Please follow the instructions on the attachments provided by Visagent to begin the application process. Visagent will contact you with instructions for registration and training soon thereafter. Visagent may be contacted at 904-224-4100 ext 41 or at www.Visagent.com.

We look forward to the opportunity to work with you through the Visagent Corporation. We believe that the opportunities that will present themselves in this new format will be mutually beneficial to Winn Dixie and to all those who do business with us.

Sincerely,

Daryl Mills,
Director of Strategy and Business Planning
Winn Dixie Inc.


DWM/br


attachments

ROBERT HORICK

07/08/01  10:22  FAX 5619952041

# 5089

—983-7067 [GLOBAL FOOD RESOURCES INC]

COPYRIGHT 2001 DUN & BRADSTREET INC. – PROVIDED UNDER CONTRACT
FOR THE EXCLUSIVE USE OF SUBSCRIBER 063-091487L.

*IN DATE*

| | | SUMMARY |
|---|---|---|
| DONS: 79-983-7067 | DATE PRINTED | RATING -- |
| LOBAL FOOD RESOURCES INC | JUL 05 2001 | |
| | | STARTED    1988 |
| 107 HENDRICKS AVE STE218 | IMPORT EXPORT | SALES      $5,000,000 |
| ACKSONVILLE FL  32207 | SIC NO. | EMPLOYS    7 |
| TEL: 904 396-7007 | 51 99 | HISTORY    INCOMPLETE |

CHIEF EXECUTIVE: MARK RUBIN, PRES

* * *   CUSTOMER SERVICE   * * *

If you have questions about this report, please call our Customer Service
Center at 1-800-234-3867 from anywhere within the U.S. If you are outside the
U.S. contact your local D&B office.

*** Additional Decision Support Available ***

Additional D&B products, credit recommendations and specialized investigations
are available to help you evaluate this company or its industry. Call Dun &
'street's Solution Center at 1-800-362-3425 from anywhere within the U.S.

* * *   SUMMARY ANALYSIS   * * *

The Summary Analysis section reflects information in D&B's file as of
July 2, 2001.

RATING SUMMARY . . . .

     The absence of a Rating (--) indicates that the information available to
D&B does not permit us to assign a Rating to this business.  In this
case, no Rating was assigned because D&B does not have sufficient
historical information about this company to assign a Rating.

     Below is an overview of the company's D&B Rating(s) since 11/27/97:

| RATING | DATE APPLIED |
|---|---|
| -- | 11/27/97 |

* - *   PAYMENT SUMMARY   * * *

The Payment Summary section reflects payment information in D&B's file as of
the date of this report.

          The PAYDEX for this company is 80.

This PAYDEX score indicates that payments to suppliers are generally within
terms, weighted by dollar amounts.  When dollar amounts are not considered,
approximately 95% of the company's payments are within terms.

Below is an overview of the company's dollar-weighted payments, segmented by
's suppliers' primary industries:

| | | TOTAL DOLLAR | LARGEST HIGH | % W/IN | DAYS SLOW |
|---|---|---|---|---|---|
| | TOTAL | | | | |

-1-

EXHIBIT

15

Date:

TH

V05549

ROBERT HORICK

07/06/01  10:22  FAX 5619952041

3-983-7067 (GLOBAL FOOD RESOURCES INC)

| | RCV'D | AMOUNTS | CREDIT | TERMS | <31 | 31-60 | 61-90 | 91+ |
|---|---|---|---|---|---|---|---|---|
| | # | $ | $ | % | % | % | % | % |
| otal in D&B's file | 10 | 113,600 | 95,000 | | | | | |

'ayment By Industry:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 Air courier service | 2 | 300 | 250 | 58 | 42 | - | - | - |
| 2 Nonclassified | 2 | 150 | 100 | 100 | - | - | - | - |
| 3 Mfg cookies/crackers | 1 | 95,000 | 95,000 | 100 | - | - | - | - |
| 4 Meat packing plant | 1 | 10,000 | 10,000 | 100 | - | - | - | - |
| 5 Mfg soft drinks | 1 | 7,500 | 7,500 | 100 | - | - | - | - |
| 6 Arrange cargo transpt | 1 | 500 | 500 | 100 | - | - | - | - |
| 7 Paper mill | 1 | 100 | 100 | 100 | - | - | - | - |
| 8 Radiotelephone commun | 1 | 50 | 50 | 100 | - | - | - | - |

Other Payment Categories:

| | | | |
|---|---|---|---|
| Cash experiences | 0 | 0 | 0 |
| Payment record unknown | 0 | 0 | 0 |
| Unfavorable comments | 0 | 0 | 0 |
| Placed for collection | | 0 | |
| with D&B | 0 | N/A | |
| other | 0 | | |

The highest "Now Owes" on file is $10,000
The highest "Past Due" on file is $ 0

The aggregate dollar amount of the 10 payment experiences in D&B's file equals
3% of this company's average monthly sales.  In Dun & Bradstreet's opinion,
ent experiences exceeding 10% of a company's average monthly sales can be
esidered representative of payment performance.

PAYMENTS  (Amounts may be rounded to nearest figure in prescribed ranges)

Antic - Anticipated (Payments received prior to date of invoice)
Disc - Discounted (Payments received within trade discount period)
Ppt  - Prompt (Payments received within terms granted)

| REPORTED | PAYING RECORD | HIGH CREDIT | NOW OWES | PAST DUE | SELLING TERMS | LAST SALE WITHIN |
|---|---|---|---|---|---|---|
| | | | | -0- | N30 | 1 Mo |
| 06/01 | Ppt | 10000 | 10000 | -0- | N30 | 6-12 Mos |
| | Ppt | 50 | -0- | -0- | | 1 Mo |
| | Ppt | 50 | 50 | -0- | | 2-3 Mos |
| 05/01 | Ppt | 95000 | -0- | -0- | 2 10 N30 | 1 Mo |
| | Ppt | 7500 | -0- | -0- | | 1 Mo |
| 04/01 | Ppt-Slow 30 | 250 | 100 | -0- | | 2-3 Mos |
| 03/01 | Ppt | 500 | -0- | -0- | N30 | 6-12 Mos |
| 02/01 | Ppt | 100 | -0- | -0- | | 6-12 Mos |
| 01/01 | (009) | 100 | | | | |
| | Satisfactory. | | | | | 6-12 Mos |
| 04/00 | Ppt | 50 | -0- | -0- | | |

* Payment experiences reflect how bills are met in relation to the
terms granted.  In some instances payment beyond terms can be the
result of disputes over merchandise, skipped invoices etc.
* Each experience shown represents a separate account reported by a
supplier.  Updated trade experiences replace those previously
reported.

NANCE
8/03/00    On August 3, 2000, attempts to contact the management of this
business have been unsuccessful. Inside source confirmed operation and
-2-

V05550

07/06/01  10:22  FAX 5619952041

7ه-983-7067 [GLOBAL FOOD RESOURCES INC]

location.

HISTORY
08/03/00      MARK RUBIN, PRES
              DIRECTOR(S):  THE OFFICER(S)

--------------------------------------------------------------
CORPORATE AND BUSINESS REGISTRATIONS REPORTED BY THE SECRETARY
OF STATE OR OTHER OFFICIAL SOURCE AS OF 03/04/2001:

BUSINESS TYPE: Corporation -          DATE INCORPORATED: 06/24/1988
               Profit                 STATE OF INCORP:  Florida
--------------------------------------------------------------

    On Nov.26, 1997 the above company was stated to be a corporation.
    Business started 1988.
    MARK RUBIN.  Work history unknown.

OPERATION
08/03/00      Import export.
          Terms vary.  Sells to wholesalers.  Territory : United States.
          EMPLOYEES:  7 which includes officer(s).
          FACILITIES:  Rents premises in building.
          LOCATION:  Business located at address shown above.
          07-05(3G7  /134)         99999                   063110110

                    FULL DISPLAY COMPLETE

                              -3-

V05551

*Florida Department of State, Division of Corporations*

Corporations Online
*www.sunbiz.org*                **Public Inquiry**

---

## Florida Profit

### GLOBAL FOOD RESOURCES, INC.

---

PRINCIPAL ADDRESS
2107 HENDRICKS AVE., STE 218
C/O RUBIN & RUBIN P.A.
JACKSONVILLE FL 32207 US
Changed 04/16/2001

---

MAILING ADDRESS
2107 HENDRICKS AVE
SUITE 218
JACKSONVILLE FL 32207 US
Changed 05/22/1998

---

| Document Number | FEI Number | Date Filed |
| --- | --- | --- |
| K26990 | 650055434 | 06/24/1988 |

| State | Status | Effective Date |
| --- | --- | --- |
| FL | ACTIVE | NONE |

| Last Event | Event Date Filed | Event Effective Date |
| --- | --- | --- |
| NAME CHANGE AMENDMENT | 10/28/1997 | NONE |

---

## Registered Agent

| Name & Address |
| --- |
| RUBIN, I. MARK
2107 HENDRICKS AVE., STE 212
C/O RUBIN & RUBIN , P.A.
JACKSONVILLE FL 32207 |
| Name Changed: 07/16/1993 |
| Address Changed: 05/01/1996 |

---

## Officer/Director Detail

| Name & Address | Title |
| --- | --- |
| RUBIN, I. MARK | |

**V05552**

Division of Corporations                                    Page 2 of 2



2107 HENDRICKS AVE
JACKSONVILLE FL 32207                                    P

## Annual Reports

| Report Year | Filed Date | Intangible Tax |
|-------------|------------|----------------|
| 1999 | 04/20/1999 | |
| 2000 | 05/01/2000 | |
| 2001 | 04/16/2001 | |

Previous Filing        Return to List        Next Filing

View Events
View Name History

View Document Image(s)

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**

Corporations Inquiry                    Corporations Help

V05553

*Florida Department of State, Division of Corporations*



www.smbiz.org          **Public Inquiry**

### GLOBAL FOOD RESOURCES, INC.

| Document Number | Date Filed | Effective Date | Status |
|---|---|---|---|
| K26990 | 06/24/1988 | None | Active |

| EVENT TYPE | FILED DATE | EFFECTIVE DATE | DESCRIPTION |
|---|---|---|---|
| NAME CHANGE AMENDMENT | 10/28/1997 | | OLD NAME WAS : TRUMP SYSTEMS, INC. |
| REINSTATEMENT | 05/01/1990 | | |
| INVOLUNTARILY DISSOLVED | 10/13/1989 | | |

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**

Corporations Inquiry            Corporations Help

V05554



# WINN DIXIE

### America's Su

*Attn:*
*Simon*
*FYI*
*Kyle*

To: All Secondary Sources

CC: Tom Barr

From: Bob Carlson

Date: September 21, 2001

Subject: Business Procedures

Recently, Winn-Dixie asked all diverters to participate with other diverters and retailers using **Visagent** as a tool to offer and trade goods via the Internet. This process is to replace the former method of faxes and numerous phone calls. Where most diverting companies have honored this request, a few have attempted to circumvent or disregard it. This neglect of procedures is not acceptable. We will have no choice but to completely stop doing business with your company if you are currently conducting business in the following fashion:

1. Not posting with Visagent and instead calling to buy and/or sell product.

2. Calling to check on postings - either to inform us of your posting or to inquire if a posting belongs to Winn-Dixie.

3. Calling frequently to chat or harassing our assistants in hopes of communicating with us directly.

Everyone has that hot item to buy and/or sell, when you take it upon yourself to continually call until you are able to corner one of us, you are risking permanently losing the ability to call on Winn-Dixie for both you and your company.

One last item, with all of the changes in the last few months here at Winn-Dixie, a pattern has developed on truckloads sold to Winn-Dixie; too many orders are being cancelled or delayed on delivery. Everyone needs to improve on this process. Recently, a few of the Winn-Dixie diverters have been dropped due to poor service; my hope is that we do not have to add anyone else to that list.

Robert Carlson
Winn-Dixie Diverting

| EXHIBIT |
| --- |
| |
| Date: |
| TH |

WINN-DIXIE STORES, INC.    5050 EDGEWOOD COURT    P.O. BOX B    JACKSONVILLE, FLORIDA 32203-0297    (904) 783-5000



Printed on Recycled Paper
WD 22-01

1

WD0000000260

## Winn-Dixie

**From:**          Matthew Laney
**Sent:**          Monday, May 14, 2001 4:24 PM
**To:**            'mrubin@visagent.com'
**Cc:**            Daryl Mills; Tom Barr; Kevin Gates
**Subject:**       Fee Matrix

Mark,

Our suggestion for a few matrix is the following:

| Sales Volume | Fee |
|---|---|
| 0 – 25,000,000 | 1.50% |
| 25,000,001 to 50,000,000 | 1.25% |
| 50,000,000 to 100,000,000 | 1.00% |
| Over 100,000,000 | 0.75% |

Also, suggest adding a quarterly incentive rebate of 0.25% of purchases.

*Matthew V. Laney*
Winn-Dixie Procurement, Inc.
Finance Manager – Food
Phone: 904.783.5214 ♦ Fax: 904.370.6579



EXHIBIT
17
Date:
TH

1

V07335

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:                                      )    Case No. 05-03817-3F1
                                            )
WINN-DIXIE STORES, INC., et al.,            )    Chapter 11
                                            )
     Reorganized Debtors.                  )    Jointly Administered
_____ )

### DEBTORS' RESPONSE TO VISAGENT
### CORPORATION'S SECOND SET OF INTERROGATORIES

Winn-Dixie Stores, Inc., on behalf of itself and its reorganized subsidiaries and affiliates (collectively, the "Debtors"), responds to Visagent Corporation's second set of interrogatories as follows:

### General Objections

Debtors object to these interrogatories (i) to the extent they require the disclosure of information protected by the attorney-client privilege or the work product doctrine, and (ii) because these interrogatories, together with Visagent's First Set of Interrogatories, exceed the number allowed by Rule 7033, Federal Rules of Bankruptcy Procedure.

Counsel have agreed that Winn-Dixie will, without waiver of any objection to the number of interrogatories propounded, provide answers to Interrogatory Numbers 1, 4, 5, 8, 9, 11, 12, 13, and 14. The responses below are subject to such agreement and Debtors' general objections.

EXHIBIT
18
Date:
TH

## Specific Objections and Answers

> Interrogatory No. 1: Set forth each and every breach of
> Visagent to the Service Agreement and for each breach,
> identify the date and time of each breach, all documents
> referencing or supporting such breach and every witness
> to each breach.

Answer to Interrogatory No. 1: Subject to Debtors' objections, Visagent did

not perform under the Service Agreement because Visagent's Grocery Exchange

failed to provide a platform for the sale or purchase of sufficient volumes of diverted

grocery products.

Visagent also represented to Debtors that Visagent had no ownership or

affiliated interested with any diverter organizations. In fact, Visagent's management

had a direct interest in a diverting business which operated from the same building as

Visagent, a fact which Debtors contend affected Visagent's ability to attract enough

users to the Grocery Exchange to make it a viable platform for the sale or purchase of

sufficient volumes of diverted grocery products.

Tom Barr has knowledge of these breaches. The documents showing goods

purchased and sold on the Grocery Exchange, the documents reflecting Visagent's

representations that it was not affiliated with diverter organizations, and the

documents showing that Visagent was affiliated with Global Food Resources, Inc.

evidence these breaches.

> Interrogatory No. 2: Identify all current Winn-Dixie
> employees, representatives or agents who have
> knowledge of the negotiations leading up to the
> execution of the Letter of Intent dated 6/14/02 between
> Victory and Winn-Dixie and for each identify person's

2

name, title during the relevant time, current position or
title, name of person's immediate supervisor during the
relevant time and the scope of each person's knowledge.

Answer to Interrogatory No. 2: No response required pursuant to agreement

of counsel.

Interrogatory No. 3: Identify all former Winn-Dixie
employees, representatives or agents who have
knowledge of the negotiations leading up to the
execution of the Letter of Intent dated 6/14/02 between
Victory and Winn-Dixie and for each identify person's
name, title during the relevant time, current position or
title, name of person's immediate supervisor during the
relevant time and the scope of each person's knowledge.

Answer to Interrogatory No. 3: No response required pursuant to agreement

of counsel.

Interrogatory No. 4: Identify all current Winn-Dixie
employees, representatives or agents who had access to
"NTS" through Victory's non-exclusive license from
7/10/02 to 12/31/05 and for each identify person's name,
title during the relevant time, current position or title,
name of person's immediate supervisor during the
relevant time and the scope of each person's knowledge.

Objection to Interrogatory No. 4: Debtors object to this interrogatory

because it will not lead to the discovery of admissible evidence. There may have

been other Debtor employees who had access to NTS but only Tom Barr conducted

transactions using NTS.

Answer to Interrogatory No. 4: Subject to Debtors' objections, Tom Barr.

3

Interrogatory No. 5: Identify all former Winn-Dixie employees, representatives or agents who had access to "NTS" through Victory's non-exclusive license from 7/10/02 to 12/31/05 and for each identify person's name, title during the relevant time, current position or title, name of person's immediate supervisor during the relevant time and the scope of each person's knowledge.

Objection to Interrogatory No. 5: See objection to Interrogatory No. 4.

Interrogatory No. 6: Identify all office equipment provided by Visagent to Winn-Dixie from 6/1/02 to 12/31/05.

Answer to Interrogatory No. 6: No response required pursuant to agreement of counsel.

Interrogatory No. 7: Identify all office equipment provided by Winn-Dixie to Victory from 6/1/02 to 12/31/05.

Answer to Interrogatory No. 7: No response required pursuant to agreement of counsel.

Interrogatory No. 8: Identify all office equipment provided by Victory to Winn-Dixie from 6/1/02 to 12/31/05.

Answer to Interrogatory No. 8: None.

Interrogatory No. 9: List all in-house counsel employed by Winn-Dixie from January 1, 2001 through January 1, 2005 and for each describe in detail their dates of employment, the scope of the legal services each provided to Winn-Dixie (their job description(s)) as in-house counsel and identify their supervisor(s) by name, last known address and last known telephone number.

4

Objection to Interrogatory No. 9: Debtors object to this interrogatory because

it is overly broad and will not lead to the discovery of admissible evidence

Answer to Interrogatory No. 9: Subject to Debtors objections, see answer to

Interrogatory Number 3 regarding in-house attorneys with knowledge of the

negotiations leading up to the execution of the letter of intent.

> Interrogatory No. 10: List all positions held by Ed
> Mieskoski and Phil Payment while employed by Debtor,
> and for each position, list dates of employment at said
> position and provide a job description for each position
> held.

Answer to Interrogatory No. 10: No response required pursuant to agreement

of counsel.

> Interrogatory No. 11: Identify all assistants/secretaries
> for Phil Payment and Ed Mieskoski while they were
> employed at Winn-Dixie, and for each such
> assistants/secretaries list their dates of employment, last
> known address and last known telephone number.

Objection to Interrogatory No. 11: Debtors object to this interrogatory

because it is overly broad and will not lead to the discovery of admissible evidence.

> Interrogatory No. 12: Identify all Alternative Source
> Vendors utilized by Winn-Dixie from January 1, 2001 to
> January 1, 2005.

Objection to Interrogatory No. 12: Debtors object to this interrogatory

because it is (i) overly broad and (ii) vague due to the undefined term "Alternative

Source Vendor."

5

Answer to Interrogatory No. 12: Subject to Debtors' objections, Debtors construe "Alternative Source Vendor" to mean a diverter. Visagent can ascertain the answer to this interrogatory from the information on the computer disk of information that Debtors produced to Visagent by letter of May 3, 2007, and the burden of ascertaining the answer is substantially the same for Visagent and Debtors.

> Interrogatory No. 13: Identify all companies utilized by Winn-Dixie to transport goods sold in secondary market from January 1, 2001 to January 1, 2005 and for each company list their address, last known telephone number, last known contact person or liaison with Winn-Dixie and all known dispatchers.

Answer to Interrogatory No. 13: None.

> Interrogatory No. 14: Describe in detail all steps of the due diligence process Winn-Dixie utilized regarding Visagent, its directors, officers and/or employees prior to entering into the Service Agreement with Visagent.

Answer to Interrogatory No. 14: Debtors employees listened to Visagent presentations and read materials Visagent provided.

6

Interrogatory No. 15: Describe in detail all steps of the due diligence process Winn-Dixie utilized regarding Visagent, its directors, officers and/or employees prior to entering into any User Agreement with Visagent.

Answer to Interrogatory No. 15: No response required pursuant to agreement

of counsel.

SMITH HULSEY & BUSEY

By_ /s/ David L. Gay_____
    Stephen D. Busey
    James A. Bolling
    David L. Gay

Florida Bar Number 839221
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
dgay@smithhulsey.com

Counsel for Reorganized Debtors

7

Debtors' answers to Visagent Corporation's second set of interrogatories to Debtors are true and correct to the best of Debtors' knowledge, based on a reasonable investigation.

WINN-DIXIE STORES, INC.

By _____
                    Tom Barr, Buyer

STATE OF FLORIDA

COUNTY OF DUVAL

The foregoing answers to interrogatories were acknowledged before me this 11th day of June, 2007, by Tom Barr, who is personally known to me or has produced _Drivers License_ as identification and who did/did not take an oath.

_____
                    NOTARY PUBLIC

BRENDA G. RITCHEY
Notary Public, State of Florida
My comm. expires Sept. 22, 2008
Comm. No. DD 324017

8

## Certificate of Service

I hereby certify that a copy of the foregoing has been furnished **by mail and facsimile** to Guy Bennett Rubin, Esq., Rubin & Rubin, Post Office Box 395, Stuart, Florida 34995 and Paul M. Harden, Esq., Rubin & Rubin, 1301 Riverplace Boulevard, Suite 2601, Jacksonville, Florida 32207, this _11th_ day of June, 2007.

_____
Attorney

564683.1

9

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
<u>JACKSONVILLE DIVISION</u>

In re:

WINN-DIXIE STORES, INC., et al.,

            Reorganized Debtors.

Case No.  05-03817-3F1

Chapter 11

Jointly Administered

## DEBTORS' RESPONSE TO VISAGENT CORPORATION'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Winn-Dixie Stores, Inc., on behalf of itself and its reorganized subsidiaries and affiliates (collectively, the "Debtors"), responds to Visagent Corporation's second request for the production of documents, below.

### General Objections

Debtors object to these document requests to the extent they seek the disclosure of information protected by the attorney-client privilege or the work product doctrine. Debtors will make documents available for inspection at a mutually convenient time in the offices of Smith Hulsey & Busey. The responses below are subject to these General Objections.

### Specific Objections and Responses

<u>Document Request No. 1</u>:  A true and accurate copy of the Service Agreement "signed by a duly authorized representative of the Debtors" as referred to in Debtors' answer to Request No. 2 to Visagent's First Request for Admissions.

EXHIBIT
G

Date:
TH

Response to Document Request No. 1:  Debtors will produce any such documents in their possession, custody or control which Debtors have not already produced.

Document Request No. 2:  All minutes, synopses, correspondence, emails or any other documentation referencing or relating to any joint Visagent/Winn-Dixie meetings, seminars, training sessions, or conferences, or any internal meetings, seminars, training sessions or conferences relating to any aspect of Visagent's services.

Response to Document Request No. 2:  Debtors will produce any such documents in their possession, custody or control which Debtors have not already produced.

Document Request No. 3:  All documentation referencing the Winn-Dixie Charity Golf Tournament from January 1, 2001 to December 31, 2005, including but not limited to notes, correspondence, invitations, list of participants, list of vendors, list of donors, payments for registration.

Objection to Document Request No. 3: Debtors object to this request because it is overly broad and burdensome and will not lead to the discovery of admissible evidence.

Document Request No. 4: Personnel files of all Winn-Dixie employees assigned to secondary market department, alternate source department, or any other employee who was assigned or has knowledge of relationship or contract between Winn-Dixie and Visagent, including but not limited to the personnel files of:

       Tom Barr
       Darryl Mills
       Phil Payment

2

Melissa Fowler
Kevin Gates
Seth Gaynor
Glenn Hamilton
Dick Judd
Dan LeFever
Ed Mieskoski
David Mulcoch
Justin Struther
Les Wulfert

<u>Objection to Document Request No. 4</u>:  Debtors object to this request because it is overly broad and burdensome and will not lead to the discovery of admissible evidence.  The Debtors also object to this request to the extent it seeks access to information protected by the named individuals' rights to privacy under the Florida Constitution.

<u>Response to Document Request No. 4</u>:  Subject to their objections and the Protective Order regarding Confidential Information, Debtors will produce the personal files of Winn-Dixie employees having knowledge of the relationship or contract between Winn-Dixie and Visagent to the extent such files relate to Visagent and to the extent such documents are in the Debtors' possession, custody or control.

<u>Document Request No. 5</u>:  Copies of all licenses or any other form of permission given to Winn-Dixie by Victory for access to its "Network Trading System" (NTS) from 7/10/02 through 1/31/05.

<u>Objection to Document Request No. 5</u>:  Debtors object to this request because it is overly broad as to the time frame identified.

<u>Response to Document Request No. 5</u>:  Debtors do not have any such documents in their possession, custody or control.

3

Document Request No. 6: Any and all communications between Victory and Winn-Dixie regarding Winn-Dixie's access to and use of the "NTS" between 7/10/02 and 1/31/05.

Objection to Document Request No. 6: Debtors object to this request because it is overly broad as to the time frame identified.

Response to Document Request No. 6: Subject to their objections, Debtors will produce any such documents in their possession, custody or control which Debtors have not already produced, for the period July 10, 2002 to June 28, 2004.

Document Request No. 7: Copies of all documents reflecting Winn-Dixie's access to "NTS" and Victory's maintenance and customization of "NTS" on behalf of Winn-Dixie from 7/10/02 until 1/31/05.

Objection to Document Request No. 7: Debtors object to this request because it is overly broad as to the time frame identified.

Response to Document Request No. 7. Subject to their general objections, Debtors will produce any such documents in their possession, custody or control which Debtors have not already produced, for the period July 10, 2002 to June 28, 2004.

Document Request No. 8: Any and all documents reflecting communication from Winn-Dixie to Alternative Source Vendors from 6/15/01 to 1/1/05 including, but not limited to, correspondence, emails, facsimiles, and instant messages.

Objection to Document Request No. 8: Debtors object to this request because (i) it is overly broad and burdensome, (ii) it will not lead to the discovery of

4

admissible evidence, and (iii) it is vague due to the undefined term "Alternative Source Vendor."

Response to Document Request No. 8:  Subject to their objections, Debtors will produce any such documents in their possession, custody or control which Debtors have not already produced, for the period June 28, 2001 to June 28, 2004.

Document Request No. 9:    Any and all contracts, invoices, letters and communications of any kind for services from January 1, 2001 to January 1, 2005 between Winn-Dixie and any company hired to transport goods in the secondary market.

Objection to Document Request No. 9:  Debtors object to this request because it is overly broad and will not lead to the discovery of admissible evidence.

Response to Document Request No. 9:  Debtors do not have any such documents in their possession, custody or control.

Document Request No. 10: All documents concerning or referencing due diligence or any other investigation by Winn-Dixie regarding Visagent or any of its officers, directors and/or employees.

Response to Document Request No. 10: Debtors will produce copies of any such documents in their possession, custody or control which Debtors have not already produced.

SMITH HULSEY & BUSEY

By_____
Stephen D. Busey
James A. Bolling
David L. Gay

Florida Bar Number 839221
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
dgay@smithhulsey.com

Counsel for Reorganized Debtors

6

Certificate of Service

I hereby certify that a copy of the foregoing has been furnished **by mail and facsimile** to Guy Bennett Rubin, Esq., Rubin & Rubin, Post Office Box 395, Stuart, Florida and Paul M. Harden, Esq., Rubin & Rubin, 1301 Riverplace Boulevard, Suite 2601, Jacksonville, Florida 32207, this 29th day of May, 2007.

_____
Attorney

00564700

22

DATE: 04/19/...
TIME: 01.15 PM

# WINN DIXIE
## SALES HISTORY BY VENDOR

Category: All Categories

Period 1 (+) Period 2

| Vendor | --- 6/27/2002 to 6/25/2003 --- | | | | | --- to --- | | | | | Period 1 (+) Period 2 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CASES | DOLLARS | $PROFIT | % | %TOT | CASES | DOLLARS | $PROFIT | % | %TOT | CASES | DOLLARS | $PROFIT | % | %TOT |
| ACME WHOLESALE | 5,748 | $54,643 | $4,203 | 8.3 | 0.1 | 0 | $0 | $0 | 0 | $0 | 5,748 | $54,643 | $4,203 | 8.3 | 0.1 |
| ALTITUDE | 14,212 | $318,497 | $27,357 | 8.6 | 0.6 | 0 | $0 | $0 | 0 | $0 | 14,212 | $318,497 | $27,357 | 8.6 | 0.6 |
| AMERICAN FOOD | 13,324 | $141,404 | $11,941 | 9.2 | 0.4 | 0 | $0 | $0 | 0 | $0 | 13,324 | $141,404 | $11,941 | 9.2 | 0.4 |
| AMPERSAND | 431,002 | $6,922,403 | $540,053 | 8.5 | 17.6 | 0 | $0 | $0 | 0 | $0 | 431,002 | $6,922,403 | $540,053 | 8.5 | 17.6 |
| CHESAPEAKE | 7,551 | $55,859 | $6,181 | 6.9 | 0.2 | 0 | $0 | $0 | 0 | $0 | 7,551 | $55,859 | $6,181 | 6.9 | 0.2 |
| FOOD MARKETING | 6,007 | $382,018 | $6,414 | 8.5 | 0.2 | 0 | $0 | $0 | 0 | $0 | 6,007 | $382,018 | $6,414 | 8.5 | 0.2 |
| GRAPEVINE | 41,632 | $699,566 | $52,624 | 8.1 | 1.8 | 0 | $0 | $0 | 0 | $0 | 41,632 | $699,566 | $52,624 | 8.1 | 1.8 |
| LAKE POINT | 170,749 | $3,328,978 | $312,426 | 10.4 | 8.5 | 0 | $0 | $0 | 0 | $0 | 170,749 | $3,328,978 | $312,426 | 10.4 | 8.5 |
| MARKET | 1,424 | $25,290 | $1,424 | 6.0 | 0.1 | 0 | $0 | $0 | 0 | $0 | 1,424 | $25,290 | $1,424 | 6.0 | 0.1 |
| METRO | 20,546 | $396,366 | $39,712 | 10.5 | 1.0 | 0 | $0 | $0 | 0 | $0 | 20,546 | $396,366 | $39,712 | 10.5 | 1.0 |
| NEWPORT | 728 | $11,468 | $1,092 | 10.5 | 0.0 | 0 | $0 | $0 | 0 | $0 | 728 | $11,468 | $1,092 | 10.5 | 0.0 |
| PERFORMANCE | 74,893 | $795,309 | $72,585 | 10.0 | 2.0 | 0 | $0 | $0 | 0 | $0 | 74,893 | $795,309 | $72,585 | 10.0 | 2.0 |
| PRESTIGE INT'L | 2,596 | $42,853 | $1,218 | 2.9 | 0.1 | 0 | $0 | $0 | 0 | $0 | 2,596 | $42,853 | $1,218 | 2.9 | 0.1 |
| PURITY | 2,700 | $38,583 | $2,970 | 8.3 | 0.1 | 0 | $0 | $0 | 0 | $0 | 2,700 | $38,583 | $2,970 | 8.3 | 0.1 |
| QUALITY KING | 73,658 | $1,302,856 | $117,011 | 9.9 | 3.3 | 0 | $0 | $0 | 0 | $0 | 73,658 | $1,302,856 | $117,011 | 9.9 | 3.3 |
| RIVER CITY | 900 | $15,165 | $1,027 | 7.2 | 0.0 | 0 | $0 | $0 | 0 | $0 | 900 | $15,165 | $1,027 | 7.2 | 0.0 |
| SUPREME | 7,212 | $96,054 | $7,870 | 8.9 | 0.2 | 0 | $0 | $0 | 0 | $0 | 7,212 | $96,054 | $7,870 | 8.9 | 0.2 |
| TITAN | 6,081 | $162,991 | $10,728 | 7.0 | 0.4 | 0 | $0 | $0 | 0 | $0 | 6,081 | $162,991 | $10,728 | 7.0 | 0.4 |
| TRANSFER | 25,386 | $364,501 | $24,318 | 7.1 | 0.9 | 0 | $0 | $0 | 0 | $0 | 25,386 | $364,501 | $24,318 | 7.1 | 0.9 |
| TRI-STATE | 48,089 | $845,159 | $67,962 | 8.7 | 2.1 | 0 | $0 | $0 | 0 | $0 | 48,089 | $845,159 | $67,962 | 8.7 | 2.1 |
| VALU TRADING | 7,172 | $117,692 | $9,244 | 7.5 | 0.3 | 0 | $0 | $0 | 0 | $0 | 7,172 | $117,692 | $9,244 | 7.5 | 0.3 |
| VICTORY | 4,748 | $80,994 | $3,347 | 4.3 | 0.2 | 0 | $0 | $0 | 0 | $0 | 4,748 | $80,994 | $3,347 | 4.3 | 0.2 |
| VISAGENT CORP | 1,396,387 | $22,272,987 | $2,265,647 | 10.2 | 56.6 | 0 | $0 | $0 | 0 | $0 | 1,396,387 | $22,272,987 | $2,265,647 | 10.2 | 56.6 |
| VOLUME, INC. | 76,401 | $980,646 | $86,130 | 9.6 | 2.5 | 0 | $0 | $0 | 0 | $0 | 76,401 | $980,646 | $86,130 | 9.6 | 2.5 |
| | 13,309 | $290,028 | $20,503 | 7.6 | 0.7 | 0 | $0 | $0 | 0 | $0 | 13,309 | $290,028 | $20,503 | 7.6 | 0.7 |
| GRAND TOTAL: | 2,455,925 | $35,382,729 | #### | | 0 | 0 | $0 | | 0.0 | $0 | 2,455,925 | $35,382,729 | $3,649,978 | 10.3 | 0.7 |

This report contains confidential and proprietary information, DO NOT DISCLOSE.



EXHIBIT
20
Date:
TH

V05064