Westlaw.

98 B.R. 375
98 B.R. 375
(Cite as: 98 B.R. 375)

▷In re Candy Braz, Inc.
Bkrtcy.N.D.Ill.,1988.

United States Bankruptcy Court, N.D. Illinois,
Eastern Division.
In re CANDY BRAZ, INC., Debtor.
**Bankruptcy No. 85 B 00724.**

Sept. 9, 1988.

Trustee objected to allowance of unpaid tax claim filed by state taxing authority on ground that claim was untimely. The Bankruptcy Court, John H. Squires, J., held that: (1) creditor whose claim was not listed as disputed, contingent or unliquidated on bankruptcy schedule signed by debtor's attorney and filed with court did not have to file proof of claim, regardless of whether debtor's attorney had authority to sign schedules for debtor, and (2) subsequent proof of claim filed by State Department of Revenue, which merely altered the amount of tax claimed to be due, would be allowed as amendment to Department's original proof of claim.

So ordered.

See also, Bkrtcy., 98 B.R. 370
West Headnotes
**[1] Federal Civil Procedure 170A ☜2462**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
      170AXVII(C)1 In General
        170Ak2462 k. Purpose. Most Cited Cases
Primary purpose for granting summary judgment is to avoid unnecessary trials when no genuine issue of material fact is in dispute. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ☜2470.1**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
      170AXVII(C)1 In General
        170Ak2465 Matters Affecting Right to

Judgment
        170Ak2470.1 k. Materiality and Genuineness of Fact Issue. Most Cited Cases
Existence of material factual dispute is sufficient to preclude entry of summary judgment, only where disputed fact is outcome determinative under applicable law. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ☜2534**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
      170AXVII(C)3 Proceedings
        170Ak2533 Motion
          170Ak2534 k. By Both Parties. Most Cited Cases
On cross motions for summary judgment, court must rule on each party's motions individually, denying both motions if genuine issues of material fact exist. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[4] Bankruptcy 51 ☜2892.1**

51 Bankruptcy
  51VII Claims
    51VII(D) Proof; Filing
      51k2892 Necessity of Filing; Effect of Failure
        51k2892.1 k. In General. Most Cited Cases
        (Formerly 51k2892)
Creditor whose claim was not listed as disputed, contingent, or unliquidated on bankruptcy schedules signed by debtor's attorney and filed with court did not have to file proof of claim, regardless of whether attorney had authority to sign schedules, or whether creditor relied on schedules in electing not to file proof of claim. Bankr.Code, 11 U.S.C.A. § 1111(a); Rules Bankr.Proc.Rule 3003(c)(2), 11 U.S.C.A.

**[5] Bankruptcy 51 ☜2922**

51 Bankruptcy
  51VII Claims
    51VII(E) Determination
      51k2922 k. Summary Allowance; Necessity for Objection. Most Cited Cases

98 B.R. 375
98 B.R. 375
(Cite as: 98 B.R. 375)

Creditor whose claim is not listed as disputed, contingent or unliquidated on debtor's bankruptcy schedules need not rely on schedules in order for its claim to be deemed allowed. Bankr.Code, 11 U.S.C.A. § 1111(a); Rules Bankr.Proc.Rule 3003(c)(2), 11 U.S.C.A.

[6] Bankruptcy 51 ☞2900(1)

51 Bankruptcy
  51VII Claims
    51VII(D) Proof; Filing
      51k2897 Time for Filing
        51k2900 Extension of Time; Excuse for Delay
          51k2900(1) k. In General. Most Cited Cases
Creditor whose claim was not listed as disputed, contingent or unliquidated on debtor's bankruptcy schedules would be allowed to file late proof of claim, even assuming that such filing was necessary based on alleged defect in manner in which schedules were executed, where debtor obviously knew of claim, estate would suffer no prejudice, and creditor had acted in good faith. Bankr.Code, 11 U.S.C.A. § 1111(a); Rules Bankr.Proc.Rule 3003(c)(2), 11 U.S.C.A.

[7] Bankruptcy 51 ☞2903

51 Bankruptcy
  51VII Claims
    51VII(D) Proof; Filing
      51k2903 k. Amendment or Withdrawal. Most Cited Cases
Subsequent proof of claim filed by State Department of Revenue, which merely altered the amount of tax claimed to be due based on debtor's NSF checks, would be allowed as amendment to Department's original proof of claim, where amendment involved same type of unpaid stamp tax, for same fiscal period, and did not constitute "new claim.".

[8] Bankruptcy 51 ☞2903

51 Bankruptcy
  51VII Claims
    51VII(D) Proof; Filing
      51k2903 k. Amendment or Withdrawal. Most Cited Cases
Decision to allow amendment to timely filed proof of claim is within some discretion of Bankruptcy Court.

[9] Bankruptcy 51 ☞2903

51 Bankruptcy
  51VII Claims
    51VII(D) Proof; Filing
      51k2903 k. Amendment or Withdrawal. Most Cited Cases
Amendment to timely filed proof of claim may be filed after bar date, if it merely amends claim and does not introduce distinctly new and different claim.

[10] Bankruptcy 51 ☞2903

51 Bankruptcy
  51VII Claims
    51VII(D) Proof; Filing
      51k2903 k. Amendment or Withdrawal. Most Cited Cases
Amendments to proofs of claim are permitted to cure defects in claim already filed, to describe claim with greater particularity, or to plead new theory of recovery on facts of original claim.

[11] Bankruptcy 51 ☞2903

51 Bankruptcy
  51VII Claims
    51VII(D) Proof; Filing
      51k2903 k. Amendment or Withdrawal. Most Cited Cases
Amendments to proofs of claim are closely scrutinized to ensure that amendment is genuine rather than assertion of entirely new claim.

*376 William D. Kelly, Chicago, Ill., for debtor.

MEMORANDUM OPINION
JOHN H. SQUIRES, Bankruptcy Judge.
This matter comes before the Court on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 incorporated by Federal Rule of Bankruptcy Procedure 7056 filed by Bernard Chaitman (the "Trustee") as trustee for the estate of Candy Braz, Inc. ("Candy Braz") on an objection to the allowance of a claim filed by the Illinois Department of Revenue (the "Department") on behalf of the State of Illinois and on a cross motion for summary judgment filed by the Department. For the reasons set forth herein, the Court having considered all the pleadings and exhibits filed does hereby deny the Trustee's motion for summary judgment and

overrules the objection to the allowance of the Department's claim. The Court does hereby grant the Department's cross motion for summary judgment and allows the amended claim in the amount of $151,492.20 as a priority claim.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. These motions constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (O).

## II. STANDARD FOR SUMMARY JUDGMENT

The Trustee has moved for summary judgment with regard to the Department's claim. The Department has responded with a cross motion for summary judgment. Both parties have submitted memoranda in support of their respective motions and have agreed that the matter is ripe for determination on the motions for summary judgment.

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made *377 applicable to adversary proceedings in the Bankruptcy Court by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Hossman v. Spradlin, 812 F.2d 1019, 1020 (7th Cir.1987).

[1][2][3] The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when no genuine issue of material fact is in dispute. Farries v. Stanadyne/Chicago Div., 832 F.2d 374, 378 (7th Cir.1987). The burden is on the moving party to show that no genuine issue of material fact is in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-586, 106 S.Ct. 1348, 1355-1356, 89 L.Ed.2d 538 (1986). Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. Marine Bank, Nat. Ass'n v. Meat Counter, Inc., 826 F.2d 1577, 1579 (7th Cir.1987); DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 329 (7th Cir.1987); Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312 (7th Cir.1986), cert. denied,479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. Egger v. Phillips, 710 F.2d 292, 296 (7th Cir.1983) (en banc), cert. denied,464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). On cross motions for summary judgment, the Court must rule on each party's motion individually, denying both motions if a genuine issue of material fact exists. ITT Indus. Credit Co. v. D.S. America, Inc, 674 F.Supp. 1330, 1331 (N.D.Ill.1987); Wausau Ins. Co. v. Valspar Corp., 594 F.Supp. 269, 270 (N.D.Ill.1984).

Rule 12(e) of the General Rules of the United States District Court for the Northern District of Illinois adopted by General Order of the Bankruptcy Court dated May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which they contend there is no genuine issue. Rule 12(f) requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the nonmoving party's Rule 12(f) statement fails to deny the facts set forth in the movant's statement, those facts will be "deemed admitted." In support of the motions, each party has filed a detailed Rule 12(e) statement. Neither party has filed a Rule 12(f) statement. Thus, the facts stated in the respective Rule 12(e) statements are deemed admitted for purposes of that motion. The material facts do not appear to be disputed. Therefore, the Court will rule on each motion.

## III. FACTS AND BACKGROUND

On January 17, 1985, Candy Braz filed a Chapter 11 petition for relief under the Bankruptcy Code (the "Code"). Subsequently, on January 18, 1985, Bernard Chaitman was appointed Trustee. The case has

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

proceeded as a liquidation of Candy Braz's assets.

On May 14, 1985, Candy Braz filed its schedule of liabilities which indicated that $177,000.00 was owed to the State of Illinois for unspecified taxes. The amount was not listed as disputed, contingent or unliquidated. The schedule of liabilities filed was signed by "R. Harasymiw att'y", an attorney on behalf of Candy Braz. On June 27, 1985, the Trustee filed motions requesting that a bar date be set for filing proofs of claim or interest and seeking a order compelling Candy Braz to comply with Section 521(1) of the Code. In addition, the Trustee moved for an order regarding the filing of fully completed schedules*378 as the originals were apparently incomplete.

Accordingly, pursuant to an Order of this Court dated June 27, 1985, a bar date for filing proofs of claim was fixed at August 22, 1985.<sup>FN1</sup> In addition, the June 27, 1985 Order designated Sean Saleh ("Saleh") to act on behalf of Candy Braz pursuant to Bankruptcy Rule 9001(5). Moreover, pursuant to sections 105(a) and 521(1), Candy Braz, by Saleh, was ordered to immediately file fully completed Schedules, Statement of Affairs, and Statement of Executory Contracts. Saleh, however, did not file properly executed schedules. The Department did not receive notice of the Order designating Saleh to act on behalf of Candy Braz and compelling him to sign schedules.

> FN1. The Honorable Frederick J. Hertz was originally assigned the case when it was filed in 1985. The Honorable Erwin I. Katz was assigned the case upon Judge Hertz leaving the bench. Thereafter, the case was reassigned to this Judge on February 2, 1988.

The Trustee published and the Clerk of the Bankruptcy Court sent notice of the bar date to all creditors including the Department. Thereafter, on September 9, 1985, the Department filed a claim for unpaid cigarette stamp taxes for the period June 1984 through January 1985 in the amount of $3,510.60. Such taxes were assessed against Candy Braz pursuant to Ill.Rev.Stat. ch. 120, para. 453.1 (1984) et. seq. On May 4, 1987, the Trustee filed an objection to the allowance of the claim of the Department. In the objection, the Trustee asserts that the claim was untimely and that the schedules were unsigned but listed the Department's claim in the amount of $177,000.00.

Subsequently, on May 8, 1987, the Department filed an amended claim for the same period in the amount of $151,492.20. The increase in the amount was based on NSF checks tendered by Candy Braz in payment of cigarette tax stamps. The Trustee also contends that the amended claim is in essence a new claim and is time barred.

On May 26, 1987, the Department filed an answer to the Trustee's objection to the claim. In its answer to the Trustee's objection, the Department contends that pursuant to the section 341 notice of the first meeting of creditors, the automatic stay and section 1111(a), it was not required to file a proof of claim. The section 341 notice stated in part, "Any creditor holding a listed claim which is not listed as disputed, contingent or unliquidated as to amount, may, but need not, file a proof of claim in this case." The Department further states that it was entitled to rely on the filed schedules under Bankruptcy Rule 3003(b)(1) which admitted a greater tax liability owed the State of Illinois than the amount claimed due in the Department's amended claim.

## IV. DISCUSSION

[4] The Trustee first asserts that the schedules filed were null and void due to the fact that they were signed by "R. Harasymiw, att'y", an attorney for Candy Braz who was not a corporate officer, director, shareholder or person in control of the debtor for purposes of Bankruptcy Rule 9001(5). The Trustee concludes that the Department's claim was therefore never properly scheduled and its claim filed after the bar date is untimely. The Court, however, is unwilling to make such a determination. The fact that the schedules were not signed by an officer, director or shareholder of Candy Braz does not obviate the fact that they were filed and listed a substantial amount of taxes owed the State of Illinois. Sections 501, 521(1), and 1111(a), Bankruptcy Rule 3003(b)(1) and the bar date notice sent to the creditors on June 27, 1985, did not require the Department to file a proof of claim. The Trustee's mere assertion that the filed schedules were null and void does not obviate these facts, nor does Bankruptcy Rule 9001(5) mandate the result argued by the Trustee.

Only certain claimants are required to file proofs of claim or interest in a chapter 11 reorganization case.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Section 1111(a) provides that "[a] proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1)*379 or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated." 11 U.S.C. § 1111(a). The legislative history of this section states: This section dispenses with the need for every creditor and equity security holder to file a proof of claim or interest in a reorganization case. Usually the debtor's schedules are accurate enough that they will suffice to determine the claims or interests allowable in the case. Thus, the section specifies that any claim or interest included on the debtor's schedules is deemed filed under section 501. This does not apply to claims or interests that are scheduled as disputed, contingent, or unliquidated.

HR Rep. No. 95-595, 95th Cong., 1st Sess. 405 (1977); S Rep. No. 95-989, 95th Cong., 2d Sess. 117 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5903, 6361.

Bankruptcy Rule 3003(b)(1) which applies to chapter 11 cases, in turn, provides in relevant part: The schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated. It shall not be necessary for a creditor or equity security holder to file a proof of claim or interest except as provided in subdivision (c)(2) of this rule.

Fed.R.Bankr.P. 3003(b)(1).

Bankruptcy Rule 3003(c)(2) provides that any creditor whose claim is not scheduled or is scheduled as disputed, contingent or unliquidated must timely file a proof of claim in order to be treated as a creditor for purposes of voting and distribution. Because the debt owed by Candy Braz in the only schedules that were filed was not listed as disputed, contingent or unliquidated, the Department was not required to file a proof of claim under section 1111(a). This result obtains even though the schedules may have been inaccurate or incomplete and Saleh failed to comply with the June 27, 1985 Order and file properly executed, completed and accurate schedules.

[5]   The Trustee takes the position that the

Department's claim should not be allowed pursuant to section 1111(a) because the Department has failed to prove that it actually relied on the schedules which listed its $177,000.00 claim. The Court finds this argument disingenuous. Section 1111(a) does not require a creditor to rely on the filed schedules in order for its claim to be deemed allowed. As the legislative history of section 1111(a) clearly indicates, it was implemented so as to "dispense with the need for every creditor and equity security holder to file a proof of claim or interest in a reorganization case."

It therefore follows that if the Department was not required to file a proof of claim, the filing of one after the bar date under the notice given could not be considered untimely. Moreover, the Court finds that because the Department's claim is deemed allowed pursuant to section 1111(a), the subsequent filed claim as amended should also be allowed. This Court is a court of equity. 28 U.S.C. § 1481. It would be inequitable to find that the Department's claim was untimely especially in light of the fact that Candy Braz listed a larger undisputed tax debt owed than that ultimately claimed by the Department. Bankruptcy Rule 3003(c)(4) provides that a claim filed in a chapter 11 case supercedes any scheduling of a claim deemed allowed under section 1111(a) pursuant to section 521(1).

Moreover, and of critical importance, the Court finds that the notice of the bar date sent to the creditors is itself convoluted and did not require all claimants to file claims before the bar date. Further, the notice did not state that the schedules were unreliable and that therefore all claimants were required to file proofs of claim. The notice of the bar date provides in relevant part: Holders of proofs of claims or interests which are not timely filed pursuant to this notice and the court's order shall not be eligible to either vote on a chapter 11 plan or receive any distribution thereunder, on account of such claims or interests, unless such claim or interest is *380 otherwise allowed under applicable law.(emphasis added).

The emphasized portion of the notice conveys the impression that under the law some claims would be allowed without the filing of a proof of claim or interest. This is exactly the result contemplated by section 1111(a). The notice used in this case would lead claimants whose claims were not scheduled as disputed, contingent, or unliquidated to reasonably

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

conclude that they need not file proofs of claim as their claims would be deemed allowed under section 1111(a). The notice given in the instant case unlike other notices given in other cases, does not absolutely require *all* claimants to file prior to the bar date. The notice is therefore unclear and not absolute.

[6] Even if the Department was required to file a proof of claim, had the notice so required, Bankruptcy Rule 3003(c) does not purport to be a statute of limitations which leaves a court with no discretion to allow late filed claims. *In re American Skate Corp.,* 39 B.R. 953, 954 (Bankr.D.N.H.1984). Bankruptcy Rule 3003(c) provides that the court "for cause shown may extend the time within which proofs of claim or interest may be filed." Fed.R.Bankr.P. 3003(c); *see also In re Lester Witte & Co.,* 52 B.R. 436, 437 (Bankr.N.D.Ill.1984). The *Witte* court enumerated several factors to consider in determining whether to allow late filings: 1) the debtor's knowledge of the claim; 2) the lack of prejudice to the debtor or the estate; 3) an early stage in the bankruptcy proceedings; and 4) the good faith of the creditor. 52 B.R. 436 at 438.

In the case at bar, Candy Braz knew of and admitted the claim as shown by the scheduling of the debt on the schedules. The defunct corporate debtor and its estate are not prejudiced by the allowance of the Department's claim which has not been alleged to have been filed in bad faith. Therefore, the Court finds that even if the Department was required to file a proof of claim, at least three of the four factors in *Witte* are present and Bankruptcy Rule 3003(c) would permit allowance of the instant amended claim based on the facts and circumstances of this case.

The Court finds that disallowance of the claim, on the other hand, under these facts and circumstances, would certainly prejudice the Department even though its amended claim was filed approximately sixteen months after its original claim. The other cases cited by the Trustee are distinguishable from the facts of the case at bar and are not controlling on the equitable result mandated by the applicable sections of the Code and Bankruptcy Rules.

[7] The Trustee further claims that the Department's amended claim filed after the bar date constitutes a new claim and thus should not be allowed. The Court notes that the schedules, in listing the $177,000.00 tax, did not specifically list the type of tax owed to the Department. Both claims filed by the Department

related to Candy Braz's liability for unpaid cigarette taxes for the same fiscal period. Only the amounts are substantially different.

[8][9][10] The decision to allow an amendment is within the sound discretion of the court. *In re Lanman,* 24 B.R. 741, 743 (Bankr.N.D.Ill.1982). An amendment may be filed after the bar date if it amends a timely claim and does not introduce a distinctly new and different claim. *In re Ebeling,* 123 F.2d 520, 521 (7th Cir.1941); *In re Rothert,* 61 F.2d 1, 2 (7th Cir.1932). Amendments to proofs of claim are permitted to cure the defects in a claim already filed, to describe a claim with greater particularity or to plead a new theory of recovery on the facts of the original claim. *In re International Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir.1985); *In re Pyramid Bldg. Co.,* 87 B.R. 38, 40 (Bankr.N.D.Ohio 1988).

[11] Amendments to claims are closely scrutinized to ensure that the amendment is genuine rather than an assertion of an entirely new claim. *In re AM International, Inc.* 67 B.R. 79, 81 (N.D.Ill.1986); *In re International Horizons, Inc.,* 751 F.2d at 1216;*In re Mitchell,* 82 B.R. 583, 585 (W.D.Ok.1988); *In re Computer Devices, Inc.,* 51 B.R. 471, 477 (Bankr.D.Mass.1985); *381In re V-M Corp.,* 23 B.R. 952, 954 (Bankr.W.D.Mich.1982). The court is guided by principles of equity to ensure that "fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).

The Court notes that there are two lines of analysis in determining whether to allow an amendment to a proof of claim. Under the traditional analysis the test is whether the amended claim arose out of the same transaction or occurrence set forth in the original timely filed claim. *See, In re AM International, Inc.* 67 B.R. at 82;*In re Hunt,* 59 B.R. 718 (Bankr.D.Me.1986); and *In re Overly-Hautz Co.,* 57 B.R. 932, 936 (Bankr.N.D.Ohio 1986).

Applying the traditional approach to the case at bar, it is quite clear that the $151,492.20 amended claim is for the same type of taxes for the same fiscal period listed on the original claim for $3,510.60. Both are based on unpaid cigarette stamp taxes. The substantial difference in the amounts claimed are attributable to Candy Braz's NSF checks and require close scrutiny under *In re AM International, Inc.,* 67

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

B.R. at 82. That case, however, did not involve the bar date notice problems present in this case.

The second approach to determining whether an amendment to a claim should be allowed was espoused in *In re Miss Glamour Coat Co.,* 80-2 U.S.T.C. ¶ 9737 (S.D.N.Y.1980), where the court set forth a "balancing of the equities test." The following factors must be considered: (1) whether the debtor and the creditors relied on the earlier proofs of claim or had reason to know that subsequent proofs of claim would be filed; (2) whether other creditors would receive a windfall if the court refused to allow the amendment; (3) whether the creditor intentionally or negligently delayed in filing the proof of claim; (4) the justification for the failure of the creditor to seek an extension of the bar date; and (5) whether equity requires consideration of other facts and circumstances. *See also In re Pyramid Bldg. Co.,* 87 B.R. at 40.

In applying the *Glamour Coat* balancing test, the Court concludes the equities favor allowance of the amended claim. There is no showing that either Candy Braz or its creditors relied on the Department's original proof of claim. Section 1111(a) would deem the Department's claim allowed in the amount of $177,000.00 had no claim been filed at all. Disallowance of either claim of the Department would result in some benefit to other creditors. There is no clear showing of whether the Department's delays in filing both the original and amended claims was either intentional or the result of negligence. On the contrary, under the form of the bar date notice, the Department was never required to file any claim nor seek an extension of the bar date. The Court concludes that it would be inequitable to disallow the Department's claims filed in lesser amounts than that scheduled by Candy Braz. The result argued by the Trustee would constitute an abuse of the discretion afforded the court. The cases cited by the Trustee on this particular point are all distinguishable. Unlike the instant case, many of the cases involved amendments to claims by which the claimant was seeking to recover other types of taxes for different fiscal periods than those referenced in the original claim.

Accordingly, the Court finds that the Department's amended claim involves the same type of unpaid tax claimed due for the same fiscal period as the original claim and does not constitute a new claim. The amended claim effectively increases the amount sought but does not introduce a distinctly new and different claim for a different fiscal period or for a different tax. Thus, the Trustee's argument that the amended claim amounts to a new claim is without merit.

V. CONCLUSION

For the foregoing reasons, the Court hereby denies the Trustee's motion for summary judgment and overrules the objection to the allowance of the Department's claim. The Court does hereby *382 grant the Department's cross motion for summary judgment and allows the claim in the amount of $151,492.20 as a priority claim.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Bkrtcy.N.D.Ill.,1988.
In re Candy Braz, Inc.
98 B.R. 375

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(C) 2007 West Group
(Cite as: 45 F.2d 115)

▷

Circuit Court of Appeals, Second Circuit.

**In re G. L. MILLER & CO., Inc.**
**Appeal of INDEPENDENCE INDEMNITY CO.**
**No. 36.**

Nov. 10, 1930.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of G. L. Miller & Company, Incorporated. From an order denying its motion for leave to amend its proof of claim after expiration of the six months' period, the Independence Indemnity Company appeals.

Affirmed.

West Headnotes

**[1] Bankruptcy** 🔑2903
51k2903
(Formerly 51k336)

New cause of action cannot be substituted by amendment of claim against bankrupt after expiration of six months' period (Bankr.Act § 57n as amended by Act May 27, 1926, § 13, 11 U.S.C.A. § 93(n) ).

**[2] Bankruptcy** 🔑2903
51k2903
(Formerly 51k336)

Claim against bankrupt for money had and recieved could not be amended after six months' period to include indebtedness base on indemnity agreement (Bankr. Act Sec. 57n as amended by Act May 27, 1926, Sec. 13, 11 USCA 93(n), The original claim, as filed in bankruptcy proceeding, was for recovery of money had and received for use of claimant or persons to whose rights claimant had been subrogated, without mention of obligation subsequently asserted in proposed amendment as upon express agreement of indemnity under which bankrupt agreed to indemnify claimant against expense or liability it might incur by issuing bonds or guaranties at bankrupt's request.

**Bankruptcy** 🔑2903
51k2903
(Formerly 51k336)

Claim against bankrupt for money had and received

could not be amended after six months' period to include indebtedness based on indemnity agreement (Bankr.Act § 57n as amended by Act May 27, 1926, § 13, 11 U.S.C.A. § 93(n) ).

*115 R. A. Mansfield Hobbs, of New York City (Samuel Lewis, of New York City, of counsel), for appellant.

Goldmark, Bennitt & Colin, of New York City (Godfrey Goldmark, of New York City, of counsel), for appellee.

The bankrupt, G. L. Miller & Co., Inc., was engaged in the business of brokers, underwriting, buying, and selling bonds secured by mortgage on real estate. On September 27, 1926, it was adjudicated bankrupt. Within six months thereafter, the appellant filed with the referee in bankruptcy a reclamation petition, seeking to trace into the hands of the trustee in bankruptcy certain funds alleged to belong to the appellant or to the owners of bonds of which it had guaranteed payment. This was filed pursuant to a prior order of the District Court that all reclamation petitions should, if dismissed as reclamation claims, be deemed to stand as general claims, subject to the right of the trustee to contest the same. Subsequently, in June, 1929, the appellant's petition was dismissed as a reclamation claim, and the trustee moved to expunge it as a general claim. Thereupon the appellant moved to amend. Upon the hearing of these two motions, the referee allowed the original claim in the sum of $697.50 and denied leave to amend. The District Court affirmed the order of the referee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

The appellant's original petition sought reclamation of sums of money paid to the bankrupt by 'mortgagors, bondholders or other persons' for specific purposes. It charged that such sums had come into the hands of the trustee in bankruptcy and were impressed with a trust to be used for the purposes specified. There were three classes of items: (1) Sums totaling $697.50 paid to the bankrupt for the purpose of paying 'premiums on bonds issued by the petitioner at the request of said G. L. Miller & Company,' guaranteeing payment of principal and interest of certain first mortgage bonds; (2) a sum of $325 paid to the bankrupt for the purpose of paying interest due August 15, 1926, on 'Castle Hill' bonds owned by appellant; (3) sums in an amount unascertainable without an audit of the bankrupt's books, paid to the bankrupt for the purpose of paying principal or interest of mortgage bonds guaranteed by appellant. The relief asked was payment to appellant of items 1 and 2, and, as to item 3, payment to appellant or to the bondholders to whom

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group
(Cite as: 45 F.2d 115)

appellant might be liable under its guaranty. Thus it is apparent that appellant sought as owner to trace the first two items and sought as surety of certain mortgagors to trace money belonging to the guaranteed bondholders. Hence the petition, after dismissal as a reclamation claim, stood as a general claim asserting, with respect to items 1 and 2, an indebtedness to the appellant based on the bankrupt's failure to pay over money received for appellant's account, and, with respect to item 3, and indebtedness to bondholders based on the bankrupt's failure to pay over money received for their account.

By stipulation, the general claim as to premiums (item 1) was allowed in the sum *116 claimed $697.50, and was disallowed as to 'Castle Hill' interest, item 2. There was no stipulation with respect to the disposition of the general claim as to indebtedness to guaranteed bondholders, item 3. Under section 57i of the Bankruptcy Act (11 USCA § 93(i), if such bondholders failed to prove their claims, the appellant as guarantor of the bonds was entitled to make proof in the names of the bondholders. The original petition set forth neither their names nor the amounts due them. Whether such facts could be added by amendment after expiration of the statutory six months for proving claims, we need not now consider, because the proposed amendment, refusal of which is the sole error assigned, contains no reference to any such indebtedness; nor is any contention presented that appellant should have been permitted to make proof in the right of any guaranteed bondholder.

The indebtedness asserted in the proposed amendment is based upon a written agreement made in May, 1925, by which the bankrupt agreed to indemnify appellant against expense or liability it might incur by issuing bonds or guaranties at the request of the bankrupt. It is then alleged that appellant thereafter, at the bankrupt's request, guaranteed payment of principal and interest of various mortgage bonds sold through the bankrupt, and that certain mortgagors defaulted, and appellant had been obliged to make good their defaults to the extent of several hundred thousand dollars, the details of such defaults and of appellant's payments under its guaranties being set out in extenso.

[1] It is clear that this is an entirely different cause of action from that alleged in the original claim. The obligation there asserted was for money had and received by the bankrupt for the use of appellant or of persons to whose rights appellant was subrogated. The obligation now asserted is upon an express agreement of indemnity of which there was no mention in the original claim. It is true that the original claim alleged that appellant had guaranteed first mortgage bonds underwritten and sold by the bankrupt, but those bonds were made by third persons, the mortgagors, so there was nothing to indicate that the

bankrupt owed appellant any duty to indemnify it as surety. In the paragraph relating to sums received by the bankrupt for the purpose of paying premiums (item 1 above), the bonds are described as 'issued by the petitioner (appellant) at the request of said' bankrupt. This again implies no duty of indemnification, since the bankrupt was neither the principal nor a cosurety on the guaranteed obligation. Hence the question presented is whether there may be substituted by amendment after the expiration of the statutory six months a wholly new and different cause of action of which no intimation whatever was given in the original claim.

[2] It is urged by appellant that the trend of modern decisions is to allow great liberality in the amendment of claims in bankruptcy. So it is; but it is to be noted that the authorities cited as indicating this liberal tendency deal with situations which fall short of that here presented. They permit amendments to correct defects of form, or to supply greater particularity in the allegations of fact from which the claim arises, or to make a formal proof of claim based upon facts which, within the statutory period, had already been brought to the notice of the trustee by some informal writing or some pleading in the bankruptcy proceedings. See Globe Indemnity Co. v. Keeble, 20 F. (2d) 84 (C.C.A. 4); In re Fant, 21 F.(2d) 182 (D.C.W.D.S.C.); In re Atlantic Gulf & Pac. S.S. Corp., 26 F.(2d) 751 (D.C. Md.); In re Kardos, 17 F.(2d) 706, 708 (C.C.A. 2); In re Kessler, 184 F. 51 (C.C.A. 2); Scottsville Nat. Bank v. Gilmer, 37 F.(2d) 227 (C.C.A. 4). It is quite another matter to use an 'amendment' as a device for filing after the statutory period a claim based upon a cause of action of which no notice whatever had been given the trustee by anything previously filed. The distinction has been recognized by high authority. In Hutchinson v. Otis, 190 U.S. 552, 555, 23 S.Ct. 778, 47 L.Ed. 1179, where it was contended that no amendment allowable after the prescribed period, attention was called to the fact that 'the claim upon which the original proof was made is the same as that ultimately proved, ' and the analogy was noted to the principle which permits an amendment setting up the same cause of action after the statute of limitations has run, when the original declaration was bad. See, also, In re G. L. Miller & Co., 35 F. (2d) 966 (D.C.S.D.N.Y.), affirmed (C.C.A.) 35 F.(2d) 968; Remington, Bankruptcy (3d Ed.) Sec. 893; Collier, Bankruptcy (13th Ed.) p. 1141. If the limitation imposed by section 57n, as amended by Act May 27, 1926, Sec. 13 (11 USCA § 93(n), is to be given any reasonable meaning, we think it must be true that the right to amend can go no further than to permit the bringing forward and making effective of that which in some shape was asserted *117 in the original claim. In re Kardos, supra, lays down no different rule, for the court there said that 'the original proofs are loosely drawn, and might be read as demands against both estates.' In the case at bar

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group
(Cite as: 45 F.2d 115)

we can find nothing in the original claim to serve as the basis for the proposed amendment. No facts were alleged and no indebtedness asserted which would give the trustee in bankruptcy notice of the existence of any indemnity obligation, either by law or by express agreement. Consequently the proposed amendment was properly refused.

Order affirmed.

45 F.2d 115

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

96 B.R. 33                                                                Page 1
96 B.R. 33
(Cite as: 96 B.R. 33)

▷In re Hanscom Retail Foods, Inc.
Bkrtcy.E.D.Pa.,1988.

United States Bankruptcy Court,E.D. Pennsylvania.
In re HANSCOM RETAIL FOODS, INC. t/a
Hanscom Bakery, Debtor.
**Bankruptcy No. 84-01871G.**

March 30, 1988.

Official committee of unsecured creditors moved to
expunge proof of claim filed by the IRS after the bar
date. The Bankruptcy Court, Bruce I. Fox, J., held
that IRS would be allowed to amend timely filed
proof of claim, in order to assert claim for same type
of taxes raised by earlier proof.

Motion denied.
West Headnotes
[1] Bankruptcy 51 ☜2903

51 Bankruptcy
    51VII Claims
        51VII(D) Proof; Filing
            51k2903 k. Amendment or Withdrawal.
Most Cited Cases
Untimely proof of claim may be allowed as
amendment to earlier filing if and only if it is not
"new claim." Rules Bankr.Proc.Rule 3002(c), 11
U.S.C.A.

[2] Bankruptcy 51 ☜2903

51 Bankruptcy
    51VII Claims
        51VII(D) Proof; Filing
            51k2903 k. Amendment or Withdrawal.
Most Cited Cases
Untimely proof of claim may be allowed as
amendment to earlier filing, even though it is for a
larger sum than that previously demanded. Rules
Bankr.Proc.Rule 3002(c), 11 U.S.C.A.

[3] Bankruptcy 51 ☜2903

51 Bankruptcy
    51VII Claims
        51VII(D) Proof; Filing

            51k2903 k. Amendment or Withdrawal.
Most Cited Cases
As general rule, IRS asserts "new claim," which is
not allowable as amendment to timely filed proof of
claim, whenever IRS seeks to recover new type of
tax. Rules Bankr.Proc.Rule 3002(c), 11 U.S.C.A.

[4] Bankruptcy 51 ☜2903

51 Bankruptcy
    51VII Claims
        51VII(D) Proof; Filing
            51k2903 k. Amendment or Withdrawal.
Most Cited Cases
As general rule, IRS may amend timely filed proof of
claim in order to assert claim for additional quarters
or years; such a claim is usually not considered a
"new claim." Rules Bankr.Proc.Rule 3002(c), 11
U.S.C.A.

[5] Bankruptcy 51 ☜2903

51 Bankruptcy
    51VII Claims
        51VII(D) Proof; Filing
            51k2903 k. Amendment or Withdrawal.
Most Cited Cases
In deciding whether to allow amendment to earlier
proof of claim, bankruptcy court applies same
standard, whether creditor is IRS or claimant in
general. Rules Bankr.Proc.Rule 3002(c), 11 U.S.C.A.

[6] Bankruptcy 51 ☜2903

51 Bankruptcy
    51VII Claims
        51VII(D) Proof; Filing
            51k2903 k. Amendment or Withdrawal.
Most Cited Cases
IRS would be allowed to amend timely filed proof of
claim, in order to assert claim for same type of taxes
raised by earlier proof, where amendment was sought
prior to confirmation of plan or distribution of
proceeds to creditors, and amendment concerned
taxes for which returns were first due postpetition.
Rules Bankr.Proc.Rule 3002(c), 11 U.S.C.A.

[7] Bankruptcy 51 ☜2903

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

96 B.R. 33
96 B.R. 33
(Cite as: 96 B.R. 33)

51 Bankruptcy
    51VII Claims
        51VII(D) Proof; Filing
            51k2903 k. Amendment or Withdrawal.
Most Cited Cases
Mere fact that amended proof of claim may be allowed does not constitute "prejudice," sufficient to preclude allowance of amendment. Rules Bankr.Proc.Rule 3002(c), 11 U.S.C.A.

[8] Bankruptcy 51 ☞2903

51 Bankruptcy
    51VII Claims
        51VII(D) Proof; Filing
            51k2903 k. Amendment or Withdrawal.
Most Cited Cases
IRS' failure to seek extension once it was made aware of claims bar date did not preclude it from later seeking to assert claim for additional quarters by way of amendment to earlier filing. Rules Bankr.Proc.Rule 3002(c), 11 U.S.C.A.

*33 Michael A. Bloom, Bryna L. Singer, Cohen, Shapiro, Polisher, Shiekman and Cohen, Gary M. Schildhorn, Adelman Lavine Gold & Levin, Philadelphia, Pa., for movant, official creditors' committee.
Kevin William Gibson, Philadelphia, Pa., for debtor, Hanscom Retail Foods, Inc. t/a Hanscom Bakery.
Michael J. Martineau, U.S. Dept. of Justice, Washington, D.C., for I.R.S.

MEMORANDUM
BRUCE I. FOX, Bankruptcy Judge:
The official committee of unsecured creditors has filed a motion to expunge a proof of claim filed by the Internal Revenue Service. The challenged proof of claim was filed on August 21, 1986 and both parties agree that the bar date for proofs was December 15, 1985. The committee argues *34 that the IRS proof is untimely and so must be stricken. It does not challenge the correctness of the amount claimed due. The IRS contends that this proof amends an earlier filed and timely proof of claim, so that it may be allowed.

I.

The parties offer the following factual record as uncontested.[FN1]

FN1. Neither party offered any evidence. This matter was "submitted on the briefs." I have accepted as true factual assertions made in the briefs if these assertions were uncontroverted.

The debtor filed a voluntary petition in bankruptcy under chapter 11 on June 7, 1984. Among its creditors was the IRS; the IRS filed a proof of claim on July 24, 1984 which sought priority status for a claim in the amount of $65,106.52. This claim was based upon the debtor's failure to pay all withholding and FICA taxes due for the first quarter of 1984 and all federal unemployment taxes due for the fourth quarter of 1983. The first amendment to this proof was filed on May 28, 1985. This claim, which was to "supersede all prior claims", increased the priority demand to $66,097.78 by adding a small claim for unpaid prepetition interest due on withholding and FICA taxes for the fourth quarter of 1983, and by increasing the amount of prepetition penalties sought.

Amendment number 2 was filed on February 25, 1986. Now IRS claimed that withholding and FICA taxes due for the last quarter of 1980 were unpaid. The total amount sought, $59,525.58, was less than that demanded in amendment number 1 because downward adjustments were made to the amounts sought for first quarter 1984 withholding and FICA taxes, as well as in prepetition penalties.

Finally, amendment number 3 was filed on August 21, 1986. Also superseding all prior claims, this proof seeks payment for withholding and FICA taxes due for the second quarter of 1984 and unemployment taxes due for the last quarter of 1984. The priority claim was increased to $113,752.75. To date there have been no further amendments.

On August 14, 1985, counsel to the debtor wrote to the bankruptcy clerk's office requesting that a bar date be set. The clerk then sent a notice stating that proofs of claim must be filed on or before December 15, 1985. There appears to be no dispute that IRS received a copy of the notice. Obviously, the second and third amended proofs of claim were filed after December 15, 1985. Not surprisingly, the creditor's committee objects only to the third amendment.

II.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Unique to chapters 9 and 11, Bankr.Rule 3003(c) establishes the notion of a claims bar date. Under the current nationwide bankruptcy rules, there is no set time within which creditors must file proofs of claim in cases under chapters 9 and 11 in contrast to cases under chapters 7, 12 and 13. *See* Bankr.Rule 3002(c).[FN2] Thus, Rule 3003(c)(3) provides:

> FN2. This was not always so. Interim Bankruptcy Rule 3001(b)(3), which was in effect in this district between October 1, 1979 and August 1, 1983, required that those creditors obligated to file a proof of claim in chapter 11 do so prior to approval of the disclosure statement, unless the court established a different bar date.

The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.
The bar date fixed applies only to those creditors who are obligated to file proofs of claim. *See* Bankr.Rule 3002(c)(2).[FN3]

> FN3. Although the parties do not expressly so state, for this dispute to have any meaning, I must assume that Rule 3003(c)(2) applies to the IRS.

In the matter *sub judice,* I have some doubt whether the procedure utilized for fixing a bar date, (i.e. communicating with the clerk of court) complies with Rule 3003(c)(3).
*See In re McGrew,* 60 B.R. 276, 278 (Bankr.W.D.Ark.1986) (the *court* must fix the date). However, as the IRS does not raise this issue, I shall consider any defect as waived and I shall assume a proper bar date of December 15, 1985.

*35 III.

The relevant inquiry is whether the last IRS proof of claim constitutes an amendment of its earlier, timely filed proofs of claim. If so, should the amendment be permitted? I reach the first part of this inquiry-whether the August 21, 1986 proof is an amendment-by the following syllogism:

In this circuit untimely proofs of claim are not allowed. *E.g. In re Pigott,* 684 F.2d 239 (3d Cir.1982); *In re Mellen Manufacturing Co.,* 287 F.2d 37 (3d Cir.)*cert. denied,* 366 U.S. 962, 81 S.Ct. 1922,

6 L.Ed.2d 1254 (1961); *In re Owens,* 67 B.R. 418 (Bankr.E.D.Pa.1986)*aff'd* 84 B.R. 361 (E.D.Pa.1988). To ameliorate the rigors of the bar date, while yet protecting the legitimate interests of all parties in the prompt administration of the estate, *see Hoos & Co. v. Dynamics Corp.,* 570 F.2d 433 (2d Cir.1978), courts have liberally allowed creditors to amend claims in order to correct omissions or modify information erroneously provided. *See Hutchinson v. Otis, Wilcox & Co.,* 190 U.S. 552, 23 S.Ct. 778, 47 L.Ed. 1179 (1903); *In re Anderson-Walker Industries, Inc.,* 798 F.2d 1285 (9th Cir.1986).

As I noted in *In re Ungar,* 70 B.R. 519, 521 (Bankr.E.D.Pa.1987):
Sometimes the rationale given for permitting claims to be amended is that bankruptcy courts are courts of equity. *In re Anderson-Walker Industries, Inc.,* 798 F.2d at 1287. Other times, the amendment of a claim has been likened to an amendment of a pleading. *See Fidelity and Deposit Co. v. Fitzgerald,* 272 F.2d 121, 129 n. 8, 130 n. 13 (10th Cir.1959), *cert. denied,* 362 U.S. 919, 80 S.Ct. 669, 4 L.Ed.2d 738 (1960); 3 Collier ¶ 57.11, at 194-195; 2 Remington §§ 746-752. Not only have amendments been liberally permitted, these amendments may occur after the bar date and relate back to the initial filing which was timely. *Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374 (9th Cir.1985); *Fidelity and Deposit Co. v. Fitzgerald.*

Since the August 1986 proof of claim was filed after the bar date, it may only be allowed if it is viewed as amending the earlier, timely filed proofs of claim.

[1] In principle, a subsequent filed proof of claim amends an earlier proof if it is not a "new claim." Conversely, if a "new claim" is being asserted subsequent to the bar date, an objection to its filing must be sustained. *See In re International Horizons, Inc.,* 751 F.2d 1213 (11th Cir.1985); *In re Black & Geddes,* 58 B.R. 547, 553 (S.D.N.Y.1983). There is some difficulty in applying this principle to IRS proofs of claim.

[2] Clearly, the fact that a subsequent proof of claim is for a larger sum than the earlier proof does not prevent the latter from amending the former. *Fidelity and Deposit Co. v. Fitzgerald,* 272 F.2d 121, 131 (10th Cir.1959). ("An amendment changing the amount of the claim does not make it a new claim and may be made after the six month period [under § 57n] has expired.") (footnote omitted); *see Menick v. Hoffman,* 205 F.2d 365 (9th Cir.1953); *Continental*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Motors Corp. v. Morris,* 169 F.2d 315 (10th Cir.1948); *Industrial Commissioner v. Schneider,* 162 F.2d 847 (2d Cir.1947); *In re Matter of Gardinier, Inc.* 68 B.R. 352 (Bankr.M.D.Fla.1980). *See also In re Kellett Aircraft Corp.,* 173 F.2d 689 (3d Cir.1949) (creditor permitted to file an unsecured claim after the bar date because its claim for specific performance was denied). However, the IRS often does not simply increase the amount claimed; it may add different types of taxes or different tax years in its subsequent proofs. Courts have struggled in deciding whether such additions constitute "new claims" or merely amend old claims.

[3][4] As best I can determine, a distinction has been drawn. An attempt by IRS to add a new type of tax after the bar date is generally disallowed. *See In re International Horizons, Inc* (attempt to add withholding and unemployment taxes to corporate income tax); *In re Hunt,* 59 B.R. 718 (Bankr.D.Me.1986) (attempt to add employment to income taxes); *In re Overly-Hautz Co.,* 57 B.R. 932 (Bankr.N.D.Ohio 1986)*aff'd.*81 B.R. 434 (N.D. Ohio 1987) (excise taxes differed from corporate withholding*36 and FICA taxes). However, an attempt by IRS to add additional quarters, (such as here), or even additional years is usually not considered a new claim. *See Menick v. Hoffman,* 205 F.2d 365 (9th Cir.1953); *United States v. Roth,* 164 F.2d 575 (2d Cir.1948); *Industrial Commissioners v. Schneider,* 162 F.2d 847 (2d Cir.1947); *In re Diversified Brokers Co.,* 355 F.Supp. 76 (E.D.Mo.)*reh. denied*358 F.Supp. 889,*aff'd*487 F.2d 355 (8th Cir.1973); *In re Parchem,* 166 F.Supp. 724 (D.Minn.1958); *In re Simms,* 40 B.R. 186 (Bankr.N.D.Ga.1984); *Matter of Saxe,* 14 B.R. 161 (Bankr.W.D.N.Y.1981).[FN4] Since the purpose of a proof of claim is for the creditor to put the estate on notice of its demand against the estate and its intention to hold the estate liable, *In re Thompson,* 227 F. 981 (3d Cir.1915), this purpose is met so long as the nature of the claim (i.e. the type of tax) is clearly and timely announced. Although important, the period for which taxes are claimed due may be later modified without seriously distorting the meaning of a proof of claim.

> FN4. While the time periods may have changed since § 57(n) of the former Bankruptcy Act was first enacted, the concepts of bar dates and amendments have not changed. Thus, decisions interpreting and applying § 57(n) are relevant to

understanding and applying Bankr.Rules 3002(c) and 3003(c)(3). *In re Stern,* 70 B.R. 472 (Bankr.E.D.Pa.1987); *In re W.T. Grant Co.,* 53 B.R. 417, 420 (Bankr.S.D.N.Y.1985).

[5] Having concluded that IRS's August 1986 proof is not a new claim, I must address the second question-should this amendment be permitted? On this issue, I reject the IRS implicit suggestion that a more liberal standard should be applied when deciding whether to allow tax claim amendments as opposed to other creditor amendments. "The fact that the claim is a tax claim or other public or governmental claim is immaterial, as such claims are no longer specially annointed...." 2 Henderson, *Remington on Bankruptcy* ¶ 893-95, at 357 (1956).

As mentioned above, amendments to proofs of claim are likened to amendments to pleadings. Such amendments will be granted, in the discretion of the court, unless:
> the amendment will result in undue prejudice to the other party, is unduly delayed, is offered in bad faith or for a dilatory purpose or that the party has had sufficient opportunity to state a claim and has failed.

3 J. Moore *Federal Practice* ¶ 15.04[4] at 15-69-15-75 (2d ed. 1987). *Accord J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610 (3d Cir.1987); *Adams v. Gould, Inc.,* 739 F.2d 858, 863 (3d Cir.1984), *cert. denied*469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).[FN5]

> FN5. The IRS urges the application of the five factors mentioned in *In re Miss Glamour Coat Co.,* 80-2 U.S.T.C. ¶ 9737, 85431 (S.D.N.Y. Oct. 8, 1980). These factors seem subsumed by the more general themes such as prejudice, delay and bad faith.

[6][7][8] In the matter at bench, prejudice, if any, is minimal because there has been no plan confirmation under 11 U.S.C. § 1129 and no plan distribution to creditors under 11 U.S.C. § 1141.[FN6] The delay in filing its proof of claim is attributable, according to the IRS, to the debtor's delay, postpetition, in filing its tax returns for the last three quarters of 1984 (two quarters of which involved postpetition taxes). (The creditor's committee does not challenge this assertion). Moreover, unlike cases such as *In re*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

96 B.R. 33                                                                    Page 5
96 B.R. 33
(Cite as: 96 B.R. 33)

*Owens,* the IRS was not free to seek an extension of
the bar date by virtue of Bankr.Rule 3002(c)(1). The
bar date here was set by Bankr.Rule 3003(c)(3), and
the request was made to set the bar date by letter to
the clerk which was not sent to the IRS and to which
the IRS had no opportunity to respond. While it
would have been far better practice for the IRS to
seek an extension once it was made aware of the bar
date, I cannot conclude that this failure, by itself,
should deny it the opportunity to amend.

> FN6. Prejudice does not arise because a
> party may not prevail on the merits in
> underlying litigation. *Matter of Williamson.*
> 804 F.2d 1355, 1358 (5th Cir.1986). Thus,
> no prejudice arises here from the fact that
> the proof of claim may be allowed.

*37 In sum, where the amendment concerns
postpetition taxes (or taxes for which returns were
first due postpetition), *compare In re Owens*
(prepetition taxes with a prepetition notice of tax
deficiencies), was made prior to confirmation of a
plan or distribution of payments to creditors,
*compare In re Hunt* (discharge already granted); *In re
Sapienza, 27 B.R. 526 (Bankr.W.D.N.Y.1983)*
(distributions were made), and concerns the same
type of taxes raised by a timely proof, it is
appropriate to permit IRS to amend its proof of
claim. *See In re Simms.*

Therefore, the committee's motion will be denied. An
appropriate order will be entered.

Bkrtcy.E.D.Pa.,1988.
In re Hanscom Retail Foods, Inc.
96 B.R. 33

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(C) 2007 West Group

147 L.Ed.2d 1, 68 USLW 4441, 43 Collier Bankr.Cas.2d 861, 36 Bankr.Ct.Dec. 38,
Bankr. L. Rep. P 78,183, 00 Cal. Daily Op. Serv. 4153,
2000 Daily Journal D.A.R. 5563, 2000 CJ C.A.R. 2982,
13 Fla. L. Weekly Fed. S 359, 17 Colo. Bankr. Ct. Rep. 32,
4 Cal. Bankr. Ct. Rep. 26
(Cite as: 530 U.S. 1, 120 S.Ct. 1942)

⊳

Supreme Court of the United States

HARTFORD UNDERWRITERS INSURANCE
COMPANY, Petitioner,
v.
UNION PLANTERS BANK, N. A.
No. 99-409.

Argued March 20, 2000.

Decided May 30, 2000.

After case was converted from Chapter 11, Chapter 7 debtor's workers' compensation insurer commenced adversary proceeding against secured creditor seeking payment of unpaid postpetition premiums. The Bankruptcy Court, David P. McDonald, J., ordered surcharge of creditor's collateral to secure payment of premiums. Creditor appealed. The United States District Court for the Eastern District of Missouri, Charles A. Shaw, J., affirmed, and creditor appealed. On rehearing en banc, the Court of Appeals for the Eighth Circuit, Bowman, Chief Judge, 177 F.3d 719, reversed. Certiorari was granted. The Supreme Court, Justice Scalia, held that the Bankruptcy Code does not provide an administrative claimant an independent right to seek payment of its claim from property encumbered by a secured creditor's lien.

Affirmed.

West Headnotes

[1] Bankruptcy ⚷2871
51k2871

[1] Bankruptcy ⚷2875
51k2875

Under the Bankruptcy Code, the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after commencement of the case, are treated as administrative expenses, which are, as a rule, entitled to priority over prepetition unsecured claims. Bankr.Code, 11 U.S.C.A. § § 503(b), 506, 725, 726, 1129(b)(2)(A).

[2] Bankruptcy ⚷2965

51k2965

Administrative expenses generally do not have priority over secured claims. Bankr.Code, 11 U.S.C.A. § § 503(b), 506, 725, 726, 1129(b)(2)(A).

[3] Bankruptcy ⚷2854(1)
51k2854(1)

Section of the Bankruptcy Code allowing a trustee to recover from collateral the reasonable, necessary costs and expenses of preserving or disposing of the collateral constitutes an important exception to the rule that secured claims are superior to administrative claims. Bankr.Code, 11 U.S.C.A. § § 503(b), 506(c).

[4] Bankruptcy ⚷3770
51k3770

Issue that Court of Appeals declined to address because it had not been raised until the hearing en banc would not be addressed by the Supreme Court.

[5] Statutes ⚷188
361k188

Congress says in a statute what it means and means in a statute what it says there.

[6] Statutes ⚷188
361k188

When a statute's language is plain, the sole function of the courts, at least where the disposition required by the text is not absurd, is to enforce it according to its terms.

[7] Bankruptcy ⚷2854(8)
51k2854(8)

Only a trustee and a debtor-in-possession, who is expressly given the rights and powers of a trustee, are empowered to invoke the section of the Bankruptcy Code allowing a trustee to recover from collateral the reasonable, necessary costs and expenses of preserving or disposing of the collateral; administrative claimants have no independent right to seek surcharge of creditors' collateral. Bankr.Code, 11 U.S.C.A. § § 506(c), 1107.

[8] Action ⚷34
13k34

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group
147 L.Ed.2d 1, 68 USLW 4441, 43 Collier Bankr.Cas.2d 861, 36 Bankr.Ct.Dec. 38,
Bankr. L. Rep. P 78,183, 00 Cal. Daily Op. Serv. 4153,
2000 Daily Journal D.A.R. 5563, 2000 CJ C.A.R. 2982,
13 Fla. L. Weekly Fed. S 359, 17 Colo. Bankr. Ct. Rep. 32,
4 Cal. Bankr. Ct. Rep. 26
(Cite as: 530 U.S. 1, 120 S.Ct. 1942)

Where a statute names the parties granted the right to invoke its provisions, such parties only may act.

**[9] Bankruptcy** ⬦2922
51k2922

Under the Bankruptcy Code, a claim is allowed unless "a party in interest" objects. Bankr.Code, 11 U.S.C.A. § 502(a).

**[10] Bankruptcy** ⬦2895.1
51k2895.1
Under the Bankruptcy Code, "an entity" may file a request for payment of an administrative expense. Bankr.Code, 11 U.S.C.A. § 503(b)(4).

**[11] Bankruptcy** ⬦2205
51k2205

General provision of a right to be heard, as set forth in section of the Bankruptcy Code providing that a "party in interest" may raise and may appear and be heard on any issue in a case under Chapter 11, does not broadly allow a creditor to pursue substantive remedies that other Code provisions make available only to other specific parties. Bankr.Code, 11 U.S.C.A. § 1109(b).

**[12] Action** ⬦34
13k34

Where the most natural reading of a statute was that it extended only to a particular party, the burden of persuading the court that the statute must be read to allow its use by other parties was exceptionally heavy.

**[13] Bankruptcy** ⬦2021.1
51k2021.1

While pre-Code practice informs our understanding of the language of the Bankruptcy Code, it cannot overcome that language. Bankr.Code, 11 U.S.C.A. § 101 et seq.

**[14] Bankruptcy** ⬦2021.1
51k2021.1

Pre-Code practice is a tool of construction, not an extratextual supplement to the Bankruptcy Code. Bankr.Code, 11 U.S.C.A. § 101 et seq.

**[15] Bankruptcy** ⬦2021.1

51k2021.1

Pre-Code practice, as a tool of construction, has been applied to the construction of Bankruptcy Code provisions which were "subject to interpretation" or contained "ambiguity in the text." Bankr.Code, 11 U.S.C.A. § 101 et seq.

**[16] Bankruptcy** ⬦2021.1
51k2021.1

Where the meaning of the Bankruptcy Code's text is itself clear, its operation is unimpeded by contrary prior practice. Bankr.Code, 11 U.S.C.A. § 101 et seq.

**[17] Bankruptcy** ⬦2854(1)
51k2854(1)

**[17] Bankruptcy** ⬦3009
51k3009

Trustee is obliged to seek recovery, under section of the Bankruptcy Code allowing trustee to recover from collateral the reasonable, necessary costs and expenses of preserving or disposing of the collateral, whenever his or her fiduciary duties so require. Bankr.Code, 11 U.S.C.A. § 506(c).

**[18] Bankruptcy** ⬦2021.1
51k2021.1

Courts do not sit to assess the relative merits of different approaches to various bankruptcy problems; rather, achieving a better policy outcome is a task for Congress, not the courts.

**\*\*1944 \*1 Syllabus [FN\*]**

FN\* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

During attempted reorganization under Chapter 11 of the Bankruptcy Code, debtor Hen House Interstate, Inc., obtained workers' compensation insurance from petitioner Hartford Underwriters. Although Hen House repeatedly failed to make the monthly premium payments required by the policy, Hartford continued to provide insurance.

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group                                                          Page 64
147 L.Ed.2d 1, 68 USLW 4441, 43 Collier Bankr.Cas.2d 861, 36 Bankr.Ct.Dec. 38,
Bankr. L. Rep. P 78,183, 00 Cal. Daily Op. Serv. 4153,
2000 Daily Journal D.A.R. 5563, 2000 CJ C.A.R. 2982,
13 Fla. L. Weekly Fed. S 359, 17 Colo. Bankr. Ct. Rep. 32,
4 Cal. Bankr. Ct. Rep. 26
(Cite as: 530 U.S. 1, 120 S.Ct. 1942)

The reorganization ultimately failed, and the court converted the case to a Chapter 7 liquidation proceeding and appointed a trustee. Learning of the bankruptcy proceedings after the conversion, and recognizing that the estate lacked unencumbered funds to pay the premiums owed, Hartford attempted to charge the premiums to respondent bank, a secured creditor, pursuant to 11 U.S.C. § 506(c). The Bankruptcy Court ruled for Hartford, and the District Court affirmed, but the en banc Eighth Circuit reversed, concluding that § 506(c) could not be invoked by an administrative claimant.

*Held:* Section 506(c) does not provide an administrative claimant of a bankruptcy estate an independent right to seek payment of its claim from property encumbered by a secured creditor's lien. Pp. 1946-1951.

(a) As an administrative claimant, petitioner is not a proper party to seek recovery under § 506(c), which provides: "The trustee may recover from property securing an allowed secured claim the ... costs *2 and expenses of preserving, or disposing of, such property ...." The statute appears quite plain in specifying who may use § 506(c)--"[t]he trustee." Although the statutory text does not actually say that persons other than the trustee may not seek recovery under § **1945 506(c), several contextual features support that conclusion. First, a situation in which a statute authorizes specific action and designates a particular party empowered to take it is surely among the least appropriate in which to presume nonexclusivity. Second, the fact that the sole party named--the trustee--has a unique role in bankruptcy proceedings makes it entirely plausible that Congress would provide a power to him and not to others. Further, had Congress intended the provision to be broadly available, it could simply have said so, as it has in describing the parties who could act under other sections of the Code. The Court rejects as unpersuasive petitioner's arguments from § 506(c)'s text: that the use in other Code provisions of "only" or other expressly restrictive language in specifying the parties at issue means that no party in interest is excluded from § 506(c), and that the right of a nontrustee to recover under § 506(c) is evidenced by § 1109. Pp. 1946-1948.

(b) The Court also rejects arguments based on pre-Code practice and policy considerations that petitioner advances in support of its assertion that § 506(c) is available to parties other than the trustee. It is questionable whether the pre-Code precedents relied on by petitioner establish a bankruptcy practice sufficiently widespread and well

recognized to justify the conclusion of implicit adoption by Congress in enacting the Code. In any event, where, as here, the meaning of the Code's text is itself clear, its operation is unimpeded by contrary prior practice. Also unavailing is petitioner's argument that its reading is necessary as a matter of policy, since in some cases the trustee may lack an incentive to pursue payment. It is far from clear that the relevant policy implications favor petitioner's position, and, in any event, achieving a better policy outcome--if what petitioner urges is that--is a task for Congress, not the courts. Pp. 1948-1951.

177 F.3d 719, affirmed.

SCALIA, J., delivered the opinion for a unanimous Court.

G. Eric Brunstad, Jr., Hartford, CT, for petitioner.

*3 Robert H. Brownlee, St. Louis, MO, for respondent.

Justice SCALIA delivered the opinion of the Court.

In this case, we consider whether 11 U.S.C. § 506(c) allows an administrative claimant of a bankruptcy estate to seek payment of its claim from property encumbered by a secured creditor's lien.

I

This case arises out of the bankruptcy proceedings of Hen House Interstate, Inc., which at one time owned or operated several restaurants and service stations, as well as an outdoor-advertising firm. On September 5, 1991, Hen House filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri. As a Chapter 11 debtor-in-possession, Hen House retained possession of its assets and continued operating its business.

Respondent had been Hen House's primary lender. [FN1] At the time the Chapter 11 petition was filed, it held a security interest in essentially all of Hen House's real and personal property, securing an indebtedness of over $4 million. After the Chapter 11 proceedings were commenced, it agreed to lend Hen House an additional **1946 $300,000 to help finance the reorganization. The Bankruptcy Court entered a financing order approving the loan agreement and authorizing *4 Hen House to use loan proceeds and cash collateral to pay expenses, including workers' compensation expenses.

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group

147 L.Ed.2d 1, 68 USLW 4441, 43 Collier Bankr.Cas.2d 861, 36 Bankr.Ct.Dec. 38,
Bankr. L. Rep. P 78,183, 00 Cal. Daily Op. Serv. 4153,
2000 Daily Journal D.A.R. 5563, 2000 CJ C.A.R. 2982,
13 Fla. L. Weekly Fed. S 359, 17 Colo. Bankr. Ct. Rep. 32,
4 Cal. Bankr. Ct. Rep. 26
(Cite as: 530 U.S. 1, 120 S.Ct. 1942)

FN1. Respondent Union Planters Bank is the successor of Magna Bank, which is in turn the successor of Landmark Bank of Illinois. Hen House was originally indebted to Landmark Bank. For simplicity, we will not distinguish between the various entities.

During the attempted reorganization, Hen House obtained workers' compensation insurance from petitioner Hartford Underwriters (which was unaware of the bankruptcy proceedings). Although the policy required monthly premium payments, Hen House repeatedly failed to make them; Hartford continued to provide insurance nonetheless. The reorganization ultimately failed, and on January 20, 1993, the Bankruptcy Court converted the case to a liquidation proceeding under Chapter 7 and appointed a trustee. At the time of the conversion, Hen House owed Hartford more than $50,000 in unpaid premiums. Hartford learned of Hen House's bankruptcy proceedings after the conversion, in March 1993.

Recognizing that the estate lacked unencumbered funds to pay the premiums, Hartford attempted to charge the premiums to respondent, the secured creditor, by filing with the Bankruptcy Court an "Application for Allowance of Administrative Expense, Pursuant to 11 U.S.C. § 503 and Charge Against Collateral, Pursuant to 11 U.S.C. § 506(c)." The Bankruptcy Court ruled in favor of Hartford, and the District Court and an Eighth Circuit panel affirmed, *In re Hen House Interstate, Inc.,* 150 F.3d 868 (C.A.8 1998). The Eighth Circuit subsequently granted en banc review, however, and reversed, concluding that § 506(c) could not be invoked by an administrative claimant. *In re Hen House Interstate, Inc.,* 177 F.3d 719 (1999). We granted certiorari. 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 361 (2000).

II

[1][2] Petitioner's effort to recover the unpaid premiums involves two provisions, 11 U.S.C. § § 503(b) and 506(c). Section 503(b) provides that "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement *5 of the case," are treated as administrative expenses, which are, as a rule, entitled to priority over prepetition unsecured claims, see § § 507(a)(1), 726(a)(1), 1129(a)(9)(A). Respondent does not dispute that the cost of the workers' compensation insurance Hen House purchased from petitioner is an administrative expense within the meaning of this provision. Administrative expenses, however, do not have priority over secured claims, see § § 506, 725-726, 1129(b)(2)(A); *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 378-379, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), and because respondent held a security interest in essentially all of the estate's assets, there were no unencumbered funds available to pay even administrative claimants.

[3][4] Petitioner therefore looked to § 506(c), which constitutes an important exception to the rule that secured claims are superior to administrative claims. That section provides as follows:

"The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." § 506(c).

Petitioner argued that this provision entitled it to recover from the property subject to respondent's security interest the unpaid premiums owed by Hen House, since its furnishing of workers' compensation insurance benefited respondent by allowing continued operation of Hen House's business, thereby preserving the value of respondent's collateral; or alternatively, that such benefit could be presumed from respondent's consent to the postpetition financing order. Although it was contested below whether, under either theory, the **1947 workers' compensation insurance constituted a "benefit to the holder" within the meaning of § 506(c), that issue is not before us here; we assume for purposes of this decision that it did, and consider only whether petitioner--an *6 administrative claimant--is a proper party to seek recovery under § 506(c). [FN2]

FN2. In addition to seeking recovery under § 506(c), petitioner argued to the Eighth Circuit en banc that it was entitled to recover under the terms of the postpetition financing order itself. Petitioner sought to enforce that order under Federal Rule of Bankruptcy Procedure 7071, which incorporates Federal Rule of Civil Procedure 71 ("When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party ..."). The Eighth Circuit declined to address this issue, since it had not been raised until the rehearing en banc, *In re Hen House Interstate, Inc.,* 177 F.3d 719, 724 (1999). We similarly do not reach the issue here.

[5][6][7] In answering this question, we begin with the understanding that Congress "says in a statute what it means and means in a statute what it says there,"

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group

147 L.Ed.2d 1, 68 USLW 4441, 43 Collier Bankr.Cas.2d 861, 36 Bankr.Ct.Dec. 38,
Bankr. L. Rep. P 78,183, 00 Cal. Daily Op. Serv. 4153,
2000 Daily Journal D.A.R. 5563, 2000 CJ C.A.R. 2982,
13 Fla. L. Weekly Fed. S 359, 17 Colo. Bankr. Ct. Rep. 32,
4 Cal. Bankr. Ct. Rep. 26
(Cite as: 530 U.S. 1,  120 S.Ct. 1942)

*Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).  As we have previously noted in construing another provision of § 506, when "the statute's language is plain, 'the sole function of the courts' "--at least where the disposition required by the text is not absurd--" 'is to enforce it according to its terms.' "  *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).  Here, the statute appears quite plain in specifying who may use § 506(c)--"[t]he trustee"  It is true, however, as petitioner notes, that all this actually "says" is that the trustee may seek recovery under the section, not that others may not.  The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision. [FN3]  We have little difficulty answering yes.

FN3. Debtors-in-possession may also use the section, as they are expressly given the rights and powers of a trustee by 11 U.S.C. § 1107.

[8]  Several contextual features here support the conclusion that exclusivity is intended.  First, a situation in which a statute authorizes specific action and designates a particular party empowered to take it is surely among the least appropriate in which to presume nonexclusivity.  "Where a *7 statute ... names the parties granted [the] right to invoke its provisions, ... such parties only may act."  2A N. Singer, Sutherland on Statutory Construction § 47.23, p. 217 (5th ed.1992) (internal quotation marks omitted);  see also *Federal Election Comm'n v. National Conservative Political Action Comm.,* 470 U.S. 480, 486, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985).  Second, the fact that the sole party named-- the trustee--has a unique role in bankruptcy proceedings makes it entirely plausible that Congress would provide a power to him and not to others.  Indeed, had no particular parties been specified--had § 506(c) read simply "[t]here may be recovered from property securing an allowed secured claim the reasonable, necessary costs and expenses."--the trustee is the most obvious party who would have been thought empowered to use the provision.  It is thus far more sensible to view the provision as answering the question "Who may use the provision?" with "only the trustee" than to view it as simply answering the question "May the trustee use the provision?" with "yes."

[9][10]  Nor can it be argued that the point of the

provision was simply to establish that certain costs may be recovered from collateral, and not to say anything about who may recover them.  Had that been Congress's intention, it could easily have used the formulation just suggested.  Similarly, had Congress intended the provision to be broadly available, it could simply have said so, as it did in describing the **1948 parties who could act under other sections of the Code. Section 502(a), for example, provides that a claim is allowed unless "a party in interest" objects, and § 503(b)(4) allows "an entity" to file a request for payment of an administrative expense.  The broad phrasing of these sections, when contrasted with the use of "the trustee" in § 506(c), supports the conclusion that entities other than the trustee are not entitled to use § 506(c). *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).

Petitioner's primary argument from the text of § 506(c) is that "what matters is that section 506(c) does not say that *8 'only' a trustee may enforce its provisions."  Brief for Petitioner 29.  To bolster this argument, petitioner cites other provisions of the Bankruptcy Code that do use "only" or other expressly restrictive language in specifying the parties at issue.  See, *e.g.,* § 109(a) ("[O]nly a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title");  § 707(b) (providing that a case may be dismissed for substantial abuse by "the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest").  Petitioner argues that in the absence of such restrictive language, no party in interest is excluded.  This theory--that the expression of one thing indicates the inclusion of others unless exclusion is made explicit--is contrary to common sense and common usage.  Many provisions of the Bankruptcy Code that do not contain an express exclusion cannot sensibly be read to extend to all parties in interest.  See, *e.g.,* § 363(b)(1) (providing that "[t]he trustee, after notice and a hearing, may use, sell, or lease ... property of the estate");  § 364(a) (providing that "the trustee" may incur debt on behalf of the bankruptcy estate);  § 554(a) (giving "the trustee" power to abandon property of the bankruptcy estate).

[11]  Petitioner further argues that § 1109 evidences the right of a nontrustee to recover under § 506(c).  We are not persuaded.  That section, which provides that a "party in interest" "may raise and may appear and be heard on any issue in a case under [Chapter 11]," is by its terms inapplicable here, since petitioner's attempt to use §

(C) 2007 West Group

147 L.Ed.2d 1, 68 USLW 4441, 43 Collier Bankr.Cas.2d 861, 36 Bankr.Ct.Dec. 38,
Bankr. L. Rep. P 78,183, 00 Cal. Daily Op. Serv. 4153,
2000 Daily Journal D.A.R. 5563, 2000 CJ C.A.R. 2982,
13 Fla. L. Weekly Fed. S 359, 17 Colo. Bankr. Ct. Rep. 32,
4 Cal. Bankr. Ct. Rep. 26
(Cite as: 530 U.S. 1, 120 S.Ct. 1942)

506(c) came after the bankruptcy proceeding was converted from Chapter 11 to Chapter 7. In any event, we do not read § 1109(b)'s general provision of a right to be heard as broadly allowing a creditor to pursue substantive remedies that other Code provisions make available only to other specific parties. Cf. 7 L. King, Collier on Bankruptcy & ¶ 1109.05 (rev. 15th ed. 1999) ("In general, section 1109 does not bestow any right to usurp the *9 trustee's role as representative of the estate with respect to the initiation of certain types of litigation that belong exclusively to the estate").

### III

[12] Because we believe that by far the most natural reading of § 506(c) is that it extends only to the trustee, petitioner's burden of persuading us that the section must be read to allow its use by other parties is " 'exceptionally heavy.' " *Patterson v. Shumate,* 504 U.S. 753, 760, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (quoting *Union Bank v. Wolas,* 502 U.S. 151, 156, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991)). To support its proffered reading, petitioner advances arguments based on pre-Code practice and policy considerations. We address these arguments in turn.

### A

Section 506(c)'s provision for the charge of certain administrative expenses against lienholders continues a practice that existed under the Bankruptcy Act of 1898, see, e.g., *In re Tyne,* 257 F.2d 310, 312 (C.A.7 1958); 4 Collier on Bankruptcy, *supra,* & ¶ 506.05[1]. It was not to be found in the text of the Act, but traced its origin to early cases establishing an equitable principle **1949 that where a court has custody of property, costs of administering and preserving the property are a dominant charge, see, e.g., *Bronson v. La Crosse & Milwaukee R. Co.,* 1 Wall. 405, 410, 17 L.Ed. 616 (1863); *Atlantic Trust Co. v. Chapman,* 208 U.S. 360, 376, 28 S.Ct. 406, 52 L.Ed. 528 (1908). It was the norm that recovery of costs from a secured creditor would be sought by the trustee, see, e.g., *Textile Banking Co. v. Widener,* 265 F.2d 446, 453-454 (C.A.4 1959); *Tyne, supra,* at 312. Petitioner cites a number of lower court cases, however, in which--without meaningful discussion of the point--parties other than the trustee were permitted to pursue such charges under the Act, sometimes simultaneously with the trustee's pursuit of his own expenses, see, e.g., *First Western Savings and Loan Assn. v. Anderson,* 252 F.2d 544, 547-548 (C.A.9 1958); *In re Louisville Storage Co.,* 21 F.Supp. 897, 898 *10 (W.D.Ky.1936), aff'd, 93 F.2d 1008 (C.A.6 1938), but sometimes independently,

see *In re Chapman Coal Co.,* 196 F.2d 779, 780 (C.A.7 1952); *In re Rotary Tire & Rubber Co.,* 2 F.2d 364 (C.A.6 1924). Petitioner also relies on early decisions of this Court allowing individual claimants to seek recovery from secured assets, see *Louisville, E. & St. L.R. Co. v. Wilson,* 138 U.S. 501, 506, 11 S.Ct. 405, 34 L.Ed. 1023 (1891); *Burnham v. Bowen,* 111 U.S. 776, 779, 783, 4 S.Ct. 675, 28 L.Ed. 596 (1884); *New York Dock Co. v. Poznan,* 274 U.S. 117, 121, 47 S.Ct. 482, 71 L.Ed. 955 (1927). *Wilson* and *Burnham* involved equity receiverships, and were not only pre-Code, but predate the Bankruptcy Act of 1898 that the Code replaced; while *New York Dock* was a case arising in admiralty.

[13][14][15][16] It is questionable whether these precedents establish a bankruptcy practice sufficiently widespread and well recognized to justify the conclusion of implicit adoption by the Code. We have no confidence that the allowance of recovery from collateral by nontrustees is "the type of rule' that ... Congress was aware of when enacting the Code." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S., at 246, 109 S.Ct. 1026. Cf. *Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (relying on "clearly established" pre-Code practice); *Kelly v. Robinson,* 479 U.S. 36, 46, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (giving weight to pre-Code practice that was "widely accepted" and "established"). In any event, while pre-Code practice "informs our understanding of the language of the Code," *id.,* at 44, 107 S.Ct. 353, it cannot overcome that language. It is a tool of construction, not an extratextual supplement. We have applied it to the construction of provisions which were "subject to interpretation," *id.,* at 50, 107 S.Ct. 353, or contained "ambiguity in the text," *Dewsnup, supra,* at 417, 112 S.Ct. 773. "[W]here the meaning of the Bankruptcy Code's text is itself clear ... its operation is unimpeded by contrary ... prior practice," *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 546, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (internal quotation marks omitted). See, e.g., *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *United States v. Ron Pair Enterprises, Inc., supra,* at 245-246, 109 S.Ct. 1026.

*11 In this case, we think the language of the Code leaves no room for clarification by pre-Code practice. If § 506(c) provided only that certain costs and expenses could be recovered from property securing a secured claim, without specifying any particular party by whom the recovery could be pursued, the case would be akin to those in which we used prior practice to fill in the details

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group                                                                                           Page 68
147 L.Ed.2d 1, 68 USLW 4441, 43 Collier Bankr.Cas.2d 861, 36 Bankr.Ct.Dec. 38,
Bankr. L. Rep. P 78,183, 00 Cal. Daily Op. Serv. 4153,
2000 Daily Journal D.A.R. 5563, 2000 CJ C.A.R. 2982,
13 Fla. L. Weekly Fed. S 359, 17 Colo. Bankr. Ct. Rep. 32,
4 Cal. Bankr. Ct. Rep. 26
(Cite as: 530 U.S. 1, 120 S.Ct. 1942)

of a pre-Code concept that the Code had adopted without elaboration. See, *e.g.*, *United States v. Noland*, 517 U.S. 535, 539, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) (looking to pre-Code practice in interpreting Code's reference to "principles of equitable subordination"); *Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 **1950 (1986) (codification of trustee's abandonment power held to incorporate established exceptions). Here, however, it is not the unelaborated concept but only a specifically narrowed one that has been adopted: a rule allowing the charge of costs to secured assets *by the trustee.* Pre-Code practice cannot transform § 506(c)'s reference to "the trustee" to "the trustee and other parties in interest."

B

Finally, petitioner argues that its reading is necessary as a matter of policy, since in some cases the trustee may lack an incentive to pursue payment. Section 506(c) must be open to nontrustees, petitioner asserts, lest secured creditors enjoy the benefit of services without paying for them. Moreover, ensuring that administrative claimants are compensated may also serve purposes beyond the avoidance of unjust enrichment. To the extent that there are circumstances in which the trustee will not use the section although an individual creditor would, [FN4] allowing suits by nontrustees *12 could encourage the provision of postpetition services to debtors on more favorable terms, which would in turn further bankruptcy's goals.

FN4. The frequency with which such circumstances arise may depend in part on who ultimately receives the recovery obtained by a trustee under § 506(c). Petitioner argues that it goes to the party who provided the services that benefited collateral (assuming that party has not already been compensated by the estate). Respondent argues that this reading,    like a reading that allows creditors themselves to use § 506(c), upsets the Code's priority scheme by giving administrative claimants who benefit collateral an effective priority over others-- allowing, for example, a Chapter 11 administrative creditor (like petitioner) to obtain payment via § 506(c) while Chapter 7 administrative creditors remain unpaid, despite § 726(b)'s provision that Chapter 7 administrative claims have priority over Chapter 11 administrative claims. Thus, respondent asserts that a trustee's recovery under § 506(c) simply goes into the estate to be distributed according to the Code's priority provisions. Since this case does not involve a trustee's recovery under

§ 506(c), we do not address this question, or the related question whether the trustee may use the provision prior to paying the expenses for which reimbursement is sought, see *In re K & L Lakeland, Inc.,* 128 F.3d 203, 207, 212 (C.A.4 1997).

[17] Although these concerns may be valid, it is far from clear that the policy implications favor petitioner's position. The class of cases in which § 506(c) would lie dormant without nontrustee use is limited by the fact that the trustee is obliged to seek recovery under the section whenever his fiduciary duties so require. And limiting § 506(c) to the trustee does not leave those who provide goods or services that benefit secured interests without other means of protecting themselves as against other creditors: They may insist on cash payment, or contract directly with the secured creditor, and may be able to obtain superpriority under § 364(c)(1) or a security interest under §§ 364(c)(2), (3), or § 364(d). And of course postpetition creditors can avoid unnecessary losses simply by paying attention to the status of their accounts, a protection which, by all appearances, petitioner neglected here.

On the other side of the ledger, petitioner's reading would itself lead to results that seem undesirable as a matter of policy. In particular, expanding the number of parties who could use § 506(c) would create the possibility of multiple administrative claimants seeking recovery under the section. *13 Each such claim would require inquiry into the necessity of the services at issue and the degree of benefit to the secured creditor. Allowing recovery to be sought at the behest of parties other than the trustee could therefore impair the ability of the bankruptcy court to coordinate proceedings, as well as the ability of the trustee to manage the estate. Indeed, if administrative claimants were free to seek recovery on their own, they could proceed even where the trustee himself planned to do so. See, *e.g.*, *In re Bluffton Castings Corp.,* 224 B.R. 902, 904 **1951 (N.D.Ind.1998). [FN5] Further, where unencumbered assets were scarce, creditors might attempt to use § 506(c) even though their claim to have benefited the secured creditor was quite weak. The possibility of being targeted for such claims by various administrative claimants could make secured creditors less willing to provide postpetition financing.

FN5. We do not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c). *Amici*

(C) 2007 West Group
147 L.Ed.2d 1, 68 USLW 4441, 43 Collier Bankr.Cas.2d 861, 36 Bankr.Ct.Dec. 38,
Bankr. L. Rep. P 78,183, 00 Cal. Daily Op. Serv. 4153,
2000 Daily Journal D.A.R. 5563, 2000 CJ C.A.R. 2982,
13 Fla. L. Weekly Fed. S 359, 17 Colo. Bankr. Ct. Rep. 32,
4 Cal. Bankr. Ct. Rep. 26
(Cite as: 530 U.S. 1,  120 S.Ct. 1942)

American Insurance Association and National Union Fire Insurance Co. draw our attention to the practice of some courts of allowing creditors or creditors' committees a derivative right to bring     avoidance actions when the trustee refuses to do so, even though the applicable Code provisions, see 11 U.S.C. § §  544, 545, 547(b), 548(a), 549(a), mention only the trustee.  See, *e.g., In re Gibson Group, Inc.,* 66 F.3d 1436, 1438 (C.A.6 1995).  Whatever the validity of that practice, it has no analogous application here, since petitioner did not ask the trustee to pursue payment under §   506(c) and did not seek permission from the Bankruptcy Court to take such action in the trustee's stead.   Petitioner asserted an independent right to use §  506(c), which is what we reject today.  Cf. *In re Xonics Photochemical, Inc.,* 841 F.2d 198, 202-203 (C.A.7 1988) (holding that creditor had no right to bring avoidance action independently, but noting that it might have been able to seek to bring derivative suit).

[18]  In any event, we do not sit to assess the relative merits of different approaches to various bankruptcy problems.   It suffices that the natural reading of the text produces the result we announce.   Achieving a better policy outcome--if what petitioner urges is that--is a task for Congress, not *14 the courts. *Kawaauhau v. Geiger,* 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *Noland,* 517 U.S., at 541-542, n. 3, 116 S.Ct. 1524; *Wolas,* 502 U.S., at 162, 112 S.Ct. 527.

* * *

We have considered the other points urged by petitioner and find them to be without merit.   We conclude that 11 U.S.C. §   506(c) does not provide an administrative claimant an independent right to use the section to seek payment of its claim.   The judgment of the Eighth Circuit is affirmed.

*It is so ordered.*

For U.S. Supreme Court Briefs See:

2000  WL  115899  (Appellate Brief),  BRIEF FOR RESPONDENT, (January 26, 2000)

2000  WL  115882  (Appellate Brief),  BRIEF OF AMICUS CURIAE COMMERCIAL FINANCE ASSOCIATION IN SUPPORT OF RESPONDENT, (January 26, 2000)

1999  WL 1259997  (Appellate Brief),  BRIEF FOR PETITIONER, (December 23, 1999)

1999  WL  1259925  (Appellate Brief),  BRIEF OF AMICI CURIAE AMERICAN INSURANCE ASSOCIATION AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. IN SUPPORT OF PETITIONER, (December 22, 1999)

1999  WL 33611412 (Appellate Petition, Motion and Filing), Petition for a Writ of Certiorari, (September 3, 1999)

1999  WL 33611429 (Appellate Petition, Motion and Filing), Brief in Opposition to Petition for Writ of Certiorari, (October 8, 1999)

1999  WL 33611390 (Appellate Petition, Motion and Filing), Brief of Amicus Curiae American Insurance Association in Support of the Petition, (October 8, 1999)

For Transcript of Oral Argument See:

2000  WL  311142  (U.S.Oral.Arg.),  Oral Argument, (March 20, 2000)

530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1, 68 USLW 4441, 43 Collier Bankr.Cas.2d 861, 36 Bankr.Ct.Dec. 38, Bankr. L. Rep. P 78,183, 00 Cal. Daily Op. Serv. 4153, 2000 Daily Journal D.A.R. 5563, 2000 CJ C.A.R. 2982, 13 Fla. L. Weekly Fed. S 359, 17 Colo. Bankr. Ct. Rep. 32, 4 Cal. Bankr. Ct. Rep. 26

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group
55 A.F.T.R.2d 85-1038, 85-1 USTC P 9212, 12 Collier Bankr.Cas.2d 91,
12 Bankr.Ct.Dec. 1022, Bankr. L. Rep. P 70,245
(Cite as: 751 F.2d 1213)

P

United States Court of Appeals,

Eleventh Circuit.

In re INTERNATIONAL HORIZONS, INC., et al.,
Debtors,
UNITED STATES OF AMERICA, Plaintiff-Appellant,
v.
INTERNATIONAL HORIZONS, INC., et al.,
Defendants-Appellees.
No. 84-8068.

Jan. 31, 1985.

After the United States Bankruptcy Court for the
Northern District of Georgia held the Government's
amended proofs of claim for certain federal corporate
income taxes untimely, the United States District Court
for the Northern District of Georgia, Orinda D. Evans, J.,
affirmed, and the Government appealed.   The Court of
Appeals, Nichols, Senior Circuit Judge, sitting by
designation, held that:  (1) Government's amended claim
for corporate income taxes was actually its assertion of a
new claim, and thus postbar date amendment was
properly disallowed;  (2) there was no prior and timely
filing of an informal proof of claim, and thus
Government's untimely filing of amended claim was not
excused on that basis;  and (3) equitable considerations
did not support amendment.

Affirmed.

West Headnotes

[1] Bankruptcy ⬚➝2903
51k2903
      (Formerly 51k336)

In a bankruptcy case, amendment to a claim is freely
allowed where purpose is to cure defect in claim as
originally filed, to describe claim with greater
particularity or to plead new theory of recovery on facts
set forth in original claim;  however, court must subject
postbar date amendments to careful scrutiny to assure that
there was no attempt to file a new claim under the guise
of amendment.

[2] Bankruptcy ⬚➝2903
51k2903
      (Formerly 51k336)

Government's postbar date amended claim for corporate
income taxes, following original timely claim for
withholding taxes and Federal Unemployment Tax Act
taxes, was actually an assertion of a new claim, and thus
amendment was properly disallowed.   26 U.S.C.A. §
3301 et seq.

[3] Bankruptcy ⬚➝2902
51k2902
      (Formerly 51k328)

Mere notice of a claim alone is not to be called an
informal proof of claim and does not excuse absence of
proper timely proof.

[4] Bankruptcy ⬚➝2902
51k2902
      (Formerly 51k328)

An informal claim may be asserted, if at all, only when it
is apparent that creditor intends to seek recovery from
estate and when informal proof of claim is "filed" prior to
bar date.

[5] Bankruptcy ⬚➝2900(1)
51k2900(1)
      (Formerly 51k328)

Government's untimely filing of amended claim for
corporate income taxes was not excused on basis that it
had previously and timely filed an informal proof of
claim, where, notwithstanding that Internal Revenue
Service had met with one debtor to discuss alleged tax
liabilities months prior to debtors' filing for bankruptcy,
no mention of potential liability was made again until
notice of deficiency was sent months past bar date,
nothing in record indicated that debtors or creditors knew
that Government intended to assert corporate income tax
claim prior to bar date, and nothing indicated that
interested parties were aware of claims prior to bar date,
the date by which claims were to be filed.

[6] Bankruptcy ⬚➝2900(1)
51k2900(1)
      (Formerly 51k328)

Government was estopped from asserting that a windfall
would befall creditors absent allowance of its untimely
amended    claim    for    corporate    income    taxes,
notwithstanding that debtors and creditors were aware of
income tax liabilities and acted, at least in part, based on
that   knowledge,   where   Government   had   multiple
opportunities to assert its claim timely but did not, it had

(C) 2007 West Group
55 A.F.T.R.2d 85-1038, 85-1 USTC P 9212, 12 Collier Bankr.Cas.2d 91,
12 Bankr.Ct.Dec. 1022, Bankr. L. Rep. P 70,245
(Cite as: 751 F.2d 1213)

an opportunity to object to disclosure statement which did not schedule corporate income taxes but did not, and it was aware that reorganization plan described payment only of actual tax liabilities and that plan would be unviable should Government reach and prevail on merits of its tax claim but did not object to plan either in writing or at confirmation hearing.

## [7] Bankruptcy ☞2923
51k2923
   (Formerly 51k678)

That Chapter 11 reorganization plan provided for litigation of corporate tax claims in Bankruptcy Court did not bar debtors' objections to Government's amended claim for corporate income taxes on grounds of timeliness. Bankr.Code, 11 U.S.C.A. § 1101 et seq.

## [8] Bankruptcy ☞2924
51k2924
   (Formerly 51k328)

Debtors, by waiting for three months, did not waive their right to object to Government's amended claim for corporate income taxes on grounds of timeliness where Government, through unjustified negligence, had waited 20 months to assert its late claim.

*1214 Glenn L. Archer, Asst. Atty. Gen., Michael L. Paup, Wynette J. Hewett, Gayle P. Miller, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

David G. Bisbee, Robert A. Parker, Jr., Atlanta, Ga., for defendants-appellees.

Appeal from the United States District Court for the Northern District of Georgia.

Before HENDERSON and HATCHETT, Circuit Judges, and NICHOLS, [FN*] Senior Circuit Judge.

   FN* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

NICHOLS, Senior Circuit Judge:

This is an appeal from the judgment of the United States District Court for the Northern District of Georgia affirming the decision of the United States Bankruptcy Court for the Northern District of Georgia which held untimely the United States' amended proofs of claim for certain federal corporate income taxes. This court has jurisdiction under 28 U.S.C. § 1293(b). Appellant

contends that the bankruptcy court abused its discretion in holding that the amended claims for corporate income taxes were untimely under the circumstances which shall be presented below. Finding there was no abuse of discretion, we affirm.

Facts

Appellees International Horizons, Inc. (IHI); International Horizons (Curacao), N.V.; North American Exports, Inc. (NAE); and International Horizons, N.V., on March 20, 1981, filed petitions for reorganization pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. World of English, N.V. and Communication and Studies International, Ltd., affiliates of the above-mentioned debtors, filed similarly on June 17, 1981, as did Financial Resources, K.K., on February 1, 1982. The proceedings involving these debtors were handled in consolidated form, with the debtors continuing to operate the businesses as debtors-in-possession.

On June 17, 1981, the bankruptcy court set a bar date by order, filed pursuant to Rule 3001(b)(2)(B) of the Interim Bankruptcy Rules (adopted by the bankruptcy court and the District Court for the Northern District of Georgia as applicable to cases under Chapter 11 of 11 U.S.C.) and notwithstanding the provisions of § § 502 and 1111(a) of Title 11, in which it ordered that creditors desiring to assert claims against debtors were to file proofs of claim on or before August 31, 1981. It is undisputed that the United States Internal Revenue Service (Service) was sent timely notice of the bar date order.

On May 18, 1981, and June 29, 1981, the Service filed proofs of claim against NAE asserting claims for withholding taxes and Federal Unemployment Tax Act (FUTA) taxes for three quarterly tax periods of 1980 and 1981 in the amount of approximately $33,000. On May 18, 1981, the Service also filed a proof of claim against IHI asserting claims for withholding taxes for two quarterly tax periods of 1980 and 1981 for approximately $36,000.

*1215 Subsequent to the bar date, on December 28, 1981, the Service served upon NAE a notice of deficiency for corporate income taxes in the amounts of $385,539 and $14,886,908 for the 1974 and 1975 tax years respectively. Prior to the bar date, indeed prior to debtors filing their petitions, the Service and NAE had discussed whether taxpayer NAE's tax returns were correct at a closing conference for an audit on October 15, 1980. There was no resolution of the controversy at this October 15 meeting, and NAE was not contacted about the Service's concerns again until the notice of deficiency, more than a year after the closing conference and four

(C) 2007 West Group

55 A.F.T.R.2d 85-1038, 85-1 USTC P 9212, 12 Collier Bankr.Cas.2d 91,
12 Bankr.Ct.Dec. 1022, Bankr. L. Rep. P 70,245
(Cite as: 751 F.2d 1213)

months after the bar date.    No corresponding proof of claim for corporate income taxes was filed, nor was an extension for time to file ever requested.

Following receipt of the notice of deficiency, on January 22, 1983, debtors filed a disclosure statement indicating that they had received a notice of deficiency and intended to "vigorously" contest.    The disclosure statement also described the plan's provision that unfiled claims be cancelled without any payment whatsoever.    Payment of corporate income taxes was never scheduled in the reorganization plan, as the only listing of payment to the government was in the amount of $71,360, the aggregate of the FUTA and withholding taxes.

November 5 was set by the bankruptcy court as the deadline for filing objections to the disclosure statement; ballots and objections to confirmation of the reorganization plan were to be filed by December 6, 1982. The government filed no objections.    Rather, on November 2, prior to the deadline for objections to the disclosure statement and the plan, the Service filed an amended proof of claim asserting a claim against NAE for the withholding and FUTA taxes (stated in the original proof of claim) and a claim for corporate income taxes in the amount of $385,539 and $14,886,908 and interest in the amount of $160,019 and $5,074,124 for the tax years 1974 and 1975 respectively.    On November 18, 1982, the Service filed an amended proof of claim against IHI, asserting the previous claims against IHI and a claim for corporate income tax of $1,719,649 and interest of $81,412 for 1980.    Taken together, the two amended proofs asserted claims of well over $20,000,000, amended on to the original $70,000 claimed.

Finally, ending the long saga of reorganization negotiations, a hearing on confirmation was held on December 15, 1982.    During this hearing an exchange occurred among the judge, debtors' counsel, and the Service's counsel concerning tax claims.    Of course, appellant and appellees each interpret the meaning of this exchange differently.    The record does show, however, at least that debtors' counsel indicated that the plan would allow for payment of actual tax liability as found by the bankruptcy court, and that the government, which had not actively participated in the almost incessant hearings and conferences which occurred in the 21 months of negotiations leading to the confirmation hearing, was aware that debtors felt they would have to pay no corporate income taxes and that it was unlikely that the debtors could pay those tax claims and other creditors' claims as well.    Still, the government stated that the plan should be confirmed, as it ultimately was.    The debtors filed an objection to the government corporate income tax

claims and moved for summary judgment in March 1983; the government filed a cross-motion.    The bankruptcy court granted debtors' motion in June 1983.

Dispositions Below
We consider briefly the bankruptcy court's decision here so that we may provide an ample foundation for consideration of any abuse of discretion.

The bankruptcy court determined that Rule 715 of the Rules of Bankruptcy Procedure, which incorporate Rule 15 of the Federal Rules of Civil Procedure, controls consideration of allowance of pleading amendment, and noted that while amendments should be freely allowed, they are not to be used to assert an entirely new claim.

*1216 The court first considered amendment under the traditional view that amendment was allowed only where a new claim was not being asserted and an original timely proof of claim had been filed.    Distinguishing the case principally relied upon by the Service, Menick v. Hoffman, 205 F.2d 365 (9th Cir.1953), as of precedential value only in its factual setting in which notice to the individual's business of a claim for withholding taxes also constituted notice to the individual of his income tax liability, the court found that:

[T]he Service's amendment asserts a new claim--i.e. a claim not arising out of the same occurrence or transaction as the timely filed proofs of claims filed by the Service in these cases.    To the extent that the Court could find [the Service's prebankruptcy tax actions] constituted notice to the debtors of the Service's claims for corporate income taxes, the Court would hold that notice of the existence of a claim is not sufficient to establish that claim in a bankruptcy proceeding and that a creditor has an affirmative duty to [file] timely a proof of claim.

The court then undertook a detailed analysis of equitable factors following the analysis of In re Miss Glamour Coat Co., 80-2 U.S.T.C. ï 9737 (S.D.N.Y. Oct. 8, 1980), and held that--

This Court [refuses] to allow the Service to amend its proof of claim.    While the debtor and its creditors acted with knowledge of the potential of the IRS's asserting a claim for corporate income taxes in these cases, when balanced against the Service's behaviour, it would not be appropriate to grant the Service leave to amend.    The Service has disregarded its internal procedures concerning the filing of proofs of claim for unliquidated or disputed claims and has offered no justification for its

(C) 2007 West Group
55 A.F.T.R.2d 85-1038, 85-1 USTC P 9212, 12 Collier Bankr.Cas.2d 91,
12 Bankr.Ct.Dec. 1022, Bankr. L. Rep. P 70,245
(Cite as: 751 F.2d 1213)

failure to act timely. While amendments are to be freely allowed where justice so requires, * * * the Service's unexplained negligence does not present an instance under which justice or fairness requires the allowance of an amendment.

The district court, after a de novo review of the record, adopted in full and affirmed the findings of fact and conclusions of law set forth by the bankruptcy court.

### Discussion

This court reviews the decision of the district court and the bankruptcy court and will reverse only upon finding an abuse of discretion. Carnegia v. Georgia Higher Education Assistance Corp., 691 F.2d 482, 483 (11th Cir.1982). (Since the district court adopted the decision of the bankruptcy court, we will address ourselves only to the bankruptcy court decision.) Appellant asserts the court's decision below disallowing amendment constitutes an abuse of discretion because the debtors and creditors were aware of the tax liabilities, the amended proof of claim was filed prior to plan confirmation, the plan arguably provided for tax claim litigation on the merits, and because the debtors waited for three months after plan confirmation before objecting to the late claim. We find appellant's contentions uncompelling.

[1] It is well accepted that the bankruptcy court is guided by the principles of equity, and that the court will act to assure that "fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." Pepper v. Litton, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). Thus in a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim. See Szatkowski v. Meade Tool & Die Co., 164 F.2d 228, 230 (6th Cir.1947); In re G.L. Miller & Co., 45 F.2d 115 (2d Cir.1930). Still, the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment. In the Matter of Commonwealth Corp., 617 F.2d 415, 420 (5th Cir.1980). See Wheeling Valley *1217 Coal Corp. v. Mead, 171 F.2d 916, 920 (4th Cir.1949).

Under the traditional view on the appropriateness of amendment that the bankruptcy and district courts first considered, and which was developed interpreting the statutory 6-month bar provision of § 57n of the Bankruptcy Act, 11 U.S.C. § 93(n), amendment is permitted only where the original claim provided notice to

the court of the existence, nature, and amount of the claim and that it was the creditors' intent to hold the estate liable. See Walsh v. Lockhart Associates, 339 F.2d 417, 418 (5th Cir.1964). See also Sun Basin Lumber Co. v. United States, 432 F.2d 48, 49 (9th Cir.1970); Lacoe v. DeLong, 65 F.2d 82, 83 (9th Cir.1933). Appellant contends that the court below abused its discretion in applying the facts of this case to the above- mentioned principles, and relies on Menick v. Hoffman, 205 F.2d 365 (9th Cir.1953), a case where the Service was allowed amendment of a withholding tax claim to include an income tax claim.

[2] The court below has considered Menick and we think properly found it confined to its facts. In Menick, a case decided by the ninth circuit and not controlling in this circuit, the bankrupt was an individual, rather than a corporation, and the withholding taxes as to the bankrupt's business had a dual identity of being also income taxes as to the bankrupt individually. In the present case the original claim also was for withholding and FUTA taxes; however the amendment sought to introduce claims based upon nonrecognition of a transaction under 26 U.S.C. § 351, controversy over business deductions, and disqualification of NAE as a domestic international sales corporation (DISC). In Menick the ninth circuit considered that the amendment merely particularized a claim to include taxes of a same generic origin. The bankruptcy court here determined that the amended claims, relating to nonrecognition of a transaction and adjustments premised upon the complex DISC tax provisions, simply did not relate to basic withholding and FUTA taxes. We can find no abuse of discretion in the court's determination that the amended claim was actually an assertion of a new claim. (This court neither endorses nor rejects the Ninth Circuit's reasoning in Menick, as the facts of that case are not before us.)

Appellant suggests, however, that the circumstances of this case are analogous to those in which the courts have deemed amendment merely a method of perfecting a prior informal proof of claim. Appellant asserts that the debtors, as debtors-in-possession and thus standing in the shoes of a trustee under 11 U.S.C. § 1107, were well aware of the government's claims since they had discussed these tax issues with the Service in 1980. Furthermore, asserts the Service, the disclosure statements noted the Service's notice of deficiency against debtors and the plan called for litigation of tax claims. The bankruptcy court found that the debtors and creditors knew of the potential of the Services' asserting a claim for corporate income taxes against the debtors.

[3][4] The bankruptcy court rightly found that mere

(C) 2007 West Group
55 A.F.T.R.2d 85-1038, 85-1 USTC P 9212, 12 Collier Bankr.Cas.2d 91,
12 Bankr.Ct.Dec. 1022, Bankr. L. Rep. P 70,245
(Cite as: 751 F.2d 1213)

notice of a claim alone is not to be called an informal proof of claim and does not excuse the absence of a proper timely proof as the law requires. An informal claim may be asserted, if it can be at all, only when it is apparent that the creditor intends to seek recovery from the estate and when the informal proof of claim is "filed" prior to the bar date. See Wilkens v. Simon Brothers, Inc., 731 F.2d 462, 465 (7th Cir.1984) ("The general rule is that a claim arises where the creditor evidences an intent to assert its claim against the debtor. Mere knowledge of the existence of the claim by the debtor, trustee or bankruptcy court is insufficient").

[5] Here the Service met with NAE to discuss alleged tax liabilities months prior to debtors filing for bankruptcy. No mention of the potential liability was made again until a notice of deficiency was sent months past the bar date. Nothing in the record indicates that the debtors or creditors knew that the government intended to assert a corporate income tax claim prior to *1218 the bar date. While it is true that the creditors and debtors were aware of the Service's claims prior to plan confirmation, nothing in the record indicates that the interested parties were aware of the claims prior to the bar date, the date by which claims were to be filed.

The informal proof of claim as a minimum must furnish the information that a formal claim would give. This includes the fact the claimant has what it believes to be legal claim for money owing. In the tax context, after audit of income tax returns, such notice is given in a notice of deficiency. We may suppose, arguendo, that a notice of deficiency, known to the trustee, before the cut-off date, would have some claim to be regarded as an informal proof of claim in the bankruptcy. Here there was no notice of deficiency until too late. After an audit, and after discussions of tax liability by the taxpayer with the auditor and perhaps other Treasury officials, but before notice of deficiency, Treasury is sending an ambiguous message. Its silence may say that on review it has failed to find the right to collect taxes so obvious and clear as the auditor said. It may say the matter is still under study. It does not say taxpayer is exonerated. It does not say taxpayer is liable and owes money in all events.

Such an ambiguous message would to the ordinary mind become a little less ambiguous as a greater length of time passed in silence. The message is strengthened that Treasury's right to collect a deficiency is found not as clear as originally supposed. The message is weakened that Treasury is just perfecting the details of its claims. It is clear that until notice, or until limitations run, taxpayer is not justified in disregarding any possible contingent tax liability in determining its financial condition. None of this adds up to an informal proof of claim. Thus, the Service has not shown sufficient facts from which we may conclude that the court abused its discretion in finding that no informal proof of claim was filed. Cf. Evanston Motor Co. v. First National Bank of Lincolnwood, 735 F.2d 1029 (7th Cir.1984) (cases accepting that an assertion of a claim against a trustee is equivalent to filing with the court, and is thus an informal proof of claim, are based on law superseded by Bankruptcy Rule 509(c) and Interim Bankruptcy Rule 3001 and are no longer applicable).

Finally, appellant asserts that the court abused its discretion when balancing the factors enunciated in Miss Glamour Coats supra, which held in a case of similar circumstances that the court should consider (1) whether the debtors and creditors relied upon the Service's earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would be filed pending the completion of an audit; (2) whether other creditors would receive a windfall by the court's refusing to allow amendment; (3) whether the Service intentionally or negligently delayed in filing its proof of claim stating the amount of corporate tax due; (4) the justification for failure of the Service to file for a timely extension to the bar date; and (5) whether equity requires consideration of any other factors. The Service concedes that it was negligence not to request an extension for its time to file a proof of claim, as indeed its regulations require. The Service proffers no justification. Yet the government suggests that other equitable factors exist which strongly support amendment.

[6] The bankruptcy court considered the Miss Glamour Coat factors in detail. It found that the debtors and creditors were aware of the income tax liabilities and acted, at least in part, based on that knowledge. Still the court found that the creditors would not receive a windfall if the tax claim was barred. The government had multiple opportunities to assert its claim timely; it did not. It had opportunity to object to the disclosure statement which did not schedule corporate income taxes; it did not. It was aware that the reorganization plan described payment only of actual tax liabilities and that the plan would be unviable should the government reach and prevail on the merits of its tax claim. Yet it did not object to the plan either in writing *1219 or at the confirmation hearing. The bankruptcy court held that given the above behavior, the Service was estopped from asserting that a windfall would befall creditors absent the tax claims. We can find no abuse of discretion in the court's equitable consideration of the Service's reorganization posture.

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group

55 A.F.T.R.2d 85-1038, 85-1 USTC P 9212, 12 Collier Bankr.Cas.2d 91,
12 Bankr.Ct.Dec. 1022, Bankr. L. Rep. P 70,245
(Cite as: 751 F.2d 1213)

[7][8] Finally, the government claims as an equitable factor that the plan provided for litigation of the tax claims in bankruptcy court, that the plan binds the debtors, and that debtors waived the right to object to the claim by allowing the plan to go through confirmation. We find that the plan provision allowing for litigation of tax claims did not bar objections to claims on the grounds of timeliness.   The plan discloses payments only of timely claims and the discussion of the plan given by appellees' counsel at the confirmation hearing was a mere summary not intended to give detailed analysis of specific claims.   The government's somewhat paradoxical argument that appellees have waived their right to object by waiting for three months, when appellant, through unjustified negligence, waited 20 months to assert its late claim, is singularly unappealing.

<div align="center">Conclusion</div>

The court below provided a detailed analysis of the facts and correctly related them to the applicable law.   The government concedes that it is to receive no special consideration in determination of its late claims.   Here the Service acted negligently and without justification.   It was given every chance to assert its rights, yet failed to until the eve of confirmation. Aware that debtors plan was unviable should its claims prevail, the Service still argued that the plan be confirmed.   The weighing of equities is within the province of the courts below and their judgment is to be reversed only when an abuse of discretion occurred.   Having considered appellant's arguments, the record, and the decisions below, we find no abuse of discretion.

AFFIRMED.

751 F.2d 1213, 55 A.F.T.R.2d 85-1038, 85-1 USTC P 9212, 12 Collier Bankr.Cas.2d 91, 12 Bankr.Ct.Dec. 1022, Bankr. L. Rep. P 70,245

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group
67 A.F.T.R.2d 91-829, 91-1 USTC P 50,190, 21 Bankr.Ct.Dec. 904,
Bankr. L. Rep. P 73,929
(Cite as: 928 F.2d 171)

▷

United States Court of Appeals,

Fifth Circuit.

In re John R. KOLSTAD, Debtor.
UNITED STATES of America (INTERNAL
REVENUE SERVICE), Plaintiff-Appellee,
v.
John R. KOLSTAD, Defendant-Appellant.
No. 90-2280.

April 10, 1991.

Internal Revenue Service (IRS) moved to amend proof of claim that debtor had filed on behalf of IRS, which failed to file timely proof of claim. The Bankruptcy Court, 101 B.R. 492, allowed the amendment, and the United States District Court for the Southern District of Texas, Lynn N. Hughes, J., affirmed. Debtor appealed. The Court of Appeals, Edith H. Jones, Circuit Judge, held that: (1) bankruptcy court had discretion to authorize the IRS to amend the proof of claim filed by debtor for federal taxes on behalf of the IRS, and (2) permitting IRS to increase the amount of the claim was not an abuse of discretion.

Affirmed.

West Headnotes

**[1] Bankruptcy ☞3782**
51k3782

Bankruptcy and district courts' reasoning on issues of law must be appraised by Court of Appeals de novo.

**[2] Bankruptcy ☞3784**
51k3784

If bankruptcy law were construed to permit equitable amendments to debtor-filed proof of claim, bankruptcy and district courts' decision to allow amendment would be reviewed by Court of Appeals for abuse of discretion.

**[3] Bankruptcy ☞2923**
51k2923

No bar date or deadline exists for filing objections to proofs of claim.

**[4] Bankruptcy ☞2929**

51k2929

Once objection to proof of claim is filed, final amount of claim is determined by litigation in adversary proceeding.

**[5] Bankruptcy ☞3032.1**

51k3032.1
(Formerly 51k3032)

Litigation of adversary proceeding on amount of claim may end in settlement agreement providing for compromise claim that, although it represents bargained rather than actual amount of debt owed, may pass muster with creditors who have to approve it.

**[6] Bankruptcy ☞2903**
51k2903

Bankruptcy court had discretion to authorize Internal Revenue Service (IRS) which had failed to file timely proof of claim to amend proof of claim that had been filed by debtor for federal taxes on behalf of IRS; statute and rule authorizing debtor to file creditor's proof of claim within 30 days after Chapter 11 bar date did not entitle debtor to fix beyond challenge amount of involuntarily participating creditor's claim. Bankr.Code, 11 U.S.C.A. § 501(c); Bankruptcy Rule 3004, 11 U.S.C.A.

**[7] Bankruptcy ☞2903**
51k2903

Permitting Internal Revenue Service (IRS) to amend proof of claim filed by debtor on behalf of IRS and increase amount of claim was not abuse of discretion, although IRS had failed to file timely proof of claim; amended claim simply alleged higher amount owed by debtor for same type of employment tax liability stated in proof of claim filed by debtor, debtor had originally listed tax debt as disputed so neither other creditors nor debtor could have been surprised by amendment, and if amended claim were correct, allowance of claim would not be unfair to other creditors. Bankr.Code, 11 U.S.C.A. § 501(c).

*172 H. Gray Burks, IV, Houston, Tex., for defendant-appellant.

Christopher S. Cole, Dept. of Justice, Dallas, Tex., Janet K. Jones, Gary R. Allen, Gilbert S. Rothenberg, Atty. U.S. Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for plaintiff-appellee.

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group
67 A.F.T.R.2d 91-829, 91-1 USTC P 50,190, 21 Bankr.Ct.Dec. 904,
Bankr. L. Rep. P 73,929
(Cite as: 928 F.2d 171)

Appeal from the United States District Court for the Southern District of Texas.

Before REAVLEY, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The issue in this case is whether the bankruptcy court properly permitted IRS to "amend" Kolstad's debtor-filed proof of claim, 11 U.S.C. § 501(c) and Bankruptcy Rule 3004, some months after the bar date had passed for IRS to file its own proof of claim. Bankruptcy Rule 3003(c). We conclude that the bankruptcy court, 101 B.R. 492 (Bankr.S.D.Tex.1989), affirmed by the district court, did not abuse its discretion in permitting the amendment.

A. The Facts

The parties agree on virtually nothing except the pertinent facts. Kolstad sought Chapter 11 relief in March, 1987; his bankruptcy schedules identified IRS as a creditor for personal income tax and employee withholding taxes, in an amount labeled "disputed." IRS was aware of the bankruptcy case. The court's notice of the first meeting of creditors set August 17, 1987, as the bar date for filing proofs of claim. IRS failed to file a claim. Kolstad undertook to remedy this defect by filing, thirty days after the bar date, a $20,359.71 claim on behalf of IRS. 11 U.S.C. § 501(c) and Bankruptcy Rule 3004. [FN1] About ten months later, within a short time before the hearing on debtor's proposed plan of reorganization, IRS filed an "amended" proof of claim to cover the same kind of taxes, company employment taxes for which Kolstad was personally liable, [FN2] but to assert that the correct amount owed is $85,882.67. The bankruptcy court permitted IRS to amend. Kolstad contests the amendment vigorously because he fears he will be unable to confirm a plan burdened by this large priority tax claim.

FN1. Rule 3004 states: If a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors pursuant to § 341(a) of the Code, the debtor or trustee may do so in the name of the creditor, within 30 days after expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. The clerk shall forthwith mail notice of the filing to the creditor, the debtor and the trustee. A proof of claim filed by a creditor pursuant to Rule 3002 or Rule 3003(c), shall supersede the proof filed by the debtor or trustee.

FN2. 26 U.S.C. § 6672.

*173 B. Standard of Review

[1][2] Both the bankruptcy court and district court granted summary judgment for the IRS. The parties dispute the appellate principles of review, although they are reasonably clear-cut. The courts' reasoning on issues of law must be appraised de novo. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1307 (5th Cir.1985). If we conclude that bankruptcy law permits equitable amendments to a debtor-filed proof of claim, the courts' decision to allow the amendment is reviewed for an abuse of discretion. In re International Horizons, Inc., 751 F.2d 1213, 1216 (11th Cir.1985).

C. Discussion

The debtor's argument is deceptively framed as resting solely on 11 U.S.C. § 501 and Bankruptcy Rules 3003(c) and 3004. The Bankruptcy Code, 11 U.S.C. § § 101 et seq., permits a debtor or trustee to file a proof of claim for a creditor who does not timely file on its own behalf. 11 U.S.C. § 501(c). Implementing this provision, Bankruptcy Rule 3004 authorizes the debtor or trustee to file a creditor's proof of claim within thirty days after the Chapter 11 bar date prescribed according to Bankruptcy Rule 3003(c), which in this case was August 17, 1987. [FN3] A creditor who fails to file its proof of claim before the bar date, and who fails timely to request an extension of time to file, see Bankruptcy Rule 9006(b), may not file a late claim and participate in the voting or distribution from the debtor's estate. Bankruptcy Rule 3003(c)(2); In re Vertientes, Ltd., 845 F.2d 57, 60 (3d Cir.1988); Maressa v. A.H. Robins Co., Inc., 839 F.2d 220, 221 (4th Cir.), cert. denied, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 53 (1988); In re South Atlantic Financial Corp., 767 F.2d 814, 817 (11th Cir.1985), cert. denied, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986).

FN3. Kolstad is probably correct, although it does not advance his argument, in asserting that Rules 3003(c) and 3004 set up three time periods for filing proofs of claim: (a) the creditor's exclusive period, which runs until the § 341 first meeting; (b) the joint period from the date of the first meeting until the claims bar date, during which either a creditor or a debtor may file on the creditor's behalf; and (c) the debtor's exclusive period to file a claim for the creditor, which lasts thirty days after the bar date.

The debtor contends that IRS lost its right to file its own, higher proof of claim when the bar date passed and it neither filed nor requested an extension of time. Further, Kolstad contends, the IRS cannot avoid the bar date


(C) 2007 West Group
67 A.F.T.R.2d 91-829, 91-1 USTC P 50,190, 21 Bankr.Ct.Dec. 904,
Bankr. L. Rep. P 73,929
(Cite as: 928 F.2d 171)

simply because the debtor elected to file a proof of claim and so bring IRS within the scope of his reorganization proceeding. The bankruptcy rules furnish the exclusive time periods in which a creditor may assert a claim; the debtor's assertion of the creditor's claim *after* the creditor's bar date has passed cannot reinstate the creditor's ability to protect itself.

[3][4][5] This analysis is plausible only because it neglects to encompass all of the Code provisions and rules that bear upon the claims process in bankruptcy. To determine whether IRS was authorized to amend Kolstad's proof of claim for it, we must consider more broadly the role of bar dates and claims adjudication in bankruptcy cases. Although bankruptcy law has elements of gamesmanship and the consequences for missing various bankruptcy deadlines are severe [FN4], the bankruptcy law is not supposed to function merely as a procedural gauntlet that only the most adroit or best represented creditors can overcome. The deadlines have a purpose: they enable a debtor and his creditors to know, reasonably promptly, what parties are making claims against the estate and in what general amounts. [FN5] The claims filing deadlines, however, by no means fix in stone the final "allowed" amounts of *174 claims. [FN6] The proof of claim is prima facie evidence of the amount and origin of the debt owed, Bankruptcy Rule 3001(f), but any party in interest may object to a proof of claim. 11 U.S.C. § 502(a); Bankruptcy Rules 3007 (objections); 3008 (reconsideration of claims). There is no bar date or deadline for filing objections. Once an objection is filed, the final amount of the claim is determined by litigation in an adversary proceeding. *See* Bankruptcy Rules 7001 *et seq.* Such litigation may end in a settlement agreement providing for a compromise claim that, although it represents a bargained rather than actual amount of the debt owed, may pass muster with the creditors who have to approve it. Thus, while bar dates establish the universe of participants in the debtor's case, they have little correlation to the final relative amounts in which creditors will share any distribution. The goal of claims adjudication, on the other hand, is to assure that each creditor *which is part of that universe* ultimately participates in the voting and distribution from the estate in the proper amount determined by the priority and nature of its claim and bankruptcy's bargaining process.

FN4. *See, e.g.,* Rule 3003(c)(2) (deadline for filing proofs of claim); Rule 4007(c) and (d) (deadline for filing complaints to determine dischargeability of a debt).

FN5. Similarly, deadlines for filing complaints against the discharge or dischargeability of a particular claim are timed to put the parties on early notice whether a debtor may fail to achieve these most desired rewards of the bankruptcy process.

FN6. This is not to detract from the fact that proofs of claim are declared under penalty of perjury, but to recognize that parties often legitimately disagree on the amount and legal basis for claims.

[6] Congress authorized a debtor or trustee to file a proof of claim for a creditor in order to broaden the scope of participation in the bankruptcy case and thus facilitate the debtor's march toward rehabilitation. 3 *Collier on Bankruptcy* ¶ 501.03 (15th ed. 1988). Kolstad's brief acknowledges the problem that he confronted and its statutory solution. If IRS, as a creditor with a non-dischargeable claim, elected not to participate in the bankruptcy case and not to file a claim, the debtor would remain burdened by that debt following bankruptcy. *See, e.g.,* 11 U.S.C. § 523(a)(1) (declaring certain tax debts non-dischargeable); *In re Kloeble,* 112 B.R. 379, 381-82 (Bankr.S.D.Cal.1990). Not only would this fact threaten the debtor after bankruptcy, but it might also prevent him from confirming a plan of reorganization covering creditors who are before the court. On account of the non-discharged debt, the debtor might become unable to establish that the plan is "feasible." 11 U.S.C. §§ 1129(a)(11) and (b). Section 501(c) empowered the debtor to force IRS to participate in the bankruptcy and subject its debt to dischargeability. 11 U.S.C. § 1129(a)(9)(C) (tax debts covered by the plan are fully discharged). Kolstad took advantage of this provision.

Having so employed § 501(c), Kolstad now seeks additionally to prevent the IRS from attempting to prove the correct amount of taxes he owed. Here we part company with Kolstad. The fact that § 501(c) and Rule 3004 may be invoked to force IRS to participate in the reorganization process does not mean that Kolstad also gains unilateral control of the amount of IRS's claim. If a Rule 3004 proof of claim permitted a debtor to fix beyond challenge the amount of the involuntary participant's claim, the debtor would also control that creditor's share of the distribution from his estate. Such an interpretation of Rule 3004 carries a serious potential for abuse, because it would foster the deliberate filing of a very low claim on behalf of a creditor. This perverse incentive is, however, not inherent in Rule 3004.

The problem is that Kolstad's interweaving of the Rule 3003(c) and 3004 bar dates confuses their role with that of claims adjudication. As has been shown, the final determination of the allowed amount of a claim, and thus its relative share of distribution, is not the function of bar dates so much as of the claims adjudication process. Rule

(C) 2007 West Group                                                                              Page 49
67 A.F.T.R.2d 91-829, 91-1 USTC P 50,190, 21 Bankr.Ct.Dec. 904,
Bankr. L. Rep. P 73,929
(Cite as: 928 F.2d 171)

3004 sets a time limit upon the debtor's decision to file a proof of claim for a creditor for the same reason that bar dates impose deadlines upon creditors' proofs of claim. *See In re Kloeble,* 112 B.R. at 381-82. Once a claim is timely filed under Rule 3004, however, the essential role of the bar date has been fulfilled. The process of claims adjudication may then adjust the rights of creditors among themselves.

*175 Consistent with our view of the comparative roles of bar dates and claims adjudication is the allowance of amended proofs of claim. Amendments to timely creditor proofs of claim have been liberally permitted to "cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *In re International Horizons, Inc.,* 751 F.2d at 1216. Amendments do not vitiate the role of bar dates: indeed, courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability. *Matter of Commonwealth Corp.,* 617 F.2d 415, 420 (5th Cir.1980). Amendments to IRS proofs of claim have been allowed or disallowed on these grounds in numerous cases. *In re Bajac Const. Co.,* 100 B.R. 524, 525 (Bankr.E.D.Cal.1989); *In re Calisoff,* 94 B.R. 1002 (Bankr.N.D.Ill.1988); *In re Hanscom Retail Foods,* 96 B.R. 33 (Bankr.E.D.Pa.1988); *In re Richmond,* 92 B.R. 713 (Bankr.S.D.Tex.1988), *aff'd,* 105 B.R. 14 (S.D.Tex.1989); *United States v. Owens,* 84 B.R. 361, 363-64 (Bankr.E.D.Pa.1988); *In re Butcher,* 74 B.R. 211, 217 (Bankr.E.D.Tenn.), *aff'd,* 75 B.R. 441 (E.D.Tenn.1987), 848 F.2d 189 (6th Cir.1988); *In re Johnson,* 55 B.R. 800, 806 (Bankr.E.D.Va.1985); *In re Simms,* 40 B.R. 186, 190 (Bankr.N.D.Ga.1984). If Kolstad were correct in arguing that allowing an amended proof of claim improperly circumvents the bar date rules, his argument would also undermine the well-established amendment process for timely claims. The durability of that process, however, reinforces our conclusion that bar dates do not inevitably straitjacket creditors in incorrect claims.

Further, we perceive no convincing reason why amendments should be allowed to timely creditor claims but not to timely claims filed by debtors to obtain an advantage vis-a-vis nondischargeable creditors. One prominent treatise agrees. 8 *Collier on Bankruptcy* ï 3004.03 (15th ed. 1988). *See also In re Frascatore,* 98 B.R. 710, 722-23, n. 11 (Bankr.E.D.Pa.1989). In response, Kolstad contends that by allowing a timely creditor's proof of claim to "supersede" that filed by a debtor, Rule 3004 impliedly negates a later-filed creditor "amendment." This argument misinterprets the pertinent terms, however, for a "superseding" claim by its nature may include a broader spectrum of demands against the debtor than an "amendment," which, as noted, must adjust or correct the terms of the claim originally filed. We conclude that the bankruptcy court had discretion to authorize IRS to amend Kolstad's proof of claim for federal taxes.

[7] Whether the court abused its discretion is the next question before us, and we find no such abuse here. [FN7] First, the principal concern of claims amendments, that no new claim be tardily asserted, is absent. IRS's amended claim simply alleges a higher amount owed by Kolstad for the same type of employment tax liability stated in Kolstad's § 501(c) claim. *Compare United States v. Owens,* 84 B.R. 361 (E.D.Pa.1988) (1981 tax claim was "new and different" from 1983 tax year claim already filed by IRS) and *In re Norris Grain Co.,* 81 B.R. 103 (Bankr.M.D.Florida 1987) (IRS not permitted to amend claim to add over $1 million *176 in corporate tax liability to previously filed claim for about $365 interest on prior return). Second, neither the creditors nor Kolstad could have been surprised by the amendment because Kolstad originally listed the tax debt as "disputed" and was negotiating with IRS about its amount shortly before he sought bankruptcy relief. Third, if IRS's amended claim is correct, its allowance will not be unfair to other creditors, for they would have achieved an undeserved windfall from a denial of the amendment. Finally, although we are troubled that IRS delayed filing its amended claim until virtually the eve of the confirmation hearing, leading the debtor to propose a plan based on the lower amount of federal tax indebtedness, we assume that the able bankruptcy judge balanced this factor against others weighing in favor of the amendment. If IRS's amendment is correct, then Kolstad seriously, if inadvertently, understated his employment tax liability and should not take unfair advantage of that fact in his reorganization efforts.

FN7. Many courts ruling on amendments to IRS bankruptcy proofs of claim have employed a five-factor test described in *In re Miss Glamour Coat Co.,* 80-2 U.S.T.C. ï 9737 (S.D.NY 1980), whose elements include: whether the debtors and creditors relied upon the government's earlier proof of claim or whether they had reason to know that later proofs of claim would follow upon completion of audit; whether the other creditors would receive a windfall to which they are not entitled if the court disallowed the IRS amendment; whether IRS intentionally or negligently delayed in filing the proof of claim stating the amount of taxes due; the justification, if any, for IRS's failure to request an extension of time for the submission of further proofs pending an audit; and whether any other equitable consideration should be taken

(C) 2007 West Group

67 A.F.T.R.2d 91-829, 91-1 USTC P 50,190, 21 Bankr.Ct.Dec. 904,
Bankr. L. Rep. P 73,929
(Cite as: 928 F.2d 171)

into account. *See In re International Horizons, Inc.,* 751
F.2d at 1216.   While helpful, these considerations are
overlapping and seem to subsume two general questions:
(1) whether IRS is attempting to stray beyond the
perimeters of the original proof of claim and effectively
file a "new" claim that could not have been foreseen from
the earlier claim or events such as an ongoing or recently
commenced audit;  and (2) the degree and incidence of
prejudice, if any, caused by IRS's delay.

  Because the bankruptcy court had the power to permit
IRS to amend Kolstad's § 501(c) federal tax claim, and he
did not abuse his discretion in permitting the amendment,
the judgments of the district and bankruptcy courts are
AFFIRMED.

  928 F.2d 171, 67 A.F.T.R.2d 91-829, 91-1 USTC  P
50,190, 21 Bankr.Ct.Dec. 904, Bankr. L. Rep.  P 73,929

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.