(C) 2007 West Group
157 L.Ed.2d 1024, 72 USLW 4152, 50 Collier Bankr.Cas.2d 1299,
42 Bankr.Ct.Dec. 122, Bankr. L. Rep. P 80,038, 04 Cal. Daily Op. Serv. 638,
2004 Daily Journal D.A.R. 805, 17 Fla. L. Weekly Fed. S 119
(Cite as: 540 U.S. 526, 124 S.Ct. 1023)

Page 52

▷

Supreme Court of the United States

John M. LAMIE, Petitioner,
v.
UNITED STATES TRUSTEE.
No. 02-693.

Argued Nov. 10, 2003.

Decided Jan. 26, 2004.

Background: In case converted from Chapter 11 to Chapter 7, debtor's counsel filed application for payment of legal fees incurred prepetition, during the Chapter 11 proceeding, and after conversion of case. United States Trustee (UST) objected to extent that application sought payment for services rendered post-conversion. The United States Bankruptcy Court for the Western District of Virginia, William F. Stone, Jr., J., 253 B.R. 724, sustained the objections only to the extent that funds held by attorney in prepetition retainer were insufficient to cover the allowed fees and expenses. The UST appealed, and debtor cross-appealed. The District Court, James P. Jones, J., 260 B.R. 273, affirmed, and parties filed cross-appeals. The Fourth Circuit Court of Appeals, Niemeyer, Circuit Judge, 290 F.3d 739, affirmed in part and reversed in part. Certiorari was granted.

Holding: Abrogating *In re Ames Dept. Stores, Inc.*, 76 F.3d 66; *In re Top Grade Sausage, Inc.*, 227 F.3d 123; and *In re Century Cleaning Services, Inc.*, 195 F.3d 1053, the United States Supreme Court, Justice Kennedy, held that bankruptcy statute governing compensation of professionals does not allow Chapter 7 debtor's attorney to be compensated from estate, unless attorney is employed by trustee with approval of bankruptcy court.

Affirmed.

Justice Stevens concurred in judgment and filed opinion, in which Justice Souter and Justice Breyer joined.

West Headnotes

[1] Bankruptcy ⚷3174
51k3174

Bankruptcy statute governing compensation of professionals does not allow Chapter 7 debtor's attorney to be compensated from estate, unless attorney is employed by trustee, as authorized under bankruptcy statute governing employment of professional persons by trustee, with approval of bankruptcy court; abrogating *In re Ames Dept. Stores, Inc.*, 76 F.3d 66; *In re Top Grade Sausage, Inc.*, 227 F.3d 123; and *In re Century Cleaning Services, Inc.*, 195 F.3d 1053. Bankr.Code, 11 U.S.C.A. §§ 327, 330(a)(1).

[2] Statutes ⚷188
361k188

[2] Statutes ⚷223.1
361k223.1

Starting point in discerning Congressional intent is existing statutory text, and not predecessor statutes.

[3] Statutes ⚷181(2)
361k181(2)

[3] Statutes ⚷188
361k188

When statute's language is plain, sole function of courts, at least where the disposition required by statute's text is not absurd, is to enforce statute according to its terms.

[4] Statutes ⚷190
361k190

[4] Statutes ⚷217.2
361k217.2

Mere fact that statute is awkward, or even ungrammatical, does not make it ambiguous, so as to permit court to resort to its legislative history in interpreting it.

[5] Statutes ⚷202
361k202

[5] Statutes ⚷206
361k206

Surplusage does not always produce ambiguity, and court's preference for construing statute so as to avoid surplusage is not absolute.

[6] Statutes ⚷206
361k206

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group
157 L.Ed.2d 1024, 72 USLW 4152, 50 Collier Bankr.Cas.2d 1299,
42 Bankr.Ct.Dec. 122, Bankr. L. Rep. P 80,038, 04 Cal. Daily Op. Serv. 638,
2004 Daily Journal D.A.R. 805, 17 Fla. L. Weekly Fed. S 119
(Cite as: 540 U.S. 526, 124 S.Ct. 1023)

Page 53

When there are two ways to read statute's text, under one of which the text is plain but certain language is mere surplusage, and under the other of which there is no surplusage but text is ambiguous, it is inappropriate, absent other indications, to apply rule against surplusage constructions.

[7] Constitutional Law ⚿2474
92k2474
    (Formerly 92k70.1(2))

There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.

[8] Constitutional Law ⚿2473
92k2473
    (Formerly 92k70.1(2))

It is beyond court's province, when construing statute, to rescue Congress from its drafting errors, and to provide for what court might think is preferred result.

**1025 Syllabus [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Before 1994, § 330(a) of the Bankruptcy Code authorized a court to "award to a trustee, *to* an examiner, *to* a professional person employed under section 327 ..., or *to the debtor's attorney*" "(1) reasonable compensation for ... services rendered by such trustee, examiner, professional person, or attorney ... ." (Emphasis added to highlight text later deleted.) In 1994 Congress amended the Code with a reform Act. The Act altered § 330(a) by deleting "or to the debtor's attorney" from what was § 330(a) and is now § 330(a)(1). This change created an apparent legislative drafting error in the current section. The section is left with a missing "or" that infects its grammar. And its inclusion of "attorney" in what was § 330(a)(1) and is now § 330(a)(1)(A) defeats the neat parallelism that otherwise marks the relationship between current § § 330(a)(1) ("trustee, ... examiner, [or] professional person") and 330(a)(1)(A) ("trustee, examiner, professional person, or attorney"). In this case, petitioner filed an application with the Bankruptcy Court seeking attorney's fees under § 330(a)(1) for the time he spent working on behalf of a debtor in a Chapter 7 proceeding. The Government objected to the application. It argued that § 330(a) makes no provision for the estate to compensate an attorney who is not employed by the estate trustee and approved by the court under § 327. Petitioner admitted he was not employed by the trustee and approved by the court under § 327, but nonetheless contended § 330(a) authorized a fee award to him because he was a debtor's attorney. In denying petitioner's application, the Bankruptcy Court, District Court, and Fourth Circuit all held that in a Chapter 7 proceeding § 330(a)(1) does not authorize payment of attorney's fees unless the attorney has been appointed under § 327.

*Held:* Under the Code's plain language, § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327. If the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter 7 case, he must be employed by the trustee and approved by the court. Pp. 1029-1034.

(a) Petitioner argues that this Court must look to legislative history to determine Congress' intent because the existing statutory text is *527 ambiguous in light of its predecessor. He claims that subsection (A)' s "attorney" is facially irreconcilable with the section's first part since the two parts' lists were previously parallel. He claims also that only a drafting error can explain the missing conjunction "or" between "an examiner" and "a professional person" since the text was previously grammatically correct. The starting point in discerning congressional intent, however, is the existing statutory text, *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 119 S.Ct. 755, 142 L.Ed.2d 881, and not predecessor statutes. So this Court begins with the present statute. Pp. 1029-1030.

(b) That the present statute is awkward, and even ungrammatical, does not make it ambiguous on the point at issue. A debtor's attorney not engaged under § 327 does not fall within the eligible class of persons that the first part of § 330(a)(1) authorizes to receive compensation: trustees, examiners, and § 327 professional **1026 persons. Subsection (A) allows compensation for services rendered by four types of persons (the same three plus attorneys), but unless an applicant is in one of the classes named in the first part, the kind of service rendered is irrelevant. The missing "or" does not change this conclusion. Numerous federal statutes inadvertently lack a conjunction, but are read for their plain meaning. Here, the missing "or" neither alters the text's substance nor obscures its meaning. Subsection

(C) 2007 West Group

Page 54

157 L.Ed.2d 1024, 72 USLW 4152, 50 Collier Bankr.Cas.2d 1299,
42 Bankr.Ct.Dec. 122, Bankr. L. Rep. P 80,038, 04 Cal. Daily Op. Serv. 638,
2004 Daily Journal D.A.R. 805, 17 Fla. L. Weekly Fed. S 119
(Cite as: 540 U.S. 526, 124 S.Ct. 1023)

(A)'s nonparalleled fourth category also does not cloud the statute's meaning. "Attorney" can be straightforwardly read to refer to those attorneys who qualify as § 327 professional persons. Likewise, neighboring § 331, which permits both debtors' attorneys and § 327 professional persons to receive interim compensation, most straightforwardly refers to § 327 debtors' attorneys. This reading may make "attorney" in § 330(a)(1)(A) surplusage, but surplusage does not always produce ambiguity. When there are two ways to read the text--either attorney is surplusage, which makes the text plain, or attorney is nonsurplusage, which makes the text ambiguous--applying a rule against surplusage is inappropriate. Pp. 1030-1031.

(c) The plain meaning that § 330(a)(1) sets forth does not lead to absurd results. Petitioner's arguments--that this Court's interpretation will lead to a departure from the principle of prompt and effectual administration of bankruptcy law and attributes to Congress an intent to eliminate compensation essential to debtors' receipt of legal services--overstate § 330(a)(1)'s effect. Compensation remains available through various permitted means. Compensation for debtors' attorneys in Chapter 12 and 13 bankruptcies, for example, is not much disturbed by § 330 as a whole. Moreover, compensation for debtors' attorneys in Chapter 7 proceedings is not altogether prohibited. Sections 327 and *528 330, taken together, allow Chapter 7 trustees to engage attorneys, including debtors' counsel, and allow courts to award them fees. Section 327's limitation on a debtor's incurring debts for professional services without the trustee's approval also advances the trustee's responsibility for preserving the Chapter 7 estate. Add to this the apparent sound functioning of the bankruptcy system in the Fifth and Eleventh Circuits, which have both adopted the plain meaning approach, and petitioner's arguments become unconvincing. And § 330(a)(1) does not prevent a debtor from engaging in the common practice of paying counsel compensation in advance to ensure that a bankruptcy filing is in order. Pp. 1031-1032.

(d) With a plain, nonabsurd meaning in view, this Court will not read "attorney" in § 330(a)(1)(A) to refer to "debtors' attorneys," in effect enlarging the statute's scope. See *Iselin v. United States,* 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566. This Court's unwillingness to soften the import of Congress' chosen words even if it believes the words lead to a harsh outcome is longstanding. P. 1032.

(e) Though it is unnecessary to rely on the 1994 Act's legislative history, it is instructive to note that the history creates more confusion than clarity about the congressional intent. History and policy considerations lend support both to petitioner's interpretation and to the holding reached here. This uncertainty illustrates the difficulty of relying on legislative history and the advantage of resting on the statutory text. Pp. 1033-1034.

290 F.3d 739, affirmed.

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined, and in which SCALIA, J., joined except for **1027 Part III. STEVENS, J., filed an opinion concurring in the judgment, in which SOUTER and BREYER, JJ., joined, *post,* p. 1035.

Thomas C. Goldstein, Washington, DC, for petitioner.

Lisa S. Blatt, Washington, DC, for respondent.

John M. Lamie, Browning, Lamie & Gifford, Abingdon, VA, Thomas C. Goldstein, Counsel of Record, Amy Howe, Goldstein & Howe, P.C., Washington, DC, G. Eric Brunstad, Jr., New Haven, CT, John A. E. Pottow, Assistant Professor of Law, University of Michigan Law School, Ann Arbor, MI, Craig Goldblatt, Andrew Currie, Wilmer, Cutler & Pickering, Washington, DC, for the petitioner.

Joseph A. Guzinski, General Counsel, P. Matthew Sutko, Attorney, Executive Office for United States Trustees, Washington, D.C, Theodore B. Olson, Solicitor General, Counsel of Record, Peter D. Keisler, Assistant Attorney General, Thomas G. Hungar, Deputy Solicitor General, Lisa S. Blatt, Assistant to the Solicitor General, Department of Justice, Washington, D.C., for the respondent.

Justice KENNEDY delivered the opinion of the Court. [FN*]

FN* Justice SOUTER and Justice BREYER join this opinion in its entirety. Justice SCALIA joins this opinion except for Part III.

*529 Section 330(a)(1) of the Bankruptcy Code, 11 U.S.C. § 330(a)(1), regulates court awards of professional fees, including fees for services rendered by attorneys in connection with bankruptcy proceedings. Petitioner, a bankruptcy attorney, sought compensation under the section for legal services he provided to a bankrupt debtor after the proceeding was converted to a

(C) 2007 West Group
157 L.Ed.2d 1024, 72 USLW 4152, 50 Collier Bankr.Cas.2d 1299,
42 Bankr.Ct.Dec. 122, Bankr. L. Rep. P 80,038, 04 Cal. Daily Op. Serv. 638,
2004 Daily Journal D.A.R. 805, 17 Fla. L. Weekly Fed. S 119
(Cite as: 540 U.S. 526, 124 S.Ct. 1023)

Page 55

Chapter 7 bankruptcy. His application for fees was denied by the Bankruptcy Court, the District Court, and the United States Court of Appeals for the Fourth Circuit. Each court held that in a Chapter 7 proceeding § 330(a)(1) does not authorize payment of attorney's fees unless the attorney has been appointed under § 327 of the Code. See 11 U.S.C. § § 327 and 701 *et seq*. Petitioner was not so appointed, and his fee request was denied. Having granted the petition for certiorari to review this holding, we now affirm.

I

In 1994 Congress amended the Bankruptcy Code. Bankruptcy Reform Act of 1994(Act), 108 Stat. 4106. The subject of professional fees was addressed and comprehensive changes were made. See 3 Collier on Bankruptcy ¶ 330.LH[5], pp. 330-75 to 330-76 (rev. 15th ed.2003). Most of the changes served to clarify the standards for the award of professional fees; but various courts disagree over the proper interpretation of the portion of the statute relevant to this dispute, concerning attorney's fees.

The Act replaced the predecessor section to the one in issue here. Compare 108 Stat. 4130-4131 (§ 224(b) of the Act amending 11 U.S.C. § 330(a)) with 11 U.S.C. § 330(a) (1988 ed.). Before the 1994 Act, § 330(a) had read as follows:

> "(a) After notice to *any* parties in interest and *to* the United States trustee and a hearing, and subject to sections *530 326, 328, and 329 *of this title,* the court may award to a trustee, *to* an examiner, **1028 to a professional person employed under section 327 or 1103 *of this title, or to the debtor's attorney*--
>
> "(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney ... and by any paraprofessional persons employed by such trustee, professional person, or attorney ...; and
>
> "(2) reimbursement for actual, necessary expenses." *Ibid.* (emphasis added to highlight text later deleted).

Pursuant to the 1994 Act, 11 U.S.C. § 330(a)(1) now reads as follows:

> "(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103--
>
> "(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> "(B) reimbursement for actual, necessary expenses."

As can be noted, the 1994 enactment's principal, substantive alteration was its deletion of the five words at the end of what was § 330(a) and is now § 330(a)(1): "or to the debtor's attorney."

The deletion created an apparent legislative drafting error. It left current § 330(a)(1) with a missing "or" that infects its grammar *(i.e.,* "an examiner, [or] a professional person ..."). Furthermore, the Act's inclusion of the word "attorney" in § 330(a)(1)(A) defeats the neat parallelism that otherwise marks the relationship between § § 330(a)(1) and 330(a)(1)(A) *(i.e.,* in § 330(a)(1): "trustee, ... examiner, [or] professional person"; in § 330(a)(1)(A): "trustee, examiner, professional *531 person, or attorney") and so casts some doubt on the proper presence of "attorney." That the pre-1994 text had no grammatical error and was parallel in its structure strengthens the sense that error exists in the new text.

The Courts of Appeals for the Fifth and Eleventh Circuits, when asked to interpret current § 330(a)(1), concluded that its language was plain irrespective of these quirks and history. Under the statutory language as written, those courts held, fees may be awarded to attorneys for services rendered only to the extent they are payments to "a professional person employed under section 327," see, *e.g.,* § 327(a) (authorizing an appointed trustee in a Chapter 7 bankruptcy action to "employ one or more attorneys ... to represent or assist the trustee in carrying out the trustee's duties under this title"); § 327(e) (authorizing an appointed trustee in a Chapter 7 bankruptcy action to "employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, ..."). See *In re Pro-Snax Distributors, Inc.,* 157 F.3d 414 (C.A.5 1998); *In re American Steel Product, Inc.,* 197 F.3d 1354 (C.A.11 1999). The Courts of Appeals for the Second, Third, and Ninth Circuits, in contrast, concluded that the text's apparent errors rendered the section ambiguous, requiring consideration of the provision's legislative history. That history, those courts held, shows Congress intended § 330(a)(1) to continue to allow compensation of Chapter 7 debtors' attorneys, irrespective of qualification under § 327. *In re Ames Dept. Stores, Inc.,* 76 F.3d 66 (C.A.2 1996); *In re Top Grade Sausage, Inc.,* 227 F.3d 123 (C.A.3 2000); *In re Century Cleaning Services, Inc.,* 195 F.3d 1053 (C.A.9 1999). See also 3

(C) 2007 West Group
157 L.Ed.2d 1024, 72 USLW 4152, 50 Collier Bankr.Cas.2d 1299,
42 Bankr.Ct.Dec. 122, Bankr. L. Rep. P 80,038, 04 Cal. Daily Op. Serv. 638,
2004 Daily Journal D.A.R. 805, 17 Fla. L. Weekly Fed. S 119
(Cite as: 540 U.S. 526, 124 S.Ct. 1023)

Page 56

Collier **1029 on Bankruptcy, *supra*, ¶ 330.LH[5], at 330-75 to 330-76.

This interpretive divide became relevant to petitioner in his representation of Equipment Services, Inc. (ESI). ESI retained petitioner to prepare, file, and prosecute a Chapter 11 bankruptcy proceeding on its behalf. He did so, all the *532 while representing ESI with the approval of the court under § 327. See *In re Equipment Services, Inc.*, 290 F.3d 739, 742 (C.A.4 2002) (case below). See also 11 U.S.C. § 1107(a) (authorizing debtor-in-possession to exercise the statutory rights and powers of an estate trustee, including to retain counsel under § 327). Three months into the Chapter 11 reorganization, the United States Trustee (Government) filed a motion to convert the action into a Chapter 7 liquidation proceeding. The court granted the Government's motion and appointed an estate trustee pursuant to § 701, 11 U.S.C. § 701(a). This terminated ESI's status as debtor-in-possession and so terminated petitioner's service under § 327 as an attorney for the debtor-in-possession. Yet petitioner continued to provide legal services to ESI, the debtor, even though he did not have the trustee's authorization to do so. He prepared reports detailing debts incurred and property acquired since the initial filing; he amended asset schedules; and he appeared at a hearing on an adversary complaint.

In due course petitioner filed an application seeking fees under § 330(a)(1) for the time he spent on ESI's behalf after the Chapter 7 conversion. The Government objected to the application. It argued that § 330(a)(1) makes no provision for the estate to compensate an attorney not authorized under § 327. The court agreed and denied the fees. *In re Equipment Services, Inc.*, 253 B.R. 724 (Bankr.W.D.Va.2000). (Petitioner was paid fees for the services he provided to ESI before conversion of the proceeding to Chapter 7 and when ESI was the debtor-in-possession. The parties do not contest those fees.)

Petitioner unsuccessfully sought reversal of the Bankruptcy Court's determination, first from the District Court, see *In re Equipment Services, Inc.*, 260 B.R. 273 (W.D.Va.2001), then from the Court of Appeals, see 290 F.3d 739 (C.A.4 2002). Both courts concluded the plain language of § 330(a)(1) controlled and that attorneys who provide services to debtors in Chapter 7 proceedings must be hired by *533 the trustee under § 327 to be eligible for compensation. The Court of Appeals acknowledged that its holding deepened the divide among the various Circuits, but held fast to the statute's plain language, "particularly because application of that plain language supports a reasonable interpretation of the Bankruptcy Code," *id.*, at 745. We granted the petition for certiorari, 538 U.S. 905, 123 S.Ct. 1480, 155 L.Ed.2d 223 (2003), and now resolve the issue.

II

[1] Petitioner argues that the existing statutory text is ambiguous and so requires us to consult legislative history to determine whether Congress intended to allow fees for services rendered by a debtor's attorney in a Chapter 7 proceeding, where that attorney is not authorized under § 327. He makes the case for ambiguity, for the most part, by comparing the present statute with its predecessor. Thus, he says the statute is ambiguous because subsection (A)'s "attorney" is "facially irreconcilable" with the section's first part since

> "[e]ither Congress inadvertently omitted the 'debtor's attorney' from the 'payees' list, on which the court of appeals relied, or it inadvertently retained the reference to the attorney in the latter, 'payees' list." Brief for Petitioner 17.

Similarly, with respect to the missing conjunction "or" he says,

> **1030 "[t]here is no apparent reason, other than a drafting error, that Congress would have rewritten the statute to produce a grammatically incorrect provision." *Ibid.*

This is the analysis followed by the Courts of Appeals that hold the statute is ambiguous. See *In re Top Grade Sausage, supra*, at 129 (noting in its search for ambiguity that "[p]rior to amendment, it was undisputed that the repetition of officers in § 330(a)(1)(A) was meant to parallel the officers *534 previously listed in § 330(a)(1)"); see also *In re Century Cleaning Services*, 195 F.3d, at 1057-1058 (engaging in same resort to previous enactment to inquire as to the current text's ambiguity). One determines ambiguity, under this contention, by relying on the grammatical soundness of the prior statute. That contention is wrong.

[2][3] The starting point in discerning congressional intent is the existing statutory text, see *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999), and not the predecessor statutes. It is well established that "when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), in turn quoting *Caminetti v. United*

(C) 2007 West Group
157 L.Ed.2d 1024, 72 USLW 4152, 50 Collier Bankr.Cas.2d 1299,
42 Bankr.Ct.Dec. 122, Bankr. L. Rep. P 80,038, 04 Cal. Daily Op. Serv. 638,
2004 Daily Journal D.A.R. 805, 17 Fla. L. Weekly Fed. S 119
(Cite as: 540 U.S. 526, 124 S.Ct. 1023)

Page 57

*States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). So we begin with the present statute.

### A

[4] The statute is awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue. In its first part, the statute authorizes an award of compensation to one of three types of persons: trustees, examiners, and § 327 professional persons. A debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation. In subsection (A) the statute further defines what type of compensation may be awarded: compensation that is reasonable; and for actual, necessary services; and rendered by four types of persons (the same three plus attorneys). Unless the applicant for compensation is in one of the named classes of persons in the first part, the kind of service rendered is irrelevant.

The missing conjunction "or" does not change our conclusion. The Government points to numerous federal statutes that inadvertently lack a conjunction. They are read, nonetheless, *535 for their plain meaning. See Brief for Respondent 17, n. 4. Here, the missing conjunction neither alters the text's substance nor obscures its meaning. This is not a case where a "not" is missing or where an "or" inadvertently substitutes for an "and." The sentence may be awkward; yet it is straightforward.

Subsection (A)'s nonparalleled fourth category of persons who can render compensable services does not cloud the statute's meaning. Petitioner reasons that since the section is a single sentence, and since it appears to strive for parallelism between those authorized to receive fees and those whose services are compensable, there is an ambiguity as to what "attorney" in § 330(a)(1)(A) refers to in § 330(a)(1). He also points to neighboring § 331, which provides for both debtors' attorneys and § 327 professional persons to receive interim compensation after an order for relief is entered but before an application for § 330 fees is filed. He argues that since § 331 contemplates debtors' **1031 attorneys' receiving interim compensation there is reason to conclude that "attorney" in § 330(a)(1)(A) refers to debtors' attorneys in § 330(a)(1), though they go unmentioned in that clause.

Subsection (A)'s "attorney," however, can be read in a straightforward fashion to refer to those attorneys whose fees are authorized by § 330(a)(1): attorneys qualified as § 327 professional persons, that is, in a Chapter 7 context, those employed by the trustee and approved by the court. See § 327(a) (appointed trustee may "employ one or more attorneys ... to represent or assist the trustee in carrying out the trustee's duties under this title); § 327(e) (appointed trustee may "employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, ..."). Likewise, § 331's reference to interim compensation for debtors' attorneys most straightforwardly refers to debtors' attorneys authorized under § 327.

[5][6] *536 It must be acknowledged that, under our reading of the text, the word "attorney" in subsection (A) may well be surplusage. Subsection (A)'s reference to § 327 professional persons undoubtedly includes attorneys, as much as does § 330(a)(1)'s reference to professional persons. That is not controlling, however. Surplusage does not always produce ambiguity and our preference for avoiding surplusage constructions is not absolute. See *Chickasaw Nation v. United States*, 534 U.S. 84, 94, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (the preference "is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute'"). Where there are two ways to read the text--either attorney is surplusage, in which case the text is plain; or attorney is nonsurplusage (*i.e.*, it refers to an ambiguous component in § 330(a)(1)), in which case the text is ambiguous--applying the rule against surplusage is, absent other indications, inappropriate. We should prefer the plain meaning since that approach respects the words of Congress. In this manner we avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history.

### B

The plain meaning that § 330(a)(1) sets forth does not lead to absurd results requiring us to treat the text as if it were ambiguous. See *supra*, at 1030 (citing *Hartford Underwriters*). Petitioner disagrees and argues that our interpretation will "entail an inexplicable, wholesale departure from ... the guiding principle of the 'prompt and effectual administration' of federal bankruptcy law." Brief for Petitioner 30. He says that our reading "attribute[s] to Congress an illogical, penny-wise and pound-foolish determination to eliminate entirely--as a purportedly asset-preserving measure--compensation that is essential to debtors' receipt of legal services." *Id.*, at 35.

These arguments overstate the effect of § 330(a)(1). Under the text's instruction compensation remains available to *537 debtors' attorneys through various permitted means. First, while § 330(a)(1) requires proper authorization for payment to attorneys from estate funds in Chapter 7 filings, it does not extend throughout all

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2007 West Group
Page 58
157 L.Ed.2d 1024, 72 USLW 4152, 50 Collier Bankr.Cas.2d 1299,
42 Bankr.Ct.Dec. 122, Bankr. L. Rep. P 80,038, 04 Cal. Daily Op. Serv. 638,
2004 Daily Journal D.A.R. 805, 17 Fla. L. Weekly Fed. S 119
(Cite as: 540 U.S. 526, 124 S.Ct. 1023)

bankruptcy law. Compensation for debtors' attorneys in Chapter 12 and 13 bankruptcies, for example, is not much disturbed by § 330 as a whole. See, e.g., 11 U.S.C. § 330(a)(4)(B) ("In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney").

Compensation for debtors' attorneys working on Chapter 7 bankruptcies, moreover, is not altogether prohibited. Sections **1032 327 and 330, taken together, allow Chapter 7 trustees to engage attorneys, including debtors' counsel, and allow courts to award them fees. See § § 327(a) and (e). Section 327's limitation on debtors' incurring debts for professional services without the Chapter 7 trustee's approval is not absurd. In the context of a Chapter 7 liquidation it advances the trustee's responsibility for preserving the estate.

If we add to all this the apparent sound functioning of the bankruptcy system under the plain meaning approach, petitioner's arguments become unconvincing. Seeming order has attended the rule's application for five years in the Fifth Circuit and for four years in the Eleventh Circuit. See In re American Steel Product, Inc., 197 F.3d 1354 (C.A.11 1999); In re Pro-Snax Distributors, Inc., 157 F.3d 414 (C.A.5 1998). It appears to be routine for debtors to pay reasonable fees for legal services before filing for bankruptcy to ensure compliance with statutory requirements. See generally Collier Compensation, Employment and Appointment of Trustees and Professionals in Bankruptcy Cases ¶ 3.02[1], p. 3-2 (2002) ("In the majority of cases, the debtor's counsel will accept an individual or a joint consumer chapter 7 case only after being paid a retainer that covers the 'standard fee' and the cost of filing the petition"). So our interpretation accords with common practice. Section 330(a)(1) does not *538 prevent a debtor from engaging counsel before a Chapter 7 conversion and paying reasonable compensation in advance to ensure that the filing is in order. Indeed, the Code anticipates these arrangements. See, e.g., § 329 (debtors' attorneys must disclose fees they receive from a debtor in the year prior to its bankruptcy filing and courts may order excessive payments returned to the estate).

C

[7] Petitioner's argument stumbles on still harder ground in the face of another canon of interpretation. His interpretation of the Act--reading the word "attorney" in § 330(a)(1)(A) to refer to "debtors' attorneys" in § 330(a)(1)--would have us read an absent word into the statute. That is, his argument would result "not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope." Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926). With a plain, nonabsurd meaning in view, we need not proceed in this way. "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).

Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." United States v. Locke, 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (citing Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962)).

Adhering to conventional doctrines of statutory interpretation, we hold that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327. If the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter *539 7 case, he must be employed by the trustee and approved by the court.

**1033 III

Though we find it unnecessary to rely on the legislative history behind the 1994 enactment of § 330(a)(1), we find it instructive that the history creates more confusion than clarity about the congressional intent. History and policy considerations lend support both to petitioner's interpretation and to the holding we reach based on the plain language of the statute.

Petitioner, for instance, cites evidence supporting the conclusion that a scrivener's error obscures what was Congress' real intent. For over 100 years debtors' attorneys have been considered by Congress and the courts to be an integral part of the bankruptcy process. See Bankruptcy Act of 1898, ch. 541, § § 59(d) and 64(b), 30 Stat. 561, 563. See also In re Kross, 96 F. 816 (S.D.N.Y.1899). It is fair to doubt that Congress would so rework their longstanding role without announcing the change in the congressional record. Cf. Cohen v. de la Cruz, 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) ("We ... will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure" (internal quotation marks and citation omitted)).

The legislative processes behind the change also lend some support to petitioner's claim. In 1994 the original

(C) 2007 West Group
157 L.Ed.2d 1024, 72 USLW 4152, 50 Collier Bankr.Cas.2d 1299,
42 Bankr.Ct.Dec. 122, Bankr. L. Rep. P 80,038, 04 Cal. Daily Op. Serv. 638,
2004 Daily Journal D.A.R. 805, 17 Fla. L. Weekly Fed. S 119
(Cite as: 540 U.S. 526, 124 S.Ct. 1023)

Page 59

proposed draft of new § 330(a)(1) featured two changes: stylistic changes throughout the section and the addition of a new provision giving the Government a right to object to fee applications. See S. 540, 103d Cong., 1st Sess. (1993), reprinted in S.Rep. No. 103-168 (1993). The right to object provision was added at § 330(a)(1)'s end. Thus it came immediately after the critical text "or to the debtor's attorney," which the draft edited to read "or the debtors [sic] attorney." Ibid. Before voting the Act into law, however, Congress amended the proposed draft. See 140 Cong. Rec. 8383 *540 1994) (setting out amendment 1645 to S. 540). Amendment 1645 made only two changes to § 330(a)(1): It deleted the Government's right to object provision and the critical words ("or the debtors [sic] attorney"). The rest of the original proposed draft remained intact. Legislative history explains the first deletion, for the provision was installed elsewhere, as new § 330(a)(2). Nothing, however, explains the second. That the Government's right to object was deleted and reinstated (i.e., reorganized), while the words at issue, which had preceded the moved provision, were deleted with no notation in the legislative history suggests the scrivener just reached too far in his deletion. These factors combined to convince a leading treatise on bankruptcy law, Collier, that the deletion was a scrivener's error and ought not have any effect. See 3 Collier on Bankruptcy ¶ 330.LH[5], at 330-75 to 330-76.

There are other aspects of the legislative record, however, that undermine this interpretation. These considerations suggest Congress may have intended the change the scrivener worked. For example, amendment 1645 was part of a reform Act designed to curtail abuses in fee awards, according to statements by the amendment's sponsor. See 140 Cong. Rec., at 28753 (statement of Sen. Metzenbaum). These abuses were not ghosts seen only by Congress. Some bankruptcy courts had reached the same conclusion. See, e.g., In re NRG Resources, Inc., 64 B.R. 643 (W.D.La.1986). The deletion at issue furthered this reform by ensuring that Chapter 7 debtors' attorneys would receive no estate compensation absent the trustee's authorization of their work. This objective is not inconsistent with the interest of involving debtors' attorneys in bankruptcy proceedings. As noted, the Act **1034 still allows debtors' attorneys to be compensated in different ways. See supra, at 1031-1032.

Amendment 1645, viewed in its entirety, gives further reason to think Congress may have intended the change. The amendment added a new section that authorizes fee awards *541 to debtors' attorneys in Chapter 12 and 13 bankruptcies. 140 Cong. Rec., at 8383 (setting out new 11 U.S.C. § 330(a)(4)(B)). Since the amendment's deletion of "or the debtors [sic] attorney" from the original proposed draft affected Chapter 12 and 13 debtors' attorneys as much as Chapter 7 debtors' attorneys, § 330(a)(4)(B) shows a special intent to authorize the formers' fee awards in the face of the new, broad exclusion.

If Congress' action does not prove the point, the House of Representatives' inaction may. The House passed the Act after having the deletion, as well as its impact, called to its attention. See Bankruptcy Reform: Hearing before the Subcommittee on Economic and Commercial Law of the House Committee on the Judiciary, 103d Cong., 2d Sess., 551 (1994). The National Association of Consumer Bankruptcy Attorneys (NACBA), which represents those lawyers most likely to be affected by § 330(a)(1)'s change, declined to object to the deletion. Ibid. (noting the deletion but stating that the NACBA did "not oppose" amendment 1645's passage). This alert, followed by the Legislature's nonresponse, should support a presumption of legislative awareness and intention. The Act may now contain surplusage, along with grammatical error; but that may have been the result of trying to make the substantive change with the fewest possible textual alterations or of an error by the scrivener in carrying out the change.

These competing interpretations of the legislative history make it difficult to say with assurance whether petitioner or the Government lays better historical claim to the congressional intent. The alert to the change in policy was given, to be sure, before the House passed the final version, but that particular circumstance cannot bear too much weight. The alert was not the subject of testimony from any witness at the congressional hearing. It consisted of but two sentences contained within 472 pages of written statements delivered to the legislative subcommittee for its August 17, *542 1994, hearing day. Those 472 pages were added to 236 pages of prepared statements and testimony transcribed from the day's testifying witnesses. Within the NACBA's filing, the two relevant sentences appear on the 18th page of the 27- page report. Nothing in the legislative history confirms that this particular point bore on the congressional deliberations or was given specific consideration.

These uncertainties illustrate the difficulty of relying on legislative history here and the advantage of our determination to rest our holding on the statutory text.

\* \* \*

[8] If Congress enacted into law something different

(C) 2007 West Group
157 L.Ed.2d 1024, 72 USLW 4152, 50 Collier Bankr.Cas.2d 1299,
42 Bankr.Ct.Dec. 122, Bankr. L. Rep. P 80,038, 04 Cal. Daily Op. Serv. 638,
2004 Daily Journal D.A.R. 805, 17 Fla. L. Weekly Fed. S 119
(Cite as: 540 U.S. 526, 124 S.Ct. 1023)

Page 60

from what it intended, then it should amend the statute to conform it to its intent. "It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result." *United States v. Granderson*, 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (concurring opinion). This allows both of our branches to adhere to our respected, and respective, constitutional roles. In the meantime, we must determine intent from the statute before us. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

**1035 Justice STEVENS, concurring in the judgment, joined by Justice SOUTER and Justice BREYER, concurring.

As the majority recognizes, *ante*, at 1033, a leading bankruptcy law treatise concluded that the 1994 amendments to § 330(a)(1) contained an unintended error. 3 Collier on Bankruptcy ¶ 330.LH[5], pp. 330-75 to 330-76 (rev. 15th ed.2003). Whenever there is such a plausible basis for believing that a significant change in statutory law resulted from a scrivener's error, I believe we have a duty to examine legislative *543 history. [FN1] In this case, that history reveals that the National Association of Consumer Bankruptcy Attorneys (NACBA) not only called the assumed drafting error to Congress' attention in a timely fashion, but also deemed the error unworthy of objection. [FN2] This evidence convinces me that the Court's reading of the text, which surely is more natural than petitioner's, is correct. I therefore concur in the judgment.

FN1. As Chief Justice Marshall stated, "Where the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived ...." *United States v. Fisher*, 2 Cranch 358, 386, 2 L.Ed. 304 (1805).

FN2. See *ante*, at 1034. Specifically, three months after the Senate passed the relevant amendment, the NACBA submitted written comments to the House Subcommittee on Economic and Commercial Law, which was considering the change. Those comments first noted that the amended version of § 330(a)(1) "appears to have some minor drafting errors, including the apparently inadvertent removal of debtors' attorneys from the list of professionals whose compensation awards are covered." Bankruptcy Reform: Hearing before the Subcommittee on Economic and Commercial Law of the House Committee on the Judiciary, 103d Cong., 2d Sess., 551 (1994). With no proviso that these alleged errors be corrected, the NACBA then expressly did *"not* oppose" passage of the amendment. *Ibid.* (emphasis added).

540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024, 72 USLW 4152, 50 Collier Bankr.Cas.2d 1299, 42 Bankr.Ct.Dec. 122, Bankr. L. Rep. P 80,038, 04 Cal. Daily Op. Serv. 638, 2004 Daily Journal D.A.R. 805, 17 Fla. L. Weekly Fed. S 119

END OF DOCUMENT

**H**

United States Bankruptcy Court,

D. Massachusetts,

Eastern Division.

In re Edward G. LEROUX, Jr., Debtor.
Bankruptcy No. 92-20403-WCH.

Dec. 18, 1997.

Chapter 11 debtor objected to creditors' claims arising from default judgments that creditors obtained in New Jersey based upon debtor's gambling debts. Debtor subsequently requested, and was granted, order suspending further proceedings on its claims objection pending resolution of litigation concerning confirmation order. Debtor then filed amended objection to claims and, after bankruptcy court entered order sustaining objections, creditors moved for reconsideration on ground that claims objection procedure in case was confusing. Debtor objected to reconsideration, and official committee of unsecured creditors supported it. The Bankruptcy Court, William C. Hillman, J., held that: (1) reconsideration of order sustaining objections was warranted; (2) for res judicata purposes, individual debtor-in-possession is same entity as prepetition debtor; and (3) under New Jersey law, default judgments were entitled to full faith and credit.

Order vacated and amended objection to claims overruled.

West Headnotes

[1] Bankruptcy ⚷2933
51k2933

Reconsideration of bankruptcy court's order sustaining Chapter 11 debtor's claims objections was warranted, even under strict "excusable neglect" standard, where creditors had been active members of creditors committee during five years of case and had filed timely proofs of claim, creditors asserted that they failed to respond to debtor's amended objection to claims because of confusing suspension order, creditors acted in good faith in mistakenly relying on suspension order and misguided offer of assistance from committee counsel in resolving matter, there was no prejudice to debtor in reviewing creditors' claims, and reconsideration did not prejudice other creditors. Bankr.Code, 11 U.S.C.A. § 502(j); Fed.Rules Bankr.Proc.Rule 9024, 11 U.S.C.A.; Fed.Rules Civ.Proc.Rule 60(b), 28 U.S.C.A.

[2] Bankruptcy ⚷2002
51k2002

Under full faith and credit statute, bankruptcy court must give judgments from another state same preclusive effect in its court that other state would provide. 28 U.S.C.A. § 1738.

[3] Judgment ⚷815
228k815

Under New Jersey law, judgment will not be given full faith and credit if rendering court lacked in personam jurisdiction, subject matter jurisdiction, or failed to provide adequate notice and opportunity to be heard.

[4] Judgment ⚷540
228k540

Under New Jersey law, there are three elements to doctrine of res judicata: judgment relied upon must be valid, final, and on the merits; parties in two actions must be either identical or in privity with one another; and claims must grow out of same transaction or occurrence.

[5] Judgment ⚷652
228k652

Under New Jersey law, default judgments may be given res judicata effect.

[6] Equity ⚷62
150k62

Courts of equity are bound to follow express statutory commands to same extent as are courts of law.

[7] Bankruptcy ⚷2124.1
51k2124.1

Bankruptcy courts are no more entitled to ignore the law than are other courts of equity.

[8] Judgment ⚷665
228k665

For res judicata purposes, individual debtor-in-possession is same entity as prepetition debtor.

[9] Judgment ⚷828.21(2)
228k828.21(2)

Creditors' prepetition New Jersey default judgments, based upon Chapter 11 debtor's gambling debts, were

(C) 2007 West Group
(Cite as: 216 B.R. 459)

Page 86

entitled to full faith and credit in claims proceeding in Massachusetts bankruptcy court; there was no allegation that New Jersey court lacked in personam jurisdiction, subject matter jurisdiction, or failed to provide notice and opportunity to be heard, New Jersey applied res judicata to default judgments, any distinction between individual debtor-in-possession and prepetition debtor was meritless, so that parties in New Jersey actions were same as parties in claims proceeding, claims were identical, and it was irrelevant that Massachusetts public policy purportedly weighed against enforcing gambling debts, since it was law of New Jersey that applied. Bankr.Code, 11 U.S.C.A. § 502(b)(1); 28 U.S.C.A. § 1738.

*460 Andrew L. Cohen, Timothy R. Epp, Douglas R. Gooding, Paul D. Moore, Choate, Hall & Stewart, Boston, MA, for debtor.

Patrick G. Waters, Gargill, Sassoon & Rudolf, Boston, MA, for Creditor Committee.

Gary W. Cruikshank, Boston, MA, for Movants.

### DECISION REGARDING MOTIONS FOR RECONSIDERATION OF ORDER WITH RESPECT TO DEBTOR'S FIRST AMENDED OMNIBUS OBJECTION TO CLAIMS

WILLIAM C. HILLMAN, Bankruptcy Judge.

I. *Introduction*

I consolidated for consideration three motions for reconsideration of the Order With Respect to Debtor's First Amended Omnibus Objection to Claims Pursuant to 11 U.S.C. § 502 and Fed.R.Bankr.P. 3007 (the "Order"). In essence, three creditors ask that I reconsider the Order on the grounds that the claims objection procedure in this case was confusing. The Official Committee of Unsecured Creditors (the "Committee") supports reconsideration. The Debtor objects to the motions asserting that the procedure was clear and that, in any event, the underlying claims cannot be allowed because they are void as against the public policy of Massachusetts.

*461 II. *Background*

On October 8, 1996, I entered an order confirming the Debtor's Amended Plan of Reorganization (the "Confirmation Order"). Pursuant to the terms of the Confirmation Order, the Debtor was to file any objections to proofs of claims on or before 90 days after the Effective Date of the Amended Plan.

On January 14, 1997, the Debtor filed a "Motion to Extend Time Within Which to Object to Claims" in which he sought an extension until February 28, 1997 to file any objections to claims (the "Extension Motion"). I granted that motion on January 22, 1997.

Also on January 14, 1997, Judge Woodlock of the United States District Court for the District of Massachusetts entered an order vacating the Confirmation Order and remanding confirmation proceedings to this Court.

On January 17, 1997, the Debtor filed "Debtor's Omnibus Objection to Claims Pursuant to 11 U.S.C. § 502 and Fed.R.Bankr.P. 3007" (the "Omnibus Objection"). Also on that date, the Debtor filed "Debtor's Motion for Order Suspending Further Proceedings with Respect to Debtor's Objections to Claims Pending Resolution of Confirmation" (the "Suspension Motion"). In the Suspension Motion, the Debtor sought "... an order suspending further proceedings on the Debtor's omnibus objection to claims which has been filed simultaneously herewith ... pending this Court's resolution of litigation concerning the ... [Confirmation Order] entered by this Court on October 8, 1996, but subsequently vacated ..." Suspension Motion at p. 1. [FN1]

FN1. In paragraph 5 of the Suspension Motion the Debtor stated the following: Accordingly, the Debtor, in filing the Objection with this Court merely to preserve the status quo, has not served the Objection on claimants. The Debtor proposed that neither a hearing nor a related objection deadline be established with respect to the Objection until litigation before this Court on the Confirmation Order is concluded. Suspension Motion, p. 2-3.

In the "WHEREFORE" clause of the Suspension Motion the Debtor requested that the Court enter an order as follows:
1. Suspending further proceedings with respect to the Objection pending further order of this Court;
2. Providing the Debtor need not serve the Objection on affected claimants until after litigation concerning the Confirmation Order is resolved by this Court;
3. Providing that claimants are not required to respond to the Objection and no hearing will be scheduled on the Objection until further order of the Court; and
4. Granting the Debtor such other and further relief as this Court deems just and proper.

On January 22, 1997, I granted the Extension and Suspension Motions. On January 29, 1997, counsel to

(C) 2007 West Group
(Cite as: 216 B.R. 459)

Page 87

the Debtor wrote a letter to counsel for the Committee to inform him of the orders granting those motions. He also informed counsel that he would be filing an amended objection to claims by February 28, 1997.

On February 28, 1997, the Debtor filed "Debtor's First Amended Omnibus Objection to Claims Pursuant to 11 U.S.C. § 502 and Fed.R.Bankr.P. 3007" (the "Amended Objection") in which he represented that the Objection "shall amend and supersede [the Omnibus Objection]. On page 2, the Debtor referenced the Suspension Order without explanation. The Court scheduled the Objection for hearing on April 21, 1997 with an objection deadline of April 14, 1997. On March 3, 1997, the Debtor filed a Certificate of Service which indicated that on that date the Debtor served the Objection on parties entitled to notice. On March 6, 1997, the Debtor filed a Certificate of Service which indicated that on that date the Debtor served the Court-generated Notice of Hearing on parties entitled to notice.

Before the hearing, counsel to the Committee contacted counsel to the Debtor to explain that some confusion existed as to the effect of the Suspension Order on the Objection.

At the hearing on April 21, 1997, the Debtor reminded the Court that it had entered the Suspension Order. Debtor's counsel *462 stated that "there may be some confusion in the sense that there is this order granting the stay and there was a notice and response deadline and hearing set for the objection." I replied that I would enter an order that "the stay previously granted does not apply to these claims objections." I also entered the Order which sustained the Debtors objection as to the claims of Adamar of New Jersey, Inc. ("Adamar"), GNOC Corp. ("GNOC"), and Bally's Park Place, Inc. ("Bally's") (collectively the "Creditors"). Oddly, counsel to the Committee did not attend the hearing.

Both before the hearing and after, counsel to the Committee and counsel to the Debtor exchanged conversations and correspondence regarding the Creditors' confusion with respect to whether the Suspension Order remained in place.

On June 18 and August 6, 1997, the Creditors filed motions to reconsider the Orders. Essentially, the Creditors state that although they were served with the Amended Objection and the Notice of Hearing, they failed to respond based upon their belief that the Suspension Order remained in effect.

In his objection to the motions to reconsider, the Debtor disputes that the Creditors were confused by the Suspension Order because they were not served with the Suspension Order or the underlying motion. Further, he argues that there could not have been any confusion because the Amended Objection "referred to the Court's prior orders on the Motion to Extend and on the Extension Motion and, thus, should have made it clear to [the Creditors] that the Amended Objection was not subject to the earlier Suspension Motion or the related order of this Court." The Debtor also points to my findings at the hearing that the Suspension Order was not applicable. Moreover, the Debtor argues that even if there were confusion, that in and of itself is insufficient cause to warrant reconsideration.

The Committee has filed pleadings supporting the reconsideration motions and to apprize the Court of its role in the above-described proceedings. The Committee contends that the events described above created sufficient confusion to warrant reconsideration of the Order. The Committee points out that the Suspension Order requested that the claims objection process be suspended until a further order of the Court. The Notice of Hearing was prohibited by the Suspension order and prior to the hearing in April, no order issued indicating that the Suspension order was vacated. As to the Debtor's argument that the Suspension Order applied to the Omnibus Objection and not the Amended Objection, the Committee states that the Suspension Order suspended all claim proceedings.

I held a hearing on the reconsideration motions at which time counsel reiterated their positions. Thereafter, I gave the parties the opportunity to file memoranda on the matter.

III. *Position of the Parties*

In his memorandum, the Debtor asks the Court to consider applying one of two standards when considering whether to grant reconsideration. The first requires one of the following findings:
    1. the Court has patently misunderstood a party;
    2. the court has made a decision outside the adversarial issues presented by the parties;
    3. the court has made an error not of reasoning but of apprehension; or
    4. there is a controlling or significant change in the law or facts since the submission of the issue to the Court.
*Above The Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983).

The second standard would involve an application of Rule 60(b) which would allow for relief only upon a showing of the following:
    (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which

by due diligence could not have been discovered in time to move for a new trial under Rule 59(b), (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed *463 or otherwise vacated, or it is no longer equitable that the judgment should have any prospective application; or (6) any other reason justifying relief from the operation of the judgment.
Fed.R.Civ.P. 60(b) (applied to bankruptcy proceedings through Fed.R.Bankr.P. 9024).

The Debtor argues that under either standard, "confusion" on the part of the creditors does not warrant reconsideration. Further, the Debtor contends that even if the Court were to grant reconsideration, the Court should deny the claims as they are void as against the public policy of Massachusetts.

In their memoranda, the Creditors argue that the unique procedural posture of the claims procedure and the ensuing confusion warrant reconsideration. Further, they argue that the underlying debts should not be disallowed as against public policy.

IV. *Analysis*

Based upon the forgoing, I am asked to first decide whether reconsideration of the Order is warranted. If the answer is yes, I must then consider whether the underlying claims are allowable.

A. Whether Reconsideration is Appropriate

11 U.S.C. § 502(j) states, in part, that a "claim that has been allowed or disallowed may be reconsidered for cause." Fed.R.Bankr.P. 3008 provides, in part, that a "party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." The question becomes by what standard does this Court determine whether cause has been shown.

Many courts have held that although there is no deadline for filing a motion for reconsideration under § 502, if the motion is filed within 10 days of the order, it should be decided pursuant to the standards under Fed.R.Bank.P. 9023. *Abraham v. Aguilar (In re Aguilar)*, 861 F.2d 873 (5 th Cir.1988); *Tandy Credit Corp. v. Martinez (In re Martinez)*, 179 B.R. 90 (Bankr.N.D.Ill.1994). *But see In re Farley Inc.*, 211 B.R. 889, 892 (Bankr.N.D.Ill.1997) (treating motion for reconsideration filed after 10 days under Rule 9023); *In re Excello Press, Inc.*, 83 B.R. 539, 541 (Bankr.N.D.Ill.1988) (Rule 60 and not 59 applies to reconsideration of claims). That rule provides that "Rule 59 F.R.Civ.P. applied to cases under the Code, except as provided in Rule 3008." The applicable portion of Rule 59 of the Fed.R.Civ.P. provides as follows:
 (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues ... (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States ...
Fed.R.Civ.P. 59(a).

Likewise, courts have held that if the motion for reconsideration is filed after 10 days of the order then the motion must be decided under Fed.R.Bankr.P. 9024. *In re FERCO Fabricators, Inc.*, 153 B.R. 40 (Bankr.E.D.Mo.1993); *In re Wash. County Broadcasting, Inc.*, 39 B.R. 77 (Bankr.D.Me.1984). *But see United States v. Motor Freight Exp. (In re Motor Freight Express)*, 91 B.R. 705 (Bankr.E.D.Pa.1988) ("We believe that B. Rule 9023 applies generally to motions to reconsider claims, and that the only effect of the language added in B. Rule 9023 is to eliminate the 10-day limitation period for serving such a motion included therein."). That rule provides in part that "Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), ..." Fed.R.Bankr.P. 9024. Fed.R.Civ.P. 60(b) provides, in part, that on "motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reasons justifying relief from the operation of the judgment."

In a recent case, the court applied a modified Rule 60(b) standard. *In re Cassell*, 206 *464 B.R. 853 (Bankr.W.D.Va.1997). The court explained as follows:
 The 'cause' standard of § 502(j) is not identical to the more stringent 'excusable neglect' standard of Fed.R.Civ.P. 60(b) ... Nevertheless, the factors considered in an excusable neglect analysis 'are likely applicable to a cause analysis.' ... Therefore, this Court will look to the considerations elucidated in *Resources Reclamation* for guidance in determining whether the 'equities of the case' warrant a finding of cause. Also important is whether a distribution has occurred ... Finally, the District Court has earmarked certain factors as being especially relevant to an analysis under § 502(j), to wit, (1) possible prejudice to the Debtor; (2) Shawsville's explanation for its delay in contesting the Trustee's objection to claim, and

(3) possible prejudice to Shawsville absent reconsideration.
*Id.* at 855.

[1] I find that by applying even the strictest standard, Fed.R.Civ.P. 60(b), reconsideration is warranted. I will start by applying Fed.R.Civ.P. 60(b)(1) and decide whether the Creditors' failure to respond to the Amended Objection was the result of excusable neglect.

The Supreme Court has cited the following five factors with approval in determining whether excusable neglect is present: (1) danger of prejudice to the debtor; (2) the length of delay and it potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; (4) whether the movant acted in good faith; and (5) whether the clients should be penalized for the mistakes of their counsel. *Pioneer, Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993). The Court further cautioned that "we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the parties omission". *Id.*

I will first look at the relevant circumstances surrounding the Creditors' failure to respond to the Amended Objection. The Creditors have been active members of the Committee during the five years of this case. They timely filed proofs of claim. When the Debtor filed the Suspension Motion, the counsel to the Committee consulted with members of the Committee before giving the Committee's consent. While the Debtor appears to argue that further evidence is needed to determine if this claim is true, I accept the representations of counsel to the Committee and the Creditors' representations that they knew of the Suspension Motion, consented to the entry of an order allowing it, and received a copy of the order allowing it.

While I understand that the Suspension Motion referenced the First Objection, it also requested that I not conduct further proceedings with respect to the Debtor's objection to claims until the issues surrounding the entry of order of confirmation were resolved. Therefore, as they explained in the Reconsideration Motions, after I allowed the Suspension Order, it was reasonable to expect that I would take no further action with respect to the Debtor's objection to proofs of claims until the confirmation order matter had been resolved.

A month after the Suspension Order entered, the Debtor filed the Amended Objection which was served on the Creditors. In the Amended Objection, the Debtor stated that the Amended Objection superceded the First Objection. Although he referenced Suspension Order, he did not explain that he understood that it was no longer in effect. Shortly thereafter the Debtor served the Notice of Hearing on the Creditors.

The Debtor contends that receipt of the Amended Objection and the Notice of Hearing should have sufficiently alerted the Creditors that the objections to claims proceedings were going forward and that it was unreasonable of them to expect an order declaring the Suspension order was no longer in effect. The Creditors, however, did not ignore the pleadings. Instead, they contacted counsel to the Committee. It appears that the confusion arose when counsel to the Committee began to act as an intermediary. While I do not have testimony as to the content of the conversations, from the pleadings *465 filed and the correspondence exchanged, it appears that the Creditors relied on the Committee to resolve the matter. I also recognize that at least one unsecured creditor who was a member of the Committee did not rely on the Suspension Order and was able to respond in a timely fashion to the Amended Objection. The fact that three creditors who were actively involved in the case for five years failed to respond indicates to me that their neglect was excusable.

Turning to the specific factors enumerated by the Supreme Court in *Pioneer,* I first find that there would be no prejudice to the Debtor in reviewing the Creditors' claims. The confirmation order entered well after filing the above-described pleadings and as of the date of the filing of the pleadings, no distribution had taken place. Furthermore, the Debtor has been under the protection of the Bankruptcy Code for five years with the knowledge of these timely filed claims.

The Debtor contends, however, that reconsideration will greatly prejudice other creditors by causing additional administrative expense in litigating the claims of the Creditors and by diverting money away from creditors who adequately defended their claims. I disagree. The Creditors' claims are being resolved by this decision. Further, while it is true that other creditors would receive a greater distribution were it not for these claims, they have not filed any pleadings on their own behalf and in fact, the Committee supports reconsideration. Moreover, there was no distribution at the time of the filing of the motions for reconsideration. Lastly, as was pointed out by the court in *Resources Reclamation,*

> Where no dividends have been paid, the mere fact that allowance of a claim would dilute dividends which would otherwise be paid is not the type of injury that should result in disallowance of the claim ... '[if reconsideration is not allowed] other creditors will receive a windfall to which they are not entitled on the

(C) 2007 West Group
(Cite as: 216 B.R. 459)

Page 90

merits. If [reconsideration is allowed], the Bank will receive no more than its fair and proper share pari passu with the other unsecured creditors.'
*In re Resources Reclamation Corp. Of America*, 34 B.R. 771, 773 (9th Cir. BAP 1983) (citing *In re Gibraltor Amusements, Ltd.*, 315 F.2d 210 (2 nd Cir.1963)).

Although the Debtor argues that there was no reason for the lengthy delay in filing the Motions for Reconsideration, I disagree. It appears from the pleadings that the delay arose from the Creditors understanding that the matter could be resolved with correspondence between the Debtor's counsel and counsel to the Creditors' Committee. It appears that the Debtor was aware of the Creditors' dissatisfaction with the Order shortly after the Order was entered.

The last factor is whether the Creditors acted in good faith. [FN2] The Debtor claims that the Creditors did not respond to the Amended Objection as a result of a "conscious, deliberate, and calculated decision ..." "Debtor's Reply Memorandum in Response to Motions for Reconsideration Of Order Allowing Debtor's Amended Omnibus Objections to Claims", p. 3. In support, the Debtor references the affidavit of a former associate who recounts her conversations with counsel to the Committee. I find that the affidavit does not warrant a conclusion of a conscious, deliberate and calculated decision and further, the actions of Committee counsel cannot be attributed to the Creditors whose interest in the claims proceeding said counsel was not representing. I can find no reason why creditors who have remained active in a case for five years would suddenly forgo their right to payment.

   FN2. In the Supreme Court test, the last factor is actually whether clients should be punished for attorney mistakes. That is not an issue in this case.

Contrary to the Debtor's assertion and based upon the pleadings, I find that the Creditors did act in good faith. They mistakenly relied on the Suspension Order and the misguided offer of assistance from Committee counsel. Once they realized that the matter was not going to be resolved as between the Debtor and the Committee, they filed the motions.

I conclude that even under the more stringent test of Rule 60(b), reconsideration of the Creditors claims is warranted given the unique set of facts in this case. Therefore, I *466 will now turn to the merits of the underlying claims.

B. The Merits of the Claims

The Creditors' claims arise out of default judgments which the Creditors obtained in New Jersey based upon the Debtor's gambling debts incurred in that state. Adamar's claim exceeds $110,000 based upon the advances it gave to the Debtor on his personal line of credit. Adamar obtained a default judgment against the Debtor in that amount on October 25, 1991. Bally's obtained a default judgment against the Debtor in July of 1991 in an amount that exceeds $27,000 and timely filed a proof of claim for the same amount. Likewise, GNOC obtained a default judgment against the Debtor in July of 1991 in an amount which exceeds $113,000 for which it timely filed a proof of claim.

In the Amended Objection, the Debtor argued that the Creditors' claims should be overruled on the grounds that gambling debts should not be enforced as they are void as against public policy. The Debtor incurred the debts in New Jersey. He is a Massachusetts resident. The Debtor contends that Massachusetts law should govern the validity of the claim and since Massachusetts considers such debts void as against public policy, his objection should be sustained citing *Connecticut Nat'l Bank of Hartford v. Kommit*, 31 MassApp.Ct. 348, 577 N.E.2d 639 (1991). For guidance on whether this Court should allow claims which would be void in Massachusetts, the Debtor directs the Court to *In re Smith*, 66 B.R. 58 (Bankr.D.Md.1986), *aff'd*, 77 B.R. 33 (D.Md.1987).

The Creditors contend that the enforceability of their claims does not implicate Massachusetts public policy, rather, the issue is solely one of enforcing the Full Faith and Credit clause of the United States Constitution. U.S. Const., Art. IV, § 1. As such, the only question for me to decide is whether there was in personam jurisdiction over the Debtor in New Jersey and whether the Debtor had sufficient notice of those proceedings. *San Juan Hotel Corp. v.. Greenberg*, 502 F.Supp. 34 (E.D.N.Y.), *aff'd*, 646 F.2d 562 (1980), *cert. denied* 450 U.S. 1043, 101 S.Ct. 1762, 68 L.Ed.2d 241 (1981).

In response, the Debtor claims that the Creditors' arguments fail to factor in the application of the judgments to the claims allowance procedure. "This extra step that is present in a bankruptcy case distinguishes the Movant's cases from the present situation and permits the bankruptcy court to look behind a default judgment and decide the case on the merits." "Debtor's Reply Memorandum in Response to Motions for Reconsideration of Order Allowing Debtor's Amended Omnibus Objection to Claims", p. 4. For support, the Debtor cites to *Kohn v. Leavitt-Berner Tanning Corp.*, 157 B.R. 523 (N.D.N.Y.1993).

The Debtor further argues that the Creditors' default

(C) 2007 West Group
(Cite as: 216 B.R. 459)

Page 91

judgments are not entitled to collateral estoppel or *res judicata* because there is a lack of identity between the parties, citing *In re Sanborn, Inc.*, 181 B.R. 683 n. 15 (Bankr.D.Mass.1995) and *In re Nevada Natural, Inc.*, 92 B.R. 934 (Bankr.N.D.Okla.1988). The Debtor finally argues that the Court should follow the better reasoned decision of *Kommit*.

I will start by reviewing the applicable statutory provision. 11 U.S.C. 502(b)(1) provides as follows:
> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition and shall allow such claim in such amount except to the extent that--
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

The Debtor urges the Court to consider the case of *In re Smith*, 66 B.R. 58 (Bankr.D.Md.1986) in support of its objection to the Creditors' claims. In that case the court described the issue before it as "whether a defense grounded upon the public policy of the forum in which the bankruptcy court sits *467 was intended by Congress to be within the term 'applicable law'" *Id.* [FN3]

FN3. In *Smith*, the debtor received from the casino an advance of $15,000 in chips after paying for the same with three checks. The checks were not honored. *Smith*, 66 B.R. at 58.

The court began its discussion with the following statement:
> The instant case involves an unsecured claim. The court believes without hesitation that had the debt incurred by the debtor been reduced to judgment in a New Jersey court, 28 U.S.C. § 1738 would require full faith and credit be given to such a judgment. This is because of the common law principle that once litigation is pursued to judgment, the judgment shall be conclusive of the rights of the parties in every other court as in the court where the judgment was rendered ... The Supreme Court has held in numerous cases that credit must be given to the judgment of another state, although the form would not be required to entertain the suit on which the judgment was founded.

*Smith*, 66 B.R. at 59 (citations omitted).

The court then went on to conclude that there was nothing in the prevailing public policy of New York that would serve as a bar to the casino's claim. Lastly, the court stated the following:
> Even were the Maryland Court of Appeals to deny enforcement in Maryland courts of obligations such as the one under consideration, in the case at hand the claim is to be judged under the one under consideration, in the case at hand the claim is to be judged under the equitable principles of the Bankruptcy Code ... The phrase 'applicable law' in section 502(b) deals with the law of the place of the making of the contract, not of the forum, unless the parties indicate otherwise. The House Report, quoted in footnote 1, explains this in describing such applicable defenses as usury, unconscionability, and failure of consideration. These are defenses of dealing with the making of the contract. Such defenses bearing upon the execution, interpretation, and validity of the contract depend upon the place the contract was made, unless the parties indicate otherwise ...
> The court concludes that the public policy of the forum does not provide a basis for denying claims based on contracts ancillary to gambling activities valid where executed.

*Smith*, 66 B.R. at 61.

The Debtor's use of this case is curious. After having read it in full, I find that it supports the Creditors' argument that I should give full faith and credit to their New Jersey judgments.

The second applicable statutory provision is 28 U.S.C. § 1738. That section provides, in part, as follows:
> The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. [FN4]

FN4. The statute applies to Bankruptcy Courts. *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2 nd Cir.1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988).
28 U.S.C. § 1738.

[2] Under the statute, I must give the New Jersey

(C) 2007 West Group
(Cite as: 216 B.R. 459)

Page 92

judgments the same preclusive effect in this Court that New Jersey would provide. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985). If New Jersey would give the judgment preclusive effect, I must inquire whether any statute repeals or creates an exception to the full faith and credit statute. *Id.* at 381, 105 S.Ct. at 1332 (citing *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 468, 102 S.Ct. 1883, 1890-91, 72 L.Ed.2d 262 (1982)).

[3] Under New Jersey law, a judgment will not be given full faith and credit if the rendering court lacked in personam jurisdiction, *468 subject matter jurisdiction or failed to provide adequate notice and an opportunity to be heard. *City of Philadelphia v. Stadler,* 164 N.J.Super. 281, 286, 395 A.2d 1300 (1978), *aff'd, o.b.* 173 N.J.Super. 235, 413 A.2d 996, *certif. denied,* 85 N.J. 465, 427 A.2d 563 (1980), *cert. denied,* 450 U.S. 997, 101 S.Ct. 1702, 68 L.Ed.2d 198 (1981). The Debtor has not alleged any of these defenses.

[4] Under New Jersey law, there are "three elements to the doctrine of *res judicata:* the judgment relied upon must be valid, final and on the merits; the parties in the two actions must be either identical or in privity with one another; and the claims must grow out of the same transaction or occurrence". *Olds v. Donnelly,* 291 N.J.Super. 222, 232, 677 A.2d 238, 243 (1996), *certif. granted* 146 N.J. 565, 683 A.2d 1161 (1996), *aff'd,* 150 N.J. 424, 696 A.2d 633 (1997) (citing *Watkins v. Resorts Int'l Hotel & Casino,* 124 N.J. 398, 412-13, 591 A.2d 592 (1991)).

[5][6][7][8][9] The first element is met as New Jersey applies *res judicata* to default judgments. *Evangel Baptist Church v. Chambers,* 96 N.J.Super. 367, 370-71, 233 A.2d 82 (Ch.Div.1967). The Debtor appears to argue that the Creditors' judgments should not be given full faith and credit on the grounds that because the claims are subject to another layer of review, the claims allowance procedure in bankruptcy, I should look behind the default judgments. For support, the Debtor cited to *Kohn v. Leavitt-Berner Tanning Corp.,* 157 B.R. 523 (N.D.N.Y.1993).

In that case, the district court reviewed the decision of the bankruptcy court which had held that a state court default judgment for rent due would not be given full faith and credit for the entire amount, rather, it would be limited by the formula for rent claims under 11 U.S.C. 502(b)(6). The appellant argued, *inter alia,* that the bankruptcy judge erred in applying § 502(b)(6) to the state court judgment.

The district court disagreed. The court recognized that 28 U.S.C. § 1738 requires that federal courts give preclusive effect to state court judgment and that the statute applies to bankruptcy courts. *Id.* at 526. The court decided however, that an application of § 502 would not be inconsistent with 28 U.S.C. § 1738 as follows:

> Section 502(b) requires the bankruptcy court to undertake a two-part analysis. First the court must "determine the amount of [a creditor's] claim as of the date of the filing of the petition ..." In a case such as the one at bar, this means accepting as non-reviewable the amount of the claim as determined by the state court. This figure then forms the basis for the second part of the analysis, wherein the court determines how much of the claim should be allowed. Applying the principles of equity inherent in the code, the court looks behind the judgment to ascertain the relationship between the parties. When the parties stand as lessor and lessee, as in the case at bar, § 502(b)(6) applies. This subsection provides a formula to which the previously determined judgment figure is applied, resulting in a second figure--the allowable portion of the original judgment. This second figure represents Congress' view of what is equitable between a lessor and lessee in bankruptcy.

*Id.* (footnote omitted).

Notwithstanding the fact that the court in *Kohn* did not explain why principles of equity inherent in the Bankruptcy Code would serve to overrule a specific statutory mandate, [FN5] this Court finds that the circumstances present in *Kohn* are not present here and that there is no reason to follow the case. That is, *Kohn* did not apply 28 U.S.C. § 1738 to the entire amount of the state court judgment because there was a Bankruptcy Code provision which would cap such a claim. In this case, there is no Bankruptcy Code section which would so limit the Creditors' claims. Therefore, even if I were inclined to look behind the judgments, there is no reason to do so.

FN5. "It is true the bankruptcy courts sit as courts of equity. However, a fundamental principle of equity jurisprudence is that 'equity follows the law.' " Courts of equity are bound to follow express statutory commands to the same extent as are courts of law. Bankruptcy courts are no more entitled to ignore the law than are other courts of equity. *Shoreline Concrete Co., Inc. v. U.S. (In re Shoreline Concrete, Co., Inc.,),* 831 F.2d 903, 905 (9 th Cir .1989).

*469 The second element is whether the parties are the same. The Debtor argues that they are not because an individual debtor in possession is an entity different than

(C) 2007 West Group
(Cite as: 216 B.R. 459)

Page 93

that person was pre-petition. For support he cites to *In re Sanborn, Inc.* 181 B.R. 683, 691 n. 15 (Bankr.D.Mass.1995), *Societa Internazionale Turismo v. Barr (In re Lockwood)*, 14 B.R. 374 (Bankr.E.D.N.Y.1981) and *In re Nevada Natural Inc.*, 92 B.R. 934 (Bankr.N.D.Okla.1988) for the proposition that *res judicata* should not be applied to the Creditors' claims.

In *Sanborn*, Judge Boroff concluded in a footnote that a trustee or debtor in possession is not saddled with the unclean hands of a pre-petition debtor. *In re Sanborn, Inc.*, 181 B.R. 683, 691 n. 15 (Bankr.D.Mass.1995). I am unconvinced that Judge Boroff's conclusion can be stretched to say that a pre- petition debtor and a debtor in possession are not in privity for the purposes of *res judicata*.

In *Lockwood*, the debtors contested a creditor's motion for relief from stay on the grounds that the creditor did not hold a claim against them. *Societa Internazionale Turismo v. Barr (In re Lockwood)*, 14 B.R. 374 (Bankr.E.D.N.Y.1981). The debtors contended that the creditor obtained a default judgment against them as a result of their attorney's negligence and when the claim which the creditor held was against their state court co-defendant whose debts they had not guaranteed. The creditor relied on 28 U.S.C. § 1738. The court ruled that a bankruptcy court in the Second Circuit may use its equitable powers to inquire into the validity of a claim but only "for the purpose of showing that it was obtained by collusion of the parties or is founded upon no real debt." 14 B.R. at 378 (citing *Margolis v. Nazareth Fair Grounds & Farmers Market Inc.*, 249 F.2d 221, 224 (2d Cir.1957)). Because the debtors were able to demonstrate that their counsel in the state court proceeding was incompetent and that the claim was not founded on a real debt, the court went behind the state court judgment and concluded that the movant did not hold a claim against the debtors. *Id.* at 380. In this case, however, the Debtor has not offered any similar reasons to make inquiries into the state court judgments.

In *Nevada Natural*, the trustee filed an adversary proceeding to determine the amounts of the claims of creditors who held state court default judgments. *In re Nevada Natural Inc.*, 92 B.R. 934 (Bankr.N.D.Okla.1988). The claimants moved to dismiss on the grounds that the doctrines of collateral estoppel and *res judicata* prevented the trustee's complaint. The court held that collateral estoppel did not apply because there had been no actual litigation. The court held that *res judicata* did not apply because the trustee was not a party to the state court litigation and was not in privity with the debtor because as trustee he represents all of the creditors who were not represented in the state court. *Id.* at 936-37. The court did not discuss 28 U.S.C. § 1738.

In this case, however, it is the Debtor and not a trustee who is raising the issue of *res judicata*. The two cases which this Court has found which address the exact issue of whether *res judicata* can be avoided on the grounds that a debtor in possession is an entity different than a pre-petition debtor conclude that such a distinction is meritless. *In re Wizard Software, Inc.*, 185 B.R. 512, 519 n. 12 (Bankr.E.D.Va.1995) (declining to deny *res judicata* effect to default judgment on grounds that debtor was now debtor in possession; "claim asserted here, however, is not a claim against the debtor in possession as such; it is a claim against the debtor which, if allowed, is entitled to be paid as part of the plan of reorganization."); *Hays v. Cummins (In re Cummins)*, 174 B.R. 1005, 1009 (Bankr.W.D.Ark.1994) ( "While for Chapter 11 bankruptcy purposes there exists a distinction between an individual in bankruptcy and the "debtor-in-possession," there is no good faith basis for arguing that the distinction makes a difference for res judicata purposes."). Other courts have held that *res judicata* applies to a debtor in possession without discussing the issue. *In re A-1 24 Hour Towing, Inc.*, 33 B.R. 281, 284 (Bankr.D.Nev.1983). I agree with the court in *Cummins* and conclude that for the purposes of *res judicata* an individual debtor in possession *470 is the same entity as the pre-petition debtor.

As to the third element, the claims in New Jersey are identical to the one being presented here. As I have explained, I find no legislative or policy reason to preclude application of the full faith and credit statute. Therefore, I find no reason why I should not apply the full faith and credit statute and overrule the Debtor's objection to the Creditors' claims.

I note that this holding conforms with a holding of a Massachusetts appellate case whose facts are substantially similar to this case. *Admar of New Jersey, Inc. v. Matellian*, 1996 Mass.App.Div. 79, 1996 WL 224484 (1996). In that case, the defendant, a Massachusetts resident, applied for and received funds from a casino in New Jersey. The court ruled the following:

> Absent Mattellian's successful challenge to subject matter and personal jurisdiction, there is no Constitutional basis by which a Massachusetts court can go behind a judgment rendered in the court of another state upon a cause of action valid in the originating state ... Moreover, the policy considerations expressed in c. 137, § 3 do not entitle the courts of Massachusetts, on that basis, to refuse enforcement of the New Jersey judgment.

*Id.* (citing *McDade v. Moynihan*, 330 Mass. 437, 442, 115 N.E.2d 372 (1953) ("The Constitution of the United States can not be trimmed to suit the differing views of

(C) 2007 West Group
(Cite as: 216 B.R. 459)

Page 94

policy entertained in differing states.")).

The Debtor urged me to follow a Massachusetts case which discussed the public policy arguments against enforcing a gambling debt. *See Connecticut Nat'l Bank of Hartford v. Kommit,* 31 MassApp.Ct. 348, 577 N.E.2d 639 (1991). In *Kommit,* a Massachusetts resident obtained a cash advance on his credit card to gamble in New Jersey. The bank with whom the credit card held a credit agreement sued Kommit in Massachusetts for payment of the funds. Kommit argued that the debt was void as against Massachusetts public policy. The court then engaged in a lengthy discussion regarding whether to apply the laws of Massachusetts, Connecticut or New Jersey. The court concluded that the law of Connecticut should apply as that was what the credit agreement provided. The court then ruled that under Connecticut law summary judgment was inappropriate and reversed the lower court. While this case repeats that gambling debts are void as against public policy in Massachusetts it does not address the issue before this Court: the effect of the New Jersey default judgments in a claims proceeding in a Bankruptcy Court in Massachusetts. There is not simply a technical distinction between *Kommit* and *Admar:* The former case does not touch on the issues before me and the latter does.

In the end, however, I need not follow either *Kommit* or *Admar* as it is not the law of Massachusetts that is applicable. Pursuant to the above-cited Supreme Court decisions, I must apply the laws of New Jersey to decide whether to give the default judgments full faith and credit. Because I conclude that New Jersey would give the default judgments full faith and credit and because there are no other grounds which suggest I do otherwise, I will enter an order vacating the Order as to the Creditors and overrule the Amended Objection as to those three claims.

216 B.R. 459

END OF DOCUMENT