## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | Case No.: 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | Chapter 11 |
| Debtors. | Jointly Administered |

_____/

### IRT PARTNERS, L.P.'S AND EQUITY ONE (HUNTER'S CREEK), INC.'S: (I) TRIAL MEMORANDUM AND INCORPORATED MEMORANDUM OF LAW IN RESPONSE TO DEBTORS' OBJECTION TO CLAIM NO. 13740 AND CLAIM NO. 13741, AND (II) IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION OF DISALLOWANCE OF CLAIM NO. 13740 AND CLAIM NO. 13741

IRT Partners, L.P. ("IRT") and Equity One (Hunter's Creek) Inc. ("Hunter's Creek"), both affiliates of Equity One, Inc. ("Equity One"), by and through undersigned counsel, file this (I) Trial Memorandum and Incorporated Memorandum of Law in Response to Debtors' Objection to Claim No. 13740 and Claim No. 13741, and (II) in the Alternative, (B) Motion for Reconsideration (this "Motion") of Disallowance of Claim No. 13740 and Claim No. 13741 pursuant to 11 U.S.C. § 502(j) and Bankruptcy Rule 3008, and state as follows:

### PRELIMINARY STATEMENT

1.     IRT and Hunter's Creek filed timely claims for damages that arose from the rejection of their leases with the Debtors, *and expressly reserved their right to amend the claims.* IRT and Hunter's Creek amended the claims to include a statutory calculation of additional damages that arose from the rejection of the leases. Now, the Debtors object to the amended claims on the theory that they are actually "new" claims. As of the filing of this Response, the Debtors have cited no case law to support this

contention; in fact, the Eleventh Circuit has held on at least two occasions that an amended claim is not a "new" claim if it pleads a new theory of recovery on the same set of facts. In this instance, both the original claims and the amended claims sought a recovery based on the same set of facts – the Debtors' postpetition rejection of the claimants' leases.

2.     In the alternative, the Debtors argue that an Order entered by the Court reducing the amount asserted in the original claims somehow operates to preclude the claimants from amending those claims. However, the language in the Order did not disallow future amendments to the claims. Even if the order can be interpreted in the manner the Debtors suggest, there is cause for reconsideration of the Order pursuant to 11 U.S.C. § 502(j) and Bankruptcy Rule 3008 because the Debtors did not state in their objection that they were seeking such relief. The claimants were not on notice that such relief was being sought by the Debtors, and thus the claimants would lose their right to amend their claims without due process.

## JURISDICTION

3.     This Court has jurisdiction over this Motion and the issues at trial pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the issues at trial and this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). IRT and Hunter's Creek consent to the entry of a final order or judgment by this Court on the issues at Trial and the relief sought in this Motion.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

## A.    The Leases and Commencement of the Bankruptcy Case.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

4.      Pursuant to that certain lease dated December 4, 1979, as amended, IRT leased the premises located at 109 East Dallas Road in Stanley, North Carolina (Store # 2087) (the "Charlotte Store") to Debtor Winn-Dixie Raleigh, Inc., d/b/a Winn-Dixie Charlotte, Inc. ("Winn-Dixie Charlotte"), as tenant (the "Charlotte Lease").

5.      Pursuant to that certain lease dated December 17, 1997, as amended, Hunter's Creek leased the premises located at 4161 Town Center Boulevard in Orlando, Florida (Store # 2391) (the "Orlando Store") to Debtor Winn-Dixie Stores, Inc. ("Winn-Dixie," together with Winn-Dixie Charlotte, the "Debtors"), as tenant (the "Orlando Lease").

6.      On February 21, 2005 (the "Petition Date"), Winn-Dixie and its subsidiaries, including Winn-Dixie Charlotte, filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  During the bankruptcy cases, Winn-Dixie and Winn-Dixie Charlotte managed their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, and in so doing continued to operate the Charlotte Store and the Orlando Store for a period of several months.

**B.      The Rejection of the Leases and Original Proofs of Claim.**

7.      On July 29 and August 1, 2005, before the Debtors sought to assume or reject the Charlotte Lease and Orlando Lease, IRT and Hunter's Creek each filed a proof of claim for pre-petition real estate taxes then due and unpaid under the leases (the "Prepetition Tax Claims").[1]  As described below, the claimants filed proofs of claim that superseded the Prepetition Tax Claims after the Debtors decided to reject these leases.

---

[1]      The Hunter's Creek claim filed on August 1, 2005 is Claim No. 11257, and the IRT claim filed on July 29, 2005 is Claim No. 10930.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

8.      On August 1, 2005, the Debtors filed a motion to reject the Charlotte Lease and Orlando Lease (D.E. 2707), and on September 8, 2005, the Court entered an order authorizing the Debtors to reject the leases (D.E. 3405) (the "Rejection Order"). On September 14, 2005, the Debtors filed a notice of rejection of each lease (D.E. 3462). On or about September 30, 2005, the Debtors surrendered possession of the Charlotte Store and Orlando Store.   Once the Debtors rejected the leases and surrendered the premises, IRT and Hunter's Creek began mitigating their rejection claims by marketing the retail spaces to find new suitable tenants.

9.      Based on the date of surrender and the terms of the Rejection Order, it was believed that the deadline to file claims for damages arising from rejection of the leases was on or about October 30, 2005.  Due to the effects of Hurricane Wilma, which made landfall in South Florida on October 24, 2005, IRT and Hunter's Creek filed a motion on October 31, 2005 (D.E. 3979) requesting an enlargement of time to file claims for damages arising from the rejection of the Orlando Lease and Charlotte Lease (the "Motion for Enlargement of Time").  A hearing has not yet been held, and an Order has not yet been entered, on the Motion for Enlargement of Time.[2]

10.      As set forth in that Motion for Enlargement of Time, the corporate headquarters of Equity One is located in an area severely affected by the hurricane. Furthermore, the Miami office of Debtors' undersigned law firm sustained significant damage as a result of Hurricane Wilma, and the City of Miami closed the office building of undersigned counsel for a period of two weeks after the hurricane.  In particular, the

---

[2]      Due to the effects of the hurricane and subsequent widespread loss of electrical power in South Florida and the closure of the undersigned attorney's law office, the Motion for Enlargement of Time was drafted and filed in coordination with the Orlando office of the undersigned attorney's law firm.  During that time, undersigned counsel had no access to his client or to the client's files.

4

office of the undersigned attorney was almost completely destroyed – windows blown out, walls and ceiling collapsed – and rendered inaccessible for several weeks after the hurricane.

11.     On November 15, 2005, IRT filed Proof of Claim No. 12484 and Hunter's Creek filed Proof of Claim No. 12486 (together, the "Original Claims"), which asserted claims for rejection damages in the amount of the unpaid real estate taxes, CAM, and insurance premiums due under the leases.  (True and correct copies of the Original Claims are attached hereto as composite Exhibit "A".)  The Original Claims for rejection damages superseded their Prepetition Tax Claims.  Both of the Original Claims asserted unpaid amounts that arose prepetition and postpetition, including postpetition taxes that would not have become due and payable until the end of 2005, but as a consequence of the rejection were liquidated in a pro rated amount through the rejection date.

12.     Neither of the Original Claims asserted rejection damages for future unpaid rent that would have accrued after the rejection of the leases.  The Original Claims were filed only six weeks after the Debtors rejected the leases, at which time IRT and Hunter's Creek could not yet determine, or even provide a gross estimate, of their actual rejection damages for unpaid future rent.  Mitigation efforts, including the search for new tenants, had just begun, and Equity One simply had no way of knowing when and on what lease terms new tenants would occupy the Charlotte Store and Orlando Store.  Thus, any claim filed in November 2005 for unpaid future rent would have been mere guesswork, and required further amendment once the actual damages were fixed.

13.     The Original Claims are in substance the same, and differ only in amount. In Box 1 of the proof of claim form for each of the original Claims, the claimant states

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

that the claim is for **"REJECTION DAMAGES."** The first sentence of the statement of claim attached to each proof of claim states: "This is a rejection damages claim . . ." In addition, the last paragraph of each statement of claim includes the following reservation of rights in bold capital letters:

> **"CLAIMANT RESERVES THE RIGHT TO AMEND AND SUPPLEMENT THIS REJECTION DAMAGES CLAIM AS ESTIMATED AMOUNTS ARE FIXED AND ADDITIONAL INFORMATION BECOMES AVAILABLE."[3]**

Each claim asserted rejection damages for unpaid real estate taxes for calendar years 2004 and 2005. At the time, IRT and Hunter's Creek were attempting to mitigate their damages, and therefore did not include a damages calculation for unpaid future rent pursuant to 11 U.S.C. § 502(b)(6).

### C.    The Debtors' Objection to the Original Claims.

14.    An entire year passed before the Debtors addressed the Original Claims. On October 31, 2006, the Debtors filed an omnibus objection to claims (D.E. 12274) (the "Original Claims Objection"), objecting to the amount of taxes claimed by IRT and Hunter's Creek resulting from the rejection of the leases by the Debtors. The Original Claims Objection acknowledged that the Motion for Enlargement of Time was still pending. *See* Original Claims Objection, Exhibit E. A hearing on the Original Claims Objection was held on November 30, 2006, and an order on the Original Claims Objection was entered the same day (D.E. 12902) (the "Claims Objection Order").

---

[3]    It is interesting to note that the Debtors, on the first page of their Amended Claims Objection (as defined below), purport to reserve their right to amend their objection, while simultaneously arguing that the reservations of rights in the Original Claims are somehow ineffective. Amended Claims Objection, p.1 ("In making these objections, the Debtors reserve, without limitation, the right to assert further or additional objections to the Claims.")

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

15.     The Original Claims Objection sought to disallow, reduce, fix or reclassify certain claims, as specified in the objection. *See* Original Claims Objection, p. 1. With respect to IRT and Hunter's Creek, the Original Claims Objection sought only two forms of relief: (1) that the Court *disallow* the Prepetition Tax Claims because those claims were amended and superseded by the Original Claims filed in November 2005; and (2) that the Court *reduce* the Original Claims filed in November 2005 because some of the taxes claimed had since been paid. *See* Original Claims Objection, ¶¶ 13-15 and 21-24, and Exhibits B and E.

16.     The Original Claims Objection did ***not*** seek to disallow the Original Claims. Instead, the Original Claims Objection merely sought to reduce the amount of the Original Claims asserted thus far on the basis that certain amounts claimed for unpaid taxes were overstated. *See* Original Claims Objection, ¶¶ 21-24 and Exhibit E. IRT and Hunter's Creek had no objection to the *disallowance* of the Prepetition Tax Claims or the *reduction* of the Original Claims by the amounts indicated by the Debtors in their Original Claims Objection. There is nothing in the Original Claims Objection that states or even implies that the claimants would lose or waive their right to amend their claims for rejection damages, or that the Original Claims would be disallowed in any respect.

17.     In fact, the Original Claims Objection led the claimants to believe that they could still amend their Original Claims. In a section of the Original Claims Objection entitled "Reservation of Rights," the Debtors state that "[t]he Debtors expressly reserve the right to amend, modify, or supplement these objections and to file additional objections to the Disputed Claims or any other claims ***(filed or not)*** which may be asserted against the Debtors." Original Claims Objection, ¶ 42 (emphasis added).

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

This reservation of rights certainly implies that the Debtors anticipated that amended claims (and even new claims) could be filed at a later date. Furthermore, as explained below, the notice of claims bar date filed and served just one week after the hearing and entry of the order on the Original Claims Objection only reinforced that conclusion.

**D.    Mitigation of Damages.**

18.    Irrespective of whether they had any legal or contractual duty to mitigate the damages arising from the lease rejections, both IRT and Hunter's Creek began to take measures to mitigate their damages soon after the Debtors rejected the Orlando Lease and Charlotte Lease.

19.    For each lease, Equity One initially sought another "big-box" grocer to fill the space in order to maintain the tenant mix that existed when the Debtor occupied the stores. The mitigation efforts were intensive and exhaustive. IRT was not able to find a new tenant for the Charlotte Store given the size, condition, and configuration of that store. In May 2006, seven months after the Charlotte Lease was rejected, IRT finally found a new tenant for the Charlotte Store - Food Lion. However, to induce Food Lion to enter into the lease, Equity One had to nearly demolish the existing store and rebuild it entirely. Equity One began this work soon after Food Lion entered into the new lease in May 2006, and Food Lion did not open the store and begin paying rent until May 2007.

20.    As for the Orlando Store, Equity One was unable to find a national grocery chain to fill the space, nor was it able to find any "big-box" retailer willing to lease the space. Finally, in August 2006, Hunter's Creek reached agreements with Office Depot and Lifestyle Family Fitness, Inc. to occupy portions of the space, which required that the space be subdivided built out the space for each of the new tenants. Hunter's

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Creek accomplished this process through a combination of allowances for tenant improvements under each of the leases, along with improvements to the spaces. The subdivision and construction were not completed until late 2006, and the two tenants did not start paying rent on the reconfigured space until December 2006 (Office Depot) and January 2007 (Lifestyle Family Fitness).

21.    For these reasons, it was not until late 2006 that IRT and Hunter's Creek even had the information necessary to file complete and accurate proofs of claim for their rejection damages. Only by then did it become clear that the full amount of the rejection damages, including lost rent and the cost of mitigation, exceeded the statutory cap under Section 502(b)(6) for both leases, such that the proper, correct and allowable amount of the each claim was the amount calculated under 502(b)(6) rather than some lesser actual amount.

**E.**    **The Debtors' Notice of Postpetition Claims Bar Date.**

22.    On December 6, 2006, the Debtors served on IRT and Hunter's Creek their *Notice of (A) Entry of Order Confirming Plan of Reorganization, (B) Occurrence of Effective Date of Plan, and (C) Bar Dates for Filing Claims Arising Before Effective Date and Other Administrative Claims* (D.E. 12991) ("Notice of Claims Bar Date"). The Notice of Claims Bar Date states that "all requests for payment of an Administrative Claim or <u>any Claim arising against the Debtors in the period between February 21, 2005 and November 21, 2006</u> . . . must be made by application with the Bankruptcy Court and served on counsel for the Reorganized Debtors and served . . . **no later than January 5, 2007**." Notice of Claims Bar Date, ¶ 3 (original emphasis). To ensure that the deadline was clear to recipients, the Notice of Claims Bar Date stated the following in bold letters:

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

> **. . . any Claim arising against the Debtors in the period**
>
> **between February 21, 2005 and November 21, 2006 that**
>
> **is not asserted in an application filed and served no**
>
> **later than January 5, 2007, shall be forever barred and**
>
> **relinquished in full, and the Reorganized Debtors shall**
>
> **have no obligation to pay such Claim.**

Notice of Claims Bar Date, ¶ 3 (original emphasis).   The Notice of Claims Bar Date stated that capitalized terms not otherwise defined therein would have the meanings ascribed to them in the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors dated August 9, 2006 (the "Plan").   The Plan defines the term "Claim" with the same broad definition found in Bankruptcy Code Section 101(5).

**F.**     **The Claimants' Timely Filed Amended Claims.**

        23.     On January 5, 2007, which was the deadline to file claims arising postpetition provided in the Notice of Claims Bar Date, IRT and Hunter's Creek each filed an amended proof of claim (the "Amended Claims"), which included a calculation of  the rejection damages prescribed under 11 U.S.C. § 502(b)(6).   (True and correct copies of the Amended Claims are attached hereto as composite Exhibit "B".)   The Amended Claims asserted damages for the rejection of the Orlando Lease and the Charlotte Lease.   The Original Claims sought damages arising from the rejection of the same two leases.   It is important to note that, as of January 5, 2007, the Motion for Enlargement of Time was still pending.

        24.     Each of the Amended Claims seeks the full amount of rejection damages allowable under the Section 502(b)(6) cap.   As explained above, by the end of 2006 it had

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

finally become clear that the lost rent plus the cost of the mitigation efforts exceeded the cap.

25.    Nearly three months after IRT and Hunter's Creek amended their claims, the Debtors filed their *Objection to Claim No. 13740 Filed by IRT Partners, L.P. and Claim No. 13741 Filed by Equity One (Hunter's Creek) Inc.*, on April 5, 2007 (D.E. 15849) (the "Amended Claims Objection").

I.    **MEMORANDUM OF LAW IN RESPONSE TO DEBTOR'S OBJECTION TO AMENDED CLAIMS[4]**

26.    In their Amended Claims Objection, the Debtors argue that the Amended Claims are actually "new" claims.  The Debtors jump to this conclusion without any examination of the factual basis for the Amended Claims, and without any reference to controlling Eleventh Circuit case law, the application of which clearly demonstrates that the Amended Claims are proper.  Furthermore, the Orders of this Court, as fashioned and requested by the Debtors, leave the indelible impression that the Original Claims were timely filed and that the deadline to amend their claims was January 5, 2007.

A.    **Under Controlling Eleventh Circuit Case Law, the Amended Claims Are Not "New" Claims.**

27.    The case law in the Eleventh Circuit is clear that a claimant has the right to amend a timely filed claim in order to, among other things, plead a new theory of recovery on the facts set forth in the original claim.  Here, the Original Claims clearly states that the claims for unpaid taxes were being asserted as a result of the rejection of the leases.  The Amended Claims seek damages under Section 502(b)(6), a new theory of

---

[4]    IRT and Hunter's Creek believe that all, or nearly all, of the facts relevant to the disputed legal issue of whether the Amended Claims (as defined below) should be allowed are uncontested by the Debtors.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

recovery, on the same set of facts – the rejection of the leases.    The Eleventh Circuit

clearly permits such amendments to claims:

> It is well established that a creditor need not timely file a
> letter perfect proof of claim before the expiration of the
> time fixed by the court for the filing of such and that 'in a
> bankruptcy case, amendment to a claim is freely allowed
> where the purpose is to cure a defect in the claim as
> originally filed, to describe the claim with greater
> particularity or to plead a new theory of recovery on the
> facts set forth in the original proof of claim.'

*Biscayne 21 Condominium Ass'n, Inc. v. South Atlantic Financial Corp. (South Atlantic*

*Financial Corp.)*, 767 F.2d 814, 819 (11th Cir. 1985)[5] (*quoting In re International*

*Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985) (*citing Szatkowski v. Meade Tool &*

*Die Co.*, 164 F.2d 228, 230 (6th Cir. 1947) *and In re G.L. Miller & Co.*, 45 F.2d 115 (2d

Cir. 1930)).

28.    The Eleventh Circuit provided the following rationale for allowing timely

filed claims to be freely amended:

> It is well accepted that the bankruptcy court is guided by
> the principles of equity, and that the court will act to assure
> that 'fraud will not prevail, that substance will not give way
> to form, that technical considerations will not prevent
> substantial justice from being done.'

*International Horizons, Inc.*, 751 F.2d at 1216 (*quoting Pepper v. Litton*, 308 U.S. 295,

305, 60 S.Ct. 238, 244 (1939)).[6]

---

[5]    In *South Atlantic*, the Eleventh Circuit did not allow the claimant to amend its claim simply because the claimant had not even a filed proof of claim before the claims bar date and the claimant failed to prove that it had a timely filed claim under the informal proof of claim doctrine. "Before a court will allow a party to file an amended proof of claim, . . . there must be something filed in the bankruptcy court capable of being amended." *South Atlantic*, 767 F.2d at 819.  Here, the Debtors do not dispute that IRT and Hunter's Creek timely filed their Original Claims.

[6]    In *Int'l Horizons* the Eleventh Circuit disallowed the amended claim filed by the IRS because the amended claim did not arise from the same set of facts as the original claim.  The original claim was for withholding taxes and unemployment taxes, whereas the amended claim sought payment for corporate income taxes. *Int'l Horizons*, 751 F.2d at 1217.  The claims that arose from the

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

29.    A fairly recent decision by Judge Briskman on facts very similar but less favorable to the claimant than those here demonstrates the proper application of the standards set forth by the Eleventh Circuit in *South Atlantic* and *International Horizons*. *In re Telephone Company of Central Florida*, 308 B.R. 579 (Bankr. M.D. Fla. 2004).   In that case, the IRS filed a proof of claim before the bar date for approximately $600,000 in unpaid excise taxes. *Id.* at 581.  The claim was based on information supplied by the debtor, and the IRS marked the proof of claim, "PENDING EXAMINATION." *Id.*  A year after the plan was confirmed, and 21 months after filing the original claim, the IRS amended its claim to more than $2.8 million in unpaid excise taxes, more than four and one-half times the original amount. *Id.* at 582.

30.    Addressing the debtor's objection to the amended claim, Judge Briskman began his analysis by articulating the rule established by the Eleventh Circuit in *International Horizons*:

> The general rule is that an amendment to a proof of claim is freely allowed to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.  If the initial claim gives adequate notice of the existence and nature of the claim, and the creditor's intent to hold the estate liable, the amended claim should be allowed.

*Id.* (citations omitted).

31.    Rejecting the debtor's contention that the difference in the amount of the original and amended claims was too large, the Court stated the following:

> The fact that a subsequent proof of claim is for a greater amount does not prevent the amendment.  A proof of claim

---

debtor's failure to withhold payroll and unemployment taxes in its capacity as an employer emanated from a different set of facts than the claim arising from the debtor's failure to recognize a corporate transaction as having generated income. *Id.*

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

> for unpaid taxes that effectively increases the amount
> sought does not bar amendment, unless the claim asserts a
> different tax or a different fiscal timeframe. 'Even large
> increases in the amount of taxes claimed may be asserted
> by amendment under appropriate circumstances.'

*Id.* (*citing Kolstad,* 928 F.2d 171; *In re Hanscom Retail Foods, Inc.,* 96 B.R. 33 (Bankr.

E.D. Pa. 1988); *In re Candy Braz, Inc.,* 98 B.R. 375 (Bankr. N.D. Ill. 1988); *In re Tanaka*

*Bros. Farms, Inc.,* 36 F.3d 996 (10th Cir. 1994) (allowing amended claim which exceeded

originally filed claim by $300,000 where the original claim put parties on notice that the

claim was subject to change upon further investigation).

32.     In *Telephone Company of Central Florida,* the IRS increased the amount

of its claim from approximately $600,000 to $2.8 million as a result of its investigation,

an increase that Judge Briskman did not find objectionable under the circumstances. *Id.*

at 582.  The circumstances in this case are similar, in that IRT and Hunter's Creek were

actively engaged in an effort to mitigate their rejection damages under the two leases.

Once those mitigation efforts concluded in late 2006, the claimants were in a position to

calculate and amend their claim for the appropriate amount of rejection damages.  As a

result, the amount of the claims increased from a combined total of $107,862 to

$1,063,722.

33.     As in *Telephone Company,* the Court should examine the facts before it

under the five-part test set forth in *International Horizons:*

> (1) whether the debtors or creditors relied upon...earlier
> proofs of claim or whether they had reason to know that
> subsequent proofs of claim would be filed pending
> completion of an audit; (2) whether other creditors would
> receive a windfall by the court's refusing to allow
> amendment; (3) whether [there was an intentional or
> negligent delay] in filing the proof of claim stating the
> amount due; (4) the justification for failure...to file a timely

extension to the bar date; and (5) whether equity requires
consideration of any other factors.

*Id.* Applying this test, Judge Briskman found that the debtor in *Telephone Company*
should have known that the IRS claim would be amended because the claim was stamped
"PENDING EXAMINATION," and that the IRS was not negligent in amending its claim
sooner because it could not do so until it concluded its investigation. *Id.* at 582-83.
Likewise, the proofs of claim filed by both IRT and Hunter's Creek stated in bold-faced
and capital letters that "**CLAIMANT RESERVES THE RIGHT TO AMEND AND
SUPPLEMENT THIS REJECTION DAMAGES CLAIM AS ESTIMATED
AMOUNTS ARE FIXED AND ADDITIONAL INFORMATION BECOMES
AVAILABLE.**"    Much as the IRS was conducting its examination in *Telephone
Company,* here during the period between the filing of the Original Claims and Amended
Claims both IRT and Hunter's Creek actively sought to mitigate their actual damages
arising from the rejection of the leases, in this instance in order to determine whether to
claim the maximum amount allowable under Section 502(b)(6) or some lesser amount of
actual damages after mitigation.

34.    Notably, Judge Briskman did observe that the IRS should have objected to
the telephone company's reorganization plan on the basis that the "plan was potentially
unconfirmable due to the [size of] IRS' potential claim" and that the amended claim
would "have far-reaching effects on [the d]ebtor's plan and distribution to creditors." *Id.*
at 583.    Despite the deleterious effect on the estate, the Court held that such
circumstances "do ***not*** overcome the general rule allowing amendments to timely filed
claims." *Id.* (emphasis added).

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

35.    In the instant case, no such negative consequences to the estate exist.  To the contrary, allowance of the Amended Claims in full will have no discernable effect on the Debtor's plan and distribution to creditors, but simply bring about the long-delayed issuance of previously authorized shares to IRT to Hunter's Creek in amounts that will have no dilutive effect on the already issued and outstanding shares.  As explained below, the approximate number of shares that would be issued to IRT and Hunter's Creek on account of their Amended Claims would be *less than 1/10th of one percent* of the New Common Stock already issued by Reorganized Winn-Dixie.

36.    Numerous other courts have followed the Eleventh Circuit's lead and allowed the amendment of timely filed claims to plead a new theory of recovery on the same set of facts.  In *McLean Industries*, 121 B.R. 704, 709 (Bankr. S.D.N.Y. 1990), a claimant was allowed to increase the amount sought in his claim because the amended claim "ar[ose] out of the identical set of facts as the Original Claim," and "[t]he only difference between the two claims is in the amount claimed as compensation."  *In re McLean Industries, Inc.*, 121 B.R. at 709 (*citing Int'l Horizons*, 751 F.2d 1213).

37.    Similarly, the Fifth Circuit allowed the IRS to amend its claim eleven months after the bar date where the original claim was for company employment taxes that were the liability of the debtor.  *See U.S. v. Kolstad (In re Kolstad)*, 928 F.2d 171 (5th Cir. 1991).  The amended claim merely pleaded a new theory of recovery on the same set of facts set forth in the original claim.  In *Kolstad*, the Fifth Circuit found that the "amended claim simply alleges a higher amount owed by [the debtor] for the same type of employment tax liability stated [in the original claim]."  *Kolstad*, 928 F.2d at 175 (*citing Int'l Horizons,* 751 F.2d at 1216 for allowing an amendment "to plead a new

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

theory of recovery on the facts set forth in the original claim").[7]  Likewise, the Amended Claims filed by IRT and Hunter's Creek simply increase the amount owed to these landlords under a new theory of recovery (Section 502(b)(6)) on the same set of facts (the Debtors' rejection of the leases).

38.     In allowing the amendment to the claim almost a year after the bar date, the Fifth Circuit observed that "[o]nce a claim is timely filed . . . the essential role of the bar date has been fulfilled [and] [t]he process of claims adjudication may then adjust the rights of creditors among themselves." *Id.* at 174.  "The durability of [the claims amendment] process . . . reinforces our conclusion that bar dates do not inevitably straightjacket creditors into incorrect claims." *Id.* at 175.

39.     The Fifth Circuit also observed that denial of the amended claim "would achieve[ ] a windfall from denial of the amendment." *Id.*  The Court found that the IRS was entitled to realize the full amount due for employment taxes, and that denial of recovery for the amount of the claim would have resulted in an unjust enrichment of the other creditors. *Id.*

40.     The Amended Claims of IRT and Hunter's Creek are not "new" claims, as alleged by the Debtors.  The original timely filed claims of IRT and Hunter's Creek asserted claims for damages that arose from the Debtors' rejection of the leases and clearly indicated that the claimants reserved their rights to amend the claims as time progressed.  The Amended Claims asserted further damages from the Debtors' rejection of the same leases.  Clearly, the damages asserted in the Original Claims and Amended Claims arise from the same set of facts, namely, the rejection of the leases.  If the

---

[7]       In *Kolstad*, the debtor filed the original claim after the bar date pursuant to Bankruptcy Code Section 501(c) and Bankruptcy Rule 3004.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Amended Claims are not allowed as a new theory of recovery on the same set of facts alleged in the Original Claims, then the rule set forth by the Eleventh Circuit on no less than two separate occasions would appear to have no meaning whatsoever – a result that surely cannot be reached.

**B.    Principles of Equity Weigh Heavily in Favor of Allowing the Amended Claims.**

41.    Equitable considerations weigh heavily in favor of allowing the Amended Claims because the issuance of shares to IRT and Hunter's Creek on account of their claims for rejection damages will cause no harm to the Debtors or the other creditors in this case. The Debtor's Plan provides that the vast majority of claims in amount that arose prepetition or arose postpetition but are accorded prepetition status, such as damages calculated under Section 502(b)(6), shall receive shares of New Common Stock in Reorganized Winn-Dixie (as defined in the Plan). In particular, Classes 12, 13, 14, 15, and 16, which in the aggregate represent more than $985 million in unsecured claims with prepetition priority, are entitled to receive shares of New Common Stock on account of their claims.[8]

42.    By allowing the Amended Claims, the resultant shares issued to IRT and Hunter's Creek will not hinder the implementation of the Debtors' plan of reorganization and will not cause any noticeable dilution of the shares issued to other creditors. According to the Form 10-Q filed with the SEC on October 29, 2007, Reorganized Winn-Dixie is authorized to issue 400 million shares of common stock and has only issued about 54 million shares. The number of shares issued to IRT and Hunter's Creek on

---

[8]    In some instances these claimholders are entitled to receive cash in lieu of stock, but only on a "first-come first-served basis" and if the claimholder elects to reduce the amount of his claim. *See* Plan, pp. 9 – 12.

account of their calculation for rejection damages under Section 502(b)(6) would be infinitesimal (*less than 1/10th of 1%*) compared to the amount of New Common Stock already issued to creditors in this case, and compared to the amount of shares Reorganized Winn-Dixie is authorized to issue.[9]

43.     Therefore, not only are the Amended Claims proper under Eleventh Circuit case law, allowance of the Amended Claims will not have any appreciable effect on the success of the Debtors' reorganization or on the recovery realized by other creditors in this case.

**C.     IRT and Hunter's Creek Did Not Waive Their Right to Amend Their Claims by Not Objecting to the Claims Reduction Proposed by the Debtors.**

44.     The decisions by the Eleventh Circuit and other courts make it clear that IRT and Hunter's Creek can amend their Original Claims to plead a new theory of recovery arising from the Debtors' rejection of the leases.    After ignoring Eleventh Circuit case law, the Debtors go on to argue that if the Court believes that IRT and Hunter's Creek can indeed amend their Original Claims, then such amendments must be viewed as a "collateral attack" on the Claims Objection Order.

45.     First, as explained in more detail below, neither the Original Claims Objection nor the Claims Objection Order states that the claimants somehow waived their right to amend their Original Claims by not objecting to the proposed claims reduction. Second, even if the Debtors' interpretation of the Claims Objection Order is correct, the

---

[9]     As of September 19, 2007, the total number of issued and outstanding shares in Reorganized Winn-Dixie is 53,901,473, and the total number of authorized shares is 400,000,000. *See* Form 10-Q, filed on October 29, 2007 by Winn Dixie Stores, Inc., p. 2.  The approximate number of shares that would be issued to IRT and Hunter's Creek on account of their Amended Claims (as Class 13 Claims under the Plan) would be 47,887.  Therefore, the number of shares that would be issued to IRT and Hunter's Creek on account of their Amended Claims would be less than 1/10th of one percent (approximately .08%) of the New Common Stock already issued by Reorganized Winn-Dixie.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

result is inequitable due to the insufficient notice provided to the claimants in the Debtor's Original Claims Objection.

46.    The Amended Claims Objection states that paragraph 6 of the Claims Objection Order supports the Debtors' conclusion that IRT and Hunter's Creek waived their right to amend their claims for rejection damages and that any amounts exceeding the amount of the reduced Original Claims should be prospectively disallowed. Amended Claims Objection, at ¶ 13.  In their Amended Claims Objection, the Debtors state that the entry of the Claims Objection Order "reduced the amounts of the [Original Claims] and *disallowed* the amounts exceeding the reduced [Original Claim]."  Amended Claims Objection, at ¶ 13.  While it is certainly true that the Claims Objection Order reduced the amount of the Original Claims, there is absolutely no statement in the Claims Objection Order that any future amendment to the Original Claims would be automatically disallowed.

47.    Paragraph 6 of the Court's Claims Objection Order merely states the following:  "The overstated Claims listed on Exhibit E are reduced to the amounts set forth on Exhibit E under the heading Reduced Claim and the amounts exceeding the Reduced Claim Amount are disallowed."  Any common sense interpretation of this statement would lead the reader to the conclusion that the amount claimed *at that time* was reduced to the "Reduced Claim Amount."  This provision of the Claims Objection Order does not state, or even imply, that the claimants are barred from further amending their claim for rejection damages to plead a new theory of recovery based on the rejection of the leases, a right which the claimants have under controlling Eleventh Circuit case law. *See South Atlantic Financial Corp.*, 767 F.2d 814; *Int'l Horizons,* 751 F.2d 1213.

48.     Even if one does accept the Debtors' dubious interpretation of paragraph 6 of the Claims Objection Order, then the Debtors' Original Claims Objection was glaringly deficient in putting the claimants on notice that the lack of an objection to the reduction of their claims would result in the prospective disallowance of any further amendment to those claims.

49.     The only evidence of a waiver in the Debtors' Original Claims Objection was the statement that, the "[c]laimants may elect, by not timely responding to this Objection, to permit the Overstated Claims listed on Exhibit E to be reduced.  In the absence of a Response . . ., the Debtors will present to the Court the Proposed Order reducing the Overstated Claim."  Original Claims Objection, ¶ 24.  While no proposed order was attached to the Debtors' Original Claims Objection, it certainly could not be contemplated that the Claims Objection Order would go beyond the relief sought in the objection, and nowhere in the objection did the Debtors indicate that the relief sought by the Debtors included a waiver of the claimants' right to amend their claims.[10]

50.     Simply put, the Original Claims Objection did not state that a failure to respond would preclude IRT and Hunter's Creek from further amending their Original

---

[10]     A complete reading of the Original Claims Objection puts this argument of the Debtors into context and casts it into even further doubt.  First, the Original Claims Objection specifically categorized those claims that the Debtors sought to disallow, reduce fix or reclassify.  The Debtors correctly categorized the Prepetition Tax Claims as those that should be "disallowed," and listed them in an exhibit entitled "CLAIMS TO BE DISALLOWED."  Original Claims Objection, Exhibit B.  On the other hand, the Debtors categorized the Original Claims as those that should be reduced in amount, and listed them in an exhibit entitled "OVERSTATED CLAIMS TO BE REDUCED."  Original Claims Objection, Exhibit E.  There is no mention of disallowing the Original Claims and the other claims in this category, either prospectively or otherwise.  Second, the Debtors' own reservation of rights in their Original Claims Objection implies that they expected that the claims already filed might be amended.  The Original Claims Objection states that "[t]he Debtors expressly reserve the right to amend, modify, or supplement these objections and to file additional objections to the Disputes Claims or any other claims *(filed or not)* which may be asserted against the Debtors."  Original Claims Objection, ¶ 43 (emphasis added).  The "or not" certainly suggests that, in late 2007, the Debtor anticipated additional amounts might be asserted on these claims.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Claims. Even so, the Debtors now argue that this is in fact the effect of the language in the Claims Objection Order. In other words, the Debtors' interpretation of the relief provided in the Claims Objection Order (drafted by the Debtors) vastly exceeds the relief requested by the Debtors and noticed to claimants in the Original Claims Objection. To be precise, the Claims Objection Order provides that ". . . the amounts exceeding the Reduced Claims Amount are disallowed," *but* the Original Claims Objection did not include this phrase or request any similar form of relief. Thus, even if one interprets this phrase as the Debtors suggest, the inclusion of that relief in the draft order submitted to the Court without notifying the creditor body that such relief was being sought should not be rewarded.

### D.      The Amended Claims Met the Deadline for Claims Arising Postpetition.

51.      The Notice of Claims Bar Date provided that any claim arising postpetition must be asserted by January 5, 2007. The claims for rejection damages by IRT and Hunter's Creek were timely filed because the claims arose postpetition.

52.      The Notice of Claims Bar Date states that creditors must assert "any Claim arising against the Debtors in the period between February 21, 2005 and November 21, 2006 . . . no later than January 5, 2007." Notice of Claims Bar Date, ¶ 3 (original emphasis).[11] To ensure that this "drop-dead date" was made clear to all creditors, the Debtors restated the deadline in bold letters in the same notice. *Supra*, ¶ 15. The Notice of Claims Bar Date stated that capitalized terms not otherwise defined therein shall have the meanings ascribed to them in the Plan. Notice of Claims Bar Date, ¶ 1. The Plan

---

[11]      February 21, 2005 is the date the Debtors filed their voluntary bankruptcy petitions, and November 21, 2005 is the effective date of the Debtors' Plan. Therefore, the Notice of Claims Bar Date set the deadline for the filing of Claims arising postpetition as January 5, 2007.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

defines the term "Claim" with the same broad definition found in Bankruptcy Code Section 101(5), which would include any claim for rejection damages.

53.     In order to advance the argument that this bar date is inapplicable to the Amended Claims, the Debtors would have to argue that either the Amended Claims are not "Claims" or did not "arise" postpetition and before November 21, 2006. There is no question that a claim for rejection constitutes a "Claim" under the Bankruptcy Code, so instead the Debtors predictably argue that the claims of IRT and Hunter's Creek for rejection damages did not "arise against the Debtors in the [postpetition] period." Amended Claims Objection, fn. 3. As with their interpretation of the Claims Objection Order, the Debtors' interpretation of this notice defies the plain meaning of the relevant notice and statute.

54.     By definition, a claim for rejection damages cannot arise until a contract or lease is rejected, and as a matter of law, a lease or contract cannot be rejected until after the case is commenced. The claims of IRT and Hunter's Creek for rejection damages *did* arise postpetition. The Debtors rejected the Charlotte Lease and Orlando Lease more than seven months after the Petition Date. Therefore, it is axiomatic that the claims for rejection damages under Bankruptcy Code Section 502(b)(6) arose postpetition. In fact, the very language of Section 502 removes any doubt on this issue.

55.     Section 502(g) states that "[a] claim *arising from* the rejection, under section 365 . . . of an . . . unexpired lease of the debtor . . . shall be allowed . . . *as if* such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(g)

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

(emphasis added).[12]    The fact that Congress made a conscious decision to reduce the priority of such claims to be on par with prepetition claims does not alter the reality that such claims can only arise postpetition.  The reduction of the priority of rejection claims by Congress in no way alters the reality that claims for rejection of unexpired leases, by definition, can only "arise" postpetition.  "It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'"  *Laime v. U.S. Trustee*, 540 U.S. 526, 531, 124 S.Ct. 1023, 1030 (2007); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S.Ct. 1942 (2000).[13]  Here, the statute plainly states that a claim for rejection damages should be treated "as if" it arose prepetition, because, one must assume, Congress understood that such damages naturally arise postpetition.

56.    In fact, if rejection damages do somehow arise prepetition, there would be no need for Section 502(g).  Such an interpretation cannot be upheld because "a statute should not be construed in such a way as to render certain provisions superfluous or insignificant."  *Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 971 (5th Cir. 1981).

---

[12]    With the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which became effective after the Petition Date, the cited language is now found in 11 U.S.C. §502(g)(1).

[13]    Interpretations of 502(g) by courts and commentators confirm that the plain language of Section 502(g) reflects the reality that rejection damages arise postpetition even though they are afforded the priority of prepetition claims.  The Legislative History to Section 502(g) states that this provision "gives entities injured by the rejection of an . . . unexpired lease, either under section 365 or under a plan of reorganization, a prepetition claim for any resulting damages, and requires that the injured entity *be treated as* a prepetition creditor with respect to that claim."  House Report No. 95-595, 9th Cong., 1st Sess 354-55 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 65 (1978) (emphasis added).  A leading treatise also demonstrates that such claims actually arise postpetition even though they are treated otherwise:  "Section 502(g) *causes* the claim of a nondebtor party upon rejection of an executory contract or unexpired lease *to relate back* to the date of the filing of the petition." Collier on Bankruptcy (15th ed.), ¶ 502.08[1].

Greenberg Traurig, P.A.  |  Attorneys at Law  |  1221 Brickell Avenue  |  Miami, FL 33131  |  Tel 305.579.0500  |  Fax 305.579.0717  |  www.gtlaw.com

57.     The Debtors' own Notice of Claims Bar Date put potential claimants on notice that any Claims "arising" postpetition must be asserted by January 5, 2007. The use of the disjunctive in the Notice of Claims Bar Date[14] to differentiate an administrative claim from a claim that arose postpetition is a further indication that the Debtors did not intend for the January 5, 2007 bar date to apply solely to administrative claims. Indeed, one is hard-pressed to think of any claims, other than rejection damages, that could arise postpetition but are not administrative claims.

58.     The rejection claims of IRT and Hunter's Creek unquestionably arose postpetition. Thus, the Amended Claims, which were for rejection damages that arose postpetition (but under Section 502(g) are relegated to a priority status on par with prepetition claims), were filed within the Debtors' own "drop-dead date" for all postpetition claims – January 5, 2007.

## II.  MOTION FOR RECONSIDERATION OF DISALLOWANCE OF CLAIM

59.     In the event that the Court determines that the Original Claims Objection did operate prospectively to disallow any future amendment to the Original Claims, IRT and Hunter's Creek respectfully request that the Court reconsider this prospective disallowance pursuant to Bankruptcy Code Section 502(j) and Bankruptcy Rule 3008.

60.     Under Section 502(j), "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." In addition, Bankruptcy Rule 3008 provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate."

---

[14]     The Notice of Claims Bar Date applies to "all requests for payment of an Administrative Claim or any Claim arising against the Debtors in the [postpetition] period." Notice of Claims Bar Date, ¶ 3 (original emphasis).

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

61.     In this instance, there are at least two different grounds that establish cause to reconsider the Claims Objection Order to the extent that this Order disallows any prospective amendment of the Original Claims.  First, where the claimants act in good faith and the orders regarding the claims filing and objection process are confusing or contradictory, there is "cause" to reconsider and allow a previously disallowed claim. *See In re Leroux*, 216 B.R. 459, 465 (Bankr. D. Mass. 1997) (vacating order disallowing claim where the claims objection procedure was "confusing").  Here, the Debtors assert that the Claims Objection Order terminated the claimants' right to amend their claims, even though the plain language of that Order does not support that interpretation, and even though the Notice of Claims Bar Date filed the same week as the Claims Objection Order provided a later bar date for all claims arising postpetition.

62.     Second, as explained above, if the language of paragraph 6 of the Claims Objection Order operates to prospectively disallow the amendment of a timely filed claim, then the Original Claims Objection was deficient and did not put IRT and Hunter's Creek on sufficient notice of such disallowance.  Under this interpretation of the Claims Objection Order, the Order disallowed further amendment of the Original Claims even though the Original Claims Objection merely sought to reduce the amount asserted under the Original Claim.

63.     For these reasons, sufficient cause exists to merit reconsideration of the purported prospective disallowance of an amendment to the Original Claims that asserts a new theory of recovery on the same set of facts, and the claimants respectfully request a hearing on such reconsideration.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

## CONCLUSION

64.    To deny IRT and Hunter's Creek the right to amend their timely-filed claims in order to plead a new theory of recovery on the same set of facts would be directly contrary to established law, work a substantial injustice in this case, and produce precisely the type of result that the Eleventh Circuit sought to avoid in *Int'l Horizons* and *South Atlantic*. First and foremost, the Amended Claims are not "new" claims. On no less than two occasions, the Eleventh Circuit has held that the amendment of a timely filed proof of claim may be amended to assert a new theory of recovery on the same set of facts is not "new," but rather a perfectly appropriate and allowable amendment. Here, the Original Claims asserted a claim for unpaid taxes *arising from the rejection of the leases*, and expressly reserved the right to amend and supplement the claims. The Amended Claims asserted a claim for damages under Section 502(b)(6) *arising from the rejection of the same two leases*. The operative facts are the same – the rejection of the two leases; only a new theory of recovery is pled, after concluding that in fact IRT and Hunter's Run were actually entitled to maximum amount allowed under 502(b)(6).

65.    Second, a significant increase in the amount of a claim does not mean that the amended claim should be disallowed. In *Telephone Company of Central Florida,* the Court allowed an amendment that greatly increased the amount of a claim because the claimant needed the time to determine the proper amount of the claim. In that case, the Court allowed the amended claim even though the amended claim had a significant effect on the debtor's plan and the claimant never notified the debtor of the potential size of its claim. Here, an allowance of the Amended Claims would virtually no effect on Reorganized Winn-Dixie or its creditors *whatsoever.*

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

66.     Third, the Original Claims Objection and Claims Objection Order did not strip the claimants of their right to amend the timely filed Original Claims.  The Claims Objection Order does not state that the claimants are precluded from amending their Original Claims, and even if it did, the Original Claims Objection did not provide the claimants with notice or an opportunity to object to such disallowance.

67.     Finally, the Notice of Claims Bar Date made it abundantly clear that the final deadline to assert any claim that arose postpetition was January 5, 2007.  IRT and Hunter's Creek amended their claims by that deadline.

68.     Counsel for IRT and Hunter's Creek has conferred with Winn-Dixie's counsel on numerous occasions in a good faith endeavor to settle the dispute over the Amended Claims.

**WHEREFORE,** Equity One and its affiliates, IRT and Hunter's Creek, respectfully request that this Court (A) allow the Amended Claims filed by Hunter's Creek and IRT in the amounts of $878,478.41 and 185,244.41, respectively; or in the alternative, in the event that the Court determines that the Claims Objection Order disallowed any further amendment of the Original Claims, (B) grant reconsideration of the disallowance of Claim No. 13740 and Claim No. 13741 to the extent that such disallowance precludes IRT and Hunter's Creek from amending its claim to include rejection damages allowed under 11 U.S.C. § 502(b)(6); and (C) grant such other and further relief as the Court deems just and proper.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Respectfully submitted this 17th day of December, 2007.

**GREENBERG TRAURIG, P.A.**
Counsel for Equity One, Inc. and its
Affiliates
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Fax: (305) 579-0717

By:    /s/ Mark D. Bloom
       MARK D. BLOOM
      Florida Bar No. 303836
      PAUL J. KEENAN JR.
      Florida Bar No. 594687

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and copy of the foregoing has been served by electronic transmission and overnight mail, on December 17, 2007, on Cynthia C. Jackson, Esq., and Beau Bowin, Esq., Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida    32202, e-mail: cjackson@smthhulsey.com and bbowin@smthhulsey.com.

_____/s/ Mark D. Bloom_____
MARK D. BLOOM

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

# EXHIBIT A

| UNITED STATES BANKRUPTCY COURT<br>MIDDLE DISTRICT OF FLORIDA | | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor**
**WINN-DIXIE RALEIGH, INC.**

Case Number: 05-03839-3F1
Chapter: 11

DEBTOR  WINN - DIXIE STORES, INC
U S BANKRUPTCY COURT M D -FLORIDA
JOINTLY ADMINISTERED UNDER
CASE  05-03817 (3F1)
CHAPTER 11

NOTE  This form should not be used to make a claim for an administrative expense arising after the commencement of the case  A "request" for payment of an administrative expense may be filed pursuant to 11 U S C § 503 (See Local Rule 3001-1(B))

**CLAIM NO.: 12484**

Name of Creditor (The person or other entity to whom the debtor owes money or property).
**IRT PARTNERS, L.P.**

410788

Name and Address where notices should be sent
c/o Mark Bloom, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL 33131
Telephone  (305) 579-0500

Account or other number by which creditor identifies debtor.
Store No. 2087

Check here if  ☐ replaces
this claim      ☐ amends     a previously filed claim, dated _____

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other – **REJECTION DAMAGES – LEASE AGREEMENT**
**FOR STORE #2087**

☐ Retiree benefits as defined in 11  U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of SS# _____
Unpaid compensation for services performed
from _____ to _____
        (date)              (date)

**2** Date debt was incurred:
September 30, 2005[1]

**3.** If court judgment, date obtained: _____

**4. Total Amount of Claim at Time Case Filed:** $ 20,364.24    +    $ _____    +    $ _____    =    $ 20,364.24
                                          (Unsecured Nonpriority)         (Secured)              (Unsecured Priority)              (Total)

Complete items 5, 6, and 7 (as applicable) to further describe the amount(s) you indicated in item 4.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim.  Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff)

Brief Description of Collateral
☐ Real Estate  ☐ Motor Vehicle
☐ Other _____

Value of Collateral  $ N/A

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $  20,364.24
☐ Check this box if  a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or c) none or only part of your claim is entitled to priority

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $  N/A
Specify the priority of the claim
☐      Wages, salaries, or commissions (up to $4,650), * earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C  § 507(a)(3)
☐      Contributions to an employee benefit plan – 11 U S C  § 507(a)(4)
☐      Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(6).
☐      Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U S C  § 507(a)(7)
☐      Taxes or penalties owed to governmental units – 11 U S C  § 507(a)(8)
☐ Other – Specify applicable paragraph of 11 U S C  § 507(a)(1)
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after date of adjustment

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** Attach legible copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien  DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain.  If the documents are voluminous, attach a summary  Supporting documents should not exceed 5 pages

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. Research and/or copy charges will apply for future copy requests of claims.

This Space is for Court Use Only

RECEIVED
2005 NOV 15  AM 9: 42
LOGAN & COMPANY, INC
AS AGENT
U.S. BANKRUPTCY COURT
MIDDLE DISTRICT
OF FLORIDA

Date
11/11/05

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
IRT Partners, LP
By  Equity One, Inc General Partner
By _____
Doron Valero, President

Penalty for presenting fraudulent claim   Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

---

[1] Date of surrender of property per Order dated September 8, 2005 (C.P. No. 3405).

### STATEMENT OF CLAIM

This is a rejection damages claim for unpaid real estate taxes since 2004.

Pursuant to that certain lease dated December 4, 1979, as amended, IRT Partners, L.P. ("IRT") leased the premises located at 109 East Dallas Road in Stanley, North Carolina (Store # 2087) (the "Charlotte Store") to Debtor Winn-Dixie Raleigh, Inc., d/b/a Winn-Dixie Charlotte, Inc. ("Winn-Dixie Charlotte"), as tenant (the "Charlotte Lease"). Under the terms of the Orlando Lease, Winn-Dixie was required to pay to IRT real estate taxes in addition to basic rent and other charges.

By Order dated September 8, 2005 (C.P. No. 3405) (the "Rejection Order") Debtor Winn-Dixie Charlotte rejected the Charlotte Lease, and surrendered possession of the Charlotte Store to IRT on September 30, 2005. As of September 30, 2005, Winn-Dixie Charlotte was in default under the Charlotte Lease for the payment of real estate taxes in the amount of $11,636.71[2] for the calendar year 2004 and $8,727.53 (estimated) for the calendar year 2005 for a total of $20,364.24.

Under the Lease Agreement, the Debtor's obligation to pay 2005 real estate taxes will arise post-petition, accordingly, the Lessor will submit a request for payment of an administrative expense in the amount of the 2005 real estate taxes. However, the Lessor files this claim in the event the Court does not accord administrative expense priority to that portion of the 2005 real estate taxes that may have accrued pre-petition.

Under the terms of the Rejection Order the deadline for filing this rejection damages claim was Monday, October 31, 2005. In light of the extensive damage sustained to the offices of claimant's law firm as a result of Hurricane Wilma on October 23rd and 24th, claimant filed and served an unopposed *Motion for Enlargement of Time to File Claims for Rejection Damages*

---

[2] This amount is included in Claimant's separate Proof of Claim No. 10930.

*by IRT Partners, L.P. and Equity One (Hunter's Creek) Inc. Due to the Effects of Hurricane Wilma* on October 31, 2005 (C.P. No. 3979).

The Lease Agreement from which this claim arises exceeds 5 pages in length and accordingly is not attached. Copies are available upon reasonable request to Mark D. Bloom, Esq., attorney for claimant.

**CLAIMANT RESERVES THE RIGHT TO AMEND AND SUPPLEMENT THIS REJECTION DAMAGES CLAIM AS ESTIMATED AMOUNTS ARE FIXED AND ADDITIONAL INFORMATION BECOMES AVAILABLE.**

MIA-FS1\815662v01\ZSHX01_DOC\11/9/05

| UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF FLORIDA | | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor**
**WINN-DIXIE STORES, INC. et. al.**

Case Number 05-03817-3F1
Chapter  11

DEBTOR WINN - DIXIE STORES, INC
U S BANKRUPTCY COURT M D -FLORIDA
JOINTLY ADMINISTERED UNDER
CASE  05-03817 (3F1)
CHAPTER 11

**CLAIM NO.: 12486**

NOTE. This form should not be used to make a claim for an administrative expense arising after the commencement of the case  A "request" for payment of an administrative expense may be filed pursuant to 11 U S C § 503 (See Local Rule 3001-1(B))

Name of Creditor (The person or other entity to whom the debtor owes money or property)
**EQUITY ONE (HUNTER'S CREEK) INC.**  411171

Name and Address where notices should be sent
c/o Mark Bloom, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL 33131
Telephone. (305) 579-0500

Check here if    ☐ replaces
this claim       ☐ amends    a previously filed claim, dated _____

Account or other number by which creditor identifies debtor
Store No. 2391

**1  Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other – **REJECTION DAMAGES – LEASE AGREEMENT FOR STORE #2391**

☐ Retiree benefits as defined in 11 U S C § 1114(a)
☐ Wages, salanes, and compensation (fill out below)
Last four digits of SS# _____
Unpaid compensation for services performed
from _____ to _____
      (date)        (date)

2  Date debt was incurred.
**September 30, 2005[1]**

3.  If court judgment, date obtained

4   Total Amount of Claim at Time Case Filed: $_87,498.59_ + $_____ + $_____ = $_87,498.59_
    (Unsecured Nonpriority)   (Secured)   (Unsecured Priority)   (Total)

Complete items 5, 6, and 7 (as applicable) to further describe the amount(s) indicated in item 4
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

**5.  Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____
Value of Collateral  $_____ N/A _____
Amount of arrearage and other charges at time case filed included in secured claim, if any  $_____

**6.  Unsecured Nonpriority Claim** $_____87,498.59_____
☐ Check this box if  a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority

**7.  Unsecured Priority Claim**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____ N/A _____
Specify the priority of the claim
☐    Wages, salanes, or commissions (up to $4,650), * earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(3)
☐    Contributions to an employee benefit plan – 11 U S C § 507(a)(4)
☐    Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(6).
☐    Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U S C § 507(a)(7)
☐    Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)
☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(1)
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after date of adjustment

**8.  Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim
**9.  Supporting Documents:** Attach legible copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien   DO NOT SEND ORIGINAL DOCUMENTS   If the documents are not available, explain  If the documents are voluminous, attach a summary  Supporting documents should not exceed 5 pages
**10.  Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim  Research and/or copy charges will apply for future copy requests of claims,

This Space is for Court Use Only

U.S. BANKRUPTCY COURT
MIDDLE DISTRICT
OF FLORIDA
2005 NOV 15   AM 9: 42
RECEIVED
LOGAN & COMPANY, INC
AS AGENT

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this |
|---|---|
| 11/11/05 | claim (attach copy of power of attorney, if any) Equity One (Hunter's Creek) Inc By_____ Doron Shore, Vice President |

Penalty for presenting fraudulent claim   Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

[1] Date of surrender of property per Order dated September 8, 2005 (C.P. No. 3405)

## STATEMENT OF CLAIM

This is a rejection damages claim for unpaid common area maintenance expenses ("CAM"), real estate taxes and insurance that have accrued since 2004.

Pursuant to that certain lease dated December 17, 1997, as amended, Equity One Hunter's Creek, Inc. ("Hunter's Creek") leases the premises located at 4161 Town Center Boulevard in Orlando, Florida (Store # 2391) (the "Orlando Store") to Debtor Winn-Dixie Stores, Inc. ("Winn-Dixie"), as tenant (the "Orlando Lease"). Under the terms of the Orlando Lease, Winn-Dixie is required to pay Hunter's Creek, CAM, real estate taxes and insurance premiums, in addition to basic rent and other charges.

By Order dated September 8, 2005 (C.P. No. 3405) (the "Rejection Order") Debtor Winn-Dixie rejected the Orlando Lease, and surrendered possession of the Orlando Store to Hunter's Creek on September 30, 2005 As of September 30, 2005, Winn-Dixie was in default under the Orlando Lease for the payment of CAM due in the amount of $129.46 for the calendar year 2004; estimated real estate taxes for the calendar year 2005 in the amount of $61,744.38[2]; and for the payment of $14,291.50 in insurance premiums for the calendar year 2004 and $11,333.25 for the calendar year 2005, such that the total amount due to Hunter's Creek is $87,498.59.

Under the Lease Agreement, the Debtor's obligation to pay 2005 real estate taxes will arise post-petition, accordingly, the Lessor will submit a request for payment of an administrative expense in the amount of the 2005 real estate taxes. However, the Lessor files this claim in the event the Court does not accord administrative expense priority to that portion of the 2005 real estate taxes that may have accrued pre-petition.

---

[2] This amount includes $13,925 13, which is included in the Claimant's separate Proof of Claim No. 11257

Under the terms of the Rejection Order the deadline for filing this rejection damages claim was Monday, October 31, 2005. In light of the extensive damage sustained to the offices of claimant's law firm as a result of Hurricane Wilma on October 23rd and 24th, claimant filed and served an unopposed *Motion for Enlargement of Time to File Claims for Rejection Damages by IRT Partners, L.P. and Equity One (Hunter's Creek) Inc. Due to the Effects of Hurricane Wilma* on October 31, 2005 (C.P. No. 3979).

The Lease Agreement from which this claim arises exceeds 5 pages in length and accordingly is not attached. Copies are available upon reasonable request to Mark D. Bloom, Esq., attorney for claimant.

**CLAIMANT RESERVES THE RIGHT TO AMEND AND SUPPLEMENT THIS REJECTION DAMAGES CLAIM AS ESTIMATED AMOUNTS ARE FIXED AND ADDITIONAL INFORMATION BECOMES AVAILABLE.**

MIA-FS1\814588v01\ZRFS01_ DOC\11/9/05

# EXHIBIT B

| UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF FLORIDA | AMENDED PROOF OF CLAIM |
|---|---|

| Name of Debtor WINN-DIXIE STORES, INC. et. al. | Case Number: 05-03817-3F1 Chapter: 11 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503 (See Local Rule 3001-1(B))

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**EQUITY ONE (Hunter's Creek) INC.**

Name and Address where notices should be sent:
**c/o Mark Bloom, Esq.**
**Greenberg Traurig, P.A.**
**1221 Brickell Avenue**
**Miami, FL  33131**

Telephone:  **(305) 579-0500**

| Account or other number by which creditor identifies debtor: Store No. 2391 | Check here if this claim | ☐ replaces ☒ amends | Claim No. 12486 a previously filed claim, dated **11/15/2005** |
|---|---|---|---|

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other – **REJECTION DAMAGES - LEASE AGREEMENT FOR STORE #2391**

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS#:_____
  Unpaid compensation for services performed
  from _____ to _____
       (date)              (date)

**2. Date debt was incurred:**
**February 2005**

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 878,478.41  + $_____ + $_____ = $ 878,478.41
(Unsecured Nonpriority)    (Secured)    (Unsecured Priority)    (Total)

Complete items 5, 6, and 7 (as applicable) to further describe the amount(s) you indicated in item 4.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

  Brief Description of Collateral:
  ☐ Real Estate  ☐ Motor Vehicle
  ☐ Other _____

  Value of Collateral: $_____ N/A _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $ **878,478.41**
☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____ N/A _____
Specify the priority of the claim:
☐    Wages, salaries, or commissions (up to $4,650), * earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3).
☐    Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4).
☐    Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(6).
☐    Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. § 507(a)(7).
☐    Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(1)
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after date of adjustment*

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach legible copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Supporting documents should not exceed 5 pages

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. Research and/or copy charges will apply for future copy requests of claims.

This Space is for Court Use Only

| Date: 1/3/07 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any). Equity One (Hunter's Creek), Inc. By: Arthur L. Gallagher, Esq. Its: General Counsel and Vice President |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

MIA 179272384v4 12/21/2006

## STATEMENT OF CLAIM

This Amended Proof of Claim is intended to amend and supersede Claim No. 12486, and is amended to include the additional claims arising from the rejection of the subject Charlotte Lease, as defined and described below.

### THE AMOUNT OF THE REJECTION CLAIM HAS BEEN CALCULATED PURSUANT TO 11 U.S.C. § 502(b)(6), AND NO FURTHER REDUCTION IS NECESSARY OR APPROPRIATE.

Pursuant to that certain lease dated December 17, 1997, as amended, Equity One Hunter's Creek, Inc. ("Hunter's Creek") leased the premises located at 4161 Town Center Boulevard in Orlando, Florida (Store # 2391) (the "Orlando Store") to Debtor Winn-Dixie Stores, Inc. ("Winn-Dixie"), as tenant (the "Orlando Lease"). Under the terms of the Orlando Lease, Winn-Dixie was required to pay Hunter's Creek, CAM, real estate taxes and insurance premiums, in addition to basic rent and other charges.

By Order dated September 8, 2005 (C.P. No. 3405) (the "Rejection Order"), the Court approved Winn-Dixie's rejection the Orlando Lease, and thereafter Winn-Dixie surrendered possession of the Orlando Store to Hunter's Creek on September 30, 2005. As of September 30, 2005, Winn-Dixie was in default under the Orlando Lease for the payment of CAM due in the amount of $129.46 for the calendar year 2004; estimated real estate taxes for the calendar year 2005 in the amount of $61,744.38[1]; and for the payment of $14,291.50 in insurance premiums for the calendar year 2004 and $11,333.25 for the calendar year 2005, such that the total amount due to Hunter's Creek was $87,498.59. Claimant filed its original proof of claim for rejection damages in the amount of $87,498.59 on November 15, 2005 (Claim No. 12486) (the "Hunter's Creek Proof of Claim").[2]

---

[1] This amount includes $13,925.13 which is included in the Claimant's separate Proof of Claim No. 11257.

[2] Under the terms of the Rejection Order the deadline for filing this rejection damages claim was Monday, October 31, 2005. In light of the extensive damage sustained to the offices of claimant's law firm as a result of Hurricane Wilma on October 23rd and 24th, claimant filed and served an unopposed *Motion for Enlargement of Time to File*

As indicated in the Statement of Claim attached to the Hunter's Creek Proof of Claim, Hunter's Creek acknowledged that while certain obligations under the terms of the Orlando Lease may have accrued prepetition, such amounts would only become due and payable postpetition. (e.g., real estate taxes for 2005). Given the uncertainty as to whether such amounts would be treated as a prepetition claim or postpetition administrative expense, Hunter's Creek included such amount in the Hunter's Creek Proof of Claim.

By Order dated November 30, 2006 (C.P. No. 12902), the Court reduced the amount of the Hunter's Creek claim to $16,913.96 by disallowing the amounts claimed for charges that became due and payable postpetition. In Paragraph 3 of the *Notice of (A) Entry of Order Confirming Plan of Reorganization, (B) Occurrence of Effective Date of Plan, and (C) Bar Dates for Filing Claims Arising Before Effective Date and Other Administrative Claims* dated December 6, 2006 (C.P. No. 12991), all claimants received notice that the bar date to file proofs of claim for any amounts arising in the period between February 21, 2005 and November 21, 2006 is January 5, 2007. This Amended Proof of Claim amends the Hunter's Creek Proof of Claim to include such amounts.

This Amended Proof of Claim seeks the total amount of $878,478.41, consisting of:

- $16,913.96 (as allowed by Order dated November 30, 2006 (C.P. No. 12902)); <u>plus</u>

- $861,564.45 (damages for unpaid rent under the Orlando Lease, as reduced pursuant to 11 U.S.C. § 502(b)(6))

The annual rent under the Orlando Lease was $422,853.72, and the lease was set to expire on September 23, 2018.

---

*Claims for Rejection Damages by IRT Partners, L.P. and Equity One (Hunter's Creek) Inc. Due to the Effects of Hurricane Wilma* on October 31, 2005 (the "Enlargement Motion") (C.P. No. 3979). As acknowledged in Exhibit "E" of the Court's Order dated November 30, 2006 on the *Twenty-Fifth Omnibus Objection to Claims of Winn-Dixie Stores, Inc.* (C.P. No. 12902), the Enlargement Motion remains pending before the Court, and no new deadline for the filing of this proof of claim has been fixed.

The Lease Agreement from which this claim arises exceeds 5 pages in length and accordingly is not attached.  Copies are available upon reasonable request to Mark D. Bloom, Esq., attorney for claimant.

| UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF FLORIDA | | AMENDED PROOF OF CLAIM |
|---|---|---|

Name of Debtor
**WINN-DIXIE RALEIGH, INC.**

Case Number: **05-03839-3F1**
Chapter: 11

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503 (See Local Rule 3001-1(B))

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**IRT PARTNERS, L.P.**

Name and Address where notices should be sent:
**c/o Mark Bloom, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL  33131
Telephone:  (305) 579-0500**

Account or other number by which creditor identifies debtor:
**Store No. 2087**

Check here if this claim ☐ replaces ☒ amends a previously filed claim, dated **11/15/2005**  Claim No. 12484

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other – **REJECTION DAMAGES – LEASE AGREEMENT FOR STORE #2087**

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of SS#:____
Unpaid compensation for services performed
from _____ to _____

**2. Date debt was incurred:** February 2005

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ **185,244.67** (Unsecured Nonpriority) + $ ____ (Secured) + $ ____ (Unsecured Priority) = $ **185,244.67** (Total)

Complete items 5, 6, and 7 (as applicable) to further describe the amount(s) you indicated in item 4.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other ____
Value of Collateral: $ N/A
Amount of arrearage and other charges at time case filed included in secured claim, if any: $____

**6. Unsecured Nonpriority Claim** $ **185,244.67**
☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ N/A
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(1)
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after date of adjustment

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
**9. Supporting Documents:** *Attach legible copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Supporting documents should not exceed 5 pages
**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. Research and/or copy charges will apply for future copy requests of claims.

This Space is for Court Use Only

Date: **1/3/07**

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
IRT Partners, L.P.
By: Equity One, Inc., as general partner

By: Arthur L. Gallagher, Esq.
Its: General Counsel and Vice President

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## STATEMENT OF CLAIM

This Amended Proof of Claim is intended to amend and supersede Claim No. 12484, which is amended to include the additional claims arising from the rejection of the subject Charlotte Lease, as defined and described below.

**THE AMOUNT OF THE REJECTION CLAIM HAS BEEN CALCULATED PURSUANT TO 11 U.S.C. § 502(b)(6), AND NO FURTHER REDUCTION IS NECESSARY OR APPROPRIATE.**

Pursuant to that certain lease dated December 4, 1979, as amended, IRT Partners, L.P. ("IRT") leased the premises located at 109 East Dallas Road in Stanley, North Carolina (Store # 2087) (the "Charlotte Store") to Debtor Winn-Dixie Raleigh, Inc., d/b/a Winn-Dixie Charlotte, Inc. ("Winn-Dixie Charlotte"), as tenant (the "Charlotte Lease"). Under the terms of the Orlando Lease, Winn-Dixie was required to pay to IRT real estate taxes in addition to basic rent and other charges.

By Order dated September 8, 2005 (C.P. No. 3405) (the "Rejection Order"), the Court approved Winn-Dixie Charlotte's rejection the Charlotte Lease, and surrendered possession of the Charlotte Store to IRT on September 30, 2005. As of September 30, 2005, Winn-Dixie Charlotte was in default under the Charlotte Lease for the payment of real estate taxes in the amount of $11,636.71[1] for the calendar year 2004 and $8,727.53 (estimated) for the calendar year 2005 for a total of $20,364.24. Claimant filed its original proof of claim for rejection damages in the amount of $20,364.24 on November 15, 2005 (Claim No. 12484) (the "IRT Proof of Claim").[2]

---

[1] This amount is included in Claimant's separate Proof of Claim No. 10930.

[2] Under the terms of the Rejection Order the deadline for filing this rejection damages claim was Monday, October 31, 2005. In light of the extensive damage sustained to the offices of claimant's law firm as a result of Hurricane Wilma on October 23rd and 24th, claimant filed and served an unopposed *Motion for Enlargement of Time to File Claims for Rejection Damages by IRT Partners, L.P. and Equity One (Hunter's Creek) Inc. Due to the Effects of Hurricane Wilma* on October 31, 2005 (the "Enlargement Motion") (C.P. No. 3979). As acknowledged in Exhibit "E" of the Court's Order dated November 30, 2006 on the *Twenty-Fifth Omnibus Objection to Claims of Winn-Dixie Stores, Inc.* (C.P. No. 12902), the Enlargement Motion remains pending before the Court, and no new deadline for the filing of this proof of claim has been fixed.

*MIA 179280662v3 12/21/2006*

As indicated in the Statement of Claim attached to the IRT Proof of Claim, IRT acknowledged that while certain obligations under the terms of the Charlotte Lease may have accrued prepetition, such amounts would only become due and payable postpetition. (e.g., real estate taxes for 2005). Given the uncertainty as to whether such amounts would be treated as a prepetition claim or postpetition administrative expense, IRT included such amount in the IRT Proof of Claim.

By Order dated November 30, 2006 (C.P. No. 12902), the Court reduced the amount of IRT's claim to $11,636.71 by disallowing the amounts claimed for charges that became due and payable postpetition. In Paragraph 3 of the *Notice of (A) Entry of Order Confirming Plan of Reorganization, (B) Occurrence of Effective Date of Plan, and (C) Bar Dates for Filing Claims Arising Before Effective Date and Other Administrative Claims* dated December 6, 2006 (C.P. No. 12991), all claimants received notice that the bar date to file proofs of claim for any amounts arising in the period between February 21, 2005 and November 21, 2006 is January 5, 2007. This Amended Proof of Claim amends the IRT Proof of Claim to include such amounts.

This Amended Proof of Claim seeks the total amount of $185,244.67, consisting of:

- $11,636.71 (as allowed by Order dated November 30, 2006 (C.P. No. 12902)); plus
- $173,607.96 (damages for unpaid rent under the Charlotte Lease, as reduced pursuant to 11 U.S.C. § 502(b)(6))

The annual rent under the Charlotte Lease was $173,607.96, and the lease was set to expire on October 31, 2006.

The Lease Agreement from which this claim arises exceeds 5 pages in length and accordingly is not attached. Copies are available upon reasonable request to Mark D. Bloom, Esq., attorney for claimant.