**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |

**WINN-DIXIE'S TRIAL MEMORANDUM ON THE OBJECTION**
**TO THE CLAIMS OF EQUITY ONE AND IRT PARTNERS**

Winn-Dixie Stores, Inc. and twenty-three of its reorganized debtor affiliates (collectively, "Winn-Dixie"), submit this memorandum in accordance with the Court's order scheduling trial (Doc. No. 18486) on Winn-Dixie's objection to the claims that were filed late by IRT Partners, L.P and Equity One (Hunter's Creek), Inc. (Doc. No. 15849).

A.    **Uncontested Facts**

1.    On September 8, 2005, the Court entered an order (Doc. No. 3405) (the "Rejection Order"), authorizing Winn-Dixie to reject, among others, Winn-Dixie's leases with (i) IRT Partners, L.P. ("IRT") for Store Number 2087 located in Stanley, North Carolina (the "Carolina Lease") and (ii) Equity One (Hunter's Creek), Inc. ("Equity One") for Store Number 2391 located in Orlando, Florida (the "Orlando Lease") (collectively, the "Leases").  Pursuant to the Rejection Order, the rejection was effective on the later of the tenth calendar day following Winn-Dixie's service of a notice of rejection to the landlords and the date Winn-Dixie surrendered the leased premises (the "Notice of Rejection").

2.      On September 14, 2005, Winn-Dixie sent a Notice of Rejection to both IRT and Equity One informing them that Winn-Dixie had rejected the Leases.  Because Winn-Dixie had already surrendered the premises, Winn-Dixie's rejection of the Leases was effective as of September 24, 2005.

3.      The Rejection Order required that the "landlord of any Lease rejected pursuant to this Order must file a proof of claim for damages arising from the rejection of the applicable lease within thirty (30) days following the applicable Rejection Date or be forever barred from asserting any such claim."  The rejection claims bar date with respect to the Leases therefore was October 24, 2005 (the "Rejection Claims Bar Date").

4.      On October 31, 2005, Equity One and IRT filed a motion to extend the Rejection Claims Bar Date to November 15, 2005 (the "Extension Motion") (Doc. No. 3979).  Equity One and IRT never requested that the motion be heard, and the Court has never ruled on the Extension Motion.

5.      Nevertheless, on November 15, 2005, IRT filed proof of claim number 12484 as an unsecured claim for "rejection damages" in the amount of $20,364.24, for prepetition amounts due under the Carolina Lease (the "IRT Claim").

6.      On the same date, Equity One filed proof of claim number 12486 as an unsecured claim for "rejection damages" in the amount of $87,498.59, for prepetition amounts due under the Orlando Lease (the "Equity One Claim").

7.      The following year, on August 9, 2006, Winn-Dixie filed its Joint Plan of Reorganization (as subsequently modified and supplemented, the "Plan") (Doc. Nos. 10058, 11606 and 11765).

8.     On October 31, 2006, Winn-Dixie filed an objection to the Equity One Claim and the IRT Claim on the grounds that the claims were overstated (Doc. No. 12274) (the "Objection").  The Objection required that the claimants file any response in opposition by November 20, 2006.  Neither IRT nor Equity One opposed or otherwise responded to the Objection.

9.     On November 30, 2006, the Court entered an order sustaining Winn-Dixie's Objection (the "Claims Reduction Order") (Doc. No. 12902), (i) reducing and allowing the IRT Claim in the amount of $11,636.71 and disallowing any excess amount (the "Allowed IRT Claim") and (ii) reducing and allowing the Equity One Claim in the amount of  $16,913.96 and disallowing any excess amount (the "Allowed Equity One Claim") (Doc. No. 12902) (collectively, the "Allowed Claims").  Neither IRT nor Equity One appealed the Claims Reduction Order.

10.     On November 9, 2006, the Court entered its order confirming the Plan (the "Confirmation Order") (Doc. No. 12440).  Neither Equity One nor IRT objected to or appealed from the Confirmation Order.  The Plan became effective on November 21, 2006 (the "Effective Date").

11.     Under the terms of the confirmed Plan, all allowed unsecured claims, including the Allowed Claims, were entitled to receive a distribution of new common stock issued by Winn-Dixie (the "New Common Stock") in exchange for their claims. The Allowed Claims of Equity One and IRT are classified under Section 4.3 of the Plan as unsecured Class 13 Landlord Claims.

12.     On December 22, 2006, Winn-Dixie distributed to Equity One, and Equity One accepted, 782 shares of New Common Stock in payment of the Allowed Equity One

Claim.   On January 9, 2007, Winn-Dixie distributed to IRT, and IRT accepted, 538 shares of New Common Stock in payment of the Allowed IRT Claim.

13.    Pursuant to Section 12.13 of the Plan, the distributions of New Common Stock to unsecured creditors are "in complete satisfaction" of any claim such creditors may have against Winn-Dixie.  *Plan, Section 12.13, p. 43.*

14.    Similarly, pursuant to Section 4.3 of the Plan (which describes the treatment of Class 13 Landlord Claims, including the Allowed IRT Claim and the Allowed Equity One Claim), each holder of a claim receives its distribution of New Common Stock "in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim."  *Plan, Section 4.3, p. 18*

15.    On January 5, 2007, *a year and a half* after the expiration of the Rejection Claims Bar Date, and *three months* after confirmation of the Plan,  Equity One filed proof of claim number 13741 in the amount of $878,478.41 (the "New Equity One Claim"). The claim states on its face that it "amends" the Equity One Claim (Claim No. 12486) for additional Section 502 rejection damages (an increase of over $860,000) for the Orlando Lease.   On January 5, 2007, IRT similarly filed proof of claim number 13740 in the amount of $185,244.67, which stated that it "amends" the IRT Claim (Claim No. 12484) for additional Section 502 rejection damages (an increase of over $170,000) under the Carolina Lease (the "New IRT Claim") (the New IRT Claim and the New Equity One Claim are referred to below collectively, as the "New Claims").

16.    On April 5, 2007, Winn-Dixie filed an objection to the New Claims (Doc. No. 15849) (the "Objection to New Claims"), on the grounds that the claims are barred by the terms of Winn-Dixie's confirmed Plan.

B.      **Contested Facts**

Winn-Dixie is not aware of any disputed facts at this time.


C.      **Winn-Dixie's Objection**

The New Equity One Claim and the New IRT Claim should be disallowed because the liabilities asserted in those claims are barred by the terms of the confirmed Plan and the doctrine of *res judicata.*

Pursuant to the confirmed Plan, the distributions of New Common Stock to IRT and Equity One were in "full satisfaction, settlement, release and discharge of and in exchange of the Allowed Claims". *Plan, Section 4.3(g), p. 18.*

In addition, according to Section 12.13 of the Plan, any claims or liabilities IRT and Equity One may have *other* than the Allowed Claims (including specifically, under Section 12.13, "all debts of the kind specified in Section 502") are "discharged" and Equity One and IRT are "precluded from asserting" them.  *Plan, Section 12.13, p. 43.*

In *In re New River Shipyard Inc., 3*55 B.R. 894 (Bankr. S.D. Fla. 2006), a creditor filed an amended  claim two months after confirmation of a plan of reorganization, purporting to increase its claim from approximately $980,000 to $1.9 million.  Judge Olson disallowed the amended claim, holding that it was "barred by *res judicata*" *because* of the confirmation of the debtor's plan:

> A creditor's treatment under a confirmed plan of reorganization creates a contractual relationship between the debtor and the creditor.  The creditor's pre-confirmation claim is subsumed in and replaced by the new contract created by the confirmed plan; "each claimant gets a 'new'

claim, based on whatever treatment is accorded to it in the plan itself." The initial claim filed by the creditor during the pendency of the case is dead, replaced by the new contractual obligation created by the creditor's treatment under the confirmed plan.

The doctrine of *res judicata* in bankruptcy proceedings "not only bars a court from relitigating issues that have been litigated in a cause but also bars a court from litigating issues that *may have been litigated*. MSM had every opportunity to amend its claim and litigate its entitlement to the new consequential damages it seeks at or before the confirmation hearing. It did not do so, and its attempt to amend its claim two months after confirmation is barred by *res judicata*.

> *Id.* at 912 (citations omitted; emphasis in the original).

Just like the creditor in *New River*, the New Claims are barred by the terms of Winn-Dixie's Plan. Once the Plan was confirmed, Equity One and IRT's original claims were "dead" and replaced by the Allowed Claims to be treated in accordance with the terms of the Plan. Pursuant to the Plan, Equity One and IRT received distributions of New Common Stock for the Allowed Claims "in full satisfaction, settlement, release and discharge and in exchange for such Allowed Claims". *Plan, Section 12.13, p.43.*

In addition, pursuant to Section 12.13 of the Plan (as well as Section 1141(d)(1)(A) of the Bankruptcy Code), Winn-Dixie is now discharged "from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502" (the very type of claim Equity One and IRT are asserting now) and all creditors, including Equity One and IRT, are "precluded" from seeking additional amounts. Section 12.13 of the Plan provides:

> … [A]ll consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties and … the Debtors, and each of them, shall (i) be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in *Section 502* of the Bankruptcy Code … [and] all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence or other activity of any nature that occurred prior to the Effective Date… .

> *Plan, Section 12.13, p. 43.* (emphasis added).

In *New River,* Judge Olson relied on *Holstein v. Brill*, 987 F.2d 1268 (7th Cir. 1993). In *Holstein,* the Seventh Circuit denied a creditor's attempt to amend its claim after confirmation of the debtor's plan of reorganization, on the ground that confirmation of the plan constituted a final adjudication, discharging all debts other than as provided in the plan:

> Confirmation of the plan of reorganization is … equivalent to final judgment in ordinary civil litigation. … Confirmation automatically discharges all debts other than those provided in the plan, 11 U.S.C. § 1141(d)(1)(A), and "each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself."

> And whether or not late-breaking claims affect third parties' entitlements, they assuredly disrupt the orderly process of adjudication. To every thing there is a season,

and the season for stating the amount of the debt is before the confirmation.

. . .

We asked the parties whether any other court ever had allowed a claim to be increased, for *any* reason, after confirmation of a plan of reorganization.   Neither side could find such a decision under the 1978 Code, or for that matter under the 1898 Act during its final 50 years.   Our search was equally fruitless.   Without excluding the possibility of post-confirmation amendment of a claim for cogent reason, we conclude that a creditor's inattention to the case or careless error in calculation does not suffice.

*Holstein*, 987 F.2d @ 1270-71 (emphasis in original).

The New Claims should be disallowed because they are barred by the terms of the confirmed Plan, pursuant to which Equity One and IRT received New Common Stock in *full satisfaction* of their claims.  Equity One and IRT are expressly precluded by the Plan from asserting any additional amounts.   The New Claims are also barred by the *res judicata* effect of the Confirmation Order.  Equity One and IRT had every opportunity to amend their rejection damage claims prior to confirmation and failed to do so.   Their attempt to amend the Allowed Claims three months after confirmation is barred by the Plan and *res judicata*. [1]

---

[1]    Even in the absence of the confirmed Plan, the New Claims would also be barred by the *res judicata* effect of the Claims Reduction Order.  Neither Equity One nor IRT appealed from the Claims Reduction Order or moved for reconsideration under Rule 9024, Fed. R. Bankr. Proc.  Equity One and IRT were required by Rule 9024 to file any motion for reconsideration by November 30, 2007 (a year after the Claims Reduction Order was entered).  *See In re Smith*, 299 B.R. 687, 691 (Bankr. S.D. Ga. 2003) (Rule 60(b), rather than Section 502(j) applies "when the Court has actually entered an order allowing or disallowing the claim subsequent to a challenge to that claim"); *In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987) (same).

D.    **Facts in Support of Objection and the Evidence to Be Relied Upon**

The facts set forth in Section A, *supra*, support Winn-Dixie's Objection to IRT's claim number 13740 and Equity One's claim number 13741.  The evidence upon which Winn-Dixie will rely to establish these facts consists of:

1.    The pleadings identified in Section A.

2.    The deposition excerpts identified in Section G.

E.    **Contested Legal Issues**

1.    Whether the New Claims asserted by IRT and Equity One are barred by the confirmed Plan.

2.    Whether the New Claims are barred by the doctrine of *res judicata*.

F.    **List of Pleadings and Pending Motions**

| Docket No. | Date Filed | Pleading | Filed By |
|---|---|---|---|
| N/A | 11/15/05 | Proof of Claim 12484 | IRT |
| N/A | 11/15/05 | Proof of Claim 12486 | Equity One |
| N/A | 1/5/07 | Proof of Claim 13740 | IRT |
| N/A | 1/5/07 | Proof of Claim 13741 | Equity One |
| 2707 | 8/1/05 | Amended Motion (I) to Sell Leasehold Interests in Targeted Stores Free and Clear of Liens, Claims and Interests and Exempt from Taxes, (II) to Assume and Assign Leases, (III) to Reject Targeted Leases the Debtors are Unable to Sell, and (IV) Granting Related Relief | Winn-Dixie |
| 3405 | 9/8/05 | Order Granting Amended Motion (2707) | Court |

| 3979 | 10/31/05 | Motion to Extend Time to File Claims for Rejection Damages by IRT Partners, L.P. and Equity One (Hunter's Creek) Inc. due to the Effects of Hurricane Wilma. | Equity One |
|---|---|---|---|
| 3462 | 9/15/05 | Notice of Filing and Certificate of Service re: Notices of Rejection of Unexpired Leases served September 14, 2005 | Winn-Dixie |
| 10058 | 8/9/06 | Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors | Winn-Dixie |
| 12274 | 10/31/06 | Twenty–Fifth Omnibus Objection to (A) Duplicate Liability Claims, (B) Amended and Superseded Claims, (C) No liability Claims, (D) No Liability Misclassified Claims, (E) Overstated Claims, (F) Overstated Misclassified Claims, (G) Unliquidated Claims, (H) Misclassified Unliquidated Claim, (I) Executory Contract Claims and (J) Late Claims | Winn-Dixie |
| 12440 | 11/9/06 | Order Confirming Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors | Court |
| 12902 | 11/30/06 | Order on Debtors' Twenty Fifth Omnibus Claims Objection (12274) | Court |
| 15849 | 4/5/07 | Debtors' Objection to Claim No. 13740 filed by IRT Partners, L.P. and Claim No. 13741 filed by EquityOne (Hunter's Creek), Inc. | Winn-Dixie |

G.     **Legal Authority**

The following is the legal authority upon which Winn-Dixie may rely.  Winn-Dixie may rely upon additional authority at trial or in any post-trial briefing.

1.     *Holstein v. Brill*, 987 F.2d 1268 (7th Cir. 1993).

2.     *In re New River Shipyard, Inc.,* 355 B.R. 894 (Bankr. S.D. Fla. 2006).

3.     *In re International Horizons, Inc.,* 751 F.2d 1213 (11th Cir. 1985).

*4.     In re Norris Grain Company, 81 B.R. 103* (Bankr. M.D. Fla. 1987).

5.     *In the Matter of Interco Incorporated,* 149 B.R. 934 (Bankr. E.D. Mo.

1993).

6.     *In re Lee Way Holding Co.,* 178 B.R. 976 (Bankr. S.D. Ohio. 1995).

7.     *In re Marineland Ocean Resorts, Inc.,* 242 B.R. 748 (Bankr. M.D. Fla.

1999).

8.     *In re Smith*, 299 B.R. 687 (Bankr. S.D. Ga. 2003).

9.     *In re Colley*, 814 F.2d 1008 (5th Cir. 1987).

10.    11 U.S.C. § 1141 (2007).

11.    11 U.S.C. § 502 (2007).

10.    Fed. R. Bankr. P. 9024.


H.     **Core Proceeding**

This is a core proceeding and Winn-Dixie consents to the jurisdiction of the Court

and the entry of final orders or judgments by the Court.


I.     **Settlement**

The parties have made a good faith endeavor to settle the matter and have been

unable to do so.

**<u>Objections to Exhibits</u>**

Winn-Dixie has no objections to the exhibits identified by Equity One and IRT on the Exhibit List filed with the Court on December 17, 2007 (Doc. No. 19311).

SMITH HULSEY & BUSEY

By____/s/ *Beau Bowin*_____
        Stephen D. Busey
        Cynthia C. Jackson
        Beau Bowin

Florida Bar Number 792551
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)

Counsel for Winn-Dixie

**<u>Certificate of Service</u>**

I certify that a copy of the foregoing has been furnished to Paul J. Keenan by electronic mail on December 17, 2007 and by Federal Express on December 18, 2007.

<u>        /s/ <em>Beau Bowin</em>        </u><br>
Attorney

00590499