**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re: Case No. 05-03817-3F1

WINN-DIXIE STORES, INC., et al., Chapter 11

Jointly Administered

Reorganized Debtors.
_______________________________/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This Case is before the Court upon Winn-Dixie Stores, Inc. and twenty-three of its reorganized debtor affiliates ("Debtors")' Objection to Claims Filed by IRT Partners, L.P and Equity One (Hunter's Creek), Inc. After a hearing held on December 20, 2007, the Court makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

On September 8, 2005, the Court entered an order (the "Rejection Order"), authorizing Debtors to reject their leases with (i) IRT Partners, L.P. ("IRT") for Store Number 2087 located in Stanley, North Carolina (the "Carolina Lease") and (ii) Equity One, Inc. ("Equity One") for Store Number 2391 located in Orlando, Florida (the "Orlando Lease") (collectively, the "Leases"). (Debtors' Ex. 6). Pursuant to the Rejection Order, the rejection was effective on the later of the tenth calendar day following service of a notice of rejection to the landlords or the date Debtors surrendered the leased premises. (Debtors' Ex. 6). The Rejection Order also required that the "landlord of any Lease rejected pursuant to this Order must file a proof of claim for damages arising from the rejection of the applicable lease within thirty (30) days

following the applicable Rejection Date or be forever barred from asserting any such claim." (Debtors' Ex. 6).

On September 14, 2005, Debtors sent a Notice of Rejection to both IRT and Equity One informing them that they had rejected the Leases. (Debtors' Ex. 8). On October 31, 2005, Equity One and IRT filed a motion to extend the Rejection Claims Bar Date to November 15, 2005 (the "Extension Motion"). (Claimants' Ex. 9). A ruling was never made on the Extension Motion as Equity One and IRT never requested a hearing. On November 15, 2005, IRT filed proof of claim number 12484 as an unsecured claim for "rejection damages," in the amount of $20,364.24, for prepetition amounts due under the Carolina Lease (the "IRT Claim"). (Claimants' Ex. 10). On the same date, Equity One filed proof of claim number 12486 as an unsecured claim for "rejection damages," in the amount of $87,498.59, for prepetition amounts due under the Orlando Lease (the "Equity One Claim"). (Claimants' Ex. 11).

On October 31, 2006, Debtors filed an objection to the Equity One and the IRT Claims upon the basis that the claims were overstated (the "Objection"). The Objection required the claimants to file any response in opposition by November 20, 2006. Neither IRT nor Equity One opposed or otherwise responded to the Objection. On November 30, 2006, the Court entered an order sustaining the Debtors' Objection (the "Claims Reduction Order"), (i) reducing and allowing the IRT Claim in the amount of $11,636.71 and disallowing any excess amount and (ii) reducing and allowing the Equity One Claim in the amount of $16,913.96 and disallowing any excess amount (collectively, the "Allowed Claims"). (Debtors' Ex. 12). Neither IRT nor Equity One appealed the Claims Reduction Order.

Debtors' Joint Plan of Reorganization was filed on August 9, 2006 and all interested parties received full disclosure of the Plan's terms and conditions. (Debtors' Ex. 9). On November 9, 2006, the Court entered its order confirming the Plan (the "Confirmation Order"). (Debtors' Ex. 11). Neither Equity One nor IRT objected to or appealed from the Confirmation Order. The Plan became effective on November 21, 2006. Under the terms of the confirmed Plan, all allowed unsecured claims were entitled to receive a distribution of New Common Stock issued by Debtors in exchange for their claims. The claims of Equity One and IRT are classified under § 4.3 of the Plan as unsecured Class 13 Landlord Claims. (Debtors' Ex. 11).

On December 22, 2006, Debtors distributed to Equity One, and Equity One accepted, 782 shares of New Common Stock in payment of its claim. On January 9, 2007, Winn-Dixie distributed to IRT, and IRT accepted, 538 shares of New Common Stock in payment of its claim. Pursuant to § 12.13 of the Plan, the distributions of New Common Stock to unsecured creditors are "in complete satisfaction" of any claim such creditors may have against Winn-Dixie. *Plan, § 12.13, p. 43.* (Debtors' Ex. 11). Similarly, pursuant to § 4.3 of the Plan (which describes the treatment of Class 13 Landlord Claims, including the IRT and Equity One Claims), each holder of a claim receives its distribution of New Common Stock "in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim." *Plan, § 4.3, p. 18.*

Paragraph 40 of the Confirmation Order set the deadline for filing rejection damages (the "Rejection Damages Bar Date") for contracts and leases as December 9, 2006. (Debtors' Ex. 11). On January 5, 2007, Equity One filed proof claim number 13741, in

the amount of $878,478.41. (Debtors' Ex. 4).[1] The claim states on its face that it amends the Equity One Claim (Claim No. 12486) for additional § 502 rejection damages (an increase of over $860,000) for the Orlando Lease. (Debtors' Ex. 4). On January 5, 2007, IRT filed proof of claim number 13740 in the amount of $185,244.67. (Debtors' Ex. 3). The claim states that it amends the IRT Claim (Claim No. 12484) for additional § 502 rejection damages (an increase of over $170,000) under the Carolina Lease. (Debtors' Ex. 3). On April 5, 2007, Winn-Dixie filed an objection to the amendments upon the basis that the claims are barred by the terms of Winn-Dixie's confirmed Plan. (Debtors' Ex. 13).

## CONCLUSIONS OF LAW

The issue before the Court for its determination is whether the doctrine of res judicata bars the IRT and Equity One Claims as amended (the "Amended Claims"). Thus, the Court will examine the specific language contained within Debtors' Plan as well as the effect that res judicata has on confirmed plans, in addition to any applicable policy considerations.[2]

Debtors maintain that pursuant to the specified terms in the confirmed Plan the distributions of New Common Stock to IRT and Equity One ("Claimants") were "in full

---

[1] January 5, 2007 was the deadline for filing administrative claims (the "Administrative Claims Deadline). However, as the Amended Claims are for rejection damages the Administrative Claims Deadline is not applicable.

[2] The rejection of the leases constituted a pre-petition breach by operation of 11 U.S.C. § 502(g). In re Unidigital, Inc., 262 B.R. 283 (Bankr. D. Del. 2001); In re Jamesway Corp., 202 B.R. 697 (Bankr. S.D. N.Y. 1996). Specifically, § 502(g) provides: "A claim arising from the rejection, under 365 of this title ... of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed ... or disallowed ... the same as if such claim had arisen before the date of the filing of the petition." As Paragraph 40 of the Confirmation Order set the Rejection Damages Bar Date as December 9, 2006, the Amended Claims were not timely filed.

satisfaction, settlement, release and discharge of and in exchange of the Allowed Claim." *Plan § 4.3(g), p.18.* Additionally, Debtors highlight the language contained in § 12.13 of the Plan, which provides:

> ... [A]ll consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties and ... the Debtors, and each of them, shall (i) be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in *Section 502* of the Bankruptcy Code ... [and] all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence or other activity of any nature that occurred prior to the Effective Date... .
>
> *Plan, Section 12.13, p. 43.* (emphasis added).

Thus, based upon the terms and specific language contained in the Plan, Debtors assert that Claimants are precluded, pursuant to the doctrine of res judicata, from asserting any additional amounts. In support of their argument, Debtors cite to a bankruptcy decision out of the Southern District of Florida. In re New River Shipyard Inc., 355 B.R. 894 (Bankr. S.D. Fla. 2006). In New River, a creditor filed an amended claim two months after the plan of reorganization was confirmed. Id. at 908. The amendment increased the creditor's claim from approximately $980,000 to $1.9 million. Id. Judge Olson disallowed the amended claim, upon the basis that it was barred by the doctrine of *res judicata*:

> A creditor's treatment under a confirmed plan of reorganization creates a contractual relationship between the debtor and the creditor. The creditor's pre-confirmation claim is subsumed in and replaced by the new contract created by the confirmed plan; "each claimant gets a 'new'

> claim, based on whatever treatment is accorded to it in the plan itself." The initial claim filed by the creditor during the pendency of the case is dead, replaced by the new contractual obligation created by the creditor's treatment under the confirmed plan.
>
> The doctrine of *res judicata* in bankruptcy proceedings "not only bars a court from relitigating issues that have been litigated in a cause but also bars a court from litigating issues that *may have been litigated.*

Id. at 912 (citations omitted; emphasis in the original).

In reaching its holding, the court in New River relied on Holstein v. Brill, 987 F.2d 1268 (7th Cir. 1993). In Holstein, the Seventh Circuit denied a creditor's attempt to amend its claim after confirmation of the debtor's plan of reorganization, upon the basis that confirmation of the plan constituted a final adjudication, discharging all debts other than as provided in the plan:

> Confirmation of the plan of reorganization is ... equivalent to final judgment in ordinary civil litigation. ... Confirmation automatically discharges all debts other than those provided in the plan, 11 U.S.C. § 1141(d)(1)(A), and "each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself."
>
> And whether or not late-breaking claims affect third parties' entitlements, they assuredly disrupt the orderly process of adjudication. To every thing there is a season, and the season for stating the amount of the debt is before the confirmation.

Id. at 1270-71 (emphasis in original).

Accordingly, the Debtors argue that the Amended Claims are barred by the *res judicata* effect of the Confirmation Order. Debtors also note that the Claimants had every opportunity to amend their rejection damage claims prior to confirmation, yet failed to do so in a timely fashion.

Conversely, Claimants argue that the claims as amended should be "freely allowed" pursuant to the law in the Eleventh Circuit. In re New Horizons, 751 F.2d 1213, (11th Cir. 1985). In New Horizons the court stated that, "in a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." Id. at 1216. Claimants assert that as the Amended Claims seek a new theory of recovery, upon the same set of facts as the original claims, that they are entitled to be allowed as they are not "new" claims.

Although the Court recognizes that the law in New Horizons is controlling precedent, the holding does not support the proposition that a claim can be freely amended at *any* point in time. Consideration must be given to the terms of the confirmed plan, even if an amended claim fits within the guidelines discussed above. In fact, in declining to allow the amended claim, the Eleventh Circuit specifically discussed the appellant's failure to timely assert its claim, although it had "multiple opportunities" to do so. Id. at 1218. The Court noted that in addition to not objecting to the disclosure statement, which failed to schedule corporate income taxes, the appellant also failed to object to the plan, either in writing or at the confirmation hearing. Id. at 1218-1219. Accordingly, the court concluded that equitable considerations did not support the amendment as the appellant was given every chance to assert its rights yet failed to do so in a timely fashion.[3] Id. at 1219. Similarly to the appellant in New Horizons, the Claimants in the instant case also had multiple opportunities to assert their rights prior to confirmation, yet failed to do so, despite receiving full disclosure of the Plan's terms and

[3] The amended proof of claim at issue in New Horizons, was filed *prior* to plan confirmation.

conditions. Therefore, although the Court agrees with the Claimants' assertion that the Amended Claims do not constitute "new" claims, the claims are not entitled to be "freely" amended based upon the circumstances involved.

Additionally, Claimants maintain that despite the specific language contained in the Debtors' Plan, the reservation of rights contained in the last paragraph of each statement of claim preserved their right to amend the claims post-confirmation. The reservation provides:

> "CLAIMANT RESERVES THE RIGHT TO AMEND AND SUPPLEMENT THIS REJECTION DAMAGES CLAIM AS ESTIMATED AMOUNTS ARE FIXED AND ADDITIONAL INFORMATION BECOMES AVAILABLE."[4]

(Claimants' Exs. 10-11).

In support of their position, Claimants rely upon the case of In re Telephone Company of Central Florida, 308 B.R. 579 (Bankr. M.D. Fla. 2004). In Telephone Company, the court held that although the IRS did not object to the confirmation order it would allow the IRS's post bar-date amendment to the proof of claim, which was for approximately $2 million more than the original claim. Id. at 583. In reaching its holding, the court specifically noted that the IRS did not intentionally or negligently delay filing the amended proof of claim and that it may have been able to file its claim earlier if the debtor had fully cooperated with the investigation. Id. The court also noted that the debtor had reason to know that subsequent proofs of claims would be filed after the IRS completed its examination, as the debtor had not yet filed its returns for the

---

[4] Claimants assert that they were attempting to mitigate their damages, and therefore did not originally include a damages calculation for unpaid future rent pursuant to 11 U.S.C. § 502(b)(6). However, the Court does not find this to be an adequate reason for the Claimants' inaction

applicable period. Id. at 582-583. It is for this reason, the IRS stamped the original proofs of claims "PENDING EXAMINATION." Id.

In addition to not being binding precedent upon this Court, the decision in Telephone Company is distinguishable from the instant case. Unlike the instant case, extenuating circumstances were involved in the situation surrounding the dispute in Telephone Company. Notably, the debtor's failure to cooperate caused the extenuating circumstances, which resulted in the IRS not being able to file its proof of claim in a timely manner. Id. at 583. Although, the court did note that the IRS should have objected at the confirmation hearing, the debtor was on adequate notice that the claim would be amended as its tax returns for the applicable period had not yet been filed. Id. at 582-583. Thus, based upon the *specific* circumstances before it, the court made a judgment call in favor of allowing the IRS to amend its claim. Id. at 583. The instant case, however, does not present extenuating circumstances that justify the Claimants' decision to sit on their rights. Further, the Court finds that the language referenced in the statement of claims is essentially "stock language" that cannot reasonably be considered to operate as a post-confirmation reservation of rights, especially in a case such as the instant one, in which tens of thousands of claims were filed.

It is the policy of this Court that a creditor cannot reasonably expect to sit on its rights throughout the process leading up to confirmation, then argue that it is entitled to relief post-confirmation, without consideration to the specified terms of the confirmed plan. Just as the W or L in the score box at a sporting event determines a team's standing, a creditor's standing and rights, unless preserved, are determined by the terms

---

throughout the entire process leading up to confirmation. Claimants could have at least filed amended claims that approximated the damages, prior to the confirmation hearing.

of the confirmed plan.[5] Thus, the ball game truly is played at the confirmation hearing. In the instant case, the Claimants essentially forfeited their rights by failing to adequately protect their interests prior to the Plan being confirmed, despite having multiple opportunities to do so. To hold otherwise would render the terms of the confirmed Plan meaningless and open pandora's box, as there would be no finality or resolution, the entire concept behind confirmation of a plan.[6]

## CONCLUSION

Based upon the above, the Debtors' Objection to the Claims of IRT and Equity One are Sustained. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Dated this 7 day of February, 2008, in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Copies to:
Stephen D. Busey, Esquire
D.J. Baker, Esquire
Mark D. Bloom, Esquire
United States Trustee

[5] As discussed supra, the terms of the Debtors' Confirmed Plan were *extremely specific* and clearly set forth.

[6] As the Court's holding is not based upon a finding that the Original Claims Objection Order operated prospectively to disallow any future amendment to the original claims, 11 U.S.C. § 502(j), which provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause," is not applicable. The Court also notes that the Claimants neither alleged nor does the Court find a showing of excusable neglect.