UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:
WINN-DIXIE STORES, INC. et al.,

                         Reorganized Debtors.

_____/


FLORIDA TAX COLLECTORS,

                    Appellants,

v.
                                      Case No.  3:07-cv-240-J-33
                                      Bankr. No. 3:05-bk-3817-JAF

WINN-DIXIE STORES, INC. et al.,

                    Appellees and
                    Cross-Appellants.

_____/


## OPINION

This cause comes before the Court on appeal from the United States Bankruptcy Court's

Order Denying Florida Tax Collectors' Motion for Leave to File Proofs of Claim Without Prejudice

(Bankr. Doc. #14814), Order Granting in Part and Denying in Part Florida Tax Collectors' Motion

to Dismiss Debtors' Objections to Florida Tax Claims and Motion for Order Determining Tax

Liabilities (Bankr. Doc. #14815), and Order Denying Florida Tax Collectors' Motion to Abstain

From Consideration of Debtors' Objection to Florida Tax Claims and Motion for Order Determining

Tax Liabilities (Bankr. Doc. #14816), all entered on January 19, 2007.  The appeals have been

consolidated.[1]  Winn-Dixie also filed a cross-appeal on the Motion to Dismiss.[2]  The Florida Tax

---

[1] The present case, 3:07-cv-240-J-33, is the lead case and the consolidated member cases are
(continued...)

Collectors ("The Tax Collectors") filed their initial brief (Doc. #12) on December 26, 2007. Winn-Dixie filed its answer brief and initial brief on cross-appeal (Doc. #16) on January 10, 2008. On January 22, 2008, the Tax Collectors filed a reply brief (Doc. #20). Winn-Dixie filed a reply brief as to the issues in the cross-appeal (Doc. #21) on February 4, 2008.

The Court also permitted the Property Appraisers of Alachua County, Monroe County, Sarasota County, Citrus County, Lee County, Okaloosa County, and Pasco County, Florida, ("The Property Appraisers") to file an amicus curiae brief (Doc. #15), which was filed on January 4, 2008. Winn-Dixie filed an answer brief (Doc. #18) on January 18, 2008, and The Tax Collectors filed an answer brief in support of the amicus curiae brief (Doc. #17) on January 17, 2008. On January 22, 2008, the Property Appraisers filed a reply brief (Doc. #19). For the reasons stated below, the decision of the Bankruptcy Court on the three orders challenged in this consolidated appeal are affirmed.

## I.    Procedural Background

On February 21, 2005, Winn-Dixie, including its affiliates and subsidiaries, petitioned for reorganization under chapter 11 of the Bankruptcy Code in the Southern District of New York.[3] The bankruptcy was transferred to the Jacksonville Division of the Middle District of Florida on April 13, 2005, where Winn-Dixie's cases were jointly administered. Per the Bankruptcy Court's April

---

[1](...continued)
3:07-cv-241-J-33 and 3:07-cv-242-J-33.

[2] Winn-Dixie's cross-appeal was filed under Case No. 3:07-cv-241-J-33.

[3] Winn-Dixie filed its Petition prior to the effective date of October 17, 2005 for certain provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Accordingly, the provisions of BAPCPA shall not apply to this appeal and all statutory references are to the Bankruptcy Code as it existed on the filing date of Winn-Dixie's Petition: February 21, 2005.

28, 2005 Order, August 22, 2005 was set as the final date for governmental entities to file proofs of claim. (Bankr. Doc. #4056.) The Tax Collectors filed two motions to extend the time to file proofs of claim because the 2005 tax rolls had not yet been certified. (Bankr. Docs. ## 3026, 4008.) Both motions were granted, giving the Tax Collectors until November 23, 2005 to file a proof of claim. (Bankr. Docs. ## 3069, 4056.) On November 21, 2005, the Tax Collectors filed a motion for leave to file proofs of claim without prejudice to the Tax Collectors asserting sovereign immunity defenses. (Bankr. Doc. #4283.) Winn-Dixie filed a response, objecting to the motion. (Bankr. Doc. # 5874.) The Tax Collectors filed Proof of Claim 12566 for ad valorem taxes in the amount of $68,455,687.93, on November 22, 2005. (Doc. #16 at 2.) Winn-Dixie paid the 2004 ad valorem taxes in November 2004; the 2005 and 2006 taxes remain unpaid. (Doc. #16 at 11-12.)

On August 8, 2006, Winn-Dixie filed an objection to the Tax Collectors' proof of claim under §§ 502 and 505 of the Bankruptcy Code, requesting that the Bankruptcy Court redetermine the market values of the properties identified in Winn-Dixie's motion in order to reassess the amount of taxes owed to the Tax Collectors for the tax years 2004, 2005, and 2006 (the "Section 505 Motion"). (Bankr. Doc. #10046) Winn-Dixie also asked the court to determine the appropriate interest rate for late payments, to authorize Winn-Dixie to offset its tax liabilities for later years for any previous excessive payments, and to extinguish any liens against Winn-Dixie's properties once the taxes were paid. The Tax Collectors responded by filing a Motion to Dismiss Winn-Dixie's Section 505 Motion on August 28, 2006, arguing that the Bankruptcy Court did not have jurisdiction to consider the Section 505 Motion. (Bankr. Doc. #10609.) The Tax Collectors claimed that the Eleventh Amendment, the Tenth Amendment, and the Tax Injunction Act prevented the Bankruptcy Court from determining Winn-Dixie's tax liabilities. The Tax Collectors also argued that Winn-

Dixie failed to meet the jurisdictional requirements of § 505, Winn-Dixie had waived its rights to challenge the taxes under Florida law, and the challenge should be brought in state court. Winn-Dixie filed a response, stating that the Tax Collectors had availed themselves of the Bankruptcy Court's jurisdiction by filing their proof of claim; thereby, waiving any sovereign immunity defenses. (Bankr. Doc. #11599.) Winn-Dixie further averred that it had satisfied all jurisdictional requirements and was not time barred from asserting a challenge to the tax liabilities.

The Tax Collectors also filed a motion requesting that the Bankruptcy Court abstain from considering the Section 505 Motion pursuant to 28 U.S.C. § 1334(c)(1). (Bankr. Doc. #10594.) Winn-Dixie opposed the motion. (Bankr. Doc. # 11598.) The Bankruptcy Court held a hearing on all three motions on October 5, 2006. (Bankr. Doc. #11598.) On January 19, 2007, the Bankruptcy Court entered three separate orders denying the Tax Collectors' Motion for Leave to File Proof of Claim Without Prejudice, granting in part and denying in part the Motion to Dismiss, and denying the Tax Collectors' Motion to Abstain. (Bankr. Docs.# # 14814, 14815, 14816.) The Bankruptcy Court first determined that the Tax Collectors waived any sovereign immunity defense by filing their proof of claim, and any such defense could not be preserved by filing a motion for leave to file such proof of claim without waiver of sovereign immunity. (Bankr. Doc. # 14815 at 5-6.) According to the Bankruptcy Court, the defense could not be preserved because the Tax Collectors did not possess sovereign immunity as the Bankruptcy Court was only exercising its *in rem* jurisdiction. (Id. at 6 n.8.) Also, neither the Tenth Amendment, nor the Tax Injunction Act, precluded the application of § 505 in bankruptcy proceedings. (Id. at 4-6.)

In addition, the Bankruptcy Court determined that it possessed jurisdiction over the tax claims even though no adversary proceeding was filed because § 505 permits debtors to challenge

their tax assessments in bankruptcy proceedings, even when those challenges would be time barred under state law. (Id. at 10.) However, the Bankruptcy Court did find that it lacked jurisdiction over the challenges to the already paid taxes, even though Winn-Dixie asserted those challenges as offsets to the unpaid taxes, because such challenges needed to be brought within the statute of limitations for contesting a tax under Florida law. (Id. at 9-10.) Since that time had passed, Winn-Dixie was time barred, and the Bankruptcy Court dismissed those portions of the Section 505 Motion requesting redetermination of the 2004 and 2005 paid taxes. (Id.) The Bankruptcy Court also rejected the Tax Collectors' request that it abstain from considering Winn-Dixie's objection to the proof of claim since it found that the interests of both creditors and debtor would be served by determining Winn-Dixie's tax liability in one forum. (Bankr. Doc. # 14816 at 3-4.) The court also found that since Winn-Dixie was time barred from contesting these taxes in state court, it would be an overwhelming prejudice to Winn-Dixie to abstain from this matter. (Id. at 4.)

On January 26, 2007, the Tax Collectors filed a notice of appeal from all three orders: Case Nos. 3:07-cv-240-J-33, 3:07-cv-241-J-33, and 3:07-cv-242-J-33, respectively. Winn-Dixie filed a cross-appeal in Case No. 3:07-cv-241-J-33 from the Dismissal Order which dismissed the portions of Winn-Dixie's motion that requested a redetermination of taxes paid for the years 2004 and 2005. Before the Tax Collectors filed their appeal, the Bankruptcy Court entered its Order Confirming Joint Plan of Reorganization of Winn-Dixie on November 9, 2006, pursuant to confirmation proceedings. (Bankr. Doc. #12440.) The Plan provided for the full payment of the allowed claims of Class 10 creditors, which included the Tax Collectors. Thus, the Tax Collectors' claim would be paid in full, with an applied interest rate of 7%, over a six-year period, pursuant to the Plan. The Tax Collectors appealed the Bankruptcy Court's decision, objecting to the Bankruptcy Court's

jurisdiction, pursuant to § 505, to determine Winn-Dixie's tax liability for ad valorem taxes, which could reduce the amount to be paid on the Tax Collectors' claim. The Bankruptcy Court has not yet held a hearing on Winn-Dixie's Section 505 Motion to redetermine the tax liability.

## II.    Standard of Review

Several different standards of review govern this appeal. A bankruptcy court's equitable determinations are reviewed for abuse of discretion. See In re Red Carpet Corp. of Panama City Beach, 902 F.2d 883, 890 (11th Cir. 1990). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." Id. A bankruptcy court's decision on a motion to abstain is also reviewed for abuse of discretion. Boyes v. Shell Oil Prods. Co., 199 F.3d 1260, 1265 (11th Cir. 2000). A bankruptcy court's conclusions of law and its ruling on a motion to dismiss are reviewed de novo. Id.; In re Sublett, 895 F.2d 1381, 1383 (11th Cir. 1990). The factual findings of the bankruptcy court will be upheld unless clearly erroneous. Sublett, 895 F.2d at 1383.

## III.    Arguments on Appeal

The Tax Collectors assert the following arguments on appeal: (1) Winn-Dixie's Section 505 Motion should be dismissed for lack of subject matter jurisdiction pursuant to the Eleventh Amendment and Tenth Amendment; (2) the Tax Injunction Act prevents the Bankruptcy Court from exercising jurisdiction over tax claims because the court will be preventing the collection of a tax; (3) Winn-Dixie was required to file a complaint and commence an adversary proceeding to contest its tax liability instead of objecting to the claim and requesting a redetermination of tax liability pursuant to § 505; thus, Winn-Dixie is now time barred from bringing these claims in a Florida

court or before the bankruptcy court; (4) Winn-Dixie lacks standing to challenge the tax liability on its leased properties, since the landlords are the true parties in interest and not debtors in the bankruptcy proceeding; (5) Winn-Dixie should be equitably estopped from asserting an objection under § 505 because Winn-Dixie did not provide notice of its intent to challenge the tax assessment prior to filing its Section 505 motion; and (6) the Bankruptcy Court should have abstained from considering Winn-Dixie's Section 505 Motion because the time for contesting the taxes in state court has expired and payment in full of the claim will not have any adverse affect on the other creditors.

On cross-appeal, Winn-Dixie claims that the Bankruptcy Court did in fact have jurisdiction to redetermine the assessed value on the paid taxes because the potential reassessments would have been considered offsets to future tax payments. Thus, Winn-Dixie submits to this Court that the Bankruptcy Court should have allowed Winn-Dixie to bring its claim within the four-year statute of limitations for seeking a tax refund under Florida law.

## IV. Analysis

### A. Eleventh Amendment and Sovereign Immunity

The Tax Collectors claim that, as an arm of the State of Florida, they have sovereign immunity from the Bankruptcy Court's jurisdiction under the Eleventh Amendment. The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. By its simple terms, the Eleventh Amendment precludes suits against an unconsenting State by either its own citizens or citizens of another state. Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440,

446 (2004).    However, the sovereign immunity of the States is not absolute, and States "may still be bound by some judicial actions without their consent."  Id.  This is particularly true within the realm of bankruptcy jurisdiction.  The Constitution authorizes Congress "[t]o establish . . . uniform laws on the subject of bankruptcies throughout the United States."  U.S. Const. art. I, § 8.  The Supreme Court recently clarified the States' Eleventh Amendment immunity within the context of bankruptcy jurisdiction in both Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 446 (2004) and Central Virginia Community College v. Katz, 546 U.S. 356 (2006).

In Hood and Katz, the Supreme Court considered whether Congress's attempt to abrogate state sovereign immunity under 11 U.S.C. § 106(a) was valid.[4]  In both cases, the Court declined to reach the statutory question because the Court determined that the Bankruptcy Clause of Article 1, Section 8 of the Constitution served to abrogate the States' sovereign immunity.  Hood concerned the issue of dischargeability of student loans under § 523(a)(8).  In Hood, the debtor received a general discharge, but the discharge did not cover her student loans as the loans were not listed in the bankruptcy proceeding.  Hood, 541 U.S. at 444.  The debtor thereafter reopened her bankruptcy case to seek a determination of whether her loans were dischargeable as an undue hardship.  Id.  As required by the Federal Rules of Bankruptcy Procedure, the debtor filed a complaint, including Tennessee Student Assistance, a state entity, as a named party.  Id. at 445.  The controversy in Katz concerned a debtor that conducted business with Virginia colleges prior to filing for bankruptcy.  Katz, 546 U.S. at 360.  The bankruptcy trustee commenced proceedings to avoid and recover alleged preferential transfers made to the colleges when the debtor was insolvent.  Id.  In both cases, the

---

[4] Section 106 provides that state sovereign immunity is abrogated with respect to numerous sections of the Bankruptcy Code.

Court found that these proceedings principally concerned property of the bankruptcy estate and were therefore not a suit against a state as contemplated by the Eleventh Amendment.

Bankruptcy jurisdiction is primarily based on *in rem* jurisdiction. Katz, 546 U.S. at 369. Because the court's jurisdiction is predicated on the debtor and his estate, and not the creditors, "its exercise does not, in the usual case, interfere with state sovereignty even when States' interests are affected." Id. at 370. In reviewing the history of the enactment of the Bankruptcy Clause, the Court determined that "the source of Congress's authority to effect this intrusion upon state sovereignty simply did not contravene the norms [the] Court has understood the Eleventh Amendment to exemplify." Id. at 375 The Court concluded that "[t]he history of the Bankruptcy Clause, the reasons it was inserted in the Constitution, and the legislation both proposed and enacted under its auspices immediately following ratification of the Constitution demonstrate that it was intended not just as a grant of legislative authority to Congress, but also to authorize limited subordination of state sovereign immunity in the bankruptcy arena." Id. at 362-63. "In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." Id. at 378. Accordingly, Congress may treat the states as it would other creditors in the bankruptcy context. Id. at 379 ("[Congress's] power to do so arises from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the Convention, not by statute.").

Even if a state chooses not to participate in a bankruptcy proceeding, it is still bound by the decisions of the bankruptcy court. See id. at 448. The policy rationale of this maxim is to allow the bankruptcy court to effect a complete resolution of the debtor's estate, even if there is a lack of participation by all of the creditors. Id. at 447. However, if a state voluntarily submits itself before

the bankruptcy court, it becomes bound by the procedures and rulings of that court. Gardner v. New Jersey, 329 U.S. 565, 573 (1947). "When the State becomes the actor and files a claim against the fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim." Id. at 574; see also In re Burke, 146 F.3d 1313 (11th Cir. 1998) (finding state waived its sovereign immunity by filing a proof of claim for unpaid income taxes in the debtors' bankruptcy proceedings).

Here, the tax claims are clearly part of the res of the bankruptcy estate, and thus firmly within the *in rem* jurisdiction of the Bankruptcy Court. Therefore, the Tax Collectors have no sovereign immunity with respect to these claims. Additionally, while there is no Eleventh Amendment sovereign immunity afforded to the Tax Collectors in this case, the Tax Collectors waived any immunity they might have had by filing a proof of claim. Thus, the Bankruptcy Court did not err in denying the Tax Collectors' motion for leave to file proof of claim without prejudice, and the Section 505 Motion is not barred by the Eleventh Amendment.

**B.    Tenth Amendment**

The Tax Collectors also argue that § 505 violates the Tenth Amendment since the Bankruptcy Court's reassessment of Winn-Dixie's taxes infringes upon a state function. The Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Constitution also empowers Congress to create uniform, federal bankruptcy laws. U.S. Const. art. I, § 8. In creating uniform bankruptcy laws, Congress deemed it proper to allow bankruptcy courts to determine a debtor's tax liability, including the reassessment of any tax. See 11 U.S.C. § 505(a). There is "no precedent for the proposition that the Tenth Amendment forbids the relatively minor

impact on the states' powers of taxation which results from Congress's decision that the states as creditors are subject to the same bankruptcy regime as all other . . . creditors making claims upon the bankruptcy estate." In re Brentwood Outpatient, 43 F.3d 256, 263-64 (6th Cir. 1994). Furthermore, since the Bankruptcy Court will be applying Florida law in any value determinations, the laws of the State of Florida will be given full faith and credit by the Bankruptcy Court. Cf. In re Lake Worth Generation, LLC, 318 B.R. 894, 907 (Bankr. S.D. Fla. 2004) (finding no Tenth Amendment violation if court determines tax obligations using state law). Therefore, the Court finds that § 505 does not violate the Tenth Amendment.

## C.    Tax Injunction Act

The Bankruptcy Court found that the Tax Injunction Act does not preclude the application of § 505 to tax claims in bankruptcy proceedings. The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This statute is a jurisdictional limitation imposed on courts, barring the imposition of federal injunctive relief for a state tax collection when adequate remedies are found within the State. Amos v. Glynn County Bd. of Tax Assessors, 347 F.3d 1249, 1255 (11th Cir. 2003). The Tax Collectors argue that the Tax Injunction Act precludes the application of § 505 because the Bankruptcy Court's redetermination of Winn-Dixie's tax liability will interfere with the collection of a state tax. Winn-Dixie responds that § 505 is the more specific, and controlling, statute.

Courts have recognized a limited bankruptcy exception to the Tax Injunction Act, particularly because the Bankruptcy Code expressly empowers the bankruptcy courts to affect state taxation.[5]

---

[5] The Eleventh Circuit has not considered the application of the Tax Injunction Act within
(continued...)

In re Ellett, 254 F.3d 1135, 1148 (9th Cir. 2001). While the Bankruptcy Code may come in direct or indirect conflict with the general orders of the Tax Injunction Act, it is the more specific powers of the Code that control. Ellett, 254 F.3d at 1148. "It is well established . . . that the Tax Injunction Act does not prevent a Bankruptcy Court from enforcing the provisions of the Bankruptcy Code that affect the collection of state taxes." In re Hechinger Inv. Co. of Del., 335 F.3d 243, 247 n.1 (3d Cir. 2003) (finding Tax Injunction Act did not bar court from declaring real estate transactions exempt from state taxes and requiring refund of taxes). Section 505 expressly authorizes bankruptcy courts to determine any tax liability, including state taxes. 11 U.S.C. § 505(a); In re Stoecker, 179 F.3d 546, 549 (7th Cir. 1999). "If federal courts could not determine the debtor's liability for state taxes—if they had to abstain pending a determination of that liability in state court—bankruptcy proceedings would be even more protracted than they already are." Stoecker, 179 F.3d at 549. The Court agrees with this reasoning and finds that the Tax Injunction Act does not bar the application of § 505.

### D.    Section 505 Jurisdiction

#### 1.    2004 and 2005 Paid Property Taxes

Section 505 permits a bankruptcy court to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1). By the terms of the statute, a debtor may challenge a tax claim, even if the debtor failed to contest the tax in state court. Section 505 allows a challenge to a normally time barred claim because the purpose of the statute is to protect "'creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax

--------

[5](...continued)
bankruptcy proceedings.

judgment which the debtor . . .did not contest.'" <u>City Vending of Muskogee, Inc v. Okla. Tax Comm'n</u>, 898 F.2d 122, 125 (10th Cir. 1990) (quoting <u>In re Northwest Beverage, Inc.</u>, 46 Bankr. 631, 635 (Bankr. N.D. Ill. 1985).

The statute contains two important exceptions over determinations of tax liability. First, a court may not redetermine a tax if it was previously "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the [bankruptcy proceeding]." 11 U.S.C. § 505(a)(2)(A). Second, a court may not determine a tax refund until 120 days after a trustee properly requests the refund from the governmental entity responsible for assessment of the tax and the governmental entity has responded to that request. 11 U.S.C. § 505(a)(2)(B). A request for a refund of taxes must be made within the applicable time period, and it must be presented to, and denied, by the taxing authority before a refund may be requested under § 505. <u>In re Ryan</u>, 64 F.3d 1516, 1520-22 (11th Cir. 1995).

As found by the Bankruptcy Court, Winn-Dixie has not previously contested these tax claims in Florida state court, and thus is not barred from challenging these claims on this basis. However, the Bankruptcy Court found that it did not have jurisdiction over the already paid 2004 and 2005 taxes because the time period for an appeal of those taxes had expired. (Bankr. Doc. #14815 at 9-10.) The Bankruptcy Court relied on <u>In re Custom Distribution Servs., Inc.</u>, 224 F.3d 235 (3d Cir. 2000), in reaching its decision. In <u>Custom Distribution</u>, the debtor sought a redetermination of taxes assessed for the years 1992 through 1997. <u>Id.</u> at 238. The debtor had previously paid the 1992 through 1994 taxes. <u>Id.</u> The Third Circuit found that § 505(a)(2)(B) created a jurisdictional bar against considering a refund claim that is raised for the first time in a bankruptcy proceeding. <u>Id.</u> at 243. In order to sustain a claim for a refund, it must first be raised with the taxing authority. <u>Id.</u>

The debtor also argued that it was not seeking a refund, but rather an offset against the unpaid taxes. Id. at 244. The Third Circuit, in examining the legislative history of the statute, concluded that where a refund is sought as an offset, a refund claim did not need to be filed with the taxing authority first.[6] Id. (citing to 124 Cong. Rec. H. 11,110-11 (daily ed. Sept. 28, 1978), S.17426-28 (daily ed. Oct. 6, 1978) (Remarks of Rep. Edwards and Sen. DeConcini)). Therefore, a request for an offset could be considered by a court without the debtor first requesting a refund from the taxing authority, but such a request for an offset must be brought within the applicable statute of limitations period for requesting a refund. Id. at 244.

In this case, the Bankruptcy Court applied the Third Circuit's reasoning and determined that Winn-Dixie could request a redetermination of the paid taxes, even though it did not first request a refund from the relevant state taxing authorities, since it would apply any excess reassessed value as an offset. However, the Bankruptcy Court determined that the applicable statute of limitations for requesting an offset was the sixty-day period for contesting a tax assessment. See Fla. Stat. § 194.171(2). Therefore, the Bankruptcy Court determined it was without jurisdiction to redetermine the 2004 and 2005 paid taxes since the claims were now time barred.

This Court disagrees with the Third Circuit and Bankruptcy Court's reasoning. An offset is "[s]omething (such as an amount or claim) that balances or compensates for something else." Black's Law Dictionary 1120 (8th ed. 2004). A refund is the "return of money to a person who overpaid." Id. at 1307. In the context of § 505, the difference between an offset and a refund is purely semantic. While Winn-Dixie would not directly receive money for any possible reduction in the 2004 and 2005 liabilities, Winn-Dixie's obligation for the unpaid taxes would be reduced by any determined

---

[6] The Eleventh Circuit has not yet spoken on this issue.

overpayment for the 2004 and 2005 taxes. Thus, Winn-Dixie would still receive the same monetary benefit under an offset as it would if the alleged overpayment was directly refunded to it. The practical effect is the same, regardless of whether the court calls the request a refund or an offset. Thus, the Court affirms the Bankruptcy Court's dismissal of the portions of Winn-Dixie's motion that seeks a redetermination of the paid taxes for 2004 and 2005, but disagrees with its reasoning for doing so.

### 2.    Unpaid Property Taxes

The Tax Collectors also urge the Court to disallow any challenges to the unpaid taxes because Winn-Dixie failed to first challenge these taxes in the Florida courts. The Tax Collectors assert that 28 U.S.C. §§ 959 and 960 require Winn-Dixie to abide by state law and thus preclude Winn-Dixie from requesting a reassessment of its tax liability under § 505. Section 959(b) states that "a [bankruptcy] trustee, receiver or manager appointed in any cause pending in any court of the United States . . . shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated." 28 U.S.C. § 959(b); In re Cusato Bros. Int'l, Inc., 750 F.2d 887, 889 (11th Cir. 1985). Section 960 states that "[a]ny officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State, and local taxes applicable to such business to the same extent as if it were conducted by an individual corporation."[7] 28 U.S.C. § 960(a). While bankruptcy trustees are directed to follow state law in managing the bankruptcy estate, the Tax

---

[7] Section 960(b) states that any "tax under subsection (a) shall be paid on or before the due date of the tax under nonbankruptcy law, unless . . . the tax is a property tax secured by a lien against property that is abandoned . . . or . . .payment of the tax is excused" under a specific bankruptcy provision. 11 U.S.C. § 960(b). However, subsection (b) was added by BAPCPA, which does not apply to this case, since the effective date of BAPCPA was October 17, 2005, and this case commenced on February 21, 2005.

Collectors have not cited to any authority which holds that these provisions limit the Bankruptcy Court's valid exercise of authority under § 505 to determine tax liabilities. The Court similarly can find no such precedent and finds the Tax Collectors' argument to be without merit. The Bankruptcy Court's finding that §§ 959 and 960 do not limit Winn-Dixie's ability to contest its tax liability for any unpaid taxes is affirmed.

### E.    Standing to Challenge Taxes on Leased Properties

The Tax Collectors also argue that Winn-Dixie lacks standing to challenge the property taxes assessed against properties where Winn-Dixie is only the lessee. In United States v. Huckabee Auto Co., 783 F.2d 1546 (11th Cir. 1986), the IRS filed a proof of claim for social security and employment withholding taxes that Huckabee Auto, a Georgia corporation, deducted from its employees' wages, but never paid to the government. Id. at 1547. The confirmation plan provided for payment of the claim over a sixty-month period. Id. After confirmation of the plan, the IRS assessed a penalty against the corporate officers under 26 U.S.C. § 6672, which holds individual corporate officers responsible for unpaid taxes. Id. The corporate officers moved the bankruptcy court for an order enjoining the IRS from collecting the § 6672 penalty. Id. The officers claimed the bankruptcy court had standing to hear the challenge because the penalty would have an adverse impact on the corporate debtor and the company's successful reorganization. Id. The Eleventh Circuit found that § 6672 permitted the IRS to collect delinquent taxes personally from the corporate officers because those individuals were responsible for the corporation's failure to pay the taxes owed. Id. at 1548. Since the penalty was assessed against the individual corporate officers, and not the debtor corporation, the bankruptcy court had no jurisdiction over the challenge. Id. at 1549. "The jurisdiction of the bankruptcy courts encompasses determinations of the tax liabilities of debtors who

file petitions for relief under the bankruptcy laws. It does not, however, extend to the separate liabilities of taxpayers who are not debtors under the Bankruptcy Code." Id. Because the corporate officers were non-debtors, they had no standing to challenge the penalty in the bankruptcy court. Id.

This case, though, is factually distinct from Huckabee Auto. Under Florida law, a person other than the taxpayer may contest the assessment of any tax, as long as that person is responsible for the payment of that tax, either pursuant to a contract or with the written consent of the property owner. Fla. Stat. § 194.181(1)(a) (2007). Winn-Dixie states that it is contractually obligated to pay the property taxes on the leased properties. This argument is bolstered by the fact that the Tax Collectors affirmatively asserted a claim against Winn-Dixie for the property taxes on these leased properties. As long as Winn-Dixie is responsible for payment of the property taxes under the respective leases, Winn-Dixie has standing to request a redetermination of those taxes under § 505(a). The Bankruptcy Court correctly found that it possessed jurisdiction to make these determinations.

## F.    Adversary Proceeding

The Tax Collectors also argue that Winn-Dixie is required to file an adversary proceeding, instead of bringing a motion under § 505(a) to determine its tax liability. While the Tax Collectors do not flesh out this argument in their briefs, nor cite to any rule or case law to support this proposition, the Property Appraisers, in their amicus brief, point out that the Bankruptcy Court found that pursuant to Bankruptcy Rule 7001, Winn-Dixie's objection to the claim should be treated as an adversarial proceeding. Bankruptcy Rule 7001 requires that certain claims be treated as adversarial proceedings. Thus, a complaint must be filed pursuant to Federal Rule of Bankruptcy Procedure 7003, which incorporates Federal Rule of Civil Procedure 3.[8]

---

[8]Rule 3 provides that "[a] civil action is commenced by filing a complaint with the court."
(continued...)

However, the Supreme Court has held that in some cases, the filing of a motion is indistinguishable from the service of a summons within a bankruptcy proceeding. <u>Hood</u>, 541 U.S. at 454. In <u>Hood</u>, the debtor filed a motion under 11 U.S.C. § 523, requesting the court make an undue hardship determination of her student loan debt. <u>Id.</u> at 453. The Supreme Court found that the statute did not require the filing of a complaint, and that absent Bankruptcy Rule 7001, the debtor could proceed by motion pursuant to Rule 9014.[9] <u>Id.</u>   "[T]he Bankruptcy Court's *in rem* jurisdiction allow[ed] it to adjudicate the debtor's discharge claim without *in personam* jurisdiction over the State." <u>Id.</u>  The Court determined that "[t]o conclude that the issuance of a summons, which is required only by the Rules, precludes [the debtor] from exercising her statutory right to an undue hardship determination would give the Rules an impermissible effect." <u>Id.</u> at 454.

This Court also declines to allow the Bankruptcy Rules to have such an effect in this case. Section 505 does not require that a complaint be filed to request a determination of tax liability. Moreover, the redetermination of Winn-Dixie's tax liability does not constitute an exercise of personal jurisdiction over the Tax Collectors; the Bankruptcy Court's jurisdiction over the tax claim is *in rem*.  The Bankruptcy Court ordered that the Property Appraisers be served with a notice of its order so that the Property Appraisers would have notice of the Section 505 Motion and could be heard in this matter.  While the Tax Collectors filed the proof of claim, Florida law does state that the property appraiser is the proper party to any suit to determine tax liability.  Fla. Stat. §

---

[8](...continued)
Fed. R. Civ. P. 3.

[9] "The text of § 523(a)(8) does not require a summons, and absent Rule 7001(6) a debtor could proceed by motion, see Rule 9014 ('[I]n a contested matter . . . not otherwise governed by these rules, relief shall be requested by motion'), which would raise no constitutional concern." <u>Hood</u>, 541 U.S. at 453.

194.181(1)(b); see also In re Polygraphex Sys., Inc., 275 B.R. 408 (Bankr. M.D. Fla. 2002) (finding that the property appraiser should be joined to a motion to determine tax liability under § 505). Pursuant to the Bankruptcy Court's order, the Property Appraisers will be joined in this matter and thus will have the opportunity to appear and be heard.  Thus, the Bankruptcy Court was correct in determining that Winn-Dixie was not required to file a complaint to pursue relief under § 505.

### G.    Equitable Estoppel

The Tax Collectors also claim that Winn-Dixie should be estopped from asserting its Section 505 Motion because Winn-Dixie did not file an adversary proceeding to determine its tax liability and Winn-Dixie did not include this alleged cause of action on its Schedules and Statement of Financial Affairs.  The Tax Collectors also request that the Court apply the doctrines of laches and unclean hands to Winn-Dixie's request for relief.  "Estoppel is an equitable doctrine which prevents a party from raising a claim or taking a legal position when his conduct with regard to that claim is contrary to his position."  In re Garfinkle, 672 F.2d 1340, 1346–47 (11th Cir. 1982).

The Tax Collectors seem to argue that since Winn-Dixie did not object to the tax claim before it was filed, Winn-Dixie may not now object to the claim.  As support for this position, the Tax Collectors cite to Burnes v. Pemco Aeorplex, Inc., 291 F.3d 1282 (11th Cir. 2002), for the proposition that a debtor has a duty to disclose all assets to the Bankruptcy Court.  In Burns, a debtor filed for Chapter 13 relief.  Id. at 1284.  Six months after filing for bankruptcy, the debtor brought an employment discrimination suit against his employer.  Id.  The bankruptcy proceeding was converted to a Chapter 7, thereafter, and the debtor was required to file amended and updated schedules to reflect any financial changes since his first schedules were filed with the court.  Id.  The debtor did not list the pending lawsuit, and the debtor received a complete discharge of his debts.  Id.

Thereafter, the employer moved for summary judgment in the discrimination suit, claiming that the debtor was estopped from pursuing his claim since he had failed to disclose the claim to the bankruptcy court. Id.  The Eleventh Circuit held that the debtor misled the bankruptcy court by not listing the discrimination lawsuit on his schedules, and thus, he was barred from pursuing the lawsuit to the extent he sought money damages. Id. at 1288.

While Burnes correctly notes that debtors must disclose all of their potential assets to the bankruptcy court, Winn-Dixie's objection to the Tax Collectors' claim is not an asset that could have been listed on the schedules.  Claims upon a bankruptcy estate may either be listed on the financial schedules by the debtor pursuant to 11 U.S.C. § 521, or a creditor may file a proof of claim, pursuant to 11 U.S.C. § 501.  In the present case, the tax claim was allowed by the Tax Collectors filing a proof of claim.  The tax claim for $68 million is not an asset of Winn-Dixie's, but of the Tax Collectors.  Section 505 allows debtors to object to tax claims and to seek a redetermination of their tax liability.  Nothing in that statute requires the debtor to give advance notice of his intention to challenge a tax claim by listing the potential objection on his schedules and statement of financial affairs.  Winn-Dixie has not acted in bad faith by exercising its right to object to a creditor's claim under the Bankruptcy Code.  The Tax Collectors' dispute is truly with § 505, which this Court has already determined to be a valid exercise of the Bankruptcy Court's jurisdiction.

**H.    Abstention**

Lastly, the Tax Collectors argue that the Bankruptcy Court should have abstained from this matter pursuant to 28 U.S.C. § 1334(c)(1).  Section 1334(c)(1) permits a bankruptcy court to abstain from hearing a bankruptcy matter "in the interests of justice, or in the interest of comity with State courts or respect for State law."   28 U.S.C. § 1334(c)(1).  Bankruptcy courts usually examine a

number of factors when considering whether to abstain from considering a matter under § 505, including:

> (1) [T]he complexity of the tax issue; (2) the need to administer the bankruptcy case in an expeditious fashion; (3) the burden on the bankruptcy court's docket; (4) the length of time necessary to conduct the hearing and to render a decision thereafter; (5) the asset and liability structure of the debtor; and (6) the potential prejudice to the debtor, the taxing authority, and creditors.

In re New Haven Projects LLC, 225 F.3d 283, 289 (2d Cir. 2000); see also In re Luongo, 259 F.3d 323, 330 (5th Cir. 2001); In re Dees, 369 B.R. 676, 677-78 (Bankr. N.D. Fla. 2007); In re ANC Rental Corp., 316 B.R. 153, 159 (Bankr. D. Del. 2004). Bankruptcy courts have also refrained from determining tax liabilities under § 505 only when abstention serves the interests of both creditors and debtors. In re Parsons, 153 B.R. 585, 587 (M.D. Fla. 1993).

The Bankruptcy Court considered these factors and found that the interests of both creditors and debtors would be served by having the tax claims determined in one forum instead of some fifty-five forums throughout the state. More importantly, the Bankruptcy Court found that the time for contesting the 2004 and 2005 taxes expired, thus no alternative forum existed for Winn-Dixie to contest its taxes. The Bankruptcy Court considered this to be an overwhelming prejudice to Winn-Dixie, but only minimal prejudice the Tax Collectors, if the Bankruptcy Court elected not to abstain. (Bankr. Doc. #14816 at 4 n.6.)

In reviewing the Bankruptcy Court's decision, this Court cannot find that the Bankruptcy Court abused its discretion in electing not to abstain. As stated above, § 505 allows a bankruptcy court to determine any tax liability, even those challenges to tax liability that would be time barred under state law. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). Tax liabilities are

a common concern in bankruptcies. Plan confirmations would be severely limited if bankruptcy courts were to routinely defer to state courts on tax issues. "If federal courts could not determine the debtor's liability for state taxes—if they had to abstain pending a determination of that liability in state court—bankruptcy proceedings would be even more protracted than they already are." In re Stoecker, 179 F.3d 546, 549 (7th Cir. 1999). The Bankruptcy Court acted to allow the Section 505 Motion to proceed; thus allowing the plan confirmation to move forward. The Court finds no abuse of discretion and the Bankruptcy Court's Order is affirmed.

Accordingly, it is now

**ORDERED, ADJUDGED** and **DECREED:**

The United States Bankruptcy Court's Order Denying Florida Tax Collectors' Motion for Leave to File Proofs of Claim Without Prejudice (Bankr. Doc. #14814), Order Granting in Part and Denying in Part Florida Tax Collectors' Motion to Dismiss Debtors' Objections to Florida Tax Claims and Motion for Order Determining Tax Liabilities (Bankr. Doc. # 14815), and Order Denying Florida Tax Collectors' Motion to Abstain From Consideration of Debtors' Objection to Florida Tax Claims and Motion for Order Determining Tax Liabilities (Bankr. Doc. # 14816) are **AFFIRMED.**

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 21st day of March, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record

-22-