UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:
WINN-DIXIE STORES, INC. et al.,

Reorganized Debtors.
_______________________________________/

FLORIDA TAX COLLECTORS,

Appellants,

v.

Case No. 3:07-cv-237-J-33
Bankr. No. 3:05-bk-3817-JAF

WINN-DIXIE STORES, INC. et al.,

Appellees.
_______________________________________/

**OPINION**

This cause comes before the Court on appeal from the United States Bankruptcy Court's Order Confirming Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (Doc. #1-5), entered on November 9, 2006. The Florida Tax Collectors filed their initial brief (Doc. #25) on January 4, 2008. Winn-Dixie filed its response brief (Doc. #28) on February 1, 2008. The Tax Collectors filed a reply (Doc. #29) on February 11, 2008. For the reasons stated below, the Bankruptcy Court's Order is affirmed.

## I. Procedural Background

On February 21, 2005 (the "Petition Date"), Winn-Dixie filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the Southern District of New York (Bankr. Doc. # 1).[1] The bankruptcy case was thereafter transferred to the Middle District of Florida. According to Winn-Dixie, as of the Petition Date, Winn-Dixie had over one billion dollars in pre-petition obligations, including obligations to landlords, trade vendors, note-holders, retirees, personal injury claimants, and others. (Doc. # 28 at 3.) The United States Trustee appointed an official committee of unsecured creditors under Section 1102 of the Bankruptcy Code to represent Winn-Dixie's unsecured creditors (the "Creditors Committee"). Thereafter, a group of Winn-Dixie's retired employees formed an unofficial committee known as the Ad Hoc Retirees Committee and a group of Winn-Dixie's trade creditors formed the Ad Hoc Trade Vendors Committee.

Per the Bankruptcy Court's April 28, 2005 Order, August 22, 2005 was set as the final date for governmental entities to file proofs of claim. (Bankr. Doc. #4056.) The Tax Collectors filed two motions to extend the time to file proofs of claim because the 2005 tax rolls had not yet been certified. (Bankr. Docs. ## 3026, 4008.) Both motions were granted, giving the Tax Collectors until November 23, 2005 to file a proof of claim. (Bankr. Docs. ## 3069, 4056.) On November 21, 2005, the Tax Collectors filed a motion for leave to file proofs of claim without prejudice to the Tax Collectors asserting sovereign immunity defenses. (Bankr. Doc. #4283.) Winn-Dixie filed a response, objecting to the motion. (Bankr. Doc. # 5874.) The Tax Collectors filed Proof of Claim 12566 for ad valorem taxes in the amount of $68,455,687.93, on November 22, 2005. (Doc. #29-2.)

[1] Winn-Dixie filed its Petition prior to the effective date of certain provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Accordingly, the provisions of BAPCPA shall not apply to this appeal and all statutory references are to the Bankruptcy Code as it existed on the filing date of Winn-Dixie's Petition: February 21, 2005.

Winn-Dixie paid the 2004 ad valorem taxes in November 2004; the 2005 and 2006 taxes remain unpaid. (Doc. #25 at 5.)

On August 8, 2006, Winn-Dixie filed an objection to the Tax Collectors' proof of claim under §§ 502 and 505 of the Bankruptcy Code, requesting that the Bankruptcy Court redetermine the market values of the properties identified in Winn-Dixie's motion in order to reassess the amount of taxes owed to the Tax Collectors for the tax years 2004, 2005, and 2006 (the "Section 505 Motion"). (Bankr. Doc. #10046) Winn-Dixie also asked the court to determine the appropriate interest rate for late payments, to authorize Winn-Dixie to offset its tax liabilities for later years for any previous excessive payments, and to extinguish any liens against Winn-Dixie's properties once the taxes were paid. The Tax Collectors responded by filing a Motion to Dismiss Winn-Dixie's Section 505 Motion on August 28, 2006, arguing that the Bankruptcy Court did not have jurisdiction to consider the Section 505 Motion. (Bankr. Doc. #10609.) The Tax Collectors claimed that the Eleventh Amendment, the Tenth Amendment, and the Tax Injunction Act prevented the Bankruptcy Court from determining Winn-Dixie's tax liabilities. The Tax Collectors also argued that Winn-Dixie failed to meet the jurisdictional requirements of § 505, Winn-Dixie had waived its rights to challenge the taxes under Florida law, and the challenge should be brought in state court. Winn-Dixie filed a response, stating that the Tax Collectors had availed themselves of the Bankruptcy Court's jurisdiction by filing their proof of claim; thereby, waiving any sovereign immunity defenses. (Bankr. Doc. #11599.) Winn-Dixie further averred that it had satisfied all jurisdictional requirements and was not time barred from asserting a challenge to the tax liabilities.

The Tax Collectors also filed a motion requesting that the Bankruptcy Court abstain from considering the Section 505 Motion pursuant to 28 U.S.C. § 1334(c)(1). (Bankr. Doc. #10594.)

Winn-Dixie opposed the motion. (Bankr. Doc. # 11598.) The Bankruptcy Court held a hearing on all three motions on October 5, 2006. (Bankr. Doc. #11598.) On January 19, 2007, the Bankruptcy Court entered three separate orders denying the Tax Collectors' Motion for Leave to File Proof of Claim Without Prejudice, granting in part and denying in part the Motion to Dismiss, and denying the Tax Collectors' Motion to Abstain. (Bankr. Docs.# # 14814, 14815, 14816.) On January 26, 2007, the Tax Collectors filed a notice of appeal from all three orders: Case Nos. 3:07-cv-240-J-33, 3:07-cv-241-J-33, and 3:07-cv-242-J-33, respectively. Winn-Dixie filed a cross-appeal in Case No. 3:07-cv-241-J-33 from the Dismissal Order which dismissed the portions of Winn-Dixie's motion that requested a redetermination of taxes paid for the years 2004 and 2005.[2]

During this time, Winn-Dixie negotiated with the Creditors Committee, the Ad Hoc Retirees Committee, and the Ad Hoc Trade Vendors Committee and developed a plan of reorganization pursuant to § 1121 of the Bankruptcy Code (the "Plan"). Winn-Dixie filed the Plan on August 9, 2006, and, thereafter, supplemented and modified the Plan on October 3, 2006 and October 10, 2006, respectively. (Bankr. Doc. ## 10058, 11606, 11765.) Winn Dixie filed the Disclosure Statement on June 29, 2006 (Bankr. Doc. # 8854) and filed a revised Disclosure Statement on August 2, 2006 (Bankr. Doc. # 9787). The Bankruptcy Court approved the Disclosure Statement in an order dated August 4, 2006 (Bankr. Doc. # 9917).

**A. The Plan**

Under the Plan, Winn-Dixie is required to (1) cancel its old common stock; (2) issue new common stock to be listed on the NASDAQ Stock Exchange; (3) pay all administrative, priority, and

---

[2] The three orders were affirmed by this Court in the consolidated appeal, Case No. 3:07-cv-240-J-33.

secured creditors in cash in full; (4) distribute its new common stock to unsecured creditors holding allowed claims; (5) retire its debtor-in-possession financing; and (6) enter into a $725 million dollar exit financing facility with Wachovia Bank, collateralized by substantially all of Winn-Dixie's assets.

The Plan also includes a compromise of a complex dispute among creditors regarding whether or not the estates of Winn-Dixie's affiliated debtors should be substantively consolidated (the "Substantive Consolidation Compromise"). The Substantive Consolidation Compromise was proposed and negotiated by the Creditors Committee and, after a period of negotiations, agreed to by the Ad Hoc Trade Vendors Committee and the Ad Hoc Retirees Committee. As explained by Winn-Dixie, the Substantive Consolidation Compromise divides the unsecured creditors of the twenty-four estates into five different classes (note-holders, landlords, trade vendors, retirees, and others) and provides for distributions of Winn-Dixie's new common stock in differing amounts to each class.[3] The Plan provides for the full payment of allowed Class 10 claims, including the Tax Collectors and their tax claim, pursuant to 11 U.S.C. § 1129(b)(2). Under the Plan, the Tax Collectors' claim is to be paid, in full, with an interest rate of 6%, over no more than a six-year period.

---

[3] Pursuant to the Disclosure Statement, the note-holders receive 62.69 shares of new common stock per $1,000 of allowed claim; the landlords receive 46.26 shares of new common stock per $1,000 of allowed claim; the trade vendors receive 46.26 shares of new common stock per $1,000 of allowed claim; the retirees receive 38.75 shares of new common stock per $1,000 of allowed claim; and the others receive 34.89 shares of new common stock per $1,000 of allowed claim. (Bankr. Doc. # 9787 at 9-12, 53).

Winn-Dixie mailed the Plan and accompanying Disclosure Statement to all of Winn-Dixie's creditors affected by the Plan in accordance with § 1126 of the Bankruptcy Code. The creditors were provided with a ballot to vote in favor of or against the Plan. A majority of the affected unsecured creditors voted in favor of the Plan. Class 10 creditors, including the Tax Collectors, voted against the plan. The Tax Collectors filed an objection to confirmation, raising the same constitutional and jurisdictional arguments they made in their Motion to Dismiss. (Bankr. Doc. # 11310.) They also objected to the proposed interest rate of 6%, instead arguing that the Florida statutory rate of 18% should be applied to the tax claims. See Fla. Stat. § 197.172(3) (2007).

On October 13, 2006, the Bankruptcy Court held a confirmation hearing in which the court took evidence and heard argument on the objections to confirmation. The Bankruptcy Court thereafter entered its Confirmation Order (Bankr. Doc. # 12440) and thirty-eight pages of Findings of Fact and Conclusions of Law (Bankr. Doc. # 12618). Among other things, the Bankruptcy Court determined in the Findings of Fact and Conclusions of Law that the Substantive Consolidation Compromise was "fair and equitable and in the best interests of Debtors' estate" (Bankr. Doc. # 12618 at 15). The court determined that the applicable interest rate to be applied to the tax claim was the prevailing market rate and not the Florida statutory rate of 18%. The Bankruptcy Court applied an interest rate of 7%. The Plan became effective on November 21, 2006.

## II. Standard of Review

A bankruptcy court's conclusions of law are reviewed de novo. In re Sublett, 895 F.2d 1381, 1383 (11th Cir. 1990). The factual findings of the bankruptcy court will be upheld unless clearly erroneous. Sublett, 895 F.2d at 1383.

## III. Arguments on Appeal

The Tax Collectors assert the following arguments on appeal: (1) the Plan and its treatment of the Tax Collectors' claim violates the Tax Collectors' sovereign immunity under the Eleventh Amendment and Tenth Amendment; (2) the proposed treatment of the tax claim violates the Tax Injunction Act and 28 U.S.C. §§ 959 and 960; (3) the Bankruptcy Court's exercise of its jurisdiction under 11 U.S.C. § 505 to determine Winn-Dixie's tax liability is unconstitutional; and (4) the Bankruptcy Court should have applied the Florida statutory interest rate of 18% on the delinquent property taxes instead of reducing the rate to 7%.

Winn-Dixie contends that the prevailing market rate is the proper interest rate to be applied to Class 10 secured claims under § 1129(b)(2). Thus, Winn-Dixie submits that the Bankruptcy Court was correct in applying the 7% interest rate to the delinquent taxes.

## IV. Analysis

### A. Constitutional Challenges

The Tax Collectors raise a variety of constitutional objections to the Plan, arguing in part that the Plan's treatment of Class 10 creditors violates the sovereign immunity of the Tax Collectors, as an arm of the State of Florida. The Tax Collectors raised these issues in the consolidated appeal No. 3:07-cv-240-J-33, in which the Tax Collectors argue that the Bankruptcy Court should not redetermine Winn-Dixie's tax liability pursuant to 11 U.S.C. § 505. The Court has already addressed these issues in Case No. 3:07-cv-240-J-33 and found that § 505 validly allows exercise

of the Bankruptcy Court's jurisdiction to redetermine tax liabilities and does not violate the State's sovereign immunity. The Court will not readdress these arguments here. Therefore, the only matter left on this appeal is the correct interest rate to be applied to the tax claim.

**B. Interest Rate for Deferred Tax Payments**

Section 1129(b) allows a court to confirm a plan over the objections of creditors of a class of claims if the plan is fair and equitable to that class. 11 U.S.C. § 1129(b). Since the Class 10 claim holders objected to the Plan, the Bankruptcy Court confirmed the Plan pursuant to § 1129(b). The Plan was fair and equitable because it provided that the claim holders would receive the present value of their claims and the claims would be paid in full over a six-year period. The Bankruptcy Court determined that an interest rate of 7% would be applied to Class 10 claims covered under 11 U.S.C. § 1129(b)(2)(A)(i)(II). That statute provision states that in order for a plan to be considered fair and equitable "with respect to a class of secured claims, the plan provides . . . that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." 11 U.S.C. § 1129(b)(2)(A)(i)(II). This provision is also known as cram-down, since it allows the court to confirm the plan over the creditors' objections. However, the statute is silent as to interest rates on deferred payments.

The statutory interest rate under Florida law for delinquent tax payments is 18%. Fla. Stat. § 197.172(3). Winn-Dixie argues that this interest rate is punitive. Bankruptcy courts have split on whether the statutory interest rate is a penalty. Several bankruptcy courts have found Florida's 18% statutory rate for delinquent taxes to be punitive. See e.g., In re Mulberry Phosphates, Inc., 283 B.R. 347, 349 (Bankr. M.D. Fla. 2002) (finding statutory interest rate to be a penalty); In re Koger

Properties, Inc., 172 B.R. 351, 353 (Bankr. M.D. Fla. 1994) (determining that 18% statutory rate is a penalty). However, other bankruptcy courts have determined that the statutory interest rate is not a penalty per se. See e.g., In re Cone Constructors, Inc., 304 B.R. 513, 518 (Bankr. M.D. Fla. 2003); In re Liuzzo 204 B.R. 235, 241 (Bankr. N.D. Fla. 1996). But, even though the statutory interest rate is not always considered a penalty, a bankruptcy court is not bound to apply the statutory interest rate, particularly if doing so will lead to an inequitable result. See Liuzzo, 204 B.R. at 241.

The Eleventh Circuit has not addressed whether Florida's statutory interest rate is a penalty, but it has determined that the prevailing market rate should be used to determine the interest rate for deferred payments under plan confirmations. In re Southern States Motor Inns, Inc., 709 F.2d 647, 652-53 (11th Cir. 1983). In Southern States, the Eleventh Circuit considered how to properly determine the interest rate for deferred payments of delinquent federal taxes pursuant to § 1129(a)(9). Id. at 649. The debtor, Southern States, voluntarily filed for Chapter 11 bankruptcy. Id. The United States filed a claim for unpaid federal taxes. Id. The plan of reorganization proposed to apply an interest rate of 6% to the tax claims, but the United States objected. Id. The Bankruptcy Court held a hearing to determine the appropriate interest rate and found an 11% interest to be appropriate. Id.

The Eleventh Circuit recognized that "[a]lthough Bankruptcy Courts generally agree that creditors should receive interest on deferred tax payments pursuant to § 1129(a)(9)(C), they have not agreed on the proper method for determining the appropriate interest rate." Id. at 651. To determine an appropriate rate, courts must consider the relative risks involved and the prevailing market rate for a similar loan payout period. Id. Thus, the Eleventh Circuit held that the interest rate for claim payments pursuant to § 1129(a)(9) should be the prevailing market rate. Id. at 652-53.

While this holding only applied to § 1129(a)(9), the Eleventh Circuit did note that the term "value" as used in § 1129(a)(9) was the same as in § 1129(b)(2)(A)(i)(II), and it suggested that "value" should be determined by an analysis of market rates. Id. at 652 n.6. The Court finds this reasoning persuasive and concludes that the prevailing market rate should determine the interest rate of cram down claims under § 1129(b)(2)(A)(i)(II).

The Court finds further support for applying the prevailing market rate in Till v. SCS Credit Corp., 541 U.S. 465 (2004). In Till, the Supreme Court considered the applicable interest rate for the cram down provisions of Chapter 13. The Court recognized that the Bankruptcy Code provided no guidance as to the appropriate interest rate. Till, 541 U.S. at 473. The Code was only concerned with ensuring that creditors received at least the value of their claims, as valued on the effective date of the plan of reorganization. Id. at 474. A bankruptcy court is empowered to modify the rights of any creditor, including modification of a pre-bankruptcy interest rate agreed to between the debtor and the creditor. Id. at 475-76. The Court stated that bankruptcy courts need not consider the individual circumstances of each creditor, but instead may treat similarly situated creditors equally. Id. at 474. Bankruptcy courts were urged to select an interest rate that would compensate the creditor for his risk, but not fatally harm the plan. Id. at 480. Therefore, the Court determined that the prevailing market rate was the appropriate interest rate for Chapter 13 cram down provisions. Id. at 479.

This Court agrees that the prevailing market rate is appropriately applied to Winn-Dixie's delinquent tax liabilities. The Bankruptcy Court heard evidence on this matter at the Confirmation Hearing and found that 7% was the appropriate interest rate. The Bankruptcy Court considered evidence of prevailing market rates, the Tax Collectors' senior lien position, and risks involved. The

Court cannot find error with the Bankruptcy Court's findings. Therefore, the Bankruptcy Court's decision to confirm the Plan is affirmed.

Accordingly, it is now

**ORDERED, ADJUDGED** and **DECREED:**

The United States Bankruptcy Court's Order Confirming Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (Doc. #1-5) is **AFFIRMED**.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 21st day of March, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record