UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>WINN-DIXIE STORES, INC., et al., )<br>_____ ) | Case No.: 05-03817-3F1<br>Chapter 11<br>Jointly Administered |

**MOTION FOR AUTHORIZATION TO DISPENSE WITH
MEDIATION AND MOTION FOR STAY RELIEF**

Litigation Claimant/Creditor, MARK WILSON (hereinafter known as "Wilson"), moves to dispense with the mediation requirements of this Court's Order Approving Claims Resolution Procedure and Authorizing Debtors to Settle or Liquidate Certain Litigation Claims (Claims Resolution Order) entered September 1, 2005 (Docket No. 3326) and for Relief from the Automatic Stay, and says:

1) Wilson has at all times attempted to comply with the Claims Resolution Order including timely completing a form Questionnaire required by the Claims Resolution Order. Debtor accepted the Questionnaire and negotiated informally with Wilson after that date.

2) Wilson has also complied with all of the claims adjuster's request for documents supporting his personal injury claim. (See attached list of documents produced to the Debtor's representative and the dates of production – Attachment A). Wilson has incurred considerable expense and effort to comply with all of the Debtor's requests for documents, often having to resend documents previously provided and has signed all medical records release forms submitted by the Debtor.

3) After many months of production and negotiations, Wilson demanded mediation and was advised that mediation could take place by the end of February, 2008. Wilson continued to provide medical records and updates on his injuries to the claims adjuster as requested.

Case 3:05-bk-03817-JAF   Doc 20328   Filed 04/15/08   Page 2 of 15

Motion To Dispense with Mediation, etc.
In re: Winn Dixie Stores, Inc.
Case No.: 05-03817-3F1
Page 2 of 3

4) The Debtor's litigation counsel has now requested that Wilson produce all of these records for a second time and asked for another set of medical authorizations for Wilson to send out to all of his healthcare providers. The Debtor refuses to attend mediation unless Wilson produces his records a second time.

5) Meanwhile, the Debtor refuses to provide any discovery or disclosure to Wilson. Wilson's claim involves a slip and fall accident at a Winn Dixie in Broward County, Florida, on August 4, 2004. The Debtor's delay will make it more difficult for Wilson to prosecute his case when stay relief is ultimately obtained.

6) Further, Wilson is permanently disabled and in significant pain and is in need of a recovery on this action as soon as possible. Wilson has been determined to be disabled by the Social Security Administration. (See Attachment B). Wilson is in constant and significant pain. Every day this case is delayed causes Wilson significant additional damage. Wilson's injuries also limit his ability to travel. A mediation session in Jacksonville would be a tremendous imposition on Mr. Wilson.

7) Wilson is also of the belief that there is not a reasonable chance this matter will settle at mediation. Wilson has produced documentation showing medical bills in excess of $200,000.00. Wilson has also documented liability in the case. The Debtor, however, has refused to make any good faith offer, and through conversations with the Debtor's representatives it appears extremely unlikely that this matter could settle at mediation.

8) Wilson requests the Court dispense with the mediation requirement of the Claims Resolution Order of September 1, 2005 and grant stay relief for Wilson to proceed in State Court to fix the amount of liability, but not to attempt any collection efforts.

9) Wilson understands that any claim amount fixed by a jury in the State Court action would

Case 3:05-bk-03817-JAF   Doc 20328   Filed 04/15/08   Page 3 of 15

Motion To Dispense with Mediation, etc.
In re: Winn Dixie Stores, Inc.
Case No.: 05-03817-3F1
Page 3 of 4

merely determine the amount of Wilson's claim to be paid pursuant to the terms of the confirmed Chapter 11 Plan.

WHEREFORE, Litigation Claimant/Creditor, MARK WILSON, respectfully requests the Court grant the relief requested above, and such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States Bankruptcy Court for the Middle District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and

I HEREBY CERTIFY that a true and correct copy of the forgoing was filed electronically and served electronically to: D.Jan Baker, Skadden Arps Slate Meagher & Flom, LLP, Four Times Square, New York, New York 10036 Co-Counsel for Debtors, Stephen D. Busey, Smith Hulsey & Busey, 225 Water Street, Suite 1800 Jacksonville, Florida 32202 Co-Counsel for Debtors, Dennis Dunne, Counsel to the Creditor's Committee, Millbank, Tweed, Handley & McCloy, LLP, 1 Chase Manhatten Plaza, New York, NY 10005-1413, on this 15th day of April, 2008.

DAVID W. LANGLEY
Attorney for Mark Wilson
8181 W. Broward Boulevard
Suite 204
Plantation, Florida 33324
Telephone:    954-356-0450
Facsimile:    954-356-0451
E-mail: dave@flalawyer.com

By: _s/David W. Langley_
David W. Langley, Esq.
Florida Bar Number 348279

## Attachment B

## Timeline of Document Productions and Medical Release Authorizations

| | |
|---|---|
| 08-25-2004 | Prior attorneys for Mr. Wilson, Cohen and Cohen, request client sign authorizations for release of information to Sedgwick Claims Management as well as provide them with a list of medical care providers. Arrangements for a non-recorded statement are also made on that date. To the best of our information, all of the authorizations were signed and sent into Sedgwick and the statement was given on September 9, 2004. |
| | Questionnaire provided by Cohen and Cohen to Logan & Co. |
| 10-27-2006 | Social Security Disability Benefit Determination sent to Logan & Co. for their files. |
| 05-25-2007 | Telephone call to Stephanie Knight, Sedgwick Claims from David W. Langley discussing case status |
| 07-11-2007 | Detailed letter to Stephanie Knight, Sedgwick Claims outlining client's injuries and attaching medical records and request for mediation to be set. |
| 07-30-2007 | Telephone call from Stephanie Knight, Sedgwick Claims to David W. Langley discuss case and what records she needs/has. |
| 08-22-2007 | MRI Reports emailed to Stephanie Knight, Sedgwick Claims. Request by Ms. Knight not to send any other records unless requested as she has many records already in her possession for review. |
| 09-10-2007 | Advise Stephanie Knight, Sedgwick Claims that client had no primary care physician for the five year period before subject incident |
| 10-15-2007 | Documents sent to Stephanie Knight, Sedgwick Claims<br><br>Medical Records<br>1. Coast Chiropractic, Bates numbered 100029-65,<br>2. Diagnostic Professionals, Inc. of North Broward, Bates numbered 100090-91, and 254<br>3. Fort Lauderdale Pain Medicine, Bates numbered 100079-86,<br>4. Dr. Perry Hoeltzell, Bates numbered 10000-100028, 100087-89,<br>5. Oakland Park MRI, Bates numbered 100092-146,<br>6. Palm Beach-Broward Medical Imaging Center, Bates numbered 100147-153,<br>7. Performance Rehab, Bates numbered 10054-210,<br>8. Dr. Todd Relkin, Bates numbered 100211-236,<br>9. University MRI, Bates numbered 100237-240,<br>10. Walgreens Pharmacy, Bates numbered 100066- 78,<br>11. Windsor Imaging, Bates numbered 100241-233.<br><br>Social Security Disability Determination Report<br><br>Medical Records Release Authorizations for West Boca Medical and Holy Cross |
| 10-17-2007 | Updated billing records for Dr. Relkin sent to Stephanie Knight, |

|  | Sedgwick Claims |
| --- | --- |
| 10-25-2007 | Telephone call to Stephanie Knight, Sedgwick Claims. She has received all the records. Will take awhile to review and advise if she needs anything else. |
| 11-02-2007 | Additional records from Anesco sent to Stephanie Knight, Sedgwick Claims. |
| 11-30-2007 | Email from Kimberly S. Gammit, Smith Hulsey & Busey, to David Langley to arrange for mediation in February. |
| 12-03-2007 | Telephone call from Christine Mann, David W. Langley's office, to Kimberly S. Gammit, Smith Hulsey & Busey, to advise dates of availability for mediation – any Friday or Monday. |
| 12-17-2007 | Topkin & Schwartz request medical release authorizations from client even after advised already provided records and authorizations to claims adjuster. |
| 12-18-2007 | Telephone call to Stephanie Knight, Sedgwick Claims. She needs to work up rest of medical bills and make sure they have what they need, f/u on mediation date. |
| 01-02-2008 | Telephone call from Topkin Schwartz requesting status of authorizations. Advise that medical records and authorizations for medical records already provided to Sedgwick Claims and they have all records as well as records release authorizations. Advised they are canceling mediation until re-do authorizations for Topkin Schwartz. |
| 01-08-2008 | Telephone call from Marsha regarding mediation coming up. Advise we were told it was cancelled please call back if can be set. |
| 02-19-2008 | Telephone call from Sandy Topkin, Topkin & Schwartz, wants to know status of signing authorizations, will not set mediation without them. |

# SOCIAL SECURITY ADMINISTRATION
## Office of Disability Adjudication and Review

## DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |
| Mark Lloyd Wilson | |
| (Claimant) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On August 16, 2005, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also filed a Title XVI application for supplemental security income on August 16, 2005. In both applications, the claimant alleged disability beginning August 9, 2004. These claims were denied and are now before the undersigned Administrative Law Judge on a timely written request for hearing filed on April 27, 2006 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on September 15, 2006, in Ft. Lauderdale, Florida. The claimant is represented by Nora Staum, an attorney.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2009. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, the undersigned finds that the claimant has been disabled from August 9, 2004 through the date of this decision. The undersigned also finds that the insured status requirements of the Social Security Act were met as of the date disability is established.

100244

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1. **The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.**

2. **The claimant has not engaged in substantial gainful activity since August 9, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

3. **The claimant has the following severe impairments: lumbar radiculopathy, status post discectomy (20 CFR 404.1520(c) and 416.920(c)).**

The above impairments cause significant limitation in the claimant's ability to perform basic work activities.

4. **The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)and 416.920(d)).**

5. **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift ten pounds, stand and walk for two hours and sit for two hours in an eight-hour workday. He needs to be able to shift position at will from sitting, standing or walking. He cannot stoop or crouch.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p and 96-6p.

The record reflects that the claimant slipped and fell on August 8, 2004 and subsequently experienced low back pain. During an examination on August 11, 2004, he had decreased range of motion of the lumbar spine with muscle tenderness and spasm (Exhibit 15F, page 18). MRI of the lumbar spine on August 30, 2004 showed disc protrusion (Exhibit 15F, page 13-14), and EMG/NCS showed findings consistent with lumbar radiculopathy (Exhibit 15F, page 9).

On June 14, 2005, the claimant underwent microlumbar discectomy (Exhibit 4F).

Roderick Santa Maria, M.D. examined the claimant on November 9, 2005 at the request of the state agency. The claimant reported pain in his back, right hip and right leg. On examination, lumbar range of motion was very minimal. He limped very heavily on the right and he walked with an American crutch. Dr. Santa Maria expressed the opinion that the claimant was disabled: "His gait is severely compromised, very slow, and I think he needs the crutch for assist, and I believe that he is disabled in that I do not believe that he can sit for long periods of time either" (Exhibit 6F). When he examined the claimant again on March 7, 2006, Dr. Santa Maria observed that the claimant walked using an American crutch which was "well-worn, indicating that he uses it consistently and not just at the time of this examination" (Exhibit 10F).

Todd Relkin, M.D., examined the claimant on June 16, 2006, approximately one year after his back surgery. The claimant continued to complain of severe back pain, radiating to the right leg (Exhibit 13F). Dr. Relkin performed an epidural steroid injection on July 12, 2006 (Exhibit 12F).

Dr. Relkin expressed the opinion that the claimant could sit for about two hours and stand/walk for about two hours in an eight-hour workday. He needs a job which permits shifting positions at will from sitting, standing or walking, and he will sometimes need to take unscheduled breaks during an eight-hour workday. He can lift and carry up to ten pounds, but he cannot stoop or crouch, according to Dr. Relkin (Exhibit 17F). The undersigned gives controlling weight to the opinion of Dr. Relkin.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible.

The State agency medical opinions are given little weight because evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultants. The Administrative Law Judge will give more weight to the opinion of Dr. Santa Maria, because he examined the claimant and the state agency medical consultants did not.

**6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a general manager of a restaurant and a real estate sales agent. The claimant cannot perform the prolonged standing and walking required in these occupations. Accordingly, the claimant is unable to perform past relevant work.

**7. The claimant was a younger individual age 18-44 on the date disability is established (20 CFR 404.1563 and 416.963).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).**

The claimant is unable to perform even sedentary work on a regular and continuing basis, that is, eight hours a day, five days a week.

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the additional limitations so narrow the range of work the claimant might otherwise perform that a finding of "disabled" is appropriate under the framework of this rule. He cannot sit for prolonged periods; he needs to be able to shift positions; he needs to take unscheduled breaks; he cannot stoop or crouch.

**11. The claimant has been under a "disability," as defined in the Social Security Act, from August 9, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on August 16, 2005, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on August 9, 2004.

Based on the application for supplemental security income filed on August 16, 2005, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on August 9, 2004.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

_____
Wendy Hunn
Administrative Law Judge

Date    SEP 29 2006

100249

## LIST OF EXHIBITS

| Claimant: | Mark Lloyd Wilson | SSN: | 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 |

| Exh No. | Part No. | Description | No. of Pages |
|---|---|---|---|

### PAYMENT DOCUMENTS/DECISIONS

### JURISDICITIONAL DOCUMENTS/NOTICES

### NON-DISABILITY DEVELOPMENT

100250

## LIST OF EXHIBITS

**Claimant:** <u>Mark Lloyd Wilson</u>　　　　　　　　　　　　**SSN:** <u>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</u>

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| | | **MEDICAL RECORDS** | |
| 1 | F | Medical Records dated 2/10/05; 3/8/05; 3/14/05 and 4/13/05 from David B Ross, MD | 8 |
| 2 | F | Medical Records covering the period from 5/2/05 to 11/18/05 from Perry Hoeltzell, MD | 19 |
| 3 | F | Radiology Report dated 6/4/05 from Palm Beach Broward Medical Imaging Center | 5 |
| 4 | F | Hospital Records dated 6/14/05 from North Broward Medical Center | 11 |
| 5 | F | Medical Report dated 9/30/05 from Marcos Szeinfield, MD | 1 |
| 6 | F | Consultative Examination dated 11/9/05 by Roderick Santa Maria, MD | 5 |
| 7 | F | RFC - Residual Functional Capacity Assessment - Physical (completed by DDS physician) dated 11/22/05 | 8 |
| 8 | F | Psychiatric Review Technique Form (completed by DDS physician) dated 12/2/05 | 14 |
| 9 | F | Psychiatric Review Technique Form (completed by DDS physician) dated 2/27/06 | 14 |
| 10 | F | Consultative Examination dated 3/7/06 by Roderick Santa Maria, MD | 2 |
| 11 | F | RFC - Residual Functional Capacity Assessment - Physical (completed by DDS physician) dated 3/20/06 | 8 |
| 12 | F | LAB REPORT DATED 6/14/05 AND OPERATIVE REPORT DATED 7/12/05 FROM NORTH BROWARD GENERAL MEDICAL CENTER SUB BY ATTY | 3 |
| 13 | F | MEDICAL REPORT DATED 6/16/06 FROM TODD A RELKIN MD SUB BY ATTY | 4 |
| 14 | F | MEDICAL REPORT DATED 2/9/06 FROM PERRY B HOELTZELL MD   SUB BY ATTY | 1 |
| 15 | F | MEDICAL RECORDS COVERING 8/11/04 TO 12/15/04 FROM DAVID ROSS) MD SUB BY ATTY | 20 |
| 16 | F | MEDICAL REPORT DATED %/21/05 FROM MARCOS SZEINFELD MD SUB BY ATTY | 4 |
| 17 | F | PHYSICAL RESIDUAL FUNCTIONAL CAPACITY DATED 8/9/06 SUB BY ATTY | 3 |

100251

**LIST OF EXHIBITS**

**Claimant:** Mark Lloyd Wilson     **SSN:** 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

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| | | **DISABILITY RELATED DEVELOPMENT AND DOCUMENTATION** | |
| 1 | E | Work History Report | 8 |
| 2 | E | Pain Report dated 8/22/05 | 3 |
| 3 | E | Third Party Questionnaire dated 8/22/05 | 1 |
| 4 | E | Work History Report | 8 |
| 5 | E | Disability Report - Field Office dated 9/22/05 | 4 |
| 6 | E | Disability Report - Adult dated 9/22/05 | 7 |
| 7 | E | Function Report - Adult | 8 |
| 8 | E | Disability Report - Appeal | 7 |
| 9 | E | CLAIMANTS MEDICATIONS LIST | 1 |

100252

# LIST OF EXHIBITS

| Claimant: | Mark Lloyd Wilson | SSN: | 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 |

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| | | **SUPPLEMENTAL SECURITY INCOME (SSI)** | |
| 1 | SSI | Application for Supplemental Security Income Benefits filed 8/16/05 | 3 |
| 2 | SSI | Initial Disability Determination by State Agency, Title XVI, dated 12/2/05 | 2 |
| 3 | SSI | Supplemental Security Income Notice dated 12/2/05 | 3 |
| 4 | SSI | Reconsideration Disability Determination by State Agency, Title XVI, dated 3/22/06 | 2 |
| 5 | SSI | Supplemental Security Income Notice of Reconsideration - Disability dated 3/23/06 | 3 |

100253