**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

### VISAGENT'S FOURTH MOTION TO COMPEL DISCOVERY DIRECTING WINN-DIXIE TO SEARCH RECENTLY DISCOVERED DATABASES AND FOR AN AWARD OF ATTORNEYS FEES AND SANCTIONS

Visagent Corporation (hereinafter "Visagent"), a claimant herein, moves the Court pursuant to Federal Rules of Civil Procedure 26 and 37 and Local Rule 7037-1, for an order compelling Winn-Dixie Stores, Inc. and twenty-three (23) of its subsidiaries and affiliates, as the Reorganized Debtors (hereinafter the "Debtors"), to produce those documents responsive to Visagent's First and Second Requests for Production, those documents ordered to be produced and agreed to be produced pursuant to Court Order and/or stipulation by searching recently discovered data bases and for an award of attorneys fees and sanctions. In support of the motion, Visagent states:

1.  Visagent, an unsecured creditor, holds Claim No. 9953 against Debtors in the sum of $131,875,000.00. In the Amended Notice of Claim, filed herein, Visagent contends Debtors materially and substantially breached an exhaustively negotiated Service Agreement entered into between the parties on June 15, 2001, effective June 28, 2001. Under the terms of this Agreement, Debtors were obligated for three (3) years to exclusively utilize the services of Visagent for the procurement and sale of all merchandise it acquired or sold, through internet or similar electronic means, including any means utilizing facsimile, from and through the secondary market. The secondary market is comprised of all sources (buyers and sellers) of merchandise other than direct purchases and returns from original product manufacturers. Visagent avers that Debtors breached its contractual obligation in failing to exclusively utilize Visagent's services as provided for in the Service Agreement, and as a result, Visagent suffered damages amounting to 2% of the value all transactions in which Debtors participated in the

purchase or sale of goods in the secondary market, other than those exempted by the Agreement.

Additionally, Visagent claims Debtors violated federal and state laws in connection with the theft and usurpation of trade secrets, proprietary information and business opportunities belonging to Visagent, which were provided to Debtors based on false promises by the Debtors of a continued business arrangement between the parties. Visagent relied on the unrealized inducements and promises of the Debtors to its detriment and suffered catastrophic damages as a direct consequence of Debtors' actions.

2. Debtors objected to Visagent's claims asserting it did not breach a duty to Visagent and Visagent failed to adequately perform under the terms of the Agreement, a claim that has been belied by the deposition testimony of Debtor's employees.

3. On July 23, 2006, Visagent served upon Debtors its First Request for Production, Interrogatories and Requests for Admissions, a copy of which is attached hereto as Exhibit A. On August 25, 2006, Debtors served their Response to Visagent Corporation's First Request for Production of Documents, attached hereto as Exhibit B, and Debtors' Response to Visagent Corporation's First Set of Interrogatories, attached hereto as Exhibit C.

4. On April 18, 2007, Visagent Corporation served upon Debtors its Second Request for Production, a copy of which is attached hereto as Exhibit D.

5. On May 3, 2007, Visagent served its First Motion to Compel Production of Documents, Better Answers to Visagent's First Set of Interrogatories and the Deposition of Debtors' Corporate Representative. A hearing was held on June 14, 2006 on Debtors' Second Motion to Compel and Visagent's First Motion to Compel. Parenthetically, the crux of Debtors' argument at this hearing was their demand that they receive Visagent's responses to their Requests for Production in a reasonably useable form to permit a search of the documents. Counsel for Debtor's argued as follows starting at page 8, Line 7 of the transcript:

> Let me turn first, Your Honor, to the rule. If you would look under Tab C of the notebook that I gave you where we have ....Rule 34B(i)(ii), "A party who produces documents for inspection shall produce them as they're kept in the usual course of business or shall organize them and label them to correspond with the categories in the request."

And (ii), "If a request does not specify the form or forms for producing electronically stored information, a responding party must produce the information in a form or forms ordinarily maintained or in a form or forms which are reasonably usable."

And there's a comment to this rule. If you will look at the last page under Tab C, these are the comments to the rule. And I want to read to you from that paragraph on page 6, in the middle of the paragraph. "The rule does not require a party to produce electronically stored information in the form in which it is ordinarily maintained as long as it is produced in a reasonably usable form. But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation.

"If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." That's the comment directly on point to the dispute that we have here.

In further argument in support of his request, counsel stated at page 15:

And I've showed you evidence that they maintained it in a form that was searchable. Obviously, they did. Obviously, it's electronically stored information. Now, obviously, they didn't maintain it in the ordinary course in 16,000 individual PDFs with Bates stamps on it. We want it as it was maintained. We want the program, we want the software, just like they had it. That's what the rule entitles us to.

Based upon the foregoing argument by Debtors' counsel, on June 21, 2007 this Court entered an order compelling Visagent to produce a copy of the original computer disks from which Visagent obtained the information it previously supplied Debtor in response to production requests, a copy of which is attached hereto as Exhibit E. A corrected Order was signed on July 30, 2007 a copy of which is attached hereto as Exhibit F.

    6.    During the course of the June 14, 2007 hearing, On cross-motions by Visagent for production of documents, Debtors' counsel repeatedly represented to the Court that Debtors had produced all of the documents they had in their possession which were responsive to Visagent's discovery requests. (Hearing Transcript pages 36, 42, 44, 53)

7. In pertinent part, the Court ordered as follows:

"Visagent Corporation's motion to compel the Debtors to produce original documents responsive to Document Request Numbers 1, 2 and 3 is denied as moot because of Debtor's prior agreement to produce the originals of the copies of the documents the Debtors have produced responsive to such Document Requests which are in Debtor's possession, custody or control."

8. The applicable document requests are as follows:

DOCUMENT REQUEST NO. 1: For the time period of June 28, 2001 to June 28, 2004, produce copies of all documentation regarding purchases or sales of any goods in the secondary markets in which any electronic means were utilized, including but not limited to, through the Internet, via facsimile, email or through the use of any electronic device. This request specifically includes, but is not limited to, all invoicing, receipts, orders, order confirmations, billing, bills of lading, checks, bank drafts, wire transfer orders or confirmations or any other responsive data, whether or not actually printed on paper or retained by other data storage means.

DOCUMENT REQUEST NO. 2: Produce copies of all correspondence between the Debtor and Visagent for the period January 1, 2000 and January 1, 2005.

DOCUMENT REQUEST NO. 3: Produce copies of all internal communications of and between employees of the Debtor for the period January 1, 2000 and January 1, 2005, referencing in any way Visagent Corporation.

9. The Court further ordered that "(t)he Debtors shall make a reasonable effort to locate documents regarding their communications with Dayman & Associates during the period June 28, 2001 to December 28, 2004 and to produce such documents in the Debtor's possession, custody or control." ( DOCUMENT REQUEST NO. 4: Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and Dayman & Associates, Inc. Grocers for the period June 15, 2001 to present.)

10. In its First Motion To Compel, Visagent moved to compel Debtors to respond to the following Document Requests:

DOCUMENT REQUEST NO. 5: Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received,

4

between the Debtor and Victory Wholesale Grocers for the period June 15, 2001 to present.

DOCUMENT REQUEST NO. 6: Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and C&S Wholesale Grocers for the period June 15, 2001 to present.

DOCUMENT REQUEST NO. 7: Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and Food Marketing Group for the period June 15, 2001 to present.

DOCUMENT REQUEST NO. 8: Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and WorldWide Retail Exchange for the period June 15, 2001 to present.

DOCUMENT REQUEST NO. 9: Produce all emails, faxes, memos, correspondence or any other communications, no matter how transmitted or received, between the Debtor and intesource, Inc. for the period June 15, 2001 to present.

The Court directed that "Debtors shall produce documents responsive to Document Request Numbers 5 through 9 for the period June 28, 2001 through December 28, 2004 which are in Debtor's possession, custody or control which the Debtors have not already produced."

11. A Second Motion to Compel was served on May 29, 2007 which dealt with the refusal of Debtors' to establish a date for inspection of documents they had agreed to produce in response to Visagent's Second Request for Production.

12. A Third Motion to Compel was filed on November 20, 2007 which sought an Order directing Debtors to produce those documents previously ordered to be produced and agreed to be produced, to fully respond to Visagent's discovery requests as supplemented by Debtor's corporate representative's deposition testimony, for an award of attorneys fees and sanctions and for an order expanding the time constraints to complete the deposition of Debtors' corporate representative. The gist of the motion was Winn-Dixie's continued refusal to produce documents responsive to Visagent's requests. Compounding this issue was that it was discovered during the deposition of the Winn Dixie corporate representative that substandard efforts had been made to locate

responsive documents and that the corporate representative presented as most knowledgeable was unaware of the efforts utilized to locate and produce these documents. Claimant proffered to the Court that the lack of diligence on Debtors' part in locating and retrieving responsive documents to the Requests for Production violated the June 14, 2007 Order of this Court and smacked of bad faith. Claimants were yet to discover the extent of Debtors' bad faith in obstructing the discovery process.

13. A hearing was scheduled before this Court on December 13, 2007 on Visagent's Second Motion to Compel and Third Motion to Compel. The Court issued an Order dated December 28, 2007, a copy of which is attached hereto as Exhibit G. In pertinent part, the Court stated as follows:

> In regards to its Second Motion to Compel, Visagent alleges that the Debtors have failed to produce all of the documents sought in their Second Request for Production. (Tr. pg. 8). In response, Debtors' counsel adamantly maintains that the Debtors have complied in full. (Tr. pg. 10-11, 16, 34, 42-43). Specifically, Debtors' counsel stated 'We've given them all of the documents we're aware of in Winn-Dixie's possession – and we have conducted a very thorough search for those documents – and we've represented that to them. I don't know what else we can do.' (Tr. pg. 11). The Court accepts Debtors' representation that all documents they are aware of in their possession have been produced. However, the Court reserves the option to impose sanctions against the Debtors if it is discovered that they failed to produce all documents they were *aware* and in *possession* of at the time of the hearing, unless such documents are produced within thirty days of the date of this order. Additionally, if such documents are not produced within the above time frame, Debtors will be precluded from using the documents at trial."

In a footnote, the Court reiterated that the Order of July 30, 2007 remains effective, to wit: if the Debtors discover responsive documents other than those which the Debtors have already produced, Debtors shall produce such documents to Visagent no later than 30 days prior to the beginning date of any trial on this matter, failing which, the Debtors will be precluded from using such documents at trial."

14. The Court also noted that Debtor agreed to produce a corporate representative other than Mr. Barr for deposition on the following area:

> All efforts taken by Winn-Dixie to locate and produce documents responsive to Visagent's requests for production of documents to Winn-Dixie referenced in Mr. David Gay's correspondence to Mr. Guy Rubin dated October 1, 2007.

6

15. On January 28, 2008, counsel for Debtors forwarded a letter to the undersigned, a copy of which is attached hereto as Exhibit H. After months of repeated denials of the existence of additional information responsive to Claimant's Request for Production, Mr. Gay wrote:

> "Additionally, by way of disclosure of Winn-Dixie's efforts to locate and produce documents responsive to Visagent's discovery requests, Winn-Dixie has recently identified two potential sources of electronic documents which, due to undue burden and cost, Winn-Dixie has not reviewed for responsive information.
>
> First, Winn-Dixie discovered that a system-wide backup of Winn-Dixie's electronic mail system was created in 2005. However, because Winn-Dixie has subsequently changed its electronic mail infrastructure, this backup information is no longer readable or searchable by Winn-Dixie without undue burden and cost. Therefore, pursuant to Federal Civil Procedure Rule 26 (b)(2)(B), Winn-Dixie has not reviewed this information for responsive documents.
>
> Second, Winn-Dixie, through a document management vendor, maintains archives comprised of imaged documents. Winn-Dixie has determined that these archives may contain warehouse receiving and bills of lading documents regarding Winn-Dixie's purchases and sales of goods in the secondary market for the period 2001 through 2004. However, such documents are stored within a massive archive system which cannot be searched for documents specifically related to such purchases and sales without undue burden and cost...."

16. On February 13, 2008, Debtors produced Matthew Larsen of Deloitte Financial Advisory Services, a senior manager working in the area of electronic discovery. (Transcript, p. 4) He testified that Debtors are clients of his employer and he works through in-house counsel, Jay Castle, and outside counsel, David Gay, to assist with electronic discovery, but not with the actual harvesting of information. (Transcript, pages 8, 12 and 17) Mr. Larsen indicated that his assignment with Debtors commenced around August-September 2007. (Transcript p. 8) He learned at the outset of his assignment where data was stored at Winn-Dixie and how it was backed up. (Transcript p. 19-20) When questioned about the January 28, 2008 correspondence from Mr. Gay, Mr. Larsen indicated that the sources referred to in the letter were the **Metafile data** (Transcript p. 96-97) and the system wide **backup of the e-mail system** in 2005. (Transcript p. 99) Upon further inquiry, it was revealed that Debtors had changed their

7

backup system **AFTER** commencement of this case in litigation, as indicated in Mr. Larsen's testimony as follows:

99:6   Q   Why is it unduly burdensome or costly?
99:7   A   Because the backup system from when this backup
99:8   was created is no longer the current system being used
99:9   by Winn-Dixie, and therefore a complete separate system
99:10  would have to be built by Winn-Dixie in order to restore
99:11  this data from tape.
99:12  Q   Well, couldn't Winn-Dixie have just retained
99:13  the software that operated that backup?
99:14  A   Right, but you have to have it built to the
99:15  exact specifications of what TSM was at the time and the
99:16  exchange was at the time, and they don't currently have
99:17  that configuration there.
99:18  Q   They had it at the time they discontinued it;
99:19  right?
99:20      MR. GAY: Objection to form.
99:21  A   At the time that they made the backup?
99:22  Q   Yeah.
99:23  A   Yes.
99:24  Q   Okay. And then they moved to a new system;
99:25  right?
100:1  A   Correct.
100:2  Q   Right. They were already in litigation in this
100:3  case; correct, at that time?
100:4  A   Correct.
100:5  Q   So they could have saved that system so that we
100:6  could see the backup today, and it wouldn't have cost
100:7  anything if they had saved the system; right?
100:8      MR. GAY: Objection to form.
100:9  A   I'm sorry. The question again?
100:10 Q   They could have saved the system that ran that
100:11 backup and then they wouldn't have to duplicate -- they
100:12 wouldn't have to build it at undue cost today if they
100:13 had saved it when the backup was made; correct?
100:14     MR. GAY: Objection. Calls for speculation.
100:15 A   Correct. They could have, yes.
100:16 Q   Okay. Is that the total reason for undue
100:17 burden and cost, is the replication of this system?
100:18 A   Correct.

    17.   Concerning the **Metafile** documents, Mr. Larsen testified as follows:

100:19 Q   What about the undue burden and cost with

8

100:20 regard to the Metafile imaging; what is that?
100:21    A   My understanding of that is because of the
100:22 ability to search it, the size of it, millions of
100:23 records, to be able to get to what is specifically
100:24 responsive to this litigation is the undue burden and
100:25 cost.
101:1    Q   Is it not searchable?
101:2    A   Not to my knowledge.
101:3    Q   What media is it contained on?
101:4    A   I believe it's image data housed on a server.
101:5    Q   Okay. So it could be put onto disks or a tape?
101:6    A   Correct. It could be stored in another media.
101:7    Q   And it could be viewed using what software
101:8 applications?
101:9    A   I'm not sure. I would have to investigate
101:10 that.
101:11    Q   Well, that's what we're here to find out. You
101:12 don't know?
101:13       MR. GAY: Objection to form.
101:14    A   I don't know.
101:15    Q   Who told you that it wasn't searchable?
101:16    A   The representative for Winn-Dixie that I spoke
101:17 to.
101:18    Q   Who?
101:19    A   Counsel.
101:20    Q   Would there be any impediment for Winn-Dixie to
101:21 supply that information to Visagent so that Visagent
101:22 could use its resources to mine that database with a
101:23 confidentiality agreement?
101:24       MR. GAY: Objection to form.
101:25    A   If the question could it be turned over --
102:1    Q   Yes.
102:2    A   -- I don't see why not. I don't know the legal
102:3 answer. I mean, there's other data for other
102:4 corporations.

Mr. Larsen indicated that he saw no impediment to having the data base replicated on to a hard drive and provided to Claimants. (Transcript p. 103-104)

      18.    Federal Rule of Civil Procedure 26 (b) (2) (B) provides as follows:

> **(B)** *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the

9

information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26 (b) (2) (C). The court may specify conditions for the discovery.

19. Contrary to Debtors' former adamant and repeated protestations, two additional sources of potentially responsive materials to Claimant's discovery requests "recently" appeared. However, Debtors' claim reviewing these sources would be too burdensome and expensive.

20. The production of the **Metafile** information is quite elementary. Debtors can have the database replicated to a hard drive and provided to Visagent, as ratified by Mr. Larsen, Debtor's designated corporate representative on Debtor's discovery efforts in this case.

21. Production of the **e-mail backup system** is not as easily resolved, but the result is the same: Debtors must produce the information. As Mr. Larsen testified, Debtors changed backup systems in 2005 discarding the software that ran the original system, while this litigation was pending, instead of saving it. In effect, Debtor rendered its own **email backup system** obsolete at a time when Debtor knew or should have known that access to this information was likely to be necessary in this and other pending or anticipated litigation. Making this error more grievous, Debtor has been unable to replicate this information or locate hard copies of the emails of numerous current and former Winn-Dixie employees involved in the contracting process with Visagent and implementation of Visagent's services, all critical areas of inquiry for this Court in its ultimate disposition of Visagent's claims.

In claiming undue burden and cost, Debtor now denies any culpability and refuses to bear responsibility for its destruction of the tools necessary to access its own backed up emails. This is akin to the famous legal definition of chutzpah, where a teen on trial for the murder of his parents begs for mercy because he's an orphan.

22. Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. American Standard Inc. v. Humphrey, Slip Op. 2007 WL 1186654 (M.D. Fla)

23.     This Court made pointed note of Debtors' "adamant" representations that they had produced everything they had in their possession in its December 28, 2007 Order. The Court also provided for the imposition of sanctions in the event there it is discovered that they failed to produce all documents they were *aware* of and in *possession* of at the time of the hearing, unless such documents were produced within thirty days (by January 27, 2008). Interestingly, on the thirty-first day, Debtors claim they "recently" discovered two other sources of discovery material, but refused to review it or produce it because of time and expense. Compounding this deception is the testimony of Mr. Larsen, who was unable, or unwilling, to pinpoint the time of this "discovery." (Transcript p. 97-98) However, it is clear that Debtors had this information available to them and in their possession at the time of the hearing on December 13, 2007.

Monetary sanctions, including attorney fees and expenses are warranted for a party's failure to disclose documents in response to properly promulgated discovery requests and prior orders of the court where the requested documents go directly to the key issues in the case and a party willfully, openly and in bad faith refuses to comply with direct orders from the court. Action Marine, Inc. v. Continental Carbon, Inc. 243 FRD 670 (MD Ala., 2007)

The **backup email database** in question here undoubtedly contains complete **email files** to and from the key Winn-Dixie employees who were directly involved with Visagent and the direct issues raised in this adversarial proceeding. Debtor has never produced complete, comprehensive emails or instant messaging trails for these employees and other email account holders despite requests by Visagent in this case.[1]

Sanctions are appropriate pursuant to this Court's December 28, 2007 Order because it has been discovered that Debtor failed "to produce all documents they were *aware* of and in *possession* of at the time of the hearing, unless such documents were produced within thirty days (by January 27, 2008)." In fact such documents, which are

---

[1] These employees and non-employee Winn-Dixie email account holders include, but are not limited to, Tom Barr, Phillip Payment, Daryl Mills, Ed Mieskoski, Dick Judd, Dan Lefever, Frank Lazeran, Mike Nixon, Robert Carlson, Bruce Malcolm, Seth Gaynor, Chris Wilson, Glenn Hamilton, Les Wolfort and Kevin Gates and any secretaries or assistants of these people who transmitted emails for their superiors.

maintained in electronic form in the **Metafiles** and in Debtors' **back up system**, have not been produced at all, which as of the date of this Motion, is some 107 days since the Order requiring production.

WHEREFORE, Visagent requests the relief identified within be granted in its entirety, together with sanctions including attorneys fees and costs as appropriately determined by the Court, and for such other and further relief as the Court deems just and proper.

### CERTIFICATE OF GOOD FAITH

I HEREBY CERTIFY that I personally made a good faith effort to resolve the issues set forth by way of this Motion prior to filing same. As outlined in the Memorandum, the issues raised could not be resolved.

_____
Guy Bennett Rubin, Esq. (FBN 691305)
Attorneys for Plaintiffs
**RUBIN & RUBIN**
P.O. Box 395
Stuart, Florida 34995
Telephone:   (772) 283-2004
Facsimile:    (772) 283-2009

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of this Motion has been electronically filed via ECF and that a true and correct copy of the foregoing has been furnished by US regular Mail to: David L. Gay, Smith, Hulsey & Busey, 225v Water Street, Suite 1800, Jacksonville, Florida 32202 on the 12th day of April, 2008.

Guy Bennett Rubin, Esq. (FBN 691305)
Attorneys for Plaintiffs
**RUBIN & RUBIN**
P.O. Box 395
Stuart, Florida 34995
Telephone:   (772) 283-2004
Facsimile:   (772) 283-200

13