FORM B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF FLORIDA (JAX. DIV.) | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Winn-Dixie Stores, Inc., et al | Case Number<br>05-03817-3F1 |
|---|---|

Note  This form should not be used to make a claim for an administrative expense arising after the commencement of the case  A "request" for payment of an administrative expense may be filed pursuant to 11 U S C  § 503

DEBTOR  WINN - DIXIE STORES, INC
US BANKRUPTCY COURT M D -FLORIDA
JOINTLY ADMINISTERED UNDER
CASE  05-03817 (3F1)
CHAPTER 11

**CLAIM NO.: 11858**

Name of Creditor (The person or other entity to whom the debtor owes money or property)

Foothills Partnership

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

Name and address where notices should be sent

Foothills Partnership
PO Box 3305          *2235*
Greenville, SC 29602-3305

Telephone number          864 242 5599

☐ Check box if you have never received any notices from the bankruptcy court in this case

☐ Check box if the address differs from the address on the envelope sent to you by the court

THIS SPACE IS FOR COURT USE ONLY

| Account or other number by which creditor identifies debtor | Check here if this claim | ☐ replaces<br>☐ amends | a previously filed claim, dated <u>DATE</u> |
|---|---|---|---|

| 1.  **Basis for Claim** | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U S C  § 1114(a) |
| ☐ Services performed | ☐ Wages, salaries, and compensation (fill out below) |
| ☐ Money loaned | Your SS #     SS#   -   SS#   -   SS# |
| ☐ Personal injury/wrongful death | Unpaid compensation for services performed |
| ☐ Taxes | from     DATE     to     DATE |
| X  Other  Real Property Lease | (date)          (date) |

| 2.    Date debt was incurred:  07.18.94 (Lease) | 3.    If court judgment, date obtained:  n/a |
|---|---|

4.    **Total Amount of Claim at Time Case Filed**

| $408,680 60 | $0 | $0 | $408,680 60 |
|---|---|---|---|
| (unsecured) | (secured) | (priority) | (Total) |

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

**5.    Secured Claim.**

☐ Check this box if your claim is secured by collateral (including a right of setoff)

Brief Description of Collateral

☐ Real Estate    ☐ Motor Vehicle

☐ Other _____

Value of Collateral          $_____

Amount of arrearage and other charges at time case filed included in secure claim, if any  $_____

**6. Unsecured Nonpriority Claim.**

X Check this box if  a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority

**7.    Unsecured Priority Claim.**

☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $ AMOUNT
Specify the priority of the claim

☐ Wages, salaries, or commissions (up to $4,300),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C  § 507(a)(3)

☐ Contributions to an employee benefit plan – 11 U S C  § 507(a)(4)

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C  § 507(a)(6)

☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U S C  § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C  § 507(a)(8)

☐ Other – Specify applicable paragraph of 11 U S C  § 507(a)(___)

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

| 8.    **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| 9.    **Supporting Documents:** *Attached copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien  DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain  If the documents are voluminous, attach a summary | |
| 10. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim | |

| Date<br>09 22 05 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)  **By: W.R. Martin, Mg. Ptr**<br>*W.R Martin* |
|---|---|

*Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C  §§ 152 and 3571*

## UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION

In re:

Winn-Dixie Stores, Inc., et al

Case No 05-03817-3F1
Chapter 11

Debtors

_____/

### PROOF OF CLAIM OF FOOTHILLS PARTNERSHIP

By Notice of Rejection of Unexpired Lease dated September 14, 2005, Debtor rejected the real property lease for Winn-Dixie Store 1098, located in West Union, South Carolina.

Creditor is landlord under such lease dated July 18, 1994, and as amended by First Amendment to Lease dated July 20, 1998 (collectively the *"Lease"*). Copies of such lease dated July 18, 1994, and First Amendment to Lease dated July 20, 1998, are attached hereto.

Creditor makes claim for damages under Bankruptcy Code §502(b)(6), resulting from termination of the Lease, as follows. Such claim is for the period of 1.5 years and does not exceed the limitations of Bankruptcy Code §502(b)(6).

### (A) Rent Reserved [Bankruptcy Code §502(b)(6)(A)]

- The term of the Lease expires August 2, 2015 (see §3 of First Amendment to Lease dated July 20, 1998)
- The remaining term of the Lease is 10 years (September 24, 2005, rejection effective date to August 2, 2015).
- 15% of remaining term is 1.5 years.
- Annual rental under the Lease is $271,859.00 (July 18, 1994, lease §1).
- 1.5 x $271,859.00 = $407,788.50

### (B) Unpaid Rent [Bankruptcy Code §502(b)(6)(B)]

- CAM (July 18, 1994, lease §31) for 1st qtr. 2005 (January 1 – March 31, 2005) - $1,544 02 [see attached INVOICE]
- less 1st qtr. partial payment of $651.92 [see attached Deposit Summary]
- equals unpaid CAM charge: $1,544.02 - $651.92 = $892.10

### (C) Total Amount of Claim

- $407,788.50 (rent reserved) + $892.10 (unpaid rent) = $408,680 60

# LEASE

THIS LEASE, made this __18th__ day of __July_____, 1994, between

FOOTHILLS PARTNERSHIP, a South Carolina general partnership ("**Landlord**") and WINN-DIXIE

GREENVILLE, INC., a Florida corporation authorized to transact business in South Carolina,

("**Tenant**"), which terms "Landlord" and "Tenant" shall include, wherever the context admits or requires,

singular or plural, and the heirs, legal representatives, successors and assigns of the respective parties,

## WITNESSETH:

**PREMISES**

That Landlord, in consideration of the covenants of Tenant, does hereby lease and demise unto

Tenant and Tenant hereby agrees to take and lease from Landlord, for the term hereinafter specified, the

following described premises.

That certain store building, approximately 215 feet in width by 175 feet in depth, together

with a vestibule measuring approximately 78' in width by 11' in depth in the front and pad

mounted coolers and freezers on the rear, and the land on which the same shall stand (hereinafter

collectively called "demised premises"), which store building and related improvements were

constructed by a prior Landlord and enlarged by Tenant under a prior Lease dated April

17, 1986, and shall be in the location and of the dimensions as outlined in red on the Plot Plan

prepared by Narramore Associates, Inc , dated June 30, 1994, attached hereto marked Exhibit

"A" and by reference made a part hereof.

The demised premises are located in a shopping center development (shown in detail on

Exhibit "A"), known as Foothills Center ("shopping center"), located at the northeasterly corner

of the intersection of S.C. Highway 11 and S.C. Highway 28 in the City of West Union, County

of Oconee, State of South Carolina, the legal description of the shopping center being set forth

on Exhibit "B" attached hereto and by this reference made a part hereof

APPROVED
AS TO FORM

Division Mgr.

Legal Dept
Winn Dixie Stores,
Inc.

1098 Lse
7/6/94

This instrument was prepared by
Kim Rice Bongiovanni, Attorney-
at Law, whose address is 5050
Edgewood Court, Jacksonville,
Florida 32205.

**LEASE**
**REPLACEMENT**

It is understood and agreed that Tenant presently occupies certain demised store premises in the shopping center, as presently existing, under a certain lease dated April 17, 1986, a short form of which is recorded in Book 452, page 165 in the Register's Office of Oconee County, South Carolina; the term of which lease, as amended and extended is now fixed to expire at midnight on April 16, 2006  It is hereby understood and agreed between the parties that the lease dated April 17, 1986 shall be replaced simultaneously with the commencement date of this lease. All payments due under such prior lease shall be prorated from the end of the prior fiscal year of Tenant to the date of commencement of this lease  It is understood and agreed that the replacement of the prior lease dated April 17, 1986 is herein described, is a condition precedent to Tenant's entry into this lease  Landlord agrees to obtain the written consent of any lienholder necessary to consent to allow Landlord to replace such prior lease dated April 17, 1986  Tenant shall have thirty (30) days from receipt of the information and consents from Landlord to cancel this lease if conditions have not been met

**TERM**

FOR TENANT TO HAVE AND TO HOLD from the date when Tenant opens the demised premises for the transaction of its business for an initial term of Twenty (20) years from the commencement date. The parties agree to execute a supplemental agreement documenting the commencement date.

This lease is granted and accepted upon the foregoing and upon the following terms, covenants, conditions and stipulations:

**RENTAL**

1.    Tenant agrees to pay to Landlord as minimum guaranteed rental for the demised premises during the term of this lease, and any extensions thereof, the sum of Two Hundred Seventy One Thousand Eight Hundred Fifty Nine and No/100 Dollars ($271,859.00) per annum  The minimum guaranteed rental shall be paid in twelve (12) equal monthly installments of Twenty Two Thousand Six Hundred Fifty Four and 92/100 Dollars ($22,654.92) per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the lease term, and any extensions thereof

In addition, Tenant agrees to pay Landlord a percentage rental equal to the amount, if any, by which one per cent (1%) of Tenant's gross sales made from the demised premises in each fiscal year of Tenant during the term of this lease, and any extensions thereof, exceeds the minimum guaranteed annual rental.

Any excess rent which may become due by reason of the percentage of sales provision shall be payable by Tenant within sixty (60) days after the expiration of each fiscal year.  However, upon final termination of the lease, if not extended, or upon termination of the last extension thereof, any excess rent which may be due by reason of the percentage of sales provision shall be payable by Tenant within sixty (60) days after such termination or expiration of the leasehold.  The percentage rent for each fiscal year shall be calculated separately and without reference to the volume of sales of any other year    For purposes of calculation of the percentage rental due hereunder, Tenant's fiscal year shall be approximately July 1st to June 30th of each year   The first monthly installment of rental shall be due on the first day of the next succeeding complete calendar month after the date the lease commences as hereinafter provided, and shall include any rent due for the preceding fractional month.  Both guaranteed rental and percentage rental for fractional years and fractional months occurring at the beginning and end of the term, or any extension thereof, shall be pro-rated on the basis of the annual rental

**DEFINITION**
**OF "GROSS**
**SALES"**

1a.    The term "gross sales" as used herein shall mean the aggregate gross  sales price of  all merchandise sold in or from the demised premises, both for cash and on credit  Such term shall not include (1) any rental tax, or any sales tax, gross receipts tax, or similar tax by whatever name called, the amount of which is determined by the amount of sales made, and which Tenant may be required to collect and account for to any governmental agency; (2) transfers of merchandise made by Tenant from the demised premises to any other stores or warehouses of Tenant or its affiliated companies; (3) credits or refunds made to customers for merchandise returned or exchanged; (4) all sales of cigarettes and

tobacco, (5) all receipts from vending machines, banks and public telephones, (6) accommodation check cashing fees and accommodation sales, such as sales of postage stamps, lottery entries, money orders, government bonds or savings stamps or similar items, (7) returns of merchandise to suppliers or manufacturers, (8) net amount of discounts allowed to any customers, including discounts resulting from the issuance to customers of trading stamps, receipts or coupons for exchange of merchandise or other things of value, and (9) merchandise or other things of value issued as a premium in connection with any sales promotion program. Tenant makes no representation or warranty as to the amount of sales it expects to make in the demised premises.

**RECORD OF**
**SALES**

**1b.**    Tenant shall keep complete and accurate books and records of its gross sales made from the demised premises, which books and records shall be kept by Tenant at the office address designated for notices  At the end of each fiscal year, or at the end of the leasehold, if it sooner occurs, and at such time as the percentage rental shall be payable, Tenant shall submit to Landlord a written statement of the gross sales made by Tenant from the demised premises during the preceding fiscal year  Such statement of sales shall be treated as confidential by Landlord and shall be conclusive unless Landlord, within ninety (90) days after receipt thereof, shall cause applicable records to be audited in a manner not to unreasonably interfere with Tenant's business by a certified public accountant employed and paid by Landlord.

**USE**

**2.**    The demised premises may be used for a retail food store, commonly referred to as a supermarket, dealing primarily in, but not limited to foods and food products, or for the conduct of any mercantile, retail or service business (including discount businesses)

If permitted by local, state and federal laws, Tenant or its licensee shall be permitted to sell beer and wine for off premises consumption from the demised premises  The sale of prescription drugs requiring presence of a licensed pharmacist in the operation of a pharmacy department or concession shall be permitted from the demised premises incidental to the conduct of a supermarket business  Tenant shall be permitted to sell photographic film, equipment and supplies and photofinishing and development services and Tenant shall be permitted to sell all types of flowers, shrubs and gardening supplies

Tenant at all times shall fully and promptly comply with all laws, ordinances and regulations of every lawful authority having jurisdiction of the premises, as such shall relate to the cleanliness and use of the premises and the character and manner of operation of the business conducted in or at the premises.

**CONSTRUCTION OF**
**SHOPPING CENTER**

**3.**    A prior landlord constructed the shopping center, substantially as shown on Exhibit "A", consisting of all the buildings shown thereon, with the exception of the enlargement of the demised premises which will be constructed by Tenant, together with all  ramps, sidewalks, streets, entranceways, malls, parking areas, service areas, driveways, utility lines, water detention and retention facilities and related improvements, such improvements (excluding buildings) being sometimes hereinafter referred to as "common areas"  A prior landlord, at its sole cost and expense, graded and surfaced with top quality materials all paved portions of the common areas (including parking area), and provided proper and adequate water drainage and lighting system and operations therefor and the present Landlord shall operate and maintain the same in good repair and usable condition for use by the patrons of the shopping center and the tenants and their employees during the term of this lease and any extensions thereof  The arrangement and location of all store buildings and common areas (including parking area) within the shopping center shall at all times during the term of this lease, or any extensions thereof, be maintained as shown on Exhibit "A" and shall not be changed without the written consent of Tenant  The exterior of the shopping center (including any store buildings and the demised premises) shall not be materially modified without Tenant's prior written consent.  If not shown on Exhibit "A", Tenant expressly reserves the right to approve the finish grade elevations of all store buildings and common areas (including parking and service areas) within the shopping center which are to be constructed concurrently with Tenant's store building.

3

**COMPLETION
DATE**

4. The parties covenant and agree that the enlargement of the demised premises shall begin not later than sixty (60) days hereof and shall be completed not later than nine (9) months thereafter, and if the same shall not be begun or completed by the respective dates, the parties, at their option, may, in either of such events, cancel and terminate this lease or may extend Tenant additional time for the beginning or completion of construction, provided, however, that if after the beginning of construction Tenant's failure to complete the improvements within the stipulated time shall be due to acts of God, strikes, riots, fire, flood, war, delay of carriers, material shortages, embargoes or inclement weather, or other similar happenings which are beyond the control of Tenant, and provided further the improvements shall be completed with all due diligence commensurate with such delay and in all events not later than one (1) year after (the "outside completion date"), this option to terminate shall not arise

**COMMENCEMENT
DATE**

5. Tenant shall open its store for business within sixty (60) days following performance of the following:

    (a) Tenant's store building and other improvements constructed on the premises shall have been completed in accordance with the plans and specifications and a Certificate of Occupancy or equivalent document for the demised store building shall have been obtained,

    (b) Construction of all of the common areas shall have been completed substantially as shown on Exhibit "A"; and

    (c) All drives, entrances, median cuts, acceleration and deceleration lanes and traffic control devices shown on Exhibit "A" in or connecting the common areas to the adjacent rights-of-way shall have been installed and opened for use by vehicular traffic

In the event that all the above requirements shall not have been met on or prior to the outside completion date, Tenant at its sole option may cancel and terminate this lease

Rent shall begin to accrue hereunder upon the date Tenant opens its store for business, or upon the expiration of sixty (60) days following the performance of all the above requirements, whichever date shall sooner occur. No acceptance of possession of the demised premises, opening for business by Tenant nor payment of rent under this lease shall constitute acceptance by Tenant of defective work or materials or of work not completed in accordance with plans and specifications

Notwithstanding the other provisions of Articles 4 and 5 hereof, Landlord agrees that if for any reason the requirements of Article 5 are met by Landlord on or after December 1 of any year and on or before January 31 of the succeeding year, Tenant shall not be required to open its store for business and rent shall not begin to accrue until the later of February 1 of the succeeding year, or 30 days after the requirements of Article 5 are met, unless Tenant actually opens its store for business sooner.

**OTHER TENANTS**

6. THIS ARTICLE LEFT INTENTIONALLY BLANK

**RETAIL AND
SERVICE STORES
ONLY**

7. Without the prior written consent of Tenant herein only retail and/or service stores shall be allowed to operate in the shopping center, or any enlargement thereof, it being the intent of the parties hereto that no spa, lounge, bar, "teen lounge", bowling alley, pawn shop, skating rink, bingo or electronic or other game parlor, theatre (either motion or legitimate), business or professional offices, sales of automobiles, recreational or entertainment-type activities, non-retail or non-service type activities, shall be permitted, provided, however, that business or professional offices shall be limited to a maximum of 6,000 square feet of space within the shopping center

PARKING AND
COMMON AREAS

8.    Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees, a non-exclusive right at all times to use, free of charge, during the term of this lease, or any extensions thereof, all the common areas, as defined in Article 3 hereof and as shown on Exhibit "A", which areas are acknowledged to be for use by such persons, along with others similarly entitled, for parking and for ingress and egress between the demised premises and all other portions of the shopping center and the adjoining streets, alleys and sidewalks    Tenant may use the sidewalks adjacent to the demised premises or exterior surfaces of its building for the display and sale of merchandise and services

Landlord shall at all times during the term of this lease, and any extensions thereof, provide and maintain a surfaced parking area substantially as shown on Exhibit "A", and of sufficient area to provide.

(a)    a minimum ratio of at least 4 0 automobile parking spaces for each 1,000 square feet of gross building area (including additional floor levels) in the shopping center, and

(b)    facilities for convenient parking of at least 396 automobiles (minimum),

and in the event the parking area furnished should at any time be substantially less, and such deficiency of parking facilities shall continue for thirty (30) days after written notice thereof is received by Landlord giving reasonable details, Tenant at its option shall have the right to terminate this lease, provided, that the termination of the lease for such a default may be prevented and the lease reinstated by Landlord curing the default within thirty (30) days after receipt of such notice of termination    All of the common areas (including parking area) shall be adequately lighted by Landlord at its expense during Tenant's food store shopping hours, and Landlord further agrees that no signboards or other construction shall be erected in any of the said common areas shown on Exhibit "A" or so as to obstruct the view of the demised premises from the adjoining public streets    Without the prior written consent of Tenant herein, no carnivals, fairs or shows nor sales by merchants utilizing vehicles or booths in the common areas shall be allowed in the shopping center, or any enlargement thereof

Notwithstanding the foregoing, it is agreed Landlord's responsibility for lighting the parking lot shall not apply to those light fixtures identified by asterisks on Exhibit "A"    Landlord shall provide tenant access to utilities for the designated light fixtures    Tenant shall be responsible for the payment of the utility bills for the designated light fixtures    Landlord shall maintain the light fixtures and be responsible for replacement of the lighting unites in accordance with Articles 12 and 31 herein

SERVICE AREA

9.    Landlord agrees to provide for the exclusive use of Tenant at its service entrances parking spaces for two large trailer trucks for continuous use    Landlord further agrees that Tenant shall have 24-hour a day facilities for ingress and egress to the rear of the demised premises and the exclusive right to such spaces as may be reasonably needed by Tenant for refuse disposal and for loading and unloading merchandise for its store into and from trucks and trailers at such service entrances.

UTILITIES

10.    Tenant agrees to pay all charges for telephone, electricity, water, gas and other utilities and services used by Tenant at the demised premises, and Landlord agrees at all times to provide Tenant with access to such utilities. Tenant shall not be responsible for any charges for the fire alarm system, static or flowing water to supply the fire sprinkler system, or any "hook up" fees or other charges incident to providing access to any utility

TENANT'S
REPAIRS

11.    Upon completion of construction by Landlord and acceptance of the demised premises by Tenant, Tenant agrees to keep the interior of the demised premises in good condition and repair, excepting structural repairs and all repairs which are the responsibility of Landlord or which are made necessary by reason of fire or the elements or other casualty covered by Landlord's fire and extended coverage insurance, and excepting reasonable wear and tear.

Tenant agrees to be responsible for the maintenance and repair of the following. Windows and plate glass, except that covered by Landlord's fire and extended coverage insurance, automatic doors,

5

sprinkler system, sprinkler system heads, (including central alarm system therefore, if required by governmental authority, interior exposed plumbing, plumbing fixtures, non-structural plumbing blockages (from, but not including, the water meter and point of discharge into the sewer main), interior painting, interior wiring (from the various outlets in the store to and including the main panel), air conditioning and heating systems, interior wiring from weatherhead and floor surfacing. Landlord shall accord to Tenant the benefit of any warranties extended by the manufacturers or installers of such equipment

**LANDLORD'S**
**REPAIRS**

**12.**    Landlord shall, at its cost and expense, keep and maintain, in good condition and repair, the common areas, the exterior of Tenant's store building, including the roof, gutter, downspouts, exterior painting, masonry walls, foundation and structural members, the exterior and concealed plumbing (including septic tank, if any), other than Tenant's responsibility, wiring, other than Tenant's responsibility, of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises If any portion of the common areas (as defined in Article 3 hereof) or any portion of the store building, which is the responsibility of Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so, except that Landlord shall not be obligated to make or pay for any repairs to Tenant's store building rendered necessary by the fault, act or negligence of Tenant, or any of its servants, agents or employees, except in the case of damage by fire or the elements, or other casualty covered by Landlord's fire and extended coverage insurance

If in order to protect persons or property it shall be necessary to make emergency repairs which are the responsibility of Landlord, or if Landlord after receipt of notice as above provided fails or neglects to make with all due diligence such other repairs to the store building or common areas, as defined in Article 3 hereof, which are the responsibility of Landlord, Tenant shall have the right to make such repairs and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse Tenant for the money expended or expense incurred by it in making such repairs Landlord further covenants that the store building will be so constructed and maintained at all times so as to structurally comply with and conform to the requirements prescribed by any and all ordinances, statutes, rules or regulations of municipal or other governmental authority relating to public health and sanitation or safety, and that Landlord will promptly make any changes or alterations in the premises which may become necessary in order that the premises may conform to such ordinances, statutes, rules or regulations now in force or which may be hereafter passed, adopted or promulgated.

**SIGNS**

**13.**    Tenant may place, erect and maintain any signs on the roof, walls, and any other places on or about the demised premises, which signs shall remain the property of Tenant and may be removed at any time during the term of this lease, or any extension thereof, provided Tenant shall repair or reimburse Landlord for the cost of any damage to the demised premises resulting from the installation or removal of such signs

Tenant shall be permitted to affix on the pylon sign for the shopping center an electrically illuminated sign panel advertising its business Landlord shall bear the expense of the provision of electrical power to the pylon area including wiring and controls to serve the main pylon, but the installation of the sign panels advertising Tenant's business shall be at Tenant's expense provided Landlord shall supply at the site a source of electrical power which shall also be Landlord's expense

**FIXTURES AND**
**ALTERATIONS**

**14.**    Tenant, at its own expense, shall have the right from time to time during the term of this lease to make any interior or exterior alterations, additions and improvements, including doors and partitions, in and to the demised premises which it may deem necessary or desirable and which do not adversely affect the structural integrity thereof, but it shall make them in a good, workmanlike manner and in accordance with all valid requirements of municipal or other governmental authorities. This right of Tenant shall include the erection of interior partitions and the installation of additional front and rear doors. All permanent structural improvements shall belong to Landlord and become a part of the premises upon termination or expiration of this lease.

Tenant may construct and build or install in the premises any and all racks, counters, shelves and other fixtures and equipment of every kind and nature as may be necessary or desirable in Tenant's business, which racks, counters, shelves and other fixtures and equipment shall at all times be and remain the property of Tenant, and Tenant shall have the right to remove all or any part of the same from said premises at any time, provided, Tenant shall repair or reimburse Landlord for the cost of repairing any damage to the premises resulting from the installation or removal of such items

## INDEMNIFICATION

15.     Tenant agrees to indemnify and save harmless Landlord from any claim or loss by reason of an accident or damage to any person or property happening in the demised premises  Likewise, Landlord shall indemnify and save harmless Tenant from any claim or loss (including costs of investigation, court costs and reasonable attorney's fees) by reason of an accident or damage to any person or property happening on or about all common areas (as defined in Article 3 hereof) of the shopping center, and Landlord further agrees to carry, at its expense, comprehensive general liability insurance coverage with Tenant named as an additional insured on all common areas (as defined in Article 3 hereof) of the shopping center, in a company qualified to transact business in the state where the premises are located, stipulating limits of liability of not less than $2,000,000.00  Certificate of such coverage from the insurer providing 30 days' notice to Tenant prior to cancellation or termination shall be furnished to Tenant

During the term of this lease and any extensions thereof  Tenant agrees to pay to Landlord as additional rental the amount of the premiums for Landlord's comprehensive general liability insurance allocable to the demised premises  If such premiums shall not be billed separately upon Tenant's demised store premises the same shall be fairly apportioned to determine Tenant's share thereof  Such apportionment shall be made in the ratio which the square footage of the ground floor of Tenant's store building bears to the total square footage of the ground floor of all buildings from time to time existing in the shopping center  The amount of premiums for which Tenant is to reimburse Landlord shall be less any available abatements, discounts or refunds thereon  Landlord shall at all times use its earnest and best efforts to obtain such fire and extended coverage insurance at the most reasonable rates available  Tenant shall be entitled to receive from the Landlord copies of the statements for such insurance premiums  Notwithstanding the above, it is agreed that Tenant's obligations to make the payments herein described is expressly conditioned upon receipt from Landlord of the written invoice for such insurance premiums no later than one (1) year after the due date thereof.  Further, Tenant shall not be required to make the payments herein described unless and until Tenant is furnished with photocopies of the applicable insurance policy to include the declaration page.

## CLEANLINESS

16.     Tenant shall at all times keep the interior of the store building in a reasonably neat and orderly condition and shall keep the delivery areas of the building reasonably clean and free from rubbish and dirt.  Tenant will not make or suffer any waste of the demised premises or permit anything to be done in or upon the demised premises creating a nuisance thereon, and Tenant further agrees to permit Landlord or its agent at all reasonable times to enter upon the premises for the purpose of making repairs and for examining or showing the same to prospective purchasers.

## FIRE

17.     In the event that Tenant's demised premises shall be totally destroyed or damaged to the extent of 75% or more of the value thereof by fire or other casualty, then Tenant may elect within thirty (30) days after such damage, to terminate this lease by giving to Landlord a written notice of termination, and thereupon both parties shall stand released of and from all further liability under this lease.  If Tenant's demised premises shall thereby suffer damage to any extent less than 75% of the value thereof, or if Tenant does not elect to terminate as aforesaid, then Landlord agrees to proceed promptly and without expense to Tenant to repair the damage or restore the improvements, remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated or restored  If at any time during the term of this lease or any extensions thereof any of the buildings in the shopping center, exclusive of Tenant's demised premises, are damaged by fire or by the elements or otherwise, Landlord shall immediately commence and diligently prosecute to completion repair of all such damage and shall restore said improvements to their condition prior to such damage.

Landlord shall carry fire and extended coverage insurance on Tenant's demised premises and any additions, alterations and improvements made thereto by Landlord or Tenant and on all other buildings within the shopping center in the amount of full insurable value thereof, above foundation walls, and hereby expressly waives any and all claims against Tenant for loss or damage due to fire, explosion,

7

windstorm or other casualty covered by such insurance, regardless of the cause of such damage, including without limitation, damage resulting from the negligence of Tenant, its agents, servants or employees

During the term of this lease and any extensions thereof Tenant agrees to pay to Landlord as additional rental the amount of the premiums for Landlord's fire and extended coverage insurance allocable to the demised premises. If such premiums shall not be billed separately upon Tenant's demised store premises the same shall be fairly apportioned to determine Tenant's share thereof  Such apportionment shall be made in the ratio which the square footage of the ground floor of Tenant's store building bears to the total square footage of the ground floor of all buildings from time to time existing in the shopping center. The amount of premiums for which Tenant is to reimburse Landlord shall be less any available abatements, discounts or refunds thereon  Landlord shall at all times use its earnest and best efforts to obtain such fire and extended coverage insurance at the most reasonable rates available. Tenant shall be entitled to receive from the Landlord copies of the statements for such insurance premiums Notwithstanding the above, it is agreed that Tenant's obligations to make the payments herein described is expressly conditioned upon receipt from Landlord of the written invoice for such insurance premiums no later than one (1) year after the due date thereof  Further, Tenant shall not be required to make the payments herein described unless and until Tenant is furnished with photocopies of the applicable insurance policy to include the declaration page

## QUIET ENJOYMENT

18.     Landlord covenants, warrants and represents that upon commencement of the lease term, the shopping center, including the demised premises, will be free and clear of all liens and encumbrances superior to the leasehold hereby created; that Landlord has full right and power to execute and perform this lease and to grant the estate demised herein, and that Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of this lease and any extensions thereof.

Landlord warrants the non-existence of any zoning or other restriction preventing or restricting use of the demised premises for the conduct of a mercantile, retail or service business or use of common areas for parking purposes, and that should such zoning or other restriction be in effect or adopted at any time during the term of this lease, preventing or restricting Tenant from conducting a mercantile, retail or service business or using the common areas (as defined in Article 3 hereof) in conjunction therewith, Tenant at its option may terminate this lease and shall stand released of and from all further liability hereunder.

## TAXES AND LIENS

19.     All taxes, assessments and charges on land or improvements and obligations secured by mortgage or other lien upon the demised premises or the shopping center shall be promptly paid by Landlord prior to delinquency.  Tenant may perform, acquire or satisfy any lien, encumbrance, agreement or obligation of Landlord which may threaten its enjoyment of the demised premises, and if it does so it shall be subrogated to all rights of the obligee against Landlord or the demised premises or both and shall be reimbursed by Landlord for resulting expenses and disbursements, together with interest thereon at the maximum rate allowed by law.

## CONDEMNATION

20.     If any part of the demised premises or more than twenty percent (20%) of the buildings, exclusive of Tenant's building, within the shopping center, be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to Tenant. In the event Tenant does not elect to terminate this lease, Landlord shall immediately commence and diligently prosecute to completion the repair and restoration of the improvements, including Tenant's store building, within the shopping center to a condition comparable to their condition at the time of taking and the lease shall continue, but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances

In the event that any portion of the common areas (including parking area and access thereto) designated as such on Exhibit "A", be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, so as to materially or substantially interfere

8

with the conduct of Tenant's business in the demised premises, or so as to reduce the required parking area by an amount in excess of ten percent (10%) or reduce the number of cars which may be conveniently parked to less than 356, Tenant may, at its option, terminate this lease and shall be liable for rent only up to the time of such taking

## DEFAULT

21.    In the event Tenant should fail to pay any of the monthly installments of rent reserved herein for a period of more than ten (10) days after the same shall become due and payable, or if Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after Tenant shall have received written notice by certified or registered mail at its office address hereinafter designated, from Landlord to pay such rent or to cure such violation or failure, then, in any such event, Landlord, at its option, may either (a) terminate this lease or (b) re-enter the demised premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the premises at the best possible rent obtainable, making reasonable efforts therefor and receive the rent therefrom, but Tenant shall remain liable for the deficiency, if any, between Tenant's rent hereunder and the price obtained by Landlord on reletting. However, a default (except as to payment of rentals) shall be deemed cured if Tenant in good faith commences performance requisite to cure same within thirty (30) days after receipt of notice and thereafter continuously and with reasonable diligence proceeds to complete the performance required to cure such default

## BANKRUPTCY

22.    Tenant further covenants and agrees that if, at any time, Tenant is adjudged bankrupt or insolvent under the laws of the United States or of any state, or makes a general assignment for the benefit of creditors, or if a receiver of all the property of Tenant is appointed and shall not be discharged within ninety (90) days after such appointment, then Landlord may, at its option, declare the term of this lease agreement at an end and shall forthwith be entitled to immediate possession of the said premises

## CONSTRUCTION
RISKS

23.    Nothing herein contained shall constitute Landlord as the agent in any sense of Tenant in constructing said improvements, and that Tenant shall have no control or authority over the construction of said improvements, beyond the right to reject the tender of Tenant's store building for the causes herein stated and to request change orders to be paid by Tenant. Tenant shall not in any manner be answerable or accountable for any loss or damage arising from the negligence or the carelessness of Landlord or Landlord's contractor or of any of their sub-contractors, employees, agents or servants by reason of Landlord's constructing the improvements pursuant to the terms of this lease  Landlord shall indemnify Tenant and save Tenant harmless from and against all mechanics', materialmen's, sub-contractors' and similar liens, all claims and suits for damage to persons or property from defects in material or from the use of unskilled labor, or from any negligence caused by Landlord, Landlord's contractors, sub-contractors or by any of their employees, agents or servants during the progress of the work in constructing the improvements or from any faulty construction thereof

## NOTICES

24.    All notices required to be given to Landlord hereunder shall be sent by registered or certified mail or delivery service with receipt to, and all rent payments shall be made to Landlord at·

        c/o W.R. Martin Corporation
        P O  Box 8557
        Greenville, SC 29604

or such other address as Landlord may direct from time to time by written notice forwarded to Tenant by registered or certified mail or delivery service with receipt.

All notices required to be given to Tenant shall be sent by registered or certified mail to Tenant at.

        P O. Box 1088
        Greenville, SC 29602
        Attention.  Real Estate Manager

or to such other address as Tenant may direct from time to time by written notice forwarded to Landlord by registered or certified mail or delivery service with receipt

**END OF
TENANCY**

**25.** Tenant will yield up the demised premises and all additions thereto (except signs, equipment and trade fixtures installed by Tenant at its expense) at the termination of the tenancy in as good and tenantable condition as the same are at the beginning of Tenant's occupancy, reasonable wear and tear, damage by fire and other casualties and condemnation appropriation by eminent domain excepted, and also excepting any damage, disrepair and other condition that Landlord is obligated hereunder to repair or correct. It is understood, however, that Tenant shall not be required to restore the demised premises to their original state  Any holding over by Tenant of the demised premises after the expiration of the term of this lease, or any extensions thereof, shall operate and be construed as a tenancy from month to month only at the same rentals reserved herein and upon the same terms and conditions as contained in this lease

**ASSIGNMENT AND
SUBLEASING**

**26.** Tenant may without the consent of Landlord assign this lease, or sublease or vacate the demised premises in whole or in part, provided Tenant herein shall continue to remain liable and responsible for the payment of rentals and due performance of all other terms, covenants and conditions of this lease

In the event Tenant shall vacate the entire demised premises or cease selling merchandise therein for in excess of a period of six (6) months, while the demised premises are usable for the operation of a general mercantile business (excluding temporary cessation of business caused by happenings beyond the control of Tenant), Landlord shall have the continuing option thereafter (unless Tenant shall have reoccupied the premises) to terminate and cancel this Lease upon fifteen (15) day's written notice to Tenant of its election so to do

**EXTENSIONS**

**27.** It is further agreed that Tenant, at its option, shall be entitled to the privilege of five (5) successive extensions of this lease, each extension to be for a period of five (5) years and at the same rentals and upon the same terms and conditions as required herein for the initial term.

Such option privilege may be exercised by Tenant giving to Landlord a notice in writing at least six (6) months before the expiration of the initial term, and if extended, at least six (6) months before the expiration of such extended term, stating the intention of Tenant to exercise such option and the period for which such option is exercised and thereupon this lease shall be so extended without the execution of any other or further document

**EXCLUSIVE
SUPERMARKET**

**28.** Landlord covenants and agrees that Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof.  Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1,000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of Tenant, and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of Tenant, except the sale of such items in not to exceed the lesser of 500 square feet of sales area or 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business, and except the sale by a restaurant operation of prepared, ready-to-eat food items, for consumption either on or off the premises, shall not be deemed a violation hereof  With the exception of package stores, only Tenant may sell beer and wine in the shopping center for off-premises consumption.  Only Tenant may operate a bakery, delicatessen or similar department in the shopping center. **Tenant shall have a non-exclusive right to operate a pharmacy.**

In the event the demised premises are at any time subject to a first mortgage (provided Tenant has been notified in writing of the name and address of the holder thereof) and so long as said mortgage shall encumber the demised premises, and notwithstanding any provisions herein to the contrary, Tenant shall have no right to cancel or terminate this lease or to withhold rental payments because of a violation of the terms of this exclusive provision as to property located within 1000 feet of any exterior boundary of the shopping center, but nothing herein shall deprive Tenant of any rights or recourse against Landlord, its successors and assigns, by way of suit for damages or injunctive relief, or as otherwise provided by law, in the event of any such violation  If the holder of such first mortgage should succeed to ownership of the demised premises by virtue of foreclosure or transfer of title thereto in lieu of such foreclosure or otherwise, in such event the terms of this exclusive provision shall apply to the holder of such first mortgage as owner-landlord only with respect to the land which was formerly encumbered by the lien of said first mortgage.  For the purposes hereof, the term "first mortgage" shall include any first security instrument.

**SUBORDINATE**

29.    Tenant agrees that this lease shall at all times be subject and subordinate to the lien of any mortgage (which term shall include all security instruments) that may be placed on the demised premises by Landlord, and Tenant agrees, upon demand, without cost, to execute any instrument (in a form acceptable to Tenant) as may be required to effectuate such subordination, provided, however, as a condition to this subordination provision, Landlord shall obtain from any such mortgagee an agreement in writing, which shall be delivered to Tenant, providing in substance that, so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy shall not be disturbed, nor shall this lease be affected by any default under such mortgage, and in the event of foreclosure or any enforcement of any such mortgage, the purchaser at such foreclosure sale shall be bound to Tenant for the term of this lease, the rights of Tenant hereunder shall expressly survive, and this lease shall in all respects continue in full force and effect, provided, however, that Tenant fully performs all of its obligations hereunder

**NOTICE TO**
**LENDER**

30.    Tenant agrees that it will give notice to any holder of a first mortgage (which term shall include all security instruments) encumbering the demised premises (provided Tenant has first been notified in writing of the name and address of such mortgage holder) of any defaults of Landlord which would entitle Tenant to terminate this lease or abate the rental payable hereunder, specifying the nature of the default by Landlord, and thereupon the holder of the mortgage shall have the right, but not the obligation, to cure such default and Tenant will not terminate this lease or abate the rental payable hereunder by reason of such default unless and until it has afforded the mortgage holder thirty (30) days, after such notice, to cure such default and a reasonable period of time in addition thereto if circumstances are such that said default cannot reasonably be cured within said 30-day period, provided, however, Tenant shall not be required to deliver such notice to the mortgage holder or to extend to it an opportunity to perform in respect of emergency repairs which Tenant is permitted to make under the provisions of Article 12 of this lease

**COMMON AREA**
**MAINTENANCE**

31.    Landlord hereby agrees to operate and maintain all of the common areas, as herein defined, and to provide therefor all such services as are reasonably required to operate, maintain, insure, and replace such common areas.  The term "common areas" is hereby defined as all areas, equipment, facilities and services of the shopping center made available by Landlord for the benefit or convenience of tenants and their employees, subtenants, customers and invitees in the shopping center, including by way of illustration, but without limitation, those areas as defined in Article 3 hereof, and including landscaping, electrical meter and distribution rooms outside of individual tenant's premises, fencing, lighting facilities illuminating areas outside of individual stores and similar facilities available for the common use of tenants and their employees, subtenants, customers and invitees  Tenant and its employees, agents, contractors and customers shall have the right to use or benefit, in common with other tenants, Landlord and their employees, agents, contractors, customers and invitees the common areas for the purposes for which they are intended and to the extent and in a manner reasonably designated by Landlord and permitted under this Lease, without charge except as hereinafter provided  The common areas shall be under the exclusive control and management of Landlord.  The foregoing is subject to the provisions of Articles 8 and 10 pertaining to Tenant's responsibility for the utility bills for the parking lot lights identified on Exhibit A.

11

For such services of Landlord in operating and maintaining the common areas, Tenant agrees to pay to Landlord as additional rental hereunder and as reimbursement for the actual annual cost thereof, the amount of Tenant's prorata share of Landlord's "calendar year common area operating cost" as hereinafter defined, paying one-fourth (1/4) of Tenant's annual prorata share of such costs quarterly, in arrears, within thirty (30) days of receipt of Landlord's documented quarterly statement for common area maintenance. Tenant's prorata share shall be determined by using its same prorata fraction as defined under Article 37 hereof

The term "calendar year common area operating cost" shall mean all costs and expenses reasonably incurred by Landlord in good faith in the best interest of the shopping center each calendar year for repair, replacement, maintenance and operation of the common areas, including but without limitation, safeguarding, cleaning and sweeping, snow and refuse removal, gardening and landscaping, restriping of the parking lot, filling of potholes, resurfacing and maintenance of parking areas, walkways, sidewalks and the like, maintenance of light fixtures and replacement of bulbs, electric costs, excluding parking lot lighting as provided in Article 8 herein, compensation to personnel carrying out such services directing parking, policing the common areas, or providing safeguarding, rental paid for maintenance machinery, and similar amounts which are not properly chargeable to a capital account under generally accepted accounting principles. Charges for capital repairs, equipment, financing or management fees of any type shall not be included in operating costs. It is understood and agreed that any of these services may be provided by bona fide independent contractors at reasonable rates in the general geographic area of the shopping center. Any expenditures by Landlord in excess of $5,000 00 shall be approved by Tenant, in writing.

Within twenty (20) days after the end of each quarter of each calendar year, or such lesser period as may occur upon commencement or termination of the term of this Lease, Landlord shall furnish Tenant a quarterly statement in reasonable detail of the actual common area operating costs. Each quarterly statement made by Landlord as to the calendar year common area operating costs shall bear the certificate of Landlord's chief accounting officer. Notwithstanding the above, it is agreed that Tenant's obligation to make payments herein described is expressly conditioned upon receipt from landlord of a written quarterly statement for such common area operating costs no later than one year from the date on which the quarter ended

Landlord shall maintain, and Tenant shall have the right to inspect through its designated agents, all receipts, cancelled checks and other records of the payments and other charges reflected in the calendar year common area operating costs in the form of compete and accurate books and records of such costs for not less than one (1) year after it delivers to Tenant the quarterly certificate described above, with the audit to be conducted in a manner not to unreasonably interfere with Landlord's business, with such agent being employed and paid by Tenant.

If Landlord within a reasonable time after receipt of written notice from Tenant to do so shall fail to make the repairs or perform the services described in this Article, Tenant shall have the right to make such repairs or cause such services to be performed on Landlord's behalf and to deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse Tenant for the money expended or expense incurred therein. The cost hereunder in which Tenant is to participate shall cover only the providing of the physical services described and shall expressly not include any management fees or any capital expenditures.

**BENEFIT**

32.    This Lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

**TRANSFER BY**
**LANDLORD**

33.    In the event Landlord transfers Landlord's interest in this lease, Landlord agrees to promptly provide Tenant with documentary evidence, satisfactory to Tenant, of such transfer of Landlord's interest in this lease.

**SHORT FORM**
**LEASE**

    **34.**    Landlord agrees that any time on request of Tenant it will execute a short form of this lease in form permitting its recording.

**MARGINAL**
**TITLES**

    **35.**    The marginal titles appearing in this lease are for reference only and shall not be considered a part of this lease or in any way to modify, amend or affect the provisions thereof.

**COMPLETE**
**AGREEMENT**

    **36.**    This written Lease contains the complete agreement of the parties with reference to the leasing of the demised premises, except plans and specifications for Tenant's store and related improvements to be formally approved by the parties prior to the effective date of this lease. No waiver of any breach of covenant herein shall be construed as a waiver of the covenant itself or any subsequent breach thereof.

**REAL ESTATE**
**TAXES**

    **37.**    During the term of this Lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of the ad valorem real estate taxes levied against the demised premises. Tenant shall be responsible only for its prorata share of such taxes for fractional years occurring at the expiration of the term of this Lease and any extensions thereof. Tenant will pay Landlord for Tenant's prorata share of the ad valorem taxes within thirty (30) days of receipt of an invoice from landlord.

    If such taxes shall not be assessed separately, but shall be included within an assessment of the demised premises and others, said assessments shall be fairly apportioned to determine Tenant's share thereof. Such apportionment shall be made in the ratio which the square footage of Tenant's store building bears to the total square footage of all store buildings (including additional floor levels) from time to time existing in the shopping center. The amount of taxes attributable to the shopping center, and for which Tenant is to reimburse Landlord in part, shall be less any abatements, discounts (whether or not taken) or refunds thereon   Landlord agrees to exhibit to Tenant the paid tax statements as evidence of the basis upon which any increase in taxes is chargeable to Tenant and such additional rental shall be payable to Tenant on demand after payment by Landlord   All taxes, other than ad valorem real estate taxes, including special assessments, improvement liens and the like shall remain the sole responsibility of Landlord   However, Tenant shall remain responsible for sales taxes on rentals levied by law on leases

    Tenant shall have the right from time to time, provided Landlord has failed to do so and provided that Tenant has first given notice to Landlord, to contest or protest or review by legal proceedings or in such other manner as may be provided, any such taxes, assessments or other governmental impositions aforementioned, and to institute such proceedings in the name of Landlord as Tenant may deem necessary; provided, however, any expense incurred by Tenant's exercise of its right to contest or protest shall be borne by Tenant.  If Landlord shall contest or protest with Tenant's consent, Tenant shall pay its prorata share (as determined by its square footage in the shopping center) of any reasonable expense incurred

    Notwithstanding the above, it is agreed that Tenant's obligation to make the payments herein described is expressly conditioned upon receipt from Landlord of a written statement for such ad valorem real estate taxes (as well as the other documents described herein if requested by Tenant) no later than one year from the date on which the taxes were due.

**HAZARDOUS**
**SUBSTANCES**

    **38.**    Tenant shall indemnify and hold Landlord harmless from any and all claims, actions, judgments, criminal penalties and rulings of regulatory agencies in anywise resulting out of Tenant's having stored, used or sold hazardous substances (as the same are defined by federal and state statutes and regulation of governmental agencies having jurisdiction over the same) in the demised premises

    Similarly, Landlord shall indemnify and hold Tenant harmless from any and all claims, actions, judgments, criminal penalties and rulings of regulatory agencies in anywise resulting out of the fact that

the shopping center and/or the demised premises were erected on ground that was or is polluted with hazardous substances as the same are defined by federal and state statutes and regulation of governmental agencies having jurisdiction over the same

**EXPANSION**
**OPTION**

39.    Tenant is hereby granted the option and privilege at any time during the term of this lease, or any extensions thereof, of enlarging its store building by incorporating therein the area to the northwesterly side thereof, such addition not to exceed Sixty (60) feet in width by One Hundred Seventy-Five (175') in depth  This option may be exercised only at such times as the adjoining storerooms may be vacant, at the end of the tenth (10th) year of the initial term of this lease or at five (5) year intervals thereafter, it being contemplated that Landlord shall not lease such area to other tenants for an initial term of ten (10) years nor in excess of five (5) years thereafter, and that Tenant shall have the expansion privilege herein described no later than ten (10) years from the commencement date hereof and at five (5) year intervals thereafter  Landlord shall give notice to Tenant of any such expiration date and, during the period between six (6) months and three (3) months prior to such expiration date, afford to Tenant the opportunity to exercise this option, and upon Tenant giving to Landlord a notice in writing of its exercise thereof, Landlord agrees to construct such addition, or prepare such enlargement area for occupancy by Tenant, in accordance with plans and specifications to be approved by the parties hereto, with the construction to be completed with all due diligence following the vacation of the necessary area by any other tenant, and the enlarged portion of the building to be of a like quality of construction as the original building for Tenant

In order to facilitate the expansion of Tenant's demises store building as herein contemplated, Landlord agrees that any adjacent building or buildings within the expansion area shall be of like structural quality and in architectural harmony with Tenant's store building, shall front on a line which is the interior sidewalk line of Tenant's demised store building extended and shall have a finish floor level, roof and ceiling heights which shall be at the same elevations as the finish floor level, roof and ceiling heights of Tenant's demised store building.  Further, Landlord agrees that the wall of Tenant's demised store building adjoining the expansion area shall be constructed with steel column supports therein equivalently spaced to the nearest row of steel column supports within the open area of Tenant's demised store building and such wall supports shall be of sufficient load bearing capacity to carry the roof support system across the full span of the original and of the expanded building width

If, at the date of completion of any such building addition, fewer than ten (10) years of the term of this Lease remain, the term of this Lease shall be extended for the period of time necessary to provide a full ten (10) years from that date.  Thereafter, for the balance of the term, including extensions, the annual minimum guaranteed rental (and the base for computation of percentage rental) shall be increased by the greater of·  an amount equal to twelve percent (12%) of the cost of the addition, or an amount equal to $7 25 per square foot of the enlarged area, or an amount equal to a computed percentage multiplied by the cost of such addition, such percentage being equal to four percent (4%) plus the current prime interest rate (as published by the Federal Reserve or in the Wall Street Journal or similar public source) at the time of the exercise of the option  At Tenant's request, the construction cost shall be established by bids obtained by Landlord from at least three (3) reputable contractors reasonably acceptable by Tenant.  The final cost of the addition upon completion shall be certified by the general contractor performing the work.  If the term of this Lease is extended to provide a full ten (10) year term, the provisions of the Lease shall remain in effect, and the option periods, if any, shall follow upon the end of the extended term.  Upon completion, the addition shall be a part of the demised premises, and all references to the demised premises contained in this Lease shall be construed to include both Tenant's store building and the addition.

Causing any addition to be constructed is the sole obligation of Landlord, its heirs, legal representatives, successors and assigns.  However, nothing contained in this Lease shall constitute any express or implied obligation on the part of the holer of a first mortgage encumbering the fee simple title to the demised premises, or on the part of any purchaser at a sale under foreclosure of that mortgage, to comply with the terms and provisions of this Article 39.  Additionally, Landlord's obligation shall not limit Tenant's right to undertake and complete the addition at its own cost, as described later in this Article 39.

If Landlord, for any reason, fails or refuses to construct the building addition contemplated after Tenant has properly exercised its option, Tenant, as its sole remedy against Landlord and at its option,

14

and at its own expense, shall have the right to construct the building addition of the size and quality set forth above  If Tenant constructs the addition, Tenant agrees to cause any mechanics' liens incurred by and in connection with such addition to be promptly discharged, Tenant further agrees to indemnify and hold Landlord harmless from any expense occasioned by mechanics' liens  If, upon completion and occupancy of a building addition by Tenant, fewer than ten (10) years of the term of this Lease remain, the lease term shall be extended for a period of time necessary to provide a full ten (10) year term  For ten (10) years following the date of completion of the addition, the base for calculation of percentage rental, if any, shall be increased by an amount equal to the greatest of the three (3) factors set forth in the second paragraph of this Article 39.  Upon expiration of ten (10) years following the date of completion of the addition, the base for calculation of percentage rental shall revert to the minimum annual guaranteed rental established in Article 1 of this Lease

Regardless of which party constructs Tenant's addition, the size of the premises as expanded shall be used to calculate Tenant's prorata share of real estate taxes, insurance premiums and common area maintenance charges

Landlord shall assist Tenant in obtaining applicable zoning and other governmental permits for the construction as contemplated hereunder, whether performed by Landlord or Tenant  The construction costs hereunder shall include the cost of charges to the common areas necessary to accommodate the expansion, Landlord's consent to which is not to be unreasonably withheld, and the cost of acquiring or improving additional parking area within the shopping center or within adjacent lands if necessary to accommodate the expansion.  Landlord shall, to the extent possible, reserve utilities or other approvals or capacity necessary to accommodate the expansion

**IN WITNESS WHEREOF,** Landlord and Tenant have executed this agreement the day and year first above written

Signed, sealed and delivered
in the presence of

**FOOTHILLS PARTNERSHIP,**
a South Carolina General Partnership

By. _William R. Martin_
_____          _____
Witness                          William R. Martin, Managing Partner

_____
As to Landlord                              **LANDLORD**

**WINN-DIXIE GREENVILLE, INC.**

_Cynthia N Crossland_            By. _____
_____            Its                              Vice      President
Witness

_____            Attest: _____
As to Tenant                     Its                                      Secretary

                                      (CORPORATE SEAL)

                                            **TENANT**

15

STATE OF *South Carolina*

COUNTY OF *Greenville*

Personally appeared before me _Noella Robinson_, who being duly sworn says

that s/he saw WILLIAM R. MARTIN, Managing General Partner of FOOTHILLS PARTNERSHIP, a

South Carolina General Partnership, sign, seal, and as his act and deed, deliver the foregoing instrument

and that _Noella Robinson_ with _Dorinne Gray_ witnessed the

execution and delivery thereof as the act and deed of the said FOOTHILLS PARTNERSHIP, a South

Carolina General Partnership.

_Noella Robinson_

Sworn to and subscribed before me this
_13_ day of _July_ , 1994.

_Baie M. Ostee_
Notary Public
My Commission Expires: _2/10/97_          (NOTARIAL SEAL)


STATE OF FLORIDA

COUNTY OF DUVAL

Personally appeared before me _Cynthia N Crossland_ who, being duly sworn, says that

s/he saw the corporate seal of WINN-DIXIE GREENVILLE, INC., a Florida corporation, affixed to the

foregoing instrument, and that s/he saw _James Kufeldt_ , _Vice_ , President and

_Wayne E. Ripley, Jr._ , _____ Secretary of WINN-DIXIE GREENVILLE, INC., both

personally known to deponent to be such officers of such corporation, respectively sign and attest this

instrument and deliver same for and on behalf of such corporation, and the deponent, with _____

_Sally Reece_ witnessed the execution and delivery thereof as the act and deed of WINN-DIXIE

GREENVILLE., INC.

_Cynthia N Crossland_

Sworn to and subscribed before me this
_18th_ day of _July_ , 1994.

_Sally Reece_
Notary Public
My Commission Expires.

(NOTARIAL SEAL)

SALLY REECE
MY COMMISSION # CC 291299
EXPIRES  July 10, 1997
Bonded Thru Notary Public Underwriters

16

EXHIBIT "A"

PLOT PLANS

EXHIBIT "A"

EXHIBIT "B"

LEGAL DESCRIPTION

Those certain pieces, parcels or tracts of land situate, lying and being in West Union, Oconee County, South Carolina, more particularly described as follows.

PARCEL A — BEGINNING at an iron pin along S. C. Highway 11 R/W adjoining property now or formerly owned by Wickliffe, go South 39° 34' West 16.71 feet; South 35° 52' West for 181.14 feet; South 32° 28' West for 182.54 feet; South 28° 31' West for 195.57 feet; South 24° 48' West for 70.32 feet; South 72° 43' West for 132.61 feet; North 58° 10' West for 337.97 feet; North 53° 50' West for 136.25 feet; North 39° 04' East for 55.01 feet; North 45° 11' West for 312.49 feet; South 52° 09' West for 54.87 feet; North 38° 34' West for 107.33 feet; North 42° 13' East for 777.93 feet; South 48° 40' East for 846.78 feet to point of origin, more particularly shown on survey by Freeland & Associates, Engineers, Land Surveyors, Greenville, S. C., dated March 13, 1986.

AND

PARCEL B — Lots 9 and 10 of DUTCH FORK SUBDIVISION, plat of which is recorded in the records of Oconee County in Plat Book P-40 at page 67.

EXHIBIT "B"

COPY

Recorded this 4 day of August A.D., 19 _
Vol. 989 Page 52 and certified
Sallie C. Smith C.C.C.P.G.
Oconee County, S.C.

## FIRST AMENDMENT TO LEASE

THIS FIRST AMENDMENT OF LEASE, made this July 20 , 1998, by and between **FOOTHILLS PARTNERSHIP,** a South Carolina general partnership ("Landlord") and **WINN-DIXIE CHARLOTTE, INC.,** a Florida corporation, **as successor by merger of WINN-DIXIE GREENVILLE, INC.,** ("Tenant"), recites and provides as follows.

### RECITALS:

1     By that lease, dated July 18, 1994 , as amended and/or evidenced by Short Form Lease dated July 18, 1994, recorded in Official Records Book 0783, Page 0142, Oconee County, South Carolina, and Side Letter Agreement dated July 12, 1995 (the "Lease"), Tenant leased from Landlord the "demised premises" (as defined in the Lease) located in Oconee County, South Carolina.

2     Landlord and Tenant desire to amend and modify the Lease as hereinafter set forth

### WITNESSETH:

For and in consideration of the sum of Ten and No/100 Dollars ($10 00), the mutual promises and agreements contained in the Lease, and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, Tenant and Landlord agree as follows:

1     The foregoing recitals are true and correct and incorporated here by this reference

2     The site plan depicting the shopping center referenced in Article 1 of the Lease as being attached as Exhibit "A" thereof is hereby deleted and the site plan depicting the shopping center entitled Foothills Shopping Center, prepared by Freeland-Clinkscales & Associates, Inc , dated March 22, 1995, last revised on May 21, 1998 and attached hereto as Exhibit "A-1" (the "Site Plan") is substituted in the place of Exhibit "A". From and after the date hereof, any and all references in the Lease to a site or plot plan shall be deemed to and shall refer to the Site Plan.

3     The commencement date of the above-referenced Lease was fixed at August 3, 1995, and the expiration of the initial term of Twenty (20) years demised therein shall be at midnight on August 2, 2015

4.     The Lease, except as expressly modified and amended by this First Amendment to Lease shall remain in full force and effect and contains the entire agreement between the parties

**IN WITNESS WHEREOF,** Landlord and Tenant have executed this First Amendment to Lease to be executed as of the date and year first above written

Signed, sealed and delivered
in the presence of

Karen Martin
Print name. Karen Martin

Gail M. Osteen
Print name  Gail M. Osteen

FOOTHILLS PARTNERSHIP,
a South Carolina General Partnership

By  William R Martin
WILLIAM R. MARTIN
Its  Managing Partner
Date.       7-10-98

1998 AUG -4  P 1: 51

FILED OCONEE, SC
SALLIE C SMITH
CLERK OF COURT

_Lucy W McCook_
Print name: LUCY W. McCOOK

_Laura L. Andrews_
Print name: LAURA L. ANDREWS

**WINN-DIXIE CHARLOTTE, INC.**

By _James Kufeldt_
James Kufeldt
Its: Vice President
Date: 7-20-98

Attest. _Ronald D. Pet___
Assistant Secretary

STATE OF South Carolina )
COUNTY OF Greenville )

Personally appeared before me _Karen Martin_ (name of first witness) who being first duly sworn, deposed and said that he/she saw the within named FOOTHILLS PARTNERSHIP, a South Carolina General Partner, by William R Martin, its Managing General Partner, sign and, as its act and deed, deliver the within First Amendment to Lease and that he/she with _Daie Osteen_ (name of second witness) witnessed the execution thereof.

_Karen Martin_
(Signature of First Witness)

Sworn to before me this _10_ day of _July_ 199_8_

_Daie M. Osteen_
Notary Public
State and County aforesaid
My commission expires _3/27/07_
(Notarial Seal)

STATE OF FLORIDA )
COUNTY OF DUVAL )

Personally appeared before me   LUCY W. McCOOK   (name of first witness) who being first duly sworn, deposed and said that he/she saw the within named Winn-Dixie Charlotte, Inc , a Florida corporation, by   James Kufeldt   , its Vice President sign and, as its act and deed, deliver the within First Amendment to Lease and that he/she with   LAURA L. ANDREWS   (name of second witness) witnessed the execution thereof

_Lucy W McCook_
(Signature of First Witness)

Sworn to before me this _20_ day of _July_ 199_8_

_Rebecca L. Sawyer_
Notary Public
State and County aforesaid
My commission expires:
(Notarial Seal)
O \TRANSFER\GREENVIL\1098\AMEND SIT

REBECCA L SAWYER    2
My Comm, Exp June 2 2002
Comm No CC 372310



EXHIBIT "A-1"

This Instrument was prepared by
William L. Joel, Attorney-at-Law
whose address is P. O. Box B
Jacksonville, Florida 32203

FILED OCONEE, SC
SALLIE C. SMITH
CLERK OF COURT

1998 AUG -4 P 1: 56

COPY

Recorded this 4 day of August A.D., 19 98 and certified
Vol. 989 Page 48 C.C.C.P.G.S.
Sallie C. Smith
Oconee County, S.C.

(Reserved for Clerk)

## AMENDMENT TO SHORT FORM LEASE

THIS AMENDMENT TO SHORT FORM LEASE, made this July 20 , 1998, by and between **FOOTHILLS PARTNERSHIP,** a South Carolina general partnership ("Landlord") and **WINN-DIXIE CHARLOTTE, INC.,** a Florida corporation, **as successor by merger of WINN-DIXIE GREENVILLE, INC.,** ("Tenant"), recites and provides as follows

### RECITALS:

1        By that lease, dated July 18, 1994 , as amended and/or evidenced by Short Form Lease dated July 18, 1994, recorded in Official Records Book 0783, Page 0142, Oconee County, South Carolina, and Side Letter Agreement dated July 12, 1995 (the "Lease"), Tenant leased from Landlord the "demised premises" (as defined in the Lease) located in Oconee County, South Carolina

2        Landlord and Tenant desire to amend and modify the Lease as hereinafter set forth

### WITNESSETH:

WHEREAS, for and in consideration of the sum of Ten and No/100 Dollars ($10 00), the mutual promises and agreements contained in the Lease, and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, Tenant and Landlord agree as follows.

WHEREAS, the site plan depicting the shopping center referenced in Article 1 of the Lease as being attached as Exhibit "A" thereof is hereby deleted and the site plan depicting  the shopping center entitled Foothills Shopping Center, prepared by Freeland-Clinkscales & Associates, Inc , dated March 22, 1995, last revised on May 21, 1998 and attached hereto as Exhibit "A-1" (the "Site Plan") is substituted in the place of Exhibit "A"  From and after the date hereof, any and all references in the Lease to a site or plot plan shall be deemed to and shall refer to the Site Plan

WHEREAS, the Lease, as modified and amended by this Amendment to Short Form Lease shall remain in full force and effect and contains the entire agreement between the parties

**IN WITNESS WHEREOF,** Landlord and Tenant have executed this Amendment to Short Form Lease to be executed as of the date and year first above written.

Signed, sealed and delivered
in the presence of

Print name: Karen Martin

Print name: Gail M. Osteen

**FOOTHILLS PARTNERSHIP,**
a South Carolina General Partnership

By. _William R Martin_
    WILLIAM R. MARTIN
    Its  Managing Partner
    Date: 7-10-98

Print name: LUCY W. McCOOK

Print name: LAURA L. ANDREWS

**WINN-DIXIE CHARLOTTE, INC.**

By _____
    James Kufeldt
    Its  Vice President
    Date    7-20-98

Attest· _____
    Assistant Secretary

2

STATE OF South Carolina   )
COUNTY OF Greenville   )

Personally appeared before me _Karen Martin_____ (name of first witness) who being first duly sworn, deposed and said that he/she saw the within named FOOTHILLS PARTNERSHIP, a South Carolina General Partner, by William R. Martin, its Managing General Partner, sign and, as its act and deed, deliver the within _Amendment To Short Form Lease_ and that he/she with _Dixie Osteen_____ (name of second witness) witnessed the execution thereof

_Karen Martin_____
(Signature of First Witness)

Sworn to before me this _10_ day of _July_, 199_8_.

_Dixie M. Osteen_____
Notary Public
State and County aforesaid
My commission expires _3/27/07_
(Notarial Seal)


STATE OF FLORIDA   )
COUNTY OF DUVAL   )

Personally appeared before me __LUCY W. McCOOK_____ (name of first witness) who being first duly sworn, deposed and said that he/she saw the within named Winn-Dixie Charlotte, Inc , a Florida corporation, by _James Kufeldt_____, its Vice President sign and, as its act and deed, deliver the within _Amendment To Short Form Lease_ and that he/she with __LAURA L. ANDREWS_ (name of second witness) witnessed the execution thereof.

_Lucy W. McCook_____
(Signature of First Witness)

Sworn to before me this _20_ day of _July_ 199_8_

_Rebecca L. Sawyer_____
Notary Public
State and County aforesaid
My commission expires
(Notarial Seal)

O \TRANSFER\GREENVIL\1098\SFL.AMD

REBECCA L. SAWYER
My Comm Exp June 2, 2002
Comm No CC 372310

3

651.92

8/15/2005

651.92

01                    $651.92

# Deposit Summary

9/21/2005

Summary of Deposits to Bank Carolina 1st  on 08/15/2005

| Chk No | PmtMethod | Rcd From | Memo | Amount |
|--------|-----------|----------|------|--------|
| 008075085 | Check | Winn Dixie Stores | 1st qtr - 2005 partials | 651.92 |
| | | | Deposit Subtotal | 651 92 |
| | | | Less Cash Back | |
| | | | Deposit Total | 651.92 |

**INVOICE**

June 23, 2005

**WINN DIXIE STORE #1098**
Foothills Shopping Center

**TO FEE FOR CAM FOR PERIOD OF January 1, 2005 — March 31, 2005**

Total Cam & Repairs                $3,959.02

**Winn Dixie portion  (39%)**                        **$1,544.02**

Make check payable to:        **Foothills Partnership**
c/o WR Martin Corp
PO Box 3305
Greenville, SC 29602

Signed: _____

**PAYMENT DUE UPON RECEIPT OF INVOICE**



**WOMBLE
CARLYLE
SANDRIDGE
& RICE**

A PROFESSIONAL LIMITED
LIABILITY COMPANY

104 South Main Street, Suite 700
Greenville, SC 29601

Mailing Address
Post Office Box 10208
Greenville, SC 29603-0208
Telephone (864) 255-5400
Fax (864) 255-5440
Web site www.wcsr.com

D Allen Grumbine
Direct Dial (864) 255-5402
Direct Fax (864) 255-5482
E-mail agrumbine@wcsr.com

September 27, 2005

Logan and Company, Inc
546 Valley Road
Upper Montclair, NJ 07043

   Re  *Winn-Dixie Stores, Inc , et al , United States Bankruptcy Court*
      <u>*Middle District of Florida, Jacksonville Division, Case No 05-3817*</u>
      **Proof of Claim**

Dear Sir or Madam

   Please find enclosed for filing Proof of Claim for Foothills Partnership in regard to the above matter

   If you have any questions, please do not hesitate to give me a call

        Sincerely,

        *Lois J Belle*

        Lois J Belle, ALS
        Legal Assistant to D. Allen Grumbine

Enclosure