**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Reorganized Debtors. | ) | Jointly Administered |
| _____ | ) | |

**REORGANIZED DEBTORS' VERIFIED**
**MOTION FOR SUMMARY FINAL JUDGMENT AS TO**
**J. ADRIAN BARROW'S APPLICATION FOR CLAIM CURE**

Winn-Dixie Stores, Inc. and its affiliates ("Winn-Dixie") move the Court, pursuant to Rule 7056, Federal Rules of Bankruptcy Procedure, for the entry of a summary final judgment in their favor and against creditor J. Adrian Barrow ("Barrow") denying Barrow's Application for Claim Cure (Docket Nos. 14553 and 19044).

**Summary of the Motion**

Barrow filed two proofs of claims in Winn-Dixie's Chapter 11 case seeking payment for amounts allegedly due to him under Winn-Dixie's Management Security Plan and Winn-Dixie's Supplemental Retirement Plan. Barrow's claims were allowed by order of this Court in reduced amounts and Barrow received a distribution of Winn-Dixie's new common stock, pursuant to the terms of Winn-Dixie's confirmed plan, in full satisfaction and release of his claims. Despite accepting the new common stock in satisfaction of his claims, Barrow subsequently filed an Application for Claim Cure in which he demanded payment of the disallowed portion

of his claims.  Barrow's demand for additional payments is barred by the *res judicata* effect of Winn-Dixie's confirmed plan and the Court's order reducing Barrow's claims.  Pursuant to Winn-Dixie's confirmed plan, Barrow released his claim for additional payment when he accepted his distribution of New Common Stock. Barrow's demand for payment of the disallowed portion of his claim therefore should be denied.

In support of this Motion, Winn-Dixie states that the pleadings and exhibits on file show that there is no genuine issue as to any material fact and that Winn-Dixie is entitled to summary final judgment as a matter of law.

The grounds upon which this Motion is based and the matters of law to be discussed are as follows:

## Undisputed Material Facts

1.      On February 22, 2005 (the "Petition Date"), Winn-Dixie and twenty-three of its affiliates filed voluntary petitions for reorganization relief under Chapter 11 of the Bankruptcy Code.

2.      Prior to the Petition Date, Winn-Dixie had established and maintained a management security plan ("MSP") which was a non-qualified defined benefit plan that provided retirement and death benefits to participants. Under the terms of the MSP, amounts payable to participants were to be paid exclusively from the general assets of the Debtors, and no participant had any claim, right, security or other interest in any asset of Winn-Dixie.  Therefore, all claims of participants to benefits under the MSP constituted unsecured obligations of Winn-Dixie's estate.

3.     Winn-Dixie also established and maintained prior to the Petition Date a supplemental retirement plan ("SRP") which was an unfunded, unsecured plan, with benefits to be paid from Winn-Dixie's general assets.  Although Winn-Dixie was authorized in its discretion to (and did) establish a trust to hold plan assets, the SRP provided that Winn-Dixie would remain the owner of all trust assets and that such assets would become subject to the claims of creditors in the event Winn-Dixie filed bankruptcy.  Therefore, all claims of participants to the benefits under the SRP also constituted unsecured obligations of Winn-Dixie's estate.

4.     Barrow left Winn-Dixie's employment on January 10, 2004.  At that time, Barrow and Winn-Dixie agreed that Barrow would receive a ten-year distribution under the SRP.

5.     On July 27, 2005, Barrow filed (i) proof of claim number 7339 as a secured claim in the amount of $237,218 for amounts he asserted were due to him under the MSP and (ii) proof of claim number 7349 as a secured claim in the amount of $227,244.34 for amounts he asserts were due to him under the SRP.[1 and 2]

6.     On August 9, 2006, Winn-Dixie filed its Joint Plan of Reorganization, which was subsequently modified and supplemented (the "Plan") (Docket Nos. 10058, 11606 and 11765).

---

[1] Although Barrow classified his claims as "secured", Barrow admitted in his deposition that he did not use that term to mean a debt secured by assets of Winn-Dixie's estate.  By "secured," Barrow was referring to the language in the parties' January 5, 2004 Release (attached to Barrow's MSP an SRP claims) which stated that Barrow's MSP and SRP accounts will be excluded from any business dealings that may "negatively impact" his MSP and SRP accounts.  (Barrow Dep. Tr. p.7, line 17 – p.9, line 13).

[2] Barrow also filed proof of claim numbers 5743 and 5795, which were amended by claim numbers 7349 and 7339, respectively, and subsequently disallowed by the Court's Order Disallowing and Expunging (a) Duplicate Claims and (b) Amended and Superseded Claims as Set Forth in the Debtors' Second Omnibus Claims Objection, entered on January 19, 2006 (Docket No. 5219).

7.     Winn-Dixie served the Plan on all Winn-Dixie creditors affected by the Plan, including Barrow, together with a disclosure statement, a ballot allowing the creditors to vote in favor of or against the Plan, and a notice of the October 13, 2006 confirmation hearing date (Docket No. 10888).

8.     On October 13, 2006, pursuant to Section 1129 of the Bankruptcy Code, the Bankruptcy Court held a hearing to determine whether the Plan should be confirmed.  Approximately 50 creditors filed objections to confirmation.  In a full day hearing, the Bankruptcy Court received evidence, heard argument, and took the objections under consideration.  *Tr. of Confirmation Hr'g* (Docket No. 12834).

9.     Barrow did not appear at the confirmation hearing or object to the confirmation of the Plan.

10.     On November 9, 2006, the Court entered its order confirming the Plan (the "Confirmation Order") (Docket No. 12440).  Barrow neither objected to nor appealed from the Confirmation Order.  The Plan became effective on November 21, 2006 (the "Effective Date").

11.     Pursuant to the Plan, the MSP and SRP were terminated for all purposes as of the Effective Date.  Section 7.9(c) of the Plan provided that (i) benefit accruals under the MSP and SRP, and related trust and individual agreements, ceased as of the Petition Date, (ii) no further benefits are payable under the MSP and SRP, or related trust or individual agreements, and as of October 31, 2006, (iii) to the extent any additional rights, obligations, or claims existed under the MSP or SRP, or related

trust or individual agreements, such rights, obligations, or claims were terminated and deemed rejected as of the Effective Date. *Plan, § 7.9(c), p. 29.*

12.     On October 17, 2006, Winn-Dixie filed its objections to the MSP and SRP claims of Barrow and similarly situated claimants on the grounds that their MSP and SRP claims were overstated (the "Claims Objection") (Docket No. 11953). The Claims Objection sought to reduce the allowed amounts of Barrow's MSP retirement and death benefit claims to $89,234.00 and $59,304.00, respectively. The Claims Objection also sought to reduce the amount of Barrow's allowed SRP claim to $173,244.34 and required that Barrow file any response in opposition by November 6, 2006.

13.     Notice of the Claims Objection was served on Barrow on October 17, 2006, at the address listed on Barrow's proofs of claims (Docket Nos. 12227 and 12229).

14.     Barrow's mailing address had not changed from the address at which the notices were served since February 21, 2005. *Barrow Dep. Tr. p. 5, lines 7-15.* The notices were not returned as undeliverable. *Affidavit of Kathleen M. Logan, para. 8.*[3]

15.     Barrow did not oppose or otherwise respond to the Claims Objection.

16.     A hearing on the Claims Objection was scheduled for November 16, 2006. Barrow was served at the same mailing address with the Notice of Hearing on

---

[3] Attached as Exhibit A is an affidavit Kathleen M. Logan, the president and CEO of Logan & Company, Inc., Winn-Dixie's solicitation and tabulation agent (the "Logan Affidavit").

the Claims Objection on October 17, 2006 (Docket No. 11954).    The notice of hearing was not returned as undeliverable. *Logan Aff., para. 8.* [4]

17.    After a hearing on November 16, 2006, at which Barrow did not appear, the Court entered an order (the "Claims Adjustment Order") (Docket No. 12652) sustaining Winn-Dixie's Claims Objection and allowing Barrow's MSP retirement and death benefit claims in the reduced amounts of $89,234.00 and $59,304.00, respectively.    The Court allowed Barrow's SRP claim in the reduced amount of $173,244.34 (the reduced and allowed MSP and SRP claims are referred to collectively as, the "Allowed Claims").

18.    A copy of the Claims Adjustment Order was served on Barrow on November 28, 2007 (Docket No. 12846). The order was not returned as undeliverable. *Logan Aff., para. 9.*  Barrow did not appeal the Claims Adjustment Order.

19.    Barrow's Allowed Claims are classified under Section 4.3 of the Plan as unsecured Class 15 Retirement Plan Claims.  Pursuant to the Plan, the Holders of Class 15 Retirement Plan Claims received 38.75 shares of New Common Stock for each $1,000 of their allowed claim. [5]  *Plan, § 4.3(i), p. 19.*

---

[4] Although Barrow testified at his deposition that he "could not recall" whether he received the Claims Objection, the Claims Objection and Notice of Hearing were sent to the same address to which the distribution on his claims was sent, and he evidenced no difficulty receiving and liquidating the distribution.

[5] The death benefits element of the MSP is classified under Class 2 MSP Death Benefit Claims.  Upon a participant's death, death benefit claimants are to be paid the entire amount of their Allowed Claim in one lump sum payment.

20.    In December of 2006, Winn-Dixie distributed, and Barrow accepted, 10,174 shares of New Common Stock to Barrow in payment of MSP and SRP claims. *Logan Aff., para. 11-12; Barrow Dep. Tr. p. 15, line 23 – page 19, line 14.*

21.    Pursuant to Section 12.13 of the Plan, the distributions of New Common Stock to Barrow were "in complete satisfaction" of any claim Barrow had against Winn-Dixie. *Plan, § 12.13, p. 43.*

22.    Similarly, pursuant to Section 4.3 of the Plan, which describes the treatment of Class 15 Retirement Plan Claims, including Barrow's Allowed Claims, each holder of a Class 15 claim receives its distribution of New Common Stock "in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim." *Plan, § 4.3, p. 19.*

23.    On January 5, 2007, three months after confirmation of the Plan, and after Barrow accepted New Common Stock in exchange for a release of all claims against Winn-Dixie, Barrow filed his "Application for Claim Cure" (Docket No. 14553) in which he asserted the same claims he asserted in his proof of claim numbers 7339 and 7449, which were reduced and allowed by the Claims Adjustment Order.  On November 21, 2007, Barrow filed his "Follow Up To Filing Application for Claim Cure" (Docket No. 19044) (collectively with Docket No. 14553, the "Application for Additional Payment").  By his Application for Additional Payment, Barrow seeks payment of the disallowed portion of his MSP and SRP claims and an increase in the amount of New Common Stock he is entitled to receive under the Plan notwithstanding the terms of the Claims Adjustment Order and Barrow's release of all claims against Winn-Dixie.

## **Memorandum of Law**

Barrow's Application for Additional Payment should be disallowed because any claims Barrow may have had against Winn-Dixie as of the Effective Date are (i) barred by the *res judicata* effect of the confirmed Plan, (ii) barred by the res judicata effect of the Claims Adjustment Order, and (iii) satisfied and released by reason of Barrow's acceptance and liquidation of New Common Stock distributed to him pursuant to Winn-Dixie's Plan.

**A.     Barrow's Application for Additional Payment is barred by *res judicata* effect of the Plan**

Confirmation of Winn-Dixie's Plan constitutes a final adjudication of all Winn-Dixie's liabilities that arose on or before the confirmation of the Plan.  Because Barrow's Application for Additional Payment asserts pre-confirmation liabilities, the Application for Additional Payment is barred by the *res judicata* effect of the Plan.

In *In re New River Shipyard Inc., 3*55 B.R. 894 (Bankr. S.D. Fla. 2006), a creditor filed an amended claim two months after confirmation of a plan of reorganization.  The Bankruptcy Court disallowed the amended claim, holding that it was barred by *res judicata* because of the confirmation of the debtor's plan:

> A creditor's treatment under a confirmed plan of reorganization creates a contractual relationship between the debtor and the creditor.   The creditor's pre-confirmation claim is subsumed in and replaced by the new contract created by the confirmed plan; "each claimant gets a 'new' claim, based on whatever treatment is accorded to it in the plan itself."  The initial claim filed by the creditor during the pendency of the case is dead, replaced by the new contractual obligation created by the creditor's treatment under the confirmed plan.

The doctrine of *res judicata* in bankruptcy proceedings "not only bars a court from relitigating issues that have been litigated in a cause but also bars a court from litigating issues that may have been litigated. MSM had every opportunity to amend its claim and litigate its entitlement to the new consequential damages it seeks at or before the confirmation hearing. It did not do so, and its attempt to amend its claim two months after confirmation is barred by *res judicata.*

> *Id.* at 912 (citations omitted; emphasis in the original).

In *New River,* the Bankruptcy Court relied on *Holstein v. Brill*, 987 F.2d 1268 (7th Cir. 1993). In *Holstein,* the Seventh Circuit denied a creditor's attempt to amend its claim after confirmation of the debtor's plan of reorganization on the ground that confirmation of the plan constituted a final adjudication, discharging all debts other than as provided in the plan:

Confirmation of the plan of reorganization is … equivalent to final judgment in ordinary civil litigation. … Confirmation automatically discharges all debts other than those provided in the plan, 11 U.S.C. § 1141(d)(1)(A), and "each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself."

And whether or not late-breaking claims affect third parties' entitlements, they assuredly disrupt the orderly process of adjudication. To every thing there is a season, and the season for stating the amount of the debt is before the confirmation.

> *Holstein*, 987 F.2d at 1270 -71.

*Accord In re Hillsborough Holdings Corp.*, 267 B.R. 882, 890 (Bankr. M.D.Fla. 2001) ("Under the Bankruptcy Code, all claims of creditors which arose prior to

confirmation are discharged and the debtor need not pay them, except as provided by the plan.").

In this case, the Court's Confirmation Order incorporates the terms of the Plan relating to the release, discharge and termination of Winn-Dixie's liabilities under the MSP and SRP, and constitutes a final adjudication as to those issues.  The Plan provides that Barrow was to receive 38.75 shares of New Common Stock for each $1,000 of his Allowed Claims.  As discussed more fully in section C below, the Plan also provides at sections 4.3(i) and 12.13 that Barrow's acceptance of New Common Stock was in exchange for Barrow's release of Winn-Dixie's liabilities under the MSP and SRP plans. The Plan further provides at section 7.9(c) that "no further benefits shall be payable [under the MSP and SRP plans] as of October 31, 2006" and that all other MSP and SRP claims "shall be extinguished and terminated in full as of the Effective Date."

Barrow had ample opportunity to object to the confirmation of the Plan, including its release and discharge provisions, but did not do so.  Instead, Barrow accepted Winn-Dixie's distribution of New Common Stock in the amount provided for in the Plan in complete satisfaction of his claims.  Because the Confirmation Order incorporates the Plan's release and discharge terms, the order constitutes a final adjudication as to the amount Barrow is entitled to receive on his Allowed Claims. Barrow, therefore, is barred by *res judicata* from seeking any distribution in excess of that provided in the Plan.  As stated by this Court in its Findings of Fact and Conclusions of Law disallowing a landlord's post-confirmation claim:

Just as the W or L in the score box at a sporting event determines a team's standing, a creditor's standing and rights, unless preserved, are determined by the terms of the confirmed plan.  Thus, the ball game truly is played at the confirmation hearing.  In the instant case, the Claimants essentially forfeited their rights by failing to adequately protect their interests prior to the Plan being confirmed, despite having multiple opportunities to do so.  To hold otherwise would render the terms of the confirmed Plan meaningless and open a Pandora's box, as there would be no finality or resolution, the entire concept behind confirmation of a plan.

*In re Winn-Dixie Stores, Inc. et. al.*, case number 05-3817-JAF (February 8, 2008) (Docket No. 19765).

**B.**     **Barrow's Application for Additional Payment is barred by the *res judicata* effect of the Claims Adjustment Order.**

Barrow's Application for Additional Payment is also barred by the *res judicata* effect of the Claims Adjustment Order.  *See In re Powe*, 278 B.R. 539, 556 (Bankr. S.D.Ala. 2002) ("Orders allowing claims and orders confirming plans should be accorded *res judicata* effect."); *In re U.S. Sav. Assoc., Ltd.*, 236 B.R. 289, 290 (Bankr. M.D.Fla. 1999) ("Movants seek authority to pursue the identical claims that were previously disallowed…Thus, Movants' claims are barred by the doctrine of *res judicata*.").  Barrow did not appeal from the Claims Adjustment Order and is now barred by *res judicata* from doing so.

**C.    Barrow's claims were satisfied and released upon his acceptance of Winn-Dixie's New Common Stock.**

Under Florida law, an accord and satisfaction results when:

> (1) the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement; and (2) there is actual performance in accordance with the new agreement. Compliance with the new agreement discharges the prior obligations.

> *Martinez v. South Bayshore Tower, L.L.L.P.*, 2008 WL 583701, 1 (Fla. 3d DCA Mar. 5, 2008).

Thus, when a debtor pays a creditor in full settlement of an existing dispute, and the creditor accepts such payment, that payment constitutes an accord and satisfaction of the debtor's prior obligations to the creditor. *Id.*  Moreover, "if an offer clearly serves as an accord and satisfaction, and the other party accepts the offer, then he or she is bound to the conditions attached." *Id.*

In this case, Barrow accepted his distribution of New Common Stock in full satisfaction of Winn-Dixie's pre-confirmation debt to Barrow.  There is no issue of material fact that Barrow received and liquidated 10,174 shares of stock from Winn-Dixie.  *See Logan Aff., para. 11-12 and Exhibit 1 thereto; Barrow Dep. Tr. p. 15, line 23 – page 19, line 14.*  Upon accepting his distribution, Barrow was bound by the release and discharge provisions of the Plan.

Pursuant to the confirmed Plan, the distribution of New Common Stock to Barrow in payment of his Allowed Claims was in "full satisfaction, settlement,

release and discharge of and in exchange for such Allowed Claims and for any other Claims against the Debtors arising from the MSP or the SRP." *Plan, § 4.3(i), p. 19.*

In addition, pursuant to Section 12.13 of the Plan (as well as Section 1141(d)(1)(A) of the Bankruptcy Code), Winn-Dixie is now discharged "from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502" and all creditors, including Barrow, are "precluded" from seeking additional amounts. Section 12.13 of the Plan provides:

> [A]ll consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties and … the Debtors, and each of them, shall (i) be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in *Section 502* of the Bankruptcy Code … [and] all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence or other activity of any nature that occurred prior to the Effective Date… .

> *Plan, § 12.13, p. 43.* (emphasis added).

The Plan further provides at section 7.9(c) that "no further benefits shall be payable [under the MSP and SRP plans] as of October 31, 2006" and that all other MSP and SRP claims "shall be extinguished and terminated in full as of the Effective Date."

Barrow's Application for Additional Payment, therefore, should be denied because it is barred by the terms of the confirmed Plan, pursuant to which Barrow received New Common Stock in *full satisfaction* of his claims.   Barrow is expressly precluded by the Plan from asserting any additional amounts.   As stated by the Third District Court of Appeal in *Martinez*:

> [S]trong public policy supports the use of accord and satisfaction. Accord and satisfaction is a convenient and valuable tool for resolving disputes informally without litigation. It would be unjust to allow a party to accept a check as an accord and satisfaction, and then later permit that party to sue under the same rights and obligations that the accord and satisfaction was intended to release. The person cannot "have his cake and eat it too."
>
> *Martinez*, 2008 WL 583701 at 1 (citing *Burke Co. v. Hilton Dev. Co.,* 802 F.Supp. 434 (N.D.Fla. 1992)).

## **Conclusion**

For the forgoing reasons, Winn-Dixie requests the Court to enter summary final judgment against Barrow denying his Application for Additional Payment.

SMITH HULSEY & BUSEY


By    /s/ *Leanne McKnight Prendergast*
     James H. Post
     Leanne McKnight Prendergast

Florida Bar Number 0059544
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
lprendergast@smithhulsey.com

Attorneys for Reorganized Debtors

## **Verification**

STATE OF FLORIDA          )

COUNTY OF DUVAL          )

BEFORE ME, the undersigned authority, personally appeared Jay Frank Castle, Esq. who, being first duly sworn, deposes and says that he is Assistant General Counsel for Winn-Dixie Stores, Inc., and that the facts stated in this motion are true and correct.

_____
Jay Frank Castle, Esq.

The foregoing verification was acknowledged before me, this 24th day of April, 2008, by Jay Frank Castle, Esq., who is known to me.

_____
Notary Public, State of Florida

My Commission Expires:



16

## Certificate of Service

I certify that a copy of the forgoing Motion for Summary Final Judgment as to J. Adrian Barrow's Application for Additional Payment was served by mail to J. Adrian Barrow at Post Office Box. 350423, Jacksonville, Florida 32235, on this 24th day of April, 2008.

_____ */s/Leanne McKnight Prendergast* _____
Attorney

00605113.2

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Reorganized Debtors. | ) | Jointly Administered |
| _____ | ) | |

**AFFIDAVIT OF KATHLEEN M. LOGAN IN
SUPPORT OF REORGANIZED DEBTORS' MOTION
FOR SUMMARY FINAL JUDGMENT AS TO JEFFERY
ADRIAN BARROW'S APPLICATION FOR CLAIM CURE**

STATE OF NEW JERSEY  )

COUNTY OF ESSEX       )

Before me, the undersigned authority, this day personally appeared Kathleen M. Logan, who, being by me first duly sworn, deposes and says:

1.    I am President of Logan & Company, Inc. ("Logan"), located at 546 Valley Road, Upper Montclair, New Jersey, Noticing and Claims Agent for the above-captioned Reorganized Debtors.

2.    I am over the age of 18 years and have personal knowledge of the matters set forth in this affidavit.  I am not a party to this action.

3.    I have reviewed the records of Logan with respect to the matters set forth herein (the "Records").

4.    The Records were made at or near the time of the events recorded.

5.      The Records were made by or from information transmitted by a person with knowledge.

6.      The Records were maintained in the course of Logan's regularly conducted business activity.

7.      It is the regular practice of Logan to prepare and maintain such Records.

8.      On October 17, 2006, I caused a *Notice Of Debtors' Omnibus Objection To, And Motion To Adjust And Confirm Amounts Of, (A) Management Security Plan Claims And (B) Supplemental Retirement Plan Claims, Consistent With Joint Plan Of Reorganization* with a personalized attachment with detail as to proposed adjustment and allowance of **MSP** claim and a *Notice Of Debtors' Omnibus Objection To, And Motion To Adjust And Confirm Amounts Of, (A) Management Security Plan Claims And (B) Supplemental Retirement Plan Claims, Consistent With Joint Plan Of Reorganization* with a personalized attachment with detail as to proposed adjustment and allowance of **SRP** claim, as evidenced at Dockets 12227 and 12229, to be served by first class, postage pre-paid and pre-addressed envelopes on Jeffery A. Barrow at P.O. Box 350423, Jacksonville, FL 32235.  The Notices included notice of the hearing on the objection. The Notices were not returned as undeliverable.

9.      On or about November 22, 2006, I caused a copy of the *Notice of Entry of Order Reducing, Reclassifying, Adjusting or Disallowing, as Applicable, and Confirming Allowed Amounts of, (A) Management Security Plan Claims and (B) Supplemental Retirement Plan Claim*s for holders of allowed **MSP** claims and *Notice*

2

*of Entry of Order Reducing, Reclassifying, Adjusting or Disallowing, as Applicable, and Confirming Allowed Amounts of, (A) Management Security Plan Claims and (B) Supplemental Retirement Plan Claims* for holders of allowed **SRP** claims (the Claims Adjustment Order") as evidenced at Docket 12846, to be served by a first class, postage pre-paid and pre-addressed envelope on Jeffery A. Barrow at P.O. Box 350423, Jacksonville, FL 32235. The Claims Adjustment Order was not returned as undeliverable.

10.    In order to facilitate the distribution process, Logan prepared a Payment Election Form for certain claimants in advance of the distribution, which among other things, is pre-printed with the claimant's name and address and the number of shares to be distributed to the claimant.

11.    On November 20, 2006, I caused a Payment Election Form to be served by a first class, postage pre-paid and pre-addressed envelope on Jeffery A. Barrow at P.O. Box 350423, Jacksonville, FL 32235.   Mr. Barrow's Payment Election Form indicated that he would be receiving a distribution of 10174 shares.

12.    On December 5, 2006, Logan received from Jeffery A. Barrow his completed and executed Payment Election Form, on which he acknowledged his address to be P.O. Box 350423, Jacksonville, FL 32235 and on which he made no changes or interlineations.  A true and correct copy of Jeffery A. Barrow's completed Payment Election Form is attached as Exhibit 1.

Kathleen M. Logan, President of
Logan & Company, Inc.

Sworn to and subscribed before me this
23d day of April, 2008, by Kathleen M.
Logan, who is personally known to me
or who produced as identification.

Name: _____

Notary Public, State of New Jersey                    (seal)

00605806

Patricia C. Mc Coul
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/1/2011

4

**COMPLETE AND RETURN THIS PAGE. USE THIS FORM TO MAKE YOUR ELECTION.**

In order for you to be eligible to receive your distribution of Shares on the initial Distribution Date, you must properly submit this form by **DECEMBER 6, 2006**.

---

**Payment Election Form**

---

Note: You may only make one election. If you have multiple claims, your election must govern all of your Class 15 and Class 16 claims.

☐ **Check here to elect Cash Payment Option.**

**OR**

☒ **Check here to elect Cashless Payment Option.**

I have carefully reviewed the enclosed Instructions and other materials (including, if you are electing the Cashless Payment Option, the blue Customer Account Worksheet and Agreement, Form W-9 and Irrevocable Authorization) and the information on this Payment Election Form (including the Election Procedures and Requirements) and agree to the terms and conditions set forth therein and herein.

Signature _____

Date _12/8/06_____

**Provide the following information:***

Name __Jeffery A. Barrow_____

Social Security No. (or TIN) __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____

Street Address __P.O. Box 350423_____

County, City, State and Zip Code __Jacksonville, Fl. 32235__

State of Residence (if different than mailing address) _____

Email Address (if any) __jab.barrow@comcast.__

Facsimile Number (if any) _____

Daytime Telephone Number __904-571-4696_____

I prefer to be notified by (check one): ☐ U.S. mail, ☐ telephone, ☒ email, or ☐ facsimile.

**\*NOTE** (1) If you are an heir, executor, administrator or representative of any holder of a Class 15 or Class 16 Allowed Claim who is incapacitated or deceased, enclose appropriate documentation thereof, which must be acceptable to Winn-Dixie in its reasonable judgment, and provide your contact information in the space above.

(2) If your social security number or TIN is different than that shown below, furnish supplementally with this form a letter explaining why they are different, which explanation must be acceptable to Winn-Dixie.

(3) If the address you provide above is different than the address shown below, you agree that we may use the address you provide for all purposes relating to your claim under the Plan and your payment election, including for the purpose of determining any state and/or local taxes owed by you and, if you elect the Cash Payment Option, for the purpose of delivering evidence of the distribution of your Shares to you.

Creditor No.: 403591
BARROW, JEFFERY A
PO BOX 350423
JACKSONVILLE, FL 32235-0423

Soc. Sec. No.: 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
Claim No.: 7339, 7349
No. of Shares: 10174

L000659  '06DEC 5

Exhibit 1