UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |

## WINN-DIXIE'S TRIAL MEMORANDUM IN OPPOSITION TO PECO PALLETS, INC.'S ADMINISTRATIVE EXPENSE CLAIM

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates, as the Reorganized Debtors (collectively "Winn-Dixie"), submit this memorandum in accordance with the Court's order scheduling trial (Doc. No. 17789) on PECO Pallets, Inc.'s ("PECO") administrative expense claim (Doc. No. 13348).

PECO seeks an administrative claim to compensate PECO for pallets that PECO alleges Winn-Dixie lost during its bankruptcy. PECO's claim for lost pallets is not compensable as an administrative expense claim because Winn-Dixie's alleged breach of contract was a post-petition breach of a pre-petition contract, which is not an administrative expense claim as a matter of law, and Winn-Dixie's alleged loss of pallets conferred no benefit on Winn-Dixie's estate. Even if PECO's claim were compensable as an administrative expense, PECO cannot prove that Winn-Dixie actually lost any of its pallets.

**A.**    **Facts which Winn-Dixie Believes to be Uncontested:**

1.    PECO leases wooden pallets to suppliers and manufacturers which use the pallets to transport their products to distributors of those products. Some of Winn-Dixie's suppliers were parties to lease agreements with PECO which allowed the suppliers to ship their products on PECO's pallets.

2.    PECO's pallets are red, a color unique to PECO among pallets used in Winn-Dixie's business.

3.    On October 22, 2003, Winn-Dixie and PECO entered into an Agreement regarding Winn-Dixie's use of PECO Pallets (the "Pallet Use Agreement"). The agreement requires Winn-Dixie to return PECO's pallets to an authorized PECO pallet depot closest to the Winn-Dixie distribution center which received the pallets.

4.    Winn-Dixie does not pay PECO for the use of PECO's pallets. Winn-Dixie's suppliers (PECO's lessees) compensate PECO for the use of PECO's pallets.

5.    Winn-Dixie's only monetary obligation to PECO in the Pallet Use Agreement is under paragraph 5, which provides that Winn-Dixie will pay PECO $15 for any pallet Winn-Dixie loses or transfers to an unauthorized recipient.

6.    PECO charges Winn-Dixie for pallets that Winn-Dixie loses to transfers to unauthorized recipients to compensate PECO for its loss. PECO keeps

2

records which PECO says show how many pallets vendors send to Winn-Dixie and how many pallets Winn-Dixie in turn delivers to PECO's depots.

7.      PECO's records are based on information the vendors and depots report to PECO through an Internet based system maintained by PECO.

8.      The Pallet Use Agreement provides that PECO may have access to Winn-Dixie's facilities to take inventories of the number of PECO pallets in Winn-Dixie's possession and compare that count to PECO's records as to how many pallets should be at that location.   PECO refers to those inventory comparisons as "audits."

9.      If there are more pallets at the Winn-Dixie location than PECO's records reflect should be there, PECO considers there to be a surplus of pallets.   If there are fewer pallets at the Winn-Dixie location than PECO's records reflect should be there, PECO considers there to be a loss of pallets.

10.     For PECO to determine whether there is a loss of pallets for purposes of requiring Winn-Dixie to pay PECO for lost pallets, PECO's standard operating procedures require PECO to conduct audits at all Winn-Dixie locations where vendors deliver PECO pallets.

11.     The Pallet Use Agreement requires PECO to provide Winn-Dixie with "appropriate documentation" supporting any claim for lost pallets.

12.     On February 21, 2005 (the "Petition Date"), Winn-Dixie and twenty-three of its affiliates filed voluntary petitions for reorganization relief under

Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

13.    In February 2005, PECO went to some, but not all, of Winn-Dixie's distribution centers to conduct pallet audits.

14.    In May 2006, PECO went to all of Winn-Dixie's then open distribution centers to conduct pallet audits.

15.    On August 9, 2006, Winn-Dixie filed its Joint Plan of Reorganization which was subsequently modified and supplemented (the "Plan") (Doc. Nos. 10058, 11606 and 11765).

16.    On November 9, 2006, the Court entered its order confirming the Plan (the "Confirmation Order") (Doc. No. 12440). The Plan became effective on November 21, 2006 (the "Effective Date").

17.    The Pallet Use Agreement is an executory contract which Winn-Dixie rejected as of the Effective Date of the Plan. *See* Plan, § 7.1. PECO has filed no claim for rejection damages.

18.    On December 19, 2006 PECO sent Winn-Dixie an invoice asking Winn-Dixie to pay PECO $572,460 for 38,164 PECO pallets that PECO claims Winn-Dixie lost or transferred to unauthorized recipients from October 22, 2003 through May 2006. PECO based its December 19 invoice on the results of its May 2006 audits of the Winn-Dixie distribution centers.

19.    Prior to December 19, 2006, PECO never shared the results of its February 2005 or May 2006 audits with Winn-Dixie.

4

20.    On December 21, 2006, PECO filed an application for payment of an administrative expense in the amount of $828,375.00 Doc. No. 13348) alleging that between February 21, 2005 through *November 21, 2006* (the "Administrative Period"), Winn-Dixie lost or transferred to unauthorized recipients 55,225 pallets.

21.    PECO's claim did not include any documentation establishing its claim for lost pallets, other than the Pallet Use Agreement.

22.    On April 24 and 30, 2008 Winn-Dixie took the deposition of PECO's representative, Brian Marcus, pursuant to Rule 7030(b)(6), Federal Rules of Bankruptcy Procedure.  During the April 24 deposition, Mr. Marcus admitted that the PECO's claim overstated the number of pallets Winn-Dixie lost during the Administrative Period.

23.    According to Mr. Marcus, PECO now claims that Winn-Dixie lost or transferred to unauthorized recipients 18,887 pallets during the Administrative Period and that Winn-Dixie, therefore, owes PECO $283,305.

24.    PECO's claim is based on its *estimation* of the number of pallets that Winn-Dixie lost in the Administrative Period.

25.    The amount of PECO's claim is based solely on *PECO's* loss, rather than any measurable value received by Winn-Dixie.

## B.    Contested Facts:

Winn-Dixie disputes that it lost any of PECO's pallets.

5

**C.**    **Contested Legal Issues:**

Whether PECO is entitled to an administrative expense claim under 11 U.S.C. § 503.

**D.**    **Winn-Dixie's Objection:**

*1.    PECO has the burden.*

PECO has the burden to prove (i) that Winn-Dixie lost PECO pallets during the Administrative Period, (ii) the number of such lost pallets, and (iii) that PECO's resulting loss is entitled to administrative priority:

> It needs no elaborate discussion that the burden of proof is on the party who is claiming the administrative expense.   The presumptive validity accorded to a filed or a properly-scheduled claim by F.R.B.P. 3003 is not applicable to a request for payment of administrative expenses. Thus, *the burden is on the moving party to establish first, that there is a valid claim, and second, whether or not that claim should be charged as a cost of administration under § 503 of the Bankruptcy Code.*
>
> *In re Fulwood Enterprises, Inc.* 149 B.R. 712, 715 (Bankr. M.D. Fla. 1993) (emphasis added; Paskay, J.).

*2.    PECO's loss is not compensable as an administrative expense.*

Pursuant to § 503 of the Bankruptcy Code, only those expenses which are actual and necessary to the administration of the debtor's estate are allowed as an administrative expense.  Section 503 states in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, ... including-
>
> (1)(A) the *actual, necessary* costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

11 U.S.C. § 503(b)(1)(A).

The Eleventh Circuit has held that administrative expenses under § 503 are to "be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors." *Varsity Carpet, Inc. v. Richardson (In re Colortex Indus.)*, 19 F.3d 1371, 1377 (11th Cir. 1994).

Moreover, "there must be an actual, concrete *benefit to the estate* before a claim is allowable as an administrative claim." *Broadcast Corporation of Georgia v. Broadfoot (In re Subscription Television Services of Greater Atlanta)*, 789 F.2d 1530, 1532 (11th Cir. 1986) (citation omitted; emphasis added).[1]

The Eleventh Circuit explained in *Colortex* that the purpose of giving some creditors administrative expense priority is to prevent unjust enrichment of the debtor, *not to compensate the creditor for its loss*:

> [t]he threshold requirement for an administrative expense is that it be actual and necessary to the preservation of the estate; *the benefit must run to the debtor* and be fundamental to the conduct of its

---

[1] In *Alabama Surface Mining Commission v. N.P. Mining, Co., Inc.*, 963 F.2d 1449 (11th Cir. 1992), the Eleventh Circuit recognized "a narrow exception to this benefit requirement for certain regulatory expenses related to the postpetition operation of an estate." *In re Chris-Marine U.S.A., Inc.*, 262 B.R. 126, 130 (Bankr. M.D. Fla. 2001) (Funk, J.). PECO's claim for missing pallets does not "fit the small, novel category of 'regulatory administrative expenses' created by *N.P. Mining*." *Id.*

7

business. *In re Continental Airlines*, 146 B.R. 520, 526
(Bankr.D.Del.1992).  Administrative expense priority
prevents unjust enrichment from this benefit:

> The principal purpose of according
> administrative priority to claims for
> benefit to the estate is to prevent unjust
> enrichment of the debtor's estate, *rather
> than simply to compensate the claimant.*

> *In re Colortex Indus. at 1383*
> (quoting *In re Coal-X "76"*, 60
> B.R. 907, 912 (Bankr. D. Utah
> 1986); emphasis added).

In *In re Continental Airlines*, cited by *Colortex*, an aircraft lessor sought an

administrative expense claim against Continental based on the lessor's cost to

bring the aircraft into compliance with aircraft return provisions in the aircraft

lease.  The Delaware bankruptcy court *denied* the lessor's administrative expense

claim because it would not benefit Continental's bankruptcy estate to bring the

aircraft into compliance with the lease return provisions:

> *Movants must show that the failure to return the
> aircraft in compliance with the Lease return conditions
> resulted in a benefit to the estate.*

> Movants have not borne their burden of proof on
> entitlement to an administrative expense claim for the
> breach of the lease return conditions. *There was no
> showing that failure to bring engine 666317 into
> compliance with the lease return conditions resulted in*

> *a benefit to the estate. Similarly, there was no showing that the failure to paint out the Continental logo on the airframe resulted in a benefit to the estate.*

> In re Continental Airlines at 528
> (emphasis added).[2]

Because PECO is compensated by PECO's pallet lessees for the use of the pallets, Winn-Dixie has not been unjustly enriched by continuing to receive deliveries on PECO pallets. PECO does not, and can not, allege that there is any benefit to Winn-Dixie's estate resulting from the loss of PECO's pallets. Instead, PECO's asks the Court to grant administrative priority status to PECO to compensate *PECO* for missing pallets.[3]

3.    *Because PECO's claim is based on an alleged post-petition breach of a pre-petition contract, PECO's claim is not entitled to administrative priority under 11 U.S.C. § 503.*

In *GATX Leasing Corp, v. Airlift Int'l, Inc. (In re Airlift Int'l., Inc.)*, 761 F.2d 1503 (11th Cir. 1985), the Eleventh Circuit found that, as a matter of law,

---

[2] *See also, In re Harloff*, 247 B.R. 523, 529 (Bankr. M.D. Fla. 2000) ("The court's administrative expense inquiry centers upon whether the estate has received an *actual benefit, as opposed to the loss a creditor might experience by virtue of the debtor's possession of its property.*") (emphasis in original); *Broadcast Corp. of Georgia v. Broadfoot*, 54 B.R. 606 (Bankr. N.D. Ga. 1985) ("the administrative expense scheme *does not focus in the first instance on whether the creditor sustained a loss* ... but rather whether the estate has received a benefit.") (emphasis added); *In re Ram Manufacturing, Inc.*, 38 B.R. 252, 254 (E.D. Pa. 1984) ("the administrative claim is *limited to the amount by which the estate benefits* rather than the *amount of harm or forbearance suffered by the lessor.*") (emphasis added) and *In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 971-72 (Bankr. N.D. Okla. 1990) (GATX claims administrative expense priority on the basis of *loss to GATX* not on the basis of *benefit to the bankruptcy estate.* But nothing in the Bankruptcy Code warrants administrative expense priority *on the sole basis of creditor loss.*") (emphasis added).

[3] In their depositions, PECO's representatives, Mr. Marcus and Kim Snow, admitted that (i) losing or transferring pallets to unauthorized recipients did not result in a benefit to the Winn-Dixie estate, (ii) PECO's claim is solely to compensate PECO for its loss, and (iii) even if losing pallets were to benefit Winn-Dixie, PECO cannot quantify that benefit.

when a debtor commits a post-petition breach of a pre-petition executory contract

that the debtor has not assumed, the breach is deemed to have occurred pre-

petition and therefore the creditor is only entitled to an unsecured, pre-petition

claim:

> Our review indicates there are three general situations
> involving executory contracts or unexpired leases
> where the effect of a breach by the debtor or trustee
> must be considered: (1) *where the trustee elects not to
> assume an ongoing executory contract or unexpired
> lease and rejects it*, (2) where the trustee assumes an
> ongoing executory contract or unexpired lease prior to
> confirmation of the plan, and (3) where the trustee
> during reorganization proceedings enters into a new
> executory contract.
>
> *In the first instance where the [pre-petition] contract
> is not assumed prior to confirmation, the breach of the
> executory contract is deemed to have occurred pre-
> petition, giving rise to a pre-petition claim under
> 502(g).*
>
> > *In re Airlift Int'l Inc.*, 761 F.2d
> > 1503, 1508-09 (11th Cir. 1985)
> > (emphasis added).

Therefore, to establish its right to an administrative claim, the claimant

must show that its claim arises from a transaction with the debtor-in-possession

(*i.e.* post-petition), *and* that the transaction was beneficial to the debtor's estate:

> In order to qualify for a Section 503(b)(1)(A)
> administrative priority claim, the claim must satisfy
> the following test: the debt must both (1) *arise from a
> transaction with the debtor-in-possession* and (2) be

beneficial to the debtor-in-possession in the operation
of its business.

> *In re OES Environmental,
> Inc.*, 319 B.R. 266, 268 (Bankr.
> M.D. Fla. 2004) (citing *In re
> Jartran, Inc.*, 732 F.2d 584, 587
> (7th Cir. 1984); emphasis added).

In *In re Jartran*, the debtor-in-possession enjoyed the post-petition benefits

of advertising services that the claimant supplied to the debtor pursuant to pre-

petition contracts. The advertiser sought an administrative expense for the cost of

providing the ads for the debtor during its bankruptcy. The advertiser claimed that

because the debtor benefited from the ads, the advertiser was entitled to an

administrative claim for the cost of the ads. The Seventh Circuit Court of Appeals

held that because the debtor did not engage in any post-petition transactions which

induced the advertiser to provide the ads, the claim was based on the advertiser's

pre-petition contract and therefore not entitled to administrative expense status:

> We recognize that the services performed by
> appellants after the closing date, and after the filing of
> the petition, were significant and of value to Jartran.
> However, appellants do not allege that Jartran, after
> the filing of the petition, requested that appellants
> continue work on ads for which the closing date had
> passed. Nor is it claimed that Jartran had a duty to
> take affirmative steps to prevent Donnelley from
> engaging in post-petition performance. Thus, it was
> the *pre-petition Jartran* and *not Jartran as debtor-in-
> possession* that *induced* appellants to perform these
> services. To serve the policy of the priority,
> *inducement of the creditor's performance by the
> debtor-in-possession* is crucial to a claim for

11

administrative priority in the context of the furnishing
of goods or services to the debtor.

> *In re Jartran* at 587 (citations
> omitted; emphasis in added).

The Eleventh Circuit has recognized the validity of *Jartran*'s requirement

that the claim arise out of a transaction with the debtor-in-possession. In *Bonapfel*

*v. Nalley Motor Trucks (In re Carpet Center Leasing Co., Inc.)*, 991 F.2d 682, 687

(11th Cir. 1993), the debtor entered into an adequate protection agreement

pursuant to which the debtor agreed to make adequate protection payments to a

creditor which had a security interest in the debtor's tractor trailers. *See id.* at 683.

When the debtor failed to make the adequate protection payments, the creditor

sought an administrative expense claim for the diminution in value of the trucks

during their use by the estate. *See id.* at 685. The trustee objected to the claim

asserting that the claim was based on the creditor's pre-petition security interest.

The Eleventh Circuit affirmed the trial court's decision to award an administrative

expense claim based on the finding that the debtor entered into a *new*

*transaction*—the adequate protection agreement—which induced the creditor

post-petition to allow the estate to continue using the trucks. *See id.* at 686-87.  In

doing so, the Eleventh Circuit found that the facts of the case were materially

different than those in *Jartran*:

> [The] Debtor actively sought to retain possession of
> the tractors by agreeing to pay Paccar monthly
> adequate protection payments. *The negotiation for*

> *continued possession of the tractors in return for adequate protection is a post-petition transaction providing new value to the bankruptcy estate.*
>
> ***
>
> The cases relied upon by the Trustee are readily distinguishable from the case at bar. In *In re Jartran, Inc.*, the debtor enjoyed the benefits of advertising services that were performed on the basis of pre-petition contracts. The advertising service provider claimed entitlement to administrative priority for the cost of providing the ads, but the Seventh Circuit Court of Appeals held that the debtor engaged in *no post-petition transaction which induced the provision of the ads* because the commitment to provide the ads was formed before the debtor filed its bankruptcy petition. *In re Jartran, Inc.*, 732 F.2d at 588-89. In this case, by contrast, *Debtor induced the post-petition provision of goods to the estate by negotiating for retention of the trucks, otherwise subject to repossession, in return for adequate protection payments. Rather than simply enjoying the benefits of a pre-petition commitment, Debtor actively bargained for the use of the tractors after filing its bankruptcy petition.*
>
> > *In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682, 686-87 (11th Cir. 1993) (emphasis added).

Like the debtor in *In re Jartran* (and unlike the debtor in *In re Carpet Center Leasing Co.*), Winn-Dixie did not enter into a post-petition transaction with PECO which "induced" PECO to continue to allow Winn-Dixie to receive PECO pallets. PECO did not provide "new value" to the Winn-Dixie estate. *Id.* Winn-Dixie merely continued to receive pallets delivered to it post-petition with PECO's apparent permission. Therefore, PECO's claim for lost pallets (to the extent

PECO *can* establish a loss of pallets) arises solely out of a post-petition breach of a pre-petition contract and is not entitled to administrative priority. *See In re Airlift Int'l Inc.,* 761 F.2d at 1508-09 (11th Cir. 1985).

      4.     *PECO cannot establish by a preponderance of the evidence that Winn-Dixie actually lost any pallets.*

To meet its burden of proof, PECO has to establish by a preponderance of the evidence that between February 21, 2005 and November 21, 2006, Winn-Dixie misplaced some number of PECO's pallets. To meet that burden, PECO proposes to prove the number of pallets (i) Winn-Dixie had in its possession on the Petition Date, (ii) vendors delivered to Winn-Dixie during the Administrative Period, (iii) Winn-Dixie returned to PECO approved pallet depots during the Administrative Period, and (iv) Winn-Dixie had in its possession on November 21, 2006. From these numbers PECO intends to calculate the number of missing pallets.

PECO's proof of these predicate numbers will be incomplete and unreliable, however. PECO will not be able to establish how many pallets were in Winn-Dixie's possession on the Petition Date because PECO's audits in February 2005 did not include all Winn-Dixie distribution centers. PECO's records as to the number of pallets that vendors say they delivered to Winn-Dixie during the period are based on hearsay. So too are the reports from pallet depots regarding how many pallets they received from Winn-Dixie. PECO's internal correspondence shows that PECO itself questions the reliability of those reports. Moreover, even PECO admits that its calculations of the number of pallets that

Winn-Dixie lost in the Administrative Period are based in part on speculative estimations.

Winn-Dixie's evidence will be that since 2003, when Winn-Dixie and PECO entered into the Pallet Use Agreement, Winn-Dixie has returned all PECO pallets in its possession to depots pursuant to PECO's instructions.

**D.**    **Deposition Excerpts to be used at Trial**

See excerpts of the depositions of (i) Brian Marcus, PECO's representative pursuant to Rule 7030(b)(6), attached as Exhibit A and (ii) PECO representative, Kim Snow, attached as Exhibit B.

**E.**    **Legal Authority**

The following is the legal authority upon which Winn-Dixie may rely. Winn-Dixie may rely upon additional authority at trial or in any post-trial briefing.

1.    *In re Fulwood Enterprises, Inc.* 149 B.R. 712, 715 (Bankr. M.D. Fla. 1993).

2.    11 U.S.C. § 503.

3.    *Varsity Carpet, Inc. v. Richardson (In re Colortex Indus.),* 19 F.3d 1371 (11th Cir. 1994).

4.    *Broadcast Corporation of Georgia v. Broadfoot (In re Subscription Television Services of Greater Atlanta)*, 789 F.2d 1530, 1532 (11th Cir. 1986).

5.    *In re Continental Airlines*, 146 B.R. 520 (Bankr.D.Del.1992).

6.     *In re Colortex Indus.*, 60 B.R. 907 (Bankr. D. Utah 1986).

7.     *In re Harloff*, 247 B.R. 523 (Bankr. M.D. Fla. 2000) .

8.     *Broadcast Corp. of Georgia v. Broadfoot*, 54 B.R. 606 (Bankr. N.D. Ga. 1985)

9.     *In re Ram Manufacturing, Inc.*, 38 B.R. 252 (E.D. Pa. 1984).

10.    *In re Mid Region Petroleum, Inc.*, 111 B.R. 968 (Bankr. N.D. Okla. 1990).

11.    *GATX Leasing Corp, v. Airlift Int'l, Inc. (In re Airlift Int'l., Inc.)*, 761 F.2d 1503 (11th Cir. 1985).

12.    *In re Airlift International, Inc.*, 761 F.2d 1503 (11th Cir. 1985).

13.    *In re OES Environmental, Inc.*, 319 B.R. 266 (Bankr. M.D. Fla. 2004).

14.    *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir. 1984).

15.    *Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co., Inc.)*, 991 F.2d 682 (11th Cir. 1993).

16.    *In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682 (11th Cir. 1993).

F.     **Core Proceeding**

This is a core proceeding and Winn-Dixie consents to the jurisdiction of the Court and the entry of final orders or judgments by the Court.

## G. <u>Settlement</u>

The parties have made a good faith endeavor to settle the matter and have been unable to do so.

SMITH HULSEY & BUSEY


By___/s/ *Allan E. Wulbern*_____
      Stephen D. Busey
      Allan E. Wulbern

Florida Bar Number 175511
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)

Counsel for Reorganized Debtors

## Certificate of Service

I certify that a copy of the foregoing has been furnished by CM/ECF notification to Richard R. Thames, Esq., Stutsman Thames & Markey, 50 North Laura Street, Suite 1600, Jacksonville, Florida 32202 on this 5th day of May, 2008.

_/s/ Allan E. Wulbern_
Attorney

00605458.4

## EXCERPTS FROM THE DEPOSITION OF BRIAN MARCUS
## PURSUANT TO BANKRUPTCY RULE 7030(b)(6)

| April 23, 2008 | April 30, 2008 |
| --- | --- |
| Page 4, Lines 12-24 | Page 5, Line 21 – Page 9, Line 5 |
| Page 5, Line 13 – Page 6, Line 19 | Page 9, Lines 21-25 |
| Page 8, Line 9 – Page 9, Line 21 | Page 10, Line 19 – Page 11, Line 10 |
| Page 10, Line 19 – Page 12, Line 9 | Page 12, Lines 5-15 |
| Page 16, Line 14 – Page 17, Line 6 | Page 36, Line 16 – Page 39, Line 15 |
| Page 21, Lines 10-22 | Page 40, Line 23 – Page 41, Line 6 |
| Page 22, Line 20 – Page 23, Line 11 | Page 41, Lines 15-19 |
| Page 24, Line 3 – Page 25, Line 10 | Page 46, Lines 10-13 |
| Page 81, Line 18 – Page 82, Line 9 | Page 48, Lines 5-8 |
| Page 84, Line 12 – Page 85, Line 6 | Page 51, Line 24 – Page 52, Line 24 |
| Page 85, Line 15 – Page 86, Line 3 | Page 53, Lines 11-17 |
| Page 92, Lines 6-10 | Page 54, Lines 2-13 |
| Page 92, Lines 15 – Page 93, Line 2 | Page 55, Line 20 – Page 56, Line 7 |
| Page 93, Lines 17-25 | Page 64, Lines 23-24 |
| Page 94, Line 10 – Page 95, Line 2 | Page 67, Line 17 – Page 56, Line 7 |
| Page 96, Lines 8-12 | Page 73, Line 1-2 |
| Page 108, Line 13 | Page 75, Line 17 – Page 76, Line 11 |
| Page 109, Line 1 – Page 110, Line 7 | Page 76, Lines 20-23 |
| Page 112, Lines 7-23 | Page 84, Line 15 – Page 85, Line 5 |
| | Page 87, Lines 13-16 |
| | Page 97, Line 20 – Page 98, Line 15 |
| | Page 103, Line 9 – Page 104, Line 5 |
| | Page 105, Lines 21-24 |

00608144

**Exhibit A**

## PAGE AND LINE DESIGNATIONS FOR
## APRIL 22, 2008 DEPOSITION OF KIM SNOW

Page 9, Line 16 – Page 10, Line 22

Page 16, Lines 5-10

Page 27, Lines 7-24

Page 28, Lines 5-15

Page 29, Line 4-7

Page 34, Lines 12-14

Page 42, Lines 2-21

Page 49, Line 21 – Page 51, Line 15

Page 54, Line 19 – Page 55, Line 13

Page 59, Lines 1-22

Page 75, Lines 7-22

Page 75, Line 24 – Page 76, Line 19

Page 80, Lines 1-4

Page 81, Line 22 – Page 82, Line 9

Page 83, Lines 17-20

Page 84, Line 8 – Page 85, Line 9

Page 91, Lines 13-24

Page 95, Line 10

Page 97, Line 11 – Page 98, Line 15

Page 105, Lines 17-21

Page 122, Lines 14-18

Page 122, Line 23

Page 125, Line 16 – Page 127, Line 1

Page 134, Lines 15-18

Page 135, Lines 8-18

Page 136, Lines 1-18

Page 142, Lines 13-17

00608127

**Exhibit B**