## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:                                              Case No.  05-03817-3F1

                                )

WINN-DIXIE STORES, INC., et al.,                    Chapter 11

                                )

       Reorganized Debtors.                         Jointly Administered

                                )

## DEBTORS' THIRD MOTION
## TO COMPEL DISCOVERY FROM VISAGENT

Winn-Dixie Stores, Inc., on behalf of twenty-three of its subsidiaries and affiliates, as the Reorganized Debtors (collectively, "Winn-Dixie"), moves the Court pursuant to Bankruptcy Rules 7026 and 7037, Fed.R.Bank.P., and Local Rule 7037-1, for an order (i) compelling Visagent Corporation to fully respond to Winn-Dixie's discovery requests, and (ii) requiring Visagent to pay Winn-Dixie's costs in bringing this motion. In support of the motion, Winn-Dixie says:

1.      Visagent has asserted a claim (Claim No. 9953) against Winn-Dixie for alleged breach of the parties' June 28, 2001 Service Agreement and other statutory and tort claims.  The amount of the claim is $131,875,000.

2.      Winn-Dixie has objected to Visagent's claim (Docket No. 9131).  Winn-Dixie denies that it breached any duty to Visagent, and that Visagent failed to adequately perform under the parties' Agreement.

3.      On August 16, 2006, Winn-Dixie served on Visagent Debtors' First Set of Interrogatories (the "First Interrogatories") and First Request for Production of Documents (the "First Document Requests").

4.      On September 28, 2006, Visagent served its responses to Winn-Dixie's discovery requests.  Visagent's responses, citing various objections, failed to answer a number of the First Interrogatories or to produce documents responsive to the First Document Requests.

5.      By letters of December 7 and December 19, 2006, Winn-Dixie notified Visagent that its responses were insufficient and requested that Visagent provide adequate responses.  Visagent did not respond.

6.      On January 18, 2007, Winn-Dixie moved to compel Visagent to fully respond to Winn-Dixie's discovery requests and for a protective order (the "First Motion to Compel")(Docket No. 14777).

7.      On February 22, 2007, the Court conducted a hearing on the First Motion to Compel.  On February 26, the Court entered an order overruling Visagent's objections to First Interrogatory numbers 4, 5, 7 through 11, 15 and 17, and First Document Request numbers 5, 6, 8, 9, 12, 17 and 21, and directing Visagent to fully respond to these interrogatories and document requests (Docket No. 15302).

8.      On March 21, 2007, Visagent served its Supplemental Response to Debtors' First Interrogatories and its Supplemental Response to Debtors' First Document Requests, copies of which are attached as Exhibits A and B.

9.      In its supplemental response to the First Document Requests, Visagent indicated that it would produce documents in Stuart, Florida.  After initially refusing to produce the documents in Jacksonville, Visagent ultimately agreed to produce the documents in Jacksonville on April 3, 2007.

10.     At the scheduled inspection on April 3, Visagent did not produce any documents.  Instead, Visagent offered to allow Winn-Dixie's attorney to view computer files containing scanned images of approximately 16,000 documents.  Visagent refused Winn-Dixie's attorney's request to inspect originals of these documents.  Visagent also refused to produce the documents in the electronic format in which Visagent claims the documents where kept in the usual course of Visagent's business.

11.     On April 4, 2007, Winn-Dixie requested hard copies of the 16,000 scanned images.  On April 6, Visagent allowed Winn-Dixie to have a copy service print hard copies of the scanned images.  Visagent again refused to provide the documents electronically.

12.     On March 30, 2007, Winn-Dixie notified Visagent of the remaining insufficiencies in Visagent's supplemental responses.  Visagent did not respond.

13.     On May 4, 2007, Winn-Dixie filed a second motion to compel Visagent to adequately respond to Winn-Dixie's discovery requests (the "Second Motion to Compel") (Docket No. 16231).  In the Second Motion to Compel, Winn-Dixie sought an order of the Court directing Visagent to, (i) produce information Visagent ordinarily maintained in an electronic format in a reasonably usable form, and (ii) for the documents requests Visagent answered by reference to documents Visagent produced or agreed to produce, identify those documents with the specificity required by Rule 7033(d) of the Federal Rules of Bankruptcy Procedure.

14.     On June 14, 2007, the Court conducted a hearing on Winn-Dixie's Second Motion to Compel.  On June 21 and July 30, the Court entered an order and a corrected order (Docket Nos. 16960 and 17564) directing Visagent to (i) produce the original

computer disk or disks from which Visagent obtained the information Visagent produced pursuant to Debtors' First Document Requests, and (ii) for the documents requests Visagent answered by reference to documents Visagent produced or agreed to produce, identify those documents with the specificity required by Rule 7033(d) of the Federal Rules of Bankruptcy Procedure no later than 30 days prior to the beginning of any trial on this matter.

15.     Notwithstanding the foregoing, Visagent has still not provided adequate responses to Winn-Dixie's First Interrogatories and First Document Requests.

16.     On April 4, 2008, Winn-Dixie served on Visagent Winn-Dixie's Second Set of Interrogatories (the "Second Interrogatories") and Second Request for Production of Documents (the "Second Document Requests").  The Second Interrogatories and Second Document Requests are attached as Exhibits C and D.

17.     On May 12, 2008, Visagent served its responses to Winn-Dixie's Second Interrogatories and Second Documents Requests which are attached as Exhibits E and F. Visagent's responses, citing various objections, failed to answer a number of the Second Interrogatories or to produce documents responsive to the Second Document Requests.

18.     By letter dated June 9, 2008, Winn-Dixie notified Visagent that its responses to the Second Interrogatories and Second Documents Requests were insufficient and requested that Visagent provide adequate responses.  Visagent did not respond to the letter.  Counsel for Winn-Dixie also telephoned counsel for Visagent in an attempt to discuss Visagent's objections.  Visagent's counsel did not return the call.

19.      Visagent's responses to Winn-Dixie's discovery requests are inadequate as follows:

## First Interrogatories

Response Not Answered Under Oath:

Visagent's supplemental responses to the First Interrogatories were not answered under oath by an authorized representative of Visagent as required by Rule 33(b)(3), Federal Rules of Bankruptcy Procedure.

Interrogatory 13:  State all facts, events, circumstances and identify all documents which support your statements in the Amended Statement of Claim that Visagent used its contacts and relationships to introduce compatible trade partners to Winn-Dixie and that Winn-Dixie attempted to, and did build business relationships with some or all of these trade partners by circumventing Visagent, including the identity of each trade partner, the date the introductions took place, and the manner in which the introductions took place.

Answer:  See answer to Interrogatory No. 12.[1]

[Although Visagent objected to this interrogatory as overly broad, the interrogatory relates directly to Visagent's allegations against Winn-Dixie.  Visagent has provided no information regarding the date or manner of any such introductions.]

Interrogatory 14:  State all facts, events, circumstances and identify all documents which support your statements in the Amended Statement of Claim that Visagent performed extensive services without compensation for Winn-Dixie base upon promises that all Outside Sales Catalog business would be conducted by and through a Visagent exchange, and

---

[1]  Answer to Interrogatory No. 12:  Objection, overbroad.  Discovery ongoing.  Without waiver of this objection, see fully negotiated unsigned 2004 Service Agreement between Visagent and Debtor, Confidentiality Agreement dated April 24, 2001, Amendment to Visagent SGE User Agreement.

Violation of Confidentiality Agreement in circumvention of Visagent by attempting to conduct trading activity while Visagent was introducing proprietary and confidential information, practices, methods and third parties to Debtor.  Debtor, through its representative, Les Wulfert, admitted that it had tried to do this and later, its Senior Officer, Richard Judd, admitted that it would not do business with Visagent but that it would conduct business in the same manner as confidentially proposed by Visagent, on its own.

Trading Partners:

C&S Wholesale, Giant Eagle, Rite Aid, Eckerd Drugs, Safeway and others.

that Visagent developed a business model for Winn-Dixie and trained its employees in this regard.

Answer:  Provided Debtor with proprietary information, process plans and models for the implementation and facilitation of the OSC.  Visagent conducted training sessions for Debtor's Supervisors, Category Mangers and BDM's in the business model and processes.

[Visagent's response references process plans and models.  Visagent has neither produced nor sufficiently identified such documents.]

## First Document Requests

Form of Production:

Visagent's initial production of documents included approximately 4,200 pages of documents.  These documents include emails, letters, spreadsheets and presentations, all produced in an unsearchable, paper form.  Winn-Dixie has requested, pursuant to the Federal Rules of Civil Procedure that, to the extent Visagent maintained these documents in an electronic form, Visagent produce the documents in a reasonably usable electronic form.  Visagent has failed to do so.

Document Requests 1 through 4:

General Objections:
Visagent objects to each of the requests as overly broad and further objects to the extent any request seeks privileged attorney-client or attorney work-product materials.  Visagent further objects to the definitions and instructions in the preface to the request for production as overly broad and inconsistent with the requirements of the Federal Rules of Civil Procedure.

Document Request No. 1:  The Service Agreement, and all versions, revisions, supplements, attachments, addenda, and amendments thereto.

Answer:  Subject to the general objections stated herein, Visagent will produce the Service Agreement.

Document Request No. 2:  The User Agreement, and all versions, revisions, supplements, attachments, addenda, and amendments thereto.

Answer:  Subject to the general objections stated herein, Visagent will produce the User Agreement.

<u>Document Request No. 3</u>:  The Letter of Intent, and all versions, revisions, supplements, attachments, addenda, and amendments thereto.

<u>Answer</u>:  Subject to the general objections stated herein, Visagent will produce the Letter of Intent.

<u>Document Request No. 4</u>:  The Confidentiality Agreement, and all versions, revisions, supplements, attachments, addenda, and amendments thereto

<u>Answer</u>:  Subject to the general objections stated herein, Visagent will produce the Confidentiality Agreement.

[The requests related directly to the operative agreements and related documents underlying Visagent's claims against Winn-Dixie.  Visagent agreed to produce only the referenced agreements and letter of intent, not "all versions, revisions, supplements, attachments, addenda, and amendments thereto" as requested.  Further, Visagent has not produced the Service Agreement, User Agreement, Letter of Intent or a privilege log.]

<u>Document Request No. 12</u>:  All documents evidencing, relating or referring to any purchases or sales of any goods listed in or sold through the Grocery Exchange for the period January 1, 2001 to August 31, 2004.

<u>Answer</u>:  Visagent specifically objects as overly broad and vague, and not calculated to lead to the discovery of admissible evidence.

<u>Supplemental Answer</u>:  Available for inspection and copying.

[Visagent's objections were overruled by the Order on Debtors' First Motion to Compel.  Visagent has represented to the Court and to Winn-Dixie that Visagent has produced all responsive documents in its possession, custody or control.  See Order on Debtors' Second Motion to Compel, Paragraph 3.  Visagent's answer to First Interrogatory Number 4, however, indicates otherwise.  Visagent's answer listed precise total yearly transaction volumes for all Grocery Exchange purchases and sales.  However, the only documents Visagent has produced responsive to this request are approximately 16,000 pages of documents, the majority of which are computer generated invoices which Visagent eventually produced electronically, but not in a reasonably usable form.  In order for Visagent to compute the transaction volumes in Interrogatory Number 4 from these documents, Visagent would have had to essentially add up, by hand, each of the invoices contained in the 16,000 pages of documents.  Visagent could not have practically computed these transaction volumes from these documents.  Therefore, Visagent should either produce the documents Visagent used in answering Interrogatory Number 4 or explain how Visagent computed such answer as requested in Second Interrogatory Number 5.]

<u>Document Request No. 16</u>:  All reports, records, ledgers, journals, account statements, and all summaries, records, audits, and analysis thereof, relating to any payments made to Visagent by or on account of the Debtors, and any payments, incomes, or revenues Visagent received as a result of purchases or sales of goods by the Debtors through or in relation to the Grocery Exchange.

<u>Answer</u>:  Visagent specifically objects as overly broad and vague.  Subject to the general and specific objections asserted, Visagent will produce the documents relating to funds received by or on behalf of Debtor and other documents relating to such funds.

[In the Order on Debtors' Second Motion to Compel, the Court stated that Visagent represented to the Court that it produced all responsive documents in its possession, custody or control.  Visagent has produced numerous invoices for purchases made by Winn-Dixie through Visagent's Grocery Exchange.  However, Visagent has failed to produce any reports, ledgers, journals, account statements, summaries or audits regarding payments made to Visagent on behalf of Winn-Dixie.]

## **Second Interrogatories**

<u>Wavier of Objections</u>:

Winn-Dixie served its second interrogatories on April 4, 2008, responses to which were due by May 7, 2008.  Visagent served its responses on May 12.  Therefore, pursuant to Rule 7033(b)(4),Visagent waived any objections to the interrogatories.

<u>Response Not Answered Under Oath</u>:

Visagent's responses to the Second Interrogatories were not answered under oath by an authorized representative of Visagent as required by Rule 33(b)(3), Federal Rules of Bankruptcy Procedure.

<u>Interrogatory No. 1</u>:  Identify all entities which were granted, or had access to the Grocery Exchange or Surplus Goods Exchange, and for each identify:
a.  The date each entity entered into any agreement(s) with Visagent;
b.  The dates of admission of each entity to either exchange;
c.  If the entity terminated its agreement with Visagent or its access to either exchange, the date of termination; and
d.  All documents which evidence the foregoing.

Answer:

| | | |
|---|---|---|
| 3-D Trading | HEB | Safeway |
| A.J.J. Distributors | Impact Food Sales, Inc | Sav-Rite |
| Acme Wholesale | Infinity Design | Sawgrass Trading |
| Alta Wholesale | Ingles Markets | Company |
| Altitude Wholesale | JBS Technology | Severn Wholesale |
| American Food Dist | JUICEPAK | Superior Wholesale |
| American Wholesale | Kayser-Roth | Superior Wholesale |
| Ampersand Trading | Corporation | Supervalu |
| C&S Grocery | Marcs-New England | International |
| C&S Metro | Market Logistics | Supreme |
| C&S Wholesale | Newport Wholesalers | TDMI2 Inc. |
| Capitol Investments | OS GLOBAL | Titan Wholesale |
| Creative Distribution | Performance | Transfer Marketing |
| CVS | Wholesale | Tree of Life |
| David E. Daprizo, Inc. | Plus Inc-Go Grocery | Triboro Trading |
| Deal Trading, Ltd | Outlet | Trio Grocery |
| Desert Grocery | Prestige International | (Barracuda) |
| Eckerd | Purity Wholesale | Tri-State Trading |
| GDC Commodities | R& D Trading | USI |
| Exchange | R&S Sales | Value Trading |
| GFR-Unimarc | Radio Shack | Victory Wholesale |
| Giant Eagle | Rite Aid | WD -Promo |
| Global Food | RVSD 6-30 | Wholesale Exchange |
| Grocery Outlet | S&D | Winn Dixie |

Each user agreement required each participant to execute a confidentiality agreement.  Production of the actual agreements or communications with users, to the extent they exist, would be a breach of such confidentiality agreements.  Visagent does not keep the dates admitted or withdrawn from its exchanges.  The user agreement would "evidence the foregoing."

[Visagent has not objected to the production of documents evidencing the entities admitted to Visagent's exchanges, the dates of these entities agreements with Visagent, and the dates the entities were admitted to or withdrew from the exchanges.  Instead, Visagent summarily states that each entities user agreement with Visagent would evidence the requested information, but Visagent is precluded by confidentiality agreements, from producing the user agreements.  For the following reasons Visagent's claim that confidentiality agreements preclude Visagent from disclosing the requested information is without merit:  First, under the protective order entered in this case (Docket No. 10932), Visagent may designate the user agreements  and any other responsive documents "confidential," thereby precluding the dissemination or use of such information except as authorized under the protective order.  Second, the confidentiality agreements do not apply to the information requested.  Third, the confidentiality agreements "expire three (3) years after the last party to sign the agreement executes the same."  See the Confidentiality

Agreement between Visagent and Winn-Dixie attached as Exhibit G.    Since the confidentiality agreements Visagent refers to were signed no later than 2004, the date Visagent ceased operation, all such agreements have expired and are of no effect.]

Interrogatory No. 2:  Describe with specificity all attempts by Visagent to recruit, sign up or otherwise enlist users for the Grocery Exchange or the Surplus Goods Exchange, including (i) any communications or correspondence to or with any potential users,      (ii) any promotional or marketing materials, and (iii) your attendance at, or participation in any presentations, seminars, training sessions, or meetings.

Answer:   Objection. This interrogatory is overbroad and not reasonably calculated to lead to the discovery of admissible evidence and does not provide a time frame reference. The inquiry is impossible to answer and any response would be incomplete by its very nature. Notwithstanding the foregoing objection, Visagent asserts that it was part of Visagent's business to market to the entire industry in which it served.   As a consequence, Visagent employed business development teams whose job was to work with Users, Non-Users and Potential Users to introduce various Visagent Products such as VGE and SGB. The alliance with the World Wide Retail Exchange was a major part of the effort but by no means the majority of the marketing effort. Marketing was chiefly run by I. Mark Rubin, President/CEO and Robert J. Warren, Executive Vice President in pursuit of thousands of companies over years of marketing efforts.

[One of the central issues in this matter is whether Visagent's exchanges had enough users to make them functional, and whether Visagent's lack of customers, as opposed to Winn-Dixie's actions as alleged by Visagent, led to Visagent's insolvency. Therefore, Visagent's attempts to recruit users to the exchange are directly relevant to this matter and Visagent's objections that the interrogatory is not calculated to lead to the discovery of admissible evidence is without merit.

Further, the fact that it may be difficult for Visagent to sufficiently respond to the request does not make the request "impossible to answer."  Visagent's limited response to the request is insufficient.]

Interrogatory No. 3:  Describe with specificity all electronic and computer systems or applications, including both hardware and software, used or utilized by Visagent between January 1, 2000 and July 31, 2004, including:
a.  Any identifying nomenclature for the hardware or software, e.g. brand, name, model number, etc.;
b.  Whether such hardware or software was specially designed or created for Visagent, and, if so, by whom, and the approximate associated cost;

c.  Whether Visagent owned, leased or rented the hardware or software;
d.  The use or utilization by Visagent of the hardware of software, specifically what aspect of Visagent's business the hardware or software was used or designed to facilitate.

Answer:  Objection.  This interrogatory is compound, overly broad and unintelligible.  Notwithstanding the foregoing objection, to the extent documentation regarding the technology employed by Visagent exists, it is available for copying and inspection, and Debtor may obtain the ostensible information requested in this interrogatory from such documentation.

[The information requested is necessary to confirm Visagent's prior statements regarding its access to, and search capabilities regarding electronically stored information responsive to Winn-Dixie's prior discovery requests.  Visagent objections that the request is compound, overly broad and unintelligible are without merit.]

Interrogatory No. 5:  Describe with specificity how Visagent determined the Grocery Exchange transaction volumes listed in Visagent's supplement answer to Debtors' initial interrogatories, number 4, including whether Visagent used any computer software or applications in the determination, and if so, what software or application, and identify by Bates Stamp range, if applicable, all documents or electronically stored information used by Visagent in the determination.

Answer:  Visagent's calculations were made from the documents previously produced to Debtors and its own analysis of such documents is protected by the attorney client and work-product privileges. Debtor can reasonably ascertain the same information as Claimants from the information produced.

[Pursuant to Rule 7033(d), Visagent may answer an interrogatory by citing to business records only if Visagent specifies the records in sufficient detail to enable Winn-Dixie to identify such records as readily as Visagent.  Visagent's reference to documents previously produced does not comply with that requirement.  Moreover, the documents Visagent produced do not disclose the methods Visagent used to compute the Grocery Exchange volumes as requested.]

## **Second Document Requests**

Wavier of Objections:

Winn-Dixie served its second document requests on April 4, 2008.  Visagent's response was due by May 7, 2008.  Visagent served its response on May 12.  Therefore, Visagent waived any objections to the document requests.

General Objections:

Visagent objects to each of the requests as overly broad and further objects to the extent any request seeks privileged attorney-client or attorney work-product materials and material covered by confidentiality agreements. Visagent further objects to the definitions and instructions in the preface to the request for production as overly broad and inconsistent with the requirements of the Federal Rules of Civil Procedure.

[Visagent's blanket objection to "each of the requests as overly broad" and Visagent's objection to the definitions and instructions in the Second Document Requests as "overly broad and inconsistent with the requirements of the Federal Rules of Civil Procedure" are without merit.]

Location for Production:

General Notes.  Visagent will make document available for inspection and copying at 520 South Federal Highway, Stuart, Fl 34995.  Each of the numbered paragraphs below, correspond to the same numbered request in Debtor's Second Request for Production.

[Similarly, Visagent, in its supplemental response to the First Document Requests, refused to produce documents in Jacksonville, where Visagent was headquartered and where all prior production had taken place.  Upon repeated demand, Visagent agreed to produce those documents in Jacksonville.  The fact Visagent, which is no longer in business, recently changed its mailing address to Stuart is of no consequence.  Now, as then, the documents should be produced in Jacksonville.]

Document Requests 1 through 4:

Document Request No. 1:  All documents and electronically stored information relating or referring to negotiation of the Grocery Exchange Service Agreement.

Objection:  The request is overly broad, vague and does not provide a time frame for reference. As phrased, the request is not calculated to lead to the discovery of admissible evidence.

Response:  To the extent that Claimants have produced "all documents evidencing, relating to or referring to communication between Visagent and the Debtors for the period January 1, 2001 to August 31, 2004" (Debtors' First Request for Production No. 11), Claimants have produced responsive documents to this request.

Document Request No. 2:    All documents and electronically stored information relating or referring to negotiation of the Grocery Exchange User Agreement.

Objection:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.

Response:   To the extent that Claimants have produced "all documents evidencing, relating to or referring to communication between Visagent and the Debtors for the period January 1, 2001 to August 31, 2004" (Debtors' First Request for Production No. 11), Claimants have produced responsive documents to this request.

Document Request No. 3:    All documents and electronically stored information relating or referring to negotiation of the Surplus Goods Exchange User Agreement.

Objection:  The request is overly broad, vague and does not provide a time frame for reference. As phrased, the request is not calculated to lead to the discovery of admissible evidence.

Response:   To the extent that Claimants have produced "all documents evidencing, relating to or referring to communication between Visagent and the Debtors for the period January 1, 2001 to August 31, 2004" (Debtors' First Request for Production No. 11), Claimants have produced responsive documents to this request.

Document Request No. 4:    All documents and electronically stored information relating or referring to negotiation of the Outside Sales Catalog.

Objection:  The request is overly broad, vague and does not provide a time frame for reference. As phrased, the request is not calculated to lead to the discovery of admissible evidence.

Response:   To the extent that Claimants have produced "all documents evidencing, relating to or referring to communication between Visagent and the Debtors for the period January 1, 2001 to August 31, 2004" (Debtors' First Request for Production No. 11), Claimants have produced responsive documents to this request.  See previously produced documents WD V-011993-012013, WD V-012226, WD-00452-00472, WD 00619-30, WD00450-1, WD 00450–WD 20521 and WD 00583-86.

[The requested documents relate directly to Visagent's and Winn-Dixie's intent regarding each of the referenced agreements or exchanges.   The relevance of such

information is evidenced by Visagent's supplemental response to the First Interrogatories in which Visagent states that the allegations in Visagent's complaint and Amended Statement of Claim "are supported by the negotiations resulting in the execution of the Service Agreement."  Visagent's objections to these document requests as overly broad, vague and not calculated to lead the discovery of admissible evidence are without merit.

Further, Visagent's response to each of these requests is that Visagent has produced documents responsive to these requests in response to earlier document requests referring to communications between Visagent and Winn-Dixie.  However, document requests 1 through 4 are not limited to communications between Visagent and Winn-Dixie, but request all documents regardless of whether the documents evidence communications and regardless of with whom Visagent may have had communications.  Additionally, Visagent only identifies such documents in response to Document Request No. 4.]

Document Requests 5, 7, and 9:

Document Request No. 5:  All documents and electronically stored information relating or referring to any efforts by Visagent to recruit, sign up or otherwise enlist users for the Grocery Exchange, including, (i) any correspondence to or with any potential users, (ii) any promotional or marketing materials, and (iii) your attendance at, or participation in any presentations, seminars, training sessions or meetings.

Objection:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.  Moreover, like Debtors, every user on the Grocery Exchange signed a confidentiality agreement which prohibits their disclosure.

Document Request No. 7:  All documents and electronically stored information relating or referring to any efforts by Visagent to recruit, sign up or otherwise enlist users for the Visagent Surplus Goods, including, (i) any correspondence to or with any potential users, (ii) any promotional or marketing materials, and (iii) your attendance at, or participation in any presentations, seminars, training sessions or meetings.
Objection:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.  Moreover, like Debtors, every user on the Grocery Exchange signed a confidentiality agreement which prohibits their disclosure.

Document Request No. 9:  All documents and electronically stored information relating or referring to any efforts by Visagent to recruit, sign up or otherwise enlist users for the Outside Sales Catalog, including, all

promotional or marketing materials, and your attendance at, or participation in any presentations, seminars, training sessions or meetings.

Objection:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.  Moreover, like Debtors, every user for the Outside Sales Catalog signed a confidentiality agreement which prohibits their disclosure.

[One of the central issues in this matter is whether Visagent's exchanges had enough users to make them functional, and whether Visagent's lack of customers, as opposed to Winn-Dixie's actions as alleged by Visagent, led to Visagent's insolvency. Because the requested documents are directly relevant to this matter, Visagent's objections are without merit.

Further, as set forth above, Visagent's objection that "every user on the Grocery Exchange signed a confidentiality agreement which prohibits their disclosure" is without merit due to the protective order entered in this case and because the confidentiality agreements have expired and do not, by their terms, apply to the information requested.]

Document Requests 6, 8 and 10:

Document Request No. 6:  All documents and electronically stored information relating or referring to letters of intent, contracts, confidentiality agreements, service agreements, user agreements, or other agreements by and between Visagent and any users of the Visagent Grocery Exchange.

Objection:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.  Moreover, like Debtors, every user on the Grocery Exchange signed a confidentiality agreement which prohibits their disclosure.

Document Request No. 8:  All documents and electronically stored information relating or referring to letters of intent, contracts, confidentiality agreements, service agreements, user agreements, or other agreements by and between Visagent and any users of the Visagent Surplus Goods Exchange.

Objection:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.  Moreover, like Debtors, every user on the Grocery Exchange signed a confidentiality agreement which prohibits their disclosure.

Document Request No. 10:    All documents and electronically stored information relating or referring to letters of intent, contracts, confidentiality agreements, service agreements, user agreements, or other agreements by and between Visagent and users of the Outside Sales Catalog.

Objection:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.  Moreover, like Debtors, every user for the Outside Sales Catalog signed a confidentiality agreement which prohibits their disclosure.

[The information requested is necessary to confirm Visagent's representations regarding users of Visagent's exchanges.  Moreover, one of the central issues in this matter is Visagent's assertions regarding the duties and responsibilities of Winn-Dixie as a user of the exchanges.  The documents requested relate directly to Visagent's expectations regarding the duties and obligations of other exchange users.

Further, Visagent cites confidentiality agreements as precluding the disclosure of the documents requested.  The confidentiality agreements due not apply to the information requested and have expired.]

Document Request No. 11:    All documents and electronically stored information relating or referring to communications between Visagent Corporation and any users of the Visagent Grocery Exchange or Surplus Goods Exchange for the period January 1, 2000 through July 31, 2004.

Objection:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.

[The request clearly identifies a timeframe for reference.  Further, as previously stated, Visagent's communications with exchange users are directly relevant to the issues of why Visagent's exchanges were unsuccessful and Visagent's subjective intent regarding exchange users' obligations.]

Document Request No. 12:    All documents and electronically stored information relating or referring to any notice by Visagent to Winn-Dixie that Winn-Dixie was in breach of any Visagent agreements or contracts.

Response:    To the extent complaints by Visagent regarding noncompliance with the Service Agreement were communicated to Debtor, such documents have already been produced.

[The request specifically references *notice of breach*. Visagent's reference to "*complaints* by Visagent *regarding noncompliance* with the Service Agreement" is not responsive.]

Document Request 13:   All documents and electronically stored information relating or referring to Visagent's interpretation or subjective understanding of any of the terms of the Grocery Exchange Service Agreement or the Grocery Exchange User Agreement.

Objection:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.  To the extent the request relates to the time frame post expiration of the Service Agreement, the request calls for the production of documents protected by the attorney-client and work-product privileges.

[A key issue in this matter is Visagent's subjective interpretation or understanding regarding numerous Grocery Exchange Service Agreement and User Agreement terms and, therefore, the requested information is directly relevant.  Further, Visagent's conclusory statement that documents from the time period after the expiration of the agreements are necessarily protected by the attorney-client and work-product privilege is wrong and, regardless, not a bar to the production of non-privileged documents.]

## **Privilege Log**

Visagent has not produced a privilege log regarding Visagent's response to the First or Second Document Requests.  If responsive documents have been withheld pursuant to the attorney-client or work-product privileges, Visagent is required to provide a privilege log in accordance with Rule 7026(b)(5).

For the foregoing reasons, Winn-Dixie requests that the Court enter an order

(i) overruling Visagent's objections to Debtors' First Set of Interrogatories (Number 13),

Debtors' First Request for Production of Documents (Numbers 1 through 4), Debtors'

Second Set of Interrogatories, and Debtors' Second Request for Production of

Documents; and (ii) compelling Visagent to:

(a)     Provide sworn answers to Debtors' First Set of Interrogatories;

(b)     Provide complete answers to Debtors' First Set of Interrogatories (Numbers 13 and 14);

(c)     Produce previously produced documents Bates stamped WD00001-WD004202 in a reasonably usable electronic form;

(d)     Produce all documents responsive to Debtors' First Request for Production Numbers 1 through 4, 12 and 16;

(e)     Provide sworn answers to Debtors' Second Set of Interrogatories;

(f)     Provide complete answers to Debtors' Second Set of Interrogatories (Numbers 1 through 3, and 5);

(g)     Produce documents responsive to Debtors' Second Request for Production Numbers in Jacksonville;

(h)     Produce all documents responsive to Debtors' Second Request for Production (Numbers 1 through 13); and

(i)     Produce a privilege log for any documents withheld from production.

18

<u>Rule 26(c) and Rule 37(a)(2)(A) Certification</u>

The undersigned certifies that he has in good faith attempted, both in writing and by telephone, to confer with Visagent's attorney in an effort to resolve the issues raised in this motion without Court action.

SMITH HULSEY & BUSEY


By  */s/ David L. Gay*
      Stephen D. Busey
      James A. Bolling
      David L. Gay

Florida Bar Number 893221
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
dgay@smithhulsey.com

Counsel for Reorganized Debtors

**<u>Certificate of Service</u>**

I certify that a copy of the foregoing document was furnished by mail and/or electronically to **Guy Bennett Rubin, Esq.**, Rubin & Rubin, 520 South Federal Highway, Stuart, Florida 34995, this 25th day of June, 2008.

_____ */s/ David L. Gay*_____

Attorney

00604707

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

VISAGENT CORPORATION'S SUPPLEMENTAL RESPONSE TO DEBTOR'S
FIRST SET OF INTERROGATORIES[1]

Visagent Corporation files this supplemental response to Winn-Dixie Stores,
Inc.'s first set of interrogatories as follows:

4. State the total annual dollar volume of all purchases and sales of
Consumer packaged goods, as set forth in the Service Agreement,
transacted through or in relation to the Grocery Exchange for the
period 2001 through present, including the total dollar volume for all
purchases and sales attributable to the Debtors.

Supplemented Answer:

VISAGENT transaction volume is measured by Sale/Sell
Price plus freight and other costs plus VISAGENT'S fees.
The result is reported as the Purchase/Buy Price.
Accordingly, total annual dollar volume of all purchases is
the accurate measure of VISAGENT transaction volume
and is reflected as follows:

2001    $651,894.17
2002    $1,811,509.38
2003    $6,498,409.52
2004    $4,264,402.67

5. State (i) the total dollar volume of all purchases and sales of full or
truckload quantities of consumer packaged goods, and (ii) the total

---

[1] VISAGENT replies to all interrogatories requesting information in support of claims
made in this action with the understanding that discovery has only recently commenced
and is ongoing. VISAGENT reserves the right to supplement its responses as it receives
discovery materials from Debtor and non-parties.

1

**EXHIBIT A**

dollar volume of all purchases and sales of less than full or truckload quantities of consumer packaged good (sic), which were transacted through or in relation to the Grocery Exchange for the period 2001 through present, including the total dollar volume for all purchases and sales attributable to the Debtors.

    Supplemented Answer:

    Subject to the qualifying response to Interrogatory No. 4 above, (i) VISAGENT does not track or keep records of purchases and sales by "full or truckload quantities." (ii) VISAGENT does not track or keep records of purchases and sales of "less than full or truckload quantities." Furthermore, some aspects of the information requested by this interrogatory may be derived or ascertained from documents VISAGENT will produce pursuant to **VISAGENT CORPORATION'S SUPPLEMENTAL RESPONSE TO DEBTOR'S FIRST REQUEST FOR PRODUCTION** and the burden of deriving or ascertaining the answer is substantially the same for Debtors as it is for VISAGENT.

7.    Identify all officers, directors, and managers of Visagent for the period 2001 through present including their position, job description, and number of years in that position, and identify for each all former or current affiliations to or relationship with any company or other legal entity presently or formerly involved in the diverting of grocery products.

    Supplemented Answer:

    Officers:

    I. Mark Rubin, President and Chief Executive Officer of Visagent from 1998 to 2004.

    Robert Warren, Executive Vice President of Visagent from 2000 to 2004.
He previously served as President of Royal Knight Distributors, Inc., a diverter, from 1994 to 2000.

    Thomas Bixby, Chief Information Officer of Visagent from 2001 to 2004.

Mark Slater, Chief Financial Officer of Visagent from 2002 to 2004.

Simon Garwood, Vice President of Business Development for Visagent from 2000 to 2004.
He previously served as an account executive for Royal Knight Distributors, Inc., a diverter, from 1997 to 2000.

Don Welde, Senior Vice President for Special Projects for Visagent from 2003 to 2004.

Directors:

I. Mark Rubin, CEO Visagent Corporation

Steven A. Barth, President, HCM Management Inc.

Charles A. Clarkson, Partner, C & M Investments

Steven M. McLaughlin, Executive Vice President and Chief Technology Officer, MediaBay.com

Robert Schiller, Chief Operating Officer and Chief Financial Officer, Armor Holdings, Inc.

Robert Warren, Executive Vice President, Visagent Corporation
Prior affiliation set forth above.

8.  Identify all officers, directors, and managers of Global food (sic) Resources, Inc. for the period 2001 through present including their position job description, and number of years in that position, and identify for each all former or current affiliations to or relationship with any company or other legal entity presently or formerly involved in the diverting of grocery products.

Supplemented Answer:

I. Mark Rubin, President, 2001 to Present.

Jyoti Chawla, Vice President, 2001 to 2002. Previous affiliations unknown.

Hank Van Joslin, Vice President, 2002 to 2004. Previous affiliations unknown.

3

9. State all facts, events, circumstances and identify all documents which support your allegations in the complaint you filed in the Circuit Court Action and the Amended Statement of Claim, that Winn- Dixie breached its contractual obligation to exclusively utilize Visagent's services for eCommerce as provided in the Service Agreement.

Supplemented Answer:

VISAGENT CORPORATION, hereinafter referred to as VISAGENT, was in the business of providing services to facilitate e-Commerce business-to-business transactions to the retail consumer packaged goods industry. After many months of negotiations and the investment of substantial monetary and human capital by VISAGENT, a contract entitled SERVICE AGREEMENT was executed by both VISAGENT and WINN-DIXIE, a grocery retailer, on June 15, 2001 with an effective date of June 28, 2001. A copy of the contract has heretofore been provided to Debtors.

During the term of the SERVICE AGREEMENT, WINN-DIXIE was obligated to exclusively utilize VISAGENT'S services. for the procurement and sale of all merchandise it acquired or sold, "through the internet or similar electronic means" from and through the secondary market, which is comprised of all sources (buyers and sellers) of merchandise other than direct purchases and returns from original product manufacturers. WINN-DIXIE breached its contractual obligation to exclusively utilize VISAGENT's services by conducting business with third parties that were otherwise to be conducted under the terms of the contract and/or conducting business with third parties that was protected by the terms of the contract.

VISAGENT'S contentions are supported by the negotiations resulting in the execution of the Service Agreement, correspondence pre-dating the Service Agreement, WINN-DIXIE inter-company memoranda, the actual terms of the Service Contract, the actions of both sides leading up to and after the execution of the Service Agreement, the introduction of methods, technology and protocol to WINN-DIXIE by VISAGENT, discussions and communications between employees of WINN-DIXIE and VISGENT as to the implementation of the program, verification of VISAGENT'S position by the actions of WINN-DIXIE employees, requests by WINN-DIXIE to be

4

released from the exclusivity provisions of the SERVICE
AGREEMENT, all correspondence between the parties,
and communications of Tom Barr, Winn Dixie Alternate
Source Manager to members of VISAGENT and to
Alternate Source Vendors and contract entered between
WINN-DIXIE and VICTORY during the exclusivity period
of the SERVICE AGREEMENT.

See Documents:  V0001-4202 and WD00001-10,333
                        Service Agreement
                        User Agreements

As to identity of additional documents that may support
VISAGENT'S allegations, the answer to this interrogatory
may be derived or ascertained from documents Visagent
will produce pursuant to **VISAGENT CORPORATION'S
SUPPLEMENTAL RESPONSE TO DEBTOR'S
FIRST REQUEST FOR PRODUCTION** and the burden
of deriving or ascertaining the answer is substantially the
same for Debtors as it is for VISAGENT.

10. State all facts, events, circumstances and identify all documents which
support your allegations in the complaint you filed in the Circuit Court
Action and Amended Statement of Claim that is a result of Winn-
Dixie's breach as alleged in the Circuit Court Action, Visagent has
suffered damages in the amount of 2% of all transactions in which
Winn-Dixie has participated in the purchase of sale of goods in the
secondary market, other than those through the Exchange.

Supplemented Answer:

WINN-DIXIE breached its contractual obligation to exclusively utilize
VISAGENT's services as provided in the SERVICE AGREEMENT,
dated June 15, 2001, with an effective date of June 28, 2001 and User
Agreement provided to Debtor.  See detailed response to Interrogatory
9 above.

Documents:        V0001-4202
                        WD00001-10,333

As to identity of additional documents that may support Visagent's
allegations, the answer to this interrogatory may be derived or
ascertained from documents Visagent will produce pursuant to
**VISAGENT CORPORATION'S SUPPLEMENTAL RESPONSE**

**TO DEBTOR'S FIRST REQUEST FOR PRODUCTION** and the burden of deriving or ascertaining the answer is substantially the same for Debtors as it is for Visagent.

11. State all facts, events, circumstances and identify all documents which support your allegations in the amended Statement of Claim that Winn-Dixie was obligated to utilize the services of Visagent for the procurement and sale of all merchandise it acquired or sold, through any means utilizing facsimile, from or through the secondary market.

   Supplemented Answer:

   See responses to Interrogatories 9 and 10 above. Additionally, and specifically relating to document identification, see June 20, 2001 letter from Daryl Mills to All Alternate Source Venders; September 21, 2001 letter from Robert Carlson to all Secondary Sources.
   WD00001-10,333
   V0001-4202

   As to identity of additional documents that may support Visagent's allegations, the answer to this interrogatory may be derived or ascertained from documents Visagent will produce pursuant to its **VISAGENT CORPORATION'S SUPPLEMENTAL RESPONSE TO DEBTOR'S FIRST REQUEST FOR PRODUCTION** and the burden of deriving or ascertaining the answer is substantially the same for Debtors as it is for Visagent.

15. State all facts, events, circumstances and identify all document (sic) which support your statements in the Amended Statement of Claim that Winn-Dixie intentionally, fraudulently, or negligently encouraged and induced Visagent to continue to provide development training and services toward the development of the Outside Sales Catalog and other trading programs despite the fact that Winn-Dixie had no intention to use the Visagent exchange as promised.

   Supplemented Answer:

   Throughout the SERVICE CONTRACT period VISAGENT had several meetings and exchanges with WINN-DIXIE personnel regarding the implementation of unique, industry specific technology which would increase both companies' profit margin. WINN DIXIE acquired trade sensitive materials, not generally

6

known to others persons, under the fraudulent misrepresentation that they would renew their prior Service Agreement. This information was given to competitors of VISAGENT by WINN-DIXIE.

Documents:

V09941-V09944 Memo from I. Mark Rubin to Ed Mieskoski dated April 14, 2003

V10285-V10286 Memo from I. Mark Rubin to Phillip Payment dated June 2, 2003

V10280-10281
V10207-V10208
V09949
V09875
V09893
V10265-10279   WD Alternate Sourcing Program presented by Visagent May 2003
V0001-4202
WD00001-10,333

Additionally, the answer to this interrogatory may be derived or ascertained from documents Visagent will produce and the burden of deriving or ascertaining the answer is substantially the same for Visagent as it is for Debtors.
Discovery is just commencing and Visagent acknowledges the obligation to supplement these responses periodically throughout the discovery process.

17. State all facts, events, circumstances and identify all documents which support the statements in the Affidavit that the Service Agreement precluded Winn-Dixie Stores, Inc. from transacting purchases or sales of goods in the secondary market through the use of electronic transmission, including, email and fax machines, other than through Visagent's Grocery Exchange.

Supplemented Answer:

See responses to Interrogatories No. 9, 10, 11 and 15 above.

Documents:
Service Agreement
User Agreements
WD00001-10,333

7

V0001-4202

The answer to this interrogatory may be derived or ascertained from documents Visagent will produce and the burden of deriving or ascertaining the answer is substantially the same for Visagent as it is for Debtors. Discovery is ongoing. Visagent acknowledges the obligation to supplement these responses periodically throughout the discovery process.

**FOR THE CORPORATION
AND AS TO OBJECTIONS:**

GUY BENNETT RUBIN, ESQUIRE
Florida Bar No.: 691305
Rubin & Rubin
P.O. Box 395
Stuart, FL 34995
(772) 283-2004
(772) 283-2009 (facsimile)

## CERTIFICATE OF SERVICE

I certify that a true copy was sent via U.S. Mail and via electronic filing to counsel for the Debtor this 21 day of March, 2007.

GUY BENNETT RUBIN, ESQUIRE
Florida Bar No.: 691305
Rubin & Rubin
P.O. Box 395
Stuart, FL 34995
(772) 283-2004
(772) 283-2009 (facsimile)
Attorney for Plaintiff

Copy furnished to:

Stephen D. Busey
James H. Post
Cynthia C. Jackson
**Smith Hulsey & Busey**
225 Water Street
Suite 1800
Jacksonville, FL 32202
Tel: (904) 359-7700

8

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

### VISAGENT CORPORATION'S SUPPLEMENTAL RESPONSE TO DEBTOR'S FIRST REQUEST FOR PRODUCTION

Visagent Corporation responds to Winn-Dixie Stores, Inc.'s first Request to Produce as follows:

General Objections:

Visagent objects to each of the requests as overly broad and further objects to the extent any request seeks privileged attorney-client or attorney work-product materials. Visagent further objects to the definitions and instructions in the preface to the request for production as overly broad and inconsistent with the requirements of the Federal Rules of Civil Procedure.

General Notes:

Visagent will make documents available for inspection and copying at 520 South Federal Highway, Stuart, Fl 34995. Each of the numbered paragraphs below, correspond to the same numbered request in Debtor's First Request For Production.

Document Request No. 5: All documents evidencing the allegations in the complaint you filed in the Circuit Court Action.

Supplemented Answer: Available for inspection and copying.

Document Request No. 6: All documents evidencing the damages you alleged in the Complaint filed in the Circuit Court Action.

1

**EXHIBIT B**

Supplemented Answer:   Available for inspection and copying.

Document Request No. 8:  All documents evidencing the statements set forth in the Response, including the averments in the affidavit of I. Mark Rubin as attached thereto.

Supplemented Answer: Available for inspection and copying.

Document Request No. 9:    All documents evidencing the statements set forth in the Amended Statement of Claim.

Supplemented Answer: Available for inspection and copying.

Document Request No. 12:  All documents evidencing, relating or referring to any purchases or sales of any goods listed in or sold through the Grocery Exchange for the period January 1, 2001 to August 31, 2004.

Supplemented Answer: Available for inspection and copying.

Document Request No. 17:  All complaints to anyone about the Grocery Exchange for the period January 1, 2001 to August 31, 2004.

, Supplemented Answer: Available for inspection and copying.

Document Request No. 21:  All documents that evidence any portion of the $131, 875,000 you claim in your Amended Statement of Claim that Winn-Dixie owes you.

Supplemented Answer: Available for inspection and copying.

2

## CERTIFICATE OF SERVICE

I certify that a true copy was sent via U.S. Mail and via electronic means to counsel for the Debtor this 21st day of March, 2007.

GUY BENNETT RUBIN, ESQUIRE
Florida Bar No.: 691305
Rubin & Rubin
P.O. Box 395
Stuart, FL 34995
(772) 283-2004
(772) 283-2009 (facsimile)
Attorney for Plaintiff

Copy furnished to:

Stephen D. Busey
James H. Post
Cynthia C. Jackson
**Smith Hulsey & Busey**
225 Water Street
Suite 1800
Jacksonville, FL 32202
Tel: (904) 359-7700
Fax: (904) 359-7708

3

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |

## REORGANIZED DEBTORS'
## SECOND SET OF INTERROGATORIES TO VISAGENT

To:    Visagent Corporation
c/o Guy Bennett Rubin, Esq.
Rubin & Rubin
110 S.W. Atlanta Avenue
Stuart, Florida 34994

Pursuant to Rule 7033, Federal Rules of Bankruptcy Procedure, you are required

to answer the interrogatories set forth below.

SMITH HULSEY & BUSEY

By:_____
Stephen D. Busey
David L. Gay

Florida Bar Number 839221
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
dgay@smithhulsey.com

Attorneys for Reorganized Debtors

## EXHIBIT C

## Definitions and Instructions

1.      "You," "your," "yours" and "Visagent" mean Visagent Corporation, its officers, directors, agents, servants, attorneys, employees or anyone acting on its behalf.

2.      "Debtor" or "Debtors" mean Winn-Dixie Stores, Inc. and its affiliated entities in the jointly administered bankruptcy case styled In re Winn-Dixie, Inc., et. al.; United States Bankruptcy Court, Middle District of Florida; Chapter 11; Case No. 05-03817-3F1, and the officers, directors, agents, servants, attorneys or employees thereof, and anyone acting on their behalf.

3.      "Grocery Exchange" means the exchange as referenced in the service agreement entered into by and between Winn-Dixie Stores, Inc. and Visagent Corporation with effective date of June 28, 2001.

4.      "Surplus Goods Exchange" means the exchange as referenced in the user agreement entered into by and between Winn-Dixie Stores, Inc. and Visagent Corporation on or about January 1, 2003.

5.      The phrase "relating or referring to" means constituting, comprising, containing, consisting of, setting forth, proposing, showing, evidencing, disclosing, describing, discussing, explaining, summarizing, concerning, reflecting, authorizing, pertaining to, or mentioning, directly or indirectly.

6.      The singular includes the plural and the past tense includes the present tense, and vice versa; the words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these interrogatories any documents which might otherwise be construed to be outside its scope; the word "all" means "any and all"; the word "any" means "any and all"; and the word "including" means "including without limitation."

7.      In the event that any document identified by you in response to these interrogatories is withheld on the basis of any claim of privilege (i) identify the document by date, author, subject matter and type of document (i.e., letter, memorandum, report, etc.), (ii) provide the names and current addresses of all persons to whom the document was distributed or shown, (iii) state the general subject matter of the document and (iv) state the nature of the privilege asserted.

8.      "Documents" shall have the same meaning as in Rule 34, Federal Rules of Civil Procedure, and shall include, without limiting the generality of the foregoing, correspondence, contracts, agreements, leases, memoranda, notes, calendar and diary entries, memoranda or notes of conversations and of meetings, studies, reports, offers, inquiries, bulletins, summaries, newsletters, compilations, charts, graphs, photographs, film, microfilm, articles, announcements, books, books of account, ledgers, vouchers, canceled checks, invoices, bills, opinions, certificates, transcripts and all other tangible things upon which any handwriting, typing, printing, drawings, representation, magnetic or electrical impulses, or other form of communication is recorded, now or at any time in your possession, custody or control, including but not limited to the originals (or any

2

copy when originals are not available) and drafts of documents and all copies that are different in any way from the original.

9.      "Electronically stored information" shall have the same meaning as in Rule 34, Federal Rules of Civil Procedure, and shall include, without limiting the generality of the foregoing, all electronic, mechanical, magnetic, or optical records or representations of any kind including, without limitation, computer files and programs, tapes, cassettes, discs, recordings, metadata, and information stored on a computer, laptop, hand-held computer device, disk, cd, dvd, and any mechanical recording or production of any oral material.

10.      "State with specificity" or "describe with specificity" means to (i) state the substance of the facts supporting your response, (ii) identify documents supporting your response, and (iii) identify all witnesses who have knowledge or information supporting your response, listing the information or knowledge that each such witness possesses.

11.      If subsequent to serving an answer to any interrogatory, you obtain or become aware of additional information pertaining to that interrogatory that renders your answer in some material respect incomplete or incorrect and the additional or corrective information has not otherwise been made known to plaintiffs during the discovery process or in writing, you shall, within ten days and in no event later than five days before trial, serve a supplemental sworn answer setting forth such information.

3

## Interrogatories

1.      Identify all entities which were granted, or had access to the Grocery Exchange or Surplus Goods Exchange, and for each identify:

   a.      The date each entity entered into any agreement(s) with Visagent;

   b.      The dates of admission of each entity to either exchange;

   c.      If the entity terminated its agreement with Visagent or its access to either exchange, the date of termination; and

   d.      All documents which evidence the foregoing.

4

2.    Describe with specificity all attempts by Visagent to recruit, sign up or otherwise enlist users for the Grocery Exchange or the Surplus Goods Exchange, including (i) any communications or correspondence to or with any potential users, (ii) any promotional or marketing materials, and (iii) your attendance at, or participation in any presentations, seminars, training sessions, or meetings.

3.    Describe with specificity all electronic and computer systems or applications, including both hardware and software, used or utilized by Visagent between January 1, 2000 and July 31, 2004, including:

a.    Any identifying nomenclature for the hardware or software, e.g. brand, name, model number, etc.;

b.    Whether such hardware or software was specially designed or created for Visagent, and, if so, by whom, and the approximate associated cost;

c.    Whether Visagent owned, leased or rented the hardware or software;

d.    The use or utilization by Visagent of the hardware of software, specifically what aspect of Visagent's business the hardware or software was used or designed to facilitate.

4.     In regard to the trade secrets referenced in Visagent's response to Debtors' initial interrogatories, number 20, describe with specificity (i) the trade secrets, (ii) Visagent's efforts to maintain the secrecy of the information, (iii) how Debtors became aware of the trade secrets, and (iv) any facts which support your contention that Debtors stole the trade secrets.

5.     Describe with specificity how Visagent determined the Grocery Exchange transaction volumes listed in Visagent's supplement answer to Debtors' initial interrogatories, number 4, including whether Visagent used any computer software or applications in the determination, and if so, what software or application, and identify by Bates Stamp range, if applicable, all documents or electronically stored information used by Visagent in the determination.

STATE OF _____     )
                             )
COUNTY OF _____      )

Before me, the undersigned authority, personally appeared _____, who, being by me first duly sworn, deposes and says that _____ is _____ of Visagent Corporation, _____ is authorized on behalf of Visagent Corporation, to execute the answers to these interrogatories and the foregoing answers to interrogatories are true and correct to the best of _____ knowledge and belief.

_____

Sworn to and subscribed before me this _____ day of _____, 2008, by _____ _____, who is known to me or who produced _____ _____ as identification.

_____
Print Name:_____
Notary Public, State and County Aforesaid
Commission No.:_____
My Commission Expires:_____

## Certificate of Service

I certify that a copy of the foregoing document was furnished by mail and/or electronically to **Guy Bennett Rubin, Esq.**, Rubin & Rubin, 110 S.W. Atlanta Avenue Stuart, Florida 34994 this 4th day of April, 2008.

_____
Attorney

00604758

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Reorganized Debtors. | ) | Jointly Administered |
| _____ | ) | |

## REORGANIZED DEBTORS' SECOND REQUEST TO
## VISAGENT CORPORATION FOR PRODUCTION OF DOCUMENTS

The Reorganized Debtors, pursuant to Rule 34, Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 9014 and Rule 7034, Federal Rules of Bankruptcy Procedure, request that Visagent Corporation produce and permit them to inspect and copy the documents specified below at the offices of Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida on May 9, 2008.

**EXHIBIT D**

## Definitions and Instructions

A.       "You," "your," "yours" and "Visagent" mean Visagent Corporation, its officers, directors, agents, servants, attorneys, employees or anyone acting on its behalf.

B.       "Debtor" or "Debtors" mean Winn-Dixie Stores, Inc. and its affiliated entities in the jointly administered bankruptcy case styled In re Winn-Dixie, Inc., et. al.; United States Bankruptcy Court, Middle District of Florida; Chapter 11; Case No. 05-03817-3F1, and the officers, directors, agents, servants, attorneys or employees thereof, and anyone acting on their behalf.

C.       "Communication" or "communications" mean every manner or means of disclosure, transfer or exchange, and every disclosure, transfer or exchange of information, whether orally or face-to-face or by telephone, mail, personal delivery, document or otherwise.

D.       "Documents" shall have the same meaning as in Rule 34, Federal Rules of Civil Procedure, and shall include, without limiting the generality of the foregoing, correspondence, contracts, agreements, leases, memoranda, notes, calendar and diary entries, memoranda or notes of conversations and of meetings, studies, reports, offers, inquiries, bulletins, summaries, newsletters, compilations, charts, graphs, photographs, film, microfilm, articles, announcements, books, books of account, ledgers, vouchers, canceled checks, invoices, bills, opinions, certificates, transcripts and all other tangible things upon which any handwriting, typing, printing, drawings, representation, magnetic or electrical impulses, or other form of communication is recorded, now or at any time in your possession, custody or control, including but not

2

limited to the originals (or any copy when originals are not available) and drafts of documents and all copies that are different in any way from the original.

      E.     "Electronically stored information" shall have the same meaning as in Rule 34, Federal Rules of Civil Procedure, and shall include, without limiting the generality of the foregoing, all electronic, mechanical, magnetic, or optical records or representations of any kind including, without limitation, computer files and programs, tapes, cassettes, discs, recordings, metadata, and information stored on a computer, laptop, hand-held computer device, disk, cd, dvd, and any mechanical recording or production of any oral material.

      F.     Produce electronically stored information in its native form (the form in which it is ordinarily maintained). For all electronically stored information, state the format (the software program or application) of the intended production.

      G.     If the document or electronically stored information does not now exist, identify the person, date, time, and manner of the disposition.

      H.     "Grocery Exchange Service Agreement" means the agreement entered into by and between Winn-Dixie Stores, Inc. and Visagent Corporation with an effective date of June 28, 2001.

      I.     "Grocery Exchange User Agreement" means the user agreement as referenced in the Grocery Exchange Service Agreement.

      J.     "Visagent Grocery Exchange" means the Visagent Grocery Exchange as referenced in the Grocery Exchange Service Agreement.

K.    "Surplus Goods Exchange User Agreement" means the user agreement entered into by and between Winn-Dixie Stores, Inc. and Visagent Corporation on or about January 1, 2003.

L.    "Surplus Goods Exchange" means the Visagent Surplus Goods Exchange referenced in the Surplus Goods Exchange User Agreement.

M.    "Outside Sales Catalog" means the Visagent Outside Sales Catalog as referenced in document Bates Stamp numbers WD453 - WD461, previously produced in this matter.

N.    The phrase "relating or referring to" means constituting, comprising, containing, consisting of, setting forth, proposing, showing, evidencing, disclosing, describing, discussing, explaining, summarizing, concerning, reflecting, authorizing, pertaining to, or mentioning, directly or indirectly.

O.    The singular includes the plural and the past tense includes the present tense, and vice versa; the words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of this request any documents which might otherwise be construed to be outside its scope; the word "all" means "any and all"; the word "any" means "any and all"; and the word "including" means "including without limitation."

P.    In response to this request, you are required to furnish all information and documents in your possession, custody or control, or in the possession, custody or control of your past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on your behalf.  This request specifically includes documents

4

in the possession, custody or control of your past or present attorneys, including in-house counsel and outside counsel.

      Q.     Pursuant to Rule 26(b)(5), Federal Rules of Civil Procedure, identify each document that you withhold from production under any claim of privilege or other immunity, and for each such document please state:

1. The date of the document;
2. The author of the document;
3. The identity of each person who received or was furnished a copy of the document;
4. The subject matter of the document; and
5. Each ground upon which the privilege is claimed.

**Documents Requested**

1.    All documents and electronically stored information relating or referring to negotiation of the Grocery Exchange Service Agreement.

2.    All documents and electronically stored information relating or referring to negotiation of the Grocery Exchange User Agreement.

3.    All documents and electronically stored information relating or referring to negotiation of the Surplus Goods Exchange User Agreement.

4.    All documents and electronically stored information relating or referring to negotiation of the Outside Sales Catalog.

5.    All documents and electronically stored information relating or referring to any efforts by Visagent to recruit, sign up or otherwise enlist users for the Grocery Exchange, including, (i) any correspondence to or with any potential users, (ii) any promotional or marketing materials, and (iii) your attendance at, or participation in any presentations, seminars, training sessions or meetings.

6.    All documents and electronically stored information relating or referring to letters of intent, contracts, confidentiality agreements, service agreements, user agreements, or other agreements by and between Visagent and any users of the Visagent Grocery Exchange.

7.    All documents and electronically stored information relating or referring to any efforts by Visagent to recruit, sign up or otherwise enlist users for the Visagent Surplus Goods, including, (i) any correspondence to or with any potential users, (ii) any promotional or marketing materials, and (iii) your attendance at, or participation in any presentations, seminars, training sessions or meetings.

8.    All documents and electronically stored information relating or referring to letters of intent, contracts, confidentiality agreements, service agreements, user agreements, or other agreements by and between Visagent and any users of the Visagent Surplus Goods Exchange.

9.    All documents and electronically stored information relating or referring to any efforts by Visagent to recruit, sign up or otherwise enlist users for the Outside Sales Catalog, including, all promotional or marketing materials, and your attendance at, or participation in any presentations, seminars, training sessions or meetings.

10.    All documents and electronically stored information relating or referring to letters of intent, contracts, confidentiality agreements, service agreements, user agreements, or other agreements by and between Visagent and users of the Outside Sales Catalog.

11.    All documents and electronically stored information relating or referring to communications between Visagent Corporation and any users of the Visagent Grocery Exchange or Surplus Goods Exchange for the period January 1, 2000 through July 31, 2004.

12.    All documents and electronically stored information relating or referring to any notice by Visagent to Winn-Dixie that Winn-Dixie was in breach of any Visagent agreements or contracts.

13.    All documents and electronically stored information relating or referring to Visagent's interpretation or subjective understanding of any of the terms

7

of the Grocery Exchange Service Agreement or the Grocery Exchange User Agreement.

  14. All documents or electronically stored information identified in your answers to Debtors' Second Set of Interrogatories.

SMITH HULSEY & BUSEY

By: _____
    Stephen D. Busey
    David L. Gay

Florida Bar Number 839221
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
dgay@smithhulsey.com

Attorneys for Reorganized Debtors

8

**<u>Certificate of Service</u>**

I certify that a copy of the foregoing document was furnished by mail and/or electronically to **Guy Bennett Rubin, Esq.,** Rubin & Rubin, 110 S.W. Atlanta Avenue Stuart, Florida 34994 this 4th day of April, 2008.

_____
Attorney

00604759

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**VISAGENT CORPORATION'S RESPONSE TO DEBTOR'S SECOND SET
OF INTERROGATORIES[1]**

Visagent Corporation responds to Winn-Dixie Stores, Inc.'s second set of interrogatories as follows:

1.    Identify all entities which were granted, or had access to the Grocery Exchange or Surplus Goods Exchange, and for each identify:

    a.    The date each entity entered into any agreement(s) with Visagent;

    b.    The dates of admission of each entity to either exchange;

    c.    If the entity terminated its agreement with Visagent or it s access to either exchange, the date of termination; and

    d.    All documents which evidence the foregoing.

ANSWER:

---

[1] VISAGENT replies to all interrogatories requesting information in support of claims made in this action with the understanding that discovery has only recently commenced and is ongoing.  VISAGENT reserves the right to supplement its responses as it receives discovery materials from Debtor and non-parties.

1

**EXHIBIT E**

| | | |
|---|---|---|
| 3-D Trading | HEB | Safeway |
| A.J.J. Distributors | Impact Food Sales, Inc | Sav-Rite |
| Acme Wholesale | Infinity Design | Sawgrass Trading |
| Alta Wholesale | Ingles Markets | Company |
| Altitude Wholesale | JBS Technology | Severn Wholesale |
| American Food Dist | JUICE PAK | Superior Wholesale |
| American Wholesale | Kayser-Roth | Superior Wholesale |
| Ampersand Trading | Corporation | Supervalu |
| ARC Trading | Kmart | International |
| Best Buy | Marcs | Supreme |
| C&S Grocery | Marcs-New England | TDMI 2 Inc. |
| C&S Metro | Market Logistics | Titan Wholesale |
| C&S Wholesale | Newport Wholesalers | Transfer Marketing |
| Capitol Investments | OS GLOBAL | Tree of Life |
| Creative Distribution | Performance | Triboro Trading |
| CVS | Wholesale | Trio Grocery |
| David E. Daprizo, Inc. | Plus Inc-Go Grocery | (Barracuda) |
| Deal Trading, Ltd | Outlet | Tri-State Trading |
| Desert Grocery | Prestige International | USI |
| Eckerd | Purity Wholesale | Value Trading |
| GDC Commodities | R & D Trading | Victory Wholesale |
| Exchange | R&S Sales | WD - Promo |
| GFR - Unimarc | Radio Shack | Wholesale Exchange |
| Giant Eagle | Rite Aid | Winn Dixie |
| Global Food | RVSD 6-30 | |
| Grocery Outlet | S & D | |

Each user agreement required each participant to execute a confidentiality agreement. Production of the actual agreements or communications with users, to the extent they exist, would be a breach of such confidentiality agreements. Visagent does not keep the dates admitted or withdrawn from its exchanges. The user agreements would "evidence the foregoing".

2.    Describe with specificity all attempts by Visagent to recruit, sign up or otherwise enlist users for the Grocery Exchange or the Surplus Goods Exchange, including (i) any communications or correspondence to or with any potential users, (ii) any promotional or marketing materials, and (iii) your attendance at, or participation in any presentations, seminars, training sessions or meetings.

ANSWER:    Objection. This interrogatory is overbroad and not reasonably calculated to lead to the discovery of admissible evidence and does not provide a time frame reference.    The inquiry is impossible to answer and any response would be

incomplete by its very nature. Notwithstanding the foregoing objection, Visagent asserts that it was part of Visagent's business to market to the entire industry in which it served. As a consequence, Visagent employed business development teams whose job was to work with Users, Non-Users and Potential Users to introduce various Visagent Products such as VGE and SGE. The alliance with the World Wide Retail Exchange was a major part of the effort but by no means the majority of the marketing effort. Marketing was chiefly run by I. Mark Rubin, President/CEO and Robert J. Warren, Executive Vice President in pursuit of thousands of companies over years of marketing efforts.

3.     Describe with specificity all electronic and computer systems or applications, including both hardware and software, used or utilized by Visagent between January 1, 2000 and July 31, 2004, including:

a.     Any identifying nomenclature for the hardware or software, e.g. brand, name, model number, etc.;

b.     Whether such hardware or software was specifically designed or created for Visagent, and, if so, by whom, and the approximate associated cost;

c.     Whether Visagent owned, leased or rented the hardware or software;

d.     The use or utilization by Visagent of the hardware of (sic) software specifically what aspect of Visagent's business the hardware or software was used or designed to facilitate.

ANSWER:     Objection.   This interrogatory is compound, overly broad and unintelligible. Notwithstanding the foregoing objection, to the extent documentation regarding the technology employed by Visagent exists, it is available for copying and inspection, and Debtor may obtain the ostensible information requested in this interrogatory from such documentation.

4.     In regard to the trade secrets referenced in Visagent's response to Debtors' initial interrogatories, number 20, describe with specificity (i) the trade secrets, (ii) Visagent's efforts to maintain the secrecy of the information, (iii) how Debtors became aware of the trade secrets, and (iv) any facts which support your contention the Debtors stole the trade secrets.

ANSWER:

(i)     Visagent's trade secrets appropriated by Debtors consisted of proprietary information, including formulas, patterns, compilations, programs, devices, methods, techniques, and processes in the development of unique technology for product matching and data mining for the use in secondary source markets that was not generally known to the industry.

(ii)    Visagent and WD signed a letter of intent, confidentiality agreement, contract and user agreement which provided for confidentiality, which were similarly executed by any of Debtors' potential trade partners.  Additionally, information regarding Visagent's trade secrets was only communicated subsequent to the execution of the confidentiality agreement.

(iii)    WD became aware of Visagent's trade secrets through training sessions, marketing materials "how to" guides, conversations with Visagent representatives and Visagent generated documents.

(iv)    Debtor secured Visagent's trade secret information over a period of six (6) to eight (8) months during negotiations to enter into a contract for the Outside Sales Catalog.  Debtor obtained this information under false pretenses, never intending to enter into a binding written contract for Visagent's services, but instead intended to co-opt Visagent's trade secrets.

     5.    Describe with specificity how Visagent determined the Grocery Exchange volumes listed in Visagent's supplement answer to Debtors' initial interrogatories, number 4, including whether Visagent used any computer software or applications in the determination, and if so, what software or application, and identify by Bates Stamp range, if applicable, all documents or electronically stored information used by Visagent in the determination.

     ANSWER:    Visagent's calculations were made from the documents previously produced to Debtors and its own analysis of such documents is  protected by the attorney-client and work-product privileges.   Debtor can reasonably ascertain the same information as Claimants from the information produced.

**AS TO OBJECTIONS:**

GUY BENNETT RUBIN, ESQUIRE
Florida Bar No.: 691305
Rubin & Rubin
P.O. Box 395
Stuart, FL 34995
(772) 283-2004
(772) 283-2009 (facsimile)

## CERTIFICATE OF SERVICE

I certify that a true copy was sent via U.S. Mail and via electronic filing to counsel for the Debtor this /2 day of May___, 2008.

GUY BENNETT RUBIN, ESQUIRE
Florida Bar No.: 691305
Rubin & Rubin
P.O. Box 395
Stuart, FL 34995
(772) 283-2004
(772) 283-2009 (facsimile)
Attorney for Plaintiff

Copy furnished to:

Stephen D. Busey
James H. Post
Cynthia C. Jackson
**Smith Hulsey & Busey**
225 Water Street
Suite 1800
Jacksonville, FL 32202
Tel: (904) 359-7700
Fax: (904) 359-7708

5

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

IN RE:                                  )          CASE NO.: 05-03817-3F1
                                        )
WINN-DIXIE STORES, INC. et al  )          Chapter 11
                                        )
Debtors.                           )          Jointly Administered

## VISAGENT CORPORATION'S RESPONSE TO DEBTOR'S SECOND REQUEST FOR PRODUCTION

Visagent Corporation responds to Winn-Dixie Stores, Inc.'s Second Request to Produce as follows:

General Objections:

Visagent objects to each of the requests as overly broad and further objects to the extent any request seeks privileged attorney-client or attorney work-product materials and material covered by confidentiality agreements.  Visagent further objects to the definitions and instructions in the preface to the request for production as overly broad and inconsistent with the requirements of the Federal Rules of Civil Procedure.

General Notes:

Visagent will make documents available for inspection and copying at 520 South Federal Highway, Stuart, Fl 34995.  Each of the numbered paragraphs below, correspond to the same numbered request in Debtor's Second Request For Production.

**DOCUMENT REQUEST NO. 1:**   All documents and electronically stored information relating or referring to negotiation of the Grocery Exchange Service Agreement.

OBJECTION:        The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.

RESPONSE:        To the extent that Claimants have produced "all documents evidencing, relating to or referring to communication between Visagent and the Debtors

1

**EXHIBIT F**

for the period January 1, 2001 to August 31, 2004" (Debtors' First Request for Production No. 11), Claimants have produced responsive documents to this request.

**DOCUMENT REQUEST NO. 2.:**  All documents and electronically stored information relating or referring to the negotiation of the Grocery Exchange User Agreement.

OBJECTION:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.

RESPONSE:  To the extent that Claimants have produced "all documents evidencing, relating to or referring to communication between Visagent and the Debtors for the period January 1, 2001 to August 31, 2004" (Debtors' First Request for Production No. 11), Claimants have produced responsive documents to this request.

**DOCUMENT REQUEST NO. 3:**  All documents and electronically stored information relating or referring to negotiation of the Surplus Goods Exchange.

OBJECTION:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.

RESPONSE:  To the extent that Claimants have produced "all documents evidencing, relating to or referring to communication between Visagent and the Debtors for the period January 1, 2001 to August 31, 2004" (Debtors' First Request for Production No. 11), Claimants have produced responsive documents to this request.

**DOCUMENT REQUEST NO. 4:**  All documents and electronically stored information relating or referring to negotiation of the Outside Source Catalog.

OBJECTION:  The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.

RESPONSE:  To the extent that Claimants have produced "all documents evidencing, relating to or referring to communication between Visagent and the Debtors

2

for the period January 1, 2001 to August 31, 2004" (Debtors' First Request for Production No. 11), Claimants have produced responsive documents to this request. See previously produced documents WD V-011993-012013, WD V-012226, WD-00452-00472, WD 00619-30, WD00450-1, WD 00450 – WD 20521 and WD 00583-86.

**DOCUMENT REQUEST NO. 5:** All documents and electronically stored information relating or referring to any efforts by Visagent to recruit, sign up or otherwise enlist users for the Grocery Exchange, including (i) any correspondence to or with any potential users, (ii) any promotional or marketing materials, and (iii) your attendance at, or participation in any presentations, seminars, training sessions or meetings.

OBJECTION:        The request is overly broad, vague and does not provide a time frame for reference. As phrased, the request is not calculated to lead to the discovery of admissible evidence. Moreover, like Debtors, every user on the Grocery Exchange signed a confidentiality agreement which prohibits their disclosure.

**DOCUMENT REQUEST NO. 6:** All documents and electronically stored information relating or referring to letters of intent, contracts, confidentiality agreements, service agreements, user agreements, or other agreements by and between Visagent and any users of the Visagent Grocery Exchange.

OBJECTION:        The request is overly broad, vague and does not provide a time frame for reference. As phrased, the request is not calculated to lead to the discovery of admissible evidence. Moreover, like Debtors, every user on the Grocery Exchange signed a confidentiality agreement which prohibits their disclosure.

**DOCUMENT REQUEST NO. 7:** All documents and electronically stored information relating to any efforts by Visagent to recruit, sign up or otherwise enlist users for the Visagent Surplus Goods Exchange, including (i) any correspondence to or with any potential users, (ii) any promotional or marketing materials, and (iii) your attendance at, or participation in any presentation, seminars, training sessions or meetings.

OBJECTION:        The request is overly broad, vague and does not provide a time frame for reference. As phrased, the request is not calculated to lead to the discovery of

3

admissible evidence. Moreover, like Debtors, every user on the Grocery Exchange signed a confidentiality agreement which prohibits their disclosure.

**DOCUMENT REQUEST NO. 8:**   All documents and electronically stored information relating or referring to letters of intent, contracts, confidentiality agreements, service agreements, user agreements, or other agreements by and between Visagent and any users of the Visagent Surplus Goods Exchange.

OBJECTION:          The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence. Moreover, like Debtors, every user on the Grocery Exchange signed a confidentiality agreement which prohibits their disclosure.

**DOCUMENT REQUEST NO. 9:**   All documents and electronically stored information relating and referring to any efforts by Visagent to recruit, sign up or otherwise enlist users for the Outside Sales Catalog, including, all promotional or marketing materials, and your attendance at, or participation in any presentations, seminars, training sessions or meetings.

OBJECTION:          The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence. Moreover, like Debtors, every user for the Outside Sales Catalog signed a confidentiality agreement which prohibits their disclosure.

**DOCUMENT REQUEST NO. 10:**  All documents and electronically stored information relating or referring to letters of intent, contracts, confidentiality agreements, service agreements, user agreements, or other agreements by and between Visagent and users of the Outside Sales Catalog.

OBJECTION:          The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence. Moreover, like Debtors, every user for the Outside Sales Catalog signed a confidentiality agreement which prohibits their disclosure.

**DOCUMENT REQUEST NO. 11:** All documents and electronically stored information relating or referring to communications between Visagent Corporation and any users of the Visagent Grocery Exchange or Surplus Goods Exchange for the period January 1, 2000 through July 31, 2004.

OBJECTION:        The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence

**DOCUMENT REQUEST NO. 12:** All documents and electronically stored information relating or referring to any notice by Visagent to Winn-Dixie that Winn-Dixie was in breach of any Visagent agreements or contracts.

RESPONSE:  To the extent complaints by Visagent regarding noncompliance with the Service Agreement were communicated to Debtor, such documents have already been produced.

**DOCUMENT REQUEST NO. 13:** All documents and electronically stored information relating or referring to Visagent's interpretation or subjective understanding of any of the terms of  the Grocery Exchange Service Agreement or the Grocery Exchange User Agreement.

OBJECTION:        The request is overly broad, vague and does not provide a time frame for reference.  As phrased, the request is not calculated to lead to the discovery of admissible evidence.  To the extent the request relates to the time frame post expiration of the Service Agreement, the request calls for the production of documents protected by the attorney-client and work-product privileges.

**DOCUMENT REQUEST NO. 14:** All documents or electronically stored information identified in your answers to Debtors' Second Set of Interrogatories.

RESPONSE: To the extend the Visagent has identified documents responsive to Debtors' Second Set of Interrogatories, said documents are available for inspection at the law office of undersigned counsel.

**AS TO OBJECTIONS:**

GUY BENNETT RUBIN, ESQUIRE
Florida Bar No.: 691305
Rubin & Rubin
P.O. Box 395
Stuart, FL 34995
(772) 283-2004
(772) 283-2009 (facsimile)

## CERTIFICATE OF SERVICE

I certify that a true copy was sent via U.S. Mail and via electronic means to counsel for the Debtor this ___ day of May, 2008.

GUY BENNETT RUBIN, ESQUIRE
Florida Bar No.: 691305
Rubin & Rubin
P.O. Box 395
Stuart, FL 34995
(772) 283-2004
(772) 283-2009 (facsimile)
Attorney for Plaintiff

Copy furnished to:

Stephen D. Busey
James H. Post
Cynthia C. Jackson
**Smith Hulsey & Busey**
225 Water Street
Suite 1800
Jacksonville, FL 32202
Tel: (904) 359-7700
Fax: (904) 359-7708

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement is entered into by and between Winn-Dixie Stores, Inc. a Florida corporation, and Visagent Corporation, a Florida Corporation [collectively, the parties].

### BACKGROUND FACTS

A.      Each of the parties is engaged in business and has entered into, or wishes to consider entering into, a business relationship with the other.

B.      For this purpose, each of the parties may wish to exchange with the other certain information which such party has determined to be confidential and valuable to its business.

C.      In order to permit the parties to exchange such information as may be desirable and in consideration of the mutual covenants expressed below, the parties agree as follows:

1.      (a) As used in this Agreement, the term "Confidential Information" shall mean any information which is disclosed by one party (the "Disclosing Party") to the other (the "Receiving Party") in writing and designated as confidential, or which is disclosed orally and confirmed in a writing designated as confidential within thirty (30) days of its oral disclosure. The term also includes any material in any form prepared by or on behalf of the Receiving Party containing, or based upon, the Confidential Information. In the event of a visit by any individual on behalf of either party to an office or facility of the other, any information which becomes available by observation during such visit shall also be considered Confidential Information.

(b) Confidential Information shall not include:

(i) information which is known to the Receiving Party at the time of disclosure pursuant to this agreement, or which, as shown by its records, is independently developed by the Receiving Party;

(ii) information which is or comes into the public domain through no fault of the Receiving Party, and

(iii) information which is acquired from a third party who had the legal right to make the disclosure to the Receiving Party.

2.      The Receiving Party shall exercise the same standard of care to protect the confidentiality of the Confidential Information as it exercises to protect its own information that it considers confidential. The Receiving Party shall not use the Confidential Information for any purpose other than in furtherance of the actual or potential business relationship between the parties.

**EXHIBIT G**

WD0000004025

Multi-Purpose Confidentiality Agreement
Visagent/Winn Dixie Stores, Inc.
Page 2 of 4

3.  The Receiving Party shall only provide access to the Confidential Information to those of its employees, agents, and other representatives (the "Representatives"), and any related entities ("Affiliates") who need to know the Confidential Information and who are obligated to comply with this Agreement. The Receiving Party shall inform all such Representatives and Affiliates of their obligations under this Agreement and shall be liable for any breach of this Agreement by them. The Receiving Party shall promptly notify the Disclosing Party in writing of any disclosure of Confidential Information to an Affiliate. As used in this Agreement, "Affiliate" shall mean any person or entity which, through direct or indirect ownership of a majority of the voting stock or similar ownership interests therein, controls, is controlled by, or is under common control with, any party to this Agreement.

4.  Neither party shall disclose to any third party that it is working with the other party without express written permission from the other and each party shall take all necessary steps and precautions to prevent any third party from gaining knowledge of their actual business relationship.

5.  The Receiving Party shall indemnify and hold the Disclosing Party harmless from and against any and all losses, damages, suits, expenses (including, without limitation, reasonable attorneys' fees, paralegals' fees, investigation fees and costs) incurred in connection with any disclosure or use of the Confidential Information contrary to this Agreement provided that no party shall be liable for consequential or incidental damages.

6.  All tangible forms of the Confidential Information, including, but not limited to, writings, disks, tapes, photographs, prototypes, samples, and models are the property of the Disclosing Party. Within sixty (60) days of written notification by the Disclosing Party, the Receiving Party shall return to the Disclosing Party all such tangible forms incorporating Confidential Information in the Receiving Party's possession. One copy of any such tangible form of the Confidential Information may be retained by the Receiving Party's inside or outside counsel, or by a third party fiduciary on behalf of the Receiving Party, but only to enable the Receiving Party to ascertain its rights and obligations in the event of dispute under this Agreement.

7.  Each of the parties hereto agrees that money damages may not be adequate remedy for any breach of this Agreement, and that in addition to all other remedies, the non-breaching party shall be entitled to specific performance of this Agreement and injunctive or other equitable relief, without surety, to prevent any breach or threatened breach hereof, but such relief shall be awarded by the court only upon a showing that the elements necessary to obtain the same under applicable law have been proved.

WD0000004026

Multi-Purpose Confidentiality Agreement
Visagent/Winn Dixie Stores, Inc.
Page 3 of 4

8.    In the event that this Agreement is executed in connection with a visit by an individual to an office or facility of one f the parties to this Agreement, the individual signing below acknowledges that he or she is a Representative of a Receiving Party and agrees to be bound by the provisions hereof.

9.    No failure or delay by either party in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial waiver operate to preclude any other or further exercise thereof or the exercise of any other right under this Agreement.

10.    Each party acknowledges that the other party may be engaged in research and development and that it is possible that the same may lead to information similar or substantially similar to information disclosed pursuant to this Agreement. This Agreement is not intended to restrict the disclosure or use of any such information provided.

11.    Except to the extent expressly provided in this Agreement or by applicable law, nothing in this Agreement is intended to transfer, restrict, or otherwise affect the respective copyright, patent, trademark, or other intellectual property rights of the parties to this Agreement in respect of any Confidential Information.

12.    Neither party represents or warrants the accuracy or completeness of any Confidential Information.

13.    Neither party shall be obligated by this Agreement to enter into any further agreement, nor shall any commitment, undertaking, or other obligation of any nature whatever be implied by this Agreement, unless and until a duly authorized written agreement has been executed and delivered by both parties to this Agreement.

14.    Except for subsequent written agreements which make specific reference to this Agreement, this Agreement represents the only and entire agreement and understanding between the parties with respect to the subject matter of this Agreement, and supersedes all prior negotiations, representations, and agreements made by the parties with respect to the subject matter of this Agreement. This Agreement may be amended, superseded, or canceled only by a written instrument executed by each of the parties. No Representative of either party is authorized to modify or supersede this Agreement orally. In the event of a conflict between this Agreement and any other prior, contemporaneous, or subsequent agreement between the parties which does not make specific reference to this Agreement, this Agreement shall govern and control.

WD0000004027

Multi-Purpose Confidentiality Agreement
Visagent/Winn Dixie Stores, Inc.
Page 4 of 4

15.    This Agreement shall be for a term that expires three (3) years after the last party to sign this Agreement executes the same.

16.    Each party represents that the individual executing this Agreement on its behalf is properly authorized and empowered to do so.

(Each party represents it has all requisite legal power and authority and has taken all action necessary or appropriate to enter into this agreement and that its representative executing this agreement is duly empowered to do so.)

17.    Regardless of which party shall last sign this contract or where it shall be signed, this contract and all renewals and extensions thereof shall be deemed to have been made in Jacksonville, Florida, and the laws of Florida shall in all respects govern the validity, construction and enforcement of the contract and the rights and liabilities of the parties.

ABOVE AGREED TO AND ACCEPTED:

Visagent Corporation

Signed: _____
                I. Mark Rubin
                Chief Executive Officer
Date: _7/24/01_____

ABOVE AGREED TO AND ACCEPTED:

Winn-Dixie Stores, Inc.

By: _____
                Philip Payment
                Vice President, Central Procurement

Date: _____

WD0000004028