**TAB 1**

Westlaw.

267 B.R. 882                                                                                                    Page 1
267 B.R. 882, 47 Collier Bankr.Cas.2d 89, 14 Fla. L. Weekly Fed. B 381
**(Cite as: 267 B.R. 882)**

**H**
In re Hillsborough Holdings Corp.
Bkrtcy.M.D.Fla.,2001.

United States Bankruptcy Court,M.D. Florida,
Tampa Division.
In re HILLSBOROUGH HOLDINGS CORPORA-
TION, et al., Debtors.
Salvador and Rosalie Cavazos, et al., Plaintiffs,
v.
Mid-State Trust II, et al., Defendants.
**Bankruptcy Nos. 89-9715-9P1 to 89-9746-8P1,
90-1197-8P1.
Adversary No. 00-500.**

Sept. 28, 2001.

Homeowners sued to recover under Texas Finance
Code, based on manner in which finance charges on
their mortgages were reported by debtors to the In-
ternal Revenue Service (IRS). Following removal
of action to Bankruptcy Court, homeowners moved
to remand, and debtors moved to dismiss or for
entry of summary judgment in their favor. The
Bankruptcy Court, Michael G. Williamson, J., held
that: (1) bankruptcy court had continuing, postcon-
firmation jurisdiction over removed claims; (2)
claims were barred both by entry of order of dis-
charge and by terms of settlement agreement; (3)
prior bankruptcy court order dismissing with preju-
dice claims which homeowners had asserted under
Texas Finance Code, following bankruptcy court's
approval of global settlement between parties, was
entitled to res judicata effect; (4) homeowners
could not rely on continuing violation theory to
avoid limitations problems; and (5) debtors' use of
straight-line method to report, to Internal Revenue
Service (IRS), finance charges on homeowners'
mortgages was not "charge," for which debtors
could be liable to homeowners under Texas Finance
Code.

Motion to remand denied; motion for summary
judgment granted.

West Headnotes

**[1] Bankruptcy 51 €=3570**

51 Bankruptcy
  51XIV Reorganization
    51XIV(B) The Plan
      51k3570 k. Execution and Performance.
Most Cited Cases
Bankruptcy court had continuing, postconfirmation
jurisdiction over removed claims, where, based on
allegations in original complaint at time of removal,
these claims were based on settlement agreement
approved by bankruptcy court, and where, even
after complaint was amended, issues to be decided
still turned on interpretation of settlement agree-
ment and on whether any liability alleged by
claimants had been discharged in bankruptcy.

**[2] Removal of Cases 334 €=107(7)**

334 Removal of Cases
  334VII Remand or Dismissal of Case
    334k107 Proceedings for Remand and Re-
view Thereof
      334k107(7) k. Evidence. Most Cited Cases
Defendant removing case to federal court has bur-
den of proving jurisdiction.

**[3] Federal Courts 170B €=247**

170B Federal Courts
  170BIII Federal Question Jurisdiction
    170BIII(E) Evidence and Determination
      170Bk247 k. In General. Most Cited Cases
Federal court's jurisdiction may not be frustrated by
dismissal of claims or causes of action that form
basis for federal jurisdiction.

**[4] Bankruptcy 51 €=3570**

51 Bankruptcy
  51XIV Reorganization

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 B.R. 882

Page 2

267 B.R. 882, 47 Collier Bankr.Cas.2d 89, 14 Fla. L. Weekly Fed. B 381

**(Cite as: 267 B.R. 882)**

51XIV(B) The Plan
    51k3570 k. Execution and Performance.
Most Cited Cases
Bankruptcy courts retain continuing, postconfirmation jurisdiction over execution, implementation, or interpretation of confirmed Chapter 11 plan.

**[5] Bankruptcy 51 ☜3570**

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3570 k. Execution and Performance.
Most Cited Cases
Mere fact that Chapter 11 plan has been implemented does not necessarily mean that there is nothing for bankruptcy court to interpret, so as to mark end of court's continuing, postconfirmation jurisdiction.

**[6] Federal Courts 170B ☜25**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk20 Ancillary and Incidental Jurisdiction
                170Bk25 k. Enforcement of Judgment or Decree. Most Cited Cases
All federal courts possess ancillary jurisdiction to enforce and interpret settlement agreements entered before them and approved by them.

**[7] Bankruptcy 51 ☜2081**

51 Bankruptcy
    51I In General
        51I(D) Venue; Personal Jurisdiction
            51k2081 k. In General. Most Cited Cases
By filing claims in Chapter 11 case, claimants submitted themselves to jurisdiction of bankruptcy court.

**[8] Compromise and Settlement 89 ☜11**

89 Compromise and Settlement
    89I In General
        89k10 Construction of Agreement

            89k11 k. In General. Most Cited Cases
Settlement agreements are to be interpreted and governed by law of contracts.

**[9] Bankruptcy 51 ☜3032.1**

51 Bankruptcy
    51IX Administration
        51IX(A) In General
            51k3032 Compromises
                51k3032.1 k. In General. Most Cited Cases

**Bankruptcy 51 ☜3411**

51 Bankruptcy
    51X Discharge
        51X(E) Effect of Discharge
            51k3411 k. In General. Most Cited Cases
Claims asserted by homeowners under the Texas Finance Code, based on manner in which finance charges on their mortgages were reported by debtors to the Internal Revenue Service (IRS), were prepetition claims, based on reporting method which debtors had employed from outset of loans, and were thus barred both by entry of order of discharge and by terms of settlement agreement and releases which homeowners had executed in favor of debtors, and which purported to release debtors from all liability on any causes of action that could have been asserted against them by homeowners in adversary proceedings brought in bankruptcy court. Bankr.Code, 11 U.S.C.A. §§ 524, 1141(d)(1)(A); V.T.C.A., Finance Code § 349.002.

**[10] Judgment 228 ☜570(1)**

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
        228XIII(A) Judgments Operative as Bar
            228k570 Judgment on Discontinuance, Dismissal, or Nonsuit
                228k570(1) k. In General. Most Cited Cases

**Judgment 228 ☜588**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 B.R. 882
267 B.R. 882, 47 Collier Bankr.Cas.2d 89, 14 Fla. L. Weekly Fed. B 381
(Cite as: 267 B.R. 882)

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
       228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded
          228k588 k. Grounds of Action or Recovery. Most Cited Cases
Prior bankruptcy court order dismissing with prejudice claims which homeowners had asserted under Texas Finance Code, following bankruptcy court's approval of global settlement between homeowners and debtors, was entitled to res judicata effect, and barred homeowners from later seeking to recover under the Texas Finance Code based upon manner in which finance charges on their mortgages were reported by debtors to the Internal Revenue Service (IRS), though homeowners' original claims under Texas Finance Code did not specifically mention debtors' reporting to IRS. V.T.C.A., Finance Code § 349.002.

[11] Judgment 228 ☞584

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
       228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded
          228k584 k. Nature and Elements of Bar or Estoppel by Former Adjudication. Most Cited Cases
Doctrine of res judicata or claim preclusion bars the filing of claims which were raised or could have been raised in earlier proceeding.

[12] Judgment 228 ☞540

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
       228XIII(A) Judgments Operative as Bar
          228k540 k. Nature and Requisites of Former Recovery as Bar in General. Most Cited Cases
Res judicata or claim preclusion applies to order or judgment when four conditions are satisfied: (1)

there must be final judgment on merits; (2) that was rendered by court of competent jurisdiction; (3) parties (or those in privity with them) must be identical in both suits; and (4) same cause of action must be involved.

[13] Judgment 228 ☞585(2)

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
       228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded
          228k585 Identity of Cause of Action in General
             228k585(2) k. What Constitutes Identical Causes. Most Cited Cases
As general rule, fourth requirement for application of res judicata, that there must be identity of causes of action, is satisfied when both cases arises out of same nucleus of operative facts, or are based on same factual predicate.

[14] Limitation of Actions 241 ☞58(1)

241 Limitation of Actions
    241II Computation of Period of Limitation
       241II(A) Accrual of Right of Action or Defense
          241k58 Liabilities Created by Statute
             241k58(1) k. In General. Most Cited Cases
Statute of limitations on cause of action under the Texas Finance Code, based on manner in which debtors had reported finance charges on homeowners' mortgages to the Internal Revenue Service (IRS), was not restarted upon execution of modification and extension agreements, where debtors had consistently reported charges in same manner from date that original contracts were signed. V.T.C.A., Finance Code § 349.492.

[15] Limitation of Actions 241 ☞58(1)

241 Limitation of Actions
    241II Computation of Period of Limitation

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

241II(A) Accrual of Right of Action or Defense

241k58 Liabilities Created by Statute

241k58(1) k. In General. Most Cited Cases

Homeowners could not rely on continuing violation theory, in order to assert claims under Texas Finance Code based on manner in which debtors had consistently reported finance charges to the Internal Revenue Service (IRS) in connection with contracts executed outside relevant limitations period; new violation did not occur, for limitations purposes, from each new event connected with loan transaction. V.T.C.A., Finance Code § 349.492.

**[16] Usury 398 ☜16**

398 Usury
398I Usurious Contracts and Transactions
398I(A) Nature and Validity
398k16 k. Nature and Subject-Matter of Transaction in General. Most Cited Cases
Debtors' use of straight-line method to report, to the Internal Revenue Service (IRS), finance charges on homeowners' mortgages did not constitute a "charge," for which debtors could be held liable to homeowners under Texas Finance Code for allegedly "contracting for, charging, or receiving interest, time price differential, or other charges greater than" those permitted by Code; debtors' reports to IRS were not directed to homeowners and did not seek anything from them. V.T.C.A., Finance Code § 349.002.

**[17] Usury 398 ☜31**

398 Usury
398I Usurious Contracts and Transactions
398I(A) Nature and Validity
398k30 Sales or Exchanges of Property
398k31 k. In General. Most Cited Cases
Provision of Texas Finance Code which regulates charges under retail installment contracts did not apply to contracts involving purchase of repossessed houses and real property. V.T.C.A., Finance Code § 349.002.

*884 Abraham Moss, Corpus Christi, TX, W. Keith Fendrick, Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, FL, for plaintiffs.
Larry Hyden, Jordan, Hyden, Womble & Culbreth, P.C., Corpus Christi, TX, Don M. Stichter, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for defendants.

*Memorandum Decision and Order on Plaintiffs' Motion to Remand, Defendants' Motion to Dismiss for Failure to State a Claim, and Defendants' Motion for Summary Judgment*

MICHAEL G. WILLIAMSON, Bankruptcy Judge.
THIS CASE came on for hearing on February 21, 2001 ("Hearing"), on the following motions: (1) Motion to Remand filed by Salvador and Rosalie Cavazos *et al.* ("Plaintiffs") (Doc. No. 37)("Remand Motion"); (2) the Motion to Dismiss for Failure to State a Claim filed by Mid-State Trust II ("Trust II"), Jim Walter Homes, Inc. ("JWH"), Mid-State Homes, Inc. ("MSH") (collectively, "Defendants") (Doc. No. 102) ("Motion to Dismiss") and (3) the Defendants' Motion for Summary Judgment (Doc. No. 106) ("Motion for Summary Judgment").

The court has considered the entire record, including the parties' briefs and argument of counsel, the affidavits and exhibits that are part of the record in this proceeding, and the other filings with the court.

For the reasons set forth below, the court will deny Plaintiffs' Remand Motion and grant Defendants' Motion for Summary Judgment.

*Procedural Background*

Defendants, with the exception of Trust II, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on December 27, 1989 and continued as debtors-in-possession-they managed and operated their businesses-pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 B.R. 882
267 B.R. 882, 47 Collier Bankr.Cas.2d 89, 14 Fla. L. Weekly Fed. B 381
**(Cite as: 267 B.R. 882)**

Trust II is a Delaware business trust established by MSH. MSH assigned *885 notes and mortgages to Trust II, which in turn issued public mortgage-backed notes. MSH is the sole beneficiary of Trust II.[FN1] *See In re Hillsborough Holdings Corp.,* 146 B.R. 1015, 1018 (Bankr.M.D.Fla.1992)( "*HHC*").

> FN1. While Trust II was not a Debtor, it was a named defendant in the adversary proceedings filed by the Plaintiffs in the bankruptcy cases.

JWH is in the business of constructing semi-finished homes and MSH services all mortgages by JWH. *See In re Hillsborough Holdings Corp.,* 144 B.R. 920, 921 (Bankr.M.D.Fla.1992)("*HHC2* "). Finance charges on the mortgages generated are reported to the Internal Revenue Service ("IRS") using the straight-line method of accounting. *Id.* at 922. During the bankruptcy case, the IRS challenged such use of the straight-line method with respect to the sale of repossessed homes (conceding that the method was appropriate for new homes). *Id.* at 923. This court ruled that the use of the straight-line method was appropriate for repossessed homes. *Id.* Plaintiffs do not dispute that this is the method of accounting used by Defendants in reporting to the IRS since as early as approximately 1965.

During the pendency of Defendants' bankruptcy cases, Plaintiffs were party plaintiffs in certain adversary proceedings filed in this court-Adversary Proceeding Nos. 91-630, 93-16, 93-25, 93-52, 93-57, 93-61, 93-207 93-371 and 93-847-in which the Defendants and others were the named party defendants.

Additionally, many, if not most, of the Plaintiffs also filed proofs of claims in Defendants' bankruptcy cases.

On May 16, 1995, the Plaintiffs and Defendants entered into a settlement agreement ("Settlement Agreement") to resolve and settle Plaintiffs' claims arising from the nine adversary proceedings

pending before the court and certain other suits pending before various state courts.[FN2] The Settlement Agreement was approved by this court by order dated July 13, 1995.

> FN2. *Exhibit "A"* to Defendants' Motion for Summary Judgment.

Pursuant to the Settlement Agreement, the Defendants and each of the Plaintiffs entered into Modification and Extension Agreements dated May 17, 1995 ("Modification and Extension Agreements"). Additionally, as part of the Settlement Agreement, the various adversary proceedings filed by the Plaintiffs were dismissed with prejudice.[FN3]

> FN3. Further, the Plaintiffs in Adversary Proceedings Nos. 91-371, 91-630 and 93-847 entered into a Third Stipulated Judgment on September 25, 1996, in which the court ordered these proceedings dismissed with prejudice. *See, e.g.,* Doc. No. 1552 in Adversary Proceeding No. 91-371. Additionally, in this set of adversary proceedings, this court entered a Third Stipulated Findings of Facts and Conclusions of Law on October 16, 1996, finding that there was no wrongdoing by the Defendants in their collection of the accounts, and in "all claims or causes of action asserted by the Homeowners in any of their pending lawsuits or claims." *See, e.g.,* Doc. No. 1551 in Adversary Proceeding No. 91-371.
>
> Similarly, Adversary Proceeding Nos. 93-207, 93-847 and 91-630 were dismissed with prejudice. *Doc. No. 17 in Adv. Pro. No. 93-207; Doc. No. 152 in Adv. Pro. No. 93-847; and Doc. No. 48 in Adv. Pro. No. 91-630.*

Paragraph D of the Settlement Agreement defines the "Claims" (subject to the Settlement Agreement) very broadly to include all litigation pending before state courts and adversary proceedings before this court as well as:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

assertions of allegedly recompensable damages made by one or more Homeowners against one or more of the Mid-State Parties arising out of or relating to the sale, construction, *financing* and/or *documentation* of houses originally constructed*886 by JWH or *arising out of the collection of indebtedness incurred in connection therewith, regardless of the manner of the assertion thereof, including, but not limited to, all such potential assertions in existence on the Closing Date that have not been filed or included in any pending proceeding, but which could have been asserted* .... (emphasis added).

Settlement Agreement at 2.

Paragraph 23(8) provided that this court retain jurisdiction for the purposes of interpretation and enforcement of the Settlement Agreement:

The parties hereto agree to request the U.S. Bankruptcy Court for the Middle District of Florida, Tampa Division, to retain jurisdiction for the purpose of the interpretation and enforcement of the provisions of this Agreement and for the disposition of any Claims which are not settled pursuant to this Agreement....

Paragraph 28 also contains substantially similar language as in paragraph 23(8), which is quoted above. Paragraph 24 states that "[t]his Agreement shall be governed by the laws of the State of Florida."

Paragraph 16 of the Settlement Agreement further provided for the execution of releases by the Plaintiffs to the Defendants resolving all claims that were or could have been asserted ("Releases"). Specifically, paragraph 4 of the Releases states that "the undersigned (and assigns) fully, finally and forever release, acquit and discharge" the Defendants (among other parties) and successors (defined in the Releases as "Mid-State Parties"), employees, etc ...

from and against any and all claims, debts, de-

mands, liabilities or causes of action of every kind, character and nature, including claims for any of the Mid-State Parties from the beginning of time to the date hereof, arising out of or in any manner related to (i) the ... financing of the house constructed by Jim Walter Homes, Inc. and/or Mid-State Homes, Inc., ... including but not limited to, any of the documents pertaining to the ... financing ... and ... all claims or causes of action asserted by or *which could have been asserted by* the undersigned in any of the pending lawsuits or Claims .... (emphasis added).

The Releases also provided that the signatories "fully and completely indemnify and hold harmless each of the Mid-State Parties...." *Release at ¶ 5.*

The plan of reorganization was confirmed by order of this court dated March 2, 1995.

On July 30, 1999, Plaintiffs filed their original petition ("Original Complaint") in Jim Wells County, Texas. The Original Complaint alleged breach of the Settlement Agreement and violations of the Texas Finance Code. The Original Complaint specifically referenced the Modification and Extension Agreements and Releases as the basis for the alleged violations of the Texas Finance Code. In Defendants' original answer, they raised affirmative defenses which are essentially premised on Defendants' bankruptcy-for example: (1) any cause of action by Plaintiffs has been discharged by the plan of reorganization; (2) all these alleged claims were settled as part of the Settlement Agreement; and (3) related doctrines such as "release" and "accord and satisfaction."

On August 20, 1999, Defendants removed the litigation to the Bankruptcy Court for the Southern District of Texas (the "Texas Bankruptcy Court") pursuant to 28 U.S.C. §§ 1441(b) and 1452(a). Removal was premised upon: (1) the complete diversity of citizenship between Defendants and Plaintiffs [FN4]; (2) the causes of *887 action which arose from the Settlement Agreement; and (3) the affirmative defenses asserted by the Defendants which arise from

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 B.R. 882
267 B.R. 882, 47 Collier Bankr.Cas.2d 89, 14 Fla. L. Weekly Fed. B 381
(Cite as: 267 B.R. 882)

Page 7

bankruptcy law.

> FN4. A federal district court has original "diversity" jurisdiction where the suit is between citizens of different states and the amount of controversy exceeds $75,000, exclusive of costs and interest. Plaintiffs did not contest diversity nor that the damages they seek are in excess of $75,000.

On September 1, 1999, Defendants filed a motion in the Texas Bankruptcy Court seeking to transfer venue of this lawsuit to this court. In response, Plaintiffs filed an objection to jurisdiction and the Remand Motion arguing, *inter alia,* that the claims alleged in the Original Complaint arose after the effective date of the Settlement Agreement.

After a hearing, on February 22, 2000, the Texas Bankruptcy Court entered an order that granted Defendants' motion to transfer venue to this court. Plaintiffs filed a notice of appeal of this order on February 23, 2000, and on February 25, 2000, they filed "Plaintiffs' Motion for Leave to File Notice of Appeal." The United States District Court for the Southern District of Texas ("Texas District Court") entered an order denying Plaintiffs' motion. Thereupon, the adversary proceeding was transmitted to this court on August 9, 2000.

Plaintiffs filed their Motion to Re-transfer and Memorandum of Law in Support Thereof (Doc. No. 96) ("Motion to Re-transfer") with this court. On September 19, 2000, this court held a hearing on the Motion to Re-transfer. Plaintiffs conceded that the litigation challenged the validity of the Settlement Agreement and indicated their desire to amend their petition. By order dated October 5, 2000, this court denied the Motion to Re-Transfer without prejudice (Doc. No. 98).

On October 25, 2000, Plaintiffs filed their Second Amended Petition (Doc. No. 99)("Second Amended Complaint"). In response, Defendants filed their Motion to Dismiss on December 5, 2000, as well as their First Amended Answer to the Second Amended Complaint. Three days later, on December 8, 2000, Defendants filed their Motion for Summary Judgment.[FN5]

> FN5. Fed.R.Civ.P. 12(b) (made applicable to this proceeding by Fed. R. Bankr.P. 7012) states that a motion for failure to state a claim upon which relief can be granted shall be treated as a motion for summary judgment under Fed.R.Civ.P. 56 (made applicable through Fed. R. Bankr.P. 7056) when matters outside the pleadings are presented and not excluded by the court. Accordingly, as the Defendants (1) presented evidence outside the pleadings and (2) filed a later Motion for Summary Judgment, this court will consider the Defendants' Motion to Dismiss as one for summary judgment, which motion is superceded by their later filed motion.

On February 5, 2001, Plaintiffs filed their Memorandum in Support of the Remand Motion (Doc. No. 121)[FN6] and on that same date, Plaintiffs filed their Motion for Leave to File Third Amended Original Complaint ("Third Amended Complaint") (Doc. No. 125). On that same date, Plaintiffs filed their First Amended Objection and Response to Defendants' Motion for Summary Judgment (Doc. No. 123). On February 20, 2001, Defendants consented to Plaintiffs' Third Amended Complaint (Doc. No. 130), and Defendants filed their Objection and Reply to Plaintiffs' Objection and Response (Doc. No. 129).[FN7] This court granted Plaintiffs' Motion for Leave *888 to File Third Amended Original Complaint at the Hearing (Doc. No. 135).[FN8]

> FN6. It should be noted that the Remand Motion was filed on October 14, 1999, when the case was still pending before the Texas Bankruptcy Court. It is now part of the record as Doc. No. 37.

> FN7. Plaintiffs' Third Amended Complaint also dismissed a defendant, Best Insurers, Inc., because Plaintiffs dropped their cause

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 B.R. 882
267 B.R. 882, 47 Collier Bankr.Cas.2d 89, 14 Fla. L. Weekly Fed. B 381
(Cite as: 267 B.R. 882)

of action related to alleged insurance violations. *See Order*, Doc. No. 136.

FN8. It should be noted that as of the date of this Memorandum Decision and Order, the actual Third Amended Complaint has yet to be officially filed. However, since the Third Amended Complaint was attached to the Leave Motion, and the parties have not objected to this procedural defect, the court will deem the Third Amended Complaint filed for purposes of ruling.

Plaintiffs' Third Amended Complaint abandoned certain claims including (1) their challenges to the validity of the Settlement Agreement; (2) claims related to charging and/or collecting a time-price differential that exceeds an add-on charge allowed pursuant to section 345.005 of the Texas Finance Code; (3) their insurance claims related to violations of the Texas Finance Code and (4) claims related to the Texas Insurance Code. As a result, the remaining cause of action asserted by Plaintiffs in their Third Amended Complaint is premised upon the manner in which Defendants report income derived from the finance charges to the IRS.

On the same date, Defendants filed their memorandum in opposition to Plaintiffs' Remand Motion (Doc. No. 128).

**Conclusions of Law**

A. *Jurisdiction*

[1] At the Hearing, the court noted that there was no pending motion to remand by Plaintiffs scheduled for hearing in the court's calendar. Defendants argued that since the Remand Motion was essentially premised upon the lack of jurisdiction of this court, this threshold issue must have been necessarily considered and determined by the Texas Bankruptcy Court and Texas District Court in their decision to transfer the litigation to this court. However, Plaintiffs asserted that the Remand Mo-

tion was never expressly ruled on by the transferring Texas Bankruptcy Court or the Texas District Court and that there is no order denying their previously filed motion. Although this court is in agreement with Defendants, jurisdiction is always a threshold issue and in the absence of an explicit order disposing of the Remand Motion by any court, this court will address Plaintiffs' jurisdictional arguments.

[2] A defendant removing a case has the burden of proving jurisdiction. *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868 (6th Cir.2000)( "*Rogers*") (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). As noted previously, Plaintiffs subsequently twice amended their complaint. Plaintiffs in the Third Amended Complaint allege that they do not seek any relief prior to the execution of the Settlement Agreement. The inference that Defendants wish for this court to make is that the Plaintiffs are attempting to circumvent this court's jurisdiction by avoiding any references to the Settlement Agreement.

[3] However, it is settled law that federal court jurisdiction may not be frustrated by dismissing claims or causes of action that form the basis for federal court jurisdiction. *Rogers*, 230 F.3d at 871-73 (post-removal stipulation that plaintiff sought amount below $75,000 could not defeat diversity jurisdiction because "[i]f plaintiffs were able to defeat jurisdiction by way of a post-removal stipulation, they could unfairly manipulate proceedings merely because their federal case begins to look unfavorable"); *Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F.3d 256, 265 (5th Cir.1995) (recognizing well settled principle that a plaintiff may not defeat removal by amending complaint); *In re Bridgestone/Firestone, Inc., ATX, ATX II, and Wilderness Tires Products Liability Litigation*, 128 F.Supp.2d 1198, 1201-02 (S.D.Ind.2001) (citing *889Hammond v. Terminal Railroad Ass'n*, 848 F.2d 95(7th Cir.1988)). *Cf. Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (jurisdiction should be re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

viewed as of the time of removal to federal court).

At the time of the removal, the Original Complaint clearly referenced the Settlement Agreement and related documents as a basis for Plaintiffs' causes of action. The issue before this court nevertheless still remains: whether this litigation is barred by the Settlement Agreement, confirmed plan of reorganization, or related doctrines-which arose because of Plaintiffs' prior actions in Defendants' bankruptcy cases and this court's adjudication and approval of certain matters in the bankruptcy case.

Even after the complaint had been amended by the Third Amendment, the issues to be decided still turn on interpretation of the Settlement Agreement and whether any liability alleged by Plaintiffs in this action was discharged in Defendants' bankruptcy.

As an initial matter, this court notes that it is well settled that a federal court retains jurisdiction to enforce settlement agreements. *In re Stokes,* 198 B.R. 168 (E.D.Va.1996) ("*Stokes* "); and *In re Hillsborough Holdings Corp.,* 197 B.R. 366 (Bankr.M.D.Fla.1996) ("*HHC3* "). *Stokes* involved a settlement agreement that was reached in an adversary proceeding in bankruptcy court. When one party allegedly breached the settlement agreement, the bankruptcy court concluded that it had authority under § 105(a) to enforce the settlement agreement. The district court affirmed that decision of the bankruptcy court and noted that:

> [a] district court possess[es] inherent jurisdiction and equitable power to enforce agreements entered into in settlement of litigation before that court.... Where, as here, a settlement agreement is executed under the auspices of the Bankruptcy Court, is approved by that court, and subsequently becomes a basis for an order confirming a proposed plan of reorganization, the Bankruptcy Court *undoubtedly has jurisdiction to enforce the Settlement Agreement* under the foregoing principles as well as pursuant to the powers conferred upon the Bankruptcy Court pursuant to

11 U.S.C. § 105(a).

*Stokes,* 198 B.R. at 175.

Similarly, the Original Complaint alleged violations of the Settlement Agreement, which agreement was reached in the global resolution of the many adversary proceedings before this court. This very agreement was approved by this court and as a basis of this agreement, Plaintiffs participated in Defendants' confirmed plan of reorganization.

Now Defendants assert that the terms of the Settlement Agreement should be enforced and that Plaintiffs are barred from re-litigating by the terms of the Settlement Agreement and the releases executed as part of the Settlement Agreement. Under such circumstances, this court finds that it has jurisdiction over this proceeding. *See HHC3,* 197 B.R. 366 (this very court determined that it had jurisdiction to retain jurisdiction over an adversary proceeding-after the case had been confirmed-to enforce the terms of another settlement agreement reached in this very case because the plan provided for the reservation of this court's jurisdiction and the settlement agreement was a central component of the plan); *In re Fleet Service Corp., Inc.,* 144 B.R. 909 (Bankr.M.D.Fla.1992)(bankruptcy court retained jurisdiction over adversary proceeding with preference and fraudulent conveyance causes of action which had been settled in a dismissed chapter 11 case and could rule on motion to enforce settlement agreement when compromise was *890 approved by the court and declining to retain jurisdiction would deprive debtor of its rights under the Bankruptcy Code).

Moreover, Defendants assert that these very claims are barred by the discharge injunction of 11 U.S.C. § 1141. Under the Bankruptcy Code, all claims of creditors which arose prior to confirmation are discharged and the debtor need not pay them, except as provided by the plan. The issue for this court to decide, despite the post-removal amendments: whether the Plaintiffs causes of action indeed arose pre-petition, are subject to the Settlement Agree-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 B.R. 882
267 B.R. 882, 47 Collier Bankr.Cas.2d 89, 14 Fla. L. Weekly Fed. B 381
(Cite as: 267 B.R. 882)

ment, and under the Bankruptcy Code, have been discharged by the plan. This defense obviously requires this court to interpret bankruptcy law.

[4] Plaintiffs' position that this court has no jurisdiction over this proceeding is premised upon several cases-which essentially hold that a bankruptcy court's jurisdiction is very limited once a plan of reorganization has been confirmed. Although Plaintiffs readily concede that the mere confirmation of a plan does not divest the bankruptcy court of jurisdiction, they assert that disputes and issues that arise post-confirmation do not fall within the jurisdiction of the bankruptcy court. *Plaintiffs' Memorandum in Support of Motion to Remand ("Plaintiffs' Remand Memo") at 3-4* (citing to *Goodman v. Phillip R. Curtis Enterprises, Inc. (In re Goodman),* 809 F.2d 228, 233 (4th Cir.1987)("*Goodman*"); *Pioneer Inv. Servs. v. Cain Partnership, Ltd., (In re Pioneer Inv. Servs. Co.),* 141 B.R. 635, 640 (Bankr.E.D.Tenn.1992)("*Pioneer*"); *A.R.E. Mfg. Co. v. U.S. (In re A.R.E. Mfg. Co.),* 138 B.R. 996, 998-99 (Bankr.M.D.Fla.1992)("*ARE*"); *Official Unsecured Creditors' Committee of Erie Hilton Joint Venture v. Siskind (In re Erie Hilton Joint Venture),* 137 B.R. 165, 170 (Bankr.W.D.Pa.1992)("*Erie Hotel*"); *Service Decorating Co. v. Travelers Insurance Co. (In re Service Decorating Co.),* 105 B.R. 859 (N.D.Ill.1989)("*Service*"); and *Central States, Southeast and Southwest Areas Pension Fund v. J.T. Gerken Trucking, Inc. (In re J.T. Gerken Trucking, Inc.),* 10 B.R. 203 (Bankr.N.D.Ohio 1981)("*Gerken*")). In general, these cases support the proposition that the bankruptcy courts retain jurisdiction over the execution or implementation or interpretation of the plan. It is then argued that in this case the confirmed plan is implemented and there is nothing left to interpret.[FN9]

> FN9. The cases cited by Plaintiffs do not support their position under the present circumstances. For example, in *Goodman,* the Fourth Circuit held that the bankruptcy court had jurisdiction over personal injury

action, which was not included in the chapter 11 plan. *Goodman,* 809 F.2d at 232-233. It held that the court retained jurisdiction to modify a previously confirmed plan and that the attempted inclusion of the personal injury action was an attempt to modify the plan. *Id.* In this case, it may be argued (although no party raised the argument) that Plaintiffs are attempting to modify their confirmed plan by essentially seeking to amend the plan by seeking more than what was permitted under the terms of the Settlement Agreement. Alternatively, it could have been argued that Plaintiffs are attempting to impermissibly amend the Settlement Agreement. Additionally, in *Pioneer,* the court held that the bankruptcy court had jurisdiction over the debtor's post-confirmation action filed against creditors to enjoin them from pursuing the creditors' state court action that the debtors alleged interfered with the plan. *Pioneer,* 141 B.R. 635. In *Pioneer,* the debtor similarly alleged that the creditors were enjoined from pursuing the state court action because the debt was discharged by the plan and the creditors' action violated the discharge injunction under §§ 524(a) and 1141(d). *Id.,* 141 B.R. at 642.

> The court in *ARE* failed to find jurisdiction involving a post-confirmation suit in which the debtor sought to compel the federal government to award a contract (when the government rejected the debtor's bid because it has previously defaulted on a contract during the bankruptcy proceeding). *ARE,* 138 B.R. 996. The court there correctly held that it did not have any jurisdiction over the action because the injunction provision of sections of 524(a) and 1141(d)(1) were not implicated as the creditor was not seeking to collect on any debt. *Id.* at 999. Here, in contrast, Defendants are al-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 B.R. 882
267 B.R. 882, 47 Collier Bankr.Cas.2d 89, 14 Fla. L. Weekly Fed. B 381
(Cite as: 267 B.R. 882)

leging that Plaintiffs are indeed attempting to collect on a debt they assert has been discharged.

In *Erie Hotel,* the court determined that it had jurisdiction to interpret and enforce the plan after confirmation. *Erie Hotel,* 137 B.R. 165. Similarly, it is Defendants' position that the plan discharges any liability from this adversary proceeding.

The *Service* court is also instructive in that the debtor filed an adversary proceeding to prevent a creditor from setting off a pre-petition debt against a post-petition debt. The court concluded that it had jurisdiction to determine whether the debt was indeed discharged by the debtor's bankruptcy and confirmed plan. *Service,* 105 B.R. 859. As discussed, this is one of the very issues to be squarely addressed by this court. Finally, in *Gerken,* which was decided under the old Act, the bankruptcy court held that it did not have jurisdiction to rule on a post-confirmation collective bargaining agreement. *Gerken,* 10 B.R. 203. That case is clearly distinguishable in that it involved a contract dispute not directly approved of by the court (but only one of the many contracts adopted by reference in the plan). Here, the Settlement Agreement referenced by Plaintiffs' Original Complaint was specifically entered into during the pendency of Defendants' bankruptcy and approved by this court.

**\*891** [5] While the court agrees with this general proposition, the mere fact that the plan is implemented does not necessarily mean that there can be no issue to interpret. For example, the interpretation of the plan and the concept of discharge under section 1141 are closely interrelated. Section 1141(d)(1) states, in relevant part, that:

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan-

(A) discharges the debtor from any debt that arose before the date of such confirmation....

11 U.S.C. § 1141(d)(1)(A).[FN10]

> FN10. Section 524(a) of the Bankruptcy Code in turn contains the provisions of the discharge injunction prohibiting the commencement of any acts to collect on any debt discharged by section 1141.

Accordingly, Defendants' affirmative defense that the liability from this adversary proceeding has already been discharged calls for interpretation of the plan and application of the bankruptcy laws. Plaintiffs' assertion that "[a]ll events in question occurred after confirmation of the plan" and that "this matter does not require the application of bankruptcy law" is unavailing. *Plaintiffs' Remand Memo* at 4. This is, however, Plaintiffs' legal conclusion. This very issue is to be decided by this court-which is, whether this action involves "any debt that arose before the date of such confirmation" as that term is used in § 1141(d) of the Bankruptcy Code.

[6] In addition, Plaintiffs overlook the ancillary jurisdiction (as discussed previously) that all federal courts possess to enforce and interpret settlement agreements entered before them and approved by them. *See Stokes,* 198 B.R. 168,*HHC3,* 197 B.R. 366. The Settlement Agreement resolved: (1) the disputes between the Defendants and the Plaintiffs in approximately nine adversary proceedings that were pending before this court in the Defendants' bankruptcy as well as (2) the settlement of claims filed in the case by almost all of the Plaintiffs. This was no minor settlement agreement-rather, it was a global settlement agreement intended to resolve all disputes between the Plaintiffs and the Defendants.

[7] Another basis for this court's jurisdiction is Plaintiffs' voluntary participation in Defendants'

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

bankruptcy cases. The Settlement Agreement clearly provided for the retention of this court's jurisdiction *892 under the circumstances present here. Plaintiffs cannot complain of these specific provisions they specifically contracted for in the Settlement Agreement. Moreover, almost all of the Plaintiffs filed claims in Defendants' bankruptcy and accordingly, submitted themselves to the jurisdiction of this court.

For all the foregoing reasons, this court finds that it has jurisdiction over this adversary proceeding.

### B. *Settlement, Release and Discharge*

[8][9] Settlement agreements are to be interpreted and governed by the law of contracts. *In re Sure-Snap,* 91 B.R. 178, 180 (Bankr.S.D.Fla.1988). As a threshold matter, this court will have to determine whether the violations complained of by Plaintiffs were "Claims," as that term is defined by the Settlement Agreement. As noted previously, that definition was very broadly worded and encompassed "all such potential assertions in existence on the Closing Date that have not been filed or included in any pending legal proceeding, but *which could have been asserted...* (emphasis added)." *Settlement Agreement,* ¶ D at 2. Similarly, the Releases contain parallel language, releasing the Defendants from all liability from any causes of action *which could have been asserted* in any of the then existing pending litigation. *Releases,* ¶ 4 at 5.

The very act that Plaintiffs allege as violating the Texas Finance Code in the Third Amended Complaint is the Defendants' method of reporting interest to the IRS on Form 1098. That practice was in existence since 1965 and certainly in existence at the time of Defendants' bankruptcy. In fact, this very court resolved a dispute between the IRS and the Defendants and determined that the method of accounting to the IRS was proper. *HHC2,* 144 B.R. 920. It naturally follows that this was a cause of action which "could have been asserted" at the time of the Settlement Agreement. Accordingly, this

court finds that Plaintiffs' claims are barred by the terms of the Settlement Agreement and the Releases executed by Plaintiffs.

As a related concept, this court further finds that Plaintiffs' claims arose pre-petition. All the acts complained of in the Third Amended Complaint had originated pre-petition and certainly, should have been asserted in Defendants' bankruptcy. *Cf. HHC,* 146 B.R. at 1919-1020 (receipt of monthly installment contractual payments is not a new event for purposes of applying the statute of limitations). Thus, as previously discussed, Bankruptcy Code sections 524 and 1141(d)(1)(A) discharge all prepetition debts, including any liability, if any, arising from Plaintiffs' Third Amended Complaint.

### C. *Res Judicata*

[10][11][12] Additionally, the judicial doctrine of *res judicata* precludes Plaintiffs from bringing this suit. The doctrine of res judicata or claim preclusion bars the filing of claims that were raised or could have been raised in an earlier proceeding. Res judicata or claim preclusion applies to an order or judgment when four conditions are satisfied. First, there must be a final judgment on the merits. Second, a court of competent jurisdiction must render the judgment. Third, the parties (or those in privity with the parties) must be identical in both suits. Finally, the same cause of action must be involved in both suits. *Citibank, N.A. v. Data Lease Financial Corp.,* 904 F.2d 1498, 1501 (11th Cir.1990)("*Citibank*"); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 (11th Cir.1990) ("*Justice Oaks*").

As to the first element of a "final order," this court is aware that there is an Eleventh Circuit case holding that a Bankruptcy Court's order authorizing settlement of claims was not "a final decision on the *893 merits." *Justice Oaks,* 898 F.2d at 1549. This is because a bankruptcy court is only required to determine the probability of success should the claims be litigated, the difficulty of collection and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

expense of litigation. *Id.* Under the holding of *Justice Oaks,* the order approving the Settlement Agreement is not a "final order" for the purposes of res judicata. However, there is Eleventh Circuit precedent which holds that a stipulation of dismissal of a complaint with prejudice constitutes a "final judgment" sufficient to invoke the doctrine of claim preclusion. *Citibank,* 904 F.2d at 1501-02. Here, Plaintiffs stipulated to dismissals of the adversary proceedings with prejudice. Accordingly, the first element of claim preclusion is met.

As to the second element, there is no dispute that this court's order of dismissal was entered by a court of competent jurisdiction. The third element is also easily satisfied in that the parties are the same.

[13] As to the fourth element, it is the general rule that "a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate". *Citibank,* 904 F.2d at 1503. The Third Amended Complaint alleges violations of the Texas Finance Code, which essentially was the same basis as their complaints in Plaintiffs' adversary proceedings dismissed by the Settlement Agreement.

Although the dismissed adversary proceedings did not specifically mention Defendants' reporting to the IRS as a basis for their initial complaint, it is clear that the acts complained of arose from the same "nucleus of operative facts." The causes of action complained of in the first round of litigation before this court involved, among other causes of action, violations of the same statute, that is violations for "time price differentials," as that term is used in the Texas Consumer Credit Code (now called the Texas Finance Code). Clearly, as previously discussed, the same acts complained of in this round of litigation (the reporting to the IRS) occurred when the first round of litigation occurred. The doctrine of res judicata bars litigation of claims that were raised or could have been raised in an earlier proceeding. Thus, this court finds that the doctrine of res judicata bars Defendants' Third Amended Complaint.

D. *Statute of Limitation*

Defendants argue that Plaintiffs' claims under the Texas Finance Code are barred by the statute of limitations.[FN11] Section 349.402 of the Texas Finance Code states, in pertinent part:

> FN11. Defendants do not concede that Texas law is applicable in this litigation. They argue that the Settlement Agreement binds Plaintiffs to Florida law. Paragraph 24, Settlement Agreement. Because this analysis under Texas law disposes of the issues, the court need not decide whether Florida law is applicable to the substantive allegations.

An action under this chapter must be brought before the later of:

(1) the fourth anniversary of the date of the loan or retail installment transaction with respect to which the violation occurred; or

(2) the second anniversary of the date on which the violation occurred.

Tex. Finance Code Ann. § 349.492 (Vernons 1998), (preceded by Tex.Rev.Civ. Stat. Ann. Art. 5069-8.04(A)).

[14] All the original Retail Installment Contracts in this case were executed over either the four or two year limitation periods referenced above. While Plaintiffs argued at one point that the Modification and Extension Agreements signed constituted "new agreements," this argument is without merit. Section 345.072 of the Texas Finance Code states that: "[a]fter amendment, a retail installment contract is the original contract ..." and section 349.001(7) defines a "retail installment *894 transaction" as the "buyer's purchase of the goods from the retail seller." Under the plain reading of the statute, the date of the transaction refers to the original date of the initial contract.

It is also uncontested that the method of reporting

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

finance charges to the IRS was unchanged from the original date of the contracts. Accordingly, this court concludes that Plaintiffs' suit is untimely and barred by the statute of limitation.

[15] Texas law is also clear that receipt of monthly installment payments does not constitute a continuing violation. In this very case, this court addressed this identical issue and held that suits brought under the then Texas Consumer Credit Code (now called the Texas Finance Code) against the Defendants by the very same Plaintiffs were barred by the statute of limitations. A new violation does not occur (for purposes of applying the statute of limitations) from each new event connected with the retail installment. *In re Hillsborough Holdings Corp.,* 146 B.R. 1015, 1019-20 (Bankr.M.D.Fla.1992) (citations omitted).

E. *Violation of the Texas Finance Code*

[16] Even if this court were to consider the substance of Plaintiffs' complaint, this court finds no violation of the Texas Finance Code. Section 349.001 of the Texas Finance Code provides, in pertinent part:

A person who violates this subtitle by contracting for, *charging,* or receiving interest, time price differential, or other charges greater than the amount authorized by this subtitle is liable to the obligor ... (emphasis added).

Tex. Finance Code Ann. § 349.002 (Vernon 2001).

The issue to be decided is whether Defendants' reporting to the IRS on Forms 1098 constitutes a "charge" under the statute. The definition of a "charge" was discussed by the Texas Supreme Court in the case of *George A. Fuller Co. of Texas, Inc. v. Carpet Services, Inc.,* 823 S.W.2d 603 (Tex.1992) ( *"Fuller* "). In *Fuller,* the Texas Supreme Court held that a demand in a pleading for prejudgment interest does not constitute a "charge" for purposes of imposing usurious penalties because the pleading is addressed to the court and

only demands that the court grant relief. *Id.* at 605. The court reasoned that:

[a] charge must be communicated to the debtor. The Communications need not be direct, so long as *the charge is ultimately demanded from the debtor* (emphasis added). *Id.*

The court also clarified that a "charge" does not include a "unilateral placing on an account an amount due without any other action." *Id.*

The reporting to the IRS cannot by this definition be a "charge" as the report is not directed to Plaintiffs and does not seek anything from them. Unlike the situation in *Danziger v. San Jacinto Sav. Ass'n.,* 732 S.W.2d 300 (Tex.1987), relied upon by Plaintiffs, a payoff quote seeking interest is clearly a "charge" in that the creditor is demanding payment of the higher interest rate. In conclusion, even if this court were to decide the issues raised in the Third Amended Compliant on the merits, Plaintiffs cannot prevail. [FN12]

> FN12. It should be noted that at the Hearing, Defendants' attorney proffered that it is Defendants' practice, in the event of a pre-payment, to properly credit the account i.e. a straight-line accounting method is merely for IRS reporting purposes.

F. *Texas Finance Code and the Applicability to Repossessed House and Real Property*

[17] Additionally, there is also merit in Defendants' defense that the Texas Finance*895 Code is inapplicable to those Plaintiffs who purchased a repossessed house and real property.[FN13] This very court has already ruled on this very issue in this bankruptcy case in *In re Hillsborough Holdings Corp.,* 146 B.R. 1015, 1020 (Bankr.M.D.Fla.1992). Under what was then the Texas Consumer Credit Code, this court held that such purchase did not constitute a retail installment contract under that statute but was instead a purchase of "real property." *Id.* In what appears as an effort to circumvent

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this holding, Plaintiffs now assert in their Third Amended Complaint that Chapters 301 through 305 of the Texas Finance Code control as to those Plaintiffs.

> FN13. Such Plaintiffs are referred to as "Category 2 and 4 Plaintiffs" in the Third Amended Complaint.

A similar argument was raised by the plaintiff in *Mid-States Homes, Inc. v. Sullivan,* 592 S.W.2d 29 (Tex.Civ.App.1979)("*Sullivan* "). A repossessed home and land was also at issue in the *Sullivan* case. The Texas Court of Appeals ruled that the financial arrangement for the payment of the property was a "time-price differential" and not an "interest transaction." *Sullivan,* 592 S.W.2d at 29. It reasoned that:

> The financial arrangement for the payment of the property is a "time-price differential" and is not an "interest" transaction. If the negotiations between a buyer and a seller involve a bona fide quotation of both a cash price and a credit price, the transaction does not involve usury, even though the quoted credit price is such as to exceed the cash price plus lawful interest thereon. [citations omitted] Moreover, Article 5069-1.01(a) specifically states that the term interest "shall not include any time differential however denominated arising out of a credit sale."

> If the sale contract shows on its face that there is a cash price and a deferred payment price which are revealed to the purchaser at the time of the making of the contract, and that the finance charges are set forth as such, the amount of such finance charges will not be deemed interest, but a time-price differential paid for the privilege of purchasing property to be paid for by the buyer in installments over a period of time. The contract between the parties in the case at bar falls squarely between these guidelines, and the credit price does not constitute usury.

*Id.* at 30-31.

Here the credit sale installment contracts are "time-price differential" contracts because they specifically set forth a cash price and a deferred payment price.[FN14]

> FN14. *See* Exhibit 1 to Affidavit of Gary Davis (Doc. No. 133).

Moreover, the express language of Section 301.002(b) of the Texas Finance Code specifically states: "Time-price differential, regardless of how it is denominated, arising out of a credit sale, is *not* interest." In conclusion, sections 301 and 305 of the Texas Finance Code are inapplicable to these Plaintiffs' contracts involving the purchase of repossessed houses and real property.

*Conclusion*

Based upon the foregoing, this court finds that it has jurisdiction over this adversary proceeding. Defendants' motion for summary judgment should be granted with the result that Plaintiffs are prevented from prosecuting this action on various grounds: (1) that any alleged liability arising from the acts complained of in their Third Amended Complaint has been discharged; (2) the settlement and releases bar prosecution of this adversary proceeding;*896 (3) the Plaintiffs are barred from prosecuting their complaint by the doctrine of res judicata; (4) the statute of limitations under Texas law bars litigation of this matter; and (5) there is no violation of the Texas Finance Code. Accordingly, it is

ORDERED:

1. The Plaintiffs' Motion to Remand is hereby denied.

2. The Defendants' Motion for Summary Judgment is granted.

Bkrtcy.M.D.Fla.,2001.
In re Hillsborough Holdings Corp.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

267 B.R. 882
267 B.R. 882, 47 Collier Bankr.Cas.2d 89, 14 Fla. L. Weekly Fed. B 381
(Cite as: 267 B.R. 882)

267 B.R. 882, 47 Collier Bankr.Cas.2d 89, 14 Fla.
L. Weekly Fed. B 381

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 2**

Westlaw.

987 F.2d 1268                                                                                Page 1
987 F.2d 1268, 24 Fed.R.Serv.3d 1352, Bankr. L. Rep. P 75,142
**(Cite as: 987 F.2d 1268)**

▷
Holstein v. Brill
C.A.7 (Ill.),1993.

United States Court of Appeals,Seventh Circuit.
Thomas HOLSTEIN, Plaintiff-Appellant,
v.
Kevin BRILL, Defendant-Appellee.
**No. 92-1670.**

Argued Jan. 6, 1993.
Decided Feb. 18, 1993.
Rehearing and Rehearing En Banc Denied March
16, 1993.

Former employee moved to amend wage claim as-
serted against Chapter 11 debtor. The Bankruptcy
Court, Erwin I. Katz, J., allowed amendment, and
appeal was taken. The United States District Court
for the Northern District of Illinois, Suzanne B.
Conlon, J., affirmed, and further appeal was taken.
The Court of Appeals, Easterbrook, Circuit Judge,
held that former employee was improperly allowed
to increase wage claim four years after confirma-
tion of substantially consummated reorganization
plan.

Affirmed in part and reversed in part.

Ripple, Circuit Judge, dissented and filed opinion.

West Headnotes

**[1] Bankruptcy 51 ☞2674**

51 Bankruptcy
  51V The Estate
    51V(G) Set-Off
      51k2674 k. Mutuality; Identity of Right,
Person, and Capacity. Most Cited Cases
Money owed former employee for wages could not
be set off against former employee's debt to em-
ployer for postemployment legal work in bank-
ruptcy case commenced by the employer; debts
were not mutual, that is, contemporaneous, and thus

could not be cancelled in bankruptcy.

**[2] Bankruptcy 51 ☞2903**

51 Bankruptcy
  51VII Claims
    51VII(D) Proof; Filing
      51k2903 k. Amendment or Withdrawal.
Most Cited Cases
Former employee was improperly allowed to in-
crease wage claim, nearly tripling original amount,
four years after confirmation of substantially con-
summated reorganization plan; even if amendment
related back to original pleading, there was no
showing of reason for delay in seeking amendment.

**[3] Bankruptcy 51 ☞2903**

51 Bankruptcy
  51VII Claims
    51VII(D) Proof; Filing
      51k2903 k. Amendment or Withdrawal.
Most Cited Cases

**Bankruptcy 51 ☞3784**

51 Bankruptcy
  51XIX Review
    51XIX(B) Review of Bankruptcy Court
      51k3784 k. Discretion. Most Cited Cases
Bankruptcy judge may allow or forbid claim
amendments following claims bar date in exercise
of reasoned discretion; in either case, appellate re-
view is deferential.

**[4] Bankruptcy 51 ☞2903**

51 Bankruptcy
  51VII Claims
    51VII(D) Proof; Filing
      51k2903 k. Amendment or Withdrawal.
Most Cited Cases

**Bankruptcy 51 ☞3569**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

987 F.2d 1268                                                    Page 2
987 F.2d 1268, 24 Fed.R.Serv.3d 1352, Bankr. L. Rep. P 75,142
(Cite as: 987 F.2d 1268)

51 Bankruptcy
   51XIV Reorganization
      51XIV(B) The Plan
         51k3569 k. Modification or Revocation.
Most Cited Cases
Postconfirmation claim amendments should be allowed in Chapter 11 cases only for compelling reasons; modification of confirmed and substantially consummated plan is forbidden except to limited extent permitted by statute. Bankr.Code, 11 U.S.C.A. § 1127.

**\*1269** Thomas O. Holstein (argued), Chicago, IL, for plaintiff-appellant.
David A. Mucklow (argued), Norman B. Newman, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, IL, for defendant-appellee.

Before EASTERBROOK and RIPPLE, Circuit Judges, and MILLER, District Judge.[FN*]

      FN* Hon. Robert L. Miller, Jr., of the Northern District of Indiana, sitting by designation.

EASTERBROOK, Circuit Judge.
Two bankruptcy lawyers have landed in bankruptcy themselves, owing each other money. Thomas Holstein owes Kevin Brill more than $11,000 as wages for services performed while Brill was his employee; Brill owes Holstein more than $7,000 in fees for cases referred after the employment ended.

On March 30, 1984, Holstein filed a petition under Chapter 13 of the Bankruptcy Code. Creditors had until August 2, 1984, to make claims. One day late, Brill filed a proof of claim for $11,475 in unpaid wages. On August 9 the bankruptcy court converted Holstein's case to Chapter 11 of the Code and set a new bar date of February 15, 1985. Brill did not file an additional or amended claim, although on August 30, 1984, Brill's employment with Holstein had ended, and the debt for wages should have been clear then or shortly thereafter. Everyone treated his earlier claim as timely-for Holstein's schedules had

listed him as a creditor in roughly this amount-but the parties disputed its priority. Brill sought a high priority, while the trustee contended, and Bankruptcy Judge Hertz ultimately decided, that Brill was an "insider" whose debt belongs in the eighth priority. The trustee prepared, and Judge Hertz approved, a disclosure statement specifying that Brill was entitled to $11,318. On November 3, 1986, Judge Hertz confirmed Holstein's plan of reorganization. Brill did not object to the disclosure statement or the plan.

Come 1990 Brill, who had not been paid, asked Bankruptcy Judge Katz, to whom the case had been reassigned, to convert the reorganization to a Chapter 7 liquidation. Holstein opposed this, observing that he had paid more than $340,000 to his creditors and was about to begin paying the lowest-priority debts. After Holstein demanded that Brill fork over the more than $7,000 to which he was clinging, Brill replied on September 4, 1990, by increasing his own claim. Unpaid wages actually exceed $28,000, according to Brill's revised calculation. Judge Katz declined to convert the case to Chapter 7, refused to give Holstein any additional time to pay, ordered Brill to turn the $7,000 over to the estate, granted Brill's request to increase his claim to $28,000, and rejected Holstein's request to offset his accounts with Brill. 1991 WL 236871, 1991 Bankr. LEXIS 1606. The district court affirmed. 1992 WL 55488, 1992 U.S.Dist. LEXIS 2506. Bankruptcy**\*1270** Judge Wedoff, presiding in Brill's separate bankruptcy (commenced in 1988 without notice to Holstein), has concluded that the $7,000 covered by Judge Katz's turnover order is not dischargeable.

[1] Setoff is not available. Holstein owes Brill money for wages preceding August 30, 1984; Brill owes Holstein money for legal work done after Brill was in practice on his own. These are not "mutual" (that is, contemporaneous) debts and accordingly may not be canceled in bankruptcy. *Boston & Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562 (7th Cir.1986); cf. *In re Iowa R.R.*, 840

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

987 F.2d 1268
987 F.2d 1268, 24 Fed.R.Serv.3d 1352, Bankr. L. Rep. P 75,142
(Cite as: 987 F.2d 1268)

F.2d 535, 543-44 (7th Cir.1988). Holstein must pay Brill in full under his Chapter 11 plan, and Brill must pay Holstein in full under both Judge Katz's turnover order and Judge Wedoff's order. As both apparently have the means to do so, it all comes to the same thing as setoff, provided these lawyers live up to their obligations.

[2] Increasing Brill's claim 4 years after the confirmation of Holstein's plan, and 5 1/2 years after the bar date in the Chapter 11 case, is another matter entirely. Because the plan of reorganization does not specify the sum Holstein must pay Brill, an increase would on "modify" the plan in a way that 11 U.S.C. § 1127(b) forbids. Still, that statute implies that after confirmation and "substantial consummation" of a plan, changes that verge on modification must be rare. Neither Judge Katz nor the district judge discussed the significance of the confirmation of the plan and Holstein's substantial performance of his obligations. Both relied, instead, on the relation back principle of Fed.R.Civ.P. 15(c), applied to adversary proceedings in bankruptcy by Fed.R.Bankr.P. 7015 and to amended claims by *In re Unroe*, 937 F.2d 346 (7th Cir.1991), and *In re Stavriotis*, 977 F.2d 1202 (7th Cir.1992). We may assume, in the language of Rule 15(c)(2), that the "claim ... asserted in [Brill's] amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading". That an amendment would relate back to the original pleading does not make it appropriate for the court to permit the amendment.

[3] Leave to amend should be freely granted early in a case, *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), but passing milestones in the litigation make amendment less appropriate. One milestone of particular significance in bankruptcy is the bar date. By then creditors must submit their proofs of claim. Once the claims are in, the parties may concentrate on determining their validity and providing for payment. How they will proceed depends on who claims how much. Some enlargement later by amendment may be appropri-

ate, and the debtor may himself submit claims within a limited period after the bar date. See 11 U.S.C. § 501(c); Fed.R.Bankr.P. 3004; *In re Danielson*, 981 F.2d 296 (7th Cir.1992). Bankruptcy judges may decide to allow (see *Unroe*), or forbid (see *Stavriotis*), such changes in the exercise of reasoned discretion; in either case appellate review is deferential.

[4] Confirmation of the plan of reorganization is a second milestone, equivalent to final judgment in ordinary civil litigation. *Kham & Nate's Shoes No. 2 v. First Bank of Whiting*, 908 F.2d 1351, 1354 (7th Cir.1990). Once that milestone has been reached, further changes should be allowed only for compelling reasons. *In re Chappell*, 984 F.2d 775, 782 (7th Cir.1993). Cf. Fed.R.Civ.P. 60(b). Confirmation automatically discharges all debts other than those provided for in the plan, 11 U.S.C. § 1141(d)(1)(A), and "each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself." *In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir.1992). Modification of a confirmed and substantially consummated plan is forbidden except to the limited extent 11 U.S.C. § 1127 permits. Post-confirmation amendments make an end run around these provisions and may throw monkey wrenches into the proceedings, making the plan infeasible or altering the distributions to remaining creditors. Small claims may be conceded, while larger ones may be contested (by other creditors, if not by the *1271 debtor). And whether or not late-breaking claims affect third parties' entitlements, they assuredly disrupt the orderly process of adjudication. To every thing there is a season, and the season for stating the amount of a debt is before the confirmation of a plan of reorganization.

What explains Brill's delay? A high hurdle for a litigant does not imply searching appellate review. Still, we must ensure that the bankruptcy and district judges applied the right standard. Neither judge, however, identified *any* appropriate reason for Brill's six-year delay in making a claim for $28,000. Brill's brief in this court is equally silent.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

987 F.2d 1268                                                                                    Page 4
987 F.2d 1268, 24 Fed.R.Serv.3d 1352, Bankr. L. Rep. P 75,142
**(Cite as: 987 F.2d 1268)**

He does not contend, for example, that essential documents became available only recently, or that Holstein hindered his efforts to compute unpaid wages accurately. His latest claim invokes an oral contract; he does not rely on documents. Brill received notice of the proceedings and of the two bar dates (one in Chapter 13 and another in Chapter 11). He made a claim for a little more than $11,000 without suggesting that the computation was tentative. Brill did not object to the disclosure statement or the plan of reorganization; he did not ask for discovery so that he could compute the back pay obligation using Holstein's records. There is nothing but the equivalent of: "Whoops, my mistake." Perhaps there is more: Brill asserts that after Holstein renewed his claim to the $7,000 and demanded an accounting, he was "forced to reanalyze the situation." In other words, he retaliated for Holstein's demand by increasing his own demands. A litigant's inattention, laziness, error, or desire to lash back at an adversary is not good cause by any standard. *Danielson,* 981 F.2d at 298; *United States v. Dumont,* 936 F.2d 292, 295 (7th Cir.1991); *Redfield v. Continental Casualty Corp.,* 818 F.2d 596, 602 (7th Cir.1987). Having kept his silence while the trustee was toting up Holstein's obligations, Brill cannot surface 5 1/2 years later with a demand almost three times the original amount.

We asked the parties whether any other court ever had allowed a claim to be increased, for *any* reason, after confirmation of a plan of reorganization. Neither side could find such a decision under the 1978 Code, or for that matter under the 1898 Act during its final 50 years. Our search was equally fruitless. Without excluding the possibility of a post-confirmation amendment of a claim for cogent reason, we conclude that a creditor's inattention to the case or careless error in calculation does not suffice. As Brill has not provided any other explanation for the delay, a remand is unnecessary.

The judgment is affirmed to the extent it precludes a setoff of the debts and reversed to the extent it directs Holstein to pay Brill more than $11,318.

RIPPLE, Circuit Judge, dissenting.
I agree with the majority that there are limits on the authority of a bankruptcy court to allow an amendment under Federal Rule of Civil Procedure 15 [FN1] to a proof of claim. *See In re Roberts Farms, Inc.,* 980 F.2d 1248, 1251 (9th Cir.1992) (stating that Rule 15 liberally permits amendment of proof of claim; however, a court should inquire whether opposing party would be unduly prejudiced by such amendment); *In re Unioil, Inc.,* 962 F.2d 988, 992-93 (10th Cir.1992) (stating same); *In re Wilson,* 96 B.R. 257, 262 (Bankr. 9th Cir.1988) (noting that in determining prejudicial effect of amendment to proof of claim, court should look to bad faith, unreasonable delay in filing, impact on other claimants, reliance by debtor or other claimants, and change of debtor's position). I also agree that Rule 15's concept of "relatedness" is not the only criteria, especially after the plan of reorganization has been confirmed. At that point in the litigation, an amendment to a proof of claim ought to be allowed rarely and only after careful evaluation by the bankruptcy court. That evaluation must take into consideration the reasons for the delay on the part of the creditor and *1272 the possibility of prejudice to others involved in the bankruptcy.

> FN1. Bankruptcy Rule 7015 states that Federal Rule of Civil Procedure 15 applies in adversary proceedings.

However, it is still important to remember that the matter of amendment is committed to the sound discretion of the bankruptcy judge. *In the Matter of Stavriotis,* 977 F.2d 1202, 1204 (7th Cir.1992). The bankruptcy court, especially in a Chapter 11 proceeding, is engaged in the delicate, complex, and sophisticated task of attempting to breathe life back into the bankrupt entity. The bankruptcy court is therefore in a unique position to appreciate the motivations of the creditors and the impact on the bankrupt estate from an amendment.

This is one of many cases to arrive in this court recently where a matter controlled by the abuse of discretion standard comes to us either unexplained

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

987 F.2d 1268
987 F.2d 1268, 24 Fed.R.Serv.3d 1352, Bankr. L. Rep. P 75,142
**(Cite as: 987 F.2d 1268)**

or vaguely explained. This lack of explanation may be due in large measure to the pressures on courts of first instance, including bankruptcy courts, to deal with a great number of cases. However, this failure to communicate adequately with reviewing courts does provide, understandably, a significant unease on the part of appellate courts. It also provides a temptation for appellate courts to micromanage bankruptcy matters.

While prolonging bankruptcy proceedings is indeed regrettable, I believe the appropriate course in a case such as this is to remand the case to the bankruptcy court in order to allow that court to provide us with a more elaborate explanation of its reasons for permitting the amendment. The bankruptcy court did note that Mr. Brill was unable to compute the full amount of his claim when he filed the original proof of claim but left us in the dark as to when such information did become reasonably available to Mr. Brill. The bankruptcy court is also in a far superior position than we to determine the impact of such an amendment on the debtor and on any other remaining creditors.

I believe that remanding this case to the bankruptcy court is far more appropriate than engaging in factual assumptions at the appellate level. The majority concludes that Mr. Brill should have known the total of his legal fees long in advance of his amended filing. The majority also attributes to Mr. Brill a retaliatory motive for filing the amended proof of claim. This sort of fact-finding ought to be done on remand in the bankruptcy court rather than here.

Because I believe the bankruptcy court should have an opportunity to set forth in greater detail the basis of its decision to permit an amendment of Mr. Brill's proof of claim, I would remand this matter to the bankruptcy court for a more detailed elaboration.

C.A.7 (Ill.),1993.
Holstein v. Brill
987 F.2d 1268, 24 Fed.R.Serv.3d 1352, Bankr. L.

Rep. P 75,142

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 3**

Westlaw.

979 So.2d 1023                                                                                                    Page 1
979 So.2d 1023, 33 Fla. L. Weekly D655
**(Cite as: 979 So.2d 1023)**

C
Martinez v. South Bayshore Tower, L.L.L.P.
Fla.App. 3 Dist.,2008.

District Court of Appeal of Florida,Third District.
Pamela Cristina MARTINEZ, Maria Salvade, et al.,
Appellants,
v.
SOUTH BAYSHORE TOWER, L.L.L.P., Ap-
pellee.
**No. 3D07-340.**

March 5, 2008.

**Background:** In litigation involving dispute
between purchasers and developer after developer
abandoned condominium construction project, the
Circuit Court, Miami-DadeCounty, Ronald M.
Friedman, J., entered summary judgment in favor of
developer. Purchasers appealed.

**Holding:** The District Court of Appeal held that ac-
cord and satisfaction resulted from purchasers cash-
ing their deposit checks returned to them by de-
veloper after developer abandoned project.

Affirmed.

West Headnotes

**[1] Accord and Satisfaction 8 ⚖11(2)**

8 Accord and Satisfaction
    8k6 Part Payment
        8k11 Conditioned on Acceptance as Payment
in Full
            8k11(2) k. Remittances on Condition.
Most Cited Cases
Accord and satisfaction resulted from purchasers
cashing deposit checks returned to them by de-
veloper after developer abandoned condominium
construction project, as developer returned checks
with letter stating that cashing the checks would
serve as an accord and satisfaction, terminating the
parties' rights and obligations under pre-

construction condominium contracts, and pur-
chasers showed their intent to effectuate a settle-
ment of the dispute by cashing checks, which con-
stituted actual performance of new agreement.

**[2] Accord and Satisfaction 8 ⚖1**

8 Accord and Satisfaction
    8k1 k. Nature and Requisites in General. Most
Cited Cases
An accord and satisfaction results when: (1) the
parties mutually intend to effect a settlement of an
existing dispute by entering into a superseding
agreement, and (2) there is actual performance in
accordance with the new agreement; compliance
with the new agreement discharges the prior obliga-
tions.

**[3] Accord and Satisfaction 8 ⚖1**

8 Accord and Satisfaction
    8k1 k. Nature and Requisites in General. Most
Cited Cases
If an offer clearly serves as an accord and satisfac-
tion, and the other party accepts the offer, then he is
bound to the conditions attached.

**[4] Accord and Satisfaction 8 ⚖1**

8 Accord and Satisfaction
    8k1 k. Nature and Requisites in General. Most
Cited Cases
Accord and satisfaction is a convenient and valu-
able tool for resolving disputes informally without
litigation.

**\*1023** Katz, Barron, Squitero, Faust, Friedberg,
Grady, English, & Allen, Stephen P. Walroth-
Sadurni, and Bernard Allen, Miami, for appellants.
Baker & McKenzie and Lee E. Stapleton and Effie
D. Silva, Miami, for appellee.

Before GERSTEN, C.J., and SUAREZ, and
ROTHENBERG, JJ.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

979 So.2d 1023
979 So.2d 1023, 33 Fla. L. Weekly D655
(Cite as: 979 So.2d 1023)

Page 2

**PER CURIAM.**
Appellants ("Purchasers") seek reversal of an adverse summary judgment in favor of South Bayshore Tower, L.L.L.P. ("the Developer"). Based upon accord and satisfaction, we affirm.

The Developer and the Purchasers entered into pre-construction condominium *1024 contracts and the Purchasers gave the Developer a ten percent deposit of the total purchase price. Thereafter, the Developer abandoned the project. The Developer returned the Purchasers' deposits with a letter stating that cashing the check would serve as an accord and satisfaction, terminating the parties' rights and obligations under the contract. All of the Purchasers cashed their checks.

The Purchasers contend that there was no intent to settle an existing dispute and thus, no accord and satisfaction. The Developer asserts that there was an accord and satisfaction because the Purchasers relieved the parties of all rights and obligations under the contract by cashing their returned deposit checks. We agree with the Developer.

[1][2] An accord and satisfaction results when: (1) the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement; and (2) there is actual performance in accordance with the new agreement. Compliance with the new agreement discharges the prior obligations. *Rudick v. Rudick,* 403 So.2d 1091, 1094 (Fla. 3d DCA 1981).

Here, cashing the checks satisfied the elements of accord and satisfaction. It showed that the Purchasers intended to effectuate a settlement of the dispute and also constituted actual performance of the new agreement.

[3] Additionally, if an offer clearly serves as an accord and satisfaction, and the other party accepts the offer, then he or she is bound to the conditions attached. *McGehee v. Mata,* 330 So.2d 248 (Fla. 3d DCA 1976). Had the Purchasers intended the Developer to remain obligated under the contract, then

they should not have cashed their checks.

[4] Further, strong public policy supports the use of accord and satisfaction. Accord and satisfaction is a convenient and valuable tool for resolving disputes informally without litigation. *Burke Co. v. Hilton Dev. Co.,* 802 F.Supp. 434 (N.D.Fla.1992). It would be unjust to allow a party to accept a check as an accord and satisfaction, and then later permit that party to sue under the same rights and obligations that the accord and satisfaction was intended to release. The person cannot "have his cake and eat it too." 802 F.Supp. at 439.

Accordingly, we affirm the final summary judgment.

Affirmed.

Fla.App. 3 Dist.,2008.
Martinez v. South Bayshore Tower, L.L.L.P.
979 So.2d 1023, 33 Fla. L. Weekly D655

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.