**TAB 6**

Westlaw.

236 B.R. 289
236 B.R. 289, 12 Fla. L. Weekly Fed. B 268
(Cite as: 236 B.R. 289)

C
In re U.S. Sav. Assoc., Ltd.
Bkrtcy.M.D.Fla.,1999.

United States Bankruptcy Court,M.D. Florida,
Tampa Division.
In re U.S. SAVINGS ASSOC., LTD., A Partner-
ship, Debtor.
**Bankruptcy No. 93-11305-9P1.**

July 26, 1999.

Creditors moved for extension of time in which to file proofs of claim or, in alternative, for acceptance of their claims as informally filed. The Bankruptcy Court, Alexander L. Paskay, Chief Judge, held that: (1) even if movants were allowed to file late proofs of claim, court would still have to disallow claims as barred by res judicata; (2) doctrine of informal proof of claim did not apply; and (3) movants were not entitled to extension of time to file proofs of claim, even accepting their contention that they did not learn of bankruptcy case until after claims bar date expired.

Motion denied.

West Headnotes

**[1] Judgment 228 ⟶585(2)**

228 Judgment
   228XIII Merger and Bar of Causes of Action and Defenses
      228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded
         228k585 Identity of Cause of Action in General
            228k585(2) k. What Constitutes Identical Causes. Most Cited Cases
Even if movants were allowed to file late proofs of claim, bankruptcy court would still have to disallow claims as barred by doctrine of res judicata, where claims which movants sought to assert were identical to those disallowed by previous order of

bankruptcy court from which no appeal was taken.

**[2] Bankruptcy 51 ⟶2902**

51 Bankruptcy
   51VII Claims
      51VII(D) Proof; Filing
         51k2901 Sufficiency of Filing
            51k2902 k. Informal Proof. Most Cited Cases
Document which apprises court of existence, nature and amount of claim may be considered an "informal proof of claim" if document makes clear the claimant's intention to hold debtor liable for claim.

**[3] Bankruptcy 51 ⟶2902**

51 Bankruptcy
   51VII Claims
      51VII(D) Proof; Filing
         51k2901 Sufficiency of Filing
            51k2902 k. Informal Proof. Most Cited Cases
Doctrine of informal proof of claim applies only when document to be treated as informal proof is filed by creditor prior to claims bar date; doctrine had no application, and could not be raised by movants as basis for allowing their untimely claims as amendment to earlier informal proofs, where movants did not assert claims in bankruptcy court, even informally, until after bar date expired.

**[4] Bankruptcy 51 ⟶2900(2)**

51 Bankruptcy
   51VII Claims
      51VII(D) Proof; Filing
         51k2897 Time for Filing
            51k2900 Extension of Time; Excuse for Delay
               51k2900(2) k. Lack or Insufficiency of Notice. Most Cited Cases
Movants were not entitled to extension of time to file proofs of claim, even accepting their contention

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

236 B.R. 289                                                                        Page 2
236 B.R. 289, 12 Fla. L. Weekly Fed. B 268
(Cite as: 236 B.R. 289)

that they did not learn of bankruptcy case until after claims bar date had expired, where movants waited for more than one year after they first learned of case to file proofs of claim, and made no showing of excusable neglect.

*289 Richard Siegmeister, Coconut Grove, FL, for debtor.
Robert B. Glenn, Tampa, FL, trustee.
*290 Edwin G. Rice, Tampa, FL, for trustee.
Jeff C. Noebel, Dallas, TX, Pro se.
M.M. Halpern, Dallas, TX, for Equisource Realty.

### ORDER ON JOINT MOTION TO EXTEND TIME TO FILE PROOFS OF CLAIM OR IN THE ALTERNATIVE TO ACCEPT PROOFS OF CLAIM AS INFORMALLY FILED BY JEFF C. NOEBEL AND EQUISOURCE REALTY (DOC. NO. 517)

ALEXANDER L. PASKAY, Chief Judge.
THIS CAUSE came on for hearing upon the Joint Motion to Extend Time to File Proofs of Claim or In the Alternative to Accept Proofs of Claim as Informally Filed, filed by Jeff C. Noebel (Noebel) and Equisource Realty Corporation (Equisource) (collectively, the "Movants"). The Court reviewed the Motion and the record, heard argument of Noebel and counsel for Equisource and the Reorganization Trustee and now finds and concludes as follows:

The bar date for filing claims in this Chapter 11 case was August 10, 1994. Although Movants contend that they had no notice of the pendency of this case until June 1995, after the bar date. Movants failed to file proofs of claim until over a year later. On February 10, 1997, Movants filed Proof of Claim Nos. 83 through 86. On July 24, 1998, the Reorganization Trustee filed objections to these claims on the grounds that the claims were filed late, that the claimants failed to attach sufficient documentation in support of the claims and that the claims were barred by the doctrines of res judicata or collateral estoppel. (Doc. Nos. 453, 454, 455 and 456). A hearing on the Objections was held on

September 9, 1998. (Doc. No. 458). Counsel for the Reorganization Trustee, counsel for Equisource and Jeff C. Noebel appeared at the hearing. On September 30, 1998, the Court entered an Order disallowing Claim Nos. 83 through 86 with prejudice. (Doc. No. 472). Neither Noebel or Equisource appealed the Order. Thus, the issue of the allowance of their claims has been resolved with finality.

On August 11, 1998, Noebel and Equisource filed Proof of Claim Nos. 87 through 90. The Trustee filed an Objection on the grounds that the claims were late, they did not properly amend Claim Nos. 83 through 86, the claims failed to attach proper documentation, the claims were barred by the doctrines of res judicata or collateral estoppel, and the claims asserted a similar right to payment as Claim No. 54, which had been previously disallowed by the Court. (Doc. Nos. 468-471). A hearing was held on the Trustee's Objection to these claims on November 18, 1998. (Doc. No. 475). Finding that Claim Nos. 87 through 90 were late filed claims, this Court entered an Order on December 2, 1998, disallowing Claim Nos. 87-90. (Doc. No. 483-486). Neither Noebel or Equisource appealed the Orders.

In an attempt to assert claims against the Debtor for at least the third time, Movants filed the instant Motion seeking either (1) authority to file a late claim; or (2) to consider documents filed in this case to be an informal proofs of claim. This Court is unable to afford the relief sought for several reasons:

[1] First, even if Movants were given authority to file late claims and even if this Court were to consider Movants to have filed informal proofs of claim, the substantive claims asserted through either of these procedural vehicles would still be disallowed. This is because this Court's Orders of September 30, 1998 and December 2, 1998 are final non-appealable orders which disallow Movants' claims. Movants seek authority to pursue the identical claims that were previously disallowed. See Motion, par. 1, 3, 4, and 9. Thus, Movants' claims are barred by the doctrine of res judicata.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

236 B.R. 289
236 B.R. 289, 12 Fla. L. Weekly Fed. B 268
(Cite as: 236 B.R. 289)

Page 3

[2][3] Second, putting aside that the claims are barred, the doctrine of informal *291 proof of claim is inapplicable here. It is true that a document which apprises the court of the existence, nature and amount of the claim may be considered to be an informal proof of claim if the document makes clear the claimant's intention to hold the debtor liable for the claim. *See In re Charter Co.,* 876 F.2d 861, 864 (11th Cir.1989); *see also In re L. Meyer & Son Seafood Corp.,* 188 B.R. 315 (Bankr.S.D.Fla.1995). However, the doctrine only applies when the document to be treated as the informal proof of claim is filed by the creditor prior to the bar date. *See In re Norris Grain Co.,* 131 B.R. 747, 750 (M.D.Fla.1990). Here, Movants did not assert claims in the bankruptcy court, even informally, until after the bar date.

[4] Third, the request for an extension of time to file proofs of claim also lacks merit. Movants contend that they first learned of the pendency of the case in June 1995. Yet, they waited until February 10, 1997, over one year, to file proofs of claim and at that time failed to seek authority to do so. It is wholly inappropriate to seek an extension now after the fact. In addition, Movants have made no showing of excusable neglect. *See In re Analytical Systems, Inc.,* 933 F.2d 939 (11th Cir.1991); *In re South Atlantic Financial Corp.,* 767 F.2d 814 (11th Cir.1985).

In view of the foregoing, the Motion should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Joint Motion to Extend Time to File Proofs of Claim or In the Alternative to Accept Proofs of Claim as Informally Filed, filed by Jeff C. Noebel and Equisource Realty be, and the same is hereby denied with prejudice.

Bkrtcy.M.D.Fla.,1999.
In re U.S. Sav. Assoc., Ltd.
236 B.R. 289, 12 Fla. L. Weekly Fed. B 268

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 7**

Westlaw.

381 B.R. 804

381 B.R. 804, 49 Employee Benefits Cas. 142, 21 Fla. L. Weekly Fed. B 227

(Cite as: 381 B.R. 804)

Page 1

H

In re **Winn-Dixie** Stores, Inc.

Bkrtcy.M.D.Fla.,2008.

United States Bankruptcy Court,M.D. Florida,
Jacksonville Division.
In re Jointly Administered **WINN-DIXIE**
STORES, INC., et al., Reorganized Debtors.
**No. 05-03817-3F1.**

Feb. 7, 2008.

**Background:** Reorganized Chapter 11 debtor objected to amended proofs of claim filed by lessors after entry of order confirming debtor's proposed plan, as allegedly barred by res judicata effect of confirmed plan.

**Holding:** The Bankruptcy Court, Jerry A. Funk, J., held that lessors who, despite having received full disclosure of terms of debtor's proposed Chapter 11 plan and of fact that distributions that they would receive under plan were in full satisfaction of their lease rejection damages claims, did not object to plan or seek to amend their rejection damages claims until after plan was confirmed, were barred by res judicata effect of confirmed plan from belatedly filing amended claims that increased the rejection damages claimed by more than $170,000 and more than $860,000 respectively.

Objections sustained.

West Headnotes

**[1] Bankruptcy 51 ⟲3568(2)**

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3566 Confirmation; Objections
                51k3568 Effect
                    51k3568(2)   k.   Conclusiveness.
Most Cited Cases
Lessors who, despite having received full disclos-

ure of terms of debtor's proposed Chapter 11 plan and of fact that distributions that they would receive under plan were in full satisfaction of their lease rejection damages claims, did not object to plan or seek to amend their rejection damages claims until after plan was confirmed, were barred by res judicata effect of confirmed plan from belatedly filing amended claims that increased the rejection damages claimed by more than $170,000 and more than $860,000 respectively, notwithstanding that final paragraph of each lessor's proof of claim contained "stock" language providing that lessor reserved the right to amend and supplement its rejection damages claim as estimated amounts were fixed and additional information became available; such "stock" language could not reasonably be considered to operate as postconfirmation reservation of rights, especially in Chapter 11 case in which tens of thousands of claims had been filed.

**[2] Bankruptcy 51 ⟲3568(2)**

51 Bankruptcy
    51XIV Reorganization
        51XIV(B) The Plan
            51k3566 Confirmation; Objections
                51k3568 Effect
                    51k3568(2)   k.   Conclusiveness.
Most Cited Cases
Creditor cannot reasonably expect to sit on its rights throughout process leading up to confirmation of Chapter 11 plan and then argue that it is entitled to relief postconfirmation, without consideration of specific terms of confirmed plan. 11 U.S.C.A. § 1327(a).

**\*805** Adam Ravin, Skadden Arps Slate Meagher & Flom, LLP, New York, NY, Allan E. Wulbern, Beau Bowin, Cynthia C. Jackson, David L. Gay, James H. Post, Leanne McKnight Prendergast, Stephen D. Busey, Smith Hulsey & Busey, Jacksonville, FL, for Reorganized Debtors.

*FINDINGS OF FACT AND CONCLUSIONS OF*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

381 B.R. 804                                                                                      Page 2
381 B.R. 804, 49 Employee Benefits Cas. 142, 21 Fla. L. Weekly Fed. B 227
**(Cite as: 381 B.R. 804)**

*LAW*

JERRY A. **FUNK**, Bankruptcy Judge.
This Case is before the Court upon Winn-Dixie
Stores, Inc. and twenty-three of its reorganized
debtor affiliates ("Debtors")' Objection to Claims
Filed by IRT Partners, L.P. and Equity One
(Hunter's Creek), Inc. After a hearing held on
December 20, 2007, the Court makes the following
Findings of Fact and Conclusions of Law.

*FINDINGS OF FACT*

On September 8, 2005, the Court entered an order
(the "Rejection Order"), authorizing Debtors to re-
ject their leases with (i) IRT Partners, L.P. ("IRT")
for Store Number 2087 located in Stanley, North
Carolina (the "Carolina Lease") and (ii) Equity
One, Inc. ("Equity One") for Store Number 2391
located in Orlando, Florida (the "Orlando Lease")
(collectively, the "Leases"). (Debtors' Ex. 6). Pur-
suant to the Rejection Order, the rejection was ef-
fective on the later of the tenth calendar day follow-
ing service of a notice of rejection to the landlords
or the date Debtors surrendered the leased
premises. (Debtors' Ex. 6). The Rejection Order
also required that the "landlord of any Lease rejec-
ted pursuant to this Order must file a proof of claim
for damages arising from the rejection of the ap-
plicable lease within thirty (30) days following the
applicable Rejection Date or be forever barred from
asserting any such claim." (Debtors' Ex. 6).

On September 14, 2005, Debtors sent a Notice of
Rejection to both IRT and Equity One informing
them that they had rejected the Leases. (Debtors'
Ex. 8). On October 31, 2005, Equity One and IRT
filed a motion to extend the Rejection Claims Bar
Date to November 15, 2005 (the "Extension Mo-
tion"). (Claimants' Ex. 9). A ruling was never made
on the Extension Motion as Equity One and IRT
never requested a hearing. On November 15, 2005,
IRT filed proof of claim number 12484 as an unse-
cured claim for "rejection damages," in the amount
of $20,364.24, for prepetition amounts due under

the Carolina Lease (the "IRT Claim"). (Claimants'
Ex. 10). On the same date, Equity One filed proof
of claim number 12486 as an unsecured claim for
"rejection damages," in the amount of $87,498.59,
for prepetition amounts due under the Orlando
Lease (the "Equity One Claim"). (Claimants' Ex. 11).

On October 31, 2006, Debtors filed an objection to
the Equity One and the IRT Claims upon the basis
that the claims were overstated (the "Objection").
The Objection required the claimants to file any re-
sponse in opposition by November 20, 2006.
Neither IRT nor Equity One opposed or otherwise
responded to the Objection. On November 30,
2006, the Court entered an order sustaining the
Debtors' Objection (the "Claims Reduction Order"),
(i) reducing and allowing the IRT Claim in the
amount of $11,636.71 and disallowing *806 any
excess amount and (ii) reducing and allowing the
Equity One Claim in the amount of $16,913.96 and
disallowing any excess amount (collectively, the
"Allowed Claims"). (Debtors' Ex. 12). Neither IRT
nor Equity One appealed the Claims Reduction Or-
der.

Debtors' Joint Plan of Reorganization was filed on
August 9, 2006 and all interested parties received
full disclosure of the Plan's terms and conditions.
(Debtors' Ex. 9). On November 9, 2006, the Court
entered its order confirming the Plan (the
"Confirmation Order"). (Debtors' Ex. 11). Neither
Equity One nor IRT objected to or appealed from
the Confirmation Order. The Plan became effective
on November 21, 2006. Under the terms of the con-
firmed Plan, all allowed unsecured claims were en-
titled to receive a distribution of New Common
Stock issued by Debtors in exchange for their
claims. The claims of Equity One and IRT are clas-
sified under § 4.3 of the Plan as unsecured Class 13
Landlord Claims. (Debtors' Ex. 11).

On December 22, 2006, Debtors distributed to
Equity One, and Equity One accepted, 782 shares
of New Common Stock in payment of its claim. On
January 9, 2007, Winn-Dixie distributed to IRT,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

381 B.R. 804, 49 Employee Benefits Cas. 142, 21 Fla. L. Weekly Fed. B 227
(Cite as: 381 B.R. 804)

and IRT accepted, 538 shares of New Common Stock in payment of its claim. Pursuant to § 12.13 of the Plan, the distributions of New Common Stock to unsecured creditors are "in complete satisfaction" of any claim such creditors may have against Winn-Dixie. *Plan, § 12.13, p. 43.* (Debtors' Ex. 11). Similarly, pursuant to § 4.3 of the Plan (which describes the treatment of Class 13 Landlord Claims, including the IRT and Equity One Claims), each holder of a claim receives its distribution of New Common Stock "in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim." *Plan, § 4.3, p. 18.*

Paragraph 40 of the Confirmation Order set the deadline for filing rejection damages (the "Rejection Damages Bar Date") for contracts and leases as December 9, 2006. (Debtors' Ex. 11). On January 5, 2007, Equity One filed proof claim number 13741, in the amount of $878,478.41. (Debtors' Ex. 4).[FN1] The claim states on its face that it amends the Equity One Claim (Claim No. 12486) for additional § 502 rejection damages (an increase of over $860,000) for the Orlando Lease. (Debtors' Ex. 4). On January 5, 2007, IRT filed proof of claim number 13740 in the amount of $185,244.67. (Debtors' Ex. 3). The claim states that it amends the IRT Claim (Claim No. 12484) for additional § 502 rejection damages (an increase of over $170,000) under the Carolina Lease. (Debtors' Ex. 3). On April 5, 2007, Winn-Dixie filed an objection to the amendments upon the basis that the claims are barred by the terms of Winn-Dixie's confirmed Plan. (Debtors' Ex. 13).

> FN1. January 5, 2007 was the deadline for filing administrative claims (the "Administrative Claims Deadline"). However, as the Amended Claims are for rejection damages the Administrative Claims Deadline is not applicable.

### CONCLUSIONS OF LAW

[1] The issue before the Court for its determination is whether the doctrine of res judicata bars the IRT

and Equity One Claims as amended (the "Amended Claims"). Thus, the Court will examine the specific language contained within Debtors' Plan as well as the effect that res judicata has on confirmed plans, in addition to any applicable policy considerations.FN2

> FN2. The rejection of the leases constituted a pre-petition breach by operation of 11 U.S.C. § 502(g). *In re Unidigital, Inc.,* 262 B.R. 283 (Bankr.D.Del.2001); *In re Jamesway Corp.,* 202 B.R. 697 (Bankr.S.D.N.Y.1996). Specifically, § 502(g) provides: "A claim arising from the rejection, under 365 of this title ... of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed ... or disallowed ... the same as if such claim had arisen before the date of the filing of the petition." As Paragraph 40 of the Confirmation Order set the Rejection Damages Bar Date as December 9, 2006, the Amended Claims were not timely filed.

*807 Debtors maintain that pursuant to the specified terms in the confirmed Plan the distributions of New Common Stock to IRT and Equity One ("Claimants") were "in full satisfaction, settlement, release and discharge of and in exchange of the Allowed Claim." *Plan § 4.3(g), p. 18.* Additionally, Debtors highlight the language contained in § 12.13 of the Plan, which provides:

... [A]ll consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties and ... the Debtors, and each of them, shall (i) be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in *Section 502* of the Bankruptcy Code... [and] all

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

381 B.R. 804
381 B.R. 804, 49 Employee Benefits Cas. 142, 21 Fla. L. Weekly Fed. B 227
(Cite as: 381 B.R. 804)

Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence or other activity of any nature that occurred prior to the Effective Date....

*Plan, Section 12.13, p. 43.*(emphasis added).

Thus, based upon the terms and specific language contained in the Plan, Debtors assert that Claimants are precluded, pursuant to the doctrine of res judicata, from asserting any additional amounts. In support of their argument, Debtors cite to a bankruptcy decision out of the Southern District of Florida. *In re New River Shipyard Inc.,* 355 B.R. 894 (Bankr.S.D.Fla.2006). In *New River,* a creditor filed an amended claim two months after the plan of reorganization was confirmed. *Id.* at 908. The amendment increased the creditor's claim from approximately $980,000 to $1.9 million. *Id.* Judge Olson disallowed the amended claim, upon the basis that it was barred by the doctrine of *res judicata:*

A creditor's treatment under a confirmed plan of reorganization creates a contractual relationship between the debtor and the creditor. The creditor's pre-confirmation claim is subsumed in and replaced by the new contract created by the confirmed plan; "each claimant gets a 'new' claim, based on whatever treatment is accorded to it in the plan itself." The initial claim filed by the creditor during the pendency of the case is dead, replaced by the new contractual obligation created by the creditor's treatment under the confirmed plan.

The doctrine of *res judicata* in bankruptcy proceedings "not only bars a court from relitigating issues that have been litigated in a cause but also bars a court from litigating issues that *may have been litigated."*

*Id.* at 912 (citations omitted; emphasis in the origin-

al).

In reaching its holding, the court in *New River* relied on *Holstein v. Brill,* 987 F.2d 1268 (7th Cir.1993). In *Holstein,* the Seventh*808 Circuit denied a creditor's attempt to amend its claim after confirmation of the debtor's plan of reorganization, upon the basis that confirmation of the plan constituted a final adjudication, discharging all debts other than as provided in the plan:

Confirmation of the plan of reorganization is ... equivalent to final judgment in ordinary civil litigation.... Confirmation automatically discharges all debts other than those provided in the plan, 11 U.S.C. § 1141(d)(1)(A), and "each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself."

And whether or not late-breaking claims affect third parties' entitlements, they assuredly disrupt the orderly process of adjudication. To every thing there is a season, and the season for stating the amount of the debt is before the confirmation.

*Id.* at 1270-71 (emphasis in original).

Accordingly, the Debtors argue that the Amended Claims are barred by the *res judicata* effect of the Confirmation Order. Debtors also note that the Claimants had every opportunity to amend their rejection damage claims prior to confirmation, yet failed to do so in a timely fashion.

Conversely, Claimants argue that the claims as amended should be "freely allowed" pursuant to the law in the Eleventh Circuit. *In re International Horizons,* 751 F.2d 1213, (11th Cir.1985). In *International Horizons* the court stated that, "in a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *Id.* at 1216. Claimants assert that as the Amended Claims seek a new theory of recovery, upon the same set of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

381 B.R. 804
381 B.R. 804, 49 Employee Benefits Cas. 142, 21 Fla. L. Weekly Fed. B 227
(Cite as: 381 B.R. 804)

facts as the original claims, that they are entitled to be allowed as they are not "new" claims.

Although the Court recognizes that the law in *International Horizons* is controlling precedent, the holding does not support the proposition that a claim can be freely amended at *any* point in time. Consideration must be given to the terms of the confirmed plan, even if an amended claim fits within the guidelines discussed above. In fact, in declining to allow the amended claim, the Eleventh Circuit specifically discussed the appellant's failure to timely assert its claim, although it had "multiple opportunities" to do so. *Id.* at 1218. The Court noted that in addition to not objecting to the disclosure statement, which failed to schedule corporate income taxes, the appellant also failed to object to the plan, either in writing or at the confirmation hearing. *Id.* at 1218-1219. Accordingly, the court concluded that equitable considerations did not support the amendment as the appellant was given every chance to assert its rights yet failed to do so in a timely fashion.[FN3] *Id.* at 1219. Similarly to the appellant in *International Horizons,* the Claimants in the instant case also had multiple opportunities to assert their rights prior to confirmation, yet failed to do so, despite receiving full disclosure of the Plan's terms and conditions. Therefore, although the Court agrees with the Claimants' assertion that the Amended Claims do not constitute "new" claims, the claims are not entitled to be "freely" amended based upon the circumstances involved.

> FN3. The amended proof of claim at issue in *International Horizons,* was filed *prior* to plan confirmation.

**\*809** Additionally, Claimants maintain that despite the specific language contained in the Debtors' Plan, the reservation of rights contained in the last paragraph of each statement of claim preserved their right to amend the claims post-confirmation. The reservation provides:

"CLAIMANT RESERVES THE RIGHT TO AMEND AND SUPPLEMENT THIS REJEC-TION DAMAGES CLAIM AS ESTIMATED AMOUNTS ARE FIXED AND ADDITIONAL INFORMATION BECOMES AVAILABLE." FN4

> FN4. Claimants assert that they were attempting to mitigate their damages, and therefore did not originally include a damages calculation for unpaid future rent pursuant to 11 U.S.C. § 502(b)(6). However, the Court does not find this to be an adequate reason for the Claimants' inaction throughout the entire process leading up to confirmation. Claimants could have at least filed amended claims that approximated the damages, prior to the confirmation hearing.

(Claimants' Exs. 10-11).

In support of their position, Claimants rely upon the case of *In re Telephone Company of Central Florida,* 308 B.R. 579 (Bankr.M.D.Fla.2004). In *Telephone Company,* the court held that although the IRS did not object to the confirmation order it would allow the IRS's post bar-date amendment to the proof of claim, which was for approximately $2 million more than the original claim. *Id.* at 583. In reaching its holding, the court specifically noted that the IRS did not intentionally or negligently delay filing the amended proof of claim and that it may have been able to file its claim earlier if the debtor had fully cooperated with the investigation. *Id.* The court also noted that the debtor had reason to know that subsequent proofs of claims would be filed after the IRS completed its examination, as the debtor had not yet filed its returns for the applicable period. *Id.* at 582-583. It is for this reason, the IRS stamped the original proofs of claims "PENDING EXAMINATION." *Id.*

In addition to not being binding precedent upon this Court, the decision in *Telephone Company* is distinguishable from the instant case. Unlike the instant case, extenuating circumstances were involved in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

381 B.R. 804
381 B.R. 804, 49 Employee Benefits Cas. 142, 21 Fla. L. Weekly Fed. B 227
(Cite as: 381 B.R. 804)

the situation surrounding the dispute in *Telephone Company.* Notably, the debtor's failure to cooperate caused the extenuating circumstances, which resulted in the IRS not being able to file its proof of claim in a timely manner. *Id.* at 583. Although, the court did note that the IRS should have objected at the confirmation hearing, the debtor was on adequate notice that the claim would be amended as its tax returns for the applicable period had not yet been filed. *Id.* at 582-583. Thus, based upon the *specific* circumstances before it, the court made a judgment call in favor of allowing the IRS to amend its claim. *Id.* at 583. The instant case, however, does not present extenuating circumstances that justify the Claimants' decision to sit on their rights. Further, the Court finds that the language referenced in the statement of claims is essentially "stock language" that cannot reasonably be considered to operate as a post-confirmation reservation of rights, especially in a case such as the instant one, in which tens of thousands of claims were filed.

[2] It is the policy of this Court that a creditor cannot reasonably expect to sit on its rights throughout the process leading up to confirmation, then argue that it is *810 entitled to relief post-confirmation, without consideration to the specified terms of the confirmed plan. Just as the W or L in the score box at a sporting event determines a team's standing, a creditor's standing and rights, unless preserved, are determined by the terms of the confirmed plan.[FN5] Thus, the ball game truly is played at the confirmation hearing. In the instant case, the Claimants essentially forfeited their rights by failing to adequately protect their interests prior to the Plan being confirmed, despite having multiple opportunities to do so. To hold otherwise would render the terms of the confirmed Plan meaningless and open pandora's box, as there would be no finality or resolution, the entire concept behind confirmation of a plan.[FN6]

FN5. As discussed *supra,* the terms of the Debtors' Confirmed Plan were *extremely*

*specific* and clearly set forth.

FN6. As the Court's holding is not based upon a finding that the Original Claims Objection Order operated prospectively to disallow any future amendment to the original claims, 11 U.S.C. § 502(j), which provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause," is not applicable. The Court also notes that the Claimants neither alleged nor does the Court find a showing of excusable neglect.

## CONCLUSION

Based upon the above, the Debtors' Objection to the Claims of IRT and Equity One are Sustained. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Bkrtcy.M.D.Fla.,2008.
In re Winn-Dixie Stores, Inc.
381 B.R. 804, 49 Employee Benefits Cas. 142, 21 Fla. L. Weekly Fed. B 227

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.