## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al.,) | | Chapter 11 |
| Reorganized Debtors. ) | | Jointly Administered |
| _____ ) | | |

## ORDER GRANTING REORGANIZED DEBTORS' VERIFIED MOTION FOR SUMMARY FINAL JUDGMENT AS TO J. ADRIAN BARROW'S APPLICATION FOR CLAIM CURE

This case came before the Court upon Reorganized Debtors' Verified Motion for Summary Final Judgment as to J. Adrian Barrow's Application for Claim Cure (the "Motion") which was filed on April 24, 2008. The Reorganized Debtors seek the entry of a summary final judgment in their favor and against creditor J. Adrian Barrow ("Barrow") denying Barrow's Application for Claim Cure (Docket Nos. 14553 and 19044). On June 12, 2008 Barrow filed a response (the "Response") in opposition to the Motion. Upon a review of the pleadings, the Court finds it appropriate to grant the Motion. The following are undisputed material facts.

### Undisputed Material Facts

1.    On February 22, 2005 (the "Petition Date"), Winn-Dixie and twenty-three of its affiliates filed voluntary petitions for reorganization relief under Chapter 11 of the Bankruptcy Code.

2.    Prior to the Petition Date, Winn-Dixie had established and maintained a management security plan ("MSP") which was a non-qualified defined benefit plan that provided retirement and death benefits to participants. Under the terms of the MSP,

amounts payable to participants were to be paid exclusively from the general assets of the Debtors, and no participant had any claim, right, security or other interest in any asset of Winn-Dixie. Therefore, all claims of participants to benefits under the MSP constituted unsecured obligations of Winn-Dixie's estate.

3.       Winn-Dixie also established and maintained prior to the Petition Date a supplemental retirement plan ("SRP") which was an unfunded, unsecured plan, with benefits to be paid from Winn-Dixie's general assets. Although Winn-Dixie was authorized in its discretion to (and did) establish a trust to hold plan assets, the SRP provided that Winn-Dixie would remain the owner of all trust assets and that such assets would become subject to the claims of creditors in the event Winn-Dixie filed bankruptcy. Therefore, all claims of participants to the benefits under the SRP also constituted unsecured obligations of Winn-Dixie's estate.

4.       Barrow left Winn-Dixie's employment on January 10, 2004 as a result of his position being eliminated. Although Barrow sought a lump sum payment of his SRP account at that time, his request was denied because he had previously elected a ten year distribution of the SRP funds.

5.       On December 15, 2003, in connection with the termination of Barrow's employment, Dedra Hogan, a vice president of Corporate and Field Human Resources, wrote a letter to Barrow on behalf of Winn Dixie. Paragraph 4 of the letter provided that "I will, however, add the paragraph you requested which secures your SRP and MSP accounts from the business dealings which may have the potential to negatively impact either of those accounts."

6.    On January 5, 2004 Winn Dixie and Barrow executed a release (the "Barrow Release"). Paragraph 7 of the Barrow Release provided that "[I]f Winn Dixie is currently engaged in or subsequently becomes engaged in any business dealing which might negatively impact the SRP and MSP accounts of [Barrow], said funds will be specifically excluded from the business dealings."

7.    On July 27, 2005, Barrow filed (i) proof of claim number 7339 as a secured claim in the amount of $237,218 for amounts he asserted were due to him under the MSP and (ii) proof of claim number 7349 as a secured claim in the amount of $227,244.34 for amounts he asserted were due to him under the SRP.[1 and 2]

---

[1] Although Barrow classified his claims as "secured", Barrow admitted in his deposition that he did not use that term to mean a debt secured by assets of Winn-Dixie's estate. The following line of questioning occurred during Barrow's deposition.

| | |
|---|---|
| Q | In your objection to the debtor's motion for order authorizing rejection of employment—employment related executory contract you refer to your claims as being secured. |
| A | Yes. |
| Q | What did you mean by that? |
| A | I meant I was due not to have any negative impact financially. |
| Q | That the SRP and MSP accounts were due not to have any-- |
| A | Negative impact to me financially, and they were to be delivered to me as agreed upon in the release. |
| Q | Okay. So-- |
| A | To simplify the answer, I believe it would just be to ensure that I was made whole for those accounts. |
| Q | So you're referring to the part of the release that said they were to—the MSP and SRP accounts were to be excluded from business dealings that might negatively impact them? |
| A | That's correct. |
| Q | So you're not using the term secured in this context to mean collateralized? |
| A | No. It would be to make me whole. |
| Q | Okay. So you're not saying that you were given collateral to secure the accounts? |

8.     On August 4, 2006 Winn Dixie filed Motion for Order Authorizing Rejection of Employment-Related Executory Contracts (the "Motion to Reject"). By the Motion to Reject, Winn Dixie sought to reject the Barrow Release.

9.     On August 15, 2006 Barrow filed an objection to the Motion to Reject ("Barrow's Objection to the Motion to Reject"), alleging, among other things, that Winn Dixie had failed to execute its duties and responsibilities with respect to Paragraph 7 of the Release and that the Barrow Release and the December 15, 2003 letter "provide the basis for qualifying my claims as a 'secured creditor'".

10.     On August 9, 2006, Winn-Dixie filed its Joint Plan of Reorganization, which was subsequently modified and supplemented (the "Plan") (Docket Nos. 10058, 11606 and 11765).

---

| A | I was given letters through the release, through that agreement, and through a letter sent back to me by Dedra Dogan ensuring the accounts were secured. So her letter and the company's agreement would be the collateral. |
|---|---|
| Q | But you weren't given any kind of property or letter of credit— |
| A | No. |
| Q | --or any other thing of value? |
| A | No. |
| Q | Okay, just those two pieces of paper? |
| A | Yes. |
| Q | Are you aware of any other fact or evidence to support the argument that the MSP or SRP accounts were collateralized or secured? |
| A | Not at this time. |
| Q | Are you aware of any other document or paper to support the argument that the MSP or SRP accounts were secured? |
| A | Other than those two documents. Those are the ones that I rely on. |

(Barrow Dep. Tr. p.7, line 17-p.9, line 13).

[2] Barrow also filed proof of claim numbers 5743 and 5795, which were amended by claim numbers 7349 and 7339, respectively, and subsequently disallowed by the Court's Order Disallowing and Expunging (a) Duplicate Claims and (b) Amended and Superseded Claims as Set Forth in the Debtors' Second Omnibus Claims Objection, entered on January 19, 2006 (Docket No. 5219).

11.     Winn-Dixie served the Plan on all Winn-Dixie creditors affected by the Plan, including Barrow, together with a disclosure statement, a ballot allowing the creditors to vote in favor of or against the Plan, and a notice of the October 13, 2006 confirmation hearing date (Docket No. 10888).

12.     On October 13, 2006, pursuant to Section 1129 of the Bankruptcy Code, the Court held a hearing to determine whether the Plan should be confirmed. Approximately 50 creditors filed objections to confirmation. In a full day hearing, the Court received evidence, heard argument, and took the objections under consideration. *Tr. of Confirmation Hr'g* (Docket No. 12834).

13.     Barrow did not appear at the confirmation hearing or object to the confirmation of the Plan.

14.     On November 9, 2006, the Court entered its order confirming the Plan (the "Confirmation Order") (Docket No. 12440). Barrow neither objected to nor appealed from the Confirmation Order. The Plan became effective on November 21, 2006 (the "Effective Date").

15.     Pursuant to the Plan, the MSP and SRP were terminated for all purposes as of the Effective Date. Section 7.9(c) of the Plan provided that (i) benefit accruals under the MSP and SRP, and related trust and individual agreements, ceased as of the Petition Date, (ii) no further benefits are payable under the MSP and SRP, or related trust or individual agreements, and as of October 31, 2006, (iii) to the extent any additional rights, obligations, or claims existed under the MSP or SRP, or related trust or individual agreements, such rights, obligations, or claims were terminated and deemed rejected as of the Effective Date. *Plan, § 7.9(c), p. 29.*

16.    On October 17, 2006, Winn-Dixie filed its objections to the MSP and SRP claims of Barrow and similarly situated claimants on the grounds that their MSP and SRP claims were overstated (the "Claims Objection") (Docket No. 11953).    The Claims Objection sought to reduce the allowed amounts of Barrow's MSP retirement and death benefit claims to $89,234.00 and $59,304.00, respectively.    The Claims Objection also sought to reduce the amount of Barrow's allowed SRP claim to $173,244.34.    Finally, because Barrow's MSP and SRP claims were not entitled to secured status under § 506(a) of the Bankruptcy Code because they were not (a) secured by liens on any property in which the Debtors had in interest or (b) subject to setoff under § 553 of the Bankruptcy Code, the Claims Objection sought to reclassify them as non-priority unsecured claims. The Claims Objection required Barrow to file any response in opposition by November 6, 2006.

17.    Notice of the Claims Objection was served on Barrow on October 17, 2006, at the address listed on Barrow's proofs of claims (Docket Nos. 12227 and 12229).

18.    Barrow's mailing address had not changed from the address at which the notices were served since February 21, 2005.    *Barrow Dep. Tr. p. 5, lines 7-15.* The notices were not returned as undeliverable. *Affidavit of Kathleen M. Logan, para. 8.*

19.    Barrow did not oppose or otherwise respond to the Claims Objection.

20.    A hearing on the Claims Objection was scheduled for November 16, 2006. Barrow was served at the same mailing address with the Notice of Hearing on the Claims Objection on October 17, 2006 (Docket No. 11954).    The notice of hearing was not returned as undeliverable. *Logan Aff., para. 8.* [3]

---

[3] Although Barrow testified at his deposition that he "could not recall" whether he received the Claims Objection, the Claims Objection and Notice of Hearing were sent to the same address to which the

21.     After a hearing on November 16, 2006, at which Barrow did not appear, the Court entered an order (the "Claims Adjustment Order") (Docket No. 12652) sustaining Winn-Dixie's Claims Objection and allowing Barrow's MSP retirement and death benefit claims as non-priority unsecured claims in the reduced amounts of $89,234.00 and $59,304.00, respectively. The Court allowed Barrow's SRP claim as a non-priority unsecured claim in the reduced amount of $173,244.34 (the reduced and allowed MSP and SRP claims are referred to collectively as, the "Allowed Claims").

22.     A copy of the Claims Adjustment Order was served on Barrow on November 28, 2007 (Docket No. 12846). The order was not returned as undeliverable. *Logan Aff., para. 9.* Barrow did not appeal the Claims Adjustment Order.

23.     Barrow's Allowed Claims are classified under Section 4.3 of the Plan as unsecured Class 15 Retirement Plan Claims. Pursuant to the Plan, the Holders of Class 15 Retirement Plan Claims received 38.75 shares of New Common Stock for each $1,000 of their allowed claim.[4]  *Plan, § 4.3(i), p. 19.*

24.     In December of 2006, Winn-Dixie distributed, and Barrow accepted, 10,174 shares of New Common Stock to Barrow in payment of MSP and SRP claims. *Logan Aff., para. 11-12; Barrow Dep. Tr. p. 15, line 23 – page 19, line 14.*

25.     Pursuant to Section 12.13 of the Plan, the distributions of New Common Stock to Barrow were "in complete satisfaction" of any claim Barrow had against Winn-Dixie. *Plan, § 12.13, p. 43.*

---

distribution on his claims was sent, and he evidenced no difficulty receiving and liquidating the distribution.

[4] The death benefits element of the MSP is classified under Class 2 MSP Death Benefit Claims. Upon a participant's death, death benefit claimants are to be paid the entire amount of their Allowed Claim in one lump sum payment.

26.     Similarly, pursuant to Section 4.3 of the Plan, which describes the treatment of Class 15 Retirement Plan Claims, including Barrow's Allowed Claims, each holder of a Class 15 claim receives its distribution of New Common Stock "in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim." *Plan, § 4.3, p. 19.*

27.     On January 5, 2007, three months after confirmation of the Plan, and after Barrow accepted New Common Stock in exchange for a release of all claims against Winn-Dixie, Barrow filed his "Application for Claim Cure" (Docket No. 14553) in which he asserted the same claims he asserted in his proof of claim numbers 7339 and 7449, which were reduced and allowed by the Claims Adjustment Order.  On November 21, 2007, Barrow filed his "Follow Up To Filing Application for Claim Cure" (Docket No. 19044) (collectively with Docket No. 14553, the "Application for Claim Cure").  By his Application for Claim Cure, Barrow seeks payment of the disallowed portion of his MSP and SRP claims and an increase in the amount of New Common Stock he is entitled to receive under the Plan notwithstanding the terms of the Claims Adjustment Order and Barrow's release of all claims against Winn-Dixie.

On January 16, 2008 the Court entered an Order Scheduling Trial for May 8, 2008 on (i) the Motion to Reject, (ii) Barrow's Objection to the Motion to Reject and (iii) the Application for Claim Cure.  On April 22, 2008 Winn Dixie filed a withdrawal of the Motion to Reject solely as it relates to the Release on the basis that the Release is not an executory contract and therefore not subject to the provisions of § 365 of the Bankruptcy Code.

On April 22, 2008 Winn Dixie filed a motion to continue the May 8, 2008 trial on the Application for Claim Cure[5] on the basis that it had filed a motion for summary judgment as to the Application for Claim Cure. The Court continued the trial to July 17, 2008. As the Court previously noted, Winn Dixie filed the Motion on April 24, 2008 and Barrow filed the Response on June 12, 2008.

### Summary Judgment Standard

Summary judgment under Rule 56 is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2008)(incorporated by Fed. R. Bankr. P. 7056). A moving party bears the initial burden of showing a court that there are no genuine issues of material fact that should be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); accord Clark v. Coats & Clark, Inc., 929 F.2d 604, 607 (11th Cir. 1991). A moving party discharges its burden on a motion for summary judgment by "'showing' – that is, pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the movant has met this initial burden, "the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997)(citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970) and Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1985)). In other words, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it

---

[5] Because Winn Dixie has filed a notice withdrawing the Motion to Reject, the Motion to Reject and the Objection to the Motion to Reject had become moot.

is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).

If a moving party satisfies this burden, then a nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). A nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. <u>See</u> <u>id.</u> "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Id.</u>

### Application to the Instant Case

Winn Dixie asserts that the Application for Claim Cure should be disallowed as a matter of law because any claims Barrow may have had against Winn-Dixie as of the Effective Date are (i) barred by the *res judicata* effect of the confirmed Plan, (ii) barred by the res judicata effect of the Claims Adjustment Order, and (iii) satisfied and released by reason of Barrow's acceptance and liquidation of New Common Stock distributed to him pursuant to Winn-Dixie's Plan. Barrow contends that because Winn Dixie agreed to "secure" his MSP and SRP accounts from "any business dealings, which might negatively impact them", the New Common Stock which he received on account of his MSP and SRP accounts was only a "partial claim cure". For the following reasons, the Court finds that Winn Dixie is entitled to summary judgment in its favor.

### A.  Barrow's Application for Additional Payment is barred by the *res judicata* effect of the Plan

Confirmation of Winn-Dixie's Plan constitutes a final adjudication of all Winn-Dixie's liabilities that arose on or before the confirmation of the Plan. Because Barrow's

Application for Claim Cure asserts pre-confirmation liabilities, it is barred by the *res judicata* effect of the Plan.

In <u>In re New River Shipyard Inc.</u>, 355 B.R. 894 (Bankr. S.D. Fla. 2006), a creditor filed an amended claim two months after confirmation of a plan of reorganization. The Bankruptcy Court disallowed the amended claim, holding that it was barred by *res judicata* because of the confirmation of the debtor's plan:

> A creditor's treatment under a confirmed plan of reorganization creates a contractual relationship between the debtor and the creditor. The creditor's pre-confirmation claim is subsumed in and replaced by the new contract created by the confirmed plan; "each claimant gets a 'new' claim, based on whatever treatment is accorded to it in the plan itself." The initial claim filed by the creditor during the pendency of the case is dead, replaced by the new contractual obligation created by the creditor's treatment under the confirmed plan.
>
> The doctrine of *res judicata* in bankruptcy proceedings "not only bars a court from relitigating issues that have been litigated in a cause but also bars a court from litigating issues that may have been litigated. MSM had every opportunity to amend its claim and litigate its entitlement to the new consequential damages it seeks at or before the confirmation hearing. It did not do so, and its attempt to amend its claim two months after confirmation is barred by *res judicata*.

<u>Id.</u> at 912 (citations omitted;<br>
emphasis in the original).

In court in <u>New River</u> relied on <u>Holstein v. Brill</u>, 987 F.2d 1268 (7th Cir. 1993) where the court denied a creditor's attempt to amend its claim after confirmation of the debtor's plan of reorganization on the ground that confirmation of the plan constituted a final adjudication, discharging all debts other than as provided in the plan. <u>Accord</u> <u>In re</u>

Hillsborough Holdings Corp., 267 B.R. 882, 890 (Bankr. M.D.Fla. 2001) ("Under the Bankruptcy Code, all claims of creditors which arose prior to confirmation are discharged and the debtor need not pay them, except as provided by the plan.").

In the instant case, the Court's Confirmation Order incorporated the terms of the Plan relating to the release, discharge and termination of Winn-Dixie's liabilities under the MSP and SRP, and constitutes a final adjudication as to those issues.  The Plan provided that Barrow was to receive 38.75 shares of New Common Stock for each $1,000 of his Allowed Claims.  As discussed more fully in section C below, the Plan also provided at sections 4.3(i) and 12.13 that Barrow's acceptance of New Common Stock was in exchange for Barrow's release of Winn-Dixie's liabilities under the MSP and SRP plans. The Plan further provided at section 7.9(c) that "no further benefits shall be payable [under the MSP and SRP plans] as of October 31, 2006" and that all other MSP and SRP claims "shall be extinguished and terminated in full as of the Effective Date."

Barrow had ample opportunity to object to the confirmation of the Plan, including its release and discharge provisions, but did not do so.  Instead, Barrow accepted Winn-Dixie's distribution of New Common Stock in the amount provided for in the Plan in complete satisfaction of his claims.  Because the Confirmation Order incorporated the Plan's release and discharge terms, the order constitutes a final adjudication as to the amount Barrow is entitled to receive on his Allowed Claims.  Barrow, therefore, is barred by *res judicata* from seeking any distribution in excess of that provided in the Plan.  As the Court recently noted in In re Winn-Dixie Stores, Inc. et. al., 381 B.R. 804 (Bankr. M.D. Fla. 2008) when it disallowed a landlord's post-confirmation claim:

Just as the W or L in the score box at a sporting event
determines a team's standing, a creditor's standing and
rights, unless preserved, are determined by the terms of the
confirmed plan.  Thus, the ball game truly is played at the
confirmation hearing.   In the instant case, the Claimants
essentially forfeited their rights by failing to adequately
protect their interests prior to the Plan being confirmed,
despite having multiple opportunities to do so.  To hold
otherwise would render the terms of the confirmed Plan
meaningless and open a Pandora's box, as there would be
no finality or resolution, the entire concept behind
confirmation of a plan.

B.    **Barrow's Application for Additional Payment is barred by the _res judicata_
       effect of the Claims Adjustment Order.**

Barrow's Application for Claim Cure is also barred by the _res judicata_ effect of

the Claims Adjustment Order.  See In re Powe, 278 B.R. 539, 556 (Bankr. S.D. Ala.

2002) ("Orders allowing claims and orders confirming plans should be accorded _res_

_judicata_ effect."); In re U.S. Sav. Assoc., Ltd., 236 B.R. 289, 290 (Bankr. M.D. Fla.

1999) ("Movants seek authority to pursue the identical claims that were previously

disallowed...Thus, Movants' claims are barred by the doctrine of _res judicata_.").  Barrow

did not appeal from the Claims Adjustment Order and is now barred by _res judicata_ from

doing so.

C.    **Barrow's claims were satisfied and released upon his acceptance of Winn-
       Dixie's New Common Stock.**

Under Florida law, "[a]n accord and satisfaction results when (1) the parties

mutually intend to effect a settlement of an existing dispute by entering into a

superseding agreement; and (2) there is actual performance in accordance with the new

agreement".  Martinez v. South Bayshore Tower, L.L.L.P., 979 So. 2d 1023, 1024 (Fla.

3d Dist. Ct. App. 2008).  "Compliance with the new agreement discharges the prior

obligations." Id. Thus, when a debtor pays a creditor in full settlement of an existing

dispute, and the creditor accepts such payment, that payment constitutes an accord and

satisfaction of the debtor's prior obligations to the creditor. Id. Moreover, "if an offer

clearly serves as an accord and satisfaction, and the other party accepts the offer, then he

or she is bound to the conditions attached." Id.

In this case, Barrow accepted his distribution of New Common Stock in full

satisfaction of Winn-Dixie's pre-confirmation debt to Barrow. There is no issue of

material fact that Barrow received and liquidated 10,174 shares of stock from Winn-

Dixie. *See Logan Aff., para. 11-12 and Exhibit 1 thereto; Barrow Dep. Tr. p. 15, line 23

– page 19, line 14.*  Upon accepting his distribution, Barrow was bound by the release

and discharge provisions of the Plan.

Pursuant to the confirmed Plan, the distribution of New Common Stock to Barrow

in payment of his Allowed Claims was in "full satisfaction, settlement, release and

discharge of and in exchange for such Allowed Claims and for any other Claims against

the Debtors arising from the MSP or the SRP." *Plan, § 4.3(i), p. 19.*

In addition, pursuant to Section 12.13 of the Plan (as well as Section

1141(d)(1)(A) of the Bankruptcy Code), Winn-Dixie is now discharged "from any and all

Claims, including, but not limited to, demands and liabilities that arose before the

Effective Date, and all debts of the kind specified in Section 502" and all creditors,

including Barrow, are "precluded" from seeking additional amounts.  Section 12.13 of

the Plan provides:

> [A]ll consideration distributed under the Plan shall be in
> exchange for, and in complete satisfaction, settlement,
> discharge, and release of, all Claims of any nature

whatsoever against the Debtors or any of their assets or properties and ... the Debtors, and each of them, shall (i) be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in *Section 502* of the Bankruptcy Code ... [and] all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence or other activity of any nature that occurred prior to the Effective Date.... .

> *Plan, § 12.13, p. 43.* (emphasis added).

The Plan further provides at section 7.9(c) that "no further benefits shall be payable [under the MSP and SRP plans] as of October 31, 2006" and that all other MSP and SRP claims "shall be extinguished and terminated in full as of the Effective Date."

Barrow's Application for Claim Cure is barred by the terms of the confirmed Plan, pursuant to which Barrow received New Common Stock in *full satisfaction* of his claims. Barrow is expressly precluded by the Plan from asserting any additional amounts.

Because any claims Barrow may have had against Winn-Dixie as of the Effective Date are (i) barred by the *res judicata* effect of the confirmed Plan, (ii) barred by the res judicata effect of the Claims Adjustment Order, and (iii) satisfied and released by reason of Barrow's acceptance and liquidation of New Common Stock distributed to him pursuant to Winn-Dixie's Plan, Winn Dixie is entitled to summary judgment as to the Application for Claim Cure.  Upon the foregoing, it is

**ORDERED:**

1.      Winn-Dixie's Motion for Summary Judgment is granted.

2.      J. Adrian Barrow's Application for Claim Cure is denied.

3.      The trial scheduled for July 17, 2008 at 1:30 p.m. is cancelled.

**DATED** this 11 day of July, 2008 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

**Copies furnished to:**


Leanne McKnight Prendergast, Attorney for Winn Dixie
J. Adrian Barrow