# UNITED STATES BANKRUPTCY COURT

BEFORE THE HONORABLE JUDGE JERRY A. FUNK
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
300 N. HOGAN STREET.
COURT RM 4D
JACKSONVILLE, FL 32202

THE HONORABLE JUDGE BARRY WILLET
JEFFERSON CIRCUIT COURT JUDGE
DIVISION ONE
700 W. JEFFERSON STREET
LOUISVILLE, KY 40211

ATTORNEY RICHARD G. SEGAL
500 W. JEFFERSON STREET
SUITE 2100
LOUISVILLE, KY 40202

ATTORNEY R. HITE NELLY
471 W. MAIN STREET
SUITE 400
LOUISVILLE, KY 40202

INRE:

WINN-DIXIE STORES INCORPORATE – ET-AL            CASE#05-3817-3F1

DEBTORS                                          CHAPTER 11

                                                 JOINTLY – ADMINISTERED

## NOTICE MOTION

I am requesting to the court to lift the automatic stay of defendant Winn-Dixie Corporation. I have substantial reasons for this implication and these are the following reasons.

1. I have permanent substantial physical discomfort all without justification which results of the illegal conduct of the defendant Winn-Dixie Corporation.

2. I am the plaintiff which is me (Ernest S. Allen) as the judge know that I am in class 16 for intentional-reckless-intentional wrong doing and gloss negligence by Winn-Dixie incorporated.

# UNITED STATES BANKRUPTCY COURT

I (*Ernest Allen*) oppose the disallowance of my claim. I received two different sets of questionnaires at different dates, and they were filled out properly and turned in on a timely matter. I also turned in medical records for the past 11 years and the past 5 years shows when the incident occurred and I started having medical problems and the medical portion is still ongoing as of today's date. You also have all court documentations which also were turned in on a timely matter. I also have a court notice from Jefferson Circuit Court order from the Honorable Judge Barry L. Willett stating that a status conference is scheduled for August 28, 2006 at 10:00 a.m. pursuant to the automatic stay under 11 U.S.C 362, which I'm sending a copy of this notice.

I also have corresponded with Angela Williams from the Sedgwick Claims Management Services, Inc. at P.O. Box 24787, Jacksonville, FL 3241-4787. Which I'm also sending a copy of this letter, along with my answer.

NO. 02-CI-08551                                            JEFFERSON CIRCUIT COURT

DIVISION ONE (1)

ERNEST S. ALLEN                                         PLAINTIFF

v.          **<u>DEFENDANT, WINN-DIXIE CHARLOTTE, INC.'S
RESPONSE TO THE PRO SE MOTION
OF PLAINTIFF, ERNEST ALLEN</u>**

**WINN-DIXIE CHARLOTTE, INC.;
MOORE SECURITY, INC.;
MOORE SECURITY, LLC; AND
TALMAY ANDERSON**                                         **DEFENDANTS**

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Comes the Defendant, Winn-Dixie Charlotte, Inc., by counsel, and in response to a Motion filed by Ernest Allen, pro se, requesting specific "evidence to be submitted to the trial jury" states as follows:

The Defendant objects to the Motion submitted by the Plaintiff, pro se, for numerous reasons. The most obvious objection rests upon the fact that there is an automatic stay in effect as a result of the bankruptcy filing by the Defendant, Winn-Dixie Charlotte, Inc., and its parent corporation, Winn-Dixie Stores, Inc., that prevents and/or precludes the discovery sought by the Plaintiff. In addition, the claim of Ernest Allen against Winn-Dixie Charlotte, Inc., is presently before the bankruptcy court. Therefore, Jefferson Circuit Court is no longer the proper forum for the discovery sought by Ernest Allen.

The Court is also reminded that this matter is scheduled for a status conference

Respectfully submitted,

_____
R. Hite Nally
WEBER & ROSE, P.S.C.
471 West Main Street, Suite 400
Louisville, Kentucky 40202
(502) 589-2200
(502) 589-3400 - Fax
Attorney for Defendant,
Winn-Dixie Charlotte, Inc.

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was mailed, postage paid, this ___7___ day of May, 2008, to:

Ernest Allen
4515 Stonybrook
Louisville, Kentucky 40299

Richard G. Segal, Esq.
Lynch, Cox, Gilman & Mahan
500 West Jefferson Street
2100 PNC Plaza
Louisville, Kentucky 40202

_____
R. Hite Nally

# ANTOLIN J. PEREZ MD

706 East Broadway
Louisville Kentucky 40202

Phone: (502) 588-3546
Fax: (502) 588-3549
ajp0825@aol.com

November 6, 2002


Re: Ernest Allen
Date of Birth: September 26, 1930

    The above mentioned patient has been under my care since 1992, due to Hypertension, and Osteoarthritis. He was taking Feldene 20mgs every day for arthritis, Darvocet N100 twice a day as needed for pain, and Procardia XL 60mgs one everyday for hypertension, before I took over his care.

    On November 14, 2001 I examined Mr. Allen after he complained of right arm, neck and chest pain. Mr. Allen was upset and his blood pressure was elevated to 170/72. A previous blood pressure on September 15, 2001 was at 128/70. The patient complained that he suffered a trauma to his right wrist and neck. Apparently, a confrontation with a security guard at a grocery store precipitate his trauma. After the accident, the patient remained very traumatized and developed a post-traumatic arthritis with pain to his right arm.

    Mr. Allen was evaluated by the AMA Guidelines to the Evaluation of Permanent Impairment for his neck (cervical spine) pain and I get approximately a 16% Final Whole Body Impairment. Dr. Watley, an associate in my office performed a J-Tech Computerized Spinal Range of Motion Examination and came to the Whole Person Spine Impairment of 18% and a Final Whole Person Impairment of 18%. Enclosed in a copy of the Evaluation.

Respectively Submitted

Antolin J. Perez MD
AJP/sdw
cc; Enclosure

Patient Name: Ernest Allen
Description: Cervical ROM
Examiner: Dr. Watley
Spine ROM Impairment (WP): 18%

**Range of Motion Exam**
Dual Inclinometer Protocol with automatic subtraction of T1 and T12

11/04/2002
Page 1 of 2

## Cervical

| (active) | Norm | Rep 1 | Rep 2 | Rep 3 | Rep 4 | Rep 5 | Rep 6 | Status | Valid | Max | Avg | Dev | Impair |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Flexion | 50+ | 29 | 26 | 21 | | | | | Yes | 29 | 25 | 4° | 4% |
| Extension | 60+ | 17 | 15 | 19 | | | | | Yes | 19 | 17 | 2° | 6% |
| Left Lateral | 45+ | 12 | 11 | 8 | | | | | Yes | 12 | 10 | 2° | 4% |
| Right Lateral | 45+ | 19 | 15 | 11 | | | | | Yes | 19 | 15 | 4° | 2% |
| Left Rotation | 80+ | 62 | 68 | 55 | 61 | 57 | | | Yes | 61 | 58 | 5% | 1% |
| Right Rotation | 80+ | 54 | 61 | 64 | 66 | 63 | | | Yes | 66 | 64 | 3% | 1% |

## Thoracic

| (active) | Norm | Rep 1 | Rep 2 | Rep 3 | Rep 4 | Rep 5 | Rep 6 | Status | Valid | Max | Avg | Dev | Impair |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Min. Kyphosis | 20+ | | | | | | | | | | | | |
| Flexion | 60+ | | | | | | | N/A | | | | | |
| Left Lateral | 10+ | | | | | | | | | | | | N/A |
| Right Lateral | 10+ | | | | | | | | | | | | N/A |
| Left Rotation | 30+ | | | | | | | | | | | | |
| Right Rotation | 30+ | | | | | | | | | | | | |

## Lumbar

| (active) | Norm | Rep 1 | Rep 2 | Rep 3 | Rep 4 | Rep 5 | Rep 6 | Status | Valid | Max | Avg | Dev | Impair |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Left Lateral | 25+ | | | | | | | | | | | | |
| Right Lateral | 25+ | | | | | | | | | | | | |
| Left Rotation | 0 | | | | | | | | | | | | N/A |
| Right Rotation | 0 | | | | | | | | | | | | N/A |
| Min. Lordosis | 15+ | N/A | N/A | N/A | N/A | N/A | | N/A | N/A | N/A | N/A | N/A | N/A |
| Flexion | 60+ | | | | | | | N/A | | | | | |
| Extension | 25+ | | | | | | | N/A | | | | | |
| Sacral Hip Flx. | >45 | | | | | | | N/A | N/A | | | | N/A |
| Sacral Hip Ext. | >5 | | | | | | | N/A | N/A | | | | N/A |
| Left Straight Leg Raise | 65 | | | | | | | N/A | | | | | N/A |
| Right Straight Leg Raise | 65 | | | | | | | N/A | | | | | N/A |
| Tightest Leg Raise -( Sac Flex + Sac Ext ) | | | | | | | | | | | | | |

1. ROM is valid if for three consecutive rep's, deviation is within the greater of 5° or 10% of average. If this criteria is not met, impairment is not rated.
2. Negative results indicate an inability to reach neutral position (ankylosis) or a lordotic/kyphotic curve opposite to the normal curve at the neutral postiion.
3. Impairments are based on the AMA's "Guides to the Evaluation of Permanent Impairment", 5th edition.
4. If "d" for deferred is listed adjacent to an impairment rating, this examiner is not using the rating in the calculation of final impairment.
5. An automatic subtraction dual inclinometer was used negating the need for documenting the T1 and T12 intermediate numbers.
6. SLR validity is determined from the last three valid consecutive readings by comparing the largest right SLR to largest left SLR, using the tightest of the two numbers, and subtracting the sacral flexion and extension values corresponding to the largest valid lumbar flexion and extension values, respectively.
7. * indicates motion opposite to normal

© Copyright JTech Medical Industries 1994-2001. All rights reserved.

Patient Name: Ernest Allen
Description: Cervical ROM

11/04/2002
Page 2 of 2

## The Spine

|   |   | Cervical | Thoracic | Lumbar | Other Table+ |
|---|---|---|---|---|---|
| 1. Spine ROM |   |   | 0% | 0% | 0% |
|   | WP Region Totals (combined): | 0% | 0% | 0% | 0% |
|   | WP Spine Total (combined): |   |   |   |   |

## Final Impairments:

WP Spine Impairment:
FINAL WHOLE PERSON IMPAIRMENT:

---

1. Impairments are based on the AMA's "Guides to the Evaluation of Permanent Impairment" 5th edition
2. If "e" for exception is listed adjacent to an impairment rating, this examiner is taking exception to the calculation in the "AMA Guides"
+ Tables are based on Chapter 15 unless otherwise specified.   © Copyright JTech Medical Industries 1997 - 2001. All rights Reserved



E-MAIL: MZK_ATTY@YAHOO.COM

October ==, 2002

Winn-Dixie Food Stores
General Office
720 Locust Lane         **DRAFT**
Louisville, KY 402==

Re: Ernest Allen

Dear Madam or Sir:

I represent Ernest Allen, in his claim for compensation for the injuries, both physical and emotional, which he suffered when he was assaulted, unlawfully detained against his will, and falsely charged with shoplifting by a security officer at a Winn-Dixie store on November 13, 2001. Mr. Allen was acquitted of the charge on June 3, 2002. Mr. Allen is a 70 year old man who supplements his Social Security with work as a security guard himself. Since this incident, Mr. Allen has been burdened with a police record which is only now being expunged. As a result, Mr. Allen has been unable to find suitable work. Additionally, he suffered neck, shoulder, wrist and ankle injuries from being pushed against a wall by the security guard and then forced to go to a secluded area within the store while awaiting the arrival of the police. He also suffered the indignity of being in jail overnight as a result of these unfounded allegations.

In order to avoid litigation, we would be willing to settle all of these related claims fro the amount of $ _____ .

If we have not heard from you by the close of business, Friday, November 1, 2002, we will have no alternative but to file suit, and we would not be bound by the above offer.

Thank you very much for your prompt consideration.

Very truly yours,

MARTIN Z. KASDAN, JR.

MZK:me
encl.

and medical status, and to opine that his injuries were the result of the incident. For details, please refer to the aforementioned letter.

**INTERROGATORY NO. 12:** Pursuant to Kentucky Rule of Civil Procedure 8.01, please state the amount you are seeking for:

    (a) Pain and suffering (past and future);

    (b) Lost wages (past and future);

    (c) Medical expenses (past and future);

    (d) Punitive damages; and

    (d) Any other item of damages being claimed by the Plaintiff not set forth above.

**ANSWER:**

    (a) Pain and suffering (past and future): $400,000

    (b) Lost wages (past and future);

    (c-) Medical expenses (past and future); As previously mentioned, treatment is ongoing and at this time Plaintiff is unable to determine the entire amount. Due to Plaintiff's age, most of the medical expenses have been paid by Medicare.

    (d) Punitive damages: $400,000

    (e) Any other item of damages being claimed by the Plaintiff not set forth above. Attorney fees for representation in criminal case initiated and pursued by the Defendants herein, namely Commonwealth v. Ernest Allen, Jefferson District Court No. 01-M-269299. As the Plaintiff has been unable to pay in full for services rendered due to employment problems caused by these Defendants, interest continues to accrue on the unpaid balance. The approximate amount at this time is $2,500.00.

FORM B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT ___Southern___ DISTRICT OF ___New York___ | PROOF OF CLAIM |

Name of Debtor: Winn-Dixie Charlotte, Inc.
Case Number: 05-11063

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
Ernest S. Allen

Name and address where notices should be sent:
Ernest S. Allen
4515 Stony Brook Drive/ Louisville KY 40299

Telephone number: (502)495-2260

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☑ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here ☐ replaces    a previously filed claim, dated: _____
if this claim ☐ amends

1. **Basis for Claim**
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☑ Personal injury/wrongful death
   ☐ Taxes
   ☐ Other _____

   ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   ☐ Wages, salaries, and compensation (fill out below)
   Last four digits of SS #: _____
   Unpaid compensation for services performed
   from _____ to _____
   (date)                      (date)

2. **Date debt was incurred:** November 12, 2002 (Suit filed)

3. **If court judgment, date obtained:**

4. **Total Amount of Claim at Time Case Filed:** $ 827,634
   (unsecured)   (secured)   (priority)   (Total)

   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate   ☐ Motor Vehicle
   ☐ Other _____
   Value of Collateral: $_____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

6. **Unsecured Nonpriority Claim** $ 827,634
   ☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. **Unsecured Priority Claim.**
   ☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $_____
   Specify the priority of the claim:
   ☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
   ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units- 11 U.S.C. § 507(a)(8).
   ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
   *Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

Date | Sign and print the name and title, if any, of the creditor or other person authorized to fi-

:
:
:
:
:
:
:

# Honorable Judge Barry L. Willet

Dear Honorable Judge Barry L. Willet

There has been no iota of defense from the defendant. All accusations are wrong and I suffered injuries such as a biopsy on my neck and a bypass surgery on my heart and 2 operations on my back and another one schedule. I have in my possession all Drs Examinations and tests.

As you are aware of I was accused of stealing a roast and tried me in District Court for stealing 2 steaks. On 12/26/01 I took out a criminal summons on the one witness who is suppose to be the security guard for Moore security never showed and is alluding the police and the sheriff department. The events of discovery results in a class D felony have been committed against me for tampering with my expunged records which I'm sending you. All the things that have been done to me I'm going to make a motion for a summary judgment on 2/26/07, due to all of the chaotic accusation. I also filed a complaint of Civil Rights for the class D felony.

Respectfully yours,

Ernest & Allen

That means the Jacksonville-based supermarket chain is now being run by a new board of directors, which consists of Chief Executive Peter Lynch and seven outside directors approved by Winn-Dixie's creditors.

An additional director announced in October, Ronald E. Elmquist, has withdrawn his name from consideration for the board, according to a court document, leaving a vacancy on the board.

Elmquist, 60, the president and CEO of QualServ Corp., a manufacturer and distributor of food-service equipment, was arrested earlier this month in Kansas City, Mo., and charged with three counts of possession of child pornography.

"He asked to not be considered for the board for personal reasons," Winn-Dixie spokesman Michael Freitag said Tuesday. He had no other information about Elmquist.

Elmquist also resigned from the board of RadioShack Corp. on Nov. 2. According to a RadioShack company statement, "Elmquist has informed the company that he has resolved to devote his entire time and energies to his defense against charges recently filed against him in Clay County, Missouri."

Busey said the new board will be responsible for selecting a replacement for Elmquist.

mark.basch@jacksonville.com, (904) 359-4308

**Quote, Chart, News**
  Snapshot
  Company Report
  Quotes
  Charts
  Key Developments
  Recent News
**Research**
  SEC Filings
  Advisor FYI
  CAPS
  StockScouter
  Earnings Estimates
  Analyst Ratings
  Financial Results
  Insider Trading
  Ownership
  Message Board
**Guided Research**
  Research Wizard
**Find Stocks**
  Stock Screener
  Stock Power Searches
  Top-Rated Stocks
**Related Links**
  Quote Watchlist
  Expert Picks
  E-mail & Alerts
  IPO Center
  Message Boards
  Capital Gains Analysis

# Winn-Dixie Stores, Inc. Announces Second Quarter 2008 Earnings

February 19, 2008 4:30 PM ET

Winn-Dixie Stores, Inc.
WINN:


All BusinessWire news

Highlights

-- Adjusted EBITDA of $21.6 million

-- Net income of $4.1 million and diluted EPS of $0.08

-- Gross margin of 26.7%, up 100 basis points from year-ago period

-- Identical store sales increase of 0.5%

-- On track to remodel 75 stores in fiscal 2008; remodels exceeding 10% identical store sales lift target

-- Now expects fiscal 2008 Adjusted EBITDA of $105 million to $125 million

Winn-Dixie Stores, Inc. WINN, today reported a significant year-over-year improvement in financial results for the second quarter of fiscal 2008, the 16-week period that ended on January 9, 2008. Adjusted EBITDA was $21.6 million, an increase of $21.1 million from Adjusted EBITDA of $0.5 million in the second quarter of fiscal 2007. The Company reported net income of $4.1 million, or $0.08 per diluted share for the quarter.

Gross margin was 26.7%, an increase of approximately 100 basis points compared to the year ago period, and identical store sales increased 0.5%. In addition, following it than expected second quarter results, the Company now expects full-year Adjusted E range of $105 million to $125 million for fiscal 2008.

Winn-Dixie Chairman, CEO, and President Peter Lynch said, "Winn-Dixie had a truly o quarter. We improved our profitability by effectively managing our promotional spenc simultaneously growing our identical store sales. We are executing according to plan better than expected second quarter results, we are raising our financial guidance for

advertisement

China's Profit N

Morgan Stanley's chief economist
"The biggest economic story to cor
China in 25 years."

It should make an entire generatic
investors rich, but most will surely

Discover the simple action you car
today to make sure you profit. A fi
Investor Update from The Motley F
reveals: "The Two Most Lucrative \
Since Silicon Valley."

▸ Click here to claim your report... i

**Article tools**

  E-mail this article
  Print-friendly version
  Discuss this article

**Stocks mentioned in this article**
Winn Dixie Stores Inc (WINN) Stock Quote
Add to Watchlist

**Related topics**
Earnings Reports

**Recent investing news**

Yahoo Loses Its Deal Premium
AMD Adds to Charges Against Intel
Countrywide's credit spreads tighten: trade
Bonds firm on stock losses
Freddie Mac sells $5.5 billion in bills

year."

Mr. Lynch continued, "We now have reported four full consecutive quarters of post-Ch results and I'm extremely proud of what the team has been able to accomplish. We c have achieved year-over-year improvements in sales, margins, and operating cash fl we are making progress with our strategic initiatives and improving our brand image. our store remodeling program is on track and continues to generate positive results. the early stages of our multi-year turnaround plan and have a great deal to accompli: confident our strategic initiatives are gaining traction and remain very optimistic abou opportunities that lie ahead."

Fiscal 2008 Second Quarter Results

Net sales in the second quarter were $2.2 billion, an increase of $15.9 million, or 0.7 to the second quarter of fiscal 2007. Identical store sales from continuing operations 0.5%, compared to the second quarter of fiscal 2007.

Gross profit on sales in the second quarter was $599 million, an increase of $25.3 mil to the second quarter of fiscal 2007. As a percentage of net sales, gross margin was second quarter compared to 25.7% in the same period of fiscal 2007, an increase of points. The improvement in gross margin was due primarily to more effective manage promotional spending and operational improvements that reduced inventory shrink.

Other operating and administrative expenses for the second quarter were $591.6 mill of $30.1 million compared to the second quarter of fiscal 2007. Several items contribu decline, including expenses related to the emergence from Chapter 11 that occurred i year only, and an adjustment to self-insurance reserves primarily related to workers' claims.

The Company reported net income of $4.1 million, or $0.08 per diluted share for the of fiscal 2008, compared to net income of $286.8 million in the same period of fiscal : Income in the second quarter of fiscal 2007 was impacted by significant non-cash iter reorganization gains of $338.4 million.

Income from continuing operations before interest, income taxes, and depreciation ar expense, or EBITDA, as further adjusted for certain non-cash charges, reorganization insurance reserves adjustment, and items related to the Company's emergence from (Adjusted EBITDA) was $21.6 million for the second quarter of fiscal 2008, compared in the same period of fiscal 2007.

28-Week Results

Net sales for the 28 weeks ended January 9, 2008, were $3.9 billion, an increase of $ or 0.7%, compared to the same period in the prior fiscal year. Identical store sales fr operations increased 0.4%, compared to the same period in the prior fiscal year.

Net income for the 28 weeks was $3.3 million, or $0.06 per diluted share. Gross profi