**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Reorganized Debtors.[1] | ) | Jointly Administered |
| | ) | |

**WINN-DIXIE'S RESPONSE AND COUNTERCLAIM TO CURE
OBJECTION FILED BY CASTO INVESTMENTS COMPANY, LTD.**

Winn-Dixie Stores, Inc. and twenty-three of its reorganized debtor affiliates (collectively, "Winn-Dixie") respond to the cure objection filed by Casto Investments Company, Ltd. ("Casto") (Doc. No. 9686) and state:

1. Winn-Dixie operates a grocery store located at 941 SW 24th Street, Fort Lauderdale, Florida (Store No. 236 – the "Premises"), under a lease with Casto dated November 20, 1967 (the "Lease"). A copy of the Lease is attached as Exhibit A.

2. On June 30, 2006, Winn-Dixie filed its second omnibus motion for authority to assume unexpired non-residential real property leases, including the Lease (the "Motion to Assume;" Doc. No. 8941). By way of the Motion to Assume, and to satisfy its obligations under 11 U.S.C. § 365(b), Winn-Dixie

---

[1] In addition to Winn-Dixie Stores, Inc., the following entities are reorganized debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

sought to pay Casto $19,775.24 to cure all defaults under the Lease (the "Proposed Cure Amount").

3. On July 28, 2006, Casto objected to Winn-Dixie's Proposed Cure Amount, asserting that the correct amount to cure all of Winn-Dixie's defaults under the Lease was $221,095.27 (the "Cure Objection"; Doc. No. 9686).

4. By order dated October 4, 2006 (the "Assumption Order;" Doc. No. 11613), the Court granted the Motion to Assume and authorized Winn-Dixie to assume the Lease as of the effective date of Winn-Dixie's joint plan of reorganization.[2]

5. The Assumption Order required Winn-Dixie to pay any undisputed cure amounts due on the effective date, but reserved jurisdiction for the Court to resolve any dispute over the amount required to cure the Lease.

6. Winn-Dixie tendered payment of the Proposed Cure Amount of $19,775.24 to Casto on November 21, 2006.[3]

**Response to Cure Objection**

7. In its Cure Objection, Casto asserts a cure amount of $221,095.27, which includes charges for (i) common area maintenance ("CAM") for the years 2002 through 2005, (ii) real estate taxes for tax years 1998 through 2003 and (iii) utilities charges for the years 2002 through 2005. For the reasons stated below,

---

[2] Winn-Dixie's joint plan of reorganization was confirmed on November 8, 2006 (Doc. No. 12440). The plan became effective on November 21, 2006 (Doc. No. 12745).

[3] Casto failed to negotiate the check that Winn-Dixie sent to pay the Proposed Cure Amount. Winn-Dixie cancelled the check in August 2007.

Winn-Dixie disputes liability for any amounts exceeding $43,946.43, which includes the $19,775.24 Winn-Dixie already paid to Casto pursuant to the Assumption Order and $24,171.19 which Winn-Dixie still owes to Casto for 2002 and 2003 real estate taxes as described below.

**A.     Winn-Dixie does not owe Casto any amounts for CAM.**

8.     In its Cure Objection, Casto seeks $111,622.16 for CAM expenses for the years 2002 through 2005.

9.     Under the terms of the Lease, CAM is capped at $10,895.15 per year:

> Tenant's responsibility for payment of the maintenance cost[s] . . . shall be based upon the amount of Tenant's pro-rata share thereof, computed in the proportion which the square footage of Tenant's store building bears to the total square footage of all buildings . . . existing in the shopping center from time to time, provided, however, *such amount in no event shall exceed Ten Thousand Eight Hundred Ninety-Five and 15/100 Dollars ($10,895.15) per year.*
>
>     Fourth Amendment to Lease, paragraph 8(g) (amending paragraph 35 of the Lease) (emphasis added).

10.     Thus, pursuant to the Lease, the maximum amount Casto could claim for 2002 through 2005 CAM is $43,580.60.

11.     Winn-Dixie disputes that it owes Casto the $111,622.16 that Casto seeks in CAM because Winn-Dixie timely paid Casto $10,895.15 each year for

3

2002 through 2005 CAM, for a total of $43,580.60, and continues to timely pay such expenses as they become due under the Lease.

12.  Because Winn-Dixie has paid Casto the CAM charges allowed under the Lease for the years 2002 through 2005 Casto's claim for CAM charges should be disallowed.

**B.  Winn-Dixie is not liable for the entire amount Casto seeks for unpaid real estate taxes.**

13.  Casto seeks $76,668.82 for real estate taxes for the tax years 1998 through 2003 and $16,810.26 for the 2004 tax year.

14.  Winn-Dixie does not dispute Casto's claim with regard to the 2004 taxes, which were included in the Proposed Cure Amount.[4]

15.  Winn-Dixie disputes that it owes any amounts for 1998 through 2001 real estate taxes because Casto did not timely bill Winn-Dixie for these taxes as required by the Lease.

16.  Winn-Dixie's liability for real estate taxes is "expressly conditioned" upon Casto sending Winn-Dixie a statement for such taxes no later than December 31 of the year following the year in which the taxes were due:

> Tenant's obligation to make the [real estate tax] payment herein described is *expressly conditioned* upon receipt from Landlord of a written statement for such ad valorem real estate tax increase contributions . . . *no later than December 31 of the calendar year following the year in which taxes are due.*

---

[4] The Proposed Cure Amount of $19,775.24 included $16,810.26 for 2004 real estate taxes.

> Fourth Amendment to Lease, paragraph 8(f). (amending paragraph 34 of the Lease) (emphasis added).

17. Pursuant to section 197.333, Florida Statutes, real estate taxes are due and payable on November 1 of the tax year the taxes are assessed. *See* § 197.333, Fla. Stat. (2007). Thus, for the 1998 through 2001 tax years, Casto was required to bill Winn-Dixie by December 31 of the year following each of those respective tax years. Casto did not do so and therefore failed to satisfy the condition precedent to imposing liability upon Winn-Dixie for the 1998 through 2001 real estate taxes.

18. Because Casto did not timely bill Winn-Dixie for 1998 through 2001 real estate taxes, Winn-Dixie is not liable for these taxes, and Casto's claim for these taxes must be disallowed.

19. It is unclear from the Cure Objection what amounts Casto is seeking for 2002 and 2003 real estate taxes. If Casto is seeking a total of $24,171.19 for both 2002 and 2003 real estate taxes, then Winn-Dixie does not dispute that it owes Casto this amount. However, Winn-Dixie disputes any amount Casto is seeking greater than the combined $24,171.19 for 2002 and 2003 real estate taxes because such greater amounts are in excess of Winn-Dixie's pro-rata share of the real estate taxes that Winn-Dixie owes to Casto on an annual basis pursuant to the Lease.

20. Article 34 of the Lease provides that Winn-Dixie is obligated to pay its pro-rata share, based on the ratio which the square footage of Store No. 236 bears to the total square footage of the shopping center, of the amount of any increase in ad valorem real estate taxes levied against the shopping center in excess of the amount of the taxes levied on the shopping center for the calendar year 1977. Fourth Amendment to Lease, paragraph 8(f) (amending paragraph 34 of the Lease).

21. The ratio that Winn-Dixie's square footage bears to the entire shopping center is 20.1368%. Winn-Dixie's pro-rata share of Casto's shopping center real estate taxes is $11,077.05 for 2002 real estate taxes and $13,094.14 for 2003 real estate taxes.

22. Casto's claim for 2002 and 2003 real estate taxes in excess of the $24,171.19 should be disallowed.

C. **Winn-Dixie does not owe Casto any amounts for utilities.**

23. Casto seeks $15,994.03 from Winn-Dixie for water, electric and waste disposal utility charges for the years 2002 through 2005.

24. The Lease provides that Winn-Dixie "agrees to pay all charges for telephone, electricity, water, gas and other utilities used by Tenant on the demised premises . . . ." Lease, paragraph 9.

25. For 2002 through 2005, Winn-Dixie paid all utilities used by Winn-Dixie directly to the providing utility companies (as it has since 1967).

**D.     Winn-Dixie is entitled to a setoff against any amount required to cure the Lease.**

26.     As set forth more fully in Winn-Dixie's counterclaim below, the Premises were severely damaged by Hurricane Wilma in 2005. Casto breached its obligation under the Lease to repair those damages. As a proximate result of that breach, Winn-Dixie spent $790,287.99 to repair the damages, which included the replacement of the roof.

27.     Under the terms of the Lease, Winn-Dixie has the right to set off $790,287.99 it spent to make the casualty repairs against any amount Winn-Dixie would otherwise be obligated to pay Casto to cure the Lease.

WHEREFORE, Winn-Dixie respectfully requests that the Court enter an order (i) overruling the Cure Objection (ii) declaring that the total amount required for Winn-Dixie to satisfy its cure requirements under 11 U.S.C. § 365(b) is $43,946.43 (the "Cure Amount"), (iii) allowing Winn-Dixie to set off the Cure Amount against the $790,287.99 that Casto owes Winn-Dixie for repair of the damages to the Premises caused by Hurricane Wilma, and (iv) granting such further relief as the Court deems just and proper.

## Counterclaim

28.     Pursuant to Rule 3007, Federal Rules of Bankruptcy Procedure, "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Casto's Cure Objection asserts a

right to payment from Winn-Dixie and, therefore, is by definition a "claim" as contemplated by Rule 3007. *See* 11 U.S.C. §101(5)(A) (2005).

29.   Winn-Dixie files this counterclaim pursuant to Rule 7013, Federal Rules of Bankruptcy Procedure.

30.   The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

31.   On October 24, 2005, the Premises were severely damaged by Hurricane Wilma, requiring substantial repairs to the roof.

32.   Pursuant to paragraph 16 of the Lease, Casto is required to immediately repair any casualty damage to the Premises, including the hurricane damaged roof:

> If the [Premises] shall thereby suffer damage to any extent less than 75% of the value thereof . . . the Landlord agrees to proceed promptly and without expense to the Tenant to repair the damage and restore the improvements remitting a fair and just portion of the rent, according to the unusable space, until said premises are completely reinstated and restored.
>
> Lease, paragraph 16.

33.   If Casto does not fulfill its repair obligations, the Lease entitles Winn-Dixie to make the repairs and offset the costs of such repairs against Winn-Dixie's past and future rental obligations:

> If in order to protect the Tenant's property in the store building it shall be necessary to make emergency repairs to any portion thereof which is the responsibility of the Landlord to repair, or if the

8

> Landlord after receipt of notice . . . fails or neglects to make with all due diligence such other repairs to the store building . . . which are the responsibility of the Landlord, *the Tenant shall have the right to make such repairs and deduct from the rental installments then due or thereafter to become due such sums as may be necessary to reimburse the Tenant for the money expended or expense incurred by it in making such repairs.*

Lease, paragraph 11.

34. By letters dated October 28, 2005, November 7, 2005, November 22, 2005 and November 23, 2005, Winn-Dixie provided notice to Casto of the Hurricane Wilma damages to the Premises and of Casto's obligation to repair those damages. Winn-Dixie also notified Casto as early as November 13, 2005, that if Casto did not make the necessary repairs, Winn-Dixie would make the repairs and offset the costs of the repairs against Winn-Dixie's rental obligations under the Lease. Despite Winn-Dixie's demands, Casto did not make the necessary repairs.

35. Because Casto did not make the necessary repairs, Winn-Dixie exercised its rights under the Lease and made the required repairs at a total cost to Winn-Dixie of approximately $790,287.99 (the "Repair Costs").

36. Casto breached the Lease by failing to repair the hurricane damage to the Premises and restore the Premises "promptly and without expense" to Winn-Dixie following Winn-Dixie's notification to Casto of the hurricane damage.

37. Casto also breached the Lease by failing to reimburse Winn-Dixie for the Repair Costs.

38. As a proximate result of Casto's breaches under the Lease, Winn-Dixie has suffered damages in excess of $790,287.99, plus interest.

39. All conditions precedent to the maintenance of this action have been fulfilled or have been waived.

WHEREFORE, Winn-Dixie respectfully requests that the Court enter a judgment (i) for damages for breach of contract against Casto in the amount of $790,287.99, plus interest and costs pursuant to Bankruptcy Rule 7054 and (ii) granting such further relief as the Court deems just and proper.

                              SMITH HULSEY & BUSEY

                              By   */s/ Megan R. Harper*
                                   Stephen D. Busey
                                   Allan E. Wulbern
                                   Megan R. Harper

                              Florida Bar Number 0027865
                              225 Water Street, Suite 1800
                              Jacksonville, Florida  32202
                              (904) 359-7700
                              (904) 359-7708 (facsimile)
                              mharper@smithhulsey.com

                              Counsel for Winn-Dixie

## Certificate of Service

I certify that a copy of the foregoing has been furnished electronically or by mail to Kenneth J. Joyce, Esq. and Mark A. Levy, Esq., Brinkley, Morgan, Solomon, Tatum, Stanley, Lunny & Crosby, LLP, 200 East Las Olas Boulevard, Suite 1900, Fort Lauderdale, Florida, 33301, this 9th day of October, 2008.

                                                      */s/ Megan R. Harper*
                                                            Attorney

596058.11