## UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,                    Case No.:  3:05-bk-03817-JAF

        Debtors.                                        Chapter 11

                                                  Jointly Administered

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

       This case came before the Court upon Visagent's Fourth Motion to Compel

Discovery, Directing Winn-Dixie to Search Recently Discovered Databases and for an

Award of Attorney's Fees and Sanctions (the "Fourth Motion to Compel").  The Court

conducted an evidentiary hearing on the matter on August 28, 2008.  Upon the evidence

and the arguments of the parties, the Court makes the following Findings of Fact and

Conclusions of Law.

### Findings of Fact

       On February 21, 2005 the Debtors filed voluntary petitions for relief under

Chapter 11 of the Bankruptcy Code.  Visagent Corporation ("Visagent") filed a claim,

which was designated as Claim No. 9953, in July 2005.  Visagent claims that Debtors

breached an agreement, which was entered into between it and Debtors on June 15, 2001.

Under the terms of the agreement Debtors were obligated for three years to exclusively

utilize the services of Visagent for the procurement and sale of all merchandise it

acquired or sold through internet or similar electronic means, including any means

utilizing facsimile, from and through the secondary market.  The secondary market is

comprised of all sources (buyers and sellers) of merchandise other than direct purchases

and returns from original product manufacturers. Debtors objected to Visagent's claim,
asserting that they did not breach a duty to Visagent and that Visagent failed to
adequately perform under the terms of the agreement.

On July 23, 2006 Visagent served upon Debtors its First Request for Production,
Interrogatories, and Requests for Admissions. On August 25, 2006 Debtors served their
Response to Visagent's First Request for Production of Documents and their Response to
Visagent's First Set of Interrogatories. In September 2006 Debtors produced a
spreadsheet listing every transaction by Debtors in the secondary market with any
diverter from the period of mid 2001 to mid 2004. Debtors also produced all
correspondence with diverters from mid 2001 to mid 2004, including emails, internal
communications and reports by searching hard copy files and searching electronic
databases of active databases within the company.

On May 3, 2007 Visagent filed its First Motion to Compel. The Court conducted
a hearing on the matter on June 14, 2007. On June 21, 2007 the Court entered an order
on Visagent's First Motion to Compel, which was thereafter amended by a corrected
order dated July 30, 2007.

On April 18, 2007 Visagent served upon Debtors its Second Request for
Production. On May 29, 2007 Visagent filed a Second Motion to Compel. The Second
Motion to Compel alleged that Debtors had failed to produce all the documents sought by
Visagent in the Second Request for Production. On November 20, 2007 Visagent filed a
Third Motion to Compel. The Third Motion to Compel alleged that Debtors failed to
comply with Rule 30 of the Federal Rules of Civil Procedure because their corporate
representative, Tom Barr, was not prepared to answer certain questions in his deposition.

On December 13, 2007 the Court conducted a hearing on Visagent's Second and Third

Motions to Compel.

On December 28, 2007 the Court entered an Order on Visagent's Second and

Third Motions to Compel.  The Court noted therein:

> In regards to its Second Motion to Compel, Visagent
> alleges that Debtors have failed to produce all the
> documents sought in their Second Request for Production.
> (Tr. pg. 8).  In response, Debtors' counsel adamantly
> maintains that the Debtors have complied in full.  (Tr. 10-
> 11, 16, 34, 42-43).  Specifically, Debtors' counsel stated,
> "We've given them all the documents we're aware of in
> Winn-Dixie's possession – and we have conducted a very
> thorough search for those documents – and we've
> represented that to them.  I don't know what else we can
> do." (Tr. 11).  The Court accepts Debtors' representation
> that all documents they are aware of in their possession
> have been produced.  However, the Court reserves the right
> to impose sanctions against the Debtors if it is discovered
> that they failed to produce all documents they were *aware*
> and in *possession* of at the time of the hearing, unless such
> documents are produced within thirty days of the date of
> this order.  Additionally, if such documents are not
> produced within the above time frame, Debtors will be
> precluded from using the documents at trial.

On January 28, 2008 Counsel for Debtors sent a letter to Visagent's counsel

which provided as follows:

> Additionally, by way of disclosure of [Debtors']
> efforts to locate and produce documents responsive to
> Visagent's discovery requests, [Debtors] ha[ve] recently
> identified two potential sources of electronic documents
> which, due to undue burden and costs, [Debtors] ha[ve] not
> reviewed for responsive information.
> First, [Debtors] discovered a system-wide backup of
> [Debtors'] electronic mail system was created in 2005.
> However, because [Debtors] ha[ve] subsequently changed
> [their] electronic mail infrastructure, this backup
> information is no longer readable or searchable by
> [Debtors] without undue burden or costs.  Therefore,

> pursuant to Federal Civil Procedure Rule 26(b)(2)(B),
> [Debtors] ha[ve] not reviewed this information for
> responsive documents.
>
> Second, [Debtors] through a document management
> vendor, maintain[]archives comprised of imaged
> documents. [Debtors] ha[ve] determined that these
> documents may contain warehouse receiving and bills of
> lading documents regarding [Debtors'] purchases and sales
> of goods in the secondary market for the period 2001
> through 2004. However, such documents are stored within
> a massive archive system which cannot be searched for
> documents specifically related to such purchases and sales
> without undue burden and cost….

On April 17, 2008 Visagent filed the Fourth Motion to Compel. Visagent seeks

an order compelling Debtors to produce the information to which the January 28, 2008

letter refers: to wit Debtors' system wide backup of the email system created in 2005 and

archives of the imaged documents, otherwise known as metafile data. Specifically,

Visagent seeks the email files of a number of individuals, both employees and non-

employees, who held email accounts with Debtors, as well as the email files of any

secretaries or assistants of the enumerated individuals. Visagent asserts that these

individuals were directly involved with Debtors' dealings with Visagent and the issues

raised by this contested matter. Visagent also seeks to obtain instant messaging trails for

those employees.

Gary Klingerman ("Klingerman"), the senior manager of platform engineering for

Debtors'[1], testified on Debtors' behalf. Klingerman's group is in charge of all of

Debtors' operating, hardware and company wide systems, such as Exchange and

Metafile. Klingerman testified to the following. The system wide backup to which the

January 28, 2008 letter refers is a copy of Debtors' Microsoft Exchange email system as

it existed on July 7, 2005.  In other words, the backup is a snapshot of the email system of

that day in time.  The email system is a combination of hardware, such as servers, and

software, that allows a company to rewrite, exchange, send and receive emails.  In order

to create the system wide backup, Debtors used an IBM product called Tivoli Storage

Manager ("TSM") whose purpose is to create backups for disaster recovery of systems.

Although the snapshot was saved to tapes, Debtors had been unable to locate them.

In October 2005 Debtors began upgrading their Exchange email system from a

version called 5.5 to a version called 2003.  The upgrade involved the migration of all the

data from the 5.5 version to the 2003 version.  Any employee, who had an email account

in the 5.5 version, would have an email account in the 2003 version unless it was

subsequently deleted because that employee left the company.

The upgrade process, which was completed in late 2006, was necessary in order

to keep up with Microsoft's changes to its products.  While Debtors could have

maintained the 5.5 Exchange email system, they would have had to keep duplicate

hardware, software, and other infrastructure systems, in order to maintain two separate

email systems at one time.[2]

On December 13, 2007, during the course of a subsequent upgrade of the

Debtors' Exchange email system, an employee discovered the backup, which had been

created on July 7, 2005.  At that time Debtors copied the backup information, consisting

of 50 million pages of emails, to tape.  Up until that date, Debtors did not believe they

had the backup information.

---

[1] Throughout the hearing Klingerman referred to his employer as Winn-Dixie.  The Court will use the term Debtors.

[2] On cross examination, counsel for Visagent inquired as to whether the old servers were used or disposed of when Debtors transitioned from 5.5 Exchange to 2003 Exchange.  Although Klingerman did not know

Although Debtors saved the backup information to tape, the databases, information and emails stored on the tapes are not readable because they were in the 5.5 Exchange email system and are not readable by the 2003 Exchange email system.  In order to search and read the backup information, Debtors would have to build a copy of the Microsoft Exchange system that existed when the snapshot was created.  Such a recreation would involve servers, disks, the efforts of several high level systems engineers, hundreds of hours of time, and would cost several hundred thousand dollars.[3] While Debtors' IT department is capable of such a project, its resources are limited. Accordingly, such an undertaking would materially affect Debtors' IT department's other projects.  Klingerman conferred with Phil Robison, Debtors' primary Exchange engineer, as to whether there is a less expensive way to obtain the information without building a complete system.  Robison does not believe there is.

Debtors do not have a company sponsored instant messaging product.  Without an actual restoration of the entire email system, it is impossible to know whether email accounts for Debtors' employees who were associated with the Visagent account existed on the date of the transition.  However, based upon Klingerman's understanding of Debtors' technology and policies, the likelihood of finding email files for those individuals is fairly unlikely for the following reasons.  Debtors' policy is that when a person leaves the company, all of their emails are deleted.  In 2006 or 2007 Klingerman conducted a review of the current email system and discovered that most of the specified employees had left the company during the bankruptcy and therefore had no email boxes

---

the servers were used or disposed of, he indicated that if they were not used, there would have been no business reason to keep them.

[3] Klingerman based his estimates on his years of experience building and purchasing IT systems. Klingerman testified that the primary cost of the project would be represented by additional disk space.

in the system.  Secondly, users are permitted to delete their emails at any point in time.

There is no policy on retaining emails.  Third, Debtors put storage limits and mailbox

size limitations on their users and constantly encourage users to keep their email boxes

pared down to just a few months of data.  Because the snapshot occurred a year after the

latest date for which Visagent seeks email information, there is no reason to believe there

would be any data for the enumerated individuals.

### Metafile Data

Debtors maintain a Metafile system, a large filing cabinet, which allows them to

store and archive reports and images of pieces of paper.  The archives, which contain

approximately 10 million documents, are comprised of documents which each of

Debtors' departments determine they need to maintain.  The only documents potentially

in the archives, relating to Debtors' dispute with Visagent, are bills of lading, which

would evidence the transactions that have been previously identified by Debtors to

Visagent in the spreadsheet, which Debtors produced in September 2006.

The Metafile system is not searchable as a whole.  The documents, which are put

into the Metafile system, are typically images of pieces of paper.  As the documents are

entered into the system, the person scanning the documents enters indexing information

into the system.  The index information is obtained from pertinent words, terms, and

phrases contained in that piece of paper.  With respect to the evidence, which Visagent

seeks, the only thing searchable would be a PO number.  In order to search the Metafile

system for PO numbers, Debtors would be required to go through forty folders of

information and individually search for the PO numbers referenced in the bills of lading,

which Debtors have already produced.  Such an effort would encompass approximately

12 million searches.

On February 13, 2008 Visagent deposed Matthew Larsen ("Larsen") of Deloitte

Financial Advisory Services, a senior manager in the electronic discovery department.

Larsen serves as a consultant to Debtors.  When asked why the Metafile system was

unduly burdensome or costly, Larsen indicated that "[b]ecause of the ability to search it,

the size of it, millions of records, to be able to get to what is specifically responsive to

this litigation is the undue burden and cost."  However, Larsen indicated that there was

no impediment to having the database replicated on a hard drive and provided to

Visagent.

## Conclusions of Law

Motions to Compel Discovery under Rule 37(a) are committed to the

sound discretion of the trial court.  U.S. v. Lowe, 2008 WL 4500224 (M.D. Fla. October

3, 2008) citing Commercial Union Insurance Co. v. Westrope, 730 F.2d 729, 731 (11th

Cir. 1984).  The trial court's exercise of discretion regarding discovery orders will be

sustained absent a finding of abuse of that discretion to the prejudice of a party.  Id. citing

Westrope, 730 F.2d at 731.  The touchstone of discovery is relevancy.  Rule 26 of the

Federal Rules of Civil Procedure provides that relevant information which appears

reasonably calculated to lead to the discovery of admissible evidence is discoverable.

Paragraph 26(b)(2)(B) places limitations on the production of electronically stored

information.  That paragraph provides:

> **(B)** Specific Limitations on Electronically Stored
> Information. A party need not provide discovery of
> electronically stored information from sources that the

> party identifies as not reasonably accessible because of
> undue burden or cost. On motion to compel discovery or
> for a protective order, the party from whom discovery is
> sought must show that the information is not reasonably
> accessible because of undue burden or cost. If that showing
> is made, the court may nonetheless order discovery from
> such sources if the requesting party shows good cause,
> considering the limitations of Rule 26(b)(2)(C). The court
> may specify conditions for the discovery.

"A source of information is not reasonably accessible if locating, retrieving, and restoring

the information is unduly burdensome or expensive." Moore's Federal Practice 3d

§ 37A.35[1][a]. The party from whom discovery is sought bears the burden of

establishing that the information which is sought is not reasonably accessible because of

undue burden or cost. Information on backup tapes is typically identified as inaccessible.

Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 319-320 (S.D.N.Y.2003).

Once a responding party has established that information which is sought is not

reasonably accessible, the requesting party may still obtain the discovery by showing

good cause. The Comment to Rule 26 sets forth the following seven factors, which

should be considered in determining whether good cause exists: 1) the specificity of the

discovery request; 2) the quantity of information available from other and more easily

accessed sources; 3) the failure to produce relevant information that seems likely to have

existed but is no longer available on more easily accessed sources; 4) the likelihood of

finding relevant, responsive information that cannot be obtained from other, more easily

accessed sources; 5) predictions as to the importance and usefulness of the further

information; 6) the importance of the issues at stake in the litigation; and 7) the parties'

resources. The underlying inquiry is whether the burdens and costs are justified given the circumstances of the case.

### **Restoration of E-Mail Backup System**

Upon consideration of Klingerman's testimony, the Court finds that Debtors have carried their burden of proving that the information contained in the backup email system is not reasonably accessible because of undue burden and cost. Klingerman's unrebutted testimony established that the tapes to which the email backup information is stored are not readable by Debtors' 2003 Exchange email system. In order to search and read the backup information, Debtors would have to build a copy of the Microsoft Exchange system that existed when the snapshot was created. Such a recreation would involve servers, disks, the efforts of several high level systems engineers, hundreds of hours of time, and would cost several hundred thousand dollars. While Debtors' IT department is capable of such a project, its resources are limited. Accordingly, such an undertaking would materially affect Debtors' IT department's other projects.

Upon a review of the factors set forth in the Comment to Rule 26, the Court finds that Visagent has failed to establish good cause to require Debtors to produce the requested information. The Court finds that the burdens and costs of searching for, retrieving, and producing the information are not justified given the circumstances of the case. The evidence established that Debtors produced all correspondence with diverters from mid 2001 to mid 2004, including emails, internal communications and reports by searching hard copy files and searching electronic databases of active databases within the company. The Court finds that it is unlikely that the email backup system will contain emails (other than what Debtors have already produced) from mid 2001 to mid

2004 of individuals associated with the Visagent account because: 1) most of the specified employees left the company during the bankruptcy, and 2) even if some of the specified employees remained in the employ of Debtors when the snapshot was created, a date which was over a year after the end of the relevant period, users are permitted to delete their emails at any point in time and are in fact encouraged to do so because of storage limits and mailbox size limitations.[4]  In summary, the Court finds that requiring the rebuilding and restoration of Debtors' entire email back up system is unwarranted because the burdens and costs of such a project outweigh the likelihood of finding any information which Debtors have not already produced.  Accordingly, the Court will deny that portion of the Fourth Motion to Compel.

### Metafile Data

The Court finds that Debtors failed to meet their burden of establishing that the information contained in the Metafile system is not reasonably accessible because of undue burden or cost.  While Mr. Klingerman testified that a search for potentially relevant documents would encompass approximately 12 million searches, Larsen testified at his deposition that Debtors can have the database replicated to a hard drive and provided to Visagent.  Debtors presented no evidence that such an action would be unduly burdensome or costly.  Visagent's counsel indicated that Visagent would assume the task of conducting the searches on the Metadata files.[5]

---

[4] During oral argument counsel for Visagent argued that Debtors' failure to preserve all of the emails of employees associated with the Visagent account was a violation of their duty to preserve information which was relevant or likely to be requested in discovery as part of ongoing litigation.  Debtors' counsel pointed out  that Visagent did not identify even one individual with potentially material email data who left the company after Debtors had knowledge of the lawsuit  The Court does not find that Debtors violated their duty of preservation.

[5] Visagent's counsel stated as follows: "And if we want to use our resources to go through that, if it takes a thousand hours, my staff is going to use a thousand hours.  If we get in there and we don't find information or it's too burdensome on us, that's fine" (Tr. at 23.)

Debtors assert that the Court should nonetheless deny the requested discovery on the basis of confidentiality. Debtors point to the cases of <u>In re Ford Motor Company</u>, 345 F.3d 1315 (11th Cir. 2003) and <u>Balfour Beatty Rail, Inc. v. Vaccarello</u>, 2007 WL 169628 (M.D. Fla. January 18, 2007). In <u>Ford Motor Company</u>, the district court entered an ex parte order, granting the plaintiff direct access to certain of Ford's databases which recorded all customer, dealer, personnel, and other contacts with Ford. The court noted that Rule 34(a) of the Federal Rules permits a responding party to search its records to produce required, relevant data but does not give the requesting party the right to conduct the actual search. <u>Id.</u> at 1317. The court also noted that while there may be instances, such as improper conduct on the part of the responding party, which necessitate a review of the data compilation by the requesting party, the district court "must 'protect respondent with respect to preservation of his records, confidentiality of nondiscoverable matters and costs.'" <u>Id.</u> quoting Advisory Committee Notes to Rule 34(a). Because the district court failed to make a factual finding that Ford had not complied with discovery rules, the court found that the district court had abused its discretion in entering the order.

<u>Balfour Beatty</u> dealt with the plaintiff's request for any hard drives used by the defendants for business purposes during a two-year period. The court noted that the plaintiff: 1) did not provide information regarding what it sought to discover from the hard drives and 2) did not contend that the defendants had failed to provide requested information contained on the hard drives. <u>Id.</u> at *3. The court denied the motion to compel.

The Court finds the instant case distinguishable from <u>Ford Motor</u> and <u>Balfour Beatty</u>. While Debtors have produced a spreadsheet listing every transaction by Debtors

in the secondary market with any diverter from mid 2001 to mid 2004, Debtors have not

produced the bills of lading, which evidence the transactions.  The Court finds that

Visagent is entitled to that information.  Accordingly, the Court will require Debtors to

either: 1) search the Metafile system to obtain copies of the bills of lading associated with

the spreadsheet listing the transactions in the secondary market with any diverter from

mid 2001 to mid 2004 or 2) subject to a confidentiality agreement, copy the Metafile data

to a hard drive and turn that over to Visagent.

## CONCLUSION

Debtors established that their email backup system, which was created in July

2005, is not reasonably accessible because of undue burden and cost.  Visagent failed to

establish good cause for the Court to require Debtors to produce the information despite

the undue burden and cost.  Debtors failed to establish that the information contained in

their Metafile system is not reasonably accessible because of undue burden or cost or for

confidentiality reasons.  The Court will enter a separate order consistent with these

Findings of Fact and Conclusions of Law.

**DATED** November 4, 2008 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

**Copies to:**

Steven Busey, Attorney for Winn Dixie
Guy Rubin, Attorney for Visagent Corporation

13