UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARION BERRIOS,                    CASE NO.: 05-03817-3F1
        Plaintiff,                 Chapter 11
                                   Jointly Administered
v.

WINN DIXIE STORES, INC.,
        Defendant.
_____/

## MOTION TO ALLOW LATE FILED APPLICATION FOR
## PAYMENT OF ADMINISTRATIVE EXPENSE OF MARION BERRIOS

Marion Berrios ("Claimant") moves the Court for an Order authorizing her late filed Application for Allowance of Administrative Expense Claim for Personal Injury (the "Application"), and as grounds therefore says:

1.    On February 21, 2005, Winn-Dixie Stores, Inc., together with its affiliates (collectively, the "Debtor), filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

2.    By Order dated April 13, 2005, venue was transferred to the United States Bankruptcy Court for the Middle District of Florida.

3.    Since that time, the Debtor has operated property and managed its business as Debtor-in-Possession.

4.    On September 7, 2006, Claimant suffered personal injury and damages when she fell in a store operated by the Debtor and located at 1200 Deltona Boulevard in Deltona,

1

Florida.    Damages sustained from a tort committed by the Debtor have administrative expense priority.    Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

5.    On November 28, 2006, Claimant's attorney sent the Debtor a Letter of Representation regarding her claim; a copy of that letter is attached hereto as Exhibit "A".

6.    On December 5, 2006, Debtor's insurance adjusters, Sedgwick Claims Management Services, Inc. ("Sedgwick"), responded to Claimant's counsel, acknowledging his representation and requesting status of Claimant's treatment, medical progress and copies of the records and bills.    A copy of the Sedgwick letter is attached as Exhibit "B".

7.    On August 27, 2008, Claimant's counsel sent a demand package to Sedgwick. The demand letter is attached as Exhibit "C".

8.    On September 5, 2008, Sedgwick responded to the demand advising that the claim was being denied for failure to file an Administrative Expense Claim in the Bankruptcy Court before January 5, 2007. A copy of the Sedgwick letter is attached as Exhibit "D".

9.    Claimant never received any information from the Debtor or Sedgwick regarding Debtor's bankruptcy in this matter or any filing deadlines that pertained to this claim prior to September 2008.

10. The Debtor was aware of the subject claim and will not be prejudiced by the tardy filing because the Debtor has had actual knowledge of the Claimant's claim for several years as a result of ongoing communications with the Debtor's insurance adjusters and Claimant's counsel.

11. Further, Claimant was prejudiced by the lack of disclosure of the bankruptcy by the Debtor or by Sedgwick *pertaining to this claim*.

12. In Chapter 11 cases, the doctrine of "excusable neglect", pursuant to Bankruptcy Rule 9006(b)(1), permits a Court to allow late filed claims resulting from inadvertence, mistake or carelessness. Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380(1993).

13. "Excusable Neglect" is an equitable concept requiring consideration of the danger of prejudice to the Debtor, the length of the delay and its impact on the judicial proceedings, the reason for the delay and movant's good faith. In re Harrell, 325 B.R. 643(Bkrtcy. M.D. Fla. 2005).

14. The Debtor had actual knowledge of the claim and of Claimant's intent to pursue collection of said claim.

15. More importantly, the Claimant, a known creditor of the Debtor, was entitled to **actual notice** of the claim's bar date before her claim could be extinguished. City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 73 S.Ct.299,97 L.Ed

333(1953); <u>In re Premier Membership Services, LLC</u>, 276 B.R. 709,713 (Bkrtcy. S.D. Fla. 2002).

16.    Courts consistently have ruled that when there is no notice of the claim's bar date or of the confirmation hearing, a late claim is not barred.  *In re Premier Membership Services, LLC.,* 276 B.R. 709, 713 (Bkrtcy.S.D.Fla.,2002); *In re Tannen Towers Acquisition Corp.,* 235 B.R.. 748,753 (D.N.J.1999),

17.    The Debtor was not discharged from the debt of the Claimant, who was known to the Debtor, and who failed to receive notice of the administrative claims bar date.  That is true even if the Claimant had actual knowledge (which she did not) of the existence of the bankruptcy.  *In re Spring Valley Farms, Inc.,* 863 F.2d 832,835 (11th Cir.1989).

18.    Although the Bankruptcy Court cannot liquidate Claimant's personal injury claim, it does have the right to permit late filed administrative expense claims and to determine whether a particular debt has been discharged.

19.    The Claimant moves for entry of an order determining her claim has not been discharged.

20.    The Claimant is filing an Application for Payment of Landlord Class 13 Claim simultaneously with this Motion.

21.    Pursuant to 11 U.S.C. §503(a), Claimant respectfully requests this Court to allow her late-filed Application for payment of administrative expense, for cause, and allow the claim to be liquidated promptly in the state court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the forgoing was served on James Post, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, FL 32202, and Matthew Barr, Milbank, Tweed, Hadley & McCloy, LLP, 1 Chase Manhattan Plaza, New York, New York 10005, this 15th day of January, 2009.

By___s/s Mark A. Zimmerman_____
       Mark A. Zimmerman
       Florida Bar No.: 203491
       JAMES & ZIMMERMAN
       Attorneys at Law
       Post Office Box 208
       DeLand, Florida 32721-0208
       386-734-1200
       Attorneys for Claimant

# James & Zimmerman, P.L.

## ATTORNEYS AT LAW

431 EAST NEW YORK AVENUE

POST OFFICE BOX 208

DELAND, FLORIDA 32721-0208

FACSIMILE: 386 734-1295

PHONE: 386 734-1200

Craig T. James

Mark A. Zimmerman

Lawrence A. Welch

Rhonda J. Fisher

Deltona Office

Phone: 386 574-0660

November 28, 2006

Winn Dixie Stores, Inc.
Attn: Melanie Martin
5050 Edgewood Court
Jacksonville, FL 32254

     RE:  Our Client :   Marion Berrios
           D/Incident :   09/07/06

Dear Ms. Martin:

Please be advised that this firm represents the above named individual concerning the above noted incident.

We understand that you were involved in this incident, and we would request that you contact this office with information concerning your business's insurance policy, and/or turn this letter over to your insurer.

The following information should be furnished from your insurer:

    a.   Name of the insurer(s).
    b.   Name of each insured.
    c.   Limits of liability coverage.
    d.   A statement of any policy or coverage defense which your company reasonably believes is available under any of the policies which may provide liability insurance coverage for this claim.
    e.   A copy of any and all policies which provide or may provide liability insurance coverage for this claim.

Kindly govern yourself accordingly,

                 Sincerely,
                 JAMES & ZIMMERMAN, P.L.

                 Rhonda J. Fisher
                 Mark A. Zimmerman

RJF/ksp
#23013

EXHIBIT A

RECEIVED DEC 0 8 2006



# Sedgwick

**Sedgwick Claims Management Services Inc**
P.O. Box 24787,  Jacksonville,FL 32241-4787
Telephone (888)784-3470 Facsimile (904)419-5365

December 05, 2006

Rhonda J. Fisher
431 East New York Ave
Deland, FL 32721

RE:   **Claimant:**    **Marion Berrios**
      **Date of Injury:** 09/07/2006
      **Location:**         **Winn Dixie # 2214**
                        **1200 Deltona Blvd.**
                        **Deltona, FL 32725**
      **Division:**      **Orlando**
      **Claim Number:** A611208450-0001-01

Dear Sir or Madam:

Sedgwick Claims Management Services, Inc., is the third-party administrator for Winn-Dixie
Stores, Inc.  Winn-Dixie Stores, Inc. is self-insured for Liability with a $2,000,000.00 retention.
There is no medical payments coverage.

I am the examiner handling this claim.  Please provide a status as to Marion Berrios's treatment
and medical progress with medical records and bills to date.  I will need your client to complete
the enclosed Medical and/or Wage Authorization form and return it to me.  Winn Dixie requires
that I obtain your client's recorded statement before we make any decisions determining liability.
Please contact the undersigned to arrange a convenient date and time to secure this information.
If your client has already provided us with a recorded statement please disregard.   Should you
fail to provide this information our liability decisions will be based solely upon the limited
information available to us.

Thank you for your assistance and prompt attention to this matter.  If you have any questions feel
free to contact me directly at (904)419-5337.

Sincerely,

Katelyn Bram
Claims-Examiner II

Encl.

Obtaining the medical & wage information is for the purpose of evaluating your claim and
does not assume liability on Winn-Dixie or Sedgwick Claims Management Services, Inc. to
pay or reimburse any expenses incurred as a result of this incident.

(Esta carta es en referencia al incidente que ocurio en Winn-Dixie.  Por favor ponga un
interprete en contacto con migo.)

EXHIBIT B

# James & Zimmerman, P.L.

## ATTORNEYS AT LAW

Craig T. James

Mark A. Zimmerman

Lawrence A. Welch

431 EAST NEW YORK AVENUE

POST OFFICE BOX 208

DELAND, FLORIDA 32721-0208

FACSIMILE: 386 734-1295

PHONE: 386 734-1200

Deltona Phone

386 574-0660

August 27, 2008

Attn: Ms. Katelyn Brim
Sedgwick Claims
P.O. Box 24787
Jacksonville, FL  32241-4787

**Certified Mail/
Return Receipt Requested**

Re   :   My Client      :   Marion Berrios
         D/O Accident   :   9/7/06
         Your Insured   :   Winn Dixie Store 2214
         Your Claim #   :   S611208450-0001-01

Dear Ms. Brim:

As you know, I represent Marion Berrios with respect to the injuries she sustained during the course of an incident on September 7, 2006. Please accept this letter as notice of my client's offer to settle and compromise her bodily injury claim against Winn Dixie and Sedgwick Claims Management Services for the total sum of $50,000.00. This demand package is sent in an effort to avoid the formality of litigation in the Circuit Court of Volusia County, and will serve to summarize the events surrounding the incident and injuries sustained by my client to date and in the future.

## LIABILITY

On September 7, 2006, Marion Berrios was a business invitee in Winn Dixie located at 1200 Deltona Boulevard in Deltona, Florida. She was walking towards the meat department in the back of the store when she slipped and fell in a puddle of water, which appeared to have been leaking from an acoustical tile in the roof. As Marion stepped into the water, her legs slipped out from underneath her and she fell to the ground smacking her head and back on the floor. Marion remained on the floor unable to move until a manager arrived and assisted her in getting up.

Florida Statute §768.0710 requires Marion to prove that Winn Dixie owed a duty to her and that Winn Dixie acted negligently by failing to exercise reasonable care in the



James & Zimmerman, P.L.

maintenance, inspection, repair, warning or mode of operation of the business premises. It is not necessary that Marion prove that Winn Dixie had notice of the puddle of water on the floor. In this case, Marion was a business invitee and Winn Dixie certainly owed her a duty to maintain the premises in a safe condition. Furthermore, the existence of the water on the floor is not a safe condition and the existence of the water creates a rebuttable presumption of negligence on the part of Winn Dixie that it did not maintain the premises in a reasonably safe condition. See Owens v. Publix Supermarkets, Inc., 802 So.2d 315 (Fla. 2001).

## MEDICAL CARE RENDERED/PERMANENCY

At the time of the incident, Marion experienced an immediate onset of pain in her head, neck and back. As a result, Marion went to the emergency room at Florida Hospital-Fish Memorial just a few hours after the incident and was attended to by Dr. Scott Ravede. Marion reported that she had slipped and fallen on a wet floor, landing on her back. She complained of achy pain and stiffness in her neck and low back, which became more intense with bending. Luckily, cervical and lumbar x-rays revealed no acute abnormalities or fractures. Dr. Ravede prescribed Voltaren for inflammation and Flexeril for pain and recommended that Marion follow up with her physician.

Dr. Ortolani was consulted on November 20, 2006 regarding Marion's continued neck and back pain. She gave a history of developing headaches, neck and back pain after she slipped and fell in water. Marion also acknowledged being involved in a motor vehicle accident in 1992 in which she injured her neck, but reported that the neck pain had fully resolved prior to this incident. Objective examination revealed paracervical muscle tenderness and spasms bilaterally with extension and rotation of the neck restricted to 30 degrees, paralumbar muscle tenderness and spasms with extension of the low back restricted to 10 degrees, and point tenderness to percussion in the C6-7 region, mid and lower thoracic regions, and lower lumbar area. Dr. Ortolani diagnosed Marion with cervical strain syndrome with radicular symptoms into the right arm, thoracic strain syndrome, and lumbosacral strain syndrome with radicular symptoms into the right leg, as well as post-traumatic headaches that had improved. He ordered cervical, thoracic and lumbar spine MRI scans and started Marion on Lortab, 7.5 mg, three times per day. He also ordered her to undergo physical therapy in an effort to alleviate her neck and back pain. The MRI scans were subsequently performed and revealed a **herniated disc at C6-7** and an **annular tear at L5-S1**.

James & Zimmerman, P.L.

Marion underwent physical therapy at DNA Medical Center from November 21, 2006 through January 15, 2007, for a total of 12 visits. The therapy consisted of massage and acupuncture, as well as therapeutic activities and exercise to increase Marion's strength and endurance, range of motion and flexibility. During the course of her therapy, she exhibited minor temporary relief, but overall the symptoms in her neck, shoulders, and back remained constant and unchanged.

Marion returned to Dr. Ortolani for a final examination on January 16, 2007. She reported continuing symptoms in her neck and back, which were evidenced by spasms in the cervical and lumbar spine with restriction of motion. Finding that the therapy was not providing any prolonged relief for Marion, *Dr. Ortolani opined that she had reached maximum medical improvement and assigned her an 11% impairment of the body as a whole (6% for cervical spine herniated disc and 5% for annular tear in the lumbar spine) as a direct result of the incident of September 7, 2006.*

## DAMAGES

As to the question of damages, I have taken into consideration the permanency of Marion's injuries, necessary medical treatment (past and future), and the non-economic damages experienced by Marion to date and which she must live with in the future. Presently, Marion is 68 years old. According to the Life Expectancy Table, she has a life expectancy of 84.6 years, with 16.6 remaining years. Sections I through IV of this demand represent my assessment of the damages involved with this claim.

The following is a summary of the medical bills incurred to date as a direct result of this incident:

### I.   PAST MEDICAL DAMAGES

| Medical Provider/Dates: | Bill Incurred: |
|---|---|
| 1.   Florida Hospital-Fish Memorial | $1,284.12 |
| 2.   West Volusia Emerg Phys | $  179.00 |
| 2.   Florida Radiology Management | $   80.00 |
| 3.   JENA Medical | $   84.00 |
| 3.   Dr. John Ortolani | $  700.00 |
| 4.   DNA Medical Center | $4,180.00 |
| 5.   Prescriptions | $   10.45 |

TOTAL MEDICAL EXPENSES TO DATE............................$6,517.57

James & Zimmerman, P.L.

## II.  FUTURE MEDICAL DAMAGES

Based on the medical records furnished to date, I would anticipate that Marion will require future care, pain management and medications over her remaining life expectancy. Based on this, Marion will incur the future medical expenses as delineated below:

Medical care: $200.00 x 16.6 years =   $3,320.00
Medications: $100.00 x 16.6 years =   $1,660.00

**TOTAL FUTURE MEDICAL EXPENSES**................................$4,980.00

## III. NON-ECONOMIC DAMAGES

Before this incident, Marion was an active woman who enjoyed a regular walk routine, shopping, cooking, yard work, housework, going on family outings, taking care of her great-grandchildren, and the other normal pleasures in life.

Marion has a large extended family with 10 grandchildren and 20 great-grandchildren. Before this incident, Marion regularly babysat 4 of her great-grandchildren, ranging in age from 2 to 9 years old, at least 3 days per week. Each day, Marion would provide care to the two youngest great-grandchildren, ages 2 and 3, while the older great-grandchildren, ages 7 and 9, were at school. At the end of the school day, Marion would walk several blocks to the bus stop with the younger great-grandchildren, to bring the older great-grandchildren home. She would fix each child a snack and take care of them for the remainder of the afternoon. Since the incident, Marion has been unable to continue with babysitting because the intense pain in her neck and back has made it impossible for her to pick up the younger great-grandchildren or play with any of them. What's more, Marion's 9 year old great-grandchild has Attention Deficit Disorder, which makes him extremely difficult to care for.  Children with Attention Deficit Disorder have difficulty maintaining focus and attention, are easily distracted, and often don't listen when given instructions.

Walking was a major part of Marion's life prior to this incident.  Unfortunately, she has been unable to continue with her regular walking routine that she did before this incident. Several times a week prior to her fall Marion would walk around the neighborhood and to the grocery store to shop. Now, she is unable to walk long distances and is unable to carry the grocery bags. Moreover, almost every Wednesday afternoon prior to the

**James & Zimmerman**, P.L.

incident, Marion went to the Farmer's Market located at the Volusia County Fairgrounds. However, she has been unable to do so since the incident because it is too far to walk and she is unable to push the cart through the fairgrounds. Marion also used to frequently accompany the family on trips to the local theme parks and Blue Springs Park. Regrettably, she is no longer able to walk the long distances nor is she able to stand in line for those extended periods of time.

Being a healthy and extremely active woman, Marion was able to accomplish all of her housework in a single day before this incident. However, it now takes her several days to complete the laundry, mopping, carpet cleaning, ironing, and dusting because of the constant pain in her neck and back. Marion also used to love being outside  and doing yard work such as pulling weeds and picking up leaves. Now, Marion's neighbor performs those duties since Marion is unable to bend over to the ground. Additionally, Marion used to cook three full meals per day before the incident. Unfortunately, the incident has left her with frequent pain that limits her desire and ability to cook to only one meal per day.

As evidenced above, the extensive injuries Marion sustained in this incident has caused her to miss out on spending quality time with her large family.  She is also now unable to continue her walking routine and engage in housework, yard work, or cook to the extent that she was able to prior to this incident. What is this pain, suffering and loss of enjoyment of life worth to Marion?  I feel at least $40,000.00 on the conservative end.

## IV.    RECAPITULATION OF DAMAGES

I.    Past Medical Damages.................$ 6,517.57
II.   Future Medical Expenses.............$ 4,980.00
III.  Non-Economic Damages.................$40,000.00

**TOTAL DAMAGES BEING CLAIMED**............................$51,497.57

## PROPOSAL FOR SETTLEMENT

Marion Berrios is an intelligent and articulate woman who makes an excellent witness on her own behalf. It is obvious from the damages delineated above, that this claim has a value of at least $51,497.57. Therefore, Marion has authorized me to accept $50,000.00 in full settlement of her claim.

**James & Zimmerman**, P.L.

      I look forward to your response on or before September 29, 2008.

                        Sincerely,
                        JAMES & ZIMMERMAN

                        Mark A. Zimmerman

SRM/tb
Cc: Marion Berrios
*#23013*

RECEIVED SEP 1 1 2008



# Sedgwick

## Sedgwick Claims Management Services, Inc.
### Jacksonville, FL Office
P.O. Box 14482, Lexington, KY 40512-4482
Telephone 904 419-5300    Facsimile 904 419-5365

September 05, 2008

James & Zimmerman, P.L.
Attorney at Law
Mark Zimmerman
431 East New York Avenue
PO Box 208
Deland, FL 32721-0208

RE:    Claimant:        Marion Berrios
       Claim Number:    A611208450-0001-01
       Date of Injury:  09/07/2006
       Location:        Deltona, FL 32725      Winn Dixie #: 2241

Dear Rhonda J. Fisher:

We have completed our investigation into the facts surrounding the above referenced incident. Our investigation reveals no legal liability on the part of Winn-Dixie. Therefore, we are respectfully denying your client's claim.

"Winn-Dixie emerged from bankruptcy on 11/21/06. All claims that we were aware of that occurred between 2/22/05 and 11/21/06 were mailed a notice. This notice stated that in order to have your claim considered, you needed to file a motion for an Administrative Expense Claim with the Bankruptcy Court by 1/5/07. We also put advertisements in national and regional newspapers to notify claimants who had yet to notify us of their claim. The deadline for filing your Administrative Expense claim has expired so we unable to consider your claim. If you have questions you should consult with bankruptcy counsel."

Please be advised that the handling of this claim has been forwarded to:

DELTONA ASSOC. LTD.
C/O Bruce Strumpf
314 S MISSOURI AVE, SUITE 305
CLEARWATER, FL 33756
727.449.2020

If you have any information to the contrary, please submit it to us for further evaluation.

Sincerely,

Katelyn Linville
Claims Examiner II

EXHIBIT