## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.  05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., *et al.*, | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

## DEBTORS' RESPONSE IN OPPOSITION TO
## VERONA KHANI'S MOTION FOR RELIEF FROM STAY

Winn-Dixie Stores, Inc., and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors"), file this response in opposition to the Motion for Relief from the Automatic Stay filed by Verona Khani (Docket No. 21920) (the "Motion"). As set forth below, the Motion should be denied while the parties are afforded the opportunity to resolve the claim through non-binding arbitration.

### The Debtors' Claims Resolution Procedure

1.     On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the Bankruptcy Code, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the

---

[1]   In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc. With the exception of Winn-Dixie Stores, Inc., the related cases of these reorganized debtors were closed on March 22, 2007.

Southern District of New York (the "New York Court").  By order dated April 13, 2005, the New York Court transferred venue of these cases to this Court.

2.      To date, over 13,000 proofs of claim have been filed against the Reorganized Debtors in these cases.  Approximately 3,200 of these Proofs of Claim were unliquidated personal injury or property damage claims for which litigation had been commenced or threatened against the Reorganized Debtors pre-petition "Litigation Claims").

3.      On August 12, 2005, to facilitate the consensual liquidation of the Litigation Claims in an expeditious and cost-efficient manner, the Debtors filed a Motion for an Order Establishing a Claims Resolution Procedure and Authorizing Debtors to Settle or Liquidate Certain Pre-petition Litigation Claims (Docket No. 2976) (the "Claims Resolution Procedure Motion").

4.      On September 1, 2005, this Court entered an Order approving the Claims Resolution Procedure Motion (Docket No. 3326) (the "Claims Resolution Procedure Order").[2]   The Claims Resolution Procedure approved by this Court was attached to the Claims Resolution Procedure Order.[3]

5.      On November 9, 2006, this Court entered an order (the "Confirmation Order") confirming the Debtors' plan of reorganization as modified, including a plan

---

[2]  Capitalized terms not defined herein shall have the same meaning as in the Claims Resolution Procedure Motion (Docket No. 2976) and Claims Resolution Procedure Order (Docket No. 3326).

[3]  The Claims Resolution Procedure was modified: (i) on October 7, 2005, by the entry of an Order Authorizing Debtors to Settle or Liquidate Certain Litigation Claims with Cash Payments (Docket No. 3838); (ii) on January 19, 2006, by the entry of an Order Authorizing Debtors to Settle or Liquidate Additional Claims Pursuant to the Claims Resolution Procedure (Docket No. 5218); and (iii) on April 20, 2006, by the entry of an Order Modifying the Claims Resolution Procedure (to increase the aggregate limit on de minimis cash payments and to require mediation as a prerequisite to stay relief).

supplement dated October 3, 2006 (collectively, the "Plan").  Pursuant to the Plan, the Claims Resolution Procedure remains in full force and effect.

6.      The Claims Resolution Procedure requires that Litigation Claims be mediated in good faith before they can be liquidated in another forum.

### The Claimant's Failure to Mediate in Good Faith

7.      Verona Khani ("Claimant") filed Claim Numbers 8458 and 8503, both in the amount of $250,000, and both based upon the same slip and fall accident.

8.      Claimant has documented approximately $8,000 in medical expenses in connection with the claims and has no lost wages.[4]

9.      Although the Claimant and her counsel physically appeared in Jacksonville for a scheduled mediation under the Claims Resolution Procedure, they did not mediate in good faith as evidenced by the fact that they left the mediation shortly after the mediation session had begun.

10.     Under the circumstances, the parties should be afforded an opportunity to resolve the Claimant's claims through non-binding arbitration before the Debtors are required to incur the expense of litigating the claims in state court.  The Debtors have therefore filed a motion requesting this Court to require non-binding arbitration of the Claimant's claims (Docket No. 21998).

---

[4]   Although the Claimant asserts that she plans to have a future knee surgery as a result of this 2001 accident, at this time her damages do not exceed approximately $8,000 in medical bills and pain and suffering.

## Claimant's Motion for Relief from the Automatic
## Stay Should Be Denied Pending Non-Binding Arbitration

Section 362(d) of the Bankruptcy Code provides that a court may terminate the automatic stay for "cause."[5]  In determining whether cause exists to lift the automatic stay to permit the prosecution of pending litigation, courts have held that the following factors should be considered:

> (a) whether any "great prejudice" to either the estate or debtor will result from continuation of the civil suit;
>
> (b) whether the hardship to movant resulting from maintaining the stay considerably outweighs the hardship of the debtor; and
>
> (c) whether the movant has a probability of prevailing on the merits of its case.
>
> *In re Video Cassette Games, Inc.*, 108 B.R. 347, 349 (Bankr. N.D. Ga. 1989).

*See also In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D. Ill. 1986); *In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984); *In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990).

### Prejudice to the Debtors

In the Motion, the Claimant seeks relief from the automatic stay to prosecute her personal injury action pending against the Debtors in Miami-Dade County,

---

[5]  While the Motion seeks relief from the automatic stay, the automatic stay terminated pursuant to 11 U.S.C.§362(c)(2)(C) on the Effective Date of the Plan, November 21, 2006, and was replaced by the permanent injunction provisions of the Bankruptcy Code.  However the same "cause" standard applies to the determination of whether to modify the permanent injunction as the automatic stay.  *See In re Worldcom*, 2007 WL 841948, *5 (Bankr. S.D.N.Y. Mar.12, 2007); *In re Fucilo*, 2002 WL 1008935, *9 (Bankr. S.D.N.Y. Jan. 24, 2002).

Florida.   The prosecution of this litigation, particularly without a true attempt at alternative dispute resolution, will cause prejudice to the Debtors.   Specifically, the Debtors have a $2 Million self-insured retention for claims such as the Claimant's. As a practical matter, therefore, no insurer will be providing a defense for such claims.   Thus the cost of defending the litigation in state court will fall to the Reorganized Debtors, impairing their "fresh start."   While this prejudice to the Debtors may not rise to the level of "great prejudice" under the first of the three enumerated factors, it does outweigh any harm to the Claimant from the slight delay resulting from the Debtors' arbitration motion.

### Hardship to the Debtors Outweighs Any Hardship to the Claimant

As an unsecured creditor, the Claimant bears the burden of proving that the balance of hardships tips "significantly" in her favor.   *See In re FRG, Inc.*, 114 B.R. 75, 78-79 (E.D. Pa. 1990); *In re Metro Transportation Co.*, 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988); *In re Ronald Perlstein Enterprises, Inc.*, 70 B.R. 1005, 1009-10 (Bankr. E.D. Pa. 1987).   The Claimant has not made nor can she make such showing. In the Debtors' motion for non-binding arbitration, the Debtors will be seeking only a brief delay, so that the parties may engage in a non-binding arbitration that will be convenient and inexpensive for the Claimant.   For example, the Debtors' arbitration motion will provide for a one day arbitration, to take place in Miami, with the arbitrator's fees to be paid (up to $5,000) by the Debtors, with no live witnesses other than the Claimant (if she wishes to be heard) and with an arbitrator selected by both

the parties or appointed by this Court. Thus, Claimant will suffer minimal hardship if the Motion is denied. If the Motion is granted, however, the Debtors will suffer the expense of litigating the Claimant's claims to judgment, and possibly appeal, and without first having had a true opportunity for alternative dispute resolution as ordered by this Court.

A case on point is *In re Federated Department Stores, Inc.*, 328 F.2d 829 (6th Cir. 2003). In that case, the bankruptcy court, in the interest of expediting the resolution of the remaining claims against the estate, entered an order requiring the remaining personal injury claimants to participate in arbitration and staying their state court actions. *Id.* at 832. Claimants were allowed to choose whether the arbitration would be binding or non-binding. *Id.* Two of the Claimants in that case, the Spierers filed a motion to lift the stay, which the bankruptcy court denied. *Id.* In upholding the bankruptcy court's decision, the Circuit court noted:

> The refusal to lift the stay appears to have been well within the bankruptcy court's discretion. The bankruptcy court noted that the [arbitration order], which required certain remaining claimants to bring their claims in ADR before litigating, had aimed to "expedit[e] the resolution of a relatively few remaining claims." J.A. at 410. Although the Spierers claim that this ADR process imposed an unnecessary hardship on them, arguing that their health would prohibit them from traveling [from Florida] to New York for the hearing and that the arbitrator's proposed alternative of a videoconference was prohibitively expensive, the bankruptcy court did not abuse its discretion in finding that ADR's expeditious procedures outweighed the Spierers' hardships: The Spierers had counsel in New York who presumably could have represented their interests at the ADR, their proposed alternative of litigating in New York state court

> appears to impose no less of a burden, and under the January 8, 1997 order's ADR plan, the Spierers could still proceed to court even if they participated in the ADR and lost.

<em>Id.</em> at 836-37.

In this case, the relief requested will not require the Claimant to travel or incur undue additional expense. Moreover, the Claimant in this case, like the Spierers, can proceed to state court after participating in the arbitration if she chooses. In this case, as in *Federated Department Stores*, requiring the Claimant to participate in a non-binding arbitration prior to proceeding in state court will not impose a hardship on the Claimant and, in any event, the benefits of alternative dispute resolution will outweigh any such alleged hardship. *See id.*

### No Showing of Likelihood of Success on the Merits

Finally, Claimant has not demonstrated a likelihood of success on the merits of her claim. *See Video Cassette Games,* 108 B.R. at 349.

### Conclusion

For the foregoing reasons, the factors to be considered in determining whether "cause" exists to grant relief balance in favor of denying the Motion pending non-binding arbitration. The Debtors therefore respectfully request that the Court deny

the Motion without prejudice to its renewal upon the completion of court-ordered non-binding arbitration.

Dated: January 16, 2009

SMITH HULSEY & BUSEY


By    */s/Leanne McKnight Prendergast*
        James H. Post
        Leanne McKnight Prendergast

Florida Bar Number 59544
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
lprendergast@smithhulsey.com

Counsel for Debtors

00638574

**Certificate of Service**

I certify that a copy of this document has been furnished electronically or by mail this 16th day of January, 2009 to:

H.C. Palmer, III, Esq.
PO Box 330232
Miami, Florida 33233-0232

*s/ Leanne McKnight Prendergast*