1.

Westlaw.

447 So.2d 1348
447 So.2d 1348
**(Cite as: 447 So.2d 1348)**

Page 1

**H**

Supreme Court of Florida.
Al H. BLAKE, Property Appraiser of Dade County,
R.K. Overstreet, Tax Collector of Dade County,
and Randy Miller, Executive Director of the Florida
Department of Revenue, Petitioners,
v.
XEROX CORPORATION, Respondent.
**No. 62445.**

March 8, 1984.
Rehearing Denied May 3, 1984.

Taxpayer contested assessment on leased personal property. The Circuit Court, Dade County, Leonard Rivkind, J., entered judgment in favor of property appraiser, and taxpayer appealed. The District Court of Appeal, 415 So.2d 1308, reversed and remanded. After granting review on jurisdictional ground of conflict of decisions, the Supreme Court, Boyd, J., held that District Court of Appeal applied an erroneous standard of review when it reversed trial court on ground that trial court was in error in finding that property appraiser's method was superior to method urged by taxpayer, since only questions presented by appeal were whether appraiser considered all factors mandated by the law and whether his methods and conclusions were supported by any reasonable hypothesis of a legal assessment, and not whether income capitalization method by taxpayer was better method for determining market value.

Decision of District Court of Appeal quashed; remanded with instructions.

Overton, J., filed dissenting statement.

West Headnotes

**[1] Taxation 371 ☞2722**

371 Taxation
  371III Property Taxes

371III(H) Levy and Assessment
  371III(H)11 Evidence in General
    371k2722 k. Presumptions. Most Cited
Cases
  (Formerly 371k485(1))

**Taxation 371 ☞2723**

371 Taxation
  371III Property Taxes
    371III(H) Levy and Assessment
      371III(H)11 Evidence in General
        371k2723 k. Burden of Proof. Most
Cited Cases
  (Formerly 371k485(1))
Property appraiser's determination of assessment value of leased personal property was an exercise of administrative discretion within officer's field of expertise, and thus, if appraiser proceeded lawfully, then his determination was clothed with a presumption of correctness when taxpayer challenged it, and burden was on taxpayer to show that appraiser departed from requirements of the law or that the appraisal made was not supported by any reasonable hypothesis of legality.

**[2] Taxation 371 ☞2728**

371 Taxation
  371III Property Taxes
    371III(H) Levy and Assessment
      371III(H)11 Evidence in General
        371k2724 Weight and Sufficiency of
Evidence
        371k2728 k. Valuation. Most Cited
Cases
  (Formerly 371k485(3))
Trial court's determination that appraiser properly considered statutory factors in assessing leased personal property was supported by competent, substantial evidence, and thus only remaining question was whether appraiser, following the law, could conceivably and reasonably have arrived at the appraisal value being challenged. West's F.S.A. §

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

447 So.2d 1348
447 So.2d 1348
(Cite as: 447 So.2d 1348)

193.011.

[3] Taxation 371 ☞2699(7)

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)10 Judicial Review or Interven-
tion
                371k2691 Review of Board by Courts
                    371k2699 Proceedings for Review
and Parties
                        371k2699(6) Scope and Extent
of Review
                            371k2699(7) k. In General.
Most Cited Cases
        (Formerly 371k493.8)
Regardless of whether taxpayer's method of valu-
ation was theoretically superior to that of property
appraiser's, trial court was bound to uphold ap-
praiser's determination if it was lawfully arrived at
and within range of reasonable appraisals, that is, if
it was supported by any reasonable hypothesis of
legality.

[4] Taxation 371 ☞2704

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)10 Judicial Review or Interven-
tion
                371k2700 Further Judicial Review
                    371k2704 k. Scope of Review.
Most Cited Cases
        (Formerly 371k493.8)
District Court applied erroneous standard of review
when it reversed judgment of trial court upholding
assessment on leased personal property on ground
that trial court erred in finding that property ap-
praiser's method of valuation was the better one,
since only questions presented were whether ap-
praiser considered all factors mandated by the law
and whether his methods and conclusions were sup-
ported by any reasonable hypothesis of a legal as-
sessment, and question was not whether income

capitalization method put forward by taxpayer was
a better method of determining market value than
list-price-less-depreciation method used by ap-
praiser.

[5] Appeal and Error 30 ☞854(2)

30 Appeal and Error
    30XVI Review
        30XVI(A) Scope, Standards, and Extent, in
General
            30k851 Theory and Grounds of Decision
of Lower Court
                30k854 Reasons for Decision
                    30k854(2) k. Review of Correct
Decision Based on Erroneous Reasoning in Gener-
al. Most Cited Cases
An appellate court should affirm a judgment
brought to it for review if the judgment is correct,
even when the trial court has not correctly stated all
the legal reasons sustaining the judgment.
*1349 Jim Smith, Atty. Gen. and J. Terrell Willi-
ams, Asst. Atty. Gen., Tallahassee; and Robert A.
Ginsburg, Dade County Atty., and Stephen J. Keat-
ing, Asst. County Atty., Miami, for petitioners.

Randy R. Briggs of Ayres, Cluster, Curry, McCall
& Briggs, Ocala, for respondent.


BOYD, Justice.

This cause is before the Court on petition for re-
view of the decision of the district court of appeal,
*Xerox Corp. v. Blake,* 415 So.2d 1308 (Fla. 3d
DCA 1982). We granted review on the jurisdiction-
al ground of conflict of decisions. Art. V, § 3(b)(3),
Fla. Const.

This case involves the appraisal of the value of
Xerox Corporation's copying machines and other
business equipment in Dade County, for purposes
of levying ad valorem taxation for the year 1977.
Xerox owns thousands of such machines situated in
Dade County, and leases them to its customers.
Xerox is also in the business of selling copying ma-
chines and other items, and has set prices for its

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

447 So.2d 1348
447 So.2d 1348
(Cite as: 447 So.2d 1348)

Page 3

new products offered for sale. The Dade County Property Appraiser appraised Xerox's leased equipment at $28,100,053, using the list prices of the various machines adjusted for depreciation.

Xerox filed a complaint against the property appraiser and the Dade County Tax Collector claiming that the county appraiser's method of valuation violated article VII, section 4, Florida Constitution, and section 193.011, Florida Statutes (1977). The Florida Department of Revenue was later added as a party defendant. At trial Xerox presented evidence and argument to the effect that the county property appraiser should have used an income capitalization method for assessing the property rather than looking at list prices adjusted for depreciation. The income capitalization method concentrates on the capacity of property to produce income and capitalizes such net income into present value. Xerox claimed that the income capitalization method of valuation achieves a fairer representation of market value because the vast majority of the equipment manufactured by Xerox is leased and argued that there was an insufficient sales market to justify the use of the list prices as representative of market value. Xerox presented a calculation of value, using the income capitalization method, amounting to $15,338,280.

The trial court rendered judgment for Dade County, finding:

1. The Court finds that the Plaintiff failed to sustain its burden of proof that the Property Appraiser did not consider all the relevant factors under F.S. 193.011.

2. The Court rejects the income approach used by Plaintiff's experts as representing just or market value for the following reasons:

(a) The approach failed to provide for salvage value.

(b) The officer or agent of the Plaintiff admitted that the Plaintiff corporation would not sell its equipment at the prices indicated by its income approach.

3. The "List Price less depreciation" method used by the Property Appraiser more accurately reflected just value albeit that the amount of sales was small and the sales were not of all models of Xerox equipment.

4. The Property Appraiser did not abuse his discretion, and the value set by the Property Appraiser did represent just or fair market value.

On appeal, the district court of appeal reversed, finding that the list prices were not a fair representation of market value since only a small proportion of the copiers and accessories produced by Xerox were sold. The court held "that the absence of *1350 an established sales market for the Xerox equipment in question required the appraiser to utilize an income capitalization method as the only method which would assure a just valuation." 415 So.2d at 1311.

The district court found that the income capitalization method put forward by Xerox was a better method of determining market value than the list-price-less-depreciation method used by the property appraiser. On the basis of this perceived superiority of one method over the other, the district court held that the income capitalization method should have been used. *But see Xerox Corp. v. Blake,* 415 So.2d at 1311 (Pearson, J., concurring) (income capitalization was the only possible legally correct method). We find that the district court applied an erroneous standard of review and we therefore quash the district court's decision.

[1] The property appraiser's determination of assessment value was an exercise of administrative discretion within the officer's field of expertise. Therefore, if the appraiser proceeded lawfully, then that determination was clothed with a presumption of correctness when the taxpayer challenged it. The burden was on the taxpayer to show that the appraiser departed from the requirements of the law

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 4

or that the appraisal made was not supported by any reasonable hypothesis of legality. *Powell v. Kelly,* 223 So.2d 305 (Fla.1969).

[2][3] The trial court, as was indicated above where the findings are set out, found that Xerox Corporation had failed to show that the appraiser departed from the law governing the appraisal of property for ad valorem taxation. Section 193.011, Florida Statutes (1977),[FN1] provides a list of factors which a property appraiser is to consider when determining the "just valuation" of property. The trial court's determination that the appraiser properly considered the statutory factors as mandated was supported by competent, substantial evidence. Thus the only remaining question was whether the appraiser, following the law, could conceivably and reasonably have arrived at the appraisal value being challenged. Although the trial court appears to have grounded its judgment on the finding that Xerox had failed to prove that its method was superior, this finding was unnecessary to the judgment. Regardless of which method was theoretically superior, the trial court was bound to uphold the appraiser's determination if it was lawfully arrived at and within the range of reasonable appraisals, that is, if it was supported by any reasonable hypothesis of legality.

FN1. Section 193.011 provides as follows:

In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:

(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;

(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable local or state land use regulation and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium prohibits or restricts the development or improvement of property as otherwise authorized by applicable law;

(3) The location of said property;

(4) The quantity or size of said property;

(5) The cost of said property and the present replacement value of any improvements thereon;

(6) The condition of said property;

(7) The income from said property; and

(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements.

[4][5] Like the trial court, the district court addressed the merits of the question of which method was theoretically superior, and simply disagreed with the trial court's determination. Although the trial court's determination was based in part on a finding*1351 that the property appraiser's method was the better one, the judgment should have been affirmed simply on the ground that the property appraiser's determination, having been lawfully arrived at and being supported by a reasonable hypothesis of correctness, was properly upheld. *Homer v. Dadeland Shopping Center, Inc.,* 229 So.2d 834 (Fla.1969).[FN2] The size or scope of the sales market for Xerox copying machines should not have

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

447 So.2d 1348
447 So.2d 1348
(Cite as: 447 So.2d 1348)

been regarded by the district court as determinative. The trial court found that there was a sufficient sales market to render the appraiser's method reasonable.

> FN2. An appellate court should affirm a judgment brought to it for review if the judgment is correct, even where the trial court has not correctly stated all the legal reasons sustaining the judgment. *Cohen v. Mohawk, Inc.,* 137 So.2d 222 (Fla.1962).

The courts of other jurisdictions have disagreed among themselves on the question of the theoretical correctness of the two valuation methods. *See, e.g., Xerox Corp. v. Board of Tax Review,* 175 Conn. 301, 397 A.2d 1367 (1978); *Xerox Corp. v. Board of Review,* 298 N.W.2d 416 (Iowa 1980); *Xerox Corp. v. County of Hennepin,* 309 Minn. 239, 244 N.W.2d 135 (1976); *Xerox Corp. v. City of Jackson,* 328 So.2d 330 (Miss.1976); *Xerox Corp. v. King County,* 94 Wash.2d 284, 617 P.2d 412 (1980). These cases arose in various factual and procedural settings and to the extent they addressed the question of which of the two methods is fairer or more theoretically accurate, they are inapposite to the questions presented in the instant case. To reiterate, the only questions presented by the instant case are whether the appraiser considered all factors mandated by the law and whether his methods and conclusion are supported by any reasonable hypothesis of a legal assessment.

The district court may have been correct in concluding that the income capitalization method was the better method for determining market value, but that was not the legal question presented.

We therefore quash the decision of the district court of appeal and remand with instructions to affirm the judgment of the trial court.

It is so ordered.

ALDERMAN, C.J., and McDONALD, EHRLICH and SHAW, JJ., concur.

OVERTON, Justice, dissenting:
I find no conflict jurisdiction and would consequently deny this petition for review.

Fla.,1984.
Blake v. Xerox Corp.
447 So.2d 1348

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2.

Westlaw.

854 So.2d 731                                                                                                    Page 1
854 So.2d 731, 28 Fla. L. Weekly D1957
**(Cite as: 854 So.2d 731)**

**H**

District Court of Appeal of Florida,
Second District.
GTE FLORIDA, INC., Appellant,
v.
Jim TODORA, as Property Appraiser of Sarasota
County; Barbara Ford-Coates, as Tax Collector of
Sarasota County; and Jim Zingale, as Executive
Director of the Florida Department of Revenue, Ap-
pellees.
**No. 2D01-1035.**

Aug. 22, 2003.

Taxpayer appealed from decision of the Circuit
Court, Sarasota County, Robert W. McDonald, Jr.,
J., upholding property appraiser's valuations of tax-
payer's tangible personal property for ad valorem
tax purposes. The District Court of Appeal, North-
cutt, J., held that property appraiser's valuation of
taxpayer's tangible personal property based on in-
come approach was unconstitutional.

Reversed and remanded with instructions.

West Headnotes

**[1] Taxation 371 ⬅2561**

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)5 Valuation of Property
                371k2561 k. Telecommunication Com-
panies. Most Cited Cases
    (Formerly 371k396)
Property appraiser's valuation, for ad valorem tax
purposes, of taxpayer's tangible personal property,
consisting mostly of telephone access lines taxpay-
er used to provide telephone service, based on in-
come approach was unconstitutional; under in-
come-based valuation, property appraiser found
value of company by dividing its income by capit-
alization rate, and from this, appraiser deducted

several items of property he concluded were either
nontaxable or separately assessed and taxed, but did
not adjust for any other intangibles, and inclusion
of nontaxable intangible personal property rendered
property appraisal invalid. Communications Act of
1934, § 1 et seq., as amended, 47 U.S.C.A. § 151 et
seq.; Wireless Communications and Public Safety
Act of 1999, § 6, 47 U.S.C.A. § 615b; West's
F.S.A. § 193.011.

**[2] Taxation 371 ⬅2446**

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)2 Assessors and Proceedings for
Assessment
                371k2444 Powers and Proceedings in
Making Assessments in General
                    371k2446 k. Defects and Errors,
and Presumption as to Regularity in General. Most
Cited Cases
    (Formerly 371k319(2))
Assessment of a tax that is not authorized by law is
void.
*732 Stacy D. Blank and Robert E.V. Kelley, Jr. of
Holland & Knight, LLP, Tampa, for Appellant.

Sherri L. Johnson and John C. Dent, Jr., of Dent &
Cook, Sarasota, for Appellees.

NORTHCUTT, Judge.

The circuit court rejected the claim by GTE Florida,
Inc. that the Sarasota County Property Appraiser
had improperly valued its tangible personal prop-
erty in that county for ad valorem tax purposes by,
among other things, including the value of nontax-
able intangible property. We conclude that the ap-
praisal did improperly include the value of intan-
gible property.

The proceedings below produced an extensive re-
cord, which we have studied carefully. In sum, it

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

854 So.2d 731
854 So.2d 731, 28 Fla. L. Weekly D1957
**(Cite as: 854 So.2d 731)**

reflects that GTE owns tangible personal property in Sarasota County consisting mostly of telephone access lines it uses to provide telephone service. For ad valorem tax purposes, in 1997 the property appraiser valued this tangible personal property at $250 million. In 1998 he valued it at $271 million. GTE's expert witness testified below that these assets were worth $192.5 million in 1997 and just over $213 million in 1998. After a four-day nonjury trial, the circuit court upheld the property appraiser's valuations.

GTE challenges the ruling on three general grounds. It argues, first, that the property appraiser's valuation method improperly included the value of intangible assets, which are not taxable by local governments. GTE also contends that in two respects the property appraiser failed to properly consider the valuation criteria set forth in section 193.011, Florida Statutes (1997), as required by that statute. Finally, GTE complains that the circuit court erred in permitting the introduction of evidence regarding GTE's sales of access lines in other parts of the country.

[1] The first issue centers on the property appraiser's use of the income method of valuation, which he employed with minor variations in both years. The property*733 appraiser's approach was to determine a total value for the entire GTE business enterprise, then to allocate a portion of the total to Sarasota County. When valuing the GTE enterprise, the property appraiser employed two methods, the income approach and the cost approach. Under the former, the property appraiser found the value of the company by dividing its income by a capitalization rate. From this he deducted several items of property he concluded were either nontaxable or separately assessed and taxed, such as motor vehicles, licensed trailers, and computer software. He did not adjust for any other intangibles. Under the cost approach, the property appraiser took the original cost incurred by GTE to acquire its tangible personal properties, then depreciated it based on the properties' economic lives.

After calculating values under the two methods, the property appraiser weighted them to establish a final value. In 1997, he weighted his income valuation at sixty percent and his cost valuation at forty percent. In 1998, he weighted the two approaches equally.

After determining an overall value of GTE's tangible personal property, the property appraiser allocated a portion of the value to Sarasota County using two allocation methods. First, he determined the ratio of GTE's access lines located in Sarasota County to its total number of access lines. He also calculated the ratio of the original cost of GTE's property located in Sarasota County to the original cost of GTE's total property. The property appraiser then used the average of these two figures to allocate a portion of the value of GTE's total tangible personal property to Sarasota County.

This method was consistent with that employed by the property appraiser when valuing GTE's tangible personal property in previous years. But GTE contends that legislation enacted in 1996 had the effect of rendering the property appraiser's use of the income approach improper. Under prior law, telephone companies were subject to "rate-based regulation," that is, they were permitted to earn a prescribed rate of return on their investments in facilities and equipment. Because rate-based regulation tied a telephone company's income directly to the value of its tangible assets, the property appraiser could use the income approach to value the company's tangible personal property without improperly including intangible assets in the assessment.

In 1996 Congress enacted the Telecommunications Act of 1996, see47 U.S.C. §§ 251-615b, and Florida enacted companion legislation, seech. 95-403, Laws of Fla. These laws substantially deregulated the telephone industry and provided for competition. The new scheme also abandoned rate-based regulation in favor of price cap regulation, under which telephone companies may not charge consumers prices in excess of a specified cap. So long as telephone companies do not exceed the price

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

854 So.2d 731
854 So.2d 731, 28 Fla. L. Weekly D1957
**(Cite as: 854 So.2d 731)**

cap, their incomes are unregulated.

GTE maintains that, because its income after 1996 was and is subject to competitive forces, the income approach to valuing its tangible personal property necessarily incorporates the value of intangible assets that affect the income, such as goodwill, workforce in place, and managerial skills. Under the Florida Constitution, only the State may levy ad valorem taxes on intangible personal property. Art. VII, §§ 1(a), 2, 9(a), Fla. Const. Therefore, GTE argues, the Sarasota County Property Appraiser's valuation based on the income approach was unconstitutional. We agree.

In *Havill v. Scripps Howard Cable Co.,* 742 So.2d 210 (Fla.1998), the supreme court addressed this issue as it related to tangible personal property owned by a cable*734 television company. In that case the property appraiser had valued Scripps Howard's tangible personal property using the income approach, from which he deducted twenty percent in an attempt to eliminate values attributable to real property, intangible personal property, or other nontaxable assets. However, the property appraiser conceded that the deduction was not directed specifically to such intangible assets as goodwill, workforce in place, or managerial skills, and he could not provide a basis for the twenty percent allocation. The supreme court observed that the appraisal demonstrated that "the valuation of a cable television company's tangible personal property by the income approach is constitutionally infirm."

From the single value arrived at by the income approach, it is virtually impossible to segregate specific items and identify their values. Thus, it is unlikely that the value of intangible assets and other nontaxable items can be subtracted in a nonarbitrary fashion to reveal the just valuation of the tangible personal property.

*Id.* at 213.

The court went on to quote the Florida Department of Revenue's *Manual of Instructions for Property Tax Administration,* which stated that the income approach to valuation lends itself to personal property that is leased by the owner to others, such that the income stream is directly identified with the property itself, and to situations in which the property owner's income is regulated by state or federal agencies. Otherwise, however,

[t]he capitalization of earnings generated by a business through the use of tangible personal property such as equipment, machinery, etc., is not recommended as an accurate approach to value in that the earnings are based not only upon the intrinsic value of the personal property used but also depend upon labor skills, management techniques, etc., which are intangible factors unrelated to the value of the personal property.

*Scripps Howard,* 742 So.2d at 214 (quoting *Manual of Instructions for Property Tax Administration* at 3). The supreme court concluded: "We hold as a matter of law that insofar as the income method of valuation taxes intangible property, it is an unconstitutional method for use with cable television companies." *Id.*

The property appraiser maintains that the *Scripps Howard* case does not control here. He parses the above-quoted holding in two ways. First, he points out that the supreme court held that the income valuation method is unconstitutional "for use with cable television companies." But he offers no reason why the principles underlying that holding do not apply equally as well to a similarly situated taxpayer such as GTE, and we can fathom none.

Second, the property appraiser emphasizes that the supreme court held the income valuation method unconstitutional only "insofar as [it] taxes intangible property." From this premise he argues that, as the taxpayer contesting the valuation, GTE was obliged to prove the extent to which the valuation improperly included intangible property. The circuit court, too, held this view, and it found that GTE had failed to meet its burden.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

854 So.2d 731
854 So.2d 731, 28 Fla. L. Weekly D1957
(Cite as: 854 So.2d 731)

Page 4

We reject this application of the supreme court's holding. As the court acknowledged by virtue of its quotation from the *Manual of Instructions,* there are limited circumstances in which the income method can be employed without the risk that it will include the value of nontaxable intangible property. But the court recognized that, outside those circumstances, the inclusion of intangible value is inherent in the income method, that it is "virtually *735 impossible" to segregate and quantify the values of the intangibles in order to subtract them, and that for those reasons the use of the income method for the ad valorem taxation of tangible personal property is unconstitutional. The court made no mention of any evidence offered by the taxpayer to prove how much intangible value had been included in the valuation.

[2] The assessment of a tax that is not authorized by law is void. *Lewis State Bank v. Bridges,* 115 Fla. 784, 156 So. 144 (1934). Under *Scripps Howard,* it is the fact that an income-based valuation includes nontaxable intangible personal property, not proof of the value of the intangibles, that renders the property appraisal invalid.

Finally on this point, the property appraiser argues that even if his valuation method was improper, it did not result in an excessive valuation of GTE's property. He contends this was demonstrated by the prices GTE received in various sales of access lines in other parts of the country. These sales were not employed in the property appraiser's valuation, but were discovered during the litigation. *See Bystrom v. Equitable Life Assurance Soc'y of the United States,* 416 So.2d 1133, 1138 (Fla. 3d DCA 1982) (observing that a property appraiser may defend his assessment with information acquired afterward). The circuit court allowed the property appraiser to introduce evidence of these sales over GTE's relevancy objection.

The evidentiary dispute aside, the "comparable sales" evidence simply did not demonstrate that the property appraiser's valuation did not exceed just value. His position in this regard was based on the fact that his valuations amounted to $1050.39 per access line in 1997 and $1060.96 per access line in 1998, whereas in various transactions around the country GTE sold access lines for $1060 to $3064 per line from 1993 to 1996, and for $2460 to $3947 per line in 1999 and 2000. Acknowledging GTE's contention that these numbers were meaningless without evidence of net sales prices after deducting intangible values, the property appraiser proposes to attribute thirty percent of the sales prices to intangibles. This yields a price range for the comparable sales of $742 to $2763.

There are two problems with the property appraiser's argument. First, the "comparable" sales varied widely in price. If the Sarasota County access lines were most like the most expensive of those sold by GTE, the property appraiser substantially undervalued them even after reducing the sales price by thirty percent to account for intangibles. On the other hand, if the Sarasota County access lines were most comparable to the least expensive of those sold by GTE, and again assuming that thirty percent of the sales price was attributable to intangibles, the property appraiser overvalued GTE's access lines by over forty-one percent. Testimony at trial made the obvious point that a variety of factors could affect the sales prices of access lines. But, except in the broadest of terms, the record contains scant information from which a fact finder could discern what factors caused the differential in the specific cases introduced at trial, or how those factors may or may not apply to GTE's access lines in Sarasota County. In other words, the so-called comparable sales manifestly were not strictly comparable with each other, and a fact finder could only speculate as to which of them were most indicative of the worth of GTE's Sarasota County access lines.

The second flaw in the property appraiser's argument is the premise that thirty percent of the prices realized in all the comparable sales were attributable to intangibles. He derived this figure from an *736 appraisal GTE commissioned relative to the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

854 So.2d 731
854 So.2d 731, 28 Fla. L. Weekly D1957
**(Cite as: 854 So.2d 731)**

sales of several groups of access lines. The evidence reflected that GTE had employed this figure in some other sales for which it had not obtained appraisals. But the evidence also showed that in many other sales the parties had allocated far different portions of the prices to intangibles, often far exceeding thirty percent. Again, the evidence did not furnish the fact finder any basis for concluding that a thirty percent intangible factor should be applied to all the comparable sales for purposes of comparing them to GTE's Sarasota County access lines.

Section 194.301, Florida Statutes (1999), provides that if in a judicial proceeding the property appraiser's assessment "is determined to be erroneous," the court can establish the assessment if the record contains competent, substantial evidence that cumulatively meets the valuation criteria set forth in section 193.011.[FN1] Otherwise, the court must remand the matter to the property appraiser with appropriate directions. Here, we have determined that the property appraiser's valuation method improperly included nontaxable intangible assets in the valuation of GTE's Sarasota County tangible property, and we have carefully examined and rejected the property appraiser's assertion that, nevertheless, his evidence of GTE's sales of access lines in other instances supported his determination of just value. Therefore, we conclude that the circuit court should have determined that the assessment was erroneous and proceeded to either establish the assessment based on the record or remand the matter to the property appraiser. We reverse and remand for that purpose.

> FN1. A property appraiser is required under section 193.011 to consider the following factors when determining just valuation: (1) the present cash value of the property; (2) the highest and best use to which the property can be expected to be put in the immediate future and the present use of the property; (3) the location of the property; (4) the quantity or size of the property; (5) the cost of the property and

the replacement value of improvements on the property; (6) the condition of the property; (7) the income from the property; and (8) the net proceeds from the sale of the property. The property appraiser's obligation is to consider, but not necessarily to apply, each of the factors. *Scripps Howard,* 742 So.2d at 212.

With that in mind, we consider GTE's assertion that the property appraiser failed to properly consider the criteria set forth in section 193.011. Under section 194.301, the property appraiser's assessment must be accorded a presumption of correctness unless the taxpayer proves by a preponderance of the evidence that the property appraiser did not consider properly the criteria in section 193.011. If the presumption is defeated, the taxpayer's burden is to prove by a preponderance of the evidence that the assessment exceeds just value. If the presumption is not defeated, the taxpayer's burden of proof on that issue is by clear and convincing evidence.

GTE argues that the property appraiser failed to properly consider the statutory valuation criteria on two grounds. The first is that the property appraiser's income-based valuation was flawed because he erroneously used a capitalization rate derived from the interest rate on financing that GTE had in place. GTE contends he should have based the capitalization rate on interest rates in the market. This issue has been rendered moot by our conclusion that the property appraiser should not have employed the income valuation method.

GTE also takes issue with the property appraiser's cost approach to valuation because he failed to deduct sales taxes as a *737 "cost of sale" associated with GTE's acquisition of the tangible personal property. The supreme court has concluded that there is no legal impediment to this approach. *Mazourek v. Wal-Mart Stores, Inc.,* 831 So.2d 85 (Fla.2002).

Finally, because we have determined that the property appraiser's evidence of comparable sales failed

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

854 So.2d 731
854 So.2d 731, 28 Fla. L. Weekly D1957
**(Cite as: 854 So.2d 731)**

Page 6

to support its valuation of GTE's tangible personal property in Sarasota County, we need not address GTE's evidentiary objection.

Reversed and remanded with instructions.

SILBERMAN and KELLY, JJ., Concur.
Fla.App. 2 Dist.,2003.
GTE Florida, Inc. v. Todora
854 So.2d 731, 28 Fla. L. Weekly D1957

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3.

Westlaw.

742 So.2d 210
742 So.2d 210, 23 Fla. L. Weekly S234
**(Cite as: 742 So.2d 210)**

Page 1

**H**

Supreme Court of Florida.
Ed HAVILL, etc., et al., Petitioners,
v.
SCRIPPS HOWARD CABLE COMPANY, etc., Re-
spondent.
Department of Revenue, Petitioner,
v.
Scripps Howard Cable Company, etc., Respondent.
**Nos. 87,357, 87,381.**

April 23, 1998.
Rehearing and Clarification Denied June 10, 1999.

A cable company challenged the ad valorem tax assess-
ment of its tangible personal property. The Circuit
Court, Lake County, Mark J. Hill, J., ratified the assess-
ments. The company appealed. The District Court of
Appeal, Fifth District, 665 So.2d 1071, reversed and
certified question. The Supreme Court, Harding, J., held
that: (1) the income/unit-rule method of appraisal is an
inappropriate means of assessing the tangible personal
property of cable television companies, and (2) the
county property appraiser did not have authority to reas-
sess the company's tangible personal property.

Approved and remanded.

West Headnotes

**[1] Taxation 371 ⟶2510**

371 Taxation
  371III Property Taxes
    371III(H) Levy and Assessment
      371III(H)5 Valuation of Property
        371k2510 k. In General. Most Cited Cases
    (Formerly 371k347)
The property appraiser's determination of just value is
an exercise of administrative discretion within the field
of his or her expertise. West's F.S.A. Const. Art. 7, § 4.

**[2] Taxation 371 ⟶2446**

371 Taxation
  371III Property Taxes
    371III(H) Levy and Assessment
      371III(H)2 Assessors and Proceedings for As-
sessment
        371k2444 Powers and Proceedings in Mak-
ing Assessments in General
          371k2446 k. Defects and Errors, and
Presumption as to Regularity in General. Most Cited
Cases
    (Formerly 371k319(2))
A presumption of validity attaches to the property ap-
praiser's assessment of property for ad valorem taxation
purposes. West's F.S.A. Const. Art. 7, § 4.

**[3] Taxation 371 ⟶2446**

371 Taxation
  371III Property Taxes
    371III(H) Levy and Assessment
      371III(H)2 Assessors and Proceedings for As-
sessment
        371k2444 Powers and Proceedings in Mak-
ing Assessments in General
          371k2446 k. Defects and Errors, and
Presumption as to Regularity in General. Most Cited
Cases
    (Formerly 371k319(2))
If the property appraiser does not consider each of the
statutory factors in determining just valuation of prop-
erty for ad valorem taxation purposes, the presumption
of validity of the assessment is lost. West's F.S.A.
Const. Art. 7, § 4; West's F.S.A. § 193.011.

**[4] Taxation 371 ⟶2561**

371 Taxation
  371III Property Taxes
    371III(H) Levy and Assessment
      371III(H)5 Valuation of Property
        371k2561 k. Telecommunication Compan-
ies. Most Cited Cases
    (Formerly 371k396)
For the purpose of conducting a just valuation of prop-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

742 So.2d 210
742 So.2d 210, 23 Fla. L. Weekly S234
(Cite as: 742 So.2d 210)

Page 2

erty for ad valorem taxation, the valuation of a cable
television company's tangible personal property by the
income approach, which requires the property appraiser
to estimate the future income that a prospective pur-
chaser could expect to receive from the business enter-
prise, is constitutionally infirm. West's F.S.A. Const.
Art. 7, § 4; West's F.S.A. § 193.011.

[5] Taxation 371 ⟲2561

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)5 Valuation of Property
                371k2561 k. Telecommunication Compan-
ies. Most Cited Cases
    (Formerly 371k396)
For the purpose of conducting a just valuation of prop-
erty for ad valorem taxation, the valuation of a cable
television company's tangible personal property by the
unit-rule method of valuation, which includes intangible
property values in the unit value of the operating prop-
erty, is constitutionally infirm. West's F.S.A. Const.
Art. 7, § 4; West's F.S.A. § 193.011; Fla.Admin. Code
Ann. r. 12D-2.001(8).

[6] Taxation 371 ⟲2573(1)

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)5 Valuation of Property
                371k2573 Corporate Stock, Property, or
Receipts
                    371k2573(1) k. In General. Most Cited
Cases
    (Formerly 371k404)
A county property appraiser lacked the authority to re-
assess a cable television company's tangible personal
property for the previous tax year after the tax rolls had
been certified and the company had paid its tangible
personal property tax. West's F.S.A. § 193.073.
*210 Gaylord A. Wood, Jr. of the Law Offices of Wood
& Stuart, P.A., DeLand, and Robert Butterworth, Attor-
ney General, and Joseph C. Mellichamp III, Senior As-
sistant Attorney General, Tallahassee, for Petitioners.

*211 Denis L. Durkin,Jerry R. Linscott, and Lea Ann
Banks of Baker & Hostetler, Orlando, for Respondent.

Robert K. Robinson and John C. Dent of Dent & Cook,
P.A., Sarasota, for John W. Mikos, Property Appraiser
of Sarasota County.

John P. Harllee, III of Harllee, Porges, Hamlin & Ham-
rick, P.A., Bradenton, and Charles F. Dudley, General
Counsel, Tallahassee, for Florida Cable Telecommunic-
ations Association, Inc., Amicus Curiae.

John R. Hargrove of Heinrich, Gordon, Hargrove,
Weihe & James, P.A., Fort Lauderdale, Robert G.
Beatty of BellSouth Telecommunications, Inc., Miami,
James W. McBride and Anne M. Stolee of Baker,
Donelson, Bearman & Caldwell, Washington, DC, and
Richard W. Bell of BellSouth Corporation, Atlanta, GA,
for BellSouth Telecommunications, Inc., Amicus Curi-
ae.

HARDING, Justice.

We have for review *Scripps Howard Cable Co. v.
Havill,* 665 So.2d 1071 (Fla. 5th DCA 1995), which cer-
tified the following question to be of great public im-
portance:

IS THE INCOME/UNIT RULE METHOD OF AP-
PRAISAL AN APPROPRIATE METHOD OF AS-
SESSING THE TANGIBLE PERSONAL PROPERTY
OF TELEVISION CABLE COMPANIES?

*Scripps Howard,* 665 So.2d at 1079. We have jurisdic-
tion. Art. V, § 3(b)(4), Fla. Const. We answer the certi-
fied question in the negative and approve the decision
of the Fifth District Court of appeal.

### Facts

Scripps Howard Cable Company d/b/a Lake County
Cablevision (Scripps Howard), owns a cable television
business in Leesburg, Florida, which serves customers
in Lake, Marion, and Volusia Counties. Scripps Howard
employs the use of an extensive network of tangible
personal property in providing their customers with

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

742 So.2d 210
742 So.2d 210, 23 Fla. L. Weekly S234
**(Cite as: 742 So.2d 210)**

cable television services. Scripps Howard purchases programming services from a variety of providers, including local television stations and satellite-relayed channels. These programming services are delivered by Scripps Howard to its customers via a cable television system. Scripps Howard uses various antennae and satellite dishes to receive the broadcast signals from television stations and satellites. These signals are sent to processing centers known as "headends," then delivered to distribution points through large trunk cables. Distribution cables transport the signals from the major distribution points to the neighborhoods. Amplifiers are placed along the cables to maintain the clarity of the signal during transportation. House drops carry the signal from the distribution cable to the customer's residence or place of business. The house drops are connected by taps to the distribution cables. In addition to the equipment of the physical plant, Scripps Howard also owns associated business equipment, such as trucks and inventory.

Scripps Howard challenged in the Lake County Circuit Court the ad valorem tax assessment of its tangible personal property by Ed Havill, the Lake County Property Appraiser, for the years 1989 through 1992. The assessment for the year 1989 was a reassessment performed in mid-1990. Havill's assessments, performed by Deputy Property Appraiser Robert Ross, were based on the "income/unit-rule method of valuation." Havill has assessed the six other cable television companies located in Lake County by using the cost method of valuation. Scripps Howard and Kane Reece, an independent appraisal firm hired by Scripps Howard, each appraised Scripps Howard's tangible personal property through the use of the cost method. The following table shows the valuations of Scripps Howard's tangible personal property as determined by the separate appraisals by Havill, Scripps Howard, and Kane Reece:

| Year | Havill |
|------|--------|
| 1989 | $14,999,454 |
| 1990 | $17,190,856 |
| 1991 | $19,170,796 |
| 1992 | $21,590,700 |

| Year | Scripps |
|------|---------|
| 1989 | $ 8,603,400 |
| 1990 | $ 8,819,700 |
| 1991 | $ 8,614,169 |
| 1992 | $ 9,600,284 |

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

| Year | Kane Reece |
|------|------------|
| 1989 | $10,100,837 |
| 1990 | $ 9,015,630 |
| 1991 | $ 8,622,564 |
| 1992 | $ 8,582,560 |

**\*212** Following the trial on this dispute, the circuit court ratified Havill's assessments. Scripps Howard appealed the final judgment and the Fifth District Court of Appeal reversed. The district court held that Havill's assessments were not entitled to the presumption of validity usually afforded such assessments because Havill failed to consider each factor under section 193.011, Florida Statutes (1993), for deriving the just value of the property. The district court also held that Havill's assessments improperly included the value of intangible items and exempt property, and that Havill lacked the authority to perform the reassessment for the 1989 tax year. The district court then certified the aforementioned question as one of great public importance. This review proceeding ensued.

### Principles of Ad Valorem Taxation

Article VII, section 9, of the Florida Constitution provides that counties, municipalities, and school districts shall be authorized by law to levy ad valorem taxes on real property and tangible personal property. The Florida Legislature has authorized the levy of ad valorem taxes by these local government entities. *See, e.g.,* §§ 125.016 (counties), 166.211 (municipalities), 236.25 (local school boards), Fla. Stat. (1997). The Florida Constitution prohibits local government entities from levying ad valorem taxes on intangible personal property. The power to tax intangible personal property is available only to the state. Art. VII, §§ 1(a), 2, 9(a), Fla. Const.

[1][2][3] The Florida Constitution also requires a just valuation of all property for ad valorem taxation. Art. VII, § 4, Fla. Const. The property appraiser's determination of just value is an exercise of administrative discretion within the field of his or her expertise. *Blake v. Xerox Corp.,* 447 So.2d 1348 (Fla.1984). A presumption of validity attaches to the property appraiser's assessment of property for ad valorem taxation purposes. *Bystrom v. Whitman,* 488 So.2d 520, 521 (Fla.1986). Property appraisers are required under section 193.011 to take the following factors into consideration in determining just valuation: (1) the present cash value of the property; (2) the highest and best use to which the property can be expected to be put in the immediate future and the present use of the property; (3) the location of the property; (4) the quantity or size of the property; (5) the cost of the property and the replacement value of improvements on the property; (6) the condition of the property; (7) the income from the property; and (8) the net proceeds from the sale of the property. If the property appraiser does not consider each of these statutory factors, the presumption of validity of the assessment is lost. *Straughn v. Tuck,* 354 So.2d 368, 371 (Fla.1978).

### The Income Method of Valuation

The certified question asks whether it is appropriate for a property appraiser to use a combination of the income method of valuation and the unit-rule method of valuation in assessing the tangible personal property of cable television companies. The income method of valuation is one of three well-recognized approaches to determining the value of tangible personal property. The "market approach" or "comparable sales approach" ana-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

742 So.2d 210
742 So.2d 210, 23 Fla. L. Weekly S234
(Cite as: 742 So.2d 210)

Page 5

lyzes the recent sales of similar property to arrive at the probable market price of the property being appraised. Prior to using this approach,*213 the appraiser must determine if there is an active market for the property from which reliable sales data can be obtained. The Florida Department of Revenue's *Manual of Instructions for Property Tax Administration*, (hereinafter *Manual of Instructions* ) includes a section entitled "Standard Measures of Value Pertaining to the Assessment of Tangible Personal Property and Inventory." This document states that when reliable and comparable data is available, the market approach to value is considered the most accurate method of valuation. However, the market approach is not typically used to value the tangible personal property of cable television systems due to the lack of reliable comparable sales data.

The "cost approach" considers the cost that a prudent purchaser would pay to acquire an equally desirable substitute on the open market. The cost approach simply values the original, reproduction or replacement cost of the property, less an allowance for depreciation. In the absence of comparable sales data, the Manual of Instructions recommends the use of the cost approach by county appraisers to determine the just value of tangible personal property.

[4] The "income approach" requires the property appraiser to estimate the future income that a prospective purchaser could expect to receive from the business enterprise. The business enterprise consists of all the assets of the business-tangible personal property, real property, and intangible assets. After estimating the future income, the property appraiser discounts the amount to present value by applying a capitalization rate. After completing the income approach, the appraiser has one value for the entire property. From this single value, the appraiser must attempt to deduct the values of real property, intangible assets, and other nontaxable items, to ensure that the income is solely attributable to the tangible personal property of the business enterprise.

Ross used the income method to value Scripps Howard's tangible personal property. Ross determined

the value of Scripps Howard's business enterprise by estimating the future net operating income and then applying a fourteen percent capitalization rate to the income value. Ross testified that he arrived at the capitalization rate by "look[ing] at the ... regulated utilities to find out what kind of a cap rate they were using as well as looking at T Bills, number of different items and felt a fourteen percent cap rate was fair and just." Ross deducted twenty percent of the capitalized value in an attempt to eliminate values attributable to real property, intangible personal property, or otherwise nontaxable items. However, Ross conceded that the deduction was not intended to eliminate values attributable to intangible items such as goodwill, workforce in place, and managerial skills. Furthermore, Ross could not provide a basis for the twenty percent allocation.

As demonstrated by Ross's appraisal of Scripps Howard's property, the valuation of a cable television company's tangible personal property by the income approach is constitutionally infirm. From the single value arrived at by the income approach, it is virtually impossible to segregate specific items and identify their values. Thus, it is unlikely that the value of intangible assets and other nontaxable items can be subtracted in a nonarbitrary fashion to reveal the just valuation of the tangible personal property. For example, Ross testified that he intended the twenty percent deduction from the capitalized value of Scripps Howard's business enterprise to eliminate values attributable to intangible assets, real property, and other nontaxable items. However, as Ross had no means of determining the values of the items not subject to taxation, the twenty percent allocation was without basis and we find it to be wholly arbitrary.

An additional weakness of the income approach relates to the projections and assumptions that the appraiser is required *214 to make. As noted in one text, "Certainly the projections of expected future income require the use of a crystal ball, and the development of the appropriate rates of [capitalization] is subjective...." American Society of Appraisers, *Appraising Machinery and Equipment* 125 (John Alico, ed.1989). Obviously, the assumptions and projections made by the appraiser can

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

742 So.2d 210
742 So.2d 210, 23 Fla. L. Weekly S234
**(Cite as: 742 So.2d 210)**

have a major impact on the final determination of value. The potential for error in determining the just valuation of tangible personal property pursuant to the income approach is so great that the Manual of Instructions strongly discourages the use of the approach.

The income approach to value is generally considered to be the least reliable means of determining the value of tangible personal property, and should be utilized with extreme caution. The income approach lends itself to items of personal property which are normally or usually leased or rented by the owner to others. This approach is also appropriate for consideration in the case of those properties where the income is regulated by state and/or Federal Regulatory Agencies. In such case annual earning may be capitalized to provide an indication of just value. The capitalization of earnings generated by a business through the use of tangible personal property such as equipment, machinery, etc., is not recommended as an accurate approach to value in that the earnings are based not only upon the intrinsic value of the personal property used but also depend upon labor skills, management techniques, etc., which are intangible factors unrelated to the value of the personal property.

....

When reliable market or cost data is not available for like properties, greater emphasis falls on the capitalization of net income method of appraisal. This approach is not recommended unless the income stream is clearly defined and attributable to the personal property under appraisal, as in the case of leased equipment.

*Manual of Instructions* at 3, 5. We hold as a matter of law that insofar as the income method of valuation taxes intangible property, it is an unconstitutional method for use with cable television companies.

### The Unit-Rule Method of Valuation

[5] The Florida Legislature has authorized the Florida Department of Revenue to assess the tangible personal property of railroad and railroad terminal companies under the unit-rule method of valuation. § 193.085(4)(a),

Fla. Stat. (1997). The "unit-rule method of valuation" is defined under Chapter 12D-2.001(8), Florida Administrative Code, as follows:

An appraising method used to value an entire operating property, considered as a whole with minimal consideration being given to the aggregation of the values of separate parts. The rights, franchises, and property essential to the continued business and purpose of the entire property being treated as one thing having but one value in use.

As indicated in the regulatory definition, the unit-rule method includes intangible property values in the unit value of the operating property. As previously discussed, local government units are without constitutional authority to levy assessments on intangible personal property. Therefore, we hold as a matter of law that insofar as the unit method of valuation taxes intangible property, it is an unconstitutional method for use with cable television companies.

### The 1989 Reassessment

[6] Scripps Howard also challenged Havill's authority to reassess its tangible personal property for the 1989 tax year. The reassessment was based on the appraiser's belief that Scripps Howard filed a false and fraudulent return for that year. Havill maintained at trial, and again before this Court, that the reassessment was a valid correction of an erroneous tax return under section 193.073. The trial court *215 adopted Havill's reasoning and upheld the reassessment. The district court determined that the trial court's ruling was clearly erroneous and held that Havill lacked the authority to reassess the property because the 1989 tax rolls had been certified, and Scripps Howard had paid its 1989 tangible personal property tax before the reassessment occurred. *United Tel. Co. v. Colding,* 408 So.2d 594, 595 (Fla. 2d DCA 1981)("We do not construe section 193.073 to allow correction of erroneous returns after the tax rolls have been certified and the taxes paid."). We agree with the reasoning of the district court below and hold that Havill lacked the authority to reassess Scripps Howard's tangible personal property for the year 1989.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

742 So.2d 210                                                                                              Page 7
742 So.2d 210, 23 Fla. L. Weekly S234
**(Cite as: 742 So.2d 210)**

#### *Conclusion*

Insofar as the income/unit-rule method of appraisal taxes intangible property, it is an unconstitutional method for use with cable television companies. The power to tax intangible personal property is exclusively reserved to the State under the Florida Constitution. We approve the decision of the district court and remand this case for proceedings consistent with this opinion.

It is so ordered.

KOGAN, C.J., OVERTON, SHAW, WELLS and AN-STEAD, JJ., and GRIMES, Senior Justice, concur.
Fla.,1998.
Havill v. Scripps Howard Cable Co.
742 So.2d 210, 23 Fla. L. Weekly S234

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

4.

Westlaw.

813 So.2d 178                                                              Page 1
813 So.2d 178, 27 Fla. L. Weekly D642
(Cite as: 813 So.2d 178)

**H**

District Court of Appeal of Florida,
Third District.
Ervin HIGGS, Property Appraiser for Monroe
County, Appellant,
v.
Lloyd A. GOOD, Jr., Appellee.
**No. 3D01-2675.**

March 20, 2002.
Clarification and Rehearing Denied April 24, 2002.

Taxpayer challenged county appraiser's ad valorem
tax assessment valuation of non-homestead prop-
erty. The Circuit Court, Monroe County, Richard
G. Payne, J., set aside valuation. Appraiser ap-
pealed. The District Court of Appeal, Fletcher, J.,
held that taxpayer could not defer submission of in-
come data until it pleased him to submit it tardily,
then use data to demand reduction of valuation.

Reversed and remanded.

West Headnotes

**Taxation 371 ⚖⇒2720**

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)11 Evidence in General
                371k2720 k. In General. Most Cited
Cases
    (Formerly 371k493.7(2))

**Taxation 371 ⚖⇒2721**

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)11 Evidence in General
                371k2721 k. Admissibility. Most Cited
Cases
    (Formerly 371k485(2))

Taxpayer could not defer the submission of the in-
come and expense data of non-homestead property
that was requested by county appraiser until it
pleased taxpayer to submit it tardily, after appraiser
had valued property, then use the data to demand
either administrative or judicial reduction of his
property's tax assessment valuation.
*178 Dent & Cook and John C. Dent, Jr. and Sherri
L. Johnson (Sarasota), for appellant.

Lloyd A. Good, Jr. (Lower Sugarloaf Key), in prop-
er person.

*179 Before COPE, FLETCHER, and SORONDO,
JJ.

FLETCHER, Judge.

Ervin Higgs, the Monroe County Property Ap-
praiser [Appraiser] seeks the reversal of a final or-
der setting aside the ad valorem tax assessment
valuation for 1999 on real property of Lloyd A.
Good, Jr. We reverse and reinstate the Appraiser's
valuation.

In January, 2000 the Appraiser mailed out a form
notice to non-homestead taxpayers in Monroe
County requesting them to produce by April 30,
2000 the 1999 income and expense figures for their
property, as well as their income tax returns for that
year. The form notice explained that income data
submitted after April 30 would not be considered
for the current tax year and would be objected to if
offered in a subsequent administrative or judicial
proceeding. As section 193.011(7), Florida Statutes
(2000) requires the Appraiser to take into consider-
ation the income from the property, the Appraiser
by seeking this data was rightfully carrying out a
responsibility placed on him.

Good failed to comply with the notice. Instead he
waited until after the Appraiser had carried out his
task of placing a value on the various properties in

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

813 So.2d 178
813 So.2d 178, 27 Fla. L. Weekly D642
**(Cite as: 813 So.2d 178)**

Page 2

Monroe County-including Good's.[FN1] It is not difficult to discern that-in the absence of the enforcement of the submission deadline-a taxpayer could await notice of the assessed valuation and, if it is lower than fair-market value,[FN2] say nothing and enjoy the break; or if the valuation is higher than the owner likes, *then* submit the data and insist upon its use. This is precisely what Good did. After he received his valuation notice, he, being unhappy with it, submitted his income data-in August, 2000. Ultimately Good filed suit, contending that the data he tardily submitted did not support the Appraiser's valuation.[FN3] At trial's conclusion, the court found that the Appraiser failed to properly consider the untimely submitted income data and set aside the assessment valuation on Good's property.

> FN1. The Appraiser had two months after April 30 to complete the tax roll during which time period he valued 1,500 commercial properties. [T.18].

> FN2. The Appraiser's goal is to place on each property an annual assessment valuation equal to the property's fair market value. *E.g., Valencia Center, Inc. v. Bystrom,* 543 So.2d 214 (Fla.1989).

> FN3. Notwithstanding Good's failure to submit his income data prior to April 30, the Appraiser was still required to consider the income approach in placing a tax valuation on Good's property. The Appraiser accomplished this by applying such general income data as was applicable and available to him. *See Palm Corp. v. Homer,* 261 So.2d 822 (Fla.1972).

We conclude that it was error for the trial court to allow Good to defer the submission of the income data until it pleased him to submit it (tardily), then use the data to demand either administrative or judicial reduction of his property's tax assessment valuation. It is inappropriate for a taxpayer to conceal an ace-in-the-hole for subsequent play against an official who is attempting to carry out his duties.

*See Pier House Joint Venture v. Higgs,* 555 So.2d 899 (Fla. 3d DCA 1990)(income data inadmissible because the property owner failed to reveal same in a timely fashion upon request of the property appraiser). If all taxpayers followed Good's example the Appraiser's office could be hamstrung.

The decision below is reversed and the Appraiser's 1999 tax assessment valuation on Good's property is ordered reinstated.

Fla.App. 3 Dist.,2002.
Higgs v. Good
813 So.2d 178, 27 Fla. L. Weekly D642

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

5.

Westlaw.

337 B.R. 705                                                                 Page 1
337 B.R. 705, 46 Bankr.Ct.Dec. 22, 19 Fla. L. Weekly Fed. B 155
**(Cite as: 337 B.R. 705)**

**H**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.
In re LITESTREAM TECHNOLOGIES, LLC,
Debtor.
**No. 8:04-bk-3721-KRM.**

Feb. 17, 2006.

**Background:** County tax collector filed proof of
claim for tangible personal property taxes. Chapter
11 debtor, which had been in the business of build-
ing and operating fiber optic telecommunications
systems, liquidating trustee for debtor's estate, and
purchaser of debtor's assets objected, asserting that
the underlying assessment exceeded "just valu-
ation."

**Holdings:** The Bankruptcy Court, K. Rodney May,
J., held that:
(1) under Florida law, the property appraiser did
not abuse his discretion by utilizing a "cost ap-
proach" to value debtor's tangible property;
(2) the property appraiser did not abuse his discre-
tion by disregarding the price which purchaser paid
at the sale of debtor's assets; and
(3) the property appraiser did not abuse his discre-
tion by including the installation costs associated
with the systems.

Claim allowed as specified.

West Headnotes

**[1] Taxation 371 ☞2420**

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)1 In General
                371k2417 Requisites and Validity of
Levy in General
                    371k2420 k. Time and Place of

Making Levy. Most Cited Cases

**Taxation 371 ☞2760**

371 Taxation
    371III Property Taxes
        371III(J) Payment and Refunding or Recov-
ery of Tax Paid
            371k2760 k. Time for Payment. Most
Cited Cases
Under Florida law, property taxes are levied effect-
ive January 1 for that calendar year, though taxes
are not due and payable until later in the year, on
November 1.

**[2] Bankruptcy 51 ☞2055**

51 Bankruptcy
    51I In General
        51I(C) Jurisdiction
            51k2055 k. Tax Controversies. Most
Cited Cases
Bankruptcy court has authority to determine the
amount of a debtor's tax liability, even though the
debtor did not contest the tax in accordance
with state law procedures. 11 U.S.C.A. § 505(a).

**[3] Bankruptcy 51 ☞2055**

51 Bankruptcy
    51I In General
        51I(C) Jurisdiction
            51k2055 k. Tax Controversies. Most
Cited Cases

**Bankruptcy 51 ☞2830**

51 Bankruptcy
    51VII Claims
        51VII(A) In General
            51k2830 k. Tax Claims. Most Cited Cases
Although the Bankruptcy Code gives the debtor a
renewed opportunity to contest its taxes, the stand-
ards to be applied in determining the amount of the
taxes are those established by state law. 11

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

337 B.R. 705
337 B.R. 705, 46 Bankr.Ct.Dec. 22, 19 Fla. L. Weekly Fed. B 155
(Cite as: 337 B.R. 705)

Page 2

U.S.C.A. § 505(a).

**[4] Taxation 371 ⚖══2443**

371 Taxation
   371III Property Taxes
     371III(H) Levy and Assessment
      371III(H)2 Assessors and Proceedings for Assessment
        371k2443 k. Time and Date of Assessment. Most Cited Cases
Under Florida law, the property appraiser is required to appraise all taxable property as of January 1 of the current tax year. West's F.S.A. § 192.042.

**[5] Taxation 371 ⚖══2106**

371 Taxation
   371III Property Taxes
     371III(B) Laws and Regulation
      371III(B)3 Constitutional Requirements and Restrictions
        371k2106 k. Mode of Assessment in General. Most Cited Cases
Under Florida law, the assessment of taxable property is to be made at "just value." West's F.S.A. Const. Art. 7, § 4.

**[6] Taxation 371 ⚖══2106**

371 Taxation
   371III Property Taxes
     371III(B) Laws and Regulation
      371III(B)3 Constitutional Requirements and Restrictions
        371k2106 k. Mode of Assessment in General. Most Cited Cases
Florida law requires property appraisers to consider eight statutory factors to arrive at the "just value" of taxable property. West's F.S.A. Const. Art. 7, § 4; West's F.S.A. § 193.011.

**[7] Taxation 371 ⚖══2510**

371 Taxation
   371III Property Taxes
     371III(H) Levy and Assessment

371III(H)5 Valuation of Property
      371k2510 k. In General. Most Cited Cases
Under Florida law, the property appraiser must consider all eight statutory factors to arrive at the "just value" of taxable property, but has discretion in weighing them and calculating the assessed value. West's F.S.A. § 193.011.

**[8] Taxation 371 ⚖══2446**

371 Taxation
   371III Property Taxes
     371III(H) Levy and Assessment
      371III(H)2 Assessors and Proceedings for Assessment
        371k2444 Powers and Proceedings in Making Assessments in General
        371k2446 k. Defects and Errors, and Presumption as to Regularity in General. Most Cited Cases
Florida law recognizes a "presumption of correctness" of a tax assessment, so long as the eight statutory factors used in arriving at "just value" have been considered. West's F.S.A. § 193.011.

**[9] Taxation 371 ⚖══2723**

371 Taxation
   371III Property Taxes
     371III(H) Levy and Assessment
      371III(H)11 Evidence in General
        371k2723 k. Burden of Proof. Most Cited Cases
Under Florida law, the burden is on the party challenging a tax assessment to overcome the presumption of correctness, by demonstrating that the property appraiser has failed to properly consider the eight statutory factors used in arriving at "just value." West's F.S.A. § 193.011.

**[10] Taxation 371 ⚖══2699(7)**

371 Taxation
   371III Property Taxes
     371III(H) Levy and Assessment

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

337 B.R. 705
337 B.R. 705, 46 Bankr.Ct.Dec. 22, 19 Fla. L. Weekly Fed. B 155
**(Cite as: 337 B.R. 705)**

371III(H)10 Judicial Review or Intervention

371k2691 Review of Board by Courts
371k2699 Proceedings for Review and Parties

371k2699(6) Scope and Extent of Review

371k2699(7) k. In General. Most Cited Cases
Under Florida law, the property appraiser's valuation decision will not be disturbed on review as long as each statutory factor has been lawfully considered and the assessed value of the taxable property is within the range of reasonable appraisals. West's F.S.A. § 193.011.

**[11] Taxation 371 ☞2699(7)**

371 Taxation
371III Property Taxes
371III(H) Levy and Assessment
371III(H)10 Judicial Review or Intervention

371k2691 Review of Board by Courts
371k2699 Proceedings for Review and Parties

371k2699(6) Scope and Extent of Review

371k2699(7) k. In General. Most Cited Cases
Under Florida law, because there are so many well-recognized approaches for arriving at an appraisal, the property appraiser's valuation decision may be overturned only if there is no reasonable hypothesis to support it. West's F.S.A. § 193.011.

**[12] Taxation 371 ☞2561**

371 Taxation
371III Property Taxes
371III(H) Levy and Assessment
371III(H)5 Valuation of Property
371k2561 k. Telecommunication Companies. Most Cited Cases
Under Florida law, property appraiser did not abuse his discretion by utilizing the "cost approach" to

value the tangible property that belonged to a company that had been in the business of building and operating fiber optic telecommunications systems, whereby appraiser started with company's self-reported value and, considering all eight statutory factors, adjusted it to account for lower replacement costs and depreciation. West's F.S.A. Const. Art. 7, § 4; West's F.S.A. § 193.011.

**[13] Taxation 371 ☞2561**

371 Taxation
371III Property Taxes
371III(H) Levy and Assessment
371III(H)5 Valuation of Property
371k2561 k. Telecommunication Companies. Most Cited Cases
Under Florida law, the "cost approach" is the appropriate method of calculating the value of a cable television company's tangible property. West's F.S.A. § 193.011.

**[14] Taxation 371 ☞2561**

371 Taxation
371III Property Taxes
371III(H) Levy and Assessment
371III(H)5 Valuation of Property
371k2561 k. Telecommunication Companies. Most Cited Cases
Under Florida law, in valuing the tangible property that belonged to a company that had been in the business of building and operating fiber optic telecommunications systems, the property appraiser did not abuse his discretion by disregarding the price which purchaser paid at the sale of company's assets; the sale occurred well after the statutory valuation date, and the sale was not indicative of either a fair market value or of what portion of the price was attributable to tangible, as opposed to intangible, assets, as sale was not made by a willing seller, and company was not in a financial position to hold out for a negotiated sale at top dollar but, instead, sale was accomplished by auction to achieve any sale before debtor's funds were exhausted. West's F.S.A. Const. Art. 7, § 4; West's

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

337 B.R. 705
337 B.R. 705, 46 Bankr.Ct.Dec. 22, 19 Fla. L. Weekly Fed. B 155
**(Cite as: 337 B.R. 705)**

Page 4

F.S.A. § 193.011.

**[15] Taxation 371 €⇒2561**

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)5 Valuation of Property
                371k2561 k. Telecommunication Companies. Most Cited Cases

Under Florida law, in valuing the tangible property that belonged to a company that had been in the business of building and operating fiber optic telecommunications systems, the property appraiser did not abuse his discretion by including the installation costs associated with the systems, which were stated to be about 50-60% of the systems' book value; such installation costs were incurred to place the fiber optic cable into service and have it ready to carry out its intended ultimate functions, namely, to bring telephone, cable television, and internet access to the ultimate customers. West's F.S.A. Const. Art. 7, § 4; West's F.S.A. § 193.011.

**[16] Taxation 371 €⇒2561**

371 Taxation
    371III Property Taxes
        371III(H) Levy and Assessment
            371III(H)5 Valuation of Property
                371k2561 k. Telecommunication Companies. Most Cited Cases

Under Florida law, for purposes of determining the tangible personal property taxes on property that belonged to a company that had been in the business of building and operating fiber optic telecommunications systems, the value of the property on its appraisal date would not change based on asset purchaser's subsequent election to discontinue the use of the purchased equipment and, instead, use its own coaxial cable system to service company's former customers. West's F.S.A. Const. Art. 7, § 4; West's F.S.A. § 193.011.

***707** Patrick T. Lennon, MacFarlane Ferguson & McMullen, Tampa, FL, for Debtor.

Larry S. Hyman, Larry S. Hyman, C.P.A., Tampa, FL, pro se.

Theresa M. Boatner, Office of the United States Trustee, Tampa, FL, for trustee.

David J. Tong, Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A., Tampa, FL, for Pasco County Tax Collector.

Michael C. Markham, Clearwater, FL, for Bright-House Networks.

*MEMORANDUM OPINION AND ORDER REGARDING CLAIM OF PASCO COUNTY TAX COLLECTOR*

K. RODNEY MAY, Bankruptcy Judge.

This is a contested matter, under Bankruptcy Code Section 505(a), to determine the amount of the Pasco County Tax Collector's claim for 2004 tangible personal property taxes-filed in the amount of $61,472.96.[FN1] The claim is based on an assessed valuation by the County's Property Appraiser.

> FN1. The claim was actually filed in the amount of $93,983.19, but that included $32,510.23 for the assessed 2003 tangible personal property taxes, which have been paid in full.

The Liquidating Trustee for the estate, who is holding sufficient cash to pay the claim, and the purchaser of the debtor's Pasco County operations challenged the claim, arguing that the underlying assessment exceeds "just valuation." For the reasons set forth in more detail below, the Court concludes that the assessment was made in accordance with state law and will not be overturned or modified.

*BACKGROUND*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

337 B.R. 705
337 B.R. 705, 46 Bankr.Ct.Dec. 22, 19 Fla. L. Weekly Fed. B 155
(Cite as: 337 B.R. 705)

Page 5

### The Bankruptcy Case

The debtor built and operated fiber optic telecommunications systems (for telephone, cable television, and internet connection) in developing residential communities in Pasco and St. Johns Counties. Its assets consisted of franchise rights in each county, agreements with developers, system equipment and infrastructure, and about 1,100 consumers' subscription contracts.

This case began on February 26, 2004, when three unsecured creditors filed an involuntary petition for relief under Chapter 7. The case was converted to Chapter 11 on March 3, 2004, after the debtor consented to the entry of an order for relief.

Shortly thereafter, in May 2004, all of the debtor's assets were sold in a Section 363 sale. Later, the Court confirmed the debtor's plan of liquidation, which provided for the payment of creditors' claims in full. A liquidating trustee was appointed to disburse**708** the asset sales proceeds to holders of allowed claims.

### The Sale of the Pasco County Assets

The debtor did not have sufficient capital to complete the build-out of its fiber optic systems. As a result, the debtor was compelled to sell all of its assets at an auction, pursuant to Bankruptcy Code Section 363. On May 21, 2004, the assets related to its Pasco County operations (including the franchise rights, developer contracts, customers' agreements, and installed equipment, collectively, the "Pasco Assets") were sold for $3,130,000 to BrightHouse Networks LLC (the "Purchaser").

The order approving the sale, entered on May 12, 2004 (Doc. No. 123, the "Sale Order"), provides that the Purchaser will acquire the assets "free and clear of all liens, claims, interests and encumbrances" (Sale Order, ¶ 8). Paragraph 13 of the Sale Order also provides:

Any person or holder of a tax lien claim on account

of any asset being conveyed *may file such tax lien claim against the proceeds* in conjunction with the motion for the allowance of the secured claim and *for disbursement of tax lien payments,* and this Court shall reserve jurisdiction to consider such motions and claims.

(emphasis added).

At the closing, the Purchaser was given a credit (i.e., a reduction of the purchase price) of $12,097.70, for the pro-rated amount of the parties' $30,000 estimate of the 2004 personal property taxes. This was done to allow the Purchaser to pay the 2004 tax bill, using the credited amount of $12,097.70 to offset the obligation.

### The Tax Claim

After the closing, the Tax Collector filed a proof of claim (Claim No. 73) for the *estimated* amount, $61,472.96, of the 2004 tangible personal property taxes, some $31,000 more than the debtor and Purchaser had estimated at the closing. The 2004 taxes were later assessed in the amount of $55,695.75 and remain unpaid.

[1] In accordance with the Sale Order, the Tax Collector filed a motion seeking (1) allowance of a secured claim for the 2004 taxes and (2) payment of the claim from the sale proceeds held by the estate. The debtor and, later, the Liquidating Trustee opposed the motion, contending that because the 2004 taxes had not yet been assessed, there was no lien in existence on the closing date and the Tax Collector had no lien against the proceeds of the May 21, 2004 sale (Doc. No. 182).[FN2] The debtor argued further that the Purchaser owed the taxes. The Court determined (Doc. No. 506) that under state law the Tax Collector's lien attached to the Pasco Assets as of January 1, 2004. Therefore, the lien for the 2004 taxes did attach to the proceeds of the May 21, 2004 sale, in accordance with the Sale Order. Therefore, the trial in this case dealt only with the motion to determine the amount of the taxes

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

due.

> FN2. Florida property taxes are levied ef-
> fective January 1 for that calendar year.
> Taxes are due and payable later in the year,
> on November 1. Notices for that tax year
> are mailed on the last working day of Oc-
> tober. Consequently, the 2004 tax notice
> was not available when the Tax Collector
> filed the claim.

The debtor also objected to the Tax Collector's
claim (Doc. No. 254). Thereafter, the Purchaser-see-
ing that the claims objection process might result in
a determination that it alone owes the 2004 taxes-
filed a motion seeking a determination of the
amount of the tax liability (Doc. No. 447). The Li-
quidating Trustee joined in that motion.

#### *709 *The Tax Assessment*

In April 2004, before the sale of the Pasco Assets,
the debtor filed a Tangible Personal Property Tax
Return with the Pasco County Tax Appraiser. The
return included a schedule showing categories of
assets (e.g., "tools," "headend equipment," "cable
and wire"). On the form, the debtor self-reported its
"estimate of fair market value" as "$3,343,786,"
based on its total installed costs of the two telecom-
munications systems located in the county.

The Property Appraiser then utilized the "cost ap-
proach" to value the assets that the debtor had re-
ported in its 2003 and 2004 tax returns. The Prop-
erty Appraiser examined these assets by categories
and then adjusted the debtor's reported values by a
"composite factor" to account for lower replace-
ment costs and depreciation. These adjustments res-
ulted in an aggregate assessed value of $3,109,878.

The Purchaser and the Liquidating Trustee contend
that the assessed value is excessive: they argue that
it was error for the Property Appraiser to ignore the
price, $3,130,000, which was paid for *all* of the
Pasco Assets, including valuable *intangible* con-
tract rights and accounts. In the alternative, they ar-

gue that even under the cost approach, the Property
Appraiser should have excluded the labor costs in-
curred by the debtor for digging trenches and in-
stalling the systems underground. Finally, they as-
sert that the tangible assets have virtually no value
because the Purchaser does not use the debtor's
fiber optic system; instead it uses its own coaxial
cable system to service the debtor's former custom-
ers.

#### *DISCUSSION*

[2] Bankruptcy Code Section 505(a) authorizes the
Court to "determine the amount or legality of any
tax" as long as that tax has not been "contested be-
fore and adjudicated by a judicial or administrative
tribunal of competent jurisdiction before the com-
mencement" of the bankruptcy case. Therefore, this
Court has authority to determine the amount of the
debtor's tax liability, even though the debtor did not
timely contest the tax in accordance with state law
procedures.[FN3] *See In re Piper Aircraft Corp.,* 171
B.R. 415, 418 (Bankr.S.D.Fla.1994).

> FN3. The instant case was filed before the
> effective date, October 17, 2005, of the
> Bankruptcy Abuse Prevention and Con-
> sumer Protection Act of 2005. The 2005
> amendment of Section 505(a), which now
> requires that the time for contesting the tax
> in a state forum not have expired, does not
> apply.

[3][4][5] Although Section 505(a) gives the debtor
a renewed opportunity to contest its taxes, the
standards to be applied in determining the amount
of the taxes are those established by state law. *See
In re Liuzzo,* 204 B.R. 235, 237
(Bankr.M.D.Fla.1996). The Property Appraiser is
required to appraise all taxable property as of Janu-
ary 1 of the current tax year. Florida Statutes, Sec-
tion 192.042. The assessment is to be made at "just
value." Fla. Const. Art. VII, § 4.

[6][7] In turn, Florida law requires property ap-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

praisers to consider eight statutory factors to arrive at "just value." Section 193.011, Florida Statutes (2004). The property appraiser must *consider* all of these factors, but has discretion in weighing them and calculating the assessed value. *In re Liuzzo*, 204 B.R. at 238 (citing *Valencia Center, Inc. v. Bystrom*, 543 So.2d 214, 216 (Fla.1989)).

[8][9][10][11] Florida law also recognizes a "presumption of correctness" of an assessment, so long as the eight statutory factors *710 have been considered. *Mazourek v. Wal-Mart Stores, Inc.*, 831 So.2d 85, 89 (Fla.2002). The burden is on the party challenging the assessment to overcome this presumption, by demonstrating that the property appraiser has failed to properly consider the Section 193.011 factors.

The method of valuation and the weight to be given each factor is left to the appraiser's discretion, and the decision will not be disturbed on review as long as each factor has been lawfully considered and the assessed value is within the range of reasonable appraisals. Because there are so many well-recognized approaches for arriving at an appraisal, the Appraiser's decision may be overturned only if there is *no reasonable hypothesis to support it.*

*Mazourek v. Wal-Mart Stores, Inc.*, 831 So.2d at 91 (emphasis added).FN4

> FN4. The Purchaser contends that the Court has previously rejected the foregoing standard, in its order denying the Tax Collector's motion for summary judgment (Doc. No. 506). That ruling, however, only *deferred* a decision on the application of Florida law to allow the Liquidating Trustee and the Purchaser to make an evidentiary record challenging the assessment.

[12][13] The Property Appraiser did not abuse his discretion by utilizing the "cost approach" to value the debtor's tangible property. The "cost approach" is the appropriate method of calculating the value

of a cable television company's tangible property. *Havill v. Scripps Howard Cable Company,* 742 So.2d 210, 215 (Fla.1998)(holding that neither the "income approach," nor the unit-rule method of appraisal were permissible in valuing cable system equipment). The cost approach does not imply, however, that the Property Appraiser ignored the statutory factor of the "net proceeds of the sale of the property." Florida Statutes, Section 193.011(8). The Chief Assistant Property Appraiser testified that he had considered all eight statutory factors. This testimony was unrebutted.

[14] Nor did the Property Appraiser abuse his discretion by disregarding the price which the Purchaser paid at the May 21, 2004 sale. The sale occurred well after the statutory valuation date of January 1, 2004. Moreover, the sale was not indicative of either a fair market value or of what portion of the price was attributable to the tangible assets.

The sale was not made by a willing seller. The debtor did not have sufficient cash to complete its obligations under its contracts with developers. Future defaults under those contracts were imminent. The debtor was not in a position to hold out for a negotiated sale at top dollar. The sale was accomplished by an auction to achieve any sale before the debtor's funds were exhausted.

It is evident that the debtor viewed the tangible assets as being worth more than the 2004 assessment. The debtor's former vice president of finance admitted that the debtor self-reported *all* of its booked costs, $3,343,786, as the "market value" of the tangible assets in Pasco County. He did this to encourage bidders to pay an even higher price for both the tangible and intangible assets.

[15] Finally, the Property Appraiser did not abuse his discretion by including the installation costs associated with the cable systems, which were stated to be about 50-60% of the systems' book value.FN5 *711 Installation costs are incurred to place tangible personal property-in this case, the fiber optic cable-into service and have it ready to carry out its

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

337 B.R. 705
337 B.R. 705, 46 Bankr.Ct.Dec. 22, 19 Fla. L. Weekly Fed. B 155
**(Cite as: 337 B.R. 705)**

intended ultimate functions, to bring telephone, cable T.V. and internet access to the ultimate customers.

> FN5. The Purchaser does not attack the 2003 assessment, which was presumably computed by the debtor in the same way on its 2003 return. This amount carries over onto the 2004 return, where $1,101,184 is the value of the cable and wire in place in 2002.

In *Mazourek,* the Florida Supreme Court held that ancillary costs such as freight, installation, taxes, and fees are part of acquisition costs to be considered in the cost approach to value.

It is obvious that in determining how long to keep a fixture in use (which is what depreciation is really all about) the owner must consider all of the business costs involved in acquiring and installing the fixture. Part of the owner's decision to replace an item has be [sic] based on the total investment (including sales tax) he has in the item. This reasoning is supported by all of the authoritative appraisal texts recognized by the experts.

*Mazourek v. Wal-Mart Stores, Inc.,* 831 So.2d at 91 (citation omitted).

[16] Finally, the Purchaser used at least some of the installed fiber optic cable for a limited time to provide cable service to the Purchaser's newly acquired customers in Pasco County. The value of the tangible personal property, as of January 1, 2004, would not change based on the Purchaser's subsequent election to discontinue the use of the purchased equipment.

### CONCLUSION

The cost approach, as employed by the Property Appraiser in this case, is an appropriate method of valuing the debtor's cable system. The Property Appraiser did not abuse his discretion in calculating the assessed value by starting with the debtor's self-

reported value and adjusting it for depreciation and replacement cost. Therefore, the 2004 tangible tax assessment will not be overturned or modified.

The objection to Claim No. 73 is sustained, in part, so that it is allowed in the amount of the tax as assessed, $55,695.75, plus statutory interest. The Liquidating Trustee is authorized and directed to pay the allowed claim in full within thirty (30) days from the entry of this order, unless the parties reach an agreement that the Purchaser will pay the tax after revising the pro-ration employed at closing.[FN6]

> FN6. In the event the Liquidating Trustee pays the claim in full, the Purchaser shall return to the estate the amount of the credit of $12,097.70, and pay the estate the prorated amount for the period from May 21 through December 31, 2004.

Bkrtcy.M.D.Fla.,2006.
In re Litestream Technologies, LLC
337 B.R. 705, 46 Bankr.Ct.Dec. 22, 19 Fla. L. Weekly Fed. B 155

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.