**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | Chapter 11 |
| Reorganized Debtors. | Jointly Administered |

**WINN-DIXIE'S EMERGENCY MOTION TO COMPEL
AND TO CONTINUE**

Winn-Dixie Stores, Inc., on behalf of twenty-three of its subsidiaries and affiliates, as the Reorganized Debtors (collectively, "Winn-Dixie"), moves (i) the Court to compel Visagent Corporation to produce documents in a reasonably usable electronic form, and (ii) to continue the trial scheduled to begin on June 2, 2009, pursuant to Local Bankruptcy Rule 5071-1, until ninety days after the documents are produced, and in support says:

    1.    The Court's Order Scheduling Trial (Doc. 21599) scheduled the trial on Winn-Dixie's objection to Visagent Corporation's $132 million claim for June 2 through June 5, 2009. By an amended order (Doc. 21761), the Court clarified that this phase of trial would address liability and not

damages. The Order Scheduling Trial also set May 22 as the deadline for completing discovery.

2. To reduce litigation expense and to avoid duplication of effort, Winn-Dixie has disclosed to Visagent and this Court its intent to complete document production from Visagent before deposing Visagent's witnesses. For example, during a hearing before this Court in October of last year, Winn-Dixie addressed its sequencing of discovery:

> MR. GAY: Certainly, Your Honor. And I'll just raise one or two additional points.
>
> THE COURT: Yes.
>
> MR. GAY: One of which is that Mr. Rubin again repeatedly brought up the fact that Winn-Dixie has not taken a deposition in this case yet. Well, Your Honor –
>
> THE COURT: You can do discovery the way you want to do discovery.
>
> MR. GAY: Thank you, Your Honor.
>
> THE COURT: Everybody has their own way handling it.
>
> MR. GAY: And our preference has been that we actually get the documents that we're entitled to so that we can adequately depose and efficiently depose their employees, as opposed to the manner in which depositions in this case have been done to date.
>
> THE COURT: All right. Is that it?
>
> MR. GAY: I think that's it, Your Honor.

\* \* \*

> MR. BUSEY: Another concern I have, Your Honor, just to factor into the mix – and I understand Mr. Rubin's concern about the eight months – is so far in this case our experience tells us that cooperating together on discovery has been difficult, and we still have a lot of depositions that need to be taken once the document production is complete, and it's not complete yet. And most of the witnesses we're talking about are people who are no longer employed by either Visagent or Winn-Dixie, and so we're going to need to be dealing with a lot of third parties and lot of scheduling issues.
>
> And my experience tells me that all that is time consuming. And there's probably going to be another 10 or 12 depositions to be taken, including Visagent's 30(b)(6) deposition, which is going to be lengthy.

> Transcript of 10/20/08 hearing, pages 58 and 61-62.

3. Winn-Dixie has been seeking documents and interrogatory answers from Visagent for more than two years. Winn-Dixie served its first set of interrogatories and first set of document requests on Visagent on August 16, 2006.

4. Following numerous delays and lack of responsiveness by Visagent, and after three motions by Winn-Dixie to compel production, the Court entered an order on February 19, 2009, directing Visagent to produce its additional documents by March 11, 2009 (Doc. 22089).

3

5. On March 11 Visagent moved to further extend the production deadline to March 31, 2009. Winn-Dixie objected to Visagent's motion to extend the Court's deadline on the basis that (i) Winn-Dixie's needed to receive Visagent's documents before Winn-Dixie deposed Visagent's witnesses and (ii) Visagent's continued failure to provide the discovery jeopardized the June 2 trial date:

> 7. Winn-Dixie has requested that Visagent provide sufficient discovery responses for over two years, including responses to requests regarding the very basic elements of Visagent's claims. Winn-Dixie has been forced to bring Visagent's lack of sufficient responses before the Court three times.
>
> 8. Visagent previously represented that it had already produced documents responsive to a significant number of the requests which are the subject of the Third Motion to Compel. Therefore, Visagent's statement, at this point in the discovery process, that Visagent "has identified an extremely large volume of documents which are potentially responsive" is troublesome, especially since Visagent has not provided a privilege log or otherwise identified documents withheld from production.
>
> 9. As previously discussed before the Court, Winn-Dixie is entitled to receive adequate responses to its discovery requests prior to commencing depositions. *Visagent's continued unwillingness to timely provide adequate discovery responses, despite the Court's intervention, is jeopardizing the parties' ability to proceed with*

4

> *the trial in this matter, presently scheduled to begin June 2, 2009.*

Winn-Dixie's March 16 response to Visagent's motion to extend Court-ordered deadline (Doc. 22190, pages 2-3, emphasis added).

6. The Court nevertheless granted Visagent's motion for an extension. On March 31, 2009 (approximately 30 days ago), Winn-Dixie received Visagent's compelled production, which totaled approximately 7,000 pages of documents (see Exhibit A).

7. These documents contain information critical to this dispute, including documents that relate to (i) negotiation of the agreements between Visagent and Winn-Dixie, (ii) participation (or lack of participation) by other members in Visagent's electronic exchange (Winn-Dixie alleges that the exchange had insufficient users), and (iii) complaints by other members about Visagent's electronic exchange. These documents should have been produced by Visagent years ago.

8. Moreover, *just two days ago*, on May 5, 2009, Visagent produced an additional 1,349 pages of documents – documents that Winn-

Dixie has sought for over two years (see Composite Exhibit B).[1] Although Winn-Dixie's review of this production is incomplete, this production includes numerous documents that undermine Visagent's claims and support Winn-Dixie's defenses to Visagent's claims, such as internal Visagent communications regarding Winn-Dixie, summaries, memoranda and communications regarding various problems' with Visagent's exchange, admissions by Visagent directors regarding Visagent's lack of investment in the Outside Sales Catalog, and many other documents Winn-Dixie *has not seen before*.

9. Moreover, although Visagent requested and the Court has previously ordered that Visagent produce documents "in a reasonably usable electronic form" as required by Rule 34(b)(2)(E) (Doc. 22089)[2], the documents Visagent recently produced are static images (pdf's). Visagent maintains these documents electronically in a native format or similarly usable form as evidenced by (i) the May 1, 2009 automatic dating on the attached Exhibit C, and (ii) the e-mail printed on May 1, 2009 from the e-

---

[1] It appears from date information on these documents that Visagent began printing these documents on May 1, 2009, shortly after Visagent's attorneys received Winn-Dixie's notice of deposition of Mr. Handmaker, an estranged former employee of Visagent.

[2] The Court's Order on Winn-Dixie's third motion to compel ordered Visagent to produce documents previously produced by Visagent (bates stamp numbers WD00001-WD004202) in a reasonably usable electronic form. Despite that Order, Visagent has yet to produce those documents in any electronic form.

mail account of a paralegal for Visagent's counsel attached as Exhibit D. Visagent nevertheless, in violation of Rule 34, produced these documents in static form that is not native format and not searchable.

10. Winn-Dixie therefore requests that the Court order Visagent to produce all of the documents that it maintains electronically, but produced in a static image, in a reasonably usable electronic form and to produce a privilege log regarding Visagent's recently produced documents.

11. Winn-Dixie would have been prejudiced if it had deposed Visagent's witnesses without using the documents Visagent finally produced on March 31 and May 5, 2009. Visagent's March 31 and May 5 document productions have made it impossible for Winn-Dixie to adequately prepare for the depositions it needs to take before the currently scheduled May 22 discovery cut-off. Winn-Dixie has not and cannot review and assimilate these additional 8,000+ documents in time to depose Visagent's material witnesses before the discovery cut-off date.

12. Winn-Dixie has given Visagent notice of its intent to take the depositions of six existing or former Visagent officers:

| Deponent | Connection to Visagent | Estimated duration |
|---|---|---|
| Mark Rubin | Chief Executive Officer | 14 hours |
| Robert Warren | Chief Operations Officer | 7 hours |

7

| Simon Garwood | Vice President, Business Development | 7 hours |
| --- | --- | --- |
| Tom Bixby | Chief Information Officer | 7 hours |
| Robert Handmaker | Director, User Services | 7 hours |
| Visagent (Rule 30(b)(6)) | | 14 hours |

13. To date Visagent and Winn-Dixie have not been able to agree on the scheduling of the depositions of these officers before the presently scheduled discovery cut-off date of May 22, 2009.

14. Winn-Dixie and Visagent had agreed to Winn-Dixie's taking Mr. Warren's deposition this coming Monday, May 11, but Winn-Dixie is now seeking to reschedule the deposition because it cannot complete its review of the additional production in time to be ready for the deposition on Monday.

15. Winn-Dixie and Visagent also have not yet agreed upon the scheduling of depositions of the parties' expert witnesses.

16. For these reasons, Winn-Dixie requests a continuance to allow Winn-Dixie the opportunity (i) to review Visagent's recently produced documents in a reasonably usable electronic form, (ii) to effectively utilize the documents in preparing for Visagent depositions and for trial, (iii) to complete fact and expert witness depositions. Winn-Dixie requests that the

Court schedule the trial to begin 90 days after Visagent produces the documents in a reasonably usable electronic form.

### Rule 37 and Local Bankruptcy Rule 5071-1(b) Certification

Winn-Dixie's attorneys certify that they have in good faith conferred with Visagent's attorneys in an effort to resolve the issues raised in this motion without Court action.

SMITH HULSEY & BUSEY

By  */s/ David L. Gay*
    Stephen D. Busey
    David L. Gay

Florida Bar Number 893221
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
dgay@smithhulsey.com

Attorneys for Winn-Dixie

## **Certificate of Service**

I certify that a copy of the foregoing document was furnished electronically through the Court's CM/ECF electronic notification system or by mail to **Guy Bennett Rubin, Esq.**, Rubin & Rubin, Post Office Box 395, Stuart, Florida 34995, this 7th day of May, 2009.


　　　　　/s/ David L. Gay　　　　
　　　　　Attorney

652939

# RUBIN & RUBIN

Attorneys and Counselors

Send Post Mail to:
Post Office Box 395
Stuart, FL 34995

110 SW Atlanta Ave
Stuart, FL 34994

www.rubinandrubin.com

(772) 283-2004

Gladys LaForge, Esquire*
e-mail: gladys.laforge@rubinandrubin.com

(772) 283-2009 fax

*Admitted in New York State Court, and the Northern, Eastern and Southern Districts of New York

Via overnight delivery

March 30, 2009

David L. Gay, Esq.
Smith, Hulsey and Busey
1800 Wachovia Bank Tower
228 Water Street
P.O. Box 53316
Jacksonville, Florida 32201-3315

    RE:    In re. Winn-Dixie Stores, Inc., et al; U.S. Bankruptcy Court, Middle District of Florida, Case No. 05-03817-3Fl, Chapter 11.

Dear Mr. Gay:

    Pursuant to Court Order, I am forwarding to you today a flash drive containing Visagent's production. These documents have been Bates stamped WD 21709 to WD 28529. Please note that there was a Bates Stamping error and there is no document WD 25877.

Very truly yours,

*[signature]*

Gladys LaForge

---

**EXHIBIT A**

# RUBIN & RUBIN

Attorneys and Counselors

Send Post Mail to:
Post Office Box 395
Stuart, FL 34995

www.rubinandrubin.com

110 S.W. Atlanta Ave.
Stuart, Florida 34994

(772) 283-2004

**Guy Bennett Rubin, Esq.**
e-mail: guy.rubin@rubinandrubin.com

(772) 283-2009 fax

---

May 4, 2009

Sent via overnight delivery

David Gay, Esq.
Smith Hulsey & Busey
225 Water St., Ste. 1800
Jacksonville, Florida 32202

Re:   In re. Winn-Dixie Stores, Inc., et al; U.S. Bankruptcy Court, Middle
      District of Florida, Case No. 05-03817-3F1, Chapter 11.

Dear Mr. Gay:

Enclosed please find documents responsive to Winn Dixie's previous document requests. These documents are being produced in an abundance of caution, pursuant to the Court's admonition regarding the exclusion of documents at trial if not produced at least 30 days prior to trial. As you will find, most, if not all of the documents, are virtually identical in form and substance to documents previously produced in this matter, but are not exactly identical.

Very truly yours,

Guy Bennett Rubin

**COMPOSITE EXIBIT B**



**Visagent**
Robert Handmaker-Director User Services

# Memo

**To:**   IMR, BW
**From:** RSH
**CC:**   SG
**Date:** 5/1/2009
**Re:**   Winn Dixie

---

Attached please find a graph that compares postings to deals. Most weeks, there is a correlation between postings and deals but it is not a scientific formula that when postings go up x percent, deals go down y percent. The following, however, is true.

Since the enhancements were launched, postings are up and deals are down.

|  | 7/13/01-9/25/01 (10 WEEKS) | 9/26/01-11/13/01 (8 WEEKS) | VARIANCE |
|---|---|---|---|
| BUYS | 22 | 12 | -83.33% |
| AVG/WK | 2.2 | 1.5 | -46.67% |
| POSTS | 1095 | 1339 | 18.22% |
| AVG/WK | 109.5 | 167 | 34.43% |

The above spreadsheet shows the activity before and after the enhancements. In your discussions with Winn Dixie, you will hear that the quantity of the postings is not good and the items that have been posted do not work.

Obviously, the first part is not true; there have been more postings. The problem is that a significant number of those postings have been by Winn Dixie. So the complaint you will then hear will be that they are not *selling* enough trucks.

You will then have an opportunity to tell them that their *buying* also increases *selling*. Activity spurs activity. Also, that sometimes the trucks disappear from the exchange and their inventory for a certain DC is less so the only reasonable inference is that they are sold off the exchange. Additionally, when Tom Barr says that he can sell such and such off line, he needs to phone these buyers and tell them to get on the exchange. We are also on the phone all day everyday trying to generate Users on the exchange, but if the word out there is that diverters are on the exchange and not doing enough business then it is tough to sign up new users.

The pricing has not been aggressive enough and this is the main disconnect with the other Users on the system. Users are pricing items as if they are going to end-users. WD is looking to sell for prices as if they are selling to another end user and therefore, the pricing is not aggressive enough so that other diverters have enough margin to flip the truck.

1

**EXHIBIT C**





Weekly User Statistics — Created by R. Handmaker



**Kristen Gallas**

| | |
|---|---|
| From: | Handmaker, R [IMCEAEX-_O=RUBIN+20AND+20RUBIN_OU=RUBIN_CN=RECIPIENTS_CN=RH@accubuildcompanies.com] |
| Sent: | Friday, November 02, 2001 10:14 AM |
| To: | Rubin, IM |
| Subject: | Ed and Tom. Just a draft |

I would like to send the following to Ed and Tom. Just a draft.

Gentleman:

On behalf of Mark Rubin and Bob Warren, I want to thank you for meeting with us yesterday. We appreciate the opportunity to speak frankly in the interest of maintaining a long term relationship with Winn Dixie. I want to make something clear that might have been lost in our discussion. Our goal was not to insult or "tattle" on Victory or Bruce Malcolm. Our goal was to express that we do not feel as though Victory is acting on our, and therefore, Winn Dixie's best interest.

The following facts are given. (1) The harsh realities of the situation, not the least of which is Mr. Barr's Herculean responsibilities, require a non-Winn Dixie employee to manage the Visagent project, (2) our short term success depends largely on the success of Winn Dixie's experience with the Visagent Grocery Exchange, (3) the Visagent Grocery Exchange is a tool that should improve Winn Dixie's efficiencies and its bottom line. Our discussion yesterday was to share events that have occurred, and those that have not occurred, that support our conclusion of Victory's unwillingness to get on board.

Additionally, given that a non Winn Dixie employee is managing the Exchange, we would like it to be our employee. Mr. Garwood is poised to start the day after we get permission for him to work there. It is our goal for Winn Dixie, to buy and SELL, significant numbers of truckloads through the Exchange and we are convinced that if we can place an employee at Winn Dixie, whose only goal is to transact business over the Exchange given whatever parameters Mr. Barr sets, with no loyalty to any one vendor and moreover, no knowledge of who is posting what.

One final comment. Yesterday Mr. Barr said that he cannot "make Victory or Purity post". There are several diverters who have signed up for the Exchange and who have not posted one item-not one, and it seems that they view that being on the Visagent Grocery Exchange and posting an escrow account is a new cost of doing business with Winn Dixie. It is a fine line to maintain the anonymity of the Exchange, yet inform you in many cases, that you are being played by the diverting community. I would encourage Mr. Barr to phone all diverters and tell them that whatever they are doing on the Exchange, it needs to be more and that Winn Dixie expects the Diverting community to buy off the Exchange. Further, when Winn Dixie posts items that should sell, and they do not, it is direct evidence that diverters who are selling inventory to Winn Dixie are not willing to buy, much less look. It is our understanding that Mr. Carlson has told the diverting community in a memorandum that if diverters are not on the Exchange, they will be prohibited from selling anything, even inventory to Winn Dixie. Unless all diverters on the Exchange begin to post reasonable items and buy off the Exchange, we will be forced to remove them from the Exchange.

**Robert Handmaker**
**Director of User Services**
**Visagent Corporation**
rhandmaker@visagent.com
Phone: 904.224.4100 x15
Fax:     904.396.6100
2107 Hendricks Avenue
Jacksonville, Florida 32207
www.visagent.com

EXHIBIT D


5/1/2009

WD28546

**Robert Handmaker**
**Director of User Services**
**Visagent Corporation**
rhandmaker@visagent.com
Phone: 904.224.4100 x15
Fax:    904.396.6100
2107 Hendricks Avenue
Jacksonville, Florida 32207
www.visagent.com