Westlaw.

986 So.2d 1025                Page 1
986 So.2d 1025
**(Cite as: 986 So.2d 1025)**

Court of Appeals of Mississippi.
Angelia K. MIEGER, Donald Mieger, and
Angelia Mieger as Next Friend of
Her Children, Arielle Mieger and Andrew
Mieger, Appellants
v.
PEARL RIVER COUNTY, Mississippi,
Appellee.
**No. 2006-CA-01379-COA.**

Jan. 8, 2008.
Rehearing Denied April 22, 2008.

**Background:** Plaintiff, a paramedic allegedly injured while assisting county sheriff's department personnel, brought action naming sheriff's department as defendant. The Circuit Court, Pearl River County, R.I. Prichard, III, J., denied plaintiff's motion for leave to amend complaint to name county as defendant, and dismissed the complaint. Plaintiff appealed.

**Holding:** The Court of Appeals, Lee, P.J., held that plaintiff's timely notice of claim letter put county on notice that action would have been brought against the county, and thus plaintiff's amendment adding county related back to original complaint.

Affirmed in part, reversed in part, and remanded.

Carlton, J., filed an opinion concurring in part, dissenting in part.

West Headnotes

**Limitation of Actions** ⬦124
241k124 Most Cited Cases
Plaintiff's timely notice of claim letter

served on president and clerk of county board of supervisors put county on notice that, but for plaintiff's mistake of naming the county sheriff's department as defendant, action would have been brought against the county, and thus, plaintiff's amendment adding county as defendant related back to the original complaint, although the amendment was made after expiration of 120-day period provided for amendment of her complaint and after expiration of the statute of limitations on her claim. Rules Civ.Proc., Rules 4(d)(6), 4(h), 15(c).

**\*1025** Margaret Williams Holmes, Michael Clayton Barefield, Long Beach, for appellants.

James Lawrence Wilson, IV, for appellee.

Before LEE, P.J., GRIFFIS and ISHEE, JJ.

LEE, P.J., for the Court.

FACTS
¶ 1. On October 10, 2004, Angelia Mieger, a paramedic, responded to a call from the Pearl River County Sheriff's Department. The sheriff's department told her that they needed an ambulance nearby because of a standoff with a gunman. Mieger waited several blocks away until she was told the premises were secured. When she arrived at the scene, she attempted to help the suspect but noticed a strong smell and began to have trouble breathing. She noticed that the deputies were wearing gas masks to protect themselves from fumes released from what appeared to be tear gas cans. Mieger also alleges that she was beaten by the suspect while she was giving him medical attention.

© 2008 Thomson Reuters/W        S Gov. Works.



EXHIBIT
A

986 So.2d 1025
986 So.2d 1025
(Cite as: 986 So.2d 1025)

## PROCEDURAL HISTORY

¶ 2. Pursuant to the Mississippi Tort Claims Act Section (MTCA), Mississippi Code Annotated Section 11-46-11(1) (Rev.2002), Mieger first sent a notice of claim to the president and clerk of the Pearl River County board of supervisors on November *1026 30, 2004. On September 28, 2005, Mieger, along with her husband, Donald, and as next of friend of her two minor children, filed a complaint in the Pearl River County Circuit Court against the Pearl River County Sheriff's Department and Jane/John Does 1-20. The complaint alleged that Mieger suffered severe and permanent respiratory injuries as well as post-traumatic stress disorder and depression from the events on October 10, 2004. On March 15, 2006, the sheriff's department filed a motion to dismiss for failure to name a political subdivision as a party. Mieger filed a motion for leave to amend the complaint on March 28, 2006, to correct the oversight of not naming Pearl River County as a defendant. Mieger asserted that the amended complaint, even though not timely filed, related back to the initial filing date and should be allowed. Mieger argues that appropriate representatives of the county were put on notice of the lawsuit when the notice of claim was sent and, thus, the county would not be prejudiced by the amendment. Finally, Mieger asserted that she should be allowed to substitute Pearl River County in the place of one of the fictitious parties named in the original complaint as John/Jane Does 1-20. Following a hearing on the motion, the circuit court granted the sheriff's department's motion to dismiss on July 17, 2006.

¶ 3. Mieger now appeals asserting the following issues: (1) is a sheriff's department a governmental entity or political subdivision as defined in Mississippi Code Annotated Section 11-46-1(i), and (2) in the alternative, should Mieger have been given reasonable opportunity to amend her complaint to add Pearl River County as a defendant.

¶ 4. Finding that the trial court erred as to Issue II, we reverse and remand.

## STANDARD OF REVIEW

¶ 5. A motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint and raises an issue of law. *T.M. v. Noblitt,* 650 So.2d 1340, 1342 (Miss.1995); *Taylor v. S. Farm Bureau Cas. Co.,* 954 So.2d 1045, 1047(¶ 3) (Miss.Ct.App.2007). This Court conducts de novo review on questions of law. *Noblitt,* 650 So.2d at 1342. When considering a Rule 12(b)(6) motion to dismiss, the trial judge must accept the allegations in the complaint as true and the motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of his claim. *Id.* The decision to grant or deny a motion to dismiss is in the discretion of the trial court and will not be reversed on appeal unless that discretion is abused. *State Indus., Inc. v. Hodges,* 919 So.2d 943, 945(¶ 2) (Miss.2006).

## DISCUSSION

I. IS A SHERIFF'S DEPARTMENT A GOVERNMENTAL ENTITY OR POLITICAL SUBDIVISION AS DEFINED IN MISSISSIPPI CODE ANNOTATED SECTION 11-46-1(i)?

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

986 So.2d 1025
986 So.2d 1025
(Cite as: 986 So.2d 1025)

¶ 6. The trial court dismissed Mieger's complaint for failure to name a proper defendant under the MTCA as defined in *Brown v. Thompson,* 927 So.2d 733, 737(¶ 12) (Miss.2006). The supreme court held in *Brown* that a sheriff's department is not a political subdivision within the meaning of the MTCA and, thus, does not enjoy a separate legal existence under which it can be sued. *Id.* Therefore, the proper governmental entity to name as defendant in this suit was Pearl River County, not the Pearl River County Sheriff's Department, as the trial judge correctly found. Mieger concedes that the *1027 trial court's ruling was proper under *Brown* but urges this Court to reconsider the law on whether a sheriff's department is a political subdivision of the state.

¶ 7. Mieger argues that a sheriff's department is an instrumentality of the state, as contemplated in Section 11-46-1(i), and thus enjoys a separate legal existence. Mieger does not offer any specific argument as to why a sheriff's department is a separate governmental entity but simply states that "a sheriff's department is an integral part, an organ, of a county governmental system" and "must, respectfully, be considered an 'instrumentality thereof.' "

¶ 8. The supreme court in *Brown* reviewed the structural relationship between counties and sheriff's departments and concluded that a sheriff's department is not a separate instrumentality of the state. *Brown,* 927 So.2d at 737(¶ 12). As it is our duty to follow the precedent set by the supreme court, we find no need to discuss this issue any further.

¶ 9. We find Issue I to be without merit.

## II. SHOULD MIEGER HAVE BEEN ALLOWED TO AMEND HER COMPLAINT TO ADD PEARL RIVER COUNTY AS A DEFENDANT?

¶ 10. Mieger filed a motion for leave to amend her complaint to add Pearl River County as a defendant on March 27, 2006, well outside the 120 day period after the filing of the original complaint allowed in Rule 4(h) and after the expiration of the statute of limitations. Regardless of the time bar, Mieger argues that she should have been allowed to amend her complaint under the relation back doctrine in Mississippi Rule of Civil Procedure 15(c). Pearl River County argues that relation back was unavailable under Rule 15 because the motion for leave to amend was not timely filed.

¶ 11. Mississippi Rule of Civil Procedure 15(c) states:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by Rule 4(h) for service of the summons and complaint, the party to be brought in by amendment:
(1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining the party's defense on the merits, and
(2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

brought against the party. An amendment pursuant to Rule 9(h) is not an amendment changing the party against whom a claim is asserted and such amendment relates back to the date of the original pleading. The parties do not dispute whether the amended claim arose from the same "conduct, transaction, or occurrence" as the original complaint. The remaining elements of Rule 15(c) ask whether the new party to be added by the amendment is served or put on notice before the expiration period provided for in Rule 4(h). M.R.C.P. 15(c) cmt.; *Brown v. Winn-Dixie Montgomery*, 669 So.2d 92, 96 (Miss.1996). Mieger argues that her motion to amend should be allowed because Pearl River County was put on notice of the claim when the president and board of supervisors were served with the notice of claim letter.

**\*1028** ¶ 12. Mississippi Rule of Civil Procedure 4(d)(6) states that service shall be made upon a county "by delivering a copy of the summons and complaint to the president or clerk of the board of supervisors." Mieger served the clerk of the board of supervisors with a notice of claim letter on November 30, 2004--well before the expiration of the statute of limitations on February 7, 2006. We find that the notice of claim letter put the proper county official on notice that, except for the mistake of naming the wrong party, the action would have been brought against the county.

¶ 13. We find that the decision of the circuit court denying Mieger's motion for leave to amend her complaint was in error. The decision of the Pearl River County Circuit Court is reversed and remanded for proceedings consistent with this opinion.

¶ 14. **THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE APPELLANTS AND THE APPELLEE.**

KING, C.J., MYERS, P.J., GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY IRVING AND CHANDLER, JJ.

CARLTON, J., CONCURRING IN PART, DISSENTING IN PART:

¶ 15. Because I disagree with the majority's resolution of Issue II, I respectfully dissent. I would affirm the decision of the Circuit Court of Pearl River County.

¶ 16. I agree that the proper government entity to name as defendant in this suit was Pearl River County, not the Pearl River County Sheriff's Department and that the trial judge made the correct decision. As the majority found, this Court is bound by the supreme court's precedent in *Brown v. Thompson*, 927 So.2d 733, 737(¶ 12) (Miss.2006) to reach this conclusion.

¶ 17. Mieger failed to file a motion for leave to amend her complaint to add Pearl River County as a defendant until March 27, 2006, well after the 120 day period allowed in Rule 4(h) of the Mississippi Rules of Civil Procedure had expired. Unfortunately for Mieger, the statute of limitations had also expired. Notwithstanding her

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

untimeliness, Mieger argues that she should have been allowed to amend, as the amended complaint related back to the date of the original complaint. She also claims that Pearl River County should have known that it would be added as a party but for the mistake in identity. Pearl River County argues that relation back was unavailable under Rule 15(c) of the Mississippi Rules of Civil Procedure because the motion for leave to amend was not timely filed. I agree with Pearl River County.

¶ 18. In his opinion and order granting the motion to dismiss, Circuit Judge Prichard stated the following:

### Amended Complaint Does Not Relate Back

Although not noticed for hearing, this Court has considered the Plaintiffs' Motion for Leave to Amend and Amended Motion for Leave to Amend. The Court finds that, were the Motion to Amend granted, there would be no relation back under M.R.C.P. Rule 15(c). Rule 15(c) reads, ... An amendment changing the party against whom a claim is asserted *1029 relates back if the foregoing provision is satisfied and, within the period provided by Rule 4(h) for service of the summons and complaint, the party to be brought in by the amendment:
(1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining the party's defense on the merits, and
(2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. An amendment pursuant to Rule 9(h) is not an amendment changing the party against whom a claim

is asserted and such amendment relates back to the date of the original pleading.
Clearly, the Plaintiffs' amendment to add Pearl River County as a defendant would not relate back to the filing of the original complaint because the time period for service and summons and complaint provided by Rule 4(h), 120 days, expired almost four months before the Plaintiffs' filed their Motion to Amend. [FN1] *See Curry v. Turner,* 832 So.2d 508, 512 (Miss.2002). Accordingly, any amendment granted pursuant to Rule 15(a) would be futile and this Court, therefore, denies Plaintiffs' Motion to Amend in this Opinion and Order.

FN1. The plaintiffs filed the original Complaint on September 26, 20065(sic) and their Motion to Amend was not filed until March 28, 2006, after the Defendants'(sic) submitted their Motion to Dismiss on March 15, 2006.

### Statute of Limitations Ran Out on Plaintiffs; Claims February 7, 2006

The Plaintiffs sought recovery for events which occurred on October 10, 2004. The Plaintiffs filed a notice of claim letter on November 30, 2004, upon the President of the Board of Supervisors of Pearl River County, the Chancery Clerk of Pearl River County and the Sheriff of Pearl River. [FN2] Per Miss.Code Ann. § 11-46-11(3), this notice of claim letter tolled the running of the statute of limitations for 120 days during which the Plaintiff could have filed their claim unless they received a notice of denial of claim. The Plaintiffs did not receive a notice of denial of claim from any of the persons that were served the notice of claim. Therefore, the statute

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

of limitations would have started running again on March 31, 2005, the 121st day after Chancery Clerk of Pearl River County was served. According to § 11-46-11(3) the Plaintiffs would have been given an additional 90 days to file their action except that there was more than 90 days remaining for the running of the statute of limitations.

> FN2. Only the notices to the President of the Board of Supervisors and Chancery Clerk were proper. *See* M.R.C.P. Rule 4(c) *and* Miss.Code Ann. § 11-46-11(1).

With the events giving rise to the lawsuit occurring on October 10, 2004 and the notice of claims tolling period adding another 120 days to the one year statute of limitations, the Court finds that the Plaintiffs had until February 7, 2006, to file their lawsuit to name a political subdivision as a defendant.

If the Plaintiffs were granted leave to amend the Complaint on the day that they filed their Motion to Amend, March 28, 2006, this case would still have to be dismissed because the statute of limitations ran on February 7, 2006, and the amendment would not relate back.

**Plaintiffs' Cannot Add Pearl River County under Rule 9(h), Fictitious Parties**

Substituting one named party for another named party is not a proper substitution *1030 under Rule 9(c) and does not qualify for relation back. *See Wilner v. White,* 929 So.2d 315, 322 (Miss.2006), *citing Doe v. Miss. Blood Services,* 704 So.2d 1016, 1018 (Miss.1997). The purpose of Rule 9(h) is to provide a mechanism to bring in unknown, but

unidentified parties. *Id.* The Court finds that Pearl River County was not an unknown party such as is contemplated by Rule 9(h). The Plaintiffs have not sought to substitute the name of a known, but previously unidentified party in place of a fictitious defendant. The Plaintiffs have attempted to switch the name of a known entity for the name of another known entity. Accordingly, Rule 9(h) is not applicable to the instant case and would not provide for relation back of the amended complaint. Regardless, the relation back privilege provided for fictitious parties requires the plaintiff to actually exercise a reasonable diligent inquiry to add the fictitious party. *Wilner,* 929 So.2d at 322. *The Plaintiffs have failed to exercise the required diligence required by Rule 9(h).* (emphasis added).

¶ 19. The parties do not dispute that the amended claim arose from the same "conduct, transaction, or occurrence" as the original complaint. M.R.C.P. 15(c). The remaining elements of Rule 15(c) ask whether the new party to be added by the amendment is served before the expiration period provided for in Rule 4(h). M.R.C.P. 15(c) cmt.; *Ralph Walker, Inc. v. Gallagher,* 926 So.2d 890, 895(¶ 7) (Miss.2006). Mieger argues that her motion to amend should be allowed because Pearl River County, even though not served within 120 days or before the statute of limitations ran, was put on notice when the president and board of supervisors were served with the notice of claim letter on November 30, 2004. Also, Mieger argues that the county was put on notice when service of process was made on Pearl River County Deputy Chancery Clerk Sandra Smith for Chancery

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

986 So.2d 1025
986 So.2d 1025
**(Cite as: 986 So.2d 1025)**

Clerk David Johnson. I find this argument meritless. Regardless of Mieger's argument about notice, the requirements of the two subsections under Rule 15(c) "must be fulfilled before the statute of limitations has run or within 120 days of the filing of the original complaint." *Curry v. Turner,* 832 So.2d 508, 513(¶ 10) (Miss.2002) (citing *Brown v. Winn-Dixie Montgomery, Inc.,* 669 So.2d 92, 94 (Miss.1996) (Rule 15(c) was changed to embody the holding of the *Brown* case)).

¶ 20. As the circuit judge held in his opinion, Rule 9(h) exists to allow a party to substitute the true identity of a defendant for that of a fictitious party, not the situation in this case. There is also the requirement of reasonable diligence on the part of the party seeking substitution. "The relation back privilege provided for fictitious parties under Rule 15(c)(2) requires the plaintiff to actually exercise a reasonably diligent inquiry into the identity of the fictitious party." *Wilner v. White,* 929 So.2d 315, 323(¶ 7) (Miss.2006) (quoting *Doe v. Miss. Blood Servs., Inc.,* 704 So.2d 1016, 1019(¶ 13) (Miss.1997)). "Upon review of the trial court's findings, this Court will give great deference to the lower court finding that the plaintiff did not exercise reasonable diligence." *Doe,* 704 So.2d at 1019(¶ 13). Affording "great deference" to the lower court's finding that Mieger did not exercise reasonable diligence in this case, I would conclude that she was "not ignorant of the identities of [the] appellee[ ] in the sense[ ] contemplated by Rule 9(h). Consequently, no relief is provided [the] appellant[ ] from the running of the statutory period by Rule 9(h)." *Wilner,* 929 So.2d at 323(¶ 7).

¶ 21. Mieger clearly failed to add Pearl

River County as a defendant within 120 days of the filing of the complaint as mandated in Rule 4(h). The original complaint *1031 was filed on September 28, 2005. The defendant's motion to dismiss was filed on March 15, 2006. The motion to amend was filed on March 28, 2006, six months after the original complaint was filed. Mieger also failed to amend her complaint before the expiration of the statute of limitations. The statute of limitations ran on February 7, 2006, one year after the events of October 10, 2004, which made the 120 day period in Rule 4(h) expire in January 2006. The motion for leave to amend was filed after both the statute of limitations had run and past the 120 day tolling period in Rule 4(h). I agree with the trial court's finding that Mieger's amendment to add Pearl River County as a defendant does not relate back to the filing of the original complaint because the time period for service, summons, and complaint provided for in Rule 4(h) expired almost four months before the motion to amend was filed. Also, the statute of limitations expired well before the motion to amend was filed.

¶ 22. Because I cannot find that the trial court abused its discretion in granting the Pearl River County Sheriff's Department's motion to dismiss, I would affirm the circuit court's judgment.

IRVING AND CHANDLER, JJ., JOIN THIS OPINION.

986 So.2d 1025

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                  Page 1
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
 **(Cite as: 2008 WL 1724003 (N.D.Miss.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
N.D. Mississippi,
Western Division.
Derrick Darnell PAYNE, Plaintiff
v.
Sheriff Kenny DICKERSON, et al., Defendants.
 **No. 3:07CV3-P-D.**

April 10, 2008.

Derrick Darnell Payne, Greenwood, MS, pro se.

David D. O'Donnell, Sidney Ray Hill, III, Clayton
O'Donnell Walsh, PLLC, Oxford, MS, Kent Elliot
Smith, Justin Strauss Cluck, Smith Whaley, PLLC,
Holly Springs, MS, for Defendants.

***ORDER APPROVING AND ADOPTING REPORT
AND RECOMMENDATION***

W. ALLEN PEPPER, JR., District Judge.

*1 This matter comes before the court on the motions
by the plaintiff and defendants for summary judg-
ment. As set forth in 28 U .S.C. § 636(b)(1)(B), the
court has considered the motions, the record in this
case, the Magistrate Judge's Report and Recommen-
dation, and the objections to it. The court holds that
the Report and Recommendation should be approved
and adopted as the opinion of the Court. It is, there-
fore **ORDERED**:

1. That the Report and Recommendation of the
United States Magistrate Judge dated March 26,
2008, is hereby **APPROVED AND ADOPTED** as
the findings of fact and conclusions of law of the
court.

2. That plaintiff's motion for summary judgment is
 **DENIED.**

3. That the plaintiff's claims against the Marshall
County Sheriff's Department are hereby **DIS-
MISSED** with prejudice.

4. That the defendants' motion for summary judgment
is **GRANTED** as to all defendants regarding the §
1983 false arrest claims.

5. That the defendants' motion for summary judgment
is **DENIED** regarding the claim for excessive use of
force by the defendant Preciado.

6. That the defendants' motion for summary judgment
is **GRANTED** as to Sheriff Dickerson and the Mar-
shall County Sheriff's Department on the excessive
force claims.

7. That the defendants' motion for summary judgment
is **GRANTED** as to all defendants on all claims relat-
ing to the violation of the Extradition Clause and
statutes.

8. That the defendants' motion for summary judgment
 **DENIED** as to Sheriff Dickerson on the malicious
prosecution/coercive interrogation claims.

9. That the defendants' motion for summary judgment
is **GRANTED** pursuant to the Mississippi Torts
Claim Act on the state law false arrest/false impris-
onment claim. It is, however, **DENIED** as to the
Mississippi Tort Claims Act on the excessive use of
force and malicious prosecution/coercive interroga-
tion claims.

**SO ORDERED.**

*REPORT AND RECOMMENDATION*

JERRY A. DAVIS, United States Magistrate Judge.

On June 21, 2004, an African-American male robbed
the Citizens Bank in Barton, Mississippi. Ric Pre-
ciado, a Marshall County Deputy, seeing a vehicle
matching the description of the getaway car, at-
tempted to stop the Payne's car within the state of
Mississippi. The car did not stop until it was ap-
proximately one to two miles inside the state of Ten-
nessee. Preciado arrested Payne in Tennessee. An-
other officer with Marshall County apparently on the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                   Page 2
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
(Cite as: 2008 WL 1724003 (N.D.Miss.))

instructions of the Sheriff Kenny Dickerson, immediately returned Payne to the state of Mississippi. Payne was charged with the bank robbery but was ultimately acquitted. He has sued Preciado, Sheriff Dickerson and the Marshall County Sheriff's Department. Payne filed a motion for summary judgment (Doc. 33) and the defendants responded with their own motion for summary judgment (Doc. 58). The undersigned for the reasons stated below recommends that the plaintiff's motion for summary judgment be denied and that the defendants motion for summary judgment be granted in part and denied in part.

### SUMMARY JUDGMENT STANDARDS

*2 Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).Rule 56(e) Fed.R.Civ.P. requires that materials supporting or opposing the motion be admissible at trial. Material that would be inadmissible cannot be considered on a motion for summary judgment since it would not establish a genuine issue of material fact.

Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." _Washington v. Armstrong World Indus._, 839 F.2d 1121, 1122 (5th Cir.1988) (citing _Celotex Corp. v. Catrett_, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265(1986)). If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required. _Geiserman v. MacDonald_, 893 F.2d 787, 793(5th Cir.1990).

The moving party must make an initial showing that there is no dispute of material fact or that there is a failure of proof of an element of the claim. If this showing is made, the nonmoving party must go beyond pleadings and submit specific evidence showing that there are one or more genuine issues of fact to be resolved by trial. In the absence of proof, the court does not "assume that the nonmoving party could or

would prove the necessary facts." _Little v. Liquid Air Corp._, 37 F.3d 1069, 1075 (5th Cir.1994)(emphasis omitted). While all facts are considered in favor of the nonmoving party, including all reasonable inferences therefrom, _Banc One Capital Partners Corp. v. Kneipper_, 67 F.3d 1187, 1198 (5th Cir.1995), the nonmovant's burden, "is not satisfied with 'some metaphysical doubt as to the material facts,' " _Matsushita_, 475 U.S. at 586, 106 S.Ct. at 1356, by 'conclusory allegations,' _Lujan_, 497 U.S. at 871-73, 110 S.Ct. at 3180, by "unsubstantiated assertions," _Hopper v. Frank_, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, _Davis v. Chevron U.S.A., Inc._, 14 F.3d 1082 (5th Cir.1994)._Little v. Liquid Air Corp._ at 1075.[FN1]"A dispute regarding a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986). Summary judgment is appropriate if "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." _Armstrong v. City of Dallas_, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

> FN1. Quoting from _Matsushita Electric Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538(1986) and _Lujan v. National Wildlife Federation_, 497 U.S. 871, 110 S.Ct. 3177, 111L.Ed.2d 695(1990).

*3 These standards have been applied in evaluating the evidence of record in support of and opposition to the motions for summary judgment.

### RECORD SUMMARY

While there are some differences in the parties' accounts of the facts, most of the facts are undisputed. On the morning of June 21, 2004, shortly before ten in the morning, a black male wearing a motorcycle helmet entered the Citizen's Bank in Barton, Mississippi. He robbed the bank. This man got on a bicycle as he left the bank. A bystander, Jonathan Thweatt, saw the robber leave the bank and gave chase. Thweatt initially pursued the suspect in his pick up truck. When the suspect flipped his bike in a field and abandoned the bike, Thweatt got out of his truck and

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
(Cite as: 2008 WL 1724003 (N.D.Miss.))

continued the pursuit on foot. Even after being shot at by the suspect Thweatt continued his pursuit. He saw the robber get into the passenger side of a small red car that was either a Sunbird or a Grand Am type car. He immediately reported what he had seen to the police.

According to Deputy Ric Preciado's affidavit, after hearing a radio report of the bank robbery, he spoke with fellow officer David Cook. Cook advised Preciado that the suspect was a black male riding in a small red car, possibly a Pontiac, with a second subject, possibly female in the car. Preciado then stationed his car at the intersection of Highway 72 and Cayce Road, just south of the Tennessee state line to watch for the vehicle. Around 10:00 a.m., Preciado spotted a red Pontiac Sunbird. He saw a black male riding in the front passenger's seat in a reclining position, consistent with someone trying not to be seen. He pulled out behind the car to stop it. Because he had electrical problems with the car, disabling his siren and blue lights, he sounded his car horn and flashed his lights. The red car continued on Highway 72. It then turned onto Highway 196 toward the Tennessee state line. Preciado continued his pursuit for several miles. Only after entering the state of Tennessee did the vehicle finally stop.

On approaching the vehicle, the female driver told Preciado she did not have a license.[FN2]The male occupant, Derrick Payne, told the officer that the driver was pregnant and asked that she be let go. Payne appeared to be very nervous and was sweating profusely.[FN3]Payne produced his license and when requested stepped out of the vehicle. After a pat down for weapons, according to Preciado, Payne started away from him toward the other side of the vehicle. In order to stop him from escaping Preciado grabbed Payne and a fight ensued. As the officer attempted to get Payne off his feet and cuffed, Payne yelled at the female driver to, "Get the f-k out of here."Preciado told the woman to stay put or he would shoot out her tires. The woman pulled out. Preciado could not respond to her departure because he continued to fight with Payne. After Preciado reported that he had a suspect detained, other officers including Sheriff Dickerson went to the scene of the stop to assist Preciado and to look for the woman and the car. Payne was placed in another officer's custody and transported back to Mississippi.

FN2. Payne coyly never identifies the female driver. Apparently it was his wife Lakentra Payne who testified against him in the criminal trial and whose testimony Payne has sought to block from the trial of this action. See Docket No. 41 (Payne's motion for a protective order) and Docket No. 48-2 p. 16. (Preciado's criminal trial testimony excerpt attached as a supplement to Payne's motion for summary judgment).

FN3. Payne belatedly attempts to claim that he was not sweaty (Doc. 62). His reply in support of his motion for summary judgment implicitly concedes Preciado's description, when he states, "Most people are nervous and sweating when they are stopped by the police."Doc. 54, p. 16. In his response to the defense motion for summary judgment Payne states, "The plaintiff was arrested for being nervous and allegedly sweating. This was in the summer, June 21, 2004. The Plaintiff alleges that there was many people that were nervous and sweating that day. (Doc. 62, p. 8). A page later Payne claims he was not sweating. Even if this particular fact is deemed disputed the conclusions are the same.

*4 Derrick Payne's account of the stop contradicts only some of Preciado's affidavit. Payne corroborates Preciado by estimating that the officer followed the car for approximately two miles after it crossed into Tennessee. Payne does claim that Preciado handcuffed him after he exited the car. Payne claims that his movement after the pat down, was not for the purposes of escape but for the purpose of blocking the officer's visual inspection of the car and its contents.[FN4]Payne also admits to attempting to resist Preciado handcuffing him [FN5]. There is no dispute that the bank robbery, the stop and Payne's arrest all occurred in broad daylight, so there can be no question that the officer's car would be readily identifiable as a law enforcement vehicle. Payne claims that after he was handcuffed Preciado body slammed him head first into a nearby ditch. Payne told the officers at the scene that he had done time for a 1992 armed robbery. Payne never denies any of the conversations that Preciado reports regarding the stop and arrest.

FN4. Payne's motion for summary judg-

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
(Cite as: 2008 WL 1724003 (N.D.Miss.))

ment. "I did move to block my door to stop him (from searching the car)."

FN5. Payne's Response to the Motion for Summary Judgment Doc. 62. "The plaintiff only attempted to block the door to keep Preciado from searching the vehicle and was protesting and also trying to keep him from placing the cuffs on him. P. 9.

Sheriff Kenny Dickerson, being advised of the robbery and Preciado's apprehension of a suspect, went to the scene of the stop. According to Payne and trial testimony, Dickerson directed an officer to return Payne to the scene of the bank robbery.[FN6]Dickerson determined that Payne was wearing black windsuit type pants consistent with the witness Thweatt's description. There was dirt on the pants consistent with the dirt found where the fleeing suspect had flipped the bike. A footprint Dickerson thought consistent with the shoes Payne was wearing at the time of his apprehension was found near where the get away car had been parked. He sought and obtained a warrant for Payne's arrest from a justice court judge.

FN6. Dickerson has not directly contradicted this assertion. See Payne's Supplemental Exhibits in Support of Motion for Summary Judgment. Doc. 48-2. p. 10.

According to Dickerson he met with Payne the next day in the jail at which time Payne waived his rights and confessed to the crime. He reviewed, signed and initialed the confession. Payne's account of the interrogation is markedly different. According to Payne he was kept in a hot police car for about twenty minutes without water on the day of the robbery. He was then kept overnight without water or drink. He claims Dickerson arrested an individual he named as an alibi and two of Payne's cousins when they arrived at the jail. Payne claims Dickerson threatened to arrest Payne's mother. Payne claims that he repeatedly requested assistance of counsel and that Dickerson continued the interrogation without having counsel provided to Payne. According to Payne, whose previous experience with the criminal justice system includes convictions for armed robbery and manslaughter, he was coerced into signing three documents. He claims the confession was the fabrication of the sheriff and that he had nothing to do with the robbery.

Payne was indicted and tried in state court. The first trial resulted in a hung jury. He was subsequently indicted in this court, tried and acquitted on charges arising from the bank robbery. He is presently incarcerated following revocation of his parole on the earlier manslaughter conviction.

*PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

*5 Payne's complaint seeks damages from the defendants alleging violation of his 4th, 5th, 8th and 14th Amendment rights. Payne appears to be bringing § 1983 claims for false arrest, excessive use of force, false imprisonment, and malicious prosecution. He makes a claim under § 1983 for violation of the extradition clause of the United States Constitution, U.S. Const. Art. IV, § 2, cl. 2. Payne also brings state tort claims for false arrest, false imprisonment and malicious prosecution. The defendants contend that their actions were proper and have invoked their right to qualified immunity.

Clearly the plaintiff is not entitled to any relief on his motion for summary judgment. The facts as set forth by the defendants, if accepted by a jury, set forth ample probable cause for the arrest of the plaintiff. "The constitution does not guarantee that only the guilty will be arrested, *Baker v. McCollan,* 99 S.Ct. at 2695.[FN7]If it did, section 1983 would provide a cause of action for every defendant acquitted-indeed for every suspect released." *Smith v. Gonzales,* 670 F.2d 522 (5th Cir.1982). Plaintiff believes that his acquittal removes the question of probable cause. It does not. Our justice system's requirement of proof beyond a reasonable doubt in criminal prosecutions necessarily results from time to time in the acquittal of the guilty. Payne's acquittal is not a vindication or determination that he is innocent of the charges. Accepting the defendants' version of the events leading to Payne's arrest, there was probable cause for his arrest. Preciado's version of the arrest demonstrates nothing but the necessary, justified and reasonable use of force. Dickerson's version of the interrogation shows no impropriety in the interrogation and his role in the following prosecution. The fact that Payne was arrested, prosecuted and ultimately acquitted is no indication that his constitutional rights have been violated. On the record provided to this court, there remains suspicion that Payne in fact committed the bank robbery and that this action is the one that is

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

being maliciously prosecuted.

> FN7. 443 U.S. 137, 139 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

The closest question presented by the plaintiff's motion is the admitted actions of law enforcement in removing Payne from Tennessee to Mississippi, without resort to any involvement by Tennessee authorities or any extradition proceedings. This issue will be discussed in regard to the defendants' motion for summary judgment.

The plaintiff's motion for summary judgment should be denied.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants assert that they are entitled to summary judgment on each of Payne's § 1983 claims and on his state law claims. The defendants have asserted the defense of qualified immunity. The plaintiff, because he bears the burden of proof must show some admissible evidence to support each and every element of his various claims. He also bears the burden of proving that these defendants are not entitled to qualified immunity as to each and every claim. In order to overcome the defense of qualified immunity, Payne must show 1) a constitutional violation; 2) of a right that was clearly established at the time of the violation; 3) and that each defendant's conduct violated that right. _Brown v. Lyford_, 243 F .3d 185, 189 (5th Cir.2001).

#### 1. Marshall County Sheriff's Department

**\*6** The defendants' motion for summary judgment alleges that the Marshall County Sheriff's Department should be dismissed from this action because it has no liability for any actions by law enforcement in this case as the doctrine of _respondeat superior_ is inapplicable to § 1983 actions. The defendants also contend that the Marshall County Sheriff's Department is not a proper party to this action. The undersigned agrees that the Marshall County Sheriff's Department is not a proper party in this action and the motion for summary judgment should be granted and the complaint dismissed with prejudice as to this defendant.

Rule 17(b) of the Federal Rules of Civil Procedure governs the determination of the capacity to sue and be sued. It provides that for an entity such as the Sheriff's Department that the capacity to sue or be sued is determined by the law of the state in which the district court sits. Therefore this court must look to the law of Mississippi to determine if the Marshall County Sheriff's Department is an entity subject to suit. Because the Marshall County Sheriff's Department under the laws of the state of Mississippi has no legal identity separate from Marshall County it is not subject to suit. _Brown v. Thompson_, 927 So.2d 733 (Miss.2006) (A Sheriff's Department is not a political subdivision for purposes of the Mississippi Tort Claims Act and the case against it was properly dismissed,); _Whiting v. Tunica County Sheriff's Dept._, 222 F.Supp.2d 809 (N.D.Miss.2002), overruling recognized on a different issue in _Montgomery v. Mississippi_, 498 F.Supp.2d 892 (S.D.Miss.2007) (The sheriff's office was not amenable to suit according to Mississippi law, because the plaintiff failed to show it enjoyed an existence separate from the county. _Citing Darby v. Pasadena Police Department_, 939 F.2d 311, 313 (5th Cir.1991)).

Alternatively the Marshall County Sheriff's Department contends that it has no potential liability in this action because there is no vicarious liability for the actions of its employees and because Payne cannot show that any policy or practice of the department was a moving force in the actions leading to the alleged deprivation of his rights. These contentions will be addressed separately in the following analysis of the different claims.

The undersigned recommends that the Marshall County Sheriff's Department be dismissed from this action as it is not an entity subject to suit under the laws of the State of Mississippi..

#### 2. False Arrest and False Imprisonment

In order to prevail on his claim of false arrest and false imprisonment Payne must prove that he was arrested without probable cause. _Brown v. Lyford_, 243 F.3d. 185 (5th Cir.2001); _Haggerty v. Texas Southern University_, 391 F.3d 653 (5th Cir.2004). In order to overcome the defense of qualified immunity asserted by the defendants, Payne must prove that all law enforcement officers, except "the plainly incompetent or those who knowingly violate the law,"

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
(Cite as: 2008 WL 1724003 (N.D.Miss.))

*Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271(1986), would recognize that probable cause for his arrest did not exist."[T]here must not even 'arguably' be probable cause for the ... arrest for immunity to be lost."*Brown v. Lyford,* at 190.If reasonable officers could debate whether or not probable cause existed under all the facts, then Preciado would be entitled to qualified immunity and summary judgment.

*7 What are the undisputed facts? Payne attempts to restrict the facts available to support a finding of probable cause. Payne asserts that the only information available to Preciado was that there were two people in a red car. Payne makes representations about recordings of radio transmissions. Payne's hearsay report about the contents of some recording of some portion of radio transmissions is simply not admissible evidence that will create a dispute of material facts. Thus Payne's assertion that there was a radio transmission alerting officers to be on the look out for two black males provides no admissible evidence to contradict the assertions of the defendants about what information was known to police officers and communicated to Preciado. Likewise, Payne has attached what appear to be radio logs in an attempt to contradict the information Preciado claims to have known. Aside from any evidentiary issue, the logs do not on their face purport to be a complete record of either the fact of all radio communications or the content of all radio communications. They clearly does not include any reference to face to face communications. No fact listed in Preciado's affidavit becomes a disputed fact merely because it is not detailed in the dispatch radio log. There are indications in the record that Preciado was told the getaway car had Desoto County license plates, as did Payne's car. Since the witness Thweatt did not recall anything about the getaway car's license plates at the trial, this information must be considered fairly disputed.

Thus the undisputed facts in the record are those outlined in Preciado's affidavit and trial testimony, except for the tag information. This officer was advised that the black male bank robber was a passenger in a small red car, either a Pontiac or Grand Am. He stationed himself on a highway heading toward the Tennessee state line, anticipating that the robber might try to flee across the state line. Within a very short time of the reported robbery, Preciado spotted the small red Sunbird carrying the plaintiff as a pas-

senger. Payne without dispute was reclining in his seat, as if trying to avoid being seen.[FN8] The officer certainly had cause at this point to conduct an investigatory stop. When he tried to stop the car by sounding his horn and flashing his headlights the red car did not stop for some several miles well into the state of Tennessee. If the failure to stop is willful, the driver committed a misdemeanor, § 97-9-72, Miss.Code Ann. Preciado's reasonable grounds for suspicion that justified an investigative stop, at least arguably, ripened into probable cause when the car did not stop.

> FN8. Payne attached an excerpt of Preciado's criminal trial testimony to his supplement to the motion for summary judgment. This testimony strengthens the basis for initially trying to stop the car and the probable cause for the arrest. Preciado's testimony is more detailed than his affidavit. Preciado testified that he saw the car and that it had two occupants. He looked again and could only see the driver. As the car passed, he saw the male occupant in the reclining position on the passenger side.

The reported conversations between the officer and the occupants of the car, which Payne has not disputed, add to the reasonableness of Preciado and later the other officers, believing they had the culprit. Payne asking that the female be let go because she was pregnant and his actions, whether in attempting to escape, or attempting to block the officer's view of the interior of the car are inculpatory. Payne has not contradicted Preciado's statement that Payne instructed the female to flee. Payne also admitted that he resisted the officer's attempt to handcuff him. These are also circumstances adding to the reasonableness of Preciado's arrest of Payne. The fact that when other officers arrived, Payne admitted a criminal history of robbery adds an additional element to the probable cause determination. The only countervailing facts offered by Payne are the undisputed fact that the driver did not violate any traffic laws prior to Preciado attempting to stop it and the bare fact of Payne's subsequent acquittal. This does not render Preciado's determination to arrest Payne unreasonable. That determination is at the very least arguably reasonable. The probable cause that supports the arrest also supports the propriety of his imprisonment. Therefore Preciado and Dickerson are both entitled to

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
(Cite as: 2008 WL 1724003 (N.D.Miss.))

qualified immunity and summary judgment on both the false arrest and false imprisonment claims. To the extent that the Marshall County Sheriff's Department is a proper party to this action, it is likewise entitled to summary judgment on this issue.[FN9]

> FN9. Payne has muddled several of his claims together. It appears that Payne is claiming that his arrest was illegal due to his 'abduction' from Tennessee and that the defendants are therefore liable for false arrest. Whatever the merit of any claim regarding the manner in which he was removed from Tennessee, those circumstances are legally irrelevant to the false arrest claim.

### 3. Excessive use of force

#### a. The claim against Preciado

*8 Payne has accused the defendant Preciado of excessive use of force in making the arrest. Payne claims he was body slammed head first by Preciado while he was handcuffed into a ditch. Payne does admit that he moved between the officer and the car because Preciado was commencing to search the vehicle notwithstanding Payne's reported objection. Payne also admits resisting the officer's attempt to place handcuffs on him. Payne's actions, regardless of his motivation, reasonably necessitated some use of force from Preciado. The lack of any substantial injury makes Payne's version of events sound exaggerated at best. The absence of substantial physical injury is a factor for the jury to consider in determining the amount of force in fact employed by Preciado. Since there is no need to prove a substantial injury, *Hudson v. McMillian*, 502 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d (1992), though Payne's proof appears questionable, the undersigned recommends that the court exercise its discretion and allow this issue to be determined by a jury. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Neither do we suggest ... that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."). The motion for summary judgment on the claim of excessive force should be denied as to the defendant Preciado.

#### a. Excessive Force Claim Against Dickerson and the Marshall County Sheriff's Department

To the extent that Payne may be seeking to impose liability on either Sheriff Dickerson or the Marshall County Sheriff's Department for Preciado's alleged excessive use of force, summary judgment should be granted to the defendants. In a § 1983 action the employers and supervisors cannot be held liable for the actions of employees under a respondeat superior theory of liability. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 l. Ed. 611(1978). Payne has attempted to avoid the application of *Monell* by making broad allegations about the failure to train but has provided absolutely no facts regarding what training was given; was not given; or should have been given. He accused the sheriff of failure to supervise his deputies, but this is only a conclusory allegation without any admissible evidence shown in the record. He makes conclusory allegations about county policy and custom but again offers no supporting proof. His only factual allegation is that no officers were reprimanded or disciplined regarding his case. Aside from the fact that this accusation is tendered to the court in the form of inadmissible hearsay, it will not support, as a matter of law any liability on the part of the Sheriff or his department for any action by Preciado, either in effecting the original arrest or for the use of force in making the arrest.

Payne does make a claim relating to his alleged 'abduction at gun point' from Tennessee at the instruction of Sheriff Dickerson. Whether the act of removing Payne from the Tennessee was legal or not and whether or not it was accomplished with a brandishing of weapons, Payne has shown no use of physical force against his body by anyone other than Preciado. Whatever claim Payne may have in connection with the way he was brought back to Mississippi, it is not a claim for excessive use of force.

*9 Sheriff Dickerson and the Marshall County Sheriff's Department are entitled to summary judgment on Payne's claims of excessive use of force.

### 4. Violation of the Extradition Clause and Statutes

Payne complains at great length about the undisputed fact that the stop of his vehicle, while he was a passenger, occurred in the State of Tennessee. It is undisputed that Payne was removed from Tennessee back to Mississippi without any involvement by Ten-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
(Cite as: 2008 WL 1724003 (N.D.Miss.))

nessee law enforcement authorities. He alleges that his return to Mississippi violated his rights under the United States Constitution under Art. IV, § 2, clause 2,[FN10] the federal enabling statute, 18 U.S.C § 3182,[FN11] and applicable state law. The exact procedures to be employed in extraditions are established by state law.

> FN10. "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." *Id.*

> FN11. This statute reads: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or any affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged." *Id.*

The defendants for their part refer to the entire argument about extradition as a red herring, claiming that the extradition statutes are simply not applicable. They argue that in fresh pursuit cases extradition laws are inapplicable relying on the language regarding a flight after a formal arrest. The defendants cite no case law that would hold normal extradition procedures inapplicable in fresh pursuit cases and such a contention should be rejected.

Both sides have also cited to the same section of the Tennessee code which provides authority for arrests by private citizens. Both sides have cited the wrong statute. Officer Preciado's authority to arrest Payne is controlled by § 40-7-203 Tenn.Code Ann. This Tennessee law provides authority to every member of any duly organized law enforcement agency to enter the state of Tennessee in fresh pursuit of any individual who is reasonably suspected of having committed a felony. Such officers have authority co-extensive with Tennessee officers to make arrests within the jurisdiction of Tennessee. The statute further provides that it "shall not be construed so as to make unlawful any arrest in this state which would otherwise be lawful. The next section § 40-7-204 requires officers entering Tennessee to make arrests in fresh pursuit, to turn the arrestee over to Tennessee authorities to be returned to the state from which they have fled only pursuant to formal extradition procedures. Without question, returning Payne to Mississippi was done in violation of Tennessee law. Also without question the arrest itself was clearly authorized.

Neither side has pointed out a scintilla of evidence to indicate that the defendants were acting as private citizens, rather than as law enforcement officers acting under color of law. Both defendants were on duty. There is no evidence to suggest either knew Payne before this episode. There is evidence in the record that Preciado did not know Payne. There is simply nothing to indicate that either defendant acted out of any personal motive or purpose in arresting and having or allowing Payne to be returned to Mississippi. Payne's suggestion that all of their actions after they crossed over the Tennessee line should be consider the act of a private individual is insupportable on the record presented on this motion.

*10 There is also no dispute that they violated this statute and the Extradition Clause when they unilaterally returned Payne to Mississippi. But every violation of a statute or even a provision of the United States Constitution does not create § 1983 liability. Because the defendants have asserted the defense of qualified immunity, Payne may avoid summary judgment on his claims only if he can show 1) a constitutional violation; 2) of a right that was clearly established at the time of the violation; 3) and that each defendant's conduct violated that right. *Brown v. Lyford,* at 189.Here the critical question is whether

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
(Cite as: 2008 WL 1724003 (N.D.Miss.))

there was a "clearly established right" to require the defendants to comply with extradition procedures applicable in Tennessee to support a § 1983 action by Payne at the time the defendants caused or allowed him to be returned to Mississippi.

To the extent that Tennessee law and the law of the Sixth Circuit Court of Appeals could be deemed applicable to this case, the answer is quite clearly that Payne has no constitutionally vested rights under Tennessee's extradition law. In *Barton v. Norrod*, 106 F.3d 1289 (6th Cir.1997), cert. denied, 522 U.S. 934, 118 S.Ct. 341, 139 L.Ed.2d 265 (1997) the Sixth Circuit Court of Appeals was confronted with a case of Tennessee law enforcement doing precisely what the defendants in this case did-chasing a suspect over the state line, arresting the suspect in a neighboring state and returning him immediately to Tennessee. The Sixth Circuit found that the defendant was entitled to qualified immunity because there was no clearly established constitutional violation arising from the failure to comply with extradition procedures. It noted an earlier Sixth Circuit *per curiam* opinion that rejected such a claim and that the defendants were entitled to rely on that opinion. This court went on to note that there was a split among the circuits regarding whether the extradition clause provides any rights to individuals. The Sixth Circuit concluded that while a majority of the circuits considering the issue had found a cognizable right, a significant minority of the circuits rejected such claims. It could not be said that "the decisions of other courts, 'point unmistakenly to the unconstitutionality of the conduct." *Id.* at 1294,quoting *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir.1992).

The Sixth Circuit then considered whether such a federal right should be recognized prospectively and refused to hold that there could be any § 1983 liability. The court noted that "Neither the Extradition Clause of the Constitution nor the federal extradition statute purports to confer any right on the fugitive."*Barton* at 1297.

Does Fifth Circuit law provide Payne with a cognizable right? There is some Fifth Circuit authority for the proposition that violation of the Extradition Clause and extradition statutes can create § 1983 liability. In *Crumley v. Snead*, 620 F.2d 481 (5th Cir.1980), a case predating the creation of the Eleventh Circuit Court of Appeals, an inmate filed a peti-

tion for habeas corpus challenging his extradition. An Alabama sheriff did not wait for the outcome of the habeas action before delivering the inmate to Tennessee law enforcement. Relying on *Siegel v. Edwards*, 566 F.2d 958 (5th Cir.1978) the district court had granted summary judgment for the sheriff. The Fifth Circuit Court of Appeals reversed. It labeled the language in *Siegel* which had rejected an extradition § 1983 claim as dicta. *Id.* at 483.In a footnote the court noted "Indeed, all circuits that have considered the interaction between Section 1983 and extradition procedures have reached the same conclusion this Court reaches today: A failure to comply with extradition procedures is actionable under Section 1983."*Id.* In the normal course of events, even though a number of circuits have rejected such claims since the *Crumley* decision, this court would be compelled to recognize the violation of extradition statutes as a "clearly established right". But *Crumley*, is not the final word in the Fifth Circuit on the subject.

*11 In *Nichols v. McKelvin*, 52 F.3d 1067 (5th Cir.1995) the Fifth Circuit refused to recognize a § 1983 claim arising from alleged violations of the Extradition Clause and the federal enabling statute. In refusing to recognize a cause of action the court stated,

The plain language of the Extradition Clause reveals that its purpose is to enable the states to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. *Michigan v. Doran*, 439 U.S. 282, 287, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978). Thus, we have held that the Extradition Clause confers no rights on the individual being sought. *Id.*

The opinion cites the earlier *Siegel* case, but not *Crumley*.Admittedly this is an unpublished *per curiam* opinion, but it cannot be ignored. Fifth Circuit law is at least unsettled as to whether any constitutional protections flow to an accused under the Extradition Clause. No Supreme Court case directly addressing this issue has been cited to the court.

Therefore Payne has not shown a clearly recognized right that was violated by the defendants. The undersigned recommends that all claims of violation of the Extradition Clause and any extradition laws be dismissed with prejudice.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
(Cite as: 2008 WL 1724003 (N.D.Miss.))

### 5. Malicious Prosecution/Coercive Interrogation

The Fifth Circuit Court of Appeals has recognized that malicious prosecution can deprive a person of constitutional rights. This 'constitutional tort' has seven elements. There must be a criminal action commenced against the plaintiff, caused by the defendants or with their aid, which terminated in the plaintiff's favor. The plaintiff must be in fact innocent. The defendants must have acted without probable cause and with malice. The criminal proceeding must have damaged the plaintiff. *Brown v. Lyford,* at 189.Here there was a prosecution commenced against Payne with the aid of the defendant Dickerson. The action terminated in Payne's favor. There are material disputes of fact regarding whether or not Payne is actually innocent of the charge.

According to Dickerson he conducted a completely proper interrogation that resulted in Payne confessing. Payne's versions alleges violation of Payne's right to counsel, coercion and the out right manufacture of evidence. These are disputes of material fact that must be determined by a jury. If the jury accepts Payne's version of events, malice would necessarily be found. While there is at least arguable probable cause to arrest and therefore no liability for Payne's arrest, it cannot be said as a matter of law that the confession was not material to the prosecution of this action. It therefore appears that there are issues of fact requiring a trial.

The defendants have sought summary judgment on this issue asserting that Payne has failed to adequately plead his claim in a Due Process context. They cite the case of *Murray v. Earle,* 405 F.3d 278, 293 (5th Cir.2005). In *Murray,* the Fifth Circuit held that officers could not be held liable for a pre-trial interrogation for violation of the suspect's Fifth Amendment trial rights. In that case the trial court decided after a full hearing, in which there was an admittedly full and accurate disclosure of the circumstances of the interrogation, to admit a juvenile's statement. The determination of the trial judge that the statement was admissible was a superseding cause of any injury flowing from the admission of the statement.

**\*12** First the defendants have read Payne's pleadings too narrowly. Payne's pleadings given the benefit of liberal construction,[FN12] do not just allege violation of

his rights by the admission of his statement but challenges the lawfulness of the interrogation itself. It is also adequate to raise the Due Process claim. This case, accepting Payne's assertions at face value is more closely analogous to *Chavez v. Martinez,* 538 U.S. 760, 773-74, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003). Payne like the plaintiff in *Chavez* is alleging a coercive interrogation. The undersigned recommends that the motion for summary judgment regarding claims against the sheriff relating to malicious prosecution and the allegedly coercive interrogation be denied and these claims submitted to a jury for resolution.[FN13]

> FN12.*Haines v. Kerner,* 404 U.S. 519, 520, 99 S.Ct. 594, 30 L.Ed.2d 652(1972)

> FN13. If the court finds that the Marshall County Sheriff's Department is a proper party defendant, this issue should be tried to a jury against that defendant as well.

### 6. State Law Claims

The plaintiff has apparently asserted state law claims of false arrest and malicious prosecution.[FN14]The defendants have moved for summary judgment on the basis of the Mississippi Torts Claim Act (MTCA) § 11-46-1, *et seq.* To the extent that the Act applies it is clear that the defendants are entitled to summary judgment. The act requires pre-litigation notice of claim. § 11-46-11(1) and (2) Miss.Code Ann. There is no dispute that Payne made no attempt to deliver any notice of claim pursuant to the statute. Given that the one year statute of limitations contained in the statute has now expired, § 11-46-11(3) Miss.Code Ann., the dismissal is with prejudice. Additionally, individual employees of the state acting in the course and scope of their employment have no personal liability for acts covered by this act. § 11-46-7(2) Miss.Code Ann. Only the state, subdivisions of the state and municipalities are proper parties under the MTCA.

> FN14. While as earlier referenced, Payne has characterized his arrest and return to the state of Mississippi as an abduction at gunpoint, he has no state law claim in connection with his return to Mississippi. The actions in this case are clearly the acts of law enforcement personnel acting in the course

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

—

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
(Cite as: 2008 WL 1724003 (N.D.Miss.))

and scope of their employment in making the stop, arrest and removing Payne from the scene of the stop. Tennessee statutes expressly authorized the stop, arrest and movement of Payne. That they headed back to Mississippi may have been a violation of civil law, but their actions are not criminal and are not shown to be a source of potential liability. Payne has not shown any triable issues of fact to establish a state law cause of action on these allegations.

The question is are there any claims in this action subject to the Mississippi Torts Claim Act? Section 11-46-5(1) Miss.Code Ann., states that the immunity of the state and its political subdivisions is waived for the torts of its employees in the course and scope of their employment. The waiver is limited in the next section which provides that "an employee shall not be considered as acting within the course and scope of his employment ... if he employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations."§ 11-46-5(2). This provision would necessarily exempt from MTCA coverage the excessive force and malicious prosecution/coercive interrogation claims. City of Jackson v. Powell, 917 So.2d 59 (Miss.2005)(Police officers in using excessive force in making an arrest acted with malice and thus the city was immune from liability for their acts) ( Bridges v. Pearl River Valley Water Supply Dist. 793 So.2d 584(Miss 2001)(If officer who allegedly used excessive force acted with malice he would not be immune from personal liability).

The false arrest/false imprisonment claims would appear to fall within the claims covered by the Mississippi Torts Claim Act. Thus the failure to comply with the notice provisions of MTCA bars any action for a state law claim for false arrest/false imprisonment. The undersigned recommends that the motion for summary judgment on the state law claim for false arrest and false imprisonment be granted as to all defendants. The motion for summary judgment on the claims of excessive use of force and malicious prosecution/coercive interrogation should be denied.

### CONCLUSION

*13 In conclusion the undersigned makes the following recommendations:

1. That the plaintiff's motion for summary judgment be denied.

2. That the complaint be dismissed with prejudice as to the defendant Marshall County Sheriff's Department.

3. That the defendants' motion for summary judgment be granted on the § 1983 false arrest claim as to all defendants.

4. That the motion for summary judgment be denied as to the claim for excessive use of force by the defendant Preciado.

5. That the motion for summary judgment be granted on the excessive force claim as to Sheriff Dickerson and the Marshall County Sheriff's Department.

4. That the motion for summary judgment be granted to all defendants on all claims relating to the violation of the Extradition Clause and statutes.

5. That the motion for summary judgment be denied as to Sheriff Dickerson on the malicious prosecution/coercive interrogation claims.

6. The defendants' motion for summary judgment should be granted pursuant to the Mississippi Torts Claim Act on the state law false arrest/false imprisonment claim. It should be denied as to the excessive use of force and malicious prosecution/coercive interrogation claims.

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72 .1(C) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.1996).

Plaintiff is directed to acknowledge receipt of this

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)
**(Cite as: 2008 WL 1724003 (N.D.Miss.))**

Page 12

report and recommendation by signing the enclosed acknowledgment form and returning it to the court within ten days of this date. Plaintiff is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

N.D.Miss.,2008.
Payne v. Dickerson
Not Reported in F.Supp.2d, 2008 WL 1724003 (N.D.Miss.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2007 WL 2903204 (S.D.Miss.)
**(Cite as: 2007 WL 2903204 (S.D.Miss.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. Mississippi,
Jackson Division.
Virgil B. COLE, III, Plaintiff
v.
HINDS COUNTY BOARD OF SUPERVISORS,
Hinds County Sheriff's Department, Charles Barbour,
Douglas Doug Anderson, Peggy Hobson, Ronnie
Chappell, George Smith, Unknown Rushing, and
Malcolm McMillian, Defendants.
**Civil Action No. 3:07-cv-382-TSL-JCS.**

Oct. 1, 2007.

Virgil B. Cole, III, Raymond, MS, pro se.

*ORDER*

TOM S. LEE, United States District Judge.

**\*1** Upon consideration of the conditions of confine-
ment complaint submitted according to 42 U.S.C. §
1983 the court makes the following findings and con-
clusions. Plaintiff Virgil B. Cole, III, an inmate in-
carcerated at the Hinds County Detention Center,
Raymond, **Mississippi**, filed this complaint pursuant
to 42 U.S.C. § 1983 seeking monetary damages
against defendants Hinds County Board of Supervi-
sors, Hinds County Sheriff's Department, Charles
Barbour, Douglas Doug Anderson, Peggy Hobson,
Ronnie Chappell, George Smith, Unknown Rushing
and Malcolm McMillian.

The court notes that the style of the case includes
"The Hinds County Sheriff's Department" ("Sheriff's
Department") as a defendant. However, absent any
showing by the plaintiff that the Sheriff's Department
enjoys a separate legal existence than that of the
county under **Mississippi** state law, this court con-
cludes that the Sheriff's Department is not a proper
party to this lawsuit. *Whiting v. Tunica County, et al.,*
222 F.Supp.2d 809, 825 (N.D.Miss. July 19, 2002)
(citing *Darby v. Pasadena Police Dep't,* 939 F.2d
311, 313 (5th Cir.1991)). This court concludes that
the Hinds County Sheriff's Department should be

dismissed.

Further, the plaintiff in his response [14] to this
court's order [10] requested that the **Mississippi** De-
partment of Corrections be added as a defendant.
However, the plaintiff cannot maintain this civil ac-
tion against the **Mississippi** Department of Correc-
tions. The **Mississippi** Department of Corrections is
responsible for managing and operating the correc-
tional system for the State of **Mississippi**,
MISSISSIPPI CODE ANNOTATED § 47-5-1
(1972). As such, naming as a defendant the **Missis-
sippi** Department of Corrections is like naming the
State of **Mississippi** as a defendant. The United
States Supreme Court has held that a State is not a
"person" within the meaning of § 1983. *Will v.
Michigan Department of State Police,* 491 U.S. 58
(1989).

In addition, in his response [14] to this court's order
[10] plaintiff informed this court that defendant Un-
known Rushing's full name is Mary Rushing. Ac-
cordingly, it is hereby,

ORDERED:

1. That Hinds County Sheriff's Department will be
dismissed as a defendant in this action.

2. That defendant Unknown Rushing's full name is
Mary Rushing.

3. That the plaintiff within twenty days of the date of
this order shall provide this court with the civil action
number of every civil action or appeal which the
plaintiff has had dismissed on the grounds that it is
frivolous, malicious or fails to state a claim upon
which relief may be granted. Plaintiff shall also pro-
vide the name of the court and name(s) of defen-
dant(s) in each civil action identified.

4. That the United States District Clerk is hereby di-
rected to issue summons on the defendants:

HINDS COUNTY BOARD OF SUPERVISORS [FN1]

    FN1. **Service** of process for the Board of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

—

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2903204 (S.D.Miss.)
(Cite as: 2007 WL 2903204 (S.D.Miss.))

Supervisors is proper on the Clerk of the Board of Supervisors, which is the Chancery Court Clerk. See Rule 4(j)(2) of the *Federal Rules of Civil Procedure* and **Rule 4( d)( 6)** of the *Mississippi Rules of Civil Procedure*.

c/o Hinds County Chancery Court Clerk

316 South President Street

Jackson, **Mississippi** 39201

CHARLES BARBOUR

*2 c/o Bill McGowain

407 East Pascagoula

Jackson, **Mississippi** 39201

DOUGLAS DOUG ANDERSON

c/o Bill McGowain

407 East Pascagoula

Jackson, **Mississippi** 39201

PEGGY HOBSON

c/o Bill McGowain

407 East Pascagoula

Jackson, **Mississippi** 39201

RONNIE CHAPPELL

c/o Bill McGowain

407 East Pascagoula

Jackson, **Mississippi** 39201

GEORGE SMITH

c/o Bill McGowain

407 East Pascagoula

Jackson, **Mississippi** 39201

MARY RUSHING

c/o Bill McGowain

407 East Pascagoula

Jackson, **Mississippi** 39201

MALCOLM MCMILLIAN

c/o Bill McGowain

407 East Pascagoula

Jackson, **Mississippi** 39201

Each defendant is required to file a response to the complaint. The Clerk is directed to attach a copy of this Order, correspondence [6] from plaintiff filed August 8, 2007, Attachment of Statement of Claim [7] filed August 20, 2007, this court's order [10] filed August 24, 2007, plaintiff's response [11] filed September 4, 2007, Attachment of Statement of Claim [12] filed September 6, 2007, plaintiff's response [13] to this court's order [8] filed September 6, 2007, plaintiff's response [14] to this court's order [10] filed September 6, 2007, memorandums from inmates [15] filed September 10, 2007, plaintiff's memorandum [16] filed September 24, 2007, plaintiff's memorandum inmate program request form [17] filed September 24, 2007 and plaintiff's inmate program request form [18] filed September 24, 2007, to each complaint that will be served on the named defendants. The United States Marshal shall serve the same pursuant to 28 U.S.C. § 1915(d).

5. That the defendants shall file their answer or other responsive pleading in this cause in accordance with the *Federal Rules of Civil Procedure* and the Local Rules of this Court.

6. That subpoenas shall not be issued except by order of the court. The United States District Clerk shall

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

—

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2903204 (S.D.Miss.)
(Cite as: 2007 WL 2903204 (S.D.Miss.))

not issue subpoenas upon request of the *pro se* litigant, but shall instead forward the request to the Magistrate Judge assigned to this cause for review. The plaintiff shall submit all request for the issuance of subpoenas to the Magistrate Judge's office for review.

**The plaintiff should understand that this order allowing process to issue against the above named defendants does not reflect any opinion of this court that the claims contained in the complaint will or will not be determined to be meritorious.**

**It is the plaintiff's responsibility to prosecute this case. Failure to advise this court of a change of address or failure to comply with any order of this court will be deemed as a purposeful delay and contumacious act by the plaintiff and may result in the dismissal of this case.**

SO ORDERED.

S.D.Miss.,2007.
Cole v. Hinds County Bd. of Supervisors
Not Reported in F.Supp.2d, 2007 WL 2903204 (S.D.Miss.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.