## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:                                                    Case No.  05-03817-3F1
                                          )
WINN-DIXIE STORES, INC., et al.,          Chapter 11
                                          )
        Reorganized Debtors.              Jointly Administered
────────────────────────────────)

## WINN-DIXIE'S MOTION TO COMPEL
## ROBERT HANDMAKER TO ANSWER DEPOSITION QUESTIONS

Winn-Dixie Stores, Inc., on behalf of twenty-three of its subsidiaries and affiliates, as the Reorganized Debtors (collectively, "Winn-Dixie"), moves the Court pursuant to Rules 37(a)(3)(B)(i) and 45(e), Fed.R.Civ.P., to compel Robert Handmaker to answer questions he declined to answer at his deposition, and in support says:

1.      This matter is before the Court on Winn-Dixie's objection to the proof of claim of Visagent.  Visagent alleges that Winn-Dixie breached a three-year Service Agreement dated June 28, 2001, and seeks $131,875,000 in damages.

2.      Robert Handmaker, a non-party, was an employee of Visagent from July 2001 through March 2003.

3.      Winn-Dixie subpoenaed Mr. Handmaker for his deposition, which was conducted in Jacksonville on July 28, 2009.    Copies of the original subpoena, the proof of service of the original subpoena, the amended subpoena and the letter forwarding the amended subpoena to Mr. Handmaker are attached as Composite Exhibit A.    An excerpt of the transcript of Mr. Handmaker's deposition is attached as Exhibit B.

4.      During the deposition, Winn-Dixie asked Mr. Handmaker why he left Visagent (transcript, page 172).    After noting that Visagent had not been compensating him, Mr. Handmaker testified that "I didn't have confidence or faith in the leadership of the company" (pages 172 to 173). When asked why he did not have faith in Visagent's leadership, Mr. Handmaker identified several reasons, including (i) Visagent "couldn't get financing," (ii) Visagent "couldn't get traction on the exchange," and (iii) "I didn't see it working" (pages 173 to 174).

5.      When asked if he believed Visagent's Chief Executive Officer, Mark Rubin, is trustworthy, Mr. Handmaker testified that he "would not do business with Mark Rubin" (page 175).    When asked why, Mr. Handmaker testified that "I just -- I don't trust him" (page 175).    When pressed to explain why, Mr. Handmaker initially refused, saying "I'd really rather not get into it" (pages 175 to 176).    Mr. Handmaker eventually testified about "a

very small example" of Mark Rubin's dishonesty, involving Mark Rubin ordering water at a fast food restaurant and then filling his glass at the self-service station with soda instead of water (pages 176 to 177).

6.     When asked about other examples of Mark Rubin's dishonesty at Visagent, Mr. Handmaker refused to provide any other examples, saying "I really don't want to do this" (page 177).[1]   When asked whether Mr. Handmaker was refusing to answer the question, Mr. Handmaker said "Yes. I'm going to get all emotional and it's going to get ugly.  I'm refusing to answer the question" (pages 177 to 178).

7.     Winn-Dixie's attorney explained to Mr. Handmaker that (i) Winn-Dixie would move to compel him to answer the question, (ii) Mr. Handmaker could oppose the motion, and (iii) it would be easier for Mr. Handmaker to just answer the question (page 178).  Mr. Handmaker said he appreciated the explanation of the consequences of his refusal to answer the question, but "If the judge forces me to answer the question, then I'll answer the question" (page 178).

8.     Rule 26(b)(1) provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or

---

[1] Mr. Handmaker acknowledged that at least one example of Mr. Rubin's dishonesty related to "business" at Visagent, although it was not related "directly" to Winn-Dixie (page  183).

defense."  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Rule 26(b)(1), Fed.R.Civ.P.

9.    Among Winn-Dixie's defenses to Visagent's claim is that Visagent did not achieve the necessary critical mass on its exchanges that would allow Winn-Dixie to buy and sell more grocery products on Visagent's exchange.  In support of this defense, Winn-Dixie will introduce evidence that some diverters would not use Visagent's exchange because they did not trust Visagent's officers.  The reasons Mr. Handmaker lost faith in Visagent's leadership therefore are relevant and may lead to the discovery of admissible evidence.

10.    Rule 37 provides that Winn-Dixie may move for an order compelling Mr. Handmaker to answer deposition questions if he failed to answer questions during his deposition:

> A party seeking discovery may move for an order compelling an answer…  This motion may be made if…a deponent fails to answer a question asked under Rule 30 or 31.

> Rule 37(a)(3)(B)(i), Fed.R.Civ.P.

11.    Rule 45(e) provides that a person may be held in contempt for failure to obey a subpoena.  "The district judge normally will preface a

contempt citation with an order directing either compliance with the subpoena or a showing of an excuse for the noncompliance." Wright & Miller, Federal Practice and Procedure, Civil 3d, Vol. 9A, § 2465, page 531.

WHEREFORE, Winn-Dixie moves the Court to compel Robert Handmaker to reappear for deposition and answer the questions Mr. Handmaker declined to answer and reasonable follow up questions.

<u>Rule 37 Certification</u>

Winn-Dixie's attorneys certify that they good faith conferred with Mr. Handmaker during his deposition, at which he was not represented by counsel, in an effort to resolve the issues raised in this motion without Court action.

SMITH HULSEY & BUSEY


By  */s/ Timothy R. Buskirk*
    Stephen D. Busey
    James A. Bolling
    Timothy R. Buskirk

Florida Bar Number 0058314
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
tbuskirk@smithhulsey.com

Attorneys for Winn-Dixie

## <u>Certificate of Service</u>

I certify that a copy of the foregoing document was furnished electronically through the Court's CM/ECF electronic notification system or by mail to **Guy Bennett Rubin, Esq.**, Rubin & Rubin, Post Office Box 395, Stuart, Florida 34995, and by U.S. Mail to Mr. Robert Handmaker, 3856 Biggin Church Road West, Jacksonville, Florida 32224, this 10th day of August, 2009.



*/s/ Timothy R. Buskirk*
Attorney

664916.1

**EXHIBIT A**

B256 (Form 256 - Subpoena in a Case under the Bankruptcy Code)(12/07)

# United States Bankruptcy Court

## Middle District of Florida

| | |
|---|---|
| In re | **SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE** |
| WINN-DIXIE STORES, INC., et al. | |
| Reorganized Debtors | Case No. *  05-03817-3F1 |
| | (Middle District of Florida) |
| | Chapter   11 |
| | Jointly Administered |

**TO: Robert Handmaker**
   **3856 Biggin Church Road W.**
   **Jacksonville, FL 32224**

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, Florida  32202<br>(or a mutually agreeable location) | May 19, 2008<br>10:00 a.m. (EST) |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030 and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| _[signature]_       Attorneys for the Reorganized Debtors | May 5, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

David L. Gay, Esq., Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, FL  32202, (904) 359-7700

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 - Subpoena in a Case under the Bankruptcy Code)(12/07)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | |
|---|---|
| SERVED ON (PRINT NAME): | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
          DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions ©, (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy code by Rule 9016, Federal Rules of Bankruptcy Procedure.

(c) Protecting a Person Subject to a Subpoena.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

00652352

**Don E. Taylor**
**President**

Don Taylor Enterprises Inc.
P.O. Box 37766
Jacksonville, Florida 32236-7766

**Telephone**
**(904) 399-1224**
dontaylorandassociates.com

15.13

| | | |
|---|---|---|
| IN RE: | WINN-DIXIE STORES, INC ET. AL. | 05-03817-3F1 |
| (Plaintiff)  VS | (Defendant) | (Case Number) |

| | |
|---|---|
| SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE, AMENDED NOTICE OF VIDEOTAPED DEPOSITION, CERTIFICATE OF SERVICE | 5/5/2009 9:32:17 AM |
| (Type of Process)                    . | (Date & Time Received) |

| | |
|---|---|
| US MIDDLE DISTRICT | MIDDLE |
| (Court) | (Division) |

| | |
|---|---|
| Attorney: GAY, DAVID L. SMITH, HULSEY & BUSEY 225 WATER ST., #1800 JACKSONVILLE, FL 32202 | Servee: ROBERT HANDMAKER Address: 3856 BIGGIN CHURCH RD. W   JACKSONVILLE, FL 32224 |

Received this process on 5/5/2009 A.D. and served the same on ROBERT HANDMAKER, the within named at 11:05 AM on 5/5/2009 A.D., in Duval County, Florida.

SUBSTITUTE/SPOUSE:  BY DELIVERING A TRUE COPY OF THIS PROCESS WITH THE DATE AND HOUR OF SERVICE ENDORSED BY ME AND A COPY OF THE: SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE, AMENDED NOTICE OF VIDEOTAPED DEPOSITION, CERTIFICATE OF SERVICE TO: CYNTHIA HANDMAKER, SPOUSE OF THE WITHIN NAMED WHO STATED THEY CURRENTLY RESIDE TOGETHER, REQUEST SUCH SERVICE, AND ARE NOT ADVERSARIES IN THIS PROCEEDING AS DEFINED IN F.S. 48.031 (2) (A)., WITH A PER DIEM CHECK IN THE AMOUNT OF $40.00.

Other:

| | | | |
|---|---|---|---|
| Entered By: CORP, KELLY | Processed By: MORGAN, EL | Service Fee: $40.00 | Control Number: 1008 |

PATRICK HACKETT #110

Special process server duly appointed and qualified pursuant to F.S.48.021(2)

B256 (Form 256 - Subpoena in a Case under the Bankruptcy Code)(12/07)

# United States Bankruptcy Court

## Middle District of Florida

In re

WINN-DIXIE STORES, INC., et al.

                Reorganized Debtors

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE**

Case No. *     05-03817-3F1
                (Middle District of Florida)

Chapter       11
                Jointly Administered

**TO:** **Robert Handmaker**
     **3856 Biggin Church Road W.**
     **Jacksonville, FL 32224**

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, Florida 32202<br>(or a mutually agreeable location) | May 19, 2008<br>10:00 a.m. (EST) |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

      Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030 and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| Attorneys for the Reorganized Debtors | May 3, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

David L. Gay, Esq., Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, FL 32202, (904) 359-7700

        * If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 - Subpoena in a Case under the Bankruptcy Code)(12/07)

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions ©, (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy code by Rule 9016, Federal Rules of Bankruptcy Procedure.

(c) Protecting a Person Subject to a Subpoena.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

00652352

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Reorganized Debtors. | ) | Jointly Administered |
| _____ | ) | |

## AMENDED NOTICE OF VIDEOTAPED DEPOSITION

Please take notice that beginning at 10:00 a.m. on May 11, 2009, Debtors will

take the deposition of Robert Warren at the offices of Smith, Hulsey & Busey, 225 Water

Street, Suite 1800, Jacksonville, Florida 32201, before an officer authorized by law to

take depositions.   The deposition will be videotaped by Esquire Jacksonville, 1301

Riverplace Boulevard, Suite 1609, Jacksonville, Florida.  This deposition will be taken

for discovery purposes, for use as evidence at trial or both and shall continue from day to

day until completed.

Dated:  May 1, 2009

SMITH HULSEY & BUSEY


By  _/s/ David L. Gay_____
        Stephen D. Busey
        James A. Bolling
        David L. Gay

Florida Bar Number 839221
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
dgay@smithhulsey.com

Counsel for Reorganized Debtors

**Certificate of Service**

I certify that a copy of the foregoing document was furnished by mail or electronically to **Guy Bennett Rubin, Esq.**, Rubin & Rubin, Post Office Box 395, Stuart, Florida 34995, this 1st day of May, 2009.

_/s/ David L. Gay_
Attorney

00649791

2

B256 (Form 256 - Subpoena in a Case under the Bankruptcy Code)(12/07)

# United States Bankruptcy Court

## Middle District of Florida

| | |
|---|---|
| In re | **SUBPOENA IN A CASE UNDER**<br>**THE BANKRUPTCY CODE** |
| WINN-DIXIE STORES, INC., et al. | |
| Reorganized Debtors | Case No. *    05-03817-3F1<br>(Middle District of Florida) |
| | Chapter    11<br>Jointly Administered |

**TO:  Robert Handmaker**
   **3856 Biggin Church Road W.**
   **Jacksonville, FL 32224**

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Smith Hulsey & Busey<br>225 Water Street, Suite 1800<br>Jacksonville, Florida 32202<br>(or a mutually agreeable location) | July 28, 2009<br>9:30 a.m. (EST) |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030 and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| Attorneys for the Reorganized Debtors | 7/23/09 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

James A. Bolling, Esq., Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, FL 32202, (904) 359-7700

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 - Subpoena in a Case under the Bankruptcy Code)(12/07)

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE                                    SIGNATURE OF SERVER

                                        ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions ©, (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy code by Rule 9016, Federal Rules of Bankruptcy Procedure.

(c) Protecting a Person Subject to a Subpoena.
   (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
   (2) Command to Produce Materials or Permit Inspection.
      (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
      (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
         (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
         (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
   (3) Quashing or Modifying a Subpoena.
      (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
         (i) fails to allow a reasonable time to comply;
         (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
         (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
         (iv) subjects a person to undue burden.
      (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
         (i) disclosing a trade secret or other confidential research, development, or commercial information;
         (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
         (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
      (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
         (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
         (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
   (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
      (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
      (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
      (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
      (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) Claiming Privilege or Protection.
      (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
         (i) expressly make the claim; and
         (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
      (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

00652352

SMITH HULSEY & BUSEY

JAMES A. BOLLING
DIRECT 904.359.7719
JBOLLING@SMITHHULSEY.COM

July 23, 2009

Mr. Robert Handmaker
3856 Biggin Church Road W.
Jacksonville, FL 32224

Re:   In re Winn-Dixie Stores, Inc., et al.; U. S. Bankruptcy Court, Middle
      District of Florida; Case No. 05-03817-3F1, Chapter 11

Dear Mr. Handmaker:

Enclosed is (i) an original subpoena for your deposition and (ii) a document prepared by Robert Trader on July 21, 2004 regarding Visagent's Revised Client Development Strategy. As discussed, your deposition is scheduled for Tuesday, July 28, 2009 at 9:30 a.m. at the offices of Smith Hulsey & Busey, located at 225 Water Street, Suite 1800, Jacksonville, Florida.

Please call me if you have any questions.

Sincerely,

James A. Bolling

JAB/tc
Enclosures
00663374

**EXHIBIT B**

**Condensed Transcript**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
STATE OF FLORIDA
COUNTY OF DUVAL

In re:                                    Case No. 05-03817-3F1

WINN-DIXIE STORES, INC.,                  Chapter 11
et al.,

                                          Jointly Administered

Reorganized Debtors.
~~~~~~~~~~~~~~~~~~~~~~~~

**VIDEOTAPED DEPOSITION OF**

**ROBERT HANDMAKER**

July 28, 2009
9:41 a.m.

225 Water Street, Suite 1800
Jacksonville, Florida

Sandra G. Pemberton, RPR, CRR, FPR



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.322.8416
Facsimile: 904.355.6152

1609 Riverplace Tower
1301 Riverplace Boulevard
Jacksonville, FL 32207
www.esquiresolutions.com

## 169

1    A. Nancy Delcogniano? Yes, I've heard of Nancy
2  Delcogniano.
3    Q. Who did Nancy work for?
4    A. Me. She worked for the Vgistics. She was in
5  a logistics kind of thing.
6    Q. If you look down there about in the middle of
7  the page, this e-mail says, "This is the manner in
8  which all Global Food Resources/Visagent deals which
9  involve picking up as AG will be handled."
10    What -- were you aware of any deals between
11  Global Food Resources and Visagent during the time that
12  you were at Visagent other than those on Visagent's
13  exchanges?
14    A. Was I aware of any time when Global Food
15  Resources and Visagent did deals not on the exchange.
16    Q. Correct.
17    A. I can't remember any.
18    Q. Had you heard of any such deals?
19    A. I can't remember any. I can't remember
20  hearing of any. I can't remember talking to anybody
21  who heard of any.
22    Do you want me to keep going?
23    A. I think you pretty much covered the waterfront
24  there.
25    A. Okay.

## 170

1    MR. RUBIN: Have you heard that anyone else
2  heard of any?
3    MR. BOLLING: I'm about finished here. I
4  think let's take a break for about five or ten
5  minutes.
6    THE VIDEOGRAPHER: We are off the record 4:47.
7  (Brief recess)
8    THE VIDEOGRAPHER: We're back on the record,
9  5:03.
10  BY MR. BOLLING:
11    Q. The last exhibit we looked at was No. 1219?
12    A. Yes, sir.
13    Q. And it's dated what at the top?
14    A. May 22nd.
15    Q. And that's after -- May 22nd of what?
16    A. Oh, 2003.
17    Q. And that's after you departed Visagent?
18    A. Yes, sir, that's correct.
19    Q. Visagent, during the time that you were there,
20  do you know who they used as a carrier for goods bought
21  and sold on the exchange?
22    A. Like a trucking company?
23    Q. (The attorney moved head up and down.)
24    A. Several. It was -- they used -- well, when I
25  was there, they used Landstar, which has -- you know,

## 171

1  which is basically like a meeting place for a certain,
2  I guess, authorized owner/operators and trucking
3  companies. They, I guess, have all of these different
4  agents that are Landstar agents that -- not enough
5  trucks and stuff, and so we used Landstar.
6    Q. Was there some other carrier that you --
7  Visagent used during the time that you were there?
8    A. Landstar is not a carrier. They're -- they're
9  kind of like a -- just a big, almost, broker. During
10  the time I was there, I am pretty sure that they used,
11  exclusively, Landstar.
12    Q. Do you know -- do you have any personal
13  knowledge as to whether the rates that Landstar charged
14  for transporting or arranging for the transportation of
15  goods bought and sold on the exchange was competitive
16  with other outfits that did the same thing?
17    A. No.
18    Q. You don't have such personal knowledge.
19    A. I never did any comparison pricing between
20  Landstar and other companies who are in the same
21  business as Landstar.
22    When we did use Landstar to ship a load, we
23  would use the shipping company that was the lowest
24  price.
25    Q. Do you know whether -- do you have any

## 172

1  personal knowledge of whether Visagent could have gone
2  out and found somebody else to do the hauling of the
3  goods bought and sold on the exchange for less money
4  than Landstar charged?
5    A. No.
6    Q. You don't have such personal knowledge.
7    A. No, sir.
8    Q. Have you ever talked to Larry Appel on the
9  telephone --
10    A. Yes.
11    Q. -- about this matter?
12    A. About this matter? I don't recall. I spoke
13  to Larry Appel on the telephone because I was trying to
14  get a job at Winn-Dixie, but I don't recall whether I
15  ever spoke to him on the telephone about this matter.
16    Q. Other than talking to Larry Appel about --
17  when was that? When did you try to get a job at
18  Winn-Dixie?
19    A. Shortly after I left Visagent.
20    Q. Some time around March of '03?
21    A. Yes, sir.
22    Q. Why did you leave Visagent?
23    A. I left Visagent -- well, the first reason that
24  comes to mind is I wasn't -- I wasn't being paid. And
25  I couldn't afford to continue to work for free.



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.322.8416
Facsimile: 904.355.6152

1609 Riverplace Tower
1301 Riverplace Boulevard
Jacksonville, FL 32207
www.esquiresolutions.com

---

### 173

1    Q.  What other reasons did you have?
2    A.  I -- I didn't have confidence or faith in the
3   leadership of the company.
4    Q.  Why not?
5    A.  Because they couldn't get financed, couldn't
6   get traction on the exchange.
7        I don't -- you know, just -- at that point,
8   Mark did not seem open to doing -- doing things in a
9   different way that I thought could help the company.
10   Q.  What ways did -- what did you think that could
11  help the company that Mark rejected?
12   A.  I know that there were a couple of things, but
13  the one that -- that I can remember is trying to
14  have -- like, hire brokers or diverters, or whatever,
15  who would park themselves in retailers who were users.
16  You know, because the way that the exchange worked is
17  something would get posted, either by Global Food
18  Resources or Winn-Dixie, or whoever, and Simon and Bob
19  would get on the phone and point it out to other users
20  and then try to get sold on an anonymous basis.
21       And I felt like if we had that going on in the
22  various retailers, that, you know, we had our own
23  champion inside that was anonymously doing -- doing
24  deals, then, it -- it could help us gain traction.  And
25  to me, it didn't -- it didn't seem like it would cost a

### 174

1   lot of money.  Of course, I didn't know.  I don't know
2   if the Victorys of the world pay a fee to be there, but
3   it's like a phone and a desk and diverters or brokers,
4   whatever, work on straight commission, and, you know, I
5   felt like some of the rules were alienating the users.
6        As, you know, well thought out and as noble as
7   they might have been, the reality is that it wasn't --
8   it wasn't happening.  I just -- I didn't see it
9   working.  It wasn't fun.  I wasn't having fun.
10       Then there were just, like, these little
11  things like that we weren't being paid and, you know,
12  Mark had these protocols that he wanted people to use
13  about filling out vacation forms and stuff and just --
14  I didn't want it.  It's kind of like, you know, if I
15  need to take a day off, I need to take a day off, you
16  know?  And I wasn't enjoying it.  It wasn't fun.
17  Starting to affect me.
18   Q.  Any other ways that you lost confidence in the
19  leadership at Visagent?
20   A.  Yes.
21   Q.  What other ways?
22   A.  That -- I don't know.  I don't -- I don't know
23  that my reasons for leaving Visagent, a lot of them,
24  are germane to this.
25   Q.  Uh-huh.

### 175

1    A.  You know, if I'm sworn to tell the whole truth
2   and nothing but the truth and all that, but I just -- I
3   just don't know whether this is appropriate for me to
4   use this venue to filet Mark Rubin and just go off on
5   all the stuff that made me -- you know, was just -- we
6   didn't see eye to eye on some stuff.  A lot of stuff.
7    Q.  Do you believe Mark Rubin is trustworthy?
8    A.  I would -- I would not do business with Mark
9   Rubin.
10   Q.  Why not?
11   A.  Mark Rubin is smart.  He's very smart.  And I
12  just -- I don't trust him.  Right now, it's like I look
13  at a -- just -- for me and my business right now,
14  there's a lot of people with whom I can do business who
15  I don't feel -- who have given me -- maybe I don't have
16  the same history that I have with Mark but, you know, I
17  just trust more.  And maybe I'll get burned by them,
18  you know.  And, you know, I don't think that Mark set
19  out to be mean and hateful and Mark never was mean and
20  hateful, you know.  I think that Mark was in a very
21  difficult position.  I know that Mark was in a very
22  difficult position.  And, you know, he had a lot tied
23  up and -- in the business.
24   Q.  But why don't you think that Mark is
25  trustworthy?

### 176

1    A.  I'd really rather not get into it.  I mean, if
2   someone subpoenas me to testify to Mark's character,
3   then -- but I'd just as soon not, you know, use this as
4   a soapbox to spill everything I don't like about Mark
5   Rubin and everything that Mark Rubin did at Visagent
6   that I didn't agree with.
7    Q.  Well, during the time that you were at
8   Visagent, aside from whatever business decisions that
9   you think that Mark Rubin made that you disagreed with,
10  what did Mark Rubin do that you thought was dishonest?
11       MR. RUBIN:  Object to the form.
12   A.  I'm going to name a very small example that,
13  obviously, has stuck with me.
14       We were working late on the user agreement and
15  Mark and I went to get something to eat at The Loop.
16  And we go up and order our food, Mark orders his food,
17  he pays, and then I order my food.  And I thought he
18  was going to pay for me, working for free, it's late at
19  night, you know, buy me a burger.  Okay, whatever.
20       The thing that I remember is that Mark and I
21  both -- Mark and I both ordered water.  We didn't get a
22  drink.  I remember Mark went to the thing and got a
23  soda.  That just didn't make sense to me.  It's always
24  stuck with me.  And it's a small thing.  It's not a lot
25  of money, but I just -- I just couldn't understand why



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.322.8416
Facsimile: 904.355.6152

1609 Riverplace Tower
1301 Riverplace Boulevard
Jacksonville, FL 32207
www.esquiresolutions.com

---

### 177

1  someone would do that.
2      It didn't make sense to me why someone would
3  go to the thing -- say I'm going to get water, and then
4  go to the self-service thing and get a soda. And, you
5  know, I was shocked. I was shocked.
6      Does that mean Mark Rubin is a horrible
7  person? No, it doesn't mean Mark Rubin is a horrible
8  person. But I kind of rank that with cheating in golf,
9  you know, kicking your ball and improving your -- does
10  that mean that person is a bad person? No, it's like,
11  why would you do that? Especially if you're not even,
12  you know, playing for money.
13      So, you know, that's just a reason. That just
14  doesn't -- doesn't make sense to me why someone would
15  do that.
16      Q.  Well, during the time that you were at
17  Visagent, what else did Mark Rubin do that was
18  dishonest?
19      A.  I really don't want to do this. I just don't.
20  I mean, I just don't. I mean, I -- I just don't. I
21  just don't. I don't -- I don't think it's relevant to
22  the facts of the case.
23      Q.  Are you refusing to answer the question?
24      A.  Yes. I'm going to get all emotional and it's
25  going to get ugly. I'm refusing to answer the

### 178

1  question.
2      Q.  We would need, then, to file a motion to --
3  with the judge to compel you to answer the question and
4  then y'all could oppose that and the judge is going to
5  make whatever ruling he's going to make and it would
6  just be easier to answer the question now, but I don't
7  want to advise you as to what you ought to do. I'm
8  just -- I will tell you what the -- what actions will
9  be taken in the response to your refusing to answer the
10  question.
11      A.  I appreciate that. If the judge forces me to
12  answer the question, then I'll answer the question.
13      Q.  Okay.
14      MR. BOLLING:  I have no other questions.
15          CROSS EXAMINATION
16  BY MR. RUBIN:
17      Q.  I have just a few questions.
18      You likened this soda incident to cheating in
19  golf. I just want to make sure that we're clear. Is
20  there any situation where you think Mark cheated in
21  golf?
22      A.  No, I don't think Mark plays golf.
23      Q.  Okay.
24      A.  I don't know, though.
25      Q.  Did you say anything to Mark about the soda

### 179

1  after he came to the table?
2      A.  No.
3      Q.  Did you eat together?
4      A.  Yes.
5      Q.  Sit across from each other?
6      A.  Yes, sir.
7      Q.  Did you see what kind of soda it was that he
8  got?
9      A.  Yes, but I don't remember.
10      Q.  Okay. Did you go to the -- where you get
11  water from, the same soda machine?
12      A.  Yes, we went right next to each other.
13      Q.  All right. Was it a soda that is caramel
14  color or was it a clear soda?
15      A.  I don't remember that.
16      Q.  Okay.
17      A.  I just don't remember.
18      Q.  All right. What was going on with you guys
19  that you were working late?
20      A.  We were revising user agreement.
21      Q.  Okay. Were things busy at Visagent at that
22  time?
23      A.  Busy, like a lot of trades?
24      Q.  I mean, like did things that needed to be done
25  fill up the entire day plus? In other words, working

### 180

1  into dinner and beyond?
2      A.  For -- for some reason, it was necessary for
3  us to work late.
4      Q.  Okay.
5      A.  And I don't -- I don't remember why, but I'm
6  sure that Mark didn't want to be there and I didn't
7  want to be there.
8      Q.  Do you recall around how late?
9      A.  Like 7:00, 8:00.
10      Q.  All right. You don't know if perhaps
11  something else was on Mark's mind that he kind of took
12  a soda by mistake? Is that possible?
13      A.  Definitely. It's clearly possible.
14      Q.  All right.
15      A.  I'm sure there was a lot on Mark's mind.
16      Q.  Yeah, people do kind of sometimes go through
17  the motions and then when they're thinking about
18  something else do things on a rote basis that could be
19  interpreted by others as intentional, but aren't
20  really. Isn't that right?
21      A.  That's clearly possible.
22      Q.  You've done that yourself, haven't you?
23      A.  What?
24      Q.  Done things that maybe were innocent but were
25  construed by someone else to be intentional?



Toll Free: 800.322.8416
Facsimile: 904.355.6152

1609 Riverplace Tower
1301 Riverplace Boulevard
Jacksonville, FL 32207
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

---

**181**

1    A. Absolutely.
2    Q. All right. That's just a mistake, right?
3    A. Yes.
4    Q. You testified that you spoke to David Gay
5    around three times?
6    A. I don't know how many times it was.
7    Q. Okay.
8    A. I think I said a few times. Several times,
9    but I don't --
10   Q. And you talked to Mr. Buskirk several times?
11   A. I think I spoke to Mr. Buskirk twice? He left
12   me a message on Friday. I did not return his call. He
13   called me in my office yesterday to give me directions
14   to here. And I think I spoke to him twice before that.
15   Q. Okay. And you spoke to Mr. Bolling?
16   A. I spoke to Jim once.
17   Q. Did you have any substantive conversations
18   with him?
19   A. I asked him when -- I told him I had -- I got
20   off the phone with Gladys and then I called Jim and
21   asked him -- told him that I hadn't been subpoenaed and
22   he said -- the first one -- he basically said the first
23   one counts.
24   Q. Okay.
25   A. And I said, "Okay, but I don't know when it

---

**182**

1    is."
2    Q. Did you tell him that Gladys was seeking to
3    talk to you?
4    A. Yeah, I think I said I just got off the phone
5    with Gladys and he just said Gladys -- what is it,
6    Forge?
7    Q. LaForge.
8    A. I said, "Yeah, I think that's it."
9    Q. Did he ask you what you discussed with Gladys?
10   A. No.
11   Q. When you were speaking -- it sounds like
12   you've spoken to Winn-Dixie's law firm somewhere around
13   a half a dozen times over the last, what, couple of
14   years?
15   A. I'd say over the last three months.
16   Q. Okay.
17   A. I would say they were perfunctory calls about
18   scheduling the deposition.
19   Q. Well, you must have told someone at Winn-Dixie
20   that there were incidents of untrustworthiness about
21   Mark. That didn't just come out of the blue, those
22   questions. Right?
23   A. I don't -- I don't -- I don't think so.
24   Q. You never had any conversations with
25   Winn-Dixie in your lifetime about all the ways that

---

**183**

1    Mark Rubin was untrustworthy.
2    A. No.
3    Q. Okay.
4    A. Guy, no.
5    Q. I understand.
6    A. I mean, I will be very -- look, there was a
7    time when I was going to sit at this table and go off,
8    but that time is passed, okay?
9    Q. I've got no further questions. Thank you.
10          REDIRECT EXAMINATION
11   BY MR. BOLLING:
12   Q. Just a couple of follow-up questions.
13        The other instances that -- of Mark Rubin doing
14   something untrustworthy during the time that you were
15   at Visagent, did any of those relate to business?
16   A. Define business.
17   Q. Not anything to do with not something solely
18   related to his personal life.
19   A. Yes. They did not have anything directly to
20   do with Winn-Dixie.
21   Q. Did they have anything to do with Visagent?
22   A. One instance, yes.
23   Q. All right. I forgot to ask about -- what's
24   Vigent -- what is that other outfit that you worked
25   for?

---

**184**

1    A. Vgistics.
2    Q. What's that?
3    A. It was the logistics arm of Visagent.
4    Q. What did it do?
5    A. It interfaced with Landstar to set up
6    distribution of consumer product goods.
7    Q. Was that a separate company from Visagent
8    Corporation?
9    A. My understanding is, yes, it was a separate
10   company.
11   Q. I don't have any other questions.
12   (Discussion off the record)
13        MR. BOLLING: You have the right to read the
14   deposition transcript to make sure that your -- the
15   questions and answers were stenographically
16   accurate. If so, you can talk with the court
17   reporter and then read the transcript and write
18   down what you think are mistakes.
19        THE WITNESS: Can I just waive that right?
20        MR. BOLLING: You have the right to waive the
21   right.
22        THE WITNESS: Duly waived.
23        THE VIDEOGRAPHER: That concludes the
24   deposition, 5:33.
25   (Witness excused.)

---



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.322.8416
Facsimile: 904.355.6152

1609 Riverplace Tower
1301 Riverplace Boulevard
Jacksonville, FL 32207
www.esquiresolutions.com

Robert Handmaker

July 28, 2009

185

1
2
3
4
5
6
7     (The deposition was concluded at 5:33 p.m.)
8
9                           - - -
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

---

187

1                    CERTIFICATE OF OATH
2
3
4     STATE OF FLORIDA  )
5     COUNTY OF DUVAL  )
6
7
8
9
10          I, the undersigned authority, certify that
11    ROBERT HANDMAKER personally appeared before me and was
12    duly sworn.
13
14
15
16          WITNESS my hand and official seal this
17    _____ day of August, 2009.
18
19
20
21          _____
22    Sandra G. Pemberton
23    Notary Public - State of Florida
24    My Commission No. DD325007
25    Expires:  January 13, 2010

---

186

1                    CERTIFICATE
2
3
4     STATE OF FLORIDA)
      COUNTY OF DUVAL )
5
6          I, Sandra G. Pemberton, RPR, CRR, certify
      that I was authorized to and did stenographically
7     report the deposition of ROBERT HANDMAKER; that a
8     review of the transcript was not requested; and that
9     the transcript is a true and complete record of my
10    stenographic notes.
11
12
13          I further certify that I am not a
14    relative, employee, attorney, or counsel of any of the
15    parties, nor am I a relative or employee of any of the
16    parties' attorneys or counsel connected with the
17    action, nor am I financially interested in the action.
18
19
20          DATED this _____ day of August, 2009.
21
22
23
24    _____
25    Sandra G. Pemberton, RPR, CRR, FPR



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.322.8416
Facsimile: 904.355.6152

1609 Riverplace Tower
1301 Riverplace Boulevard
Jacksonville, FL 32207
www.esquiresolutions.com