# SERVICE AGREEMENT

THIS SERVICE AGREEMENT is made as of the 28th day of June 2001 [Agreement], by and between Visagent Corporation [Provider], a Florida corporation, having principal offices at 2107 Hendricks Avenue, Jacksonville, Florida, 32207 and Winn-Dixie Stores, Inc., [User], a Florida corporation, having principal offices at 5050 Edgewood Court, Jacksonville, Florida 32254.

WHEREAS, Provider is a corporation organized and existent in accordance with the laws of the State of Florida, and is in the business of providing services including but not limited to the facilitation of eCommerce business-to-business transactions to the retail grocery industry by and through the use of the Visagent Grocery Exchange [Exchange];

WHEREAS, User is a corporation organized and existent in accordance with the laws of the State of Florida, and is in the business of retail grocery operations;

WHEREAS, the parties entered into a Letter of Intent and a Confidentiality Agreement on April 24, 2001;

WHEREAS, Provider and User desire to enter into this Agreement as more fully described below.

NOW, THEREFORE, for and in consideration of the mutual agreements herein contained, it is hereby agreed as follows:

**Term:** The term of this Agreement shall commence on the date specified above and shall remain in effect for a period of three (3) years unless terminated due to a breach of this Agreement or the Confidentiality Agreement as set forth below. This Agreement may be renewed for additional one-year terms by written agreement of the parties entered into not less than ninety (90) days prior to the expiration of this Agreement.

**User Agreement:** It is the intent of the parties that the terms of this Agreement shall supercede and prevail over any inconsistent or ambiguous provisions in the Rules of the Exchange and the Definitions, both of which are part of the User Agreement attached hereto as Exhibit "A" and incorporated by reference. If Provider desires to amend the User Agreement by posting changes or an amended User Agreement on the Visagent Grocery Exchange, Provider agrees to give prior or simultaneous written notice of same to User. As to User, if the amendments are acceptable, they shall be deemed in full force and effect from the date of posting. If User determines that such amendments are unacceptable, User shall provide written notice of same to Provider within ten (10) days after receipt of Provider's notice. If the parties are unable to reach agreement on the proposed amendment within ten (10) days thereafter, User shall have the right to terminate this Agreement immediately at such time.

**Services:** The services to be provided hereunder are those described in this Agreement, supplemented by the terms and conditions in the User Agreement posted on the Visagent Grocery Exchange to the extent they do not conflict with the terms and conditions herein.

During the term of this Agreement, Provider agrees to provide for User access to an Internet e-commerce Exchange, substantially similar to Version 1.4 of the Visagent Grocery Exchange, as

previously tested by User, and such other software solutions and logistics services that will allow User to secure and distribute products for its business. All services provided by Provider shall be at a level equal to or above the standard of the industry. If Provider discontinues, modifies or changes any presently available service or content on the Exchange, in whole or in part, and User reasonably determines that such change has a detrimental or negative effect upon User's use of the Exchange, User shall provide written notice of same to Provider. If Provider fails to remedy such change to the satisfaction of User within ten (10) days thereafter, User shall have the right to terminate this Agreement immediately at such time.

The basis of the Provider's business is as follows:

> *Visagent acts as an independent, neutral third party for the online procurement and distribution of products that are included in the User's normal business operations. As such, Visagent has developed an Internet based platform [Exchange] which allows for the facilitation and coordination of anonymous communication between buyers and sellers for the purchase and sale of products and the provision of logistics and banking services associated with completing end-to-end transactions. The Exchange provides a venue for sellers to post products they have available for sale [Availables] and for buyers to purchase products or post inquiries for items they want to purchase [Lookfors]. Visagent posts rules, policies and other conditions of use for the Exchange and its users. Each user is responsible for making its own determination as to whether to effect or consummate a transaction posted on the Exchange. At no time does Visagent hold title to any products bought or sold on the Exchange.*

**Scope of this Agreement:** This Agreement is intended to cover all of User's business transactions for full or truckload quantities of consumer packaged goods purchased or resold **[through the Internet or similar electronic means]** in a wholesale format, excluding purchases by User from the original manufacturer or its authorized representatives. For the Term of this Agreement, User will not employ or contract for the services of an entity other than Provider for its eCommerce transactions covered under the scope of this Agreement.

Exclusions: The following transactions are specifically excluded from the scope of this Agreement unless such transactions are facilitated through the Exchange.

-Product movement between Winn-Dixie distribution centers or Winn-Dixie contracted distribution centers.
-Direct User purchases for less than full or truckload quantities obtained from the inventory of wholesalers, which, as of the date of this Agreement, are providing electronic data transmissions detailing "in-stock" product availability.

-Direct User transactions with the following entities:
  Victory Wholesale Grocers up through and including July 1, 2002
  WorldWide Retail Exchange
  intesource, Inc.

**Fees:** User as a Buyer: For all Exchange transactions in which User is a Buyer, the fee for Provider's services shall be included in the total Buyer's Product Cost and limited to two (2) percent of the sum of Seller's Product Price plus Deal Costs.

User as a Seller: For all Exchange transactions in which User is a Seller, Provider's Service Fee is included in the Buyer's Product Cost.

Provider Fees do not include Deal Costs or items contained in the Schedule of Fees, as outlined in the User Agreement. All transactions are calculated as follows:

Seller's Product Price + Deal Costs x .02 = Buyer's Product Cost

**Service Level:** Provider reserves the right to perform scheduled maintenance and to deploy enhancements, modifications and fixes [collectively, Maintenance] to the Exchange, as necessary. All Maintenance shall be performed on the following default schedule: Sunday, Saturday, non-peak weekday hours of the Exchange.

Use of the Exchange is based upon Internet Server availability and is subject to agreements by and between Provider and third-party vendors in the business of providing Internet bandwidth and hosting services. Provider is not in the business of providing these services and accordingly cannot warrant availability beyond the contractual responsibilities of third-party vendors. Provider may use multiple Internet Service Vendors during the Term of this Agreement. The current primary Internet Service Vendor has a national availability service level of 99.9% for the type of service required by Provider.

Third-party service levels notwithstanding, Provider shall provide Exchange access to User for a minimum of 90% of the time in any calendar month, including downtime and maintenance.

If Provider fails to meet the minimum service levels stated herein, or fails to provide services at or above the standard of the industry, User shall provide written notice of same to Provider. If Provider fails to remedy such service problem to the satisfaction of User within ten (10) days thereafter, User shall have the right to terminate this Agreement immediately at such time.

**Antitrust:** The parties hereto believe strongly in competition. Federal and state antitrust laws are the rules under which competitive systems operate. It is the intent of the parties hereto to comply in all respects with the antitrust laws, and each party further agrees to conduct its business transactions contemplated by this Agreement, accordingly.

**Confidentiality:** The *Mutual Confidentiality and Non-Disclosure Agreement* executed by the parties on April 24, 2001 [Confidentiality Agreement], is incorporated by reference into this Agreement and designated as Exhibit "B" hereto. In the event the Term of this Agreement is renewed, the parties hereby agree to amend the term of the Confidentiality Agreement so that it extends three (3) years after the expiration of this Agreement.

**Termination:** User shall have the right to terminate this Agreement (i) upon breach by Provider of any term or condition of this Agreement, subject to the specific notice and cure provisions, if any, set forth herein; (ii) upon breach by Provider of any term or condition of the User Agreement, subject to specific notice and cure provisions set forth therein; or (iii) immediately upon breach by Provider of the Confidentiality Agreement. Termination of this Agreement shall not relieve or release either Party from any liability incurred prior to the termination of the Agreement or the Confidentiality Agreement.

**Disputes:** In the event that User has a dispute with a third party regarding a transaction arising out of use of the Exchange, User agrees to abide by the Rules of the Exchange for the resolution process thereof.

**Indemnification:** The parties intend that the following Indemnity shall replace and supercede, in its entirety, the "Indemnity" section set forth in the User Agreement:

User agrees to defend, indemnify and hold harmless Provider, its directors, officers, employees, and agents from and against any and all claims, costs, expenses, demands and damages (including reasonable attorneys' fees) arising out of, resulting from or incurred in connection with User's improper or negligent use of the Exchange, User's breach of this Agreement or the User Agreement or User's dispute with a third party regarding a transaction through the Exchange, except for disputes that arise out of the negligence or breach of this Agreement or the User Agreement by Provider or other third party.

IN NO EVENT AND UNDER NO CIRCUMSTANCE, LEGAL THEORY, TORT, CONTRACT OR OTHERWISE, WILL USER BE LIABLE TO PROVIDER OR ANY OTHER PARTY FOR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF GOODWILL, LOSS OF POTENTIAL REVENUES, LOSS OF BUSINESS OPPORTUNITIES, PROFITS, BUSINESS INTERRUPTION, WORK STOPPAGE, COMPUTER FAILURE, LOSS OF PROGRAMS OR INFORMATION OR MALFUNCTION OR ANY AND ALL OTHER COMMERCIAL DAMAGES OR LOSSES OR ANY OTHER DAMAGES ARISING IN ANY WAY FROM USER'S ACCESS TO OR USE, OR ANY COMMERCE CONDUCTED BY OR THROUGH THE EXCHANGE, EVEN IF USER HAD BEEN INFORMED OR ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN ANY STATE OR JURISDICTION THAT DOES NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, USER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW.

Provider shall have the right, at its own expense, to participate in the defense of any action or matter subject to indemnification by User hereunder. User agrees to keep Provider reasonably informed about the defense of such matters, and to confer with Provider prior to taking any action in settlement, compromise or other disposition of such matter.

**Miscellaneous:** This Agreement (including the other agreements and documents referenced herein) constitutes the entire understanding and agreement of Provider and User with respect to the subject matter of this Agreement, and contains all of the covenants and agreements of Provider and User with respect to this Agreement. Provider and User each acknowledge that no representations, inducements, promises or agreements, oral or written, have been made by Provider or User, or anyone acting on behalf of Provider or User, which are not referenced or contained in this Agreement, and any prior agreements, promises, negotiations or representations with respect to the subject matter of this Agreement, whether written or oral, not expressly set forth in this Agreement are of no force or effect. This Agreement may be amended or modified only by a writing signed by all parties to this Agreement.

If any party to this Agreement shall bring any suit or action against another for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party at trial and on appeal shall be entitled to recover against the other party, in addition to all court costs and disbursements, such sums as the court may adjudge to be reasonable attorney's and paralegal fees.

This Agreement shall be governed by and construed under the laws of the state of Florida without regard to principles of conflict of laws. The parties irrevocably consent to the jurisdiction

and venue of the state courts located in Duval County, Florida in connection with any action relating to this Agreement, except as otherwise specified herein.

The terms and provisions of the Agreement are confidential and proprietary and shall not be disclosed by either Party without the express written consent of the other unless specifically, and only to the extent, required by law.

This Agreement may be signed in counterparts, each of which shall be deemed to be an original and both of which shall constitute one Agreement. Facsimile signatures shall be deemed acceptable and binding.

Each party represents it has all requisite legal power and authority and has taken all action necessary or appropriate to enter into this Agreement and that its representative executing this Agreement is duly empowered to do so.

THE PARTIES have caused this Agreement to be executed by their duly authorized representatives.

Visagent Corporation

By: _____
I. Mark Rubin
Chief Executive Officer
Date: 6-15-01

Winn-Dixie Stores, Inc.

By: _____
Name Printed: Philip H. Payment Jr.
Title: V.P. Director of Grocery Procurement
Date: 6-15-01

5