# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:                                                    Case No. 05-03817-3F1

)

WINN-DIXIE STORES, INC., et al.,                          Chapter 11

)

Reorganized Debtors.                                      Jointly Administered

)

## WINN-DIXIE'S MEMORANDUM
## ON WHICH PARTY HAS BURDEN OF PROOF AND
## WHICH PARTY SHOULD PRESENT ITS CASE FIRST AT TRIAL

Winn-Dixie Stores, Inc., on behalf of twenty-three of its subsidiaries and affiliates, as the Reorganized Debtors (collectively, "Winn-Dixie"), files this memorandum, pursuant to the Court's September 3, 2009 order (Doc. No. 22625), regarding which party has the burden of proof and which should first present its case-in-chief at the trial on Winn-Dixie's objection to Visagent's claim, and says:

A.      *Visagent should go first because its proof of claim was defective.*

1.      On April 28, 2005, the Court established August 1, 2005 as the claims bar date (Doc. No. 932).

2.      On July 29, 2005, Visagent filed a $131,875,000 claim against Winn-Dixie for alleged "Breach of Service agreement and other statutory and tort claims" (Claim No. 9953, attached as Exhibit A).   Visagent's claim,

however, did not attach a copy of the Service Agreement, or identify which statutes Winn-Dixie allegedly violated or which torts Winn-Dixie allegedly committed.

3.    On July 11, 2006, Winn-Dixie objected to Visagent's claim (Doc. No. 9131, attached as Exhibit B).

4.    On July 23, 2006, Visagent filed an amended claim (Doc. No. 9448, attached as Exhibit C), and a response to Winn-Dixie's objections to Visagent's claim (Doc. No. 9446, attached as Exhibit D).  Visagent still did not attach the Service Agreement.[1]

5.    Bankruptcy Rule 3001(f) provides that a proof of claim *filed in accordance with the Bankruptcy Rules* constitutes *prima facie* validity of the claim:

> *(f) Evidentiary Effect*.  A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.
>
> Bankruptcy Rule 3001(f).

---

[1] Visagent claims in its response to Winn-Dixie's objections that it attached a copy of the Service Agreement to its initial claim (Doc. 9446, para. 4).  Logan & Company, Inc.'s records, however, show that Visagent did not attach a copy of the Service Agreement.  A full copy of Visagent's initial claim from Logan's records is attached as Exhibit A.  The affidavit in support of Visagent's amended claim references an attached Service Agreement (affidavit, para. 5, attached to Doc. No. 9446).  The Court's electronic filings, however, show that the Service Agreement was not attached to the affidavit.  Full copies of Visagent's electronically filed amended claim and response to Winn-Dixie's objection to Visagent's initial claim are attached as Exhibits C and D.

2

6.     Bankruptcy Rule 3001(c) requires that a claim based upon a written agreement must attach the writing to the claim:

> *(c) Claim based on a writing*.  When a claim…is based on a writing, the original or a duplicate shall be filed with the proof of claim.
>
> Bankruptcy Rule 3001(c).

7.     Because Visagent did not attach the Service Agreement to its claim, as required by Bankruptcy Rule 3001(c), Visagent's claim is not entitled to Bankruptcy Rule 3001(f)'s *prima facie* validity:

> When necessary documentation is not attached to a proof of claim, the claim is not invalidated because no operation of law automatically strikes or disallows claims lacking the requisite supporting documentation.  *However, if the documentation is missing, the creditor cannot rest on the proof of claim.  Rather, the claim will be deprived of prima facie validity under Rule 3001(f).*
>
> Bankruptcy Rule 3001(f) provides that a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim.  A claim filed without sufficient supporting documentation is not entitled to this preferred treatment.  In view of this evidentiary effect, the requirements of Rule 3001(c) and Official Form 10 are meaningless unless they require sufficient documentation *that has some evidentiary import* and establish something other than the same conclusory allegations set forth in the proof of claim itself.
>
> *In re Taylor*, 363 B.R. 303, 307-08 (Bankr.M.D.Fla. 2007) (J. Jennemann; emphasis added).

8.     Because Visagent did not attach the Service Agreement to its initial or amended claim, the claims are not entitled to *prima facie* validity.[2] Because Visagent's claims lack *prima facie* validity, Winn-Dixie has no evidentiary burden to overcome in objecting to Visagent's claims.  *In re Tran (eCast Settlement v. Tran)*, 369 B.R. 312, 318 (S.D.Tex. 2007) ("because eCast's claim had no presumption of validity, Tran had no evidentiary burden to overcome in objecting to eCast's claim").  Visagent therefore has the burden to prove its claim; and like a plaintiff in a civil action, should present its case first at trial.  McCormick on Evidence, § 4 (6th Ed.) ("Under the usual order of proceeding at the trial, including a trial under the Federal Rules of Evidence, the plaintiff, with the burden of establishing his claim, first introduces the evidence to prove the facts necessary to enable him to recover.").

---

[2] The authentication of the Service Agreement has been an issue in this litigation.  On April 8, 2007, Visagent served Winn-Dixie with a request for "a true and correct copy of the Service Agreement."  On June 7, 2007, Visagent moved to compel Winn-Dixie to produce the Service Agreement (Doc. No. 16690).  At the December 13, 2007 hearing on that motion, Visagent argued that Visagent asked Winn-Dixie "to admit that the service agreement that we have that was attached to the request for admission was a binding, valid document.  They wouldn't admit that.  They said instead that we have a signed – we have one signed by a duly authorized representative of the debtors.  So we're trying to figure out what is the difference between the one we submitted and the one they say that they have."  (transcript, pages 7-8).  As Winn-Dixie explained, "the reason we denied the Request for Admission is because the Request for Admission says that [the Agreement is] attached as exhibit so and so and it wasn't attached to it." (transcript, page 16).

On September 25, 2009, Visagent filed a "Notice of Filing Supplement to Visagent's Amended Statement of Claim Dated July 23, 2006" (Doc. No. 22651).  This untimely filing (more than three years late), after all discovery has been completed, does not cure Visagent's defective claim.  *See In re Sandifer*, 318 B.R. 609 (Bankr.M.D.Fla. 2004).

B.    *Even if Visagent's claim were not defective, on this record Visagent should present its case first.*

9.    Even if Visagent had complied with Bankruptcy Rule 3001(c), and Visagent's claim were entitled to Bankruptcy Rule 3001(f)'s *prima facie* validity, the Court nevertheless should require Visagent to present its case-in-chief at trial before Winn-Dixie presents its evidence in response to Visagent's claim.  Otherwise, Winn-Dixie would have to present proof in response to an unestablished allegation that Winn-Dixie breached its agreement with Visagent.

10.    Rule 611(a), Fed.R.Evid., allows the Court to exercise control over the order of the presentation of evidence:

> Rule 611.   Mode and Order of Interrogation and Presentation
>
> (a)  Control by the court.   The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth,…
>
> Rule 611(a), Fed.R.Evid.

11.    Under Rule 611(a), courts have broad discretion in controlling the order of presentation of evidence:

> A district court is accorded broad discretion in controlling the order of presentation of witnesses and other evidence.  Fed.R.Evid. 611(a).
>
> *Goodwyn v. Simons*, 2004 WL 332824 (4th Cir. 2004).

12.     Visagent knows the basis for Winn-Dixie's objection to Visagent's claim, by reason of (i) Winn-Dixie's written objections to Visagent's initial claim (Doc. No. 9131), (ii) Winn-Dixie's answers to Visagent's interrogatories, (iii) Winn-Dixie's arguments at hearings on a dozen motions to compel, (iv) nine depositions Visagent has taken of current and former Winn-Dixie employees and thirteen thousand pages of documents Winn-Dixie has produced to Visagent.

13.     For these reasons, the Court should require Visagent, as the claimant, to present its case first at trial.[3]

---

[3] Even if Visagent's initial or amended claims were *prima facie* valid, Visagent still would have the burden of persuasion, if Winn-Dixie produced probative evidence equivalent to that of Visagent's claim.   *In re Clements*, 185 B.R. 895, 898-899 (Bankr.M.D.Fla. 1995) ("The burden of proof is on the objecting party to produce evidence "equivalent in probative value to that of the creditor to rebut the prima facie effect of the proof of claim.  However, the burden of ultimate persuasion rests with the claimant.").   Visagent filed an affidavit of Mark Rubin in response to Winn-Dixie's objection to Visagent's claim (Doc. No. 9446, attached to this memorandum as Exhibit D).  Rubin's affidavit addresses Winn-Dixie's alleged breach of the Service Agreement, which was not attached to the affidavit.  Rubin's affidavit, however, does not address Winn-Dixie's alleged torts or statutory violations.   Winn-Dixie submits with this memorandum an affidavit of Tom Barr, which addresses all of Visagent's claims, as "equivalent in probative value" to Mr. Rubin's affidavit (Barr affidavit attached as Exhibit E).  Winn-Dixie therefore has met its burden, even if Visagent's claim were *prima facie* valid.  Visagent therefore has now to prove its case.

WHEREFORE, Winn-Dixie requests that Visagent present its case first at the trial on liability scheduled to begin on February 8, 2010.

SMITH HULSEY & BUSEY

By  */s/ Timothy R. Buskirk*
Stephen D. Busey
James A. Bolling
Timothy R. Buskirk

Florida Bar Number 058314
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
tbuskirk@smithhulsey.com

Attorneys for Winn-Dixie

EXHIBIT A

Form B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT<br>MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION<br>Winn-Dixie Stores, Inc., et al., Case No. 05-03817-3F1 Jointly Administered | Chapter 11<br>PROOF OF CLAIM | DEADLINE FOR FILING PROOFS OF<br>CLAIM IS: AUGUST 1, 2005 AT 5:00 P.M.<br>EASTERN TIME |
|---|---|---|

**Name of Debtor Against Which You Assert Your Claim:**

Debtor Name  **Winn-Dixie Stores, INC.**      Case No  **05-03817-3F1**
(See List of Names and Case Numbers on Reverse Side)

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

| A. Name and Address of Creditor (The person or other entity to whom the debtor owes money or property): | **772-283-2004**<br>Telephone No of Creditor | Your claim is scheduled as follows |
|---|---|---|

|||
|---|---|
| ‖‖‖‖‖‖‖‖‖  19954046<br>Creditor Id WDX-269370-B1-16<br>VISAGENT CORPORATION<br>C/O GUY BENNETT RUBIN<br>RUBIN & RUBIN<br>520 SOUTH FEDERAL HIGHWAY<br>PO BOX 305<br>STUART, FL 34995 | **772-283-2009**<br>Fax No of Creditor<br><br>(If your address has changed or is incorrect as it appears in Item A, please provide corrections) |

Debtor
Winn-Dixie Stores, Inc.
Classification
Unsecured Non-Priority Claim
Scheduled Amount
$ .00
Disputed Contingent Unliquidated
DEBTOR  WINN - DIXIE STORES, INC
U S BANKRUPTCY COURT M D -FLORIDA
JOINTLY ADMINISTERED UNDER
CASE  05-03817 (3F1)
CHAPTER 11

## CLAIM NO.: 9953

| B. Name and address of signatory or other person to whom notices must be served, if different from above. (Check box if): ☐ replaces address above ☐ additional address | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim Attach a copy of statement giving particulars<br>☐ Check box if you have never received any notices in this case | If an amount is identified above, you have a claim scheduled by the Debtor as shown  If you agree with the amount and classification of your claim as scheduled by the identified Debtor and you have no other claims against any of the debtors, you do not need to file this proof of claim  EXCEPT AS FOLLOWS  If the amount shown is listed above as DISPUTED, UNLIQUIDATED, OR CONTINGENT, a proof of claim MUST be filed in order for you to receive any distribution on account of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not refile your claim |
|---|---|---|

Name  **GUy B. Rubin, ESQ.**

Company/Firm  **Rubin & Rubin**

Address  **P.O. Box395, Stuart, Fl 34995**

| Account or Other Number by Which Creditor Identifies Debtor<br>**Case No. 16-2004-CA-006101 Duval County** | Check here if this claim<br>☐ replaces  ☐ amends   a previously filed claim, dated |
|---|---|

**1. Basis for Claim**

| ☐ Goods sold to debtor(s) | ☐ Taxes | ☐ Retiree benefits as defined in 11 U S C § 1114(a) |
|---|---|---|
| ☐ Services performed for debtor(s) | ☐ Severance agreement | ☐ Wages, salaries, and compensation (fill out below) |
| ☐ Goods purchased from debtor(s) | ☐ Refund | Last four digits of SSN |
| ☐ Money loaned | ☐ Real property lease | Unpaid compensation for services performed from |
| ☐ Personal injury/property damage | ☐ Personal property lease | _____ to _____ |
| ☐ Other | ☒ Other contract **Breach of S ervice** | (date)   (date) |

**agreement Nonpriority and other statutory and tort claims**

**2. Date debt was incurred**  **June 28, 2001 - June of 2004**      **3. If claim is based on a Court Judgment, date obtained**

**4. Total Amount of Claim at Time Case Filed:**  $ **131,875,000.00** $_____ $_____ $_____
(unsecured)   (secured)   (priority)   (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

| **5. Secured Claim.**<br>☐ Check this box if claim is secured by collateral (including a right of setoff)<br><br>Brief description of Collateral<br>☐ Real Estate  ☐ Motor Vehicle  ☐ Other _____<br><br>Value of Collateral $_____<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any $_____ | **7. Unsecured Priority Claim.**<br>☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $_____<br>Specify the priority of the claim<br>☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507 (a) (3)<br>☐ Contributions to an employee benefit plan – 11 U S C § 507 (a) (4)<br>☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507 (a) (6)<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U S C § 507 (a) (7)<br>☐ Taxes or penalties owed to governmental units – 11 U S C § 507 (a) (8)<br>☐ Other – Specify applicable paragraph of 11 U S C § 507 (a) ( )<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment |
|---|---|
| **6. Unsecured Nonpriority Claim** $ **131,875,000.00**<br>☒ Check this box if a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority | |

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim

**9 Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain  If the documents are voluminous, attach a summary

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

This Space Is For Court Use Only

| Date<br>**July 28, 2005** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) and to receive notice:<br><br>Print **Guy B. Rubin, Esq.**  Title **Attorney**<br><br>Signature ___ *[signature] Esq. For Guy B. Rubin, Esq* |
|---|---|

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

RECEIVED 2005 JUL 29  PM 1:04
LOGAN & COMPANY, INC. AS AGENT
U.S. BANKRUPTCY COURT MIDDLE DISTRICT OF FLORIDA

# EXHIBIT B

Hearing Date:   August 10, 2006 at 1:00 p.m.
Obj. Deadline:   August 1, 2006 at 4:00 p.m.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | Case No. 05-03817-3F1 |
| WINN-DIXIE STORES, INC., et al., | *Chapter 11* |
| Debtors. [1] | Jointly Administered |

## DEBTORS' FOURTEENTH OMNIBUS OBJECTION TO (A) NO LIABILITY CLAIMS AND (B) NO LIABILITY MISCLASSIFIED CLAIMS

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), object under 11 U.S.C. § 502, 506 and 507 and Fed. R. Bankr. P. 3007 and 9014 (the "Objection") to the claims listed on the attached Exhibits A and B (the "Disputed Claims") and, for the reasons set forth below, seek entry of an order (the "Proposed Order") disallowing the Disputed Claims.[2]  In support of this Objection, the Debtors respectfully represent as follows:

### BACKGROUND

A.   The Chapter 11 Filings

1.   On February 21, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11

---

[1]   In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

[2]   By order dated September 1, 2005, this Court approved notice and service procedures regarding omnibus claim objections (the "Claim Objection Procedures Order").  This Objection is filed pursuant to the Claim Objection Procedures Order.

U.S.C. §§ 101-1330 as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered for procedural purposes only.

2.    The Debtors are grocery and pharmaceutical retailers operating in the southeastern United States, primarily under the "Winn-Dixie" and "Winn-Dixie Marketplace" banners. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On March 1, 2005, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") to serve in these cases. An official committee of equity security holders appointed by the U.S. Trustee on August 17, 2005 was subsequently disbanded by the U.S. Trustee by notice dated January 11, 2006.

4.    On June 29, 2006, the Debtors filed a proposed Disclosure Statement with Respect to Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors together with a proposed Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the "Plan").

5.    The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

6.    The statutory predicates for the relief requested are sections 502, 506 and 507 of the Bankruptcy Code and Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Proofs of Claim

7.    By Order dated April 28, 2005 (the "Claims Bar Date Order"), this Court set August 1, 2005 as the last date for all parties who have or assert (or believe they may have or

2

assert) prepetition claims against one or more of the Debtors to file and serve a written proof of claim with respect to any such claim. The bar date applicable to governmental units was August 22, 2005. To date, over 13,300 proofs of claim (the "Proofs of Claim") have been filed against the Debtors in these cases. Notice of the Claims Bar Date Order and the applicable bar date was provided by mail and publication in accordance with the procedures outlined in the Claims Bar Date Order.

       8.   In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors. The Debtors and their advisors are conducting a review of the Proofs of Claim filed in these cases (including supporting documentation) and a comparison of the claims asserted in the Proofs of Claim with the Books and Records to determine the validity of the asserted claims. In the process, the Debtors have identified a number of Proofs of Claim that are objectionable, as more particularly described below.

## RELIEF REQUESTED

       9.   By this Objection, the Debtors object to the Disputed Claims and, for the reasons described below, seek entry of the Proposed Order, pursuant to sections 502, 506 and 507 of the Bankruptcy Code and Bankruptcy Rules 3007 and 9014, disallowing the Disputed Claims.

## BASIS FOR RELIEF

A.    No Liability Claims

       10.   As a result of their review, the Debtors have identified 200 Disputed Claims with respect to which the Books and Records reflect no amount due (the "No Liability Claims"). The No Liability Claims, with reasons for disallowance, are listed on Exhibit A.

3

11.     The Debtors (a) object to the No Liability Claims listed on Exhibit A and (b) seek entry of the Proposed Order disallowing the No Liability Claims.  Claimants may elect, by not timely responding to this Objection, to permit the No Liability Claims listed on Exhibit A to be disallowed.  In the absence of a Response (as defined in paragraph 18 below), the Debtors will present to the Court the Proposed Order disallowing the No Liability Claims.

B.      No Liability Misclassified Claims

12.     As a result of their review, the Debtors have identified 162 Disputed Claims with respect to which the Books and Records reflect no amount due and that also appear to incorrectly assert secured or priority status (the "No Liability Misclassified Claims").  The No Liability Misclassified Claims, with reasons for disallowance, are listed on Exhibit B.

13.     To the extent that the No Liability Misclassified Claims are not disallowed in their entirety, the Debtors also object to the No Liability Misclassified Claims on the basis of their assertion of secured or priority status.  The No Liability Misclassified Claims have not asserted any basis for entitlement to secured or priority status under the Bankruptcy Code.  Therefore, to the extent they are not disallowed in their entirety, the No Liability Misclassified Claims should be reclassified as unsecured non-priority claims.

14.     The Debtors (a) object to the No Liability Misclassified Claims listed on Exhibit B and (b) seek entry of the Proposed Order disallowing the No Liability Misclassified Claims.  To the extent the No Liability Misclassified Claims are not disallowed in their entirety, the Debtors will seek entry of an order reclassifying the No Liability Misclassified Claims as unsecured non-priority claims.  Claimants may elect, by not timely responding to this Objection, to permit the No Liability Misclassified Claims listed on Exhibit B to be disallowed.  In the absence of a Response (as defined in paragraph 18 below), the Debtors will present to the Court the Proposed Order disallowing the No Liability Misclassified Claims.

4

### SEPARATE CONTESTED MATTERS

15.    Each of the Disputed Claims and the Debtors' objections asserted below constitute a separate contested matter as contemplated by Bankruptcy Rule 9014. The Debtors request that any order entered by the Court with respect to an objection asserted in this Objection shall be deemed a separate order with respect to each Disputed Claim.

### RESERVATION OF RIGHTS

16.    The Debtors expressly reserve the right to amend, modify, or supplement these objections and to file additional objections to the Disputed Claims or any other claims (filed or not) which may be asserted against the Debtors. In particular, the Disputed Claims may be subject to further objection on the ground that they were filed against the incorrect Debtor. Subject to the resolution of substantive consolidation issues, the Debtors reserve the right to seek to modify the Debtor against which each of the Disputed Claims has been filed to reflect that each Disputed Claim is filed against the Debtor believed to be liable for the amounts asserted in the Disputed Claims.

17.    The Debtors reserve their rights with respect to potential preference and avoidance actions under chapter 5 of the Bankruptcy Code (the "Avoidance Actions") against any Claimant, and this Objection does not constitute a waiver of the Debtors' right to pursue such Avoidance Actions.

### RESPONSES TO THE OBJECTION

A.    Filing and Service of Responses

18.    Pursuant to the Claim Objection Procedures Order, to contest an Objection a claimant must file a written response to the Objection (a "Response") with the United States Bankruptcy Court for the Middle District of Florida (the "Court"), via the Court's electronic filing procedures (electronic filing is mandatory for all attorneys), or by delivery of a hard copy

5

to the Clerk of the Court, United States Courthouse, 300 North Hogan St., Suite 3-350,

Jacksonville, Florida 32202 no later than **August 1, 2006, at 4:00 p.m. (Eastern time)** (the

"Response Deadline"). In addition, a copy of the Response must be served on the following

party on or before the Response Deadline:

Counsel for the Debtors:

D. J. Baker Esq.
Skadden, Arps, Slate, Meagher
& Flom LLP
Four Times Square
New York, New York 10036
(212) 735-2000 (facsimile)
djbaker@skadden.com

B.    Timely Response Required; Hearing; Replies

19.    If a Response is properly and timely filed and served in accordance with the

above procedures, the Debtors will endeavor to reach a consensual resolution with the claimant.

If no consensual resolution is reached, a hearing has been noticed for **August 10, 2006, at 1:00**

**p.m. (Eastern Time)**, or such other date and time as parties filing responses may be notified.

Only those Responses made in writing and timely filed and received will be considered by the

Court at any such hearing. The Debtors reserve the right to seek to adjourn a hearing with

respect to a specific objection and any Response to such objection.

20.    If a claimant whose claim is subject to the Objection, and who is served

with the Objection, fails to file and serve a timely Response in compliance with the foregoing

procedures, the Debtors will present to the Court an appropriate order disallowing the claim

without further notice to the claimant.

**NOTICE**

21.    As authorized by the Claim Objection Procedures Order, the Debtors will

serve a special notice of filing of the Objection informing claimants in bold lettering that their

6

claims may be disallowed as a result of the Objection (the "Affected Parties Notice"), by first-class, United States mail, postage prepaid, upon each of the claimants identified in Exhibits A and B.  Copies of this Objection will be served with a standard notice of filing, but not an Affected Parties Notice, upon the United States Trustee, counsel for the Debtors' postpetition secured lender, counsel for the Creditors Committee, and, in an abundance of caution, upon the other parties in interest named on the Official Service List maintained in these cases.  The Debtors submit that no other or further notice need be given.

WHEREFORE the Debtors respectfully request that the Court (i) grant the relief requested by this Objection, (ii) enter the Proposed Order attached as Exhibit C disallowing (a) the No Liability Claims and (b) the No Liability Misclassified Claims, and (iii) grant such other and further relief as is just and proper.

Dated: July 11, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By    _s/ D. J. Baker_____
      D. J. Baker
      Sally McDonald Henry
      Rosalie Walker Gray
      Jane M. Leamy
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

Co-Attorneys for Debtors

SMITH HULSEY & BUSEY

By    _s/ James H. Post_____
      Stephen D. Busey
      James H. Post
      Cynthia C. Jackson,
      Florida Bar Number 175460
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com

Co-Attorneys for Debtors

### Declaration

I, David M. Young, Division Support Manager, Winn-Dixie Stores, Inc., declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the facts stated in the foregoing Debtors' Fourteenth Omnibus Objection to (A) No Liability Claims and (B) No Liability Misclassified Claims are true and correct to the best of my knowledge, information and belief.

David M. Young
Division Support Manager
Winn-Dixie Stores, Inc.

8

**EXHIBIT A**

WINN-DIXIE STORES, INC., ET AL.
FOURTEENTH OMNIBUS CLAIMS OBJECTION
EXHIBIT A - NO LIABILITY CLAIMS TO BE DISALLOWED

Page: 26 of 27
Date: 07/11/2006

| Name of Claimant | Claim No. | Claim Amount | Reason for Proposed Disallowance |
|---|---|---|---|
| **Creditor Id:** 269370<br>VISAGENT CORPORATION<br>C/O RUBIN & RUBIN<br>ATTN GUY B RUBIN, ESQ<br>520 SOUTH FEDERAL HWY<br>PO BOX 395<br>STUART, FL 34995 | 9953<br>**Debtor:** | $131,875,000.00<br>**WINN-DIXIE STORES, INC.** | NO LIABILITY ON ALLEGED BREACH OF SERVICE AGREEMENT AND RELATED THEORIES OF RECOVERY. CLAIMANT CONTENDS DEBTORS BREACHED EXCLUSIVITY PROVISION IN SERVICE AGREEMENT, ENTITLING IT TO 2% OF ALL DEBTOR'S PURCHASES DURING APPLICABLE PERIOD. CLAIM CONTAINS NO SUPPORTING DOCUMENTATION AND NO EXPLANATION OF DAMAGE CALCULATION. DEBTORS ABIDED BY EXCLUSIVITY PROVISION AND THERE WERE NO OUTSTANDING CLAIMS WHEN SERVICE AGREEMENT EXPIRED IN JUNE 2004. UPON TERMINATION OF RELATED EXCHANGE USER AGREEMENT, CLAIMANT WAS REQUIRED, BUT FAILED, TO RETURN $25,000 DEPOSIT. ACCORDINGLY, CLAIMANT OWES DEBTOR $25,000. |
| **Creditor Id:** 77383<br>WARD, WILLIAM SR<br>4531 TCHOUPTOULAS<br>NEW ORLEANS LA 70115 | 1997<br>**Debtor:** | $0.00<br>**WINN-DIXIE STORES, INC.** | NO LIABILITY PER DEBTOR'S BOOKS AND RECORDS, NO ASSERTED BASIS OR AMOUNT, AND NO DOCUMENTATION. |
| **Creditor Id:** 230488<br>WATTERS, GLENNA K<br>12041 STONE CROSSING CIR<br>TAMPA FL 33635 | 1878<br>**Debtor:** | $0.00<br>**WINN-DIXIE STORES, INC.** | NO LIABILITY PER DEBTOR'S BOOKS AND RECORDS, NO ASSERTED BASIS OR AMOUNT, AND NO DOCUMENTATION. |
| **Creditor Id:** 77976<br>WATTS, CATHERINE A<br>5301 COURT J<br>BIRMINGHAM AL 35208 | 2878<br>**Debtor:** | $0.00<br>**WINN-DIXIE MONTGOMERY, INC.** | NO LIABILITY PER DEBTOR'S BOOKS AND RECORDS. |
| **Creditor Id:** 230713<br>WEAVER, CHILLIE L<br>778 SECOND STREET<br>AYDEN NC 28513 | 9138<br>**Debtor:** | $818.40<br>**WINN-DIXIE STORES, INC.** | NO LIABILITY PER DEBTOR'S BOOKS AND RECORDS. |
| **Creditor Id:** 231994<br>WHEELER, FELICIA R<br>4666 WHITTIER PLACE<br>POWDER SPRINGS GA 30127 | 6293<br>**Debtor:** | $702.00<br>**WINN-DIXIE STORES, INC.** | NO LIABILITY PER DEBTOR'S BOOKS AND RECORDS AND NO DOCUMENTATION. |
| **Creditor Id:** 256791<br>WHEELOCK, MURIAH<br>2608 OAKWOOD AVENUE NE<br>HUNTSVILLE, AL 35811 | 2328<br>**Debtor:** | $60.98<br>**WINN-DIXIE STORES, INC.** | NO LIABILITY PER DEBTOR'S BOOKS AND RECORDS. CLAIM WAS PAID BY CHECK DATED 10/22/04. |
| **Creditor Id:** 243363<br>WILLIAMS, BESSIE<br>11720 5TH ST N E<br>CAIRO, GA 39828 | 3108<br>**Debtor:** | $613.43<br>**WINN-DIXIE STORES, INC.** | NO LIABILITY PER DEBTOR'S BOOKS AND RECORDS. |

**EXHIBIT B**

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:            )    Case No. 05-03817-3F1
               )
WINN-DIXIE STORES, INC., et al., )    *Chapter 11*
               )
Debtors. [1]        )    Jointly Administered
               )

**ORDER DISALLOWING (A) NO LIABILITY CLAIMS AND (B) NO
LIABILITY MISCLASSIFIED CLAIMS, AS SET FORTH IN THE
DEBTORS' FOURTEENTH OMNIBUS CLAIMS OBJECTION**

These cases came before the Court for hearing on August 11, 2006,

upon the Fourteenth Omnibus Objection (the "Objection") of Winn-Dixie Stores, Inc.

and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") to the

proofs of claim listed on Exhibit A and B (the "Disputed Claims").[2] Upon

consideration, it is

ORDERED AND ADJUDGED:

         1.      The Objection is sustained.

         2.      The No Liability Claims listed on Exhibit A are disallowed in

their entirety.

         3.      The asserted class status alleged for each of the No Liability

Misclassified Claims listed on Exhibit B is denied; and the No Liability

---

[1]      In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

[2]      All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Objection.

Misclassified Claims are (a) reclassified as specified on Exhibit B under the heading "Modified Class Status," and (b) disallowed in their entirety.

4.      Each claim and the objections by the Debtors to such claim as addressed in the Objection constitute a separate contested matter as contemplated by Bankruptcy Rule 9014. This Order is deemed a separate Order with respect to each claim. Any stay of this Order pending appeal by any of the claimants whose claims are subject to this Order shall only apply to the contested matter which involves such claimant and shall not act to stay the applicability or finality of this Order with respect to the other contested matters covered by this Order.

5.      Neither the Objection nor any disposition of the Disputed Claims pursuant to this Order constitutes a waiver of the Debtors' right to pursue any potential Avoidance Action against any of the Claimants.

6.      This Order is without prejudice to the Debtors' right to file any further objection they may have to the Disputed Claims, including objections on the ground that a Disputed Claim was filed against the incorrect Debtor or that the Debtor against which the Disputed Claim was filed should be modified.

Dated this ____ day of August, 2006 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge


James H. Post is directed to serve
a copy of this Order on all parties who
received copies of the Objection.

2

**THE EXHIBITS TO BE ATTACHED TO THE ORDER WHEN ENTERED
WILL BE THE SAME EXHIBITS THAT ARE ATTACHED TO THE
OBJECTION, WITH ANY NECESSARY MODIFICATIONS TO ADDRESS
RESPONSES TO THE OBJECTION**

3

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

### NOTICE OF FILING AMENDED STATEMENT OF CLAIM BY VISAGENT CORPORATION

Visagent Corporation, one of the unsecured creditors herein, holding Claim No. 9953 in the amount of $131,875,000, by its attorneys, hereby file this as its Amended Statement of Claim:

**Amended Statement of Claim**

After many months of negotiations and the investment of substantial monetary and human capital by VISAGENT, a contract entitled SERVICE AGREEMENT was executed by both VISAGENT and WINN-DIXIE on June 15, 2001 with an effective date of June 28, 2001.

The term of the SERVICE AGREEMENT is three (3) years from the effective date. Under this agreement WINN-DIXIE was obligated to exclusively utilize the services of VISAGENT for the procurement and sale of all merchandise it acquired or sold, through the internet or similar electronic means, including any means utilizing facsimile, from and through the secondary market. This secondary market is comprised of all sources (buyers and sellers) of merchandise other than direct purchases and returns from original product manufacturers. Pursuant to the terms of the SERVICE

1

AGREEMENT, VISAGENT was entitled to a fee of 2% of all WINN-DIXIE transactions processed through VISAGENT.

WINN-DIXIE breached its contractual obligation to exclusively utilize VISAGENT's services for e-Commerce as provided in the SERVICE AGREEMENT. As a result, VISAGENT has suffered damages in the amount of 2% of all transactions in which WINN-DIXIE participated in the purchase or sale of goods in the secondary market, other than those through the Exchange.

WINN-DIXIE also violated state and federal laws in connection with trade secrets and proprietary information belonging to VISAGENT. This claim is based upon the WINN DIXIE Outside Sales Catalog program (OSC) developed specifically by VISAGENT for WINN-DIXIE. VISAGENT brought the OSC concept to WINN-DIXIE. VISAGENT used its contacts and relationships to introduce compatible trade partners to WINN-DIXIE to trade on a VISAGENT exchange or a custom designed trading platform managed by and through VISAGENT. WINN-DIXIE blatantly attempted to, and then did in fact build a business relationship with some or all of these introduced trading partners on their own by circumventing VISAGENT despite written and oral non-disclosure agreements protecting VISAGENT against such circumvention.

VISAGENT performed extensive services without compensation for WINN-DIXIE based upon promises that ALL Outside Sales Catalog business would be conducted by and through a VISAGENT Exchange.  In reliance on said promises, VISAGENT developed a business model for WINN-DIXIE and trained its employees in this regard.

WINN-DIXIE intentionally, fraudulently or negligently encouraged and induced VISAGENT, through said promises, to continue to provide development, training and services toward the development of the OSC and other trading programs that would benefit WINN-DIXIE despite the fact that WINN-DIXIE actually had no intention to use the VISAGENT exchange as was promised. WINN-DIXIE was actually perpetrating a scheme to usurp the business opportunities brought to it by VISAGENT, stealing advanced technical trading knowledge and industry know-how from VISAGENT, without any intention of compensating VISAGENT. VISAGENT relied on these inducements to its detriment and suffered catastrophic damages as a result thereof.

## CERTIFICATE OF SERVICE

I certify that a true copy was sent via U.S. Mail and via electronic filing to Clerk of the Bankruptcy Court and to counsel for the Debtor this 23rd day of July, 2006.

**COUNSEL FOR VISAGENT CORPORATION**

Guy Bennett Rubin
Digitally signed by Guy Bennett Rubin
DN: CN = Guy Bennett Rubin, C = US
Date: 2006.07.23 07:34:37 -04'00'

GUY BENNETT RUBIN, ESQUIRE
Florida Bar No.: 691305
Rubin & Rubin
P.O. Box 395
Stuart, FL 34995
(772) 283-2004
(772) 283-2009 (facsimile)
guy.rubin@rubinandrubin.com

AND

PAUL M. HARDEN, ESQUIRE
Florida Bar No.: 129557
Rubin & Rubin

3

1301 Riverplace Blvd
Ste 2601
Jacksonville Florida 32207
904.3965731
904.3995461 (facsimile)

Copy furnished to:

Stephen D. Busey
James H. Post
Cynthia C. Jackson
**Smith Hulsey & Busey**
225 Water Street
Suite 1800
Jacksonville, FL 32202
Tel: (904) 359-7700
Fax: (904) 359-7708

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:                                    )          CASE NO.: 05-03817-3F1
                                          )
        WINN-DIXIE STORES, INC. et al     )          Chapter 11
                                          )
                Debtors.                  )          Jointly Administered


## VISAGENT CORPORATION'S RESPONSE TO DEBTOR'S FOUTEENTH OMNIBUS OBJECTION TO NO LIABILITY CLAIMS

Comes now, Visagent Corporation, through counsel, and hereby files this as its Response to Debtor's Fourteenth Omnibus Objection to Visagent Corporation's claim in this matter as a no liability claim.  In further support of this Response, Visagent Corporation states as follows:

1.    Visagent Corporation filed a timely claim in this bankruptcy matter.

2.    The Debtor has filed an objection to the claim of Visagent asserting in summary fashion that Visagent's claim "contains no supporting documentation and no explanation of damages calculation".

3.    Debtor further stated in apparent defense of Visagent's claim that it "abided by the exclusivity provision and there were no outstanding claims when service agreement expired in June 2004."

4.    Debtor's statement regarding the absence of any supporting documentation is incorrect.  Visagent attached a copy of the agreement between it and Debtor with its Statement of Claim.

5.    Due to the stay of proceedings in state court, Visagent was not able to secure proofs of the amount of damages through discovery

1

regarding some of its claims. Because some damage calculations are a function of the gross sales of Debtor during the three (3) year period from June 2001 though June 2004, and because Debtor is in sole possession of all documentation that would provide such sales data, Visagent has been precluded from obtaining the materials necessary to provide a damages calculation as to this aspect of the claim.

6. Of even date with the filing of this Response, Visagent is filing and serving an omnibus discovery request to Debtor, including a request for production requesting said sales documentation.

7. Accordingly, Debtor's objection as it pertains to Visagent Corporation's precise calculation of damages should not be heard by this Court until the Debtor has provided the requested information to Visagent's litigation counsel and Visagent is provided a reasonable time to work up damages calculations with an expert witness.

8. Debtor's statement that there was no outstanding claims when the Service Agreement expired is also incorrect. Debtor was advised on numerous occasions it was in breach of the service agreement before it expired in June 2004. See attached affidavit of I. Mark Rubin, Visagent's CEO dated July 17, 2006.

9. Mr. Rubin's Affidavit demonstrates a claim was asserted to Debtor by Visagent numerous times during the term of the Service Agreement.

2

10.     Further still, Visagent filed its action in Circuit Court in Duval County, Florida within ninety (90) days of the expiration of the contract breached by Debtor and nearly five (5) months before Debtor commenced this bankruptcy proceeding.  Debtor filed an Answer to the state court action, and therefore undoubtedly has been served with the state court Complaint.  Visagent was under no legal obligation to provide notice of breach as a condition precedent to bringing its claim of breach of contract against Debtor.

11.     Of even date with the filing of this Response, Visagent is filing and serving an Amended Claim with greater specificity of claims and damages.

12.     For the foregoing reasons, Visagent requests Debtor's Objection, as it relates to the subject claim, be overruled.

**CERTIFICATE OF SERVICE**

I certify that a true copy was sent via U.S. Mail and via electronic filing to Clerk of the Bankruptcy Court and to counsel for the Debtor this 23rd day of July, 2006.

**COUNSEL FOR VISAGENT CORPORATION**

Guy Bennett Rubin
_Digitally signed by Guy Bennett Rubin DN: CN = Guy Bennett Rubin, C = US Date: 2006.07.23 07:29:34 -04'00'_

GUY BENNETT RUBIN, ESQUIRE
Florida Bar No.: 691305
Rubin & Rubin
P.O. Box 395

Stuart, FL 34995
(772) 283-2004
(772) 283-2009 (facsimile)
guy.rubin@rubinandrubin.com


AND


PAUL M. HARDEN, ESQUIRE
Florida Bar No.: 129557
Rubin & Rubin
1301 Riverplace Blvd
Ste 2601
Jacksonville Florida 32207
904.3965731
904.3995461 (facsimile)

Copy furnished to:

Stephen D. Busey
James H. Post
Cynthia C. Jackson
**Smith Hulsey & Busey**
225 Water Street
Suite 1800
Jacksonville, FL 32202
Tel: (904) 359-7700
Fax: (904) 359-7708

4

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

IN RE:                                    )          CASE NO.: 05-03817-3F1
                                          )
WINN-DIXIE STORES, INC. et al             )          Chapter 11
                                          )
            Debtors.                      )          Jointly Administered

### AFFIDAVIT OF I. MARK RUBIN

I, I. Mark Rubin, under oath, do depose and state:

1.          I am over the age of 18, a resident of the State of Florida and
            competent to testify in the courts in the State of Florida.

2.          I have personal knowledge of the facts contained within this
            affidavit, all of which are true.

3.          At all times material to this affidavit, I was the Chief Executive
            Officer of Visagent Corporation, a Florida corporation.

4.          This affidavit is submitted in connection with a response to
            Debtor's Objection to the claim of Visagent Corporation in the
            above-captioned proceeding.

5.          I was personally involved in the negotiation leading up to
            execution of the Service Agreement dated June 15, 2001 between
            Winn-Dixie Stores, Inc and Visagent Corporation. In fact, I signed
            that contract on behalf of Visagent Corporation. A true copy of the
            Service Agreement is attached hereto as Exhibit A.

6.          The Service Agreement obligated Winn-Dixie Stores, Inc., subject
            to limited exclusions, to use Visagent's electronic exchange as the
            exclusive means to transact all of its sales and purchases in the
            secondary market that had been previously handled through in-
            house and third-party wholesalers/diverters, as well as all other
            secondary market transactions, conducted by any   means of

electronic transmission, including through the Internet, private networks and sales facilitated by and through the use of email and fax machines.

7.    Under the Service Agreement, Winn-Dixie was obligated to pay Visagent 2% of the gross value of all transactions running through Visagent's electronic exchange.

8.    The volume of secondary market sales was projected by Winn-Dixie at a minimum of $175,000,000 annually in the first year of the Service Agreement, and projected to increase in years two and three of the Service Agreement.

9.    On numerous occasions after execution of the Service Agreement, I personally spoke with managers and executives of Winn-Dixie, including its General Counsel, staff counsel, at least two Senior Vice Presidents, at least two other Vice Presidents and several Directors and Managers regarding Winn-Dixie's failure to fully comply with its obligation under the Service Agreement as it was common knowledge within the grocery industry that Winn-Dixie was utilizing the Visagent exchange for only a small fraction of its secondary market transactions.

10.   In almost all of the conversations with these representatives of Winn-Dixie, I was given assurances that Winn-Dixie's intent was to fulfill its obligations under the Service Agreement. In these conversations Visagent was further encouraged to continue to provide Winn-Dixie with all support and services required of Visagent under the Service Agreement and was repeatedly asked to refrain from taking adverse action against Winn-Dixie.

11.   At all times during the effective dates of the Service Agreement, Visagent provided all of the services required under the terms of the contract, was staffed and at the ready for all transactions that should have been facilitated pursuant to the terms of the Service Agreement and otherwise complied with all of its terms.

2

12.    Winn-Dixie never declared any non-compliance on the part of Visagent under the Service Agreement or expressed any dissatisfaction with the service or technology provided by Visagent.

13.    To this date, Winn-Dixie has not provided any explanation for its obvious breach of the Service Agreement.

14.    The Service Agreement terminated upon its own terms on June 25, 2004.

15.    On September 8, 2004, Visagent filed a lawsuit against Winn-Dixie in Duval County, Florida Circuit Court alleging breach of the Service Agreement.

16.    In its Answer, Winn-Dixie admitted the Service Agreement was duly executed on June 15, 2001 by both Winn-Dixie and Visagent.

17.    The Florida Circuit Court action was stayed pursuant to Winn-Dixie's Notice of Commencement of Bankruptcy Case filed in the Circuit Court action on March 7, 2005.

FURTHER THE AFFIAN SAYETH NAUGHT.

Signed under oath this 17 day of July, 2006.



I. Mark Rubin

COUNTY OF DUVAL

STATE OF FLORIDA

The forgoing instrument was acknowledged before me on the 17th day of July, 2006 By I. MARK RUBIN, who is personally known to me, has read the foregoing, and stated under oath that he knows the facts and matters explicitly set forth therein and alleged that each of said facts and matters are true and correct to the best of his personal knowledge.

Dana Chirumbolo
NOTARY PUBLIC

(SEAL)

DANA CHIRUMBOLO
MY COMMISSION # DD 330470
EXPIRES: July 18, 2008
Bonded Thru Notary Public Underwriters

3

EXHIBIT E

## AFFIDAVIT OF THOMAS BARR

STATE OF FLORIDA
COUNTY OF DUVAL

I, Thomas Barr, being first duly sworn, depose and say:

1.      I am a buyer for Winn-Dixie Stores, Inc. ("Winn-Dixie").  I have worked in Winn-Dixie's procurement department since 1989.  I was responsible for Winn-Dixie transactions on the secondary market from 1992 through today.

2.      I have personal knowledge of the facts below.

3.      Attached is a copy of the Service Agreement between Winn-Dixie and Visagent Corporation.  The Service Agreement had an effective date of June 28, 2001 and was for a three year term.

4.      With specified exclusions, the Service Agreement provided that Winn-Dixie would conduct all of its secondary market transactions for "full or truckload" quantities of consumer packaged goods "purchased or resold through the Internet or similar electronic means" through Visagent.

5.      I have been involved with carriers in shipping goods to and from Winn-Dixie for 20 years.  I am familiar with shipping terminology. The term "full or truckload" quantities, otherwise know as FTL or TL, means a truck that is full or nearly full.  Winn-Dixie did not intend for "full or truckload" quantities to include less that truckload (LTL) quantities

because Visagent's exchanges were not (and never were) capable of building truckload quantities.

6.     Winn-Dixie did not breach the Service Agreement.    In accordance with the Service Agreement, all of Winn-Dixie's transactions on the secondary market for consumer packaged goods purchased and resold through the Internet or similar electronic means during the term of the Service Agreement were transacted through Visagent.

7.     Visagent represented to Winn-Dixie that Visagent acted as "an independent, neutral third party for the online procurement and distribution of products" and that Visagent had "developed an internet based platform...for the purchase and sale of products..." (Agreement, page 2). By limiting the scope of the Agreement to goods purchased and resold through the Internet or similar electronic means, Winn-Dixie did not intend and did not agree that it would be precluded from buying and selling goods on the secondary market through faxed purchase orders, which was Winn-Dixie's traditional means of buying and selling on the secondary market.

8.     Winn-Dixie never used any information that Winn-Dixie obtained from Visagent, other than using Visagent's exchanges. Winn-Dixie did not share any information Winn-Dixie obtained from Visagent with anyone.

2

9.   Winn-Dixie never traded in the secondary market with anyone to whom Visagent introduced Winn-Dixie.

_____
Thomas Barr

Sworn and subscribed to before
me this 30ᵗʰ day of September,
2009, by Thomas Barr, who is
personally known to me.

_____
Notary Public

671065.1

3

# SERVICE AGREEMENT

THIS SERVICE AGREEMENT is made as of the 28th day of June 2001 [Agreement], by and between Visagent Corporation [Provider], a Florida corporation, having principal offices at 2107 Hendricks Avenue, Jacksonville, Florida, 32207 and Winn-Dixie Stores, Inc., [User], a Florida corporation, having principal offices at 5050 Edgewood Court, Jacksonville, Florida 32254.

WHEREAS, Provider is a corporation organized and existent in accordance with the laws of the State of Florida, and is in the business of providing services including but not limited to the facilitation of eCommerce business-to-business transactions to the retail grocery industry by and through the use of the Visagent Grocery Exchange [Exchange];

WHEREAS, User is a corporation organized and existent in accordance with the laws of the State of Florida, and is in the business of retail grocery operations;

WHEREAS, the parties entered into a Letter of Intent and a Confidentiality Agreement on April 24, 2001;

WHEREAS, Provider and User desire to enter into this Agreement as more fully described below.

NOW, THEREFORE, for and in consideration of the mutual agreements herein contained, it is hereby agreed as follows:

**Term:** The term of this Agreement shall commence on the date specified above and shall remain in effect for a period of three (3) years unless terminated due to a breach of this Agreement or the Confidentiality Agreement as set forth below. This Agreement may be renewed for additional one-year terms by written agreement of the parties entered into not less than ninety (90) days prior to the expiration of this Agreement.

**User Agreement:**    It is the intent of the parties that the terms of this Agreement shall supercede and prevail over any inconsistent or ambiguous provisions in the Rules of the Exchange and the Definitions, both of which are part of the User Agreement attached hereto as Exhibit "A" and incorporated by reference. If Provider desires to amend the User Agreement by posting changes or an amended User Agreement on the Visagent Grocery Exchange, Provider agrees to give prior or simultaneous written notice of same to User. As to User, if the amendments are acceptable, they shall be deemed in full force and effect from the date of posting. If User determines that such amendments are unacceptable, User shall provide written notice of same to Provider within ten (10) days after receipt of Provider's notice. If the parties are unable to reach agreement on the proposed amendment within ten (10) days thereafter, User shall have the right to terminate this Agreement immediately at such time.

**Services:**    The services to be provided hereunder are those described in this Agreement, supplemented by the terms and conditions in the User Agreement posted on the Visagent Grocery Exchange to the extent they do not conflict with the terms and conditions herein.

During the term of this Agreement, Provider agrees to provide for User access to an Internet e-commerce Exchange, substantially similar to Version 1.4 of the Visagent Grocery Exchange, as

1

EXHIBIT
WD 246

previously tested by User, and such other software solutions and logistics services that will allow User to secure and distribute products for its business. All services provided by Provider shall be at a level equal to or above the standard of the industry. If Provider discontinues, modifies or changes any presently available service or content on the Exchange, in whole or in part, and User reasonably determines that such change has a detrimental or negative effect upon User's use of the Exchange, User shall provide written notice of same to Provider. If Provider fails to remedy such change to the satisfaction of User within ten (10) days thereafter, User shall have the right to terminate this Agreement immediately at such time.

The basis of the Provider's business is as follows:

> *Visagent acts as an independent, neutral third party for the online procurement and distribution of products that are included in the User's normal business operations. As such, Visagent has developed an Internet based platform [Exchange] which allows for the facilitation and coordination of anonymous communication between buyers and sellers for the purchase and sale of products and the provision of logistics and banking services associated with completing end-to-end transactions. The Exchange provides a venue for sellers to post products they have available for sale [Availables] and for buyers to purchase products or post inquiries for items they want to purchase [Lookfors]. Visagent posts rules, policies and other conditions of use for the Exchange and its users. Each user is responsible for making its own determination as to whether to effect or consummate a transaction posted on the Exchange. At no time does Visagent hold title to any products bought or sold on the Exchange.*

**Scope of this Agreement:** This Agreement is intended to cover all of User's business transactions for full or truckload quantities of consumer packaged goods purchased or resold **[through the Internet or similar electronic means]** in a wholesale format, excluding purchases by User from the original manufacturer or its authorized representatives. For the Term of this Agreement, User will not employ or contract for the services of an entity other than Provider for its eCommerce transactions covered under the scope of this Agreement.

Exclusions: The following transactions are specifically excluded from the scope of this Agreement unless such transactions are facilitated through the Exchange.

-Product movement between Winn-Dixie distribution centers or Winn-Dixie contracted distribution centers.
    -Direct User purchases for less than full or truckload quantities obtained from the inventory of wholesalers, which, as of the date of this Agreement, are providing electronic data transmissions detailing "in-stock" product availability.

    -Direct User transactions with the following entities:
        Victory Wholesale Grocers up through and including July 1, 2002
        WorldWide Retail Exchange
        intesource, Inc.

**Fees:** User as a Buyer: For all Exchange transactions in which User is a Buyer, the fee for Provider's services shall be included in the total Buyer's Product Cost and limited to two (2) percent of the sum of Seller's Product Price plus Deal Costs.

User as a Seller: For all Exchange transactions in which User is a Seller, Provider's Service Fee is included in the Buyer's Product Cost.

2

Provider Fees do not include Deal Costs or items contained in the Schedule of Fees, as outlined in the User Agreement. All transactions are calculated as follows:

Seller's Product Price + Deal Costs x .02 = Buyer's Product Cost

**Service Level:**    Provider reserves the right to perform scheduled maintenance and to deploy enhancements, modifications and fixes [collectively, Maintenance] to the Exchange, as necessary. All Maintenance shall be performed on the following default schedule: Sunday, Saturday, non-peak weekday hours of the Exchange.

Use of the Exchange is based upon Internet Server availability and is subject to agreements by and between Provider and third-party vendors in the business of providing Internet bandwidth and hosting services. Provider is not in the business of providing these services and accordingly cannot warrant availability beyond the contractual responsibilities of third-party vendors. Provider may use multiple Internet Service Vendors during the Term of this Agreement. The current primary Internet Service Vendor has a national availability service level of 99.9% for the type of service required by Provider.

Third-party service levels notwithstanding, Provider shall provide Exchange access to User for a minimum of 90% of the time in any calendar month, including downtime and maintenance.

If Provider fails to meet the minimum service levels stated herein, or fails to provide services at or above the standard of the industry, User shall provide written notice of same to Provider. If Provider fails to remedy such service problem to the satisfaction of User within ten (10) days thereafter, User shall have the right to terminate this Agreement immediately at such time.

**Antitrust:**    The parties hereto believe strongly in competition. Federal and state antitrust laws are the rules under which competitive systems operate. It is the intent of the parties hereto to comply in all respects with the antitrust laws, and each party further agrees to conduct its business transactions contemplated by this Agreement, accordingly.

**Confidentiality:**    The *Mutual Confidentiality and Non-Disclosure Agreement* executed by the parties on April 24, 2001 [Confidentiality Agreement], is incorporated by reference into this Agreement and designated as Exhibit "B" hereto. In the event the Term of this Agreement is renewed, the parties hereby agree to amend the term of the Confidentiality Agreement so that it extends three (3) years after the expiration of this Agreement.

**Termination:** User shall have the right to terminate this Agreement (i) upon breach by Provider of any term or condition of this Agreement, subject to the specific notice and cure provisions, if any, set forth herein; (ii) upon breach by Provider of any term or condition of the User Agreement, subject to specific notice and cure provisions set forth therein; or (iii) immediately upon breach by Provider of the Confidentiality Agreement. Termination of this Agreement shall not relieve or release either Party from any liability incurred prior to the termination of the Agreement or the Confidentiality Agreement.

**Disputes:**    In the event that User has a dispute with a third party regarding a transaction arising out of use of the Exchange, User agrees to abide by the Rules of the Exchange for the resolution process thereof.

3

**Indemnification:** The parties intend that the following Indemnity shall replace and supercede, in its entirety, the "indemnity" section set forth in the User Agreement:

User agrees to defend, indemnify and hold harmless Provider, its directors, officers, employees, and agents from and against any and all claims, costs, expenses, demands and damages (including reasonable attorneys' fees)  arising out of, resulting from or incurred in connection with User's improper or negligent use of the Exchange, User's breach of this Agreement or the User Agreement or User's dispute with a third party regarding a transaction through the Exchange,  except for disputes that arise out of the negligence or breach of this Agreement or the User Agreement by Provider or other third party.

IN NO EVENT AND UNDER NO CIRCUMSTANCE, LEGAL THEORY, TORT, CONTRACT OR OTHERWISE, WILL USER BE LIABLE TO PROVIDER OR ANY OTHER PARTY FOR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF GOODWILL, LOSS OF POTENTIAL REVENUES, LOSS OF BUSINESS OPPORTUNITIES, PROFITS, BUSINESS INTERRUPTION, WORK STOPPAGE, COMPUTER FAILURE, LOSS OF PROGRAMS OR INFORMATION OR MALFUNCTION OR ANY AND ALL OTHER COMMERCIAL DAMAGES OR LOSSES OR ANY OTHER DAMAGES ARISING IN ANY WAY FROM USER'S ACCESS TO OR USE, OR ANY COMMERCE CONDUCTED BY OR THROUGH THE EXCHANGE, EVEN IF USER HAD BEEN INFORMED OR ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN ANY STATE OR JURISDICTION THAT DOES NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR INCIDENTIAL OR CONSEQUENTIAL DAMAGES, USER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW.

Provider shall have the right, at its own expense, to participate in the defense of any action or matter subject to indemnification by User hereunder. User agrees to keep Provider reasonably informed about the defense of such matters, and to confer with Provider prior to taking any action in settlement, compromise or other disposition of such matter.

**Miscellaneous:**      This Agreement (including the other agreements and documents referenced herein) constitutes the entire understanding and agreement of Provider and User with respect to the subject matter of this Agreement, and contains all of the covenants and agreements of Provider and User with respect to this Agreement.  Provider and User each acknowledge that no representations, inducements, promises or agreements, oral or written, have been made by Provider or User, or anyone acting on behalf of Provider or User, which are not referenced or contained in this Agreement, and any prior agreements, promises, negotiations or representations with respect to the subject matter of this Agreement, whether written or oral, not expressly set forth in this Agreement are of no force or effect.  This Agreement may be amended or modified only by a writing signed by all parties to this Agreement.

If any party to this Agreement shall bring any suit or action against another for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party at trial and on appeal shall be entitled  to recover against the other party, in addition to all court costs and disbursements, such sums as the court may adjudge to be  reasonable attorney's and paralegal fees.

This Agreement shall be governed by and construed under the laws of the state of Florida without regard to principles of conflict of laws.  The parties irrevocably consent to the jurisdiction

4

and venue of the state courts located in Duval County, Florida in connection with any action relating to this Agreement, except as otherwise specified herein.

The terms and provisions of the Agreement are confidential and proprietary and shall not be disclosed by either Party without the express written consent of the other unless specifically, and only to the extent, required by law.

This Agreement may be signed in counterparts, each of which shall be deemed to be an original and both of which shall constitute one Agreement.   Facsimile signatures shall be deemed acceptable and binding.

Each party represents it has all requisite legal power and authority and has taken all action necessary or appropriate to enter into this Agreement and that its representative executing this Agreement is duly empowered to do so.

THE PARTIES have caused this Agreement to be executed by their duly authorized representatives.

Visagent Corporation                              Winn-Dixie Stores, Inc.

By: _____          By: _____
        I. Mark Rubin                                      Name Printed: _Philip H. Payudeast Jr._
        Chief Executive Officer                       Title: _V.P. Director of Grocery Procurement_

Date: __6-15-01__                               Date: __6-15-01__

5

## Certificate of Service

I certify that a copy of the foregoing document was furnished electronically through the Court's CM/ECF electronic notification system to **Guy Bennett Rubin, Esq.**, Rubin & Rubin, Post Office Box 395, Stuart, Florida 34995, this 30th day of September, 2009.

/s/ Timothy R. Buskirk
Attorney

668293.3