UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 05-03817-3F1 |
| | : | |
| WINN-DIXIE STORES, INC. et al | : | Chapter 11 |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

**VICTORY WHOLESALE GROCERS EMERGENCY MOTION FOR PROTECTIVE
ORDER REGARDING DISCOVERY OF VISAGENT CORP.'S SUBPOENAS AND
DISCOVERY
AND
EMERGENCY HEARING REQUESTED ON OR BEFORE DECEMBER 1, 2009**

Victory Wholesale Grocers ("Victory") moves this Court pursuant to Bankruptcy Rules

26(C)(1)(A) and (G) for a Protective Order with respect to Visagent Corp.'s subpoena for

deposition duces tecum of Victory's employee, Michael Kresser, for December 3, 2009 and

Visagent Corp.'s subpoena for deposition duces tecum of Victory for February 2, 2010.  In

support thereof, Victory would show this Court as follows:

1.      This Emergency Motion is timely because Visagent's counsel first provided

Victory with the subpoenas at 10:29 a.m. on Monday, November 23, 2009, and counsel for the

witnesses and Victory's corporate representative are travelling November 25, 2009 through

November 29, 2009 for the Thanksgiving holidays.

2.      Victory is not a party to the contested matter dispute between Visagent and the

Debtor.

3.      Pursuant to this Court's Consent Protective Order Regarding Documents

Produced by Victory and Food Marketing Group to Visagent Corporation dated May 12, 2008

(the "Protective Order"), on May 14, 2008, Victory produced to Visagent all of Victory's

documents in Victory's possession related to Visagent's dispute with the Debtor, other than the

individual transaction level sales documentation, for which a sales summary was provided.

(Bates Number VWG1000421-VWG1000550)  Victory subsequently produced to Visagent

another document in the possession of a Victory employee that appeared relevant to Visagent's

contested matter (collectively, the "Previously Provided Documents").

4.      With Victory's full cooperation, Visagent subpoened the depositions duces tecum

of the Rule 30(b)(6) representative of Victory and Victory's employee, Robert Carlson, both for

July 30, 2009 at the offices of Victory's attorney, Strauss & Troy, in Cincinnati, Ohio.  Visagent

subsequently reached a stipulation agreement with Debtor's counsel regarding the authenticity of

the Victory documents and, therefore, Visagent cancelled the Rule 30(b)(6) deposition of

Victory's representative.  However, Victory's Rule 30(b)(6) representative attended Mr.

Carlson's deposition and spoke on the record regarding Victory's production of documents.  (See

Exhibit A – portion of July 30, 2009 Deposition Transcript, beginning on page 148).

5.      Based on Mr. Carlson's testimony, Visagent requested the opportunity to depose a

second Victory employee, Michael Kresser.  Victory agreed to produce Mr. Kresser at the

requested December 3, 2009 date, provided that the deposition occur in Victory's offices and

provided further that Victory not be subject to the burden and harassment of a third, Rule

30(b)(6) deposition of Victory's representative.

6.      On Monday November 23, 2009 at 10:29 a.m., Visagent's counsel provided

Victory's counsel with a copy of Visagent's unserved subpoenas for Mr. Kresser to appear for

deposition duces tecum for December 3, 2009 at a location in Cincinnati Ohio other than

Victory's office and a second subpoena for deposition duces tecum for Victory's Rule 30(b)(6)

representative for February 2, 2010 at a location in Cincinnati, Ohio other than Victory's offices.

7.      The subpoena for the Rule 30(b)(6) representative of Victory does not indicate the topics of questions to be addressed to Victory's representative.  On information and belief, Victory's Rule 30 (b)(6) representative will not be able to provide any additional material information relating to Visagent's pending dispute with the Debtor that could not have been previously provided in the prior deposition of Mr. Carlson on July 30, 2009 and Mr. Kresser's deposition on December 3, 2009.  Moreover, Victory has previously produced, pursuant to subpoena, the Previously Provided Documents, which constitute all of Victory's documents related to the Visagent's dispute with the Debtor other than the individual transaction level sales documentation, for which a sales summary was provided.

8.      Victory is willing to produce Mr. Kresser for deposition on December 3, 2009 as previously scheduled with counsel for Visagent and the Debtor provided that the deposition occurs at Victory's office at 400 Victory Drive, Springboro, Ohio which is right off of Interstate 75 and conveniently located approximately 30 miles from the Dayton Ohio airport and approximately 50 miles from the Cincinnati Ohio airport (both of which are convenient to Interstate 75).  Victory's offices will provide comfortable accommodations for the parties' attorneys and will be more convenient for the witness and provide better access to Victory's records and files.

9.      On information and belief, Visagent's counsel's selection of the location of the December 3, 2009 deposition, over the objection of Victory's counsel, is intended to burden and harass Victory and Visagent's counsel's effort to set a third date for a Rule 30(b)(6) deposition of Victory's corporate representative, after cancelling the prior Rule 30(b)(6) deposition when the Victory representative was present, is intended to burden and harass Victory and make the process more expensive than necessary.

3

## REQUESTED RELIEF

10.     For the reasons set forth above, Victory respectfully requests a Protective Order specifying that (i) the deposition of Michael Kresser on December 3, 2009 shall occur at the offices of Victory at 400 Victory Drive, Springboro Ohio, (ii) that the Rule 30(b)(6) deposition of Victory's representative either be cancelled or occur on December 3, 2009 at Victory's offices and (iii) Victory's Previously Provided Documents shall suffice for the production of documents upon the representation of Victory that these are all of the documents relevant to the Visagent Debtor dispute in its possession, other than transaction level sale documents for which an accurate summary has been previously provided.

### Certificate of Necessity for Emergency Relief

11.     The emergency nature of this Motion is required because counsel will be travelling this week for the Thanksgiving holidays and counsel and witnesses need to know how to prepare their schedule with respect to the December 3, 2009 deposition.  Therefore, Victory requests a hearing on or before December 1, 2009.

12.     Victory notes that the subpoena has not yet been served, but failure to act preemptively will only occasion a future request on more of an emergency basis.

13.     It will be an extreme waste of resources and money to require two separate trips to Ohio for depositions of Mr. Kresser on December 3, 2009 and Victory's Rule 30(b)(6) representative on February 2, 2010.

14.     Counsel for Victory and Visagent have conferred in good faith in an effort to resolve this discovery dispute, but have been unsuccessful.

Dated:  November 23, 2009

                                        FOLEY & LARDNER LLP
                                        /s/ Gardner F. Davis
                                        Gardner F. Davis

4

JACK_1691398.1

5

Florida Bar No. 0471712
gdavis@foley.com
John J. Wolfel, Jr.
Florida Bar No. 030664
jwolfel@foley.com
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
P. O. Box 240
Jacksonville, FL 32201-0240
904.359.2000

Counsel to Victory Wholesale Grocers

5

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the Emergency Motion have been furnished

by e-mail to the following parties on the 23rd day of November 2009.

Rubin & Rubin
Attn:  Guy Bennett Rubin and Gladys LaFargo
P.O. Box 395
Stuart Florida 34995
glaforge@rubinandrubin.com
guy.rubin@rubin&rubin.com

Smith Hulsey & Busey
Attn:  Stephen D. Busey and Jim Bolinng
225 Water Street – Suite 1800
Jacksonville FL 32202
jbolling@smithhulsey.com
busey@smithhulsey.com

FOLEY & LARDNER LLP
/s/ Gardner F. Davis
Gardner F. Davis

6

7

## EXHIBIT A

**(see attached)**

JACK_1691398.1

Page 1

UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

IN RE:                                        )
                                              )
                                              )
WINN-DIXIE STORES, INC., et al.,              )    CASE NO.
                                              )    05-03817-3F1
        Debtors.                              )
                                              )
                                              )

TRANSCRIPT MARKED CONFIDENTIAL

PURSUANT TO PROTECTIVE ORDER

Deposition of:  ROBERT CARLSON

Pursuant to:    Notice

Date and Time:  Thursday, July 30, 2009
                9:55 a.m.

Place:          Strauss & Troy, LPA
                The Federal Reserve Building
                150 East Fourth Street
                Cincinnati, Ohio   45202-4018

Reporter:       Connie M. Williams, RPR
                Notary Public - State of Ohio

**COPY**

Page 146

1  20 items, is that consistent with your recollection of
2  what was requested?
3       MR. BOLLING: Objection.
4       A. I'm not sure about that.
5  BY MR. G. RUBIN:
6       Q. Okay. Are you sure about any of these four
7  items that are indented?
8       A. I'm not sure where it's placed, but I do
9  recall one item that specifically I remember from this
10  meeting, and that was because I got chewed out for it
11  by Tom. But it was in regards to having product
12  available on our system, based on price, when it was
13  offered to Winn-Dixie from a diverter, once that
14  product was exhausted, Tom wanted it denoted that the
15  buyer then was looking at the person that had the
16  second best price.
17       Q. Okay.
18       A. And that's -- quite honestly, that's the
19  only one that I remember.
20       Q. Okay. After those indented items, it says,
21  In addition to the above, we confirmed that the
22  integration of NTS with Biceps will be fairly
23  seamless.
24       Do you recall -- I think earlier you said
25  that you weren't sure, and maybe now, since you have

Page 147

1  been answering questions about this relationship,
2  maybe your memory is a little bit sharper. Do you
3  remember now whether NTS was integrated with Biceps?
4       A. No.
5       MR. BRINN: Objection.
6  BY MR. G. RUBIN:
7       Q. It says in the next paragraph, Upon Fred's
8  submission of the technical specifications for the
9  above items, Victory's NTS programmers began to make
10  necessary software changes to get them implemented.
11  We have been communicating the status of these changes
12  to Tom Barr and Victory on-site staff.
13       That would be you, correct?
14       A. That could be me.
15       Q. Okay. Do you recall that there was
16  communication from Victory IT that they were making
17  changes to the system?
18       A. No, I don't.
19       Q. No. And then in the last paragraph it says,
20  We would like to re-extend our offer to fly you and
21  other Winn-Dixie management staff to see and tour our
22  company headquarters in Ohio.
23       To your knowledge, was there ever such a
24  meeting where Winn-Dixie people flew to the
25  headquarters?

Page 148

1       A. No.
2       MR. G. RUBIN: Take a look at that.
3       MR. OFFICE: If he doesn't object, I can
4  just look at that.
5       MR. G. RUBIN: Yeah.
6       MR. BOLLING: Can you read it out loud, Jim?
7       MR. OFFICE: It's an e-mail from Gardner
8  Davis of Foley & Lardner, who is our counsel in
9  Jacksonville, dated Thursday, July 23rd, at
10  9:25 a.m., to Gladys LaForge and Jim Bolling and
11  cc Guy Rubin, Kristin Gallas and me, subject,
12  Visagent and Winn-Dixie, Robert Carlson and
13  Victory document authentication depositions.
14  Gladys and Jim, on behalf of Victory, I represent
15  that the documents produced by Victory came from
16  Victory files. Victory produced them pursuant to
17  Visagent's subpoena and my follow-up conversation
18  with Gladys agreeing that Victory would only look
19  for documents going to the actual dispute in
20  litigation. I attached a copy of the protective
21  order entered in connection with prior document
22  production. Victory requests that the parties
23  agree that the deposition testimony will also be
24  covered by and subject to the provisions of the
25  protective order. Thanks, Gardner Davis.

Page 149

1       And I concur with that statement that the
2  documents came from our files and were produced
3  and they were produced in connection with
4  agreements that were made between Gardner Davis
5  and your associate, Gladys, at the time we
6  responded to the subpoena.
7       MR. G. RUBIN: Thank you.
8       Jim, are you in a position to also state
9  that those documents came from the Victory files,
10  which are the regular business records of
11  Victory?
12       MR. OFFICE: I'd have to -- I can't say that
13  because some of these came from individual's
14  files, and what constitutes Victory's business
15  records, from my experience being in-house
16  counsel at Victory for almost 16 years, I would
17  say some of those don't appear to be Victory
18  records. They appear to be individual's notes.
19  Okay? Some of them are Victory's business
20  records.
21       MR. BOLLING: I'd like for you to look into
22  the rule as to what -- business records is a
23  loaded term -- before you stipulate to whether or
24  not they're business records, I would ask that
25  you look at the rule on what constitutes business

Page 150

1    records.
2        MR. OFFICE: Well, for example, the
3    agreement, there's a signed agreement between
4    Victory --
5        MR. BOLLING: That's fine.
6        MR. OFFICE: -- and Winn-Dixie. I consider
7    that a business record. There are notes of a
8    meeting that an individual took, and I would
9    consider that somebody's personal notes. They're
10   just recording things that they might have said
11   or heard. We don't generally consider notes
12   being business records in our business.
13       MR. G. RUBIN: Right. But you would
14   agree that --
15       MR. OFFICE: But we did produce them. They
16   were in -- I asked our employees -- I asked our
17   employees if they had any documents relating to
18   Winn-Dixie and Visagent and/or us and Visagent,
19   and I, in turn, produced them to you.
20       MR. G. RUBIN: And to the best of your
21   knowledge, those documents that were handed in by
22   employees were from files that they kept in the
23   scope of their employment?
24       MR. OFFICE: That they kept -- well, in the
25   scope of their employment. We don't have any

Page 151

1    policy with respect to individuals keeping or not
2    keeping notes. To some degree, we're commodities
3    traders, and once you buy and sell a case, the
4    paperwork is really just maintained for the IRS
5    and -- the transaction's being completed.
6        So, historically, I would consider our
7    business records to be contracts, transactional
8    documents, notes individuals may keep. They were
9    in individual's files that the individuals kept.
10   They weren't documents that we have a policy for
11   anybody to keep, but we produced them
12   nonetheless. And I am telling you that they
13   contain the documents in Victory's offices.
14       MR. G. RUBIN: Okay. That's fine okay.
15       (Exhibit 12 was marked for identification.)
16   BY MR. G. RUBIN:
17       Q. Let me show you what we'll mark as
18   Exhibit 12. I'm now referring to VWG 1000475 through
19   483 -- no. I'm sorry. Make sure I'm giving you the
20   same thing here. There's just extra pages that I'm
21   going to take off. It's in there twice.
22       MR. BOLLING: What pages are these?
23       MR. G. RUBIN: 472 through 483.
24       MR. BRINN: 475 to 483.
25       MR. G. RUBIN: That's correct.

Page 152

1        MR. BOLLING: 472 to what now?
2        MR. G. RUBIN: I'm sorry. 475. Here you·
3    go.
4        MR. BOLLING: This is BC 12?
5        MR. G. RUBIN: 12.
6    BY MR. G. RUBIN:
7        Q. Do you recognize the handwriting on the
8    front of that one?
9        A. No.
10       MR. G. RUBIN: While he's looking at that,
11   let me just also state for the record that the
12   documents that were produced that are the subject
13   of the comments that you just acknowledged, I
14   just want to state what the full Bates stamp
15   range is, and we're going to put this in as a
16   composite exhibit at the end so you can follow
17   through. As a matter of fact, we probably should
18   do it now and still let you look on.
19       MR. OFFICE: You're marking this exhibit as
20   Bates number VWG 475 through --
21       MR. G. RUBIN: No. I'm talking about the
22   whole group that we just discussed.
23       MR. OFFICE: Oh, the entire package?
24       MR. G. RUBIN: The entire packet, I want to
25   make sure that's an exhibit.

Page 153

1        MR. OFFICE: Assuming that within this
2    packet -- I haven't looked at every document --
3    is VWG 1000421 through 1000550, I don't have any
4    objection. There's a cover letter, also, from
5    Gardner Davis.
6        MR. G. RUBIN: Right. I'm just going to
7    make that entire packet --
8        MR. OFFICE: An exhibit?
9        MR. G. RUBIN: Let me just mark it now as
10   Exhibit 13.
11       (Exhibit 13 was marked for identification.)
12       MR. OFFICE: I mean, it's your deposition,
13   but you should ask Bob if he's ever seen these.
14       MR. G. RUBIN: Well, I can certainly do
15   that. He's already said he hasn't seen some of
16   them.
17       MR. OFFICE: Right.
18       MR. G. RUBIN: But I'm only marking them
19   because they're the subject of our conversation
20   and your comments on the record so we're clear
21   what group of documents you were talking about,
22   that's all.
23       MR. OFFICE: That's fine.
24       You only have one copy of this?·
25       MR. G. RUBIN: I don't need a copy because