UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**VISAGENT CORPORATION'S MOTION TO COMPEL MICHAEL R. KRESSER TO ANSWER QUESTIONS AND FOR AN ORDER CONTINUING HIS DEPOSITION AND FOR SANCTIONS AGAINST MICHAEL R. KRESSER, VICTORY WHOLESALE GROCERS, STUART C. BRINN, ESQ. AND JAMES R. OFFICE, ESQ.**

Visagent Corporation (hereinafter "Visagent"), a claimant herein, moves the Court pursuant to Federal Rules of Civil Procedure 26 and 37 and Local Rule 7037-1, for an order compelling MICHAEL R. KRESSER to respond to questions posed at his deposition held on December 3, 2009, for an order continuing his deposition and for an award of attorneys fees and sanctions including the costs to attend said deposition, against MICHAEL R. KRESSER, Victory Wholesale Grocers, Stuart C. Brinn, Esq. and James R. Office, Esq. In support of the motion, Visagent states:

1. Visagent, an unsecured creditor, holds Claim No. 9953 against Debtors in the sum of $131,875,000.00. The gravamen of Visagent's claims and Winn-Dixie's objections has been set forth to the Court on numerous occasions and will not be belabored in these prefatory remarks. However, it should be noted that one of the contentions under Visagent's breach of contract claim is that Winn-Dixie violated the terms of the Service Agreement, entered into between the parties on June 15, 2001 by entering into a contract with Victory Wholesale Grocers (hereinafter referred to "Victory") to provide E-commerce services. The Service Agreement provided that: "For

1

the Term of this Agreement, User will not employ or contract for the services of an entity other than Provider for its E-commerce transactions covered under the scope of this Agreement." Visagent also contends that Winn-Dixie appropriated proprietary trade secrets and breached the parties' confidentiality agreement in disclosing this information to Victory.

2. For several months, Visagent attempted to coordinate the deposition of Michael R. Kresser, Victory's Vice President and Chief Information Officer. Ultimately, the parties, including Victory's counsel, Gardner Davis, Esq. of Foley and Lardner, agreed that Mr. Kresser would be deposed on December 3, 2009 at Victory's headquarters in Springboro, Ohio.

3. The notice of deposition was originally issued on November 18, 2009 but it was re-noticed thereafter to change the location to accommodate Victory, its counsel and Mr. Kresser *after Victory filed its <u>Emergency Motion for a Protective Order Regarding Discovery of Visagent Corp.'s Subpoenas and Discovery</u> in this Court (Docket # 22768) thereby submitting itself and its employee, Mr. Kresser, to this Court's authority and jurisdiction regarding their conduct at said deposition.*

4. Based upon the filing of Victory's emergency motion for protective order, Victory and Visagent agreed to proceed only with the deposition of Michael R. Kresser. The deposition commenced on Thursday, December 3, 2009. In attendance at the deposition, were counsel for Visagent and Winn-Dixie, and for the witness and Victory, Stuart Brinn, Esq. of Strauss and Troy, LPA, and James R. Office, Esq., in-house counsel appeared.

5. As is customary and appropriate, Visagent's attorney inquired as to the means and timing of Mr. Kresser's preparation for the deposition, including, with whom he prepared and consulted. It was ascertained that Mr. Kresser and his counsel met with Winn-Dixie's attorneys the morning of the deposition for 30 to 60 minutes. (Deposition of Kresser, P. 11, L. 15 – L. 22)[1] Mr. Kresser also indicated that he had two (2) previous conversations with Winn-Dixie's attorneys, each lasting between 60 and 90 minutes. (Deposition of Kresser, P. 11 L. 23 – P. 12, L. 9) At the outset of the deposition, Victory's attorneys began a contentious series of objections and obstructionist behavior calculated to thwart legitimate inquiries, as follows:

```
6:12    Q.  Have you had any conversations with any of
6:13  the lawyers for Winn-Dixie concerning why we're here
6:14  today?
6:15    A.  Yes.
6:16    Q.  When did you have those conversations?
6:17    A.  They came in this morning.  I don't know the
6:18  exact dates and times, but --
6:19    Q.  More than just this morning?
6:20    A.  Yes.  I was with my counsel and there was
6:21  dialogue.
6:22    Q.  Okay.  Is that -- when you say dialogue, you
6:23  mean an interchange, conversation between you and the
6:24  Winn-Dixie lawyers?
6:25    A.  More through my attorney, but --
7:1       MR. OFFICE:  You're not to reveal the
7:2     discussions that took place.
7:3       MR. RUBIN:  You're claiming privilege for
7:4     conversations and meetings where people who are
7:5     not his attorneys were present?
7:6       MR. BRINN:  I will object to discussion of
7:7     any conversations on the basis of attorney/client
7:8     privilege and work product.
7:9       MR. RUBIN:  Work product in what regard?
7:10      MR. BRINN:  My client is entitled to prepare
7:11    for his deposition.
```

---

[1] The entire deposition transcript of Mr. Kresser is attached hereto as Exhibit 1. References to this deposition shall take the format Deposition of Kresser P. ___ L. ___)

3

7:12  MR. RUBIN: You understand work product is in
7:13  preparation for litigation? Are you preparing for
7:14  litigation?
7:15  MR. BRINN: No. I believe this is
7:16  litigation.
7:17  MR. RUBIN: You're not a party to the
7:18  litigation, though, so --
7:19  MR. BRINN: No.
7:20  MR. OFFICE: We are a creditor of the
7:21  Winn-Dixie bankruptcy estate.
7:22  MR. RUBIN: Okay. This is not an adversary
7:23  proceeding involving Victory. How can this be in
7:24  preparation for litigation?
7:25  MR. BRINN: We had this discussion at the end
8:1   of the last deposition, and I indicated I would
8:2   instruct him not to answer about conversations.
8:3   MR. RUBIN: With the Winn-Dixie lawyers
8:4   present in those meetings?
8:5   MR. BRINN: That's correct.

6. When Visagent's attorney asked if Winn-Dixie's attorney gave Mr. Kresser any documents to review prior to sitting for his deposition, Victory's counsel objected citing work product privilege:

9:20  Q. Did they provide any documentation for you to
9:21  look at, whether it was directly or through your
9:22  attorneys?
9:23  MR. BRINN: Objection.
9:24  MR. RUBIN: How is that a communication?
9:25  MR. BRINN: This is work product in preparing
10:1  for his deposition.
10:2  MR. RUBIN: I'm not asking what the documents
10:3  are. I'm asking if there were documents
10:4  provided.
10:5  MR. BRINN: You asked if there was a meeting
10:6  and he told you there was a meeting, yes. That's
10:7  all. Anything beyond that I don't think is
10:8  proper.
10:9  MR. RUBIN: So you're claiming privilege on
10:10  whether or not he was provided documentation to
10:11  look at prior to this deposition, just to be
10:12  clear?
10:13  MR. BRINN: Yes.
10:14  MR. RUBIN: Okay. Just so we're clear,

10:15    should we challenge these privileges, we are going
10:16    to ask for sanctions, which will include expenses
10:17    to come back up here to go through those
10:18    questions, just so we're all clear.

7. Victory's counsel made a standing objection that they would not permit Mr. Kresser to answer any questions concerning "any communication between Winn-Dixie lawyers and Mr. Kresser that were in the presence of Victory's lawyers." (Kresser Deposition, P. 12 L. 15 to L. 25; P. 194 L. 4 – L. 14) Victory's counsel would not even permit Mr. Kresser to answer any questions about whether he *had* a conversation with Winn-Dixie's attorneys, notwithstanding the content. (Kresser Deposition, P, 101 L. 13 – P. 102 L.4) Further still, Victory's counsel, this time Mr. Office, would not permit Mr. Kresser to answer questions regarding the format of documents he located and provided in response to Visagent's subpoena duces tecum to Victory; documents that he delivered to Victory's counsel which were in turn provided to Visagent:

190:16   Q.  Did you supply to your attorneys the -- this
190:17   discovery that you've identified as, you know,
190:18   responsive for Victory, did you provide that in e-mail
190:19   form to your lawyers?
190:20        MR. OFFICE:  Objection.
190:21        And I'll instruct you not to answer.
190:22        MR. RUBIN:  There's no communication there.
190:23   It's just what format.
190:24        MR. OFFICE:  It was at my direction.
190:25        MR. BRINN:  Objection.
191:1         MR. RUBIN:  I know.  But I'm not asking what
191:2    was communicated.  I'm asking how it was
191:3    delivered.
191:4         MR. OFFICE:  I've instructed him not to
191:5    answer that question.  Go ahead and ask your next
191:6    question.
191:7         MR. RUBIN:  So you will not allow him to
191:8    answer whether or not it was delivered to you in
191:9    hard copy or by e-mail or Internet, the way he
191:10   produced it to you?
191:11        MR. OFFICE: No.

5

| | |
|---|---|
| 191:12 | MR. RUBIN: That's obstruction. That's just |
| 191:13 | not right. |
| 191:14 | MR. OFFICE: Call the judge. |
| 191:15 | MR. RUBIN: We will. |

      8.     Victory continued on a course of interposing baseless legal objections thereby disrupting the deposition. When Mr. Kresser was being questioned on his definition of the term "E-commerce," Mr. Office, for Victory continued his obstruction and interference with the deposition as follows:

MR. OFFICE: Objection. Could we interrupt
| | |
|---|---|
| 74:17 | for a second here? Mike Kresser is not an expert |
| 74:18 | on eCommerce or the Internet or whatever |
| 74:19 | electronic thing you're trying to establish. |
| 74:20 | We're here and we're happy to answer questions |
| 74:21 | about Victory's business as it relates to |
| 74:22 | Winn-Dixie. |
| 74:23 |    If you're going to continue down this path, |
| 74:24 | we're going to instruct him not to answer these |
| 74:25 | questions. You seem to be wanting to use him as |
| 75:1 | an expert and you're asking him what terms mean in |
| 75:2 | a -- in a highly technical, highly complex system. |
| 75:3 | And we didn't prepare him as a witness for that, |
| 75:4 | and this is not Victory's testimony as it relates |
| 75:5 | to those topics. |
| 75:6 |    MR. RUBIN: He is not Victory. He is Mike |
| 75:7 | Kresser. |
| 75:8 |    MR. OFFICE: I'm going to instruct him not to |
| 75:9 | answer if you continue to ask him these general, |
| 75:10 | open-ended questions that have nothing whatsoever |
| 75:11 | to do with Victory's business with -- with |
| 75:12 | Winn-Dixie. |
| 75:13 |    MR. RUBIN: Okay. I'm sure you'll let me |
| 75:14 | know if you're instructing him not to answer. |

     Mr. Office made the same frivolous objection when Mr. Kresser was questioned about the definition of "truckload," alleging that simply because the witness was asked questions about a certain topic, Visagent was trying to mold him into an "expert." (Kresser Deposition, P. 83 L. 8 – P. 84 L. 9)

9. The gamesmanship by the Victory attorneys was palpable and shameful given the numerous federal case law opinions over decades addressing obstructionist tactics at deposition. Although counsel for Victory chose the date and location of the deposition, the same counsel insisted that Mr. Kresser would not be available to continue the deposition after 5:15 p.m., in an effort to deprive Visagent of a full and complete of Mr. Kresser:

```
132:18  MR. OFFICE: By the way, it's ten till 4:00
132:19     and we're going to adjourn at 5:00, maybe go to
132:20     5:15, so you can plan your time accordingly. We
132:21     have other commitments.
132:22        MR. RUBIN: This deposition was scheduled to
132:23     go until its completion.
132:24        MR. OFFICE: You started late.
132:25        MR. RUBIN: We started at about three minutes
133:1      after 10:00.
133:2         MR. OFFICE: Not according to seven watches
133:3      in this building.
133:4         MR. RUBIN: We entered the building right at
133:5      10:00, I know that. So if you want to count five
133:6      minutes --
133:7         MR. OFFICE: We were sitting here at ten
133:8      after 10:00 all commenting on your not being
133:9      here.
133:10        MR. RUBIN: Listen, you can play the games if
133:11     you want to play the games. We're entitled to
133:12     seven hours and we'll take the seven hours. We
133:13     haven't --
133:14        MR. OFFICE: I'm just telling you you have --
133:15     right now it's ten till 4:00, and you can keep
133:16     going and just ask your questions.
133:17        MR. RUBIN: Can you tell us right now how
133:18     much time we've actually had in testimony?
133:19        THE REPORTER: I can do that at the next
133:20     break.
133:21        MR. RUBIN: Then we'll do that.
133:22        MR. OFFICE: Can you tell us what time we
133:23     started?
133:24        THE REPORTER: We started at 10:12.
133:25        MR. OFFICE: So it was not 10:03.
134:1         MR. RUBIN: That's really big of you.
```

Victory continued to quibble about the timing of the deposition and accused Visagent's attorney of asking questions "that are totally irrelevant and have nothing to do with Victory's relationship with Winn-Dixie" and asked to "move it along so he (Mr. Kresser) can get to his family commitments." (Kresser Deposition, P. 154 L. 5 – P. 155 L. 12) Similar comments were repeated throughout the deposition. (Kresser Deposition, P. 183 L. 5 – L. 15) Victory also continued to interrupt Visagent's attorney, propounding narratives and rephrasing his questions. (Kresser Deposition, P. 160 L. 24 – P. 161 L. 25) Visagent's counsel ultimately suspended the deposition.

10. Victory's objections and directives to the witness not to answer questions based on attorney-client privilege and work-product were totally misplaced and unsupported by law. Moreover, the behavior of Victory's attorneys in interfering with Visagent's deposition was so egregious as to warrant sanctions against them personally.

11. The Federal Rules of Civil Procedure allow discovery of any relevant, non-privileged material that is admissible or reasonably calculated to lead to admissible evidence. Fed.R.Civ.P. 26(b)(1). Relevant information as to any claim or defense need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. The scope of discovery is very broad and the burden is on the party objecting to the requested discovery to describe with particularity the reasons for the objections. Palmer v. Westfield Insurance Company, 2006 WL 2612168 (M.D. Fla., 2006). The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embodies a fair and just result. United States v. Procter & Gamble Co., 356

U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); Pensacola Beach Community United Church, Inc. v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Slip Copy 2007 WL 737499 (N.D. Fla., 2007). Discovery is expected to be accomplished voluntarily with minimal judicial intervention unless a dispute arises and one of the parties files a motion requiring judicial review. AARP v. Kramer Lead Marketing Group, 2005 WL 1785199 (M.D. Fla., 2005).

12. Rule 45 permits a party to procure discovery from a non-party through the issuance and service of a subpoena. Indeed, a properly issued and served subpoena provides a court with jurisdiction over a non-party witness within the court's territorial jurisdiction with respect to the discovery requested in the subpoena. Rule 45(a) (2) (B) authorizes a party to compel a non-party to appear and provide deposition testimony. While Rule 45(e) governs the issuance of sanctions against a non-party for failure to obey a subpoena, a party's failure to participate in discovery is governed by Rule 37. Hernandez v. Tregea, 2008 WL 3157192 (M.D. Fla., 2008)

13. Rule 30(d) (1), Federal Rules of Civil Procedure, provides for objections "only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4). Indeed, the amendments to Rule 30, Federal Rules of Civil Procedure, effective December 1, 2007, specifically provide that all objections should be noted on the record, "but the examination still proceeds; the testimony is taken subject to any objection." [See Proposed Amendment of Rule 30, 2007 Revised Edition, Federal Civil Judicial Procedure and Rules]. The amended rule merely codified what has long been the safer practice of counsel to continue with the deposition or seek court intervention before terminating the deposition because a later finding that

the objection was not well taken could be far costlier than proceeding with the examination and filing motions later to prohibit the use of any objectionable testimony. "All objections made at the time of the examination... shall be noted... upon the record of the deposition; but the examination shall proceed, with the testimony being taken subject to the objections." Fed.R.Civ.P. 30(c). "A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3)." Fed.R.Civ.P. 30(d)(1)." [FN3] "[T]he party resisting discovery has the burden of supporting its position." Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 558 (S.D.N.Y.1994).

14.     All objections, but for those based on privilege, are to be noted on the record, but the deponent is required to answer. This exact point was addressed in Gould Investors, L.P. v. General Ins. Co. of Trieste & Venice, 133 F.R.D. 103 (S.D.N.Y.1990). In Gould Investors, an insurance case, an electrical consultant deposed as a fact witness, was instructed by counsel for the insured not to answer questions about his opinion as to possible causes of the fire that was at issue. Finding that the information sought was relevant, the court concluded that it was improper for Gould's counsel to direct the witness not to answer. "If counsel objects, the objections should be noted and the testimony should be taken subject to the objections." Id. at 104) See also In re Alexander Grant & Co. Litig., 110 F.R.D. 545, 548 (S.D.Fla.1986) (deposition questions allowed on CPA's present opinion, belief and understanding of certain accounting standards, and whether specific audits met these standards); United States v. Ranney, 719 F.2d 1183, 1187-88 (1st Cir.1983) (hypothetical questions about what investors would have done under certain circumstances allowed.) Counsel may instruct a deponent not to

answer only under the following circumstances: (1) when necessary to preserve a privilege, (2) to enforce a limitation on evidence directed by the court, or (3) to protect a witness from an examination being conducted in bad faith or in such a manner as to unreasonably annoy, embarrass or oppress the deponent. Gober v. City of Leesburg, 197 F.R.D. 519, 520 (M.D. Fla., 2000); Geico Casualty Company v. Beauford, 2006 WL 2789013 (M.D. Fla., 2006).

15. The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential. Bogle v. McClure, 332 F.3d 1347, 1358 (11th Cir., 2003); Palmer v. Westfield Insurance Company, 2006 WL 2612168 (M.D. Fla., 2006). This privilege is narrowly construed and communications are only protected if at the time they were made, they were intended to remain confidential and, under the circumstances, were reasonably expected and understood to be confidential. Palmer, supra. Under the attorney-client privilege, confidential communications made by a client to an attorney to seek, obtain or provide legal services are protected from disclosure. Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed. 2d (1976); In re Tri-State Media Group, Inc., 283 B.R. 358, 54 Fed. R. Serv.3d 668 (M.D. Ga., 2002).

16. However, not all communications between an attorney and client are *per se* privileged. Communication of factual information is not protected by the attorney-client privilege. Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g., 230 F.R.D. 688, 690-691 (M.D. Fla., 2005). In Lockheed Martin Corporation v. L-3 Communications Corporation, 2007 WL 2209250 (M.D. Fla., 2007) (Page 4 of the opinion) the Court offered this analysis: "The client cannot be compelled to answer the

11

question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney." In addition, where information is communicated to a lawyer with the intent that the information be publicly disclosed, courts have found that the communications are not intended to be confidential. In re Hillsborough Holdings Corp., 118 B.R. 866, 869-70 (M.D. Fla, 1990). In Hillsborough, counsel for asbestos-related personal injury claimants sought to depose attorney who had prepared an opinion letter on whether the corporation which was involved in leveraged buyout had potential liability for asbestos-related personal injury claims asserted against corporation and its wholly owned subsidiary, to elicit underlying facts and circumstances on which attorney's conclusion stated in opinion letter was based. On motion for protective order, the Bankruptcy Court held that: (1) copies of judicial and administrative decisions, as well as records, reports, and certificates or documents which attorney stated in opinion letter he received to assist him in preparing letter were not protected by attorney-client privilege, and attorney would be required to reveal underlying facts on which his opinion was based, and (2) work product doctrine did not protect information concerning facts which formed basis of opinion stated by attorney in letter.

17.    In Sinclair v. Town of Yankeetown, 2007 WL 4414846 (N.D. Fla., 2007), at issue was a certain line of questioning of a party that was objected to and the witness was directed not to answer. "The questions posed by Plaintiff's counsel did not ask for any substantive information relating to a particular communication, she asked whether the attorney typically emailed communications to Council people both at their home and town hall addresses. No privileged information would be revealed by answering this line

of questioning, nothing would be elicited pertaining to legal advice of any kind, and the purpose of this line of questioning is germane to Plaintiff's claims regarding an alleged private computer networking system that was being utilized to avoid "Sunshine laws." Id. at P. 1. With regard to a non-party witness, who was told not to answer the question about what materials he used to refresh his recollections of the facts of the case, the Court found that the question, as posed, should have been answered. The question as posed did not ask for work product, although it could have included such material. The Plaintiff was given leave to depose these two parties at the at Defendants' expense.

18. A client may also waive the privilege "if he injects into the case an issue that in fairness requires an examination of otherwise protected communications," Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386 (11th Cir., 1994), modified 30 F.3d 1347 (11th Cir., 1994), cert. den. 513 U.S. 110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995) or if the client testifies concerning portions of the attorney-client communication of fails to assert the privilege. Third Party Verification v. SignatureLink, Inc., No. 6:06-cv-415-Orl-22DAB, 2007 WL 1288361 (M.D. Fla., 2007).

19. Under Fla. Stat. 90.502, a communication between lawyer and client is "confidential" if it is not intended to be disclosed to a third person other than those to whom disclosure is in furtherance of the rendition of legal services to the client or those *reasonably necessary for the transmission of the communication.* Tyne v. Time Warner Entertainment Company, 212 F.R.D. 596, 598 (M.D. Fla., 2002)(emphasis added). The converse is also true: disclosure of attorney-client communications to persons outside that privilege who are unnecessary for the transmission of such communications results in a waiver of the privilege.

The Florida Supreme Court in <u>Southern Bell</u>, 632 So.2d 1377 (Fla., 1994) addressed the scope of the attorney-client privilege as applied to corporations and adopted a "subject matter" test. Florida's subject matter test includes the following requirements:

(1) the communication would not have been made but for the contemplation of legal services;

(2) the employee making the communication did so at the direction of his or her corporate superior;

(3) the superior made the request of the employee as part of the corporations' efforts to secure legal advice or services;

(4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;

(5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

Clearly, in this situation, conversations and materials exchanged by and between Mr. Kresser, Victory's attorneys and Winn-Dixie's attorneys fails the fifth prong of Florida's subject matter test because the communications went beyond those persons who had a need to know the contents of such communications.

19. The questions posed by Visagent in no way imposed on Mr. Kresser's attorney-client relationship. The inquiries were for factual information: nothing more. Particularly telling is that all of these objections were precipitated by Visagent's probing of the Winn-Dixie/Victory mutual preparation for the deposition. Mr. Kresser does not

have a privileged relationship with Winn-Dixie. The mere fact that his attorney was present during his discussions and review of materials Winn-Dixie's counsel chose to show Mr. Kresser, does not transform an otherwise non-privileged, discoverable communication into a privileged communication. Neither Mr. Kresser nor Victory is a party to this litigation, although in reading the deposition transcripts, their alliance is remarkable. The same obstructionist behavior of the Victory attorneys occurred during the deposition of another employee, Robert Carlson, where, in response to questions about Mr. Carlson's discussions with Winn-Dixie counsel on a break during the deposition, privilege was improperly asserted. *See* Exhibit 2 – Deposition of Robert Carlson at p. 176 L. 16 - P. 179 L. 20. Visagent is entitled to know what transpired between Victory and Winn-Dixie and to probe how "close" this relationship actually is.

20.  Like the attorney-client privilege, the party asserting the work-product privilege has the burden of proving that the document is work-product. AARP v. Kramer Lead Mktg. Group, 2005 WL 1785199 (M.D. Fla., 2005); Palmer v. Westfield Insurance Company, 2006 WL 2612168 (M.D. Fla., 2006). This privilege typically applies only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation. Documents which do not refer to work product prepared by an attorney or other agent of a party to aid in forthcoming litigation, and which were generated in the ordinary course of business, are discoverable. AARP v. Kramer Lead Marketing Group, 2005 WL 1785199 (M.D. Fla., 2005); Cutrale Citrus Juices USA, Inc. v. Zurich American Insurance Group, 2004 WL 5215191 (M.D. Fla., 2004) "In limiting work product to materials prepared 'in anticipation of litigation,' the drafters of Rule 26(b)(3) excluded form the rule's protection '(m)aterials assembled in the ordinary course of

business, or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes'." Rule 26(b)(3), Fed.R.Civ.P., Advisory Committee Note. The work product doctrine also protects expressions of an attorney's mental impressions, legal theories and subjective evaluations. Lockheed Martin Corporation v. L-3 Communications Corporation, supra. Opinion work-product enjoys an almost absolute immunity. Cox v. Adm'r U.S. Steel & Carnegie, supra. The party asserting that a document or information is protected by work product has the burden of establishing that the document was prepared both:

    (1)    in anticipation of litigation and

    (2)    by the party or by a representative of the party. Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland, 131 F.R.D 596, 600 (M.D. Fla., 1990)

    21.    It is unfathomable how Victory can contend certain documents Mr. Kresser received from Winn-Dixie lawyers and then reviewed in anticipation of his deposition are claimed as work product. Victory is not a party. Victory is not involved in litigation with Visagent and the document was not created by Mr. Kresser. To assert such a claim is to lack knowledge and understanding of basic evidence and procedure.

    22.    The objections and behavior of Victory's attorneys warrant sanctions. Mr. Brinn and Mr. Office interposed inappropriate objections, directed a witness not to answer questions and created a hostile and inappropriate atmosphere for the deposition. They should either pay for the costs of the prior deposition or future costs to continue the deposition. Visagent's counsel made numerous efforts to caution and advise Victory's counsel of their lack of fundamental compliance with basic deposition rules, case law and protocol, maintaining his composure throughout.

WHEREFORE, Visagent requests the relief identified within be granted in its entirety, together with sanctions including attorneys' fees and costs as appropriately determined by the Court, and for such other and further relief as the Court deems just and proper.

Guy Bennett Rubin, Esq. (FBN 691305)

## CERTIFICATE OF GOOD FAITH

I HEREBY CERTIFY that a good faith effort to resolve the issues set forth by way of this Motion prior to filing same. As outlined in the Memorandum, the issues raised could not be resolved.

Guy Bennett Rubin, Esq. (FBN 691305)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of this Motion has been electronically filed via ECF and that a true and correct copy of the foregoing has been furnished by electronic mail and by US regular Mail to: Gardner Davis, Esq., Foley & Lardner, LLP, One Independent Drive, Suite 1300, Jacksonville, FL 32202, Stuart, C. Brinn, Esquire, Strauss & Troy, LPA, 150 East Fourth Street, Suite 400, Cincinnati, Ohio 45202, James Bolling, Esq. at Smith, Hulsey & Busey, Post Office Box 53315, Jacksonville, FL 32201, and James R. Office, Esquire, General Counsel, Victory Wholesale Group, 400 Victory Drive, Springboro, Ohio, on the 28 day of December, 2009.

Guy Bennett Rubin, Esq. (FBN 691305)
Attorneys for Visagent Corporation
**RUBIN & RUBIN**
P.O. Box 395
Stuart, Florida 34995
Telephone: (772) 283-2004
Facsimile: (772) 283-2009