UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 05-03817-3F1 |
| | : | |
| WINN-DIXIE STORES, INC. et al | : | Chapter 11 |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

**VICTORY WHOLESALE GROCERS'S RESPONSE TO VISAGENT CORPORATION'S MOTION TO COMPEL MICHAEL R. KRESSER TO ANSWER QUESTIONS AND FOR AN ORDER CONTINUING HIS DEPOSITION AND FOR SANCTIONS AGAINST MICHAEL R. KRESSER, VICTORY WHOLESALE GROCERS, STUART C. BRINN, ESQ. AND JAMES R. OFFICE, ESQ**

This Motion is another example of Visagent Corporation's ("Visagent") efforts to make the discovery process unnecessarily disruptive, burdensome and expensive.  This Motion does not allege any failure by Victory Wholesale Grocers ("Victory") or its employees, Robert Carlson and Michael Kresser, to answer any questions material and relevant to the contested matter dispute between Visagent and the Debtor.  Victory's alleged transgressions during two days of depositions - claiming the privilege as to a conversation between lawyers for Winn-Dixie and Victory before the deposition and asking Visagent's counsel to move the deposition along – are insignificant and in no way justify filing a Motion to Compel and for Sanctions (the "Motion").[1]

---

[1] Victory intends to comply with this Court's ruling in this matter.  However, Victory notes that Federal Rule of Civil Procedure 45(a)(2) provides that subpoenas for attendance at a deposition and for production and inspection of documents should be issued from the Court where the deposition is to be conducted and where documents are to be produced.  Rules 45(c)(B) and Rule 45(e) provide that the issuing Court will resolve disputes regarding objections to and compliance with the subpoena.  Visagent's depositions of Victory's employees were taken in Cincinnati and Springboro, Ohio, which are in the Southern District of Ohio.  Victory therefore believes that the Bankruptcy Court in Ohio, rather than this Court, has jurisdiction in this matter as it relates to Visagent's subpoena of Victory employees for depositions and requests

## Factual Background

1.     The Motion must be viewed within the context of Victory's overall efforts to cooperate with Visagent's discovery efforts in this case.[2]

2.     Victory is not a party to the contested matter between Visagent and the Debtor.

3.     Michael Kresser is a Vice President and the Chief Information Officer of Victory.  Mr. Kresser is responsible for managing Victory's computer and data network, including hardware and software.  Mr. Kresser has no material, first-hand knowledge of the bankruptcy dispute between Winn-Dixie and Visagent.

4.     On May 14, 2008, Victory produced to Visagent documents in Victory's possession related to Visagent's dispute with the Debtor, as agreed to by counsel to Visagent and Victory.

5.     With Victory's full cooperation, Visagent subpoenaed the depositions duces tecum of the Rule 30(b)(6) representative of Victory and Victory's employee, Robert Carlson, both for July 30, 2009.  Visagent subsequently reached a stipulation with Debtor's counsel regarding the authenticity of Victory's documents and cancelled the Rule 30(b)(6) deposition.

6.     Rubin's deposition of Mr. Carlson started at 9:55 a.m., concluded at 5:15 p.m. and comprised of 182 pages and included 17 exhibits.

---

for documents in Ohio.  Victory does not believe this Court has jurisdiction over Stuart Brinn, James Office and Michael Kresser, all of whom reside in Ohio.  Moreover, Victory does not believe Visagent has properly served these individual respondents with this Motion.

[2] Victory questions how Visagent's counsel can certify that he made a good faith effort to resolve the issues herein pursuant to Federal Rule of Civil Procedure 37 prior to filing this Motion.  Mr. Rubin has never contacted the undersigned counsel (via e-mail or telephone) to discuss these issues herein.  Mr. Rubin never provided the undersigned counsel with a draft of this Motion prior to filing it or detailed information relating to the specific unanswered questions.  As a practical matter, if Mr. Rubin's position was that Victory must unconditionally agree to a third day of depositions without limitations, then Victory would not have agreed.

2

7.      Visagent subsequently sought the opportunity to depose a second Victory employee, Michael Kresser, the Victory CIO.  Victory believed that a second deposition was unwarranted and created needless expense for both Victory and Winn-Dixie.  Victory's counsel consulted with Winn-Dixie's counsel and mutually decided to establish a joint defense arrangement in anticipation of litigation relating to resisting Visagent's further burdensome and abusive discovery efforts.  After consultation with Winn-Dixie's counsel, Victory's counsel objected to Visagent's request for a second deposition, copying Winn-Dixie counsel on the correspondence, as follows:

> Gladys-
>
> … You have already deposed Bob Carlson and Victory has told you that it produced its business records.  It appears burdensome for you now to be asking for a second Victory witness.  What do you want to ask now that you could not have asked Bob Carlson?
>
> Victory has cooperated with you throughout this matter.  But Victory objected that this is becoming very expensive, wasteful and burdensome.
>
> Gardner Davis

See e-mail from Gardner Davis to Gladys LaForge dated November 16, 2009 at 10:38 a.m. attached hereto as Exhibit A.

8.      Visagent's counsel responded:

> My basic understanding is that Mr. Rubin wants to do further depositions on the NTS issues and technical aspects and Mr. Carlson was not able to answer those questions and referred Mr. Kresser.  We would like to depose him and the records custodian for the records we are going to request specific to that area.

See e-mail from Gladys LaForge to Gardner Davis dated November 16, 2009 at 10:41 a.m. attached hereto as Exhibit A. (Emphasis Added)

9.      Victory's counsel requested that Visagent's counsel provide the relevant portion of Mr. Carlson's deposition testimony: "please show me the specific deposition testimony to which you refer."  Victory's counsel again copied Winn Dixie's counsel on the correspondence.

3

See e-mail from Gardner Davis to Gladys LaForge dated November 16, 2009 at 10:58 a.m.

attached hereto as Exhibit A.

      10.     Victory's counsel responded with questions from Mr. Carlson's deposition solely

related to Victory's IT department:

      Here is the deposition portion you requested:

```
21:21  Q.  Was your IT department on-site at the
21:22  Winn-Dixie location where you were working?
21:23     A.  No.
21:24     Q.  Where was this IT department that you're
21:25  referring to?
22:1   A.  Springboro, Ohio.
22:2   Q.  Did they have some kind of a help desk where
22:3   you could get assistance if you needed it?
22:4   A.  Yes.
22:5   Q.  Was it called help desk?
22:6   A.  I believe it was.
22:7      Q.  Okay.  And it's your understanding that it
22:8   was the IT department that handled the logistics of
22:9   the data transmission?
22:10     A.  Yes.
22:11     Q.  Do you know who in the IT department may
22:12  have worked on those issues during the time period of
22:13  2000 through 2004?
22:14     A.  There was a number of people that were
22:15  involved.
22:16  Q.  Can you name any of them?
22:17  A.  Kirk Watts.
22:18  Q.  W-a-t-t-s?
22:19  A.  Yes.  And then the head of our department.
22:20  Q.  He's the head?
22:21  A.  No.  And the head of our department.
22:22  Q.  Oh.  Do you recall his name?
22:23  A.  Yeah.  Michael Kresser.
22:24  Q.  With a K --
22:25  A.  Yes.
23:1   Q.  -- r-e-s-s-o-r?
23:2   A.  It's e-r.
```

See e-mail from Gladys LaForge to Gardner Davis dated November 16, 2009 at 11:07 a.m.

attached hereto as Exhibit A.

4

11.     In short, Victory, after consultation with Winn-Dixie, agreed to permit Visagent to take the second deposition of Mr. Kresser, Victory's Chief Information Officer, based on the representation of Visagent's counsel that the inquiry would be limited to information technology issues.

12.     Visagent subsequently sought, contrary to the agreement of counsel, to take Mr. Kresser's deposition at a location other than Victory's office.  In addition, Visagent sought a third deposition with respect to a second subpoena for deposition duces tecum of Victory's Rule 30(b)(6) representative for February 2, 2010.

13.     After consultation with Winn-Dixie's counsel regarding their shared concern of Visagent's abuse of discovery and the appropriate strategy and response, Victory filed an Emergency Motion for Protective Order to address Visagent's attempt to schedule Mr. Kresser for deposition at a location other than Victory's office and with respect to a second subpoena for deposition duces tecum of Victory's Rule 30(b)(6) representative.

14.     After a hearing had been scheduled on the Motion for Protective Order, Visagent withdrew the subpoenas and Victory voluntarily produced Mr. Kresser for deposition at Victory's Springboro, Ohio office.

15.     Visagent's deposition of Mr. Kresser began at 10:12 a.m. and concluded at 5:58 p.m.  The transcript is 195 pages and included 11 exhibits.  Mr. Rubin, attorney for Visagent, blatantly violated the agreement of limiting the scope of the deposition as the examination went far beyond technical IT issues.

16.     Victory did not terminate Mr. Kresser's deposition or prevent Mr. Rubin from asking further questions on account of time.

17.     Visagent now apparently seeks to depose a Victory computer programmer, Fred McDonald, who has little or no knowledge of the dispute between Debtor and Visagent.

5

Counsel for Victory and Winn Dixie have again conferred regarding legal strategy to avoid the unnecessary expense and burden that would result from another wasteful, all day, deposition and Visagent's continuing abuse of discovery. Victory is seeking to limit the scope and time of this third deposition and may need to file another Motion for Protective Order.

## Legal Analysis

18.     Local Rule 7037-1 provides that "motions to compel discovery pursuant to Fed. R. Bankr. P. 7037 shall (1) quote in full each … question on deposition; (2) the objection and the grounds therefore stated by the opposing party; and (3) the reasons such objections should be overruled and the motion granted." Although the Motion is 17 pages long, it only identifies three basic questions which the witness did not answer:

i.     What was the substance of the three conversations between Winn-Dixie's lawyers, Mr. Kresser and Victory's lawyer concerning Mr. Kresser's deposition?

ii.     Did Winn-Dixie's lawyers provide documentation, either directly or through Victory's lawyers, for Mr. Kresser to review during those three conversations?

iii.     How did Mr. Kresser communicate / supply a document to his attorney – i.e. provided hard copy or electronically?

None of these questions are material to the contested matter dispute between Debtor and Visagent or the purported limited scope of Mr. Kresser's deposition (the NTS issues and technical aspects). Each of the three unanswered questions is addressed below.

## I.    *Question Regarding Substance of Conversation Between Lawyers for Winn-Dixie and Victory.*

19.     Mr. Kresser testified that he was present for three conversations between Victory's lawyer and Winn-Dixie's lawyer related to his deposition. Victory's attorneys instructed Mr. Kresser not to testify about the specifics of any conversation on the basis of attorney-client privilege and work product. See Deposition at Page 7 lines 6-8.

6

20.     Victory and Winn-Dixie have been engaged in mutually defending against

Visagent's campaign of harassing, burdensome and expensive discovery.  On November 23,

2009, Victory, after consultation with counsel for Winn-Dixie, filed an Emergency Motion for

Protective Order with respect to Visagent's subpoena of Mr. Kresser's December 3, 2009

deposition.  Winn-Dixie shared Victory's legitimate objective of avoiding unnecessary delay

and expense resulting from Visagent's harassing and burdensome discovery, including

examination of Mr. Kresser.  Victory reached out to Winn-Dixie for assistance in obtaining

protection against Visagent's unreasonable discovery and Winn-Dixie and Victory formed a

joint defense arrangement with respect to resisting unreasonable discovery in anticipation of

potential litigation with Visagent.

21.     The communications between Victory's lawyer and Winn-Dixie's lawyers,

attended by Mr. Kresser a client representative, related to defense against Visagent's

burdensome and harassing discovery in anticipation of litigation and were therefore protected

by attorney-client privilege and attorney work product.  The work-product doctrine protects

materials prepared in anticipation of litigation and:

> ... is distinct from and broader than the attorney-client privilege,
> and it protects materials prepared by the attorney, whether or not
> disclosed to the client, as well as materials prepared by agents for
> the attorney.

See Fojtasek v. NCL (Bahamas) Ltd., 2009 WL 3733334, *2 (S.D. FL 2009) citing In re Grand
Jury Proceedings, 601 F.2d 162, 171 (5th Cir.1979). (internal citations omitted).

22.     In addition, "the doctrine is not limited to cases of actual co-defendants, rather it

may apply to cases of "potential" litigation as well."  Id. at *3 citing Schachar v. American

Academy of Ophthalmology, Inc. 106 F.R.D. 187, 191 (D.Ill.1985).

23.     It is also well-established that "the joint defense doctrine is an extension of the

work product doctrine and allows parties facing a common litigation opponent to exchange

7

privileged communications and attorney work product in order to prepare a common defense without waiving either privilege". *See* Id. *citing* United States v. McPartlin, 595 F.2d 1321, 1336 (7th Cir.1979); Continental Oil Co. v. United States, 330 F.2d 347, 350 (9th Cir.1964); Western Fuels Ass'n v. Burlington Northern Railroad Co., 102 F.R.D. 201 (D.Wyo.1984).

24.    The extensive negotiation between counsel for Visagent and Victory to limit the scope of the second Victory Employee to the specific areas of NTS issues and technical aspects, Victory's Emergency Motion for Protective Order concerning Mr. Kresser's deposition and the anticipation of the instant Motion create an anticipation of a potential for "litigation" sufficient to support attorney work product privilege.

## II.    *Question Regarding Documents Provided by Winn-Dixie Counsel as part of Privileged Communication*

25.    Visagent's second unanswered question was whether Winn-Dixie provided any documentation, either directly or through counsel.  Victory objected and instructed the witness not to answer on the grounds of attorney-client privilege and attorney work product.

26.    The substance of the communication between Winn-Dixie's lawyer, Victory's lawyer and Mr. Kresser related to Mr. Kresser's deposition related to Victory's and Winn-Dixie's efforts to protect against continued abuse of discovery and to prepare for the Motion for Protective Order and subsequent discovery related motions.  Any documents provided by Winn-Dixie's counsel therefore would also be privileged.

27.    Victory previously produced all agreed-to documents in its possession relative to the contested matter dispute between Visagent and the Debtor.  Therefore, the issue is not Visagent's access to relevant documents, but instead insight into matters protected by attorney-client and attorney work product privilege.  To the knowledge of the undersigned, there are no documents that were reviewed that were not produced to Visagent by Victory or Winn-Dixie.

8

### III.  *Question Regarding How Mr. Kresser Communicates / Supplies a Document to his Attorney.*

28.    Mr. Kresser was instructed not to answer how he delivered a document to his lawyer (via hard copy or electronically).  If communication between an attorney and client is privileged, it follows that specific information regarding the details of that communication should also be privileged.

29.    Moreover, the question is not possibly relevant to any issue in the dispute between the Debtor and Visagent.  Mr. Kresser testified that he did not know if the document was sent to Winn-Dixie in "native file format" or sent by Winn-Dixie to Victory in "native file format".  Deposition at page 190 lines 6-14.  He further testified that he did not know if he still had the documents in electronic format.  Deposition at page 191 lines 17-24.

### IV.  *Visagent's Examination of Mr. Kresser Vastly Exceeded the Agreed-Upon Scope.*

30.    When viewing the merits of the Motion, the Court should remember that Visagent's all-day examination of Mr. Kresser went far beyond the agreed-upon scope of the deposition.

31.    As mentioned above, Victory initially objected to permitting Visagent to take a second deposition of a Victory employee on the grounds that they could have had all of their questions answered during the deposition of Robert Carlson.  Visagent's counsel replied:  "My basic understanding is that Mr. Rubin wants to do further depositions on the NTS issues and technical aspects and Mr. Carlson was not able to answer those questions and referred to Mr. Kresser.  We would like to depose him … specific to that area."  See e-mail from Gladys LaForge to Gardner Davis dated November 16, 2009 at 10:41 a.m. attached hereto as Exhibit A.

32.    At the deposition, Mr. Rubin blatantly ignored this agreement regarding the limited scope of the second deposition.  As a matter of basic fairness, the Court should not grant

JACK_1706279.2

a motion to compel or grant sanctions with respect to matters beyond the agreed-upon scope of the deposition.

## V. *Victory did not Terminate the Deposition.*

33.     The Motion disingenuously suggests that Victory terminated the deposition of Mr. Kresser at 5:15 p.m. "in an effort to deprive Visagent of a full and complete [examination] of Mr. Kresser."

34.     Examination of the final pages of the deposition make it clear that Mr. Rubin chose to terminate the deposition at 5:58 p.m.  The truth is that Mr. Rubin chose to leave in order to catch his flight out of town.

### Requested Relief

WHEREFORE, Victory requests that Visagent's Motion to Compel and Award Sanctions be denied and for such other relief as this Court deems just and proper.

FOLEY & LARDNER LLP

/s/ Gardner F. Davis
Gardner F. Davis
    Florida Bar No. 0471712
    gdavis@foley.com
John J. Wolfel, Jr.
    Florida Bar No. 030664
    jwolfel@foley.com
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
P. O. Box 240
Jacksonville, FL 32201-0240
904.359.2000

Counsel to Victory Wholesale Grocers

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy of this response to Visagent's Motion has been

furnished by e-mail to the following parties on the 5th day of January 2010.

Rubin & Rubin
Attn:  Guy Bennett Rubin and Gladys LaForge
P.O. Box 395
Stuart Florida 34995
glaforge@rubinandrubin.com
guy.rubin@rubin&rubin.com

Smith Hulsey & Busey
Attn:  Stephen D. Busey and Jim Bolling
225 Water Street – Suite 1800
Jacksonville FL 32202
jbolling@smithhulsey.com
busey@smithhulsey.com

                                        FOLEY & LARDNER LLP
                                        /s/ Gardner F. Davis
                                        Gardner F. Davis

11

**EXHIBIT A**

**(see attached)**

**From:** Gladys LaForge [mailto:glaforge@rubinandrubin.com]
**Sent:** Monday, November 16, 2009 11:07 AM
**To:** Davis, Gardner F.
**Cc:** Guy Rubin
**Subject:** RE: Visagent - Winn Dixies -- Victory depo - second 30b6 witness?

Here is the deposition portion you requested:

21:21  Q.  Was your IT department on-site at the
21:22  Winn-Dixie location where you were working?
21:23      A.  No.
21:24      Q.  Where was this IT department that you're
21:25  referring to?
22:1      A.  Springboro, Ohio.
22:2      Q.  Did they have some kind of a help desk where
22:3  you could get assistance if you needed it?
22:4      A.  Yes.
22:5      Q.  Was it called help desk?
22:6      A.  I believe it was.
22:7      Q.  Okay.  And it's your understanding that it
22:8  was the IT department that handled the logistics of
22:9  the data transmission?
22:10     A.  Yes.
22:11     Q.  Do you know who in the IT department may
22:12  have worked on those issues during the time period of
22:13  2000 through 2004?
22:14     A.  There was a number of people that were
22:15  involved.
22:16     Q.  Can you name any of them?
22:17     A.  Kirk Watts.
22:18     Q.  W-a-t-t-s?
22:19     A.  Yes.  And then the head of our department.
22:20     Q.  He's the head?
22:21     A.  No.  And the head of our department.
22:22     Q.  Oh.  Do you recall his name?
22:23     A.  Yeah.  Mike Kresser.
22:24     Q.  With a K --
22:25     A.  Yes.
23:1      Q.  -- r-e-s-s-o-r?
23:2      A.  It's e-r.

We did NOT depose Mr. Carlson as the 30-b representative for Victory.  He was only asked to
authenticate records that Victory produced pursuant to a subpoena duces tecum.  Therefore, this is not a
second crack at the apple.

Gladys

-------------------------------------------------------------------------------

**From:** Davis, Gardner F. [mailto:GDavis@foley.com]
**Sent:** Monday, November 16, 2009 10:58 AM
**To:** Gladys LaForge
**Cc:** Guy Rubin; James A. Bolling; Timothy R. Buskirk
**Subject:** RE: Visagent - Winn Dixies -- Victory depo - second 30b6 witness?

Gladys-

Was Carlson a 30b-6 witness for Victory?  I though you handled all the 30b-6 stuff at the last round of
depos.

Please show me the specific depo testimony to which you refer.

Mr. Kressor will be available on December 3d at Victory's office.

But until we get a resolution of this request for what Victory thinks is a second 30b-6 depo we are not consenting to service and we will seek protection from the Court.


Gardner Davis
Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202
Telephone: (904) 359-8726
Facsimile: (904) 359-8700
Email: gdavis@foley.com


**From:** Gladys LaForge [mailto:glaforge@rubinandrubin.com]
**Sent:** Monday, November 16, 2009 10:41 AM
**To:** Davis, Gardner F.
**Cc:** Guy Rubin
**Subject:** RE: Visagent - Winn Dixies -- Victory depo - second 30b6 witness?

My basic understanding is the Mr. Rubin wants to do further depositions on the NTS issues and technical aspects and Mr. Carlson was not able to answer those questions and referred to Mr. Kressor. We would like to depose him and the records custodian for the records we are going to request specific to that area.

**From:** Davis, Gardner F. [mailto:GDavis@foley.com]
**Sent:** Monday, November 16, 2009 10:38 AM
**To:** Gladys LaForge
**Cc:** Guy Rubin; James A. Bolling; Timothy R. Buskirk
**Subject:** Visagent - Winn Dixies -- Victory depo - second 30b6 witness?

Gladys-

I do not understand your new request for a proposed 30b-6 witness. You have already deposed Bob Carlson and Victory has told you that it produced its business records. It appears burdensome for you to now be asking for a second Victory witness. What do you want to ask now that you could not have asked Bob Carlson?

Victory has cooperated with you throughout this matter. But Victory objects that this is becoming very expensive, wasteful and burdensome.


Gardner Davis
Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202
Telephone: (904) 359-8726
Facsimile: (904) 359-8700
Email: gdavis@foley.com