UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No.: 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| | ) | |
| Reorganized Debtors, et al., | ) | Jointly Administered |
| | ) | |

CERTAIN MISSISSIPPI COUNTIES' MEMORANDUM
IN RESPONSE TO DEBTOR'S RESPONSE (DOCKET 22518) TO CERTAIN
MISSISSIPPI COUNTIES' MOTION FOR SUMMARY JUDGMENT (DOCKET 22853)
REGARDING CONTESTED MATTER SEEKING RELIEF FROM DEFAULT ORDER
DETERMINING TAX LIABILITIES
and RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT

The following Counties: (a) Hinds County, Mississippi, (b) Jones County, Mississippi, (c) Lauderdale County, Mississippi, (d) Pike County, Mississippi, and (e) Rankin County, Mississippi, by and through their respective Boards of Supervisors (collectively, "Mississippi Counties") file this Memorandum in Response to Debtor's Response to Certain Mississippi Counties' Motion for Summary Judgment Regarding Contested Matter Seeking Relief from Default Order Determining Tax Liabilities and Response to Cross-Motion for Summary Judgment.

INTRODUCTION

In its Fourth Omnibus Objection to Tax Claims and Motion for Order Determining Tax Liabilities ("Motion to Determine Tax Liabilities") (Docket 9133), Winn-Dixie clearly sought monetary relief from the Counties as opposed to prospective injunctive relief against a state official. Based on the relief it sought, as set forth by the Mississippi taxing system, Winn-Dixie was required to name and serve the Counties by and through their respective Boards of

Supervisors. Because Winn-Dixie failed to do so, the Court should vacate its Default Order. Mississippi case law, as well as this Court's prior decision regarding the Motion to Determine Tax Liabilities, likewise confirm that the Court should vacate its Default Order. Finally, numerous decisions from other jurisdictions as well as the First Circuit's decision in *Echevarria-Gonzalez* and the Florida district court in *Guelli* confirm that Winn-Dixie failed to properly serve the Motion to Determine Tax Liabilities.

I.   **FOR THE RELIEF IT SOUGHT, MISSISSIPPI LAW REQUIRED WINN-DIXIE TO SERVE THE COUNTIES BY AND THROUGH THEIR BOARDS OF SUPERVISORS - - NOT THE TAX COLLECTORS.**

Under Mississippi law, the boards of supervisors "have [the] power to levy such taxes as may be necessary to meet the demands of their respective counties." Miss. Code § 19-3-41. Upon having established a levy of such taxes, the tax assessor is charged with appraising the property in that county on an annual basis, Miss. Code § 27-35-15, and determining the true value of the property, Miss. Code § 27-35-50.

Once the tax assessor has finished his assessments, the assessment rolls are tendered to the board of supervisors for final approval. If a taxpayer seeks to challenge the assessment, he must file an objection *with the board of supervisors* - - not the tax collector - - for the applicable county, Miss. Code § 27-35-89. In response to an objection, the board of supervisors "shall have power to increase or decrease the assessment of any property or person." *See also* Miss Code § 27-35-145 (providing in part that "[a]ny person desiring a change in assessment . . . shall make, in writing, an application in duplicate *to the board of supervisors* of the county where such assessment.") (emphasis added); Miss. Code § 27-35-149 ("It shall be the duty of the board of supervisors . . . to make such changes in assessments. . . .") (emphasis added).

2

As if the tax structure was not clear enough, Miss. Code § 27-35-113 further confirms that it is the boards of supervisors (as well as tax assessors)[1] that have the "absolute authority" regarding valuations:

> and to further establish and/or clarify *that tax assessors and the boards of supervisors are vested with the **absolute authority** to investigate and determine the assessed valuations of individual parcels of property* located in their particular county in a manner consistent with the laws of this state.

*Id.* (emphasis added). Winn-Dixie is simply wrong when it tries to paint the board of supervisors merely as an adjudicating body for taxpayer challenges that had its authority "removed to this Court" by Winn-Dixie's filing its Section 505 motion. *See* Response Memorandum, p. 9. In addition to citing absolutely no support for its argument, Winn-Dixie's contention is completely contrary to Mississippi's statutory structure which places the sole authority for levying the taxes and the "absolute authority" regarding valuations with the board of supervisors (and not with the tax collectors).

Nowhere does the Mississippi Constitution or Mississippi Legislature authorize the county tax collectors to have any right or authority (or even any involvement) regarding the reassessment of property or challenges to assessed valuations. Instead, the county tax collectors merely collect the taxes owed for the counties once the board of supervisors has adopted the assessments, *see* Miss. Code § 27-41-1 ("all . . . ad valorem taxes . . . assessed or levied shall be due, payable and collectible by the tax collector") and remit the taxes collected to the counties. *See* Miss. Code § 27-105-325 (". . . the tax collector of each county shall pay the amount due the county to a county depository, according to law and the rules of the board of supervisors."). In fact, Mississippi law confirms that the tax collector is not the proper party to sue in order to

---

[1] Once the assessment rolls are tendered to the board of supervisors, the tax assessor's assessment authority is significantly diminished under the statutory structure.

3

achieve a reduced valuation of the property - - as the tax collector statutorily has no involvement regarding reassessments, much less any authority to increase or decrease assessments. *See* Miss. Code § 27-35-149 ("No assessment shall be increased or decreased and no credit to or charge against the tax collector of any county . . . except as shown by an order adopted by the board of supervisors as provided herein.").

Therefore, based on the relief sought by Winn-Dixie in its Motion to Determine Tax Liabilities (i.e., seeking to determine Debtor's tax liabilities for the subject properties and to reassess properties using the Debtor's calculations, etc.), *see* Dkt. # 9133 at 3-4, Mississippi statutory law clearly required Winn-Dixie to name and serve the Counties, by and through their respective Boards of Supervisors - - not the Tax Collectors.[2] Accordingly, the Court should vacate its August 10, 2006 Default Order as it relates to the Mississippi Counties.

## II.   MISSISSIPPI CASE LAW AS WELL AS THIS COURT'S PRIOR RULING CONFIRM THAT THE COURT SHOULD VACATE ITS DEFAULT ORDER.

Trying to obscure the fact that Winn-Dixie named and served the incorrect parties for its requested relief, Winn-Dixie states "there is nothing in Mississippi law which prohibits the Debtors from suing the Tax Collectors either." In its Response, p. 7, f.n. 5, Winn-Dixie cites *Fiddle Inc. v. Shannon*, 834 So.2d 39, 47 (Miss. 2003) for the proposition that the Mississippi Supreme Court has held that a taxpayer "had the *right* to sue the Lauderdale County Tax Collector, *individually in his official capacity,* for a refund of an overpayment of ad valorem taxes." (emphasis in original).

---

[2] Winn-Dixie ineffectively tries to wiggle out from the obvious conclusion drawn from its suing and serving the county "tax collectors" in its Motion to Determine Tax Liabilities, but later submitting to the Court an Order using the facially broader term "taxing authorities." Alleged clarification of terminology in the exhibits aside, the Mississippi Legislature has made it clear that there is a difference in the terminology between "tax collector" and "taxing authorities", specifically, a tax collector is not a "taxing authority" but a county board of supervisors is. *See* Miss. Code § 25-7-21 ("From and after October 1, 1985, there will be no fees for the services of the tax collector, with the exception of taxes collected for taxing authorities other than the board of supervisors.").

To the contrary, *Fiddle* confirms that Winn-Dixie was required to sue the Counties for the relief it was seeking. In *Fiddle*, the taxpayer, seeking a refund of taxes previously paid, filed suit against Stanley Shannon in his official capacity as Lauderdale County Tax Collector. *Fiddle*, 834 So.2d at 40. Of particular note (which is tellingly absent from Winn-Dixie's Response Brief), Fiddle amended its complaint to include Lauderdale County, Mississippi and the City of Meridian, as additional defendants. *Id.* Thus, while the *Fiddle* opinion references the "Tax Collector" throughout, the Mississippi Supreme Court clearly stated that this was a naming convention used for *all* of the defendants – including Lauderdale County (i.e., "the original and amended complaints were timely answered by *the defendants, collectively known as* 'Tax Collector'"). *Id.* (emphasis added). Accordingly, Winn-Dixie's assertion that the Mississippi Supreme Court in *Fiddle* held that a taxpayer "had the *right* to sue the Lauderdale County Tax Collector in his official capacity" for a refund of ad valorem taxes is not correct. The Mississippi Supreme Court only held that a taxpayer does not have to follow the appellate process under Mississippi statutes but was free to file suit (as opposed to taking an appeal). There was not an issue in *Fiddle* whether a taxpayer had the legal right to sue the tax collector for the relief sought, especially since the Complaint was amended to add the County as a proper party. Indeed, *Fiddle* is authority for the proposition that, for the relief that it was seeking, Winn-Dixie should have named and served the Counties in its Motion like the plaintiff did in *Fiddle*.

Winn-Dixie mentions in a footnote that this Court has previously addressed the specific issue before the Court as it relates to Florida, specifically, who should have Winn-Dixie named and served in its Motion in light of the relief it was seeking. *See* Response Brief, p. 9, f.n. 7 (referencing the "Florida Tax Collectors Order", Docket No. 14815). In evaluating the relief

5

sought by Winn-Dixie in the very Motion at issue here, this Court has previously held that since Winn-Dixie was contesting the valuation and assessment of the subject property, it was required to join and "to serve the relevant Florida County Property Appraisers with a copy of its objection. . . ." *Id.* Similarly, under Mississippi law, the "absolute authority" regarding valuations is vested with the board of supervisors and not the tax collectors. Therefore, analogous to this Court's prior ruling in the Florida Tax Collectors' Order, Winn-Dixie was required to name and serve the Counties by and through their Boards of Supervisors since it sought to challenge the assessed values of the property.

### III. DECISIONS FROM OTHER JURISDICTIONS, AS WELL AS *ECHEVARRIA-GONZALEZ* AND *GUELI,* CONFIRM THAT WINN-DIXIE DID NOT PROPERLY SERVE THE MOTION TO DETERMINE TAX LIABILITIES.

Relying on a First Circuit opinion (*Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24 (1st Cir. 1988)) and a Florida district court opinion (*Guelli v. United States*, 2006 WL 3219272, *4 (M.D. Fla. 2006)), Winn-Dixie essentially argues it named and served the Mississippi governmental officers (i.e., the tax collectors) in their official capacity and there is no authority that says that it cannot do so for the relief it seeks, *see* Section II, *supra*. Therefore, Winn-Dixie argues, it wins. However, numerous decisions from other jurisdictions as well as the rationale of these two decisions actually confirm that service on the tax collectors was not proper and that the Default Order must be vacated.

Here, Winn-Dixie named and served the tax collectors for each county by mailing a copy of the Motion to Determine Tax Liabilities and notice of hearing to the post office box addresses for each of the tax collectors. In the Motion to Determine Tax Liabilities, Winn-Dixie did not seek prospective injunctive relief (e.g., a restraining order or requiring the reinstatement of an fired employee), but monetary relief through revaluing or reassessing the property, for an "offset" for taxes previously paid and through a reduction of the interest rate. It is beyond

6

dispute that the *relief sought* by Winn-Dixie is against the Counties, not the tax collectors, especially in light of the fact (as discussed above), the tax collectors have no jurisdictional authority over the re-assessment process.

Bankruptcy Rule 7004 (b), entitled "Service by first class mail", specifies the available methods for service of process of the Motion to Determine Tax Liabilities. Rule 7004(b)(1) [which corresponds to F.R.C.P. 4(e)(2)] relates to service on an individual, while Rule 7004(b)(6) [which corresponds to F.R.C.P. 4(j)(2)] governs service on "a state or municipal corporation or other governmental organization subject to suit."

Most courts have held when a plaintiff is suing a governmental official in its official capacity, the suit is in essence against the state (or governmental entity), not against the individual. Therefore, most courts hold that service must be had on the governmental entity under F.R.C.P. 4(j)(2) [i.e., 7004(b)(6) here] as opposed to F.R.C.P. 4(e)(2). For example, in *Randall v. Crist*, 2005 WL 5979678 (N.D. Fla. 2005), the Florida district court addressed a motion for a default judgment in a suit against Attorney General Charlie Crist by a plaintiff for money damages arising from plaintiff's unlawful conviction. The District Court held that the suit was against the attorney general in his official capacity; therefore, service of process was required under Rule 4(j)(2) as the "suit [was], in effect, against the State of Florida." *Id.* at p. 2. Since the attorney general had not been served under Rule 4(j)(2), the district court set aside the clerk's entry of default and denied plaintiff's motion for a default judgment. *Id.*; *see also, Moore v. Hosemann*, 2009 WL 4881559, 5 (5th Cir. 2009) (stating that "[a] number of other courts have held that state officers sued in their official capacities are subject to service under rule 4(j) or its predecessor" and rejecting the First Circuit's opinions in *Echevarria-Gonzalez* and in *Caisse*, at least as its relates to mandatory waiver provisions); *Mack v. Fox*, 2008 WL 4832995, 3

7

(M.D.N.C. 2008) ("To the extent that Plaintiff has sued each of the named Defendants in their official capacities, . . . service was not proper because Plaintiff failed to comply with Rule 4(j) of the Federal Rules of Civil Procedure."); *Chapman v. New York State Div. for Youth*, 227 F.R.D. 175, 180 (N.D.N.Y. 2005) (same); *Valder v. City of Grand Forks*, 217 F.R.D. 491, 493 (D.N.D. 2003) (if suit against state judge was intended to be in her official capacity, plaintiff would have been essentially bringing a suit against the State of North Dakota; therefore, service of process would be required under Rule 4(j)(2)); *Cupe v. Lantz*, 470 F.Supp. 2d 136, 139 (D. Conn. 2007) (plaintiff was required to serve defendants in their official state capacities under F.R.C.P. 4(j)); *Libertarian Party v. Dardenne*, 2009 WL 790149, 5 (M.D.La. 2009) ("Service on a defendant sued in his official capacity must be made under Rule 4(j), as suing a state official in his official capacity is ultimately a suit against the state."); *Gaynor v. Martin*, 77 F.Supp.2d 272, 282 (D.Conn.1999); (recognizing service of process of a state official in official capacity is made under Rule 4 (j)).

Seeking to get this Court to follow a minority position (essentially limited to the First Circuit), Winn-Dixie asserts that it properly effectuated service of process on the county tax collectors by serving them under Rule 7004(b)(1). *See* Response Brief, at 6 (citing *Echevarria-Gonzalez v. Gonzalez-Chapel* and *Guelli v. US*).

In *Echevarria-Gonzalez*, 849 F.2d 24 (1st Cir. 1988), the lawsuit was against an individual, the Puerto Rico Secretary of Agriculture (and not the state), in which the plaintiff primarily sought the reinstatement of his job with the Puerto Rico Department of Agriculture (i.e., prospective injunctive relief) to which he had been fired allegedly in violation of the First Amendment. Upon his failure to answer, the district court entered a default judgment against the

Puerto Rico Secretary of Agriculture. The Puerto Rico Secretary of Agriculture then filed a post-judgment motion for relief, which was denied and to which he appealed.

The First Circuit noted that "the Federal Rules of Civil Procedure do not specifically provide a method for service upon a state officer in his official capacity" noting that Rule 4(d)(1)[3] [now Rule 4(e)(2) and Rule 7004(b)(1) here] and Rule 4(d)(6)[4] [now Rule 4(j)(2) and Rule 7004(b)(6) here] were the applicable rules at issue. *Id.* at 29. The First Circuit explained that service of process on an officer of the United States, sued in his official capacity, must be effectuated pursuant to Federal Rule of Civil Procedure 4(d)(5) [now 4(i)] "by serving the United States *and* by sending a copy of the summons and of the complaint by registered or certified mail to the officer." The court stated:

> [T]he rationale behind Rule 4(d)(5) [now 4(i)] is the following. When an action is filed against a federal officer in his official capacity, the action is in essence against the United States, justifying service upon the United States. On the other hand, the defendant officer should also be personally served, given that the action is directly against him, that some action or inaction is requested from him, and that he might be held in contempt if he were to violate the court's orders. By requiring both service upon the United States and the mailing of a copy of the summons and of the complaint to the defendant officer, both the interests of the United States and the individual are protected.

*Id.* at 29 (internal citations omitted).[5]

---

[3] Rule 4(d)(1), now Rule 4(e)(2), states: "Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

[4] Rule 4(d)(6), now Rule 4(j)(2), states: "Upon a state or municipal corporation or other governmental organization thereof subject to suit, by delivering a copy of the summons and of the complaint to the chief executive officer thereof or by serving the summons and complaint in the manner prescribed by the law of that state of the service of summons or other like process upon any such defendant."

[5] Even though the court recognized that "[t]he same interests exist when a state officer is sued in his official capacity", it did not apply the same rule to service of process on state officials sued in their

Given the option of Rule 4(d)(1) and Rule 4(d)(6), the Court found that Rule 4(d)(1) was "more nearly applicable" to service of process on a state officer sued in his official capacity because "[t]he action is **against an individual**, albeit in his official capacity, and **not against the state.**" *Id.* at 29 (emphasis added). Accordingly, the First Circuit stated that "[w]e therefore hold that service upon a state officer in his official capacity is sufficient if made pursuant to Rule 4(d)(1)." *Id.* at 30.

In *Echevarria-Gonzalez*, the action, seeking reinstatement of plaintiff's position with the Puerto Rico Department of Agriculture, was not against the state because it would not require the state to pay any monies from the state treasury – such relief being barred by the Eleventh Amendment to the United States Constitution.[6] *See Ford Motor Company v. Department of the Treasury*, 323 U.S. 459, 464 (1945) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though the individual officials are nominal defendants."); *Edelman v. Jordan*, 415 U.S. 651 (1974) (holding plaintiff's claim against government official to give back payments of welfare funds that were improperly withheld were barred under the Eleventh Amendment because even though the officer and not the state was named as the defendant the money would be paid from the state treasury and not from the officer's own pocket).

The United States Supreme Court has held that a lawsuit against a government officer in his official capacity for prospective injunctive relief to remedy a violation of the United States

---

official capacity because Rule 4(d)(5) [now 4(i)] only mentioned service of process on officers of the United States.

[6] Further confirming this rationale, the First Circuit reversed the trial court's entry of a default judgment for retroactive injunctive relief, specifically, the requirement to pay back taxes which was a claim against the State (i.e., Commonwealth) and as such it was barred by the Eleventh Amendment

10

Constitution or federal law is not a lawsuit against the state – but against the officer individually. The rationale is that the government official's act was unconstitutional and, therefore, stripped of all state authority and did not affect the state in its sovereign or governmental capacity and the relief requested would not require the state to pay any monies. *See Ex Parte Young*, 209 U.S. at 159-60 ("The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of the complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting to use the name of the State . . ."). Indeed, the other case cited by Winn-Dixie, *Gueli v. U.S.*, 2006 WL 3219272, 4 (M.D.Fla. 2006), stated that "it is well-established that official-capacity actions for prospective injunctive relief are not treated as actions against the State under the *Ex Parte Young* doctrine."

This was the same rationale underlying the first case cited by the *Echevarria-Gonzalez* court in support of its holding. In *Richards v. New York State Dept. of Correctional Services*, 572 F.Supp. 1168, 1173 n.3 (D.C.N.Y. 1983), the court held that "although the plaintiffs actually refer to Rule 4(d)(6), which provides for service '[u]pon a state or municipal corporation or other governmental organization . . .', courts have determined that in an action against an individual in his official capacity, personal service pursuant to Rule 4(d)(1) is sufficient **because recovery under the Civil Rights Act runs against the official himself in his private capacity and not against the government**." (emphasis added).[7]

---

[7] The second case cited by the *Echevarria* court, *Jackson v. Hayakawa*, 682 F.2d 1344, 1348 (C.A.Cal. 1982), did not find that service of process could be effectuated on a state official sued in his official capacity by simply mailing him a copy of the summons and complaint. Instead, it held that personal jurisdiction was established because the state official had made a general appearance in the case. *Id.* at 1348-49. Similarly, the third case cited by the *Echevarria* court, *Banerjee v. Roberts*, 641

11

In summary, the First Circuit in *Echevarria-Gonzalez* arguably got it right as it relates to a complaint seeking prospective injunctive relief against a state officer. That ruling would be consistent with the United States Supreme Court in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, (1989), which held "[o]f course a state official in his or her **official capacity, when sued for injunctive relief,** would be a **person** under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (emphasis added).

Here, however, Winn-Dixie is not requesting prospective injunctive relief against the county tax collectors premised on some unconstitutional act, e.g., seeking reinstatement of an employee's position. Instead, Debtor is requesting monetary relief, specifically, adjusting Debtor's assessment valuations and resulting tax liabilities to the Counties, offsetting/refunding[8] certain tax payments Debtor previously made to the Counties, reducing the interest rate on the Debtor's tax liabilities to the Counties, and extinguishing the Counties' tax liens. Without question, Winn-Dixie's claims target the Mississippi Counties, not the tax collectors. Therefore, the rationale of the First Circuit in *Echevarria-Gonzalez* does not follow its ultimate holding. Instead the rationale confirms that service of the Motion to Determine Tax Liabilities should have been made under F.R.C.P. 4(j)(2).[9]

---

F.Supp. 1093 (D.Conn. 1986), held that personal jurisdiction was established because state law permitted the plaintiff to serve the summons and complaint on the State's attorney general. *Id.* at 1099.

[8] *See* 3/21/08 District Court Opinion in *In re: Winn-Dixie Stores, Inc.*, Case No. 3:07-cv-00240 [Dkt. # 23], at p. 14 ("In the context of § 505, the difference between an offset and a refund is purely semantic.").

[9] The *Echevarria-Gonzalez* court also found that Rule 4(d)(6) was inapplicable because "[t]he very wording of Rule 4(d)(6) implies a self-contained limitation, namely, that it applies to situations where the state or other governmental entity is 'subject to suit.' If the Eleventh Amendment bars an action against the state, then the latter is not 'subject to suit' pursuant to Rule 4(d)(6), and thus the rule is inapplicable." *Id.* at 29. Federal Rule of Bankruptcy Procedure 7004(b)(6) contains the same limitation.

To the extent this so called "limitation" is really a limitation, however, it is not applicable to the instant case because the Eleventh Amendment does not bar suits against political subdivisions of a state

Winn-Dixie also relies heavily on *Gueli v. United States of America*, 2006 WL 3219272, p. 4 (M.D. Fla. 2006) because it cites the *Echevarria-Gonzalez* decision in a favorable manner. However, Winn-Dixie fails to point out that the district court avoided any real analysis or scrutiny of that decision or of the issue because it was irrelevant in that case:

> In this case, whether an official capacity suit is served as provided in rule 4(j)(2), which governs service upon the State, or Rule 4(e), which governs service upon individuals, *is a distinction without a difference*. Under either Rule, Plaintiff must serve Governor Bush. *See* Fed. R. Civ. P. 4(j)(2) (providing that service upon the state is accomplished by serving the chief executive officer or pursuant to state law).

*Id.*, p. 4 (emphasis added).

In summary, based on the majority of courts addressing the issue, Winn-Dixie was required to serve the tax-collectors under F.R.C.P. 4(j)(2) [or Bankruptcy Procedure 7004(b)(6)]. Moreover, based on the relief sought by Winn-Dixie, service under Rule 7004(b)(6) as opposed to Rule 7004(b)(1) is "more nearly applicable" under the rationale underpinning *Echevarria-Gonzalez*. *Id.* at 29. Winn-Dixie should have effectuated service by mailing the Motion to Determine Tax Liabilities to the clerk or president of the County Board of Supervisors and not by simply mailing the Motion to Determine Tax Liabilities to the Tax Collector. It failed to do so, and the Court's Default Order should be vacated.

---

(*see, e.g., Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977)), nor does it bar the Debtor from bringing a contested matter against a state or county in a bankruptcy proceeding. *See* 3/21/08 District Court Opinion in *In re: Winn-Dixie Stores, Inc.*, Case No. 3:07-cv-00240 [Dkt. # 23], at p. 9 ("In ratifying the Bankruptcy Clause [of the United States Constitution], the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts."). Accordingly, the so-called limitation of Federal Rule of Civil Procedure 4(d)(6) asserted by the *Echevarria-Gonzalez* court, and its counterpart in Federal Rule of Bankruptcy Procedure 7004(b)(6), is not applicable here.

## CONCLUSION

For all of these reasons, the Mississippi Counties respectfully request that this Court vacate its August 10, 2006 Default Order as it relates to them.

Respectfully submitted, this the 19th day of January, 2010.

                                        MISSISSIPPI COUNTIES by and through their respective Boards of Supervisors

                                        */s/Robert Altman*
                                        Robert Altman, Esquire
                                        Florida Bar No. 346861
                                        5256 Silver Lake Drive
                                        Palatka, Florida 32177
                                        (386) 325-4691-Telephone
                                        (386) 325-9765-Facsimile

OF COUNSEL:

Stephen W. Rosenblatt, Esquire - PHV
Paul M. Ellis, Esquire - PHV
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Suite 1400
1020 Highland Colony Parkway
Ridgeland, MS 39157
Telephone: (601) 948-5711
Fax: (601) 985-4500
(E) steve.rosenblatt@butlersnow.com
(E) paul.ellis@butlersnow.com

## Certificate of Service

I certify that a true and correct copy of the foregoing instrument was furnished by U.S. Mail, postage prepaid, by e-mail and by electronic filing CM/ECF to Allan E. Wulbern, Esq. and Beau Bowin, Esq., Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202 on this 19th day of January, 2010.

/s/*Robert Altman*
Robert Altman, Esquire

Jackson 4737237v2