United States Bankruptcy Court
Middle District of Florida
Jacksonville Division
300 North Hogan Street, Suite 3-350
Jacksonville, FL  32202

January 20, 2010

Ernest S. Allen
4515 Stonybrook Drive
Louisville, KY  40291

Re:    Case No. 05-3817-3F1
       Winn-Dixie Stores, Inc.

Dear Mr. Allen,

The Court is in receipt of your correspondence dated January 14, 2010 and it has
been filed as such.  Unfortunately, the Court is unable to take any action on your
letter and attachments, as it cannot be construed as a motion, objection or
application.  The proper document(s) must be filed with the Court in order for any
action to be taken.

Thank You,

Susan Carter

Susan Carter
Deputy Clerk

attachments

F I L E D

JACKSONVILLE, FLORIDA

JAN 1 4 2010

CLERK, U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

NO. 02-CI-08551

JEFFERSON CIRCUIT COURT

DIVISION ONE (1)

ERNEST S. ALLEN                                                              PLAINTIFF

v.                                              **JUDGMENT**

WINN-DIXIE CHARLOTTE, INC.;
MOORE SECURITY, LLC; AND
TALMAY ANDERSON                                                      DEFENDANTS

\*\*\* \*\*\* \*\*\* \*\*\*

This action came on for trial before this Court and a jury on December 1, 2009. The Plaintiff, Ernest S. Allen, was present and represented himself *pro se*. Plaintiff announced that he was ready for trial. Defendant Winn-Dixie Charlotte, Inc. was present and represented by attorneys R. Hite Nally and Victoria E. Boggs, and Defendants Moore Security, LLC and Talmay Anderson were present and represented by attorney Richard Segal. All Defendants announced they were ready for trial.

After voir dire examination, the Court seated 14 jurors. Plaintiff made an opening statement. At the conclusion of Plaintiff's opening statement, Defendant Winn-Dixie Charlotte, Inc. moved for a directed verdict which motion was overruled. Defendants made their opening statements. The Plaintiff presented his evidence in chief which consisted for the testimony of Plaintiff, Ernest S. Allen, and on December 2, 2009, Plaintiff rested. At the conclusion of Plaintiff's evidence, Defendant Winn-Dixie Charlotte, Inc. moved for a directed verdict which motion was overruled and Defendants Moore Security, LLC and Talmay Anderson moved for a directed verdict which motion was overruled.

Defendants Moore Security and Talmay Anderson presented their evidence in chief on Wednesday, December 2, 2009, which consisted of the testimony of Stan Moore of Moore Security, LLC and Talmay Anderson.  At the conclusion of the evidence for Moore Security, LLC and Talmay Anderson, said Defendants rested.

Defendant Winn-Dixie Charlotte, Inc. presented its evidence in chief on Thursday, December 3, 2009, which consisted of the testimony of Officer Janet Riggs of the Louisville Metro Police Department[1], Candace Dugan, and Michelle Moody.  At the conclusion of its evidence, Defendant Winn-Dixie Charlotte, Inc. rested.

At the conclusion of the case of Defendant Winn-Dixie Charlotte, Inc., Defendants Moore Security, LLC and Talmay Anderson reiterated their motions for directed verdict, which were overruled by the Court.

On December 3, 2009 Defendant Winn-Dixie Charlotte, Inc. made its closing argument, followed by Defendants Moore Security, LLC and Talmay Anderson, and further followed by Plaintiff, Ernest S. Allen.  At the conclusion of closing arguments, the Court dismissed two jurors as alternate jurors and excused them from further jury deliberations.  Upon dismissal of the alternate jurors, the jury returned to the jury room and after due deliberations returned the following verdict in open Court:

1.    The jury considered the Instruction No. 2(A), which reads as follows: "Are you satisfied from the evidence that when Defendant Talmay Anderson detained or caused Plaintiff Ernest S. Allen to be detained that Defendant

---

[1]Due to Officer Riggs' schedule, the Court permitted Defendant Winn-Dixie Charlotte, Inc. to call Officer Riggs out of order for direct examination on December 2, 2009.

Talmay Anderson had probable cause for believing that Plaintiff Ernest S.

Allen had unlawfully taken goods held for sale by Defendant Winn-Dixie

without purchasing them?" By unanimous decision the jury answered

Instruction No. 2(A) "Yes".

2.    The jury considered the Instruction No. 2(B), which reads as follows: "Are

you satisfied from the evidence that the length of time Plaintiff Ernest S.

Allen was detained and the manner in which he was detained was

reasonable in order for Defendant Talmay Anderson, employees of

Defendant Winn-Dixie, or Louisville Metro Police Department Officer

Janet Riggs to do any or all of the following:

(1)    To request identification;

(2)    To verify such identification;

(3)    To make reasonable inquiry as to whether such person has in his

possession unpurchased merchandise, and to make reasonable

investigation of the ownership of such merchandise;

(4)    To recover or attempt to recover goods taken from the mercantile

established by such person, or by others accompanying him;

(5)    To inform a peace officer or law enforcement agency of the

detention of the person and to surrender the person to the custody

of a peace officer, and in the case of a minor, to inform the parents,

guardian, or other person having custody of that minor of his

3

F I L E D
JACKSONVILLE, FLORIDA

JAN 1 4 2010

CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

NO. 02-CI-08551                                    JEFFERSON CIRCUIT COURT
                                                          DIVISION (1)


ERNEST S. ALLEN                                           PLAINTIFF

        VS

WINN – DIXIE, INC                                        DEFENDANTS

MOORE SECURITY, INC
MOORE SECURITY, LLC
TALMAY ANDERSON


## SUMMARY

On November 11, 2001 I (Ernest S. Allen) was wrongfully stopped and obtained, falsely

accused, physically abused which I suffered permanent bodily damage, kidnapped,

imprisonment and robbed along with being incarcerated. All of this was done by the

security guard and Representative of Winn-Dixie Talmay Anderson. On December 26,

2001 I took out a criminal summons on Talmay Anderson for the charges mentioned

above and his attorneys are well aware of it as well as Judge Barry L. Willet. Mr.

Anderson has never answered to the criminal charges as of today's date. First let me start

off by saying I was charged by Mr. Anderson along with Winn-Dixie for shoplifting two

steaks and some pacifiers. He stated (Mr. Anderson) that I (Ernest S. Allen) had the

steaks in my jacket pocket along with the pacifiers. According to Mr. Anderson was that

I (Ernest S. Allen) took the meat out of the package and placed them in my jacket pocket

which should have been raw meat. So that means my jacket pocket should have been

bloody and sticky from the contents of the raw meat and juices as well as my hands.

When the Police Officer Janet Riggs was called to the scene she did not witness any such

evidence of the contents being on me and stated in the citation that "she knows nothing

about this case". Eight years and three weeks later she came to court and stated that it

was her idea to take me to jail but couldn't or cant remember rather I had been hurt or

not, but remembered that Mr. Anderson gave her a roast. Mr. Anderson stated that it was

two steaks in the witness report and the incident report. In the police report Officer Janet

Riggs stated in writing and on the witness stand that it was a **roast not steaks.** Also in

the police report Talmay Anderson is the only witness. In Circuit Court Michelle Moody

and **a white female** testified in court that they were witnesses of the incident. In District

Court officer Janet Riggs, Michelle Moody and the white female never made an

appearance in District Court to testify against me to convict me, but eight years and three

weeks later they made an appearance. Along with this Mr. Anderson committed perjury

on the witness stand in District Court claiming that I did not have a receipt for the

pacifiers in which I did from the Family Dollar Discount Store. Enclosed is a copy of the

receipt. In District Court in 2002 Mr. Anderson stated that I never told the police officer

Janet Riggs that I was injured. In Mr. Anderson sworn affidavits on April 8, 2009 he

stated "police officer told Ernest Allen to put his hands behind is back to handcuff him

but Ernest Allen said his left arm was hurting so the police officer handcuffed him in the

front and escorted him to the police station". On December 2, 2009 Judge Barry L.

Willet refused to accept the **company policy** of shoplifting fromWinn-Dixies (own

company) unless it proves that a manager of Winn-Dixie gave it to him.  On page six of

the transcript county attorney (Robert Florio) states that "I'll have one witness who is a

representative of Winn-Dixie, Talmay Anderson".  Also on the transcript the Honorable

Judge Dellingham states "I'm going to make sure that there's a requirement of the

designation. You know, and I sort of presumed that he was a representative of the

Commonwealth. He was being treated as such".  On pretrial date a settlement was

offered to me by Judge Barry L. Willet himself and I (Ernest S. Allen) refused the offer,

then Judge Willet stated that I would receive zero.  Judge Willet also ordered me (Ernest

S. Allen) to send two copies of everything that I was going to use in court to the

defendants attorneys and to him.  Judge Willet didn't order anything that the defendants

were going to use to me (Ernest S. Allen).  On December 1, 2009 a white female who

was with appellees walked up to me and handed me an envelope which contains a motion

in limine, in which is a **felony** and has nothing to do with a misdemeanor, which is my

case at all.  Attorney Richard G. Segal states in this motion "Wherefore, Defendants

respectfully move this Honorable Court to prohibit the plaintiff from mentioning at any

time in the presence of the jurors the acquittal in the criminal proceeding for the

shoplifting charge".  Following this statement Judge Barry L. Willet granted this to the

defendants.  Knowingly that embezzlement is a felony and a shoplifting is a misdemeanor

under $300.00.  For seven years Judge Barry L. Willet and the defendant's attorneys have

harboring and protecting Talmay Anderson from the criminal summons that I took out on

him. Under the code of professional responsibility DR 4-101© the attorneys knowledge

of his clients where-abouts is not privileged, and that he may be disciplined for failing to

disclose that information to the proper authorities…" ABA Opinion 155 (1936) Stated in

the Canon of Judicial Ethics under number 11 Unprofessional Conduct of Attorneys and

Counsel. "A judge should utilize his opportunities to criticize and correct unprofessional

conduct of attorneys and counselors, brought to his attention; and, if adverse comment is

not a sufficient corrective, should send the matter at once to the proper investigating and

disciplinary authorities".

For additional confirmation I will be using the Motion for Summary Judgment that Winn-

Dixie filed against Moore Security and Talmay Anderson and the response from Moore

Security to Winn-Dixie. Please see attachments.

Following the proceedings in the court room on December 2, 2009 Judge Willet allowed

the defendants to bring up my expunge records that were not suppose to be allowed under

the Expungement Order & Certification Form, Administrative Office of the Court and

the Governors Counsel Office.  Please see attachments.

Judge Barry L. Willet also didn't allow me to mention to the jury concerning the United

States Bankruptcy Court and the Winn-Dixie officials.  I (Ernest S, Allen) have been to

Notice of Case Management Conference at the United States Bankruptcy Court, Middle

District of Florida, Jacksonville Division under the Honorable Judge Jerry A. Funk on

June 12, 2008 and December 17, 2009 and in Mediation & Arbitration Services in

Louisville, Kentucky with Judge Synder in the year of 2004 and Judge Thomas J. Knopf

on February 12, 2009. In November 2009 I was in mediation with Judge Barry L. Willet

on two different occasions.   On a total of six different dates with the appellees whom

tried to get me to settle out of court. Let's not forget that Judge Barry L. Willet stated

that I couldn't mention any of this to the jury. Please review and see tapes and

attachments.

Please also review my medical records that Judge Barry L. Willet did not allow me to

present to the jury also from Dr. Antolin J. Perez.

Please review that Judge Barry L. Willet did not allow me to present any evidence that

would help me period along with how I was not charged with the accusations that the

appellees charged me with in District Court. Evidence of authority will be attached.

**Respectfully Submitted**
(Appellant)
Ernest S. Allen

## The hearing

The first step in the judicial process is normally a hearing at which witnesses are examined, and you have the right, but not the obligation, to testify. You can ask that this hearing be adjourned until your lawyer can be present. For certain misdemeanors, this hearing constitutes a trial; the presiding magistrate will dispose of the case directly and either dismiss the charge or find you guilty. In other cases, where he cannot try the charge himself, the magistrate decides only whether there is a reasonable basis for finding that you have committed the offense charged. In such case, you may waive the hearing. If you are charged with a misdemeanor, the magistrate will hold you for trial by another court. If a felony is involved, he will hold you for action by a grand jury.



## Grand jury

A felony indictment can only be made by a grand jury, which is larger than a normal jury and hears evidence in secret session. You have the right to consult a lawyer at a grand jury, although he cannot be present in the jury room. You also have the right to ask to appear before the grand jury when it is considering your case, but you should not make this request without the advice of your lawyer. The trial itself is held before what is called a petit jury composed of 12 members. In many jurisdictions, a jury of six members is being used, and has been held constitutional by the United States Supreme Court.

MISAPPROPRIATION. The act of misappropriating or turning to a wrong purpose; wrong appropriation; a term which does not necessarily mean peculation, although it may mean that. Bannon v. Knauss, 57 Ohio.App. 288, 13 N.E.2d 733, 735.

etc. Jewett v. U.S., C.C.A.Mass., 100 F. 840, 41 C.C.A. 88; Kansas Flour Mills Co. v. American Surety Co. of New York, 98 Kan. 618, 158 P. 1118.

MISBEHAVIOR. Ill conduct; improper or unlawful behavior. Smith v. Cutler, 10 Wend. N.Y. 590, 25 Am.Dec. 580; State v. Arnold, 100 Tenn. 307, 47 S.W. 221.

MISBRANDING. False or misleading labeling. People v. Rosenbloom, Cal., 119 Cal.App. 759, 2 P.2d 228, 231.

MISCARRIAGE. Medical jurisprudence. The expulsion of the ovum or embryo from the uterus within the first six weeks after conception. Between that time, and before the expiration of the sixth month, when the child may possibly live, it is termed "abortion." When the delivery takes place soon after the sixth month, it is denominated "premature labor." But the criminal act of destroying or bringing forth prematurely the foetus or unborn offspring of a pregnant woman, at any time before birth, is termed, in law, "procuring miscarriage." ChitMed.Jur. 410. Smith v. State, 33 Me. 59, 54 Am.Dec. 607; People v. Rankin, 10 Cal.2d 198, 74 P.2d 71, 73.

The failure of a woman, from causes beyond her control to carry a fetus to maturity. Flory v. Supreme Tribe of Ben Hur, 98 Neb. 160, 152 N.W. 295.

Practice. As used in the statute of frauds, ("debt, default, or miscarriage of another,") this term means any species of unlawful conduct or wrongful act for which the door could be held liable in a civil action. Gansey v. Orr, 173 Mo. 532, 73 S.W. 477.

MISCARRIAGE OF JUSTICE. Prejudice to substantial rights of a party. See the cases of State v. Cluff, 48 Utah, 102, 158 P. 701, 703; State v. Neil, 117 Wash. 142, 202 P. 7, 8.

MISCASTING. An error in auditing and numbering. It does not include any pretended miscasting or misvaluing. 4 Bouvier, Inst. n. 4128.

MISCEGENATION. Mixture of races; marriage between persons of different races; as between a white person and a Negro.

Living together in state of adultery or fornication, by white person and Negro, or descendant of

MISCOGNISANT. Ignorant; uninformed. word is obsolete.

MISCONDUCT. A transgression of some established and definite rule of action, a forbidden act, a dereliction from duty, unlawful behavior, wilful in character, improper or wrong behavior; synonyms are misdemeanor, misdeed, misbehavior, delinquency, impropriety, mismanagement, offense, but not negligence or carelessness. della v. Mariano, 61 R.I. 163, 200 A. 478, 478.

MISCONDUCT IN OFFICE. Any unlawful behavior by a public officer in relation to the duties of his office, wilful in character. Wysong v. Walden, 120 W.Va. 122, 196 S.E. 573, 575.

MISCONTINUANCE. In practice, an improper continuance; want of proper form in a continuance; the same with "discontinuance." Co

MISCREANT. In old English law, an apostate, an unbeliever; one who totally renounced Christianity. 4 Bl.Comm. 44.

MISDATE. A false or erroneous date affixed to a paper or document.

MISDELIVERY. The delivery of property by a carrier or warehouseman to a person not authorized by the owner or person to whom the carrier or warehouseman is bound by his contract to deliver it. Cleveland, etc., R. Co. v. Potts, 33 Ind.App. 564, 71 N.E. 689; Forbes v. Boston & L. Co., 133 Mass. 156.

MISDEMEANANT. A person guilty of a misdemeanor; one sentenced to punishment upon conviction of a misdemeanor. See First-Class Misdemeanant.

MISDEMEANOR. Offenses lower than felonies and generally those punishable by fine or imprisonment otherwise than in penitentiary. People v. Harshbarger, 296 Ill.App. 397, 16 N.E.2d 248.

An act committed or omitted in violation of a public law either forbidding or commanding it. State v. Keller Co., 29 N.M. 455, 224 P. 1028, 1031, 38 A.L.R. 142; State v. Jackson, 142 La. 540, 77 So. 196, 197, L.R.A.1918B,

In the English law, "misdemeanor" is generally used in contradistinction to "felony," and misdemeanors comprehend all indictable offenses which do not amount to felony, as libels, conspiracies, attempts, and solicitations to

348, 295 S.W. 754, 757. In the law of larceny, "felonious" is synonymous with fraudulent; State v. Albert, 117 Or. 179, 242 P. 1116, 1117; and means done "animo furandi," that is, with intent to steal. Fountain v. State, 92 Fla. 262, 109 So. 463, 464.

**FELONIOUS ASSAULT.** Such an assault upon the person as, if consummated, would subject the party making it, upon conviction, to the punishment of a felony, that is, to imprisonment in the penitentiary. Hinkle v. State, 94 Ga. 595, 21 S.E. 595.

**FELONIOUS HOMICIDE.** Killing of human being without justification or excuse. State v. Plumlee, 177 La. 687, 149 So. 425, 431. There are two degrees: manslaughter and murder. It may include killing oneself. 4 Bl. Comm. 190; 4 Steph. Comm. 108, 111; State v. Symmes, 40 S.C. 383, 19 S.E. 16.

**FELONIOUSLY.** Of, pertaining to, or having the quality of felony. People v. Thomas, 58 Cal. App. 308, 208 P. 343, 344.

Means proceeding from an evil heart or purpose done with a deliberate intention of committing a crime. Golden v. Commonwealth, 245 Ky. 19, 53 S.W.2d 185, 186. Without color of right or excuse. State v. Ehanno, 96 Conn. 420, 114 A. 386, 387. Malignantly; maliciously. State v. Horne, 62 Utah, 376, 220 P. 378, 381. Wickedly and against the admonition of the law. State v. Young, 314 Mo. 612, 286 S.W. 29, 34. With a felonious intent.

An indispensable word at common law in indictments for felony. Felonice was in the Latin forms. 4 Bl.Comm. 307. State v. Jesse, 19 N.C. 297. Indictment (G i). Bac.Abr. Indictment (G 1); 2 Hale P.C. 172, 184; 1 Ben. & H. Lead. Cr.Cas. 154. It is still necessary in describing a common-law felony, or where its use is prescribed by statute. Whart.Cr.Pl. § 260; Bowler v. State, 41 Miss. 570; Cain v. State, 18 Tex. 387.

**FELONY.** A crime of a graver or more atrocious nature than those designated as misdemeanors. Ex parte Ramirez, 49 Cal.App.2d 709, 122 P.2d 361, 362. Generally an offense punishable by death or imprisonment in penitentiary. People v. Pointer, 348 Ill. 277, 180 N.E. 796, 797, or state prison. State v. Harwood, 206 N.C. 87, 173 S.E. 24, 25. And at common law, an offense occasioning total forfeiture of either land or goods to which capital or other punishment might be superadded according to degree of guilt. Bell v. Commonwealth, 167 Va. 526, 189 S.E. 441, 443.

**Felony, compounding of.** See Compounding Felony.

common law; State v. Murphy, 17 L.R.A. 550.

Whether an offense is a "felony" offense may be determined by conten and not on whether such punishment conviction of that offense. Lashley so, 717, 718, 719. Sentence actu nature of offense. People v. Brown, P.2d 466, 468.

Under U.S. Cr. Code, § 335, 18 punishable by death or imprisonment one year are felonies. Joplin Me States, C.C.A.Mo., 213 F. 926, 935, A

*English Law*
This term meant originally the st lands and goods to the crown upon offense, and then, by transition, a tion for which such forfeiture capital or any other punishment, distinguished from a "misdemeanor which no forfeiture followed. All either felonies or misdemeanors, but distinction is taken away by St. 33 abolishes forfeiture for felony. Wha 1 Russ.Cr. 78; Co.Litt. 391; 1 Hawl Smith, 5 Wheat. U.S., 153, 5 L.Ed § 646.

*Feudal Law*
At early common law the term w the more serious offenses cognizabl conviction for which entailed forfei chattels and escheat of lands to the f and a day in the king's hands. Subs not involving moral turpitude were classification was so greatly enlarg distinguished from a "misdemeanor Donegan, 282 N.Y. 285, 26 N.E.2d 260.

*Feudal Law*
An act or offense on the part of him his fee, or in consequence of whi hands of his lord; that is, became nia.] Ferdiu; ingratitude, or disloy

**FELONY ACT.** The statute 3 abolishing forfeitures for felon the appointment of interim cu istrators of the property of Whiteley; 4 Steph. Comm. 10, 4

**FELONY-MURDER RULE.** A mitted while perpetrating or at first-degree murder. Payne v. 924, 81 Nev. 503; Element of t plied from the commission of t Cater, 152 A.2d 259, 261, 396 Pa. 1

**FELTING.** In the process of plied to the manufacture of fu fibers become interlocked with with other fibers of fur, for t Mattprawn Mfg. Co. v.

# EMBARGO

ham Lincoln, declaring that all persons held in slavery in certain designated states and districts were and should remain free.

**EMBARGO.** A proclamation or order of state, usually issued in time of war or threatened hostilities, prohibiting the departure of ships or goods from some or all the ports of such state until further order. The William King, 2 Wheat. 148, 4 L.Ed. 206. For the use of the term as applied in a loose sense to the government's control of coal exports during a strike, see Ernesto Foglino & Co. v. Webster, 216 N.Y.S. 225, 237, 217 App.Div. 282.

Embargo is the hindering or detention by any government of ships belonging to citizens of the state imposing it. It is called a "civil embargo." If, as more commonly happens, it is laid upon ships belonging to the enemy, it is called a "hostile embargo." By the detention of this latter the vessels are detained are restored to the rightful owners if no war follows, but are forfeited if war does follow. A quasi-embargo is the detention of war being held to relate back to the original seizure and detention. Brown.

The temporary or permanent sequestration of the property of individuals for the purposes of a government, e.g., to obtain vessels for the transport of troops, the owners being reimbursed for this forced service. Man. Int. Law, 143.

**EMBASSADOR.** See Ambassador.

**EMBASSAGE, or EMBASSY.** The message of a commission given by a sovereign or state to a minister, called an "ambassador," empowered to treat or communicate with another sovereign or state; also the establishment of an ambassador.

**EMBER DAYS.** In ecclesiastical law. Those days which the ancient fathers called "quatuor tempora jejunii" are of great antiquity in the church. They are observed on Wednesday, Friday, and Saturday next after Quadragesima Sunday, or the first Sunday in Lent, after Whitsuntide, Holyrood Day, in September, and St. Lucy's Day, about the middle of December. Brit. c. 53. Our almanacs call the weeks in which they fall the "Ember Weeks," and they are now chiefly noticed on account of the ordination of priests and deacons; because the canon appoints the Sundays next after the Ember weeks for the solemn times of ordination, though the bishops, if they please, may ordain on any Sunday or holiday. Enc. Lond.

**EMBEZZLEMENT.** The fraudulent appropriation to his own use or benefit of property or money intrusted to him by another, by a clerk, agent, trustee, public officer, or other person acting in a fiduciary character. See 4 Bl.Comm. 230, 231.

The fraudulent appropriation of property by a ... v. Wolf, 34 La.Am. 1153; State v. Hudson, 93 W.Va. 435, 117 S.E. 122, 125.

Embezzlement is commonly larceny extended by statute to cover cases where the stolen property comes originally into the possession of the defendant without a trespass. Moody v. People, 65 Colo. 339, 176 P. 476.

Embezzlement is a species of larceny, and the term is applicable to cases of furtive and fraudulent appropriation by clerks, servants, or carriers of property coming into their possession by virtue of their employment. It is distinguished from "larceny" proper, so called, as being committed in respect of property which never was in the actual or legal possession of the owner, while in larceny the thing taken must have existed in the possession, actual or legal, of the owner. That is to say, larceny is the felonious intent must have existed at the time of the taking. Tredwell v. ... Both words, however, may be used, as in a bond, as larceny of the dishonest and fraudulent breach ... to indicate the dishonest and fraudulent appropriation of any duty or obligation upon the part of an employee to pay over to his employer, or account for to him any money, securities, or other commonly property, title to which may come into the possession of the employee. National Surety Co. v. Williams, 74 Fla. 446, 77 So. 212, 222. Under possession of an officer or clerk of a state bank who is guilty of embezzlement if he willfully misapplies its funds, "embezzles," abstracts or acts done for the benefit of the actor or another, in a bond, no matter "misapply" covers acts having, no as depriving the bank, "embezzle" implies the corrupt intent of the actor, while "abstract" means only to take and withdraw from the possession and control of the bank; and while "embezzlement" and the offenses may be committed without misapplication, either of those offenses may be committed without embezzlement. Ferguson v. State, 80 Tex.Cr. 383, 189 S.W. 271, 273. See, however, Winkelman v. State, 114 Neb. 1, 205 N.W. 565, 566.

**EMBLEMATA TRIBONIANI.** In the Roman law. Alterations, modifications, and additions to the writings of the older jurists, selected to make up the body of the Pandects, introduced by Tribonian and his associates who constituted the commission appointed for that purpose, with a view to harmonize contradictions, exscind obsolete matter, and make the whole conform to the condition of Justinian's time, were called by this name. Mackeld. Rom. Law, § 71.

**EMBLEMENTS.** The vegetable chattels called "emblements" are the corn and other growth of the earth which are produced annually, not spontaneously, but by labor and industry, and thence are called "fructus industriales." Reiff v. Reiff, 64 Pa. 137. See Crop.

The growing crops of those vegetable productions of the soil which are annually produced by the labor of the cultivator. They are deemed personal property, and pass as such to the executor or administrator of the occupier, whether he were the owner in fee, or for life, or for years, if he die before they are actually cut, reaped, or gathered; the same: for although, being affixed to the soil, they might, for some purposes, be considered, while growing, as part of the realty. Wharton.

The term also denotes the right of a tenant to take and carry away, after his tenancy has ended, such annual products of the land as have resulted from his own care and labor.

150 / THE FAMILY LEGAL ADVISOR

plainly act to deprive a prisoner of the trial that due process of law gua
him.''

In 1970, the United States Supreme Court significantly expan
coverage of Federal civil remedies available to victims of private disc
tion, stating that the ''color of law'' provision was not necessary to
a Federal remedy. A car containing five Negroes was stopped on a h
in Mississippi during the height of the civil rights activity in July
by two white residents. Mistaking the driver for a civil rights
the two white men severely beat the Negroes, causing bodily and en
harm. The lower court's finding that the defendants did not ac
''color of law,'' and that therefore plaintiffs were barred from re
was reversed by the United States Supreme Court. Holding that the
of the Federal statute under which the action was brought, based
Ku Klux Klan Act of 1971, could not have existed independentl
it were intended that a private action existed where there wer
overtones, Justice Stewart, writing for a unanimous Court, thus c
this section of the Federal statute as the only Federal remedy pr
civil rights generally against private racial discrimination.

**Immunity of state officials**

No one, not even the governor of a state, is immune from vi
of the Constitution of the United States.

A husband and wife were charged with using the United St
in advertising. Efforts for their arrest in New York State were unsu
and application for their extradition was made by New York
the Governor of Pennsylvania. The accused were arrested and
to New York. Later they sued the Governor of Pennsylvania on th
that he had ''unlawfully and maliciously issued purported warra
their arrest in violation of their civil rights.

Pennsylvania at that time had a law that the governor of t
if he acted on the advice of the Pennsylvania Department of State
be in no way liable for his action. Immunity from violating civ
secured by the Federal Constitution cannot be thus acquired, ass
Federal Court. ''To Federal statute and policy a conflicting sta
and law must yield.'' This Pennsylvania statute was held uncons
and void.

**Property rights**

The Fourteenth Amendment of the Constitution of the United S
been held to give all citizens of this country the same right to
lease, sell, hold, and convey real estate.

The meaning of this constitutional guarantee has been expan

F I L E D
JACKSONVILLE, FLORIDA

JAN 1 4 2010

CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

NO. 02-CI-08551                                JEFFERSON CIRCUIT COURT
                                                       DIVISION (1)

ERNEST S. ALLEN                                              PLAINTIFF

        VS

WINN – DIXIE, INC                                          DEFENDANTS
MOORE SECURITY, INC
MOORE SECURITY, LLC
TALMAY ANDERSON

## **APPELLATE**

## **NOTICE OF APPEAL**

This is a motion to dismiss for the following reason of a deliberate manipulation

conspiracy that was used by the appellees and the bench for a felony case used for a

misdemeanor in this case, with no grand jury indictment on the appellate.  See

authorities' attachments

**Respectfully Submitted**
(Appellant)
Ernest S. Allen

*Ernest S. Allen*

AOC-070
Rev. 12-03
Page 1 of 2
Commonwealth of Kentucky
Court of Justice   www.kycourts.net
CR 76.03(3)



**KENTUCKY COURT OF APPEALS
CIVIL APPEAL PREHEARING STATEMENT**

**Internal Use Only**

**APPELLANT**

VS.        **COURT OF APPEALS DOCKET NO.** _____ *(leave blank)*

**APPELLEE**

Appeal From _ERNEST S. ALLEN_ Circuit Court   **Action No.** _NO. 02 - CI 08551_
Trial Judge: _BARRY L WILLET_        Judgment/Order Appealed From Entered: _12 14 2009_
Notice of Appeal Filed: _1-7-2010_        Notice of Cross Appeal Filed: _____

Identifying Information Regarding Counsel for **APPELLANT**: _PRO SE_
Name of Client _ERNEST S. ALLEN PRO SE_ _____

In the trial court, this party was the [X] Plaintiff [ ] Defendant [ ] Other (specify) _____
Attorney's Name: _PRO SE ERNEST S. ALLEN_
Address: _4515 STONYBROOK DR LOUISVILLE KY 40299_

Telephone No. _502 495 2260_

Identifying Information Regarding Counsel for **APPELLEE**:
Name of Client _WINN-DIXIE INR. MOORE SECURITY INC._
_MOORE SECURITY LLC AND TALMAY ANDERSON_
In the trial court, this party was the [ ] Plaintiff [X] Defendant [ ] Other (specify) _____
Attorney's Name: _Richard G SEGAL, R WITE NALLY, VICTORIA BOGGS_
Address: _500 W. JEFFERSON ST. SUIT 2100 LOU, KY 40201 PHONE_
_589 - 4994_

Telephone No. _____

1. **Has this case been before an Appellate Court previously?** [ ] Yes [X] No
   If Yes, provide date and prior case number(s) _____

2. **Type of litigation** (type of order; e.g., automobile negligence, breach of contract, domestic, product liability, property dispute, tax, UCC, zoning, etc.). **Attach copy of complaint or other document initiating Circuit Court action.**

   _____
   _____

3. Was this case **mediated** at the trial court level? [X] Yes [ ] No

AOC-070
Rev. 12-03
Page 2 of 2

4. **Circuit Court Disposition** (type of order; e.g., Default or Summary Judgment, Dismissal, etc.). **Attach copy of final judgment and any separate written opinion by trial court.**

_____

5. **Relief**: (a) Damages:     **Amount Sought $** _____     **Amount Granted $** _____

   (b) Injunction:   ☐ Granted   ☐ Denied

   (c) Other: _____

6. **Facts and Issues: (Brief** statement of facts, claims, defenses and issues litigated. Attach separate sheet if necessary).
   THE MOTION IS FRIVOLOUS, AND JUDGE WILLET KNOW IT
   THIS TRIAL IS CONSPIRACY USUED BY APPELLEES AND THE
   BENCH, SEE AUTHORITES, ATTACHMENTS, THIS WILL
   PROVE A) CONSPIRACY, AND IT CANOT BE DENIED

7. **Briefly state issues proposed to be raised on appeal**, including jurisdictional challenges, and any question of first impression. Attach separate sheet if necessary.
   JURISDICTIONAL CHALLENGES AND FACTS ISSUES
   ARE IN # 6 AND NOTICE OF APPEAL SEE SUMMARY
   AND AUTHORITES THIS WILL TELL ALL TO COURT
   APPELLEES ARE FRIVOLOUS, THEY I DONT KNOW, BY BEING PRO

8. Will the appeal turn on interpretation or application of a **particular case or statute?** ☒ Yes   ☐ No
   If Yes, identify case/statute: 295 S.W. 2d. 809 - CITE AS 295 SW 2d 809

9. Is there any known case involving **substantially the same issue now pending** before either appellate court of this state? ☐ Yes   ☒ No   If Yes, give Case Number: _____
   Case Name: _____

10. Would a **prehearing conference** be helpful?   ☐ Yes  ☒ No  Why? C # 6 AND SUMMARY
    AND AUTHORITES ATTACHMENTS THIS WILL TELL
    WHY AND CANOT BE DENIED BY JUDGE WILLET
    ARE BY COUNSEL FOR APPELLEE & THE HOLE CASE PUT
    ON BY JUDGE WILLET AND COUNSEL A) FALSE SHAM

---

**CERTIFICATION**

I/We hereby certify a copy of the foregoing statement was executed and a copy served on:
1 12 2010 BY ERNEST S ALLEN BY HAND TO ATT
RICHARD C SEGAL AND ATT R WHITE NAIL AND
VICTORIAL BOGGS AND JUDGE BARRY L WILLET

Date: 1-10- , 2 2010          _Ernest S Allen_
                                      Signature
Print Name: ERNEST S, ALLEN     Ernest S Allen

Address: 45-15 STONYBROOK DR

---

**NOTES: 1)  Items 2 and 4 on page 1 require documents to be attached to this Form for proper filing.**
   **2)  Filing of Civil Notice of Appeal suspends running of time for further appeal steps–See CR 76.03(14).**

**Commonwealth of Kentucky**
**Jefferson County**
**David Nicholson**
**Circuit Court Clerk**

Receipt Number: 09-0090074-A

DATE: 01/07/2010

TIME: 01:43 PM

*** (X4) APPEALS-CIVIL APPEALS/CROSS APPEALS TO COA ***

CASE NO: 02-CI-008551

RECEIVED FROM: ERNEST S. ALLEN

ACCOUNT OF: NOTICE OF APPEAL

| | | |
|---|---|---|
| 1. Civil Filing Fee (Q) | | 150.00 |
| TOTAL: | | $150.00 |
| CHECK: | | $150.00 |
| ***DIFF: | | 0.00 |

*** Check Number: 1788

Prepared By: S. Carwile

** MCFO=Money Collected for Others

** CS=Charge for Services

Payer                                          Page 1 of 1

| AOC-497 | Doc. Code: OEX | | Case No. | 01-M-269299 |
|---|---|---|---|---|
| Rev. 4-01 | 08/6/2002 04:34 pm | **EXPUNGEMENT ORDER &** | Court | District |
| Page 1 of 1 | Ver. 1.01 | **CERTIFICATION FORM** | | |
| Commonwealth of Kentucky | | (FOR ACQUITTAL OR DISMISSAL | County | Jefferson |
| Court of Justice | | W/PREJUDICE) | | |
| KRS Chapter 431.076 | | | | |

COMMONWEALTH OF KENTUCKY

VS.

ERNEST                    SIMMONS        ALLEN

D.O.B. 9/2/31         PLAINTIFF

SS#: 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

ARREST DATE: 11/13/01     DEFENDANT

CERTIFIED COPY OF RECORD OF JEFFERSON DISTRICT COURT
TONY MILLER, CLERK

### ORDER

The Court, having reviewed Defendant's **Motion to Expunge** and being sufficiently advised, **FINDS:**

1. a. [✔] At least sixty (60) days before the filing of this motion, Defendant was **acquitted** of the offense(s) of:

Theft by Unlawful Taking under $300

    b. [ ] At least sixty (60) days before the filing of this motion, this offense was/these offenses were **dismissed with prejudice.** Said dismissal was **not in exchange for a guilty plea** to another offense:

_____

2. [✔] There are no current charges or proceedings pending in the above-stated case(s).
3. [ ] Other: _____

**THEREFORE, IT IS HEREBY ORDERED:**

1. [ ] That the motion is **denied.**
2. [X] That the motion is **granted.** The Court further ORDERS:

    A. The above-named offense(s) is/are expunged from court records. On entry of this order, the proceedings shall be deemed never to have occurred; the court shall reply to any inquiry that no record exists; and Defendant shall not have to disclose the fact of the record or any matter relating to it on an application for employment, credit, or other purpose.

    B. The following agencies, with custody of records relating to the arrest, charge or other matters arising out of the arrest or charge, shall expunge/seal the record, including but not limited to arrest records, fingerprints, photographs, index references, or other documentary or electronic data, and shall certify to the Court on this form within sixty (60) days of the entry of this order that the required sealing action has been completed: Louisville Police Department; Jefferson County Police Department; Jefferson COunty Corrections Department

Date: _____8/7, 2002_____     _V Whitfield_ _____ Judge

*no obj—Ky*

---

**CERTIFICATION**

_____, an above-named agency ordered to seal records in our custody, hereby certifies that [ ] the agency has in its custody no records relating to the Defendant/matter, OR [ ] the agency has completed the sealing as this Court directed.

Date: _____, 2____     Agency Records Custodian: _____

---

Distribution: Original - Court File; Certified Copies - Defendant/Attorney; Named Agencies: AOC Research & Statistics
*Circuit Clerk: Refer to your clerk's manual for instructions on fili*

MARTIN   KASDAN, JR., ATTORNEY
STARKS BUILDING, SUITE 995
455 SOUTH FOURTH AVE.
LOUISVILLE, KY 40202
502-583-6906

CASE NO.: 02-CI-08551
COURT

JEFFERSON CIRCUIT

DIVISION ONE (1)

ERNEST S. ALLEN

PLAINTIFF

v.

## MOTION IN LIMINE OF DEFENDANTS MOORE SECURITY, LLC AND TALMAY ANDERSON, INDIVIDUALLY, AND IN HIS CAPACITY AS AN EMPLOYEE OF MOORE SECURITIES, INC., A/K/A MOORE SECURITIES, LLC

WINN-DIXIE CHARLOTTE, INC.,

DEFENDANTS

D/B/A WINN DIXIE FOOD STORES
AND MOORE SECURITY, LLC, AND TALMAY
ANDERSON, INDIVIDUALLY, AND IN HIS
CAPACITY AS AN EMPLOYEE OF MOORE
SECURITIES, INC., A/K/A MOORE SECURITIES, LLC

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Come the Defendants Moore Security, LLC, and Talmay Anderson, individually, and in his

capacity as an employee of Moore Securities, Inc., a/k/a Moore Securities, LLC, by counsel, and

submit their Motion in Limine concerning the issue of whether Mr. Allen's acquittal in the criminal

proceeding for the shoplifting charge is admissible in this civil proceeding.

Generally, a judgment of acquittal in a criminal prosecution is not competent evidence in a

civil suit involving the same facts. Shatz v. American Surety Co. of New York, 295 S.W.2d 809

(KY.App.1955). In Shatz the plaintiff (which had sued its former bookkeeper) argued that the trail

court erred in admitting evidence that the bookkeeper had been acquitted of prior embezzling

charges. The court agreed and found that the trial court's error required reversal of the judgement.

The court noted that there are "sound reasons" why a judgment of acquittal should not be admissible

in a civil action, with the most significant being the difference in the standard of proof (beyond a reasonable doubt versus preponderance of the evidence), noting that "the verdict of acquittal does not necessarily decide that the defendant did not commit the acts charged, but is a negative finding that the Commonwealth did not sufficiently prove the commission of the crime." Id. at 814. Moreover, because the employer was not party to the criminal proceeding, but was entitled to have an independent jury pass upon the merits of the claim, the court noted that the finding of the criminal jury should not be used against the employer. The court found that the evidence of acquittal was "incompetent and inadmissible" as well as "highly prejudicial, because it afforded the civil jury, in a close case on the facts, too inviting an opportunity to substitute the finding of the criminal jury for its own independent judgment." Id.

A distinction needs to be drawn in this matter between a claim for false imprisonment and arrest, and a claim for malicious prosecution. False imprisonment consists of detention without legal process, and a false imprisonment ends once the victim becomes held pursuant to such process, such as where he is bound over by a magistrate or arraigned on charges. Dunn v. Felty, 226 S.W.3d 68 (KY. 2007). After that point, any harm is related to a claim for malicious prosecution which remedies detention accompanied not by a lack of legal process, but by "wrongful institution" of legal process. Id. In other words, damages for false imprisonment cover the time of detention up until issuance of process or arraignment, but not more, and from that point on any damages recoverable must be based upon a malicious prosecution claim and on the wrongful use of judicial process rather than the detention itself. Id. This is important because "in contrast to the tort of malicious prosecution," "favorable termination of criminal proceedings is not an element of false imprisonment." Id. Therefore, if the claim is for false imprisonment, evidence of an acquittal is simply not relevant and is incompetent. Pilos v. First Nat'l Stores, Inc., 66 N.E.2d 576

(Sup.Jud.Ct.Mass. 1946); <u>Darrow v. Schumacher</u>, 495 N.W.2d 511 (S.D. 1993).

In this case, plaintiff's claims focus on the detention at the Winn-Dixie stores, the alleged assault by Talmay Anderson, and the arrest. The claim does not extend to the prosecution of the criminal matter against plaintiff and in any event, neither Moore Security nor Winn-Dixie had any involvement in that proceeding.

Wherefore, Defendants respectfully move this Honorable Court to prohibit the plaintiff from mentioning at any time in the presence of the jurors the acquittal in the criminal proceeding for the shoplifting charge.

Respectfully submitted

**LYNCH, COX, GILMAN & MAHAN, PSC**

RICHARD G. SEGAL
500 West Jefferson Street, Suit 2100
Louisville, Kentucky 40202
Phone: (502) 589-4215
Fax:    (502) 589-4994
**COUNSEL FOR DEFENDANTS
MOORE SECURITY, LLC, AND TALMAY
ANDERSON, INDIVIDUALLY, AND IN HIS
CAPACITY AS AN EMPLOYEE OF MOORE
SECURITIES, INC., A/K/A MOORE
SECURITIES, LLC**

(Sup.Jud.Ct.Mass. 1946); Darrow v. Schumacher, 495 N.W.2d 511 (S.D. 1993).

In this case, plaintiff's claims focus on the detention at the Winn-Dixie stores, the alleged assault by Talmay Anderson, and the arrest. The claim does not extend to the prosecution of the criminal matter against plaintiff and in any event, neither Moore Security nor Winn-Dixie had any involvement in that proceeding.

Wherefore, Defendants respectfully move this Honorable Court to prohibit the plaintiff from mentioning at any time in the presence of the jurors the acquittal in the criminal proceeding for the shoplifting charge.

Respectfully submitted

**LYNCH, COX, GILMAN & MAHAN, PSC**

RICHARD G. SEGAL
500 West Jefferson Street, Suit 2100
Louisville, Kentucky 40202
Phone: (502) 589-4215
Fax:    (502) 589-4994
**COUNSEL FOR DEFENDANTS
MOORE SECURITY, LLC, AND TALMAY
ANDERSON, INDIVIDUALLY, AND IN HIS
CAPACITY AS AN EMPLOYEE OF MOORE
SECURITIES,   INC.,   A/K/A   MOORE
SECURITIES, LLC**

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the foregoing was hand delivered in open Court on this 1st day of December, 2009, to:

Ernest S. Allen
4515 Stonybrook Drive
Louisville, KY 40299
**PRO SE PLAINTIFF**

R. Hite Nally
Victoria E. Boggs
WEBER & ROSE, P.S.C.
471 West Main Street, Suite 400
Louisville, Kentucky 40202
**COUNSEL FOR DEFENDANT**
**WINN-DIXIE CHARLOTTE, INC.**

**LYNCH, COX, GILMAN & MAHAN, PSC**

RICHARD G. SEGAL
500 West Jefferson Street, Suite 2100
Louisville, Kentucky 40202
Phone: (502) 589-4215
Fax:    (502) 589-4994
**COUNSEL FOR DEFENDANT**
**GOODMARK USA, INC.**

**Fr.** In French marine law, freight. Ord. 3, tit. 3.

**Fr.** In French marine law, to freight to let it. Emerig. Tr. des Ass. c. 11, § 3.

**UR.** Fr. In French marine law, freighter. per of a ship, who lets it to the merchant. Tr. des Ass. c. 11, § 3.

**UM, FRECTUM.** In old English law, the of a ship; freight money. Cowell.

**M.** Lat. A strait.

**M BRITANNICUM.** The strait between and Calais.

**S.** An order of religious persons, of whom were four principal branches, viz.: (1) Grey Friars, or Franciscans; (2) August-Dominicans, or Black Friars; (4) White or Carmelites, from whom the rest de-Wharton.

**GH.** (Also, Frithborg, Frithborgh, Friroborg, and Freoburgh.) (Sax.) A kind pledge whereby the principal men were for themselves and servants. Fleta, lib. 47. Cowell says it is the same as frank-

**CULUM.** In the civil law, a temporary ion between husband and wife, caused by el or estrangement, but not amounting to ce, because not accompanied with an in-to dissolve the marriage.

**ORG, FRITHBORG.** Frank-pledge. Cow-curity for the peace. Spelman.

**URGUS.** In old English law, a kind of pledge, by which the lords or principal men made responsible for their dependents or ts. Bract. fol. 124b.

**B.** One favorably disposed. Ned v. Rob-181 Okl. 507, 74 P.2d 1156. Varying in de-greatest intimacy to acquaintance more sual. United States Trust Co. of New-Montclair Trust Co., 133 N.J.Eq. 579, 33 903.

**D OF THE COURT.** See Amicus Curiæ.

**LESS MAN.** In old English law, an out-called because he was denied all help of Bract. lib. 3, tr. 2, c. 12.

**DLY FIRE.** Fire burning in place where intended to burn, although damages may Progress Laundry & Cleaning Co. v. Re-Exchange, Tex.Civ.App., 109 S.W.2d 226,

**DLY SOCIETIES.** In English law, asso-supported by subscription, for the relief intenance of the members, or their wives, n, relatives, and nominees, in sickness, in-advanced age, widowhood, etc. The stat-

utes regulating these societies were consolidated and amended by St. 38 & 39 Vict. c. 60. Wharton.

**FRIENDLY SUIT.** A suit brought by a creditor in chancery against an executor or administrator, being really a suit by the executor or administrator, in the name of a creditor, against himself, in order to compel the creditors to take an equal distribution of the assets. 2 Williams, Ex'rs, 1915.

Also any suit instituted by agreement between the parties to obtain the opinion of the court upon some doubtful question in which they are interested.

**FRIGIDITY.** Impotence. Johnson. The term in this sense is obsolete. Webster's New Int. Dict.

**FRILINGI.** Persons of free descent, or freemen born; the middle class of persons among the Saxons. Spelman. See Freoling.

**FRISCUS.** Fresh uncultivated ground. Mon. Angl. t. 2, p. 56. Fresh; not salt. Reg. Orig. 97. Recent or new. See Fresh, and subtitles thereunder.

**FRISK, v.** The running of hands rapidly over another's person, as distinguished from "search," which is to strip and examine contents more particularly. Kalwin Business Men's Ass'n v. McLaughlin, 126 Misc. 698, 214 N.Y.S. 99, 102.

**FRITH.** Sax. Peace, security, or protection. This word occurs in many compound terms used in Anglo-Saxon law.

**FRITHBORG.** Frank-pledge. Cowell.

**FRITHBOTE.** A satisfaction or fine, for a breach of the peace.

**FRITHBREACH.** The breaking of the peace.

**FRITHGAR.** The year of jubilee, or of meeting for peace and friendship.

**FRITHGILDA.** Guildhall; a company or fraternity for the maintenance of peace and security; also a fine for breach of the peace. Jacob.

**FRITHMAN.** A member of a company or fraternity.

**FRITHSOCNE.** Surety of defense. Jurisdiction of the peace. The franchise of preserving the peace. Also spelled *frithsoken.*

**FRITHSPLOT.** A spot or plot of land, encircling some stone, tree, or well, considered sacred, and therefore affording sanctuary to criminals.

**FRITHSTOOL.** The stool of peace. A stool or chair placed in a church or cathedral, and which was the symbol and place of sanctuary to those who fled to it and reached it.

**FRIVOLOUS.** An answer is "frivolous" where it appears from bare inspection to be lacking in legal sufficiency, and, where in any view of the facts pleaded, it does not present a defense. Neelus v. Neefus, 209 Minn. 495, 296 N.W. 579, 581. Any pleading is called "frivolous" when it is clear-

ly insufficient on its face, and does not controvert the material points of the opposite pleading, and is presumably interposed for mere purposes of delay or to embarrass the opponent. Erwin v. Lowery, 64 N.C. 321; Strong v. Sproul, 53 N.Y. 499; Gray v. Gidiere, 4 Strob., S.C., 442; In re Beam, 93 N.J.Eq. 593, 117 A. 613, 614; Milberg v. Keuthe, 98 N.J.L. 779, 121 A. 713, 714.

"Frivolous pleas" are those which are so clearly and palpably bad as to require no argument to convince the court thereof, and which would be pronounced by the court indicative of bad faith in the pleader on a mere inspection. U. S. v. Delaney, D.C.N.J., 8 F.Supp. 224, 227.

A frivolous demurrer has been defined to be one which is so clearly untenable, or its insufficiency so manifest upon a bare inspection of the pleadings, that its character may be determined without argument or research. Cottrill v. Cramer, 40 Wis. 558.

A "frivolous appeal" is one presenting no justiciable question as so readily recognizable as devoid of merit on face of record that there is little prospect that it can ever succeed. Treat v. State ex rel. Mitton, 121 Fla. 509, 163 So. 883.

A sham plea is good on its face, but false in fact; it may, to all appearances, constitute a perfect defense, but is a pretense because false and because not pleaded in good faith. A frivolous plea may be perfectly true in its allegations, but yet is liable to be stricken out because totally insufficient in substance. Andrew v. Bandler, Sup., 56 N.Y. S. 614; Brown v. Jenison, 1 Code R.N.S., N.Y., 157; Sheets v. Ramer, 125 Minn. 98, 145 N.W. 787. See, further, Answer.

**FRODMORTEL, or FREOMORTEL.** An immunity for committing manslaughter. Mon. Angl. t. 1, p. 173.

**FROM.** Implies a starting point, whether it be of time, place, or condition; and meaning: Having a starting point of motion; noting the point of departure, origin, withdrawal, etc.; out of, starting at, as, he traveled "from" New York to Chicago. Silva v. MacAuley, 135 Cal.App. 249, 26 P.2d 887. Word "from" or "after" an event or day does not have an absolute and invariable meaning, but each should receive an inclusion or exclusion construction according to intention with which such word is used. Acme Life Ins. Co. v. White, Tex.Civ.App., 99 S.W.2d 1059, 1060. Words "from" and "to," used in contract, may be given meaning to which reason and sense entitles them, Woodruff v. Adams, 134 Cal.App. 490, 25 P.2d 529.

As to whether the word was to be treated as inclusive or exclusive of a *terminus a quo*, whether of time or place, a critical writer formulated a rule that when referring to a certain point as a *terminus a quo*, though in vulgar acceptation it were capable of being taken indifferently, either inclusively or exclusively, yet in law it has obtained a certain fixed import and is always taken as exclusive of the *terminus a quo*. Powell, Powers 449. It generally excludes the day to which it relates, but the general rule will yield to the intent of parties; Kendall v. Kingsley, 120 Mass. 94. The views of Lord Mansfield, in Cowp. 714 (overruling his own decision of three years before, id. 189), was that it is either exclusive or inclusive according to context and subject-matter, and the court will construe it to effectuate the intent of parties and not to destroy it. Lowman v. Shotkoski, 106 Neb. 540, 184 N.W. 107, 108;

Allen v. Effler, 144 Tenn. 685, 235 S.W. 67, 68; Martin v. Travelers' Ins. Co., 310 Mo. 411, 276 S.W. 380, 382, 41 A.L. R. 1372; Piatt v. Flaherty, 96 Kan. 42, 149 P. 734.

As to time, after an examination of authorities, Washington, J., laid down what he considered the settled principles to be deduced from them: (1) When time is computed *from* an act done, the day of its performance is included; (2) when the words are from the date, if a present interest is to commence, the day is included, it it is a terminus from which to impute time the day is excluded; Pearpoint v. Graham, 4 Wash.C.C. 240, Fed.Cas.No.10,877; where the latter principle was applied to a lease, as it was also in Lord Raym. 84; and to a bond; Lysle v. Williams, 15 S. & R., Pa., 135; and the first proposition has been laid down with reference to the words "from and after the passage of this act;" Arnold v. U. S., 9 Cra., U.S., 104, 3 L.Ed. 671; U. S. v. Williams, 1 Paine 261, Fed.Cas.No. 16,723; *contra*, Lorent v. Ins. Co., 1 Nott. & McC., S.C., 505. See U. S. v. Heth, 3 Cra., U.S., 399, 2 L.Ed. 479. From is generally held a word of exclusion; Wilcox v. Wood, 9 Wend., N.Y., 346; Ordway v. Remington, 12 R.I. 319, 34 Am.Rep. 646. But a promise made November 1st, 1811, and sued November 1st, 1817, was held barred by statute of limitation; Presbrey v. Williams, 15 Mass. 193. Where an act was to be done in a given number of days *from the time of the contract*, the day on which the contract was made was included; Brown v. Buzan, 24 Ind. 194; but if the contract merely says in so many days it means so many days from the day of date, and that is excluded; Blake v. Crowninshield, 9 N.H. 304. A fire policy *from one given date to another* includes the last day: whether the first is included was not decided; L.R. 5 Exch. 296. In most cases when something is required to be done in a given time from the day on which an event has happened, that day is excluded, as in case of proving claims against the estate of a decedent or insolvent; Weeks v. Hull, 19 Conn. 376, 50 Am.Dec. 249; enrolling deeds, after execution; Seawell v. Williams, 5 Hayw., Tenn., 283; appeal from arbitrators, afterward; Browne v. Browne, 3 S. & R., Pa., 496; issuing a *scire facias* to revive a judgment, after entry; Appeal of Green, 6 W. & S., Pa., 327; the time an execution runs, after its date; Homan v. Liswell, 6 Cow., N.Y., 659; redemption from execution sale; id. 518; allowing appeal from a justice; Ex parte Dean, 2 Cow., N.Y., 605, 14 Am.Dec. 521. The principle is thus well expressed. When time is to be computed from a particular day or a particular event, as when an act is to be performed within a specified period from or after a day named, that day is excluded and the last day included; Sheets v. Selden, 2 Wall., U.S., 177, 17 L.Ed. 822. But it was held that in considering the question of barring a writ of error, the day of the decree is included; Chiles v. Smith's Heirs, 13 B.Monr., Ky., 460. Six months *from testator's death* allowed a legatee to give security not to marry, are exclusive of that day; 15 Ves. 248.

Whenever they are used with respect to places it is said that "from," "to," and "at" are taken inclusively according to the subject-matter; Union Pac. R. Co. v. Hall, 91 U.S. 343, 23 L.Ed. 428 (fixing the terminus of a railroad under an act of congress). *From an object to an object* in a deed excludes the terminus referred to; Bonney v. Morrill, 52 Me. 252; State v. Bushey, 84 Me. 459, 24 A. 940. *From place to place* means from one place in a town to another in the same town; Com. v. Inhabitants of Cambridge, 7 Mass. 158; Com. v. Waters, 11 Gray, Mass., 81. *From a street* means from any part of it according to circumstances; City of Pittsburg v. Chuley, 74 Pa. 259. *From a town* is not always and indeed is seldom exclusive of the place named; it generally means from some indefinite place within the town; Chesapeake & O. Canal Co. v. Key, 3 Cra.C.C. 599, 606, Fed.Cas.No.2,649. Authority in a railroad charter to construct a railroad *from a city* to another point gives power to construct the road from any point within the city; Hazlehurst v. Freeman, 52 Ga. 244; *contra* North-Eastern R. Co. v. Payne, 8 Rich.L., S.C., 177. But *from a town* to another in an indictment for transportation of liquor does not charge it as done within the town; State v. Bushey, 84 Me. 459, 24 A. 940. To construe reasonably the expression a road *from a village* to a creek within the same village, in a statute, requires that it be taken inclusively; Smith v. Helmer, 7 Barb., N.Y., 416. Sailing *from a port* means out of it; U. S. v. La Coste, 2 Mass. 129, Fed.Cas.No.15,548.

Descent *from a parent* cannot be construed to mean through a parent, it must be immediate, from the person

Westlaw.

295 S.W.2d 809
(Cite as: 295 S.W.2d 809)

**C**

Court of Appeals of Kentucky.
Louis SHATZ, Appellant,
v.
AMERICAN SURETY COMPANY OF NEW
YORK and Nora Catherine Breen, Appellees.
Dec. 16, 1955.
As Modified on Denial of Rehearing Nov. 30, 1956.

Action against former employee and surety on her fidelity bond to recover money allegedly misappropriated by defendant employee. The Circuit Court, Common Pleas Branch, Fourth Division, Jefferson County, Joseph J. Hancock, Special Judge, rendered judgment on a verdict for defendants, and plaintiff appealed. The Court of Appeals, Clay, C., held that admitting over objection evidence that defendant employee had been acquitted on a criminal charge of embezzling plaintiff's money was hibhly prejudicial and constituted reversible error.

Judgment reversed for consistent proceedings.

West Headnotes

**[1] Equity 150 ⇌46**

150 Equity
  150I Jurisdiction, Principles, and Maxims
    150I(B) Remedy at Law and Multiplicity of
Suits
      150k45 Adequacy of Legal Remedy
        150k46 k. In General. Most Cited Cases
The basis for trying a suit in equity is that it is one of an equitable nature wherein the remedy at law is inadequate and will not afford justice.

**[2] Equity 150 ⇌46**

150 Equity
  150I Jurisdiction, Principles, and Maxims
    150I(B) Remedy at Law and Multiplicity of

Suits
      150k45 Adequacy of Legal Remedy
        150k46 k. In General. Most Cited Cases
That a great mass of evidence or a great number of witnesses are necessary to prove a legal issue does not necessarily convert suit into one of an equitable nature. Civ.Code Prac. § 10, subd. 4.

**[3] Trial 388 ⇌11(2)**

388 Trial
  388II Dockets, Lists, and Calendars
    388k11 Transfer of Causes
      388k11(2) k. Transfer from Law to Equity
Docket. Most Cited Cases
  (Formerly 388k1(2))
The right to transfer a suit to equity under Civil Code of Practice was determinable exclusively on the pleadings. Civ.Code Prac. § 10, subd. 4.

**[4] Trial 388 ⇌11(2)**

388 Trial
  388II Dockets, Lists, and Calendars
    388k11 Transfer of Causes
      388k11(2) k. Transfer from Law to Equity
Docket. Most Cited Cases
  (Formerly 388k1(2))
Common-law action against former employee and surety on her fidelity bond to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper presented a legal issue and was not a suit on account and did not involve an accounting between the parties, and neither allegation that proof would require extensive, highly technical analysis and explanations of accounts by experts nor complications created by method adopted by plaintiff in proving his case converted action into one of an equitable nature transferrable to equity side of docket under Civil Code of Practice. Civ.Code Prac. § 10, subd. 4.

**[5] Trial 388 ⇌140(1)**

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

295 S.W.2d 809
(Cite as: 295 S.W.2d 809)

388 Trial
    388VI Taking Case or Question from Jury
        388VI(A) Questions of Law or of Fact in General
            388k140 Credibility of Witnesses
                388k140(1) k. In General. Most Cited Cases
The credibility of witnesses is pre-eminently a question for jury.

**[6] Witnesses 410 ⇐315**

410 Witnesses
    410IV Credibility and Impeachment
        410IV(A) In General
            410k315 k. Manner of Testifying. Most Cited Cases
In action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, defendant was not so evasive and vague on cross-examination that her entire testimony must be disregarded.

**[7] Witnesses 410 ⇐315**

410 Witnesses
    410IV Credibility and Impeachment
        410IV(A) In General
            410k315 k. Manner of Testifying. Most Cited Cases
That defendant was evasive and vague on cross-examination went to her credibility as a witness which was a matter for jury to pass upon.

**[8] Insurance 217 ⇐2412**

217 Insurance
    217XVIII Coverage--Fidelity and Guaranty Insurance
        217k2412 k. Evidence. Most Cited Cases
        (Formerly 217k665.1, 217k665(1))

**Labor and Employment 231H ⇐153(4)**

231H Labor and Employment
    231HIII Rights and Duties of Employers and Employees in General

231Hk143 Actions by Employer Against Employee
    231Hk153 Evidence
        231Hk153(4) k. Weight and Sufficiency. Most Cited Cases
    (Formerly 255k66 Master and Servant)
In action against former employee and surety on her fidelity bond to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, verdict for defendants was not palpably against the weight of the evidence.

**[9] Judgment 228 ⇐648**

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(A) Judgments Conclusive in General
            228k643 Nature of Action or Other Proceeding
                228k648 k. Civil or Criminal Proceedings. Most Cited Cases
Acquittal on a criminal charge constitutes a negative finding that the Commonwealth failed to prove defendant's guilt beyond a reasonable doubt and does not necessarily determine that defendant did not commit the acts charged.

**[10] Judgment 228 ⇐648**

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(A) Judgments Conclusive in General
            228k643 Nature of Action or Other Proceeding
                228k648 k. Civil or Criminal Proceedings. Most Cited Cases
Acquittal on a criminal charge is not such a fact as would constitute evidence of nonliability on a civil claim against defendant arising out of the same facts, in view of differences in procedure and degree of proof required in civil and criminal proceedings and fact that plaintiff in civil suit was not a party to criminal proceeding and is entitled to have an independent jury pass upon merits of his

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

295 S.W.2d 809
(Cite as: 295 S.W.2d 809)

civil claim.

**[11] Judgment 228 ☞648**

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(A) Judgments Conclusive in General
            228k643 Nature of Action or Other Proceeding
                228k648 k. Civil or Criminal Proceedings. Most Cited Cases
Evidence of acquittal on criminal charge of embezzling employer's money was incompetent and inadmissible in civil action by employer to recover money allegedly misappropriated by defendant.

**[12] Appeal and Error 30 ☞1050.1(3.1)**

30 Appeal and Error
    30XVI Review
        30XVI(J) Harmless Error
            30XVI(J)10 Admission of Evidence
                30k1050 Prejudicial Effect in General
                    30k1050.1 Evidence in General
                        30k1050.1(3) Particular Actions or Issues, Evidence Relating to
                            30k1050.1(3.1) k. In General. Most Cited Cases
    (Formerly 30k1050.1(3), 30k1050(1))

**Judgment 228 ☞648**

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(A) Judgments Conclusive in General
            228k643 Nature of Action or Other Proceeding
                228k648 k. Civil or Criminal Proceedings. Most Cited Cases
Where evidence in action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper presented a close case on the facts, admitting over objections evidence of defendant's acquittal on a criminal charge

of embezzling plaintiff's money was highly prejudicial to plaintiff and constituted reversible error.

**[13] Labor and Employment 231H ☞153(3)**

231H Labor and Employment
    231HIII Rights and Duties of Employers and Employees in General
        231Hk143 Actions by Employer Against Employee
            231Hk153 Evidence
                231Hk153(3) k. Admissibility. Most Cited Cases
    (Formerly 255k66 Master and Servant)
In action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, evidence that during time of alleged embezzlement defendant played poker for high stakes and lost more money than she earned was relevant and admissible for the purpose of showing motive and that defendant had access to funds from a source other than her pay as a bookkeeper.

**[14] Labor and Employment 231H ☞153(3)**

231H Labor and Employment
    231HIII Rights and Duties of Employers and Employees in General
        231Hk143 Actions by Employer Against Employee
            231Hk153 Evidence
                231Hk153(3) k. Admissibility. Most Cited Cases
    (Formerly 255k66 Master and Servant)
In action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, excluding evidence that during time of alleged embezzlement defendant played poker for high stakes and lost more money than she earned and refusing to permit plaintiff to question defendant concerning such matter on ground of irrelevancy constituted error.

**[15] Labor and Employment 231H ☞153(3)**

231H Labor and Employment

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

295 S.W.2d 809
**(Cite as: 295 S.W.2d 809)**

231HIII Rights and Duties of Employers and Employees in General
    231Hk143 Actions by Employer Against Employee
        231Hk153 Evidence
           231Hk153(3) k. Admissibility. Most Cited Cases
        (Formerly 255k66 Master and Servant)

In action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, where books kept by defendant showed discrepancies between gross receipts and bank deposits during each of first six months of year ranging from $136 to $1,800 per month, evidence that there was no discrepancy in the books during next three months, when, due to illness of defendant, books were kept by another was admissible as a circumstance indicating that shortages may have been due to mishandling of funds by defendant.

**[16] Labor and Employment 231H ☞153(3)**

231H Labor and Employment
    231HIII Rights and Duties of Employers and Employees in General
        231Hk143 Actions by Employer Against Employee
           231Hk153 Evidence
              231Hk153(3) k. Admissibility. Most Cited Cases
        (Formerly 255k66 Master and Servant)

In action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, evidence was admissible to show general methods adopted by plaintiff in his office management, but irrelevant evidence concerning specific actions of plaintiff not bearing on principal issue in case should be excluded.

**[17] Witnesses 410 ☞406**

410 Witnesses
    410IV Credibility and Impeachment
        410IV(E) Contradiction
           410k406 k. Competency of Contradictory

Evidence. Most Cited Cases
In action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, evidence that several years previously plaintiff had more than $8,000 in cash in his safety deposit box did not contradict his testimony on cross-examination that he did not keep more than $75 or $100 in safety deposit box, unless there was a special occasion, and such evidence was so remote in time as to be irrelevant and inadmissible.

**[18] Appeal and Error 30 ☞1048(7)**

30 Appeal and Error
    30XVI Review
        30XVI(J) Harmless Error
           30XVI(J)9 Witnesses
              30k1048 Rulings on Questions to Witnesses
                30k1048(7) k. Credibility, Impeachment, Contradiction, and Corroboration of Witnesses. Most Cited Cases
    (Formerly 30k1050(1))

In action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, admitting evidence that several years previously plaintiff had more than $8,000 in cash in his safety deposit box for the purpose of contradicting plaintiff's testimony on cross-examination that he did not keep more than $75 or $100 in box, unless there was a special occasion, did not in itself constitute such prejudicial error as would require reversal of judgment for defendant.

**[19] Witnesses 410 ☞406**

410 Witnesses
    410IV Credibility and Impeachment
        410IV(E) Contradiction
           410k406 k. Competency of Contradictory Evidence. Most Cited Cases

In action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, evidence that plaintiff had accused another bookkeeper of taking $66 should have been limited to showing that plaintiff had taken a check

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

295 S.W.2d 809
(Cite as: 295 S.W.2d 809)

from cash drawer without replacing it with cash in contradiction of previous testimony of plaintiff.

**[20] Labor and Employment 231H ⚖═153(3)**

231H Labor and Employment
   231HIII Rights and Duties of Employers and Employees in General
      231Hk143 Actions by Employer Against Employee
         231Hk153 Evidence
            231Hk153(3) k. Admissibility. Most Cited Cases
     (Formerly 255k66 Master and Servant)
In action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, the ultimate fact to be determined by jury was whether missing money had been embezzled by defendant and testimony of accountant to the effect that from his examination of the books he was of the opinion that missing money had been taken by bookkeeper was inadmissible.

**[21] Labor and Employment 231H ⚖═153(3)**

231H Labor and Employment
   231HIII Rights and Duties of Employers and Employees in General
      231Hk143 Actions by Employer Against Employee
         231Hk153 Evidence
            231Hk153(3) k. Admissibility. Most Cited Cases
     (Formerly 255k66 Master and Servant)
In action to recover money allegedly misappropriated by defendant while employed as plaintiff's bookkeeper, evidence that plaintiff had been allowed deductions on his federal income taxes because of embezzlement was inadmissible.

**[22] Principal and Surety 309 ⚖═67**

309 Principal and Surety
   309II Nature and Extent of Liability of Surety
      309k67 k. Commencement and Duration of Liability. Most Cited Cases

     (Formerly 308k67)
Where alleged misappropriation of employer's money by bookkeeper was not discovered until more than fifteen months after effective date of cancellation of fidelity bond, requiring discovery of loss within fifteen months after cancellation, and bond had been cancelled by surety at request of obligee as of date bookkeeper left employment of obligee, though bookkeeper thereafter returned to such employment, surety was not liable under bond for any money misappropriated by bookkeeper.

**[23] Insurance 217 ⚖═3145**

217 Insurance
   217XXVII Claims and Settlement Practices
      217XXVII(B) Claim Procedures
         217XXVII(B)2 Notice and Proof of Loss
            217k3143 Necessity
               217k3145 k. Of Notice. Most Cited Cases
     (Formerly 217k539.12(1), 217k539(1))
Though employer had previously realized that something was wrong with books, loss was discovered within provision of bookkeeper's fidelity bond requiring that notice of loss be given within 15 days after discovery thereof, when employer's suspicions were confirmed.

**[24] Insurance 217 ⚖═3153**

217 Insurance
   217XXVII Claims and Settlement Practices
      217XXVII(B) Claim Procedures
         217XXVII(B)2 Notice and Proof of Loss
            217k3152 Timeliness
               217k3153 k. In General. Most Cited Cases
     (Formerly 217k539.1, 217k539(1))
Notice and proof of loss must be given within the time limits fixed by employee's fidelity bond.

**[25] Insurance 217 ⚖═3200**

217 Insurance
   217XXVII Claims and Settlement Practices

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

295 S.W.2d 809
(Cite as: 295 S.W.2d 809)

217XXVII(B) Claim Procedures
217XXVII(B)2 Notice and Proof of Loss
217k3199 Questions of Law or Fact
217k3200 k. In General. Most Cited
Cases
(Formerly 217k562.4(1), 217k668(14))
In action against former employee and surety on
her fidelity bond to recover money allegedly misap-
propriated by employee, evidence that, though
formal written notice of loss was not given surety
until almost one month after discovery of loss, em-
ployer had previously orally notified surety's agent
of discovery of a shortage was sufficient to take
case to jury on issue of fact as to whether such no-
tice was given within fifteen days after discovery of
loss as required by bond.

[26] Insurance 217 ⚖⟶3200

217 Insurance
217XXVII Claims and Settlement Practices
217XXVII(B) Claim Procedures
217XXVII(B)2 Notice and Proof of Loss
217k3199 Questions of Law or Fact
217k3200 k. In General. Most Cited
Cases
(Formerly 217k562.4(1), 217k668(14))
Where evidence in action on employee's fidelity
bond for money allegedly misappropriated by em-
ployee established that proof of loss had been filed
with surety within time required by bond if notice
of loss was given surety in time, issue as to whether
proof of loss was filed in time should not have been
submitted to jury, though evidence presented an is-
sue of fact for jury as to whether notice of loss was
given in time.
*811 S. Arnold Lynch, Louisville, for appellant.

Bullitt, Dawson & Tarrant, Sam J. Stallings, Louis-
ville, for appellee.

CLAY, Commissioner.

This suit was brought by the plaintiff against de-
fendants Nora Breen and her *812 surety company

to recover $30,000 alleged to have been misappro-
priated by her while employed as plaintiff's book-
keeper. After a lengthy trial the jury returned a ver-
dict for defendants. Plaintiff asks that the judgment
be reversed on a number of grounds.

Since 1940 Mrs. Breen had been employed as a
bookkeeper by the plaintiff. She finally left his em-
ploy on October 7, 1949. Shortly after termination
of the employment an audit of plaintiff's books
showed a substantial shortage of currency traceable
to the difference between the gross receipts and the
bank deposits shown by the books. It is plaintiff's
claim that the withdrawals of cash were made by
Mrs. Breen over a long period of time, and involved
a great number of items. Her defense was that these
withdrawals were made by the plaintiff (no impro-
priety suggested), and any discrepancies that might
appear in the books are a result of his method of
conducting the business.

-1-

This suit was practiced under the Civil Code of
Practice and was brought as a common law action.
By amended petition plaintiff alleged it would be
necessary to have accountants testify with respect
to hundreds of names, amounts and dates; that this
evidence would present a long series of bookkeep-
ing transactions and a highly technical analysis
thereof by experts; and that 'great details of fact
and complications of various bookkeeping entries
make it impractical for a jury to try this case intelli-
gently'. On the basis of these allegations, supported
by an affidavit, plaintiff moved to transfer the case
to equity under Section 10(4) of the Civil Code of
Practice. This motion was overruled and this ruling
is the first ground urged for reversal.

This was not a suit on account, nor did it involve an
accounting between the parties. As we have stated
above, the case presented a legal issue as to wheth-
er or not Mrs. Breen had wrongfully taken the
plaintiff's money. It is true that bookkeeping ac-
counts were involved in the controversy, but the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

295 S.W.2d 809
(Cite as: 295 S.W.2d 809)

parties were in substantial agreement as to what the regularly kept books showed. Admittedly they did not reflect a true picture of the withdrawals from the business. During the trial plaintiff went into every item in the books in fine detail, and eventually so complicated matters that anyone would have difficulty in understanding all the technical aspects of the case.

[1][2] However, the basis for trying a suit in equity is that it is one of an equitable nature wherein the remedy at law (trial by jury) is inadequate and will not afford justice. O'Connor v. Henderson Bridge Co., 95 Ky. 633, 27 S.W. 251, 983. The fact that a great mass of evidence or a great number of witnesses is necessary to prove a legal issue does not necessarily convert the suit into one of an equitable nature. See Asher v. Golden, 232 Ky. 1, 22 S.W.2d 411; Lane v. Rowland, 295 Ky. 868, 175 S.W.2d 1000.

[3][4] Under the Civil Code it has been held that the right to transfer a suit to equity is determinable exclusively on the pleadings. Wilhoit v. Cundiff, 291 Ky. 99, 163 S.W.2d 280. While plaintiff's pleading stated that his proof would require extensive explanations of accounts, neither those pleadings (nor the proof on the trial) changed this suit to one of an equitable nature within the meaning of Section 10(4) of the Civil Code of Practice. We believe whatever complications were raised by the pleadings and the proof were not inherent in plaintiff's cause of action, but were created by the method he adopted in proving his case. We conclude that the court did not err in refusing to transfer this case to the equity side of the docket.

-2-

[5] Plaintiff devotes a substantial portion of his brief to the proposition that the verdict is palpably against the weight of the evidence. At great length he argues that the books show many discrepancies, and that the methods used by Mrs. Breen *813 are those of an embezzler rather than those of a book-keeper attempting to account for cash withdrawals made by her employer. While this proof was persuasive, it was rebutted. Mrs. Breen denied that she wrongfully took any of the plaintiff's money; she testified that there were other account books which the plaintiff did not produce; and she showed circumstances in support of her defense that the money was withdrawn by the plaintiff. Obviously one of the controlling considerations in this lawsuit was the respective credibility of the plaintiff and Mrs. Breen. The question of credibility is preeminently one for the jury.

[6][7][8] Under this same general head (weight of the evidence) plaintiff sought to have stricken the testimony of Mrs. Breen on the ground that upon cross-examination she was so evasive and vague that her testimony must be disregarded. He points to many instances where Mrs. Breen refused to answer questions or went off on some side issue. From a reading of Mrs. Breen's testimony, it must be admitted that there is some substance in plaintiff's contention. However, we cannot say that she was so evasive and vague that her testimony must be disregarded. This likewise went to her credibility, which the jury had a right to pass upon. The trial court properly declined to set aside the verdict on this ground.

-3-

Plaintiff's next contention is that the trial court erroneously admitted evidence of Mrs. Breen's acquittal on a criminal charge of embezzling plaintiff's money for the year 1949. At a pre-trial conference, and subsequently throughout the trial, plaintiff strenuously objected to the introduction of evidence with respect to the acquittal. This evidence was admitted as a 'relative circumstance'.

Prior to the case of Wolff v. Employers Fire Ins. Co., 282 Ky. 824, 140 S.W.2d 640, 130 A.L.R. 682, it was apparently settled in this state that a judgment of acquittal in a criminal prosecution was not competent evidence in a civil suit involving the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

295 S.W.2d 809
(Cite as: 295 S.W.2d 809)

same facts. Sovereign Camp of Woodmen of the World v. Purdom, 147 Ky. 177, 143 S.W. 1021; Bray-Robinson Clothing Co. v. Higgins, 210 Ky. 432, 276 S.W. 129; Occidental Ins. Co. v. Chasteen, 255 Ky. 710, 75 S.W.2d 363.

The Wolff case, above cited, involved a *judgement of conviction*. The decision in the case was that such a judgment does not constitute a bar in a civil action, but that it is admissible as circumstantial evidence. In the opinion, language was used to the effect that a judgment of conviction and a *judgment of acquittal* were in the same category, and that both judgments were admissible in a subsequent civil suit involving the same fact situation.

With respect to the judgment of acquittal, this was the purest dictum, as that question was in no respect involved. It has since been recognized as dictum by the editor of American Law Reports Annotated and the editor of American Jurisprudence. 18 A.L.R.2d 1219; 30 Am.Jur., Judgments, Section 293, page 1005, Note 19 (1955 Supp.). While in the Wolff opinion the case of Liverpool & London & Globe Ins. Co. v. Wright, 166 Ky. 159, 179 S.W. 49 (which involved a conviction judgment) was over-ruled, the cases above cited relating to judgments of acquittal were not discussed, and no case decided subsequent to the Wolff decision has been found which follows the unnecessary statement in that opinion with respect to a judgment of acquittal. As a matter of fact, in the case of Harlow v. Dick, Ky., 245 S.W.2d 616, which follows the Wolff decision with respect to a judgment of conviction, the reason for the rule given in the opinion would not be applicable to a judgment of acquittal.

The overwhelming weight of authority in other jurisdictions denies the admissibility of a judgment of acquittal as proof in a civil action involving the same facts. 30 Am.Jur., Judgments, Section 291; 50 C.J.S., Judgments, § 754(b)(1); *814Tennessee Odin Ins. Co. v. Dickey, 190 Tenn. 96, 228 S.W.2d 73, 18 A.L.R.2d 1287. In Massey v. Taylor, 45 Tenn. 447, 448, 98 Am.Dec. 429, it was specifically held:

'The acquittal of the plaintiff upon an indictment for embezzlement, is not entitled to any effect as evidence in a civil action, as an answer to the defense of embezzlement, or as tending to show, that, in fact, the plaintiff did not commit the embezzlement'.

[9][10] There are sound reasons why a judgment of acquittal should not be admissible in a civil action of this nature. Perhaps most significant is the fact that in the criminal prosecution the jury must find the defendant guilty *beyond a reasonable doubt*; whereas, in the civil proceeding the plaintiff may prove his case by a *preponderance of the evidence*. Thus the verdict of acquittal does not necessarily decide that the defendant did not commit the acts charged, but is a negative finding that the Commonwealth did not sufficiently prove the commission of a crime. In addition, since the plaintiff was not a party to the criminal proceeding, and since he is entitled to have an independent jury pass upon the merits of his claim, the finding of the criminal jury should not be used against him. Finally, in view of the difference in parties, procedures and degree of proof required; and the possibility that the prosecution may have been wholly inadequate; in the final analysis the verdict of acquittal is not such a fact as would constitute evidence of defendant's civil non-liability.

[11][12] We believe the evidence was incompetent and inadmissible. There can be no doubt that it was highly prejudicial, because it afforded the civil jury, in a close case on the facts, too inviting an opportunity to substitute the finding of the criminal jury for its own independent judgment. See Occidental Ins. Co. v. Chasteen, 255 Ky. 710, 75 S.W.2d 363; Tennessee Odin Ins. Co. v. Dickey, 190 Tenn. 96, 228 S.W.2d 73, 18 A.L.R.2d 1284.

This error requires reversal of the judgment.

-4-

[13] Plaintiff next contends the trial court erred in

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

295 S.W.2d 809
(Cite as: 295 S.W.2d 809)

refusing to permit proof that during the time of the alleged embezzlement Mrs. Breen played poker for high stakes, losing more money than she earned. One Hash by way of avowal testified: that he had played poker with her every week and sometimes twice a week from 1947 up to the time when Mrs. Breen left plaintiff's employ in 1949; that during this time she won on only one or two occasions and all other times she lost, never less than $100 and sometimes as much as $300. When asked if she lost during this period as much as $20,000, Hash answered that she lost more than that. This evidence was relevant not only for the purpose of showing a motive for taking the money, but to show that Mrs. Breen had access to funds from a source other than her pay as a bookkeeper. The fact that this proof incidentally reveals gambling tendencies or that Mrs. Breen may have been guilty of certain illegal acts would not render it inadmissible. Chambers v. Simpson, 13 Ky. 290; Commonwealth v. Everson, 123 Ky. 330, 96 S.W. 460; Franks v. Commonwealth, 163 Ky. 96, 173 S.W. 327; Wigmore on Evidence, Sections 215, 216.

[14] The trial court erred in denying plaintiff, on the ground of irrelevancy, the right to question Mrs. Breen about this matter and in excluding the testimony of Mr. Hash.

-5-

[15] Plaintiff had shown that during the year 1948, from January through June, there was a discrepancy in the books each month ranging from $136 to $1,800. Because of sickness, Mrs. Breen did not keep the books in July, August and September of that year, and another bookkeeper was employed. Plaintiff undertook to show that there was no discrepancy in the books during those three months when Mrs. *815 Breen was not there. This evidence the court excluded. This evidence was relevant as a circumstance indicating that the shortages may have been due to the mishandling of funds by Mrs. Breen rather than the plaintiff, and it should have been admitted.

-6-

[16] The plaintiff was asked a question by Mrs. Breen's counsel concerning the 'stamp situation' in his office. In his answer he not only discussed the stamps, but also the pencil situation. Thereafter other witnesses were questioned about whether or not plaintiff kept the stamps locked up, whether or not he threw away used carbon paper, and what was his practice with respect to saving pencils. Plaintiff contends this was irrelevant matter and was highly prejudicial as it tended to prove a trait of stinginess. On the other hand, defendants insist the evidence was relevant to contradict the plaintiff, and also to show that he was a very careful business man. We believe some of this testimony elicited was irrelevant and seems to have been introduced to reflect on plaintiff's character. On another trial it will be proper to show the general methods adopted by the plaintiff in his office management, but questions concerning specific actions which do not bear on the principal issue in this case should not be permitted.

-7-

[17][18] On cross-examination plaintiff was asked questions with respect to the amount of cash he kept in his safety deposit box, and he stated that he did not keep more than $75 or $100 in that box 'unless there was a special occasion'. Subsequently Mrs. Breen introduced evidence that in 1943 plaintiff had over $8,000 cash in the box, and the court admonished the jury that this evidence should only be considered for the purpose of contradicting the plaintiff. We do not believe the evidence contradicted the plaintiff's testimony, and we are of the opinion that this incident was so remote in time as to be irrelevant. While the introduction of this evidence would not, standing alone, constitute such prejudicial error as to require reversal, since the case must be reversed on other grounds, in the event of a new trial the evidence should be excluded.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

295 S.W.2d 809
(Cite as: 295 S.W.2d 809)

-8-

[19] Plaintiff had denied that he ever took checks from the cash drawer without replacing them with cash. Mrs. Breen introduced evidence that at one time the plaintiff took a check for $46 from the cash register without replacing the cash amount of the check. In developing this incident, over plaintiff's objection, Mrs. Breen brought out that plaintiff had accused another bookkeeper of taking $66. The transaction involving the other bookkeeper had no relevancy to the issues in the case, except insofar as it showed the plaintiff had taken a check without leaving cash. On another trial the evidence on this item should be so limited.

-9-

Plaintiff contends that the court erroneously excluded opinion evidence by an accountant to the effect that from his examination of the books he was of the opinion that the missing money was taken by the bookkeeper. The court also excluded evidence that the Internal Revenue Department had allowed the plaintiff deductions on his federal income taxes because of embezzlement.

[20][21] The single issue in this case was whether or not Mrs. Breen embezzled the missing money. This was the ultimate fact to be decided by the jury. Opinion evidence is not admissible as to that ultimate fact. Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S.W.2d 345. Both of these items of evidence were properly excluded.

-10-

The court directed a verdict for the defendant surety company on a $3,000 fidelity bond issued in 1942. This bond provided that coverage should be cancelled immediately*816 the employee leaves the service of the employer. On July 3, 1948, Mrs. Breen left the employment of the plaintiff but returned October 31. An issue was raised as to whether she was on a temporary leave of absence or whether the employment had been terminated. However, the plaintiff settled that question when about the middle of October he sent to the defendant surety company a 'Notice to Cancel or Terminate', in which he requested the cancellation of this policy 'to become effective on the 3 day of July 1948'. The company cancelled the policy as of that date and returned the unearned premium. The cancellation date is important because the policy required discovery of the loss within 15 months after cancellation. Admittedly the discovery was made on October 26, 1949, more than 15 months after July 3, 1948.

[22] Plaintiff argues that he intended to cancel this policy under one of its other provisions, but it is evident to us that he himself made the cancellation effective on the July 3 date, and that he had no enforceable claim under this policy.

-11-

[23] Another policy (in the amount of $4,000) was issued in 1948, which required that notice of loss be given within 15 days after discovery and that an itemized proof of loss should be filed within three months after discovery. Plaintiff testified that about the middle of September, 1949, he realized that something was wrong with his books. His suspicions were not confirmed until October 26, 1949. It was then that the loss was first 'discovered'. 50 Am.Jur., Suretyship, Section 348; Fidelity & Guaranty Co. of N. Y. v. Western Bank, 94 S.W. 3, 29 Ky.Law Rep. 639; Perpetual Bldg. & Loan Ass'n v. U. S. Fidelity & Guarantee Co., 118 Iowa 729, 92 N.W. 686. A formal written notice of loss was not given until November 23, 1949, and the proof of loss was not filed until January 12, 1950. However, the evidence indicates that after Mrs. Breen left plaintiff's employment on October 7, 1949, and prior to the formal written notice, plaintiff had orally notified defendant surety company's agent of his discovery of a shortage. There was an issue of fact as to whether or not this notice was given within 15

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

295 S.W.2d 809
(Cite as: 295 S.W.2d 809)

Page 11

days after October 26, and that issue was submitted to the jury.

[24][25][26] It is plaintiff's contention that the 15 day period should not be binding, but that he could comply with the policy by giving notice a reasonable time thereafter, and the instruction should so have advised the jury. It is well settled that in fidelity insurance of this kind the notice and proof of loss must be given within the time limits fixed by the policy. American Bonding Co. of Baltimore v. Ballard County Bank's Assignee, 165 Ky. 63, 176 S.W. 368; Wilhoit v. Furnish, 295 Ky. 356, 174 S.W.2d 515, 149 A.L.R. 941. See additional cases cited in 23 A.L.R.2d 1071. The question of compliance with the time limit for giving notice of the loss was properly submitted to the jury. As we read the evidence, if the notice was given in time, the proof of loss was filed in time and the latter issue should not have been submitted. Since there may be another trial, if the evidence is substantially the same, only the issue with respect to notice of loss should be submitted to the jury.

-12-

Plaintiff raises other points which we do not think merit discussion.

Because of the errors discussed in 3, 4, 5, 6, 7 and 8, the judgment must be reversed.

The judgment is reversed for consistent proceedings.

Ky.,1956
Shatz v. American Sur. Co. of N. Y.
295 S.W.2d 809

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

*36*

damages. In Garnier v. Squires, 62 Kan. 321, 62 P. 1005, the court said: "As will be seen, malice and willfulness are not essential elements of false imprisonment; and motives of the defendant, whatever they may have been, are not material to the case."24

And the Court of Appeals of Maryland had stated:

In false imprisonment suits, the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification, and the good or evil intention of the defendant does not excuse or create the tort. II R.C.L. 791. * * * Any deprivation by one person of the liberty of another without his consent, constitutes an imprisonment, and if this is done unlawfully, it is false imprisonment, without regard to whether it is done with or without probable cause.20

In a case of false imprisonment, the defendant claimed that the petition did not state a cause of action, for the reason that it was not alleged that the imprisonment was malicious and without probable cause. The trial court held that these claims were only valid in suits for malicious prosecution, and that there was a marked distinction between malicious prosecution and false imprisonment. The Kentucky Court of Appeals affirmed this position with various cites:

In Starkie's Evid. 1112, it is said: "No proof of malice or want of probable cause is necessary to make a case for false imprisonment."26

24    *Holland v. Lutz,* 194 Kan. 712, 401 P.2d 1015, 1019 (1965).

Where the life, liberty or property of the citizen are at stake, good intentions are never good enough. It has been stated that the citizen's liberty must not depend upon good faith merely, but upon legal rules governing official action. 27

It has been held many times that in cases of false imprisonment, "the defendant can only avoid liability for false arrest by pleading justification for the arrest."28 All

other arguments must necessarily fail.

## Ignorance of Law

It is a fundamental maxim of law that ignorance of the law is no excuse to violating it. One such maxim is as follows:

Ignorance of the fact excuses; ignorance of the law excuses not. Every man must be taken to be cognizant of the law; otherwise there is no saying to what extent the excuse of