**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC. et al | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

### VISAGENT CORPORATION'S RESPONSE TO DEBTORS' MOTION IN LIMINE TO PRECLUDE VISAGENT CORPORATION FROM PRESENTING EXPERT TESTIMONY

Visagent Corporation (hereinafter "Visagent"), a claimant herein, hereby responds to Debtors' Motion in Limine to Preclude Visagent from Presenting Expert Testimony as follows:

1. This is a contested claim commenced by Debtor's July 11, 2006 Fourteenth Omnibus Objection to No Liability Claims and No Liability Misclassified Claims.

2. The trial on the liability portion of Visagent's Claim is scheduled to commence the week of February 8, 2010. On August 20, 2009, this Court entered a "Consent Order Scheduling Trial," wherein the Court directed that "(e)ach party will serve expert disclosure for issues not relating to damages pursuant o Rule 26 (a) (2), Federal Rules of Civil Procedure, no later than sixty days before trial, and any rebuttal expert disclosures no later than 45 days before trial." Winn-Dixie served its expert disclosures for two (2) witnesses in a timely manner. The named witnesses were: Robert Thomas and Professor Eileen T. Kraemer. Mr. Thomas is Debtors' trucking expert and Professor Kraemer was presented as their technology expert. Both of Winn-Dixie's experts have been deposed by Visagent.

1

3.      The Motion in Limine filed by the Debtors seeks to preclude Visagent from presenting rebuttal expert testimony, although Visagent timely filed its expert disclosures. Visagent named as rebuttal witnesses Walter Williamson, on the issue of trucking, and Neville Teagarden as its technology expert and provided copies of their respective reports.

4.      The deposition of Neville Teagarden, Visagent's technology expert, is scheduled for January 26, 2010 in Colorado and the deposition of Walter Williamson, Visagent's trucking expert, is scheduled for January 28, 2010 at 1:30 p.m. in Atlanta, Georgia, the same time as the scheduled hearing of this motion.

5.      The crux of this dispute centers on whether Winn-Dixie materially breached a valid three (3) year Service Agreement entered into between the parties on June 15, 2001, with an effective date of June 28, 2001. The 2001 Service Agreement provided that:

"**Scope of this Agreement:** This Agreement is intended to cover all of User's business transactions for full or truckload quantities of consumer packaged goods purchased or resold through the Internet or similar electronic means in a wholesale format, excluding purchases by User from the original manufacturer or its authorized representatives. For the Term of this Agreement, User will not employ or contract for the services of an entity other than Provider for its E-commerce transactions covered under the scope of this Agreement.

Exclusions:  The following transactions are specifically excluded from the scope of this Agreement unless such transactions are facilitated through the Exchange.

-Product movement between Winn-Dixie distribution centers or Winn-Dixie contracted distribution centers.

-Direct User purchases for less than full or truckload quantities obtained from the inventory of wholesalers, which, as of the date of this Agreement, are providing electronic data transmissions detailing "in-stock" product availability.

-Direct User transactions with the following entities:
Victory Wholesale Grocers up through and including July 1, 2002

World Wide Retail Exchange, Inc. intesource."

6. Winn-Dixie, through its corporate representative and the 2001 management team has conceded the contract was valid and at no time did they ever claim that Visagent was in breach of the terms of the Service Agreement. As detailed in Visagent's Motion for Partial Summary Judgment, Winn-Dixie management admitted that the Service Agreement was intended to cover all of Winn-Dixie's business in the secondary market regardless of the how much of the contents filled a truck. Nine years after the parties signed this agreement, Winn-Dixie has concocted a hyper-technical, word splitting defense that belies the unambiguous meaning and fundamental intent of the parties who negotiated and signed it. The spirit and intent of the Service Agreement must be viewed as of the time it was made through the eyes of those who made it. To do otherwise is to revise history and re-write the contract. Thus, it is simply irrelevant what their experts opine as to the meaning of "truckload" or "through the internet or similar electronic means" now. If, and only if, the contract is found by the Court to be ambiguous does the inquiry focus on the intent of the parties **at the inception of the Service Agreement.**

8. Winn-Dixie's defenses to the claim are: there were not enough users on the Exchange and there was a conflict of interest because the Chief Executive Officer of Visagent had an affiliation with an import/export business. As Mr. Payment, WD's Vice President, stated in his deposition, the Exchange simply "did not work," so Winn-Dixie did not use it, BUT if it did work Winn-Dixie was obligated to put ALL of its secondary market transactions through the Exchange. (WD never put Visagent on notice that the Exchange didn't work)

9.  Winn-Dixie has elected to offer expert testimony on the issue of "the internet or similar electronic means" and "full or truckload" quantities to belie the unequivocal testimony of their own management team. To a fault, Winn-Dixie personnel, but for their corporate representative who was not intimately involved in the negotiation process, testified to the same fact: Winn-Dixie agreed to put all of its transactions in the secondary market through the Exchange. Debtors want this court to believe what they say now, not what the Court can obviously see they believed the terms to mean in 2001.

10. Visagent is not relying on experts to prove its prima facie case, although surprisingly Winn-Dixie's experts support Visagent's contentions. The expert reports and prospective testimony of Visagent's experts are to refute the defenses of Winn-Dixie. Rebuttal evidence is intended to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a) (2) (B). Winn-Dixie's attempt to mischaracterize Visagent's rebuttal reports as backdoor initial expert reports is without merit.

11. The district court has broad discretion in deciding what constitutes proper rebuttal evidence. Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597, 601 (9th Cir.1991) (citing Datamatic Servs., Inc. v. United States, 909 F.2d 1029, 1033 (7th Cir.1990). Although Winn-Dixie cites a number of cases in support of this premise, these cases are not on point.

12. Respectfully, this Court should rely on Johnson v. PetSmart, 2007 WL 3024029 (M.D. Fla. 2007), which is factually and legally on point. The Court conducted a review of the competing expert reports and found that the rebuttal reports were

congruent in subject matter. Winn-Dixie shrewdly couched Dr. Kraemer's opinion in narrow terms. However, the bases and reasons for her tightly drafted opinion are expansive. She opines on the technology of facsimiles, the internet, similar electronic means, and Winn-Dixie's diverting system and B2B and e-Commerce technologies. Dr. Kraemer was examined at her deposition on all of these subjects and no objection was posed by Winn-Dixie. Now, after Visagent has highlighted the flaws in her opinion, primarily due to the lack of information provided to her to review and formulate a considered opinion, Winn-Dixie elects to limit her testimony to her one sentence opinion.

13. Mr. Teagarden, Visagent's technology expert, has yet to testify. The same is true of Mr. Williamson, Visagent's trucking expert. Visagent believes this motion is premature. However, in reviewing Mr. Teagarden's report, he addresses all of the same issues as Dr. Kraemer addressed in her report: definitions of internet or similar electronic means and systems that meet those requirements, B2B e-commerce, the Winn-Dixie diverting system, and NTS, Victory's eCommerce e-procurement system. Mr. Teagarden sets forth eleven (11) opinions which are all contained in the body of Dr. Kraemer's report. Winn-Dixie should not be permitted to sculpt a pointed expert opinion, based on an expanse of rationale, and then demand that Visagent simply address the terse opinion.

14. The terms "full truck," "less than truckload," "truckload," and "mixed truck" are terms of art in the trucking industry. There has been extensive testimony from Winn-Dixie's employees and agents concerning these definitions. Visagent has contended that this dispute is best addressed in the damages portion of this trial because, at the very least, the parties agree that "full" truckloads were covered by the Service Agreement. Thus, if Visagent can show that there were full trucks of goods sold or

purchased in the secondary market by Winn-Dixie through the use of the internet or similar electronic means during the tenure of the Service Agreement, Winn-Dixie has breached its terms and is liable to Visagent for damages.  Winn-Dixie's trucking expert, Mr. Thomas, set forth his opinions on the above terminology, but for "mixed truckload," and was deposed as to his opinion on the definitions.  Mr. Thomas actually confirmed at his deposition that Winn-Dixie sold truckloads of products in the secondary market outside of the Exchange.  Mr. Williamson, Visagent's trucking expert, submitted a report with six (6) opinions, all of which are directed to the identical subject matter of Mr. Thomas' report. His opinions are simply more detailed than those of Mr. Thomas.

15.    Lastly, Debtors have failed to confer in good faith regarding the filing of this motion in that counsel did not meet in person or confer by telephone as to the issues raised in the Motion. The Middle District of Florida construes Local Rule 3.01(g) to "mean to speak to each other in person or by telephone, in a good faith attempt to resolve disputed issues." See Elbanna v. Captain D's, LLC, 2008 WL 6808440 (M.D. Fla. 2008), quoting Davis v. Apfel, 2000 WL 1658575 (M.D.Fla. 2000).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the original of this Motion has been electronically filed via ECF and that a true and correct copy of the foregoing has been furnished by electronic mail and by US regular Mail to:  James Bolling, Esq. at Smith, Hulsey & Busey, Post Office Box 53315, Jacksonville, FL  32201, on the 22nd day of January, 2010.

_____
Guy Bennett Rubin, Esq. (FBN 691305)
Attorneys for Visagent Corporation
**RUBIN & RUBIN**
P.O. Box 395
Stuart, Florida  34995
Telephone:     (772) 283-2004

Facsimile:     (772) 283-2009