

549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178, 75 USLW 4131, 57 Collier Bankr.Cas.2d 314, 47 Bankr.Ct.Dec. 265, Bankr. L. Rep. P 80,880, 07 Cal. Daily Op. Serv. 2895, 2007 Daily Journal D.A.R. 3691, 20 Fla. L. Weekly Fed. S 109
**(Cite as: 549 U.S. 443, 127 S.Ct. 1199)**

Supreme Court of the United States
TRAVELERS CASUALTY & SURETY CO. OF
AMERICA, Petitioner,
v.
PACIFIC GAS & ELECTRIC CO.
**No. 05-1429.**

Argued Jan. 16, 2007.
Decided March 20, 2007.

**Background:** Chapter 11 debtor's creditor, which prior to bankruptcy petition had issued surety bond on debtor's behalf guaranteeing debtor's payment of state workers' compensation benefits, filed claim in bankruptcy court seeking to protect itself in event of debtor's future workers' compensation default. The bankruptcy court denied creditor's application for attorney fees for work done negotiating language in debtor's reorganization plan and disclosure statement that provided for creditor's right of subrogation and indemnity in event of default. The United States District Court for the Northern District of California, Phyllis J. Hamilton, J., affirmed. The Court of Appeals for the Ninth Circuit affirmed, 167 Fed.Appx. 593. Certiorari was granted.

**Holding:** The United States Supreme Court, Justice Alito, held that creditor was not precluded from filing unsecured claim for contractual attorney fees, merely by virtue of fact that fees sought had been incurred in litigating issues of federal bankruptcy law, abrogating *In re Fobian,* 951 F.2d 1149, and *In re DeRoche,* 434 F.3d 1188.

Vacated and remanded.

West Headnotes

**[1] Federal Civil Procedure 170A ⚿2737.1**

170A Federal Civil Procedure
   170AXIX Fees and Costs
     170Ak2737 Attorney Fees
      170Ak2737.1 k. Result; Prevailing Parties; "American Rule". Most Cited Cases
Under American Rule, prevailing litigant is ordinarily not entitled to collect reasonable attorney fees from loser.

**[2] Federal Civil Procedure 170A ⚿2737.1**

170A Federal Civil Procedure
   170AXIX Fees and Costs
     170Ak2737 Attorney Fees
      170Ak2737.1 k. Result; Prevailing Parties; "American Rule". Most Cited Cases
American Rule can be overcome by statute or by enforceable contract allocating attorney fees.

**[3] Bankruptcy 51 ⚿2182.1**

51 Bankruptcy
   51II Courts; Proceedings in General
     51II(C) Costs and Fees
      51k2182 Grounds and Circumstances
       51k2182.1 k. In General. Most Cited Cases
Bankruptcy Code does not disallow contract-based claims for attorney fees based solely on fact that fees at issue were incurred litigating issues of bankruptcy law. 11 U.S.C.A. § 502.

**[4] Bankruptcy 51 ⚿2923**

51 Bankruptcy
   51VII Claims
     51VII(E) Determination
      51k2923 k. Objections Generally; Time, Form, and Sufficiency; Pleading. Most Cited Cases
In general, any defense to claim that is available outside of bankruptcy context is also available in bankruptcy. 11 U.S.C.A. § 502(b)(1).

**[5] Bankruptcy 51 ⚿2826**

51 Bankruptcy
   51VII Claims
     51VII(A) In General
      51k2826 k. Effect of State Law, in General. Most Cited Cases
Word "claim" in Bankruptcy Code generally refers to right to payment recognized under state law, since basic rule in federal bankruptcy proceedings is that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 S.Ct. 1199                                                                                                     Page 2
549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178, 75 USLW 4131, 57 Collier Bankr.Cas.2d 314, 47 Bankr.Ct.Dec.
265, Bankr. L. Rep. P 80,880, 07 Cal. Daily Op. Serv. 2895, 2007 Daily Journal D.A.R. 3691, 20 Fla. L. Weekly
Fed. S 109
(Cite as: 549 U.S. 443, 127 S.Ct. 1199)

state law governs substance of claims against debtor's estate. 11 U.S.C.A. §§ 101(5)(A), 502(b)(1).

**[6] Bankruptcy 51 ☞2182.1**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(C) Costs and Fees
            51k2182 Grounds and Circumstances
                51k2182.1 k. In General. Most Cited Cases

Chapter 11 debtor's creditor, which had issued prepetition surety bond guaranteeing debtor's payment of state workers' compensation benefits, and had executed prepetition indemnity agreement with debtor containing attorney fee clause, was not precluded from filing unsecured claim for contractual attorney fees for work done in bankruptcy court on its claim seeking to protect itself in event of debtor's future workers' compensation default; mere fact that fees had been incurred in litigating issues of federal bankruptcy law provided no basis for disallowing fees; abrogating In re Fobian, 951 F.2d 1149, and In re DeRoche, 434 F.3d 1188.11 U.S.C.A. § 502(b).

**[7] Bankruptcy 51 ☞2926**

51 Bankruptcy
    51VII Claims
        51VII(E) Determination
            51k2925 Evidence
                51k2926 k. Presumptions and Burden of Proof. Most Cited Cases

There is general presumption that claims enforceable under applicable state law will be allowed in federal bankruptcy proceeding unless they are expressly disallowed. 11 U.S.C.A. § 502(b).

**[8] Federal Courts 170B ☞461**

170B Federal Courts
    170BVII Supreme Court
        170BVII(B) Review of Decisions of Courts of Appeals
            170Bk460 Review on Certiorari
                170Bk461 k. Questions Not Presented Below or in Petition for Certiorari. Most Cited Cases

United States Supreme Court ordinarily does not consider claims that were neither raised nor addressed below.

**\*\*1200\*443**Syllabus[FN\*]

[FN\*] The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

After respondent (PG & E) filed for Chapter 11 bankruptcy, petitioner (Travelers), which had previously issued a surety bond to guarantee PG & E's payment of state workers' compensation benefits, asserted a claim in the bankruptcy action to protect itself should PG & E default on the benefits. With the Bankruptcy Court's approval, PG & E agreed to insert language into its reorganization plan and disclosure statement to protect Travelers in case of such a default. Additional litigation over the negotiated language nevertheless ensued and was ultimately resolved by a court-approved stipulation stating, *inter alia,* that Travelers could assert a general unsecured claim for attorney's fees, which were authorized in the parties' original indemnity agreements. When Travelers filed an amended claim for such fees, PG & E objected based on the rule the Ninth Circuit adopted in its prior *Fobian* decision that where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees generally will not be awarded. The Bankruptcy Court rejected Travelers' claim on that basis, and the District Court and the Ninth Circuit affirmed.

*Held:*

1. Federal bankruptcy law does not disallow contract-based claims for attorney's fees based solely on the fact that the fees were incurred litigating bankruptcy law issues. Because the *Fobian* rule finds no support in federal bankruptcy law, the Ninth Circuit erred in disallowing Travelers' claim. Pp. 1203 - 1208.

(a) The American rule that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141, may be overcome by, *inter alia,* an "enforceable contract" allocating such fees, *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178, 75 USLW 4131, 57 Collier Bankr.Cas.2d 314, 47 Bankr.Ct.Dec. 265, Bankr. L. Rep. P 80,880, 07 Cal. Daily Op. Serv. 2895, 2007 Daily Journal D.A.R. 3691, 20 Fla. L. Weekly Fed. S 109
(Cite as: 549 U.S. 443, 127 S.Ct. 1199)

475. A contract allocating attorney's fees that is enforceable under substantive, nonbankruptcy law is allowable in bankruptcy except where the Bankruptcy Code provides otherwise. Cf. *Security Mortgage Co. v. Powers,* 278 U.S. 149, 154, 49 S.Ct. 84, 73 L.Ed. 236. The Code does not do so here. Pp. 1203 - 1204.

(b) Under the Bankruptcy Code, the bankruptcy court "shall allow" a creditor's claim "except to the extent that" the claim implicates any of *444 nine enumerated exceptions. 11 U.S.C. § 502(b). Because Travelers' attorney's fees claim has nothing to do with the exceptions set forth in §§ 502(b)(2)-(9), it must be allowed unless it is unenforceable under § 502(b)(1), which disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." Pp. 1204 - 1205.

**1201 (c) Section 502(b)(1) is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. This reading is consistent not only with the plain statutory text, but also with the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13. That principle requires bankruptcy courts to consult state law in determining the validity of most claims. See *ibid.* Thus, when the Code uses the word "claim"-*i.e.,* a "right to payment," § 101(5)(A)-it is usually referring to a right to payment recognized under state law, "[u]nless some federal interest requires a different result," *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136. Pp. 1204 - 1205.

(d) The *Fobian* rule finds no support in § 502 or elsewhere in federal bankruptcy law. The *Fobian* court did not identify any Code provision as presenting such support, but instead cited three of its own prior decisions, none of which identified any basis for disallowing a contractual claim for attorney's fees. Nor did the court have occasion to do so; in each of those cases, the attorney's fees claim failed as a matter of state law. The absence of such textual support

is fatal for the *Fobian* rule. See *FCC v. NextWave Personal Communications Inc.,* 537 U.S. 293, 302, 123 S.Ct. 832, 154 L.Ed.2d 863. In light of § 502(b)(1)'s broad, permissive scope, and the Court's prior recognition that "the character of [a contractual] obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy," it necessarily follows that the *Fobian* rule cannot stand. *Security Mortgage, supra,* at 154, 49 S.Ct. 84. Pp. 1205 - 1207.

2. The Court expresses no opinion as to PG & E's arguments that unsecured claims for contractual attorney's fees, such as Travelers', are categorically disallowed by § 506(b), which expressly authorizes such fees "[t]o the extent that an allowed secured claim is secured by property [whose] value [exceeds] the amount of such claim," and that such disallowance is confirmed by the Bankruptcy Code's structure and purpose, as examined against the backdrop of pre-Code bankruptcy law. The Court ordinarily does not consider arguments, such as these, that were *445 neither raised nor addressed below, *Cooper Industries, Inc. v. Aviall Services, Inc.,* 543 U.S. 157, 168-169, 125 S.Ct. 577, 160 L.Ed.2d 548, and PG & E has not identified any circumstances warranting an exception to that rule here. PG & E's insistence that its arguments are "fairly included" within the question presented in the certiorari petition is not persuasive. Pp. 1206 - 1208.

167 Fed.Appx. 593, vacated and remanded.

ALITO, J., delivered the opinion for a unanimous Court.

G. Eric Brunstad, Jr., Hartford, Connecticut, for Petitioner.

E. Joshua Rosenkranz, New York, New York, for Respondent.

G. Eric Brunstad, Jr., Rheba Rutkowski, Robert A. Brundage, William C. Heuer, Francesca L. Miceli, Eric Heining, Sukti Dhital, Amy Lawler, Nicholas Salazar, Bingham McCutchen LLP, Hartford, Connecticut, for Petitioner.

Gary M. Kaplan, Howard Rice Nemerovski, Canady Falk & Rabkin, San Francisco, California, Thomas C. Goldstein, Akin Gump Strauss Hauer & Feld LLP, **1202 Washington, DC, E. Joshua Rosenkranz, David B. Goodwin, Carren Shulman, Timothy S.

549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178, 75 USLW 4131, 57 Collier Bankr.Cas.2d 314, 47 Bankr.Ct.Dec. 265, Bankr. L. Rep. P 80,880, 07 Cal. Daily Op. Serv. 2895, 2007 Daily Journal D.A.R. 3691, 20 Fla. L. Weekly Fed. S 109
**(Cite as: 549 U.S. 443, 127 S.Ct. 1199)**

Mehok, Andrew Levine, Heller Ehrman LLP, New York, New York, for Respondent.

For U.S. Supreme Court briefs, see:2006 WL 3387940 (Pet.Brief)2006 WL 3825666 (Resp.Brief)2007 WL 62294 (Reply.Brief)

Justice ALITO delivered the opinion of the Court.

We are asked to consider whether federal bankruptcy law precludes an unsecured creditor from recovering attorney's fees authorized by a prepetition contract and incurred in postpetition litigation. The Court of Appeals for the Ninth Circuit held, based on a rule previously adopted by that court, that such fees are categorically prohibited-even where the contractual allocation of attorney's fees would be enforceable under applicable nonbankruptcy law to the extent the litigation involves issues of federal bankruptcy law. Because that rule finds no support in the Bankruptcy Code, we vacate and remand.

I

Respondent Pacific Gas and Electric Company (PG & E) filed a voluntary Chapter 11 bankruptcy petition in April **446 2001, 11 U.S.C. § 1101 et seq., and continued thereafter to operate its business as a "debtor in possession." §§ 1107(a), 1108. The bankruptcy filing caught the attention of petitioner Travelers Casualty & Surety Company (Travelers), which had previously issued a $100 million surety bond on PG & E's behalf to the California Department of Industrial Relations, guaranteeing PG & E's payment of state workers' compensation benefits to injured employees.FN1 In connection with the bond, PG & E executed a series of indemnity agreements in favor of Travelers. The indemnity agreements provide that PG & E will be responsible for any loss Travelers might incur in connection with the bonds, including any attorney's fees incurred in pursuing, protecting, or litigating Travelers' rights in connection with those bonds.

> FN1. California law required PG & E to provide workers' compensation benefits for its employees by either (1) purchasing workers' compensation insurance from a licensed provider of such insurance or (2) adopting a plan, with the State's approval, to self-insure. PG & E chose the latter option,

and was therefore required to post security with the State to ensure ongoing payment of mandatory workers' compensation benefits. See Cal. Lab.Code Ann. §§ 3700, 3701 (West 2003). Travelers posted the required security by issuing a bond on PG & E's behalf. The bond makes Travelers liable, up to $100 million, for workers' compensation benefits in the event of a default by PG & E.

Although no default occurred, Travelers asserted a claim in the bankruptcy action to protect itself in case PG & E defaulted on its workers' compensation benefits at some point in the future, requiring Travelers to make payments under its bond. In response to Travelers' claim, and with the knowledge and approval of the Bankruptcy Court, PG & E agreed to insert language into its reorganization plan and disclosure statement to protect Travelers' right to indemnity and subrogation in the event of a default by PG & E.

Travelers claims, however, that PG & E then unilaterally altered the negotiated language in a way that substantially diminished the protection it had been seeking. According to Travelers, that development resulted in additional litigation,**447 but Travelers and PG & E ultimately resolved the dispute by entering into a stipulation that was later approved by the Bankruptcy Court. In addition to accommodating Travelers' substantive concerns, the stipulation stated that Travelers "may assert its **1203 claim for attorneys' fees under the [i]ndemnity [a]greements" (subject to PG & E's right to object) as a general unsecured claim against PG & E. Brief for Petitioner 17.

Travelers subsequently filed an amended proof of claim seeking to recover the attorney's fees it incurred in connection with PG & E's bankruptcy proceedings. PG & E objected, arguing that Travelers could not recover attorney's fees incurred while litigating issues of bankruptcy law.

The Bankruptcy Court agreed and rejected Travelers' claim on that basis. App. to Pet. for Cert. 23a-25a. Travelers appealed that ruling to the District Court. The District Court affirmed, relying on In re Fobian, 951 F.2d 1149 (C.A.9 1991), which held that "where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party,"

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178, 75 USLW 4131, 57 Collier Bankr.Cas.2d 314, 47 Bankr.Ct.Dec. 265, Bankr. L. Rep. P 80,880, 07 Cal. Daily Op. Serv. 2895, 2007 Daily Journal D.A.R. 3691, 20 Fla. L. Weekly Fed. S 109
**(Cite as: 549 U.S. 443, 127 S.Ct. 1199)**

*id.,* at 1153. See App. to Pet. for Cert. 10a, 17a.

Travelers appealed again, and the United States Court of Appeals for the Ninth Circuit affirmed. 167 Fed.Appx. 593 (2006). The panel acknowledged that, in at least some circumstances, a " 'prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law....' " *Id.,* at 594 (quoting *In re Baroff,* 105 F.3d 439, 441 (C.A.9 1997)). The panel nevertheless rejected Travelers' claim based on the *Fobian* rule, which it cited for the proposition that "attorney fees are not recoverable in bankruptcy for litigating issues 'peculiar to federal bankruptcy law.' " 167 Fed.Appx., at 594 (quoting *Fobian, supra,* at 1153). The panel explained that, because the fees claimed by Travelers were incurred litigating issues **\*448** that were "governed entirely by federal bankruptcy law," Travelers' claim necessarily failed.[FN2] 167 Fed.Appx., at 594.

> FN2. The Court of Appeals incorporated by reference the reasoning employed in *In re DeRoche,* 434 F.3d 1188 (C.A.9 2006), which was decided by the same panel that decided this case. 167 Fed.Appx., at 593. Although the *DeRoche* opinion is longer than its counterpart in this case, it adds very little to the panel's explanation of the *Fobian* rule. See *DeRoche, supra,* at 1190-1192.

Travelers sought review in this Court, noting a conflict among the Courts of Appeals regarding the validity of the *Fobian* rule. Compare *Fobian, supra,* at 1153, with *In re Shangra-La, Inc.,* 167 F.3d 843, 848-849 (C.A.4 1999). We granted certiorari to resolve that conflict, 549 U.S. 948, 127 S.Ct. 377, 166 L.Ed.2d 265 (2006).

II

[1][2] Under the American Rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); see *Hauenstein v. Lynham,* 100 U.S. 483, 490-491, 25 L.Ed. 628 (1880); *Arcambel v. Wiseman,* 3 Dall. 306, 1 L.Ed. 613 (1796). This default rule can, of course, be overcome by statute. *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). It can also be overcome by an "enforceable contract" allocating attorney's fees. *Ibid.*

In a case governed by the Bankruptcy Act of 1898, we observed that "[t]he character of [a contractual] obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy, either as a provable claim or by way of a lien upon specific property." *Security Mortgage Co. v. Powers,* 278 U.S. 149, 154, 49 S.Ct. 84, 73 L.Ed. 236 (1928). Similarly, under the terms of the current Bankruptcy Code, it **\*\*1204** remains true that an otherwise enforceable contract allocating attorney's fees (*i.e.,* one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise. See 4 Collier on Bankruptcy **\*449** ¶ 506.04[3] [a], p. 506-118 (rev. 15th ed.2006) (hereinafter Collier).

[3] This case requires us to consider whether the Bankruptcy Code disallows contract-based claims for attorney's fees based solely on the fact that the fees at issue were incurred litigating issues of bankruptcy law. We conclude that it does not.

A

When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim-*i.e.,* a document providing proof of a "right to payment," 11 U.S.C. § 101(5)(A)-against the debtor's estate. Once a proof of claim has been filed, the court must determine whether the claim is "allowed" under § 502(a) of the Bankruptcy Code: "A claim or interest, proof of which is filed under section 501 ... is deemed allowed, unless a party in interest ... objects."

But even where a party in interest objects, the court "shall allow" the claim "except to the extent that" the claim implicates any of the nine exceptions enumerated in § 502(b). *Ibid.* Those exceptions apply where the claim at issue is "unenforceable against the debtor ... under any agreement or applicable law," § 502(b)(1); "is for unmatured interest," § 502(b)(2); "is for [property tax that] exceeds the value of the [estate's] interest" in the property, § 502(b)(3); "is for services of an insider or attorney of the debtor" and "exceeds the reasonable value of such services," § 502(b)(4); is for unmatured debt on certain alimony and child support obligations, § 502(b)(5); is for cer-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178, 75 USLW 4131, 57 Collier Bankr.Cas.2d 314, 47 Bankr.Ct.Dec. 265, Bankr. L. Rep. P 80,880, 07 Cal. Daily Op. Serv. 2895, 2007 Daily Journal D.A.R. 3691, 20 Fla. L. Weekly Fed. S 109
**(Cite as: 549 U.S. 443, 127 S.Ct. 1199)**

tain "damages resulting from the termination" of a lease or employment contract, §§ 502(b)(6) and (7); "results from a reduction, due to late payment, in the amount of ... credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor," § 502(b)(8); or was brought to the court's attention through an untimely proof of claim, § 502(b)(9).

**\*450** Travelers' claim for attorney's fees has nothing to do with property tax, child support or alimony, services provided by an attorney of the debtor, damages resulting from the termination of a lease or employment contract, or the late payment of any employment tax. See §§ 502(b)(2)-(8). Nor does it appear that the proof of claim was untimely. See § 502(b)(9). Thus, Travelers' claim must be allowed under § 502(b) unless it is unenforceable within the meaning of § 502(b)(1).

B

[4]Section 502(b)(1) disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. See 4 Collier ¶ 502.03[2] [b], at 502-22 (explaining that § 502(b)(1) is generally understood to "make available to the trustee any defense" available to the debtor "under applicable nonbankruptcy law"-*i.e.*, any defense that the debtor "could have interposed, absent bankruptcy, in a suit on the [same substantive] claim by the creditor").

This reading of § 502(b)(1) is consistent not only with the plain statutory text, but also with the settled principle that "[c]reditors'**\*\*1205** entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). That principle requires bankruptcy courts to consult state law in determining the validity of most claims. See *ibid.*

[5] Indeed, we have long recognized that the " 'basic

federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate **\*451** to state law.' " *Ibid.* (quoting *Butner v. United States,* 440 U.S. 48, 57, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); citation omitted). Accordingly, when the Bankruptcy Code uses the word " claim"-which the Code itself defines as a "right to payment," 11 U.S.C. § 101(5)(A)-it is usually referring to a right to payment recognized under state law. As we stated in *Butner,* "[p]roperty interests are created and defined by state law," and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." 440 U.S., at 55, 99 S.Ct. 914; accord, *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law").

C

[6] In rejecting Travelers' claim for contractual attorney's fees, the Court of Appeals did not conclude that the claim was "unenforceable" under § 502(b)(1) as a matter of applicable nonbankruptcy law. Nor did it conclude that Travelers' claim was rendered unenforceable by any provision of the Bankruptcy Code. To the contrary, the court acknowledged that, in at least some circumstances, a " 'prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law....' " 167 Fed.Appx., at 594 (quoting *Baroff,* 105 F.3d, at 441).

The court nevertheless rejected Travelers' claim based solely on a rule of that court's own creation-the so-called *Fobian* rule-which dictates that "attorney fees are not recoverable in bankruptcy for litigating issues 'peculiar to federal bankruptcy law.' " 167 Fed.Appx., at 594 (quoting *Fobian,* 951 F.2d, at 1153). The court explained that, because the fees claimed by Travelers were incurred litigating issues **\*452** that were " governed entirely by federal bankruptcy law," 167 Fed.Appx., at 594, Travelers' claim necessarily failed.

549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178, 75 USLW 4131, 57 Collier Bankr.Cas.2d 314, 47 Bankr.Ct.Dec.
265, Bankr. L. Rep. P 80,880, 07 Cal. Daily Op. Serv. 2895, 2007 Daily Journal D.A.R. 3691, 20 Fla. L. Weekly
Fed. S 109
**(Cite as: 549 U.S. 443, 127 S.Ct. 1199)**

The *Fobian* rule finds no support in the Bankruptcy Code, either in § 502 or elsewhere. In *Fobian,* the court did not identify any provision of the Bankruptcy Code as providing support for the new rule. See 951 F.2d, at 1153. Instead, the court cited three of its own prior decisions, *In re Johnson,* 756 F.2d 738 (1985); *In re Coast Trading Co.,* 744 F.2d 686 (1984);* and *In re Fulwiler,* 624 F.2d 908 (C.A.9 1980)* (per curiam). Significantly, in none of those cases did the court identify any basis for disallowing a contractual claim for attorney's fees incurred litigating issues of federal bankruptcy law. Nor did the court have occasion to do so; in each of those cases, the claim for attorney's fees failed as a matter of state law. See *Johnson, supra,* at 741-742;*Coast Trading, supra,* at 693;*Fulwiler, supra,* at 910.[FN3]

> FN3. In *Johnson,* the debtor sought attorney's fees after the creditor unsuccessfully requested relief from the automatic stay under 11 U.S.C. § 362(d)(1). The debtor acknowledged that the contract between the parties entitled only the creditor to attorney's fees, but the debtor claimed that a California statute extended that entitlement to both parties. The court rejected that argument, noting that the statute applied only in the context of an " 'action on a contract,' " and concluding that a request for relief from an automatic stay could not be considered an action on a contract. 756 F.2d, at 741-742. Both *Coast Trading* and *Fulwiler* involved claims for attorney's fees based on an Oregon statute similar to the statute at issue in *Johnson;* the court found the statute inapplicable in both cases. *Coast Trading,* 744 F.2d, at 693;*Fulwiler,* 624 F.2d, at 909-910.

**\*\*1206**[7] The absence of textual support is fatal for the *Fobian* rule. Consistent with our prior statements regarding creditors' entitlements in bankruptcy, see, *e.g.,Raleigh,* 530 U.S., at 20, 120 S.Ct. 1951, we generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed. See 11 U.S.C. § 502(b). Neither the court below nor PG & E has offered any reason why the fact that the attorney's fees in this case were incurred litigating**\*453** issues of federal bankruptcy law overcomes that presumption.

Section 502(b)(4) is instructive on this point. That provision expressly disallows claims for a particular category of attorney's fees-those "for services of an ... attorney of the debtor," to the extent the claimed fees "excee[d] the reasonable value of such services." The existence of that provision suggests that, in its absence, a claim for such fees would be allowed in bankruptcy to the extent enforceable under state law. The absence of an analogous provision excluding the category of fees covered by the *Fobian* rule likewise suggests that the Code does not categorically disallow them. See 4 Collier ¶ 506.04[3][a], at 506-118 (concluding that *Fobian* "inverts the proper analysis" by allowing attorney's fees only where they are expressly authorized by the Bankruptcy Code, and explaining that "a claim for attorney's fees arising in the context of litigating bankruptcy issues must be allowed if valid under applicable state law").

Congress, of course, has the power to amend the Bankruptcy Code by adding a provision expressly disallowing claims for attorney's fees incurred by creditors in the litigation of bankruptcy issues. But because no such provision exists, the Bankruptcy Code provides no basis for disallowing Travelers' claim on the grounds stated by the Ninth Circuit.

As we explained in *FCC v. NextWave Personal Communications Inc.,* 537 U.S. 293, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003), "where Congress has intended to provide ... exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly." *Id.,* at 302, 123 S.Ct. 832. Here, the Bankruptcy Code does not "clearly and expressly" compel courts to follow the *Fobian* rule; on the contrary, the Code says *nothing* about unsecured claims for contractual attorney's fees incurred while litigating issues of bankruptcy law. In light of the broad, permissive scope of § 502(b)(1), and our prior recognition that "the character of [a contractual] obligation to pay attorney's fees presents no **\*454** obstacle to enforcing it in bankruptcy," it necessarily follows that the *Fobian* rule cannot stand. *Security Mortgage,* 278 U.S., at 154, 49 S.Ct. 84; see *Cohen v. de la Cruz,* 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) ("We ... 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure'**\*\*1207**" (quoting *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990))).

549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178, 75 USLW 4131, 57 Collier Bankr.Cas.2d 314, 47 Bankr.Ct.Dec. 265, Bankr. L. Rep. P 80,880, 07 Cal. Daily Op. Serv. 2895, 2007 Daily Journal D.A.R. 3691, 20 Fla. L. Weekly Fed. S 109
**(Cite as: 549 U.S. 443, 127 S.Ct. 1199)**

### III

PG & E makes no effort to defend the *Fobian* rule. See Tr. of Oral Arg. 28 (conceding that PG & E does not defend the *Fobian* rule, and acknowledging that "[t]he Fobian rule is wrong ... as to the distinction that it draws between State law and Federal litigation"). Instead, PG & E argues that § 506(b) categorically disallows unsecured claims for contractual attorney's fees and-noting that Travelers' claim is unsecured-asks us to affirm on that basis. Section 506(b) provides as follows:

"To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C.A. § 506(b) (2000 ed., and Supp. V).

According to PG & E, this provision authorizes claims for contractual attorney's fees to the extent the creditor is oversecured, but disallows such claims to the extent the creditor is either not oversecured or (like Travelers) completely unsecured. This reading of the Code, PG & E argues, "is not a matter of negative implication, but of explicit negation." Brief for Respondent 18. PG & E also argues that the structure and purpose of the Bankruptcy Code, examined against the backdrop of pre-Code bankruptcy law, confirm that Congress***455** did not intend to allow unsecured creditors to recover attorney's fees. See *id.*, at 25-38.

PG & E did not raise these arguments below. Consequently, none of the lower courts had occasion to address them. Nor were these arguments presented in PG & E's brief in opposition to certiorari. PG & E nevertheless insists that we should address these arguments as though they were "fairly included" within the question presented in Travelers' petition for certiorari. See *id.*, at 41. That contention appears to be premised on the theory that "the Fobian rule reaches the correct conclusion in this case," but "doesn't go far enough in ... preventing creditors from requiring other creditors to pay for their attorneys' fees." Tr. of Oral Arg. 25.

We are not persuaded. We granted certiorari to resolve a conflict among the lower courts regarding the *Fobian* rule, which is analytically distinct from, and fundamentally at odds with, PG & E's reading of § 506(b).[FN4]

> **FN4.** PG & E's new reading of the Code would prohibit *all* unsecured creditors from recovering contractual, postpetition attorney's fees in bankruptcy proceedings-even if those fees were incurred while litigating issues of state law. See Brief for Respondent 17-19. The *Fobian* rule, by contrast, would allow such a recovery-even by unsecured creditors-so long as the litigation resulting in the claimed fees did not involve "issues peculiar to federal bankruptcy law." See *In re Fobian, 951 F.2d 1149, 1153 (C.A.9 1991).*

[8] In any event, we ordinarily do not consider claims that were neither raised nor addressed below, *Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157, 168-169, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004)*, and PG & E has failed to identify any circumstances that would warrant an exception to that rule in this case. We therefore will not consider these arguments.[FN5]

> **FN5.** For similar reasons, we will not address PG & E's argument that Travelers' claim should be denied based on the theory that the fees at issue were incurred in connection with activities that were not reasonably necessary to preserve Travelers' rights and, alternatively, were not authorized by Travelers' contract with PG & E. See Brief for Respondent 42-49. This argument was not addressed below, was not raised in PG & E's brief in opposition to certiorari, and bears no relation to the question presented. See this Court's Rule 14.1(a) ("Only the questions set out in the petition, or fairly included therein, will be considered by the Court").

***456** Accordingly, we express no opinion with regard to whether, following the demise of ****1208** the *Fobian* rule, other principles of bankruptcy law might provide an independent basis for disallowing Travelers' claim for attorney's fees. We conclude only that the Court of Appeals erred in disallowing that claim based on the fact that the fees at issue were incurred

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178, 75 USLW 4131, 57 Collier Bankr.Cas.2d 314, 47 Bankr.Ct.Dec. 265, Bankr. L. Rep. P 80,880, 07 Cal. Daily Op. Serv. 2895, 2007 Daily Journal D.A.R. 3691, 20 Fla. L. Weekly Fed. S 109
**(Cite as: 549 U.S. 443, 127 S.Ct. 1199)**

litigating issues of bankruptcy law.

* * *

The judgment of the United States Court of Appeals for the Ninth Circuit is therefore vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

U.S.,2007.
Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.
549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178, 75 USLW 4131, 57 Collier Bankr.Cas.2d 314, 47 Bankr.Ct.Dec. 265, Bankr. L. Rep. P 80,880, 07 Cal. Daily Op. Serv. 2895, 2007 Daily Journal D.A.R. 3691, 20 Fla. L. Weekly Fed. S 109

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



▷ United States Court of Appeals,
Eleventh Circuit.
Chapter 7 Trustee Douglas N. MENCHISE, Plaintiff-
Appellant,
v.
AKERMAN SENTERFITT, a Florida professional
association, Michael I. Goldberg,
Defendants-Appellees.
**No. 07-13046.**

July 2, 2008.

**Background:** Adversary proceeding for legal mal-
practice was brought in the United States Bankruptcy
Court for the Middle District of Florida, No. 03-
00798-BKC-AL, Alexander L. Paskay, J. Following
withdrawal of reference and summary judgment for
attorney, trustee of bankruptcy estate appealed order
of the United States District Court for the Middle
District of Florida, No. 04-01693-CV-T-24MSS,
Susan C. Bucklew, J., awarding attorney fees pursu-
ant to Florida offer of judgment statute to law firm
which prevailed.

**Holdings:** The Court of Appeals, Pryor, Circuit
Judge, held that:
(1) Florida statute providing for award of attorney
fees to a defendant
who prevails after the plaintiff has refused to accept
an offer of judgment or settlement was applicable in
bankruptcy proceeding;
(2) Florida offer of judgment statute which applies in
civil actions for damages in "courts of this state" ap-
plies to actions filed in federal courts located in Flor-
ida; abrogating *Yossifon v. City of Cocoa Beach,*
*2006 WL 2130909,* and *Keesee v. Bank of Am., NA,*
*371 F.Supp.2d 1370;* and
(3) federal offer of judgment rule which provides for
award of costs to an offeror if the judgment obtained
by the offeree is not more favorable than the unac-
cepted offer, does not preempt Florida offer of judg-
ment statute.
Affirmed.

West Headnotes

**[1] Bankruptcy** 🔑2002

51k2002Most Cited Cases
The substantive law of the forum state governs issues
of state law that arise in bankruptcy proceedings.

**[2] Bankruptcy** 🔑2183
51k2183Most Cited Cases
Florida statute providing for award of attorney fees to
a defendant who prevails after the plaintiff has re-
fused to accept an offer of judgment or settlement
was applicable in bankruptcy proceeding, as the sub-
stantive law of the forum state. West's F.S.A. §
768.79.

**[3] Federal Courts** 🔑415
170Bk415Most Cited Cases
Florida offer of judgment statute which applies in
civil actions for damages in "courts of this state,"
applies to actions filed in federal courts located in
Florida, as such courts are "courts of Florida" be-
cause they adjudicate claims under Florida law and
are a part of the judicial system in that state; abrogat-
ing *Yossifon v. City of Cocoa Beach,* 2006 WL
2130909, and *Keesee v. Bank of Am., NA,* 371
F.Supp.2d 1370.West's F.S.A. § 768.79.

**[4] States** 🔑18.1
360k18.1Most Cited Cases
Under the Supremacy Clause of the United States
Constitution, a state cannot discriminate either
against a federal cause of action or against a party's
resort to a federal forum. U.S.C.A. Const. Art. 6, cl.
2.

**[5] Bankruptcy** 🔑2183
51k2183Most Cited Cases
Application of Florida offer of judgment statute in a
bankruptcy proceeding does not conflict with the
purposes of the Bankruptcy Code on theory that it
punishes a debtor's estate for pursuit of a claim in a
bankruptcy proceeding, as the statute would penalize
an estate only if the estate did not accept a reasonable
settlement offer made in good faith. West's F.S.A. §
768.79.

**[6] States** 🔑18.5
360k18.5Most Cited Cases
Federal law preempts a state statute when the two

directly conflict.

**[7] Costs** 🔑4

102k4Most Cited Cases

**[7] Costs** 🔑194.22

102k194.22Most Cited Cases

**[7] States** 🔑18.15

360k18.15Most Cited Cases

Federal offer of judgment rule which provides for award of costs to an offeror if the judgment obtained by the offeree is not more favorable than the unaccepted offer, does not preempt Florida statute providing for award of costs and attorney fees in connection with offers of judgment, demands for judgment, and offers of settlement, as the two provisions are not in direct collision.

Fed.Rules Civ.Proc.Rule 68, 28 U.S.C.A.; West's F.S.A. § 768.79.

**[8] Bankruptcy** 🔑2183

51k2183Most Cited Cases

**[8] Bankruptcy** 🔑3040.1

51k3040.1Most Cited Cases

District court did not abuse its discretion in bankruptcy proceeding when it denied debtor's requests for discovery and an evidentiary hearing in connection with motion for attorney fees filed by law firm which prevailed in legal malpractice action brought against it by debtor, where debtor did not provide district court with any legal argument in support of her requests, and did not allege that discovery could produce any evidence that was necessary, or even helpful, to the fee determination.

**\*1147**David A. Maney, Lee S. Damsker, Maney, Damsker, Jones, Kiely & Kuhlman, P.A., Tampa, FL, for Plaintiff-Appellant.

Marie A. Borland, Benjamin H. Hill, III, Erik R. Matheny, Mark J. Criser, Hill, Ward & Henderson, P.A., Tampa, FL, for Defendants-Appellees.

Appeal from the United States District Court for the Middle District of Florida.

Before EDMONDSON, Chief Judge, PRYOR, Circuit Judge, and JOHNSON, [FN*] District Judge.

FN* Honorable Inge P. Johnson, United States District Judge for the Northern District of Alabama, sitting by designation.

**\*1148**PRYOR, Circuit Judge:

The trustee for the estate of Terri L. Steffen appeals an award of attorney's fees to Akerman, Senterfitt, & Eidson, P.A., and attorney Michael I. Goldberg (collectively "Akerman") under Florida law. Fla. Stat. § 768.79. Steffen argues that section 768.79 is inapplicable in a bankruptcy case and its plain language applies to cases brought only in the "courts of" Florida. Steffen also argues that section 768.79 is preempted by Federal Rule of Civil Procedure 68. Finally, Steffen contends that the district court abused its discretion by denying her requests for discovery and an evidentiary hearing. These arguments fail. Section 768.79 applies in this bankruptcy proceeding, cannot be interpreted to discriminate against a federal forum, and is not preempted by Rule 68. The district court also did not abuse its discretion by denying Steffen's meritless requests for discovery and an evidentiary hearing. We affirm.

### I. BACKGROUND

Steffen's husband, Paul Bilzerian, was convicted of defrauding the United States. United States v. Bilzerian, 926 F.2d 1285, 1299 (2d Cir.1991). After Bilzerian's conviction, the Securities and Exchange Commission filed a civil suit for violations of the securities laws against Bilzerian. SEC v. Bilzerian, 1991 WL 83964 (D.D.C. Apr. 8, 1991), aff'd,29 F.3d 689 (D.C.Cir.1994). The district court for the District of Columbia found Bilzerian liable for securities fraud and ordered him to disgorge over sixty million dollars in illegal profits. SEC v. Bilzerian, 1993 WL 542584, at *1 (D.D.C. June 25, 1993); SEC v. Bilzerian, 814 F.Supp. 116, 121-24 (D.D.C.1993), aff'd,29 F.3d 689 (D.C.Cir.1994); SEC v. Bilzerian, 1991 WL 83964, at *1 (D.D.C. Apr. 8, 1991), aff'd,29 F.3d 689. Bilzerian filed for bankruptcy after he transferred his interest in assets that he owned with Steffen jointly to Steffen individually. See Steffen v. Gray, Harris & Robinson, P.A., 283 F.Supp.2d 1272, 1276 (M.D.Fla.2003) (hereinafter Steffen I),aff'd, 138 Fed.Appx. 297 (11th Cir.2005) (unpublished decision) (hereinafter Steffen II).

The district court held Bilzerian in civil contempt and determined that his transfer of assets violated the

disgorgement order. *SEC v. Bilzerian*, 112 F.Supp.2d 12, 13 (D.D.C.2000). The district court appointed a receiver for the purpose of "identifying, marshalling, receiving, and liquidating" Bilzerian's assets in satisfaction of the disgorgement order. *SEC v. Bilzerian*, 127 F.Supp.2d 232, 232 (D.D.C.2000). At the request of the receiver, the district court froze Steffen's assets and the assets of her entities based on the receiver's belief that Steffen possessed property in which Bilzerian had an interest. *See Steffen v. Akerman Senterfitt*, 2005 WL 3277894, at *2 (M.D.Fla. Dec. 2, 2005).

Steffen retained Akerman, for which Goldberg worked as an attorney, to free Steffen's assets and assets of her entities. *See id.* Two days later, Akerman consented to an extension of the asset freeze and stipulated to an order for the production of documents by Steffen and her entities to the receiver. *See id.* Akerman later moved to withdraw as Steffen's counsel, and the district court granted the motion. *See id.* at *3.

In 2001, Steffen filed a petition under Chapter 11 of the Bankruptcy Code. *See Steffen I*, 283 F.Supp.2d at 1280. Steffen later intervened in the action that the Securities and Exchange Commission brought against Bilzerian and challenged the asset freeze. *Steffen v. United States (In re Steffen)*, 349 B.R. 734, 736-37 (M.D.Fla.2006). In December 2001, Steffen entered a settlement agreement with the Commission in which she agreed to transfer a fifty-percent interest in her assets *1149 to the receiver in exchange for dissolution of the freeze order. *Id.* at 737.

In 2002, Steffen filed a legal malpractice action against Gray, Harris & Robinson, P.A., which had represented her in the litigation with the Commission after Akerman withdrew from the case. *Steffen I*, 283 F.Supp.2d at 1280. Steffen alleged that the firm had negligently advised her to form a system of trusts that exposed her assets during the Bilzerian contempt litigation. *Id.* at 1280. The district court granted summary judgment to the firm, *id.* at 1285, and we affirmed, *Steffen II*, 138 Fed.Appx. 297.

In 2003, Steffen filed a one-count complaint for legal malpractice against Akerman as an adversary proceeding in the bankruptcy court, and the district court later withdrew the reference to the bankruptcy court. Akerman served Steffen with an offer to settle in the amount of $10,000 under section 768.79 of the Florida Statutes, but this offer did not apportion liability between the law firm and Goldberg. After the decision of the Florida Supreme Court in *Lamb v. Matetzschk*, 906 So.2d 1037 (Fla.2005), Akerman served Steffen with a second offer, which apportioned the amount between the defendants and was conditioned upon the acceptance by Steffen of the offer from each defendant. Steffen did not accept either offer. The district court granted summary judgment in favor of Akerman, and we affirmed.

Akerman moved for attorney's fees under section 768.79 of the Florida Statutes. We granted the motion of Akerman to transfer its application for an award of appellate attorney's fees to the district court. Steffen moved for an extension of time to respond to the motion for attorney's fees, a period of discovery related to that motion, and an evidentiary hearing on that motion. The district court denied Steffen's motion.

The district court held that Akerman was entitled to attorney's fees but denied the requested amount. The district court ordered Akerman to file a second amended motion for attorney's fees that included a detailed billing statement and affidavits regarding reasonableness. After Akerman filed its second amended motion for attorney's fees with appendices, and the district court thoroughly reviewed each billing entry, the district court awarded Akerman $223,158.97 in attorney's fees.

Steffen appealed the award of attorney's fees. The bankruptcy court later converted Steffen's bankruptcy case from a Chapter 11 reorganization to a Chapter 7 liquidation and appointed Douglas N. Menchise as the trustee of the estate. Akerman moved to substitute Menchise as the appellant in this appeal, and we granted the motion.

## II. STANDARDS OF REVIEW

We review the decision of the district court to award attorney's fees for an abuse of discretion. *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1556 (11th Cir.1987). "To the extent that the district court's conclusion implicates a question of law, we review *de novo*." *Barnes v. Broward County Sheriff's Office*, 190 F.3d 1274, 1276-77 (11th Cir.1999) (citing *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir.1996)). We review discovery rulings and the denial of a request for an evidentiary hearing for an

abuse of discretion. *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121 (11th Cir.2004).

### III. DISCUSSION

We address Steffen's arguments in two parts. First, we conclude that the district court did not err when it applied section 768.79 in this bankruptcy proceeding. **\*1150** Second, we conclude that the district court did not abuse its discretion when it denied Steffen's requests for discovery and an evidentiary hearing.

### A. The District Court Correctly Applied *Section 768.79* in This Bankruptcy Proceeding.

A Florida statute provides, "In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees ... if the judgment is one of no liability...." Fla. Stat. § 768.79(1). The record establishes that Akerman, as a defendant against a complaint of malpractice governed by Florida law, filed an offer of settlement that Steffen rejected, and a judgment of no liability was entered later in favor of Akerman. The main question in this appeal is whether the district court was bound to apply section 768.79 in this non-core bankruptcy proceeding.

Steffen argues that section 768.79 is inapplicable for two reasons. First, Steffen argues that section 768.79 does not apply in bankruptcy proceedings. Second, Steffen argues that section 768.79 is preempted by Federal Rule of Civil Procedure 68. These arguments fail.

#### 1. *Section 768.79* Applies in Bankruptcy Proceedings.

[1][2] Steffen argues that section 768.79 is not substantive law in bankruptcy proceedings, but we disagree. We have held that section 768.79 is substantive law in diversity cases, *Jones v. United Space Alliance, L.L.C.*, 494 F.3d 1306, 1309 (11th Cir.2007), and we have concluded that the substantive law of the forum state governs issues of state law that arise in bankruptcy proceedings. *See Colwell v. Royal Int'l Trading Corp. (In re Colwell)*, 196 F.3d 1225, 1226 (11th Cir.1999); *Fruehauf Corp. v. Revitz (In re Transystems, Inc.)*, 569 F.2d 1364, 1366 (5th Cir.1978). Steffen's malpractice claim is governed by Florida law in the bankruptcy court, and section

768.79 applies to this appeal.

[3] Steffen also argues that the plain language of section 768.79 precludes its application to actions filed in federal court. Section 768.79(1) applies to "any civil action for damages filed in the courts of" Florida. Fla. Stat. § 768.79. Because the text reads "courts of this state" instead of "courts in this state," Steffen argues that the statute applies only to actions filed in Florida courts, not to actions filed in a district court, and Steffen cites two decisions of a district court in support of her argument. *See Yossifon v. City of Cocoa Beach*, 2006 WL 2130909, at \* 1 (M.D.Fla. July 28, 2006) (finding that section 768.69 "refers only to cases filed in Florida state courts and does not include suits filed in federal courts in the state of Florida"); *Keesee v. Bank of Am., NA*, 371 F.Supp.2d 1370, 1376 n. 3 (M.D.Fla.2005) ("Although [the] Florida legislature may have a strong policy favoring the reduction of court case loads [evident from the enactment of section 768.79], that policy appears self-evidently limited to Florida courts." (citation omitted)).

[4] This argument fails for two reasons. First, the language of section 768.79 does not bar its application to claims based on state law that are filed in federal court. The district and bankruptcy courts of our Circuit that are located in Florida are courts of Florida because they adjudicate claims under Florida law and are a part of the judicial system in that state. At least one Florida court has explained that section 768.79 "applies to all civil actions for damages brought in Florida." *Marcy v. Daimlerchrysler Corp.*, 921 So.2d 781, 785 (Fla.Dist.Ct.App.2006). Second, even if we were to read "filed in the courts of [Florida]" as an attempt by the Florida Legislature to limit the application of **\*1151**section 768.79 to actions brought in Florida courts, that attempt would fail because Florida cannot discriminate against a federal forum. Under the Supremacy Clause of the Constitution, a state can discriminate neither against a federal cause of action, *Testa v. Katt*, 330 U.S. 386, 394, 67 S.Ct. 810, 815, 91 L.Ed. 967 (1947); *Mondou v. N.Y., New Haven & Hartford R.R. Co.*, 223 U.S. 1, 58-59, 32 S.Ct. 169, 178-79, 56 L.Ed. 327 (1912); *see also Burnett v. Grattan*, 468 U.S. 42, 60-61, 104 S.Ct. 2924, 2935, 82 L.Ed.2d 36 (1984) (Rehnquist, J., concurring in the judgment) ("Plainly, if the statute of limitations discriminates against federal claims, such that a federal claim would be time-barred, while an

equivalent state claim would not, then the state law is inconsistent with federal law."), nor against a party's resort to a federal forum, *NAACP v.Alabama ex rel. Patterson*, 357 U.S. 449, 457, 78 S.Ct. 1163, 1169, 2 L.Ed.2d 1488 (1958) ("Novelty in procedural requirements [under state law] cannot be permitted to thwart review in this Court ...."). When federal courts apply state law, whether in bankruptcy or diversity, they do so as a matter of federal policy that cannot be disfavored by a state. As Justice Brandeis several decades ago wrote for a unanimous Court, "[a] state may not discriminate against rights arising under federal laws." *McKnett v. St. Louis & S.F. Ry. Co.*, 292 U.S. 230, 234, 54 S.Ct. 690, 692, 78 L.Ed. 1227 (1934).

[5] Steffen argues that the application of section 768.79 would frustrate the purpose of the Bankruptcy Code because it would punish a debtor's estate for the pursuit of a claim in a bankruptcy proceeding. We disagree. The Supreme Court recently ruled that the Bankruptcy Code does not disallow "**contract-based claims for attorney's fees based solely on the fact that the fees at issue were incurred litigating issues of bankruptcy law**." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 127 S.Ct. 1199, 1204, 167 L.Ed.2d 178 (2007). The Court described the "basic federal rule" in bankruptcy "**that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law**." *Id.* at 1205 (quoting *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 1955, 147 L.Ed.2d 13(2000)) (internal quotation marks omitted). The *Travelers* Court reversed a decision of the Ninth Circuit, which had not followed its general rule that "a prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." *Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir.1997); *see also Cadle Co. v. Martinez (In re Martinez)*, 416 F.3d 1286, 1288 (11th Cir.2005) (affirming an award of fees in a bankruptcy proceeding under the reciprocal attorney's fees statute in Florida, Fla. Stat. § 57.105(6)).

Steffen's argument that the application of section 768.79 in a bankruptcy case "subjects bankruptcy estates to penalties for unsuccessfully pursuing claims authorized by a bankruptcy court" is unper-

suasive. The statute would "penalize" the estate only if the estate did not accept a reasonable settlement offer made in good faith. Fla. Stat. § 768.79. The main purposes of bankruptcy law are to collect all of the assets and liabilities of an entity, to pay the creditors of the bankrupt to the fullest extent possible, and to give the debtor a fresh start. *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir.1993). The goal of the statute, which is to make whole a party forced to litigate after a reasonable settlement offer is rejected, does not conflict with the purposes of the Bankruptcy Code. The statute seeks to encourage settlement and to conserve judicial resources.

***1152** 2. Rule 68 Does Not Preempt Section 768.79. Steffen also argues that Rule 68 preempts section 768.79. Steffen argues that both the federal rule and the state statute were designed to encourage early settlement and they directly conflict. Again, we disagree.

[6] Federal law preempts a state statute when the two directly conflict, *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995), but section 768.79 and Rule 68 do not conflict. Section 768.79 provides for the recovery of attorney's fees and other costs, but Rule 68 provides for an award of only costs. *Compare*Fla. Stat. § 768.79*with*Fed.R.Civ.P. 68. Section 768.79 also addresses offers of judgment, demands for judgment, and offers of settlement and does not require the entry of a judgment as a prerequisite. Fla. Stat. § 768.79; *see also* *Abbott & Purdy Group, Inc. v. Bell*, 738 So.2d 1024, 1027 (Fla.Dist.Ct.App.1999). Rule 68 applies only to offers of judgment, so a "judgment [against the defendant] on specified terms" is required. Fed.R.Civ.P. 68; *see also* *Bell*, 738 So.2d at 1027.

[7] Eighteen years ago, we concluded that the predecessor to the current version of section 768.79 was not preempted by Rule 68, *Tanker Mgmt., Inc. v. Brunson*, 918 F.2d 1524, 1528-29 (11th Cir.1990), and that decision controls our resolution of this issue. In *Tanker*, the defendant made three offers that the plaintiff rejected: a proposal for settlement under section 45.061 of the Florida Statutes, an offer of judgment under an earlier version of section 768.79, and an offer of judgment under Rule 68. *Id.* at 1526.

The district court directed a verdict in favor of the defendant and awarded the defendant costs and attorney's fees, but the court did not specify the statute under which it awarded attorney's fees. *Id.* We examined each provision to determine which of them, if any, could support the award of attorney's fees. *Id.* at 1527. We concluded that Rule 68 did not support the award because it allowed an award of only costs "unless the underlying statute that creates the cause of action expressly provides that attorney's fees are recoverable as costs." *Id.* We concluded that the earlier version of section 768.79 did not support the award because that version did not apply to a prevailing defendant. *Id.* We examined section 45.061, which provided that a prevailing defendant who had served either an offer of judgment or an offer of settlement could recover attorney's fees if the plaintiff rejected the offer. *Id.* at 1528. We held that Rule 68 did not preempt section 45.061 because the two provisions were not in "direct collision." *Id.* "Rule 68 concerns only [costs] and offers of judgment, while [section 45.061] concerns attorney's fees, offers of judgment and settlement offers." *Id.* We explained that Rule 68 was "in no way applicable to settlement offers." *Id.* at 1529. In 1990, the Florida Legislature consolidated sections 768.79 and 45.061 into the current version of section 768.79, and this new provision addresses offers of judgment, demands for judgment, and offers of settlement and provides for awards of costs and attorney's fees to either party.

Akerman made offers of settlement to Steffen like the offers in *Tanker*. Steffen insists that Akerman made offers of judgment, not offers of settlement, because the documents she received were titled "offer of judgment," but neither offer provided for an entry of judgment against Akerman. The offers instead proposed a settlement of all claims with Steffen for $10,000 if she would "dismiss her claims against [Akerman] with prejudice." An offer of judgment, as contemplated by Rule 68, requires that a judgment be entered in favor **1153** of the offeree. Fed.R.Civ.P. 68; *see also Bell*, 738 So.2d at 1027. The offers by Akerman were like the settlement offers in *Tanker*, so the reasoning in *Tanker* compels our conclusion that Rule 68 does not preempt section 768.79.

*B. The District Court Did Not Abuse Its Discretion When It Denied Steffen's Requests for Discovery and an Evidentiary Hearing.*

[8] Steffen argues that the district court abused its discretion when it denied her requests for discovery and an evidentiary hearing regarding whether the motion for attorney's fees filed by Akerman was made in good faith. She contends that the district court failed to explain its rulings. She also argues that the denial of discovery by the district court was "essentially a denial of due process" because she could not meet her burden to prove that Akerman did not make its offer under section 768.79 in good faith without additional discovery. These arguments fail.

As the Supreme Court has explained, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). When deciding a motion for attorney's fees, courts rarely reopen discovery, and evidentiary hearings are often unnecessary. *See* Fed.R.Civ.P. 54(d)(2) advisory committee's note; 2 Mary Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* § 25.01 (2007) ("[P]ost-judgment discovery into fee issues is rare."). A determination of a fee award by a district court "solely on the affidavits in the record" is "perfectly proper." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988).

The district court did not abuse its discretion when it denied Steffen's requests for discovery and an evidentiary hearing. Steffen did not provide the district court with any legal argument in support of her requests. She did not allege that discovery could produce any evidence that was necessary, or even helpful, to the fee determination. The district court, in a thorough opinion, initially determined that it did not have enough information in the record about the hours billed and the fees charged by Akerman to determine whether they were reasonable, so it ordered Akerman to produce evidence to support the fee application. After a review of additional affidavits and each billing entry, the district court awarded Akerman approximately half of the amount that Akerman initially requested. The district court was then able to determine an appropriate fee award, and Steffen does not challenge the amount of the award as unreasonable. We cannot conclude that the district court abused its discretion when it denied Steffen's requests for discovery and an evidentiary hearing.

Steffen cites *Jaime Schapiro AIA v. Rubinson*, 784 So.2d 1135 (Fla.Dist.Ct.App.2000), for the proposition that an "evidentiary hearing is required" in con-

nection with a good faith inquiry under section 768.79, but Steffen misunderstands that decision. In *Jaime Schapiro AIA*, the trial court denied the defendant's motion for attorney's fees under section 768.79 without a hearing on the ground that the defendant did not make the settlement offers in good faith. *Id.* at 1137. The appellate court determined that the trial court should have held a hearing on the issue of good faith because the trial court had not required the plaintiff to meet her burden to establish a lack of good faith. *Id.* The *Jaime Schapiro AIA* court did not hold that an evidentiary hearing is always required to determine when an offer is made in good faith, as Steffen argues. The court instead concluded that a hearing might be necessary if the record does not include evidence sufficient to establish **\*1154** bad faith and the court is inclined to deny a motion for attorney's fees on the basis of a bad faith offer. *Id.*

## IV. CONCLUSION

The award of attorney's fees to Akerman is

AFFIRMED.

532 F.3d 1146, 21 Fla. L. Weekly Fed. C 843

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



586 F.3d 143                                                                                                    Page 1
586 F.3d 143, 52 Bankr.Ct.Dec. 89, Bankr. L. Rep. P 81,617
**(Cite as: 586 F.3d 143)**

United States Court of Appeals,
Second Circuit.
D. Clark OGLE, Liquidating Trustee of the Agway
Liquidating Trust, Appellant,
v.
FIDELITY & DEPOSIT COMPANY OF MARY-
LAND, Appellee.
**Docket No. 09-0691-bk.**

Argued: Oct. 15, 2009.
Decided: Nov. 5, 2009.

**Background:** Creditor, which had provided surety
bonds to Chapter 11 debtors' insurers and thereafter
incurred post-petition attorneys fees in litigation to
enforce its prepetition indemnity agreement with
debtor, filed claim for attorneys fees. Liquidating
trustee objected, conceding that creditor had a right to
the fees under state contract law, but arguing that the
Bankruptcy Code barred such recovery. The United
States Bankruptcy Court for the Northern District of
New York, Gerling, J., ruled that creditor could col-
lect $884,506.28 in post-petition attorneys fees. Ap-
peal was taken. The District Court, Sharpe, J., af-
firmed, and liquidating trustee appealed.

**Holdings:** The Court of Appeals, Dennis Jacobs,
Chief Judge, held that:
(1) under the Bankruptcy Code, an unsecured creditor
is entitled to recover post-petition attorneys fees that
were authorized by an otherwise enforceable prepeti-
tion contract of indemnity but were contingent on
post-petition events, and
(2) the section of the Code providing that interest on
a claim, as well as any reasonable fees, costs, or
charges provided for under the agreement or state
statute under which such claim arose, may be recov-
ered if the creditor is oversecured, does not expressly
disallow an unsecured creditor's contractual claims
for attorneys fees.
 Affirmed.

West Headnotes

**[1] Bankruptcy** ⚷3782
51k3782Most Cited Cases
Where a district court affirms a bankruptcy court's

decision, the Court of Appeals independently reviews
the decision of the bankruptcy court.

**[2] Bankruptcy** ⚷3782
51k3782Most Cited Cases
Court of Appeals' review of the bankruptcy court's
legal conclusions is de novo.

**[3] Bankruptcy** ⚷2182.1
51k2182.1Most Cited Cases
Under the Bankruptcy Code, an unsecured creditor is
entitled to recover post-petition attorneys fees that
were authorized by an otherwise enforceable prepeti-
tion contract of indemnity with the debtor but were
contingent on post-petition events. 11 U.S.C.A. §
502(b).

**[4] Bankruptcy** ⚷2825
51k2825Most Cited Cases
Term "right to payment," as used in the section of the
Bankruptcy Code defining a claim, usually refers to a
right to payment recognized under state law. 11
U.S.C.A. § 101(5)(A).

**[5] Bankruptcy** ⚷2828.1
51k2828.1Most Cited Cases
Under the Bankruptcy Code, a "contingent" claim
refers to obligations that will become due upon the
happening of a future event that was within the actual
or presumed contemplation of the parties at the time
the original relationship between the parties was cre-
ated. 11 U.S.C.A. § 101(5)(A).

**[6] Bankruptcy** ⚷2825
51k2825Most Cited Cases
For purposes of the Bankruptcy Code, a claim will be
deemed to have arisen prepetition if the relationship
between the debtor and the creditor contained all of
the elements necessary to give rise to a legal obliga-
tion, that is, a right to payment, under the relevant
non-bankruptcy law. 11 U.S.C.A. § 101(5)(A).

**[7] Indemnity** ⚷42
208k42Most Cited Cases
Under contract law, a right to payment based on a
written indemnification contract arises at the time the
indemnification agreement is executed.

586 F.3d 143                                                                                                      Page 2
586 F.3d 143, 52 Bankr.Ct.Dec. 89, Bankr. L. Rep. P 81,617
**(Cite as: 586 F.3d 143)**

**[8] Bankruptcy** ☞2826
51k2826Most Cited Cases
Claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed. 11 U.S.C.A. § 502(b).

**[9] Bankruptcy** ☞2182.1
51k2182.1Most Cited Cases
Section of the Bankruptcy Code providing that interest on a claim, as well as any reasonable fees, costs, or charges provided for under the agreement or state statute under which such claim arose, may be recovered if the creditor is oversecured, does not expressly disallow, by negative inference or otherwise, an unsecured creditor's claims for post-petition attorneys fees that were authorized by an otherwise enforceable prepetition contract of indemnity; the subject provision does not implicate unsecured claims for post-petition attorneys fees and therefore interposes no bar to recovery. 11 U.S.C.A. § 506(b).
**\*144**Jeffrey A. Dove, James C. Thoman, Menter, Rudin & Trivelpiece, P.C., Syracuse, NY, for Appellant.

Glenn M. Fjermedal, Lacy Katzen LLP, Rochester, New York; Filiberto Agusti, Mark Moran, Joshua R. Taylor, Steptoe & Johnson LLP, Washington, D.C., for Appellee.

Before: JACOBS, Chief Judge, FEINBERG and KATZMANN, Circuit Judges.

DENNIS JACOBS, Chief Judge:

The federal Bankruptcy Code ("Code"), 11 U.S.C. §§ 101 et seq., does not explicitly state whether an unsecured creditor can collect post-petition attorneys' fees based on a pre-petition indemnity agreement. In United Merchants & Manufacturers, Inc. v. Equitable Life Assurance Society of the United States, 674 F.2d 134 (2d Cir.1982), this Court held, under the Bankruptcy Act then current, that such claims are allowable. In Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co., 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007), the Supreme Court rejected a Ninth Circuit rule disallowing such claims if the fees were incurred litigating issues of bankruptcy law, but reserved decision on the precise question presented on this appeal: whether such

claims are allowable categorically. We conclude that the holding of United Merchants has not been **\*145** impaired by Travelers or by statutory revisions.

Fidelity & Deposit Company of Maryland ("Fidelity") entered into several agreements ("the Agreements") with Agway, Inc. which required Agway to indemnify Fidelity for attorneys' fees that it might incur to enforce the Agreements against Agway. After Agway filed for bankruptcy under Chapter 11, Fidelity duly made payments to Agway's creditors, unsuccessfully demanded indemnity under the Agreements, and incurred attorneys' fees in litigation to collect from Agway. Only those attorneys' fees are at issue on this appeal. The liquidating trustee of the Agway Liquidating Trust ("the Trust"), D. Clark Ogle ("Ogle"), concedes that Fidelity has a right to the fees under state contract law, but refuses to pay on the ground that the Code bars such recovery.

The United States Bankruptcy Court for the Northern District of New York (Gerling, C.J.) held that Fidelity can collect $884,506.28 in post-petition attorneys' fees. The United States District Court for the Northern District of New York (Sharpe, J.) affirmed. Ogle appeals that decision. We affirm, concluding that the Code does not prohibit an unsecured creditor from collecting post-petition attorneys' fees pursuant to an otherwise enforceable pre-petition contract of indemnity.

**I**

Pursuant to the Agreements, Fidelity provided surety bonds ("Bonds") to Agway's insurers, and Agway in turn agreed to indemnify Fidelity for any payments that it made under the Bonds as well as legal fees incurred to enforce the Agreements. On October 1, 2002, Agway filed a voluntary Chapter 11 bankruptcy petition. Up until then, Agway had not defaulted on any payment obligation to its insurers; Fidelity's claim in bankruptcy therefore asserted no more than a contingent right to payment under the Agreements.

When Agway thereafter defaulted on payments to its insurers, the insurers in turn sought payment from Fidelity, and Fidelity tendered payment consistent with its obligations under the Bonds. Fidelity incurred additional costs, including legal fees, enforcing its indemnity rights against Agway in prolonged litigation. On July 18, 2008, the Bankruptcy Court

586 F.3d 143                                                                                                      Page 3
586 F.3d 143, 52 Bankr.Ct.Dec. 89, Bankr. L. Rep. P 81,617
(Cite as: 586 F.3d 143)

concluded (as relevant here) that Agway was liable for Fidelity's post-petition attorneys' fees.

The parties thereafter settled all of the issues between them *except* the order requiring payment of post-petition attorneys' fees. Ogle appealed that part of the bankruptcy court's order to the district court pursuant to 28 U.S.C. § 158(a), and the district court affirmed the bankruptcy court's order. Ogle now appeals to this Court.

The sole question on appeal is one of law: Under the Bankruptcy Code, is an unsecured creditor entitled to recover post-petition attorneys' fees that were authorized by a pre-petition contract but were contingent on post-petition events?

[1][2] Where, as here, a district court affirms a bankruptcy court's decision, we independently review the decision of the bankruptcy court. *Adelphia Bus. Solutions, Inc. v. Abnos,* 482 F.3d 602, 607 (2d Cir.2007). Our review of legal conclusions is *de novo. Id.*

## II

Courts are closely divided on the question presented. One line of cases holds that an unsecured claim for post-petition attorneys' fees asserted on the basis of a prepetition contract is allowable. *See, e.g.,* **In re SNTL Corp.,** 571 F.3d 826, 839-45 (9th Cir.2009) ("**SNTL** "); ***146**Martin v. Bank of Germantown,* 761 F.2d 1163, 1168 (6th Cir.1985). Another line of cases holds that such a claim is disallowed. *See, e.g., Adams v. Zimmerman,* 73 F.3d 1164, 1177 (1st Cir.1996); *Waterman, Ditto,* 248 B.R. 567, 573 (8th Cir. BAP 2000).

[3] This Court allowed such claims in a case that was decided under the former Bankruptcy Act, but that commented on section 506(b) of the Code. *United Merchs. & Mfrs., Inc. v. Equitable Life Assurance Soc'y of the U.S.,* 674 F.2d 134, 137-39 (2d Cir.1982). This opinion considers whether *United Merchants* survives statutory revisions and the Supreme Court's decision in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). We join the Ninth Circuit's recent decision in **SNTL** and hold that the Bankruptcy Code does not bar an unsecured claim for post-petition attorneys' fees authorized by a prepetition contract valid under state law.

## III

Two Code provisions bear upon the disputed question: section 502(b) and section 506(b). *Travelers* addresses the first, *United Merchants* the second.

### A

[4] Section 502(b) of the Code provides (with inapplicable exceptions) that a "court, after notice and a hearing, shall determine the *amount* of [a] claim in lawful currency of the United States *as of the date of the filing of the petition,* and shall allow such claim in such amount." 11 U.S.C. § 502(b) (emphases added). A claim, in turn, is a "right to payment, whether or not such right is reduced to judgment, liquidated, *unliquidated,* fixed, *contingent,* matured, *unmatured,* disputed, undisputed, legal, equitable, secured, or *unsecured.*" 11 U.S.C. § 101(5)(A) (emphases added). A "right to payment ... usually refer[s] to a right to payment recognized under state law." *Travelers,* 549 U.S. at 451, 127 S.Ct. 1199 (internal quotation marks and citation omitted).

[5][6][7] A "contingent" claim under the Code refers "to obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created." *In re Manville Forest Prods. Corp.,* 209 F.3d 125, 128-29 (2d Cir.2000) (internal quotation marks omitted). "A claim will be deemed to have arisen pre-petition if the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation--a right to payment--under the relevant non-bankruptcy law." *Id.* at 129 (internal quotation marks omitted); *see also* **SNTL** 571 F.3d at 843-44. "Under contract law, a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed." *Manville,* 209 F.3d at 129.

*Manville* therefore makes clear that Fidelity possessed a contingent right to post-petition attorneys' fees, and that its right arose pre-petition. However, the dollar amount of Fidelity's contingent right was not a sum certain on the day the bankruptcy petition was filed. We read *Travelers* to mean that this does not matter.

The Supreme Court framed the *Travelers* issue as follows: "We are asked to consider whether federal

bankruptcy law precludes an unsecured creditor from recovering attorney's fees authorized by a prepetition contract and incurred in post-petition litigation." 549 U.S. at 445, 127 S.Ct. 1199. True, the facts in *Travelers* were such that the post-petition costs related solely to litigating issues of bankruptcy **147 law (which Ogle contends is a decisive limiting principle); but the Court's analysis and rationale would seem equally applicable to post-petition costs arising out of pre-petition contracts more generally. Furthermore, the way the issue is framed at the outset, *see id.* (as quoted above), defines the scope of the opinion broadly.

 This is important because, under *Travelers,* section 502(b) interposes no bar to an unsecured creditor's ability to recover post-petition attorneys' fees. *Travelers* starts from the premise that "an otherwise enforceable contract allocating attorney's fees (*i.e.,* one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Id.* at 448, 127 S.Ct. 1199. The Court went on to explain that, because--as in the present case--none of the section 502(b) exceptions (enumerated (2)-(9)) applied, Travelers's claim for post-petition fees "must be allowed under § 502(b) unless it is unenforceable within the meaning of § 502(b)(1)." *Id.* at 449-50, 127 S.Ct. 1199.

Section 502(b)(1) in turn bars any claim that "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). *Travelers* construed this wording to mean that "any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." 549 U.S. at 450, 127 S.Ct. 1199. Unless a claim is unenforceable under state law or one of the section 502(b)(2)-(9) exceptions applies, courts must "presume" that the claim "will be allowed in bankruptcy unless [it is] expressly disallowed." *Id.* at 452, 127 S.Ct. 1199.

 All of the fees at issue in *Travelers* were incurred post-petition; so the amount was necessarily unknown when the bankruptcy petition was filed. It follows that if an unsecured claim for post-petition fees was for that reason unrecoverable, the *Travelers* Court could have disposed of the claim on that simple, available ground alone. *Travelers,* therefore, pro-

ceeds along lines that, reasonably extended, would suggest (notwithstanding the Court's express disclaimer) that section 502(b)'s requirement--that the court "shall determine the amount of such claim ... as of the date of the filing of the petition"--does not bar recovery of post-petition attorneys' fees.

 In the present appeal, as in *Travelers:* The underlying contract is valid as a matter of state substantive law; none of the section 502(b)(2)-(9) exceptions apply; and the Code is silent as to the particular question presented--in *Travelers,* whether the Code allows "unsecured claims for contractual attorney's fees incurred while litigating issues of bankruptcy law," 549 U.S. at 453, 127 S.Ct. 1199; and here, whether the Code allows unsecured claims for "fees incurred while litigating issues of" contract law more generally.

 Accordingly, we hold that an unsecured claim for post-petition fees, authorized by a valid pre-petition contract, is allowable under section 502(b) and is deemed to have arisen pre-petition. *Accord SNTL, 571 F.3d at 844* ("[W]e reject the position ... that section 502(b) precludes such fees.").

## B

[8][9] "[C]laims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." *Travelers,* 549 U.S. at 452, 127 S.Ct. 1199. A fair question is raised by Ogle as to whether section 506(b) of the Code amounts to an express disallowance of Fidelity's claim by negative inference or otherwise. Section 506(b) provides in relevant **148 part that "interest on [a] claim, *and any reasonable fees,* costs, or charges provided for under the agreement or State statute under which such claim arose" can be recovered if the creditor is *oversecured.* 11 U.S.C. § 506(b) (emphasis added). So what does section 506(b) say or imply about a similar claim that is *unsecured?*

 In *United Merchants,* we observed: "Neither [section 506(b)] nor its legislative history sheds any light on the status of an unsecured creditor's contractual claims for attorney's fees." 674 F.2d at 138. *United Merchants* is therefore dispositive if it survives *Travelers.* We conclude that it does.

 As *Travelers* makes clear, the question is whether the Code *disallows* post-petition attorneys' fees, and

does so expressly. It was therefore decisive in *Travelers* that "the Code says *nothing* about unsecured claims for contractual attorney's fees incurred while litigating issues of bankruptcy law." 459 U.S. at 453, 103 S.Ct. 843 (emphasis in original). And while *Travelers* declined to address section 506(b) (because the parties had not raised the issue below), *see id.* at 454-56, 127 S.Ct. 1199, it is decisive here that the Code says nothing about such fees incurred litigating things *other* than issues of bankruptcy law. The teaching of *Travelers* is therefore fully consonant with our decision in *United Merchants.*

Accordingly, we hold that section 506(b) does not implicate unsecured claims for post-petition attorneys' fees, and it therefore interposes no bar to recovery.

## IV

Ogle adduces three additional reasons for construing the Code to disallow unsecured claims for post-petition attorneys' fees.

[1] Ogle relies on wording in *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), which explained that section 506(b) allows an oversecured creditor to receive post-petition interest only out of the "security cushion," but that an undersecured creditor--who lacks any such cushion--"falls within *the general rule disallowing postpetition interest.*" *Id.* at 372-73, 108 S.Ct. 626 (emphasis added). From the italicized phrase Ogle would deduce a general rule favoring his position. However, the wording references section 502(b)(2) of the Code, which expressly disallows a claim for interest that is unmatured. *See id.; see also* 11 U.S.C. § 502(b)(2). In this way, section 506(b) creates a limited exception--for oversecured creditors--from the general rule in section 502(b)(2) that disallows a claim for unmatured interest. *Timbers,* 484 U.S. at 372-73, 108 S.Ct. 626. But while section 502(b)(2) bars claims for unmatured interest, it does not similarly bar (or even reference) claims for post-petition attorneys' fees. *See SNTL,* 571 F.3d at 844-45.

[2] Ogle argues that an unsecured claim for post-petition attorneys' fees is barred by section 502(e)(2), which provides that a claim for "reimbursement or contribution ... that becomes fixed after the commencement of the case ... shall be allowed ... the same as if such claim had become fixed before the date of the filing of the petition." 11 U.S.C. § 502(e)(2). Ogle's argument relies on *expressio unius:* Because section 502(e)(2) provides an exception to section 502(b) for reimbursement and contribution, it thereby forecloses an exception for post-petition attorneys' fees. However, *Travelers* requires us to "presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." 549 U.S. at 452, 127 S.Ct. 1199. We cannot, then, as Ogle **\*149** wishes, draw from section 502(e)(2) an inference by silence or omission.

[3] Ogle argues from policy that allowing an unsecured creditor to collect post-petition attorneys' fees based on a pre-petition contract would unfairly disadvantage other creditors (such as tort claimants and trade creditors) whose distributions would be reduced *pro tanto.* In *United*http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&FindType=Y&SerialNum=1982111054*Merchants,* however, we rejected the idea "that the policy of equitable distribution" defeats "an unsecured creditor's otherwise valid contractual claim for collection costs ....":

When equally sophisticated parties negotiate a loan agreement that provides for recovery of collection costs upon default, courts should presume, absent a clear showing to the contrary, that the creditor gave value, in the form of a contract term favorable to the debtor or otherwise, in exchange for the collection costs provision. Such a creditor should recover more in the division of the debtor's estate because it gave value to the debtor at the time it made the loan. Rather than providing an undeserved bonus for one creditor at the expense of others, allowing a claim under a collection costs provision merely effectuates the bargained-for terms of the loan contract.

674 F.2d at 137. Although *United Merchants* was construing the predecessor to the current Bankruptcy Code, *see id.* at 136 n. 1, its analysis is equally applicable to the Code today.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

586 F.3d 143, 52 Bankr.Ct.Dec. 89, Bankr. L. Rep. P 81,617

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

586 F.3d 143
586 F.3d 143, 52 Bankr.Ct.Dec. 89, Bankr. L. Rep. P 81,617
**(Cite as: 586 F.3d 143)**

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

⚐

United States Court of Appeals,
Ninth Circuit.
In the Matter of SNTL CORPORATION; SN Insurance Services, Inc.; SNTL Holdings Corporation; SN Insurance Administrators, Inc.; Infonet Management, Debtors,
SNTL Corporation; SN Insurance Services, Inc.; SNTL Holdings Corporation; SN Insurance Administrators, Inc.; Infonet Management, Appellants,
v.
Centre Insurance Company, Appellee.
**No. 08-60001.**

Argued and Submitted May 6, 2009.
Filed June 23, 2009.

**Background:** Creditor filed proof of claim, contending that Chapter 11 debtor's previously released liability as a guarantor of its affiliates' obligation to creditor was revived, to an extent, when creditor compromised a state-law preference action brought against it by the California Insurance Commissioner. Trustee objected to the claim, asserting, inter alia, that creditor had released claims against debtor prepetition, that the released claims could not be revived by postpetition events, and that creditor could not include in its claim attorneys fees incurred postpetition. The United States Bankruptcy Court for the Central District of California, Geraldine Mund, J., disallowed claim and denied creditor's request for postpetition fees. Creditor appealed. The Bankruptcy Appellate Panel, Montali, J., 380 B.R. 204, reversed and remanded. Debtor appealed.

**Holdings:** The Court of Appeals held that:
(1) creditor's return of $110 million in settlement of Insurance Commissioner's preference claim revived creditor's guaranty claim against debtor;
(2) creditor's claim for recovery of any preferential payments it made was an allowable, prepetition contingent claim, even though the removal of the contingency occurred postpetition; and
(3) unsecured creditors may claim attorney fees incurred postpetition based on a prepetition contract with debtor.

Affirmed.

West Headnotes

**[1] Bankruptcy 51 ☞3032.1**

51 Bankruptcy
  51IX Administration
    51IX(A) In General
      51k3032 Compromises
        51k3032.1 k. In general. Most Cited Cases
"Triggering event" allowing creditor to invoke remedies provision of its Partial Commutation and Settlement Agreement (PCSA) with Chapter 11 debtor-guarantor occurred only when state court approved settlement between creditor and the California Insurance Commissioner, pursuant to which creditor agreed to return payments that it had received from debtor's affiliates in settlement of the Commissioner's preference claims against it; PCSA's remedies provision required a court finding or judgment that payments made by debtor's affiliates under the PCSA were preferential before creditor could exercise remedies available thereunder.

**[2] Bankruptcy 51 ☞3032.1**

51 Bankruptcy
  51IX Administration
    51IX(A) In General
      51k3032 Compromises
        51k3032.1 k. In general. Most Cited Cases
Under Partial Commutation and Settlement Agreement (PCSA) executed by creditor and Chapter 11 debtor-guarantor, creditor's return of debtor's affiliates' $110 million payment to creditor in settlement of California Insurance Commissioner's preference claim against creditor revived creditor's guaranty claim against debtor, to extent of amount of creditor's payment.

**[3] Guaranty 195 ☞59**

195 Guaranty
  195III Discharge of Guarantor

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

195k58 Payment or Other Satisfaction by Principal
195k59 k. In general. Most Cited Cases
Return of preferential payment of primary obligor by obligee generally revives guarantor's obligation otherwise released by that payment.

**[4] Bankruptcy 51 🗝2601**

51 Bankruptcy
51V The Estate
51V(E) Preferences
51k2601 k. In general. Most Cited Cases

**Principal and Surety 309 🗝112**

309 Principal and Surety
309III Discharge of Surety
309k111 Payment or Other Satisfaction by Principal
309k112 k. In general. Most Cited Cases
While a surety usually is discharged by payment of debt, he continues to be liable if the payment constitutes a preference under bankruptcy law; preferential payment is deemed by law to be no payment at all.

**[5] Guaranty 195 🗝59**

195 Guaranty
195III Discharge of Guarantor
195k58 Payment or Other Satisfaction by Principal
195k59 k. In general. Most Cited Cases

**Principal and Surety 309 🗝112**

309 Principal and Surety
309III Discharge of Surety
309k111 Payment or Other Satisfaction by Principal
309k112 k. In general. Most Cited Cases
Creditor's return of payment as part of settlement of preference avoidance action is not "voluntary," and so revives the liability of surety or guarantor for the debt.

**[6] Bankruptcy 51 🗝2828.1**

51 Bankruptcy

51VII Claims
51VII(A) In General
51k2828 Contingent or Unliquidated Claims
51k2828.1 k. In general. Most Cited Cases

**Bankruptcy 51 🗝3032.1**

51 Bankruptcy
51IX Administration
51IX(A) In General
51k3032 Compromises
51k3032.1 k. In general. Most Cited Cases
Creditor that, prior to commencement of Chapter 11 case by guarantor of underlying obligation, had entered into Partial Commutation and Settlement Agreement (PCSA) with debtor-guarantor, whereby debtor's affiliates paid creditor $163.4 million to satisfy their obligation to creditor and creditor simultaneously released debtor as guarantor, had allowable, prepetition contingent claim against debtor for any portion of this $163.4 million payment which it was required to return in settlement of preference action brought by the California Insurance Commissioner, even though removal of contingency, upon creditor's making a $110 million settlement payment to Commissioner, occurred postpetition; parties had contemplated that creditor would have a claim against debtor in event that payment made by primary obligors under the PCSA constituted a preferential transfer, and they drafted provision in the PCSA to cover this contingency. 11 U.S.C.A. § 502(b).

**[7] Bankruptcy 51 🗝2825**

51 Bankruptcy
51VII Claims
51VII(A) In General
51k2825 k. Claims allowable; what constitutes "claim.". Most Cited Cases
"Claim" is broadly defined under the Bankruptcy Code. 11 U.S.C.A. § 101(5).

**[8] Bankruptcy 51 🗝2825**

51 Bankruptcy
51VII Claims
51VII(A) In General

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

51k2825 k. Claims allowable; what constitutes "claim.". Most Cited Cases

**Bankruptcy 51 🔗2828.1**

51 Bankruptcy
  51VII Claims
    51VII(A) In General
      51k2828 Contingent or Unliquidated Claims
        51k2828.1 k. In general. Most Cited Cases
Bankruptcy Code utilizes the broadest possible definition of "claim" to ensure that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.

**[9] Bankruptcy 51 🔗2826**

51 Bankruptcy
  51VII Claims
    51VII(A) In General
      51k2826 k. Effect of state law, in general. Most Cited Cases
Federal law determines when a claim arises under the Bankruptcy Code.

**[10] Bankruptcy 51 🔗2828.1**

51 Bankruptcy
  51VII Claims
    51VII(A) In General
      51k2828 Contingent or Unliquidated Claims
        51k2828.1 k. In general. Most Cited Cases
Claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued.

**[11] Bankruptcy 51 🔗2825**

51 Bankruptcy
  51VII Claims
    51VII(A) In General
      51k2825 k. Claims allowable; what constitutes "claim.". Most Cited Cases
Court applies "fair contemplation" test for determining when claim accrues under section of the Bankruptcy Code governing allowance of claims or inter-

ests, pursuant to which claim arises when claimant can fairly or reasonably contemplate claim's existence, even if cause of action has not yet accrued under nonbankruptcy law. 11 U.S.C.A. § 502(b).

**[12] Bankruptcy 51 🔗2182.1**

51 Bankruptcy
  51II Courts; Proceedings in General
    51II(C) Costs and Fees
      51k2182 Grounds and Circumstances
        51k2182.1 k. In general. Most Cited Cases

**Bankruptcy 51 🔗2828.1**

51 Bankruptcy
  51VII Claims
    51VII(A) In General
      51k2828 Contingent or Unliquidated Claims
        51k2828.1 k. In general. Most Cited Cases
Unsecured creditors may claim attorney fees incurred postpetition based on a prepetition contract with debtor; parties' execution of prepetition agreement containing an attorney fees provision gives rise to a contingent, unliquidated attorney-fee claim. 11 U.S.C.A. §§ 101(5), 502(b).

**[13] Costs 102 🔗194.32**

102 Costs
  102VIII Attorney Fees
    102k194.24 Particular Actions or Proceedings
      102k194.32 k. Contracts. Most Cited Cases
California law permits recovery of contractual attorneys fees only if they are reasonable. West's Ann.Cal.Civ.Code § 1717.

**[14] Bankruptcy 51 🔗2825**

51 Bankruptcy
  51VII Claims
    51VII(A) In General
      51k2825 k. Claims allowable; what constitutes "claim.". Most Cited Cases

**Bankruptcy 51 🔗2852**

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

51 Bankruptcy
   51VII Claims
      51VII(B) Secured Claims
         51k2852 k. Amount secured; partial security. Most Cited Cases

**Bankruptcy 51 🔑 2853.10**

51 Bankruptcy
   51VII Claims
      51VII(B) Secured Claims
         51k2853 Oversecurity
            51k2853.10 k. In general. Most Cited Cases
Bankruptcy Code provision dealing with determination of a claim's secured or unsecured status and with what may be included in oversecured claim does not provide additional ground for allowance/disallowance of unsecured claims, which is governed exclusively by separate Code provision. 11 U.S.C.A. §§ 502, 506.

**[15] Bankruptcy 51 🔑 2021.1**

51 Bankruptcy
   51I In General
      51I(B) Constitutional and Statutory Provisions
         51k2021 Construction and Operation
            51k2021.1 k. In general. Most Cited Cases

**Constitutional Law 92 🔑 2340**

92 Constitutional Law
   92XX Separation of Powers
      92XX(B) Legislative Powers and Functions
         92XX(B)1 In General
            92k2340 k. Nature and scope in general. Most Cited Cases
It is the province of Congress to correct statutory dysfunctions and to resolve difficult policy questions embedded in the Bankruptcy Code.
**\*828** Iain A.W. Nasatir, Jonathan J. Kim, and Jeremy V. Richards, Pachulski, Stang, Ziehl & Jones LLP, Los Angeles, CA, for the appellants.

Christopher E. Prince and Robert B. Millner, Sonnenschein Nath & Rosenthal, LLP, Los Angeles, CA

and Chicago, IL; Peter J. Gurfein, Akin Gump Strauss Hauer & Feld LLP, Los Angeles, CA, for the appellee.

**\*829** Appeal from the Ninth Circuit, Bankruptcy Appellate Panel, Klein, Montali, and Dunn, Bankruptcy Judges, Presiding. BAP No. CC-06-1350-MoDK.

Before CYNTHIA HOLCOMB HALL, ANDREW J. KLEINFELD and BARRY G. SILVERMAN, Circuit Judges.

**OPINION**

PER CURIAM:

The Bankruptcy Appellate Panel is AFFIRMED for the reasons stated in its opinion in this case *sub nom.* We adopt the BAP opinion, *In re SNTL Corp.*, 380 B.R. 204 (9th Cir. BAP 2007), as our own and attach it as an appendix to this opinion. *See* Appendix, *infra.*

APPENDIX

In re: SNTL Corp.; SN Insurance Services, Inc.; SNTL Holdings Corp.; SN Insurance Administrators, Inc.; Infonet Management Systems, Inc.; Pacific Insurance Brokerage, Inc., Debtors.

Centre Insurance Company, SNTL Corp.; Appellant,

v.

SN Insurance Services, Inc.; SNTL Holdings Corp.; SN Insurance Administrators, Inc.; Infonet Management Systems, Inc.; Pacific Insurance Brokerage, Inc., Appellees.

Bk. Nos. SV 00-14099-GM, SV 00-14100-GM, SV 00-14101-GM, SV 00-14102-GM, SV 02-14236-GM, SV 02-14239-GM, (Jointly Administered)

Argued and Submitted on September 21, 2007 at Pasadena, California

Filed-December 19, 2007.

Appeal from the United States Bankruptcy Court for the Central District of California, Honorable Gerald-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

ine Mund, Bankruptcy Judge, Presiding.

Before: MONTALI, DUNN and KLEIN, Bankruptcy Judges.

MONTALI, Bankruptcy Judge:

In this complicated and high-stakes case, we apply a somewhat obscure doctrine that involves the intersection of insolvency law principles and guaranty law, illustrating the temporal nature of a release of a guarantor when a voidable preference is recovered from the obligee. We also will be one of the first courts to address a question left unanswered by the Supreme Court earlier this year: May an unsecured creditor include attorneys' fees incurred postpetition but arising from a prepetition contract as part of its unsecured claim?

Here a creditor contended that the debtor's previously released liability as a guarantor of an affiliate's obligation was revived when the creditor compromised a preference action against it. The bankruptcy court disagreed and entered summary judgment disallowing the creditor's multimillion dollar claim and denying the creditor's request for postpetition attorneys' fees and costs. The creditor appeals, and we REVERSE and REMAND.

## I. FACTS

A. *The Parties*

On April 26, 2000 (the "petition date"), SNTL Corporation (formerly known as Superior National Insurance Group) [FN1] and its non-insurer affiliates SN Insurance Services, Inc., SNTL Holdings Corporation (formerly known as Business Insurance Group, Inc.), and SN Insurance Administrators,**830** Inc. (collectively, "Debtors") each filed chapter 11 petitions [FN2] for relief.

> FN1. SNTL Corporation is the post-confirmation successor to Superior National Insurance Group and will be referred to as "SNIG" in this opinion.

> FN2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to

the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23 (Apr. 20, 2005).

Pursuant to a confirmed joint plan of reorganization ("Plan"), an SNTL Litigation Trust ("Trust") was formed and an SNTL Litigation Trustee ("Trustee") was appointed. The Trustee was authorized to prosecute certain claims, rights and causes of actions and to oversee and initiate actions pertaining to the allowance and payment of claims, including objections to proofs of claims.

Appellant Centre Insurance Company ("Centre") filed a proof of claim in November 2000 asserting a claim in excess of $294,488,911 (including approximately $3 million in attorneys' fees but not including contingent and unliquidated amounts) and an amended proof of claim in March 2005 in the amount of $232,748,280.40. The Trustee filed an objection to Centre's claim arguing, *inter alia,* that Centre had released claims against SNIG prepetition, that the released claims could not be revived by postpetition events and that Centre, as an unsecured creditor, could not include in its claim attorneys' fees incurred postpetition.

B. *Pertinent Transactions and Events*

The relationship of the parties, and the nature of the transactions summarized below, are complex and perhaps unique to the insurance and reinsurance industry. Reduced to their central elements, however, they can be summarized as follows: Debtor SNIG guaranteed the performance of its affiliates' obligations to Centre. Following default on these obligations, the parties reached an agreement whereby the affiliates paid Centre $163.4 million to satisfy an obligation of $180 million and Centre simultaneously released the guarantor (SNIG). Thereafter, in settlement of a preference action brought by the liquidator of the affiliate insurance companies, Centre returned a portion of the $163.4 million payment. Centre now seeks to recover the returned amount ($110 million) from the guarantor SNIG; Trustee asserts that SNIG's released liability cannot be revived.

More specifically, on December 18, 1998, SNIG sold

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

its affiliate Business Insurance Company ("BICO") to Centre Solutions Holdings (Delaware Limited) ("Centre Solutions"); BICO became known as Centre. On the same day, Centre entered into certain reinsurance agreements (the "LPT and Quota Share Agreements") with insurance companies affiliated with SNIG: California Compensation Insurance Company ("CalComp") and Superior National Insurance Company ("SNIC"). SNIG guaranteed performance of one of these reinsurance agreements known as the "QSR Contract."

In addition, the parties also entered into fronting (service) agreements known as the Underwriting Management Agreement ("UMA") and the Claims Administration Services Agreement ("CSA"). SNIG also guaranteed performance of these agreements. The UMA, CSA, LPT and Quota Share Agreements are collectively referred to as the "Fronting Agreements." [FN3]**\*831** The Fronting Agreements provide for the recovery of all reasonable expenses, including attorney's fees, incurred in the enforcement of SNIG's guaranty.

> **FN3.** The Fronting Agreements provide for the recovery of all reasonable expenses, including attorneys' fees, incurred in the enforcement of SNIG's guaranty. Under the Fronting Agreements, SNIG sold insurance policies using Centre's name and "A" financial rating. SNIG marketed, underwrote and administered the policies, and received the premiums and paid the claims arising under them. Centre received a fee for the use of its name and financial rating.

The Fronting Agreements were breached in late 1999. On December 31, 1999, Centre entered into a Partial Commutation and Settlement Agreement ("PCSA") with CalComp, SNIC and SNIG. The PCSA modified the Fronting Agreements and provided for a partial release of the reinsurance obligations of SNIG, CalComp, SNIC and all of their parents and affiliates (among others) up to $180 million (the "Release"). [FN4]

> **FN4.** The Release provided in pertinent part:
>
> Subject to receipt of the Commutation Payment, [Centre] does hereby release and forever discharge the Reinsurers, their

predecessors, successors, parents, affiliates, agents, officers, directors and shareholders and assigns from any and all past, present and future payment obligations, adjustments, executions, offsets, actions, causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims, demands, liabilities and/or losses whatsoever, all whether known or unknown, which [Centre] and their successors and assigns ever had, now have, or hereinafter may have, whether grounded in law or equity relating, directly or indirectly, to the terms and conditions of the LPT and Quota Share Agreements....

> *PCSA* at 3. In addition, Article III of the PCSA excepted from the Release claims exceeding $180 million, stating that the LPT and Quota Share Agreements remained in full force and effect "with respect to the cession of Losses, Loss Adjustment Expenses and unearned premium reserves, in excess of $180,000,000." *Id.*

In exchange for the Release, SNIG, CalComp and SNIC agreed to meet six conditions, including payment of a $163.4 million Partial Commutation Payment ("Payment") by CalComp and SNIC. Centre received the Payment; no evidence was introduced that any of the six conditions for the Release were unsatisfied. In its opening brief, Centre acknowledges that "the primary obligors and SN Holdings [SNIG] (the guarantor) were released from liability for up to $180 million" in exchange for the Payment. *Appellant's Opening Brief* at 13. Consequently, the Release in the PCSA became effective prepetition.

Article X of the PCSA provided that the Release could be revoked by Centre if the PCA or other payments made pursuant to the PCSA were found to be voidable or preferential transfers, stating in pertinent part:

> In the event that any court of competent jurisdiction or governmental or regulatory authority asserting jurisdiction over the subject matter hereof or the parties hereto enters a final order, judgment, or other finding that: (i) the payment of all or any part

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

of the $22,300,000, described above, or (ii) the payment by Reinsurers of all or any part of the [Payment] of $163,400,000, or (iii) any of the consideration described in the Recitals to this Agreement ... constitutes a voidable or preferential transfer, such payment constitutes an improper or disproportionate payment, or the payment is otherwise in violation of law or subject to a claim or [sic] preference, then [Centre] may in its sole discretion, in addition to any other remedy provided by law, equity, statute, or contract: (a) enforce this Agreement according to its express terms and conditions; or (b) declare this Agreement to **\*832** be null and void in its entirety, and thereupon enforce the terms and conditions of the LPT and Quota Share Agreements as though this Agreement (including without limitation the releases and discharges set forth in Articles III and IV) had not been executed....

*PCSA* at 8-9.

In March 2000, the Insurance Commissioner for the State of California (the "Commissioner") placed certain insurance companies affiliated with Debtors into conservation, followed by liquidation. In January 2002 (approximately fourteen months after the petition date), the Commissioner filed a complaint in state court against Centre and others, seeking in part the return of the Payment from Centre as an avoidable preference under state law preference provisions.

Centre subsequently agreed to settle that state court litigation, and on February 17, 2005, the state court entered an order approving a settlement agreement between the Commissioner and Centre (among others) providing that the Commissioner's avoidance action would be dismissed in exchange for Centre's partial return (in the amount of $110 million) of the Payment. Paragraph F of the state court order indicated that the Commissioner sought to recover property transferred by the insurance companies to Centre and that the Commissioner had sought avoidance of such transfers.[FN5]

> FN5. Paragraph F provided: "The property that the Liquidator [Commissioner] seeks to recover in the Action (including, without limitation, the property which is the subject of each claim in the Action seeking the avoidance of a transfer of property) is prop-

erty of one or more of the SNICIL [Superior National Insurance Company, Superior Pacific Casualty Company, California Compensation Insurance Company, Commercial Compensation Casualty Company, and Combined Benefits Insurance Company], which property was transferred to CIC[Centre] (or, in certain instances, certain other defendants) from one or more of the SNICIL."

The order also provided that the settlement agreement between the Commissioner and Centre was "fully and finally approved." In turn, the settlement agreement itself provided that "[t]he payments to the Liquidator under section III.C.1 of this Settlement Agreement are payments on account of the claims of the Liquidator arising from payments asserted to be preferential transfers ... and not payments on account of any tort claims." *Settlement Agreement and Mutual Release* at 15.

In its initial proof of claim filed in November 2000, Centre stated that SNIG's liability as guarantor was for amounts "in excess of $180,000,000" and reserved the right to seek additional amounts if any portion of the Payment was "deemed void or avoidable," specifically mentioning the then-pending avoidance action by the Commissioner. The amended proof of claim does not specifically mention the avoidance action or its effect on the Release, but as will be shown, the battle is all about Centre's contention that the amended claim can include the amount paid to the Commissioner as well as postpetition attorneys' fees.

Trustee objected to Centre's claim and amended claim on many grounds, although only four are relevant to this appeal: (1) Centre's claim arising from SNIG's guaranty obligations had been released and could not be revived as Centre had not obtained a judicial finding or judgment that the Payment (or other payment made under the PCSA) constituted a preferential transfer as required by Article X of the PCSA, (2) even if Centre had obtained **\*833** such a judicial finding or judgment, it has not exercised its right of revocation and no other remedy is available, (3) Centre's claim arising from SNIG's guaranty obligations was not contingent but was instead extinguished prepetition under the Release and, under section 502(b), could not be revived by any postpeti-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

tion determination that the Payment was a preference, and (4) Centre was an unsecured creditor and thus could not assert a claim for attorneys' fees incurred postpetition.

In April 2006, Trustee filed a motion for partial summary judgment that the Release extinguished SNIG's liability as guarantor, at least up to $180 million, and that Centre could not recover attorneys' fees incurred postpetition. After conducting a hearing, the bankruptcy court entered a memorandum and order on August 22, 2006, granting the motion on both grounds. The court held that the Release became effective prepetition and Centre did not invoke its power of revocation under Article X prior to the petition date. "Therefore, as of the petition date, the only claim Centre could have had against SNIG is above $180 million." [FN6]*Memorandum of Opinion* at pages 12-13.

> [FN6.] The bankruptcy court noted that Centre was not seeking to nullify the PCSA under subsections (a) through (d) of Article X, but was instead attempting to exercise its rights in accordance with "any other remedy provided by law, equity, statute, or contract." *Memorandum of Opinion* at 7. The court held that any such remedy arose postpetition and thus was unavailable to Centre. "Centre's postpetition attempt to exercise any remedies it may be entitled to under [Article] X is beyond the scope of this memorandum because no legal theory exists (and Centre has been unable to articulate one) where the postpetition exercise of remedies by Centre would somehow impact the prepetition release." *Id.* at 13. Specifically, the court rejected Centre's argument that it held a prepetition contingent claim against SNIG and that there was a failure of consideration for the release. We disagree with the bankruptcy court's conclusion that Centre does not hold an allowable contingent claim under section 502(b), as explained later in this opinion.

On August 31, 2006, the bankruptcy court entered an order approving a stipulation granting Centre an extension of time to September 21 to file a notice of appeal. Centre thereafter filed its timely notice of appeal.

On December 19, 2006, the clerk of this panel issued an order requiring Centre to (1) explain how the order was final, (2) move for leave to file an interlocutory appeal, or (3) obtain a certification of finality from the bankruptcy court pursuant to Federal Rule of Civil Procedure ("FRCP") 54(b) (made applicable by Rules 7054 and 9014). The bankruptcy court entered its order directing entry of final judgment pursuant to FRCP 54(b) on February 14, 2007, and the panel entered an order on April 23, 2007, treating the order on appeal as final.

## II. ISSUES

(1) Did the Release under the PCSA irrevocably extinguish Centre's claim against SNIG up to $180 million or was SNIG's liability revived to the extent of $110 million upon Centre's payment of that amount to the Commissioner?

>  (a) Has a finding or final order triggering the remedies set forth in Article X been made or entered?

>  (b) If so, is any remedy available to Centre under which SNIG's liability could be revived?

>  (c) If the triggering event has occurred and a remedy is available at law, does section 502(b) nonetheless preclude allowance of Centre's claim?

(2) Can Centre, as an unsecured creditor, include in its proof of claim attorneys' **\*834** fees arising from a prepetition contract but incurred postpetition?

### III. STANDARD OF REVIEW

We review *de novo* the bankruptcy court's grant of summary judgment. *Marshack v. Orange Comm'l Credit (In re Nat'l Lumber & Supply, Inc.),* 184 B.R. 74, 77 (9th Cir. BAP 1995); *Mordy v. Chemcarb, Inc. (In re Food Catering & Housing, Inc.),* 971 F.2d 396, 397 (9th Cir.1992). In reviewing a summary judgment, the task of an appellate court is the same as a trial court under FRCP 56 (made applicable by Rule 7056). *Hifai v. Shell Oil Co.,* 704 F.2d 1425, 1428 (9th Cir.1983); *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch),* 237 B.R. 160, 165 (9th Cir. BAP 1999). Viewing the evidence in the light most favorable to the non-moving party, we must deter-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

mine for ourselves whether there was no genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Hifai, 704 F.2d at 1428;see*FRCP 56(c).

## IV. JURISDICTION

Pursuant to 28 U.S.C. § 157(b)(2)(B), the bankruptcy court had jurisdiction over the allowance or disallowance of Centre's claim. As the bankruptcy court certified its order disallowing a portion of the claim as final under FRCP 54(b) and this panel has determined that the appeal is final, we have jurisdiction over the appeal under 28 U.S.C. § 158.

## V. DISCUSSION

A. *The Release Did Not Irrevocably Extinguish Centre's Claim Against SNIG*

Trustee contends Centre cannot invoke its Article X remedies in the absence of a final order, judgment, or other finding that the Payment was subject to a preference claim. Trustee further argues that even if the triggering event (the entry of such an order) had occurred, Centre is not seeking any relief or remedy available under Article X. Finally, Trustee asserts that even if the triggering event had occurred and Centre were seeking relief available under Article X, Centre could not obtain such relief because section 502(b) does not allow claims arising postpetition. The bankruptcy court did not address the first two arguments, as it agreed with Trustee's third argument: Centre's claim was not allowable because it was based on postpetition actions to revive a debt that was released prepetition. On *de novo* review, we are not persuaded by any of the Trustee's arguments.

**1. The "Triggering Event" Under Article X Has Occurred**

[1] Centre contends that when it paid $110 million in settlement of the Commissioner's preference action against it, SNIG's obligations as guarantor were restored in that amount. Centre does not seek to revive the entire amount of the original guaranty. Article X of the PCSA requires a court finding or judgment that the payments made under the PCSA were preferential before Centre could exercise the remedies available to it under that section.[FN7] Article X states that if any

court *835 of competent jurisdiction asserting jurisdiction over the subject matter of or the parties to the PCSA [FN8] "*enters a final order*, judgment, or other finding *that ... a payment* under the [PCSA] ... constitutes a voidable or preferential transfer, ... an improper or disproportionate payment ... or *is* otherwise in violation of law or *subject to a claim or preference*," Centre may declare the PCSA null and void or exercise "*any other remedy provided by law, equity, statute or contract* [.]" *PCSA,* Article X (emphasis added). According to Trustee, Centre has not obtained such a court finding or judgment, and thus Centre cannot overcome the release of SNIG.

> FN7. As the bankruptcy court stated in its Memorandum of Opinion, Centre is not attempting to revoke the Release or declare it null and void under subsections (a)-(d) of Article X. Rather, it is invoking its other remedies provided by law or equity which become available under Article X upon entry of a court order or finding that the Payment was subject to a preference claim.

> FN8. Neither party disputes that the state court had jurisdiction as contemplated by Article X.

We disagree. The state court order approving the settlement agreement between the Commissioner and Centre satisfies Article X's requirement for a court order or finding. Paragraph F of the order indicated that the Commissioner was attempting to avoid the transfers and the order provided that the settlement agreement was "fully and finally approved." The settlement agreement which was fully approved specifically stated that the payments by Centre to the Commissioner "are payments on account of the claims of the Liquidator [Commissioner] arising from payments asserted to be preferential transfers." The state court order thus constituted an order or finding that the PCSA payment was subject to a preference claim. As a consequence, Article X and its remedies govern and supersede the release provisions of Article III.[FN9] That order acknowledges that the Payment was subject to the Commissioner's preference claim. Therefore, Centre is entitled to invoke those remedies available to it under Article X.

> FN9. As acknowledged by Centre in its opening brief, the primary obligors and

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

SNIG "as guarantor" were "released from liability for up to $180 million" when the $163.4 payment was made to Centre under the PCSA. *Appellant's Opening Brief* at 13. Despite this admission, Centre notes on page 17 of its Opening Brief that the Release did not mention SNIG as guarantor. This omission is irrelevant. The Release applies to all parents and affiliates of the primary obligors, for all liabilities or debts whatsoever. *PCSA,* Article III. Recital 3 of the PCSA states that the "Guarantor" [SNIG], the primary obligors (the reinsurers) and Centre wish "to fully and finally to [sic] settle and determine their respective obligations and liabilities." *PCSA,* Recital 3.

**2. Centre's Return of $110 Million to the Commissioner in Settlement of a Preference Claim Revived Its Guaranty Claim Against SNIG**

[2] Article X of the PCSA, entitled "Voidable Transfers," governs the rights of Centre in the event payments made pursuant to the PCSA constituted preferential transfers. Upon entry of the requisite court order or finding, Centre may exercise "*any other remedy provided by law, equity, statute or contract* [.]" *PCSA,* Article X (emphasis added). In other words, because the state court's order was the type of court order contemplated by Article X, it triggered whatever remedies Centre had at law as a result of the return of the PCSA payment.

[3] Centre argues that under applicable law, SNIG's guaranty obligation was revived upon and to the extent of the return of the PCSA Payment. While we located no Ninth Circuit or California case precisely on point, we agree that the return of a preferential payment by a creditor generally revives the liability of a guarantor.

[4] As the Tenth Circuit has observed (in dicta), courts "have recognized, without **\*836** regard to any special guaranty language, that guarantors must make good on their guaranties following avoidance of payments previously made by their principal debtors." *Lowrey v. Mfrs. Hanover Leasing Corp. (In re Robinson Bros. Drilling, Inc.), 6 F.3d 701, 704 (10th Cir.1993).* "Although a surety usually is discharged by payment of the debt, he continues to be liable if the payment constitutes a preference under bank-

ruptcy law. A preferential payment is deemed by law to be no payment at all." *Herman Cantor Corp. v. Cent. Fidelity Bank (In re Herman Cantor Corp.), 15 B.R. 747, 750 (Bankr.E.D.Va.1981).*

The *Restatement (Third) of Suretyship and Guaranty* and the *Corpus Juris Secundum* on *Principal and Surety* echo these general principles.

When a secondary obligation is discharged in whole or part by performance by the principal obligor or another secondary obligor, or by realization upon collateral securing such performance, the secondary obligation revives to the extent that the obligee, under a legal duty to do so, later surrenders that performance or collateral, or the value thereof, as a preference or otherwise.

*Restatement (Third) of Suretyship & Guaranty* § 70 (1996). Similarly, the *Corpus Juris Secundum* provides that if a creditor is forced to refund a payment to a primary obligor, the guarantor's liability is revived:

[T]o discharge the surety, the payment of the principal debt or obligation must be valid and binding, and, if the creditor is forced to refund the payment, the surety's liability is restored. Thus, a surety is not, as a general rule, released by a payment that is a preference under the bankruptcy laws, which the creditor is obliged to refund.

*72 C.J.S. Principal and Surety § 129 (Updated 2007).*

[5] Trustee disputes the applicability of the cases that follow or recognize the general principle, but cites no case law holding the contrary: that the liability of a surety or guarantor is *not* revived by a return of a preferential transfer to a primary obligor (or its assigns). Rather, Trustee contends that the general principle is inapplicable because, *inter alia,* the repayment of the preference must be involuntary for the principle to apply. Trustee's contention is based on the assumption that a return of a payment is "voluntary" if it was made pursuant to a settlement. We disagree.[FN10] While *Corpus Juris Secundum* and the *Restatement* do indicate that the repayment must be "forced" or made **\*837** "under a legal duty to do so," the Sixth Circuit in *Wallace Hardware Co., Inc. v. Abrams, 223 F.3d 382, 408-09 (6th Cir.2000),* held that when the obligee returns a payment as part of a settlement of a preference avoidance action, the guar-

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

antor is not discharged of his obligation to pay the debt.

> FN10. A state appellate court recently tackled the issue of whether a return of a payment pursuant to a settlement constituted a "voluntary" payment outside the scope of the Restatement's revival rule set forth in section 70. Because the case is not published and the local rules of the court prohibit citation to its unpublished decisions, we will not cite it. We nonetheless agree with its reasoned holding.

> In that case, like Trustee here, the guarantor argued that its liability on the guaranty was not revived when the creditor "voluntarily" returned the payment to the primary obligor in settlement of a preference action. Like us, the appellate court rejected this argument, stating (emphasis added):

> [T]his argument misconstrues the nature of voluntariness. [The creditor/obligee] did not spontaneously return the money to [the primary obligor]. It responded to a lawsuit, and entered lengthy negotiations with [the primary obligor] before ultimately reaching a settlement. *We do not regard the settlement as uncoerced. A lawsuit necessarily implies a degree of compulsion. A payment made in settlement of contested litigation is not truly voluntary.*

> We agree with this analysis of why a return of a payment made in settlement of a lawsuit is not "voluntary" and of why the general principles of section 70 of the *Restatement (Third) of Surety & Guaranty* apply here.

We find *Wallace Hardware* persuasive. In that case, the creditor repossessed inventory of a primary obligor in satisfaction of the obligor's debt. Thereafter, the obligor filed for bankruptcy relief and the trustee filed an action to have the repossession avoided as a preference. The creditor settled with the trustee and sued the guarantors for the amount of the debt that remained outstanding upon the creditor's partial return of the proceeds of its inventory repossession.FN11

> FN11. In *Wallace Hardware,* the payment made by the primary obligor was attacked under the Bankruptcy Code's preference provisions, while the Payment here was alleged to be preferential under California's Insurance Code. Nonetheless, the general principle-that the return of a preferential payment of a primary obligor by the obligee revives a guarantor's obligation otherwise released by that payment-should operate with equal force whatever preference law applies.

In holding that the guarantors were obligated to repay the amounts returned by the creditor to the trustee under the preference action settlement, the Sixth Circuit stated that "courts have uniformly held that a payment of a debt that is later set aside as an avoidable preference does not discharge a guarantor of his obligation to repay that debt." *Id.* at 408 (citing cases). The Sixth Circuit also observed that the repossession operated as an accord and satisfaction, and that "an accord and satisfaction, like any contract, can be set aside, in whole or in part, for such reasons as mutual mistake, supervening illegality, or frustration of purpose." *Id.*

Trustee contends that we should disregard *Wallace Hardware* because there the obligations of the guarantors, unlike those of SNIG, had not been contractually released by the creditor. This distinction is not significant because while Article III of the PCSA did release SNIG, Article X provided Centre with whatever remedies were available in law upon entry of the requisite court order or finding. As we have already held, the triggering event of Article X's remedies occurred when the state court entered the order approving the settlement agreement. As one of the remedies available at law permits revival of otherwise released guaranty obligations upon return of a preferential payment of the primary obligor, the remedies available under Article X and under law supersede the release provisions of Article III.

Thus, Trustee's reliance on Article III's Release in an effort to distinguish *Wallace Hardware* and the other cases is not convincing, particularly because Trustee's position (unlike that of *Wallace Hardware* ) would discourage settlement of preference litigation.FN12 It

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

would be a strange result, indeed, if we were to require Centre to litigate with the Commissioner to the bitter end, lose, then satisfy a judgment of at least $163.4 million before it could revive SNIG's guaranty obligation, particularly where Article X itself requires merely a finding that the Payment was subject to a preference claim. Instead, we find *Wallace Hardware's* position more persuasive because it does not require full and costly litigation but instead acknowledges that the general principle should also apply **838** when the creditor returns at least a portion of a primary obligor's payment in settlement of a preference action.

> FN12. Trustee has not suggested that Centre could have defeated the Commissioner's state court action or that the settlement was inappropriate.

**3. Section 502(b) Does Not Preclude Allowance of Centre's Claim**

[6] Trustee argues that even if Centre's claim against SNIG could be revived under Article X and applicable law, the release of Article III was still in effect as of its petition date and thus Centre's claim was extinguished prepetition and not allowable under section 502(b). In other words, the claim could not be revived postpetition, even if the PCSA and other governing law permitted revival outside of bankruptcy. The bankruptcy court agreed with Trustee, holding that Centre was attempting to invoke postpetition remedies and thus asserting postpetition claims. We hold, however, that Centre held a prepetition contingent claim inasmuch as the guaranty claim was subject to revival once the state court conservatorship had begun prepetition, giving rise to a possible (and foreseen) preference action by the Commissioner.

Section 502(b) provides that a court is to determine the amount of a prepetition claim "as of the date of the filing of the petition, and ... allow such claim in such amount." The bankruptcy court agreed, concluding because Centre's claims against SNIG had been released and extinguished as of the petition date, its claim was disallowed, and section 502(b) precluded Centre from relying on postpetition events to revive the claim. Centre argues that its claim for recovery of any preferential payments it made postpetition constitutes an allowable contingent claim under section 502(b). We agree; Centre's claim should not be disal-

lowed merely because the removal of the contingency affecting its claim will occur postpetition, a consequence that is plainly at odds with the Bankruptcy Code.

[7][8] A claim is broadly defined under the Bankruptcy Code. It includes a right to payment or equitable remedy "whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent,* matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5) (emphasis added). The Code utilizes this "broadest possible definition" of claim to ensure that "all legal obligations of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case." *Cal. Dep't of Health Servs. v. Jensen (In re Jensen),* 995 F.2d 925, 929-30 (9th Cir.1993) (emphasis in original) (citations and quotations omitted).

Section 502(b)(1) provides that a claim is not allowable if it is unenforceable under the applicable agreement or law "*for a reason other than because such claim is contingent or unmatured.*" 11 U.S.C. § 502(b)(1) (emphasis added). Here, the parties provided in Article X remedies for Centre in the event a court entered an order or finding that the Payment was subject to a preference claim. Upon the occurrence of that contingency or triggering event, Centre would have certain rights and claims against SNIG. Under section 502(b)(1), those contingent claims cannot be disallowed simply because the contingency occurred postpetition.[FN13] As we stated in a recent decision, we "must find a basis in section 502 to disallow a claim, and absent such basis, we must **839** allow it." *Wells Fargo Fin. Acceptance v. Rodriguez (In re Rodriguez),* 375 B.R. 535, 545 (9th Cir. BAP 2007), citing *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.,* 549 U.S. 443, 127 S.Ct. 1199, 1206, 167 L.Ed.2d 178 (2007) ("we generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed" under section 502). Contingent claims are allowed under section 502(b).

> FN13. If SNIG had filed bankruptcy before the primary obligors had defaulted on the Fronting Agreements and QSR Contract, Centre would hold a claim against SNIG even though SNIG's liability was contingent on the primary obligors' future postpetition default. *See In re All Media Props., Inc.,* 5

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

B.R. 126, 133 (Bankr.S.D.Tex.1980), af-f'd,646 F.2d 193 (5th Cir.1981) ("[I]n the case of the classic contingent liability of a guarantor of a promissory note executed by a third party, both the creditor and guarantor knew that there would be liability only if the principal defaulted. No obligation arises until such default."). Similarly, here, the parties knew that Centre's remedies against SNIG under Article X would not be available until the occurrence of a contingent, triggering event: the entry of a court order or finding that the Payment was subject to a preference claim.

Another subsection of section 502 demonstrates that Congress did not intend for claims to be disallowed simply because of their contingent nature. Section 502(c)(1) establishes a procedure for the estimation of such claims by the bankruptcy court. Even though such claims could not be enforced on the petition date outside the bankruptcy court, the Bankruptcy Code clearly contemplates that the bankruptcy estate will deal with contingent and unliquidated claims, including contingent or unliquidated guaranty claims against debtors. In re Teigen, 228 B.R. 720, 722-23 (Bankr.D.S.D.1998) (estimating claims of holders of guaranties executed by chapter 7 debtors).

[9][10][11] Moreover, as the parties concede, federal law determines when a claim arises under the Bankruptcy Code. ZiLOG, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1000 (9th Cir.2006). "It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued." Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel, Inc.), 210 F.3d 999, 1007 (9th Cir.2000). The Ninth Circuit has adopted the "fair contemplation" test for determining when a claim accrues for the purposes of section 502(b). Zilog, 450 F.3d at 1000;Cool Fuel, 210 F.3d at 1007;Jensen, 995 F.2d at 930. Under that test, a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law. Cool Fuel, 210 F.3d at 1007.

Here, the parties contemplated that Centre could have a claim against SNIG in the event a payment made by the primary obligors under the PCSA constituted a preferential transfer. Article X was drafted to cover that contingency. The Debtors filed their respective chapter 11 petitions after the Commissioner placed the primary obligors into conservation. As the conservation was commenced approximately three months after the PCSA payments were made, an action by the Commissioner to recover those payments as preferential could have been reasonably and fairly contemplated by SNIG and Centre as of the petition date. SeeCal. Ins.Code § 1034(c)(1) (transfers made within four months before filing of the liquidation/conservation petition are avoidable). Consequently, those claims accrued (even if they were contingent and not fixed) as of the petition date, even if the Release were still effective as of that date.

Hence, because Centre's claim based on a revival of SNIG's guaranty was an allowable claim as of the date of the petition, we will reverse.

B. *Centre May Be Entitled to Add Its Postpetition Attorneys' Fees To Its Unsecured Claim*

[12] This appeal presents a question currently pending before the Ninth Circuit:**\*840** May an unsecured creditor include attorneys' fees incurred postpetition as part of its unsecured claim?

In *Travelers,* the Supreme Court did not resolve this issue but instead remanded it to the Ninth Circuit for resolution. Travelers, 127 S.Ct. at 1207-08. Rather than delay this appeal to await that outcome, we will answer the question ourselves.FN14

FN14. First, we owe it to the parties to decide cases before us promptly. Second, our decision is subject to review by the Ninth Circuit. Third, we believe the Ninth Circuit values the views of the Bankruptcy Appellate Panel on bankruptcy issues. Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com), 504 F.3d 775, 784 n. 3 (9th Cir.2007).

In *Travelers,* the bankruptcy court had followed the Ninth Circuit's holding in Fobian v. W. Farm Credit Bank (In re Fobian), 951 F.2d 1149 (9th Cir.1991), that creditors could not recover attorneys' fees for

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

litigating issues particular to bankruptcy law and disallowed the claim for such fees by Travelers. The district court and the Ninth Circuit affirmed. The Supreme Court reversed to the extent the claim was disallowed on this ground, overruling *Fobian.* It specifically refused, however, to decide whether Travelers' claim for postpetition attorneys' fees was disallowed under section 502(b)(1) because of Travelers' status as an unsecured creditor. *Travelers,* 127 S.Ct. at 1207-08.

Since *Travelers* was issued by the Supreme Court, two bankruptcy courts have disagreed on the issue of whether an unsecured creditor can recover fees incurred postpetition, with a split result.FN15*Compare Omect, Inc. v. Burlingame Capital Partners II (In re Omect, Inc.), 368 B.R. 882 (Bankr.N.D.Cal.2007)* (unsecured creditor was entitled to include its contract-based attorneys' fees incurred postpetition in its prepetition claim) to *In re Elec. Mach. Enter., Inc., 371 B.R. 549 (Bankr.M.D.Fla.2007)* (disallowing unsecured creditor's postpetition attorneys' fees).

> FN15. In addition, the First Circuit issued a post-*Travelers* opinion that favorably cited authority supporting the allowance of postpetition attorneys' fees to unsecured creditors, but that decision is not on point. *UPS Capital Bus. Credit v. Gencarelli (In re Gencarelli), 501 F.3d 1, 6 (1st Cir.2007).* The *Gencarelli* court was not addressing the issue of postpetition attorneys' fees but instead held that an oversecured creditor was entitled to collect a prepayment penalty from a solvent debtor regardless of reasonableness.

The split is unsurprising, as the cases decided prior to *Travelers* also reached opposite conclusions, with the majority holding that unsecured creditors could not assert attorneys' fees incurred postpetition as part of their claims.FN16 While the holdings may diverge, these cases analyze the four primary arguments asserted in favor **\*841** of and against the allowance of such claims: whether section 506(b) operates to disallow such claims; whether section 502(b) disallows such claims because they were not fixed "as of the date of the filing of the petition;" whether the Supreme Court's decision in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988),* pre-

cludes allowance of such claims; and whether public policy favors disallowance of such claims. We address each argument in turn.

> FN16. In the majority line of cases, courts have held that unsecured creditors are not entitled to claim such fees, as section 506(b) is the only provision in the Code that permits the recovery of postpetition fees from the estate, and that section applies only to secured creditors. See *Adams v. Zimmerman, 73 F.3d 1164, 1177 (1st Cir.1996); Waterman v. Ditto (In re Waterman), 248 B.R. 567, 573 (8th Cir. BAP 2000); Pride Cos., L.P. v. Johnson (In re Pride Cos., L.P.), 285 B.R. 366, 372-73 (Bankr.N.D.Tex.2002)* (collecting cases).

> In the sizable minority line of cases, courts have permitted unsecured creditors to claim attorneys' fees incurred postpetition but based on a prepetition contract. See *Martin v. Bank of Germantown (In re Martin), 761 F.2d 1163, 1168 (6th Cir.1985); United Merchs. & Mfrs. Inc. v. Equitable Life Assurance Soc'y of the U.S. (In re United Merchs. & Mfrs. Inc.), 674 F.2d 134 (2d Cir.1982)* (decided under the former Bankruptcy Act, but commenting on section 506(b) of the current Code); *In re New Power Co., 313 B.R. 496 (Bankr.N.D.Ga.2004); but see Pride Cos., 285 B.R. at 374* (listing the "sizable minority" cases decided before 2002).

**1. Section 502 vs. Section 506**

In *Electric Machinery,* as in almost all of the cases in the majority line, the court held that unsecured creditors cannot recover postpetition fees because the "plain language" of section 506(b) precludes such claims:

The emphasized language of section 506(b) demonstrates the congressional intent to create an exception to the general rule that claims are to be determined as of the petition date, exclusive of postpetition interest, attorneys' fees, and other charges. The use of the words "to the extent" a claim is oversecured, and "there shall be allowed" interest and fees, mandates the conclusion that in all other

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

circumstances, post-petition interest, attorneys' fees, and charges shall not be allowed. These courts have concluded that if Congress intended for unsecured creditors to receive post-petition attorneys' fees, then it would have done so explicitly by authorizing unsecured creditors to collect fees under section 506(b).

*Elec. Mach.,* 371 B.R. at 551, citing *Pride Cos.,* 285 B.R. at 372. In contrast, the *Omect* court rejected the argument that section 506(b) permits only secured creditors to recover postpetition fees:

The Court finds this reading of 11 U.S.C. §§ 502(b) and 506(b) too strained to be persuasive. First, 11 U.S.C. § 506 is entitled "Determination of Secured Status." A statute so entitled would not be a logical place to provide for the disallowance of an element of an unsecured claim. If Congress, in enacting the Bankruptcy Code, had wanted to disallow claims for post-petition attorneys' fees, the logical place for it to have done so was surely in 11 U.S.C. § 502(b). Moreover, 11 U.S.C. § 506(b) does not distinguish between pre-petition and post-petition attorneys' fees. Thus, if 11 U.S.C. § 506(b) is read as an additional ground for objecting to claims, arguably, an unsecured creditor would be prohibited from including its pre-petition attorneys' fees in its claim as well as its postpetition fees.

*Omect,* 368 B.R. at 885.

We are not persuaded by the approach of the *Electric Machinery* court and, like *Omect,* we reject the argument that section 506(b) preempts postpetition attorneys' fees for all except oversecured creditors. While we cannot predict how the Ninth Circuit will decide this issue in *Travelers,* we do find a clue in *Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.),* 789 F.2d 674, 678 (9th Cir.1986), where the Ninth Circuit observed that section 506(b) defines secured claims and does not limit unsecured claims:

When read literally, subsection (b) arguably limits the fees available to the oversecured creditor. When read in conjunction with § 506(a), however, it may be understood to define the portion of the fees which shall be afforded secured status. We adopt the latter reading.

*268 Ltd.,* 789 F.2d at 678.

[13] In *268 Limited,* an oversecured creditor sought postpetition attorneys' fees based on its contract with the debtor, **\*842** which provided that if the creditor could recover five percent of the balance due at the time of default as attorneys' fees. *Id.* at 675. The creditor argued that because Nevada law permitted recovery of fees on such a percentage basis, the fees were reasonable and allowable under section 506(b) as a matter of law. *Id.* The Ninth Circuit disagreed, holding that section 506(b) permitted the creditor to claim as secured only its "reasonable" fees and that the percentage recovery was unreasonable. *Id.* at 675-77. The Ninth Circuit then remanded to allow the creditor to claim those attorneys' fees exceeding the "reasonable" amount as an unsecured claim under section 502(b)(1). The court noted that "other creditors may claim such expenses" under that section and that section 506(b) does not "limit the fees available" as an unsecured claim but merely "define[s] the portion of the fees which shall be afforded secured status." [FN17] *Id.* at 678.

> FN17. While the Ninth Circuit in *268 Limited* distinguished the allowability of claims under section 502(b)(1) (which incorporates "applicable law" and is silent about "reasonableness") from the definition of secured claim under section 506, it is important to note that its determination that an unsecured claim may be asserted for the amount of fees in excess of the amount that was "reasonable" under section 506(b) does not mean that the claim necessarily had to be allowed. Rather, the court of appeals remanded to allow the creditor to "seek" the balance of its fees under section 502 and expressed "no opinion on the enforceability under the governing state law of the deed of trust's attorney's fees provision." *268 Ltd.,* 789 F.2d at 678. In other words, the claim would still be subject to objection on the merits based on Nevada law, the precise terms of which were not discussed by the Ninth Circuit (although the contentions of the creditor suggest that Nevada law did not impose a separate reasonableness requirement for recovery of contractual attorneys' fees but instead permitted recovery of such fees on a percentage basis). In this instance, "applicable" California law permits recovery of contractual attorneys' fees only if they are reasonable. *See* CAL. CIV. CODE § 1717. Thus, with

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

respect to California cases, "applicable law" limits postpetition contractual attorney's fees to "reasonable" amounts for the purposes of section 502(b)(1).

[14] We agree with the Ninth Circuit, as well as with the Eleventh Circuit in *Welzel v. Advocate Realty Inv., LLC (In re Welzel),* 275 F.3d 1308, 1316-20 (11th Cir.2001), that the allowance functions of section 506(b) and 502(b) have been incorrectly conflated. Section 502(b), which applies to claims generally, does disallow unmatured interest (*see* 11 U.S.C. § 502(b)(2)); it does not specifically disallow attorneys' fees of creditors or certain other charges. Section 506(b), on the other hand, specifies what may be included in a secured claim.

Comparing the two provisions, the Ninth and Eleventh Circuits courts have held that a creditor may assert an unsecured claim for fees and costs arising under its contract with the debtor, even though the creditor's claim was not an allowed secured claim under section 506(b). *See Welzel,* 275 F.3d at 1317-18 (contains a thorough analysis of the two sections and their respective roles in the Bankruptcy Code).

[W]e must determine how to interpret the general instructions concerning allowance and disallowance contained in [section] 502 and the more specific instructions concerning attorney's fees in [section] 506(b) such that the two provisions are rendered consistent. We first note that [section] 506(b) does not state that attorney's fees deemed unreasonable are to be disallowed. In fact, the subsection is completely silent with regard to the allowance/ disallowance issue. This silence suggests that [section] 506(b) is meant not to displace the general instructions laid down in [**843** section] 502, but to be read together in a complementary manner.

*Id.* at 1317;*see also In re Tricca,* 196 B.R. 214, 219-20 (Bankr.D.Mass.1996) ("Section 506(b) is not a provision which concerns itself with claim allowance. Section 506(b) addresses only the question of what is part of an 'allowed secured claim.' Those courts which have examined [section] 506(b) in conjunction with [section] 502 have concluded that [section] 506(b) does not create additional exceptions to the allowance of claims; rather it only provides for the classification of allowed claims as secured or unse-

cured"); *see also Rodriguez,* 375 B.R. at 545 (section 502, not section 506, governs the allowance or disallowance of unsecured claims).

Therefore, if section 506(b) is-as the Ninth Circuit has hinted-irrelevant to determining the allowability of an unsecured claim, we must look to section 502 to determine allowability. *Travelers,* 127 S.Ct. at 1206;*Rodriguez,* 375 B.R. at 545. As discussed below, section 502(b) does not specifically disallow such fees. *Qmect,* 368 B.R. at 885;*New Power,* 313 B.R. at 509-10.

**2. Date That The Claim Arose**

The *Electric Machinery* court, like the bankruptcy court here and many of the pre- *Travelers* majority courts, disallowed the postpetition fees of an unsecured creditor because section 502(b)(1) provides that a bankruptcy court "shall determine the amount of such claim ... as of the date of the filing of the petition" and the postpetition fees did not exist as of that date. *Elec. Mach.,* 371 B.R. at 551;*Pride Cos.,* 285 B.R. at 373. Because the amount of fees incurred postpetition cannot be determined or calculated as of the petition date, section 502(b) purportedly precludes their allowance. *Id.* We disagree with this approach, as it is inconsistent with the Bankruptcy Code's broad definition of "claim," which-as discussed previously-includes any right to payment, whether or not that right is contingent and unliquidated. *See* 11 U.S.C. § 101(5)(A); *Qmect,* 368 B.R. at 884.

Here, the parties' execution of a prepetition agreement containing an attorneys' fees provision gives rise to a contingent, unliquidated attorney-fee claim. As the *New Power* court held: "[w]hen a creditor's right to payment for fees exists prepetition, the right to payment constitutes a 'claim,' within the meaning of § 101(5)(A), *albeit* an unliquidated, unmatured claim that may be estimated for purposes of allowance, if necessary, pursuant to § 502(c)." [FN18] *New Power,* 313 B.R. at 508.

> FN18. To the extent that we hold that fees incurred postpetition but arising out of a prepetition contract or agreement constitute contingent, unliquidated prepetition claims, describing them as "postpetition fees" may be inaccurate. Nonetheless, our use of this

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

term is a shorthand means of describing attorney fees actually incurred postpetition but based on the debtor's prepetition contract. More to the point, the critical events that no doubt relate to a portion of Centre's attorneys fees-the Release, the Payment and the Commissioner's conservation-all occurred prepetition, thus making Centre's claim less remote and less contingent.

"So long as the right to collect the fees existed prepetition, the fact that the fees were actually incurred during the postpetition period is not relevant to the determination of whether the creditor has an allowable pre-petition claim for the fees." [FN19]**844**_Id.; see also Mfrs. Hanover Trust Co. v. Bartsh (In re Flight Trans. Corp. Sec. Litig.),_ 874 F.2d 576 (indenture trustee had a "right of payment" for attorneys' fees under prepetition contract, and thus had an allowable unsecured claim under section 502(b) even though such fees were unknown as of the petition date).

FN19. In _Keaton v. Boatmen's Bank of Tenn.,_ 212 B.R. 587 (E.D.Tenn.1997), vacated as moot, 145 F.3d 1331, 1998 WL 228123 (6th Cir.1998), the district court engaged in a thorough analysis of whether fees incurred postpetition pursuant to a prepetition claim are disallowable because they were not fixed "as of the date of the filing of the petition." _Keaton,_ 212 B.R. at 589-91. Even though the decision was vacated as moot when the creditor abandoned its claim for attorneys' fees (145 F.3d at 1331), we find the analysis of _Keaton_ persuasive. Quoting the bankruptcy court with approval, the district court held: "While the representation may have been performed after the petition was filed, [the creditor's] right to collect attorney's fees arose out of the contract and is a prepetition claim." _Keaton,_ 212 B.R. at 591. The creditor "had a prepetition right to collect attorneys' fees, _albeit_ an unmatured, contingent right; i.e., the right was contingent upon the [creditor] actually incurring attorneys' fees in collecting the debt." _Id._

This approach is consistent with the Ninth Circuit's "fair contemplation" test-which we discussed in more detail earlier-for determining when a claim accrues.

Postpetition fees can be fairly contemplated when the parties have provided for them in their contracts and thus are contingent claims as of the petition date. They cannot be disallowed merely because they are contingent. _Qmect,_ 368 B.R. at 884. As stated by one leading commentator: "In general, if the creditor incurs the attorneys' fees postpetition in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred." 5 _Collier on Bankruptcy_ § 553.03[1][i] (15th ed. Updated 2007).

Because we hold that attorneys' fees arising out of a prepetition contract but incurred postpetition fall within the Bankruptcy Code's broad definition of claim, we reject the position of the majority line of cases that section 502(b) precludes such fees.

**3. Does Timbers Control?**

Like many other courts in the majority line, the _Electric Machinery_ court concluded that the Supreme Court's holding in _Timbers,_ 484 U.S. at 380, 108 S.Ct. 626, mandated disallowance of claims by unsecured creditors for postpetition attorneys' fees:

In _Timbers,_ the Supreme Court concluded that because section 506(b) permitted post-petition interest to be paid only out of an equity cushion, an undersecured creditor who had no such equity cushion fell within the general rule of disallowing postpetition interest. Courts that rely on _Timbers_ to disallow post-petition attorneys' fees and costs reason that the rationale applies equally to the disallowance of post-petition attorneys' fees and costs to unsecured or undersecured creditors.

_Elec. Mach.,_ 371 B.R. at 551.

We believe that _Electric Machinery's_ reliance on _Timbers_ is misplaced. _Timbers_ provided that an undersecured creditor could not receive postpetition interest on the unsecured portion of its debt. _Timbers,_ 484 U.S. at 380, 108 S.Ct. 626. This holding is consistent with section 502(b)(2), which specifically disallows claims for unmatured interest. Inasmuch as section 502(b) does not contain a similar prohibition against attorneys' fees, the comparison between the current issue and that presented in _Timbers_ is not

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193
**(Cite as: 571 F.3d 826)**

persuasive. *New Power,* 313 B.R. at 510 ("there is no exception within 502(b) which would prevent the collection of attorneys' fees by a creditor who has a valid nonbankruptcy **\*845** right to do so" and neither section 506(b) nor *Timbers* bars unsecured creditors from asserting a contractual or statutory claim for attorneys' fees); *see also Gencarelli,* 501 F.3d at 6, n. 2 (finding *Timbers* inapposite because postpetition interest is "made unavailable as [an] unsecured claim[ ] by an explicit statutory provision").

**4. Public Policy**

[15]  Finally, *Electric Machinery* cites policy reasons why courts should disallow claims by unsecured creditors for postpetition attorneys' fees; in particular, the court opines that disallowance of these claims would promote "equality of distribution" and would prevent individual creditors from utilizing scorched-earth litigation tactics or absorbing an inequitable amount of estate assets. *Elec. Mach.,* 371 B.R. at 551-53. In contrast, the court in *Omect* identifies a different policy reason for allowance of such claims (i.e., to prevent the unfairness of a debtor recovering such fees while the creditor is prohibited from similar recovery). Because we find that the Bankruptcy Code itself provides the answer to this issue (by not specifically disallowing postpetition fees), we do not attempt to reconcile these policy concerns. In the end, it is the province of Congress to correct statutory dysfunctions and to resolve difficult policy questions embedded in the statute.[FN20]

> FN20.  While there is intuitive appeal to the *Electric Machinery* court's concern that an overactive creditor could unfairly run up fees, several factors reduce the potential for trouble. First, the fee doctrines of many jurisdictions, including the general California attorney's fee doctrine that applies here, impose requirements in the nature of reasonableness. Second, the sections of the Bankruptcy Code that expressly focus on compensation for attorneys generally include limitations premised on reasonableness: *e.g.,* section 303(i)(1)(B) ("reasonable attorney's fee"); section 329(b) ("reasonable value of any such services"); section 330(a) ("reasonable compensation"); section 331 (incorporates section 330); section 502(b)(4) ("reasonable value of such services"); sec-

tion 503(b)(4) ("reasonable compensation"). It is counterintuitive to suppose that a court of equity would fully allow a claim for creditor's unreasonable attorneys' fees in litigating with an attorney who can receive only "reasonable" compensation. Third, economic constraints on creditors exist in the typical bankruptcy case where resources are not available to pay unsecured claims in full; a creditor's extra fees will be fully compensated only in the unusual situations where funds are available to pay 100 percent of claims. Thus, the opportunities for gamesmanship are limited.

In summary, we agree with the *Omect* court that claims for postpetition attorneys' fees cannot be disallowed simply because the claim of the creditor is unsecured. Because Centre is entitled to claim postpetition attorneys' fees as part of its unsecured claim under section 502, we remand for the bankruptcy court to determine whether Centre has satisfied the requisites for allowance of that portion of its claim under the relevant contracts and state law.

**VI. CONCLUSION**

For the foregoing reasons, we REVERSE the bankruptcy court's holding that Centre's claim against SNIG up to the amount of $180 million be disallowed and REMAND for allowance of the $110 million paid by Centre to the Commissioner. We further REVERSE the disallowance of Centre's postpetition fees to the extent the disallowance was based solely on Centre's status as an unsecured creditor and REMAND for a determination of whether Centre is entitled to the fees under the relevant contracts or state law or whether other grounds exist (apart from Centre's status as an unsecured creditor) for disallowing**\*846** the postpetition attorneys' fees claim.

C.A.9,2009.
In re SNTL Corp.
571 F.3d 826, Bankr. L. Rep. P 81,515, 09 Cal. Daily Op. Serv. 7830, 2009 Daily Journal D.A.R. 9193

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



368 B.R. 882, 57 Collier Bankr.Cas.2d 300
**(Cite as: 368 B.R. 882)**

**H**
United States Bankruptcy Court,
N.D. California.
In re QMECT, INC., etc., etc., Debtor-in-Possession.
In re Fred and Linda Koelling, Debtors-in-Possession.
Qmect, Inc., etc., etc., Plaintiff,
v.
Burlingame Capital Partners II, L.P., etc. et al., Defendants.
**Bankruptcy Nos. 04-41044 T, 04-46443 T.**
**Adversary Nos. 04-4190 AT, 04-4365 AT, 04-4366 AT.**

May 17, 2007.

**Background:** In Chapter 7 case, creditor filed motion for award of post-petition attorney fees pursuant to its various contracts with debtors as part of its unsecured claim.

**Holdings:** The Bankruptcy Court, Leslie Tchaikovsky, J., held that:
(1) creditor's post-petition attorney fees constituted "claim," and
(2) creditor was entitled to include fees in its claim.

Motion granted.

West Headnotes

**[1] Bankruptcy 51 ☞2825**

51 Bankruptcy
    51VII Claims
        51VII(A) In General
            51k2825 k. Claims Allowable; What Constitutes "Claim.". Most Cited Cases

**Bankruptcy 51 ☞2832.1**

51 Bankruptcy
    51VII Claims
        51VII(A) In General
            51k2832 Post-Petition Claims
                51k2832.1 k. In General. Most Cited

Cases
Creditor's post-petition attorney fees pursuant to its various contracts with debtors constituted "claim" against debtors' bankruptcy estate. 11 U.S.C.A. § 101(5).

**[2] Bankruptcy 51 ☞2832.1**

51 Bankruptcy
    51VII Claims
        51VII(A) In General
            51k2832 Post-Petition Claims
                51k2832.1 k. In General. Most Cited Cases

Creditor was entitled to include in its unsecured claim post-petition attorney fees pursuant to its various contracts with debtors. 11 U.S.C.A. §§ 502(b), 506(b).

**\*882**Gregory A. Rougeau, Paul E. Manasian, Thomas T. Hwang, Law Offices of Manasian and Rougeau, San Francisco, CA, for Plaintiff.

Marlene Moffitt, Mary Cain, Robert R. Moore, William W. Huckins, Allen, Matkins, Leck, Gamble, Mallory et al., Tobias S. Keller, Pachulski, Stang, Ziehl, Young and Jones, San Francisco, CA, for Defendants.

Reidun Stromsheim, Law Offices of Stromsheim and Assoc., San Francisco, CA, for trustee.

Electrochem Funding, LLC, pro se.

Burlingame Capital Partners II, pro se.

Eric A. Nyberg, Kornfield, Paul and Nyberg, Oakland, CA, for Debtors-in-Possession.

**MEMORANDUM OF DECISION RE MOTION FOR POST-PETITION ATTORNEYS' FEES**

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

Defendant Burlingame Capital Partners II, L.P. ("Burlingame") seeks an award of post-petition attorneys' fees pursuant to its various contracts with the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**368 B.R. 882, 57 Collier Bankr.Cas.2d 300**
**(Cite as: 368 B.R. 882)**

above-captioned debtors as part of its undersecured claim against Qmect, Inc. ("Qmect") and its general, unsecured claim against Fred and Linda Koelling (the "Koellings")(referred to hereinafter collectively as its "unsecured claim"). For the reasons stated below, the Court concludes that Burlingame is entitled to include its reasonable post-petition attorneys' fees in its unsecured claim against these debtors. A determination of a specific amount of those fees must await the submission of a more detailed description of the work done litigating issues peculiar to bankruptcy law.

**\*883A. PROCEDURAL BACKGROUND**

On or about August 29, 2006, Burlingame sought an award of post-petition attorneys' fees and costs as part of its judgment in the above-captioned consolidated adversary proceedings. After the motion was fully briefed and a hearing conducted, the Court took the motion under submission. On October 16, 2006, the Court issued its decision denying the motion without prejudice.

In its decision, the Court observed that, at that time, the controlling law in the Ninth Circuit was represented by *In re Fobian,* 951 F.2d 1149 (9th Cir.1991). The *Fobian* court held that attorneys' fees were not recoverable for litigating issues peculiar to bankruptcy law. *Fobian,* 951 F.2d at 1153. The Court observed that the motion was insufficiently specific to permit the Court to determine what portion of the fees were requested for litigating issues peculiar to bankruptcy law. It also observed that the issue presented in *Fobian* was currently before the United States Supreme Court in *Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.,* 167 Fed.Appx. 593 (9th Cir.)(unpublished), *cert. granted,* --- U.S. ---- , 127 S.Ct. 377, 166 L.Ed.2d 265 (2006). The Court directed Burlingame to resubmit its motion after segregating the time spent on bankruptcy issues from that spent on nonbankruptcy issues.

On February 8, 2007, Burlingame filed an amended motion for attorneys' fees, complying with this instruction. The motion was heard on March 8, 2007 and was again taken under submission. On March 20, 2007, the Supreme Court issued its decision in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* --- U.S. ----, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). The *Travelers* court expressly overruled *Fobian.* It noted that the only rea-

son given by the lower courts for disallowing the fees was that the work performed related to issues peculiar to bankruptcy law. The Supreme Court found that there was no basis in the Bankruptcy Code for barring post-petition attorneys' fees on this ground.[FN1]*Travelers,* 127 S.Ct. at 1205. However, it declined to rule on the debtor's contention that no post-petition fees could be included in an unsecured creditor's claim because the debtor had failed to make this argument to the lower courts or in opposition to the creditor's petition for certiorari.

> FN1. None of the fees in *Travelers* were requested for work performed litigating issues of state law. *See Travelers,* 127 S.Ct. at 1202-03.

On April 3, 2007, Burlingame filed a supplemental brief asking whether the Court wished further briefing on the effect of *Travelers* on its motion for post-petition fees. On April 6, 2007, the Court issued an order setting a briefing schedule and indicating that no hearing would be scheduled unless the Court concluded, after reading the papers, that a hearing was necessary. The Court has concluded that no hearing is required.

**B. DISCUSSION**

**1. Introduction**

Burlingame contends that existing Ninth Circuit law, other than *Fobian,* recognizes an unsecured creditor's right to include post-petition attorneys' fees in its unsecured claim to the extent they are provided for by contract or nonbankruptcy statute. It further notes that all of the other Circuits that have addressed this issue have reached the same conclusion. It argues that the various provisions of the Bankruptcy Code compel this conclusion. It notes that 11 U.S.C. § 502(b) provides that a creditor's claim shall be allowed **\*884** unless one of nine enumerated exceptions applies. None of the nine enumerated exceptions refers to post-petition attorneys' fees.

In response, the Koellings rely on the theory advanced by the debtor in *Travelers,* which the Supreme Court declined to address given the debtor's failure to raise it earlier: i.e., that 11 U.S.C. § 506(b) implicitly provides for the disallowance of unsecured claims for post-petition attorneys' fees. Burlingame

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

368 B.R. 882, 57 Collier Bankr.Cas.2d 300
**(Cite as: 368 B.R. 882)**

contends that this is not a fair reading of 11 U.S.C. § 506(b).

**2. Analysis**

**A. Is It a Claim?**

In its argument, Burlingame assumes without discussion that its post-petition attorneys' fees qualify as a "claim" against the bankruptcy estate. The definition of "claim" is very broad and includes "contingent" claims. See 11 U.S.C. § 101(5). Black's Law Dictionary defines a "contingent liability" as "a liability that will occur only if a specific event happens; a liability that depends on the occurrence of a future and uncertain event." Black's Law Dictionary 926 (7th ed.1999), as cited in In re ML & Assocs., Inc., 2003 WL 23742550, *2 (Bankr.N.D.Tex.).

Arguably, the definition of "contingent liability" cited above may be read to require that the specific event triggering the contingent claim be outside the claimant's control. Incurring post-petition attorneys' fees is not outside a creditor's control. The need to incur the fees may be triggered by conduct of the debtor or some other third party but the creditor could choose to do nothing. However, the Court has been unable to find any authority to support this reading of "contingent liability." [FN2]

> FN2. But see In re Esgro Inc., 645 F.2d 794, 798 (9th Cir.1981) and In re THC Fin. Corp., 686 F.2d 799, 803 (9th Cir.1982), Bankruptcy Act cases holding that a contingent claim outside the creditor's control is too uncertain to value and is thus not "provable": i.e., in Bankruptcy Act terminology, allowable against the bankruptcy estate.

[1] Moreover, as discussed below, there is case authority decided under the Bankruptcy Act, authorizing the inclusion of post-petition attorneys' fees in a creditor's unsecured claim. The Bankruptcy Act, as amended by the Chandler Act in 1938, also included contingent claims within its definition of "claim." [FN3] If this was error, one would have expected Congress to clarify the meaning of "contingent" when it enacted the Bankruptcy Code. Therefore, the Court holds that Burlingame's post-petition attorneys' fees do qualify as a "claim" under 11 U.S.C. § 101(5).

> FN3. See Chandler Act, ch. 575, § 63(a)(8), 52 Stat. 840, 873 (1938)(adding contingent claims to the list of provable claims in § 63 of the Bankruptcy Act).

**B. Is Claim Subject to Disallowance?**

As Burlingame notes, 11 U.S.C. § 502(b) provides that, with exceptions not relevant here, if an objection is made to a claim, the claim shall be allowed, except to the extent that the claim falls into one of nine categories. 11 U.S.C. § 502(b). The only category that arguably supports the disallowance of an unsecured claim for post-petition attorneys' fees is 11 U.S.C. § 502(b)(1): i.e., that "such claim is unenforceable against property of the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured...." 11 U.S.C. § 502(b)(1).

The debtor contends that this category applies to post-petition attorneys' fees because 11 U.S.C. § 506(b) renders the claim **885** for post-petition attorneys' fees unenforceable against the debtor and property of the debtor. Section 502(b)(1) refers to "applicable law," not "applicable nonbankruptcy law." Thus, Section 506(b) qualifies as "applicable law." Section 506(b) provides as follows:

(b) To the extent that an allowed secured claim is secured by property, the value of which is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and reasonable fees, costs or charges provided for under which such claim arose.

Thus, according to the debtor, by providing that a secured claim shall be allowed reasonable fees to the extent the claim is secured by property, the Bankruptcy Code is implicitly saying that fees are not available to an unsecured creditor.

[2] The Court finds this reading of 11 U.S.C. §§ 502(b) and 506(b) too strained to be persuasive. First, 11 U.S.C. § 506 is entitled "Determination of Secured Status." A statute so entitled would not be a logical place to provide for the disallowance of an element of an unsecured claim. If Congress, in enacting the Bankruptcy Code, had wanted to disallow

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

368 B.R. 882, 57 Collier Bankr.Cas.2d 300
**(Cite as: 368 B.R. 882)**

claims for post-petition attorneys' fees, the logical place for it to have done so was surely in 11 U.S.C. § 502(b).[FN4] Moreover, 11 U.S.C. § 506(b) does not distinguish between pre-petition and post-petition attorneys' fees. Thus, if 11 U.S.C. § 506(b) is read as an additional ground for objecting to claims, arguably, an unsecured creditor would be prohibited from including its pre-petition attorneys' fees in its claim as well as its postpetition fees.[FN5]

> FN4. *See* 11 U.S.C. § 502(b)(2)(disallowing claims for post-petition interest).

> FN5. *But see Rake v. Wade,* 508 U.S. 464, 468, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) and *United States v. Ron Pair Enterp., Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), which appear to construe similar language in 11 U.S.C. § 506(b) regarding interest to apply only to *post-petition* interest.

The Court has been unable to find any Court of Appeals decided under the Bankruptcy Code, in either this Circuit or any other, that directly addresses this issue.[FN6] The Ninth Circuit cases cited by Burlingame are for the most part inapposite. They are either non-dischargeability cases, cases where the estate was requesting fees, or cases where the *Fobian* distinction was at issue. However, the cases establishing the estate's right to attorneys' fees as the prevailing party in post-petition litigation-e.g., *In re Eastview Estates II,* 713 F.2d 443, 451-52 (9th Cir.1983)-provide an additional equitable rationale supporting the Court's conclusion. It would seem highly inequitable to permit the estate to recover fees incurred in post-petition with a creditor while at the same time denying the creditor the right even to include its post-petition fees in its unsecured claim.

> FN6. The Court views *In re Welzel,* 275 F.3d 1308 (11th Cir.2001) as inapposite. In that case, the creditor was fully secured. However, some of the fees sought were deemed not reasonable as required by 11 U.S.C. § 506(b). The *Welzel* court allowed the reasonable fees as part of the creditor's secured claim and the unreasonable fees as a general, unsecured claim. *Id.* at 1313-20.

The Court has identified one Bankruptcy Act case

decided by the Second Circuit case that addresses this issue: i.e., *United Merchants & Manufacturers, Inc. v. Equitable Life Assurance,* 674 F.2d 134, 137-38 (2d Cir.1982)(Bankruptcy Act). In *United Merchants,* the lower court had allowed the unsecured creditor's contractual claims for "collection costs" but only to the extent the litigation was conducted outside the bankruptcy court. On appeal, the Second Circuit removed this limitation. It rejected **886** the argument that it was unfair to give a creditor with a contractual attorneys' fee clause a greater claim than unsecured creditors without a basis for fees. *Id.* at 143-44. The only basis for distinguishing *United Merchants* is that it was decided under the Bankruptcy Act, which did not have an express provision comparable to 11 U.S.C. § 506(b). The Court finds this distinction without significance.[FN7]

> FN7. The Bankruptcy Code had been enacted by the time this case came up on appeal. The argument was made that, by enacting 11 U.S.C. § 506(b), Congress had intended to codify a rule applicable also under the Bankruptcy Act, prohibiting the award of post-petition fees to unsecured creditors. The *United Merchants* court rejected this theory, concluding that 11 U.S.C. § 506(b) was only intended to address the rights of secured creditors to post-petition fees. *Id.* at 138.

The strongest rationale for implying a prohibition on the inclusion of post-petition attorneys' fees in a unsecured creditor's pre-petition claim is that, unless the debtor is solvent, the unsecured creditor's augmented claim will diminish the dividend to other unsecured creditors. However, a similar effect flows from allowing secured creditors to include their post-petition attorneys' fees in their secured claims. While equality of distribution is one of the basic tenets of bankruptcy law, another important policy in bankruptcy is the preservation of nonbankruptcy legal rights except to the extent necessary to facilitate the purpose of the bankruptcy proceeding. Absent a clear provision of the Bankruptcy Code modifying a creditor's nonbankruptcy legal rights, the Court concludes that those rights should be deemed to be left intact.

## CONCLUSION

The Court concludes that Burlingame is entitled to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

368 B.R. 882, 57 Collier Bankr.Cas.2d 300
**(Cite as: 368 B.R. 882)**

include all its reasonable post-petition fees in its un-
secured claim against the debtors. Burlingame is di-
rected to file an amended motion for fees within 60
days from the date of this decision, segregating by
task the work done on bankruptcy related issues and
providing the additional detail describing the work
done as previously provided for the nonbankruptcy
litigation. The debtors will be given 30 days from the
date of service of the amended motion to file an ob-
jection to the fees as unreasonable in amount. Burlin-
game will be given 15 days from the date of service
of the opposition to reply and alert the judge's law
clerk when the matter is fully briefed.

Bkrtcy.N.D.Cal.,2007.
In re Qmect, Inc.
368 B.R. 882, 57 Collier Bankr.Cas.2d 300

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.