## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:                                              Case No.  05-03817-3F1

)

WINN-DIXIE STORES, INC., et al.,            Chapter 11

)

Reorganized Debtors.                        Jointly Administered

)

### WINN-DIXIE'S MEMORANDUM IN OPPOSITION
### TO VISAGENT'S MOTION TO STRIKE
### PATRICIA MITCHELL FROM WINN-DIXIE'S WITNESS LIST

Winn-Dixie opposes Visagent's motion to strike Patricia Mitchell

from Winn-Dixie's witness list and preclude her testimony at trial, and says:

1.      Visagent argues that Winn-Dixie cannot call Patricia Mitchell, a

former Winn-Dixie in-house attorney, as a witness at trial because Winn-

Dixie proffered Ms. Mitchell as a witness on the eve of trial, while

withholding documents from production to Visagent based on the attorney-

client privilege:

> Now, on the eve of trial, Debtors seek to proffer
> Ms. Mitchell as a witness in this matter, after
> withholding documentation based on her
> attorney/client relationship with Debtors.  Visagent
> requested that Winn-Dixie waive the privilege and
> the request was denied.
>
> Visagent's motion, para. 6.

2.      Over *three years ago*, Winn-Dixie disclosed to Visagent that Ms. Mitchell had knowledge of the negotiations leading up to the execution of the Service Agreement (Winn-Dixie's answers to Visagent's first set of interrogatories (Interrogatory No. 3, page 3, served on August 25, 2006, attached as Exhibit A).  Winn-Dixie also timely disclosed over a month and a half ago on December 10 that Winn-Dixie intended to call Ms. Mitchell as a witness at trial (Docket No. 22800).

3.      Pursuant to the well-established right to assert the attorney-client privilege, Winn-Dixie objected to producing to Visagent documents containing privileged communications.  Winn-Dixie acknowledges that it cannot stand on the attorney-client privilege and at the same time ask Ms. Mitchell to testify about attorney-client communications.  And Winn-Dixie does not propose to do so.

4.      Ms. Mitchell's expected testimony will not relate to privileged communications, but instead on non-privileged documents and communications.  Ms. Mitchell communicated directly with Mark Rubin regarding Winn-Dixie's intent regarding the Service Agreement (for example, see copies of Ms. Mitchell's 2001 and 2002 e-mail to Mr. Rubin attached as Exhibits B and C).  Ms. Mitchell also prepared red-lined drafts

that annotate Winn-Dixie's suggested changes to Visagent's draft of the Service Agreement which were provided to Visagent in 2001.

5.      Visagent also argues that it will be difficult for Visagent to depose Ms. Mitchell because she went on a vacation and wants to be deposed in Denver, Colorado (where she resides) and that it will take two days out of Visagent's attorney's schedule to travel to Colorado:

> Furthermore, Ms. Mitchell made herself unavailable for deposition due to a vacation and now has made herself available for deposition ONLY in Denver, Colorado during the week before trial.  Traveling to Colorado which will take two days of undersigned counsel's time out of the last week before trial is prejudicial to Claimant.

> Visagent's motion, para. 8.

6.      Visagent had three and a half years to depose Ms. Mitchell, following Winn-Dixie's disclosure that she had knowledge of the negotiations leading to the Service Agreement.   After Winn-Dixie's December 10 disclosure that Winn-Dixie intended to call Ms. Mitchell as a trial witness, Visagent waited until January 10 to inquire about her availability for deposition.   Winn-Dixie offered to make Ms. Mitchell available for deposition on several dates, but Visagent's attorneys declined those dates.  Moreover, Visagent's attorney will not take two days out of his

schedule to depose Ms. Mitchell in Colorado.  Visagent's attorney intends to depose Ms. Mitchell by videoconference from Jacksonville.

7.    Visagent's motion also is premature because Visagent has not yet taken Ms. Mitchell's deposition and has no idea what she will say or what objections may or may not be made by Winn-Dixie.

8.    For all these reasons, Visagent's motion to strike should be denied.

SMITH HULSEY & BUSEY

By  _/s/ Timothy R. Buskirk_____
        Stephen D. Busey
        James A. Bolling
        Timothy R. Buskirk

Florida Bar Number 0058314
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
tbuskirk@smithhulsey.com

Attorneys for Winn-Dixie

## <u>Certificate of Service</u>

I certify that a copy of the foregoing document was furnished electronically through the Court's CM/ECF electronic notification system to **Guy Bennett Rubin, Esq.**, Rubin & Rubin, Post Office Box 395, Stuart, Florida 34995, this 1st day of February, 2010.


_____ */s/ Timothy R. Buskirk* _____
Attorney

688921.1

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

WINN-DIXIE STORES, INC., et al.,

    Debtors.[1]

Case No. 05-03817-3F1

Chapter 11

Jointly Administered

## DEBTORS' RESPONSE TO VISAGENT
## CORPORATION'S FIRST SET OF INTERROGATORIES

Winn-Dixie Stores, Inc. and twenty-three of its subsidiaries and affiliates (collectively, the "Debtors") respond to Visagent Corporation's first set of interrogatories as follows:

### General Objections

Debtors object to these interrogatories (i) to the extent they require the disclosure of information protected by the attorney-client privilege or the work product doctrine, (ii) to the extent they seek confidential information, including proprietary information, absent the entry of a protective order governing confidentiality, and (iii) because they and exceed the number allowed by Rule

---

[1]  In addition to Winn-Dixie Stores, Inc., the following entities are debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.

*See page 3*

7033, Federal Rules of Bankruptcy Procedure.  The responses below are subject to these general objections.

### Specific Objections and Answers

Interrogatory No. 1:  State the name of the person answering these interrogatories and all persons who assisted in any manner in providing the information in which to answer these interrogatories.

Answer to Interrogatory No. 1:  James A. Bolling, David L. Gay, and Tom Barr.

Interrogatory No. 2:  Identify all current Winn-Dixie employees who have knowledge of the negotiations leading up to the execution of the Service Agreement, and for each, please identify:  a) his or her name, b) position or title during the relevant time, c) current position or title, d) name of the employee's immediate superior during the relevant time and d) the scope of said employee's knowledge

Answer to Interrogatory No. 2:

a) Tom Barr, b) Alternate Source Manager, c) Buyer, d) Daryl Mills

a) Kevin Gates, b) Business Systems Manager, c) same, d) Daryl Mills

a) Dan Lefever, b) Senior Vice President, Procurement, c) Division President, Orlando, d) Al Rowland

d)  For each of the preceding, the employees scope of knowledge included general knowledge of the negotiations leading up to the execution of the Service Agreement.

2

Interrogatory No. 3:  Identify all former Winn-Dixie employees who have knowledge of the negotiations leading up to the execution of the Service Agreement, and for each, please identify: a) his or her name, b) position or title during the relevant time, c) current position or title, d) name of the employee's immediate superior during the relevant time and d) the scope of said employee's knowledge.

Answer to Interrogatory No. 3:

a) Philip Payment, b) Vice President, Central Procurement, c) unknown, d) Dan Lefever

a) Daryl Mills, b) Director of Strategy and Business Planning, c) unknown, d) Phillip Payment

a) Patricia Mitchell, b) in-house counsel, c) unknown, d) Ron Peterson

a) Ron Peterson, b) Counsel, c) unknown, d) unknown

a) Richard Judd, b) Senior Vice President, c) unknown, d) Al Rowland

d) For each of the preceding, the employees scope of knowledge included general knowledge of the negotiations leading up to the execution of the Service Agreement.

3

Interrogatory No. 4:   Identify all current Winn-Dixie employees who have knowledge of the administration of the Service Agreement after it was executed until June 28, 2004, and for each, please identify: a) his or her name, b) position or title during the relevant time, c) current position or title, d) name of the employee's immediate superior during the relevant time and d) the scope of said employee's knowledge.

Answer to Interrogatory No. 4:

a) Tom Barr, b) Alternate Source Manager, c) Buyer, d) Daryl Mills

a) Kevin Gates, b) Business Systems Manager, c) same, d) Daryl Mills

a) Dan Lefever, b) Senior Vice President, Procurement, c) Division President, Orlando, d) Al Rowland

d) For each of the preceding, the employees scope of knowledge included general knowledge of the administration of the Service Agreement after it was executed.

Interrogatory No. 5:  Identify all former Winn-Dixie employees who have knowledge of the administration of the Service Agreement after it was executed until June 28, 2004, and for each, please identify:  a) his or her name, b) position or title during the relevant time, c) current position or title, d) name of the employee's immediate superior during the relevant time and d) the scope of said employee's knowledge.

Answer to Interrogatory No. 5:

a) Philip Payment, b) Vice President, Central Procurement, c) unknown, d) Dan Lefever

a) Chris Wilson, b) in-house counsel, c) unknown, d) unknown

4

d) For each of the preceding, the employees scope of knowledge included general knowledge of the administration of the Service Agreement after it was executed.

> Interrogatory No. 6: State the total dollar amount of Winn-Dixie purchases of full or truckload quantities of consumer packaged goods purchased or resold in a wholesale format in the secondary market:
>
> a. For the period June 28, 2001 through June 27, 2002.
> b. For the period June 28, 2002 through June 27, 2003.
> c. For the period June 28, 2003 through June 27, 2004.
> d. For the period June 27, 2004 through February 21, 2005
> e. For the time period February 21, 2005 through present.
> f. For each of the time periods in a through e of this interrogatory, state the total secondary market transactions by purchases, by sales for full or truckload quantities and by less than full or truckload quantities.

Objection to Interrogatory No. 6: Subparts d and e are overly broad and will not lead to the discovery of admissible evidence.

Answer to Interrogatory No. 6: Subject to Debtors' general and specific objections, the answer to this interrogatory may be derived or ascertained from documents Debtors will produce and the burden of deriving or ascertaining the answer is substantially the same for Visagent as it is for Debtors.

5

Interrogatory No. 7:  State the total dollar amount of Winn-Dixie sales of full or truckload quantities of consumer packaged goods purchased or resold in a wholesale format in the secondary market:

a. For the period June 28, 2001 through June 27, 2002.
b. For the period June 28, 2002 through June 27, 2003.
c. For the period June 28, 2003 through June 27, 2004.
d. For the period June 27, 2004 through February 21, 2005
e. For the time period February 21, 2005 through present.
f. For each of the time periods in a through e of this interrogatory, state the total secondary market transactions by purchases, by sales for full or truckload quantities and by less than full or truckload quantities.

Objection to Interrogatory No. 7:  Subparts d and e are overly broad and will not lead to the discovery of admissible evidence.

Answer to Interrogatory No. 7:  Subject to Debtors' general and specific objections, the answer to this interrogatory may be derived or ascertained from documents Debtors will produce and the burden of deriving or ascertaining the answer is substantially the same for Visagent as it is for Debtors.

Interrogatory No. 8:  State the total dollar amount of Winn-Dixie purchases of full or truckload quantities of consumer packaged goods purchased or resold through services of Victory Wholesale Grocers between June 28, 2001 and July 1, 2002.

Objection to Interrogatory No. 8:  The interrogatory is overly broad and will not lead to the discovery of admissible evidence.

Answer to Interrogatory No. 8: Subject to Debtors' general and specific objections, to the extent that an answer to this interrogatory may be derived or ascertained from documents in Debtors' possession, Debtors will produce such documents.

Interrogatory No. 9: State the total dollar amount of Winn-Dixie sales of full or truckload quantities of consumer packaged goods purchased or resold through services of Victory Wholesale Grocers between June 28, 2001 and July 1, 2002.

Objection to Interrogatory No. 9: The interrogatory is overly broad and not likely to lead to the discovery of admissible evidence.

Answer to Interrogatory No. 9: Subject to Debtors' general and specific objections, to the extent that an answer to this interrogatory may be derived or ascertained from documents in Debtors' possession, Debtors will produce such documents.

Interrogatory No. 10: State the total dollar amount of Winn-Dixie purchases of full or truckload quantities of consumer packaged goods purchased or resold through the services of WorldWide Retail Exchange between June 28, 2001 and June 27, 2004.

Objection to Interrogatory No. 10: The interrogatory is overly broad and will not lead to the discovery of admissible evidence.

Answer to Interrogatory No.10: Subject to its general and specific objections, none.

7

Interrogatory No. 11: State the total dollar amount of Winn-Dixie sales of full or truckload quantities of consumer packaged goods purchased or resold through the services of WorldWide Retail Exchange between June 28, 2001 and June 27, 2004.

Objection to Interrogatory No. 11: The interrogatory is overly broad and will not lead to the discovery of admissible evidence.

Answer to Interrogatory No. 11: Subject to its general and specific objections, none.

Interrogatory No. 12: State the total dollar amount of Winn-Dixie purchases of full or truckload quantities of consumer packaged goods purchased or resold through services of intersource, Inc. between June 28, 2001 and July 1, 2002.

Objection to Interrogatory No. 12: The interrogatory is overly broad and will not lead to the discovery of admissible evidence.

Interrogatory No. 13: State the total dollar amount of Winn-Dixie sales of full or truckload quantities of consumer packaged goods purchased or resold through the services of intersource, Inc. between June 28, 2001 and June 27, 2004.

Objection to Interrogatory No. 13: The interrogatory is overly broad and will not lead to the discovery of admissible evidence.

Interrogatory No. 14: List all wholesalers that provided electronic data transmissions detailing "in stock" product availability during the period January 1, 2000 through January 1, 2005. Include the date that any listed entity or individual began such

8

> transmissions and the gross value of purchases and
> sales, by month, for each.

<u>Objection to Interrogatory No. 14</u>:  The interrogatory is overly broad and

will not lead to the discovery of admissible evidence.

> <u>Interrogatory No. 15</u>:  Identify all employees, agents or
> representatives of Victory Wholesale Grocers who
> were permitted access to any part of Debtor's
> computer system during the period July 2, 2002 to
> present.

<u>Objection to Interrogatory No. 15</u>:  The interrogatory is overly broad and

will not lead to the discovery of admissible evidence.

<u>Answer to Interrogatory No. 15</u>:   Subject to its general and specific

objections, Robert Carlson, Mark Blouin, Bruce Malcolm, Donna Shami, Melissa

Fowler, Cindy Calatrava, and Nichole Stefanov.

9

Interrogatory No. 16: Identify all employees, agents or representatives of C&S Wholesale Grocers who were permitted access to any part of Debtor's computer system during the period July 2, 2002 to present

Objection to Interrogatory No. 16: The interrogatory is overly broad and will not lead to the discovery of admissible evidence.

Answer to Interrogatory No. 16: Subject to its general and specific objections, none.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
D.J. Baker
Sally McDonald Henry
Rosalie W. Gray
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)
djbaker@skadden.com

and

SMITH HULSEY & BUSEY

By _____
Stephen D. Busey
James A. Bolling
David L. Gay

Florida Bar Number 893221
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
dgay@smithhulsey.com

10

Debtors' answers to Visagent Corporation's first set of interrogatories to Debtors are true and correct to the best of Debtors' knowledge, based on a reasonable investigation.

WINN-DIXIE STORES, INC.

By _____

Tom Barr, Buyer

STATE OF FLORIDA

COUNTY OF DUVAL

The foregoing answers to interrogatories were acknowledged before me this 25th day of August, 2006, by Tom Barr, who is personally known to me or has produced ___Cpersonally known)___ as identification and who did/did not take an oath.

ANITRA D. COLLINS
Notary Public, State of Florida
My commission expires May 20, 2009
Comm. No. DD 408384

_____
NOTARY PUBLIC

## Certificate of Service

I hereby certify that a copy of the foregoing has been furnished **by mail and facsimile** to Guy Bennett Rubin, Esq., Rubin & Rubin, Post Office Box 395, Stuart, Florida and Paul M. Harden, Esq., Rubin & Rubin, 1301 Riverplace Boulevard, Suite 2601, Jacksonville Florida 32207, this _25th_ day of August, 2006.

_____
Attorney

00539354

12

# EXHIBIT B

Rubin, M

| | |
|---|---|
| From: | Patricia M. Mitchell [pmitchelllaw@mediaone.net] |
| Sent: | Wednesday, December 12, 2001 11:57 AM |
| To: | Rubin, M |
| Cc: | Ed Mieskoski; tombarr@winn-dixie.com; Ron Peterson; patriciamitchell@winn-dixie.com |
| Subject: | SGE and VGE |

Dear Mark:

I've been working with my clients, Ed Mieskoski and Tom Barr, to review and analyze the provisions in the Surplus Goods Exchange ("SGE") User Agreement. In general, the terms and provisions for usage are acceptable to Winn-Dixie, with a few exceptions regarding indemnity and liability issues similar to those in the Visagent Grocery Exchange ("VGE") User Agreement. We will continue to work towards finalizing an agreement with Visagent relating to the SGE as soon as possible.

Ed recently advised me that Visagent may be delaying its deployment of the SGE until Winn-Dixie executes the SGE User Agreement. As I understand from Ed, your reluctance to proceed with opening the SGE for business may stem from a concern about unauthorized access to the SGE by Winn-Dixie (or Victory Wholesale) by virtue of Winn-Dixie's current access to and use of the VGE. Accordingly, Ed has informed me that he would be glad to confirm to Visagent, in writing, that Winn-Dixie will not avail itself of the SGE (either to peruse its content or utilize its service) until such time as Winn-Dixie has executed an appropriate SGE User Agreement. Ed has also offered to contact Victory Wholesale Supply and request that they provide you with a similar written confirmation. In the meantime, I will draft a side letter to the SGE User Agreement to address our specific concerns and forward it to you for your consideration.

Shifting focus to the VGE, it has come to my attention that some confusion might exist with respect to the July 2002 expiration of Winn-Dixie's secondary market procurement agreement with Victory Wholesale Supply, and the effect of such expiration on the volume of business conducted by Winn-Dixie in the future through the VGE. While Winn-Dixie continues to believe in the potential efficacy of the VGE as a viable alternative to the traditional method of conducting business with Alternate Source Vendors such as Victory, Winn-Dixie cannot presently provide any assurances that it will cease using its traditional, non-Internet based model in favor of using an exclusively Internet-based, eCommerce model. If an Internet-based model becomes widely adopted by the secondary market procurement industry as its preferred method of transacting business, Winn-Dixie might then consider shifting more of its traditional business to an Internet-based model. If that occurs, Winn-Dixie would, of course, continue to honor its obligations to conduct its Internet-based, eCommerce transactions with Visagent pursuant to the Visagent Service Agreement.

Winn-Dixie is looking forward to increased opportunities to utilize the Visagent Exchanges and is counting upon Visagent to significantly expand the number of retailers committed to using the VGE, and to a successful deployment of the SGE.

Please do not hesitate to contact me if you have any questions or concerns.

Very truly yours,

*Patricia M. Mitchell*

10/24/2006

EXHIBIT

WD 308

WD00000001090

p.s. I will be back in the Winn-Dixie office tomorrow at patriciamitchell@winn-dixie.com

904-280-8009
904-728-2525 (cell)
904-285-9649 (fax)

10/24/2006

WD0000001091

# EXHIBIT C

## Kristen Gallas

**From:**    Patricia Mitchell, Attorney [PatriciaMitchell@winn-dixie.com]
**Sent:**    Wednesday, March 13, 2002 10:11 AM
**To:**       Rubin, M
**Subject:** Draft Letter

Dear Mark,

We are concerned about several comments made by you during recent meetings which indicate the existence of a large chasm separating your interpretation of the terms of the Service Agreement and the interpretation held by Winn-Dixie. Since my email correspondence to you on December 12, 2001 regarding, among other issues, the agreement between Victory Wholesale and Winn-Dixie, you apparently continue to suggest that all of Winn-Dixie's truckload business will have to be conducted through the VGE after the expiration of the Victory agreement, regardless of whether or not Winn-Dixie intends to continue using a traditional, non-Internet model for transacting business. In addition, I understand you have suggested that Winn-Dixie has been somehow remiss in failing to compel all diverters and alternate source suppliers to post their offers on the VGE.

In order to avoid further misunderstandings about the scope of the Service Agreement, and to enable Winn-Dixie to feel comfortable in its relationship with Visagent for future postings on both the VGE and SGE, we feel it necessary to restate our position about the obligations of Winn-Dixie and Visagent under the terms of the current Service Agreement. It has never been the intent of Winn-Dixie that all of its full truckload alternate source business would be conducted using the VGE after expiration of the Victory agreement. The existence of the specific exclusion in the Service Agreement regarding the Victory business does not imply that Winn-Dixie would someday be obligated to use the VGE for transactions beyond the specifically stated scope of the Service Agreement. Rather, the exclusionary language was simply meant to assure there was no debate with Visagent about such business, regardless of the methods by which Victory chose to conduct business during the term of the Victory agreement with Winn-Dixie. It is the intent of Winn-Dixie to enter into a new agreement with Victory or another in-house alternate sourcing provider upon the expiration of the current Victory contract.

In addition, and as stated in my December email to you, Winn-Dixie looks forward to increased success by Visagent in significantly expanding the number of alternate source suppliers and retailers using the VGE (as well as the SGE). In order for Winn-Dixie to have any incentive to warrant trading on and support of the VGE and SGE, there must exist a sufficient number of players to create competitive product offerings and deliver value to Winn-Dixie. At the present time, that incentive does not exist.

While we continue to believe that an Internet-based transaction

EXHIBIT

WD 226

system is the wave of the future, we are not currently comfortable with our relationship with you and your company in light of your comments illustrating a misplaced expectation for future business. I'm sure you are aware that the Federal Trade Commission has taken a very active role over the past two years in examining anti-competitive aspects of B2B exchanges like Visagent. In particular, two of the characteristics of B2B's that the FTC finds extremely offensive are (i) exclusivity arrangements and (ii) minimum volume requirements. With that in mind, perhaps Winn-Dixie and Visagent should meet again to discuss the current Service Agreement and explore ways it could be modified to better meet the needs of both Visagent and Winn-Dixie.

Please feel free to contact Ed Mieskoski directly at 370-7158 to discuss these issues and arrange a meeting.

Very truly yours,

Patricia M. Mitchell
904-783-5963
904-783-5138 (fax)
patriciamitchell@winn-dixie.com