UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WINN-DIXIE STORES, INC., et al., | Case No. 05-03817-3F1 |
| Reorganized Debtors.[1] | (Jointly Administered) |

| | |
|---|---|
| STATE OF NEW JERSEY | ) |
| | ) ss. |
| COUNTY OF ESSEX | ) |

### AFFIDAVIT OF SERVICE

I, Kathleen M. Logan, hereby certify under penalty of perjury that:

1.  I am of legal age and I am not a party to this action.

2.  I am President of Logan & Company, Inc., located at 546 Valley Road, Upper Montclair, New Jersey, Claims and Noticing Agent for the above-mentioned Reorganized Debtors.

3.  On April 13, 2010 I caused copies of:

    •  **Reorganized Debtor's Motion for an Order in Aid of Making a Final Distribution Under Confirmed Reorganization Plan; Notice; Proposed Form of Order** [D.I. Nos. 23098 and 23099]

    to be served via first-class US mail, postage pre-paid to those persons on the Service List attached hereto as Exhibit A. A copy of the served document as listed above is attached hereto as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NOT

_____
Kathleen M. Logan

Sworn to before me this
15th day of April 2010

_____
Notary Public

MELISSA MENDEZ
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 2/29/2011

---

[1]    In addition to Winn-Dixie Stores, Inc., the following entities are reorganized debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc. With the exception of Winn-Dixie Stores, Inc., the related cases of these reorganized debtors were closed on March 22, 2007.

WDX-D1

EXHIBIT A
SERVICE LIST

**Reorganized Debtor's Motion for an Order in Aid of Making a Final Distribution Under Confirmed Reorganized Plan [D.I. Nos. 23098 and 23099]**

**DEBTOR:   WINN-DIXIE STORES, INC., ET AL.**                                        **CASE:   05-03817-3F1 (JAF)**

CREDITOR ID: 417021-AZ
ACE AMERICAN INSURANCE CO
C/O DUANE MORRIS LLP
ATTN: M REED & W SIMKULAK, ESQS
30 SOUTH 17TH STREET
PHILADELPHIA PA 19103

CREDITOR ID: 241522-AZ
ACHILLES REALTY COMPANY
C/O MILAM HOWARD NICANDRI ET AL
ATTN: PETER E NICANDRI ESQ
14 EAST BAY STREET
JACKSONVILLE FL 32202

CREDITOR ID: 241522-AZ
ACHILLES REALTY COMPANY
FLETCHER BRIGHT CO, AS AGENT
C/O MILLER & MARTIN, PLLC
ATTN CATHERINE HARRISON KING, ESQ
1170 PEACHTREE STREET NE, STE 800
ATLANTA GA 30309-7706

CREDITOR ID: 558368-W9
ACHILLES REALTY COMPANY
C/O FLETCHER BRIGHT COMPANY
ATTN KATHY GOSSETT
537 MARKET STREET, STE 400
CHATTANOOGA TN 37402

CREDITOR ID: 558597-AZ
ADAMS, ALBERT H, JR
PO BOX 910
EUFAULA AL 36072-0910

CREDITOR ID: 533710-AZ
ALEC ASHTON RICHMOND, LLC & COMPASS
CAPITAL RICHMOND BY COLEMAN GROUP
C/O WYATT TARRANT & COMBS LLP
ATTN MARY FULLINGTON, ESQ
250 WEST MAIN STREET, SUITE 1600
LEXINGTON KY 40507-1746

CREDITOR ID: 403188-AZ
AMSW INC
C/O STOVASH CASE & TINGLEY PA
ATTN: RACHEL E ADAMS, ESQ
SUNTRUST CENTER
200 SOUTH ORANGE AVE, STE 1220
ORLANDO FL 32801

CREDITOR ID: 403230-AZ
APPRAISERS ASSOCIATED LTD
C/O HELD & ISRAEL
ATTN: EDWIN W HELD JR, ESQ
1301 RIVERPLACE BLVD, STE 1916
JACKSONVILLE FL 32207

CREDITOR ID: 547875-AZ
BAKER & HOSTETLER
ATTN RICHARD A ROBINSON, ESQ
SUN TRUST CENTER
200 SOUTH ORANGE AVE
SUITE 2300
ORLANDO FL 32801

CREDITOR ID: 408258-AZ
BELLVIEW SQUARE CORPORATION
C/O TUGGLE DUGGINS & MESCHAN, PA
ATTN PAUL M DENNIS, ESQ.
228 WEST MARKET STREET
PO BOX 2888
GREENSBORO NC 27402-2888

CREDITOR ID: 408258-AZ
BELLVIEW SQUARE CORPORATION
C/O WILCOX LAW FIRM
ATTN: ROBERT D WILCOX, ESQ
ONE DEERWOOD PLACE
10201 CENTURION PKWY N, STE 600
JACKSONVILLE FL 32256

CREDITOR ID: 533760-AZ
BIG LOTS STORES INC
C/O MILAM HOWARD NICANDRI ET AL
ATTN: PETER E NICANDRI, ESQ
14 EAST BAY STREET
JACKSONVILLE FL 32202

CREDITOR ID: 452396-AZ
BI-LO INC
C/O KILPATRICK STOCKTON LLP
ATTN: PAUL M ROSENBLATT, ESQ
1100 PEACHTREE ST, STE 2800
ATLANTA GA 30309

CREDITOR ID: 416998-AZ
BLACKWELL SANDERS ET AL
ATTN: JOHN CRUCIANI
4801 MAIN ST, STE 1000
KANSAS CITY MO 64112

CREDITOR ID: 558608-AZ
BORDELON & THERIOT
ATTN REGINA WEDIG
1944 1ST ST
SLIDELL LA 70458-3202

CREDITOR ID: 417013-AZ
BROOKSHIRE GROCERY COMPANY
C/O BAKER BOTTS LLP
ATTN: J. PRINCE & C. MCDOWELL, ESQS
2001 ROSS AVENUE
DALLAS TX 75201-2980

CREDITOR ID: 403193-AZ
BUFFALO ROCK COMPANY
C/O GRONEK & LATHAM LLP
ATTN: R SCOTT SHUKER/JIMMY PARRISH
390 N ORANGE AVE, STE 600
PO BOX 3353 (32802)
ORLANDO FL 32801

CREDITOR ID: 407762-AZ
BURLINGTON ASSOCIATES LP
C/O ROSEN LAW GROUP LLC
ATTN: MITCHELL S ROSEN
ATLANTA PLAZA, STE 3250
950 E PACES FERRY RD
ATLANTA GA 30326

CREDITOR ID: 452408-AZ
CAPMARK SERVICES INC AGENT OF
SWISS RE ASSET MNGT AMER INC
C/O DUANE MORRIS LLP
ATTN: M REED & W SIMKULAK, ESQS
20 SOUTH 17TH STREET
PHILADELPHIA PA 19103-4196

CREDITOR ID: 452415-AZ
CARDINAL ENTITIES COMPANY AKA
CARDINAL TRI MANAGEMENT LLC
C/O STUTSMAN & THAMES PA
ATTN: BRADLEY R MARKEY
121 W FORSYTH ST, STE 600
JACKSONVILLE FL 32202

CREDITOR ID: 558358-AZ
CATAMOUNT ATLANTA, LLC, ASSIGNEE
OF HELENE FUNK & PETER W MERNER
C/O KRIEG DEVAULT LLP
ATTN C DANIEL MOTSINGER, ESQ
ONE INDIANA SQUARE, SUITE 2800
INDIANAPOLIS IN 46204-2079

CREDITOR ID: 558358-AZ
CATAMOUNT ATLANTA, LLC, ASSIGNEE
C/O HELD & ISRAEL
ATTN EDWIN W HELD JR, ESQ
1301 RIVERPLACE BLVD, STE 1916
JACKSONVILLE FL 32207

CREDITOR ID: 279320-AZ
CERTIFIED FOODS CORP
C/O MUNSCH HARDT KOPF & HARR, PC
ATTN RANDALL A RIOS, ESQ
700 LOUISIANA ST, STE 4600
HOUSTON TX 77002-2732

CREDITOR ID: 403192-AZ
CITRUS WORLD INC DBA FLORIDA'S NATU
C/O GRONEK & LATHAM LLP
ATTN: R SCOTT SHUKER/JIMMY PARRISH
390 N ORANGE AVE, STE 600
PO BOX 3353 (32802)
ORLANDO FL 32801

CREDITOR ID: 403539-AZ
COCA-COLA COMPANY, THE
C/O HOLLAND & KNIGHT LLP
ATTN: ALAN M WEISS, ESQ
15 N LAURA ST, STE 3900
JACKSONVILLE FL 32202

CREDITOR ID: 406045-AZ
COLE FINE FOODS
C/O BROAD AND CASSEL
ATTN: ROY S KOBERT
390 NORTH ORANGE AVE, STE 1100
PO BOX 4961 (32802-4961)
ORLANDO FL 32801

CREDITOR ID: 403201-AZ
CONCORD-FUND IV RETAIL LP
C/O HELD & ISRAEL
ATTN EDWIN W HELD JR, ESQ
1301 RIVERPLACE BLVD, STE 1916
JACKONVILLE FL 32207

CREDITOR ID: 452444-AZ
CONCORD-FUND IV RETAIL LP
C/O TEW CARDENAS LLP
ATTN: THOMAS R LEHMAN
FOUR SEASONS TOWER, 15TH FL
1441 BRICKELL AVENUE
MIAMI FL 33131-3407

CREDITOR ID: 403226-AZ
CONECUH SAUSAGE CO INC
C/O HELD & ISRAEL
ATTN: EDWIN W HELD JR, ESQ
1301 RIVERPLACE BLVD, STE 1916
JACKSONVILLE FL 32207

CREDITOR ID: 405970-AZ
CONSOLIDATED BISCUIT CO
C/O EASTMAN & SMITH LTD
ATTN: KENNETH C BAKER
PO BOX 10032
TOLEDO OH 43699-0032

Reorganized Debtor's Motion for an Order in Aid of Making a Final Distribution Under
Confirmed Reorganized Plan [D.I. Nos. 23098 and 23099]

**DEBTOR:   WINN-DIXIE STORES, INC., ET AL.**                              **CASE:   05-03817-3F1 (JAF)**

| | | |
|---|---|---|
| CREDITOR ID: 408155-AZ<br>COUNTY OF DEKALB, LAW DEPT<br>ATTN MARK THOMPSON, ASST CO. ATTY<br>THE MALOOF CENTER, 5TH FLOOR<br>1300 COMMERCE DRIVE<br>DECATUR GA 30030 | CREDITOR ID: 558254-07<br>DAY PROPERTIES LLC<br>119 SANDWEDGE ROAD<br>WILKESBORO NC 28697 | CREDITOR ID: 2180-AZ<br>DAY PROPERTIES LLC<br>C/O MCELWEE FIRM PLLC<br>ATTN ROBERT P LANEY, ESQ<br>906 MAIN STREET<br>NORTH WILKESBORO NC 28659 |
| CREDITOR ID: 279014-AZ<br>DISCOVER FINANCIAL SERVICES INC<br>HOGAN & HARTSON LLP<br>ATTN IRA S GREEN ESQ<br>875 THIRD AVE<br>NEW YORK NY 10022 | CREDITOR ID: 399413-AZ<br>DOMINO FOODS INC<br>C/O BLANCO TACKLABERY ET AL<br>ATTN: GENE B TARR, ESQ<br>PO DRAWER 25008<br>WINSTON-SALEM NC 27114-5008 | CREDITOR ID: 403206-AZ<br>ELSTON/LEETSDALE LLC<br>C/O HELD & ISRAEL<br>ATTN EDWIN W HELD JR, ESQ<br>1301 RIVERPLACE BLVD, STE 1916<br>JACKSONVILLE FL 32207 |
| CREDITOR ID: 403203-AZ<br>FLAGLER RETAIL ASSOCIATES LTD<br>C/O HELD & ISRAEL<br>ATTN EDWIN W HELD JR, ESQ<br>1301 RIVERPLACE BLVD, STE 1916<br>JACKSONVILLE FL 32207 | CREDITOR ID: 410751-AZ<br>FRANKINO & FRANKINO CHARITABLE FDN<br>C/O SQUIRE SANDERS & DEMPSEY LLP<br>ATTN JOSEPH C WEINSTEIN, ESQ<br>4900 KEY TOWER<br>127 PUBLIC SQUARE<br>CLEVELAND OH 44114-1304 | CREDITOR ID: 417020-AZ<br>FRIEDLINE & MCCONNELL PA<br>ATTN: R.FRIEDLINE & J.MCCONNELL<br>1756 UNIVERSITY BLVD S<br>JACKSONVILLE FL 32216 |
| CREDITOR ID: 410719-AZ<br>GATOR CARRIAGE PARTNERS, LTD<br>C/O FROST BROWN TODD LLC<br>ATTN: KYLE R GRUBBS, ESQ<br>2200 PNC CENTER<br>201 EAST FIFTH STREET<br>CINCINNATI OH 45202 | CREDITOR ID: 403199-AZ<br>GEHR FLORIDA DEVELOPMENT LLC<br>C/O HELD & ISRAEL<br>ATTN E W HELD JR/A FRISCH, ESQS<br>1301 RIVERPLACE BLVD, STE 1916<br>JACKSONVILLE FL 32207 | CREDITOR ID: 558409-W9<br>GEHR FLORIDA DEVELOPMENT LLC<br>ATTN: NORBERT GEHR<br>7400 EAST SLAUSON AVE<br>COMMERCE CA 90040 |
| CREDITOR ID: 405927-AZ<br>GOODING'S SUPERMARKETS, INC<br>C/O LOWNDES DROSDICK ET AL<br>ATTN MATT E BEAL, ESQ<br>215 NORTH EOLA DRIVE<br>PO BOX 2809<br>ORLANDO FL 32802-2809 | CREDITOR ID: 558599-AZ<br>GUNSTER YOAKLEY & STEWART<br>ATTN CHRISTIAN A PETERSEN, ESQ<br>500 E BROWARD BLVD STE 1400<br>FORT LAUDERDALE FL 33394-3024 | CREDITOR ID: 403191-AZ<br>GUSTAFSON'S LLC<br>C/O GRONEK & LATHAM LLP<br>ATTN: R SCOTT SHUKER/JIMMY PARRISH<br>390 N ORANGE AVE, STE 600<br>PO BOX 3353 (32802)<br>ORLANDO FL 32801 |
| CREDITOR ID: 558601-AZ<br>HAUTAU, HERMAN & MARGIE<br>C/O GREGORY K CREWS, ESQ<br>300 WEST ADAMS ST, STE 200<br>JACKSONVILLE FL 32202-4340 | CREDITOR ID: 552764-AZ<br>HILLANDALE FARMS<br>PO BOX 2109<br>LAKE CITY FL 32056-2109 | CREDITOR ID: 452460-AZ<br>HMAC 1999-PH1 WATAUGA CTR LTD PART<br>C/O HELLER EHRMAN LLP<br>ATTN: RUSSELL REID<br>TIMES SQUARE TOWER<br>SEVEN TIMES SQUARE<br>NEW YORK NY 10036 |
| CREDITOR ID: 558600-AZ<br>HOGAN & HARTSON<br>ATTN DENA COPULSKY KAUFMAN<br>875 THIRD AVENUE<br>NEW YORK NY 10022-6225 | CREDITOR ID: 417024-AZ<br>IBM CORP<br>C/O ARNSTEIN & LEHR LLP<br>ATTN: RONALD J MARLOWE, ESQ<br>1110 N FLORIDA AVE<br>TAMPA FL 33602 | CREDITOR ID: 279098-AZ<br>JENNIS & BOWEN PL<br>ATTN:  DAVID S. JENNIS<br>400 N ASHLEY DRIVE, STE 2540<br>TAMPA FL 33602 |
| CREDITOR ID: 406044-AZ<br>KITE REALTY GROUPT TRUST<br>C/O BROAD AND CASSEL<br>ATTN: ROY S KOBERT<br>390 NORTH ORANGE AVE, STE 1100<br>PO BOX 496 (32802-4961)<br>ORLANDO FL 32801 | CREDITOR ID: 452403-AZ<br>LASSITER PROPERTIES INC<br>C/O GRONEK & LATHAM LLP<br>ATTN: SCOTT SHUKER<br>390 N ORANGE AVE, STE 600<br>ORLANDO FL 32801 | CREDITOR ID: 452403-AZ<br>LASSITER PROPERTIES INC<br>C/O CHAMBERLAIN HRDLICKA ET AL<br>ATTN: J PAUL & J REZAC, ESQS<br>191 PEACHTREE ST, NE, 9TH FL<br>ATLANTA GA 30303 |
| CREDITOR ID: 416845-AZ<br>LASSITER PROPERTIES, INC<br>C/O CHAMBERLAIN HRDLICKA ET AL<br>ATTN JAMES L PAUL, ESQ<br>191 PEACHTREE STREET, NINTH FLOOR<br>ATLANTA GA 30303 | CREDITOR ID: 407764-AZ<br>LENOIR PARTNERS LLC<br>C/O ROSEN LAW GROUP LLC<br>ATTN MITCHELL S ROSEN, ESQ<br>ATLANTA PLAZA, STE 3250<br>950 E PACES FERRY RD<br>ATLANTA GA 30326 | CREDITOR ID: 403329-AZ<br>LHC GROUP<br>ATTN: THOMAS L. BURLEIGH<br>420 W. PINHOOK<br>LAFAYETTE LA 70503 |
| CREDITOR ID: 403387-AZ<br>LIBERTY MUTUAL INSURANCE COMPANY<br>C/O HEDRICK DEWBERRY ET AL<br>ATTN: JEFFREY C REGAN<br>50 NORTH LAURA ST, STE 1600<br>JACKSONVILLE FL 32202 | CREDITOR ID: 403247-AZ<br>LONG WHOLESALE INC DBA CCC BEAUTY<br>C/O HELD & ISRAEL<br>ATTN: EDWIN W HELD JR, ESQ<br>1301 RIVERPLACE BLVD, STE 1916<br>JACKSONVILLE FL 32207 | CREDITOR ID: 558604-AZ<br>MANDARIN LORETTO DEVELOPMENT<br>C/O JOHN MCCORVEY JR<br>4595 LEXINGTON AVE, STE 100<br>JACKSONVILLE FL 32210-2058 |

Reorganized Debtor's Motion for an Order in Aid of Making a Final Distribution Under
Confirmed Reorganized Plan [D.I. Nos. 23098 and 23099]

**DEBTOR:  WINN-DIXIE STORES, INC., ET AL.**                                      **CASE:  05-03817-3F1 (JAF)**

CREDITOR ID: 558605-AZ
MARSHALL G REISSMAN, ESQ
5150 CENTRAL AVE
ST PETERSBURG FL 33707-1833

CREDITOR ID: 403224-AZ
MERIDIAN COCA-COLA BOTTLING CO
C/O HELD & ISRAEL
ATTN EDWIN W HELD JR, ESQ
1301 RIVERPLACE BLVD, STE 1916
JACKSONVILLE FL 32207

CREDITOR ID: 558606-AZ
METRO-GOLDWYN-MAYER HOME
C/O HOLLAND & KNIGHT LLP
ATTN ALAN M WEISS ESQ
50 NORTH LAURA ST, STE 3900
JACKSONVILLE FL 32202-9024

CREDITOR ID: 558611-AZ
MONTGOMERY WAREHOUSE LLC
C/O BAKER & HOSTETLER LLP
ATTN ERIC S GOLDEN ESQ
200 SOUTH ORANGE AVE
SUN TRUST CENTER, STE 2300
ORLANDO FL 32801-3410

CREDITOR ID: 403227-AZ
MOSBY'S PACKING COMPANY INC
C/O HELD & ISRAEL
ATTN: EDWIN W HELD JR, ESQ
1301 RIVERPLACE BLVD, STE 1916
JACKSONVILLE FL 32207

CREDITOR ID: 405893-AZ
NCR CORPORATION
C/O HANGLEY ARONCHICK ET AL
ATTN: ASHLEY M CHAN, ESQ
ONE LOGAN SQUARE, 27TH FL
PHILADELPHIA PA 19103

CREDITOR ID: 403541-AZ
NORTH HIXON MARKETPLACE LLC
C/O WILES & WILES
ATTN: JOHN J WILES, ESQ
800 KENNESAW AVE, STE 400
MARIETTA GA 30060-7946

CREDITOR ID: 403222-AZ
NORTHEAST MS COCA-COLA BOTTLING CO
C/O HELD & ISRAEL
ATTN: EDWIN W HELD JR, ESQ
1301 RIVERPLACE BLVD, STE 1916
JACKSONVILLE FL 32207

CREDITOR ID: 407761-AZ
OAKWOOD VILLAGE ASSOCIATES
C/O ROSEN LAW GROUP LLC
ATTN: MITCHELL S ROSEN, ESQ
ATLANTA PLAZA, STE 3250
950 E PACES FERRYRD
ATLANTA GA 30326

CREDITOR ID: 534926-AZ
ORACLE USA, INC
C/O BUCHALTER NEMER
ATTN SHAWN CHRISTIANSON, ESQ
333 MARKET STREET, 25TH FL
SAN FRANCISCO CA 94105-2126

CREDITOR ID: 558598-AZ
ORANGE COUNTY PROPERTY APPRAISER
ATTN:  BILL DONEGAN
C/O KEN HAZOURI, ESQ & BART VALDES, ESQ
332 N MAGNOLIA AVE
ORLANDO FL 32801-1609

CREDITOR ID: 558607-AZ
OSBORN BARKER, LEVY COUNTY APPRAISER
C/O THOMAS FINDLEY
MESSER, CAPARELLO & SELF PA
PO BOX 15579
TALLAHASSEE FL 32317-5579

CREDITOR ID: 405969-AZ
PFZIER INC
C/O BORGESS & ASSOCIATES LLC
ATTN: WANDA BORGESS, ESQ
575 UNDERHILL BLVD, STE 110
SYOSSET NY 11791

CREDITOR ID: 407763-AZ
POTTER SQUARE ASSOCIATES
C/O ROSEN LAW GROUP LLC
ATTN MITCHELL S ROSEN, ESQ
ATLANTA PLAZA, STE 3250
950 E PACES FERRY RD
ATLANTA GA 30326

CREDITOR ID: 452409-AZ
PRINCIPAL LIFE INSUR CO FKA
PRINCIPAL MUTUAL LIFE INSUR CO
C/O DUANE MORRIS LLP
ATTN: M REED & W SIMKULAK, ESQS
30 SOUTH 17TH STREET
PHILADELPHIA PA 19103-4196

CREDITOR ID: 533756-AZ
PROGRESS ENERGY CAROLINAS INC
C/O UNTI & LUMSDEN LLP
ATTN: MARGARET C LUMSDEN
302 JEFFERSON ST, STE 200
RALEIGH NC 27605

CREDITOR ID: 411105-AZ
QUAKER SALES & DISTRIBUTION, INC
C/O DLA PIPER RUDNICK ET AL
ATTN B M NEFF/B A AUDETTE, ESQS
203 N LASALLE STREET, SUITE 1900
CHICAGO IL 60601-1293

CREDITOR ID: 411105-AZ
QUAKER SALES & DISTRIBUTION, INC
C/O DLA PIPER US LLP
ATTN PHILIP V MARTINO
101 EAST KENNEDY BLVD
SUITE 2000
TAMPA FL 33602

CREDITOR ID: 558603-AZ
SHOOK HARDY & BACON LLP
ATTN KRISTEN TRAINOR
2555 GRAND BLVD
KANSAS CITY MO 64108-2613

CREDITOR ID: 403194-AZ
SOUTHEAST MILK INC
C/O GRONEK & LATHAM LLP
ATTN: R SCOTT SHUKER/JIMMY PARRISH
390 N ORANGE AVE, STE 600
PO BOX 3353 (32802)
ORLANDO FL 32801

CREDITOR ID: 403465-AZ
SOUTHEAST-ATLANTIC BEVERAGE CORP
C/O NELSON MULLINS RILEY ET AL
ATTN: GEORGE B CAUTHEN
1320 MAIN STREET
PO BOX 11070 (29211)
COLUMBIA SC 29201

CREDITOR ID: 452398-AZ
SOUTHERN FAMILY MARKETS ACQUISITION
C/O KILPATRICK STOCKTON LLP
ATTN: PAUL M ROSENBLATT, ESQ
1100 PEACHTREE ST, STE 2800
ATLANTA GA 30309

CREDITOR ID: 408257-AZ
SPRINGS CORNERS, LLC
C/O YOUNG MORPHIS  ETAL
ATTN: JIMMY R SUMMERLIN, JR
PO DRAWER 2428
HICKORY NC 28603

CREDITOR ID: 558610-AZ
STEFFES VINGIELLO & MCKENZIE LLC
ATTN WILLIAM E STEFFES
13702 COURSEY BLVD, BLDG 3
BATON ROUGE LA 70817-1370

CREDITOR ID: 403207-AZ
TA CRESTHAVEN LLC
C/O HELD & ISRAEL
ATTN EDWIN W HELD JR, ESQ
1301 RIVERPLACE BLVD, STE 1916
JACKSONVILLE FL 32207

CREDITOR ID: 403200-AZ
TA/WESTERN LLC
C/O HELD & ISRAEL
ATTN A FRISCH/E W HELD JR, ESQS
1301 RIVERPLACE BLVD, STE 1916
JACKSONVILLE FL 32207

CREDITOR ID: 558609-AZ
THE FRICKS FIRM PC
ATTN ROBERT ABNEY FRICKS
ATTORNEY FOR RETREAT VILLAGE MGMT
239-B SMITHVILLE CHURCH RD
WARNER ROBINS GA 31088-6486

CREDITOR ID: 405890-AZ
VICTORY REAL ESTATE INVESTMENTS INC
C/O SLOTT BARKER & NUSSBAUM
ATTN: EARL M BARKER, JR
334 EAST DUVAL STREET
JACKSONVILLE FL 32202

CREDITOR ID: 558602-AZ
WILKINSON, KEN
LEE COUNTY PROPERTY APPRAISER
C/O LOREN E LEVY
1828 RIGGINS LN
TALLAHASSEE FL 32308-4885

EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re                                    )              Case No. 05-03817-3F1
                                         )
WINN-DIXIE STORES, INC., et al.,         )              *Chapter 11*
                                         )
    Reorganized Debtors.[1]              )              Jointly Administered

## NOTICE OF HEARING

TO PARTIES IN INTEREST:

PLEASE TAKE NOTICE that a hearing is scheduled for **April 28, 2010 at 1:30 p.m. (prevailing Eastern Time)**, before the Honorable Jerry A. Funk, United States Bankruptcy Court for the Middle District of Florida, 300 North Hogan Street, Courtroom 4D, Jacksonville, Florida 32202, to consider the Reorganized Debtor's Motion for an Order in Aid of Making a Final Distribution Under Confirmed Reorganization Plan.

Only objections filed with the Court and served on (i) Sally McDonald Henry at sally.henry@skadden.com, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 and (ii) on Cynthia C. Jackson at cjackson@smithhulsey.com, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202 so as to be received by **April 23 at 5:00 p.m. (EST)** will be considered by the Bankruptcy Court at the hearing.

---

[1]       In addition to Winn-Dixie Stores, Inc., the following entities are reorganized debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc.  With the exception of Winn-Dixie Stores, Inc., the related cases of these reorganized debtors were closed on March 22, 2007.

You are reminded that Local Rule 5072(b)(16) requires that all persons appearing in Court should dress in appropriate business attire consistent with their financial abilities. Among other things, a coat and tie are appropriate for a man; a dress or pants suit is appropriate for a woman.

You are further reminded that pursuant to Local Rule 5073-1 cellular telephones are prohibited in the Courthouse as are computers, absent a specific order by the Court authorizing the use of a computer.  Please take notice that as an additional security measure a photo ID is required for entry into the Courthouse.

Dated:  April 13, 2010

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By:   /s/ Sally McDonald Henry               By:   /s/ Cynthia C. Jackson
     Sally McDonald Henry                        Stephen D. Busey
     Max S. Polonsky                             James H. Post
                                                Cynthia C. Jackson

Four Times Square                          Florida Bar Number 498882
New York, New York 10036                   225 Water Street, Suite 1800
(212) 735-3000                             (904) 359-7700
(212) 735-2000 (facsimile)                 (904) 359-7708 (facsimile)
sally.henry@skadden.com                    cjackson@smithhulsey.com

Co-Counsel for Reorganized Debtors         Co-Counsel for Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Reorganized Debtors.[1] | ) | Jointly Administered |

**REORGANIZED DEBTOR'S MOTION FOR AN ORDER IN AID OF MAKING
A FINAL DISTRIBUTION UNDER CONFIRMED REORGANIZATION PLAN**

Winn-Dixie Stores, Inc. ("Winn-Dixie") moves the Court (this "Motion"), under

§§ 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule

3020(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of

an order in the form attached as Exhibit A, in aid of making a final distribution of new Winn-

Dixie common stock ("New Common Stock") as provided for in Winn-Dixie's confirmed

reorganization plan, dated August 9, 2006 (as modified, the "Plan").[2]

**SUMMARY OF RELIEF REQUESTED**

The Plan provides for shares of New Common Stock to be distributed to

claimants. Under applicable nonbankruptcy law, Winn-Dixie must withhold taxes on

distributions to current or former employees. Recognizing this issue, the Plan requires claimants

---

[1]     In addition to Winn-Dixie Stores, Inc., the following entities are reorganized debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc. With the exception of Winn-Dixie Stores, Inc., the related cases of these reorganized debtors were closed on March 22, 2007.

[2]     The Plan is available on the Court's docket at docket number 10058; the First Modification to the Plan is available on the Court's docket at docket number 11765. Capitalized terms not otherwise defined shall have the meaning set forth in the Plan.

who will owe withholding and similar taxes in connection with the distribution to pay those taxes before receiving any distribution under the Plan. For the most part, these claimants hold claims based on participation in Winn-Dixie's Management Security Plan (the "MSP"), Supplemental Retirement Plan (the "SRP"), and Long-Term Incentive Plans (together with any other employee claimants and their beneficiaries, the "Employee Claimants"), and they overwhelmingly voted in favor of the Plan. The Plan, however, does not explicitly set procedures or deadlines for Employee Claimants to pay those taxes.

Winn-Dixie has now resolved virtually all of its outstanding claims and is ready to make a final distribution in mid-June of this year. Winn-Dixie has developed straightforward procedures to collect these taxes, but in order to carry-out its final distribution, Winn-Dixie needs to set deadlines (the "Winddown Deadlines"):

- May 26, 2010 will be the deadline for Employee Claimants to pay estimated taxes (the "Initial Deadline") in order to receive their distribution with other holders of Allowed Claims on or about the mid-June Distribution Date (as defined in the Plan).[3] Winn-Dixie plans to give Employee Claimants at least two weeks from the date Winn-Dixie has sent the notice specifying the estimated tax due until the Initial Deadline.

- May 31, 2011 as the Final Deadline. On or about this date, and to the extent that Winn-Dixie has not exercised the Net Distribution option described herein, any shares that have not been delivered to the Employee Claimants will revert to the Common Stock Reserve to be distributed in accordance with the Plan.[4]

---

[3] Because the tax liability is based on the value of the New Common Stock on the distribution date, but Winn-Dixie must receive payment before issuing the shares, Winn-Dixie will estimate the amount expected to be due. Once the distribution is made and the actual tax liability is known, Winn-Dixie will send those Employee Claimants who paid their estimated tax liability either (i) a check for any overpayment, or (ii) a bill for any underpayment, as the case may be.

[4] Winn-Dixie proposes that it would have the option, if Employee Claimants do not pay their taxes, to cause the distribution of the shares to an Employee Claimant, less the number of shares equal in value to the tax, with the tax calculated by Winn-Dixie based on the New Common Stock's value as of approximately the date of the Net Distribution. This net distribution could occur any time after the Initial Deadline. Although Winn-Dixie believes such a net distribution (the "Net Distribution") would be permitted under the broad authority it is granted in the Plan (see Plan, §§ 6.17(h) and 8.9), it has not done so to date because tax obligations must be satisfied in cash by Winn-Dixie and such a Net Distribution results in the use of Winn-Dixie's cash. Although the Net Distribution is the most

*(cont'd)*

## JURISDICTION

1.          The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Court also

retained jurisdiction to hear this matter pursuant to paragraph 63 of the Order Confirming Joint

Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors, entered on November

9, 2006 (the "Confirmation Order") (Dkt. No. 12440).

2.          Venue is proper pursuant to 28 U.S.C. § 1409.

3.          The statutory bases for the relief requested herein are sections 105(a) and 1142(b)

of the Bankruptcy Code and Bankruptcy Rule 3020(d).

## BACKGROUND

4.          On February 21, 2005 (the "Petition Date"), Winn-Dixie and twenty-three of its

affiliates and subsidiaries filed voluntary petitions for reorganization relief under chapter 11 of

the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New

York (the "New York Court").  By order dated April 13, 2005, the New York Court transferred

venue of the cases to this Court.

5.          On August 9, 2006, Winn-Dixie filed the Plan.  On November 9, 2006, the Court

entered the Confirmation Order.  The Plan became effective on November 21, 2006 (the

"Effective Date").

---

*(cont'd from previous page)*

advantageous way to complete the distribution under the Plan, certain contractual consents may need to be obtained
by Winn-Dixie to proceed in this manner.  Thus, Winn-Dixie needs the option to proceed with either the reversion or
the Net Distribution method, but will have to determine whether this Net Distribution option is advisable and/or
possible as the distribution of the shares goes forward.

6.      The Plan provides for distributions of New Common Stock[5] to holders of five classes of Allowed Unsecured Claims.  Plan, § 4.3, at 17-20.  These classes include Noteholder Claims (Class 12), Landlord Claims (Class 13), Vendor/Supplier Claims (Class 14), Retirement Plan Claims (Class 15), and Other Unsecured Claims (Class 16).  *Id.*  Participants in Winn-Dixie's MSP and SRP (or a participant's beneficiaries) make up the holders of the Retirement Plan Claims.  *See* Plan, § 1.82, at 9.  The remaining Employee Claimants hold some of the Other Unsecured Claims.

7.      The Plan further provides that

Reorganized Winn-Dixie shall (i) authorize on the Effective Date 400,000,000 shares of New Common Stock; issue on the initial Distribution Date (x) up to an aggregate of 50,000,000 shares of New Common Stock for distribution to holders of Allowed Unsecured Claims and (y) such additional number of shares of New Common Stock as is necessary to establish the Common Stock Reserve for Disputed Unsecured Claims, and (ii) reserve for issuance the number of shares of New Common Stock necessary (excluding shares that may be issuable as a result of the antidilution provisions thereof) to satisfy the required distributions of shares and options to be granted under the New Equity Incentive Plan.

*Id.*, § 6.5(a), at 23.

8.      Winn-Dixie made its initial distribution of New Common Stock beginning in December 2006.  To date, it has distributed an aggregate of 47,130,241 shares, of which it distributed more than 3.2 million to Employee Claimants, and the Disbursing Agent/Trustee holds about 6.8 million shares in reserve (the "Common Stock Reserve").  The Disbursing Agent also holds 105,019 shares on account of Allowed Claims that were not distributed earlier because, among other reasons, the claims relating to those shares were only very recently allowed.  Winn-Dixie maintained the Common Stock Reserve because the face amount of the claims then-

---

[5]      Of course, shares are distributed electronically under the direct registration system.

4

pending, hundreds of millions of dollars, required that number of shares be held in reserve.

Specifically, Winn-Dixie could not make any subsequent distribution while Visagent

Corporation's claim was pending because it needed to hold enough shares of New Common

Stock in the Common Stock Reserve to satisfy that claim.  Additionally, at the time of the initial

distribution, there were several unliquidated personal injury claims with a very high face amount

and Winn-Dixie needed to hold enough shares of New Common Stock in the Common Stock

Reserve to cover those claims as well.

9.     Virtually all claims entitled to a New Common Stock distribution have now been

resolved, the amount of shares of New Common Stock due to the Employee Claimants and all

other holders of Allowed Claims is known, and approximately 480,000 shares will be distributed

to Employee Claimants.  Thus, there is no longer any need to maintain the Common Stock

Reserve and Winn-Dixie can make its final distribution.  *See* Plan, § 9.3(b), at 36 (providing for

subsequent distributions).  Winn-Dixie expects to begin its final distribution in mid-June.

10.     In order to permit Employee Claimants to receive their shares on the date of the

final distribution, however, Winn-Dixie needs to set a deadline for Employee Claimants to pay

their taxes.  The Plan provides that paying taxes is a prerequisite to receiving a distribution.  It

provides:

> each holder of an Allowed Claim that is to receive a distribution pursuant to the
> Plan shall have sole and exclusive responsibility for the satisfaction and payment
> of any tax obligations imposed by any governmental unit, including income,
> withholding, and other tax obligations, on account of such distribution, and
> including, in the case of any holder of a Disputed Unsecured Claim that has
> become an Allowed Unsecured Claim, any tax obligation that would be imposed
> upon the Common Stock Reserve in connection with such distribution.

Plan, § 8.9, at 33 (emphasis added).  Section 8.9 further provides that

> no distribution shall be made to or on behalf of such holder pursuant to the Plan
> unless and until such holder has made arrangements satisfactory to the Disbursing
> Agent for the payment and satisfaction of such withholding tax obligations or
> such tax obligation that would be imposed upon the Common Stock Reserve in
> connection with such distribution.

*Id.* (emphasis added).  The Plan does not, however, set deadlines for when Employee Claimants

must pay the taxes owed except to provide that arrangements must be made for payment before

the distribution.

11.    The Plan gives Winn-Dixie the authority to "take such other actions that may be

necessary or appropriate to effectuate the Plan."[6]  Plan, § 6.17(h), at 27.  Even with this broad

authority, however, the Plan, is silent as to *when* Winn-Dixie must collect these taxes and it will

be beneficial to the transparency of the process for this Court to set deadlines on notice.

---

[6]    Winn-Dixie used a different distribution mechanism when it made its initial 2006-2007 distribution to
Employee Claimants, which allowed them to pay their taxes while simultaneously giving them the ability to trade
their shares of New Common Stock.  Winn-Dixie is not using this same mechanism now because the tax liability
should be manageable for most Employee Claimants.  Specifically, (i) this distribution is about 13% of the initial
one, (ii) Employee Claimants received shares in the initial distribution worth considerably more than taxes payable
now, and (iii) unlike the initial distribution, these shares are now liquid and can easily be sold at any time on
NASDAQ.  Moreover, there is no requirement in the Plan to provide the cumbersome and expensive method used in
the first distribution.  For these reasons, Winn-Dixie has concluded that the burdens of repeating the mechanism
used for the initial distribution far outweigh any benefits.

**RELIEF REQUESTED**

12.     Winn-Dixie respectfully requests that the Court approve Winddown Deadlines as follows:

- <u>May 26, 2010 as the Initial Deadline</u>.  Employee Claimants must pay taxes by this date in order to receive the initial mid-June distribution of New Common Stock.

- <u>May 31, 2011 as the Final Deadline</u>.  On or about this date, and to the extent that Winn-Dixie has not exercised the Net Distribution option described herein, any shares that have not been delivered to the Employee Claimants will revert to the Common Stock Reserve[7] to be distributed in accordance with the Plan.[8]

**Notice and Distribution Procedures for the Winddown Deadlines**

13.     <u>Initial Deadline</u>.  In connection with the Initial Deadline, Winn-Dixie will use the following procedures:

(i)     *Estimated Tax Notice*.  Winn-Dixie's noticing agent will, on or about May 6, 2010, send a personalized notice (the "Estimated Tax Notice"), to each Employee Claimant eligible to participate in the final distribution.[9]  The Estimated Tax Notice will specify the Employee Claimant's estimated tax liability (the "Estimated Tax").  The Estimated Tax Notice will specify that a personal, certified or bank check, drawn on a U.S. bank for the Estimated Tax, must be received no later than Wednesday, May 26, 2010. Employee Claimants will also be required to agree to pay any deficiency between the Estimated Tax and the Actual Tax (as defined below).

---

[7]     Plan § 8.7 provides that shares that are unclaimed as of the second anniversary of the Effective Date will be transferred to the Common Stock Reserve:

> All claims for undeliverable distributions must be made on or before the second (2nd) anniversary of the Effective date, after which date all unclaimed property shall revert to the Reorganized Debtors . . . *provided, however*, that if any such unclaimed property is in the form of New Common Stock, such New Common Stock shall be transferred to the Common Stock Reserve for redistribution among holders of Unsecured Claims in accordance with the terms of the Plan.

Plan, § 8.7, at 33.  However, because the Effective Date was November 21, 2006, that date has obviously passed and for that reason a new date needs to be set.

[8]     *See* Plan, § 6.17(h), at 27 (authorizing Winn-Dixie to take "such other action as may be necessary or appropriate to effect the Plan."); Plan, § 8.9, at 33 (authorizing the Disbursing Agent to take "any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements.").

[9]     Winn-Dixie will send all notices to Employee Claimants consistent with § 8.7 of the Plan.

(ii)     *Mid-June Distribution*.  Once Winn-Dixie has processed all payments received by May 26, 2010, Winn-Dixie will instruct its Disbursing Agent to make its final distribution to those Employee Claimants that have paid the Estimated Tax in full.

(iii)    *Actual Tax Notice*.  After this distribution, Winn-Dixie's noticing agent will send a second notice to Employee Claimants (the "Actual Tax Notice").  The Actual Tax Notice will specify the amount actually due on account of the New Common Stock (the "Actual Tax"), determined based on the value of the New Common Stock on the distribution date.  The Actual Tax Notice will differ depending on whether Employee Claimants (1) did not pay the Estimated Tax, (2) paid less in Estimated Tax than Actual Tax due, or (3) paid more in Estimated Tax than Actual Tax due.

    (1)     *Claimants that Do Not Pay the Estimated Tax*.  In the case of Employee Claimants who have not paid the Estimated Tax by the Initial Deadline, the Actual Tax Notice will be a bill for their actual tax liability.

    (2)     *Estimated Tax Less Than Actual Tax Due*.  In the event the Estimated Tax paid by the Employee Claimant was less than the Actual Tax, the Actual Tax Notice will be a bill for the difference.

    (3)     *Estimated Tax Greater Than Actual Tax Due*.  In the event the Estimated Tax paid by the Employee Claimant was greater than the Actual Tax, the Actual Tax Notice will include a refund check.

(iv)     *Failure to Meet Initial Deadline*.  If any Employee Claimant does not pay his or her Estimated Taxes, then the Employee Claimant will not receive his or her distribution on the mid-June distribution date.  This provision includes Employee Claimants whose Estimated Tax payments are not received by May 26, 2010, and also includes those Employee Claimants who timely make payment but whose checks are dishonored.  These Employee Claimants will be eligible to participate in subsequent winddown distributions if they pay their taxes or, in the alternative, may receive shares should Winn-Dixie decide to make a Net Distribution.  This Net Distribution can be made at any time after the Initial Deadline, if Winn-Dixie chooses to make a Net Distribution.

14.     Subsequent Distributions.  After the mid-June distribution, Winn-Dixie shall have the authority to make subsequent distributions no less often than once a month for the first six

8

months with respect to Employee Claimants, if any, who have paid their Actual Tax by the end

of the previous month. Thereafter, Winn-Dixie shall have the authority to make subsequent

distributions no less often than quarterly, until the Final Deadline, with respect to Employee

Claimants who have paid their Actual Tax by the end of the second month of the relevant quarter.

Notwithstanding the authority, at any time after the Initial Deadline, Winn-Dixie can choose to

make a Net Distribution.

      15.    <u>Final Deadline</u>. Shortly after the Final Deadline, if any shares have not been

distributed, Winn-Dixie should make its (i) final distribution to any remaining Employee

Claimants promptly after the applicable Actual Tax has been paid, the check has cleared and the

mechanical process of the distribution can be completed; or (ii) make the Net Distribution. After

this date, any remaining shares held in the Common Stock Reserve because an Employee

Claimant has not paid his or her taxes, whether because the Employee Claimant cannot be

located, the Employee Claimant has not received a Net Distribution, or for any other reason, may,

as contemplated by the Plan, remain in the Common Stock Reserve for distribution pursuant to

the terms of the Plan, and will likely revert to Winn-Dixie should that amount be *de minimis*.[10]

---

[10]      There is no problem of leftover or undeliverable shares with respect to shares going to any Claimant other than Employee Claimants, because when the direct registration system statement is issued, the shares are issued irrevocably, and the statement cannot be cancelled even if it is returned as undeliverable. Therefore, those shares would not revert to the Common Stock Reserve and will be treated under applicable nonbankruptcy law. Thus, the only shares that should remain in the Common Stock Reserve will be on account of Employee Claimants that have not paid their taxes if Winn-Dixie has not made a Net Distribution. Winn-Dixie anticipates that this number will be a *de minimis* amount and that the cost of distribution will exceed the value of the remaining shares. Thus, Winn-Dixie anticipates that those shares will indefeasibly revert to Winn-Dixie at that time. *See* Plan, §§ 8.6, 8.7 and 9.3(b), at 32, 33 and 36. However, Winn-Dixie will not know whether these provisions will apply until after it makes a Net Distribution, or, if not, until after the Final Deadline. However, should Winn-Dixie, at its option and in its sole discretion, choose to make the Net Distribution to those Employee Claimants, that would avoid those "leftover shares" remaining in the Common Stock Reserve, and complete the distribution process.

## BASIS FOR RELIEF

16.    Approving the Winddown Deadlines is necessary and appropriate to the consummation of the Plan and the closing of Winn-Dixie's remaining chapter 11 case.

Bankruptcy Code § 1142(b) provides that

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

Bankruptcy Rule 3020(d) similarly gives the Court authority to "issue any other order necessary to administer the estate [other than the confirmation order]."  Finally, Bankruptcy Code § 105(a) gives the Court authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Additionally, courts may clarify a plan when a plan is silent on a matter or otherwise interpret plan provisions to address equitable concerns. *See*, *e.g.*, *In re Airadigm Commc'ns, Inc.*, 547 F.3d 763, 770 (7th Cir. 2008) (granting deference to bankruptcy court's interpretation of a confirmed plan to award the FCC cramdown interest in light of resolved question about FCC licenses, which deemed the FCC a secured creditor) (citing *In re Terex Corp.*, 984 F.2d 170 (6th Cir. 1993)); *Beal Bank, S.S.B. v. Jack's Marine, Inc.*, 201 B.R. 376, 380 (E.D. Pa. 1996) ("However, a bankruptcy court may clarify a plan where it is silent or ambiguous.  Bankruptcy courts can also use this authority to 'interpret' plan provisions to further equitable concerns.") (internal citations omitted); *In re Ampace Corp.*, 279 B.R. 145, 152-53 (Bankr. D. Del. 2002) (same).

17.    Winn-Dixie needs the Winddown Deadlines to make its final distribution under the Plan.  Winn-Dixie expects that the Winddown Deadlines will encourage Employee Claimants to participate in the mid-June distribution.  Winn-Dixie anticipates it will quickly and cost-

effectively comply with applicable nonbankruptcy law, preserving value for the estate, and the Employee Claimants will be better off because they will receive shares that they can immediately trade on NASDAQ sooner rather than later. Additionally, the reasonable number of mailings dedicated to facilitating the process will enable Winn-Dixie to give notice to Employee Claimants while minimizing the administrative costs attendant to any distribution. Lastly, the Final Deadline will give Winn-Dixie the finality it needs to close its remaining chapter 11 case.

18.     Although not facing this precise set of circumstances, other courts approve procedures to facilitate closing cases when the plan consideration is shares of new common stock distributed under a confirmed plan. Three examples are *In re Northwest Airlines Corp.*, No. 05-17930 (ALG) (Bankr. S.D.N.Y.); *In re Northwestern Corp.*, No. 03-12872 (KJC) (Bankr. D. Del.); and *In re Refco, Inc.*, No. 05-60006 (RDD) (Bankr. S.D.N.Y.). All these cases granted relief for administrative convenience and to minimize costs for reorganized debtors.

19.     In *Northwest Airlines*, the reorganized debtors had created a general distribution reserve for new common stock to be held back while the reorganized debtors continued their claims resolution process. The reorganized debtors proposed a reserve amount less than the total amount of all disputed and allowed claims, and the court approved orders establishing sub-reserves for holders of disputed claims that had objected to the amount held in reserve. (Motion, Dkt. No. 8258, at 4). As they resolved claims, the reorganized debtors found the general distribution reserve held enough shares to provide holders of disputed claims the same *pro rata* distribution other creditors would receive; thus, the sub-reserves were no longer necessary. (*Id.*, at 6-7). The court granted the reorganized debtors' request to dissolve the sub-reserves and ordered that the shares held in the sub-reserves be transferred to the general distribution reserve. (Order, Dkt. No. 8317).

20.     In *Northwestern*, the reorganized debtors had not anticipated that the claims resolution process would stretch for over four years, (Motion, Dkt. No. 3787, ¶ 10), and requested that the court determine that the disputed claims reserve was taxable as a grantor trust. (Motion, ¶ 16).  The reorganized debtors sought this because under the tax laws, a company that owns a grantor trust is taxed only on the trust's income, not on any dividends the company pays or capital gains on the company's stock upon stock distributions.  (Motion, ¶ 34).  The court granted the motion.  (Order, Dkt. No. 3816).

21.     In *Refco*, a settlement agreement (incorporated in the confirmed plan) created a structure for distributing estate assets to two groups of creditors.  (Motion, Dkt. No. 6949, ¶¶ 4-5).  Over time, many of those creditors had sold their claims or were otherwise no longer actively participating in the case, and the plan administrator sought to avoid the "time-consuming, expensive and complex process" of having the groups of creditors determine the distribution mechanism for distributing preference recoveries that gave rise to Bankruptcy Code § 502(h) claims.  (Motion, ¶ 9).  The plan administrator instead proposed to simply distribute the amount at issue (approximately $3 million) to one of the two groups of creditors, and had previously given notice that he would seek to do so.  (Motion, ¶ 11).  The court granted the motion.  (Order, Dkt. No. 6961).[11]

---

[11]     By comparison, in *In re UAL Corp.*, No. 02-48191 (ERW) (Bankr. N.D. Ill.), the court denied a claims trader's request to create floating record dates for distributions over the reorganized debtors' objection.  In that case, the reorganized debtors wanted to keep one record date for distributions, because, *inter alia*, having floating record dates would cause undue expense.  Specifically, it would "require the Reorganized Debtors to track post-confirmation transfers of claims *ad infinitum*," and would also shift the risk of a record owner not paying the claims trader to the reorganized debtors.  (Response, Dkt. No. 15157, at 4-5).  The court denied the motion.  (Order, Dkt. No. 15270).

22.     Finally, approving the Winddown Deadlines does not prejudice Employee Claimants.  Although these deadlines were not established in the Plan, the Plan was crystal clear that Employee Claimants must pay taxes before receiving stock under the Plan, and they voted overwhelmingly in favor of the Plan.  In light of the fact that Winn-Dixie cannot continue to search indefinitely, Winn-Dixie has proposed a process fully consistent with the Plan.  Thus, the Final Deadline avoids an inequitable result.

## CONCLUSION

Wherefore, based on all of the foregoing facts and authorities, Winn-Dixie

respectfully requests that the Court enter the order in the form attached as Exhibit A, approving

the Winddown Deadlines, and granting Winn-Dixie such other relief as is just and proper.


Dated:  April 13, 2010.

SKADDEN, ARPS, SLATE, MEAGHER          SMITH HULSEY & BUSEY
& FLOM LLP

By:   _/s/ Sally McDonald Henry_          By:   _/s/ Cynthia C. Jackson_
    Sally McDonald Henry                  Stephen D. Busey
    Max S. Polonsky                       James H. Post
                                          Cynthia C. Jackson

Four Times Square                         Florida Bar Number 498882
New York, New York 10036                  225 Water Street, Suite 1800
(212) 735-3000                            (904) 359-7700
(212) 735-2000 (facsimile)                (904) 359-7708 (facsimile)
sally.henry@skadden.com                   cjackson@smithhulsey.com

Co-Counsel for Reorganized Debtors        Co-Counsel for Reorganized Debtors

14

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 05-03817-3F1 |
| | ) | |
| WINN-DIXIE STORES, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Reorganized Debtors. [1] | ) | Jointly Administered |

**ORDER GRANTING REORGANIZED DEBTOR'S**
**MOTION FOR AN ORDER IN AID OF MAKING A**
**FINAL DISTRIBUTION UNDER CONFIRMED REORGANIZATION PLAN**

This case came before the Court for hearing on April 28, 2010, on the

Reorganized Debtor's Motion for an Order in Aid of Making a Final Distribution Under

Confirmed Reorganization Plan (Docket No. _____) (the "Motion").  Upon the record of the

hearing; and due and adequate notice of the Motion having been provided; and after due

deliberation, and sufficient cause appearing for granting the relief requested in the Motion, and it

appearing that the requested Winddown Deadlines[2] are necessary for the consummation of the

Reorganized Debtors' plan of reorganization within the meaning of 11 U.S.C. 1142(b) and 105(a),

and Bankruptcy Rule 3020(d); it is hereby

**ORDERED** that the Motion is GRANTED; and it is further

---

[1]        In addition to Winn-Dixie Stores, Inc., the following entities are reorganized debtors in these related cases: Astor Products, Inc., Crackin' Good, Inc., Deep South Distributors, Inc., Deep South Products, Inc., Dixie Darling Bakers, Inc., Dixie-Home Stores, Inc., Dixie Packers, Inc., Dixie Spirits, Inc., Dixie Stores, Inc., Economy Wholesale Distributors, Inc., Foodway Stores, Inc., Kwik Chek Supermarkets, Inc., Sunbelt Products, Inc., Sundown Sales, Inc., Superior Food Company, Table Supply Food Stores Co., Inc., WD Brand Prestige Steaks, Inc., Winn-Dixie Handyman, Inc., Winn-Dixie Logistics, Inc., Winn-Dixie Montgomery, Inc., Winn-Dixie Procurement, Inc., Winn-Dixie Raleigh, Inc., and Winn-Dixie Supermarkets, Inc  With the exception of Winn-Dixie Stores, Inc., the related cases of these reorganized debtors were closed on March 22, 2007.

[2]        Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**ORDERED** that May 26, 2010 will be the deadline for Employee Claimants to pay estimated taxes in order to receive the mid-June distribution of Common Stock; and it is further

**ORDERED** that on or about May 31, 2011, any shares that have not previously been delivered in the initial or any subsequent distributions or Net Distributions as provided for in the Motion, will either, at Winn-Dixie's option and in its sole discretion, (i) revert to the Common Stock Reserve subject to the provisions of the Plan or (ii) be distributed to that Employee Claimant less the number of shares equal in value to the appropriate taxes, with the number of shares needed to satisfy such tax calculated by Winn-Dixie; and it is further

**ORDERED** that the Court shall retain jurisdiction to hear any disputes arising under this Order.

Dated this ____ day of April, 2010 in Jacksonville, Florida.


_____
Jerry A. Funk
United States Bankruptcy Judge


Copy to:

Cynthia C. Jackson

[Cynthia C. Jackson is directed to serve a copy of the order on the limited service list and file a proof of service.]

842595-New York Server 2A - MSW