# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 3:05-bk-03817-JAF |
| WINN-DIXIE STORES, INC., et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

### LIBBEY GLASS, INC.'S POST-HEARING MEMORANDUM IN OPPOSITION TO DEBTORS' AMENDED OBJECTION TO CLAIM NO. 1035

Libbey Glass, Inc. ("Libbey Glass") submits this memorandum in opposition to Debtors' Amended Objection to Claim No. 1035 filed by Libbey Glass, Inc. [Docket No. 23006] as follows:

### Factual Background

The facts relevant to this dispute are as follows:

1.      On February 21, 2005 (the "Petition Date"), Winn-Dixie Stores, Inc. and 23 of its affiliates (collectively, "Winn-Dixie") filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code.  The cases are being jointly administered for procedural purposes only.

2.      Winn-Dixie owns and operates a chain of grocery and pharmaceutical retailers located throughout the southeastern United States.

3.      Libbey Glass is the world's largest manufacturer of tableware and supplies retailers with glassware to sell to the general public.  In this case, Libbey Glass sold glassware to Winn-Dixie, which offered the glassware for sale in its stores.

4.      Libbey Glass and Winn-Dixie had a retail program, in which Winn-Dixie purchased glassware for a set price, with amounts due and payable according to specific credit terms.

5.      The parties also had two programs for the sale of glassware, which are referred to in the industry as "continuity programs."  Continuity programs are somewhat unique to the retail glassware industry.  These programs allow the sale of special or seasonal items and allows the retailer to offer the ware without great downside risk.  Specifically, the retailer is billed for each shipment of ware, but is allowed to hold back payment for a significant amount pending the close of the program.  However, certain deductions that are common in the retail industry, such as breakage, merchandising, advertising, are not permitted until the end of the program.  At the conclusion of the program, a reconciliation is performed, payments and credits are deducted from the total amount invoiced and the retailer either has a credit or owes additional payment to Libbey Glass.

6.      Because continuity programs differ from the normal practice in the grocery industry, Libbey Glass has found that participating retailers often mistakenly take unauthorized deductions prior to the conclusion of the program.  This in turn requires Libbey Glass to add the unauthorized deductions back to the total amount owed, which often causes discrepancies between Libbey Glass' records and those of the retailer.

7.      On May 6, 2005, Libby Glass filed Claim No. 1035.  Claim No. 1035 represents amounts owed by the Debtors under the retail program ($19,490.55) and two

continuity programs from 2003 ($63,666.39) and from 2004 ($162,451.36).  The majority of these claims represents chargebacks for unauthorized deductions similar to those described in paragraph 6 above.

8.      On June 27, 2006, Winn-Dixie filed its Omnibus Objection to (A) Reclamation Claims and (B) Unsecured Non-Priority Claims Held by Reclamation Claimants [Docket No. 8784], which simply sought to reduce or eliminate Libbey Glass' $245,608.30 claim based on certain payments made on account of Libbey Glass' reclamation claims.  The objection has remained pending for nearly four years with little or no effort by Winn-Dixie to prosecute the objection.[1]

9.      On August 2, 2006, Winn-Dixie filed its Plan of Reorganization (the "Plan") [Docket No. 10058].  The Plan was confirmed by order dated November 6, 2006 (the "Confirmation Order")[Docket No. 12440].

10.     On March 1, 2010, the Debtors filed an  Amended Objection to the Proof of Claim filed by Libbey Glass (the "Amended Objection") [Docket No. 23006], seeking disallowance of Claim No. 1035 *in toto* "on the grounds of (i) no liability, (ii) disputed claim amount and (iii) the claim is barred under the applicable statute of limitations."  Winn-Dixie argues that because the underlying statute of limitations for bringing an action for breach of contract expired during the pendency of the Chapter 11 case, Libbey Glass was obligated pursuant to 11 U.S.C. § 108(c) to bring an action in state court within 30 days of the confirmation date to liquidate its claim, and its failure to do so renders its claim invalid notwithstanding the pendency of the Objection to Claim No. 1035.

---

[1] Given the size complexity of the Winn-Dixie Case, Winn-Dixie has been permitted to control the scheduling of hearings on objections and other pending motions.

11.    A preliminary hearing on the Amended Objection was held March 31, 2010, at which time the Court considered the statute of limitations issues, reserving ruling until the parties have fully briefed the issues.

## Argument

1.    **Section 502(b) requires that the bankruptcy court determine the value of Libbey Glass' claim as of the Petition Date.**

The contract between Winn-Dixie and Libbey Glass contains no venue or choice of law provisions, and was negotiated, executed and administered, at least on Winn-Dixie's end, in Jacksonville, Florida where the company is headquartered.  The most significant contacts with respect to the contract appear therefore to exist in Florida.

In Florida, an action for breach of contract must be brought within 5 years from the claimed breach. § 95.11(2)(b), Florida Statutes.  According to the account summary attached to Claim No. 1035, the first delinquent invoice was due to be paid to Libbey Glass on or before March 20, 2000, with the last unpaid invoice being due on or before December 26, 2004.

By application of § 95.11(2)(b), Florida Statutes, the statute of limitations for bringing an action on the subject invoices would expire at the earliest on March 20, 2005, and at the latest on December 26, 2009, but for the intervention of Winn-Dixie's Chapter 11 case.  Once the petition was filed, however, Libbey Glass was prohibited by § 362(a) from preceding against the debtor to collect its claims outside the bankruptcy context, which stay remained in effect throughout the Chapter 11 process through confirmation of the Plan.

Once the Plan was confirmed, the automatic stay was dissolved and the property of the estate revested with the debtor free and clear of claims.

In its Amended Objection, Winn-Dixie argues that once the bankruptcy stay was lifted upon entry of the Confirmation Order, Libbey Glass was required to take the additional step of filing an action in state court within 30 days to liquidate its claim, and that its failure to do so in the face of a statute of limitations expiring during the pendency of the Chapter 11 case bars any recovery. Winn-Dixie's argument is premised on §108(c) of the Code, which provides:

> (c)   Except as provided in § 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 if this title, and such period has not expired before the filing of the petition, then such period does not expire until the later of –
>
> (1)  the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2)   30 days after notice of the termination or expiration of the stay under section 362, 922, 1201 or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c).

Support for Winn-Dixie's argument is also drawn from the Pennsylvania bankruptcy court's decision in *C&G Excavating, Inc.*, 217 B.R. 64 (Bankr. E.D. Pa. 1998), involving a similar issue. There, the affected creditor filed a claim against the Chapter 11 debtor for injuries he allegedly received while working as a seaman on a dredge owned by the debtor.

It was conceded by both parties that the bankruptcy court did not have jurisdiction to liquidate the personal injury claim.  During the pendency of the Chapter 11 case, the three year statute of limitations for bringing an action for maritime related actions expired.  The Court held that the claimant's failure to commence an action to liquidate the maritime injury claim within 30 days following confirmation of *C & G Excavating*'s Chapter 11 Plan barred the claim:

> [W]e find that since Rhodes failed to file a complaint within the applicable maritime statute of limitations afforded by 11 U.S.C. § 108(c), Rhodes' cause of action is time barred and C and G's objection to his proof of claim must be sustained.

> *Id.*, 217 B.R. at 66.

To the extent there was an objection to claim pending in *C & G Excavating*, the case was wrongly decided because it fails to take into consideration § 502(b) of the Code, which places the non-delegable duty on the bankruptcy court to resolve pending claims obligations and to determine the allowance of such claims *as of the Petition Date*:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, ***shall*** determine the amount of such claim in lawful currency of the United States ***as of the date of the filing of the petition*** . . .

> 11 U.S.C. § 502(b) (emphasis added).[2]

---

[2] There is no ambiguity in § 502(b).  The Court is required therefore to interpret the statute as written. *Calzadilla v. Banco Latino Int'l.*, 413 F.3d 1285, 1287 (11th Cir. 2005) ("The starting point in statutory construction is the language of the statute, and if that is plain, then the sole function of the court is to enforce the statute according to its terms").

*See also In re Roberts*, 417 B.R. 14, 16 (Bankr. N.D. Ohio 2009) ("If, as here, an objection to a proof of claim is made, paragraph (b) of § 502 directs that a court is to determine the amount of the claim as of the date the petition was filed").

It is without question in this case that the statute of limitations had not expired on any of Libbey Glass' claims *as of the Petition Date.* By virtue of the plain reading of § 502(b), the Court is statutorily obligated to determine the allowance of Libbey Glass' claim as of the Petition Date. Nowhere in § 502(b) - - or any where else in the Bankruptcy Code for that matter - - is this duty ever relinquished or abrogated. And while bankruptcy courts frequently permit disputed claims to be liquidated in other forums, the focal point remains "what was the amount of the claim on the Petition Date?" Otherwise, § 502(b) has no meaning. The subsequent running of the statute of limitations should not therefore have any bearing on the outcome of this dispute.

Moreover, to the extent there is any perceived conflict between §§ 108(c) and 502(b), the Court is required to interpret the interplay between the statutes in a manner which gives meaning and effect to both statutes:

> The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed Congressional intention to the contrary, to regard each as effective.
>
> *Morton v. Mancari,* 417 U.S. 535, 551, 94 S. Ct. 2474 (1974).

*See also In re Mirant Corp.*, 378 F. 3d 511, 517 (5th Cir. 2004) ("[W]hen faced with a conflict between two statutes, courts must attempt to interpret them so as to give effect to both statutes").

If the Court were to accept Winn-Dixie's argument, or follow *C & G Excavating*, it would render the express terms of § 502(b) meaningless without any clear expression of congressional intent to that effect.  Conversely, accepting Libbey Glass' interpretation of the statutes gives meaning and effect to both Code sections.

### 2.    Winn-Dixie's argument renders §§ 524 and 1141 of the Code meaningless.

Not only must a court interpret two statutes in a manner which gives meaning to both, it must also construe a singular statute in a manner which gives meaning and effect to each of its subparts.  *See e.g. United States v. Menasche,* 348 U.S. 528, 538-39, 75 S.Ct. 513 (1955) ("It is our duty 'to give effect, if possible, to every word of a statute'"); and *Gonzalez v. McNary,* 980 F.2d 1418, 1420 (11th Cir. 1993) ("A statute should be construed so that effect is given to all its provisions, so that no part of it will be inoperative or superfluous, void or insignificant").

Winn-Dixie's interpretation of § 108(c) violates this basic tenet of statutory construction because it gives no meaning or effect to the "Except as provided in § 524 of [the Code]" preface to § 108(c).  The reason § 108(c) contains a reference to § 524 should be clear to any experienced bankruptcy practitioner:  § 524 of the Code implements the "fresh start" notion of the Bankruptcy Code and fosters rehabilitation of Chapter 11 debtors by

establishing a "discharge injunction" against the commencement or continuation of any act
to collect a prepetition debt of the debtor.  The statute states:

> (a) A discharge in a case under this title–
>
> (l) voids any judgment at any time obtained, to the
> extent that such judgment is a determination of the personal
> liability of the debtor with respect to any debt discharged
> under section 727, 944, 1141, 1228, or 1328 of this title,
> whether or not discharge of such debt is waived;
>
> (2) operates as an injunction against the
> commencement or continuation of an action, the employment
> of process, or an act, to collect, recover or offset any such
> debt as a personal liability of the debtor, whether or not
> discharge of such debt is waived . . .

11 U.S.C. § 524(a).

The discharge injunction is intended "to give complete effect to the discharge and
eliminate any doubt concerning the effect of a discharge as a total prohibition on debt
collection efforts."  House Report No. 95-595, 95th Cong. 1st Sess. 365-6 (1977); Senate
Report No. 95-989, 95th Cong., 2d Sess. 80 (1978).  The intent of § 524 would be subverted
if prepetition unsecured creditors whose disputed claims fall within the jurisdictional ambit
of the bankruptcy court were permitted or required to initiate additional litigation to
liquidate their claims post-confirmation outside the bankruptcy court simply to avoid the
running of a statute of limitations.

> **3.     Sections § 1141 of the Code, and the express terms
> of the Plan itself, prohibit Libbey Glass from
> initiating post-confirmation litigation to liquidate
> its claim.**

In a Chapter 11 context, § 524 of the Code is implemented through § 1141 of the
Code, which expressly states that, subject to the terms of the Plan, confirmation of the Plan

discharges Winn-Dixie from any claims arising prior to confirmation and revests property of the estate with the debtor *free and clear* of all prepetition claims:

> (a)  Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
>
> (b)  Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
>
> (c)  Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141.

Winn-Dixie's Plan did not vary from the statute, and nearly tracked § 1141 verbatim:

> 6.11 Revesting of Assets; Release of Liens
>
> Except as otherwise provided herein, the property of each Debtor's Estate, together with any property of each Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan, shall revest in the applicable Debtor on the Effective Date. Thereafter, each Reorganized Debtor may operate its business and may use, acquire, and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. As of the Effective Date, all such property of each Reorganized Debtor shall be free and clear of all Liens, Claims, and Interests, except as specifically provided in the Plan or the Confirmation Order.

Plan, ¶ 6.11

The Plan also states that the bankruptcy court will retain exclusive jurisdiction to determine the allowance of claims:

11.1 Scope of Retention of Jurisdiction

Under Sections l05(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain **exclusive** jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims . . .

\*       \*       \*

(e) hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case or the Litigation Rights . . .

Plan,    ¶    11.1    (emphasis added).[3]

The Confirmation Order likewise vested **exclusive** jurisdiction to determine the allowance of claims with the bankruptcy court:

---

[3]    Winn-Dixie's Plan excepted personal injury claims from the normal claims administration process, and the Court's retention of jurisdiction by permitting such claims to be addressed in state court. This distinction is not without significance. See § 4, *infra*.

63. <u>Retention of Jurisdiction</u>. Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding the entry of this Order or the occurrence of the Effective Date, this Court shall retain **exclusive** jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction over those items and matters set forth in Article XI of the Plan.

Confirmation Order, ¶ 63 (emphasis added).

To enforce this retention of exclusive jurisdiction, the Court entered an order expressly enjoining creditors such as Libbey Glass from taking any action to assert or recover a claim discharged under the Plan. The injunction contains no exception which would permit the liquidation of ordinary vendor claims in other forums:

41. <u>Injunctions; Stays</u>. (a) Except as provided in the Plan or this Order; as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim or other debt or liability that is discharged under the Plan, or an Interest or other right of an equity security holder that is terminated under the Plan; are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, and their respective subsidiaries or their property on account of any such discharged Claims, debts, or liabilities or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching; collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors or the Reorganized Debtors; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person, that does not comply with or is inconsistent with the provisions of the Plan.

Confirmation Order, ¶ 41.

By virtue of §§ 524 and 1141 of the Code - -  and under the express provisions of Winn-Dixie's confirmed Plan - - Libbey Glass could not as a matter of law pursue the

liquidation of its claim in state court as Winn-Dixie suggests.[4]  *See e.g. In re Amigoni*, 109 B.R. 341, 344 (Bankr. N.D. Ill. 1989) ("The combined effect of 11 U.S.C. § 1141(d) and § 524 is to void, upon confirmation of the plan, all judgments related to a dischargeable debt and to enjoin future efforts to collect on the debt except as otherwise provided in the plan").

Though it has been suggested that Libbey Glass could have sought relief from the discharge injunction to liquidate its claim elsewhere, such act would be expressly contrary to the purpose and intent of paragraph 11.1 of the Plan.  Winn-Dixie drafted the Plan and established the claims liquidation protocol.  The Court should not permit Winn-Dixie to so easily depart from the very structure it created solely when it suits its purpose.

Moreover, the resolution of the instant dispute requires a "big picture" approach in recognition of the fact that, in enacting the Bankruptcy Code, Congress established a comprehensive scheme for dealing with claims against a bankrupt debtor:

> [A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike.
>
> *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996).

---

[4]  This rule would not apply if the underlying debt were non-dischargeable (such as a tax claim) or if Libbey Glass had *in rem* rights against the debtor.  *See e.g. In re Wrenn v. Am. Cast Iron Pipe Co.*, 40 F.3d 1162, 1164 (11th Cir. 1994) ("A discharge in bankruptcy voids any judgment . . ., to the extent that such judgment is a determination of the *personal liability* of the debtor. . . . [D]ischarge does not affect liability *in rem*, and prepetition liens remain enforceable after discharge"); and *In re Amigoni*, 109 B.R. 341, 344 (Bankr. N.D. Ill. 1989) ("[D]ebts determined not to be dischargeable are not voided upon confirmation, but rather continue to exist outside the plan").  Section 108(c) was intended to deal solely with these type of claims, not prepetition unsecured claims administered during the Chapter 11 case.

First, Congress gave Chapter debtors a breathing spell from creditors by imposing a stay on the prosecution of prepetition claims. It then required creditors to submit to a claims resolution process framed by § 502 of the Code, with all claims against the debtors being measured as of the Petition Date. While the stay is in effect, the debtor is required and permitted to devise a plan of reorganization to deal with prepetition claims. To facilitate the reorganization process, a "discharge injunction," implemented through §§ 524 and 1141 of the Code was added, which allows a debtor to emerge from Chapter 11 with its property free and clear of all prepetition claims "except as provided in the plan." The situation presented by this case is sure to arise everyday in the thousands of cases which find their way to the bankruptcy courts yet there are hardly any reported decisions supporting Winn-Dixie's argument. It is inconceivable that Congress intended to dissolve the claims liquidation process established by the Code, or burden fragile debtors with defending post-confirmation litigation to liquidate discharged claims in multiple forums, simply because a statute of limitations expired during the pendency of a Chapter 11 case.[5] The *C & G Excavating* decision is an anomaly, and should not be followed, because it runs so contrary to the comprehensive scheme envisioned by Congress, and because it involves maritime claims

---

[5] Picture this same dispute in the context of a large pre-packaged Chapter 11 case such as Chrysler Corporation's recent reorganization. That Chapter 11 plan was confirmed within weeks of the petition date. Imagine how impracticable it would be for creditors and the debtor alike to have a dual claims resolution track in such a large case once the stay was lifted upon confirmation. Congress does on occasion know what it is doing.

which can only be brought in federal district court.[6]  Winn-Dixie's statute of limitations

argument should therefore be overruled.

### 4.    The statute of limitations was met by Libbey Glass' filing of Claim No. 1035.

Even if Winn-Dixie's interpretation of § 108(c) were correct, Libbey Glass

nonetheless met its burden of timely initiating its claim against Winn-Dixie by filing Claim

No. 1035.  The filing of a proof of claim in a bankruptcy case and submitting to the

jurisdiction of the bankruptcy court is the functional equivalent of the filing of a complaint

for statute of limitation purposes.  *In re Eads*, 417 B.R. 728, 741 (Bankr. E.D. Tex. 2009)

("The filing of a proof of claim is analogous to the filing of a complaint in a civil action, with

the bankrupt's objection to same as the answer"); *Matter of Continental Airlines*, 928 F.2d

127, 129 (5th Cir. 1991) ("[T]he filing of a proof of claim is analogous to the filing of a

complaint in a civil action, with the bankrupt's objection to same as the answer"); *In re

Nortex Corp. v. Newfield*, 311 F.2d 163, 164 (2nd Cir. 1962) ("The filing by Nortex of its

proof of claim is analogous to the commencement of an action within the bankruptcy

proceeding"); and *In re F.C.M. Corp. (United States v. Seidle)*, 1987 WL 364456 (S.D. Fla.

Sept. 22, 1987) (filing of proof of claim analogous to filing of complaint).  Claim No. 1035,

filed during the pendency of the Chapter 11 case, satisfies the requirements of commencing

---

[6]  The district court's opinion in *C & G Excavating* reflects that the claimant failed to raise either the § 524(c)(2) argument or the retention of jurisdiction issues before the trial court.  He was not therefore permitted to raise them for the first time on appeal.  *Rhodes v. C & G Excavating, Inc.*, 1999 WL 820204 (E.D. Pa. 1999).  The district court also drew a distinction between regular vendor claims and those claims which could only be brought in federal district court.  Other courts have likewise noted this distinction and limited the holding in *C & G Excavating* to maritime or personal injury claims.  *See e.g. United States v. Gurley*, 434 F.3d 1064, 1068 (8th Cir. 2005) (filing of proof of claim constituted requisite "action" to recover CERCLA costs).  *C & G Excavating* is thus readily distinguishable.

an action to collect on the claim prior to the expiration of the underlying statute of limitations.  Winn-Dixie's statute of limitations argument can be overruled on this basis alone.

**5.      The "law of the case" doctrine is no bar to the validity of Libbey Glass' claim.**

Finally, Winn-Dixie argues that the "law of the case" doctrine bars assertion of Libbey Glass' claims, presumably because the Court has previously disallowed claims of other creditors on this same basis.

The "law of the case" doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391 (1983).  The doctrine "is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter." *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982), *cert. denied*, 459 U.S. 1226, 103 S.Ct. 1233 (1983).  It is not an immutable rule, but rather a way to foreclose continued appeals for reconsideration of prior rulings of law.  *Id.* Unlike the doctrine of *stare decisis*, the law of the case doctrine is discretionary in nature. *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 605 (7th Cir. 1987).  The law of the case doctrine should not be enforced where it is clearly erroneous or where doing so would produce an injustice.  *Id.,* 818 F.2d at 605.

A prerequisite to applying the "law of the case" doctrine is that the same parties be involved in the prior resolution of the issues; it does not apply when different parties are before the Court:

-16-

> The doctrine normally applies when the same parties to a prior proceeding are involved at a subsequent stage of the same litigation. The doctrine does not apply where as here, the court is faced with a similar dispute involving different parties.
>
> > *Matter of Hunt's Health Care, Inc.*, 161 B.R. 971, 982 n.7 (Bankr. N.D. Ind. 1993).

*See also Harbor Ins. Co. v. Essman*, 918 F.2d 734 (8th Cir. 1990).

A further requirement for application of the doctrine is that the court actually adjudicate the issue in question. *Universal Guardian Life Ins. Co. v. Coughlin*, 481 F.3d 458, 462 (7th Cir. 2007). *See also Alpha/Omega Ins. Services, Inc. v. Prudential Ins. Co. of America*, 272 F.3d 276, 279 (5th Cir. 2001)(Law of the case doctrine applies only if those matters were fully briefed and were necessary foundations to the ability of the court to address those issues that were specifically discussed).

Winn-Dixie has not heretofore cited any prior decisions of this Court concerning the statute of limitations issues which were actually litigated. There were certainly no rulings between the present parties in which Libbey Glass had the opportunity to present its case. Presumably, Winn-Dixie's "law of the case" argument is premised on prior rulings by this Court with respect to personal injury claims. If so, the issues before the Court today are not the same as the prior rulings because the Plan contains an express "carve out" from the discharge injunction for personal injury claims to be liquidated in other forums. Because there is no such exception for Libbey Glass' trade vendor claim, fairness, discretion, and more importantly due process, require that the "law of the case" doctrine not be applied against Libbey Glass.

-17-

## Conclusion

Congress enacted a very comprehensive scheme for dealing with creditor claims and implementing the rehabilitive provisions of the Bankruptcy Code. It begins with § 362 of the Code which operate to stay the prosecution of any prepetition claims against the debtor. Creditors are therefore required to submit to the claims resolution processes of § 502 of the Code. During the reorganization, the debtor submits a plan of reorganization which specifies how prepetition claims will be treated. At the end of the Chapter 11 process, the debtor emerges from the reorganization "free and clear" of all creditor claims except as provided in the Chapter 11 plan.

Because Libbey Glass' claim was discharged by the Plan (though the amount had not yet been determined through the claims resolution process), it was precluded by operation of §§ 524 and 1141 of the Code - - and the injunctive provisions of the Plan itself - - from pursuing an action in state court post-confirmation to liquidate its claim. The fact that Libbey Glass could arguably have sought relief from the discharge injunction to assert the claim within 30 days of confirmation does not change the fact that the claim was discharged, nor shift the focus of the court's analysis away from determining the allowance of the claim "as of the Petition Date."

The Court is obligated to construe the bankruptcy court in a manner which gives meaning to each and every part of it. Winn-Dixie's § 108(c) argument fails to account for the "except as provided in § 524" language of that specific Code section, and renders toothless and meaningless §§ 502(b) and 1141 of the Code. The result required by Winn-Dixie's interpretation of § 108(c) would also be wholly inconsistent with the results intended by § 524 and 1141 of the Code.

For all of the foregoing reasons, Winn-Dixie's objection to Claim No. 1035 on the basis of the statute of limitations must fail.

Margaret G. Beck, Esq.
Ohio Bar No. 0059789
**BRADY COYLE & SCHMIDT, LTD.**
4052 Holland-Sylvania Road
Toledo, Ohio 43623
(419) 885-3000
(419) 885-1120 Facsimile
mgbeck@bcslawyers.com

-and-

**STUTSMAN THAMES & MARKEY, P.A.**


                */s/ Richard R. Thames*
By_____
            Richard R. Thames

Florida Bar Number 0652083
50 North Laura Street, Suite 1600
Jacksonville, Florida  32202
(904) 358-4000
(904) 358-4001 (Facsimile)
rrt@stmlaw.net

Attorneys for Libbey Glass, Inc.

## Certificate of Service

I  hereby certify that, on April 30, 2010, the foregoing was transmitted to the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a notice of electronic filing to the Office of the United States Trustee, 135 W. Central Boulevard, Room 620, Orlando, Florida 32280; Leanne McKnight Prendergast, Esq., Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202; and to all parties who have consented to receiving electronic notifications in this case.

*/s/ Richard R. Thames*
_____
Attorney

78046