**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

Winn-Dixie Stores, Inc., *et al.*,      Case No. 05-03817-3F1
                                         Chapter 11
　　　　Reorganized Debtors.             Jointly Administered
_____\

**DIVERSIFIED MAINTENANCE SYSTEMS, INC.'S**
**MOTION FOR PROTECTIVE ORDER REGARDING SEPTEMBER**
**CORPORATE REPRESENTATIVE DEPOSITION NOTICES AND**
**THOMPSON DUNAVANT DEPOSITION DUCES TECUM**

　　　　Diversified Maintenance Systems, Inc. ("Diversified"), through undersigned counsel, hereby files this Motion for Protective Order Regarding the September Corporate Representative Deposition Notices and the Thompson Dunavant Deposition Duces Tecum served by Winn Dixie. In support, Diversified states:

　　　　1.　　On August 16, 2010, Winn Dixie served five separate 30(b)(6) deposition notices on Diversified, as well as a Notice of Taking Deposition Duces Tecum of Thompson Dunavant, Diversified's former accounting firm. The 30(b)(6) notices set corporate representative depositions for September 21, 22, 23, 28 and 29. The 30(b)(6) notices are attached hereto as Exhibits A through E. The Thompson Dunavant Notice is attached hereto as Exhibit F.

　　　　2.　　Diversified objects to the 30(b)(6) notices to the extent the areas of inquiry included in the notices are phrased in such a way to render them too broad and unduly burdensome in violation of Rule 30(b)(6).

　　　　3.　　Rule 30(b)(6) allows a party to identify matters upon which it seeks deposition testimony from a corporate party. The rule provides that the noticing party "*must* describe with *reasonable particularity* the matters for examination." Fed.R.Civ.P. 30(b)(6) (emphasis added).

1

The corporate party must then designate a representative to "testify about information known or reasonably available to the organization" regarding the identified matters. Id.

4. In the 30(b)(6) notices, Winn Dixie phrases nearly every listed area of inquiry in the following manner: "All facts, events, documents or ESI (Electronically Stored Information)" which evidence or relate to various listed issues. Winn Dixie does not identify the documents or ESI that it seeks testimony regarding. Instead, Winn Dixie attempts to require that the Diversified witness review all of the more than 100,000 documents produced in this case to identify all documents that evidence or relate to the issues listed in the areas of inquiry in advance of the deposition, so that the witness can become knowledgeable about all of those documents.

5. Rule 30(b)(6) does not allow a party to impose that extensive of a burden on a witness. It requires that the noticing party identify the matters with *reasonable particularity* and that the corporation testify about information *known or reasonably available* to the organization concerning the identified matters.

6. The identity of all documents that evidence each of the issues listed by Winn Dixie is not information known to or reasonably available to Diversified. Winn Dixie's failure to identify with any specificity the documents Winn Dixie wants Diversified to testify about renders its description of the matters upon which it seeks testimony vague (i.e., not made with reasonable particularity).[1]

7. In the Sep. 29 Notice (Exhibit E), Winn Dixie's sixth listed area of inquiry is too broad for Diversified to be able to comply with its designation responsibilities under Rule 30(b)(6), even without the objectionable language listing "all" unidentified documents.

---

[1] It appears Winn Dixie has improperly used documents requests as its areas of inquiry. Indeed, these areas of inquiry were taken verbatim from Winn Dixie's Fifth Request for Production.

8.  The sixth area of inquiry in the Sep. 29 Notice is identified as "[a]ll facts, events, documents or ESI relating or referring to floor care services provided by Diversified to Winn-Dixie during the Relevant Period, except for documents and electronically stored information that have already been produced by Diversified to Winn-Dixie in response to previous discovery requests."

9.  By identifying area of inquiry number six in the Sep. 29 Notice as all facts relating to the floor care services provided by Diversified to Winn Dixie, Winn Dixie has asked for Diversified to produce a witness to testify on all matters related to this case. This request is the exact opposite of the required reasonable particularity required in Rule 30(b)(6). Indeed, Winn Dixie would be hard pressed to draft an area of inquiry more broad than this.

10.  In the Sep. 28 Notice (Exhibit D), Winn Dixie identifies the areas of inquiry as "All facts, events, documents or ESI relating or referring to Diversified's affirmative defense[s]." These areas of inquiry are too broad, require disclosure of work-product information and require the witness to review the more than 100,000 pages of documents in this case to determine which documents relate to each affirmative defense.

11.  In both the Sep. 21 Notice (Exhibit A) and the Thompson Dunavant Notice (Exhibit F), Winn Dixie seeks documents and testimony on issues unrelated to this case, involving Diversified's other customers and those customers' sales tax payments. The information sought by Winn Dixie is also protected from disclosure by the accountant-client privilege.

12.  Diversified provides floor care services to many of the country's largest supermarket and retail store chains. As part of this service, Diversified collects and remits sales tax from its customers.

13.     In this adversary proceeding, Diversified contracted with Winn Dixie to provide floor care services for Winn Dixie's stores in Florida and several in Georgia. In the agreement, Diversified was given the right to charge a 7% sales tax amount for its floor care services in the State of Florida. In Count II, Winn Dixie alleges that Diversified improperly charged 7% sales tax, even though the parties' contract specifically allowed the charge, and that Diversified's charge of 7% breached the parties' contract.

14.     In the Sep. 21 Notice and the Thompson Dunavant Notice, Winn Dixie seeks testimony and documents regarding the following areas of inquiry relating to Count II:

> 1. All facts, events, documents or ESI stored information, including accounting records, journal entries or ledgers, that track, record or account for (i) the Florida sales taxes that Diversified collected from its customers, including Winn-Dixie, and (ii) the Florida sales taxes that Diversified remitted to the State of Florida or retained as a result of Florida business transactions during the Relevant Period with Winn-Dixie and other Diversified customers.
>
> 2. All facts, events, documents or ESI, including accounting records, journal entries or ledgers, that track, record or account for (i) the Georgia sales taxes that Diversified collected from its customers, including Winn-Dixie, and (ii) the Georgia sales taxes that Diversified remitted to the State of Georgia or retained as a result of Georgia business transactions during the Relevant Period with Winn-Dixie and other Diversified customers.
>
> 3. All facts, events, documents or ESI that you sent to Thompson Dunavant to prepare the monthly Florida sales tax returns, Form DR-IS, for the calendar years 2004, 2005, 2006 and 2007, including the "information to prepare the tax returns" that was "prepared by Diversified," as referenced in the letter from Thomson Dunavant dated April 7, 20I0, a copy of which is attached as Exhibit 1.
>
> 4. All facts, events, documents or ESI that you sent to Thompson Dunavant to prepare the monthly sales tax returns filed by or on behalf of Diversified, if any, for the calendar years 2004, 2005, 2006 and 2007.
>
> 5. For the Relevant Period, all facts, events, documents or ESI that relate to any reconciliation of Diversified's total sales in Florida or

>Georgia by week, month or year to (i) Diversified's annual financial statements or (ii) any federal or state tax returns filed by Diversified.
>
>6. All facts, events, documents or ESI relating or referring to any audit of Diversified by the Department of Revenue for the State of Florida related to any events that occurred or floor care services that were provided by Diversified during the Relevant Period.

15.     These areas of inquiry are overly broad and unduly burdensome. In the above areas of inquiry, Winn Dixie seeks tax information relating to "other Diversified customers" in addition to information relating to Winn Dixie. The amount of sales tax collected by Diversified from its other customers, or paid to the states on behalf of its other customers, is neither relevant to this adversary proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

16.     For example, assume *arguendo* that Diversified charged its other customers 10% sales tax. This charge has no bearing on the issue of whether Diversified breached its contract with Winn Dixie by charging Winn Dixie 7% - the Winn Dixie contract specifically allows Diversified to charge 7% sales tax. If, on the other hand, Diversified charged its other customers only 5%, this fact is equally irrelevant to the question of whether Diversified breached its contract with Winn Dixie by charging the contractually allowed 7%. If Diversified charged its other customers varying amounts of sales tax depending on the county in which the service was provided, this fact would likewise have no bearing on the issue of the alleged breach by Diversified of its contract with Winn Dixie. Diversified's contract with Winn Dixie allowed it to charge a flat 7% for all the Florida stores, regardless of the county in which the service was provided.

17.     The areas of inquiry also invade Diversified's accountant-client privilege.

18.     The Federal Rules of Evidence provide that on issues governed by state law arising in civil actions, privileges of witnesses are determined by state law. Fed. R. Evid. 501;

s*ee Commercial Union Insurance Company of America v. Talisman, Inc.*, 69 F.R.D. 490 (E.D. Mo. 1975). This rule applies as well to discovery proceedings. Fed. R. Evid. 1101(c) ("The rule with respect to privileges applies at all stages of all actions, cases, and proceedings"); Fed. R. Civ. P. 26(b)(1).

19. Florida law governs this breach of contract case. Florida law supplies an accountant-client privilege. Florida Statutes § 90.5055(2) provides: "A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications with an accountant…."

20. The Thompson Dunavant subpoena was served on Thompson Dunavant in Tennessee. Tennessee also provides for an accountant-client privilege. Tenn. Code Ann. 62-1-116 (2010), in pertinent part, mandates that "Licensees shall not divulge, nor shall they in any manner be required to divulge, any information that is communicated to them or obtained by them by the reason of the confidential nature of their employment."

21. Accordingly, whether Florida law or Tennessee law applies, the accountant-client privilege prohibits disclosure of the information sought by Winn Dixie in the Sep. 21 Notice and the Thompson Dunavant Notice.

.

        Respectfully Submitted,

        /s/ Paul B. Thanasides
        Paul B. Thanasides
        Florida Bar No. 0103039
        paul@mcintyrefirm.com
        McIntyre, Panzarella, Thanasides,
           Eleff & Hoffman, P.L.
        6943 E. Fowler Avenue
        Tampa, Florida  33617
        T: (813) 899-6059/F: (813) 899-6069
        *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 1st day of September, 2010, a true and correct copy of the foregoing was served via the Court's CM/ECF system to: **James H. Post, Esq**., Smith, Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202, jpost@smithhulsey.com.

/s/ Paul B. Thanasides_____
Attorney