# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

*In re*:

WINN-DIXIE STORES, INC., et al.,

      Reorganized Debtors.

_____/

Case No.  05-03817-3F1

Chapter 11
Jointly Administered

### DIVERSIFIED MAINTENANCE SYSTEMS, INC.'S
### OPPOSITION TO WINN DIXIE'S SECOND MOTION TO STRIKE
### AMENDED MOTION FOR PROTECTIVE ORDER

Diversified Maintenance Systems, Inc. ("Diversified"), through undersigned counsel, hereby files this Opposition to Winn Dixie's Second Motion to Strike Diversified's Amended Motion for Protective Order (Doc. 23531).  In support, Diversified states:

1.      Winn Dixie seeks to strike Diversified's Amended Motion for Protective Order because it claims that Diversified's use of email to attempt to confer in good faith to resolve the issues raised by the motion was an inappropriate communication method, which renders insufficient Diversified's certification of its attempt to confer.

2.      Winn Dixie's Second Motion to Strike should be denied because: 1) Winn Dixie itself has certified that it has attempted to confer in good faith based on email communications alone; 2) Winn Dixie itself regularly uses email to confer with Diversified regarding discovery issues; 3) Diversified has been using email communications to confer with Winn Dixie on every discovery issue that has arisen in this case, without objection from Winn Dixie, for the entire time this case has been pending (more than 18 months); and 4) counsel for Diversified and Winn Dixie have spoken at length on the phone about the specific issues raised in the Amended Motion for Protective Order and Winn Dixie was completely unwilling to compromise on any of the

issues or narrow the areas of inquiry in its deposition notices.  Winn Dixie's Second Motion to Strike is simply subterfuge.

3.      Winn Dixie hopes that its misdirection will delay the Court's resolution of Diversified's Amended Motion for Protective Order until after the dates Winn Dixie unilaterally set in the deposition notices at issue in the motion.  The lack of legitimacy of Winn Dixie's position is belied by its reliance on only unpublished opinions of magistrate judges, without even noting in its citations that the opinions were unpublished magistrate opinions.  The law relied upon by Winn Dixie is non-binding and non-persuasive in this Circuit.

4.      In this jurisdiction, the applicable rule for the Eleventh Circuit states that "unpublished opinions are not considered binding precedent..." See 11th Cir. R. 36-2.  Further, the Internal Operating Procedures for the Eleventh Circuit Rules clearly state "reliance on unpublished opinions is not favored by the Court." *Id.* at p. 6.

5.      Extensive case law confirms the non-binding authority of an unpublished case.  "Although an unpublished opinion may be cited as persuasive authority ... it is not binding authority.  Moreover, an unpublished opinion would in any event be persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue." *See Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.,* 480 F.3d 1254, 1260 (11th Cir. 2007).

6.      Moreover, the advisory committee notes relied upon by Winn Dixie were drafted in 1993, before email was commonly used by attorneys.  In this day, email is used extensively by attorneys to attempt to confer on issues to avoid the need for Court intervention.  Indeed, Winn Dixie itself uses email for this very purpose.

**I.     Winn Dixie itself has certified that it has attempted to confer in good faith based on email communications alone.**

7.     Like Fed.R.Civ.P. 26 governing protective orders, Middle District of Florida Bankruptcy Local Rule 5071-1 requires a party moving for a continuance to certify that it has attempted to confer with the opposing party.

8.     Winn Dixie has filed three motions to continue the trial of this adversary proceeding.  Prior to filing each motion, counsel for Winn Dixie has emailed counsel for Diversified seeking Diversified's consent to the continuance.  For example, immediately prior to filing its last motion to continue, counsel for Winn Dixie emailed Diversified's counsel the following communication:

> Attached is a proposed unopposed motion to continue the trail (sic)
> in this case to January 27 and 28, 2011.  Please let me know if
> Diversified will consent to the filing of this motion.

(August 9, 2010 email correspondence from James Post to Paul Thanasides, a true and correct copy of which is attached hereto as Exhibit A).

9.     On August 10, 2010, the very next day following the above email, Winn Dixie filed its Motion to Continue the trial (Doc. 23398), in which it certified that it conferred with Diversified in good faith before filing the motion.

10.     Winn Dixie's email in Exhibit A is nearly identical to Diversified's email conference that Winn Dixie complains was insufficient in its Second Motion to Strike.  As with Exhibit A, Diversified's counsel's attempted good faith conference was an email requesting that Winn Dixie consent to relief requested in a prepared motion.  Winn Dixie claims this type of request for cooperation is insufficient to allow Diversified to certify a good faith attempted conference, but not insufficient to allow Winn Dixie to make this same certification.  Winn Dixie's position is overtly one-sided and unfair.

3

**II.   Winn Dixie itself regularly uses email to confer with Diversified regarding discovery issues.**

11.    Over the past year of this litigation, Winn Dixie has used email to confer with Diversified on discovery issues on numerous occasions.

12.    Attached as Composite Exhibit B is a compilation of at least ten separate occasions when Winn Dixie has used email to confer with Diversified on discovery issues in this matter.

13.    It is absolutely a rare case when Winn Dixie will call Diversified on the phone to attempt to resolve issues.  As revealed below, the parties are not more likely to resolve an issue when discussing the matter on the phone.  In fact, the parties have resolved major discovery issues in this case solely through the use of emails.  Diversified has thus been using email to confer with Winn Dixie on discovery issues in this matter for the entire pendency of this case, sometimes with success and, most importantly, always without objection by Winn Dixie.

**III.   Diversified has been using email communications to confer with Winn Dixie on every discovery issue that has arisen in this case, without objection from Winn Dixie, for the entire time this case has been pending.**

14.    Attached as Exhibit C is a series of email exchanges between Winn Dixie and Diversified concerning a discovery dispute in this matter.  This is only one of several examples of these types of exchanges.  It shows, however, that email exchanges can be a fruitful method to resolve discovery disputes in this matter without the need for Court intervention.

15.    In this particular example, the parties used email to negotiate an agreed order on Diversified's motion to compel and a complicated search protocol for electronic documents.

16.    Email is an especially useful method of communicating on discovery issues in this case because of the volume of issues and documents at play.  This case involves more than $4 million in claimed damages resulting from thousands of separate line item disputes.  Each line

4

item dispute has the potential to have its own discovery request directed to it and between two to ten pages of correspondence related to it.   The parties have produced tens of thousands of documents thus far in the case.

17.    A blanket rule that the parties cannot email is an insufficient communication method to confer on discovery issues in this case will be counterproductive.  Case in point: when the parties conferred on the issues presented in the Amended Motion for Protective Order via telephone, at Winn Dixie's insistence (resulting from its Second Motion to Strike), absolutely no progress on the issues in the motion was made.

**IV.    Counsel for Diversified and Winn Dixie have spoken at length on the phone about the specific issues raised in the Amended Motion for Protective Order and Winn Dixie was completely unwilling to compromise on any of the issues or narrow the areas of inquiry in its deposition notices.**

18.    In its Second Motion to Strike, Winn Dixie asserts that the Amended Motion for Protective Order should not be considered by the Court because the issues might have been worked out by the parties if they had discussed the matters over the telephone.

19.    Yet, when counsel for Diversified phoned counsel for Winn Dixie and attempted to negotiate the issues raised in the Amended Motion for Protective Order in a call that lasted an hour and a half, Winn Dixie was unwilling to compromise on any of the issues or to narrow any of its extremely broad areas on inquiry.

20.    Winn Dixie's counsel's position was that the areas of inquiry were broad because Diversified was reading the areas of inquiry "too literally."  Despite admitting that a literal reading of the areas of inquiry rendered them overly broad, Winn Dixie's counsel was unwilling to re-draft the areas or agree on a more narrow scope.

21.    Accordingly, it is clear that Winn Dixie had no intention on resolving any of the issues in the motion for protective order via conference between the parties.  Instead, its Second

Motion to Strike is an attempt to delay resolution of the Amended Motion for Protective Order until after the depositions Winn Dixie has unilaterally set in the notices (In an email from Winn Dixie on September 6, 2010, in which Winn Dixie attempted to resolve the issues presented in its Second Motion to Strike, Winn Dixie stated its position that the Amended Motion for Protective Order was not "self-operative" and an order of the Court would be necessary to excuse Diversified from producing witnesses on all of the areas of inquiry in the unilaterally set notices).

WHEREFORE, Diversified Maintenance Systems, Inc. respectfully requests that the Court deny Winn Dixie's Second Motion to Strike and provide such further relief that the Court deems just.

Respectfully submitted,

/s/ Paul B. Thanasides
Paul B. Thanasides
Florida Bar No. 103039
paul@mcintyrefirm.com
McIntyre, Panzarella, Thanasides,
    Eleff & Hoffman, P.L.
6943 E. Fowler Avenue
Tampa, Florida  33617
T: (813) 899-6059
F: (813) 899-6069
*Attorneys for Diversified Maintenance Systems, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 9th day of September, 2010, a true and correct copy of the foregoing was electronically filed and served via the Court's CM/ECF system to: **James H. Post, Esq.**, (jpost@smithhulsey.com), Smith, Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida  32202.

/s/ Paul B. Thanasides
Attorney

6